Pages 1 - 21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

```
WAYMO, LLC,                      )
                                 )
            Plaintiff,           )
                                 )
   VS.                           )   No. C 17-00939 WHA
                                 )
UBER TECHNOLOGIES, INC.,         )
et al.,                          )
                                 )
            Defendants.          )
_____ )   San Francisco, California
                                     Thursday, March 16, 2017
```

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:
                  QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                  50 California Street
                  22nd Floor
                  San Francisco, California  94111
           BY:  CHARLES K. VERHOEVEN, ESQ.
                  JORDAN R. JAFFE, ESQ.
                  DAVID A. PERLSON, ESQ.
                  MELISSA J. BAILY, ESQ.

For Defendants:
                  MORRISON & FOERSTER, LLP
                  425 Market Street
                  San Francisco, California  94105
           BY:  ARTURO J. GONZALEZ, ESQ.
                  MICHAEL A. JACOBS, ESQ.

Reported By:  BELLE BALL, CSR 8785, CRR, RDR
             Official Reporter, U.S. District Court

(Appearances continued, next page)

**APPEARANCES, CONTINUED:**


**Also Present:**          **NICOLE T. BARTOW, ESQ.**
                          **Uber Director II, Litigation**

<u>**Thursday - March 16, 2017**</u>                              <u>**11:28 a.m.**</u>

<u>**P R O C E E D I N G S**</u>

**THE CLERK:**  Civil 17-939, Waymo versus Uber Technologies.
It's on for a case-management conference.  Counsel, please state
your appearances.

**MR. VERHOEVEN:**  Good morning, Your Honor.  Charles Verhoeven
from Quinn Emanuel, representing the plaintiff Waymo.

**THE COURT:**  Welcome to you.

**MR. GONZALEZ:**  Good morning, Your Honor.  Arturo Gonzalez
from Morrison & Foerster for Uber.

**THE COURT:**  Welcome to you.

First order of business is to see if you have resolved the
issue about the access by the in-house counsel.

**MR. VERHOEVEN:**  Your Honor, speaking for the plaintiffs, we
have agreed in principle that the defendants may disclose
materials that are designated at the highest level of
confidentiality to an in-house counsel.

We have not yet received -- we have received assurances that
two individuals which the defendants have proposed would meet
the standards of not having competitive decision-making
responsibilities.  We haven't -- this is just an email, we
haven't --

**THE COURT:**  Are those people here today?

**MR. GONZALEZ:**  They are, Your Honor.

**THE COURT:**  All right.  Bring forward the one person, not

1  two, the one person that you want to be under the protective

2  order.

3      **MR. GONZALEZ:**  That would be Nicole Bartow, Your Honor.

4      **THE COURT:**  All right.  Have you given counsel the

5  information on her?

6      **MR. GONZALEZ:**  We have, Your Honor.  I'm handing the Court

7  what we provided counsel.

8      (Document handed up to the Court)

9      **THE COURT:**  All right.

10     What is your name?

11     **MS. BARTOW:**  Nicole Bartow.

12     **THE COURT:**  Here, come up here.  How do you spell your last

13  name?

14     **MS. BARTOW:**  B-A-R-T-O-W.

15     **THE COURT:**  And what is your position?

16     **MS. BARTOW:**  I'm a Director II for litigation at Uber.

17     **THE COURT:**  How long have you been there?

18     **MS. BARTOW:**  Seven months.

19     **THE COURT:**  Have you read the standard protective order that

20  the Court uses that is attached to our local rules?

21     **MS. BARTOW:**  I have, Your Honor.

22     **THE COURT:**  All right.  And if allowed, will you faithfully

23  abide by the protective order?

24     **MS. BARTOW:**  Yes, Your Honor.

25     **THE COURT:**  What if somebody in your company puts pressure

1   on you to reveal any of that information that's under the

2   protective order?  Would you yield to that?

3      **MS. BARTOW:**  No, Your Honor.

4      **THE COURT:**  And even if you thought it should not be under

5   the protective order -- which happens all the time, by the

6   way -- but you still have got to honor the protective order

7   until I relieve you from that.

8      Do you understand that?

9      **MS. BARTOW:**  I do, and I will, Your Honor.

10      **THE COURT:**  All right.

11      You get a chance to cross-examine.

12      **MR. VERHOEVEN:**  Your Honor, we have no objection, based on

13   those representations.

14      **THE COURT:**  All right.  So I'm going to solve this problem.

15   You can be the one lawyer on the in-house side that sees the top

16   level of confidential material.

17      You will be -- I believe you when you say that you are going

18   to honor your obligations, but I have to tell you it is very

19   important that you do so.

20      **MS. BARTOW:**  I understand.  I will.

21      **THE COURT:**  And I know you will.  All right.  So you can sit

22   there with your lawyers on this side (Indicating), and you'll

23   have access to the material.

24      **MS. BARTOW:**  Thank Your Honor.

25      **THE COURT:**  All right.  So I want you lawyers to sign

1    whatever you are going to sign.  Otherwise -- right now I'm just

2    saying that the -- I'm ordering this:  That the protective order

3    that's attached to the local rules -- which one is it that you

4    want?  The patent ones?  The trade secret ones?  That's going to

5    apply in this case.

6        (Off-the-Record discussion between counsel)

7        **MR. VERHOEVEN:**  If I could speak, Your Honor, we haven't yet

8    started to negotiate.  And if we can't negotiate the specific

9    customized one, then we would, from the plaintiff's standpoint,

10   be fine with the model order.

11       **THE COURT:**  The patent one?

12       **MR. VERHOEVEN:**  Let me just check with --

13       **THE COURT:**  Which one do you want?

14       **MR. GONZALEZ:**  The patent one, Your Honor.

15       **THE COURT:**  All right.  They want the patent one.  How about

16   the patent one?

17       (Off-the-Record discussion between counsel)

18       **MR. VERHOEVEN:**  I'm told what -- if we can't reach

19   agreement, it would be the interim model patent order.

20       **THE COURT:**  Right.  So you both agree.

21       **MR. GONZALEZ:**  We agree.

22       **THE COURT:**  So this is without prejudice, you trying to

23   agree.  That's okay.  But in the meantime, the model that you

24   just both agreed to applies, and is a court order.

25       And the in-house lawyer that was good enough to come today

1    is part of the -- part of the process.

2        All right, thank you for that.

3        Now, by the way, you get to have somebody on your side see

4    their in-house stuff.  You know what I mean?  It goes both ways.

5    The day will come when you need to show your client some things,

6    and you get to go through the same process.  And they're going

7    to have to agree to somebody on your side.  All right?

8        **MR. VERHOEVEN:**  Yes, Your Honor.

9        **THE COURT:**  Okay.  All right.  I also sent out for you a

10   proposed tentative order on leading up to a hearing on the

11   preliminary injunction motion.

12       Did you all get that, and have you had a chance to look at

13   it?

14       **MR. GONZALEZ:**  We did, Your Honor.  And we have conferred.

15       **MR. VERHOEVEN:**  Do you want me to -- okay.

16       Your Honor, we have met and conferred on the order.  And I'm

17   happy to report that on the substance of the order, we have no

18   suggested modifications.

19       **THE COURT:**  Wait a minute.  My law clerk is going to have to

20   come up here.  I cannot find that order.  I'm sorry.  I got so

21   many tabs, I can't find the one that the -- the three-pager.

22       (Off-the-Record discussion between the Court and Law Clerk)

23       **MR. VERHOEVEN:**  Here is a copy, if you --

24       **THE COURT:**  I've got it now.  Thank you.

25       Okay.  You met and conferred and you -- you both -- what?  I

1   missed what you wanted to say.

2       **MR. VERHOEVEN:**  So we agree on the substance of what the

3   order states.  We have a redline here (Indicating).  We have met

4   and conferred about some of the particular timing issues with

5   respect not to the briefing dates or anything like that, but to

6   the notice for document disclosures and notice for depositions.

7       And I could hand up, Your Honor, a redline --

8       **THE COURT:**  Yeah, please.  That would be good.

9       (Document handed up to the Court)

10      (Document tendered)

11      **THE COURT:**  All right.  So, 120 hours notice.  All right.

12  So you both agree to that?

13      **MR. VERHOEVEN:**  Yes, Your Honor.

14      **MR. GONZALEZ:**  Yes, Your Honor.  We're fine with the Court's

15  proposal.  They wanted some amendments; we are fine with their

16  amendments.  We're fine, either way.

17      **THE COURT:**  All right.  Well, I'll accept your amendments.

18  If you're both in agreement with them, I'm not going to argue

19  with them.

20      Okay.  Is that it?

21      **MR. VERHOEVEN:**  That's it -- that's it for expedited

22  discovery, I believe, Your Honor.

23      **MR. GONZALEZ:**  There are a few other matters, Your Honor, we

24  want to raise briefly.

25      **THE COURT:**  Yeah.

1      **MR. GONZALEZ:**  One is the order that we just agreed that

2  applies provides that if you want to give AEO information to an

3  expert --

4      **THE COURT:**  I'm sorry; wait.  The order that you what?

5      **MR. GONZALEZ:**  The order that we just agreed applies to this

6  case --

7      **THE COURT:**  Disagree?

8      **MR. GONZALEZ:**  That we agree.

9      **THE COURT:**  Yeah?

10      **MR. GONZALEZ:**  The patent order that is now applicable.

11      **THE COURT:**  Okay.

12     **MR. GONZALEZ:**  That provides that if we want to show AEO

13  information to an expert, we need to give them 14 days notice.

14  We need to change that, obviously, with the calendar that we

15  have.

16     So what we've proposed is that we'll identify an expert, and

17  they have to tell us in 24 hours if they object.  There's a

18  procedure whereby you can object to either side's expert if you

19  want to.

20      **THE COURT:**  All right.  How about 48 hours?

21      **MR. GONZALEZ:**  Fine.  Just has to happen quickly.

22      **THE COURT:**  That ought to be enough.

23      **MR. VERHOEVEN:**  Well, this is the first we've heard.  What I

24  would like to do is negotiate with them about these --

25      **THE COURT:**  No, but if I did -- can I explain something?

1    You want drastic relief.  It's in your interest to come out of

2    here with a proposed schedule that's going to get -- because if

3    we come out of here and there're hanging issues like this, I'm

4    going to have to change these dates.

5        **MR. VERHOEVEN:**  Understood, Your Honor.

6        **THE COURT:**  So we want to reach agreement right now.

7    Forty-eight hours is plenty.

8        **MR. VERHOEVEN:**  Yes, Your Honor.

9        **THE COURT:**  All right, 48 hours.  Okay, what's next?

10       **MR. GONZALEZ:**  Next, Your Honor, I just wanted to give the

11   Court notice --

12       **THE COURT:**  Now, you can't do it at midnight on Saturday

13   night.  Then I'm going to be upset with you.  But the normal 48

14   hours, you could do it maybe on a Saturday morning, that would

15   be okay.

16       **MR. GONZALEZ:**  Understood, Your Honor.

17       **THE COURT:**  All right.

18       **MR. GONZALEZ:**  A couple of things I just want to bring to

19   the Court's attention.

20       One, there are three names in the Court's order.  And one of

21   those individuals, Radu Raduta, we have already advised counsel

22   no longer works at Uber.  We are in the process of trying to

23   find that individual.

24       If we're not able to find that person by 5:00 on Monday,

25   we'll let them know so they can try to find them, themselves.

1   But I just want to point that out to the Court.

2       Second --

3       **THE COURT:**  Wait.  Let's pause on that, because I did think

4   about that problem, wondering if that would be an issue.  And I

5   think I know the answer, but I assume you want to depose that

6   person.

7       **MR. VERHOEVEN:**  Yes, Your Honor.

8       **THE COURT:**  Okay.  So, if he -- if they don't have him under

9   their control, then you have got to find him and subpoena him.

10      **MR. VERHOEVEN:**  Understood.

11      **THE COURT:**  And my order here doesn't make -- allow for

12  that, but I think, clearly, you should have that right.  So, so,

13  what I want to make it clear is that one of those three

14  additional depositions -- well, you ought to be able to use

15  subpoena power to find him.

16      Now, but, that you're -- you're not going to do the old

17  trick of:  We don't have control of him, but we're going to get

18  his declaration.

19      **MR. GONZALEZ:**  No, Your Honor.

20      **THE COURT:**  If you don't have him good enough under your

21  control for a declaration, you see the point.

22      **MR. GONZALEZ:**  I see the point.

23      **THE COURT:**  You can't come in here with a declaration, but

24  then say:  He's not our employee.

25      **MR. GONZALEZ:**  That won't be an issue.  If we find him and

1   get a declaration, we will make him available for deposition.

2   I'll let them know by 5:00 Monday if we can't find him.

3      **THE COURT:**  All right.  So both sides have the right to use

4   one of these three depositions to subpoena somebody.

5      **MR. GONZALEZ:**  Next, Your Honor, I want to say something

6   about arbitration.  I don't want the Court to be surprised.  I

7   don't know if the Court has wondered --

8      **THE COURT:**  I have wondered why --

9      **MR. GONZALEZ:**  -- why is it that the individuals are not

10  defendants, especially the one who supposedly misappropriated

11  lots of stuff.

12      And here's the answer:  It's because there is an employment

13  agreement that has a very broad arbitration provision, that says

14  that any claims arising out of his conduct, employment-related

15  conduct belongs in arbitration.  So we intend to file probably

16  within two weeks a petition to compel arbitration.  And just set

17  it for hearing on regular notice.

18      And I just wanted to give you notice to that.  We are not

19  going to use that as a basis to slow the train down.  We are

20  going to proceed pursuant to the Court's order.  Just wanted to

21  let you know that that was coming.

22      **THE COURT:**  All right.  I did wonder about that.  And I

23  think there's nothing I can do on that, other than wait and see

24  what your motion looks like.

25      **MR. GONZALEZ:**  (Nods head)

1      **THE COURT:**  Agreed?

2      **MR. VERHOEVEN:**  We have to see the motion as well,

3  Your Honor.  I will note that there's a carve-out for injunctive

4  relief.  And the -- the documents which are con- -- I think may

5  be confidential that counsel's referring to, and I also would

6  note that those individuals are not parties.  And this case is

7  Waymo versus Uber and Otto, neither of which are -- neither of

8  which are signatories.

9      **THE COURT:**  I thought about that, too.  And I don't know the

10  answer.  By the way, how do you say the head guy's name?

11      **MR. VERHOEVEN:**  Levandowski.

12      **THE COURT:**  Yes.  Did he, did he sign a nondisclosure

13  agreement?  You didn't -- your papers dance around that.  And I

14  -- I drew from that that he did not.  Because he was the head

15  guy.  But did he sign a --

16      **MR. VERHOEVEN:**  There was an employment -- we have a

17  standard employment agreement, Your Honor.  And it covers things

18  like that.  But we are not basing our suit --

19      **THE COURT:**  I know, but did he have such an agreement?

20      **MR. VERHOEVEN:**  Yes, Your Honor.

21      **THE COURT:**  All right.  And he signed it.

22      **MR. VERHOEVEN:**  Yes, Your Honor.

23      **THE COURT:**  Okay.  And it has nondisclosures and all that in

24  there.

25      **MR. VERHOEVEN:**  It has a bunch of things in there,

 1    Your Honor.

 2        **THE COURT:**  Including that he won't take away -- you know,

 3    he will honor the nondisclosure.

 4        **MR. VERHOEVEN:**  Yes, Your Honor.

 5        **THE COURT:**  All right.  Well, then -- because your papers

 6    didn't say that.  So, okay.

 7        **MR. VERHOEVEN:**  Well, we're not basing our claims on the

 8    agreement, Your Honor.  We're basing it on the law, and we're

 9    basing it -- and our claims are asserted against people who are

10    not in our control.  Uber and Otto are not subject to any

11    agreement, Your Honor.

12        **THE COURT:**  Okay.  All right.  What is your next point?

13        **MR. GONZALEZ:**  That was the only point I have, Your Honor.

14    If I think of another one, I'll let you know.  But that's it for

15    now.

16        **THE COURT:**  Okay.  How about on your side?

17        **MR. VERHOEVEN:**  No, Your Honor.

18        **THE COURT:**  Okay.  This is great.  Let me see if I have got

19    anything to bring up with you.

20        (The Court examines document)

21        **THE COURT:**  What day will you be back here on your motion

22    for arbitration?  Do you know when that will come up?

23        **MR. GONZALEZ:**  Your Honor, I'm anticipating that we will

24    file it in about two weeks.  And then in the ordinary course --

25    what is that, 28 days?

1        **THE COURT:**  Thirty-five..

2        **MR. GONZALEZ:**  Oh, okay.  Thirty-five.

3        **THE COURT:**  Twenty-eight is the old days.  All right.  When

4   will that -- do the math for me.  When will that -- I want to

5   know, will that come up before the preliminary-injunction

6   hearing?

7        **THE CLERK:**  That will put it roughly around May 4th, I

8   believe, Your Honor.

9        **MR. GONZALEZ:**  Yeah.

10       **THE COURT:**  So --

11       **MS. BARTOW:**  We can file it sooner.

12       **THE COURT:**  I'm not -- I mean, I don't want to go through

13   the pain and suffering of a preliminary injunction hearing if it

14   has to be arbitrated, is the point.  Think that through.

15       But here's the other thing I want to you do.  You asked for

16   an early trial in your papers.

17       **MR. VERHOEVEN:**  Yes, Your Honor.

18       **THE COURT:**  What is your view on the early trial?

19       **MR. GONZALEZ:**  Your Honor, our view is that there's going to

20   be a lot of work to be done on this case.  So --

21       **THE COURT:**  Well, your view would probably change if there

22   was a preliminary injunction.

23       **MR. GONZALEZ:**  It probably would.

24       **THE COURT:**  Yeah.  So before you know the answer, I would

25   like for both of you to meet and confer, and come up with a

1    schedule that would lead up to a trial on October -- first

2    Monday in October, which is October 2.  I could try this case if

3    you could get it prepared and ready for trial on October 2nd.

4         I'm talking about the final trial, not -- but that would

5    mean doing a lot of homework between now and then.  And it could

6    be done, but it also -- I understand that it would be faster

7    than normal.

8         But while you both have an incentive before you know the

9    answer on preliminary injunction, while you both have an

10   incentive to possibly consider an early trial, I want you to

11   work out that date, work out what the -- what the schedule would

12   be for disclosure of experts and everything else, and then give

13   that to me on the day you come back for your motion on the

14   arbitration.  Okay?

15        **MR. GONZALEZ:**  We will do that.  Thank Your Honor.

16        **THE COURT:**  All right.  Here's another problem.  I

17   anticipate that there's a 50/50 chance -- and I could be wrong,

18   but there's a 50/50 chance that whenever your side, meaning --

19        **MR. VERHOEVEN:**  Waymo.

20        **THE COURT:**  -- Waymo, wants to take the deposition of

21   Mr. Lev- --

22        **MR. VERHOEVEN:**  Levandowski.

23        **THE COURT:**  -- Levandowski, that there will be a last-second

24   delay, because you say he needs separate counsel.  That will not

25   be good.  So I want you -- you're on notice you need to be

1    investigating this now, so that when the day comes, that's

2    cleared up, and that lawyer, if there is a new lawyer, is ready

3    to go.

4         MR. GONZALEZ:  Your Honor.

5         THE COURT:  Yes.

6         MR. GONZALEZ:  I will work with counsel.  But I just want

7    you to know, I have another trial set with a firm trial date,

8    and the case has been remanded from the appellate courts, for

9    September 12 in Los Angeles Superior.  Court that's supposed to

10   be a two-week -- a three-week trial.

11        THE COURT:  Okay.  If that's still on, you know, we will

12   adjust.  That will take priority.  But it's not going to knock

13   me off -- because that case will settle, and then you will have

14   plenty of time.

15        MR. GONZALEZ:  It probably won't.

16        THE COURT:  If it doesn't settle, then you've got a

17   get-out-of-jail-free card.

18        MR. GONZALEZ:  Just wanted to give you notice.  Thank

19   Your Honor.

20        THE COURT:  That's the only way to deal with those things is

21   to -- okay.

22        I see some issues in this case.  If you don't want me to

23   raise them, then I won't.  But if you want to hear what I have

24   to ask you about -- and you don't even have to answer now, I

25   just want you to be thinking about it.

1    **MR. VERHOEVEN:**  Yes, Your Honor.

2    **MR. GONZALEZ:**  Absolutely.

3    **THE COURT:**  All right.  There's an interplay between the

4    trade secrets and the patents.  And it comes up in at least two

5    ways that I can think of, and probably more that you can think

6    of.  But just to my simple mind, when you're applying for a

7    patent, you've got to disclose the best embodiment.  Right?  You

8    can't hold back something as a trade secret.  Did that occur

9    here?

10   Second, how many trade secrets that are being claimed here

11   actually got disclosed in the patent process?  I don't know.  I

12   mean, I have no way to -- but I -- it just kind of reads to me

13   like some of this must have been disclosed in the patent

14   process, and some -- talking about the long list of trade

15   secrets.

16   Here's another issue that occurred to me.  How many of the

17   trade secrets have been disclosed to the highway safety people?

18   Like the DMV, or highway safety?  Can you claim a trade secret

19   over something this has been disclosed to the regulators to see

20   how safe your products are?  I don't know.  That's a good

21   question.  I'm asking this because it's going -- you know.

22   Let's say you have disclosed on your side things that -- to

23   the DMV so you can get permission to ride your cars on the road.

24   To show how safe they are.  And then you turn around and say:

25   Well, those are trade secrets.  Maybe the law allows that, but

1    maybe not.  I don't know.  I raise that as a question.

2         Here's the other thing.  Possibly this case can be resolved

3    in one 30-minute evidentiary hearing in which Mr. Levandowski is

4    on the stand right here in the courtroom, and is questioned on

5    whether or not he downloaded 14,000 documents, or even one

6    document.  That is not maybe the key to the case, but is a key

7    to the case.  And I will be reading with great interest when the

8    Uber side responds as to whether or not he did that.  And the

9    other two guys, whether or not they downloaded something that

10   possibly they shouldn't have.

11        I have one last point.  And that is, I thought the list of

12   trade secrets had some very plausible trade secrets.  I'm not

13   saying they are, but they -- they didn't seem frivolous to me.

14   They seemed to have some -- something plausible behind it.

15        On the other hand, there were a number of them that I

16   thought were questionable.  And, and that puts everybody in a

17   tough position where we have to wind up litigating over things

18   that:  Are they really trade secrets?  And, and I -- it just

19   takes up so much time.

20        I'm not going to tell you what they are, because we have got

21   a public courtroom here.  But you can guess what they are.  And

22   I urge you to trim down your list of trade secrets to the ones

23   that you really think are going to hold up.

24        But in the meantime, there is a list, and we have got to go

25   forward.  And you can't hold back and say:  Oh, no, we don't

1  know this, we don't know that.  There's going to be a hearing on

2  a preliminary injunction.  And this is not a frivolous motion.

3      **MR. GONZALEZ:**  We are taking it quite serious, Your Honor.

4      **THE COURT:**  You should.  I think a -- you don't get many --

5  this part is public.  You don't get many cases where there is

6  pretty direct proof that somebody downloaded 14,000 documents,

7  and then left the next day.

8      **MR. GONZALEZ:**  (Nods head)

9      **THE COURT:**  So this is a serious proposition.

10     So, okay.  I'm here to help with your discovery disputes.  I

11 hope you don't have any.  But I want to try to cut through it if

12 I need to.

13     Are we done for today?  Or do you have anything more for me?

14     **MR. VERHOEVEN:**  Just one response, Your Honor, if you don't

15 mind.

16     With respect to Google -- or Waymo documents are previously

17 Google documents, because there was a change in structure.

18 Pardon me, Your Honor.

19     We have requested the other side, and renew that request.

20 If they find them, they should be returned immediately.  Not

21 wait for some other period of time.  And so we renew that

22 request.

23     **THE COURT:**  All right.  Well, it's on the record.  That's

24 not something that I'm prepared to order.  At least not -- that

25 would be wrong for me to say that that's got to be done now.

1    That is something that would have to be briefed.  But your

2    request is on the record.  They're aware of that request.  And

3    whatever legal consequence that has, it has.

4         **MR. VERHOEVEN:**  Thank Your Honor.

5         **THE COURT:**  All right.  Anything else?

6         **MR. GONZALEZ:**  No, Your Honor.  Thank you.

7         **MR. VERHOEVEN:**  No, Your Honor.

8         **THE COURT:**  You all have a good day; good luck to both

9    sides.

10        **MR. VERHOEVEN:**  Thank Your Honor.

11        (Proceedings concluded)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                        **<u>CERTIFICATE OF REPORTER</u>**

5          I, BELLE BALL, Official Reporter for the United States

6     Court, Northern District of California, hereby certify that the

7     foregoing is a correct transcript from the record of proceedings

8     in the above-entitled matter.

9

10                      _____/s/ Belle Ball_____

11                      Friday, March 17, 2017

12                  Belle Ball, CSR 8785, CRR, RDR

13

14

15

16

17

18

19

20

21

22

23

24

25