1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   ERIC A. TATE (CA SBN 178719)
    ETate@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone:     415.268.7000
6   Facsimile:     415.268.7522

7   Attorneys for Defendants
    UBER TECHNOLOGIES, INC.,
8   OTTOMOTTO LLC, and OTTO TRUCKING LLC

9   KAREN L. DUNN (*Pro Hac Vice* app. pending)
    kdunn@bsfllp.com
10  HAMISH P.M. HUME (*Pro Hac Vice* app. pending)
    hhume@bsfllp.com
11  BOIES SCHILLER FLEXNER LLP
    1401 New York Avenue, N.W.
12  Washington DC  20005
    Telephone:     202.237.2727
13  Facsimile:     202.237.6131

14  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
15  and OTTOMOTTO LLC

16              UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18                 SAN FRANCISCO DIVISION

19  WAYMO LLC,                      | Case No.       3:17-cv-00939-WHA

20              Plaintiff,          | **DEFENDANTS UBER
                                    | TECHNOLOGIES, INC., OTTOMOTTO
21          v.                      | LLC, AND OTTO TRUCKING LLC'S
                                    | JOINT NOTICE OF MOTION AND
22  UBER TECHNOLOGIES, INC.;        | MOTION TO COMPEL
    OTTOMOTTO LLC; OTTO TRUCKING LLC,| ARBITRATION OF, AND TO STAY,
23                                  | TRADE SECRET AND UCL CLAIMS
                                    | [9 U.S.C. §§ 3, 4]**
24              Defendants.         |
                                    | Date:     May 4, 2017
25                                  | Time:     8:00 a.m.
                                    | Ctrm:     8, 19th Floor
26                                  | Judge:   Honorable William H. Alsup
                                    | Trial Date: October 2, 2017
27
          **REDACTED VERSION OF DOCUMENT SUBMITTED UNDER SEAL**
28

1

## NOTICE OF MOTION AND MOTION

2     **PLEASE TAKE NOTICE** that on May 4, 2017, at 8:00 a.m., or as soon thereafter as the

3  matter may be heard, in the United States District Court for the Northern District of California,

4  San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA, in Courtroom

5  8 before the Honorable William Alsup, Defendants Uber Technologies, Inc., Ottomotto LLC, and

6  Otto Trucking LLC will, and hereby do, jointly move the Court pursuant to 9 U.S.C. § 4 for an

7  order to compel arbitration of, and, pursuant to 9 U.S.C. § 3, to stay, Waymo LLC's trade secret

8  misappropriation claims (i.e., the first and second causes of action) and its claim for violation of

9  Section 17200 of the California Business and Professions Code (i.e., the seventh cause of action)

10 in the above-referenced matter.

11     Defendants' motion is based on this Notice of Motion and Motion, the accompanying

12 Memorandum of Points and Authorities, the concurrently filed Declaration of Arturo J. González

13 and all exhibits thereto, all documents in the Court's file, any matters of which this Court may

14 take judicial notice, and on such other written and oral argument as may be presented to the

15 Court.

16

17  Dated: March 27, 2017          MORRISON & FOERSTER LLP

18
                                  By:  */s/ Arturo J. González*
19                                      ARTURO J. GONZÁLEZ

20                                Attorneys for Defendants
                                  UBER TECHNOLOGIES, INC.,
21                                OTTOMOTTO LLC, and OTTO TRUCKING LLC

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

I.   INTRODUCTION ...................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................... 3

    A.   Mr. Levandowski's Employment with Waymo ..................................... 3

        1.   The contracts ................................................................................ 3

        2.   The arbitration provisions ........................................................ 4

    B.   Waymo's Allegations in this Lawsuit ....................................................... 5

    ████ ████████████████████████ ....................................................... 5

III. THE LEGAL STANDARD .................................................................................... 6

IV.  ARGUMENT ............................................................................................................. 6

    A.   Equitable Estoppel Prevents Plaintiff from Circumventing ██████████
    ████████████████████████ ......................................................................... 6

        1.   Waymo alleges substantially interdependent and concerted
            misconduct between Levandowski and Defendants that is intimately
            connected with the obligations in Levandowski's underlying
            contracts. ..................................................................................... 7

        2.   Waymo should not be allowed to avoid arbitration by pleading
            around its arbitration requirement. .......................................... 9

    B.   The Broad Arbitration Clauses Require Waymo to Arbitrate Its Trade
    Secret and UCL Claims ................................................................................ 10

    C.   The Broad Arbitration Clause's Plain Language Envisioned the Possibility
    of Arbitrating Claims against Non-Signatories ....................................... 11

    D.   The Court Should Compel the Trade Secret and UCL Claims to Arbitration
    and Stay Them; the Remaining Claims should Proceed. ....................... 12

V.   CONCLUSION ......................................................................................................... 14

1

## <u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*Arellano v. T-Mobile USA, Inc.*,
5
    No. C 10-05663 WHA, 2011 WL 1842712 (N.D. Cal. May 16, 2011) ...................................10

6

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)...........................................................................................................6
7

*Bigler v. Harker Sch.*,
8
    153 Cal. Rptr. 3d 78 (Cal. Ct. App. 2013) .............................................................................11

9

*BrowserCam, Inc. v. Gomez, Inc.*,
10
    No. C 08-02959 WHA, 2009 WL 210513 (N.D. Cal. Jan. 27, 2009)......................................12

11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000).........................................................................................6
12

*Congdon v. Uber Techs., Inc.*,
13
    No. 16-CV-02499-YGR, 2016 WL 7157854 (N.D. Cal. Dec. 8, 2016) ...........................12, 13

14

*F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*,
    248 F. Supp. 2d 240 (S.D.N.Y. 2002) ....................................................................................11
15

16

*Ferguson v. Corinthian Colls., Inc.*,
    733 F.3d 928 (9th Cir. 2013)..................................................................................................10
17

*Goldman v. KPMG LLP*,
18
    92 Cal. Rptr. 3d 534 (2009) .............................................................................................7, 8

19

*Gray v. Conseco, Inc.*,
    No. SA CV 00-322 DOC (EEX), 2000 WL 1480273 (C.D. Cal. Sept. 29, 2000)..............10, 13
20

21

*Hall v. Internet Capital Grp., Inc.*,
    338 F. Supp. 2d 145 (D. Me. 2004) ......................................................................................11
22

*Howsam v. Dean Witter Reynolds, Inc.*,
23
    537 U.S. 79 (2002)...............................................................................................................6

24

*KPMG LLP v. Cocchi*,
    565 U.S. 18 (2011) .............................................................................................................12
25

26

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013)..............................................................................................2, 7
27

*Martinez v. Check 'N' Go of Cal., Inc.*,
28
    No. 15-cv-1864 H (RBB), 2015 WL 12672702 (S.D. Cal. Oct. 5, 2015) ...............................12

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
la-1344103

ii

*Mohebbi v. Khazen*,
    No. 13-CV-03044-BLF, 2014 WL 6845477 (N.D. Cal. Dec. 4, 2014) ....................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .........................................................................................................................6

*PacifiCare Health Sys., Inc. v. Book*,
    538 U.S. 401 (2003) .....................................................................................................................6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) .....................................................................................................................9

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999)......................................................................................................10

*Tech. & Intellectual Prop. Strategies Grp. PC v. Insperity, Inc.*,
    No. 12–CV–03163–LHK, 2012 WL 6001098 (N.D. Cal. Nov. 29, 2012)..............................12

*Torbit, Inc. v. Datanyze, Inc.*,
    No. 5:12-CV-05889-EJD, 2013 WL 572613 (N.D. Cal. Feb. 13, 2013) ............................7, 13

*Trinchitella v. Am. Realty Partners, LLC*,
    No. 2:15-cv-02365, 2016 WL 4041319 (E.D. Cal. July 27, 2016)...........................................13

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
    46 F. App'x 412 (9th Cir. 2002) ...............................................................................................12

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
    830 F.3d 1335 (Fed. Cir. 2016)..................................................................................................10

**Statutes**

9 U.S.C. § 1 *et seq.*......................................................................................................................6

9 U.S.C. § 3 ...............................................................................................................1, 3, 12, 13

9 U.S.C. § 4 ............................................................................................................................... 3

1

**STATEMENT OF ISSUES TO BE DECIDED**

2          This motion raises the following issues:

3          1.          Whether Waymo must arbitrate its trade secret misappropriation and California

4     UCL claims against Defendants under 9 U.S.C. § 4; and,

5          2.          Whether those claims should be stayed under 9 U.S.C. § 3 pending the outcome of

6     the arbitration, while the remaining claims proceed in this Court.

7

**MEMORANDUM OF POINTS AND AUTHORITIES**

8     **I.          INTRODUCTION**

9     ███████████████   █████   ████████████████████████

10    ████████████████████████████████████████████████████

11    ████████████████████████████████████████████████████

12    ████████████████████████████████████

13          At the heart of Plaintiff's trade secret claims are detailed allegations of purported

14    misconduct among Defendants and Levandowski, a "former manager in Waymo's self-driving

15    car project," who is "now leading the same effort for Uber."  (Am. Compl. ¶ 4, ECF No. 23.)

16    According to Waymo, Levandowski, while employed at Waymo, engaged in an elaborate scheme

17    to improperly obtain Waymo's trade secrets, and then to help Defendants "leverage[ the] stolen

18    information to shortcut the process" of "developing their own technology" in the driverless car

19    space.  (*Id.* ¶ 10.)  Waymo alleges "Uber jump-started its self-driving car efforts by using Waymo

20    trade secrets stolen by Anthony Levandowski" while he was employed by Waymo.  (Mot. Prelim.

21    Inj. at 1, ECF No. 24.)

22          Vital to Waymo's complaint is its contention that Levandowski was able to

23    misappropriate Waymo's information by virtue of his job at Waymo.  (*See* Am. Compl. ¶¶ 41–

24    _____

25          [1] In December 2016, Google spun off its driverless car group as a subsidiary of Google's
26    parent company Alphabet.  (*See* Mot. Prelim. Inj. at 3, ECF No. 24, and Jaffe Decl. Exs. 24–25 &
      31–32, ECF Nos. 27-4, 27-5, 27-11, 27-12.)  As Plaintiff does in its amended complaint and in its
27    preliminary injunction motion, Defendants likewise use the name "Waymo" to refer to Google's
      "self-driving car project from its inception in 2009 to the present."  (Am. Compl. at 7 n.2; Mot.
28    Prelim. Inj. at 3 n.2.)

49.)[2]  The amended complaint, which mentions Levandowski by name 35 times, describes how he allegedly laid the foundation for Defendants to obtain Waymo's intellectual property.  (*Id.* ¶¶ 41–54.)  Nonetheless, Waymo does not name Levandowski as a defendant, ██████████ ████████████████████████████████.  The reason is plain: through artful pleading, Waymo hopes to avoid arbitrating its trade secret and UCL claims, aiming instead to litigate them here.  Waymo's contracts, however, require that the claims be arbitrated.  As a result, Defendants have been forced to bring this motion ████████████████████████████████████ ████████████████████████████████████████████████

In this motion, Defendants seek to hold Waymo to its promise to arbitrate.  Waymo and Levandowski entered into broad arbitration agreements that reach the misappropriation and unfair competition claims in this case.  Principles of equitable estoppel bar Waymo from avoiding its arbitration obligations.  In this case, Waymo is alleging interdependent and concerted misconduct between Levandowski and Defendants that arises out of Levandowski's ████████████ ███████████████████████████████████ ████████████████████████████████ ████████████████████████████████████ ███████████████████████████████, Defendants are entitled to enforce Waymo's agreement to arbitrate.  *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013).  ██████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████ █████████████████████████████████████████ ██████████  In the face of such a broad arbitration agreement, it is irrelevant that Defendants are not signatories to the arbitration agreements. ████████████████████████

---

[2] (*See also* Mot. Prelim. Inj. at 1 ("Desperate to catch up with Waymo — by any means necessary — Uber jump-started its self-driving car efforts by using Waymo trade secrets stolen by Anthony Levandowski, a former Waymo employee.").)

███████████████████████████████████████████████ The Court should

hold Waymo to its end of the bargain.

The precepts of equitable estoppel, coupled with the broad ███████ arbitration

provisions Waymo agreed to, require that Waymo be compelled to arbitrate its trade secret and

UCL claims under 9 U.S.C. § 4.  Those claims should be stayed under 9 U.S.C. § 3, pending the

arbitration's outcome, while the remaining patent claims proceed.  ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

## II.     FACTUAL BACKGROUND

### A.     Mr. Levandowski's Employment with Waymo

Mr. Levandowski began his career at Waymo in April 2007 as an engineer, ultimately

working in the division responsible for developing Waymo driverless cars and related technology.

In 2011, Waymo promoted Levandowski to a managerial position, where he led a team of

Waymo engineers who developed LiDAR technology for Waymo's self-driving car project.  (*See*

González Decl. ¶ 3, Ex. 1, p. 10 ████████████████████.)

#### 1.     The contracts

During the course of his Waymo employment, Mr. Levandowski entered into two "At-

Will Employment, Confidential Information, Invention Assignment and Arbitration"

Agreements—one in 2009 and another in 2012.  (González Decl. ¶ 3, Ex. 1, p. 46 and p. 34.)[3]

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ The 2009 Agreement also contains certain carve-out

[3] ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
la-1344103

3

**2.      The arbitration provisions**

(2012 Empl. Agmt. § 14(a) (emphasis added), Ex. 1, p. 38.)[5]

1

### B.      Waymo's Allegations in this Lawsuit

2       Waymo's amended complaint mentions Levandowski by name 35 times, and Waymo's

3 motion for a preliminary injunction names him 32 times.  His alleged conduct as a Waymo

4 employee is the core for Waymo's trade secret and UCL claims.  Waymo contends that

5 Levandowski, just before departing Google, accessed "Waymo's highly confidential design

6 server" and then "downloaded [*sic*] over 14,000 proprietary files from that server," including "9.7

7 GBs of sensitive, secret, and valuable internal Waymo information."  (Am. Compl. ¶¶ 43–44.)[6]

8 According to Waymo, "2 GBs of the download related to Waymo's LiDAR technology,"

9 including "confidential specifications for each version of every generation of Waymo's LiDAR

10 circuit boards."  (*Id.* ¶ 44.)  Waymo says Levandowski also "used his Waymo credentials and

11 security clearances to download additional confidential Waymo documents."  (*Id.* ¶ 47.)

12       "After downloading all of this confidential information regarding Waymo's LiDAR

13 systems and other technology *and while still a Waymo employee*," Waymo claims,

14 "Mr. Levandowski attended meetings with high-level executives at Uber's headquarters in

15 San Francisco on January 14, 2016."  (*Id.* ¶ 48, emphasis added.)  The implication is that

16 Defendants were able to spur their own supposedly lagging self-driving car projects "by using

17 Waymo trade secrets stolen by Anthony Levandowski."  (Mot. Prelim. Inj. at 1.)

18

19

20

21

22

23

24

25

26

27

28    [6] Waymo's preliminary injunction motion similarly alleges that Levandowski "unlawfully" took "14,000+" documents.  (Mot. Prelim. Inj. at 2.)

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
la-1344103

5

1

2

3

4

5

6

7  ## III.    THE LEGAL STANDARD

8        The Federal Arbitration Act (FAA) reflects a liberal federal policy favoring arbitration

9  and requires rigorous enforcement of arbitration agreements.[7]  *See AT&T Mobility LLC v.*

10  *Concepcion*, 563 U.S. 333, 339 (2011) (holding that "courts must place arbitration agreements on

11  an equal footing with other contracts").  The Court's role in determining whether a dispute is

12  arbitrable is "limited to determining (1) whether a valid agreement to arbitrate exists[8] and, if it

13  does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho*

14  *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also PacifiCare Health Sys.,*

15  *Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79,

16  83–84 (2002).  "If the response is affirmative on both counts, then the Act requires the court to

17  enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130.

18  ## IV.    ARGUMENT

19        A.    **Equitable Estoppel Prevents Plaintiff from Circumventing**

20

21        The principles of equitable estoppel compel Waymo to arbitrate its trade secret and UCL

22  claims, because Waymo alleges substantially interdependent and concerted misconduct among

23  _____

24  [7]

25                                                        *see also Moses H. Cone Mem'l Hosp. v. Mercury*
   *Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (holding that federal substantive law of arbitrability
26  generally applies to arbitration agreements that come within the coverage of the FAA).

27        [8] There should be no dispute concerning the validity of the arbitration agreements
   themselves in view of Waymo's
28

Levandowski—a signatory—and the non-signatory Defendants, and that conduct is founded in or intimately connected with Waymo's agreement to arbitrate its disputes with Levandowski.[9]

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)).  Under California law, when a non-signatory seeks to enforce an arbitration clause, equitable estoppel applies "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."  *Kramer*, 705 F.3d at 1128–29.

> **1.    Waymo alleges substantially interdependent and concerted misconduct between Levandowski and Defendants that is intimately connected with the obligations in Levandowski's underlying contracts.**

Where, as here, a non-signatory seeks to compel a signatory to arbitrate, equitable estoppel may operate "to protect the vitality of arbitration agreements and federal arbitration policy."  *Torbit, Inc. v. Datanyze, Inc.*, No. 5:12-CV-05889-EJD, 2013 WL 572613, at *4 (N.D. Cal. Feb. 13, 2013) (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009); *see also Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000)). Equitable estoppel applies when the signatory alleges substantially interdependent and concerted misconduct "founded in or intimately connected with the obligations of the underlying agreement."  *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 541 (2009).  The "allegations of

---

[9] There is no reasonable dispute that Waymo is a signatory to the 2009 and 2012 Employment Agreements.  Google spun Waymo off just this past December.  (Am. Compl. ¶ 25 ("In 2016, Google's self-driving car program became Waymo, a stand-alone company operating alongside Google and other technology companies under the umbrella of Alphabet Inc.").)  Indeed, Waymo—like Google—"is a subsidiary of Alphabet Inc. . . ."  (*Id.* ¶ 12; *see also* Mot. Prelim. Inj. at 3, ECF No. 24, and Jaffe Declaration Exs. 24-25 & 31-32, ECF Nos. 27-4, 27-5, 27-11, 27-12.) ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████  (2009 Empl. Agmt. at 1, Gonzalez Decl. Ex. 1, p. 46; 2012 Empl. Agmt. at 1, Ex. 1, p. 34.)  Waymo's own amended complaint refers to Levandowski as "a Waymo employee."  (Am. Compl. ¶ 42.) █████████████████████████████████████████

1   collusive behavior must also establish that the plaintiff's claims against the nonsignatory are

2   intimately founded in and intertwined with the obligations imposed by the [contract containing

3   the arbitration clause]."  *Id.* at 545 (internal quotation marks omitted; alteration in original).

4        Here, Waymo alleges throughout its amended complaint and in its motion for preliminary

5   injunction that Defendants and Levandowski, through concerted conduct among them,

6   misappropriated Waymo's trade secrets—and that Levandowski was able to accomplish the theft

7   by virtue of his job at Waymo by, for example, using "his Waymo credentials and security

8   clearances to download additional confidential Waymo documents."  (Am. Compl. ¶ 47; *see also*

9   *id.* ¶¶ 4–6, 41–49, 55–58, 67, 80.)  Waymo's complaint accuses Levandowski of "downloading

10  all of this confidential information regarding Waymo's LiDAR systems and other technology . . .

11  while still a Waymo employee."  (*Id.* ¶ 48, emphasis added.)

12       Waymo's allegations, and its claims against Defendants, make one thing clear: They are

13  all inextricably bound up with Levandowski's employment relationship, ███████████████

14  ███████████████████████████████████████████████████████████████

15  ████████████████████████  Going well beyond mere allegations of concerted misconduct

16  alone, Waymo plainly asserts instances of interdependent collusion that Levandowski allegedly

17  engaged in while he worked for Waymo and that, if true, ██████████████████████████

18  ██████████████████  (*See*, *e.g.*, Am. Compl. ¶¶ 72, 82; Droz Decl. ISO Mot. Prelim.

19  Inj. ¶ 30, ECF No. 24-3.)  In other words, Waymo's allegations of concerted misconduct "are

20  intimately founded in and intertwined with the obligations imposed by the [contract[s] containing

21  the arbitration clause]."  *Goldman*, 92 Cal. Rptr. 3d at 545 (internal quotation omitted).  There is

22  no way to evaluate the claims against Defendants without also considering the extent and nature

23  of the wrongful acts Levandowski supposedly committed, in alleged concert with Defendants,

24  while he was working for Waymo.

25       The crux of Waymo's allegations is that Levandowski leveraged his employment at

26  Waymo—and his concomitant access to Waymo's trade secrets—to misappropriate those secrets

27  and to give them to the Defendants ██████████████████████████  Waymo even

28  refers to the employment agreements Levandowski signed, which limited the use of confidential

1  information and required arbitration. [10]  Under these circumstances, the concerted conduct

2  Waymo alleges is intertwined with the ████████████████████████████████████████

3  ████████████████████  Those contracts require arbitration of the trade secret and UCL claims.

4          **2.**     **Waymo should not be allowed to avoid arbitration by pleading around**

5                   **its arbitration requirement.**

6         The Court should prohibit Waymo from using artful pleading to avoid its arbitration

7  obligation.  Waymo brings three separate but related actions: ████████████████████████

8  ████████████████████████████████████████████  (González Decl. ¶¶ 3–4.)  In the

9  lawsuit, despite the myriad allegations about Levandowski's serious misconduct while a Waymo

10  employee, Waymo omits him as a named defendant. ████████████████████████████

11  ████████████████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  Waymo's purpose for proceeding in this curious manner seems clear: through artful pleading, it

16  hopes to avoid arbitrating the misappropriation and UCL claims at all costs. ████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████

19  ██████████████████████

20

21

22

23  _____

24        [10] Waymo notes that it "requires all employees, contractors, consultants, vendors, and manufacturers to sign confidentiality agreements before any confidential or proprietary trade

25  secret information is disclosed to them."  (Am. Compl. ¶¶ 72, 82; Mot. Prelim. Inj. at 5.)  In a declaration Waymo submitted in support of its preliminary injunction motion, Waymo refers

26  more specifically—though still vaguely—to Levandowski's written agreement: "As a condition of employment, I understand Waymo requires all employees—**including members of the**

27  **LiDAR team who have left Waymo to work for Defendants**—to enter into written agreements to maintain the confidentiality of proprietary and trade secret information, and not to misuse such

28  information."  (Droz Decl. ISO Mot. Prelim. Inj. ¶ 30, ECF No. 24-3, emphasis added.)

**B.     The Broad Arbitration Clauses Require Waymo to Arbitrate Its Trade Secret and UCL Claims.**

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████     *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (labeling as "broad" a clause that required arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement").  The Ninth Circuit "has made clear that, when an otherwise-valid arbitration agreement includes such broad language, 'all doubts are to be resolved in favor of arbitrability.'"[11]  *Mohebbi v. Khazen*, No. 13-CV-03044-BLF, 2014 WL 6845477, at *7 (N.D. Cal. Dec. 4, 2014) (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)); *Gray v. Conseco, Inc.*, No. SA CV 00-322 DOC (EEX), 2000 WL 1480273, at *5 (C.D. Cal. Sept. 29, 2000) ("When the language 'arising out of and relating to' appears in an arbitration provision, courts interpret the provision as a 'broad' arbitration clause.").

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████     These provisions plainly cover Waymo's trade secret claims, which are founded on Levandowski's purported misconduct as an employee of Waymo, on activities Levandowski could only have carried out by virtue of his employment, ████████████████████████████████████████████ ████████████████████████████     They also cover Waymo's UCL claim, which is based on its trade secret claims, rather than its patent infringement claims.  (Am. Compl. ¶¶ 143–48.) Both the trade secret claims and UCL claims are arbitrable.  *See Simula*, 175 F.3d at 724–25

---

[11] Because Waymo alleges patent infringement claims, this case comes within the Federal Circuit's appellate jurisdiction.  The Federal Circuit applies regional circuit law to determine whether claims fall within the scope of an arbitration clause.  *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d 1335, 1338 (Fed. Cir. 2016) (citing *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002)).

("Courts routinely refer claims for misappropriation of trade secrets to arbitration."); *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 937–38 (9th Cir. 2013) (holding that arbitration clause was "sufficiently broad to cover" UCL claims); *Arellano v. T-Mobile USA, Inc.*, No. C 10-05663 WHA, 2011 WL 1842712, at *2 (N.D. Cal. May 16, 2011) (Alsup, J.) (granting motion to compel arbitration of UCL claims and stay claims for injunctive relief).

**C.      The Broad Arbitration Clause's Plain Language Envisioned the Possibility of Arbitrating Claims against Non-Signatories.**

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████  *See, e.g.*, *F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*, 248 F. Supp. 2d 240, 247 (S.D.N.Y. 2002) (noting the distinction between arbitration clauses that specifically identify the parties to be bound and "a broader form of arbitration clause which does not restrict the parties").  "If an arbitration clause is broad, it may govern disputes of non-signatories and parties not listed in the contract."  *Id.*; *see also Hall v. Internet Capital Grp., Inc.*, 338 F. Supp. 2d 145, 151 (D. Me. 2004) (broadly worded arbitration clauses can reach claims with non-signatories).

███████████████████████████████████████████

█████████████████████████████████████  Waymo and Levandowski agreed to arbitrate:

███████████████████████████████

(2012 Empl. Agmt. § 14(a) (emphasis added), Ex. 1, p. 38.)

███████████████████████  *See Bigler v. Harker Sch.*, 153 Cal. Rptr. 3d 78, 88–89 (Cal. Ct. App. 2013) (noting that court should consider the usual and ordinary meaning of the contract language to determine the arbitration clause's scope).  ████████

████████████████████████████████

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ██████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ██████████████████████████████████████████████

6 ████████████████████████ The claims here plainly do.

7           **D.     The Court Should Compel the Trade Secret and UCL Claims to Arbitration and Stay Them; the Remaining Claims should Proceed.**

8

9           Because the trade secret and UCL claims are arbitrable, they should be referred to

10 arbitration and stayed pending the outcome of the arbitration, including, without limitation, all

11 discovery related thereto. ████████████████████████████████████████

12 ████████████████████████████████████████████████

13 ████████████████████████████████

14           Where, as here, the dispute involves "multiple claims, some arbitrable and some not, the

15 former must be sent to arbitration even if this will lead to piecemeal litigation" or would result in

16 "'the possibly inefficient maintenance of separate proceedings in different forums.'" *KPMG LLP*

17 *v. Cocchi*, 565 U.S. 18, 19, 22 (2011) (per curiam) (quoting *Dean Witter*, 470 U.S. at 217–18).

18           Section 3 of the FAA provides that a court shall, on application of one of the parties, stay

19 trial pending arbitration in any suit where any issue is referable to arbitration and the court refers

20 the suit to arbitration. 9 U.S.C. § 3; *Congdon v. Uber Techs., Inc.*, No. 16-CV-02499-YGR, 2016

21 WL 7157854, at *5 (N.D. Cal. Dec. 8, 2016). Whether to stay the *entire* action, including issues

22 not referred to arbitration, is a matter for the district court's discretion. *BrowserCam, Inc. v.*

23 *Gomez, Inc.*, No. C 08-02959 WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (Alsup, J.)

24 (quoting *United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427

25 (9th Cir. 1985)); *Martinez v. Check 'N' Go of Cal., Inc.*, No. 15-cv-1864 H (RBB), 2015 WL

26 12672702, at *6 (S.D. Cal. Oct. 5, 2015) (staying arbitrable claims but declining to stay the lone

27 non-arbitrable claim).

28           In deciding whether to stay non-arbitrable claims, court consider several factors, including

1    whether the arbitrable claims predominate over the non-arbitrable ones, and whether the

2    resolution of the non-arbitrable claims will depend on the arbitrator's rulings concerning the

3    arbitrable claims.  *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415

4    (9th Cir. 2002) (unpublished) (citing *Similar Entm't, Inc. v. Silva Entm't, Inc.*, 44 F. Supp. 2d

5    986, 997 (D. Minn. 1999)); *see also Tech. & Intellectual Prop. Strategies Grp. PC v. Insperity,*

6    *Inc.*, No. 12–CV–03163–LHK, 2012 WL 6001098, at *13 (N.D. Cal. Nov. 29, 2012) (non-

7    arbitrable claims should be stayed when resolution of the arbitrable claims might have a

8    conclusive effect on the non-arbitrable ones).  They also evaluate "the economy and efficiency

9    that result from avoiding duplication of effort" and "how suited the dispute is to the arbitration

10   process[.]"  *Gray*, 2000 WL 1480273, at *8 (stay warranted where "non-arbitrable claim is based

11   on exactly the same facts and issues as the arbitrable claims"); *Trinchitella v. Am. Realty*

12   *Partners, LLC*, No. 2:15-cv-02365, 2016 WL 4041319, at *13 (E.D. Cal. July 27, 2016)

13   (evaluating the "similarity of the issues of law and fact among" the arbitrable and non-arbitrable

14   claims and discussing "the possibility of inconsistent rulings").  Courts likewise "weigh the

15   competing interests that will be affected," including, for example, whether proceeding without a

16   stay will impose hardship or in equity, or would complicate "'issues, proof, and questions of

17   law . . . .'"  *Congdon*, 2016 WL 7157854, at *5 (quoting *Roderick v. Mazzetti & Assocs., Inc.*,

18   No. C04-2436 MHP, 2004 WL 2554453, at *3 (N.D. Cal. Nov. 9, 2004)).

19          Here, the Court must stay Waymo's trade secret and UCL claims under the FAA's

20   mandatory stay provisions, if it finds those claims to be arbitrable.  9 U.S.C. § 3.  ███████████

21   ████████████████████████████████████████████████████████████████████████████████

22   ████████████████████████      *See generally Torbit*, 2013 WL 572613, at *5 (granting motion to compel

23   arbitration and staying the case, while denying the preliminary injunction as moot in light of the

24   stay).

25          At the same time, however, the Court should not stay Waymo's patent claims.  An

26   arbitration panel's resolution of Waymo's trade secret and UCL claims will not affect the patent

27   claims, and the trade secret claims and UCL claims do not predominate over the patent claims.

28   Whatever an arbitration panel might decide regarding whether the Defendants misappropriated

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
la-1344103

13

1  Waymo's trade secrets, that decision will have little or no bearing on the patent claims.  For

2  example, resolution of the issue of whether Defendants misappropriated Waymo's trade secrets

3  will not resolve the issue of whether Defendants' LiDAR technology infringes Waymo's patents.

4  Consequently, there is no economy or efficiency to be realized from freezing the patent claims

5  pending resolution of the arbitrable claims.  Thus, although the Court must stay the trade secret

6  and UCL claims if it finds them to be arbitrable, resolution of the remaining claims should

7  proceed in this forum, on course.

8  **V.      CONCLUSION**

9  ████████████████████████████████████████████

10 ████████████████████████████████████████████

11 Given the conduct Waymo alleges Levandowski engaged in while he was a Waymo employee, it

12 is clear that the arbitration provisions, by their terms, reach the trade secret and UCL claims

13 against Defendants.  Waymo should be required to abide by the terms of the contracts it made.

14      Waymo especially should not be allowed to avoid arbitration where it has alleged

15 pervasive collusion between Levandowski and Defendants, and where its claims are connected

16 with, and founded on, Levandowski's alleged misconduct while he was a Waymo employee—

17 conduct that his employment contracts governed.  Waymo certainly shouldn't be allowed to

18 selectively manipulate its claims and dart back-and-forth between forums, to end-run its

19 arbitration obligation.  Defendants ask that this Court, under the terms of the far-reaching

20 arbitration provisions, and under principles of equitable estoppel, compel Waymo to arbitrate its

21 trade secret and UCL claims against Defendants and stay those claims pending the arbitration.

23 Dated: March 27, 2017                    MORRISON & FOERSTER LLP

25                                          By:  /s/ Arturo J. González
                                                 ARTURO J. GONZÁLEZ

26                                          Attorneys for Defendants
27                                          UBER TECHNOLOGIES, INC.,
                                            OTTOMOTTO LLC, and OTTO TRUCKING LLC