MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
UBER TECHNOLOGIES, INC.,
OTTOMOTTO LLC, and OTTO TRUCKING LLC

KAREN L. DUNN (*Pro Hac Vice* app. pending)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice* app. pending)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Telephone: 202.237.2727
Facsimile: 202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., OTTOMOTTO LLC, AND OTTO TRUCKING LLC'S JOINT NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS [9 U.S.C. §§ 3, 4]**<br><br>Date: May 4, 2017<br>Time: 8:00 a.m.<br>Ctrm: 8, 19th Floor<br>Judge: Honorable William H. Alsup<br>Trial Date: October 2, 2017 |

**DOCUMENT SUBMITTED UNDER SEAL**

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on May 4, 2017, at 8:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA, in Courtroom 8 before the Honorable William Alsup, Defendants Uber Technologies, Inc., Ottomotto LLC, and Otto Trucking LLC will, and hereby do, jointly move the Court pursuant to 9 U.S.C. § 4 for an order to compel arbitration of, and pursuant to 9 U.S.C. § 3, to stay, Waymo LLC's trade secret misappropriation claims (i.e., the first and second causes of action) and its claim for violation of Section 17200 of the California Business and Professions Code (i.e., the seventh cause of action) in the above-referenced matter.

Defendants' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Arturo J. González and all exhibits thereto, all documents in the Court's file, any matters of which this Court may take judicial notice, and on such other written and oral argument as may be presented to the Court.

Dated: March 27, 2017                MORRISON & FOERSTER LLP

                                     By: */s/ Arturo J. González*
                                         ARTURO J. GONZÁLEZ

                                     Attorneys for Defendants
                                     UBER TECHNOLOGIES, INC.,
                                     OTTOMOTTO LLC, and OTTO TRUCKING LLC

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
la-1344103

1

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ..................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................... 1

I. INTRODUCTION ...................................................................................................................... 1

II. FACTUAL BACKGROUND .................................................................................................... 3

    A. Mr. Levandowski's Employment with Waymo .............................................................. 3

        1. The contracts ...................................................................................................... 3

        2. The arbitration provisions .................................................................................. 4

    B. Waymo's Allegations in this Lawsuit .............................................................................. 5

    C. Related Arbitration Demands ........................................................................................... 5

III. THE LEGAL STANDARD ....................................................................................................... 6

IV. ARGUMENT ............................................................................................................................. 6

    A. Equitable Estoppel Prevents Plaintiff from Circumventing the Arbitration Provision in Levandowski's Employment Agreements. ......................................... 6

        1. Waymo alleges substantially interdependent and concerted misconduct between Levandowski and Defendants that is intimately connected with the obligations in Levandowski's underlying contracts. ........................................................................................................ 7

        2. Waymo should not be allowed to avoid arbitration by pleading around its arbitration requirement. ............................................................. 9

    B. The Broad Arbitration Clauses Require Waymo to Arbitrate Its Trade Secret and UCL Claims. .................................................................................................. 10

    C. The Broad Arbitration Clause's Plain Language Envisioned the Possibility of Arbitrating Claims against Non-Signatories. ............................................................ 11

    D. The Court Should Compel the Trade Secret and UCL Claims to Arbitration and Stay Them; the Remaining Claims should Proceed. ................................................ 12

V. CONCLUSION ......................................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arellano v. T-Mobile USA, Inc.*,
   No. C 10-05663 WHA, 2011 WL 1842712 (N.D. Cal. May 16, 2011) ...................10

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)..................................................................................................6

*Bigler v. Harker Sch.*,
   153 Cal. Rptr. 3d 78 (Cal. Ct. App. 2013) ..............................................................11

*BrowserCam, Inc. v. Gomez, Inc.*,
   No. C 08-02959 WHA, 2009 WL 210513 (N.D. Cal. Jan. 27, 2009)......................12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000)..................................................................................6

*Congdon v. Uber Techs., Inc.*,
   No. 16-CV-02499-YGR, 2016 WL 7157854 (N.D. Cal. Dec. 8, 2016) ............12, 13

*F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*,
   248 F. Supp. 2d 240 (S.D.N.Y. 2002).....................................................................11

*Ferguson v. Corinthian Colls., Inc.*,
   733 F.3d 928 (9th Cir. 2013)...................................................................................10

*Goldman v. KPMG LLP*,
   92 Cal. Rptr. 3d 534 (2009).................................................................................7, 8

*Gray v. Conseco, Inc.*,
   No. SA CV 00-322 DOC (EEX), 2000 WL 1480273 (C.D. Cal. Sept. 29, 2000)..............10, 13

*Hall v. Internet Capital Grp., Inc.*,
   338 F. Supp. 2d 145 (D. Me. 2004) ........................................................................11

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002)....................................................................................................6

*KPMG LLP v. Cocchi*,
   565 U.S. 18 (2011) .................................................................................................12

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013)...............................................................................2, 7

*Martinez v. Check 'N' Go of Cal., Inc.*,
   No. 15-cv-1864 H (RBB), 2015 WL 12672702 (S.D. Cal. Oct. 5, 2015) ...............12

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
la-1344103

ii

*Mohebbi v. Khazen*,
   No. 13-CV-03044-BLF, 2014 WL 6845477 (N.D. Cal. Dec. 4, 2014) ................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................................................. 6

*PacifiCare Health Sys., Inc. v. Book*,
   538 U.S. 401 (2003) ............................................................................................................. 6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967) ............................................................................................................. 9

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) .............................................................................................. 10

*Tech. & Intellectual Prop. Strategies Grp. PC v. Insperity, Inc.*,
   No. 12–CV–03163–LHK, 2012 WL 6001098 (N.D. Cal. Nov. 29, 2012) .......................... 12

*Torbit, Inc. v. Datanyze, Inc.*,
   No. 5:12-CV-05889-EJD, 2013 WL 572613 (N.D. Cal. Feb. 13, 2013) ........................ 7, 13

*Trinchitella v. Am. Realty Partners, LLC*,
   No. 2:15-cv-02365, 2016 WL 4041319 (E.D. Cal. July 27, 2016) ..................................... 13

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
   46 F. App'x 412 (9th Cir. 2002) ........................................................................................ 12

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
   830 F.3d 1335 (Fed. Cir. 2016) .......................................................................................... 10

**Statutes**

9 U.S.C. § 1 *et seq.* ....................................................................................................................... 6

9 U.S.C. § 3 ........................................................................................................................ 1, 3, 12, 13

9 U.S.C. § 4 ................................................................................................................................... 3

**STATEMENT OF ISSUES TO BE DECIDED**

This motion raises the following issues:

1. Whether Waymo must arbitrate its trade secret misappropriation and California UCL claims against Defendants under 9 U.S.C. § 4; and,

2. Whether those claims should be stayed under 9 U.S.C. § 3 pending the outcome of the arbitration, while the remaining claims proceed in this Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

The agreements Waymo[1] signed with its former employee, Anthony Levandowski, require arbitration of all disputes "with anyone" that arise out of, relate to, or result from Levandowski's employment. Waymo's trade secret and unfair competition claims must be referred to arbitration because they arise out of, relate to, and result from Levandowski's employment.

At the heart of Plaintiff's trade secret claims are detailed allegations of purported misconduct among Defendants and Levandowski, a "former manager in Waymo's self-driving car project," who is "now leading the same effort for Uber." (Am. Compl. ¶ 4, ECF No. 23.) According to Waymo, Levandowski, while employed at Waymo, engaged in an elaborate scheme to improperly obtain Waymo's trade secrets, and then to help Defendants "leverage[ the] stolen information to shortcut the process" of "developing their own technology" in the driverless car space. (*Id.* ¶ 10.) Waymo alleges "Uber jump-started its self-driving car efforts by using Waymo trade secrets stolen by Anthony Levandowski" while he was employed by Waymo. (Mot. Prelim. Inj. at 1, ECF No. 24.)

Vital to Waymo's complaint is its contention that Levandowski was able to misappropriate Waymo's information by virtue of his job at Waymo. (*See* Am. Compl. ¶¶ 41–

---

[1] In December 2016, Google spun off its driverless car group as a subsidiary of Google's parent company Alphabet. (*See* Mot. Prelim. Inj. at 3, ECF No. 24, and Jaffe Decl. Exs. 24–25 & 31–32, ECF Nos. 27-4, 27-5, 27-11, 27-12.) As Plaintiff does in its amended complaint and in its preliminary injunction motion, Defendants likewise use the name "Waymo" to refer to Google's "self-driving car project from its inception in 2009 to the present." (Am. Compl. at 7 n.2; Mot. Prelim. Inj. at 3 n.2.)

49.)[2] The amended complaint, which mentions Levandowski by name 35 times, describes how he allegedly laid the foundation for Defendants to obtain Waymo's intellectual property. (*Id.* ¶¶ 41–54.) Nonetheless, Waymo does not name Levandowski as a defendant, even though Waymo has separately brought arbitration claims against him. The reason is plain: through artful pleading, Waymo hopes to avoid arbitrating its trade secret and UCL claims, aiming instead to litigate them here. Waymo's contracts, however, require that the claims be arbitrated. As a result, Defendants have been forced to bring this motion and to initiate a separate arbitration for a declaration that Waymo's trade secret and UCL claims are meritless, which Defendants will file this week.

In this motion, Defendants seek to hold Waymo to its promise to arbitrate. Waymo and Levandowski entered into broad arbitration agreements that reach the misappropriation and unfair competition claims in this case. Principles of equitable estoppel bar Waymo from avoiding its arbitration obligations. In this case, Waymo is alleging interdependent and concerted misconduct between Levandowski and Defendants that arises out of Levandowski's employment relationship with Waymo. Because those allegations are "founded in or intimately connected with the obligations" of Levandowski's employment agreements with Waymo and because those agreements include arbitration provisions covering all disputes arising out of, relating to, or resulting from Levandowski's employment, Defendants are entitled to enforce Waymo's agreement to arbitrate. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013).

Moreover, the plain language of the agreements reveal that Waymo made a promise to arbitrate ***all*** disputes ***with anyone***, when the dispute ***arises out of, relates to, or results from*** Levandowski's employment. The provision's "with anyone" language makes clear that both Levandowski and Waymo mutually agreed to arbitrate—not just disputes between the two of them—but ***all*** disputes ***with anyone***, so long as the controversy broadly relates to Levandowski's employment. In the face of such a broad arbitration agreement, it is irrelevant that Defendants are not signatories to the arbitration agreements. Both Waymo and Levandowski committed

---

[2] (*See also* Mot. Prelim. Inj. at 1 ("Desperate to catch up with Waymo — by any means necessary — Uber jump-started its self-driving car efforts by using Waymo trade secrets stolen by Anthony Levandowski, a former Waymo employee.").)

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
la-1344103

2

themselves contractually to arbitrate employment-related disputes with anyone. The Court should hold Waymo to its end of the bargain.

The precepts of equitable estoppel, coupled with the broad "with anyone" arbitration provisions Waymo agreed to, require that Waymo be compelled to arbitrate its trade secret and UCL claims under 9 U.S.C. § 4. Those claims should be stayed under 9 U.S.C. § 3, pending the arbitration's outcome, while the remaining patent claims proceed. Additionally, because an arbitration panel can address any motion for a preliminary injunction, the Court should also stay the preliminary injunction motion in favor of prompt consideration of the request by arbitrators.

## II.     FACTUAL BACKGROUND

### A.     Mr. Levandowski's Employment with Waymo

Mr. Levandowski began his career at Waymo in April 2007 as an engineer, ultimately working in the division responsible for developing Waymo driverless cars and related technology. In 2011, Waymo promoted Levandowski to a managerial position, where he led a team of Waymo engineers who developed LiDAR technology for Waymo's self-driving car project. (*See* González Decl. ¶ 3, Ex. 1, p. 10 (Waymo JAMS Arbitration Demand).)

#### 1.     The contracts

During the course of his Waymo employment, Mr. Levandowski entered into two "At-Will Employment, Confidential Information, Invention Assignment and Arbitration" Agreements—one in 2009 and another in 2012. (González Decl. ¶ 3, Ex. 1, p. 46 and p. 34.)[3] The 2012 Agreement requires the employee to "hold in strictest confidence" Waymo's "Confidential Information" and to not disclose it without permission. (2012 Empl. Agmt. § 2(a), González Decl., Ex. 1, p. 34; *accord* 2009 Empl. Agmt. § 2(a), Ex. 1, p. 46.) The agreements broadly define "Company Confidential Information" to include, among other things, trade secrets. (2012 Empl. Agmt. § 2(a), Ex. 1, p. 34.) The 2009 Agreement also contains certain carve-out

---

[3] In an arbitration demand filed by Waymo against Levandowski (discussed in more detail below), Waymo brought claims against Levandowski based on both the 2009 and 2012 Employment Agreements, which Waymo attached as exhibits to its demand. For simplicity's sake, Defendants include the demand along with the Employment Agreements all as one exhibit to the González Declaration (Exhibit 1), but have added pagination for the Court's convenience.

provisions that identify inventions and trade secrets that Levandowski conceived before his Waymo employment or that Waymo otherwise agreed Levandowski owns. (2009 Empl. Agmt. § 3(a), Ex. 1, p. 47.)

### 2. The arbitration provisions

Both the 2009 and 2012 Employment Agreements contain broad, virtually identical arbitration provisions. The 2012 Agreement requires arbitration of *all* disputes with *anyone* arising out of, relating to, or resulting from Levandowski's employment with the Company:[4]

> IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, **ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES**, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, **I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE** (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE), WHETHER BROUGHT ON AN INDIVIDUAL, GROUP, OR CLASS BASIS, **ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY** OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, **SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1280 THROUGH 1294.2, INCLUDING SECTION 1283.05 (THE "RULES") AND PURSUANT TO CALIFORNIA LAW.**

(2012 Empl. Agmt. § 14(a) (emphasis added), Ex. 1, p. 38.)[5]

---

[4] Both agreements define "Company" to include "Google Inc., its subsidiaries, affiliates, successors or assigns." (2009 Empl. Agmt. at 1, Ex. 1, p. 46; 2012 Empl. Agmt. at 1, Ex. 1, p. 34).)

[5] The 2009 Agreement's arbitration provision is substantively similar. (*See* 2009 Empl. Agmt. § 15, Gonzalez Decl. Ex. 1, p. 50.) For purposes of this motion, the differences between the two clauses are immaterial. The 2012 Agreement expressly invokes the Federal Arbitration Act; the 2009 Agreement does not. (*See* 2012 Empl. Agmt. § 14(f), Ex. 1, pp. 39–40.)

### B. Waymo's Allegations in this Lawsuit

Waymo's amended complaint mentions Levandowski by name 35 times, and Waymo's motion for a preliminary injunction names him 32 times. His alleged conduct as a Waymo employee is the core for Waymo's trade secret and UCL claims. Waymo contends that Levandowski, just before departing Google, accessed "Waymo's highly confidential design server" and then "downloaded [*sic*] over 14,000 proprietary files from that server," including "9.7 GBs of sensitive, secret, and valuable internal Waymo information." (Am. Compl. ¶¶ 43–44.)[6] According to Waymo, "2 GBs of the download related to Waymo's LiDAR technology," including "confidential specifications for each version of every generation of Waymo's LiDAR circuit boards." (*Id.* ¶ 44.) Waymo says Levandowski also "used his Waymo credentials and security clearances to download additional confidential Waymo documents." (*Id.* ¶ 47.)

"After downloading all of this confidential information regarding Waymo's LiDAR systems and other technology ***and while still a Waymo employee***," Waymo claims, "Mr. Levandowski attended meetings with high-level executives at Uber's headquarters in San Francisco on January 14, 2016." (*Id.* ¶ 48, emphasis added.) The implication is that Defendants were able to spur their own supposedly lagging self-driving car projects "by using Waymo trade secrets stolen by Anthony Levandowski." (Mot. Prelim. Inj. at 1.)

### C. Related Arbitration Demands

On October 28, 2016, Waymo filed two arbitration demands with JAMS against Levandowski, claiming that he took and improperly used Waymo's confidential information to assist Defendants. (*See* González Decl. ¶ 2, Exs. 1, 2.) In one of those demands, Waymo alleges that Levandowski breached the confidentiality provisions of his employment agreements by using Waymo's confidential employee salary information to make targeted offers to Waymo's employees. (*See* González Decl. ¶ 3 & Ex. 1.) In the second demand, Waymo similarly contends Levandowski improperly used Waymo's confidential information to induce Waymo employees to join a competing driverless-car enterprise. (*See id.* ¶ 4 & Ex. 2.) Even though Waymo claims in

---

[6] Waymo's preliminary injunction motion similarly alleges that Levandowski "unlawfully" took "14,000+" documents. (Mot. Prelim. Inj. at 2.)

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
la-1344103

5

both arbitrations that Levandowski improperly took and used Waymo's confidential information, it makes no claims of trade secret misappropriation in that forum. (*Id.* Exs. 1, 2.)

This week, Defendants will initiate arbitration proceedings, seeking a declaratory judgment that Waymo's claims that Defendants misappropriated trade secrets and violated the UCL are meritless. Defendants will initiate this arbitration proceeding based upon the broad arbitration provisions in Levandowski's employment agreements with Waymo. (*Id.* ¶ 6.)

## III. THE LEGAL STANDARD

The Federal Arbitration Act (FAA) reflects a liberal federal policy favoring arbitration and requires rigorous enforcement of arbitration agreements.[7] *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (holding that "courts must place arbitration agreements on an equal footing with other contracts"). The Court's role in determining whether a dispute is arbitrable is "limited to determining (1) whether a valid agreement to arbitrate exists[8] and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130.

## IV. ARGUMENT

### A. Equitable Estoppel Prevents Plaintiff from Circumventing the Arbitration Provision in Levandowski's Employment Agreements.

The principles of equitable estoppel compel Waymo to arbitrate its trade secret and UCL claims, because Waymo alleges substantially interdependent and concerted misconduct among

---

[7] The arbitration clause in the 2012 Employment Agreement "is entered pursuant to, and shall be governed by, the Federal Arbitration Act (9 U.S.C. Section 1, et seq.)." (2012 Empl. Agmt. § 14(f), Gonzalez Decl. Ex. 1, p. 39.); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (holding that federal substantive law of arbitrability generally applies to arbitration agreements that come within the coverage of the FAA).

[8] There should be no dispute concerning the validity of the arbitration agreements themselves in view of Waymo's arbitration demand against Levandowski based on those agreements.

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
la-1344103

6

1 | Levandowski—a signatory—and the non-signatory Defendants, and that conduct is founded in or intimately connected with Waymo's agreement to arbitrate its disputes with Levandowski.[9]

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)). Under California law, when a non-signatory seeks to enforce an arbitration clause, equitable estoppel applies "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *Kramer*, 705 F.3d at 1128–29.

       **1.**      **Waymo alleges substantially interdependent and concerted misconduct between Levandowski and Defendants that is intimately connected with the obligations in Levandowski's underlying contracts.**

Where, as here, a non-signatory seeks to compel a signatory to arbitrate, equitable estoppel may operate "to protect the vitality of arbitration agreements and federal arbitration policy." *Torbit, Inc. v. Datanyze, Inc.*, No. 5:12-CV-05889-EJD, 2013 WL 572613, at *4 (N.D. Cal. Feb. 13, 2013) (quoting *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009); *see also Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000)). Equitable estoppel applies when the signatory alleges substantially interdependent and concerted misconduct "founded in or intimately connected with the obligations of the underlying agreement." *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 541 (2009). The "allegations of

---

[9] There is no reasonable dispute that Waymo is a signatory to the 2009 and 2012 Employment Agreements. Google spun Waymo off just this past December. (Am. Compl. ¶ 25 ("In 2016, Google's self-driving car program became Waymo, a stand-alone company operating alongside Google and other technology companies under the umbrella of Alphabet Inc.").) Indeed, Waymo—like Google—"is a subsidiary of Alphabet Inc. . . ." (*Id.* ¶ 12; *see also* Mot. Prelim. Inj. at 3, ECF No. 24, and Jaffe Declaration Exs. 24-25 & 31-32, ECF Nos. 27-4, 27-5, 27-11, 27-12.) Both the 2009 and 2012 Employment Agreements make clear that the agreements are between Levandowski and the "Company," which is defined to include Google's affiliates. (2009 Empl. Agmt. at 1, Gonzalez Decl. Ex. 1, p. 46; 2012 Empl. Agmt. at 1, Ex. 1, p. 34.) Waymo's own amended complaint refers to Levandowski as "a Waymo employee." (Am. Compl. ¶ 42.) Further, Google recently filed an arbitration demand based on those agreements.

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
la-1344103

7

collusive behavior must also establish that the plaintiff's claims against the nonsignatory are intimately founded in and intertwined with the obligations imposed by the [contract containing the arbitration clause]." *Id.* at 545 (internal quotation marks omitted; alteration in original).

Here, Waymo alleges throughout its amended complaint and in its motion for preliminary injunction that Defendants and Levandowski, through concerted conduct among them, misappropriated Waymo's trade secrets—and that Levandowski was able to accomplish the theft by virtue of his job at Waymo by, for example, using "his Waymo credentials and security clearances to download additional confidential Waymo documents." (Am. Compl. ¶ 47; *see also id.* ¶¶ 4–6, 41–49, 55–58, 67, 80.) Waymo's complaint accuses Levandowski of "downloading all of this confidential information regarding Waymo's LiDAR systems and other technology . . . while still a Waymo employee." (*Id.* ¶ 48, emphasis added.)

Waymo's allegations, and its claims against Defendants, make one thing clear: They are all inextricably bound up with Levandowski's employment relationship, which is governed by his Waymo employment agreements (including, for example, the agreements' prohibitions on the disclosure and use of trade secrets). Going well beyond mere allegations of concerted misconduct alone, Waymo plainly asserts instances of interdependent collusion that Levandowski allegedly engaged in while he worked for Waymo and that, if true, would violate the terms of the 2009 and 2012 Employment Agreements. (*See*, *e.g.*, Am. Compl. ¶¶ 72, 82; Droz Decl. ISO Mot. Prelim. Inj. ¶ 30, ECF No. 24-3.) In other words, Waymo's allegations of concerted misconduct "are intimately founded in and intertwined with the obligations imposed by the [contract[s] containing the arbitration clause]." *Goldman*, 92 Cal. Rptr. 3d at 545 (internal quotation omitted). There is no way to evaluate the claims against Defendants without also considering the extent and nature of the wrongful acts Levandowski supposedly committed, in alleged concert with Defendants, while he was working for Waymo.

The crux of Waymo's allegations is that Levandowski leveraged his employment at Waymo—and his concomitant access to Waymo's trade secrets—to misappropriate those secrets and to give them to the Defendants in violation of his employment agreement. Waymo even refers to the employment agreements Levandowski signed, which limited the use of confidential

information and required arbitration.[10] Under these circumstances, the concerted conduct Waymo alleges is intertwined with the confidentiality obligations in Levandowski's Waymo employment contracts. Those contracts require arbitration of the trade secret and UCL claims.

### 2. Waymo should not be allowed to avoid arbitration by pleading around its arbitration requirement.

The Court should prohibit Waymo from using artful pleading to avoid its arbitration obligation. Waymo brings three separate but related actions: In addition to this lawsuit, Waymo also has filed two arbitration demands against Levandowski. (González Decl. ¶¶ 3–4.) In the lawsuit, despite the myriad allegations about Levandowski's serious misconduct while a Waymo employee, Waymo omits him as a named defendant. In the two arbitrations—where Waymo similarly alleges Levandowski mounted a plan to build a competing business while still a Waymo employee, Waymo alleges Levandowski violated his contractual obligations by misusing Waymo's confidential information to solicit Waymo's employees and contractors. Tellingly, though, Waymo asserts no claims for trade secret misappropriation in those arbitrations. Waymo's purpose for proceeding in this curious manner seems clear: through artful pleading, it hopes to avoid arbitrating the misappropriation and UCL claims at all costs. To address this gamesmanship, Defendants have been forced to bring this motion and will initiate arbitration proceedings, seeking a declaration that Waymo's misappropriation-of-trade-secrets claims and UCL claim are meritless.

---

[10] Waymo notes that it "requires all employees, contractors, consultants, vendors, and manufacturers to sign confidentiality agreements before any confidential or proprietary trade secret information is disclosed to them." (Am. Compl. ¶¶ 72, 82; Mot. Prelim. Inj. at 5.) In a declaration Waymo submitted in support of its preliminary injunction motion, Waymo refers more specifically—though still vaguely—to Levandowski's written agreement: "As a condition of employment, I understand Waymo requires all employees—**including members of the LiDAR team who have left Waymo to work for Defendants**—to enter into written agreements to maintain the confidentiality of proprietary and trade secret information, and not to misuse such information." (Droz Decl. ISO Mot. Prelim. Inj. ¶ 30, ECF No. 24-3, emphasis added.)

## B. The Broad Arbitration Clauses Require Waymo to Arbitrate Its Trade Secret and UCL Claims.

The broad arbitration provisions in Levandowski's employment agreements require arbitration of virtually any kind of dispute "arising out" of or "relating to" Levandowski's employment with Waymo. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (labeling as "broad" a clause that required arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"). The Ninth Circuit "has made clear that, when an otherwise-valid arbitration agreement includes such broad language, 'all doubts are to be resolved in favor of arbitrability.'"[11] *Mohebbi v. Khazen*, No. 13-CV-03044-BLF, 2014 WL 6845477, at *7 (N.D. Cal. Dec. 4, 2014) (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)); *Gray v. Conseco, Inc.*, No. SA CV 00-322 DOC (EEX), 2000 WL 1480273, at *5 (C.D. Cal. Sept. 29, 2000) ("When the language 'arising out of and relating to' appears in an arbitration provision, courts interpret the provision as a 'broad' arbitration clause.").

The employment agreements' broad arbitration provisions require that all "controversies, claims, or disputes . . . arising out of, relating to, or resulting from" Levandowski's employment with Waymo must be arbitrated. (2012 Empl. Agmt. § 14(a), González Decl. Ex. 1, p. 38; *accord* 2009 Empl. Agmt. § 15(a), Ex. 1, p. 50.) The 2012 Agreement expressly extends to any statutory claims under state or federal law. (2012 Empl. Agmt. § 14(a), Ex. 1, p. 38.) These provisions plainly cover Waymo's trade secret claims, which are founded on Levandowski's purported misconduct as an employee of Waymo, on activities Levandowski could only have carried out by virtue of his employment, and on Levandowski's alleged breaches of the confidentiality provisions in his employment agreements. They also cover Waymo's UCL claim, which is based on its trade secret claims, rather than its patent infringement claims. (Am. Compl. ¶¶ 143–48.) Both the trade secret claims and UCL claims are arbitrable. *See Simula*, 175 F.3d at 724–25

---

[11] Because Waymo alleges patent infringement claims, this case comes within the Federal Circuit's appellate jurisdiction. The Federal Circuit applies regional circuit law to determine whether claims fall within the scope of an arbitration clause. *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d 1335, 1338 (Fed. Cir. 2016) (citing *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002)).

("Courts routinely refer claims for misappropriation of trade secrets to arbitration."); *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 937–38 (9th Cir. 2013) (holding that arbitration clause was "sufficiently broad to cover" UCL claims); *Arellano v. T-Mobile USA, Inc.*, No. C 10-05663 WHA, 2011 WL 1842712, at *2 (N.D. Cal. May 16, 2011) (Alsup, J.) (granting motion to compel arbitration of UCL claims and stay claims for injunctive relief).

### C. The Broad Arbitration Clause's Plain Language Envisioned the Possibility of Arbitrating Claims against Non-Signatories.

The employment agreements' expansive arbitration provisions reach not only the *subject matter* of Waymo's claims; they extend broadly to require Waymo to arbitrate its claims against non-signatories to those agreements—here, the Defendants. *See*, *e.g.*, *F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*, 248 F. Supp. 2d 240, 247 (S.D.N.Y. 2002) (noting the distinction between arbitration clauses that specifically identify the parties to be bound and "a broader form of arbitration clause which does not restrict the parties"). "If an arbitration clause is broad, it may govern disputes of non-signatories and parties not listed in the contract." *Id.*; *see also Hall v. Internet Capital Grp., Inc.*, 338 F. Supp. 2d 145, 151 (D. Me. 2004) (broadly worded arbitration clauses can reach claims with non-signatories).

Here, the broad employment agreement provisions require arbitration of virtually any claim against *anyone*, so long as the claim relates to Levandowski's employment. Waymo and Levandowski agreed to arbitrate:

> **ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE** (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE) . . . .

(2012 Empl. Agmt. § 14(a) (emphasis added), Ex. 1, p. 38.)

"Anyone" means anyone, and includes Defendants here. *See Bigler v. Harker Sch.*, 153 Cal. Rptr. 3d 78, 88–89 (Cal. Ct. App. 2013) (noting that court should consider the usual and ordinary meaning of the contract language to determine the arbitration clause's scope). While the examples in the parenthetical following the phrase "with anyone" are associated with Waymo, the

provision is not *limited* to those examples; the provision extends to "anyone." Having bound Levandowski to arbitrate any claims he might have against "anyone," Waymo should not be permitted to argue that "anyone" means something else when it comes to *Waymo's* obligation. By the plain language of the arbitration provisions, Waymo must arbitrate its claims against anyone, including non-signatory Defendants, if they arise out of or relate to Levandowski's employment relationship with Waymo. The claims here plainly do.

### D. The Court Should Compel the Trade Secret and UCL Claims to Arbitration and Stay Them; the Remaining Claims should Proceed.

Because the trade secret and UCL claims are arbitrable, they should be referred to arbitration and stayed pending the outcome of the arbitration, including, without limitation, all discovery related thereto. Additionally, because an arbitration panel can address any motion for a preliminary injunction, the Court should also stay Waymo's preliminary injunction motion in favor of prompt consideration of the request by arbitrators.

Where, as here, the dispute involves "multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation" or would result in "'the possibly inefficient maintenance of separate proceedings in different forums.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 19, 22 (2011) (per curiam) (quoting *Dean Witter*, 470 U.S. at 217–18).

Section 3 of the FAA provides that a court shall, on application of one of the parties, stay trial pending arbitration in any suit where any issue is referable to arbitration and the court refers the suit to arbitration. 9 U.S.C. § 3; *Congdon v. Uber Techs., Inc.*, No. 16-CV-02499-YGR, 2016 WL 7157854, at *5 (N.D. Cal. Dec. 8, 2016). Whether to stay the *entire* action, including issues not referred to arbitration, is a matter for the district court's discretion. *BrowserCam, Inc. v. Gomez, Inc.*, No. C 08-02959 WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (Alsup, J.) (quoting *United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)); *Martinez v. Check 'N' Go of Cal., Inc.*, No. 15-cv-1864 H (RBB), 2015 WL 12672702, at *6 (S.D. Cal. Oct. 5, 2015) (staying arbitrable claims but declining to stay the lone non-arbitrable claim).

In deciding whether to stay non-arbitrable claims, court consider several factors, including

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
la-1344103

12

whether the arbitrable claims predominate over the non-arbitrable ones, and whether the resolution of the non-arbitrable claims will depend on the arbitrator's rulings concerning the arbitrable claims. *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002) (unpublished) (citing *Simitar Entm't, Inc. v. Silva Entm't, Inc.*, 44 F. Supp. 2d 986, 997 (D. Minn. 1999)); *see also Tech. & Intellectual Prop. Strategies Grp. PC v. Insperity, Inc.*, No. 12–CV–03163–LHK, 2012 WL 6001098, at *13 (N.D. Cal. Nov. 29, 2012) (non-arbitrable claims should be stayed when resolution of the arbitrable claims might have a conclusive effect on the non-arbitrable ones). They also evaluate "the economy and efficiency that result from avoiding duplication of effort" and "how suited the dispute is to the arbitration process[.]" *Gray*, 2000 WL 1480273, at *8 (stay warranted where "non-arbitrable claim is based on exactly the same facts and issues as the arbitrable claims"); *Trinchitella v. Am. Realty Partners, LLC*, No. 2:15-cv-02365, 2016 WL 4041319, at *13 (E.D. Cal. July 27, 2016) (evaluating the "similarity of the issues of law and fact among" the arbitrable and non-arbitrable claims and discussing "the possibility of inconsistent rulings"). Courts likewise "weigh the competing interests that will be affected," including, for example, whether proceeding without a stay will impose hardship or in equity, or would complicate "'issues, proof, and questions of law . . . .'" *Congdon*, 2016 WL 7157854, at *5 (quoting *Roderick v. Mazzetti & Assocs., Inc.*, No. C04-2436 MHP, 2004 WL 2554453, at *3 (N.D. Cal. Nov. 9, 2004)).

Here, the Court must stay Waymo's trade secret and UCL claims under the FAA's mandatory stay provisions, if it finds those claims to be arbitrable. 9 U.S.C. § 3. In addition, the Court should stay the motion for preliminary injunction because an arbitration panel can give it prompt consideration. *See generally Torbit*, 2013 WL 572613, at *5 (granting motion to compel arbitration and staying the case, while denying the preliminary injunction as moot in light of the stay).

At the same time, however, the Court should not stay Waymo's patent claims. An arbitration panel's resolution of Waymo's trade secret and UCL claims will not affect the patent claims, and the trade secret claims and UCL claims do not predominate over the patent claims. Whatever an arbitration panel might decide regarding whether the Defendants misappropriated

DEFENDANTS' JOINT MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS
Case No. 3:17-cv-00939-WHA
la-1344103

13

Waymo's trade secrets, that decision will have little or no bearing on the patent claims. For example, resolution of the issue of whether Defendants misappropriated Waymo's trade secrets will not resolve the issue of whether Defendants' LiDAR technology infringes Waymo's patents. Consequently, there is no economy or efficiency to be realized from freezing the patent claims pending resolution of the arbitrable claims. Thus, although the Court must stay the trade secret and UCL claims if it finds them to be arbitrable, resolution of the remaining claims should proceed in this forum, on course.

**V.    CONCLUSION**

The broad arbitration provisions in Levandowski's employment contracts require that disputes with anyone arising out of or related to Levandowski's employment must be arbitrated. Given the conduct Waymo alleges Levandowski engaged in while he was a Waymo employee, it is clear that the arbitration provisions, by their terms, reach the trade secret and UCL claims against Defendants. Waymo should be required to abide by the terms of the contracts it made.

Waymo especially should not be allowed to avoid arbitration where it has alleged pervasive collusion between Levandowski and Defendants, and where its claims are connected with, and founded on, Levandowski's alleged misconduct while he was a Waymo employee— conduct that his employment contracts governed. Waymo certainly shouldn't be allowed to selectively manipulate its claims and dart back-and-forth between forums, to end-run its arbitration obligation. Defendants ask that this Court, under the terms of the far-reaching arbitration provisions, and under principles of equitable estoppel, compel Waymo to arbitrate its trade secret and UCL claims against Defendants and stay those claims pending the arbitration.

Dated: March 27, 2017         MORRISON & FOERSTER LLP

By:  */s/ Arturo J. González*
       ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC.,
OTTOMOTTO LLC, and OTTO TRUCKING LLC