Pages 1 - 40

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

WAYMO LLC,                         )
                                   )
          Plaintiff,               )
                                   )
  VS.                              )   **No. C 17-0939 WHA**
                                   )
UBER TECHNOLOGIES, INC.;           )
OTTOMOTTO LLC; OTTO TRUCKING       )
LLC,                               )
                                   )
          Defendants.              )
_____  )   San Francisco, California
                                       Wednesday, March 29, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                    QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                    50 California Street - 22nd Floor
                    San Francisco, California  94111
              BY:   **CHARLES K. VERHOEVEN, ESQUIRE**
                    **DAVID A. PERLSON, ESQUIRE**


For Defendants Uber Technologies, Inc.; Ottomotto LLC; Otto
Trucking LLC:
                    MORRISON & FOERSTER
                    425 Market Street
                    San Francisco, California  94105
              BY:   **ARTURO J. GONZÁLEZ, ESQUIRE**


For Defendants Uber Technologies, Inc. and Ottomotto LLC:
                    BOIES SCHILLER FLEXNER LLP
                    1401 New York Avenue, N.W.
                    Washington DC 20005
              BY:   **KAREN L. DUNN, ESQUIRE**


(Appearances continued on next page)

Reported By:   Katherine Powell Sullivan, CSR #5812, RPR, CRR
               Official Reporter - U.S. District Court

**<u>APPEARANCES (CONTINUED):</u>**

For Anthony Levandowski:
                          RAMSEY & EHRLICH LLP
                          803 Hearst Avenue
                          Berkeley, California 94710
                  BY:  **MILES EHRLICH, ESQUIRE**
                       **ISMAIL RAMSEY, ESQUIRE**

```
 1   Wednesday - March 29, 2017                    2:05 p.m.

 2                    P R O C E E D I N G S

 3                        ---o0o---

 4        THE CLERK:  Calling Civil Action 17-0939 WHA, Waymo

 5   versus Uber Inc., et al.  On for an in-camera hearing.

 6      Counsel, can you please state your appearances.

 7        MR. VERHOEVEN:  Good afternoon, Your Honor.  Charles

 8   Verhoeven.  With me is David Perlson, from Quinn Emanuel,

 9   representing the plaintiff, Waymo.  We also have Shana Staton

10   who is in house at Google, back there.

11        THE COURT:  Thank you.  Welcome to you.

12        MR. GONZÁLEZ:  Good afternoon, Your Honor.  Arturo

13   González from Morrison & Foerster, on behalf of the Uber

14   entities.  And I'd like to introduce Your Honor to our new

15   co-counsel.

16        MS. DUNN:  Good afternoon, Your Honor.  Karen Dunn, of

17   Boies Schiller Flexner, on behalf of Uber and Ottomotto.

18        THE COURT:  Welcome to you.

19        MR. EHRLICH:  Good afternoon, Your Honor.  Miles

20   Ehrlich and Ismail Ramsey appearing to represent Anthony

21   Levandowski individually to protect interests we think are at

22   stake in upcoming discovery.

23        THE COURT:  This is both of you represent him; is that

24   correct?

25        MR. EHRLICH:  Both of us, correct, Your Honor.
```

1      **THE COURT:**  All right.  Thank you.  Welcome.

2      So we are here on the record.  I cannot promise anyone

3  that this will stay under seal.  You have made a request that

4  we exclude the public.  I have done that on the come.  But I

5  cannot promise you that once I hear all of this that I'm going

6  to agree that anything should stay under seal.

7      So go ahead.  If you wish to make a presentation, I'm all

8  ears.

9      **MR. GONZÁLEZ:**  Thank you, Your Honor.  We appreciate

10  that.

11      Your Honor, we want to talk about two things.  One

12  pertains to the document production.  You've ordered us to

13  produce documents by this Friday.  And that issue is relevant

14  to the second point we want to briefly address, which is our

15  request that you hear the petition to compel arbitration on an

16  expedited basis.

17      I want to start briefly with our document production,

18  which is due on Friday.  We are making good progress.  And I am

19  expecting that by Friday we will be able to produce documents

20  that are at Uber that are responsive to the Court's order.

21      Now --

22      **THE COURT:**  Responsive or all documents?

23      **MR. GONZÁLEZ:**  Well --

24      **THE COURT:**  That's a cleverly worded thing.  I didn't

25  just fall off the turnip truck.  I know what you're telling me.

1  That means you're not going to produce everything.

2          **MR. GONZÁLEZ:**  Well, and here's why:  We don't have

3  some of these documents that are in the complaint and in the

4  motion for preliminary injunction.  We, Uber, do not have

5  those.

6          **THE COURT:**  Who does have them?

7          **MR. GONZÁLEZ:**  Well --

8          **THE COURT:**  How about Mr. Levandowski, does he have

9  them?

10          **MR. EHRLICH:**  Your Honor, maybe I should step up.

11      We -- given the nature of the allegations in this case, we

12  recognize that there's potential for criminal action.  We're

13  brought in to advise him in that regard.

14      We have notified counsel for Uber that we are broadly

15  asserting, for the time being -- until we can make a final

16  determination, we're broadly asserting Mr. Levandowski's Fifth

17  Amendment rights as to any documents he may possess and control

18  that are of relevance to this action.

19      We are specifically asserting that under the authority of

20  the *Hubbell* and *Fisher* line of cases from the Supreme Court

21  that protect against compelled disclosure that would identify

22  the existence, location or possession of any responsive

23  documents.

24      There is no pending subpoena against Mr. Levandowski.

25  We're advising the Court and the parties that to the extent

1    there is one coming, we would like to brief the *Hubbell* issues,

2    the Fifth Amendment issues before the Court.  Consistent with

3    the way it's done in criminal practice, we'd ask for the

4    opportunity to do ex parte briefing to establish that it is a

5    valid assertion of the privilege.

6         But the separate issue that causes us concerns, that we

7    have advised Uber's counsel about, is to the extent -- *Hubbell*

8    and the Fifth Amendment protect an individual's right not to be

9    forced to disclose the existence, location or identity of

10   documents.

11        To the extent Uber's counsel or Uber has any information

12   about those issues, the very issues that *Hubbell* protects, that

13   is information that was only acquired through a protected

14   common interest privilege.  And in order to do our job to

15   protect the viability of -- of this very important

16   constitutional right, we also need to very broadly protect

17   against inadvertent -- even inadvertent waiver of information

18   that could tend to undermine those Fifth Amendment protections.

19        **THE COURT:**  What are you going to do about this

20   problem?

21        I don't know about the *Hubbell* thing.  I have to study up

22   on that.  Maybe you're right.  I don't know.  I'm not saying

23   you're right.

24        In about May 3rd -- when May 3rd comes, if your side is

25   taking some kind of Fifth Amendment -- they have a record over

1   there of theft.  That's all they need.  They don't need

2   anything from your side.

3       And if you think for a moment that I'm going to stay my

4   hand, because your guy is taking the Fifth Amendment, and not

5   issue a preliminary injunction to shut down what happened here,

6   you're wrong.

7       This is a very serious -- now, some of the things in your

8   motion are bogus.  You've got things in there like lists of

9   suppliers as trade secrets.  Come on.  It undermines the whole

10  thing.

11      But there are some things in that motion that are very

12  serious.  They are genuine trade secrets.  And if you don't

13  come in with a denial, you're probably looking at a preliminary

14  injunction.

15          **MR. EHRLICH:**  Your Honor, I understand the Court's

16  comments.  I just want to make very clear --

17          **THE COURT:**  Go ahead.

18          **MR. EHRLICH:**  -- Mr. Ramsey and I do not represent

19  Uber.  We do not represent Ottomotto.  We do not represent --

20          **THE COURT:**  You represent somebody who is important in

21  that organization.  If his truck driving company gets shut down

22  because of theft of trade secrets on a record that he's not

23  willing to deny, too bad for him.  Too bad.

24      Listen, I'm not sympathetic to it.  You represent somebody

25  who's in a mess.  Well, they're in a mess too.  And there's

1  some equities here.  So you better get your act together on

2  this.

3          **MR. EHRLICH:**  Your Honor --

4          **THE COURT:**  The fact that he's facing criminal

5  liability, too bad.  I've got a civil case where they want a

6  preliminary injunction, and they made a record that deserves

7  something.  I'm not saying it deserves everything.  But if you

8  don't deny it, they're going to get something.

9          **MR. EHRLICH:**  Understood, Your Honor.  And -- and

10 Mr. Ramsey and I are in a position very often to represent

11 people who have these sorts of issues.  It is a valid

12 constitutional right.

13      And I want to say there is -- there is an opportunity for

14 the Court to order compulsion, to compel production so long as

15 the Court --

16         **THE COURT:**  I already have.

17         **MR. EHRLICH:**  Well --

18         **THE COURT:**  I sent out an order saying that these

19 documents have got to be produced at least by Uber.

20         **MR. EHRLICH:**  Your Honor, let me address that.

21      The order would need to be to Anthony Levandowski.  And

22 that order would need to carry the protections --

23         **THE COURT:**  No, no.

24         **MR. EHRLICH:**  -- of 6003.

25         **THE COURT:**  You've got it all wrong.  You're trying to

1  put the burden on me and on them.  They have made a record.

2  You are not even a party to the case.  Uber is the party to the

3  case.  And on this record there is a good chance that Uber is

4  going to get hit with a preliminary injunction come May 3rd.

5       And if you want to deny the facts, go ahead.  If you want

6  to stand moot because of the Fifth Amendment, that's your

7  privilege.  But you're not going to slow this down -- you're

8  not going to slow this down because of this kind of a

9  situation.  I'm sorry.  The equity is on their side, not on

10 your side.

11      **MR. EHRLICH:**  And I'm not asking to slow it down, Your

12 Honor.  I'm simply trying to explain that, as I understand it,

13 Uber is going to produce, they have represented to the Court,

14 everything in their possession.  And that is their obligation

15 to do.

16      My concern, frankly, is a relatively small issue, at this

17 point, because there is no pending subpoena directed at

18 Mr. Levandowski.  My concern is that in disclosing materials

19 that Uber has, and providing a privilege log regarding

20 privileged information that they cannot produce, they would

21 inadvertently be disclosing information that may tend to

22 undermine Mr. Levandowski's Fifth Amendment right.  And they

23 are not permitted to do that because they -- they only know

24 about the existence or location or identity of any potential

25 documents that may exist through attorney-client privilege

1    communications.

2         **THE COURT:**  I don't believe that.

3         Look, they could go and look on their servers.  If they

4    find emails within the Uber company or that subsidiary that

5    contain copies or forwarding or excerpts from the documents

6    that allegedly were stolen, the 14,000, there's no privilege in

7    the world that's going to stop that.

8         **MR. EHRLICH:**  Absolutely.  That's correct.  We agree.

9         **THE COURT:**  So then what are you talking about then?

10   If Uber has found -- let's just make up a number -- 103 emails

11   that reference this stuff, something in the 14,000, they've got

12   to produce it.  They can't -- they can't say, oh, wait, maybe

13   this is going to implicate Mr. Levandowski.

14        **MR. EHRLICH:**  Agreed.  Absolutely agreed.

15        **THE COURT:**  What point are you trying to get at then?

16        **MR. EHRLICH:**  I'm trying to protect a valid Fifth

17   Amendment privilege and protection he has.  I can disclose

18   under seal the information that I am -- that -- that I'm trying

19   to communicate to the Court.

20        **THE COURT:**  No.  This is -- this is a nonstarter.  I'm

21   not going to get diverted off into you coming in here with --

22   with no motion whatsoever, nothing, and trying to get special

23   pleading because you represent somebody big, and get an

24   under-seal hearing so the public can't hear it.  That's not

25   going to work.

1    If you want to make a formal motion, you can make it.  I

2    will give it the consideration that it deserves.  But it won't

3    slow things down.

4         **MR. EHRLICH:**  Let me confer --

5         **THE COURT:**  It will not slow things down.

6         **MR. EHRLICH:**  Can I confer with Mr. González?  He may

7    be able to answer that question.

8         **THE COURT:**  Sure.

9    (Counsel confer off the record.)

10        **MR. GONZÁLEZ:**  Your Honor, let me try to shed some

11   light on this.  And you can see why this is a sensitive issue.

12   First --

13        **THE COURT:**  The public should be here right now.  The

14   public should be here.  This is not something that we should

15   have excluded the public on.

16        **MR. GONZÁLEZ:**  So, Your Honor, first of all, we have

17   searched and we are in the process of searching all of our

18   computers for the sorts of information that you referred to.

19   And if we find those documents, we intend to produce those.

20   In addition, Your Honor, we are searching Uber's computer

21   that was assigned to all three of the people that are mentioned

22   in the complaint.  We are searching all of their individual

23   Uber computers.

24   We're really here to talk about two things that are

25   related.  One is, anything that Mr. Levandowski may or may not

1    have on his own -- let's just assume hypothetically that he's

2    got something at home -- that is not something we have access

3    to.   And I just want to be forthright and tell you that.

4         But the issue here is whether any of the stuff is at Uber.

5    And we are searching for that.

6              **THE COURT:**  Uber has the authority to say to its

7    employees, "If you have anything at home you bring it in here,

8    give it to Mr. González, and he will turn it over to the

9    Court."

10        You have the authority to do that.  And you also have the

11   authority to say, "And if you don't do that, you're fired."

12             **MR. GONZÁLEZ:**  So, Your Honor, this is where maybe

13   it's not quite that easy.  I want to make it real clear to you,

14   and I don't mind saying this without waiving the privilege, we

15   have made it clear to him that the Court has ordered this.  He

16   understands that.  And that's why he has obtained separate

17   counsel.

18        Second, to add just a tiny bit of clarity on what we are

19   talking about, because one of the things I wanted to discuss is

20   how do we log this on a privilege log without infringing

21   rights.

22        Here's what you're missing right now because we haven't

23   explained it clearly:  Before the acquisition some due

24   diligence was done.  A third party prepared a report based on

25   that due diligence.  We intend to put that report on a

1    privilege log.

2         There's a concern that's been raised about whether or not

3    we should identify the party who prepared the report.  The

4    concern is that by identifying the party, we are waiving or

5    infringing upon a Fifth Amendment right.

6         That's the issue I want to talk to Your Honor about

7    because I don't want Your Honor to think we're being sneaky.

8         **THE COURT:**  You want me to decide something like it

9    without having briefed it?

10        **MR. GONZÁLEZ:**  No.

11        **THE COURT:**  You gave me some kind of secretive,

12   mysterious letter, and you want me to give you advice and

13   counsel right now?

14        **MR. GONZÁLEZ:**  No, Your Honor.  I just want to explain

15   the situation to you.  We wanted to come in and explain the

16   situation because what we didn't want to happen is the

17   following:  We didn't want Friday to come and we produced some

18   documents, but the 14,000 files that they've referenced thus

19   far we haven't found them.  That's not a surprise to me.  But

20   we're still looking.

21        In fact -- I wanted you to know this -- we asked them to

22   produce the hash values for these files, which is some computer

23   thing that you can use to try to help you find the files.  And

24   we got those last night.  And we're even searching the hash

25   values throughout our computers to see if any of that

1    information is there.

2         So it's not that we're not trying.  We are digging.

3         **THE COURT:**  Let's play a scenario out here.  You file

4    on -- you're eventually going to file your opposition.

5         **MR. GONZÁLEZ:**  Correct.

6         **THE COURT:**  And they get to take some depositions.

7         **MR. GONZÁLEZ:**  Yes.

8         **THE COURT:**  I'm sure they're going to take

9    Mr. Levandowski's deposition.  Let's say he takes the Fifth

10   Amendment on everything.  How is that going to look for Uber?

11        **MR. GONZÁLEZ:**  Your Honor --

12        **THE COURT:**  Don't you think that's going to lead

13   almost inevitably to a preliminary injunction?

14        **MR. GONZÁLEZ:**  Two things in response to that.

15        **THE COURT:**  I can't -- I can't fix -- this is a

16   problem that your side made, not a problem that the Court or

17   the other side made.

18        If your guy is involved in criminal activity and has to

19   have criminal lawyers of the caliber of these two gentlemen,

20   who are the best, well, okay, they got the best.  But it's a

21   problem that I can't solve for you.  And if you think I'm going

22   to cut you slack because you're looking at -- your guy is

23   looking at jail time, no.

24        They are going to get the benefit of their record.  And if

25   you don't deny it -- if all you do is come in and say, "We

1    looked for the documents and can't find them," then the

2    conclusion is they got a record that shows Mr. Levandowski took

3    it, and maybe still has it.  And he's -- he's still working for

4    your company.  And maybe that means preliminary injunction

5    time.  Maybe.  I don't know.  I'm not there yet.

6        But I'm telling you, you're looking at a serious problem.

7    And you want me to somehow cut slack --

8        **MR. GONZÁLEZ:**  No, that's not it at all, Your Honor.

9    Let me be clear on this.

10        **THE COURT:**  What is it you want from me today?

11        **MR. GONZÁLEZ:**  So I will tell you, Your Honor.  First,

12    this is related, in part, to the petition to compel arbitration

13    for this reason:  If the Court grants our petition, then it

14    means that this trade secrets issue goes into arbitration.  And

15    if he testifies there, it's -- it's in confidence.  It's a big

16    difference.

17        **THE COURT:**  Ridiculous.  It's not in confidence.  The

18    United States Attorney can go subpoena information all day

19    long.

20        **MR. GONZÁLEZ:**  Well, Your Honor, at least it's not in

21    the public where it's going to be on the front page of

22    *The New York Times* the next day.

23        It is a factor that they may take into consideration, Your

24    Honor.  That's all.  It's a factor.

25        **THE COURT:**  That argument gets nowhere.  If he

1    testified, they will -- if they don't let him testify here,

2    they're not going to let him testify there.

3          **MR. GONZÁLEZ:**  So the other issue, Your Honor, that

4    we're concerned about -- and I can see already, just from your

5    reaction, Your Honor -- is the adverse impact it has on our

6    client.

7          Let me be clear about something.  I want you to know, it

8    is important for me that you know this.  I would love to put

9    Mr. Levandowski on the stand to explain to you what happened,

10   because I think he has a good story to tell.  But I can't force

11   him to do that.

12         So what am I doing -- no, no, Your Honor, you just asked,

13   What are you going to do?  Let me tell you what we are going to

14   do.  And I've got to approach this two ways.

15         If I cannot get a declaration from him, then, Your Honor,

16   I'm going to do the following:  We're going to demonstrate to

17   you that we are not using any of these things that they say he

18   may have taken.  That's my point.  And it's a very important

19   point.

20         **THE COURT:**  That would be a legitimate point.

21         **MR. GONZÁLEZ:**  That's what I want Your Honor to

22   understand.

23         **THE COURT:**  Maybe you can convince me of that.  I

24   have -- I have considered that it's possible that you can come

25   in and say, here's the way our light diodes are arranged, and

1    it's not the same, and all these other things.  Like, the list

2    of suppliers don't even qualify as a trade secret.

3        Okay.  That could be done.  And it's possible that would

4    fly.  I don't know.  I'm not going to say that you wouldn't win

5    on that.  I'm just saying that is a plausible scenario that I

6    would have to evaluate.

7        However, what if it turns out that your light diode things

8    are arranged in the same way or very close to it?  Are you

9    going to try to convince me that that didn't have some

10   influence on how -- I don't know.  I don't know.

11       **MR. GONZÁLEZ:**  So, Your Honor, I appreciate everything

12   you've said.  You may not realize it, but this has been very

13   helpful to us for sure.  This has been very helpful.

14       **THE COURT:**  How could that be?

15       **MR. GONZÁLEZ:**  Well, because, Your Honor, I now

16   understand how strongly you feel, and it makes a difference as

17   to what position Uber is going to take.  Frankly, we obviously

18   have a conflict here.  We obviously have a conflict.  And I

19   just wanted you to be aware so that -- I didn't want you to

20   think later that we were sandbagging you.

21       **THE COURT:**  Look.  I want you to know I respect both

22   sides here.  And everyone knows I know Mr. González from the

23   days when he was a young associate and I was a partner, and he

24   was working for me on cases.  And he has gone on to be a much

25   better lawyer than I ever was.

1    But you shouldn't have asked for in camera on this.  This

2  could have all been done in the open.  I'm sorry that

3  Mr. Levandowski has got his -- got himself in a fix.  That's

4  what happens, I guess, when you download 14,000 documents and

5  take them, if he did.  But I don't hear anybody denying that.

6         **MR. GONZÁLEZ:**  Your Honor, the reason why we wanted it

7  in chambers is because of the adverse impact that we think it

8  would have on our client.  If there's a headline tomorrow

9  saying this guy is asserting the Fifth Amendment --

10         **THE COURT:**  Listen, please don't do this to me again.

11  There's going to be a lot of adverse headlines in this case on

12  both sides.  And I can't stop that.

13    And that's -- the public has a right -- in fact, this

14  whole transcript, I'm going to make it public.  There's

15  nothing -- what do you say?

16         **MR. VERHOEVEN:**  Well, Your Honor, with respect, I

17  think we should have had notice of what they were planning to

18  lay out here.

19         **THE COURT:**  You should have had notice.

20         **MR. VERHOEVEN:**  And I don't think it's fair for me to

21  have to address arbitration issues without any notice or the

22  Fifth Amendment issues without any notice.  So I'm going to

23  restrain from doing that.

24    I would have a question, Your Honor, and that is whether

25  Mr. Levandowski is still running their entire program over

1   there.

2         **THE COURT:**  Well, you can ask them that question at

3   his deposition.

4         **MR. VERHOEVEN:**  Okay.

5         **THE COURT:**  This is not a discovery thing.

6       And if he doesn't testify to that at the deposition, well,

7   I guess Uber -- you know, Uber is -- if you think this is going

8   to help you, my preliminary view of it is it's not going to

9   help you; and that if there's not a clear-cut path to showing

10  that those 14,000 documents weren't used, then you're looking

11  at a preliminary injunction.

12      On the other hand, maybe you can convince me that those

13  14,000 documents somehow none of them were used.  Okay.  That's

14  a possibility.  That has occurred to me that that's true.  I

15  just don't know.  I don't know.  But if Mr. Levandowski is

16  unwilling to say -- hey, listen, I read in the newspaper that

17  he said he did it so that he could do work at home.  That's

18  what I read in the newspaper.  I don't know.  So, look, if he's

19  not willing to come clean, then that looks bad in a civil

20  lawsuit.  In a civil lawsuit.

21      Now, for criminal purposes, okay, maybe he's got the right

22  to take the Fifth Amendment.  But for civil purposes, there's a

23  thing called adverse inferences.

24        **MS. DUNN:**  I think one point we want to reinforce --

25  this actually sounds a lot like what Your Honor is saying -- is

1    that if Your Honor is in the situation where he must draw an

2    adverse inference against Mr. Levandowski, we would ask you to

3    keep open the possibility in your mind that the adverse

4    inference should not be drawn against Uber, which is a separate

5    party.  And it is our responsibility to come in and show to you

6    that we have not used this and that we're differently situated.

7    So in that respect we agree.

8         **THE COURT:**  Okay.  I will say this:  I'm not going to

9    prejudge the issue without seeing what your record is.  And

10   it's conceivable, it's conceivable that that would fly.  But

11   it's also conceivable that I would draw the adverse inference

12   against the employer who has the guy, who's taking the Fifth

13   Amendment, who runs the company.  To me that is a -- I don't

14   know.  I don't know what I would do.

15        Listen, I'm not going -- I have not made up my mind how to

16   deal with the timing on the issue of the motion for -- to

17   arbitrate.  And the equities are not on the side of -- except

18   in one respect.  Mr. -- I can never -- I want to say your name

19   correctly.

20        **MR. VERHOEVEN:**  Verhoeven.

21        **THE COURT:**  Verhoeven.  I apologize.  You're famous.

22   I should know how to say Verhoeven.

23        You should have told me in your papers that you had

24   already brought an arbitration against Mr. Levandowski.  I only

25   learned that reading their papers.

1        **MR. VERHOEVEN:**  Apologize, Your Honor.

2        **THE COURT:**  You should have told me that.  But that

3 slightly changes the mix a little bit.

4     I'll give you a couple of other thoughts.  If you all keep

5 insisting on redacting so much information, like -- and you're

6 the guilty one on that, Mr. Verhoeven -- then arbitration looks

7 better and better.  Because I'm not going to put up with it.

8 If we're going to be in a public proceeding, 99 percent of

9 what -- 90 percent, anyway, has got to be public.

10     The stuff -- this employment agreement by Google, it's

11 laughable that you want to keep that under wraps.  Just

12 laughable.

13        **MR. VERHOEVEN:**  If I may, Your Honor.

14        **THE COURT:**  Yeah.

15        **MR. VERHOEVEN:**  I didn't personally engage in this,

16 but I've been informed by the individual who did that there was

17 not even a meet and confer to confirm the statements that were

18 made to you in that unilateral filing that said we had insisted

19 that everything was confidential.  So we hadn't had an

20 opportunity to address that, Your Honor.

21        **THE COURT:**  All right.  Is that true, Mr. González?

22 You keep bombarding me with letters accusing them of things.

23 And then the response I get back is that you failed to meet and

24 confer, and they're hearing about this for the first time.

25     So who is it -- who exactly was it at Google that told you

1  that -- or Waymo that told you that everything was

2  confidential?

3           MR. GONZÁLEZ:  So, Your Honor, we have many, many

4  written communications where Google is represented by separate

5  counsel.  They're represented by John Keker's firm in the

6  arbitrations.  And they are emphatic that we are not to

7  disclose the information from those arbitrations.  So there is

8  no question, the only reason --

9           THE COURT:  No, we're talking about the employment

10  agreements.

11           MR. GONZÁLEZ:  The employment agreements, that's

12  right.

13           THE COURT:  You're telling me that somebody

14  representing Google told you that those employment agreements

15  could not be publicly -- made public?

16           MR. GONZÁLEZ:  That is correct, Your Honor.

17           THE COURT:  What was the name of that person?

18           MR. GONZÁLEZ:  That's the only reason we sealed them.

19           THE COURT:  Who is that person?

20           MR. GONZÁLEZ:  Your Honor, I don't know which lawyer.

21  Somebody at John Keker's firm.  But we've been communicating

22  about this for a long time.  Those arbitrations were filed back

23  in October.  This is not a new issue.

24           THE COURT:  Yes, but -- all right.  I want you to know

25  it is laughable that an employment agreement could be kept

secret from the public.  We are a public institution.  So the
best -- listen, I want you to understand.

**MR. VERHOEVEN:**  Yes, Your Honor.

**THE COURT:**  The best thing -- if we were -- one of the
factors that you ought to be considering is maybe you should --
if you want all this stuff to be so secret, you should be in
arbitration.  You shouldn't be trying to do this in court and
constantly telling them not to, or you putting in -- the public
has a right to see what we do.

And I feel that so strongly.  I am not -- the U.S.
District Court is not a wholly owned subsidiary of Quinn
Emanuel or Morrison & Foerster or these two big companies.  We
belong to the public.

And if this continues, then several things are going to
happen.  One, we're going to call a halt to the whole -- we're
going to stop everything.  And we're going to have
document-by-document hearings in this room, where I go through
every document and you justify to me why we're there.  And then
after we sort it all out, we will resume.  And, of course, I'll
make 90 percent of those public.  We will then resume.  And
your motion for preliminary injunction will be delayed day by
day until we get this done.

You have a very strong incentive to stop this nonsense
with the redactions.

**MR. VERHOEVEN:**  I understand, Your Honor.

1    **THE COURT:**  And over there, please don't do this to me

2    again, where you complain about them and then it turns out they

3    say you never met and conferred.

4         For my purposes, John Keker does -- his firm -- I love the

5    guy to death, but his firm is not in this case.  Mr. Verhoeven

6    is the one you should be talking to, not John Keker.  All

7    right.

8         So right now I'm not advancing the date of that motion for

9    the -- you've known about this arbitration thing and the

10   possibility of this lawsuit for months.  You should have had

11   that arbitration motion ready to go long ago.  So I'm not

12   sympathetic to your desire to advance that.

13        I do have in mind the possibility that I will give you a

14   little bit of advancing on it.  But they made a serious motion

15   for a preliminary injunction.  And I'm going to give them --

16   unless this redaction thing gets in the way, I'm going to give

17   them -- I'm going to try to stick to that May 3rd date.

18        All right.  So, to my mind, we haven't accomplished

19   anything here today.  But I want to find out, I want to give

20   you another opportunity.  Is there some -- some relief that the

21   Court can give either side that you want me to rule on today?

22        **MR. EHRLICH:**  The only relief, Your Honor, that we are

23   asking, on behalf of Mr. Levandowski, is that the Court not

24   order Uber to disclose the identity of this third party who

25   conducted due diligence review on materials belonging to

1    Mr. Levandowski.  And the reason -- can I just say?

2            **THE COURT:**  Yeah.

3            **MR. EHRLICH:**  The reason I ask this involves an

4    overlap between the Fifth Amendment active production

5    protection and attorney-client privilege.

6        And counsel who acquires knowledge as part of a common

7    interest agreement stands in the same shoes as counsel for an

8    individual facing potential criminal prosecution.  And that

9    means they are supposed to guard and protect, at every peril to

10   themselves, the disclosure of information that could undermine

11   an important constitutional right.  We could brief the Court on

12   this issue.

13       There are serious implications that are not all

14   unfavorable I should point out.  If the Court orders disclosure

15   in the context where there's a valid Fifth Amendment privilege,

16   valid Fifth Amendment right, there's a host of *Castigar* issues

17   that will follow.  And it is very hard to unring the bell

18   for -- for any party.

19       We are asking the Court to take this slowly, to let us

20   brief the *Hubbell* active production issue and the

21   attorney-client privilege.  We can't unring the bell --

22           **THE COURT:**  Here's the answer:  The answer is no, I'm

23   not going to do that.

24       I have already issued an order two weeks ago, at least, to

25   Uber as to what they've got to produce and not produce.  I'm

1    not changing that in the least.

2        Now, if you want to bring some motion out of left field

3    and set it on the calendar and give Mr. Verhoeven a fair chance

4    to -- instead of sandbagging him the way you did here today,

5    then I'll consider that in due course.  But I'm not going to

6    give any relief.  I'm not giving any delays.

7        I'm not saying that you -- I'm standing a hundred percent

8    by the order that I gave a few -- two weeks ago.  I don't

9    remember what it is now.  Two weeks ago.  The scheduling order

10   that laid out how this was going to come down.

11       So if you've got some -- if you've got some privilege log

12   that is due, you've got to comply with the normal rules on

13   privilege logs.  And I'm not giving -- Uber does.  Uber is the

14   party here.

15       Mr. Verhoeven has made a big point that he's not suing

16   Mr. Levandowski.  So he -- Levandowski doesn't have to do any

17   kind of privilege log, but Uber does.

18           **MR. EHRLICH:**  So I need to assert on the record, then,

19   in court, that we are asserting Mr. Levandowski's Fifth

20   Amendment active production rights under *United States vs.*

21   *Hubbell*.  And we are specifically objecting to the disclosure

22   of any confidential information that was acquired as part of a

23   common interest privilege.

24       We are specifically not waiving either of those rights or

25   privileges.  And we would ask the Court, it's simply the

1   question of identifying the name of a vendor who reviewed

2   materials.  This is something that can wait.

3        **THE COURT:**  No, it can't wait.  There is no basis for

4   making this wait.  At least on the record that I have now.

5        And you were free for the last two weeks to bring any

6   motion that you wanted, instead of a sandbag motion out of left

7   field and the way you're doing it here today.

8        So the answer is no.  Your objection is made for the

9   record.  Good.  Okay.

10        **MR. EHRLICH:**  And I just --

11        **THE COURT:**  Uber will take that into account in doing

12   whatever they're going to do.  But I have made it pretty clear

13   to you that you're looking at adverse inferences even at the

14   Uber level.

15        **MR. GONZÁLEZ:**  We understand.

16        **THE COURT:**  And if you don't -- if you can't order

17   your guy to do what he's required to do to meet the charges

18   Mr. Verhoeven has leveled against him, and has proof to back it

19   up, that sounds to me -- then, to finish my thought, too bad.

20        Here's the way I figure what's going on here:  Whoever

21   this vendor was, let's call them ABC Inc. who did due

22   diligence.  They have a document that shows the $14,000 were

23   download -- 14,000 documents were downloaded.  And your side

24   doesn't want that ever to see the light of day because it might

25   lead to jail time.  Okay.

1        **MR. EHRLICH:**  That's not accurate, to my

2  understanding.

3        **THE COURT:**  Good.  I hope it's not accurate.  But

4  that's one way to read this.

5      And you over there wondering, well, do we -- I'm not --

6  you've got to do -- I'm not going to rule on this.  I'm not

7  relieving Uber one inch from what I have ordered you to do.

8      Now, when I was practicing law, the idea that you could

9  withhold the author of a document in a privilege log was also

10  laughable.  No such thing.

11      So maybe what you need to do is bring your own lawsuit

12  against Uber.  But I'm not giving you that relief right now.

13      If you brought a formal motion with points and authorities

14  that said I had to do that, of course, I would definitely

15  consider that.  But off the top of my head and the way this is

16  being presented out of left field today, I would say you're out

17  of luck on that.

18        **MR. EHRLICH:**  And can I understand the deadline for

19  the privilege log?

20        **MS. DUNN:**  Friday.

21        **MR. EHRLICH:**  Friday close of business?

22        **MR. GONZÁLEZ:**  Well, actually, not necessarily.  The

23  Court's order, I think, says -- it's got some language in there

24  about, you know-- I forget the exact words in the standing

25  order, but it basically says you've got to provide it promptly.

1    Something like that.

2           **THE COURT:**   I don't remember what it is.   But I'm not

3    changing a word out of my orders.   So whenever the privilege

4    log is normally due, you've got to produce that privilege log.

5           **MR. GONZÁLEZ:**   Your Honor, may I ask one question?

6       By the way, you may not realize this is, in my view, quite

7    helpful, to us at least.

8       On the redaction, there is only one thing that I do think

9    we might want to redact with respect to our petition to compel

10   arbitration.

11      You should know, by the way, we have been conferring.   And

12   as I was coming here, we did file the entire petition

13   unredacted.   Now we're discussing my declaration and the

14   attachments.   The only thing I am a little sensitive about are

15   the two complaints, the two arbitration lawsuits that they

16   filed against Mr. Levandowski and another employee whose name

17   hasn't even come up.

18      I don't know that we need to make those public, those

19   arbitration matters that they have filed in arbitration, when

20   ordinarily those wouldn't be.   Because the point, for your

21   purposes, is just that they exist.   And you yourself can see

22   what they allege.

23      And I've already said in the document, I've already just

24   made a statement what they are, they don't allege trade

25   secrets.   They allege other things against them.   They were

1    careful not to allege trade secrets.

2         **THE COURT:**  I don't see why that should be withheld

3    from the public.  If you're relying on that document to say

4    that this lawsuit is very close to what's being alleged in that

5    lawsuit, why shouldn't I get to see that and the public get to

6    see that?  What's so secret about that?

7         **MR. GONZÁLEZ:**  Your Honor, if you think about it,

8    there's another individual whose name hasn't been mentioned,

9    who is accused of misconduct in one of those complaints.

10        **THE COURT:**  All right.  Well, maybe that guy's name

11   can be withheld.  But the rest of it could be -- why can't you

12   two agree?  It seems to me that, at most, that other guy's name

13   ought to be redacted even now temporarily.

14        Would you agree with that, Mr. Verhoeven?

15        **MR. VERHOEVEN:**  Can I check with my client real quick?

16        **MR. PERLSON:**  So the -- in terms of the -- our firm is

17   not doing the arbitration.  As I understand it, there were

18   terms of an agreement that actually, we thought, required it

19   with Mr. Levandowski, that they required it to be confidential.

20        All that Google is concerned about is -- not concerned

21   about their employment agreements being public.  The only

22   concern is protecting someone's confidential, private

23   information.

24        **THE COURT:**  Confidential what?

25        **MR. PERLSON:**  Private information such as someone's

1    salary, or something like that, that California law --

2         **THE COURT:**  Salary, social security number, where they

3    live, telephone number, personal identifying information, I

4    will give you that always.  That can be redacted.

5         **MR. VERHOEVEN:**  The answer to your question is, yes,

6    we can agree to what you asked me.

7         **THE COURT:**  So I think I've solved that problem for

8    you.

9         **MR. GONZÁLEZ:**  Thank you, Your Honor.

10        **THE COURT:**  All right.  Now, what else do you have for

11   today?

12        **MR. GONZÁLEZ:**  I guess, Your Honor, my closing comment

13   is this:  We cannot force somebody to testify.  I think you

14   appreciate that.  We cannot do that.

15        **THE COURT:**  Well, maybe you can't force them to, but

16   you can order them to.

17        **MR. GONZÁLEZ:**  Fair enough.

18        **THE COURT:**  You can say, "You're our employee.  You're

19   an important employee.  This is an important case to us.  You

20   either testify or we may fire you."  Of course, you've got the

21   right to do that.

22        **MR. GONZÁLEZ:**  Understood.  But I guess my parting

23   thought is this:  I want to leave you with the idea that it is

24   possible, it's absolutely possible that an employee might take

25   something from company number one and go to company number two,

1    and it's possible that that information was never used at

2    company number two.

3              THE COURT:  Yeah, I agree with that.

4              MR. GONZÁLEZ:  That's all I'm asking, is for you to

5    keep an open mind about that.

6              THE COURT:  It's also possible it was used.

7              MR. GONZÁLEZ:  Understood.

8              THE COURT:  Let me ask this:  Are you going to be able

9    to look at their product before the preliminary injunction

10   hearing and see that traces -- your trade secrets trace into

11   their product in some way?

12             MR. VERHOEVEN:  If we get access, absolutely, we can

13   make a determination.

14             THE COURT:  I think you should get access.  You should

15   ask for that.

16             MR. VERHOEVEN:  Yes, Your Honor.

17             THE COURT:  Or at least you should be asking questions

18   in the deposition.

19        Are you -- are they going to get access to your product so

20   that they can see if the -- I know Uber has got cars on the

21   road, now, in Arizona.

22             MR. GONZÁLEZ:  So, Your Honor, we haven't discussed

23   it.  Certainly -- we had anticipated that they would be asking

24   our witnesses questions about the widget, and where did the

25   widget come from, and how did you design the widget.  All of

1  that stuff we understand we're going to have to answer.

2  Probably that part, Your Honor, would be under seal because

3  then we are talking about our trade secrets at that point.

4      **THE COURT:**  I think it would be.

5      But it seems to me that -- okay.  I'm not changing the

6  program at all here.  But I can imagine circumstances that it

7  would be important for me to know that Mr. Verhoeven's experts

8  have looked at your actual on-the-ground product to see if some

9  of these key features are there.

10      And so -- but I'm not ordering that -- I'm not changing

11  that prior order.  And I have forgotten how I worded it, so I'm

12  not -- I'm not trying to change a thing.

13      But I am being sympathetic with the idea that we could

14  come down to -- if it comes down to a debate over whether or

15  not it's being used, and you tell me it's not being used, and

16  they say, "Yeah, but they wouldn't let us look at the product,"

17  then I may -- I may -- I don't know what I'll do.

18      **MS. DUNN:**  Well, maybe we can table that for a

19  different day.  Because I think if they're -- if it's up to

20  their paid experts to determine what we have done that is

21  different than our experts, and we taking our evidence to the

22  Court to prove our piece and their taking their evidence to the

23  Court to prove their piece.

24      So I think we should all --

25      **THE COURT:**  For example, let's say you put on an

1   expert that says, "I've looked at their trade secrets and I've

2   looked at the product, and not a single one of those are being

3   used."  They're going to get to take the deposition of the

4   expert.  And it could turn out that what the expert is relying

5   on is not very -- it's inconclusive.  It may be their side's

6   expert ought to take a look at it too.

7           **MS. DUNN:**  Right.  They would have the opportunity, in

8   the ordinary course, to depose our expert certainly.

9           **THE COURT:**  How about looking at the actual product?

10          **MR. GONZÁLEZ:**  Your Honor, that's something we can

11  confer about.

12          **MR. VERHOEVEN:**  We will meet and confer, Your Honor.

13  We intend to ask to look at the product.  And we interpret the

14  Court's order to allow us to include that as one of our

15  document requests, is to ask for physical inspection.

16          **THE COURT:**  It may be.  And I'm not saying no to that.

17          **MR. VERHOEVEN:**  Okay.

18          **THE COURT:**  I am being careful here because I did not

19  know what this hearing was about.  And I don't have a good

20  enough memory of what I said in the order two weeks ago, and I

21  don't want to say something that would add or subtract from

22  that.  So there we go.

23      So I'm not saying no to what you've said.  I'm not saying

24  yes to it either.

25          **MR. VERHOEVEN:**  Thank you, Your Honor.

1    **MS. DUNN:**  I think we would just ask Your Honor and

2    acknowledge legally there's an adverse inference that -- that

3    legally will be drawn against Mr. Levandowski if he invokes his

4    rights.  But --

5            **THE COURT:**  Well, I cannot say everything -- I'm

6    just -- I'm not ruling on this yet.

7            **MS. DUNN:**  No, no, I'm not asking you to rule.

8            **THE COURT:**  I'm telling you, though, in prior practice

9    every time in a civil case, that I can remember, if somebody

10   invoked the Fifth Amendment, it was proper to draw an adverse

11   inference from that.

12           **MS. DUNN:**  Against the party invoking.  And --

13           **THE COURT:**  Yes, for sure.  But maybe against you,

14   too, because he's your key guy.

15           **MS. DUNN:**  Right.  And so what our position would be

16   on that is that to draw an adverse inference against the

17   company would prejudice, extremely prejudice the company for

18   reasons that I think we've discussed today; and that our

19   responsibility is to show Your Honor, on our evidence that we

20   bring to you, which is our responsibility, that we are going to

21   prepare for the PI opposition, that the company is differently

22   situated than Mr. Levandowski.

23       And so all we would ask you to do is just keep an open

24   mind about that, because that is our -- that's our

25   responsibility and that is our intent.

1        **THE COURT:**  Could be.  But that due diligence document
2   will become pretty important.
3        **MR. VERHOEVEN:**  If I may say, none of this -- we've
4   been given no notice of any of this.  And here they are arguing
5   their case and we're being sandbagged on this.
6        The last I heard, Your Honor, he was a senior executive at
7   Uber in charge of their entire LiDAR system, their entire
8   driverless car system.  They won't say otherwise.  So all I can
9   say is I disagree.  And I would think an inference absolutely
10  could be drawn.
11       **THE COURT:**  Well, I haven't ruled -- look.  I feel
12  like it's unfair to the judge for you all to -- and please
13  don't say that I have absolutely made any rulings today.  The
14  only one is that I am not, I am not changing what I ordered.  I
15  want that to be very clear.
16       And if the criminal lawyers want to bring some special
17  motion, then I'll hear that in due course.  But it's going to
18  have to be on the public record.
19       All right.  Now, are we at an end?  Because I want to end
20  with telling you that this -- unless somebody says they want an
21  opportunity to appeal to the Court of Appeals, this transcript
22  is going to be on the public record as soon as this most
23  excellent court reporter can -- can transcribe it.
24       **MR. GONZÁLEZ:**  Understood, Your Honor.
25       **MR. EHRLICH:**  Understood, Your Honor.

1          **THE COURT:**  All right.  So when you say "understood,"

2    is that --

3          **MR. VERHOEVEN:**  Yes, Your Honor.

4          **THE COURT:**  All right.  So that means -- what I take

5    you understand to mean is that you're not asking me in any way

6    to stay my hand on this while you take an appeal.

7          **MR. EHRLICH:**  I'm not aware of strong authority that

8    would allow us to request that.

9          **MR. GONZÁLEZ:**  Your Honor, the only thing I'll throw

10   out is -- I appreciate the desire to have open public hearings

11   and all of that.  I understand that.  I just think it's very

12   prejudicial to Uber for a transcript like this to go public

13   when they will immediately do what they did with their

14   preliminary injunction, which I found out about it by reading

15   in the paper before it was even filed, a story that was

16   written.

17      So they clearly intend, I think, to send out a press

18   release, call the reporters and say, "Fifth Amendment.  Fifth

19   Amendment."

20      I think that's very prejudicial to us, to Uber, because

21   we're not asserting the Fifth Amendment.  We want him to

22   testify.  I want to be real clear about that.  We would love

23   for him to testify.

24          **THE COURT:**  Okay.  The public will read what you just

25   said.

1    I'm sorry, but the public's right to know what goes on in

2    the federal courts is more important than the newspapers

3    beating up on you in the press.

4         **MR. EHRLICH:**  Your Honor, may I just be heard on that

5    issue?

6         **THE COURT:**  Yes, sure.

7         **MR. EHRLICH:**  As the Court knows, as all the lawyers

8    in this courtroom I'm sure know, Fifth Amendment protects the

9    innocent as well as the guilty.  Unfortunately, in our society

10   there is a tendency to draw conclusions that are adverse to

11   somebody who is simply trying to assert their constitutional

12   rights.

13       This is a case that is moving very quickly.  Mr. Ramsey

14   and I recently got involved.  Our obligation is to do what we

15   do for every client, which is make sure we're protecting all

16   constitutional rights that exist.  And we have advised

17   Mr. Levandowski that he has these rights and he needs to assert

18   them for now.

19       It could well change.  We are examining the issues.  And

20   as the Court knows, depositions, you can take it question by

21   question.  You can't make a blanket assertion of the Fifth.  So

22   I don't want the record to suggest that he's come to that

23   decision.

24       And I also, in fairness to Uber, need to make clear that

25   this is not -- the Court made a number of comments to suggest

1   that this is Uber's decision or somehow we're in cahoots.

2       This is Mr. Levandowski's rights at stake.  We're

3   representing him, not Uber, not any other party in this

4   courtroom.

5           **THE COURT:**  No, I think you're right.  You're doing a

6   great job.  And the public will read your comments that you've

7   just made.  And you articulated it better than I possibly could

8   have.  So good for you.

9       But, again, this transcript will be made public by

10  tomorrow, as soon as the court reporter can finish it, unless

11  someone asks me to stay that pending an appeal to the Court of

12  Appeals, which I would do just out of -- so as not to prejudice

13  the appeal.

14      But if you're not going to take an appeal or seek a writ

15  of mandate then -- writ of mandate, really, then there is no

16  point in delaying.

17          **MR. EHRLICH:**  May I have one moment?

18          **THE COURT:**  Yes.

19          **MR. GONZÁLEZ:**  Your Honor, because I know how

20  important this issue is to our client, we need to consult with

21  them.  They're not here.

22      I would just ask -- I would request 24 hours to consult

23  with them.  And we'll let you know within 24 hours if there's

24  any further relief that we intend to seek.

25          **THE COURT:**  By noon tomorrow, you need to let me know

1    whether or not you definitely are going to seek a writ of

2    mandate from the Court of Appeals, and the timetable.  If it's

3    long and drawn out, I will deny.  And this will go public.

4        If it is going to be very expedited to the Court of

5    Appeals, then I would consider staying my hand, keeping this

6    under wraps.  But what you cannot do is say you need more time

7    to think about it or that "We intend to do it."  You've got to

8    do it.

9        And you've got to tell me that you'll get it on file by

10   Friday or by Monday.  Very quickly.  Because this is not

11   something we ought to just delay, delay, delay, delay so

12   that -- so it's just a delay game.

13       The chances that the Court of Appeals would say that this

14   ought not to be public, in my view, are pretty small.

15           **MR. GONZÁLEZ:**  Thank you, Your Honor.

16           **THE COURT:**  All right.  So noon tomorrow.  So I will

17   ask the court reporter not to put this on the public record

18   until further order of the Court.

19       All right.  Are we done.

20           **MR. EHRLICH:**  Thank you.

21           **MR. GONZÁLEZ:**  Yes, Your Honor.  Thank you.

22           **MR. VERHOEVEN:**  Thank you.

23           **THE COURT:**  All right.

24       (At 2:55 p.m. the proceedings were adjourned.)

25                     -  -  -  -

1

2

3                    **<u>CERTIFICATE OF REPORTER</u>**

4            I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Wednesday, March 29, 2017

8

9

10                           _Katherine Sullivan_

11    _____

12         Katherine Powell Sullivan, CSR #5812, RMR, CRR
                        U.S. Court Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25