April 3, 2017

Honorable William H. Alsup
U.S. District Court for the Northern District of California
San Francisco Courthouse, Courtroom 8 - 19th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc. et al.*, Case No. 3:17-cv-00939-WHA

Dear Judge Alsup:

Plaintiff Waymo respectfully submits this discovery letter brief to inform the Court of Defendants' ("Uber") willful violation of the Court's March 16 Expedited Discovery Order.

**Uber's Willful Violation of the Court's Order**.  On March 16, the Court ordered Uber to produce several categories of documents regarding files and documents downloaded by Mr. Levandowski while still at Waymo, including the devices used for the downloads, "all subsequent emails, memoranda, PowerPoints, text messages, or notes that have forwarded, used, or referred to any part of said downloaded material," and an explanation of any modifications, deletions, or destructions of the downloaded materials. (Dkt. 61, ¶ 4.) At the March 29 hearing, Uber stated it would be "produc[ing] documents" responsive to the Court's Order. The Court responded: "I didn't just fall off the turnip truck. I know what you're telling me. That means you're not going to produce everything." (*Id.*, 4:24-5:1.) The Court also made clear its Order required Uber to produce documents in Mr. Levandowski's "personal" possession. (Tr. 12:6-11 ("Uber has the authority to say to its employees, 'If you have anything at home you bring it in here, give it to Mr. González, and he will turn it over to the Court.' You have the authority to do that. And you also have the authority to say, 'And if you don't do that, you're fired.'").)

Despite the Court's admonitions, Uber willfully ignored the Court's Order. Uber failed to produce the more than 14,000 files and documents downloaded by Mr. Levandowski, as well as the hardware used for those downloads. Late Friday night, March 31, even though Mr. Levandowski remains Uber's Vice President of Engineering in charge of running Uber's self-driving car program, Uber claimed it did "not review[] any documents or files that belong to Mr. Levandowski personally." So there is no way that Uber could have determined whether it located "all subsequent emails, memoranda, PowerPoints, text messages, or notes that have forwarded, used, or referred to any part of said downloaded material." (Dkt. 61 ¶ 4.) Notably, Uber also did not review the 14,000 files that Waymo has made available for inspection since March 22, further guaranteeing that it could not ascertain any "use" of those documents by Uber.

Uber then made a document production minutes before midnight that had no media used for the downloads of Waymo documents, no emails, memoranda, PowerPoints, text messages, or notes of any kind, and no documents or any statement regarding the deletion, destruction, or modification of the downloaded files. There was no privilege log. Uber's production contained slightly over 900 files, all of which had been stripped of custodial information, file names, and original metadata (Uber has said they will correct for the metadata, but has not yet done so).

Most files lacked any file extension, and most of the remaining files required special software and/or supporting directories and libraries to view that Uber did not provide.

Uber also willfully failed to conduct a reasonable search for responsive documents. Uber improperly limited its search parameters to (1) the file names of the 14,000 downloaded files, (2) the MD5 hash values of the downloaded files, and (3) "search terms." Obviously, a search for the downloaded files based on the file names would miss files with changed names. And, as Waymo previously told Uber, a search based on the MD5 hash value would miss any file whose contents had been even slightly modified. Neither search method would identify any *subsequent* documents containing the contents of the downloaded files. Uber also limited its searched sources to (1) one document repository and (2) the "Uber computer records" of Mr. Levandowski, Mr. Kshirsagar, Mr. Raduta, and "seven other randomly selected Uber employees who work in the autonomous vehicle space, and who formerly worked at Google and/or Waymo on Chauffeur or LiDAR." Searching only these sources, however, misses any emails or text messages that use or refer to the downloaded materials, any hard copy documents that use or refer to the downloaded materials, and any electronic files or documents of any type on any of Uber's other shared servers or custodial computers.

Waymo has repeatedly asked Uber's counsel to return its stolen documents -- in its complaint, its PI papers, in Court and by letter, and Uber has never substantively responded. After Uber's midnight production, Waymo promptly asked to meet and confer again on Saturday, raising its concerns with Uber's non-production. Uber again did not respond. On Sunday morning April 2, Waymo repeated its request to confer, offering a window of several hours. Uber again refused to meet and confer, sending a belated email suggesting a call after the completion of a deposition today and stating it would send a written response in the morning. But when the deposition ended this morning at around 11 a.m., Uber refused to meet and confer again and again promised a written response would be forthcoming in an hour. By the time of this filing, Uber still has not made itself available for a meet and confer.

**Adverse Inference Is the Appropriate Remedy for Uber's Willful Violations.** The Court should draw an adverse inference from Uber's willful failure to comply with the Court's order of production. Uber's conduct plainly is designed to delay the expedited proceedings ordered by this Court and stonewall Waymo's request for preliminary relief. Specifically, for purposes of Waymo's motion for preliminary injunction, the Court should issue an adverse inference that the downloaded files were and continue to be used by Uber in the development of its custom LiDAR system. The Court has the authority to provide such relief, as it may "direct[] that . . . designated facts be taken as established for purposes of the action." Fed. R. Civ. P. 37(b)(2)(A)(i). Courts have imposed more severe sanctions for failure to comply with a court order. *See*, *e.g.*, *Martinez v. Extra Space Storage, Inc.*, No. C 13–00319 WHA, 2013 WL 5732967, at *2-*3 (N.D. Cal. Oct. 22, 2013) (granting terminating sanctions under Fed. R. Civ. P. 37(b) for failure to provide discovery, and noting that "[f]ailure to produce documents as ordered, however, is considered sufficient prejudice" justifying such sanctions); *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-cv-1893-HRL, 2016 WL 5870218, at *5-*6 (N.D. Cal. Oct. 7, 2016) (granting an

adverse inference where, *inter alia*, defendant failed to produce data in native format despite a court order to do so).

To the extent Uber tries to excuse its noncompliance on the grounds that Mr. Levandowski has invoked the Fifth Amendment and refused to provide Uber with documents or assistance, Waymo notes that Mr. Levandowski remains – ***to this day*** – an Uber executive and in charge of its self-driving car program.  Uber has ratified Mr. Levandowski's behavior and is liable for it. Cal. Civ. Code § 2310 ("A ratification can be made . . . by accepting or retaining the benefit of the act, with notice thereof."); *Ajaxo Inc. v. E*Trade Grp., Inc.*, 135 Cal.App.4th 21, 67-68 (2005) (conduct of an employee who misappropriated trade secrets was ratified where ratifying company's "top management had the opportunity to know of and either ignore or actually approve of" the theft).[1]  Uber's counsel has sufficient access to Mr. Levandowski to represent to the Court and the media that he has a "good story to tell."  (3/29/17 Hr'g Tr. at 16:7-11.)  Indeed, the same attorneys representing Uber also represent Mr. Levandowski personally in the Levandowski arbitration, and these attorneys presently argue (without support) that this suit should be merged with that arbitration.  It is these same attorneys who simultaneously represent to this Court that they have not and cannot review Mr. Levandowski's files.  And it is these same attorneys who nevertheless had no difficulty finding a signed version of Mr. Levandowski's employment agreement in making an arbitration demand last Friday on behalf of Uber.[2]

Should the Court not be inclined to draw an adverse inference from Uber's conduct, Waymo respectfully requests an order compelling Uber, within 24 hours of the Court's order, to: (1) fully and completely comply with the Court's expedited discovery order; (2) search all of Uber's document repositories and employees of its autonomous vehicle unit with a list of 15 search terms provided by Waymo; (3) provide an accounting and chain of custody detailing what, exactly, has been done with Waymo's documents since the filing of its complaint, including when the documents were first located, how the documents were secured, whether the documents were reviewed or used in any other way, where all copies of the documents have resided up to the point of their return to Waymo, and a detailing of each person (including individual attorneys) who have had access to the documents, when they had access and what exactly each individual did with any of the documents; and (4) an inspection of Uber's LiDAR system(s), and documents sufficient to show the operation of Uber's LiDAR system(s).

---

[1]   Whether Mr. Levandowski's criminal attorneys file a motion to suspend production or privilege log requirements pursuant to the Court's Order Re Due Diligence Report is immaterial to this letter brief.  Uber is a corporate entity with no Fifth Amendment rights.  *Mission St., San Francisco, Cal.*, 2014 WL 492481, at *1-*3 (N.D. Cal. Feb. 4, 2014).  An adverse inference may apply against Uber regardless of whether the Court grants Mr. Levandowski's attempt to invoke the Fifth Amendment.  *LiButti v. U.S.*, 107 F.3d 110, 120-24 (2nd Cir. 1997) (determination whether an adverse inference applies to a party when a non-party invokes the Fifth Amendment privilege evaluated in light of four non-exclusive factors); Fed. R. Civ. P. 37(b)(2)(A)(i).

[2]   Amazingly, Uber's counsel have not listed Levandowski as a party to this new arbitration demand, instead listing Uber as the sole party seeking relief.

Respectfully,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Counsel for Waymo LLC

CC:  Counsel of record (via ECF)