# EXHIBIT 1

# REDACTED VERSION OF DOCUMENT
# FILED UNDER SEAL



# Demand for Arbitration Form (continued)
Instructions for Submittal of Arbitration to JAMS



TO RESPONDENT (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)                    Add more respondents on **page 6**.

**RESPONDENT NAME**   Anthony Scott Levandowski

| ADDRESS | ████████████████ | | |
|---|---|---|---|
| CITY | ████████ | STATE ██ | ZIP ████ |
| PHONE | FAX | EMAIL ████████████ | |

RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

REPRESENTATIVE/ATTORNEY

FIRM/COMPANY

ADDRESS

CITY                          STATE                ZIP

PHONE              FAX        EMAIL

## FROM CLAIMANT                                                      Add more claimants on **page 7**.

**CLAIMANT NAME**   Google Inc.

**ADDRESS**   1600 Amphitheatre Parkway

**CITY**   Mountain View          **STATE** CA          **ZIP** 94043

PHONE              FAX          EMAIL

CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

**REPRESENTATIVE/ATTORNEY**   Robert Van Nest & Rachael Meny

**FIRM/COMPANY**   Keker & Van Nest LLP

**ADDRESS**   633 Battery Street

**CITY**   San Francisco          **STATE** CA          **ZIP** 94111

**PHONE**   415-391-5400   **FAX** 4153977188   **EMAIL** rmeny@kvn.com

GONZALEZ EX. 1, Page 1 of 67



# Demand for Arbitration Form (continued)
## Instructions for Submittal of Arbitration to JAMS

## NATURE OF DISPUTE / CLAIMS & RELIEF SOUGHT BY CLAIMANT

CLAIMANT HEREBY DEMANDS THAT YOU SUBMIT THE FOLLOWING DISPUTE TO FINAL AND BINDING ARBITRATION.
A MORE DETAILED STATEMENT OF CLAIMS MAY BE ATTACHED IF NEEDED.

See Arbitration Demand (Attachment A).

AMOUNT IN CONTROVERSY (US DOLLARS)

GONZALEZ EX. 1, Page 2 of 67



# Demand for Arbitration Form (continued)
Instructions for Submittal of Arbitration to JAMS

## ARBITRATION AGREEMENT

This demand is made pursuant to the arbitration agreement which the parties made as follows. *Please cite location of arbitration provision and attach two copies of entire agreement.*

#### ARBITRATION PROVISION LOCATION

The following relevant agreements contain arbitration provisions:

1. Google/Levandowski Project Chauffeur Development Team Offer Amendment Letter (Attachment B, "Project Chauffeur Letter") and Exhibit B thereto, which is an At-Will Employment, Confidential Information, Invention Agreement and Arbitration Agreement, at Paragraph 14.

2. Google/Levandowski At-Will Employment, Confidential Information, Invention Agreement and Arbitration Agreement (Attachment C, "2009 Levandowski Employment Agreement"), at Paragraph 15.

3. Google/▮▮▮ At-Will Employment, Confidential Information, Invention Agreement and Arbitration Agreement (Attachment D, "▮▮ Employment Agreement"), at Paragraph 12.

## RESPONSE

The respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. *Send the original response and counter-claim to the claimant at the address stated above with two copies to JAMS.*

## REQUEST FOR HEARING

#### REQUESTED LOCATION   Santa Clara, California

## ELECTION FOR EXPEDITED PROCEDURES (IF COMPREHENSIVE RULES APPLY)

*See: Comprehensive Rule 16.1*

☐ *By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.*

## SUBMISSION INFORMATION

SIGNATURE   *Rachael Meny / H. Gle*   DATE   10/28/2016

NAME
(PRINT/TYPED)   Rachael E. Meny

GONZALEZ EX. 1, Page 3 of 67

# Demand for Arbitration Form (continued)
## Instructions for Submittal of Arbitration to JAMS

Completion of this section is <u>required for all consumer or employment claims initiated in California</u>.

## CONSUMER ARBITRATION

**Please indicate if this is a CONSUMER ARBITRATION as defined by *California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e)*:**

☐ **YES**, this **is** a CONSUMER ARBITRATION as defined by California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e).

☑ **NO**, this **is not** a CONSUMER ARBITRATION as defined by California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e).

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

1.  The contract is with a consumer party, as defined in these standards;
2.  The contract was drafted by or on behalf of the non-consumer party; and
3.  The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

1.  An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;
2.  An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;
3.  An individual with a medical malpractice claim that is subject to the arbitration agreement; or
4.  An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

**If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT A CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.**

## EMPLOYMENT MATTERS

**If this is an EMPLOYMENT matter, Claimant must complete the following information:**

Private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

☐ Less than $100,000      ☐ $100,000 to $250,000      ☐ More than $250,000      ☑ Decline to State

## WAIVER OF ARBITRATION FEES

**In certain states (e.g. California), the law provides that consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees.** In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information. Note: this requirement is not applicable in all states.

GONZALEZ EX. 1, Page 4 of 67



# Demand for Arbitration Form (continued)

Instructions for Submittal of Arbitration to JAMS



**RESPONDENT #2** (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

RESPONDENT NAME

ADDRESS

CITY                                      STATE                   ZIP

PHONE                   FAX               EMAIL

RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

REPRESENTATIVE/ATTORNEY

FIRM/ COMPANY

ADDRESS

CITY                                      STATE                   ZIP

PHONE                   FAX               EMAIL

**RESPONDENT #3** (PARTY ON WHOM DEMAND FOR ARBITRATION IS MADE)

RESPONDENT NAME

ADDRESS

CITY                                      STATE                   ZIP

PHONE                   FAX               EMAIL

RESPONDENT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

REPRESENTATIVE/ATTORNEY

FIRM/ COMPANY

ADDRESS

CITY                                      STATE                   ZIP

PHONE                   FAX               EMAIL

GONZALEZ EX. 1, Page 5 of 67

 # Demand for Arbitration Form (continued)
### Instructions for Submittal of Arbitration to JAMS

## CLAIMANT #2

CLAIMANT NAME

ADDRESS

CITY                    STATE          ZIP

PHONE          FAX      EMAIL

CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

REPRESENTATIVE/ATTORNEY

FIRM/ COMPANY

ADDRESS

CITY                    STATE          ZIP

PHONE          FAX      EMAIL

## CLAIMANT #3

CLAIMANT NAME

ADDRESS

CITY                    STATE          ZIP

PHONE          FAX      EMAIL

CLAIMANT'S REPRESENTATIVE OR ATTORNEY (IF KNOWN)

REPRESENTATIVE/ATTORNEY

FIRM/ COMPANY

ADDRESS

CITY                    STATE          ZIP

PHONE          FAX      EMAIL

GONZALEZ EX. 1, Page 6 of 67

# ATTACHMENT A

1  KEKER & VAN NEST LLP
   ROBERT A. VAN NEST - #84065
2  rvannest@kvn.com
   RACHAEL E. MENY - #178514
3  rmeny@kvn.com
   JENNIFER A. HUBER - #250143
4  jhuber@kvn.com
   THOMAS E. GORMAN - #279409
5  tgorman@kvn.com
   W. HAMILTON JORDAN - #295004
6  wjordan@kvn.com
   633 Battery Street
7  San Francisco, CA 94111-1809
   Telephone:    415 391 5400
8  Facsimile:    415 397 7188

9  Attorneys for Claimant
   GOOGLE INC.
10

11      BEFORE JAMS (JUDICIAL ARBITRATION AND MEDIATION SERVICES)

12

    GOOGLE INC.,
13
                Claimant,                    **ARBITRATION DEMAND**
14
          v.
15
    ANTHONY LEVANDOWSKI and
16
17              Respondents.
18

19

20

21

22

23

24

25

26

27

28

                          ARBITRATION DEMAND

**GONZALEZ EX. 1, Page 8 of 67**

1

2   **I.      INTRODUCTION**

3          1.      Claimant Google Inc. ("Google") brings this arbitration demand against two

4   former, senior employees, Respondents Anthony Levandowski and          (collectively

5   "Respondents").  While Levandowski and     were still on Google's payroll, they breached their

6   contractual obligations and duties to Google by building a company that would ultimately

7   compete with Google's self-driving car project.  Levandowski's and     acts included, among

8   other things, a campaign during their employment at Google to use Google's confidential

9   information regarding the unique skills, experiences and compensation packages of Google

10  employees and contractors to lure them from Google to a new, competing venture, named

11  OttoMotto LLC ("Otto").

12         2.      Respondents' obligations to, and agreements with, Google prohibited them from

13  taking such actions, including, among other things, by prohibiting them from soliciting Google

14  employees and consultants to join another company (both during and for one year following their

15  employment), prohibiting them from engaging in activities that conflicted with their obligations

16  to Google, and prohibiting them from taking actions that created a potential or actual conflict of

17  interest with Google.

18         3.      As one example of Respondents' violations of these obligations and agreements,

19  beginning at least in the late Summer or Fall 2015, Levandowski and    individually and

20  collectively embarked on a campaign to unlawfully use confidential Google information to target

21  and recruit valuable Google employees by soliciting them and inducing them to leave Google to

22  join a different company in the self-driving space.  That company would ultimately become Otto.

23  Levandowski and     concealed their conduct from Google management, a concealment that

24  allowed them each to profit greatly.  Among other things, this concealment allowed Levandowski

25  to ultimately collect over          in incentive payments from Google for his supposed

26  contributions to Google's self-driving car project—all while he was breaching his obligations to

27  Google and building a company that would compete with Google.

28

1
ARBITRATION DEMAND

1121951

GONZALEZ EX. 1, Page 9 of 67

1        4.      Google brings this demand to obtain damages for, and to put an end to,

2 Respondents' breaches of contract; their unlawful, unfair, and tortious interference with Google's

3 employment relationships; their breach of the duty of loyalty and the duty of a fiduciary; and

4 related torts arising from Respondents' efforts to unlawfully compete with Google and to solicit

5 Google's personnel.

6 **II.     FACTUAL ALLEGATIONS**

7        **A.     Respondents Anthony Levandowski and** ▮▮▮▮▮.

8        5.      Google hired Respondent Anthony Levandowski as an engineer in April 2007.

9 Towards the end of his tenure at Google, Levandowski managed the team of engineers on

10 Google's self-driving car project that developed Google's LiDAR sensors, sensors that are crucial

11 to Google's development of a self-driving car.  Levandowski abruptly resigned from Google on

12 January 27, 2016, without prior notice.  On information and belief, Levandowski is now a co-

13 founder, and employee, of Otto.

14        6.      Google hired Respondent ▮▮▮▮ in April 2007.  After ▮▮▮ spent five years as a

15 product lead for Google's Maps division and then did a several-year stint at a related company,

16 ▮▮▮ returned to Google in October 2014 to serve as a high-level advisor on Google mapping-

17 related initiatives.  ▮▮▮ abruptly resigned from Google on January 13, 2016, without any prior

18 notice.  On information and belief, ▮▮▮ is a co-founder of Otto.

19        7.      Over the course of their employment with Google, Respondents signed contracts

20 with Google promising, among other things, not to undertake any competitive or disloyal acts

21 while employed by Google, not to engage in businesses or investments that created conflicts of

22 interest or any appearance of conflicts, and not to solicit Google employees for outside ventures.

23        8.      Over the course of their employment with Google, Respondents also agreed to

24 comply with Google's Code of Conduct.  Under the Code, Respondents were required to comply

25 with numerous obligations, including obligations to:  (a) avoid taking actions that would create

26 any conflicts of interest or any circumstances that might reasonably create an appearance of a

27 conflict of interest; (b) not start a competing company; (c) not take any employment, advisory

28 position or board seats with certain Google competitors or business partners; (d) not use Google's

2

1121951

1    confidential information for improper purposes; and, (e) take certain steps before accepting any

2    board seat with an outside company.

3        9.     At all times relevant to this demand, Respondents Levandowski and ▮▮▮▮ were

4    acting in concert and conspired with and provided assistance to each other in connection with the

5    unlawful conduct alleged herein. Each Respondent ratified or agreed to accept the benefits of the

6    other's conduct.

7        **B.**     **Odin Wave/Tyto Lidar.**

8        10.     Google is now informed and believes that, during Levandowski's tenure at

9    Google, he was involved in competing side businesses, including enterprises known as Odin

10    Wave, LLC ("Odin Wave") and Tyto Lidar LLC ("Tyto").

11        11.     Odin Wave was incorporated in or around August 2012. The physical address

12    used for Odin Wave was 2201 Dwight Way in Berkeley, California. On information and belief,

13    2201 Dwight Way is owned by Levandowski.

14        12.     In July 2013, a Google hardware vendor contacted a Google employee to inform

15    him that, on information and belief, a company named Odin Wave had just submitted an order for

16    a custom-fabricated part that was similar to a part used by Google in its unique and proprietary

17    laser technology for self-driving vehicles.

18        13.     After receiving this call, two Google employees investigated Odin Wave and

19    discovered that there appeared to be several connections between Levandowski and Odin Wave.

20    Those connections included Odin Wave's location at 2201 Dwight Way. Levandowski was

21    questioned about his affiliation with Odin Wave in mid-2013 but denied having any ownership

22    interest in Odin Wave.

23        14.     Google is now informed and believes that, by February 2014, Odin Wave LLC

24    merged with an entity named Tyto Lidar LLC ("Tyto"). Public records list Ognen Stojanovski as

25    the manager of Tyto Lidar. On information and belief, Stojanovski is friends with Levandowski

26    and worked with Levandowski on an early, self-driving vehicle prototype.

27        15.     On information and belief, Odin Wave/Tyto was developing a LiDAR sensor

28    modules which can be used in self-driving vehicles.

1121951

GONZALEZ EX. 1, Page 11 of 67

1    16.    Google is now informed and believes that Levandowski had some involvement

2    with Odin Wave/Tyto since at least 2013 at the same time that he was working on Google's

3    development of LiDAR sensor modules.

4    17.    In or around Spring 2015, Google—seeing a potential overlap between Tyto's

5    technology and Google's development goals for self-driving technology—began investigating

6    whether to begin buying or using Tyto's products.

7    18.    Google also investigated whether to purchase Tyto.

8    19.    Levandowski participated in Google's investigation into Tyto's products and

9    business, including at least one site visit to Tyto headquarters.  On information and belief, he was

10   privy to Google's impressions of Tyto's products and process, including Google's confidential

11   opinion of Tyto's technology and the viability of Tyto's business.  Throughout this process,

12   Levandowski never disclosed a relationship with Tyto and its employees.  Based on information

13   and belief, Google now believes that Levandowski in fact had a relationship with Tyto and its

14   employees that conflicted with Levandowski's duties to Google.

15   20.    Google's interest in Tyto's products carried over into 2016, including beyond

16   Levandowski's departure from Google.

17   21.    Google is informed and believes that at least by May 18, 2016, Tyto Lidar LLC

18   had merged with Otto.

19   **C.    Otto**

20   22.    Google is informed and believes that, in 2015, Respondents Levandowski and

21   began executing a plan to compete with Google in the self-driving vehicle space, while they were

22   still employed by Google.

23   23.    Google is informed and believes that Respondents' plan included taking

24   employees and consultants from Google, including employees and consultants with access to

25   Google confidential information and trade secrets.

26   24.    Because Levandowski and        were believed to be trusted agents of Google,

27   Google shared confidential information with them about Google employees, including the

28   employees' unique skills, work experiences, responsibilities, compensation, and work

4

1121951

GONZALEZ EX. 1, Page 12 of 67

1     performance.  Prior to Levandowski's and ███ resignations, on information and belief,

2     Respondents misused this confidential Google information, including while actively soliciting

3     Google employees to leave for their competing venture, Otto.

4          25.     Google is informed and believes that, at the time Levandowski began taking steps

5     to create a competing company and staff it with Google employees and contractors, Levandowski

6     had not yet become eligible for, or received payment of, a substantial incentive payment related to

7     his work on Google's self-driving car project.

8          26.     Google is informed and believes that, in approximately August 2015,

9     Levandowski told some Google colleagues that he had been asked to "transfer a group of people"

10    from Google's self-driving car project to a competing company.  Levandowski then attempted to

11    solicit Google colleagues to leave Google and join Levandowski's efforts to "transfer" other

12    employees to this competing company.

13         27.     In late Summer 2015, one of the managers of Google's self-driving car project

14    heard rumors of Levandowski's on-going solicitation efforts and sought to terminate

15    Levandowski for this disloyalty.  Google, however, could not confirm Levandowski's solicitation

16    efforts at the time and he was not terminated.

17         28.     Under his employment agreements, Levandowski was required to avoid any

18    potential conflict of interest, consult with his supervisors about any potential conflict, and to

19    avoid any activities that conflicted with his employment at Google.  Levandowski not only failed

20    to disclose his conflicting activities, but on information and belief, he took steps to conceal his

21    competing and solicitation activities from Google management, in part to ensure that he received

22    payment of the substantial incentive payment from Google.  Indeed, Levandowski did not

23    publicly release full details of his competing company until after he received the final payout of

24    this incentive payment following his departure from Google.

25         29.     Google is informed and believes that, by Fall 2015, Levandowski had approached,

26    and/or had begun working with, ███ to lay the foundation for their new competing company.  In

27    Fall 2015, Levandowski and ███ settled on a name ("280 Systems") for their new company and

28

5

1121951

1    took steps to bring this company to fruition. That company—280 Systems—would later be
2    renamed Otto.

3        30.    Google is also informed and believes that Respondents' efforts to develop a
4    competing company persisted through late 2015 and into early 2016. Google is informed and
5    believes that, by approximately December 2015, Levandowski again began approaching Google
6    employees about leaving Google and asking them to help start a new company focusing on self-
7    driving vehicles.

8        31.    Google is informed and believes that, by January 2016, Respondents had increased
9    and expanded their solicitations of Google employees. As part of these efforts, Levandowski
10   made concerted and repeated efforts to solicit most, if not all, of his direct reports to leave
11   Google. Levandowski's solicitations occurred both during the work day and outside of the work
12   day, including at numerous times when Levandowski solicited individuals on the Google campus.
13   On at least some occasions, Levandowski also used his managerial role on Google's self-driving
14   car project to solicit his direct reports during the private 1-on-1 meetings he held with various
15   Google employees and to encourage his direct reports to leave Google during other meetings.

16       32.    Google is informed and believes that Respondents took steps to hide their efforts
17   to set up a competing company from Google. Respondents' steps included, but are not limited to,
18   instructing Google employees not to discuss Respondents' business or recruitment efforts via
19   company email or on other company systems.

20       33.    Google is informed and believes that, in January 2016, Respondents Levandowski
21   and ▆ also hosted at least two off-site meetings at Levandowski's Palo Alto home with the goal
22   of persuading numerous Google employees to leave Google and join Respondents' new venture.
23   Both Levandowski and ▆ set up these meetings, attended them, and led them. At least one
24   such meeting occurred while both Levandowski and ▆ were Google employees, and both
25   meetings occurred during Levandowski's employment at Google.

26       34.    Google is informed and believes that Respondents used these January 2016
27   meetings and solicitation efforts to encourage Google employees to depart Google and move to
28   their competing venture.

6
ARBITRATION DEMAND

GONZALEZ EX. 1, Page 14 of 67

35.     On information and belief, acting in concert with a 280 Systems recruiter, Respondents also sought to induce Google employees to sign written employment agreements that obligated them to quit Google and commence work immediately.

36.     Google is informed and believes that Respondents' plan to develop a competing business included an effort to have the "entire" Laser Team on Google's self-driving car project quit Google *en masse* in January 2016 and join Respondents at their new venture. Respondents encouraged a large group of Google employees to resign without prior notice, and upon specific day(s) designated by Levandowski and ▮.

37.     Google is further informed and believes that Levandowski and ▮ encouraged and/or assisted others, including both Google employees and third parties associated with 280 Systems/Otto, to solicit Google employees and contractors to leave Google for 280 Systems/Otto.

**D.     Levandowski and ▮ Hid Their Wrongful Acts upon Departure from Google.**

38.     On January 13, 2016, ▮ resigned from Google, effective immediately, and without any prior notice.

39.     On January 15, 2016, ▮ signed an "Exit Certification" and provided it to Google. In this Exit Certification, ▮ agreed that he had "followed the terms" of Google's employment agreement, including its prohibition on soliciting Google employees while employed at Google. Google is informed and believes that ▮ certification was false or misleading when it was made on January 15, 2016.

40.     In this Exit Certification, ▮ also stated that, "as of the date you sign this letter" he had advised Google of "all facts of which you are aware" that he believed might be a violation of Google's Code of Conduct. ▮ also stated that he was not aware of any other current violations of Google's Code of Conduct. Google is informed and believes that ▮ certification was false or misleading when it was made.

41.     On January 27, 2016, Levandowski resigned from Google, effective immediately, and without any prior notice.

7
ARBITRATION DEMAND

1121951

GONZALEZ EX. 1, Page 15 of 67

1      42.    During his departure interview, Levandowski denied that he had solicited any

2 Google employees to leave. Google is informed and believes that this representation was false or

3 misleading when it was made.

4      43.    At or around the time of his departure, Levandowski was also asked what he was

5 planning to do next. In response, and notwithstanding his duty to disclose, Levandowski

6 described potential future projects or endeavors that would not compete with Google's self-

7 driving car project. Google is informed and believes that this these representations were false or

8 misleading when they were made.

9      44.    Shortly following his departure interview, Levandowski re-contacted the Google

10 employee who had conducted his departure interview. During this discussion, Levandowski

11 informed the Google employee that other Google employees were contacting Levandowski about

12 his departure but Levandowski assured the Google employee that he was not soliciting any of

13 these employees to leave Google. Google is informed and believes that this this representation

14 was false and misleading when it was made.

15      **E.    Respondents' Actions Caused Damage to Google.**

16      45.    Respondents' efforts to set up competing business(es) and to solicit Google

17 employees and contractors to leave Google for their Otto business have harmed Google. This

18 harm has included but is not limited to lost employees and contractors, recruiting and retention

19 costs and numerous other costs and damages.

20      46.    For example, Respondents' campaign to create a competing company named Otto

21 and to solicit Google's employees and contractors to leave Google was a partial success.

22 Beginning in January 2016, and continuing through at least September 2016, numerous

23 employees and contractors have left Google to join Otto. Google is informed and believes that

24 many—if not all—of these departures are attributable to the solicitation campaign that

25 Respondents' initiated and spearheaded while they were Google employees.

26      47.    Google is also informed and believes that Respondents' efforts to solicit

27 employees and contractors from Google have continued following their departures from Google.

28 Among other things, Respondents have assisted other Otto agents to solicit Google employees

1121951

GONZALEZ EX. 1, Page 16 of 67

1  and contractors to leave and join Respondents at their new company. As a result of Respondents'

2  actions, Google has spent significant time and money persuading Google employees and

3  contractors to reject Respondents' solicitation efforts. Google ultimately has been able to

4  convince numerous employees and contractors to stay with Google, but only after devoting

5  significant time and resources to this effort and, in some instances, providing incentives to stay.

6      48.    Google has incurred costs to search for and obtain replacements for the Google

7  employees and contractors who have left for employment at Otto.

8      **F.    Respondents Sell Otto to Uber**

9      49.    Given the unique training, experience, and skills of Google's employees and

10  contractors in the self-driving space, Respondents' campaign to lure employees and contractors

11  away from Google enabled Respondents to rapidly grow and profit from their new, competing

12  venture.

13      50.    Google is informed and believes that Uber acquired Otto in Summer 2016. Uber

14  reportedly paid approximately $680 million up front for the several month old company, plus a

15  stream of future compensation. Uber recently announced that Levandowski will be in charge of

16  Uber's self-driving-car project, and Uber has presented Levandowski as the new face of that

17  competing project in a series of media interviews.[1]

18      51.    Google is informed and believes that Respondents were able to jumpstart their

19  Otto business, and able to position themselves to obtain such a lofty acquisition price for Otto,

20  only because of Respondents' unfair and unlawful conduct described in this Statement of Claims,

21  including their taking key talent from Google's self-driving project, and such other conduct as

22  may be established at hearing.

23

24

25  [1] *See, e.g.*, https://newsroom.uber.com/rethinking-transportation/ ("Anthony Levandowski, Otto's co-founder, will now lead our combined self-driving efforts ....");

26  https://www.theguardian.com/technology/2016/aug/19/self-driving-car-anthony-levandowski-uber-otto-google ("Uber just announced that self-driving cars will start pick up passengers later

27  this month in Pittsburgh. And the man leading the project ...? Anthony Levandowski.");
http://www.bloomberg.com/news/features/2016-08-18/uber-s-first-self-driving-fleet-arrives-in-

28  pittsburgh-this-month-is06r7on ("When the Otto acquisition closes, likely this month, Otto co-founder Levandowski will assume leadership of Uber's driverless car operation.").

1121951

GONZALEZ EX. 1, Page 17 of 67

1    **III.    CAUSES OF ACTION**

2                                    **FIRST CAUSE OF ACTION**

3                                         **Breach of Contract**

4            52.    Claimant Google hereby incorporates by reference each of the allegations in the

5    preceding paragraphs as though fully set forth here.

6            53.    Levandowski and Google entered into an "At-Will Employment, Confidential

7    Information, Invention Agreement and Arbitration Agreement," which was executed in May 2009

8    ("Levandowski 2009 Employment Agreement"). Levandowski's receipt of a substantial

9    incentive payment in connection with Google's self-driving car project was contingent upon

10   Levandowski's agreement to an At-Will Employment, Confidential Information, Invention

11   Assignment and Arbitration Agreement ("Levandowski 2012 Employment Agreement").

12           54.              and Google entered into an "At-Will Employment, Confidential

13   Information, Invention Assignment and Arbitration Agreement" on November 5, 2014. ("

14   Employment Agreement").

15           55.    Both Respondents also agreed, as part of their Employment Agreements, to

16   comply with Google's Code of Conduct.

17           56.    Google fully performed its obligations under these Agreements.

18           57.    Respondents breached their obligations under the Levandowski Employment

19   Agreements, the          Employment Agreement, and Google's Code of Conduct in numerous ways,

20   including but not limited to:

21           Non-Solicitation Agreements

22           58.    Respondents Levandowski and        were (and are) prohibited by contract from

23   soliciting Google workers to leave Google.

24           59.    By entering the Levandowski Employment Agreements, Levandowski agreed not

25   only to abide by the Google Code of Conduct but also not to "directly or indirectly solicit, induce,

26   recruit or encourage any of [Google's] employees to leave their employment, or take away such

27   employees, or attempt to solicit, induce, recruit, encourage or take away employees of [Google],"

28   either for himself "or for any other person or entity."

                                                     10

1121951

GONZALEZ EX. 1, Page 18 of 67

60. By entering the ▮▮ Employment Agreement, ▮▮ promised not only to abide by the Google Code of Conduct but also not to "directly or indirectly solicit any Google's employees to leave their employment."

61. ▮▮ and Levandowski breached their Employment Agreements by, among other things, soliciting Google employees to leave Google.

62. Levandowski's and ▮▮ breaches of their non-solicitation obligations have enriched Respondents at Google's expense and have caused significant harm to Google, including by causing a loss of key employees and contractors, causing Google to expend resources to recruit, replace, and train new employees, and causing Google to pay retention bonuses to fend off Respondents' solicitation efforts.

Non-Competition Agreements

63. Respondents Levandowski and ▮▮ were prohibited by contract during their employment from competing with, or taking any acts disloyal to, Google.

64. By entering the Levandowski Employment Agreements, Levandowski agreed not to engage in any employment, occupation, or consulting directly related to "the business in which [Google] is now involved or becomes involved during the term of my employment." Levandowski also agreed not to engage in "any" activities that "conflict with" his obligations to Google. He also agreed to abide by the Google Code of Conduct, which required that he act with Google's "best interest" in mind and to avoid "personal gain . . . at the expense" of Google.

65. By entering the ▮▮ Employment Agreement, ▮▮ promised not to "engage in any other employment or other activities or services directly related to the business in which Google is now involved, becomes involved, or has plans to become involved . . . ." ▮▮ also promised not to take any actions "that conflict with my obligations to Google" without Google's permission. He also agreed to abide by the Google Code of Conduct, which required that ▮▮ avoid conflicts of interest and act in Google's best interest. All of these obligations remained in effect until ▮▮ departure from Google.

66. Levandowski and ▮▮ breached the non-competition obligations of their Employment Agreements by developing a competing company while still employed at Google;

11

ARBITRATION DEMAND

GONZALEZ EX. 1, Page 19 of 67

1  by collecting information from Google with plans to use it for the benefit of a Google competitor;
2  and by soliciting Google employees to leave their employment for a competing company.

3      67.      Levandowski's and      breaches of their contractual non-competition
4  obligations have enriched Respondents at Google's expense and have harmed Google, including
5  by causing a loss of key employees and contractors, causing Google to expend resources to
6  recruit, replace, and train new employees; and causing Google to pay retention bonuses to fend
7  off Respondents' solicitation efforts.

8      Confidentiality Agreements

9      68.      Respondents Levandowski and      were prohibited by contract—both during and
10  following their tenures at Google—from disclosing or misusing confidential Google information
11  acquired during the course of their employment.

12     69.      By entering into the Levandowski Employment Agreements, Levandowski
13  promised to hold Google's confidential information in the strictest confidence.  He agreed not to
14  use or disclose any Google confidential information unless for Google's benefit or with Google's
15  permission.

16     70.      likewise promised—as part of his Employment Agreement—not to disclose
17  or use Google confidential information unless for Google's benefit or with Google's permission.

18     71.      Google is informed and believes that Levandowski and      breached their
19  contractual confidentiality obligations by invoking their knowledge of confidential Google salary
20  and compensation information to make targeted and individualized job offers to Google
21  employees.

22     72.      Google is informed and believes that Levandowski further breached his
23  contractual confidentiality obligations by relying upon confidential Google information
24  concerning the quality and desirability of Tyto Lidar LLC's products and processes and the
25  viability and value of its business—all gleaned from Google's own due diligence into Tyto—in
26  acquiring Tyto on Otto's behalf.

27     73.      Levandowski's and      breaches of their confidentiality obligations have
28  enriched Respondents at Google's expense and have harmed Google, including by causing a loss

12

1121951

GONZALEZ EX. 1, Page 20 of 67

1    of key employees and contractors, causing Google to pay retention bonuses to fend off

2    Respondents' solicitation efforts and causing Google to expend resources to recruit, replace, and

3    train new employees.

4

### SECOND CAUSE OF ACTION

5

### Breach of Fiduciary Duties and/or Duties of Loyalty

6       74.     Claimant Google hereby incorporates by reference each of the allegations in the

7    preceding paragraphs as though fully set forth here.

8       75.     As a manager at Google, Levandowski owed Google fiduciary duties, including

9    but not limited to, duties of loyalty, candor, and care.

10      76.     As a Senior Advisor to Google's high-priority mapping initiatives,     owed

11    Google fiduciary duties, including but not limited to, duties of loyalty, candor, and care.

12      77.     Additionally, Levandowski and     each owed a duty of loyalty to Google due to

13    their status as trusted agents of their principal, Google.

14      78.     Through the acts alleged in this Statement of Claims, and such other acts as may

15    be established at hearing, Levandowski and     each breached their duty of loyalty to Google,

16    including by taking steps to assist and build competing companies during their tenure as Google

17    employees; by soliciting Google employees to leave their employment for a competing company;

18    by, on information and belief, encouraging other Google employees to breach their agreements

19    with Google; and by misusing confidential Google information for their own benefit and for the

20    benefit of what would ultimately become Otto.

21      79.     Levandowski's and     breaches of the duty of loyalty harmed Google,

22    including by causing Google to expend resources to recruit, replace, and train new employees and

23    causing Google to pay retention bonuses to fend off Respondents' solicitation efforts.

24      80.     These breaches also unjustly enriched Levandowski and     who were

25    compensated handsomely during—and as a result of—their disloyal acts. Respondents' unjust

26    enrichment includes, but is not limited to, Levandowski's receipt of a substantial monetary

27    incentive payment from Google and, on information and belief, Respondents' receipt (and future

28

1121951

GONZALEZ EX. 1, Page 21 of 67

1  receipt) of compensation in connection with Uber's acquisition of Otto for a reported $680

2  million.

3      81.    Respondents performed the foregoing acts, conduct, and omissions fraudulently,

4  maliciously, and oppressively, with the intent and design to damage Google. By reason of this

5  conduct, Google is entitled to recover punitive damages in an amount to be determined.

6  **THIRD CAUSE OF ACTION**

7  **Fraud-Deceit**

8      82.    Claimant Google hereby incorporates by reference each of the allegations in the

9  preceding paragraphs as though fully set forth here.

10      83.    Through the acts alleged in this Statement of Claims, Levandowski concealed

11  material facts from Google and/or made affirmative misrepresentations to Google. Levandowski

12  undertook a long-ranging plan to build up a company to compete with Google, and he covertly

13  waged a disloyal campaign to persuade Google employees and contractors to join him—including

14  via 1-on-1 work meetings on the Google campus and secret meetings held off-campus.

15      84.    Levandowski was under contractual and fiduciary obligations to disclose these

16  material facts, which he instead intentionally concealed. For example, in connection with his exit

17  interview, Levandowski both concealed and made affirmative misrepresentations concerning his

18  conduct in soliciting Google employees to leave the company for his competing venture. And

19  during the months preceding his departure, Levandowski made numerous misrepresentations to

20  his direct supervisors at Google concerning his work at Google, including that he was fully

21  "committed" to Google, that he was "loyal" to Google, and that he had no intention of leaving

22  Google.

23      85.    Google is informed and believes that Levandowski intended to induce Google's

24  reliance on his concealment in order to mislead Google into believing that he was a committed

25  employee and to sustain his employment long enough for Levandowski to continue collecting a

26  generous salary, long enough to collect substantial monetary incentive payments according to his

27  compensation plan, and long enough to execute his unlawful campaign of solicitation and

28  competition.

14
ARBITRATION DEMAND

GONZALEZ EX. 1, Page 22 of 67

1        86.     Google is informed and believes that Respondent Levandowski also either aided

2  and abetted     fraud, and/or that he conspired with   and intended for the fraud to be

3  committed, and that he therefore incurred tort liability.

4        87.     Through the acts alleged in this Statement of Claims,   concealed material facts

5  from Google and/or made affirmative misrepresentations to Google.   was under contractual

6  and fiduciary obligations to disclose these material facts, which he instead intentionally

7  concealed. For example, on information and belief,   concealed his efforts to build a company

8  to compete with Google, and concealed his participation in a disloyal campaign to persuade

9  Google employees and contractors to join him—including via secret meetings held off-campus.

10    also made affirmative misrepresentations or material omissions in the Exit Certification he

11  provided to Google upon departure, including but not limited to the fact that he had advised

12  Google of all facts that violated Google's Code of Conduct and that he was not aware of any

13  violations of Google's Code of Conduct.

14        88.     Google is informed and believes that   intended to induce Google's reliance on

15  his concealment and affirmative misrepresentations in order to mislead Google into believing that

16  he was a committed employee and to sustain his employment long enough for   to continue

17  collecting a generous salary, and long enough to execute his unlawful campaign of solicitation

18  and competition.

19        89.     Google is informed and believes that Respondent   either aided and abetted

20  Levandowski's fraud, and/or that he conspired with Levandowski and intended for the fraud to be

21  committed, and that he therefore incurred tort liability.

22        90.     Google justifiably relied on Levandowski's and   deception by continuing

23  their at-will employment and awarding them substantial compensation, incentive payments, and

24  bonuses, all under the impression that they were loyal employees and agents.

25        91.     As a result of Levandowski's and   actions, Google sustained damages in an

26  amount to be determined at an arbitration hearing.

27        92.     As a result of conduct alleged herein, Respondents have been and will be unjustly

28  enriched in an amount to be proven at an arbitration hearing. For example, Respondents have

1121951

GONZALEZ EX. 1, Page 23 of 67

1  been unjustly enriched by receiving compensation and business opportunities that rightly belong

2  to Google. Respondents' unjust enrichment includes, but is not limited to, Levandowski's receipt

3  of substantial monetary incentive payments from Google and, on information and belief,

4  Respondents' receipt (and future receipt) of compensation in connection with Uber's acquisition

5  of Otto for a reported \$680 million.

6      93.     Levandowski and ▮ performed the foregoing acts, conduct, and omissions

7  fraudulently, maliciously, and oppressively, with the intent and design to damage Google. By

8  reason of this conduct, Google is entitled to recover punitive damages in an amount to be

9  determined.

10                            **FOURTH CAUSE OF ACTION**

11                          **Tortious Interference with Contract**

12     94.     Claimant Google hereby incorporates by reference each of the allegations in the

13  preceding paragraphs as though fully set forth here.

14     95.     On information and belief, Respondent ▮ was aware of Levandowski's

15  contractual obligations, including but not limited to, the obligations not to solicit and not to

16  compete.

17     96.     On information and belief, Respondent Levandowski was aware of ▮

18  contractual obligations, including but not limited to, the obligations not to solicit and not to

19  compete.

20     97.     On information and belief, Respondent ▮ induced Levandowski's contractual

21  breaches, including but not limited to, his breaches of his non-solicitation and non-competition

22  obligations.

23     98.     On information and belief, Respondent Levandowski induced ▮ contractual

24  breaches, including but not limited to, his breaches of his non-solicitation and non-competition

25  obligations.

26     99.     Respondent ▮ intentional conduct disrupted Levandowski's contractual

27  obligations and was a substantial factor in causing harm to Google.

28

16
ARBITRATION DEMAND

GONZALEZ EX. 1, Page 24 of 67

1    100.    Respondent Levandowski's intentional conduct disrupted ▮▮▮ contractual
2    obligations and was a substantial factor in causing harm to Google.

3    101.    As a result of conduct alleged herein, Respondents have been and will be unjustly
4    enriched in an amount to be proven at an arbitration hearing.  For example, Respondents have
5    been unjustly enriched by receiving compensation and business opportunities that rightly belong
6    to Google.  Respondents' unjust enrichment includes, but is not limited to, Levandowski's receipt
7    of substantial incentive payments from Google and, on information and belief, Respondents'
8    receipt (and future receipt) of compensation in connection with Uber's acquisition of Otto for a
9    reported $680 million.

10    102.    Respondents performed the foregoing acts, conduct, and omissions fraudulently,
11    maliciously, and oppressively, with the intent and design to damage Google.  By reason of this
12    conduct, Google is entitled to recover punitive damages in an amount to be determined.

13                                    **FIFTH CAUSE OF ACTION**

14                **Tortious Interference with Prospective Economic Advantage**

15    103.    Claimant Google hereby incorporates by reference each of the allegations in the
16    preceding paragraphs as though fully set forth here.

17    104.    Google had economic relationships with each of its solicited employees and
18    contractors that, if they had continued, would have benefited Google.

19    105.    Respondents knew of these relationships but solicited the employees and
20    contractors—including Google employees Don Burnette and Claire Delaunay, among many
21    others—to leave Google and join a venture that would ultimately become Otto with the intent of
22    disrupting their economic relationship with Google.  Respondents engaged in wrongful conduct
23    by soliciting Google employees while still employed at Google and encouraging other Google
24    employees to violate the duty of loyalty.  In concert with Otto's recruiter, Respondents
25    encouraged a group of Google employees to quit *en masse* and with little notice, which they
26    understood, or had reason to know would cause disruption and harm to Google's business.

27    106.    As a direct result of this wrongful conduct, on information and belief, numerous
28    employees and contractors thus far have terminated their economic relationships with Google and

                                            17

GONZALEZ EX. 1, Page 25 of 67

1   currently work for Otto. Respondents' tortious acts caused damages to Google in an amount to be

2   proven at the arbitration hearing.

3       107.    As a result of conduct alleged herein, Respondents have been and will be unjustly

4   enriched in an amount to be proven at an arbitration hearing. For example, Respondents have

5   been unjustly enriched by receiving compensation and business opportunities that rightly belong

6   to Google. Respondents' unjust enrichment includes, but is not limited to, Levandowski's receipt

7   of substantial monetary incentive payments from Google and, on information and belief,

8   Respondents' receipt (and future receipt) of compensation in connection with Uber's acquisition

9   of Otto for a reported $680 million.

10      108.    Respondents performed the foregoing acts, conduct, and omissions fraudulently,

11  maliciously, and oppressively, with the intent and design to damage Google. By reason of this

12  conduct, Google is entitled to recover punitive damages in an amount to be determined.

13                        **SIXTH CAUSE OF ACTION**

14  **Unlawful Conduct and Unfair Competition under California Business and Professions Code
    § 17200 et seq.**

15

16      109.    Claimant Google hereby incorporates by reference each of the allegations in the

17  preceding paragraphs as though fully set forth here.

18      110.    As alleged above, Respondents have engaged in unlawful, unfair, and/or

19  fraudulent business practices within the meaning of California Business and Professions Code

20  § 17200.

21      111.    Respondents undertook the acts described in this Statement of Claims, and such

22  other acts as may be established at hearing, with the intent to injure Google and gain an unfair

23  competitive advantage.

24      112.    The natural, probable, and foreseeable result of Respondents' conduct has been

25  and will continue to be to injure Google's business, including but not limited to its self-driving

26  car project, to impose substantial expenses on Google to counteract that conduct, and to injure

27  and damage Google in other ways.

28      113.    The above acts, unless restrained, threaten to and will irreparably injure Google's

    business, goodwill, and reputation, through the disclosure of its confidential information.

                                    18
    ───────────────────────────────────────────────────────
                          ARBITRATION DEMAND

GONZALEZ EX. 1, Page 26 of 67

1  Accordingly, Google is entitled to appropriate injunctive relief against further acts of unfair
2  competition by Respondents.

3      114.    As a proximate and direct result of Respondents' unlawful conduct, Google has
4  suffered and will continue to suffer substantial actual losses, and Respondents' have been unjustly
5  enriched in amounts for which Google is entitled to restitution.

6      115.    Google is entitled to restitution in the amount, at a minimum, of the salary,
7  benefits, incentive payments, and bonuses paid to Levandowski and █████ during the course of
8  their unlawful, unfair, and/or fraudulent conduct.

9      116.    Unless enjoined, Respondents will continue to engage in these unlawful, unfair,
10  and/or fraudulent acts, conduct, and omissions, which have resulted, and will continue to result in,
11  irreparable injury to Google.

12                          **SEVENTH CAUSE OF ACTION**

13                              **Unjust Enrichment**

14      117.    Claimant Google hereby incorporates by reference each of the allegations in the
15  preceding paragraphs as though fully set forth here.

16      118.    As a result of the illegal and wrongful conduct alleged herein, Respondents have
17  been and will be unjustly enriched in an amount to be proven at an arbitration hearing.

18      119.    Specifically, Respondents have been unjustly enriched by receiving compensation
19  and business opportunities that rightly belong to Google.

20      120.    Respondents' unjust enrichment includes, but is not limited to, Levandowski's
21  receipt of over █████████ in incentive payments from Google and, on information and belief,
22  Respondents' receipt (and future receipt) of compensation in connection with Uber's acquisition
23  of Otto for a reported \$680 million.

24      121.    Respondents should be required to disgorge and return to Google all the ill-gotten
25  gains that they illegally and wrongfully obtained at the expense of Google, in an amount to be
26  determined at trial, and a constructive trust should be imposed thereto.

27  **IV.    STATEMENT OF REMEDIES SOUGHT**

28      WHEREFORE, Claimant Google respectfully requests the following relief:

19

1121951

GONZALEZ EX. 1, Page 27 of 67

1       1.      Judgment in Google's favor and against Respondents on all causes of action

2   alleged herein;

3       2.      For damages in an amount to be proven at an arbitration hearing;

4       3.      For restitution and disgorgement of Respondents' unjust enrichment;

5       4.      For the imposition of a constructive trust;

6       5.      For injunctive relief;

7       6.      For punitive damages;

8       7.      For restitution under Business and Professions Code § 17200;

9       8.      For reasonable attorneys' fees and costs of suit incurred herein as allowed by law

10  and contract;

11      9.      For prejudgment and post-judgment interest; and

12      10.     For such other and further relief as the Arbitrator may deem to be just and proper.

13

14  Dated: October 28, 2016                          KEKER & VAN NEST LLP

15

16                                      By:    _/s/ Rachael E. Meny_
                                               ROBERT A. VAN NEST
17                                             RACHAEL E. MENY
                                               JENNIFER A. HUBER
18                                             THOMAS E. GORMAN
                                               W. HAMILTON JORDAN
19
                                               Attorneys for Claimant
20                                             GOOGLE INC.

21

22

23

24

25

26

27

28

---

20

ARBITRATION DEMAND

1121951

GONZALEZ EX. 1, Page 28 of 67

# ATTACHMENT B

PROJECT CHAUFFEUR DEVELOPMENT TEAM OFFER AMENDMENT LETTER

January 1, 2012

Anthony Levandowski

### Re: Amendment to Offer of Google Employment

Dear Anthony:

This letter amends the Offer Letter[s] you signed with Google Inc. ("Google") on April 6, 2007 ("Prior Offer Letter[s]"). Except as set forth in this letter, the original terms and conditions of your Prior Offer Letter[s] apply. *Please note that the Project and the Plan (each, as defined below) are subject to the approval of Google's Board of Directors (the "Board"). Failure to obtain such approval will make this offer null and void.*

1.      You will remain in the exempt position of Software Engineer Manager, Project Founder and become a member on the Project Chauffeur Development Team (the "Development Team"), reporting to Sebastian Thrun. Your yearly base salary of ████ will continue to be paid every two (2) weeks.

2.      As a member of the Development Team, you have the election to participate in either (i) the Google Inc. Project Chauffeur Bonus Program, attached hereto as Exhibit A (the "Plan"), in which you will be eligible to receive an initial Allocation Amount (as defined in the Plan) of ████ as set forth on Schedule I hereto that will be converted into Bonuses (as defined in the Plan), each in accordance with, and subject to, the terms and conditions set forth in the Plan, or (ii) the standard equity refresh programs and the employee annual cash bonus plans and other bonus opportunities provided by Google to its employees generally, on the terms and conditions of such plans, programs and arrangements as may be in effect from time to time (the "Google Compensation Plans"). The same general compensation procedures and algorithms used by Google for Google Compensation Plans will be used to calculate the value of any subsequent Allocation Amounts to you, if any. Consistent with the planning procedures for the Google Compensation Plans planning procedures, the Project Lead will review modeled subsequent Allocation Amounts and make adjustments for performance as appropriate for you. The amounts recommended by the Project Lead will be subject to review and approval by the Committee (as defined in the Plan) to ensure subsequent Allocation Amounts, if any, are allocated fairly (as determined by the Committee and the Project Lead in their sole discretion) across the Participants (as defined in the Plan). You hereby acknowledge that you have been provided with sufficient information explaining the relevant terms and conditions of each of the Plan and the Google Compensation Plans, and accordingly, you hereby elect to participate in:

### (please indicate your selection)

☐       Google Inc. Project Chauffeur Bonus Program

☐       Google Compensation Plans

GONZALEZ EX. 1, Page 30 of 67

3.      You acknowledge and agree that, except as otherwise provided in Section 5.1(c) of the Plan, your current election to participate in either of the Plan or the Google Compensation Plans is binding and irrevocable, and may not be altered without the express prior consent of Google, which may be withheld in its sole discretion.  You further acknowledge and agree that your election does not constitute the surrender of any prior legally binding right to participate in either of the Plan or the Google Compensation Plans, and that you will not have any rights with respect to the Google Compensation Plans to the extent that you elect to participate in the Plan, or with respect to the Plan to the extent that you elect to participate in the Google Compensation Plans, as indicated above.  However, you will be entitled to receive any other bonuses that may be granted (if any) from time to time by Google upon the approval of the Google Project Representatives (as defined in the Plan).

4.      You acknowledge and agree that (i) you have fully and carefully read this letter and the Plan, (ii) you have been advised by, and relied solely upon, independent legal counsel, tax and financial advisors of your own choice as to the financial, tax and legal effect and meaning of each of the terms and conditions of this letter, including the Plan, (iii) you are not relying on any promises, statements or representations (written or oral) of any other party (including Google and its affiliates) regarding the subject matter of this letter, including the Plan, (iv) you (and not any other party) will be responsible for your own tax liability that may arise as a result of your employment at Google, including as a result of your participation in the Plan, (v) Google and its affiliates, and respective directors, managers, officers, shareholders, members or partners and their affiliates, may engage in other business ventures of every nature and description whether or not in direct or indirect competition with the Project (as defined in the Plan), independently or with others, (vi) you will not have any rights in and to any independent venture or activity or the income or profits derived from the Project and (vii) nothing in this letter or in the Plan is intended to be an indication or guarantee or commitment that you are entitled to future Allocation Amounts.

5.      The Plan and the existence and terms of this letter and the Technology (as defined in the Plan) and the Project, including, if applicable, its termination and the reason for such termination (collectively, the "Confidential Information") are strictly confidential and proprietary.  You will not, without the prior written consent of Google, use any Confidential Information for any purpose other than in connection with your responsibilities as a member of the Development Team and will not disclose any Confidential Information or issue any statement or communication to third parties or (other than to such individual's financial, tax or legal advisors bound by confidentiality restrictions).  This restriction will be in addition to and not in lieu of any pre-existing non-disclosure or other obligations you may have arising out of agreements entered into between you and Google.

6.      You hereby acknowledge that:

   (i)      No provision of this letter will require Google, or any of its affiliates or subsidiaries, for the purpose of satisfying any obligations under this letter, to purchase or make available assets, equipment, or funding, or place any assets or funds in a trust or other entity to which contributions are made or otherwise to segregate any assets.

   (ii)      You will have no rights other than as unsecured general creditors of Google.

(iii)   Notwithstanding anything to the contrary in the Plan, Google shall have the power and right to control all aspects of its business and operations (including decisions regarding the Project, features, functions and characteristics of Google's products, the technology on which its products and associated software are based (including the Technology), whether and when to launch its products, and how to price, market and distribute its products, (including the Technology), and nothing herein shall require Google to take any action that would be, or shall otherwise be interpreted in a manner that is inconsistent with such power and right. Further, Google shall have the power and right to terminate the Project and/or cease granting Allocation Amounts at any time and for any reason in its sole and absolute discretion.

(iv)   Hiring, leveling and promotion decisions will relate to the role in respect of the Project (rather than in respect of Google) and if you cease to be a member of the Development Team and are offered employment at Google, your title, level, salary and other compensation shall be determined by Google in its sole and absolute discretion at the time such role with Google is offered to you.

(v)   The above replaces and supersedes all compensation and bonus aspects of any and all the Prior Offer Letter[s] between you and Google and no compensation or bonus described in any Prior Offer Letter[s] will be paid at any time.   It is understood that you will remain eligible to participate in Google's discretionary employee annual bonus plan in respect to your employment period with Google prior to the first date set forth above in the letter; provided that, you acknowledge and agree that bonuses under such Google bonus plan are discretionary and whether or not a bonus will be awarded in a particular bonus period, and in what amount, if any, is within Google's sole discretion.

7.   As a condition to your becoming a member of the Development Team and the award of your initial Allocation Amount, you agree and acknowledge that you will read and execute a new At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement, substantially similar to the form attached hereto as Exhibit B.

8.   As a Project Founder, you will coordinate and provide quarterly reports to the Project Lead and the Committee (as defined in the Plan) or another person designated by Google, in each case, regarding (i) all development and other activities related to the Technology, (ii) Budget (as defined in the Plan) performance and funding requirements and (iii) material transaction events (including employee matters and hiring).   As a member of the Development Team, you will provide reasonably detailed product, material and hardware specification summaries (the "Specification Summaries") for the Technology (and any substantial upgrades, modification or revisions thereto) to Google for review and approval.   In addition to the product, material and hardware specifications, the Specification Summaries shall include minimum safety standards and descriptions of custom developed/fabricated hardware.   You will cooperate with and provide assistance to Google to conduct such patent analysis, "freedom to operate" and other similar surveys and reviews at the direction of and at such times as deemed appropriate by Google.

9.      The foregoing arrangement will not constitute a guarantee of continued employment. This means that your employment relationship may be terminated with or without cause and with or without notice at any time by you or Google and such termination will not constitute a breach of this letter. No individual other than the Chief Executive Officer of Google has the authority to enter into any agreement for employment for a specified period of time or to make any agreement or representation contrary to Google's policy of employment at-will. Any such agreement or representation must be in writing and must be signed by you and the Chief Executive Officer. Your signature at the end of this letter confirms that no promises or agreements that are contrary to our at-will relationship have been committed to you during any of your employment discussions with Google, and that this letter, along with its exhibits and schedules, as applicable, attached hereto, the Prior Offer Letter(s) (to the extent not superseded by the above), and your new At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement (as discussed above), contain our complete agreement regarding the terms and conditions of your employment.

Please sign and date this letter where indicated below to acknowledge your receipt and agreement to the above terms.

Sincerely,


Sebastian Thrun
Vice President, Engineering Fellow
Google Inc.


I have read the above and agree to its terms.


_____

Anthony Levandowski


_____

Date

## Exhibit B
### GOOGLE INC.

### AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT

---

As a condition of my employment with Google Inc., its subsidiaries, affiliates, successors or assigns (together the "Company"), and in consideration of my receipt of confidential information, my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following:

1. **At-Will Employment**. I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS IN WRITING AND SIGNED BY THE CHIEF EXECUTIVE OFFICER OF THE COMPANY. ACCORDINGLY, I ACKNOWLEDGE THAT MY EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT MY OPTION OR AT THE OPTION OF THE COMPANY, WITH OR WITHOUT NOTICE.

2. **Confidential Information.**

*(a) Company Information.* I understand that, as a result of my employment with the Company, I will obtain extensive and valuable Confidential Information belonging to the Company. I agree at all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Chief Executive Officer or the Board of Directors of the Company, any Company Confidential Information, except under a non-disclosure agreement duly authorized and executed by the Company. I understand that my unauthorized use or disclosure of Company Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company. I understand that "Company Confidential Information" means any Company non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or know-how, including, but not limited to, research, product plans, or other information regarding Company's products or services and their marketing, the identity of the Company's customers (including, but not limited to, customer lists and the identity of customers of the Company on whom I called or with whom I became acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information. I further understand that Company Confidential Information does not include any of the foregoing items which have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

*(b) Former Employer Information.* I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity, and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

*(c) Third Party Information.* I recognize that the Company may have received and in the future may receive from third parties associated with the Company, e.g., the Company's customers, suppliers, licensors, licensees, partners, or collaborators, their confidential or proprietary information ("Associated Third Party Confidential Information"). By way of example, Associated Third Party Confidential Information may include the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties. I agree at

GONZALEZ EX. 1, Page 34 of 67

all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use or to disclose to any person, firm or corporation any Associated Third Party Confidential Information, except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information during my employment will lead to disciplinary action, up to and including immediate termination and legal action by the Company.

*(d) User Data.* User Data consists of information directly or indirectly collected by Google from users of its services. User Data includes individual log files related to any user session or use of Google services or log files in the aggregate. User Data also includes personally identifiable information, which is information that can be directly associated with a specific person or entity, such as a name, address, telephone number, e-mail address, or information about activities that can be directly linked to a user, such as an IP address or cookie information. I agree to treat User Data as Company Confidential Information under this Agreement and to access, use and disclose User Data only as authorized by and in accordance with this Agreement and Company policies.

**3.   Inventions**

*(a)     Inventions Retained and Licensed. I have attached hereto as Exhibit A, a list describing all inventions, discoveries, original works of authorship, developments, improvements, and trade secrets, which were conceived in whole or in part by me prior to my employment with the Company to which I have any right, title or interest, which are subject to California Labor Code Section 2870 attached hereto as Exhibit B, and which relate to the Company's proposed business, products, or research and development (collectively referred to as "Prior Inventions"); which are not assigned to the Company hereunder, or, if no such list is attached, I represent and warrant that there are no such Prior Inventions. Furthermore, I represent and warrant that none of the Prior Inventions listed on Exhibit A of this Agreement will materially affect my ability to perform my obligations under this Agreement. If, in the course of my employment with the Company, I incorporate any Prior Invention into or use any Prior Invention in connection with any product, process, service, technology or other work by or on behalf of the Company, I hereby grant to the Company a nonexclusive, royalty-free, fully paid, irrevocable, perpetual, worldwide license, with the right to grant and authorize sublicenses, to make, have made, modify, use, import, offer for sale, and sell such Prior Invention as part of or in connection with such product, process, service, technology or other work and to practice any method related thereto.*

*(b)     Assignment of Inventions.* I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registerable under patent, copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time that I am in the employ of the Company (collectively referred to as "Inventions"), except as provided in Section 3(e) and Section 3(f) below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope and of and during the period of my employment with the Company and which are protectable by copyright are "works made for hire", as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any Inventions developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions.

*(c)     Maintenance of Records.* I agree to keep and maintain adequate and current accurate and authentic written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Company. The records are and will be available to and remain the sole property of the Company at all times.

*(d)     Patent and Copyright Registrations.* I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to

the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths or affirmations, assignments and all other instruments which the Company shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any rights relating thereto, and testifying in a suit or other proceeding relating to such Inventions. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature with respect to any Inventions, including, without limitation, to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering such Inventions, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any papers, oaths and to do all other lawfully permitted acts with respect to such Inventions with the same legal force and effect as if executed by me.

(e)    *Exception to Assignments.*  Except as provided in Section 3(f), I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as <u>Exhibit B</u>). I will advise the Company promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and not otherwise disclosed on <u>Exhibit A</u>.

(f)    *Project Inventions.*  I understand that during my employment with the Company, I will be a member of the Project Chauffeur Development Team (the "Development Team"). I hereby acknowledge and agree that for so long as I am a member of the Development Team, any and all Inventions (including the Technology (as defined in my amended offer letter by and between the Company and me (the "Amended Offer Letter"))), arising from my work at, on behalf of, or within the scope of the Project (as defined in the Amended Offer Letter) and any and all copyrights, patents, mask work rights or other intellectual property rights or technology related thereto in any and all countries (collectively, the "Project Inventions") will be exclusively owned by Google Auto LLC, a wholly owned subsidiary of Google Inc., or such other entity designated by Google from time to time (the "Project Entity"). I hereby agree to assign any and all such right, title and interest in and to such Project Inventions solely to Project Entity. Furthermore, I agree to assist the Project Entity, or its designee, at the Project Entity's expense, in every proper way to secure the Project Entity's rights in the Project Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Project Entity of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths or affirmations, assignments and all other instruments which the Project Entity shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights and in order to assign and convey to the Project Entity, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any rights relating thereto, and testifying in a suit or other proceeding relating to such Inventions. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Project Entity is unable because of my mental or physical incapacity or for any other reason to secure my signature with respect to any Project Inventions, including, without limitation, to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering such Project Inventions, then I hereby irrevocably designate and appoint the Project Entity and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any papers, oaths and to do all other lawfully permitted acts with respect to such Inventions with the same legal force and effect as if executed by me. I agree to keep and maintain adequate and current accurate and authentic written records of all Project Inventions made by me (solely or jointly with others) for so long as I am a member of the Development Team. The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Project Entity. The records are and will be available to and remain the sole property of the Project Entity at all times.

## 4.    **Conflicting Employment**

(a)    *Current Obligations.*  I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, or consulting directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities, including, but not limited to, employment outside of the Company, membership on Boards of Directors or Advisory

Boards other than the Company's, personal investments or establishing, maintaining or servicing business relationships with family or friends that conflict with my obligations to the Company.

*(b)    Prior Relationships.* Without limiting Section 4(a), I represent that I have no other agreements, relationships or commitments to any other person or entity that conflict with my obligations to the Company under this Agreement or my ability to become employed and perform the services for which I am being hired by the Company. I further agree that if I have signed a confidentiality agreement or similar type of agreement with any former employer or other entity, I will comply with the terms of any such agreement to the extent that its terms are lawful under applicable law. I represent and warrant that after undertaking a careful search (including searches of my computers, cell phones, electronic devices and documents), I have returned all property and confidential information belonging to all prior employers, and that failure to do so may result in my termination. Moreover, in the event that the Company or any of its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor or successor corporations, or assigns is sued based on any obligation or agreement to which I am a party or am bound (other that my agreements with the Company), I agree to fully indemnify the Company, its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor and successor corporations, and assigns for all verdicts, judgments, settlements, and other losses incurred by the Company (the indemnitee), as well as any reasonable attorneys' fees and costs if the plaintiff is the prevailing party in such an action, in the event that the Company is the subject of any legal action based on factual allegations that, if true, would conflict with my obligations under this Agreement.

**5.    Returning Company Documents** Upon separation from employment with the Company or on demand by the Company during my employment, I will immediately deliver to the Company, and will not keep in my possession, recreate or deliver to anyone else, any and all Company property, including, but not limited to, Confidential Information, User Data, Associated Third Party Confidential Information, as well as all devices and equipment belonging to the Company (including computers, handheld electronic devices, telephone equipment, and other electronic devices), Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, photographs, charts, all documents and property, and reproductions of any of the aforementioned items that were developed by me pursuant to my employment with the Company, obtained by me in connection with my employment with the Company, or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to Section 3(c) and Section 3(f). I also consent to an exit interview to confirm my compliance with this Section 5.

**6.    Termination Certification.** Upon separation from employment with the Company, I agree to immediately sign and deliver to the Company the "Termination Certification" attached hereto as Exhibit C. I also agree to keep the Company advised of my home and business address for a period of one (1) year after termination of my employment with the Company, so that the Company can contact me regarding my continuing obligations provided by this Agreement.

**7.    Notification of New Employer.** In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my obligations under this Agreement.

**8.    Solicitation of Employees.** I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

**9.    Export Statement of Assurance.** I recognize that, in the course of my employment, the Company may release to me items (including, but not limited to, software, technology, or systems, equipment and components) subject to the Export Administration Regulations ("EAR") or the International Traffic in Arms Regulations ("ITAR"). I herby certify that I will not export, re-export or release these items in violation of the EAR or ITAR. In order to comply with this certification, I will not disclose/export/re-export these items to any person other than the persons in my working group as required in the performance of the job responsibilities assigned to me by the Company. I understand that if I have any question regarding whether a given disclosure/export/re-export is or would be contrary to this certification, I should immediately contact the Legal Services Department before taking any actions.

**10. Code of Conduct Acknowledgement.** I acknowledge that I have read the Company's Code of Conduct, which is available on the Company's public website and can be found by clicking "About Google" and looking on the "Investor Relations" page of the site, specifically at http://investor.google.com/corporate/code-of-conduct.html. I agree to adhere to the terms of the Code of Conduct and to report any violations of the Code.

**11. Representations.** I agree to execute any proper oath or affirmation or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all terms of the Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I hereby represent and warrant that I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

**12. Audit.** I acknowledge that I have no reasonable expectation of privacy in any computer, technology system, email, handheld device, telephone, or documents that are used to conduct the business of the Company. As such, the Company has the right to audit and search all such items and systems, without further notice to me, to ensure that the Company is licensed to use the software on the Company's devices in compliance with the Company's software licensing policies, to ensure compliance with the Company's policies, and for any other business-related purposes in the Company's sole discretion. I understand that I am not permitted to add any unlicensed, unauthorized or non-compliant applications to the Company's technology systems and that I shall refrain from copying unlicensed software onto the Company's technology systems or using non-licensed software or web sites. I understand that it is my responsibility to comply with the Company's policies governing use of the Company's documents and the internet, email, telephone and technology systems to which I will have access in connection with my employment.

*13. Permission for Use of Images. I understand that during my employment with Google, agents of the company may take film, digital or other images of me, for subsequent use in non-commercial materials or collateral, including, but not limited to, the Company website (external and internal), annual reports, press day materials, internal presentations, analyst presentations, company, lobby or reception area stagings or productions, etc., without my prior consent, approval or review. My name may or may not be included along with my image. I hereby grant advance permission for such use of my image(s) by the Company, both during and after my employment, and I understand that I will not receive any royalties or other compensation for this use and I further agree to release and hold harmless any agent, employee, officer, director or other individual affiliated or working on behalf of the Company with respect to such use of my image(s).*

**14. Arbitration and Equitable Relief**

*(a) Arbitration.* IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE), WHETHER BROUGHT ON AN INDIVIDUAL, GROUP, OR CLASS BASIS, ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1280 THROUGH 1294.2, INCLUDING SECTION 1283.05 (THE "RULES") AND PURSUANT TO CALIFORNIA LAW. DISPUTES WHICH I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE SARBANES-OXLEY ACT, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, THE FAMILY AND MEDICAL LEAVE ACT, THE FAIR LABOR STANDARDS ACT, THE CALIFORNIA FAMILY

RIGHTS ACT, THE CALIFORNIA LABOR CODE, CLAIMS OF HARASSMENT, DISCRIMINATION, WRONGFUL TERMINATION AND ANY OTHER CONTRACTUAL, TORT OR STATUTORY CLAIMS UNDER FEDERAL, CALIFORNIA AND LOCAL LAWS, TO THE EXTENT ALLOWED BY LAW. I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

(b)     *Procedure.*   I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES"). I AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, MOTIONS TO DISMISS OR TO STRIKE, DEMURRERS, AND MOTIONS FOR CLASS CERTIFICATION, PRIOR TO ANY ARBITRATION HEARING. I ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES AVAILABLE UNDER APPLICABLE LAW, INJUNCTIVE RELIEF, AND THAT THE ARBITRATOR SHALL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, EXCEPT AS PROHIBITED BY LAW. I UNDERSTAND THAT THE COMPANY WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS EXCEPT THAT I SHALL PAY ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION THAT I INITIATE, BUT ONLY SO MUCH OF THE FILING FEES AS I WOULD HAVE INSTEAD PAID HAD I FILED A COMPLAINT IN A COURT OF LAW. I AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH CALIFORNIA LAW, INCLUDING THE CALIFORNIA CODE OF CIVIL PROCEDURE, AND THAT THE ARBITRATOR SHALL APPLY SUBSTANTIVE AND PROCEDURAL CALIFORNIA LAW TO ANY DISPUTE OR CLAIM, WITHOUT REFERENCE TO RULES OF CONFLICT OF LAW. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH CALIFORNIA LAW, CALIFORNIA LAW SHALL TAKE PRECEDENCE. I AGREE THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING. I AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN SANTA CLARA COUNTY, CALIFORNIA.

(c)     *Remedy.*   EXCEPT AS PROVIDED BY THE RULES AND THIS AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE BETWEEN ME AND THE COMPANY. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION. NOTWITHSTANDING, THE ARBITRATOR WILL NOT HAVE THE AUTHORITY TO DISREGARD OR REFUSE TO ENFORCE ANY LAWFUL COMPANY POLICY, AND THE ARBITRATOR SHALL NOT ORDER OR REQUIRE THE COMPANY TO ADOPT A POLICY NOT OTHERWISE REQUIRED BY LAW. NOTHING IN THIS AGREEMENT OR IN THIS PROVISION IS INTENDED TO WAIVE THE PROVISIONAL RELIEF REMEDIES AVAILABLE UNDER THE RULES.

(d)     *Administrative Relief.*   I UNDERSTAND THAT THIS AGREEMENT DOES NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE OR FEDERAL ADMINISTRATIVE BODY SUCH AS THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, OR THE WORKERS' COMPENSATION BOARD. THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM.

(e)     *Voluntary Nature of Agreement.*   I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL*. FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

(f)     *Arbitration Clause, Governing Law.*   THIS ARBITRATION CLAUSE IS ENTERED PURSUANT TO, AND SHALL BE GOVERNED BY, THE FEDERAL ARBITRATION ACT (9 U.S.C. SECTION 1, ET SEQ.),

BUT IN ALL OTHER RESPECTS THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA.

15.  **General Provisions**

(a)    *Governing law; Consent to Personal Jurisdiction*.  Except as set forth elsewhere in this Agreement, this Agreement will be governed by the laws of the State of California without giving effect to any choice of law rules or principles that may result in the application of the laws of any jurisdiction other than California. To the extent that any lawsuit is permitted under this Agreement, I hereby expressly consent to the personal jurisdiction of the state and federal courts located in California for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

(b)    *Entire Agreement*.  This Agreement, together with the Exhibits herein, and my offer letter from the Company  set forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions or representations between us including, but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the Chief Executive Officer of the Company and me.  Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

*(the remainder of this page is intentionally blank)*

GONZALEZ EX. 1, Page 40 of 67

*(c)*    *Severability.* If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

*(d)*    *Successors and Assigns.* This Agreement will be binding upon my heirs, executors, assigns, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

*(e)* *Waiver.*    *Waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.*

*(f)*    *Survivorship.* *The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.*

Date: __     _____

            Signature

            _____

            Name of Employee (typed or printed)

Date: __     _____

            Signature

            _____

                                        Name of Company Representative (typed or printed)

**Exhibit A**

**GOOGLE INC.**

**LIST OF PRIOR INVENTIONS**
**AND ORIGINAL WORKS OF AUTHORSHIP**

Do you have inventions or improvements?  Check a box and sign below.

☐ No inventions or improvements

☐ Yes – they are listed below

☐ Additional sheets attached

| Title | Date | Identifying Number or Brief Description |
|-------|------|-----------------------------------------|

Signature of Employee: ___

Print Name of Employee: __

Date: ___

## Exhibit B

### Google Inc.

### California Labor Code Section 2870
### Invention on own Time-Exemption from Agreements

"(a)  Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

    (1)    Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer.

    (2)    Result from any work performed by the employee for the employer.

(b)  To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

GONZALEZ EX. 1, Page 43 of 67

## EXHIBIT C

## GOOGLE INC.

## TERMINATION CERTIFICATION

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to Google Inc., its subsidiaries, affiliates, successors or assigns (together, the "Company").

I further certify that I have complied with all the terms of the Company's At Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

I have informed the Company in the event I am subject to any litigation holds or similar request for record retention.

I further agree that, in compliance with the At Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement, I will adhere to my obligations to the Company contained in Section 2 (Confidential Information), Section 3 (Inventions), Section 5 (Return of Company Documents) and Section 8 (Solicitation of Employees).

After leaving the Company's employment, I will be employed by _____ in the position of:

_____. I am / am not (circle one) subject to a litigation hold/request for record retention.


_____

*Signature of Employee*


_____

*Print Name*


_____

*Date*


_____

*Address for Notifications*

# ATTACHMENT C

GOOGLE INC.

### AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT

This Agreement replaces and supersedes any and all prior versions of this document. As a condition of my continuing employment with Google Inc., its subsidiaries, affiliates, successors or assigns (together "the Company"), and in consideration of receipt of confidential information as well as my participation in the Google Chauffeur project, my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following:

1.    **At-Will Employment.**  I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS IN WRITING AND SIGNED BY THE CHIEF EXECUTIVE OFFICER OF THE COMPANY. ACCORDINGLY, I ACKNOWLEDGE THAT MY EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT MY OPTION OR AT THE OPTION OF THE COMPANY, WITH OR WITHOUT NOTICE.

2.    **Confidential Information.**

*(a)    Company Information.*  I understand that, as a result of my employment with the Company, I will obtain extensive and valuable Confidential Information belonging to the Company. I agree at all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Chief Executive Officer or the Board of Directors of the Company, any Company Confidential Information, except under a non-disclosure agreement duly authorized and executed by the Company. I understand that my unauthorized use or disclosure of Company Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company. I understand that "Company Confidential Information" means any Company non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or know-how, including, but not limited to, research, product plans, or other information regarding Company's products or services and their marketing, the identity of the Company's customers (including, but not limited to, customer lists and the identity of customers of the Company on whom I called or with whom I became acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information. I further understand that Company Confidential Information does not include any of the foregoing items which have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

*(b)    Former Employer Information.*  I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

*(c)    Third Party Information.*  I recognize that the Company may have received and in the future may receive from third parties associated with the Company, e.g., the Company's customers, suppliers, licensors, licensees, partners, or collaborators, their confidential or proprietary information ("Associated Third Party Confidential Information"). By way of example, Associated Third Party Confidential Information may include the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties.

*Eff. Date 4.28.08levandowski*
*CA version*

GONZALEZ EX. 1, Page 46 of 67

I agree at all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use or to disclose to any person, firm or corporation any Associated Third Party Confidential Information, except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information during my employment will lead to disciplinary action, up to and including immediate termination and legal action by the Company.

*(d)    User Data.*  User Data consists of information directly or indirectly collected by Google from users of its services. User Data includes individual log files related to any user session or use of Google services or log files in the aggregate. User Data also includes personally identifiable information, which is information that can be directly associated with a specific person or entity, such as a name, address, telephone number, e-mail address, or information about activities that can be directly linked to a user, such as an IP address or cookie information. I agree to treat User Data as Company Confidential Information under this Agreement and to access, use and disclose User Data only as authorized by and in accordance with this Agreement and Company policies.

## 3.    Inventions

*(a)    Inventions Retained and Licensed.*  I have attached hereto as <u>Exhibit A</u>, a list describing all inventions, discoveries, original works of authorship, developments, improvements, and trade secrets, which were conceived in whole or in part by me prior to my employment with the Company to which I have any right, title or interest, which are subject to California Labor Code Section 2870 attached hereto as <u>Exhibit B</u>, and which relate to the Company's proposed business, products, or research and development (collectively referred to as "Prior Inventions"); which are not assigned to the Company hereunder, or, if no such list is attached, I represent and warrant that there are no such Prior Inventions.    To the extent the inventions, discoveries, original works of authorship, developments, improvements, and trade secrets set forth in Exhibit A were conceived in whole or in part by me during my employment with the Company, the Company has agreed that I am the sole owner of the inventions, discoveries, original works of authorship, developments, improvements, and trade secrets set forth in Exhibit A. Furthermore, I represent and warrant that none of the Prior Inventions listed on <u>Exhibit A</u> of this Agreement will materially affect my ability to perform my obligations under this Agreement. The terms of my grant to the Company of a license to the inventions, discoveries, original works of authorship, developments, improvements, and trade secrets set forth in Exhibit A are provided in a side agreement between Google Inc., Anthony's Robots, LLC and myself dated May 19, 2009 (the "Side Agreement"). Other than the inventions, discoveries, original works of authorship, developments, improvements and trade secrets set forth in Exhibit A, if in the course of my employment with the Company, I incorporate any Prior Invention into or use any Prior Invention in connection with any product, process, service, technology or other work by or on behalf of the Company, I hereby grant to the Company a nonexclusive, royalty free, fully paid, irrevocable, perpetual, worldwide license, with the right to grant and authorize sublicenses, to make, have made, modify, use, import, offer for sale and sell such Prior Invention as part of or in connection with such product, process, service, technology or other work and to practice any method related thereto.

*(b)    Assignment of Inventions.*  I agree that other than those such inventions, discoveries, original works of authorship, developments, improvements, and trade secrets set forth in Exhibit A, and except as provided in Section 2 of the Side Agreement, I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registerable under patent, copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time that I am in the employ of the Company (collectively referred to as "Inventions"), except as provided in Section 3(e) below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope and of and during the period of my employment with the Company and which are protectable by copyright are "works made for hire", as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any Inventions developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions.

GONZALEZ EX. 1, Page 47 of 67

*(c)     Maintenance of Records*.  I agree to keep and maintain adequate and current accurate and authentic written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company.  The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Company.  The records are and will be available to and remain the sole property of the Company at all times.

*(d)     Patent and Copyright Registrations*.  I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths or affirmations, assignments and all other instruments which the Company shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any rights relating thereto, and testifying in a suit or other proceeding relating to such Inventions.  I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement.  If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature with respect to any Inventions, including, without limitation, to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering such Inventions, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any papers, oaths and to do all other lawfully permitted acts with respect to such Inventions with the same legal force and effect as if executed by me.

*(e)     Exception to Assignments*.  I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as Exhibit B).  I will advise the Company promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and not otherwise disclosed on Exhibit A.

## 4.    **Conflicting Employment**

*(a)     Current Obligations*.  I agree that other than as set forth in Sections 2 and 3 of the Side Agreement,, I will not engage in any other employment, occupation, or consulting directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities, including, but not limited to, employment outside of the Company, membership on Boards of Directors or Advisory Boards other than the Company's, personal investments or establishing, maintaining or servicing business relationships with family or friends that conflict with my obligations to the Company.

*(b)     Prior Relationships*.  Other than as described in the Side Agreement, I represent that I have had no other agreements, relationships or commitments to any other person or entity that conflict with my obligations to the Company under this Agreement or my ability to perform the services for which I am being hired by the Company and, other than as allowed in the Side Agreement, will have no other agreements, relationships or commitments to any other person or entity that conflict with my obligations to the Company under this Agreement.   I further agree that if I have signed a confidentiality agreement or similar type of agreement with any former employer or other entity, I will comply with the terms of any such agreement to the extent that its terms are lawful under applicable law.  I represent and warrant that after undertaking a careful search (including searches of my computers, cell phones, electronic devices and documents), I have returned all property and confidential information belonging to all prior employers, and that failure to do so may result in my termination.  Moreover, in the event that the Company or any of its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor or successor corporations, or assigns is sued based on any obligation or agreement to which I am a party or am bound (other that my agreements with the Company), I agree to fully indemnify the Company, its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor and successor corporations, and assigns for all verdicts, judgments, settlements, and other losses incurred by the Company (the indemnitee), as well as any reasonable attorneys' fees and costs if the plaintiff

GONZALEZ EX. 1, Page 48 of 67

is the prevailing party in such an action, in the event that the Company is the subject of any legal action based on factual allegations that, if true, would conflict with my obligations under this Agreement.

**5.      Returning Company Documents.** Upon separation from employment with the Company or on demand by the Company during my employment, I will immediately deliver to the Company, and will not keep in my possession, recreate or deliver to anyone else, any and all Company property, including, but not limited to, Confidential Information, User Data, Associated Third Party Confidential Information, as well as all devices and equipment belonging to the Company (including computers, handheld electronic devices, telephone equipment, and other electronic devices), Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, photographs, charts, all documents and property, and reproductions of any of the aforementioned items that were developed by me pursuant to my employment with the Company, obtained by me in connection with my employment with the Company, or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to Section 3(c).  I also consent to an exit interview to confirm my compliance with this Section 5.

**6.      Termination Certification.**  Upon separation from employment with the Company, I agree to immediately sign and deliver to the Company the "Termination Certification" attached hereto as Exhibit C.  I also agree to keep the Company advised of my home and business address for a period of one (1) year after termination of my employment with the Company, so that the Company can contact me regarding my continuing obligations provided by this Agreement.

**7.      Notification of New Employer.**  In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my obligations under this Agreement.

**8.      Solicitation of Employees.**  I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

**9.      Export Statement of Assurance.**  I recognize that, in the course of my employment, the Company may release to me items (including, but not limited to, software, technology, or systems, equipment and components) subject to the Export Administration Regulations ("EAR") or the International Traffic in Arms Regulations ("ITAR"). I herby certify that I will not export, re-export or release these items in violation of the EAR or ITAR.  In order to comply with this certification, I will not disclose/export/re-export these items to any person other than the persons in my working group as required in the performance of the job responsibilities assigned to me by the Company.  I understand that if I have any question regarding whether a given disclosure/export/re-export is or would be contrary to this certification, I should immediately contact the Legal Services Department before taking any actions.

**10.     Code of Conduct Acknowledgement.**  I acknowledge that I have read the Company's Code of Conduct, which is available on the Company's public website and can be found by clicking "About Google" and looking on the "Investor Relations" page of the site.  I agree to adhere to the terms of the Code of Conduct and to report any violations of the Code.

**11,     Acknowledgment of Employee Handbook**.  I acknowledge that I have read the Company's Employee Handbook which is available on the Company's internal website.  I agree to abide by the policies and guidelines set forth in the Employee Handbook, as they may be revised from time to time.

**12.     Representations.**  I agree to execute any proper oath or affirmation or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all terms of the Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company.  I hereby represent and warrant that I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

*Eff. Date 4.2k.08levandowski*
*CA version*

Page 4 of 11

GONZALEZ EX. 1, Page 49 of 67

**13.** **Audit.** I acknowledge that I have no reasonable expectation of privacy in any computer, technology system, email, handheld device, telephone, or documents that are used to conduct the business of the Company. As such, the Company has the right to audit and search all such items and systems, without further notice to me, to ensure that the Company is licensed to use the software on the Company's devices in compliance with the Company's software licensing policies, to ensure compliance with the Company's policies, and for any other business-related purposes in the Company's sole discretion. I understand that I am not permitted to add any unlicensed, unauthorized or non-compliant applications to the Company's technology systems and that I shall refrain from copying unlicensed software onto the Company's technology systems or using non-licensed software or web sites. I understand that it is my responsibility to comply with the Company's policies governing use of the Company's documents and the internet, email, telephone and technology systems to which I will have access in connection with my employment.

**14.** **Permission for Use of Images.** I understand that during my employment with Google, agents of the company may take film, digital or other images of me, for subsequent use in non-commercial materials or collateral, including, but not limited to, the Company website (external and internal), annual reports, press day materials, internal presentations, analyst presentations, company, lobby or reception area stagings or productions, etc., without my prior consent, approval or review. My name may or may not be included along with my image. I hereby grant advance permission for such use of my image(s) by the Company, both during and after my employment, and I understand that I will not receive any royalties or other compensation for this use and I further agree to release and hold harmless any agent, employee, officer, director or other individual affiliated or working on behalf of the Company with respect to such use of my image(s).

**15.** **Arbitration and Equitable Relief**

*(a)* *Arbitration.* EXCEPT FOR CLAIMS ARISING UNDER THE SIDE AGREEMENT, WHICH WILL BE GOVERNED BY SECTION 8.3 OF THAT AGREEMENT, IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE), WHETHER BROUGHT ON AN INDIVIDUAL, GROUP, OR CLASS BASIS, ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1280 THROUGH 1294.2, INCLUDING SECTION 1283.05 (THE "RULES") AND PURSUANT TO CALIFORNIA LAW. DISPUTES WHICH I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE SARBANES-OXLEY ACT, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, THE FAMILY AND MEDICAL LEAVE ACT, THE CALIFORNIA FAMILY RIGHTS ACT, THE CALIFORNIA LABOR CODE, CLAIMS OF HARASSMENT, DISCRIMINATION AND WRONGFUL TERMINATION AND ANY STATUTORY CLAIMS. I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

*(b)* *Procedure.* I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES"). I AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, MOTIONS TO DISMISS OR TO STRIKE, DEMURRERS, AND MOTIONS FOR CLASS CERTIFICATION, PRIOR TO ANY ARBITRATION HEARING. I ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE

POWER TO AWARD ANY REMEDIES AVAILABLE UNDER APPLICABLE LAW, AND THAT THE ARBITRATOR SHALL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, EXCEPT AS PROHIBITED BY LAW. I UNDERSTAND THAT THE COMPANY WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS EXCEPT THAT I SHALL PAY ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION THAT I INITIATE, BUT ONLY SO MUCH OF THE FILING FEES AS I WOULD HAVE INSTEAD PAID HAD I FILED A COMPLAINT IN A COURT OF LAW. I AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH CALIFORNIA LAW, INCLUDING THE CALIFORNIA CODE OF CIVIL PROCEDURE, AND THAT THE ARBITRATOR SHALL APPLY SUBSTANTIVE AND PROCEDURAL CALIFORNIA LAW TO ANY DISPUTE OR CLAIM, WITHOUT REFERENCE TO RULES OF CONFLICT OF LAW. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH CALIFORNIA LAW, CALIFORNIA LAW SHALL TAKE PRECEDENCE. I AGREE THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING. I AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN SANTA CLARA COUNTY, CALIFORNIA.

*(c)    Remedy.* EXCEPT AS PROVIDED BY THE RULES AND THIS AGREEMENT, AND EXCEPT FOR CLAIMS ARISING UNDER THE SIDE AGREEMENT, WHICH WILL BE GOVERNED BY SECTION 8.3 OF THAT AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE BETWEEN ME AND THE COMPANY. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION. NOTWITHSTANDING, THE ARBITRATOR WILL NOT HAVE THE AUTHORITY TO DISREGARD OR REFUSE TO ENFORCE ANY LAWFUL COMPANY POLICY, AND THE ARBITRATOR SHALL NOT ORDER OR REQUIRE THE COMPANY TO ADOPT A POLICY NOT OTHERWISE REQUIRED BY LAW. NOTHING IN THIS AGREEMENT OR IN THIS PROVISION IS INTENDED TO WAIVE THE PROVISIONAL RELIEF REMEDIES AVAILABLE UNDER THE RULES.

*(d)    Administrative Relief.* I UNDERSTAND THAT THIS AGREEMENT DOES NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE OR FEDERAL ADMINISTRATIVE BODY SUCH AS THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION OR THE WORKERS' COMPENSATION BOARD. THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM.

*(e)    Voluntary Nature of Agreement.* I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL.* FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

### 16.    General Provisions

*(a)    Governing law; Consent to Personal Jurisdiction.* This Agreement will be governed by the laws of the State of California without giving effect to any choice of law rules or principles that may result in the application of the laws of any jurisdiction other than California. To the extent that any lawsuit is permitted under this Agreement, I hereby expressly consent to the personal jurisdiction of the state and federal courts located in California for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

*(b)    Entire Agreement.* This Agreement, together with the Exhibits herein, my offer letter from the Company, and the Side Agreement set forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersede all prior discussions or representations between us including, but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral. In the event of

*Eff. Date 4.28.08/evandowski*
*CA version*

Page 6 of 11

GONZALEZ EX. 1, Page 51 of 67

a conflict between the terms of this Agreement and the terms of the Side Agreement, the Side Agreement shall prevail. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, other than amendments to paragraphs 3 and 4 relating to personal open source projects in a format prepared by the Company, will be effective unless in writing signed by the Chief Executive Officer of the Company and me. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

(c)    _Severability._  If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

(d)    _Successors and Assigns._  This Agreement will be binding upon my heirs, executors, assigns, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

(e)    _Waiver._  Waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

(f)    _Survivorship._  The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.

Date: _____

_____
Signature

Anthony LevAnDowski
Name of Employee (typed or printed)

_Eff. Date 4.28.08levandowski_
_CA version_

Page 7 of 11

GONZALEZ EX. 1, Page 52 of 67

## Exhibit A

### GOOGLE INC.

### LIST OF PRIOR INVENTIONS
### AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
|---|---|---|
| 1. A method and apparatus for automated vehicle interaction with pedestrians for collaborative tasks | | #61168449 |
| 2. A method and apparatus for acquiring a road reference and real-time positioning information of a vehicle based on the retro-reflective paint of lane markings | | #61168310 |
| 3. A method and apparatus for sending off and retrieving an autonomous vehicle. | | #61168322 |
| 4. A method and apparatus for certifying the safety and drivability of a lane. | | #61168305 |
| 5. A method and apparatus for a vehicle sensing for increased autonomous lane change safety. | | #61168460 |
| 6. A method and apparatus for automated vehicle available parking space detection and guidance | | #61168471 |

*Eff. Date 4.28.08levandowski*
*CA version*

GONZALEZ EX. 1, Page 53 of 67

___ No inventions or improvements
___ Additional Sheets Attached

Signature of Employee: _____

Print Name of Employee: Anthony GVANDONSKI

Date: _____

**GONZALEZ EX. 1, Page 54 of 67**

## Exhibit B

### Google Inc.

### California Labor Code Section 2870
### Invention on own Time-Exemption from Agreements

---

"(a)    Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

    (1)    Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer.

    (2)    Result from any work performed by the employee for the employer.

(b)    To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

*Eff. Date 4.28.08levandowski*
*CA version*

GONZALEZ EX. 1, Page 55 of 67

## EXHIBIT C

## TERMINATION CERTIFICATION

*This letter confirms that your employment with Google, Inc. (the "Company") has terminated. We extend our sincere thanks for all of your contributions and our best wishes to you in your future endeavors.*

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to Google Inc., its subsidiaries, affiliates, successors or assigns (together, the "Company").

I further certify that I have complied with all the terms of the Company's At Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

I have informed the Company in the event I am subject to any litigation holds or similar request for record retention.

I further agree that, in compliance with the At Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement, I will adhere to my obligations to the Company contained in Section 2 (Confidential Information), Section 3 (Inventions), and Section 8 (Solicitation of Employees).

After leaving the Company's employment, I will be employed by _____ in the position of:

_____. I am / am not (circle one) subject to a litigation hold/request for record retention.

I have also returned the following Google-issued equipment:

- Laptop
- Cell phone
- Purchasing card

- Badge
- Blackberry
- VPN card

- WAN card
- Other: _____

_____

*Signature of Employee*

_____

*Print Name*

_____

*Date*

_____

*Address for Notifications*

*Eff. Date 4.28.08levandowski*
*CA version*

GONZALEZ EX. 1, Page 56 of 67

# ATTACHMENT D

## GOOGLE INC.

## AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT

As a condition of my employment with Google Inc., its subsidiaries, affiliates, successors or assigns (together "Google"), and in consideration of my receipt of confidential information, my employment with Google, and my receipt of any compensation Google is paying to me, I agree to the following terms of this At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement (this "Agreement"):

### 1.  At-Will Employment.

MY EMPLOYMENT WITH GOOGLE IS FOR AN UNDEFINED DURATION AND IS AT-WILL EMPLOYMENT, WHICH MEANS IT MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT CAUSE OR NOTICE.  NO REPRESENTATION TO THE CONTRARY IS AUTHORIZED OR VALID UNLESS MADE IN WRITING AND SIGNED BY THE CHIEF EXECUTIVE OFFICER OF GOOGLE INC.

### 2.  Confidential Information.

(a)         Definition of Google Confidential Information.  "Google Confidential Information" means, without limitation, any information in any form that relates to Google or Google's business and that is not generally known.  Examples include Google's non-public information that relates to its actual or anticipated business, products or services, research, development, technical data, customers, customer lists, markets, software, hardware, finances, employee data and evaluation, trade secrets or know-how, intellectual property rights, including but not limited to, Assigned Inventions (as defined below), unpublished or pending patent applications and all related patent rights, and user data (i.e., any information directly or indirectly collected by Google from users of its services).  Google Confidential Information also includes any information of third parties (e.g., Google's advertisers, collaborators, subscribers, customers, suppliers, partners, vendors, partners, licensees or licensors) that was provided to Google on a confidential basis.  Google Confidential Information does not include any items that have become publicly known through no wrongful act of mine or others under a relevant confidentiality obligation.  Nothing in this Agreement is intended to limit employees' rights to discuss the terms, wages, and working conditions of their employment, as protected by applicable law.

(b)         Nonuse and Nondisclosure.  During and after my employment with Google, I will hold in the strictest confidence and take all reasonable precautions to prevent any unauthorized use or disclosure of Google Confidential Information (whether disclosed to me in anticipation of or during my employment by Google), and I will not (i) use Google Confidential Information for any purpose other than for the benefit of Google in the scope of my employment, or (ii) disclose Google Confidential Information to any third party without the prior written authorization.  I agree that all Google Confidential Information that I use or generate in connection with my employment belongs to Google (or third parties identified by Google).  I understand that my unauthorized use or disclosure of Google Confidential Information during my employment or after my employment may lead to disciplinary action, up to and including termination and/or legal action.

(c)         Former Employer Information / Definition of Google Property.  I will not use or disclose in connection with my employment with Google or bring onto Google's electronic or physical property, facilities, or systems (collectively, "Google

GONZALEZ EX. 1, Page 58 of 67

Property") any proprietary information, trade secrets, or any non-public material belonging to any previous employer or other person or entity unless consented to in writing by such employer, person, or entity.

### 3.    Inventions.

(a)        Definition of Inventions. "Inventions" includes inventions, designs, developments, ideas, concepts, techniques, devices, discoveries, formulae, processes, improvements, writings, records, original works of authorship, trademarks, trade secrets, all related know-how, and any other intellectual property, whether or not patentable or registrable under patent, copyright, or similar laws.

(b)        Assignment of Inventions. Except as provided in Section 3(f) below, Google Inc. will own all Inventions that I invented, developed, reduced to practice, or otherwise contributed to, solely or jointly with others, during my employment with Google (including during my off-duty hours) or with the use of Google's equipment, supplies, facilities, or Google Confidential Information, and any intellectual property rights in the Inventions (the "Assigned Inventions"). I will promptly disclose in writing to Google any Assigned Inventions and assign to Google my rights in any Assigned Inventions. I hereby irrevocably assign to Google Inc. my rights in all Assigned Inventions, and convey to Google Inc. ownership of any Assigned Inventions not yet in existence. All works of authorship made by me (solely or jointly with others) within the scope of and during my employment with Google are "works made for hire" as defined in the United States Copyright Act. The decision whether or not to commercialize or market any Assigned Inventions is within Google's sole discretion and for Google's sole benefit, and that I will not claim any consideration as a result of Google's commercialization of any such Inventions.

(c)        Prior Inventions. I list in Exhibit A all Inventions that I solely or jointly made before my employment with Google (collectively, "Prior Inventions") and that I am not assigning to Google. I will not incorporate any Prior Inventions into any Assigned Inventions, product, or service of Google or otherwise use any Prior Inventions in the course of my employment with Google without its prior written permission. If I incorporate (or have incorporated) a Prior Invention into any Assigned Inventions, product, or service of Google, I hereby grant to Google a royalty-free, irrevocable, perpetual, transferable worldwide license (with the right to sublicense) to make, have made, use, import, sell, reproduce, distribute, modify, adapt, prepare derivative works of, display, perform, and otherwise exploit such Prior Invention.

(d)        Maintenance of Records. I agree to keep and maintain for Google detailed and accurate written records in any format that it may specify of all Assigned Inventions that I make (solely or jointly with others) for Google. The records are and remain the sole property of Google.

(e)        Securing Intellectual Property Rights. I agree to assist Google (or its designee) at Google's expense to assign, secure, and enforce all intellectual property rights in any Assigned Inventions in any and all countries, disclose to Google of all pertinent information and data, and sign any document that Google reasonably deems necessary. If Google is unable for any reason to secure my signature to any document required to assign, secure, and enforce any intellectual property rights in any Assigned Inventions, then I hereby irrevocably designate and appoint Google and its officers and agents as my agents and attorneys in fact to execute any documents on my behalf for this purpose. This power of attorney will be considered coupled with an interest and will be irrevocable. My obligations under this Section 3(e) will continue after the termination of my employment with

Google.

(f)     Exception to Assignments. The provisions of this Agreement requiring disclosure and assignment of Inventions to Google do not apply to any invention that qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as Exhibit B). While employed, I will advise Google promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and that I have not disclosed on Exhibit A for a confidential ownership determination.

## 4.     Conflicting Employment.

(a)     Other Employment or Activities. During my employment with Google, I will not engage in any other employment or other activities or services directly related to the business in which Google is now involved, becomes involved, or has plans to become involved or that conflict with my obligations to Google without seeking and receiving permission in advance from Google's Ethics and Compliance team.

(b)     Prior Agreements with Other Parties. My performance of all the terms of this Agreement and my duties as an employee of Google will not breach any invention assignment, proprietary information, confidentiality, or similar agreement with any former employer or other party.

## 5.     Return of Google Property and Information.

(a)     Return of Google Property. Immediately upon termination of my employment with Google, I agree to deliver to Google and will not keep, recreate, or deliver to any other person or entity any documents and materials pertaining to my work with Google or containing any Google Confidential Information. I agree to deliver promptly all Google Property, as applicable, in my possession or control. I agree, upon Google's request, to sign a document that I have fulfilled my responsibilities under this Agreement.

(b)     Return of Google Information. Upon termination of my employment, I will make a prompt and reasonable search for any Google Confidential Information in my possession or control. If I locate such information I will notify Google and provide a computer-useable copy of it. I will cooperate reasonably with Google to verify that the necessary copying is completed, and, when Google confirms compliance, I will delete fully all Google Confidential Information.

(c)     Compliance. I have no reasonable expectation of privacy in any Google Property or in any other documents, equipment, or systems used to conduct the business of Google. Google may audit and search any Google Property or such documents, equipment, or systems without further notice to me for any business-related purpose at Google's reasonable discretion. I will provide Google with access to any documents, equipment, or systems used to conduct the business of Google immediately upon request. I consent to Google taking reasonable steps to prevent unauthorized access to Google Property and Google information. I understand that I am not permitted to add any unauthorized applications or any applications that I do not have a license or authorization for use to any Google Property, and that I will refrain from copying any software that I do not have a license or authorization to use or using such software or websites that I do not have a license or authorization to use on Google Property. It is my responsibility to comply with Google's policies governing use of Google Property.

## 6.     Notification.

If my employment with Google ends, I consent to Google notifying my new employer or any third party about my obligations under this Agreement.

## 7.     Solicitation of Employees.

GONZALEZ EX. 1, Page 60 of 67

To the fullest extent permitted under applicable law, during my employment with Google and for twelve months immediately following its termination for any reason, whether voluntary or involuntary, with or without cause, I will not directly or indirectly solicit any of Google's employees to leave their employment.

## 8. Export Statement of Assurance.
In the course of my employment, Google may release to me items (including software, technology, systems, equipment, and components) subject to the Export Administration Regulations ("EAR") or the International Traffic in Arms Regulations ("ITAR"). I certify that I will not export, re-export, or release these items in violation of the EAR or ITAR and I will not disclose/export/re-export these items to any person other than as required in the scope of my employment with Google. If I have any question regarding this Section 8, I immediately will contact the Legal Services Department before taking any actions.

## 9. Code of Conduct.
I have read Google's Code of Conduct, which is available on the "Investor Relations" page of Google's public website. I agree to comply with the terms of the Code of Conduct and report any violations of the Code of Conduct.

## 10. Employee Handbook.
Google's Employee Handbook consists of "Core" policies listed in a table of contents on Google's "Employee Handbook" internal website, and that those policies incorporate by reference supplemental policies. Within ten days of signing this Agreement, I will read the "Core" policies within Google's Employee Handbook, and comply with its policies, including supplemental policies, as they may be revised from time to time.

## 11. Use of Images.
During my employment, Google or its agents may obtain images of me for subsequent use in materials. My name may or may not be included along with such images. I grant Google permission for such use of my images, both during and after my employment, and I understand that I will not receive any royalties or other compensation for this use.

## 12. Arbitration and Equitable Relief.
(a)     Arbitration. IN CONSIDERATION OF MY EMPLOYMENT WITH GOOGLE, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY GOOGLE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING GOOGLE AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF GOOGLE IN THEIR CAPACITY AS SUCH OR OTHERWISE), ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH GOOGLE OR THE TERMINATION OF MY EMPLOYMENT WITH GOOGLE, INCLUDING ANY BREACH OF THIS AGREEMENT, WILL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 1280 THROUGH 1294.2, INCLUDING SECTION 1283.05 (THE "RULES"), WHICH ARE AVAILABLE ON THE "CALIFORNIA LAW" PAGE OF "CALIFORNIA LEGISLATIVE INFORMATION" PUBLIC WEBSITE. I AGREE THAT I MAY ONLY COMMENCE AN ACTION IN ARBITRATION, OR ASSERT COUNTERCLAIMS IN AN ARBITRATION, ON AN INDIVIDUAL BASIS AND, THUS, I HEREBY WAIVE MY RIGHT TO COMMENCE OR PARTICIPATE IN ANY CLASS OR COLLECTIVE ACTION(S) AGAINST GOOGLE, TO THE FULLEST EXTENT PERMITTED BY LAW. DISPUTES THAT I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY

JURY, INCLUDE ANY STATUTORY CLAIMS UNDER LOCAL, STATE, OR FEDERAL LAW, INCLUDING CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE SARBANES-OXLEY ACT, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, THE FAMILY AND MEDICAL LEAVE ACT, THE FAIR LABOR STANDARDS ACT, THE CALIFORNIA FAMILY RIGHTS ACT, THE CALIFORNIA LABOR CODE, CLAIMS OF HARASSMENT, DISCRIMINATION, WRONGFUL TERMINATION AND ANY OTHER CONTRACTUAL, TORT OR STATUTORY CLAIMS UNDER FEDERAL, CALIFORNIA AND LOCAL LAWS, TO THE EXTENT ALLOWED BY LAW. I UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT GOOGLE MAY HAVE WITH ME.

(b)         Procedure. I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES"), WHICH ARE AVAILABLE ON THE "RULES/CLAUSES" PAGE OF JAMS' PUBLIC WEBSITE, AND NO OTHER RULES FROM JAMS. I AGREE THAT THE ARBITRATOR WILL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, MOTIONS TO DISMISS OR TO STRIKE, DEMURRERS, AND MOTIONS FOR CLASS CERTIFICATION, PRIOR TO ANY ARBITRATION HEARING. I ALSO AGREE THAT THE ARBITRATOR WILL HAVE THE POWER TO AWARD ANY REMEDIES AVAILABLE UNDER APPLICABLE LAW, INCLUDING INJUNCTIVE RELIEF, AND THAT THE ARBITRATOR WILL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, EXCEPT AS PROHIBITED BY LAW. I AGREE THAT THE DECREE OR AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED AS A FINAL AND BINDING JUDGMENT IN ANY COURT HAVING JURISDICTION THEREOF. I UNDERSTAND THAT GOOGLE WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS EXCEPT THAT I WILL PAY ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION THAT I INITIATE, BUT ONLY SO MUCH OF THE FILING FEES AS I WOULD HAVE INSTEAD PAID HAD I FILED A COMPLAINT IN A COURT OF LAW. I AGREE THAT THE ARBITRATOR WILL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH CALIFORNIA LAW, INCLUDING THE CALIFORNIA CODE OF CIVIL PROCEDURE, AND THAT THE ARBITRATOR WILL APPLY SUBSTANTIVE AND PROCEDURAL CALIFORNIA LAW TO ANY DISPUTE OR CLAIM, WITHOUT REFERENCE TO RULES OF CONFLICT OF LAW. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH CALIFORNIA LAW, CALIFORNIA LAW WILL TAKE PRECEDENCE. I AGREE THAT THE DECISION OF THE ARBITRATOR WILL BE IN WRITING. I AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT WILL BE HELD IN SANTA CLARA COUNTY, CALIFORNIA.

(c)         Remedy. EXCEPT AS PROVIDED BY THE RULES AND THIS AGREEMENT, ARBITRATION WILL BE THE SOLE, EXCLUSIVE, AND FINAL REMEDY FOR ANY DISPUTE BETWEEN ME AND GOOGLE. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THIS AGREEMENT, NEITHER I NOR GOOGLE WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION. NOTWITHSTANDING, THE ARBITRATOR WILL NOT HAVE THE AUTHORITY TO DISREGARD OR REFUSE TO ENFORCE ANY LAWFUL GOOGLE POLICY,

AND THE ARBITRATOR WILL NOT ORDER OR REQUIRE GOOGLE TO ADOPT A POLICY NOT OTHERWISE REQUIRED BY LAW. NOTHING IN THIS AGREEMENT OR IN THIS PROVISION IS INTENDED TO WAIVE THE PROVISIONAL RELIEF REMEDIES AVAILABLE UNDER THE RULES.

(d)    Administrative Relief. I UNDERSTAND THAT THIS AGREEMENT DOES NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE OR FEDERAL ADMINISTRATIVE BODY SUCH AS THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, OR THE WORKERS' COMPENSATION BOARD. THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM.

(e)    Voluntary Nature of Agreement. I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY GOOGLE OR ANYONE ELSE.    I ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND ITS TERMS, CONSEQUENCES, AND BINDING EFFECT . I RECOGNIZE THAT I AM WAIVING MY RIGHT TO A JURY TRIAL. I AGREE THAT I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

(f)    Arbitration Clause, Governing Law. THIS ARBITRATION CLAUSE IS ENTERED PURSUANT TO AND GOVERNED BY THE FEDERAL ARBITRATION ACT (9 U.S.C. SECTION 1, ET SEQ.), BUT IN ALL OTHER RESPECTS THIS AGREEMENT IS GOVERNED BY THE LAWS OF CALIFORNIA.

### 13.    General Provisions.
(a)    Governing Law; Consent to Personal Jurisdiction. Except as provided in Section 12(f), this Agreement will be governed by the laws of the State of California except for its choice of law rules. If any lawsuit is permitted under or related to this Agreement or my employment, I consent to the exclusive personal jurisdiction and venue of the state and federal courts located in California.

(b)    Entire Agreement. This Agreement, together with its Exhibits, and any executed written offer letter between Google and me, are the entire agreement between Google and me relating to my employment and any related matters and supersede all prior written and oral agreements, discussions, or representations. If there are conflicts between this Agreement and the offer letter, this Agreement will control. No change to this Agreement, other than amendments to Sections 3 and 4 relating to personal open-source projects in a format prepared by Google, will be effective unless in writing signed by Google Inc.'s Chief Executive Officer. Any change or changes in my duties, salary, or compensation will not affect the validity or scope of this Agreement.

(c)    Severability. If one or more of the provisions in this Agreement are deemed void, the remaining provisions will continue in full force and effect.

(d)    Successors and Assigns. This Agreement will be binding upon my heirs, executors, assigns, administrators, and other legal representatives and will be for the benefit of Google, its successors, and its assigns. Google may assign this Agreement to anyone at any time without my consent. There are no intended third-party beneficiaries to this Agreement.

(e)    Waiver. Waiver by Google of a breach of any provision of this Agreement will not waive its right to take action based on any other breach.

GONZALEZ EX. 1, Page 63 of 67

AND THE ARBITRATOR WILL NOT ORDER OR REQUIRE GOOGLE TO ADOPT A POLICY NOT OTHERWISE REQUIRED BY LAW. NOTHING IN THIS AGREEMENT OR IN THIS PROVISION IS INTENDED TO WAIVE THE PROVISIONAL RELIEF REMEDIES AVAILABLE UNDER THE RULES.

(d)      Administrative Relief. I UNDERSTAND THAT THIS AGREEMENT DOES NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE OR FEDERAL ADMINISTRATIVE BODY SUCH AS THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, OR THE WORKERS' COMPENSATION BOARD. THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM.

(e)      Voluntary Nature of Agreement. I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY GOOGLE OR ANYONE ELSE. I ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND ITS TERMS, CONSEQUENCES, AND BINDING EFFECT . I RECOGNIZE THAT I AM WAIVING MY RIGHT TO A JURY TRIAL. I AGREE THAT I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

(f)      Arbitration Clause, Governing Law. THIS ARBITRATION CLAUSE IS ENTERED PURSUANT TO AND GOVERNED BY THE FEDERAL ARBITRATION ACT (9 U.S.C. SECTION 1, ET SEQ.), BUT IN ALL OTHER RESPECTS THIS AGREEMENT IS GOVERNED BY THE LAWS OF CALIFORNIA.

## 13.      General Provisions.

(a)      Governing Law; Consent to Personal Jurisdiction. Except as provided in Section 12(f), this Agreement will be governed by the laws of the State of California except for its choice of law rules. If any lawsuit is permitted under or related to this Agreement or my employment, I consent to the exclusive personal jurisdiction and venue of the state and federal courts located in California.

(b)      Entire Agreement. This Agreement, together with its Exhibits, and any executed written offer letter between Google and me, are the entire agreement between Google and me relating to my employment and any related matters and supersede all prior written and oral agreements, discussions, or representations. If there are conflicts between this Agreement and the offer letter, this Agreement will control. No change to this Agreement, other than amendments to Sections 3 and 4 relating to personal open-source projects in a format prepared by Google, will be effective unless in writing signed by Google Inc.'s Chief Executive Officer. Any change or changes in my duties, salary, or compensation will not affect the validity or scope of this Agreement.

(c)      Severability.  If one or more of the provisions in this Agreement are deemed void, the remaining provisions will continue in full force and effect.

(d)      Successors and Assigns. This Agreement will be binding upon my heirs, executors, assigns, administrators, and other legal representatives and will be for the benefit of Google, its successors, and its assigns. Google may assign this Agreement to anyone at any time without my consent. There are no intended third-party beneficiaries to this Agreement.

(e)      Waiver.  Waiver by Google of a breach of any provision of this Agreement will not waive its right to take action based on any other breach.

GONZALEZ EX. 1, Page 64 of 67

Employment Agreement
PID 40767, transaction 40960, 11/06/2014 1:20:32AM UTC

I Agree

notice above. We will store the date and time that you
acknowledged receipt of this notice. Upon clicking
"Submit & continue", a copy of this notice will be emailed
to you.

---

## Exhibit B
## GOOGLE INC.

---

California Labor Code Section 2870
Invention on own Time-Exemption From Agreements

"(a)     Any provision in an employment agreement which provides that an
employee shall assign, or offer to assign, any of his or her rights in an invention to
his or her employer shall not apply to an invention that the employee developed
entirely on his or her own time without using the employer's equipment, supplies,
facilities, or trade secret information except for those inventions that either:

> Relate at the time of conception or reduction to practice of the
> invention to the employer's business, or actual or demonstrably
> anticipated research or development of the employer.
> Result from any work performed by the employee for the employer.

(b)     To the extent a provision in an employment agreement purports to require
an employee to assign an invention otherwise excluded from being required to be
assigned under subdivision (a), the provision is against the public policy of this
state and is unenforceable."

Employment Agreement (CA) v.2
PID 40767, transaction 40960, 11/06/2014 1:20:32AM UTC

PROOF OF SERVICE

1

2   I am employed in the City and County of San Francisco, State of California in the office of a

3   member of the bar of this court at whose direction the following service was made. I am over the
age of eighteen years and not a party to the within action. My business address is Keker & Van

4   Nest LLP, 633 Battery Street, San Francisco, CA 94111-1809.

5   On October 28, 2016, I served the following document(s):

6       **DEMAND FOR ARBITRATION (GOOGLE V. LEVANDOWSKI AND**

7       ██████

8   ☑  by **FEDEX**, by placing a true and correct copy in a sealed envelope addressed as shown
below. I am readily familiar with the practice of Keker & Van Nest LLP for correspondence

9       for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a
FedEx Corporation employee for overnight delivery.

10

11   ☑  by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy
scanned into an electronic file in Adobe "pdf" format. The transmission was reported as
complete and without error.

12

13   ████████████████

14

15

16

17   Executed on October 28, 2016, at San Francisco, California.

18   I declare under penalty of perjury under the laws of the State of California that the above is true
and correct.

19

20

21               Thomas E. Gorman

22

23

24

25

26

27

28

1

PROOF OF SERVICE

1122158.01

GONZALEZ EX. 1, Page 66 of 67

| ATTORNEY OR PARTY WITHOUT ATTORNEY (name and Address):<br>Robert Van Nest (84065)<br>Rachael E. Meny (178514)<br>633 Battery Street<br>San Francisco, CA 94111<br>Telephone No. (415) 391-5400<br>ATTORNEY(S) FOR  Claimant GOOGLE INC.<br>Ref. 3361212 | | | | FOR COURT USE ONLY |
|---|---|---|---|---|
| BEFORE JAMS (JUDICIAL ARBITRATION AND MEDIATION SERVICES) | | | | |
| GOOGLE INC.<br>v. ANTHONY LEVANDOWSKI AND ▮▮▮ | | | | |
| **PROOF OF SERVICE** | DATE: | TIME | DEPT | CASE NUMBER: |

1. At the time of service I was at least 18 years of age and not a party to this action, and I served copies of the:
DEMAND FOR ARBITRATION (GOOGLE v  LEVANDOWSKI AND ▮▮▮

2. a. Party served: ANTHONY LEVANDOWSKI

   b. Witness served: ANTHONY LEVANDOWSKI

   c. Address: 737 HARRISON STREET
              SAN FRANCISCO, CA 94107

3. I served the party named in item 2a. by personally delivering the copies to the person served as follows:

(1) on: 10/28/2016          (2) at: 1:15PM

4. I received this document for service on (date): 10/28/2016

5. Person Who Served Papers:
a. ANDRES ARIAS
b. Service Provided for:
   NATIONWIDE LEGAL, LLC
   859 HARRISON STREET, SUITE A
   SAN FRANCISCO, CALIFORNIA 94107 (LA 12-234648)
c. (415) 351-0400

d. The Fee for service was $
e. I am: Registered California Process Server
        (1) Employee or independent contractor
        (2) Registration No  1352
        (3) County: SAN FRANCISCO

6. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: October 28, 2016

Rule 982(a)(23) Judicial Council of California

PROOF OF SERVICE