MILES EHRLICH (Bar No. 237954)
miles@ramsey-ehrlich.com
ISMAIL RAMSEY (Bar No. 189820)
izzy@ramsey-ehrlich.com
AMY CRAIG (Bar No. 269339)
amy@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600 (Tel)
(510) 291-3060 (Fax)

Attorneys for Non-Party Anthony Levandowski

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, | Case No.: 3:17-cv-00939-WHA |
| Plaintiff, | |
| v. | **NON-PARTY ANTHONY LEVANDOWSKI'S NOTICE OF MOTION AND MOTION FOR MODIFICATION OF COURT'S ORDER DATED MARCH 16, 2017 (DKT. #61)** |
| UBER TECHNOLOGIES, INC., *et al.*, | |
| Defendants. | **Hearing Date:** To be determined by court<br>**Time:** To be determined by court<br>**Courtroom:** 8, 19th Floor<br>**Judge:** The Honorable William H. Alsup |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a date and time selected by this Court, in the courtroom of the Honorable William H. Alsup at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, non-party Anthony Levandowski will and hereby does move for an order modifying the Court's March 16, 2017 Order (Dkt. #61) and prohibiting Defendant Uber Technologies, Inc. ("Uber") from disclosing any information provided by Mr. Levandowski in the course of the Joint Defense and Common Interest Agreement entered into by Mr. Levandowski and Uber, and specifically prohibiting the disclosure of information concerning the due diligence review conducted by a third party under that agreement, including but not limited to the identity of the third party who conducted any such due diligence review, whether Mr. Levandowski possessed any documents that were reviewed by the third party, and the identity of any of Mr. Levandowski's possessions that may have been reviewed.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the supporting declaration of John Gardner, and accompanying exhibit, the pleadings, files and records in this case, as well as other written or oral argument which may be presented at the hearing.

DATED:  April 4, 2017                          RAMSEY & EHRLICH LLP

                                                      By      /s/ Amy Craig
                                                              Miles Ehrlich
                                                              Ismail Ramsey
                                                              Amy Craig

                                                              *Counsel for Non-Party Anthony Levandowski*

NON-PARTY ANTHONY LEVANDOWSKI'S NOTICE OF MOTION AND MOTION FOR MODIFICATION OF
COURT'S ORDER DATED MARCH 16, 2017 (Dkt. #61)
Case No. C 17-00939 WHA

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II.  PROCEDURAL BACKGROUND............................................................................... 3

    A.  Court order to Uber to produce documents from Mr. Levandowski.............................. 3

    B.  This Court's requirements of a detailed privilege log...................................................... 4

III.  ARGUMENT .................................................................................................................. 5

  A.  Under The Fifth Amendment A Person May Not Be Compelled To Testify Against Himself........................................................................................................................................... 5

    1.  This Fifth Amendment protections are broadly construed and apply to any testimony that could provide a link in the chain of evidence. ................................................................. 6

    2.  *Fisher* and *Hubbell* make clear that the Fifth Amendment protects implicit testimony inherent in the act of producing documents in response to a court order or a subpoena .......... 7

  B.  The Attorney-Client Privilege And The Duty Of Confidentiality Preclude An Attorney From Revealing Incriminating Communications That His Client Has Revealed In Confidence. 8

  C.  A Common-Interest Privilege Extends The Attorney-Client Privilege And Duty Of Confidentiality To Counsel Representing Third Parties ............................................................. 9

  D.  Requiring A Detailed Privilege Log Here Would Violate Mr. Levandowski's Fifth Amendment Privilege ..................................................................................................................... 11

  E.  This Court Should Modify Its Order To Suspend The Requirements Of A Privilege Log For Any Documents Protected By The Fifth Amendment. ...................................................... 13

IV.  CONCLUSION............................................................................................................... 15

i

1

2

## **TABLE OF AUTHORITIES**

3

C<small>ASES</small>

*Baird v. Koerner*, 279 F.2d 623, 629-30 (9th Cir. 1960) .................................................... 1

*Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000)............................... 6

*Fisher v. United States*, 425 U.S. 391 (1976) ............................................................ passim

*Grunewald v. United States*, 353 U.S. 391 (1957).......................................................... 1

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987)...................... 11

*Hoffman v. United States*, 341 U.S. 479 (1951)............................................................. 6

*Holmes v. Collection Bureau of America Ltd.*, No. C 09-02540 WHA, 2010 U.S. Dist. LEXIS

   4253, 2010 WL 143484 (N.D. Cal. Jan. 8, 2010) ....................................................... 10

*In re Fustolo*, No. 13-12692-JNF, 2015 WL 9595421 (Bankr. D. Mass. Dec. 31, 2015)........... 12

*In re Grand Jury Subpoenas*, 902 F.2d 244 (4th Cir. 1990) .............................................. 10

*In re Master Key Litig.*, 507 F.2d 292 (9th Cir. 1974)..................................................... 1

*In re Syncor ERISA Litig.*, 229 F.R.D. 636 (C.D. Cal. 2005) ........................................ 3, 12

*J.C. Penney Life Ins. Co. v. Houghton*, Civ. A. No. 86-2637, 1986 WL 14732

(E.D.Pa. Dec. 24, 1986) .............................................................................................. 7

*Maffie v. United States*, 209 F.2d 225 (1st Cir. 1954) .................................................... 6

*Malloy v. Hogan*, 378 U.S. 1 (1964)........................................................................... 6

*Nidec Corp. v. Victor Co.*, 249 F.R.D. 575 (N.D. Cal. 2007)...................................... 10

*Ohio v. Reiner*, 532 U.S. 17 (2001) ........................................................................... 1

*OXY Res. Cal. LLC v. Superior Court*, 115 Cal. App. 4th 874 (2004)......................... 11

*Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455 (N.D. Cal. 1978) ...................... 8

*Quinn v. United States*, 349 U.S. 155 (1955)................................................................ 5

*United States SEC v. Chin*, Civil Action No. 12-cv-01336-PAB-BNB,

2012 U.S. Dist. LEXIS 182252  (D. Colo. Nov. 29, 2012) ...................................... 3, 12

*United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003) .................................... 9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

*United States v. Bright*, 596 F.3d 683 (9th Cir. 2010) .................................................. 13

*United States v. Drollinger*, 80 F.3d 389 (9th Cir. 1996) .......................................... 14

*United States v. Gonzalez*, 669 F.3d 974 (9th Cir. 2012) .................................... passim

*United States v. Henke*, 222 F.3d 633 (9th Cir. 2000) ................................................ 9

*United States v. Hubbell*, 530 U.S. 27 (2000) ......................................................... passim

*United States v. Judson*, 322 F.2d 460 (9th Cir. 1963) .............................................. 8

*United States v. Neff*, 615 F.2d 1235 (9th Cir. 1980) ................................................ 6

*United States v. White*, 322 U.S. 694 (1944) ......................................................... 8

### Sᴛᴀᴛᴜᴛᴇs

Cal. Bus. & Prof. Code § 6068(e)(1) ----------------------------------------------------------- 9

18 U.S.C. § 6002 ---------------------------------------------------------------------------------------13

### Oᴛʜᴇʀ Aᴜᴛʜᴏʀɪᴛɪᴇs

8 J. Wigmore, Evidence § 2292 (McNaughton rev. 1961) ------------------------------------ 8

Cᴀʟ. Pʀᴀᴄᴛɪᴄᴇ Gᴜɪᴅᴇ: Pʀᴏꜰᴇssɪᴏɴᴀʟ Rᴇsᴘᴏɴsɪʙɪʟɪᴛʏ, at §§ 7:86, 7:103-106 -------------------- 9

Cal. State Bar Formal Opn. No. 2003-161------------------------------------------------------- 9

Cᴀʟ. Pʀᴀᴄᴛɪᴄᴇ Gᴜɪᴅᴇ: Pʀᴏꜰᴇssɪᴏɴᴀʟ Rᴇsᴘᴏɴsɪʙɪʟɪᴛʏ (The Rutter Group 2016) §7:26---------- 9

### Rᴜʟᴇs

Cal. Rules of Prof'l Conduct R. 3-100(A) ------------------------------------------------------ 9

Fᴇᴅ. R. Cɪᴠ. Pʀᴏᴄ. 26(b)(5)------------------------------------------------------------------------- 4

Federal Rule of Civil Procedure 26(b)(5)------------------------------------------------------- 4

Federal Rule of Civil Procedure 26(b)(5)(ii) -------------------------------------------------11

NDCA Civil Local Rule 11-4 --------------------------------------------------------------------- 8

iii

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

3

## I.    INTRODUCTION

4        Anthony Levandowski is not a party to this action, and we have no basis to believe that

5   he is presently under criminal investigation.  But given the explosive nature of the accusations

6   raised against him in this case, and the possibility that an investigation could be initiated at some

7   later date, any prudent person in Mr. Levandowski's circumstances would be wise to ensure that

8   his constitutional rights remain fully protected. As the Supreme Court has emphasized for

9   decades, the core purpose of the Fifth Amendment's guarantee is not to shield the guilty, but "to

10  protect innocent men . . . 'who otherwise might be ensnared by ambiguous circumstances.'"

11  *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (quoting *Grunewald v. United States*, 353 U.S. 391, 421

12  (1957)). Further, because the Fifth Amendment's protections turn not "upon the *likelihood*, but

13  upon the *possibility,* of prosecution," *In re Master Key Litig*., 507 F.2d 292, 293 (9th Cir. 1974),

14  the Fifth Amendment can be implicated even in a civil lawsuit when no criminal investigation

15  has been—or ever will be—initiated.

16        Mr. Levandowski is requesting a modification of the Court's standing privilege log

17  requirement.  If applied in its usual fashion, the Court's requirement would improperly compel

18  Uber to disclose information protected by a common interest privilege and thereby undermine

19  Mr. Levandowski's Fifth Amendment right against compelled production as recognized by the

20  Supreme Court in *United States v. Hubbell*, 530 U.S. 27 (2000), and *Fisher v. United States*, 425

21  U.S. 391 (1976).  In making this request, Mr. Levandowski relies upon the following well-settled

22  principles of law:

23     • A client's confidential communications with his attorney are protected by the attorney-

24        client privilege. *Baird v. Koerner*, 279 F.2d 623, 629-30 (9th Cir. 1960).

25     • A client's potentially incriminatory communications to his attorney, whether explicit or

26        implicit, are further protected against compelled disclosure by the Fifth Amendment.

27        *Fisher*, 425 U.S. at 405.

28

1    • The Fifth Amendment prohibits a court from compelling a person to produce records or

2    information if that act of production would tacitly communicate a "link in a chain" to

3    evidence a prosecutor might use to build a case. *Hoffman v. United States*, 341 U.S. 479,

4    486 (1951); *Doe v. United States*, 487 U.S. 201, 208 n. 6 (1988); *Hubbell*, 530 U.S. at 38.

5    • When an attorney shares his client's potentially incriminatory communications in the

6    context of a joint defense agreement creating a common interest privilege, all counsel

7    who are parties to that agreement must maintain the confidentiality of those

8    communications. *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012).

9        The immediate issue before the Court is precisely how detailed Uber's counsel must be in

10   listing on its privilege log the "due diligence report prepared by a third party that *may (or may*

11   *not)* have referenced the collection of allegedly downloaded documents." Dkt. #132 at 1:16-18

12   (emphasis added).  In reliance on his rights under *Hubbell* and *Fisher*, Mr. Levandowski asks

13   that Uber's counsel—because of its common interest confidentiality obligations to Mr.

14   Levandowski—be relieved of any obligation to provide detail concerning (1) the identity of the

15   third-party who conducted any such due diligence review, (2) whether Mr. Levandowski

16   possessed any documents that were reviewed by the third party, or (3) the identity of any of Mr.

17   Levandowski's possessions that may have been reviewed.

18       This is necessary for two reasons.  First, ordering public disclosure of these facts on the

19   privilege log would impair Mr. Levandowski's attorney-client privilege because it would compel

20   disclosure of confidences shared by Mr. Levandowski with his own counsel that were later

21   communicated with other counsel as part of an enforceable joint defense and common interest

22   privilege agreement. Second, requiring disclosure of these facts would separately violate Mr.

23   Levandowski's Fifth Amendment right not to be compelled to reveal the existence, location,

24   possession, or identity of any documents that might furnish a link in a chain of possible

25   incrimination.

26       In similar circumstances, courts have recognized that it is improper to compel a degree of

27   detail in a privilege log where, as here, such detail would tacitly disclose testimony protected by

28

2

1  the privilege against self-incrimination.  *See United States SEC v. Chin,* Civil Action No. 12-cv-

2  01336-PAB-BNB, 2012 U.S. Dist. LEXIS 182252, at *16-17 (D. Colo. Nov. 29, 2012) (finding

3  that the Fifth Amendment and *Hubbell* prohibit requiring a respondent to submit a privilege log

4  that lays out the tacit testimony inherent in production); *In re Syncor ERISA Litig.*, 229 F.R.D.

5  636, 649 (C.D. Cal. 2005) (rejecting a motion to compel a privilege log because "requiring

6  defendant [] to produce a privilege log listing responsive documents may incriminate defendant

7  [] by forcing him to 'admit that the documents exist, are in his possession or control, and are

8  authentic.'").

9          On behalf of Mr. Levandowski, we respectfully ask for the same accommodation here.

10

11                      **II.    PROCEDURAL BACKGROUND**

12  **A.    Court order to Uber to produce documents from Mr. Levandowski**

13

14          In April 2016, Anthony Levandowski, Ottomotto LLC, Otto Trucking LLC, Lior Ron,

15  Uber Technologies, Inc., and their respective attorneys entered into a "Joint Defense, Common

16  Interest and Confidentiality Agreement" in connection with Uber's proposed acquisition (at that

17  time) of Ottomotto and Otto Trucking.  Declaration of John Gardner at ¶ 3 & Ex. A.  Under the

18  agreement—which establishes a common interest privilege that Mr. Levandowski now asserts—

19  a due diligence report was produced by a third party.  *Id.* at ¶ 4; *see also Gonzalez*, 669 F.3d at

20  978 (9th Cir. 2012).

21          In March 2017, Waymo sued Uber, Ottomotto, and Otto Trucking, alleging among other

22  things that Mr. Levandowski stole trade secrets when he stopped working for Waymo and went

23  to work for Uber in its autonomous-driving car program. Dkt. #23 at ¶10.  Waymo sought

24  expedited discovery and a preliminary injunction.  Dkt. #24.  The Court ordered expedited

25  discovery, and specifically ordered Uber to produce, among other things, "all files and

26  documents downloaded by Anthony Levandowski . . . before leaving plaintiff's payroll and

27  thereafter taken by them."  Dkt. #61 at 3, ¶ 4.

28

                                            3

**B.      This Court's requirements of a detailed privilege log**

To the extent that Uber intends to assert any privilege over documents, Federal Rule of Civil Procedure 26(b)(5) and this Court's standing orders requires prompt production of a privilege log containing the following information:

> Privilege logs shall be promptly provided and must be sufficiently detailed and informative to justify the privilege. *See* FRCP 26(b)(5). No generalized claims of privilege or work-product protection shall be permitted. With respect to each communication for which a claim of privilege or work product is made, the asserting party must at the time of assertion identify:
>
> > (a)      all persons making or receiving the privileged or protected communication;
> >
> > (b)      the steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication;
> >
> > (c)      the date of the communication; and
> >
> > (d)      the subject matter of the communication.
>
> Failure to furnish this information at the time of the assertion will be deemed a waiver of the privilege or protection. The log should also indicate, as stated above, the location where the document was found.

Supp. Order to Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup at ¶ 16; *see also* FED. R. CIV. PROC. 26(b)(5).

On March 29, 2017, the undersigned advised the Court that a privilege log in this form would violate Mr. Levandowski's Fifth Amendment right against self-incrimination, as interpreted by the *Hubbell* and *Fisher* line of cases. 3/29/17 Trans. at 5-6, 9-10. Specifically, the undersigned noted that a privilege log in this form would reveal the existence, location, or

1   possession of evidence that Mr. Levandowski may possess and control that is of relevance to this

2   action.  *Id.*

3        The undersigned further noted that, to the extent Uber received information protected

4   from disclosure by the Fifth Amendment, the company cannot disclose it because "counsel who

5   acquires knowledge as part of a common interest agreement stands in the same shoes as counsel

6   for an individual."  *Id.* at 25:6-12.  Arturo Gonzalez, counsel for Uber, echoed this concern,

7   stating he wanted to discuss how to provide a privilege log "without infringing upon a Fifth

8   Amendment right."  *Id.* at 12-13.  Mr. Gonzalez noted that Uber intended to identify a due

9   diligence report on the privilege log, but was unsure whether to name the third party who

10  prepared it.  *Id.*

11       The undersigned asked to brief the question.  *Id.* at 25:19-21.  He also asserted Mr.

12  Levandowski's "Fifth Amendment [act of] production rights under *United States v. Hubbell*,"

13  and made clear that Mr. Levandowski objected "to the disclosure of any confidential information

14  that was acquired as part of a common interest privilege."  *Id.* at 26:18-23.

15       This Court's March 31, 2017 order followed; it allows Mr. Levandowski to move under

16  the Fifth Amendment to "suspend the production or the privilege log requirement.[1]"  Dkt. #132.

17

18                        **III.    ARGUMENT:**

19  **THE FIFTH AMENDMENT PROTECTS MR. LEVANDOWSKI FROM HAVING**
    **HIS LAWYERS—WHETHER DIRECT OR JOINT DEFENSE—REVEAL**
20           **CONFIDENCES THAT MIGHT INCRIMINATE HIM.**

21       **A.     Under The Fifth Amendment A Person May Not Be Compelled To Testify**
            **Against Himself.**
22

23       The Fifth Amendment privilege not to be a witness against oneself is a central tenet of

24  our democracy.  *Quinn v. United States*, 349 U.S. 155, 161 (1955).  "[A]ny compulsory

25  _____

26  [1] In response to this Court's Order of March 31, 2017, counsel for Mr. Levandowski has briefed the
    application of the Fifth Amendment (which, here, arises from a common interest privilege) to the
27  production of the third party report and any required privilege log notations for this report.  This motion
    does not brief any other privileges that may apply to the production of all or any portion of the third party
28  report, all of which are expressly reserved.

NON-PARTY ANTHONY LEVANDOWSKI'S NOTICE OF MOTION AND MOTION FOR MODIFICATION OF
COURT'S ORDER DATED MARCH 16, 2017
Case No. 3:17-cv-00939 WHA

1   discovery by extorting the party's oath . . . to convict him of crime . . . is contrary to the

2   principles of a free government . . . . It may suit the purposes of despotic power, but it cannot

3   abide the pure atmosphere of political liberty and personal freedom." *Malloy v. Hogan*, 378 U.S.

4   1, 9 n.7 (1964).

5           **1.**        **This Fifth Amendment protections are broadly construed and apply**

6                   **to any testimony that could provide a link in the chain of evidence.**

7         Given its importance to our criminal justice system, "[t]his provision of the [Fifth]

8   Amendment must be accorded liberal construction in favor of the right it was intended to

9   secure." *Hoffman v. United States*, 341 U.S. 479, 486 (1951).  A person can invoke the Fifth

10  Amendment's protections in any proceeding—be it "civil, criminal, administrative, judicial,

11  investigative or adjudicatory.*"*  *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th

12  Cir. 2000).  In the civil context, "the invocation of the privilege is limited to those circumstances

13  in which the person invoking the privilege reasonably believes that his disclosures could be used

14  in a criminal prosecution, or could lead to other evidence that could be used in that manner." *Id*.

15  The "privilege against self-incrimination does not depend upon the *likelihood*, but upon the

16  *possibility,* of prosecution and also covers those circumstances where the disclosures would not

17  be directly incriminating, but could provide an indirect link to incriminating evidence."  *Id.*

18  (emphasis in original).

19      Courts have found that the privilege applies when an answer could:

20  - "[P]rovide an indirect link to incriminating evidence[.]" *Doe ex rel. Rudy-Glanzer*, 232

21      F.3d at 1263.

22  - "[P]rovide a lead or clue to evidence having a tendency to incriminate." *United States v.*

23      *Neff*, 615 F.2d 1235, 1239 (9th Cir. 1980).

24  - Disclose "a fact that could serve as a link in a chain of circumstantial evidence from

25      which guilt might be inferred" or a "fact" that "might furnish a lead to a bit of evidence

26      useful to the prosecution." *Maffie v. United States*, 209 F.2d 225, 228 (1st Cir. 1954).

27

28

NON-PARTY ANTHONY LEVANDOWSKI'S NOTICE OF MOTION AND MOTION FOR MODIFICATION OF
COURT'S ORDER DATED MARCH 16, 2017
Case No. 3:17-cv-00939 WHA

- "[G]ive a prosecutor a starting point from which he might proceed step by step to link the witness with criminal offenses." *J.C. Penney Life Ins. Co. v. Houghton,* Civ. A. No. 86-2637, 1986 WL 14732, at *3 (E.D.Pa. Dec. 24, 1986).

In short, the link-in-the-chain test is "broadly protective," *United States v. Chandler*, 380 F.2d 993, 1000 (2d Cir. 1967), and must be "liberally construed" by the courts. *Id.* at 997.

### 2. *Fisher* and *Hubbell* make clear that the Fifth Amendment protects implicit testimony inherent in the act of producing documents in response to a court order or a subpoena

In *Fisher v. United States*, the Supreme Court ruled that an individual can invoke the Fifth Amendment privilege in responding to a request for the production of documents. The Court held that, even when the content of a document itself is not privileged, the act of producing the document may be, because the act of producing evidence in response to a subpoena "has communicative aspects of its own, wholly aside from the contents of the papers produced." 425 U.S. 391, 410 (1976). In other words, when producing documents, a person tacitly testifies about (1) the actual existence of the papers demanded, (2) their possession or control by the witness, as well as the location of the documents, and (3) the witness's belief that the papers are those described in the subpoena. *Id.* The Supreme Court reaffirmed this holding and the act-of-production privilege in *United States v. Hubbell*, 530 U.S. 27, 32-36 (2000) (holding that, in response to a subpoena for documents, the subpoenaed party may refuse to produce because "the act of production itself may implicitly communicate statements of fact," such as an admission that "the papers existed, were in the [witness's] possession or control, and were authentic").

The Fifth Amendment's protection regarding an act of production applies with equal force even if the witness himself no longer possesses the documents sought, but rather has turned the documents over to his attorneys and their agents in order to get legal advice. *Fisher,* 425 U.S. at 405 (holding that "the papers, if unobtainable by summons from the client, are unobtainable by summons directed to the attorney by reason of the attorney-client privilege."). "The thrust of the Fifth Amendment is that 'prosecutors are forced to search for independent evidence instead of relying upon proof extracted from individuals by force of law.'" *United States v. Judson*, 322

7

F.2d 460, 466 (9th Cir. 1963) (*quoting United States v. White*, 322 U.S. 694, 698 (1944)).  "'It follows, then, that when the client himself would be privileged from production of the document, either as a party at common law . . . or as exempt from self-incrimination, the attorney having possession of the document is not bound to produce.'"  *Fisher*, 425 U.S. at 404.  The fact that an individual furnished documents to his lawyer to obtain effective representation does not create an independent source from which to obtain those documents; rather, the lawyer stands in the shoes of his client when it comes to invoking the Fifth Amendment privilege.  Absent a grant of immunity, a court cannot compel an individual, or his attorney, to make a production that could be used to build a case against him.  *Hubbell*, 530 U.S. at 45 ("Given our conclusion that respondent's act of production had a testimonial aspect, at least with respect to the existence and location of the documents sought by the Government's subpoena, respondent could not be compelled to produce those documents without first receiving a grant of immunity under § 6003.")

### B.     The Attorney-Client Privilege And The Duty Of Confidentiality Preclude An Attorney From Revealing Incriminating Communications That His Client Has Revealed In Confidence.

Confidential communications between an attorney and his client are privileged. *Fisher*, 425 U.S. at 403 (citing 8 J. Wigmore, Evidence § 2292 (McNaughton rev. 1961)).  An attorney must keep these communications secret unless a client waives the privilege.  *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455, 459-60 (N.D. Cal. 1978).

This Court also requires that all lawyers practicing before it adhere to the California Rules of Professional Conduct, *see* NDCA Civil Local Rule 11-4 (requiring that any attorney practicing in the court be "familiar and comply with the standards of professional conduct required of members of the State Bar of California"), which even more broadly obligate attorneys to resist disclosing any "confidences" or "secrets" of their clients.  Both California statutory law and the California Rules of Professional Conduct mandate that lawyers "maintain inviolate the confidence, and at every peril to himself or herself . . .  preserve the secrets, of his

or her client." Cal. Bus. & Prof. Code § 6068(e)(1) (emphasis added); accord Cal. Rules of Prof'l Conduct R. 3-100(A) ("A member shall not reveal information protected from disclosure by Business & Professions Code § 6068(e)(1) without the informed consent of the client.").

The duty not to disclose client "confidences" and "secrets" is virtually absolute and much broader in scope than privilege.  *See* Vapnek *et. al.*, CAL. PRACTICE GUIDE: PROFESSIONAL RESPONSIBILITY (The Rutter Group 2016) §7:26; *see also* Cal. State Bar Formal Opn. No. 2003-161 (a California attorney's ethical duty of confidentiality under §6068(e) protects "all information gained in the professional relationship that the client has requested be kept secret or the disclosure of which would likely be harmful or embarrassing to the client.")  In short, if a client does not permit disclosure, then disclosure must be avoided unless an appropriate court order is obtained by the requesting party.  CAL. PRACTICE GUIDE: PROFESSIONAL RESPONSIBILITY, at §§ 7:86, 7:103-106. To avoid violating the duty of confidentiality, a lawyer must not disclose any client confidences unless and until the court has determined that an exception to §6068(e)(1) applies.  *Id.* at § 7:88.

## C.   A Common-Interest Privilege Extends The Attorney-Client Privilege And Duty Of Confidentiality To Counsel Representing Third Parties

In general, the disclosure to a third party of attorney-client communications destroys any privilege that might otherwise attach to such communications.  But that rule does not hold when the privilege holder and the third party share a common legal interest with respect to the subject matter of the communication and enter into their own agreement of confidentiality.  *See, e.g, Gonzalez,* 669 F.3d at 978.  This extension of the attorney-client privilege, known as a "common interest privilege," "applies where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived."  *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003); *see also United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000) (existence of a joint defense agreement extends the attorney-client privilege to create an implied attorney-client relationship between the codefendants and their counsel).

One party to a joint defense agreement "cannot unilaterally waive the privilege for other holders." *Gonzalez*, 669 F.3d at 982; *In re Grand Jury Subpoenas*, 902 F.2d 244, 250 (4th Cir. 1990) (holding that all documents related to common claim "are subject to a joint defense privilege that [one party] may not waive unilaterally"). Courts recognize that allowing unilateral waiver of confidential communications by one party without the consent of the others "would likely severely undermine the rationale for the joint defense privilege in the first place." *Gonzalez*, 669 F.3d at 983.

A common interest or joint defense agreement is permissible in many circumstances. It does not need to be in writing; it "may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation." *Gonzalez*, 669 F.3d at 979 (internal citations omitted). Nor does it matter whether the litigation in question is civil or criminal, or even whether the parties would align on the same side of the pleadings. *Id.* (*citing In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990)). Indeed, the joint defense privilege applies even if litigation is not in the offing at the time of the agreement between the parties. *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) ("The protection of the privilege under the community of interest rationale [] is not limited to joint litigation preparation efforts. It is applicable whenever parties with common interests join forces for the purpose of obtaining more effective legal assistance."). In all of these circumstances, it is sufficient that the legal interests of the parties invoking the privilege are aligned. *See Holmes v. Collection Bureau of America Ltd.*, No. C 09-02540 WHA, 2010 U.S. Dist. LEXIS 4253, 2010 WL 143484 (N.D. Cal. Jan. 8, 2010) (finding joint defense privilege where "counsel for both defendants submitted sworn declarations that they agreed to pursue a joint defense strategy . . . and to communicate with each other regarding their shared legal interests").

Courts have expressly held that information shared between individuals and companies in the context of a potential acquisition can fall within the ambit of a common interest privilege's protections. *See, e.g., Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310, 312

1    (N.D. Cal. 1987) (no waiver of attorney-client privilege when defendant, Bausch & Lomb,

2    disclosed a patent opinion letter to a nonparty during negotiations for the purchase of a division

3    of Bausch & Lomb); *OXY Res. Cal. LLC v. Superior Court*, 115 Cal. App. 4th 874, 898-899

4    (2004) (the common interest "nonwaiver principle" applies to information disclosed in pre-

5    acquisition communications).  The determinative factor is whether the communication was

6    "designed to further a joint legal effort" or "in the course of formulating a common legal

7    strategy." *See Nidec Corp.*, 249 F.R.D. at 579 (discussing *Hewlett-Packard Co. v. Bausch &*

8    *Lomb, Inc*.); *see also OXY Res. Cal. LLC*, 115 Cal. App. 4th at 898-99.

9          Here, there is no question that a valid joint defense agreement exists between Mr.

10   Levandowski and Uber.  It was memorialized in writing and is attached as Exhibit A to the

11   Declaration of Mr. Levandowski's attorney, John Gardner.  That agreement was entered into for

12   the express purpose of protecting communications made in the course of an ongoing joint effort

13   to defend against "potential investigations, litigation, and/or other proceedings relating to the

14   proposed transaction between Ottomotto, Otto Trucking and Uber and/or any affiliates of Uber."

15   Ex. A to Gardner Declaration at 1.  In keeping with that purpose, the agreement contains an

16   unconditional promise that the signatories would keep any documents shared under the

17   agreement secret.  *Id. ¶¶* 2-5.

18         **D.    Requiring A Detailed Privilege Log Here Would Violate Mr. Levandowski's**
              **Fifth Amendment Privilege**
19
20         The basic purpose of a privilege log is to provide information sufficient for other parties

21   and the court to assess whether an asserted privilege applies, but without actually disclosing the

22   information protected by the privilege itself.  Thus, Federal Rule of Civil Procedure 26(b)(5)(ii)

23   provides that privilege logs must "describe the nature of the documents, communications, or

24   tangible things not produced or disclosed . . . *without revealing information itself privileged* or

25   protected . . . ." (emphasis added).

26         In the ordinary case, where no Fifth Amendment act-of-production right has been

27   invoked, the detailed information required by this Court's standing order can be provided

28

NON-PARTY ANTHONY LEVANDOWSKI'S NOTICE OF MOTION AND MOTION FOR MODIFICATION OF
COURT'S ORDER DATED MARCH 16, 2017
Case No. 3:17-cv-00939 WHA

without revealing the privileged or protected content of the information for which protection is sought. But the situation presented here is different—because public disclosure of even such commonplace details as whether a document exists, who may have possessed it, or where it is located would divulge information that the Fifth Amendment protects. *See Fisher*, 425 U.S. at 410.

Accordingly, courts hold that the requirement of a detailed privileged log must yield to the constitutional right to be free from forced self-incrimination. *See Chin*, 2012 U.S. Dist. LEXIS 182252, at *26; *In re Syncor ERISA Litig.*, 229 F.R.D. at 649; *see also In re Fustolo*, No. 13-12692-JNF, 2015 WL 9595421, at *1, 5 (Bankr. D. Mass. Dec. 31, 2015) (implicitly accepting argument that a privilege log would undermine right against self-incrimination by modifying the privilege log requirement).

As the Court noted in its March 31, 2017 order, Uber's counsel has already indicated in open court that, "prior to the acquisition of Otto Trucking LLC and Ottomoto LLC, Uber Technologies, Inc. obtained a due diligence report prepared by a third party that *may (or may not)* have referenced the collection of allegedly downloaded documents." Dkt. #132 at 1:16-18 (emphasis added). Adding further detail to this disclosure is precisely what threatens Mr. Levandowski's *Hubbell* and *Fisher* rights. To the extent that Mr. Levandowski *may have* produced any documents for review by a third party hired by counsel for the common purpose of obtaining legal advice, his doing so would have conveyed the same *implicit testimony* that accompanies every act of production—namely, a tacit assertion that documents exist, that they were within his possession, and that they were responsive to a request or question posed as part of the privileged due diligence effort.

What the *Hubbell* and *Fisher* line of cases teach, at bottom, is that there is no meaningful constitutional difference between "saying something" with words and "saying something" with the act of production. Hence, any testimonial communications that Mr. Levandowski made through his act of production to his own counsel, and then to any other counsel bound by a common interest privilege, are twice-protected against court-ordered disclosure. These

12

communications are protected by the attorney-client privilege, as extended through the common interest privilege here, and they are protected further under the Fifth Amendment. The Court cannot, consistent with the Fifth Amendment, order Mr. Levandowski—or *any counsel owing obligations of attorney-client confidentiality to him*—to disclose information that could furnish a "link in the chain" to the existence, possession, location, or identity of evidence that may be used in any possible criminal prosecution of Mr. Levandowski.

Plaintiffs are certainly free to use any legitimate tools of civil discovery to locate evidence they deem relevant to their civil lawsuit. But they are not free to use the power and authority of this Court to order disclosures that are protected under Mr. Levandowski's Fifth Amendment rights. Thus, absent an order granting Mr. Levandowski immunity coextensive with 18 U.S.C. § 6002 or a showing by the government that it already knew of the existence, location, possession, and identity of such documents with a degree of particularity rendering each question a "foregone conclusion," any order compelling Uber's counsel to disclose these confidential testimonial communications on a privilege log would run afoul of the Fifth Amendment. *See United States v. Bright*, 596 F.3d 683, 692 (9th Cir. 2010) (It is only "[w]here the existence and location of the documents are a foregone conclusion and the individual adds little or nothing to the sum total of the Government's information by conceding that he in fact has the documents . . . that enforcement of the summons' does not touch upon constitutional rights.").

### E. This Court Should Modify Its Order To Suspend The Requirements Of A Privilege Log For Any Documents Protected By The Fifth Amendment.

The Court's order to Uber—which by its terms would require the company to produce any documents (to the extent it received any) that Mr. Levandowski produced under a common-interest privilege—would violate Mr. Levandowski's Fifth Amendment rights. With respect to any such documents, this Court should modify its order to require only disclosure of information sufficient to establish (a) the existence of a common-interest agreement between Mr. Levandowski and Uber, and (b) that Mr. Levandowski provided information to the third-party conducting due diligence under the agreement. Uber should not be required to disclose

1   information regarding the location of any protected document, including the name of the third-
2   party vendor, or the subject matter beyond noting "due diligence report."  Requiring Uber to
3   provide this information would violate the Fifth Amendment as those details could serve as a
4   link in the chain for the government to obtain the report and use it in any criminal investigation
5   of Mr. Levandowski.  *Hubbell*, 530 at 45 (information regarding "the existence and location of
6   the documents sought" is protected by the Fifth Amendment).
7          To the extent the Court requires additional information from Mr. Levandowski relating to
8   Fifth Amendment privilege issues, Mr. Levandowski is prepared to submit the information *in*
9   *camera* and *ex parte*, a procedure that is approved by the Ninth Circuit. *See, e.g., United States v.*
10  *Drollinger*, 80 F.3d 389, 393 (9th Cir. 1996).
11  ///
12  ///
13  ///
14  ///
15  ///
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///

14

## IV.    CONCLUSION

To properly protect Mr. Levandowski's Fifth Amendment rights, this Court must modify the normal requirements of a privilege log with respect to the third-party due diligence report. Without this requested accommodation, this Court will be compelling Mr. Levandowski to disclose information that he shared in confidence with his lawyers under an attorney-client and common-interest privilege, in violation of *Hubbell* and *Gonzalez*.  If Mr. Levandowski is forced to do so, his implicit testimony will surely be used against him later, should a criminal investigation develop.

Date:    April 4, 2017                              Respectfully submitted,


/s/ _____
Miles Ehrlich
Ismail Ramsey
Amy Craig
Ramsey & Ehrlich LLP
803 Hearst Avenue
Berkeley, CA 94710
Tel: (510) 548-3600
Fax: (510) 291-3060

miles@ramsey-ehrlich.com
izzy@ramsey-ehrlich.com
amy@ramsey-ehrlich.com

***Counsel for Non-Party Anthony Levandowski***

NON-PARTY ANTHONY LEVANDOWSKI'S NOTICE OF MOTION AND MOTION FOR MODIFICATION OF
COURT'S ORDER DATED MARCH 16, 2017
Case No. 3:17-cv-00939 WHA