I, John Gardner, declare and affirm as follows:

1.      I am a partner at the law firm of Donahue Fitzgerald LLP and am licensed to practice law in the State of California.  The facts stated herein are of my own personal knowledge and, if sworn as a witness, I could and would testify competently thereto.

2.      I represented Anthony Levandowski in connection with Uber's acquisition of Ottomotto LLC in 2016.

3.      In connection with this transaction, Ottomotto LLC, Otto Trucking LLC, Uber Technologies, Inc., Anthony Levandowski and Lior Ron, and their respective attorneys, including me, entered into a Joint Defense, Common Interest and Confidentiality Agreement ("Joint Defense Agreement"), a true and correct copy of which is attached as Exhibit A.

4.      Thereafter, a third party prepared a due diligence report that may (or may not) have referenced documents reviewed pursuant to the common interest privilege created by the Joint Defense Agreement.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration is executed on this 3rd day of April, 2017 at Walnut Creek, California.

John Gardner

EXECUTION

## JOINT DEFENSE, COMMON INTEREST AND
## CONFIDENTIALITY AGREEMENT

This JOINT DEFENSE, COMMON INTEREST AND CONFIDENTIALITY AGREEMENT (this "Agreement") is hereby entered into by and among Ottomotto LLC ("Ottomotto"), Otto Trucking LLC ("Otto Trucking"), Anthony Levandowski ("Levandowski"), Lior Ron ("Ron") and Uber Technologies, Inc. ("Uber"), and their respective attorneys (hereinafter referred to individually as a "Party" and collectively as the "Parties"), in contemplation of potential investigations, litigation, and/or other proceedings relating to the proposed transactions between Ottomotto, Otto Trucking and Uber and/or any affiliates of Uber (hereinafter termed as the "Transaction").

WHEREAS, the Parties and their respective legal counsel have recognized and have discussed that certain third parties may be notified of the Transaction and such parties may conduct investigations and proceedings (collectively, "Potential Proceedings") that may require submission of additional information.  The purpose of this Agreement is to confirm terms and conditions for the Parties' common interest in opposing, and, if necessary, engaging in a joint defense against Potential Proceedings; and

WHEREAS, the Parties have undertaken and may undertake factual, legal and economic research, investigation and analysis (including any such analysis performed by third parties), and the Parties are of the opinion that it is in the best interests of the Parties to exchange certain information, pool individual work product, and cooperate in connection with any filings, submissions, or Potential Proceedings; and

WHEREAS, cooperation in such a joint defense and/or common interest effort necessarily involves the exchange of confidential business, financial, technical and other information, as well as information that is otherwise a privileged attorney/client communication and/or attorney work product; and

WHEREAS, the Parties have confidential and proprietary documents containing financial, operating and planning data, which they have shared with each other and may wish to disclose to retained lawyers, economists and/or consultants for the Parties; and

WHEREAS, the Parties recognize that they share a common interest in resolving any issues concerning the Transaction under all applicable laws and that a joint defense effort will promote evaluation and preparation of their respective defenses; and

WHEREAS, the Parties by their joint defense and common interest efforts (i) do not intend to diminish in any way the confidentiality of any materials exchanged between the Parties and (ii) intend to rely on the joint defense and common interest exceptions to the waiver of the attorney/client and attorney work product privileges; and

WHEREAS the Parties wish to pursue their common interests and to avoid any suggestion of waiver of the confidentiality or immunity of communications and documents protected by the attorney-client privilege, the attorney work product doctrine, or any other

applicable privileges or immunities under applicable statutes, rules, regulations and common law.

NOW, THEREFORE, in consideration of the mutual terms and covenants herein, the Parties memorialize their pre-existing understanding and oral agreement and further agree as follows:

1.      All non-public information, documents, data, opinions, strategies or other materials in any form, including oral, written or electronic communications, exchanged or communicated in the past or future by whatever means between or among the Parties in connection with the joint defense efforts pursuant to and in connection with any Potential Proceedings, the defense of the Transaction and any actions related to or arising out of the Transaction (hereinafter referred to collectively as "Joint Defense Information"), shall be deemed subject to the terms of this Agreement. Wherever possible, the party providing the Joint Defense Information (the "Producing Party") shall label the materials "Joint Defense Information - Privileged and Confidential," although materials may be Joint Defense Information subject to the terms of this Agreement even if not labeled.

2.      Each Party affirms that Joint Defense Information includes information that has been communicated to counsel in confidence, by one or both of the Parties, for the purpose of securing legal advice and representation and attorney-work product and that all such Joint Defense Information is therefore subject to the attorney/client and/or work product privilege belonging to the client or an attorney, which privilege may not be waived by any Party without the prior written consent of the client or attorney entitled to assert such privilege. Any disclosure, whether inadvertent or purposeful, by any Party of information exchanged pursuant to this Agreement shall not constitute a waiver of any privilege or protection of any other Party. No Party has or will have authority to waive any applicable privilege or doctrine on behalf of another Party.

3.      The Parties hereby agree that to the extent that Joint Defense Information is disclosed to them (the "Receiving Party"), it will be kept confidential and disclosed by the Receiving Party only to the following persons who will maintain its confidentiality: (i) the signatories to this Agreement and the partners, associates, staff and other employees of their respective law firms who are working on the joint defense effort and/or any Potential Proceeding in connection with the Transaction; (ii) experts retained by any Party to assist in the joint defense effort and any related Potential Proceeding in connection with the Transaction; (iii) any outside copying service or other outside vendor retained by any Party that is necessary to assist in the joint defense effort and any related Potential Proceeding in connection with the Transaction, so long as such outside copying service or other outside vendor is subject to a written obligation to not use or disclose Joint Defense Information other than for the purpose of assisting the Parties in a Potential Proceeding in connection with the Transaction; (iv) except as provided in Paragraph 4, each other Party; and (v) subject to Paragraph 7, as required by law. It is expressly understood that, except as expressly provided for herein, Joint Defense Information shall not be further disclosed to any other person, unless authorized in writing by the Producing Party.

#688754 2

4.      Nothing in this Agreement shall preclude any Producing Party from designating material "Outside-Counsel Only" or "Attorneys Eyes Only." The term "Outside Counsel" shall refer to any law firm that is or may become a signatory to this Agreement. Joint Defense Information provided on an "Outside-Counsel Only" basis may be exchanged among outside counsel, attorneys within the outside counsel's law firm, and employees or agents of such firm, and may be provided to any experts or vendors (and including any employees or agents of their firms) retained in connection with the Transaction, but shall not be divulged to any other person. All Joint Defense Information that a Producing Party intends to be provided on an "Outside-Counsel Only" basis shall be clearly marked or otherwise designated "Outside-Counsel Only." The term "Attorneys Eyes Only" shall include (i) Outside Counsel, including employees or agents of such firm; (ii) in-house lawyers for the Parties; and (iii) any experts and vendors (and including any employees or agents of their firms) retained in connection with the Transaction so long as such experts and vendors are subject to a written obligation to not use or disclose Joint Defense Information other than for the purpose of assisting the Parties in a Potential Proceeding in connection with the Transaction.

5.      Except as otherwise provided for herein, Joint Defense Information will be used by the Receiving Party only for purposes of the joint defense effort and any Potential Proceeding in connection with the Transaction, as identified above, and shall not be used for any other purpose without the prior written consent of the Producing Party.  Notwithstanding the foregoing, in any proceeding between the Parties, the fact that a Party provided the other Party with information or a document as Joint Defense Information under this Agreement will not (i) preclude or limit in any way the Producing Party's ability to reference or use such information or documents; or (ii) affect the discoverability or use of such information or documents by the Receiving Party, provided that (a) such information or documents would otherwise have been subsequently discoverable or obtainable from the Producing Party without asserting that there has been a waiver of attorney client privilege or attorney work product protection for such documents or information as a result of being provided to the Receiving Party as Joint Defense Information; or (b) is otherwise obtained by the Receiving Party from other sources outside of this Agreement without violating this Agreement.

6.      Joint Defense Information shall not include documents and information that: (a) were generally publicly available prior to the date hereof; (b) become publicly available subsequent to the date hereof other than through an unlawful act or breach of the Receiving Party under this Agreement; (c) are in the possession of a Party that were lawfully obtained from a source other than the Producing Party; and (d) are obtained from a third party or were received or developed outside of this joint defense effort subsequent to the date hereof without violating this Agreement.   Joint Defense Information includes, however, communications between or among the Parties forwarding, discussing, or relating to the information in categories (a)-(d) of this paragraph.

7.      If any person or entity requests or demands from a Receiving Party access to Joint Defense Information that the Receiving Party obtained from a Producing Party by subpoena, court order, arbitral order or otherwise, the Party receiving the demand, subpoena or order shall notify the Producing Party in writing within forty-eight (48) hours. Each Party agrees that, except as required by law, the Producing Party shall have the opportunity promptly, and in any event no more than ten (10) days after receiving notice of the subpoena or order, to

- 3 -

#688754.2

assert any rights or privileges against the request to obtain the material, and that the Producing Party and the Party who received the request shall take all steps necessary and appropriate to assist in the assertion of applicable rights and privileges with regard to said Joint Defense Information in the appropriate forum. The Producing Party shall bear the legal costs, including attorneys' fees, in asserting such rights and privileges, subject to Uber's obligation to provide indemnification to Ottomoto, Otto Trucking, Levandowski and Ron pursuant to any written agreement among the Parties. If the return date on the subpoena or order is less than ten (10) days, the Party receiving the subpoena or order shall take all reasonable steps to secure an extension of time for the Producing Party to have a reasonable opportunity to assert any applicable rights or privileges prior to the return date.

8.      The existence of this Agreement or of a joint defense or common interest effort in connection with the Transaction shall not be used in any fashion against any of the Parties to this Agreement, except that nothing herein shall prohibit the use of the foregoing to enforce the obligations, rights, and remedies of the Parties under this Agreement. No Party to this Agreement will claim (i) that any counsel is disqualified in such litigation or any other matter by reason of the joint defense or common interest effort or such counsel's access to confidential, privileged, or work product documents or (ii) that this Agreement creates any attorney-client relationship that did not exist prior to the earlier of any prior understanding of the Parties regarding their common interests with respect to the Transaction, or the execution of this Agreement.

9.      At any time, any Producing Party may request of any Receiving Party in writing that it return to the Producing Party or destroy any Joint Defense Information provided to the Receiving Party pursuant to this Agreement and the Receiving Party will promptly comply with such request except as prohibited by law, legal duty or legal obligation. Upon request of the Producing Party, a Receiving Party will redact (i.e., permanently delete) from any retained work product all statements and disclosures of Joint Defense Information provided by the Producing Party; provided, however, that each Party's Outside Counsel may retain an original (i.e., non-redacted) copy of any such work product on the condition that it will not provide the original work product to its client without making any necessary redactions unless it has obtained the prior written consent of the Producing Party. The Parties agree that a failure to return, destroy, or redact such materials upon request provides adequate grounds for the Producing Party to seek a court order directing return, destruction, or redaction of the materials. If a Receiving Party is unable to ensure the destruction or redaction of any Joint Defense Information, it will take reasonable measures to make such Joint Defense Information permanently inaccessible to employees of the Receiving Party. Any such destruction or redaction shall, upon the written request of the Producing Party, be certified in writing to the Producing Party by an authorized person supervising the same. Even after the conclusion of the joint defense effort, Joint Defense Information will be treated as confidential. The Parties acknowledge that they and others permitted access to Joint Defense Information pursuant to this Agreement may maintain archived or back-up tapes and other media not accessed in the ordinary course of business but used only to restore inadvertently destroyed or otherwise lost data ("Back-up Systems") that may include such Joint Defense Information. Notwithstanding the foregoing, the Parties acknowledge that it would be burdensome to remove information from such Back-up Systems or to render the information permanently inaccessible. The Parties shall not be required to engage in such steps but agree that they shall take no steps to retrieve such information from

- 4 -

Back-up Systems in the absence of any need to use those Back-up Systems more generally to restore destroyed or lost data. Such Back-up Systems will be erased or destroyed in accordance with the Parties' normal course document preservation and destruction policies. Further, in the event such Back-up Systems are used to restore data destroyed or lost for other reasons, any Joint Defense Information will be removed from such restored systems and destroyed or rendered permanently inaccessible.

10.     Nothing in this Agreement shall obligate any Party to provide any information to any other Party or exchange any information with any other Party.  The Parties each recognize their respective rights to separately confer, and to elect not to share such communications with the other Party.

11.     Nothing in this Agreement shall restrict any Party from using or disclosing in any manner it chooses materials, whether confidential or otherwise, originating with that Party so long as such materials do not contain or disclose Joint Defense Information that was received from another Party.

12.     Any Party may withdraw from the Agreement upon written notification (electronic or otherwise) to the other Parties. All Parties agree that in the event any Party withdraws, such Party will promptly return or destroy (pursuant to Paragraph 9) all Joint Defense Information provided by any of the other Parties and any such destruction shall, upon the request of the Producing Party, be certified in writing to the Producing Party by an authorized person supervising the same. The Parties agree that a failure to return or destroy such materials provides adequate grounds for the Producing Party to seek a court order directing return or destruction of the materials. Notwithstanding any withdrawal, each Party remains subject to the provisions of Paragraphs 2-9 and 13-14 of this Agreement.

13.     Each Party acknowledges and agrees that money damages would not be a sufficient remedy for any breach of any provision of this Agreement by any Party, and that in addition to such remedies which any non-breaching Party may have, such non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for such breach.

14.     Each Party agrees to assume liability for any breach of this Agreement by it or any third-party it retains in conjunction with its representation related to the Transaction. Each Party hereby agrees that it assumes liability for any breach of this Agreement.

15.     Any modifications to this Agreement must be in writing and signed by all Parties.

16.     Any and all disputes concerning the validity, construction, interpretation, and effect of this Agreement shall be resolved under the laws of the State of Delaware applicable to agreements made and to be performed entirely with the State of Delaware, without regard to the conflict of law provisions thereof that would result in the application of the law of any other jurisdiction.  Each party hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the Delaware Court of Chancery in and for New Castle County, or in the event (but only in the event) that such Delaware Court of Chancery does not have subject matter jurisdiction over such matter, the United States District Court for the District of Delaware (as

#688754.2

applicable, the "Chosen Court"), for any actions, suits or proceedings arising out of or relating to this Agreement and the transactions contemplated hereby (and each party agrees not to commence any action, suit or proceeding relating thereto except in such courts, and further agrees that service of any process, summons, notice or document by registered mail to such party's address in the notice provision of the Transaction Agreement shall be effective service of process for any action, suit or proceeding brought against it in any such court). Each Party hereby irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

17.     The Parties (or any successor entity to such Parties), together with any other signatories thereto, executed a Mutual Non-Disclosure Agreement, dated as of February 1, 2016 (as amended, the "NDA"). This Agreement is intended to supplement, not replace, the NDA and this Agreement should be read consistently with the NDA.  To the extent there is any conflict between this Agreement and the NDA, this Agreement shall control.

18.     This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*[signatures only to follow]*

#6887542

**JOINT DEFENSE PRIVILEGED**

Ottomotto LLC:                                    Uber Technologies, Inc.:

By: _____          By: _____

Date: _____          Travis Kalanick, President, Chief Executive Officer
                                        and Secretary
Otto Trucking LLC:                      Date: __April 11, 2016_____

By: _____

Date: _____


Counsel for Ottomotto LLC/Otto Trucking LLC: Counsel for Uber Technologies, Inc.:


By: _____          By: _____
    Eric Amdursky                           Eric Tate
    O'Melveny & Myers LLP                    Morrison & Foerster LLP

Date: _____          Date: _____

Anthony Levandowski:

By: _____

Date: _____


Counsel for Levandowski:

By: _____
    John F. Gardner
    Donahue Fitzgerald LLP

Date: _____


Lior Ron:

By: _____

Date: _____

**JOINT DEFENSE PRIVILEGED**

Ottomotto LLC:                              Uber Technologies, Inc.:

By: _____    By: _____

Date: _____    Date: _____

Otto Trucking LLC:

By: _____

Date: _____


Counsel for Ottomotto LLC/Otto Trucking LLC:   Counsel for Uber Technologies, Inc.:

By: _____    By: *Eric Tate* by AR
    Eric Amdursky                           Eric Tate
    O'Melveny & Myers LLP                   Morrison & Foerster LLP

Date: _____    Date: April 11, 2016

Anthony Levandowski:

By: _____

Date: _____


Counsel for Levandowski:

By: _____
    John F. Gardner
    Donahue Fitzgerald LLP

Date: _____


Lior Ron:

By: _____

Date: _____


#688754.2

**JOINT DEFENSE PRIVILEGED**

Ottomotto LLC:                                    Uber Technologies, Inc.:

By: _____        By: _____

Date: ___April 11, 2016_____      Date: _____

Otto Trucking LLC:

By: _____

Date: ___April 11, 2016_____


Counsel for Ottomotto LLC/Otto Trucking LLC: Counsel for Uber Technologies, Inc.:

By: _____        By: _____
      Eric Amdursky                                   Eric Tate
      O'Melveny & Myers LLP                  Morrison & Foerster LLP

Date: _____      Date: _____

Anthony Levandowski:

By: _____

Date: _____


Counsel for Levandowski:

By: _____
      John F. Gardner
      Donahue Fitzgerald LLP

Date: ___April 11, 2016_____


Lior Ron:

By: _____

Date: ___April 11, 2016_____

**JOINT DEFENSE PRIVILEGED**

Ottomotto LLC:                                  Uber Technologies, Inc.:


By: _____         By: _____

Date: _____         Date: _____

Otto Trucking LLC:

By: _____

Date: _____


Counsel for Ottomotto LLC/Otto Trucking LLC: Counsel for Uber Technologies, Inc.:

By: ____Eric Amdursky_____    By: _____
    Eric Amdursky                            Eric Tate
    O'Melveny & Myers LLP                    Morrison & Foerster LLP

Date: ___April 11, 2016_____     Date: _____

Anthony Levandowski:

By: _____

Date: _____


Counsel for Levandowski:

By: _____
    John F. Gardner
    Donahue Fitzgerald LLP

Date: _____


Lior Ron:


By: _____

Date: _____


#688754.2

**JOINT DEFENSE PRIVILEGED**

Counsel for Ron:

By: _____
Alisa J. Baker
Levine & Baker LLP

Date: _____April 11, 2016_____

#688754.2