QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa J. Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>      vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO'S OPPOSITION TO NON-PARTY ANTHONY LEVANDOWSKI'S MOTION FOR MODIFICATION OF COURT'S ORDER DATED MARCH 16, 2017**<br><br>**Hearing:**<br>**Date:** April 6, 2017<br>**Time:** 9:30 a.m.<br>**Place:** Courtroom 8, 19th Floor<br>**Judge:** The Honorable William Alsup |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I.      MR. LEVANDOWSKI'S PERSONAL PRIVILEGE AGAINST SELF-INCRIMINATION IS IRRELEVANT TO UBER'S PRODUCTION OF DOCUMENTS OR INFORMATION ................................................................................. 2

II.     EVEN IF THE SELF-INCRIMINATION PRIVILEGE WERE RELEVANT AT ALL, MR. LEVANDOWSKI HAS NOT SATISFIED THE REQUIREMENTS NECESSARY TO INVOKE IT HERE ............................................................................ 3

III.    THE COMMON INTEREST DOCTRINE DOES NOT APPLY TO THE DUE DILIGENCE REPORT BECAUSE EITHER (I) THERE WAS NEVER ANY COMMON LEGAL INTEREST REGARDING THE 14,000+ WAYMO DOCUMENTS OR (II) COMMUNICATIONS MADE PURSUANT TO A COMMON LEGAL INTEREST WERE IN FURTHERANCE OF A CRIME -- PRODUCTION IS REQUIRED ........................................................................................ 5

IV.    AN ADVERSE INFERENCE IS APPROPRIATE ................................................................ 8

V.     CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ajaxo Inc. v. ETrade Grp., Inc.*,
 135 Cal. App. 4th 21 (2005) ..................................................................................................... 9

*Braswell v. United States*,
 487 U.S. 99 (1988) .................................................................................................................... 3

*Brinks, Inc. v. City of New York*,
 717 F.2d 700 (2d Cir. 1983) ...................................................................................................... 9

*Chrimar Systems Inc. v. Cisco Systems Inc.*,
 No. 13-cv-01300,_2016 WL 1595785, at *7 (N.D. Cal. Apr. 21, 2016) ................................... 7

*Couch v. United States*,
 409 U.S. 322 (1973) .................................................................................................................. 3

*Elan Microelectronics Corp. v. Apple, Inc.*,
 No. 09-01531 .............................................................................................................................. 6

*Fisher v. United States*,
 425 U.S. 391 (1976) ........................................................................................................... 2, 4, 5

*Go v. Rockefeller Univ.*,
 280 F.R.D. 165 (S.D.N.Y. 2012) ............................................................................................... 7

*In re Grand Jury Proceedings*,
 87 F.3d 377 (9th Cir. 1996) ....................................................................................................... 7

*Integrated Global Concepts Inc. v. j2 Global, Inc.*,
 No. 12-cv-03434-RMW, 2014 WL 232211 (N.D. Cal. Jan. 21, 2014) ..................................... 6

*Holmes v. Collection Bureau of Am., Ltd.*,
 No. C 09-02540 WHA, 2010 WL 143484, at *2 (N.D. Cal. Jan. 8, 2010) ............................... 5

*United States v. Hubbell*,
 530 U.S. 27 (2000) .................................................................................................................... 4

*LiButti v. United States*,
 107 F.3d 110 (2d Cir. 1997) ...................................................................................................... 9

*Nidec Corp. v. Victor Co.*,
 249 F.R.D. 575 (N.D. Cal. 2007) .............................................................................................. 6

*In re Pacific Pictures Corp.*,
 679 F.3d 1121 (9th Cir. 2012) ................................................................................................... 6

*RAD Serv., Inc. v. Aetna Cas. & Sur. Co.*,
 808 F.2d 271 (3d Cir. 1986) ...................................................................................................... 9

*In re Rivastigmine Patent Litig.*,
    No. 05 MD 1661 (HB/JCF), 2005 WL 2319005, at *4-*5 (S.D.N.Y. Sept. 22, 2005) ................ 6

*In re Syncor ERISA Litig.*,
    229 F.R.D. 636 (C.D. Cal. 2005) ................................................................................ 4

*Thought, Inc. v. Oracle Corp.*,
    No. 12-cv-05601, 2014 U.S. Dist. LEXIS 111642 (N.D. Cal. Aug. 11, 2014) .......................... 6

*United States v. Bright*,
    596 F.3d 683 (9th Cir. 2010) ................................................................................... 4

*United States v. Brown*,
    918 F.2d 82 (9th Cir. 1990) .................................................................................... 4

*United States v. Edison, No. CR*,
    07-0074 WHA 2008 WL 170660 (N.D. Cal. Jan. 17, 2008) ........................................... 7

*United States v. Richey*,
    632 F. 3d 559 (9th Cir. 2011) ................................................................................. 7

**Statutes**

Cal. Civ. Code 2310 ................................................................................................. 9

**INTRODUCTION**

Through Mr. Levandowski's Motion For Modification Of Court's Order Dated March 16, 2017, the following facts have now come to light. Mr. Levandowski, Otto, Uber, their lawyers, and others entered into a purported Joint Defense Agreement in April 2016, before Uber acquired Otto. That Agreement expressly contemplated potential litigation regarding the yet-to-be-consummated acquisition -- *i.e.*, Uber, Otto, Mr. Levandowski, and their lawyers anticipated that there would be a legal proceeding just like this one. Soon after the Agreement was executed, an unidentified third party prepared a due diligence report for Uber that references at least some of the confidential and trade secret material that Mr. Levandowski downloaded from Waymo prior to his resignation -- *i.e.*, Uber was aware, prior to acquiring Otto, that Mr. Levandowski took documents from Waymo. And Mr. Levandowski is now seeking to obstruct discovery into, not only his own conduct, but also Uber's, Otto's and their counsels' knowledge and conduct, by asserting that all members of the Joint Defense Agreement are prohibited from producing any evidence that Mr. Levandowski unilaterally determines might incriminate him.

Mr. Levandowski's attempt to extend the Fifth Amendment privilege against self-incrimination is remarkable and -- if adopted -- would be unprecedented. Mr. Levandowski asks this Court to contravene established Supreme Court precedent by holding that a corporation can withhold information based on an individual's Fifth Amendment right to avoid self-incrimination. He asks this Court to contravene established Supreme Court precedent by holding that the Fifth Amendment "act of production" doctrine extends to documents that the public (and thus the Government) already knows exist in a particular person's possession or control. He asks this Court to absolve Otto and Uber of their obligations to produce relevant information because they agreed to try to use the privilege as a shield with respect to incriminating information. But nothing in Mr. Levandowski's recounting of the existence of various disparate privileges -- the Fifth Amendment privilege, the attorney-client privilege, the joint defense privilege -- suggests that those privileges can be muddled together to provide a basis for the exceptional relief requested here.

Mr. Levandowski's personal privilege against *self*-incrimination is simply not implicated by Uber's production of a privilege log, by Uber's production of the due diligence report, or by Uber's

(or Otto's) production of any other information or documents.  And with respect to the attempt to use the common interest doctrine to extend the attorney-client privilege, Uber conceded that there is a conflict, not a common legal interest, between itself and Mr. Levandowski with respect to at least the due diligence report's references to one or more of the 14,000+ confidential and trade secret documents that Mr. Levandowski took from Waymo.  To the extent Uber and Mr. Levandowski are asserting otherwise -- *i.e.*, that they actually did have a common legal interest with respect to the downloaded documents prior to the acquisition -- the crime-fraud exception to the attorney-client privilege applies.

No matter how one views the issue, Uber and Otto must produce all information that is relevant to the 14,000+ downloaded documents.  No Fifth Amendment or joint defense privilege applies.

Furthermore, Mr. Levandowski's formal but baseless assertion of his privilege against self-incrimination beyond what is allowed under Supreme Court precedent makes clear that an adverse inference will be appropriate when considering Waymo's motion for a preliminary injunction.  Mr. Levandowski's assertion of his self-incrimination privilege will thwart Waymo's ability to prosecute its civil claims against Uber and Otto in this forum.  An adverse inference that Uber is knowingly using Waymo trade secrets in the development of its self-driving cars will be warranted.

## ARGUMENT

### I. MR. LEVANDOWSKI'S PERSONAL PRIVILEGE AGAINST SELF-INCRIMINATION IS IRRELEVANT TO UBER'S PRODUCTION OF DOCUMENTS OR INFORMATION

Mr. Levandowski's Motion is based on an erroneous premise -- namely, that ***Uber*** could somehow violate ***Mr. Levandowski's*** Fifth Amendment privilege against ***self***-incrimination.  In reality, Mr. Levandowski's right to avoid incriminating himself has nothing to do with Uber's obligation to produce documents, a privilege log, or any other information that might incriminate Mr. Levandowski.

The Fifth Amendment right "protects a person ***only*** against being incriminated by ***his own*** compelled testimonial communications." *Fisher v. United States*, 425 U.S. 391, 409 (1976) (emphasis

added).  As the Supreme Court has explained, "[t]he Constitution explicitly prohibits compelling an accused to bear witness 'against himself'; it necessarily does not proscribe incriminating statements elicited from another . . . .  It is extortion of information from the accused himself that offends our sense of justice."  *Couch v. United States*, 409 U.S. 322, 328 (1973) (emphasis added).  Accordingly, the Fifth Amendment privilege is considered to be a "personal privilege":  "it adheres basically to the person, not to information that may incriminate him. . . ."  *Id.*

Mr. Levandowski asks this Court to contravene this Supreme Court precedent.  Mr. Levandowski repeatedly argues that "Uber received information protected from disclosure by the Fifth Amendment" and thus "cannot disclose it."  (*E.g.*, Dkt. 147 at 5.)  But ***information*** on its own is ***not*** protected by the Fifth Amendment.  Mr. Levandowski can assert his Fifth Amendment privilege to avoid providing information that tends to incriminate himself; Mr. Levandowski cannot assert his Fifth Amendment privilege to preclude others from providing evidence against him.

Because Mr. Levandowski's personal self-incrimination privilege does not, by definition, extend to Uber and because Uber, as a corporation, does not have its own Fifth Amendment privilege to assert, *Braswell v. United States*, 487 U.S. 99, 105 (1988) ("a corporation has no Fifth Amendment privilege"), the Fifth Amendment simply has no relevance to whether or not Uber should produce any particular documents or information in this case.  Uber must produce the due diligence report, as well as any other relevant documents improperly being withheld pursuant to Mr. Levandowski's assertion of the Fifth Amendment, or -- if there were a viable claim of attorney-client privilege (*but see infra* Parts III, IV) -- Uber must log the report or other documents pursuant to this Court's Supplemental Order To Setting Initial Case Management Conference In Civil Cases 16.[1]

**II.   EVEN IF THE SELF-INCRIMINATION PRIVILEGE WERE RELEVANT AT ALL, MR. LEVANDOWSKI HAS NOT SATISFIED THE REQUIREMENTS NECESSARY TO INVOKE IT HERE**

Even assuming, *arguendo,* that ***Mr. Levandowski's*** personal self-incrimination privilege could somehow be relevant to the production of documents or information by ***Uber***, Mr. Levandowski has not met his burden to show that his self-incrimination privilege is properly invoked with respect to

---

[1] Otto must do the same.

Uber's due diligence report. *See United States v. Brown*, 918 F.2d 82, 84 (9th Cir. 1990). To be clear, Mr. Levandowski's theft of 14,000+ confidential and trade secret documents from Waymo may well subject him to criminal liability. But Mr. Levandowski has not shown that the compelled production of the due diligence report specifically (or a privilege log describing the due diligence report) increases the risk of criminal liability.

To be sure, the compelled production of documents or a privilege log may be tantamount to incriminating testimony (such that the Fifth Amendment may properly be invoked) if the documents or log reveal "that the documents exist, are in [the witness'] possession or control, and are authentic." (*See* Dkt. 147 at 3 (citing *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 649 (C.D. Cal. 2005); *id.* at 7 (citing *United States v. Hubbell*, 530 U.S. 27, 32-36 (2000)).) But Mr. Levandowski and Uber have openly acknowledged each of these facts already. They have conceded the existence and authenticity of the due diligence report by, for example, acknowledging that "prior to the acquisition of Otto Trucking LLC and Ottomoto LLC, Uber Technologies, Inc. obtained a due diligence report prepared by a third party." (Dkt. 147 at 12; *see also id.* at 3.) And Uber has conceded that a copy of that due diligence report is in its possession or control, stating that it intends to include the due diligence report on a privilege log. (*Id.* at 2 (noting the question of "precisely how detailed Uber's counsel must be in listing on its privilege log the due diligence report prepared by a third party").)

Where, as here, the potentially protectable facts of existence, possession or control, and authenticity are already known, the Fifth Amendment (assuming it applied) would not be implicated by compelled production, as it is a "foregone conclusion" that the Government could identify and subpoena the documents at issue. *Fisher*, 425 U.S. at 410 (where "[t]he existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers [,] . . . enforcement of the summons" does not touch upon constitutional rights); *United States v. Bright*, 596 F.3d 683, 692 (9th Cir. 2010) ("For this foregone conclusion exception to apply, the government must establish its independent knowledge of three elements: the documents' existence, the documents' authenticity and respondent's possession or control of the documents."). The fact that the due diligence report itself

likely contains incriminating information -- *i.e.*, that it references one or more of the 14,000+ downloaded documents -- is irrelevant to the analysis here: the Fifth Amendment does not protect the contents of pre-existing, voluntarily prepared documents, even if incriminating. *Fisher*, 425 U.S. at 409-10 ("[T]he preparation of all of the papers sought in these cases was wholly voluntary, and they cannot be said to contain compelled testimonial evidence.").

In sum, even if Mr. Levandowski's Fifth Amendment right was implicated by the production of evidence by Uber (which it is not), that right does not prevent the production of a due diligence report that the public already knows exists, that the public already knows Uber sought, and that the public already knows is in Uber's possession or control. Uber must produce the report. If Uber believes there is a viable claim of an applicable privilege (*but see infra* Parts III, IV), it must describe the report in a privilege log pursuant to this Court's Supplemental Order To Setting Initial Case Management Conference In Civil Cases 16.

### III. THE COMMON INTEREST DOCTRINE DOES NOT APPLY TO THE DUE DILIGENCE REPORT BECAUSE EITHER (I) THERE WAS NEVER ANY COMMON LEGAL INTEREST REGARDING THE 14,000+ WAYMO DOCUMENTS OR (II) COMMUNICATIONS MADE PURSUANT TO A COMMON LEGAL INTEREST WERE IN FURTHERANCE OF A CRIME -- PRODUCTION IS REQUIRED

Because Mr. Levandowski's Fifth Amendment right has no bearing on whether Uber should produce the due diligence report (or any other documents or information), the real issue here is Mr. Levandowski's claim that Uber should withhold the due diligence report based on Mr. Levandowski's assertion of the common interest doctrine. Of course, Uber has not yet provided all of the information -- including the identity of the third-party author of the due diligence report -- that is necessary to fully evaluate a claim of privilege. Even so, with just the information that Uber has provided to date, it is already abundantly clear that either (i) the due diligence report is not subject to the common interest doctrine, or (ii) the crime-fraud exception would defeat the underlying privilege claim. In either instance, Uber should be required to produce the due diligence report.

The party claiming a joint defense privilege has the burden of proving the privilege exists. *Holmes v. Collection Bureau of Am., Ltd.*, No. C 09-02540 WHA, 2010 WL 143484, at *2 (N.D. Cal. Jan. 8, 2010) ("The burden of establishing that the attorney-client privilege–and by

extension the joint defense [or common interest] exception–applies is on the party asserting the privilege."). In order for the joint defense privilege to attach, "the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement." *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012); *see also In re Rivastigmine Patent Litig.*, No. 05 MD 1661 (HB/JCF), 2005 WL 2319005, at *4-*5 (S.D.N.Y. Sept. 22, 2005) (finding "any privilege that might otherwise attach has been waived" in part because the party asserting privilege "failed to satisfy the second prong of the test for application of the common interest doctrine: it has not demonstrated that, as a practical matter, it ever pursued a common legal strategy"). A shared commercial interest is insufficient to support the doctrine, *Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601, 2014 U.S. Dist. LEXIS 111642, at *11 (N.D. Cal. Aug. 11, 2014), and the application of the doctrine in the pre-acquisition due diligence context is nowhere near automatic, *id.*; *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 579-80 (N.D. Cal. 2007). Yet Mr. Levandowski has not even attempted to meet his burden to show that he and Uber actually pursued any common legal strategy or that the due diligence report (or any other information being withheld on similar grounds) advanced a common legal strategy.

Uber, however, has made clear that there is **not** a common legal interest with respect to Mr. Levandowski's taking of 14,000+ documents from Waymo. Uber has stated that it "is differently situated than Mr. Levandowski" and that Morrison & Foerster "obviously ha[s] a conflict" representing both Uber and Mr. Levandowski with respect to issues related to those documents. (3/29/17 Hr'g Tr. at 17:15-20, 35:15-22.) Given that, it is difficult to see what common legal interest it shared with Mr. Levandowski with respect to the 14,000+ Waymo documents in the context of its 2016 due diligence (which was presumably conducted to determine whether and on what terms it should proceed with a possible acquisition of Otto). If there was no common legal strategy with respect to the taking of the 14,000+ Waymo documents at the time of the due diligence report, then the common interest doctrine does not apply to that subject matter, and Uber should produce the report. *See, e.g.*, *Thought*, No. 12-cv-05601, 2014 U.S. Dist. LEXIS at *10-11; *Nidec*, 249 F.R.D. at 579-80; *Integrated Global Concepts Inc. v. j2 Global, Inc.*, No. 12–cv–03434–RMW, 2014 WL

232211, at *2 (N.D. Cal. Jan. 21, 2014); *Elan Microelectronics Corp. v. Apple, Inc.*, No. 09–01531 RS, 2011 WL 3443923, at *2 (N.D. Cal. Aug. 8, 2011).

If, however, Uber and Mr. Levandowski did have a common legal strategy with respect to the taking of 14,000+ documents from Waymo, then the privilege created by the Joint Defense Agreement among Uber, Mr. Levandowski, Otto, and others should be defeated by the crime-fraud exception.[2] The crime-fraud exception applies where (1) "the communications were in furtherance of an intended or present illegality" and (2) "there is some relationship between the communications and the illegality." *United States v. Edison*, No. CR 07-0074 WHA, 2008 WL 170660, at *3 (N.D. Cal. Jan. 17, 2008) (quoting *In re Grand Jury Proceedings*, 87 F.3d 377, 380 (9th Cir. 1996)). The crime-fraud exception "applies with equal force" to attorney-client communications and work product. *Id.* at *3, *5.

Uber concedes that the due diligence report is relevant to Mr. Levandowski's taking of 14,000+ confidential and trade secret Waymo documents, as Uber has said that it plans to list the report on a privilege log in response to this Court's Order to produce any documents that refer to any part of the material downloaded by Mr. Levandowski. (Dkt. 61 ¶ 4; 3/29/17 Hr'g Tr. at 12:22-13:1.) And the attempt by Mr. Levandowski to extend his self-incrimination privilege to preclude the production of even the most basic information about the due diligence report confirms the criminal nature of Mr. Levandowski's conduct.[3] Thus, if Uber asserts that there was

---

[2] Any such privilege would also be waived in light of the fact that a third party authored the due diligence report. (Dkt. 147 at 3.) Disclosure of otherwise privileged communications to third parties waives the privilege. *United States v. Richey*, 632 F. 3d 559, 566 (9th Cir. 2011). Neither Uber nor Mr. Levandowski should be permitted to avoid waiver by refusing to disclose the identity of the third-party author of the due diligence agreement; if the third party is not identified, the burden of showing that a privilege exists has simply not been met. *E.g.*, *Chrimar Systems Inc. v. Cisco Systems Inc.*, No. 13-cv-01300, 2016 WL 1595785, at *7 (N.D. Cal. Apr. 21, 2016) (finding that plaintiffs did not meet burden of showing privileged status of communications where emails included unknown senders and recipients); *Go v. Rockefeller Univ.*, 280 F.R.D. 165, 175 (S.D.N.Y. 2012) (finding privilege log insufficient to the extent it failed to identity the identities, titles and roles of the authors, recipients and those copied, because "[w]ithout this information, the assertions of privilege are difficult to assess in many instances").

[3] Mr. Levandowski explicitly conceded that "in the civil context," the self-incrimination privilege cannot be invoked unless he "reasonably believes that his disclosures could be used in a criminal

a common legal interest between it and Mr. Levandowski regarding the 14,000+ Waymo documents at the time the due diligence report was prepared, such common legal interest was most likely created specifically to avoid disclosure of a crime in the context of legal proceedings like this one.[4]

In sum, either there was no common legal interest between Uber and Mr. Levandowski regarding the 14,000+ Waymo files in the time period leading up to Uber's acquisition of Otto or the crime-fraud exception most likely applies to any joint defense privilege being asserted with respect to those files. In either scenario, the due diligence report and all other documents in Uber's or Otto's possession or control that relate to the 14,000+ Waymo files should be produced.[5]

## IV. AN ADVERSE INFERENCE IS APPROPRIATE

Mr. Levandowski has now formally invoked his self-incrimination privilege in the most expansive way possible[6] -- by attempting (improperly) to prevent Uber from producing incriminating evidence against him. Mr. Levandowski -- with no objection from Uber -- is essentially asking that Waymo be precluded from learning anything about, not only Mr. Levandowski's theft of Waymo's confidential and trade secret information, but also Uber's knowledge and conduct in light of that

---

prosecution or could lead to other evidence that could be used in that manner." (Dkt. 147 at 6 (internal quotations and citations omitted).)

[4] If Mr. Levandowski has some other position, he has waived it for failure to make any showing regarding the applicability of the common interest doctrine in his Motion. If Uber has some other position, it must say so and provide all the details necessary to test that position in discovery.

[5] Morrison & Foerster also has a separate ethical obligation to turn over to the Court the due diligence report, any Waymo confidential documents and trade secrets, and any other physical evidence of a crime. Formal Opinion No. 1986-89, State Bar of Cal., Comm. on Prof. Resp. & Conduct, *available at* http://ethics.calbar.ca.gov/LinkClick.aspx?fileticket= 8uqfb5Jq3K8%3D&tabid=841 ("Attorney's legal and ethical obligations will require the delivery to the court or to law enforcement physical evidence of a crime which comes into Attorney's possession and could require the Attorney to testify about the circumstances by which Attorney obtained such physical evidence.") Morrison & Foerster has likely had access to the due diligence report and any Waymo documents cited therein since at least the time that its attorney signed the joint defense agreement on behalf of Uber.

[6] Mr. Levandowski's stated intent to brief privilege issues serially (Dkt. 147 at 5 n. 1) should not be permitted to derail the schedule already set for preliminary injunction proceedings or the expedited discovery to follow in connection with the October trial date.

theft. Under such circumstances, the record is now even more clear that an adverse inference is appropriate.

Waymo has already demonstrated that Mr. Levandowski downloaded 14,000+ of its confidential and trade secret documents upon his resignation. (Dkt. 25-3 at 7-9, 11-12; *see also* Dkt. 25-31 (Declaration of Gary Brown) ¶¶ 12-23.) And Waymo has already shown that trade secrets found in the downloaded documents are now being used in Uber's custom LiDAR system. (Dkt. 25-3 at 10-16.)

Despite this, Mr. Levandowski remains an Uber executive in charge of Uber's self-driving car program. And while Uber's counsel has repeatedly refused to return the 14,000+ documents taken from Waymo by Mr. Levandowski, Uber's counsel continues to proffer information obtained from Mr. Levandowski when that information might advance Uber's and Mr. Levandowski's collective interests. Mr. Levandowski's assertion of his Fifth Amendment right and his "joint defense" privilege with Uber, along with Uber's failure to meet its own discovery obligations in reliance on Mr. Levandowski's positions, only makes it increasingly clear that Uber was aware of Mr. Levandowski's illegal conduct even before Uber acquired Otto and potentially that Uber worked in concert with Otto and Mr. Levandowski to hide that conduct. In any event, there is no question that Uber has now ratified Mr. Levandowski's behavior and is liable for it. Cal. Civ. Code 2310; *Ajaxo Inc. v. E*Trade Grp., Inc.*, 135 Cal. App. 4th 21, 67-68 (2005) (conduct of an employee who misappropriated trade secrets was ratified where company's "top management had the opportunity to know of and either ignore or actually approve of" the theft).

"Nothing forbids imputing to a corporation the silence of its personnel." *RAD Serv., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 275 (3d Cir. 1986); *see also Brinks, Inc. v. City of New York*, 717 F.2d 700, 709–10 (2d Cir. 1983) (drawing adverse inferences against a corporation based on assertion of Fifth Amendment privilege by non-party employees and former employees). The imputation is especially appropriate here, where Mr. Levandowski remains a high-level executive at Uber, Mr. Levandowski continues to cooperate with Uber when it suits their collective interests, Uber and Mr. Levandowski are both interested in the defense of this litigation, and Mr. Levandowski's conduct is relevant to several of Waymo's claims against Defendants. *See generally LiButti v. United*

*States,* 107 F.3d 110, 123–24 (2d Cir. 1997) (listing non-exclusive factors often considered in determining whether a non-party witness' invocation of his Fifth Amendment right is admissible as an adverse inference against a party in a civil case).

## V. CONCLUSION

Mr. Levandowski cannot assert his personal Fifth Amendment privilege against self-incrimination with respect to any discovery compelled from Uber. Mr. Levandowski cannot rely on a joint defense privilege with Uber if no common legal interest exists between Mr. Levandowski and Uber with respect to the 14,000+ documents taken from Waymo. And Mr. Levandowski cannot rely on a joint defense agreement with Uber entered into for the purpose of shielding incriminating evidence from discovery. Accordingly, there is no privilege on which Mr. Levandowski or Uber can rely to avoid production of the due diligence report -- or any other information in Uber's possession, custody, or control that relates to the 14,000+ downloaded Waymo documents.

With respect to Mr. Levandowski's formal, broad invocation of his Fifth Amendment privilege, the record only continues to become more clear that an adverse inference will be appropriate in the context of Waymo's preliminary injunction motion and at trial.

DATED: April 5, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC