**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

April 5, 2017

Writer's Direct Contact
+1 (415) 268.7020
AGonzalez@mofo.com

Honorable William Alsup
United States District Court
Northern District of California
450 Golden Gate Avenue
Courtroom 8 - 19th Floor
San Francisco, CA  94102

Re:   *Waymo LLC v. Uber Technologies, Inc. et al., Case No. 3:17-cv-00939*

Dear Judge Alsup:

Per your request, this letter responds to Waymo's letter, dated April 3, 2017.

Waymo's letter is based on two faulty premises: (1) that the 14,000 files of alleged trade secrets made their way into Uber's possession or control, and (2) that Uber has control over personal files that may belong to one of its employees, Mr. Levandowski.  Both premises are incorrect, as shown below.

1.      The Alleged 14,000 Files (the "Levandowski Files")

Uber cannot produce something it does not have.  To comply with this Court's March 15 Order, Uber interviewed 85 Uber employees who worked at Google previously in order to identify *any* Waymo or Google documents.  Uber also searched the company data for all three of the employees (one a former employee) mentioned in the complaint and motion for injunction.  In addition, Uber searched the personal mobile phone of one of those employees and searched the computers of seven other randomly-selected employees who work on autonomous vehicles and who formerly worked on LiDAR or Project Chauffeur while at Google.  Further, we also searched the entire Git repository (Uber's engineering and source code repository) for filenames and hash values.  In addition, we used 120 additional search terms (which have been provided to Google) in an effort to identify responsive documents.  The data reviewed as of last Friday totaled 12 TB (or the equivalent of **8.3 billion pages** of plain text).

To date, our forensics firm has not found any substantive hash matches (we say substantive because, as we will explain in our opposition this Friday, many of the files have common filenames such as "standard" or default outputs of the engineering software that are routinely generated, which led to mostly false hits).  Many other "hits" refer to documents that are publicly available, such as tutorial files for Altuium design software.

Twenty minutes before Waymo sent its letter to the Court, we wrote to Waymo offering to conduct additional searches and said:  "We would be happy to consider specific searches that you believe should be conducted."  (Ex. 1.)  Instead of offering suggestions, Waymo chose to file its letter.[1]

---

[1] On Monday, after reviewing Waymo's letter, where Waymo seeks permission to ask Uber to search 15 terms of its choice, Uber wrote to Waymo and offered to search those 15 terms.  (Ex. 2.)  Waymo did not respond to that offer and did not provide the 15 terms until the meet and confer session this morning.  In addition, for certain documents that can only be accessed with special software, Uber made a computer available yesterday

sf-3755557

MORRISON | FOERSTER

Honorable William Alsup
April 5, 2017
Page Two

As a result of our search, we located and produced approximately 3100 files that may or may not be Google or Waymo proprietary information. I wrote to Waymo's counsel last Friday and asked them to let us know if any of the documents we produced are considered by them to be Waymo confidential or trade secret information, and offering to purge any such documents from Uber's files, with their consent. (*See* Dkt. 135-1 at 5.) Five days later, Waymo's counsel have not identified *any* confidential or proprietary documents from the files that we produced on Friday. At today's meet and confer, I told counsel for Google that Uber does not want any Waymo or Google documents on its property or on its servers, and that if they think anything we produced is proprietary, to let me know so that we can immediately delete it. Again, no document was identified.

We performed all of the work described above in an effort to be as diligent as possible within the time available to fulfill the terms of paragraph 4 of the Court's March 15 Order. We do not think it would have been practical to do more in the two weeks we had to comply. Nevertheless, as noted in Court this morning, we remain willing to do more in order to demonstrate and confirm that Uber does not have the alleged downloaded files or documents. We will be utilizing the 15 search terms provided by Google to look for the 50 file names provided by Google. If we find any additional documents, they will be produced.

2.      Personal Documents That May Be in the Possession of an Employee

Waymo has requested sanctions on the basis that Uber has not forced Mr. Levandowski to produce documents that might be in his possession, and that his personal counsel has advised him not to produce. That request is improper. First, Waymo made the tactical decision to bring this action in this Court and chose *not* to name Mr. Levandowski as a defendant. Second, Waymo has made the tactical decision *not* to serve Mr. Levandowski with a third party subpoena. Third, as this Court knows, Mr. Levandowski has obtained separate counsel who are advising him of his rights.

Uber cannot compel any employee to produce personal records, and Uber does not have "control" over any such records. In the Ninth Circuit, for purposes of discovery, "[c]ontrol is defined as the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (citing *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989)). The party seeking to compel production has the burden to prove the documents are in the opposing party's legal control. *Int'l Union of Petroleum & Indus. Workers*, 870 F.2d at 1452.

Applying this broadly accepted definition of "control," courts have found that corporations have no legal duty to produce e-mails from their employees' non-company or personal e-mail accounts, even when those e-mails might be work-related. For example, in *Matthew Enter., Inc. v. Chrysler Group LLC*, No. 13-cv-04236-BLF, 2015 WL 8482256, at *3 (N.D. Cal. 2015), a defendant moved to compel a corporate plaintiff to produce e-mail from its employees' personal accounts. Plaintiff did not provide its employees with work e-mail accounts, and they therefore transacted most or all of the company's business using their personal accounts. The defendant argued that the corporate plaintiff had "control over its company information," even if it was stored on the personal accounts of its own employees, and therefore argued that plaintiff must produce those relevant e-mails in discovery—just as it would for e-mail sent over its own systems.

Judge Grewal disagreed and denied the motion to compel; finding that e-mail from the employees' personal accounts was beyond the permissible scope of discovery because the plaintiff corporation lacked any "legal right" to the e-mails. (*Id.* at *3-4.) The court reasoned, as others have, that "[o]rdering a party to produce documents that it does not have the legal right to obtain will oftentimes be futile, precisely because the party

---

and Waymo was able to review those documents. And, the metadata that was missing from the original production was produced on Monday.

MORRISON | FOERSTER

Honorable William Alsup
April 5, 2017
Page Three

has no certain way of getting those documents." (*Id.* at *4, quoting *In re Citric Acid*, *supra*, 191 F.3d at 1108; *see also Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. 12-cv-2582 CW (JSC), 2013 WL 1767960, at *3 (N.D.Cal. 2013) (denying motion to compel party to produce personal e-mail from Gmail account); *Cotton v. Costco Wholesale Corp.*, No. 12-2731-JW, 2013 WL 3819974, at *6 (D. Kan. 2013) (Costco not required to produce even relevant text messages or e-mails from its employees' personal devices, because those devices were not within Costco's control).)

Significantly, "legal right to obtain the documents upon demand" is *not* the same as a practical ability to get the documents by, for example, threatening to fire the employee who does not turn them over. "Like the majority of circuits, the Ninth Circuit has explicitly rejected an invitation 'to define 'control' in a manner that focuses on the party's practical ability to obtain the requested documents.'" *Matthew Enter.*, 2015 WL 8482256, at *3 (quoting *In re Citric Acid Litig.*, 191 F.3d at 1107). The "legal right" test is more exacting and requires there be a legal basis for a party to compel an employee to turn over his personal devices, so that the party can then, in turn, produce them in discovery. *See id.* Waymo has asserted no such basis in this case, and has failed to carry its burden to show the documents it requests are in Defendants' control.

3.      The Purported Failure to Confer

Last week, Waymo's counsel complained that Uber lawyers were not adequately conferring before filing documents with the Court. The shoe is now on the other foot. Waymo's counsel wrote to me on Saturday and demanded to confer about our document production. I wrote back on Sunday and offered to meet with them in person following a deposition Monday morning. (Dkt. 135-1 at 1.) When they complained that that would not suffice, I wrote to them on Sunday evening with some of the information they requested and told them we would get back to them on Monday on their remaining questions. (*Id.* at 1.) In Court today, Google's counsel stated that after the deposition on Monday, I refused to confer. That is inaccurate. At the end of Monday's deposition, the Waymo lawyer who defended the deposition told me that she was not the appropriate person to confer on these topics. I told her that was fine and that we would send them a written response to their remaining questions. We sent them an email at 12:19pm with the information they requested. They filed their letter 20 minutes later.

From the time that they filed their motion for preliminary injunction, Waymo has led this Court to believe that every day matters, and that the 14,000 files that were allegedly misappropriated are critical documents that they must retrieve immediately. Waymo filed this complaint on February 23, 2017. It filed its motion for preliminary injunction two weeks later. Has the Court noticed that at no point does Waymo tell the Court *when* it learned of the alleged misappropriation of these 14,000 files? This is not an accident.

Waymo learned of the alleged misappropriation in October—five months before it filed its motion for injunction demanding expedited consideration. (Ex. 3 at 31:21-24.) Waymo sat on its hands for five months, made the tactical decision not to sue the person who they claim took the files, and now wants sanctions because Uber has not produced documents on two weeks' notice that Uber most likely never had.

There are two sides to every story.

Sincerely,

*[signature]*

Arturo J. González
Counsel for Uber


sf-3755557