QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa J. Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| WAYMO LLC,<br><br>    Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>    Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO'S RESPONSE TO UBER'S REDACTED PRIVILEGE LOG** |
|---|---|

## I. NO FIFTH AMENDMENT RIGHT IS IMPLICATED HERE

Mr. Levandowski cannot obstruct the production by others of information that may incriminate him. *Couch v. United States*, 409 U.S. 322, 328 (1973). Rather, Mr. Levandowski's privilege against self-incrimination is a personal privilege; he is free to assert it when *his* testimony or the production of *his* documents is requested. Waymo is not aware of any case holding that an individual claiming the personal privilege against self-incrimination can redact someone else's privilege log or otherwise interfere with someone else's document production. Mr. Levandowski has not cited any such case. *Mr. Levandowski's* privilege against *self*-incrimination provides no justification for redacting *Uber's* log of documents in *Uber's* possession, thus concealing information regarding the assertion of other privileges.

Although this should end the inquiry, it is also notable that the un-redacted portions of the privilege log provided to Waymo confirm both the existence of the due diligence report/exhibits and the source of those documents as "Uber In-House Counsel." So, contrary to Mr. Levandowski's arguments, production of the un-redacted log would not provide any additional "links in the chain" leading to incriminating evidence. (Hrg. Tr. 24:13-24.) The supposed "links in the chain" are known already. The documents on the log are held by Uber, its counsel, and (unless they were destroyed) by every one of the recipients listed on the log. The government can subpoena those documents from any of these sources at any time. And once it does, it will also have the very information that Mr. Levandowski seeks to redact – the identity of the author of the report, the subject matter of the report, and the content of the report's exhibits – and will be able to subpoena the unidentified third-party for additional evidence. In sum, as has been clear from the very first time the "due diligence report" was first mentioned at the March 29 hearing, production of the un-redacted privilege log does not affect the likelihood that Mr. Levandowski will be criminally prosecuted or point to any otherwise unknowable incriminating evidence. *See Moore v. Gilead Sciences, Inc.*, No. C 07–03850 SI, 2011 WL 5572975, at *7-*8 (N.D. Cal. Nov. 16, 2011) (right to refuse production of documents under the Fifth Amendment only exists with respect to unknown documents); *see also Fifth Third Bank v. Racine Motorsports, Ltd.*, No. 09–CV–05198, 2010 WL 2178781, at *3 (N.D. Ill. May 28, 2010). This confirms that the conclusion above—that Mr. Levandowski's personal privilege against self-

incrimination cannot be asserted here—is appropriate.

## II. UBER HAS FAILED TO MEET ITS BURDEN TO DEMONSTRATE THAT ANY COMMON INTEREST PRIVILEGE APPLIES

Not only is it clear that there is no relevant Fifth Amendment privilege here, but the redacted log also shows that there is no basis for the common interest privilege asserted with respect to every single entry in the log. The *only* supposed basis for that privilege is indicated in footnote 1, which cites to the joint defense agreement referenced at this morning's hearing. But the mere citation to a JDA is insufficient to establish a common interest privilege. (If it was, than the mere entry into such an agreement could protect nearly anything.) Instead, the proponent of the privilege must also show that the parties actually pursued a common legal strategy and that the logged communications were made in furtherance of that strategy. *E.g.*, *Holmes v. Collection Bureau of America, Ltd.*, No. C 09-02540 WHA, 2010 WL 143484, at *2 (N.D. Cal. Jan. 8, 2010); *In re Rivastigmine Patent Litig.*, No. 05 MD 1661 (HB/JCF), 2005 WL 2319005, at *4-*5 (S.D.N.Y. Sept. 22, 2005). Mr. Levandowski and Uber were each given an opportunity to identify the common legal strategy that existed purportedly pursued *before* the acquisition – that is, while Uber was supposedly conducting due diligence on Otto. (Hrg. Tr. 7:21-8:3, 27:5-6.) No explanation was provided, and the log is silent as on the subject. Accordingly, any common interest privilege that might have existed should be deemed waived. (Suppl. Order to Order Setting CMC ¶ 16.)

Despite the silence on the issue, however, even in redacted form, the log plainly suggests that Uber, Otto, and Mr. Levandowski entered into their purported JDA for the improper purpose of attempting to shield unlawful conduct by one or more them. This inference flows easily from Mr. Levandowski's attempt to broadly assert the Fifth Amendment to preclude Uber's disclosure of *any* description of 36 documents on the log. Thus, if the Court does not find that any common interest privilege was waived (or never existed), it should find that the crime-fraud exception applies.

## III. DEFENDANTS' CONTINUED PATTERN OF OBFUSCATION SHOULD RESULT IN THE WAIVER OF ANY OTHERWISE APPLICABLE PRIVILEGE

The redacted log also further shows the continued obfuscation of facts by Uber. Uber asserts the work product privilege for 28 documents, each described as "attachment to Investigation

Report." Uber has – without explanation or justification – refused to identify even the *author* of those attachments, incredibly claiming that even the identification of the author is somehow "work product." (note**.)  Nor has Uber logged the date of any of those attachments, contending that the date is irrelevant because the basis for the work product privilege is the fact of attachment to the report rather than the content of the document itself.  But Uber cannot cloak non-privileged documents in a privilege merely by attaching them to something else.  *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999).  That is, attaching Waymo's confidential documents to a due diligence report, for example, would not convert Waymo's documents into Uber's work product.  Similarly, forensic data does not become privileged merely because a choice is made to analyze that data in a due diligence report (Nos. 7-10), yet no forensic data was produced by Uber in response to ¶ 4 of the Court's March 16 Order.  Uber also skimps on logging the recipients of documents, identifying entire law firms rather than specific persons receiving each purported privileged or protected communication.  And Uber fails to provide any assurance that the third-party author of the due diligence report has not waived any otherwise applicable privilege.

All told, the log raises more questions about the privileges asserted than it answers.  Uber has had a full and fair opportunity – both in its log and at this morning's hearing – to establish that documents have been properly withheld.  It has failed to provide the information required to make such a showing, and the Court should order the production of the due diligence report and its exhibits.

Finally, the Court may order production of work product if there is a substantial need for the information and an inability to obtain the substantial equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3)(A).  Mr. Levandowski's broad assertion of his Fifth Amendment privilege creates a substantial and compelling need for production, as the documents withheld by Uber may be the only source of certain evidence.[1]  The logged documents should be produced on this basis as well.

---

[1] *In re John Doe Corp.*, 675 F.2d 482, 492 & n.10 (2d Cir. 1982) (substantial need where "potential witnesses have invoked the privilege against self-incrimination"); *In re Vitamins Antitrust Litig.*, No. 99-197, 2003 WL 1868908, at *1 (DDC Jan. 24, 2003) (substantial need where "witnesses whose testimony was recorded in the materials have now asserted their Fifth Amendment rights"); *In re Crazy Eddie Sec. Litig.*, No. 87-cv-33, 1991 WL 17287 (EDNY Jan. 28, 1991).

DATED: April 6, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Charles K. Verhoeven
Charles K. Verhoeven
Attorneys for WAYMO LLC