MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:     415.268.7000
Facsimile:      415.268.7522

Attorneys for Defendants
UBER TECHNOLOGIES, INC.,
OTTOMOTTO LLC, and OTTO TRUCKING LLC

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone:     202.237.2727
Facsimile:      202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC, and OTTO TRUCKING LLC,<br><br>             Defendants. | Case No.   3:17-cv-00939-WHA<br><br>**DECLARATION OF SAMEER KSHIRSAGAR IN SUPPORT OF DEFENDANTS' OPPOSITION TO WAYMO'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: May 3, 2017<br>Time: 7:30 a.m.<br>Ctrm: 8, 19th Floor<br>Judge: The Honorable William Alsup<br><br>Trial Date: October 2, 2017 |

**REDACTED VERSION OF DOCUMENT SUBMITTED UNDER SEAL**

I, Sameer Kshirsagar, declare as follows:

1. I am Director of Global Product Operations for Uber Technologies, Inc.'s ("Uber") Advanced Technologies Group and served in the same function for Ottomotto LLC ("Otto") and Otto Trucking LLC before Uber's acquisition of Otto in August 2016. I understand that Waymo has filed a lawsuit against Uber and Otto in the U.S. District Court for the Northern District of California. I submit this declaration in support of Uber and Otto's Opposition to Waymo LLC's ("Waymo") Motion for Preliminary Injunction. I have personal knowledge of the facts set forth in this declaration and, if called to testify as a witness, could and would do so competently.

2. I joined Otto on July 25, 2016, as its Director of Supply Chain. After Uber completed its acquisition of Otto, in October 2016, my title changed to Director of Technical Product Operations. In January 2017, my title changed to Director of Global Product Operations at Uber.

3. Prior to joining Otto, I was a Global Supply Manager in Google's Self-Driving Cars division, now Waymo, from August 2015 to July 2016. I first joined Google's Self-Driving Car division as a Manufacturing Engineer in March 2015.

4. I signed an offer letter when I joined Otto, and signed another offer letter with Uber when it acquired Otto. Both letters included provisions regarding third-party intellectual property ("IP") and confidential information, instructing employees not to bring with them and use the IP and/or confidential information of any other companies. My Otto offer letter provided that "Company does not want you to, and hereby directs that you must not, bring to Company, or otherwise use in connection with performing any services on behalf of the Company, any intellectual property rights or other proprietary or confidential material or information of any former employer or other third party. Accordingly by signing this Offer Letter you represent and warrant that you will not bring to Company, or otherwise use in connection with performing any services on behalf of the Company, any intellectual property rights or other proprietary or confidential material or information of any former employer or other party." My Uber offer letter similarly provided that "In connection with your Employment, you shall not use or disclose any

2

1  trade secrets or other proprietary information or intellectual property in which you or any other
2  person has any right, title or interest and your Employment will not infringe or violate the rights
3  of any other person.  You represent and warrant to the Company that you have not taken, and
4  have returned, all property and confidential information belonging to any prior employer."
5  Attached as Exhibits 1-2 to this Declaration are copies of my signed offer letters.

6.  5.   I have reviewed the allegations about me in the redacted versions of the Declarations of Gary Brown and Tim Willis in Support of Waymo's Motion for a Preliminary Injunction ("Brown Declaration" and "Willis Declaration").

6.   I did not take any confidential Google/Waymo documents with me upon my departure from Google/Waymo for use at Uber and/or Otto.  I have not used any confidential Google/Waymo documents or information in my work for Uber and/or Otto.  I was never directed by anyone, at Uber or Otto, or otherwise, to take confidential documents or information from Google or Waymo.

7.   When I joined Otto (and after Uber's acquisition of Otto), I spent much of my time building, structuring, and integrating new and existing employees into my department.  The majority of the employees in my department did not come from Waymo or Google.

8.   The Brown Declaration and Willis Declaration allege that I exported five documents from Google Drive in June and July 2016, as listed below:

**Brown Declaration, Paragraphs 24-28; Willis Declaration, Paragraph 7**

- ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ [allegedly exported on June 3, 2016] (**Willis Decl. Ex. B**) ("Laser questions")
- ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ [allegedly exported on June 14, 2016] (**Willis Decl. Ex. C**) ("Ramp Checklist")
- ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ [allegedly exported on June 21, 2016] (**Willis Decl. Ex. D**) ("and Packaging")
- ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ [allegedly exported on June 22, 2016] (**Willis Decl. Ex. E**) ("Lens Placement-01")

- ██████████████████████████████████████ [allegedly exported on July 12, 2016] (**Willis Decl. Ex. F**) ("All things")

9. In response to Paragraphs 24-28 of the Brown Declaration and Paragraph 7 of the Willis Declaration, I did not take copies of the identified documents with me from Waymo for use at Uber or Otto.

10. I have provided my personal phone, my work-issued phone, and my work-issued laptop to counsel for forensic examination.

11. Two of the documents – Willis Decl. Exs. D and E, the "and Packaging" and "Lens Placement-01" documents, respectively – were documents I created during the course of my work at Waymo. After I created them, I continued to access them through my Waymo-issued laptop as part of my job responsibilities. When I announced my intent to leave Waymo, I was asked by Tim Willis to create a transition memorandum and collect transition documents to transition my responsibilities to my successors, Aurelien Chouard, Daniel Munoz, and Jai Krishnan. That memorandum has been produced in this case and is attached hereto as Exhibit 3. As part of this process, I reviewed certain documents, including the ones that are identified in the Brown and Willis Declarations as "and Packaging" (Willis Decl. Ex. D) and "Lens Placement-01" (Willis Decl. Ex. E). The "and Packaging" document is one in which I compared three potential vendors to determine the best path forward. The "Lens Placement-01" document was a statement of work, or SOW, which I created and then updated at the request of Tim Willis, who asked me to document the current status of my work relative to lens placement automation with a vendor named ████████████ Both of these documents are referenced in the transition memorandum. The "and Packaging" document is referred to by title on page 2 of the transition memorandum, in the second bullet, third sub-bullet. It is underlined, indicating that it is hyperlinked to the document itself. The "Lens Placement-01" document would have informed the second bullet, second sub-bullet on page 1, which says "█████ SOW for the Lens Placement Automation has been fully executed and PO's are being placed."

12. The transition memorandum was created for the purpose of my successors. When

4

1  I left Waymo, I turned in my Waymo-assigned laptop and phone to Derek Ivy at Waymo's
2  TechStop.  I did not take the transition memorandum or transition documents with me.
3       13.   With respect to the "Ramp Checklist" (Willis Decl. Ex. C), this was a file that,
4  although I do not have a specific recollection of doing so, I believe that I may have forwarded to
5  my personal phone in order to review it in the course of my work at Waymo.  The "Ramp
6  Checklist" document was prepared to assist Waymo in documenting a process that could support
7  transitioning hardware ownership from the development team to the commercial team.  I needed
8  to read and understand this document to assist in the transition, and give feedback to my
9  successors and others who had recently joined the team.  I have not accessed this file since
10 leaving Waymo.  I have provided my personal phone to my legal counsel so that the phone can
11 undergo forensic examination and this document can be returned to Waymo.
12      14.   With respect to the "All Things" document (Willis Decl. Ex. F), I believe this was
13 one document in a three-part series that would have been prepared for a weekly presentation that I
14 and my counterparts supporting the LiDAR team could attend for the purpose of listening,
15 technical growth, and improving my ability to support the team in the course of my work at
16 Waymo, not for any future use.  I do not have a specific recollection of accessing this document.
17 I do recall accessing another document in this three-part series, and I may have forwarded that
18 document to my personal phone to review it in the course of my work.  I have not accessed this
19 file since leaving Waymo.  I have provided my personal phone to my legal counsel so that the
20 phone can undergo forensic examination and this document can be returned to Waymo.
21      15.   **Willis Decl. Ex. B**, the "Laser Questions" document, appears to have been
22 prepared by a Waymo LiDAR team member for a weekly presentation that I and my counterparts
23 supporting the LiDAR team could attend for the purpose of listening, technical growth, and
24 improving my ability to support the team.  This is a file that, although I do not have a specific
25 recollection of doing so, I believe I would have accessed simply to read it in the course of my
26 employment at Waymo.  If it was a document forwarded to my personal phone as part of my
27 work at Waymo, I have provided my personal phone, my work-issued phone, and work-issued
28

5

laptop to counsel for forensic examination. If it was a document downloaded to my Waymo-assigned laptop as part of my work at Waymo, I turned in that laptop to Derek Ivy at the TechStop when I left Waymo.

16. I have not used any information from the files listed in Paragraphs 24-28 of the Brown Declaration and Paragraph 7 of the Willis Declaration in my work at Uber and Otto.

17. I understand that Waymo's First Amended Complaint alleges in Paragraphs 51-52 that a former Waymo supply chain manager knew of the identity of an allegedly confidential vendor that Waymo ultimately engaged to provide manufacturing services. I do not know which vendor is referenced in these allegations, nor do I know which vendors Waymo ultimately engaged after July 2016.

18. Furthermore, I have not made any decisions regarding suppliers or vendors for Uber or Otto based on confidential information obtained from Google or Waymo. Before my arrival at Otto, the LiDAR team at Otto had already established relationships with certain vendors. Due to the growth of my team, I am not directly involved in choosing vendors for the LiDAR team. I have not given the LiDAR team, or my team, any confidential vendor information.

19. I note that vendor information is publicly available from forums such as the annual SPIE Photonics West convention at San Francisco's Moscone Center, which is one of the largest photonics technologies events in the world. Many vendors that provide components and services for LiDAR technology have exhibits and public demonstrations at events such as Photonics West. There were 1,300 companies at the most recent expo, which occurred from January 31 to February 2, 2017, which I attended. Additionally, I believe a number of high technology companies, including Apple, have published lists of their top vendors that are publicly available on their websites.

20. Before this lawsuit, I had never heard of the 14,000 files Waymo alleges that Anthony Levandowski downloaded.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 6th day of April, 2017, at San Francisco, California.

Sameer Kshirsagar