MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
UBER TECHNOLOGIES, INC.,
OTTOMOTTO LLC, and OTTO TRUCKING LLC

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Telephone: 202.237.2727
Facsimile: 202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DECLARATION OF RHIAN MORGAN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: May 3, 2017<br>Time: 7:30 a.m.<br>Ctrm: 8<br>Judge: Honorable William Alsup<br><br>Trial Date: October 2, 2017 |

I, Rhian Morgan, declare as follows:

1. I have been an employee of Uber Technologies, Inc. ("Uber") since August 24, 2016, and prior to that I served as HR Lead at Ottomotto LLC ("Otto"). I make this declaration in support of Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction and have personal knowledge of the facts stated herein.

2. Prior to Otto, I had worked in human resources, recruitment, and staffing for almost six years. From May 2015 to January 2016, I worked as a Mobile Delivery Specialist at consultative technology staffing firm K2 Partnering Solutions. From May 2011 to May 2015, I worked in HR and as a recruiter at ID Business Solutions.

3. I starting working at Otto in approximately January 2016. At that time, I was involved in matters related to payroll, benefits, and office space set up.

4. I was the first employee at Otto. In my role as HR Lead, I have been responsible for all aspects of human resources at Otto, including recruitment, hiring, on-boarding of new employees, and implementing Otto's related company policies. As part of my responsibilities, I also maintain employee personnel files, including the forms that document recruiting and hiring processes at Otto.

5. Since the formation of the company, Otto has taken measures against an employee's retention of confidential information from a former employer starting from the offer process. The offer letter provided by Otto explicitly prohibits an offeree from bringing any confidential information from his or her former employer:

> Company does not want you to, and hereby directs that you must not, bring to Company, or otherwise use in connection with performing any services on behalf of the Company, any intellectual property rights or other proprietary or confidential material or information of any former employer or other third party.

6. The offer letter requires an offeree to represent and warrant that he or she will not bring any confidential information from his or her former employer to Otto:

> Accordingly, by signing this Offer Letter you represent and warrant that you will not bring to Company, or otherwise use in connection with performing any services on behalf of the Company, any intellectual property rights or other proprietary or confidential material or information of any former employer or other party.

7. Attached as Exhibit A is a true and correct copy of an exemplar offer letter from Otto.

8. I am aware that, since the formation of the company in January 2016, Otto has made slight modifications to its offer letter. I have reviewed each version of the offer letter template, and each version contains the same language quoted above.

9. During the onboarding process for Otto, it was my normal business practice to provide an oral overview of the contents of the offer letter—including the prohibition against and representation and warranty regarding former employer information—with each new hire.

10. In the same period as signing the offer letter, a new Otto employee was also required to complete and execute an Employee Invention Assignment and Confidentiality Agreement ("EIACA"). Each Otto employee made the following representations in his or her EIACA:

> I represent that my performance of all the terms of this Agreement and my duties as an employee of the Company will not breach any invention assignment, proprietary information, confidentiality, non-competition, or other agreement with any former employer or other party. I represent that I will not bring with me to the Company or use in the performance of my duties for the Company any documents or materials or intangibles of my own or of a former employer or third party that are not generally available for use by the public or have not been legally transferred to the Company.

11. Attached as Exhibit B is a true and correct copy of an exemplar EIACA from Otto.

12. During the onboarding process for Otto, it was my normal business practice to provide an oral overview of the contents of the EIACA—including the representations that the employee has not breached any of his or her agreements with any former employer—with each new hire.

13. In approximately April 2016, Otto undertook the additional measure against breach of former employment agreements by issuing an employee attestation where each employee certified and declaration that he or she had not committed any of the following acts:

- fraud in connection with me becoming employed by Ottomotto;

- willful, intentional or deliberate conduct that constitutes or directly leads or contributes to the infringement (direct or

MORGAN DECL. ISO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION PRELIMINARY INJUNCTION
Case No. 3:17-cv-00939-WHA
sf-3750714

2

indirect) or misappropriation of any patents, copyrights, trademarks or trade secrets of my prior employer including, without limitation, taking removing and/or copying software, product plans, or invention disclosures, in electronic or tangible form that are owned by my prior employer;

- willful and/or intentional breach by me of any fiduciary duty or duty of loyalty to my prior employer; and/or

- willful and/or intentional breach by me of any lawful and enforceable non-solicitation, non-competition, confidentiality or other similarly restrictive covenant or agreement between me and my prior employer.

14. Attached as Exhibit C is a true and correct copy of an exemplar attestation.

15. I supervised the distribution and return of these executed attestations in approximately April 2016. Each employee who worked at Otto at that time executed an attestation.

16. Subsequent new hires executed the attestation during the onboarding process for Otto. It was my normal business practice to provide an oral overview of the contents of the attestation—including the representations that the employee has not breached any of his or her agreements with any former employer—with each new hire.

17. Otto also provided instruction to employees regarding how to respond to outreach by candidates from their former employers to whom they had non-solicitation obligations. I am aware that certain Otto employees who had management roles with their previous employers, including Anthony Levandowski, received such instruction. If such a communication was received, Otto employees were to indicate they are screening themselves from the recruiting process with that candidate and that the candidate can apply for employment at Otto by contacting me.

18. As part of that screening from the recruiting process, it was Otto's company policy that individuals could not conduct interviews of any candidate from their former employers.

19. In my role as HR Lead, I oversaw the recruiting process and managed other recruiters employed at Otto. It was my normal business practice to repeatedly instruct all recruiters at Otto that they were prohibited from reaching out to any current Google employee.

MORGAN DECL. ISO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION PRELIMINARY INJUNCTION
Case No. 3:17-cv-00939-WHA
sf-3750714

3

20. Another part of my role as HR Lead was to request referrals of potential candidates from current Otto employees. It was my normal business practice to state explicitly in those requests that Otto employees who had left Google within the past year could not provide any names of candidates who are active Google employees.

21. I am aware that Otto was acquired by Uber Technologies, Inc. ("Uber") in August 2016.

22. Effective August 24, 2016, all Otto employees became Uber employees.

23. After the acquisition, the Otto onboarding process transitioned from using the aforementioned documentation from Otto—the offer letter, EIACA, and employee attestation—to using the standard onboarding documentation used by Uber. I understand that the standard onboarding documentation used by Uber reflects the same prohibitions against retention of confidential information from any former employer and solicitation of employees from a former employer.

24. I have reviewed the employee personnel files that I maintain in my role as HR Lead, and those records indicate that Radu Raduta joined Otto on July 29, 2016 and left on November 4, 2016.

25. The work computer Radu Raduta used while employed at Otto was preserved after he left. That computer was submitted to a third party for collection and analysis related to this litigation.

26. I have never worked for Google. I have never used any Google or Waymo information during my tenure at Otto or Uber and before this lawsuit, I had never heard of the 14,000 files allegedly downloaded by Anthony Levandowski. I have never seen any evidence of any use of Google or Waymo information during my tenure at Otto and Uber.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7 day of April, 2017, at San Francisco, California.

*[Signature]*
Rhian Morgan