# EXHIBIT A

**Uber Technologies, Inc.**

1455 Market Street, 4th Floor

San Francisco, CA 94103

Date

Name

RE:  **EMPLOYMENT AGREEMENT**

Dear FirstName,

On behalf of Uber Technologies, Inc., a Delaware corporation (the "Company"), I am pleased to offer you the position of Title.  Your employment by the Company shall be governed by the following terms and conditions (this "Agreement"):

1. **Duties and Scope of Employment.**

   a. **Position.**  For the term of your employment under this Agreement (your "Employment"), the Company agrees to employ you in the position of Title or in such other position as the Company subsequently may assign to you.  You will report to SupervisorsFullName, or to such other person as the Company subsequently may determine.  You will be working out of the Company's office in Pittsburgh.  You will perform the duties and have the responsibilities and authority customarily performed and held by an employee in your position or as otherwise may be assigned or delegated to you by your supervisor.

   b. **Obligations to the Company.**  During your Employment, you shall devote your full business efforts and time to the Company. During your Employment, without express written

1

        permission from the Chief Executive Officer or one of his direct reports, you shall not render services in any capacity to any other person or entity and shall not act as a sole proprietor or partner of any other person or entity or own more than five percent of the stock of any other corporation.  Notwithstanding the foregoing, you may serve on corporate, civic or charitable boards or committees, deliver lectures, fulfill speaking engagements, teach at educational institutions, or manage personal investments without such advance written consent, provided that such activities do not individually or in the aggregate interfere with the performance of your duties under this Agreement.  You shall comply with the Company's policies and rules, as they may be in effect from time to time during your Employment.

   c.  **No Conflicting Obligations.**  You represent and warrant to the Company that you are under no obligations or commitments, whether contractual or otherwise, that are inconsistent with your obligations under this Agreement.  In connection with your Employment, you shall not use or disclose any trade secrets or other proprietary information or intellectual property in which you or any other person has any right, title or interest and your Employment will not infringe or violate the rights of any other person.  You represent and warrant to the Company that you have returned all property and confidential information belonging to any prior employer.

   d.  **Commencement Date.**  You shall commence full-time Employment as soon as reasonably practicable and in no event later than StartDate.

2. **Cash and Incentive Compensation.**

   a.  **Salary.**  The Company shall pay you as compensation for your services an initial base salary at a gross annual rate of $Salary.  Such salary shall be payable in accordance with the Company's standard payroll procedures.

   b.  **Performance Bonus.** As an Uber employee, you will be eligible to participate in Uber's annual performance bonus program, with your first bonus award (if any) prorated based

2

on your start date at Uber. Uber has a pay for performance culture and we compensate our top performers accordingly. Uber is a dynamic place and bonus awards under the bonus program may vary year to year based on a number of factors including company performance and manager discretion. For context, last year the target bonus value was $XX for an individual in a comparable role/level and payout multiples were applied to reward high performance. For example, the top 15% of bonus-eligible employees received 3.5x or more of target. Please note that these figures reflect historical values and the bonus program is subject to change year over year. It is unlikely that any given person would receive the exact amounts shown above. Bonus amounts were delivered mostly in equity, vesting over three years. Uber does not guarantee that you will receive a bonus - the lowest 20% of performers should not expect to receive an award, and all awards are at the discretion of the Company.

c. **Expense Reimbursement.** Additionally, in order to assist you to move yourself and your household to Pittsburgh, Uber will reimburse you up to an amount that will not exceed $XXXX to cover your actual relocation expenses ("Relocation Payment") incurred for the following items (if applicable):

- Packing, crating, moving and transporting your household goods and personal effects from your former home to your new home
- Storing and insuring household goods and personal effects
- Shipping your car and household pets to your new home
- Connecting or disconnecting utilities
- Transportation from your current home to Pittsburgh
- Other eligible expenses per Uber's global mobility guidelines

The relocation reimbursement payment shall be made to you net of all applicable withholding taxes and other applicable deductions in accordance with Uber's standard payroll practices. In

3

addition to the above, Uber ATG will pay for four (4) weeks temporary housing to assist with your relocation to Pittsburgh, PA.

    d. **Restricted Stock Units.** As soon as reasonably practicable after the date you commence full-time Employment, and subject to the approval of the Company's Board of Directors (the "Board"), the Company shall grant you RSUs restricted stock units ("RSUs") with respect to shares of the Company's Common Stock. The RSUs will be subject to both a time-based and a performance-based vesting condition as well as to other terms and conditions set forth in the Company's 2013 Stock Plan (the "Stock Plan") and in the Company's standard form of RSU Agreement. For further information about the vesting conditions applicable to the RSUs, please see the RSU Vesting Summary (attached hereto as Attachment C).

3. **Vacation/PTO and Employee Benefits.** During your Employment, you shall be eligible for paid vacation / paid time off, in accordance with the Company's vacation / paid time off policy, as it may be amended from time to time. During your Employment, you shall be eligible to participate in the employee benefit plans maintained by the Company and generally available to similarly situated employees of the Company, subject in each case to the generally applicable terms and conditions of the plan in question and to the determinations of any person or committee administering such plan.

4. **Business Expenses.** The Company will reimburse you for your necessary and reasonable business expenses incurred in connection with your duties hereunder upon presentation of an itemized account and appropriate supporting documentation, all in accordance with the Company's generally applicable policies.

5. **Termination.**

    a. **Employment at Will.** Your Employment shall be "at will," meaning that either you or the Company shall be entitled to terminate your Employment at any time and for any reason,

4

with or without Cause.  Any contrary representations that may have been made to you shall be superseded by this Agreement.  This Agreement shall constitute the full and complete agreement between you and the Company on the "at-will" nature of your Employment, which may only be changed in an express written agreement signed by you (or your authorized representative) and a duly authorized officer of the Company.

b. **Rights Upon Termination.**  Except as expressly provided herein, upon the termination of your Employment, you shall only be entitled to the compensation and benefits earned and the reimbursements described in this Agreement for the period preceding the effective date of the termination.

6. **Pre-Employment Conditions.**

    a. **Confidentiality Agreement.**  Your acceptance of this offer and commencement of employment with the Company is contingent upon the execution, and delivery to an officer of the Company, of the Company's Confidential Information and Invention Assignment Agreement, a copy of which is enclosed for your review and execution (the "Confidentiality Agreement"), prior to or on your Start Date.

    b. **Right to Work.**  For purposes of federal immigration law, you will be required to provide to the Company documentary evidence of your identity and eligibility for employment in the United States.  Such documentation must be provided to us within three (3) business days of your Start Date, or our employment relationship with you may be terminated.  This offer may be rescinded if you are unable to begin work at Uber within a reasonable amount of time due to work eligibility issues or export control licensure requirements.

    c. **Alternative Dispute Resolution Agreement.**  Your acceptance of this offer and commencement of employment with the Company is contingent upon the execution, and delivery to an officer of the Company, of the Alternative Dispute Resolution Agreement, a

5

      copy of which is enclosed as Attachment B for your review and execution, prior to or on your Start Date.

7. **Compliance**

   a. **Restricted Parties Lists Verification.** This offer of employment and/or your continued employment with the Company is contingent upon verification that you and, if applicable, your affiliated entity/institution do not appear on any of the Restricted Parties Lists maintained by the U.S. Government that will prevent the Company from transacting (including but not limited to financial transactions) or engaging in certain type of activities with you, directly or indirectly.

   b. **Foreign National Employee - Export License Determination.** If an export control license is required in connection with your employment, this offer is further contingent upon receipt of the necessary export license and any similar government approvals by the Company's office where you are based. Your employment with the Company will commence following receipt of such export license and governmental approvals; and is conditioned upon your (a) maintaining your employment with the Company, and (b) continued compliance with all conditions and limitations imposed by such license. If for any reason such export license and governmental approvals cannot be obtained within a commercially reasonable time from your date of signature, this offer will automatically terminate and have no force and effect. Additionally, should an export license become necessary at any point following the commencement of your employment with the Company, no export-controlled information or materials will be released to you until such license and any similar government approvals are obtained. The Company is not obligated to apply for any export license or other government approval that may be required in connection with your employment, and the Company cannot guarantee that any such license or similar approvals will be granted, if sought.

8. **Successors.**

a. **Company's Successors.**  This Agreement shall be binding upon any successor (whether direct or indirect and whether by purchase, lease, merger, consolidation, liquidation or otherwise) to all or substantially all of the Company's business and/or assets.  For all purposes under this Agreement, the term "Company" shall include any successor to the Company's business or assets that becomes bound by this Agreement.

b. **Your Successors.**  This Agreement and all of your rights hereunder shall inure to the benefit of, and be enforceable by, your personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees.

9. **Miscellaneous Provisions.**

    a. **Notice.**  Notices and all other communications contemplated by this Agreement shall be in writing and shall be deemed to have been duly given when personally delivered or when mailed by U.S. registered or certified mail, return receipt requested and postage prepaid.  In your case, mailed notices shall be addressed to you at the home address that you most recently communicated to the Company in writing.  In the case of the Company, mailed notices shall be addressed to its corporate headquarters, and all notices shall be directed to the attention of its Secretary.

    b. **Modifications and Waivers.**  No provision of this Agreement shall be modified, waived or discharged unless the modification, waiver or discharge is agreed to in writing and signed by you and by an authorized officer of the Company (other than you).  No waiver by either party of any breach of, or of compliance with, any condition or provision of this Agreement by the other party shall be considered a waiver of any other condition or provision or of the same condition or provision at another time.

    c. **Whole Agreement.**  No other agreements, representations or understandings (whether oral or written and whether express or implied) which are not expressly set forth in this Agreement have been made or entered into by either party with respect to the subject

7

matter hereof.  This Agreement, the Restricted Stock Units Agreement, the Confidentiality Agreement, and the Alternative Dispute Resolution Agreement contain the entire understanding of the parties with respect to the subject matter hereof.

d. **Withholding Taxes.**  All payments made under this Agreement shall be subject to reduction to reflect taxes or other charges required to be withheld by law.

e. **Choice of Law and Severability.**  This Paragraph 9(e) ("Choice of Law and Severability") does not apply to Paragraph 9(f) ("Arbitration") or to the Alternative Dispute Resolution Agreement contained in Attachment B to this Agreement, and to the extent that this Paragraph 9(e) conflicts with Paragraph 9(f) or the Alternative Dispute Resolution Agreement, the provisions contained in Paragraph 9(f) and the Alternative Dispute Resolution Agreement control. Subject to the preceding sentence, this Agreement otherwise shall be interpreted in accordance with the laws of the State in which you work/last worked without giving effect to provisions governing the choice of law, and if any provision of this Agreement becomes or is deemed invalid, illegal or unenforceable in any applicable jurisdiction by reason of the scope, extent or duration of its coverage, then such provision shall be deemed amended to the minimum extent necessary to conform to applicable law so as to be valid and enforceable or, if such provision cannot be so amended without materially altering the intention of the parties, then such provision shall be stricken and the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is rendered illegal by any present or future statute, law, ordinance or regulation (collectively, the "Law") then that provision shall be curtailed or limited only to the minimum extent necessary to bring the provision into compliance with the Law. All the other terms and provisions of this Agreement shall continue in full force and effect without impairment or limitation.

f. **Arbitration.**  Attachment B to this Agreement is an Alternative Dispute Resolution Agreement. This Alternative Dispute Resolution Agreement is governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and is incorporated by reference into and is part of this offer of employment. Therefore, before accepting this offer of employment, please read the Alternative Dispute Resolution Agreement carefully.

g. **No Assignment.**  This Agreement and all of your rights and obligations hereunder are personal to you and may not be transferred or assigned by you at any time.  The Company may assign its rights under this Agreement to any entity that assumes the Company's obligations hereunder in connection with any sale or transfer of all or a substantial portion of the Company's assets to such entity.

h. **Counterparts.**  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*[Signature Page Follows]*

We are all delighted to be able to extend you this offer and look forward to working with you. Please understand that this offer is contingent upon successful completion of your background check investigation.  To indicate your acceptance of the Company's offer, please sign and date this letter in the space provided below and return it to me, along with a signed and dated original copy of the Confidentiality Agreement and the Alternative Dispute Resolution Agreement.  The Company requests that you begin work in this new position on or before StartDate. This offer must be accepted on or before ExpirationDate.  Please indicate the date (either on or before the aforementioned date) on which you expect to begin work in the space provided below (the "Start Date").

Very truly yours,

Uber Technologies, Inc.

By: _____

Name: Anthony Levandowski

Title: Vice President, Engineering

ACCEPTED AND AGREED:

Candidate Name

Candidate Signature

_____

_____

Date

Anticipated Start Date:

Attachment A:  Confidential Information and Invention Assignment Agreement

10

Attachment B:  Alternative Dispute Resolution Agreement

Attachment C:  RSU Vesting Summary