# EXHIBIT A

[



# SECOND AMENDED AND RESTATED DART™ AGREEMENT

This Second Amended and Restated DART Agreement (this "*Agreement*") is made this 25th day of November 2002 by and between DoubleClick Inc. ("*DoubleClick*"), DoubleClick Japan, Inc. ("*You*", "*Your*" or "*DCJ*").

**W I T N E S S E T H:**

  WHEREAS the DoubleClick and DCJ have entered into a DART Agreement, dated July 10, 2000 (the "*Original Agreement*"), for purposes of DoubleClick providing certain services to DCJ, as further specified in such agreement; and

  WHEREAS, DoubleClick and DCJ have entered into a First Amendment to the Original Agreement, dated as of October 16, 2000 (the "*First Amendment*");

  WHEREAS, DoubleClick and DCJ have entered into an Amended and Restated DART Agreement, dated as of ___, 2001 (the "*First Restated Agreement*") in order to specify the terms by which DoubleClick would provide an additional service to DCJ, to amend certain rates set forth in the Original Agreement, and to combine the terms of prior agreements into one comprehensive document;

  WHEREAS, the parties desire to enter into this Agreement in order to specify certain additional changes to the terms between the parties;

  NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants contained herein, the parties hereto agree as to the terms set forth below:

> You agree to pay DoubleClick all of the fees and other charges specified below and DoubleClick agrees to provide certain services to You, all in accordance with the attached Terms and Conditions. Both You and DoubleClick agree that the Terms and Conditions may be updated from time to time by replacing or adding further signed attachments to this Agreement.

| **Your Company Address:** | DoubleClick Japan, Inc. | **DoubleClick: Address:** | DoubleClick Inc. |
|---|---|---|---|
| | Step-Roppongi Bldg, West, 1F<br>6-8-10 Roppongi<br>Minato-ku, Tokyo<br>Japan  106-0032 | | 450 West 33rd Street<br>New York, New York<br>USA 10001 |

(A)  Rate Card for Ad Delivery:

**Monthly Service Fee per 1000 ad impressions (CPM): $ 0.133 (flat rate)**

**Such price is subject to DoubleClick Inc., and not DoubleClick Japan, managing the Data Center.**

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International Limited
All rights reserved.

[

(B) Rate Card for DARTmail Service:

**Monthly Service Fee for 1000 emails (CPM) deployed:  $1.67 (flat rate)**

(C)  Minimum Quarterly Service Fee for Ad delivery to DoubleClick Japan Network, and resale of DFA, DFP and DARTmail services (the "*Minimum Quarterly Service Fee*") : 70,000,000 Japanese Yen in each of Quarter 1 (April 1 – June 30)  and Quarter 2 (July 1 – September 30), and 80,000,000 Japanese Yen in each of  Quarter 3 (October 1 – December 31), and Quarter 4 (January 1 – March 31)

All prices above in US Dollars ($), payable in Japanese Yen at the applicable TTM rate as posted at the Tokyo Mitsubishi Bank (or its legal successor) at the end of the applicable billing month.

Average Ad Size Limit:     12     Kbytes

| **The undersigned confirm their mutual agreement to these arrangements as of the Effective Date (as defined below).** |
|---|

**DOUBLECLICK INC.**                                             **DOUBLECLICK JAPAN, INC.**

Signature:_____                Signature:_____

Printed Name: _____               Printed Name: _____
Title: _____               Title: _____

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International Limited
All rights reserved.

[

**SECOND AMENDED AND RESTATED DART™ AGREEMENT AMONG
DOUBLECLICK INC.,DOUBLECLICK JAPAN AND TRANS COSMOS INC.
TERMS AND CONDITIONS**

**1. Agreement and Definitions.** DoubleClick, ,You and TCI hereby enter into the agreement set forth in these terms and conditions and in the Cover Page (collectively, this "*Agreement*"), as of the Effective Date set forth below. All capitalized terms not otherwise defined below shall have the meanings as defined on the Cover Page:

(1) "*30 Day Cure Period*" is defined in Section 10.
(2) "*Acquired Product*" is defined in Section 6(i).
(3) "*Acquired Product Localization Period*" is defined in Section 6(i).
(4) "*Acquired Product Localization Schedule*" – as defined in Section 6 (i).
(5) "*Ad Size Limit*" is defined in Section 7.
(6) "*Advertiser*" shall mean any entity or person that desires to advertise its own products or services.
(7) "*Affiliates*" shall mean any entity directly or indirectly controlled by You, by ownership of more than 50% of the equity, or management or board control.
(8) "*Agreement*" – means the terms and conditions of this Second Amended and Restated DART Agreement and the Cover Page.
(9) "*Arbitrating Party(-ies)*" is defined in Section 19.
(10) "*Average Ad Size*" is defined in Section 7.
(11) "*Business Day*" shall mean each Monday, Tuesday, Wednesday, Thursday and Friday on which the Bank of Tokyo Mitsubishi is open.
(12) "*Commercial Introduction*" shall mean the introduction for regular usage by DoubleClick's clients of any modification, enhancement, substitution, new feature or functionality relating to a DART Technology Product in the network operated by DoubleClick or any licensee of DoubleClick.
(13) "*Confidential Information*" is defined in Section 15.
(14) "*Consent*" shall mean a user's decision (i) to add his or her email address to a List to receive campaigns from a marketer, and (ii) to have his or her email address and other personal data provided to third parties like DoubleClick for delivery of such campaigns.
(15) "*Consent Indicator*" shall mean indicator located on the subscription page which signifies user's consent to items.
(16) "*Control*" shall mean fifty percent (50%) or greater voting, equity, or equivalent interest in the controlled entity.
(17) "*Cover Page*" shall mean terms and conditions contained in the first two pages attached to the Agreement.
(18) "*CPM Rate*" is defined in Section 7.
(19) "*DART Clients*" shall mean any DCJ client which is or becomes a consumer of a DART Technology Product in the Territory, which, (i) with respect to publishers, shall mean publishers whose primary place of business is in the Territory, and (ii) with respect to advertisers, shall mean advertisers which are, or whose agents are, invoiced in the Territory, and (iii) with respect to agencies, shall mean agencies which are invoiced in the Territory, and including Japanese Publishers, Japanese Agencies and Japanese Advertisers .
(20) "*DART Services Agreements*" shall mean the service agreement between You and a DART Client for DFP, DFA or DARTmail Service.
(21) "*DART Technology*" shall include (i) the Serviceand the System and shall mean the technology developed by DoubleClick for the targeted delivery, measurement and reporting of advertisements to Web sites, and (ii) the DARTmail Service and DoubleClick's DARTmail System and shall mean the technology developed by DoubleClick for targeted delivery of email campaigns from DoubleClick's servers to marketers' Lists and measurement and reporting thereof. The term DART Technology includes, without limitation, any and all, (1) of the DART Technology Products, (2) technology, know-how and other technical information owned or used by DoubleClick as part of the DART Technology, (3) all information, products and processes necessary for the operation of the DART Technology, (4) Upgrades, and (5) Related Products. DART Technology specifically excludes Your proprietary product branded as "Infomail."
(22) "*DART Technology Products*" shall include the DART Service for Publishers, the DART Service

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International Limited
All rights reserved.

[

(23) "*DARTmail Service*" shall mean the DART Email Delivery Service provided by DoubleClick for targeted email campaign delivery from DoubleClick's servers to certain Lists.

(24) "*DARTmail System*" shall mean DoubleClick's proprietary DARTmail Delivery System, used by DoubleClick to deliver campaigns to the Lists.

(25) "*DCJ Localization Option*" is defined in Section 6(c).

(26) "*DFP*" shall mean DART Service for Publishers.

(27) "*DFA*" shall mean DART Service for Advertisers and Agencies.

(28) "*Disclosing Party*" is defined in Section 15.

(29) "*Dispute*" is defined in Section 19.

(30) "*Disputing Party*" is defined in Section 19.

(31) "*DoubleClick Indemnitee*" is defined in Section 12.

(32) "*DoubleClick Japan Network*" shall mean the network of Web sites commonly referred to as the DoubleClick Japan Network and all successor networks thereto and any alternative or additional networks created by You or one or more of Your Affiliates, which includes but is not limited to all Web sites owned, Controlled or operated by You or one or more of Your Affiliates, or for which You or one of Your Affiliates perform ad sales and Representation services, including Web sites or networks of sites acquired by You or an Affiliate or otherwise merged with the DoubleClick Japan Network or alternative or additional networks after the Effective Date hereof, and such other networks of Web sites with respect to which You have entered into cross-selling arrangements.

(33) "*Effective Date*" is the date on which DoubleClick's shareholding ratio in DCJ is reduced to an amount less than twenty percent (20%) of all the issued shares of DCJ on a non-diluted basis..

(34) "*First Amendment*" shall mean the First Amendment to the Original Agreement, dated as of October 16, 2000.

(35) "*First Restated Agreement*" shall mean the Amended and Restated DART Agreement, dated as of ___, 2001.

(36) "*International Trademark Agreement*" shall mean that International Trademark Agreement dated as of _____, between DoubleClick and You.

(37) "*Japanese Advertisers*" shall mean advertisers which are, or whose agents are, invoiced in the Territory.

(38) "*Japanese Agencies*" shall mean agencies which are invoiced in the Territory.

(39) "*Japanese Publishers*" shall mean Web site publishers whose primary place of business is in the Territory.

(40) "*Lists*" shall mean a list of email addresses of Internet users who have Consented.

(41) "*Minimum Quarterly Service Fee*" is defined in Paragraph C of the Cover Page.

(42) "*Monthly Service Fee*" is defined in Section 7.

(43) "*Original Agreement*" shall mean the DART Agreement, dated July 10, 2000.

(44) "*Publisher*" shall mean any entity or person that desires to use the Service to target and measure advertisements for Advertisers on its own Web site.

(45) "*Receiving Party*" is defined in Section 15.

(46) "*Related Product*" shall mean (a) such add-on products and services that can be used only simultaneously with a DART Technology Product or the DART Enterprise software (with respect to which the terms between the parties are governed by the DoubleClick DART Enterprise Distribution Agreement dated as of October 6, 2000, as amended), including for purposes of clarification, Media Visor, and (b) such add-on products and services that utilize the "DART" trademark in the U.S. market

(47) "*Representation*" shall mean representation in relation to sales of ad inventory for a Web site.

(48) "*Service*" shall mean a service provided, through the use of the DART Technology, by DoubleClick for targeted and measured delivery of ad banners from DoubleClick's servers to the Web sites.

(49) "*Site Advance*" shall mean DoubleClick's Site Advance product.

(50) "*System*" shall mean DoubleClick's proprietary ad management system software technology.

(51) "*Target Sites*" shall mean a service provided by DoubleClick for targeted and measured delivery of ad banners from DoubleClick's servers to the Web sites.

(52) "*Term*" is defined in Section 10.

(53) "*Territory*" shall mean the country of Japan in its entirety.

(54) "*Trademarks*" is defined in the International Trademark Agreement.

(55) "*Upgrades*" shall mean, with respect to the DART Technology Product, any modification, enhancement, substitution, new feature or functionality relating to a DART Technology Product or any information, products or processes relating to a DART Technology Product. Any such modification, enhancement, substitution, feature, functionality or process shall constitute an Upgrade for the purposes of this Agreement upon Commercial Introduction. Customized modifications and enhancements developed by DoubleClick for particular licensees that are not generally implemented for DoubleClick clients shall not constitute Upgrades.

(56) "*Visitors*" shall mean those who visit the Target Sites.

(57) "*You*" shall mean DoubleClick Japan, Inc.

**2. Grant of DART Service for Delivery to DoubleClick Japan Network.** DoubleClick grants to You the non-

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International Limited
All rights reserved.

[ exclusive, non-transferable right during the Term, in the Territory to use the Service in connection with delivery of advertisements of Japanese Advertisers to the DoubleClick Japan Network, provided that (a) You agree that the Service shall be the only service used in connection with the delivery and management of advertising by You through the DoubleClick Japan Network and no other technology, software or other services shall be used by You for said delivery and management of such advertising, and (b) DCJ's access to the Service in connection with the DoubleClick Japan Network shall not extend beyond that necessary to permit DCJ to deliver advertising through the DoubleClick Japan Network. The Service is a service provided, through the use of the DART Technology, by DoubleClick for targeted and measured delivery of ad banners from DoubleClick's servers to Target Sites.  The ad banners are displayed to Visitors to the Target Sites based on criteria selected by You and Your Advertisers. The parties agree that the DoubleClick Japan Network shall exclude (a) ad inventory sold or Represented by You or Your Affiliates for which neither You nor Your Affiliates (nor any third party ad serving solution contracted for by You or Your Affiliates) provide ad serving services (including instances in which You merely broker a transaction or You merely provide the creative to the owner of the ad inventory), and (b) ad inventory sold or Represented by You or Your Affiliates (excluding ad inventory of Web sites owned or controlled by You or Your Affiliates) for which the owner of such ad inventory elects to serve advertisements through its own or an alternative ad serving solution contracted for by such owner other than the DART Technology Services.

**3. Ad Management System for Delivery to DoubleClick Japan Network.**  With respect to the DoubleClick Japan Network, You and DoubleClick understand that You are required to use DoubleClick's proprietary System in order to receive the Service.  Accordingly, DoubleClick grants to You the non-exclusive and non-transferable right to access and use the System in connection with the DoubleClick Japan Network, which You can access and use only on DoubleClick's Web servers by means of a unique password chosen by You, and only for the purposes of: (i) performing projections of ad banner impression inventories that might be available through the Service, (ii) uploading and storing ad banners for delivery by the Service, (iii) selecting trafficking criteria for the delivery of ad banners to Target Sites and Visitors, and (iv) receiving reports of ad banner impressions and other data related to the delivery of ad banners by the Service. DoubleClick hereby acknowledges and agrees that DoubleClick shall solely bear any and all administration costs in relation to operation of the Service and the System, including without limitation, costs for management and operation of the data center for the Service, connection fees, and employment costs for operating and managing the Service and the System.

**4. Your Obligations in connection with the DoubleClick Japan Network.**  In connection with the DoubleClick Japan Network, You shall be solely responsible for soliciting all Japanese Advertisers, trafficking of ad banners (which shall include the input of ad banners into the System) and handling all inquiries of any type or nature. In connection with the DoubleClick Japan Network, You shall obtain all necessary rights, licenses, consents, waivers and permissions from Advertisers, Visitors and others, to allow DoubleClick to store and deliver ad banners and otherwise operate the Service on Your behalf and on behalf of Your Advertisers, and to use any data provided to or collected by the System.  You further represent that You have read, and will conform to, DoubleClick's statement on privacy that can be found on the DoubleClick Web site.  You further agree that advertisements provided to DoubleClick and/or delivered on behalf of You, and Your other promotional and marketing activities in connection with the use of the Service for delivery to the DoubleClick Japan Network, including the Target Sites, shall not be deceptive, misleading, obscene, defamatory, illegal or unethical.

**5. DoubleClick's Obligations in connection with the DoubleClick Japan Network.** DoubleClick's obligations in connection with the DoubleClick Japan Network hereunder shall be (i) to make the System available to You, (ii) to deliver ad banners through the Service according to the trafficking criteria selected by You using the System, (iii) provide Web-based support via the DoubleClick support Web-sitetwenty-four hours per day, seven days per week (excluding downtime for routine maintenance) as well as any additional  support in such form and at such times, reasonably equivalent to that provided by DoubleClick to customers of similar size and revenue, it being understood that such terms should not apply with respect to customers of DoubleClick receiving such support at an additional cost, and (iv) to provide six training days at DoubleClick's premises explaining the proper use of the Service and the System (it being agreed hereby that as of the Effective Date hereof, such training days have been provided by DoubleClick). A "training day" is defined as a full day training session for a reasonable number of Your employees.  You can divide the training days in any manner You reasonably deem appropriate.  There shall be no additional cost for such training sessions. If You require additional training or training on Your site, DoubleClick shall provide such training to You at DoubleClick's standard published rates for such training. For training on Your Site, You agree to reimburse DoubleClick for its actual travel and lodging expenses.  You shall not permit any of Your employees to access and use the Service or the System unless any such employee has successfully completed the training session and has been so certified by DoubleClick.

6. **Resale of DART Technology Products.**

    (a) **DART Technology Service Agreements**. DoubleClick grants to You the exclusive right to enter into service agreements with DART Clients, pursuant to which You may agree, pursuant to a DART Services Agreements substantially in the form attached as Exhibit A, B and C hereto, respectively, to make the Service available to such DART Clients for purposes of enabling them to deliver advertising  to Web sites, or with respect to the DARTmail Service, to make the DARTmail Service available to such DART Clients for purposes of enabling them to deliver targeted email campaigns from DoubleClick's servers to such DART Clients' Lists.  In no event

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International Limited
All rights reserved.

[ shall any DART Service Agreement permit the DART Client to use the Trademarks as defined in the International Trademark Agreement or DART Technology Products in a manner inconsistent with DoubleClick's grants of rights and licenses to You, and with your obligations, under this Agreement or the International Trademark Agreement and any other agreements entered into in connection with such agreements. In addition, You shall include in each DART Service Agreement with DART Clients, (i) a clause requiring Your DART Clients to agree that such agreement shall not create any claims or rights against DoubleClick or any of its affiliates or direct or indirect subsidiaries, (ii) a clause providing DoubleClick with all necessary rights, license, consents, waivers and permissions to store and deliver ad banners and email data and otherwise operate the relevant services on Your behalf and on behalf of Your DART Clients and permitting DoubeClick to use any data provided to or collected by the DART system solely for the purpose of performing the relevant service, (iii) a clause requiring Your DART Clients to agree never to alter any DoubleClick tags so as to include any personally identifiable or sensitive information of any users in such tags, and (iv) a clause requiring Your DART Clients to comply with all data security and data protection or privacy requirements pursuant to applicable laws and regulations.  You shall be solely responsible for ensuring that all of Your DART Clients abide by the terms of their DART Services Agreement, and any failure by You to take such measures to strictly enforce to the fullest extent permitted by applicable law and policy the above terms of the applicable DART Services Agreement upon Your receipt of notice of Your DART Client's failure to abide by the same shall constitute a material breach under Section 10(i) of this Agreement. You shall indemnify and hold DoubleClick harmless from and against any claim by Your DART Client or any third party arising from the services provided hereby to the DoubleClick Japan Network or services provided to DART Clients pursuant to a DART Services Agreement.

(b) **Certain Reseller Obligations**.  As an exclusive reseller of the DART Technology Products, You shall be solely responsible for soliciting all of Your DART Clients, and You shall use Your best efforts to enter into DART Service Agreements, as permitted hereunder, on terms and conditions that are commercially favorable to You.  All such DART Service Agreements shall be effected by You on an "arms-length" basis.  As an exclusive reseller, You shall handle all aspects of the ad or email serving, as the case may be, for your DART Clients (ie. DoubleClick's sole point of contact shall be You and not the DART Clients within Your network(s)). Accordingly, You shall be solely responsible for trafficking of ad banners, creating and troubleshooting Spotlight tags, and handling all inquiries of any type or nature.  It is Your responsibility to remove, or have the applicable DART Client remove, all tags placed on DART Clients' sites, at completion of the applicable campaign.  You shall be responsible for ad serving fees for all ads served by DoubleClick hereunder and email deployment fees for all emails deployed hereunder, regardless of Your contracted amounts with DART Clients' sites, including, without limitation, fees for default ads and ads served due to failure to remove ad tags from such sites. Further, You agree not to make any representations to potential or existing DART Clients regarding services or functionality beyond those actually provided to You by DoubleClick pursuant to this Agreement.

(c) **License of Upgrades and Related Products**. DoubleClick hereby also grants to You a license and right to use in the Territory any Upgrades and Related Products  developed or acquired by DoubleClick from time to time during the Term, to the extent permitted by applicable law and policy and in accordance herewith.  Such license shall be effective automatically upon the development or acquisition of such Upgrades and Commercial Introduction of Related Products for no additional consideration and without the necessity of execution of any document except with respect to Related Products for which a separate technology services agreement or addendum to this Agreement (a "***Related Products Addendum***") shall be required to address certain product-specific terms and conditions, including pricing, that are unique to that Related Product and are not otherwise expressly or implicitly contained herein.  The Related Products Addendum will contain only such terms and conditions as is necessary or appropriate to accommodate the unique aspects of the technology in a manner consistent, to the extent commercially reasonable, with the license grants, duties and obligations set forth in this Agreement.  Except as set forth herein, such license is granted on the same terms and for the same purposes as set forth in this Agreement with respect to DART Technology Products and such Upgrades and Related Products shall for all purposes of this Agreement, except as otherwise indicated, be considered part of the DART Technology Products.

(i) *Localization—Upgrades*.  DoubleClick shall provide to You the Upgrades in such form, including manuals and user interfaces written in both English and Japanese and technical support to assist with implementation, as is appropriate or reasonably necessary for the full and effective use by You of such technology, in accordance herewith. Localization of Upgrades with respect to DFA, DFP and DARTmail shall be provided at DoubleClick's expense and no later than six (6) months following the Commercial Introduction thereof (but no earlier than six (6) months following the Effective Date of this Agreement),

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International Limited
All rights reserved.

[ subject to the following sentence and the circumstances at the time thereof. DoubleClick will discuss with You, and consider Your input to, DoubleClick's product localization roadmap, and in the event DoubleClick does not provide the localized Upgrade within the aforementioned period, thirty (30) days after You notify DoubleClick of DoubleClick's failure to meet such localization deadline, if DoubleClick has not cured such failure, DoubleClick shall elect, at its discretion, one of the following options (either option referred to herein as a "**DCJ Localization Option**"): at DoubleClick's cost, (i) DoubleClick will provide Your engineers with access to the relevant source code to allow You to conduct localization yourself or through a DoubleClick-approved vendor; or (ii) You may dispatch your own engineers (or those of a vendor approved by You) to conduct the localization at DoubleClick's site; *provided, however,* that all such localization work will be subject to appropriate intellectual property and confidentiality protections and DoubleClick's code and database management procedures. Notwithstanding the foregoing, the previous two sentences shall not apply to the DARTmail Service product (eg. DARTmail) until the earlier of  (x) March 31, 2004, or (y) the DARTmail user interface architecture redesign completion; provided, however, that at DoubleClick's request, You agree to evaluate with DoubleClick, in good faith, whether there is reasonable, commercial justification for investment by DoubleClick in  localization of DARTmail hereunder, it being understood that You are under no obligation hereunder to commit to any modification to this Section 6(c)(i) Further, at Your request, DoubleClick will evaluate with You, in good faith, whether, and the extent to which, there is reasonable commercial justification for investment by DoubleClick in enabling the non-localized version of DARTmail (as of the Effective Date) to properly process Japanese character sets contained in end user reply and confirmation emails (such fix, a "Non-Localized Email Fix"), it being understood that DoubleClick is under no obligation hereunder to commit to providing such Non-Localized Email Fix .

(ii)     *Localization—Related Products.* DoubleClick will provide each Related Product, including manuals and user interfaces, written in both English and Japanese, and will also provide technical support to assist with its implementation, as is appropriate or reasonably necessary for the full and effective use by You of such Related Product in accordance herewith. Localization of a Related Product will be provided at Your expense at DoubleClick's then commercial rates, (i) with respect to internally developed DoubleClick products, within six (6) months following the Commercial Introduction thereof (the "**Internal Product Localization Period**"), and (ii) with respect to products not internally developed by DoubleClick ("**Acquired Products**"), to the extent localization is "technically and commercially feasible" (as such terms are used below), within six (6) months following the Commercial Introduction by DoubleClick thereof (the "**Acquired Products Localization Period**"). If localization of an Acquired Product is not "technically feasible", or if localization of an Acquired Product is technically feasible but not "commercially feasible" within six (6) months, DoubleClick will discuss with You, and consider Your input to, DoubleClick's product localization roadmap and production schedule to develop a mutually agreeable localization schedule for such Acquired Product.  The approval of such schedule shall be evidenced by signature of (i) the person at DoubleClick responsible for managing engineering department decisions, and if such position does not exist, the chief executive officer of DoubleClick, and (ii) the person at Your company (eg. DoubleClick Japan) responsible for managing engineering department decisions, and if such position does not exist, the chief executive officer of Your company (e.g. DoubleClick Japan) (an "**Acquired Product Localization Schedule**"). Acquired Products with respect to which localization is not "technically feasible" are those products that require a substantial amount of engineering work outside the ordinary course of product development, including for purposes of clarification, the need to overhaul the architectural system of the relevant product in order to make the product localizable.  In the event DoubleClick does not provide the localized Related Product within the Internal Product Localization Period, the Acquired Products Localization Period, or as set out in an Acquired Product Localization Schedule, then [thirty (30) days after You notify DoubleClick of DoubleClick's failure to meet the applicable deadline, if DoubleClick has not cured such failure,]DoubleClick shall elect, at its discretion, at DoubleClick's cost, one of the DCJ Localization Options with respect to the relevant Related Product.  If after using all commercially reasonable efforts and exhausting all resources and procedures as contemplated hereunder, You are materially unable to localize the Acquired Product such that it may become commercially distributable in the Territory, You may procure the rights to distribute a similar product or service from a third party or develop the product or service internally.

(iii)     *Modifications.*  DoubleClick reserves the right to upgrade the DART Technology, including, without limitation, modifying the report interfaces and delivery formats. You acknowledge that such Upgrade may require additional training of Your employees and DART Clients accessing the DART Technology and

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International Limited
All rights reserved.

[

  may result in a change in the branding of any part of the DART Technology services and/or systems.

(d) **Technology Support**. During the Term, and as may be reasonably requested by You from time to time, DoubleClick shall provide (either directly or though one or more of DoubleClick's subcontractors) to You: (i) ongoing technical assistance and support in order for You to understand, apply and implement the DART Technology Products and develop the DoubleClick Japan Network and (ii) a reasonable degree of management information system technical assistance and support to develop such systems and address and resolve problems with respect to such systems as they may arise.

(e) **Training Support**. (i) Subject to the provisions of item (iii) below, DoubleClick shall, at its own cost and expense, provide an initial training course to a reasonable number of Your employees (it being understood that as of November 25, 2002, such training has already been provided to You with respect to existing DART Technology Products that You distribute as of this date) and additional training for any Upgrades and initial training related to the introduction of Related Products. DoubleClick shall, at its own cost and expense, also provide an initial training course to Your sales personnel related to sales strategies, sales force organization, compensation and marketing plans based on DoubleClick's experience in the United States and other international markets. The scope of coverage, location and schedule of such initial training courses for such employees shall be mutually determined by the parties hereto. (ii) If additional training courses are requested by You, DoubleClick shall provide the additional training at times and at costs to be mutually agreed upon between the parties. (iii) You shall reimburse DoubleClick for all out-of-pocket travel and accommodation costs incurred by DoubleClick, its employees or representatives in connection with the training courses provided by DoubleClick hereunder.

DoubleClick together with You shall provide training on the use of the DART Technology Products to the DART Clients at the sole cost and expense of such clients (and provided that such DART Clients agree to reimburse DoubleClick and You for their out-of-pocket costs and agree to pay DoubleClick DoubleClick's reasonable standard rates as to the training fee per day for each day that DoubleClick is required to provide such training.)

(f) **Ownership; Restriction on Usage**. You acknowledge that DoubleClick owns the DART Technology. You shall not claim or challenge DoubleClick's rights, title or interest in and to the Dart Technology. You shall not use, copy, modify, alter or distribute the DART Technology or any part thereof (electronically or otherwise), except as expressly authorized by DoubleClick in writing or as permitted under this Agreement. You shall not reverse assemble, reverse compile or otherwise attempt by any other method to create or derive the source code or any part thereof from the object program or from the information made available under this Agreement or otherwise, nor authorize any third parties to do the same.

(g) **Data Centers.** DoubleClick shall own and operate the advertisement servers necessary to ensure proper delivery of the advertisements, and the email servers necessary to ensure proper deployment of emails, deployed in accordance herewith, as such DoubleClick retains the sole responsibility for housing and maintaining the advertisement servers, email servers and data center or data centers, as the case may be, which DoubleClick deems necessary to effect the proper delivery of said advertisements or emails, as the case may be.

(h) **Suggestions for Development.** At any time during the Term, You may offer any suggestions in relation to the Service, the System, the DARTmail Service and the DARTmail System (including without limitation functions and localization of such services and systems). DoubleClick agrees to work with You to make good faith efforts, to the extent commercially practicable, to accommodate and implement any such suggestions.

(i) **Site Advance.** With respect to SiteAdvance, You shall have the right of first refusal for a period of one (1) year from the Commercial Introduction of SiteAdvance in the United States, during which time You and DoubleClick will evaluate market opportunities for SiteAdvance and You shall have the exclusive right to negotiate and enter into an exclusive SiteAdvance reseller agreement with DoubleClick upon mutually agreed terms and conditions If, upon expiration of such one (1) year period, DoubleClick and You have not entered into an exclusive technology reseller agreement with respect to SiteAdvance, DoubleClick thereafter shall have the unrestricted right to offer and grant reseller and other marketing rights to third parties with respect to SiteAdvance.

(j) **New Products**. If You wish to introduce a new product or service into the Japanese market (and such new product or service does not constitute a Related Product), and DoubleClick does not own the rights for, or is unwilling to license its rights to, such product or service, You may procure the rights to distribute such product or service from a third party or develop the product or service internally.

**7. Fees.** You shall pay DoubleClick the monthly service fees (the "*Monthly Service Fee*") at a rate equal to the number of U.S. Cents, determined pursuant to the fee structure set forth on the cover page of this Agreement, per thousand impressions (such rate, the "*CPM Rate*") delivered through the applicable service in connection with (i) Advertisements served to the DoubleClick Japan Network on Your behalf through the DART sService, (ii) Advertisements served on behalf of the DART Clients, pursuant to applicable DART Services Agreements, and (iii) Emails deployed on behalf of DART Clients through

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International Limited
All rights reserved.

[ the DARTmail Service pursuant to applicable DART Services Agreements. The Monthly Service Fees are recurring, non-refundable, non-creditable fees, payable within thirty (30) days after receipt of an invoice from DoubleClick for such fees. An invoice shall be sent by DoubleClick within ten (10) business days, or sooner if reasonably possible, from the end of each month. The Monthly Service Fee for ad delivery shall be based on the number of ad banner impressions delivered through the Service on behalf of You or Your DART Clients each month, divided by one thousand (1,000) and multiplied by the CPM Rate set forth in table A of the cover page. Grey gif, System defaults and broken images that are served by the DART Service for creative trafficked by You or Your DART Client shall be counted in determining the number of Your monthly ad banner impressions. To the extent that the average file size of all ad banners delivered via the Service in a given month ("*Average Ad Size*") exceeds the Ad Size Limit set forth on the Cover Page, the Monthly Service Fee payable for that month shall be increased by an amount that shall be calculated by subtracting the Ad Size Limit from the Average Ad Size, dividing that difference by the Ad Size Limit, and multiplying the quotient by the Monthly Service Fee CPM Rate set forth above. The Monthly Service Fee for email delivery (set forth in table (B) of the cover page) shall be based on the number of emails deployed through the DARTmail Service on behalf of You or Your DART Clients each month, divided by one thousand (1,000) and multiplied by the CPM Rate set forth in table B of the cover page. If at the end of any consecutive three month period (with the first month of the first three month period commencing the first full month following execution hereof), Your aggregate Monthly Service Fee for the applicable three-month period is less than the Minimum Quarterly Service Fee (set forth in table (C) of the cover page), You shall owe DoubleClick the difference between (i) the Minimum Quarterly Service Fee, and (ii) the aggregate Monthly Service Fees for the applicable three-month period. All fees hereunder shall be denominated in Yen at the currency rate set forth in the Cover Sheet hereof, and paid by wire transfer to an account to be designated by DoubleClick, or by other means expressly agreed to in writing by DoubleClick. You shall also be responsible for and shall pay any applicable sales, use or other taxes or duties, tariffs or the like applicable to provision of the Service (except for taxes on DoubleClick's income). Late payments will be subject to late fees at the rate of one and one half percent (1.5%) per year, or, if lower, the maximum rate allowed by law. If You fail to pay fees invoiced by DoubleClick within thirty (30) days following the payment due date, DoubleClick shall have the right to suspend performance of the services hereunder without notice to You; such service not to be reinstated until You pay all such overdue amounts. In addition, You also agree to pay any attorneys' fees and/or collection costs incurred by DoubleClick in collecting any past due amounts from You. You shall be jointly and severally responsible for all obligations and amounts owing pursuant to this Agreement for Your DART Clients' use of the services provided hereunder. You shall withhold the applicable Japanese taxes, as is required by the relevant tax law in Japan and the relevant tax treaty between Japan and the United States, from its payments to DoubleClick under this Agreement.

You shall furnish DoubleClick the necessary documentation, in a form acceptable to DoubleClick, so that DoubleClick may utilize any and all applicable United States foreign tax credits for the taxes withheld in Japan on the royalties or other payments paid by You to DoubleClick under this Agreement (such taxes withheld, the "DCJ Taxes"). DoubleClick shall use best efforts to send You a letter, no more than annually, certifying that DoubleClick has not received a foreign tax credit for the DCJ Taxes. If in any tax year, DoubleClick receives a foreign tax credit for the DCJ Taxes, DoubleClick shall reimbuse You for the amount received.

Upon Your request, DoubleClick agrees to conduct with You an annual review of the applicable CPM Rate based on Your use of the DART Service, general market conditions, and the competitive position of the DART Technology Products in the Territory. The annual review will be conducted at such times and in such manner as mutually agreed but in any event before the end of Your fiscal year. Notwithstanding the above, in no event shall DoubleClick be obligated to lower the applicable CPM Rate on account of such annual review or for any other reason.

**8. Proprietary Rights and Restrictions.** DoubleClick is the exclusive supplier of the DART Technology, including the Service and the DARTmail Service and the exclusive owner of all right, title and interest in and to the DART Technology, including the System and the DARTmail System, all software, databases and other aspects and technologies related to such systems and services, including the System and the DARTmail System, any enhancements thereto and any materials provided to You by DoubleClick through the DART Technology, including the System, the DARTmail System or otherwise. You may not use the DART Technology, including the System or the DARTmail System except pursuant to the limited rights expressly granted in this Agreement. You shall use the DART Technology, including System and the DARTmail System only in accordance with reference manuals written in English and Japanese to be supplied by DoubleClick and only in accordance with DoubleClick's standard security procedures, as posted on the DoubleClick Web site or otherwise notified to You.

**9. Data.** You have the sole and exclusive right to use all data derived from Your use of the Service or the DARTmail Service, for any purpose related to Your business; provided that DoubleClick may use and disclose the Visitors' data (other than personally-identifiable information) derived from Your use of the Service only (i) for DoubleClick's reporting purposes, consisting of compilation of aggregated statistics about the Service or the DARTmail Service (e.g., the aggregate number of ads delivered) that may be provided to customers, potential customers and the general public; and (ii) if required by court order, law or governmental agency.

**10. Term and Termination.** The term of this Agreement shall commence on the Effective Date and shall continue perpetually unless sooner terminated in accordance with

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International Limited
All rights reserved.

[this Section 10 (the "*Term*"). This Agreement may be terminated (i) thirty (30) Business Days after a party's notice to the other party that such other party is in material breach hereunder, unless the other party cures such breach within said thirty (30) day period, (ii) upon thirty (30) Business Days after (the "*30 Day Cure Period*") written notice from DoubleClick of DoubleClick's reasonable good faith determination that (a) You are using or permitting DART Clients to use, the Service, the System, the DARTmail Service or the DARTmail System in such a manner that could damage or cause injury to the Service, the System, the DARTmail Service or the DARTmail System, or reflect unfavorably on the reputation of DoubleClick, it being understood that if You are unsuccessful at curing such breach within fifteen (15) Business Days of such notice, DoubleClick shall have the right to send up to two (2) persons to assist You in curing the breach, and if cure is unsuccessful by the end of the 30 Day Cure Period, DoubleClick shall have the right to immediately terminate this Agreement; and (iii) immediately upon notice by a party if the other party (a) is adjudged insolvent or bankrupt, (b) institutes or has instituted against it any proceeding seeking relief, reorganization or arrangement under any laws relating to insolvency (and, in the case of any such proceeding instituted against it, the proceeding is not dismissed within sixty (60) calendar days after filing), (c) makes any assignment for the benefit of creditors, (d) appoints a receiver, liquidator, or trustee of any of its property or assets, or (e) liquidates, dissolves or winds up its business.

**12. Indemnification.** You agree to indemnify and hold DoubleClick and its officers, directors, employees and agents (each a "*DoubleClick Indemnitee*") harmless from and against any and all third party claims, actions, losses, damages, liability, costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements incurred by a DoubleClick Indemnitee in any action between You and the DoubleClick Indemnitee, or between the DoubleClick Indemnitee and any third party or otherwise) arising out of or in connection with (i) the breach of any of Your representations, warranties or obligations set forth in this Agreement, (ii) Your or Your DART Client's use of the DART Technology, including the Service, the System, the DARTmail Service or the DARTmail System other than as permitted herein, or (iii) any claim by any Advertiser or marketer arising from Your arrangement to display Advertisers' Advertising on the Target Sites or advertising or promotional message in an email campaign. DoubleClick agrees to indemnify and hold harmless You, your successors and assignees, including any subsidiary, officer, director, employee, agent, contractor, licensee, or customer, from and against any loss, liability, claim, or damage (including court costs and reasonable attorney fees) sustained by it or them (x) as a result of a claim or allegation that the System infringes any patent, copyright, trade secret, trademark, or other intellectual property right of any third party, (y) arising out of or in connection with a breach of any of DoubleClick's representations, warranties or obligations set forth in this Agreement, and (z) a breach of the exclusivity of the licenses granted You under this Agreement, provided that You (1) give DoubleClick prompt written notice of any such claims (2) allow DoubleClick to have sole control of the defense and settlement of the claim; and (3) provide DoubleClick with the information and assistance that DoubleClick reasonably deems necessary for defense or settlement of the claim.

**13. WARRANTIES AND DISCLAIMER.** DoubleClick represents and warrants that the System and the DARTmail System was (i) developed by DoubleClick without infringement or misappropriation of any third party's copyrights or trade secrets. You acknowledge that the Service, the System, the DARTmail Service and the DARTmail System can be used to target, measure and traffic advertisements in many different ways and based on many different types of data. You represent and warrant that You will not nor will You permit the DART Clients to use the DART Technology, including the Service, the System, the DARTmail Service or the DARTmail System in a way or for any purpose that infringes or misappropriates any third party's intellectual property or personal rights. EXCEPT AS SET FORTH IN THIS AGREEMENT, DOUBLECLICK MAKES NO WARRANTIES OF ANY KIND TO ANY PERSON WITH RESPECT TO THE SERVICE, THE SYSTEM OR ANY AD BANNER OR OTHER DATA SUPPLIED THEREBY, WHETHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSEOR NONINFRINGEMENT.

**14. Limitation and Exclusion of Liability.** DoubleClick shall not be liable to You or any other third party (including, without limitation, any of the DART Clients) for any loss, cost, damage or expense incurred in connection with the availability, operation or use of the DART Technology, including the Service, System, the DARTmail Service or the DARTmail System, or any ad banner, campaigns or other data supplied thereby, including, without limitation, for any unavailability or inoperability of the DART Technology, including the System, the DARTmail System or the Internet, technical malfunction, computer error or loss or corruption of data, or other injury, damage or disruption of any kind related thereto, unless DoubleClick has directly caused such loss, cost, damage or expense through its gross negligence or intentional misconduct.In no event shall either party be liable for any indirect, incidental, consequential, special or exemplary damages, including, but not limited to, loss of profits, or loss of business opportunity, even if such damages are foreseeable and whether or not either party has been advised of the possibility thereof. Neither party's maximum aggregate liability to the other shall exceed the total amount paid by You to DoubleClick under this Agreement during the twelve (12) month period prior to the first date the liability arose. In Your agreements with Advertisers and marketers, You will include a provision that will state that DoubleClick is a third party beneficiary of any disclaimers and limitations or exclusions of liability You agree with Your DART Clients or other Advertisers or marketers.

**15. Confidentiality.** The terms of this Agreement and information and data that one party (the "*Receiving Party*")

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International Limited
All rights reserved.

[has received or will receive from the other party (the "*Disclosing Party*") about the DART Technology, including the Service, the System, the DARTmail Service, the DARTmail System and other matters are proprietary and confidential information ("*Confidential Information*"), including without limitation any information that is marked as "confidential" or should be reasonably understood to be confidential or proprietary to the Disclosing Party and any reference manuals compiled or provided hereunder. The Receiving Party agrees that for the Term and for two (2) years thereafter, the Receiving Party will not disclose the Confidential Information to any third party, nor use the Confidential Information for any purpose not permitted under this Agreement. The nondisclosure obligations set forth in this Section shall not apply to information that the Receiving Party can document is generally available to the public (other than through breach of this Agreement) or was already lawfully in the Receiving Party's possession at the time of receipt of the information from the Disclosing Party.

**16. Non-Competition.** Neither You nor any of Your Affiliates will, directly or indirectly, engage in activities competitive with DoubleClick or any of its Affiliates outside Japan and inside Japan with respect to activities of DoubleClick or any of its Affiliates so long as You are using or have the right to use the "DoubleClick" trade name or mark.

**17. Independent Contractor Status.** Each party shall be and act as an independent contractor and not as partner, joint venturer or agent of the other.

**18. Modifications and Waivers.** This Agreement represents the entire understanding between DoubleClick, TCI and You and supersedes all prior agreements relating to the subject matter of this Agreement. No failure or delay on the part of either party in exercising any right, power or remedy under this Agreement shall operate as a waiver, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise or the exercise of any other right, power or remedy. Unless otherwise specified, any amendment, supplement or modification of or to any provision of this Agreement, any waiver of any provision of this Agreement and any consent to any departure by the parties from the terms of this Agreement, shall be effective only if it is made or given in writing and signed by both parties.

**19. Assignment.** This Agreement and the rights hereunder are not transferable, assignable or sublicensable (except as expressly contemplated by this Agreement) without prior written consent of the non-assigning party which consent shall not be unreasonably withheld; provided, however, that this Agreement may be assigned by DoubleClick (a) to a person or entity who acquires substantially all of DoubleClick's assets, stock or business by sale, merger or otherwise and (b) to an affiliate of DoubleClick, provided that any such assignee agree in writing to be bound by the terms of this Agreement. Subject to the foregoing, this Agreement shall bind and inure to the benefit of the parties, their heirs, successors and permitted assigns.

**20. Applicable Law and Dispute Resolution.** This Agreement shall be governed by the laws of New York, without reference to its conflict of laws rules or principles. Any dispute hereunder ("*Dispute*") shall be resolved as set forth in this Section 20. Each party shall give written notice to the other party of any dispute claimed by such party ("*Disputing Party*"). Promptly upon delivery of such notice, such Dispute Party or a designated senior officer of such Disputing Party, as applicable, shall meet with the other party in Tokyo, Japan, and attempt in good faith to resolve the Dispute. If such persons are unable to resolve the Dispute within thirty (30) days after delivery of the written notice, then the Dispute shall be settled through binding arbitration at the request of either party ("*Arbitrating Party*"). If the Arbitrating Party is DoubleClick, then arbitration shall be conducted in Tokyo, Japan, in the English language in accordance with the arbitration rules of the International Chamber of Commerce. If the Arbitrating Party is You, then arbitration shall be conducted in New York City, New York, U.S.A., in the Japanese language in accordance with the arbitration rules of the International Chamber of Commerce. The arbitration shall be conducted before a single arbitrator selected by both Parties. Each Party shall pay its proportional share of the arbitration costs and expenses of the arbitration during arbitration; provided that the prevailing Party or Parties in any arbitration shall be entitled to an award of the particular attorney's fees and the particular costs for the prevailing Party or Parties. All costs of arbitration shall ultimately, and promptly upon the conclusion of arbitration, be borne by the non-prevailing Party or Parties in the form of a reimbursement to the prevailing Party or Parties for the Party's or Parties' share or shares of the arbitration costs and expenses.

Upon conclusion of any arbitration proceedings hereunder, the arbitrator shall render findings of fact and conclusions of law and a written opinion setting forth the basis and reasons and for any decision reached by such arbitrator. Such arbitrator shall deliver or have delivered such documents to each Party and to the other parties along with a signed copy of the award. Any judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction of the subject matter thereof. The arbitrator shall have the authority to grant any equitable and legal remedies that would be available in any judicial proceeding institute to resolve a Dispute. Except as specifically otherwise provided in this Agreement, arbitration shall be the sole and exclusive remedy of the parties for any Dispute arising out of this Agreement.

**21. Privacy.** Each party agrees that at all times during the Term, each party will comply, and You will cause Your DART Clients and all other Advertisers or Publishers using the DART Technology (or on whose behalf You use the DART Technology) to comply, with all applicable privacy and data protection laws.

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International Limited
All rights reserved.

22. **No Rights by Implication**.   No rights or licenses with respect to any DoubleClick technology or intellectual property are granted or deemed granted hereunder or in connection herewith, other than those rights and licenses expressly granted in this Agreement.

23. **No Third Party Beneficiary.**   The terms and provisions of this Agreement are intended solely for the benefit of each party hereto and their respective successors or permitted assigns.  Except as expressly provided herein, this Agreement does not confer third-party beneficiary rights, and this Agreement does not confer any such rights upon any other Person.

24. **English Language**.   All written communications and documents to be made or provided by either party hereto in connection with this Agreement shall be made or provided in the English language.

25. **Customization Work.**   Any customization work provided by DoubleClick, including, without limitation, customization work relating to (i) log files, (ii) site redesign, (iii) report requests (e.g. reports that entail development, coding or automation work) and (iv) modifications to a system or service licensed to You hereunder, may be provided by DoubleClick upon Your request, pursuant to mutually agreed upon written statements of work entered into prior to the commencement of any work by DoubleClick, such statements of work to be attached to and made a part hereof (each, a "Statement of Work" or "SOW"). Statements of Work shall include, without limitation, the applicable fees, payment schedule, and delivery schedule for such services, and shall specify the intellectual property rights associated with such work. Unless otherwise provided in the applicable SOW, all work product or services provided by DoubleClick shall be the sole and exclusive property of DoubleClick, save and except any of Your trademarks or service marks which may be contained therein and which shall remain Your property.

27 . **General.**  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective only to the minimum extent necessary without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provisions in any other jurisdiction. This Agreement was drafted as a collaborative effort, and thus shall not be construed against either party as drafter. No failure or omission by either party in the performance of any obligation under this Agreement shall be deemed a breach of this Agreement nor create any liability if the same shall arise from any cause or causes beyond the reasonable control of such party, including but not limited to the following:  acts of God, acts or omissions of any government or any rules, regulations or orders of any governmental authority or any officer, department, agency or instrument thereof; fire, storm, flood, earthquake, accident, acts of the public enemy, war, rebellion, Internet brown out, insurrection, riot, invasion, strikes, or lockouts. All notices, demands and other communications provided for or permitted under this Agreement shall be made in writing to the parties' at the addresses on the Cover Page and shall be sent by registered or certified first-class mail, return receipt requested, telecopier, courier service or personal delivery and shall be deemed received upon delivery.

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International Limited
All rights reserved.

MORGANLEWISTOKYO          Fax:0352192501          2002年11月25日(月) 16:19      P.08/08

(B) Rate Card for DARTmail Service:

Monthly Service Fee for 1000 emails (CPM) deployed: $1.67 (flat rate)

(C) Minimum Quarterly Service Fee for Ad delivery to DoubleClick Japan Network, and resale of DFA, DFP and DARTmail services (the "*Minimum Quarterly Service Fee*") : 70,000,000 Japanese Yen in each of Quarter 1 (April 1 – June 30) and Quarter 2 (July 1 – September 30), and 80,000 Japanese Yen in each of Quarter 3 (October 1 – December 31), and Quarter 4 (January 1 – March 31)

All prices above in US Dollars ($), payable in Japanese Yen at the applicable TTM rate as posted at the Tokyo Mitsubishi Bank (or its legal successor) at the end of the applicable billing month.

Average Ad Size Limit: __12__ Kbytes

The undersigned confirm their mutual agreement to these arrangements as of the Effective Date (as defined below).

DOUBLECLICK INC.                                  DOUBLECLICK JAPAN, INC.

Signature: _____               Signature: _____

Printed Name: __KEVIN RYAN__                     Printed Name: _____
Title: __Chief Executive Officer__               Title: _____

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International Limited

[

(B) Rate Card for DARTmail Service:

Monthly Service Fee for 1000 emails (CPM) deployed: $1.67 (flat rate)

(C) Minimum Quarterly Service Fee for Ad delivery to DoubleClick Japan Network, and resale of DFA, DFP and DARTmail services (the "*Minimum Quarterly Service Fee*") : 70,000,000 Japanese Yen in each of Quarter 1 (April 1 – June 30) and Quarter 2 (July 1 – September 30), and 80,000,000 Japanese Yen in each of Quarter 3 (October 1 – December 31), and Quarter 4 (January 1 – March 31)

All prices above in US Dollars ($), payable in Japanese Yen at the applicable TTM rate as posted at the Tokyo Mitsubishi Bank (or its legal successor) at the end of the applicable billing month.



Average Ad Size Limit: 12 Kbytes

The undersigned confirm their mutual agreement to these arrangements as of the Effective Date (as defined below).

DOUBLECLICK INC.                                    DOUBLECLICK JAPAN, INC.

Signature: _____                   Signature: /s/ Takashi Kido

Printed Name: _____                   Printed Name: TAKASHI KIDO
Title: _____                   Title: CEO

DOUBLECLICK® and DART™ are trademarks of DoubleClick Inc. ©1999 DoubleClick DART International