# EXHIBIT D

1   KEKER & VAN NEST LLP
    ROBERT A. VAN NEST, #84065
2   rvannest@kvn.com
    STEVEN K. TAYLOR, #204668
3   staylor@kvn.com
    BENEDICT Y. HUR, #224018
4   bhur@kvn.com
    AUDREY WALTON-HADLOCK, #250574
5   awaltonhadlock@kvn.com
    633 Battery Street
6   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
7   Facsimile:    415 397 7188
    Attorneys for Defendants
8   SLIDE, INC. and GOOGLE INC.

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13  CHRISTALEE ABREU, individually and on          Case No. CV12-00412-WHA
    behalf of a class of similarly situated
14  individuals,                                   [Removed from Santa Clara County Superior
                                                   Court Action No. 1:11-CV-215376]
15              Plaintiffs,
                                                   **NOTICE OF MOTION AND MOTION TO
16        v.                                       COMPEL ARBITRATION OR, IN THE
                                                   ALTERNATIVE, TO DISMISS UNDER
17  SLIDE, INC. and GOOGLE INC.,                   RULE 12(b)(6); MEMORANDUM OF
                                                   POINTS AND AUTHORITIES IN
18              Defendants.                        SUPPORT THEREOF**

19                                                 Date:      Thursday, May 31, 2012
                                                   Time:      2:00 p.m.
20                                                 Dept.:     Courtroom 8, 19th Floor
                                                   Judge:     Hon. William H. Alsup
21
                                                   Date Comp. Filed:   December 20, 2011
22
                                                   Trial Date:   None Set
23

24

25

26

27

28

1    **NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

2        **PLEASE TAKE NOTICE** that on May 31, 2012, before the Honorable William H.

3    Alsup, of the United States District Court, 450 Golden Gate Avenue, Courtroom 8, 19th Floor,

4    San Francisco, California 94102, defendants Slide, Inc. ("Slide") and Google Inc. ("Google")

5    will, and hereby do, move the Court for an order compelling arbitration pursuant to the terms of

6    the Terms of Use governing SuperPoke! Pets or, in the alternative, an order dismissing this

7    action in its entirety.  The grounds for this motion are that (1) Plaintiff's claims are subject to

8    arbitration under the valid and enforceable Terms of Use governing her use of SuperPoke! Pets,

9    the game that is the subject of her claims, and (2) even as alleged in her Complaint, Plaintiff's

10   claims about the SuperPoke! Pets Terms of Use and events surrounding the game's closure are

11   self-contradictory and implausible, and do not state any cognizable legal claim on which relief

12   can be granted.  This Motion is based on this Notice; on the attached Memorandum of Points and

13   Authorities; on the concurrently filed Declarations and Request for Judicial Notice, and all other

14   pleadings, files and records in this action; and on such other argument as may be received by this

15   Court at the hearing on this Motion.

16

17   Dated:  April 24, 2012                         KEKER & VAN NEST LLP

18

19

20                                By:  *Steven K. Taylor*
                                      STEVEN K. TAYLOR

21                                    Attorneys for Defendants
                                      SLIDE, INC. and GOOGLE INC.

22

23

24

25

26

27

28

---

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.    BACKGROUND ............................................................................. 2

    A.    SuperPoke! Pets was an Online Video Game. ............................ 3

    B.    The Terms of Use governing Plaintiff's play of SuperPoke! Pets permit either party to invoke arbitration for disputes. ................... 3

    C.    The Terms of Use advised Plaintiff of her limited rights in the game and Defendants' right to discontinue the game entirely......... 4

    D.    Slide and Google gave Plaintiff notice of the game's modification and eventual discontinuation. ...................................................... 5

    E.    Procedural History. ....................................................................... 6

III.    ARGUMENT .................................................................................. 7

    A.    The Court Should Compel Arbitration ......................................... 7

        1.    The arbitration clause is not substantively unconscionable. ................. 8

        2.    The arbitration provision is not procedurally unconscionable...................................................................... 10

    B.    Alternatively, Plaintiff's Complaint Must be Dismissed Because Plaintiff Cannot State Any Valid Claim Against Google or Slide. .............. 13

        1.    Plaintiff's First and Second Causes of Action must be dismissed.................................................................... 14

            a.    Plaintiff cannot challenge provisions of the TOU unless she alleges that those particular provisions are being enforced against her and causing her injury, which she has not done........................... 14

            b.    The SuperPoke! Pets Terms of Use are not unlawfully "exculpatory," unconscionable or illusory. ........................................................... 15

        2.    Plaintiff's Third Cause of Action fails to state a cognizable legal claim. .................................................. 18

        3.    Plaintiffs' Fourth Cause of Action for violation of the

i

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

Consumer Legal Remedies Act (CLRA) must be dismissed with prejudice because Plaintiff has not alleged any unlawful conduct and Plaintiff failed to provide mandatory statutory notice of her claims...........................................18

    a.    Plaintiff has not alleged any cognizable CLRA claim.......................................................................................19

    b.    Plaintiff failed to comply with statutory prerequisites to filing damage claims under the CLRA.......................................................................................21

4.    Plaintiff's Fifth Cause of Action for violation of California's Unfair Competition Law must be dismissed. ..............23

    a.    Defendants' alleged conduct was not unlawful. ...................23

    b.    Defendants' alleged conduct was not unfair.........................23

    c.    Defendants' alleged conduct was not fraudulent. .................24

5.    Plaintiff's Sixth Cause of Action for "Fraud in the Inducement" must be dismissed. ......................................................24

6.    Plaintiffs' Seventh Cause of Action for "Unjust Enrichment" must be dismissed because no such cause of action exists in California. ............................................................25

IV.    CONCLUSION....................................................................................25

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*
861 F. 2d 224 (9th Cir. 1988) ....................................................................... 12

*Arellano v. T-Mobile USA, Inc.*
No. C-10-05663 WHA, 2011 WL 1362165 (N.D. Cal. 2011) .......................................... 15

*Ashcroft v. Iqbal*
129 S. Ct. 1937 (2009) .......................................................... 13, 19, 24

*AT&T Mobility LLC v. Concepcion*
131 S. Ct. 1740 (2011) ................................................................. 8, 10

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ................................................................ 13, 19, 24

*Buckeye Check Cashing, Inc. v. Cardegna*
546 U.S. 440 (2006) ..................................................................... 8, 10

*Datel Holdings Ltd. v. Microsoft Corp.*
712 F. Supp. 2d 974 (N.D. Cal. 2010) ........................................................... 2

*Ferrington v. McAfee, Inc.*
No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ........................... 20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
528 U.S. 167 (2000) ............................................................... 14, 15

*Han v. Mobil Oil Corp.*
73 F.3d 872 (9th Cir. 1995) ............................................................... 17

*In re Apple & AT & T iPad Unlimited Data Plan Litig.*
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ................................................. 22, 25

*In re Gilead Sciences Sec. Litig.*
536 F.3d 1049 (9th Cir. 2008) ......................................................... 13, 25

*In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*
758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...................................................... 22

*Khan v. Orkin Exterminating Co., Inc.*
No. C 10-02156 SBA, 2011 WL 4853365 (N.D. Cal. Oct. 13, 2011) ............................ 2

*Kilgore v. Keybank, Nat'l Ass'n*
712 F. Supp. 2d 939 (N.D. Cal. 2010) ................................................. 13, 23

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

*Kilgore v. KeyBank, Nat'l Ass'n*
  673 F.3d 947 (9th Cir. 2012) ................................................................................... 13

*Knievel v. ESPN*
  393 F.3d 1068 (9th Cir. 2005) .................................................................................. 2

*Laster v. T-Mobile USA, Inc.*
  407 F. Supp. 2d 1181 (S.D. Cal. 2005)................................................................... 22

*Monex Deposit Co. v. Gilliam*
  671 F. Supp. 2d 1137 (C.D. Cal. 2009) .............................................................. 9, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
  460 U.S. 1 (1983) ...................................................................................................... 8

*Pokrass v. The DirecTV Group, Inc.*
  No. EDCV 07-423-VAP, 2008 WL 2897084 (C.D. Cal. July 14, 2008) ........................ 11

*Soltani v. W.&S. Life Ins. Co.*
  258 F.3d 1038 (9th Cir. 2001) ........................................................................... 17, 18

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*
  995 F. Supp. 1060 (D. Ariz. 1997) ......................................................................... 12

*Vissuet v. Indymac Mortgage Services*
  No. 09-CV-2321, 2010 WL 1031013 (S.D. Cal. March 19, 2010) .............................. 18

*Von Grabe v. Sprint PCS*
  312 F. Supp. 2d 1285 (S.D. Cal. 2003)................................................................... 22

*W. Mining Council v. Watt*
  643 F.2d 618 (9th Cir. 1981) .................................................................................. 19

*Weinberger v. Romero–Barcelo*
  456 U.S. 305 (1982)................................................................................................ 17

**State Cases**

*AOL, Inc. v. Sup. Ct.*
  90 Cal. App. 4th 1 (2001) ...................................................................................... 10

*Armendariz v. Foundation Health Psychcare Servs., Inc.*
  24 Cal. 4th 83 (2000) ............................................................................................... 8

*Belton v. Comcast Cable Holdings, LLC*
  151 Cal. App. 4th 1224 (2007) ......................................................................... 11, 16

*Camacho v. Auto. Club of S. Cal.*
  142 Cal. App. 4th 1394 (2006) ............................................................................... 23

*Fairbanks v. Sup. Ct.*
  46 Cal. 4th 56 (2009).............................................................................................. 20

iv

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

*Graham v. Scissor–Tail, Inc.*
    28 Cal. 3d 807 (1981) ................................................................. 12

*Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*
    38 Cal. App. 4th 1532 (1995) ........................................................ 17

*Izzi v. Mesquite Country Club*
    186 Cal. App. 3d 1309 (1986) ....................................................... 13

*Meyer v. Sprint Spectrum L.P.*
    45 Cal. 4th 634 (2009) ................................................................. 19

*Morris v. Redwood Empire Bancorp*
    128 Cal. App. 4th 1305 (2005) ............................. 8, 9, 11, 12, 16

*Roman v. Superior Court*
    172 Cal. App. 4th 1462 (2009) ...................................................... 18

*Shell Oil Co. v. Richter*
    52 Cal. App. 2d 164 (1942) ........................................................... 18

*Smith v. State Farm Mut. Auto. Ins. Co.*
    93 Cal. App. 4th 700 (2001) .......................................................... 23

*Wayne v. Staples, Inc.*
    135 Cal. App. 4th 466 (2006) ........................................................ 11

*West v. Henderson*
    227 Cal. App. 3d 1578 (1991) ....................................................... 17

**Federal Statutes**

9 U.S.C. § 3 ............................................................................... 13

9 U.S.C. § 4 ................................................................................. 2

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ..................................................... 23

Cal. Bus. & Prof. Code § 17204 ..................................................... 23

Cal. Civ. Code § 1668 .................................................................. 15

Cal. Civ. Code § 1670.5 ............................................................ 8, 15

Cal. Civ. Code § 1761 .................................................................. 20

Cal. Civ. Code § 1770 ......................................................... 19, 21, 22

v

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

Cal. Civ. Code § 1780 ................................................................................ 19, 21, 22

Cal. Civ. Code § 1782 ........................................................................................ 21, 22

**Federal Rules**

Fed. R. Civ. P. 9(b) ........................................................................................... 21, 24

Fed R. Civ. P. 12(b)(6) ......................................................................................... 2, 13

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

# I.    INTRODUCTION

Plaintiff's complaint should be arbitrated or dismissed, because of the provisions of the Terms of Use ("TOU") to which Plaintiff agreed as a condition of playing SuperPoke! Pets. SuperPoke! Pets was an on-line game that gave users the opportunity to accessorize electronic images of pets and create "habitats" for them. Users could play for free, or to enhance their gaming experience, purchase virtual currency that could be used to access special in-game accessories. The gravamen of Plaintiff Christalee Abreu's complaint is that she suffered harm from the announcement by Slide and Google (collectively, "Defendants") that they were discontinuing the SuperPoke! Pets game, although she had over six months' notice of the closure. But Plaintiff cannot avoid the TOU, which both (1) permit Defendants (or Plaintiff) to remove this dispute from the court and into arbitration, and (2) permit Defendants to do exactly what they have done here.

*First*, all of Plaintiff's claims must be arbitrated, as required by the arbitration provision in the game's TOU. Agreeing to the arbitration provision was a condition of playing the game, and the arbitration provision is valid and enforceable under controlling Supreme Court precedent and federal law. The Federal Arbitration Act requires strict enforcement of arbitration provisions like the one at issue here, with very limited exceptions that do not apply in this case. Contrary to Plaintiff's misleading characterizations (and selective quotations) in her Complaint, the actual arbitration provision in the SuperPoke! Pets TOU provides a fair mechanism for Plaintiff to obtain quick and inexpensive resolution of her claims, which should be enforced.

*Second*, if the Court does not compel arbitration, it should dismiss the Complaint because Plaintiff has not, and cannot, sufficiently plead any legally sufficient claims. Specifically, the Complaint fails because it does not identify a cognizable legal basis for Plaintiff's claims that the shut-down of SuperPoke! Pets was unlawful. Plaintiff's Complaint contradicts both the TOU and common sense by claiming that she should be compensated because she received no lasting "investment" from playing an online game designed purely for entertainment. In particular, Plaintiff claims injury because she can no longer continue playing with her online pets after

1

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

1 | Defendants discontinued the game on March 6, 2012. Further, she accuses Defendants of fraud

2 | and unfairness because they did not tell her when they made changes to the game in June 2011

3 | that the game would be shut down completely in March 2012. Neither argument has any basis.

4 | The specific terms that Plaintiff challenges are *not* ones that she has plead actually caused her

5 | any harm, and those terms are not unfair or improper under the facts or law, especially in the

6 | context of an online recreational game. In fact, because the TOU made clear that the SuperPoke!

7 | Pets game created no property rights in users and could be ended at any time by Defendants,

8 | each and every one of Plaintiff's claims must be dismissed. By Plaintiff's own allegations,

9 | Defendants have done nothing improper, unfair, or fraudulent. Instead, Defendants acted in

10 | accordance with the TOU, and Plaintiff has not alleged, and cannot prove, otherwise. That

11 | Plaintiff wants to keep playing a game that has been discontinued may be disappointing, it does

12 | not create a legally cognizable action. If the Court does not compel arbitration, Plaintiff's

13 | Complaint should be dismissed in its entirety.

## II.   BACKGROUND

15 |     Although the Court must accept well-pleaded factual allegations as true when evaluating

16 | a motion to dismiss, it need not credit many of Plaintiff's conclusory, non-factual allegations.

17 | Stripped to its legitimately factual allegations and in light of the full text of the documents

18 | selectively incorporated therein (as attached to the Declaration of Libor Michalek[1]), the

---

[1] The Michalek Declaration provides the full text of documents relied upon in the Complaint, as well as additional facts related to Defendants' motion to compel arbitration. In evaluating the motion to compel arbitration under 9 U.S.C. § 4, the Court can rely on all of the facts and documents included in the Michalek Declaration. *See Khan v. Orkin Exterminating Co., Inc.*, No. C 10-02156 SBA, 2011 WL 4853365, *4 (N.D. Cal. Oct. 13, 2011) (considering similar facts on motion to compel arbitration).

In evaluating Defendants' motion in the alternative to dismiss Plaintiff's claims under Rule 12(b)(6), the Court can still consider the full text of the TOU and SuperPoke! Pets announcements, even though Plaintiff failed to attach them to her pleading, because Plaintiff's Complaint expressly relies on and purports to quote from these documents. *See Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983 (N.D. Cal. 2010) (explaining that on a motion to dismiss "(1) a court may take judicial notice of material which is either submitted as part of the complaint or necessarily relied upon by the complaint; and (2) a court may take judicial notice of matters of public record"); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

1    Complaint states no facts sufficient to support Plaintiff's claims.

2        **A.    SuperPoke! Pets was an Online Video Game.**

3        SuperPoke! Pets was an online video game launched by Slide in approximately April

4    2008, which was made available both through social media platforms including Facebook and

5    Myspace, and on its own website (www.spp.com).  Complaint ¶ 9.  In the game, players could

6    "adopt" virtual pet animals, which they could then "interact with" virtually, including by

7    "customiz[ing] the pet's virtual environment" and by "dress[ing] it in outfits."  Complaint ¶ 12.

8    As part of the game, a SuperPoke! Pets player could use various virtual items to decorate his or

9    her pet and its "virtual habitat."  Complaint ¶ 15.  According to Plaintiff, these items included

10   "virtual hotdogs" and "virtual stuffed animals."  Complaint ¶ 18.

11       According to the Complaint, some of the items featured in the game were available to

12   players who "perform[ed] various tasks" or attained other "achievements" in the game.  Other

13   features, including "'exclusive' premium content" available for "VIP status" subscribers, were

14   available only to players who choose to spend actual money to play with them.  Complaint ¶ 16,

15   20.  The Complaint alleges that VIP status was first made available in late 2010, for a fee of

16   $4.95 per month.  Complaint ¶ 20.

17       The right to play Superpoke! Pets was subject to Slide's Terms of Use ("TOU").

18   Complaint ¶ 28.  Plaintiff was an active user of Superpoke! Pets beginning in 2009.  *See*

19   Complaint ¶ 49.  Plaintiff asserts that the TOU are a contract between herself and Defendants.

20   Complaint ¶ 63; *see also* Complaint ¶ 89.

21       **B.    The Terms of Use governing Plaintiff's play of SuperPoke! Pets permit either
22            party to invoke arbitration for disputes.**

23       The TOU contain an arbitration provision.  Complaint ¶ 74.  That provision is as follows:

24       4. **Binding Arbitration**. If you and the Company are unable to resolve a Dispute
         through informal negotiations, either you or the Company may elect to have the
25       Dispute (except those Disputes expressly excluded below) finally and exclusively
         resolved by binding arbitration. Any election to arbitrate by one party shall be
26       final and binding on the other. YOU UNDERSTAND THAT ABSENT THIS
         PROVISION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND
27       HAVE A JURY TRIAL. The arbitration shall be commenced and conducted
         under the Commercial Arbitration Rules of the American Arbitration Association

28

                                                 3

653504.02

("AAA") and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules"), both of which are available at the AAA website www.adr.org. The determination of whether a Dispute is subject to arbitration shall be governed by the Federal Arbitration Act and determined by a court rather than an arbitrator. Your arbitration fees and your share of arbitrator compensation shall be governed by the AAA Rules and, where appropriate, limited by the AAA Consumer Rules. If such costs are determined by the arbitrator to be excessive, the Company will pay all arbitration fees and expenses. The arbitration may be conducted in person, through the submission of documents, by phone or online. The arbitrator will make a decision in writing, but need not provide a statement of reasons unless requested by a party. The arbitrator must follow applicable law, and any award may be challenged if the arbitrator fails to do so. Except as otherwise provided in this Agreement, you and the Company may litigate in court to compel arbitration, stay proceedings pending arbitration, or to confirm, modify, vacate or enter judgment on the award entered by the arbitrator.

Michalek Decl. Exh. 1 (TOU) at ¶ XIV.A.4. In addition, the TOU prohibit class arbitrations, and require that "any arbitration shall be limited to the Dispute between the Company and you individually." *Id.* ¶ XIV.A.5. The TOU also exempt certain claims from arbitration, namely "(1) any Disputes [regarding] any of your or the Company's intellectual property rights; (2) any Dispute related to, or arising from, allegations of theft, piracy, invasion of privacy or unauthorized use; and (3) any claim for injunctive relief." *Id.* ¶ XIV.A.6.

### C. The Terms of Use advised Plaintiff of her limited rights in the game and Defendants' right to discontinue the game entirely.

The TOU explained to players that Defendants reserved the right to discontinue the game at any time, that SuperPoke! Pets users had no ownership rights in any aspect of the game even if they paid money for an enhanced playing experience, and that any payments made to play were non-refundable. Specifically, the TOU provide as follows:

- "The Company reserves the right to discontinue the [game] or to change the content of the [game] in any way and at any time, with or without notice to you, without liability." TOU § II.B (under the heading "What the Company is Providing").

- Users of SuperPoke! Pets are "grant[ed] . . . a non-exclusive, non-transferable, revocable limited license to use the [game] and related software and to display the results of [the game] for your personal non-commercial use." TOU § II.A.

- Users "do not acquire any ownership rights by using the [game] . . . or by purchasing any virtual goods or virtual currency (see Section VI, below)." TOU § IV.B.

4

653504.02

- Although the game "include[s] a component of fictional currency" known as Gold ("Virtual Currency"), that "Gold" is purely an element of the game and has no real-world value: "[r]egardless of terminology used, Virtual Currency represents a limited license right governed solely under these Terms, and is not redeemable for any sum of money or monetary value from the Company at any time." TOU § VI.A.

- Under the heading "All Sales Final," users "agree that all sales of Virtual Goods and Virtual Currency by the Company are final" and that "[n]o refunds will be given, except in the Company's sole and absolute discretion. All Virtual Goods and Virtual Currency will be forfeited if your account is terminated . . . for any reason . . . or if the Company discontinues providing the Service." TOU § VI.F.

The TOU also provide that users "agree that the Company has the absolute right to manage, regulate, control, modify, and/or eliminate such Virtual Currency as it sees fit in its sole discretion, in any general or specific case, and that the Company will have no liability to you based on its exercise of such right." TOU § VI.A. *See also* TOU § VI.E.2 (repeating essentially the same limitation under the heading "Limited Rights," and addressing both Virtual Goods and Virtual Currency); TOU § VI.E.1 (explaining that users "have no right or title in or to any such Virtual Goods or Virtual Currency" or other aspects of the game "[o]ther than a limited, personal, revocable, non-transferable, non-sublicenseable license to use the Virtual Goods or Virtual Currency in the Service").

### D. Slide and Google gave Plaintiff notice of the game's modification and eventual discontinuation.

According to Plaintiff, in early June of 2011, Defendants "announced several changes to SPP through the game's official online forums." Complaint ¶ 33. Specifically, "Defendants announced that SPP users could no longer purchase gold using cash, and that Defendants would no longer be releasing new 'gold items' for purchase." Complaint ¶ 33. Users could continue using the gold they had already purchased. "Defendants additionally instructed SPP users to spend any outstanding gold on existing virtual items on or before June 30, 2011." Complaint ¶ 34. As alleged by Plaintiff, Defendants did not encourage users to buy more gold, but stated definitively that "[a]fter that date [June 30, 2011] . . . no gold items would be available, and the value of any gold remaining in users' accounts would disappear and would not be refunded." Complaint ¶ 34.

5

1    Plaintiff alleges that around the same time, Slide and Google assured users that the game

2    would not be shut down "in July 2011" or "in the near future." Complaint ¶ 37. In late August

3    and September 2011, Defendants announced that the game would be shut down six months later,

4    on March 6, 2012—roughly 8 months after the June 2011 announcements. Complaint ¶¶ 44 &

5    45. Although Plaintiff alleges that Defendants "promised" in June 2011 that they "had no plans

6    to shut the site down," Complaint ¶37, Plaintiff does not allege that those alleged promises were

7    false or deceptive at the time that they were made.

8    Plaintiff also alleges that in the June 2011 announcements Defendants "promised those

9    who signed up for the [VIP status] program before June 30, 2011 that they would enjoy

10   continued access to the VIP Status 'for life.'" Complaint ¶ 38. In fact, however, the allegation

11   that users were promised any status "for life" is directly contrary to the actual text of the

12   announcements made in June 2011 (which Plaintiff purports to quote in her Complaint), which

13   indicated that VIP status would continue for "as long as the program exists," which at that time

14   was anticipated to be for the "foreseeable future." Michalek Decl. Exhs. 4 & 5 (June 2011

15   announcements). Plaintiff does not, and cannot, allege that Defendants failed to provide VIP

16   access to those customers or asked them to pay for VIP service after June 2011.

17   According to Plaintiff, Slide and Google then notified users in August and September

18   2011 of their business decision to shut down SuperPoke! Pets, granting users more than six

19   months after that decision was made to continue playing the game (which remained in service

20   until March 6, 2012). Complaint ¶¶ 44-45. Although nothing in the TOU required them to do

21   so, Defendants also (according to Plaintiff's own allegations) provided two different options for

22   users to preserve a version of their fictional pets and other fictional items from the game after its

23   closure. Complaint ¶ 46.

24   **E.    Procedural History.**

25   Plaintiff filed this action in the Santa Clara County Superior Court on December 20,

26   2011, asserting claims for declaratory relief related to the SuperPoke! Pets TOU, statutory claims

27   under California's Consumer Legal Remedies Act (CLRA) and Unfair Competition Law, and

28

6

653504.02

1 | causes of action for fraud in the inducement, injunctive relief, and unjust enrichment. Plaintiff
2 | purports to bring all of these claims on behalf of two classes, consisting of all registered
3 | SuperPoke! Pets users who purchased virtual gold or purchased virtual in-game items from SPP-
4 | certified resellers, and all individuals who purchased one or more months of SuperPoke! Pets
5 | VIP status. Complaint ¶ 54. Defendants removed the action to this Court on January 26, 2012,
6 | and the Court denied Plaintiff's motion to remand on April 3, 2012.

7 | **III.    ARGUMENT**

8 |      Plaintiff's claims have no place in this Court. First, Plaintiff's claims must be arbitrated.
9 | The arbitration provision in the TOU requires arbitration of the claims asserted in Plaintiff's
10 | Complaint. This provision is valid and enforceable, and under controlling law requires
11 | arbitration of Plaintiff's claims. Second, Plaintiff's action should be dismissed for failure to state
12 | any legally cognizable or factually plausible claim. The TOU Plaintiff agreed to legitimately
13 | authorized Defendants' termination of the game, Plaintiff has failed to allege any wrongful
14 | conduct by Defendants, and Plaintiff received the benefit of her agreement to the TOU by
15 | playing the online SuperPoke! Pets game for more than two years.

16 |      **A.    The Court Should Compel Arbitration**

17 |      The SuperPoke! Pets TOU require arbitration of this dispute upon election by either
18 | party. The TOU contain an arbitration clause, which provides that "either you [the user] or the
19 | Company may elect to have [any] Dispute (except those Disputes expressly excluded below)
20 | finally and exclusively resolved by binding arbitration." Michalek Decl. Exh. 1 (TOU) at ¶
21 | XIV.A.4. This binding arbitration "shall be commenced and conducted under the Commercial
22 | Arbitration Rules of the American Arbitration Association ("AAA") and, where appropriate, the
23 | AAA's Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules")."
24 | *Id.* The arbitration provision warns users that "YOU UNDERSTAND THAT ABSENT THIS
25 | PROVISION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND HAVE A JURY
26 | TRIAL." *Id.* ¶ XIV.A.4. Through this Motion, Defendants hereby elect to arbitrate this dispute
27 | in accordance with the TOU's arbitration clause, and that election should be enforced.

28 |

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

This arbitration provision is fair and enforceable under the Federal Arbitration Act. The Federal Arbitration Act and the Supreme Court's mandates strongly favor arbitration. Agreements to arbitrate are fully enforceable under the Federal Arbitration Act, unless a party to the agreement proves that he or she would be entitled to revocation of the agreement under generally applicable state-law principles. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1744 (2011). The law embodies a strong, liberal national policy favoring arbitration. *Id.* at 1749 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). State rules that interfere with and restrict arbitration, even under the guise of purportedly general-purpose doctrines such as unconscionability, are preempted and void under the FAA. *Concepcion*, 131 S.Ct. at 1746-47. In evaluating a motion to compel arbitration, the court considers only the arbitration provision at issue—not the validity of any other provisions of the contract. *Buckeye Check Cashing*, 546 U.S. at 449 ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.")

Thus, in order to avoid arbitration for her dispute, Plaintiff must prove that the arbitration provision is both procedurally and substantively unconscionable under California law, within the preemptive constraints of the Federal Arbitration Act. *See Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (California standard); Cal. Civ. Code § 1670.5 (allowing courts not to enforce unconscionable contract provisions). Procedural and substantive unconscionability are judged on a sliding scale: the more substantively unconscionable a contract term is, the less procedural unconscionability is required to find the term unenforceable. *Armendariz*, 24 Cal. 4th at 114. Plaintiff cannot satisfy *either* standard.

**1.      The arbitration clause is not substantively unconscionable.**

To be found substantively unconscionable, a contract provision must be not just unreasonable or unfair, but "so one-sided as to 'shock the conscience.'" *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1322 (2005) (citation omitted). The arbitration provision here is fair, contrary to the incomplete and conclusory allegations of Plaintiff's

8

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

1    Complaint, and does not "shock the conscience."

2    **_First_**, the arbitration procedure is fair. The arbitration clause provides an expedient, low-

3    cost mechanism for resolving Plaintiff's dispute: "[a]rbitration may be conducted in person,

4    through the submission of documents, by phone, or online." TOU XIV.A.4. Indeed, for

5    Plaintiff, arbitration under these terms provides a much cheaper, faster mechanism for resolving

6    her claim than the instant lawsuit likely would. Nor is the arbitration clause one-sided: it permits

7    either party to challenge an arbitration award if the arbitrator fails to follow applicable law, to

8    move to compel arbitration or stay proceedings, or to vacate an award. _Id._ While Plaintiff

9    claims that the TOU are "one-sided" because they do not provide for her to recover costs or

10   attorneys' fees if she prevails, the agreement does not provide for _either_ party to recover fees

11   (either in arbitration or in court) nor does it expressly prohibit either party from recovering fees

12   that might be available on any independent basis. _Id._ In any event, mere failure to provide for

13   recovery of attorneys' fees is not substantively unconscionable. _See Monex Deposit Co. v._

14   _Gilliam_, 671 F. Supp. 2d 1137, 1147 (C.D. Cal. 2009) (upholding term barring fee recovery).[2]

15   **_Second_**, the arbitration fees are fair. The agreement expressly states that arbitration fees

16   are limited by the AAA Consumer Rules. TOU § XIV.A.4 ("Your arbitration fees and your

17   share of arbitrator compensation shall be governed by the AAA Rules and, where appropriate,

18   limited by the AAA Consumer Rules."). Although Plaintiff contends that the TOU are

19   unconscionable because they would allegedly require her to pay a $775 filing fee to arbitrate her

20   claims, the actual fees (if any) would be much lower. For consumer claims under $10,000, like

21   the one alleged here, the only fee required from Plaintiff would be $125 (which would be

22   refunded if not used). Request for Judicial Notice Exh. A at 8 (AAA Supplementary Procedures

23   for Consumer-Related Disputes, "Fees and Deposits to be Paid by the Consumer"); _id._ Exh. B at

24

25   [2] Plaintiff's argument that the indemnification provision of the TOU (TOU § XII) allows Google
     to seek indemnification Google's attorneys' fees arising from Plaintiff's own claims against it
26   (Complaint ¶ 75(f)), fails because that is not a reasonable interpretation of the plain terms of that
     provision. The indemnification provision expressly requires indemnity of "attorneys' fees" for
27   claims made by a "third party"—not claims made by Plaintiff herself. TOU § XII.

28                                                        9

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

1  2 ("Who pays the arbitration costs?"). The Company would pay a larger initial fee, as well as

2  "all arbitrator compensation deposits" beyond the consumer's allotted fee. *Id.* Exh. A at 8-9

3  ("Fees and Deposits to be Paid by the Business"). If the arbitrator deemed the $125 fee too

4  expensive, Plaintiff would pay nothing at all: the arbitration clause specifically provides that the

5  "Company will pay all arbitration fees and expenses." TOU XIV.A.4.

6      ***Third,*** the bar on class arbitration is not unconscionable, under the Supreme Court's

7  recent decision in *AT&T Mobility v. Concepcion*. *Concepcion*, 131 S. Ct. at 1746-47.

8  *Concepcion* held that class action arbitration waivers are fully enforceable, and that the FAA's

9  strong federal policy in favor of arbitration preempted a contrary California rule that invalidated

10  almost all consumer class arbitration waivers as unconscionable (the *Discover Bank* rule). *Id.*

11  Accordingly, *Concepcion* enforced a waiver of class arbitration similar to the one at issue here,

12  finding that it could not be set aside as unconscionable even though California courts had

13  previously found waivers of class *litigation* to be unenforceable for certain types of claims. *See*

14  *id.*; *AOL, Inc. v. Sup. Ct.*, 90 Cal. App. 4th 1, 4-5 (2001) (rejecting waiver of class litigation).

15      ***Fourth,*** Plaintiff's challenges to other provisions, such as the waiver of injunctive relief

16  claims, are irrelevant to the enforcement of the arbitration clause because they apply equally in

17  arbitration or in court. TOU ¶ XIV.A.2. Because they are part of the broader TOU contract—

18  not the arbitration agreement at issue on Defendants' motion to compel arbitration—they are not

19  relevant to determining whether the arbitration agreement is enforceable. *See Buckeye*, 546 U.S.

20  at 449; TOU § XIV.A.6. In other words, whether these provisions are enforceable or not is a

21  contract law question that, like Plaintiff's other claims, is subject to arbitration.

22      The arbitration clause in the SuperPoke! Pets TOU gives Plaintiff a fair mechanism to

23  resolve her claims in arbitration. It is not substantively unconscionable, and it must be enforced.

24      **2.**     **The arbitration provision is not procedurally unconscionable.**

25      Because the arbitration provision is not substantively unconscionable, it cannot be found

26  unconscionable under California's two-part test (which requires *both* substantive and procedural

27  unconscionability to invalidate a contract). If the Court chooses to consider procedural

28

10

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

1   unconscionability, the arbitration clause here passes this test as well. California law requires

2   actual oppression or surprise to find a contract procedurally unconscionable; merely labeling a

3   contract an adhesion contract does not make it unconscionable or unenforceable. *Morris*, 128

4   Cal. App. 4th at 1318; *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 483 (2006). There can be

5   no claim of "oppression" here. Under California law, a contract for a "nonessential recreational

6   activity," like playing an online video game, cannot be procedurally unconscionable because "the

7   consumer always has the option of simply forgoing the activity." *Belton v. Comcast Cable*

8   *Holdings, LLC*, 151 Cal. App. 4th 1224, 1245-46 (2007) (refusing to find oppression in contract

9   for cable music service); *see also Pokrass v. The DirecTV Group, Inc.*, No. EDCV 07-423-VAP,

10  2008 WL 2897084 (C.D. Cal. July 14, 2008) ("[T]here appears to be no disagreement among

11  California courts that contracts for nonessential recreational activities cannot be procedurally

12  unconscionable.").

13       As in *Belton*, Plaintiff cannot allege that she was under pressure of any kind to play

14  SuperPoke! Pets in her leisure time instead of playing other online games or engaging in other

15  similar recreational activities (or none at all). Unlike a consumer seeking medical care, or an

16  employee compelled to accept arbitration to maintain employment, or even an individual seeking

17  less urgent life essentials, potential users of SuperPoke! Pets were under no external pressure to

18  accept the game's terms, and no "oppression" exists here as a matter of law. *Belton*, 151 Cal.

19  App. 4th at 1245-46. *Cf. Morris*, 128 Cal. App. 4th at 1320-21 (discussing cases finding

20  oppression in medical and employment situations).

21       Moreover, Plaintiff makes no allegations of "surprise" that would support a finding of

22  procedural unconscionability, nor does the text of the TOU support such a finding. The

23  Complaint admits that a "contract was made" as to the TOU, yet claims that it was "an adhesion

24  contract" because the parties "did not have equal bargaining power at the time," because Plaintiff

25  "had no opportunity to negotiate any specific terms," and because the substantive terms allegedly

26

27

28

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

1    "solely favor[] Defendants."[3]  Complaint ¶ 63.  These allegations conclusively establish the

2    existence of the TOU contract and they are inconsistent with any claim of surprise.  *See Am. Title*

3    *Ins. Co. v. Lacelaw Corp.*, 861 F. 2d 224, 226 (9th Cir. 1988) (holding factual assertions in

4    pleadings are judicial admissions "conclusively binding on the party who made them");

5    *Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1065 (D. Ariz. 1997)

6    (applying *Lacelaw* to enforce arbitration agreement).  In addition, as recently as September 15,

7    2010, Plaintiff affirmatively agreed that her use of all Slide services—including play of

8    Superpoke! Pets—was governed by the Slide TOU.  Michalek Decl. ¶ 3; Ex. 2.  By doing so,

9    Plaintiff received clear notice that "YOUR USE OF ANY OF THE SERVICES CONSTITUTES

10   YOUR AGREEMENT TO THESE TERMS."  *Id.* Exh. 3.[4]

11        No procedurally unconscionable surprise occurred here, because the arbitration

12   agreement is not unreasonably concealed or disguised within the broader TOU.  Rather, it

13   appears within a section of the TOU for "Miscellaneous" items, under the heading (in bold text)

14   **"Governing Law/Resolution of Disputes/Waiver of Injunctive Relief."**  TOU § XIV.A.  The

15   arbitration provision itself carries the bold heading **"Binding Arbitration"** and includes a

16   capitalized warning as follows: "YOU UNDERSTAND THAT ABSENT THIS PROVISION,

17   YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND HAVE A JURY TRIAL."  TOU

18   § XIV.A.4.  The arbitration provision was clearly visible to any user who glanced through even

19   the headings of the document—and the beginning of the TOU cautioned users that the terms

20   would be binding on them if they chose to play the game: "If you do not agree to be bound by

21   these Terms in their entirety, you must cease accessing or otherwise using the Services in any

22   way. YOUR USE OF ANY OF THE SERVICES CONSTITUTES YOUR AGREEMENT TO

23

24   [3] A contract of adhesion is nevertheless fully enforceable unless it falls outside of the reasonable
     expectations of the weaker party or is unduly oppressive or unconscionable; this inquiry is
25   effectively the same as the more modern analysis of substantive and procedural
     unconscionability.  *Morris*, 128 Cal. App. 4th at 1317 (discussing *Graham v. Scissor–Tail, Inc.*,
26   28 Cal. 3d 807, 820 (1981)).

27   [4] The TOU in effect as of September 15, 2010 contain the same arbitration clause as the most
     recent TOU.  *Compare* Michalek Decl. Exh. 1 *with* Michalek Decl. Exh. 3.

28

12

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

THESE TERMS." TOU (preamble) (capitalization original). If a user chose to ignore that warning, that does not make the contract procedurally unconscionable or excuse her from its terms.[5] *See Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 964 (9th Cir. 2012) (failure to read a contract does not make arbitration term unenforceable); *Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1318-19 (1986) (same).

Because the TOU's arbitration provision is valid and enforceable under California law and the FAA, Plaintiff's claims should be ordered to arbitration.

### B. Alternatively, Plaintiff's Complaint Must be Dismissed Because Plaintiff Cannot State Any Valid Claim Against Google or Slide.

Alternatively, Plaintiff's Complaint should be dismissed in its entirety for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). A complaint can survive a motion to dismiss under Rule 12(b)(6) only if it asserts a cognizable legal claim and sets forth factual allegations sufficient to make that legal claim a plausible, not merely conceivable, claim for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). Although courts generally must accept well-pleaded factual allegations as true, a court need not credit "allegations that contradict matters properly subject to judicial notice or by exhibit," or "unwarranted deductions of fact [and] unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

At its core, Plaintiff complains it is unfair that she could not receive any lasting or tangible benefits by playing a virtual online game, in spite of her alleged "investment" of actual money to enhance her playing experience. *See* Complaint ¶ 2. Whatever the legal theory, this is not a cognizable or a plausible claim. The Complaint and the TOU it relies on make clear that

---

[5] Plaintiff should be compelled to arbitrate all of her claims. If any of Plaintiff's claims are not sent to arbitration, however, they should be stayed pending arbitration. 9 U.S.C. § 3.

13

653504.02

1     Plaintiff received exactly what she signed up for and exactly what Google and Slide reasonably

2     agreed to provide.  There is nothing unfair or misleading either about that agreement or about

3     Defendants' decision to discontinue the game and the announcements they made about that

4     decision.  Plaintiff also does not plausibly allege that she or anyone else has incurred any real

5     harm from the conduct she challenges.  She signed up to play an online game under clear terms

6     of use setting the ground rules of that game, chose to spend money to enhance her play, and

7     played the game on those terms beginning in 2009.  Then, after Defendants decided to shut down

8     the game, Plaintiff received six more months to play, and two different options for preserving a

9     modified form of her virtual items.[6]  She has suffered no cognizable harm.

10          As discussed below, Plaintiff's claims are legally defective, self-contradictory, and

11     factually implausible, and must be dismissed in their entirety.

12          **1.     Plaintiff's First and Second Causes of Action must be dismissed.**

13               **a.     Plaintiff cannot challenge provisions of the TOU unless she
                     alleges that those particular provisions are being enforced
14                     against her and causing her injury, which she has not done.**

15          Plaintiff's First and Second Causes of Action (Complaint ¶ 62-92) fail because she lacks

16     standing to bring them.  To have standing, Plaintiff must allege an "injury in fact" that is

17     "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends*

18     *of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

19          Plaintiff's disjointed allegations seek a declaratory judgment that certain provisions of the

20     TOU are unconscionable, but the provisions that she identifies are irrelevant to her alleged

21     injury.  For example, while Plaintiff claims it is unconscionable that certain TOU provisions

22     allowed Defendants to cancel her account and virtual items or currency "without notice" or "for

23     no reason," she does not allege that Defendants did that. *See* Complaint ¶ 67.  Also, while she

24     claims that a clause providing for the user to indemnify the Company for acts of third parties is

25

26     _____

       [6] In context, even six months' notice was substantial: as of the June 2011 announcements, the
27     game had been available for a little more than three years, since April 2008.  See Complaint ¶ 9.
       Plaintiff herself had been playing for only approximately two years, since 2009.  Complaint ¶ 49.

28                                                       14

653504.02

1  unconscionable (Complaint ¶ 69), Plaintiff identifies no request by Defendants for such

2  indemnification.  Further, while she challenges provisions limiting the period of damages and

3  selecting a one-year statute of limitations (Complaint ¶¶ 71, 73), she identifies no actionable

4  harm caused by Defendants.  In essence, while Plaintiff's First and Second Causes of Action

5  complain that the TOU contain "get out of jail free" clauses (Complaint ¶ 65), she fails to allege

6  any wrongful conduct that would put use of a "get out of jail free" clause at issue.  Accordingly,

7  these claims must be dismissed because Plaintiff lacks standing to challenge them.  *Arellano v.*

8  *T-Mobile USA, Inc.*, No. C 10-05663 WHA 2011 WL 1362165, *5 (N.D. Cal. April 11, 2011)

9  (refusing to address provision allowing unilateral contract amendment, where no such

10  amendment had been made for plaintiff).

11      Indeed, the essence of Plaintiff's Complaint is that Slide and Google were somehow

12  obligated to keep Superpoke! Pets operational indefinitely.  But Plaintiff does not challenge the

13  provisions of the TOU that expressly permitted Defendants to discontinue the game and that

14  provided that purchases of virtual items are nonrefundable.  Nor could she challenge them.  It

15  defies common sense to claim that a company must either maintain an online game indefinitely

16  once it is offered, or refund its customers all of their money upon termination if it ever terminates

17  the game.  The terms Plaintiff challenges simply are not applicable to her alleged harm.

18      Because Plaintiff cannot allege any "injury in fact" that is "concrete and particularized"

19  and "actual or imminent, not conjectural or hypothetical," these claims must be dismissed.

20  *Friends of the Earth*, 528 U.S. at 180.

21              **b.**    **The SuperPoke! Pets Terms of Use are not unlawfully
22                    "exculpatory," unconscionable or illusory.**

23      Further, the First and Second Causes of Action fail for the additional reason that the TOU

24  are not unlawful, unconscionable or illusory as a matter of law.[7]  As explained above, far from

---

25  [7] These claims for declaratory relief invoke California Civil Code § 1670.5 or 1668 (*see*
26  Complaint ¶ 83), and claim that the TOU are "illusory" and "lack mutuality" (*see* Complaint ¶
   87).  Civil Code Section 1670.5 codifies the same unconscionability standard previously
27  discussed.  Civil Code Section 1668 prohibits contracts that exempt a party "from responsibility
for his own fraud, or willful injury to the person or property of another, or violation of law."

28

15

653504.02

1 | condoning fraud or other misbehavior, the TOU set clear ground rules for the game and
2 | cautioned users that given the nature of the game, users have no property rights in the game at
3 | all. TOU § IV.B.[8]  Another section of the TOU clarified that the game "include[s] a component
4 | of fictional currency" known as Gold ("Virtual Currency"), but that "[r]egardless of terminology
5 | used, Virtual Currency represents a limited license right governed solely under these Terms, and
6 | is not redeemable for any sum of money or monetary value from the Company at any time,
7 | unless these Terms are amended to so provide." TOU § VI.A.  Yet another section—titled
8 | "Virtual Currency/Virtual Goods Have No Cash Value"—required users to "acknowledge and
9 | agree that Virtual Currency and Virtual Goods have no cash value and that neither the Company
10 | nor any other person has any obligation to exchange your Virtual Currency/Virtual Goods for
11 | anything of value." TOU § VI.D.

12 | Nor can Plaintiff succeed in challenging provisions of the TOU that allow Defendants to
13 | terminate individual players' accounts and the virtual items associated with them (Complaint ¶
14 | 66-68), and limit remedies in related disputes.  Those provisions are reasonable and fair in the
15 | context established by the rest of the TOU and the circumstances of the game.  It does not "shock
16 | the conscience," which is required to show substantive unconscionability, as discussed above, for
17 | the provider of an internet game involving fictional virtual pets and their accessories (including
18 | such items as virtual "hot dogs" and "stuffed animals") to reserve the right to stop offering the
19 | game and the fictional items in it, or to limit the remedies that players can recover in the event of
20 | disputes over fictional items included as part of the game.  *Morris*, 128 Cal. App. 4th at 1322;
21 | *Belton*, 151 Cal. App. 4th at 1245-46.  None of the challenged provisions is unconscionable.

22 | For example, reasonable parties could agree (as they did here in the TOU) that after more
23 | than 90 days had passed, a player of SuperPoke! Pets would have enjoyed all the benefits of a
24 | particular virtual purchase and should not be allowed to recover any related damages beyond that

25 |

---

26 | [8] In fact, California law holds that a contract for a "nonessential recreational activity" like
27 | SuperPoke! Pets *cannot* be oppressive and procedurally unconscionable because (as previously discussed in Section III.A) "the consumer always has the option of simply forgoing the activity." *Belton*, 151 Cal. App. 4th at 1245-46 (considering contract for cable music service).

28 |

1  period. *See West v. Henderson*, 227 Cal. App. 3d 1578, 1588 (1991) (upholding six-month

2  limitations period that applied only to tenant). Also, contrary to Plaintiff's allegations, the 30-

3  day informal dispute resolution requirement (TOU § XIV.A.3) does not reduce the 90-day

4  damages limit as Plaintiff claims (Complaint ¶ 74(d)): the 90-day limit specifically includes the

5  90 days "immediately preceding the date on which [a user] first assert[s] [a] claim," including in

6  informal negotiations, not the date on which a claim is formally filed. TOU § XI.C.

7      Similarly, the same parties could also reasonably agree for players to waive injunctive

8  relief, recognizing that the nonessential nature of the game and the limits of the parties'

9  substantive rights meant a player would in any event be unable to demonstrate "irreparable

10  injury" or "inadequacy of legal remedies"—both of which are essential to any right to injunctive

11  relief. *See Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982) ("[T]he basis for

12  injunctive relief in the federal courts has always been irreparable injury and the inadequacy of

13  legal remedies."). At the same time, Defendants as the providers of the game could reasonably

14  retain greater rights to seek damages and injunctive relief—as necessary to protect the game and

15  the game's other users, as well as the company's business interests, from abuse by players. The

16  TOU expressly required Plaintiff to "acknowledge that the rights granted and obligations made

17  hereunder to [Defendants] are of a unique and irreplaceable nature, the loss of which shall

18  irreparably harm the company and which cannot be replaced by monetary damages alone." TOU

19  § XIV.A.2. As an example, Defendants might need injunctive relief to enforce the TOU's

20  prohibitions against reverse engineering the software, "disseminat[ing] or transmit[ting] viruses,"

21  sending spam, or tricking users into revealing sensitive information. *See* TOU § VIII.C.

22      And while Plaintiff challenges the one-year limitations period in the TOU (TOU §

23  XIV.D), parties to a contract can modify the limitations period that would otherwise apply to an

24  action "so long as the time allowed is reasonable." *Soltani v. W.&S. Life Ins. Co.*, 258 F.3d

25  1038, 1043 (9th Cir. 2001) (quoting *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995)).

26  This rule is well settled in California law. *See Hambrecht & Quist Venture Partners v. Am. Med.

27  Int'l, Inc.*, 38 Cal. App. 4th 1532, 1548 (1995). A one-year limitations period is ample,

28

17

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

especially in this context.  Courts regularly uphold even shorter contractual limitations periods

under California law.  *Soltani*, 258 F.3d at 1043-44 (upholding six-month limitations period in

employment contract; discussing cases enforcing even shorter periods).[9]

     None of the challenged TOU provisions is unconscionable or exculpatory, and Plaintiff's

First and Second Causes of Action must be dismissed.

     **2.**      **Plaintiff's Third Cause of Action fails to state a cognizable legal claim.**

     In addition to all of the substantive reasons that Plaintiff is not entitled to relief of any

kind, discussed herein, Plaintiff's Third Cause of Action for "Injunctive Relief" (Complaint ¶ 93-

97) must be dismissed:  "[I]njunctive relief 'is a remedy and not, in itself, a cause of action, and a

cause of action must exist before injunctive relief may be granted.'" *Vissuet v. Indymac*

*Mortgage Services*, No. 09-CV-2321, 2010 WL 1031013, *7 (S.D. Cal. March 19, 2010)

(quoting *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168 (1942) (citation omitted)).  Moreover,

because each of Plaintiff's claims fails for separate reasons, "injunctive relief" is not available

even as a remedy.

     **3.**      **Plaintiffs' Fourth Cause of Action for violation of the Consumer Legal Remedies Act (CLRA) must be dismissed with prejudice because Plaintiff has not alleged any unlawful conduct and Plaintiff failed to provide mandatory statutory notice of her claims.**

     Plaintiff's CLRA claim is fatally flawed.  First, Plaintiff fails to allege deceptive or

fraudulent conduct.  Second, Plaintiff failed to notify Defendants of her specific CLRA claim

before seeking damages in court, as the CLRA strictly requires to protect business owners and

promote prompt resolution of legitimate claims.

---

[9] Even if the Court were to find any specific provision of the TOU unenforceable, which it should not on these facts, the rest of the TOU should still be enforced.  Under California law, unconscionable provisions should be severed unless an agreement is "permeated by unconscionability." *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1477-78 (2009). Moreover, the TOU includes a severance provision, which is fair and enforceable in this context, providing that all terms "shall continue to be in full force and effect" except to the extent that they are found to be unenforceable.  TOU § XIV.B.2.

18

653504.02

### a.       Plaintiff has not alleged any cognizable CLRA claim.

Plaintiff's CLRA claim fails because the TOU and other documents Plaintiff relies on contradict and fatally undermine Plaintiff's conclusory allegations that Defendants' conduct was deceptive or unconscionable, and Plaintiff's claim does not involve goods or services covered by the CLRA, among other defects.  To state a CLRA claim, Plaintiff must allege that Defendants engaged in a particular "method, act, or practice declared to be unlawful by [Civil Code] Section 1770," that the plaintiff has "suffer[ed] . . . damage," and a causal link between the two such that the damage occurred as "a result of" the unlawful practice. *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009); Cal. Civ. Code § 1780.  Under Section 1770, the unlawful practice must occur in a transaction intended to result or resulting in the sale of goods or services to a consumer.  Cal. Civ. Code § 1770(a).

None of Plaintiff's allegations meet this standard.  Plaintiff claims that Defendants violated the CLRA by: (1) "[i]n violation of [Cal. Civ. Code] § 1770(5), representing that goods or services have characteristics, uses, or benefits which they do not have," (2) "[i]n violation of § 1770(9), advertising goods and services with intent not to sell them as advertised," (3) "[i]n violation of § 1770(1)[10], representing that a transaction confers or involves rights, remedies, or obligations which it does not involve," and (4) "[i]n violation of § 1770(19), inserting an unconscionable provision in a contract."  Complaint ¶ 106.

*First*, these conclusory statements, which simply parrot the language of the cited statutes (almost verbatim) without offering any supporting facts, are not plausible factual allegations that can sustain Plaintiff's claim. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").

*Second*, Plaintiff's assertion that she obtained "goods" or "services" protected under the CLRA as a result of her SuperPoke! Pets play fails as a matter of law.  The CLRA expressly

---

[10] This language actually corresponds to Civil Code Section 1770(14), not the section cited here.

19

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

1    defines goods as "*tangible* chattels," which could not include intangible elements of an online

2    game like the virtual items at issue here. *See* Complaint ¶ 103; Cal. Civ. Code § 1761(a)

3    (defining "goods" under the CLRA).   Likewise, by granting her a limited license to use the

4    SuperPoke! Pets software (not any tangible goods), Defendants did not provide Plaintiff with

5    "services" as the CLRA defines that term.  Providing access to an intangible good like software

6    is not a protected "service" under the CLRA because it "is not work or labor, nor is it related to

7    the sale or repair of any tangible chattel." *See Fairbanks v. Sup. Ct.*, 46 Cal. 4th 56, 61 (2009)

8    (holding life insurance is not a service); Cal. Civ. Code § 1761(b) (defining "services").  Thus,

9    "the CLRA does not cover transactions relating to the sale or lease of software," because

10   software is neither a tangible good nor a service as defined in the CLRA. *Ferrington v. McAfee,*

11   *Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169, *14 (N.D. Cal. Oct. 5, 2010).

12       **Third**, to the extent that Plaintiff's nebulous CLRA claim targets: (1) Defendants'

13   announcements of changes to the game in June 2011; (2) Defendants' decision to terminate the

14   game; and (3) Defendants' decision not to give refunds to players who had purchased "gold"

15   within the game or signed up for VIP status, it fails because none of these assertions allege

16   unlawful or deceptive conduct.  As explained above, these allegations are contradicted by the

17   TOU, which (1) made clear that users received only a limited license to use the game (TOU §

18   IV.B); (2) affirmatively cautioned players that the company could discontinue or alter the game

19   at any time (TOU § II.B); and (3) made clear that SuperPoke Pets!'s "virtual currency" created

20   no property rights and that all sales were final (TOU § VI.A and TOU § VI.F).

21       **Fourth**, the TOU and the actual text of the June 2011 announcements about SuperPoke!

22   Pets contradict Plaintiff's claims that Defendants acted deceptively or misrepresented the limited

23   nature of players' rights and expectations related to the game. Michalek Decl. Exhs. 4 & 5.  No

24   reasonable user could have expected lifetime or guaranteed enjoyment of any virtual items

25   purchased in the game, based on the nature of the game and Defendants' statements that the

26   game would remain available for the "foreseeable future." *Id.*  Any claim that Defendants'

27   conduct was deceptive is not plausible, because the TOU under which users played the game

28
                                                          20
     NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
     DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
                                   Case No. 5:12-cv-00412 WHA

1  made clear that virtual items had no monetary or enduring value and were nonrefundable, and

2  that the game could be shut down at any time.[11]

3      ***Finally***, Plaintiff's CLRA claim also fails because Plaintiff does not allege any injury,

4  and relief is available under the CLRA only to a "consumer who suffers any damage as a result"

5  of unlawful conduct. Cal. Civ. Code § 1780(a). Because Plaintiff agreed in the TOU that virtual

6  items and currency had *no* cash value and conveyed no ownership rights (see above), Plaintiff

7  cannot claim injury from "diminution in value of th[ose] virtual items" or plausibly characterize

8  her in-game payments as "investments." *See* Complaint ¶ 109, 47. Moreover, since Plaintiff

9  alleges that the ability to purchase "Gold" items was eliminated in July 2011, Plaintiff had eight

10  months to enjoy any items she "purchased" in the game allegedly as a result of the

11  announcements Defendants made about the game. Plaintiff also alleges that Defendants gave

12  SPP users a full six months' warning that they intended to shut down the game in March 2012,

13  and that Defendants gave users two options for keeping a memento of their fictional pets once

14  the game was shut down. Complaint ¶ 44, 46. Thus, Plaintiff suffered no damages, her alleged

15  injury that Defendants have "entirely strip[ped] the value" from her purchases is not plausible on

16  its face, and her CLRA claim must be dismissed. Complaint ¶ 47.

17          **b.**    **Plaintiff failed to comply with statutory prerequisites to filing damage claims under the CLRA.**

18

19      Plaintiff's CLRA claim also fails procedurally. The CLRA requires a plaintiff seeking

20  damages under that statute to give defendants specific notice of the "particular alleged violations

21  of Section 1770" at least 30 days prior to filing a claim seeking damages under the CLRA, to

22  allow defendants a reasonable opportunity to correct any actual statutory violations. Cal. Civ.

23  Code § 1782(a). Specifically, at least 30 days before filing a damages suit, a consumer must

24  "[n]otify the person alleged to have employed or committed methods, acts, or practices declared

25  ─────────────────────────

26  [11] Moreover, to the extent that Plaintiff's CLRA claim alleges fraudulent conduct, it also must be dismissed for failure to comply with the Fed. R. Civ. P. 9(b) requirement that claims of fraud

27  must be pled with particularity, because Plaintiff fails to allege any specific fraudulent statements, or how, when, and by whom they were made.

28

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

unlawful by Section 1770 of the particular alleged violations of Section 1770" and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation." *Id.* Plaintiff's Complaint "seeks injunctive relief and monetary damages under the CLRA."[12] Complaint ¶ 109. Plaintiff did not provide notice complying with Section 1782(a) before filing this action, however, nor has she alleged that she gave the required notice. Federal courts have required "[s]trict adherence to the statute's notice provision . . . to accomplish the [CLRA's] goals of expeditious remediation before litigation." *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195-96 (S.D. Cal. 2005). Plaintiff's claim for damages should therefore be dismissed with prejudice.[13] *Id.*; *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003); *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (dismissing without prejudice).

Plaintiff's CLRA claim should also be dismissed because Plaintiff did not comply with the CLRA's requirement that "[i]n any action [under the CLRA], concurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action." Cal. Civ.Code § 1780(d). If "a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice." *Id.*; *see In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F.Supp.2d 1077, 1093–94 (S.D. Cal. 2010) (dismissing CLRA claim because plaintiffs failed to provide the required affidavit); *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F.

---

[12] Immediately following this statement, Plaintiff also states that "[f]or the sake of clarity, Plaintiff specifically disclaims any right to recover damages under the CLRA at this time." Complaint ¶ 109. The intended import of this statement is unclear.

[13] Defendants do not intend to suggest that Plaintiff gave no notice whatsoever of an impending dispute related to SuperPoke! Pets. Plaintiff's counsel sent Defendants a two-paragraph letter on September 9, 2011, asserting that "the Terms of Use that purportedly govern the use of the SPP application, which contain numerous ambiguous, illusory, and consumer unfriendly terms, is invalid and unenforceable with respect to Ms. Abreu's claims," and purporting to give notice of Plaintiff's claims "pursuant to Section XIV(A)(3) of the . . . Terms of Use." This letter did not identify the claims at issue or the nature of the alleged wrongful conduct by Defendants, however, as required to comply with the CLRA notice provision.

22

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412-WHA

653504.02

Supp. 2d at 1077. Plaintiff filed no such affidavit.

### 4. Plaintiff's Fifth Cause of Action for violation of California's Unfair Competition Law must be dismissed.

Plaintiff's Section 17200 claim is similarly flawed. Plaintiff's claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, seeks relief under each of the three prongs of the UCL—claiming "unlawful," "unfair", and "fraudulent" conduct by Defendants—but fails for the same fundamental reasons as her other claims. Plaintiff knowingly paid real money to play a virtual game, under terms of use that made clear she was getting nothing more than a temporary right to play the game, and she has had ample time to play the game and enjoy the benefits of her purchases. As alleged, there is nothing unlawful, unfair or fraudulent about Defendants' conduct, and this claim must be dismissed.

#### a. Defendants' alleged conduct was not unlawful.

Plaintiff's UCL claim for "unlawful" conduct must be dismissed because it depends on Plaintiff's defective CLRA claim, and fails along with that claim for of all the reasons previously discussed. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001) (holding conduct that did not violate borrowed statute was not "unlawful" under Section 17200).

#### b. Defendants' alleged conduct was not unfair.

Second, Plaintiff's UCL claim for "unfair" conduct must also be dismissed. Plaintiff has not plausibly alleged the three elements that are required to show "unfairness" under the UCL: "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006); *see Kilgore v. Keybank, Nat'l Ass'n*, 712 F. Supp. 2d 939, 951-52 (N.D. Cal. 2010) (applying *Camacho*), vacated on other grounds, 673 F.3d 947 (9th Cir. 2012).

Here, there is nothing unfair about the actual TOU or Defendants' alleged conduct, and Defendants caused no injury to Plaintiff or anyone else. Plaintiffs' UCL claim thus fails because she cannot satisfy the statutory requirement that a plaintiff must have "suffered injury in fact and

23

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02

[have] lost money or property as a result of the [alleged] unfair competition." Cal. Bus. & Prof. Code § 17204. Also, Defendants' reservation of rights to its software (including the right to stop offering it) logically benefited consumers by allowing Defendants to offer the game for users' enjoyment for the three years of its existence. As a matter of common sense, no rational business owner would offer the game at all if doing so required the owner to maintain it in perpetuity. Since Plaintiff alleges no plausible injury as a result of Defendants' conduct, the benefits of Defendants' actions outweigh that non-existent injury. *See* Complaint ¶ 114.

### c. Defendants' alleged conduct was not fraudulent.

Plaintiff's UCL claims based on "fraudulent" conduct (including the remainder of her "unfair" conduct claim discussed above, which also depends on deceptive or fraudulent conduct) must also be dismissed. These claims depend on the same facially contradictory and implausible allegations discussed above, Plaintiff alleges no real injury, and Plaintiff fails to plead the alleged fraudulent conduct with particularity under Rule 9(b). To the extent that Plaintiff might appear to state any superficially cognizable claim here, her claim must be rejected under *Twombly* and *Iqbal* because it simply recites conclusory statutory elements in the guise of facts. *See* Complaint ¶ 116. Plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555.

### 5. Plaintiff's Sixth Cause of Action for "Fraud in the Inducement" must be dismissed.

Plaintiff states no plausible claim of fraud of any kind, for all the reasons described above. Plaintiff was told that Defendants could terminate the game at any time and that her fictional purchases of fictional currency or items did not create any actual property rights, and as explained above, her Complaint and the documents referenced therein indicate that the only specific factual allegations she claims were fraudulent were in fact true or were never made.

Plaintiff's fraud claim, like her UCL claims of "fraudulent" conduct, is also inadequate under Rule 9(b) and *Twombly*/*Iqbal* pleading requirements. Plaintiff makes no plausible specific

24

653504.02

factual allegations of false statements by defendants or actual reliance on those statements by Plaintiff, and thus fails to plead the alleged fraud with particularity as required under Rule 9(b). Plaintiff's allegations are deficient, implausible, and contrary to the actual written record, to the extent they relate to Defendants' termination of the game and related announcements, and the Court is not required to credit them. *See* Complaint ¶ 120, 121; *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049 at 1055. Plaintiff also makes no specific factual allegations at all to support her claim that Defendants engaged in fraudulent conduct related to the alleged "limited quantity" of certain items in the game available for purchase with virtual "Gold." *See* Complaint ¶ 122.

**6.      Plaintiffs' Seventh Cause of Action for "Unjust Enrichment" must be dismissed because no such cause of action exists in California.**

Finally, Plaintiff's Seventh Cause of Action, for "Unjust Enrichment," is fatally defective because no such independent cause of action exists in California. As a court in this district recently explained, "courts have repeatedly held that 'there is no cause of action in California for unjust enrichment.'" *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d at 1077 (citation omitted). This cause of action also must be rejected. Plaintiff's defective claims also offer no basis for any remedy premised on unjust enrichment.

## IV.      CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court compel Plaintiff to arbitrate the claims asserted in this action, as required under the SuperPoke! Pets TOU on which Plaintiff's claims rely. In the alternative, Defendants request that the Complaint be dismissed in its entirety for failure to state any claim on which relief can be granted.

Respectfully submitted,

Dated:  April 24, 2012                       KEKER & VAN NEST LLP

                                                          *Steven K. Taylor*
                                     By:      STEVEN K. TAYLOR

                                     Attorneys for Defendants
                                     SLIDE, INC. and GOOGLE INC.

25

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

653504.02