# EXHIBIT E

1   KEKER & VAN NEST LLP
    ROBERT A. VAN NEST, #84065
2   rvannest@kvn.com
    STEVEN K. TAYLOR, #204668
3   staylor@kvn.com
    BENEDICT Y. HUR, #224018
4   bhur@kvn.com
    AUDREY WALTON-HADLOCK, #250574
5   awaltonhadlock@kvn.com
    633 Battery Street
6   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
7   Facsimile:    415 397 7188
    Attorneys for Defendants
8   SLIDE, INC. and GOOGLE INC.

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13   CHRISTALEE ABREU, individually and on       Case No. CV12-00412-WHA
     behalf of a class of similarly situated
14   individuals,                                [Removed from Santa Clara County Superior
                                                 Court Action No. 1:11-CV-215376]
15                  Plaintiffs,
                                                 **NOTICE OF MOTION AND MOTION TO
16          v.                                   COMPEL ARBITRATION OF
                                                 PLAINTIFF'S FIRST AMENDED
17   SLIDE, INC. and GOOGLE INC.,                COMPLAINT OR, IN THE
                                                 ALTERNATIVE, TO DISMISS UNDER
18                  Defendants.                  RULE 12(b)(6); MEMORANDUM OF
                                                 POINTS AND AUTHORITIES IN
19                                               SUPPORT THEREOF**

20                                               Date:     Thursday, July 12, 2012
                                                 Time:     8:00 a.m.
21                                               Dept.:    Courtroom 8, 19th Floor
                                                 Judge:    Hon. William H. Alsup
22
                                                 Date Comp. Filed:   December 20, 2011
23
                                                 Trial Date:    None Set
24

25

26

27

28

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

**PLEASE TAKE NOTICE** that on July 12, 2012, before the Honorable William H. Alsup, of the United States District Court, 450 Golden Gate Avenue, Courtroom 8, 19th Floor, San Francisco, California 94102, defendants Slide, Inc. ("Slide") and Google Inc. ("Google") will, and hereby do, move the Court for an order compelling arbitration of Plaintiff's First Amended Complaint pursuant to the terms of the Terms of Use governing SuperPoke! Pets or, in the alternative, an order dismissing this action in its entirety.  The grounds for this motion are that (1) Plaintiff's claims are subject to arbitration under the valid and enforceable arbitration agreement in the Terms of Use governing her use of SuperPoke! Pets, the game that is the subject of her claims, and (2) even as alleged in her First Amended Complaint, Plaintiff's claims about the SuperPoke! Pets Terms of Use and events surrounding the game's closure are self-contradictory and implausible, and do not state any cognizable legal claim on which relief can be granted.  This Motion is based on this Notice; on the attached Memorandum of Points and Authorities; on the concurrently filed Declarations and Request for Judicial Notice, and all other pleadings, files and records in this action; and on such other argument as may be received by this Court at the hearing on this Motion.

Dated:  June 1, 2012                                    KEKER & VAN NEST LLP


By:   _/s/ Benedict Y. Hur_____
        BENEDICT Y. HUR
        Attorneys for Defendants
        SLIDE, INC. and GOOGLE INC.

1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ............................................................................................... 2

    A.  SuperPoke! Pets was an Online Video Game. ...................................... 3

    B.  The Terms of Use governing Plaintiff's play of SuperPoke! Pets permit either party to invoke arbitration for disputes. ...................... 3

    C.  The Terms of Use advised Plaintiff of her limited rights in the game and Defendants' right to discontinue the game entirely ............. 4

    D.  Defendants notified Plaintiff of the game's modification and discontinuation ................................................................................... 5

    E.  Procedural History ............................................................................... 6

III.  ARGUMENT .................................................................................................... 6

    A.  The Court Should Compel Arbitration. ................................................ 7

        1.  The arbitration provision is not substantively unconscionable ............................................................................ 8

        2.  The arbitration provision is not procedurally unconscionable ............................................................................ 10

    B.  Alternatively, Plaintiff's Complaint Must Be Dismissed Because Plaintiff Cannot State Any Valid Claim Against Google or Slide. ............. 12

        1.  Plaintiff's First and Second Causes of Action must be dismissed ........................................................................... 13

            a.  Plaintiff lacks standing to challenge provisions of the TOU that are not being enforced against her. ................. 13

            b.  The SuperPoke! Pets Terms of Use are not unlawfully "exculpatory," unconscionable or illusory. ................................................................... 14

        2.  Plaintiffs' Third Cause of Action for violation of the Consumer Legal Remedies Act (CLRA) must be dismissed .......................................................................... 17

            a.  Plaintiff has not alleged any cognizable CLRA claim ...................................................................... 17

i

| | | b. | Plaintiff failed to comply with statutory prerequisites to filing damage claims under the CLRA.................................................................20 |
| | 3. | | Plaintiff's Fourth Cause of Action for violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) must be dismissed. ....................................21 |
| | | a. | Defendants' alleged conduct was not unlawful. ...................21 |
| | | b. | Defendants' alleged conduct was not unfair.........................22 |
| | | c. | Defendants' alleged conduct was not fraudulent. ..................22 |
| | 4. | | Plaintiff's Fifth Cause of Action for "Fraud in the Inducement" must be dismissed. ........................................23 |
| | 5. | | Plaintiff's Sixth Cause of Action for Promissory Estoppel must also be dismissed for failure to state any plausible claim..............................................................................23 |
| | 6. | | Plaintiffs' Seventh Cause of Action for "Unjust Enrichment" must be dismissed because no such cause of action exists in California. ...........................................24 |
| IV. | CONCLUSION | | ..................................................................................24 |

ii

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3 **Federal Cases**

4
5
*Am. Title Ins. Co. v. Lacelaw Corp.*
   861 F. 2d 224 (9th Cir. 1988) ........................................................... 11

6
*Arellano v. T-Mobile USA, Inc.*
   No. C 10-05663 WHA, 2011 WL 1362165 (N.D. Cal. April 11, 2011) ........................ 14

7
8
*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ...................................................... 12, 18, 22

9
*AT&T Mobility LLC v. Concepcion*
   131 S. Ct. 1740 (2011) ........................................................... 7, 9

10
11
*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) .................................................. 12, 18, 19, 22

12
*Buckeye Check Cashing, Inc. v. Cardegna*
   546 U.S. 440 (2006) ............................................................. 7, 9

13
14
*Datel Holdings Ltd. v. Microsoft Corp.*
   712 F. Supp. 2d 974 (N.D. Cal. 2010) ................................................. 2

15
*Ferrington v. McAfee, Inc.*
   No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ........................ 18

16
17
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
   528 U.S. 167 (2000) ........................................................... 13, 14

18
*Han v. Mobil Oil Corp.*
   73 F.3d 872 (9th Cir. 1995) ......................................................... 16

19
20
*In re Apple & AT & T iPad Unlimited Data Plan Litig.*
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ........................................... 21, 24

21
*In re Gilead Sciences Sec. Litig.*
   536 F.3d 1049 (9th Cir. 2008) .................................................. 12, 23

22
23
*In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) ................................................ 21

24
*Jones v. AIG Risk Mgmt., Inc.*
   726 F. Supp. 2d 1049 (N.D. Cal. 2010) ............................................... 23

25
26
*Khan v. Orkin Exterminating Co., Inc.*
   C 10-02156 SBA, 2011 WL 4853365, *4 (N.D. Cal. Oct. 13, 2011) ........................ 2

27
*Kilgore v. KeyBank, Nat'l Ass'n*
   673 F.3d 947 (9th Cir. 2012) ........................................................ 12

28

iii

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

*Kilgore v. Keybank, Nat'l Ass'n*
  712 F. Supp. 2d 939 (N.D. Cal. 2010), vacated on other grounds,
  673 F.3d 947 (9th Cir. 2012) ................................................................ 22

*Knievel v. ESPN*
  393 F.3d 1068 (9th Cir. 2005) .................................................................. 2

*Laster v. T-Mobile USA, Inc.*
  407 F. Supp. 2d 1181 (S.D. Cal. 2005)....................................................... 20

*Monex Deposit Co. v. Gilliam*
  671 F. Supp. 2d 1137 (C.D. Cal. 2009) ................................................... 8, 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
  460 U.S. 1 (1983)........................................................................................ 7

*Pokrass v. The DirecTV Group, Inc.* EDCV 07-423-VAP, 2008 WL 2897084
  (C.D. Cal. July 14, 2008) ......................................................................... 10

*Ries v. Hornell Brewing Co., Inc.*
  No. 5:10-CV-01139-JF/PSG, 2011 WL 1299286 (N.D. Cal. Apr. 4, 2011) .... 20

*Shein v. Canon U.S.A., Inc.*
  No. CV 08-07323 CAS Ex, 2009 WL 1774287 (C.D. Cal. June 22, 2009) ...... 20

*Soltani v. W.&S. Life Ins. Co.*
  258 F.3d 1038 (9th Cir. 2001) ............................................................. 16, 17

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*
  995 F. Supp. 1060 (D. Ariz. 1997) ........................................................... 11

*Von Grabe v. Sprint PCS*
  312 F. Supp. 2d 1285 (S.D. Cal. 2003)...................................................... 21

*W. Mining Council v. Watt*
  643 F.2d 618 (9th Cir. 1981) .................................................................... 18

*Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*
  522 F.3d 1060 (9th Cir. 2008) .................................................................. 24

*Weinberger v. Romero–Barcelo*
  456 U.S. 305 (1982)................................................................................. 16

**State Cases**

*AOL, Inc. v. Sup. Ct.*
  90 Cal. App. 4th 1 (2001) ........................................................................... 9

*Armendariz v. Foundation Health Psychcare Servs., Inc.*
  24 Cal. 4th 83 (2000) ............................................................................ 7, 8

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

*Belton v. Comcast Cable Holdings, LLC*
   151 Cal. App. 4th 1224 (2007) ................................................................. 10, 15

*Camacho v. Auto. Club of S. Cal.*
   142 Cal. App. 4th 1394 (2006) ..................................................................... 22

*Fairbanks v. Sup. Ct.*
   46 Cal. 4th 56 (2009) ................................................................................. 18

*Garcia v. World Sav., FSB*
   183 Cal. App. 4th 1031 (2010) ..................................................................... 23

*Graham v. Scissor–Tail, Inc.*
   28 Cal. 3d 807 (1981) ................................................................................. 11

*Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*
   38 Cal. App. 4th 1532 (1995) ....................................................................... 16

*Izzi v. Mesquite Country Club*
   186 Cal. App. 3d 1309 (1986) ...................................................................... 12

*Meyer v. Sprint Spectrum L.P.*
   45 Cal. 4th 634 (2009) ................................................................................. 17

*Morris v. Redwood Empire Bancorp*
   128 Cal. App. 4th 1305 (2005) ...................................................... 8, 10, 11, 15

*Roman v. Sup. Court*
   172 Cal. App. 4th 1462 (2009) ..................................................................... 17

*Smith v. State Farm Mut. Auto. Ins. Co.*
   93 Cal. App. 4th 700 (2001) ......................................................................... 21

*Wayne v. Staples, Inc.*
   135 Cal. App. 4th 466 (2006) ....................................................................... 10

*West v. Henderson*
   227 Cal. App. 3d 1578 (1991) ...................................................................... 16

**Federal Statutes**

9 U.S.C. § 3 .................................................................................................. 12

9 U.S.C. § 4 .................................................................................................... 2

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ..................................................................... 21

Cal. Bus. & Prof. Code § 17204 ..................................................................... 22

Cal. Civ. Code § 1668 .................................................................................... 15

v

Cal. Civ. Code § 1670.5 ................................................................................. 15

Cal. Civ. Code § 1761 ...................................................................................... 18

Cal. Civ. Code § 1770 ......................................................................... 17, 18, 20

Cal. Civ. Code § 1780 ......................................................................... 17, 19, 21

Cal. Civ. Code § 1782(a) ............................................................................... 20

**Federal Rules**

Fed. R. Civ. P. 9(b) ............................................................................. 19, 22, 23

Fed. R. Civ. P. 12(b)(6) ........................................................................... 2, 12

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

## I.    INTRODUCTION

Plaintiff Christalee Abreu's First Amended Complaint does nothing to alter the fundamental conclusion that her complaint should be arbitrated or dismissed.  In fact, her amended complaint does not alter *any* of the key factual allegations that required arbitration of her original complaint, and her amended claims still have no place in this Court.

SuperPoke! Pets was an on-line game that allowed users to accessorize electronic images of pets and create "habitats" for them.  Users played for free.  In addition, to enhance their gaming experience, users could purchase virtual currency that could be used to access special in-game accessories.  The gravamen of Plaintiff's complaint remains that she suffered harm when Slide and Google (collectively, "Defendants") announced that they were discontinuing SuperPoke! Pets, although she had over six months' notice of the closure.  But Plaintiff cannot avoid the game's Terms of Use ("TOU"), which both (1) permit Defendants (or Plaintiff) to remove this dispute from the court and into arbitration, and (2) permit Defendants to do exactly what they have done here.  As such, the complaint should be dismissed for two independent reasons.

*First*, all of Plaintiff's claims must be arbitrated, as required by the TOU's arbitration provision.  Agreeing to the arbitration provision was a condition of playing the game, and the arbitration provision is valid and enforceable under controlling Supreme Court precedent.  The Federal Arbitration Act requires strict enforcement of arbitration provisions like this one, with very limited exceptions that do not apply here.  Further, Plaintiff's First Amended Complaint repeats her misleading characterizations of the arbitration provision, ignoring its actual terms despite Defendants' explanation of those terms in their previous motion.  The actual arbitration provision offers Plaintiff a fair, quick, and inexpensive way to resolve her claims, and it should be enforced.

*Second*, if the Court does not compel arbitration, it should dismiss the First Amended Complaint because Plaintiff still does not identify any cognizable legal basis for her claims that the shut-down of SuperPoke! Pets was unlawful or improper.  As before, Plaintiff's amended complaint contradicts both the TOU and common sense by claiming that she should be

1  compensated because she received no lasting "investment" from playing an online game

2  designed purely for entertainment, and can no longer play with her online pets.  Plaintiff also

3  accuses Defendants of fraud and unfairness because they did not tell her when they made

4  changes to the game in June 2011 that the game would be shut down completely in March 2012.

5  Neither claim has any basis.  The TOU terms that Plaintiff challenges have not caused her any

6  harm, and they are not unfair or improper in the context of an online recreational game.  In fact,

7  because the TOU made clear that the SuperPoke! Pets game created no property rights in users

8  and Defendants could end it at any time, each of Plaintiff's claims must be dismissed.  Plaintiff

9  has not alleged, and cannot prove, that Defendants have done anything improper, unfair, or

10  fraudulent.  To the limited extent that Plaintiff's First Amended Complaint makes efforts to

11  remedy the defects of her prior complaint, her new allegations are also conclusory and

12  inadequate.  That Plaintiff wants to keep playing a discontinued game may be disappointing, but

13  it does not create a legally cognizable action.

14  **II.    BACKGROUND**

15          Although the Court must accept well-pleaded factual allegations as true when evaluating

16  a motion to dismiss, it need not credit Plaintiff's conclusory, non-factual allegations.  Stripped to

17  its legitimately factual allegations and in light of the full text of the documents it selectively

18  incorporates, the First Amended Complaint ("FAC") states no facts sufficient to support

19  Plaintiff's claims.[1]

20

21  [1] The accompanying Declaration of Libor Michalek provides the full text of the documents relied
    upon in the FAC, as well as additional facts related to Defendants' motion to compel arbitration.
22  This declaration is identical to the Michalek declaration previously submitted in support of
    Defendants' motion to compel arbitration or dismissal of Plaintiff's original Complaint.  *See*
23  Docket No. 39.  In evaluating the motion to compel arbitration under 9 U.S.C. § 4, the Court can
    rely on all of the facts and documents included in the Michalek Declaration.  *See Khan v. Orkin*
24  *Exterminating Co., Inc.*, No. C 10-02156 SBA, 2011 WL 4853365, *4 (N.D. Cal. Oct. 13, 2011)
    (considering similar facts on motion to compel arbitration).

25  In evaluating Defendants' motion in the alternative to dismiss Plaintiff's claims under Rule
    12(b)(6), the Court can still consider the full text of the TOU and SuperPoke! Pets
26  announcements, even though Plaintiff failed to attach them to her pleading, because Plaintiff's
    FAC expressly relies on and purports to quote from these documents.  *See Datel Holdings Ltd. v.*
27  *Microsoft Corp.*, 712 F. Supp. 2d 974, 983 (N.D. Cal. 2010) (explaining that on a motion to
    dismiss "(1) a court may take judicial notice of material which is either submitted as part of the
28  complaint or necessarily relied upon by the complaint; and (2) a court may take judicial notice of

2

### A.    SuperPoke! Pets was an Online Video Game.

SuperPoke! Pets was an online video game that Slide launched in approximately April 2008, and made available both via social media platforms like Facebook and Myspace and on its own website.  FAC ¶ 9-10.  Players could "adopt" virtual pet animals, which they could then "interact with" virtually, including by "customiz[ing] the pet's virtual environment," "dress[ing] it in outfits," and using virtual items to decorate the pet and its "virtual habitat."  FAC ¶¶ 12, 16.  Some in-game items were available to players who "perform[ed] various tasks" or attained other in-game "achievements."  Other features, including virtual items purchased with virtual "Gold" and "'exclusive' premium content" for "VIP status" subscribers, were available only to players who chose to spend actual money to play with them.  FAC ¶ 17, 21.  VIP status was made available in late 2010, for $4.95 per month.  FAC ¶ 21.

The right to play Superpoke! Pets was subject to Slide's Terms of Use ("TOU").  FAC ¶ 30.  Plaintiff was an active user of Superpoke! Pets beginning in 2009.  *See* FAC ¶ 51.  Plaintiff asserts that the TOU are a contract between herself and Defendants.  FAC ¶ 66; *see also id.* ¶ 97.

### B.    The Terms of Use governing Plaintiff's play of SuperPoke! Pets permit either party to invoke arbitration for disputes.

The TOU contain an arbitration provision.  FAC ¶ 76.  That provision reads as follows:

> 4. **Binding Arbitration**. If you and the Company are unable to resolve a Dispute through informal negotiations, either you or the Company may elect to have the Dispute (except those Disputes expressly excluded below) finally and exclusively resolved by binding arbitration. Any election to arbitrate by one party shall be final and binding on the other. YOU UNDERSTAND THAT ABSENT THIS PROVISION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND HAVE A JURY TRIAL. The arbitration shall be commenced and conducted under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules"), both of which are available at the AAA website www.adr.org. The determination of whether a Dispute is subject to arbitration shall be governed by the Federal Arbitration Act and determined by a court rather than an arbitrator. Your arbitration fees and your share of arbitrator compensation shall be governed by the AAA Rules and, where appropriate, limited by the AAA Consumer Rules. If such costs are determined by the arbitrator to be excessive, the Company will pay all arbitration fees and expenses. The arbitration may be conducted in person, through the submission of documents, by phone or online. The arbitrator will make a decision in writing, but

matters of public record"); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)).

need not provide a statement of reasons unless requested by a party. The arbitrator
must follow applicable law, and any award may be challenged if the arbitrator
fails to do so. Except as otherwise provided in this Agreement, you and the
Company may litigate in court to compel arbitration, stay proceedings pending
arbitration, or to confirm, modify, vacate or enter judgment on the award entered
by the arbitrator.

Michalek Decl. Exh. 1 (TOU) at ¶ XIV.A.4.  In addition, the TOU prohibit class arbitrations, and

require that "any arbitration shall be limited to the Dispute between the Company and you

individually." *Id.* ¶ XIV.A.5.  The TOU also exempt certain claims from arbitration, namely "(1)

any Disputes [regarding] . . . intellectual property rights; (2) . . . allegations of theft, piracy,

invasion of privacy or unauthorized use; and (3) any claim for injunctive relief." *Id.* ¶ XIV.A.6.

      **C.**    **The Terms of Use advised Plaintiff of her limited rights in the game and
Defendants' right to discontinue the game entirely.**

      The TOU made clear that Defendants could discontinue the game at any time, that

players had no ownership rights in the game even if they paid money to enhance their playing

experience, and that all such payments were non-refundable:

- "The Company reserves the right to discontinue the [game] or to change the content
of the [game] in any way and at any time, with or without notice to you, without
liability." TOU § II.B ("What the Company is Providing").

- Users of SuperPoke! Pets are "grant[ed] . . . a non-exclusive, non-transferable,
revocable limited license to use the [game] and related software and to display the
results of [the game] for your personal non-commercial use." TOU § II.A.

- Users "do not acquire any ownership rights by using the [game] . . . or by purchasing
any virtual goods or virtual currency." TOU § IV.B.

- Although the game "include[s] a component of fictional currency" known as Gold
("Virtual Currency"), that "Gold" is only part of the game and has no real-world
value: "[r]egardless of terminology used, Virtual Currency represents a limited
license right governed solely under these Terms, and is not redeemable for any sum
of money or monetary value from the Company at any time." TOU § VI.A.

- Users "agree that all sales of Virtual Goods and Virtual Currency . . . are final" and
that "[n]o refunds will be given, except in the Company's sole and absolute
discretion. All Virtual Goods and Virtual Currency will be forfeited . . . if the
Company discontinues providing the Service." TOU § VI.F ("All Sales Final").

The TOU also provide that users "agree that the Company has the absolute right to manage,

regulate, control, modify, and/or eliminate such Virtual Currency as it sees fit in its sole

discretion . . . and that the Company will have no liability . . . based on its exercise of such

right."  TOU § VI.A; *see also* TOU § VI.E.2 (under the heading "Limited Rights"); TOU §

VI.E.1 (users "have no right or title in or to any such Virtual Goods or Virtual Currency" or other

aspects of the game except "a limited, personal, revocable, non-transferable, non-sublicenseable

license to use the Virtual Goods or Virtual Currency in the [game]").

### D.  Defendants notified Plaintiff of the game's modification and discontinuation.

According to Plaintiff, in early June of 2011, Defendants "announced several changes to

SPP through the game's official online forums." FAC ¶ 35.  Specifically, "Defendants

announced that SPP users could no longer purchase "gold" using cash, and that Defendants

would no longer be releasing new 'gold items' for purchase."  FAC ¶ 35.  "Defendants

additionally instructed SPP users to spend any outstanding gold"—gold that had been purchased

but not used—"on existing virtual items on or before June 30, 2011."  FAC ¶ 36.  As alleged by

Plaintiff, Defendants explained that "[a]fter that date [June 30, 2011] . . . no gold items would be

available, and . . . any gold remaining in users' accounts would disappear and would not be

refunded." FAC ¶ 36.

Plaintiff alleges that at around the same time, Defendants told users they had "no plans"

to shut the game down, and would not do so "in July 2011" or "in the near future."  FAC ¶¶ 38,

39.  Plaintiff now claims that "Defendants knew or should have known that these statements

were false at the time that they were made," but pleads no facts supporting those contentions.  *Id.*

Plaintiff also alleges that Defendants "promised those who signed up and paid for the

[VIP status] program before June 30, 2011 that they would enjoy continued access to the VIP

Status 'indefinitely' and 'for FREE'."  FAC ¶ 40.  Although Plaintiff has retreated from her prior

false allegation that users were promised VIP status "for life" (Complaint ¶ 38), she still

contends that VIP users purchased "lifetime benefits" (FAC ¶ 46).  The amended allegations are

no less deceptive and misleading than the initial Complaint: the actual June 2011 announcements

(which the FAC purports to quote) indicated that VIP status would continue for "as long as the

program exists," which was then anticipated to be for the "foreseeable future."  Michalek Decl.

Exhs. 4 & 5 (announcements).  Plaintiff does not, and cannot, allege that Defendants failed to

provide VIP access to VIP customers or asked them to pay for VIP service after June 2011.

1        According to Plaintiff, Slide and Google then notified users in August and September

2  2011 of their business decision to shut down SuperPoke! Pets as of March 6, 2012, and gave

3  users more than 6 months after that decision—8 months after the June announcements—to

4  continue playing the game. FAC ¶¶ 46-47.  Although nothing in the TOU required it, Defendants

5  also provided two different options for users to preserve a version of their fictional pets and other

6  fictional items from the game after its closure.  FAC ¶ 48.

7        **E.**    **Procedural History**

8        Plaintiff filed this action in the Santa Clara County Superior Court on December 20,

9  2011, asserting various statutory and common law claims related to the SuperPoke! Pets TOU

10  and the game's closure.  Plaintiff purports to bring her claims on behalf of two classes, consisting

11  of all registered SuperPoke! Pets users who purchased virtual gold or purchased virtual in-game

12  items from alleged SPP-certified resellers, and all individuals who purchased SuperPoke! Pets

13  VIP status.  Complaint ¶ 54; FAC ¶ 57.  Defendants removed the action to this Court on January

14  26, 2012, and the Court denied Plaintiff's motion to remand on April 3, 2012.  Defendants

15  moved to compel arbitration or to dismiss Plaintiff's Complaint on April 24, 2012.  Plaintiff filed

16  a Statement of Non-Opposition on May 8, 2012, and filed the First Amended Complaint on May

17  15, 2012.

18  **III.**    **ARGUMENT**

19        Plaintiff's amended claims change nothing material, and they still have no place in this

20  Court.  First, Plaintiff's claims must be arbitrated.  The arbitration provision in the TOU requires

21  arbitration of the claims asserted in Plaintiff's First Amended Complaint, which repeats and re-

22  confirms the original Complaint's allegations in all material aspects.  Second, Plaintiff's action

23  should be dismissed for failure to state any legally cognizable or factually plausible claim.

24  Although the amended complaint adds some new matter, it adds no new *factual* allegations

25  creating any viable legal claim.  The TOU legitimately authorized the termination of the online

26  SuperPoke! Pets game, Plaintiff has failed to allege any wrongful conduct by Defendants, and

27  Plaintiff received the benefit of her agreement to the TOU by playing the game for more than

28  two years.

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

**A.     The Court Should Compel Arbitration.**

The SuperPoke! Pets TOU require arbitration of this dispute.  The TOU contain an arbitration clause, which provides that "either [the user] or the Company may elect to have [any] Dispute (except those Disputes expressly excluded below) finally and exclusively resolved by binding arbitration."  Michalek Decl. Exh. 1 (TOU) at ¶ XIV.A.4.  This binding arbitration "shall be commenced and conducted under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules")."  *Id.*  The arbitration provision warns users that "YOU UNDERSTAND THAT ABSENT THIS PROVISION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND HAVE A JURY TRIAL."  *Id.* ¶ XIV.A.4.  As in their prior motion, Defendants hereby elect to arbitrate this dispute under the TOU's arbitration clause, and that election should be enforced.

This governing arbitration provision is fair and enforceable under the Federal Arbitration Act.  The Federal Arbitration Act and the Supreme Court's mandates strongly favor arbitration.  Agreements to arbitrate are fully enforceable under the Federal Arbitration Act, unless a party to the agreement proves that he or she would be entitled to revocation of the agreement under generally applicable state-law principles.  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1744 (2011).  The law embodies a strong, liberal national policy favoring arbitration.  *Id.* at 1749 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  State rules that interfere with and restrict arbitration, even under the guise of purportedly general-purpose doctrines such as unconscionability, are preempted and void under the FAA.  *Concepcion*, 131 S.Ct. at 1746-47.  In evaluating a motion to compel arbitration, the court considers only the arbitration provision at issue—not the validity of any other provisions of the contract.  *Buckeye*, 546 U.S. at 449 ("[A] challenge to the validity of the contract as a whole . . . must go to the arbitrator.")

Thus, Plaintiff can avoid the arbitration she agreed to only upon showing that the arbitration provision is *both* procedurally and substantively unconscionable under California law, within the preemptive constraints of the Federal Arbitration Act.  *See Armendariz v. Foundation*

7

1  *Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (California standard).  Procedural and

2  substantive unconscionability are judged on a sliding scale: the more substantively

3  unconscionable a contract term is, the less procedural unconscionability is required to find the

4  term unenforceable.  *Armendariz*, 24 Cal. 4th at 114.  Plaintiff cannot satisfy either standard.

5          **1.**        **The arbitration provision is not substantively unconscionable.**

6          To be substantively unconscionable, a contract provision must be not just unreasonable or

7  unfair, but "so one-sided as to 'shock the conscience.'"  *Morris v. Redwood Empire Bancorp*,

8  128 Cal. App. 4th 1305, 1322 (2005) (citation omitted).  The arbitration provision here is fair,

9  contrary to Plaintiff's misleading allegations, and it does not "shock the conscience."

10       *First*, the arbitration procedure is fair.  The arbitration clause provides an expedient, low-

11  cost mechanism for resolving Plaintiff's dispute: "[a]rbitration may be conducted in person,

12  through the submission of documents, by phone, or online."  TOU XIV.A.4.  Indeed, for

13  Plaintiff, arbitration under these terms provides a much cheaper, faster mechanism for resolving

14  her claim than the instant lawsuit likely would.  Nor is the arbitration clause one-sided: it permits

15  either party to challenge an arbitration award if the arbitrator fails to follow applicable law, to

16  move to compel arbitration or stay proceedings, or to vacate an award.  *Id*.  While Plaintiff

17  claims that the TOU are "one-sided" because they do not provide for her to recover costs or

18  attorneys' fees if she prevails, the agreement does not provide for *either* party to recover fees

19  (either in arbitration or in court), nor does it expressly prohibit either party from recovering fees

20  that might be available on any independent basis.  *Id*.  In any event, mere failure to provide for

21  recovery of attorneys' fees is not substantively unconscionable.  *See Monex Deposit Co. v.

22  Gilliam*, 671 F. Supp. 2d 1137, 1147 (C.D. Cal. 2009) (upholding term barring fee recovery).[2]

23       *Second*, the arbitration fees are fair.  The agreement expressly states that arbitration fees

24  are limited by the AAA Consumer Rules.  TOU § XIV.A.4 ("Your arbitration fees and your

25

26  [2] Plaintiff's argument that the indemnification provision of the TOU (TOU § XII) allows Google to seek indemnification for Google's attorneys' fees arising from Plaintiff's own claims against it

27  (FAC ¶ 77(f)) fails because that is not a reasonable interpretation of the plain terms of that provision.  The indemnification provision expressly requires indemnity of "attorneys' fees" for

28  claims made by a "third party"—not claims made by Plaintiff herself.  TOU § XII.

8

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

1    share of arbitrator compensation shall be governed by the AAA Rules and, where appropriate,

2    limited by the AAA Consumer Rules.").  Although Plaintiff still contends that the TOU are

3    unconscionable because they would allegedly require her to pay up to a $775 filing fee to

4    arbitrate her claims, the actual fees (if any) would be much lower.  For consumer claims under

5    $10,000, like the one alleged here, the only fee required from Plaintiff would be $125 (which

6    would be refunded if not used).  Request for Judicial Notice Exh. A at 8 (AAA Supplementary

7    Procedures for Consumer-Related Disputes, "Fees and Deposits to be Paid by the Consumer");

8    *id.* Exh. B at 2 ("Who pays the arbitration costs?").  The Company would pay a larger initial fee,

9    as well as "all arbitrator compensation deposits" beyond the consumer's allotted fee.  *Id.* Exh. A

10   at 8-9 ("Fees and Deposits to be Paid by the Business").  Also, if the arbitrator deemed the $125

11   fee too expensive, Plaintiff would pay nothing at all: the arbitration clause specifically provides

12   that in this situation the "Company will pay all arbitration fees and expenses."  TOU XIV.A.4.

13        **Third,** the bar on class arbitration is not unconscionable, under the Supreme Court's

14   recent decision in *AT&T Mobility v. Concepcion.  Concepcion*, 131 S. Ct. at 1746-47.

15   *Concepcion* held that class action arbitration waivers are fully enforceable, and that the FAA's

16   strong federal policy in favor of arbitration preempted a contrary California rule that invalidated

17   almost all consumer class arbitration waivers as unconscionable (the *Discover Bank* rule).  *Id.*

18   Accordingly, *Concepcion* enforced a waiver of class arbitration similar to the one at issue here,

19   finding that it could not be set aside as unconscionable even though California courts had

20   previously found waivers of class *litigation* to be unenforceable for certain types of claims.  *See*

21   *id.*; *AOL, Inc. v. Sup. Ct.*, 90 Cal. App. 4th 1, 4-5 (2001) (rejecting waiver of class litigation).

22        **Fourth,** Plaintiff's challenges to other provisions, such as the waiver of injunctive relief

23   claims, are irrelevant to the enforcement of the arbitration clause because they apply equally in

24   arbitration or in court.  TOU ¶ XIV.A.2.  Because they are part of the broader TOU contract—

25   not the arbitration agreement at issue on Defendants' motion to compel arbitration—they are not

26   relevant to determining whether the arbitration agreement is enforceable.  *See Buckeye*, 546 U.S.

27   at 449; TOU § XIV.A.6.  In other words, whether these provisions are enforceable or not is a

28   contract law question that, like Plaintiff's other claims, is subject to arbitration.

9

1    The arbitration clause in the SuperPoke! Pets TOU gives Plaintiff a fair mechanism to

2    resolve her claims in arbitration.  It is not substantively unconscionable, and it must be enforced.

3            **2.       The arbitration provision is not procedurally unconscionable.**

4            Because the arbitration provision is not substantively unconscionable, it cannot be found

5    unconscionable under California's two-part test (which requires *both* substantive and procedural

6    unconscionability to invalidate a contract).  If the Court chooses to consider the procedural

7    prong, the arbitration clause passes this test as well.  California law requires actual oppression or

8    surprise to find a contract procedurally unconscionable; merely labeling a contract an adhesion

9    contract does not make it unconscionable or unenforceable.  *Morris*, 128 Cal. App. 4th at 1318;

10   *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 483 (2006).  There can be no claim of

11   "oppression" here.  Under California law, a contract for a "nonessential recreational activity,"

12   like playing an online video game, cannot be procedurally unconscionable because "the

13   consumer always has the option of simply forgoing the activity."  *Belton v. Comcast Cable*

14   *Holdings, LLC*, 151 Cal. App. 4th 1224, 1245-46 (2007) (citation omitted) (refusing to find

15   oppression in contract for cable music service); *see also Pokrass v. The DirecTV Group, Inc.*,

16   No. EDCV 07-423-VAP, 2008 WL 2897084, *7 (C.D. Cal. July 14, 2008) ("[T]here appears to

17   be no disagreement among California courts that contracts for nonessential recreational activities

18   cannot be procedurally unconscionable.").

19           As in *Belton*, Plaintiff cannot allege that she was under pressure of any kind to play

20   SuperPoke! Pets in her leisure time instead of playing other online games or engaging in other

21   similar recreational activities (or none at all).  Unlike a consumer seeking medical care, or an

22   employee compelled to accept arbitration to maintain employment, or even an individual seeking

23   less urgent life essentials, potential SuperPoke! Pets players were under no external pressure to

24   accept the game's terms, and no "oppression" exists here as a matter of law.  *Belton*, 151 Cal.

25   App. 4th at 1245-46.  *Cf. Morris*, 128 Cal. App. 4th at 1320-21 (discussing cases finding

26   oppression in medical and employment situations).

27           Moreover, Plaintiff makes no allegations of "surprise" that would support a finding of

28   procedural unconscionability, nor does the text of the TOU support such a finding.  The

10

Complaint admits that a "contract was made" as to the TOU, yet claims that it was "an adhesion contract"[3] because the parties "did not have equal bargaining power at the time," because Plaintiff "had no opportunity to negotiate any specific terms," and because the substantive terms allegedly "solely favor[] Defendants."  FAC ¶ 66.[4]  These allegations both conclusively establish the existence of the TOU contract, and are inconsistent with any claim of surprise.  *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F. 2d 224, 226 (9th Cir. 1988) (holding factual assertions in pleadings are judicial admissions "conclusively binding on the party who made them"); *Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1065-66 (D. Ariz. 1997) (applying *Lacelaw* to enforce arbitration agreement).  In addition, as recently as September 15, 2010, Plaintiff affirmatively agreed that her use of all Slide services—including play of Superpoke! Pets—was governed by the Slide TOU.  Michalek Decl. ¶ 3; *id.* Ex. 2.  By doing so, Plaintiff received clear notice that "YOUR USE OF ANY OF THE SERVICES CONSTITUTES YOUR AGREEMENT TO THESE TERMS."  *Id*. Exh. 3.[5]

No procedurally unconscionable surprise occurred here, because the arbitration agreement is not unreasonably concealed or disguised within the broader TOU.  Rather, it appears within a section of the TOU for "Miscellaneous" items, under the heading (in bold text) "**Governing Law/Resolution of Disputes/Waiver of Injunctive Relief.**"  TOU § XIV.A.  The arbitration provision itself carries the bold heading "**Binding Arbitration**" and includes a capitalized warning as follows: "YOU UNDERSTAND THAT ABSENT THIS PROVISION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND HAVE A JURY TRIAL."  TOU § XIV.A.4.  The arbitration provision was clearly visible to any user, and the beginning of the TOU cautioned users that the terms would be binding on them if they chose to play the game: "If

---

[3] A contract of adhesion is fully enforceable unless it falls outside of the reasonable expectations of the weaker party or is unduly oppressive or unconscionable; this inquiry is effectively the same as the more modern analysis of substantive and procedural unconscionability.  *Morris*, 128 Cal. App. 4th at 1317 (discussing *Graham v. Scissor–Tail, Inc.*, 28 Cal. 3d 807, 820 (1981)).

[4] These allegations are unchanged from Plaintiff's original complaint.  *See* Complaint ¶ 63.

[5] The TOU in effect as of September 15, 2010 contain the same arbitration clause as the most recent TOU.  *Compare* Michalek Decl. Exh. 1 *with* Michalek Decl. Exh. 3.

11

you do not agree to be bound by these Terms in their entirety, you must cease accessing or otherwise using the Services in any way. YOUR USE OF ANY OF THE SERVICES CONSTITUTES YOUR AGREEMENT TO THESE TERMS."  TOU (preamble) (capitalization original).  If a user chose to ignore that warning, that does not make the contract procedurally unconscionable or excuse her from its terms.  *See Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 964 (9th Cir. 2012) (failure to read a contract does not make arbitration term unenforceable); *Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1318-19 (1986) (same).

Because the TOU's arbitration provision is valid and enforceable under California law and the FAA, Plaintiff's claims should be ordered to arbitration.[6]

## B.   Alternatively, Plaintiff's Complaint Must Be Dismissed Because Plaintiff Cannot State Any Valid Claim Against Google or Slide.

Alternatively, Plaintiff's Complaint should be dismissed in its entirety, under Federal Rule of Civil Procedure 12(b)(6), because it fails to assert any cognizable legal claim or set forth plausible—not merely conceivable—factual allegations supporting any claim for relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim.).  Although courts must accept well-pleaded factual allegations, a court need not credit "allegations that contradict matters properly subject to judicial notice or by exhibit," or "unwarranted deductions of fact [and] unreasonable inferences."  *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

In essence, Plaintiff complains it is unfair that she did not receive any lasting or tangible benefits by playing a virtual online game, in spite of her alleged "investment" of money to enhance her playing experience.  *See* FAC ¶ 2.  Whatever the legal theory, this is not a cognizable or a plausible claim.  Plaintiff's FAC, and the TOU it relies on, make clear that Plaintiff received exactly what she signed up for and exactly what Google and Slide reasonably

---

[6] Plaintiff should be compelled to arbitrate all of her claims. Any of Plaintiff's claims that are not sent to arbitration (or dismissed) should be stayed pending arbitration.  9 U.S.C. § 3.

agreed to provide.  There is nothing unfair or misleading about that agreement, or about Defendants' decision to make changes to the game and the related announcements.  Plaintiff also does not plausibly allege that she or anyone else has incurred any real harm from the conduct she challenges.  She signed up to play an online game under clear terms of use setting the ground rules of that game, chose to spend money to enhance her play, and played the game on those terms beginning in 2009.  Then, after Defendants decided to shut down the game, Plaintiff received six more months to play, and two different options for preserving a modified form of her virtual items.[7]  She has suffered no cognizable harm.

### 1.      Plaintiff's First and Second Causes of Action must be dismissed.

#### a.      Plaintiff lacks standing to challenge provisions of the TOU that are not being enforced against her.

Plaintiff's First and Second Causes of Action (FAC ¶¶ 65-100) fail because she lacks standing to bring them.  To have standing, Plaintiff must allege an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

Plaintiff's disjointed claims seek a declaratory judgment that certain provisions of the TOU are unconscionable, but the provisions that she identifies are irrelevant to and disconnected from her alleged injury.  For example, while Plaintiff claims it is unconscionable that certain TOU provisions allowed Defendants to cancel her account and virtual items or currency "without notice" or "for no reason," she does not allege that Defendants did that.  *See* FAC ¶ 70. Plaintiff's new allegation that "Defendants' exercise of their deletion provision caused Plaintiff to permanently lose access to her SPP account" (FAC ¶ 86) does not save her claim, because her specific factual allegations contradict any claim that Defendants canceled her account "without notice" or "for no reason": the deletion provision Plaintiff challenges remains irrelevant to the actual facts underlying her claims.

---

[7] In context, six months' notice was substantial: as of the June 2011 announcements, the game had been available for only a little over three years.  *See* FAC ¶ 9.  Plaintiff herself had been playing for only approximately two years, since 2009.  FAC ¶ 51.

1    Likewise, while Plaintiff challenges provisions limiting the period of damages and

2  selecting a one-year statute of limitations (FAC ¶¶ 73, 75), her complaint identifies no actionable

3  harm by Defendants that would create damages or claims subject to those provisions.  Plaintiff's

4  new allegation that "Plaintiff is unable to pursue her claims that *may have occurred* more than

5  one year prior to the filing of this Complaint" (FAC ¶ 87) does nothing to remedy this defect:

6  hypothetical harms cannot create standing.  Further, while Plaintiff claims that the TOU's

7  indemnification clause is unconscionable (FAC ¶ 72), Plaintiff identifies no request by

8  Defendants for such indemnification.  In essence, while Plaintiff's First and Second Causes of

9  Action complain that the TOU contain "get out of jail free" clauses (FAC ¶ 68), she still fails to

10  allege any wrongful conduct that would bring any "get out of jail free" clause into play.  Thus,

11  these claims must be dismissed because Plaintiff lacks standing to challenge them.  *Arellano v.*

12  *T-Mobile USA, Inc.*, No. C 10-05663 WHA, 2011 WL 1362165, *5 (N.D. Cal. April 11, 2011)

13  (refusing to address term allowing unilateral contract changes, where no such change was made).

14    Indeed, the essence of Plaintiff's Complaint is that Slide and Google were somehow

15  obligated to keep Superpoke! Pets operational indefinitely.[8]  But Plaintiff does *not* challenge the

16  provisions of the TOU that expressly permitted Defendants to discontinue the game and that

17  provided that purchases of virtual items are nonrefundable.  Nor could she challenge them.  It

18  defies common sense to claim that a company must either maintain an online game indefinitely

19  once it is offered, or refund its customers all money spent over the life of the game upon

20  termination if it ever terminates the game.  The terms Plaintiff challenges simply are not

21  applicable to her alleged harm.

22    Because Plaintiff cannot allege any "injury in fact" that is "concrete and particularized"

23  and "actual or imminent, not conjectural or hypothetical," these claims must be dismissed.

24  *Friends of the Earth*, 528 U.S. at 180.

25    **b.    The SuperPoke! Pets Terms of Use are not unlawfully**
      **"exculpatory," unconscionable or illusory.**

26

27  ───────────────

[8] Plaintiff's FAC confirms this by seeking injunctive relief ordering Defendants to "immediately
28  reverse the permanent termination of [SPP]." FAC ¶ 125.

14

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

The First and Second Causes of Action also fail because the TOU are not unlawful, unconscionable or illusory as a matter of law.[9]  As explained above, far from condoning fraud or other misbehavior, the TOU set clear ground rules for the game and cautioned users that given the nature of the game, users had *no property rights* in the game. TOU § IV.B.[10]  Another section of the TOU clarified that the game "include[s] a component of fictional currency" known as Gold ("Virtual Currency"), but that "[r]egardless of terminology used, Virtual Currency represents a limited license right governed solely under these Terms, and is not redeemable for any sum of money or monetary value from the Company at any time." TOU § VI.A.  Yet another section—titled "Virtual Currency/Virtual Goods Have No Cash Value"—required users to "acknowledge and agree that Virtual Currency and Virtual Goods have no cash value and that neither the Company nor any other person has any obligation to exchange your Virtual Currency/Virtual Goods for anything of value."  TOU § VI.D.

Nor can Plaintiff succeed in challenging provisions of the TOU that allow Defendants to terminate individual players' accounts and the virtual items associated with them (FAC ¶ 69-71), and limit remedies in related disputes.  Those provisions are reasonable and fair in the context established by the rest of the TOU and the circumstances of the game, and Plaintiff's amended claims do nothing to refute that fact.  It does not "shock the conscience," which is required to show substantive unconscionability (as discussed above), for the provider of an internet game involving fictional virtual pets and their accessories to reserve the right to stop offering the game and the fictional items in it, or to limit the remedies that players can recover in the event of disputes over fictional items included as part of the game.  *Morris*, 128 Cal. App. 4th at 1322; *Belton*, 151 Cal. App. 4th at 1245-46.  None of the challenged provisions is unconscionable.

---

[9] These claims for declaratory relief invoke California Civil Code § 1670.5 or 1668 (*see* FAC ¶¶ 83, 84), and claim that the TOU are "illusory" and "lack mutuality" (*see* FAC ¶ 95).  Civil Code Section 1670.5 codifies the same unconscionability standard previously discussed.  Civil Code Section 1668 prohibits contracts that exempt a party "from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law."  Neither applies here.

[10] In fact, California law holds that a contract for a "nonessential recreational activity" like SuperPoke! Pets *cannot* be oppressive and procedurally unconscionable because (as previously discussed in Section III.A) "the consumer always has the option of simply forgoing the activity." *Belton*, 151 Cal. App. 4th at 1245-46 (considering contract for cable music service).

1    For example, reasonable parties could agree (as they did here in the TOU) that after more

2  than 90 days had passed, a player of SuperPoke! Pets would have enjoyed all the benefits of a

3  particular virtual purchase and should not be allowed to recover any related damages beyond that

4  period.  *See West v. Henderson*, 227 Cal. App. 3d 1578, 1588 (1991) (upholding six-month

5  limitations period in lease that applied only to tenant).  Also, contrary to Plaintiff's allegations,

6  the 30-day informal dispute resolution requirement (TOU § XIV.A.3) does not reduce the 90-day

7  damages limit as Plaintiff claims (FAC ¶ 76(d)): the 90-day limit specifically includes the 90

8  days "immediately preceding the date on which [a user] first assert[s] [a] claim," including in

9  informal negotiations, not the date on which a claim is formally filed.  TOU § XI.C.

10    Similarly, the same parties could also reasonably agree for players to waive injunctive

11  relief, recognizing that the nonessential nature of the game and the limits of the parties'

12  substantive rights meant a player would in any event be unable to demonstrate "irreparable

13  injury" or "inadequacy of legal remedies"—both of which are essential to any right to injunctive

14  relief.  *See Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982) ("[T]he basis for

15  injunctive relief in the federal courts has always been irreparable injury and the inadequacy of

16  legal remedies.").  At the same time, Defendants as the providers of the game could reasonably

17  retain greater rights to seek damages and injunctive relief—as necessary to protect the game and

18  the game's other users, as well as the company's business interests, from abuse by players.  The

19  TOU expressly required Plaintiff to "acknowledge that the rights granted and obligations made

20  hereunder to [Defendants] are of a unique and irreplaceable nature, the loss of which shall

21  irreparably harm the company and which cannot be replaced by monetary damages alone."  TOU

22  § XIV.A.2.  As an example, Defendants might need injunctive relief to enforce the TOU's

23  prohibitions against reverse engineering the software, "disseminat[ing] or transmit[ting] viruses,"

24  sending spam, or tricking users into revealing sensitive information.  *See* TOU § VIII.C.

25    Finally, while Plaintiff challenges the one-year limitations period in the TOU (TOU §

26  XIV.D), parties to a contract can modify the limitations period that would otherwise apply to an

27  action "so long as the time allowed is reasonable."  *Soltani v. W.&S. Life Ins. Co.*, 258 F.3d

28  1038, 1043 (9th Cir. 2001) (quoting *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995)).

1   This rule is well settled in California law.  *See Hambrecht & Quist Venture Partners v. Am. Med.*

2   *Int'l, Inc.*, 38 Cal. App. 4th 1532, 1548 (1995).  A one-year limitations period is ample,

3   especially in this context.  Courts regularly uphold even shorter contractual limitations periods

4   under California law.  *Soltani*, 258 F.3d at 1043-44 (upholding six-month limitations period in

5   employment contract; discussing cases enforcing even shorter periods).[11]

6          None of the challenged TOU provisions is unconscionable or exculpatory, and Plaintiff's

7   First and Second Causes of Action must be dismissed.

8          **2.      Plaintiffs' Third Cause of Action for violation of the Consumer Legal
             Remedies Act (CLRA) must be dismissed.**
9

10         Plaintiff's CLRA claim is fatally flawed.  First, Plaintiff fails to adequately allege any

11   unlawful conduct.  Second, Plaintiff failed to notify Defendants of her specific CLRA claim

12   before seeking restitution—a form of damages—in this Court, as the CLRA strictly requires.

13         **a.      Plaintiff has not alleged any cognizable CLRA claim.**

14         Plaintiff's CLRA claim fails because the TOU and other documents Plaintiff relies on

15   contradict and fatally undermine Plaintiff's conclusory allegations that Defendants' conduct was

16   deceptive or unconscionable, and Plaintiff's claim does not involve goods or services covered by

17   the CLRA.  To state a CLRA claim, Plaintiff must allege that Defendants engaged in a particular

18   "method, act, or practice declared to be unlawful by [Civil Code] Section 1770," that the plaintiff

19   has "suffer[ed] . . . damage," and a causal link between the two such that the damage occurred as

20   "a result of" the unlawful practice.  *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009);

21   Cal. Civ. Code § 1780.  The unlawful practice must occur in a transaction intended to result or

22   resulting in the sale of goods or services to a consumer.  Cal. Civ. Code § 1770(a).

23         None of Plaintiff's allegations meet this standard.  Plaintiff claims that Defendants

24

25   ─────────────────────
     [11] Even if the Court were to find any specific provision of the TOU unenforceable, which it
26   should not, the rest of the TOU should still be enforced.  Unconscionable provisions should be
     severed unless an agreement is "permeated by unconscionability."  *Roman v. Sup. Court*, 172
27   Cal. App. 4th 1462, 1477-78 (2009).  Moreover, the TOU includes a severance provision, which
     is fair and enforceable in this context, providing that all terms "shall continue to be in full force
28   and effect" except to the extent that they are found unenforceable.  TOU § XIV.B.2.

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO
DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA

violated the CLRA by: (1) "[i]n violation of [Cal. Civ. Code] § 1770(5), representing that goods or services have characteristics, uses, or benefits which they do not have," (2) "[i]n violation of § 1770(9), advertising goods and services with intent not to sell them as advertised," (3) "[i]n violation of § 1770(14), representing that a transaction confers or involves rights, remedies, or obligations which it does not involve," and (4) "[i]n violation of § 1770(19), inserting an unconscionable provision in a contract." FAC ¶ 109. While Plaintiff's amended Complaint adds four paragraphs that attempt to bolster these bare recitations of the statutory language (FAC ¶¶ 110-113), none of those paragraphs adds any material, plausible factual allegations sufficient to support Plaintiff's CLRA claim. On the contrary, Plaintiff's "factual" allegations remain self-contradictory and implausible when compared to the actual announcements on which they rely.

*First*, Plaintiff's claim fails because her assertion that she obtained "goods" or "services" protected under the CLRA as a result of her SuperPoke! Pets play is false as a matter of law. *See* FAC ¶ 106. The CLRA expressly defines goods as "*tangible* chattels," which could not include intangible elements of an online game like the virtual items at issue here. *See* Cal. Civ. Code § 1761(a) (defining "goods" under the CLRA). Likewise, by granting her a limited license to use the SuperPoke! Pets software (not any tangible goods), Defendants did not provide Plaintiff with "services" as the CLRA defines that term. Providing access to an intangible good like software is not a protected "service" under the CLRA because it "is not work or labor, nor is it related to the sale or repair of any tangible chattel." *See Fairbanks v. Sup. Ct.*, 46 Cal. 4th 56, 61 (2009) (holding life insurance is not a service); Cal. Civ. Code § 1761(b) (defining "services"). Thus, "the CLRA does not cover transactions relating to the sale or lease of software," because software is neither a tangible good nor a service as defined in the CLRA. *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169, *14 (N.D. Cal. Oct. 5, 2010).

*Second*, even as amended, Plaintiff's conclusory statements are not plausible factual allegations that can sustain Plaintiff's claim. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff has clarified that her nebulous CLRA claim targets: (1) Defendants' allegedly deceptive announcements about changes to the game in June 2011; and (2) Defendants' "inserting numerous exculpatory

18

1   provisions in their TOU."  FAC ¶ 110-13.  But her claim still fails because the TOU are not

2   exculpatory (*see* Section III.B.1), and Plaintiff's allegations are inconsistent with the TOU,

3   which (1) made clear that users received only a limited license to use the game (TOU § IV.B);

4   (2) cautioned players that the company could discontinue or alter the game at any time (TOU §

5   II.B); and (3) made clear that SuperPoke Pets!'s "virtual currency" had no monetary value and

6   created no property rights, and that all sales were final (TOU § VI.A and TOU § VI.F).

7       ***Third***, the actual text of the June 2011 announcements about SuperPoke! Pets further

8   contradicts Plaintiff's claims that Defendants acted deceptively or misrepresented players' rights

9   and expectations related to the game.  Michalek Decl. Exhs. 4 & 5.  No reasonable user could

10  have expected lifetime enjoyment of any virtual items purchased in the game, based on the

11  nature of the game and Defendants' statements that the game would remain available for the

12  "foreseeable future."  *Id.*  Any claim that Defendants' conduct was deceptive is not plausible,

13  especially in light of the TOU under which users played the game.[12]

14      ***Finally***, Plaintiff's CLRA claim also fails because Plaintiff does not allege any injury,

15  and relief is available under the CLRA only to a "consumer who suffers any damage as a result"

16  of unlawful conduct.  Cal. Civ. Code § 1780(a).  Because Plaintiff agreed in the TOU that virtual

17  items and currency had *no* cash value and conveyed no ownership rights (see above), Plaintiff

18  cannot claim injury from "diminution in value of th[ose] virtual items" or plausibly characterize

19  her in-game payments as "investments."  *See* FAC ¶ 116, 37.  Moreover, since Plaintiff alleges

20  that the ability to purchase "Gold" items was eliminated in July 2011, Plaintiff had ***eight*** months

21  to enjoy any items she "purchased" in the game allegedly as a result of the June 2011

22  announcements.  Plaintiff also alleges that Defendants gave SPP users a full six months' warning

23  that they intended to shut down the game in March 2012, and gave users two options for keeping

24  a memento of their fictional pets once the game was shut down.  FAC ¶ 46, 48.  Thus, Plaintiff

25

26  ───────────────

27  [12] Moreover, to the extent that Plaintiff's CLRA claim alleges fraudulent conduct, it also must be dismissed for failure to comply with the Fed. R. Civ. P. 9(b) requirement that claims of fraud must be pled with particularity, because Plaintiff fails to allege any specific fraudulent

28  statements, or how, when, and by whom they were made.

1   suffered no damages, her alleged injury that Defendants have "entirely strip[ped] the value" from

2   her purchases is not plausible, and her CLRA claim must be dismissed.  FAC ¶ 49.

   **b.      Plaintiff failed to comply with statutory prerequisites to filing
            damage claims under the CLRA.**

4       Plaintiff's CLRA claim also fails procedurally.  The CLRA requires a plaintiff seeking

5   damages of any kind under that statute to give defendants specific notice of the "particular

6   alleged violations of Section 1770" at least 30 days prior to filing a claim seeking damages under

7   the CLRA, to allow defendants a reasonable opportunity to correct any actual statutory

8   violations.  Cal. Civ. Code § 1782(a).  Specifically, at least 30 days before filing a damages suit

9   (as opposed to a suit for purely injunctive relief, which does not require notice), a consumer must

10  "[n]otify the person alleged to have employed or committed methods, acts, or practices declared

11  unlawful by Section 1770 of the particular alleged violations of Section 1770" and "[d]emand

12  that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in

13  violation."  *Id*.  Plaintiff's FAC seeks "injunctive relief" under the CLRA and disclaims "any

14  right to recover damages" (FAC ¶ 116)—but nevertheless defines the "injunctive relief" sought

15  to include "restitution and disgorgement of all monies unjustly received and retained by

16  Defendants," apparently for alleged violations of the CLRA.  FAC at 26 (Prayer for Relief (d)).

17  Plaintiff's labeling of her restitution claims as "injunctive relief," however, does not change the

18  fact that "a restitution claim brought under the CLRA is a claim for damages and requires proper

19  notice."  *Ries v. Hornell Brewing Co., Inc.*, No. 5:10-CV-01139-JF/PSG, 2011 WL 1299286, *6

20  (N.D. Cal. Apr. 4, 2011); *Shein v. Canon U.S.A., Inc.*, No. CV 08-07323 CAS Ex, 2009 WL

21  1774287, *8 (C.D. Cal. June 22, 2009).  Plaintiff did not provide proper notice under Section

22  1782(a), nor has she alleged that she did.[13]  Moreover, federal courts have required "[s]trict

23  adherence to the statute's notice provision . . . to accomplish the [CLRA's] goals of expeditious

24

25  _____

26  [13] Plaintiff's counsel sent Defendants a two-paragraph letter on September 9, 2011, asserting that
    "the Terms of Use that purportedly govern the use of the SPP application, which contain
27  numerous ambiguous, illusory, and consumer unfriendly terms, is invalid and unenforceable with
    respect to Ms. Abreu's claims," and purporting to give notice of Plaintiff's claims "pursuant to
28  Section XIV(A)(3) of the . . . Terms of Use."  This letter did not identify the claims at issue or
    the nature of the alleged wrongful conduct as required under the CLRA notice rules.

1   remediation before litigation." *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195-96

2   (S.D. Cal. 2005); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003); *In re*

3   *Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011)

4   (dismissing without prejudice).  Thus, Plaintiff's claims for restitution under the CLRA should

5   be dismissed with prejudice.

6        Plaintiff's CLRA claim should also be dismissed because Plaintiff did not comply with

7   the requirement that "[i]n any action [under the CLRA], concurrently with the filing of the

8   complaint, the plaintiff shall file an affidavit stating facts showing that the action has been

9   commenced in a county described in this section as a proper place for the trial of the action." Cal.

10  Civ. Code § 1780(d).  If "a plaintiff fails to file the affidavit required by this section, the court

11  shall, upon its own motion or upon motion of any party, dismiss the action without prejudice."

12  *Id.*; *see In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*,

13  758 F.Supp.2d 1077, 1093–94 (S.D. Cal. 2010) (dismissing CLRA claim for failure to comply

14  with rule); *In re Apple & AT & T iPad*, 802 F. Supp. 2d at 1077.  Plaintiff filed no such affidavit,

15  and her claim should be dismissed for this additional reason.

16        **3.    Plaintiff's Fourth Cause of Action for violation of California's Unfair**
              **Competition Law (Cal. Bus. & Prof. Code § 17200) must be dismissed.**

17       Plaintiff's claim under California's Unfair Competition Law ("UCL")—which is

18  unchanged from her original Complaint—is similarly flawed, and must be dismissed.  Plaintiff

19  seeks relief under each of the three prongs of the UCL—claiming "unlawful," "unfair", and

20  "fraudulent" conduct by Defendants—but there is nothing unlawful, unfair or fraudulent about

21  Defendants' alleged conduct.  Plaintiff knowingly paid real money to play a virtual game, under

22  terms of use that made clear she was getting nothing more than a temporary right to play the

23  game, and she had ample time to play the game and enjoy the benefits she paid for.

24        **a.    Defendants' alleged conduct was not unlawful.**

25       Plaintiff's UCL claim for "unlawful" conduct must be dismissed because it depends

26  entirely on her defective CLRA claim, and fails with that claim for all of the reasons previously

27  discussed.  *See Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001)

28

21

1   (holding conduct that did not violate borrowed statute was not "unlawful" under Section 17200).

2                    **b.      Defendants' alleged conduct was not unfair.**

3        Plaintiff's UCL claim for "unfair" conduct must also be dismissed.  Plaintiff has not

4   plausibly alleged the three elements that are required to show "unfairness" under the UCL:  "(1)

5   the consumer injury must be substantial; (2) the injury must not be outweighed by any

6   countervailing benefits to consumers or competition; and (3) it must be an injury that consumers

7   themselves could not reasonably have avoided."  *Camacho v. Auto. Club of S. Cal.*, 142 Cal.

8   App. 4th 1394, 1403 (2006) (citation omitted); *see Kilgore v. Keybank, Nat'l Ass'n*, 712 F. Supp.

9   2d 939, 951-52 (N.D. Cal. 2010) (applying *Camacho*), vacated on other grounds, 673 F.3d 947

10  (9th Cir. 2012).

11       Here, there is nothing unfair about the actual TOU or Defendants' alleged conduct, and

12  Defendants caused no injury to Plaintiff or anyone else.  Plaintiffs' UCL claim thus fails because

13  she cannot satisfy the statutory requirement that a plaintiff must have "suffered injury in fact and

14  [have] lost money or property as a result of the [alleged] unfair competition." Cal. Bus. & Prof.

15  Code § 17204.  Also, Defendants' reservation of rights to its software (including the right to stop

16  offering it) logically benefited consumers by allowing Defendants to offer the game for users'

17  enjoyment for the three years of its existence (and more than six months after termination of the

18  "gold" features).  No rational business owner would offer a game at all if doing so required the

19  owner to maintain it in perpetuity.  Since Plaintiff alleges no plausible injury from Defendants'

20  conduct, the benefits of Defendants' actions outweigh that non-existent injury.  *See* FAC ¶ 121.

21                    **c.      Defendants' alleged conduct was not fraudulent.**

22       Plaintiff's UCL claims based on "fraudulent" conduct (including the remainder of her

23  "unfair" conduct claim discussed above, which also depends on deceptive or fraudulent conduct)

24  must also be dismissed.  These claims depend on the same facially contradictory and implausible

25  allegations discussed above, Plaintiff alleges no real injury, and Plaintiff fails to plead the alleged

26  fraudulent conduct with particularity under Rule 9(b).  To the extent that Plaintiff might appear

27  to state any superficially cognizable claim here, her claim must be rejected under *Twombly* and

28  *Iqbal* because it simply recites conclusory statutory elements in the guise of facts—not a

plausible, factual claim.  *See* FAC ¶ 123; *Iqbal*, 556 U.S. 678; *Twombly*, 550 U.S. at 555.

### 4. Plaintiff's Fifth Cause of Action for "Fraud in the Inducement" must be dismissed.

Plaintiff states no plausible claim of fraud of any kind, for all the reasons described above.  Plaintiff was told that Defendants could terminate the game at any time and that her fictional purchases of fictional currency or items did not create any actual property rights, and her FAC and the documents referenced therein indicate that the only specific factual allegations she claims were fraudulent were in fact true or are mischaracterized by Plaintiff's allegations.

Plaintiff's fraud claim, like her UCL claims of "fraudulent" conduct, is also inadequate under Rule 9(b) and *Twombly*/*Iqbal* pleading requirements.  Plaintiff makes no plausible specific factual allegations of false statements by defendants or actual reliance on those statements by Plaintiff, and thus fails to plead the alleged fraud with particularity as required under Rule 9(b).  Although Plaintiff's amended Complaint repeatedly recites that "Defendants knew or should have known that [various] statements were false at the time they were made" (*e.g.*, FAC ¶ 127), Plaintiff includes no *factual* allegations supporting that conclusory contention, which is thus not facially plausible.  *See Jones v. AIG Risk Mgmt., Inc.*, 726 F. Supp. 2d 1049, 1057 (N.D. Cal. 2010) (citation omitted) (rejecting similar allegations and explaining that "something more than nonperformance is required to prove the defendant's intent not to perform his promise").  Plaintiff's allegations are deficient, implausible, and contrary to the actual written record, to the extent they relate to Defendants' termination of the game and related announcements, and the Court is not required to credit them.  *See* FAC ¶ 127, 128; *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049 at 1055.  Plaintiff also still makes no specific factual allegations at all to support her claims that Defendants engaged in fraudulent conduct related to the alleged "limited quantity" of certain items in the game available for purchase with virtual "gold."  *See* FAC ¶ 129.

### 5. Plaintiff's Sixth Cause of Action for Promissory Estoppel must also be dismissed for failure to state any plausible claim.

Plaintiff's newly added claim for promissory estoppel is also defective and must be dismissed.  Promissory estoppel requires a "clear and unambiguous" promise, on which a plaintiff *reasonably* could and did rely.  *See Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031,

23

1044-45 (2010) (promise must be unambiguous on its face, and sufficiently clear for a court to determine the scope of the duty created).  Although Plaintiff attempts to recite certain buzz words—clear, unambiguous, reasonable—Plaintiff's few factual allegations (and the actual announcements on which they rely) contradict those conclusory labels.  *See* FAC ¶¶ 136, 138.  Plaintiff alleges that Defendants stated that they had "no plans" to shut SPP down and "promised" that SPP would remain available "for the foreseeable future."  FAC ¶ 136.  But "the foreseeable future" is an inherently vague, ambiguous term that does not establish any clear, well-defined duty and cannot support Plaintiff's claims here.  Moreover, SuperPoke! Pets players could not *reasonably* have relied on any such promise, given the other statements made in the announcements and Defendants' clear reservations of rights in the TOU.  *See Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*, 522 F.3d 1060, 1069 (9th Cir. 2008).  The actual announcements on which Plaintiff relies, which she misleadingly quotes in part, explain that Defendants had no plans to shut SPP down "in the near future" as of June 2011.  Michalek Exh. 5.  Moreover, given the announcements' references to the "foreseeable" future (implying that unforeseen events could end SPP, as in fact occurred), and statements that VIP status purchased in June 2011 would remain available "as long as the [SPP] program exists," users could not reasonably expect to play the game forever, or for any defined length of time.  *Id.* Exh. 4 at 3.

> **6.     Plaintiffs' Seventh Cause of Action for "Unjust Enrichment" must be dismissed because no such cause of action exists in California.**

Plaintiff's "Unjust Enrichment" claim also fails, because "courts have repeatedly held that 'there is no cause of action in California for unjust enrichment.'" *In re Apple & AT&T iPad*, 802 F. Supp. 2d at 1077 (citation omitted).  Plaintiff's defective claims also support no unjust enrichment remedy.

## IV.     CONCLUSION

Defendants respectfully request that the Court compel Plaintiff to arbitrate her claims.  Alternatively, Defendants request that Plaintiff's action be dismissed for failure to state a claim.  Plaintiff's amendment of her claims has failed to remedy their legal and factual defects, and her claims continue to ignore and contradict the actual documents on which they purport to rely.

24

Because Plaintiff cannot cure her claims' defects (or avoid arbitration) without contradicting her previous pleadings, further amendment would be futile, and Plaintiff's claims should be dismissed with prejudice. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990).

Respectfully submitted,

Dated: June 1, 2012                                KEKER & VAN NEST LLP


                                                            *Benedict Y. Hur*
                                    By: _____
                                                    BENEDICT Y. HUR

                                          Attorneys for Defendants
                                          SLIDE, INC. and GOOGLE INC.

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(B)(6); MEMO OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. 5:12-cv-00412 WHA