# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **MICHAEL HART**, *et al.*, individually and on behalf of a class of similar employees,<br><br>Plaintiffs,<br><br>v.<br><br>**ITC SERVICE GROUP, INC.**, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 4:15-cv-00599-DGK<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT GOOGLE FIBER, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY

Michael Hart, Jesse Allen, and Cody Hickcox ("Plaintiffs"), on behalf of themselves and others similarly situated, allege that ITC Service Group, Inc. ("ITC") and its agents, Tim Sauer, Scott Mitchell, Bob Gonzalez, and Patti Sanderson (with ITC collectively, "the ITC Defendants"), and Google Fiber, Inc. ("Google") (collectively, "Defendants") violated the overtime provisions of the Fair Labor Standards Act ("FLSA") by misclassifying certain supervisors as exempt, failing to pay for work performed, and retaliating against Plaintiff Hart for seeking payment allegedly required by the FLSA.

Plaintiffs worked as W-2 employees of ITC and, in connection with their employment, entered into valid arbitration agreements with ITC encompassing all of their claims in this action. Nevertheless, in breach of the agreements, Plaintiffs brought this lawsuit, including alleging Google was their joint employer, in lieu of pursuing their claims through individual arbitrations.

The ITC Defendants and Plaintiffs have filed competing motions to compel arbitration, both arguing that Plaintiffs' claims should be arbitrated. The parties disagree as to which arbitration agreement is applicable. Those motions are now fully briefed and ripe for decision. Regardless of which motion to compel arbitration is granted, Google is entitled to compel

arbitration because of the joint employment relationship Plaintiffs have alleged between ITC and Google and because Plaintiffs seek to hold all Defendants liable based on the alleged FLSA violations. Under well-established Eighth Circuit authority, Google may enforce the ITC arbitration agreements in this situation.

Section 3 of the Federal Arbitration Act ("FAA") requires that courts stay proceedings on claims "referable to arbitration." 9 U.S.C. § 3. However, where all claims between the parties are subject to arbitration, dismissal of the claims, rather than a stay of proceedings, is appropriate. Plaintiffs' claims should be brought in arbitration because the arbitration agreements are valid and cover all of their claims in this action. Accordingly, the Court should dismiss these claims.

## BACKGROUND

A.  **Plaintiffs' First Amended Complaint**

On February 18, 2016, Plaintiffs, on behalf of themselves and others similarly situated, filed their First Amended Complaint against Defendants.[1] Dkt. 49. They contend that their employer (ITC) and its agents failed to pay overtime compensation in violation of the FLSA and seek to hold Google liable as an alleged joint employer. *Id*. ¶¶ 12-35, 38, 44, 50, 56.

B.  **Plaintiffs' and the ITC Defendants' Motions to Compel Arbitration**

On December 3, 2015, the ITC Defendants filed their Motion to Compel Individual Arbitration, arguing that Plaintiffs' Mutual Arbitration Agreements should be enforced. Dkt. 25, 26. On January 8, 2016, Plaintiffs filed their competing Motion to Compel Arbitration, arguing that the arbitration agreement included in Plaintiffs' Temporary Contract Employment

---

[1] Plaintiffs' original Complaint alleged violations of the FLSA and various state wage and hour laws, and named only the ITC Defendants as defendants. Dkt. 1. On November 24, 2015, Plaintiffs moved for leave to amend their Complaint (Dkt. 21), which was granted by the Court on February 17, 2016. Dkt. 48. On February 18, 2016, Plaintiffs filed their First Amended Complaint, which is the operative complaint in the litigation, naming both the ITC Defendants and Google as defendants, and alleging only violations of the FLSA. Dkt. 49.

Agreements should be enforced because they superseded the Mutual Arbitration Agreements entered by Plaintiffs. Dkt. 34, 35 at 4-5. Thus, there are functionally cross-motions to compel arbitration currently pending before the Court. The parties agree that arbitration is proper; the question to be resolved by the Court is which arbitration agreement applies to Plaintiffs' claims.

## ARGUMENT

Regardless of which parties' motion to compel arbitration is granted, it is undisputed that Plaintiffs entered into valid and enforceable arbitration agreements encompassing all of their claims in this action. Despite these agreements, Plaintiffs apparently seek to pursue this litigation against Google, instead of pursing arbitration. Pursuant to the FAA and the terms of the agreements, the Court should dismiss or, at a minimum, stay Plaintiffs' claims.

A. **The FAA Applies Because The Arbitration Agreements Evidence Transactions Involving Interstate Commerce And Incorporate The FAA.**

The FAA states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This language reflects a "liberal federal policy" favoring arbitration. *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

The parties do not dispute that the FAA applies to the arbitration agreements at issue in this case – the Mutual Arbitration Agreements and the Temporary Contract Employment Agreements. As to the Mutual Arbitration Agreements, the ITC Defendants correctly state that the FAA applies (Dkt. 26 at 5-7), and Plaintiffs do not contest that assertion. Dkt. 36. To the extent the Temporary Contract Employment Agreements apply, as Plaintiffs argue, the FAA still

3

applies. Dkt. 35 at 4. Consequently, the Court must enforce the terms of the agreements as it would any other contract. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

**B.	Plaintiffs' Mutual Arbitration Agreements Should Be Enforced And The Arbitrator Should Decide Questions Of Arbitrability, Including Whether Plaintiffs' Claims Against Google Are Subject To Arbitration.**

For the reasons fully set forth in the ITC Defendants' initial and reply suggestions in support of their motion to compel individual arbitration (Dkt. 26, 43), which Google hereby incorporates by reference, Plaintiffs' Mutual Arbitration Agreements should be enforced.

Google specifically notes that, as set forth in the ITC Defendants' memoranda, parties may agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Here, the parties incorporated the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA Rules") into their Mutual Arbitration Agreements and agreed the arbitration shall be conducted in accordance with the existing AAA Rules. Dkt. 26-1, 26-2. AAA Rule 6(a) states that "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." Dkt. 26-2. Similarly, AAA Rule 6(b) provides the "arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a party." *Id*. The Eighth Circuit has held that, by incorporating the AAA's Rules in an arbitration agreement, parties clearly and unmistakably agree to allow the arbitrator to determine threshold questions of arbitrability. *See, e.g., Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) ("We have previously held the incorporation of the AAA Rules into a contract requiring arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability."). Moreover, whether a particular

arbitration provision may be used to compel arbitration between a signatory (like Plaintiffs) and a nonsignatory (like Google) is a threshold question of arbitrability. *Eckert/Wordell Architects*, 756 F.3d at 1100 (*citing Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002)). Accordingly, under *Rent-A-Center*, the arbitrator should decide whether Google may enforce Plaintiffs' arbitration agreements.

C.  **Regardless Of Which Agreement The Court Decides Is Enforceable, Google May Enforce The Agreements Against The Plaintiffs.**

All of the claims asserted in Plaintiffs' First Amended Complaint, including their claims against Google, are covered by the Mutual Arbitration Agreement. Under the broad definition of "Company," which refers to ITC, "its affiliates, subsidiaries and related entities, and the executives, employees, members, shareholders, and/or agents of these entities," any claims against Google would also be subject to arbitration. Dkt. No. 26-1, Exs. A-C, p. 1. Indeed, given Plaintiffs' extensive allegations of joint employment in the First Amended Complaint (*see generally* Dkt. 49, ¶¶ 12-35), Google would qualify as an "affiliate" or "related entity" under any rational interpretation of those terms.

Moreover, and even assuming the Temporary Contract Employment Agreements applied to Plaintiffs' claims, Google may still enforce Plaintiffs' arbitration agreement as a non-signatory. Federal law applies when determining whether one party may enforce an arbitration agreement against the other. *See Finnie v. H & R Block Fin. Advisors, Inc.*, 307 Fed. Appx. 19, 21 (8th Cir. 2009). The Eighth Circuit has recognized that a non-signatory defendant may enforce an arbitration agreement entered into by a signatory plaintiff when the relationship between the non-signatory defendant and the signatory defendant or third-party entity is "sufficiently close" that only by permitting the non-signatory defendant to invoke arbitration "may evisceration of the underlying arbitration agreement between the signatories be avoided."

5

*CD Partners v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005) (where non-signatory defendants sought to enforce arbitration agreement against signatory plaintiff-franchisee, relationship between non-signatory defendants and signatory franchisor, which was not a party, was "sufficiently close" to permit such enforcement; among other factors, the plaintiff's tort allegations all arose out of the defendants' conduct while acting as officers for franchisor, and the "core of the dispute" was the defendants' conduct in fulfilling the franchisor's promises); *see also PRM Energy Sys., Inc. v. Primenergy, LLC*, 592 F.3d 830, 834 (8th Cir. 2010).

Here, the entire theory of Plaintiffs' case as set forth in the First Amended Complaint is that Google is/was a joint employer with the ITC Defendants, all of whom are responsible for violating the FLSA. The allegations of joint employment are unmistakable, including that:

- ITC employees work exclusively for Google (Dkt. 49, ¶ 14);

- Google has substantial control over the ITC employees (*Id*. ¶ 15);

- ITC employees use equipment owned by Google (*Id*. ¶ 16);

- ITC's operations are tailored to Google's precise demands (*Id*. ¶ 18);

- Google provides training to ITC employees (*Id*. ¶ 21);

- Google controls the techniques and manner in which ITC employees perform their duties (*Id*. ¶ 22);

- ITC employees have Google email addresses, security clearances, badges, and uniforms (*Id*. ¶¶ 23-24);

- Google screens ITC employees for hire, has ordered pay increases for ITC employees, conducts regular performance reviews, and has effectively recommended disciplinary action (*Id*. ¶ 25);

- Google has a tracking system to monitor ITC employees during the work day (*Id*. ¶ 27);

- ITC employees receive wage payments from Google that simply "pass through" ITC (*Id*. ¶ 30); and

- Google controls ITC's staffing levels and must pre-approve staffing level increases (*Id*. ¶ 35).

Based on Plaintiffs' allegations, there is simply no question that Google and ITC are alleged to be "sufficiently close" that the arbitration agreement between ITC and Plaintiffs would be "eviscerated" if Google were not allowed to invoke the applicable agreement. *CD Partners*, 424 F.3d at 798.

The United States District Court for the Eastern District of Missouri recently addressed a situation similar to this in *Arnold v. DirecTV, Inc.*, 2013 U.S. Dist. LEXIS 167064, (E.D. Mo. Nov. 25, 2013). In *Arnold,* the plaintiffs, who worked as satellite and installation repair technicians, brought a collective action for unpaid wages and overtime against DirecTV under the FLSA and the Missouri Minimum Wage Act. The plaintiffs were W-2 employees of third-party Home Service providers ("HSPs"), for which the plaintiffs installed or serviced DirecTV equipment. Because the plaintiffs entered into arbitration agreements with their respective W-2 employers (the third-party HSPs), DirecTV moved to compel arbitration as a non-signatory beneficiary to those agreements. As here, plaintiffs did not contest the validity of the agreements; rather, they argued DirecTV could not enforce the agreements because it was a non-signatory. In response, DirecTV argued that, because the plaintiffs consistently alleged a joint employment relationship between DirecTV and the third-party HSPs (which DirecTV consistently denied), including seeking to hold DirecTV liable for alleged wage and hour violations arising during the plaintiffs' employment, DirecTV could enforce the arbitration agreements.

The Eastern District of Missouri agreed that DirecTV should be permitted to compel arbitration, concluding that, because there was a close relationship between DirecTV and the HSPs, and due to the plaintiffs' allegations of joint employment and conduct in violation of the

7

FLSA, that the arbitration agreements would be "practically eviscerated" if DirecTV was not permitted to compel arbitration.[2] 2013 U.S. Dist. LEXIS 167064 at * 13-14. The court further held that, even though DirecTV denied it was a joint employer, the plaintiffs could not be permitted to argue the defendants were joint employers while at the same time argue they were insufficiently related to permit DirecTV to compel arbitration. *Id.* at * 12-14. *See also Carter v. Affiliated Computer Services, Inc.*, 2010 U.S. Dist. LEXIS 139926 (W.D. Ark. Dec. 15, 2010) adopted, 2011 U.S. Dist. LEXIS 4162 (W.D. Ark Jan. 11, 2011) (following *CD Partners* and finding that, in the context of an allegation of joint employment under the FLSA, a nonsignatory defendant could enforce the arbitration agreement between the signatory and his direct employer).

Several other courts throughout the country have similarly relied on an estoppel theory in the context of joint/single employer allegations under the FLSA to hold that a nonsignatory defendant may enforce the arbitration agreement between the signatory and his/her direct employer. *See, e.g., Diaz v. Michigan Logistics, Inc.*, 2016 U.S. Dist. LEXIS 27499, *17-18 (E.D.N.Y. March 1, 2016); *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 758 (N.D. Ill. 2015); *Carter v. MasTec Services Company, Inc.*, 2010 U.S. Dist. LEXIS 10338, *13-14 (D. S.C. Feb. 5, 2010).

As did the defendants in these other cases, Google denies that it was Plaintiffs' employer (jointly with ITC or otherwise). Nonetheless, it is proper for Google to enforce the arbitration

---

[2] *Arnold* held that state contract law determines whether a non-signatory can enforce the provisions of an arbitration clause, apparently based on plaintiffs' argument that *Finnie v. H&R Block Financial Advisors, Inc.*, 307 Fed. Appx. 19, 21 (8th Cir. 2009) had been overruled in *Arthur Anderson LLP v. Carlisle*, 556 US. 624, 630-31 (2009) and *PRM Energy Systems Inc.*, 592 F.3d 830, 833 (8th Cir. 2010). 2013 U.S. Dist. LEXIS 167064 at *10. Google believes that conclusion is erroneous because the Eighth Circuit cited to *Finnie* approvingly in *PRM Energy Systems* in support of the proposition that a non-signatory may compel arbitration against a signatory where there is a close relationship. 592 F.3d at 834. Regardless, in the absence of any state law that holds that a non-signatory may not enforce an arbitration agreement, *Arnold* relied on federal common law applied by the Eighth Circuit. 2013 U.S. Dist. LEXIS 167064 at *10.

8

agreements, regardless of which one applies.  Plaintiffs claim that Google and ITC are joint employers and seek to hold Google liable for the alleged wage-and-hour violations arising during the Plaintiffs' employment at ITC.  Plaintiffs cannot have their cake and eat it too by, on one hand, claiming that Google and ITC are their employers and thus liable for pay practices at ITC and then, on the other, argue that Google cannot enforce the agreements controlling resolution of complaints "arising from or related to . . . [their] employment" or "having any relationship or connection whatsoever with . . . [their] employment."  Dkt. 26-1, Exs. A-C, p. 1; Dkt. 35, Ex. 1-2, 1-3; 2-2, 2-3, 3-2, 3-3, 3-4, ¶ 23.  To allow otherwise would render the agreements meaningless and result in their complete "evisceration."  *CD Partners*, 424 F.3d at 798.

**D.     The Court Should Dismiss Plaintiffs' Claims Or, At A Minimum, Stay All Further Proceedings On Their Claims.**

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, <u>shall</u> on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).  "[D]istrict courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration."  *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011); *see also Rosemann v. Sigillito*, 877 F. Supp. 2d 763, 777 (E.D. Mo. 2012) (dismissing matter, and explaining "that no purpose would be served by staying the case").

Plaintiffs' claims are "referable to arbitration" under the FAA.  Each of these individuals entered into valid agreements to arbitrate all of their claims against the Defendants and there is

9

no dispute the agreements are governed by the FAA. Therefore, the Court could "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[s]." 9 U.S.C. § 3. But here, Plaintiffs' claims are "referable to arbitration," and the "entire controversy" between each of them and the Defendants will "be resolved by arbitration." *Green*, 877 F. Supp. 2d at 777. As a result, the Court has the authority to, and should instead, dismiss these claims. *Id.* at 769-70.

## CONCLUSION

For the reasons set forth above, Defendant Google Fiber, Inc. respectfully requests that the Court enter an order dismissing or, in the alternative, staying Plaintiffs' claims against Google, to enable the claims to proceed in arbitration.

Respectfully submitted,

/s/ *Daniel B. Boatright*
Daniel B. Boatright, #38803
S. Jane Preuss, #50952
Jason N.W. Plowman, #67495
LITTLER MENDELSON, P.C.
1201 Walnut, Suite 1450
Kansas City, MO  64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
dboatright@littler.com
jpreuss@littler.com
jplowman@littler.com

ATTORNEYS FOR DEFENDANT
GOOGLE FIBER, INC.

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on this 18th day of April, 2016, I electronically filed the above and foregoing with the Court's CM/ECF electronic system which will send a notice of electronic filing to the following counsel of record:

Morgan L. Roach
Michael T. Miller
Nicholas S. Ruble
MCCAULEY & ROACH, LLC
527 West 39th Street, Suite 200
Kansas City, MO  64111
morgan@mccauleyroach.com
mike@mccauleyroach.com
nicholas@mccauley.roach.com

ATTORNEYS FOR PLAINTIFFS

Kyle B. Russell
Lindsey L. Poling
JACKSON LEWIS P.C.
7101 College Boulevard, Suite 1150
Overland Park, KS  66210
Kyle.Russell@jacksonlewis.com
Lindsey.Poling@jacksonlewis.com

and

Daniel P. O'Donnell, Jr.
JACKSON LEWIS P.C.
7733 Forsyth Boulevard, Suite 600
St. Louis, MO  63105
Daniel.ODonnell@jacksonlewis.com

ATTORNEYS FOR DEFENDANTS
ITC SERVICE GROUP, INC., TIM SAUER,
SCOTT MITCHELL, BOB GONZALEZ,
AND PATTI SANDERSON

        /s/ *Daniel B. Boatright*
        Attorney for Defendant
        Google Fiber, Inc.