QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                Plaintiff,<br><br>        vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>                Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS**<br><br>Date:        April 27, 2017<br>Time:        8:00 a.m.<br>Ctrm:        8, 19th Floor<br>Judge:       Honorable William H. Alsup<br>Trial Date:  October 2, 2017 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

I.    WAYMO'S LITIGATION AGAINST UBER ........................................................ 3

    A.    Waymo Asserts Trade Secret And Patent Claims Against Uber Only ...................... 3

    B.    Uber Moves To Compel Arbitration And Stay Waymo's Trade Secret And UCL Claims Against It Before Filing An Arbitration Demand Against Waymo ................................................................................................................. 5

II.    GOOGLE'S PREVIOUSLY FILED ARBITRATIONS AGAINST MR. LEVANDOWSKI INVOLVE DIFFERENT FACTUAL ALLEGATIONS AND DIFFERENT CLAIMS FOR RELIEF ............................................................ 6

ARGUMENT ........................................................................................................................ 8

I.    UBER LACKS STANDING TO COMPEL ARBITRATION OR STAY WAYMO'S TRADE SECRET CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT ................................................................................................ 8

    A.    A Nonsignatory To An Arbitration Agreement, Like Uber, May Only Invoke Arbitration Under Very Limited Circumstances ............................................ 8

    B.    Equitable Estoppel Does Not Apply To Waymo's Trade Secret Claims Against Uber ................................................................................................... 10

II.    UBER'S ALTERNATIVE ARGUMENT REGARDING THE SUPPOSEDLY BROAD LANGUAGE OF THE LEVANDOWSKI EMPLOYMENT AGREEMENTS IS IRRELEVANT AND MISCASTS THE AGREEMENTS ................ 15

III.    UBER'S REQUEST TO STAY WAYMO'S PRELIMINARY INJUNCTION MOTION SHOULD BE DENIED BECAUSE WAYMO CANNOT BE COMPELLED TO ARBITRATE ITS REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF ................................................................................................ 18

IV.    OTHER EQUITABLE CONSIDERATIONS STRONGLY FAVOR DENYING UBER'S REQUESTED RELIEF ............................................................ 20

CONCLUSION ................................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*AT & T Techs., Inc. v. Commc'ns Workers*,
    475 U.S. 643 (1986) ..................................................................................................8

*Amergence Supply Chain Mgmt. Inc. v. Changhong (Hong Kong) Trading Ltd.*,
    No. CV-15-9976-MWF (AFMx), 2016 WL 8234652 (C.D. Cal. Apr. 21, 2016) ...................11

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009) ..................................................................................................9

*Bank of Am., N.A. v. Immel, No. C 10-02483 CRB*,
    2010 WL 2380877 (N.D. Cal. June 11, 2010) ..............................................................14

*Benasra v. Marciano*,
    92 Cal. App. 4th 987 (2001) ......................................................................................16

*Blackbird Techs., Inc. v. Joshi*,
    No. 5:15-CV-04272-EJD, 2015 WL 5818067 (N.D. Cal. Oct. 6, 2015) ..................................14

*Britton v. Co-op Banking Grp.*,
    4 F.3d 742 (9th Cir. 1993) ..........................................................................................9

*Burgoon v. Narconon of N. California*,
    125 F. Supp. 3d 974 (N.D. Cal. 2015) .........................................................................13

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
    No. C-12-MD-2330 EMC, 2014 WL 1338474 (N.D. Cal. Mar. 28, 2014) ..............................15

*Comedy Club, Inc. v. Improv W. Assocs.*,
    553 F.3d 1277 (9th Cir. 2009) .....................................................................................9

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) ...........................................................................9, 10, 15

*Congdon v. Uber Techs., Inc.*,
    No. 16-CV-02499-YGR, 2016 WL 7157854 (N.D. Cal. Dec. 8, 2016) ..................................20

*Craig v. Brown & Root, Inc.*,
    84 Cal. App. 4th 416 (2000) ......................................................................................16

*Davenport v. Blue Cross of California*,
    52 Cal. App. 4th 435 (1997) ......................................................................................19

*Engalla v. Permanente Med. Grp., Inc.*,
    15 Cal. 4th 951 (1997) ..............................................................................................16

*F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*,
    248 F. Supp. 2d 240 (S.D.N.Y. 2002) .........................................................................18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Fitz v. NCR Corp.*,
 118 Cal. App. 84th 702 (2004)..................................................................................19

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
 331 F.3d 1122 (9th Cir. 2003)..................................................................................23

*Gilmer v. Interstate/Johnson Lane Corp.*,
 500 U.S. 20 (1991) ....................................................................................................22

*Goldman v. KPMG LLP*,
 173 Cal. App. 4th 209 (2009)........................................................................10, 13, 15

*Gonsalves v. Infosys Techs., Ltd., No. C 3:09-04112*,
 2010 WL 3118861 (N.D. Cal. Aug. 5, 2010)............................................................17

*Hall v. Internet Capital Grp., Inc.*,
 338 F. Supp. 2d 145 (D. Me. 2004)...........................................................................18

*Hawkins v. KPMG LLP*,
 423 F. Supp. 2d 1038 (N.D. Cal. 2006) ....................................................................12

*Hess v. Ford Motor Co.*,
 27 Cal. 4th 516 (2002)...............................................................................................17

*Huong Que, Inc. v. Luu*,
 150 Cal. App. 4th 400 (2007) ....................................................................................14

*Jones v. Jacobson*,
 195 Cal. App. 4th 1 (2011) ........................................................................................16

*Karo v. San Diego Symphony Orchestra Ass'n*,
 762 F.2d 819 (9th Cir. 1985)......................................................................................15

*Kaselitz v. hiSoft Tech. Int'l, Ltd.*,
 No. C-12-5760 MMC, 2013 WL 622382 (N.D. Cal. Feb. 15, 2013)........................17

*Klamath Water Users Protective Ass'n v. Patterson*,
 204 F.3d 1206 (9th Cir. 2000)....................................................................................15

*Kramer v. Toyota Motor Corp.*,
 705 F.3d 1122 (9th Cir. 2013)................................................9, 10, 11, 12, 13, 14, 15

*Mance v. Mercedes-Benz USA*,
 901 F. Supp. 2d 1147 (N.D. Cal. 2012) ....................................................................11

*Miyasaki v. Real Mex Restaurants, Inc.*,
 No. C 05-5331 VRW, 2006 WL 2385229 (N.D. Cal. Aug. 17, 2006)......................22

*Mohamed v. Uber Techs., Inc.*,
 848 F.3d 1201 (9th Cir. 2016)..............................................................................14, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983) ......................................................................................................20

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009) .................................................................8, 9

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) .............................1, 9, 10, 11, 13, 15

*Nelson v. Anderson*,
   72 Cal. App. 4th 111 (1999) ................................................................15

*Nguyen v. Tran*,
   157 Cal. App. 4th 1032 (2007) ............................................................9

*Nitsch v. DreamWorks Animation SKG Inc.*,
   100 F. Supp. 3d 851 (N.D. Cal. 2015) ...............................................15

*PMS Distributing Co., Inc. v. Huber & Suhner, A.G.*,
   863 F.2d 639 (9th Cir. 1988) ...............................................................19

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
   55 Cal. 4th 223 (2012) .........................................................................16

*Pulli v. Pony Int'l, LLC*,
   206 Cal. App. 4th 1507 (2012) ............................................................17

*Rajagopalan v. NoteWorld, LLC*,
   718 F.3d 844 (9th Cir. 2013) .................................................1, 10, 14, 15

*S. Energy Homes, Inc. v. Kennedy*,
   774 So. 2d 540 (Ala. 2000) ..................................................................12

*Skyware, Inc. v. Abramson, No. C 11-00545 PSG*,
   2011 WL 2883446 (N.D. Cal. July 18, 2011) ....................................17

*Spinks v. Equity Residential Briarwood Apartments*,
   171 Cal. App. 4th 1004 (2009) ............................................................15

*Stirlen v. Supercuts, Inc.*,
   51 Cal. App. 4th 1519 (1997) ..............................................................19

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
   130 S. Ct. 1758 (2010) .....................................................................1, 12

*In re TFT-LCD (Flat Panel) Antitrust Litig., No. M 07-1827 SI*,
   2011 WL 1753784 (N.D. Cal. May 9, 2011) ......................................9

*Torbit, Inc. v. Datanyze, Inc.*,
   No. 5:12-CV-05889-EJD, 2013 WL 572613(N.D. Cal. Feb. 13, 2013) ............11, 12

*Toyo Tire Holdings of Americas Inc. v. Continental Tire North Amer., Inc.*,
   609 F.3d 975 (9th Cir. 2010) ...............................................................19

*U.S. ex rel. McCoy v. California Med. Review, Inc.*,
   133 F.R.D. 143 (N.D. Cal. 1990) ........................................................24

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

*U.S. v. Romm,*
    455 F.3d 990 (9th Cir. 2006) ...................................................................................14, 15

*Victoria v. Superior Court,*
    40 Cal. 3d 734 (1985) ...............................................................................9, 16, 17

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,*
    489 U.S. 468 (1989) ...........................................................................................1

*Westlye v. Look Sports, Inc.,*
    17 Cal. App. 4th 1715 (1993) ................................................................................16

*Wiedenbeck v. United Educ. Inst.,*
    No. SACV1500810CJCJEMX, 2015 WL 12743599 (C.D. Cal. Dec. 15, 2015) ......................17

### <u>Statutes</u>

Cal. Code Civ. Proc. § 1281.8(a)(3) ...............................................................................19

Cal. Code Civ. Proc. § 1281.8(b) ...................................................................................19

Cal. Code Civ. Proc. § 1636 ..........................................................................................17

Cal. Code Civ. Proc. § 1648 ..........................................................................................17

1

## INTRODUCTION

2       This is a dispute between two technology companies competing in the self-driving car space.

3    On the one side is Plaintiff Waymo LLC, and on the other are Defendants Uber Technologies, Inc.,

4    Ottomotto LLC, and Otto Trucking LLC's (together "Uber").   Waymo has brought trade secret

5    misappropriation and unfair competition claims against *Uber*, based on *Uber's* unlawful use of

6    Waymo's trade secrets, and seeks preliminary and permanent relief enjoining *Uber* from further

7    misusing Waymo's trade secrets in *Uber's* in-house, custom built LiDAR system.   In order to prevail

8    on its claims, Waymo will need to prove that *Uber* misappropriated Waymo's trade secrets and that

9    *Uber* unfairly competed against Waymo.   Anthony Levandowski is not a defendant in this case.   Nor

10   is this an employment dispute between Waymo and Mr. Levandowski.   *Uber* is the defendant in this

11   case, and *Uber* is responsible for its own misconduct.

12       It is black letter law that "arbitration is a matter of consent, not coercion."  *Stolt-Nielsen S. A.*

13   *v. AnimalFeeds Int'l Corp.,* 130 S. Ct. 1758, 1773 (2010) (quoting *Volt Information Sciences, Inc. v.*

14   *Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).   Waymo has not

15   consented to arbitrate this dispute with Uber.   And Waymo cannot be coerced into arbitration simply

16   because the trade secrets that *Uber* stole and that *Uber* is using in *Uber's* self-driving cars happen to

17   come from former Waymo employees.   That is not the law.

18       Instead, only parties to an arbitration agreement may invoke arbitration under the Federal

19   Arbitration Act (FAA), with very limited exceptions.   The only exception that Uber argues applies is

20   the doctrine of equitable estoppel.   But under binding Ninth Circuit precedent, that doctrine applies

21   "only under two very specific conditions" – neither of which is found here. *Murphy v. DirecTV, Inc.*,

22   724 F.3d 1218, 1229 (9th Cir. 2013).   Those conditions are so specific and narrowly confined that, as

23   recently as 2013, the Ninth Circuit had "never previously allowed a non-signatory defendant to invoke

24   equitable estoppel against a signatory plaintiff[.]"  *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844,

25   847 (9th Cir. 2013).   That remains true to this day.

26       Uber is attempting to use equitable estoppel as a vehicle to evade the court's jurisdiction, but

27   the equitable estoppel exception does not apply here either.   First, Waymo's claims against Uber are

28   tort claims founded in statutory and common law, rising and falling based on Uber's misconduct; they

are not – as required for equitable estoppel to apply – contract-based claims dependent on specific terms in Mr. Levandowski's employment agreements.   Second, Waymo did not name Mr. Levandowski as a defendant in this litigation.   Thus, Waymo does not – as required for equitable estoppel to apply – allege interdependent and concerted misconduct between a signatory and a nonsignatory.   Not only is Mr. Levandowski not a party in this litigation, but even Uber's recently filed arbitration demand does not name Mr. Levandowski as a party.   Moreover, in the previously filed arbitrations brought by Google (not Waymo) against Mr. Levandowski, as Uber admits, Google does not assert any claims related to the misappropriation of Waymo's trade secrets and improper use of Waymo's intellectual property.   Thus, the arbitration panel assigned to these ongoing proceedings will decide no issues related to allegations of trade secret theft or patent infringement.

Uber also argues, against the plain language of the contracts themselves and common sense, that Waymo has promised to arbitrate all disputes "with anyone" related to Mr. Levandowski's Waymo employment – even third party competitors.   Not so.   The plain reading of the agreements is that Waymo agreed to arbitrate its disputes with Mr. Levandowski, and Mr. Levandowski agreed to arbitrate his disputes with Waymo and anyone at Google.   Even if Uber's interpretation of these agreements were correct (which it is not), that would change absolutely nothing about the merits of Uber's motion because Uber still would not be a signatory to the agreements with standing to assert them.   Nor has Uber even tried to show (it could not) that it is a third-party beneficiary such that they would be able to enforce the employment agreements as a nonsignatory.

Finally, Uber argues that the Court should stay Waymo's motion for a preliminary injunction. But that motion, and the May 3 hearing, must proceed no matter how the Court rules on Uber's standing to invoke arbitration.   The arbitration clauses in Mr. Levandowski's employment agreements have specific carve-outs that allow Waymo to pursue provisional injunctive relief in court pursuant to controlling California law and Ninth Circuit authority.[1]

In actuality, Uber's plea to move this case to arbitration is a desperate and baseless attempt to get out of federal court for two reasons.   First, delay – getting the hearing on Waymo's Preliminary

---

[1]  Moreover, Waymo's preliminary injunction includes two of its patent claims, which Uber agrees will not be stayed under any scenario.

Injunction off calendar and the trial on Waymo's trade secret claims postponed. Second, secrecy – because in court, unlike in arbitration, the public has a right of access. And Uber does not like what the public is learning through this litigation about Uber's illegal and unfair competition. Counsel for Uber initially suggested at the March 29 hearing that the secrecy of arbitration could resolve the issues raised by Mr. Levandowski's invocation of the Fifth Amendment and permit him to testify without fear of criminal prosecution. (Dkt. 131 at 4:9-16, 15:11-16.) After the Court rejected that argument as "[r]idiculous," counsel for Uber responded, "Well, Your Honor, at least it's not in the public where it's going to be on the front page of the *New York Times* the next day." (*Id.* at 15:17-22.)

The Court should deny Uber's motion to compel arbitration and to stay Waymo's trade secret claims, and this action should proceed on the merits in federal District Court.

## BACKGROUND

## I.    WAYMO'S LITIGATION AGAINST UBER

### A.    Waymo Asserts Trade Secret And Patent Claims Against Uber Only

Waymo brought its trade secret and patent infringement claims against Uber after it discovered that Uber, who was a late entry in the self-driving car space, had not only improperly acquired Waymo's trade secret information but was actually using Waymo's intellectual property to build a competing LiDAR system for self-driving cars. As set forth in detail in the Amended Complaint (Dkt. 23), and further in Waymo's Preliminary Injunction Motion (Dkt. 24), Uber's acquisition of Otto in August 2016 for a reported $680 million raised suspicions at Waymo regarding possible misuse of its intellectual property. (FAC ¶¶ 49-50, 55-57.) Otto had been founded barely six months earlier by Mr. Levandowski, a former Waymo employee, prior to his resignation from Waymo. (*Id.*) Mr. Levandowski became Uber's Vice President of Engineering in charge of Uber's entire self-driving car project. (*Id.* ¶ 56.) Media reports at the time suggested that Uber paid over half a billion dollars largely to acquire Otto's six-month-old LiDAR technology. (Dkt. 25-4 at 9; Dkt. 27-24.) In contrast, Waymo's LiDAR technology had taken seven years to develop. (FAC ¶¶ 9, 21-37.) Adding to Waymo's suspicions were the abrupt resignations of several Waymo employees around this same time period – employees who then joined Uber's self-driving car team. (*Id.* ¶¶ 51, 53, 57.) Waymo began to investigate. (*Id.* ¶ 57.)

1    That investigation, which began in late August 2016, led to the discovery in October of Mr.

2    Levandowski's download of over 14,000 proprietary files from Waymo's highly confidential design

3    server the month before his resignation.  (FAC ¶¶ 43-47, 51-54, 57.)  But Waymo had no evidence

4    that **Uber** had obtained these files or was using the trade secrets they contained in its competing

5    LiDAR systems.  That came in mid-December 2016, when Waymo received an email from one of its

6    components suppliers, subject "OTTO FILES," attaching a machine drawing of a purported Uber

7    printed circuit board.  (*Id.* ¶¶ 58-59.)  This drawing was evidence that Uber had access to Waymo's

8    trade secret LiDAR designs, at which point Waymo endeavored to confirm whether Uber was using

9    custom LIDAR in its self-driving cars.  (*Id.* ¶¶  59-60.)  At this time, Uber was still refusing to

10   publicly identify its LiDAR supplier.  (*Id.* ¶ 60.)  On February 9, 2017, Waymo obtained the second –

11   and conclusive – piece of hard evidence, this time in response to a public records request to the

12   Nevada Governor's Office of Economic Development and Department of Motor Vehicles.  (*Id.* ¶¶

13   60-61.)  This evidence confirmed that, as of September 2016, Uber was telling Nevada regulators that

14   it had already "developed in house and/or currently deployed" an "[i]n-house custom built 64-laser"

15   LiDAR system.  (*Id.*)  Now that Waymo finally had proof that Uber had improperly acquired and was

16   actually *using* Waymo's trade secrets in its self-driving cars, Waymo brought suit in federal district

17   court two weeks later.

18       Specifically, Waymo asserted causes of action for trade secret misappropriation (under the

19   Federal Defend Trade Secrets Act and California Uniform Trade Secrets Act) and unfair competition

20   (under California Business and Professions Code § 17200).  Waymo's trade secret misappropriation

21   claims alleged that Uber had acquired Waymo's trade secret information, that Uber had knowledge of

22   or reason to know that the trade secrets were acquired by improper means or in an unlawful manner,

23   and that Uber was using the trade secrets without Waymo's consent and to Uber's benefit.  (FAC ¶¶

24   73-76, 82-85.)  Waymo's unfair competition claims alleged that Uber acquired and that Uber had used

25   Waymo's confidential and proprietary trade secret information through material misrepresentations

26   and omissions.  (FAC ¶ 146.)  Waymo also brought patent infringement claims against Uber on four

27   Waymo patents directed to LiDAR systems and self-driving car technology.  (*Id.* ¶¶ 89-142.)

28

-4-

Just over two weeks after filing its Complaint against Uber, Waymo moved for a preliminary injunction to enjoin Uber and any of its employees (or executives) from using or disclosing Waymo's trade secrets.  (Dkt. 24.)  Waymo further sought to enjoin Uber from infringing two of its patents.  In the motion, Waymo also requested that Uber be compelled to return any and all Waymo confidential information in its possession or control, including the 14,000+ documents unlawfully taken from Waymo by Uber's current Vice President of Engineering, Mr. Levandowski.  To this day, Uber has failed to return Waymo's confidential information.

**B.**      **Uber Moves To Compel Arbitration And Stay Waymo's Trade Secret And UCL Claims Against It Before Filing An Arbitration Demand Against Waymo**

On March 15, 2017, one day before the Court's Case Management Conference on Waymo's Motion for Preliminary Injunction, Uber notified Waymo for the first time of its position that Waymo's claims against Uber were subject to the arbitration provisions in employment agreements between Mr. Levandowski and Google ("Levandowski Employment Agreements").  (Declaration of David A. Perlson ("Perlson Decl.") ¶ 2.)  At the March 16 hearing, counsel for Uber indicated that Uber would file a motion to compel arbitration "within two weeks" and that the motion would be "set for hearing on regular notice." (Dkt. 63 at 12:15-17, 14:23-24.)  The Court encouraged Uber's counsel to consider filing the motion sooner than two weeks, particularly if Uber wished to have its motion heard before the preliminary injunction hearing.  (*Id.* at 15:11-14.)  On March 27, almost two weeks later, Uber filed the Motion to Compel Arbitration and to Stay Waymo's Trade Secret and UCL Claims.  (Dkt. 115.)  Uber did not actually file and serve a demand for arbitration ("Uber Arbitration") until March 31.  (Ex. A; *see also* Exs. B-C.)[2]

The Uber Arbitration includes two claims seeking declaratory relief that the trade secret misappropriation and UCL claims are subject to mandatory arbitration, and that those same claims "are without merit." (Ex. C ¶¶ 20-25.)  Uber asserts a theory of equitable estoppel in arguing why it is entitled to file the Arbitration Demand as a non-signatory to the underlying Levandowski Employment Agreements.  (Ex. C ¶ 7.)  Uber does not claim that it is a party or third party beneficiary to the

---

[2]   Exhibits A-F referenced herein correspond to the Exhibits attached to the Perlson Declaration.

Levandowski Employment Agreements, and asserts no other basis for its right to invoke the Levandowski Employment Agreements' arbitration provisions against Waymo.

Like in this lawsuit, Mr. Levandowski is not a party to the Uber Arbitration.  (Perlson Decl. ¶ 9; Exs. B-C.)  However, despite Uber's repeated representations to the Court that it does not have control over Mr. Levandowski's personal files and thus cannot produce them in this action, Uber was able to obtain from Mr. Levandowski an executed version of his 2012 Employment Agreement and included it in the arbitration demand.  (*See* Ex. D.)

## II.    GOOGLE'S PREVIOUSLY FILED ARBITRATIONS AGAINST MR. LEVANDOWSKI INVOLVE DIFFERENT FACTUAL ALLEGATIONS AND DIFFERENT CLAIMS FOR RELIEF

Before obtaining the December 2016 email and February 2017 public-records request, Google instituted arbitration proceedings against Mr. Levandowski on October 28, 2016 by filing two separate arbitration demands (the "Levandowski Arbitrations").  (Dkts. 114-7, 114-8.)  Neither Waymo nor Uber are parties to these proceedings.[3]  The Levandowski Arbitrations are "closely related" to each other but were brought separately "[o]ut of an abundance of caution" in order to respect confidentiality clauses between Mr. Levandowski and Google in the second arbitration's subject agreements.  (Dkt. 114-8 at 9-10.)  In the Levandowski Arbitrations, Google is represented by counsel from Keker, Van Nest & Peters LLP and Mr. Levandowski is personally represented by Uber's counsel, Morrison & Foerster (including Arturo Gonzalez and Eric Tate, who have appeared in this matter).   And aside from Uber's allegations in its recently filed Uber Arbitration that Mr. Levandowski was a party to employment agreements with Google (Ex. C ¶¶ 8-9), and that Mr. Levandowski left Google to found Otto (*id.* ¶¶ 11-12), there is no factual overlap between Uber's recently asserted arbitration demand and the Levandowski Arbitrations.  (*Compare id.* ¶ 16, *with id.* ¶18.)

Google's first arbitration asserts a Breach of Contract claim against Mr. Levandowski and another co-founder of Otto for breaches of the non-solicitation, non-competition, and confidentiality

---

[3] Among other reasons, at the time Google instituted the Levandowski Arbitrations, Waymo did not exist as a standalone company.  Waymo spun off as a separate Alphabet Inc. subsidiary in December 2016.   (Dkt. 27-5.)

provisions included in each individual's respective employment agreements, as well as non-contract claims for Breach of Fiduciary Duties and Duties of Loyalty, Fraud-Deceit, Tortious Interference with Contract and with Prospective Economic Advantage, Unlawful Conduct and Unfair Competition, and Unjust Enrichment. (Dkt. 114-7 at 18-28.) In the second arbitration, Google asserts Breach of Contract claims against Mr. Levandowski for breaches of non-solicitation and non-competition provisions in two contracts signed in 2011 in connection with Google's purchase of two companies founded by Mr. Levandowski – Anthony's Robots, LLC and 510 Systems, LLC. (Dkt. 114-8 at 10, 17-19.) Google is not asserting any trade secret misappropriation claims in the Levandowski Arbitrations.

The same basic allegations are at issue in both Levandowski Arbitrations. In sum, Google asserts that, **while** Mr. Levandowski was a Google employee, Mr. Levandowski improperly solicited Google employees and consultants to join another company, and violated his duties and obligations to Google by creating, or participating in, other, unauthorized companies during his Google employment. (*See* Dkt. 114-7 at 9-17, 114-8 at 9-16.) Specifically, Google alleges that Mr. Levandowski breached his obligations and duties to Google by building a company (Otto) that would ultimately compete with Google's self driving car project, and by secretly developing at least two other competing companies (Odin Wave, LLC and Tyto Lidar LLC). (*See id.*) Google also alleges that Mr. Levandowski embarked on a campaign to target and recruit valuable Google employees by soliciting them and inducing them to leave Google and join his competing venture, Otto, in part by using Google's confidential salary and compensation information to make targeted and individualized job offers. (*See id.*)

These allegations concerning Mr. Levandowski's improper solicitation of employees are the only claims Google asserts in the Levandowski Arbitrations that are related at all to Google's confidential (but not trade secret) information. Because there are no allegations concerning trade secrets being asserted by Google in the Levandowski Arbitrations, the arbitration panel will not decide any issues related to the trade secret misappropriation claims that Waymo is asserting against Uber. (Declaration of Rachel Meny ("Meny Decl.") ¶¶ 4-5, 7.) Indeed, as Uber admits in its Motion, Google "makes no claims of trade secret misappropriation" in the Levandowski Arbitrations. (Mot. at 6, 9;

1    *see also* Dkt. 131 at 29:11-30:1 ("[T]hey don't allege trade secrets [in the prior arbitrations]. They

2    allege other things against them.").)

3        After filing, the Levandowski Arbitrations were functionally consolidated before the same

4    three-arbitrator panel.  Despite the October 2016 initiation of arbitration, the first case management

5    conference was not conducted until March 10, 2017.  No formal discovery can start yet, and the merits

6    hearing is set to begin on April 30, 2018.  Counsel from Morrison & Foerster did not disclose the

7    present motion to compel arbitration to Keker, Van Nest and Peters or the arbitration panel until the

8    afternoon of April 3, 2017.  (Meny Decl. ¶¶ 8-11.)  The panel did not take any position regarding

9    Uber's motion to compel arbitration during the April 3 case management conference.[4]  (*Id.* ¶ 11.)

10   Although Mr. Levandowski's arbitration counsel (including Arturo Gonzalez and Eric Tate at

11   Morrison) had previously agreed to collect and produce Mr. Levandowski's initial disclosure

12   documents by April 10, his counsel abruptly announced at the April 3 arbitration conference that Mr.

13   Levandowski may not testify or produce documents in the Levandowski Arbitrations.  (*Id.* ¶¶ 6, 12.)

14   Mr. Gonzales informed Google today (April 10) that Mr. Lewandowski would not produce documents

15   in the arbitration, and the parties will subsequently brief and argue issues related to the Fifth

16   Amendment privilege against self-incrimination.  (*Id.* ¶ 12.)

17                                        **ARGUMENT**

18   **I.    UBER LACKS STANDING TO COMPEL ARBITRATION OR STAY WAYMO'S
            TRADE SECRET CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT**
19

20           **A.    A Nonsignatory To An Arbitration Agreement, Like Uber, May Only Invoke
                     Arbitration Under Very Limited Circumstances**

21           "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any

22   dispute which he has not agreed so to submit."  *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042,

23   1045 (9th Cir. 2009) (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986)).

24   "[T]he policy favoring arbitration cannot displace the necessity for a voluntary agreement to

25

26   ───────────────
     [4] On March 31, Uber emailed Waymo offering to stipulate that the same panel in the Levandowski
27   Arbitrations hear the Uber Arbitration, and that the hearing in the Uber Arbitration take place after the
     scheduled date of the jury trial in this action.  (Perlson Dec., Ex. F.)  Waymo responded on April 4
     that it opposed Uber's attempt to compel arbitration and did not agree to the stipulation, which
28   Waymo did not believe to be practicable in any event.  (*Id.*)

arbitrate." *Id.* (quoting *Victoria v. Superior Court*, 40 Cal. 3d 734, 739 (1985) (en banc)).  "Generally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (internal quotation marks omitted).  Contrary to the suggestion in Uber's Motion (Mot. at 6), "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement."  *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009); *see also Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (when the question is "whether a particular party is bound by the arbitration agreement" then "the liberal federal policy regarding the scope of arbitrable issues is inapposite.").

Uber is not a signatory to either of the Levandowski Employment Agreements.  Therefore, Uber may only invoke arbitration under sections 3 and 4 of the Federal Arbitration Act ("FAA"), as it is trying to do here, when "the relevant state contract law allows the litigant to enforce the agreement." *Kramer*, 705 F.3d at 1128 (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 632 (2009)).  Here, Uber agrees that California law applies to the Levandowski Employment Agreements.  (*See* Mot. at 7; Ex. D ¶¶ 14(a), 14(f), 15(a); Ex. E ¶¶ 15(b), 16(a).)

Under California law, there are "limited exceptions" to the rule that "only parties to an arbitration contract may enforce it or be required to arbitrate."  *Nguyen v. Tran*, 157 Cal. App. 4th 1032, 1036 (2007).  As a nonsignatory seeking to enforce the arbitration provisions of the Levandowski Employment Agreements, Uber "bears the burden of proving that" one of California state law's exceptions applies.  *Murphy*, 724 F.3d at 1233-34.  "As courts recognize, there is a black letter rule that the obligation to arbitrate depends on consent," and therefore "a nonsignatory defendant faces a heavy burden to show that the signatory plaintiff intended to submit to arbitration[.]"  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 1753784, at *5 (N.D. Cal. May 9, 2011).  A nonsignatory to an arbitration agreement who fails to meet its heavy burden of proving one of the state law exceptions applies lacks standing to compel arbitration under the FAA.  *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 748 (9th Cir. 1993) (affirming district court ruling that nonsignatory, who failed to show that any state law exceptions applied, "lacked standing to enforce the arbitration

clause" and accordingly "affirm[ing] the district court's order denying [the nonsignatory's] motion to compel arbitration").

The limited exceptions are theories of incorporation by reference, assumption, agency, veil-piercing or alter-ego, equitable estoppel, and third party beneficiary.  *Comer*, 436 F.3d at 1101; *see also Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219-20 (2009).  Here, Uber has only advanced a single theory under which it, as a nonsignatory, can enforce the Levandowski Employment Agreements – equitable estoppel.  (Mot. at 2-3.)  As explained below, equitable estoppel does not apply to Waymo's trade secret claims against Uber.

**B.      Equitable Estoppel Does Not Apply To Waymo's Trade Secret Claims Against Uber**

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."  *Kramer*, 705 F.3d at 1128. Under California law, equitable estoppel is "narrowly confined" to "two very specific conditions": "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement."  *Murphy*, 724 F.3d at 1229 (citations omitted).  As set forth below, these narrowly confined conditions are absent here because Mr. Levandowski – the signatory – is not a party and because the asserted claims are not based on any agreement with Mr. Levandowski.  Indeed, the equitable estoppel exception is so narrowly confined that Uber cites no cases, and Waymo is not aware of any, in which the Ninth Circuit has ever affirmed a finding that a nonsignatory defendant can compel arbitration against a signatory on the theory of equitable estoppel.  *See, e.g., Rajagopalan*, 718 F.3d at 847 ("We have never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff, and we decline to expand the doctrine here.").

Uber argues that equitable estoppel applies based on the second of the Ninth Circuit's "two very specific conditions" – *i.e.*, because "Waymo alleges substantially interdependent and concerted

misconduct between Levandowski and Defendants that is intimately connected with the obligations in Levandowski's underlying contracts."  (Mot. at 7.)  This second, "concerted misconduct" form of equitable estoppel narrowly applies "in certain cases where a signatory to an arbitration agreement attempts to evade arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from **arbitrable claims** against **signatory defendants**."  *Murphy*, 724 F.3d at 1231 (emphasis added, internal quotation marks omitted).  Here, there are no "signatory defendants" – Waymo has not brought any trade secret claims against Mr. Levandowski – so this form of equitable estoppel cannot apply as a matter of law.  *Amergence Supply Chain Mgmt. Inc. v. Changhong (Hong Kong) Trading Ltd.*, No. CV-15-9976-MWF (AFMx), 2016 WL 8234652, at *6 (C.D. Cal. Apr. 21, 2016) ("Because Plaintiff brings no claims against signatories to the NDA, the second circumstance does not apply.") (citing *Kramer*, 705 F.3d at 1128); *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1157 (N.D. Cal. 2012), *abrogated on other grounds by Kramer*, 705 F.3d 1122[5] ("Because Mr. Mance does not bring any claims against Dealer – and so there are no claims against a nonsignatory that are 'inherently bound up' with claims against a signatory – only the first theory of equitable estoppel applies.")).  Indeed, Uber does not cite a single case where the "concerted misconduct" form of equitable estoppel applies in this Circuit where, as here, the plaintiff has asserted no claims against a signatory.

The only case cited by Uber from this Circuit in which a court actually granted a nonsignatory's motion to compel arbitration, *Torbit, Inc. v. Datanyze, Inc.*, is distinguishable on multiple levels.  No. 5:12-CV-05889-EJD, 2013 WL 572613, at *4 (N.D. Cal. Feb. 13, 2013).  First, it did not even address, let alone apply, the "concerted misconduct" equitable estoppel theory that Uber asserts here.  *Id.* (applying a now abrogated version of the "reliance" standard).[6]  Second, in *Torbit* the

---

[5]   *See, e.g.*, *Amergence Supply Chain Mgmt*, 2016 WL 8234652, at *9 ("Finally, the district court's holding in *Mance v. Mercedes-Benz USA* is no longer good law in light of the Ninth Circuit's decisions in *Mundi* and *Kramer*.").

[6]   *Torbit* issued just fourteen days after the Ninth Circuit's opinion in *Kramer*, and therefore the parties in that case were unable to brief the district court on the now-controlling standards for equitable estoppel.  *Kramer* and subsequent Ninth Circuit cases applying its standard for the "reliance" form of equitable estoppel abrogate *Torbit's* holding that a nonsignatory has standing to compel arbitration so long as the plaintiff's claims "touch matters" covered by an arbitration

1  plaintiff asserted claims against a signatory to the arbitration agreement (Ilya Semin) – claims that

2  were identical to those brought against the nonsignatory (Datanyze).  *Id.* at *2.  But here, Mr.

3  Levandowski is not a defendant in this case.  So the public policy concerns traditionally underpinning

4  the "concerted misconduct" form of equitable estoppel are entirely absent.  The "second [i.e.,

5  concerted misconduct] form of equitable estoppel" is concerned with preventing "arbitration

6  proceedings **between the two signatories**" from being "rendered meaningless" by "denying the

7  **signatory** the benefit of the arbitration clause, and in order to **avoid duplicative litigation** which

8  undermines the efficiency of litigation."  *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D.

9  Cal. 2006) (emphasis added, internal quotation marks and citation omitted).  And even Uber – the

10  party seeking to compel arbitration – has not named Mr. Levandowski as a party to the Uber

11  Arbitration.  *Cf. S. Energy Homes, Inc. v. Kennedy*, 774 So. 2d 540, 545 (Ala. 2000) ("The concept of

12  'intertwining' necessarily presupposes that the signatory to the arbitration agreement is or will be

13  engaged in an arbitration proceeding with the plaintiff. . . .  In other words, 'intertwining' requires at

14  least two threads to weave together – one cannot intertwine a single thread.  Under the circumstances

15  presented by this case, requiring [nonsignatory defendant] to litigate [plaintiffs'] claims against it

16  cannot render arbitration proceedings meaningless, nor can it thwart federal policy in favor of

17  arbitration.").

18      Although Uber does not cite any relevant authority, it appears to be aware that its equitable

19  estoppel theory cannot apply without a signatory defendant, and therefore devotes an entire section of

20  its brief to arguing – this time without any citations to authority at all – that Waymo should not be

21  allowed to use "artful pleading" to avoid a supposed "arbitration obligation."  (Mot. at 9.)  Uber has it

22  backwards.  Arbitration "is a matter of consent, not coercion."  *Stolt-Nielsen S. A.,* 130 S. Ct. at 1773.

23  As Uber's own cited authority holds, "no principle of law – **and certainly not the doctrine of**

24  ─────────────────────

25  agreement.  *Compare Torbit*, 2013 WL 572613, at *4 ("Thus, to have standing to compel arbitration
    on this claim, Datayanze [sic] must show proof that at least one of these elements is 'intertwined' with
26  or 'relates to directly to' Mr. Semin's employment agreement. . . . As discussed in the previous
    section, Mr. Semin's alleged violations of the CFAA and trespass to chattels 'touch matters' covered
27  by the arbitration clause in the Agreement, . . . and thus are 'intertwined with the contract providing
    for arbitration.'") (citations omitted), *with Kramer*, 705 F.3d at 1131 ("Looking to California contract
28  law, the correct analysis is whether Plaintiffs would have a *claim* independent of the existence of the
    Purchase Agreement.") (emphasis in original).

1    **equitable estoppel** – allows us to decide that a plaintiff who did not agree to arbitrate with a

2    defendant must do so simply because he alleges a conspiracy, and without regard to whether his

3    conduct renders assertion of his right to a judicial forum contrary to equity. " *Goldman*, 173 Cal. App.

4    4th at 233 (finding further that while "federal policy favors arbitration, that policy simply does not

5    apply to parties who have not agreed to arbitrate") (emphasis added, internal quotations and citations

6    omitted).[7]

7        Further, Uber's "concerted misconduct" theory must fail for a second, independent reason.

8    This form of equitable estoppel only applies "when the signatory alleges substantially interdependent

9    and concerted misconduct by the nonsignatory and another signatory and the allegations of

10   interdependent misconduct are **founded in or intimately connected with the obligations of the**

11   **underlying agreement**." *Murphy*, 724 F.3d at 1229 (citing *Kramer*, 705 F.3d at 1128-29) (emphasis

12   added).   Waymo's trade secret claims against Uber, however, are not intimately founded in or

13   intertwined with the obligations of the Levandowski Employment Agreements.  "The *sine qua non* for

14   allowing a nonsignatory to enforce an arbitration clause based on equitable estoppel is that the claims

15   the plaintiff asserts against the nonsignatory are dependent on or inextricably bound up with the

16   contractual obligations of the agreement containing the arbitration clause." *Murphy*, 724 F.3d at 1231

17   (quoting *Goldman*, 173 Cal. App. 4th at 213-14).   But Waymo's trade secret claims are not

18   "dependent on" or "inextricably bound up with" the contractual obligations of the Levandowski

19   Employment Agreements.  Rather, Waymo's claims are based in tort and seek to enforce statutory

20   rights that exist independently of any obligations in the agreements.

21       Specifically, Waymo seeks to enforce statutory rights under California's Uniform Trade Secret

22   Act, the federal Defend Trade Secrets Act, and California's Unfair Competition Law.  These claims

23   "ar[i]se independently of the terms of the agreements containing arbitration provisions." *Kramer*, 705

24   F.3d at 1132.  Mr. Levandowski owed Waymo a duty of confidentiality as a matter of California law,

25   ───────────────

26   [7]  Courts have correctly rejected similar arguments from nonsignatory defendants seeking to compel
     arbitration.  *See, e.g.*, *Burgoon v. Narconon of N. California*, 125 F. Supp. 3d 974, 985, 991-93 (N.D.
     Cal. 2015) (permitting plaintiffs to amend their complaint to drop a breach of contract claim and

27   acknowledging that "[t]o the extent Defendants argue that Plaintiffs are simply amending in order to
     avoid arbitration, that may be true," but nevertheless denying nonsignatory's motion to compel

28   arbitration under an equitable estoppel theory).

1    independent of the specific terms of his employment agreements.  *See*, *e.g.*, *Blackbird Techs., Inc. v.*

2    *Joshi*, No. 5:15-CV-04272-EJD, 2015 WL 5818067, at *4 (N.D. Cal. Oct. 6, 2015) (under California

3    law, an employee owes a duty of loyalty to his or her employer, and "may not use the employer's

4    property or confidential information for the employee's 'own purposes or those of a third party'")

5    (quoting *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 416 (2007)).[8]  In bringing statutory trade

6    secret claims against Uber, therefore, Waymo is not "seek[ing] to enforce or challenge the terms,

7    duties, or obligations of the [Levandowski Employment Agreements]."  *Kramer*, 705 F.3d at 1132.

8    "Here, the claims against [Uber] arise under [a statute] and not out of obligations imposed by the

9    [Levandowski Employment Agreements].  Therefore, the rule that an arbitration agreement can be

10   enforced by a non-signatory when the allegations against the non-signatory are intimately founded in

11   and intertwined with underlying contract obligations does not apply."  *Mohamed v. Uber Techs., Inc.*,

12   848 F.3d 1201, 1215-16 (9th Cir. 2016); *see also Rajagopalan*, 718 F.3d at 847-48 (nonsignatory

13   "may not compel [plaintiff] to arbitrate his claims on the basis of equitable estoppel" where plaintiff's

14   RICO and Washington state law claims were "statutory claims that are separate from the contract

15   itself").  "Again, we are returned to the fundamental point: [Waymo is] not relying in any way on the

16   [Levandowski Arbitration Agreements] to make their claims against [Uber], while at the same [time]

17   avoiding the arbitration clauses of those agreements – and, at bottom, that is the only basis upon which

18   they may be equitably estopped from refusing to arbitrate when they have not agreed to do so."

19   *Goldman*, 173 Cal. App. 4th at 233 (affirming denial of a  motion to compel arbitration under an

20   analysis of the second form of equitable estoppel).[9]

21

22   [8]   *See also Bank of Am., N.A. v. Immel*, No. C 10-02483 CRB, 2010 WL 2380877, at *3 (N.D. Cal.
23   June 11, 2010) ("Defendants also likely had a duty under California law not to use or disclose U.S.
     Trust's confidential information.") (citing *Huong Que*, 150 Cal. App. 4th at 416).  The confidentiality
24   duties owed by Waymo employees to Waymo are further reinforced by training and documents
     provided   to   employees,   such   as   Google's   Code   of   Conduct,   available   at
25   http://abc.xyz/investor/other/google-code-of-conduct.html.

26   [9]   As noted above, Uber does not even attempt to argue that the first, "reliance" form of equitable
     estoppel applies here.  (*See generally* Mot. at 6-9).  Because it was not raised in Uber's Motion, this
27   theory has been waived.  *U.S. v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) ("[A]rguments not raised
     by a party in its opening brief are deemed waived.").  In any event, this form of equitable estoppel
28   cannot apply.  Just as Waymo's trade secret claims against Uber are not "dependent on or intertwined
     with" the Levandowski Employment Agreements, Waymo's claims do not "rely on," and are not

## II.    UBER'S ALTERNATIVE ARGUMENT REGARDING THE SUPPOSEDLY BROAD LANGUAGE OF THE LEVANDOWSKI EMPLOYMENT AGREEMENTS IS IRRELEVANT AND MISCASTS THE AGREEMENTS

Uber raises an alternative argument – that the arbitration provisions are so broad that even though Uber is not a signatory to the Levandowski Employment Agreements, Uber can still somehow enforce these Agreements as if it were.  (Mot. at 10-12.)  But Uber cites no legal basis for this.  Indeed, as noted above, no matter how broad a contract or its arbitration clause, California law allows non-signatories to enforce an arbitration provision in only the limited exceptions noted above – incorporation by reference, assumption, agency, veil-piercing or alter-ego, equitable estoppel, and third party beneficiary.  *Comer*, 436 F.3d at 1101.  But Uber has only asserted that equitable estoppel applies, which has no merit as discussed above.  And Uber has not even tried to argue it is a third-party beneficiary to the Levandowski Employment Agreements.  So no matter how broadly Uber seeks to interpret the Levandowski Employment Agreements to which it is not a party, it has no basis to seek their benefit.[10]  *Nelson v. Anderson*, 72 Cal. App. 4th 111, 129-30 (1999), *as modified on*

_____

"intimately founded in or intertwined with" the Levandowski Employment Agreements.  *See Goldman*, 173 Cal. App. 4th at 231 ("[T]he central core of the standard" is that "the plaintiff's allegations must rely on or depend on the terms of the written agreement[,] . . . not simply on the fact that an agreement exists. . . .  While the document at issue may play a role in the ultimate outcome of this suit, it is not a part of Plaintiffs' causes of action" and therefore "Plaintiffs are not trying to 'have it both ways' by seeking to hold the nonsignatory liable pursuant to duties imposed by the agreement, but at the same time denying applicability of the agreement's arbitration clause[.]") (internal quotation marks and citations omitted); s*ee also Kramer*, 705 F.3d at 1129-32; *Murphy*, 724 F.3d at 1230-31; *Mohamed*, 848 F.3d at 1215-16; *Rajagopalan*, 718 F.3d at 847; *Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851, 866 (N.D. Cal. 2015); *In re Carrier IQ, Inc. Consumer Privacy Litig.*, No. C-12-MD-2330 EMC, 2014 WL 1338474, at *9 (N.D. Cal. Mar. 28, 2014).

[10]   Uber should not be permitted to argue it is a third party beneficiary in its reply having not raised it in its Motion.  *Romm*, 455 F.3d at 997.  Nor could it.  "A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." *Karo v. San Diego Symphony Orchestra Ass'n,* 762 F.2d 819, 821–22 (9th Cir. 1985); *see also  Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1211 (9th Cir. 2000) ("[T]he third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party.").  Although a third party need not be expressly named or identified in a contract, a party must demonstrate "that [it] is a member of a class of persons for whose benefit it was made."  *Spinks v. Equity Residential Briarwood Apartments,* 171 Cal. App. 4th 1004, 1023 (2009) (internal quotation marks and citations omitted).  Here, the language of the arbitration agreements make clear who are the intended beneficiaries of the Levandowski Employment Agreements – Mr. Levandowski and Google (including any Google employee, officer, director, shareholder or benefit plan) – and there is no language in the agreement which provides that future employers, or any company or individual not expressly identified in the Agreements, are intended to be beneficiaries of the Agreements.  The idea that Waymo would intend that its employment contracts be for the benefit of competitors who steal its trade secrets is risible.

*denial of reh'g* (June 14, 1999); *Westlye v. Look Sports, Inc.*, 17 Cal. App. 4th 1715, 1728 (1993) (finding contract inapplicable to nonsignatory defendant that "failed to make any legal argument in the trial court or on appeal that would entitle them to invoke the contract"); *Jones v. Jacobson*, 195 Cal. App. 4th 1, 15, (2011), *as modified* (June 1, 2011) ("[T]he nonsignatory bears the burden to establish [it] is a **party** to the arbitration agreement/provision covering the dispute."). Rather, "[i]n California, '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.'" *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) (quoting *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000)); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972–973 (1997). And "the policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate." *Victoria*, 40 Cal. 3d at 739 (emphasis added); *see also Benasra v. Marciano*, 92 Cal. App. 4th 987, 990 (2001) ("[A] party cannot be compelled to arbitrate a dispute that [it] has not agreed to resolve by arbitration.").

Moreover, while irrelevant given that it has established no rights under the Levandowski Employment Agreements at all, Uber's interpretation of the arbitration provisions is also incorrect. The Levandowski Employment Agreements require that Mr. Levandowski agree to arbitrate disputes "with anyone" at Google (i.e. against Google or individuals or entities within Google).[11]

> **I AGREE THAT** ANY AND ALL CONTROVERSIES, CLAIMS, OR **DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE)**, WHETHER BROUGHT ON AN INDIVIDUAL, GROUP, OR CLASS BASIS, ARISING OUT OF OR RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY **SHALL BE SUBJECT TO BINDING ARBITRATION**[.][12]

After setting out the metes and bounds of Levandowski's agreement to arbitrate his claims, the agreement then sets forth Mr. Levandowski's understanding that Google also agrees to arbitrate any claims for disputes with Mr. Levandowski.

---

[11]   The quoted language is from the Arbitration and Equitable Relief sections of the Levandowski Employment Agreements. (Ex. D ¶ 14, Ex. E ¶ 15 (emphasis added).)

[12]   The arbitration provisions in the Levandowski Employment Agreements also provide a non-exhaustive list of the disputes in which Mr. Levandowski agrees to arbitrate: "DISPUTES WHICH **I AGREE TO ARBITRATE**, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE . . . ." (Ex. D ¶ 14, Ex. E ¶ 15 (emphasis added).)

1   I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO
APPLIES TO **ANY DISPUTES THAT THE COMPANY MAY HAVE WITH**
2   **ME.**

3         The plain reading of the agreements shows Google's agreement to arbitrate its disputes with

4   Mr. Levandowski, and Mr. Levandowski's agreements to arbitrate his disputes with Google and

5   anyone at Google. *Kaselitz v. hiSoft Tech. Int'l, Ltd.*, No. C-12-5760 MMC, 2013 WL 622382, at *4,

6   6–7 (N.D. Cal. Feb. 15, 2013) (construing a similar arbitration provision in an employment agreement

7   to include an affiliated parent company of the employer as a party to the agreement, and permitting the

8   parent company to enforce the arbitration provisions).

9         Nevertheless, Uber incorrectly argues that Google broadened its agreements to arbitrate its

10  disputes with an employee, such that Google's claims against a competitor are subject to arbitration.

11  (Mot. at 11-12.)   Uber's argument ignores governing California law, which states that "[h]owever

12  broad may be the terms of a contract, it extends only to those things concerning which it appears that

13  the parties **intended** to contract." *Victoria*, 40 Cal. 3d at 739 (quoting Cal. Civ. Code § 1648)

14  (emphasis added); *see also* Cal. Civ. Code § 1636.  No language exists in the arbitration provisions, or

15  anywhere else in the Levandowski Employment Agreements, that would evince an intent by Google to

16  arbitrate its disputes against any nonsignatory to the contract, let alone a competitor, as Uber now

17  asserts. *Wiedenbeck v. United Educ. Inst.*, No. SACV1500810CJCJEMX, 2015 WL 12743599, at *3

18  (C.D. Cal. Dec. 15, 2015) (finding that an agreement did not mention the nonsignatory or give any

19  other indication that the nonsignatory was intended to be a party to the agreement); *see also Hess v.*

20  *Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002) ("A putative third party's rights under a contract are

21  predicated upon the contracting parties' intent to benefit it.") (internal quotation and citation omitted).

22        Indeed, Uber does not provide a single case that construes this "with anyone" language as

23  broadly as it asserts, despite that similar arbitration provisions have been litigated in multiple cases in

24  California, and thus appear to be a relatively standard arbitration clause in employment agreements

25  governed by California law.  *See, e.g.*, *Skyware, Inc. v. Abramson*, No. C 11-00545 PSG, 2011 WL

26  2883446, at *1 (N.D. Cal. July 18, 2011); *Gonsalves v. Infosys Techs., Ltd.*, No. C 3:09-04112, 2010

27  WL 3118861, at *2 (N.D. Cal. Aug. 5, 2010); *Pulli v. Pony Int'l, LLC*, 206 Cal. App. 4th 1507, 1512

28  (2012.  The two out-of-state cases Uber cites, neither of which applies California law, had completely

1   unrelated fact patterns and do not support Uber's arguments here.  *See F.D. Imp. & Exp. Corp. v. M/V*

2   *Reefer Sun*, 248 F. Supp. 2d 240, 247-50 (S.D.N.Y. 2002) (finding a presumption of applicability to

3   the nonsignatory plaintiff for Charter Party and Bills of Lading agreements in an admiralty and

4   maritime action, and further holding that the arbitration provisions were also applicable because the

5   plaintiff was asserting claims under the contract in the district court action); *Hall v. Internet Capital*

6   *Grp., Inc.*, 338 F. Supp. 2d 145, 150, 151 n.12 (D. Me. 2004) (holding that nonsignatory shareholders

7   of a company involved in a merger could enforce the arbitration terms of an agreement related to the

8   merger under an estoppel theory and the "circumstances of the case" that demonstrated the agreement

9   "was executed by corporate officers as a result of authority granted to them by the shareholders").

10       Left with no controlling in-state authority and inapposite out-of-state authority, Uber

11   ultimately resorts to making far reaching and conclusory assertions about the applicability of the

12   Levandowski Employment Agreements to Waymo's claims against Uber without citing any authority

13   at all.[13]  (*See* Mot. at 12.)  However, Uber has not met its burden to prove that it is a party to the

14   agreements.  Under the plain language of the Levandowski Employment Agreements and governing

15   California law, Uber cannot enforce the arbitration provisions contained therein.

16  **III.    UBER'S REQUEST TO STAY WAYMO'S PRELIMINARY INJUNCTION**

17  **MOTION SHOULD BE DENIED BECAUSE WAYMO CANNOT BE**
    **COMPELLED TO ARBITRATE ITS REQUEST FOR PRELIMINARY**

18  **INJUNCTIVE RELIEF**

19       The preliminary injunction motion should proceed as scheduled even if the Court compels

20   Waymo to arbitration.  A party compelled to arbitration may nevertheless seek injunctive relief in

21   court pursuant to the arbitration rules set forth in California Code of Civil Procedure 1280 through

22   1294.2 (the "Rules").  Specifically, the Rules prescribe that a party to an arbitration agreement may

23   file in court "an application for a provisional remedy in connection with an arbitrable controversy, but

24   only upon the ground that the award to which the applicant may be entitled may be rendered

25   ―――――――――――――――

26   [13]  Uber's unsupported assertions are telling for the additional reason that they double as a means to
     conceal a tacit admission by Uber concerning the actual scope of the phrase "with anyone" as used in

27   the arbitration provisions.  (Mot. at 12 ("While **the examples in the parenthetical following the**
     **phrase 'with anyone' are associated with Waymo**, the provision is not limited to those examples;

28   the provision extends to 'anyone.'") (emphasis added and removed).)

1    ineffectual without provisional relief."  Cal. Code Civ. Proc. § 1281.8(b); *see also* Cal. Code Civ.

2    Proc. § 1281.8(a)(3) (provisional remedies include preliminary injunctions); *Fitz v. NCR Corp.*, 118

3    Cal. App. 4th 702, 726 (2004) (finding that injunctive relief for trade secret, noncompetition and

4    intellectual property disputes was available under California law despite arbitration provision); *Stirlen*

5    *v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1537 (1997), *as modified* (Feb. 10, 1997) ("The forms of

6    emergency judicial relief Supercuts asserts it must have **are** available to a party compelled to arbitrate

7    a dispute.").  The Ninth Circuit has also held that compelling arbitration does not strip the court of

8    authority to grant provisional relief pending the outcome of the arbitration, where such relief is

9    necessary to preserve the meaningfulness of arbitration.  *Toyo Tire Holdings of Americas Inc. v.*

10   *Continental Tire North Amer., Inc.,* 609 F.3d 975, 981 (9th Cir. 2010) ("[A] district court may issue

11   interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo

12   and the meaningfulness of the arbitration process—provided, of course, that the requirements for

13   granting injunctive relief are otherwise satisfied."); *PMS Distributing Co., Inc. v. Huber & Suhner,*

14   *A.G.,* 863 F.2d 639, 642 (9th Cir. 1988) (finding the same for the provisional relief of a writ of

15   possession).

16        The Rules are explicitly incorporated into the Levandowski Employment Agreements

17   arbitration provisions, which further acknowledge the right to injunctive relief by explicitly stating

18   that "nothing in this agreement or in this provision is intended to waive the provisional relief remedies

19   available under the Rules."  (Exs. D ¶ 14, E ¶ 15.)  Put another way, the arbitration provisions permit

20   Waymo to seek provisional remedies, such as the preliminary injunction Waymo seeks here,

21   regardless of whether or not Waymo's trade secret claims against Uber are otherwise arbitrable.  Thus,

22   Ninth Circuit jurisprudence and California law governing the Levandowski Employment Agreements

23   together require that the Court proceed with Waymo's motion for a preliminary injunction, even if the

24   Court compels Waymo to arbitration.  *Davenport v. Blue Cross of California*, 52 Cal. App. 4th 435,

25   451 (1997).

26        Moreover, Waymo's motion for a preliminary injunction encompasses not only the trade secret

27   claims that Uber seeks to have stayed pending arbitration, but also claims related to Uber's

28   infringement of Waymo's patents.  (Dkt. 25-4 at 16-20; 22-23; 25.)  Uber admits that the trade secret

claims it wishes to arbitrate "do not predominate over the patent claims" and that "there is no economy or efficiency to be realized from freezing the patent claims pending resolution of the arbitrable claims."[14] (Mot. at 13, 14.) Therefore, Uber's request that the Court exercise its discretion to stay Waymo's motion for a preliminary injunction should be denied. *Congdon v. Uber Techs., Inc.*, No. 16-CV-02499-YGR, 2016 WL 7157854, at *5 (N.D. Cal. Dec. 8, 2016) ("It is, however, within a district court's discretion whether to stay, for 'considerations of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration."); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) (finding that the decision whether or not to stay non-arbitrable claims is "one left to the district court (or to the state trial court under applicable state procedural rules) as a matter of its discretion to control its docket").

Thus, for the reasons set forth above, the preliminary injunction hearing should proceed even if the Court determines that Waymo's trade secret claims against Uber are arbitrable.

## IV.   OTHER EQUITABLE CONSIDERATIONS STRONGLY FAVOR DENYING UBER'S REQUESTED RELIEF

Equity strongly favors denying Uber's motion.  Waymo addresses these issues, as well as specific questions raised in the Court's March 30 and April 9 Orders (Dkts. 130 and 194), below.

How far along the arbitrations brought by Google against Mr. Levandowski have progressed; and when the arbitration will be concluded by comparison to the proceedings in this case:  The Levandowski Arbitrations, despite the fact they were filed in October of 2016, are far less advanced than this litigation.  Due to the need to formally consolidate the two demands and Mr. Levandowski's prior opposition to early consolidation, the arbitrations were not formally commenced until January 20, 2017 and the first status conference did not occur until March 2017.  Discovery in the Levandowski Arbitrations is not scheduled to begin until today, April 10 – and on April 3, Mr. Levandowski announced that, despite this previously agreed upon exchange date, he may not be producing any documents, either today, this month, or ever; and today Mr. Levandowski's counsel informed Google that Mr. Levandowski will not be producing any documents in the in the

---

[14]   Uber also concedes, as it must given these admissions, that "resolution of the remaining claims should proceed in this forum, on course."  (Mot. at 14.)

Levandowski Arbitrations.  Contrary to the impression Uber tries to make in its Motion, the existence of those unrelated arbitrations in no way presents efficiencies or equities to compelling Waymo's trade secret claims against Uber to arbitration.  Because Uber did not name Mr. Levandowski as a party in the Uber Arbitration, there is not even a commonality of parties across the Levandowski Arbitrations and either this litigation or the Uber Arbitration.

The merits hearing in the Levandowski Arbitrations is not scheduled to begin until April 30, **2018**.  Any suggestion by Uber that an arbitration hearing may occur in 2017 is flatly contradicted by Levandowski's and Morrison & Foerster's statements and positions in the Levandowski Arbitrations to date.  When Google originally proposed both October and December 2017 arbitration hearing dates for its demands, Levandowski and Morrison & Foerster firmly rejected these dates, claiming that any arbitration hearing date in 2017 was not possible.  (Meny Decl. ¶ 10.)

In contrast, expedited discovery has already commenced in this case and is ongoing, a preliminary injunction hearing is scheduled for May 3, and trial is set for this October.  The case schedule reflects the urgency of Waymo's claims and the threat of irreparable harm from Uber's ongoing use of Waymo's trade secrets and infringement of Waymo's patent rights.   Uber waited to serve its demand in the Uber Arbitration until March 31 – over two weeks after telling the Court it believed Waymo's trade secret claims were arbitrable, and over five weeks after Waymo filed the Complaint.

Who the arbitrators are; and their relevant expertise:  The Levandowski Arbitrations will be heard by the Hon. Steven A. Brick (Ret.), Hon. Edward A. Panelli (Ret.), and Hon. James Ware (Ret.).[15]  (Meny Decl. ¶ 13.)  It is extremely unlikely that these three busy individuals would be able to schedule a hearing on Waymo's trade secret claims this year, and when Google suggested an October 2017 hearing date at the first arbitration case management conference, the arbitrators noted that Google's request was aggressive in an arbitration context  (*Id.*)

---

[15]   The arbitrators' biographies can be found here:   https://www.jamsadr.com/panelli/; https://www.jamsadr.com/ware/; and https://www.jamsadr.com/brick/.

WAYMO'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

1    The extent to which (and when) the arbitrations brought by Google against Mr. Levandowski

2    will determine which of the 14,000-plus allegedly downloaded files qualify as trade secrets:  Google

3    has not brought any trade secret misappropriation claims against Mr. Levandowski in the

4    Levandowski Arbitrations.  So the arbitrators will not determine whether any of the 14,000-plus files

5    downloaded by Mr. Levandowski qualify as trade secrets.

6         Google's breach of contract claims against Mr. Levandowski allege breaches of the non-

7    solicitation, non-competition, and confidentiality provisions of his contracts.  The allegations for

8    breach of confidentiality provisions relate to Mr. Levandowski's use of confidential salary and

9    compensation information to make targeted and individualized job offers in connection with his

10   solicitation of Google employees.  These allegations do not involve Mr. Levandowski's downloads

11   from the Waymo design server, or the subsequent acquisition and use of the trade secrets contained in

12   those downloads by Uber.

13        If the arbitration will resolve that issue, whether, after deciding the issue of provisional relief,

14   this Court should stay this case as to the trade claims until those claims are resolved in the

15   Levandowski arbitration.  If the arbitration will not reach that issue, please explain why:  As explained

16   above, the Levandowski Arbitrations will not reach that issue because Google has not asserted any

17   trade secret claims, or any allegations relating to the 14,000-plus downloaded files, in the

18   Levandowski Arbitrations.  Therefore, the Court should decide not only the issue of provisional relief,

19   but also all further issues relating to Waymo's trade secret claims.

20        The extent to which depositions and document discovery will be available on an expedited

21   basis:  There are no established JAMS procedures for expedited discovery, nor has Uber offered any.

22   And because Uber has not made Mr. Levandowski a party to the Uber Arbitration, there is no

23   possibility of more (let alone faster) discovery in arbitration than in litigation.  In fact, as is well

24   recognized, "the discovery allowed in arbitration is more limited than in the federal courts." *Miyasaki*

25   *v. Real Mex Restaurants, Inc.*, No. C 05-5331 VRW, 2006 WL 2385229, at *7 (N.D. Cal. Aug. 17,

26   2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31  (1991)).  Already, in the

27   litigation, Uber has resisted discovery – even in the face of a Court order.  In arbitration, Waymo

28

1   would be severely prejudiced in its ability to get the discovery it needs to determine the full scope of

2   Uber's acquisition and use of Waymo's trade secrets.

3       The Levandowski Arbitrations – although unrelated – are instructive of how Uber will likely

4   approach expedited discovery in an arbitration of Waymo's trade secret claims, insofar as the same

5   counsel represents Mr. Levandowski in the Levandowski Arbitrations as represents Uber in this

6   action.  Google initiated those arbitrations in October 2016, but the first case management conference

7   did not occur until March 10 – almost four months later.  (Meny Decl. ¶¶ 8-9.)  Mr. Levandowski has

8   also refused to produce any documents.  (Meny Decl. ¶ 12.)  And, although the arbitrators have

9   allowed slightly more discovery (although less than in court), Respondents "initially opposed allowing

10  either side to serve **any** Interrogatories or Requests for Admission, and most recently argued that each

11  side be limited to just ten Requests for Production, two non-party document subpoenas, five

12  depositions for non-parties or party affiliates (i.e. employees of Google and Uber), and that the

13  depositions of Mr. Levandowski and [the other Respondent] be limited to a combined ten hours."

14  (Meny Decl. ¶ 14 (emphasis added).)

15      <u>Secrecy versus transparency:</u>  Last, but by no means least, equities in this case strongly favor

16  litigating Waymo's trade secret claims in a public forum.  This Circuit has " a strong presumption in

17  favor of access to court records", and "a federal common law right to inspect and copy public records

18  and documents" given the "public policy reasons behind a presumption of access to judicial

19  documents (judicial accountability, education about the judicial process etc.)[.]" *Foltz v. State Farm*

20  *Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134-35 (9th Cir. 2003) (internal quotation marks and citations

21  omitted).  Uber seeks to move proceedings to arbitration, not out of considerations of equity, but in

22  order to conceal from the public any further revelations of its own (and its executives') misconduct.

23  Counsel for Uber conceded as much at the March 29 hearing (that Uber had initially requested be

24  sealed). (Dkt. 131 at 15:11-22.)

25      **MR. GONZALEZ**:  So I will tell you, your Honor.  First, this is related, in part, to
    the petition to compel arbitration for this reason: If the Court grants our petition, then
26  it means that this trade secrets issue goes into arbitration.  And if [Mr. Levandowski]
    testifies there, it's – it's in confidence.  It's a big difference.

27      **THE COURT**:  Ridiculous.  It's not in confidence.  The United States Attorney can
28  go subpoena information all day long.

**MR. GONZALEZ**:   Well, Your Honor, at least it's not in the public where it's going to be on the front page of *The New York Times* the next day.

But as the intense media coverage in this case has shown, the allegations Waymo has made against Uber and its $680 million acquisition of Otto concern matters of considerable importance and public interest.  Uber's anxiety that public disclosure of its egregious misconduct in stealing Waymo's trade secrets will harm its reputation is not a factor that the Court should take into account in considering the equities of Uber's Motion; if anything, it strongly favors continued public access.  *See*, *e.g.*, *U.S. ex rel. McCoy v. California Med. Review, Inc.*, 133 F.R.D. 143, 148 (N.D. Cal. 1990) ("Defendants' argument with regard to reputation is equally misguided, as numerous courts have ruled that harm to a party's reputation is not a sufficient justification for the denial of public access to judicial proceedings. . . .  Moreover, this action, arising from Congress' efforts to combat fraudulent claims for public funds, clearly is of great public interest.  As such, the argument for public access to these judicial proceedings is stronger still.") (internal quotation marks and citations omitted).

## **CONCLUSION**

For the foregoing reasons, Waymo respectfully requests that the Court deny Uber's motion.

DATED:  April 10, 2017                QUINN EMANUEL URQUHART & SULLIVAN, LLP


By   */s/ Charles K. Verhoeven*
        Charles K. Verhoeven
        Attorneys for Plaintiff Waymo LLC