# EXHIBIT D

## Exhibit B
## GOOGLE INC.

### AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT

As a condition of my employment with Google Inc., its subsidiaries, affiliates, successors or assigns (together the "Company"), and in consideration of my receipt of confidential information, my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following:

1. **At-Will Employment.** I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS IN WRITING AND SIGNED BY THE CHIEF EXECUTIVE OFFICER OF THE COMPANY. ACCORDINGLY, I ACKNOWLEDGE THAT MY EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT MY OPTION OR AT THE OPTION OF THE COMPANY, WITH OR WITHOUT NOTICE.

2. **Confidential Information.**

(a) *Company Information.* I understand that, as a result of my employment with the Company, I will obtain extensive and valuable Confidential Information belonging to the Company. I agree at all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Chief Executive Officer or the Board of Directors of the Company, any Company Confidential Information, except under a non-disclosure agreement duly authorized and executed by the Company. I understand that my unauthorized use or disclosure of Company Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company. I understand that "Company Confidential Information" means any Company non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or know-how, including, but not limited to, research, product plans, or other information regarding Company's products or services and their marketing, the identity of the Company's customers (including, but not limited to, customer lists and the identity of customers of the Company on whom I called or with whom I became acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information. I further understand that Company Confidential Information does not include any of the foregoing items which have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

(b) *Former Employer Information.* I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity, and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(c) *Third Party Information.* I recognize that the Company may have received and in the future may receive from third parties associated with the Company, e.g., the Company's customers, suppliers, licensors, licensees, partners, or collaborators, their confidential or proprietary information ("Associated Third Party Confidential Information"). By way of example, Associated Third Party Confidential Information may include the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties. I agree at

all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use or to disclose to any person, firm or corporation any Associated Third Party Confidential Information, except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information during my employment will lead to disciplinary action, up to and including immediate termination and legal action by the Company.

(d) *User Data.* User Data consists of information directly or indirectly collected by Google from users of its services. User Data includes individual log files related to any user session or use of Google services or log files in the aggregate. User Data also includes personally identifiable information, which is information that can be directly associated with a specific person or entity, such as a name, address, telephone number, e-mail address, or information about activities that can be directly linked to a user, such as an IP address or cookie information. I agree to treat User Data as Company Confidential Information under this Agreement and to access, use and disclose User Data only as authorized by and in accordance with this Agreement and Company policies.

3. **Inventions**

(a) *Inventions Retained and Licensed.* I have attached hereto as *Exhibit A*, a list describing all inventions, discoveries, original works of authorship, developments, improvements, and trade secrets, which were conceived in whole or in part by me prior to my employment with the Company to which I have any right, title or interest, which are subject to California Labor Code Section 2870 attached hereto as *Exhibit B*, and which relate to the Company's proposed business, products, or research and development (collectively referred to as "Prior Inventions"); which are not assigned to the Company hereunder, or, if no such list is attached, I represent and warrant that there are no such Prior Inventions. Furthermore, I represent and warrant that none of the Prior Inventions listed on *Exhibit A* of this Agreement will materially affect my ability to perform my obligations under this Agreement. If, in the course of my employment with the Company, I incorporate any Prior Invention into or use any Prior Invention in connection with any product, process, service, technology or other work by or on behalf of the Company, I hereby grant to the Company a nonexclusive, royalty-free, fully paid, irrevocable, perpetual, worldwide license, with the right to grant and authorize sublicenses, to make, have made, modify, use, import, offer for sale, and sell such Prior Invention as part of or in connection with such product, process, service, technology or other work and to practice any method related thereto.

(b) *Assignment of Inventions.* I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registerable under patent, copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time that I am in the employ of the Company (collectively referred to as "Inventions"), except as provided in Section 3(e) and Section 3(f) below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope and of and during the period of my employment with the Company and which are protectable by copyright are "works made for hire", as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any Inventions developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions.

(c) *Maintenance of Records.* I agree to keep and maintain adequate and current accurate and authentic written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Company. The records are and will be available to and remain the sole property of the Company at all times.

(d) *Patent and Copyright Registrations.* I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to

the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths or affirmations, assignments and all other instruments which the Company shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any rights relating thereto, and testifying in a suit or other proceeding relating to such Inventions. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature with respect to any Inventions, including, without limitation, to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering such Inventions, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any papers, oaths and to do all other lawfully permitted acts with respect to such Inventions with the same legal force and effect as if executed by me.

(e) *Exception to Assignments.* Except as provided in Section 3(f), I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as Exhibit B). I will advise the Company promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and not otherwise disclosed on Exhibit A.

(f) *Project Inventions.* I understand that during my employment with the Company, I will be a member of the Project Chauffeur Development Team (the "Development Team"). I hereby acknowledge and agree that for so long as I am a member of the Development Team, any and all Inventions (including the Technology (as defined in my amended offer letter by and between the Company and me (the "Amended Offer Letter"))), arising from my work at, on behalf of, or within the scope of the Project (as defined in the Amended Offer Letter) and any and all copyrights, patents, mask work rights or other intellectual property rights or technology related thereto in any and all countries (collectively, the "Project Inventions") will be exclusively owned by Google Auto LLC, a wholly owned subsidiary of Google Inc., or such other entity designated by Google from time to time (the "Project Entity"). I hereby agree to assign any and all such right, title and interest in and to such Project Inventions solely to Project Entity. Furthermore, I agree to assist the Project Entity, or its designee, at the Project Entity's expense, in every proper way to secure the Project Entity's rights in the Project Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Project Entity of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths or affirmations, assignments and all other instruments which the Project Entity shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights and in order to assign and convey to the Project Entity, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any rights relating thereto, and testifying in a suit or other proceeding relating to such Inventions. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Project Entity is unable because of my mental or physical incapacity or for any other reason to secure my signature with respect to any Project Inventions, including, without limitation, to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering such Project Inventions, then I hereby irrevocably designate and appoint the Project Entity and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any papers, oaths and to do all other lawfully permitted acts with respect to such Inventions with the same legal force and effect as if executed by me. I agree to keep and maintain adequate and current accurate and authentic written records of all Project Inventions made by me (solely or jointly with others) for so long as I am a member of the Development Team. The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Project Entity. The records are and will be available to and remain the sole property of the Project Entity at all times.

4. **Conflicting Employment**

(a) *Current Obligations.* I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, or consulting directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities, including, but not limited to, employment outside of the Company, membership on Boards of Directors or Advisory

Boards other than the Company's, personal investments or establishing, maintaining or servicing business relationships with family or friends that conflict with my obligations to the Company.

(b) *Prior Relationships*. Without limiting Section 4(a), I represent that I have no other agreements, relationships or commitments to any other person or entity that conflict with my obligations to the Company under this Agreement or my ability to become employed and perform the services for which I am being hired by the Company. I further agree that if I have signed a confidentiality agreement or similar type of agreement with any former employer or other entity, I will comply with the terms of any such agreement to the extent that its terms are lawful under applicable law. I represent and warrant that after undertaking a careful search (including searches of my computers, cell phones, electronic devices and documents), I have returned all property and confidential information belonging to all prior employers, and that failure to do so may result in my termination. Moreover, in the event that the Company or any of its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor or successor corporations, or assigns is sued based on any obligation or agreement to which I am a party or am bound (other that my agreements with the Company), I agree to fully indemnify the Company, its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor and successor corporations, and assigns for all verdicts, judgments, settlements, and other losses incurred by the Company (the indemnitee), as well as any reasonable attorneys' fees and costs if the plaintiff is the prevailing party in such an action, in the event that the Company is the subject of any legal action based on factual allegations that, if true, would conflict with my obligations under this Agreement.

5. **Returning Company Documents** Upon separation from employment with the Company or on demand by the Company during my employment, I will immediately deliver to the Company, and will not keep in my possession, recreate or deliver to anyone else, any and all Company property, including, but not limited to, Confidential Information, User Data, Associated Third Party Confidential Information, as well as all devices and equipment belonging to the Company (including computers, handheld electronic devices, telephone equipment, and other electronic devices), Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, photographs, charts, all documents and property, and reproductions of any of the aforementioned items that were developed by me pursuant to my employment with the Company, obtained by me in connection with my employment with the Company, or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to Section 3(c) and Section 3(f). I also consent to an exit interview to confirm my compliance with this Section 5.

6. **Termination Certification**. Upon separation from employment with the Company, I agree to immediately sign and deliver to the Company the "Termination Certification" attached hereto as Exhibit C. I also agree to keep the Company advised of my home and business address for a period of one (1) year after termination of my employment with the Company, so that the Company can contact me regarding my continuing obligations provided by this Agreement.

7. **Notification of New Employer**. In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my obligations under this Agreement.

8. **Solicitation of Employees**. I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

9. **Export Statement of Assurance**. I recognize that, in the course of my employment, the Company may release to me items (including, but not limited to, software, technology, or systems, equipment and components) subject to the Export Administration Regulations ("EAR") or the International Traffic in Arms Regulations ("ITAR"). I herby certify that I will not export, re-export or release these items in violation of the EAR or ITAR. In order to comply with this certification, I will not disclose/export/re-export these items to any person other than the persons in my working group as required in the performance of the job responsibilities assigned to me by the Company. I understand that if I have any question regarding whether a given disclosure/export/re-export is or would be contrary to this certification, I should immediately contact the Legal Services Department before taking any actions.

10. **Code of Conduct Acknowledgement.** I acknowledge that I have read the Company's Code of Conduct, which is available on the Company's public website and can be found by clicking "About Google" and looking on the "Investor Relations" page of the site, specifically at http://investor.google.com/corporate/code-of-conduct.html. I agree to adhere to the terms of the Code of Conduct and to report any violations of the Code.

11. **Representations.** I agree to execute any proper oath or affirmation or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all terms of the Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I hereby represent and warrant that I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

12. **Audit.** I acknowledge that I have no reasonable expectation of privacy in any computer, technology system, email, handheld device, telephone, or documents that are used to conduct the business of the Company. As such, the Company has the right to audit and search all such items and systems, without further notice to me, to ensure that the Company is licensed to use the software on the Company's devices in compliance with the Company's software licensing policies, to ensure compliance with the Company's policies, and for any other business-related purposes in the Company's sole discretion. I understand that I am not permitted to add any unlicensed, unauthorized or non-compliant applications to the Company's technology systems and that I shall refrain from copying unlicensed software onto the Company's technology systems or using non-licensed software or web sites. I understand that it is my responsibility to comply with the Company's policies governing use of the Company's documents and the Internet, email, telephone and technology systems to which I will have access in connection with my employment.

13. **Permission for Use of Images.** I understand that during my employment with Google, agents of the company may take film, digital or other images of me, for subsequent use in non-commercial materials or collateral, including, but not limited to, the Company website (external and internal), annual reports, press day materials, internal presentations, analyst presentations, company, lobby or reception area stagings or productions, etc., without my prior consent, approval or review. My name may or may not be included along with my image. I hereby grant advance permission for such use of my image(s) by the Company, both during and after my employment, and I understand that I will not receive any royalties or other compensation for this use and I further agree to release and hold harmless any agent, employee, officer, director or other individual affiliated or working on behalf of the Company with respect to such use of my image(s).

14. **Arbitration and Equitable Relief**

(a) *Arbitration.* IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES, AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE), WHETHER BROUGHT ON AN INDIVIDUAL, GROUP, OR CLASS BASIS, ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1280 THROUGH 1294.2, INCLUDING SECTION 1283.05 (THE "RULES") AND PURSUANT TO CALIFORNIA LAW. DISPUTES WHICH I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE SARBANES-OXLEY ACT, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, THE FAMILY AND MEDICAL LEAVE ACT, THE FAIR LABOR STANDARDS ACT, THE CALIFORNIA FAMILY

RIGHTS ACT, THE CALIFORNIA LABOR CODE, CLAIMS OF HARASSMENT, DISCRIMINATION, WRONGFUL TERMINATION AND ANY OTHER CONTRACTUAL, TORT OR STATUTORY CLAIMS UNDER FEDERAL, CALIFORNIA AND LOCAL LAWS, TO THE EXTENT ALLOWED BY LAW. I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

(b) *Procedure.* I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES"). I AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, MOTIONS TO DISMISS OR TO STRIKE, DEMURRERS, AND MOTIONS FOR CLASS CERTIFICATION, PRIOR TO ANY ARBITRATION HEARING. I ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES AVAILABLE UNDER APPLICABLE LAW, INJUNCTIVE RELIEF, AND THAT THE ARBITRATOR SHALL AWARD ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY, EXCEPT AS PROHIBITED BY LAW. I UNDERSTAND THAT THE COMPANY WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS EXCEPT THAT I SHALL PAY ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION THAT I INITIATE, BUT ONLY SO MUCH OF THE FILING FEES AS I WOULD HAVE INSTEAD PAID HAD I FILED A COMPLAINT IN A COURT OF LAW. I AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH CALIFORNIA LAW, INCLUDING THE CALIFORNIA CODE OF CIVIL PROCEDURE, AND THAT THE ARBITRATOR SHALL APPLY SUBSTANTIVE AND PROCEDURAL CALIFORNIA LAW TO ANY DISPUTE OR CLAIM, WITHOUT REFERENCE TO RULES OF CONFLICT OF LAW. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH CALIFORNIA LAW, CALIFORNIA LAW SHALL TAKE PRECEDENCE. I AGREE THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING. I AGREE THAT ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN SANTA CLARA COUNTY, CALIFORNIA.

(c) *Remedy.* EXCEPT AS PROVIDED BY THE RULES AND THIS AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE BETWEEN ME AND THE COMPANY. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION. NOTWITHSTANDING, THE ARBITRATOR WILL NOT HAVE THE AUTHORITY TO DISREGARD OR REFUSE TO ENFORCE ANY LAWFUL COMPANY POLICY, AND THE ARBITRATOR SHALL NOT ORDER OR REQUIRE THE COMPANY TO ADOPT A POLICY NOT OTHERWISE REQUIRED BY LAW. NOTHING IN THIS AGREEMENT OR IN THIS PROVISION IS INTENDED TO WAIVE THE PROVISIONAL RELIEF REMEDIES AVAILABLE UNDER THE RULES.

(d) *Administrative Relief.* I UNDERSTAND THAT THIS AGREEMENT DOES NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE OR FEDERAL ADMINISTRATIVE BODY SUCH AS THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, OR THE WORKERS' COMPENSATION BOARD. THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM.

(e) *Voluntary Nature of Agreement.* I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL.* FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

(f) *Arbitration Clause, Governing Law.* THIS ARBITRATION CLAUSE IS ENTERED PURSUANT TO, AND SHALL BE GOVERNED BY, THE FEDERAL ARBITRATION ACT (9 U.S.C. SECTION 1, ET SEQ.),

BUT IN ALL OTHER RESPECTS THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA.

### 15. General Provisions

(a) *Governing law; Consent to Personal Jurisdiction.* Except as set forth elsewhere in this Agreement, this Agreement will be governed by the laws of the State of California without giving effect to any choice of law rules or principles that may result in the application of the laws of any jurisdiction other than California. To the extent that any lawsuit is permitted under this Agreement, I hereby expressly consent to the personal jurisdiction of the state and federal courts located in California for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

(b) *Entire Agreement.* This Agreement, together with the Exhibits herein, and my offer letter from the Company set forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions or representations between us including, but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the Chief Executive Officer of the Company and me. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

*(the remainder of this page is intentionally blank)*

### Exhibit A

### GOOGLE INC.

#### LIST OF PRIOR INVENTIONS
#### AND ORIGINAL WORKS OF AUTHORSHIP

Do you have inventions or improvements? Check a box and sign below.

☐ No inventions or improvements

☐ Yes – they are listed below

☐ Additional sheets attached

| Title | Date | Identifying Number or Brief Description |
|-------|------|------------------------------------------|
|       |      |                                          |

Signature of Employee: *[signature]*

Print Name of Employee: Anthony LeVANDowski

Date: 2/24/12

(c) <u>Severability</u>. If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

(d) <u>Successors and Assigns</u>. This Agreement will be binding upon my heirs, executors, assigns, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

(e) <u>Waiver</u>. Waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

(f) <u>Survivorship</u>. The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.

Date: ___

Signature

Anthony Levandowski

Name of Employee (typed or printed)


Date: ___ 1/1/12

Signature

SEBASTIAN THRUN

Name of Company Representative (typed or printed)

## EXHIBIT B

### GOOGLE INC.

#### CALIFORNIA LABOR CODE SECTION 2870
#### INVENTION ON OWN TIME-EXEMPTION FROM AGREEMENTS

---

"(a)  Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

   (1)   Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer.

   (2)   Result from any work performed by the employee for the employer.

(b)  To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

### EXHIBIT C

### GOOGLE INC.

### TERMINATION CERTIFICATION

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to Google Inc., its subsidiaries, affiliates, successors or assigns (together, the "Company").

I further certify that I have complied with all the terms of the Company's At Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

I have informed the Company in the event I am subject to any litigation holds or similar request for record retention.

I further agree that, in compliance with the At Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement, I will adhere to my obligations to the Company contained in Section 2 (Confidential Information), Section 3 (Inventions), Section 5 (Return of Company Documents) and Section 8 (Solicitation of Employees).

After leaving the Company's employment, I will be employed by _____ in the position of:

_____. I am / am not (circle one) subject to a litigation hold/request for record retention.

_____
Signature of Employee

_____
Print Name

_____
Date

_____
Address for Notifications