MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

April 11, 2017

Writer's Direct Contact
+1 (415) 268.7020
AGonzalez@mofo.com

Honorable William Alsup
U.S. District Court
Northern District of California
Courtroom 8 - 19th Floor
450 Golden Gate Avenue
San Francisco, CA  94102

Re:   *Waymo LLC v. Uber Technologies, Inc. et al.*,
      Case No. 3:17-cv-00939

Dear Judge Alsup:

Defendants Uber Technologies, Inc., Ottomotto LLC, and Otto Trucking LLC (collectively "Uber") submit this letter requesting relief related to this Court's April 6 Order After Hearing Re Discovery Letter Dated April 3, 2017.  (ECF No. 163 ("Order").)

The Order directs that by Friday at 5 p.m. Uber must:  1) use Waymo's 15 additional search terms and the 50 priority filenames to search all previously-searched custodians; 2) use Waymo's 15 search terms and defendants' prior search terms to search ten additional custodians of Waymo's choosing, 3) use Waymo's 15 additional search terms and defendants' prior search terms to search the computers and custodial data of any custodians that have anything to do with LiDAR technology (a total of 45 custodians), and 4) search all of defendants' servers with LiDAR information for the 14,000 filenames as well as the search terms.

Uber will complete the first requirement by the Friday deadline.  It produced hits for the 50 priority filenames on March 31.  It has searched emails and attachments from the initial ten custodians, reviewed 69,864, and found that none are responsive.  Uber extracted 1,951,895 other (non-email) documents from these ten custodians' data and made 51,079 additional documents available for review yesterday.  More documents will follow.  Uber is on track to complete review of those additional documents and produce responsive documents, if any, by the Friday deadline.

Uber cannot complete the second requirement, for the simple reason that Uber asked Waymo for its list of ten priority custodians on April 6, (Exhibit 1), and Waymo never responded.

sf-3757481

MORRISON | FOERSTER

Honorable William Alsup
April 11, 2017
Page Two

As to the third requirement, Uber is continuing to search the data of additional custodians, but the problems extracting documents for Uber custodians using Google's G Suite applications, coupled with Waymo's broad search terms, make it impossible to comply with the Friday deadline. Based on the number of documents identified from the initial ten custodians, the total number of documents for the remaining 45 custodians could be in the millions.

As to the fourth requirement, Uber's servers contain over 106.5 terabytes of data. (Exhibit 2, Faulkner Decl., ¶ 5.) This is the equivalent of over 10.9 billion pages of email data. (*Id.*) This amount of data cannot be collected, processed, and reviewed by the Friday deadline.

Modification of a discovery order requires a showing of good cause. *See, e.g., Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *Mitchell v. Jones*, No. 1:11-cv-00099-LJO-GSA-PC, 2015 U.S. Dist. LEXIS 79275, at *3-4 (E.D. Cal. June 18, 2015). To establish good cause, the party seeking the modification of an order must generally show that even with the exercise of due diligence, they cannot meet the requirement of the order. *See Johnson*, 975 F.2d at 609. Uber has shown good cause for the relief it seeks here.

**Problematic Collection of Google Drive Documents and Waymo's Broad Search Terms**

Uber relies on cloud storage and remote hosted computing environments, including the Google G Suite, for much of its server infrastructure. (Exhibit 2 ¶¶ 7-9.) Accordingly, the custodians at issue in this case have documents from applications like Gmail, Google Calendar, Google Docs, and Google Drive. (*Id.*) Uber's digital forensic vendor Stroz Friedberg has had particular challenges with the collection of data from Google Drive. (*Id.*) Because Google Drive's in-application searching capabilities cannot handle the searches necessary here, Stroz must download the data from Drive for each custodian. (*Id.* at ¶ 8.)

That has resulted in the collection and processing of an enormous amount of data. For example, the volume of Google Drive data for the first 10 custodians was over 600 gigabytes. (*Id.*) Stroz estimates that it could take one to two weeks to search and collect data from Drive for the remaining custodians, even if Google's tech support is able to help Uber find an in-application solution. (*Id.*) If the in-application searching methods continue to fail and Stroz needs to download data for all in-scope custodians, this process could take as long as a month. (*Id.*)

These collection problems are compounded by Waymo's unreasonably broad search terms, such as "Fuji." (Exhibit 3.) "Fuji" is the code name of Uber ATG's in-house mid-range LiDAR solution. (ECF No. 177 at 5:5-7.) With terms that are completely untethered from the documents they should be seeking to identify, it is unsurprising that tens of thousands of search term hits have been reviewed and none are responsive.

MORRISON | FOERSTER

Honorable William Alsup
April 11, 2017
Page Three

Uber has called and emailed Waymo's counsel to discuss narrowing the search terms (*e.g.*, Exhibit 4) and to use a better-tailored agreed on method for searching (*e.g.*, Exhibit 5), but Waymo has ignored Uber's request.

**Participation by Forensic Vendors to More Efficiently Identify Responsive Documents**

While working diligently on the collection, processing, and review of search term hits, Uber has also repeatedly requested that the parties allow their forensic vendors to help develop a plan and employ tools to search Uber's systems more effectively. To date, Waymo has refused any such efforts.

To initiate that discussion, Uber requested that Stroz be allowed to inspect the 14,000 files with certain tools in order to help improve Uber's searching. (*See* Exhibit 6.) Among other things, the tools would allow Uber to see file headers, review the contents at the disk-level, and generate fuzzy hashes. (*Id.*) Waymo repeatedly rejected that request, including when Uber's analyst from Stroz went to inspect the files on April 7. (*Id.*) On Saturday, April 8, Waymo finally relented and Stroz spent a day using forensic tools to analyze the 14,000 files. (*Id.*) Stroz was able to create certain lists—including fuzzy and block hash lists—which were provided to Waymo's counsel. (*Id.*) These fuzzy and block hash lists will allow Uber's forensics team to search for files that are like the ones allegedly stolen more efficiently and accurately. (*Id.*)

In conjunction with Stroz's inspection and to leverage its findings, Uber requested that both parties' forensic vendors participate in a meet and confer regarding how to more efficiently search Uber's systems. Dealing with challenging e-discovery tasks and employing sophisticated searching tools is the precise purview of forensic vendors. The volume of false hits so far, and the time projection to extract further documents, confirm that the current method of searching is unworkable. Continuing with Waymo's overbroad search terms is not the best way to accomplish the mutual goal here: to locate and return Waymo material, if any. Accordingly, Uber requests that the Court relieve Uber of the Friday deadline and order the parties' forensic experts and counsel to meet and confer and agree on a streamlined search methodology.

Respectfully submitted,

/s/ Arturo J. González

Arturo J. González
Counsel for Uber Technologies, Inc., Ottomotto LLC and Otto Trucking LLC

cc: Counsel of record (via email)

sf-3757481