quinn emanuel trial lawyers | san francisco
50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

Case 3:17-cv-00939-WHA   Document 217   Filed 04/11/17   Page 1 of 3

April 11, 2017

Honorable William H. Alsup
U.S. District Court for the Northern District of California
San Francisco Courthouse, Courtroom 8 - 19th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:     *Waymo LLC v. Uber Technologies, Inc. et al.*, Case No. 3:17-cv-00939-WHA

Dear Judge Alsup:

Plaintiff Waymo respectfully submits this discovery letter brief in response to the Court's Order Setting Hearing Re Discovery Letter Dated April 11, 2017 (Dkt. 211) and Defendants' April 11 Discovery Letter (Dkt. 210).  Uber attempts to blame Waymo for its inability to comply with the Court's most recent order, but its difficulties are of its own making.  They reflect Uber's continued failure to comply with the Court's *original* expedited discovery order to find all "uses" of Waymo's confidential information.  (Dkt. 61.)  Uber violated that order and continues to do so.  Uber has now doubled down on its "head in the sand" approach to locating Waymo's trade secret information, leveraging only "fuzzy hashes" generated by its forensic vendor (which are insufficient to find files that have been changed) and raw search terms (which are insufficient to find evidence of use of Waymo's schematics).  As Waymo has repeatedly explained, this approach does not comply with the Court's order.

As an initial matter, Uber's representations regarding the parties' discussions are inaccurate and incomplete.  For example, Uber states that Waymo has "ignored Uber's request" concerning the scope of Uber's search for responsive documents.  That is incorrect.  Uber promised to provide a "hit count" resulting from each of Waymo's proposed search terms prior to reviewing the documents identified by the search.  (Ex. A.)  Uber then walked back this promise (dkt. 210-4), when Uber asserted that "the Fuji term is overbroad" without providing a hit count or any other information detailing the purported overbreadth of the term.  (Ex. A.)  Uber then promised to run Waymo's search term without modification and request a meet and confer "if the hits are too high."  (*Id.*).  To date, Uber has never provided a hit count or requested a meet and confer regarding Waymo's search terms prior to filing its letter.  In other words, Uber asserts that that Waymo's "broad search terms[] make it impossible to comply with the Friday deadline" but to date has identified issues with only one proposed term and failed to confer with Waymo regarding addressing that term.

Uber also complains that Waymo has not provided a list of Uber custodians (dkt. 210-1), yet the letter filed this morning is the first time Uber raised this issue after sending the April 6 email that is attached to Uber's letter as Exhibit 1.  At no point did Uber ever request a meet and confer, or even send a follow-up email, in relation to this issue.  Had they done so, Waymo would have explained that it was evaluating Uber's preliminary injunction opposition for relevant custodians and wanted to review Waymo's privilige log, which Uber did not provide until ordered to do so

late last night when it provided a redacted log over 700 pages. Nevertheless, Waymo Waymo provided an initial list of 5 custodians today, and requested further information from Uber that will enable Waymo to determine the most appropriate candidates for the remainder of its list of custodians. (Ex. __ Baily email to Uber.)

Moreover, despite Waymo's request, Uber has never articulated how it is determining which hits it deems "responsive" and which hits it deems "non-responsive." Without a showing that the alleged large number of hits are truly unrelated to Waymo's confidential information and trade secrets, Uber should not be relieved of its obligation to identify *all* possible files that reflect the *use* of such information and trade secrets (not merely copies of that information).

In any event, Uber has failed to demonstrate good cause for its requested relief from the Court's Order that Uber find any and all instances in which Waymo's confidential and trade secret information appear in Waymo's files. Contrary to Uber's assertion, more is required in order to establish good cause for relief from a court ordered deadline than a "general" showing that a party cannot meet the deadline. "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Thus, Uber's relief from the Court's deadline can only be granted "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking the modification." *Johnson*, 975 F.2d at 609.

At the outset, Uber's failure to meet the Court's deadlines is a problem of its own creation. Most notably, although Waymo made the 14,000+ files available for inspection on March 22, Uber made no attempts to view the files prior to the Court's initial March 31 deadline. Uber could not possibly have conducted a diligent search of its files, nor could it determine whether Uber was using them any earlier than this past weekend when it finally made arrangements to inspect the files. *See* Dkt. 210-5. Further, Uber has at all points resisted a comprehensive investigation. Although Waymo provided Uber with the hash values for each of the 14,000 files, Uber did not initially search the files of every ex-Waymo employee for those hashes, but instead searched only a 25% "sample." As shown above, Uber has refused to provide hit counts for any of the search terms used in its search, whether its own terms or those provided by Waymo. Uber has also repeatedly complained about the breadth of the Court-ordered investigation, but this complaint holds no water due to the central factor driving that breadth: that the head of Uber's autonomous vehicle unit downloaded 14,000 files from Waymo's highly confidential design document repository, and to this day has not denied that he downloaded those files or used them at Waymo. The Ninth Circuit instructs that prejudice to Waymo of this type is an additional reason beyond Uber's lack of diligence to deny Uber's request for an extension of the April 14 deadline.

Moreover, while Uber's letter states that it has applied the 50 priority filenames to its previously identified custodians, it is not clear from Uber's letter whether Uber has applied similar efforts to "prioritize the top 50 most important files and documents identified by Waymo" as part of its continued search. (Dkt. 163.) Indeed, Uber admits that it produced documents responsive to this portion of the Court's order on March 31, and there appears to be no reason that Uber ought not to be able to continue to produce documents using this methodology, regardless of the other issues Uber raises in its letter.

Uber has been under a Court order to provide documents to Waymo since March 16. As highlighted in Waymo's April 3 letter (dkt. 135), Uber's lack of diligence began with its insufficient efforts to respond to the Court's March 16 Order requiring production of several categories of documents. While the Court recognized at the previous hearing concerning Waymo's April 3 letter that Uber has been working to produce documents, it also provided additional guidance at the hearing and in the subsequent Order for Uber to apply in conducting its search of documents. At that hearing, Uber's counsel promised to abide by the Court's instructions. Uber never mentioned forensic vendors at that time, or gave any indication of how it intended to comply with the Court's deadline. Nor could it, as it had not made sufficient efforts at that time to understand what was necessary to respond to the Court's order. Now, with this most recent letter it is becoming abundantly clear that Uber has no intentions to meet Court ordered deadlines, or when it will do so. Instead, Uber's letter describes the size of its servers and the amount of email data in the most broad sense possible, without providing any evidence of its efforts to diligently search these servers and this data. As detailed in the declaration from Paul French of Discovia, Uber's explanations fall short of providing the detail to test the adequacy of its efforts to date. Uber should not be allowed to kick the can further down the road, it must meet the Court's deadline or face consequences.

Waymo will seek to meet and confer with Uber regarding all of these issues before the hearing tomorrow.

Respectfully,

*/s/ David Perlson*

David Perlson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Counsel for Waymo LLC

CC:  Counsel of record (via ECF)