IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WAYMO LLC,

    Plaintiff,

  v.

UBER TECHNOLOGIES, INC., *et al.*,

    Defendants.

No. C 17-00939 WHA

**ORDER DENYING MOTION TO MODIFY PRIVILEGE LOG REQUIREMENTS BASED ON FIFTH AMENDMENT**

## INTRODUCTION

In this action for trade secret misappropriation, patent infringement, and unfair competition, a non-party moves to prevent defendants from providing a conventional privilege log based on Fifth Amendment and attorney-client grounds. The motion is **DENIED**.

## STATEMENT

A cornerstone of the case by Waymo LLC is its evidence that non-party Anthony Levandowski downloaded over 14,000 files containing its trade secrets and proprietary information pertaining to self-driving cars to his company-issued laptop, transferred them to a portable storage device, wiped the laptop clean, then promptly left his position at Waymo with the downloads to start his own competing autonomous-vehicle ventures, defendants Ottomotto LLC and Otto Trucking LLC. Shortly thereafter, defendant Uber Technologies, Inc., acquired the new ventures for $680 million. Uber then quickly progressed in its own development of competing self-driving vehicles. This, Waymo contends, is how Uber accomplished in only nine months what it took Waymo seven years to do.

Waymo has moved for provisional relief against defendants. A hearing on that motion remains scheduled for May 3. On March 16, after a case management conference, an order approved a plan for expedited discovery (Dkt. No. 61). That order required, among other things, that defendants produce by March 31 "all files and documents downloaded by Anthony Levandowski . . . before leaving plaintiff's payroll and thereafter taken by [him]," and "the card reader, thumb drive, or other media used for the downloads, as well as all subsequent emails, memoranda, PowerPoints, text messages, or notes that have forwarded, used, or referred to any part of said downloaded material" (*id.* at ¶ 4).

On March 28, defendants requested a non-public conference to address a "confidential matter . . . to protect legitimate privacy concerns" (Dkt. No. 122 at 2). Defendants did not disclose the subject of the requested conference in advance to either Waymo or the Court. Nevertheless, the Court convened the conference provisionally under seal with the caveat that the transcript might be made public afterwards. Counsel for both sides appeared but new, separate counsel appeared for non-party Levandowski. (The transcript from the conference became public soon thereafter.)

During the conference, defense counsel indicated that, in the process of acquiring Levandowski's companies, Uber obtained a "due diligence" report prepared by a "third party" that may have referenced allegedly downloaded documents. To facilitate access to information held by Levandowski, both sides of the transaction and, this order assumes for the sake of argument, the third party entered into a joint defense agreement, in an effort to cloak the due diligence review by the third party under a claim of privilege. Evidently, some or all of the 14,000-plus files downloaded from Waymo were then disclosed to the third party or to Uber, although that is an interpretation of the circumstances and not a direct admission.

At the conference, counsel for defendants further indicated that they intended to put that report on a privilege log. Pursuant to a standing order, privilege logs must identify, with respect to each communication for which a claim of privilege is made (Judge Alsup's Supplemental Order to Order Setting Initial CMC in Civil Cases (effective Mar. 17, 2016), http://www.cand.uscourts.gov/whaorders):

2

      (a)      all persons making or receiving the privileged or protected communication;

      (b)      the steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication;

      (c)      the date of the communication; and

      (d)      the subject matter of the communication.

Additionally, privilege logs must be sufficiently detailed and informative to justify the claimed privilege(s), and indicate the locations where any purportedly privileged documents were found.

      Counsel for Levandowski, however, took the position that disclosing even the identity of the third party who had prepared the due diligence report on a privilege log would compromise Levandowski's Fifth Amendment privilege against self-incrimination. Counsel for Levandowski therefore requested that defense counsel be prohibited from making any such disclosure. The undersigned judge declined to grant the requested relief during the conference and indicated that Levandowski's Fifth Amendment argument should be made via formal motion, if at all.

      Consequently, Levandowski now makes the instant motion based on claims of Fifth Amendment privilege and attorney-client privilege (Dkt. No. 147). The motion record is thin but includes a joint defense, common interest and confidentiality agreement ("joint defense agreement"), dated in April 2016, between the two sides in Uber's acquisition of Levandowski's companies (Dkt. No. 147-1). The joint defense agreement referred to "potential investigations, litigation, and/or other proceedings relating to the proposed transactions." The "litigation" or "other proceedings" under contemplation went unidentified. The agreement stated that the parties had a "common interest in opposing" such proceedings. It recited that the parties had already shared with each other "confidential and proprietary documents containing financial, operating and planning data." The agreement continued with classification provisions to maintain secrecy. It made no mention, however, of the Fifth Amendment or of how to deal with privilege logs.

3

Waymo opposes the motion. Defendants — despite defense counsel's insistence that he "would love to put Mr. Levandowski on the stand" and asides that Levandowski's silence has had an "adverse impact" on defendants (*e.g.*, Dkt. No. 131 at 16:3–16:11) — do not oppose Levandowski's motion. This order follows briefing and oral argument.

## ANALYSIS

It took considerable effort to pin down the actual relief sought by this motion. The moving papers conveyed mixed messages. The notice of motion stated that the motion sought to prohibit Uber "from disclosing *any* information provided by Levandowski in the course of the [joint defense agreement], and specifically . . . information concerning the due diligence review conducted by a third party under that agreement, *including but not limited to* the identity of the third party who conducted any such due diligence review, whether Mr. Levandowski possessed any documents that were reviewed by the third party, and the identity of any of Mr. Levandowski's possessions that may have been reviewed" (Dkt. No. 147 (emphasis added)).

The memorandum of points and authorities, however, requested only "a modification of the Court's standing privilege log requirement" on the basis that it "would improperly compel Uber to disclose information protected by a common interest privilege and thereby undermine Mr. Levandowski's Fifth Amendment right against compelled production as recognized by the Supreme Court in *United States v. Hubbell*, 530 U.S. 27 (2000), and *Fisher v. United States*, 425 U.S. 391 (1976)" (*id.* at 1). Specifically (*id.* at 2):

> Mr. Levandowski asks that Uber's counsel . . . be relieved of any obligation to provide detail concerning (1) the identity of the third-party who conducted any such due diligence review, (2) whether Mr. Levandowski possessed any documents that were reviewed by the third party, or (3) the identity of any of Mr. Levandowski's possessions that may have been reviewed.
>
> This is necessary for two reasons. First, ordering public disclosure of these facts on the privilege log would impair Mr. Levandowski's attorney-client privilege because it would compel disclosures of confidences shared by Mr. Levandowski with his own counsel that were later communicated with other counsel as part of an enforceable joint defense and common interest privilege agreement. Second, requiring disclosure of these facts would separately violate Mr. Levandowski's Fifth Amendment right.

4

1   Thus, from the papers, the scope of this motion remained unclear because the usual information
2   accompanying a claim of privilege (namely, the particulars traditionally disclosed on a privilege
3   log) turned out to be what Levandowski seeks to conceal. We were, as a result, uninformed as
4   to who prepared the due diligence report and why; what it referenced; the extent, if any, to
5   which the author(s) of the due diligence report reviewed any or all of the downloads; to whom
6   the report was disclosed; and for what purpose each recipient used it.

7   At the hearing, the judge raised these questions and counsel for Levandowski finally
8   turned over for in camera review a proposed privilege log containing 42 specific line items that
9   Levandowski would partially redact. All 42 items concern the due diligence report (which
10  report was not supplied, even for in camera review). The proposed redactions would conceal
11  the identity of the third party that prepared the report, as well as descriptions of items reviewed
12  during its preparation. Even in its unredacted form some questions would remain (such as why
13  the report was prepared, whether it referenced any of the downloaded files, and for what
14  purpose each recipient used it). Counsel for Waymo then received a redacted version of the log
15  and, as expected, objected to the redactions.

16                              *               *               *

17  Turning to the merits, a very practical point deserves emphasis up front. The purpose of
18  a privilege log in our federal system is to list the materials withheld under any claim of
19  privilege and to specify certain time-honored particulars as to each item withheld. This is the
20  first step in the process of adjudicating a claim of privilege. The second step is to determine
21  whether the privilege actually applies and has not been waived. The system would become
22  compromised and much abused if a party could simply omit privilege log disclosures when
23  informed that the information disclosed might incriminate a wrongdoer.

24  The joint defense agreement in question provided that the parties would claim the
25  privileges recognized by the agreement but surely contemplated that they would do so in the
26  customary way — via a privilege log. Again, nothing in the agreement purported to muzzle the
27  parties when it came to supplying a privilege log in order to claim a privilege (not to mention
28  that any such provision might well be void as against public policy as an obstruction of justice).

1  Nothing in the agreement called out a privilege against self-incrimination or referred to the Fifth
2  Amendment, much less purported to obligate a party to avoid incriminating the other party.

3  Nevertheless, Levandowski's motion insists that attorneys for Uber, a signatory to the
4  joint defense agreement, became his personal lawyers, and that the Fifth Amendment somehow
5  prohibits them from revealing any information, even on a privilege log, that would help a
6  prosecutor connect the dots to him.

7  Much of Levandowski's memorandum stresses uncontroversial premises. *First*, the
8  Fifth Amendment privilege against self-incrimination can be asserted in a civil proceeding
9  when "the person invoking the privilege reasonably believes that his disclosures could be used
10 in a criminal prosecution, or could lead to other evidence that could be used in that manner."
11 *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). *Second*, an
12 individual may invoke the Fifth Amendment to avoid producing documents on the basis that the
13 act of production "may have a compelled testimonial aspect" as to that individual. *United*
14 *States v. Hubbell*, 530 U.S. 27, 36 (2000); *Fisher v. United States*, 425 U.S. 391, 410 (1976).
15 *Third*, the attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney
16 made in order to obtain legal assistance," so as to "encourage clients to make full disclosure to
17 their attorneys." *Fisher*, 425 U.S. at 403. *Fourth*, the joint-defense privilege or "common
18 interest" privilege can extend the attorney-client privilege such that it "protects not only the
19 confidentiality of communications passing from a party to his or her attorney but also 'from one
20 party to the attorney for another party where a joint defense effort or strategy has been decided
21 upon and undertaken by the parties and their respective counsel.'" *United States v. Gonzalez*,
22 669 F.3d 974, 978 (9th Cir. 2012) (quoting *United States v. Austin*, 416 F.3d 1016, 1021 (9th
23 Cir. 2005), and *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000)).

24 It does not follow from the foregoing premises, however, that compelling *Uber* to
25 complete a conventional privilege log would violate *Levandowski's* Fifth Amendment privilege.
26 Contrary to Levandowski's position, neither *Hubbell* nor *Fisher* so held, and *Fisher* expressly
27 rejected the theory.

28

In *Hubbell*, the Supreme Court held in relevant part that, for Fifth Amendment purposes, "the act of producing documents in response to a subpoena may have a compelled testimonial aspect," since "'the act of production' itself may implicitly communicate 'statements of fact,'" including admissions regarding the existence, possession or control, or authenticity of documents. 530 U.S. at 36. As stated, this is an uncontroversial premise here.

In *Fisher*, taxpayers under investigation by the Internal Revenue Service transferred documents to their attorneys retained for the investigation. The IRS sought to compel the attorneys to produce those documents, and the attorneys refused based on, among other things, their clients' Fifth Amendment privilege and the attorney-client privilege. *Fisher*, 425 U.S. at 393–95. *Significantly, the Supreme Court held that "compelled production of documents from an attorney does not implicate whatever Fifth Amendment privilege the taxpayer might have enjoyed from being compelled to produce them himself." Id.* at 402 (emphasis added). The documents in question could be subpoenaed from the attorneys "without compulsion on the *taxpayer*. The protection of the Fifth Amendment [was] therefore not available." *Id.* at 398–99 (emphasis added). In other words, "The taxpayer's privilege under this Amendment [was] *not violated* . . . because enforcement against a taxpayer's lawyer would not 'compel' the taxpayer to do anything and certainly would not compel him to be a 'witness' against himself." *Id.* at 397 (emphasis added). In fact, *Fisher* vindicated two district court decisions permitting the government to compel attorneys to produce their clients' documents, notwithstanding the latter's protests on Fifth Amendment grounds.[*]

Counsel for Levandowski quote *Fisher* for the proposition that, "papers, if unobtainable by summons from the client, are unobtainable by summons directed to the attorney by reason of the attorney-client privilege." *Id.* at 405. Thus, "when the client himself would be privileged

---

[*] This order recognizes that in *United States v. Sideman & Bancroft, LLP* (a decision neither side mentioned), our court of appeals stated that, under *Fisher*, "[an attorney] does not have to produce [documents] if doing so violates [a client's] Fifth Amendment rights." 704 F.3d 1197, 1201–02 (9th Cir. 2013). While this language superficially appears to support Levandowski's position here, the Supreme Court in *Fisher* expressly held that a client's "Fifth Amendment privilege is . . . *not violated by* enforcement of [document] summonses directed toward their attorneys." *Fisher*, 425 U.S. at 397. Our court of appeals has recognized as much. *Beckler v. Superior Court, Los Angeles Cty.*, 568 F.2d 661, 662 (9th Cir. 1978) (quoting the aforementioned holding as the "clear[] announce[ment]" of the Supreme Court). This order follows *Fisher*'s express holding.

7

from production of [a] document . . . the attorney having possession of the document is not bound to produce." *Id.* at 404. Even though *Fisher* clearly explained that the attorneys were immunized by reason of the *attorney-client* privilege, Levandowski misconstrues the foregoing snippets from *Fisher* as holding that "the lawyer stands in the shoes of his client when it comes to invoking the Fifth Amendment privilege" (*e.g.*, Dkt. No. 147 at 7–8).

This misinterpretation of *Fisher* erroneously conflates the Fifth Amendment and attorney-client privileges. To repeat, "it is not the [client's] Fifth Amendment privilege that would excuse the Attorney from production." *Fisher*, 425 U.S. at 396. Although *Fisher* referenced the Fifth Amendment privilege to determine the extent of the attorney-client privilege under certain circumstances, it did not lend "Constitutional dimensions" to the latter. *Beckler*, 568 F.2d at 662 & n.2. Rather, it was the policy concern underlying the *attorney-client* privilege that drove the holding in *Fisher*. Specifically, a client with documents privileged against production by the Fifth Amendment "will then be reluctant to transfer possession to the lawyer unless the documents are also privileged in the latter's hands." *Fisher*, 425 U.S. at 403–04. Thus, the *attorney-client* privilege immunizes a lawyer against compelled production if two requirements are met. *First*, the *client* must be privileged against production of the document in question, "either as a party at common law" or under the Fifth Amendment. *Second*, the client must have transferred the document in question to the attorney "for the purpose of obtaining legal advice." *Id.* at 404–05.

Importantly, despite acknowledging that an act of production has "communicative aspects" like tacit concession of a document's existence or location (a point counsel for Levandowski repeatedly emphasize here), *Fisher* never suggested that conventional privilege log requirements could be avoided on that basis. Our court of appeals, moreover, has acknowledged that claims of privilege against the production of particular documents — even under the Fifth Amendment — may require "targeted support" precisely like a privilege log or submission of the documents for in camera review. *United States v. Bright*, 596 F.3d 683, 691–92 (9th Cir. 2010). In short, Levandowski's suggestion that mere invocation of the Fifth Amendment can automatically supplant privilege log requirements is baseless.

8

Levandowski's motion cites three non-binding decisions for the proposition that "the requirement of a detailed privileged log must yield to the constitutional right to be free from forced self-incrimination" (Dkt. No. 147 at 2–3, 12). All three decisions, however, are distinguishable from our case because they relieved only *individuals* asserting their Fifth Amendment privilege from the requirement of a detailed privilege log under the specific circumstances of their respective cases. *See United States SEC v. Chin*, No. 12-cv-01336-PAB-BNB, 2012 U.S. Dist. LEXIS 182252, at *26 (D. Colo. Nov. 29, 2012) (Judge Boyd Boland); *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 649 (C.D. Cal. 2005) (Judge Rosalyn Chapman); *In re Fustolo*, No. 13–12692–JNF, 2015 WL 9595421, at *5 (Bankr. D. Mass. Dec. 31, 2015) (Judge Joan Feeney). None support Levandowski's position that requiring others with whom he did business, even if under a joint defense agreement, to supply typical privilege log information would be tantamount to compelling Levandowski to self-incriminate. Under the facts of *our* case, as stated, no binding authority supports Levandowski's suggestion that his Fifth Amendment privilege necessarily supersedes typical privilege log requirements.

Levandowski's arguments seem to suggest that, even though *Fisher* did not consider privilege logs, its holding should apply here because the privilege log disclosures at issue are "testimonial" in the same sense that actually producing the due diligence report would be. As the party asserting the attorney-client privilege, Levandowski "has the burden of establishing the relationship and privileged nature of the communication." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). He has not carried that burden here.

*First*, the identity of the third party that prepared the report is a *fact* known to Uber, not a communication between Levandowski and his attorney, much less a communication made for the purpose of obtaining legal advice. As such, it cannot be concealed by any attorney-client privilege, including under *Fisher*. *See Fisher*, 425 U.S. at 403 (the attorney-client privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege"); *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981) ("The [attorney-client] privilege only protects disclosure of communications; it does not protect

9

1 disclosure of the underlying facts by those who communicated with the attorney."); *Richey*, 632
2 F.3d at 566 ("The attorney-client privilege protects confidential communications between
3 attorneys and clients, which are made for the purpose of giving legal advice.").

*Second*, the motion record fails to show that Levandowski communicated to his attorney in confidence, and for the purpose of obtaining legal advice, either (1) whether the third party reviewed documents in Levandowski's possession, or (2) the identity of any other items in Levandowski's possession reviewed by the third party. *Syncor*, a decision cited by Levandowski, actually illustrates the error of his suggestion that the aforementioned information falls within the ambit of the attorney-client privilege. In *Syncor*, a defendant attempted to claim attorney-client and joint-defense privileges over documents prepared during due diligence "solely for the business purpose of a potential merger." Judge Rosalyn Chapman rejected the claim, concluding that such documents "cannot fall within the ambit of the attorney-client privilege, which protects only communications between a lawyer and client." *Syncor*, 229 F.R.D. at 644–45 (quotation omitted). So too here.

On appeal, Levandowski may argue that he transferred incriminating documents via his attorney to the third party, not for the preparation of any ordinary due diligence report, but specifically so that counsel for Uber could evaluate the extent to which Levandowski would arrive with attendant liabilities. Thus, Levandowski may contend, both the transfer and the report itself were "for the purpose of obtaining legal advice." Although that proposition was not advanced here in the district court, given our expedited schedule, this order anticipates the possibility and explains why it, too, would fail. As stated, its factual predicates are not proven up with a sworn record. For example, nothing under oath provides any specific information as to the purpose or subject of the due diligence report (other than, of course, the mere fact that it is described as a "due diligence report"). This alone should be dispositive. Moreover, under the umbrella of this argument, a litigant could abuse the attorney-client privilege to conceal wrongdoing (like the theft and sale of trade secrets) so long as they cleverly passed it on as part of "due diligence." No binding authority supports such an extraordinary result.

1    *Third*, even if the specific information Levandowski seeks to redact could be construed
2    as confidential attorney-client communications, it is not testimonial within the meaning of the
3    Fifth Amendment.  *See Fisher*, 425 U.S. at 410 (whether "tacit averments . . . are both
4    'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment . . . depend[s]
5    on the facts and circumstances of particular cases").  As stated, this Court reviewed the
6    requested redactions in camera and concluded that none of the information at issue constitutes
7    self-incriminating testimony, implicit or otherwise, from *Levandowski*.  To the extent that the
8    information is arguably testimonial, it is clear that *Uber*, not Levandowski, would be the one
9    testifying on the privilege log in question.

10   *Fourth*, the policy considerations underlying *Fisher* counsel against application of the
11   attorney-client privilege here.  As stated, the record does not show that Levandowski
12   communicated the privilege log information at issue in confidence to his attorney for the
13   purpose of obtaining legal advice.  Indeed, if Levandowski transferred any incriminating
14   documents to the third party, it would seem he did so for the purpose of selling his ventures to
15   Uber for $680 million.  In contrast, *Fisher* involved individuals who transferred documents to
16   their personal attorneys for legal advice in connection with IRS investigations.  It did not
17   involve a joint defense agreement.  Not did it involve presenting documents to a non-lawyer.
18   Nor did it involve presenting documents to a consultant for due diligence by the other side in an
19   acquisition.  *Fisher* is very far removed from the circumstances of our case, which simply do
20   not involve the kind of client-attorney communications that *Fisher* intended to protect.
21   Levandowski has thus failed to justify his requests to withhold privilege log information under
22   *Fisher*.  *See id.* at 403 ("[S]ince the [attorney-client] privilege has the effect of withholding
23   relevant information from the fact-finder, it applies only where necessary to achieve its purpose.
24   Accordingly it protects only those disclosures necessary to obtain informed legal advice which
25   might not have been made absent the privilege.").

26   Levandowski's motion cites the California Rules of Professional Conduct and our Civil
27   Local Rules for the general proposition that attorneys are ethically required to avoid disclosing
28   a client's "confidences" or "secrets" — "unless an appropriate court order is obtained by the

requesting party" (Dkt. No. 147 at 8–9). The suggestion that the privilege log at issue here would violate defense counsel's ethical obligation to protect Levandowski's "confidences" or "secrets" is a non-starter because the expedited discovery order dated March 16 is an "appropriate court order" that, according to Levandowski's own argument, supersedes generic countervailing ethical obligations.

In summary, Levandowski has not carried his burden to show that any privilege justifies his requested relief. Any remaining argument based on the joint defense agreement also fails because the joint-defense privilege "presupposes the existence of an otherwise valid underlying privilege, such as the attorney-client privilege, which has not been shown to be present." *See Syncor*, 229 F.R.D. at 645 (citing *Henke*, 222 F.3d at 637).

At risk of repetition, the very purpose of a privilege log is to allow a fair way to test a claim of privilege. That traditional privilege log requirements should be verboten merely because they might connect the dots back to a non-party in a possible criminal investigation is a sweeping proposition under which all manner of mischief could be concealed.

We are still at the privilege log stage. There will be time enough to argue soon over whether the due diligence report itself must be produced, but for now that report must be put on a privilege log in the conventional way — without any of the redactions requested by counsel for Levandowski.

## CONCLUSION

For the foregoing reasons, Levandowski's motion is **DENIED**.

1. By **11:00 P.M. TODAY**, defendants shall serve a privilege log complete as to all items unaffected by this motion.

2. By **APRIL 13 AT 5:00 P.M.**, defendants shall serve a privilege log complete as to all items affected by this motion unless the court of appeals extends the deadline.

3. Since it appears that the due diligence report is the main item at issue, the following procedure will be used to move the process along. By **APRIL 14 AT NOON**, plaintiff shall move, if it wishes to do so at all, to compel production of the report. Defendants and Levandowski shall have until **APRIL 21 AT NOON** to oppose, shall submit a proper sworn record

12

as to all necessary predicates, and shall submit the full report (with attachments) for in camera review. Plaintiff may reply by **APRIL 25 AT NOON**. The briefs should address the possibility that discovery into the predicates for any privilege may be allowed.

Should counsel file any petition for a writ in the court of appeals, please take into account that this civil action includes claims for patent infringement.

The proposed privilege log with requested redactions submitted for in camera review shall remain under seal for the court of appeals. This order addresses only the Fifth Amendment argument and is without prejudice to any argument that the privilege log is otherwise incomplete.

**IT IS SO ORDERED.**

Dated: April 10, 2017.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE