1    MICHAEL A. JACOBS (CA SBN 111664)
     MJacobs@mofo.com
2    ARTURO J. GONZÁLEZ (CA SBN 121490)
     AGonzalez@mofo.com
3    ERIC A. TATE (CA SBN 178719)
     ETate@mofo.com
4    MORRISON & FOERSTER LLP
     425 Market Street
5    San Francisco, California  94105-2482
     Telephone:    415.268.7000
6    Facsimile:    415.268.7522

7    Attorneys for Defendants
     UBER TECHNOLOGIES, INC.,
8    OTTOMOTTO LLC, and OTTO TRUCKING
     LLC
9
     KAREN L. DUNN (*Pro Hac Vice*)
10   kdunn@bsfllp.com
     HAMISH P.M. HUME (*Pro Hac Vice*)
11   hhume@bsfllp.com
     BOIES SCHILLER FLEXNER LLP
12   1401 New York Avenue, N.W.
     Washington DC  20005
13   Telephone:    202.237.2727
     Facsimile:    202.237.6131
14
     Attorneys for Defendants
15   UBER TECHNOLOGIES, INC.
     and OTTOMOTTO LLC
16

17                    UNITED STATES DISTRICT COURT

18                   NORTHERN DISTRICT OF CALIFORNIA

19                       SAN FRANCISCO DIVISION

20   WAYMO LLC,                          Case No.       3:17-cv-00939-WHA

21                  Plaintiff,           **DEFENDANTS UBER
                                         TECHNOLOGIES, INC.,**
22         v.                            **OTTOMOTTO LLC, AND OTTO
                                         TRUCKING LLC'S REPLY IN
23   UBER TECHNOLOGIES, INC.;            SUPPORT OF MOTION TO COMPEL
     OTTOMOTTO LLC; OTTO TRUCKING LLC,   ARBITRATION OF, AND TO STAY,
24                                       TRADE SECRET AND UCL CLAIMS
                  Defendants.            [9 U.S.C. §§ 3, 4]**
25
                                         Date:    April 27, 2017
26                                       Time:    8:00 a.m.
                                         Ctrm:    8
27                                       Judge:   Honorable William H. Alsup
                                         Trial Date: October 2, 2017
28

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

I.      EQUITABLE ESTOPPEL REQUIRES WAYMO TO ARBITRATE ITS
CLAIMS AGAINST UBER. ..............................................................................2

      A.    Numerous California Cases Have Compelled Signatories Like Waymo
To Arbitrate Their Claims Against Nonsignatories Like Uber. ..............................2

      B.    Uber Has Not Waived Application Of The Complete Legal Standard
That Applies To Its Motion. ...................................................................................3

      C.    Waymo's Trade Secret Claims Against Uber Are Inextricably
Intertwined With The Levandowski Contract, And Therefore Must Be
Arbitrated. ..............................................................................................................5

            1.    In Order To Meet A Required Element Of Its Trade Secret Claims,
Waymo Relies On The Confidentiality Provisions Of Its Written
Employment Agreements. ................................................................6

            2.    Waymo Cannot Prevail On Its Trade Secret Claims Without
Proving That Levandowski Violated The Confidentiality Provisions
In His Employment Contract. ..........................................................7

            3.    Waymo Alleges That Uber Engaged In Concerted Misconduct With
Levandowski That Involved Breaches Of His Employment
Contract. .......................................................................................10

      D.    Waymo Cannot Avoid Arbitration Merely By Not Naming Levandowski
As A Defendant In This Case. ...............................................................................11

      E.    The Fact That Waymo Is Bringing Tort And Statutory Claims Against
Uber, Rather Than Contract Claims, Is Irrelevant. ..............................................12

II.     THE ANSWERS TO THE COURT'S QUERIES CONFIRM THAT WAYMO
SHOULD BE COMPELLED TO ARBITRATE ITS TRADE SECRET
CLAIMS. ..........................................................................................................13

III.    THE COURT SHOULD STAY WAYMO'S PRELIMINARY INJUNCTION
MOTION AS TO ALL CLAIMS SUBJECT TO ARBITRATION. .....................14

CONCLUSION .................................................................................................................15

1

## TABLE OF AUTHORITIES

2

3

### CASES

4

*Arnold v. DirecTV, Inc.*,
   2013 U.S. Dist. LEXIS 167064 (E.D. Mo. Nov. 25, 2013) ................................................... 14

5

6

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009) ............................................................................................................ 2

7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ........................................................................................................... 15

8

9

*Boucher v. All. Title Co., Inc.*,
   127 Cal. App. 4th 262 (2005) .............................................................................................. 3

10

*CD Partners v. Grizzle*,
   424 F.3d 795 (8th Cir. 2005) .............................................................................................. 14

11

12

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) ............................................................................................. 5

13

*Facility Constr. Mgmt. Inc. v. Ahrens Concrete Floors, Inc.*,
   2010 WL 1265184 (N.D. Ga. Mar. 24, 2010) ...................................................................... 7

14

15

*Goldman v. KPMG LLP*,
   173 Cal. App.4th 209 (2009) ............................................................................................... 4

16

*Hart v. ITC Service Group, Inc.*,
   No. 4:15-cv-00599-DGK (W.D. Mo. 2015) ........................................................................ 14

17

18

*JSM Tuscany LLC v. Superior Court*,
   193 Cal. App. 4th 1222 (2011) ...................................................................................... 2, 11

19

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) .............................................................................. 3, 4, 5, 12

20

21

*Laswell v. AG Seal Beach, LLC*,
   189 Cal. App. 4th 1399 (2010) ............................................................................................ 3

22

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
   109 Cal. App. 4th 1705 (2003) .................................................................................. 3, 4, 11

23

24

*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*,
   186 Cal. App. 4th 696 (2010) ....................................................................................... 2, 13

25

*MS Dealer Service Corp. v. Franklin*,
   177 F.3d 942 (11th Cir. 1999) ........................................................................................... 10

26

27

*Mylan Inc. v. SmithKline Beecham Corp.*,
   2012 WL 603804 (D.N.J. Feb. 23, 2012) ............................................................................. 7

28

*Riverside County Sheriff's Dep't v. Stiglitz*,
   60 Cal. 4th 624 (2014) ....................................................................................................... 15

*Rodriguez v. Shen Zhen New World I LLC*,
   2014 WL 908464 (C.D. Cal. March 6, 2014) ......................................................... 11

*Rowe v. Exline*,
   153 Cal. App. 4th 1276 (2007) ........................................................................... 3

*Torbit, Inc. v. Datanyze, Inc.*,
   2013 WL 572613 (N.D. Cal. Feb. 13, 2013) ................................................. 3, 11, 12

*Turtle Ridge Media Grp., Inc. v. Pac. Bell Directory*,
   140 Cal. App. 4th 828 (2006) .................................................................... 2, 11, 13

*Uptown Drug Co., Inc. v. CVS Caremark Corp.*,
   962 F. Supp. 2d 1172 (N.D. Cal. 2013) ............................................................ 3, 15

**STATUTES**

18 U.S.C. § 1839 .................................................................................................. 7

18 U.S.C. § 1839(3) ............................................................................................... 5

Cal. Bus. & Prof. Code § 17200 ............................................................................ 1

Cal. Civ. Code § 3426.1 ........................................................................................ 7

Cal. Civil Code § 3426.1(d)(2) .............................................................................. 5

Cal. Code Civ. P. § 1281.8(b) ............................................................................. 14

**RULES**

JAMS Rule 24(e) ................................................................................................ 14

# INTRODUCTION

Waymo does not seriously contest that its trade secret claims against Uber are based on allegations of "interdependent and concerted misconduct" between Mr. Levandowski and Uber.[1] Nevertheless, Waymo claims it is not required to arbitrate those claims because, according to Waymo, the concerted misconduct is not "intimately founded in and intertwined with" the underlying Levandowski Agreements.[2]  Dkt. 204 at 10, 13-14.  That is false.  Waymo cannot prevail on its trade secret claims against Uber without proving that Mr. Levandowski engaged in conduct that constitutes a violation of his contractual confidentiality obligations to Waymo.  The trade secret claims therefore could not be more "intimately founded in and intertwined with" the Levandowski Agreements that contain a broadly worded arbitration clause.  Thus, the doctrine of equitable estoppel requires Waymo to arbitrate its trade secret claims against Uber.

Waymo also tries to argue that it can avoid arbitration by not naming Mr. Levandowski as a defendant.  But equitable doctrines cannot be avoided by such a formalistic ruse.  Several California cases have allowed nonsignatory defendants to compel signatory plaintiffs to arbitrate their claims even though there was no signatory defendant.

Uber has consented to have an existing panel of distinguished arbitrators resolve Waymo's trade secrets claims—the same panel Waymo agreed could hear its existing arbitrations against Mr. Levandowski.  Based on the plain text of the Levandowski Agreements, those arbitrators have the power to grant emergency injunctive relief if it is warranted, and Uber is willing to move as quickly as Waymo wishes.  Thus, Waymo cannot argue it would be deprived even for a moment of an opportunity to seek relief.  This Court should compel Waymo to arbitrate its trade secret claims, and should stay Waymo's preliminary injunction motion as it

---

[1] The phrase "trade secret claims" includes Count 1 (DTSA claim), Count 2 (Cal. UTSA claim), and Count 7 (§17200 claim based on same basic alleged misconduct as Counts 1 and 2).

[2] The "Levandowski Agreements" refers to the employment agreements between Levandowski and Google.  Dkt. 138 at 35, 47.  Waymo does not, and cannot, contest that it is bound by these Agreements, which requires "the Company" to arbitrate its claims, and defines "the Company" to include "Google Inc., its subsidiaries, affiliates, successors, or assigns."  *Id.*

1 relates to those claims.

2 **ARGUMENT**

3 **I. EQUITABLE ESTOPPEL REQUIRES WAYMO TO ARBITRATE ITS CLAIMS AGAINST UBER.**

4

5 **A. Numerous California Cases Have Compelled Signatories Like Waymo To Arbitrate Their Claims Against Nonsignatories Like Uber.**

6 Waymo asserts that it is virtually unheard of for a nonsignatory to an arbitration

7 agreement to compel a signatory to arbitrate its claims. Dkt. 204 at 9. That is false. The

8 Supreme Court has recognized that "traditional principles of state law" sometimes allow a

9 contract to be enforced against nonparties to the contract, and therefore any court that holds "that

10 nonparties to a contract are categorically barred from" seeking relief under the Federal

11 Arbitration Act is in "error." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)

12 (internal quotations omitted).

13 Because state law governs the issue of whether equitable estoppel allows Uber to enforce

14 the arbitration clause to which Waymo consented (*id.* at 632), it is of no moment that, as Waymo

15 emphasizes, "the Ninth Circuit" has not yet "affirmed" a finding "that a nonsignatory defendant

16 can compel arbitration against a signatory on the theory of equitable estoppel." Dkt. 204 at 10.

17 The relevant question is whether *California courts* have addressed whether equitable estoppel

18 allows a nonsignatory to compel a signatory to arbitrate its claims against the nonsignatory.

19 They have, holding in numerous cases that the doctrine of equitable estoppel allows a

20 nonsignatory to an arbitration agreement to compel arbitration of claims made against it when

21 those claims are "intertwined" with that underlying agreement. *See, e.g.*, *JSM Tuscany LLC v.*

22 *Superior Court*, 193 Cal. App. 4th 1222, 1241 (2011) ("A nonsignatory plaintiff can be

23 compelled to arbitrate a claim even against a nonsignatory defendant, when the claim is itself

24 based on, or inextricably intertwined with, the contract containing the arbitration clause"); *Turtle*

25 *Ridge Media Grp., Inc. v. Pac. Bell Directory*, 140 Cal. App. 4th 828, 833 (2006), *as modified*

26 (July 20, 2006) (allowing nonsignatory defendant to compel plaintiff to arbitrate even though the

27 entity with whom plaintiff had agreed to arbitrate was not named as a defendant); *Molecular*

28

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO COMPEL
ARBITRATION OF, & TO STAY, TRADE SECRET & UCL CLAIMS [9 U.S.C. §§ 3, 4]

3:17-cv-00939-WHA

2

1  *Analytical Systems v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 715 (2010)

2  (nonsignatory compelled arbitration of contract and tort claims where such claims were "founded

3  in and inextricably intertwined with" underlying contract that contained an arbitration clause);

4  *Laswell v. AG Seal Beach, LLC*, 189 Cal. App. 4th 1399, 1407-09 (2010) (allowing nonsignatory

5  defendants to enforce arbitration agreement against signatory); *Rowe v. Exline*, 153 Cal. App. 4th

6  1276, 1284-90 (2007) (same); *Boucher v. All. Title Co., Inc.*, 127 Cal. App. 4th 262, 271-72

7  (2005) (same); *Metalclad Corp. v. Ventana Envtl. Organizational P'ship,* 109 Cal. App. 4th

8  1705, 1713-18 (2003) (same).

9         Likewise, federal courts applying California law have repeatedly held that when a

10  signatory advances claims against a nonsignatory that are "intertwined" with obligations set forth

11  in the underlying contract, the doctrine of equitable estoppel allows the nonsignatory to compel

12  the signatory to arbitrate those claims.  *See, e.g.*, *Uptown Drug Co., Inc. v. CVS Caremark Corp.*,

13  962 F. Supp. 2d 1172, 1184-86 (N.D. Cal. 2013) (Tigar, J.) (nonsignatory compelling arbitration

14  of trade secret claim since such a claim necessarily requires plaintiff to show misappropriation in

15  violation of a written contract); *Torbit, Inc. v. Datanyze, Inc.*, No. 5:12-CV-05889-EJD, 2013

16  WL 572613 at *4 (N.D. Cal. Feb. 13, 2013) (Davila, J.) (nonsignatory compelling arbitration of

17  trade secret claim where claim was "intertwined with the contract providing for arbitration").

18         Thus, this is not a situation in which there are "no cases" or "only one case," as Waymo

19  tries to tell the Court.  There is an entire body of case law holding that a nonsignatory may

20  compel a signatory to arbitrate its claims when those claims are sufficiently "intertwined" with

21  the agreement.  Applying that law to this case, Waymo must arbitrate its claims against Uber.

     **B.**    **Uber Has Not Waived Application Of The Complete Legal Standard That**
22            **Applies To Its Motion.**

23

24         In footnote 9 of its opposition, Waymo incorrectly contends that Uber "waived" what

25  Waymo calls the "reliance" theory of equitable estoppel.  That is not correct.  Uber's opening

26  brief invoked the general proposition of law, established by California courts and recognized by

27  the Ninth Circuit in the *Kramer* decision, that "[e]quitable estoppel precludes a party from

28  claiming the benefits of a contract while simultaneously attempting to avoid the burdens that

1  contract imposes." Dkt. 115 at 7 (citing *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128

2  (9th Cir. 2013)). It is that general and well-established principle that governs Uber's motion, and

3  it was most certainly not waived.

4  As shown in the case law cited in Section I(A) above, California courts have applied this

5  governing principle to a wide variety of circumstances. Citing the California state court

6  decisions in *Goldman* and *Metalclad*, *Kramer* referred to "two circumstances" in which the

7  doctrine of equitable estoppel applies to allow a nonsignatory to enforce an arbitration clause

8  against a signatory, which *Kramer* summarized as follows:

9
10  "when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory **or** the claims are 'intimately founded in and intertwined with' the underlying contract"; and

11
12  "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory **and** 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'"

13

14  *Kramer*, 705 F.3d at 1128-29 (emphasis added) (citing *Goldman v. KPMG LLP*, 173 Cal.

15  App.4th 209, 221 (2009), *Metalclad Corp.*, 109 Cal. App. 4th at 1713).

16  The first circumstance that *Kramer* describes contains an "or" clause, actually identifying

17  two different circumstances. That means that *Kramer* identifies a total of three factual situations

18  in which California courts have held the doctrine of equitable estoppel allows a nonsignatory to

19  enforce an arbitration clause:

20  • When a signatory must rely on the terms of the written agreement in asserting its claims

21  against the nonsignatory;

22  • When the claims are intimately founded in and intertwined with the underlying contract;

23  or

24  • When the signatory alleges substantially interdependent and concerted misconduct by the

25  nonsignatory and another signatory, and the allegations of interdependent misconduct are

26  founded in or intimately connected with the obligations of the underlying agreement.

27  *Kramer* does not hold that these three sets of circumstances are mutually exclusive—they

28  obviously are not, and frequently overlap, as they do here. Nor does *Kramer* hold that these are

1  different "legal theories," as Waymo argues.  These are not different legal theories.  They are

2  descriptions of the kinds of overlapping factual circumstances in which "[e]quitable estoppel

3  precludes a party from claiming the benefits of a contract while simultaneously attempting to

4  avoid the burdens that contract imposes."  Dkt. 115 at 7 (citing *Kramer*, 705 F.3d at 1128).

5      Uber's opening brief demonstrated that each of the factual circumstances described in

6  *Kramer* are present here.  *Id*. at 7-9.  We showed that Waymo's claims are "governed by

7  [Levandowski's] Waymo employment agreements" (*id.* at 8), that Waymo's repeated references

8  to those agreements confirms that Waymo's claims are "intertwined with the obligations"

9  imposed by the Levandowski agreements (*id.*), and that Waymo's entire theory of the case is one

10  of "interdependent collusion" between Uber and Levandowski.  *Id.*  Thus, the opening brief

11  contains "contentions as well as citations to authorities and the record" that cover each of the

12  different factual circumstances recognized in *Kramer*.  *Edwards v. Marin Park, Inc.*, 356 F.3d

13  1058, 1066 (9th Cir. 2004) (no waiver of argument where opening brief contains the

14  "contentions as well as citations to authorities and the record" relevant to the argument).[3]

### C.    Waymo's Trade Secret Claims Against Uber Are Inextricably Intertwined With The Levandowski Contract, And Therefore Must Be Arbitrated.

17      Waymo asserts that its claims against Uber "are not based on any agreement with

18  Mr. Levandowski."  Dkt. 204 at 10.  That is false.  As shown in our opening brief and again

19  below, Waymo's trade secret claims are inextricably intertwined with the obligations set forth in

20  the Levandowski Agreements.[4]

---

[3] If the Court concludes otherwise, Uber does not object to permitting Waymo a surreply to address any possible claim of prejudice.

[4] Uber is not admitting Waymo can prevail against Uber *merely* by showing that Levandowski breached his agreements.  Uber is simply showing that Waymo's trade secret claims against Uber require it to show *at least* that Levandowski breached his agreements.  The alleged Levandowski breaches are necessary, but not sufficient, for Waymo's trade secret claims.

1          **1.**     **In Order To Meet A Required Element Of Its Trade Secret Claims,**
2                     **Waymo Relies On The Confidentiality Provisions Of Its Written**
                      **Employment Agreements.**

3          In order to prevail on its trade secret claims, Waymo must establish that the information

4   that was allegedly misappropriated is, in fact, a "trade secret."  To do so under California law,

5   Waymo must prove that the supposed proprietary information "[i]s the subject of efforts that are

6   reasonable under the circumstances to maintain its secrecy."  Cal. Civil Code § 3426.1(d)(2).

7   Similarly, under federal law, a plaintiff is required to show that it "has taken reasonable

8   measures to keep [its] information secret."  18 U.S.C. § 1839(3).

9          To meet this required element of its trade secret claims, Waymo repeatedly invokes the

10  confidentiality provisions of its employment contracts.  It alleges, for example, that it "has

11  undertaken efforts that are reasonable under the circumstances to maintain the secrecy of the

12  trade secrets at issue" through "the use of ***confidentiality agreements*** and ***non-disclosure***

13  ***agreements*** to require . . . employees to maintain the secrecy of Waymo's confidential

14  information."  FAC ¶ 82 (emphasis added).  Waymo further alleges that it "requires ***all***

15  ***employees … to sign confidentiality agreements*** before any confidential or proprietary trade

16  secret information is disclosed to them."  *Id.* at ¶ 72 (emphasis added).  *See also id.* at ¶¶ 52–53

17  (discussing engineers' "confidentiality obligations" owed to Waymo).

18         Likewise, in its motion for a preliminary injunction, Waymo asserted:

19         "As a condition of employment, Waymo ***requires all employees to enter into***
20         ***written agreements to maintain the confidentiality of proprietary and trade***
           ***secret information***….As a related ongoing measure, Waymo enforces an
21         employee code of conduct that explains employees' strict obligations to maintain
           secrecy of confidential information."

22  Dkt. 24 at 5 (emphasis added).

23         Of course, the most important employment agreement to Waymo, and the one it centrally

24  claims was breached, is that of Mr. Levandowski.  The Levandowski Agreements contain both

25  the confidentiality provisions (Dkt. 138 at 47, 59) and the requirement to comply with the

26  "employee code of conduct" to which Waymo refers in its Complaint and preliminary injunction

27  motion.  Dkt. 138 at 50, 62.  If the Levandowski Agreements did not contain these provisions,

28  Waymo would not be able to show that it took reasonable measures to protect the confidentiality

of its alleged trade secrets—thereby causing its trade secret claims to fail.

Waymo tries to avoid having to rely on the Levandowski Agreements by arguing that "Mr. Levandowski owed Waymo a duty of confidentiality as a matter of California law independent of the specific terms of his employment agreements." Dkt. 204 at 13-14. But the specific terms of a contract supersede the general provisions of the common law.[5] Moreover, Uber is not aware of a case that has allowed a party to meet the requirement of showing it kept information sufficiently confidential to constitute a trade secret merely by pointing to the existence of a background common law duty of confidentiality. Waymo recognized as much in its complaint. Instead of relying on any common law duty of confidentiality, the complaint alleges that Waymo specifically contracted for confidentiality, and relies on those contractual confidentiality provisions (and the contractually-incorporated employee handbook) in an effort to meet the required element of keeping its alleged trade secrets confidential. It therefore cannot disavow the contractual arbitration promises that appear alongside those contractual confidentiality promises.

### 2. Waymo Cannot Prevail On Its Trade Secret Claims Without Proving That Levandowski Violated The Confidentiality Provisions In His Employment Contract.

In order to prevail on its trade secret claims, Waymo must show that Uber has either (a) acquired Waymo's trade secrets with knowledge that those trade secrets were acquired by improper means, or (b) disclosed or used Waymo's trade secrets at a time when Uber knew that its knowledge of the trade secrets either (i) was "derived" from or through a person who had used improper means to acquire the trade secrets, or who owed a duty to Waymo to maintain the secrecy or limit the use of the alleged trade secrets, or (ii) was acquired under circumstances giving rise to a duty to keep secret or limit use. *See* 18 U.S.C. § 1839 (definition of

---

[5] *See, e.g.*, *Facility Constr. Mgmt. Inc. v. Ahrens Concrete Floors, Inc.*, No. 1:08-CV-01600-JOF, 2010 WL 1265184, at *4 (N.D. Ga. Mar. 24, 2010) (collecting authorities holding that "the express terms of [a] contract supersede the common law."); *Mylan Inc. v. SmithKline Beecham Corp.*, No. CIV.A. 10-4809 JAP, 2012 WL 603804, at *6 (D.N.J. Feb. 23, 2012), *rev'd in part on other grounds,* 723 F.3d 413 (3d Cir. 2013) (holding that express contractual provision overrode duty of good faith and fair dealing ordinarily imposed under state law).

"misappropriation" under Federal Defend Trade Secrets Act); Cal. Civ. Code § 3426.1 (definition of "misappropriation" under California Uniform Trade Secrets Act).

The only way that Waymo can meet one of the foregoing legal standards is to show that Mr. Levandowski acquired the trade secrets through improper means, or that Uber derived its knowledge from Mr. Levandowski, who owed a duty to Waymo to maintain the secrecy over (or limit the use of) those alleged trade secrets. Thus, the Levandowski Agreements are central to Waymo's ability to prove liability under its trade secret claims.

Waymo's allegations confirm that its trade secret claims are based on Mr. Levandowski's alleged violations of his contractual confidentiality obligations. Here is how Waymo entitles the paragraphs from its Complaint that contain its central allegations of trade secret theft: "**Unbeknownst to Waymo, Anthony Levandowski Lays The Foundation For Defendants To Steal Waymo's Intellectual Property Rather Than Compete Fairly In The Autonomous Vehicle Space.**" Dkt. 23 at p. 11 (title to Section D).

The ensuing paragraphs allege that between November 2015 and the end of January 2016, while he was still a Waymo employee, Mr. Levandowski was doing the following:

- "secretly preparing to launch a competing vehicle automation venture" (*id.* at ¶ 41);
- "had confided in some Waymo colleagues that he planned to 'replicate' Waymo's technology at a Waymo competitor" (*id.* at ¶ 42);
- "went to great lengths to take what he needed to 'replicate' Waymo's technology and then to meet with Uber executives, all while staying a Waymo employee" (*id.*);
- "searched for instructions on how to access Waymo's highly confidential design server" which "holds detailed technical information related to Waymo's LiDAR systems…and is accessible only on a need-to-know basis" (*id.* at ¶ 43);
- "installed special software on his Waymo laptop to access the design server" and then "downloaded over 14,000 proprietary files from that server" including "9.7 GBs of sensitive, secret, and valuable internal Waymo information" and "2GBs …. related to Waymo's LiDAR technology" and "confidential specifications for each version of every generation of Waymo's LiDAR circuit boards" (*id.* at ¶ 44);

1    • "attached a removable device (an SD Card) to the laptop containing the downloaded files

2       for approximately eight hours" (*id.* at ¶ 45);

3    • "reformatted the laptop, attempting to erase any evidence of what happened to the

4       downloaded files"  (*id.* at ¶ 46);

5    • "used his Waymo credentials and security clearances to download additional confidential

6       Waymo documents to a personal device"—these Waymo documents "included at least

7       five highly sensitive internal presentations containing proprietary technical details

8       regarding the manufacture, assembly, calibration, and testing of Waymo's LiDAR

9       sensors" (*id.* at ¶ 47);

10   • "After downloading all of this confidential information regarding Waymo's LiDAR

11      systems and other technology and while still a Waymo employee…..Mr. Levandowski

12      attended meetings with high-level executives at Uber's headquarters…" (*id.* at ¶ 48).

13         It does not take a lot of imagination to recognize that Waymo is alleging that

14   Mr. Levandowski breached the confidentiality provisions in the Levandowski Agreements.

15   Waymo never disputes that it obviously believes the foregoing conduct constitutes a breach of

16   the Levandowski Agreements.  Instead, Waymo relies on the formalism that Mr. Levandowski

17   "is not a party."  Dkt. 204 at 10.  But that is irrelevant, as discussed further in Section I(D),

18   below.  The relevant inquiry is whether Waymo's allegation that Mr. Levandowski violated his

19   contractual confidentiality obligations is "inextricably intertwined with," or a necessary part of,

20   Waymo's claims against Uber.  It clearly is.

21         Waymo claims that Uber is the beneficiary of all of Mr. Levandowski's contractual

22   breaches.  And Waymo further claims that Uber is violating trade secret law because Uber

23   allegedly acquired Waymo's trade secret information knowing that it had been wrongfully

24   acquired by Mr. Levandowski.  Waymo cannot prevail on these claims without proving that

25   Mr. Levandowski took the trade secret information in violation of his contractual obligations.  If,

26   contrary to Waymo's allegations, Mr. Levandowski at all times perfectly complied with the

27   confidentiality provisions in the Levandowski Agreements, then Waymo could not prevail on

28

1   any of its non-patent claims against Uber.  Waymo has not even attempted to show otherwise.[6]

2   ### 3.   Waymo Alleges That Uber Engaged In Concerted Misconduct With Levandowski That Involved Breaches Of His Employment Contract.

The central allegation Waymo makes against Uber is that "[i]nstead of developing their own technology, **Defendants stole** Waymo's long-term investments and property."  Dkt. 23 at ¶ 10 (emphasis added).  The alleged basis for this incendiary allegation is that (a) *Mr. Levandowski* allegedly stole Waymo's trade secrets (*id.* at ¶¶ 41-47), (b) *Mr. Levandowski* was simultaneously meeting with Uber executives while he was stealing Waymo's trade secrets (*id.* at ¶ 48), and (c) *Mr. Levandowski* then abruptly left Waymo and set up a company (Otto) that Uber acquired soon thereafter.  *Id.* at ¶ 55.  Thus, Waymo is quite clearly alleging that Uber engaged in concerted misconduct with Mr. Levandowski that involved complicity in Mr. Levandowski's violation of his contractual confidentiality obligations.

Waymo does not appear to contest that it is alleging that Uber and Mr. Levandowski were engaged in "interdependent and concerted misconduct."  Instead, Waymo argues that the "interdependent and concerted misconduct" was not "founded in or intimately connected with the obligations of the underlying agreement" (i.e., the Levandowski Agreements).  Dkt. 204 at 13-14.  That is incorrect.  The concerted misconduct alleged by Waymo is inextricably intertwined with the alleged breach of the Levandowski Agreements:

- Waymo accuses Levandowski of stealing trade secret information in violation of the confidentiality provisions of the Levandowski Agreements (Dkt. 23 at ¶¶ 41-49);

- Waymo accuses Uber of meeting with Levandowski while he was engaged in the alleged theft and while he was still an employee (*id.* at ¶ 48), and of then acquiring that stolen material by acquiring the companies Levandowski created (*id.* at ¶¶ 55-56).

As alleged by Waymo, there is no way to separate the alleged concerted misconduct from

---

[6] While Waymo alleges that two other employees, Mr. Kshirsagar and Mr. Raduta, also downloaded a small number of Google documents, (Dkt. 23 at ¶¶ 52, 53), those allegations are insufficient to sustain a trade secret claim against Uber. Waymo never tries to argue otherwise. Moreover, it is likely the employment agreements between Waymo and Mr. Kshirsagar and Raduta also have arbitration clauses; Waymo has made no attempt to show they do not.

the alleged theft in violation of the Levandowski Agreements.  Thus, the alleged concerted misconduct is indeed "founded in or intimately connected with the obligations of the underlying agreement."

### D. Waymo Cannot Avoid Arbitration Merely By Not Naming Levandowski As A Defendant In This Case.

Waymo argues that because Mr. Levandowski is "not a party" to this lawsuit, the doctrine of equitable estoppel cannot compel Waymo to arbitrate.  That is incorrect.  California courts have repeatedly held that a nonsignatory defendant may invoke the doctrine of equitable estoppel to compel a signatory plaintiff to arbitrate its claims even where there is no signatory named as a defendant.  *See, e.g.*, *Metalclad Corp.*, 109 Cal. App. 4th at 1718 ("Estoppel prevents Metalclad from avoiding arbitration by suing only the [nonsignatory] parent corporation in these circumstances.") (citing *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (holding that nonsignatory plaintiff could compel signatory defendant to arbitrate where there were no other parties to the litigation)); *Turtle Ridge Media Grp.,* 140 Cal. App. 4th at 833 (holding nonsignatory defendant could compel signatory plaintiff to arbitrate where there were no other defendants); *Rodriguez v. Shen Zhen New World I LLC*, 2014 WL 908464 at *6 (C.D. Cal. March 6, 2014) (applying equitable estoppel to compel plaintiff signatory to arbitrate claims against nonsignatory defendant even though other signatory to agreement was not named as a defendant).  California courts have held that a non-signatory defendant can even compel a nonsignatory plaintiff to arbitrate its claims, with *no* signatories in the case.  *See JSM Tuscany*, 193 Cal. App. 4th at 1241.

Given that California courts compel arbitration even when a signatory plaintiff chooses to sue only a nonsignatory (tactically choosing to leave any other signatories out of the case), Waymo fails in its effort to distinguish the decision in *Torbit, Inc. v. Datanyze, Inc.*, 2013 WL 572613 (N.D. Cal. 2013).  *Torbit* compelled arbitration based on facts that are virtually identical to those presented here.  The plaintiff alleged that its former employee (Ilya Semin) used plaintiff's computer network "to download its code repository, including its trade secrets and proprietary information, onto his personal computer," and further alleged that Mr. Semin

"founded his company, Datanyze, during the course of his employment and that Datanyze is using" the trade secrets and proprietary information taken by Mr. Semin. *Id.* at *2.  Mr. Semin's employment agreement with plaintiff had an arbitration clause.  But the defendant Datanyze was not a signatory to that agreement.  Judge Davila held that the doctrine of equitable estoppel allowed Datanyze to compel arbitration because the plaintiff's trade secret claim was "intertwined with" Mr. Semin's employment agreement. *Id.* at *4.  In particular, the court found that the plaintiff could not show a required element of its trade secret claim against Datanyze— that it had "knowledge" that the trade secret was acquired by improper means—without relying on an interpretation of Mr. Semin's employment agreement. *Id.*  The same is true here.

Waymo claims *Torbit* is "distinguishable" because in *Torbit* the plaintiff sued both the former employee (Mr. Semin) and the company (Datanyze).  Dkt. 204 at 11.  But as shown above, that formalism is irrelevant.  Equitable estoppel cannot be evaded by tactical pleading.  Moreover, the court in *Torbit* analyzed the ability of Datanyze to compel arbitration without any reference to the fact that Mr. Semin was a named defendant (and only after concluding that the claims against Mr. Semin all had to be arbitrated).[7]

Waymo's attempt to avoid arbitration by not naming Mr. Levandowski as a defendant is gamesmanship that elevates form over substance.  Equitable doctrines cannot be so easily fooled.

### E.  The Fact That Waymo Is Bringing Tort And Statutory Claims Against Uber, Rather Than Contract Claims, Is Irrelevant.

Waymo argues that because its claims against Uber are "based in tort" and "seek to enforce statutory rights," they are thereby independent from the Levandowski Agreements.  Dkt. 204 at 13.  But as shown above, these tort and statutory claims have elements to them that Waymo cannot satisfy unless it proves facts that show a breach of the Levandowski Agreements.  Moreover, numerous cases hold that equitable estoppel requires a signatory to a contract to arbitrate non-contractual claims against a nonsignatory when those claims are intertwined with

---

[7] Waymo also claims that *Kramer* somehow "abrogate[d]" the holding in *Torbit*, but there is no basis for that assertion.  *Kramer* did not cite *Torbit* or say anything that was inconsistent with the holding and rationale in *Torbit*.

1   alleged breaches of the underlying contract.  *See, e.g.*, *Turtle Ridge Media Grp.*, 140 Cal. App.

2   4th at 834-36 (granting nonsignatory's request to compel arbitration against contract signatory of

3   *tort* claims even where no contractual cause of action was alleged); *Torbit, Inc.*, 2013 WL

4   572613 at *4 (compelling arbitration of tort and other statutory claims because they were

5   "intertwined with" alleged breaches of an employment agreement).  Moreover, the language of

6   the arbitration clause in the Levandowski Agreements is broad enough to capture non-contractual

7   claims, as explained in our opening brief.  Dkt. 115 at 10-11.  The agreement also applies to such

8   claims "with anyone."  Waymo's attempt to avoid the broad arbitration provisions it negotiated

9   are unpersuasive.

10  **II.    THE ANSWERS TO THE COURT'S QUERIES CONFIRM THAT WAYMO
            SHOULD BE COMPELLED TO ARBITRATE ITS TRADE SECRET CLAIMS.**

11
12          This Court asked whether the arbitration proceedings Google initiated against

13  Mr. Levandowski would address which of the 14,000-plus allegedly downloaded files qualify as

14  trade secrets, and also asked "**If the arbitration will not reach that issue, please explain why**."

15  Dkt. 194 (emphasis added).  Waymo responded by stating that the Google arbitrations will not

16  address this issue, but Waymo did not "explain why."  That is because Waymo has no good

17  answer to that question.  Here is the true answer:  Google is strategically choosing not to bring

18  claims against Mr. Levandowski that could implicate its trade secrets claim because it wants to

19  avoid the confidential arbitration process to which it contractually agreed.  Waymo was aware of

20  the alleged downloading of 14,000 files *before* it filed its two arbitrations in late October—yet

21  they said nothing in either arbitration about that purported misappropriation.  Dkt. 23 at ¶ 57.

22  That kind of gamesmanship to avoid a contractual commitment to arbitration is exactly what the

23  doctrine of equitable estoppel is designed to prevent, and is also inconsistent with the Federal

24  and California policies in favor of encouraging arbitration.[8]

25  _____

26  [8] *See, e.g.*, *Molecular Analytical Systems*, 186 Cal. App. 4th at 714 ("both federal and California
    arbitration law favor the arbitration of disputes.").

27

28

1    The Court also inquired about the status of the current arbitrations, the panelists, and the

2    ability of the parties to conduct expedited discovery.  Dkt. 130.  We attach a declaration from

3    Mr. Gonzalez briefly updating the Court on these matters.  But the point we wish to emphasize

4    most is that the arbitration that Uber initiated against Waymo **will** address the alleged download

5    of the 14,000 files, including which if any of them contained trade secrets.  Moreover, that Uber-

6    initiated arbitration is positioned to move as expeditiously as Waymo wishes.  Uber has

7    consented to the use of the same three distinguished arbitrators that have been empaneled for the

8    Waymo-initiated arbitrations, and Uber is willing to move as expeditiously as Waymo wishes in

9    that arbitration.  Waymo may not have agreed to that, but that just reflects Waymo's strategic

10   effort to litigate its trade secret claims in court, rather than in arbitration as contractually

11   promised.

12   The Court also asked the parties to state whether they have ever taken positions in prior

13   cases with respect to a nonsignatory's ability to compel arbitration that are inconsistent with the

14   position being taken here.  Dkt. 142.  Uber has not done so.  Dkt. 197.  Waymo and Google have

15   done so at least four times.  Dkt. 200.  Moreover, Waymo's disclosure to the Court was

16   incomplete.  It failed to identify its reply brief in support of its motion to compel arbitration in

17   *Hart v. ITC Service Group, Inc.,* No. 4:15-cv-00599-DGK (W.D. Mo. 2015).  In that brief,

18   Google for the first time argued that arbitration was required because the plaintiff's claims "***must***

19   ***rely*** on the terms of the written agreement" with the arbitration clause—an argument it seeks to

20   evade here.  *Hart* Dkt. 62 at 5 (emphasis added).  In addition, Google relied heavily on case law

21   requiring arbitration where *no signatory* appeared as a named defendant—directly rebutting one

22   of its main tactics here.  *Id.* at 5-7 (citing *Arnold v. DirecTV, Inc*., 2013 U.S. Dist. LEXIS

23   167064 (E.D. Mo. Nov. 25, 2013) and *CD Partners v. Grizzle*, 424 F.3d 795 (8th Cir. 2005)).

24   **III.   THE COURT SHOULD STAY WAYMO'S PRELIMINARY INJUNCTION**
     **MOTION AS TO ALL CLAIMS SUBJECT TO ARBITRATION.**

25

26   Waymo argues that even if its trade secret claims must be arbitrated, this Court should

27   not stay its motion for preliminary injunction because it cannot get that relief in arbitration.  That

28   is incorrect.  First, the Levandowski Agreements specifically contemplate that the arbitrators

1   shall have the power to award "ANY REMEDIES," including "INJUNCTIVE RELIEF." Dkt.

2   138 at 52. The Levandowski Agreements also invoke the JAMS arbitration rules, and those rules

3   provide that the arbitrators "may grant whatever interim measures are deemed necessary,

4   including injunctive relief…"[9] Waymo also argues that the California Code of Civil Procedure

5   provides that a party to an arbitration agreement may seek provisional relief in court, but the

6   rules say that is permissible "*only upon the ground that the award to which the applicant may*

7   *be entitled may be rendered ineffectual without provisional relief.*" Cal. Code Civ. P. §

8   1281.8(b) (emphasis added). Here, the award Waymo seeks will not be rendered ineffectual

9   without provisional relief from this Court because the arbitrators are empowered to award any

10  provisional injunctive relief they find necessary. *See Uptown Drug Co.*, 962 F. Supp. 2d at 1187.

11       Far from seeking "delay," Uber has made clear it consents to the existing panel of

12  arbitrators, and is willing to move as quickly as Waymo wishes. Waymo has the burden of

13  showing why that is inadequate to protect its interests. *See Riverside County Sheriff's Dep't v.*

14  *Stiglitz*, 60 Cal. 4th 624, 633 (2014). Waymo has not met that burden. Further, Waymo is in no

15  position to say the arbitration panel may not move as quickly as this Court. As shown in our

16  opposition to Waymo's preliminary injunction motion, Waymo delayed bringing its motion for

17  at least five months after learning of Mr. Levandowski's alleged downloads. Dkt.177 at 17-18.

18       Waymo complains that Uber wants "secrecy." But Waymo is the one making massive

19  redactions from its court filings to protect its alleged trade secrets. The Supreme Court has

20  recognized that arbitration is a particularly appropriate forum to resolve trade secret claims

21  because the arbitration setting can much better "protect trade secrets" than can a public judicial

22  forum. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-45 (2011).

## CONCLUSION

24       For the foregoing reasons, the Court should compel Waymo to arbitrate its trade secret

25  claims against Uber.

26

27  [9] *See* Dkt. 138 at 51, 63 (incorporating JAMS arbitration rules into Levandowski Agreements):
    *see also* JAMS Rule 24(e), *available at* https://www.jamsadr.com/rules-comprehensive-
    arbitration.

28

1   Dated:      April 17, 2017                 Respectfully Submitted,

2                                              MORRISON & FOERSTER LLP

3

4                                              By:   */s/ Arturo J. González*
                                                      ARTURO J. GONZÁLEZ
5
                                               Attorneys for Defendants
6                                              UBER TECHNOLOGIES, INC.,
                                               OTTOMOTTO LLC, and OTTO TRUCKING LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28