# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **MICHAEL HART,** *et al.*, **individually and on behalf of a class of similar employees,** | ) ) ) | |
| **Plaintiffs,** | ) ) | Case No. 4:15-cv-00599-DGK |
| v. | ) ) | |
| **ITC SERVICE GROUP, INC.,** *et al.*, | ) ) | |
| **Defendants.** | ) | |

**DEFENDANT GOOGLE FIBER, INC.'S REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO GOOGLE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY**

Just to be clear – Plaintiffs admit they have agreed to arbitrate their claims against the ITC Defendants.[1]  Indeed, the arbitration agreement Plaintiffs seek to enforce against ITC broadly encompasses "*any dispute or controversy . . . arising from, related to, or having any relationship or connection whatsoever with . . . [their] employment*."  That very same agreement plainly states that Plaintiffs' employment with ITC was/is for the benefit of ITC's client, Google. In their Amended Complaint, Plaintiffs allege that ITC and Google jointly controlled every aspect of their employment, and Plaintiffs seek to hold ITC and Google jointly liable for FLSA violations they allegedly jointly perpetrated. Despite the crystal clear agreement to arbitrate all disputes having "any connection whatsoever" to Plaintiffs' work for ITC for the benefit of Google, Plaintiffs now contend the determination of joint liability for the alleged joint acts of the alleged joint employer should be split and simultaneously adjudicated in two different tribunals – with ITC in arbitration and Google in this Court.  There is no factual or legal basis for such a hopelessly disjointed and misguided course of action.  Instead, this Court should rule that the entire case must proceed in arbitration.

---

[1] ITC Service Group, Inc. and four of its individual representatives.

**ARGUMENT**

The parties disagree as to which of two arbitration agreements applies.  ITC contends that the Mutual Arbitration Agreement is controlling (Dkt. 25, 26). Plaintiffs acknowledge that they entered into the Mutual Arbitration Agreement, but they insist that the Mutual Arbitration Agreement was superseded by a Temporary Contract Employment Agreement containing a different arbitration provision. (Dkt. 34, 35).  Google agrees with ITC that the Mutual Arbitration Agreement should be enforced.  As more fully discussed below, no party disputes that, if the Mutual Arbitration Agreement applies, Google is entitled to enforce Plaintiffs' agreement to arbitrate. But even if the Temporary Contract Employment Agreement is the controlling agreement, Google is still entitled to enforce Plaintiffs' agreement to arbitrate.  Thus, regardless of the Court's determination as to which agreement controls, all claims against all parties should be compelled to arbitration.

**A.    The Mutual Arbitration Agreements Should Be Enforced, And All Parties And All Claims Should Be Compelled To Arbitration.**

For the reasons set forth in the ITC Defendants' suggestions in support of their motion to compel arbitration (Dkt. 26, 43), the Mutual Arbitration Agreements should be enforced. Further, as explained in the suggestions in support of Google's motion (Dkt. 58 at 4-5), Google is entitled to enforce the Mutual Arbitration Agreements due to the sweeping joint employer allegations in the First Amended Complaint (Dkt. 49), and because the Mutual Arbitration Agreements broadly define "Company" to include ITC's "affiliates" and "related entities" (Dkt. 26-1, Ex. A-C).  Indeed, in their opposition to Google's motion, Plaintiffs do not even challenge this conclusion, other than to reiterate their contention that the Mutual Arbitration Agreements have been superseded by the Temporary Contract Employment Agreements.  (Dkt. 61, at 2-3).

Even if there were some doubt as to whether Google could enforce the Mutual Arbitration Agreements as an "affiliate" or "related entity," Google is entitled to enforce the Mutual Arbitration Agreements as a nonsignatory for the same reasons discussed below with respect to the Temporary Contract Employee Agreements. Consequently, the Court should compel all claims and all parties to arbitration.

**B.     Even If The Temporary Contract Employee Agreements Contain The Controlling Arbitration Provision, All Parties And All Claims Should Be Compelled To Arbitration.**

Even if this Court determines that the Temporary Contract Employment Agreements superseded the Mutual Arbitration Agreements, Google is still entitled to enforce Plaintiffs' arbitration agreement. Plaintiffs argue that, because Google did not sign the Temporary Contract Employment Agreements, Google cannot enforce the arbitration provision contained within those agreements. For the reasons set forth below, Plaintiffs' efforts to avoid their agreement to arbitrate fail.

Initially, Plaintiffs seem to argue that they never agreed to arbitrate employment-related disputes that involve both ITC and Google. But even a cursory review of the Temporary Contract Employment Agreements demonstrates the fallacy of that argument. Unlike the Mutual Arbitration Agreements, which exclusively dealt with arbitration, the Temporary Contract Employment Agreements established all the contractual terms and conditions of the employment relationship between Plaintiffs and ITC. (*See* Dkt. 35-1 at 9-14, 15-20; 35-2 at 9-13, 14-18; 35-3 at 9-14, 15-19, 20-24). The Temporary Contract Employment Agreements expressly stated that each employee's "Assignment" was to provide services *exclusively* for the benefit of ITC's client, Google. (*See* Dkt. 35-1 at 9, 15; 35-2 at 9, 14; 35-3 at 9, 15, 20; Dkt. 49, ¶ 14).

The arbitration provision of the Temporary Contract Employment Agreements is clearly broad enough to encompass Plaintiffs' FLSA-based disputes with ITC and Google:

3

> Employee agrees that *any dispute or controversy* which would otherwise require or allow resort to any court or other governmental dispute resolution forum, between Employee and the Company (or its owners, directors, and officers, and parties affiliated with its employee benefit and health plans) *arising from, related to, or having any relationship or connection whatsoever with* application for employment, *employment, or other association with, Company*, whether based in tort, contract, *statutory*, or equitable law, or otherwise, *shall be submitted to and determined by binding arbitration*.

(*See* Section 23 "Agreement to Arbitrate," Dkt. 35-1 at 13, 19; 35-2 at 13, 18; 35-3 at 13, 19, 24) (emphasis added)).

The entire theory of Plaintiffs' case, as set forth in the First Amended Complaint, is that Google is/was a joint employer with ITC, including that:

- ITC employees work exclusively for Google (Dkt. 49, ¶ 14);

- Google has substantial control over the ITC employees (*Id*. ¶ 15);

- ITC employees use equipment owned by Google (*Id*. ¶ 16);

- ITC's operations are tailored to Google's precise demands (*Id*. ¶ 18);

- Google provides training to ITC employees (*Id*. ¶ 21);

- Google controls the techniques and manner in which ITC employees perform their duties (*Id*. ¶ 22);

- ITC employees have Google email addresses, security clearances, badges, and uniforms (*Id*. ¶¶ 23-24);

- Google screens ITC employees for hire, has ordered pay increases for ITC employees, conducts regular performance reviews, and has effectively recommended disciplinary action (*Id*. ¶ 25);

- Google has a tracking system to monitor ITC employees during the work day (*Id*. ¶ 27);

- ITC employees receive wage payments from Google that simply "pass through" ITC (*Id*. ¶ 30); and

- Google controls ITC's staffing levels and must pre-approve staffing level increases (*Id*. ¶ 35).

4

In short, Plaintiffs allege that Google and ITC were so intertwined as to form a single employer of the Plaintiffs. Caselaw makes clear that, in such circumstances, Google is entitled to enforce Plaintiffs' arbitration agreement. This is especially true because "[a]ny doubts raised in construing contract language on arbitrability 'should be resolved in favor of arbitration.'" *CD Partners, LLC v. Grizzle*, 424 F. 3d 795, 798 (8th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

In their opposition, Plaintiffs argue that Google has failed to undertake the analysis mandated by "relevant and controlling Missouri law." (Dkt. 61, at 4-5). In support of their argument, Plaintiffs cite *King Cole Foods, Inc. v. SuperValu, Inc. (In re Wholesale Grocery Products Antitrust Litigation)*, 707 F. 3d 917 (8th Cir. 2013); *Tucker v. Vincent*, 471 S.W. 3d 787 (Mo. App. (E.D.) 2015); and *Jones v. Paradies*, 380 S.W. 3d 13 (Mo. App. (E.D.) 2012). But those cases, and especially the most recent Missouri state court case, *Tucker v. Vincent*, only serve to reaffirm the arguments and authorities on which Google relies.

First, it is important to recognize that this is not a case in which Plaintiffs themselves have not signed an arbitration agreement. Instead, "[t]his is a case where a nonsignatory with a close relationship to a signatory wants the other signatory to arbitrate a claim." *CD Partners v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005). As the Missouri Court of Appeals in *Tucker* recognized, in circumstances such as these there are several independent bases on which a nonsignatory can compel arbitration with a signatory, including:

> (1) "when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement be avoided." *Tucker*, 471 S.W. 3d at 796 (quoting *CD Partners*, 424 F.3d 795, 798;
>
> (2) "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory." *Id.*; and

5

> (3) where the "non-signatory is a third-party beneficiary of the agreement." *Tucker*, 471 S.W. 3d at 796 n. 5 (citing *Nitro Distrb., Inc. v. Dunn*, 194 S.W. 3d 339, 345 (Mo. banc 2006).

Despite Plaintiffs' reference to cases articulating at least three different legal bases for a nonsignatory's enforcement of an arbitration agreement, Plaintiffs contend they should be relieved of their obligation to arbitrate solely because their FLSA claims are independent of the Temporary Contract Employment Agreement. Thus, Plaintiffs attack only the second legal basis articulated in *Tucker*. As discussed below, even that argument misses the mark, and the argument certainly does nothing to call into question enforcement under the first or third basis.

> **1. The relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting Google to invoke arbitration may evisceration of the underlying arbitration agreement be avoided.**

With respect to the "sufficiently close relationship" analysis, Plaintiffs essentially allege that ITC and Google were one and the same employer, and that they jointly violated the FLSA. Proof and defense of those claims will require discovery and trial related to the joint employer allegations, as well as the merits of the FLSA claims themselves. This will include testimony from representatives of both Google and ITC, and documentary evidence from both Google and ITC. In other words, ITC (and Google) would be forced to simultaneously defend the exact same claims in two different tribunals – arbitration and this Court. Moreover, to allow the simultaneous litigation of the exact same claims in two different venues could lead to inconsistent results and/or unwarranted double recovery. Such an approach would unquestionably eviscerate the arbitration agreement Plaintiffs signed.

Indeed, as Google pointed out in its suggestions in support, the Eastern District of Missouri recently decided a case with nearly identical facts, *Arnold v. DirecTV, Inc.*, 2013 U.S. Dist. LEXIS 167064 (E.D. Mo. Nov. 25, 2013). Although Plaintiffs opted not to discuss *DirecTV* in their opposition, that court found the close relationship between the defendants, coupled with

6

plaintiffs' allegations of joint employment and joint violation of FLSA, meant that the arbitration agreements would be "practically eviscerated" if DirecTV was not permitted to compel arbitration.  2013 U.S. Dist. LEXIS 167064 at * 13-14.  The court further held that, even though DirecTV denied it was a joint employer, the plaintiffs could not be permitted to argue the defendants were joint employers while at the same time argue they were insufficiently related to permit DirecTV to compel arbitration.  *Id.* at * 12-14.

Plaintiffs also chose not to address the decisions from other courts throughout the country that have similarly relied on an estoppel theory in the context of joint employer allegations under the FLSA to hold that a nonsignatory defendant may enforce the arbitration agreement between the signatory plaintiff and his/her direct employer.  *See, e.g., Diaz v. Michigan Logistics, Inc.*, 2016 U.S. Dist. LEXIS 27499, *17-18 (E.D.N.Y. March 1, 2016); *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 758 (N.D. Ill. 2015); *Carter v. MasTec Services Company, Inc.*, 2010 U.S. Dist. LEXIS 10338, *13-14 (D. S.C. Feb. 5, 2010).

Plaintiffs cannot have their cake and eat it too by, on one hand, claiming that Google and ITC are their joint employer (*i.e.*, one and the same employer) and then, on the other, argue that Google cannot enforce the agreements controlling resolution of complaints "having any relationship or connection whatsoever with . . . [their] employment."  To allow otherwise would render the agreements meaningless and result in their "evisceration."

> **2.   The fact that Plaintiffs' FLSA claims are not directly based on their employment agreement does not preclude Google from enforcing the arbitration provision in the employment agreement.**

As noted above, the only argument advanced by Plaintiffs is that their FLSA claims are independent of the Temporary Contract Employment Agreements.  Google acknowledges that there is an independent statutory basis for Plaintiffs' claims.  But that does not end the inquiry.

7

As the *Tucker* court recognized, there is a difference between enforcement of an arbitration provision found in a limited purpose agreement, such as a onetime transfer of assets in a purchase agreement, as compared to enforcement of an arbitration provision found in an employment services agreement, which "contemplates an ongoing relationship in which the [employer's] promises only can be fulfilled by future (unspecified) acts of its employees or agents stretching well into an uncertain future." *Tucker*, 471 S.W. 3d at 797. Even though Plaintiffs do not assert breach of the Temporary Contract Employment Agreements, those agreements establish the employment relationship with ITC exclusively for the benefit of Google, which forms the context for Plaintiffs' claims. Consequently, Google is entitled to enforce the arbitration provision in the Temporary Contract Employment Agreements.

        **3.**      **Google is a third-party beneficiary of the arbitration agreements.**

A nonsignatory may also enforce an arbitration agreement as a third-party beneficiary. *Tucker*, 471 S.W. 3d at 796 n. 5 (citing *Nitro Distrb., Inc. v. Dunn*, 194 S.W. 3d 339, 345 (Mo. banc 2006). Here, the Temporary Contract Employment Agreements expressly stated that each employee's "Assignment" was to provide services exclusively for the benefit of ITC's client, Google. (*See* Dkt. 35-1 at 9, 15; 35-2 at 9, 14; 35-3 at 9, 15, 20; Dkt. 49, ¶ 14). Thus, for this additional reason, Google is entitled to enforce the arbitration agreement.

**C.**    **The Court Should Dismiss Plaintiffs' Claims Or, At A Minimum, Stay All Further Proceedings On Their Claims.**

For the reasons set forth in the suggestion in support of Google's motion, the Court should dismiss this action so that it may proceed in arbitration. *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011) ("district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration.").

## CONCLUSION

For the reasons set forth above and in the suggestions in support of Google's motion, Google respectfully requests that the Court enter an order dismissing or, in the alternative, staying Plaintiffs' claims against Google, to enable the claims to proceed in arbitration.

Respectfully submitted,

/s/ *Daniel B. Boatright*
Daniel B. Boatright, #38803
S. Jane Preuss, #50952
Jason N.W. Plowman, #67495
LITTLER MENDELSON, P.C.
1201 Walnut, Suite 1450
Kansas City, MO  64106
Telephone: 816.627.4400
Facsimile: 816.627.4444
dboatright@littler.com
jpreuss@littler.com
jplowman@littler.com

ATTORNEYS FOR DEFENDANT
GOOGLE FIBER, INC.

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on this 4th day of May, 2016, I electronically filed the above and foregoing with the Court's CM/ECF electronic system which will send a notice of electronic filing to the following counsel of record:

Morgan L. Roach
Michael T. Miller
Nicholas S. Ruble
MCCAULEY & ROACH, LLC
527 West 39th Street, Suite 200
Kansas City, MO  64111
morgan@mccauleyroach.com
mike@mccauleyroach.com
nicholas@mccauley.roach.com

ATTORNEYS FOR PLAINTIFFS

Kyle B. Russell
Lindsey L. Poling
JACKSON LEWIS P.C.
7101 College Boulevard, Suite 1150
Overland Park, KS  66210
Kyle.Russell@jacksonlewis.com
Lindsey.Poling@jacksonlewis.com

and

Daniel P. O'Donnell, Jr.
JACKSON LEWIS P.C.
7733 Forsyth Boulevard, Suite 600
St. Louis, MO  63105
Daniel.ODonnell@jacksonlewis.com

ATTORNEYS FOR DEFENDANTS
ITC SERVICE GROUP, INC., TIM SAUER,
SCOTT MITCHELL, BOB GONZALEZ,
AND PATTI SANDERSON

                          /s/ *Daniel B. Boatright*
                          Attorney for Defendant
                          Google Fiber, Inc.