MILES EHRLICH (Bar No. 237954)
miles@ramsey-ehrlich.com
ISMAIL RAMSEY (Bar No. 189820)
izzy@ramsey-ehrlich.com
AMY CRAIG (Bar No. 269339)
amy@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600 (Tel)
(510) 291-3060 (Fax)

Attorneys for Intervenor Anthony Levandowski

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, INC., *et al.*,<br><br>            Defendants. | Case No.: 17-cv-00939 WHA<br><br>**Court-Ordered Fifth Amendment Submission** |

Waymo LLC has propounded a subpoena seeking records from witness Anthony Levandowski.  *See* Dkt. 212-1.  The Court quashed some of Waymo's document demands, but enforced others.  Dkt. 230 (4/12/2017 Tx) at 70-72.  As the Court is aware, however, Mr. Levandowski has asserted that the compelled production of certain records may implicate his Fifth Amendment privilege against self-incrimination.  *See id.* at 68-84.  At the April 12, 2017 hearing, the Court directed that, in order for Mr. Levandowski to vindicate his Fifth Amendment rights, he must submit to the Court an *ex parte* privilege log and brief explaining why the production of particular records may not be compelled.  *Id*. at 77-84.

In compliance with the Court's order, Mr. Levandowski has provided an *ex parte* submission for the Court's *in camera* review detailing records — if any — that Mr. Levandowski may not constitutionally be compelled to produce. Mr. Levandowski also submits this brief to comply with the Court's directive that he "give the other side enough of the argument so that they can respond to it." Dkt. 230 (4/12/2017 Tx) at 79. In keeping with that order, below we discuss the general legal principles that should guide the Court's *in camera* consideration of any Fifth Amendment privilege log submitted by Mr. Levandowski.[1]

## I.   MR. LEVANDOWSKI'S FIFTH AMENDMENT RIGHTS ARE IMPLICATED

The Fifth Amendment privilege not to be a witness against oneself is a central tenet of our democracy. *Quinn v. United States*, 349 U.S. 155, 161 (1955). "[A]ny compulsory discovery by extorting the party's oath . . . to convict him of crime . . . is contrary to the principles of a free government . . . . It may suit the purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom." *Malloy v. Hogan*, 378 U.S. 1, 9 n.7 (1964); *see also United States v. Bright*, 596 F.3d 683, 692 (9th Cir. 2010) ("The Fifth Amendment grants persons the privilege not to provide the State with [self-incriminatory] evidence of a testimonial or communicative nature." (quotation marks omitted, alteration in original)).

A person can invoke the Fifth Amendment's protections in any proceeding — be it "civil, criminal, administrative, judicial, investigative or adjudicatory.*" Doe ex rel. Rudy-Glanzer v.*

---

[1] The *in camera* submission of information over which a litigant claims a Fifth Amendment privilege does not destroy the claimed privilege. *United States v. Bright*, 596 F.3d 683, 691 (9th Cir. 2010) (citing *United States v. Zolin*, 491 U.S. 554, 569 (1989)). However, because the Court has required Mr. Levandowski to submit a Fifth Amendment privilege log in order to press his privilege claims, revelation of any information that may be disclosed in this log would constitute a compelled testimonial disclosure in violation of Mr. Levandowski's Fifth Amendment rights.

*Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). In the civil context, "the invocation of the privilege is limited to those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner." *Id*. The "privilege against self-incrimination does not depend upon the *likelihood*, but upon the *possibility,* of prosecution and also covers those circumstances where the disclosures would not be directly incriminating, but could provide an indirect link to incriminating evidence." *Id.* (emphasis in original).

Courts have interpreted the Fifth Amendment's protections broadly, holding that the privilege applies when an answer to a question could:

- "[P]rovide an indirect link to incriminating evidence." *Doe ex rel. Rudy-Glanzer*, 232 F.3d at 1263.

- "[P]rovide a lead or clue to evidence having a tendency to incriminate." *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir. 1980).

- Disclose "a fact that could serve as a link in a chain of circumstantial evidence from which guilt might be inferred" or a "fact" that "might furnish a lead to a bit of evidence useful to the prosecution." *Maffie v. United States*, 209 F.2d 225, 228 (1st Cir. 1954).

- "[G]ive a prosecutor a starting point from which he might proceed step by step to link the witness with criminal offenses." *J.C. Penney Life Ins. Co. v. Houghton,* No. 86-2637, 1986 U.S. Dist. LEXIS 16072 at *9 (E.D. Pa. Dec. 23, 1986).

In short, the link-in-the-chain test is "broadly protective" and must be "liberally construed" by the courts. *United States v. Chandler*, 380 F.2d 993, 997, 1000 (2d Cir. 1967).

Mr. Levandowski's Fifth Amendment privilege is quite clearly implicated by the

3

allegations in this case. Waymo's complaint alleges that Mr. Levandowski was involved in "steal[ing]" and "misappropriat[ing]" intellectual property. *See, e.g.,* Dkt. 23 ¶¶ 10, 11 & p. 11 § IV.D. These claims conjure the threat of criminal sanction under 18 U.S.C. § 1832 or other similar federal or state statutes. Accordingly, merely by virtue of the accusations themselves, there is a "possibility" of prosecution, and Mr. Levandowski cannot be compelled to testify — explicitly or implicitly — about whether he took alleged trade secrets when he departed Waymo's employ, or about any other topics that might tend to inculpate him.[2]

## II. THE FIFTH AMENDMENT PROHIBITS THE COMPELLED DISCLOSURE OF RECORDS WHEN THE DISCLOSURE WOULD HAVE TESTIMONIAL ASPECTS

As this Court previously recognized, it is "uncontroversial" that an individual may invoke the Fifth Amendment privilege in responding to a request for the production of documents. Dkt. 202 at 6. Even when the contents of a document are themselves not privileged, the act of producing the document may implicate the Fifth Amendment privilege:

> The act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the [subpoenaed witness]. It also would indicate the [witness]'s belief that the papers are those described in the subpoena.

*Fisher v. United States*, 425 U.S. 391, 410 (1976); *see also United States v. Hubbell*, 530 U.S. 27, 32-36 (2000) (holding that, in response to a subpoena for documents, a subpoenaed witness

---

[2] The question whether the allegations in the complaint are accurate, of course, remains to be litigated — but that question is irrelevant to the issues before the Court in this motion, as "one of the Fifth Amendment's basic functions . . . is to protect innocent men . . . who otherwise might be ensnared by ambiguous circumstances." *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (quoting *Grunewald v. United States*, 353 U.S. 391, 421 (1957), quotation marks omitted). "[T]ruthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth." *Id.*

may refuse to produce because "the act of production itself may implicitly communicate statements of fact," such as admissions that "the papers existed, were in the [witness's] possession or control, and were authentic"); *United States v. Doe*, 465 U.S. 605, 612 (1984) ("Although the contents of a document may not be privileged, the act of producing the document may be."). "By producing documents in compliance with a subpoena, the witness admits that the documents exist, are in his possession or control, and are authentic. These types of admissions implicitly communicate statements of fact that may lead to incriminating evidence." *Doe v. United States (In re Grand Jury Subpoena)*, 383 F.3d 905, 909 (9th Cir. 2004).

### III. THE "FOREGONE CONCLUSION" INQUIRY FOCUSES ON INFORMATION KNOWN TO *THE GOVERNMENT*

In cases in which the "existence and location" of the documents under subpoena are a "foregone conclusion" and the witness "adds little or nothing to the sum total of the Government's information by conceding that he in fact has the [documents]," then no Fifth Amendment right is implicated because the "question is not of testimony but of surrender." *Fisher*, 425 U.S. at 411 (quoting *In re Harris*, 221 U.S. 274, 279 (1911)); *see also Bright*, 596 F.3d at 692; *In re Grand Jury Subpoena*, 383 F.3d at 910.

When the government seeks records from a witness who may have a Fifth Amendment privilege, the government must establish the predicates of the "foregone conclusion" exception:

> For th[e] foregone conclusion exception to apply, the government must establish its independent knowledge of three elements: the documents' existence, the documents' authenticity and respondent's possession or control of the documents. The government bears the burden of proof and must have had the requisite knowledge before issuing the summons or subpoena.

*Bright*, 596 F.3d at 692 (citation omitted); *see also In re Grand Jury Subpoena*, 383 F.3d at 911 ("It is the quantum of information possessed by the government before it issues the relevant

5

INTERVENOR ANTHONY LEVANDOWSKI'S COURT-ORDERED FIFTH AMENDMENT SUBMISSION
Case No. 17-cv-00939 WHA

subpoena that is central to the foregone conclusion inquiry." (quotation marks omitted)). "[T]he government is required . . . to establish the existence of the documents sought and [the witness]'s possession of them with 'reasonable particularity' before the existence and possession of the documents could be considered a foregone conclusion and production therefore would not be testimonial." *In re Grand Jury Subpoena*, 383 F.3d at 910 (quoting *Hubbell*, 530 U.S. at 44). "[I]t is the government's knowledge of the existence and possession of the actual documents, not the information contained therein, that is central to the foregone conclusion inquiry." *Id*. Similarly, "[t]he authenticity prong of the foregone conclusion doctrine requires the government to establish that it can independently verify that the compelled documents 'are in fact what they purport to be.'" *Id*. at 912 (quoting *United States v. Stone*, 976 F.2d 909, 911 (4th Cir. 1992)). "Independent verification not only requires the government to show that the documents sought to be compelled would be admissible independent of the witness' production of them, but also inquires into whether the government is compelling the witness to use his discretion in selecting and assembling the responsive documents, and thereby tacitly providing identifying information that is necessary to the government's authentication of the subpoenaed documents." *Id*.

This is a civil case, of course, and the government is not a litigant before this Court. Nonetheless, the "foregone conclusion" inquiry has the same focus: since the fundamental issue is whether production of records might be *incriminating*, the question in analyzing Mr. Levandowski's privilege is whether the testimonial aspects of production would provide *the government* with additional information about the existence, authenticity, possession or control of records that it did not otherwise have at the time the subpoena was issued. *See GE v. Liang*, No. CV 13-08670 DDP (VBKx), 2014 U.S. Dist. LEXIS 36243 at *13-15 (C.D. Cal. Mar. 19,

6

INTERVENOR ANTHONY LEVANDOWSKI'S COURT-ORDERED FIFTH AMENDMENT SUBMISSION
Case No. 17-cv-00939 WHA

2014); *eBay, Inc. v. Digital Point Solutions, Inc.*, No. C 08-4052 JF (PVT), 2010 U.S. Dist. LEXIS 7997 at *21-22 (N.D. Cal. Jan. 12, 2010); *see also Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974).

Undersigned counsel is not aware of any active government investigation into the matters at issue in this case, and the record currently before this Court does not evidence one. Accordingly, essentially any revelation by Mr. Levandowski about the existence, authenticity, possession or control of records would potentially add to the government's quantum of information. To the extent such information has the potential to be incriminating — either because the information is itself inculpatory in some way or because it might provide a prosecutor with a clue or an indirect link in a chain to inculpatory information — Mr. Levandowski is privileged under the constitution to refuse to provide the implicit testimony that would be involved in producing the records.

In the privilege log (submitted *ex parte* for *in camera* review), we describe any records that may — or may not — exist as to which Court-ordered production would violate Mr. Levandowski's Fifth Amendment rights.

Date:   April 19, 2017                         Respectfully submitted,

*/s/*
Miles Ehrlich
Ismail Ramsey
Amy Craig
Ramsey & Ehrlich LLP
803 Hearst Avenue
Berkeley, CA 94710

**Counsel for Intervenor Anthony Levandowski**

INTERVENOR ANTHONY LEVANDOWSKI'S COURT-ORDERED FIFTH AMENDMENT SUBMISSION
Case No. 17-cv-00939 WHA