QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br>                          Plaintiff,<br><br>          vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br>                          Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS**<br><br>Date:          April 27, 2017<br>Time:          8:00 a.m.<br>Ctrm:          8, 19th Floor<br>Judge:        Honorable William H. Alsup<br>Trial Date:  October 2, 2017 |

## I.      EQUITABLE ESTOPPEL DOES NOT APPLY UNDER ANY THEORY

Uber's Motion focused exclusively on the "concerted misconduct" form of equitable estoppel. (Dkt. 115 at 6-9.)  But as Waymo showed, and Uber fails to substantively rebut, this type of equitable estoppel requires claims against a defendant that is a signatory to the arbitration agreement at issue, and is therefore inapplicable here.[1]  (Dkt. 204 at 11.)   So Uber's Reply – which is longer than its Motion – now pivots to the "reliance" theory of equitable estoppel.  (Dkt. 243 at 4.)  Notably, Uber does not dispute that the standard for "reliance estoppel" was not quoted or applied in Uber's Motion, and has therefore been waived.  (*See* Dkt. 115 at 6-9.)  While Uber's new argument should be ignored altogether for not being raised in Uber's Motion, it too is without merit.  The "reliance" form of equitable estoppel does not apply here either.  That is clear from the two cases that Uber concedes set forth the proper standard, *Goldman* and *Kramer*.[2]  (Dkt. 243 at 4.)

The California Court of Appeals held in *Goldman* that the "reliance" form of equitable estoppel did not apply because the plaintiff's "allegations depend solely on the actions of [the non-signatory defendants], and not on the terms of the [arbitration agreements], for their success." *Id.*, 173 Cal. App. 4th at 230.  The same is true here.  Waymo's claims "are fully viable without reference to

---

[1]   Uber cites nine *new* cases that it suggests show a non-signatory defendant can compel arbitration when claims are not asserted against a signatory.  (Dkt. 204 at 11-12, n.6.)   However, these cited cases either do not apply the "concerted misconduct" form of equitable estoppel at all, or actually **do** include signatory defendants in the case.  Thus, Uber still has not cited a single case holding that the "concerted misconduct" form of equitable can apply **without** a signatory defendant. And as explained in Waymo's Opposition, *Torbit, Inc. v. Datanyze, Inc.*, No. 5:12-CV-05889-EJD, 2013 WL 572613 (N.D. Cal. Feb. 13, 2013) involved a signatory defendant (and an abrogated standard for the "reliance" form of equitable estoppel).  Uber does not dispute this either.

[2]   According to Uber, "Waymo asserts that it is virtually unheard of for a nonsignatory to an arbitration agreement to compel a signatory to arbitrate its claims. Dkt. 204 at 9. That is false." (Dkt. 243 at 2.)  To the contrary, Waymo asserted that "[u]nder California law, there are 'limited exceptions' to the rule that 'only parties to an arbitration contract may enforce it or be required to arbitrate'" – which is true.  (Dkt. 204 at 9, quoting *Nguyen v. Tran*, 157 Cal. App. 4th 1032, 1036 (2007).)  What Waymo **did** show is that none of those exceptions, including any theory of equitable estoppel, apply here.  Uber also suggests that Waymo ignored the "relevant question" of how California courts, rather than Ninth Circuit courts, apply equitable estoppel.  (Dkt. 243 at 2.)  This is false too.   Waymo repeatedly cited the leading California case, *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209 (2009), as well as numerous Ninth Circuit cases, binding here, applying the standard set forth in *Goldman*.  (Dkt. 204, at 9-15.)  Uber's complaint rings particularly hollow given that *Goldman* is the only California state court equitable estoppel case that **Uber** cited in its Motion.

---

the terms of" the Levandowski Employment Agreements.  Thus, as in *Goldman*,  "the basis for equitable estoppel – relying on an agreement for one purpose while disavowing the arbitration clause of the agreement – is completely absent."  *Id.*  The *Goldman* court also expressly rejected the suggestion that equitable estoppel can apply simply because a written agreement containing an arbitration clause is "a necessary step in effectuating" tortious conduct by a nonsignatory; rather "the plaintiff's allegations must rely on or depend on the terms of the written agreement, **not simply on the fact that an agreement exists**."  *Id.* at 231 (emphasis added, internal quotation marks and citations omitted).  As the *Goldman* court observed:

> In this case, Plaintiffs are not trying to 'have it both ways' by seeking to hold the nonsignatory liable pursuant to duties imposed by the agreement, but at the same time denying applicability of the agreement's arbitration clause because Plaintiffs are not relying on the document to hold the nonsignatory defendant liable.

*Id.* (citing *Palmer Ventures LLC v. Deutsche Bank AG*, 254 F. App'x 426 (5th Cir. 2007)) (internal quotation marks omitted).  Similarly, here, equitable estoppel does not permit Uber to enforce the arbitration agreement because Waymo is not relying on the Levandowski Employment Agreements to hold Uber liable.[3]

---

[3]  Courts routinely recognize these same principles in holding that equitable estoppel does not apply where, as here, the plaintiff's claims against nonsignatories are founded in statutory or common law and exist independently of the terms of any contract.  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1215-16 (9th Cir. 2016) (equitable estoppel does not apply because "the claims against [the signatory] arise under the MCRA and not out of obligations imposed by the 2014 Agreement"); *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (nonsignatory "may not compel [plaintiff] to arbitrate his claims on the basis of equitable estoppel" where plaintiff's RICO and Washington state law claims were "statutory claims that are separate from the contract itself"); *Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851, 866 (N.D. Cal. 2015) (denying motion to compel arbitration by nonsignatory because "Plaintiff's [statutory] claims for relief . . . would be cognizable even if Plaintiff Nitsch had worked for DreamWorks **without** a written employment agreement. Simply put, Plaintiff Nitsch does 'not seek to enforce or challenge the terms, duties, or obligations' of the employment agreements, but instead takes issue with alleged wrongful conduct that occurred outside the scope of the employment agreements.") (quoting *Kramer*, 705 F.3d at 1132, emphasis in original); *In re Carrier IQ, Inc. Consumer Privacy Litig.*, No. C-12-MD-2330 EMC, 2014 WL 1338474, at *9 (N.D. Cal. Mar. 28, 2014) (denying motion to compel arbitration and rejecting equitable estoppel theory because "the fact that the installation of the CIQ software might not have occurred absent a service agreement between the wireless carriers and Plaintiffs does not satisfy the test of reliance or intertwining" anymore than the contracts in *Murphy* or *Kramer*).

1    As the Ninth Circuit subsequently held in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th

2    Cir. 2013), the "correct analysis" for reliance equitable estoppel is "whether [Waymo] would have a

3    **claim** independent of the existence of the [Levandowski Employment Agreements]." *Id.* at 1131

4    (citing *Goldman*, 173 Cal. App. 4th at 222) (emphasis in original).  "Reliance" estoppel, however,

5    does not apply here because much like the plaintiffs' claims in *Kramer* (who were not equitably

6    estopped from litigating their claims), Waymo's tort claims are based on statutory rights that "ar[i]se

7    independently of the terms of the agreements containing arbitration provisions." *Id.* at 1132.  It is

8    irrelevant that Uber's trade secret theft, through its unlawful acquisition and use of Waymo trade

9    secrets downloaded by Mr. Levandowski, **would also be** a breach of Mr. Levandowski's employment

10   agreements.  "[E]quitable estoppel applies 'when the signatory must rely on the terms of the written

11   agreement in asserting its **claims** against the **nonsignatory**.'" *Id.* at 1131 (quoting *Goldman*, 173 Cal.

12   App. 4th at 222) (emphasis added).  In bringing trade secret claims against Uber for improperly

13   acquiring and using those designs, Waymo is not "seek[ing] to enforce or challenge the terms, duties,

14   or obligations of the [Levandowski Employment Agreements]." *Kramer*, 705 F.3d at 1132.  Equitable

15   estoppel does not apply.

16   Uber is mistaken in claiming Waymo must rely on the terms of the Levandowski Employment

17   Agreements to establish that it kept its trade secrets confidential.  As Waymo demonstrated in its

18   Opposition, under California law, employees owe a duty of loyalty to their employers – one that

19   includes a duty of confidentiality regarding confidential matters.  (Dkt. 204 at 13-14.)  Uber cites no

20   authority to the contrary, nor is Waymo aware of any.[4]  Uber suggests that the confidentiality

21   provisions of the Levandowski Employment Agreements supersede Mr. Levandowski's duty of

22   loyalty to Waymo.  (Dkt. 243 at 7.)  In support of this idea, Uber cites two unreported, out of Circuit

23   cases – neither of which address an employee's duty of loyalty under California law.  (*Id.* at 7 n.5.)  In

24

---

25   [4]   Moreover, Waymo has substantial evidence of its reasonable measures to protect trade secret
     information that are independent of the specific terms of its employee agreements, including (but not

26   limited to) encrypting and requiring passwords to access networks hosting such information,
     encrypting and password protecting devices provided to employees, securing physical facilities, and

27   marking confidential and proprietary information with visible legends designating them as such. (Dkt.
     24 at 6.)

28

1  fact, a written employment agreement does not supersede an employee's duty of loyalty, as evidenced

2  by numerous cases allowing an employer to bring claims for both breach of contract and breach of the

3  duty of loyalty.  *E.D.C. Techs., Inc. v. Seidel*, No. 16-CV-03316-SI, 2016 WL 6216805, at *4 (N.D.

4  Cal. Oct. 25, 2016).

5       Uber also argues that Waymo must rely on the terms of the Levandowski Employment

6  Agreements to show that Uber acquired Waymo's trade secrets by improper means, quoting Waymo's

7  First Amended Complaint at length.   (Dkt. 243 at 7-9.)   But not a single one of the excerpts it quotes

8  mentions the Levandowski Employment Agreements, let alone relies on them.

9  **II.**    **GOOGLE HAS NOT TAKEN INCONSISTENT POSITIONS IN OTHER CASES**

10       Neither Waymo nor its parent companies, Google Inc. or Alphabet Inc., have taken a position

11  inconsistent with the positions taken here.  (Dkt. 200.)  As stated in the Response to the Court's April

12  4, 2017 Order re Arbitration Agreement, the present scenario, *i.e.* asserting a contractual arbitration

13  clause to cover litigation claims between parties, when none of the parties is a signatory to the relevant

14  contract, is nowhere present in the history of Waymo or its parent companies, Google Inc. or Alphabet

15  Inc.  (*Id.* at 1.)  Further, contrary to Uber's implication in its Reply (Dkt. 243 at 14),  Waymo

16  specifically identified *Hart* in its submission and explained why *Hart* was inapposite to the present

17  situation.  (Dkt. 200 at 2; Dkt. 200-2 at 5-6.)  As Google explained, but Uber ignores, the signatories

18  to the contract at issue had already agreed that arbitration was proper, and thus Google never had to

19  move to compel arbitration.  (*Id.*)  In short, nothing in Waymo's submission is analogous to the

20  scenario Uber asserts here, and Uber offers nothing to the contrary in rebuttal.

21  **III.**    **THE PRELIMINARY INJUNCTION HEARING SHOULD PROCEED**

22       That a yet-to-be constituted arbitration panel could eventually get itself up to speed on the

23  issues surrounding Waymo's request for provisional relief, as Uber now asserts in its Reply, is of no

24  moment.  The Court is already fully apprised of the issues, including Uber's delay tactics in seeking

25  arbitration and providing necessary discovery, and the Court is presently able to rule on Waymo's

26  preliminary injunction motion.  Moreover, given Uber's litigation tactics to date, it is very likely that

27  if Waymo were forced to arbitrate its claims, Waymo would in any event find itself right back in front

28  of this Court to enforce any provisional or permanent injunctive relief eventually granted by the

arbitration panel.  The preliminary injunction hearing should therefore proceed as scheduled pursuant to the California Code of Civil Procedure provisions incorporated into the Levandowski Employment Agreements and supporting Ninth Circuit authority.

### **CONCLUSION**

For the foregoing reasons and those set forth in Waymo's Opposition brief, Waymo respectfully requests that the Court deny Uber's motion.

DATED:  April 24, 2017                QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                      By   */s/ Charles K. Verhoeven*
                                           Charles K. Verhoeven
                                           Attorneys for Plaintiff Waymo LLC