# EXHIBIT 66
# FILED UNDER SEAL

ATTORNEYS EYES ONLY

1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                  SAN FRANCISCO DIVISION

4                       ---oOo---

5

6    WAYMO LLC,

7          Plaintiff,

8    vs.                        No. 3:17-cv-00939-WHA

9    UBER TECHNOLOGIES, INC.;

     OTTOMOTTO LLC; OTTO TRUCKING,

10   INC.,

11         Defendants.

     _____/

12

13

14                ATTORNEYS' EYES ONLY

15

16    VIDEOTAPED DEPOSITION OF ANTHONY LEVANDOWSKI

17              SAN FRANCISCO, CALIFORNIA

18               FRIDAY, APRIL 14, 2017

19

20

21

22   BY:  ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~

23   CSR LICENSE NO. 9830

24   JOB NO. 2594023

25   Pages 1 - 184

                                           Page 1

ATTORNEYS EYES ONLY

**Page 2**

```
 1        UNITED STATES DISTRICT COURT
 2       NORTHERN DISTRICT OF CALIFORNIA
 3         SAN FRANCISCO DIVISION
 4            ---oOo---
 5 WAYMO LLC,
 6      Plaintiff,
 7 vs.              No. 3:17-cv-00939-WHA
 8 UBER TECHNOLOGIES, INC.;
   OTTOMOTTO LLC; OTTO TRUCKING,
 9 INC.,
10      Defendants.
   _____/
11
12       Videotaped Deposition of Anthony
13 Levandowski, taken on behalf of the Plaintiffs, on
14 April 14, 2017, at Quinn Emanuel Urquhart &
15 Sullivan, 50 California street, Suite 2200,
16 San Francisco, California 94111, beginning
17 9:05 a.m., and commencing at 3:13 p.m., Pursuant
18 to Notice, and before me, ANDREA M. IGNACIO, CSR,
19 RPR, CRR, CLR ~ License No. 9830.
20
21
22
23
24
25
```

**Page 4**

```
 1 A P P E A R A N C E S:  (Cont.)
 2
 3   FOR THE DEFENDANTS:
 4      MORRISON & FOERSTER LLP
 5      By:  WENDY RAY, Esq.
 6      707 Wilshire Boulevard, Suite 6000
 7      Los Angeles, California 90017
 8      Phone:  213.892.5446
 9      wray@mofo.com
10
11
12   ALSO PRESENT:  Nicole T. Bartow, Uber
13         Shana Stanton, Waymo Inc.
14         Jeffrey Anderson, Videographer
15
16          ---oOo---
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1 A P P E A R A N C E S:
 2
 3   FOR THE PLAINTIFFS:
 4      QUINN EMANUEL URQUHART & SULLIVAN LLP
 5      By:  DAVID A. PERLSON, Esq.
 6         PATRICK SCHMIDT, Esq.  (Los Angeles)
 7      50 California Street, Suite 2200
 8      San Francisco, California 94111
 9      Phone:  415.875.6600
10      davidperlson@quinnemanuel.com
11      patrickschmidt@quinnemanuel.com
12
13   FOR THE WITNESS:
14      RAMSEY EHRLICH LLP
15      By:  MILES EHRLICH, Esq.
16         ISMAIL RAMSEY, Esq.
17      803 Hearst Avenue
18      Berkeley, California 94710
19      Phone:  510.548.3600
20      miles@ramsey-ehrlich.com
21      ismail@ramsey-ehrlich.com
22
23
24
25
```

**Page 5**

```
 1              I N D E X
 2
 3 WITNESS:  Anthony Levandowski
 4
 5 EXAMINATION                    PAGE
 6 Mr. Perlson                8, 179
 7 Ms. Ray                       165
 8
 9
10
11         E X H I B I T S
12 EXHIBIT                        PAGE
13 Exhibit 25   Schematic for Uber's Fuji board   135
14 Exhibit 26   PCB Configuration for the Fuji     142
15      board
16
17          ---oOo---
18
19
20
21
22
23
24
25
```

Veritext Legal Solutions
866 299-5127

1        SAN FRANCISCO, CALIFORNIA
2        FRIDAY, APRIL 14, 2017
3           9:05 A.M.
4
5
6
7        THE VIDEOGRAPHER:  Good morning.          09:03
8        THE WITNESS:  Good morning.              09:05
9        MR. EHRLICH:  Good morning.              09:05
10       THE VIDEOGRAPHER:  We are on the record at    09:05
11   9:05 a.m. on April 14th, 2017.
12       This is the video recorded deposition of     09:06
13   Anthony Levandowski.                         09:06
14       My name is Jeffrey Anderson, here with our    09:06
15   court reporter, Andrea Ignacio.  We're here from    09:06
16   Veritext Legal Solutions at the request of counsel for  09:06
17   the defendant.                               09:06
18       This deposition is being held at         09:06
19   50 California Street in San Francisco, California.    09:06
20       The caption of this case is Waymo, LLC versus    09:06
21   Uber Technologies.  Case No. 317-CV-00939 WHA.      09:06
22       Please note that audio and video recording    09:06
23   will take place, unless all parties agree to go off    09:06
24   the record.  Microphones are sensitive and may pick up  09:06
25   whispers, private conversations, and cellular      09:06

Page 6

1   interference, so please be aware of that.        09:06
2       Please state your name and the firm you      09:06
3   represent, beginning with the noticing attorney.
4       MR. PERLSON:  I just want to correct one     09:06
5   thing you said.  Plaintiff Waymo requested the      09:06
6   deposition, not the defendant.                  09:07
7       THE VIDEOGRAPHER:  I apologize about that.    09:07
8       MR. PERLSON:  David Perlson from Quinn       09:07
9   Emanuel, on behalf of plaintiff Waymo.          09:07
10       MR. SCHMIDT:  Patrick Schmidt from Quinn     09:07
11   Emanuel, on behalf of plaintiff Waymo.          09:07
12       MS. STANTON:  Shana Stanton from Waymo.      09:07
13       MS. BARTOW:  Nicole Bartow, in-house at Uber.  09:07
14       MS. RAY:  Wendy Ray of Morrison & Foerster,    09:07
15   on behalf of defendants Uber Technologies, Ottomoto,    09:07
16   and Otto Trucking.                           09:07
17       MR. EHRLICH:  Miles Ehrlich from Ramsey &    09:07
18   Ehrlich, on behalf of the deponent, Anthony      09:07
19   Levandowski.                                 09:07
20       THE VIDEOGRAPHER:  Thank you.             09:07
21       The witness will be sworn in, and counsel may  09:07
22   begin the examination.                       09:07
23   ///                                      09:07
24   ///                                      09:07
25   ///                                      09:07

Page 7

1            ANTHONY LEVANDOWSKI,             09:06
2       having been sworn as a witness
3       by the Certified Shorthand Reporter,
4          testified as follows:
5
6              EXAMINATION
7   BY MR. PERLSON:
8       Q  Can you please state and spell your name for   09:07
9   the record.                                 09:07
10      A  Anthony Levandowski.  A-N-T-H-O-N-Y,       09:07
11   L-E-V-A-N-D-O-W-S-K-I.                       09:07
12      Q  And where do you live?                  09:07
13      A  I live in Oakland, California.           09:07
14      Q  And have you ever been deposed before?     09:07
15      A  I have not.                           09:08
16      Q  Well, you understand that you're testifying   09:08
17   under oath, the same oath that you would take if you    09:08
18   were testifying in front of a jury?            09:08
19      A  I understand that.                     09:08
20      Q  Is there any reason you can't give complete   09:08
21   and accurate testimony today?                 09:08
22      A  I don't see why not.                    09:08
23      Q  I'm going to try to be as clear as I can.    09:08
24   But, if I'm not clear, please do let me know, and I'll  09:08
25   do my best to rephrase the question.           09:08

Page 8

1       Is that acceptable?                       09:08
2       A  That sounds great.                      09:08
3       Q  And, you need to give audible answers, yes or  09:08
4   no, rather than nodding of the head or shaking of the   09:08
5   head.                                      09:08
6       A  Of course.  I understand that.           09:08
7       Q  I see you have a couple of pieces of paper in  09:08
8   front of you.  Can you tell me what those are.       09:08
9       A  Yeah, my counsel gave me two pieces of paper.  09:08
10   They say very similar things.  Do you want me to read   09:08
11   them out to you?                            09:08
12      Q  No.  I suspect that you'll probably read them   09:08
13   later.                                    09:08
14      A  You'll hear them, most likely.           09:09
15      Q  Yeah.  Okay.                          09:09
16       Well, where do you work currently?         09:09
17      A  I work at Uber.                        09:09
18      Q  Okay.  And what's your position there?      09:09
19      A  I'm vice president of engineering.        09:09
20      Q  And in what aspect of -- what -- what -- what  09:09
21   are your responsibilities as vice president of       09:09
22   engineering?                                09:09
23       MR. EHRLICH:  I'm going to instruct you to    09:09
24   invoke your constitutional rights.            09:09
25       THE WITNESS:  I'll read from the paper:      09:09

Page 9

3 (Pages 6 - 9)

1    "On the advice and direction of my counsel, I   09:09
2    respectfully decline to answer.  And I assert the   09:09
3    rights guaranteed to me under the Fifth Amendment of   09:09
4    the Constitution of the United States."   09:09
5         MR. PERLSON:  Q.  How long have you worked at   09:09
6    Uber?   09:09
7         A  On the advice and direction of my counsel, I   09:09
8    respectfully decline to answer.  And I assert the   09:09
9    rights guaranteed to me under the Fifth Amendment of   09:09
10   the Constitution of the United States.   09:09
11        Q  You are a former employee of Google; correct?   09:10
12        A  That's correct.   09:10
13        Q  When did you leave the employ of Google?   09:10
14        MR. EHRLICH:  You can answer.   09:10
15        THE WITNESS:  Okay.  In January of 2016.  I   09:10
16   don't know the exact date, yeah.   09:10
17        MR. PERLSON:  Q.  When you worked at Google,   09:10
18   you received tens of millions of dollars in   09:10
19   compensation from Google; is that accurate?   09:10
20        MR. EHRLICH:  I'm going to instruct you to   09:10
21   assert your rights.   09:10
22        THE WITNESS:  Okay.  On the advice and   09:10
23   direction of my counsel, I respectfully decline to   09:10
24   answer.  And I assert the rights guaranteed to me   09:10
25   under the Fifth Amendment of the Constitution of the   09:10
                                          Page 10

1    United States.   09:10
2         MR. PERLSON:  Q.  You understood that, while   09:10
3    you were at Google, that you were obligated to keep   09:10
4    Google sensitive information confidential?   09:10
5         A  On the advice of -- on the -- on the advice   09:10
6    and direction of my counsel, I respectfully decline to   09:11
7    answer.  And I assert the rights guaranteed to me   09:11
8    under the Fifth Amendment of the Constitution of the   09:11
9    United States.   09:11
10        Q  You understand that, while you were at   09:11
11   Google, you were not allowed to use Google's   09:11
12   confidential information for a competitor?   09:11
13        A  On the advice and direction of my counsel, I   09:11
14   respectfully decline to answer.  And I assert the   09:11
15   rights guaranteed to me under the Fifth Amendment of   09:11
16   the Constitution of the United States.   09:11
17        Q  Mr. Levandowski, you were in discussions with   09:11
18   Uber for months prior to your departure from Google   09:11
19   regarding working for Uber; correct?   09:11
20        A  On the advice of my counsel, I respectfully   09:11
21   decline to answer.  And I assert the rights guaranteed   09:11
22   to me under the Fifth Amendment of the Constitution of   09:11
23   the United States.   09:11
24        Q  You and Uber discussed how you would form a   09:11
25   new company while you were employed by Google?   09:11
                                          Page 11

1         A  On the advice and direction of my counsel, I   09:11
2    respectfully decline to answer.  And I assert the   09:12
3    rights guaranteed to me under the Fifth Amendment of   09:12
4    the Constitution of the United States.   09:12
5         Q  You and Uber discussed that your new company   09:12
6    would eventually be acquired by Uber while you were   09:12
7    still employed at Google?   09:12
8         A  On the advice and direction of my counsel, I   09:12
9    respectfully decline to answer.  And I assert the   09:12
10   rights guaranteed to me under the Fifth Amendment of   09:12
11   the Constitution of the United States.   09:12
12        Q  You began forming your new company that would   09:12
13   eventually be acquired by Uber in early 2016; is that   09:12
14   correct?   09:12
15        A  On the advice and direction of my counsel, I   09:12
16   respectfully decline to answer.  And I assert the   09:12
17   rights guaranteed to me under the Fifth Amendment of   09:12
18   the Constitution of the United States.   09:12
19        Q  That new company eventually became Otto;   09:12
20   correct?   09:12
21        A  On the advice and direction of my counsel, I   09:12
22   respectfully decline to answer.  And I assert the   09:12
23   rights guaranteed to me under the Fifth Amendment of   09:12
24   the Constitution of the United States.   09:12
25        Q  While you were still employed by Google, you   09:12
                                          Page 12

1    recruited engineers to join your new company so that   09:12
2    your new company could replicate Google's LiDar   09:13
3    technology; correct?   09:13
4         A  On the advice and direction of my counsel, I   09:13
5    respectfully decline to answer.  And I assert the   09:13
6    rights guaranteed to me under the Fifth Amendment of   09:13
7    the Constitution of the United States.   09:13
8         Q  You made Uber aware of your plan to replicate   09:13
9    Google's LiDar technology for your new company;   09:13
10   correct?   09:13
11        A  On the -- on the advice and direction of my   09:13
12   counsel, I respectfully decline to answer.  And I   09:13
13   assert the rights guaranteed to me under the Fifth   09:13
14   Amendment of the Constitution of the United States.   09:13
15        Q  Travis Kalanick recruited you personally to   09:13
16   do -- to work for Uber; correct?   09:13
17        A  On the advice and direction of my counsel, I   09:13
18   respectfully decline to answer.  And I assert the   09:13
19   rights guaranteed to me on the Fifth Amendment --   09:13
20   under the Fifth Amendment of the United States -- the   09:13
21   Fifth Amendment of the Constitution of the United   09:14
22   States.   09:14
23        Q  Mr. Kalanick was aware of your plan to   09:14
24   replicate Google's LiDar technology for your new   09:14
25   company; correct?   09:14
                                          Page 13

4 (Pages 10 - 13)

1    A  On the advice and direction of my counsel, I    09:14
2  respectfully decline to answer.  And I assert the    09:14
3  rights guaranteed to me under the Fifth Amendment of   09:14
4  the Constitution of the United States.    09:14
5    Q  In fact, Uber -- Uber encouraged you to    09:14
6  replicate Google's LiDar technology at Otto; correct?  09:14
7    A  On the advice and direction of my counsel, I    09:14
8  respectfully decline to answer.  And I assert the    09:14
9  rights guaranteed to me under the Fifth Amendment of   09:14
10  the Constitution of the United States.    09:14
11    Q  And Mr. Kalanick encouraged you to replicate   09:14
12  Google's LiDar technology at Otto; correct?    09:14
13    A  On the advice and direction of my counsel, I    09:14
14  respectfully decline to answer.  And I assert the    09:14
15  rights guaranteed to me under the Fifth Amendment of   09:14
16  the Constitution of the United States.    09:14
17    Q  Uber encouraged you to replicate Google's   09:14
18  LiDar technology so that it would be available to Uber  09:15
19  when it acquired Otto; correct?    09:15
20    A  On the advice and direction of my counsel, I    09:15
21  respectfully decline to answer.  And I assert the    09:15
22  rights guaranteed to me under the Fifth Amendment of   09:15
23  the Constitution of the United States.    09:15
24    Q  You took over 14,000 confidential documents   09:15
25  from Google prior to your departure from Google;    09:15

Page 14

1  the Constitution of the United States.    09:16
2    Q  Uber knew that you took 14,000 confidential   09:16
3  documents from Google in order to accelerate your    09:16
4  development of LiDar technology at Otto --    09:16
5    A  On --    09:16
6    Q  -- correct?    09:16
7    A  On the advice and direction of my counsel, I    09:16
8  respectfully decline to answer.  And I assert the    09:16
9  rights guaranteed to me under the Fifth Amendment of   09:16
10  the Constitution of the United States.    09:16
11    Q  Uber encouraged you to take the    09:16
12  14,000 confidential Google documents so that the    09:16
13  information would be available to Uber when it    09:16
14  acquired Otto; correct?    09:16
15    A  On the -- on the advice and direction of my    09:16
16  counsel, I respectfully decline to answer.  And I    09:17
17  assert the rights guaranteed to me under the Fifth    09:17
18  Amendment of the Constitution of the United States.   09:17
19    Q  Uber helped you conceal the fact that you had   09:17
20  taken 14,000 confidential documents from Google;    09:17
21  correct?    09:17
22    A  On the advice and direction of my counsel, I    09:17
23  respectfully decline to answer.  And I assert the    09:17
24  rights guaranteed to me under the Fifth Amendment of   09:17
25  the Constitution of the United States.    09:17

Page 16

1  correct?    09:15
2    A  On the advice and direction of my counsel, I    09:15
3  respectfully decline to answer.  And I assert the    09:15
4  rights guaranteed to me under the Fifth Amendment of   09:15
5  the Constitution of the United States.    09:15
6    Q  You made these 14,000 confidential documents,  09:15
7  that you took from Google, available to your new    09:15
8  company, Otto; correct?    09:15
9    A  On the advice and direction of my counsel, I    09:15
10  respectfully decline to answer.  And I assert the    09:15
11  rights guaranteed to me under the Fifth Amendment of   09:15
12  the Constitution of the United States.    09:15
13    Q  Among the 14,000 documents you took from    09:15
14  Google, there were documents that reflected Google's   09:15
15  proprietary LiDar technology; correct?    09:15
16    A  On the advice and direction of my counsel, I    09:16
17  respectfully decline to answer.  And I assert the    09:16
18  rights guaranteed to me under the Fifth Amendment of   09:16
19  the Constitution of the United States.    09:16
20    Q  You took the 14,000 documents from Google so   09:16
21  that you could get -- so that you could more quickly   09:16
22  replicate Google's technology at Otto; correct?    09:16
23    A  On the advice and direction of my counsel, I    09:16
24  respectfully decline to answer.  And I assert the    09:16
25  rights guaranteed to me under the Fifth Amendment of   09:16

Page 15

1    Q  Uber developed a plan in which a joint    09:17
2  defense agreement would be entered for the sole    09:17
3  purpose of hiding the fact that you had taken    09:17
4  14,000 confidential documents from Google?    09:17
5    MS. RAY:  I instruct you not to answer on the  09:17
6  basis of attorney-client privilege.    09:17
7    MR. PERLSON:  Q.  Are you aware of the    09:18
8  existence of a due diligence report regarding that --  09:18
9  regarding Uber's acquisition of Otto?    09:18
10    MS. RAY:  Can you hold on a second.    09:18
11    You may answer.    09:18
12    MR. EHRLICH:  I'm going to instruct you to    09:18
13  decline to answer based on attorney-client privilege,  09:18
14  and also instruct you to assert your rights.    09:18
15    THE WITNESS:  Okay.  On the --    09:18
16    MS. RAY:  Join in that instruction on    09:18
17  attorney-client privilege.    09:18
18    MR. PERLSON:  Can you identify the attorney   09:18
19  and the client in that instruction.    09:18
20    MR. EHRLICH:  The attorney and the client in   09:19
21  that instruction?    09:19
22    The client is Mr. Levandowski, and the    09:19
23  attorney at the time was John Gardner, and other    09:19
24  attorneys associated with Uber and Otto, whose names I  09:19
25  don't know at the present time.    09:19

Page 17

5 (Pages 14 - 17)

**Page 18**

1    And it's related to joint defense common    09:19
2 interest privilege that's been under discussion before  09:19
3 Judge Alsup.    09:19
4    MR. PERLSON:  Q.  Do you want to read your --  09:19
5    MR. EHRLICH:  Please go ahead.    09:19
6    MS. RAY:  Well, he's gotten an instruction    09:19
7 not to answer; right?    09:19
8    Miles, you're instructing him not to answer?  09:19
9    MR. EHRLICH:  Yeah, that's a good point.  The  09:19
10 instruction is not to answer.    09:19
11    And you're going to follow my instruction?    09:19
12    THE WITNESS:  I will follow your instruction.  09:19
13    MR. EHRLICH:  Okay.    09:19
14    MR. PERLSON:  Q.  Mr. Levandowski, you and    09:19
15 Uber discussed how you should exploit Google's    09:20
16 confidential information regarding LiDar technology in  09:20
17 a way that wouldn't subject Uber to liability for that  09:20
18 use; correct?    09:20
19    A  On the advice and direction of my counsel, I  09:20
20 respectfully decline to answer.  And I assert the    09:20
21 rights guaranteed to me under the Fifth Amendment of  09:20
22 the Constitution of the United States.    09:20
23    Q  Before you left Google, you and Uber    09:20
24 discussed you starting a new company in January --    09:20
25 January 2016?    09:20

**Page 19**

1    A  On the advice and direction of my counsel, I  09:20
2 respectfully decline to answer.  And I assert the    09:20
3 rights guaranteed to me under the Fifth Amendment of  09:20
4 the Constitution of the United States.    09:20
5    Q  You and Uber decided that you should start a  09:20
6 new company so that you could start exploiting    09:20
7 Google's confidential information without leaving a    09:20
8 trail at Uber; correct?    09:20
9    A  On the advice and direction of my counsel, I  09:21
10 respectfully decline to answer.  And I assert the    09:21
11 rights guaranteed to me under the Fifth Amendment of  09:21
12 the Constitution of the United States.    09:21
13    Q  You and Uber had an understanding by at least  09:21
14 early 2016 that your new company would be acquired by  09:21
15 Uber; correct?    09:21
16    A  On the advice and direction of my counsel, I  09:21
17 respectfully decline to answer.  And I assert the    09:21
18 rights guaranteed to me under the Fifth Amendment of  09:21
19 the Constitution of the United States.    09:21
20    Q  In January of 2016, you and Uber discussed    09:21
21 how to cover up the fact that you had taken 14,000    09:21
22 confidential documents from Google; correct?    09:21
23    A  On the advice and direction of my counsel, I  09:21
24 respectfully decline to answer.  And I assert the    09:21
25 rights guaranteed to me under the Fifth Amendment of  09:21

**Page 20**

1 the Constitution of the United States.    09:21
2    Q  Throughout the first half of 2016 you did, in  09:21
3 fact, use the 14,000 confidential Google documents    09:21
4 that you took; correct?    09:21
5    A  On the advice and direction of my counsel, I  09:21
6 respectfully decline to answer.  And I assert the    09:21
7 rights guaranteed to me under the Fifth Amendment of  09:22
8 the Constitution of the United States.    09:22
9    Q  Throughout the first half of 2016, you used    09:22
10 the 14,000 confidential Google documents that you took  09:22
11 in order to accelerate your development of LiDar    09:22
12 systems at Otto; correct?    09:22
13    A  On the advice and direction of my counsel, I  09:22
14 respectfully decline to answer.  And I assert the    09:22
15 rights guaranteed to me under the Fifth Amendment of  09:22
16 the Constitution of the United States.    09:22
17    Q  And, even while you were employed by Uber,    09:22
18 you used the 14,000 confidential Google documents that  09:22
19 you took in order to accelerate the development of    09:22
20 LiDar systems at Uber?    09:24
21    A  On the advice and direction of my counsel, I  09:22
22 respectfully decline to answer.  And I assert the    09:22
23 rights guaranteed to me under the Fifth Amendment of  09:22
24 the Constitution of the United States.    09:22
25    THE WITNESS:  Can you stop a minute?  The sun  09:22

**Page 21**

1 has moved, and there's a glare.  If we --    09:22
2    MR. PERLSON:  Why don't we take a break.    09:22
3    THE VIDEOGRAPHER:  Going off the record.  The  09:23
4 time is 9:22 a.m.    09:23
5    (Recess taken.)    09:23
6    THE VIDEOGRAPHER:  We are back on the record.  09:24
7 The time is 9:24 a.m.    09:24
8    MR. PERLSON:  Q.  Mr. Levandowski, the    09:24
9 14 confident- -- let me start over again.    09:25
10    Mr. Levandowski, the 14,000 confidential    09:25
11 documents that you took from Google allowed you to    09:25
12 develop LiDar systems at Otto more quickly than if    09:25
13 you'd started with a clean sheet design?    09:25
14    A  On the advice and direction of my counsel, I  09:25
15 respectfully decline to answer.  And I assert the    09:25
16 rights guaranteed to me under the Fifth Amendment of  09:25
17 the Constitution of the United States.    09:25
18    Q  Mr. Levandowski, your use of the    09:25
19 14,000 confidential documents you took from Google    09:25
20 allowed you to sell Otto to Uber for over $680 million  09:25
21 in just a few months?    09:25
22    A  On the advice and direction of my counsel, I  09:25
23 respectfully decline to answer.  And I assert the    09:25
24 rights guaranteed to me under the Fifth Amendment of  09:25
25 the Constitution of the United States.    09:25

6 (Pages 18 - 21)

| | |
|---|---|
| 1  Q  You disclosed the status of your development   09:25 | 1  respectfully decline to answer.  And I assert the   09:28 |
| 2  of LiDar systems at Otto before the acquisition of   09:25 | 2  rights guaranteed to me under the Fifth Amendment of   09:28 |
| 3  Otto by Uber?   09:25 | 3  the Constitution of the United States.   09:28 |
| 4  A  On the advice and direction of my counsel, I   09:26 | 4  Q  You used confidential information from the   09:28 |
| 5  respectfully decline to answer.  And I assert the   09:26 | 5  14,000 files you took from Google to develop the Fuji   09:28 |
| 6  rights guaranteed to me under the Fifth Amendment of   09:26 | 6  device at Uber; correct?   09:28 |
| 7  the Constitution of the United States.   09:26 | 7  A  On the advice and direction of my counsel, I   09:28 |
| 8  Q  The advanced status of Otto's LiDar systems   09:26 | 8  respectfully decline to answer.  And I assert the   09:28 |
| 9  substantially contributed to the value of Otto;   09:26 | 9  rights guaranteed to me under the Fifth Amendment of   09:28 |
| 10  correct?   09:26 | 10  the Constitution of the United States.   09:28 |
| 11  A  On the advice and direction of my counsel, I   09:26 | 11  Q  You used confidential information from the   09:28 |
| 12  respectfully decline to answer.  And I assert the   09:26 | 12  14,000 files you took from Google to develop the   09:28 |
| 13  rights guaranteed to me under the Fifth Amendment of   09:26 | 13  ████ device; correct?   09:28 |
| 14  the Constitution of the United States.   09:26 | 14  A  On the advice and direction of my counsel, I   09:28 |
| 15  Q  You understand that Uber paid $680 million   09:26 | 15  respectfully decline to answer.  And I assert the   09:28 |
| 16  for Otto because they knew that Otto had leveraged   09:26 | 16  rights guaranteed to me under the Fifth Amendment of   09:28 |
| 17  Google's confidential information; correct?   09:26 | 17  the Constitution of the United States.   09:29 |
| 18  MS. RAY:  Objection; calls for speculation.   09:26 | 18  Q  Without the use of the 14,000 -- let me start   09:29 |
| 19  MR. EHRLICH:  Go ahead and answer.   09:26 | 19  over again.   09:29 |
| 20  THE WITNESS:  Okay.   09:26 | 20  Without the use of information from the   09:29 |
| 21  On the advice and direction of my counsel, I   09:26 | 21  14,000 files you took from Google, Otto would not have   09:29 |
| 22  respectfully decline to answer.  And I assert the   09:26 | 22  been able to develop any of its LiDar devices;   09:29 |
| 23  rights guaranteed to me under the Fifth Amendment of   09:26 | 23  correct?   09:29 |
| 24  the Constitution of the United States.   09:26 | 24  A  On the advice and direction of my counsel, I   09:29 |
| 25  MR. PERLSON:  Q.  Uber told you that they   09:26 | 25  respectfully decline to answer.  And I assert the   09:29 |
| Page 22 | Page 24 |

| | |
|---|---|
| 1  paid $680 million for Otto because they knew that Otto   09:26 | 1  rights guaranteed to me under the Fifth Amendment of   09:29 |
| 2  had leveraged Google's confidential information?   09:27 | 2  the Constitution of the United States.   09:29 |
| 3  A  On the advice and direction of my counsel, I   09:27 | 3  Q  Without the information from the 14,000 files   09:29 |
| 4  respectfully decline to answer.  And I assert the   09:27 | 4  you took from Google, Uber would not have been able to   09:29 |
| 5  rights guaranteed to me under the Fifth Amendment of   09:27 | 5  develop any of its LiDar devices; correct?   09:29 |
| 6  the Constitution of the United States.   09:27 | 6  A  On the advice and direction of my counsel, I   09:30 |
| 7  Q  You used confidential information you took   09:27 | 7  respectfully decline to answer.  And I assert the   09:30 |
| 8  from Google to develop LiDar at Uber; correct?   09:27 | 8  rights guaranteed to me under the Fifth Amendment of   09:30 |
| 9  A  On the advice and direction of my counsel, I   09:27 | 9  the Constitution of the United States.   09:30 |
| 10  respectfully decline to answer.  And I assert the   09:27 | 10  Q  Uber continues to use information from the   09:30 |
| 11  rights guaranteed to me under the Fifth Amendment of   09:27 | 11  14,000 files you took from Goober -- from Google to   09:30 |
| 12  the Constitution of the United States.   09:27 | 12  develop its LiDar systems even today?   09:30 |
| 13  Q  You used information from the 14,000 files   09:27 | 13  A  On the advice and direction of my counsel, I   09:30 |
| 14  you took from Uber -- from -- let me start over again.   09:27 | 14  respectfully decline to answer.  And I assert the   09:30 |
| 15  You used confidential information from the   09:27 | 15  rights guaranteed to me under the Fifth Amendment of   09:30 |
| 16  14,000 files you took from Google to develop LiDar at   09:27 | 16  the Constitution of the United States.   09:30 |
| 17  Uber; correct?   09:27 | 17  Q  Information from the 14,000 files you took   09:30 |
| 18  A  On the advice and direction of my counsel, I   09:27 | 18  from Google has made its way onto Uber's servers;   09:30 |
| 19  respectfully decline to answer.  And I assert the   09:27 | 19  correct?   09:30 |
| 20  rights guaranteed to me under the Fifth Amendment of   09:27 | 20  A  On the advice and direction of my counsel, I   09:30 |
| 21  the Constitution of the United States.   09:28 | 21  respectfully decline to answer.  And I assert the   09:30 |
| 22  Q  You used information from the 14,000 files   09:28 | 22  rights guaranteed to me under the Fifth Amendment --   09:30 |
| 23  you took from Google to develop the ████ device;   09:28 | 23  Q  On what --   09:30 |
| 24  correct?   09:28 | 24  A  -- of the Constitution of the United States.   09:30 |
| 25  A  On the advice and direction of my counsel, I   09:28 | 25  Q  On what servers at Uber does Google's   09:30 |
| Page 23 | Page 25 |

7 (Pages 22 - 25)

ATTORNEYS EYES ONLY

1  confidential information from the 14,000 files you      09:31
2  took from Google reside?                               09:31
3      MS. RAY:  Objection; calls for speculation.        09:31
4      MR. EHRLICH:  Go ahead and answer.                 09:31
5      THE WITNESS:  On the advice and direction of       09:31
6  my counsel, I respectfully decline to answer.  And I   09:31
7  assert the rights guaranteed to me under the Fifth     09:31
8  Amendment of the Constitution of the United States.    09:31
9      MR. PERLSON:  Q.  At least some portion of         09:31
10  the 14,000 files you took from Google remains on      09:31
11  Uber's servers; correct?                              09:31
12     A  On the advice and direction of my counsel, I    09:31
13  respectfully decline to answer.  And I assert the     09:31
14  rights guaranteed to me under the Fifth Amendment of  09:31
15  the Constitution of the United States.                09:31
16     Q  As head of its self-driving car program, you    09:31
17  agree that Google and Waymo's confidential information 09:32
18  is the source of all of -- let me start over again.   09:32
19     All of Uber's LiDar designs are a derivative       09:32
20  of Google's and Waymo's confidential information that  09:32
21  you took and used at Uber as head of its self-driving 09:32
22  car program; correct?                                 09:32
23     A  On the advice and direction of my counsel, I    09:32
24  respectfully decline to answer.  And I assert the     09:32
25  rights guaranteed to me under the Fifth Amendment of  09:32

Page 26

1  the Constitution of the United States.                 09:32
2      Q  Are you aware that defendants in this case      09:32
3  have served on plaintiff almost 1,000 pages of         09:32
4  privilege logs?                                        09:32
5      MS. RAY:  Objection.                               09:32
6      I instruct you not to answer to the extent         09:32
7  that calls for attorney-client privileged information. 09:32
8      MR. EHRLICH:  And, to the extent it doesn't        09:33
9  call for privileged information, I instruct you to     09:33
10  assert your rights.                                   09:33
11     THE WITNESS:  On the advice and direction of       09:33
12  my counsel, I respectfully decline to answer.  And I  09:33
13  assert the rights guaranteed to me under the Fifth    09:33
14  Amendment of the Constitution of the United States.   09:33
15     MR. PERLSON:  Q.  Are you aware that the           09:33
16  basis for nearly every single assertion of privilege  09:33
17  in this document is based on communications made at   09:33
18  least in part by you?                                 09:33
19     MS. RAY:  Objection.                               09:33
20     I instruct you not to answer to the extent it      09:33
21  calls for attorney-client privileged information.     09:33
22     The only information he would know is from         09:33
23  attorneys.                                            09:33
24     I instruct you not to answer.                      09:33
25     MR. EHRLICH:  And I will instruct you to           09:33

Page 27

1  follow that instruction.                               09:33
2      THE WITNESS:  On the advice and direction of       09:33
3  my counsel --                                          09:33
4      MR. EHRLICH:  Well, so you're not going to         09:33
5  answer.                                                09:33
6      THE WITNESS:  I'm not going to answer?  Okay.      09:33
7      MR. EHRLICH:  You're not going to answer on        09:34
8  the instruction of counsel for Uber.                   09:34
9      THE WITNESS:  I will follow advice from            09:34
10  counsel.                                              09:34
11     MR. PERLSON:  Understood.                          09:34
12     I -- the premise that the only way that he         09:34
13  could know that information is from counsel is         09:34
14  demonstrably false.  But, if you want to make that    09:34
15  instruction, you can go right ahead.                  09:34
16     MS. RAY:  Looking at the question, I don't         09:34
17  believe that's true.                                  09:34
18     MR. PERLSON:  You can make your instruction        09:34
19  and live with the consequences of it.                 09:34
20     Do you want me to go on?                           09:34
21     Q  Are you aware that there are entries on the     09:34
22  privilege log that defendants have served in this case 09:34
23  as early as January 29th, 2016?                       09:34
24     MS. RAY:  Objection.                               09:34
25     I instruct you not to answer on the basis of       09:34

Page 28

1  attorney-client privilege.                             09:34
2      MR. EHRLICH:  Let me just read this.  Excuse       09:34
3  me.                                                    09:35
4      And, to the extent it does not call for            09:35
5  privileged information, I'm going to instruct you to   09:35
6  assert your rights.                                    09:35
7      MR. PERLSON:  Well, she instructed him not to      09:35
8  answer.                                                09:35
9      So, are you following that instruction?            09:35
10     MR. EHRLICH:  I'm going to ask you to follow       09:35
11  that instruction.                                     09:35
12     THE WITNESS:  Okay.                                09:35
13     But to be safe and so the                          09:35
14  record is clear, in case there is information that he  09:35
15  may know that is not from a privi-- privileged        09:35
16  source, I think it's best that he provide an answer   09:35
17  for the record.                                       09:35
18     MR. PERLSON:  Okay.  I mean, I understand why      09:35
19  you're saying that, but that's not how it works.  You 09:35
20  either answer the question or you don't.              09:35
21     So, if you want to take a break to figure out      09:35
22  what the appropriate thing to do is, that's fine.  But 09:35
23  we don't want to -- we're not going to waste time.    09:35
24     MS. RAY:  Let's go off the record.                 09:35
25     MR. EHRLICH:  It's -- just for the record, so      09:35

Page 29

8 (Pages 26 - 29)

ATTORNEYS EYES ONLY

1 the only -- I respect that Uber is making a privileged 09:35
2 objection.                                              09:35
3         I want to make sure that nothing               09:35
4 Mr. Levandowski does undermines the privilege that     09:36
5 Uber is asserting.                                     09:36
6         If -- to the extent it's a common interest     09:36
7 privilege, I would be advising Mr. Levandowski to      09:36
8 assert it as well.                                     09:36
9         But I just want -- I just want to be clear.    09:36
10 I'm not -- I think if there is an answer that's        09:36
11 required, I'm going to instruct him to assert his      09:36
12 rights.                                                09:36
13         MR. PERLSON: Okay. I think -- once again, I    09:36
14 think the objection is improper.                       09:36
15     Q   But, are you going to follow -- are you going  09:36
16 to follow Uber's instructions --                       09:36
17     A   I'm going to follow --                         09:36
18     Q   -- not to answer the question?                 09:36
19     A   I'm going to follow Miles' instructions.       09:36
20         MR. EHRLICH: And I'm going to ask him to       09:36
21 follow that instruction.                               09:36
22         MR. PERLSON: Okay.                             09:36
23         THE WITNESS: So that means I follow --         09:36
24         MR. EHRLICH: So we can move on.                09:36
25         MR. PERLSON: Okay.                             09:36

Page 30

1     Q   January 29, 2016, is within days of you        09:36
2 leaving Google; correct?                               09:37
3     A   On the advice and direction of my counsel, I   09:37
4 respectfully decline to answer. And I assert the       09:37
5 rights guaranteed to me under the Fifth Amendment of   09:37
6 the Constitution of the United States.                 09:37
7     Q   On January 29, 2016, were you receiving legal  09:37
8 advice regarding due diligence for an acquisition of   09:37
9 Ottomoto?                                              09:37
10     A   On the advice and direction of my counsel, I   09:37
11 respectfully decline to answer. And I assert the       09:37
12 rights guaranteed to me under the Fifth Amendment of   09:37
13 the Constitution of the United States.                 09:37
14     Q   Did Ottomoto exist on January 29, 2016?        09:37
15     A   On the advice and direction of my counsel, I   09:37
16 respectfully decline to answer. And I assert the       09:37
17 rights guaranteed to me under the Fifth Amendment of   09:37
18 the Constitution of the United States.                 09:37
19     Q   When did you first start receiving legal       09:37
20 advice regarding an acquisition of the company that    09:37
21 would become Ottomoto?                                 09:37
22     A   On the advice and direction of my counsel, I   09:37
23 respectfully decline to answer. And I assert the       09:37
24 rights guaranteed to me under the Fifth Amendment of   09:37
25 the Constitution of the United States.                 09:38

Page 31

1     Q   When did you first start discussing an         09:38
2 acquisition of what would become Ottomoto with Uber?   09:38
3     A   On the advice and direction of my counsel, I   09:38
4 respectfully decline to answer. And I assert the       09:38
5 rights guaranteed to me under the Fifth Amendment of   09:38
6 the Constitution of the United States.                 09:38
7     Q   When did you first receive any -- let me       09:38
8 start over again.                                      09:38
9         When was your first attorney-client            09:38
10 communication with Eric Tate at Morrison & Foerster    09:38
11 regarding the acquisition of Ottomoto?                 09:38
12     A   On the advice and direction of my counsel, I   09:38
13 respectfully decline to answer. And I assert the       09:38
14 rights guaranteed to me under the Fifth Amendment of   09:38
15 the Constitution of the United States.                 09:39
16     Q   When did you first enter into a joint defense  09:39
17 agreement -- let me start over again.                  09:39
18         When did you first enter into a common         09:39
19 interest agreement with Uber regarding a potential     09:39
20 acquisition of Otto?                                   09:39
21     A   On the advice and direction of my counsel, I   09:39
22 respectfully decline to answer. And I assert the       09:39
23 rights guaranteed to me under the Fifth Amendment of   09:39
24 the Constitution of the United States.                 09:39
25     Q   What common interest do you have with Uber     09:39

Page 32

1 regarding a potential acquisition of Otto?             09:39
2         MS. RAY: I instruct you not to answer on the   09:39
3 basis of attorney-client privilege.                    09:39
4         MR. PERLSON: Again, I don't think that's a     09:39
5 proper instruction.                                    09:39
6     Q   But, do you want to -- are you following       09:39
7 Uber's advice or instruction?                          09:39
8         MR. EHRLICH: Let me look at the question.      09:39
9 I'm sorry.                                             09:39
10         THE VIDEOGRAPHER: Just cover your mic.         09:40
11         (Soto-voce discussion.)                        09:40
12         MR. EHRLICH: Okay. I'm going to accept that    09:40
13 instruction and -- and advise you to follow it and    09:40
14 decline to answer.                                     09:40
15         THE WITNESS: I'm going to follow the advice.   09:40
16         MR. PERLSON: Q. What common interest did       09:40
17 Otto have with Uber regarding an acquisition by        09:40
18 Otto -- let me start over again.                       09:40
19         What -- what common interest did Otto have     09:40
20 with Uber regarding a potential acquisition of Otto?   09:40
21         MS. RAY: I instruct you not to answer on the   09:40
22 basis of attorney-client privilege and common interest 09:40
23 privilege.                                             09:40
24         MR. EHRLICH: And same instruction from me to   09:40
25 follow that advice.                                    09:40

Page 33

9 (Pages 30 - 33)

ATTORNEYS EYES ONLY

1    THE WITNESS: Okay. I will follow that    09:40
2  advice.                                    09:40
3       MR. PERLSON: Q. Did you anticipate    09:41
4  litigation regarding a potential acquisition of Otto  09:41
5  in as early as January 29, 2016?           09:41
6    A  On the advice and direction of my counsel, I  09:41
7  respectfully decline to answer. And I assert the  09:41
8  rights guaranteed to me under the Fifth Amendment of  09:41
9  the Constitution of the United States.     09:41
10   Q  Did Otto anticipate litigation regarding a  09:41
11 potential acquisition of Otto as early as January 29,  09:41
12 2016?                                       09:42
13   A  On the advice and direction of my counsel, I  09:42
14 respectfully decline to answer. And I assert the  09:42
15 rights guaranteed to me under the Fifth Amendment of  09:42
16 the Constitution of the United States.     09:42
17   Q  When did Otto first anticipate litigation  09:42
18 regarding a potential acquisition of Otto?  09:42
19   A  On the advice and direction of my counsel, I  09:42
20 respectfully decline to answer. And I assert the  09:42
21 rights guaranteed to me under the Fifth Amendment of  09:42
22 the Constitution of the United States.     09:42
23   Q  When did Uber first anticipate litigation  09:42
24 regarding a potential acquisition of Otto?  09:42
25       MS. RAY: Objection; calls for speculation.  09:42

Page 34

1       MR. EHRLICH: You can answer.          09:42
2       THE WITNESS: Okay.                    09:42
3       On the advice and direction of my counsel, I  09:42
4  respectfully decline to answer. And I assert the  09:42
5  rights guaranteed to me under the Fifth Amendment of  09:42
6  the Constitution of the United States.     09:42
7       MR. PERLSON: Q. When did Uber first tell  09:42
8  you they anticipated litigation regarding a potential  09:42
9  acquisition of Otto?                       09:42
10   A  On the advice and direction of my counsel, I  09:42
11 respectfully decline to answer. And I assert the  09:42
12 rights guaranteed to me under the Fifth Amendment of  09:42
13 the Constitution of the United States.     09:43
14   Q  Isn't it correct that the common interest  09:43
15 that Otto and Uber had, in anticipation of litigation  09:43
16 regarding the Otto acquisition was concealing the fact  09:43
17 that you had taken 14,000 confidential documents from  09:43
18 Google?                                     09:43
19   A  On the advice and --                   09:43
20       MS. RAY: Objection; form.             09:43
21       MR. EHRLICH: You can go ahead and answer.  09:43
22       MS. RAY: Hold on.                     09:43
23       I instruct you not to answer on the basis of  09:43
24 attorney-client privilege.                 09:43
25       MR. EHRLICH: One second.             09:43

Page 35

1       MR. PERLSON: Do you want to go off the  09:44
2  record?
3       THE WITNESS: Yeah, why don't we do that.  09:44
4       THE VIDEOGRAPHER: Going off the record. The
5  time is 9:44.
6       (Recess taken.)                       09:52
7       THE VIDEOGRAPHER: We are back on the record.  09:52
8  The time is 9:53.                          09:53
9       MR. PERLSON: Q. Are you going to follow  09:53
10 your counsel's instruction?                09:53
11       THE WITNESS: Do we have any question?   09:53
12       MR. EHRLICH: Let me -- let me go back.  09:53
13       MS. RAY: I instructed him not to answer.  09:53
14       MR. EHRLICH: Okay. Ms. Ray instructed him  09:53
15 not to answer.                             09:53
16       And I will now instruct you to follow that  09:53
17 instruction from Ms. Ray on the basis of   09:53
18 attorney-client privilege.                 09:53
19       THE WITNESS: I'll follow that instruction.  09:53
20       MR. PERLSON: Q. Isn't it correct that the  09:53
21 common interest that Otto and Uber had in anticipation  09:54
22 of litigation regarding the Otto acquisition was  09:54
23 exploiting the confidential information you had  09:54
24 taken -- in the 14,000 documents you had taken from  09:54
25 Google?                                     09:54

Page 36

1       MS. RAY: Objection; form.             09:54
2       I instruct you not to answer on the basis of  09:54
3  attorney-client and common interest privilege.  09:54
4       MR. EHRLICH: And the same instruction from  09:54
5  me to follow that instruction.             09:54
6       THE WITNESS: I will follow that instruction.  09:54
7       MR. PERLSON: Q. Your common interest with  09:54
8  Uber began while you were still employed at Google;  09:54
9  correct?                                    09:54
10       MS. RAY: Objection; form.             09:54
11       MR. EHRLICH: And -- and by "form," Counsel,  09:54
12 do you mean attorney-client privilege?     09:54
13       MS. RAY: No. I mean that it's a legal  09:55
14 conclusion what common interest is. I don't think he  09:55
15 knows what that is. So, it's speculation.  09:55
16       MR. EHRLICH: Okay. So, you can answer.  09:55
17       THE WITNESS: On -- on the advice and     09:55
18 direction of my counsel, I respectfully decline to  09:55
19 answer. And I assert the rights guaranteed to me  09:55
20 under the Fifth Amendment of the Constitution of the  09:55
21 United States.                             09:55
22       MR. PERLSON: Q. Otto's common interest with  09:55
23 Uber began while you were still employed at Google?  09:55
24       MS. RAY: Objection; form.             09:55
25       THE WITNESS: On the advice and direction of  09:55

Page 37

10 (Pages 34 - 37)

| | |
|---|---|
| 1 my counsel, I respectfully decline to answer.  And I   09:55 | 1 look at your question.                      09:57 |
| 2 assert the rights guaranteed to me under the Fifth   09:55 | 2       MR. PERLSON:  Take -- take the time you need.   09:57 |
| 3 Amendment of the Constitution of the United States.   09:55 | 3       MS. RAY:  So, you have asked the witness a   09:57 |
| 4       MR. PERLSON:  Q.  Otto's common interest with   09:55 | 4 question about the common interest; right?  You're   09:57 |
| 5 Uber was to prevent the detection of your scheme to   09:55 | 5 saying --                      09:57 |
| 6 funnel Waymo's technology to Uber via Otto?   09:55 | 6       MR. PERLSON:  You -- you made the   09:57 |
| 7       MS. RAY:  Objection to form.   09:55 | 7 instruction.                      09:57 |
| 8       I instruct you not to answer on the basis of   09:55 | 8       MS. RAY:  I understand.   09:57 |
| 9 attorney-client and common interest privilege.   09:55 | 9       MR. PERLSON:  You need to know what it is.   09:57 |
| 10       MR. EHRLICH:  And I'll advise you to follow   09:56 | 10       If you -- if we want to stop, get off the   09:57 |
| 11 that instruction from Counsel.                      09:56 | 11 record, so you can figure out why you made your   09:57 |
| 12       MR. PERLSON:  And whose -- who are the --   09:56 | 12 attorney-client privilege instruction, then you can do   09:57 |
| 13 what common interest are you asserting then?  Between   09:56 | 13 that.                      09:57 |
| 14 who is it with?                      09:56 | 14       But, I would suspect that, when you made the   09:57 |
| 15       And who is the attorney and the client in   09:56 | 15 instruction, that you know --   09:57 |
| 16 your instruction?                      09:56 | 16       MS. RAY:  I do know.   09:57 |
| 17       MS. RAY:  Your question is about Otto's   09:56 | 17       MR. PERLSON:  -- the answer to the question.   09:57 |
| 18 interests with Uber.  And so, at the time, I believe   09:56 | 18 So answer me, please.                      09:57 |
| 19 Otto's attorneys were O'Melveny & Myers, and Uber's   09:56 | 19       MS. RAY:  I'm happy to answer you.   09:57 |
| 20 counsel was Morrison & Foerster.  And you're making an   09:56 | 20       MR. PERLSON:  Okay.   09:57 |
| 21 assertion about the common interest, so we wouldn't   09:56 | 21       MS. RAY:  You want to be taught.   09:57 |
| 22 agree with that.                      09:56 | 22       MR. PERLSON:  Go.                      09:57 |
| 23       MR. PERLSON:  Well, that's not a basis for an   09:56 | 23       MS. RAY:  You were asking him about what the   09:58 |
| 24 attorney-client privilege instruction, so --   09:56 | 24 common interest is.  The only way he would know that   09:58 |
| 25       MS. RAY:  You're asking him what the interest   09:56 | 25 is from an attorney discussion.  And so, that is   09:58 |
| Page 38 | Page 40 |

| | |
|---|---|
| 1 is.  And one, he doesn't know because he doesn't --   09:56 | 1 attorney-client privilege, and I'm not going to let   09:58 |
| 2 he's not a lawyer.  He doesn't --                      09:56 | 2 him answer the question.                      09:58 |
| 3       MR. PERLSON:  Hey, hey, enough of the   09:56 | 3       MR. PERLSON:  Who is the attorney?  Who is   09:58 |
| 4 coaching.                      09:56 | 4 the client?                      09:58 |
| 5       MS. RAY:  I'm not coaching.   09:56 | 5       MS. RAY:  I already identified that to you.   09:58 |
| 6       MR. PERLSON:  If you want to make an -- an --   09:56 | 6       MR. PERLSON:  When?  In this question --   09:58 |
| 7 I am -- I am asking a very specific question.   09:57 | 7       MS. RAY:  Do you want me to ask the reporter   09:58 |
| 8       MS. RAY:  You asked me a question --   09:57 | 8 to read it back?  I'm happy to repeat it.   09:58 |
| 9       MR. PERLSON:  You instructed him not to   09:57 | 9       Otto's attorneys were O'Melveny & Myers, and   09:58 |
| 10 answer on the basis of attorney-client privilege.  You   09:57 | 10 Uber's counsel was Morrison & Foerster.  Those are the   09:58 |
| 11 don't need to get into speculation or anything about   09:57 | 11 attorneys.                      09:58 |
| 12 that.                      09:57 | 12       MR. PERLSON:  Okay.  And what's the common   09:58 |
| 13       Answer my question:  What is the common   09:57 | 13 interest, and who is it between?   09:58 |
| 14 interest you're identifying?  And who are the   09:57 | 14       MS. RAY:  The common interest was between   09:58 |
| 15 attorneys?  And who is the client?   09:57 | 15 Otto and Uber, at least as to your question, and it   09:58 |
| 16       MS. RAY:  I'm not being deposed here.  We can   09:57 | 16 was in anticipation of litigation.   09:58 |
| 17 discuss that at --                      09:57 | 17       Also, I just want to note that the record   09:58 |
| 18       MR. PERLSON:  Are you refusing to provide   09:57 | 18 says on here -- on here that I am coaching.  But I   09:58 |
| 19 this information now?  This is a very serious issue,   09:57 | 19 meant to say, if I didn't say it correctly, I am not   09:59 |
| 20 and I need an answer.                      09:57 | 20 coaching.                      09:59 |
| 21       MS. RAY:  We can go -- if you want, we can go   09:57 | 21       MR. PERLSON:  Q.  Isn't it correct that the   09:59 |
| 22 off the record.                      09:57 | 22 common interest that Otto and Uber had in -- in   09:59 |
| 23       MR. PERLSON:  No.  I want you to put this on   09:57 | 23 anticipation of litigation, regarding the Otto   09:59 |
| 24 the record.                      09:57 | 24 acquisition, was exploiting the confidential   09:59 |
| 25       MS. RAY:  All right.  Well, I need to take a   09:57 | 25 information you had taken in the 14,000 documents you   09:59 |
| Page 39 | Page 41 |

11 (Pages 38 - 41)

ATTORNEYS EYES ONLY

1  had -- that's not the question.  Let's start over     09:59
2  again.                                                09:59
3       Isn't it correct that, before you left          09:59
4  Google, there was a common interest between Otto and  09:59
5  Uber to prevent the detection of your scheme to funnel 09:59
6  Waymo's technology to Uber via Otto?                  09:59
7       MS. RAY:  Objection; form.
8       MR. EHRLICH:  And -- and, Ms. Ray, is there     10:00
9  an objection based on attorney-client privilege or    10:00
10 joint -- or common interest privilege?                10:00
11      MS. RAY:  I instruct you not to answer on the    10:00
12 basis of attorney-client or common interest privilege. 10:00
13      MR. EHRLICH:  So -- so I would ask you to        10:00
14 follow that instruction and decline to answer.        10:00
15      MR. PERLSON:  And that's based on the same       10:00
16 common interest and the same attorneys that you had   10:00
17 noted in reference to the last question; correct?     10:00
18      MS. RAY:  Yes, sir.  I'm not agreeing to your    10:00
19 timing or characterization.                           10:00
20      MR. PERLSON:  I'm just asking you the basis      10:00
21 of the instruction.                                   10:00
22      MS. RAY:  The basis of the instruction is       10:00
23 that the only way he knows about the common interest  10:00
24 is because of attorney-client privileged discussions.  10:00
25      MR. PERLSON:  I just want the record to be       10:01

Page 42

1  very clear that the attorney-clients -- the attorney  10:01
2  and the client and the common interest that you are   10:01
3  basing your instruction on, is the same one that you  10:01
4  had based your instruction on in the current -- in the 10:01
5  previous question.                                    10:01
6       MS. RAY:  Correct, without buying into your     10:01
7  presumption about the timing.                         10:01
8       THE REPORTER:  Excuse me, Counsel.  You're      10:01
9  not mic'ed, so if you can try to keep your hand away.  10:01
10      MS. RAY:  Oh, sure.  I'm sorry.                  10:01
11      MR. PERLSON:  Q.  At the time Uber acquired      10:01
12 Otto, Uber had a due diligence report done in         10:01
13 connection with that acquisition; correct?            10:01
14      A  On the advice and direction of my counsel, I  10:02
15 respectfully decline to answer.  And I assert the     10:02
16 rights guaranteed to me under the Fifth Amendment of  10:02
17 the Constitution of the United States.                10:02
18      Q  The purpose of the due diligence report done  10:02
19 before the -- Uber's acquisition of Otto was to       10:02
20 determine the potential exposure for your theft of    10:02
21 confidential information from Google?                  10:02
22      MR. EHRLICH:  Hold on.                           10:02
23      MS. RAY:  I instruct you not to answer on the    10:02
24 basis of attorney-client and common interest          10:02
25 privilege.                                            10:02

Page 43

1       MR. EHRLICH:  I advise you to follow that       10:02
2  instruction.                                          10:02
3       THE WITNESS:  I will follow that instruction.   10:02
4       MR. PERLSON:  Q.  As part of the due            10:02
5  diligence report that was done in connection with the 10:02
6  Otto acquisition, someone examined all of the computer 10:02
7  systems at Otto for Google con- -- confidential       10:02
8  information; correct?                                 10:02
9       MS. RAY:  I instruct you not to answer on the   10:02
10 basis of attorney-client and common interest          10:03
11 privilege.                                            10:03
12      MR. PERLSON:  Q.  As part of the due            10:03
13 diligence report, in connection with the Otto         10:03
14 acquisition, someone examined all the computer systems 10:03
15 at Otto for the 14,000 documents you had taken from   10:03
16 Google?                                               10:03
17      MS. RAY:  Same instruction.                     10:03
18      MR. PERLSON:  Q.  Are you following that        10:03
19 instruction?                                          10:03
20      A  (Witness nods head.)                          10:03
21      Q  "Yes"?                                        10:03
22      A  Yes.  I'm sorry.  No gestures.               10:03
23      But you didn't let me answer the last one,      10:03
24 so --                                                 10:03
25      MR. EHRLICH:  Go ahead.  You're following       10:03

Page 44

1  that instruction?                                     10:03
2       THE WITNESS:  I'm following that instruction.   10:03
3       MR. PERLSON:  Thank you.                        10:03
4       Q  As part of the due diligence report in       10:03
5  connection with the Otto acquisition, it was          10:03
6  determined that the 14,000 files that you had taken   10:03
7  from Google did exist on Otto's servers; correct?     10:04
8       MS. RAY:  Same -- same instruction.             10:04
9       MR. EHRLICH:  And same instruction from me.     10:04
10      THE WITNESS:  And I'm following.                10:04
11      MR. PERLSON:  Q.  As part of the due            10:04
12 diligence report in connection with the Otto          10:04
13 acquisition, it was determined that the 14,000 files  10:04
14 that had been taken by you from Google should be      10:04
15 deleted from Otto's servers; correct?                 10:04
16      MS. RAY:  Same instruction.                     10:04
17      MR. EHRLICH:  Same instruction, as well, from   10:04
18 me.                                                   10:04
19      THE WITNESS:  I will follow.                    10:04
20      MR. PERLSON:  Q.  If Uber had a third-party     10:04
21 report done in connection with the Otto acquisition,  10:05
22 and got a clean bill of health on Otto, why wouldn't  10:05
23 Uber share that with Waymo?                           10:05
24      MS. RAY:  Objection; form.                      10:05
25      Hold on.                                         10:05

Page 45

12 (Pages 42 - 45)

ATTORNEYS EYES ONLY

**Page 46**

1    Go ahead.                                10:05
2       MR. EHRLICH:  I'm looking -- so, there is   10:05
3  an -- there is an objection on form.  I'm not hearing   10:05
4  an objection based on attorney-client or joint defense   10:05
5  privilege.                               10:05
6    So, you can answer.                     10:05
7       THE WITNESS:  On the advice and direction of   10:05
8  my counsel, I respectfully decline to answer.  And I   10:05
9  assert the rights guaranteed to me under the Fifth   10:05
10 Amendment of the Constitution of the United States.   10:05
11      MR. PERLSON:  Q.  If Uber had a third-party   10:05
12 report done in connection with the Otto acquisition   10:06
13 and got a clean bill of health on Otto, why wouldn't   10:06
14 Uber share that with the Court?           10:06
15      MS. RAY:  Objection; form.           10:06
16      THE VIDEOGRAPHER:  Excuse me.  Can you use   10:06
17 this?                                    10:06
18      MS. RAY:  Sure.                      10:06
19      THE VIDEOGRAPHER:  Is it going to reach?   10:06
20      MS. RAY:  You know what, can we just move   10:06
21 that?                                    10:06
22      MR. EHRLICH:  I'm going to instruct you to   10:06
23 answer.                                  10:06
24      THE WITNESS:  On the advice and direction of   10:06
25 my counsel, I respectfully decline to answer.  And I   10:06

**Page 47**

1  assert the rights guaranteed to me under the Fifth   10:06
2  Amendment of the Constitution of the United States.   10:06
3       MR. PERLSON:  Q.  It would be in Uber's   10:06
4  interests to provide exculpatory evidence regarding   10:06
5  the 14,000 files you took from Google; correct?   10:06
6       MS. RAY:  Objection; form.           10:07
7       MR. EHRLICH:  You can answer.         10:07
8       THE WITNESS:  On the advice and direction of   10:07
9  my counsel, I respectfully decline to answer.  And I   10:07
10 assert the rights guaranteed to me under the Fifth   10:07
11 Amendment of the Constitution of the United States.   10:07
12      MR. PERLSON:  Q.  It would be in your   10:07
13 interests to provide exculpatory evidence regarding   10:07
14 the 14,000 files you took from Google; correct?   10:07
15    A  On the advice and direction of my counsel, I   10:07
16 respectfully decline to answer.  And I assert the   10:07
17 rights guaranteed to me under the Fifth Amendment of   10:07
18 the Constitution of the United States.   10:07
19      THE VIDEOGRAPHER:  Excuse me.  I'd like to go   10:07
20 off the record for one moment.           10:07
21      MR. PERLSON:  Sure.                  10:07
22      THE VIDEOGRAPHER:  Going off the record.  The   10:07
23 time is 10:07.                           10:07
24    (Recess taken.)                       10:07
25      THE VIDEOGRAPHER:  We are back on the record.   10:07

**Page 48**

1  The time is 10:07.                       10:07
2       MR. PERLSON:  Q.  There would be no reason   10:07
3  for you to withhold exculpatory evidence regarding the   10:08
4  14,000 files you took from Google; correct?   10:08
5    A  On the advice and direction of my counsel, I   10:08
6  respectfully decline to answer.  And I assert the   10:08
7  rights guaranteed to me under the Fifth Amendment of   10:08
8  the Constitution of the United States.   10:08
9    Q  When did you first suspect that your conduct   10:08
10 at Google might become the subject of litigation?   10:08
11    A  On the advice and direction of my counsel, I   10:08
12 respectfully decline to answer.  And I assert the   10:08
13 rights guaranteed to me under the Fifth Amendment of   10:08
14 the Constitution of the United States.   10:08
15    Q  Did you ever suspect that your operation   10:08
16 of -- let me start over again.           10:09
17    Did you ever suspect that your discussions   10:09
18 with Uber between 2015 and 2016, while you were a   10:09
19 Google employee, would become the subject of   10:09
20 litigation?                             10:09
21      MS. RAY:  Objection; form.           10:09
22      MR. EHRLICH:  Go ahead.              10:09
23      THE WITNESS:  On the advice and direction of   10:09
24 my counsel, I respectfully decline to answer.  And I   10:09
25 assert the rights guaranteed to me under the Fifth   10:09

**Page 49**

1  Amendment of the Constitution of the United States.   10:09
2       MR. PERLSON:  Q.  Did you ever suspect that   10:09
3  your formation of -- of a company, that eventually   10:09
4  became Otto in late 2015, while you were still a   10:09
5  Google employee, would become the subject of   10:09
6  litigation?                             10:09
7    A  On the advice and direction of my counsel, I   10:09
8  respectfully decline to answer.  And I assert the   10:09
9  rights guaranteed to me under the Fifth Amendment of   10:09
10 the Constitution of the United States.   10:10
11    Q  Have you ever destroyed any documents related   10:10
12 to this litigation?                      10:10
13    A  On the advice and direction of my counsel, I   10:10
14 respectfully decline to answer.  And I assert the   10:10
15 rights guaranteed to me under the Fifth Amendment of   10:10
16 the Constitution of the United States.   10:10
17    Q  Have you ever deleted any documents related   10:10
18 to this litigation?                      10:10
19    A  On the advice and direction of my counsel, I   10:10
20 respectfully decline to answer.  And I assert the   10:10
21 rights guaranteed to me under the Fifth Amendment of   10:10
22 the Constitution of the United States.   10:10
23    Q  Has Otto deleted any documents related to   10:10
24 this litigation?                         10:10
25    A  On the advice and direction of my counsel, I   10:10

13 (Pages 46 - 49)

ATTORNEYS EYES ONLY

```
 1  respectfully decline to answer.  And I assert the     10:10
 2  rights guaranteed to me under the Fifth Amendment of  10:10
 3  the Constitution of the United States.                10:10
 4     Q  Have you deleted any documents reflecting       10:10
 5  your relationship to Odin Wave or Tyto Lidar at any   10:10
 6  time in which you had anticipated litigation?         10:10
 7     A  On the advice and direction of my counsel, I    10:10
 8  respectfully decline to answer.  And I assert the     10:10
 9  rights guaranteed to me under the Fifth Amendment of  10:10
10  the Constitution of the United States.                10:11
11     Q  Have you ever destroyed or permanently          10:11
12  deleted any documents relating to this litigation when 10:11
13  litiga- -- during the time in which litigation was    10:11
14  anticipated, regarding the Otto acquisition?          10:11
15     A  On the advice and direction of my counsel, I    10:11
16  respectfully decline to answer.  And I assert the     10:11
17  rights guaranteed to me under the Fifth Amendment of  10:11
18  the Constitution of the United States.                10:11
19     Q  Have you deleted any communications with        10:11
20  former Google employees instructing them to take      10:11
21  confidential information from Google?                 10:11
22     A  On the advice and direction of my counsel, I    10:11
23  respectfully decline to answer.  And I assert the     10:11
24  rights guaranteed to me under the Fifth Amendment of  10:11
25  the Constitution of the United States.                10:12
```

```
 1     Q  While you were at Google, you were issued a     10:12
 2  laptop computer that ran the Windows operating system; 10:12
 3  correct?                                              10:12
 4     A  On the advice and direction of my counsel, I    10:12
 5  respectfully decline to answer.  And I assert the     10:12
 6  rights guaranteed to me under the Fifth Amendment of  10:12
 7  the Constitution of the United States.                10:12
 8     Q  Before you left Google, you downloaded          10:12
 9  documents onto that laptop computer for use when you  10:12
10  left Google; correct?                                 10:12
11     A  On the advice and direction of my counsel, I    10:12
12  respectfully decline to answer.  And I assert the     10:12
13  rights guaranteed to me under the Fifth Amendment of  10:12
14  the Constitution of the United States.                10:12
15     Q  Before you left Google, you downloaded          10:12
16  documents onto that laptop for use at Otto; correct?  10:12
17     A  On the advice and direction of my counsel, I    10:13
18  respectfully decline to answer.  And I assert the     10:13
19  rights guaranteed to me under the Fifth Amendment of  10:13
20  the Constitution of the United States.                10:13
21     Q  Before you left Google, you downloaded          10:13
22  documents onto that laptop for use at Uber; correct?  10:13
23     A  On the advice of my counsel, I respectly        10:13
24  decline to answer.  And I assert the rights guaranteed 10:13
25  to me under the Fifth Amendment of the Constitution of 10:13
```

```
 1  the United States.                                    10:13
 2     Q  To this day, Uber continues to use             10:13
 3  confidential information downloaded onto that laptop   10:13
 4  computer; correct?                                    10:13
 5     A  On the advice and direction of my counsel, I    10:13
 6  respectfully decline to answer.  And I assert the     10:13
 7  rights guaranteed to me under the Fifth Amendment of  10:13
 8  the Constitution of the United States.                10:13
 9     Q  Is there any wall at Uber from your work on     10:13
10  LiDar technology?                                     10:14
11     A  What's a wall?                                  10:14
12     Q  Is -- are --                                    10:14
13        MR. EHRLICH:  Do you want to clarify?           10:14
14        MR. PERLSON:  Yeah, sure.                       10:14
15     Q  The -- is -- is there any policy at Uber that   10:14
16  you are not allowed to work on LiDar technology?      10:14
17     A  On the advice and direction of my counsel, I    10:14
18  respectfully decline to answer.  And I assert the     10:14
19  rights guaranteed to me under the Fifth Amendment of  10:14
20  the Constitution of the United States.                10:14
21     Q  Isn't it true that, since you have been         10:14
22  working at Uber, you have done work regarding LiDar   10:14
23  technology?                                           10:14
24     A  On the advice and direction of my counsel, I    10:14
25  respectfully decline to answer.  And I assert the     10:14
```

```
 1  rights guaranteed to me under the Fifth Amendment of  10:14
 2  the Constitution of the United States.                10:14
 3     Q  Isn't it true that, during your work at Uber,   10:15
 4  you have contributed to the design and development of  10:15
 5  LiDar technology?                                     10:15
 6     A  On the advice and direction of my -- excuse     10:15
 7  me.                                                   10:15
 8        On the advice and direction of counsel -- of    10:15
 9  my counsel, I respectfully decline to answer.  And I  10:15
10  assert the rights guaranteed to me under the Fifth    10:15
11  Amendment of the Constitution of the United States    10:15
12     Q  Isn't it true that, during your work at Uber,   10:15
13  you have contributed to the design and development of  10:15
14  LiDar technology using confidential information in the 10:15
15  14,000 documents that you took from Google before you 10:15
16  left Google?                                          10:15
17     A  On the advice and direction of my counsel, I    10:15
18  respectfully decline to answer.  And I assert the     10:15
19  rights guaranteed to me under the Fifth Amendment of  10:15
20  the Constitution of the United States.                10:15
21     Q  Isn't it true that, even today, you continue    10:15
22  to use the confidential information in                10:15
23  14,000 documents you took from Google in your         10:15
24  contributions to the design and development of LiDar  10:16
25  technology at Uber?                                   10:16
```

14 (Pages 50 - 53)

1     A   On the advice and direction of my counsel, I   10:16
2   respectfully decline to answer.  And I assert the   10:16
3   rights guaranteed to me under the Fifth Amendment of   10:16
4   the Constitution of the United States.   10:16
5     Q   Between March 2nd, 2015, and March 25th,   10:16
6   2015, your Google-issued laptop did not perform   10:16
7   regular check-ins to Google's network; correct?   10:16
8         MS. RAY:  Objection; form.   10:16
9         MR. EHRLICH:  Let me read the question.   10:16
10        You can answer.   10:16
11        THE WITNESS:  On the advice and direction of   10:16
12   my counsel, I respectfully decline to answer.  And I   10:16
13   assert the rights guaranteed to me under the Fifth   10:16
14   Amendment of the Constitution of the United States.   10:16
15        MR. PERLSON:  Q.  Between March 2nd and   10:16
16   2 -- 2 -- between March 2nd, 2015, and November 25th,   10:17
17   2015, the network interfaces of your Google-issued   10:17
18   laptop made only three appearances on Google's   10:17
19   corporate logs?   10:17
20        MS. RAY:  Objection; form.   10:17
21        THE WITNESS:  Is there a question?   10:17
22        MR. EHRLICH:  Did -- did you hear the   10:17
23   question?   10:17
24        MR. PERLSON:  I'll -- let me just ask it   10:17
25   again.   10:17

Page 54

1         MR. EHRLICH:  Okay.   10:17
2         MR. PERLSON:  Q.  Do you have any reason to   10:17
3   dispute that, between March 15th -- let me start over   10:17
4   again.   10:17
5         Between -- scratch that.   10:17
6         Do you have any reason to -- to dispute that   10:17
7   between March 2nd, 2015, and November 25th, 2015, that   10:17
8   the network interfaces of your Google-issued laptop   10:17
9   made only three appearances on Goo-- Google's   10:17
10   corporate network log?   10:18
11    A   On the advice and direction of my counsel, I   10:18
12   respectfully decline to answer.  And I assert the   10:18
13   rights guaranteed to me under the Fifth Amendment of   10:18
14   the Constitution of the United States.   10:18
15    Q   You caused your Google-issued laptop to   10:18
16   access Goo- -- the Google corporate network for   10:18
17   unauthorized purposes for approximately two hours on   10:18
18   October 22nd, 2015?   10:18
19    A   On the direction of my counsel, I   10:18
20   respectfully decline to answer.  And I assert the   10:18
21   rights guaranteed to me under the Fifth Amendment of   10:18
22   the Constitution of the United States.   10:18
23    Q   You caused your Google-issued laptop to   10:18
24   access the Google corporate network for unauthorized   10:18
25   purposes for approximately two hours on November 20th,   10:18

Page 55

1   2015?   10:18
2     A   On the advice and direction of my counsel, I   10:18
3   respectfully decline to answer.  And I assert the   10:18
4   rights guaranteed to me under the Fifth Amendment of   10:18
5   the Constitution of the United States.   10:19
6     Q   You caused your Google-issued laptop to   10:19
7   access the corporate -- the Google corporate network   10:19
8   for unauthorized purposes on November 25th, 2015 --   10:19
9     A   Is that a question?   10:19
10    Q   -- correct?   10:19
11    A   Okay.   10:19
12        On the advice and direction of my counsel, I   10:19
13   respectfully decline to answer.  And I assert the   10:19
14   rights guaranteed to me under the Fifth Amendment of   10:19
15   the Constitution of the United States.   10:19
16    Q   On -- on November 26th, 2015, you then   10:19
17   reinstalled the Windows operating system on your   10:19
18   Google-issued laptop; correct?   10:19
19    A   On the advice and direction of my counsel, I   10:19
20   respectfully decline to answer.  And I assert the   10:19
21   rights guaranteed to me under the Fifth Amendment of   10:19
22   the Constitution of the United States.   10:19
23    Q   You reinstalled the Windows operating system   10:19
24   on November 26, 2015, in an effort to conceal the fact   10:20
25   that you had been accessing Google's corporate   10:20

Page 56

1   network; correct?   10:20
2     A   On the advice and direction of my counsel, I   10:20
3   respectfully decline to answer.  And I assert the   10:20
4   rights guaranteed to me under the Fifth Amendment of   10:20
5   the Constitution of the United States.   10:20
6     Q   On December 3rd, 2015, you ran keyword   10:20
7   searches across the Google network from your   10:20
8   Google-issued laptop; correct?   10:20
9     A   On the advice and direction of my counsel, I   10:20
10   respectfully decline to answer.  And I assert the   10:20
11   rights guaranteed to me under the Fifth Amendment of   10:20
12   the Constitution of the United States.   10:20
13    Q   On December 3rd, 2015, you ran a search for   10:20
14   the strings CHAUFFEUR SVN LOGIN; correct?   10:20
15    A   On the advice and direction of my counsel, I   10:20
16   respectfully decline to answer.  And I assert the   10:20
17   rights guaranteed to me under the Fifth Amendment of   10:20
18   the Constitution of the United States.   10:20
19    Q   On December 3rd, 2015, you ran a search for   10:20
20   the string CHAUFFEUR SVN EEE SETUP; correct?   10:21
21        MR. EHRLICH:  EEE SETUP?   10:21
22        MR. PERLSON:  Yeah.   10:21
23        THE WITNESS:  On the advice and direction of   10:21
24   my counsel, I respectfully decline to answer.  And I   10:21
25   assert --   10:21

Page 57

15 (Pages 54 - 57)

ATTORNEYS EYES ONLY

```
 1      MR. PERLSON:  On December --            10:21
 2      THE WITNESS:  -- the rights guaranteed to --   10:21
 3      MR. EHRLICH:  Go ahead and finish.      10:21
 4      THE WITNESS:  Yeah.              10:21
 5      And I assert the rights guaranteed to me       10:21
 6  under the Fifth Amendment of the Constitution of the   10:21
 7  United States.                    10:21
 8      THE VIDEOGRAPHER:  I need to take a break.   10:21
 9      MR. PERLSON:  Okay.  You need to take a      10:21
10  break?                          10:21
11      THE VIDEOGRAPHER:  Going off the record.  The   10:21
12  time is 10:21.                     10:21
13      (Recess taken.)                 10:21
14      THE VIDEOGRAPHER:  This marks the beginning   10:25
15  of DVD No. 2 in the deposition of Anthony Levandowski.   10:34
16      We are going back on the record.  The time is   10:34
17  10:34.                          10:34
18      MR. PERLSON:  Q.  The searches that you ran   10:34
19  on December 3rd, 2015, were run to locate files     10:35
20  relating to Google's self-driving car project at that   10:35
21  time; correct?                    10:35
22      A  On the advice and direction of my counsel, I   10:35
23  respectfully decline to answer.  And I assert the    10:35
24  rights guaranteed to me under the Fifth Amendment of   10:35
25  the Constitution of the United States.       10:35
                                         Page 58
```

```
 1      Q  SVN is the name of the document repository   10:35
 2  containing Waymo's design files, schematics, and other   10:35
 3  confidential information relating to the self-driving   10:35
 4  car project; correct?                 10:35
 5      A  On the advice and direction of my counsel, I   10:35
 6  respectfully decline to answer.  And I assert the    10:35
 7  rights guaranteed to me under the Fifth Amendment   10:35
 8  rights -- under the Fifth Amendment of the        10:35
 9  Constitution of the United States.         10:35
10      Q  The searches you ran across the Google     10:35
11  network on December 3rd, 2013, were not related to any   10:35
12  legitimate duties you were performing for Google at   10:36
13  that time?                       10:36
14      A  On the advice and direction of my counsel, I   10:36
15  respectfully disagree -- I respectfully decline to   10:36
16  answer.  And I assert the rights guaranteed to me    10:36
17  under the Fifth Amendment of the Constitution of the   10:36
18  United States.                    10:36
19      Q  The searches you ran across the Google     10:36
20  network on December 3rd, 2015, were made without    10:36
21  authorization from Google; correct?        10:36
22      A  On the advice and direction of my counsel, I   10:36
23  respectfully decline to answer.  And I assert the    10:36
24  rights guaranteed to me under the Fifth Amendment of   10:36
25  the Constitution of the United States.       10:36
                                         Page 59
```

```
 1      Q  On December 11, 2015, you downloaded software   10:36
 2  to your Google-issued laptop that would allow you to   10:36
 3  access files on the SVN repository; correct?      10:36
 4      A  On the advice and direction of my counsel, I   10:36
 5  respectfully decline to answer.  And I assert the    10:36
 6  rights guaranteed to me under the Fifth Amendment of   10:36
 7  the Constitution of the United States.       10:36
 8      Q  On December 11, 2015, you downloaded software   10:36
 9  called Tortoise SVN; correct?             10:36
10      A  On the advice and direction of my counsel, I   10:37
11  respectfully decline to answer.  And I assert the    10:37
12  rights guaranteed to me under the Fifth Amendment of   10:37
13  the Constitution of the United States.       10:37
14      Q  On December 11th, 2015, after you downloaded   10:37
15  Tortoise SVN, you then downloaded approximately     10:37
16  14,000 files from the SVN repository; correct?     10:37
17      A  On the advice and direction of my counsel, I   10:37
18  respectfully decline to answer.  And I assert the    10:37
19  rights guaranteed to me under the Fifth Amendment of   10:37
20  the Constitution of the United States.       10:37
21      Q  The files you downloaded from the SVN      10:37
22  repository on December 11, 2015, totaled 9.7 gigabytes   10:37
23  of data; correct?                  10:37
24      A  On the advice and direction of my counsel, I   10:37
25  respectfully decline to answer.  And I assert the    10:37
                                         Page 60
```

```
 1  rights guaranteed to me under the Fifth Amendment of   10:37
 2  the Constitution of the United States.       10:37
 3      Q  The files downloaded from the SVN repository   10:37
 4  on December 11, 2015, included approximately      10:37
 5  2 gigabytes of data from LiDar subdirectories;     10:37
 6  correct?                         10:38
 7      A  On the advice and direction of my counsel, I   10:39
 8  respectfully decline to answer.  And I assert the    10:39
 9  rights guaranteed to me under the Fifth Amendment of   10:39
10  the Constitution of the United States.       10:39
11      Q  The approximately 14,000 files you downloaded   10:38
12  from Google's SVN repository on December 11, 2015, was   10:38
13  not related to any legitimate work by you in your role   10:38
14  as a Google Waymo employee; correct?       10:38
15      A  On the advice and direction of my counsel, I   10:38
16  respectfully decline to answer.  And I assert the    10:38
17  rights guaranteed to me under the Fifth Amendment of   10:38
18  the Constitution of the United States.       10:38
19      Q  You downloaded approximately 14,000 files     10:38
20  from Google's SVN repository without authorization    10:38
21  from Google; correct?                 10:38
22      A  On the advice and direction of my counsel, I   10:38
23  respectfully decline to answer.  And I assert the    10:38
24  rights guaranteed to me under the Fifth Amendment of   10:38
25  the Constitution of the United States.       10:38
                                         Page 61
```

16 (Pages 58 - 61)

ATTORNEYS EYES ONLY

1  Q  On December 11th, 2015, you downloaded        10:38
2  approximately 14,000 files from Google's SVN      10:38
3  repository so that you could use them for the new  10:38
4  company you were founding; correct?             10:39
5    A  On the advice and direction of my counsel, I  10:39
6  respectfully decline to answer.  And I assert the  10:39
7  rights guaranteed to me under the Fifth Amendment of  10:39
8  the Constitution of the United States.           10:39
9  Q  You downloaded approximately 14,000 files on  10:39
10  December 11, 2015, from Google's SVN repository so  10:39
11  that you could use them to compete with Google;    10:39
12  correct?                                         10:39
13    A  On the advice and direction of my counsel, I  10:39
14  respectfully decline to answer.  And I assert the  10:39
15  rights guaranteed to me under the Fifth Amendment of  10:39
16  the Constitution of the United States.           10:39
17  Q  On December 14, 2015, you attached to your   10:39
18  Google-issued laptop a Transcend RDF 45 USB 3.0 Card  10:39
19  Reader; correct?                                 10:39
20    A  On the advice and direction of my counsel, I  10:40
21  respectfully decline to answer.  And I assert the  10:40
22  rights guaranteed to me under the Fifth Amendment of  10:40
23  the Constitution of the United States.           10:40
24  Q  On December 14, 2015, you attached an        10:40
25  external storage device to your Google-issued laptop  10:40

1  for approximately eight hours; correct?          10:40
2    A  On the advice and direction of my counsel, I  10:40
3  respectfully decline to answer.  And I assert the  10:40
4  rights guaranteed to me under the Fifth Amendment of  10:40
5  the Constitution of the United States.           10:40
6  Q  On December 14, 2015, you copied             10:40
7  approximately 14,000 confidential Google files which  10:40
8  you had previously downloaded from the SVN server to  10:40
9  an external storage device; correct?             10:40
10    A  On the advice and direction of my counsel, I  10:40
11  respectfully decline to answer.  And I assert the  10:40
12  rights guaranteed to me under the Fifth Amendment of  10:40
13  the Constitution of the United States.           10:40
14  Q  On December 14th, 2015, you copied           10:40
15  approximately 14,000 confidential Google files to an  10:40
16  external storage device without authorization from  10:40
17  Google; correct?                                 10:40
18    A  On the advice and direction of my counsel, I  10:40
19  respectfully decline to answer.  And I assert the  10:40
20  rights guaranteed to me under the Fifth Amendment of  10:40
21  the Constitution of the United States.           10:40
22  Q  On December 14th, 2015, you copied 14 --     10:40
23  approximately 14,000 confidential Google files to an  10:41
24  external storage device so you could use them for the  10:41
25  new company you were founding; correct?          10:41

1    A  On the advice and direction of my counsel, I  10:41
2  respectfully decline to answer.  And I assert the  10:41
3  rights guaranteed to me under the Fifth Amendment of  10:41
4  the Constitution of the United States.           10:41
5  Q  On December 14, 2015, you copied             10:41
6  approximately 14,000 confidential Google files to an  10:41
7  external storage device so that you could use them to  10:41
8  compete with Google; correct?                    10:41
9    A  On the advice and direction of my counsel, I  10:41
10  respectfully decline to answer.  And I assert the  10:41
11  rights guaranteed to me under the Fifth Amendment of  10:41
12  the Constitution of the United States.           10:41
13  Q  On December 18, 2015, you reformatted the    10:41
14  Windows operating system on your Google-issued laptop  10:41
15  to a Linux operating system; correct?            10:41
16    A  On the advice and direction of my counsel, I  10:41
17  respectfully decline to answer.  And I assert the  10:41
18  rights guaranteed to me under the Fifth Amendment of  10:41
19  the Uni- -- of the Constitution of the United States.  10:41
20  Q  On December 18, 2015, you reformatted the    10:41
21  operating system on your Google-issued laptop because  10:42
22  you thought this would conceal the fact that you had  10:42
23  downloaded and copied 14,000 confidential Google files  10:42
24  from the SVN server; correct?                    10:42
25    A  On the advice and direction of my counsel, I  10:42

1  respectfully decline to answer.  And I assert the  10:42
2  rights guaranteed to me under the Fifth Amendment of  10:42
3  the Constitution of the United States.           10:42
4  Q  You had access to Google's internal drive    10:42
5  database while you were a Google employee; correct?  10:42
6    A  On the advice and direction of my counsel, I  10:42
7  respectfully decline to answer.  And I assert my   10:42
8  rights guaranteed to me under the Fifth Amendment of  10:42
9  the Constitution of the United States.           10:42
10  Q  On January 3rd, 2016, you exported five --   10:42
11  five files from Google Drive's database to a personal  10:42
12  device; correct?                                 10:42
13    A  On the advice and direction of my counsel, I  10:42
14  respectfully decline to answer.  And I assert the  10:42
15  rights guaranteed to me under the Fifth Amendment of  10:42
16  the Constitution of the United States.           10:42
17  Q  On January 3rd, 2016, you exported a file    10:42
18  called "PBR Intensity Calibration" from Google's  10:42
19  internal drive database; correct?               10:43
20    A  On the advice and direction of my counsel, I  10:43
21  respectfully decline to answer.  And I assert the  10:43
22  rights guaranteed to me under the Fifth Amendment of  10:43
23  the Constitution of the United States.           10:43
24  Q  On January 3rd, 2016, you exported a file    10:43
25  called "PBR Extrinsic Calibration" from Google's  10:43

17 (Pages 62 - 65)

ATTORNEYS EYES ONLY

**Page 66**

```
 1  internal drive database; correct?               10:43
 2     A  On the advice and direction of my counsel, I  10:43
 3  respectfully decline to answer.  And I assert the  10:43
 4  rights guaranteed to me under the Fifth Amendment of  10:43
 5  the Constitution of the United States.           10:43
 6     Q  On January 3rd, 2016, you also exported files  10:43
 7  called "TX and RX Tuning Instructions," "GBR Assembly  10:43
 8  Flowchart SOP," and "TBR Testing Station" from   10:43
 9  Google's internal drive database; correct?       10:43
10     A  On the advice and direction of my counsel, I  10:43
11  respectfully decline to answer.  And I assert the  10:43
12  rights guaranteed to me under the Fifth Amendment of  10:43
13  the Constitution of the United States.           10:44
14     Q  The five files you exported from Google's   10:44
15  internal drive database on January 3rd, 2016, were  10:44
16  exported so that you could use them to support the new  10:44
17  company you were founding?                       10:44
18     A  On the advice and direction of my counsel, I  10:44
19  respectfully decline to answer.  And I assert the  10:44
20  rights guaranteed to me under the Fifth Amendment of  10:44
21  the Constitution of the United States.           10:44
22     Q  The five files that you exported from        10:44
23  Google's internal drive database on January 3rd, 2016,  10:44
24  were exported so that you could use them to compete  10:44
25  with Google; correct?                            10:44
```

**Page 67**

```
 1     A  On the advice and direction of my counsel, I  10:44
 2  respectfully decline to answer.  And I assert the  10:44
 3  rights guaranteed to me under the Fifth Amendment of  10:44
 4  the Constitution of the United States.           10:44
 5     Q  The 14,000 files that you exported to an     10:44
 6  external device on December 14th, 2015, were exported  10:45
 7  so that you could use them to compete with Google by  10:45
 8  using Google's confidential information; correct?  10:45
 9     A  On the advice and direction of my counsel, I  10:45
10  respectfully decline to answer.  And I assert the  10:45
11  rights guaranteed to me under the Fifth Amendment of  10:45
12  the Constitution of the United States.           10:45
13     Q  The five files you exported on January 3rd,  10:45
14  2016, were exported so that you could compete with  10:46
15  Google by using Google's confidential information?  10:46
16     A  On the advice and direction of my counsel, I  10:46
17  respectfully decline to answer.  And I assert the  10:46
18  rights guaranteed to me under the Fifth Amendment of  10:46
19  the Constitution of the United States.           10:46
20     Q  On January 11th, 2016, you exported a file   10:46
21  called "Chauffeur TL Weekly Updates Q4 2015" from  10:46
22  Google's internal drive database?                10:46
23     A  On the direction of my counsel, I           10:46
24  respectfully decline to answer.  And I assert the  10:46
25  rights guaranteed to me under the Fifth Amendment of  10:46
```

**Page 68**

```
 1  the Constitution of the United States.           10:46
 2     Q  On January 11, 2016, you exported a file from  10:46
 3  Google's internal drive database so that you could use  10:46
 4  it to support the new company you were founding --  10:46
 5  founding; correct?                               10:46
 6     A  On the advice and direction of my counsel, I  10:46
 7  respectfully decline to answer.  And I assert the  10:46
 8  rights guaranteed to me under the Fifth Amendment of  10:46
 9  the Constitution of the United States.           10:47
10     Q  On January 11, 2016, you exported a file from  10:47
11  Google's internal drive database so that you could use  10:47
12  it at your new company to compete with Google?   10:47
13     A  On the advice of and -- and direction of my  10:47
14  counsel, I respectfully decline to answer.  And I  10:47
15  assert the rights guaranteed to me under the Fifth  10:47
16  Amendment of the Constitution of the United States.  10:47
17     Q  You directed Google employees that you asked  10:47
18  to join you at your new company to export documents  10:47
19  from Google computers, before departing Google, to  10:47
20  bring with you to Waymo -- to Otto?              10:47
21     A  On the advice and direction of my counsel, I  10:48
22  respectfully decline to answer.  And I assert the  10:48
23  rights guaranteed to me under the Fifth Amendment of  10:48
24  the Constitution of the United States.           10:48
25     Q  Let me just ask that again, because I asked  10:48
```

**Page 69**

```
 1  it wrong.                                        10:48
 2        You directed Google employees, that you asked  10:48
 3  to join you at your new company, to export documents  10:48
 4  from Google computers, before departing Google, to  10:48
 5  bring them with you to Otto?                     10:48
 6     A  On the advice and direction of my counsel, I  10:48
 7  respectfully decline to answer.  And I assert the  10:48
 8  rights guaranteed to me under the Fifth Amendment of  10:48
 9  the Constitution of the United States.           10:48
10     Q  You asked that former Google employees bring  10:48
11  Google confidential information with them when they  10:48
12  joined your new company?                         10:48
13     A  On the advice and direction of my counsel, I  10:48
14  respectfully decline to answer.  And I assert the  10:48
15  rights guaranteed to me under the Fifth Amendment of  10:48
16  the Constitution of the United States.           10:49
17     Q  Sameer Kshirsagar was a former Google        10:49
18  employee who you asked to take confidential        10:49
19  information from Google to Otto; correct?         10:49
20     A  On the advice and direction of my counsel, I  10:49
21  respectfully decline to answer.  And I assert the  10:49
22  rights guaranteed to me under the Fifth Amendment of  10:49
23  the Constitution of the United States.           10:49
24     Q  You encouraged Sameer to bring confidential  10:49
25  information with him when you recruited him to join  10:49
```

18 (Pages 66 - 69)

ATTORNEYS EYES ONLY

1 Otto; correct?                                          10:49
2    A  On the advice and direction of my counsel, I    10:49
3 respectfully decline to answer.  And I assert the      10:49
4 rights guaranteed to me under the Fifth Amendment of   10:49
5 the Constitution of the United States.                 10:49
6    Q  You recruited Google employees to join you at    10:49
7 Otto because they had access to Google's confidential  10:50
8 information?                                            10:50
9    A  On the advice and direction of my counsel, I     10:50
10 respectfully decline to answer.  And I assert the      10:50
11 rights guaranteed to me under the Fifth Amendment of   10:50
12 the Constitution of the United States.                 10:50
13    Q  You continue to retain documents, including      10:50
14 Google and Waymo confidential information, that you    10:50
15 downloaded prior to your resignation of Google?        10:50
16    A  On the advice and direction of my counsel, I     10:50
17 respectfully decline to answer.  And I assert the      10:50
18 rights guaranteed to me under the Fifth Amendment of   10:50
19 the Constitution of the United States.                 10:50
20    Q  You continue to retain the 14,000 documents      10:50
21 that you downloaded in December 15 -- December 2015     10:50
22 from the Google SVN server?                            10:50
23    A  On the advice and direction of my counsel, I     10:50
24 respectfully decline to answer.  And I assert the      10:50
25 rights guaranteed to me under the Fifth Amendment of   10:50

Page 70

1 the Constitution of the United States.                 10:51
2    Q  You still have the media device through which    10:51
3 you downloaded the approximately 14,000 files in        10:51
4 December 15 -- December 2015; correct?                  10:51
5    A  On the advice and direction of my counsel, I     10:51
6 respectfully decline to answer.  And I assert the       10:51
7 rights guaranteed to me under the Fifth Amendment of    10:51
8 the Constitution of the United States.                  10:51
9    Q  You have referred to the 14,000 documents         10:51
10 downloaded in 2015 during your work at Otto; correct?  10:51
11    A  On the advice and direction of my counsel, I     10:51
12 respectfully decline to answer.  And I assert the      10:51
13 rights guaranteed to me under the Fifth Amendment of   10:51
14 the Constitution of the United States.                 10:51
15    Q  You have referred to the 14,000 documents        10:51
16 downloaded in 2015 during your work at Uber; correct?  10:51
17    A  On the advice and direction of my counsel, I     10:51
18 respectfully decline to answer.  And I assert the      10:51
19 rights guaranteed to me under the Fifth Amendment of   10:51
20 the Constitution of the United States.                 10:52
21    Q  Uber is aware that you have referred to the      10:52
22 14,000 documents downloaded in December 2015 during    10:52
23 your work at Uber; correct?                            10:52
24    A  On the advice and direction of my counsel,       10:52
25 respectfully decline to answer.  And I assert the      10:52

Page 71

1 rights guaranteed to me under the Fifth Amendment of   10:52
2 the Constitution of the United States.                 10:52
3    Q  Uber has encouraged you to use the               10:52
4 14,000 documents downloaded in December 2015 during    10:52
5 your work at Uber; correct?                            10:52
6    A  On the advice and direction of my counsel, I     10:52
7 respectfully decline to answer.  And I assert the      10:52
8 rights guaranteed to me under the Fifth Amendment of   10:52
9 the Constitution of the United States.                 10:52
10    Q  Uber and its management know that you have       10:52
11 retained the 14,000 documents you downloaded in        10:52
12 December 2015?                                          10:52
13    MS. RAY:  Objection; form.                          10:52
14    MR. EHRLICH:  You can answer.                       10:52
15    THE WITNESS:  On the advice and direction of        10:52
16 my counsel, I respectfully decline to answer.  And I   10:52
17 assert the rights guaranteed to me under the Fifth     10:52
18 Amendment of the Constitution of the United States.    10:53
19    MR. PERLSON:  Q.  You have informed Goober          10:53
20 and -- Uber and its management that you still have the 10:53
21 14,000 documents downloaded in December 2015 from      10:53
22 Google?                                                 10:53
23    A  On the advice and direction of my counsel, I     10:53
24 respectfully decline to answer.  And I assert the      10:53
25 rights guaranteed to me under the Fifth Amendment of   10:53

Page 72

1 the Constitution of the United States.                 10:53
2    Q  You told Uber that you had in your personal       10:53
3 possession the 14,000 documents downloaded from Google 10:53
4 before the Otto acquisition; correct?                   10:53
5    A  On the advice and direction of my counsel, I     10:53
6 respectfully decline to answer.  And I assert the      10:53
7 rights guaranteed to me under the Fifth Amendment of   10:53
8 the Constitution of the United States.                  10:53
9    Q  You told Uber that you had in your personal       10:53
10 possession the 14,000 documents downloaded in 2015     10:53
11 before you even left Google; correct?                   10:54
12    A  On the advice and direction of my counsel, I     10:54
13 respectfully decline to answer.  And I assert the      10:54
14 rights guaranteed to me under the Fifth Amendment of   10:54
15 the Constitution of the United States.                  10:54
16    Q  When Mr. Kalanick recruited you to join Uber,    10:54
17 you informed him that you had taken the                 10:54
18 14,000 documents downloaded in 2015 from Google?       10:54
19    A  On the advice and direction of my counsel, I     10:54
20 respectfully decline to answer.  And I assert the      10:54
21 rights guaranteed to me under the Fifth Amendment of   10:54
22 the Constitution of the United States.                  10:54
23    Q  While Mr. Kalanick was recruiting you to join    10:54
24 Uber, he did not tell you to return the 14,000         10:54
25 documents you had downloaded in 2015 from Google?      10:55

Page 73

19 (Pages 70 - 73)

ATTORNEYS EYES ONLY

| | |
|---|---|
| 1  A  On the advice and direction of my counsel, I   10:55 | 1  the Constitution of the United States.   10:57 |
| 2  respectfully decline to answer.  And I assert the   10:55 | 2  Q  Uber was aware that you were sharing with   10:57 |
| 3  rights guaranteed to me under the Fifth Amendment of   10:55 | 3  them information obtained from the 14,000 files you   10:58 |
| 4  the Constitution of the United States.   10:55 | 4  downloaded in December 15 -- 2015 as part of your   10:58 |
| 5  Q  When Mr. Kalanick recruited you to join Uber,   10:55 | 5  consulting work for Uber?   10:58 |
| 6  he encouraged you to keep the 14,000 documents you had   10:55 | 6  MS. RAY:  Objection; form.   10:58 |
| 7  downloaded in 2015 from Google and use them at Uber   10:55 | 7  MR. EHRLICH:  You can answer.   10:58 |
| 8  when you joined Uber; correct?   10:55 | 8  THE WITNESS:  Okay.   10:58 |
| 9  A  On the advice and direction of my counsel, I   10:55 | 9  On the advice and direction of my counsel, I   10:58 |
| 10  respectfully decline to answer.  And I assert the   10:55 | 10  respectfully decline to answer.  And I assert the   10:58 |
| 11  rights guaranteed to me under the Fifth Amendment of   10:55 | 11  rights guaranteed to me under the Fifth Amendment of   10:58 |
| 12  the Constitution of the United States.   10:55 | 12  the Constitution of the United States.   10:58 |
| 13  Q  You were retained as a consultant by Uber   10:55 | 13  MR. PERLSON:  Q.  Uber has never asked you to   10:58 |
| 14  before the Otto acquisition; correct?   10:55 | 14  return to Google or Waymo the 14,000 files you   10:58 |
| 15  A  On the advice and direction of my counsel, I   10:55 | 15  downloaded in December 2015?   10:58 |
| 16  respectfully decline to answer.  And I assert the   10:55 | 16  A  On the advice and direction of my counsel, I   10:58 |
| 17  rights guaranteed to me under the Fifth Amendment of   10:55 | 17  respectfully decline to answer.  And I assert the   10:58 |
| 18  the Constitution of the United States.   10:56 | 18  rights guaranteed to me under the Fifth Amendment of   10:58 |
| 19  Q  You were retained as a consultant by Uber   10:56 | 19  the Constitution of the United States.   10:58 |
| 20  before you left Google; correct?   10:56 | 20  Q  You have retained the -- the 14,000 files you   10:58 |
| 21  A  On the advice and direct- -- and direction of   10:56 | 21  downloaded in December 2015 so that you can continue   10:59 |
| 22  my counsel, I respectfully decline to answer.  And I   10:56 | 22  to use this information at your work at Uber?   10:59 |
| 23  assert the rights guaranteed to me under the Fifth   10:56 | 23  A  On the advice and direction of my counsel, I   10:59 |
| 24  Amendment of the Constitution of the United States.   10:56 | 24  respectfully decline to answer.  And I assert the   10:59 |
| 25  Q  The reason you were retained as a consultant   10:56 | 25  rights guaranteed to me under the Fifth Amendment of   10:59 |
| Page 74 | Page 76 |

| | |
|---|---|
| 1  by Uber before the Otto acquisition was so that you   10:56 | 1  the Constitution of the United States.   10:59 |
| 2  could share the confidential information you learned   10:56 | 2  Q  Uber has -- start over again.   10:59 |
| 3  while you were employed by Google with Uber?   10:56 | 3  Uber has instructed you, and continues to   10:59 |
| 4  A  On the advice and direction of my counsel, I   10:56 | 4  instruct you, to keep the 14,000 files you downloaded   10:59 |
| 5  respectfully decline to answer.  And I assert the   10:56 | 5  in December 2015 so that you can continue to use this   10:59 |
| 6  rights guaranteed to me under the Fifth Amendment of   10:56 | 6  information at your work at Uber?   10:59 |
| 7  the Constitution of the United States.   10:56 | 7  A  On the advice and direction of my counsel, I   10:59 |
| 8  Q  While you were acting as a consultant for   10:56 | 8  respectfully decline to answer.  And I assert the   10:59 |
| 9  Uber, you did share Google confidential information   10:56 | 9  rights guaranteed to me under the Fifth Amendment of   10:59 |
| 10  you learned while you were employed by Google with   10:57 | 10  the Constitution of the United States.   11:00 |
| 11  Uber?   10:57 | 11  Q  You have retained the information -- let me   11:00 |
| 12  A  On the advice and direction of my counsel, I   10:57 | 12  start over again.   11:00 |
| 13  respectfully decline to answer.  And I assert the   10:57 | 13  You have retained the 14,000 documents and   11:00 |
| 14  rights guaranteed to me under the Fifth Amendment of   10:57 | 14  other -- strike that.   11:00 |
| 15  the Constitution of the United States.   10:57 | 15  You have retained the 14,000 documents you   11:00 |
| 16  Q  While the -- the -- start over again.   10:57 | 16  downloaded in December 2015 because it contains   11:00 |
| 17  The information that you shared with   10:57 | 17  information that is not generally known in the   11:00 |
| 18  Google -- let me start over again.   10:57 | 18  relevant field of that information?   11:00 |
| 19  The information that you shared with Uber   10:57 | 19  A  On the advice and direction of my counsel, I   11:00 |
| 20  while you were a consultant for Uber included   10:57 | 20  respectfully decline to answer.  And I assert the   11:00 |
| 21  information from the 14,000 files you downloaded in   10:57 | 21  rights guaranteed to me under the Fifth Amendment of   11:00 |
| 22  December 2015?   10:57 | 22  the Constitution of the United States.   11:00 |
| 23  A  On the advice and direction of my counsel, I   10:57 | 23  Q  You have retained the -- the 14,000 files you   11:00 |
| 24  respectfully decline to answer.  And I assert the   10:57 | 24  downloaded in December 2015 and the other information   11:00 |
| 25  rights guaranteed to me under the Fifth Amendment of   10:57 | 25  you took with you -- let me start over again.   11:00 |
| Page 75 | Page 77 |

20 (Pages 74 - 77)

ATTORNEYS EYES ONLY

```
 1      You have retained the 14,000 files you      11:00
 2 downloaded in 2015 because it derives independent     11:01
 3 economic value from the fact that the information in   11:01
 4 those documents is not generally known in the relevant 11:01
 5 field; correct?                                  11:01
 6    A  On the advice and direction of my counsel, I  11:01
 7 respectfully decline to answer.  And I assert the     11:01
 8 rights guaranteed to me under the Fifth Amendment of  11:01
 9 the Constitution of the United States.          11:01
10    Q  The 14,000 files that you downloaded in     11:01
11 December 2015 contain trade secrets; correct?    11:01
12      MS. RAY:  Objection; form.                11:01
13      MR. EHRLICH:  You can answer.            11:01
14      THE WITNESS:  Okay.                      11:01
15      On the advice and direction of my counsel, I  11:01
16 respectfully decline to answer.  And I assert the     11:01
17 rights guaranteed to me under the Fifth Amendment of  11:01
18 the Constitution of the United States.          11:02
19      MR. PERLSON:  Q.  You retained the five files 11:02
20 you exported in January 2016 because it contains      11:02
21 informa- -- they contain information that derive      11:02
22 independent economic value from the fact that it is   11:02
23 not generally known?                             11:02
24    A  On the advice and direction of my counsel, I  11:02
25 respectfully decline to answer.  And I assert the     11:02
                                          Page 78
```

```
 1 rights guaranteed to me under the Fifth Amendment of  11:02
 2 the Constitution of the United States.          11:02
 3    Q  You have used the confidential information   11:02
 4 contained in the five files exported on January 3rd,  11:03
 5 2016, for the benefit of Uber in the past?       11:03
 6    A  On the advice and direction of my counsel, I  11:03
 7 respectfully decline to answer.  And I assert the     11:03
 8 rights guaranteed to me under the Fifth Amendment of  11:03
 9 the Constitution of the United States.          11:03
10    Q  You expect to continue to use the 14,000    11:03
11 documents you downloaded in December 2015 for the     11:03
12 benefit of Uber; correct?                        11:03
13    A  On the advice and direction of my counsel, I  11:03
14 respectfully decline to answer.  And I assert the     11:03
15 rights guaranteed to me under the Fifth Amendment of  11:03
16 the Constitution of the United States.          11:03
17    Q  You expect to continue to use the five files 11:03
18 you downloaded on January 3rd, 2016, for the benefit  11:03
19 of Uber?                                         11:04
20    A  On the advice and direction of my counsel, I  11:04
21 respect -- I respectfully decline to answer.  And I   11:04
22 assert the rights guaranteed to me under the Fifth    11:04
23 Amendment of the Constitution of the United States.   11:04
24    Q  Are you aware that, in a hearing before the  11:04
25 judge in this case, Uber's lawyer, Arturo Gonzalez,   11:04
                                          Page 79
```

```
 1 said that he would love to put you on the witness      11:04
 2 stand to explain what happened, because he thinks you  11:04
 3 have a good story to tell?                       11:04
 4      MS. RAY:  I instruct you not to answer to the  11:04
 5 extent that what you know is as the result of         11:04
 6 attorney-client privileged communications.  But you   11:04
 7 may otherwise answer.                            11:04
 8      MR. EHRLICH:  I join in that instruction.    11:04
 9 But, to the extent it goes beyond that, I instruct you 11:04
10 to assert your rights.                           11:04
11      THE WITNESS:  On the advice and direction of  11:04
12 my counsel, I respectfully decline to answer.  And I  11:04
13 assert the rights guaranteed to me under the Fifth    11:04
14 Amendment of the Constitution of the United States.   11:04
15      MR. PERLSON:  Q.  Do you have a good story to 11:05
16 tell in this case?                               11:05
17    A  On the advice and direction of my counsel, I  11:05
18 respectfully decline to answer.  And I assert the     11:05
19 rights guaranteed to me under the Fifth Amendment of  11:05
20 the Constitution of the United States.          11:05
21    Q  Have you told your good story to            11:05
22 Mr. Gonzalez?                                    11:05
23    A  On the advice and direction of my counsel, I  11:05
24 respectfully decline to answer.  And I assert the     11:05
25 rights granted to me under the Fifth Amendment of the 11:05
                                          Page 80
```

```
 1 Constitution of the United States.               11:05
 2    Q  Is part of your good story that you received  11:05
 3 a bachelor of science degree in industrial engineering 11:05
 4 and operations research in 2002 from the University of 11:05
 5 California at Berkeley?                          11:05
 6      MR. EHRLICH:  Hold on one second.  Let me    11:05
 7 just -- the question is whether that's part of your   11:05
 8 good story.                                      11:05
 9      So, I'm going to instruct you to assert your  11:05
10 rights.  Go ahead.                               11:05
11      THE WITNESS:  Okay.                        11:05
12      On the advice and direction of my counsel, I  11:05
13 respectfully decline to answer.  And I assert the     11:05
14 rights guaranteed to me under the Fifth Amendment of  11:05
15 the Constitution of the United States.          11:06
16      MR. EHRLICH:  Mr. Perlson, just -- can I --   11:06
17 for the record, my partner, Ismail Ramsey, has joined. 11:06
18      And, if I could just take a pause.  I know    11:06
19 that wasn't your question here.  But as is clear,     11:06
20 he's -- he's being instructed to assert his           11:06
21 constitutional rights very broadly.              11:06
22      However, if you did want to ask about any of  11:06
23 his work or upbringing before joining Google, you can  11:06
24 go ahead and ask those questions, if -- if that's of  11:06
25 interest.                                        11:06
                                          Page 81
```

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY

```
 1       MR. PERLSON:  Thanks.              11:06
 2   Q  Is part of your good story that you received   11:06
 3   a master's degree from Berkeley in 2003?    11:06
 4   A  On the advice and direction of my counsel, I   11:06
 5   respectfully decline to answer.  And I assert the   11:06
 6   rights guaranteed to me under the Fifth Amendment of   11:06
 7   the Constitution of the United States.        11:07
 8   Q  Is part of your good story that you developed   11:07
 9   technology for a robotic motorcycle between 2003 and   11:07
10   2006?                        11:07
11   A  On the advice and direction of my counsel, I   11:07
12   respectfully decline to answer.  And I assert the   11:07
13   rights guaranteed to me under the Fifth Amendment of   11:07
14   the Constitution of the United States.        11:07
15       MR. EHRLICH:  And excuse me, Counsel.  I just   11:07
16   want to make clear -- I want to make sure I     11:07
17   understand.                    11:07
18       You're not asking the question of fact    11:07
19   whether he, in fact, did these things, or whether he   11:07
20   had this education or, you know, developed this   11:07
21   robotic motorcycle.                11:07
22       You're framing it in terms of whether that's   11:07
23   part of the good story that Mr. Gonzalez was referring   11:07
24   to?                        11:07
25       MR. PERLSON:  I'm asking the questions that   11:07
```
Page 82

```
 1   I'm asking.  And the -- Judge Alsup's rules, I think,   11:07
 2   are pretty clear that, if you have an objection, you   11:07
 3   say it in the basis of form.            11:07
 4       MR. EHRLICH:  Okay.              11:07
 5       MR. PERLSON:  So, if you want to object on   11:07
 6   the basis of form --                11:07
 7       MR. EHRLICH:  So no, I don't want to object.   11:07
 8   I just would -- thought it might be helpful if you   11:07
 9   want answers to those questions.  But I'll -- I'll --   11:08
10   I won't object, and you can go ahead.        11:08
11       I don't know if there's a question.      11:08
12       MR. PERLSON:  I don't, either.        11:08
13       MR. EHRLICH:  I think there wasn't, but I --   11:08
14   I wanted to offer that.               11:08
15       MR. PERLSON:  Okay.              11:08
16       MS. RAY:  Could -- could you hold on a     11:08
17   moment.                      11:08
18       May we chat a moment.              11:08
19       Can we go off the record a moment, please.   11:08
20       MR. PERLSON:  Sure.  There's not -- I don't   11:08
21   think there's a question.              11:08
22       THE VIDEOGRAPHER:  We are going off the    11:08
23   record.  The time is 11:08.             11:08
24       (Recess taken.)                11:08
25       THE VIDEOGRAPHER:  We are back on the record.   11:24
```
Page 83

```
 1   The time is 11:24.                11:24
 2       MR. PERLSON:  Q.  Mr. Levandowski, is part of   11:24
 3   your good story that you developed a self-driving   11:24
 4   motorcycle that entered the DARPA Challenge of -- in   11:24
 5   2004?                        11:24
 6   A  On the advice and direction of my counsel, I   11:24
 7   respectfully decline to answer.  And I assert the   11:24
 8   rights guaranteed to me under the Fifth Amendment of   11:24
 9   the Constitution of the United States.        11:24
10   Q  Is part of your good story that you were the   11:24
11   chief technologist of unmanned systems at ENSCO, Inc.,   11:24
12   from 2006 to 2007?                11:25
13   A  On the advice and direction of my counsel, I   11:25
14   respectfully decline to answer.  And I assert the   11:25
15   rights guaranteed to me under the Fifth Amendment of   11:25
16   the Constitution of the United States.        11:25
17   Q  Is part of your story the work you did -- I'm   11:25
18   sorry.                        11:25
19       Is part of your good story the work you did   11:25
20   for Google between 2007 and 2016?          11:25
21   A  On the advice and direction of my counsel, I   11:25
22   respectfully decline to answer.  And I assert the   11:25
23   rights guaranteed to me under the Fifth Amendment of   11:25
24   the Constitution of the United States.        11:25
25   Q  Did the work that you did while you were at   11:25
```
Page 84

```
 1   Berkeley have to do with -- have anything to do with   11:25
 2   the work that you did while you were at Google?   11:25
 3       MR. EHRLICH:  You can answer the question   11:25
 4   about your work at Berkeley -- the -- the nature of   11:25
 5   your work at Berkeley.               11:25
 6       THE WITNESS:  Sure.              11:25
 7       I --                    11:25
 8       MR. EHRLICH:  But -- but I'm going to     11:25
 9   instruct you not to answer in any way about matters   11:25
10   that occurred after the date you began employment with   11:26
11   Google.                      11:26
12       THE WITNESS:  Okay.              11:26
13       Well, I can't answer whether it relates or   11:26
14   not.  But I can say that, at Berkeley, I worked on   11:26
15   self-driving vehicles, indoors, outdoors, and other   11:26
16   robotic vehicles.                 11:26
17       MR. PERLSON:  Q.  And, did the work that   11:26
18   you -- and does the work that you did at Berkeley   11:26
19   relating to self-driving vehicles have anything to do   11:26
20   with the work that you did at Google?        11:26
21   A  I'm going to --                11:26
22       MR. EHRLICH:  On -- on that question, because   11:26
23   I'm trying to be very clear to preserve        11:26
24   Mr. Levandowski's Fifth Amendment privilege here, that   11:26
25   if the question is calling for the nature of his work   11:26
```
Page 85

22 (Pages 82 - 85)

| | |
|---|---|
| 1 prior to joining Google, then you can answer.     11:26 | 1      MR. EHRLICH:  I'm going to instruct you.     11:29 |
| 2      But I'm instructing you not to draw any     11:26 | 2      THE WITNESS:  On the advice and direction of  11:29 |
| 3 comparisons between the two, because you are not     11:26 | 3 my counsel, I respectfully decline to answer.  And I  11:29 |
| 4 answering questions about matters occurring after you  11:27 | 4 assert the rights and -- I assert the rights     11:29 |
| 5 began employment with Google.     11:27 | 5 guaranteed to me under the Fifth Amendment of the     11:29 |
| 6      Go ahead.     11:27 | 6 Constitution of the United States.     11:29 |
| 7      THE WITNESS:  Can I have you repeat the     11:27 | 7      MR. PERLSON:  Q.  And how does the     11:29 |
| 8 question then.     11:27 | 8 self-driving vehicle technology that you worked on at  11:29 |
| 9      MR. PERLSON:  Sure.     11:27 | 9 Goo- -- at Google relate to the work you've described  11:29 |
| 10      THE WITNESS:  I can probably read it.     11:27 | 10 at Berkeley?     11:29 |
| 11      MR. EHRLICH:  Yeah, maybe you can look here.  11:27 | 11      A  On the advice and direction of my counsel, I  11:29 |
| 12      THE WITNESS:  Yeah.     11:27 | 12 respectfully decline to answer.  And I assert the     11:29 |
| 13      And does -- okay.  And, did the work that --  11:27 | 13 rights guaranteed to me under the Fifth Amendment of  11:29 |
| 14 the work that you did at Berkeley, relating to     11:27 | 14 the Constitution of the United States.     11:29 |
| 15 self-driving vehicle, have anything to do with the     11:27 | 15      Q  How does the work that you did, in relation  11:29 |
| 16 work that you did at Google?     11:27 | 16 to the self-driving motorcycle that entered the DARPA  11:29 |
| 17      MR. EHRLICH:  At Google.  So, answer the     11:27 | 17 Grand Challenge in 2004, relate to the work that you  11:30 |
| 18 first part.     11:27 | 18 did for Google in self-driving vehicle technology?     11:30 |
| 19      THE WITNESS:  At Berkeley, I worked on     11:27 | 19      A  On the advice and direction of my counsel, I  11:30 |
| 20 multiple projects, including navigation of vehicles,  11:27 | 20 respectfully decline to answer.  And I assert the     11:30 |
| 21 self-driving vehicles built on -- using Java for     11:27 | 21 rights guaranteed to me under the Fifth Amendment of  11:30 |
| 22 navigation, using cameras, GPS, and other sensors,     11:27 | 22 the Constitution of the United States.     11:30 |
| 23 too.     11:28 | 23      MR. EHRLICH:  And Counsel, can I just make a  11:30 |
| 24      MR. PERLSON:  Q.  And does the work that you  11:28 | 24 comment?     11:30 |
| 25 just described that you did at Ber- -- Berkeley have  11:28 | 25      I really want you to get answers to any     11:30 |
| Page 86 | Page 88 |

| | |
|---|---|
| 1 any relation to the work that you did at Google?     11:28 | 1 questions you can, consistent with his Fifth Amendment  11:30 |
| 2      A  On the --     11:28 | 2 rights.     11:30 |
| 3      MR. EHRLICH:  I'll instruct you --     11:28 | 3      So, if you are interested in asking questions  11:30 |
| 4      THE WITNESS:  -- advice of -- on the -- on     11:28 | 4 about the -- the self-driving motorcycle related to     11:30 |
| 5 the advice and direction of my counsel, I respectfully  11:28 | 5 the DARPA Grand Challenge, I encourage you to ask     11:30 |
| 6 decline to answer.  And I assert the rights guaranteed  11:28 | 6 that.  He can answer those questions.     11:30 |
| 7 to me under the Fifth Amendment of the Constitution of  11:28 | 7      You don't have to answer -- you don't have to  11:30 |
| 8 the United States.     11:28 | 8 ask him, of course.  It's your choice.     11:30 |
| 9      MR. PERLSON:  Q.  And, does the work that you  11:28 | 9      MR. PERLSON:  Q.  How does the work that you  11:30 |
| 10 just described, while you were at Berkeley, have     11:28 | 10 did, in relation to the self-driving motorcycle that  11:31 |
| 11 anything to do with the work that you do at Uber?     11:28 | 11 entered the DARPA Challenge in 2004, relate to the     11:31 |
| 12      A  On the advice and direction of my counsel, I  11:28 | 12 work that you are doing now at Uber?     11:31 |
| 13 respectfully decline to answer.  And I assert the     11:28 | 13      A  On the advice and direction of my counsel, I  11:31 |
| 14 rights guaranteed to me under the Fifth Amendment of  11:28 | 14 respectfully decline to answer.  And I assert the     11:31 |
| 15 the Constitution of the United States.     11:28 | 15 rights guaranteed to me under the Fifth Amendment of  11:31 |
| 16      Q  And, does the work that you did at Berkeley  11:28 | 16 the Constitution of the United States.     11:31 |
| 17 cause you to be knowledgeable as to the state of     11:28 | 17      Q  What are the advances that have been made at  11:31 |
| 18 self-driving car technology today?     11:28 | 18 Uber regarding self-driving technology over the     11:31 |
| 19      MR. EHRLICH:  You can answer that.     11:28 | 19 self-driving motorcycle that you developed in relation  11:31 |
| 20      THE WITNESS:  Yeah, I was one of the first     11:28 | 20 to the 2004 DARPA Grand Challenge?     11:31 |
| 21 pioneers in the field in terms of building     11:28 | 21      MR. EHRLICH:  Hold on.  Let me read the     11:31 |
| 22 self-driving vehicles.     11:29 | 22 question.     11:31 |
| 23      MR. PERLSON:  Q.  And what -- and how -- how  11:29 | 23      I'm going to instruct you to assert your     11:32 |
| 24 does Uber's current self-driving technology compare to  11:29 | 24 rights.     11:32 |
| 25 the technology that you worked on at Berkeley?     11:29 | 25      THE WITNESS:  On the advice and direction of  11:32 |
| Page 87 | Page 89 |

ATTORNEYS EYES ONLY

1 my counsel, I respectfully decline to answer.  And I    11:32
2 assert the rights guaranteed to me under the Fifth    11:32
3 Amendment of the Constitution of the United States.    11:32
4        MR. PERLSON:  Q.  What are the differences    11:32
5 between the self-driving car technology that you    11:32
6 worked on at Google and the self-driving car    11:32
7 technology that you currently work on at Uber?    11:32
8    A  On the advice and direction of my counsel, I    11:32
9 respectfully decline to answer.  And I assert the    11:32
10 rights guaranteed to me under the Fifth Amendment of    11:32
11 the Constitution of the United States.    11:32
12    Q  Do you agree that, while you were at Google,    11:32
13 Google invested time and money to allow you to develop    11:32
14 self-driving car technology?    11:33
15    A  On the advice and direction of my counsel, I    11:33
16 respectfully decline to answer.  And I assert the    11:33
17 rights guaranteed to me under the Fifth Amendment of    11:33
18 the Constitution of the United States.    11:33
19    Q  Do you agree that the development of    11:33
20 self-driving car technology at Google took years of    11:33
21 work?    11:33
22    A  On the advice and direction of my counsel, I    11:33
23 respectfully decline to answer.  And I assert the    11:33
24 rights guaranteed to me under the Fifth Amendment of    11:33
25 the Constitution of the United States.    11:33

Page 90

1    Q  Do you agree that Waymo's self-driving car    11:33
2 technology today is a result of years of work and a    11:33
3 substantial investment of time and money?    11:33
4    A  On the advice and direction of my counsel, I    11:33
5 respectfully decline to answer.  And I assert the    11:33
6 rights guaranteed to me under the Fifth Amendment of    11:33
7 the Constitution of the United States.    11:33
8    Q  Do you agree that development of self-driving    11:33
9 car technology, while you were at Google, involved    11:34
10 trial and error?    11:34
11    A  On the advice and direction of my counsel, I    11:34
12 respectfully decline to answer.  And I assert the    11:34
13 rights guaranteed to me under the Fifth Amendment of    11:34
14 the Constitution of the United States.    11:34
15    Q  Isn't it correct that you use the knowledge    11:34
16 you learned through trial and error, while you were    11:34
17 working on self-driving car technology at Google, in    11:34
18 your work for Uber?    11:34
19    A  On the advice and direction of my counsel, I    11:34
20 respectfully decline to answer.  And I assert the    11:34
21 rights guaranteed to me under the Fifth Amendment of    11:34
22 the Constitution of the United States.    11:34
23    Q  How does your work at Google relate to the    11:34
24 allegations in this case?    11:34
25    A  On the advice of my counsel, I respectfully    11:34

Page 91

1 decline to answer.  And I assert the rights guaranteed    11:34
2 to me under the Fifth Amendment of the Constitution of    11:34
3 the United States.    11:34
4    Q  Have you read the complaint in this case?    11:34
5    A  On the advice of my counsel, I respectfully    11:35
6 decline to answer.  And I assert the rights guaranteed    11:35
7 to me under the Fifth Amendment of the Constitution of    11:35
8 the United States.    11:35
9    Q  Have you read the -- Waymo's motion for    11:35
10 preliminary injunction in this case?    11:35
11    A  On the advice and direction of my counsel, I    11:35
12 respectfully decline to answer.    11:35
13    Q  Can you identify any allegation in Waymo's    11:35
14 complaint that you believe is incorrect?    11:35
15    A  Do you want me to finish my answer to the    11:35
16 previous one?    11:35
17        MR. EHRLICH:  Yeah, go ahead -- go ahead and    11:35
18 answer -- give the full answer.    11:35
19        THE WITNESS:  So, on the previous question,    11:35
20 let me just finish --    11:35
21        MR. PERLSON:  Q.  Oh, did I cut you off?    11:35
22    A  Yeah, it's okay.  No worries.  I'll just    11:35
23 repeat.    11:35
24    Q  I'm not really listening to --    11:35
25    A  I -- I imagine it's repetitive.    11:35

Page 92

1        But on the advice and direction of my    11:35
2 counsel, I respectfully decline to answer.  And I    11:35
3 assert the rights guaranteed to me under the Fifth    11:35
4 Amendment of the Constitution of the United States.    11:35
5        Okay.  Now, this current question?    11:35
6    Q  Let me just repeat it.    11:35
7    A  Yes.  Thank you.    11:35
8    Q  Can you identify any allegation in Waymo's    11:35
9 complaint that you believe is incorrect?    11:35
10    A  On the advice and direction of my counsel, I    11:35
11 respectfully decline to answer.  And I assert the    11:35
12 rights guaranteed to me under the Fifth Amendment of    11:35
13 the Constitution of the United States.    11:36
14    Q  Can you identify any allegation in Waymo's    11:36
15 preliminary injunction motion that is incorrect?    11:36
16    A  On the advice and direction of my counsel, I    11:36
17 respectfully decline to answer.  And I assert the    11:36
18 rights guaranteed to me under the Fifth Amendment of    11:36
19 the Constitution of the United States.    11:36
20    Q  Isn't it correct that you cannot identify any    11:36
21 allegation or assertion made in any of the    11:36
22 declarations attached to Google's -- I'm sorry --    11:36
23 Waymo's motion for a preliminary injunction that is    11:36
24 incorrect?    11:36
25        MR. EHRLICH:  I'm going to object to    11:36

Page 93

24 (Pages 90 - 93)

ATTORNEYS EYES ONLY

```
 1  foundation.                           11:36
 2       But, I'm going to instruct you to assert your  11:36
 3  rights.                              11:36
 4       MS. RAY:  Join.                   11:36
 5       THE WITNESS:  On the advice and direction of  11:36
 6  my counsel, I respectfully decline to answer.  And I  11:36
 7  assert the rights guaranteed to me under the Fifth  11:36
 8  Amendment of the Constitution of the United States.  11:37
 9       MR. PERLSON:  Q.  Have you reviewed any of  11:37
10  the declarations attached to Waymo's motion for  11:37
11  preliminary injunction?               11:37
12    A  On the advice and direction of my counsel, I  11:37
13  respectfully decline to answer.  And I assert the  11:37
14  rights guaranteed to me under the Fifth Amendment of  11:37
15  the Constitution of the United States.  11:37
16    Q  While at Otto, were you developing technology  11:37
17  relating to mid- and long-range LiDar systems?  11:37
18    A  On the advice and direction of my counsel, I  11:37
19  respectfully decline to answer.  And I assert the  11:37
20  rights guaranteed to me under the Fifth Amendment of  11:37
21  the Constitution of the United States.  11:37
22    Q  Uber is currently developing long- and  11:37
23  midrange LiDar systems; correct?       11:37
24    A  On the advice and direction of my counsel, I  11:37
25  respectfully decline to answer.  And I assert the  11:37
```
Page 94

```
 1  rights guaranteed to me under the Fifth Amendment of  11:37
 2  the Constitution of the United States.  11:38
 3    Q  Uber's current LiDar development program  11:38
 4  incorporates technology from Otto's LiDar development  11:38
 5  program; correct?                     11:38
 6    A  On the advice and direction of my counsel, I  11:38
 7  respectfully decline to answer.  And I assert the  11:38
 8  rights guaranteed to me under the Fifth Amendment of  11:38
 9  the Constitution of the United States.  11:38
10    Q  Are you currently participating in Uber's  11:38
11  LiDar work?                           11:38
12    A  On the advice and direction of my counsel, I  11:38
13  respectfully decline to answer.  And I assert the  11:38
14  rights guaranteed to me under the Fifth Amendment of  11:38
15  the Constitution of the United States.  11:38
16    Q  Were you involved at all in Uber's regulatory  11:38
17  filing in September of 2016 regarding its self-driving  11:38
18  car technology?                       11:39
19    A  On the advice and direction of my counsel, I  11:39
20  respectfully decline to answer.  And I assert the  11:39
21  rights guaranteed to me under the Fifth Amendment of  11:39
22  the Constitution of the United States.  11:39
23    Q  Isn't it true that the in-house technology  11:39
24  referred to in Uber's submission to Nevada, regarding  11:39
25  its self-driving car technology referred to a version  11:39
```
Page 95

```
 1  of its LiDar system that preceded the Fuji system?  11:39
 2       MS. RAY:  Objection; form.         11:39
 3       THE WITNESS:  On the advice and direction of  11:39
 4  my counsel, I respectfully decline to answer.  And I  11:39
 5  assert the rights guaranteed to me under the Fifth  11:39
 6  Amendment of the Constitution of the United States.  11:39
 7       MR. PERLSON:  Q.  Isn't it true that the --  11:39
 8  that Uber's submission in September 2016 of --  11:40
 9  regarding its self-driving car technology to the  11:40
10  Nevada government, referred to a prototype that was  11:40
11  then in existence?                    11:40
12    A  On the advice and direction of my counsel, I  11:40
13  respectfully decline to answer.  And I assert the  11:40
14  rights guaranteed to me under the Fifth Amendment of  11:40
15  the Constitution of the United States.  11:40
16    Q  Did Otto ever use or solicit ████████ as a  11:40
17  vendor in developing its technology?   11:40
18       MS. RAY:  Objection; form.         11:40
19       THE WITNESS:  On the advice and direction of  11:40
20  my counsel, I respectfully decline to answer.  And I  11:40
21  assert the rights guaranteed to me under the Fifth  11:40
22  Amendment of the Constitution of the United States.  11:41
23       MR. PERLSON:  Q.  Did Otto ever use or  11:41
24  solicit a company called ████ as a vendor in developing  11:41
25  its laser technology?                 11:41
```
Page 96

```
 1       MS. RAY:  Objection; form.         11:41
 2       THE WITNESS:  I'm sorry.  I was distracted.  11:41
 3  Do you mind repeating it.              11:41
 4       MR. PERLSON:  Sure.               11:41
 5    Q  Did Otto ever use or solicit a company called  11:41
 6  ████ as a vendor in developing its laser technology?  11:41
 7       MS. RAY:  Objection; form.         11:41
 8       THE WITNESS:  On the advice and direction of  11:41
 9  my counsel, I respectfully decline to answer.  And I  11:41
10  assert the rights guaranteed to me under the Fifth  11:41
11  Amendment to the Constitution of the United States.  11:41
12       MR. PERLSON:  Q.  Did Otto ever use or  11:41
13  solicit a company called ████ as a vendor in developing  11:41
14  its laser technology?                 11:41
15       MS. RAY:  Objection; form.         11:41
16       THE WITNESS:  On the advice and direction of  11:41
17  my counsel, I respectfully decline to answer.  And I  11:41
18  assert the rights guaranteed to me under the Fifth  11:41
19  Amendment to the Constitution of the United States.  11:41
20       MR. PERLSON:  Q.  Has -- did Otto select  11:41
21  third-party vendors because of their knowledge of  11:41
22  Google's confidential technology?      11:41
23    A  On the advice and direction of my counsel, I  11:41
24  respectfully decline to answer.  And I assert the  11:41
25  rights guaranteed to me under the Fifth Amendment to  11:41
```
Page 97

25 (Pages 94 - 97)

Page 98

```
 1  the Constitution of the United States.          11:41
 2  Q  ████████████ is a supplier for Uber;       11:41
 3  correct?                                         11:42
 4  A  On the advice and direction of my counsel, I  11:42
 5  respectfully decline to answer.  And I assert the 11:42
 6  rights guaranteed to me under the Fifth Amendment to 11:42
 7  the Constitution of the United States.          11:42
 8  Q  On December 12th, 2016, ████████ sent       11:42
 9  an e-mail to individuals at Uber, that inadvertently 11:42
10  included a Waymo employee; correct?             11:42
11  A  On the advice and direction of my counsel, I  11:42
12  respectfully decline to answer.  And I assert the 11:42
13  rights guaranteed to me under the Fifth Amendment to 11:42
14  the Uni- -- to the Constitution of the United States. 11:42
15  Q  And that e-mail -- the -- the December 13th,  11:42
16  2016, e-mail included a board that ████████ is  11:43
17  developing for Uber; correct?                   11:43
18  A  On the advice and direction of my counsel, I  11:43
19  respectfully decline to answer.  And I assert the 11:43
20  rights guaranteed to me under the Fifth Amendment to 11:43
21  the Constitution of the United States.          11:43
22  Q  And that December 13, 2016, e-mail attached a 11:43
23  board design that was derived from information you 11:43
24  took from Google before you left Google; correct? 11:43
25  A  On the advice and direction of my counsel, I  11:43
```

Page 99

```
 1  respectfully decline to answer.  And I assert the 11:43
 2  rights granted to me -- guaranteed to me under the 11:43
 3  Fifth Amendment to the -- to the Constitution of the 11:43
 4  United States.                                   11:44
 5  Q  And that 2 -- and the December 13, 2016,      11:44
 6  ████████ e-mail attached a board design that used 11:44
 7  information that was contained in the 14,000 documents 11:44
 8  you downloaded from Google in December 15 --     11:44
 9  December 2015; correct?                          11:44
10  A  On the advice and direction of my counsel, I  11:44
11  respectfully decline to answer.  And I assert the 11:44
12  rights guaranteed to me under the Fifth Amendment to 11:44
13  the Constitution of the United States.          11:44
14  Q  Uber would not have been able to have        11:44
15  developed the board design attached to the       11:44
16  December 13, 2016, ████████ e-mail without using 11:44
17  information contained in the 14,000 documents you 11:45
18  downloaded from Google in 2 -- December 2015; correct? 11:45
19  A  On the advice and direction of my counsel, I  11:45
20  respectfully decline to answer.  And I assert the 11:45
21  rights guaranteed to me under the Fifth Amendment to 11:45
22  the Constitution of the United States.          11:45
23  MR. EHRLICH:  Do you need a break?              11:45
24  THE WITNESS:  I'm okay.                          11:45
25  MR. EHRLICH:  Do you need a break?  We can      11:45
```

Page 100

```
 1  keep going.                                      11:45
 2  MR. PERLSON:  I don't care.                     11:45
 3  THE WITNESS:  Let's do it.                       11:45
 4  MR. EHRLICH:  Keep going?                        11:45
 5  THE WITNESS:  Yeah.                              11:45
 6  MR. PERLSON:  The -- you threw me off, man.     11:45
 7  MR. EHRLICH:  We can take a break, if you       11:45
 8  want.                                            11:45
 9  MR. PERLSON:  Q.  Fuji relates to a LiDar      11:45
10  system prototype that Uber has developed; correct? 11:45
11  A  On the advice and direction of my counsel, I  11:45
12  respectfully decline to answer.  And I assert the 11:45
13  rights guaranteed to me under the Fifth Amendment to 11:45
14  the Constitution of the United States.          11:46
15  Q  Work started on Fuji in October 2016;         11:46
16  correct?                                         11:46
17  A  On the advice and direction of my counsel, I  11:46
18  respectfully decline to answer.  And I assert the 11:46
19  rights guaranteed to me under the Fifth Amendment to 11:46
20  the Constitution of the United States.          11:46
21  Q  You personally are involved in the           11:46
22  development of Fuji; correct?                    11:46
23  A  On the advice and direction of my counsel, I  11:46
24  respectfully decline to answer.  And I assert the 11:46
25  rights guaranteed to me under the Fifth Amendment to 11:46
```

Page 101

```
 1  the -- to the Constitution of the United States. 11:46
 2  Q  Would you agree with me that the following   11:46
 3  statement is incorrect:                          11:46
 4  "Anthony Levandowski has never had nor          11:46
 5  currently has any design input in the number of  11:46
 6  ████████ number of ████████ number of ████████ 11:46
 7  ████████ or ████████ and ████████ of the ████████ 11:47
 8  ████████ on the transmit PCBs for Fuji."         11:47
 9  MR. EHRLICH:  Hold on.  Let me read that        11:47
10  question.                                        11:47
11  I instruct you to assert your rights.           11:47
12  THE WITNESS:  On the advice and direction of   11:47
13  my counsel, I respectfully decline to answer.  And I 11:47
14  assert the rights guaranteed to me under the Fifth 11:47
15  Amendment to the Constitution of the United States. 11:47
16  MR. PERLSON:  Q.  Is it correct that the       11:47
17  current Fuji system borrows technology from each of 11:47
18  Otto, Tyto, and Odin Wave?                       11:47
19  A  On the advice and direction of my counsel, I  11:48
20  respectfully decline to answer.  And I assert the 11:48
21  rights guaranteed to me under the Fifth Amendment to 11:48
22  the Constitution of the United States.          11:48
23  Q  At Uber, your team is experience --          11:48
24  experimenting with ████████████; is that        11:48
25  correct?                                         11:48
```

26 (Pages 98 - 101)



Page 102

1    A  On the advice and direction of my counsel, I    11:48
2    respectfully decline to answer.  And I assert the    11:48
3    rights guaranteed to me under the Fifth Amendment to    11:48
4    the Constitution of the United States.    11:49
5    Q  At Uber, your team is experiment --    11:49
6    experimenting with ███████ to help    11:49
7    build a ███████████████    11:49
8    correct?    11:49
9    A  On the advice and direction of my counsel, I    11:49
10   respectfully decline to answer.  And I assert the    11:49
11   rights guaranteed to me under the Fifth Amendment to    11:49
12   the Constitution of the United States.    11:49
13   Q  At Uber, your team is developing ██████    11:49
███████████████████████████████████
███████████████████████████████████
██████████    11:49
17   A  On the advice and direction of my counsel, I    11:49
18   respectfully decline to answer.  And I assert the    11:49
19   rights guaranteed to me under the Fifth Amendment to    11:49
20   the Constitution of the United States.    11:49
21   Q  The ██████ that your    11:49
22   team is working on at Uber relies on ██████    11:49
23   technology; correct?    11:49
24   A  On the advice and direction of my counsel, I    11:50
25   respectfully decline to answer.    11:50

Page 103

1    Q  The fi -- oh, sorry.    11:50
2    A  That's okay.    11:50
3        And I assert the rights guaranteed to me    11:50
4    under the Fifth Amendment to the Constitution of the    11:50
5    United States.    11:50
6    Q  The ████ laser technology your team is    11:50
7    working on at Uber uses a ███████    11:50
8    ████ correct?    11:50
9    A  On the advice and direction of my counsel, I    11:50
10   respectfully decline to answer.  And I assert the    11:50
11   rights guaranteed to me under the Fifth Amendment to    11:50
12   the Constitution of the United States.    11:50
13   Q  The ██████ technology your team is    11:50
14   working on at Uber uses ██████    11:50
██████████████████████████    11:50
16   correct?    11:50
17   A  On the advice and direction of my counsel, I    11:50
18   respectfully decline to answer.  And I'm asserting the    11:50
19   rights guaranteed to me under the Fifth Amendment to    11:50
20   the Constitution of the United States.    11:51
21   Q  While you were at Google, Google's    11:51
22   self-driving car project used ████████    11:51
████████████████████    11:51
████████████ correct? 11:51
25   A  On the advice and direction of my counsel, I    11:51

Page 104

1    respectfully decline to answer.  And I assert the    11:51
2    rights guaranteed to me under the Fifth Amendment to    11:51
3    the Constitution of the United States.    11:51
4    Q  ████████████████████ ███    11:51
████████████████████████████████
████████████████████ is not generally    11:51
7    known; correct?    11:52
8    A  This is a general question.    11:52
9    MR. EHRLICH:  Let -- let me read it.    11:52
10   MR. PERLSON:  Let -- let me -- let me ask it    11:52
11   again.    11:52
12   THE WITNESS:  Okay.    11:52
13   MR. PERLSON:  Q.  Before you left Google,    11:52
14   ████████████████████████████████
█████████████████████████████████
██████████████████, was not generally    11:52
17   known; correct?    11:52
18   A  On the advice and direction of my counsel, I    11:52
19   respectfully decline to answer.  And I assert the    11:52
20   rights guaranteed to me under the Fifth Amendment to    11:52
21   the Constitution of the United States.    11:53
22   Q  Uber's use of ████████████████    11:53
█████████████████████████████
█████████████████ is not generally    11:53
25   known; correct?    11:53

Page 105

1    A  On -- on the advice and direction of my    11:53
2    counsel, I respectfully decline to answer.  And I    11:53
3    assert the rights guaranteed to me under the Fifth    11:53
4    Amendment to the Constitution to the United States.    11:53
5    Q  The -- since -- let's start over.    11:53
6        During your work at Otto, you did work in    11:54
7    relation -- let me start over again.    11:54
8        Otto did development work regarding a LiDar    11:54
9    system that uses a common transmit and receive lens;    11:54
10   correct?    11:54
11   A  On the advice and direction of my counsel, I    11:54
12   respectfully decline to answer.  And I assert the    11:54
13   rights guaranteed to me under the Fifth Amendment to    11:54
14   the Constitution of the United States.    11:54
15   Q  Otto developed a prototype LiDar system that    11:54
16   used a common transmit/receive lens; correct?    11:54
17   A  On the advice and direction of my counsel, I    11:54
18   respectfully decline to answer.  And I assert the    11:54
19   rights guaranteed to me under the Fifth Amendment to    11:54
20   the Constitution of the United States.    11:55
21   Q  Otto tested a LiDar system that used a common    11:55
22   transmit/receive lens; correct?    11:55
23   A  On the advice and direction of my counsel, I    11:55
24   respectfully decline to answer.  And I assert the    11:55
25   rights guaranteed to me under the Fifth Amendment to    11:55

27 (Pages 102 - 105)

1 the Constitution of the United States.          11:55
2   Q   If a LiDar system that uses a common          11:55
3 transmit/receive lens does not presently exist at   11:55
4 Uber, it is because it was destroyed; correct?      11:55
5   A   On the advice and direction of my counsel, I   11:56
6 respectfully decline to answer.  And I assert the    11:56
7 rights guaranteed to me under the Fifth Amendment to  11:56
8 the Constitution of the United States.          11:56
9   Q   While at Uber -- let me start over again.      11:56
10       Since your employment with Google ended, you  11:56
11 have done work on LiDar systems at Otto and Uber where  11:56
12 the transmit and receive paths overlap --          11:56
13       MS. RAY:  Objection; form.          11:56
14       MR. PERLSON:  Q.  -- correct?          11:56
15   A   On the advice and direction of my counsel, I   11:56
16 respectfully decline to answer.  And I assert the    11:56
17 rights guaranteed to me under the Fifth Amendment to  11:56
18 the Uni- -- to the Constitution of the United States.  11:56
19   Q   Since your employment with Google ended, you  11:57
20 have done work on LiDar systems at Otto and Uber,     11:57
21 where the transmit and receive paths overlap and      11:57
22 prototypes of such a system existed?          11:57
23       MS. RAY:  Objection; form.          11:57
24       THE WITNESS:  On the advice and direction of  11:57
25 my counsel, I respectfully decline to answer.  And I  11:57

Page 106

1 assert the rights guaranteed to me under the Fifth    11:57
2 Amendment to the Constitution of the United States.   11:57
3       MR. PERLSON:  Q.  If a prototype of work you  11:57
4 did on LiDar systems at Otto, and Uber where the      11:57
5 transmit and receive paths overlap does not exist, it  11:57
6 is because such a prototype has been destroyed?      11:58
7   A   On the advice and direction of my counsel, I   11:58
8 respectfully decline to answer.  And I assert the    11:58
9 rights guaranteed to me under the Fifth Amendment to  11:58
10 the Constitution of the United States.          11:58
11   Q   Any destruction of any Otto prototypes would  11:58
12 have been done at the instruction of Uber; correct?  11:58
13   A   On the advice and direction of my counsel, I   11:58
14 respectfully decline to answer.  And I assert the    11:58
15 rights guaranteed to me under the Fifth Amendment to  11:58
16 the Constitution of the United States.          11:58
17   Q   There has been instruction from management at  11:58
18 Uber to you to destroy prototypes that existed and   11:58
19 were designed at Uber?          11:58
20   A   On the advice and direction of my counsel, I   11:58
21 respectfully decline to answer.  And I assert the    11:58
22 rights guaranteed to me under the Fifth Amendment to  11:58
23 the Constitution of the United States.          11:59
24   Q   Management at Uber instructed you and Otto     11:59
25 employees to destroy prototypes to hide the existence  11:59

Page 107

1 of patent infringement?          11:59
2       MS. RAY:  Objection; form.          11:59
3       THE WITNESS:  On the advice and direction of  11:59
4 my counsel, I respectfully decline to answer.  And I  11:59
5 assert the rights guaranteed to me under the Fifth    11:59
6 Amendment to the Constitution of the United States.   11:59
7       MR. PERLSON:  Q.  Management at Uber          11:59
8 instructed you and Otto employees to destroy          11:59
9 prototypes to hide the existence of trade secret      11:59
10 misappropriation?          11:59
11       MS. RAY:  Objection; form.          11:59
12       THE WITNESS:  On the advice and direction of  11:59
13 my counsel, I respectfully decline to answer.  And I  11:59
14 assert the rights guaranteed to me under the Fifth    11:59
15 Amendment to the Constitution of the United States.   11:59
16       MR. PERLSON:  Q.  When you were employed by   11:59
17 Google, you had a duty to keep Google confidential    11:59
18 information secret; correct?          12:00
19   A   On the advice and direction of my counsel, I   12:00
20 respectfully decline to answer.  And I assert the    12:00
21 rights guaranteed to me under the Fifth Amendment to  12:00
22 the Constitution of the United States.          12:00
23   Q   You understood that were you to disclose      12:00
24 confidential and proprietary information of Google to  12:00
25 those outside of Google without Google's permission,  12:00

Page 108

1 that that would be a breach of your duty of loyalty as  12:00
2 an employee to Google?          12:00
3   A   On the advice and direction of my counsel, I   12:00
4 respectfully decline to answer.  And I assert the    12:00
5 rights guaranteed to me under the Fifth Amendment to  12:00
6 the Constitution of the United States.          12:00
7   Q   And, despite that understanding of the duty    12:00
8 to keep confidential, confidential and proprietary    12:00
9 information of Google, you took such confidential and  12:01
10 proprietary information with you to your work at Otto  12:01
11 and Uber?          12:01
12   A   On the advice and direction of my counsel, I   12:01
13 respectfully decline to answer.  And I assert the    12:01
14 rights guaranteed to me under the Fifth Amendment to  12:01
15 the Constitution of the United States.          12:01
16   Q   And the taking of that information was done   12:01
17 at the direction and with knowledge of Uber          12:01
18 management; correct?          12:01
19   A   On the advice and direction of my counsel, I   12:01
20 respectfully decline to answer.  And I assert the    12:01
21 rights guaranteed to me under the Fifth Amendment to  12:01
22 the Constitution of the United States.          12:01
23   Q   And you continue to use that confidential and  12:01
24 proprietary information that you took from Google at  12:01
25 your work at Google [sic]?          12:01

Page 109

28 (Pages 106 - 109)

```
 1     A  On the advice and direction of my counsel, I    12:02
 2  respectfully decline to answer.  And I assert the       12:02
 3  rights guaranteed to me under the Fifth Amendment to    12:02
 4  the United States -- to the Constitution of the         12:02
 5  United States.                                          12:02
 6     Q  And that use of confidential and proprietary      12:02
 7  information that you took from Google is at the          12:02
 8  direction of and with the knowledge of Uber             12:02
 9  management?                                              12:02
10     A  On the advice and direction of my counsel, I     12:02
11  respectfully decline to answer.  And I assert the       12:02
12  rights guaranteed to me under the Fifth Amendment of    12:02
13  the Constitution of the United States.                  12:02
14     MR. PERLSON:  Why don't we take a break.             12:02
15     MR. EHRLICH:  Okay.                                  12:02
16     THE VIDEOGRAPHER:  Going off the record.  The       12:02
17  time is 12:02.                                          12:02
18     (Lunch break taken at 12:02 p.m.)                    12:02
19              ---oOo---
20
21
22
23
24
25
                                                     Page 110
```

```
 1     A  On the advice and direction of my counsel, I    13:07
 2  respectfully decline to answer.  And I assert the       13:07
 3  rights guaranteed to me under the Fifth Amendment --    13:07
 4     Q  You did not --                                    13:07
 5     A  -- to the Constitution of the United States.     13:08
 6     Q  Sorry.                                            13:08
 7     A  Sorry.  I apologize.                              13:08
 8     Q  You did not disclose to Google your              13:08
 9  involvement with 510 Systems and Anthony's Robots       13:08
10  before Google discovered your involvement with them;    13:08
11  correct?                                                13:08
12     A  On the advice and direction of my counsel, I     13:08
13  respectfully decline to answer.  And I assert the       13:08
14  the rights guaranteed to me under the Fifth Amendment to 13:08
15  the Constitution of the United States.                  13:08
16     Q  When Google discovered that you were involved    13:08
17  in 510 Systems and Anthony's Robots, it thought -- it   13:08
18  was concerned about potential conflicts; correct?       13:08
19     A  On the advice and direction of my counsel, I     13:08
20  respectfully decline to answer.  And I assert the       13:08
21  rights guaranteed to me under the Fifth Amendment to    13:08
22  the Constitution of the United States.                  13:08
23     Q  And, given Google's concerns regarding the       13:08
24  conflict, you entered into a side agreement with        13:09
25  Google regarding 510 Systems and Anthony's Robots?      13:09
                                                     Page 112
```

```
 1     A F T E R N O O N   S E S S I O N          12:13
 2          1:06 P.M.                            12:13
 3                                                12:13
 4                                                12:13
 5     THE VIDEOGRAPHER:  We are back on the record.  12:29
 6  The time is 1:06.                              13:06
 7     MR. PERLSON:  Q.  Mr. Levandowski, while you   13:07
 8  were employed at Google, you started a company called   13:07
 9  510 Systems; correct?                          13:07
10     A  On the advice and direction of my counsel, I   13:07
11  respectfully decline to answer.               13:07
12     Q  While you were at Google --             13:07
13     A  Oh, wait.  Sorry.  My microphone fell off.   13:07
14        And I assert the rights guaranteed to me   13:07
15  under the Fifth Amendment to the Constitution of the   13:07
16  United States.                                 13:07
17     Q  While you were at Google, you started a   13:07
18  company called Anthony's Robots LLC; correct?   13:07
19     A  On the advice of -- and direction of my   13:07
20  counsel, I respectfully decline to answer.  And I   13:07
21  assert the rights guaranteed to me under the Fifth   13:07
22  Amendment to the Constitution of the United States.   13:07
23     Q  And your employment with Google overlapped   13:07
24  with your involvement with 510 Systems and Anthony's   13:07
25  Robots; correct?                               13:07
                                                     Page 111
```

```
 1     A  On the advice and direction of my counsel, I    13:09
 2  respectfully decline to answer.  And I assert the       13:09
 3  rights guaranteed to me under the Fifth Amendment to    13:09
 4  the Constitution of the United States.                  13:09
 5     Q  And 510 Systems was doing work on               13:09
 6  self-driving car technology between 2009 and 2011;      13:09
 7  correct?                                                13:09
 8     A  On the advice and direction of my counsel, I     13:09
 9  respectfully decline to answer.  And I assert the       13:09
10  rights guaranteed to me under the Fifth Amendment to    13:09
11  the Constitution of the United States.                  13:09
12     Q  Given what happened with 510 Systems and        13:09
13  Anthony's Robots, you were aware of Google's concern    13:09
14  with you operating side businesses that related to      13:09
15  your work at Google; correct?                           13:10
16     A  On the advice of -- on the advice and           13:10
17  direction of my counsel, I respectfully decline to      13:10
18  answer.  And I assert the rights guaranteed to me       13:10
19  under the Fifth Amendment to the Constitution to the    13:10
20  United States.                                          13:10
21     Q  You used confidential information from Google    13:10
22  to help develop technology at 510 Systems; correct?     13:10
23     A  On the advice and direction of my counsel, I     13:10
24  respectfully decline to answer.  And I assert the       13:10
25  rights guaranteed to me under the Fifth Amendment to    13:10
                                                     Page 113
```

29 (Pages 110 - 113)

**Page 114**

1  the Constitution of the United States.          13:10
2      Q   You brought Google Street View source code to   13:10
3  510 Systems in order to ████████████ ████
   ████████    correct?                            13:10
5      A   On the advice and direction of my counsel, I   13:10
6  respectfully decline to answer.  And I assert the   13:10
7  rights guaranteed to me under the Fifth Amendment to   13:10
8  the Constitution of the United States.          13:11
9      Q   You misused Google's confidential source code   13:11
10  to help advance 510 Systems' technology; didn't you?   13:11
11      A   On the advice and direction of my counsel, I   13:11
12  respectfully decline to answer.  And I assert the   13:11
13  rights guaranteed to me under the Fifth Amendment to   13:11
14  the Constitution of the United States.          13:11
15      Q   The Little Bear system at 510 Systems was   13:11
16  named after a mountain; is that correct?        13:11
17      A   On the advice and direction of my counsel, I   13:11
18  respectfully decline to answer.  And I assert the   13:11
19  rights guaranteed to me under the Fifth Amendment to   13:11
20  the Constitution of the United States.          13:12
21      Q   And, while you were at Google, you developed   13:12
22  LiDar systems that were named after mountains;   13:12
23  correct?                                        13:12
24      A   On the advice and direction of my counsel, I   13:12
25  respectfully decline to answer.  And I assert the   13:12

**Page 115**

1  rights guaranteed to me under the Fifth Amendment to   13:12
2  the Constitution of the United States.          13:12
3      Q   And the Fuji system at Uber is named after   13:12
4  Mount Fuji; correct?                            13:12
5      A   On the advice and direction of my counsel, I   13:12
6  respectfully decline to answer.  And I assert the   13:12
7  rights guaranteed to me under the Fifth Amendment to   13:12
8  the Constitution of the United States.          13:12
9      Q   And the reason that the Fuji system at Uber   13:12
10  is named after Mount Fuji is that it is derived from   13:12
11  Google technology that was also code named with names   13:13
12  of mountains; correct?                          13:13
13      A   On the advice and direction of my counsel, I   13:13
14  respectfully decline to answer.  And I assert the   13:13
15  rights guaranteed to me under the Fifth Amendment to   13:13
16  the Constitution of the United States.          13:13
17      Q   Google had a -- the first -- an early version   13:14
18  of LiDar, during your work at Google, was called   13:14
19  Grizzly Bear; correct?                          13:14
20      A   On the advice and direction of my counsel, I   13:14
21  respectfully decline to answer.  And I assert the   13:14
22  rights guaranteed to me under the Fifth Amendment to   13:14
23  the Constitution of the United States.          13:14
24      Q   And the sec-- -- and a later version of   13:14
25  Google's LiDar was called Grizzly Bear 2; correct?   13:14

**Page 116**

1      A   On the advice and direction of my counsel, I   13:14
2  respectfully decline to answer.  And I assert the   13:14
3  rights guaranteed to me under the Fifth Amendment to   13:14
4  the Constitution of the United States.          13:14
5      Q   And a still later version of LiDar at Google   13:14
6  was Grizzly Bear 3; correct?                    13:15
7      A   On the advice and direction of my counsel, I   13:15
8  respectfully decline to answer.  And I assert the   13:15
9  rights guaranteed to me under the Fifth Amendment to   13:15
10  the Constitution of the United States.          13:15
11      Q   And each of the development -- and the   13:15
12  development from each of the different versions of   13:15
13  LiDar at Google was a result of significant trial and   13:15
14  error work by Google engineers; correct?        13:15
15      A   On the advice and direction of my counsel, I   13:15
16  respectfully decline to answer.  And I assert the   13:15
17  rights guaranteed to me under the Fifth Amendment to   13:15
18  the Constitution of the United States.          13:15
19      Q   And the development of LiDar through Grizzly   13:15
20  Bear to Grizzly Bear 2 to Grizzly Bear 3 was the   13:15
21  result of significant investment of time and money by   13:15
22  Google; correct?                                13:15
23      A   On the advice and direction of my counsel, I   13:15
24  respectfully decline to answer.  And I assert the   13:15
25  rights guaranteed to me under the Fifth Amendment to   13:15

**Page 117**

1  the Constitution of the United States.          13:16
2      Q   You are a named inventor on U.S. Patent   13:16
3  Nos. 8,836,922 and 9,285,464; correct?          13:16
4      MR. EHRLICH:  Counsel, can I just ask the --   13:16
5  the date of those patent submissions, if that's the   13:16
6  correct word, just so I can advise my client, if you   13:16
7  know.                                           13:16
8      MR. PERLSON:  It was while he was at Google,   13:16
9  if that helps.                                  13:16
10      MR. EHRLICH:  Okay.  That helps.           13:16
11  I'm going to advise you --                      13:16
12      THE WITNESS:  Okay.                         13:16
13      MR. EHRLICH:  -- to assert your rights then.   13:16
14      THE WITNESS:  On the advice and direction of   13:16
15  my counsel, I respectfully de-- -- decline to answer.   13:16
16  And I assert the rights guaranteed to me under the   13:16
17  Fifth Amendment to the Constitution of the United   13:16
18  States.                                         13:16
19      MR. PERLSON:  Q.  You agree that you assigned   13:16
20  all your rights and interests to the -- in the   13:16
21  '922 patent and '464 patent to Google?          13:17
22      A   On the advice and direction of my counsel, I   13:17
23  respectfully decline to answer.  And I assert the   13:17
24  rights guaranteed to me under the Fifth Amendment to   13:17
25  the Constitution of the United States.          13:17

30 (Pages 114 - 117)

ATTORNEYS EYES ONLY

1    Q   You are currently employed at Uber          13:17
2  Technologies, Inc.?                  13:17
3      MR. EHRLICH:  You can answer.          13:17
4      THE WITNESS:  Yes.              13:17
5      MR. PERLSON:  Q.  Uber is affiliated with    13:17
6  Ottomoto, LLC and Otto Trucking, LLC?        13:17
7      MS. RAY:  Objection; form.          13:17
8      MR. EHRLICH:  You can answer.          13:17
9      THE WITNESS:  Yes.              13:17
10     MR. PERLSON:  Q.  You were hired at Uber to   13:17
11 oversee its self-driving car technology; correct?   13:17
12     MR. EHRLICH:  I'm going to advise you to     13:17
13 assert your rights.                13:17
14     THE WITNESS:  On the advice and direction of  13:17
15 my counsel, I respectfully decline to answer.  And I  13:17
16 assert the rights guaranteed to me under the Fifth   13:17
17 Amendment to the Constitution of the United States.   13:18
18     MR. PERLSON:  I had a streak of          13:18
19 two questions.                  13:18
20     THE WITNESS:  I know.  It was -- keep going.  13:18
21     MR. EHRLICH:  Very impressive.          13:18
22     THE WITNESS:  It's good.            13:18
23     MR. PERLSON:  Q.  The -- you agree that,     13:18
24 after you joined, Uber continued to develop its     13:18
25 self-driving car technology; correct?          13:18

Page 118

1    A   On the advice and direction of my counsel, I  13:18
2  respectfully decline to answer.  And I assert the   13:18
3  rights guaranteed to me under the Fifth Amendment to  13:18
4  the Constitution of the United States.          13:18
5    Q   You agree that you were involved in Uber's   13:18
6  decision-making process to continue developing its   13:18
7  self-driving car technology; correct?          13:18
8    A   On the advice and direction of my counsel, I  13:18
9  respectfully decline to answer.  And I assert the   13:18
10 rights guaranteed to me under the Fifth Amendment to  13:18
11 the Constitution of the United States.          13:18
12   Q   You agree that Uber began developing its    13:18
13 current self-driving car technology around the same   13:19
14 time you joined Uber; correct?            13:19
15     MS. RAY:  Objection to form.          13:19
16     MR. EHRLICH:  You can answer.          13:19
17     THE WITNESS:  Okay.              13:19
18     On the advice and direction of my counsel, I   13:19
19 respectfully decline to answer.  And I assert the   13:19
20 rights guaranteed to me under the Fifth Amendment to  13:19
21 the Constitution of the United States.          13:19
22     MR. PERLSON:  Q.  You have a leadership role  13:19
23 at Uber Technologies, Inc.; correct?          13:19
24   A   On the advice and direction of my counsel, I  13:19
25 respectfully decline to answer.  And I assert the   13:19

Page 119

1  rights guaranteed to me under the Fifth Amendment to  13:19
2  the Constitution of the United States.          13:19
3    Q   You have an equity interest in Uber        13:19
4  Technologies, Inc.; correct?            13:19
5    A   On the advice of my counsel, I respectively  13:19
6  decline to answer.  And I assert the rights guaranteed  13:19
7  to me under the Fifth Amendment to the Constitution of  13:19
8  the United States.                13:19
9    Q   You have an equity interest in Ottomoto, LLC;  13:19
10 correct?                    13:19
11   A   On the advice and direction of my counsel, I  13:19
12 respectfully decline to answer.  And I assert the   13:19
13 rights guaranteed to me under the Fifth Amendment to  13:19
14 the Constitution of the United States.          13:20
15   Q   You have an equity interest in Otto Trucking,  13:20
16 LLC; correct?                  13:20
17   A   On the advice and direction of my counsel, I  13:20
18 respectfully decline to answer.  And I assert the   13:20
19 rights guaranteed to me under the Fifth Amendment to  13:20
20 the Constitution of the United States.          13:20
21   Q   While you were at Goo-- at Google, Google   13:20
22 employees had a duty to keep confidential information  13:20
23 of Google confidential; correct?            13:20
24   A   On the -- on the advice and direction of my   13:20
25 counsel, I respectfully decline to answer.  And I    13:20

Page 120

1  assert the rights guaranteed to me under the Fifth    13:20
2  Amendment to the Constitution of the United States.   13:20
3    Q   While you were at Google, Google required   13:20
4  employees to password protect their computers and    13:20
5  other hardware; correct?              13:20
6    A   On the advice and direction of my counsel, I  13:20
7  respectfully decline to answer.  And I assert the   13:20
8  rights guaranteed to me under the Fifth Amendment to  13:20
9  the Constitution of the United States.          13:21
10   Q   While you were at Google, Google's networks  13:21
11 and other storage repositories were password       13:21
12 protected; correct?                13:21
13   A   On the advice and direction of my counsel, I  13:20
14 respectfully decline to answer.  And I assert the   13:21
15 rights guaranteed to me under the Fifth Amendment to  13:20
16 the Constitution of the United States.          13:21
17   Q   While you were at Google, Google monitored  13:21
18 use and access to its devices and networks for     13:21
19 security purposes; correct?              13:21
20   A   On the advice and direction of my counsel, I  13:20
21 respectfully decline to answer.  And I assert the   13:21
22 rights guaranteed to me under the Fifth Amendment to  13:20
23 the Constitution of the United States.          13:21
24   Q   You understand that, while you were at     13:21
25 Google, Google maintained security software to prevent 13:21

Page 121

31 (Pages 118 - 121)

ATTORNEYS EYES ONLY

1 unauthorized access; correct?                    13:21
2    A  On the advice and direction of my counsel, I   13:20
3 respectfully decline to answer.  And I assert the   13:20
4 rights guaranteed to me under the Fifth Amendment to  13:20
5 the Constitution of the United States.          13:22
6    Q  While you were at Google, Google provided    13:22
7 network security training to employees with access to  13:22
8 networks?                                     13:22
9    A  On the advice and direction of my counsel, I   13:22
10 respectfully decline to answer.  And I assert the  13:22
11 rights guaranteed to me under the Fifth Amendment to  13:22
12 the Constitution of the United States.         13:22
13    Q  While you were at Google, Google generally   13:22
14 limited application access and network access    13:22
15 containing sensitive material to users with a need to  13:22
16 know; correct?                                13:22
17    A  On the advice and direction of my counsel, I  13:20
18 respectfully decline to answer.  And I assert the  13:20
19 rights guaranteed to me under the Fifth Amendment to  13:20
20 the Constitution of the United States.         13:22
21    Q  While you were at Google, Google had a policy  13:22
22 requiring its employees to safeguard its computer  13:22
23 networks and digital information; correct?       13:22
24    A  On the advice and direction of my counsel, I  13:20
25 respectfully decline to answer.  And I assert the   13:20

Page 122

1    A  On the --                                13:23
2    Q  -- correct?                             13:24
3    A  On the advice and direction of my counsel, I   13:20
4 respectfully decline to answer.  And I assert the   13:20
5 rights guaranteed to me under the Fifth Amendment to  13:20
6 the Constitution of the United States.          13:24
7    Q  While you were at Google, Google's SVN server  13:24
8 was limited to only those on a need-to-know basis?   13:24
9    A  On the advice and direction of my counsel, I   13:20
10 respectfully decline to answer.  And I assert the  13:20
11 rights guaranteed to me under the Fifth Amendment to  13:20
12 the Constitution of the United States.         13:24
13    Q  While you were at Google, the SVN server    13:24
14 required specialized software to access; correct?   13:24
15    A  On the advice and direction of my counsel, I  13:20
16 respectfully decline to answer.  And I assert the  13:20
17 rights guaranteed to me under the Fifth Amendment to  13:20
18 the Constitution of the United States.         13:24
19    Q  While you were at Google, Google took      13:24
20 reasonable measures to protect the secrecy of its SVN  13:24
21 server; correct?                              13:24
22    A  On the advice and direction of my counsel, I  13:24
23 respectfully decline to answer.  And I assert the  13:24
24 rights guaranteed to me under the Fifth Amendment to  13:24
25 the Constitution of the United States.         13:24

Page 124

1 rights guaranteed to me under the Fifth Amendment to  13:20
2 the Constitution of the United States.          13:22
3    Q  While you were at Google, Google had a policy  13:22
4 against its employees accessing its digital      13:23
5 information for reasons unrelated to business     13:23
6 activities; correct?                          13:23
7    A  On the advice and direction of my counsel, I   13:23
8 respectfully decline to answer.  And I assert the  13:23
9 rights guaranteed to me under the Fifth Amendment to  13:23
10 the Constitution of the United States.          13:23
11    Q  While you were at Google, Google took      13:23
12 reasonable measures to protect the secrecy of its  13:23
13 networks and digital information; correct?       13:23
14    A  On the advice and direction of my counsel, I  13:20
15 respectfully decline to answer.  And I assert the  13:20
16 rights guaranteed to me under the Fifth Amendment to  13:20
17 the Constitution of the United States.          13:23
18    Q  While you were at Google, Google's SVN server  13:23
19 was password protected?                       13:23
20    A  On the advice and direction of my counsel, I  13:20
21 respectfully decline to answer.  And I assert the  13:20
22 rights guaranteed to me under the Fifth Amendment to  13:20
23 the Constitution of the United States.         13:23
24    Q  While you were at Google, Google's SVN server  13:23
25 was limited to only certain employees --        13:23

Page 123

1    Q  Do you agree that Google Waymo outside     13:24
2 vendors were generally required to sign nondisclosure  13:25
3 statements?                                   13:25
4    MS. RAY:  Objection; form.                  13:25
5    THE WITNESS:  On the advice and direction of  13:25
6 my counsel, I respectfully decline to answer.  And I  13:25
7 assert the rights guaranteed to me under the Fifth  13:25
8 Amendment to the Constitution of the United States.  13:25
9    MR. PERLSON:  Q.  Do you recall the passwords  13:25
10 to any of your Google computers?               13:25
11    A  On the advice and direction of my counsel, I  13:20
12 respectfully decline to answer.  And I assert the  13:20
13 rights guaranteed to me under the Fifth Amendment to  13:20
14 the Constitution of the United States.         13:25
15    Q  You owned a company and still own -- let me  13:25
16 start over again.                             13:25
17    While you were at Google and to this day, you  13:25
18 have an ownership interest in Dogwood Leasing;    13:25
19 correct?                                      13:25
20    A  On the advice and direction of my counsel, I  13:20
21 respectfully decline to answer.  And I assert the  13:20
22 rights guaranteed to me under the Fifth Amendment to  13:20
23 the Constitution of the United States.         13:25
24    Q  Dogwood Leasing engages, and has engaged, in  13:25
25 business that relate to self-driving car technology?  13:26

Page 125

32 (Pages 122 - 125)

**Page 126**

```
 1    A  On the advice and direction of my counsel, I   13:20
 2  respectfully decline to answer.  And I assert the     13:20
 3  rights guaranteed to me under the Fifth Amendment to   13:20
 4  the Constitution of the United States.                 13:20
 5    Q  You employed Asheem Linval at Dogwood Leasing   13:26
 6  for self-driving car technology; correct?             13:26
 7    A  On the advice and direction of my counsel, I   13:20
 8  respectfully decline to answer.  And I assert the     13:20
 9  rights guaranteed to me under the Fifth Amendment to   13:20
10  the Constitution of the United States.                 13:26
11    Q  You asked Mr. Linval to use confidential   13:26
12  information he learned while at Google in connection   13:26
13  with his work at Dogwood Leasing; correct?             13:26
14    A  On the advice and direction of my counsel, I   13:20
15  respectfully decline to answer.  And I assert the     13:20
16  rights guaranteed to me under the Fifth Amendment to   13:20
17  the Constitution of the United States.                 13:27
18    Q  You started Odin Wave while you were still   13:27
19  working at Google?                                     13:27
20    A  On the advice and direction of my counsel, I   13:20
21  respectfully decline to answer.  And I assert the     13:20
22  rights guaranteed to me under the Fifth Amendment to   13:20
23  the Constitution of the United States.                 13:27
24    Q  You had to move the location of Odin Wave   13:27
25  because you were concerned that Google may find out   13:27
```

**Page 128**

```
 1  respectfully decline to answer.  And I assert the     13:20
 2  rights guaranteed to me under the Fifth Amendment to   13:20
 3  the Constitution of the United States.                 13:28
 4    Q  Were you involved in technology development   13:28
 5  at Odin Wave?                                          13:28
 6    A  On the advice and direction of my counsel, I   13:20
 7  respectfully decline to answer.  And I assert the     13:20
 8  rights guaranteed to me under the Fifth Amendment to   13:20
 9  the Constitution of the United States.                 13:29
10    Q  Were you paying individuals to work at   13:29
11  Odin Wave?                                             13:29
12    A  On the advice and direction of my counsel, I   13:29
13  respectfully decline to answer.  And I assert the     13:29
14  rights guaranteed to me under the Fifth Amendment to   13:29
15  the Constitution of the United States.                 13:29
16    Q  Isn't it correct that Odin Wave ordered parts   13:29
17  from ██████ that were similar to parts used by Google in   13:29
18  its own LiDar system?                                  13:29
19    A  On the advice and direction of my counsel, I   13:20
20  respectfully decline to answer.  And I assert the     13:20
21  rights guaranteed to me under the Fifth Amendment to   13:20
22  the Constitution of the United States.                 13:29
23    Q  In 2013, ██████ called Google because it had an   13:29
24  order from Odin Wave that was so similar to parts used   13:29
25  by Google; correct?                                    13:29
```

**Page 127**

```
 1  about its existence?                                   13:27
 2    A  On the advice and direction of my counsel, I   13:20
 3  respectfully decline to answer.  And I assert the     13:20
 4  rights guaranteed to me under the Fifth Amendment to   13:20
 5  the Constitution of the United States.                 13:27
 6    Q  You used Google confidential information at   13:27
 7  Odin Wave; correct?                                    13:27
 8    A  On the advice and direction of my counsel, I   13:20
 9  respectfully decline to answer.  And I assert the     13:20
10  rights guaranteed to me under the Fifth Amendment to   13:20
11  the Constitution of the United States.                 13:28
12    Q  Did you have an ownership interest in   13:28
13  Odin Wave?                                             13:28
14    A  On the advice and direction of my counsel, I   13:20
15  respectfully decline to answer.  And I assert the     13:20
16  rights guaranteed to me under the Fifth Amendment to   13:20
17  the Constitution of the United States.                 13:28
18    Q  Did you have a managerial role at Odin Wave?   13:28
19    A  On the advice and direction of my counsel, I   13:20
20  respectfully dis- --- decline to answer.  And I assert   13:20
21  the rights guaranteed to me under the Fifth Amendment   13:20
22  to the Constitution of the United States.              13:28
23    Q  Were you involved in the day-to-day   13:28
24  operations at Odin Wave?                               13:28
25    A  On the advice and direction of my counsel, I   13:20
```

**Page 129**

```
 1    A  On the advice and direction of my counsel, I   13:20
 2  respectfully decline to answer.  And I assert the     13:20
 3  rights guaranteed to me under the Fifth Amendment to   13:20
 4  the Constitution of the United States.                 13:30
 5    Q  And, because of this incident, Odin Wave   13:30
 6  moved to a different location to get distance from   13:30
 7  you; correct?                                          13:30
 8    A  On the advice and direction of my counsel, I   13:30
 9  respectfully decline to answer.  And I assert the     13:30
10  rights -- the rights guaranteed to me under the Fifth   13:30
11  Amendment to the Constitution of the United States.   13:30
12    Q  Isn't it true that you were guiding Google   13:30
13  towards an in-house ██████ solution so that you could use   13:30
14  that technology at Odin Wave?                          13:30
15    A  On the advice and direction of my counsel, I   13:20
16  respectfully decline to answer.  And I assert the     13:20
17  rights guaranteed to me under the Fifth Amendment to   13:20
18  the Constitution of the United States.                 13:30
19    Q  You -- isn't it true that you directed   13:30
20  Odin Wave to file patent applications on its   13:31
21  technology development that stemmed from Google   13:31
22  confidential information?                              13:31
23    A  On the advice and direction of my counsel, I   13:20
24  respectfully decline to answer.  And I assert the     13:20
25  rights guaranteed to me under the Fifth Amendment to   13:20
```

33 (Pages 126 - 129)

ATTORNEYS EYES ONLY

| | |
|---|---|
| 1  the Constitution of the United States.          13:31 | 1    A  On the advice and direction of my counsel, I   13:20 |
| 2    Q  Odin Wave renamed itself to Tyto LiDAR;        13:31 | 2  respectfully decline to answer.  And I assert the      13:20 |
| 3  correct?                          13:31 | 3  rights granted to me under the Fifth Amendment to the   13:20 |
| 4    A  On the advice and direction of my counsel, I   13:20 | 4  Constitution of the United States.          13:33 |
| 5  respectfully decline to answer.  And I assert the      13:20 | 5    Q  You did not disclose your involvement with     13:33 |
| 6  rights guaranteed to me under the Fifth Amendment to   13:20 | 6  Tyto LiDAR to Google; correct?          13:33 |
| 7  the Constitution of the United States.          13:31 | 7    A  On the advice and direction of my counsel, I   13:33 |
| 8    Q  Odin Wave was renamed to Tyto LiDAR in order   13:31 | 8  respectfully decline to answer.  And I assert the      13:33 |
| 9  to conceal your involvement; correct?          13:31 | 9  rights guaranteed to me under the Fifth Amendment to   13:33 |
| 10    A  On the advice and direction of my counsel, I   13:20 | 10  the Constitution of the United States.          13:34 |
| 11  respectfully decline to answer.  And I assert the      13:20 | 11    Q  And in fact, you joined a Google team that   13:34 |
| 12  rights guaranteed to me under the Fifth Amendment to   13:20 | 12  visited Tyto facilities when ▒▒▒▒▒▒▒▒▒▒▒▒ |
| 13  the Constitution of the United States.          13:31 | ▒▒▒▒▒▒▒▒▒▒▒▒▒ and you still did not tell Google that   13:34 |
| 14    Q  After the name change, Tyto -- Tyto LiDAR   13:31 | 14  you had an ownership interest in Tyto?          13:34 |
| 15  continued in the same business with the same employees   13:31 | 15    A  On the advice and direction of my counsel, I   13:34 |
| 16  as Odin Wave; correct?                13:32 | 16  respectfully decline to answer.  And I assert the      13:34 |
| 17    A  On the advice and direction of my counsel, I   13:20 | 17  rights guaranteed to me under the Fifth Amendment to   13:34 |
| 18  respectfully decline to answer.  And I assert the      13:20 | 18  the Constitution of the United States.          13:34 |
| 19  rights guaranteed to me under the Fifth Amendment to   13:20 | 19    Q  You attempted to influence Google's     13:34 |
| 20  the Constitution of the United States.          13:32 | 20  ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ even   13:34 |
| 21    Q  You had an ownership interest in Tyto LiDAR;   13:32 | 21  though you did not disclose that you had an ownership   13:34 |
| 22  correct?                          13:32 | 22  interest in Tyto LiDAR; correct?          13:34 |
| 23    A  On the advice and direction of my counsel, I   13:20 | 23    A  On the advice and direction of my counsel, I   13:33 |
| 24  respectfully decline to answer.  And I assert the      13:20 | 24  respectfully decline to answer.  And I assert the      13:33 |
| 25  rights granted to me under the Fifth Amendment to the   13:20 | 25  rights guaranteed to me under the Fifth Amendment to   13:33 |
| Page 130 | Page 132 |

| | |
|---|---|
| 1  Constitution of the United States.          13:32 | 1  the Constitution of the United States.          13:33 |
| 2    Q  You had a managerial role at Tyto LiDAR;      13:32 | 2    Q  You were positioning Tyto to ▒▒▒▒▒▒▒▒▒▒ |
| 3  correct?                          13:32 | ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒▒ |
| 4    A  On the advice and direction of my counsel, I   13:20 | ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒ |
| 5  respectfully decline to answer.  And I assert the      13:20 | ▒▒▒▒▒▒▒▒  correct?                13:35 |
| 6  rights guaranteed to me under the Fifth Amendment to   13:20 | 6    A  On the advice and direction of my counsel, I   13:33 |
| 7  the Constitution of the United States.          13:32 | 7  respectfully decline to answer.  And I assert the      13:33 |
| 8    Q  You were involved in the day-to-day      13:32 | 8  rights guaranteed to me under the Fifth Amendment to   13:33 |
| 9  operations of -- at Tyto LiDAR; correct?      13:32 | 9  the Constitution of the United States.          13:35 |
| 10    A  On the advice and direction of my counsel, I   13:20 | 10    Q  You registered a domain name for 280 Systems   13:35 |
| 11  respectfully decline to answer.  And I assert the      13:20 | 11  in November 2015; correct?          13:35 |
| 12  rights granted to me under the Fifth Amendment to the   13:20 | 12    A  On the advice and direction of my counsel, I   13:33 |
| 13  Constitution of the United States.          13:32 | 13  respectfully decline to answer.  And I assert the      13:33 |
| 14    Q  You were involved in the technology      13:32 | 14  rights guaranteed to me under the Fifth Amendment to   13:33 |
| 15  development at Tyto LiDAR; correct?          13:32 | 15  the Constitution of the United States.          13:35 |
| 16    A  On the advice and direction of my counsel, I   13:20 | 16    Q  On February 11th, 2016, the corporation   13:35 |
| 17  respectfully decline to answer.  And I assert the      13:20 | 17  restated its name and stock as 280 Systems, Inc.;      13:35 |
| 18  rights guaranteed to me under the Fifth Amendment to   13:20 | 18  correct?                          13:35 |
| 19  the Constitution of the United States.          13:33 | 19    A  On the advice and direction of my counsel, I   13:35 |
| 20    Q  You used Google -- start over.          13:33 | 20  respectfully decline to answer.  And I assert the      13:35 |
| 21       You used information taken from -- let me   13:33 | 21  rights guaranteed to me under the Fifth Amendment to   13:35 |
| 22  start over.                        13:33 | 22  the Constitution of the United States.          13:35 |
| 23       You used confidential information taken from   13:33 | 23    Q  On April 6, 2016, 280 Systems was re- --   13:35 |
| 24  Google in connection with your work at Tyto LiDAR;      13:33 | 24  renamed Ottomoto, Inc.; correct?          13:36 |
| 25  correct?                          13:33 | 25    A  On the advice and direction of my counsel, I   13:33 |
| Page 131 | Page 133 |

34 (Pages 130 - 133)

ATTORNEYS EYES ONLY

| | |
|---|---|
| 1 respectfully decline to answer.  And I assert the        13:33 | 1 marked as Exhibit 25.                    13:40 |
| 2 rights guaranteed to me under the Fifth Amendment to    13:33 | 2    Q  Do you recognize this document?           13:40 |
| 3 the Constitution of the United States.           13:36 | 3    A  On the advice and direction of my counsel, I   13:40 |
| 4       THE WITNESS:  Can we take a break?  I just   13:36 | 4 respectfully decline to answer.  And I assert the     13:40 |
| 5 want to fill up my water.                 13:36 | 5 rights guaranteed to me under the Fifth Amendment to   13:40 |
| 6       MR. PERLSON:  Yeah.                13:36 | 6 the Constitution of the United States.           13:41 |
| 7       THE VIDEOGRAPHER:  Going off the record.  The  13:36 | 7    Q  You agree that this is a schematic for Uber's  13:41 |
| 8 time is 1:36.                        13:36 | 8 Fuji board; correct?                   13:41 |
| 9       (Recess taken.)                   13:36 | 9    A  On the device -- on the advice and direction   13:41 |
| 10       THE VIDEOGRAPHER:  We are back on the record.  13:37 | 10 of my counsel, I respectfully decline to answer.  And  13:41 |
| 11 The time is 1:37.                      13:37 | 11 I assert the rights guaranteed to me under the Fifth   13:41 |
| 12       MR. PERLSON:  Q.  Ottomoto acquired Tyto in   13:37 | 12 Amendment to the Constitution of the United States.   13:41 |
| 13 May 2016; correct?                    13:37 | 13    Q  Do you see that there are diodes in the      13:41 |
| 14    A  On the advice and direction of my counsel, I  13:33 | 14 drawing on the far left?                 13:41 |
| 15 respectfully decline to answer.  And I assert the     13:33 | 15    A  On the advice and direction of my counsel, I  13:41 |
| 16 rights guaranteed to me under the Fifth Amendment to  13:33 | 16 respectfully decline to answer.  And I assert the     13:41 |
| 17 the Constitution of the United States.           13:37 | 17 rights guaranteed to me under the Fifth Amendment to  13:41 |
| 18    Q  In August 2016 Uber acquired Ottomoto?      13:37 | 18 the Constitution of the United States.           13:41 |
| 19    A  On the advice and direction of my counsel, I  13:33 | 19    Q  The diodes are ▆▆▆▆▆▆▆ correct?       13:41 |
| 20 respectfully decline to answer.  And I assert the     13:33 | 20    A  On the advice and direction of my counsel, I  13:41 |
| 21 rights guaranteed to me under the Fifth Amendment to  13:33 | 21 respectfully decline to answer.  And I assert the     13:41 |
| 22 the Constitution of the United States.           13:38 | 22 rights guaranteed to me under the Fifth Amendment to  13:41 |
| 23    Q  Otto acquired Tyto LiDAR; correct?         13:38 | 23 the Constitution of the United States.           13:42 |
| 24    A  On the advice and direction of my counsel, I  13:33 | 24    Q  ▆▆▆▆▆ is the ▆▆▆▆▆▆▆▆▆ diode?   13:42 |
| 25 respectfully decline to answer.  And I assert the | 25       MR. EHRLICH:  I don't know if it's possible   13:42 |
| Page 134 | Page 136 |

| | |
|---|---|
| 1 rights guaranteed to me under the Fifth Amendment to | 1 to see.  You can direct us, Counsel?           13:42 |
| 2 the Constitution of the United States. | 2       MR. PERLSON:  Do we need to get a magnifying   13:42 |
| 3    Q  Otto acquired Tyto LiDAR in anticipation of | 3 glass?                          13:42 |
| 4 Otto being acquired by Uber; correct? | 4       MR. SCHMIDT:  Yeah.                13:42 |
| 5    A  On the advice and direction of my counsel, I  13:33 | 5       MR. PERLSON:  Q.  Well, let me ask it -- let   13:42 |
| 6 respectfully decline to answer.  And I assert the     13:33 | 6 me ask it this way:  In -- in Uber -- in Uber's Fuji   13:42 |
| 7 rights agreed -- granted to me under the Fifth      13:33 | 7 board, the diode ▆▆▆ is the ▆▆▆▆▆▆▆      13:42 |
| 8 Amendment to the Constitution of the United States.   13:38 | 8 diode?                         13:43 |
| 9    Q  Uber directed Otto to acquire Tyto LiDAR;     13:38 | 9    A  On the advice and direction of my counsel, I  13:43 |
| 10 correct?                        13:39 | 10 respectfully decline to answer.  And I assert the     13:43 |
| 11    A  On the advice and direction of my counsel, I  13:33 | 11 rights guaranteed to me under the Fifth Amendment to  13:43 |
| 12 respectfully decline to answer.  And I assert the     13:33 | 12 the Constitution of the United States.           13:43 |
| 13 rights guaranteed to me under the Fifth Amendment to  13:33 | 13    Q  And if the -- the next diode down is the      13:43 |
| 14 the Constitution of the United States.           13:39 | 14 ▆▆▆▆▆▆▆▆▆ diode; correct?            13:43 |
| 15    Q  Uber knew that you had been using Google     13:39 | 15    A  On the advice and direction of my counsel, I  13:43 |
| 16 confidential information to develop Tyto LiDAR's     13:39 | 16 respectfully decline to answer.  And I assert the     13:43 |
| 17 technology?                       13:39 | 17 rights guaranteed to me under the Fifth Amendment to  13:43 |
| 18    A  On the advice and direction of my counsel, I  13:33 | 18 the Constitution of the United States.           13:43 |
| 19 respectfully decline to answer.  And I assert the     13:33 | 19    Q  The diodes on the board shown on the far left  13:43 |
| 20 rights guaranteed to me under the Fifth Amendment to  13:33 | 20 are generally less ▆▆▆▆▆▆▆▆▆▆        13:43 |
| 21 the Constitution of the United States.           13:40 | 21 ▆▆▆▆▆▆▆▆ correct?                 13:43 |
| 22       (Document marked Exhibit 25        13:40 | 22    A  On the advice and direction of my counsel, I  13:43 |
| 23        for identification.)             13:40 | 23 respectfully decline to answer.  And I assert the     13:43 |
| 24    MS. RAY:  May I have a copy?  Thank you.     13:40 | 24 rights guaranteed to me under the Fifth Amendment to  13:43 |
| 25    MR. PERLSON:  You've been handed what's been  13:40 | 25 the Constitution of the United States.           13:44 |
| Page 135 | Page 137 |

35 (Pages 134 - 137)

1   Q   The [redacted] diodes on the board   13:44

2   on the -- shown on the upper left is [redacted]   13:44

3   [redacted] diode from the [redacted]   13:44

4   A   On the advice and direction of my counsel, I   13:44

5   respectfully decline to answer.  And I assert the   13:44

6   rights guaranteed to me under the Fifth Amendment to   13:44

7   the Constitution of the United States.   13:44

8   Q   There is a [redacted] between the   13:44

9   [redacted] diode from the [redacted] correct?   13:44

10   A   On the advice and direction of my counsel, I   13:44

11   respectfully decline to answer.  And I assert the   13:44

12   rights guaranteed to me under the Fifth Amendment to   13:44

13   the Constitution of the United States.   13:44

14   Q   The [redacted] the diodes [redacted] as the   13:44

15   [redacted] of the diode [redacted]   13:44

16   correct?   13:44

17   A   On the advice and direction of my counsel, I   13:44

18   respectfully decline to answer.  And I assert the   13:44

19   rights guaranteed to me under the Fifth Amendment to   13:44

20   the Constitution of the United States.   13:45

21   Q   The diodes on the [redacted] are more   13:45

22   [redacted] the [redacted] correct?   13:45

23   A   On the advice and direction of my counsel, I   13:45

24   respectfully decline to answer.  And I assert the   13:45

25   rights guaranteed to me under the Fifth Amendment to   13:45

Page 138

1   the Constitution of the United States.   13:45

2   Q   The diode [redacted] shown on the board on the   13:45

3   far left was derived from [redacted]   13:45

4   [redacted] correct?   13:45

5   A   On the advice and direction of my counsel, I   13:45

6   respectfully decline to answer.  And I assert the   13:45

7   rights guaranteed to me under the Fifth Amendment to   13:45

8   the Constitution of the United States.   13:45

9   Q   You used the confidential information you   13:45

10   learned at Google to derive the diode [redacted] shown on   13:46

11   the board, on the upper left in Exhibit 25; correct?   13:46

12   A   On the advice and direction of my counsel, I   13:46

13   respectfully decline to answer.  And I assert the   13:46

14   rights guaranteed to me under the Fifth Amendment to   13:46

15   the Constitution of the United States.   13:46

16   Q   Uber would not have been able to have   13:46

17   developed the Fuji board shown on Exhibit 25 without   13:46

18   using the confidential information learned at Google   13:46

19   by you; correct?   13:46

20   A   On the advice and direction of my counsel, I   13:46

21   respectfully decline to answer.  And I assert the   13:46

22   rights guaranteed to me under the Fifth Amendment to   13:46

23   the Constitution of the United States.   13:47

24   Q   Uber would not have been able to have   13:47

25   developed the [redacted] on the Fuji board shown on   13:47

Page 139

1   Exhibit 25, without reference to the 14,000 files you   13:47

2   downloaded in December 2015; correct?   13:47

3   A   On the advice and direction of my counsel, I   13:47

4   respectfully decline to answer.  And I assert the   13:47

5   rights guaranteed to me under the Fifth Amendment to   13:47

6   the Constitution of the United States.   13:47

7   Q   Uber is aware that the Fuji board shown on   13:47

8   Exhibit 25 has diode [redacted] that is derived from the   13:47

9   confidential information you took from Google to Uber;   13:47

10   correct?   13:48

11   MS. RAY:  Objection; form.   13:48

12   MR. EHRLICH:  You can answer.   13:48

13   THE WITNESS:  On the advice and direction of   13:48

14   my counsel, I respectfully decline to answer.  And I   13:48

15   assert the rights guaranteed to me under the Fifth   13:48

16   Amendment to the Constitution of the United States.   13:48

17   MR. PERLSON:  Q.  [redacted]   13:48

18   [redacted] that is reflected   13:48

19   in documents you took from Google, including the   13:48

20   14,000 files you downloaded in December 2015, is not   13:48

21   generally known; correct?   13:48

22   A   On the advice and direction of my counsel, I   13:48

23   respectfully decline to answer.  And I assert the   13:48

24   rights guaranteed to me under the Fifth Amendment to   13:48

25   the Constitution of the United States.   13:48

Page 140

1   Q   [redacted]   13:49

2   [redacted] that is reflected in documents you   13:49

3   took from Google, the 14,000 files you   13:49

4   downloaded in December 2015, has independent economic   13:49

5   value because it is not generally known; correct?   13:49

6   A   On the advice and direction of my counsel, I   13:49

7   respectfully decline to answer.  And I assert the   13:49

8   rights granted to me under the Fifth Amendment to the   13:49

9   Constitution of the United States.   13:49

10   Q   The diode [redacted] that is reflected on   13:49

11   Exhibit 25, that was derived from information taken by   13:49

12   you from Google, reflects the diode [redacted] that is   13:49

13   not generally known; correct?   13:49

14   MS. RAY:  Objection; form.   13:49

15   THE WITNESS:  On the advice and direction of   13:49

16   my counsel, I respectfully decline to answer.  And I   13:49

17   assert the rights guaranteed to me under the Fifth   13:49

18   Amendment to the Constitution of the United States.   13:50

19   MR. PERLSON:  Q.  Uber did not independently   13:50

20   develop the diode [redacted] that is reflected on   13:50

21   Exhibit 25 in the upper left-hand corner of the first   13:50

22   page, on its own without reference to confidential   13:50

23   information taken from Google; correct?   13:50

24   A   On the advice and direction of my counsel, I   13:50

25   respectfully decline to answer.  And I assert the   13:50

Page 141

36 (Pages 138 - 141)

ATTORNEYS EYES ONLY

```
 1  rights guaranteed to me under the Fifth Amendment to   13:50
 2  the Constitution of the United States.                 13:50
 3      Do you want this one back?                          13:51
 4  Q  You can just keep it there.  Thanks.                 13:51
 5  A  Okay.                                                13:51
 6      (Document marked Exhibit 26                         13:51
 7      for identification.)                                13:51
 8      THE VIDEOGRAPHER:  Five more minutes.               13:51
 9      MR. PERLSON:  Okay.  Okay.                          13:51
10  Q  You've been handed what's been marked as             13:51
11  Exhibit 26, which I'll represent was attached as        13:51
12  Exhibit B to the Haslim declaration submitted by Uber.  13:51
13      This document reflects the PCB configuration        13:51
14  and diode layout for the Fuji system, corresponding to  13:51
15  the sys- -- the system shown in Exhibit 25; is that     13:52
16  correct?                                                13:52
17  A  On the advice and direction of my counsel, I         13:52
18  respectfully decline to answer.  And I assert the       13:52
19  rights guaranteed to me under the Fifth Amendment to    13:52
20  the Constitution of the United States.                  13:51
21  Q  Exhibit 26 shows the Fuji LiDAR system has           13:52
22  ▮ PCBs; correct?                                        13:52
23  A  On the advice and direction of my counsel, I         13:52
24  respectfully decline to answer.  And I assert the       13:52
25  rights guaranteed to me under the Fifth Amendment to    13:52
                                                  Page 142
```

```
 1  the Constitution of the United States.                 13:53
 2  Q  The ▮ PCBs shown on Exhibit 26 are similar            13:53
 3  to the PCB drawing we saw in Exhibit 25; correct?       13:53
 4  A  On the advice and direction of my counsel, I         13:53
 5  respectfully decline to answer.  And I assert the       13:53
 6  rights guaranteed to me under -- under the Fifth        13:53
 7  Amendment to the Constitution of the United States.     13:53
 8  Q  ▮ PCBs on Exhibit 26 show ▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮            correct?  13:53
10  A  On the advice and direction of my counsel, I         13:53
11  respectfully decline to answer.  And I assert the       13:53
12  rights guaranteed to me under the Fifth Amendment to    13:53
13  the Constitution of the United States.                  13:54
14  Q  The PCB configuration, and diode arrangement         13:54
15  shown on Exhibit 26, was developed using Google         13:54
16  confidential information; correct?                      13:54
17  A  On the advice and direction of my counsel, I         13:54
18  respectfully decline to answer.  And I assert the       13:54
19  rights guaranteed to me under the Fifth Amendment to    13:54
20  the Constitution of the United States.                  13:54
21  Q  The PCB configuration and diode arrangement          13:54
22  shown on Exhibit 26 was developed using Google          13:54
23  confidential information reflected in documents          13:54
24  downloaded by you in December 2015; correct?            13:54
25  A  On the advice and direction of my counsel, I         13:54
                                                  Page 143
```

```
 1  respectfully decline to answer.  And I assert the       13:54
 2  rights guaranteed to me under the Fifth Amendment to    13:54
 3  the Constitution of the United States.                  13:54
 4  Q  Uber would not have been able to have                13:55
 5  developed the PCB configuration and diode arrangement   13:55
 6  shown in Exhibit 26 without reference to Google         13:55
 7  confidential information taken by you, including        13:55
 8  documents downloaded by you in December 2015?           13:55
 9  A  On the advice and direction of my counsel, I         13:55
10  respectfully decline to answer.  And I assert the       13:55
11  rights guaranteed to me under the Fifth Amendment to    13:55
12  the Constitution of the United States.                  13:55
13      MR. PERLSON:  He has to change the tape.            13:55
14      THE WITNESS:  Okay.                                 13:55
15      THE VIDEOGRAPHER:  Okay.  We are going off          13:55
16  the record.  The time is 1:55.                          13:55
17      (Recess taken.)                                     13:55
18      THE VIDEOGRAPHER:  This marks the                   13:58
19  deposition -- or excuse me.                             14:06
20      This marks the beginning of DVD No. 3 in the        14:06
21  deposition of Anthony Levandowski.                      14:06
22      Going back on the record.  The time is 2:06.        14:06
23      MR. PERLSON:  Q.  Would you agree that the --       14:06
24  let me start over again.                                14:06
25      Isn't it correct that the PCB configuration         14:06
                                                  Page 144
```

```
 1  and diode arrangement that is reflected in the          14:06
 2  documents you downloaded from Google in 2015, and are   14:06
 3  used in the configuration shown at Exhibit 26, are not  14:06
 4  generally known?                                        14:07
 5  A  On the advice and direction of my counsel, I         14:07
 6  respectfully decline to answer.  And I assert the       14:07
 7  rights guaranteed to me under the Fifth Amendment to    14:07
 8  the Constitution of the United States.                  14:07
 9  Q  Isn't it correct that the PCB configuration,         14:07
10  and diode arrangement that is reflected in the          14:07
11  documents you downloaded from Google in December 2015   14:07
12  are -- then are used in configuration -- let me start   14:07
13  over again.                                             14:07
14      Isn't it correct that the PCB configuration         14:07
15  and diode arrangement, that is reflected in the Google  14:07
16  documents you downloaded from Google on December --     14:07
17  December 2015, and are used in the configuration shown  14:07
18  at Exhibit 26 derive -- have independent economic       14:08
19  value by virtue of their not being publicly known?      14:08
20  A  On the advice and direction of my counsel, I         14:08
21  respectfully decline to answer.  And I assert the       14:08
22  rights guaranteed to me under the Fifth Amendment to    14:08
23  the Constitution of the United States.                  14:08
24  Q  If you can refer back to Exhibit 25, please.         14:08
25  A  (Witness complies.)                                  14:08
                                                  Page 145
```

37 (Pages 142 - 145)

ATTORNEYS EYES ONLY

| | |
|---|---|
| 1  Q  For the record, Exhibit 25 is UBER000727.  It  14:08 | 1  diodes, ███████████████████ was derived  14:12 |
| 2  looked like that got cut off when it was printed.  14:08 | 2  from Google confidential information reflected among  14:12 |
| 3    In the drawing on the far left of Exhibit 25,  14:09 | 3  the 14,000 documents you downloaded in December 2015?  14:12 |
| 4  there are ████ diodes █████████ of the  14:09 | 4    A  On the advice and direction of my counsel, I  14:12 |
| 5  board.  14:09 | 5  respectfully decline to answer.  And I assert the  14:12 |
| 6    Do you see that?  14:09 | 6  rights guaranteed to me under the Fifth Amendment to  14:12 |
| 7  A  That's your question?  14:09 | 7  the Constitution of the United States.  14:12 |
| 8  Q  Yeah.  14:09 | 8    Q  Isn't it correct that the placement of the  14:12 |
| 9  A  Okay.  14:09 | 9  diodes, █████████████████ would not  14:12 |
| 10    On the advice and direction of my counsel, I  14:09 | 10  have been able to be developed by Uber without use of  14:13 |
| 11  respectfully decline to answer.  And I assert the  14:09 | 11  the Google confidential information reflected among  14:13 |
| 12  rights guaranteed to me under the Fifth Amendment to  14:09 | 12  the 14,000 documents you downloaded from Google in  14:13 |
| 13  the Constitution of the United States.  14:09 | 13  December 2015?  14:13 |
| 14  Q  The diodes shown on the drawing on the far  14:09 | 14    A  On the advice and direction of my counsel, I  14:13 |
| 15  left of Exhibit 25 ████████████  14:09 | 15  respectfully decline to answer.  And I assert the  14:13 |
| 16  correct?  14:10 | 16  rights guaranteed to me under the Fifth Amendment to  14:13 |
| 17    A  On the advice and direction of my counsel, I  14:10 | 17  the Constitution of the United States.  14:13 |
| 18  respectfully decline to answer.  And I assert the  14:10 | 18    Q  Isn't it correct that the placement of the  14:13 |
| 19  rights guaranteed to me under the Fifth Amendment to  14:10 | 19  diodes that █████████████ is a  14:13 |
| 20  the Constitution of the United States.  14:10 | 20  placement that is not publicly known?  14:13 |
| 21  Q  You would agree that the █████ the diodes  14:10 | 21    A  On the advice and direction of my counsel, I  14:13 |
| 22  in the Fuji board are █████████████████████  14:10 | 22  respectfully decline to answer.  And I assert the  14:13 |
| 23  █████████  14:10 | 23  rights guaranteed to me under the Fifth Amendment to  14:13 |
| 24    A  On the advice and direction of my counsel, I  14:10 | 24  the Constitution of the United States.  14:14 |
| 25  respectfully decline to answer.  And I assert the  14:10 | 25    Q  Isn't it correct that the placement of the  14:14 |
| Page 146 | Page 148 |

| | |
|---|---|
| 1  rights guaranteed to me under the Fifth Amendment to  14:10 | 1  diodes, █████████████████ is a  14:14 |
| 2  the Constitution of the United States.  14:10 | 2  placement that has economic value because it is not  14:14 |
| 3  Q  You agree that, in the Fuji system, that each  14:10 | 3  publicly known?  14:14 |
| 4  of the diodes have a ████ placed in ████ them?  14:10 | 4    A  On the advice and direction of my counsel, I  14:14 |
| 5  A  On the advice and direction of my counsel, I  14:10 | 5  respectfully decline to answer.  And I assert the  14:14 |
| 6  respectfully decline to answer.  And I assert the  14:10 | 6  rights guaranteed to me under the Fifth Amendment to  14:14 |
| 7  rights guaranteed to me under the Fifth Amendment to  14:10 | 7  the Constitution of the United States.  14:14 |
| 8  the Constitution of the United States.  14:11 | 8  Q  If you could please turn to the --  14:14 |
| 9    Q  Isn't it correct that, in the Fuji system,  14:11 | 9    MR. PERLSON:  It's this one; right?  14:14 |
| 10  ████ of the diodes have a ████████ placed in  14:11 | 10    MR. SCHMIDT:  Yeah.  14:14 |
| 11  ████████ them?  14:11 | 11    MR. PERLSON:  Q.  The second page of  14:14 |
| 12    A  On the advice and direction of my counsel, I  14:11 | 12  Exhibit 25.  14:14 |
| 13  respectfully decline to answer.  And I assert the  14:11 | 13    A  (Witness complies.)  14:14 |
| 14  rights guaranteed to me under the Fifth Amendment to  14:11 | 14  Q  Do you see that there are ████ on the  14:14 |
| 15  the Constitution of the United States.  14:11 | 15  ████████████ in the middle of the page  14:15 |
| 16    Q  Isn't it correct that the light emitted from  14:11 | 16  annotated with a 12?  14:15 |
| 17  the diodes is ███████████ in the Fuji system?  14:11 | 17    MR. EHRLICH:  He's just asking if you see it  14:15 |
| 18    A  On the advice and direction of my counsel, I  14:11 | 18  now.  You can answer that.  Just, do you see --  14:15 |
| 19  respectfully decline to answer.  And I assert the  14:11 | 19    THE WITNESS:  I do see --  14:15 |
| 20  rights guaranteed to me under the Fifth Amendment to  14:11 | 20    MR. EHRLICH:  -- what he's referencing?  14:15 |
| 21  the Constitution of the United States.  14:12 | 21    THE WITNESS:  I see that he's pointing at  14:15 |
| 22    Q  Isn't it correct that the placement of the  14:12 | 22  ████████████████████  14:15 |
| 23  diodes, as shown on Exhibit 25 -- let me start over  14:12 | 23    MR. EHRLICH:  Okay.  14:15 |
| 24  again.  14:12 | 24    THE WITNESS:  And there's a legend that says:  14:15 |
| 25    Isn't it correct that the placement of the  14:12 | 25  ████████████████████  14:15 |
| Page 147 | Page 149 |

38 (Pages 146 - 149)



1  MR. EHRLICH:  Okay.                    14:15
2  MR. PERSLON:  Q.  And the legend       14:15
3  corresponding to the annotation for 12 shows:    14:15
4  ███████████████                        14:15
5  Do you see that?                       14:15
6  A  Yes, I do see that.                 14:15
7  Q  And it says that the     ██████     14:16
8  ███  on Exhibit 25, second page, underneath that    14:16
9  says:                                  14:16
10 ████████████████████████  ███████      14:16
   ████████████████████████████████
   ██████████████████                    14:16
13 Do you see that it says that?          14:16
14 A  Yep, I do.  I can read that.        14:16
15 Q  And then, underneath ████████       14:16
16 ███  it says:                          14:16
17 ████████████████████████              14:16
18 ████████                               14:16
19 Do you see that?                       14:16
20 A  I -- I see the text, yes.           14:16
21 Q  And then, underneath that, it says:    14:16
22 ██████████████████████████            14:16
23 ████████████████████                  14:16
24 MR. EHRLICH:  Or ███████              14:17
25 THE WITNESS:  They're mils, not millimeters.    14:17
                                         Page 150

1  MR. PERSLON:  Mils.  Okay.  Mils.      14:17
2  Q  So, when I said millimeter before, those are    14:17
3  mils?                                  14:17
4  A  Right, mils.                        14:17
5  MR. EHRLICH:  And you see that?        14:17
6  THE WITNESS:  I do see that, yes.      14:17
7  MR. EHRLICH:  Okay.                    14:17
8  MR. PERSLON:  Q.  And, is the ████████ for    14:17
9  the -- and -- let me start over again.    14:17
10 The ████████████ as reflected on       14:17
11 the second page of Exhibit 25, is an accurate    14:17
12 reflection of the Fuji board at Uber?  14:17
13 A  On the advice and direction of my counsel, I    14:17
14 respectfully decline to answer.  And I assert the    14:17
15 rights guaranteed to me under the Fifth Amendment to    14:17
16 the Constitution of the United States.    14:17
17 Q  And you would agree that the ███  annotation    14:17
18 is referring to ███  in the PCBs for    14:18
19 correct?                               14:18
20 A  On the advice and direction of my counsel, I    14:18
21 respectfully decline to answer.  And I assert the    14:18
22 rights guaranteed to me under the Fifth Amendment to    14:18
23 the Constitution of the United States.    14:18
24 Q  The ██████  annotation is referring to ██████ in    14:18
25 the PCB for ███████  correct?           14:18
                                         Page 151

1  A  On the advice and direction of my counsel, I    14:18
2  respectfully decline to answer.  And I assert rights    14:18
3  guaranteed to me under the Fifth Amendment to the    14:18
4  Constitution of the United States.      14:18
5  Q  ████████████████████████████████    14:18
   ████████████████████████████  ████████
   ██████████████████████████████  ████
9  ██████  correct?                       14:19
10 A  Excuse me.                           14:19
11 On the advice and direction of my counsel, I    14:19
12 respectfully decline to answer.  And I assert the    14:19
13 rights guaranteed to me under the Fifth Amendment to    14:19
14 the Constitution of the United States.    14:19
15 Q  And, it is correct, as it says next to the    14:19
16 ██████  on the legend, that:           14:19
17 ██████████████████████████████  ████   14:19
19 A  What's the question?                 14:19
20 And it is correct...                   14:19
21 On the advice and direction of my counsel, I    14:19
22 respectfully decline to answer.  And I assert the    14:19
23 rights guaranteed to me under the Fifth Amendment to    14:19
24 the Constitution of the United States.    14:20
25 Q  And it is true that the dimensions reflected    14:20
                                         Page 152

1  on the second page of Exhibit 25 for the ████████    14:20
2  was derived from Google confidential information;    14:20
3  correct?                               14:20
4  A  On the advice and direction of my counsel, I    14:20
5  respectfully decline to answer.  And I assert the    14:20
6  right -- the rights guaranteed to me under the Fifth    14:20
7  Amendment to the Constitution of the United States.    14:20
8  Q  And you would agree, that the use of the    14:20
9  ████  for ██████████  is derived from Google    14:21
10 confidential information; is that correct?    14:21
11 A  On the advice and direction of my counsel, I    14:21
12 respectfully decline to answer.  And I assert the    14:21
13 rights guaranteed to me under the Fifth Amendment to    14:21
14 the Constitution of the United States.    14:21
15 Q  And you would agree that the use of the ████████    14:21
16 for ████████  reflected in Exhibit 25, page 2, was    14:21
17 derived from confidential information downloaded by    14:21
18 you from Google in December 2015; correct?    14:22
19 A  On the advice and direction of my counsel, I    14:22
20 respectfully decline to answer.  And I assert the    14:22
21 rights guaranteed to me under the Fifth Amendment to    14:22
22 the Constitution of the United States.    14:22
23 Q  And you would agree that, without the    14:22
24 confidential information you downloaded from Google in    14:22
25 December 2015, Uber would not have been able to have    14:22
                                         Page 153

39 (Pages 150 - 153)

ATTORNEYS EYES ONLY

1 designed a system ▮▮▮▮▮▮                    14:22
2 correct?                              14:22
3     A  On the advice and direction of my counsel, I   14:22
4 respectfully decline to answer.  And I assert the      14:22
5 rights guaranteed to me under the Fifth Amendment to   14:22
6 the Constitution of the United States.                 14:22
7     Q  And you agree that ▮▮▮▮▮▮
8     ▮▮▮▮  that was derived from Google's confidential   14:23
9 information, and reflected in Exhibit 25 on the second  14:23
10 page, is not commonly known?                           14:23
11    A  On the advice and direction of my counsel, I    14:23
12 respectfully decline to answer.  And I assert the      14:23
13 rights guaranteed to me under the Fifth Amendment to   14:23
14 the Constitution of the United States.                 14:23
15    Q  And, you would agree that ▮▮▮▮▮▮   14:23
16    ▮▮▮▮  that was derived from Google                   14:23
17 confidential information, and reflected in Exhibit 25   14:23
18 on the second page, has economic value because it is   14:23
19 not commonly known?                                    14:23
20    A  On the advice and direction of my counsel, I    14:23
21 respectfully decline to answer.  And I assert the      14:23
22 rights guaranteed to me under the Fifth Amendment to   14:23
23 the Constitution of the United States.                 14:24
24    Q  It's correct that you attended a meeting at      14:24
25 Uber's headquarters in mid-January 2016?               14:24
                                        Page 154

1     A  On the advice and direction of my counsel, I   14:24
2 respectfully decline to answer.  And I assert the      14:24
3 rights guaranteed to me under the Fifth Amendment to   14:24
4 the Constitution of the United States.                 14:24
5     Q  At this mid-January 2016 meeting, you           14:24
6 discussed Uber potentially acquiring the new venture   14:24
7 you were planning; correct?                            14:24
8     A  On the advice and direction of my counsel, I   14:24
9 respectfully decline to answer.  And I assert the      14:24
10 rights guaranteed to me under the Fifth Amendment to  14:24
11 the Constitution of the United States.                14:24
12    Q  And, at this meeting in mid-January 2016, you   14:24
13 discussed the technology that Uber would be able to    14:24
14 acquire if it bought your new venture; correct?        14:24
15    A  On the advice and direction of my counsel, I    14:25
16 respectfully decline to answer.  And I assert the      14:25
17 rights guaranteed to me under the Fifth Amendment to   14:25
18 the Constitution of the United States.                 14:25
19    Q  You met with Brian McClendon at Uber in the     14:25
20 summer of 2015; correct?                               14:25
21    A  On the advice and direction of my counsel, I    14:25
22 respectfully decline to answer.  And I assert the      14:25
23 rights guaranteed to me under the Fifth Amendment to   14:25
24 the Constitution of the United States.                 14:25
25    Q  You discussed sharing Google's confidential     14:25
                                        Page 155

1 information with Uber at your meeting in -- with Brian  14:25
2 McClendon in the summer of 2015; correct?              14:25
3     A  On the advice and direction of my counsel, I   14:25
4 respectfully decline to answer.  And I assert the      14:25
5 rights guaranteed to me under the Fifth Amendment to   14:25
6 the Constitution of the United States.                 14:25
7     Q  By at least January 2016, you understood that   14:25
8 Uber was already interested in investing or acquiring  14:25
9 the new company you were founding?                     14:26
10    A  On the advice and direction of my counsel, I    14:26
11 respectfully decline to answer.  And I assert the      14:26
12 rights guaranteed to me under the Fifth Amendment to   14:26
13 the Constitution of the United States.                 14:26
14    Q  You agree that Uber -- let me start over        14:26
15 again.                                                 14:26
16        You agree that Uber's LiDar lens designs are   14:26
17 derived from Google confidential information that you  14:26
18 took from Google?                                      14:26
19    A  On the advice and direction of my counsel, I    14:26
20 respectfully decline to answer.  And I assert the      14:26
21 rights guaranteed to me under the Fifth Amendment to   14:26
22 the Constitution of the United States.                 14:26
23    Q  You agree that Uber would not have been able    14:26
24 to have developed a Li- -- LiDar lens designs          14:26
25 without using the confidential information that you    14:26
                                        Page 156

1 took from Google?                           14:26
2     A  On the advice and direction of my counsel, I   14:26
3 respectfully decline to answer.  And I assert the      14:26
4 rights guaranteed to me under the Fifth Amendment to   14:26
5 the United States Constitution.                        14:27
6     Q  You agree that, without the use of             14:27
7 information reflected in the 14,000 documents you      14:27
8 downloaded in December 2015, Uber would not have been  14:27
9 able to develop its own LiDar lens design; correct?    14:27
10    A  On the advice and direction of my counsel, I    14:27
11 respectfully decline to answer.  And I assert the      14:27
12 rights guaranteed to me under the Fifth Amendment to   14:27
13 the Constitution of the United States.                 14:27
14    Q  Uber's LiDar laser design was designed using    14:27
15 Google's confidential information, including           14:27
16 information contained in the 14,000 documents you      14:27
17 downloaded from Google in 2015; correct?               14:28
18    A  On the advice and direction of my counsel, I    14:28
19 respectfully decline to answer.  And I assert the      14:28
20 rights guaranteed to me under the Fifth Amendment to   14:28
21 the Constitution of the United States.                 14:28
22    Q  The number and configuration of LiDar lasers    14:28
23 in Uber's system is derived from Google confidential   14:28
24 information you took, including information in the      14:28
25 14,000 files you downloaded in December 2015?          14:28
                                        Page 157

40 (Pages 154 - 157)

ATTORNEYS EYES ONLY

1   A  On the advice and direction of my counsel, I   14:28
2  respectfully decline to answer.  And I assert the   14:28
3  rights guaranteed to me under the Fifth Amendment to   14:28
4  the Constitution of the United States.   14:28
5   Q  The pulse rate of Uber's LiDar lasers is   14:28
6  derived from confidential information you took from   14:28
7  Google, including information in the 14,000 files you   14:28
8  downloaded in 2015; correct?   14:29
9   A  On the advice and direction of my counsel, I   14:29
10  respectfully decline to answer.  And I assert the   14:29
11  rights guaranteed to me under the Fifth Amendment to   14:29
12  the Constitution of the United States.   14:29
13   Q  Uber's LiDar optical cavity design is derived   14:29
14  from confidential information that you took from   14:29
15  Google, including 14,000 files you downloaded in   14:29
16  December 2015; correct?   14:29
17   A  On the advice and direction of my counsel, I   14:29
18  respectfully decline to answer.  And I assert the   14:29
19  rights guaranteed to me under the Fifth Amendment to   14:29
20  the Constitution of the United States.   14:29
21   Q  You agree that the ▮▮▮▮▮▮▮▮▮▮   14:29
22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮   14:29
23  used by Uber, is derived from confidential information   14:30
24  that you took from Google, including the 14,000 files   14:30
25  you downloaded in December 2015; correct?   14:30

Page 158

1   A  On the advice and direction of my counsel, I   14:30
2  respectfully decline to answer.  And I assert the   14:30
3  rights guaranteed to me under the Fifth Amendment to   14:30
4  the Constitution of the United States.   14:30
5   Q  Did you discuss the substance of your   14:30
6  testimony at all with counsel during any breaks in   14:30
7  today's deposition?   14:30
8   MR. EHRLICH:  I'm going to object on   14:30
9  attorney-client privilege grounds.   14:30
10   And, to the extent it's not covered by   14:30
11  privilege, I'm going to direct you to assert your   14:31
12  constitutional rights.   14:31
13   THE WITNESS:  On the advice --   14:31
14   MR. EHRLICH:  Go ahead.   14:31
15   THE WITNESS:  -- and direction of my counsel,   14:31
16  I respectfully decline to answer.  And I assert the   14:31
17  rights guaranteed to me under the Fifth Amendment to   14:31
18  the Constitution of the United States.   14:31
19   MR. PERLSON:  Well, so are you instruct -- so   14:31
20  I -- I am just asking a yes-or-no question first.   14:31
21   Q  Did you discuss the substance of your   14:31
22  testimony today with counsel during any breaks in   14:31
23  today's deposition?   14:31
24   It's a yes-or-no question.   14:31
25   MR. EHRLICH:  Let me?   14:31

Page 159

1   THE WITNESS:  Maybe I --   14:31
2   MR. EHRLICH:  Yeah, yeah, yeah.   14:31
3   I do think that calls for attorney-client   14:31
4  privileged information.  I'm going to direct him not   14:31
5  to answer.   14:31
6   MR. PERLSON:  Okay.  Have you read   14:31
7  Judge Alsup's rules regarding this?   14:32
8   MR. EHRLICH:  Candidly, I have not read.  If   14:32
9  there's a rule directly on point, I have not.   14:32
10   MR. PERLSON:  Well, why don't we take a   14:32
11  break, and you can read the rule.   14:32
12   MR. EHRLICH:  Okay.  We can do that.   14:32
13   THE VIDEOGRAPHER:  We are going off the   14:32
14  record.  The time is 2:31.   14:32
15   (Recess taken.)   14:32
16   THE VIDEOGRAPHER:  We are back on the record.   14:43
17  The time is 2:42.   14:43
18   MR. EHRLICH:  So --   14:43
19   MR. PERLSON:  Go ahead.   14:43
20   MR. EHRLICH:  So, I've now had a chance to   14:43
21  read the order.  I can -- I do think the question   14:43
22  calls for attorney-client privileged information, and   14:43
23  I'm going to instruct him not to answer.   14:43
24   But, as an Officer of the Court, I will   14:43
25  represent there was no discussion between   14:43

Page 160

1  Mr. Levandowski and either Mr. Ramsey or myself about   14:43
2  the substance of his testimony, period.   14:43
3   There was, however, very brief discussion   14:43
4  between Mr. Levandowski and counsel for Uber, limited   14:43
5  to the subject of his employment history, prior to his   14:43
6  employment at Google.   14:43
7   MS. RAY:  And, to make clear, it had nothing   14:43
8  to do -- we did not discuss your questioning at all.   14:43
9  I asked some informational questions --   14:44
10   MR. EHRLICH:  That's correct.   14:44
11   MS. RAY:  -- of Mr. Levandowski.   14:44
12   MR. EHRLICH:  There -- there was no   14:44
13  discussion about answers he gave or questions you had   14:44
14  asked up to that point in the deposition.   14:44
15   MR. PERLSON:  Okay.   14:44
16   MR. EHRLICH:  And that, other than that very   14:44
17  brief discussion, there's been no further   14:44
18  communication at all.   14:44
19   MR. PERLSON:  And who was -- who specifically   14:44
20  was involved in that discussion?   14:44
21   MR. EHRLICH:  The discussion with   14:44
22  Mr. Levandowski and Uber's counsel was with Ms. Ray.   14:44
23  I believe I was listening.  Mr. Ramsey may have been   14:44
24  present.  And I'm not sure if there was anyone else   14:44
25  there at the time.   14:44

Page 161

41 (Pages 158 - 161)

1     MS. RAY:  It was less than a couple of     14:44
2 minutes, and it was a factual clarification.  Not     14:44
3 related to your questioning; related to my     14:44
4 understanding of something.     14:44
5     MR. PERLSON:  Okay.     14:44
6     MR. EHRLICH:  So, thank you for letting me     14:44
7 clarify the record.     14:44
8     MR. PERLSON:  Okay.     14:44
9     Q  The -- did you do anything to look for     14:44
10 documents in relation to this deposition,     14:45
11 Mr. Levandowski?     14:45
12     MR. EHRLICH:  I'm going to instruct you to     14:45
13 use this one.  Assert your rights.     14:45
14     THE WITNESS:  On the advice and direction of     14:45
15 my counsel, I respectfully decline to answer.  And I     14:45
16 assert the rights guaranteed to me under the Fifth     14:45
17 Amendment to the Constitution of the United States.     14:45
18     MR. PERLSON:  Q.  Do you have documents     14:45
19 responsive to the subpoena document requests that we     14:45
20 propounded on you?     14:45
21     MR. EHRLICH:  I'm going to direct     14:45
22 Mr. Levandowski to assert his rights.     14:45
23     But I can address that, if you would like me     14:45
24 to, on the record.     14:45
25     MR. PERLSON:  I would, but I --     14:45

Page 162

1     THE WITNESS:  Okay.     14:45
2     MR. PERLSON:  Why don't you do this first.     14:45
3     THE WITNESS:  Yeah.     14:46
4     On the advice and direction of my counsel, I     14:46
5 respectfully decline to answer.  And I assert the     14:46
6 rights guaranteed to me under the Fifth Amendment to     14:46
7 the Constitution of the United States.     14:46
8     MR. EHRLICH:  And, Counsel, to address that,     14:46
9 we have been searching, racing as fast as possible to     14:46
10 search in every location we can come up with, that may     14:46
11 have responsive documents.     14:46
12     As of this morning, when we appeared for the     14:46
13 deposition, we have not located any responsive     14:46
14 non-privileged documents.  We are continuing to     14:46
15 search, of course.     14:46
16     And, as Counsel knows, Judge Alsup has     14:46
17 ordered us to produce in-camera a log identifying any     14:46
18 documents that are responsive at all to which we     14:46
19 assert any privileges.  And we will certainly comply     14:46
20 with that order on Wednesday.     14:47
21     But, as of today, there are no responsive     14:47
22 non-privileged documents that we have located.     14:47
23     MR. PERLSON:  Okay.  And, when you say     14:47
24 "non-privileged," that obviously includes the Fifth     14:47
25 Amendment privilege?     14:47

Page 163

1     MR. EHRLICH:  Correct.  It does include the     14:47
2 Fifth Amendment, as well as other -- as     14:47
3 attorney-client privilege.  But, primarily, the issue     14:47
4 at hand is the -- is the Fifth Amendment privilege as     14:47
5 well.     14:47
6     MR. PERLSON:  And the Fifth Amendment is     14:47
7 being asserted by Mr. Levandowski as to the document     14:47
8 requests as modified by the judge at the hearing on     14:47
9 Wednesday; is that correct?     14:47
10     MR. EHRLICH:  Correct.  We -- as we made     14:47
11 clear at the hearing, we intend to assert     14:47
12 Mr. Levandowski's Fifth Amendment privilege broadly as     14:47
13 against any active production that would be covered     14:47
14 under the Hubbel [sic] line of cases.     14:47
15     And so, that is something -- the -- the     14:47
16 standard practice for Fifth Amendment privilege is to     14:48
17 make an in-camera showing so the judge could evaluate     14:48
18 whether the privilege is being asserted properly or     14:48
19 not, and we intend to do that.     14:48
20     MR. PERLSON:  Okay.  Well, we don't need to     14:48
21 talk further about that on the record.     14:48
22     MR. EHRLICH:  Thank you.     14:48
23     MR. PERLSON:  I think that's it --     14:48
24     MR. EHRLICH:  Okay.     14:48
25     MR. PERLSON:  -- from us.     14:48

Page 164

1     MS. RAY:  I have some questions.  May I     14:48
2 switch seats with you?     14:48
3     MR. PERLSON:  Sure.     14:48
4     THE VIDEOGRAPHER:  Shall we go off the record     14:48
5 to do this?     14:48
6     MS. RAY:  Sure.     14:48
7     THE VIDEOGRAPHER:  We are going off the     14:48
8 record.  The time is 2:48.     14:48
9     (Recess taken.)     14:48
10     THE VIDEOGRAPHER:  We are back on the record.     14:50
11 The time is 2:50.     14:50
12                 14:50
13         EXAMINATION     14:50
14 BY MS. RAY:     14:50
15     Q  Mr. Levandowski, do you recall that your     14:50
16 counsel stated, during this deposition, that if there     14:50
17 were questions about your background before you joined     14:50
18 Google, you would answer them?     14:50
19     MR. PERLSON:  Objection; form.     14:51
20     THE WITNESS:  Does that mean I answer or not?     14:51
21 I'm not clear.     14:51
22     MR. EHRLICH:  If he objects, you still have     14:51
23 to answer.     14:51
24     THE WITNESS:  I still have to answer.  Okay.     14:51
25     MR. EHRLICH:  You can answer.     14:51

Page 165

42 (Pages 162 - 165)

1    THE WITNESS:  I -- I do remember saying that,   14:51
2 yes.                                    14:51
3    MS. RAY:  Q.  So, let me ask you some --   14:51
4 A  Or I do remember --                   14:51
5 Q  Let me ask you some questions about your   14:51
6 background.                              14:51
7    Where were you born?                  14:51
8 A  I was born --                         14:51
9    MR. EHRLICH:  You can answer.         14:51
10    THE WITNESS:  Okay.                   14:51
11 I was born in Brussels, Belgium.         14:51
12    MS. RAY:  Q.  Where were you raised?   14:51
13 A  I was raised in Brussels, Belgium, until I   14:51
14 was 14, and then I came to the United States.   14:51
15 Q  And, did you come to California then?   14:51
16 A  I did, yes.                          14:51
17 Q  Do you have any children?            14:51
18 A  I do, yes.                           14:51
19 Q  What are their ages?                 14:51
20 A  I have two.  Alex is six, and Miles is three.   14:51
21 Q  I'd like to ask you some questions about your   14:51
22 education.                              14:51
23    Where did you attend high school?     14:51
24 A  I went to two high schools.  First is   14:51
25 Tamalpais High School in Marin County, and then   14:51

Page 166

1 University High School in San Francisco.   14:52
2 Q  When did you graduate from high school?   14:52
3 A  In 1998.                             14:52
4 Q  Did you go to college?               14:52
5 A  I did, yes.                          14:52
6 Q  Where did you go to college?          14:52
7 A  I went to college at UC Berkeley for   14:52
8 undergrad and grad school.              14:52
9 Q  When did you graduate from undergrad?   14:52
10 A  In 2002.                             14:52
11 Q  When did you graduate from graduate school?   14:52
12 A  In 2003.                             14:52
13 Q  What was your major during undergrad?   14:52
14 A  I studied industrial engineering and   14:52
15 operations research.                    14:52
16 Q  And what was your master's degree in?   14:52
17 A  It was in industrial engineering and   14:52
18 operations research, as well as management of   14:52
19 technology.                             14:52
20 Q  While you were in high school, did you have   14:52
21 any business ventures?                  14:52
22 A  I did, yes.                          14:52
23 Q  What were they?                      14:52
24 A  I started selling candy freshman year to the   14:52
25 fellow students there.  And then, I built websites,   14:52

Page 167

1 and I built a website for seeing the inside locations   14:53
2 of things.  I made a map of campus.      14:53
3 Q  Can you give me an example of a website that   14:53
4 you built for seeing the inside of things.   14:53
5 A  So, the Tamalpais High School website had an   14:53
6 internal version that described this system where   14:53
7 there was, you know, pictures that you could navigate   14:53
8 and click through and see forward or back or around.   14:53
9    You know, there's other websites that I   14:53
10 created later on post-high school.  Once -- one was an   14:53
11 internal website for a company called Central Garden   14:53
12 and Pets which allowed the business to share internal   14:53
13 information about their customers and their products,   14:53
14 as well as their employees; similar things that you   14:53
15 call, you know, intranets today.         14:53
16 Q  Why did you build the website so that you   14:54
17 could see the inside of the high school?   14:54
18 A  I received the first digital camera from my   14:54
19 family, and I thought it was interesting to be able to   14:54
20 take pictures and kind of visit a location remotely.   14:54
21 I thought that would be interesting to have the   14:54
22 students to be able to show off the school, as well as   14:54
23 show that off to my friends and my mom, who lived in   14:54
24 Belgium still.                          14:54
25 Q  When you were an undergraduate, did you have   14:54

Page 168

1 any business ventures?                  14:54
2 A  I did, yes.                          14:54
3 Q  What was one of your businesses during   14:54
4 undergrad?                              14:54
5 A  It was called La Raison, and it was the --   14:54
6    MR. EHRLICH:  How do you spell that?   14:54
7    THE WITNESS:  L-A, R-A-I-S-O-N.        14:54
8    MS. RAY:  Q.  And what was La Raison?   14:54
9 A  It was a business that was making websites   14:54
10 and intranets for other businesses.      14:54
11 Q  When did you get involved with autonomous or   14:55
12 driverless vehicles?                    14:55
13 A  It started in a class where we were learning   14:55
14 Java and robotics with Professor Roger Glassey.  And   14:55
15 we built self-driving vehicles out of, you know, Lego   14:55
16 Mindstorms using the Java programming language.   14:55
17    MR. EHRLICH:  Did you say Lego?        14:55
18    THE WITNESS:  Lego, L-E-G-- like the toys   14:55
19 that my kids play with now.              14:55
20    MS. RAY:  Q.  Did this work receive any   14:55
21 recognition?                            14:55
22 A  Well, after the class, I entered a   14:55
23 competition which was several universities competing,   14:55
24 including, I believe, Stanford and Santa Clara   14:55
25 University, that was organized by the Sun   14:55

Page 169

43 (Pages 166 - 169)

1 Microsystems, and specifically organized by the folks   14:55
2 that created the -- the language of Java.   14:55
3       And it was competing for what they -- at the   14:55
4 time was the Gosling Award, which was named after   14:56
5 James Gosling, who is the inventor of Java.   14:56
6       And for that, I created a monopoly build   14:56
7 sorting robots that won the competition.  I then   14:56
8 received the Gosling Award.   14:56
9   Q  Earlier we heard about the DARPA Challenge.   14:56
10      How did you learn about that challenge?   14:56
11   A  My mom knew how much I loved robots and that   14:56
12 I loved making things.  And she gave me a call when   14:56
13 she found out about this competitions sponsored by the   14:56
14 defense department.  And she thought it was really   14:56
15 exciting for me to be able to know that I was going   14:56
16 on.  And when I saw it, I couldn't resist, and I   14:56
17 decided to enter.   14:56
18   Q  Can you tell me a little bit more about what   14:56
19 the DARPA race was.   14:56
20   A  So, the DARPA Grand Challenge was a set of   14:56
21 three competitions.  The -- the first one was   14:56
22 obviously, we didn't know there was going to be a   14:56
23 follow-up system.   14:57
24      And it was a -- effectively, it was a race   14:57
25 from LA to Vegas across the desert.  It was really   14:57

Page 170

1 Barstow to Vegas, you know, across the desert.  And   14:57
2 the goal was to release a vehicle into the world on   14:57
3 its own without any remote control or assistance in   14:57
4 order to try to get, you know, a piece of equipment   14:57
5 from one location to the next without any supervision   14:57
6 or input.   14:57
7       And, it was kind of a monumental step in   14:57
8 thinking how things were done before, where   14:57
9 previously, the defense department, clearly wanting to   14:57
10 move materials and troops from one point to the other,   14:57
11 had done contract works for specific objectives, and   14:57
12 the progress had been very slow.   14:57
13      And so, this DARPA was attempting to   14:57
14 circumvent that by having a competition that was just   14:57
15 clean, saying, Here is the start.  Here is the finish.   14:57
16 We'll give you a road that you can follow, in other   14:58
17 words.  And then we'll -- you'll turn the switch and   14:58
18 let the vehicle go through and see if it makes it or   14:58
19 not.   14:58
20   Q  What was your entry into the DARPA Challenge?   14:58
21   A  The entry was called Ghost Rider, and it was   14:58
22 a two-wheeled motorcycle.  It was the first of its   14:58
23 kind, to our knowledge, at that time and, you know,   14:58
24 self-driving motorcycle.   14:58
25   Q  What was your personal contribution to   14:58

Page 171

1 building the Ghost Rider?   14:58
2   A  I built a substantial portion of it myself,   14:58
3 but I also created a team to help me build the tools   14:58
4 and software and hardware to make the system work.   14:58
5   Q  Was the Ghost Rider ever used on public   14:58
6 streets?   14:58
7   A  It was.  We did some testing on -- on public   14:58
8 roads prior to the event to make sure that it was able   14:58
9 to go up certain hills and stay in -- in the right   14:58
10 lanes and so forth.   14:59
11   Q  Where did you do that testing on public   14:59
12 streets?   14:59
13   A  We did that in Richmond, California.   14:59
14   Q  How many other two-wheeled entrants were in   14:59
15 that same competition?   14:59
16   A  There were none.  It was, frankly, a pretty   14:59
17 crazy idea to go and make things even harder than   14:59
18 everybody already believed the challenge to be.   14:59
19   Q  Why was it harder to have a two-wheel --   14:59
20 two-wheel entry?   14:59
21   A  Well, to get a car to move down the street,   14:59
22 you know, 20 feet, you can kind of apply a little bit   14:59
23 of accelerator and not steer, and the vehicle will do   14:59
24 that.   14:59
25      To get a motorcycle to move forward, you have   14:59

Page 172

1 to build a lot of technology beforehand to make it to   14:59
2 be able to just drive in a straight line.  And so,   14:59
3 you're just making the problem harder than it needs to   14:59
4 be.   14:59
5   Q  How did the Ghost Rider do in the   14:59
6 competition?   14:59
7   A  It didn't do as well as I was hoping.  It --   14:59
8 it turned out that the complexities and challenges of   15:00
9 adding the balancing before you could start testing   15:00
10 all of the other navigation and optical were hard.   15:00
11      But, on the first year, we actually did   15:00
12 manage to qualify.  And out of the 109 teams or so   15:00
13 that applied, you know, 14 or so qualified, and we   15:00
14 were one of them.   15:00
15      On the day of the race, I -- I made a   15:00
16 mistake, and I forgot to turn on the software for   15:00
17 stabilizing the vehicle.  And the -- the motorcycle   15:00
18 went out of the gate and fell down.  So that was very   15:00
19 embarrassing.   15:00
20   Q  What happened to the Ghost Rider after the   15:00
21 race?   15:00
22   A  We used it again for the following   15:00
23 competition, which was, I think, a year or so later.   15:00
24 And then after that one, where the performance was   15:00
25 much better than before, the Smithsonian thought that   15:00

Page 173

44 (Pages 170 - 173)

ATTORNEYS EYES ONLY

Page 174

```
1  it was pretty unique and novel and new, and so they    15:00
2  requested it for an exhibit on autonomous vehicles.    15:01
3  And I donated it to the Smithsonian, where it is    15:01
4  today.    15:01
5      Q   After graduate school, where did you work?    15:01
6      A   After graduate school, so I -- long day, so I    15:01
7  don't have the whole chronology down.    15:01
8          But I did a couple of things, one of which    15:01
9  was I was the -- having met all of the teams in a very    15:01
10 nonthreatening way by making a robotic motorcycle    15:01
11 through the Grand Challenge, one of the teams was Team    15:01
12 Dad.  Dad, are we there yet?  And it was by Bruce Hall    15:01
13 and Dave Hall, the founders of Velodyne Acoustics who,    15:01
14 at the time for the first Grand Challenge, made a    15:01
15 stereo camera, and in the second Grand Challenge made    15:01
16 a 360 laser that has evolved into the Velodyne that    15:02
17 they sell today.    15:02
18         And, after the race, I helped them get their    15:02
19 unit from the early, early prototype that just    15:02
20 outputted video data, as well as specific outputs,    15:02
21 into outputting Ethernet packets so that others could    15:02
22 use it.    15:02
23         And then, I became also the first Velodyne    15:02
24 sales rep.  And then I, you know, went around and    15:02
25 traveled and met many of the teams that were building    15:02
```

Page 175

```
1  these vehicles and helped them get the Velodyne and    15:02
2  helped them integrate and just understand what this    15:02
3  new sensor could do for -- for their teams.    15:02
4      Q   When you say that you were working on the    15:02
5  prototype that evolved into the Velodyne they sell    15:02
6  today, do you mean the LiDar that Velodyne --    15:02
7      A   Correct, the LiDar, yes.    15:02
8      Q   -- sells -- sells today?    15:02
9      A   There is a LiDar Gen 1, which was about this    15:02
10 large, which is in the Smithsonian as well.    15:02
11         And, for people to understand what the value    15:03
12 of that was, looking at a video screen wasn't enough.    15:03
13 You want to be able to get Ethernet packets.  And Dave    15:03
14 Hall was working on getting that working.    15:03
15         And I remember a couple of times where, in    15:03
16 getting that ready for demonstration and sale, I    15:03
17 helped him get the Ethernet devices, you know, up and    15:03
18 running.    15:03
19     Q   What else did you do after graduate school    15:03
20 around that time after you graduated?    15:03
21     A   I had -- I took the software for the Ghost    15:03
22 Rider and applied that to self-driving tractors so    15:03
23 that you -- a farmer could actually go and, you know,    15:03
24 ride along the tractor, and the tractor would go very    15:03
25 precisely straight down the whole field, and it could    15:03
```

Page 176

```
1  manually turn around and precisely drive back so that    15:03
2  you could plant your seeds in one specific time, and    15:04
3  then harvest them at a very different specific time,    15:04
4  and abstract out the skill of the operator and turn    15:04
5  that into the machine.    15:04
6      Q   What did you do next after that project?    15:04
7      A   After that, we -- this is where I worked with    15:04
8  Professor Thrun and a couple of his students, and we    15:04
9  started a company that was known as -- as VueTool.  I    15:04
10 don't recall if we actually founded the company, but    15:04
11 we did have a company together, and we called it that.    15:04
12         And we made a demo of kind of an evolution of    15:04
13 something called Movie Maps that was made by an MIT    15:04
14 professor -- I think an MIT professor -- a while back,    15:04
15 where you could actually view the world as kind of a    15:04
16 person would be there without actually physically    15:05
17 being in that location.    15:05
18         And we did that where we drove around    15:05
19 San Francisco and built maps so you could just drop    15:05
20 yourself in a location in San Francisco and see    15:05
21 that -- what the specific area looked like.    15:05
22     Q   Did that project involve LiDar?    15:05
23     A   There was a LiDar on the vehicle that we were    15:05
24 collecting information on.  The generating of the    15:05
25 pictures did not use it, but we were logging laser    15:05
```

Page 177

```
1  information as well.    15:05
2      Q   What ultimately happened with VueTool?    15:05
3      A   The -- the VueTool team and technology ended    15:05
4  up at Google through an acquisition, even though it    15:05
5  wasn't --    15:05
6          MR. EHRLICH:  Okay.  Excuse me, Counsel.    15:05
7          I'm -- Mr. Levandowski, I'm going to instruct    15:05
8  you not to give any answers that reference activities    15:05
9  after you started -- after that first day you started    15:05
10 at Google.    15:05
11         THE WITNESS:  Okay.    15:05
12         MR. EHRLICH:  Okay.    15:05
13         THE WITNESS:  Okay.    15:05
14         MS. RAY:  Q.  What became of your VueTool    15:05
15 product?    15:06
16     A   The VueTool product team joined Google, and    15:06
17 then what it became there is something that happened    15:06
18 afterwards.  But it's -- it was about building    15:06
19 pictures of seeing the world so you can --    15:06
20         MR. EHRLICH:  You can give the name, if    15:06
21 there's any --    15:06
22         THE WITNESS:  The name -- Street View is --    15:06
23 is what the technology and team eventually became.    15:06
24         MR. EHRLICH:  Okay.    15:06
25         MS. RAY:  Q.  Did you ever work at a company    15:06
```

45 (Pages 174 - 177)

1 called ENSCO?                                    15:06
2    A  I did, yes.                                15:06
3    Q  What was ENSCO?                            15:06
4    A  ENSCO stands for Engineering Science and   15:06
5 Computers, and it's a research organization where I   15:06
6 helped build simulators for understanding how    15:06
7 self-driving vehicles would go and navigate the world.  15:06
8        And I helped put proposals on how to      15:06
9 integrate cameras and LiDar for augmenting the   15:06
10 resolution and the depth of specific information.  15:06
11       So, if you had a picture and a set of points  15:07
12 from a laser, you could extract more information by  15:07
13 combining the two than just using them separately.  15:07
14   Q  Have we discussed all of your business and  15:07
15 employment ventures before you started at Google at  15:07
16 this point?                                      15:07
17   A  I think so, but I don't know.  There may be a  15:07
18 couple of other ones I don't recall right now.   15:07
19   Q  Thank you.                                  15:07
20       MS. RAY:  I don't have any further questions.  15:07
21       THE WITNESS:  Okay.  Thank you.           15:07
22       MR. PERLSON:  I'm going to have some.  Why  15:07
23 don't you stop.                                  15:07
24       THE VIDEOGRAPHER:  Do you want me to go off?  15:07
25       MR. PERLSON:  Yeah.                        15:07

Page 178

1        THE VIDEOGRAPHER:  We are going off the    15:07
2 record.  The time is 3:07.                        15:07
3        (Recess taken.)
4        THE VIDEOGRAPHER:  We are back on the record.  15:08
5 The time is 3:08.                                 15:08
6        MS. RAY:  Before I forget, can we designate  15:08
7 this transcript "Attorneys' Eyes Only"?  And then  15:08
8 we'll go through the process of de-designating.   15:08
9        MR. PERLSON:  That's acceptable.           15:08
10       MS. RAY:  Great.                           15:08
11       MR. EHRLICH:  Thank you.                   15:08
12                                                  15:08
13          FURTHER EXAMINATION                     15:08
14 BY MR. PERLSON:                                  15:08
15   Q  Mr. Levandowski, you understand that Ms. Ray  15:08
16 is Uber's lawyer?                                15:08
17   A  I do understand that, although I do think   15:08
18 that MoFo is also representing me.                15:08
19   Q  And --                                      15:08
20       MR. EHRLICH:  Can I just say, your         15:08
21 understanding is that MoFo represents you.  Not in  15:08
22 this matter, however; correct?                   15:08
23       THE WITNESS:  Correct, yes.                15:09
24       MR. EHRLICH:  Okay.                        15:09
25       MR. PERLSON:  Q.  But even though Ms. Ray  15:09

Page 179

1 represents Uber in this case, she didn't ask you any  15:09
2 questions about what you did at Uber; did she?    15:09
3    A  I --                                        15:09
4        MR. EHRLICH:  You can answer that.         15:09
5        THE WITNESS:  Yeah, I -- she did not ask me  15:09
6 any questions about what I do at Uber.            15:09
7        MR. PERLSON:  Q.  And Uber is a defendant in  15:09
8 this case?  You understand that?                  15:09
9    A  I do understand that, yeah.                 15:09
10   Q  Don't you think that's a little strange, that  15:09
11 Uber's counsel didn't ask you any questions about what  15:09
12 you did at Uber?                                 15:09
13   A  Well, I did clarify that I was only answering  15:09
14 questions about things that I did before I joined  15:09
15 Google.  And I did not join Uber before I joined  15:09
16 Google.                                          15:09
17   Q  And what you did before you joined Google   15:09
18 doesn't have any bearing on whether you stole     15:09
19 documents from Google; does it?                  15:09
20       MR. EHRLICH:  You can answer, as long as you  15:09
21 confine your answer to what happened before you joined  15:10
22 Google.                                          15:10
23       MS. RAY:  Objection; form.                 15:10
24       THE WITNESS:  What I -- what I did before I  15:10
25 joined Google does not affect the things that I did  15:10

Page 180

1 after I joined Google.                            15:10
2        MR. PERLSON:  And, Ms. Ray talked about    15:10
3 things you had done from an engineering perspective  15:10
4 before you joined Google.                         15:10
5    Q  But, if you were such an accomplished       15:10
6 engineer, why did you steal 14,000 documents from  15:10
7 Google?                                          15:10
8        MS. RAY:  Objection; form.                 15:10
9        THE WITNESS:  On the advice of -- on -- on  15:10
10 the advice and direction of my counsel, I respectfully  15:10
11 decline to answer.  And I assert the rights guaranteed  15:10
12 to me under the Fifth Amendment to the Constitution to  15:10
13 the United States.                               15:10
14       MR. PERLSON:  Q.  Don't you think that the  15:10
15 jury would be more interested in whether you stole  15:10
16 14,000 documents from Google than what you did before  15:11
17 you were at Google?                              15:11
18       MS. RAY:  Objection; form.                 15:11
19       THE WITNESS:  On the advice and direction of  15:11
20 my counsel, I respectfully decline to answer.  And I  15:11
21 assert the rights guaranteed to me under the Fifth  15:11
22 Amendment of the Constitution to the United States.  15:10
23       MR. PERLSON:  Q.  Don't you think that the  15:11
24 question of whether you stole 14,000 documents and  15:11
25 used them at Uber is more relevant to this case than  15:11

Page 181

46 (Pages 178 - 181)

1 anything that Ms. Ray asked you?                    15:11
2     MS. RAY:  Objection; form.                    15:11
3     THE WITNESS:  On the advice and direction of   15:11
4 my counsel, I respectfully decline to answer.  And I   15:11
5 assert the rights guaranteed to me under the Fifth    15:11
6 Amendment of the Constitution to the United States.   15:10
7     MR. PERLSON:  Q.  Did the clarification that    15:11
8 Ms. Ray asked of you during this deposition today have  15:11
9 anything to do with the subject matter that was      15:11
10 addressed in her examination of you that just preceded  15:11
11 me?                                15:11
12     MS. RAY:  Objection.                   15:11
13     I instruct him not to answer on           15:12
14 attorney-client privilege grounds.             15:12
15     MR. EHRLICH:  And I instruct you to follow    15:12
16 that -- that instruction as well.              15:12
17     MS. RAY:  I'll represent to you, all I did    15:12
18 was ask a factual clarification.              15:12
19     MR. PERLSON:  If you --                15:12
20     MS. RAY:  But I'm not going to let him talk   15:12
21 to you about privileged matters.              15:12
22     MR. PERLSON:  I'll reserve all rights on     15:12
23 that, but we can deal with that later.           15:12
24     That's all.                    15:12
25     THE WITNESS:  Thank you.               15:12

Page 182

1     THE VIDEOGRAPHER:  Okay.  This marks the end   15:12
2 of DVD No. 3 in the deposition of Anthony Levandowski.  15:12
3     We are going off the record.  The time is      15:12
4 3:12 p.m.                            15:12
5     THE REPORTER:  Counsel, did you need a copy?   15:12
6     MR. EHRLICH:  I think we will.             15:12
7     MS. RAY:  Can you e-mail Ethel and ask her    15:13
8 for the order?  We have a standing order.          15:13
9     THE REPORTER:  They have a standing for       15:13
10 immediate delivery today.  Are you wanting it the same  15:13
11 time everybody else gets it?                 15:13
12     MS. RAY:  Yes.                     15:13
13     MR. EHRLICH:  Sure, sure.  That's -- we do.   15:13
14     (WHEREUPON, the deposition ended           15:13
15     at 3:13 p.m.)                    15:13
16         ---oOo---
17
18
19
20
21
22
23
24
25

Page 183

1         CERTIFICATE OF REPORTER
2
3     I, ANDREA M. IGNACIO, hereby certify that the
4 witness in the foregoing deposition was by me duly
5 sworn to tell the truth, the whole truth, and nothing
  but the truth in the within-entitled cause;
6     That said deposition was taken in shorthand
7 by me, a disinterested person, at the time and place
8 therein stated, and that the testimony of the said
  witness was thereafter reduced to typewriting, by
9 computer, under my direction and supervision;
10     That before completion of the deposition,
11 review of the transcript [ ] was [x] was not
  requested.  If requested, any changes made by the
12 deponent (and provided to the reporter) during the
13 period allowed are appended hereto.
14     I further certify that I am not of counsel or
15 attorney for either or any of the parties to the said
16 deposition, nor in any way interested in the event of
  this cause, and that I am not related to any of the
17 parties thereto.
18 Dated: April 14, 2017
19
20
21
22
23
24     ANDREA M. IGNACIO,
25     RPR, CRR, CCRR, CLR, CSR No. 9830

Page 184

47 (Pages 182 - 184)