**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94101 | TEL (415) 875-6600

April 24, 2017

Magistrate Judge Jacqueline Scott Corley

Re:   *Waymo LLC v. Uber Technologies, Inc, et al.*, N.D. Cal., Case 3:17-cv-00939-WHA
      **Uber's Improper Notice of a Deposition of Larry Page, CEO of Alphabet**

Dear Judge Corley:

Please find below Plaintiff Waymo LLC's ("Waymo") two-page statement regarding Defendants' ("Uber") improper request for a deposition of Larry Page, the CEO of Alphabet Inc. (which owns Google Inc., which in turn owns Waymo Holding Inc., which in turn is the managing member of Waymo LLC).

Sincerely,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

quinn emanuel urquhart & sullivan, llp

00811-99578/9216463.5
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

**The Page Deposition Violates Judge Alsup's Order Re: Expedited Discovery.** Pursuant to the expedited discovery Order, Uber's discovery started first so that Uber could prepare its opposition to Waymo's PI motion. Dkt. 61 at ¶¶ 1-3. Uber took that discovery, including numerous depositions, and submitted its opposition briefing for Waymo's PI motion on April 7. Dkt. 177. Thereafter, Waymo was permitted to engage in discovery for purposes of its reply. Dkt. 61 at ¶¶ 5-7. Although stymied by Uber's numerous violations of Court orders, Waymo submitted its reply on April 21. Dkt. 245-48. Uber may now file a sur-reply brief (on Friday), but Judge Alsup was very clear about its narrow scope. Dkt. 61 at ¶ 8 (ordering that Uber's sur-reply is "limited strictly to addressing material in plaintiff's reply" and "may not rely on fresh sur-reply declarations on any point that could and should have been raised in the opposition").

While Uber pretends it seeks Mr. Page's deposition to address issues raised in Waymo's reply, that does not pass the straight face test given that Uber served the deposition notice for Mr. Page on April 20, *the day before* Waymo filed its PI reply. *See* **attached (Waymo's 4/22/17 Letter).** Nor do Uber's after-the-fact justifications hold water. For example, Uber points to the fact that Waymo's reply mentions that Mr. Levandowski and Uber discussed a potential acquisition just two days after Levandowski left Waymo. But those discussions have nothing to do with ***Mr. Page***, nor would any alleged "longstanding practice" at Google of allowing executives to pursue side ventures have bearing on conversations between Levandowski and Uber. Plus, even if there were some alleged Google practice that was somehow relevant here, nothing would have precluded Uber from pursuing that discovery before its opposition. Uber also points to the fact that Waymo's discussion of Uber's dubious assertion of a common interest privilege somehow implicates every joint defense agreement Google has ever entered. But Uber put the common interest in privilege in play here and, here too, it was in play ***before*** Uber's Opposition. *E.g.*, Dkt. 147. As to the history of Waymo's pre-lawsuit investigation into trade secret misappropriation, Uber cannot show why it could not or should not have addressed that subject matter through prior discovery and with its April 7 opposition brief. Indeed, Uber did address this exact subject matter with its opposition. Dkt. 173-3 at pp. 21-22.

**Uber Has Not Satisfied The Apex Doctrine.** Mr. Page is not an employee of Waymo LLC, the plaintiff in this case. Instead, he is the current CEO of Alphabet, the parent company for Google. Google, in turn, is the parent company for Waymo Holding, which is the "managing member" of Waymo LLC. As the senior-most executive of Alphabet, Mr. Page heads the second-most valuable publicly-traded corporation in the world and oversees (indirectly through the corporate family tree) approx. 70,000 employees. He is without question an "apex" witness. An apex deposition is proper only if (i) the witness has ***unique*** and ***personal*** knowledge of the facts at issue and (ii) the party seeking the deposition has exhausted less intrusive discovery methods. *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007). Here, Uber's deposition notice for Mr. Page fails the test.

Uber has failed to show that Mr. Page has ***any*** knowledge of Waymo's pre-lawsuit investigations, let alone unique or personal knowledge. And the idea that the CEO of a multinational conglomerate is the only suitable witness to answer questions regarding the timing of a pre-lawsuit investigation (of an indirect subsidiary no less) is not credible. Indeed, Uber has in fact already questioned other Waymo witnesses on this subject matter, and received responsive testimony. *See* Dep. of Gary Brown at 11:2-4 ("Q. When did you begin doing your [investigative] work with respect to Mr. Levandowski? A. Around March 2016.").

Uber also has made no attempt to show that Mr. Page has any unique or personal knowledge of any Google policy or practice regarding personal side businesses, much less unique personal knowledge of the identities of any employees engaged in side businesses. If Uber purports to have some basis to believe that Mr. Page has any such unique knowledge, Uber should disclose those bases and with an offer of proof. Otherwise, this is an attempt at an apex deposition without any basis to justify it. Furthermore, Uber has not sought discovery into this issue from any less intrusive source. For example, although Uber has taken seven depositions already and served six document requests for each, Uber has not served any prior document requests, nor questioned any deponent, on this topic. These failures are dispositive. At the very least, a court facing a motion for a protective order would require Uber to show that less intrusive discovery methods are inadequate. *Celerity*, 2007 WL 205067, at *5.

Uber also has not and likely cannot show that Mr. Page, who is a CEO and not an attorney, possesses any unique or personal knowledge about Waymo's history relating to common-interest or joint-interest privileges. And it defies common sense that a CEO of a company with a market capitalization of almost $600 billion and almost 70,000 employees would have any meaningful testimony—let alone unique knowledge—regarding the company's history (or lack thereof) of agreeing to particular contractual terms and/or then asserting such terms in lawsuits.

**Uber's "Sword/Shield" Use Of Supposed Privilege.** Mr. Levandowski has thus far resisted all of Waymo's attempts to gain relevant discovery in this case. He has refused to produce documents, refused to give responsive testimony, and even succeeded so far in stopping *Uber* from producing responsive information under a combination of Fifth Amendment and "common interest" arguments. Given that, Uber's instant deposition request for Mr. Page represents an improper attempt to turn that shield into a "sword." Indeed, Uber's lead counsel has recently made representations about his knowledge of private conversations supposedly between Messrs. Page and Levandowski in attempts to justify this deposition. How could Uber counsel have any awareness of such supposed conversations, unless discussing them with Mr. Levandowski? Uber cannot rely on Mr. Levandowski as a source of evidence in this case (including to justify a deposition) through private or background conversations, while Waymo remains unable to get any discovery at all from him.

**Timing.** As discussed above, no deposition of Mr. Page should occur. But if the Court were to order a deposition of Mr. Page for this week, he is available only on Friday afternoon. Waymo has disclosed that timing to counsel for Uber.

**Kalanick Deposition.** Finally, if Uber were permitted to take the deposition of Mr. Page—and it should not be—Waymo should be permitted to question Uber's CEO. Uber cannot argue that supposed Page/Levandowski discussions are relevant to Waymo's PI while denying that Kalanick/Levandowski discussions are the same. Indeed, discussions between Messrs. Kalanick and Levandowski are obviously more relevant to Waymo's PI, given that Waymo has alleged that Uber bought Otto and hired Levandowski with the intent of misappropriating Waymo trade secrets. And yet here too, while Uber seems to have the full ability to ask about such discussions with Levandowski (and Mr. Kalanick), Levandowski plead the Fifth Amendment as to these same issues.

00811-99578/9216463.5