MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415 268 7000
FACSIMILE: 415 268 7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

April 24, 2017

Writer's Direct Contact
+1 (415) 268.7020
AGonzalez@mofo.com

The Honorable Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse
Courtroom F - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:  *Waymo LLC v. Uber Technologies, Inc. et al.,* Case No. 3:17-cv-00939

Dear Magistrate Judge Corley:

"When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). The burden is on Waymo to show that Mr. Page's deposition should not go forward. *Id.* ("a party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied"); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C-07-05634 CRB (DMR), 2014 WL 939287, at *2 (N.D. Cal. Mar. 6, 2014) ("the party opposing discovery—here, ANA—bears the burden of showing that the deposition should not be allowed").

Uber's request to depose Larry Page requires context. This is not your garden variety trade secrets case. This is a case that involves what potentially may be the most lucrative business in history, and Google is trying to keep its main competitor on the sidelines. Google admits it is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (not a typo) of dollars. (Ex. A (Chu Dep. at 7:12-8:7, 8:19-23, 11:23-12:7; Ex. A).) Google has prepared studies showing that Uber has ▓▓▓▓▓ ▓▓▓▓▓▓▓▓ (*id.* at 10:24-11:7). In a March 2015 report, Google concluded ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." (Ex. B at 9.) That report also asks: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* at 12; emphasis added.) This evidence speaks volumes about the true purpose behind this case. (Waymo claims all of this is confidential; we strongly disagree.)

Mr. Page is an important witness for a host of reasons. He spoke with Anthony Levandowski (the person who allegedly stole Google files[1]) regarding Mr. Levandowski's desire to leave

---

[1] Waymo was not formed until after the alleged theft.

sf-3762168

MORRISON | FOERSTER

Hon. Jacqueline Scott Corley
April 24, 2017
Page Two

Waymo to set up his own autonomous vehicle venture. We also believe that he knew that Mr. Levandowski was having conversations with Uber before the Uber deal was announced. Waymo does not deny that Mr. Page has such knowledge.

Moreover, Mr. Page spoke with Uber's CEO (Travis Kalanick) at the same time that Waymo discovered the alleged theft of 14,000 files. (Google is an investor in Uber; Mr. Page is on a first-name basis with Mr. Kalanick.) Yet, Mr. Page said nothing about these files and did not suggest that Mr. Levandowski had done anything wrong. If the files were so important, why did Mr. Page not advise Uber of the alleged theft, especially since he knew Mr. Levandowski had gone to Uber to work on its autonomous vehicle project?

Such testimony will help rebut assertions made in Waymo's reply brief filed Friday in support of a preliminary injunction (Dkt. 254). In the first paragraph, Waymo suggests wrongdoing and states in bold that Mr. Levandowski and Uber began discussing a potential acquisition "*just two days after Levandowski left Waymo*." This places at issue Mr. Page's knowledge of such discussions. Moreover, Google allows executives to work on side ventures, even if they compete with Google. Testimony from Mr. Page on this topic puts into context any meeting that may have occurred between Mr. Levandowski and Uber.

Mr. Page's testimony is also relevant to Google's assertions regarding its pre-lawsuit investigation. Because of the substantial bonus that Waymo paid Mr. Levandowski, and the importance of the autonomous driving project to Google, by at least March 2016, Google was already investigating Mr. Levandowski. Yet Waymo did not file its motion for preliminary injunction until a year later, in March 2017. Why was there such a lengthy delay? In its reply, Waymo finally admits that it learned of the alleged downloading of 14,000 files in October. (Dkt. 254 at 14:4.) But it waited five months to file this motion. Why? Waymo contends that it did not sue Uber then because although it knew that the supposedly critical files had been stolen, it did not have evidence against Uber. (*Id*. at 14:7.) But Waymo *did* sue Mr. Levandowski—twice, in two separate arbitrations filed at the end of October 2016. And it said nothing about the 14,000 files. Why not? If the files are so critical that now Uber's autonomous business has to be shut down, why were they not mentioned in the arbitrations filed against the man who allegedly stole them? Mr. Page would have knowledge of this critical question, as no lawsuit could have been brought against a former top executive without his involvement and approval.

Mr. Page's testimony is also relevant to Waymo's assertions regarding the common interest privilege. In the second paragraph of Waymo's reply brief, it contends that Uber has used this privilege to "hide its unlawful conduct." Indeed, Waymo has included Uber's privilege logs as exhibits to its reply brief. To the extent that Waymo has asserted this privilege in similar circumstances, it will show that Waymo is being inconsistent on this issue and provide evidence that Uber's assertion of the privilege is valid.

sf-3762168

MORRISON | FOERSTER

Hon. Jacqueline Scott Corley
April 24, 2017
Page Three

Given these facts, Uber has shown that it has good cause to proceed with this deposition.[2]

Finally, we have agreed to limit this deposition to two hours (excluding breaks) and have told Waymo that we will be flexible regarding the date of the deposition. We encourage Your Honor to follow the Special Master's recommendation (Ex. C) and to order Mr. Page to appear for this limited deposition.[3]

## II. UNRIPE DISCOVERY ISSUES RAISED BY WAYMO

We briefly address the three additional issues identified by the Special Master.

**A. The Kalanick Deposition**: This weekend, in an obvious tit for tat maneuver, Waymo served a deposition notice for Uber's CEO, Travis Kalanick. But there is an obvious procedural problem. Judge Alsup's March 16 Order only allowed each side to depose each declarant, plus three other employees. And, the parties were given "a total of 18 hours" of deposition questioning. (Dkt. 61 at 2, ¶ 5.) Waymo has already exhausted its three additional depositions and it has used all of its allotted 18 hours. Thus, there is no basis for Waymo to question *any* other Uber employee under the strict ground rules laid out by Judge Alsup. (Uber, in contrast, has only used two of its three additional depositions and 10 of its 18 hours of deposition time.)

**B. The 22 Categories**: In an effort to raise something—anything—with this Court, Waymo has been trying to manufacture a dispute that is not ripe. One issue is the "25 categories" issue. In an effort to follow Judge Alsup's guidance that the parties "prioritize," the Special Master made a good suggestion. He asked Waymo to identify 25 items that it needed for the preliminary injunction briefing. Waymo provided a list of 22 items on Friday, April 14. Six days later, Uber produced documents in response to each category, except for 3 for which no documents could be found. When we met with the Special Master on Thursday, Waymo

---

[2] Exhaustion of alternative sources is "a consideration, not a requirement." *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, at *5. Here, given the time constraints imposed by Waymo's insistence on an expedited schedule, there is no feasible alternative for getting the information sought from Mr. Page. *Medimmune, LLC v. PDL Biopharma, Inc.*, No. C08-05590 JF (HRL), 2010 WL 2640473, at *2 (N.D. Cal. June 30, 2010) ("there is insufficient time to hold off on [the executive's deposition] until all other possible sources of relevant testimony have been exhausted").

[3] Waymo has made a procedural objection, suggesting that because the deposition was noticed the day before the reply brief was filed, it is not really seeking rebuttal testimony. As we have explained to Waymo and the Special Master, Judge Alsup ordered witnesses to appear on only five days' notice. Because we understand that Mr. Page has a busy schedule, we chose to give him seven days' notice. Judge Alsup will be the arbiter of whether the testimony we obtained is fair rebuttal to the reply brief. We are confident that it is, given the positions (cited above) taken by Waymo in its reply brief.

MORRISON | FOERSTER

Hon. Jacqueline Scott Corley
April 24, 2017
Page Four

could not identify any issues with Uber's response. The Special Master suggested that if Waymo has any concern, it should confer with Uber about it. At 8:42 p.m. yesterday (Sunday night), Waymo sent a letter identifying four items that it had questions about. Uber promptly responded this afternoon to those concerns, explaining that materials were produced. (Ex. D.)

**C. Uber's Privilege Log:** At a meeting with the Special Master two weeks ago, Waymo raised a variety of broad concerns with Uber's privilege logs. The Special Master reminded Waymo of the need to prioritize and asked Waymo to provide Uber with some "categories" of concerns, including specific items from the log, so that Uber could review those and respond. Waymo later again identified broad concerns, but failed to provide us with specifics to facilitate our investigation of those concerns. Thus, when we met with the Special Master again on Thursday, Waymo was again instructed to provide Uber with "categories" of information supported by concrete examples. We finally received a letter yesterday with Waymo's attempt to prioritize its concerns. We have reviewed that letter and are preparing a response, which we hope to send to Waymo tomorrow. If Waymo has any concerns about our response, we should briefly confer and (if necessary) raise any issue with the Special Master.

In sum, as noted by the Special Master (Ex. C), the only issue that is ripe for consideration is the deposition of Mr. Page.

Sincerely,

Arturo J. González

sf-3762168