1   [Counsel listed on signature page]

2

3

4

5

6

7

8

9                        UNITED STATES DISTRICT COURT

10                       NORTHERN DISTRICT OF CALIFORNIA

11                          SAN FRANCISCO DIVISION

12

13   WAYMO LLC,                              CASE NO. 3:17-cv-00939-WHA

14              Plaintiff,                   **JOINT CASE MANAGEMENT**
         v.                                  **STATEMENT & [PROPOSED] ORDER**
15
     UBER TECHNOLOGIES, INC.;                Date:       May 18, 2017
16   OTTOMOTTO LLC; OTTO TRUCKING            Time:       2:00 p.m.
     LLC,                                    Location:   Ctrm. 8, 19th Floor
17
              Defendants.                    Date Filed: February 23, 2017
18                                           Trial Date:  October 2, 2017

19

20

21

22

23

24

25

26

27

28

1    Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, Patent Local

2    Rule 2-1, the Standing Order for All Judges of the Northern District of California – Contents of

3    Joint Case Management Statement, and the Supplemental Order to Order Setting Initial Case

4    Management Conference in Civil Cases Before Judge William Alsup, the parties to the above-

5    titled action, Plaintiff Waymo LLC ("Waymo") and Defendants Uber Technologies, Inc. ("Uber"),

6    Ottomotto LLC, and Otto Trucking LLC (collectively, "Defendants"), jointly submit this Case

7    Management Statement and Proposed Order in advance of the Case Management Conference on

8    May 18, 2017.

9        **1.      JURISDICTION AND SERVICE**

10   This Court has subject matter jurisdiction over Waymo's federal trade secret claim

11   pursuant to 18 U.S.C. §§ 1836-39 *et seq.* and 28 U.S.C. §§ 1331 and 1343.  This Court has subject

12   matter jurisdiction over Waymo's claims for patent infringement pursuant to the Federal Patent

13   Act, 35 U.S.C. § 101 *et seq.* and 28 U.S.C. §§ 1331 and 1338(a).  The Court has supplemental

14   jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.  The

15   parties do not dispute personal jurisdiction, venue, or service.  All parties have been served.

16

17       **2.      FACTS**

18       **Waymo's Statement**

19   As set forth in detail in Waymo's Amended Complaint (Dkt. 23) and Preliminary

20   Injunction Motion (Dkt. 24), in December 2016, a LiDAR vendor inadvertently sent Waymo a

21   drawing of a circuit board used by Uber in connection with developing its custom LiDAR.  That

22   drawing appeared to copy Waymo's own design.  In February 2017, Waymo discovered that Uber

23   made a sworn declaration to a Nevada regulator confirming Uber's plan to use LiDAR built in-

24   house at Uber.

25   A former Waymo manager, Anthony Levandowski, illicitly downloaded more than 14,000

26   files from Waymo's confidential design server in late 2015, shortly before resigning from Waymo.

27    Among the 9 GBs of data downloaded, 2 GBs relate to Waymo's proprietary LiDAR designs,

28   including the one that was sent by the LiDAR vendor.  Around the time Mr. Levandowski

1   downloaded Waymo's files, Mr. Levandowski confided in some Waymo colleagues that he

2   planned to "replicate" Waymo's LiDAR technology at a Waymo competitor.  Defendants' own

3   privilege log shows that two days after Mr. Levandowski left Waymo, Uber and Mr. Levandowski

4   were discussing an acquisition of Mr. Levandowski's company, which Uber ultimately purchased

5   for $680 million.  Discovery to date has revealed that  at least two of Uber's LiDAR projects

6   reflect numerous Waymo trade secrets and at least one infringes Waymo's patents.

7            **Defendants' Statement**

8            As detailed in Defendants' Opposition to Waymo's Preliminary Injunction Motion

9   (Dkt. 177), there is no evidence that any files allegedly taken from Waymo[1] were ever obtained by

10  Defendants or used by Defendants' engineers to develop Defendants' LiDAR technology.  An

11  extensive search of Uber's computers has not yielded any of the 14,000 files Waymo alleges were

12  misappropriated.  Defendants are independently developing their own LiDAR system known as

13  "Fuji," a dual bistatic design with multiple lenses that is starkly different from Waymo's patented

14  single-lens (monostatic) LiDAR.  Uber engineer Scott Boehmke began developing laser beam

15  patterns in 2015 (well before Mr. Levandowski arrived at Uber) that informed the development of

16  Fuji's design.  Fuji does not infringe Waymo's patents on its single-lens design, and Waymo's

17  retained technical expert has withdrawn his prior erroneous opinion of infringement.  Waymo

18  accuses Fuji's transmit boards of incorporating Waymo's trade secrets, but the specifications

19  reveal that every critical parameter in Fuji is different from its counterpart in Waymo's LiDAR.

20  The general concepts that Waymo claims as trade secrets are known, routine design choices

21  disclosed in the public literature.  An earlier LiDAR design by Defendants known as "Spider" was

22  never finished, never developed into a working prototype, and has been abandoned.

23       **3.       LEGAL ISSUES**

24            The principal disputed legal issues are:

25

26

27   ───────────────

[1] Defendants use "Waymo" to mean Waymo LLC, Google Inc., and Alphabet Inc.

28

- Whether Defendants have misappropriated any valid Waymo trade secrets in violation of the Defend Trade Secrets Act and the California Uniform Trade Secrets Act;

- Whether any such misappropriation has been willful;

- Whether Defendants have infringed any valid and enforceable claims of Waymo's U.S. Patent Nos. 8,836,922, 9,285,464, 9,368,936, and 9,086,273;

- Whether any such infringement has been willful;

- Whether Defendants' conduct has constituted fraudulent and unfair business acts and practices in violation of California's Unfair Competition Law;

- Whether an injunction should issue against Defendants arising from the alleged trade secrets misappropriation, patent infringement, and unfair competition; and

- The amount of any damages owed Waymo by Defendants for the alleged trade secrets misappropriation and patent infringement, as well as any fees and costs owed Waymo.

Waymo reserves the right to raise additional factual or legal issues that may arise through the course of this action.

### 4.   **MOTIONS**

#### A.   **Pending Motions**

- Waymo's Motion for Preliminary Injunction (Dkt. 24) is currently pending. Defendants filed their opposition on April 7. (Dkt. 177.) Waymo filed its reply on April 21. (Dkts. 245, 254.) Defendants' sur-reply is due April 28 (Dkt. 61), and the Court will hear the motion on May 3. (Dkt. 121.)

- Defendants' motion to compel arbitration on Waymo's trade secret and unfair competition claims is also pending. (Dkt. 115.) Waymo opposed the motion on April 10. (Dkt. 204.) Defendants' reply was filed April 17 (Dkt. 243), and Waymo to filed a sur-reply on April 24. (Dkt. 255.) The Court will hear the motion on April 27. (Dkt. 130.)

- The parties have a discovery hearing before Magistrate Judge Corley scheduled for 1:30 p.m. on April 27 to address discovery issues, which may include those discussed in the parties' letter briefs, Docket Nos. 278-281.

### B.    Anticipated Motions

The parties anticipate that the following motions may be brought:

**<u>Waymo's Motions</u>**

- After it receives un-redacted privilege logs, Waymo will determine whether it will move to compel production of documents (including the "due diligence report") withheld by Defendants under a purported common interest privilege.  To date, Defendants  have failed to provide adequate information to test their claims of privilege (such as the names of specific individuals who authored and received allegedly privileged communications), in violation of the Federal Rules of Civil Procedure and this Court's Standing Orders.

- Should Uber continue its strategy of obstructing discovery, Waymo anticipates various discovery motions may need to be filed and heard by Magistrate Judge Corley and potentially this Court.

- Waymo anticipates moving for summary judgment on at least some of its claims.

- Waymo plans to oppose the motion to dismiss that Otto Trucking describes in its statement below.  Waymo disagrees that Otto Trucking put Waymo "on notice" of its independent status "numerous times."  When Otto Trucking filed its corporate disclosure statement, it did so jointly with Uber and Ottomotto; Otto Trucking has never made any individualized statement regarding its ownership, nor has it revealed the persons or entities that have a more than 10% stake in it.  Waymo also disagrees that Otto Trucking clarified this issue with Magistrate Judge Corley on April 24, 2017.

During that hearing, Otto Trucking merely pointed Waymo to the previously

referenced corporate disclosure statement, which gives no information regarding Otto

Trucking's ownership.

**Defendants' Motions**

- Defendants anticipate filing a motion to dismiss Waymo's Seventh Cause of Action for

  alleged violation of California's Unfair Competition Law.

- Defendants anticipate moving for summary judgment on at least some of Waymo's

  claims.

- Should Waymo continue its strategy of overreaching discovery, Defendants anticipate

  various discovery motions may need to be filed and heard by Magistrate Judge Corley

  and potentially this Court.

**Otto Trucking's Motion**

- Waymo claims it has been "informed and believes that Uber acquired Defendant . . .

  Otto Trucking LLC in approximately August 2016."  FAC, para. 16.  Waymo's claims

  against Otto Trucking depend entirely on this alleged purchase by, and relationship

  with, Uber.   Waymo's allegations lack a good faith basis.  Even a cursory pre-filing

  investigation by Waymo would have revealed that (1) Otto Trucking was not bought by

  Uber, (2) that Otto Trucking remains an independent and separate company, and (3)

  that Waymo has no basis to include Otto Trucking in its dispute with Uber.   Waymo

  has been told this fact numerous times.  Otto Trucking disclosed its independent status

  in its Corporate Disclosure Statement and in response to a set of Court issued

  Interrogatories.  Most recently, Otto Trucking disclosed this fact in a hearing with

  Magistrate Judge Corley on Monday, April 24, 2017, where counsel for Otto Trucking

  advised the Court and Waymo's counsel that Otto Trucking was not bought by Uber

and thus does not belong in this case.  Waymo's counsel's response was that he did

know anything about Otto Trucking.   But despite Waymo now knowing that Otto

Trucking is a separate company with no role in this dispute, and that its claims against

Otto Trucking are baseless, Waymo still refuses to dismiss Otto Trucking from this

case.  Accordingly, in response to the First Amended Complaint, Otto Trucking will be

filing on April 28 a motion to dismiss Waymo's claims against it.

**5.    AMENDMENTS OF PLEADINGS**

**Waymo's Statement**

Waymo does not intend to amend the pleadings before the preliminary injunction hearing

on May 3.

**Defendants' Statement**

Defendants have not yet answered Waymo's Amended Complaint.  Defendants' responses

to the Amended Complaint are due on April 28, 2017.

**6.    EVIDENCE PRESERVATION**

**Waymo's Statement**

Waymo has reviewed the ESI Guidelines and represents that it has taken reasonable and

proportionate steps to preserve evidence to the issues reasonably evident in this action, including

electronic data and materials.  It does not appear that Uber has taken similarly reasonable and

proportionate steps to preserve evidence.  Uber alleges that it was anticipating litigation regarding

the issues raised in this case starting in January 2016 but has "declined to answer questions about a

litigation hold," including questions regarding whether a litigation hold was ever issued and when.

(4/19/17 Email from S. Rivera ("I did not confirm or deny the date any litigation hold issued.").)

In light of this, Waymo's position is that Uber should preserve any and all back-up tapes.

**Defendants' Statement**

Counsel for Defendants have reviewed the ESI Guidelines and represent that they have

taken reasonable and proportionate steps to preserve evidence to the issues reasonably evident in

this action, including electronic data and materials.  Defendants issued litigation holds as

1  appropriate, including after Google commenced arbitration against Anthony Levandowski in

2  October 2016.  Until then, Defendants were not on notice that litigation was probable, the standard

3  for when the duty to preserve attaches.  *See In re Napster Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D.

4  Cal. 2006).  Defendants' document preservation efforts were proper.  Preserving back-up tapes

5  would be an undue burden for which Waymo has offered no justification.

6  **7.     INITIAL DISCLOSURES**

7  The parties exchanged initial disclosures pursuant to Rule 26(a) on April 3, 2017.

8  **8.     DISCOVERY**

9  The parties anticipate taking discovery in accordance with the Federal Rules of Civil

10  Procedure, the Local Rules, and the Court's Standing Order for Civil Cases.  Pursuant to Rule

11  26(f) and paragraph 8 of the Standing Order for All Judges of the Northern District of California –

12  Contents of Joint Case Management Statement, the parties propose the following discovery plan.

13  **A.     Discovery Taken To Date**

14  Pursuant to the Court's orders regarding expedited discovery (Dkts. 54, 61), Waymo and

15  Defendants are engaging in preliminary expedited discovery in connection with Waymo's motion

16  for a preliminary injunction.

17  **B.     Scope of Anticipated Discovery**

18  The parties expect to engage in additional fact discovery, including third party discovery,

19  and expert discovery.

20  **1.     Waymo's Anticipated Discovery**

21  Waymo currently anticipates seeking additional discovery on at least the following topics:

22  • The design, development and operation of all LiDAR technologies by Uber,

23      including those in testing and development;

24  • Uber's knowledge of Mr. Levandowski's porting of trade secret materials to Uber,

25      including but not limited to the alleged due diligence report created for Uber in

26

27      connection with its acquisition of Otto;

28  • The basis for Uber's alleged common interest privilege with Mr. Levandowski;

- Damages and harm caused by Uber's trade secret misappropriation, patent infringement, and unfair competition.

### 2.     Defendants' Anticipated Discovery

Defendants currently anticipate seeking additional discovery on at least the following topics:

- The design, development and operation of all LiDAR technologies by Waymo;

- Waymo's delay in bringing this lawsuit;

- Waymo's motivations for litigating against Defendants and Mr. Levandowski;

- Waymo's practice of allowing competing side businesses;

- Waymo's failure to protect the confidentiality of its alleged trade secrets;

- Prior public disclosure of Waymo's alleged trade secrets, by either Waymo or third parties who independently developed technology claimed in Waymo's alleged trade secrets;

- Prior art to the asserted patents.

### C.     Proposed Limitations or Modifications Of the Discovery Rules

The parties agree on the following modification to the Federal Rules of Civil Procedure.

- The parties agree that privilege logs need not include documents authored following the filing of the Complaint in the first instance; however, each party reserves the right to request that the other party log one or more categories of documents authored following the filing of the Complaint should a basis arise for such a request.

- Each side may serve up to 50 non-authentication requests for admission and unlimited authentication requests for admission.

The parties disagree as to the number of depositions that each party should be entitled to take.
**Waymo's Position**

1    Waymo proposes that each side may take 15 party depositions and 10 non-party

2  depositions.  Uber has already identified close to 30 party witnesses who communicated with

3  Mr. Levandowski regarding LiDAR before Uber acquired Ottomotto and Otto Trucking.  As for

4  third parties, Defendants identified three third parties with an interest in the outcome of this

5  litigation in their corporate disclosure statement; Defendants have pointed to third-party

6  companies as part of their purported "independent development" story; and Waymo intends to

7  depose the supplier that sent Waymo a schematic of one of Uber's PCBs last fall.  When

8  Defendants serve their un-redacted privilege logs, they will likely reveal additional relevant

9  witnesses.

10    Throughout discovery to date, Defendants have stonewalled Waymo at every turn, hiding

11  the ball and refusing to provide relevant, responsive information even when under a Court order to

12  do so.  Moreover, the overall equities in this case favor permitting Waymo to conduct the

13  discovery necessary to fully understand the extent to which Defendants have misappropriated and

14  infringed Waymo's intellectual property.  Defendants should not be heard to oppose Waymo's

15  proposed deposition limits, which are reasonable for this case, on the basis that discovery

16  regarding their misconduct is too burdensome for them.

17    **Defendants' Position**

18    It is Waymo that has insisted on the expedited trial date and demanded that the case be put

19  on the fast track.  Indeed, the Court recognized that Waymo was "the one that wants this on a

20  hurry-up basis" and forewarned Waymo:  "[Y]ou can't have everything. . . [Y]ou're not going to

21  get a full deck of cards.  You're going to get a half a deck of cards because it's all expedited. It's

22  impossible to get everything."  (Apr. 12, 2017 Hearing Tr. 97:-18-98:2.)

23    Fact discovery closes in less than three months.  During those three months, the parties will

24  be preparing infringement contentions, invalidity contentions, damages contentions, and

25  exchanging preliminary claim constructions.  In addition, Waymo has already taken 12

26  depositions during the preliminary injunction phase, and Defendants have taken eight.  In light of

27  the compressed case schedule and the depositions taken to date, Defendants propose that each side

28  may take 10 party depositions and 5 non-party depositions.

1

2

### D. Report on Whether the Parties Have Considered Entering Into A Stipulated E-Discovery Order

During the Rule 26(f) conference, the parties discussed entering into a stipulated protective

order and a stipulated order regarding e-discovery.  The parties plan to submit these proposed

stipulated orders at or before the May 18 case management conference.

### E. Discovery Disputes

**Waymo's Statement**

Uber has been and continues to stonewall Waymo's discovery efforts and to obfuscate the

truth.  Uber has not complied with the Court's March 16, 2017 Order.  Uber has not conducted a

reasonable inquiry to locate, much less produce, all documents reflecting the confidential materials

that Mr. Levandowski took from Waymo to use at Uber.  Uber has specifically excluded Mr.

Levandowski from any investigation related to Waymo's claims and has purposefully avoided

searching Mr. Levandowski's Otto/Uber email for information responsive to Waymo's document

requests.  Where useful to Uber however, it appears Uber has consulted Mr. Levandowski (*see*

*e.g.*, Uber's purported basis for deposing Alphabet CEO Larry Page regarding his "private

discussions" with Mr. Levandowski).   Uber ignored one of its LiDAR devices entirely in its

Opposition to Waymo's preliminary injunction motion; then, Uber misled this Court regarding the

existence of the LiDAR device referenced in its September 2016 Nevada regulatory filing and

delayed production of that device until Waymo elicited confirmation of the existence of that

device during its depositions of Uber engineers.  Uber has produced over 1,000 pages in privilege

logs without providing the basic information required in a privilege log (such as the names of

authors, the names of recipients, and the identify and inception date of the asserted common

interest privilege); Uber's privilege logs contain boilerplate that has been cut and pasted into log

entries to which it clearly does not apply (*e.g.*, Uber includes boilerplate about Uber's "potential"

acquisition of Otto with entries that post-date that acquisition); Uber has admittedly included non-

privileged documents on its log but has yet to identify or produce those documents.  Uber purports

to assert Mr. Levandowski's privilege against self-incrimination (something that, if upheld, would

be unprecedented in criminal law) and actively consults with Mr. Levandowski regarding this case

1  while simultaneously arguing that no adverse inference against Uber should result from Mr.

2  Levandowski's assertion of the Fifth.  Uber purports to have contemplated litigation over the very

3  issues at the heart of this case starting in January 2016 but has "declined to answer questions about

4  a litigation hold," including questions regarding whether a litigation hold was ever issued and

5  when.

6         Uber has not just stonewalled in responding to discovery but it has also violated this

7  Court's orders with respect to taking discovery.  For example, this Court ordered that Uber's sur-

8  reply on Waymo's preliminary injunction motion address only matters raised in Waymo's reply

9  briefing – *i.e.*, discovery taken between Waymo's reply brief and Uber's sur-reply brief must

10 relate only to issues raised in Waymo's reply.  But, after Uber filed an opposition and before

11 Waymo filed any reply, Uber requested the deposition of Larry Page, the CEO of Alphabet (which

12 is the parent of the parent of the managing member of plaintiff Waymo LLC).  Uber could not

13 possibly need a deposition of Mr. Page for purposes of a sur-reply submission when it did not yet

14 know the contents of Waymo's reply.  And Uber did not even try to address, let alone satisfy, the

15 Apex doctrine for a deposition of Mr. Page.  Uber also purports to want to explore topics with Mr.

16 Page that it only could have learned from Mr. Levandowski, thereby using Mr. Levandowski's

17 Fifth Amendment privilege as both a sword and a shield.

18         **<u>Defendants' Statement</u>**

19         Defendants have worked diligently and in good faith to comply with the Court's orders on

20 expedited discovery.  Defendants complied with the March 16, 2016 order, which required that

21 Defendants "produce for inspection all files and documents downloaded by Anthony

22 Levandowski, Sameer Kshirsagar and Radu Raduta before leaving plaintiff's payroll and

23 thereafter taken by them" and "all subsequent emails, memoranda, PowerPoints, text messages or

24 notes that have forwarded, used or referred to any part of said downloaded material."  Contrary to

25 Waymo's assertions, Defendants searched the computers of all three named individuals, their

26 emails, their Google Drive files and the entire software/engineering repository.  With his

27 permission, Defendants also searched Mr. Kshirsagar's personal phone and gmail and produced

28 two emails that it located in Mr. Kshirsagar's personal email.  Defendants even went beyond what

1   was ordered and interviewed all former Waymo employees and searched the data of seven

2   additional former Waymo employees, which was all that could be searched in the short time

3   frame.  Defendants produced over 5,000 files that were filename and hash matches for the 14,000

4   allegedly stolen files.  (Notably, Waymo has not asserted that any of these files are those that were

5   allegedly stolen—because they are not.  The list of 14,000 files contains a significant number of

6   standard files and filenames that are not trade secrets.)

7         Defendants have continued to diligently search all LiDAR custodians and servers.  By the

8   end of this week, Uber will have finished searching all active LiDAR servers, all LiDAR

9   custodian email, Drive data, and nearly all primary workstations (totaling over 150 machines).

10  With respect to the last server, filename and hash searching will be completed next week.  Uber

11  will finish reviewing the hits next week.

12        The March 16 order did not require Defendants to produce broad discovery related to its

13  LiDARs.  Defendants, however, have also provided a significant amount of discovery into

14  Defendants' LiDARs and have not refused to provide anything requested by Waymo.

15        Defendants have not misled the Court about their LiDAR devices.  In its preliminary

16  injunction motion, Waymo made reference only to Defendants' Fuji system.  In response,

17  Defendants addressed those allegations.  Work on the prior Spider LiDAR design never

18  progressed beyond the development of a few components; a complete Spider device was never

19  built.  For example, of eight optical cavities that were intended to be included in the Spider design,

20  only one was ever completed and that one never worked.  So there was no need for Defendants to

21  focus on Spider.  Nonetheless, Spider was discussed in the declaration of engineer Scott Boehmke

22  submitted on April 7, 2017, along with Defendants' opposition to Waymo's preliminary injunction

23  motion, well before Waymo "elicited confirmation" of this fact during subsequent depositions.

24        The September 2016 Nevada regulatory filing, which makes reference to a LiDAR with

25  6.4 million beams per second, does not refer to Spider, which was to have 3.2 million beams per

26  second.  The statement in the Nevada submission regarding the 6.4 million beams per second

27  referred neither to an existing LiDAR sensor, nor a LiDAR that Defendants were developing or

28  have ever developed or are currently developing.  That submission was corrected with the agency

1   when the error came to Defendants' attention.

2          Defendants have allowed Waymo to inspect both the Fuji prototype and the Spider

3   components, along with an earlier prototype called OWL.

4          Defendants' privilege logs demonstrate Defendants' diligence in attempting to comply

5   with the expedited discovery schedule.  Counsel for Defendants have reviewed and logged over

6   3,000 privileged documents, setting forth each of the required categories of information.  Though

7   voluminous, those privilege logs pertain to narrow subject matter, which warrants inclusion of the

8   same or very similar privilege descriptions. Defendants have  not withheld non-privileged

9   documents from production.  Defendants issued appropriate legal holds, including after Waymo

10  commenced arbitration proceedings against Anthony Levandowski in October 2016.  Until then,

11  Defendants was not on notice that litigation with Waymo was *probable*, the applicable standard

12  for when the duty to preserve attaches.

13         **9.**      **CLASS ACTIONS**

14  This section is not applicable to the above-captioned action.

15         **10.**     **RELATED CASES**

16  There are no cases related to the above-captioned action.

17         **11.**     **RELIEF**

18  **Waymo's Statement**

19  Waymo's First Amended Complaint (Dkt. 23) seeks the following relief:

20     • Judgment in Waymo's favor and against Defendants on all causes of action

21        alleged;

22     • Preliminary and permanent injunctive relief;

23     • Trebling of all damages awarded with respect to infringement of the '922, '464,

24        and '273 patents;

25

26     • Judgment that this is an exceptional case;

27     • Punitive damages;

28     • Restitution;

- Costs of suit;

- Prejudgment interest;

- Attorneys' fees and costs; and

- Such other and further relief as the Court may deem to be just and proper.

Waymo has been and will be irreparably harmed by Defendants' ongoing trade secret misappropriation, patent infringement, and unfair competition such that monetary damages are insufficient and preliminary and permanent injunctive relief are necessary.  To estimate past damages to the limited extent that damages are quantifiable here, Waymo will need, among other things, to understand the full extent of Defendants' use of Waymo's trade secrets and patented technology, the identity of all individuals who have ever had access to Waymo's confidential files (or information derived from those files), and the work each of those individuals has done for Defendants and/or other Waymo competitors.  Defendants have not been forthcoming on those subjects (Uber has not even completed its search for Waymo's files) and more discovery on those subjects is necessary.  To the extent Defendants satisfy their discovery obligations, Waymo expects to be able to provide a non-binding, good-faith estimate of the damages range expected for the case (along with an explanation for the estimate) after additional discovery, by June 26, 2017.

**Defendants' Statement**

Defendants seek the following relief:

- Denial of Waymo's preliminary injunction motion;

- Declaratory judgment that the patents are not infringed and invalid;

- Declaratory judgmnent that Waymo's asserted trade secrets are not trade secrets or were not misappropriated by Defendants in developing their LiDAR systems;

- Waymo take nothing for any of the claims asserted in its Amended Complaint;

- Costs of suit;

- Attorneys' fees and costs; and

- Such other and further relief as the Court may deem to be just and proper.

Defendants do not see a basis for awarding Waymo any damages in this action for the following reasons:  (1) Defendants do not infringe the asserted patents or the asserted patents are invalid; (2) the 14,000 files allegedly downloaded by Mr. Levandowski never crossed into Uber's grounds; and (3) Waymo's asserted trade secrets are not trade secrets or Defendants have not used Waymo's asserted trade secrets in developing its LiDAR systems.  In addition, this case is not a "money case."  Neither side has sold anything.  Further, Waymo is exposed to an award of attorney's fees if it persists in pursuing meritless claims.

### 12.   SETTLEMENT AND ADR

Pursuant to ADR L.R. 3-5, the parties have reviewed the Court's ADR handbook, discussed the available ADR procedures and considered whether this case would benefit from an ADR procedure.  This case has already been referred to Magistrate Judge Elizabeth D. Laporte for settlement, and a settlement conference took place on April 26, 2017, at 9:30 a.m.  (Dkt. 178.)

### 13.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties do not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

### 14.   OTHER REFERENCES

This case has already been referred to a special master for discovery disputes.  (Dkt. 235.) The parties do not otherwise believe that this case is suitable for reference to binding arbitration or the Judicial Panel on Multidistrict Litigation.

### 15.   NARROWING OF ISSUES

**Waymo's Statement**

Without prejudice to any positions that Waymo has taken in this case, and although an Uber engineer has confirmed that Uber considers the identity of its vendors and suppliers for its LiDAR systems to be confidential trade secrets, Waymo does not plan to proceed on the trade secrets listed in Section H of its Asserted Trade Secrets List (Dkt. 25-7) at this time.

1    In light of Defendants' position below, Waymo notes that the evidence to date confirms
2    that Defendants' Spider system infringes Waymo's patents and that Defendants' Fuji and Spider
3    systems each reflect numerous Waymo trade secrets.

4    **Defendants' Statement**

5    Waymo has conceded that Defendants' Fuji system does not infringe the claims of the
6    '922, '464, and '273 patents.  (Kintz Dep. 211:5-7; 217:5-18).  In addition, Waymo has conceded
7    that Defendants' Spider system components do not use the trade secrets discussed in Waymo's
8    preliminary injunction motion, i.e., Asserted Trade Secret 1-4, 7, 14, 94-99 from Waymo's List of
9    Asserted Trade Secrets (Dkt. 25-7).  (Kintz Dep. 223:10-13.)  In addition, Spider was a design
10   idea that never evolved into a working prototype and was abandoned in October 2016, months
11   before this lawsuit was filed.  Only one cavity was ever built and, because of problems with the
12   design, that single cavity never even worked.  There is no evidence that Defendants have made,
13   used, offered for sale, sold, or imported Spider, (Kintz Dep. 206:24-208:10), as required for patent
14   infringement.

15   **16.    EXPEDITED TRIAL PROCEDURE**

16   The parties do not propose that this case proceed under the Expedited Trial Procedure of
17   General Order 64 Attachment A.

18   **17.    SCHEDULING**

19   The parties' proposed schedule is detailed in Exhibit A.

20   **18.    TRIAL**

21   The parties understand that the Court has set a trial date of October 2, 2017.  The parties
22   estimate that this case can be tried in eight court days.

23   **19.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

24   Each party has filed the Certification of Interested Entities or Persons required by Civil
25   Local Rule 3-15.

26   **20.    PROFESSIONAL CONDUCT**

27   All attorneys of record for the parties have reviewed the Guidelines for Professional
28   Conduct for the Northern District of California.

1    **21.    <u>PLAN TO PROVIDE OPPORTUNITIES FOR JUNIOR LAWYERS</u>**

2    **<u>Waymo's Plan</u>**

3         Waymo plans to provide opportunities for junior lawyers working on this matter to argue

4    discovery-related motions and portions of claim construction motions; to take or defend

5    depositions of witnesses; and to examine witnesses at trial.  To date, Felipe Corredor (class of

6    2013) presented a portion of Waymo's technology tutorial to the Court, and Jeff Nardinelli (class

7    of 2012) and Lindsay Cooper (class of 2012) have taken depositions for Waymo.

8    **<u>Defendants' Statement</u>**

9         Defendants plan to provide opportunities for junior lawyers working on this matter to

10   argue motions, take or defend depositions of witnesses, and examine witnesses at trial.  To date,

11   associates Esther Kim Chang and Michelle Yang presented Defendants' technology tutorial to the

12   Court, and Ms. Chang has taken depositions for Defendants.

13   **22.    <u>CLAIM CONSTRUCTION</u>**

14        The parties provided the Court with a tutorial regarding the technology at issue on

15   April 12.  The parties propose that claim construction issues be addressed in the context of

16   dispositive motions pursuant to the schedule set forth in Exhibit A.

17

18

19

20

21

22

23

24

25

26

27

28

1   DATED:  April 27, 2017

2                                                  By /s Charles K. Verhoeven
                                                   _____
3                                                      QUINN EMANUEL URQUHART &
                                                       SULLIVAN, LLP
                                                          Charles K. Verhoeven (Bar No. 170151)
4                                                         charlesverhoeven@quinnemanuel.com
                                                          David A. Perlson (Bar No. 209502)
5                                                         davidperlson@quinnemanuel.com
                                                          Melissa Baily (Bar No. 237649)
6                                                         melissabaily@quinnemanuel.com
                                                          John Neukom (Bar No. 275887)
7                                                         johnneukom@quinnemanuel.com
                                                          Jordan Jaffe (Bar No. 254886)
                                                          jordanjaffe@quinnemanuel.com
8                                                      50 California Street, 22nd Floor
                                                       San Francisco, California 94111-4788
9                                                      Telephone:    (415) 875-6600
                                                       Facsimile:    (415) 875-6700
10
                                                       Attorneys for WAYMO LLC
11   DATED:  April 27, 2017                   By
                                                       /s Arturo Gonzalez
12                                                     _____

13                                                     MORRISON & FOERSTER LLP
                                                       MICHAEL A. JACOBS (CA SBN 111664)
14                                                     MJacobs@mofo.com
                                                       ARTURO J. GONZÁLEZ (CA SBN 121490)
15                                                     AGonzalez@mofo.com
                                                       ERIC A. TATE (CA SBN 178719)
16                                                     ETate@mofo.com
                                                       425 Market Street San Francisco, California 94105-
17                                                     2482
                                                       Telephone: 415.268.7000
18                                                     Facsimile: 415.268.7522

19                                                     BOIES SCHILLER FLEXNER LLP
                                                       KAREN L. DUNN (Pro Hac Vice)
20                                                     kdunn@bsfllp.com
                                                       HAMISH P.M. HUME (Pro Hac Vice)
21                                                     hhume@bsfllp.com
                                                       1401 New York Avenue, N.W.
22                                                     Washington DC 20005
                                                       Telephone: 202.237.2727
23                                                     Facsimile: 202.237.6131

24
                                                       Attorneys for Defendants UBER
25                                                     TECHNOLOGIES, INC  OTTOMOTTO LLC.
                                                       and OTTO TRUCKING LLC
26

27

28

1    DATED:  April 27, 2017                By
                                              *s/ Shane Brun*
2                                          _____
                                              GOODWIN PROCTER LLP
3                                             Indra Neel Chatterjee (SBN 173985)
                                              nchatterjee@goodwinlaw.com
4                                             Goodwin Procter LLP
                                              135 Commonwealth Drive
5                                             Menlo Park, CA  94025
                                              Tel:  (650) 752-3100
6                                             Fax: (650) 853-1038

7                                             Brett M. Schuman (SBN 189247)
8                                             bschuman@goodwinlaw.com
                                              Shane Brun (SBN 179079)
9                                             sbrun@goodwinlaw.com
                                              Rachel M. Walsh (SBN 250568)
10                                            rwalsh@goodwinlaw.com
                                              Goodwin Procter LLP
11                                            Three Embarcadero Center
                                              San Francisco, California 94111
12                                            Tel.: +1 415 733 6000
                                              Fax.: +1 415 677 9041
13

14                                            Attorneys for Defendant OTTO TRUCKING LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **ATTESTATION**

2

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this

3

document has been obtained from every other signatory to this document.

4

5

By: */s/ Charles K. Verhoeven*
Charles K. Verhoeven

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>CASE MANAGEMENT ORDER</u>**

2
   The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is

3
approved as the Case Management Order for this case and the parties shall comply with its

4
provisions.

5
   IT IS SO ORDERED.

6

7
   Dated: _____    _____

8
               HON. WILLIAM ALSUP
               UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **APPENDIX A**

2    The parties propose that the Court enter the following schedule for this action:

3

| Events | Proposed Deadline |
|---|---|
| Case Management Conference | May 18, 2017 (Dkt. 20) |
| Infringement Contentions | May 23, 2017 |
| Invalidity Contentions | June 2, 2017 |
| Exchange of Proposed Terms Needing Construction, | June 9, 2017 |
| Exchange of Preliminary Claim Constructions and Extrinsic Evidence | June 19, 2017 |
| Damages Contentions | June 26, 2017 |
| Close of Fact Discovery | July 21, 2017 |
| Opening Expert Reports | July 21, 2017 |
| Responsive Expert Reports | August 7, 2017 |
| Close of Expert Discovery | August 18, 2017 |
| Deadline to file Dispositive and *Daubert* Motions | August 23, 2017 |
| Oppositions to Dispositive and *Daubert* Motions | September 4, 2017 |
| Fed. R. Civ. P. 26(a)(3) Disclosures | September 4, 2017 |
| Serve Motions *in Limine* | September 8, 2017 |
| Oppositions to Motions *in Limine* | September 15, 2017 |
| Replies in support of Dispositive and *Daubert* Motions | September 15, 2017 |
| File Motions *in Limine* and Oppositions | September 18, 2017 |
| Joint Pretrial Order | September 18, 2017 |
| Objections to Fed. R. Civ. P. 26(a)(3) Disclosures | September 18, 2017 |
| Final Pretrial Conference Hearing on Dispositive and *Daubert* Motions | September 25, 2017 |
| Trial | October 2, 2017 |

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28