1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  ERIC A. TATE (CA SBN 178719)
   ETate@mofo.com
4  RUDY Y. KIM (CA SBN 199426)
   RKim@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California  94105-2482
   Telephone:     415.268.7000
7  Facsimile:     415.268.7522

8  Attorneys for Defendants
   UBER TECHNOLOGIES, INC.,
9  OTTOMOTTO LLC, and OTTO TRUCKING LLC

10 KAREN L. DUNN (*Pro Hac Vice*)
   kdunn@bsfllp.com
11 HAMISH P.M. HUME (*Pro Hac Vice*)
   hhume@bsfllp.com
12 BOIES SCHILLER FLEXNER LLP
   1401 New York Avenue, N.W.
13 Washington DC  20005
   Telephone:     202.237.2727
14 Facsimile:     202.237.6131

15 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.
16 and OTTOMOTTO LLC

17                     UNITED STATES DISTRICT COURT

18                   NORTHERN DISTRICT OF CALIFORNIA

19                        SAN FRANCISCO DIVISION

| | |
|---|---|
| 20  WAYMO LLC, | Case No.     3:17-cv-00939-WHA |
| 21          Plaintiff, | **DEFENDANTS UBER TECHNOLOGIES, INC., OTTOMOTTO LLC, AND OTTO TRUCKING LLC'S SUR-REPLY TO PLAINTIFF WAYMO LLC'S MOTION FOR PRELIMINARY INJUNCTION** |
| 22     v. | |
| 23  UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
| 24 | |
| 25          Defendants. | Date:   May 3, 2017<br>Time:   7:30 a.m.<br>Ctrm:   8, 19th Floor<br>Judge:  The Honorable William Alsup<br>Trial Date: October 2, 2017 |
| 26 | |
| 27 | |

28            **REDACTED VERSION OF DOCUMENT SUBMITTED UNDER SEAL**

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................ 1

I.    THE FUJI AND ▇ TRANSMIT BOARDS ARE DIFFERENT, INDEPENDENTLY-DEVELOPED DESIGNS ................................................................ 2

II.   WAYMO'S BROADLY ALLEGED "TRADE SECRETS" ARE KNOWN FEATURES OF LIDAR AND DIODE LASER SYSTEMS ............................................. 4

    A.    Alleged Trade Secret 1: ▇ of Diodes ............................................. 4

    B.    Alleged Trade Secret 7: ▇ ............................................. 5

    C.    Alleged Trade Secrets 2 and 3: ▇ ................................. 5

    D.    Alleged Trade Secret 14: ▇ ...................................................... 6

III.  SPIDER WAS AN ABANDONED DESIGN IDEA AND CANNOT INFRINGE ........... 6

IV.  WAYMO IS NOT ENTITLED TO ANY ADVERSE INFERENCE ............................... 7

    A.    Waymo Is Not Entitled to the Fifth Amendment Adverse Inferences It Seeks ........................................................................................................... 7

    B.    No Adverse Inference Based on Alleged Discovery Violations Is Warranted .................................................................................................... 8

    C.    There Were No Misrepresentations About Non-Use of a Single-Lens Design ......................................................................................................... 9

V.   WAYMO CANNOT SHOW IT WILL SUFFER IRREPARABLE HARM...................... 9

VI.  WAYMO'S DELAY IS FATAL TO ITS PRELIMINARY INUNCTION REQUEST ........................................................................................................................ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Baxter v. Palmigiano*,
    425 U.S. 308 (1976)................................................................................................................7

*DVD Copy Control Ass'n. v. Bunner*,
    116 Cal. App. 4th 241 (2004) .................................................................................................5

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ..............................................................................................................10

*In re Excel Innovations, Inc.*,
    502 F.3d 1086 (9th Cir. 2007).................................................................................................10

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
    654 F.3d 989 (9th Cir. 2011)...................................................................................................10

*Gonzales v. City of San Jose*,
    No. 13-CV-00695-BLF, 2015 WL 7878121 (N.D. Cal. Dec. 4, 2015) ....................................8

*Jimenez v. Menzies Aviation Inc.*,
    No. 15-CV-02392-WHO, 2016 WL 3232793 (N.D. Cal. June 13, 2016) ................................9

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,
    No. C 12-03762 SI, 2013 WL 244999 (N.D. Cal. Jan. 22, 2013),
    *aff'd,* 551 F. App'x 298 (9th Cir. 2013)................................................................................10

*Roper Corp. v. Litton Sys.*,
    757 F.2d 1266 (Fed. Cir. 1985)................................................................................................7

*Doe ex rel. Rudy-Glanzer v. Glanzer*,
    232 F.3d 1258 (9th Cir. 2000)..................................................................................................7

*SalesBrain, Inc. v. AngelVision Techs.*,
    No. C 12-05026 LB, 2013 WL 2422762 (N.D. Cal. June 3, 2013) ..........................................8

*Sun Microsystems, Inc. v Hynix Semiconductor, Inc*,
    622 F. Supp. 2d 890 (N.D. Cal. 2009) .....................................................................................7

*Winston Research Corp. v. Minn. Mining & Mfg. Co.*,
    350 F.2d 134 (9th Cir. 1965)....................................................................................................4

*V'Guara v. Dec*,
    925 F. Supp. 2d 1120 (D. Nev. 2013) ....................................................................................10

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| 4/12/17 Transcript | 4/12/2017 Hearing Tr. |
| AEO | Highly Confidential—Attorneys' Eyes Only |
| Boehmke | Supplemental Declaration of Scott Boehmke in Support of Defendants' Sur-Reply to Plaintiff Waymo LLC's Motion for Preliminary Injunction |
| Chang | Supplemental Declaration of Esther Kim Chang in Support of Defendants' Sur-Reply to Plaintiff Waymo LLC's Motion For Preliminary Injunction |
| Defendants | Uber Technologies, Inc., Ottomotto LLC, and Otto Trucking LLC |
| Faulkner | Supplemental Declaration of Kevin Faulkner in Support of Defendants' Sur-Reply to Plaintiff Waymo LLC's Motion for Preliminary Injunction |
| Haslim | Supplemental Declaration of James Haslim in Support of Defendants' Sur-Reply to Plaintiff Waymo LLC's Motion for Preliminary Injunction |
| Kintz | Declaration of Gregory Kintz in Support of Plaintiff Waymo LLC's Motion for Preliminary Injunction |
| Kintz Reply | Reply Declaration of Gregory Kintz |
| Lebby | Supplemental Declaration of Michael Lebby in Support of Defendants' Sur-Reply to Plaintiff Waymo LLC's Motion for Preliminary Injunction |
| Linaval | Supplemental Declaration of Asheem Linaval in Support of Defendants' Sur-Reply to Plaintiff Waymo LLC's Motion for Preliminary Injunction |
| Orig. Faulkner | Declaration of Kevin Faulkner in Support of Defendants' Opposition to Plaintiff Waymo LLC's Motion for Preliminary Injunction |
| PCB | Printed Circuit Board |
| Rivera | Declaration of Sylvia Rivera in Support of Defendants' Sur-Reply to Plaintiff Waymo LLC's Motion for Preliminary Injunction |
| Repl. | Reply |
| Uber | Uber Technologies, Inc. |
| Waymo | Waymo LLC, Google Inc., and Alphabet Inc. |

**INTRODUCTION**

Since filing its motion, Waymo has deposed five Uber engineers, conducted detailed inspections of Uber's LiDAR prototypes (Fuji and Owl), inspected the components of an Uber LiDAR concept that never became a prototype (Spider), and reviewed thousands of pages of technical documents. The upshot is Waymo's wholesale retreat from its earlier claims.

First, Waymo no longer accuses Uber's current Fuji LiDAR of patent infringement—even though its expert was previously certain that Fuji infringed. Waymo now shifts its patent claims to the components of the defunct Spider—but Spider was only a design idea that was abandoned well before this litigation began, never became a completed prototype, exists only as a collection of component parts, and hence cannot infringe any Waymo patent.[1]

Second, Waymo points to no evidence of Uber's use of 104 of Waymo's 121 alleged "trade secrets," even after weeks of discovery. Uber has conducted an exhaustive search, which has generated only false hits for common files. For the alleged trade secrets Waymo *does* assert, the evidence shows Uber's LiDAR has an independent origin and the alleged trade secrets are not valid. Indeed, many of Waymo's asserted secrets are common ideas known to LiDAR designers and disclosed in public literature. If those ideas are enforced as trade secrets, Waymo could monopolize LiDAR. Waymo would like that. But it would be unwarranted and anticompetitive.

Lacking any actual *evidence* of misappropriation or infringement, Waymo hopes to leverage Mr. Levandowski's assertion of his Fifth Amendment privilege into adverse inferences against Uber for a fact Waymo cannot otherwise prove—that Uber's LiDAR is based on Waymo's trade secrets. The law does not allow this. An adverse inference requires independent, corroborating evidence. We are not aware of any case where adverse inferences provide the *sole* basis for a preliminary injunction—let alone a preliminary injunction against the use of over 100 alleged trade secrets that reflect publicly disclosed techniques and methods.

To be clear, Defendants understand the significance of Mr. Levandowski's privilege

---

[1] The suggestion that Defendants were "hiding" Spider is nonsense. Defendants disclosed the Spider project three weeks ago in the declaration of Scott Boehmke. (Dkt 176-1 at 6, ¶ 14 ("Uber was considering several different LiDAR options. . . . Plan C was to use a ***fiber laser design . . . using eight fiber lasers***.") When Waymo asked about Spider, its unfinished components were immediately made available for inspection. (Chang ¶ 2.)

1  assertion and the seriousness with which the Court views it. Accordingly, Defendants have
2  recused Mr. Levandowski from all LiDAR development[2] and do not oppose an order to that effect
3  pending trial, though Defendants have neither sought any Waymo trade secrets nor used them.
4       Finally, Waymo cannot show an imminent threat of irreparable harm. Defendants have
5  submitted sworn testimony that ███████████████████████████████████████████
6  ███. Thus, if Waymo prevails on its claims in October, Defendants will not have any "head start"
7  because ███████████████████████████████████████████ For this reason and
8  the absence of a scintilla of actual evidence that Defendants are misappropriating Waymo's alleged
9  trade secrets, Waymo is not entitled to the extraordinary relief it seeks.

## I. THE FUJI AND ███ TRANSMIT BOARDS ARE DIFFERENT, INDEPENDENTLY-DEVELOPED DESIGNS

Waymo has been forced to concede that Defendants' Fuji LiDAR does not infringe Waymo's '922 and '464 patents, because Fuji (a four-lens bistatic system) is fundamentally different from Waymo's patented single-lens, monostatic design ███. Waymo's technical expert, Gregory Kintz, who submitted a declaration concluding that Uber's Fuji design "definitively" used Waymo's patented single-lens design, has now *expressly withdrawn his infringement opinion* for Fuji. (Kintz Reply ¶ 80.) He has ███████████████████████████████████
███████████████████████. (Chang Ex. 15, Kintz Dep. 221:2-9.) Waymo now focuses on one component of Fuji—the transmit board—arguing that it is "nearly identical to those in Waymo's ███." (Repl. 3.) However, the ███████████ for the Fuji board was independently developed by Uber's engineers and the optical characteristics of those boards reveal that virtually nothing in the two transmit boards is the same.

Waymo argues there is "no credible evidence to support" Defendants' independent design. (Repl. 3.) To the contrary, the design history is amply supported by the declarations of Scott

---

[2] In addition, Eric Meyhofer has replaced Mr. Levandowski as the head of Uber's Advanced Technologies Group.
[3] Consistent with prior filings, Defendants have redacted all information which Waymo has designated AEO. However, given the widespread public reporting of certain alleged trade secrets due to their disclosure in a prior filing made by Waymo (see, e.g., Chang Exs. 16 & 17), Defendants reserve all rights to argue that these trade secrets and their AEO status have been waived.

Boehmke and James Haslim and detailed records that fully corroborate their testimony. Mr. Boehmke (who never worked for Waymo) started working on ▮▮▮▮ for LiDARs in 2015. (Boehmke ¶ 2.) In December 2015, Mr. Boehmke sent ▮▮▮▮ parameters to ▮▮▮▮ for a customized 64-laser LiDAR. (Id. ¶ 4.) At that time, he specifically illustrated in his notebook the concept of placing ▮▮▮▮. (Id. ¶ 7.) All of this was before Mr. Boehmke ever spoke with Mr. Levandowski and before Otto was even formed. In March 2016, Mr. Boehmke finalized his ▮▮▮▮ for the contemplated ▮▮▮▮ design. (Id. ¶ 5.) In October 2016, when the Uber team began developing Fuji, Mr. Boehmke prepared the Fuji ▮▮▮▮ parameters based on the ▮▮▮▮ principles he had developed for his March 2016 design. (Id. ¶¶ 14-17) The ▮▮▮▮ of Fuji's diodes were based directly on Mr. Boehmke's ▮▮▮▮ parameters. (Haslim ¶¶ 16-18.) Mr. Levandowski had no input into Fuji's ▮▮▮▮ design. (Boehmke ¶ 13.)

Given Fuji's independent design, it is unsurprising that every critical parameter in the Fuji board is different from its counterpart in the ▮▮▮▮ board: (1) different vertical field of view; (2) different focal length; (3) different vertical angles for nearly every laser diode on every board; (4) different angular deltas between diodes; (5) different minimum spacing between diodes; and (6) different layout of components and conductive tracks. A comparison of some salient differences is shown in the chart below:[4]

|  | ▮▮▮▮ LiDAR | Fuji LiDAR |
| --- | --- | --- |
| Vertical FOV | ▮▮▮▮ | Medium: -22° to -4.22° (total 17.78°)<br>Long: -3.92° to 8.23° (total 12.15°)<br>Total: 30.23° |
| Focal Length | ▮▮▮▮ | 150mm |
| Cavity Tilt | ▮▮▮▮ | Medium: -12° |
| Diode Spacing | ▮▮▮▮ | ▮▮▮▮ |

---

[4] Sources for the data in this chart are cited in Dr. Lebby's supplemental declaration (Lebby ¶ 7). Waymo contends that Dr. McManamon did not compare the Fuji diode arrangement to Waymo's design (Repl. 3), but that analysis was undertaken by Dr. Lebby. (Lebby ¶¶ 58-62.)

| Diode Angles | | LiDAR | Fuji LiDAR |
|---|---|---|---|
| | | ███ | ███ |
| | | ███ | ███ |
| | | ███ | ███ |
| | | ███ | ███ |
| | | ███ | ███ |
| | | ███ | ███ |
| Minimum Spacing | | ███ | ███ |

Despite now having all of these parameters available to him, Mr. Kintz ignores them and continues to rely on his faulty comparison of the two boards based on the wrong focal length (he estimated it was 145mm; it is 150mm).[5]  (Lebby ¶¶ 4-5.)  Waymo does not and cannot deny the design differences between the boards that confirm their independent origins.

## II. WAYMO'S BROADLY ALLEGED "TRADE SECRETS" ARE KNOWN FEATURES OF LIDAR AND DIODE LASER SYSTEMS

Waymo ignores the numerous specific differences between the Fuji and ███ boards, and instead focuses on broad concepts.[6]  But none of these concepts are trade secrets.  The general features that Waymo claims as trade secrets are part of the "toolbox" of engineers in this field.[7]

### A. Alleged Trade Secret 1: ███ of Diodes

The idea of having ███ diodes in a LiDAR was known to LiDAR designers with no connection to Waymo, including Mr. Boehmke and Velodyne.  As noted above, Mr. Boehmke developed a ███ laser diode design in 2015.  Velodyne, the leading manufacturer of automotive LiDAR systems, publicly disclosed the concept of ███ of diodes in its '190 patent.  Waymo argues that the Velodyne '190 patent "does not teach any

---

[5] Mr. Kintz's claims of misappropriation in Fuji are also of dubious credibility; this is the same Mr. Kintz who, based on his inspection of a single circuit board, concluded that Fuji "definitively" used Waymo's patented single lens design, an opinion he admits was inaccurate and which he has withdrawn.  (Kintz ¶ 72; Kintz Reply ¶ 80; Chang Ex. 15, Kintz Dep. 221:2-9.)

[6] Mr. Kintz discusses several additional alleged trade secrets (TS 8, 10, 13, 19) that were not addressed in his opening declaration and are not discussed in Waymo's reply brief.  These are addressed Lebby ¶¶ 8-47.

[7] *Winston Research Corp. v. Minn. Mining & Mfg. Co.*, 350 F.2d 134, 139 (9th Cir. 1965).

1 specific ▓▓▓ patterns," but it does teach ▓▓▓
2 ▓▓▓ (Lebby
3 ¶ 54.) And Fuji does not use Waymo's claimed ▓▓▓. (*Id.* ¶ 56.)

  **B.** **Alleged Trade Secret 7:** ▓▓▓

  The concept of ▓▓▓ is not a secret, as it is disclosed in public literature and used in Velodyne's LiDARs. ▓▓▓ are clearly disclosed in a 2015 textbook on semiconductor lasers ("Liu") and a 2007 dissertation on laser diode systems ("Scholz") (see figures and excerpts below) (Lebby ¶ 59):



**2015 Liu Textbook, p. 224**: "Overhang and underhang characterize the alignment between the diode laser die (could be a single emitter chip or a bar) and the mounting substrate."

**2007 Scholz Dissertation, p. 63**: "The laser bar is mounted with a small overhang on the top of the heat sink."

  Waymo argues that the Liu teaches away from ▓▓▓ (Repl. 5), but we are dealing with the law of trade secrets (not patents), under which public disclosure of the concept breaks the secret.[8] Waymo also contends that the references do not disclose a ▓▓▓ (Repl. 5), but Waymo's alleged trade secret 7 does not specify ▓▓▓ and Waymo's own expert ▓▓▓ (Chang Ex. 15, Kintz Dep. 127:5-128:21; Lebby ¶ 60). ▓▓▓ are also known and used in the automotive LiDAR field. Defendants' engineer Dan Gruver testified based on his personal experience working with Velodyne LiDARs that the ▓▓▓" (Chang Ex. 14, Gruver Dep. 51:4-52:5.)

  **C.** **Alleged Trade Secrets 2 and 3:** ▓▓▓

  Waymo concedes that Fuji's use of ▓▓▓ is different than ▓▓▓

---

[8] *DVD Copy Control Ass'n. v. Bunner*, 116 Cal. App. 4th 241, 251-52 (2004) (holding no misappropriation where there is public disclosure of trade secret).

1  ███████, but argues that it is a "minor modification." (Repl. 6.) Not so. Fuji's arrangement
2  of lasers is a physically and functionally distinct design from ███, reflecting Fuji's fundamentally
3  different two-cavity, multi-lens structure. While ███ has a single ███████
4  ███████████████████████████████████████████████████████, Fuji's
5  ███████ are each separately (1) mounted in different LiDAR cavities, (2) aligned to permit
6  laser light to pass through two lenses, and (3) paired with flat receive boards with three columns of
7  photoreceptors. (Lebby ¶ 62.) It would not have been a "minor modification" to ███████
8  ████████████████████████████ (Id.; Lebby Ex. 2, Kintz Dep. 160:3-11.) Waymo also
9  tries to dismiss Fuji's ████████████████████████ as a "minor
10 modification," even though the ███████████████████████ is what Waymo claims is the
11 alleged benefit of trade secret 3 (i.e., ███████████████████████████). Fuji's
12 ████████████████████████████████████████████ (Lebby ¶ 63.)
13     Moreover, once the choice was made to use 64 lasers (a number that comes from Velodyne,
14 not Waymo), distributing those lasers in a ██████████████████████████) was an
15 obvious configuration in view of known design considerations. (Id. ¶ 64.) Indeed, a ███
16 ██████████████████████████ is illustrated in the Liu textbook. (Id.) Such laser
17 distributions are part of engineering know-how in the diode laser field.
18     **D.    Alleged Trade Secret 14:** ███████
19     Waymo's claim that it owns the concept of using ██████████████████████, given
20 the simplicity and ubiquity of the idea. Dr. Lebby provided several examples of ███████
21 ████████████ For instance, U.S. Patent 4,244,109 discloses ████████████
22 ████████████████████████
23 ██████████ (see Fig. 3). The patent also discloses
24 that ██████████████████████████: "[T]he
25 photodiodes are mounted on the PCB in alignment with the two holes." Col. 3:27-28. ███
26 ██████████████████████████. (Lebby ¶¶ 65-66.)
27 **III.   SPIDER WAS AN ABANDONED DESIGN IDEA AND CANNOT INFRINGE**
28     Waymo's newfound focus on Spider is a red herring, intended as a face-saving move and to

distract from Waymo's failed allegations against Fuji. Spider was a design idea that never evolved into a working prototype and was abandoned in October 2016, months before this lawsuit was filed. (Haslim ¶¶ 2, 8.) Waymo's patent infringement allegations against Spider fail for the simple reason that a Spider LiDAR never existed—it was never made, used, offered for sale, sold, or imported.[9] (Id. ¶ 2.) Only one cavity was ever built and, because of problems with the design, that single cavity never even worked and there are no plans to revive it.[10] (Id. ¶¶ 2, 8.) A preliminary injunction cannot properly be granted based on an abandoned design idea.[11]

## IV. WAYMO IS NOT ENTITLED TO ANY ADVERSE INFERENCE

In an incredible overreach, Waymo seeks a preliminary injunction barring Defendants from using 104 alleged "trade secrets" that were unbriefed, based *solely* on an adverse inference. (Repl. 13, 15.) Waymo seeks this relief without any evidence that Defendants used those trade secrets and without demonstrating that each alleged "trade secret" actually qualifies as such.

### A. Waymo Is Not Entitled to the Fifth Amendment Adverse Inferences It Seeks

Waymo's request for an adverse inference based on Mr. Levandowski's invocation of his Fifth Amendment rights fails for two reasons. *First*, Waymo seeks inferences that are not supported by corroborating evidence. Where, as here, there is no additional corroborating evidence, there is no permissible adverse inference against Defendants based on Mr. Levandowski's invocation. Merely hiring him is not enough. An adverse inference from a Fifth Amendment invocation requires tailored, *probative evidence* of each specific fact on which Waymo seeks an inference.[12] Here, Waymo offers no independent, specific evidence for any of

---

[9] Waymo's allegation that Spider uses alleged trade secrets 48 and 90 is addressed in Dr. Lebby's supplemental declaration at ¶¶ 42-47.
[10] The proposed design for Spider was radically different from Waymo's ▮▮▮. Spider would have had 8 optical cavities (versus one for ▮▮▮ 8 fiber lasers of 1550nm wavelength, each split into 8 transmit fibers (versus ▮▮▮); 16 optical lenses, two for each cavity (versus one lens for ▮▮▮); and no transmit PCBs at all. (Haslim ¶¶ 3, 5-6.)
[11] *See Roper Corp. v. Litton Sys.*, 757 F.2d 1266, 1272-73 (Fed. Cir. 1985) (affirming denial of PI where defendant "does not presently make, and has no immediate plans to make").
[12] *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (adverse inferences permissible only where witness refuses to testify "in response to probative evidence offered against them"); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (corroboration requirement); *Sun Microsystems, Inc. v Hynix Semiconductor, Inc*, 622 F. Supp. 2d 890, 907–908 (N.D. Cal. 2009).

1  the four specific adverse inferences it seeks.  (Repl. 13.)[13]  Waymo's counsel's bare deposition

2  questions are of no moment without corroborating evidence of every single fact.

3       ***Second***, adverse inferences "cannot be limitless; rather, [they] must be tethered to the

4  specific questions asked but not answered."[14]  Waymo did not ask specific questions of

5  Mr. Levandowski that would support the adverse inferences it seeks—especially on whether

6  Defendants are using any of the 104 trade secrets that Waymo failed to brief.  (*See* 4/12/17 Tr. at

7  72 (admonishing Waymo "to do your job and ask the questions subject by subject").)  The Ninth

8  Circuit forbids such sweeping inferences.[15]

9       **B.  No Adverse Inference Based on Alleged Discovery Violations Is Warranted**

10       Waymo asks for an adverse inference sanction for alleged discovery misconduct and

11  privilege claims, even though there has been no determination that Defendants broke any rule.  In

12  doing so, Waymo has not complied with the local rules requiring that any "motion for sanctions"

13  must be "separately filed," accompanied by declarations, and not raised for the first time on reply

14  to a different motion.[16]  Waymo's request for a sanction should be denied on this basis alone.

15       Waymo alleges that Defendants failed to search Mr. Levandowski's files.[17]  (Repl. 11.)

16  ***This is false***.  Defendants conducted an extensive search of Uber's files, ***including a search of all***

17  ***Mr. Levandowski's Uber data***.  (Orig. Faulkner ¶¶ 5-6; Faulkner ¶¶ 2-7; Rivera ¶ 2.)  Defendants

18  applied over 100 search terms, including all terms proposed by Waymo, plus file names and hashes

19  in an effort to find information "derived from" Waymo's files.  (Orig. Faulkner ¶ 6; Rivera ¶ 6.)[18]

---

[13] For the proposition that Mr. Levandowski accessed Defendants' files while he was working from home "for Uber," (Repl. 11, 13, Dkt. 248-7), Waymo cites a hearsay-within-hearsay *Business Insider* article that describes Mr. Levandowski working from home ***for Google*** while he was still employed ***by Google***.

[14] *Gonzales v. City of San Jose*, No. 13-CV-00695-BLF, 2015 WL 7878121, at *6 (N.D. Cal. Dec. 4, 2015).

[15] Moreover, adverse inferences are permissible only if there is "not another less burdensome way of obtaining that information." *Glanzer*, 232 F.3d at 1265.  Waymo is obtaining information relevant to its claims through discovery of other Defendants' employees.

[16] Civ. L.R.. 7-2, 7-8, 37-4; *SalesBrain, Inc. v. AngelVision Techs.*, No. C 12-05026 LB, 2013 WL 2422762, at *4 (N.D. Cal. June 3, 2013).

[17] While Waymo has made much of the files allegedly downloaded by Mr. Levandowski, Waymo's expert has admitted that none of those files include any information on lenses or optics—a central part of this case.

[18] Waymo's assertion that "Uber does not track network and server activity by Mr. Levandowski" is likewise untrue. The document Waymo cites, Ex. 80 ("Network & Device Acceptable Use Policy") states network activity can be "retained for as long as necessary."

1  Notably, this extensive search has not turned up any Waymo trade secret. (Faulkner ¶¶ 2-8;
2  Linaval ¶¶ 2-14.)
3        Waymo also claims that Defendants should have searched Mr. Levandowski's emails in
4  connection with document requests directed to *other deponents*. But the Court ordered that
5  requests be "very narrowly drawn" and directed to the particular deponents (Dkt. 61 ¶ 2).
6        Waymo also asserts that Defendants have "provided no evidence to support" their claim of
7  privilege. (Repl. at 12.) But Defendants have provided a log that "describe[s] the nature of the
8  documents" withheld, which is exactly what Federal Rule 26(b)(5)(A) requires.
9        In any event, these discovery issues are the subject of ongoing meet-and-confer efforts
10 among the parties, and Waymo may not seek a sanction where the parties are still conferring and
11 the Court has yet to rule on the disputes.[19] (Rivera ¶¶ 13-16, 19.) Waymo's request is both
12 premature and ill-founded.
13     **C.**    **There Were No Misrepresentations About Non-Use of a Single-Lens Design**
14       Waymo also argues it is entitled to an adverse inference because of Defendants' alleged
15 misrepresentations about a single-lens design. (Repl. 12.) ***There was no misrepresentation***.
16 Defendants do ***not*** have a single-lens system. (Haslim ¶¶ 5-6.) As discussed above, Spider never
17 became a working prototype.[20] Defendants disclosed Spider in Mr. Boehmke's April 7 declaration
18 and made the Spider components available for Waymo's inspection upon request. (Repl. 13;
19 Chang Decl. ¶ 2 & Exs. 9, 10.) Defendants also produced design files for Spider. (Chang Decl.
20 ¶ 2.) Defendants have not concealed anything and an adverse inference is not warranted.
21 **V.**    **WAYMO CANNOT SHOW IT WILL SUFFER IRREPARABLE HARM**
22       Waymo fails to rebut Defendants' sworn testimony that it ████████
23 ████████████████████████████████████. (Opp. 19.) If Waymo prevails at trial
24 in October, the Court will be able to prevent Defendants from "hit[ting] the market first." Thus,
25 any injury to Waymo cannot possibly be immediate, significant, and concrete. (*See* Opp. 17 n.34

---

[19] Civ. L.R. 37-4; *Jimenez v. Menzies Aviation Inc.*, No. 15-CV-02392-WHO, 2016 WL
28 3232793, at *5 (N.D. Cal. June 13, 2016) (no adverse inference where parties still conferring).
[20] Spider, with 8 optical cavities with 2 lenses each, is a ***16-lens*** LiDAR system. (Haslim ¶ 3.)

1  (citing cases).)[21]  Nor does Waymo attempt to explain how the abandoned Spider project could
2  result in any such harm now.  Waymo has cited no cases in which fears about *future*
3  *commercialization in a market that does not yet exist* supported a finding of irreparable harm.[22]
4  This is the type of speculative harm that "cannot be the basis for a finding of irreparable harm."[23]

5  Waymo continues to claim a "presumption" of irreparable harm.  (Repl. 14.)  But *eBay*
6  and *Flexible Lifeline* are fatal as applied to Waymo's patent claims, and subsequent jurisprudence
7  suggests that these cases apply equally in the trade secret context.[24]  (Opp. 18 n.39.)  Waymo
8  disregards this binding authority, instead relying on district court cases that ignore or predate it, or
9  including one case that expressly rejects the presumption that Waymo invokes.  (Repl. at 14.)[25]

10  Waymo also fails to rebut Defendants' evidence or arguments regarding the balance of
11  hardships, the adequacy of money damages, or the public interest.  (Opp. 17-25.)

12  **VI.   WAYMO'S DELAY IS FATAL TO ITS PRELIMINARY INUNCTION REQUEST**

13  Waymo admits it knew in ***mid-2016*** that Mr. Levandowski was leading Uber's self-driving
14  car project, and that ***in October*** it confirmed Mr. Levandowski allegedly downloaded Google files
15  and filed arbitrations against Mr. Levandowski without mention of the supposedly critical
16  downloads.[26]  That is, as of October 2016, the alleged download of 14,000 files by Uber's self–
17  driving car leader was not troubling enough for Waymo to take action.  Waymo said nothing about
18  the downloads until it filed this case.  The vendor email and DMV filing don't change these facts.[27]
19  Waymo cannot use the alleged download as its primary justification for the extraordinary relief it
20  seeks on a supposed "emergency" basis, when it failed to take action on this knowledge earlier.

---

[21] Waymo attempts to distinguish the *Zodiac* TRO, noting a longer injunction is at issue here. (Repl. 15 n.9.)  But matters not, given the sworn testimony that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.
[22] *Netlist* and *Lamb-Weston* (Repl. 15) both involved established markets.
[23] *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).
[24] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (presumptions of irreparable harm a "major departure from the long tradition of equity practice"); *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 999 (9th Cir. 2011) (rejecting presumption in other contexts).
[25] In *V'Guara v. Dec*, the court "decline[d] to rely on such a presumption in determining … irreparable harm" in light of *Flexible Lifeline*.  925 F. Supp. 2d 1120, 1126 (D. Nev. 2013).
[26] Chang Ex. 13, Brown Dep. 48:5–49:8, 36:17-20; Mot. 9; Compl. ¶ 57; Dkt. 138 at 10.
[27] *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12-03762 SI, 2013 WL 244999, at *8 (N.D. Cal. Jan. 22, 2013), *aff'd,* 551 F. App'x 298 (9th Cir. 2013) (delay from the time that plaintiff was "aware, or should have been aware" of wrongdoing).

| | | |
|---|---|---|
| 1 | Dated:  April 28, 2017 | MORRISON & FOERSTER LLP |
| 2 | | |
| 3 | | By: */s/ Arturo J. González*<br>ARTURO J. GONZÁLEZ |
| 4 | | Attorneys for Defendants<br>UBER TECHNOLOGIES, INC., |
| 5 | | OTTOMOTTO LLC, and OTTO TRUCKING LLC |