# Exhibit B

| | |
|---|---|
| **From:** | Gonzalez, Arturo J. <AGonzalez@mofo.com> |
| **Sent:** | Wednesday, April 26, 2017 2:47 AM |
| **To:** | Jeff Nardinelli |
| **Cc:** | jcooper@fbm.com; MCate@fbm.com; UberWaymo; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); QE-Waymo |
| **Subject:** | Email re: April 25 Meet and Confer |

John,

We cannot meaningfully confer when emails are sent at 9:35 in the evening and a demand is made for letter briefs at 10:00 a.m. The following morning.

I have reviewed the 9:30 email and briefly respond below.

The log that we file Thursday will address issues 1-3 below. We also agree to No. 4, but that will take more time, probably one week. With respect to No. 5, we will review email chains to ensure that all people in the chain are included in the log. In other words, if any part of the chain was sent to a third party, that will be logged.

With respect to the six document requests, the proposal for No. 1 is fine.

For No. 2, if there no list of such businesses, we suggest that Waymo ask whether there are any documents that discuss or describe any such side businesses.

For No. 3, we talked about getting just 3 examples of common interest agreements. If Waymo does not have any, Google definitely does.

For No. 4, we need the earliest date that such communications occurred. It does not help to say they had occurred by December 2016. Two arbitrations had already been filed by then. Google legal knows who first brought this matter to their attention. All they have to,do is ask that person what communications that person first had about this issue. If that communication is privileged, they can log it.

For No. 5, we will stand down for now.

For No. 6, the log suggestion is fine. When will we get the log.

With respect to the other issues, I will confer with our team regarding the request for additional Spider information.

Finally, with respect to the two other items below, as I noted today, we will be making rolling productions of any additional responsive documents that we locate after a reasonably diligent search.

I likely will not be able to file a letter brief by 10 because I will be attending the settlement conference. I suggest that we schedule a call for 11:30 or so to determine whether any letter brief is necessary.

Arturo

Sent from my iPad

On Apr 25, 2017, at 9:35 PM, Jeff Nardinelli <jeffnardinelli@quinnemanuel.com> wrote:

- External Email -

Dear John:

This email confirms and responds to issues raised during today's conference following the hearing before Magistrate Judge Corley. It is our hope to resolve as many of these issues as possible and we look forward to Uber's responses tonight, or at the very least, early tomorrow morning.

I. **Uber's Privilege Logs**

As previously stated, Defendants must comply with Judge Alsup's Standing Order regarding privilege logs. Judge Alsup has made clear that he requires "bone-crushing detail" from the parties' privilege logs, as his Standing Order also requires. (Apr. 5 Tr. at 28.) Yet time and again Uber has refused to unequivocally agree to address the issues that Waymo has raised and already met and conferred with Uber about.

We hope that this will end given that Mr. Gonzalez stated that he would tell us by tonight, for each of the privilege log deficiencies that Waymo has previously identified, whether Uber intends to (1) comply by April 27, the date ordered by the Court for the production of the completed privilege log; (2) comply after April 27; or (3) refuse to comply with.

To be clear, we need agreement from Uber to take the following *specific* actions (detailed in our emails of April 17-20 and again in our April 23 letter), and a statement of when Uber will do so:

(1) Disclose the actual identities of all individual addressors/addressees/copyees on their log;

(2) Provide a detailed subject-matter description for each entry rather than a rote description repeated across thousands of documents;

(3) Identify the specific purported common interest and corresponding litigation, as required to claim common-interest privilege;

(4) Confirm that Uber has determined in good faith that almost every (if not every) document on its log is protected by *each of* the attorney-client, attorney work product, and common interest privileges;

(5) Revise its logs to identify documents *individually*, not simply as email "families."

Absent satisfactory response on these issues we will need to seek the Court's assistance.

II. **RFPs Accompanying Larry Page Deposition Notice**

Waymo has conferred with its client and states the following:

1. *Documents regarding any policy or written guideline regarding the ability of Waymo employees to participate in a personal side business while employed by Waymo.*

Waymo will produce an exemplar employment agreement and applicable policy documents. We understood based on our meet and confer today that this would be sufficient for Uber so any issues regarding this request should be resolved.

2. *Documents sufficient to identify the Waymo employees who have had side businesses, including the names of all such employees and the nature of the side businesses in which such employees engaged in the past three years.*

Waymo objects to this document request as irrelevant to issues newly-raised in Waymo's reply brief in support of Waymo's motion for preliminary injunction, and therefore in violation of the Court's order governing expedited discovery. *See* Docket No. 61. Waymo further objects that to search for every employee who has a side business is not proportional to the needs of the case, particularly during the end of the PI phase. Nevertheless, you asked that we investigate whether there is a repository or list of "Waymo employees who have had side businesses." As agreed we have done so and we do not believe there is one. Given the non-proportional burden of this request, it is our hope this response resolves this issue. If not, we are happy to confer further.

3. *Documents sufficient to show any joint interest or joint defense agreement that Waymo has entered into during the past three years.*

Uber agreed to limit this request to no more than three acquisition-related agreements entered into by Waymo LLC. Waymo states that is has not entered into any acquisition-related joint-interest or joint-defense agreements. This request should be resolved.

4. *Communications about the possibility of pursuing a legal action against Anthony Levandowski or Defendants.*

Uber agreed to limit this request to communications at Waymo LLC. Uber also stated that, to the extent any responsive documents would be privileged, Uber would still like to know the dates that such communications began at Waymo. Waymo LLC became a corporate entity on December 13, 2016. As of that day, and without waiver of any privilege or work product protection, communications of the subject matter of possibility of pursuing a legal action against Anthony Levandowski or Defendants existed. We hope this resolves any issue with this request. If not, we ask Defendants to explain why not.

5. *Any brief or declaration provided to any court in support of a joint interest or joint defense privilege asserted by Waymo.*

Uber agreed to limit this request to Waymo LLC.

Waymo LLC has not provided any briefs or declarations in support of a joint interest or joint defense privilege asserted by Waymo LLC.

6. *Documents sufficient to show when Waymo began investigating the possibility of Anthony Levandowski taking Waymo files with him upon his departure.*

Defendants have already received this information through the deposition of Gary Brown. *See* Brown Tr. at 10:21-11:12, 22:21-23 (testifying to when he began doing work pertaining to Anthony Levandowski); *id.* at 35:13-37:2 (testifying to when he analyzed whether Anthony Levandowski had downloaded 14,000 files from Waymo's SVN repository). In addition, Waymo will produce or log a document concerning when that investigation began relating to Anthony Levandowski.

III. **Spider**

At the conference Waymo explained that it still knows very little about Defendants' Spider LiDAR due to Defendants' deficient production. The parties agreed that Waymo would provide yet another specific directive concerning its priority discovery needs. As to this topic, Defendants must agree to produce by Friday April 28 the following documents, none of which have yet been disclosed: (1) documents sufficient to show how the fiber laser amplification is achieved; (2) detailed CAD or schematic documents showing the layout of the laser sources and photodetectors; (3) documents sufficient to show how Spider achieves 360-degree view (e.g., by mechanical rotation); and (4) documents sufficient to show the path (ray trace) of the light from initial transmission, through the lens, off an external object, then back through the lens onto the photoreceptors. Defendants must also produce by Friday April 28 the "rough sketches" made by Anthony Levandowski of the Spider design, as referenced by Defendants' responses to the Court-ordered interrogatories. *See* Docket No. 265 at 3.

### IV.  **Waymo Deponent-Related RFPs**

At the April 20 conference, Waymo provided Defendants with five exemplary RFPs issued in connection with Waymo's deposition notices to Defendants. The RFPs are:

A. **Haslim RFP 4 ("Documents related to the LIDAR-related "Milestones" in UBER00006451, including how such milestones were calculated, the negotiation of such milestones, and any discussions regarding the satisfaction of such milestones.")**

B. **Linaval RFP 1 ("Documents sufficient to show the reasons behind Uber's decision to acquire Otto, beginning with Uber's first interest in Odin Wave, Otto, Tyto LiDAR, and/or 280 Systems, all due diligence on such acquisition, and any consulting work by Anthony Levandowski and/or Odin Wave, Otto, Tyto LiDAR, and/or 280 Systems for Uber before the acquisition.")**

C. **Linaval RFP 6 ("All documents concerning Anthony Levandowski's input into any component of all LiDAR, radar, camera, microphone, audio input or output, manual controller, wireless communication system, display, wheel or pedal sensor or controller systems developed or contemplated by Defendants, or concerning Anthony Levandowski's input into the testing, assembly, tuning, or calibration of any such system, including communications authored by Anthony Levandowski and communications describing Anthony Levandowski's input.")**

D. **Meall RFP 3 ("Documents sufficient to show the reasons behind Otto's decision to acquire Tyto LiDAR, beginning with Otto's first interest in Tyto LiDAR or Odin Wave, and all due diligence on such acquisition.")**

E. **Boehmke RFP 4 ("All documents and communications concerning, showing, and evidencing the timing, nature, extent, and substance of any consulting work by Anthony Levandowski (whether personally or through Otto or any other entity) before becoming an employee of Uber.")**

Although Defendants promised to expedite search and production for responsive documents, Defendants have failed to produce any responsive documents. For example, Defendants agreed on April 20 to produce documents relating to the development of the "milestones" discussed in UBER00006451. Instead, Defendants produced additional versions of the same document, but with significant redactions. Following the typical pattern, Mr. Gonzalez said today that he would

4

"look into what happened." He also cited a separate production made today by Defendants; this production related to Defendants' responses to the Court-ordered interrogatories, and not to Waymo's RFPs. Defendants must produce these documents by April 27.

### V. Search of Anthony Levandowski's Work Files

Today, for the first time, Defendants revealed that they are searching Anthony Levandowski's work files to locate documents responsive to Waymo's RFPs—which it concedes it had not done before. Waymo asked Defendants to identify the RFPs it was using to determine responsiveness. Mr. Gonzalez did not know. Mr. Gonzalez's did commit they would do a reasonable search of Mr. Levandowski's files (excluding the unidentified "personal" files of Mr. Levandowski it has already refused to search) for responsive documents, including email and other of his custodial repositories. Defendants must produce these documents by April 27.

### VI. Conclusion

Waymo is prepared to file a two-page letter brief with Magistrate Judge Corley by tomorrow morning, set presently at 10:00 a.m., to the extent the parties are unable to resolve any of the foregoing.

Thanks,
Jeff

**Jeff Nardinelli**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6325 Direct
415.875.6600 Main Office Number
415.875.6700 FAX
jeffnardinelli@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

=================================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.