QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa J. Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for Waymo LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>        Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO'S MOTION TO<br>COMPEL PRODUCTION OF<br>WITHHELD DOCUMENTS** |

1    TO DEFENDANTS UBER TECHNOLOGIES, INC., OTTOMOTTO LLC, AND OTTO

2    TRUCKING LLC, AND THEIR COUNSEL OF RECORD:

3         PLEASE TAKE NOTICE that at 8:00 a.m. on June 8, 2017, or as soon as the matter may

4    be heard, in the courtroom of the Honorable William H. Alsup at the United States District Court

5    for the Northern District of California, Courtroom 8, 19th Floor, 450 Golden Gate Avenue, San

6    Francisco, California (94102), Plaintiff Waymo LLC ("Waymo") shall and hereby does move the

7    Court for an Order compelling production of documents withheld under a claim of privilege or

8    work product.

9         Plaintiff Waymo LLC respectfully submits this Motion in response to the Court's April 25,

10   2017 Order  (Dkt. 271) that "By MAY 1 AT NOON, plaintiff shall move, if it wishes to do so at all,

11   to compel production of the due diligence report that was the subject of Levandowski's motion."

12   Defendants respectfully request that the Court compel production of the withheld report and

13   attachments in addition to all other relevant information, files, and electronic media currently in

14   the possession of Stroz Friedberg.

15        This Motion is based on this notice of motion and supporting memorandum of points and

16   authorities, reply briefing in further support of this motion, as well as other written or oral

17   argument that Waymo may present to the Court.

18

19   DATED:  May 1, 2017                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

20                                            By      _/s/ Charles K. Verhoeven_

21                                            Charles K. Verhoeven
22                                            Attorneys for Plaintiff Waymo LLC

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    DEFENDANTS' PRIVILEGE LOG IS FACIALLY DEFICIENT ...................................5

    A.    Defendants Failed To Identify Each Author/Sender And Recipient Of Every Communication That Disseminated The Due Diligence Report...............................6

    B.    Defendants Failed To Provide Information Sufficient To Confirm That The Asserted Privileges Have Not Been Waived..............................................................6

    C.    Defendants Failed To Provide Information Showing That The Asserted Work Product Protection Is Justified ......................................................................7

II.   EITHER THERE IS NO COMMON INTEREST PRIVILEGE OR THE CRIME FRAUD EXCEPTION TO THAT PRIVILEGE APPLIES.................................................10

    A.    Defendants Have Not Satisfied Their Burden To Demonstrate A Common *Legal* Interest In The Context Of A Typical Due Diligence Investigation .............10

    B.    Defendants' Only Shared Interest Was In Concealing Trade Secret Misappropriation, Demonstrating That The Crime-Fraud Exception Applies ........12

III.  THE COURT SHOULD COMPEL PRODUCTION OF THE "ATTACHMENTS" TO THE REPORT (ENTRIES 13-16 AND 18-42) AND ANY OF MR. LEVANDOWSKI'S DOCUMENTS OR FORENSIC DATA IN THE POSSESSION OF STROZ FRIEDBERG ........................................................................14

IV.   THE COURT SHOULD COMPEL PRODUCTION OF ALLEGED WORK PRODUCT DUE TO WAYMO'S SUBSTANTIAL AND COMPELLING NEED..........16

V.    THE COURT SHOULD ORDER DISCOVERY CONCERNING DEFENDANTS' PRIVILEGE AND WORK PRODUCT ASSERTIONS ...................................................18

CONCLUSION ....................................................................................................................19

**INTRODUCTION**

Defendants have finally served Waymo with an un-redacted version of their 42-entry privilege log related to the "due diligence report" prepared by third-party Stroz Friedberg. As demonstrated below, Defendants are not justified in withholding that due diligence report or its attachments. And it is simply unfathomable that Uber has not produced any of the "information," "files," or "electronic media collected from A. Levandowski" by Stroz Friedberg in connection with its due diligence efforts (or, alternatively, provided a log regarding the destruction of such information/files/media) in response to this Court's expedited discovery Order. Defendants' attempt to use a constellation of inapplicable privileges to conceal the theft of trade secrets under the rubric of "due diligence" must be rejected. Defendants should be compelled to produce all 42 of the due diligence documents listed on its log in addition to all copies of information/files/media obtained from Mr. Levandowski or Otto that are still located at Stroz Friedberg.

**BACKGROUND**

On March 16, 2017, this Court ordered expedited discovery in connection with Waymo's motion for a preliminary injunction. (Dkt. 61.) Among other things, the Court ordered Defendants to produce by March 31: "all files and documents downloaded by Anthony Levnadowski, Sameer Kshirsagar, or Radu Raduta before leaving plaintiff's payroll and thereafter taken by them"; "the card reader, thumb drive, or other media used for the downloads"; and all subsequent materials that have "forwarded, used, or referred to any part" of the downloaded material.[1] (*Id.* at 2.) The Order also required Defendants to state the extent to which any of the downloaded material "has been deleted, destroyed, or modified." (*Id.*)

On March 28, Defendants requested a non-public conference to address a "confidential matter." (Dkt. 122 at 2.) At that conference, Defendants indicated that Uber was in possession of a report, prepared by a "third party," regarding "due diligence" that Uber had conducted on Otto. (Dkt. 131, 3/29/17 Hearing Tr. at 12-13.) Defendants alleged that the due diligence report was covered by a

---

[1] Defendants' continued failure to comply with this Order is detailed elsewhere. (*See* Dkt. 135, 206, 278, 279, 314, 315.) This submission focuses only on Defendants' privilege logs.

joint defense or common interest privilege and that Uber intended to list the report on a privilege log associated with its March 31 production of documents responsive to the Court's March 16 expedited discovery Order.  (*Id.* at 25.)

On April 4, Mr. Levandowski moved for "a modification of the Court's standing privilege log requirement" with respect to any reference to the due diligence report on Uber's privilege log.  (Dkt. 147 at 1.)  Specifically, Mr. Levandowski – invoking his personal privilege against self-incrimination – requested that Defendants "be relieved of any obligation to provide detail concerning (1) the identity of the third-party who conducted any such due diligence review, (2) whether Mr. Levandowski possessed any documents that were reviewed by the third party, or (3) the identity of any of Mr. Levandowski's possessions that may have been reviewed."  (*Id.* at 2.)

On April 6, the Court held a hearing on Mr. Levandowski's motion, at which time Waymo received (for the first time), a redacted version of a 42-entry privilege log related to the due diligence report and its attachments.  (Dkt. 169, 4/6/17 Hrg. Tr. at 45.)  At the hearing, Defendants clarified that "hundreds of e-mails, possibly thousands" (*id.* at 15) would be implicated by the Court's ruling on Mr. Levandowski's motion regarding the logging of the due diligence report.

On April 10, the Court issued an Order denying Mr. Levandowski's motion.  (Dkt. 202.)  The Court ordered Defendants to:  (i) serve a privilege log complete as to all items unaffected by Mr. Levandowski's motion by 11 p.m. that same day; and (ii) serve a privilege log complete as to all items affected by Mr. Levandowski's motion by April 13.  (*Id.*)  The Court further set a briefing schedule for any motion to compel production of the due diligence report.  (*Id.* at 12.)  When Mr. Levandowski appealed this ruling to the Federal Circuit, Defendants' obligation to serve a privilege log complete as to all items affected by Mr. Levandowski's motion was temporarily stayed.  (Dkt. 242.)

On April 10, Defendants partially complied with the remainder of the Court's Order – *i.e.*, to produce a privilege log complete as to all items unaffected by Mr. Levandowski's motion.[2]  At 11:00 p.m. that day, Defendants produced a "Privilege Log Associated with March 31, 2017 Production of

---

[2]  Defendants were still providing logs regarding documents unaffected by Mr. Levandowski's motion as of 11:44 p.m. on April 28.  (*See infra.*)

1   Documents," with 2,428 entries related to documents maintained at Morrison & Foerster, LLP.[3] (Dkt.

2   272-2.) This log asserted the attorney-client, work product, and common interest protection over

3   documents dated as early as January 29, 2016 – only two days following Mr. Levandowski's

4   resignation from Waymo, but more than two months before the April 2016 joint defense agreement

5   and more than six months prior to the official acquisition of Otto by Uber. (*Id.* at No. 2060.)

6       The log produced on April 10 suffered from significant deficiencies. For example, some

7   entries identified four entire law firms as the author or sender of a logged document. (*E.g.*, *id.* at pp.

8   104-122.) Other entries referred to communications made by one person "and/or" another. (*Id.* at

9   *passim.*) There was no meaningful description of the purported "common interest privilege" being

10  asserted. (*Id.*) There was no meaningful showing that the asserted privileges had not been waived.

11  (*Id.*) And all entries contained boilerplate language for the description of the "subject matter" of the

12  logged document, rending such description essentially meaningless – for example, documents dated

13  after Uber's acquisition of Otto were still described as relating to a "potential" acquisition. (*E.g.*, *id.*

14  at Nos. 2061, 2062, 2066.)

15      On April 13, Defendants produced (i) Defendants' Supplemental Privilege Log Associated

16  with March 31, 2017 Production of Documents, with 313 entries related to documents maintained at

17  O'Melveny & Myers (counsel for Otto) (Dkt. 272-4) and (ii) Defendants' Second Supplemental

18  Privilege Log Associated with March 31, 2017 Production of Documents with 589 entries related to

19  documents maintained at Uber (Dkt. 272-6). These logs suffered from many of the same deficiencies

20  as the Morrison & Foerster log that had been produced previously.

21      Waymo sought to meet and confer with Defendants about the deficiencies obvious from the

22  face of the logs. (Ex. 4.)[4] In light of the assertions of a common interest privilege over documents

---

24      [3] Logs of documents maintained at Uber and at O'Melveny & Myers (counsel for Otto)
25  would not be served for another two days. (*See infra.*) No logs of documents maintained at Cooley
    (corporate counsel for Uber), Donahue Fitzgerald LLP (counsel for Anthony Levandowski), Levine &
26  Baker (counsel for Lior Ron), or Stroz Friedberg (the third party who prepared the due diligence
    report) have been produced to date.

27      [4] All Exhibits are attached to the May 1, 2017 Declaration of Kevin Smith.

28

dated as early as January 29, 2016, Waymo also asked that Defendants identify any oral common interest agreement that may have preceded the April 2016 written common interest agreement.  (*Id.*) And, in light of Defendants' assertions of the work product privilege over documents dated as early as January 29, 2016, Waymo asked Defendants to provide information regarding when they first issued litigation hold notices for the purpose of preserving evidence relevant to purportedly anticipated litigation.  (*Id.*)  More generally, Waymo expressed its view that the common interest privilege was not well founded and/or was being used for an improper purpose.  (*Id.*)

Defendants were slow to respond, and their responses were far from straightforward.  For example, Defendants asserted that there was an oral common interest agreement prior to April 2016, but they would not identify when it was made, who made it, or who it was intended to cover.  (*Id.*) Similarly, Defendants "declined to answer questions about a litigation hold," refusing to "confirm or deny the date any litigation hold issued."  (*Id.*)  And, during the deposition of Mr. Levandowski, Defendants improperly objected to questions seeking to test the scope and nature of the asserted common interest privilege on the grounds of the same purported privilege.  (*E.g.*, Dkt. 273, at 32-44.) Only after Waymo submitted a letter brief to Special Master John Cooper regarding issues related to the privilege logs did Defendants start to provide some additional information:  Defendants conceded, for example, that they did not issue litigation hold notices to preserve evidence related to anticipated litigation until October 2016, even though they have now asserted the work product protection over documents purportedly created in anticipation of litigation as early as January 29, 2016.  (Ex. 5; Dkt. 272-2 at 648.)  Nonetheless, Defendants have still not provided other information relevant to its privilege claims, including any details regarding a purported oral joint defense agreement predating April 2016.

On April 25, the Federal Circuit denied Mr. Levandowski's appeal of this Court's Order requiring that the due diligence report be properly logged to the extent Defendants are claiming any privilege over it.  (Dkt. 271.)  On the same day, this Court issued an Order requiring Defendants to "serve a privilege log complete as to all items, including those affected by Levandowski's Fifth Amendment motion" by April 27 at noon.  (*Id.*)

1    That deadline came and went without Defendants producing an un-redacted version of the 42-

2    entry log describing the due diligence report and its attachments.[5]  Waymo asked for the log after the

3    deadline had passed on April 27 and again on the morning of April 28.  (Ex. 2.)  Defendants finally

4    served the log at 10:59 a.m. on April 28.  (*Id.*)  The only changes Defendants made to the log since

5    Mr. Levandowski's counsel provided a redacted version to Waymo on April 6 were (i) removing the

6    redactions and (ii) adding a page purporting to be "a table that lists the individuals at each firm, Uber,

7    and Otto who received the report before the complaint in this action was filed."[6]  (Ex. 1; Ex. 2.)

8    Notably, the log does not address any of the questions previously posed by the Court, including "why

9    the report was prepared" (other than for "due diligence") and "for what purpose each recipient used

10   it."  (Dkt. 202 at 5.)

11   At 11:44 p.m. on April 28, Defendants produced yet another log – Defendants' Third

12   Supplemental Privilege Log Associated With March 31, 2017 Production of Documents – with 74

13   additional entries related to documents maintained at Morrison & Foerster.[7]  Then, at 8:44 a.m. on

14   May 1, approximately three hours before Waymo's deadline to file this Motion, Defendants served an

15   updated log describing the due diligence report and attachments, adding five additional recipients of

16   the report – three Uber in-house counsel, Mr. Levandowski, and Mr. Ron – to their original list of

17   thirty-two recipients.  (Ex. 7.)

18   **ARGUMENT**

19   **I.    DEFENDANTS' PRIVILEGE LOG IS FACIALLY DEFICIENT**

20   The Court's "Supplemental Order to Order Setting Initial Case Management Conference In

21   Civil Cases Before Judge William Alsup" states that "[p]rivilege logs shall be promptly provided and

22   must be sufficiently detailed and informative to justify the privilege."  The Order makes clear that the

---

24   [5]  Defendants did produce un-redacted versions of its other three logs on April 27.  (Ex. 2.)

25   [6]  Defendants state that "[t]he names of individuals from Stroz Friedberg" – the third-party
     vendor who prepared the report – "are those we believe contributed to or received the report."  (Ex. 2.)

26   [7]  Waymo is reviewing the more than 1,000 pages of privilege logs that have been produced to
27   date and respectfully reserves its rights to move to compel the production of logged documents
     beyond the due diligence report and attachments addressed here.

28

"[f]ailure to furnish [the requisite] information at the time of the assertion will be deemed a waiver of the privilege or protection."  The Court re-emphasized these requirements in its April 10, 2017 Order, directing that any privilege logs "must be sufficiently detailed and informative to justify the claimed privilege(s)."  (Dkt. 202 at 3.)  Defendants' log listing the due diligence report and attachments still does not include some of the most basic information required to justify the asserted privileges.

### A.   Defendants Failed To Identify Each Author/Sender And Recipient Of Every Communication That Disseminated The Due Diligence Report

Just a few hours before Waymo's deadline to file this Motion, Defendants added five individuals to its list of "recipients" of the due diligence report:  three Uber in-house counsel, Mr. Levandowski, and Lior Ron.  (Ex. 7.)  But the log does not list a single communication by which any Uber in-house counsel, Mr. Levandowski, or Mr. Ron received the report.  (Ex. 1.)  Waymo has repeatedly requested that Defendants identify the ***persons*** who authored, sent, and received purportedly privileged documents, rather than listing entire firms as authors, senders, or receivers or providing aggregated lists of those who purportedly saw a document.  (Ex. 4.)  Without providing the specifics of each communication, Defendants simply cannot establish that the asserted privileges apply, and Waymo is left with an ambiguous record that is a moving target.

### B.   Defendants Failed To Provide Information Sufficient To Confirm That The Asserted Privileges Have Not Been Waived

Defendants bear the burden of showing that they have not waived privilege.  *Weil v. Investment/Indicators, Research and Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).  "[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege."  *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012).  And disclosure of work product to a person not bound to maintain its confidence waives protection.  *Skynet Elecs. Co. Ltd. v. Flextronics Int'l, Ltd.*, No. 12-6317-WHA, 2013 WL 6623874, at *3 (N.D. Cal. Dec. 16, 2013).  Defendants' privilege log fails to include information needed to show that the claimed privileges and protections have not been waived.

According to Defendants, the due diligence report was received by at least thirty-seven people.  (Ex. 1 at 17.)  Despite its wide dissemination, Defendants' log contains nothing but a blanket, boilerplate assertion that, to Uber's "knowledge no unauthorized persons have received the

1   Investigation Report," with a citation to "a common interest agreement dated April 11, 2016." (Ex. 1

2   at 1.) But that common interest agreement was not even signed by Stroz Friedberg, the third party

3   who prepared the report. (Dkt. 147-1; Ex. 1 at 17.) And, from the face of the log itself, it appears that

4   Stroz Friedberg began preparing memoranda as part of its due diligence "investigation" before the

5   cited common interest agreement even existed. (*E.g.*, Ex. 1 at No. 2.) As noted above, Defendants

6   have refused to provide any information about an alleged oral common interest agreement entered into

7   by unidentified parties at an unidentified time before April 11, 2016. (Ex. 4.) Having failed to even

8   ***allege*** that a common interest agreement encompasses all of the persons to whom the due diligence

9   report was admittedly disclosed, Defendants have not made out even a prima facie position that any

10  privilege was maintained without waiver.

11       Furthermore, Defendants' log affirms only that ***Uber*** has no knowledge of a waiver. The log

12  makes no representation as to the other Defendants. And the log makes no representation concerning

13  what steps non-Defendant authors or recipients of the due diligence report took – or did not take – to

14  prevent further disclosures of the report to third parties. As the Court noted at the April 6, 2017

15  hearing: "Ordinarily if there's a claim of privilege, we look to see every single person who got the

16  information because there could easily be a waiver. It happens all the time." (Dkt. 169, 4/6/17

17  Hearing Tr. at 36.) Defendants have not made any representation at all (never mind a sufficient

18  representation) regarding "every single person who got" the due diligence report. For this reason as

19  well, the log describing the due diligence report and attachments is deficient on its face.

20       **C.    Defendants Failed To Provide Information Showing That The Asserted Work
             Product Protection Is Justified**

21

22       Defendants' log is not "sufficiently detailed and informative to justify" the asserted work

23  product protection. (Dkt. 202 at 3.) The party asserting the work product protection bears the burden

24  of proving that the material withheld is properly classified as work product. *Skynet Elecs.*, 2013 WL

25  6623874, at *2. Defendants have not provided information necessary to determine if they could

26  possibly satisfy that burden.

27       As an initial matter, Defendants have refused to disclose the date and author of the majority of

28  documents listed in the log, contending that such disclosure of dates and authors "would reveal the

work product over which privilege is being asserted." (Ex. 1 at n.**.) Such tautological reasoning is nonsensical on its face and only highlights that these documents – which are described as "file[s] collected from A. Levandowski" – are not work product (or privileged) at all and must be produced. (*See infra* Part III.)

Moreover, with respect to all the documents in the log, Defendants have not disclosed the requisites for asserting the work product protection:

> (1)  Defendants have identified no evidence and have not explained their contention that, at the time the withheld documents were created, there was a substantial probability that litigation would commence.[8]  Indeed, any such contention is belied by Defendants' failure to implement litigation holds to preserve relevant documents until months after the due diligence report was created.  (*See infra*.)

> (2)  Defendants have identified no evidence and have not explained why the due diligence report "would not have been created in substantially similar form but for the prospect of litigation."[9]  An acquirer conducting due diligence of a potential target is a typical business practice independent of the prospect of litigation.  (*See infra*.)

Waymo repeatedly sought explanations of Defendants' work product contentions, but Defendants have not been forthcoming. (Ex. 4; Ex. 5.) Indeed, despite a specific request to produce "retention agreements between Stroz Friedberg and Defendants" (Ex. 8, at RFP No. 2), Defendants have not produced any agreement engaging Stroz Friedberg to conduct the due diligence investigation – an agreement likely to shed light on the purpose of that investigation, the circumstances surrounding it, and the purpose of the resulting report's dissemination.  (*See* Dkt. 202 at 5.)  By refusing to provide such information in their log and in response to specific discovery requests, Defendants have essentially abdicated their burden of establishing work product protection for any entry on the privilege log.

---

[8]  The work product rule does not come into play merely because there is a remote possibility of future litigation.  *See Fox v. California Sierra Fin. Servs.,* 120 F.R.D. 520, 524 (N.D. Cal. 1988).

[9]  *In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004); *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503 (S.D. Cal. 2003) ("In determining whether documents were prepared in anticipation of litigation, the court should consider whether the documents 'would not have been generated but for the pendency or imminence of litigation.'") (quoting *Griffith v. Davis*, 161 F.R.D. 687, 699 (C.D. Cal. 1995)).

What is more, this is not an instance in which Defendants have merely failed to provide the information necessary to support the assertion of the work product protection.  In this case, the evidence shows that Defendants **cannot** meet their burden of establishing the factual predicates for work product protection.  The due diligence investigation occurred between March and August 2016.  (Ex. 1.)  So Defendants contend, as they must, that they were anticipating litigation at that time.  (Ex. 1; Ex. 6 at 2 ("The investigation was performed in anticipation of litigation . . . .").)  Yet Defendants have now conceded that they did not implement any litigation hold to prevent the destruction of relevant documents until after Waymo filed an arbitration demand in October 2016, months after the due diligence investigation was completed.  (Ex. 4, 6 at 3.)  According to authority that Defendants themselves cite, "[t]he duty to preserve documents attaches 'when a party should have known that the evidence may be relevant to future litigation.'"  (Ex. 6 at 3 (quoting *In re Napster Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006).)  Defendants, therefore, simultaneously contend that (1) the due diligence report is entitled to work product protection because it was prepared "in anticipation of litigation" but that (2) Defendants had no obligation to preserve documents because they did not know that any documents "may be relevant to future litigation."  These positions are facially inconsistent.  Either Defendants' failure to take efforts to preserve evidence at the time of the due diligence investigation fatally undermines their assertion of work product protection or Defendants must investigate and describe the spoliation of documents relevant to this case prior to October 2016.[10]

---

[10]   *See PacifiCorp v. Nw. Pipeline,* 879 F. Supp. 2d 1171, 1189-90 (D. Or. 2012) (holding that plaintiff was judicially estopped from taking the position that documents were entitled to work product protection before the plaintiff had a duty to preserve evidence); *Sinai v. State Univ. of N.Y. at Farmingdale,* No. CV09-407, 2010 WL 3170664, at *5 (E.D.N.Y. Aug. 10, 2010) (holding that if litigation was foreseeable "for work product purposes," it was foreseeable for the defendants' "duty to preserve purposes"); *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc., USA,* No. 07-CV-5855, 2010 WL 2652412, at *5 (D. N.J. Jul. 1, 2010) ("Defendants' argument that the duty to impose a litigation hold did not arise until mid–2007 upon the filing of the Paragraph IV certification is also misguided, especially where Defendants' claim privilege with respect to documents from 2006.").

## II.   EITHER THERE IS NO COMMON INTEREST PRIVILEGE OR THE CRIME FRAUD EXCEPTION TO THAT PRIVILEGE APPLIES

Defendants have not clearly specified the nature of the purported common interest privilege that they have now asserted over thousands of documents spanning more than a year, from January 2016 (when Mr. Levandowski was downloading Waymo confidential documents) through August 2016 (when Uber officially acquired Otto) and continuing through February 2017 (when Waymo commenced this action).  Typically, one would ***not*** expect there to be a common legal interest between an acquirer and a potential target while the former is conducting due diligence of the latter in order to determine whether a deal should proceed and on what terms. (*Infra* Part II.A.)  Here, however, it appears that the common interest is being asserted to shield from discovery the misappropriation of Waymo's trade secrets.  (*Infra* Part II.B.)

### A.   Defendants Have Not Satisfied Their Burden To Demonstrate A Common *Legal* Interest In The Context Of A Typical Due Diligence Investigation

Defendants' log asserts a "joint defense" privilege for every document.  A joint defense privilege "protects ***only*** those communications that are part of an on-going and joint effort to set up a common defense strategy." *Holmes v. Collection Bureau of Am., Ltd.,* C 09–02540 WHA, 2010 WL 143484 at *2 (N.D. Cal. Jan. 8, 2010) (emphasis in original).  The proponent of the privilege must show that the parties actually pursued a common legal strategy and that the logged communications were made in furtherance of that strategy.[11]

Defendants contend that they shared a common legal interest when the due diligence report was prepared – *i.e.*, ***before*** Uber's acquisition of Otto.  But the recipients of the report – including counsel for Uber (the acquirer), counsel for Otto (the target), Mr. Levandowski (a co-founder of the target), and Mr. Ron (a co-founder of the target) – typically would not have shared any common legal interest prior to the completion of the acquisition.  Indeed, as a matter of law, the ***legal*** interests of the

---

[11]   *E.g.*, *Holmes*, 2010 WL 143484, at *2; *In re Rivastigmine Patent Litig.*, No. 05 MD 1661 (HB/JCF), 2005 WL 2319005, at *4-*5 (S.D.N.Y. Sept. 22, 2005); *Corning Inc. v. SRU Biosystems, LLC,* 223 F.R.D. 189, 190 (D. Del. 2004) (privilege waived where disclosures were, not made to further joint defense, but to persuade third party to invest in disclosing party).

1    parties to a business deal like this are ***adverse*** such that the same attorneys cannot ethically represent

2    both sides, absent a conflict waiver.[12]  *See* Cal. R. Prof'l Conduct 3-310(c).

3        Further, even an acquirer's ***economic*** interest typically diverges from that of the target's

4    during due diligence.  An acquirer's economic interest is to emphasize any significant risk from future

5    litigation that it would face if it purchased the target, so as to obtain better terms and a lower price.

6    The target's interest, on the other hand, is the exact opposite, namely to downplay any such risk so

7    that it can obtain more favorable deal terms.

8        Accordingly, courts commonly hold that parties to a potential merger or acquisition do not

9    share a common legal interest.  For example, *In re JP Morgan Chase & Co. Securities Litigation*,

10   MDL No. 1783, 2007 WL 2363311 (N.D. Ill. Aug. 13, 2007), found waiver in the context of merger

11   negotiations.  In that case "Defendants' privilege log indicates that various documents for which

12   Defendants claim the attorney-client privilege or the work product doctrine, or both, were shared

13   between Bank One and JP Morgan and their respective outside counsel before and after these two

14   organizations signed the 2004 merger agreement."  *Id*. at *2.  The court held that, prior to the

15   completion of the merger, Bank One and JP Morgan did ***not*** share a common legal interest, reasoning:

16            Fundamentally, the Court does not understand how Bank One and JP Morgan can be
             said to share a common legal interest prior to their signing the merger.  Prior to the
17            merger, these organizations stood on opposite sides of a business transaction. From a
             business standpoint and from a legal standpoint, the merger parties' interests stood
18            opposed to each other.  They had no common interest, and indeed, their interests were
             in conflict-each company wanted to get the best deal from the other company, and to
19            the extent that one succeeded in its goal, the other suffered.  The Court is also
             persuaded that JP Morgan's and Bank One's pre-merger interests are at odds in light of
20            the practical implications of Defendants' argument.  If Defendants' argument holds
             true, nothing would prevent a single attorney from representing both the buyer and the
21            seller in a real estate transaction, for example.  The reason such a situation does not
             occur-and is most likely ethically prohibited-is that the buyer and seller maintain
22            opposite legal positions with respect to the transaction.  With this in mind, the Court
             does not see how Bank One and JP Morgan can share a common legal interest prior to
23            the signing of the merger agreement.  At most, the companies had a similar business
24

25   _____

26      [12]   The joint defense/common interest doctrine has its origins where one attorney acts for two
     clients.  The doctrine, therefore, has little application where, as here, a single attorney or firm would
27   be ethically barred from representing the members of the "joint defense" group with respect to the
     contemplated transaction.

28

interest, in that each desired the merger negotiations to come to fruition. But even if JP Morgan and Bank One had a similar business interest, a common legal interest is required, and the Court cannot conclude from the existence of a common business interest that the parties' legal interests were identical.

*Id.* at *5[13].

Here, if Defendants are contending that a typical due diligence process took place, in which Uber evaluated Otto at arms-length in order to inform its position with respect to a potential deal, Defendants cannot establish a common legal interest to support their assertion of a common interest privilege.

### B.   Defendants' Only Shared Interest Was In Concealing Trade Secret Misappropriation, Demonstrating That The Crime-Fraud Exception Applies

To the extent there ***was*** any shared common legal interest among those who received copies of the due diligence report, that interest could only have been in jointly concealing the theft of Waymo's trade secrets. Thus, to the extent the Court concludes that Defendants can meet their burden of proving that the due diligence report is privileged or protected, it should nevertheless be produced pursuant to the crime-fraud exception.

"Under the crime-fraud exception, communications are not privileged when the client 'consults an attorney for advice that will serve him in the commission of a fraud' or crime." *In re Grand Jury Investigation*, 810 F.3d 1110, 1113 ( 9th Cir. 2016) (quoting *In re Napster, Inc. Copyright Litig.,* 479 F.3d 1078, 1090 (9th Cir. 2007)); *see also Roe v. White*, No. 03-cv-4035, 2014 WL

---

[13]   *See also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579 (N.D. Cal. 2007) (holding that the joint defense doctrine did not apply to communications between a company and potential purchasers of that company); *Libbey Glass v. Oneida, Ltd.*, 197 F.R.D. 342, 348 (N.D. Ohio 1999) (rejecting application of the common interest doctrine to communications shared in course of joint business venture because "[t]he parties were formulating not a 'common legal' strategy, but a joint commercial venture"); *Bank Brussels Lambert v. Credit Lyonnais*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) (denying party's attempt to invoke the common interest doctrine in context of joint commercial transaction because there no evidence of a "coordinated legal strategy" between the parties); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 141 (N.D. Ill. 1993) ("A fundamental prerequisite to a use of the common interest doctrine is that the interest involve more than just business matters."); *Oak Indus. v. Zenith Indus.,* No. 86 C 4302, 1988 WL 79614, at *4 (N.D. Ill. July 27, 1988) ("declin[ing] to expand the coverage of the attorney-client privilege to information which a party freely shares with other business persons").

842790, at *2 (N.D. Cal. Feb. 28, 2014) (crime-fraud exception also applies to work product).  To

invoke the crime-fraud exception, the movant must satisfy a two-part test:

> First, the party must show that "the client was engaged in or planning a criminal or
> fraudulent scheme when it sought the advice of counsel to further the scheme."
> Second, it must demonstrate that the attorney-client communications for which
> production is sought are "sufficiently related to" and were made "*in furtherance of*
> [the] intended, or present, continuing illegality."

*Id.* (emphasis added) (quoting *Napster*, 479 F.3d at 1090).

Trade secret theft is a crime, Cal. Penal Code § 499c, and can provide the basis for the

application of the crime-fraud exception, *Jasmine Networks, Inc. v. Marvell Semiconductor, Inc.*, 12

Cal. Rptr. 3d 123 (Cal. App. 6th Dist. 2004), *as modified on denial of reh'g*, (Apr. 29, 2004) and

*review granted and opinion superseded on other grounds*, 94 P.3d 475 (Cal. 2004).  And there is

substantial evidence that Defendants and Mr. Levandowski were engaged in or planning a crime.  As

the Court has summarized, Waymo has submitted evidence that, before the due diligence report was

prepared in August 2016:

> [N]on-party Anthony Levandowski downloaded over 14,000 files containing its trade
> secrets and proprietary information pertaining to self-driving cars to his company-
> issued laptop, transferred them to a portable storage device, wiped the laptop clean,
> then promptly left his position at Waymo with the downloads to start his own
> competing autonomous-vehicle ventures, defendants Ottomotto LLC and Otto
> Trucking LLC.  Shortly thereafter, defendant Uber Technologies, Inc., acquired the
> new ventures for $680 million.  Uber then quickly progressed in its own development
> of competing self-driving vehicles.

(Dkt. 202 at 1; *see also* Dkt. 24.)

Further, Mr. Levandowski has asserted the Fifth Amendment privilege against self-

incrimination to avoid disclosing whether he was even "aware of the existence of a due diligence

report."  (Dkt. 273 at 17 & 43.)  When Mr. Levandowski was asked why Uber would not want to

share with the Court a due diligence report that provided "a clean bill of health on Otto," he pleaded

the Fifth Amendment again.  (*Id*. at 46).  In fact, Mr. Levandowski apparently contends that answering

any questions about the report could expose him to criminal prosecution.  The Court may infer from

these invocations of the Fifth Amendment that Mr. Levandowski and Defendants had a common

interest in planning, engaging in, or concealing the misappropriation of Waymo's trade secrets.  *See*

*Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 428 (S.D.N.Y. 2013) ("Courts have drawn such an

inference when determining if the crime-fraud exception applies to evidence protected by the attorney-client privilege or work product doctrine."); *S.E.C. v. Herman*, No. 00Civ.5575, 2004 WL 964104, at *6-7 (S.D.N.Y. May 5, 2004) (similar); *see also United States v. Saccoccia,* 898 F. Supp. 53, 62 (D.R.I. 1995) (stating that a claim of attorney-client privilege is logically inconsistent with a Fifth Amendment claim over the same information because the crime-fraud exception would vitiate the attorney-client privilege).

There is also substantial evidence that the withheld due diligence report is related to and in furtherance of at least concealing that trade secret theft.  Defendants' privilege log states that the report is based on an analysis of "information ascertained from A. Levandowski" and "electronic media collected from A. Levandowski" (Ex. 1) – information and media that Mr. Levandowski is refusing to produce on Fifth Amendment grounds.   Indeed, as the Court recently observed: "Evidently, some or all of the 14,000-plus files downloaded from Waymo were then disclosed to the third party [author of the due diligence report] or to Uber, although that is an interpretation of the circumstances and not a direct admission."  (Dkt. 202 at 2.)  The Court may draw such an inference based on Mr. Levandowski's invocation of the Fifth Amendment (Dkt. 273 at 11-12, 17, 31, 43-47; Dkt. 147).  *See Amusement Indus.*, 293 F.R.D. at 428; *Herman*, 2004 WL 964104, at *7; *Saccoccia,* 898 F. Supp. at 62.

To the extent Defendants continue to assert that there was a common interest at the time of the due diligence investigation, that common interest was – at a minimum – to hide Defendants' misappropriation of Waymo's trade secrets.  In such a circumstance, any common interest "privilege" should be pierced pursuant to the crime-fraud exception.

### III.   THE COURT SHOULD COMPEL PRODUCTION OF THE "ATTACHMENTS" TO THE REPORT (ENTRIES 13-16 AND 18-42) AND ANY OF MR. LEVANDOWSKI'S DOCUMENTS OR FORENSIC DATA IN THE POSSESSION OF STROZ FRIEDBERG

Defendants' privilege log asserts work product protection over entries 13-16 and 18-42, which it describes as "attachments" to the due diligence report.  The only apparent basis for the assertion of work product protection over these "attachments" is that the "[s]election of documents for inclusion in report reflects thought process of investigators retained to perform investigation."  (*See* Ex. 1 at entries

13-16 & 18-42.)  Defendants do not contend that the **contents** of these attachments contain any attorney work product or that these attachments were drafted by an attorney or anyone working at an attorney's direction (indeed, Defendants have provided neither the author nor the date of these attachments).  Instead, Defendants contend that producing these attachments could reveal what Stroz Friedberg thought were appropriate documents to attach to the report.  Defendants' position, in short, is that if a third-party working at an attorney's direction deems a document significant enough to attach to a report, and the report was prepared at the direction of an attorney, then the attached document can forever be shielded as the attorney's work product.  Defendants' position fails as a matter of law.

The mere fact that an attorney (or a person working at an attorney's direction) selects documents to attach to a memorandum does not render those attachments work product, even if the memorandum is itself work product.  *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999) ("As to documents subject to the attorney-client privilege or work product doctrine, the plaintiffs are correct in contending that not all attachments to, or enclosures with, such documents are necessarily protected by the privilege.").  Instead, the party claiming the privilege must show that the attached document is independently protected.  *See id.* ("Rather, to claim the attorney-client privilege or work product doctrine for an attachment to, or enclosure with, another privileged document, the attachment or enclosure must be listed as a separate document on the privilege log; otherwise, such attachment or enclosure must be disclosed.").  Defendants have made no such showing here, affirmatively choosing instead to withhold the date and author of the attachments (which would presumably show that they were authored by Waymo employees prior to Mr. Levandowski's departure from Waymo).  There is no basis for Defendants to withhold the attachments to the due diligence report, and those attachments should be produced.

Moreover, the Court should require Defendants to produce **all** documents and forensic data that Stroz Friedberg received from Mr. Levandowski.  Stroz Friedberg was purportedly Uber's agent in the due diligence process and is Uber's agent in this litigation.  Documents held by Stroz Friedberg are therefore within Uber's control.  *Allen v. Woodford,* No. 05-1104, 2007 WL 309945, *2 (E.D. Cal. Jan. 30, 2007) ("'Control' may be established by the existence of a principal-agent relationship.").

Uber should have produced any and all of Mr. Levandowski's information, files, and media that remain in the possession of Stroz Friedberg in response to this Court's March 16 expedited discovery Order. In the alternative, Uber should have provided a statement regarding the extent to which such materials have been deleted, destroyed, or modified by Stroz Friedberg, as also required by the March 16 Order.[14]   Uber must do one of these two things now.

## IV. THE COURT SHOULD COMPEL PRODUCTION OF ALLEGED WORK PRODUCT DUE TO WAYMO'S SUBSTANTIAL AND COMPELLING NEED

Defendants assert work product protection over every document on their privilege log. Even assuming, *arguendo*, that Defendants' assertion is correct, the Court should nevertheless order production of these documents. The Court may order production of ordinary work product if there is a substantial need for the information and an inability to obtain the substantial equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3)(A) (attorney work product materials may be produced if they are discoverable under Rule 26(b)(1) and a party "has [a] substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means"). If the materials sought are opinion work product then the Court may compel discovery if there is a compelling need for the information. *Holmgren v. State Farm Mutual Auto Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). Here, there is a substantial and compelling need and undue hardship.[15]

First, these standards are met to the extent Defendants contend they do not have or cannot produce the underlying, factual exhibits that are attached to the Due Diligence Report (Ex. 1, entries

---

[14]   To the extent Stroz Friedberg no longer has copies of such information, files, and media, an adverse inference will be appropriate due to spoliation. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("[A] trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior.").

[15]   Defendants' log fails to state whether they contend that these documents are ordinary work product or opinion work product. Because the authors of the due diligence report are not attorneys, the Court should deem the Report to be ordinary (not opinion) work product. This is especially true as to entries 13-16 & 18-42, which are attachments to the Report that Uber claims work product over simply because they were "select[ed] for inclusion" and not because they contain any opinions. To the extent the Court believes resolution of the issues raised turns on whether any withheld document is "opinion" as opposed to "ordinary" work product, or whether the record as it stands does not warrant production, Waymo respectfully requests that the Court review the withheld documents *in camera*.

1   13-16 & 18-42).  As noted elsewhere in this Motion, Defendants assert that these documents are work

2   product, not because they were drafted by an attorney or their contents contain any attorney opinion,

3   but instead solely because they were "select[ed] . . . for inclusion" as attachments to the report.

4   Waymo disagrees that this assertion renders these documents work product, but to the extent the Court

5   adopts Defendants' position and Defendants contend they no longer possess versions of these

6   documents that were not attached to the report, Waymo has a substantial and compelling need for

7   production.  The failure to produce these documents would potentially leave no other source for them,

8   working an undue hardship on Waymo.

9        Second, Mr. Levandowski's assertion of his Fifth Amendment privilege creates a substantial

10   and compelling need for production.  The documents Defendants are withholding are all part of a due

11   diligence report that apparently relates to Mr. Levandowski's downloading of thousands of

12   confidential Waymo files.  During his deposition, Mr. Levandowski invoked the Fifth Amendment

13   and refused to answer questions concerning his negotiations with Uber (Dkt. 273 at 11-12), his

14   formation of Otto (*id.* at 12-13), his plan to replicate Google's LiDAR technology at Otto and Uber

15   (*id.* at 13-14), his taking of confidential documents and the use of those documents at Otto and Uber

16   (*id.* at 14-15 & 20), and his discussions with Uber concerning use of Google's confidential

17   information at Otto and Uber (*id.* at 18-19 & 22-26), among countless other topics.   Mr.

18   Levandowski's refusal to answer the vast majority of questions at his deposition means that Waymo's

19   ability to investigate Defendants' misappropriation of Waymo's trade secrets is hampered.

20   Defendants' withheld due diligence report likely contains information that is responsive to many of

21   the questions Mr. Levandowski refused to answer.  Indeed, the withheld report may be the only source

22   of much of this information.  Under these circumstances, courts have often found a substantial need

23   justifying disclosure of alleged work product.[16]   The Court should do likewise here and order

24   production.

25   _____

26       [16]   *See In re John Doe Corp.*, 675 F.2d 482, 492 & n.10 (2d Cir. 1982) (substantial need
     shown where "potential witnesses have invoked the privilege against self-incrimination"); *In re*
27   *Vitamins Antitrust Litig.*, No. 99-197, 2003 WL 1867908, at *1 (D.D.C. Jan. 24, 2003) (district court
     found a substantial need where "witnesses whose testimony was recorded in the materials have now

28

## V.   THE COURT SHOULD ORDER DISCOVERY CONCERNING DEFENDANTS' PRIVILEGE AND WORK PRODUCT ASSERTIONS

The Court's April 25, 2017 Order (Dkt. 271) directed the parties to "address the possibility that discovery into the predicates for any privilege be allowed." Waymo believes that no further discovery is necessary because the withheld documents should be produced for the reasons stated. To the extent the Court believes the record is not already sufficient to grant Waymo's Motion, however, Waymo respectfully requests the opportunity to take the following discovery[17]:

First, Defendants should be required to make a knowledgeable witness available for a Rule 30(b)(6) deposition on Defendants' privilege log, the basis for any claimed privileges or protections, the sharing of the withheld documents among Defendants and with third parties, and efforts to maintain the confidentiality of the withheld documents.

Second, Defendants should be required to produce any and all agreements with Stroz Friedberg, as Waymo already requested.

Third, Waymo should be permitted to take a Rule 30(b)(6) deposition of Stroz Friedberg regarding the circumstances surrounding its analysis of Mr. Levandowski's files and electronic media, the dissemination of the due diligence report, and its preparation of the due diligence report.

Fourth, Defendants should make available for deposition any witnesses that provide declarations in opposition to this Motion.

Fifth, the Court should require Defendants to serve a revised privilege log that corrects the deficiencies identified in this Motion.

At that point, Waymo should be permitted to supplement the record regarding evidence that further supports this Motion.

---

asserted their Fifth Amendment rights"); *In re Crazy Eddie Sec. Litig.*, No. 87-cv-33, 1991 WL 17287, at *1 (E.D.N.Y. Jan. 28, 1991) (finding that movant had demonstrated a substantial need where third party "witnesses have either invoked their Fifth Amendment privilege and not answered the questions or they have invoked the work product privilege to avoid answer the questions posed").

[17]   Like depositions conducted during the preliminary injunction phase of this case, the depositions described herein should not count toward Waymo's overall deposition limit.

1

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should order Uber to produce (i) the withheld due diligence report and attachments and (ii) all documents and media in the possession of Stroz Friedberg that are responsive to the Court's March 16 Order (or, alternatively, a statement regarding the extent to which such materials have been deleted, destroyed, or modified by Stroz Friedberg).

DATED:  May 1, 2017                                QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Charles K. Verhoeven*
        Charles K. Verhoeven
        Attorneys for WAYMO LLC