# Exhibit 5

| | |
|---|---|
| **From:** | John Neukom |
| **Sent:** | Sunday, April 23, 2017 5:59 PM |
| **To:** | 'John Cooper'; Matthew Cate |
| **Cc:** | QE-Waymo; Gonzalez, Arturo J.; UberWaymo; BSF_EXTERNAL_UberWaymoLit@bsfllp.com |
| **Subject:** | Waymo v. Uber - Uber's Deficient Privilege Log |
| **Attachments:** | 2017 04 23 Neukom Letter to Cooper re Deficiencies in Uber Privilege Log.pdf |

Dear John,

Please find attached a letter regarding the deficiencies in Uber's privilege log. As noted in the letter, we believe these privilege log issues should also be addressed by Magistrate Judge Corley.

Thank you,
Jay

**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

April 23, 2017

V<small>IA</small> E-M<small>AIL</small>

John Cooper, Esq.
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
jcooper@fbm.com

Re:     Waymo LLC v. Uber Technologies, Inc., et al., N.D. Cal. Case No. 3:17-cv-00939-WHA
        **Uber's Deficient Privilege Logs**

Dear John:

When we discussed Uber's privilege logs during Thursday's meeting, you requested we provide a list of the various deficiencies in Uber's logs, as well as examples of such deficiencies.  Pursuant to that request, Waymo details some of the numerous respects in which Uber's privilege logs are deficient and improper below. Given the number of fundamental problems with Uber's logs and Uber's delay in addressing the logs' deficiencies, Waymo needs to raise these issues with Magistrate Judge Corley as soon as possible.

**Uber's Logs Fail to Identify the Purported Common Interest or Anticipated Litigation.**

Uber fails to describe the basis for the common interest purportedly furthered by the communication or document described, there is no information regarding the purported anticipated litigation that would support any assertion of the work product privilege, and the description of the "subject matter" of each communication/document appears to be cut-and-pasted boilerplate rather than tailored to each document's content.  For example, entries nos. 1-3 are dated November 9-10, 2016, which is several months after Uber acquired Otto in August 2016.  Nonetheless, Uber describes  the purportedly privileged communication (as it does many others) as made "for the purpose of obtaining or giving legal advice, in **anticipation of litigation**, regarding **due diligence** for **potential acquisition** of Ottomotto."  (emphasis added).  This statement cannot be true; the can be no so-called due diligence for a "potential acquisition" of Otto several months **after** the acquisition. Additionally, the subject matter of the purportedly "anticipated" litigation and the common interest is important because some subject matters may (hypothetically) be covered by a

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

01980-00104/9215079.1

common interest, whereas others – such as Levandowski's theft of 14,000+ files – are not within the scope of the doctrine.  Worse, Uber alleges that an oral joint defense agreement ("JDA") covered communications prior to the April 2016 JDA that Levandowski attached to his motion, but cannot identify when – or among whom – the agreement was made to cover any communications allegedly made pursuant to the oral JDA.  Nor did Uber apparently institute a litigation hold when it was allegedly anticipating litigation, indicating that there may not have been any anticipated litigation (the duty to preserve evidence attaches when "a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *ILWU-PMA Welfare Plan Board of Trs. & ILWU-PMU Welfare Plan v. Conn. Gen. Life Ins. Co.*, No. C 15-02965 WHA, 2017 WL 345988, at * 4 (N.D. Cal. Jan. 24, 2017)).  In any event – and at base – Uber was required to identify the common interest attaching to these communications, and failed to do so.  *Holmes v. Collection Bureau of America, Ltd.*, No. C 09-02540 WHA, 2010 WL 143484, at *2 (N.D. Cal. Jan. 8, 2010); *In re Rivastigmine Patent Litig.*, No. 05 MD 1661 (HB/JCF), 2005 WL 2319005, at *4-*5 (S.D.N.Y. Sept. 22, 2005).

### Uber Improperly Fails to Specify Which Individuals Sent or Received Communications.

With respect to some entries, multiple law firms are listed in the "sent by / author" column or the "recipients" column.  For example, entries nos. 342-45 list four different law firms as the "sent by / author" of purportedly privileged communications, but fails to identify any people who created or sent the communication.  Similarly, as another example, entries nos. 2415-18 list four law firms as the "Recipient" of the allegedly privileged information, but does not specify which people received such purportedly privileged communication.  Uber's entries fail to comply with Judge Alsup's requirement that the logs list "all *persons* making or receiving the privileged or protected communication."  Alsup Standing Orders, Paragraph 16(a) (emphasis added).  Without knowing who received allegedly privileged communications, Waymo is unable to determine whether privilege has been waived (or even properly asserted in the first place).

### Uber's Privilege Logs Do Not Identify Who Made Allegedly Privileged Communications.

Uber's privilege log entries improperly describe logged documents as communications by one person "and/or" another.  For example, entries nos. 387-89 describe the subject matter of the document as "reflecting communication made in confidence by An[t]hony Levandowski, Lior Ron, Don Burnette, Soren Juelsgaard, and/or Colin Sebern."  Not only does this description fail to comply with Paragraph 16 of Judge Alsup's standing orders, but it also fails to describe which – if any – of the five listed individuals made the communication.  Waymo needs this information to test Uber's assertion of privilege; for example, it is not clear whether Mr. Sebern – as an Otto engineer – made any communications protected by the attorney-client privilege (as the privilege is applied to corporations).

### Uber Fails to Identify the Documents' Custodian(s).

Uber does not identify the custodians listed in the logs.  For example, every entry on Uber's second supplemental privilege log lists "Uber" as the custodian.  *See, e.g.*, Entries Nos. 1-3.  Listing "Uber" is not sufficient for Waymo to determine whether privilege has been maintained over the document, and fails to comply with Paragraph 16(b) of Judge Alsup's standing orders that require Uber to identify "steps taken to ensure the confidentiality of the communication[.]"  We

understand from Ms. Rivera's April 19 email that Uber will serve a supplemental privilege log that provides this information, but Uber has still given *no* indication as to *when* the long-overdue log will be served.

### Uber's Improper "Cut-and-Paste" Assertions of Privilege.

Uber asserts privilege for most (if not all) entries on the basis of attorney-client ("AC"), work product ("WP"), and common interest ("CI") privileges.  In some instances, it is clear that at least some of the interests are inapplicable.  For example, entry no. 23 asserts "AC, WP, & CI" with regard to a document described as a "[s]preadsheet prepared by consultant jointly retained by counsel."  It seems apparent that a document "prepared by consultant" (who remains unidentified but who we understand is not a lawyer or law firm) could not be protected by the "AC" privilege. The problem is that Uber's broad assertion of each type of privilege for every entry, combined with what little information Waymo does have, means that Waymo cannot "assess the claim" of privilege. Fed. R. Civ. P. 26(b)(5).

### Uber's "Morrison & Foerster" Log Omits Allegedly Privileged Documents.

The so-called "Morrison & Foerster" privilege log does not list all privileged communications up to the date of the filing of Waymo's complaint.  Uber's counsel stated she should know by yesterday (April 21) when Uber would be able to remedy this error, but we have yet to receive a supplemental privilege log or an indication of when we can expect a supplemental log.  This issue is important because Waymo must be able to determine whether the assertion of privilege over relevant documents is proper, and cannot do so if such entries are kept secret from Waymo.

### Mr. Gonzalez Has Failed to Explain How Uber's Logs Are "Over-Inclusive."

Mr. Gonzalez indicated that defendants' logs are over-inclusive with respect to email "families" – i.e., that some logged communications are not privileged at all or in part.  Uber's counsel could not explain what Mr. Gonzalez meant during the parties' meet-and-confer.  We await Uber's response as to what Mr. Gonzalez meant by this statement.  We would, furthermore, appreciate confirmation that Uber produced document families where Uber was claiming privilege over only portions of the document and/or family (with only said portions redacted or withheld).

Sincerely,

*/s/ John Neukom*
John Neukom

cc:      Matthew Cate; Counsel for Uber/Otto

01980-00104/9215079.1

3

01980-00104/9215079.1