# Exhibit 6

MORRISON | FOERSTER

707 WILSHIRE BOULEVARD
LOS ANGELES
CALIFORNIA 90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.45454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS, DENVER,
HONG KONG, LONDON, LOS ANGELES,
NEW YORK, NORTHERN VIRGINIA,
PALO ALTO, SACRAMENTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

April 25, 2017

Writer's Direct Contact
+1 (213) 892-5734
SRivera@mofo.com

Via Email

John Neukom, Esq.
Quinn Emanuel
50 California Street, 22nd Floor
San Francisco, California 94111-4788

Re:  Waymo's April 23, 2017 Letter Regarding Uber's Privilege Logs

Dear Jay:

This letter responds to the issues raised in Waymo's April 23, 2017 letter to Special Master John Cooper regarding alleged "deficiencies" in Uber's privilege logs.

Uber shared a common interest with Ottomotto and its founders regarding the anticipated possibility of joint litigation with Google.

Uber, Anthony Levandowski, Lior Ron, Ottomotto LLC, and Otto Trucking LLC entered into a joint defense, common interest, and confidentiality agreement ("JDA"). The common legal issues being addressed by the parties related to possible legal claims by Google. Given that Ottomotto's founders were ex-Google employees and that Uber and Google are the top players in the autonomous vehicle market, the parties thought it was possible that Google would initiate some form of legal action against one or more of the parties to the acquisition. We now know that at the same time that the JDA was signed, Google was in fact investigating Mr. Levandowski. Given that fact, and the three legal proceedings that Google and Waymo have commenced, the parties' concerns obviously were well-founded.

Counsel for the parties to the JDA jointly retained a consultant to perform an investigation to assist counsel in providing legal advice in regard to potential future litigation with Google. While some of the communications on the privilege logs predate the written copy of the JDA, Ninth Circuit law is clear that a JDA does not need to be written to be effective. *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) (holding that in order for the common interest doctrine to apply the disclosure needs to be made pursuant to "a joint strategy in accordance with some type of agreement—*whether written or unwritten*.")

sf-3762144

MORRISON | FOERSTER

John Neukom, Esq.
April 25, 2017
Page Two

Courts also routinely recognize that parties to a potential merger have a common legal interest in sharing privileged communications. *See, e.g. Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987); *Rembrandt Patent Innovations, LLC v. Apple Inc.*, No. C14-05094 WHA, 2016 U.S. Dist. LEXIS 13749, at *26 (N.D. Cal. Feb. 4, 2016) (finding a common legal interest between inventors and a potential purchaser of a patent once it had obtained an exclusive option to purchase) (Alsup, J.); *see also Morvil Tech., LLC v. Ablation Frontiers, Inc.*, No. 10-cv-2088-BEN (BGS), 2012 U.S. Dist. LEXIS 30815, at *9 (S.D. Cal. Mar. 8, 2012) (finding common interest was satisfied when two companies were contemplating the wholesale acquisition of one by the other; "[t]he legal interests were aligned as both parties were committed to the transaction and working towards its successful completion."); *FTC v. AbbVie, Inc.*, No. 14-5151, 2015 U.S. Dist. LEXIS 166723, at *36-37 (E.D. Pa. Dec. 14, 2015)(finding a common interest in litigation (or potential thereof) once the parties had an agreement in principle to merge).

Waymo's complaints about the sufficiency of Uber's identification of the parties' common interest lack merit. First, Waymo's complaint that Uber failed to describe the basis for the common interest is patently incorrect. Almost all of the privilege log entries contain a separate "common interest" description denoting whose confidential information is being protected.[1] Second, Waymo's complaint that some communications—such as communications regarding the alleged 14,000 documents—may not be covered by the common interest is likewise incorrect. The investigation was performed in anticipation of litigation and was "part of an on-going and joint effort to set up a common [litigation] strategy[.]" *Rembrandt*, 2016 U.S. Dist. LEXIS 13749, at *23-24. There can be no question that the common interest privilege applies here. *See, e.g., Bausch & Lomb*, 115 F.R.D. at 310-11(finding that if the prospective buyer obtained the product, the parties could be expected to conduct joint defense on all liability issues if the competitor brought suit).

Waymo's complaint that the descriptions are insufficient "boilerplate" is also groundless. First, the subject matter of the privilege logs is very narrow, so the fact that many entries share the same description is not surprising. The communications and documents on the logs were generated in connection with Uber's acquisition of Otto and their joint anticipation of potential litigation with Google. Second, the common interest descriptions demonstrate that each document was reviewed and tailored to the document's content. Third, Waymo identifies no authority requiring a precise description of the anticipated litigation. Indeed, Waymo's own log entries do not provide *any* specificity regarding the subject matter or the subject of "the purported anticipated litigation." *See, e.g.,* 20170410 Waymo Privilege Log, Entry 1 ("Document prepared at the direction and reflecting legal advice of counsel in

---

[1] For the limited number of log entries that do not contain a separate "common interest" description, the privilege descriptions for those entries clearly state the basis for the application of the common interest doctrine.

sf-3762144

MORRISON | FOERSTER

John Neukom, Esq.
April 25, 2017
Page Three

anticipation of litigation"); *id.*, Entry 2 ("Email seeking and containing legal advice of counsel re legal dispute prepared in anticipation of litigation.")

As to Waymo's specific objections to entries 1 through 3, the descriptions are accurate. They are emails concerning legal analysis or advice that were prepared in anticipation of litigation with Google and the emails refer to the due diligence that was conducted in connection with the Otto acquisition. That the acquisition had been consummated as of the date of the email does not change the purpose of the due diligence. Moreover, the consummation of the acquisition as of the date of the email weighs in favor of the privilege—not against it.

Lastly, that Uber and Otto conducted an investigation into potential claims in anticipation of *possible* litigation with Google did not trigger any obligation to institute a legal hold. The prospect of litigation must be *probable* for the duty to preserve to attach. *See In re Napster Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) ("The duty to preserve documents attaches 'when a party should have known that the evidence may be relevant to future litigation.'" (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)); *id.* ("The future litigation must be 'probable,' which has been held to mean 'more than a possibility.'" *Id.* (quoting *Hynix Semiconductor Inc. v. Rambus, Inc.*, 2006 U.S. Dist. LEXIS 30690 at 57 (N.D. Cal. 2006) (Whyte, J.).). Courts have recognized that litigation is *probable* when an entity has received a threat of litigation. *See, e.g., In re Napster Litig.*, 462 F. Supp. 2d at 1069 (finding verbal threat to sue if party did not comply with injunction sufficient to trigger preservation duties); *see also Apple v. Samsung*, 888 F. Supp. 2d 976, 990-91 (N.D. Cal. 2012) (finding that a presentation regarding infringement claims between "business partners" put the accused infringer on notice of its need to preserve documents). Waymo's authority is not to the contrary. In *ILWU-PMA Welfare Plan Board of Trustees and ILWU-PMU Welfare Plan v. Connecticut General Life Insurance Company*, this Court recognized a duty to preserve documents only after the parties had entered into a tolling agreement regarding potential claims. 2017 WL 345988, at *4. In contrast, Uber was not put on notice of any *probable* claims until Google's arbitration demands—at which time Uber promptly instituted a legal hold.

<u>Uber properly specifies who authored and received communications.</u>

Waymo complains that certain entries contain multiple law firms as the author of certain documents. As to entries 342-45, these documents were authored and revised by lawyers from all four law firms who were parties to the JDA. While Uber is willing to supplement the log with individual lawyer names where such names are discernible, this additional detail seems unnecessary for Google to evaluate the privilege. As the privilege log makes clear, the documents were created with input and revisions from the joint defense group, and shared only with the joint defense group. As to entries 2415-18, these documents are clearly identified as attachments to the investigative report, which was jointly commissioned by the

sf-3762144

MORRISON | FOERSTER

John Neukom, Esq.
April 25, 2017
Page Four

parties through their counsel who are listed as recipients of the report. Again, while Uber is willing to supplement with individual lawyer names within the firms, this level of detail is simply unnecessary to determine the nature of the privilege.

Uber properly identifies who made the privileged communications.

That the confidential information giving rise to a privilege pertains to one or more of the individuals identified in the log entries is sufficient for Waymo to evaluate the privilege. Any communications made by Don Burnette, Soren Juelsgaard, or Colin Sebern would be covered by Ottomotto's attorney-client privilege, as they were aware they were providing information for their employer to obtain legal advice. *Upjohn v. U.S.*, 449 U.S. 383, 390, 395 (1981) (finding communications between counsel and employees covered by the attorney-client privilege where the communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice"); *Rembrandt*, 2016 U.S. Dist. LEXIS 13749, at *15 ("the [attorney-client] privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.") (quoting *Upjohn*, 449 U.S. at 390).

Custodian

As noted in Waymo's letter, Uber will supplement its Second Supplemental privilege log with additional custodian information. Uber was hopeful the parties could first resolve as many issues as possible so that Uber would not have to produce multiple iterations of the log.

Uber's privilege assertions are proper.

As discussed *supra*, due to the narrow scope of the privilege log, it is unsurprising that the privilege calls are the same. Most (if not all) of the entries pertain to an investigation that was done because of possible litigation by Google, *e.g.*, covered by the work product doctrine. The investigation involved obtaining information from employees for the purpose of rendering legal advice, *e.g.*, covered by the attorney client privilege. Moreover, since the investigation was commissioned jointly so that the parties could assess their litigation risk, the information was shared with the JDA members, *e.g.*, covered by the common interest doctrine. With regard to Waymo's specific challenge to the entries regarding the spreadsheet prepared by the consultant, it is entitled to attorney-client privilege because the consultant was retained to obtain information from the clients for the purpose of providing legal advice, and the spreadsheet reflects confidential attorney-client communications. *U.S. v. Christensen*, 828 F.3d 763, 802 (9th Cir. 2016) (holding that "a communication from the attorney to a third party acting as his agent [and vice versa] for the purpose of advising and defending his clients" may be protected by the attorney client privilege.)

sf-3762144

MORRISON | FOERSTER

John Neukom, Esq.
April 25, 2017
Page Five

Uber plans to supplement the "Morrison & Foerster" Log This Week.

We have worked diligently to provide an updated privilege log that covers Morrison & Foerster LLP's communications for the period after Google commenced the arbitrations in October 2016, but prior to the filing of Waymo's complaint in this litigation. Uber anticipates producing this log on Thursday.

Uber's privilege log contains non-responsive but privileged family members

With regard to emails and their attachments ("email families"), where at least one of the documents was responsive we typically treated the whole family as responsive. This resulted in non-responsive cover emails or non-responsive email attachments being included on the log if any of their "email family members" were responsive and logged. Regardless, the non-responsive documents are entitled to the privileges set forth in the log. We have not withheld non-privileged responsive documents.

Sincerely,

/s/

Sylvia Rivera

sf-3762144