# EXHIBIT 66
# FILED UNDER SEAL

ATTORNEYS EYES ONLY

1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3                      SAN FRANCISCO DIVISION

4                           ---oOo---

5

6    WAYMO LLC,

7          Plaintiff,

8    vs.                              No. 3:17-cv-00939-WHA

9    UBER TECHNOLOGIES, INC.;

     OTTOMOTTO LLC; OTTO TRUCKING,

10   INC.,

11         Defendants.

     _____/

12

13

14                   ATTORNEYS' EYES ONLY

15

16      VIDEOTAPED DEPOSITION OF ANTHONY LEVANDOWSKI

17               SAN FRANCISCO, CALIFORNIA

18                  FRIDAY, APRIL 14, 2017

19

20

21

22   BY:  ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~

23   CSR LICENSE NO. 9830

24   JOB NO. 2594023

25   Pages 1 - 184

                                              Page 1

ATTORNEYS EYES ONLY

```
 1          UNITED STATES DISTRICT COURT
 2         NORTHERN DISTRICT OF CALIFORNIA
 3            SAN FRANCISCO DIVISION
 4                ---oOo---
 5 WAYMO LLC,
 6      Plaintiff,
 7 vs.                    No. 3:17-cv-00939-WHA
 8 UBER TECHNOLOGIES, INC.;
   OTTOMOTTO LLC; OTTO TRUCKING,
 9 INC.,
10      Defendants.
   _____/
11
12       Videotaped Deposition of Anthony
13 Levandowski, taken on behalf of the Plaintiffs, on
14 April 14, 2017, at Quinn Emanuel Urquhart &
15 Sullivan, 50 California street, Suite 2200,
16 San Francisco, California 94111, beginning
17 9:05 a m., and commencing at 3:13 p m., Pursuant
18 to Notice, and before me, ANDREA M. IGNACIO, CSR,
19 RPR, CRR, CLR ~ License No. 9830.
20
21
22
23
24
25
                                          Page 2
```

```
 1 A P P E A R A N C E S: (Cont.)
 2
 3   FOR THE DEFENDANTS:
 4      MORRISON & FOERSTER LLP
 5      By:  WENDY RAY, Esq.
 6      707 Wilshire Boulevard, Suite 6000
 7      Los Angeles, California 90017
 8      Phone:  213.892.5446
 9      wray@mofo.com
10
11
12   ALSO PRESENT:  Nicole T. Bartow, Uber
13      Shana Stanton, Waymo Inc.
14      Jeffrey Anderson, Videographer
15
16            ---oOo---
17
18
19
20
21
22
23
24
25
                                          Page 4
```

```
 1 A P P E A R A N C E S:
 2
 3   FOR THE PLAINTIFFS:
 4      QUINN EMANUEL URQUHART & SULLIVAN LLP
 5      By:  DAVID A. PERLSON, Esq.
 6        PATRICK SCHMIDT, Esq. (Los Angeles)
 7      50 California Street, Suite 2200
 8      San Francisco, California 94111
 9      Phone:  415.875.6600
10      davidperlson@quinnemanuel.com
11      patrickschmidt@quinnemanuel.com
12
13   FOR THE WITNESS:
14      RAMSEY EHRLICH LLP
15      By:  MILES EHRLICH, Esq.
16        ISMAIL RAMSEY, Esq.
17      803 Hearst Avenue
18      Berkeley, California 94710
19      Phone:  510.548.3600
20      miles@ramsey-ehrlich.com
21      ismail@ramsey-ehrlich.com
22
23
24
25
                                          Page 3
```

```
 1              I N D E X
 2
 3 WITNESS:  Anthony Levandowski
 4
 5 EXAMINATION                    PAGE
 6 Mr. Perlson                   8, 179
 7 Ms. Ray                        165
 8
 9
10
11           E X H I B I T S
12 EXHIBIT                        PAGE
13 Exhibit 25  Schematic for Uber's Fuji board   135
14 Exhibit 26  PCB Configuration for the Fuji    142
15     board
16
17            ---oOo---
18
19
20
21
22
23
24
25
                                          Page 5
```

Veritext Legal Solutions
866 299-5127

1      SAN FRANCISCO, CALIFORNIA
2      FRIDAY, APRIL 14, 2017
3          9:05 A.M.
4
5
6
7      THE VIDEOGRAPHER:  Good morning.          09:03
8      THE WITNESS:  Good morning.               09:05
9      MR. EHRLICH:  Good morning.               09:05
10     THE VIDEOGRAPHER:  We are on the record at  09:05
11  9:05 a.m. on April 14th, 2017.
12     This is the video recorded deposition of   09:06
13  Anthony Levandowski.                          09:06
14     My name is Jeffrey Anderson, here with our  09:06
15  court reporter, Andrea Ignacio.  We're here from  09:06
16  Veritext Legal Solutions at the request of counsel for  09:06
17  the defendant.                                09:06
18     This deposition is being held at          09:06
19  50 California Street in San Francisco, California.  09:06
20     The caption of this case is Waymo, LLC versus  09:06
21  Uber Technologies.  Case No. 317-CV-00939 WHA.  09:06
22     Please note that audio and video recording  09:06
23  will take place, unless all parties agree to go off  09:06
24  the record.  Microphones are sensitive and may pick up  09:06
25  whispers, private conversations, and cellular  09:06

Page 6

1  interference, so please be aware of that.        09:06
2      Please state your name and the firm you      09:06
3  represent, beginning with the noticing attorney.
4      MR. PERLSON:  I just want to correct one     09:06
5  thing you said.  Plaintiff Waymo requested the    09:06
6  deposition, not the defendant.                   09:07
7      THE VIDEOGRAPHER:  I apologize about that.   09:07
8      MR. PERLSON:  David Perlson from Quinn       09:07
9  Emanuel, on behalf of plaintiff Waymo.           09:07
10     MR. SCHMIDT:  Patrick Schmidt from Quinn     09:07
11  Emanuel, on behalf of plaintiff Waymo.          09:07
12     MS. STANTON:  Shana Stanton from Waymo.      09:07
13     MS. BARTOW:  Nicole Bartow, in-house at Uber.  09:07
14     MS. RAY:  Wendy Ray of Morrison & Foerster,  09:07
15  on behalf of defendants Uber Technologies, Ottomoto,  09:07
16  and Otto Trucking.                             09:07
17     MR. EHRLICH:  Miles Ehrlich from Ramsey &    09:07
18  Ehrlich, on behalf of the deponent, Anthony     09:07
19  Levandowski.                                  09:07
20     THE VIDEOGRAPHER:  Thank you.               09:07
21     The witness will be sworn in, and counsel may  09:07
22  begin the examination.                         09:07
23  ///                                          09:07
24  ///                                          09:07
25  ///                                          09:07

Page 7

1      ANTHONY LEVANDOWSKI,                       09:06
2      having been sworn as a witness
3      by the Certified Shorthand Reporter,
4      testified as follows:
5
6          EXAMINATION
7  BY MR. PERLSON:
8      Q  Can you please state and spell your name for  09:07
9  the record.                                    09:07
10     A  Anthony Levandowski.  A-N-T-H-O-N-Y,      09:07
11  L-E-V-A-N-D-O-W-S-K-I.                          09:07
12     Q  And where do you live?                   09:07
13     A  I live in Oakland, California.           09:07
14     Q  And have you ever been deposed before?   09:07
15     A  I have not.                             09:08
16     Q  Well, you understand that you're testifying  09:08
17  under oath, the same oath that you would take if you  09:08
18  were testifying in front of a jury?            09:08
19     A  I understand that.                      09:08
20     Q  Is there any reason you can't give complete  09:08
21  and accurate testimony today?                   09:08
22     A  I don't see why not.                    09:08
23     Q  I'm going to try to be as clear as I can.  09:08
24  But, if I'm not clear, please do let me know, and I'll  09:08
25  do my best to rephrase the question.            09:08

Page 8

1      Is that acceptable?                        09:08
2      A  That sounds great.                      09:08
3      Q  And, you need to give audible answers, yes or  09:08
4  no, rather than nodding of the head or shaking of the  09:08
5  head.                                         09:08
6      A  Of course.  I understand that.          09:08
7      Q  I see you have a couple of pieces of paper in  09:08
8  front of you.  Can you tell me what those are.   09:08
9      A  Yeah, my counsel gave me two pieces of paper.  09:08
10  They say very similar things.  Do you want me to read  09:08
11  them out to you?                              09:08
12     Q  No.  I suspect that you'll probably read them  09:08
13  later.                                        09:08
14     A  You'll hear them, most likely.          09:09
15     Q  Yeah.  Okay.                           09:09
16     Well, where do you work currently?          09:09
17     A  I work at Uber.                        09:09
18     Q  Okay.  And what's your position there?   09:09
19     A  I'm vice president of engineering.       09:09
20     Q  And in what aspect of -- what -- what -- what  09:09
21  are your responsibilities as vice president of  09:09
22  engineering?                                  09:09
23     MR. EHRLICH:  I'm going to instruct you to   09:09
24  invoke your constitutional rights.             09:09
25     THE WITNESS:  I'll read from the paper:     09:09

Page 9

3 (Pages 6 - 9)

**Page 10**

1    "On the advice and direction of my counsel, I  09:09
2    respectfully decline to answer.  And I assert the    09:09
3    rights guaranteed to me under the Fifth Amendment of  09:09
4    the Constitution of the United States."    09:09
5        MR. PERLSON:  Q.  How long have you worked at  09:09
6    Uber?    09:09
7    A  On the advice and direction of my counsel, I  09:09
8    respectfully decline to answer.  And I assert the    09:09
9    rights guaranteed to me under the Fifth Amendment of  09:09
10    the Constitution of the United States.    09:09
11    Q  You are a former employee of Google; correct?  09:10
12    A  That's correct.    09:10
13    Q  When did you leave the employ of Google?    09:10
14        MR. EHRLICH:  You can answer.    09:10
15        THE WITNESS:  Okay.  In January of 2016.  I  09:10
16    don't know the exact date, yeah.    09:10
17        MR. PERLSON:  Q.  When you worked at Google,  09:10
18    you received tens of millions of dollars in    09:10
19    compensation from Google; is that accurate?    09:10
20        MR. EHRLICH:  I'm going to instruct you to  09:10
21    assert your rights.    09:10
22        THE WITNESS:  Okay.  On the advice and  09:10
23    direction of my counsel, I respectfully decline to  09:10
24    answer.  And I assert the rights guaranteed to me  09:10
25    under the Fifth Amendment of the Constitution of the  09:10

**Page 11**

1    United States.    09:10
2        MR. PERLSON:  Q.  You understood that, while  09:10
3    you were at Google, that you were obligated to keep  09:10
4    Google sensitive information confidential?    09:10
5    A  On the advice of -- on the -- on the advice  09:10
6    and direction of my counsel, I respectfully decline to  09:11
7    answer.  And I assert the rights guaranteed to me    09:11
8    under the Fifth Amendment of the Constitution of the  09:11
9    United States.    09:11
10    Q  You understand that, while you were at    09:11
11    Google, you were not allowed to use Google's    09:11
12    confidential information for a competitor?    09:11
13    A  On the advice and direction of my counsel, I  09:11
14    respectfully decline to answer.  And I assert the    09:11
15    rights guaranteed to me under the Fifth Amendment of  09:11
16    the Constitution of the United States.    09:11
17    Q  Mr. Levandowski, you were in discussions with  09:11
18    Uber for months prior to your departure from Google    09:11
19    regarding working for Uber; correct?    09:11
20    A  On the advice of my counsel, I respectfully  09:11
21    decline to answer.  And I assert the rights guaranteed  09:11
22    to me under the Fifth Amendment of the Constitution of  09:11
23    the United States.    09:11
24    Q  You and Uber discussed how you would form a  09:11
25    new company while you were employed by Google?    09:11

**Page 12**

1    A  On the advice and direction of my counsel, I  09:11
2    respectfully decline to answer.  And I assert the    09:12
3    rights guaranteed to me under the Fifth Amendment of  09:12
4    the Constitution of the United States.    09:12
5    Q  You and Uber discussed that your new company  09:12
6    would eventually be acquired by Uber while you were    09:12
7    still employed at Google?    09:12
8    A  On the advice and direction of my counsel, I  09:12
9    respectfully decline to answer.  And I assert the    09:12
10    rights guaranteed to me under the Fifth Amendment of  09:12
11    the Constitution of the United States.    09:12
12    Q  You began forming your new company that would  09:12
13    eventually be acquired by Uber in early 2016; is that  09:12
14    correct?    09:12
15    A  On the advice and direction of my counsel, I  09:12
16    respectfully decline to answer.  And I assert the    09:12
17    rights guaranteed to me under the Fifth Amendment of  09:12
18    the Constitution of the United States.    09:12
19    Q  That new company eventually became Otto;  09:12
20    correct?    09:12
21    A  On the advice and direction of my counsel, I  09:12
22    respectfully decline to answer.  And I assert the    09:12
23    rights guaranteed to me under the Fifth Amendment of  09:12
24    the Constitution of the United States.    09:12
25    Q  While you were still employed by Google, you  09:12

**Page 13**

1    recruited engineers to join your new company so that  09:12
2    your new company could replicate Google's LiDar    09:13
3    technology; correct?    09:13
4    A  On the advice and direction of my counsel, I  09:13
5    respectfully decline to answer.  And I assert the    09:13
6    rights guaranteed to me under the Fifth Amendment of  09:13
7    the Constitution of the United States.    09:13
8    Q  You made Uber aware of your plan to replicate  09:13
9    Google's LiDar technology for your new company;    09:13
10    correct?    09:13
11    A  On the -- on the advice and direction of my  09:13
12    counsel, I respectfully decline to answer.  And I  09:13
13    assert the rights guaranteed to me under the Fifth  09:13
14    Amendment of the Constitution of the United States.  09:13
15    Q  Travis Kalanick recruited you personally to  09:13
16    do -- to work for Uber; correct?    09:13
17    A  On the advice and direction of my counsel, I  09:13
18    respectfully decline to answer.  And I assert the    09:13
19    rights guaranteed to me on the Fifth Amendment --  09:13
20    under the Fifth Amendment of the United States -- the  09:13
21    Fifth Amendment of the Constitution of the United    09:14
22    States.    09:14
23    Q  Mr. Kalanick was aware of your plan to  09:14
24    replicate Google's LiDar technology for your new    09:14
25    company; correct?    09:14

Veritext Legal Solutions
866 299-5127

1    A  On the advice and direction of my counsel, I   09:14
2 respectfully decline to answer. And I assert the   09:14
3 rights guaranteed to me under the Fifth Amendment of  09:14
4 the Constitution of the United States.      09:14
5    Q  In fact, Uber -- Uber encouraged you to   09:14
6 replicate Google's LiDar technology at Otto; correct?  09:14
7    A  On the advice and direction of my counsel, I   09:14
8 respectfully decline to answer. And I assert the   09:14
9 rights guaranteed to me under the Fifth Amendment of  09:14
10 the Constitution of the United States.     09:14
11    Q  And Mr. Kalanick encouraged you to replicate  09:14
12 Google's LiDar technology at Otto; correct?    09:14
13    A  On the advice and direction of my counsel, I   09:14
14 respectfully decline to answer. And I assert the   09:14
15 rights guaranteed to me under the Fifth Amendment of  09:14
16 the Constitution of the United States.     09:14
17    Q  Uber encouraged you to replicate Google's   09:14
18 LiDar technology so that it would be available to Uber  09:15
19 when it acquired Otto; correct?      09:15
20    A  On the advice and direction of my counsel, I   09:15
21 respectfully decline to answer. And I assert the   09:15
22 rights guaranteed to me under the Fifth Amendment of  09:15
23 the Constitution of the United States.     09:15
24    Q  You took over 14,000 confidential documents  09:15
25 from Google prior to your departure from Google;   09:15

Page 14

1 correct?         09:15
2    A  On the advice and direction of my counsel, I   09:15
3 respectfully decline to answer. And I assert the   09:15
4 rights guaranteed to me under the Fifth Amendment of  09:15
5 the Constitution of the United States.     09:15
6    Q  You made these 14,000 confidential documents,  09:15
7 that you took from Google, available to your new   09:15
8 company, Otto; correct?      09:15
9    A  On the advice and direction of my counsel, I   09:15
10 respectfully decline to answer. And I assert the   09:15
11 rights guaranteed to me under the Fifth Amendment of  09:15
12 the Constitution of the United States.     09:15
13    Q  Among the 14,000 documents you took from   09:15
14 Google, there were documents that reflected Google's  09:15
15 proprietary LiDar technology; correct?    09:15
16    A  On the advice and direction of my counsel, I   09:16
17 respectfully decline to answer. And I assert the   09:16
18 rights guaranteed to me under the Fifth Amendment of  09:16
19 the Constitution of the United States.     09:16
20    Q  You took the 14,000 documents from Google so  09:16
21 that you could get -- so that you could more quickly  09:16
22 replicate Google's technology at Otto; correct?   09:16
23    A  On the advice and direction of my counsel, I   09:16
24 respectfully decline to answer. And I assert the   09:16
25 rights guaranteed to me under the Fifth Amendment of  09:16

Page 15

1 the Constitution of the United States.     09:16
2    Q  Uber knew that you took 14,000 confidential   09:16
3 documents from Google in order to accelerate your   09:16
4 development of LiDar technology at Otto --    09:16
5    A  On --       09:16
6    Q  -- correct?      09:16
7    A  On the advice and direction of my counsel, I   09:16
8 respectfully decline to answer. And I assert the   09:16
9 rights guaranteed to me under the Fifth Amendment of  09:16
10 the Constitution of the United States.     09:16
11    Q  Uber encouraged you to take the    09:16
12 14,000 confidential Google documents so that the   09:16
13 information would be available to Uber when it   09:16
14 acquired Otto; correct?      09:16
15    A  On the -- on the advice and direction of my   09:16
16 counsel, I respectfully decline to answer. And I   09:17
17 assert the rights guaranteed to me under the Fifth   09:17
18 Amendment of the Constitution of the United States.   09:17
19    Q  Uber helped you conceal the fact that you had  09:17
20 taken 14,000 confidential documents from Google;   09:17
21 correct?         09:17
22    A  On the advice and direction of my counsel, I   09:17
23 respectfully decline to answer. And I assert the   09:17
24 rights guaranteed to me under the Fifth Amendment of  09:17
25 the Constitution of the United States.     09:17

Page 16

1    Q  Uber developed a plan in which a joint   09:17
2 defense agreement would be entered for the sole   09:17
3 purpose of hiding the fact that you had taken    09:17
4 14,000 confidential documents from Google?    09:17
5    MS. RAY: I instruct you not to answer on the  09:17
6 basis of attorney-client privilege.     09:17
7    MR. PERLSON: Q. Are you aware of the    09:18
8 existence of a due diligence report regarding that --  09:18
9 regarding Uber's acquisition of Otto?     09:18
10    MS. RAY: Can you hold on a second.    09:18
11    You may answer.      09:18
12    MR. EHRLICH: I'm going to instruct you to   09:18
13 decline to answer based on attorney-client privilege,  09:18
14 and also instruct you to assert your rights.    09:18
15    THE WITNESS: Okay. On the --    09:18
16    MS. RAY: Join in that instruction on    09:18
17 attorney-client privilege.      09:18
18    MR. PERLSON: Can you identify the attorney   09:18
19 and the client in that instruction.     09:18
20    MR. EHRLICH: The attorney and the client in   09:19
21 that instruction?       09:19
22    The client is Mr. Levandowski, and the    09:19
23 attorney at the time was John Gardner, and other   09:19
24 attorneys associated with Uber and Otto, whose names I  09:19
25 don't know at the present time.     09:19

Page 17

5 (Pages 14 - 17)

1     And it's related to joint defense common        09:19
2  interest privilege that's been under discussion before  09:19
3  Judge Alsup.                                     09:19
4     MR. PERLSON:  Q.  Do you want to read your --  09:19
5     MR. EHRLICH:  Please go ahead.                09:19
6     MS. RAY:  Well, he's gotten an instruction     09:19
7  not to answer; right?                            09:19
8     Miles, you're instructing him not to answer?  09:19
9     MR. EHRLICH:  Yeah, that's a good point.  The  09:19
10 instruction is not to answer.                     09:19
11    And you're going to follow my instruction?    09:19
12    THE WITNESS:  I will follow your instruction.  09:19
13    MR. EHRLICH:  Okay.                           09:19
14    MR. PERLSON:  Q.  Mr. Levandowski, you and     09:19
15 Uber discussed how you should exploit Google's    09:20
16 confidential information regarding LiDar technology in  09:20
17 a way that wouldn't subject Uber to liability for that  09:20
18 use; correct?                                     09:20
19    A  On the advice and direction of my counsel, I  09:20
20 respectfully decline to answer.  And I assert the  09:20
21 rights guaranteed to me under the Fifth Amendment of  09:20
22 the Constitution of the United States.            09:20
23    Q  Before you left Google, you and Uber        09:20
24 discussed you starting a new company in January --  09:20
25 January 2016?                                     09:20

Page 18

1     A  On the advice and direction of my counsel, I  09:20
2  respectfully decline to answer.  And I assert the  09:20
3  rights guaranteed to me under the Fifth Amendment of  09:20
4  the Constitution of the United States.            09:20
5     Q  You and Uber decided that you should start a  09:20
6  new company so that you could start exploiting     09:20
7  Google's confidential information without leaving a  09:20
8  trail at Uber; correct?                           09:20
9     A  On the advice and direction of my counsel, I  09:21
10 respectfully decline to answer.  And I assert the  09:21
11 rights guaranteed to me under the Fifth Amendment of  09:21
12 the Constitution of the United States.            09:21
13    Q  You and Uber had an understanding by at least  09:21
14 early 2016 that your new company would be acquired by  09:21
15 Uber; correct?                                    09:21
16    A  On the advice and direction of my counsel, I  09:21
17 respectfully decline to answer.  And I assert the  09:21
18 rights guaranteed to me under the Fifth Amendment of  09:21
19 the Constitution of the United States.            09:21
20    Q  In January of 2016, you and Uber discussed  09:21
21 how to cover up the fact that you had taken 14,000  09:21
22 confidential documents from Google; correct?      09:21
23    A  On the advice and direction of my counsel, I  09:21
24 respectfully decline to answer.  And I assert the  09:21
25 rights guaranteed to me under the Fifth Amendment of  09:21

Page 19

1  the Constitution of the United States.            09:21
2     Q  Throughout the first half of 2016 you did, in  09:21
3  fact, use the 14,000 confidential Google documents  09:21
4  that you took; correct?                           09:21
5     A  On the advice and direction of my counsel, I  09:21
6  respectfully decline to answer.  And I assert the  09:21
7  rights guaranteed to me under the Fifth Amendment of  09:22
8  the Constitution of the United States.            09:22
9     Q  Throughout the first half of 2016, you used  09:22
10 the 14,000 confidential Google documents that you took  09:22
11 in order to accelerate your development of LiDar  09:22
12 systems at Otto; correct?                         09:22
13    A  On the advice and direction of my counsel, I  09:22
14 respectfully decline to answer.  And I assert the  09:22
15 rights guaranteed to me under the Fifth Amendment of  09:22
16 the Constitution of the United States.            09:22
17    Q  And, even while you were employed by Uber,   09:22
18 you used the 14,000 confidential Google documents that  09:22
19 you took in order to accelerate the development of  09:22
20 LiDar systems at Uber?                            09:24
21    A  On the advice and direction of my counsel, I  09:22
22 respectfully decline to answer.  And I assert the  09:22
23 rights guaranteed to me under the Fifth Amendment of  09:22
24 the Constitution of the United States.            09:22
25    THE WITNESS:  Can you stop a minute?  The sun  09:22

Page 20

1  has moved, and there's a glare.  If we --         09:22
2     MR. PERLSON:  Why don't we take a break.       09:22
3     THE VIDEOGRAPHER:  Going off the record.  The  09:23
4  time is 9:22 a.m.                                 09:23
5     (Recess taken.)                               09:23
6     THE VIDEOGRAPHER:  We are back on the record.  09:24
7  The time is 9:24 a.m.                             09:24
8     MR. PERLSON:  Q.  Mr. Levandowski, the         09:24
9  14 confident- -- let me start over again.         09:25
10    Mr. Levandowski, the 14,000 confidential        09:25
11 documents that you took from Google allowed you to  09:25
12 develop LiDar systems at Otto more quickly than if  09:25
13 you'd started with a clean sheet design?          09:25
14    A  On the advice and direction of my counsel, I  09:25
15 respectfully decline to answer.  And I assert the  09:25
16 rights guaranteed to me under the Fifth Amendment of  09:25
17 the Constitution of the United States.            09:25
18    Q  Mr. Levandowski, your use of the            09:25
19 14,000 confidential documents you took from Google  09:25
20 allowed you to sell Otto to Uber for over $680 million  09:25
21 in just a few months?                             09:25
22    A  On the advice and direction of my counsel, I  09:25
23 respectfully decline to answer.  And I assert the  09:25
24 rights guaranteed to me under the Fifth Amendment of  09:25
25 the Constitution of the United States.            09:25

Page 21

6 (Pages 18 - 21)

1    Q   You disclosed the status of your development   09:25
2 of LiDar systems at Otto before the acquisition of   09:25
3 Otto by Uber?                                        09:25
4    A   On the advice and direction of my counsel, I   09:26
5 respectfully decline to answer.  And I assert the    09:26
6 rights guaranteed to me under the Fifth Amendment of   09:26
7 the Constitution of the United States.               09:26
8    Q   The advanced status of Otto's LiDar systems   09:26
9 substantially contributed to the value of Otto;      09:26
10 correct?                                             09:26
11   A   On the advice and direction of my counsel, I   09:26
12 respectfully decline to answer.  And I assert the    09:26
13 rights guaranteed to me under the Fifth Amendment of   09:26
14 the Constitution of the United States.               09:26
15   Q   You understand that Uber paid $680 million    09:26
16 for Otto because they knew that Otto had leveraged   09:26
17 Google's confidential information; correct?          09:26
18      MS. RAY:  Objection; calls for speculation.     09:26
19      MR. EHRLICH:  Go ahead and answer.              09:26
20      THE WITNESS:  Okay.                             09:26
21      On the advice and direction of my counsel, I   09:26
22 respectfully decline to answer.  And I assert the    09:26
23 rights guaranteed to me under the Fifth Amendment of   09:26
24 the Constitution of the United States.               09:26
25      MR. PERLSON:  Q.  Uber told you that they      09:26

Page 22

1 respectfully decline to answer.  And I assert the    09:28
2 rights guaranteed to me under the Fifth Amendment of   09:28
3 the Constitution of the United States.               09:28
4    Q   You used confidential information from the    09:28
5 14,000 files you took from Google to develop the Fuji   09:28
6 device at Uber; correct?                             09:28
7    A   On the advice and direction of my counsel, I   09:28
8 respectfully decline to answer.  And I assert the    09:28
9 rights guaranteed to me under the Fifth Amendment of   09:28
10 the Constitution of the United States.               09:28
11   Q   You used confidential information from the    09:28
12 14,000 files you took from Google to develop the     09:28
13 Spider device; correct?                             09:28
14   A   On the advice and direction of my counsel, I   09:28
15 respectfully decline to answer.  And I assert the    09:28
16 rights guaranteed to me under the Fifth Amendment of   09:28
17 the Constitution of the United States.               09:29
18   Q   Without the use of the 14,000 -- let me start   09:29
19 over again.                                          09:29
20      Without the use of information from the        09:29
21 14,000 files you took from Google, Otto would not have   09:29
22 been able to develop any of its LiDar devices;       09:29
23 correct?                                             09:29
24   A   On the advice and direction of my counsel, I   09:29
25 respectfully decline to answer.  And I assert the    09:29

Page 24

1 paid $680 million for Otto because they knew that Otto   09:26
2 had leveraged Google's confidential information?     09:27
3    A   On the advice and direction of my counsel, I   09:27
4 respectfully decline to answer.  And I assert the    09:27
5 rights guaranteed to me under the Fifth Amendment of   09:27
6 the Constitution of the United States.               09:27
7    Q   You used confidential information you took    09:27
8 from Google to develop LiDar at Uber; correct?       09:27
9    A   On the advice and direction of my counsel, I   09:27
10 respectfully decline to answer.  And I assert the    09:27
11 rights guaranteed to me under the Fifth Amendment of   09:27
12 the Constitution of the United States.               09:27
13   Q   You used information from the 14,000 files    09:27
14 you took from Uber -- from -- let me start over again.   09:27
15      You used confidential information from the     09:27
16 14,000 files you took from Google to develop LiDar at   09:27
17 Uber; correct?                                       09:27
18   A   On the advice and direction of my counsel, I   09:27
19 respectfully decline to answer.  And I assert the    09:27
20 rights guaranteed to me under the Fifth Amendment of   09:27
21 the Constitution of the United States.               09:28
22   Q   You used information from the 14,000 files    09:28
23 you took from Google to develop the OWL device;      09:28
24 correct?                                             09:28
25   A   On the advice and direction of my counsel, I   09:28

Page 23

1 rights guaranteed to me under the Fifth Amendment of   09:29
2 the Constitution of the United States.               09:29
3    Q   Without the information from the 14,000 files   09:29
4 you took from Google, Uber would not have been able to   09:29
5 develop any of its LiDar devices; correct?           09:29
6    A   On the advice and direction of my counsel, I   09:30
7 respectfully decline to answer.  And I assert the    09:30
8 rights guaranteed to me under the Fifth Amendment of   09:30
9 the Constitution of the United States.               09:30
10   Q   Uber continues to use information from the    09:30
11 14,000 files you took from Goober -- from Google to   09:30
12 develop its LiDar systems even today?                09:30
13   A   On the advice and direction of my counsel, I   09:30
14 respectfully decline to answer.  And I assert the    09:30
15 rights guaranteed to me under the Fifth Amendment of   09:30
16 the Constitution of the United States.               09:30
17   Q   Information from the 14,000 files you took     09:30
18 from Google has made its way onto Uber's servers;    09:30
19 correct?                                             09:30
20   A   On the advice and direction of my counsel, I   09:30
21 respectfully decline to answer.  And I assert the    09:30
22 rights guaranteed to me under the Fifth Amendment --   09:30
23   Q   On what --                                     09:30
24   A   -- of the Constitution of the United States.   09:30
25   Q   On what servers at Uber does Google's         09:30

Page 25

7 (Pages 22 - 25)

1 confidential information from the 14,000 files you   09:31
2 took from Google reside?   09:31
3     MS. RAY: Objection; calls for speculation.   09:31
4 MR. EHRLICH: Go ahead and answer.   09:31
5     THE WITNESS: On the advice and direction of   09:31
6 my counsel, I respectfully decline to answer. And I   09:31
7 assert the rights guaranteed to me under the Fifth   09:31
8 Amendment of the Constitution of the United States.   09:31
9     MR. PERLSON: Q. At least some portion of   09:31
10 the 14,000 files you took from Google remains on   09:31
11 Uber's servers; correct?   09:31
12   A   On the advice and direction of my counsel, I   09:31
13 respectfully decline to answer. And I assert the   09:31
14 rights guaranteed to me under the Fifth Amendment of   09:31
15 the Constitution of the United States.   09:31
16   Q   As head of its self-driving car program, you   09:31
17 agree that Google and Waymo's confidential information   09:32
18 is the source of all of -- let me start over again.   09:32
19     All of Uber's LiDar designs are a derivative   09:32
20 of Google's and Waymo's confidential information that   09:32
21 you took and used at Uber as head of its self-driving   09:32
22 car program; correct?   09:32
23   A   On the advice and direction of my counsel, I   09:32
24 respectfully decline to answer. And I assert the   09:32
25 rights guaranteed to me under the Fifth Amendment of   09:32
Page 26

1 the Constitution of the United States.   09:32
2   Q   Are you aware that defendants in this case   09:32
3 have served on plaintiff almost 1,000 pages of   09:32
4 privilege logs?   09:32
5     MS. RAY: Objection.   09:32
6     I instruct you not to answer to the extent   09:32
7 that calls for attorney-client privileged information.   09:32
8     MR. EHRLICH: And, to the extent it doesn't   09:33
9 call for privileged information, I instruct you to   09:33
10 assert your rights.   09:33
11     THE WITNESS: On the advice and direction of   09:33
12 my counsel, I respectfully decline to answer. And I   09:33
13 assert the rights guaranteed to me under the Fifth   09:33
14 Amendment of the Constitution of the United States.   09:33
15     MR. PERLSON: Q. Are you aware that the   09:33
16 basis for nearly every single assertion of privilege   09:33
17 in this document is based on communications made at   09:33
18 least in part by you?   09:33
19     MS. RAY: Objection.   09:33
20     I instruct you not to answer to the extent it   09:33
21 calls for attorney-client privileged information.   09:33
22     The only information he would know is from   09:33
23 attorneys.   09:33
24     I instruct you not to answer.   09:33
25     MR. EHRLICH: And I will instruct you to   09:33
Page 27

1 follow that instruction.   09:33
2     THE WITNESS: On the advice and direction of   09:33
3 my counsel --   09:33
4     MR. EHRLICH: Well, so you're not going to   09:33
5 answer.   09:33
6     THE WITNESS: I'm not going to answer? Okay.   09:33
7     MR. EHRLICH: You're not going to answer on   09:34
8 the instruction of counsel for Uber.   09:34
9     THE WITNESS: I will receive advice from   09:34
10 counsel.   09:34
11     MR. PERLSON: Understood.   09:34
12     I -- the premise that the only way that he   09:34
13 could know that information is from counsel is   09:34
14 demonstrably false. But, if you want to make that   09:34
15 instruction, you can go right ahead.   09:34
16     MS. RAY: Looking at the question, I don't   09:34
17 believe that's true.   09:34
18     MR. PERLSON: You can make your instruction   09:34
19 and live with the consequences of it.   09:34
20     Do you want me to go on?   09:34
21   Q   Are you aware that there are entries on the   09:34
22 privilege log that defendants have served in this case   09:34
23 as early as January 29th, 2016?   09:34
24     MS. RAY: Objection.   09:34
25     I instruct you not to answer on the basis of   09:34
Page 28

1 attorney-client privilege.   09:34
2     MR. EHRLICH: Let me just read this. Excuse   09:34
3 me.   09:35
4     And, to the extent it does not call for   09:35
5 privileged information, I'm going to instruct you to   09:35
6 assert your rights.   09:35
7     MR. PERLSON: Well, she instructed him not to   09:35
8 answer.   09:35
9     So, are you following that instruction?   09:35
10     MR. EHRLICH: I'm going to ask you to follow   09:35
11 that instruction.   09:35
12     THE WITNESS: Okay.   09:35
13     MR. EHRLICH: But to be safe and so the   09:35
14 record is clear, in case there is information that he   09:35
15 may know that is not from a privi-- privileged   09:35
16 source, I think it's best that he provide an answer   09:35
17 for the record.   09:35
18     MR. PERLSON: Okay. I mean, I understand why   09:35
19 you're saying that, but that's not how it works. You   09:35
20 either answer the question or you don't.   09:35
21     So, if you want to take a break to figure out   09:35
22 what the appropriate thing to do is, that's fine. But   09:35
23 we don't want to -- we're not going to waste time.   09:35
24     MS. RAY: Let's go off the record.   09:35
25     MR. EHRLICH: It's -- just for the record, so   09:35
Page 29

8 (Pages 26 - 29)

1 the only -- I respect that Uber is making a privileged  09:35
2 objection.                                      09:35
3        I want to make sure that nothing         09:35
4 Mr. Levandowski does undermines the privilege that  09:36
5 Uber is asserting.                              09:36
6        If -- to the extent it's a common interest  09:36
7 privilege, I would be advising Mr. Levandowski to  09:36
8 assert it as well.                              09:36
9        But I just want -- I just want to be clear.  09:36
10 I'm not -- I think if there is an answer that's  09:36
11 required, I'm going to instruct him to assert his  09:36
12 rights.                                        09:36
13        MR. PERLSON:  Okay.  I think -- once again, I  09:36
14 think the objection is improper.               09:36
15    Q  But, are you going to follow -- are you going  09:36
16 to follow Uber's instructions --               09:36
17    A  I'm going to follow --                   09:36
18    Q  -- not to answer the question?           09:36
19    A  I'm going to follow Miles' instructions.  09:36
20        MR. EHRLICH:  And I'm going to ask him to  09:36
21 follow that instruction.                       09:36
22        MR. PERLSON:  Okay.                      09:36
23        THE WITNESS:  So that means I follow --  09:36
24        MR. EHRLICH:  So we can move on.         09:36
25        MR. PERLSON:  Okay.                      09:36
                                              Page 30

1    Q  January 29, 2016, is within days of you  09:36
2 leaving Google; correct?                        09:37
3    A  On the advice and direction of my counsel, I  09:37
4 respectfully decline to answer.  And I assert the  09:37
5 rights guaranteed to me under the Fifth Amendment of  09:37
6 the Constitution of the United States.          09:37
7    Q  On January 29, 2016, were you receiving legal  09:37
8 advice regarding due diligence for an acquisition of  09:37
9 Ottomoto?                                       09:37
10    A  On the advice and direction of my counsel, I  09:37
11 respectfully decline to answer.  And I assert the  09:37
12 rights guaranteed to me under the Fifth Amendment of  09:37
13 the Constitution of the United States.          09:37
14    Q  Did Ottomoto exist on January 29, 2016?  09:37
15    A  On the advice and direction of my counsel, I  09:37
16 respectfully decline to answer.  And I assert the  09:37
17 rights guaranteed to me under the Fifth Amendment of  09:37
18 the Constitution of the United States.          09:37
19    Q  When did you first start receiving legal  09:37
20 advice regarding an acquisition of the company that  09:37
21 would become Ottomoto?                          09:37
22    A  On the advice and direction of my counsel, I  09:37
23 respectfully decline to answer.  And I assert the  09:37
24 rights guaranteed to me under the Fifth Amendment of  09:37
25 the Constitution of the United States.          09:38
                                              Page 31

1    Q  When did you first start discussing an  09:38
2 acquisition of what would become Ottomoto with Uber?  09:38
3    A  On the advice and direction of my counsel, I  09:38
4 respectfully decline to answer.  And I assert the  09:38
5 rights guaranteed to me under the Fifth Amendment of  09:38
6 the Constitution of the United States.          09:38
7    Q  When did you first receive any -- let me  09:38
8 start over again.                               09:38
9        When was your first attorney-client       09:38
10 communication with Eric Tate at Morrison & Foerster  09:38
11 regarding the acquisition of Ottomoto?          09:38
12    A  On the advice and direction of my counsel, I  09:38
13 respectfully decline to answer.  And I assert the  09:38
14 rights guaranteed to me under the Fifth Amendment of  09:38
15 the Constitution of the United States.          09:39
16    Q  When did you first enter into a joint defense  09:39
17 agreement -- let me start over again.           09:39
18        When did you first enter into a common      09:39
19 interest agreement with Uber regarding a potential  09:39
20 acquisition of Otto?                            09:39
21    A  On the advice and direction of my counsel, I  09:39
22 respectfully decline to answer.  And I assert the  09:39
23 rights guaranteed to me under the Fifth Amendment of  09:39
24 the Constitution of the United States.          09:39
25    Q  What common interest do you have with Uber  09:39
                                              Page 32

1 regarding a potential acquisition of Otto?       09:39
2        MS. RAY:  I instruct you not to answer on the  09:39
3 basis of attorney-client privilege.             09:39
4        MR. PERLSON:  Again, I don't think that's a  09:39
5 proper instruction.                             09:39
6    Q  But, do you want to -- are you following  09:39
7 Uber's advice or instruction?                   09:39
8        MR. EHRLICH:  Let me look at the question.  09:39
9 I'm sorry.                                      09:39
10        THE VIDEOGRAPHER:  Just cover your mic.  09:40
11        (Soto-voce discussion.)                  09:40
12        MR. EHRLICH:  Okay.  I'm going to accept that  09:40
13 instruction and -- and advise you to follow it and  09:40
14 decline to answer.                             09:40
15        THE WITNESS:  I'm going to follow the advice.  09:40
16        MR. PERLSON:  Q.  What common interest did  09:40
17 Otto have with Uber regarding an acquisition by  09:40
18 Otto -- let me start over again.               09:40
19        What -- what common interest did Otto have  09:40
20 with Uber regarding a potential acquisition of Otto?  09:40
21        MS. RAY:  I instruct you not to answer on the  09:40
22 basis of attorney-client privilege and common interest  09:40
23 privilege.                                      09:40
24        MR. EHRLICH:  And same instruction from me to  09:40
25 follow that advice.                             09:40
                                              Page 33

9 (Pages 30 - 33)

```
1       THE WITNESS:  Okay.  I will follow that       09:40
2  advice.                                  09:40
3       MR. PERLSON:  Q.  Did you anticipate       09:41
4  litigation regarding a potential acquisition of Otto   09:41
5  in as early as January 29, 2016?             09:41
6    A  On the advice and direction of my counsel, I   09:41
7  respectfully decline to answer.  And I assert the   09:41
8  rights guaranteed to me under the Fifth Amendment of   09:41
9  the Constitution of the United States.          09:41
10   Q  Did Otto anticipate litigation regarding a   09:41
11 potential acquisition of Otto as early as January 29,   09:41
12 2016?                                09:42
13   A  On the advice and direction of my counsel, I   09:42
14 respectfully decline to answer.  And I assert the   09:42
15 rights guaranteed to me under the Fifth Amendment of   09:42
16 the Constitution of the United States.          09:42
17   Q  When did Otto first anticipate litigation   09:42
18 regarding a potential acquisition of Otto?       09:42
19   A  On the advice and direction of my counsel, I   09:42
20 respectfully decline to answer.  And I assert the   09:42
21 rights guaranteed to me under the Fifth Amendment of   09:42
22 the Constitution of the United States.          09:42
23   Q  When did Uber first anticipate litigation   09:42
24 regarding a potential acquisition of Otto?       09:42
25       MS. RAY:  Objection; calls for speculation.   09:42
                                        Page 34
```

```
1       MR. EHRLICH:  You can answer.            09:42
2       THE WITNESS:  Okay.                  09:42
3    On the advice and direction of my counsel, I   09:42
4  respectfully decline to answer.  And I assert the   09:42
5  rights guaranteed to me under the Fifth Amendment of   09:42
6  the Constitution of the United States.          09:42
7       MR. PERLSON:  Q.  When did Uber first tell   09:42
8  you they anticipated litigation regarding a potential   09:42
9  acquisition of Otto?                      09:42
10   A  On the advice and direction of my counsel, I   09:42
11 respectfully decline to answer.  And I assert the   09:42
12 rights guaranteed to me under the Fifth Amendment of   09:42
13 the Constitution of the United States.          09:43
14   Q  Isn't it correct that the common interest   09:43
15 that Otto and Uber had, in anticipation of litigation   09:43
16 regarding the Otto acquisition was concealing the fact   09:43
17 that you had taken 14,000 confidential documents from   09:43
18 Google?                             09:43
19   A  On the advice and --                09:43
20       MS. RAY:  Objection; form.             09:43
21       MR. EHRLICH:  You can go ahead and answer.   09:43
22       MS. RAY:  Hold on.                  09:43
23    I instruct you not to answer on the basis of   09:43
24 attorney-client privilege.                  09:43
25       MR. EHRLICH:  One second.              
                                        Page 35
```

```
1       MR. PERLSON:  Do you want to go off the       
2  record?                                 
3       THE WITNESS:  Yeah, why don't we do that.    
4       THE VIDEOGRAPHER:  Going off the record.  The   
5  time is 9:44.                            
6    (Recess taken.)                    09:52
7       THE VIDEOGRAPHER:  We are back on the record.  09:52
8  The time is 9:53.                        09:53
9       MR. PERLSON:  Q.  Are you going to follow       09:53
10 your counsel's instruction?                  09:53
11       THE WITNESS:  Do we have any question?       09:53
12       MR. EHRLICH:  Let me -- let me go back.      09:53
13       MS. RAY:  I instructed him not to answer.    09:53
14       MR. EHRLICH:  Okay.  Ms. Ray instructed him   09:53
15 not to answer.                          09:53
16    And I will now instruct you to follow that   09:53
17 instruction from Ms. Ray on the basis of          09:53
18 attorney-client privilege.                  09:53
19       THE WITNESS:  I'll follow that instruction.  09:53
20       MR. PERLSON:  Q.  Isn't it correct that the   09:53
21 common interest that Otto and Uber had in anticipation   09:54
22 of litigation regarding the Otto acquisition was       09:54
23 exploiting the confidential information you had       09:54
24 taken -- in the 14,000 documents you had taken from   09:54
25 Google?                             09:54
                                        Page 36
```

```
1       MS. RAY:  Objection; form.             09:54
2    I instruct you not to answer on the basis of   09:54
3  attorney-client and common interest privilege.     09:54
4       MR. EHRLICH:  And the same instruction from   09:54
5  me to follow that instruction.               09:54
6       THE WITNESS:  I will follow that instruction.  09:54
7       MR. PERLSON:  Q.  Your common interest with   09:54
8  Uber began while you were still employed at Google;   09:54
9  correct?                            09:54
10       MS. RAY:  Objection; form.             09:54
11       MR. EHRLICH:  And -- and by "form," Counsel,   09:54
12 do you mean attorney-client privilege?          09:54
13       MS. RAY:  No.  I mean that it's a legal       09:55
14 conclusion what common interest is.  I don't think he   09:55
15 knows what that is.  So, it's speculation.       09:55
16       MR. EHRLICH:  Okay.  So, you can answer.     09:55
17       THE WITNESS:  On -- on the advice and       09:55
18 direction of my counsel, I respectfully decline to   09:55
19 answer.  And I assert the rights guaranteed to me   09:55
20 under the Fifth Amendment of the Constitution of the   09:55
21 United States.                          09:55
22       MR. PERLSON:  Q.  Otto's common interest with  09:55
23 Uber began while you were still employed at Google?   09:55
24       MS. RAY:  Objection; form.             09:55
25       THE WITNESS:  On the advice and direction of  09:55
                                        Page 37
```

1 my counsel, I respectfully decline to answer.  And I   09:55
2 assert the rights guaranteed to me under the Fifth   09:55
3 Amendment of the Constitution of the United States.   09:55
4       MR. PERLSON:  Q.  Otto's common interest with   09:55
5 Uber was to prevent the detection of your scheme to   09:55
6 funnel Waymo's technology to Uber via Otto?   09:55
7       MS. RAY:  Objection to form.   09:55
8       I instruct you not to answer on the basis of   09:55
9 attorney-client and common interest privilege.   09:55
10      MR. EHRLICH:  And I'll advise you to follow   09:56
11 that instruction from Counsel.   09:56
12      MR. PERLSON:  And whose -- who are the --   09:56
13 what common interest are you asserting then?  Between   09:56
14 who is it with?   09:56
15      And who is the attorney and the client in   09:56
16 your instruction?   09:56
17      MS. RAY:  Your question is about Otto's   09:56
18 interests with Uber.  And so, at the time, I believe   09:56
19 Otto's attorneys were O'Melveny & Myers, and Uber's   09:56
20 counsel was Morrison & Foerster.  And you're making an   09:56
21 assertion about the common interest, so we wouldn't   09:56
22 agree with that.   09:56
23      MR. PERLSON:  Well, that's not a basis for an   09:56
24 attorney-client privilege instruction, so --   09:56
25      MS. RAY:  You're asking him what the interest   09:56

Page 38

1 is.  And one, he doesn't know because he doesn't --   09:56
2 he's not a lawyer.  He doesn't --   09:56
3       MR. PERLSON:  Hey, hey, enough of the   09:56
4 coaching.   09:56
5       MS. RAY:  I'm not coaching.   09:56
6       MR. PERLSON:  If you want to make an -- an --   09:56
7 I am -- I am asking a very specific question.   09:57
8       MS. RAY:  You asked me a question --   09:57
9       MR. PERLSON:  You instructed him not to   09:57
10 answer on the basis of attorney-client privilege.  You   09:57
11 don't need to get into speculation or anything about   09:57
12 that.   09:57
13      Answer my question:  What is the common   09:57
14 interest you're identifying?  And who are the   09:57
15 attorneys?  And who is the client?   09:57
16      MS. RAY:  I'm not being deposed here.  We can   09:57
17 discuss that at --   09:57
18      MR. PERLSON:  Are you refusing to provide   09:57
19 this information now?  This is a very serious issue,   09:57
20 and I need an answer.   09:57
21      MS. RAY:  We can go -- if you want, we can go   09:57
22 off the record.   09:57
23      MR. PERLSON:  No.  I want you to put this on   09:57
24 the record.   09:57
25      MS. RAY:  All right.  Well, I need to take a   09:57

Page 39

1 look at your question.   09:57
2       MR. PERLSON:  Take -- take the time you need.   09:57
3       MS. RAY:  So, you have asked the witness a   09:57
4 question about the common interest; right?  You're   09:57
5 saying --   09:57
6       MR. PERLSON:  You -- you made the   09:57
7 instruction.   09:57
8       MS. RAY:  I understand.   09:57
9       MR. PERLSON:  You need to know what it is.   09:57
10      If you -- if we want to stop, get off the   09:57
11 record, so you can figure out why you made your   09:57
12 attorney-client privilege instruction, then you can do   09:57
13 that.   09:57
14      But, I would suspect that, when you made the   09:57
15 instruction, that you know --   09:57
16      MS. RAY:  I do know.   09:57
17      MR. PERLSON:  -- the answer to the question.   09:57
18 So answer me, please.   09:57
19      MS. RAY:  I'm happy to answer you.   09:57
20      MR. PERLSON:  Okay.   09:57
21      MS. RAY:  You want to be taught.   09:57
22      MR. PERLSON:  Go.   09:57
23      MS. RAY:  You were asking him about what the   09:58
24 common interest is.  The only way he would know that   09:58
25 is from an attorney discussion.  And so, that is   09:58

Page 40

1 attorney-client privilege, and I'm not going to let   09:58
2 him answer the question.   09:58
3       MR. PERLSON:  Who is the attorney?  Who is   09:58
4 the client?   09:58
5       MS. RAY:  I already identified that to you.   09:58
6       MR. PERLSON:  When?  In this question --   09:58
7       MS. RAY:  Do you want me to ask the reporter   09:58
8 to read it back?  I'm happy to repeat it.   09:58
9       Otto's attorneys were O'Melveny & Myers, and   09:58
10 Uber's counsel was Morrison & Foerster.  Those are the   09:58
11 attorneys.   09:58
12      MR. PERLSON:  Okay.  And what's the common   09:58
13 interest, and who is it between?   09:58
14      MS. RAY:  The common interest was between   09:58
15 Otto and Uber, at least as to your question, and it   09:58
16 was in anticipation of litigation.   09:58
17      Also, I just want to note that the record   09:58
18 says on here -- on here that I am coaching.  But I   09:58
19 meant to say, if I didn't say it correctly, I am not   09:59
20 coaching.   09:59
21      MR. PERLSON:  Q.  Isn't it correct that the   09:59
22 common interest that Otto and Uber had in -- in   09:59
23 anticipation of litigation, regarding the Otto   09:59
24 acquisition, was exploiting the confidential   09:59
25 information you had taken in the 14,000 documents you   09:59

Page 41

ATTORNEYS EYES ONLY

Page 42

1 had -- that's not the question. Let's start over    09:59
2 again.                                               09:59
3       Isn't it correct that, before you left        09:59
4 Google, there was a common interest between Otto and 09:59
5 Uber to prevent the detection of your scheme to funnel 09:59
6 Waymo's technology to Uber via Otto?                 09:59
7       MS. RAY:  Objection; form.
8       MR. EHRLICH:  And -- and, Ms. Ray, is there    10:00
9 an objection based on attorney-client privilege or   10:00
10 joint -- or common interest privilege?              10:00
11      MS. RAY:  I instruct you not to answer on the  10:00
12 basis of attorney-client or common interest privilege. 10:00
13      MR. EHRLICH:  So -- so I would ask you to      10:00
14 follow that instruction and decline to answer.      10:00
15      MR. PERLSON:  And that's based on the same     10:00
16 common interest and the same attorneys that you had 10:00
17 noted in reference to the last question; correct?   10:00
18      MS. RAY:  Yes, sir.  I'm not agreeing to your  10:00
19 timing or characterization.                         10:00
20      MR. PERLSON:  I'm just asking you the basis    10:00
21 of the instruction.                                 10:00
22      MS. RAY:  The basis of the instruction is      10:00
23 that the only way he knows about the common interest 10:00
24 is because of attorney-client privileged discussions. 10:00
25      MR. PERLSON:  I just want the record to be     10:01

Page 43

1 very clear that the attorney-clients -- the attorney 10:01
2 and the client and the common interest that you are  10:01
3 basing your instruction on, is the same one that you 10:01
4 had based your instruction on in the current -- in the 10:01
5 previous question.                                   10:01
6       MS. RAY:  Correct, without buying into your    10:01
7 presumption about the timing.                        10:01
8       THE REPORTER:  Excuse me, Counsel.  You're     10:01
9 not mic'ed, so if you can try to keep your hand away. 10:01
10      MS. RAY:  Oh, sure.  I'm sorry.                 10:01
11      MR. PERLSON:  Q.  At the time Uber acquired     10:01
12 Otto, Uber had a due diligence report done in        10:01
13 connection with that acquisition; correct?           10:01
14      A  On the advice and direction of my counsel, I 10:02
15 respectfully decline to answer.  And I assert the    10:02
16 rights guaranteed to me under the Fifth Amendment of 10:02
17 the Constitution of the United States.              10:02
18      Q  The purpose of the due diligence report done 10:02
19 before the -- Uber's acquisition of Otto was to      10:02
20 determine the potential exposure for your theft of   10:02
21 confidential information from Google?                10:02
22      MR. EHRLICH:  Hold on.                          10:02
23      MS. RAY:  I instruct you not to answer on the  10:02
24 basis of attorney-client and common interest         10:02
25 privilege.                                           10:02

Page 44

1       MR. EHRLICH:  I advise you to follow that      10:02
2 instruction.                                         10:02
3       THE WITNESS:  I will follow that instruction.  10:02
4       MR. PERLSON:  Q.  As part of the due           10:02
5 diligence report that was done in connection with the 10:02
6 Otto acquisition, someone examined all of the computer 10:02
7 systems at Otto for Google con-- confidential        10:02
8 information; correct?                                10:02
9       MS. RAY:  I instruct you not to answer on the  10:02
10 basis of attorney-client and common interest         10:03
11 privilege.                                           10:03
12      MR. PERLSON:  Q.  As part of the due           10:03
13 diligence report, in connection with the Otto        10:03
14 acquisition, someone examined all the computer systems 10:03
15 at Otto for the 14,000 documents you had taken from  10:03
16 Google?                                              10:03
17      MS. RAY:  Same instruction.                     10:03
18      MR. PERLSON:  Q.  Are you following that        10:03
19 instruction?                                         10:03
20      A  (Witness nods head.)                         10:03
21      Q  "Yes"?                                       10:03
22      A  Yes.  I'm sorry.  No gestures.               10:03
23      But you didn't let me answer the last one,      10:03
24 so --                                               10:03
25      MR. EHRLICH:  Go ahead.  You're following       10:03

Page 45

1 that instruction?                                    10:03
2       THE WITNESS:  I'm following that instruction.  10:03
3       MR. PERLSON:  Thank you.                        10:03
4       Q  As part of the due diligence report in      10:03
5 connection with the Otto acquisition, it was         10:03
6 determined that the 14,000 files that you had taken  10:03
7 from Google did exist on Otto's servers; correct?    10:04
8       MS. RAY:  Same -- same instruction.            10:04
9       MR. EHRLICH:  And same instruction from me.    10:04
10      THE WITNESS:  And I'm following.                10:04
11      MR. PERLSON:  Q.  As part of the due           10:04
12 diligence report in connection with the Otto         10:04
13 acquisition, it was determined that the 14,000 files 10:04
14 that had been taken by you from Google should be     10:04
15 deleted from Otto's servers; correct?               10:04
16      MS. RAY:  Same instruction.                     10:04
17      MR. EHRLICH:  Same instruction, as well, from  10:04
18 me.                                                 10:04
19      THE WITNESS:  I will follow.                    10:04
20      MR. PERLSON:  Q.  If Uber had a third-party    10:04
21 report done in connection with the Otto acquisition, 10:05
22 and got a clean bill of health on Otto, why wouldn't 10:05
23 Uber share that with Waymo?                          10:05
24      MS. RAY:  Objection; form.                      10:05
25      Hold on.                                        10:05

12 (Pages 42 - 45)

ATTORNEYS EYES ONLY

1        Go ahead.                                    10:05
2        MR. EHRLICH:  I'm looking -- so, there is    10:05
3  an -- there is an objection on form.  I'm not hearing  10:05
4  an objection based on attorney-client or joint defense  10:05
5  privilege.                                        10:05
6        So, you can answer.                          10:05
7        THE WITNESS:  On the advice and direction of  10:05
8  my counsel, I respectfully decline to answer.  And I  10:05
9  assert the rights guaranteed to me under the Fifth  10:05
10 Amendment of the Constitution of the United States.  10:05
11       MR. PERLSON:  Q.  If Uber had a third-party  10:05
12 report done in connection with the Otto acquisition  10:06
13 and got a clean bill of health on Otto, why wouldn't  10:06
14 Uber share that with the Court?                    10:06
15       MS. RAY:  Objection; form.                   10:06
16       THE VIDEOGRAPHER:  Excuse me.  Can you use   10:06
17 this?                                              10:06
18       MS. RAY:  Sure.                              10:06
19       THE VIDEOGRAPHER:  Is it going to reach?     10:06
20       MS. RAY:  You know what, can we just move    10:06
21 that?                                              10:06
22       MR. EHRLICH:  I'm going to instruct you to   10:06
23 answer.                                            10:06
24       THE WITNESS:  On the advice and direction of  10:06
25 my counsel, I respectfully decline to answer.  And I  10:06

Page 46

1  assert the rights guaranteed to me under the Fifth  10:06
2  Amendment of the Constitution of the United States.  10:06
3        MR. PERLSON:  Q.  It would be in Uber's     10:06
4  interests to provide exculpatory evidence regarding  10:06
5  the 14,000 files you took from Google; correct?   10:06
6        MS. RAY:  Objection; form.                  10:07
7        MR. EHRLICH:  You can answer.               10:07
8        THE WITNESS:  On the advice and direction of  10:07
9  my counsel, I respectfully decline to answer.  And I  10:07
10 assert the rights guaranteed to me under the Fifth  10:07
11 Amendment of the Constitution of the United States.  10:07
12       MR. PERLSON:  Q.  It would be in your       10:07
13 interests to provide exculpatory evidence regarding  10:07
14 the 14,000 files you took from Google; correct?    10:07
15     A  On the advice and direction of my counsel, I  10:07
16 respectfully decline to answer.  And I assert the  10:07
17 rights guaranteed to me under the Fifth Amendment of  10:07
18 the Constitution of the United States.             10:07
19       THE VIDEOGRAPHER:  Excuse me.  I'd like to go  10:07
20 off the record for one moment.                     10:07
21       MR. PERLSON:  Sure.                          10:07
22       THE VIDEOGRAPHER:  Going off the record.  The  10:07
23 time is 10:07.                                     10:07
24       (Recess taken.)                              10:07
25       THE VIDEOGRAPHER:  We are back on the record.  10:07

Page 47

1  The time is 10:07.                                 10:07
2        MR. PERLSON:  Q.  There would be no reason  10:07
3  for you to withhold exculpatory evidence regarding the  10:08
4  14,000 files you took from Google; correct?        10:08
5     A  On the advice and direction of my counsel, I  10:08
6  respectfully decline to answer.  And I assert the  10:08
7  rights guaranteed to me under the Fifth Amendment of  10:08
8  the Constitution of the United States.             10:08
9     Q  When did you first suspect that your conduct  10:08
10 at Google might become the subject of litigation?  10:08
11    A  On the advice and direction of my counsel, I  10:08
12 respectfully decline to answer.  And I assert the  10:08
13 rights guaranteed to me under the Fifth Amendment of  10:08
14 the Constitution of the United States.             10:08
15    Q  Did you ever suspect that your operation     10:08
16 of -- let me start over again.                     10:09
17       Did you ever suspect that your discussions  10:09
18 with Uber between 2015 and 2016, while you were a   10:09
19 Google employee, would become the subject of       10:09
20 litigation?                                        10:09
21       MS. RAY:  Objection; form.                   10:09
22       MR. EHRLICH:  Go ahead.                      10:09
23       THE WITNESS:  On the advice and direction of  10:09
24 my counsel, I respectfully decline to answer.  And I  10:09
25 assert the rights guaranteed to me under the Fifth  10:09

Page 48

1  Amendment of the Constitution of the United States.  10:09
2        MR. PERLSON:  Q.  Did you ever suspect that  10:09
3  your formation of -- of a company, that eventually  10:09
4  became Otto in late 2015, while you were still a   10:09
5  Google employee, would become the subject of       10:09
6  litigation?                                        10:09
7     A  On the advice and direction of my counsel, I  10:09
8  respectfully decline to answer.  And I assert the  10:09
9  rights guaranteed to me under the Fifth Amendment of  10:09
10 the Constitution of the United States.             10:10
11    Q  Have you ever destroyed any documents related  10:10
12 to this litigation?                                10:10
13    A  On the advice and direction of my counsel, I  10:10
14 respectfully decline to answer.  And I assert the  10:10
15 rights guaranteed to me under the Fifth Amendment of  10:10
16 the Constitution of the United States.             10:10
17    Q  Have you ever deleted any documents related  10:10
18 to this litigation?                                10:10
19    A  On the advice and direction of my counsel, I  10:10
20 respectfully decline to answer.  And I assert the  10:10
21 rights guaranteed to me under the Fifth Amendment of  10:10
22 the Constitution of the United States.             10:10
23    Q  Has Otto deleted any documents related to    10:10
24 this litigation?                                   10:10
25    A  On the advice and direction of my counsel, I  10:10

Page 49

13 (Pages 46 - 49)

1 respectfully decline to answer. And I assert the     10:10
2 rights guaranteed to me under the Fifth Amendment of  10:10
3 the Constitution of the United States.     10:10
4    Q  Have you deleted any documents reflecting     10:10
5 your relationship to Odin Wave or Tyto Lidar at any   10:10
6 time in which you had anticipated litigation?     10:10
7    A  On the advice and direction of my counsel, I   10:10
8 respectfully decline to answer. And I assert the     10:10
9 rights guaranteed to me under the Fifth Amendment of  10:10
10 the Constitution of the United States.     10:11
11   Q  Have you ever destroyed or permanently     10:11
12 deleted any documents relating to this litigation when  10:11
13 litiga- -- during the time in which litigation was    10:11
14 anticipated, regarding the Otto acquisition?     10:11
15   A  On the advice and direction of my counsel, the  10:11
16 respectfully decline to answer. And I assert the     10:11
17 rights guaranteed to me under the Fifth Amendment of  10:11
18 the Constitution of the United States.     10:11
19   Q  Have you deleted any communications with     10:11
20 former Google employees instructing them to take     10:11
21 confidential information from Google?     10:11
22   A  On the advice and direction of my counsel, I   10:11
23 respectfully decline to answer. And I assert the     10:11
24 rights guaranteed to me under the Fifth Amendment of  10:11
25 the Constitution of the United States.     10:12
Page 50

1    Q  While you were at Google, you were issued a    10:12
2 laptop computer that ran the Windows operating system;  10:12
3 correct?     10:12
4    A  On the advice and direction of my counsel, I   10:12
5 respectfully decline to answer. And I assert the     10:12
6 rights guaranteed to me under the Fifth Amendment of  10:12
7 the Constitution of the United States.     10:12
8    Q  Before you left Google, you downloaded     10:12
9 documents onto that laptop computer for use when you   10:12
10 left Google; correct?     10:12
11   A  On the advice and direction of my counsel, I   10:12
12 respectfully decline to answer. And I assert the     10:12
13 rights guaranteed to me under the Fifth Amendment of  10:12
14 the Constitution of the United States.     10:12
15   Q  Before you left Google, you downloaded     10:12
16 documents onto that laptop for use at Otto; correct?   10:12
17   A  On the advice and direction of my counsel, I   10:13
18 respectfully decline to answer. And I assert the     10:13
19 rights guaranteed to me under the Fifth Amendment of  10:13
20 the Constitution of the United States.     10:13
21   Q  Before you left Google, you downloaded     10:13
22 documents onto that laptop for use at Uber; correct?   10:13
23   A  On the advice of my counsel, I respectfully    10:13
24 decline to answer. And I assert the rights guaranteed  10:13
25 to me under the Fifth Amendment of the Constitution of  10:13
Page 51

1 the United States.     10:13
2    Q  To this day, Uber continues to use     10:13
3 confidential information downloaded onto that laptop   10:13
4 computer; correct?     10:13
5    A  On the advice and direction of my counsel, I   10:13
6 respectfully decline to answer. And I assert the     10:13
7 rights guaranteed to me under the Fifth Amendment of  10:13
8 the Constitution of the United States.     10:13
9    Q  Is there any wall at Uber from your work on   10:13
10 LiDar technology?     10:14
11   A  What's a wall?     10:14
12   Q  Is -- are --     10:14
13     MR. EHRLICH:  Do you want to clarify?     10:14
14     MR. PERLSON:  Yeah, sure.     10:14
15   Q  The -- is -- is there any policy at Uber that  10:14
16 you are not allowed to work on LiDar technology?     10:14
17   A  On the advice and direction of my counsel, I   10:14
18 respectfully decline to answer. And I assert the     10:14
19 rights guaranteed to me under the Fifth Amendment of  10:14
20 the Constitution of the United States.     10:14
21   Q  Isn't it true that, since you have been     10:14
22 working at Uber, you have done work regarding LiDar    10:14
23 technology?     10:14
24   A  On the advice and direction of my counsel, I   10:14
25 respectfully decline to answer. And I assert the     10:14
Page 52

1 rights guaranteed to me under the Fifth Amendment of  10:14
2 the Constitution of the United States.     10:14
3    Q  Isn't it true that, during your work at Uber,  10:14
4 you have contributed to the design and development of  10:15
5 LiDar technology?     10:15
6    A  On the advice and direction of my -- excuse   10:15
7 me.     10:15
8      On the advice and direction of counsel -- of  10:15
9 my counsel, I respectfully decline to answer. And I   10:15
10 assert the rights guaranteed to me under the Fifth     10:15
11 Amendment of the Constitution of the United States     10:15
12   Q  Isn't it true that, during your work at Uber,  10:15
13 you have contributed to the design and development of  10:15
14 LiDar technology using confidential information in the  10:15
15 14,000 documents that you took from Google before you  10:15
16 left Google?     10:15
17   A  On the advice and direction of my counsel, I   10:15
18 respectfully decline to answer. And I assert the     10:15
19 rights guaranteed to me under the Fifth Amendment of  10:15
20 the Constitution of the United States.     10:15
21   Q  Isn't it true that, even today, you continue  10:15
22 to use the confidential information in     10:15
23 14,000 documents you took from Google in your     10:15
24 contributions to the design and development of LiDar   10:16
25 technology at Uber?     10:16
Page 53

14 (Pages 50 - 53)

| | |
|---|---|
| 1    A  On the advice and direction of my counsel, I   10:16 | 1  2015?                                          10:18 |
| 2  respectfully decline to answer.  And I assert the   10:16 | 2    A  On the advice and direction of my counsel, I   10:18 |
| 3  rights guaranteed to me under the Fifth Amendment of   10:16 | 3  respectfully decline to answer.  And I assert the   10:18 |
| 4  the Constitution of the United States.           10:16 | 4  rights guaranteed to me under the Fifth Amendment of   10:18 |
| 5    Q  Between March 2nd, 2015, and March 25th,    10:16 | 5  the Constitution of the United States.           10:19 |
| 6  2015, your Google-issued laptop did not perform   10:16 | 6    Q  You caused your Google-issued laptop to    10:19 |
| 7  regular check-ins to Google's network; correct?   10:16 | 7  access the corporate -- the Google corporate network   10:19 |
| 8      MS. RAY:  Objection; form.               10:16 | 8  for unauthorized purposes on November 25th, 2015 --   10:19 |
| 9      MR. EHRLICH:  Let me read the question.    10:16 | 9    A  Is that a question?                       10:19 |
| 10      You can answer.                          10:16 | 10    Q  -- correct?                             10:19 |
| 11      THE WITNESS:  On the advice and direction of   10:16 | 11    A  Okay.                                  10:19 |
| 12  my counsel, I respectfully decline to answer.  And I   10:16 | 12      On the advice and direction of my counsel, I   10:19 |
| 13  assert the rights guaranteed to me under the Fifth   10:16 | 13  respectfully decline to answer.  And I assert the   10:19 |
| 14  Amendment of the Constitution of the United States.   10:16 | 14  rights guaranteed to me under the Fifth Amendment of   10:19 |
| 15      MR. PERLSON:  Q.  Between March 2nd and    10:16 | 15  the Constitution of the United States.           10:19 |
| 16  2 -- 2 -- between March 2nd, 2015, and November 25th,   10:17 | 16    Q  On -- on November 26th, 2015, you then    10:19 |
| 17  2015, the network interfaces of your Google-issued   10:17 | 17  reinstalled the Windows operating system on your   10:19 |
| 18  laptop made only three appearances on Google's   10:17 | 18  Google-issued laptop; correct?                 10:19 |
| 19  corporate logs?                               10:17 | 19    A  On the advice and direction of my counsel, I   10:19 |
| 20      MS. RAY:  Objection; form.               10:17 | 20  respectfully decline to answer.  And I assert the   10:19 |
| 21      THE WITNESS:  Is there a question?        10:17 | 21  rights guaranteed to me under the Fifth Amendment of   10:19 |
| 22      MR. EHRLICH:  Did -- did you hear the     10:17 | 22  the Constitution of the United States.           10:19 |
| 23  question?                                     10:17 | 23    Q  You reinstalled the Windows operating system   10:19 |
| 24      MR. PERLSON:  I'll -- let me just ask it  10:17 | 24  on November 26, 2015, in an effort to conceal the fact   10:20 |
| 25  again.                                        10:17 | 25  that you had been accessing Google's corporate   10:20 |
| Page 54 | Page 56 |

| | |
|---|---|
| 1      MR. EHRLICH:  Okay.                       10:17 | 1  network; correct?                             10:20 |
| 2      MR. PERLSON:  Q.  Do you have any reason to   10:17 | 2    A  On the advice and direction of my counsel, I   10:20 |
| 3  dispute that, between March 15th -- let me start over   10:17 | 3  respectfully decline to answer.  And I assert the   10:20 |
| 4  again.                                         10:17 | 4  rights guaranteed to me under the Fifth Amendment of   10:20 |
| 5      Between -- scratch that.                   10:17 | 5  the Constitution of the United States.           10:20 |
| 6      Do you have any reason to -- to dispute that   10:17 | 6    Q  On December 3rd, 2015, you ran keyword    10:20 |
| 7  between March 2nd, 2015, and November 25th, 2015, that   10:17 | 7  searches across the Google network from your   10:20 |
| 8  the network interfaces of your Google-issued laptop   10:17 | 8  Google-issued laptop; correct?                 10:20 |
| 9  made only three appearances on Goo-- Google's   10:17 | 9    A  On the advice and direction of my counsel, I   10:20 |
| 10  corporate network log?                         10:18 | 10  respectfully decline to answer.  And I assert the   10:20 |
| 11    A  On the advice and direction of my counsel, I   10:18 | 11  rights guaranteed to me under the Fifth Amendment of   10:20 |
| 12  respectfully decline to answer.  And I assert the   10:18 | 12  the Constitution of the United States.           10:20 |
| 13  rights guaranteed to me under the Fifth Amendment of   10:18 | 13    Q  On December 3rd, 2015, you ran a search for   10:20 |
| 14  the Constitution of the United States.           10:18 | 14  the strings CHAUFFEUR SVN LOGIN; correct?        10:20 |
| 15    Q  You caused your Google-issued laptop to    10:18 | 15    A  On the advice and direction of my counsel, I   10:20 |
| 16  access Goo-- -- the Google corporate network for   10:18 | 16  respectfully decline to answer.  And I assert the   10:20 |
| 17  unauthorized purposes for approximately two hours on   10:18 | 17  rights guaranteed to me under the Fifth Amendment of   10:20 |
| 18  October 22nd, 2015?                            10:18 | 18  the Constitution of the United States.           10:20 |
| 19    A  On the direction of my counsel, I         10:18 | 19    Q  On December 3rd, 2015, you ran a search for   10:20 |
| 20  respectfully decline to answer.  And I assert the   10:18 | 20  the string CHAUFFEUR SVN EEE SETUP; correct?     10:21 |
| 21  rights guaranteed to me under the Fifth Amendment of   10:18 | 21      MR. EHRLICH:  EEE SETUP?                  10:21 |
| 22  the Constitution of the United States.           10:18 | 22      MR. PERLSON:  Yeah.                       10:21 |
| 23    Q  You caused your Google-issued laptop to    10:18 | 23      THE WITNESS:  On the advice and direction of   10:21 |
| 24  access the Google corporate network for unauthorized   10:18 | 24  my counsel, I respectfully decline to answer.  And I   10:21 |
| 25  purposes for approximately two hours on November 20th,   10:18 | 25  assert --                                     10:21 |
| Page 55 | Page 57 |

ATTORNEYS EYES ONLY

1    MR. PERLSON: On December --          10:21
2    THE WITNESS: -- the rights guaranteed to --   10:21
3    MR. EHRLICH: Go ahead and finish.     10:21
4    THE WITNESS: Yeah.          10:21
5    And I assert the rights guaranteed to me     10:21
6 under the Fifth Amendment of the Constitution of the   10:21
7 United States.                10:21
8    THE VIDEOGRAPHER: I need to take a break.   10:21
9    MR. PERLSON: Okay. You need to take a     10:21
10 break?                10:21
11    THE VIDEOGRAPHER: Going off the record. The  10:21
12 time is 10:21.              10:21
13    (Recess taken.)            10:21
14    THE VIDEOGRAPHER: This marks the beginning  10:25
15 of DVD No. 2 in the deposition of Anthony Levandowski.  10:34
16    We are going back on the record. The time is  10:34
17 10:34.                10:34
18    MR. PERLSON: Q. The searches that you ran   10:34
19 on December 3rd, 2015, were run to locate files   10:35
20 relating to Google's self-driving car project at that  10:35
21 time; correct?             10:35
22    A  On the advice and direction of my counsel, I  10:35
23 respectfully decline to answer. And I assert the   10:35
24 rights guaranteed to me under the Fifth Amendment of  10:35
25 the Constitution of the United States.     10:35

Page 58

1    Q  SVN is the name of the document repository   10:35
2 containing Waymo's design files, schematics, and other  10:35
3 confidential information relating to the self-driving  10:35
4 car project; correct?          10:35
5    A  On the advice and direction of my counsel, I  10:35
6 respectfully decline to answer. And I assert the   10:35
7 rights guaranteed to me under the Fifth Amendment   10:35
8 rights -- under the Fifth Amendment of the     10:35
9 Constitution of the United States.       10:35
10    Q  The searches you ran across the Google   10:35
11 network on December 3rd, 2013, were not related to any  10:35
12 legitimate duties you were performing for Google at  10:36
13 that time?              10:36
14    A  On the advice and direction of my counsel, I  10:36
15 respectfully disagree -- I respectfully decline to  10:36
16 answer. And I assert the rights guaranteed to me   10:36
17 under the Fifth Amendment of the Constitution of the  10:36
18 United States.             10:36
19    Q  The searches you ran across the Google   10:36
20 network on December 3rd, 2015, were made without   10:36
21 authorization from Google; correct?      10:36
22    A  On the advice and direction of my counsel, I  10:36
23 respectfully decline to answer. And I assert the   10:36
24 rights guaranteed to me under the Fifth Amendment of  10:36
25 the Constitution of the United States.     10:36

Page 59

1    Q  On December 11, 2015, you downloaded software  10:36
2 to your Google-issued laptop that would allow you to  10:36
3 access files on the SVN repository; correct?   10:36
4    A  On the advice and direction of my counsel, I  10:36
5 respectfully decline to answer. And I assert the   10:36
6 rights guaranteed to me under the Fifth Amendment of  10:36
7 the Constitution of the United States.     10:36
8    Q  On December 11, 2015, you downloaded software  10:36
9 called Tortoise SVN; correct?        10:36
10    A  On the advice and direction of my counsel, I  10:37
11 respectfully decline to answer. And I assert the   10:37
12 rights guaranteed to me under the Fifth Amendment of  10:37
13 the Constitution of the United States.     10:37
14    Q  On December 11th, 2015, after you downloaded  10:37
15 Tortoise SVN, you then downloaded approximately    10:37
16 14,000 files from the SVN repository; correct?   10:37
17    A  On the advice and direction of my counsel, I  10:37
18 respectfully decline to answer. And I assert the   10:37
19 rights guaranteed to me under the Fifth Amendment of  10:37
20 the Constitution of the United States.     10:37
21    Q  The files you downloaded from the SVN    10:37
22 repository on December 11, 2015, totaled 9.7 gigabytes  10:37
23 of data; correct?            10:37
24    A  On the advice and direction of my counsel, I  10:37
25 respectfully decline to answer. And I assert the   10:37

Page 60

1 rights guaranteed to me under the Fifth Amendment of  10:37
2 the Constitution of the United States.     10:37
3    Q  The files downloaded from the SVN repository  10:37
4 on December 11, 2015, included approximately    10:37
5 2 gigabytes of data from LiDar subdirectories;   10:37
6 correct?              10:38
7    A  On the advice and direction of my counsel, I  10:39
8 respectfully decline to answer. And I assert the   10:39
9 rights guaranteed to me under the Fifth Amendment of  10:39
10 the Constitution of the United States.     10:39
11    Q  The approximately 14,000 files you downloaded  10:38
12 from Google's SVN repository on December 11, 2015, was  10:38
13 not related to any legitimate work by you in your role  10:38
14 as a Google Waymo employee; correct?      10:38
15    A  On the advice and direction of my counsel, I  10:38
16 respectfully decline to answer. And I assert the   10:38
17 rights guaranteed to me under the Fifth Amendment of  10:38
18 the Constitution of the United States.     10:38
19    Q  You downloaded approximately 14,000 files   10:38
20 from Google's SVN repository without authorization   10:38
21 from Google; correct?          10:38
22    A  On the advice and direction of my counsel, I  10:38
23 respectfully decline to answer. And I assert the   10:38
24 rights guaranteed to me under the Fifth Amendment of  10:38
25 the Constitution of the United States.     10:38

Page 61

16 (Pages 58 - 61)

```
 1    Q  On December 11th, 2015, you downloaded    10:38
 2  approximately 14,000 files from Google's SVN    10:38
 3  repository so that you could use them for the new    10:38
 4  company you were founding; correct?    10:39
 5    A  On the advice and direction of my counsel, I    10:39
 6  respectfully decline to answer.  And I assert the    10:39
 7  rights guaranteed to me under the Fifth Amendment of    10:39
 8  the Constitution of the United States.    10:39
 9    Q  You downloaded approximately 14,000 files on    10:39
10  December 11, 2015, from Google's SVN repository so    10:39
11  that you could use them to compete with Google;    10:39
12  correct?    10:39
13    A  On the advice and direction of my counsel, I    10:39
14  respectfully decline to answer.  And I assert the    10:39
15  rights guaranteed to me under the Fifth Amendment of    10:39
16  the Constitution of the United States.    10:39
17    Q  On December 14, 2015, you attached to your    10:39
18  Google-issued laptop a Transcend RDF 45 USB 3.0 Card    10:39
19  Reader; correct?    10:39
20    A  On the advice and direction of my counsel, I    10:40
21  respectfully decline to answer.  And I assert the    10:40
22  rights guaranteed to me under the Fifth Amendment of    10:40
23  the Constitution of the United States.    10:40
24    Q  On December 14, 2015, you attached an    10:40
25  external storage device to your Google-issued laptop    10:40
                                                  Page 62
```

```
 1  for approximately eight hours; correct?    10:40
 2    A  On the advice and direction of my counsel, I    10:40
 3  respectfully decline to answer.  And I assert the    10:40
 4  rights guaranteed to me under the Fifth Amendment of    10:40
 5  the Constitution of the United States.    10:40
 6    Q  On December 14, 2015, you copied    10:40
 7  approximately 14,000 confidential Google files which    10:40
 8  you had previously downloaded from the SVN server to    10:40
 9  an external storage device; correct?    10:40
10    A  On the advice and direction of my counsel, I    10:40
11  respectfully decline to answer.  And I assert the    10:40
12  rights guaranteed to me under the Fifth Amendment of    10:40
13  the Constitution of the United States.    10:40
14    Q  On December 14th, 2015, you copied    10:40
15  approximately 14,000 confidential Google files to an    10:40
16  external storage device without authorization from    10:40
17  Google; correct?    10:40
18    A  On the advice and direction of my counsel, I    10:40
19  respectfully decline to answer.  And I assert the    10:40
20  rights guaranteed to me under the Fifth Amendment of    10:40
21  the Constitution of the United States.    10:40
22    Q  On December 14th, 2015, you copied 14 --    10:40
23  approximately 14,000 confidential Google files to an    10:41
24  external storage device so you could use them for the    10:41
25  new company you were founding; correct?    10:41
                                                  Page 63
```

```
 1    A  On the advice and direction of my counsel, I    10:41
 2  respectfully decline to answer.  And I assert the    10:41
 3  rights guaranteed to me under the Fifth Amendment of    10:41
 4  the Constitution of the United States.    10:41
 5    Q  On December 14, 2015, you copied    10:41
 6  approximately 14,000 confidential Google files to an    10:41
 7  external storage device so that you could use them to    10:41
 8  compete with Google; correct?    10:41
 9    A  On the advice and direction of my counsel, I    10:41
10  respectfully decline to answer.  And I assert the    10:41
11  rights guaranteed to me under the Fifth Amendment of    10:41
12  the Constitution of the United States.    10:41
13    Q  On December 18, 2015, you reformatted the    10:41
14  Windows operating system on your Google-issued laptop    10:41
15  to a Linux operating system; correct?    10:41
16    A  On the advice and direction of my counsel, I    10:41
17  respectfully decline to answer.  And I assert the    10:41
18  rights guaranteed to me under the Fifth Amendment of    10:41
19  the Uni- -- of the Constitution of the United States.    10:41
20    Q  On December 18, 2015, you reformatted the    10:41
21  operating system on your Google-issued laptop because    10:42
22  you thought this would conceal the fact that you had    10:42
23  downloaded and copied 14,000 confidential Google files    10:42
24  from the SVN server; correct?    10:42
25    A  On the advice and direction of my counsel, I    10:42
                                                  Page 64
```

```
 1  respectfully decline to answer.  And I assert the    10:42
 2  rights guaranteed to me under the Fifth Amendment of    10:42
 3  the Constitution of the United States.    10:42
 4    Q  You had access to Google's internal drive    10:42
 5  database while you were a Google employee; correct?    10:42
 6    A  On the advice and direction of my counsel, I    10:42
 7  respectfully decline to answer.  And I assert my    10:42
 8  rights guaranteed to me under the Fifth Amendment of    10:42
 9  the Constitution of the United States.    10:42
10    Q  On January 3rd, 2016, you exported five --    10:42
11  five files from Google Drive's database to a personal    10:42
12  device; correct?    10:42
13    A  On the advice and direction of my counsel, I    10:42
14  respectfully decline to answer.  And I assert the    10:42
15  rights guaranteed to me under the Fifth Amendment of    10:42
16  the Constitution of the United States.    10:42
17    Q  On January 3rd, 2016, you exported a file    10:42
18  called "PBR Intensity Calibration" from Google's    10:42
19  internal drive database; correct?    10:43
20    A  On the advice and direction of my counsel, I    10:43
21  respectfully decline to answer.  And I assert the    10:43
22  rights guaranteed to me under the Fifth Amendment of    10:43
23  the Constitution of the United States.    10:43
24    Q  On January 3rd, 2016, you exported a file    10:43
25  called "PBR Extrinsic Calibration" from Google's    10:43
                                                  Page 65
```

17 (Pages 62 - 65)

1 internal drive database; correct?          10:43
2    A  On the advice and direction of my counsel, I   10:43
3 respectfully decline to answer.  And I assert the   10:43
4 rights guaranteed to me under the Fifth Amendment of   10:43
5 the Constitution of the United States.          10:43
6    Q  On January 3rd, 2016, you also exported files   10:43
7 called "TX and RX Tuning Instructions," "GBR Assembly   10:43
8 Flowchart SOP," and "TBR Testing Station" from      10:43
9 Google's internal drive database; correct?       10:43
10    A  On the advice and direction of my counsel, I   10:43
11 respectfully decline to answer.  And I assert the   10:43
12 rights guaranteed to me under the Fifth Amendment of   10:43
13 the Constitution of the United States.          10:44
14    Q  The five files you exported from Google's   10:44
15 internal drive database on January 3rd, 2016, were   10:44
16 exported so that you could use them to support the new  10:44
17 company you were founding?          10:44
18    A  On the advice and direction of my counsel, I   10:44
19 respectfully decline to answer.  And I assert the   10:44
20 rights guaranteed to me under the Fifth Amendment of   10:44
21 the Constitution of the United States.          10:44
22    Q  The five files that you exported from      10:44
23 Google's internal drive database on January 3rd, 2016,  10:44
24 were exported so that you could use them to compete    10:44
25 with Google; correct?          10:44

Page 66

1    A  On the advice and direction of my counsel, I   10:44
2 respectfully decline to answer.  And I assert the   10:44
3 rights guaranteed to me under the Fifth Amendment of   10:44
4 the Constitution of the United States.          10:44
5    Q  The 14,000 files that you exported to an   10:44
6 external device on December 14th, 2015, were exported   10:45
7 so that you could use them to compete with Google by   10:45
8 using Google's confidential information; correct?    10:45
9    A  On the advice and direction of my counsel, I   10:45
10 respectfully decline to answer.  And I assert the   10:45
11 rights guaranteed to me under the Fifth Amendment of   10:45
12 the Constitution of the United States.          10:45
13    Q  The five files you exported on January 3rd,   10:45
14 2016, were exported so that you could compete with   10:46
15 Google by using Google's confidential information?   10:46
16    A  On the advice and direction of my counsel, I   10:46
17 respectfully decline to answer.  And I assert the   10:46
18 rights guaranteed to me under the Fifth Amendment of   10:46
19 the Constitution of the United States.          10:46
20    Q  On January 11th, 2016, you exported a file   10:46
21 called "Chauffeur TL Weekly Updates Q4 2015" from   10:46
22 Google's internal drive database?          10:46
23    A  On the direction of my counsel, I       10:46
24 respectfully decline to answer.  And I assert the   10:46
25 rights guaranteed to me under the Fifth Amendment of   10:46

Page 67

1 the Constitution of the United States.          10:46
2    Q  On January 11, 2016, you exported a file from   10:46
3 Google's internal drive database so that you could use   10:46
4 it to support the new company you were founding --   10:46
5 founding; correct?          10:46
6    A  On the advice and direction of my counsel, I   10:46
7 respectfully decline to answer.  And I assert the   10:46
8 rights guaranteed to me under the Fifth Amendment of   10:46
9 the Constitution of the United States.          10:47
10    Q  On January 11, 2016, you exported a file from   10:47
11 Google's internal drive database so that you could use   10:47
12 it at your new company to compete with Google?    10:47
13    A  On the advice of and -- and direction of my   10:47
14 counsel, I respectfully decline to answer.  And I   10:47
15 assert the rights guaranteed to me under the Fifth   10:47
16 Amendment of the Constitution of the United States.   10:47
17    Q  You directed Google employees that you asked   10:47
18 to join us at your new company to export documents   10:47
19 from Google computers, before departing Google, to   10:47
20 bring with you to Waymo -- to Otto?          10:47
21    A  On the advice and direction of my counsel, I   10:48
22 respectfully decline to answer.  And I assert the   10:48
23 rights guaranteed to me under the Fifth Amendment of   10:48
24 the Constitution of the United States.          10:48
25    Q  Let me just ask that again, because I asked   10:48

Page 68

1 it wrong.          10:48
2       You directed Google employees, that you asked  10:48
3 to join us at your new company, to export documents   10:48
4 from Google computers, before departing Google, to   10:48
5 bring them with you to Otto?          10:48
6    A  On the advice and direction of my counsel, I   10:48
7 respectfully decline to answer.  And I assert the   10:48
8 rights guaranteed to me under the Fifth Amendment of   10:48
9 the Constitution of the United States.          10:48
10    Q  You asked that former Google employees bring   10:48
11 Google confidential information with them when they   10:48
12 joined your new company?          10:48
13    A  On the advice and direction of my counsel, I   10:48
14 respectfully decline to answer.  And I assert the   10:48
15 rights guaranteed to me under the Fifth Amendment of   10:48
16 the Constitution of the United States.          10:49
17    Q  Sameer Kshirsagar was a former Google   10:49
18 employee who you asked to take confidential       10:49
19 information from Google to Otto; correct?       10:49
20    A  On the advice and direction of my counsel, I   10:49
21 respectfully decline to answer.  And I assert the   10:49
22 rights guaranteed to me under the Fifth Amendment of   10:49
23 the Constitution of the United States.          10:49
24    Q  You encouraged Sameer to bring confidential   10:49
25 information with him when you recruited him to join   10:49

Page 69

18 (Pages 66 - 69)

1 Otto; correct?                                         10:49
2     A  On the advice and direction of my counsel, I   10:49
3 respectfully decline to answer.  And I assert the      10:49
4 rights guaranteed to me under the Fifth Amendment of   10:49
5 the Constitution of the United States.                 10:49
6     Q  You recruited Google employees to join you at   10:49
7 Otto because they had access to Google's confidential  10:50
8 information?                                            10:50
9     A  On the advice and direction of my counsel, I    10:50
10 respectfully decline to answer.  And I assert the      10:50
11 rights guaranteed to me under the Fifth Amendment of   10:50
12 the Constitution of the United States.                 10:50
13     Q  You continue to retain documents, including     10:50
14 Google and Waymo confidential information, that you     10:50
15 downloaded prior to your resignation of Google?         10:50
16     A  On the advice and direction of my counsel, I    10:50
17 respectfully decline to answer.  And I assert the       10:50
18 rights guaranteed to me under the Fifth Amendment of    10:50
19 the Constitution of the United States.                  10:50
20     Q  You continue to retain the 14,000 documents      10:50
21 that you downloaded in December 15 -- December 2015      10:50
22 from the Google SVN server?                             10:50
23     A  On the advice and direction of my counsel, I     10:50
24 respectfully decline to answer.  And I assert the        10:50
25 rights guaranteed to me under the Fifth Amendment of     10:50
                                                         Page 70

1 the Constitution of the United States.                 10:51
2     Q  You still have the media device through which   10:51
3 you downloaded the approximately 14,000 files in       10:51
4 December 15 -- December 2015; correct?                 10:51
5     A  On the advice and direction of my counsel, I    10:51
6 respectfully decline to answer.  And I assert the      10:51
7 rights guaranteed to me under the Fifth Amendment of   10:51
8 the Constitution of the United States.                 10:51
9     Q  You have referred to the 14,000 documents       10:51
10 downloaded in 2015 during your work at Otto; correct?  10:51
11     A  On the advice and direction of my counsel, I    10:51
12 respectfully decline to answer.  And I assert the       10:51
13 rights guaranteed to me under the Fifth Amendment of    10:51
14 the Constitution of the United States.                  10:51
15     Q  You have referred to the 14,000 documents        10:51
16 downloaded in 2015 during your work at Uber; correct?   10:51
17     A  On the advice and direction of my counsel, I     10:51
18 respectfully decline to answer.  And I assert the        10:51
19 rights guaranteed to me under the Fifth Amendment of     10:51
20 the Constitution of the United States.                   10:52
21     Q  Uber is aware that you have referred to the      10:52
22 14,000 documents downloaded in December 2015 during      10:52
23 your work at Uber; correct?                              10:52
24     A  On the advice and direction of my counsel, I      10:52
25 respectfully decline to answer.  And I assert the         10:52
                                                         Page 71

1 rights guaranteed to me under the Fifth Amendment of   10:52
2 the Constitution of the United States.                 10:52
3     Q  Uber has encouraged you to use the              10:52
4 14,000 documents downloaded in December 2015 during    10:52
5 your work at Uber; correct?                            10:52
6     A  On the advice and direction of my counsel, I    10:52
7 respectfully decline to answer.  And I assert the      10:52
8 rights guaranteed to me under the Fifth Amendment of   10:52
9 the Constitution of the United States.                 10:52
10     Q  Uber and its management know that you have      10:52
11 retained the 14,000 documents you downloaded in        10:52
12 December 2015?                                         10:52
13     MS. RAY:  Objection; form.                         10:52
14     MR. EHRLICH:  You can answer.                      10:52
15     THE WITNESS:  On the advice and direction of       10:52
16 my counsel, I respectfully decline to answer.  And I   10:52
17 assert the rights guaranteed to me under the Fifth     10:52
18 Amendment of the Constitution of the United States.    10:53
19     MR. PERLSON:  Q.  You have informed Goober          10:53
20 and -- Uber and its management that you still have the  10:53
21 14,000 documents downloaded in December 2015 from       10:53
22 Google?                                                 10:53
23     A  On the advice and direction of my counsel, I     10:53
24 respectfully decline to answer.  And I assert the        10:53
25 rights guaranteed to me under the Fifth Amendment of     10:53
                                                         Page 72

1 the Constitution of the United States.                 10:53
2     Q  You told Uber that you had in your personal     10:53
3 possession the 14,000 documents downloaded from Google  10:53
4 before the Otto acquisition; correct?                  10:53
5     A  On the advice and direction of my counsel, I    10:53
6 respectfully decline to answer.  And I assert the      10:53
7 rights guaranteed to me under the Fifth Amendment of   10:53
8 the Constitution of the United States.                 10:53
9     Q  You told Uber that you had in your personal     10:53
10 possession the 14,000 documents downloaded in 2015      10:53
11 before you even left Google; correct?                   10:54
12     A  On the advice and direction of my counsel, I     10:54
13 respectfully decline to answer.  And I assert the        10:54
14 rights guaranteed to me under the Fifth Amendment of     10:54
15 the Constitution of the United States.                   10:54
16     Q  When Mr. Kalanick recruited you to join Uber,    10:54
17 you informed him that you had taken the                  10:54
18 14,000 documents downloaded in 2015 from Google?         10:54
19     A  On the advice and direction of my counsel, I     10:54
20 respectfully decline to answer.  And I assert the        10:54
21 rights guaranteed to me under the Fifth Amendment of     10:54
22 the Constitution of the United States.                   10:54
23     Q  While Mr. Kalanick was recruiting you to join    10:54
24 Uber, he did not tell you to return the 14,000          10:54
25 documents you had downloaded in 2015 from Google?        10:55
                                                         Page 73

19 (Pages 70 - 73)

ATTORNEYS EYES ONLY

1    A  On the advice and direction of my counsel, I   10:55
2  respectfully decline to answer.  And I assert the    10:55
3  rights guaranteed to me under the Fifth Amendment of   10:55
4  the Constitution of the United States.      10:55
5    Q  When Mr. Kalanick recruited you to join Uber,   10:55
6  he encouraged you to keep the 14,000 documents you had   10:55
7  downloaded in 2015 from Google and use them at Uber    10:55
8  when you joined Uber; correct?           10:55
9    A  On the advice and direction of my counsel, I   10:55
10  respectfully decline to answer.  And I assert the    10:55
11  rights guaranteed to me under the Fifth Amendment of   10:55
12  the Constitution of the United States.      10:55
13    Q  You were retained as a consultant by Uber   10:55
14  before the Otto acquisition; correct?       10:55
15    A  On the advice and direction of my counsel, I   10:55
16  respectfully decline to answer.  And I assert the    10:55
17  rights guaranteed to me under the Fifth Amendment of   10:55
18  the Constitution of the United States.      10:56
19    Q  You were retained as a consultant by Uber   10:56
20  before you left Google; correct?          10:56
21    A  On the advice and direct- -- and direction of   10:56
22  my counsel, I respectfully decline to answer.  And I   10:56
23  assert the rights guaranteed to me under the Fifth    10:56
24  Amendment of the Constitution of the United States.   10:56
25    Q  The reason you were retained as a consultant   10:56

Page 74

1  by Uber before the Otto acquisition was so that you    10:56
2  could share the confidential information you learned   10:56
3  while you were employed by Google with Uber?    10:56
4    A  On the advice and direction of my counsel, I   10:56
5  respectfully decline to answer.  And I assert the    10:56
6  rights guaranteed to me under the Fifth Amendment of   10:56
7  the Constitution of the United States.      10:56
8    Q  While you were acting as a consultant for   10:56
9  Uber, you did share Google confidential information   10:56
10  you learned while you were employed by Google with    10:57
11  Uber?                      10:57
12    A  On the advice and direction of my counsel, I   10:57
13  respectfully decline to answer.  And I assert the    10:57
14  rights guaranteed to me under the Fifth Amendment of   10:57
15  the Constitution of the United States.      10:57
16    Q  While the -- the -- start over again.     10:57
17        The information that you shared with      10:57
18  Google -- let me start over again.         10:57
19        The information that you shared with Uber    10:57
20  while you were a consultant for Uber included    10:57
21  information from the 14,000 files you downloaded in   10:57
22  December 2015?                 10:57
23    A  On the advice and direction of my counsel, I   10:57
24  respectfully decline to answer.  And I assert the    10:57
25  rights guaranteed to me under the Fifth Amendment of   10:57

Page 75

1  the Constitution of the United States.      10:57
2    Q  Uber was aware that you were sharing with    10:57
3  them information obtained from the 14,000 files you   10:58
4  downloaded in December 15 -- 2015 as part of your    10:58
5  consulting work for Uber?            10:58
6      MS. RAY:  Objection; form.          10:58
7      MR. EHRLICH:  You can answer.        10:58
8      THE WITNESS:  Okay.             10:58
9        On the advice and direction of my counsel, I   10:58
10  respectfully decline to answer.  And I assert the    10:58
11  rights guaranteed to me under the Fifth Amendment of   10:58
12  the Constitution of the United States.      10:58
13      MR. PERLSON:  Q.  Uber has never asked you to   10:58
14  return to Google or Waymo the 14,000 files you    10:58
15  downloaded in December 2015?            10:58
16    A  On the advice and direction of my counsel, I   10:58
17  respectfully decline to answer.  And I assert the    10:58
18  rights guaranteed to me under the Fifth Amendment of   10:58
19  the Constitution of the United States.      10:58
20    Q  You have retained the -- the 14,000 files you   10:58
21  downloaded in December 2015 so that you can continue   10:59
22  to use this information at your work at Uber?    10:59
23    A  On the advice and direction of my counsel, I   10:59
24  respectfully decline to answer.  And I assert the    10:59
25  rights guaranteed to me under the Fifth Amendment of   10:59

Page 76

1  the Constitution of the United States.      10:59
2    Q  Uber has -- start over again.         10:59
3        Uber has instructed you, and continues to   10:59
4  instruct you, to keep the 14,000 files you downloaded   10:59
5  in December 2015 so that you can continue to use this   10:59
6  information at your work at Uber?          10:59
7    A  On the advice and direction of my counsel, I   10:59
8  respectfully decline to answer.  And I assert the    10:59
9  rights guaranteed to me under the Fifth Amendment of   10:59
10  the Constitution of the United States.      11:00
11    Q  You have retained the information -- let me   11:00
12  start over again.              11:00
13        You have retained the 14,000 documents and    11:00
14  other -- strike that.             11:00
15        You have retained the 14,000 documents you    11:00
16  downloaded in December 2015 because it contains    11:00
17  information that is not generally known in the    11:00
18  relevant field of that information?        11:00
19    A  On the advice and direction of my counsel, I   11:00
20  respectfully decline to answer.  And I assert the    11:00
21  rights guaranteed to me under the Fifth Amendment of   11:00
22  the Constitution of the United States.      11:00
23    Q  You have retained the -- the 14,000 files you   11:00
24  downloaded in December 2015 and the other information   11:00
25  you took with you -- let me start over again.    11:00

Page 77

20 (Pages 74 - 77)

ATTORNEYS EYES ONLY

1    You have retained the 14,000 files you         11:00
2    downloaded in 2015 because it derives independent    11:01
3    economic value from the fact that the information in   11:01
4    those documents is not generally known in the relevant  11:01
5    field; correct?                          11:01
6        A  On the advice and direction of my counsel, I   11:01
7    respectfully decline to answer.  And I assert the     11:01
8    rights guaranteed to me under the Fifth Amendment of   11:01
9    the Constitution of the United States.          11:01
10   Q  The 14,000 files that you downloaded in       11:01
11   December 2015 contain trade secrets; correct?       11:01
12       MS. RAY:  Objection; form.              11:01
13       MR. EHRLICH:  You can answer.            11:01
14       THE WITNESS:  Okay.                 11:01
15       On the advice and direction of my counsel, I    11:01
16   respectfully decline to answer.  And I assert the     11:01
17   rights guaranteed to me under the Fifth Amendment of   11:01
18   the Constitution of the United States.          11:02
19       MR. PERLSON:  Q.  You retained the five files  11:02
20   you exported in January 2016 because it contains      11:02
21   informa- -- they contain information that derive      11:02
22   independent economic value from the fact that it is    11:02
23   not generally known?                    11:02
24       A  On the advice and direction of my counsel, I   11:02
25   respectfully decline to answer.  And I assert the     11:02
                                        Page 78

1    rights guaranteed to me under the Fifth Amendment of   11:02
2    the Constitution of the United States.          11:02
3        Q  You have used the confidential information     11:02
4    contained in the five files exported on January 3rd,   11:03
5    2016, for the benefit of Uber in the past?        11:03
6        A  On the advice and direction of my counsel, I   11:03
7    respectfully decline to answer.  And I assert the     11:03
8    rights guaranteed to me under the Fifth Amendment of   11:03
9    the Constitution of the United States.          11:03
10   Q  You expect to continue to use the 14,000       11:03
11   documents you downloaded in December 2015 for the     11:03
12   benefit of Uber; correct?                  11:03
13       A  On the advice and direction of my counsel, I   11:03
14   respectfully decline to answer.  And I assert the     11:03
15   rights guaranteed to me under the Fifth Amendment of   11:03
16   the Constitution of the United States.          11:03
17   Q  You expect to continue to use the five files    11:03
18   you downloaded on January 3rd, 2016, for the benefit  11:03
19   of Uber?                           11:04
20       A  On the advice and direction of my counsel, I   11:04
21   respect -- I respectfully decline to answer.  And I    11:04
22   assert the rights guaranteed to me under the Fifth    11:04
23   Amendment of the Constitution of the United States.    11:04
24   Q  Are you aware that, in a hearing before the    11:04
25   judge in this case, Uber's lawyer, Arturo Gonzalez,   11:04
                                        Page 79

1    said that he would love to put you on the witness     11:04
2    stand to explain what happened, because he thinks you  11:04
3    have a good story to tell?                 11:04
4        MS. RAY:  I instruct you not to answer to the   11:04
5    extent that what you know is as the result of       11:04
6    attorney-client privileged communications.  But you   11:04
7    may otherwise answer.                    11:04
8        MR. EHRLICH:  I join in that instruction.      11:04
9    But, to the extent it goes beyond that, I instruct you  11:04
10   to assert your rights.                   11:04
11       THE WITNESS:  On the advice and direction of   11:04
12   my counsel, I respectfully decline to answer.  And I   11:04
13   assert the rights guaranteed to me under the Fifth    11:04
14   Amendment of the Constitution of the United States.    11:05
15       MR. PERLSON:  Q.  Do you have a good story to   11:05
16   tell in this case?                     11:05
17       A  On the advice and direction of my counsel, I   11:05
18   respectfully decline to answer.  And I assert the     11:05
19   rights guaranteed to me under the Fifth Amendment of   11:05
20   the Constitution of the United States.          11:05
21   Q  Have you told your good story to           11:05
22   Mr. Gonzalez?                        11:05
23       A  On the advice and direction of my counsel, I   11:05
24   respectfully decline to answer.  And I assert the     11:05
25   rights granted to me under the Fifth Amendment of the  11:05
                                        Page 80

1    Constitution of the United States.            11:05
2        Q  Is part of your good story that you received   11:05
3    a bachelor of science degree in industrial engineering  11:05
4    and operations research in 2002 from the University of  11:05
5    California at Berkeley?                   11:05
6        MR. EHRLICH:  Hold on one second.  Let me      11:05
7    just -- the question is whether that's part of your   11:05
8    good story.                         11:05
9        So, I'm going to instruct you to assert your    11:05
10   rights.  Go ahead.                     11:05
11       THE WITNESS:  Okay.                 11:05
12       On the advice and direction of my counsel, I    11:05
13   respectfully decline to answer.  And I assert the     11:05
14   rights guaranteed to me under the Fifth Amendment of   11:05
15   the Constitution of the United States.          11:06
16       MR. EHRLICH:  Mr. Perlson, just -- can I --    11:06
17   for the record, my partner, Ismail Ramsey, has joined.  11:06
18       And, if I could just take a pause.  I know     11:06
19   that wasn't your question here.  But as is clear,     11:06
20   he's -- he's being instructed to assert his        11:06
21   constitutional rights very broadly.            11:06
22       However, if you did want to ask about any of    11:06
23   his work or upbringing before joining Google, you can  11:06
24   go ahead and ask those questions, if -- if that's of   11:06
25   interest.                          11:06
                                        Page 81

21 (Pages 78 - 81)

1     MR. PERLSON:  Thanks.           11:06
2   Q  Is part of your good story that you received   11:06
3 a master's degree from Berkeley in 2003?      11:06
4   A  On the advice and direction of my counsel, I   11:06
5 respectfully decline to answer.  And I assert the   11:06
6 rights guaranteed to me under the Fifth Amendment of   11:06
7 the Constitution of the United States.       11:07
8   Q  Is part of your good story that you developed   11:07
9 technology for a robotic motorcycle between 2003 and   11:07
10 2006?                 11:07
11   A  On the advice and direction of my counsel, I   11:07
12 respectfully decline to answer.  And I assert the   11:07
13 rights guaranteed to me under the Fifth Amendment of   11:07
14 the Constitution of the United States.       11:07
15     MR. EHRLICH:  And excuse me, Counsel.  I just   11:07
16 want to make clear -- I want to make sure I    11:07
17 understand.            11:07
18     You're not asking the question of fact    11:07
19 whether he, in fact, did these things, or whether he   11:07
20 had this education or, you know, developed this   11:07
21 robotic motorcycle.         11:07
22     You're framing it in terms of whether that's   11:07
23 part of the good story that Mr. Gonzalez was referring   11:07
24 to?                11:07
25     MR. PERLSON:  I'm asking the questions that   11:07

Page 82

1 I'm asking.  And the -- Judge Alsup's rules, I think,   11:07
2 are pretty clear that, if you have an objection, you   11:07
3 say it in the basis of form.        11:07
4     MR. EHRLICH:  Okay.          11:07
5     MR. PERLSON:  So, if you want to object on   11:07
6 the basis of form --          11:07
7     MR. EHRLICH:  So no, I don't want to object.   11:07
8 I just would -- thought it might be helpful if you   11:07
9 want answers to those questions.  But I'll -- I'll --   11:08
10 I won't object, and you can go ahead.      11:08
11     I don't know if there's a question.     11:08
12     MR. PERLSON:  I don't, either.       11:08
13     MR. EHRLICH:  I think there wasn't, but I --   11:08
14 I wanted to offer that.         11:08
15     MR. PERLSON:  Okay.          11:08
16     MS. RAY:  Could -- could you hold on a    11:08
17 moment.             11:08
18     May we chat a moment.         11:08
19     Can we go off the record a moment, please.    11:08
20     MR. PERLSON:  Sure.  There's not -- I don't   11:08
21 think there's a question.        11:08
22     THE VIDEOGRAPHER:  We are going off the   11:08
23 record.  The time is 11:08.        11:08
24     (Recess taken.)           11:08
25     THE VIDEOGRAPHER:  We are back on the record.   11:24

Page 83

1 The time is 11:24.             11:24
2     MR. PERLSON:  Q.  Mr. Levandowski, is part of   11:24
3 your good story that you developed a self-driving   11:24
4 motorcycle that entered the DARPA Challenge of -- in   11:24
5 2004?                 11:24
6   A  On the advice and direction of my counsel, I   11:24
7 respectfully decline to answer.  And I assert the   11:24
8 rights guaranteed to me under the Fifth Amendment of   11:24
9 the Constitution of the United States.       11:24
10   Q  Is part of your good story that you were the   11:24
11 chief technologist of unmanned systems at ENSCO, Inc.,   11:24
12 from 2006 to 2007?           11:25
13   A  On the advice and direction of my counsel, I   11:25
14 respectfully decline to answer.  And I assert the   11:25
15 rights guaranteed to me under the Fifth Amendment of   11:25
16 the Constitution of the United States.       11:25
17   Q  Is part of your story the work you did -- I'm   11:25
18 sorry.                11:25
19     Is part of your good story the work you did   11:25
20 for Google between 2007 and 2016?      11:25
21   A  On the advice and direction of my counsel, I   11:25
22 respectfully decline to answer.  And I assert the   11:25
23 rights guaranteed to me under the Fifth Amendment of   11:25
24 the Constitution of the United States.       11:25
25   Q  Did the work that you did while you were at   11:25

Page 84

1 Berkeley have to do with -- have anything to do with   11:25
2 the work that you did while you were at Google?   11:25
3     MR. EHRLICH:  You can answer the question   11:25
4 about your work at Berkeley -- the -- the nature of   11:25
5 your work at Berkeley.          11:25
6     THE WITNESS:  Sure.          11:25
7     I --                11:25
8     MR. EHRLICH:  But -- but I'm going to    11:25
9 instruct you not to answer in any way about matters   11:25
10 that occurred after the date you began employment with   11:26
11 Google.               11:26
12     THE WITNESS:  Okay.          11:26
13     Well, I can't answer whether it relates or   11:26
14 not.  But I can say that, at Berkeley, I worked on   11:26
15 self-driving vehicles, indoors, outdoors, and other   11:26
16 robotic vehicles.           11:26
17     MR. PERLSON:  Q.  And, did the work that   11:26
18 you -- and does the work that you did at Berkeley   11:26
19 relating to self-driving vehicles have anything to do   11:26
20 with the work that you did at Google?      11:26
21   A  I'm going to --           11:26
22     MR. EHRLICH:  On -- on that question, because   11:26
23 I'm trying to be very clear to preserve       11:26
24 Mr. Levandowski's Fifth Amendment privilege here, that   11:26
25 if the question is calling for the nature of his work   11:26

Page 85

22 (Pages 82 - 85)

1 prior to joining Google, then you can answer.    11:26
2     But I'm instructing you not to draw any    11:26
3 comparisons between the two, because you are not    11:26
4 answering questions about matters occurring after you    11:27
5 began employment with Google.    11:27
6     Go ahead.    11:27
7     THE WITNESS:  Can I have you repeat the    11:27
8 question then.    11:27
9     MR. PERLSON:  Sure.    11:27
10     THE WITNESS:  I can probably read it.    11:27
11     MR. EHRLICH:  Yeah, maybe you can look here.    11:27
12     THE WITNESS:  Yeah.    11:27
13     And does -- okay.  And, did the work that --    11:27
14 the work that you did at Berkeley, relating to    11:27
15 self-driving vehicle, have anything to do with the    11:27
16 work that you did at Google?    11:27
17     MR. EHRLICH:  At Google.  So, answer the    11:27
18 first part.    11:27
19     THE WITNESS:  At Berkeley, I worked on    11:27
20 multiple projects, including navigation of vehicles,    11:27
21 self-driving vehicles built on -- using Java for    11:27
22 navigation, using cameras, GPS, and other sensors,    11:27
23 too.    11:28
24     MR. PERLSON:  Q.  And does the work that you    11:28
25 just described that you did at Ber- -- Berkeley have    11:28
Page 86

1 any relation to the work that you did at Google?    11:28
2     A.  On the --    11:28
3     MR. EHRLICH:  I'll instruct you --    11:28
4     THE WITNESS:  -- advice of -- on the -- on    11:28
5 the advice and direction of my counsel, I respectfully    11:28
6 decline to answer.  And I assert the rights guaranteed    11:28
7 to me under the Fifth Amendment of the Constitution of    11:28
8 the United States.    11:28
9     MR. PERLSON:  Q.  And, does the work that you    11:28
10 just described, while you were at Berkeley, have    11:28
11 anything to do with the work that you do at Uber?    11:28
12     A.  On the advice and direction of my counsel, I    11:28
13 respectfully decline to answer.  And I assert the    11:28
14 rights guaranteed to me under the Fifth Amendment of    11:28
15 the Constitution of the United States.    11:28
16     Q.  And, does the work that you did at Berkeley    11:28
17 cause you to be knowledgeable as to the state of    11:28
18 self-driving car technology today?    11:28
19     MR. EHRLICH:  You can answer that.    11:28
20     THE WITNESS:  Yeah, I was one of the first    11:28
21 pioneers in the field in terms of building    11:28
22 self-driving vehicles.    11:29
23     MR. PERLSON:  Q.  And what -- and how -- how    11:29
24 does Uber's current self-driving technology compare to    11:29
25 the technology that you worked on at Berkeley?    11:29
Page 87

1     MR. EHRLICH:  I'm going to instruct you.    11:29
2     THE WITNESS:  On the advice and direction of    11:29
3 my counsel, I respectfully decline to answer.  And I    11:29
4 assert the rights and -- I assert the rights    11:29
5 guaranteed to me under the Fifth Amendment of the    11:29
6 Constitution of the United States.    11:29
7     MR. PERLSON:  Q.  And how does the    11:29
8 self-driving vehicle technology that you worked on at    11:29
9 Goo- -- at Google relate to the work you've described    11:29
10 at Berkeley?    11:29
11     A  On the advice and direction of counsel, I    11:29
12 respectfully decline to answer.  And I assert the    11:29
13 rights guaranteed to me under the Fifth Amendment of    11:29
14 the Constitution of the United States.    11:29
15     Q  How does the work that you did, in relation    11:29
16 to the self-driving motorcycle that entered the DARPA    11:29
17 Grand Challenge in 2004, relate to the work that you    11:30
18 did for Google in self-driving vehicle technology?    11:30
19     A  On the advice and direction of my counsel, I    11:30
20 respectfully decline to answer.  And I assert the    11:30
21 rights guaranteed to me under the Fifth Amendment of    11:30
22 the Constitution of the United States.    11:30
23     MR. EHRLICH:  And Counsel, can I just make a    11:30
24 comment?    11:30
25     I really want you to get answers to any    11:30
Page 88

1 questions you can, consistent with his Fifth Amendment    11:30
2 rights.    11:30
3     So, if you are interested in asking questions    11:30
4 about the -- the self-driving motorcycle related to    11:30
5 the DARPA Grand Challenge, I encourage you to ask    11:30
6 that.  He can answer those questions.    11:30
7     You don't have to answer -- you don't have to    11:30
8 ask him, of course.  It's your choice.    11:30
9     MR. PERLSON:  Q.  How does the work that you    11:30
10 did, in relation to the self-driving motorcycle that    11:31
11 entered the DARPA Challenge in 2004, relate to the    11:31
12 work that you are doing now at Uber?    11:31
13     A  On the advice and direction of my counsel, I    11:31
14 respectfully decline to answer.  And I assert the    11:31
15 rights guaranteed to me under the Fifth Amendment of    11:31
16 the Constitution of the United States.    11:31
17     Q  What are the advances that have been made at    11:31
18 Uber regarding self-driving technology over the    11:31
19 self-driving motorcycle that you developed in relation    11:31
20 to the 2004 DARPA Grand Challenge?    11:31
21     MR. EHRLICH:  Hold on.  Let me read the    11:31
22 question.    11:31
23     I'm going to instruct you to assert your    11:32
24 rights.    11:32
25     THE WITNESS:  On the advice and direction of    11:32
Page 89

Veritext Legal Solutions
866 299-5127

1 my counsel, I respectfully decline to answer. And I   11:32
2 assert the rights guaranteed to me under the Fifth   11:32
3 Amendment of the Constitution of the United States.   11:32
4        MR. PERLSON: Q. What are the differences   11:32
5 between the self-driving car technology that you   11:32
6 worked on at Google and the self-driving car   11:32
7 technology that you currently work on at Uber?   11:32
8    A On the advice and direction of my counsel, I   11:32
9 respectfully decline to answer. And I assert the   11:32
10 rights guaranteed to me under the Fifth Amendment of   11:32
11 the Constitution of the United States.   11:32
12    Q Do you agree that, while you were at Google,   11:32
13 Google invested time and money to allow you to develop   11:32
14 self-driving car technology?   11:33
15    A On the advice and direction of my counsel, I   11:33
16 respectfully decline to answer. And I assert the   11:33
17 rights guaranteed to me under the Fifth Amendment of   11:33
18 the Constitution of the United States.   11:33
19    Q Do you agree that the development of   11:33
20 self-driving car technology at Google took years of   11:33
21 work?   11:33
22    A On the advice and direction of my counsel, I   11:33
23 respectfully decline to answer. And I assert the   11:33
24 rights guaranteed to me under the Fifth Amendment of   11:33
25 the Constitution of the United States.   11:33

Page 90

1 decline to answer. And I assert the rights guaranteed   11:34
2 to me under the Fifth Amendment of the Constitution of   11:34
3 the United States.   11:34
4    Q Have you read the complaint in this case?   11:34
5    A On the advice of my counsel, I respectfully   11:35
6 decline to answer. And I assert the rights guaranteed   11:35
7 to me under the Fifth Amendment of the Constitution of   11:35
8 the United States.   11:35
9    Q Have you read the -- Waymo's motion for   11:35
10 preliminary injunction in this case?   11:35
11    A On the advice and direction of my counsel, I   11:35
12 respectfully decline to answer.   11:35
13    Q Can you identify any allegation in Waymo's   11:35
14 complaint that you believe is incorrect?   11:35
15    A Do you want me to finish my answer to the   11:35
16 previous one?   11:35
17        MR. EHRLICH: Yeah, go ahead -- go ahead and   11:35
18 answer -- give the full answer.   11:35
19        THE WITNESS: So, on the previous question,   11:35
20 let me just finish --   11:35
21        MR. PERLSON: Q. Oh, did I cut you off?   11:35
22    A Yeah, it's okay. No worries. I'll just   11:35
23 repeat.   11:35
24    Q I'm not really listening to --   11:35
25    A I -- I imagine it's repetitive.   11:35

Page 92

1    Q Do you agree that Waymo's self-driving car   11:33
2 technology today is a result of years of work and a   11:33
3 substantial investment of time and money?   11:33
4    A On the advice and direction of my counsel, I   11:33
5 respectfully decline to answer. And I assert the   11:33
6 rights guaranteed to me under the Fifth Amendment of   11:33
7 the Constitution of the United States.   11:33
8    Q Do you agree that development of self-driving   11:33
9 car technology, while you were at Google, involved   11:34
10 trial and error?   11:34
11    A On the advice and direction of my counsel, I   11:34
12 respectfully decline to answer. And I assert the   11:34
13 rights guaranteed to me under the Fifth Amendment of   11:34
14 the Constitution of the United States.   11:34
15    Q Isn't it correct that you use the knowledge   11:34
16 you learned through trial and error, while you were   11:34
17 working on self-driving car technology at Google, in   11:34
18 your work for Uber?   11:34
19    A On the advice and direction of my counsel, I   11:34
20 respectfully decline to answer. And I assert the   11:34
21 rights guaranteed to me under the Fifth Amendment of   11:34
22 the Constitution of the United States.   11:34
23    Q How does your work at Google relate to the   11:34
24 allegations in this case?   11:34
25    A On the advice of my counsel, I respectfully   11:34

Page 91

1        But on the advice and direction of my   11:35
2 counsel, I respectfully decline to answer. And I   11:35
3 assert the rights guaranteed to me under the Fifth   11:35
4 Amendment of the Constitution of the United States.   11:35
5        Okay. Now, this current question?   11:35
6    Q Let me just repeat it.   11:35
7    A Yes. Thank you.   11:35
8    Q Can you identify any allegation in Waymo's   11:35
9 complaint that you believe is incorrect?   11:35
10    A On the advice and direction of my counsel, I   11:35
11 respectfully decline to answer. And I assert the   11:35
12 rights guaranteed to me under the Fifth Amendment of   11:35
13 the Constitution of the United States.   11:36
14    Q Can you identify any allegation in Waymo's   11:36
15 preliminary injunction motion that is incorrect?   11:36
16    A On the advice and direction of my counsel, I   11:36
17 respectfully decline to answer. And I assert the   11:36
18 rights guaranteed to me under the Fifth Amendment of   11:36
19 the Constitution of the United States.   11:36
20    Q Isn't it correct that you cannot identify any   11:36
21 allegation or assertion made in any of the   11:36
22 declarations attached to Google's -- I'm sorry --   11:36
23 Waymo's motion for a preliminary injunction that is   11:36
24 incorrect?   11:36
25        MR. EHRLICH: I'm going to object to   11:36

Page 93

24 (Pages 90 - 93)

1 foundation.                                        11:36
2      But, I'm going to instruct you to assert your  11:36
3 rights.                                            11:36
4      MS. RAY:  Join.                               11:36
5      THE WITNESS:  On the advice and direction of  11:36
6 my counsel, I respectfully decline to answer.  And I  11:36
7 assert the rights guaranteed to me under the Fifth  11:36
8 Amendment of the Constitution of the United States.  11:37
9      MR. PERLSON:  Q.  Have you reviewed any of  11:37
10 the declarations attached to Waymo's motion for  11:37
11 preliminary injunction?                           11:37
12    A  On the advice and direction of my counsel, I  11:37
13 respectfully decline to answer.  And I assert the  11:37
14 rights guaranteed to me under the Fifth Amendment of  11:37
15 the Constitution of the United States.            11:37
16    Q  While at Otto, were you developing technology  11:37
17 relating to mid- and long-range LiDar systems?    11:37
18    A  On the advice and direction of my counsel, I  11:37
19 respectfully decline to answer.  And I assert the  11:37
20 rights guaranteed to me under the Fifth Amendment of  11:37
21 the Constitution of the United States.            11:37
22    Q  Uber is currently developing long- and       11:37
23 midrange LiDar systems; correct?                  11:37
24    A  On the advice and direction of my counsel, I  11:37
25 respectfully decline to answer.  And I assert the  11:37
                                              Page 94

1 rights guaranteed to me under the Fifth Amendment of  11:37
2 the Constitution of the United States.            11:38
3    Q  Uber's current LiDar development program     11:38
4 incorporates technology from Otto's LiDar development  11:38
5 program; correct?                                 11:38
6    A  On the advice and direction of my counsel, I  11:38
7 respectfully decline to answer.  And I assert the  11:38
8 rights guaranteed to me under the Fifth Amendment of  11:38
9 the Constitution of the United States.            11:38
10    Q  Are you currently participating in Uber's   11:38
11 LiDar work?                                       11:38
12    A  On the advice and direction of my counsel, I  11:38
13 respectfully decline to answer.  And I assert the  11:38
14 rights guaranteed to me under the Fifth Amendment of  11:38
15 the Constitution of the United States.            11:38
16    Q  Were you involved at all in Uber's regulatory  11:38
17 filing in September of 2016 regarding its self-driving  11:38
18 car technology?                                   11:39
19    A  On the advice and direction of my counsel, I  11:39
20 respectfully decline to answer.  And I assert the  11:39
21 rights guaranteed to me under the Fifth Amendment of  11:39
22 the Constitution of the United States.            11:39
23    Q  Isn't it true that the in-house technology   11:39
24 referred to in Uber's submission to Nevada, regarding  11:39
25 its self-driving car technology referred to a version  11:39
                                              Page 95

1 of its LiDar system that preceded the Fuji system?  11:39
2      MS. RAY:  Objection; form.                    11:39
3      THE WITNESS:  On the advice and direction of  11:39
4 my counsel, I respectfully decline to answer.  And I  11:39
5 assert the rights guaranteed to me under the Fifth  11:39
6 Amendment of the Constitution of the United States.  11:39
7      MR. PERLSON:  Q.  Isn't it true that the --   11:39
8 that Uber's submission in September 2016 of --     11:40
9 regarding its self-driving car technology to the   11:40
10 Nevada government, referred to a prototype that was  11:40
11 then in existence?                                11:40
12    A  On the advice and direction of my counsel, I  11:40
13 respectfully decline to answer.  And I assert the  11:40
14 rights guaranteed to me under the Fifth Amendment of  11:40
15 the Constitution of the United States.            11:40
16    Q  Did Otto ever use or solicit ████████ as a  11:40
17 vendor in developing its technology?              11:40
18      MS. RAY:  Objection; form.                    11:40
19      THE WITNESS:  On the advice and direction of  11:40
20 my counsel, I respectfully decline to answer.  And I  11:40
21 assert the rights guaranteed to me under the Fifth  11:40
22 Amendment of the Constitution of the United States.  11:41
23      MR. PERLSON:  Q.  Did Otto ever use or        11:41
24 solicit a company called ████ as a vendor in developing  11:41
25 its laser technology?                             11:41
                                              Page 96

1      MS. RAY:  Objection; form.                    11:41
2      THE WITNESS:  I'm sorry.  I was distracted.   11:41
3 Do you mind repeating it.                          11:41
4      MR. PERLSON:  Sure.                           11:41
5    Q  Did Otto ever use or solicit a company called  11:41
6 ████ as a vendor in developing its laser technology?  11:41
7      MS. RAY:  Objection; form.                    11:41
8      THE WITNESS:  On the advice and direction of  11:41
9 my counsel, I respectfully decline to answer.  And I  11:41
10 assert the rights guaranteed to me under the Fifth  11:41
11 Amendment of the Constitution of the United States.  11:41
12      MR. PERLSON:  Q.  Did Otto ever use or        11:41
13 solicit a company called ████ as a vendor in developing  11:41
14 its laser technology?                             11:41
15      MS. RAY:  Objection; form.                    11:41
16      THE WITNESS:  On the advice and direction of  11:41
17 my counsel, I respectfully decline to answer.  And I  11:41
18 assert the rights guaranteed to me under the Fifth  11:41
19 Amendment to the Constitution of the United States.  11:41
20      MR. PERLSON:  Q.  Has -- did Otto select      11:41
21 third-party vendors because of their knowledge of  11:41
22 Google's confidential technology?                 11:41
23    A  On the advice and direction of my counsel, I  11:41
24 respectfully decline to answer.  And I assert the  11:41
25 rights guaranteed to me under the Fifth Amendment to  11:41
                                              Page 97

25 (Pages 94 - 97)

**Page 98**

1  the Constitution of the United States.        11:41
2  Q  ████████████ is a supplier for Uber;   11:41
3  correct?                                  11:42
4  A  On the advice and direction of my counsel, I  11:42
5  respectfully decline to answer.  And I assert the  11:42
6  rights guaranteed to me under the Fifth Amendment to  11:42
7  the Constitution of the United States.       11:42
8  Q  On December 12th, 2016, ████████ sent  11:42
9  an e-mail to individuals at Uber, that inadvertently  11:42
10  included a Waymo employee; correct?          11:42
11  A  On the advice and direction of my counsel, I  11:42
12  respectfully decline to answer.  And I assert the  11:42
13  rights guaranteed to me under the Fifth Amendment to  11:42
14  the Uni- -- to the Constitution of the United States.  11:42
15  Q  And that e-mail -- the -- the December 13th,  11:42
16  2016, e-mail included a board that ████████ is  11:43
17  developing for Uber; correct?              11:43
18  A  On the advice and direction of my counsel, I  11:43
19  respectfully decline to answer.  And I assert the  11:43
20  rights guaranteed to me under the Fifth Amendment to  11:43
21  the Constitution of the United States.       11:43
22  Q  And that December 13, 2016, e-mail attached a  11:43
23  board design that was derived from information you  11:43
24  took from Google before you left Google; correct?  11:43
25  A  On the advice and direction of my counsel, I  11:43

**Page 99**

1  respectfully decline to answer.  And I assert the  11:43
2  rights granted to me -- guaranteed to me under the  11:43
3  Fifth Amendment to the -- to the Constitution of the  11:43
4  United States.                            11:44
5  Q  And that 2 -- and the December 13, 2016,  11:44
6  ████ e-mail attached a board design that used  11:44
7  information that was contained in the 14,000 documents  11:44
8  you downloaded from Google in December 15 --  11:44
9  December 2015; correct?                     11:44
10  A  On the advice and direction of my counsel, I  11:44
11  respectfully decline to answer.  And I assert the  11:44
12  rights guaranteed to me under the Fifth Amendment to  11:44
13  the Constitution of the United States.       11:44
14  Q  Uber would not have been able to have  11:44
15  developed the board design attached to the  11:44
16  December 13, 2016, ████ e-mail without using  11:44
17  information contained in the 14,000 documents you  11:45
18  downloaded from Google in 2 -- December 2015; correct?  11:45
19  A  On the advice and direction of my counsel, I  11:45
20  respectfully decline to answer.  And I assert the  11:45
21  rights guaranteed to me under the Fifth Amendment to  11:45
22  the Constitution of the United States.       11:45
23  MR. EHRLICH:  Do you need a break?       11:45
24  THE WITNESS:  I'm okay.                   11:45
25  MR. EHRLICH:  Do you need a break?  We can  11:45

**Page 100**

1  keep going.                               11:45
2  MR. PERLSON:  I don't care.              11:45
3  THE WITNESS:  Let's do it.               11:45
4  MR. EHRLICH:  Keep going?                11:45
5  THE WITNESS:  Yeah.                      11:45
6  MR. PERLSON:  The -- you threw me off, man.  11:45
7  MR. EHRLICH:  We can take a break, if you  11:45
8  want.                                    11:45
9  MR. PERLSON:  Q.  Fuji relates to a LiDar  11:45
10  system prototype that Uber has developed; correct?  11:45
11  A  On the advice and direction of my counsel, I  11:45
12  respectfully decline to answer.  And I assert the  11:45
13  rights guaranteed to me under the Fifth Amendment to  11:45
14  the Constitution of the United States.       11:46
15  Q  Work started on Fuji in October 2016;  11:46
16  correct?                                  11:46
17  A  On the advice and direction of my counsel, I  11:46
18  respectfully decline to answer.  And I assert the  11:46
19  rights guaranteed to me under the Fifth Amendment to  11:46
20  the Constitution of the United States.       11:46
21  Q  You personally are involved in the  11:46
22  development of Fuji; correct?              11:46
23  A  On the advice and direction of my counsel, I  11:46
24  respectfully decline to answer.  And I assert the  11:46
25  rights guaranteed to me under the Fifth Amendment to  11:46

**Page 101**

1  the -- to the Constitution of the United States.  11:46
2  Q  Would you agree with me that the following  11:46
3  statement is incorrect:                     11:46
4  "Anthony Levandowski has never had nor  11:46
5  currently has any design input in the number of  11:46
6  ████ number of ████, number of  11:46
7  ████, or ████ and ████ of the ████  11:47
8  ████ on the transmit PCBs for Fuji."       11:47
9  MR. EHRLICH:  Hold on.  Let me read that  11:47
10  question.                                 11:47
11  I instruct you to assert your rights.    11:47
12  THE WITNESS:  On the advice and direction of  11:47
13  my counsel, I respectfully decline to answer.  And I  11:47
14  assert the rights guaranteed to me under the Fifth  11:47
15  Amendment to the Constitution of the United States.  11:47
16  MR. PERLSON:  Q.  Is it correct that the  11:47
17  current Fuji system borrows technology from each of  11:47
18  Otto, Tyto, and Odin Wave?                 11:47
19  A  On the advice and direction of my counsel, I  11:48
20  respectfully decline to answer.  And I assert the  11:48
21  rights guaranteed to me under the Fifth Amendment to  11:48
22  the Constitution of the United States.       11:48
23  Q  At Uber, your team is experience --      11:48
24  experimenting with ████████ is that  11:48
25  correct?                                  11:48

26 (Pages 98 - 101)



**Page 102**

```
 1     A  On the advice and direction of my counsel, I   11:48
 2  respectfully decline to answer.  And I assert the    11:48
 3  rights guaranteed to me under the Fifth Amendment to 11:48
 4  the Constitution of the United States.               11:49
 5     Q  At Uber, your team is experiment --            11:49
 6  experimenting with ▮▮▮▮▮ to help                     11:49
 7  build a ▮▮▮▮▮                                        11:49
 8  correct?                                             11:49
 9     A  On the advice and direction of my counsel, I   11:49
10  respectfully decline to answer.  And I assert the    11:49
11  rights guaranteed to me under the Fifth Amendment to 11:49
12  the Constitution of the United States.               11:49
13     Q  At Uber, your team is developing ▮▮▮▮          11:49
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                                     11:49
17     A  On the advice and direction of my counsel, I   11:49
18  respectfully decline to answer.  And I assert the    11:49
19  rights guaranteed to me under the Fifth Amendment to 11:49
20  the Constitution of the United States.               11:49
21     Q  The ▮▮▮▮▮ that your                            11:49
22  team is working on at Uber relies on ▮▮▮             11:49
23  technology; correct?                                 11:49
24     A  On the advice and direction of my counsel, I   11:50
25  respectfully decline to answer.                      11:50
```

**Page 103**

```
 1     Q  The fi -- oh, sorry.                           11:50
 2     A  That's okay.                                   11:50
 3        And I assert the rights guaranteed to me       11:50
 4  under the Fifth Amendment to the Constitution of the 11:50
 5  United States.                                       11:50
 6     Q  The ▮▮▮ laser technology your team is          11:50
 7  working on at Uber uses a ▮▮▮▮▮                      11:50
 8  ▮▮▮; correct?                                        11:50
 9     A  On the advice and direction of my counsel, I   11:50
10  respectfully decline to answer.  And I assert the    11:50
11  rights guaranteed to me under the Fifth Amendment to 11:50
12  the Constitution of the United States.               11:50
13     Q  The ▮▮▮▮▮ technology your team is              11:50
14  working on at Uber uses ▮▮▮▮▮▮▮                      11:50
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                                  11:50
16  correct?                                             11:50
17     A  On the advice and direction of my counsel, I   11:50
18  respectfully decline to answer.  And I'm asserting the 11:50
19  rights guaranteed to me under the Fifth Amendment to 11:50
20  the Constitution of the United States.               11:51
21     Q  While you were at Google, Google's            11:51
22  self-driving car project used ▮▮▮▮▮                 11:51
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                                      11:51
    ▮▮▮▮▮▮▮▮▮▮; correct? 11:51
25     A  On the advice and direction of my counsel, I   11:51
```

**Page 104**

```
 1  respectfully decline to answer.  And I assert the    11:51
 2  rights guaranteed to me under the Fifth Amendment to 11:51
 3  the Constitution of the United States.               11:51
 4     Q  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is not generally              11:51
 7  known; correct?                                      11:52
 8     A  This is a general question.                    11:52
 9     MR. EHRLICH:  Let -- let me read it.              11:52
10     MR. PERLSON:  Let -- let me -- let me ask it      11:52
11  again.                                               11:52
12     THE WITNESS:  Okay.                               11:52
13     MR. PERLSON:  Q.  Before you left Google,         11:52
14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮ was not generally              11:52
17  known; correct?                                      11:52
18     A  On the advice and direction of my counsel, I   11:52
19  respectfully decline to answer.  And I assert the    11:52
20  rights guaranteed to me under the Fifth Amendment to 11:52
21  the Constitution of the United States.               11:53
22     Q  Uber's use of ▮▮▮▮▮▮▮▮▮▮                      11:53
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is not generally              11:53
25  known; correct?                                      11:53
```

**Page 105**

```
 1     A  On -- on the advice and direction of my        11:53
 2  counsel, I respectfully decline to answer.  And I    11:53
 3  assert the rights guaranteed to me under the Fifth   11:53
 4  Amendment to the Constitution to the United States.  11:53
 5     Q  The -- since -- let's start over.              11:53
 6        During your work at Otto, you did work in      11:54
 7  relation -- let me start over again.                 11:54
 8        Otto did development work regarding a LiDar    11:54
 9  system that uses a common transmit and receive lens; 11:54
10  correct?                                             11:54
11     A  On the advice and direction of my counsel, I   11:54
12  respectfully decline to answer.  And I assert the    11:54
13  rights guaranteed to me under the Fifth Amendment to 11:54
14  the Constitution of the United States.               11:54
15     Q  Otto developed a prototype LiDar system that   11:54
16  used a common transmit/receive lens; correct?        11:54
17     A  On the advice and direction of my counsel, I   11:54
18  respectfully decline to answer.  And I assert the    11:54
19  rights guaranteed to me under the Fifth Amendment to 11:54
20  the Constitution of the United States.               11:55
21     Q  Otto tested a LiDar system that used a common  11:55
22  transmit/receive lens; correct?                      11:55
23     A  On the advice and direction of my counsel, I   11:55
24  respectfully decline to answer.  And I assert the    11:55
25  rights guaranteed to me under the Fifth Amendment to 11:55
```

27 (Pages 102 - 105)

1 the Constitution of the United States.          11:55
2    Q   If a LiDar system that uses a common          11:55
3 transmit/receive lens does not presently exist at          11:55
4 Uber, it is because it was destroyed; correct?          11:55
5    A   On the advice and direction of my counsel, I   11:56
6 respectfully decline to answer.  And I assert the          11:56
7 rights guaranteed to me under the Fifth Amendment to   11:56
8 the Constitution of the United States.          11:56
9    Q   While at Uber -- let me start over again.          11:56
10       Since your employment with Google ended, you   11:56
11 have done work on LiDar systems at Otto and Uber where 11:56
12 the transmit and receive paths overlap --          11:56
13       MS. RAY:  Objection; form.          11:56
14       MR. PERLSON:  Q.  -- correct?          11:56
15    A   On the advice and direction of my counsel, I   11:56
16 respectfully decline to answer.  And I assert the          11:56
17 rights guaranteed to me under the Fifth Amendment to   11:56
18 the Uni-- to the Constitution of the United States.   11:57
19    Q   Since your employment with Google ended, you   11:57
20 have done work on LiDar systems at Otto and Uber,          11:57
21 where the transmit and receive paths overlap and          11:57
22 prototypes of such a system existed?          11:57
23       MS. RAY:  Objection; form.          11:57
24       THE WITNESS:  On the advice and direction of   11:57
25 my counsel, I respectfully decline to answer.  And I   11:57
Page 106

1 assert the rights guaranteed to me under the Fifth          11:57
2 Amendment to the Constitution of the United States.   11:57
3       MR. PERLSON:  Q.  If a prototype of work you   11:57
4 did on LiDar systems at Otto, and Uber where the          11:57
5 transmit and receive paths overlap does not exist, it   11:57
6 is because such a prototype has been destroyed?          11:58
7    A   On the advice and direction of my counsel, I   11:58
8 respectfully decline to answer.  And I assert the          11:58
9 rights guaranteed to me under the Fifth Amendment to   11:58
10 the Constitution of the United States.          11:58
11    Q   Any destruction of any Otto prototypes would   11:58
12 have been done at the instruction of Uber; correct?   11:58
13    A   On the advice and direction of my counsel, I   11:58
14 respectfully decline to answer.  And I assert the          11:58
15 rights guaranteed to me under the Fifth Amendment to   11:58
16 the Constitution of the United States.          11:58
17    Q   There has been instruction from management at   11:58
18 Uber to you to destroy prototypes that existed and          11:58
19 were designed at Uber?          11:58
20    A   On the advice and direction of my counsel, I   11:58
21 respectfully decline to answer.  And I assert the          11:58
22 rights guaranteed to me under the Fifth Amendment to   11:58
23 the Constitution of the United States.          11:59
24    Q   Management at Uber instructed you and Otto          11:59
25 employees to destroy prototypes to hide the existence   11:59
Page 107

1 of patent infringement?          11:59
2       MS. RAY:  Objection; form.          11:59
3       THE WITNESS:  On the advice and direction of   11:59
4 my counsel, I respectfully decline to answer.  And I   11:59
5 assert the rights guaranteed to me under the Fifth          11:59
6 Amendment to the Constitution of the United States.   11:59
7       MR. PERLSON:  Q.  Management at Uber          11:59
8 instructed you and Otto employees to destroy          11:59
9 prototypes to hide the existence of trade secret          11:59
10 misappropriation?          11:59
11       MS. RAY:  Objection; form.          11:59
12       THE WITNESS:  On the advice and direction of   11:59
13 my counsel, I respectfully decline to answer.  And I   11:59
14 assert the rights guaranteed to me under the Fifth          11:59
15 Amendment to the Constitution of the United States.   11:59
16       MR. PERLSON:  Q.  When you were employed by   11:59
17 Google, you had a duty to keep Google confidential          11:59
18 information secret; correct?          12:00
19    A   On the advice and direction of my counsel, I   12:00
20 respectfully decline to answer.  And I assert the          12:00
21 rights guaranteed to me under the Fifth Amendment to   12:00
22 the Constitution of the United States.          12:00
23    Q   You understood that were you to disclose          12:00
24 confidential and proprietary information of Google to   12:00
25 those outside of Google without Google's permission,   12:00
Page 108

1 that that would be a breach of your duty of loyalty as 12:00
2 an employee to Google?          12:00
3    A   On the advice and direction of my counsel, I   12:00
4 respectfully decline to answer.  And I assert the          12:00
5 rights guaranteed to me under the Fifth Amendment to   12:00
6 the Constitution of the United States.          12:00
7    Q   And, despite that understanding of the duty          12:00
8 to keep confidential, confidential and proprietary          12:00
9 information of Google, you took such confidential and   12:01
10 proprietary information with you to your work at Otto   12:01
11 and Uber?          12:01
12    A   On the advice and direction of my counsel, I   12:01
13 respectfully decline to answer.  And I assert the          12:01
14 rights guaranteed to me under the Fifth Amendment to   12:01
15 the Constitution of the United States.          12:01
16    Q   And the taking of that information was done   12:01
17 at the direction and with knowledge of Uber          12:01
18 management; correct?          12:01
19    A   On the advice and direction of my counsel, I   12:01
20 respectfully decline to answer.  And I assert the          12:01
21 rights guaranteed to me under the Fifth Amendment to   12:01
22 the Constitution of the United States.          12:01
23    Q   And you continue to use that confidential and 12:01
24 proprietary information that you took from Google at   12:01
25 your work at Google [sic]?          12:01
Page 109

28 (Pages 106 - 109)

```
1     A  On the advice and direction of my counsel, I   12:02
2  respectfully decline to answer.  And I assert the     12:02
3  rights guaranteed to me under the Fifth Amendment to  12:02
4  the United States -- to the Constitution of the       12:02
5  United States.                        12:02
6     Q  And that use of confidential and proprietary    12:02
7  information that you took from Google is at the        12:02
8  direction of and with the knowledge of Uber           12:02
9  management?                           12:02
10    A  On the advice and direction of my counsel, I    12:02
11 respectfully decline to answer.  And I assert the      12:02
12 rights guaranteed to me under the Fifth Amendment of   12:02
13 the Constitution of the United States.                 12:02
14    MR. PERLSON:  Why don't we take a break.           12:02
15    MR. EHRLICH:  Okay.                  12:02
16    THE VIDEOGRAPHER:  Going off the record.  The  12:02
17 time is 12:02.                         12:02
18    (Lunch break taken at 12:02 p.m.)      12:02
19        ---oOo---
20
21
22
23
24
25
                                        Page 110
```

```
1     A F T E R N O O N   S E S S I O N        12:13
2            1:06 P.M.              12:13
3                          12:13
4                          12:13
5     THE VIDEOGRAPHER:  We are back on the record.  12:29
6  The time is 1:06.                     13:06
7     MR. PERLSON:  Q.  Mr. Levandowski, while you   13:07
8  were employed at Google, you started a company called  13:07
9  510 Systems; correct?                  13:07
10    A  On the advice and direction of my counsel, I   13:07
11 respectfully decline to answer.            13:07
12    Q  While you were at Google --          13:07
13    A  Oh, wait.  Sorry.  My microphone fell off.   13:07
14    And I assert the rights guaranteed to me       13:07
15 under the Fifth Amendment to the Constitution of the   13:07
16 United States.                         13:07
17    Q  While you were at Google, you started a      13:07
18 company called Anthony's Robots LLC; correct?          13:07
19    A  On the advice of -- and direction of my       13:07
20 counsel, I respectfully decline to answer.  And I      13:07
21 assert the rights guaranteed to me under the Fifth     13:07
22 Amendment to the Constitution of the United States.    13:07
23    Q  And your employment with Google overlapped    13:07
24 with your involvement with 510 Systems and Anthony's   13:07
25 Robots; correct?                       13:07
                                        Page 111
```

```
1     A  On the advice and direction of my counsel, I   13:07
2  respectfully decline to answer.  And I assert the      13:07
3  rights guaranteed to me under the Fifth Amendment --   13:07
4     Q  You did not --                    13:07
5     A  -- to the Constitution of the United States.   13:08
6     Q  Sorry.                         13:08
7     A  Sorry.  I apologize.               13:08
8     Q  You did not disclose to Google your        13:08
9  involvement with 510 Systems and Anthony's Robots      13:08
10 before Google discovered your involvement with them;   13:08
11 correct?                              13:08
12    A  On the advice and direction of my counsel, I   13:08
13 respectfully decline to answer.  And I assert the      13:08
14 rights guaranteed to me under the Fifth Amendment to   13:08
15 the Constitution of the United States.                 13:08
16    Q  When Google discovered that you were involved  13:08
17 in 510 Systems and Anthony's Robots, it thought -- it  13:08
18 was concerned about potential conflicts; correct?      13:08
19    A  On the advice and direction of my counsel, I   13:08
20 respectfully decline to answer.  And I assert the      13:08
21 rights guaranteed to me under the Fifth Amendment to   13:08
22 the Constitution of the United States.                 13:08
23    Q  And, given Google's concerns regarding the    13:08
24 conflict, you entered into a side agreement with       13:09
25 Google regarding 510 Systems and Anthony's Robots?     13:09
                                        Page 112
```

```
1     A  On the advice and direction of my counsel, I   13:09
2  respectfully decline to answer.  And I assert the      13:09
3  rights guaranteed to me under the Fifth Amendment to   13:09
4  the Constitution of the United States.                 13:09
5     Q  And 510 Systems was doing work on           13:09
6  self-driving car technology between 2009 and 2011;     13:09
7  correct?                              13:09
8     A  On the advice and direction of my counsel, I   13:09
9  respectfully decline to answer.  And I assert the      13:09
10 rights guaranteed to me under the Fifth Amendment to   13:09
11 the Constitution of the United States.                 13:09
12    Q  Given what happened with 510 Systems and      13:09
13 Anthony's Robots, you were aware of Google's concern   13:09
14 with you operating side businesses that related to     13:09
15 your work at Google; correct?             13:10
16    A  On the advice of -- on the advice and        13:10
17 direction of my counsel, I respectfully decline to     13:10
18 answer.  And I assert the rights guaranteed to me      13:10
19 under the Fifth Amendment to the Constitution to the   13:10
20 United States.                         13:10
21    Q  You used confidential information from Google  13:10
22 to help develop technology at 510 Systems; correct?    13:10
23    A  On the advice and direction of my counsel, I   13:10
24 respectfully decline to answer.  And I assert the      13:10
25 rights guaranteed to me under the Fifth Amendment to   13:10
                                        Page 113
```

29 (Pages 110 - 113)

1 the Constitution of the United States.    13:10
2    Q   You brought Google Street View source code to   13:10
3 510 Systems in order to ████████ ██
██████ correct?    13:10
5    A   On the advice and direction of my counsel, I   13:10
6 respectfully decline to answer.  And I assert the    13:10
7 rights guaranteed to me under the Fifth Amendment to   13:10
8 the Constitution of the United States.    13:11
9    Q   You misused Google's confidential source code   13:11
10 to help advance 510 Systems' technology; didn't you?   13:11
11    A   On the advice and direction of my counsel, I   13:11
12 respectfully decline to answer.  And I assert the    13:11
13 rights guaranteed to me under the Fifth Amendment to   13:11
14 the Constitution of the United States.    13:11
15    Q   The Little Bear system at 510 Systems was    13:11
16 named after a mountain; is that correct?    13:11
17    A   On the advice and direction of my counsel, I   13:11
18 respectfully decline to answer.  And I assert the    13:11
19 rights guaranteed to me under the Fifth Amendment to   13:11
20 the Constitution of the United States.    13:12
21    Q   And, while you were at Google, you developed   13:12
22 LiDar systems that were named after mountains;    13:12
23 correct?    13:12
24    A   On the advice and direction of my counsel, I   13:12
25 respectfully decline to answer.  And I assert the    13:12
Page 114

1 rights guaranteed to me under the Fifth Amendment to   13:12
2 the Constitution of the United States.    13:12
3    Q   And the Fuji system at Uber is named after    13:12
4 Mount Fuji; correct?    13:12
5    A   On the advice and direction of my counsel, I   13:12
6 respectfully decline to answer.  And I assert the    13:12
7 rights guaranteed to me under the Fifth Amendment to   13:12
8 the Constitution of the United States.    13:12
9    Q   And the reason that the Fuji system at Uber   13:12
10 is named after Mount Fuji is that it is derived from   13:12
11 Google technology that was also code named with names  13:13
12 of mountains; correct?    13:13
13    A   On the advice and direction of my counsel, I   13:13
14 respectfully decline to answer.  And I assert the    13:13
15 rights guaranteed to me under the Fifth Amendment to   13:13
16 the Constitution of the United States.    13:13
17    Q   Google had a -- the first -- an early version   13:13
18 of LiDar, during your work at Google, was called    13:14
19 Grizzly Bear; correct?    13:14
20    A   On the advice and direction of my counsel, I   13:14
21 respectfully decline to answer.  And I assert the    13:14
22 rights guaranteed to me under the Fifth Amendment to   13:14
23 the Constitution of the United States.    13:14
24    Q   And the sec-- -- and a later version of    13:14
25 Google's LiDar was called Grizzly Bear 2; correct?   13:14
Page 115

1    A   On the advice and direction of my counsel, I   13:14
2 respectfully decline to answer.  And I assert the    13:14
3 rights guaranteed to me under the Fifth Amendment to   13:14
4 the Constitution of the United States.    13:14
5    Q   And a still later version of LiDar at Google   13:14
6 was Grizzly Bear 3; correct?    13:15
7    A   On the advice and direction of my counsel, I   13:15
8 respectfully decline to answer.  And I assert the    13:15
9 rights guaranteed to me under the Fifth Amendment to   13:15
10 the Constitution of the United States.    13:15
11    Q   And each of the development -- and the    13:15
12 development from each of the different versions of    13:15
13 LiDar at Google was a result of significant trial and  13:15
14 error work by Google engineers; correct?    13:15
15    A   On the advice and direction of my counsel, I   13:15
16 respectfully decline to answer.  And I assert the    13:15
17 rights guaranteed to me under the Fifth Amendment to   13:15
18 the Constitution of the United States.    13:15
19    Q   And the development of LiDar through Grizzly   13:15
20 Bear to Grizzly Bear 2 to Grizzly Bear 3 was the    13:15
21 result of significant investment of time and money by  13:15
22 Google; correct?    13:15
23    A   On the advice and direction of my counsel, I   13:15
24 respectfully decline to answer.  And I assert the    13:15
25 rights guaranteed to me under the Fifth Amendment to   13:15
Page 116

1 the Constitution of the United States.    13:16
2    Q   You are a named inventor on U.S. Patent    13:16
3 Nos. 8,836,922 and 9,285,464; correct?    13:16
4      MR. EHRLICH:  Counsel, can I just ask the --   13:16
5 the date of those patent submissions, if that's the   13:16
6 correct word, just so I can advise my client, if you   13:16
7 know.    13:16
8      MR. PERLSON:  It was while he was at Google,   13:16
9 if that helps.    13:16
10      MR. EHRLICH:  Okay.  That helps.    13:16
11 I'm going to advise you --    13:16
12      THE WITNESS:  Okay.    13:16
13      MR. EHRLICH:  -- to assert your rights then.   13:16
14      THE WITNESS:  On the advice and direction of   13:16
15 my counsel, I respectfully de-- -- decline to answer.   13:16
16 And I assert the rights guaranteed to me under the    13:16
17 Fifth Amendment to the Constitution of the United    13:16
18 States.    13:16
19      MR. PERLSON:  Q.  You agree that you assigned   13:16
20 all your rights and interests to the -- in the    13:16
21 '922 patent and '464 patent to Google?    13:17
22    A   On the advice and direction of my counsel, I   13:17
23 respectfully decline to answer.  And I assert the    13:17
24 rights guaranteed to me under the Fifth Amendment to   13:17
25 the Constitution of the United States.    13:17
Page 117

30 (Pages 114 - 117)

ATTORNEYS EYES ONLY

1    Q   You are currently employed at Uber        13:17
2 Technologies, Inc.?                      13:17
3        MR. EHRLICH:  You can answer.          13:17
4        THE WITNESS:  Yes.              13:17
5        MR. PERLSON:  Q.  Uber is affiliated with   13:17
6 Ottomoto, LLC and Otto Trucking, LLC?       13:17
7        MS. RAY:  Objection; form.          13:17
8        MR. EHRLICH:  You can answer.          13:17
9        THE WITNESS:  Yes.              13:17
10       MR. PERLSON:  Q.  You were hired at Uber to   13:17
11 oversee its self-driving car technology; correct?   13:17
12       MR. EHRLICH:  I'm going to advise you to    13:17
13 assert your rights.                 13:17
14       THE WITNESS:  On the advice and direction of  13:17
15 my counsel, I respectfully decline to answer.  And I   13:17
16 assert the rights guaranteed to me under the Fifth   13:17
17 Amendment to the Constitution of the United States.   13:18
18       MR. PERLSON:  I had a streak of        13:18
19 two questions.                  13:18
20       THE WITNESS:  I know.  It was -- keep going.   13:18
21       MR. EHRLICH:  Very impressive.        13:18
22       THE WITNESS:  It's good.          13:18
23       MR. PERLSON:  Q.  The -- you agree that,    13:18
24 after you joined, Uber continued to develop its    13:18
25 self-driving car technology; correct?       13:18

Page 118

1    A   On the advice and direction of my counsel, I   13:18
2 respectfully decline to answer.  And I assert the    13:18
3 rights guaranteed to me under the Fifth Amendment to   13:18
4 the Constitution of the United States.        13:18
5    Q   You agree that you were involved in Uber's   13:18
6 decision-making process to continue developing its   13:18
7 self-driving car technology; correct?       13:18
8    A   On the advice and direction of my counsel, I   13:18
9 respectfully decline to answer.  And I assert the    13:18
10 rights guaranteed to me under the Fifth Amendment to  13:18
11 the Constitution of the United States.        13:18
12   Q   You agree that Uber began developing its    13:18
13 current self-driving car technology around the same   13:19
14 time you joined Uber; correct?          13:19
15       MS. RAY:  Objection to form.        13:19
16       MR. EHRLICH:  You can answer.        13:19
17       THE WITNESS:  Okay.            13:19
18       On the advice and direction of, I   13:19
19 respectfully decline to answer.  And I assert the    13:19
20 rights guaranteed to me under the Fifth Amendment to  13:19
21 the Constitution of the United States.        13:19
22       MR. PERLSON:  Q.  You have a leadership role   13:19
23 at Uber Technologies, Inc.; correct?       13:19
24   A   On the advice and direction of my counsel, I   13:19
25 respectfully decline to answer.  And I assert the    13:19

Page 119

1 rights guaranteed to me under the Fifth Amendment to   13:19
2 the Constitution of the United States.        13:19
3    Q   You have an equity interest in Uber       13:19
4 Technologies, Inc.; correct?           13:19
5    A   On the advice of my counsel, I respectively    13:19
6 decline to answer.  And I assert the rights guaranteed  13:19
7 to me under the Fifth Amendment to the Constitution of  13:19
8 the United States.                 13:19
9    Q   You have an equity interest in Ottomoto, LLC;  13:19
10 correct?                     13:19
11   A   On the advice and direction of my counsel, I   13:19
12 respectfully decline to answer.  And I assert the    13:19
13 rights guaranteed to me under the Fifth Amendment to   13:19
14 the Constitution of the United States.        13:20
15   Q   You have an equity interest in Otto Trucking,  13:20
16 LLC; correct?                  13:20
17   A   On the advice and direction of my counsel, I   13:20
18 respectfully decline to answer.  And I assert the    13:20
19 rights guaranteed to me under the Fifth Amendment to   13:20
20 the Constitution of the United States.        13:20
21   Q   While you were at Goo-- at Google, Google   13:20
22 employees had a duty to keep confidential information  13:20
23 of Google confidential; correct?           13:20
24   A   On the -- on the advice and direction of my   13:20
25 counsel, I respectfully decline to answer.  And I    13:20

Page 120

1 assert the rights guaranteed to me under the Fifth    13:20
2 Amendment to the Constitution of the United States.   13:20
3    Q   While you were at Google, Google required   13:20
4 employees to password protect their computers and    13:20
5 other hardware; correct?             13:20
6    A   On the advice and direction of my counsel, I   13:20
7 respectfully decline to answer.  And I assert the    13:20
8 rights guaranteed to me under the Fifth Amendment to   13:20
9 the Constitution of the United States.        13:21
10   Q   While you were at Google, Google's networks   13:21
11 and other storage repositories were password      13:21
12 protected; correct?               13:21
13   A   On the advice and direction of my counsel, I   13:20
14 respectfully decline to answer.  And I assert the    13:20
15 rights guaranteed to me under the Fifth Amendment to   13:20
16 the Constitution of the United States.        13:21
17   Q   While you were at Google, Google monitored   13:21
18 use and access to its devices and networks for    13:21
19 security purposes; correct?           13:21
20   A   On the advice and direction of my counsel, I   13:20
21 respectfully decline to answer.  And I assert the    13:20
22 rights guaranteed to me under the Fifth Amendment to   13:20
23 the Constitution of the United States.        13:21
24   Q   You understand that, while you were at    13:21
25 Google, Google maintained security software to prevent  13:21

Page 121

31 (Pages 118 - 121)

1  unauthorized access; correct?                    13:21
2    A  On the advice and direction of my counsel, I   13:20
3  respectfully decline to answer.  And I assert the   13:20
4  rights guaranteed to me under the Fifth Amendment to   13:20
5  the Constitution of the United States.         13:22
6    Q  While you were at Google, Google provided       13:22
7  network security training to employees with access to   13:22
8  networks?                    13:22
9    A  On the advice and direction of my counsel, I   13:22
10  respectfully decline to answer.  And I assert the   13:22
11  rights guaranteed to me under the Fifth Amendment to   13:22
12  the Constitution of the United States.         13:22
13    Q  While you were at Google, Google generally       13:22
14  limited application access and network access       13:22
15  containing sensitive material to users with a need to   13:22
16  know; correct?                    13:22
17    A  On the advice and direction of my counsel, I   13:20
18  respectfully decline to answer.  And I assert the   13:22
19  rights guaranteed to me under the Fifth Amendment to   13:20
20  the Constitution of the United States.         13:22
21    Q  While you were at Google, Google had a policy   13:22
22  requiring its employees to safeguard its computer       13:22
23  networks and digital information; correct?       13:22
24    A  On the advice and direction of my counsel, I   13:20
25  respectfully decline to answer.  And I assert the   13:20
                                        Page 122

1    A  On the --                    13:23
2    Q  -- correct?                    13:24
3    A  On the advice and direction of my counsel, I   13:20
4  respectfully decline to answer.  And I assert the   13:20
5  rights guaranteed to me under the Fifth Amendment to   13:20
6  the Constitution of the United States.         13:24
7    Q  While you were at Google, Google's SVN server   13:24
8  was limited to only those on a need-to-know basis?   13:24
9    A  On the advice and direction of my counsel, I   13:20
10  respectfully decline to answer.  And I assert the   13:20
11  rights guaranteed to me under the Fifth Amendment to   13:20
12  the Constitution of the United States.         13:24
13    Q  While you were at Google, the SVN server       13:24
14  required specialized software to access; correct?   13:24
15    A  On the advice and direction of my counsel, I   13:20
16  respectfully decline to answer.  And I assert the   13:20
17  rights guaranteed to me under the Fifth Amendment to   13:20
18  the Constitution of the United States.         13:24
19    Q  While you were at Google, Google took       13:24
20  reasonable measures to protect the secrecy of its SVN   13:24
21  server; correct?                    13:24
22    A  On the advice and direction of my counsel, I   13:24
23  respectfully decline to answer.  And I assert the   13:24
24  rights guaranteed to me under the Fifth Amendment to   13:24
25  the Constitution of the United States.         13:24
                                        Page 124

1  rights guaranteed to me under the Fifth Amendment to   13:20
2  the Constitution of the United States.         13:22
3    Q  While you were at Google, Google had a policy   13:22
4  against its employees accessing its digital       13:23
5  information for reasons unrelated to business       13:23
6  activities; correct?                    13:23
7    A  On the advice and direction of my counsel, I   13:23
8  respectfully decline to answer.  And I assert the   13:23
9  rights guaranteed to me under the Fifth Amendment to   13:23
10  the Constitution of the United States.         13:23
11    Q  While you were at Google, Google took       13:23
12  reasonable measures to protect the secrecy of its   13:23
13  networks and digital information; correct?       13:23
14    A  On the advice and direction of my counsel, I   13:20
15  respectfully decline to answer.  And I assert the   13:20
16  rights guaranteed to me under the Fifth Amendment to   13:20
17  the Constitution of the United States.         13:23
18    Q  While you were at Google, Google's SVN server   13:23
19  was password protected?              13:23
20    A  On the advice and direction of my counsel, I   13:20
21  respectfully decline to answer.  And I assert the   13:20
22  rights guaranteed to me under the Fifth Amendment to   13:20
23  the Constitution of the United States.         13:23
24    Q  While you were at Google, Google's SVN server   13:23
25  was limited to only certain employees --       13:23
                                        Page 123

1    Q  Do you agree that Google Waymo outside       13:24
2  vendors were generally required to sign nondisclosure   13:25
3  statements?                    13:25
4      MS. RAY:  Objection; form.              13:25
5      THE WITNESS:  On the advice and direction of   13:25
6  my counsel, I respectfully decline to answer.  And I   13:25
7  assert the rights guaranteed to me under the Fifth   13:25
8  Amendment to the Constitution of the United States.   13:25
9      MR. PERLSON:  Q.  Do you recall the passwords   13:25
10  to any of your Google computers?              13:25
11    A  On the advice and direction of my counsel, I   13:20
12  respectfully decline to answer.  And I assert the   13:20
13  rights guaranteed to me under the Fifth Amendment to   13:20
14  the Constitution of the United States.         13:25
15    Q  You owned a company and still own -- let me   13:25
16  start over again.                    13:25
17      While you were at Google and to this day, you   13:25
18  have an ownership interest in Dogwood Leasing;       13:25
19  correct?                    13:25
20    A  On the advice and direction of my counsel, I   13:20
21  respectfully decline to answer.  And I assert the   13:20
22  rights guaranteed to me under the Fifth Amendment to   13:20
23  the Constitution of the United States.         13:25
24    Q  Dogwood Leasing engages, and has engaged, in   13:25
25  business that relate to self-driving car technology?   13:26
                                        Page 125

32 (Pages 122 - 125)

| | |
|---|---|
| 1   A  On the advice and direction of my counsel, I   13:20 | 1  respectfully decline to answer. And I assert the   13:20 |
| 2  respectfully decline to answer. And I assert the   13:20 | 2  rights guaranteed to me under the Fifth Amendment to   13:20 |
| 3  rights guaranteed to me under the Fifth Amendment to   13:20 | 3  the Constitution of the United States.   13:28 |
| 4  the Constitution of the United States.   13:26 | 4   Q  Were you involved in technology development   13:28 |
| 5   Q  You employed Asheem Linval at Dogwood Leasing   13:26 | 5  at Odin Wave?   13:28 |
| 6  for self-driving car technology; correct?   13:26 | 6   A  On the advice and direction of my counsel, I   13:20 |
| 7   A  On the advice and direction of my counsel, I   13:20 | 7  respectfully decline to answer. And I assert the   13:20 |
| 8  respectfully decline to answer. And I assert the   13:20 | 8  rights guaranteed to me under the Fifth Amendment to   13:20 |
| 9  rights guaranteed to me under the Fifth Amendment to   13:20 | 9  the Constitution of the United States.   13:29 |
| 10  the Constitution of the United States.   13:26 | 10   Q  Were you paying individuals to work at   13:29 |
| 11   Q  You asked Mr. Linval to use confidential   13:26 | 11  Odin Wave?   13:29 |
| 12  information he learned while at Google in connection   13:26 | 12   A  On the advice and direction of my counsel, I   13:29 |
| 13  with his work at Dogwood Leasing; correct?   13:26 | 13  respectfully decline to answer. And I assert the   13:29 |
| 14   A  On the advice and direction of my counsel, I   13:20 | 14  rights guaranteed to me under the Fifth Amendment to   13:29 |
| 15  respectfully decline to answer. And I assert the   13:20 | 15  the Constitution of the United States.   13:29 |
| 16  rights guaranteed to me under the Fifth Amendment to   13:20 | 16   Q  Isn't it correct that Odin Wave ordered parts   13:29 |
| 17  the Constitution of the United States.   13:27 | 17  from ████ that were similar to parts used by Google in   13:29 |
| 18   Q  You started Odin Wave while you were still   13:27 | 18  its own LiDar system?   13:29 |
| 19  working at Google?   13:27 | 19   A  On the advice and direction of my counsel, I   13:20 |
| 20   A  On the advice and direction of my counsel, I   13:20 | 20  respectfully decline to answer. And I assert the   13:20 |
| 21  respectfully decline to answer. And I assert the   13:20 | 21  rights guaranteed to me under the Fifth Amendment to   13:20 |
| 22  rights guaranteed to me under the Fifth Amendment to   13:20 | 22  the Constitution of the United States.   13:29 |
| 23  the Constitution of the United States.   13:27 | 23   Q  In 2013, ████ called Google because it had an   13:29 |
| 24   Q  You had to move the location of Odin Wave   13:27 | 24  order from Odin Wave that was so similar to parts used   13:29 |
| 25  because you were concerned that Google may find out   13:27 | 25  by Google; correct?   13:29 |
| Page 126 | Page 128 |

| | |
|---|---|
| 1  about its existence?   13:27 | 1   A  On the advice and direction of my counsel, I   13:20 |
| 2   A  On the advice and direction of my counsel, I   13:20 | 2  respectfully decline to answer. And I assert the   13:20 |
| 3  respectfully decline to answer. And I assert the   13:20 | 3  rights guaranteed to me under the Fifth Amendment to   13:20 |
| 4  rights guaranteed to me under the Fifth Amendment to   13:20 | 4  the Constitution of the United States.   13:30 |
| 5  the Constitution of the United States.   13:27 | 5   Q  And, because of this incident, Odin Wave   13:30 |
| 6   Q  You used Google confidential information at   13:27 | 6  moved to a different location to get distance from   13:30 |
| 7  Odin Wave; correct?   13:27 | 7  you; correct?   13:30 |
| 8   A  On the advice and direction of my counsel, I   13:20 | 8   A  On the advice and direction of my counsel, I   13:30 |
| 9  respectfully decline to answer. And I assert the   13:20 | 9  respectfully decline to answer. And I assert the   13:30 |
| 10  rights guaranteed to me under the Fifth Amendment to   13:20 | 10  rights -- the rights guaranteed to me under the Fifth   13:30 |
| 11  the Constitution of the United States.   13:28 | 11  Amendment to the Constitution of the United States.   13:30 |
| 12   Q  Did you have an ownership interest in   13:28 | 12   Q  Isn't it true that you were guiding Google   13:30 |
| 13  Odin Wave?   13:28 | 13  towards an in-house KBR solution so that you could use   13:30 |
| 14   A  On the advice and direction of my counsel, I   13:20 | 14  that technology at Odin Wave?   13:30 |
| 15  respectfully decline to answer. And I assert the   13:20 | 15   A  On the advice and direction of my counsel, I   13:20 |
| 16  rights guaranteed to me under the Fifth Amendment to   13:20 | 16  respectfully decline to answer. And I assert the   13:20 |
| 17  the Constitution of the United States.   13:28 | 17  rights guaranteed to me under the Fifth Amendment to   13:20 |
| 18   Q  Did you have a managerial role at Odin Wave?   13:28 | 18  the Constitution of the United States.   13:30 |
| 19   A  On the advice and direction of my counsel, I   13:20 | 19   Q  You -- isn't it true that you directed   13:30 |
| 20  respectfully dis- -- decline to answer. And I assert   13:20 | 20  Odin Wave to file patent applications on its   13:31 |
| 21  the rights guaranteed to me under the Fifth Amendment   13:20 | 21  technology development that stemmed from Google   13:31 |
| 22  to the Constitution of the United States.   13:28 | 22  confidential information?   13:31 |
| 23   Q  Were you involved in the day-to-day   13:28 | 23   A  On the advice and direction of my counsel, I   13:20 |
| 24  operations at Odin Wave?   13:28 | 24  respectfully decline to answer. And I assert the   13:20 |
| 25   A  On the advice and direction of my counsel, I   13:20 | 25  rights guaranteed to me under the Fifth Amendment to   13:20 |
| Page 127 | Page 129 |

33 (Pages 126 - 129)

1  the Constitution of the United States.         13:31
2    Q   Odin Wave renamed itself to Tyto LiDAR;      13:31
3  correct?                              13:31
4    A   On the advice and direction of my counsel, I   13:20
5  respectfully decline to answer.  And I assert the    13:20
6  rights guaranteed to me under the Fifth Amendment to  13:20
7  the Constitution of the United States.         13:31
8    Q   Odin Wave was renamed to Tyto LiDAR in order  13:31
9  to conceal your involvement; correct?          13:31
10   A   On the advice and direction of my counsel, I   13:20
11  respectfully decline to answer.  And I assert the    13:20
12  rights guaranteed to me under the Fifth Amendment to  13:20
13  the Constitution of the United States.         13:31
14   Q   After the name change, Tyto -- Tyto LiDAR     13:31
15  continued in the same business with the same employees  13:31
16  as Odin Wave; correct?                13:32
17   A   On the advice and direction of my counsel, I   13:20
18  respectfully decline to answer.  And I assert the    13:20
19  rights guaranteed to me under the Fifth Amendment to  13:20
20  the Constitution of the United States.         13:32
21   Q   You had an ownership interest in Tyto LiDAR;  13:32
22  correct?                             13:32
23   A   On the advice and direction of my counsel, I   13:20
24  respectfully decline to answer.  And I assert the    13:20
25  rights granted to me under the Fifth Amendment to    13:20
                                    Page 130

1    A   On the advice and direction of my counsel, I   13:20
2  respectfully decline to answer.  And I assert the    13:20
3  rights granted to me under the Fifth Amendment to the  13:20
4  Constitution of the United States.             13:33
5    Q   You did not disclose your involvement with    13:33
6  Tyto LiDAR to Google; correct?             13:33
7    A   On the advice and direction of my counsel, I   13:33
8  respectfully decline to answer.  And I assert the    13:33
9  rights guaranteed to me under the Fifth Amendment to  13:33
10  the Constitution of the United States.         13:34
11   Q   And in fact, you joined a Google team that    13:34
12  visited Tyto facilities when ███████████████        13:34
13  ██████████████, and you still did not tell Google that  13:34
14  you had an ownership interest in Tyto?         13:34
15   A   On the advice and direction of my counsel, I   13:34
16  respectfully decline to answer.  And I assert the    13:34
17  rights guaranteed to me under the Fifth Amendment to  13:34
18  the Constitution of the United States.         13:34
19   Q   You attempted to influence Google's          13:34
20  ████████████████████████████, even          13:34
21  though you did not disclose that you had an ownership  13:34
22  interest in Tyto LiDAR; correct?             13:34
23   A   On the advice and direction of my counsel, I   13:33
24  respectfully decline to answer.  And I assert the    13:33
25  rights guaranteed to me under the Fifth Amendment to  13:33
                                    Page 132

1  Constitution of the United States.             13:32
2    Q   You had a managerial role at Tyto LiDAR;      13:32
3  correct?                             13:32
4    A   On the advice and direction of my counsel, I   13:20
5  respectfully decline to answer.  And I assert the    13:20
6  rights guaranteed to me under the Fifth Amendment to  13:20
7  the Constitution of the United States.         13:32
8    Q   You were involved in the day-to-day          13:32
9  operations of -- at Tyto LiDAR; correct?        13:32
10   A   On the advice and direction of my counsel, I   13:20
11  respectfully decline to answer.  And I assert the    13:20
12  rights granted to me under the Fifth Amendment to the  13:20
13  Constitution of the United States.             13:32
14   Q   You were involved in the technology          13:32
15  development at Tyto LiDAR; correct?           13:32
16   A   On the advice and direction of my counsel, I   13:20
17  respectfully decline to answer.  And I assert the    13:20
18  rights guaranteed to me under the Fifth Amendment to  13:20
19  the Constitution of the United States.         13:33
20   Q   You used Google -- start over.             13:33
21      You used information taken from -- let me     13:33
22  start over.                          13:33
23      You used confidential information taken from  13:33
24  Google in connection with your work at Tyto LiDAR;   13:33
25  correct?                             13:33
                                    Page 131

1  the Constitution of the United States.         13:33
2    Q   You were positioning Tyto to ██████████      13:34
██████████████████████████████████  ███
█████████████; correct?              13:35
6    A   On the advice and direction of my counsel, I   13:33
7  respectfully decline to answer.  And I assert the    13:33
8  rights guaranteed to me under the Fifth Amendment to  13:33
9  the Constitution of the United States.         13:35
10   Q   You registered a domain name for 280 Systems  13:35
11  in November 2015; correct?               13:35
12   A   On the advice and direction of my counsel, I   13:33
13  respectfully decline to answer.  And I assert the    13:33
14  rights guaranteed to me under the Fifth Amendment to  13:33
15  the Constitution of the United States.         13:35
16   Q   On February 11th, 2016, the corporation      13:35
17  restated its name and stock as 280 Systems, Inc.;    13:35
18  correct?                             13:35
19   A   On the advice and direction of my counsel, I   13:35
20  respectfully decline to answer.  And I assert the    13:35
21  rights guaranteed to me under the Fifth Amendment to  13:35
22  the Constitution of the United States.         13:35
23   Q   On April 6, 2016, 280 Systems was re- ---     13:35
24  renamed Ottomoto, Inc.; correct?            13:36
25   A   On the advice and direction of my counsel, I   13:33
                                    Page 133

34 (Pages 130 - 133)

| | |
|---|---|
| 1  respectfully decline to answer.  And I assert the      13:33 | 1  marked as Exhibit 25.                              13:40 |
| 2  rights guaranteed to me under the Fifth Amendment to   13:33 | 2      Q  Do you recognize this document?             13:40 |
| 3  the Constitution of the United States.               13:36 | 3      A  On the advice and direction of my counsel, I  13:40 |
| 4      THE WITNESS:  Can we take a break?  I just   13:36 | 4  respectfully decline to answer.  And I assert the   13:40 |
| 5  want to fill up my water.                            13:36 | 5  rights guaranteed to me under the Fifth Amendment to  13:40 |
| 6      MR. PERLSON:  Yeah.                          13:36 | 6  the Constitution of the United States.              13:41 |
| 7      THE VIDEOGRAPHER:  Going off the record.  The  13:36 | 7      Q  You agree that this is a schematic for Uber's  13:41 |
| 8  time is 1:36.                                        13:36 | 8  Fuji board; correct?                               13:41 |
| 9      (Recess taken.)                              13:36 | 9      A  On the device -- on the advice and direction  13:41 |
| 10     THE VIDEOGRAPHER:  We are back on the record.  13:37 | 10  of my counsel, I respectfully decline to answer.  And  13:41 |
| 11  The time is 1:37.                                   13:37 | 11  I assert the rights guaranteed to me under the Fifth  13:41 |
| 12     MR. PERLSON:  Q.  Ottomoto acquired Tyto in  13:37 | 12  Amendment to the Constitution of the United States.  13:41 |
| 13  May 2016; correct?                                  13:37 | 13     Q  Do you see that there are diodes in the     13:41 |
| 14     A  On the advice and direction of my counsel, I  13:33 | 14  drawing on the far left?                           13:41 |
| 15  respectfully decline to answer.  And I assert the   13:33 | 15     A  On the advice and direction of my counsel, I  13:41 |
| 16  rights guaranteed to me under the Fifth Amendment to  13:33 | 16  respectfully decline to answer.  And I assert the   13:41 |
| 17  the Constitution of the United States.              13:37 | 17  rights guaranteed to me under the Fifth Amendment to  13:41 |
| 18     Q  In August 2016 Uber acquired Ottomoto?       13:37 | 18  the Constitution of the United States.              13:41 |
| 19     A  On the advice and direction of my counsel, I  13:33 | 19     Q  The diodes are ████████████; correct?       13:41 |
| 20  respectfully decline to answer.  And I assert the   13:33 | 20     A  On the advice and direction of my counsel, I  13:41 |
| 21  rights guaranteed to me under the Fifth Amendment to  13:33 | 21  respectfully decline to answer.  And I assert the   13:41 |
| 22  the Constitution of the United States.              13:38 | 22  rights guaranteed to me under the Fifth Amendment to  13:41 |
| 23     Q  Otto acquired Tyto LiDAR; correct?           13:38 | 23  the Constitution of the United States.              13:42 |
| 24     A  On the advice and direction of my counsel, I  13:33 | 24     Q  D1_TX1 is the ████████████ diode?           13:42 |
| 25  respectfully decline to answer.  And I assert the | 25     MR. EHRLICH:  I don't know if it's possible    13:42 |
| Page 134 | Page 136 |

| | |
|---|---|
| 1  rights guaranteed to me under the Fifth Amendment to | 1  to see.  You can direct us, Counsel?                13:42 |
| 2  the Constitution of the United States. | 2      MR. PERLSON:  Do we need to get a magnifying   13:42 |
| 3      Q  Otto acquired Tyto LiDAR in anticipation of | 3  glass?                                             13:42 |
| 4  Otto being acquired by Uber; correct? | 4      MR. SCHMIDT:  Yeah.                           13:42 |
| 5      A  On the advice and direction of my counsel, I  13:33 | 5      MR. PERLSON:  Q.  Well, let me ask it -- let   13:42 |
| 6  respectfully decline to answer.  And I assert the   13:33 | 6  me ask it this way:  In -- in Uber -- in Uber's Fuji  13:42 |
| 7  rights agreed -- granted to me under the Fifth      13:33 | 7  board, the diode D1_TX1 is the ████████████        13:42 |
| 8  Amendment to the Constitution of the United States.  13:38 | 8  diode?                                             13:43 |
| 9      Q  Uber directed Otto to acquire Tyto LiDAR;    13:38 | 9      A  On the advice and direction of my counsel, I  13:43 |
| 10  correct?                                            13:39 | 10  respectfully decline to answer.  And I assert the   13:43 |
| 11     A  On the advice and direction of my counsel, I  13:33 | 11  rights guaranteed to me under the Fifth Amendment to  13:43 |
| 12  respectfully decline to answer.  And I assert the   13:33 | 12  the Constitution of the United States.              13:43 |
| 13  rights guaranteed to me under the Fifth Amendment to  13:33 | 13     Q  And if the -- the next diode down is the    13:43 |
| 14  the Constitution of the United States.              13:39 | 14  ████████████ diode; correct?                       13:43 |
| 15     Q  Uber knew that you had been using Google     13:39 | 15     A  On the advice and direction of my counsel, I  13:43 |
| 16  confidential information to develop Tyto LiDAR's    13:39 | 16  respectfully decline to answer.  And I assert the   13:43 |
| 17  technology?                                         13:39 | 17  rights guaranteed to me under the Fifth Amendment to  13:43 |
| 18     A  On the advice and direction of my counsel, I  13:33 | 18  the Constitution of the United States.              13:43 |
| 19  respectfully decline to answer.  And I assert the   13:33 | 19     Q  The diodes on the board shown on the far left  13:43 |
| 20  rights guaranteed to me under the Fifth Amendment to  13:33 | 20  are generally less ████████████                    13:43 |
| 21  the Constitution of the United States.              13:40 | 21  ████████████ correct?                              13:43 |
| 22     (Document marked Exhibit 25            13:40 | 22     A  On the advice and direction of my counsel, I  13:43 |
| 23     for identification.)                    13:40 | 23  respectfully decline to answer.  And I assert the   13:43 |
| 24     MS. RAY:  May I have a copy?  Thank you.   13:40 | 24  rights guaranteed to me under the Fifth Amendment to  13:43 |
| 25     MR. PERLSON:  You've been handed what's been  13:40 | 25  the Constitution of the United States.              13:44 |
| Page 135 | Page 137 |

35 (Pages 134 - 137)

**Page 138**

```
1    Q  The [REDACTED] diodes on the board        13:44
2  on the -- shown on the upper left is [REDACTED]  13:44
3    [REDACTED] diode from the [REDACTED]?          13:44
4    A  On the advice and direction of my counsel, I  13:44
5  respectfully decline to answer.  And I assert the  13:44
6  rights guaranteed to me under the Fifth Amendment to  13:44
7  the Constitution of the United States.            13:44
8    Q  There is a [REDACTED] between the [REDACTED]  13:44
9    [REDACTED] diode from the [REDACTED] correct?   13:44
10   A  On the advice and direction of my counsel, I  13:44
11 respectfully decline to answer.  And I assert the  13:44
12 rights guaranteed to me under the Fifth Amendment to  13:44
13 the Constitution of the United States.            13:44
14   Q  The [REDACTED] the diodes [REDACTED] as the  13:44
15 [REDACTED] of the diode [REDACTED]               13:44
16 correct?                                          13:44
17   A  On the advice and direction of my counsel, I  13:44
18 respectfully decline to answer.  And I assert the  13:44
19 rights guaranteed to me under the Fifth Amendment to  13:44
20 the Constitution of the United States.            13:45
21   Q  The diodes on the [REDACTED] are more [REDACTED]  13:45
22 [REDACTED] the [REDACTED]; correct?               13:45
23   A  On the advice and direction of my counsel, I  13:45
24 respectfully decline to answer.  And I assert the  13:45
25 rights guaranteed to me under the Fifth Amendment to  13:45
```

**Page 139**

```
1  the Constitution of the United States.            13:45
2    Q  The diode [REDACTED] shown on the board on the  13:45
3  far left was derived from [REDACTED]
4  [REDACTED]                       correct?          13:45
5    A  On the advice and direction of my counsel, I  13:45
6  respectfully decline to answer.  And I assert the  13:45
7  rights guaranteed to me under the Fifth Amendment to  13:45
8  the Constitution of the United States.            13:45
9    Q  You used the confidential information you     13:45
10 learned at Google to derive the diode [REDACTED] shown on  13:45
11 the board, on the upper left in Exhibit 25; correct?  13:46
12   A  On the advice and direction of my counsel, I  13:46
13 respectfully decline to answer.  And I assert the  13:46
14 rights guaranteed to me under the Fifth Amendment to  13:46
15 the Constitution of the United States.            13:46
16   Q  Uber would not have been able to have         13:46
17 developed the Fuji board shown on Exhibit 25 without  13:46
18 using the confidential information learned at Google  13:46
19 by you; correct?                                  13:46
20   A  On the advice and direction of my counsel, I  13:46
21 respectfully decline to answer.  And I assert the  13:46
22 rights guaranteed to me under the Fifth Amendment to  13:46
23 the Constitution of the United States.            13:47
24   Q  Uber would not have been able to have         13:47
25 developed the [REDACTED] on the Fuji board shown on  13:47
```

**Page 140**

```
1  Exhibit 25, without reference to the 14,000 files you  13:47
2  downloaded in December 2015; correct?             13:47
3    A  On the advice and direction of my counsel, I  13:47
4  respectfully decline to answer.  And I assert the  13:47
5  rights guaranteed to me under the Fifth Amendment to  13:47
6  the Constitution of the United States.            13:47
7    Q  Uber is aware that the Fuji board shown on    13:47
8  Exhibit 25 has diode [REDACTED] that is derived from the  13:47
9  confidential information you took from Google to Uber; 13:47
10 correct?                                          13:48
11   MS. RAY:  Objection; form.                       13:48
12   MR. EHRLICH:  You can answer.                     13:48
13   THE WITNESS:  On the advice and direction of    13:48
14 my counsel, I respectfully decline to answer.  And I  13:48
15 assert the rights guaranteed to me under the Fifth  13:48
16 Amendment to the Constitution of the United States.  13:48
17   MR. PERLSON:  Q.  [REDACTED]
18 [REDACTED], that is reflected   13:48
19 in documents you took from Google, including the    13:48
20 14,000 files you downloaded in December 2015, is not  13:48
21 generally known; correct?                         13:48
22   A  On the advice and direction of my counsel, I  13:48
23 respectfully decline to answer.  And I assert the  13:48
24 rights guaranteed to me under the Fifth Amendment to  13:48
25 the Constitution of the United States.            13:48
```

**Page 141**

```
1    Q  [REDACTED]                  [REDACTED]
2  [REDACTED]                  that is reflected in documents you  13:49
3  took from Google, including the 14,000 files you    13:49
4  downloaded in December 2015, has independent economic  13:49
5  value because it is not generally known; correct?   13:49
6    A  On the advice and direction of my counsel, I  13:49
7  respectfully decline to answer.  And I assert the  13:49
8  rights granted to me under the Fifth Amendment to the  13:49
9  Constitution of the United States.                13:49
10   Q  The diode [REDACTED] that is reflected on     13:49
11 Exhibit 25, that was derived from information taken by  13:49
12 you from Google, reflects the diode [REDACTED] that is  13:49
13 not generally known; correct?                     13:49
14   MS. RAY:  Objection; form.                       13:49
15   THE WITNESS:  On the advice and direction of    13:49
16 my counsel, I respectfully decline to answer.  And I  13:49
17 assert the rights guaranteed to me under the Fifth  13:49
18 Amendment to the Constitution of the United States.  13:50
19   MR. PERLSON:  Q.  Uber did not independently     13:50
20 develop the diode [REDACTED] that is reflected on     13:50
21 Exhibit 25 in the upper left-hand corner of the first  13:50
22 page, on its own without reference to confidential   13:50
23 information taken from Google; correct?           13:50
24   A  On the advice and direction of my counsel, I  13:50
25 respectfully decline to answer.  And I assert the  13:50
```

36 (Pages 138 - 141)

1  rights guaranteed to me under the Fifth Amendment to  13:50
2  the Constitution of the United States.  13:50
3      Do you want this one back?  13:51
4  Q  You can just keep it there.  Thanks.  13:51
5  A  Okay.  13:51
6      (Document marked Exhibit 26  13:51
7      for identification.)  13:51
8      THE VIDEOGRAPHER:  Five more minutes.  13:51
9      MR. PERLSON:  Okay.  Okay.  13:51
10  Q  You've been handed what's been marked as  13:51
11  Exhibit 26, which I'll represent was attached as  13:51
12  Exhibit B to the Haslim declaration submitted by Uber.  13:51
13      This document reflects the PCB configuration  13:51
14  and diode layout for the Fuji system, corresponding to  13:51
15  the sys- -- the system shown in Exhibit 25; is that  13:52
16  correct?  13:52
17  A  On the advice and direction of my counsel, I  13:52
18  respectfully decline to answer.  And I assert the  13:52
19  rights guaranteed to me under the Fifth Amendment to  13:52
20  the Constitution of the United States.  13:51
21  Q  Exhibit 26 shows the Fuji LiDAR system has  13:52
22  ▉ PCBs; correct?  13:52
23  A  On the advice and direction of my counsel, I  13:52
24  respectfully decline to answer.  And I assert the  13:52
25  rights guaranteed to me under the Fifth Amendment to  13:52

                                                   Page 142

1  the Constitution of the United States.  13:53
2  Q  The▉ PCBs shown on Exhibit 26 are similar  13:53
3  to the PCB drawing we saw in Exhibit 25; correct?  13:53
4  A  On the advice and direction of my counsel, I  13:53
5  respectfully decline to answer.  And I assert the  13:53
6  rights guaranteed to me under -- under the Fifth  13:53
7  Amendment to the Constitution of the United States.  13:53
8  Q  ▉ PCBs on Exhibit 26 show ▉▉▉▉▉▉
   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉; correct?  13:53
10  A  On the advice and direction of my counsel, I  13:53
11  respectfully decline to answer.  And I assert the  13:53
12  rights guaranteed to me under the Fifth Amendment to  13:53
13  the Constitution of the United States.  13:54
14  Q  The PCB configuration, and diode arrangement  13:54
15  shown on Exhibit 26, was developed using Google  13:54
16  confidential information; correct?  13:54
17  A  On the advice and direction of my counsel, I  13:54
18  respectfully decline to answer.  And I assert the  13:54
19  rights guaranteed to me under the Fifth Amendment to  13:54
20  the Constitution of the United States.  13:54
21  Q  The PCB configuration and diode arrangement  13:54
22  shown on Exhibit 26 was developed using Google  13:54
23  confidential information reflected in documents  13:54
24  downloaded by you in December 2015; correct?  13:54
25  A  On the advice and direction of my counsel, I  13:54

                                                   Page 143

1  respectfully decline to answer.  And I assert the  13:54
2  rights guaranteed to me under the Fifth Amendment to  13:54
3  the Constitution of the United States.  13:54
4  Q  Uber would not have been able to have  13:55
5  developed the PCB configuration and diode arrangement  13:55
6  shown in Exhibit 26 without reference to Google  13:55
7  confidential information taken by you, including  13:55
8  documents downloaded by you in December 2015?  13:55
9  A  On the advice and direction of my counsel, I  13:55
10  respectfully decline to answer.  And I assert the  13:55
11  rights guaranteed to me under the Fifth Amendment to  13:55
12  the Constitution of the United States.  13:55
13      MR. PERLSON:  He has to change the tape.  13:55
14      THE WITNESS:  Okay.  13:55
15      THE VIDEOGRAPHER:  Okay.  We are going off  13:55
16  the record.  The time is 1:55.  13:55
17      (Recess taken.)  13:55
18      THE VIDEOGRAPHER:  This marks the  13:58
19  deposition -- or excuse me.  14:06
20      This marks the beginning of DVD No. 3 in the  14:06
21  deposition of Anthony Levandowski.  14:06
22      Going back on the record.  The time is 2:06.  14:06
23      MR. PERLSON:  Q.  Would you agree that the --  14:06
24  let me start over again.  14:06
25      Isn't it correct that the PCB configuration  14:06

                                                   Page 144

1  and diode arrangement that is reflected in the  14:06
2  documents you downloaded from Google in 2015, and are  14:06
3  used in the configuration shown at Exhibit 26, are not  14:06
4  generally known?  14:07
5  A  On the advice and direction of my counsel, I  14:07
6  respectfully decline to answer.  And I assert the  14:07
7  rights guaranteed to me under the Fifth Amendment to  14:07
8  the Constitution of the United States.  14:07
9  Q  Isn't it correct that the PCB configuration,  14:07
10  and diode arrangement that is reflected in the  14:07
11  documents you downloaded from Google in December 2015  14:07
12  are -- then are used in configuration -- let me start  14:07
13  over again.  14:07
14      Isn't it correct that the PCB configuration  14:07
15  and diode arrangement, that is reflected in the Google  14:07
16  documents you downloaded from Google on December --  14:07
17  December 2015, and are used in the configuration shown  14:07
18  at Exhibit 26 derive -- have independent economic  14:08
19  value by virtue of their not being publicly known?  14:08
20  A  On the advice and direction of my counsel, I  14:08
21  respectfully decline to answer.  And I assert the  14:08
22  rights guaranteed to me under the Fifth Amendment to  14:08
23  the Constitution of the United States.  14:08
24  Q  If you can refer back to Exhibit 25, please.  14:08
25  A  (Witness complies.)  14:08

                                                   Page 145

                                   37 (Pages 142 - 145)

**Page 146**

1   Q   For the record, Exhibit 25 is UBER000727.  It  14:08
2  looked like that got cut off when it was printed.   14:08
3     In the drawing on the far left of Exhibit 25,  14:09
4  there are   diodes ▮▮▮▮▮ of the   14:09
5  board.   14:09
6     Do you see that?   14:09
7  A   That's your question?   14:09
8  Q   Yeah.   14:09
9  A   Okay.   14:09
10    On the advice and direction of my counsel, I  14:09
11  respectfully decline to answer.  And I assert the  14:09
12  rights guaranteed to me under the Fifth Amendment to  14:09
13  the Constitution of the United States.   14:09
14  Q   The diodes shown on the drawing on the far  14:09
15  left of Exhibit 25 ▮▮▮▮▮   14:09
16  correct?   14:10
17  A   On the advice and direction of my counsel, I  14:10
18  respectfully decline to answer.  And I assert the  14:10
19  rights guaranteed to me under the Fifth Amendment to  14:10
20  the Constitution of the United States.   14:10
21  Q   You would agree that the ▮▮▮ the diodes  14:10
22  in the Fuji board are ▮▮▮▮▮▮▮▮▮
23  ▮▮▮▮   14:10
24  A   On the advice and direction of my counsel, I  14:10
25  respectfully decline to answer.  And I assert the  14:10

**Page 147**

1  rights guaranteed to me under the Fifth Amendment to  14:10
2  the Constitution of the United States.   14:10
3  Q   You agree that, in the Fuji system, that each  14:10
4  of the diodes have a ▮▮▮ placed in ▮▮▮ them?   14:10
5  A   On the advice and direction of my counsel, I  14:10
6  respectfully decline to answer.  And I assert the  14:10
7  rights guaranteed to me under the Fifth Amendment to  14:10
8  the Constitution of the United States.   14:11
9  Q   Isn't it correct that, in the Fuji system,  14:11
10  ▮▮▮ of the diodes have a ▮▮▮▮ placed in  14:11
11  ▮▮▮ them?   14:11
12  A   On the advice and direction of my counsel, I  14:11
13  respectfully decline to answer.  And I assert the  14:11
14  rights guaranteed to me under the Fifth Amendment to  14:11
15  the Constitution of the United States.   14:11
16  Q   Isn't it correct that the light emitted from  14:11
17  the diodes is ▮▮▮▮▮ in the Fuji system?   14:11
18  A   On the advice and direction of my counsel, I  14:11
19  respectfully decline to answer.  And I assert the  14:11
20  rights guaranteed to me under the Fifth Amendment to  14:11
21  the Constitution of the United States.   14:12
22  Q   Isn't it correct that the placement of the  14:12
23  diodes, as shown on Exhibit 25 -- let me start over  14:12
24  again.   14:12
25     Isn't it correct that the placement of the  14:12

**Page 148**

1  diodes, ▮▮▮▮▮▮▮▮▮ was derived  14:12
2  from Google confidential information reflected among  14:12
3  the 14,000 documents you downloaded in December 2015?  14:12
4  A   On the advice and direction of my counsel, I  14:12
5  respectfully decline to answer.  And I assert the  14:12
6  rights guaranteed to me under the Fifth Amendment to  14:12
7  the Constitution of the United States.   14:12
8  Q   Isn't it correct that the placement of the  14:12
9  diodes, ▮▮▮▮▮▮▮▮ would not  14:12
10  have been able to be developed by Uber without use of  14:13
11  the Google confidential information reflected among  14:13
12  the 14,000 documents you downloaded from Google in  14:13
13  December 2015?   14:13
14  A   On the advice and direction of my counsel, I  14:13
15  respectfully decline to answer.  And I assert the  14:13
16  rights guaranteed to me under the Fifth Amendment to  14:13
17  the Constitution of the United States.   14:13
18  Q   Isn't it correct that the placement of the  14:13
19  diodes that ▮▮▮▮▮▮ is a   14:13
20  placement that is not publicly known?   14:13
21  A   On the advice and direction of my counsel, I  14:13
22  respectfully decline to answer.  And I assert the  14:13
23  rights guaranteed to me under the Fifth Amendment to  14:13
24  the Constitution of the United States.   14:14
25  Q   Isn't it correct that the placement of the  14:14

**Page 149**

1  diodes ▮▮▮▮▮▮▮▮ is a   14:14
2  placement that has economic value because it is not  14:14
3  publicly known?   14:14
4  A   On the advice and direction of my counsel, I  14:14
5  respectfully decline to answer.  And I assert the  14:14
6  rights guaranteed to me under the Fifth Amendment to  14:14
7  the Constitution of the United States.   14:14
8  Q   If you could please turn to the --   14:14
9     MR. PERLSON:  It's this one; right?   14:14
10     MR. SCHMIDT:  Yeah.   14:14
11     MR. PERLSON:  Q.  The second page of   14:14
12  Exhibit 25.   14:14
13  A   (Witness complies.)   14:14
14  Q   Do you see that there are ▮▮▮ on the   14:14
15  ▮▮▮▮▮▮ in the middle of the page   14:15
16  annotated with a 12?   14:15
17     MR. EHRLICH:  He's just asking if you see it  14:15
18  now.  You can answer that.  Just, do you see --   14:15
19     THE WITNESS:  I do see --   14:15
20     MR. EHRLICH:  -- what he's referencing?   14:15
21     THE WITNESS:  I see that he's pointing at   14:15
22  ▮▮▮▮▮▮▮▮▮▮▮▮   14:15
23     MR. EHRLICH:  Okay.   14:15
24     THE WITNESS:  And there's a legend that says:  14:15
25  ▮▮▮▮▮▮▮▮▮   14:15



1    MR. EHRLICH:  Okay.                    14:15
2    MR. PERLSON:  Q.  And the legend          14:15
3  corresponding to the annotation for 12 shows:      14:15
4                                           14:15
5    Do you see that?                       14:15
6    A  Yes, I do see that.                  14:15
7    Q  And it says that the                14:16
8           on Exhibit 25, second page, underneath that   14:16
9  says:                                    14:16
10                                          14:16
                                            14:16
13    Do you see that it says that?          14:16
14    A  Yep, I do.  I can read that.        14:16
15    Q  And then, underneath                14:16
16           it says:                       14:16
17                                          14:16
18                                          14:16
19    Do you see that?                       14:16
20    A  I -- I see the text, yes.           14:16
21    Q  And then, underneath that, it says:  14:16
22                                          14:16
23                                          14:16
24    MR. EHRLICH:  Or                       14:17
25    THE WITNESS:  They're mils, not millimeters.  14:17
                                        Page 150

1    MR. PERLSON:  Mils.  Okay.  Mils.      14:17
2    Q  So, when I said millimeter before, those are  14:17
3  mils?                                    14:17
4    A  Right, mils.                        14:17
5    MR. EHRLICH:  And you see that?         14:17
6    THE WITNESS:  I do see that, yes.      14:17
7    MR. EHRLICH:  Okay.                    14:17
8    MR. PERLSON:  Q.  And, is the      for  14:17
9  the -- and -- let me start over again.   14:17
10    The            , as reflected on        14:17
11  the second page of Exhibit 25, is an accurate  14:17
12  reflection of the Fuji board at Uber?    14:17
13    A  On the advice and direction of my counsel, I  14:17
14  respectfully decline to answer.  And I assert the  14:17
15  rights guaranteed to me under the Fifth Amendment to  14:17
16  the Constitution of the United States.   14:17
17    Q  And you would agree that the      annotation   14:17
18  is referring to        in the PCBs for        ;       14:18
19  correct?                                 14:18
20    A  On the advice and direction of my counsel, I  14:18
21  respectfully decline to answer.  And I assert the  14:18
22  rights guaranteed to me under the Fifth Amendment to  14:18
23  the Constitution of the United States.   14:18
24    Q  The      annotation is referring to      in  14:18
25  the PCB for        ; correct?            14:18
                                        Page 151

1    A  On the advice and direction of my counsel, I  14:18
2  respectfully decline to answer.  And I assert rights  14:18
3  guaranteed to me under the Fifth Amendment to the  14:18
4  Constitution of the United States.       14:18
5    Q                                      14:18
6                                           14:19
7    A  Excuse me.                          14:19
11    On the advice and direction of my counsel, I  14:19
12  respectfully decline to answer.  And I assert the  14:19
13  rights guaranteed to me under the Fifth Amendment to  14:19
14  the Constitution of the United States.   14:19
15    Q  And, it is correct, as it says next to the  14:19
16           on the legend, that:            14:19
17                                          14:19
19    A  What's the question?                14:19
20    And it is correct...                   14:19
21    On the advice and direction of my counsel, I  14:19
22  respectfully decline to answer.  And I assert the  14:19
23  rights guaranteed to me under the Fifth Amendment to  14:19
24  the Constitution of the United States.   14:20
25    Q  And it is true that the dimensions reflected  14:20
                                        Page 152

1  on the second page of Exhibit 25 for the       14:20
2  was derived from Google confidential information;  14:20
3  correct?                                 14:20
4    A  On the advice and direction of my counsel, I  14:20
5  respectfully decline to answer.  And I assert the  14:20
6  right -- the rights guaranteed to me under the Fifth  14:20
7  Amendment to the Constitution of the United States.  14:20
8    Q  And you would agree, that the use of the  14:20
9         for            is derived from Google  14:21
10  confidential information; is that correct?  14:21
11    A  On the advice and direction of my counsel, I  14:21
12  respectfully decline to answer.  And I assert the  14:21
13  rights guaranteed to me under the Fifth Amendment to  14:21
14  the Constitution of the United States.   14:21
15    Q  And you would agree that the use of the     14:21
16  for            reflected in Exhibit 25, page 2, was  14:21
17  derived from confidential information downloaded by  14:21
18  you from Google in December 2015; correct?  14:22
19    A  On the advice and direction of my counsel, I  14:22
20  respectfully decline to answer.  And I assert the  14:22
21  rights guaranteed to me under the Fifth Amendment to  14:22
22  the Constitution of the United States.   14:22
23    Q  And you would agree that, without the     14:22
24  confidential information you downloaded from Google in  14:22
25  December 2015, Uber would not have been able to have  14:22
                                        Page 153

39 (Pages 150 - 153)

ATTORNEYS EYES ONLY

1 designed a system [redacted]
2 correct?                                        14:22
3    A   On the advice and direction of my counsel, I   14:22
4 respectfully decline to answer. And I assert the   14:22
5 rights guaranteed to me under the Fifth Amendment to   14:22
6 the Constitution of the United States.            14:22
7    Q   And you agree that [redacted]
8 [redacted] that was derived from Google's confidential   14:23
9 information, and reflected in Exhibit 25 on the second   14:23
10 page, is not commonly known?                     14:23
11    A   On the advice and direction of my counsel, I   14:23
12 respectfully decline to answer. And I assert the   14:23
13 rights guaranteed to me under the Fifth Amendment to   14:23
14 the Constitution of the United States.            14:23
15    Q   And, you would agree that [redacted]
16 [redacted] that was derived from Google   14:23
17 confidential information, and reflected in Exhibit 25   14:23
18 on the second page, has economic value because it is   14:23
19 not commonly known?                              14:23
20    A   On the advice and direction of my counsel, I   14:23
21 respectfully decline to answer. And I assert the   14:23
22 rights guaranteed to me under the Fifth Amendment to   14:23
23 the Constitution of the United States.            14:24
24    Q   It's correct that you attended a meeting at   14:24
25 Uber's headquarters in mid-January 2016?          14:24
Page 154

1    A   On the advice and direction of my counsel, I   14:24
2 respectfully decline to answer. And I assert the   14:24
3 rights guaranteed to me under the Fifth Amendment to   14:24
4 the Constitution of the United States.            14:24
5    Q   At this mid-January 2016 meeting, you        14:24
6 discussed Uber potentially acquiring the new venture   14:24
7 you were planning; correct?                      14:24
8    A   On the advice and direction of my counsel, I   14:24
9 respectfully decline to answer. And I assert the   14:24
10 rights guaranteed to me under the Fifth Amendment to   14:24
11 the Constitution of the United States.            14:24
12    Q   And, at this meeting in mid-January 2016, you   14:24
13 discussed the technology that Uber would be able to   14:24
14 acquire if it bought your new venture; correct?   14:24
15    A   On the advice and direction of my counsel, I   14:25
16 respectfully decline to answer. And I assert the   14:25
17 rights guaranteed to me under the Fifth Amendment to   14:25
18 the Constitution of the United States.            14:25
19    Q   You met with Brian McClendon at Uber in the   14:25
20 summer of 2015; correct?                         14:25
21    A   On the advice and direction of my counsel, I   14:25
22 respectfully decline to answer. And I assert the   14:25
23 rights guaranteed to me under the Fifth Amendment to   14:25
24 the Constitution of the United States.            14:25
25    Q   You discussed sharing Google's confidential   14:25
Page 155

1 information with Uber at your meeting in -- with Brian   14:25
2 McClendon in the summer of 2015; correct?         14:25
3    A   On the advice and direction of my counsel, I   14:25
4 respectfully decline to answer. And I assert the   14:25
5 rights guaranteed to me under the Fifth Amendment to   14:25
6 the Constitution of the United States.            14:25
7    Q   By at least January 2016, you understood that   14:25
8 Uber was already interested in investing or acquiring   14:25
9 the new company you were finding?                14:26
10    A   On the advice and direction of my counsel, I   14:26
11 respectfully decline to answer. And I assert the   14:26
12 rights guaranteed to me under the Fifth Amendment to   14:26
13 the Constitution of the United States.            14:26
14    Q   You agree that Uber -- let me start over      14:26
15 again.                                           14:26
16        You agree that Uber's LiDar lens designs are   14:26
17 derived from Google confidential information that you   14:26
18 took from Google?                                14:26
19    A   On the advice and direction of my counsel, I   14:26
20 respectfully decline to answer. And I assert the   14:26
21 rights guaranteed to me under the Fifth Amendment to   14:26
22 the Constitution of the United States.            14:26
23    Q   You agree that Uber would not have been able   14:26
24 to have developed its Li- -- LiDar lens designs   14:26
25 without using the confidential information that you   14:26
Page 156

1 took from Google?                                14:26
2    A   On the advice and direction of my counsel, I   14:26
3 respectfully decline to answer. And I assert the   14:26
4 rights guaranteed to me under the Fifth Amendment to   14:26
5 the United States Constitution.                  14:27
6    Q   You agree that, without the use of            14:27
7 information reflected in the 14,000 documents you   14:27
8 downloaded in December 2015, Uber would not have been   14:27
9 able to develop its own LiDar lens design; correct?   14:27
10    A   On the advice and direction of my counsel, I   14:27
11 respectfully decline to answer. And I assert the   14:27
12 rights guaranteed to me under the Fifth Amendment to   14:27
13 the Constitution of the United States.            14:27
14    Q   Uber's LiDar laser design was designed using   14:27
15 Google's confidential information, including      14:27
16 information contained in the 14,000 documents you   14:27
17 downloaded from Google in 2015; correct?          14:28
18    A   On the advice and direction of my counsel, I   14:28
19 respectfully decline to answer. And I assert the   14:28
20 rights guaranteed to me under the Fifth Amendment to   14:28
21 the Constitution of the United States.            14:28
22    Q   The number and configuration of LiDar lasers   14:28
23 in Uber's system is derived from Google confidential   14:28
24 information you took, including information in the   14:28
25 14,000 files you downloaded in December 2015?     14:28
Page 157

40 (Pages 154 - 157)

Page 158

1   A  On the advice and direction of my counsel, I   14:28
2  respectfully decline to answer.  And I assert the   14:28
3  rights guaranteed to me under the Fifth Amendment to   14:28
4  the Constitution of the United States.   14:28
5   Q  The pulse rate of Uber's LiDar lasers is   14:28
6  derived from confidential information you took from   14:28
7  Google, including information in the 14,000 files you   14:28
8  downloaded in 2015; correct?   14:28
9   A  On the advice and direction of my counsel, I   14:29
10  respectfully decline to answer.  And I assert the   14:29
11  rights guaranteed to me under the Fifth Amendment to   14:29
12  the Constitution of the United States.   14:29
13   Q  Uber's LiDar optical cavity design is derived   14:29
14  from confidential information that you took from   14:29
15  Google, including 14,000 files you downloaded in   14:29
16  December 2015; correct?   14:29
17   A  On the advice and direction of my counsel, I   14:29
18  respectfully decline to answer.  And I assert the   14:29
19  rights guaranteed to me under the Fifth Amendment to   14:29
20  the Constitution of the United States.   14:29
21   Q  You agree that the ████████████   14:29
22  ████████████   14:29
23  used by Uber, is derived from confidential information   14:30
24  that you took from Google, including the 14,000 files   14:30
25  you downloaded in December 2015; correct?   14:30

Page 159

1   A  On the advice and direction of my counsel, I   14:30
2  respectfully decline to answer.  And I assert the   14:30
3  rights guaranteed to me under the Fifth Amendment to   14:30
4  the Constitution of the United States.   14:30
5   Q  Did you discuss the substance of your   14:30
6  testimony at all with counsel during any breaks in   14:30
7  today's deposition?   14:30
8      MR. EHRLICH:  I'm going to object on   14:30
9  attorney-client privilege grounds.   14:30
10      And, to the extent it's not covered by   14:30
11  privilege, I'm going to direct you to assert your   14:31
12  constitutional rights.   14:31
13      THE WITNESS:  On the advice --   14:31
14      MR. EHRLICH:  Go ahead.   14:31
15      THE WITNESS:  -- and direction of my counsel,   14:31
16  I respectfully decline to answer.  And I assert the   14:31
17  rights guaranteed to me under the Fifth Amendment to   14:31
18  the Constitution of the United States.   14:31
19      MR. PERLSON:  Well, so are you instruct -- so   14:31
20  I -- I am just asking a yes-or-no question first.   14:31
21   Q  Did you discuss the substance of your   14:31
22  testimony today with counsel during any breaks in   14:31
23  today's deposition?   14:31
24      It's a yes-or-no question.   14:31
25      MR. EHRLICH:  Let me?   14:31

Page 160

1      THE WITNESS:  Maybe I --   14:31
2      MR. EHRLICH:  Yeah, yeah, yeah.   14:31
3      I do think that calls for attorney-client   14:31
4  privileged information.  I'm going to direct him not   14:31
5  to answer.   14:31
6      MR. PERLSON:  Okay.  Have you read   14:31
7  Judge Alsup's rules regarding this?   14:32
8      MR. EHRLICH:  Candidly, I have not read.  If   14:32
9  there's a rule directly on point, I have not.   14:32
10      MR. PERLSON:  Well, why don't we take a   14:32
11  break, and you can read the rule.   14:32
12      MR. EHRLICH:  Okay.  We can do that.   14:32
13      THE VIDEOGRAPHER:  We are going off the   14:32
14  record.  The time is 2:31.   14:32
15      (Recess taken.)   14:32
16      THE VIDEOGRAPHER:  We are back on the record.   14:43
17  The time is 2:42.   14:43
18      MR. EHRLICH:  So --   14:43
19      MR. PERLSON:  Go ahead.   14:43
20      MR. EHRLICH:  So, I've now had a chance to   14:43
21  read the order.  I can -- I do think the question   14:43
22  calls for attorney-client privileged information, and   14:43
23  I'm going to instruct him not to answer.   14:43
24      But, as an Officer of the Court, I will   14:43
25  represent there was no discussion between   14:43

Page 161

1  Mr. Levandowski and either Mr. Ramsey or myself about   14:43
2  the substance of his testimony, period.   14:43
3      There was, however, very brief discussion   14:43
4  between Mr. Levandowski and counsel for Uber, limited   14:43
5  to the subject of his employment history, prior to his   14:43
6  employment at Google.   14:43
7      MS. RAY:  And, to make clear, it had nothing   14:43
8  to do -- we did not discuss your questioning at all.   14:43
9  I asked some informational questions --   14:44
10      MR. EHRLICH:  That's correct.   14:44
11      MS. RAY:  -- of Mr. Levandowski.   14:44
12      MR. EHRLICH:  There -- there was no   14:44
13  discussion about answers he gave or questions you had   14:44
14  asked up to that point in the deposition.   14:44
15      MR. PERLSON:  Okay.   14:44
16      MR. EHRLICH:  And that, other than that very   14:44
17  brief discussion, there's been no further   14:44
18  communication at all.   14:44
19      MR. PERLSON:  And who was -- who specifically   14:44
20  was involved in that discussion?   14:44
21      MR. EHRLICH:  The discussion with   14:44
22  Mr. Levandowski and Uber's counsel was with Ms. Ray.   14:44
23  I believe I was listening.  Mr. Ramsey may have been   14:44
24  present.  And I'm not sure if there was anyone else   14:44
25  there at the time.   14:44

41 (Pages 158 - 161)

ATTORNEYS EYES ONLY

1    MS. RAY:  It was less than a couple of    14:44
2 minutes, and it was a factual clarification.  Not    14:44
3 related to your questioning; related to my    14:44
4 understanding of something.    14:44
5    MR. PERLSON:  Okay.    14:44
6    MR. EHRLICH:  So, thank you for letting me    14:44
7 clarify the record.    14:44
8    MR. PERLSON:  Okay.    14:44
9    Q   The -- did you do anything to look for    14:44
10 documents in relation to this deposition,    14:45
11 Mr. Levandowski?    14:45
12    MR. EHRLICH:  I'm going to instruct you to    14:45
13 use this one.  Assert your rights.    14:45
14    THE WITNESS:  On the advice and direction of    14:45
15 my counsel, I respectfully decline to answer.  And I    14:45
16 assert the rights guaranteed to me under the Fifth    14:45
17 Amendment to the Constitution of the United States.    14:45
18    MR. PERLSON:  Q.  Do you have documents    14:45
19 responsive to the subpoena document requests that we    14:45
20 propounded on you?    14:45
21    MR. EHRLICH:  I'm going to direct    14:45
22 Mr. Levandowski to assert his rights.    14:45
23    But I can address that, if you would like me    14:45
24 to, on the record.    14:45
25    MR. PERLSON:  I would, but I --    14:45

Page 162

1    THE WITNESS:  Okay.    14:45
2    MR. PERLSON:  Why don't you do this first.    14:45
3    THE WITNESS:  Yeah.    14:46
4    On the advice and direction of my counsel, I    14:46
5 respectfully decline to answer.  And I assert the    14:46
6 rights guaranteed to me under the Fifth Amendment to    14:46
7 the Constitution of the United States.    14:46
8    MR. EHRLICH:  And, Counsel, to address that,    14:46
9 we have been searching, racing as fast as possible to    14:46
10 search in every location we can come up with, that may    14:46
11 have responsive documents.    14:46
12    As of this morning, when we appeared for the    14:46
13 deposition, we have not located any responsive    14:46
14 non-privileged documents.  We are continuing to    14:46
15 search, of course.    14:46
16    And, as Counsel knows, Judge Alsup has    14:46
17 ordered us to produce in-camera a log identifying any    14:46
18 documents that are responsive at all to which we    14:46
19 assert any privileges.  And we will certainly comply    14:46
20 with that order on Wednesday.    14:47
21    But, as of today, there are no responsive    14:47
22 non-privileged documents that we have located.    14:47
23    MR. PERLSON:  Okay.  And, when you say    14:47
24 "non-privileged," that obviously includes the Fifth    14:47
25 Amendment privilege?    14:47

Page 163

1    MR. EHRLICH:  Correct.  It does include the    14:47
2 Fifth Amendment, as well as other -- as    14:47
3 attorney-client privilege.  But, primarily, the issue    14:47
4 at hand is the -- is the Fifth Amendment privilege as    14:47
5 well.    14:47
6    MR. PERLSON:  And the Fifth Amendment is    14:47
7 being asserted by Mr. Levandowski as to the document    14:47
8 requests as modified by the judge at the hearing on    14:47
9 Wednesday; is that correct?    14:47
10    MR. EHRLICH:  Correct.  We -- as we made    14:47
11 clear at the hearing, we intend to assert    14:47
12 Mr. Levandowski's Fifth Amendment privilege broadly as    14:47
13 against any active production that would be covered    14:47
14 under the Hubbel [sic] line of cases.    14:47
15    And so, that is something -- the -- the    14:47
16 standard practice for Fifth Amendment privilege is to    14:48
17 make an in-camera showing so the judge could evaluate    14:48
18 whether the privilege is being asserted properly or    14:48
19 not, and we intend to do that.    14:48
20    MR. PERLSON:  Okay.  Well, we don't need to    14:48
21 talk further about that on the record.    14:48
22    MR. EHRLICH:  Thank you.    14:48
23    MR. PERLSON:  I think that's it --    14:48
24    MR. EHRLICH:  Okay.    14:48
25    MR. PERLSON:  -- from us.    14:48

Page 164

1    MS. RAY:  I have some questions.  May I    14:48
2 switch seats with you?    14:48
3    MR. PERLSON:  Sure.    14:48
4    THE VIDEOGRAPHER:  Shall we go off the record    14:48
5 to do this?    14:48
6    MS. RAY:  Sure.    14:48
7    THE VIDEOGRAPHER:  We are going off the    14:48
8 record.  The time is 2:48.    14:48
9    (Recess taken.)    14:48
10    THE VIDEOGRAPHER:  We are back on the record.    14:50
11 The time is 2:50.    14:50
12    14:50
13    EXAMINATION    14:50
14 BY MS. RAY:    14:50
15    Q   Mr. Levandowski, do you recall that your    14:50
16 counsel stated, during this deposition, that if there    14:50
17 were questions about your background before you joined    14:50
18 Google, you would answer them?    14:50
19    MR. PERLSON:  Objection; form.    14:51
20    THE WITNESS:  Does that mean I answer or not?    14:51
21 I'm not clear.    14:51
22    MR. EHRLICH:  If he objects, you still have    14:51
23 to answer.    14:51
24    THE WITNESS:  I still have to answer.  Okay.    14:51
25    MR. EHRLICH:  You can answer.    14:51

Page 165

42 (Pages 162 - 165)

1    THE WITNESS: I -- I do remember saying that,   14:51
2 yes.   14:51
3    MS. RAY:  Q.  So, let me ask you some --   14:51
4    A  Or I do remember --   14:51
5    Q  Let me ask you some questions about your   14:51
6 background.   14:51
7    Where were you born?   14:51
8    A  I was born --   14:51
9    MR. EHRLICH:  You can answer.   14:51
10    THE WITNESS:  Okay.   14:51
11    I was born in Brussels, Belgium.   14:51
12    MS. RAY:  Q.  Where were you raised?   14:51
13    A  I was raised in Brussels, Belgium, until I   14:51
14 was 14, and then I came to the United States.   14:51
15    Q  And, did you come to California then?   14:51
16    A  I did, yes.   14:51
17    Q  Do you have any children?   14:51
18    A  I do, yes.   14:51
19    Q  What are their ages?   14:51
20    A  I have two.  Alex is six, and Miles is three.   14:51
21    Q  I'd like to ask you some questions about your   14:51
22 education.   14:51
23    Where did you attend high school?   14:51
24    A  I went to two high schools.  First is   14:51
25 Tamalpais High School in Marin County, and then   14:51

Page 166

1 University High School in San Francisco.   14:52
2    Q  When did you graduate from high school?   14:52
3    A  In 1998.   14:52
4    Q  Did you go to college?   14:52
5    A  I did, yes.   14:52
6    Q  Where did you go to college?   14:52
7    A  I went to college at UC Berkeley for   14:52
8 undergrad and grad school.   14:52
9    Q  When did you graduate from undergrad?   14:52
10    A  In 2002.   14:52
11    Q  When did you graduate from graduate school?   14:52
12    A  In 2003.   14:52
13    Q  What was your major during undergrad?   14:52
14    A  I studied industrial engineering and   14:52
15 operations research.   14:52
16    Q  And what was your master's degree in?   14:52
17    A  It was in industrial engineering and   14:52
18 operations research, as well as management of   14:52
19 technology.   14:52
20    Q  While you were in high school, did you have   14:52
21 any business ventures?   14:52
22    A  I did, yes.   14:52
23    Q  What were they?   14:52
24    A  I started selling candy freshman year to the   14:52
25 fellow students there.  And then, I built websites,   14:52

Page 167

1 and I built a website for seeing the inside locations   14:53
2 of things.  I made a map of campus.   14:53
3    Q  Can you give me an example of a website that   14:53
4 you built for seeing the inside of things.   14:53
5    A  So, the Tamalpais High School website had an   14:53
6 internal version that described this system where   14:53
7 there was, you know, pictures that you could navigate   14:53
8 and click through and see forward or back or around.   14:53
9    You know, there's other websites that I   14:53
10 created later on post-high school.  Once -- one was an   14:53
11 internal website for a company called Central Garden   14:53
12 and Pets which allowed the business to share internal   14:53
13 information about their customers and their products,   14:53
14 as well as their employees; similar things that you   14:53
15 call, you know, intranets today.   14:53
16    Q  Why did you build the website so that you   14:54
17 could see the inside of the high school?   14:54
18    A  I received the first digital camera from my   14:54
19 family, and I thought it was interesting to be able to   14:54
20 take pictures and kind of visit a location remotely.   14:54
21 I thought that would be interesting to have the   14:54
22 students to be able to show off the school, as well as   14:54
23 show that off to my friends and my mom, who lived in   14:54
24 Belgium still.   14:54
25    Q  When you were an undergraduate, did you have   14:54

Page 168

1 any business ventures?   14:54
2    A  I did, yes.   14:54
3    Q  What was one of your businesses during   14:54
4 undergrad?   14:54
5    A  It was called La Raison, and it was the --   14:54
6    MR. EHRLICH:  How do you spell that?   14:54
7    THE WITNESS:  L-A, R-A-I-S-O-N.   14:54
8    MS. RAY:  Q.  And what was La Raison?   14:54
9    A  It was a business that was making websites   14:54
10 and intranets for other businesses.   14:54
11    Q  When did you get involved with autonomous or   14:55
12 driverless vehicles?   14:55
13    A  It started in a class where we were learning   14:55
14 Java and robotics with Professor Roger Glassey.  And   14:55
15 we built self-driving vehicles out of, you know, Lego   14:55
16 Mindstorms using the Java programming language.   14:55
17    MR. EHRLICH:  Did you say Lego?   14:55
18    THE WITNESS:  Lego, L-E-G-- like the toys   14:55
19 that my kids play with now.   14:55
20    MS. RAY:  Q.  Did this work receive any   14:55
21 recognition?   14:55
22    A  Well, after the class, I entered a   14:55
23 competition which was several universities competing,   14:55
24 including, I believe, Stanford and Santa Clara   14:55
25 University, that was organized by the Sun   14:55

Page 169

43 (Pages 166 - 169)

ATTORNEYS EYES ONLY

1 Microsystems, and specifically organized by the folks   14:55
2 that created the -- the language of Java.   14:55
3       And it was competing for what they -- at the   14:55
4 time was the Gosling Award, which was named after   14:56
5 James Gosling, who is the inventor of Java.   14:56
6       And for that, I created a monopoly build   14:56
7 sorting robots that won the competition.  I then   14:56
8 received the Gosling Award.   14:56
9   Q   Earlier we heard about the DARPA Challenge.   14:56
10      How did you learn about that challenge?   14:56
11   A   My mom knew how much I loved robots and that   14:56
12 I loved making things.  And she gave me a call when   14:56
13 she found out about this competitions sponsored by the   14:56
14 defense department.  And she thought it was really   14:56
15 exciting for me to be able to know that I was going   14:56
16 on.  And when I saw it, I couldn't resist, and I   14:56
17 decided to enter.   14:56
18   Q   Can you tell me a little bit more about what   14:56
19 the DARPA race was.   14:56
20   A   So, the DARPA Grand Challenge was a set of   14:56
21 three competitions.  The -- the first one was   14:56
22 obviously, we didn't know there was going to be a   14:56
23 follow-up system.   14:57
24      And it was a -- effectively, it was a race   14:57
25 from LA to Vegas across the desert.  It was really   14:57

Page 170

1 Barstow to Vegas, you know, across the desert.  And   14:57
2 the goal was to release a vehicle into the world on   14:57
3 its own without any remote control or assistance in   14:57
4 order to try to get, you know, a piece of equipment   14:57
5 from one location to the next without any supervision   14:57
6 or input.   14:57
7      And, it was kind of a monumental step in   14:57
8 thinking how things were done before, where   14:57
9 previously, the defense department, clearly wanting to   14:57
10 move materials and troops from one point to the other,   14:57
11 had done contract works for specific objectives, and   14:57
12 the progress had been very slow.   14:57
13      And so, this DARPA was attempting to   14:57
14 circumvent that by having a competition that was just   14:57
15 clean, saying, Here is the start.  Here is the finish.   14:57
16 We'll give you a road that you can follow, in other   14:58
17 words.  And then we'll -- you'll turn the switch and   14:58
18 let the vehicle go through and see if it makes it or   14:58
19 not.   14:58
20   Q   What was your entry into the DARPA Challenge?   14:58
21   A   The entry was called Ghost Rider, and it was   14:58
22 a two-wheeled motorcycle.  It was the first of its   14:58
23 kind, to our knowledge, at that time and, you know,   14:58
24 self-driving motorcycle.   14:58
25   Q   What was your personal contribution to   14:58

Page 171

1 building the Ghost Rider?   14:58
2   A   I built a substantial portion of it myself,   14:58
3 but I also created a team to help me build the tools   14:58
4 and software and hardware to make the system work.   14:58
5   Q   Was the Ghost Rider ever used on public   14:58
6 streets?   14:58
7   A   It was.  We did some testing on -- on public   14:58
8 roads prior to the event to make sure that it was able   14:58
9 to go up certain hills and stay in -- in the right   14:58
10 lanes and so forth.   14:59
11   Q   Where did you do that testing on public   14:59
12 streets?   14:59
13   A   We did that in Richmond, California.   14:59
14   Q   How many other two-wheeled entrants were in   14:59
15 that same competition?   14:59
16   A   There were none.  It was, frankly, a pretty   14:59
17 crazy idea to go and make things even harder than   14:59
18 everybody already believed the challenge to be.   14:59
19   Q   Why was it harder to have a two-wheel --   14:59
20 two-wheel entry?   14:59
21   A   Well, to get a car to move down the street,   14:59
22 you know, 20 feet, you can kind of apply a little bit   14:59
23 of accelerator and not steer, and the vehicle will do   14:59
24 that.   14:59
25      To get a motorcycle to move forward, you have   14:59

Page 172

1 to build a lot of technology beforehand to make it to   14:59
2 be able to just drive in a straight line.  And so,   14:59
3 you're just making the problem harder than it needs to   14:59
4 be.   14:59
5   Q   How did the Ghost Rider do in the   14:59
6 competition?   14:59
7   A   It didn't do as well as I was hoping.  It --   14:59
8 it turned out that the complexities and challenges of   15:00
9 adding the balancing before you could start testing   15:00
10 all of the other navigation and optical were hard.   15:00
11      But, on the first year, we actually did   15:00
12 manage to qualify.  And out of the 109 teams or so   15:00
13 that applied, you know, 14 or so qualified, and we   15:00
14 were one of them.   15:00
15      On the day of the race, I -- I made a   15:00
16 mistake, and I forgot to turn on the software for   15:00
17 stabilizing the vehicle.  And the -- the motorcycle   15:00
18 went out of the gate and fell down.  So that was very   15:00
19 embarrassing.   15:00
20   Q   What happened to the Ghost Rider after the   15:00
21 race?   15:00
22   A   We used it again for the following   15:00
23 competition, which was, I think, a year or so later.   15:00
24 And then after that one, where the performance was   15:00
25 much better than before, the Smithsonian thought that   15:00

Page 173

44 (Pages 170 - 173)

ATTORNEYS EYES ONLY

1 it was pretty unique and novel and new, and so they   15:00
2 requested it for an exhibit on autonomous vehicles.   15:01
3 And I donated it to the Smithsonian, where it is   15:01
4 today.   15:01
5   Q   After graduate school, where did you work?   15:01
6   A   After graduate school, so I -- long day, so I   15:01
7 don't have the whole chronology down.   15:01
8       But I did a couple of things, one of which   15:01
9 was I was the -- having met all of the teams in a very   15:01
10 nonthreatening way by making a robotic motorcycle   15:01
11 through the Grand Challenge, one of the teams was Team   15:01
12 Dad.  Dad, are we there yet?  And it was by Bruce Hall   15:01
13 and Dave Hall, the founders of Velodyne Acoustics who,   15:01
14 at the time for the first Grand Challenge, made a   15:01
15 stereo camera, and in the second Grand Challenge made   15:01
16 a 360 laser that has evolved into the Velodyne that   15:02
17 they sell today.   15:02
18       And, after the race, I helped them get their   15:02
19 unit from the early, early prototype that just   15:02
20 outputted video data, as well as specific outputs,   15:02
21 into outputting Ethernet packets so that others could   15:02
22 use it.   15:02
23       And then, I became also the first Velodyne   15:02
24 sales rep.  And then I, you know, went around and   15:02
25 traveled and met many of the teams that were building   15:02

Page 174

1 these vehicles and helped them get the Velodyne and   15:02
2 helped them integrate and just understand what this   15:02
3 new sensor could do for -- for their teams.   15:02
4   Q   When you say that you were working on the   15:02
5 prototype that evolved into the Velodyne they sell   15:02
6 today, do you mean the LiDar that Velodyne --   15:02
7   A   Correct, the LiDar, yes.   15:02
8   Q   -- sells -- sells today?   15:02
9   A   There is a LiDar Gen 1, which was about this   15:02
10 large, which is in the Smithsonian as well.   15:02
11       And, for people to understand what the value   15:03
12 of that was, looking at a video screen wasn't enough.   15:03
13 You want to be able to get Ethernet packets.  And Dave   15:03
14 Hall was working on getting that working.   15:03
15       And I remember a couple of times where, in   15:03
16 getting that ready for demonstration and sale, I   15:03
17 helped him get the Ethernet devices, you know, up and   15:03
18 running.   15:03
19   Q   What else did you do after graduate school   15:03
20 around that time after you graduated?   15:03
21   A   I had -- I took the software for the Ghost   15:03
22 Rider and applied that to self-driving tractors so   15:03
23 that you -- a farmer could actually go and, you know,   15:03
24 ride along the tractor, and the tractor would go very   15:03
25 precisely straight down the whole field, and it could   15:03

Page 175

1 manually turn around and precisely drive back so that   15:03
2 you could plant your seeds in one specific time, and   15:04
3 then harvest them at a very different specific time,   15:04
4 and abstract out the skill of the operator and turn   15:04
5 that into the machine.   15:04
6   Q   What did you do next after that project?   15:04
7   A   After that, we -- this is where I worked with   15:04
8 Professor Thrun and a couple of his students, and we   15:04
9 started a company that was known as -- as VueTool.  I   15:04
10 don't recall if we actually founded the company, but   15:04
11 we did have a company together, and we called it that.   15:04
12       And we made a demo of kind of an evolution of   15:04
13 something called Movie Maps that was made by an MIT   15:04
14 professor -- I think an MIT professor -- a while back,   15:04
15 where you could actually view the world as kind of a   15:04
16 person would be there without actually physically   15:05
17 being in that location.   15:05
18       And we did that where we drove around   15:05
19 San Francisco and built maps so you could just drop   15:05
20 yourself in a location in San Francisco and see   15:05
21 that -- what the specific area looked like.   15:05
22   Q   Did that project involve LiDar?   15:05
23   A   There was a LiDar on the vehicle that we were   15:05
24 collecting information on.  The generating of the   15:05
25 pictures did not use it, but we were logging laser   15:05

Page 176

1 information as well.   15:05
2   Q   What ultimately happened with VueTool?   15:05
3   A   The -- the VueTool team and technology ended   15:05
4 up at Google through an acquisition, even though it   15:05
5 wasn't --   15:05
6       MR. EHRLICH:  Okay.  Excuse me, Counsel.   15:05
7 I'm -- Mr. Levandowski, I'm going to instruct   15:05
8 you not to give any answers that reference activities   15:05
9 after you started -- after that first day you started   15:05
10 at Google.   15:05
11       THE WITNESS:  Okay.   15:05
12       MR. EHRLICH:  Okay.   15:05
13       THE WITNESS:  Okay.   15:05
14       MS. RAY:  Q.  What became of your VueTool   15:05
15 product?   15:06
16   A   The VueTool product team joined Google, and   15:06
17 then what it became is something that happened   15:06
18 afterwards.  But it's -- it was about building   15:06
19 pictures of seeing the world so you can --   15:06
20       MR. EHRLICH:  You can give the name, if   15:06
21 there's any --   15:06
22       THE WITNESS:  The name -- Street View is --   15:06
23 is what the technology and team eventually became.   15:06
24       MR. EHRLICH:  Okay.   15:06
25       MS. RAY:  Q.  Did you ever work at a company   15:06

Page 177

45 (Pages 174 - 177)

1 called ENSCO?                           15:06
2    A   I did, yes.                       15:06
3    Q   What was ENSCO?                    15:06
4    A   ENSCO stands for Engineering Science and    15:06
5 Computers, and it's a research organization where I    15:06
6 helped build simulators for understanding how    15:06
7 self-driving vehicles would go and navigate the world.  15:06
8       And I helped put proposals on how to    15:06
9 integrate cameras and LiDar for augmenting the    15:06
10 resolution and the depth of specific information.    15:06
11      So, if you had a picture and a set of points    15:07
12 from a laser, you could extract more information by    15:07
13 combining the two than just using them separately.    15:07
14   Q   Have we discussed all of your business and    15:07
15 employment ventures before you started at Google at    15:07
16 this point?                             15:07
17   A   I think so, but I don't know.  There may be a  15:07
18 couple of other ones I don't recall right now.    15:07
19   Q   Thank you.                         15:07
20      MS. RAY:  I don't have any further questions.  15:07
21      THE WITNESS:  Okay.  Thank you.    15:07
22      MR. PERLSON:  I'm going to have some.  Why    15:07
23 don't you stop.                           15:07
24      THE VIDEOGRAPHER:  Do you want me to go off?  15:07
25      MR. PERLSON:  Yeah.                  15:07
                                       Page 178

1      THE VIDEOGRAPHER:  We are going off the    15:07
2 record.  The time is 3:07.                 15:07
3      (Recess taken.)
4      THE VIDEOGRAPHER:  We are back on the record.  15:08
5 The time is 3:08.                        15:08
6      MS. RAY:  Before I forget, can we designate    15:08
7 this transcript "Attorneys' Eyes Only"?  And then    15:08
8 we'll go through the process of de-designating.    15:08
9      MR. PERLSON:  That's acceptable.    15:08
10      MS. RAY:  Great.                    15:08
11      MR. EHRLICH:  Thank you.            15:08
12                                     15:08
13      FURTHER EXAMINATION                 15:08
14 BY MR. PERLSON:                          15:08
15   Q   Mr. Levandowski, you understand that Ms. Ray    15:08
16 is Uber's lawyer?                         15:08
17   A   I do understand that, although I do think    15:08
18 that MoFo is also representing me.          15:08
19   Q   And --                            15:08
20      MR. EHRLICH:  Can I just say, your    15:08
21 understanding is that MoFo represents you.  Not in    15:08
22 this matter, however; correct?             15:08
23      THE WITNESS:  Correct, yes.          15:09
24      MR. EHRLICH:  Okay.                 15:09
25      MR. PERLSON:  Q.  But even though Ms. Ray    15:09
                                       Page 179

1 represents Uber in this case, she didn't ask you any    15:09
2 questions about what you did at Uber; did she?    15:09
3    A   I --                              15:09
4      MR. EHRLICH:  You can answer that.    15:09
5      THE WITNESS:  Yeah, I -- she did not ask me    15:09
6 any questions about what I do at Uber.      15:09
7      MR. PERLSON:  Q.  And Uber is a defendant in    15:09
8 this case?  You understand that?           15:09
9    A   I do understand that, yeah.          15:09
10   Q   Don't you think that's a little strange, that  15:09
11 Uber's counsel didn't ask you any questions about what  15:09
12 you did at Uber?                          15:09
13   A   Well, I did clarify that I was only answering  15:09
14 questions about things that I did before I joined    15:09
15 Google.  And I did not join Uber before I joined    15:09
16 Google.                                 15:09
17   Q   And what you did before you joined Google    15:09
18 doesn't have any bearing on whether you stole    15:09
19 documents from Google; does it?            15:09
20      MR. EHRLICH:  You can answer, as long as you    15:09
21 confine your answer to what happened before you joined  15:10
22 Google.                                 15:10
23      MS. RAY:  Objection; form.            15:10
24      THE WITNESS:  What I -- what I did before I    15:10
25 joined Google does not affect the things that I did    15:10
                                       Page 180

1 after I joined Google.                    15:10
2      MR. PERLSON:  And, Ms. Ray talked about    15:10
3 things you had done from an engineering perspective    15:10
4 before you joined Google.                 15:10
5    Q   But, if you were such an accomplished    15:10
6 engineer, why did you steal 14,000 documents from    15:10
7 Google?                                 15:10
8      MS. RAY:  Objection; form.            15:10
9      THE WITNESS:  On the advice of -- on -- on    15:10
10 the advice and direction of my counsel, I respectfully  15:10
11 decline to answer.  And I assert the rights guaranteed  15:10
12 to me under the Fifth Amendment to the Constitution to  15:10
13 the United States.                       15:10
14      MR. PERLSON:  Q.  Don't you think that the    15:10
15 jury would be more interested in whether you stole    15:10
16 14,000 documents from Google than what you did before  15:11
17 you were at Google?                       15:11
18      MS. RAY:  Objection; form.            15:11
19      THE WITNESS:  On the advice and direction of    15:11
20 my counsel, I respectfully decline to answer.  And I    15:11
21 assert the rights guaranteed to me under the Fifth    15:11
22 Amendment of the Constitution to the United States.    15:10
23      MR. PERLSON:  Q.  Don't you think that the    15:11
24 question of whether you stole 14,000 documents and    15:11
25 used them at Uber is more relevant to this case than    15:11
                                       Page 181

46 (Pages 178 - 181)

1 anything that Ms. Ray asked you?           15:11
2      MS. RAY:  Objection; form.             15:11
3      THE WITNESS:  On the advice and direction of   15:11
4 my counsel, I respectfully decline to answer.  And I   15:11
5 assert the rights guaranteed to me under the Fifth     15:11
6 Amendment of the Constitution to the United States.    15:10
7      MR. PERLSON:  Q.  Did the clarification that    15:11
8 Ms. Ray asked of you during this deposition today have  15:11
9 anything to do with the subject matter that was        15:11
10 addressed in her examination of you that just preceded  15:11
11 me?                                      15:11
12      MS. RAY:  Objection.                 15:11
13      I instruct him not to answer on         15:12
14 attorney-client privilege grounds.         15:12
15      MR. EHRLICH:  And I instruct you to follow    15:12
16 that -- that instruction as well.          15:12
17      MS. RAY:  I'll represent to you, all I did   15:12
18 was ask a factual clarification.           15:12
19      MR. PERLSON:  If you --               15:12
20      MS. RAY:  But I'm not going to let him talk   15:12
21 to you about privileged matters.           15:12
22      MR. PERLSON:  I'll reserve all rights on     15:12
23 that, but we can deal with that later.      15:12
24      That's all.                15:12
25      THE WITNESS:  Thank you.             15:12

Page 182

1      THE VIDEOGRAPHER:  Okay.  This marks the end   15:12
2 of DVD No. 3 in the deposition of Anthony Levandowski.  15:12
3      We are going off the record.  The time is    15:12
4 3:12 p.m.                          15:12
5      THE REPORTER:  Counsel, did you need a copy?   15:12
6      MR. EHRLICH:  I think we will.          15:12
7      MS. RAY:  Can you e-mail Ethel and ask her    15:13
8 for the order?  We have a standing order.   15:13
9      THE REPORTER:  They have a standing for      15:13
10 immediate delivery today.  Are you wanting it the same  15:13
11 time everybody else gets it?              15:13
12      MS. RAY:  Yes.                15:13
13      MR. EHRLICH:  Sure, sure.  That's -- we do.   15:13
14      (WHEREUPON, the deposition ended         15:13
15      at 3:13 p.m.)               15:13
16           ---oOo---

17
18
19
20
21
22
23
24
25

Page 183

1           CERTIFICATE OF REPORTER
2
3      I, ANDREA M. IGNACIO, hereby certify that the
4 witness in the foregoing deposition was by me duly
5 sworn to tell the truth, the whole truth, and nothing
  but the truth in the within-entitled cause;
6      That said deposition was taken in shorthand
7 therein stated, and that the testimony of the said
8 witness was thereafter reduced to typewriting, by
9 computer, under my direction and supervision;
10     That before completion of the deposition,
11 review of the transcript [ ] was [x] was not
   requested.  If requested, any changes made by the
12 deponent (and provided to the reporter) during the
13 period allowed are appended hereto.
14     I further certify that I am not of counsel or
15 attorney for either or any of the parties to the said
16 deposition, nor in any way interested in the event of
   this cause, and that I am not related to any of the
17 parties thereto.
18 Dated: April 14, 2017
19
20
21
22
23
24     ANDREA M. IGNACIO,
25     RPR, CRR, CCRR, CLR, CSR No. 9830

Page 184

47 (Pages 182 - 184)