IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WAYMO LLC,

    Plaintiff,

  v.

UBER TECHNOLOGIES, INC., *et al.*,

    Defendants.

                                  /

No. C 17-00939 WHA

**QUESTIONS FOR HEARING ON PLAINTIFF'S MOTION FOR PROVISIONAL RELIEF**

**UNDER SEAL**

At the hearing tomorrow, both sides should please be prepared to succinctly address the following questions with copies of relevant case law or documents in the record highlighted and ready to hand up to the judge, as well as extra copies for opposing counsel.

1. How detailed is the ▮▮▮▮▮▮▮ design that Waymo claims as a trade secret? For example, does Waymo claim trade secret protection over *any* LiDAR design that uses any ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮? Or does it claim only the *specific* design used in GBr3, including the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ that Waymo ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?

2. If you want the LiDAR points of illumination ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ wouldn't you, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮?

3. How is a ▮▮▮▮ superior to any other ▮▮▮▮? Where in the record does Waymo supply evidence concerning the specific effects of ▮▮▮▮?

4. What are the standard practices, if any, in the LiDAR field for distributing 64 diodes across multiple printed circuit boards?

5. How, if at all, does Fuji's configuration of two 32-diode transmit blocks specifically map on to GBr3's configuration of ▮▮▮▮? For example, do each of the ▮ printed circuit boards within each configuration serve comparable functions in their respective LiDAR systems? Does the patent law doctrine of equivalents have an equivalent in trade secret law?

6. Does Velodyne or any other company manufacture or commercialize LiDAR systems using any of Waymo's purported trade secrets? For example, is the ▮▮▮▮ configuration used by any other company? Has Waymo's use of this configuration or any other asserted trade secret been disclosed to any public agency? Under the law, could anything actually used by other companies be deemed a trade secret by Waymo?

7. Even if defendants themselves have not misappropriated any trade secrets, can they still be held liable for misappropriation by Levandowski that was never used for their benefit?

8. If Waymo shows that Levandowski misappropriated trade secrets but fails to further show that defendants did so, would it be enough, to show likelihood of success and irreparable injury, that defendants knowingly employed an executive who misappropriated trade secrets and who remains in a position to misuse said secrets for defendants' benefit? Please provide case law on point.

9. Does an accounting as part of provisional relief require a finding of irreparable injury? (An accounting, as used in this question, would be an order to defendants to conduct a thorough company-wide investigation and to itemize every use or communication concerning specific alleged trade secrets and involving Levandowski.)

2

10. If the Court adopts defendants' recusal plan for Levandowski, will defendants further consent to a mandatory reporting provision requiring their employees to report violations of said plan to the general counsel and thence to the Court and the parties?

\*        \*        \*

Answers to the foregoing questions must be limited to the motion record where possible.

These questions will all be orally discussed, time permitting, but each side may also respond with a written submission up to **TEN PAGES** in length (double spaced, size 12 font, with no footnotes or attachments) by **11:00 P.M. TONIGHT**. Please redact only truly secret material.

This order shall remain under seal in its entirety until **MAY 3 AT 11:00 P.M.** and then shall be made public unless either side **SHOWS CAUSE** in writing why any specific portions warrant continued sealing.

**IT IS SO ORDERED.**

Dated: May 2, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

3