# JAFFE EXHIBIT 66

ATTORNEYS EYES ONLY

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3            SAN FRANCISCO DIVISION

4               ---oOo---

5

6    WAYMO LLC,

7          Plaintiff,

8    vs.                    No. 3:17-cv-00939-WHA

9    UBER TECHNOLOGIES, INC.;

     OTTOMOTTO LLC; OTTO TRUCKING,

10   INC.,

11         Defendants.

     _____/

12

13

14            ATTORNEYS' EYES ONLY

15

16   VIDEOTAPED DEPOSITION OF ANTHONY LEVANDOWSKI

17           SAN FRANCISCO, CALIFORNIA

18            FRIDAY, APRIL 14, 2017

19

20

21

22   BY:  ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~

23   CSR LICENSE NO. 9830

24   JOB NO. 2594023

25   Pages 1 - 184

                                        Page 1

```
1        UNITED STATES DISTRICT COURT
2        NORTHERN DISTRICT OF CALIFORNIA
3          SAN FRANCISCO DIVISION
4            ---oOo---
5 WAYMO LLC,
6      Plaintiff,
7 vs.              No. 3:17-cv-00939-WHA
8 UBER TECHNOLOGIES, INC.;
  OTTOMOTTO LLC; OTTO TRUCKING,
9 INC.,
10     Defendants.
   _____/
11
12      Videotaped Deposition of Anthony
13 Levandowski, taken on behalf of the Plaintiffs, on
14 April 14, 2017, at Quinn Emanuel Urquhart &
15 Sullivan, 50 California street, Suite 2200,
16 San Francisco, California 94111, beginning
17 9:05 a.m., and commencing at 3:13 p.m., Pursuant
18 to Notice, and before me, ANDREA M. IGNACIO, CSR,
19 RPR, CRR, CLR ~ License No. 9830.
20
21
22
23
24
25
                                          Page 2
```

```
1 A P P E A R A N C E S:  (Cont.)
2
3  FOR THE DEFENDANTS:
4    MORRISON & FOERSTER LLP
5    By:  WENDY RAY, Esq.
6    707 Wilshire Boulevard, Suite 6000
7    Los Angeles, California 90017
8    Phone:  213.892.5446
9    wray@mofo.com
10
11
12 ALSO PRESENT:  Nicole T. Bartow, Uber
13      Shana Stanton, Waymo Inc.
14      Jeffrey Anderson, Videographer
15
16        ---oOo---
17
18
19
20
21
22
23
24
25
                                          Page 4
```

```
1 A P P E A R A N C E S:
2
3  FOR THE PLAINTIFFS:
4    QUINN EMANUEL URQUHART & SULLIVAN LLP
5    By:  DAVID A. PERLSON, Esq.
6       PATRICK SCHMIDT, Esq.  (Los Angeles)
7    50 California Street, Suite 2200
8    San Francisco, California 94111
9    Phone:  415.875.6600
10   davidperlson@quinnemanuel.com
11   patrickschmidt@quinnemanuel.com
12
13 FOR THE WITNESS:
14   RAMSEY EHRLICH LLP
15   By:  MILES EHRLICH, Esq.
16      ISMAIL RAMSEY, Esq.
17   803 Hearst Avenue
18   Berkeley, California 94710
19   Phone:  510.548.3600
20   miles@ramsey-ehrlich.com
21   ismail@ramsey-ehrlich.com
22
23
24
25
                                          Page 3
```

```
1            I N D E X
2
3 WITNESS:  Anthony Levandowski
4
5 EXAMINATION              PAGE
6 Mr. Perlson              8, 179
7 Ms. Ray                  165
8
9
10
11         E X H I B I T S
12 EXHIBIT                  PAGE
13 Exhibit 25   Schematic for Uber's Fuji board   135
14 Exhibit 26   PCB Configuration for the Fuji   142
15     board
16
17        ---oOo---
18
19
20
21
22
23
24
25
                                          Page 5
```

2 (Pages 2 - 5)

ATTORNEYS EYES ONLY

1    SAN FRANCISCO, CALIFORNIA
2    FRIDAY, APRIL 14, 2017
3    9:05 A.M.
4
5
6
7    THE VIDEOGRAPHER:  Good morning.        09:03
8    THE WITNESS:  Good morning.             09:05
9    MR. EHRLICH:  Good morning.             09:05
10   THE VIDEOGRAPHER:  We are on the record at   09:05
11   9:05 a.m. on April 14th, 2017.          09:05
12   This is the video recorded deposition of   09:06
13   Anthony Levandowski.                    09:06
14   My name is Jeffrey Anderson, here with our   09:06
15   court reporter, Andrea Ignacio.  We're here from   09:06
16   Veritext Legal Solutions at the request of counsel for   09:06
17   the defendant.                          09:06
18   This deposition is being held at        09:06
19   50 California Street in San Francisco, California.   09:06
20   The caption of this case is Waymo, LLC versus   09:06
21   Uber Technologies.  Case No. 317-CV-00939 WHA.   09:06
22   Please note that audio and video recording   09:06
23   will take place, unless all parties agree to go off   09:06
24   the record.  Microphones are sensitive and may pick up   09:06
25   whispers, private conversations, and cellular   09:06

Page 6

1    interference, so please be aware of that.   09:06
2    Please state your name and the firm you   09:06
3    represent, beginning with the noticing attorney.   09:06
4    MR. PERLSON:  I just want to correct one   09:06
5    thing you said.  Plaintiff Waymo requested the   09:06
6    deposition, not the defendant.          09:07
7    THE VIDEOGRAPHER:  I apologize about that.   09:07
8    MR. PERLSON:  David Perlson from Quinn   09:07
9    Emanuel, on behalf of plaintiff Waymo.  09:07
10   MR. SCHMIDT:  Patrick Schmidt from Quinn   09:07
11   Emanuel, on behalf of plaintiff Waymo.  09:07
12   MS. STANTON:  Shana Stanton from Waymo.   09:07
13   MS. BARTOW:  Nicole Bartow, in-house at Uber.   09:07
14   MS. RAY:  Wendy Ray of Morrison & Foerster,   09:07
15   on behalf of defendants Uber Technologies, Ottomoto,   09:07
16   and Otto Trucking.                      09:07
17   MR. EHRLICH:  Miles Ehrlich from Ramsey &   09:07
18   Ehrlich, on behalf of the deponent, Anthony   09:07
19   Levandowski.                            09:07
20   THE VIDEOGRAPHER:  Thank you.           09:07
21   The witness will be sworn in, and counsel may   09:07
22   begin the examination.                  09:07
23   ///                                     09:07
24   ///                                     09:07
25   ///                                     09:07

Page 7

1    ANTHONY LEVANDOWSKI,               09:06
2    having been sworn as a witness
3    by the Certified Shorthand Reporter,
4    testified as follows:
5
6    EXAMINATION
7    BY MR. PERLSON:
8    Q  Can you please state and spell your name for   09:07
9    the record.                             09:07
10   A  Anthony Levandowski. A-N-T-H-O-N-Y,   09:07
11   L-E-V-A-N-D-O-W-S-K-I.                  09:07
12   Q  And where do you live?              09:07
13   A  I live in Oakland, California.       09:07
14   Q  And have you ever been deposed before?   09:07
15   A  I have not.                         09:08
16   Q  Well, you understand that you're testifying   09:08
17   under oath, the same oath that you would take if you   09:08
18   were testifying in front of a jury?    09:08
19   A  I understand that.                  09:08
20   Q  Is there any reason you can't give complete   09:08
21   and accurate testimony today?           09:08
22   A  I don't see why not.                09:08
23   Q  I'm going to try to be as clear as I can.   09:08
24   But, if I'm not clear, please do let me know, and I'll   09:08
25   do my best to rephrase the question.    09:08

Page 8

1    Is that acceptable?                     09:08
2    A  That sounds great.                  09:08
3    Q  And, you need to give audible answers, yes or   09:08
4    no, rather than nodding of the head or shaking of the   09:08
5    head.                                   09:08
6    A  Of course.  I understand that.      09:08
7    Q  I see you have a couple of pieces of paper in   09:08
8    front of you.  Can you tell me what those are.   09:08
9    A  Yeah, my counsel gave me two pieces of paper.   09:08
10   They say very similar things.  Do you want me to read   09:08
11   them out to you?                        09:08
12   Q  No.  I suspect that you'll probably read them   09:08
13   later.                                  09:08
14   A  You'll hear them, most likely.      09:09
15   Q  Yeah.  Okay.                        09:09
16   Well, where do you work currently?     09:09
17   A  I work at Uber.                     09:09
18   Q  Okay.  And what's your position there?   09:09
19   A  I'm vice president of engineering.   09:09
20   Q  And in what aspect of -- what -- what -- what   09:09
21   are your responsibilities as vice president of   09:09
22   engineering?                            09:09
23   MR. EHRLICH:  I'm going to instruct you to   09:09
24   invoke your constitutional rights.      09:09
25   THE WITNESS:  I'll read from the paper:   09:09

Page 9

3 (Pages 6 - 9)

**Page 10**

1  "On the advice and direction of my counsel, I  09:09
2  respectfully decline to answer.  And I assert the  09:09
3  rights guaranteed to me under the Fifth Amendment of  09:09
4  the Constitution of the United States."  09:09
5  MR. PERLSON: Q.  How long have you worked at  09:09
6  Uber?  09:09
7  A  On the advice and direction of my counsel, I  09:09
8  respectfully decline to answer.  And I assert the  09:09
9  rights guaranteed to me under the Fifth Amendment of  09:09
10  the Constitution of the United States.  09:09
11  Q  You are a former employee of Google; correct?  09:10
12  A  That's correct.  09:10
13  Q  When did you leave the employ of Google?  09:10
14  MR. EHRLICH: You can answer.  09:10
15  THE WITNESS: Okay.  In January of 2016.  I  09:10
16  don't know the exact date, yeah.  09:10
17  MR. PERLSON: Q.  When you worked at Google,  09:10
18  you received tens of millions of dollars in  09:10
19  compensation from Google; is that accurate?  09:10
20  MR. EHRLICH: I'm going to instruct you to  09:10
21  assert your rights.  09:10
22  THE WITNESS: Okay.  On the advice and  09:10
23  direction of my counsel, I respectfully decline to  09:10
24  answer.  And I assert the rights guaranteed to me  09:10
25  under the Fifth Amendment of the Constitution of the  09:10

**Page 11**

1  United States.  09:10
2  MR. PERLSON: Q.  You understood that, while  09:10
3  you were at Google, that you were obligated to keep  09:10
4  Google sensitive information confidential?  09:10
5  A  On the advice of -- on the -- on the advice  09:10
6  and direction of my counsel, I respectfully decline to  09:11
7  answer.  And I assert the rights guaranteed to me  09:11
8  under the Fifth Amendment of the Constitution of the  09:11
9  United States.  09:11
10  Q  You understand that, while you were at  09:11
11  Google, you were not allowed to use Google's  09:11
12  confidential information for a competitor?  09:11
13  A  On the advice and direction of my counsel, I  09:11
14  respectfully decline to answer.  And I assert the  09:11
15  rights guaranteed to me under the Fifth Amendment of  09:11
16  the Constitution of the United States.  09:11
17  Q  Mr. Levandowski, you were in discussions with  09:11
18  Uber for months prior to your departure from Google  09:11
19  regarding working for Uber; correct?  09:11
20  A  On the advice of my counsel, I respectfully  09:11
21  decline to answer.  And I assert the rights guaranteed  09:11
22  to me under the Fifth Amendment of the Constitution of  09:11
23  the United States.  09:11
24  Q  You and Uber discussed how you would form a  09:11
25  new company while you were employed by Google?  09:11

**Page 12**

1  A  On the advice and direction of my counsel, I  09:11
2  respectfully decline to answer.  And I assert the  09:12
3  rights guaranteed to me under the Fifth Amendment of  09:12
4  the Constitution of the United States.  09:12
5  Q  You and Uber discussed that your new company  09:12
6  would eventually be acquired by Uber while you were  09:12
7  still employed at Google?  09:12
8  A  On the advice and direction of my counsel, I  09:12
9  respectfully decline to answer.  And I assert the  09:12
10  rights guaranteed to me under the Fifth Amendment of  09:12
11  the Constitution of the United States.  09:12
12  Q  You began forming your new company that would  09:12
13  eventually be acquired by Uber in early 2016; is that  09:12
14  correct?  09:12
15  A  On the advice and direction of my counsel, I  09:12
16  respectfully decline to answer.  And I assert the  09:12
17  rights guaranteed to me under the Fifth Amendment of  09:12
18  the Constitution of the United States.  09:12
19  Q  That new company eventually became Otto;  09:12
20  correct?  09:12
21  A  On the advice and direction of my counsel, I  09:12
22  respectfully decline to answer.  And I assert the  09:12
23  rights guaranteed to me under the Fifth Amendment of  09:12
24  the Constitution of the United States.  09:12
25  Q  While you were still employed by Google, you  09:12

**Page 13**

1  recruited engineers to join your new company so that  09:12
2  your new company could replicate Google's LiDar  09:13
3  technology; correct?  09:13
4  A  On the advice and direction of my counsel, I  09:13
5  respectfully decline to answer.  And I assert the  09:13
6  rights guaranteed to me under the Fifth Amendment of  09:13
7  the Constitution of the United States.  09:13
8  Q  You made Uber aware of your plan to replicate  09:13
9  Google's LiDar technology for your new company;  09:13
10  correct?  09:13
11  A  On the -- on the advice and direction of my  09:13
12  counsel, I respectfully decline to answer.  And I  09:13
13  assert the rights guaranteed to me under the Fifth  09:13
14  Amendment of the Constitution of the United States.  09:13
15  Q  Travis Kalanick recruited you personally to  09:13
16  do -- to work for Uber; correct?  09:13
17  A  On the advice and direction of my counsel, I  09:13
18  respectfully decline to answer.  And I assert the  09:13
19  rights guaranteed to me on the Fifth Amendment --  09:13
20  under the Fifth Amendment of the United States -- the  09:13
21  Fifth Amendment of the Constitution of the United  09:14
22  States.  09:14
23  Q  Mr. Kalanick was aware of your plan to  09:14
24  replicate Google's LiDar technology for your new  09:14
25  company; correct?  09:14

4 (Pages 10 - 13)

ATTORNEYS EYES ONLY

**Page 14**

1    A   On the advice and direction of my counsel, I   09:14
2    respectfully decline to answer.  And I assert the   09:14
3    rights guaranteed to me under the Fifth Amendment of   09:14
4    the Constitution of the United States.   09:14
5        Q   In fact, Uber -- Uber encouraged you to   09:14
6    replicate Google's LiDar technology at Otto; correct?   09:14
7        A   On the advice and direction of my counsel, I   09:14
8    respectfully decline to answer.  And I assert the   09:14
9    rights guaranteed to me under the Fifth Amendment of   09:14
10   the Constitution of the United States.   09:14
11       Q   And Mr. Kalanick encouraged you to replicate   09:14
12   Google's LiDar technology at Otto; correct?   09:14
13       A   On the advice and direction of my counsel, I   09:14
14   respectfully decline to answer.  And I assert the   09:14
15   rights guaranteed to me under the Fifth Amendment of   09:14
16   the Constitution of the United States.   09:14
17       Q   Uber encouraged you to replicate Google's   09:14
18   LiDar technology so that it would be available to Uber   09:15
19   when it acquired Otto; correct?   09:15
20       A   On the advice and direction of my counsel, I   09:15
21   respectfully decline to answer.  And I assert the   09:15
22   rights guaranteed to me under the Fifth Amendment of   09:15
23   the Constitution of the United States.   09:15
24       Q   You took over 14,000 confidential documents   09:15
25   from Google prior to your departure from Google;   09:15

**Page 15**

1    correct?   09:15
2        A   On the advice and direction of my counsel, I   09:15
3    respectfully decline to answer.  And I assert the   09:15
4    rights guaranteed to me under the Fifth Amendment of   09:15
5    the Constitution of the United States.   09:15
6        Q   You made these 14,000 confidential documents,   09:15
7    that you took from Google, available to your new   09:15
8    company, Otto; correct?   09:15
9        A   On the advice and direction of my counsel, I   09:15
10   respectfully decline to answer.  And I assert the   09:15
11   rights guaranteed to me under the Fifth Amendment of   09:15
12   the Constitution of the United States.   09:15
13       Q   Among the 14,000 documents you took from   09:15
14   Google, there were documents that reflected Google's   09:15
15   proprietary LiDar technology; correct?   09:15
16       A   On the advice and direction of my counsel, I   09:16
17   respectfully decline to answer.  And I assert the   09:16
18   rights guaranteed to me under the Fifth Amendment of   09:16
19   the Constitution of the United States.   09:16
20       Q   You took the 14,000 documents from Google so   09:16
21   that you could get -- so that you could more quickly   09:16
22   replicate Google's technology at Otto; correct?   09:16
23       A   On the advice and direction of my counsel, I   09:16
24   respectfully decline to answer.  And I assert the   09:16
25   rights guaranteed to me under the Fifth Amendment of   09:16

**Page 16**

1    the Constitution of the United States.   09:16
2        Q   Uber knew that you took 14,000 confidential   09:16
3    documents from Google in order to accelerate your   09:16
4    development of LiDar technology at Otto --   09:16
5        A   On --   09:16
6        Q   -- correct?   09:16
7        A   On the advice and direction of my counsel, I   09:16
8    respectfully decline to answer.  And I assert the   09:16
9    rights guaranteed to me under the Fifth Amendment of   09:16
10   the Constitution of the United States.   09:16
11       Q   Uber encouraged you to take the   09:16
12   14,000 confidential Google documents so that the   09:16
13   information would be available to Uber when it   09:16
14   acquired Otto; correct?   09:16
15       A   On the -- on the advice and direction of my   09:16
16   counsel, I respectfully decline to answer.  And I   09:17
17   assert the rights guaranteed to me under the Fifth   09:17
18   Amendment of the Constitution of the United States.   09:17
19       Q   Uber helped you conceal the fact that you had   09:17
20   taken 14,000 confidential documents from Google;   09:17
21   correct?   09:17
22       A   On the advice and direction of my counsel, I   09:17
23   respectfully decline to answer.  And I assert the   09:17
24   rights guaranteed to me under the Fifth Amendment of   09:17
25   the Constitution of the United States.   09:17

**Page 17**

1        Q   Uber developed a plan in which a joint   09:17
2    defense agreement would be entered for the sole   09:17
3    purpose of hiding the fact that you had taken   09:17
4    14,000 confidential documents from Google?   09:17
5        MS. RAY:  I instruct you not to answer on the   09:17
6    basis of attorney-client privilege.   09:17
7        MR. PERLSON:  Q.  Are you aware of the   09:18
8    existence of a due diligence report regarding that --   09:18
9    regarding Uber's acquisition of Otto?   09:18
10       MS. RAY:  Can you hold on a second.   09:18
11       You may answer.   09:18
12       MR. EHRLICH:  I'm going to instruct you to   09:18
13   decline to answer based on attorney-client privilege,   09:18
14   and also instruct you to assert your rights.   09:18
15       THE WITNESS:  Okay.  On the --   09:18
16       MS. RAY:  Join in that instruction on   09:18
17   attorney-client privilege.   09:18
18       MR. PERLSON:  Can you identify the attorney   09:18
19   and the client in that instruction.   09:18
20       MR. EHRLICH:  The attorney and the client in   09:19
21   that instruction?   09:19
22       The client is Mr. Levandowski, and the   09:19
23   attorney at the time was John Gardner, and other   09:19
24   attorneys associated with Uber and Otto, whose names I   09:19
25   don't know at the present time.   09:19

5 (Pages 14 - 17)

1    And it's related to joint defense common    09:19
2  interest privilege that's been under discussion before  09:19
3  Judge Alsup.    09:19
4    MR. PERLSON: Q. Do you want to read your --   09:19
5    MR. EHRLICH: Please go ahead.    09:19
6    MS. RAY: Well, he's gotten an instruction    09:19
7  not to answer; right?    09:19
8    Miles, you're instructing him not to answer?   09:19
9    MR. EHRLICH: Yeah, that's a good point. The  09:19
10  instruction is not to answer.    09:19
11    And you're going to follow my instruction?   09:19
12    THE WITNESS: I will follow your instruction.  09:19
13    MR. EHRLICH: Okay.    09:19
14    MR. PERLSON: Q. Mr. Levandowski, you and    09:19
15  Uber discussed how you should exploit Google's   09:20
16  confidential information regarding LiDar technology in  09:20
17  a way that wouldn't subject Uber to liability for that  09:20
18  use; correct?    09:20
19    A  On the advice and direction of my counsel, I  09:20
20  respectfully decline to answer. And I assert the   09:20
21  rights guaranteed to me under the Fifth Amendment of  09:20
22  the Constitution of the United States.    09:20
23    Q  Before you left Google, you and Uber    09:20
24  discussed you starting a new company in January --   09:20
25  January 2016?    09:20

Page 18

1    A  On the advice and direction of my counsel, I  09:20
2  respectfully decline to answer. And I assert the   09:20
3  rights guaranteed to me under the Fifth Amendment of  09:20
4  the Constitution of the United States.    09:20
5    Q  You and Uber decided that you should start a  09:20
6  new company so that you could start exploiting    09:20
7  Google's confidential information without leaving a   09:20
8  trail at Uber; correct?    09:20
9    A  On the advice and direction of my counsel, I  09:21
10  respectfully decline to answer. And I assert the   09:21
11  rights guaranteed to me under the Fifth Amendment of  09:21
12  the Constitution of the United States.    09:21
13    Q  You and Uber had an understanding by at least  09:21
14  early 2016 that your new company would be acquired by  09:21
15  Uber; correct?    09:21
16    A  On the advice and direction of my counsel, I  09:21
17  respectfully decline to answer. And I assert the   09:21
18  rights guaranteed to me under the Fifth Amendment of  09:21
19  the Constitution of the United States.    09:21
20    Q  In January of 2016, you and Uber discussed   09:21
21  how to cover up the fact that you had taken 14,000   09:21
22  confidential documents from Google; correct?    09:21
23    A  On the advice and direction of my counsel, I  09:21
24  respectfully decline to answer. And I assert the   09:21
25  rights guaranteed to me under the Fifth Amendment of  09:21

Page 19

1  the Constitution of the United States.    09:21
2    Q  Throughout the first half of 2016 you did, in  09:21
3  fact, use the 14,000 confidential Google documents   09:21
4  that you took; correct?    09:21
5    A  On the advice and direction of my counsel, I  09:21
6  respectfully decline to answer. And I assert the   09:21
7  rights guaranteed to me under the Fifth Amendment of  09:22
8  the Constitution of the United States.    09:22
9    Q  Throughout the first half of 2016, you used   09:22
10  the 14,000 confidential Google documents that you took  09:22
11  in order to accelerate your development of LiDar    09:22
12  systems at Otto; correct?    09:22
13    A  On the advice and direction of my counsel, I  09:22
14  respectfully decline to answer. And I assert the   09:22
15  rights guaranteed to me under the Fifth Amendment of  09:22
16  the Constitution of the United States.    09:22
17    Q  And, even while you were employed by Uber,   09:22
18  you used the 14,000 confidential Google documents that  09:22
19  you took in order to accelerate the development of    09:22
20  LiDar systems at Uber?    09:24
21    A  On the advice and direction of my counsel, I  09:22
22  respectfully decline to answer. And I assert the   09:22
23  rights guaranteed to me under the Fifth Amendment of  09:22
24  the Constitution of the United States.    09:22
25    THE WITNESS: Can you stop a minute? The sun  09:22

Page 20

1  has moved, and there's a glare. If we --   09:22
2    MR. PERLSON: Why don't we take a break.    09:22
3    THE VIDEOGRAPHER: Going off the record. The  09:23
4  time is 9:22 a.m.    09:23
5    (Recess taken.)    09:23
6    THE VIDEOGRAPHER: We are back on the record.  09:24
7  The time is 9:24 a.m.    09:24
8    MR. PERLSON: Q. Mr. Levandowski, the    09:24
9  14 confident- -- let me start over again.    09:25
10    Mr. Levandowski, the 14,000 confidential    09:25
11  documents that you took from Google allowed you to   09:25
12  develop LiDar systems at Otto more quickly than if   09:25
13  you'd started with a clean sheet design?    09:25
14    A  On the advice and direction of my counsel, I  09:25
15  respectfully decline to answer. And I assert the   09:25
16  rights guaranteed to me under the Fifth Amendment of  09:25
17  the Constitution of the United States.    09:25
18    Q  Mr. Levandowski, your use of the    09:25
19  14,000 confidential documents you took from Google    09:25
20  allowed you to sell Otto to Uber for over $680 million  09:25
21  in just a few months?    09:25
22    A  On the advice and direction of my counsel, I  09:25
23  respectfully decline to answer. And I assert the   09:25
24  rights guaranteed to me under the Fifth Amendment of  09:25
25  the Constitution of the United States.    09:25

Page 21

6 (Pages 18 - 21)

**Page 22**

1  Q  You disclosed the status of your development   09:25
2  of LiDar systems at Otto before the acquisition of   09:25
3  Otto by Uber?   09:25
4  A  On the advice and direction of my counsel, I   09:26
5  respectfully decline to answer.  And I assert the   09:26
6  rights guaranteed to me under the Fifth Amendment of   09:26
7  the Constitution of the United States.   09:26
8  Q  The advanced status of Otto's LiDar systems   09:26
9  substantially contributed to the value of Otto;   09:26
10  correct?   09:26
11  A  On the advice and direction of my counsel, I   09:26
12  respectfully decline to answer.  And I assert the   09:26
13  rights guaranteed to me under the Fifth Amendment of   09:26
14  the Constitution of the United States.   09:26
15  Q  You understand that Uber paid $680 million   09:26
16  for Otto because they knew that Otto had leveraged   09:26
17  Google's confidential information; correct?   09:26
18  MS. RAY:  Objection; calls for speculation.   09:26
19  MR. EHRLICH:  Go ahead and answer.   09:26
20  THE WITNESS:  Okay.   09:26
21  On the advice and direction of my counsel, I   09:26
22  respectfully decline to answer.  And I assert the   09:26
23  rights guaranteed to me under the Fifth Amendment of   09:26
24  the Constitution of the United States.   09:26
25  MR. PERLSON:  Q.  Uber told you that they   09:26

**Page 23**

1  paid $680 million for Otto because they knew that Otto   09:26
2  had leveraged Google's confidential information?   09:27
3  A  On the advice and direction of my counsel, I   09:27
4  respectfully decline to answer.  And I assert the   09:27
5  rights guaranteed to me under the Fifth Amendment of   09:27
6  the Constitution of the United States.   09:27
7  Q  You used confidential information you took   09:27
8  from Google to develop LiDar at Uber; correct?   09:27
9  A  On the advice and direction of my counsel, I   09:27
10  respectfully decline to answer.  And I assert the   09:27
11  rights guaranteed to me under the Fifth Amendment of   09:27
12  the Constitution of the United States.   09:27
13  Q  You used information from the 14,000 files   09:27
14  you took from Uber -- from -- let me start over again.   09:27
15  You used confidential information from the   09:27
16  14,000 files you took from Google to develop LiDar at   09:27
17  Uber; correct?   09:27
18  A  On the advice and direction of my counsel, I   09:27
19  respectfully decline to answer.  And I assert the   09:27
20  rights guaranteed to me under the Fifth Amendment of   09:27
21  the Constitution of the United States.   09:28
22  Q  You used information from the 14,000 files   09:28
23  you took from Google to develop the OWL device;   09:28
24  correct?   09:28
25  A  On the advice and direction of my counsel, I   09:28

**Page 24**

1  respectfully decline to answer.  And I assert the   09:28
2  rights guaranteed to me under the Fifth Amendment of   09:28
3  the Constitution of the United States.   09:28
4  Q  You used confidential information from the   09:28
5  14,000 files you took from Google to develop the Fuji   09:28
6  device at Uber; correct?   09:28
7  A  On the advice and direction of my counsel, I   09:28
8  respectfully decline to answer.  And I assert the   09:28
9  rights guaranteed to me under the Fifth Amendment of   09:28
10  the Constitution of the United States.   09:28
11  Q  You used confidential information from the   09:28
12  14,000 files you took from Google to develop the   09:28
13  Spider device; correct?   09:28
14  A  On the advice and direction of my counsel, I   09:28
15  respectfully decline to answer.  And I assert the   09:28
16  rights guaranteed to me under the Fifth Amendment of   09:28
17  the Constitution of the United States.   09:29
18  Q  Without the use of the 14,000 -- let me start   09:29
19  over again.   09:29
20  Without the use of information from the   09:29
21  14,000 files you took from Google, Otto would not have   09:29
22  been able to develop any of its LiDar devices;   09:29
23  correct?   09:29
24  A  On the advice and direction of my counsel, I   09:29
25  respectfully decline to answer.  And I assert the   09:29

**Page 25**

1  rights guaranteed to me under the Fifth Amendment of   09:29
2  the Constitution of the United States.   09:29
3  Q  Without the information from the 14,000 files   09:29
4  you took from Google, Uber would not have been able to   09:29
5  develop any of its LiDar devices; correct?   09:29
6  A  On the advice and direction of my counsel, I   09:30
7  respectfully decline to answer.  And I assert the   09:30
8  rights guaranteed to me under the Fifth Amendment of   09:30
9  the Constitution of the United States.   09:30
10  Q  Uber continues to use information from the   09:30
11  14,000 files you took from Goober -- from Google to   09:30
12  develop its LiDar systems even today?   09:30
13  A  On the advice and direction of my counsel, I   09:30
14  respectfully decline to answer.  And I assert the   09:30
15  rights guaranteed to me under the Fifth Amendment of   09:30
16  the Constitution of the United States.   09:30
17  Q  Information from the 14,000 files you took   09:30
18  from Google has made its way onto Uber's servers;   09:30
19  correct?   09:30
20  A  On the advice and direction of my counsel, I   09:30
21  respectfully decline to answer.  And I assert the   09:30
22  rights guaranteed to me under the Fifth Amendment --   09:30
23  Q  On what --   09:30
24  A  -- of the Constitution of the United States.   09:30
25  Q  On what servers at Uber does Google's   09:30

ATTORNEYS EYES ONLY

1 confidential information from the 14,000 files you    09:31
2 took from Google reside?    09:31
3     MS. RAY: Objection; calls for speculation.    09:31
4     MR. EHRLICH: Go ahead and answer.    09:31
5     THE WITNESS: On the advice and direction of    09:31
6 my counsel, I respectfully decline to answer. And I    09:31
7 assert the rights guaranteed to me under the Fifth    09:31
8 Amendment of the Constitution of the United States.    09:31
9     MR. PERLSON: Q. At least some portion of    09:31
10 the 14,000 files you took from Google remains on    09:31
11 Uber's servers; correct?    09:31
12     A  On the advice and direction of my counsel, I    09:31
13 respectfully decline to answer. And I assert the    09:31
14 rights guaranteed to me under the Fifth Amendment of    09:31
15 the Constitution of the United States.    09:31
16     Q  As head of its self-driving car program, you    09:31
17 agree that Google and Waymo's confidential information    09:32
18 is the source of all of -- let me start over again.    09:32
19     All of Uber's LiDar designs are a derivative    09:32
20 of Google's and Waymo's confidential information that    09:32
21 you took and used at Uber as head of its self-driving    09:32
22 car program; correct?    09:32
23     A  On the advice and direction of my counsel, I    09:32
24 respectfully decline to answer. And I assert the    09:32
25 rights guaranteed to me under the Fifth Amendment of    09:32

Page 26

1 the Constitution of the United States.    09:32
2     Q  Are you aware that defendants in this case    09:32
3 have served on plaintiff almost 1,000 pages of    09:32
4 privilege logs?    09:32
5     MS. RAY: Objection.    09:32
6     I instruct you not to answer to the extent    09:32
7 that calls for attorney-client privileged information.    09:32
8     MR. EHRLICH: And, to the extent it doesn't    09:33
9 call for privileged information, I instruct you to    09:33
10 assert your rights.    09:33
11     THE WITNESS: On the advice and direction of    09:33
12 my counsel, I respectfully decline to answer. And I    09:33
13 assert the rights guaranteed to me under the Fifth    09:33
14 Amendment of the Constitution of the United States.    09:33
15     MR. PERLSON: Q. Are you aware that the    09:33
16 basis for nearly every single assertion of privilege    09:33
17 in this document is based on communications made at    09:33
18 least in part by you?    09:33
19     MS. RAY: Objection.    09:33
20     I instruct you not to answer to the extent it    09:33
21 calls for attorney-client privileged information.    09:33
22     The only information he would know is from    09:33
23 attorneys.    09:33
24     I instruct you not to answer.    09:33
25     MR. EHRLICH: And I will instruct you to    09:33

Page 27

1 follow that instruction.    09:33
2     THE WITNESS: On the advice and direction of    09:33
3 my counsel --    09:33
4     MR. EHRLICH: Well, so you're not going to    09:33
5 answer.    09:33
6     THE WITNESS: I'm not going to answer? Okay.    09:33
7     MR. EHRLICH: You're not going to answer on    09:34
8 the instruction of counsel for Uber.    09:34
9     THE WITNESS: I will follow advice from    09:34
10 counsel.    09:34
11     MR. PERLSON: Understood.    09:34
12     I -- the premise that the only way that he    09:34
13 could know that information is from counsel is    09:34
14 demonstrably false. But, if you want to make that    09:34
15 instruction, you can go right ahead.    09:34
16     MS. RAY: Looking at the question, I don't    09:34
17 believe that's true.    09:34
18     MR. PERLSON: You can make your instruction    09:34
19 and live with the consequences of it.    09:34
20     Do you want me to go on?    09:34
21     Q  Are you aware that there are entries on the    09:34
22 privilege log that defendants have served in this case    09:34
23 as early as January 29th, 2016?    09:34
24     MS. RAY: Objection.    09:34
25     I instruct you not to answer on the basis of    09:34

Page 28

1 attorney-client privilege.    09:34
2     MR. EHRLICH: Let me just read this. Excuse    09:34
3 me.    09:35
4     And, to the extent it does not call for    09:35
5 privileged information, I'm going to instruct you to    09:35
6 assert your rights.    09:35
7     MR. PERLSON: Well, she instructed him not to    09:35
8 answer.    09:35
9     So, are you following that instruction?    09:35
10     MR. EHRLICH: I'm going to ask you to follow    09:35
11 that instruction.    09:35
12     THE WITNESS: Okay.    09:35
13     MR. EHRLICH: But to be safe and so the    09:35
14 record is clear, in case there is information that he    09:35
15 may know that is not from a privi -- privileged    09:35
16 source, I think it's best that he provide an answer    09:35
17 for the record.    09:35
18     MR. PERLSON: Okay. I mean, I understand why    09:35
19 you're saying that, but that's not how it works. You    09:35
20 either answer the question or you don't.    09:35
21     So, if you want to take a break to figure out    09:35
22 what the appropriate thing to do is, that's fine. But    09:35
23 we don't want to -- we're not going to waste time.    09:35
24     MS. RAY: Let's go off the record.    09:35
25     MR. EHRLICH: It's -- just for the record, so    09:35

Page 29

8 (Pages 26 - 29)

1 the only -- I respect that Uber is making a privileged 09:35
2 objection.                    09:35
3        I want to make sure that nothing         09:35
4 Mr. Levandowski does undermines the privilege that    09:36
5 Uber is asserting.                09:36
6        If -- to the extent it's a common interest    09:36
7 privilege, I would be advising Mr. Levandowski to    09:36
8 assert it as well.                09:36
9        But I just want -- I just want to be clear.    09:36
10 I'm not -- I think if there is an answer that's    09:36
11 required, I'm going to instruct him to assert his    09:36
12 rights.                    09:36
13        MR. PERLSON: Okay. I think -- once again, I    09:36
14 think the objection is improper.        09:36
15    Q  But, are you going to follow -- are you going    09:36
16 to follow Uber's instructions --        09:36
17    A  I'm going to follow --        09:36
18    Q  -- not to answer the question?        09:36
19    A  I'm going to follow Miles' instructions.    09:36
20        MR. EHRLICH: And I'm going to ask him to    09:36
21 follow that instruction.            09:36
22        MR. PERLSON: Okay.            09:36
23        THE WITNESS: So that means I follow --    09:36
24        MR. EHRLICH: So we can move on.        09:36
25        MR. PERLSON: Okay.            09:36

Page 30

1    Q  January 29, 2016, is within days of you    09:36
2 leaving Google; correct?            09:37
3    A  On the advice and direction of my counsel, I    09:37
4 respectfully decline to answer. And I assert the    09:37
5 rights guaranteed to me under the Fifth Amendment of    09:37
6 the Constitution of the United States.        09:37
7    Q  On January 29, 2016, were you receiving legal    09:37
8 advice regarding due diligence for an acquisition of    09:37
9 Ottomoto?                    09:37
10    A  On the advice and direction of my counsel, I    09:37
11 respectfully decline to answer. And I assert the    09:37
12 rights guaranteed to me under the Fifth Amendment of    09:37
13 the Constitution of the United States.        09:37
14    Q  Did Ottomoto exist on January 29, 2016?    09:37
15    A  On the advice and direction of my counsel, I    09:37
16 respectfully decline to answer. And I assert the    09:37
17 rights guaranteed to me under the Fifth Amendment of    09:37
18 the Constitution of the United States.        09:37
19    Q  When did you first start receiving legal    09:37
20 advice regarding an acquisition of the company that    09:37
21 would become Ottomoto?            09:37
22    A  On the advice and direction of my counsel, I    09:37
23 respectfully decline to answer. And I assert the    09:37
24 rights guaranteed to me under the Fifth Amendment of    09:37
25 the Constitution of the United States.        09:38

Page 31

1    Q  When did you first start discussing an    09:38
2 acquisition of what would become Ottomoto with Uber?  09:38
3    A  On the advice and direction of my counsel, I    09:38
4 respectfully decline to answer. And I assert the    09:38
5 rights guaranteed to me under the Fifth Amendment of    09:38
6 the Constitution of the United States.        09:38
7    Q  When did you first receive any -- let me    09:38
8 start over again.                09:38
9        When was your first attorney-client    09:38
10 communication with Eric Tate at Morrison & Foerster    09:38
11 regarding the acquisition of Ottomoto?        09:38
12    A  On the advice and direction of my counsel, I    09:38
13 respectfully decline to answer. And I assert the    09:38
14 rights guaranteed to me under the Fifth Amendment of    09:38
15 the Constitution of the United States.        09:39
16    Q  When did you first enter into a joint defense    09:39
17 agreement -- let me start over again.        09:39
18        When did you first enter into a common    09:39
19 interest agreement with Uber regarding a potential    09:39
20 acquisition of Otto?            09:39
21    A  On the advice and direction of my counsel, I    09:39
22 respectfully decline to answer. And I assert the    09:39
23 rights guaranteed to me under the Fifth Amendment of    09:39
24 the Constitution of the United States.        09:39
25    Q  What common interest do you have with Uber    09:39

Page 32

1 regarding a potential acquisition of Otto?    09:39
2        MS. RAY: I instruct you not to answer on the  09:39
3 basis of attorney-client privilege.        09:39
4        MR. PERLSON: Again, I don't think that's a    09:39
5 proper instruction.                09:39
6    Q  But, do you want to -- are you following    09:39
7 Uber's advice or instruction?            09:39
8        MR. EHRLICH: Let me look at the question.    09:39
9 I'm sorry.                    09:39
10        THE VIDEOGRAPHER: Just cover your mic.    09:40
11        (Soto-voce discussion.)            09:40
12        MR. EHRLICH: Okay. I'm going to accept that  09:40
13 instruction and -- and advise you to follow it and    09:40
14 decline to answer.                09:40
15        THE WITNESS: I'm going to follow the advice.  09:40
16        MR. PERLSON: Q. What common interest did    09:40
17 Otto have with Uber regarding an acquisition by    09:40
18 Otto -- let me start over again.        09:40
19        What -- what common interest did Otto have    09:40
20 with Uber regarding a potential acquisition of Otto?  09:40
21        MS. RAY: I instruct you not to answer on the  09:40
22 basis of attorney-client privilege and common interest 09:40
23 privilege.                    09:40
24        MR. EHRLICH: And same instruction from me to  09:40
25 follow that advice.                09:40

Page 33

9 (Pages 30 - 33)

ATTORNEYS EYES ONLY

1      THE WITNESS:  Okay.  I will follow that      09:40
2  advice.                                          09:40
3      MR. PERLSON:  Q.  Did you anticipate        09:41
4  litigation regarding a potential acquisition of Otto  09:41
5  in as early as January 29, 2016?                 09:41
6    A  On the advice and direction of my counsel, I  09:41
7  respectfully decline to answer.  And I assert the  09:41
8  rights guaranteed to me under the Fifth Amendment of  09:41
9  the Constitution of the United States.           09:41
10   Q  Did Otto anticipate litigation regarding a  09:41
11  potential acquisition of Otto as early as January 29,  09:41
12  2016?                                            09:42
13   A  On the advice and direction of my counsel, I  09:42
14  respectfully decline to answer.  And I assert the  09:42
15  rights guaranteed to me under the Fifth Amendment of  09:42
16  the Constitution of the United States.           09:42
17   Q  When did Otto first anticipate litigation  09:42
18  regarding a potential acquisition of Otto?       09:42
19   A  On the advice and direction of my counsel, I  09:42
20  respectfully decline to answer.  And I assert the  09:42
21  rights guaranteed to me under the Fifth Amendment of  09:42
22  the Constitution of the United States.           09:42
23   Q  When did Uber first anticipate litigation  09:42
24  regarding a potential acquisition of Otto?       09:42
25      MS. RAY:  Objection; calls for speculation.  09:42

Page 34

1      MR. EHRLICH:  You can answer.               09:42
2      THE WITNESS:  Okay.                         09:42
3      On the advice and direction of my counsel, I  09:42
4  respectfully decline to answer.  And I assert the  09:42
5  rights guaranteed to me under the Fifth Amendment of  09:42
6  the Constitution of the United States.           09:42
7      MR. PERLSON:  Q.  When did Uber first tell  09:42
8  you they anticipated litigation regarding a potential  09:42
9  acquisition of Otto?                             09:42
10   A  On the advice and direction of my counsel, I  09:42
11  respectfully decline to answer.  And I assert the  09:42
12  rights guaranteed to me under the Fifth Amendment of  09:42
13  the Constitution of the United States.           09:43
14   Q  Isn't it correct that the common interest  09:43
15  that Otto and Uber had, in anticipation of litigation  09:43
16  regarding the Otto acquisition was concealing the fact  09:43
17  that you had taken 14,000 confidential documents from  09:43
18  Google?                                          09:43
19   A  On the advice and --                        09:43
20      MS. RAY:  Objection; form.                  09:43
21      MR. EHRLICH:  You can go ahead and answer.  09:43
22      MS. RAY:  Hold on.                          09:43
23      I instruct you not to answer on the basis of  09:43
24  attorney-client privilege.                       09:43
25      MR. EHRLICH:  One second.                   09:43

Page 35

1      MR. PERLSON:  Do you want to go off the      09:40
2  record?
3      THE WITNESS:  Yeah, why don't we do that.
4      THE VIDEOGRAPHER:  Going off the record.  The
5  time is 9:44.
6      (Recess taken.)                             09:52
7      THE VIDEOGRAPHER:  We are back on the record.  09:52
8  The time is 9:53.                               09:53
9      MR. PERLSON:  Q.  Are you going to follow   09:53
10  your counsel's instruction?                     09:53
11      THE WITNESS:  Do we have any question?      09:53
12      MR. EHRLICH:  Let me -- let me go back.     09:53
13      MS. RAY:  I instructed him not to answer.   09:53
14      MR. EHRLICH:  Okay.  Ms. Ray instructed him  09:53
15  not to answer.                                   09:53
16      And I will now instruct you to follow that  09:53
17  instruction from Ms. Ray on the basis of         09:53
18  attorney-client privilege.                       09:53
19      THE WITNESS:  I'll follow that instruction.  09:53
20      MR. PERLSON:  Q.  Isn't it correct that the  09:53
21  common interest that Otto and Uber had in anticipation  09:54
22  of litigation regarding the Otto acquisition was       09:54
23  exploiting the confidential information you had       09:54
24  taken -- in the 14,000 documents you had taken from  09:54
25  Google?                                          09:54

Page 36

1      MS. RAY:  Objection; form.                  09:54
2      I instruct you not to answer on the basis of  09:54
3  attorney-client and common interest privilege.    09:54
4      MR. EHRLICH:  And the same instruction from  09:54
5  me to follow that instruction.                    09:54
6      THE WITNESS:  I will follow that instruction.  09:54
7      MR. PERLSON:  Q.  Your common interest with  09:54
8  Uber began while you were still employed at Google;  09:54
9  correct?                                          09:54
10      MS. RAY:  Objection; form.                  09:54
11      MR. EHRLICH:  And -- and by "form," Counsel,  09:54
12  do you mean attorney-client privilege?            09:54
13      MS. RAY:  No.  I mean that it's a legal      09:55
14  conclusion what common interest is.  I don't think he  09:55
15  knows what that is.  So, it's speculation.        09:55
16      MR. EHRLICH:  Okay.  So, you can answer.     09:55
17      THE WITNESS:  On -- on the advice and        09:55
18  direction of my counsel, I respectfully decline to  09:55
19  answer.  And I assert the rights guaranteed to me  09:55
20  under the Fifth Amendment of the Constitution of the  09:55
21  United States.                                   09:55
22      MR. PERLSON:  Q.  Otto's common interest with  09:55
23  Uber began while you were still employed at Google?  09:55
24      MS. RAY:  Objection; form.                  09:55
25      THE WITNESS:  On the advice and direction of  09:55

Page 37

10 (Pages 34 - 37)

ATTORNEYS EYES ONLY

1  my counsel, I respectfully decline to answer. And I    09:55
2  assert the rights guaranteed to me under the Fifth    09:55
3  Amendment of the Constitution of the United States.    09:55
4      MR. PERLSON: Q. Otto's common interest with    09:55
5  Uber was to prevent the detection of your scheme to    09:55
6  funnel Waymo's technology to Uber via Otto?    09:55
7      MS. RAY: Objection to form.    09:55
8      I instruct you not to answer on the basis of    09:55
9  attorney-client and common interest privilege.    09:55
10     MR. EHRLICH: And I'll advise you to follow    09:56
11 that instruction from Counsel.    09:56
12     MR. PERLSON: And whose -- who are the --    09:56
13 what common interest are you asserting then? Between    09:56
14 who is it with?    09:56
15     And who is the attorney and the client in    09:56
16 your instruction?    09:56
17     MS. RAY: Your question is about Otto's    09:56
18 interests with Uber. And so, at the time, I believe    09:56
19 Otto's attorneys were O'Melveny & Myers, and Uber's    09:56
20 counsel was Morrison & Foerster. And you're making an    09:56
21 assertion about the common interest, so we wouldn't    09:56
22 agree with that.    09:56
23     MR. PERLSON: Well, that's not a basis for an    09:56
24 attorney-client privilege instruction, so --    09:56
25     MS. RAY: You're asking him what the interest    09:56

Page 38

1  is. And one, he doesn't know because he doesn't --    09:56
2  he's not a lawyer. He doesn't --    09:56
3      MR. PERLSON: Hey, hey, enough of the    09:56
4  coaching.    09:56
5      MS. RAY: I'm not coaching.    09:56
6      MR. PERLSON: If you want to make an -- an --    09:56
7  I am -- I am asking a very specific question.    09:57
8      MS. RAY: You asked me a question --    09:57
9      MR. PERLSON: You instructed him not to    09:57
10 answer on the basis of attorney-client privilege. You    09:57
11 don't need to get into speculation or anything about    09:57
12 that.    09:57
13     Answer my question: What is the common    09:57
14 interest you're identifying? And who are the    09:57
15 attorneys? And who is the client?    09:57
16     MS. RAY: I'm not being deposed here. We can    09:57
17 discuss that at --    09:57
18     MR. PERLSON: Are you refusing to provide    09:57
19 this information now? This is a very serious issue,    09:57
20 and I need an answer.    09:57
21     MS. RAY: We can go -- if you want, we can go    09:57
22 off the record.    09:57
23     MR. PERLSON: No. I want you to put this on    09:57
24 the record.    09:57
25     MS. RAY: All right. Well, I need to take a    09:57

Page 39

1  look at your question.    09:57
2      MR. PERLSON: Take -- take the time you need.    09:57
3      MS. RAY: So, you have asked the witness a    09:57
4  question about the common interest; right? You're    09:57
5  saying --    09:57
6      MR. PERLSON: You -- you made the    09:57
7  instruction.    09:57
8      MS. RAY: I understand.    09:57
9      MR. PERLSON: You need to know what it is.    09:57
10     If you -- if we want to stop, get off the    09:57
11 record, so you can figure out why you made your    09:57
12 attorney-client privilege instruction, then you can do    09:57
13 that.    09:57
14     But, I would suspect that, when you made the    09:57
15 instruction, that you know --    09:57
16     MS. RAY: I do know.    09:57
17     MR. PERLSON: -- the answer to the question.    09:57
18 So answer me, please.    09:57
19     MS. RAY: I'm happy to answer you.    09:57
20     MR. PERLSON: Okay.    09:57
21     MS. RAY: You want to be taught.    09:57
22     MR. PERLSON: Go.    09:57
23     MS. RAY: You were asking him about what the    09:58
24 common interest is. The only way he would know that    09:58
25 is from an attorney discussion. And so, that is    09:58

Page 40

1  attorney-client privilege, and I'm not going to let    09:58
2  him answer the question.    09:58
3      MR. PERLSON: Who is the attorney? Who is    09:58
4  the client?    09:58
5      MS. RAY: I already identified that to you.    09:58
6      MR. PERLSON: When? In this question --    09:58
7      MS. RAY: Do you want me to ask the reporter    09:58
8  to read it back? I'm happy to repeat it.    09:58
9      Otto's attorneys were O'Melveny & Myers, and    09:58
10 Uber's counsel was Morrison & Foerster. Those are the    09:58
11 attorneys.    09:58
12     MR. PERLSON: Okay. And what's the common    09:58
13 interest, and who is it between?    09:58
14     MS. RAY: The common interest was between    09:58
15 Otto and Uber, at least as to your question, and it    09:58
16 was in anticipation of litigation.    09:58
17     Also, I just want to note that the record    09:58
18 says on here -- on here that I am coaching. But I    09:58
19 meant to say, if I didn't say it correctly, I am not    09:59
20 coaching.    09:59
21     MR. PERLSON: Q. Isn't it correct that the    09:59
22 common interest that Otto and Uber had in -- in    09:59
23 anticipation of litigation, regarding the Otto    09:59
24 acquisition, was exploiting the confidential    09:59
25 information you had taken in the 14,000 documents you    09:59

Page 41

11 (Pages 38 - 41)

1 had -- that's not the question. Let's start over   09:59
2 again.                                             09:59
3        Isn't it correct that, before you left     09:59
4 Google, there was a common interest between Otto and   09:59
5 Uber to prevent the detection of your scheme to funnel   09:59
6 Waymo's technology to Uber via Otto?              09:59
7        MS. RAY:  Objection; form.
8        MR. EHRLICH:  And -- and, Ms. Ray, is there   10:00
9 an objection based on attorney-client privilege or   10:00
10 joint -- or common interest privilege?            10:00
11        MS. RAY:  I instruct you not to answer on the   10:00
12 basis of attorney-client or common interest privilege.   10:00
13        MR. EHRLICH:  So -- so I would ask you to   10:00
14 follow that instruction and decline to answer.    10:00
15        MR. PERLSON:  And that's based on the same   10:00
16 common interest and the same attorneys that you had   10:00
17 noted in reference to the last question; correct?   10:00
18        MS. RAY:  Yes, sir.  I'm not agreeing to your   10:00
19 timing or characterization.                        10:00
20        MR. PERLSON:  I'm just asking you the basis   10:00
21 of the instruction.                                10:00
22        MS. RAY:  The basis of the instruction is   10:00
23 that the only way he knows about the common interest   10:00
24 is because of attorney-client privileged discussions.   10:00
25        MR. PERLSON:  I just want the record to be   10:01

Page 42

1 very clear that the attorney-clients -- the attorney   10:01
2 and the client and the common interest that you are   10:01
3 basing your instruction on, is the same one that you   10:01
4 had based your instruction on in the current -- in the   10:01
5 previous question.                                 10:01
6        MS. RAY:  Correct, without buying into your   10:01
7 presumption about the timing.                      10:01
8        THE REPORTER:  Excuse me, Counsel.  You're   10:01
9 not mic'ed, so if you can try to keep your hand away.   10:01
10        MR. PERLSON:  Oh, sure.  I'm sorry.        10:01
11        MR. PERLSON:  Q.  At the time Uber acquired   10:01
12 Otto, Uber had a due diligence report done in     10:01
13 connection with that acquisition; correct?        10:01
14        A   On the advice and direction of my counsel, I   10:02
15 respectfully decline to answer.  And I assert the   10:02
16 rights guaranteed to me under the Fifth Amendment of   10:02
17 the Constitution of the United States.            10:02
18        Q   The purpose of the due diligence report done   10:02
19 before the -- Uber's acquisition of Otto was to   10:02
20 determine the potential exposure for your theft of   10:02
21 confidential information from Google?             10:02
22        MR. EHRLICH:  Hold on.                      10:02
23        MS. RAY:  I instruct you not to answer on the   10:02
24 basis of attorney-client and common interest     10:02
25 privilege.                                         10:02

Page 43

1        MR. EHRLICH:  I advise you to follow that   10:02
2 instruction.                                       10:02
3        THE WITNESS:  I will follow that instruction.   10:02
4        MR. PERLSON:  Q.  As part of the due       10:02
5 diligence report that was done in connection with the   10:02
6 Otto acquisition, someone examined all of the computer   10:02
7 systems at Otto for Google con-- -- confidential   10:02
8 information; correct?                              10:02
9        MS. RAY:  I instruct you not to answer on the   10:02
10 basis of attorney-client and common interest     10:03
11 privilege.                                         10:03
12        MR. PERLSON:  Q.  As part of the due       10:03
13 diligence report, in connection with the Otto    10:03
14 acquisition, someone examined all the computer systems   10:03
15 at Otto for the 14,000 documents you had taken from   10:03
16 Google?                                            10:03
17        MS. RAY:  Same instruction.               10:03
18        MR. PERLSON:  Q.  Are you following that   10:03
19 instruction?                                       10:03
20        A  (Witness nods head.)                     10:03
21        Q  "Yes"?                                   10:03
22        A  Yes.  I'm sorry.  No gestures.          10:03
23        But you didn't let me answer the last one,   10:03
24 so --                                              10:03
25        MR. EHRLICH:  Go ahead.  You're following   10:03

Page 44

1 that instruction?                                  10:03
2        THE WITNESS:  I'm following that instruction.   10:03
3        MR. PERLSON:  Thank you.                    10:03
4        Q  As part of the due diligence report in   10:03
5 connection with the Otto acquisition, it was      10:03
6 determined that the 14,000 files that you had taken   10:03
7 from Google did exist on Otto's servers; correct?   10:04
8        MS. RAY:  Same -- same instruction.        10:04
9        MR. EHRLICH:  And same instruction from me.   10:04
10        THE WITNESS:  And I'm following.          10:04
11        MR. PERLSON:  Q.  As part of the due       10:04
12 diligence report in connection with the Otto     10:04
13 acquisition, it was determined that the 14,000 files   10:04
14 that had been taken by you from Google should be   10:04
15 deleted from Otto's servers; correct?             10:04
16        MS. RAY:  Same instruction.               10:04
17        MR. EHRLICH:  Same instruction, as well, from   10:04
18 me.                                                10:04
19        THE WITNESS:  I will follow.              10:04
20        MR. PERLSON:  Q.  If Uber had a third-party   10:04
21 report done in connection with the Otto acquisition,   10:05
22 and got a clean bill of health on Otto, why wouldn't   10:05
23 Uber share that with Waymo?                        10:05
24        MS. RAY:  Objection; form.                 10:05
25        Hold on.                                    10:05

Page 45

ATTORNEYS EYES ONLY

1  Go ahead.                                   10:05
2      MR. EHRLICH: I'm looking -- so, there is    10:05
3  an -- there is an objection on form. I'm not hearing  10:05
4  an objection based on attorney-client or joint defense  10:05
5  privilege.                                  10:05
6  So, you can answer.                         10:05
7      THE WITNESS: On the advice and direction of  10:05
8  my counsel, I respectfully decline to answer. And I  10:05
9  assert the rights guaranteed to me under the Fifth  10:05
10 Amendment of the Constitution of the United States.  10:05
11     MR. PERLSON: Q. If Uber had a third-party  10:05
12 report done in connection with the Otto acquisition  10:06
13 and got a clean bill of health on Otto, why wouldn't  10:06
14 Uber share that with the Court?                10:06
15     MS. RAY: Objection; form.               10:06
16     THE VIDEOGRAPHER: Excuse me. Can you use  10:06
17 this?                                       10:06
18     MS. RAY: Sure.                          10:06
19     THE VIDEOGRAPHER: Is it going to reach?   10:06
20     MS. RAY: You know what, can we just move   10:06
21 that?                                       10:06
22     MR. EHRLICH: I'm going to instruct you to  10:06
23 answer.                                     10:06
24     THE WITNESS: On the advice and direction of  10:06
25 my counsel, I respectfully decline to answer. And I  10:06

Page 46

1  assert the rights guaranteed to me under the Fifth  10:06
2  Amendment of the Constitution of the United States.  10:06
3      MR. PERLSON: Q. It would be in Uber's     10:06
4  interests to provide exculpatory evidence regarding  10:06
5  the 14,000 files you took from Google; correct?  10:06
6      MS. RAY: Objection; form.               10:07
7      MR. EHRLICH: You can answer.            10:07
8      THE WITNESS: On the advice and direction of  10:07
9  my counsel, I respectfully decline to answer. And I  10:07
10 assert the rights guaranteed to me under the Fifth  10:07
11 Amendment of the Constitution of the United States.  10:07
12     MR. PERLSON: Q. It would be in your      10:07
13 interests to provide exculpatory evidence regarding  10:07
14 the 14,000 files you took from Google; correct?  10:07
15     A  On the advice and direction of my counsel, I  10:07
16 respectfully decline to answer. And I assert the  10:07
17 rights guaranteed to me under the Fifth Amendment of  10:07
18 the Constitution of the United States.          10:07
19     THE VIDEOGRAPHER: Excuse me. I'd like to go  10:07
20 off the record for one moment.                 10:07
21     MR. PERLSON: Sure.                      10:07
22     THE VIDEOGRAPHER: Going off the record. The  10:07
23 time is 10:07.                              10:07
24     (Recess taken.)                         10:07
25     THE VIDEOGRAPHER: We are back on the record.  10:07

Page 47

1  The time is 10:07.                          10:07
2      MR. PERLSON: Q. There would be no reason  10:07
3  for you to withhold exculpatory evidence regarding the  10:08
4  14,000 files you took from Google; correct?     10:08
5      A  On the advice and direction of my counsel, I  10:08
6  respectfully decline to answer. And I assert the  10:08
7  rights guaranteed to me under the Fifth Amendment of  10:08
8  the Constitution of the United States.          10:08
9      Q  When did you first suspect that your conduct  10:08
10 at Google might become the subject of litigation?  10:08
11     A  On the advice and direction of my counsel, I  10:08
12 respectfully decline to answer. And I assert the  10:08
13 rights guaranteed to me under the Fifth Amendment of  10:08
14 the Constitution of the United States.          10:08
15     Q  Did you ever suspect that your operation  10:08
16 of -- let me start over again.                 10:09
17     Did you ever suspect that your discussions  10:09
18 with Uber between 2015 and 2016, while you were a  10:09
19 Google employee, would become the subject of    10:09
20 litigation?                                 10:09
21     MS. RAY: Objection; form.               10:09
22     MR. EHRLICH: Go ahead.                  10:09
23     THE WITNESS: On the advice and direction of  10:09
24 my counsel, I respectfully decline to answer. And I  10:09
25 assert the rights guaranteed to me under the Fifth  10:09

Page 48

1  Amendment of the Constitution of the United States.  10:09
2      MR. PERLSON: Q. Did you ever suspect that  10:09
3  your formation of -- of a company, that eventually  10:09
4  became Otto in late 2015, while you were still a  10:09
5  Google employee, would become the subject of    10:09
6  litigation?                                 10:09
7      A  On the advice and direction of my counsel, I  10:09
8  respectfully decline to answer. And I assert the  10:09
9  rights guaranteed to me under the Fifth Amendment of  10:09
10 the Constitution of the United States.          10:09
11     Q  Have you ever destroyed any documents related  10:10
12 to this litigation?                         10:10
13     A  On the advice and direction of my counsel, I  10:10
14 respectfully decline to answer. And I assert the  10:10
15 rights guaranteed to me under the Fifth Amendment of  10:10
16 the Constitution of the United States.          10:10
17     Q  Have you ever deleted any documents related  10:10
18 to this litigation?                         10:10
19     A  On the advice and direction of my counsel, I  10:10
20 respectfully decline to answer. And I assert the  10:10
21 rights guaranteed to me under the Fifth Amendment of  10:10
22 the Constitution of the United States.          10:10
23     Q  Has Otto deleted any documents related to  10:10
24 this litigation?                           10:10
25     A  On the advice and direction of my counsel, I  10:10

Page 49

13 (Pages 46 - 49)

Page 50

1  respectfully decline to answer.  And I assert the      10:10
2  rights guaranteed to me under the Fifth Amendment of   10:10
3  the Constitution of the United States.                 10:10
4      Q  Have you deleted any documents reflecting       10:10
5  your relationship to Odin Wave or Tyto Lidar at any    10:10
6  time in which you had anticipated litigation?          10:10
7      A  On the advice and direction of my counsel, I    10:10
8  respectfully decline to answer.  And I assert the      10:10
9  rights guaranteed to me under the Fifth Amendment of   10:10
10  the Constitution of the United States.                10:11
11     Q  Have you ever destroyed or permanently          10:11
12  deleted any documents relating to this litigation when 10:11
13  litiga- -- during the time in which litigation was     10:11
14  anticipated, regarding the Otto acquisition?          10:11
15     A  On the advice and direction of my counsel, I    10:11
16  respectfully decline to answer.  And I assert the      10:11
17  rights guaranteed to me under the Fifth Amendment of   10:11
18  the Constitution of the United States.                10:11
19     Q  Have you deleted any communications with        10:11
20  former Google employees instructing them to take      10:11
21  confidential information from Google?                  10:11
22     A  On the advice and direction of my counsel, I    10:11
23  respectfully decline to answer.  And I assert the      10:11
24  rights guaranteed to me under the Fifth Amendment of   10:11
25  the Constitution of the United States.                10:12

Page 51

1      Q  While you were at Google, you were issued a     10:12
2  laptop computer that ran the Windows operating system; 10:12
3  correct?                                               10:12
4      A  On the advice and direction of my counsel, I    10:12
5  respectfully decline to answer.  And I assert the      10:12
6  rights guaranteed to me under the Fifth Amendment of   10:12
7  the Constitution of the United States.                10:12
8      Q  Before you left Google, you downloaded          10:12
9  documents onto that laptop computer for use when you   10:12
10  left Google; correct?                                 10:12
11     A  On the advice and direction of my counsel, I    10:12
12  respectfully decline to answer.  And I assert the      10:12
13  rights guaranteed to me under the Fifth Amendment of   10:12
14  the Constitution of the United States.                10:12
15     Q  Before you left Google, you downloaded          10:12
16  documents onto that laptop for use at Otto; correct?   10:12
17     A  On the advice and direction of my counsel, I    10:12
18  respectfully decline to answer.  And I assert the      10:13
19  rights guaranteed to me under the Fifth Amendment of   10:13
20  the Constitution of the United States.                10:13
21     Q  Before you left Google, you downloaded          10:13
22  documents onto that laptop for use at Uber; correct?   10:13
23     A  On the advice of my counsel, I respectly        10:13
24  decline to answer.  And I assert the rights guaranteed 10:13
25  to me under the Fifth Amendment of the Constitution of 10:13

Page 52

1  the United States.                                     10:13
2      Q  To this day, Uber continues to use             10:13
3  confidential information downloaded onto that laptop    10:13
4  computer; correct?                                     10:13
5      A  On the advice and direction of my counsel, I    10:13
6  respectfully decline to answer.  And I assert the      10:13
7  rights guaranteed to me under the Fifth Amendment of   10:13
8  the Constitution of the United States.                10:13
9      Q  Is there any wall at Uber from your work on    10:13
10  LiDar technology?                                     10:14
11     A  What's a wall?                                  10:14
12     Q  Is -- are --                                    10:14
13        MR. EHRLICH:  Do you want to clarify?          10:14
14        MR. PERLSON:  Yeah, sure.                      10:14
15     Q  The -- is -- is there any policy at Uber that   10:14
16  you are not allowed to work on LiDar technology?      10:14
17     A  On the advice and direction of my counsel, I    10:14
18  respectfully decline to answer.  And I assert the      10:14
19  rights guaranteed to me under the Fifth Amendment of   10:14
20  the Constitution of the United States.                10:14
21     Q  Isn't it true that, since you have been        10:14
22  working at Uber, you have done work regarding LiDar   10:14
23  technology?                                           10:14
24     A  On the advice and direction of my counsel, I    10:14
25  respectfully decline to answer.  And I assert the      10:14

Page 53

1  rights guaranteed to me under the Fifth Amendment of   10:14
2  the Constitution of the United States.                10:14
3      Q  Isn't it true that, during your work at Uber,   10:14
4  you have contributed to the design and development of   10:15
5  LiDar technology?                                      10:15
6      A  On the advice and direction of my -- excuse    10:15
7  me.                                                    10:15
8        On the advice and direction of counsel -- of    10:15
9  my counsel, I respectfully decline to answer.  And I   10:15
10  assert the rights guaranteed to me under the Fifth    10:15
11  Amendment of the Constitution of the United States     10:15
12     Q  Isn't it true that, during your work at Uber,   10:15
13  you have contributed to the design and development of   10:15
14  LiDar technology using confidential information in the  10:15
15  14,000 documents that you took from Google before you  10:15
16  left Google?                                          10:15
17     A  On the advice and direction of my counsel, I    10:15
18  respectfully decline to answer.  And I assert the      10:15
19  rights guaranteed to me under the Fifth Amendment of   10:15
20  the Constitution of the United States.                10:15
21     Q  Isn't it true that, even today, you continue    10:15
22  to use the confidential information in                10:15
23  14,000 documents you took from Google in your         10:15
24  contributions to the design and development of LiDar   10:16
25  technology at Uber?                                   10:16

14 (Pages 50 - 53)

| | |
|---|---|
| 1     A  On the advice and direction of my counsel, I    10:16 | 1  2015?                                              10:18 |
| 2  respectfully decline to answer.  And I assert the    10:16 | 2     A  On the advice and direction of my counsel, I    10:18 |
| 3  rights guaranteed to me under the Fifth Amendment of    10:16 | 3  respectfully decline to answer.  And I assert the    10:18 |
| 4  the Constitution of the United States.    10:16 | 4  rights guaranteed to me under the Fifth Amendment of    10:18 |
| 5     Q  Between March 2nd, 2015, and March 25th,    10:16 | 5  the Constitution of the United States.    10:19 |
| 6  2015, your Google-issued laptop did not perform    10:16 | 6     Q  You caused your Google-issued laptop to    10:19 |
| 7  regular check-ins to Google's network; correct?    10:16 | 7  access the corporate -- the Google corporate network    10:19 |
| 8     MS. RAY:  Objection; form.    10:16 | 8  for unauthorized purposes on November 25th, 2015 --    10:19 |
| 9     MR. EHRLICH:  Let me read the question.    10:16 | 9     A  Is that a question?    10:19 |
| 10    You can answer.    10:16 | 10    Q  -- correct?    10:19 |
| 11    THE WITNESS:  On the advice and direction of    10:16 | 11    A  Okay.    10:19 |
| 12  my counsel, I respectfully decline to answer.  And I    10:16 | 12       On the advice and direction of my counsel, I    10:19 |
| 13  assert the rights guaranteed to me under the Fifth    10:16 | 13  respectfully decline to answer.  And I assert the    10:19 |
| 14  Amendment of the Constitution of the United States.    10:16 | 14  rights guaranteed to me under the Fifth Amendment of    10:19 |
| 15    MR. PERLSON:  Q.  Between March 2nd and    10:16 | 15  the Constitution of the United States.    10:19 |
| 16  2 -- 2 -- between March 2nd, 2015, and November 25th,    10:17 | 16    Q  On -- on November 26th, 2015, you then    10:19 |
| 17  2015, the network interfaces of your Google-issued    10:17 | 17  reinstalled the Windows operating system on your    10:19 |
| 18  laptop made only three appearances on Google's    10:17 | 18  Google-issued laptop; correct?    10:19 |
| 19  corporate logs?    10:17 | 19    A  On the advice and direction of my counsel, I    10:19 |
| 20    MS. RAY:  Objection; form.    10:17 | 20  respectfully decline to answer.  And I assert the    10:19 |
| 21    THE WITNESS:  Is there a question?    10:17 | 21  rights guaranteed to me under the Fifth Amendment of    10:19 |
| 22    MR. EHRLICH:  Did -- did you hear the    10:17 | 22  the Constitution of the United States.    10:19 |
| 23  question?    10:17 | 23    Q  You reinstalled the Windows operating system    10:19 |
| 24    MR. PERLSON:  I'll -- let me just ask it    10:17 | 24  on November 26, 2015, in an effort to conceal the fact    10:20 |
| 25  again.    10:17 | 25  that you had been accessing Google's corporate    10:20 |
| Page 54 | Page 56 |

| | |
|---|---|
| 1     MR. EHRLICH:  Okay.    10:17 | 1  network; correct?    10:20 |
| 2     MR. PERLSON:  Q.  Do you have any reason to    10:17 | 2     A  On the advice and direction of my counsel, I    10:20 |
| 3  dispute that, between March 15th -- let me start over    10:17 | 3  respectfully decline to answer.  And I assert the    10:20 |
| 4  again.    10:17 | 4  rights guaranteed to me under the Fifth Amendment of    10:20 |
| 5     Between -- scratch that.    10:17 | 5  the Constitution of the United States.    10:20 |
| 6     Do you have any reason to -- to dispute that    10:17 | 6     Q  On December 3rd, 2015, you ran keyword    10:20 |
| 7  between March 2nd, 2015, and November 25th, 2015, that    10:17 | 7  searches across the Google network from your    10:20 |
| 8  the network interfaces of your Google-issued laptop    10:17 | 8  Google-issued laptop; correct?    10:20 |
| 9  made only three appearances on Goo-- Google's    10:17 | 9     A  On the advice and direction of my counsel, I    10:20 |
| 10  corporate network log?    10:18 | 10  respectfully decline to answer.  And I assert the    10:20 |
| 11    A  On the advice and direction of my counsel, I    10:18 | 11  rights guaranteed to me under the Fifth Amendment of    10:20 |
| 12  respectfully decline to answer.  And I assert the    10:18 | 12  the Constitution of the United States.    10:20 |
| 13  rights guaranteed to me under the Fifth Amendment of    10:18 | 13    Q  On December 3rd, 2015, you ran a search for    10:20 |
| 14  the Constitution of the United States.    10:18 | 14  the strings CHAUFFEUR SVN LOGIN; correct?    10:20 |
| 15    Q  You caused your Google-issued laptop to    10:18 | 15    A  On the advice and direction of my counsel, I    10:20 |
| 16  access Goo-- -- the Google corporate network for    10:18 | 16  respectfully decline to answer.  And I assert the    10:20 |
| 17  unauthorized purposes for approximately two hours on    10:18 | 17  rights guaranteed to me under the Fifth Amendment of    10:20 |
| 18  October 22nd, 2015?    10:18 | 18  the Constitution of the United States.    10:20 |
| 19    A  On the direction of my counsel, I    10:18 | 19    Q  On December 3rd, 2015, you ran a search for    10:20 |
| 20  respectfully decline to answer.  And I assert the    10:18 | 20  the string CHAUFFEUR SVN EEE SETUP; correct?    10:21 |
| 21  rights guaranteed to me under the Fifth Amendment of    10:18 | 21    MR. EHRLICH:  EEE SETUP?    10:21 |
| 22  the Constitution of the United States.    10:18 | 22    MR. PERLSON:  Yeah.    10:21 |
| 23    Q  You caused your Google-issued laptop to    10:18 | 23    THE WITNESS:  On the advice and direction of    10:21 |
| 24  access the Google corporate network for unauthorized    10:18 | 24  my counsel, I respectfully decline to answer.  And I    10:21 |
| 25  purposes for approximately two hours on November 20th,    10:18 | 25  assert --    10:21 |
| Page 55 | Page 57 |

15 (Pages 54 - 57)

1    MR. PERLSON:  On December --         10:21
2    THE WITNESS:  -- the rights guaranteed to --   10:21
3    MR. EHRLICH:  Go ahead and finish.        10:21
4    THE WITNESS:  Yeah.              10:21
5    And I assert the rights guaranteed to me        10:21
6  under the Fifth Amendment of the Constitution of the   10:21
7  United States.                   10:21
8    THE VIDEOGRAPHER:  I need to take a break.      10:21
9    MR. PERLSON:  Okay.  You need to take a        10:21
10 break?                     10:21
11   THE VIDEOGRAPHER:  Going off the record.  The   10:21
12 time is 10:21.                   10:21
13   (Recess taken.)               10:21
14   THE VIDEOGRAPHER:  This marks the beginning     10:25
15 of DVD No. 2 in the deposition of Anthony Levandowski.   10:34
16   We are going back on the record.  The time is   10:34
17 10:34.                     10:34
18   MR. PERLSON: Q.  The searches that you ran   10:34
19 on December 3rd, 2015, were run to locate files     10:35
20 relating to Google's self-driving car project at that   10:35
21 time; correct?                   10:35
22   A  On the advice and direction of my counsel, I   10:35
23 respectfully decline to answer.  And I assert the     10:35
24 rights guaranteed to me under the Fifth Amendment of   10:35
25 the Constitution of the United States.          10:35

Page 58

1    Q  On December 11, 2015, you downloaded software  10:36
2  to your Google-issued laptop that would allow you to   10:36
3  access files on the SVN repository; correct?       10:36
4    A  On the advice and direction of my counsel, I   10:36
5  respectfully decline to answer.  And I assert the     10:36
6  rights guaranteed to me under the Fifth Amendment of   10:36
7  the Constitution of the United States.          10:36
8    Q  On December 11, 2015, you downloaded software  10:36
9  called Tortoise SVN; correct?             10:36
10   A  On the advice and direction of my counsel, I   10:37
11 respectfully decline to answer.  And I assert the     10:37
12 rights guaranteed to me under the Fifth Amendment of   10:37
13 the Constitution of the United States.          10:37
14   Q  On December 11, 2015, after you downloaded    10:37
15 Tortoise SVN, you then downloaded approximately      10:37
16 14,000 files from the SVN repository; correct?      10:37
17   A  On the advice and direction of my counsel, I   10:37
18 respectfully decline to answer.  And I assert the     10:37
19 rights guaranteed to me under the Fifth Amendment of   10:37
20 the Constitution of the United States.          10:37
21   Q  The files you downloaded from the SVN       10:37
22 repository on December 11, 2015, totaled 9.7 gigabytes  10:37
23 of data; correct?                 10:37
24   A  On the advice and direction of my counsel, I   10:37
25 respectfully decline to answer.  And I assert the     10:37

Page 60

1    Q  SVN is the name of the document repository    10:35
2  containing Waymo's design files, schematics, and other  10:35
3  confidential information relating to the self-driving   10:35
4  car project; correct?               10:35
5    A  On the advice and direction of my counsel, I   10:35
6  respectfully decline to answer.  And I assert the     10:35
7  rights guaranteed to me under the Fifth Amendment     10:35
8  rights -- under the Fifth Amendment of the       10:35
9  Constitution of the United States.          10:35
10   Q  The searches you ran across the Google     10:35
11 network on December 3rd, 2013, were not related to any  10:35
12 legitimate duties you were performing for Google at   10:36
13 that time?                    10:36
14   A  On the advice and direction of my counsel, I   10:36
15 respectfully disagree -- I respectfully decline to    10:36
16 answer.  And I assert the rights guaranteed to me     10:36
17 under the Fifth Amendment of the Constitution of the   10:36
18 United States.                   10:36
19   Q  The searches you ran across the Google     10:36
20 network on December 3rd, 2015, were made without     10:36
21 authorization from Google; correct?          10:36
22   A  On the advice and direction of my counsel, I   10:36
23 respectfully decline to answer.  And I assert the     10:36
24 rights guaranteed to me under the Fifth Amendment of   10:36
25 the Constitution of the United States.          10:36

Page 59

1  rights guaranteed to me under the Fifth Amendment of   10:37
2  the Constitution of the United States.          10:37
3    Q  The files downloaded from the SVN repository   10:37
4  on December 11, 2015, included approximately       10:37
5  2 gigabytes of data from LiDar subdirectories;     10:37
6  correct?                     10:38
7    A  On the advice and direction of my counsel, I   10:39
8  respectfully decline to answer.  And I assert the     10:39
9  rights guaranteed to me under the Fifth Amendment of   10:39
10 the Constitution of the United States.          10:39
11   Q  The approximately 14,000 files you downloaded  10:38
12 from Google's SVN repository on December 11, 2015, was  10:38
13 not related to any legitimate work by you in your role  10:38
14 as a Google Waymo employee; correct?          10:38
15   A  On the advice and direction of my counsel, I   10:38
16 respectfully decline to answer.  And I assert the     10:38
17 rights guaranteed to me under the Fifth Amendment of   10:38
18 the Constitution of the United States.          10:38
19   Q  You downloaded approximately 14,000 files    10:38
20 from Google's SVN repository without authorization    10:38
21 from Google; correct?               10:38
22   A  On the advice and direction of my counsel, I   10:38
23 respectfully decline to answer.  And I assert the     10:38
24 rights guaranteed to me under the Fifth Amendment of   10:38
25 the Constitution of the United States.          10:38

Page 61

16 (Pages 58 - 61)

| | |
|---|---|
| 1    Q   On December 11th, 2015, you downloaded         10:38 | 1    A   On the advice and direction of my counsel, I   10:41 |
| 2  approximately 14,000 files from Google's SVN          10:38 | 2  respectfully decline to answer.  And I assert the    10:41 |
| 3  repository so that you could use them for the new     10:38 | 3  rights guaranteed to me under the Fifth Amendment of  10:41 |
| 4  company you were founding; correct?                   10:39 | 4  the Constitution of the United States.               10:41 |
| 5    A   On the advice and direction of my counsel, I    10:39 | 5    Q   On December 14, 2015, you copied               10:41 |
| 6  respectfully decline to answer.  And I assert the     10:39 | 6  approximately 14,000 confidential Google files to an  10:41 |
| 7  rights guaranteed to me under the Fifth Amendment of  10:39 | 7  external storage device so that you could use them to 10:41 |
| 8  the Constitution of the United States.               10:39 | 8  compete with Google; correct?                         10:41 |
| 9    Q   You downloaded approximately 14,000 files on    10:39 | 9    A   On the advice and direction of my counsel, I    10:41 |
| 10  December 11, 2015, from Google's SVN repository so   10:39 | 10  respectfully decline to answer.  And I assert the    10:41 |
| 11  that you could use them to compete with Google;      10:39 | 11  rights guaranteed to me under the Fifth Amendment of 10:41 |
| 12  correct?                                              10:39 | 12  the Constitution of the United States.               10:41 |
| 13    A   On the advice and direction of my counsel, I   10:39 | 13    Q   On December 18, 2015, you reformatted the      10:41 |
| 14  respectfully decline to answer.  And I assert the    10:39 | 14  Windows operating system on your Google-issued laptop 10:41 |
| 15  rights guaranteed to me under the Fifth Amendment of 10:39 | 15  to a Linux operating system; correct?               10:41 |
| 16  the Constitution of the United States.               10:39 | 16    A   On the advice and direction of my counsel, I   10:41 |
| 17    Q   On December 14, 2015, you attached to your     10:39 | 17  respectfully decline to answer.  And I assert the    10:41 |
| 18  Google-issued laptop a Transcend RDF 45 USB 3.0 Card 10:39 | 18  rights guaranteed to me under the Fifth Amendment of 10:41 |
| 19  Reader; correct?                                      10:39 | 19  the Uni- -- of the Constitution of the United States. 10:41 |
| 20    A   On the advice and direction of my counsel, I   10:40 | 20    Q   On December 18, 2015, you reformatted the      10:41 |
| 21  respectfully decline to answer.  And I assert the    10:40 | 21  operating system on your Google-issued laptop because 10:42 |
| 22  rights guaranteed to me under the Fifth Amendment of 10:40 | 22  you thought this would conceal the fact that you had  10:42 |
| 23  the Constitution of the United States.               10:40 | 23  downloaded and copied 14,000 confidential Google files 10:42 |
| 24    Q   On December 14, 2015, you attached an          10:40 | 24  from the SVN server; correct?                        10:42 |
| 25  external storage device to your Google-issued laptop 10:40 | 25    A   On the advice and direction of my counsel, I   10:42 |
| Page 62 | Page 64 |

| | |
|---|---|
| 1  for approximately eight hours; correct?              10:40 | 1  respectfully decline to answer.  And I assert the    10:42 |
| 2    A   On the advice and direction of my counsel, I    10:40 | 2  rights guaranteed to me under the Fifth Amendment of  10:42 |
| 3  respectfully decline to answer.  And I assert the     10:40 | 3  the Constitution of the United States.               10:42 |
| 4  rights guaranteed to me under the Fifth Amendment of  10:40 | 4    Q   You had access to Google's internal drive       10:42 |
| 5  the Constitution of the United States.               10:40 | 5  database while you were a Google employee; correct?   10:42 |
| 6    Q   On December 14, 2015, you copied                10:40 | 6    A   On the advice and direction of my counsel, I    10:42 |
| 7  approximately 14,000 confidential Google files which  10:40 | 7  respectfully decline to answer.  And I assert my      10:42 |
| 8  you had previously downloaded from the SVN server to  10:40 | 8  rights guaranteed to me under the Fifth Amendment of  10:42 |
| 9  an external storage device; correct?                 10:40 | 9  the Constitution of the United States.               10:42 |
| 10    A   On the advice and direction of my counsel, I   10:40 | 10    Q   On January 3rd, 2016, you exported five --     10:42 |
| 11  respectfully decline to answer.  And I assert the    10:40 | 11  five files from Google Drive's database to a personal 10:42 |
| 12  rights guaranteed to me under the Fifth Amendment of 10:40 | 12  device; correct?                                      10:42 |
| 13  the Constitution of the United States.               10:40 | 13    A   On the advice and direction of my counsel, I   10:42 |
| 14    Q   On December 14th, 2015, you copied             10:40 | 14  respectfully decline to answer.  And I assert the    10:42 |
| 15  approximately 14,000 confidential Google files to an 10:40 | 15  rights guaranteed to me under the Fifth Amendment of 10:42 |
| 16  external storage device without authorization from   10:40 | 16  the Constitution of the United States.               10:42 |
| 17  Google; correct?                                      10:40 | 17    Q   On January 3rd, 2016, you exported a file      10:42 |
| 18    A   On the advice and direction of my counsel, I   10:40 | 18  called "PBR Intensity Calibration" from Google's     10:42 |
| 19  respectfully decline to answer.  And I assert the    10:40 | 19  internal drive database; correct?                    10:43 |
| 20  rights guaranteed to me under the Fifth Amendment of 10:40 | 20    A   On the advice and direction of my counsel, I   10:43 |
| 21  the Constitution of the United States.               10:40 | 21  respectfully decline to answer.  And I assert the    10:43 |
| 22    Q   On December 14th, 2015, you copied 14 --       10:40 | 22  rights guaranteed to me under the Fifth Amendment of 10:43 |
| 23  approximately 14,000 confidential Google files to an 10:41 | 23  the Constitution of the United States.               10:43 |
| 24  external storage device so you could use them for the 10:41 | 24    Q   On January 3rd, 2016, you exported a file      10:43 |
| 25  new company you were founding; correct?              10:41 | 25  called "PBR Extrinsic Calibration" from Google's     10:43 |
| Page 63 | Page 65 |

17 (Pages 62 - 65)

ATTORNEYS EYES ONLY

```
 1  internal drive database; correct?              10:43
 2      A  On the advice and direction of my counsel, I   10:43
 3  respectfully decline to answer.  And I assert the   10:43
 4  rights guaranteed to me under the Fifth Amendment of  10:43
 5  the Constitution of the United States.         10:43
 6      Q  On January 3rd, 2016, you also exported files  10:43
 7  called "TX and RX Tuning Instructions," "GBR Assembly  10:43
 8  Flowchart SOP," and "TBR Testing Station" from   10:43
 9  Google's internal drive database; correct?     10:43
10      A  On the advice and direction of my counsel, I   10:43
11  respectfully decline to answer.  And I assert the   10:43
12  rights guaranteed to me under the Fifth Amendment of  10:43
13  the Constitution of the United States.         10:44
14      Q  The five files you exported from Google's   10:44
15  internal drive database on January 3rd, 2016, were   10:44
16  exported so that you could use them to support the new  10:44
17  company you were founding?                      10:44
18      A  On the advice and direction of my counsel, I   10:44
19  respectfully decline to answer.  And I assert the   10:44
20  rights guaranteed to me under the Fifth Amendment of  10:44
21  the Constitution of the United States.         10:44
22      Q  The five files that you exported from   10:44
23  Google's internal drive database on January 3rd, 2016,  10:44
24  were exported so that you could use them to compete   10:44
25  with Google; correct?                           10:44
                                              Page 66
```

```
 1      A  On the advice and direction of my counsel, I   10:44
 2  respectfully decline to answer.  And I assert the   10:44
 3  rights guaranteed to me under the Fifth Amendment of  10:44
 4  the Constitution of the United States.         10:44
 5      Q  The 14,000 files that you exported to an   10:44
 6  external device on December 14th, 2015, were exported  10:45
 7  so that you could use them to compete with Google by   10:45
 8  using Google's confidential information; correct?   10:45
 9      A  On the advice and direction of my counsel, I   10:45
10  respectfully decline to answer.  And I assert the   10:45
11  rights guaranteed to me under the Fifth Amendment of  10:45
12  the Constitution of the United States.         10:45
13      Q  The five files you exported on January 3rd,   10:45
14  2016, were exported so that you could compete with   10:46
15  Google by using Google's confidential information?   10:46
16      A  On the advice and direction of my counsel, I   10:46
17  respectfully decline to answer.  And I assert the   10:46
18  rights guaranteed to me under the Fifth Amendment of  10:46
19  the Constitution of the United States.         10:46
20      Q  On January 11th, 2016, you exported a file   10:46
21  called "Chauffeur TL Weekly Updates Q4 2015" from   10:46
22  Google's internal drive database?              10:46
23      A  On the direction of my counsel, I          10:46
24  respectfully decline to answer.  And I assert the   10:46
25  rights guaranteed to me under the Fifth Amendment of  10:46
                                              Page 67
```

```
 1  the Constitution of the United States.         10:46
 2      Q  On January 11, 2016, you exported a file from  10:46
 3  Google's internal drive database so that you could use  10:46
 4  it to support the new company you were founding --   10:46
 5  founding; correct?                             10:46
 6      A  On the advice and direction of my counsel, I   10:46
 7  respectfully decline to answer.  And I assert the   10:46
 8  rights guaranteed to me under the Fifth Amendment of  10:46
 9  the Constitution of the United States.         10:47
10      Q  On January 11, 2016, you exported a file from  10:47
11  Google's internal drive database so that you could use  10:47
12  it at your new company to compete with Google?   10:47
13      A  On the advice of and -- and direction of my   10:47
14  counsel, I respectfully decline to answer.  And I   10:47
15  assert the rights guaranteed to me under the Fifth   10:47
16  Amendment of the Constitution of the United States.  10:47
17      Q  You directed Google employees that you asked  10:47
18  to join us at your new company to export documents   10:47
19  from Google computers, before departing Google, to   10:47
20  bring with you to Waymo -- to Otto?            10:47
21      A  On the advice and direction of my counsel, I   10:48
22  respectfully decline to answer.  And I assert the   10:48
23  rights guaranteed to me under the Fifth Amendment of  10:48
24  the Constitution of the United States.         10:48
25      Q  Let me just ask that again, because I asked  10:48
                                              Page 68
```

```
 1  it wrong.                                      10:48
 2      You directed Google employees, that you asked  10:48
 3  to join us at your new company, to export documents   10:48
 4  from Google computers, before departing Google, to   10:48
 5  bring them with you to Otto?                    10:48
 6      A  On the advice and direction of my counsel, I   10:48
 7  respectfully decline to answer.  And I assert the   10:48
 8  rights guaranteed to me under the Fifth Amendment of  10:48
 9  the Constitution of the United States.         10:48
10      Q  You asked that former Google employees bring  10:48
11  Google confidential information with them when they   10:48
12  joined your new company?                        10:48
13      A  On the advice and direction of my counsel, I   10:48
14  respectfully decline to answer.  And I assert the   10:48
15  rights guaranteed to me under the Fifth Amendment of  10:48
16  the Constitution of the United States.         10:49
17      Q  Sameer Kshirsagar was a former Google   10:49
18  employee who you asked to take confidential   10:49
19  information from Google to Otto; correct?       10:49
20      A  On the advice and direction of my counsel, I   10:49
21  respectfully decline to answer.  And I assert the   10:49
22  rights guaranteed to me under the Fifth Amendment of  10:49
23  the Constitution of the United States.         10:49
24      Q  You encouraged Sameer to bring confidential  10:49
25  information with him when you recruited him to join   10:49
                                              Page 69
```

18 (Pages 66 - 69)

ATTORNEYS EYES ONLY

1 Otto; correct?                                    10:49
2    A   On the advice and direction of my counsel, I   10:49
3 respectfully decline to answer.  And I assert the   10:49
4 rights guaranteed to me under the Fifth Amendment of   10:49
5 the Constitution of the United States.            10:49
6    Q   You recruited Google employees to join you at   10:49
7 Otto because they had access to Google's confidential   10:50
8 information?                                       10:50
9    A   On the advice and direction of my counsel, I   10:50
10 respectfully decline to answer.  And I assert the  10:50
11 rights guaranteed to me under the Fifth Amendment of  10:50
12 the Constitution of the United States.            10:50
13    Q   You continue to retain documents, including  10:50
14 Google and Waymo confidential information, that you  10:50
15 downloaded prior to your resignation of Google?   10:50
16    A   On the advice and direction of my counsel, I  10:50
17 respectfully decline to answer.  And I assert the  10:50
18 rights guaranteed to me under the Fifth Amendment of  10:50
19 the Constitution of the United States.            10:50
20    Q   You continue to retain the 14,000 documents  10:50
21 that you downloaded in December 15 -- December 2015  10:50
22 from the Google SVN server?                       10:50
23    A   On the advice and direction of my counsel, I  10:50
24 respectfully decline to answer.  And I assert the  10:50
25 rights guaranteed to me under the Fifth Amendment of  10:50
Page 70

1 rights guaranteed to me under the Fifth Amendment of   10:52
2 the Constitution of the United States.            10:52
3    Q   Uber has encouraged you to use the          10:52
4 14,000 documents downloaded in December 2015 during   10:52
5 your work at Uber; correct?                       10:52
6    A   On the advice and direction of my counsel, I   10:52
7 respectfully decline to answer.  And I assert the   10:52
8 rights guaranteed to me under the Fifth Amendment of   10:52
9 the Constitution of the United States.            10:52
10    Q   Uber and its management know that you have  10:52
11 retained the 14,000 documents you downloaded in     10:52
12 December 2015?                                     10:52
13    MS. RAY:  Objection; form.                     10:52
14    MR. EHRLICH:  You can answer.                  10:52
15    THE WITNESS:  On the advice and direction of   10:52
16 my counsel, I respectfully decline to answer.  And I  10:52
17 assert the rights guaranteed to me under the Fifth  10:52
18 Amendment of the Constitution of the United States.  10:53
19    MR. PERLSON:  Q.  You have informed Goober      10:53
20 and -- Uber and its management that you still have the  10:53
21 14,000 documents downloaded in December 2015 from   10:53
22 Google?                                           10:53
23    A   On the advice and direction of my counsel, I  10:53
24 respectfully decline to answer.  And I assert the  10:53
25 rights guaranteed to me under the Fifth Amendment of  10:53
Page 72

1 the Constitution of the United States.            10:51
2    Q   You still have the media device through which  10:51
3 you downloaded the approximately 14,000 files in    10:51
4 December 15 -- December 2015; correct?             10:51
5    A   On the advice and direction of my counsel, I  10:51
6 respectfully decline to answer.  And I assert the  10:51
7 rights guaranteed to me under the Fifth Amendment of  10:51
8 the Constitution of the United States.            10:51
9    Q   You have referred to the 14,000 documents   10:51
10 downloaded in 2015 during your work at Otto; correct?  10:51
11    A   On the advice and direction of my counsel, I  10:51
12 respectfully decline to answer.  And I assert the  10:51
13 rights guaranteed to me under the Fifth Amendment of  10:51
14 the Constitution of the United States.            10:51
15    Q   You have referred to the 14,000 documents   10:51
16 downloaded in 2015 during your work at Uber; correct?  10:51
17    A   On the advice and direction of my counsel, I  10:51
18 respectfully decline to answer.  And I assert the  10:51
19 rights guaranteed to me under the Fifth Amendment of  10:51
20 the Constitution of the United States.            10:52
21    Q   Uber is aware that you have referred to the  10:52
22 14,000 documents downloaded in December 2015 during  10:52
23 your work at Uber; correct?                       10:52
24    A   On the advice and direction of my counsel, I  10:52
25 respectfully decline to answer.  And I assert the  10:52
Page 71

1 the Constitution of the United States.            10:53
2    Q   You told Uber that you had in your personal  10:53
3 possession the 14,000 documents downloaded from Google  10:53
4 before the Otto acquisition; correct?             10:53
5    A   On the advice and direction of my counsel, I  10:53
6 respectfully decline to answer.  And I assert the  10:53
7 rights guaranteed to me under the Fifth Amendment of  10:53
8 the Constitution of the United States.            10:53
9    Q   You told Uber that you had in your personal  10:53
10 possession the 14,000 documents downloaded in 2015   10:53
11 before you even left Google; correct?             10:54
12    A   On the advice and direction of my counsel, I  10:54
13 respectfully decline to answer.  And I assert the  10:54
14 rights guaranteed to me under the Fifth Amendment of  10:54
15 the Constitution of the United States.            10:54
16    Q   When Mr. Kalanick recruited you to join Uber,  10:54
17 you informed him that you had taken the           10:54
18 14,000 documents downloaded in 2015 from Google?   10:54
19    A   On the advice and direction of my counsel, I  10:54
20 respectfully decline to answer.  And I assert the  10:54
21 rights guaranteed to me under the Fifth Amendment of  10:54
22 the Constitution of the United States.            10:54
23    Q   While Mr. Kalanick was recruiting you to join  10:54
24 Uber, he did not tell you to return the 14,000    10:54
25 documents you had downloaded in 2015 from Google?  10:55
Page 73

19 (Pages 70 - 73)

ATTORNEYS EYES ONLY

1   A  On the advice and direction of my counsel, I  10:55
2   respectfully decline to answer.  And I assert the  10:55
3   rights guaranteed to me under the Fifth Amendment of  10:55
4   the Constitution of the United States.  10:55
5       Q  When Mr. Kalanick recruited you to join Uber,  10:55
6   he encouraged you to keep the 14,000 documents you had  10:55
7   downloaded in 2015 from Google and use them at Uber  10:55
8   when you joined Uber; correct?  10:55
9   A  On the advice and direction of my counsel, I  10:55
10  respectfully decline to answer.  And I assert the  10:55
11  rights guaranteed to me under the Fifth Amendment of  10:55
12  the Constitution of the United States.  10:55
13      Q  You were retained as a consultant by Uber  10:55
14  before the Otto acquisition; correct?  10:55
15  A  On the advice and direction of my counsel, I  10:55
16  respectfully decline to answer.  And I assert the  10:55
17  rights guaranteed to me under the Fifth Amendment of  10:55
18  the Constitution of the United States.  10:56
19      Q  You were retained as a consultant by Uber  10:56
20  before you left Google; correct?  10:56
21  A  On the advice and direct- -- and direction of  10:56
22  my counsel, I respectfully decline to answer.  And I  10:56
23  assert the rights guaranteed to me under the Fifth  10:56
24  Amendment of the Constitution of the United States.  10:56
25      Q  The reason you were retained as a consultant  10:56

Page 74

1   by Uber before the Otto acquisition was so that you  10:56
2   could share the confidential information you learned  10:56
3   while you were employed by Google with Uber?  10:56
4   A  On the advice and direction of my counsel, I  10:56
5   respectfully decline to answer.  And I assert the  10:56
6   rights guaranteed to me under the Fifth Amendment of  10:56
7   the Constitution of the United States.  10:56
8       Q  While you were acting as a consultant for  10:56
9   Uber, you did share Google confidential information  10:56
10  you learned while you were employed by Google with  10:57
11  Uber?  10:57
12  A  On the advice and direction of my counsel, I  10:57
13  respectfully decline to answer.  And I assert the  10:57
14  rights guaranteed to me under the Fifth Amendment of  10:57
15  the Constitution of the United States.  10:57
16      Q  While the -- the -- start over again.  10:57
17      The information that you shared with  10:57
18  Google -- let me start over again.  10:57
19      The information that you shared with Uber  10:57
20  while you were a consultant for Uber included  10:57
21  information from the 14,000 files you downloaded in  10:57
22  December 2015?  10:57
23  A  On the advice and direction of my counsel, I  10:57
24  respectfully decline to answer.  And I assert the  10:57
25  rights guaranteed to me under the Fifth Amendment of  10:57

Page 75

1   the Constitution of the United States.  10:57
2       Q  Uber was aware that you were sharing with  10:57
3   them information obtained from the 14,000 files you  10:58
4   downloaded in December 15 -- 2015 as part of your  10:58
5   consulting work for Uber?  10:58
6       MS. RAY:  Objection; form.  10:58
7       MR. EHRLICH:  You can answer.  10:58
8       THE WITNESS:  Okay.  10:58
9       On the advice and direction of my counsel, I  10:58
10  respectfully decline to answer.  And I assert the  10:58
11  rights guaranteed to me under the Fifth Amendment of  10:58
12  the Constitution of the United States.  10:58
13      MR. PERLSON:  Q.  Uber has never asked you to  10:58
14  return to Google or Waymo the 14,000 files you  10:58
15  downloaded in December 2015?  10:58
16  A  On the advice and direction of my counsel, I  10:58
17  respectfully decline to answer.  And I assert the  10:58
18  rights guaranteed to me under the Fifth Amendment of  10:58
19  the Constitution of the United States.  10:58
20      Q  You have retained the -- the 14,000 files you  10:58
21  downloaded in December 2015 so that you can continue  10:59
22  to use this information at your work at Uber?  10:59
23  A  On the advice and direction of my counsel, I  10:59
24  respectfully decline to answer.  And I assert the  10:59
25  rights guaranteed to me under the Fifth Amendment of  10:59

Page 76

1   the Constitution of the United States.  10:59
2       Q  Uber has -- start over again.  10:59
3       Uber has instructed you, and continues to  10:59
4   instruct you, to keep the 14,000 files you downloaded  10:59
5   in December 2015 so that you can continue to use this  10:59
6   information at your work at Uber?  10:59
7   A  On the advice and direction of my counsel, I  10:59
8   respectfully decline to answer.  And I assert the  10:59
9   rights guaranteed to me under the Fifth Amendment of  10:59
10  the Constitution of the United States.  11:00
11      Q  You have retained the information -- let me  11:00
12  start over again.  11:00
13      You have retained the 14,000 documents and  11:00
14  other -- strike that.  11:00
15      You have retained the 14,000 documents you  11:00
16  downloaded in December 2015 because it contains  11:00
17  information that is not generally known in the  11:00
18  relevant field of that information?  11:00
19  A  On the advice and direction of my counsel, I  11:00
20  respectfully decline to answer.  And I assert the  11:00
21  rights guaranteed to me under the Fifth Amendment of  11:00
22  the Constitution of the United States.  11:00
23      Q  You have retained the -- the 14,000 files you  11:00
24  downloaded in December 2015 and the other information  11:00
25  you took with you -- let me start over again.  11:00

Page 77

20 (Pages 74 - 77)

ATTORNEYS EYES ONLY

1  You have retained the 14,000 files you        11:00
2  downloaded in 2015 because it derives independent        11:01
3  economic value from the fact that the information in        11:01
4  those documents is not generally known in the relevant        11:01
5  field; correct?        11:01
6      A  On the advice and direction of my counsel, I        11:01
7  respectfully decline to answer.  And I assert the        11:01
8  rights guaranteed to me under the Fifth Amendment of        11:01
9  the Constitution of the United States.        11:01
10     Q  The 14,000 files that you downloaded in        11:01
11 December 2015 contain trade secrets; correct?        11:01
12     MS. RAY:  Objection; form.        11:01
13     MR. EHRLICH:  You can answer.        11:01
14     THE WITNESS:  Okay.        11:01
15     On the advice and direction of my counsel, I        11:01
16 respectfully decline to answer.  And I assert the        11:01
17 rights guaranteed to me under the Fifth Amendment of        11:01
18 the Constitution of the United States.        11:01
19     MR. PERLSON:  Q.  You retained the five files        11:02
20 you exported in January 2016 because it contains        11:02
21 informa-- they contain information that derive        11:02
22 independent economic value from the fact that it is        11:02
23 not generally known?        11:02
24     A  On the advice and direction of my counsel, I        11:02
25 respectfully decline to answer.  And I assert the        11:02

Page 78

1  said that he would love to put you on the witness        11:04
2  stand to explain what happened, because he thinks you        11:04
3  have a good story to tell?        11:04
4      MS. RAY:  I instruct you not to answer to the        11:04
5  extent that what you know is as the result of        11:04
6  attorney-client privileged communications.  But you        11:04
7  may otherwise answer.        11:04
8      MR. EHRLICH:  I join in that instruction.        11:04
9  But, to the extent it goes beyond that, I instruct you        11:04
10 to assert your rights.        11:04
11     THE WITNESS:  On the advice and direction of        11:04
12 my counsel, I respectfully decline to answer.  And I        11:04
13 assert the rights guaranteed to me under the Fifth        11:04
14 Amendment of the Constitution of the United States.        11:05
15     MR. PERLSON:  Q.  Do you have a good story to        11:05
16 tell in this case?        11:05
17     A  On the advice and direction of my counsel, I        11:05
18 respectfully decline to answer.  And I assert the        11:05
19 rights guaranteed to me under the Fifth Amendment of        11:05
20 the Constitution of the United States.        11:05
21     Q  Have you told your good story to        11:05
22 Mr. Gonzalez?        11:05
23     A  On the advice and direction of my counsel, I        11:05
24 respectfully decline to answer.  And I assert the        11:05
25 rights granted to me under the Fifth Amendment of the        11:05

Page 80

1  rights guaranteed to me under the Fifth Amendment of        11:02
2  the Constitution of the United States.        11:02
3      Q  You have used the confidential information        11:02
4  contained in the five files exported on January 3rd,        11:03
5  2016, for the benefit of Uber in the past?        11:03
6      A  On the advice and direction of my counsel, I        11:03
7  respectfully decline to answer.  And I assert the        11:03
8  rights guaranteed to me under the Fifth Amendment of        11:03
9  the Constitution of the United States.        11:03
10     Q  You expect to continue to use the 14,000        11:03
11 documents you downloaded in December 2015 for the        11:03
12 benefit of Uber; correct?        11:03
13     A  On the advice and direction of my counsel, I        11:03
14 respectfully decline to answer.  And I assert the        11:03
15 rights guaranteed to me under the Fifth Amendment of        11:03
16 the Constitution of the United States.        11:03
17     Q  You expect to continue to use the five files        11:03
18 you downloaded on January 3rd, 2016, for the benefit        11:03
19 of Uber?        11:04
20     A  On the advice and direction of my counsel, I        11:04
21 respect -- I respectfully decline to answer.  And I        11:04
22 assert the rights guaranteed to me under the Fifth        11:04
23 Amendment of the Constitution of the United States.        11:04
24     Q  Are you aware that, in a hearing before the        11:04
25 judge in this case, Uber's lawyer, Arturo Gonzalez,        11:04

Page 79

1  Constitution of the United States.        11:05
2      Q  Is part of your good story that you received        11:05
3  a bachelor of science degree in industrial engineering        11:05
4  and operations research in 2002 from the University of        11:05
5  California at Berkeley?        11:05
6      MR. EHRLICH:  Hold on one second.  Let me        11:05
7  just -- the question is whether that's part of your        11:05
8  good story.        11:05
9      So, I'm going to instruct you to assert your        11:05
10 rights.  Go ahead.        11:05
11     THE WITNESS:  Okay.        11:05
12     On the advice and direction of my counsel, I        11:05
13 respectfully decline to answer.  And I assert the        11:05
14 rights guaranteed to me under the Fifth Amendment of        11:05
15 the Constitution of the United States.        11:06
16     MR. EHRLICH:  Mr. Perlson, just -- can I --        11:06
17 for the record, my partner, Ismail Ramsey, has joined.        11:06
18     And, if I could just take a pause.  I know        11:06
19 that wasn't your question here.  But as is clear,        11:06
20 he's -- he's being instructed to assert his        11:06
21 constitutional rights very broadly.        11:06
22     However, if you did want to ask about any of        11:06
23 his work or upbringing before joining Google, you can        11:06
24 go ahead and ask those questions, if -- if that's of        11:06
25 interest.        11:06

Page 81

21 (Pages 78 - 81)

ATTORNEYS EYES ONLY

1    MR. PERLSON: Thanks.              11:06
2    Q  Is part of your good story that you received  11:06
3 a master's degree from Berkeley in 2003?  11:06
4    A  On the advice and direction of my counsel, I  11:06
5 respectfully decline to answer.  And I assert the  11:06
6 rights guaranteed to me under the Fifth Amendment of  11:06
7 the Constitution of the United States.  11:06
8    Q  Is part of your good story that you developed  11:07
9 technology for a robotic motorcycle between 2003 and  11:07
10 2006?                          11:07
11    A  On the advice and direction of my counsel, I  11:07
12 respectfully decline to answer.  And I assert the  11:07
13 rights guaranteed to me under the Fifth Amendment of  11:07
14 the Constitution of the United States.  11:07
15    MR. EHRLICH:  And excuse me, Counsel.  I just  11:07
16 want to make clear -- I want to make sure I  11:07
17 understand.                    11:07
18    You're not asking the question of fact  11:07
19 whether he, in fact, did these things, or whether he  11:07
20 had this education or, you know, developed this  11:07
21 robotic motorcycle.              11:07
22    You're framing it in terms of whether that's  11:07
23 part of the good story that Mr. Gonzalez was referring  11:07
24 to?                            11:07
25    MR. PERLSON:  I'm asking the questions that  11:07

Page 82

1 I'm asking.  And the -- Judge Alsup's rules, I think,  11:07
2 are pretty clear that, if you have an objection, you  11:07
3 say it in the basis of form.  11:07
4    MR. EHRLICH:  Okay.          11:07
5    MR. PERLSON:  So, if you want to object on  11:07
6 the basis of form --          11:07
7    MR. EHRLICH:  So no, I don't want to object.  11:07
8 I just would -- thought it might be helpful if you  11:07
9 want answers to those questions.  But I'll -- I'll --  11:08
10 I won't object, and you can go ahead.  11:08
11    I don't know if there's a question.  11:08
12    MR. PERLSON:  I don't, either.  11:08
13    MR. EHRLICH:  I think there wasn't, but I --  11:08
14 I wanted to offer that.        11:08
15    MR. PERLSON:  Okay.          11:08
16    MS. RAY:  Could -- could you hold on a  11:08
17 moment.                        11:08
18    May we chat a moment.        11:08
19    Can we go off the record a moment, please.  11:08
20    MR. PERLSON:  Sure.  There's not -- I don't  11:08
21 think there's a question.      11:08
22    THE VIDEOGRAPHER:  We are going off the  11:08
23 record.  The time is 11:08.    11:08
24    (Recess taken.)            11:08
25    THE VIDEOGRAPHER:  We are back on the record.  11:24

Page 83

1 The time is 11:24.            11:24
2    MR. PERLSON:  Q.  Mr. Levandowski, is part of  11:24
3 your good story that you developed a self-driving  11:24
4 motorcycle that entered the DARPA Challenge of -- in  11:24
5 2004?                          11:24
6    A  On the advice and direction of my counsel, I  11:24
7 respectfully decline to answer.  And I assert the  11:24
8 rights guaranteed to me under the Fifth Amendment of  11:24
9 the Constitution of the United States.  11:24
10    Q  Is part of your good story that you were the  11:24
11 chief technologist of unmanned systems at ENSCO, Inc.,  11:24
12 from 2006 to 2007?            11:25
13    A  On the advice and direction of my counsel, I  11:25
14 respectfully decline to answer.  And I assert the  11:25
15 rights guaranteed to me under the Fifth Amendment of  11:25
16 the Constitution of the United States.  11:25
17    Q  Is part of your story the work you did -- I'm  11:25
18 sorry.                          11:25
19    Is part of your good story the work you did  11:25
20 for Google between 2007 and 2016?  11:25
21    A  On the advice and direction of my counsel, I  11:25
22 respectfully decline to answer.  And I assert the  11:25
23 rights guaranteed to me under the Fifth Amendment of  11:25
24 the Constitution of the United States.  11:25
25    Q  Did the work that you did while you were at  11:25

Page 84

1 Berkeley have to do with -- have anything to do with  11:25
2 the work that you did while you were at Google?  11:25
3    MR. EHRLICH:  You can answer the question  11:25
4 about your work at Berkeley -- the -- the nature of  11:25
5 your work at Berkeley.        11:25
6    THE WITNESS:  Sure.          11:25
7    I --                        11:25
8    MR. EHRLICH:  But -- but I'm going to  11:25
9 instruct you not to answer in any way about matters  11:25
10 that occurred after the date you began employment with  11:26
11 Google.                        11:26
12    THE WITNESS:  Okay.          11:26
13    Well, I can't answer whether it relates or  11:26
14 not.  But I can say that, at Berkeley, I worked on  11:26
15 self-driving vehicles, indoors, outdoors, and other  11:26
16 robotic vehicles.              11:26
17    MR. PERLSON:  Q.  And, did the work that  11:26
18 you -- and does the work that you did at Berkeley  11:26
19 relating to self-driving vehicles have anything to do  11:26
20 with the work that you did at Google?  11:26
21    A  I'm going to --          11:26
22    MR. EHRLICH:  On -- on that question, because  11:26
23 I'm trying to be very clear to preserve  11:26
24 Mr. Levandowski's Fifth Amendment privilege here, that  11:26
25 if the question is calling for the nature of his work  11:26

Page 85

22 (Pages 82 - 85)

1 prior to joining Google, then you can answer.    11:26
2     But I'm instructing you not to draw any    11:26
3 comparisons between the two, because you are not    11:26
4 answering questions about matters occurring after you    11:27
5 began employment with Google.    11:27
6     Go ahead.    11:27
7     THE WITNESS: Can I have you repeat the    11:27
8 question then.    11:27
9     MR. PERLSON: Sure.    11:27
10     THE WITNESS: I can probably read it.    11:27
11     MR. EHRLICH: Yeah, maybe you can look here.    11:27
12     THE WITNESS: Yeah.    11:27
13     And does -- okay. And, did the work that --    11:27
14 the work that you did at Berkeley, relating to    11:27
15 self-driving vehicle, have anything to do with the    11:27
16 work that you did at Google?    11:27
17     MR. EHRLICH: At Google. So, answer the    11:27
18 first part.    11:27
19     THE WITNESS: At Berkeley, I worked on    11:27
20 multiple projects, including navigation of vehicles,    11:27
21 self-driving vehicles built on -- using Java for    11:27
22 navigation, using cameras, GPS, and other sensors,    11:27
23 too.    11:28
24     MR. PERLSON: Q. And does the work that you    11:28
25 just described that you did at Ber- -- Berkeley have    11:28
Page 86

1 any relation to the work that you did at Google?    11:28
2     A. On the --    11:28
3     MR. EHRLICH: I'll instruct you --    11:28
4     THE WITNESS: -- advice of -- on the -- on    11:28
5 the advice and direction of my counsel, I respectfully    11:28
6 decline to answer. And I assert the rights guaranteed    11:28
7 to me under the Fifth Amendment of the Constitution of    11:28
8 the United States.    11:28
9     MR. PERLSON: Q. And, does the work that you    11:28
10 just described, while you were at Berkeley, have    11:28
11 anything to do with the work that you do at Uber?    11:28
12     A. On the advice and direction of my counsel, I    11:28
13 respectfully decline to answer. And I assert the    11:28
14 rights guaranteed to me under the Fifth Amendment of    11:28
15 the Constitution of the United States.    11:28
16     Q. And, does the work that you did at Berkeley    11:28
17 cause you to be knowledgeable as to the state of    11:28
18 self-driving car technology today?    11:28
19     MR. EHRLICH: You can answer that.    11:28
20     THE WITNESS: Yeah, I was one of the first    11:28
21 pioneers in the field in terms of building    11:28
22 self-driving vehicles.    11:29
23     MR. PERLSON: Q. And what -- and how -- how    11:29
24 does Uber's current self-driving technology compare to    11:29
25 the technology that you worked on at Berkeley?    11:29
Page 87

1     MR. EHRLICH: I'm going to instruct you.    11:29
2     THE WITNESS: On the advice and direction of    11:29
3 my counsel, I respectfully decline to answer. And I    11:29
4 assert the rights and -- I assert the rights    11:29
5 guaranteed to me under the Fifth Amendment of the    11:29
6 Constitution of the United States.    11:29
7     MR. PERLSON: Q. And how does the    11:29
8 self-driving vehicle technology that you worked on at    11:29
9 Goo- -- at Google relate to the work you've described    11:29
10 at Berkeley?    11:29
11     A. On the advice and direction of my counsel, I    11:29
12 respectfully decline to answer. And I assert the    11:29
13 rights guaranteed to me under the Fifth Amendment of    11:29
14 the Constitution of the United States.    11:29
15     Q. How does the work that you did, in relation    11:29
16 to the self-driving motorcycle that entered the DARPA    11:29
17 Grand Challenge in 2004, relate to the work that you    11:30
18 did for Google in self-driving vehicle technology?    11:30
19     A. On the advice and direction of my counsel, I    11:30
20 respectfully decline to answer. And I assert the    11:30
21 rights guaranteed to me under the Fifth Amendment of    11:30
22 the Constitution of the United States.    11:30
23     MR. EHRLICH: And Counsel, can I just make a    11:30
24 comment?    11:30
25     I really want you to get answers to any    11:30
Page 88

1 questions you can, consistent with his Fifth Amendment    11:30
2 rights.    11:30
3     So, if you are interested in asking questions    11:30
4 about the -- the self-driving motorcycle related to    11:30
5 the DARPA Grand Challenge, I encourage you to ask    11:30
6 that. He can answer those questions.    11:30
7     You don't have to answer -- you don't have to    11:30
8 ask him, of course. It's your choice.    11:30
9     MR. PERLSON: Q. How does the work that you    11:30
10 did, in relation to the self-driving motorcycle that    11:31
11 entered the DARPA Challenge in 2004, relate to the    11:31
12 work that you are doing now at Uber?    11:31
13     A. On the advice and direction of my counsel, I    11:31
14 respectfully decline to answer. And I assert the    11:31
15 rights guaranteed to me under the Fifth Amendment of    11:31
16 the Constitution of the United States.    11:31
17     Q. What are the advances that have been made at    11:31
18 Uber regarding self-driving technology over the    11:31
19 self-driving motorcycle that you developed in relation    11:31
20 to the 2004 DARPA Grand Challenge?    11:31
21     MR. EHRLICH: Hold on. Let me read the    11:31
22 question.    11:31
23     I'm going to instruct you to assert your    11:32
24 rights.    11:32
25     THE WITNESS: On the advice and direction of    11:32
Page 89

23 (Pages 86 - 89)

Page 90

1  my counsel, I respectfully decline to answer.  And I   11:32
2  assert the rights guaranteed to me under the Fifth   11:32
3  Amendment of the Constitution of the United States.   11:32
4     MR. PERLSON:  Q.  What are the differences   11:32
5  between the self-driving car technology that you   11:32
6  worked on at Google and the self-driving car   11:32
7  technology that you currently work on at Uber?   11:32
8     A  On the advice and direction of my counsel, I   11:32
9  respectfully decline to answer.  And I assert the   11:32
10  rights guaranteed to me under the Fifth Amendment of   11:32
11  the Constitution of the United States.   11:32
12     Q  Do you agree that, while you were at Google,   11:32
13  Google invested time and money to allow you to develop   11:32
14  self-driving car technology?   11:33
15     A  On the advice and direction of my counsel, I   11:33
16  respectfully decline to answer.  And I assert the   11:33
17  rights guaranteed to me under the Fifth Amendment of   11:33
18  the Constitution of the United States.   11:33
19     Q  Do you agree that the development of   11:33
20  self-driving car technology at Google took years of   11:33
21  work?   11:33
22     A  On the advice and direction of my counsel, I   11:33
23  respectfully decline to answer.  And I assert the   11:33
24  rights guaranteed to me under the Fifth Amendment of   11:33
25  the Constitution of the United States.   11:33

Page 91

1     Q  Do you agree that Waymo's self-driving car   11:33
2  technology today is a result of years of work and a   11:33
3  substantial investment of time and money?   11:33
4     A  On the advice and direction of my counsel, I   11:33
5  respectfully decline to answer.  And I assert the   11:33
6  rights guaranteed to me under the Fifth Amendment of   11:33
7  the Constitution of the United States.   11:33
8     Q  Do you agree that development of self-driving   11:33
9  car technology, while you were at Google, involved   11:34
10  trial and error?   11:34
11     A  On the advice and direction of my counsel, I   11:34
12  respectfully decline to answer.  And I assert the   11:34
13  rights guaranteed to me under the Fifth Amendment of   11:34
14  the Constitution of the United States.   11:34
15     Q  Isn't it correct that you use the knowledge   11:34
16  you learned through trial and error, while you were   11:34
17  working on self-driving car technology at Google, in   11:34
18  your work for Uber?   11:34
19     A  On the advice and direction of my counsel, I   11:34
20  respectfully decline to answer.  And I assert the   11:34
21  rights guaranteed to me under the Fifth Amendment of   11:34
22  the Constitution of the United States.   11:34
23     Q  How does your work at Google relate to the   11:34
24  allegations in this case?   11:34
25     A  On the advice of my counsel, I respectfully   11:34

Page 92

1  decline to answer.  And I assert the rights guaranteed   11:34
2  to me under the Fifth Amendment of the Constitution of   11:34
3  the United States.   11:34
4     Q  Have you read the complaint in this case?   11:34
5     A  On the advice of my counsel, I respectfully   11:35
6  decline to answer.  And I assert the rights guaranteed   11:35
7  to me under the Fifth Amendment of the Constitution of   11:35
8  the United States.   11:35
9     Q  Have you read the -- Waymo's motion for   11:35
10  preliminary injunction in this case?   11:35
11     A  On the advice and direction of my counsel, I   11:35
12  respectfully decline to answer.   11:35
13     Q  Can you identify any allegation in Waymo's   11:35
14  complaint that you believe is incorrect?   11:35
15     A  Do you want me to finish my answer to the   11:35
16  previous one?   11:35
17     MR. EHRLICH:  Yeah, go ahead -- go ahead and   11:35
18  answer -- give the full answer.   11:35
19     THE WITNESS:  So, on the previous question,   11:35
20  let me just finish --   11:35
21     MR. PERLSON:  Q.  Oh, did I cut you off?   11:35
22     A  Yeah, it's okay.  No worries.  I'll just   11:35
23  repeat.   11:35
24     Q  I'm not really listening to --   11:35
25     A  I -- I imagine it's repetitive.   11:35

Page 93

1     But on the advice and direction of my   11:35
2  counsel, I respectfully decline to answer.  And I   11:35
3  assert the rights guaranteed to me under the Fifth   11:35
4  Amendment of the Constitution of the United States.   11:35
5     Okay.  Now, this current question?   11:35
6     Q  Let me just repeat it.   11:35
7     A  Yes.  Thank you.   11:35
8     Q  Can you identify any allegation in Waymo's   11:35
9  complaint that you believe is incorrect?   11:35
10     A  On the advice and direction of my counsel, I   11:35
11  respectfully decline to answer.  And I assert the   11:35
12  rights guaranteed to me under the Fifth Amendment of   11:35
13  the Constitution of the United States.   11:36
14     Q  Can you identify any allegation in Waymo's   11:36
15  preliminary injunction motion that is incorrect?   11:36
16     A  On the advice and direction of my counsel, I   11:36
17  respectfully decline to answer.  And I assert the   11:36
18  rights guaranteed to me under the Fifth Amendment of   11:36
19  the Constitution of the United States.   11:36
20     Q  Isn't it correct that you cannot identify any   11:36
21  allegation or assertion made in any of the   11:36
22  declarations attached to Google's -- I'm sorry --   11:36
23  Waymo's motion for a preliminary injunction that is   11:36
24  incorrect?   11:36
25     MR. EHRLICH:  I'm going to object to   11:36

24 (Pages 90 - 93)

ATTORNEYS EYES ONLY

1 foundation.                                    11:36
2     But, I'm going to instruct you to assert your  11:36
3 rights.                                         11:36
4     MS. RAY:  Join.                             11:36
5     THE WITNESS:  On the advice and direction of  11:36
6 my counsel, I respectfully decline to answer.  And I  11:36
7 assert the rights guaranteed to me under the Fifth  11:36
8 Amendment of the Constitution of the United States.  11:37
9     MR. PERLSON:  Q.  Have you reviewed any of  11:37
10 the declarations attached to Waymo's motion for  11:37
11 preliminary injunction?                        11:37
12    A  On the advice and direction of my counsel, I  11:37
13 respectfully decline to answer.  And I assert the  11:37
14 rights guaranteed to me under the Fifth Amendment of  11:37
15 the Constitution of the United States.         11:37
16    Q  While at Otto, were you developing technology  11:37
17 relating to mid- and long-range LiDar systems?  11:37
18    A  On the advice and direction of my counsel, I  11:37
19 respectfully decline to answer.  And I assert the  11:37
20 rights guaranteed to me under the Fifth Amendment of  11:37
21 the Constitution of the United States.         11:37
22    Q  Uber is currently developing long- and  11:37
23 midrange LiDar systems; correct?               11:37
24    A  On the advice and direction of my counsel, I  11:37
25 respectfully decline to answer.  And I assert the  11:37

Page 94

1 rights guaranteed to me under the Fifth Amendment of  11:37
2 the Constitution of the United States.         11:38
3    Q  Uber's current LiDar development program  11:38
4 incorporates technology from Otto's LiDar development  11:38
5 program; correct?                              11:38
6    A  On the advice and direction of my counsel, I  11:38
7 respectfully decline to answer.  And I assert the  11:38
8 rights guaranteed to me under the Fifth Amendment of  11:38
9 the Constitution of the United States.         11:38
10    Q  Are you currently participating in Uber's  11:38
11 LiDar work?                                    11:38
12    A  On the advice and direction of my counsel, I  11:38
13 respectfully decline to answer.  And I assert the  11:38
14 rights guaranteed to me under the Fifth Amendment of  11:38
15 the Constitution of the United States.         11:38
16    Q  Were you involved at all in Uber's regulatory  11:38
17 filing in September of 2016 regarding its self-driving  11:38
18 car technology?                                11:39
19    A  On the advice and direction of my counsel, I  11:39
20 respectfully decline to answer.  And I assert the  11:39
21 rights guaranteed to me under the Fifth Amendment of  11:39
22 the Constitution of the United States.         11:39
23    Q  Isn't it true that the in-house technology  11:39
24 referred to in Uber's submission to Nevada, regarding  11:39
25 its self-driving car technology referred to a version  11:39

Page 95

1 of its LiDar system that preceded the Fuji system?  11:39
2     MS. RAY:  Objection; form.                  11:39
3     THE WITNESS:  On the advice and direction of  11:39
4 my counsel, I respectfully decline to answer.  And I  11:39
5 assert the rights guaranteed to me under the Fifth  11:39
6 Amendment of the Constitution of the United States.  11:39
7     MR. PERLSON:  Q.  Isn't it true that the --  11:39
8 that Uber's submission in September 2016 of --  11:40
9 regarding its self-driving car technology to the  11:40
10 Nevada government, referred to a prototype that was  11:40
11 then in existence?                             11:40
12    A  On the advice and direction of my counsel, I  11:40
13 respectfully decline to answer.  And I assert the  11:40
14 rights guaranteed to me under the Fifth Amendment of  11:40
15 the Constitution of the United States.         11:40
16    Q  Did Otto ever use or solicit ████ as a  11:40
17 vendor in developing its technology?           11:40
18    MS. RAY:  Objection; form.                  11:40
19    THE WITNESS:  On the advice and direction of  11:40
20 my counsel, I respectfully decline to answer.  And I  11:40
21 assert the rights guaranteed to me under the Fifth  11:40
22 Amendment of the Constitution of the United States.  11:41
23    MR. PERLSON:  Q.  Did Otto ever use or  11:41
24 solicit a company called ███ as a vendor in developing  11:41
25 its laser technology?                          11:41

Page 96

1     MS. RAY:  Objection; form.                  11:41
2     THE WITNESS:  I'm sorry.  I was distracted.  11:41
3 Do you mind repeating it.                       11:41
4     MR. PERLSON:  Sure.                         11:41
5    Q  Did Otto ever use or solicit a company called  11:41
6 ███ as a vendor in developing its laser technology?  11:41
7     MS. RAY:  Objection; form.                  11:41
8     THE WITNESS:  On the advice and direction of  11:41
9 my counsel, I respectfully decline to answer.  And I  11:41
10 assert the rights guaranteed to me under the Fifth  11:41
11 Amendment to the Constitution of the United States.  11:41
12    MR. PERLSON:  Q.  Did Otto ever use or  11:41
13 solicit a company called ███ as a vendor in developing  11:41
14 its laser technology?                          11:41
15    MS. RAY:  Objection; form.                  11:41
16    THE WITNESS:  On the advice and direction of  11:41
17 my counsel, I respectfully decline to answer.  And I  11:41
18 assert the rights guaranteed to me under the Fifth  11:41
19 Amendment to the Constitution of the United States.  11:41
20    MR. PERLSON:  Q.  Has -- did Otto select  11:41
21 third-party vendors because of their knowledge of  11:41
22 Google's confidential technology?              11:41
23    A  On the advice and direction of my counsel, I  11:41
24 respectfully decline to answer.  And I assert the  11:41
25 rights guaranteed to me under the Fifth Amendment to  11:41

Page 97

25 (Pages 94 - 97)

1 the Constitution of the United States.                11:41
2      Q  Gorilla Circuits is a supplier for Uber;      11:41
3 correct?                                              11:42
4      A  On the advice and direction of my counsel, I  11:42
5 respectfully decline to answer.  And I assert the     11:42
6 rights guaranteed to me under the Fifth Amendment to  11:42
7 the Constitution of the United States.                11:42
8      Q  On December 12th, 2016, Gorilla Circuits sent 11:42
9 an e-mail to individuals at Uber, that inadvertently  11:42
10 included a Waymo employee; correct?                   11:42
11     A  On the advice and direction of my counsel, I  11:42
12 respectfully decline to answer.  And I assert the     11:42
13 rights guaranteed to me under the Fifth Amendment to  11:42
14 the Uni- -- to the Constitution of the United States. 11:42
15     Q  And that e-mail -- the -- the December 13th,   11:42
16 2016, e-mail included a board that Gorilla Circuits is 11:43
17 developing for Uber; correct?                         11:43
18     A  On the advice and direction of my counsel, I  11:43
19 respectfully decline to answer.  And I assert the     11:43
20 rights guaranteed to me under the Fifth Amendment to  11:43
21 the Constitution of the United States.                11:43
22     Q  And that December 13, 2016, e-mail attached a  11:43
23 board design that was derived from information you     11:43
24 took from Google before you left Google; correct?     11:43
25     A  On the advice and direction of my counsel, I  11:43

Page 98

1 respectfully decline to answer.  And I assert the     11:43
2 rights granted to me -- guaranteed to me under the    11:43
3 Fifth Amendment to the -- to the Constitution of the  11:43
4 United States.                                        11:44
5      Q  And that 2 -- and the December 13, 2016,      11:44
6 Gorilla e-mail attached a board design that used      11:44
7 information that was contained in the 14,000 documents 11:44
8 you downloaded from Google in December 15 --          11:44
9 December 2015; correct?                               11:44
10     A  On the advice and direction of my counsel, I  11:44
11 respectfully decline to answer.  And I assert the     11:44
12 rights guaranteed to me under the Fifth Amendment to  11:44
13 the Constitution of the United States.                11:44
14     Q  Uber would not have been able to have         11:44
15 developed the board design attached to the            11:44
16 December 13, 2016, Gorilla e-mail without using       11:44
17 information contained in the 14,000 documents you     11:44
18 downloaded from Google in 2 -- December 2015; correct? 11:45
19     A  On the advice and direction of my counsel, I  11:45
20 respectfully decline to answer.  And I assert the     11:45
21 rights guaranteed to me under the Fifth Amendment to  11:45
22 the Constitution of the United States.                11:45
23     MR. EHRLICH:  Do you need a break?               11:45
24     THE WITNESS:  I'm okay.                          11:45
25     MR. EHRLICH:  Do you need a break?  We can       11:45

Page 99

1 keep going.                                           11:45
2      MR. PERLSON:  I don't care.                      11:45
3      THE WITNESS:  Let's do it.                       11:45
4      MR. EHRLICH:  Keep going?                        11:45
5      THE WITNESS:  Yeah.                              11:45
6      MR. PERLSON:  The -- you threw me off, man.      11:45
7      MR. EHRLICH:  We can take a break, if you        11:45
8 want.                                                 11:45
9      MR. PERLSON:  Q.  Fuji relates to a LiDar        11:45
10 system prototype that Uber has developed; correct?    11:45
11     A  On the advice and direction of my counsel, I  11:45
12 respectfully decline to answer.  And I assert the     11:45
13 rights guaranteed to me under the Fifth Amendment to  11:45
14 the Constitution of the United States.                11:45
15     Q  Work started on Fuji in October 2016;         11:46
16 correct?                                              11:46
17     A  On the advice and direction of my counsel, I  11:46
18 respectfully decline to answer.  And I assert the     11:46
19 rights guaranteed to me under the Fifth Amendment to  11:46
20 the Constitution of the United States.                11:46
21     Q  You personally are involved in the            11:46
22 development of Fuji; correct?                         11:46
23     A  On the advice and direction of my counsel, I  11:46
24 respectfully decline to answer.  And I assert the     11:46
25 rights guaranteed to me under the Fifth Amendment to  11:46

Page 100

1 the -- to the Constitution of the United States.      11:46
2      Q  Would you agree with me that the following    11:46
3 statement is incorrect:                               11:46
4      "Anthony Levandowski has never had nor           11:46
5 currently has any design input in the number of       11:46
6 ███████, number of ███████, number of                11:46
7 ███, or ███ and ███ of the ███                        11:47
8 ███ on the transmit PCBs for Fuji."                   11:47
9      MR. EHRLICH:  Hold on.  Let me read that         11:47
10 question.                                             11:47
11     I instruct you to assert your rights.            11:47
12     THE WITNESS:  On the advice and direction of     11:47
13 my counsel, I respectfully decline to answer.  And I  11:47
14 assert the rights guaranteed to me under the Fifth    11:47
15 Amendment to the Constitution of the United States.   11:47
16     MR. PERLSON:  Q.  Is it correct that the         11:47
17 current Fuji system borrows technology from each of   11:47
18 Otto, Tyto, and Odin Wave?                            11:47
19     A  On the advice and direction of my counsel, I  11:48
20 respectfully decline to answer.  And I assert the     11:48
21 rights guaranteed to me under the Fifth Amendment to  11:48
22 the Constitution of the United States.                11:48
23     Q  At Uber, your team is experience --           11:48
24 experimenting with ███████████; is that              11:48
25 correct?                                              11:48

Page 101

26 (Pages 98 - 101)



**Page 102**

1    A  On the advice and direction of my counsel, I  11:48
2  respectfully decline to answer.  And I assert the  11:48
3  rights guaranteed to me under the Fifth Amendment to  11:48
4  the Constitution of the United States.  11:49
5    Q  At Uber, your team is experiment --  11:49
6  experimenting with ▓▓▓▓▓ to help  11:49
7  build a ▓▓▓▓▓▓▓▓▓▓  11:49
8  correct?  11:49
9    A  On the advice and direction of my counsel, I  11:49
10  respectfully decline to answer.  And I assert the  11:49
11  rights guaranteed to me under the Fifth Amendment to  11:49
12  the Constitution of the United States.  11:49
13    Q  At Uber, your team is developing ▓▓▓  11:49
    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
    ▓▓▓▓▓▓▓▓  11:49
17    A  On the advice and direction of my counsel, I  11:49
18  respectfully decline to answer.  And I assert the  11:49
19  rights guaranteed to me under the Fifth Amendment to  11:49
20  the Constitution of the United States.  11:49
21    Q  The ▓▓▓▓ that your  11:49
22  team is working on at Uber relies on ▓▓▓▓  11:49
23  technology; correct?  11:49
24    A  On the advice and direction of my counsel, I  11:50
25  respectfully decline to answer.  11:50

**Page 103**

1    Q  The fi -- oh, sorry.  11:50
2    A  That's okay.  11:50
3      And I assert the rights guaranteed to me  11:50
4  under the Fifth Amendment to the Constitution of the  11:50
5  United States.  11:50
6    Q  The ▓▓▓ laser technology your team is  11:50
7  working on at Uber uses a ▓▓▓▓▓  11:50
8  ▓▓▓▓▓ correct?  11:50
9    A  On the advice and direction of my counsel, I  11:50
10  respectfully decline to answer.  And I assert the  11:50
11  rights guaranteed to me under the Fifth Amendment to  11:50
12  the Constitution of the United States.  11:50
13    Q  The ▓▓▓▓ technology your team is  11:50
14  working on at Uber uses ▓▓▓▓▓▓  11:50
    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  11:50
16  correct?  11:50
17    A  On the advice and direction of my counsel, I  11:50
18  respectfully decline to answer.  And I'm asserting the  11:50
19  rights guaranteed to me under the Fifth Amendment to  11:50
20  the Constitution of the United States.  11:51
21    Q  While you were at Google, Google's  11:51
22  self-driving car project used ▓▓▓▓▓▓  11:51
    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓
    ▓▓▓▓▓▓▓▓▓▓ correct?  11:51
25    A  On the advice and direction of my counsel, I  11:51

**Page 104**

1  respectfully decline to answer.  And I assert the  11:51
2  rights guaranteed to me under the Fifth Amendment to  11:51
3  the Constitution of the United States.  11:51
4    Q  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓  11:51
    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
    ▓▓▓▓▓▓▓▓▓▓▓▓ is not generally  11:51
7  known; correct?  11:52
8    A  This is a general question.  11:52
9    MR. EHRLICH:  Let -- let me read it.  11:52
10    MR. PERLSON:  Let -- let me -- let me ask it  11:52
11  again.  11:52
12    THE WITNESS:  Okay.  11:52
13    MR. PERLSON:  Q.  Before you left Google,  11:52
14  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ was not generally  11:52
17  known; correct?  11:52
18    A  On the advice and direction of my counsel, I  11:52
19  respectfully decline to answer.  And I assert the  11:52
20  rights guaranteed to me under the Fifth Amendment to  11:52
21  the Constitution of the United States.  11:53
22    Q  Uber's use of ▓▓▓▓▓▓▓▓▓▓▓  11:53
    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is not generally  11:53
25  known; correct?  11:53

**Page 105**

1    A  On -- on the advice and direction of my  11:53
2  counsel, I respectfully decline to answer.  And I  11:53
3  assert the rights guaranteed to me under the Fifth  11:53
4  Amendment to the Constitution to the United States.  11:53
5    Q  The -- since -- let's start over.  11:53
6    During your work at Otto, you did work in  11:54
7  relation -- let me start over again.  11:54
8    Otto did development work regarding a LiDar  11:54
9  system that uses a common transmit and receive lens;  11:54
10  correct?  11:54
11    A  On the advice and direction of my counsel, I  11:54
12  respectfully decline to answer.  And I assert the  11:54
13  rights guaranteed to me under the Fifth Amendment to  11:54
14  the Constitution of the United States.  11:54
15    Q  Otto developed a prototype LiDar system that  11:54
16  used a common transmit/receive lens; correct?  11:54
17    A  On the advice and direction of my counsel, I  11:54
18  respectfully decline to answer.  And I assert the  11:54
19  rights guaranteed to me under the Fifth Amendment to  11:54
20  the Constitution of the United States.  11:55
21    Q  Otto tested a LiDar system that used a common  11:55
22  transmit/receive lens; correct?  11:55
23    A  On the advice and direction of my counsel, I  11:55
24  respectfully decline to answer.  And I assert the  11:55
25  rights guaranteed to me under the Fifth Amendment to  11:55

27 (Pages 102 - 105)

1 the Constitution of the United States.        11:55
2   Q   If a LiDar system that uses a common        11:55
3 transmit/receive lens does not presently exist at        11:55
4 Uber, it is because it was destroyed; correct?        11:55
5   A   On the advice and direction of my counsel, I   11:56
6 respectfully decline to answer.  And I assert the        11:56
7 rights guaranteed to me under the Fifth Amendment to   11:56
8 the Constitution of the United States.        11:56
9   Q   While at Uber -- let me start over again.        11:56
10        Since your employment with Google ended, you   11:56
11 have done work on LiDar systems at Otto and Uber where   11:56
12 the transmit and receive paths overlap --        11:56
13        MS. RAY:  Objection; form.        11:56
14        MR. PERLSON:  Q.  -- correct?        11:56
15   A   On the advice and direction of my counsel, I   11:56
16 respectfully decline to answer.  And I assert the        11:56
17 rights guaranteed to me under the Fifth Amendment to   11:56
18 the Uni- -- to the Constitution of the United States.   11:57
19   Q   Since your employment with Google ended, you   11:57
20 have done work on LiDar systems at Otto and Uber,        11:57
21 where the transmit and receive paths overlap and        11:57
22 prototypes of such a system existed?        11:57
23        MS. RAY:  Objection; form.        11:57
24        THE WITNESS:  On the advice and direction of   11:57
25 my counsel, I respectfully decline to answer.  And I   11:57
Page 106

1   assert the rights guaranteed to me under the Fifth   11:57
2 Amendment to the Constitution of the United States.   11:57
3        MR. PERLSON:  Q.  If a prototype of work you   11:57
4 did on LiDar systems at Otto, and Uber where the        11:57
5 transmit and receive paths overlap does not exist, it   11:57
6 is because such a prototype has been destroyed?        11:58
7   A   On the advice and direction of my counsel, I   11:58
8 respectfully decline to answer.  And I assert the        11:58
9 rights guaranteed to me under the Fifth Amendment to   11:58
10 the Constitution of the United States.        11:58
11   Q   Any destruction of any Otto prototypes would   11:58
12 have been done at the instruction of Uber; correct?   11:58
13   A   On the advice and direction of my counsel, I   11:58
14 respectfully decline to answer.  And I assert the        11:58
15 rights guaranteed to me under the Fifth Amendment to   11:58
16 the Constitution of the United States.        11:58
17   Q   There has been instruction from management at   11:58
18 Uber to you to destroy prototypes that existed and   11:58
19 were designed at Uber?        11:58
20   A   On the advice and direction of my counsel, I   11:58
21 respectfully decline to answer.  And I assert the        11:58
22 rights guaranteed to me under the Fifth Amendment to   11:58
23 the Constitution of the United States.        11:59
24   Q   Management at Uber instructed you and Otto   11:59
25 employees to destroy prototypes to hide the existence   11:59
Page 107

1   of patent infringement?        11:59
2        MS. RAY:  Objection; form.        11:59
3        THE WITNESS:  On the advice and direction of   11:59
4 my counsel, I respectfully decline to answer.  And I   11:59
5 assert the rights guaranteed to me under the Fifth   11:59
6 Amendment to the Constitution of the United States.   11:59
7        MR. PERLSON:  Q.  Management at Uber        11:59
8 instructed you and Otto employees to destroy        11:59
9 prototypes to hide the existence of trade secret        11:59
10 misappropriation?        11:59
11        MS. RAY:  Objection; form.        11:59
12        THE WITNESS:  On the advice and direction of   11:59
13 my counsel, I respectfully decline to answer.  And I   11:59
14 assert the rights guaranteed to me under the Fifth   11:59
15 Amendment to the Constitution of the United States.   11:59
16        MR. PERLSON:  Q.  When you were employed by   11:59
17 Google, you had a duty to keep Google confidential   11:59
18 information secret; correct?        12:00
19   A   On the advice and direction of my counsel, I   12:00
20 respectfully decline to answer.  And I assert the        12:00
21 rights guaranteed to me under the Fifth Amendment to   12:00
22 the Constitution of the United States.        12:00
23   Q   You understood that were you to disclose        12:00
24 confidential and proprietary information of Google to   12:00
25 those outside of Google without Google's permission,   12:00
Page 108

1   that that would be a breach of your duty of loyalty as   12:00
2 an employee to Google?        12:00
3   A   On the advice and direction of my counsel, I   12:00
4 respectfully decline to answer.  And I assert the        12:00
5 rights guaranteed to me under the Fifth Amendment to   12:00
6 the Constitution of the United States.        12:00
7   Q   And, despite that understanding of the duty   12:00
8 to keep confidential, confidential and proprietary   12:00
9 information of Google, you took such confidential and   12:01
10 proprietary information with you to your work at Otto   12:01
11 and Uber?        12:01
12   A   On the advice and direction of my counsel, I   12:01
13 respectfully decline to answer.  And I assert the        12:01
14 rights guaranteed to me under the Fifth Amendment to   12:01
15 the Constitution of the United States.        12:01
16   Q   And the taking of that information was done   12:01
17 at the direction and with knowledge of Uber        12:01
18 management; correct?        12:01
19   A   On the advice and direction of my counsel, I   12:01
20 respectfully decline to answer.  And I assert the        12:01
21 rights guaranteed to me under the Fifth Amendment to   12:01
22 the Constitution of the United States.        12:01
23   Q   And you continue to use that confidential and   12:01
24 proprietary information that you took from Google at   12:01
25 your work at Google [sic]?        12:01
Page 109

28 (Pages 106 - 109)

**Page 110**

```
 1      A  On the advice and direction of my counsel, I   12:02
 2   respectfully decline to answer.  And I assert the       12:02
 3   rights guaranteed to me under the Fifth Amendment to    12:02
 4   the United States -- to the Constitution of the         12:02
 5   United States.                                          12:02
 6      Q  And that use of confidential and proprietary      12:02
 7   information that you took from Google is at the         12:02
 8   direction of and with the knowledge of Uber             12:02
 9   management?                                             12:02
10      A  On the advice and direction of my counsel, I     12:02
11   respectfully decline to answer.  And I assert the       12:02
12   rights guaranteed to me under the Fifth Amendment of    12:02
13   the Constitution of the United States.                  12:02
14      MR. PERLSON:  Why don't we take a break.             12:02
15      MR. EHRLICH:  Okay.                                  12:02
16      THE VIDEOGRAPHER:  Going off the record.  The        12:02
17   time is 12:02.                                          12:02
18      (Lunch break taken at 12:02 p.m.)                    12:02
19          ---oOo---
20
21
22
23
24
25
```

**Page 111**

```
 1      A F T E R N O O N   S E S S I O N          12:13
 2          1:06 P.M.                              12:13
 3                                                 12:13
 4                                                 12:13
 5      THE VIDEOGRAPHER:  We are back on the record.  12:29
 6   The time is 1:06.                             13:06
 7      MR. PERLSON:  Q.  Mr. Levandowski, while you  13:07
 8   were employed at Google, you started a company called  13:07
 9   510 Systems; correct?                         13:07
10      A  On the advice and direction of my counsel, I  13:07
11   respectfully decline to answer.              13:07
12      Q  While you were at Google --            13:07
13      A  Oh, wait.  Sorry.  My microphone fell off.  13:07
14      And I assert the rights guaranteed to me   13:07
15   under the Fifth Amendment to the Constitution of the  13:07
16   United States.                               13:07
17      Q  While you were at Google, you started a  13:07
18   company called Anthony's Robots LLC; correct?  13:07
19      A  On the advice of -- and direction of my  13:07
20   counsel, I respectfully decline to answer.  And I  13:07
21   assert the rights guaranteed to me under the Fifth  13:07
22   Amendment to the Constitution of the United States.  13:07
23      Q  And your employment with Google overlapped  13:07
24   with your involvement with 510 Systems and Anthony's  13:07
25   Robots; correct?                             13:07
```

**Page 112**

```
 1      A  On the advice and direction of my counsel, I  13:07
 2   respectfully decline to answer.  And I assert the    13:07
 3   rights guaranteed to me under the Fifth Amendment --  13:07
 4      Q  You did not --                         13:07
 5      A  -- to the Constitution of the United States.  13:08
 6      Q  Sorry.                                 13:08
 7      A  Sorry.  I apologize.                    13:08
 8      Q  You did not disclose to Google your     13:08
 9   involvement with 510 Systems and Anthony's Robots  13:08
10   before Google discovered your involvement with them;  13:08
11   correct?                                      13:08
12      A  On the advice and direction of my counsel, I  13:08
13   respectfully decline to answer.  And I assert the    13:08
14   rights guaranteed to me under the Fifth Amendment to  13:08
15   the Constitution of the United States.        13:08
16      Q  When Google discovered that you were involved  13:08
17   in 510 Systems and Anthony's Robots, it thought -- it  13:08
18   was concerned about potential conflicts; correct?  13:08
19      A  On the advice and direction of my counsel, I  13:08
20   respectfully decline to answer.  And I assert the    13:08
21   rights guaranteed to me under the Fifth Amendment to  13:08
22   the Constitution of the United States.        13:08
23      Q  And, given Google's concerns regarding the  13:08
24   conflict, you entered into a side agreement with  13:09
25   Google regarding 510 Systems and Anthony's Robots?  13:09
```

**Page 113**

```
 1      A  On the advice and direction of my counsel, I  13:09
 2   respectfully decline to answer.  And I assert the    13:09
 3   rights guaranteed to me under the Fifth Amendment to  13:09
 4   the Constitution of the United States.        13:09
 5      Q  And 510 Systems was doing work on        13:09
 6   self-driving car technology between 2009 and 2011;  13:09
 7   correct?                                      13:09
 8      A  On the advice and direction of my counsel, I  13:09
 9   respectfully decline to answer.  And I assert the    13:09
10   rights guaranteed to me under the Fifth Amendment to  13:09
11   the Constitution of the United States.        13:09
12      Q  Given what happened with 510 Systems and  13:09
13   Anthony's Robots, you were aware of Google's concern  13:09
14   with you operating side businesses that related to  13:09
15   your work at Google; correct?                 13:10
16      A  On the advice of -- on the advice and   13:10
17   direction of my counsel, I respectfully decline to  13:10
18   answer.  And I assert the rights guaranteed to me  13:10
19   under the Fifth Amendment to the Constitution to the  13:10
20   United States.                               13:10
21      Q  You used confidential information from Google  13:10
22   to help develop technology at 510 Systems; correct?  13:10
23      A  On the advice and direction of my counsel, I  13:10
24   respectfully decline to answer.  And I assert the    13:10
25   rights guaranteed to me under the Fifth Amendment to  13:10
```

29 (Pages 110 - 113)

Page 114:

```
 1  the Constitution of the United States.        13:10
 2      Q   You brought Google Street View source code to  13:10
 3  510 Systems in order to ███████  ████████
 4  ████████████  correct?                        13:10
 5      A   On the advice and direction of my counsel, I  13:10
 6  respectfully decline to answer.  And I assert the  13:10
 7  rights guaranteed to me under the Fifth Amendment to  13:10
 8  the Constitution of the United States.        13:11
 9      Q   You misused Google's confidential source code  13:11
10  to help advance 510 Systems' technology; didn't you?  13:11
11      A   On the advice and direction of my counsel, I  13:11
12  respectfully decline to answer.  And I assert the  13:11
13  rights guaranteed to me under the Fifth Amendment to  13:11
14  the Constitution of the United States.        13:11
15      Q   The Little Bear system at 510 Systems was  13:11
16  named after a mountain; is that correct?      13:11
17      A   On the advice and direction of my counsel, I  13:11
18  respectfully decline to answer.  And I assert the  13:11
19  rights guaranteed to me under the Fifth Amendment to  13:11
20  the Constitution of the United States.        13:12
21      Q   And, while you were at Google, you developed  13:12
22  LiDar systems that were named after mountains;  13:12
23  correct?                                      13:12
24      A   On the advice and direction of my counsel, I  13:12
25  respectfully decline to answer.  And I assert the  13:12
```
                                                Page 114

Page 115:

```
 1  rights guaranteed to me under the Fifth Amendment to  13:12
 2  the Constitution of the United States.        13:12
 3      Q   And the Fuji system at Uber is named after  13:12
 4  Mount Fuji; correct?                          13:12
 5      A   On the advice and direction of my counsel, I  13:12
 6  respectfully decline to answer.  And I assert the  13:12
 7  rights guaranteed to me under the Fifth Amendment to  13:12
 8  the Constitution of the United States.        13:12
 9      Q   And the reason that the Fuji system at Uber  13:12
10  is named after Mount Fuji is that it is derived from  13:12
11  Google technology that was also code named with names  13:13
12  of mountains; correct?                        13:13
13      A   On the advice and direction of my counsel, I  13:13
14  respectfully decline to answer.  And I assert the  13:13
15  rights guaranteed to me under the Fifth Amendment to  13:13
16  the Constitution of the United States.        13:13
17      Q   Google had a -- the first -- an early version  13:13
18  of LiDar, during your work at Google, was called  13:14
19  Grizzly Bear; correct?                        13:14
20      A   On the advice and direction of my counsel, I  13:14
21  respectfully decline to answer.  And I assert the  13:14
22  rights guaranteed to me under the Fifth Amendment to  13:14
23  the Constitution of the United States.        13:14
24      Q   And the sec-- -- and a later version of  13:14
25  Google's LiDar was called Grizzly Bear 2; correct?  13:14
```
                                                Page 115

Page 116:

```
 1      A   On the advice and direction of my counsel, I  13:14
 2  respectfully decline to answer.  And I assert the  13:14
 3  rights guaranteed to me under the Fifth Amendment to  13:14
 4  the Constitution of the United States.        13:14
 5      Q   And a still later version of LiDar at Google  13:14
 6  was Grizzly Bear 3; correct?                  13:15
 7      A   On the advice and direction of my counsel, I  13:15
 8  respectfully decline to answer.  And I assert the  13:15
 9  rights guaranteed to me under the Fifth Amendment to  13:15
10  the Constitution of the United States.        13:15
11      Q   And each of the development -- and the  13:15
12  development from each of the different versions of  13:15
13  LiDar at Google was a result of significant trial and  13:15
14  error work by Google engineers; correct?      13:15
15      A   On the advice and direction of my counsel, I  13:15
16  respectfully decline to answer.  And I assert the  13:15
17  rights guaranteed to me under the Fifth Amendment to  13:15
18  the Constitution of the United States.        13:15
19      Q   And the development of LiDar through Grizzly  13:15
20  Bear to Grizzly Bear 2 to Grizzly Bear 3 was the  13:15
21  result of significant investment of time and money by  13:15
22  Google; correct?                              13:15
23      A   On the advice and direction of my counsel, I  13:15
24  respectfully decline to answer.  And I assert the  13:15
25  rights guaranteed to me under the Fifth Amendment to  13:15
```
                                                Page 116

Page 117:

```
 1  the Constitution of the United States.        13:16
 2      Q   You are a named inventor on U.S. Patent  13:16
 3  Nos. 8,836,922 and 9,285,464; correct?        13:16
 4      MR. EHRLICH:  Counsel, can I just ask the --  13:16
 5  the date of those patent submissions, if that's the  13:16
 6  correct word, just so I can advise my client, if you  13:16
 7  know.                                         13:16
 8      MR. PERLSON:  It was while he was at Google,  13:16
 9  if that helps.                                13:16
10      MR. EHRLICH:  Okay.  That helps.          13:16
11      I'm going to advise you --                13:16
12      THE WITNESS:  Okay.                       13:16
13      MR. EHRLICH:  -- to assert your rights then.  13:16
14      THE WITNESS:  On the advice and direction of  13:16
15  my counsel, I respectfully de--- decline to answer.  13:16
16  And I assert the rights guaranteed to me under the  13:16
17  Fifth Amendment to the Constitution of the United  13:16
18  States.                                       13:16
19      MR. PERLSON:  Q.  You agree that you assigned  13:16
20  all your rights and interests to the -- in the  13:16
21  '922 patent and '464 patent to Google?        13:17
22      A   On the advice and direction of my counsel, I  13:17
23  respectfully decline to answer.  And I assert the  13:17
24  rights guaranteed to me under the Fifth Amendment to  13:17
25  the Constitution of the United States.        13:17
```
                                                Page 117

30 (Pages 114 - 117)

**Page 118**

```
1    Q  You are currently employed at Uber        13:17
2  Technologies, Inc.?                       13:17
3       MR. EHRLICH:  You can answer.          13:17
4       THE WITNESS:  Yes.             13:17
5       MR. PERLSON:  Q.  Uber is affiliated with   13:17
6  Ottomoto, LLC and Otto Trucking, LLC?        13:17
7       MS. RAY:  Objection; form.       13:17
8       MR. EHRLICH:  You can answer.         13:17
9       THE WITNESS:  Yes.             13:17
10      MR. PERLSON:  Q.  You were hired at Uber to   13:17
11 oversee its self-driving car technology; correct?   13:17
12      MR. EHRLICH:  I'm going to advise you to     13:17
13 assert your rights.                13:17
14      THE WITNESS:  On the advice and direction of  13:17
15 my counsel, I respectfully decline to answer.  And I  13:17
16 assert the rights guaranteed to me under the Fifth   13:17
17 Amendment to the Constitution of the United States.   13:18
18      MR. PERLSON:  I had a streak of        13:18
19 two questions.                13:18
20      THE WITNESS:  I know.  It was -- keep going.  13:18
21      MR. EHRLICH:  It's good.        13:18
22      THE WITNESS:  It's good.          13:18
23      MR. PERLSON:  Q.  The -- you agree that,     13:18
24 after you joined, Uber continued to develop its    13:18
25 self-driving car technology; correct?        13:18
```

**Page 119**

```
1    A  On the advice and direction of my counsel, I  13:18
2  respectfully decline to answer.  And I assert the   13:18
3  rights guaranteed to me under the Fifth Amendment to  13:18
4  the Constitution of the United States.      13:18
5    Q  You agree that you were involved in Uber's   13:18
6  decision-making process to continue developing its   13:18
7  self-driving car technology; correct?        13:18
8    A  On the advice and direction of my counsel, I  13:18
9  respectfully decline to answer.  And I assert the   13:18
10 rights guaranteed to me under the Fifth Amendment to  13:18
11 the Constitution of the United States.       13:18
12   Q  You agree that Uber began developing its     13:18
13 current self-driving car technology around the same   13:19
14 time you joined Uber; correct?          13:19
15      MS. RAY:  Objection to form.       13:19
16      MR. EHRLICH:  You can answer.         13:19
17      THE WITNESS:  Okay.           13:19
18      On the advice and direction of my counsel, I  13:19
19 respectfully decline to answer.  And I assert the   13:19
20 rights guaranteed to me under the Fifth Amendment to  13:19
21 the Constitution of the United States.       13:19
22      MR. PERLSON:  Q.  You have a leadership role  13:19
23 at Uber Technologies, Inc.; correct?        13:19
24   A  On the advice and direction of my counsel, I  13:19
25 respectfully decline to answer.  And I assert the   13:19
```

**Page 120**

```
1  rights guaranteed to me under the Fifth Amendment to  13:19
2  the Constitution of the United States.       13:19
3    Q  You have an equity interest in Uber         13:19
4  Technologies, Inc.; correct?          13:19
5    A  On the advice of my counsel, I respectively   13:19
6  decline to answer.  And I assert the rights guaranteed  13:19
7  to me under the Fifth Amendment to the Constitution of  13:19
8  the United States.             13:19
9    Q  You have an equity interest in Ottomoto, LLC;  13:19
10 correct?                 13:19
11   A  On the advice and direction of my counsel, I   13:19
12 respectfully decline to answer.  And I assert the    13:19
13 rights guaranteed to me under the Fifth Amendment to  13:19
14 the Constitution of the United States.       13:20
15   Q  You have an equity interest in Otto Trucking,  13:20
16 LLC; correct?               13:20
17   A  On the advice and direction of my counsel, I   13:20
18 respectfully decline to answer.  And I assert the    13:20
19 rights guaranteed to me under the Fifth Amendment to  13:20
20 the Constitution of the United States.       13:20
21   Q  While you were at Goo-- -- at Google, Google  13:20
22 employees had a duty to keep confidential information  13:20
23 of Google confidential; correct?         13:20
24   A  On the -- on the advice and direction of my   13:20
25 counsel, I respectfully decline to answer.  And I    13:20
```

**Page 121**

```
1  assert the rights guaranteed to me under the Fifth   13:20
2  Amendment to the Constitution of the United States.   13:20
3    Q  While you were at Google, Google required    13:20
4  employees to password protect their computers and    13:20
5  other hardware; correct?            13:20
6    A  On the advice and direction of my counsel, I   13:20
7  respectfully decline to answer.  And I assert the    13:20
8  rights guaranteed to me under the Fifth Amendment to  13:20
9  the Constitution of the United States.       13:21
10   Q  While you were at Google, Google's networks   13:21
11 and other storage repositories were password       13:21
12 protected; correct?             13:21
13   A  On the advice and direction of my counsel, I   13:20
14 respectfully decline to answer.  And I assert the    13:20
15 rights guaranteed to me under the Fifth Amendment to  13:20
16 the Constitution of the United States.       13:21
17   Q  While you were at Google, Google monitored    13:21
18 use and access to its devices and networks for      13:21
19 security purposes; correct?           13:21
20   A  On the advice and direction of my counsel, I   13:20
21 respectfully decline to answer.  And I assert the    13:20
22 rights guaranteed to me under the Fifth Amendment to  13:20
23 the Constitution of the United States.       13:21
24   Q  You understand that, while you were at       13:21
25 Google, Google maintained security software to prevent  13:21
```

31 (Pages 118 - 121)

ATTORNEYS EYES ONLY

```
 1  unauthorized access; correct?                    13:21
 2      A   On the advice and direction of my counsel, I   13:20
 3  respectfully decline to answer. And I assert the  13:20
 4  rights guaranteed to me under the Fifth Amendment to  13:20
 5  the Constitution of the United States.           13:22
 6      Q   While you were at Google, Google provided   13:22
 7  network security training to employees with access to  13:22
 8  networks?                                        13:22
 9      A   On the advice and direction of my counsel, I   13:22
10  respectfully decline to answer. And I assert the  13:22
11  rights guaranteed to me under the Fifth Amendment to  13:22
12  the Constitution of the United States.           13:22
13      Q   While you were at Google, Google generally   13:22
14  limited application access and network access    13:22
15  containing sensitive material to users with a need to  13:22
16  know; correct?                                   13:22
17      A   On the advice and direction of my counsel, I   13:20
18  respectfully decline to answer. And I assert the  13:22
19  rights guaranteed to me under the Fifth Amendment to  13:20
20  the Constitution of the United States.           13:22
21      Q   While you were at Google, Google had a policy   13:22
22  requiring its employees to safeguard its computer  13:22
23  networks and digital information; correct?       13:22
24      A   On the advice and direction of my counsel, I   13:20
25  respectfully decline to answer. And I assert the  13:20
```
Page 122

```
 1      A   On the --                                13:23
 2      Q   -- correct?                              13:24
 3      A   On the advice and direction of my counsel, I   13:20
 4  respectfully decline to answer. And I assert the  13:20
 5  rights guaranteed to me under the Fifth Amendment to  13:20
 6  the Constitution of the United States.           13:24
 7      Q   While you were at Google, Google's SVN server   13:24
 8  was limited to only those on a need-to-know basis?  13:24
 9      A   On the advice and direction of my counsel, I   13:20
10  respectfully decline to answer. And I assert the  13:20
11  rights guaranteed to me under the Fifth Amendment to  13:20
12  the Constitution of the United States.           13:24
13      Q   While you were at Google, the SVN server   13:24
14  required specialized software to access; correct?  13:24
15      A   On the advice and direction of my counsel, I   13:20
16  respectfully decline to answer. And I assert the  13:20
17  rights guaranteed to me under the Fifth Amendment to  13:20
18  the Constitution of the United States.           13:24
19      Q   While you were at Google, Google took    13:24
20  reasonable measures to protect the secrecy of its SVN  13:24
21  server; correct?                                 13:24
22      A   On the advice and direction of my counsel, I   13:24
23  respectfully decline to answer. And I assert the  13:24
24  rights guaranteed to me under the Fifth Amendment to  13:24
25  the Constitution of the United States.           13:24
```
Page 124

```
 1  rights guaranteed to me under the Fifth Amendment to  13:20
 2  the Constitution of the United States.           13:22
 3      Q   While you were at Google, Google had a policy   13:22
 4  against its employees accessing its digital      13:23
 5  information for reasons unrelated to business    13:23
 6  activities; correct?                             13:23
 7      A   On the advice and direction of my counsel, I   13:23
 8  respectfully decline to answer. And I assert the  13:23
 9  rights guaranteed to me under the Fifth Amendment to  13:23
10  the Constitution of the United States.           13:23
11      Q   While you were at Google, Google took    13:23
12  reasonable measures to protect the secrecy of its  13:23
13  networks and digital information; correct?       13:23
14      A   On the advice and direction of my counsel, I   13:23
15  respectfully decline to answer. And I assert the  13:20
16  rights guaranteed to me under the Fifth Amendment to  13:20
17  the Constitution of the United States.           13:23
18      Q   While you were at Google, Google's SVN server   13:23
19  was password protected?                          13:23
20      A   On the advice and direction of my counsel, I   13:20
21  respectfully decline to answer. And I assert the  13:20
22  rights guaranteed to me under the Fifth Amendment to  13:20
23  the Constitution of the United States.           13:23
24      Q   While you were at Google, Google's SVN server   13:23
25  was limited to only certain employees --         13:23
```
Page 123

```
 1      Q   Do you agree that Google Waymo outside    13:24
 2  vendors were generally required to sign nondisclosure  13:25
 3  statements?                                      13:25
 4      MS. RAY:  Objection; form.                   13:25
 5      THE WITNESS:  On the advice and direction of  13:25
 6  my counsel, I respectfully decline to answer. And I   13:25
 7  assert the rights guaranteed to me under the Fifth   13:25
 8  Amendment to the Constitution of the United States.  13:25
 9      MR. PERLSON:  Q.  Do you recall the passwords   13:25
10  to any of your Google computers?                 13:25
11      A   On the advice and direction of my counsel, I   13:20
12  respectfully decline to answer. And I assert the  13:20
13  rights guaranteed to me under the Fifth Amendment to  13:20
14  the Constitution of the United States.           13:25
15      Q   You owned a company and still own -- let me   13:25
16  start over again.                                13:25
17      While you were at Google and to this day, you   13:25
18  have an ownership interest in Dogwood Leasing;   13:25
19  correct?                                         13:25
20      A   On the advice and direction of my counsel, I   13:20
21  respectfully decline to answer. And I assert the  13:20
22  rights guaranteed to me under the Fifth Amendment to  13:20
23  the Constitution of the United States.           13:25
24      Q   Dogwood Leasing engages, and has engaged, in   13:25
25  business that relate to self-driving car technology?  13:26
```
Page 125

32 (Pages 122 - 125)

ATTORNEYS EYES ONLY

| | |
|---|---|
| 1 | A  On the advice and direction of my counsel, I   13:20 |
| 2 | respectfully decline to answer.  And I assert the   13:20 |
| 3 | rights guaranteed to me under the Fifth Amendment to   13:20 |
| 4 | the Constitution of the United States.   13:26 |
| 5 | Q  You employed Asheem Linval at Dogwood Leasing   13:26 |
| 6 | for self-driving car technology; correct?   13:26 |
| 7 | A  On the advice and direction of my counsel, I   13:20 |
| 8 | respectfully decline to answer.  And I assert the   13:20 |
| 9 | rights guaranteed to me under the Fifth Amendment to   13:20 |
| 10 | the Constitution of the United States.   13:26 |
| 11 | Q  You asked Mr. Linval to use confidential   13:26 |
| 12 | information he learned while at Google in connection   13:26 |
| 13 | with his work at Dogwood Leasing; correct?   13:26 |
| 14 | A  On the advice and direction of my counsel, I   13:20 |
| 15 | respectfully decline to answer.  And I assert the   13:20 |
| 16 | rights guaranteed to me under the Fifth Amendment to   13:20 |
| 17 | the Constitution of the United States.   13:27 |
| 18 | Q  You started Odin Wave while you were still   13:27 |
| 19 | working at Google?   13:27 |
| 20 | A  On the advice and direction of my counsel, I   13:20 |
| 21 | respectfully decline to answer.  And I assert the   13:20 |
| 22 | rights guaranteed to me under the Fifth Amendment to   13:20 |
| 23 | the Constitution of the United States.   13:27 |
| 24 | Q  You had to move the location of Odin Wave   13:27 |
| 25 | because you were concerned that Google may find out   13:27 |

Page 126

| | |
|---|---|
| 1 | respectfully decline to answer.  And I assert the   13:20 |
| 2 | rights guaranteed to me under the Fifth Amendment to   13:20 |
| 3 | the Constitution of the United States.   13:28 |
| 4 | Q  Were you involved in technology development   13:28 |
| 5 | at Odin Wave?   13:28 |
| 6 | A  On the advice and direction of my counsel, I   13:20 |
| 7 | respectfully decline to answer.  And I assert the   13:20 |
| 8 | rights guaranteed to me under the Fifth Amendment to   13:20 |
| 9 | the Constitution of the United States.   13:29 |
| 10 | Q  Were you paying individuals to work at   13:29 |
| 11 | Odin Wave?   13:29 |
| 12 | A  On the advice and direction of my counsel, I   13:29 |
| 13 | respectfully decline to answer.  And I assert the   13:29 |
| 14 | rights guaranteed to me under the Fifth Amendment to   13:29 |
| 15 | the Constitution of the United States.   13:29 |
| 16 | Q  Isn't it correct that Odin Wave ordered parts   13:29 |
| 17 | from ▇▇▇▇ that were similar to parts used by Google in   13:29 |
| 18 | its own LiDar system?   13:29 |
| 19 | A  On the advice and direction of my counsel, I   13:20 |
| 20 | respectfully decline to answer.  And I assert the   13:20 |
| 21 | rights guaranteed to me under the Fifth Amendment to   13:20 |
| 22 | the Constitution of the United States.   13:29 |
| 23 | Q  In 2013, ▇▇▇▇ called Google because it had an   13:29 |
| 24 | order from Odin Wave that was so similar to parts used   13:29 |
| 25 | by Google; correct?   13:29 |

Page 128

| | |
|---|---|
| 1 | about its existence?   13:27 |
| 2 | A  On the advice and direction of my counsel, I   13:20 |
| 3 | respectfully decline to answer.  And I assert the   13:20 |
| 4 | rights guaranteed to me under the Fifth Amendment to   13:20 |
| 5 | the Constitution of the United States.   13:27 |
| 6 | Q  You used Google confidential information at   13:27 |
| 7 | Odin Wave; correct?   13:27 |
| 8 | A  On the advice and direction of my counsel, I   13:20 |
| 9 | respectfully decline to answer.  And I assert the   13:20 |
| 10 | rights guaranteed to me under the Fifth Amendment to   13:20 |
| 11 | the Constitution of the United States.   13:28 |
| 12 | Q  Did you have an ownership interest in   13:28 |
| 13 | Odin Wave?   13:28 |
| 14 | A  On the advice and direction of my counsel, I   13:20 |
| 15 | respectfully decline to answer.  And I assert the   13:20 |
| 16 | rights guaranteed to me under the Fifth Amendment to   13:20 |
| 17 | the Constitution of the United States.   13:28 |
| 18 | Q  Did you have a managerial role at Odin Wave?   13:28 |
| 19 | A  On the advice and direction of my counsel, I   13:20 |
| 20 | respectfully dis- --- decline to answer.  And I assert   13:20 |
| 21 | the rights guaranteed to me under the Fifth Amendment   13:20 |
| 22 | to the Constitution of the United States.   13:28 |
| 23 | Q  Were you involved in the day-to-day   13:28 |
| 24 | operations at Odin Wave?   13:28 |
| 25 | A  On the advice and direction of my counsel, I   13:20 |

Page 127

| | |
|---|---|
| 1 | A  On the advice and direction of my counsel, I   13:20 |
| 2 | respectfully decline to answer.  And I assert the   13:20 |
| 3 | rights guaranteed to me under the Fifth Amendment to   13:20 |
| 4 | the Constitution of the United States.   13:30 |
| 5 | Q  And, because of this incident, Odin Wave   13:30 |
| 6 | moved to a different location to get distance from   13:30 |
| 7 | you; correct?   13:30 |
| 8 | A  On the advice and direction of my counsel, I   13:30 |
| 9 | respectfully decline to answer.  And I assert the   13:30 |
| 10 | rights -- the rights guaranteed to me under the Fifth   13:30 |
| 11 | Amendment to the Constitution of the United States.   13:30 |
| 12 | Q  Isn't it true that you were guiding Google   13:30 |
| 13 | towards an in-house KBR solution so that you could use   13:30 |
| 14 | that technology at Odin Wave?   13:30 |
| 15 | A  On the advice and direction of my counsel, I   13:20 |
| 16 | respectfully decline to answer.  And I assert the   13:20 |
| 17 | rights guaranteed to me under the Fifth Amendment to   13:20 |
| 18 | the Constitution of the United States.   13:30 |
| 19 | Q  You -- isn't it true that you directed   13:30 |
| 20 | Odin Wave to file patent applications on its   13:31 |
| 21 | technology development that stemmed from Google   13:31 |
| 22 | confidential information?   13:31 |
| 23 | A  On the advice and direction of my counsel, I   13:20 |
| 24 | respectfully decline to answer.  And I assert the   13:20 |
| 25 | rights guaranteed to me under the Fifth Amendment to   13:20 |

Page 129

33 (Pages 126 - 129)

**Page 130**

```
 1  the Constitution of the United States.        13:31
 2   Q  Odin Wave renamed itself to Tyto LiDAR;     13:31
 3  correct?                                 13:31
 4   A  On the advice and direction of my counsel, I  13:20
 5  respectfully decline to answer.  And I assert the   13:20
 6  rights guaranteed to me under the Fifth Amendment to  13:20
 7  the Constitution of the United States.        13:31
 8   Q  Odin Wave was renamed to Tyto LiDAR in order  13:31
 9  to conceal your involvement; correct?       13:31
10   A  On the advice and direction of my counsel, I  13:20
11  respectfully decline to answer.  And I assert the   13:20
12  rights guaranteed to me under the Fifth Amendment to  13:20
13  the Constitution of the United States.        13:31
14   Q  After the name change, Tyto -- Tyto LiDAR   13:31
15  continued in the same business with the same employees  13:31
16  as Odin Wave; correct?                   13:32
17   A  On the advice and direction of my counsel, I  13:20
18  respectfully decline to answer.  And I assert the   13:20
19  rights guaranteed to me under the Fifth Amendment to  13:20
20  the Constitution of the United States.        13:32
21   Q  You had an ownership interest in Tyto LiDAR;  13:32
22  correct?                                 13:32
23   A  On the advice and direction of my counsel, I  13:20
24  respectfully decline to answer.  And I assert the   13:20
25  rights granted to me under the Fifth Amendment to the  13:20
```

**Page 131**

```
 1  Constitution of the United States.          13:32
 2   Q  You had a managerial role at Tyto LiDAR;    13:32
 3  correct?                                 13:32
 4   A  On the advice and direction of my counsel, I  13:20
 5  respectfully decline to answer.  And I assert the   13:20
 6  rights guaranteed to me under the Fifth Amendment to  13:20
 7  the Constitution of the United States.        13:32
 8   Q  You were involved in the day-to-day        13:32
 9  operations of -- at Tyto LiDAR; correct?       13:32
10   A  On the advice and direction of my counsel, I  13:20
11  respectfully decline to answer.  And I assert the   13:20
12  rights granted to me under the Fifth Amendment to the  13:20
13  Constitution of the United States.          13:32
14   Q  You were involved in the technology       13:32
15  development at Tyto LiDAR; correct?          13:32
16   A  On the advice and direction of my counsel, I  13:20
17  respectfully decline to answer.  And I assert the   13:20
18  rights guaranteed to me under the Fifth Amendment to  13:20
19  the Constitution of the United States.        13:33
20   Q  You used Google -- start over.          13:33
21      You used information taken from -- let me    13:33
22  start over.                              13:33
23      You used confidential information taken from  13:33
24  Google in connection with your work at Tyto LiDAR;  13:33
25  correct?                                 13:33
```

**Page 132**

```
 1   A  On the advice and direction of my counsel, I  13:20
 2  respectfully decline to answer.  And I assert the   13:20
 3  rights granted to me under the Fifth Amendment to the  13:20
 4  Constitution of the United States.          13:33
 5   Q  You did not disclose your involvement with   13:33
 6  Tyto LiDAR to Google; correct?             13:33
 7   A  On the advice and direction of my counsel, I  13:33
 8  respectfully decline to answer.  And I assert the   13:33
 9  rights guaranteed to me under the Fifth Amendment to  13:33
10  the Constitution of the United States.        13:34
11   Q  And in fact, you joined a Google team that   13:34
12  visited Tyto facilities when [REDACTED]     13:34
    [REDACTED]               and you still did not tell Google that  13:34
14  you had an ownership interest in Tyto?       13:34
15   A  On the advice and direction of my counsel, I  13:34
16  respectfully decline to answer.  And I assert the   13:34
17  rights guaranteed to me under the Fifth Amendment to  13:34
18  the Constitution of the United States.        13:34
19   Q  You attempted to influence Google's        13:34
20  [REDACTED]                        even   13:34
21  though you did not disclose that you had an ownership  13:34
22  interest in Tyto LiDAR; correct?             13:34
23   A  On the advice and direction of my counsel, I  13:33
24  respectfully decline to answer.  And I assert the   13:33
25  rights guaranteed to me under the Fifth Amendment to  13:33
```

**Page 133**

```
 1  the Constitution of the United States.        13:33
 2   Q  You were positioning Tyto to [REDACTED]
    [REDACTED]                          [REDACTED]
    [REDACTED]          correct?                13:35
 6   A  On the advice and direction of my counsel, I  13:33
 7  respectfully decline to answer.  And I assert the   13:33
 8  rights guaranteed to me under the Fifth Amendment to  13:33
 9  the Constitution of the United States.        13:35
10   Q  You registered a domain name for 280 Systems  13:35
11  in November 2015; correct?                 13:35
12   A  On the advice and direction of my counsel, I  13:33
13  respectfully decline to answer.  And I assert the   13:33
14  rights guaranteed to me under the Fifth Amendment to  13:33
15  the Constitution of the United States.        13:35
16   Q  On February 11th, 2016, the corporation    13:35
17  restated its name and stock as 280 Systems, Inc.;   13:35
18  correct?                                 13:35
19   A  On the advice and direction of my counsel, I  13:35
20  respectfully decline to answer.  And I assert the   13:35
21  rights guaranteed to me under the Fifth Amendment to  13:35
22  the Constitution of the United States.        13:35
23   Q  On April 6, 2016, 280 Systems was re- ---   13:35
24  renamed Ottomoto, Inc.; correct?            13:36
25   A  On the advice and direction of my counsel, I  13:33
```

ATTORNEYS EYES ONLY

**Page 134**

1 respectfully decline to answer. And I assert the   13:33
2 rights guaranteed to me under the Fifth Amendment to   13:33
3 the Constitution of the United States.   13:36
4     THE WITNESS: Can we take a break? I just   13:36
5 want to fill up my water.   13:36
6     MR. PERLSON: Yeah.   13:36
7     THE VIDEOGRAPHER: Going off the record. The   13:36
8 time is 1:36.   13:36
9     (Recess taken.)   13:36
10     THE VIDEOGRAPHER: We are back on the record.   13:37
11 The time is 1:37.   13:37
12     MR. PERLSON: Q. Ottomoto acquired Tyto in   13:37
13 May 2016; correct?   13:37
14     A On the advice and direction of my counsel, I   13:33
15 respectfully decline to answer. And I assert the   13:33
16 rights guaranteed to me under the Fifth Amendment to   13:33
17 the Constitution of the United States.   13:37
18     Q In August 2016 Uber acquired Ottomoto?   13:37
19     A On the advice and direction of my counsel, I   13:33
20 respectfully decline to answer. And I assert the   13:33
21 rights guaranteed to me under the Fifth Amendment to   13:33
22 the Constitution of the United States.   13:38
23     Q Otto acquired Tyto LiDAR; correct?   13:38
24     A On the advice and direction of my counsel, I   13:33
25 respectfully decline to answer. And I assert the

**Page 135**

1 rights guaranteed to me under the Fifth Amendment to
2 the Constitution of the United States.
3     Q Otto acquired Tyto LiDAR in anticipation of
4 Otto being acquired by Uber; correct?
5     A On the advice and direction of my counsel, I   13:33
6 respectfully decline to answer. And I assert the   13:33
7 rights guaranteed -- granted to me under the Fifth   13:33
8 Amendment to the Constitution of the United States.   13:38
9     Q Uber directed Otto to acquire Tyto LiDAR;   13:38
10 correct?   13:39
11     A On the advice and direction of my counsel, I   13:33
12 respectfully decline to answer. And I assert the   13:33
13 rights guaranteed to me under the Fifth Amendment to   13:33
14 the Constitution of the United States.   13:39
15     Q Uber knew that you had been using Google   13:39
16 confidential information to develop Tyto LiDAR's   13:39
17 technology?   13:39
18     A On the advice and direction of my counsel, I   13:33
19 respectfully decline to answer. And I assert the   13:33
20 rights guaranteed to me under the Fifth Amendment to   13:33
21 the Constitution of the United States.   13:40
22     (Document marked Exhibit 25   13:40
23     for identification.)   13:40
24     MS. RAY: May I have a copy? Thank you.   13:40
25     MR. PERLSON: You've been handed what's been   13:40

**Page 136**

1 marked as Exhibit 25.   13:40
2     Q Do you recognize this document?   13:40
3     A On the advice and direction of my counsel, I   13:40
4 respectfully decline to answer. And I assert the   13:40
5 rights guaranteed to me under the Fifth Amendment to   13:40
6 the Constitution of the United States.   13:41
7     Q You agree that this is a schematic for Uber's   13:41
8 Fuji board; correct?   13:41
9     A On the device -- on the advice and direction   13:41
10 of my counsel, I respectfully decline to answer. And   13:41
11 I assert the rights guaranteed to me under the Fifth   13:41
12 Amendment to the Constitution of the United States.   13:41
13     Q Do you see that there are diodes in the   13:41
14 drawing on the far left?   13:41
15     A On the advice and direction of my counsel, I   13:41
16 respectfully decline to answer. And I assert the   13:41
17 rights guaranteed to me under the Fifth Amendment to   13:41
18 the Constitution of the United States.   13:41
19     Q The diodes are ████████████; correct?   13:41
20     A On the advice and direction of my counsel, I   13:41
21 respectfully decline to answer. And I assert the   13:41
22 rights guaranteed to me under the Fifth Amendment to   13:41
23 the Constitution of the United States.   13:42
24     Q D1_TX1 is the ████████████████ diode?   13:42
25     MR. EHRLICH: I don't know if it's possible   13:42

**Page 137**

1 to see. You can direct us, Counsel?   13:42
2     MR. PERLSON: Do we need to get a magnifying   13:42
3 glass?   13:42
4     MR. SCHMIDT: Yeah.   13:42
5     MR. PERLSON: Q. Well, let me ask it -- let   13:42
6 me ask it this way: In -- in Uber -- in Uber's Fuji   13:42
7 board, the diode D1_TX1 is the ████████████   13:42
8 diode?   13:43
9     A On the advice and direction of my counsel, I   13:43
10 respectfully decline to answer. And I assert the   13:43
11 rights guaranteed to me under the Fifth Amendment to   13:43
12 the Constitution of the United States.   13:43
13     Q And if the -- the next diode down is the   13:43
14 ████████████████ diode; correct?   13:43
15     A On the advice and direction of my counsel, I   13:43
16 respectfully decline to answer. And I assert the   13:43
17 rights guaranteed to me under the Fifth Amendment to   13:43
18 the Constitution of the United States.   13:43
19     Q The diodes on the board shown on the far left   13:43
20 are generally less ████████████   13:43
21 ████████████; correct?   13:43
22     A On the advice and direction of my counsel, I   13:43
23 respectfully decline to answer. And I assert the   13:43
24 rights guaranteed to me under the Fifth Amendment to   13:43
25 the Constitution of the United States.   13:44

35 (Pages 134 - 137)

**Page 138**

1    Q   The ▉▉▉▉▉ diodes on the board   13:44
2    on the -- shown on the upper left is ▉▉▉▉▉   13:44
3    ▉▉▉ diode from the ▉▉▉▉▉   13:44
4    A   On the advice and direction of my counsel, I   13:44
5    respectfully decline to answer.  And I assert the   13:44
6    rights guaranteed to me under the Fifth Amendment to   13:44
7    the Constitution of the United States.   13:44
8    Q   There is a ▉ between the ▉▉▉   13:44
9    ▉ diode from the ▉ correct?   13:44
10   A   On the advice and direction of my counsel, I   13:44
11   respectfully decline to answer.  And I assert the   13:44
12   rights guaranteed to me under the Fifth Amendment to   13:44
13   the Constitution of the United States.   13:44
14   Q   The ▉▉▉ the diodes ▉▉▉ as the   13:44
15   ▉▉▉ of the diode ▉▉▉   13:44
16   correct?   13:44
17   A   On the advice and direction of my counsel, I   13:44
18   respectfully decline to answer.  And I assert the   13:44
19   rights guaranteed to me under the Fifth Amendment to   13:44
20   the Constitution of the United States.   13:45
21   Q   The diodes on the ▉▉▉ are more ▉   13:45
22   ▉ the ▉▉▉ correct?   13:45
23   A   On the advice and direction of my counsel, I   13:45
24   respectfully decline to answer.  And I assert the   13:45
25   rights guaranteed to me under the Fifth Amendment to   13:45

**Page 139**

1    the Constitution of the United States.   13:45
2    Q   The diode ▉▉▉ shown on the board on the   13:45
3    far left was derived from ▉▉▉   13:45
4    ▉▉▉▉▉ correct?   13:45
5    A   On the advice and direction of my counsel, I   13:45
6    respectfully decline to answer.  And I assert the   13:45
7    rights guaranteed to me under the Fifth Amendment to   13:45
8    the Constitution of the United States.   13:45
9    Q   You used the confidential information you   13:45
10   learned at Google to derive the diode ▉▉▉ shown on   13:46
11   the board, on the upper left in Exhibit 25; correct?   13:46
12   A   On the advice and direction of my counsel, I   13:46
13   respectfully decline to answer.  And I assert the   13:46
14   rights guaranteed to me under the Fifth Amendment to   13:46
15   the Constitution of the United States.   13:46
16   Q   Uber would not have been able to have   13:46
17   developed the Fuji board shown on Exhibit 25 without   13:46
18   using the confidential information learned at Google   13:46
19   by you; correct?   13:46
20   A   On the advice and direction of my counsel, I   13:46
21   respectfully decline to answer.  And I assert the   13:46
22   rights guaranteed to me under the Fifth Amendment to   13:46
23   the Constitution of the United States.   13:47
24   Q   Uber would not have been able to have   13:47
25   developed the ▉▉▉ on the Fuji board shown on   13:47

**Page 140**

1    Exhibit 25, without reference to the 14,000 files you   13:47
2    downloaded in December 2015; correct?   13:47
3    A   On the advice and direction of my counsel, I   13:47
4    respectfully decline to answer.  And I assert the   13:47
5    rights guaranteed to me under the Fifth Amendment to   13:47
6    the Constitution of the United States.   13:47
7    Q   Uber is aware that the Fuji board shown on   13:47
8    Exhibit 25 has diode ▉▉▉ that is derived from the   13:47
9    confidential information you took from Google to Uber;   13:47
10   correct?   13:48
11      MS. RAY:  Objection; form.   13:48
12      MR. EHRLICH:  You can answer.   13:48
13      THE WITNESS:  On the advice and direction of   13:48
14   my counsel, I respectfully decline to answer.  And I   13:48
15   assert the rights guaranteed to me under the Fifth   13:48
16   Amendment to the Constitution of the United States.   13:48
17      MR. PERLSON:  Q.  ▉▉▉▉▉   13:48
18   ▉▉▉▉▉ that is reflected   13:48
19   in documents you took from Google, including the   13:48
20   14,000 files you downloaded in December 2015, is not   13:48
21   generally known; correct?   13:48
22   A   On the advice and direction of my counsel, I   13:48
23   respectfully decline to answer.  And I assert the   13:48
24   rights guaranteed to me under the Fifth Amendment to   13:48
25   the Constitution of the United States.   13:48

**Page 141**

1    Q   ▉▉▉▉▉   13:49
2    ▉▉▉▉▉ that is reflected in documents you   13:49
3    took from Google, including the 14,000 files you   13:49
4    downloaded in December 2015, has independent economic   13:49
5    value because it is not generally known; correct?   13:49
6    A   On the advice and direction of my counsel, I   13:49
7    respectfully decline to answer.  And I assert the   13:49
8    rights granted to me under the Fifth Amendment to the   13:49
9    Constitution of the United States.   13:49
10   Q   The diode ▉▉▉ that is reflected on   13:49
11   Exhibit 25, that was derived from information taken by   13:49
12   you from Google, reflects the diode ▉▉▉ that is   13:49
13   not generally known; correct?   13:49
14      MS. RAY:  Objection; form.   13:49
15      THE WITNESS:  On the advice and direction of   13:49
16   my counsel, I respectfully decline to answer.  And I   13:49
17   assert the rights guaranteed to me under the Fifth   13:49
18   Amendment to the Constitution of the United States.   13:50
19      MR. PERLSON:  Q.  Uber did not independently   13:50
20   develop the diode ▉▉▉, that is reflected on   13:50
21   Exhibit 25 in the upper left-hand corner of the first   13:50
22   page, on its own without reference to confidential   13:50
23   information taken from Google; correct?   13:50
24   A   On the advice and direction of my counsel, I   13:50
25   respectfully decline to answer.  And I assert the   13:50

36 (Pages 138 - 141)

**Page 142**

1  rights guaranteed to me under the Fifth Amendment to   13:50
2  the Constitution of the United States.   13:50
3      Do you want this one back?   13:51
4  Q  You can just keep it there.  Thanks.   13:51
5  A  Okay.   13:51
6      (Document marked Exhibit 26   13:51
7      for identification.)   13:51
8      THE VIDEOGRAPHER:  Five more minutes.   13:51
9      MR. PERLSON:  Okay.  Okay.   13:51
10  Q  You've been handed what's been marked as   13:51
11  Exhibit 26, which I'll represent was attached as   13:51
12  Exhibit B to the Haslim declaration submitted by Uber.   13:51
13      This document reflects the PCB configuration   13:51
14  and diode layout for the Fuji system, corresponding to   13:51
15  the sys-- -- the system shown in Exhibit 25; is that   13:52
16  correct?   13:52
17  A  On the advice and direction of my counsel, I   13:52
18  respectfully decline to answer.  And I assert the   13:52
19  rights guaranteed to me under the Fifth Amendment to   13:52
20  the Constitution of the United States.   13:51
21  Q  Exhibit 26 shows the Fuji LiDAR system has   13:52
22  ▆ PCBs; correct?   13:52
23  A  On the advice and direction of my counsel, I   13:52
24  respectfully decline to answer.  And I assert the   13:52
25  rights guaranteed to me under the Fifth Amendment to   13:52

**Page 143**

1  the Constitution of the United States.   13:53
2  Q  The ▆ PCBs shown on Exhibit 26 are similar   13:53
3  to the PCB drawing we saw in Exhibit 25; correct?   13:53
4  A  On the advice and direction of my counsel, I   13:53
5  respectfully decline to answer.  And I assert the   13:53
6  rights guaranteed to me under -- under the Fifth   13:53
7  Amendment to the Constitution of the United States.   13:53
8  Q  ▆ PCBs on Exhibit 26 show ▆▆▆▆▆▆
   ▆▆▆▆▆▆▆▆▆▆▆▆ correct?   13:53
10  A  On the advice and direction of my counsel, I   13:53
11  respectfully decline to answer.  And I assert the   13:53
12  rights guaranteed to me under the Fifth Amendment to   13:53
13  the Constitution of the United States.   13:54
14  Q  The PCB configuration, and diode arrangement   13:54
15  shown on Exhibit 26, was developed using Google   13:54
16  confidential information; correct?   13:54
17  A  On the advice and direction of my counsel, I   13:54
18  respectfully decline to answer.  And I assert the   13:54
19  rights guaranteed to me under the Fifth Amendment to   13:54
20  the Constitution of the United States.   13:54
21  Q  The PCB configuration and diode arrangement   13:54
22  shown on Exhibit 26 was developed using Google   13:54
23  confidential information reflected in documents   13:54
24  downloaded by you in December 2015; correct?   13:54
25  A  On the advice and direction of my counsel, I

**Page 144**

1  respectfully decline to answer.  And I assert the   13:54
2  rights guaranteed to me under the Fifth Amendment to   13:54
3  the Constitution of the United States.   13:54
4  Q  Uber would not have been able to have   13:55
5  developed the PCB configuration and diode arrangement   13:55
6  shown in Exhibit 26 without reference to Google   13:55
7  confidential information taken by you, including   13:55
8  documents downloaded by you in December 2015?   13:55
9  A  On the advice and direction of my counsel, I   13:55
10  respectfully decline to answer.  And I assert the   13:55
11  rights guaranteed to me under the Fifth Amendment to   13:55
12  the Constitution of the United States.   13:55
13      MR. PERLSON:  He has to change the tape.   13:55
14      THE WITNESS:  Okay.   13:55
15      THE VIDEOGRAPHER:  Okay.  We are going off   13:55
16  the record.  The time is 1:55.   13:55
17      (Recess taken.)   13:55
18      THE VIDEOGRAPHER:  This marks the   13:58
19  deposition -- or excuse me.   14:06
20      This marks the beginning of DVD No. 3 in the   14:06
21  deposition of Anthony Levandowski.   14:06
22      Going back on the record.  The time is 2:06.   14:06
23      MR. PERLSON:  Q.  Would you agree that the --   14:06
24  let me start over again.   14:06
25      Isn't it correct that the PCB configuration   14:06

**Page 145**

1  and diode arrangement that is reflected in the   14:06
2  documents you downloaded from Google in 2015, and are   14:06
3  used in the configuration shown at Exhibit 26, are not   14:06
4  generally known?   14:07
5  A  On the advice and direction of my counsel, I   14:07
6  respectfully decline to answer.  And I assert the   14:07
7  rights guaranteed to me under the Fifth Amendment to   14:07
8  the Constitution of the United States.   14:07
9  Q  Isn't it correct that the PCB configuration,   14:07
10  and diode arrangement that is reflected in the   14:07
11  documents you downloaded from Google in December 2015   14:07
12  are -- then are used in configuration -- let me start   14:07
13  over again.   14:07
14      Isn't it correct that the PCB configuration   14:07
15  and diode arrangement, that is reflected in the Google   14:07
16  documents you downloaded from Google on December --   14:07
17  December 2015, and are used in the configuration shown   14:07
18  at Exhibit 26 derive -- have independent economic   14:08
19  value by virtue of their not being publicly known?   14:08
20  A  On the advice and direction of my counsel, I   14:08
21  respectfully decline to answer.  And I assert the   14:08
22  rights guaranteed to me under the Fifth Amendment to   14:08
23  the Constitution of the United States.   14:08
24  Q  If you can refer back to Exhibit 25, please.   14:08
25  A  (Witness complies.)   14:08

37 (Pages 142 - 145)

ATTORNEYS EYES ONLY

```
 1   Q  For the record, Exhibit 25 is UBER000727.  It   14:08
 2   looked like that got cut off when it was printed.      14:08
 3       In the drawing on the far left of Exhibit 25,    14:09
 4   there are  diodes███████████ of the     14:09
 5   board.                          14:09
 6       Do you see that?                14:09
 7   A  That's your question?          14:09
 8   Q  Yeah.                          14:09
 9   A  Okay.                          14:09
10       On the advice and direction of my counsel, I   14:09
11   respectfully decline to answer.  And I assert the    14:09
12   rights guaranteed to me under the Fifth Amendment to  14:09
13   the Constitution of the United States.               14:09
14   Q  The diodes shown on the drawing on the far    14:09
15   left of Exhibit 25████████████         14:09
16   correct?                         14:10
17   A  On the advice and direction of my counsel, I   14:10
18   respectfully decline to answer.  And I assert the    14:10
19   rights guaranteed to me under the Fifth Amendment to  14:10
20   the Constitution of the United States.               14:10
21   Q  You would agree that the ███████ the diodes   14:10
22   in the Fuji board are ███████████████████  14:10
23   ██████████                       14:10
24   A  On the advice and direction of my counsel, I   14:10
25   respectfully decline to answer.  And I assert the    14:10
                                              Page 146
```

```
 1   rights guaranteed to me under the Fifth Amendment to  14:10
 2   the Constitution of the United States.               14:10
 3   Q  You agree that, in the Fuji system, that each   14:10
 4   of the diodes have a █████ placed in █████ them?     14:10
 5   A  On the advice and direction of my counsel, I   14:10
 6   respectfully decline to answer.  And I assert the    14:10
 7   rights guaranteed to me under the Fifth Amendment to  14:10
 8   the Constitution of the United States.               14:11
 9   Q  Isn't it correct that, in the Fuji system,   14:11
10   ██████ of the diodes have a ███████████ placed in   14:11
11   ████ them?                       14:11
12   A  On the advice and direction of my counsel, I   14:11
13   respectfully decline to answer.  And I assert the    14:11
14   rights guaranteed to me under the Fifth Amendment to  14:11
15   the Constitution of the United States.               14:11
16   Q  Isn't it correct that the light emitted from   14:11
17   the diodes is ██████████████ in the Fuji system?   14:11
18   A  On the advice and direction of my counsel, I   14:11
19   respectfully decline to answer.  And I assert the    14:11
20   rights guaranteed to me under the Fifth Amendment to  14:11
21   the Constitution of the United States.               14:12
22   Q  Isn't it correct that the placement of the   14:12
23   diodes, as shown on Exhibit 25 -- let me start over   14:12
24   again.                          14:12
25       Isn't it correct that the placement of the   14:12
                                              Page 147
```

```
 1   diodes, ███████████████████ was derived   14:12
 2   from Google confidential information reflected among   14:12
 3   the 14,000 documents you downloaded in December 2015?  14:12
 4   A  On the advice and direction of my counsel, I   14:12
 5   respectfully decline to answer.  And I assert the    14:12
 6   rights guaranteed to me under the Fifth Amendment to  14:12
 7   the Constitution of the United States.               14:12
 8   Q  Isn't it correct that the placement of the   14:12
 9   diodes, ███████████████████, would not   14:12
10   have been able to be developed by Uber without use of  14:13
11   the Google confidential information reflected among   14:13
12   the 14,000 documents you downloaded from Google in    14:13
13   December 2015?                   14:13
14   A  On the advice and direction of my counsel, I   14:13
15   respectfully decline to answer.  And I assert the    14:13
16   rights guaranteed to me under the Fifth Amendment to  14:13
17   the Constitution of the United States.               14:13
18   Q  Isn't it correct that the placement of the   14:13
19   diodes ██████████████ is a     14:13
20   placement that is not publicly known?                14:13
21   A  On the advice and direction of my counsel, I   14:13
22   respectfully decline to answer.  And I assert the    14:13
23   rights guaranteed to me under the Fifth Amendment to  14:13
24   the Constitution of the United States.               14:14
25   Q  Isn't it correct that the placement of the   14:14
                                              Page 148
```

```
 1   diodes, █████████████████, is a   14:14
 2   placement that has economic value because it is not   14:14
 3   publicly known?                  14:14
 4   A  On the advice and direction of my counsel, I   14:14
 5   respectfully decline to answer.  And I assert the    14:14
 6   rights guaranteed to me under the Fifth Amendment to  14:14
 7   the Constitution of the United States.               14:14
 8   Q  If you could please turn to the --          14:14
 9       MR. PERLSON:  It's this one; right?        14:14
10       MR. SCHMIDT:  Yeah.                    14:14
11       MR. PERLSON:  Q.  The second page of       14:14
12   Exhibit 25.                     14:14
13   A  (Witness complies.)             14:14
14   Q  Do you see that there are ████ on the       14:14
15   █████████████████ in the middle of the page   14:15
16   annotated with a 12?             14:15
17       MR. EHRLICH:  He's just asking if you see it   14:15
18   now.  You can answer that.  Just, do you see --      14:15
19       THE WITNESS:  I do see --              14:15
20       MR. EHRLICH:  -- what he's referencing?    14:15
21       THE WITNESS:  I see that he's pointing at    14:15
22   ████████████████████████          14:15
23       MR. EHRLICH:  Okay.                   14:15
24       THE WITNESS:  And there's a legend that says:  14:15
25   ██████████████████████           14:15
                                              Page 149
```

38 (Pages 146 - 149)



Page 150

1    MR. EHRLICH:  Okay.                    14:15
2    MR. PERLSON:  Q.  And the legend        14:15
3  corresponding to the annotation for 12 shows:   14:15
4                          ████████        14:15
5    Do you see that?                      14:15
6    A  Yes, I do see that.                 14:15
7    Q  And it says that the ████████       14:16
8  ████████ on Exhibit 25, second page, underneath that   14:16
9  says:                                   14:16
10  ████████████████████████             14:16
   ████████████████████████             14:16
13    Do you see that it says that?         14:16
14    A  Yep, I do.  I can read that.        14:16
15    Q  And then, underneath ████████      14:16
16  ████ it says:                          14:16
17  ████████████████████                 14:16
18  ████████                              14:16
19    Do you see that?                     14:16
20    A  I -- I see the text, yes.          14:16
21    Q  And then, underneath that, it says:   14:16
22  ████████████████████                 14:16
23  ████████████                         14:16
24    MR. EHRLICH:  Or ████████            14:17
25    THE WITNESS:  They're mils, not millimeters.   14:17

Page 151

1    MR. PERLSON:  Mils.  Okay.  Mils.      14:17
2    Q  So, when I said millimeter before, those are   14:17
3  mils?                                   14:17
4    A  Right, mils.                        14:17
5    MR. EHRLICH:  And you see that?        14:17
6    THE WITNESS:  I do see that, yes.      14:17
7    MR. EHRLICH:  Okay.                    14:17
8    MR. PERLSON:  Q.  And, is the ████████ for   14:17
9  the -- and -- let me start over again.   14:17
10  The ████████ as reflected on           14:17
11  the second page of Exhibit 25, is an accurate   14:17
12  reflection of the Fuji board at Uber?   14:17
13    A  On the advice and direction of my counsel, I   14:17
14  respectfully decline to answer.  And I assert the   14:17
15  rights guaranteed to me under the Fifth Amendment to   14:17
16  the Constitution of the United States.   14:17
17    Q  And you would agree that the ████ annotation   14:17
18  is referring to ████ in the PCBs for    14:18
19  correct?                               14:18
20    A  On the advice and direction of my counsel, I   14:18
21  respectfully decline to answer.  And I assert the   14:18
22  rights guaranteed to me under the Fifth Amendment to   14:18
23  the Constitution of the United States.   14:18
24    Q  The ████████ annotation is referring to ████ in   14:18
25  the PCB for ████████ correct?           14:18

Page 152

1    A  On the advice and direction of my counsel, I   14:18
2  respectfully decline to answer.  And I assert rights   14:18
3  guaranteed to me under the Fifth Amendment to the   14:18
4  Constitution of the United States.       14:18
5    Q  ████████████████████████████     14:18
   ████████████████████ ████            14:18
   ████████ correct?                     14:19
10    A  Excuse me.                         14:19
11    On the advice and direction of my counsel, I   14:19
12  respectfully decline to answer.  And I assert the   14:19
13  rights guaranteed to me under the Fifth Amendment to   14:19
14  the Constitution of the United States.   14:19
15    Q  And, it is correct, as it says next to the   14:19
16  ████████ on the legend, that:          14:19
17  ████████████████████████             14:19
18                                        14:19
19    A  What's the question?               14:19
20    And it is correct...                  14:19
21    On the advice and direction of my counsel, I   14:19
22  respectfully decline to answer.  And I assert the   14:19
23  rights guaranteed to me under the Fifth Amendment to   14:19
24  the Constitution of the United States.   14:20
25    Q  And it is true that the dimensions reflected   14:20

Page 153

1  on the second page of Exhibit 25 for the ████████   14:20
2  ████ was derived from Google confidential information;   14:20
3  correct?                               14:20
4    A  On the advice and direction of my counsel, I   14:20
5  respectfully decline to answer.  And I assert the   14:20
6  right -- the rights guaranteed to me under the Fifth   14:20
7  Amendment to the Constitution of the United States.   14:20
8    Q  And you would agree, that the use of the   14:20
9  ████ for ████████ is derived from Google   14:21
10  confidential information; is that correct?   14:21
11    A  On the advice and direction of my counsel, I   14:21
12  respectfully decline to answer.  And I assert the   14:21
13  rights guaranteed to me under the Fifth Amendment to   14:21
14  the Constitution of the United States.   14:21
15    Q  And you would agree that the use of the ████   14:21
16  for ████████ reflected in Exhibit 25, page 2, was   14:21
17  derived from confidential information downloaded from   14:21
18  you from Google in December 2015; correct?   14:22
19    A  On the advice and direction of my counsel, I   14:22
20  respectfully decline to answer.  And I assert the   14:22
21  rights guaranteed to me under the Fifth Amendment to   14:22
22  the Constitution of the United States.   14:22
23    Q  And you would agree that, without the   14:22
24  confidential information you downloaded from Google in   14:22
25  December 2015, Uber would not have been able to have   14:22

39 (Pages 150 - 153)

**ATTORNEYS EYES ONLY**

```
 1  designed a system ███████            ███████
 2  correct?                        14:22
 3      A  On the advice and direction of my counsel, I  14:22
 4  respectfully decline to answer.  And I assert the  14:22
 5  rights guaranteed to me under the Fifth Amendment to  14:22
 6  the Constitution of the United States.         14:22
 7      Q  And you agree that ███████████
 8  ██████ that was derived from Google's confidential  14:23
 9  information, and reflected in Exhibit 25 on the second  14:23
10  page, is not commonly known?            14:23
11      A  On the advice and direction of my counsel, I  14:23
12  respectfully decline to answer.  And I assert the  14:23
13  rights guaranteed to me under the Fifth Amendment to  14:23
14  the Constitution of the United States.         14:23
15      Q  And, you would agree that ███████████
16  ██████████  that was derived from Google  14:23
17  confidential information, and reflected in Exhibit 25  14:23
18  on the second page, has economic value because it is  14:23
19  not commonly known?                14:23
20      A  On the advice and direction of my counsel, I  14:23
21  respectfully decline to answer.  And I assert the  14:23
22  rights guaranteed to me under the Fifth Amendment to  14:23
23  the Constitution of the United States.         14:24
24      Q  It's correct that you attended a meeting at  14:24
25  Uber's headquarters in mid-January 2016?        14:24
                                        Page 154
```

```
 1      A  On the advice and direction of my counsel, I  14:24
 2  respectfully decline to answer.  And I assert the  14:24
 3  rights guaranteed to me under the Fifth Amendment to  14:24
 4  the Constitution of the United States.         14:24
 5      Q  At this mid-January 2016 meeting, you  14:24
 6  discussed Uber potentially acquiring the new venture  14:24
 7  you were planning; correct?            14:24
 8      A  On the advice and direction of my counsel, I  14:24
 9  respectfully decline to answer.  And I assert the  14:24
10  rights guaranteed to me under the Fifth Amendment to  14:24
11  the Constitution of the United States.         14:24
12      Q  And, at this meeting in mid-January 2016, you  14:24
13  discussed the technology that Uber would be able to  14:24
14  acquire if it bought your new venture; correct?  14:24
15      A  On the advice and direction of my counsel, I  14:25
16  respectfully decline to answer.  And I assert the  14:25
17  rights guaranteed to me under the Fifth Amendment to  14:25
18  the Constitution of the United States.         14:25
19      Q  You met with Brian McClendon at Uber in the  14:25
20  summer of 2015; correct?            14:25
21      A  On the advice and direction of my counsel, I  14:25
22  respectfully decline to answer.  And I assert the  14:25
23  rights guaranteed to me under the Fifth Amendment to  14:25
24  the Constitution of the United States.         14:25
25      Q  You discussed sharing Google's confidential  14:25
                                        Page 155
```

```
 1  information with Uber at your meeting in -- with Brian  14:25
 2  McClendon in the summer of 2015; correct?      14:25
 3      A  On the advice and direction of my counsel, I  14:25
 4  respectfully decline to answer.  And I assert the  14:25
 5  rights guaranteed to me under the Fifth Amendment to  14:25
 6  the Constitution of the United States.         14:25
 7      Q  By at least January 2016, you understood that  14:25
 8  Uber was already interested in investing or acquiring  14:25
 9  the new company you were founding?         14:26
10      A  On the advice and direction of my counsel, I  14:26
11  respectfully decline to answer.  And I assert the  14:26
12  rights guaranteed to me under the Fifth Amendment to  14:26
13  the Constitution of the United States.         14:26
14      Q  You agree that Uber -- let me start over  14:26
15  again.                          14:26
16      You agree that Uber's LiDar lens designs are  14:26
17  derived from Google confidential information that you  14:26
18  took from Google?                14:26
19      A  On the advice and direction of my counsel, I  14:26
20  respectfully decline to answer.  And I assert the  14:26
21  rights guaranteed to me under the Fifth Amendment to  14:26
22  the Constitution of the United States.         14:26
23      Q  You agree that Uber would not have been able  14:26
24  to have developed its Li- -- LiDar lens designs  14:26
25  without using the confidential information that you  14:26
                                        Page 156
```

```
 1  took from Google?                 14:26
 2      A  On the advice and direction of my counsel, I  14:26
 3  respectfully decline to answer.  And I assert the  14:26
 4  rights guaranteed to me under the Fifth Amendment to  14:26
 5  the United States Constitution.            14:27
 6      Q  You agree that, without the use of  14:27
 7  information reflected in the 14,000 documents you  14:27
 8  downloaded in December 2015, Uber would not have been  14:27
 9  able to develop its own LiDar lens design; correct?  14:27
10      A  On the advice and direction of my counsel, I  14:27
11  respectfully decline to answer.  And I assert the  14:27
12  rights guaranteed to me under the Fifth Amendment to  14:27
13  the Constitution of the United States.         14:27
14      Q  Uber's LiDar laser design was designed using  14:27
15  Google's confidential information, including  14:27
16  information contained in the 14,000 documents you  14:27
17  downloaded from Google in 2015; correct?        14:28
18      A  On the advice and direction of my counsel, I  14:28
19  respectfully decline to answer.  And I assert the  14:28
20  rights guaranteed to me under the Fifth Amendment to  14:28
21  the Constitution of the United States.         14:28
22      Q  The number and configuration of LiDar lasers  14:28
23  in Uber's system is derived from Google confidential  14:28
24  information you took, including information in the  14:28
25  14,000 files you downloaded in December 2015?   14:28
                                        Page 157
```

40 (Pages 154 - 157)

**Page 158**

1    A    On the advice and direction of my counsel, I    14:28
2    respectfully decline to answer.  And I assert the    14:28
3    rights guaranteed to me under the Fifth Amendment to    14:28
4    the Constitution of the United States.    14:28
5    Q    The pulse rate of Uber's LiDar lasers is    14:28
6    derived from confidential information you took from    14:28
7    Google, including in the 14,000 files you    14:28
8    downloaded in 2015; correct?    14:29
9    A    On the advice and direction of my counsel, I    14:29
10   respectfully decline to answer.  And I assert the    14:29
11   rights guaranteed to me under the Fifth Amendment to    14:29
12   the Constitution of the United States.    14:29
13   Q    Uber's LiDar optical cavity design is derived    14:29
14   from confidential information that you took from    14:29
15   Google, including 14,000 files you downloaded in    14:29
16   December 2015; correct?    14:29
17   A    On the advice and direction of my counsel, I    14:29
18   respectfully decline to answer.  And I assert the    14:29
19   rights guaranteed to me under the Fifth Amendment to    14:29
20   the Constitution of the United States.    14:29
21   Q    You agree that ████████████████    14:29
22   ████████████████████████    14:29
23   used by Uber, is derived from confidential information    14:30
24   that you took from Google, including the 14,000 files    14:30
25   you downloaded in December 2015; correct?    14:30

**Page 159**

1    A    On the advice and direction of my counsel, I    14:30
2    respectfully decline to answer.  And I assert the    14:30
3    rights guaranteed to me under the Fifth Amendment to    14:30
4    the Constitution of the United States.    14:30
5    Q    Did you discuss the substance of your    14:30
6    testimony at all with counsel during any breaks in    14:30
7    today's deposition?    14:30
8         MR. EHRLICH:  I'm going to object on    14:30
9    attorney-client privilege grounds.    14:30
10        And, to the extent it's not covered by    14:30
11   privilege, I'm going to direct you to assert your    14:31
12   constitutional rights.    14:31
13        THE WITNESS:  On the advice --    14:31
14        MR. EHRLICH:  Go ahead.    14:31
15        THE WITNESS:  -- and direction of my counsel,    14:31
16   I respectfully decline to answer.  And I assert the    14:31
17   rights guaranteed to me under the Fifth Amendment to    14:31
18   the Constitution of the United States.    14:31
19        MR. PERLSON:  Well, so are you instruct -- so    14:31
20   I -- I am just asking a yes-or-no question first.    14:31
21   Q    Did you discuss the substance of your    14:31
22   testimony today with counsel during any breaks in    14:31
23   today's deposition?    14:31
24        It's a yes-or-no question.    14:31
25        MR. EHRLICH:  Let me?    14:31

**Page 160**

1         THE WITNESS:  Maybe I --    14:31
2         MR. EHRLICH:  Yeah, yeah, yeah.    14:31
3         I do think that calls for attorney-client    14:31
4    privileged information.  I'm going to instruct him not    14:31
5    to answer.    14:31
6         MR. PERLSON:  Okay.  Have you read    14:31
7    Judge Alsup's rules regarding this?    14:31
8         MR. EHRLICH:  Candidly, I have not read.  If    14:32
9    there's a rule directly on point, I have not.    14:32
10        MR. PERLSON:  Well, why don't we take a    14:32
11   break, and you can read the rule.    14:32
12        MR. EHRLICH:  Okay.  We can do that.    14:32
13        THE VIDEOGRAPHER:  We are going off the    14:32
14   record.  The time is 2:31.    14:32
15        (Recess taken.)    14:32
16        THE VIDEOGRAPHER:  We are back on the record.    14:43
17   The time is 2:42.    14:43
18        MR. EHRLICH:  So --    14:43
19        MR. PERLSON:  Go ahead.    14:43
20        MR. EHRLICH:  So, I've now had a chance to    14:43
21   read the order.  I can -- I do think the question    14:43
22   calls for attorney-client privileged information, and    14:43
23   I'm going to instruct him not to answer.    14:43
24        But, as an Officer of the Court, I will    14:43
25   represent there was no discussion between    14:43

**Page 161**

1    Mr. Levandowski and either Mr. Ramsey or myself about    14:43
2    the substance of his testimony, period.    14:43
3         There was, however, very brief discussion    14:43
4    between Mr. Levandowski and counsel for Uber, limited    14:43
5    to the subject of his employment history, prior to his    14:43
6    employment at Google.    14:43
7         MS. RAY:  And, to make clear, it had nothing    14:43
8    to do -- we did not discuss your questioning at all.    14:43
9    I asked some informational questions --    14:44
10        MR. EHRLICH:  That's correct.    14:44
11        MS. RAY:  -- of Mr. Levandowski.    14:44
12        MR. EHRLICH:  There -- there was no    14:44
13   discussion about answers he gave or questions you had    14:44
14   asked up to that point in the deposition.    14:44
15        MR. PERLSON:  Okay.    14:44
16        MR. EHRLICH:  And that, other than that very    14:44
17   brief discussion, there's been no further    14:44
18   communication at all.    14:44
19        MR. PERLSON:  And who was -- who specifically    14:44
20   was involved in that discussion?    14:44
21        MR. EHRLICH:  The discussion with    14:44
22   Mr. Levandowski and Uber's counsel was with Ms. Ray.    14:44
23   I believe I was listening.  Mr. Ramsey may have been    14:44
24   present.  And I'm not sure if there was anyone else    14:44
25   there at the time.    14:44

41 (Pages 158 - 161)

1    MS. RAY:  It was less than a couple of    14:44
2  minutes, and it was a factual clarification.  Not    14:44
3  related to your questioning; related to my    14:44
4  understanding of something.    14:44
5    MR. PERLSON:  Okay.    14:44
6    MR. EHRLICH:  So, thank you for letting me    14:44
7  clarify the record.    14:44
8    MR. PERLSON:  Okay.    14:44
9  Q  The -- did you do anything to look for    14:44
10  documents in relation to this deposition,    14:45
11  Mr. Levandowski?    14:45
12    MR. EHRLICH:  I'm going to instruct you to    14:45
13  use this one.  Assert your rights.    14:45
14    THE WITNESS:  On the advice and direction of    14:45
15  my counsel, I respectfully decline to answer.  And I    14:45
16  assert the rights guaranteed to me under the Fifth    14:45
17  Amendment to the Constitution of the United States.    14:45
18    MR. PERLSON:  Q.  Do you have documents    14:45
19  responsive to the subpoena document requests that we    14:45
20  propounded on you?    14:45
21    MR. PERLSON:  I'm going to direct    14:45
22  Mr. Levandowski to assert his rights.    14:45
23    But I can address that, if you would like me    14:45
24  to, on the record.    14:45
25    MR. PERLSON:  I would, but I --    14:45

Page 162

1    THE WITNESS:  Okay.    14:45
2    MR. PERLSON:  Why don't you do this first.    14:45
3    THE WITNESS:  Yeah.    14:46
4    On the advice and direction of my counsel, I    14:46
5  respectfully decline to answer.  And I assert the    14:46
6  rights guaranteed to me under the Fifth Amendment to    14:46
7  the Constitution of the United States.    14:46
8    MR. EHRLICH:  And, Counsel, to address that,    14:46
9  we have been searching, racing as fast as possible to    14:46
10  search in every location we can come up with, that may    14:46
11  have responsive documents.    14:46
12    As of this morning, when we appeared for the    14:46
13  deposition, we have not located any responsive    14:46
14  non-privileged documents.  We are continuing to    14:46
15  search, of course.    14:46
16    And, as Counsel knows, Judge Alsup has    14:46
17  ordered us to produce in-camera a log identifying any    14:46
18  documents that are responsive at all to which we    14:46
19  assert any privileges.  And we will certainly comply    14:46
20  with that order on Wednesday.    14:47
21    But, as of today, there are no responsive    14:47
22  non-privileged documents that we have located.    14:47
23    MR. PERLSON:  Okay.  And, when you say    14:47
24  "non-privileged," that obviously includes the Fifth    14:47
25  Amendment privilege?    14:47

Page 163

1    MR. EHRLICH:  Correct.  It does include the    14:47
2  Fifth Amendment, as well as other -- as    14:47
3  attorney-client privilege.  But, primarily, the issue    14:47
4  at hand is the -- is the Fifth Amendment privilege as    14:47
5  well.    14:47
6    MR. PERLSON:  And the Fifth Amendment is    14:47
7  being asserted by Mr. Levandowski as to the document    14:47
8  requests as modified by the judge at the hearing on    14:47
9  Wednesday; is that correct?    14:47
10    MR. EHRLICH:  Correct.  We -- as we made    14:47
11  clear at the hearing, we intend to assert    14:47
12  Mr. Levandowski's Fifth Amendment privilege broadly as    14:47
13  against any active production that would be covered    14:47
14  under the Hubbel [sic] line of cases.    14:47
15    And so, that is something -- the -- the    14:47
16  standard practice for Fifth Amendment privilege is to    14:48
17  make an in-camera showing so the judge could evaluate    14:48
18  whether the privilege is being asserted properly or    14:48
19  not, and we intend to do that.    14:48
20    MR. PERLSON:  Okay.  Well, we don't need to    14:48
21  talk further about that on the record.    14:48
22    MR. EHRLICH:  Thank you.    14:48
23    MR. PERLSON:  I think that's it --    14:48
24    MR. EHRLICH:  Okay.    14:48
25    MR. PERLSON:  -- from us.    14:48

Page 164

1    MS. RAY:  I have some questions.  May I    14:48
2  switch seats with you?    14:48
3    MR. PERLSON:  Sure.    14:48
4    THE VIDEOGRAPHER:  Shall we go off the record    14:48
5  to do this?    14:48
6    MS. RAY:  Sure.    14:48
7    THE VIDEOGRAPHER:  We are going off the    14:48
8  record.  The time is 2:48.    14:48
9    (Recess taken.)    14:48
10    THE VIDEOGRAPHER:  We are back on the record.    14:50
11  The time is 2:50.    14:50
12    14:50
13    EXAMINATION    14:50
14  BY MS. RAY:    14:50
15  Q  Mr. Levandowski, do you recall that your    14:50
16  counsel stated, during this deposition, that if there    14:50
17  were questions about your background before you joined    14:50
18  Google, you would answer them?    14:50
19    MR. PERLSON:  Objection; form.    14:51
20    THE WITNESS:  Does that mean I answer or not?    14:51
21  I'm not clear.    14:51
22    MR. EHRLICH:  If he objects, you still have    14:51
23  to answer.    14:51
24    THE WITNESS:  I still have to answer.  Okay.    14:51
25    MR. EHRLICH:  You can answer.    14:51

Page 165

42 (Pages 162 - 165)

1     THE WITNESS: I -- I do remember saying that,   14:51
2  yes.                              14:51
3     MS. RAY:  Q.  So, let me ask you some --   14:51
4   A   Or I do remember --               14:51
5   Q   Let me ask you some questions about your   14:51
6  background.                          14:51
7   Q   Where were you born?               14:51
8   A   I was born --                   14:51
9     MR. EHRLICH:  You can answer.          14:51
10     THE WITNESS:  Okay.                 14:51
11   I was born in Brussels, Belgium.            14:51
12     MS. RAY:  Q.  Where were you raised?       14:51
13   A   I was raised in Brussels, Belgium, until I   14:51
14  was 14, and then I came to the United States.    14:51
15   Q   And, did you come to California then?      14:51
16   A   I did, yes.                     14:51
17   Q   Do you have any children?            14:51
18   A   I do, yes.                      14:51
19   Q   What are their ages?               14:51
20   A   I have two.  Alex is six, and Miles is three.   14:51
21   Q   I'd like to ask you some questions about your   14:51
22  education.                          14:51
23     Where did you attend high school?        14:51
24   A   I went to two high schools.  First is       14:51
25  Tamalpais High School in Marin County, and then   14:51

1  University High School in San Francisco.       14:52
2   Q   When did you graduate from high school?     14:52
3   A   In 1998.                       14:52
4   Q   Did you go to college?              14:52
5   A   I did, yes.                     14:52
6   Q   Where did you go to college?           14:52
7   A   I went to college at UC Berkeley for       14:52
8  undergrad and grad school.                14:52
9   Q   When did you graduate from undergrad?      14:52
10   A   In 2002.                       14:52
11   Q   When did you graduate from graduate school?   14:52
12   A   In 2003.                       14:52
13   Q   What was your major during undergrad?      14:52
14   A   I studied industrial engineering and       14:52
15  operations research.                    14:52
16   Q   And what was your master's degree in?      14:52
17   A   It was in industrial engineering and       14:52
18  operations research, as well as management of   14:52
19  technology.                          14:52
20   Q   While you were in high school, did you have   14:52
21  any business ventures?                  14:52
22   A   I did, yes.                     14:52
23   Q   What were they?                  14:52
24   A   I started selling candy freshman year to the   14:52
25  fellow students there.  And then, I built websites,   14:52

1  and I built a website for seeing the inside locations   14:53
2  of things.  I made a map of campus.           14:53
3   Q   Can you give me an example of a website that   14:53
4  you built for seeing the inside of things.       14:53
5   A   So, the Tamalpais High School website had an   14:53
6  internal version that described this system where   14:53
7  there was, you know, pictures that you could navigate   14:53
8  and click through and see forward or back or around.   14:53
9     You know, there's other websites that I        14:53
10  created later on post-high school.  Once -- one was an   14:53
11  internal website for a company called Central Garden   14:53
12  and Pets which allowed the business to share internal   14:53
13  information about their customers and their products,   14:53
14  as well as their employees; similar things that you   14:53
15  call, you know, intranets today.             14:53
16   Q   Why did you build the website so that you     14:54
17  could see the inside of the high school?        14:54
18   A   I received the first digital camera from my   14:54
19  family, and I thought it was interesting to be able to   14:54
20  take pictures and kind of visit a location remotely.   14:54
21  I thought that would be interesting to have the     14:54
22  students to be able to show off the school, as well as   14:54
23  show that off to my friends and my mom, who lived in   14:54
24  Belgium still.                       14:54
25   Q   When you were an undergraduate, did you have   14:54

1  any business ventures?                  14:54
2   A   I did, yes.                     14:54
3   Q   What was one of your businesses during       14:54
4  undergrad?                          14:54
5   A   It was called La Raison, and it was the --   14:54
6     MR. EHRLICH:  How do you spell that?      14:54
7     THE WITNESS:  L-A, R-A-I-S-O-N.          14:54
8     MS. RAY:  Q.  And what was La Raison?       14:54
9   A   It was a business that was making websites   14:54
10  and intranets for other businesses.          14:54
11   Q   When did you get involved with autonomous or   14:55
12  driverless vehicles?                    14:55
13   A   It started in a class where we were learning   14:55
14  Java and robotics with Professor Roger Glassey.  And   14:55
15  we built self-driving vehicles out of, you know, Lego   14:55
16  Mindstorms using the Java programming language.     14:55
17     MR. EHRLICH:  Did you say Lego?          14:55
18     THE WITNESS:  Lego, L-E-G-O -- like the toys   14:55
19  that my kids play with now.               14:55
20     MS. RAY:  Q.  Did this work receive any      14:55
21  recognition?                        14:55
22   A   Well, after the class, I entered a         14:55
23  competition which was several universities competing,   14:55
24  including, I believe, Stanford and Santa Clara   14:55
25  University, that was organized by the Sun       14:55

1 Microsystems, and specifically organized by the folks   14:55
2 that created the -- the language of Java.   14:55
3   And it was competing for what they -- at the   14:55
4 time was the Gosling Award, which was named after   14:56
5 James Gosling, who is the inventor of Java.   14:56
6   And for that, I created a monopoly build   14:56
7 sorting robots that won the competition. I then   14:56
8 received the Gosling Award.   14:56
9   Q   Earlier we heard about the DARPA Challenge.   14:56
10   How did you learn about that challenge?   14:56
11   A   My mom knew how much I loved robots and that   14:56
12 I loved making things. And she gave me a call when   14:56
13 she found out about this competitions sponsored by the   14:56
14 defense department. And she thought it was really   14:56
15 exciting for me to be able to know that I was going   14:56
16 on. And when I saw it, I couldn't resist, and I   14:56
17 decided to enter.   14:56
18   Q   Can you tell me a little bit more about what   14:56
19 the DARPA race was.   14:56
20   A   So, the DARPA Grand Challenge was a set of   14:56
21 three competitions. The -- the first one was   14:56
22 obviously, we didn't know there was going to be a   14:56
23 follow-up system.   14:57
24   And it was a -- effectively, it was a race   14:57
25 from LA to Vegas across the desert. It was really   14:57

Page 170

1 Barstow to Vegas, you know, across the desert. And   14:57
2 the goal was to release a vehicle into the world on   14:57
3 its own without any remote control or assistance in   14:57
4 order to try to get, you know, a piece of equipment   14:57
5 from one location to the next without any supervision   14:57
6 or input.   14:57
7   And, it was kind of a monumental step in   14:57
8 thinking how things were done before, where   14:57
9 previously, the defense department, clearly wanting to   14:57
10 move materials and troops from one point to the other,   14:57
11 had done contract works for specific objectives, and   14:57
12 the progress had been very slow.   14:57
13   And so, this DARPA was attempting to   14:57
14 circumvent that by having a competition that was just   14:57
15 clean, saying, Here is the start. Here is the finish.   14:57
16 We'll give you a road that you can follow, in other   14:58
17 words. And then we'll -- you'll turn the switch and   14:58
18 let the vehicle go through and see if it makes it or   14:58
19 not.   14:58
20   Q   What was your entry into the DARPA Challenge?   14:58
21   A   The entry was called Ghost Rider, and it was   14:58
22 a two-wheeled motorcycle. It was the first of its   14:58
23 kind, to our knowledge, at that time and, you know,   14:58
24 self-driving motorcycle.   14:58
25   Q   What was your personal contribution to   14:58

Page 171

1 building the Ghost Rider?   14:58
2   A   I built a substantial portion of it myself,   14:58
3 but I also created a team to help me build the tools   14:58
4 and software and hardware to make the system work.   14:58
5   Q   Was the Ghost Rider ever used on public   14:58
6 streets?   14:58
7   A   It was. We did some testing on -- on public   14:58
8 roads prior to the event to make sure that it was able   14:58
9 to go up certain hills and stay in -- in the right   14:58
10 lanes and so forth.   14:59
11   Q   Where did you do that testing on public   14:59
12 streets?   14:59
13   A   We did that in Richmond, California.   14:59
14   Q   How many other two-wheeled entrants were in   14:59
15 that same competition?   14:59
16   A   There were none. It was, frankly, a pretty   14:59
17 crazy idea to go and make things even harder than   14:59
18 everybody already believed the challenge to be.   14:59
19   Q   Why was it harder to have a two-wheel --   14:59
20 two-wheel entry?   14:59
21   A   Well, to get a car to move down the street,   14:59
22 you know, 20 feet, you can kind of apply a little bit   14:59
23 of accelerator and not steer, and the vehicle will do   14:59
24 that.   14:59
25   To get a motorcycle to move forward, you have   14:59

Page 172

1 to build a lot of technology beforehand to make it to   14:59
2 be able to just drive in a straight line. And so,   14:59
3 you're just making the problem harder than it needs to   14:59
4 be.   14:59
5   Q   How did the Ghost Rider do in the   14:59
6 competition?   14:59
7   A   It didn't do as well as I was hoping. It --   14:59
8 it turned out that the complexities and challenges of   15:00
9 adding the balancing before you could start testing   15:00
10 all of the other navigation and optical were hard.   15:00
11   But, on the first year, we actually did   15:00
12 manage to qualify. And out of the 109 teams or so   15:00
13 that applied, you know, 14 or so qualified, and we   15:00
14 were one of them.   15:00
15   On the day of the race, I -- I made a   15:00
16 mistake, and I forgot to turn on the software for   15:00
17 stabilizing the vehicle. And the -- the motorcycle   15:00
18 went out of the gate and fell down. So that was very   15:00
19 embarrassing.   15:00
20   Q   What happened to the Ghost Rider after the   15:00
21 race?   15:00
22   A   We used it again for the following   15:00
23 competition, which was, I think, a year or so later.   15:00
24 And then after that one, where the performance was   15:00
25 much better than before, the Smithsonian thought that   15:00

Page 173

44 (Pages 170 - 173)

1 it was pretty unique and novel and new, and so they   15:00
2 requested it for an exhibit on autonomous vehicles.   15:01
3 And I donated it to the Smithsonian, where it is   15:01
4 today.   15:01
5    Q   After graduate school, where did you work?   15:01
6    A   After graduate school, so I -- long day, so I   15:01
7 don't have the whole chronology down.   15:01
8       But I did a couple of things, one of which   15:01
9 was I was the -- having met all of the teams in a very   15:01
10 nonthreatening way by making a robotic motorcycle   15:01
11 through the Grand Challenge, one of the teams was Team   15:01
12 Dad.  Dad, are we there yet?  And it was by Bruce Hall   15:01
13 and Dave Hall, the founders of Velodyne Acoustics who,   15:01
14 at the time for the first Grand Challenge, made a   15:01
15 stereo camera, and in the second Grand Challenge made   15:01
16 a 360 laser that has evolved into the Velodyne that   15:02
17 they sell today.   15:02
18       And, after the race, I helped them get their   15:02
19 unit from the early, early prototype that just   15:02
20 outputted video data, as well as specific outputs,   15:02
21 into outputting Ethernet packets so that others could   15:02
22 use it.   15:02
23       And then, I became also the first Velodyne   15:02
24 sales rep.  And then I, you know, went around and   15:02
25 traveled and met many of the teams that were building   15:02

Page 174

1 these vehicles and helped them get the Velodyne and   15:02
2 helped them integrate and just understand what this   15:02
3 new sensor could do for -- for their teams.   15:02
4    Q   When you say that you were working on the   15:02
5 prototype that evolved into the Velodyne they sell   15:02
6 today, do you mean the LiDar that Velodyne --   15:02
7    A   Correct, the LiDar, yes.   15:02
8    Q   -- sells -- sells today?   15:02
9    A   There is a LiDar Gen 1, which was about this   15:02
10 large, which is in the Smithsonian as well.   15:03
11       And, for people to understand what the value   15:03
12 of that was, looking at a video screen wasn't enough.   15:03
13 You want to be able to get Ethernet packets.  And Dave   15:03
14 Hall was working on getting that working.   15:03
15       And I remember a couple of times where, in   15:03
16 getting that ready for demonstration and sale, I   15:03
17 helped him get the Ethernet devices, you know, up and   15:03
18 running.   15:03
19    Q   What else did you do after graduate school   15:03
20 around that time after you graduated?   15:03
21    A   I had -- I took the software for the Ghost   15:03
22 Rider and applied that to self-driving tractors so   15:03
23 that you -- a farmer could actually go and, you know,   15:03
24 ride along the tractor, and the tractor would go very   15:03
25 precisely straight down the whole field, and it could   15:03

Page 175

1 manually turn around and precisely drive back so that   15:03
2 you could plant your seeds in one specific time, and   15:04
3 then harvest them at a very different specific time,   15:04
4 and abstract out the skill of the operator and turn   15:04
5 that into the machine.   15:04
6    Q   What did you do next after that project?   15:04
7    A   After that, we -- this is where I worked with   15:04
8 Professor Thrun and a couple of his students, and we   15:04
9 started a company that was known as -- as VueTool.  I   15:04
10 don't recall if we actually founded the company, but   15:04
11 we did have a company together, and we called it that.   15:04
12       And we made a demo of kind of an evolution of   15:04
13 something called Movie Maps that was made by an MIT   15:04
14 professor -- I think an MIT professor -- a while back,   15:04
15 where you could actually view the world as kind of a   15:04
16 person would be there without actually physically   15:05
17 being in that location.   15:05
18       And we did that where we drove around   15:05
19 San Francisco and built maps so you could just drop   15:05
20 yourself in a location in San Francisco and see   15:05
21 that -- what the specific area looked like.   15:05
22    Q   Did that project involve LiDar?   15:05
23    A   There was a LiDar on the vehicle that we were   15:05
24 collecting information on.  The generating of the   15:05
25 pictures did not use it, but we were logging laser   15:05

Page 176

1 information as well.   15:05
2    Q   What ultimately happened with VueTool?   15:05
3    A   The -- the VueTool team and technology ended   15:05
4 up at Google through an acquisition, even though it   15:05
5 wasn't --   15:05
6       MR. EHRLICH:  Okay.  Excuse me, Counsel.   15:05
7       I'm -- Mr. Levandowski, I'm going to instruct   15:05
8 you not to give any answers that reference activities   15:05
9 after you started -- after that first day you started   15:05
10 at Google.   15:05
11       THE WITNESS:  Okay.   15:05
12       MR. EHRLICH:  Okay.   15:05
13       THE WITNESS:  Okay.   15:05
14       MS. RAY:  Q.  What became of your VueTool   15:05
15 product?   15:06
16    A   The VueTool product team joined Google, and   15:06
17 then what it became there is something that happened   15:06
18 afterwards.  But it's -- it was about building   15:06
19 pictures of seeing the world so you can --   15:06
20       MR. EHRLICH:  You can give the name, if   15:06
21 there's any --   15:06
22       THE WITNESS:  The name -- Street View is --   15:06
23 is what the technology and team eventually became.   15:06
24       MR. EHRLICH:  Okay.   15:06
25       MS. RAY:  Q.  Did you ever work at a company   15:06

Page 177

45 (Pages 174 - 177)

1 called ENSCO?                                15:06
2    A   I did, yes.                           15:06
3    Q   What was ENSCO?                        15:06
4    A   ENSCO stands for Engineering Science and   15:06
5 Computers, and it's a research organization where I   15:06
6 helped build simulators for understanding how   15:06
7 self-driving vehicles would go and navigate the world. 15:06
8         And I helped put proposals on how to   15:06
9 integrate cameras and LiDar for augmenting the   15:06
10 resolution and the depth of specific information.   15:06
11        So, if you had a picture and a set of points   15:07
12 from a laser, you could extract more information by   15:07
13 combining the two than just using them separately.   15:07
14   Q   Have we discussed all of your business and   15:07
15 employment ventures before you started at Google at   15:07
16 this point?                                15:07
17   A   I think so, but I don't know.  There may be a   15:07
18 couple of other ones I don't recall right now.   15:07
19   Q   Thank you.                            15:07
20      MS. RAY:  I don't have any further questions.   15:07
21      THE WITNESS:  Okay.  Thank you.        15:07
22      MR. PERLSON:  I'm going to have some.  Why   15:07
23 don't you stop.                            15:07
24      THE VIDEOGRAPHER:  Do you want me to go off?   15:07
25      MR. PERLSON:  Yeah.                   15:07

Page 178

1      THE VIDEOGRAPHER:  We are going off the   15:07
2 record.  The time is 3:07.                  15:07
3      (Recess taken.)
4      THE VIDEOGRAPHER:  We are back on the record.  15:08
5 The time is 3:08.                          15:08
6      MS. RAY:  Before I forget, can we designate   15:08
7 this transcript "Attorneys' Eyes Only"?  And then   15:08
8 we'll go through the process of de-designating.   15:08
9      MR. PERLSON:  That's acceptable.        15:08
10     MS. RAY:  Great.                       15:08
11     MR. EHRLICH:  Thank you.               15:08
12                                           15:08
13         FURTHER EXAMINATION               15:08
14 BY MR. PERLSON:                            15:08
15   Q   Mr. Levandowski, you understand that Ms. Ray   15:08
16 is Uber's lawyer?                          15:08
17   A   I do understand that, although I do think   15:08
18 that MoFo is also representing me.           15:08
19   Q   And --                             15:08
20      MR. EHRLICH:  Can I just say, your      15:08
21 understanding is that MoFo represents you.  Not in   15:08
22 this matter, however; correct?             15:08
23      THE WITNESS:  Correct, yes.           15:09
24      MR. EHRLICH:  Okay.                   15:09
25      MR. PERLSON:  Q.  But even though Ms. Ray   15:09

Page 179

1 represents Uber in this case, she didn't ask you any   15:09
2 questions about what you did at Uber; did she?   15:09
3    A   I --                               15:09
4      MR. EHRLICH:  You can answer that.      15:09
5      THE WITNESS:  Yeah, I -- she did not ask me   15:09
6 any questions about what I do at Uber.       15:09
7      MR. PERLSON:  Q.  And Uber is a defendant in   15:09
8 this case?  You understand that?            15:09
9    A   I do understand that, yeah.           15:09
10   Q   Don't you think that's a little strange, that   15:09
11 Uber's counsel didn't ask you any questions about what   15:09
12 you did at Uber?                          15:09
13   A   Well, I did clarify that I was only answering   15:09
14 questions about things that I did before I joined   15:09
15 Google.  And I did not join Uber before I joined   15:09
16 Google.                                   15:09
17   Q   And what you did before you joined Google   15:09
18 doesn't have any bearing on whether you stole   15:09
19 documents from Google; does it?             15:09
20      MR. EHRLICH:  You can answer, as long as you   15:09
21 confine your answer to what happened before you joined   15:10
22 Google.                                   15:10
23      MS. RAY:  Objection; form.             15:10
24      THE WITNESS:  What I -- what I did before I   15:10
25 joined Google does not affect the things that I did   15:10

Page 180

1 after I joined Google.                      15:10
2      MR. PERLSON:  And, Ms. Ray talked about   15:10
3 things you had done from an engineering perspective   15:10
4 before you joined Google.                   15:10
5    Q   But, if you were such an accomplished   15:10
6 engineer, why did you steal 14,000 documents from   15:10
7 Google?                                   15:10
8      MS. RAY:  Objection; form.             15:10
9      THE WITNESS:  On the advice of -- on -- on   15:10
10 the advice and direction of my counsel, I respectfully   15:10
11 decline to answer.  And I assert the rights guaranteed   15:10
12 to me under the Fifth Amendment to the Constitution to  15:10
13 the United States.                         15:10
14      MR. PERLSON:  Q.  Don't you think that the   15:10
15 jury would be more interested in whether you stole   15:10
16 14,000 documents from Google than what you did before  15:11
17 you were at Google?                        15:11
18      MS. RAY:  Objection; form.             15:11
19      THE WITNESS:  On the advice and direction of   15:11
20 my counsel, I respectfully decline to answer.  And I   15:11
21 assert the rights guaranteed to me under the Fifth   15:11
22 Amendment of the Constitution to the United States.   15:10
23      MR. PERLSON:  Q.  Don't you think that the   15:11
24 question of whether you stole 14,000 documents and   15:11
25 used them at Uber is more relevant to this case than   15:11

Page 181

46 (Pages 178 - 181)

| | |
|---|---|
| 1  anything that Ms. Ray asked you?               15:11 | 1       CERTIFICATE OF REPORTER |
| 2       MS. RAY:  Objection; form.                15:11 | 2 |
| 3       THE WITNESS:  On the advice and direction of  15:11 | 3       I, ANDREA M. IGNACIO, hereby certify that the |
| 4  my counsel, I respectfully decline to answer.  And I  15:11 | 4  witness in the foregoing deposition was by me duly |
| 5  assert the rights guaranteed to me under the Fifth  15:11 | 5  sworn to tell the truth, the whole truth, and nothing |
| 6  Amendment of the Constitution to the United States.  15:10 | but the truth in the within-entitled cause; |
| 7       MR. PERLSON:  Q.  Did the clarification that  15:11 | 6       That said deposition was taken in shorthand |
| 8  Ms. Ray asked of you during this deposition today have  15:11 | 7  by me, a disinterested person, at the time and place |
| 9  anything to do with the subject matter that was  15:11 | 8  therein stated, and that the testimony of the said |
| 10  addressed in her examination of you that just preceded  15:11 | witness was thereafter reduced to typewriting, by |
| 11  me?                                           15:11 | 9  computer, under my direction and supervision; |
| 12       MS. RAY:  Objection.                     15:11 | 10       That before completion of the deposition, |
| 13       I instruct him not to answer on            15:12 | 11  review of the transcript [ ] was [x] was not |
| 14  attorney-client privilege grounds.            15:12 | requested.  If requested, any changes made by the |
| 15       MR. EHRLICH:  And I instruct you to follow  15:12 | 12  deponent (and provided to the reporter) during the |
| 16  that -- that instruction as well.             15:12 | 13  period allowed are appended hereto. |
| 17       MS. RAY:  I'll represent to you, all I did  15:12 | 14       I further certify that I am not of counsel or |
| 18  was ask a factual clarification.              15:12 | 15  attorney for either or any of the parties to the said |
| 19       MR. PERLSON:  If you --                   15:12 | 16  deposition, nor in any way interested in the event of |
| 20       MS. RAY:  But I'm not going to let him talk  15:12 | this cause, and that I am not related to any of the |
| 21  to you about privileged matters.              15:12 | 17  parties thereto. |
| 22       MR. PERLSON:  I'll reserve all rights on    15:12 | 18  Dated: April 14, 2017 |
| 23  that, but we can deal with that later.        15:12 | 19 |
| 24       That's all.                              15:12 | 20 |
| 25       THE WITNESS:  Thank you.                  15:12 | 21 |
|                                            Page 182 | 22 |
| | 23                   _____ |
| | 24       ANDREA M. IGNACIO, |
| | 25       RPR, CRR, CCRR, CLR, CSR No. 9830 |
| |                                          Page 184 |

| |
|---|
| 1       THE VIDEOGRAPHER:  Okay.  This marks the end  15:12 |
| 2  of DVD No. 3 in the deposition of Anthony Levandowski.  15:12 |
| 3       We are going off the record.  The time is  15:12 |
| 4  3:12 p.m.                                    15:12 |
| 5       THE REPORTER:  Counsel, did you need a copy?  15:12 |
| 6       MR. EHRLICH:  I think we will.            15:12 |
| 7       MS. RAY:  Can you e-mail Ethel and ask her  15:13 |
| 8  for the order?  We have a standing order.     15:13 |
| 9       THE REPORTER:  They have a standing for    15:13 |
| 10  immediate delivery today.  Are you wanting it the same  15:13 |
| 11  time everybody else gets it?                 15:13 |
| 12       MS. RAY:  Yes.                            15:13 |
| 13       MR. EHRLICH:  Sure, sure.  That's -- we do.  15:13 |
| 14       (WHEREUPON, the deposition ended         15:13 |
| 15       at 3:13 p.m.)                            15:13 |
| 16            ---oOo--- |
| 17 |
| 18 |
| 19 |
| 20 |
| 21 |
| 22 |
| 23 |
| 24 |
| 25 |
|                                            Page 183 |