MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
RUDY Y. KIM (CA SBN 199426)
RKim@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Telephone:    202.237.2727
Facsimile:    202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　　Defendants. | Case No.　　3:17-cv-00939-WHA<br><br>**DECLARATION OF ERIC A. TATE IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION TO COMPEL**<br><br>Date:　　June 8, 2017<br>Time:　　10:00 a.m.<br>Ctrm:　　F, 15th Floor<br>Judge:　　Hon. Jacqueline Scott Corley<br><br>Trial Date: October 2, 2017 |

I, Eric A. Tate, declare as follows:

1. I am a member of the bar of the State of California and a partner with Morrison & Foerster LLP ("MoFo"), counsel of record for Defendants Uber Technologies, Inc. and Ottomotto LLC in this action. I am admitted to practice before this Court. I am the co-chair of MoFo's Global Employment and Labor Group and regularly litigate employee mobility cases. I submit this declaration in support of Defendants' Opposition to Motion to Compel Production of the Stroz Due Diligence Report. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently as to these facts.

2. I was contacted in late January 2016 by in-house counsel for Uber Technologies, Inc. ("Uber"), to provide legal advice regarding a potential corporate transaction. That transaction turned out to be Uber's acquisition of two target companies, Ottomotto LLC ("Ottomotto") and Otto Trucking LLC ("Otto Trucking"), (collectively referred to as "Otto").[1]

3. Uber had retained counsel, Cooley LLP, to advise it on the standard diligence, negotiation and other corporate aspects of the potential transaction. Uber contacted me and my law firm seeking legal advice as to potential litigation exposure arising out of the transaction. Specifically, Uber sought legal advice regarding potential claims that could be brought by Google against two of its founders, Anthony Levandowski and Lior Ron, who had left Google to create the target companies that ultimately became Ottomotto and Otto Trucking. Uber retained MoFo for this purpose in late January 2016.

4. Other parties to the potential transaction were represented by separate counsel. The law firm O'Melveny & Myers LLP ("OMM") represented Otto. Two of Otto's founders, Anthony Levandowski and Lior Ron, were separately represented by individual counsel. John Gardner of Donahue Fitzgerald LLP ("Donahue") represented Mr. Levandowski, and Alisa Baker of Levine & Baker LLP ("Levine") represented Mr. Ron.

5. On or about February 22, 2016, Otto and Uber signed a term sheet for the potential acquisition. The term sheet set forth the agreed economic terms of Uber's potential acquisition of

---

[1] While Uber acquired Ottomotto in August 2016, it has not acquired Otto Trucking.

Otto. In light of the possibility of litigation by Google, Uber agreed to indemnify certain employees under certain circumstances regardless of whether the deal closed.

6. MoFo had been authorized, on behalf of Uber, to enter into a joint defense and common interest agreement ("JDA") with Otto and we did so as of at least February 24, 2016, and later with Messrs. Levandowski and Ron.

7. Specifically, on February 24, 2016, I confirmed with counsel for Otto at OMM, that Uber and Otto would proceed with investigating and obtaining facts necessary for MoFo and OMM to advise our respective clients as to potential litigation arising out of the transaction under a JDA that would later be memorialized.

8. On February 25, 2016, I received an email from OMM confirming the "discussed plan on JDA." A true and correct copy of this email is attached hereto as **Exhibit 1**.

9. Uber and Otto authorized MoFo and OMM to jointly engage a third-party consultant to conduct an investigation regarding the activities of Mr. Levandowski, Mr. Ron, and certain other former Google employees who had joined Otto, surrounding their respective departures from Google and onboarding to Otto. The purpose of the investigation was to aid MoFo and OMM in providing legal advice to their respective clients about litigation risks and potential claims that could be brought by Google in connection with Uber's acquisition of Otto.

10. On February 25, 2016, Adam Bentley of OMM and I contacted Stroz Friedberg LLC ("Stroz"), a third-party risk management firm, to engage its professional services in conducting an investigation to ascertain facts, that, in the opinion of MoFo and OMM, informed the potential legal exposure and claims that could be brought by Google related to Uber's potential acquisition of Otto.

11. The Joint Defense, Common Interest, and Confidentiality Agreement was executed on April 11, 2016 and states that it "memorialize[s]" the parties "understanding and oral agreement." Attached to this Declaration as **Exhibit 2** is a true and correct copy of the Joint Defense, Common Interest, and Confidentiality Agreement.

12. Each of the parties needed the assistance of Stroz in order to provide legal advice to their respective clients on their joint litigation risk, and jointly retained Stroz on March 4, 2016.

Attached to this Declaration as **Exhibit 3** is a true and correct copy of the Stroz Engagement Letter, with information protected by the attorney-client privilege redacted. The Stroz Engagement Letter memorialized that Uber, Otto, and Messrs. Levandowski and Ron (the "Joint Defense Parties") were parties to a Joint Defense and Common Interest Agreement, and that all information received by Stroz and Stroz's work product was to be treated as covered by joint defense, common interest, attorney-client privilege and/or work product doctrine.

13. The Stroz Engagement Letter also memorialized the parties' understanding of the purpose of the investigation, which was to gather and synthesize information to provide to counsel to assist in their assessment of possible legal claims that could be brought by Google.

14. On March 13, 2016, Alisa Baker confirmed her agreement that Mr. Ron and Levin were parties to the JDA. Similarly, John Gardner confirmed his agreement that he and Mr. Levandowski were parties to the JDA on March 22, 2016. From that point forward, I considered my communications with counsel from OMM and for the individual parties to be confidential and treated them as such.

15. The joint defense parties and their respective counsel agreed upon a protocol and parameters for Stroz's investigation. OMM, MoFo, Donahue, and Levine all discussed with Stroz what topics to investigate and various issues related to how Stroz should investigate those topics based upon each firm's legal judgment and reasoning about potential litigation arising from Uber's acquisition of Otto.

16. As set forth in the engagement letter, Stroz agreed to provide all substantive communications about the investigation to both MoFo and OMM, and further agreed to keep confidential all information and data it received from MoFo, OMM, Uber, Otto, and Messrs. Levandowski and Ron, and not to disclose any such information or data to any person other than MoFo or OMM. To the best of my knowledge, Stroz complied with its obligations to provide all substantive communications about its investigation to MoFo and OMM, and has kept confidential all information and data it has received from MoFo, OMM, Uber, Otto, and Messrs. Levandowski and Ron.

17. Uber and Otto signed the final merger agreement on April 11, 2016.

18.	On August 5, 2016, Stroz provided its final report (the "Report") to OMM, MoFo, Donahue, and Baker. Stroz transmitted the Report securely with password protection. Under the Joint Defense and Common Interest Agreement, the parties were required to keep the Report in the strictest of confidence. To my knowledge, the Report was not and has not been shared with anyone other than the Joint Defense Parties, their clients and counsel, and Stroz.

19.	I have checked with the MoFo attorneys and staff who I understand received a copy of the Report, and I understand that MoFo has, at all times, treated the Report, exhibits thereto, information learned from it, and all communications pertaining to it, as privileged and confidential.

20.	Additionally, I understand that MoFo has not shared any such information or materials with any person other than in-house counsel at Uber, counsel at OMM, Donahue, and Levine, and Messrs. Levandowski and Ron, as well as MoFo's co-counsel in the above-captioned matter at Boies Schiller Flexner LLP, Otto Trucking's counsel in the above-captioned matter at Goodwin Procter LLP, and counsel for intervenor Mr. Levandowski in the above captioned matter at Ramsey & Erlich LLP.

21.	The Report reflects areas of inquiry that OMM and MoFo identified as important to their provision of legal advice regarding their clients' potential litigation exposure. The Report also reflects the directives and protocols that OMM, MoFo, Donahue, and Levine provided to Stroz to govern its investigation. Furthermore, the Report was prepared by Stroz for the purposes of potential litigation and reflects mental impressions, conclusions, and opinions of the Stroz investigators.

22.	MoFo, OMM, Donahue, and Baker received the Appendix of Exhibits to the Report on August 11, 2016, which was transmitted securely. MoFo received the actual Exhibits referenced in the Appendix of Exhibits on August 13, 2016. MoFo did not send a copy of the Appendix of Exhibits to Uber until after this litigation commenced, and has not provided to Uber a copy of the actual Exhibits referenced in the Appendix of Exhibits.

23.	As mentioned above, 159 exhibits are appended to the Report. The exhibits can be grouped into four categories: (1) documents pertaining to the scope of Stroz's investigation and

protocols governing it; (2) interview memoranda prepared by Stroz investigators; (3) work product prepared by Stroz investigators which analyzes information provided confidentially by Messrs. Levandowski, Ron, and other Otto employees; and (4) documents collected by Stroz. An additional category of documents are not relevant for purposes of Waymo's motion because they were not responsive to the Court's March 16, 2017 Order (Dkt. 61) ¶ 4 and therefore were not logged on Uber's privilege log, attached hereto as **Exhibit 4**.

24. Documents in category (1) reflect the directives and protocols that OMM, MoFo, Donahue, Levine, and Stroz decided upon to govern Stroz's investigation.

25. Documents in categories (2) and (3) reflect communications and information that Messrs. Levandowski and Ron, as well as certain employees of Otto, provided and made available to Stroz in the course of its investigation, and such communications were sought from these individuals confidentially and for the purpose of obtaining legal advice regarding potential litigation exposure and claims that could be brought by Google arising out of Uber's acquisition of Otto. These documents also reflect mental impressions, conclusions, and opinions of the Stroz investigators.

26. Finally, Stroz's judgment in selecting the documents reflected in category (4) supports the assertion of attorney-client privilege and work product protections.

27. We have learned during discovery in this case that Google was already investigating Mr. Levandowski's computer at least as early as March 2016. We also have learned that Google's investigation continued through the summer of 2016 and included discussion of potential litigation against Uber on at least August 23, 2016. Attached is a true and correct copy of excerpts from the deposition transcript of Gary Brown, attached hereto as **Exhibit 5**.

28. Uber's merger with Ottomotto closed effective August 23, 2016.

29. It was not until October 28, 2016, three days after Otto publicly released video of the world's first commercial delivery by a self-driving truck, that Google filed confidential arbitrations against the founders of Otto.

30. The only non-lawyers to receive the Report, aside from the individuals at Stroz who compiled the Report and three members of MoFo's legal staff, were Mr. Levandowski and Mr. Ron.

I declare until penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 8th day of May, 2017, in San Francisco, California.

/s/ _____
Eric A. Tate