1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  ERIC A. TATE (CA SBN 178719)
   ETate@mofo.com
4  RUDY Y. KIM (CA SBN 199426)
   RKim@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California 94105-2482
   Telephone:    415.268.7000
7  Facsimile:    415.268.7522

8  KAREN L. DUNN (*Pro Hac Vice*)
   kdunn@bsfllp.com
9  HAMISH P.M. HUME (*Pro Hac Vice*)
   hhume@bsfllp.com
10 BOIES SCHILLER FLEXNER LLP
   1401 New York Avenue, N.W.
11 Washington DC 20005
   Telephone:    202.237.2727
12 Facsimile:    202.237.6131

13 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.
14 and OTTOMOTTO LLC

15              UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                 SAN FRANCISCO DIVISION

18 WAYMO LLC,                        | Case No.      3:17-cv-00939-WHA

19              Plaintiff,           | **DECLARATION OF JUSTIN SUHR
                                     | IN SUPPORT OF DEFENDANTS'
20      v.                           | OPPOSITION TO MOTION TO
                                     | COMPEL**
21 UBER TECHNOLOGIES, INC.,
   OTTOMOTTO LLC; OTTO TRUCKING LLC, | Date:    June 8, 2017
22                                   | Time:    10:00 a.m.
              Defendants.            | Ctrm:    F, 15th Floor
23                                   | Judge:   The Hon. Jacqueline Scott Corley
24                                   | Trial Date: October 2, 2017
25

26

27

28

I, Justin Suhr, declare as follows:

1.      I am a member of the bar of the State of California and am in-house counsel at, and serve as Legal Director, Employment for Uber Technologies Inc. ("Uber").  I have served in that position since April 2015.  I submit this declaration in support of Defendants' Opposition to Waymo's Motion to Compel Production of the Stroz Due Diligence Report.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently as to these facts.

2.      In late January 2016, Uber contacted Morrison & Foerster LLP ("MoFo") seeking to retain MoFo to provide legal advice in connection with a potential corporate transaction, which would ultimately become Uber's planned acquisition of two target companies, Ottomotto LLC ("Ottomotto") and Otto Trucking LLC ("Otto Trucking")[1] (collectively, "Otto").  Uber retained MoFo for the purpose of obtaining legal advice regarding potential litigation exposure arising out of the transaction, including and in particular, claims that could potentially be brought by Google against two of its founders, Anthony Levandowski and Lior Ron, who had left Google to found the target companies that ultimately became Ottomotto and Otto Trucking.

3.      Shortly after the initial contact, Uber retained MoFo for the purposes described in paragraph 2.  Uber also retained separate counsel, Cooley LLP, to advise it on the legal, business, and financial terms of the transaction generally.  I was one of the principal in-house attorneys at Uber with responsibilities connected with the legal advice described in paragraph 2.

4.      Otto was represented by the law firm O'Melveny & Myers LLP.  Mr. Levandowski was represented personally by John Gardner of Donahue & Gardner LLP ("Donahue").  Mr. Ron was represented personally by Alisa Baker of Levine & Baker LLP ("Levine").

5.      Uber authorized MoFo, on Uber's behalf, to enter into a joint defense and common interest agreement with Otto, and subsequently with Mr. Levandowski and Mr. Ron.  Uber

---

[1] While Uber acquired Ottomotto in August 2016, it has not acquired Otto Trucking.

1   entered into the joint defense and common interest agreement in light of the nature of the

2   proposed transaction.  The target companies were recently founded and run by former employees

3   of Google.  The target companies were also focused on self-driving technology, an emerging high

4   profile technology space.  Based on these factors the parties entered into a joint defense and

5   common interest agreement in order to freely discuss legal risks and share legal analysis among

6   the parties to the proposed transaction without waiving the privileges and risking disclosure of

7   those discussions at some point in the future.

8          6.       The parties also contemplated the specific possibility that Google could bring

9   claims arising out of Uber's acquisition of Otto against some or all of the parties to the joint

10  defense and common interest agreement.  The parties agreed it was in their collective best

11  interests to share certain confidential legal advice and analysis prepared by attorneys in

12  anticipation of litigation, as well as confidential business, technical and other information in order

13  to facilitate each party's attorneys in providing legal advice and analysis, all so as to further the

14  parties' common interest in opposing and engaging in a joint defense, against any potential

15  litigation.  I understand that the joint defense and common interest agreement was entered into as

16  of at least February 24, 2016, with the express understanding that the parties would work to

17  memorialize in writing the joint defense and common interest agreement.  I understand that

18  Messrs. Levandowski and Ron, and Donahue and Levine, became parties to the joint defense and

19  common interest agreement shortly thereafter.

20         7.       Recognizing that the parties were now party to a joint defense and common

21  interest agreement, I kept any communications and information pertaining to the parties' shared

22  legal interests received from OMM, Otto, Messrs. Levandowski and Ron and their respective

23  counsel at Donahue and Levine confidential and treated all such information as protected by the

24  attorney-client privilege, attorney work product doctrine, and/or common interest doctrine.  I have

25  also spoken with all Uber in-house counsel listed in paragraph 13 below, and confirmed that each

26  of them did, as well.

27         8.       I understand that on or about April 11, 2016, the parties executed the Joint

28  Defense, Common Interest and Confidentiality Agreement ("JDA").  The JDA states that it

1    memorializes the parties' pre-existing understanding and oral agreement and confirms the terms

2    and conditions thereof.  I worked with MoFo on drafting, revising, and negotiating the written

3    JDA.

4           9.      In order to facilitate MoFo's legal advice and analysis for which it was retained as

5    described above, Uber authorized MoFo to engage a third-party consultant, Stroz Friedberg, LLC

6    ("Stroz"), to aid MoFo by investigating information from the founders of Otto and some of its

7    employees, all of whom previously worked for Google.  Uber also authorized MoFo to retain

8    Stroz jointly with OMM, in connection with OMM's representation of Otto.  MoFo entered into

9    an engagement agreement with Stroz as of March 4, 2016.

10          10.     While in-house counsel at Uber regularly advise on legal risks that stem from a

11   proposed merger, acquisition, technology purchase, or the like, the retention of a consultant like

12   Stroz to perform the investigation described above is atypical when aiding in the provision of

13   legal advice for most acquisition diligence.  However, in light of the litigation risks that the

14   proposed acquisition presented (prior to any understanding of the facts informing those risks), as

15   discussed in paragraph 5 above, Uber took the additional, unique step of authorizing the Stroz

16   investigation, and would not have done so absent the litigation risk.

17          11.     Recognizing that Uber, Otto, Mr. Levandowski, and Mr. Ron were parties to a

18   joint defense and common interest agreement, Stroz agreed to keep confidential all

19   communications with MoFo, OMM, Uber, Otto, Messrs. Levandowski and Ron and their

20   respective counsel at Donahue and Levine confidential and to treat all information which Stroz

21   received as protected by the attorney-client privilege, attorney work product doctrine, and/or

22   common interest doctrine.

23          12.     Stroz's investigative work was guided by directives from MoFo, OMM, Donahue,

24   and Levine regarding what topics to investigate and how Stroz should investigate these topics.

25   MoFo provided these directives to Stroz after consulting with me and other in-house counsel at

26   Uber.

27          13.     On August 5, 2016, Stroz provided its report (the "Report") to MoFo, OMM,

28   Donahue, and Baker.  MoFo sent the Report to me, as well as other in-house counsel at Uber.

1   Angela Padilla, Esq., Andrew Glickman, Esq., Todd Hamblet, Esq., Christian Lymn, Esq., and

2   Robert Wu, Esq., all of whom are in-house counsel at Uber, received copies of the Report.  The

3   Report is marked "Privileged & Confidential / Attorney Work Product."  The Report was

4   password protected.

5         14.     I understand that, after issuing the Report, Stroz sent MoFo an Appendix of

6   Exhibits to the Report.  I do not recall receiving the Appendix of Exhibits until after the current

7   litigation was filed. No Uber employee received the Appendix of Exhibits around the time that

8   Stroz provided it to MoFo, and no Uber employee received it until after this above-captioned

9   litigation was filed.  I understand that no employee and specifically, no in-house counsel at Uber,

10  received the Appendix of Exhibits until after this litigation was filed.

11        15.     I have kept confidential at all times the Report, the Appendix of Exhibits, and the

12  information contained in the Report and Appendix of Exhibits, and have always treated these

13  materials as covered by attorney-client privilege, attorney work product doctrine, and the

14  common interest doctrine.  Other than the Uber in-house counsel named in this declaration and

15  Uber's outside counsel of record in the above-captioned litigation, I have never shared the Report

16  or the Appendix of Exhibits with any person, including any non-attorney at Uber.

17        16.     I have also spoken with all Uber attorneys who received a copy of the Report as

18  reflected in paragraph 13 herein.  Each of them has kept confidential at all times the Report and

19  the information contained therein, and has always treated these materials as covered by attorney-

20  client privilege, attorney work product doctrine, and the common interest doctrine.  None of them

21  has ever shared the Report with any person, including any non-attorney at Uber, other than with

22  Uber in-house counsel and Uber's outside counsel of record in this litigation.  Additionally, none

23  of the Uber employees listed in paragraph 13 received the Appendix of Exhibits prior to initiation

24  of this litigation.

25        17.     I did not receive, nor was I made aware of, any communications from Google,

26  Waymo, or their counsel prior to the filings of the confidential arbitration matters filed against the

27  founders of Otto that indicated they intended to bring legal action against Uber or Otto, or

28

1   Messrs. Levandowski or Ron.  I was made aware of the confidential arbitration matters on or

2   about October 28, 2016, and Uber issued a litigation hold soon thereafter on November 10, 2016.

3          18.     I declare until penalty of perjury under the laws of the United States that the

4   foregoing is true and correct.  Executed this 8th day of May, 2017, in San Francisco, California.

5

6                                                  /s/

7                                                        Justin Suhr

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28