MILES EHRLICH (Bar No. 237954)
miles@ramsey-ehrlich.com
ISMAIL RAMSEY (Bar No. 189820)
izzy@ramsey-ehrlich.com
AMY CRAIG (Bar No. 269339)
amy@ramsey-ehrlich.com
**RAMSEY & EHRLICH LLP**
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600 (Tel)
(510) 291-3060 (Fax)

Attorneys for Non-Party
ANTHONY LEVANDOWSKI

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC., *et al.*,<br><br>　　　　Defendants. | Case No.: 3:17-cv-00939-WHA<br><br>**NON-PARTY ANTHONY LEVANDOWSKI'S OPPOSITION TO MOTION TO COMPEL**<br><br>Date:　June 8, 2017<br>Time:　10:00 a.m.<br>Ctrm:　F, 15th Floor<br>Judge:　The Honorable Jacqueline Scott Corley<br><br>Trial Date:　October 2, 2017 |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 1

III. ARGUMENT ......................................................................................................................... 3

    A. Attorney-Client Privilege, Work Product Doctrine, and Common Interest Privilege All Protect the Stroz Friedberg Report ........................................................... 3

        1. The Stroz Friedberg Report is attorney-client privileged. .............................. 3

        2. Stroz Friedberg's work is protected attorney work product. ......................... 5

        3. A valid common interest existed. .................................................................. 7

        4. Mr. Levandowski's reasonable reliance on the existence of a privilege warrants recognizing privilege. ..................................................................... 9

    B. The Crime-Fraud Exception Does Not Apply. ................................................... 11

IV. CONCLUSION .................................................................................................................... 12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Admiral Ins. Co. v. U.S. District Court*,
   881 F.2d 1486 (9th Cir. 1989) ................................................................................................... 5

*B.C.F. Oil Ref., Inc. v. Consol. Edison Co. of N.Y.*,
   168 F.R.D. 161 (S.D.N.Y. 1996) ............................................................................................... 7

*BriteSmile, Inc. v. Discus Dental Inc.*,
   No. C 02-3220 JSW (JL), 2004 WL 2271589, (N.D. Cal. Aug. 10, 2004), *aff'd*,
   No. C 02-03220 JSW, 2004 WL 3331770 (N.D. Cal. Oct. 26, 2004) ....................................... 8

*Callwave Commc'ns, LLC v. Wavemarket, Inc.*,
   No. C 14-80112 JSW (LB), 2015 WL 831539 (N.D. Cal. Feb. 23, 2015) ................................ 8

*Clark v. United States*,
   289 U.S. 1 (1933) .................................................................................................................... 11

*Fisher v. United States*,
   425 U.S. 391 (1976) ................................................................................................................ 12

*F.T.C. v. Grolier Inc.*,
   462 U.S. 19 (1983) .................................................................................................................... 5

*Griffin v. California*,
   380 U.S. 609 (1965) ................................................................................................................ 12

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
   115 F.R.D. 308 (N.D. Cal. 1987) .............................................................................................. 8

*Holmes v. Collection Bureau of Am., Ltd.*,
   No. C 09-02540 WHA, 2010 WL 143484 (N.D. Cal. Jan. 8, 2010) ..................................... 7, 8

*Hunydee v. United States*,
   355 F.2d 183 (9th Cir. 1965) .................................................................................................... 8

*In re Asia Glob. Crossing, Ltd.*,
   322 B.R. 247 (Bankr. S.D.N.Y. 2005) ...................................................................................... 9

*In re Copper Mkt. Antitrust Litig.*,
   200 F.R.D. 213 (S.D.N.Y. 2001) .............................................................................................. 9

*In re Grand Jury Investigation*,
   810 F.3d 1110 (9th Cir. 2016) ................................................................................................ 11

*In re Grand Jury Proceedings*,
 87 F.3d 377 (9th Cir. 1996) ................................................................................................... 11

*In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*,
 357 F.3d 900 (9th Cir. 2004) ..................................................................................................... 5

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
 No. 411CV05341YGRJSC, 2013 WL 5594474 (N.D. Cal. Oct. 10, 2013) ..................................... 5

*Miller v. Int'l Bus. Machines*,
 No. C02-2118 MJJ(MEJ), 2006 WL 6619990 (N.D. Cal. Apr. 14, 2006) ........................................ 9

*Rembrandt Patent Innovations, LLC v. Apple Inc.*,
 No. C 14-05093 WHA, 2016 WL 427363 (N.D. Cal. Feb. 4, 2016) ................................... 3, 4, 7, 8

*Republic Gear Co. v. Borg-Warner Corp.*,
 381 F.2d 551 (2d Cir. 1967) ....................................................................................................... 4

*Samuels v. Mitchell*,
 155 F.R.D. 195 (N.D. Cal. 1994) ................................................................................................ 6

*S.E.C. v. Berry*,
 No. C07-04431 RMW HRL, 2011 WL 825742 (N.D. Cal. Mar. 7 2011) ........................................ 7

*Segerstrom v. United States*,
 No. C 00-0833 SI, 2001 WL 283805 (N.D. Cal. Feb. 6, 2001) ................................................. 4, 5

*Speaker ex rel. Speaker v. Cty. of San Bernardino*,
 82 F. Supp. 2d 1105 (C.D. Cal. 2000) ...................................................................................... 10

*Sullivan v. Warminster Twp.*,
 274 F.R.D. 147 (E.D. Pa. 2011) .................................................................................................. 6

*Upjohn Co. v. United States*,
 449 U.S. 383 (1981) ........................................................................................................... 3, 4, 9

*United States v. Bauer*,
 132 F.3d 504 (9th Cir. 1997) .................................................................................................... 10

*United States v. Gonzalez*,
 669 F.3d 974 (9th Cir. 2012) ...................................................................................................... 7

*United States v. Ostrer*,
 422 F. Supp. 93 (S.D.N.Y. 1976) .............................................................................................. 10

*United States v. Rivera*,
 837 F. Supp. 565 (S.D.N.Y. 1993) ............................................................................................ 10

*United States v. Ruehle*,
 583 F.3d 600 (9th Cir. 2009) ...................................................................................................... 3

*United States v. Spector*,
   793 F.2d 932 (8th Cir. 1986) ................................................................................................9

*United States v. Zolin*,
   491 U.S. 554 (1989) ................................................................................................... 11, 12

**Other Authorities**

Fed. R. Civ. P. 26(b)(3) ..............................................................................................................5

8 J. Wigmore, Wigmore on Evidence § 2298 (J. McNaughton rev. ed. 1961) ........................12

56 F.R.D. 183 .......................................................................................................................9, 10

iv

NON-PARTY ANTHONY LEVANDOWSKI'S OPPOSITION TO MOTION TO COMPEL (CASE NO.: 3:17-CV-00939-WHA)

Defendant Anthony Levandowski ("Mr. Levandowski") submits the following papers in opposition to Plaintiff Waymo LLC's ("Waymo") Motion to Compel (Dkt. No. 147).

## I. INTRODUCTION

A few facts here are undisputed:

- Bracing themselves for potential litigation with Google and/or Waymo, the parties hired litigation counsel to help them prepare a future defense.
- The parties recognized that the threat was common to all of them.
- The parties expressed their common interest in oral communications, through emails, and in a Joint Defense, Common Interest, and Confidentiality Agreement (the "Joint Defense Agreement").
- Litigation counsel then hired a consultant to assist with a factual investigation.
- The information obtained by the consultant was used by litigation counsel to develop a defensive strategy in case Google and/or Waymo sued.

Despite these uncontradicted facts, Waymo now argues that the parties were acting for a business, not legal, purpose, and seeks to eviscerate the well-settled protections of attorney-client privilege, work product protection, and common interest privilege.  The sworn record establishes that Waymo is wrong, and that the Stroz Friedberg work was done for a legal purpose.  This Court should deny Plaintiff Waymo's Motion to Compel privileged documents.

## II. BACKGROUND

This is a motion about documents that lawyers and their consultant created to prepare for litigation that was likely to occur following a proposed corporate transaction.  In 2016, Uber Technologies, Inc. ("Uber") considered partnering with Ottomotto LLC ("Ottomotto") and Otto Trucking LLC ("Otto Trucking," and collectively with Ottomotto, "Otto").  Declaration of Eric A. Tate ("Tate Decl.") ¶ 2.  Mr. Levandowski and Lior Ron ("Mr. Ron") were former Google employees who had left to form Otto.[1]  *Id.* ¶ 3.  The Common Interest Group was concerned that Uber's

---

[1] For the purposes of this Motion, Uber, Ottomotto, Otto Trucking, Mr. Levandowski, and Mr. Ron are collectively referred to as the "Common Interest Group."

1

acquisition of Ottomotto ("Uber-Ottomotto acquisition") could spark intense litigation from Google/Waymo because of "the potentially billion dollar commercial market involved." Declaration of John F. Gardner ("Gardner Decl.") ¶ 3.

Members of the Common Interest Group retained counsel to provide legal advice surrounding the transaction and to prepare for litigation that might occur as a result of the transaction. Mr. Levandowski retained John F. Gardner ("Mr. Gardner") of Donahue Fitzgerald LLC to "evaluate those risks, anticipate defenses, and assess legal strategies." *Id.* ¶ 4. Mr. Ron retained Alisa Baker of Levine & Baker LLP. Tate Decl. ¶ 4. Uber retained Morrison & Foerster LLP ("Morrison") to advise on "potential claims that could be brought by Google against two of [Ottomotto's] founders, Anthony Levandowski and Lior Ron, who had left Google to create the target companies that ultimately became Ottomotto and Otto Trucking." *Id.* ¶ 3. Otto retained O'Melveny & Myers LLP ("O'Melveny"). *Id.* ¶ 4. Separate corporate lawyers were also employed to advise the parties with respect to the corporate acquisition. *Id.* The corporate transaction counsel for Uber was Cooley LLP, and the corporate transaction counsel for Otto were corporate transactional lawyers at O'Melveny. *Id.* ¶¶ 3–4.

From the very beginning, the Common Interest Group recognized their shared common interest in defending against legal claims. Gardner Decl. ¶¶ 3–4. They also recognized that to prepare a defense, they needed to ensure that communications between them remained confidential and privileged. *Id.* ¶ 4. Accordingly, the Common Interest Group orally entered into a common interest agreement, sent emails demonstrating their understanding, and later memorialized their oral agreement by executing a written joint defense agreement. Tate Decl. ¶¶ 6–8, 10; Gardner Decl. ¶¶ 8–10. At all times, the Common Interest Group and their counsel operated within the boundaries of their common interest privilege – namely, they operated with the understanding that information gathered and documents shared would remain privileged and confidential among the Common Interest Group. *See, e.g.*, Gardner Decl. ¶ 9 ("I would not have communicated freely with these parties, in particular with respect to the Stroz investigation, but for my understanding that those communications were privileged.").

Morrison and O'Melveny retained an investigative firm, Stroz Friedberg, to conduct a

2

detailed investigation. These were litigation consultants hired by litigation counsel to help prepare a litigation defense. During the course of the resulting investigation, Morrison and O'Melveny litigators regularly consulted with Stroz Friedberg personnel to learn relevant facts and information so they could better craft legal advice for Otto and Uber regarding potential litigation. Mr. Levandowski and Mr. Ron's counsel also interacted with Stroz Friedberg to provide guidance as to the investigation. During the investigation, each of the lawyers discussed issues with Stroz Friedberg and gave litigation advice as a result of what they learned. Once Stroz Friedberg concluded its investigation, it summarized its legal findings in a report published in August 2016 (the "Stroz Friedberg report").[2] The Common Interest Group used the Stroz Friedberg investigation and resulting report to craft and define much of their litigation defense strategy. The Stroz Friedberg report is the centerpiece of the present dispute.

## III. ARGUMENT

### A. Attorney-Client Privilege, Work Product Doctrine, and Common Interest Privilege All Protect the Stroz Friedberg Report.

#### 1. The Stroz Friedberg Report is attorney-client privileged.

Waymo wants a copy of the Stroz Friedberg report. Waymo should not get it. It is attorney-client privileged.

The attorney-client privilege protects confidential communications between attorneys and clients for the purpose of giving legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege exists where: "(1) . . . legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Rembrandt Patent Innovations, LLC v. Apple Inc.*, No. C 14-05093 WHA, 2016 WL 427363, at *3 (N.D. Cal. Feb. 4, 2016) (quoting *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)). The attorney-client privilege may extend

---

[2] For purposes of this memorandum, "Stroz Friedberg report" refers to both the report and its exhibits.

3

to communications with third parties who have been engaged to help the attorney provide legal advice. *See, e.g.*, *Segerstrom v. United States*, No. C 00-0833 SI, 2001 WL 283805, at *2 (N.D. Cal. Feb. 6, 2001) ("The [attorney-client] privilege also covers papers prepared by the attorney or by a third party at the attorney's request for the purpose of advising the client, insofar as the papers are based on and would tend to reveal the client's confidential communications.") (citation omitted).

The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co.*, 449 U.S. at 390 (citations omitted). However, the privilege belongs to the client, regardless of whether the client is a party to the case in which the communication is sought. *See, e.g.*, *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967) ("Not only may an attorney invoke the privilege in his client's behalf when the client is not a party to the proceeding in which disclosure is sought but he should do so, for he is duty-bound to raise the claim in any proceeding in order to protect communications made in confidence.") (internal quotations and citations omitted). It is an attorney's duty to invoke the privilege on the client's behalf and refuse to reveal confidential communications; the attorney cannot waive privilege on the client's behalf. *Id.*

It is undisputed that Mr. Levandowski's communications with his own lawyer, Mr. Gardner, are attorney-client privileged. In January 2016, prior to the creation of the Stroz Friedberg report and the execution of the Joint Defense Agreement, Mr. Levandowski consulted with Mr. Gardner to receive personal counsel regarding his departure from Google and his joining Uber as part of the Uber-Ottomotto acquisition. From the outset, Mr. Levandowski recognized —as did the Defendants—that Google might initiate litigation following Uber's acquisition of Ottomotto.

Contrary to Waymo's unsupported allegations, Mr. Levandowski's communications *were* offered so that Mr. Gardner could plan a legal defense. His communications with the Common Interest Group were made in a manner to ensure that his privilege was not waived and that it remained confidential. Mr. Levandowski's confidential communications to Mr. Gardner in order to receive candid legal advice is textbook attorney-client privileged information. *See, e.g.*, *Rembrandt Patent Innovations, LLC*, 2016 WL 427363, at *5–6 (finding attorney-client privilege and rejecting

4

plaintiff's argument that attorney-client communications and disclosures were made for commercial interests, rather than legal interests, when they occurred for "conducting due diligence, perfecting title in [a] patent, identifying targets for litigation, and developing legal strategies").

Waymo mistakenly argues that Mr. Levandowski waived any attorney-client privilege by interacting with Stroz Friedberg. Mr. Levandowski was Ottomotto's Chief Executive Officer. Stroz Friedberg's investigation—as well as its final report—are protected by the attorney-client privilege because Stroz Friedberg's work was to assist the lawyers advising Mr. Levandowski, Ottomotto, and the other parties. Litigation counsel retained Stroz Friedberg to assist all parties. The Stroz Friedberg report was created at the direction of litigation counsel, supervised by litigation counsel, and delivered to litigation counsel and no one else. When a consultant is hired to assist litigation counsel, privilege extends to those consultants. No waiver occurs when the consultation was "primarily or predominantly to facilitate legal advice." *See MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 411-CV-05341 YGR JSC, 2013 WL 5594474, at *3 (N.D. Cal. Oct. 10, 2013) ("[I]f [a] third-party consultant is involved in the giving of legal advice, the privilege obtains.") (citations omitted); *see also Segerstrom*, 2001 WL 283805, at *4 (N.D. Cal. Feb. 6, 2001) (finding no waiver of attorney-client privilege where "communications between third parties and the attorneys were rendered at the attorneys' request to assist in providing legal services to the clients").

2.  <u>Stroz Friedberg's work is also protected attorney work product.</u>

The Stroz Friedberg report is attorney work product. The work-product doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989); *see also* Fed. R. Civ. P. 26(b)(3). Rule 26(b)(3) protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation. *See F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983). The standard for attorney work product does not consider whether litigation was a primary or secondary motive behind the creation of a document. *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004). Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and would not have been created in

5

substantially similar form but for the prospect of that litigation." *Id.*

The Stroz Friedberg report was produced in anticipation of litigation. Gardner Decl. ¶ 6. Here, the Common Interest Group recognized the need to prepare for a potential future suit with Google/Waymo, and commissioned an investigation and report by Stroz Friedberg to inform their legal strategy. In fact, the Common Interest Group entered their Joint Defense Agreement in order to expedite the process of sharing confidential information in preparation of anticipated litigation after acquisition. Baker Decl. ¶¶ 5,6. Notably, in entering a joint defense agreement, Mr. Levandowski and Otto expressly preserved their right to attorney client-privilege and work-product immunity: "[Otto and Mr. Levandowski], as the holder of those privileges, do[] not intend any communications between [the parties] to be deemed a waiver of [attorney-client and attorney work product] privileges whether not specifically referenced in a particular document or communication, and whether or not we enter into a formal Joint Defense Agreement with respect those matters."

The fact that the acquisition of Ottomotto was being finalized while the Common Interest Group was obtaining this report is beside the point. A term sheet had already been signed. Uber had already agreed to the acquisition. The Common Interest Group had a separate need to share information through a joint defense agreement to prepare for possible litigation. The Common Interest Group shared an interest in ensuring that the individual group members complied with all legal obligations to protect individual attorney-client privileges and work product protections.

Waymo incorrectly argues that the Common Interest Group waived their work product protection by sharing information with Stroz Friedberg. Stroz Friedberg was part of the team that helped inform the litigation strategy, and was part of the investigative team creating the work product. In addition, work product protection is not waived by merely sharing information with third parties when parties share an interest. Rather, work product is only waived when disclosed to an adversary or to someone who "substantially increase[s] the opportunities for potential adversaries to obtain the information." *Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994) (citation omitted); *see also Sullivan v. Warminster Twp.*, 274 F.R.D. 147, 150 (E.D. Pa. 2011) ("disclosure to a third party only waives the work-product privilege if it permits an adversary to gain access to the information").

This rule makes sense, as retention of consultants is often necessary to develop litigation strategy. For that reason, Courts have held that disclosing work product to a witness or third party does not waive protection because such disclosures are often necessary to enable the attorney to prepare for litigation. This understanding is consistent with the purposes of the work product doctrine. *See S.E.C. v. Berry*, No. C07-04431 RMW HRL, 2011 WL 825742, at *6–8 (N.D. Cal. Mar. 7 2011) (disclosure of work product to independent auditors does not waive protection); *see also B.C.F. Oil Ref., Inc. v. Consol. Edison Co. of N.Y.*, 168 F.R.D. 161, 165–66 (S.D.N.Y. 1996) (waiver does not occur when subject of investigative interview is given copy of interview transcript).

### 3. A valid common interest existed.

The common interest privilege also applies here, and precludes waiver of the attorney-client privilege or work product protection. The Common Interest Group recognized at the outset that they shared a common legal interest in connection with the Uber-Otto acquisition. As Judge Alsup explained:

> [An exception to the waiver of privilege] applies where parties are represented by separate counsel but engage in a common legal enterprise. The interests of the parties involved in a common defense need not be identical, *and, indeed may even be adverse in some respects*. The joint-defense exception, however, protects only those communications that are part of an on-going and joint effort to set up a common defense strategy.

*Rembrandt Patent Innovations, LLC*, 2016 WL 427363, at *7 (citing *Holmes v. Collection Bureau of Am., Ltd.*, No. C 09-02540 WHA, 2010 WL 143484, at *3 (N.D. Cal. Jan. 8, 2010)) (emphasis added). This privilege is so strong that no one member of a joint interest group can waive it. *United States v. Gonzalez*, 669 F.3d 974, 982–83 (9th Cir. 2012).

What was true in *Rembrandt* remains true here. The Common Interest Group—Uber, Ottomotto, Otto Trucking, Mr. Levandowski, and Mr. Ron—were, from the outset, concerned about litigation in connection with the Uber-Otto acquisition. They were concerned that Google might litigate as a result of the transaction and, on that basis, sought legal counsel to help prepare a defense. Or as Judge Alsup put it in *Rembrandt Patent Innovations, LLC*, they were "part of an on-going and

joint effort to set up a common defense strategy." 2016 WL 427363, at *7.

Waymo claims that the form of the transaction here precludes a finding of common legal interest. Waymo is wrong. *Rembrandt Patent Innovations, LLC* expressly recognizes that circumstances surrounding the assertions of privilege may be nuanced and not subject to such sweeping and generalized premises. *Id.* at *7 ("The interests of the parties involved in a common defense need not be identical, *and, indeed may even be adverse in some respects*.") (emphasis added); *accord Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965); *Holmes v. Collection Bureau of Am., Ltd.*, No. C 09-02540 WHA, 2010 WL 143484, at *2 (N.D. Cal. Jan. 8, 2010). The fact that Uber was acquiring Ottomotto does not preclude the inquiry surrounding common-interest privilege, but invites it.

Indeed, this District has recognized that such common legal interests exist in the buyer-seller context, *see, e.g.*, *BriteSmile, Inc. v. Discus Dental Inc.*, No. C 02-3220 JSW (JL), 2004 WL 2271589, at *2 (N.D. Cal. Aug. 10, 2004), *aff'd*, No. C 02-03220 JSW, 2004 WL 3331770 (N.D. Cal. Oct. 26, 2004) (affirming Judge Larson's finding of common legal interest in connection with technology acquisition); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987) (finding the parties had a common legal interest in connection with the sale of a business), and in cases where the parties enter into indemnification agreements among each other, *see, e.g.*, *Callwave Commc'ns, LLC v. Wavemarket, Inc.*, No. C 14-80112 JSW (LB), 2015 WL 831539, at *4 (N.D. Cal. Feb. 23, 2015) (Judge Beeler explaining that the parties "have an interest in defeating . . . claims of patent infringement in the Underlying Litigation. That they also have negotiated possible indemnification with respect to those claims does not necessarily cancel that out.").

Waymo strains to characterize the Joint Defense Agreement as a document purporting to show a common *business* interest among the Common Interest Group. This is not a case where a consultant is hired, does not interact with counsel, and only later does a party try to claim attorney-client and attorney work product immunity. Even a cursory reading of the Joint Defense Agreement, the retention of Stroz Friedberg, or the report itself demonstrates that the interest here was legal, not business. The parties entered into the Joint Defense Agreement to memorialize their understanding that they shared common legal interests with respect to the Uber-Otto acquisition. Tate

8

Decl. ¶ 6. Uber and Otto also executed an indemnification agreement that, *inter alia*, engaged Stroz Friedberg to conduct an investigation related to the transaction. Gardner Decl. ¶¶ 5–6. The goal of Stroz Friedberg's investigation and report was to assist litigation counsel in preparing a litigation defense. All communications were with litigation counsel to advance a defense objective. Here, the consultant was hired for a litigation purpose at the very beginning, and the Common Interest Group vigorously maintained confidentiality in their communications and work product.

    4.    <u>Mr. Levandowski's reasonable reliance on the existence of a privilege warrants recognizing privilege.</u>

Mr. Levandowski's reliance on the privilege and work product protections provide an independent basis to find that each of these protections apply. The cornerstone of the attorney-client privilege is to protect the client against the invasion of its most sensitive and confidential communications with its lawyers, and to encourage the complete disclosure of information between attorney and client, all furthering the interests of justice. *Upjohn Co.*, 449 U.S. at 389. The privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390.

When a client reasonably believes that the individual with whom he or she was communicating was an attorney competent to render legal advice, those communications are privileged. The Supreme Court articulated this "reasonable belief" test in Supreme Court Standard 503, which provides that for purposes of applying attorney-client privilege, an attorney is defined as a "person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." Supreme Court Standard 503(a)(2), 56 F.R.D. 183, 236 (1973).[3] Further, the "reasonable belief" standard has long been followed by federal courts, including courts in this District. *See, e.g.*, *Miller v. Int'l Bus. Machines*, No. C02-2118 MJJ(MEJ), 2006 WL 6619990, at *6 (N.D. Cal. Apr. 14, 2006) (finding the attorney-client privilege protected the production of communications and documents when the plaintiff "could have reasonably believed that [a third party] was acting as a

---

[3] Standard 503 is generally considered an authoritative restatement of federal common law. *United States v. Spector*, 793 F.2d 932, 938 (8th Cir. 1986), *cert. denied*, 479 U.S. 1031 (1987); *see also In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 217–18 n.2 (S.D.N.Y. 2001).

lawyer"); *Speaker ex rel. Speaker v. Cty. of San Bernardino*, 82 F. Supp. 2d 1105, 1112 (C.D. Cal. 2000) ("[S]everal courts and treatises have stated that where a client reasonably believed that her/his confidential communication was with an attorney, the attorney/client privilege still applies."); *United States v. Rivera*, 837 F. Supp. 565, 568 n.1 (S.D.N.Y. 1993) (same).

Mr. Levandowski, Mr. Ron, Uber, and Otto took pains to ensure from the start that communications and documents necessary for counsel to render competent legal advice remained protected among all parties. Mr. Levandowski is entitled to reasonably rely upon the assured confidentiality. Mr. Levandowski retained Mr. Gardner as his counsel. It was on this basis that he revealed to Mr. Gardner information regarding his tenure at Waymo, his role in launching Ottomotto and Otto Trucking, and, importantly, the documents that now form the subject of this motion. Waymo's request seeks to undermine a fundamental protection afforded by our legal system. *See United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) ("It is important to note that the attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system."). Moreover, when it became clear that Uber would acquire Ottomotto and Otto Trucking, Mr. Levandowski took reasonable steps to preserve that privilege throughout the entirety of the acquisition process. Gardner Decl. ¶¶ 8–10, 12. Mr. Levandowski, Ottomotto, Otto Trucking, and Uber recognized that all parties shared common legal interests in the course of the acquisition. *Id.* ¶ 4. The Common Interest Group entered into an oral agreement memorializing their understanding of protected information, and weeks later entered into the written Joint Defense Agreement.

### B.     The Crime-Fraud Exception Does Not Apply

Waymo argues that it is entitled to discovery of the privileged documents on the basis of the crime-fraud exception. However, Waymo fails to make any of the requisite showings necessary to establish that the exception applies here.

To invoke the crime-fraud exception, Waymo must satisfy the Ninth Circuit's two-part test:

> First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." Second, it must demonstrate that the attorney-client communications for which production is sought are "sufficiently

10

related to" and were made "*in furtherance of* [the] intended, or present, continuing illegality."

*In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016) (citations omitted) (emphasis added). Here, Waymo fails to show either; Waymo does not identify any ongoing crime or fraud, nor does it point to any attorney-client communications that were used in furtherance of that alleged crime or fraud.

To prevail, Waymo must set forth a reasonable basis that Mr. Levandowski was committing or intending to commit a crime or fraud *at the time* that he sought the advice from his attorney. Waymo has not met this burden.

The timing of the crime that Waymo alleges occurred here is important. The exception applies to ongoing or future crimes only, and does not overcome the attorney-client privilege with respect to communications of past wrongdoings, the commission of which have ceased by the time the client sought the advice of counsel. *See United States v. Zolin*, 491 U.S. 554, 562–63 (1989) ("The attorney-client privilege 'ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing*, but to *future wrongdoing*.'" (citing 8 J. Wigmore, § 2298 (McNaughton Rev. 1961) (emphasis in original); *Clark v. United States*, 289 U.S. 1, 15 (1933)); *see also In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996) (affirming district court's finding of no crime-fraud exception, and explaining that "the [crime-fraud] exception does not sweep so broadly that it discourages clients from 'mak[ing] full disclosure to their attorneys of *past wrongdoings*, in order that the client may obtain the aid of persons having knowledge of the law and skilled in its practice'") (citing *Zolin*, 491 U.S. at 562).

Waymo's factual argument reflects that no ongoing crime or fraud existed when Mr. Levandowski sought the advice of counsel. Waymo alleges that Mr. Levandowski's crime was in the commission of trade secret theft. Mot. at 13. That occurred, Waymo alleges, prior to Mr. Levandowski's departure from Google. The documents at issue here were created at least two months *after* Mr. Levandowski left Google.

Waymo next contends that the ongoing criminal activity is in the ongoing *concealment* of trade secret misappropriation by way of Defendants' refusal to produce the documents. Mot. at 14

11

("There is also substantial evidence that the withheld Stroz Friedberg report is related to and in furtherance of at least concealing that trade secret theft."). The mere act of *withholding* information from the subpoenaing party cannot form the basis of waiving attorney-client privilege via the crime-fraud exception because the very purpose of the attorney-client privilege is to maintain the confidences of communications between clients and their attorneys. *Zolin*, 491 U.S. at 562 (expressly recognizing that "the [attorney-client] privilege has the effect of *withholding* relevant information from the factfinder") (emphasis added) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

Finally, Waymo requests the Court to nevertheless pierce the privilege on the basis that the Court "may draw [] an inference" of wrongdoing. Mot. at 13–14 ("The Court may infer from these invocations of the Fifth Amendment that Mr. Levandowski and Defendants had a common interest in planning, engaging in, or concealing the misappropriation of Waymo's trade secrets."). But again, such an interpretation misapplies the crime-fraud exception. The inference is the first step, not the last, in determining whether the exception applies. To otherwise follow Waymo's argument to its logical conclusion: invoking a privilege in one manner, *i.e.*, through the Fifth Amendment, would by itself revoke privilege in another, *i.e.*, the attorney-client privilege. Of course, this makes no sense, nor is it supported in law. *See Griffin v. California*, 380 U.S. 609, 614 (1965) (recognizing that allowing an opponent to comment on a claim of privilege would seriously undermine the value of the privilege, and therefore forbidding prosecutors to comment on an accused's assertion of the Fifth Amendment privilege against self-incrimination).

### IV. CONCLUSION

For the foregoing reasons, Mr. Levandowski respectfully requests that the Court DENY Plaintiff Waymo's Motion to Compel.

Dated: May 8, 2017

Respectfully submitted,

By: /s/
    Miles Ehrlich
    Ismail Ramsey
    Amy Craig
    Ramsey & Ehrlich LLP
    803 Hearst Avenue
    Berkeley, CA 94710
    Tel: (510) 548-3600
    Fax: (510) 291-3060

    miles@ramsey-ehrlich.com
    izzy@ramsey-ehrlich.com
    amy@ramsey-ehrlich.com

Attorneys for Non-Party
ANTHONY LEVANDOWSKI