MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
RUDY Y. KIM (CA SBN 199426)
RKim@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone: 202.237.2727
Facsimile: 202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | Case No.    3:17-cv-00939-WHA<br><br>**DECLARATION OF JOHN F. GARDNER IN SUPPORT OF DEFENDANTS' OPPOSITION TO WAYMO'S MOTION TO COMPEL PRODUCTION OF WITHHELD DOCUMENTS**<br><br>Date:   June 8, 2017<br>Time:  10:00 a.m.<br>Ctrm:  F, 15th Floor<br>Judge: Hon. Jacqueline Scott Corley<br><br>Trial Date: October 2, 2017 |

I, John F. Gardner, declare as follows:

1. I am a member of the bar of the State of California and a partner with Donahue Fitzgerald LLP. I submit this declaration in support of Defendants' Opposition to Motion to Compel Production of the Stroz Due Diligence Report. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently as to these facts.

2. I was contacted in late January 2016 by Anthony Levandowski ("Mr. Levandowski") to provide personal counsel regarding a potential corporate transaction with Uber Technologies, Inc. ("Uber") (the "Transaction"). Mr. Levandowski had retained O'Melveny & Myers LLP ("OMM") as primary corporate counsel with respect to the Transaction representing Ottomotto LLC and Otto Trucking LLC (collectively "Otto").

3. The parties recognized from the outset that there was a tangible risk that Google would file litigation against Uber, Otto, Mr. Levandowski, and Lior Ron ("Mr. Ron") if the Transaction was consummated. The proposed Transaction involved the movement of former high-level executives from Google's self-driving car program, Project Chauffer, to another autonomous vehicle program. The litigation risk was particularly high due to the intensely competitive nature of the self-driving vehicle industry and the potentially billion dollar commercial market involved. A significant part of my practice is supervising litigation on behalf of corporate clients, which has included corporate disputes regarding executives moving from one company to another, so I was particularly aware of this issue and the potential risk.

4. Based on the common interest the parties shared in protecting against this tangible risk of litigation, our open acknowledgement of that risk, and the need to share information freely among the firms in order to adequately evaluate those risks, anticipate defenses, and assess legal strategies, I viewed my conversations and communication with OMM, Morrison, Baker and their clients regarding a factual investigation and potential litigation by Google to be privileged from the outset of our engagement. The parties assigned specialized legal teams to handle various aspects of the Transaction. For purposes of the litigation risk and defensive strategy, Uber was primarily represented by Eric Tate at Morrison & Foerster LLP ("Morrison"), Otto was

represented by Eric Amdursky at OMM, Mr. Ron was represented by Alisa Baker at Levine & Baker LLP ("Baker"), and I represented Mr. Levandowski.

5. On February 22, 2016, the parties entered into a Term Sheet with respect to the Transaction. The signing documentation included a formal Indemnification Agreement (called an "Indemnity Construct"). The Indemnification Agreement provided for OMM and Morrison to engage a consultant to conduct an investigation, and they retained Stroz Friedberg LLC ("Stroz") for this purpose (the "Stroz Investigation").

6. I worked jointly with OMM, Morrison and Baker with respect to the process involved in the Stroz Investigation, which included numerous conference calls and correspondence. Based on Stroz's work we discussed how to approach various possible litigation scenarios, legal theories Google might assert against Uber, Otto, Mr. Levandowski and/or Mr. Ron, and how best to refute and defend against any claims that might arise. I also worked internally with Donahue litigators and employment partners to assess the parties' litigation exposure, how claims might arise, and how best to prepare for defending against them in possible future litigation.

7. OMM, Morrison, Baker and I crafted a set of guidelines for Stroz, and worked together regarding a strategy to be employed in the Stroz Investigation.

8. On March 11, 2016, I received a draft Joint Defense, Common Interest, and Confidentiality Agreement ("Joint Defense Agreement") which OMM was negotiating with Morrison for the purpose of confirming our prior discussions and agreement that the parties were working jointly in furtherance of a common interest in the anticipation of potential litigation by Google in connection with the Transaction.

9. On March 22, 2016, I sent separate e-mails to OMM, Morrison and Baker in order to confirm our understanding that we were working collaboratively under the common interest doctrine. I would not have communicated freely with these parties, in particular with respect to the Stroz Investigation, but for my understanding that those communications were privileged.

10. A formal Joint Defense Agreement was signed on or about April 11, 2016.

11. At the end of the Stroz Investigation, Stroz produced a final Report. The Report was delivered to OMM, Morrison, Donahue and Baker on or about August 5, 2016 by secure, passcode protected electronic delivery. The Report also included a series of Exhibits, based on the results of the search criteria supplied by the law firms and applied by Stroz to information provided by Mr. Levandowski, as well as Mr. Ron and three other employees who participated in the Stroz Investigation review process. The Exhibits reflected the attorneys' directions regarding what to search for, and what types of litigation risks were anticipated in connection with the Transaction. I reviewed the Report and continued our risk assessment and legal strategy based in its findings.

12. Under the Joint Defense Agreement, the parties were required to keep the Report in strict confidence. To my knowledge, since its release to the parties to the Joint Defense Agreement by Stroz, the Report was not and has not been shared with anyone other than the parties to the Joint Defense Agreement. In addition, Donahue has at all times treated the Report and information learned from the Report, including the Exhibits to the Report, and all communications pertaining to the Report, as privileged and confidential.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 7th day of May, 2017, in Walnut Creek, California.

John F. Gardner