**Pages 1 - 32**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Judge

| | | |
|---|---|---|
| WAYMO LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | **NO. CV 17-00939-WHA** |
| | ) | |
| UBER TECHNOLOGIES, INC., ET | ) | |
| AL., | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | |

San Francisco, California
Thursday, May 11, 2017

<u>**TRANSCRIPT OF PROCEEDINGS**</u>

<u>**APPEARANCES**</u>:

For Plaintiff:

        QUINN EMANUEL URQUHART & SULLIVAN LLP
        50 California Street - 22nd Floor
        San Francisco, CA  94111
   BY: **MELISSA J. BAILY, ESQUIRE**
       **DAVID A. PERLSON, ESQUIRE**

For Defendant Uber Technologies, Inc.:
        MORRISON & FOERSTER LLP
        425 Market Street
        San Francisco, CA  94105
   BY: **ARTURO J. GONZALEZ, ESQUIRE**

(Appearances continued on the next page)

Reported By:     Pamela A. Batalo, CSR No. 3593, RMR, FCRR
             Official Reporter

APPEARANCES CONTINUED:

For Defendant Otto Trucking LLC:
                            GOODWIN PROCTER LLP
                            135 Commonwealth Drive
                            Menlo Park, CA  94025
                    **BY:  INDRA NEEL CHATTERJEE, ESQUIRE**

For Nonparty Anthony Levandowski:
                            RAMSEY & EHRLICH LLP
                            803 Hearst Avenue
                            Berkeley, CA  94710
                    **BY:  MILES F. EHRLICH, ESQUIRE**

Special Master:
                            FARELLA BRAUN & MARTEL LLP
                            235 Montgomery Street - Suite 1700
                            San Francisco, CA  94104
                    **BY:  JOHN L. COOPER, ESQUIRE**

| | |
|---|---|
| 1 | **Thursday - May 11, 2017**                                    **2:07 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **---oOo---** |
| 4 | **THE CLERK:**  Remain seated and come to order.  Court is |
| 5 | now in session, the Honorable Jacqueline Corley presiding. |
| 6 | California Civil Action C 17-939, Waymo vs. Uber. |
| 7 | Counsel, please come up to the podium and state your |
| 8 | appearance. |
| 9 | **MS. BAILY:**  Good afternoon.  Melissa Baily and David |
| 10 | Perlson for Waymo. |
| 11 | **MR. GONZALEZ:**  Good afternoon, Your Honor.  Arturo |
| 12 | Gonzalez from Morrison & Foerster on behalf of Uber. |
| 13 | **MR. CHATTERJEE:**  Good afternoon, Your Honor.  Neel |
| 14 | Chatterjee of the Goodwin firm for Otto Trucking. |
| 15 | **MR. EHRLICH:**  Good afternoon, Your Honor.  Miles |
| 16 | Ehrlich of Ramsey & Ehrlich on behalf of nonparty Anthony |
| 17 | Levandowski. |
| 18 | **MR. COOPER:**  And John Cooper, Special Master. |
| 19 | **THE COURT:**  Good afternoon. |
| 20 | The reason I set this hearing or status was because when |
| 21 | Judge Alsup -- you guys must have totally worn him out at that |
| 22 | Preliminary Injunction hearing because shortly thereafter, I |
| 23 | get an email from him saying, *I'm just going to give you all* |
| 24 | *discovery.* |
| 25 | So I wanted to set this up because I want to make sure -- |

1    and we talked a little bit about framework before, but with the

2    Special Master, I want to talk about framework because I just

3    have this suspicion that there is going to be a lot of

4    discovery disputes over the next few months, and I want to make

5    sure we have a framework, that we're all on board with how it's

6    going to work with the Special Master.

7         And then, of course, in the interim, I have these briefs

8    in front of me which are scheduled for hearing on the 8th, but

9    I think there may be some things that we can do between now and

10   then that will narrow and frame things a little better because

11   what I don't want to happen is I get here on the 8th and then I

12   say, *But now let's do this* or *what about this*, and there may be

13   things in the interim, so I want to talk about that.

14        But the first thing I want to ask about is the Acquisition

15   Agreement, Mr. Gonzalez.  Has that been provided now?

16        **MR. GONZALEZ:**  That is being produced today,

17   Your Honor.

18        **THE COURT:**  Today.  Okay.

19        So you will get that today.

20        **MS. BAILY:**  We have not received it yet, but I trust

21   we'll get it today.

22        **THE COURT:**  He said it in front of the Court.  You

23   will get it today.  All right.

24        So then let's talk just generally framework.  The way I

25   kind of see things working in this case, which is what I would

1   hope would -- what I'm going to do is rely on Mr. Cooper to

2   tell me or Ms. Means in particular, *Okay, here is a dispute*

3   *that is ripe for you to decide,* and what that will do is it

4   will force the parties to go to him first because I think he

5   can probably help you narrow things quite a bit.

6       And so then when you're at impasse, then he can tell

7   Ms. Means -- and as I've said before, we can put things on very

8   quickly, but he can also then tell me this is how the parties

9   have decided to brief it, present it.

10      I'm going to leave that up to you and him.  You have

11  complete freedom on how you want to do it.  So you don't have

12  to do joint letters.  If you prefer separate letters, it can be

13  10 pages, 5 pages, 50 pages, but -- I don't know if I'll read

14  it all, but if that's what you want to do, you can do it.

15      But I want it to all go through Mr. Cooper.  He is really

16  the facilitator, the organizer because I think a lot of it --

17  and I know he has with you in the past -- can be narrowed quite

18  a bit.  Then he will tell Ms. Means and then we'll schedule

19  hearings and I will know it's coming.

20      So nothing should ever be sent directly to me without it

21  going first to Mr. Cooper and then Mr. Cooper alerting me that

22  it's coming.

23      Does that work?

24          **MR. CHATTERJEE:**  Yes, Your Honor.

25      I have one question about it.

1          **THE COURT:**  Yes.

2          **MR. CHATTERJEE:**  So just recently, it appears that

3     we're also going to be starting third-party discovery.  I don't

4     know if there is going to be food fights on that front as well.

5          How do you want to handle those issues?

6          **THE COURT:**  I would like the same thing, to go through

7     Mr. Cooper, because part of it is it's just a matter of

8     organization.  I just can't -- if it's coming flying at me all

9     this way, I can't keep track of it.  That's why we have a

10    Special Master in a case like this.

11         We all decided -- I think it makes great sense -- we

12    didn't want three levels of decision-makers.  So he's not a

13    final decision-maker, but he's a facilitator and a

14    settlement -- or a mediator to the extent -- to help the

15    parties do that, and there is no reason with the third party he

16    can't do that as well, especially because he will know you so

17    well, though he knew you well before -- he will continue to

18    know you so well, he will be able to work with you and the

19    third parties, my hope is, to at least reduce the number of

20    disputes that have to be brought to the Court.

21         Okay.  All right.  So does that all make sense?

22         **MS. BAILY:**  Yes, Your Honor.

23         **THE COURT:**  Okay.  All right.

24         Now, with respect to the pending motion to compel, which

25    is related to the Due Diligence Report -- and I did briefly

1   read through them.  They're not -- I'm not going to decide

2   anything today.  No worries.

3        But I guess there was one issue, I guess I had, for Waymo

4   was that Mr. Levandowski had moved to intervene for the

5   purpose, if I recall, just for filing an opposition.

6        **MS. BAILY:**  Your Honor, our current thought about that

7   is that we would oppose that.  It doesn't seem that there is

8   any particular Fifth Amendment issues that are addressed in

9   that brief.

10       We're still considering it.  And actually just on

11  scheduling, which is related, currently our reply to the

12  briefs --

13       **THE COURT:**  Don't worry about that --

14       **MS. BAILY:**  But in terms of you mentioned the hearing

15  date and the hearing was set -- I think it might have actually

16  been our mistake -- on a normal motion schedule.  The briefing

17  schedule had been set by Judge Alsup to be much faster, and we

18  would request an earlier hearing date.  We don't see any need

19  to wait after our replies are due tomorrow.

20       **THE COURT:**  You're prepared to file it tomorrow?

21       **MS. BAILY:**  We are -- there is one hiccup.  We are

22  prepared to file tomorrow.

23       When defendants filed their opposition, they submitted the

24  sworn record that they are apparently going to rely on in the

25  motion.  They have now said that documents referenced but not

1    submitted in that record are going to be produced today.

2         Our position is that if they wanted them in the sworn

3    record, they should have been there, and we're prepared to file

4    our reply tomorrow.

5         If they are going to take the position or Your Honor is

6    going to consider taking a look at those materials in

7    connection with the motion, which we would argue is improper,

8    if that were the case, then we would be inclined to ask for a

9    one-day extension so that we can look at the documents that are

10   being produced later today.

11        **THE COURT:**  Well, I was even wondering -- so this is

12   where I was wondering if the Special Master could help.

13        For example, a lot of the stuff that you were complaining

14   about with respect to how detailed the privilege log is, of

15   course, all is related to the ultimate legal question of

16   whether it's work product or if the work product has been

17   waived for disclosure to third parties or if the joint defense

18   privilege operates to protect that waiver.  Is that sort of --

19   that's sort of how I see it --

20        **MS. BAILY:**  It is.  Our position is that that has

21   already shook out.  Right?  So they -- we asked and asked for

22   more detail in the log.  They produced their final log.  We

23   have issues with it, which are briefed now and are going to be

24   briefed in our reply.  We have issues with the sworn record

25   that they submitted in support of their log.  That's all taken

1    care of in this current briefing schedule.

2        Our position is that there should be no more delay, there

3    should be no more back and forth.  It's all being briefed

4    according to Judge Alsup's schedule, and it will be ready for

5    decision.

6        **THE COURT:**  You are prepared to just rely on that,

7    right, because sometimes a party wants more information because

8    they can have a more robust legal argument.

9        **MS. BAILY:**  And we would be happy to take discovery.

10   There is a lot here that we want to take discovery on.  Now

11   there are declarations that have some inconsistencies, like I

12   said.  There are documents referenced that have not been

13   produced.

14       We would like to have discovery on all of that, but that

15   is irrelevant to the motion that is pending because they had a

16   burden and we are going to argue that they didn't meet it.

17   They had many opportunities to meet that burden, and we don't

18   think that we should delay the decision so that they can keep

19   trying to meet their burden.

20       **THE COURT:**  Well, certainly not new documents, but

21   they have submitted documents with their opposition.

22       **MS. BAILY:**  They have submitted declarations that

23   reference documents that have not been submitted.

24       **THE COURT:**  Well, stop me if I'm saying something -- I

25   don't have -- so, for example, the Engagement Letter was

1  something that you referred to in your motion as having not

2  been produced or logged, but I thought it was attached to their

3  opposition.

4       **MS. BAILY:**  That's correct.  So a redacted version of

5  that document has been attached.  We were aware of potentially

6  the existence of that document, which is why we called it out.

7       In opposition, documents about which we had no awareness

8  are referenced in declarations.  However, they are not

9  submitted as attachments as part of the sworn record that

10  defendants submitted for consideration.

11      Now, they had their chance, and, you know, we don't think

12  that there needs to be anymore delay for  there is documents to

13  be produced and considered.  They weren't submitted.  They're

14  not part of the record.  And we should move forward and get a

15  decision.

16      **THE COURT:**  All right.  So you are satisfied with the

17  record as it's -- so what they've submitted, they've submitted;

18  I'll consider; and you're satisfied then with the record.  You

19  don't want, for example, any argument as to what was redacted,

20  that you should be able to see that?

21      **MS. BAILY:**  Well, no.  There might be arguments about

22  that, but it's not germane to the issue in this motion.

23      **THE COURT:**  That's what I mean.  In connection with

24  this motion.

25      **MS. BAILY:**  So it's not like we waive all rights --

1          **THE COURT:**  Of course not.   Right.   Of course not.

2      Did you want to say something?

3          **MR. GONZALEZ:**  Not yet, Your Honor.

4          **THE COURT:**  Okay.

5          **MR. GONZALEZ:**  I'm just listening.

6          **THE COURT:**  Anyone over there?

7          **MR. CHATTERJEE:**  I'll say one thing.

8      It sounds like if they have discovery issues with us, that

9  should be the issue that is taken to Mr. Cooper and doesn't

10 need to be resolved today.

11         **THE COURT:**  No.   Nothing.   None of that -- that's

12 exactly what they're saying, actually, is that they're

13 satisfied with having me decide the motion based on the record

14 as it stands, the log as it stands, the documents that you've

15 produced, that weren't produced earlier, but they'll just

16 accept them.   They're there as they are --

17         **MS. BAILY:**  I mean -- and, Your Honor, just to be

18 clear, right, so we're filing our reply tomorrow, a portion of

19 which will deal with this discovery.   You know, our position is

20 that the record is insufficient --

21         **THE COURT:**  No.   I understand.

22         **MS. BAILY:**  -- as it is --

23         **THE COURT:**  Right.

24         **MS. BAILY:**  That said, if Your Honor has questions or

25 they come back at a hearing and make some new argument, you

1    know, then, you know -- it's a little bit of a rock and a hard

2    place.  Right?

3        They want us to brief the issue, having provided an

4    incomplete record.  We think that they haven't met their burden

5    because of that.  Right?

6        But, you know, if we get materials today that are

7    referenced in their -- you know, in their opposition that they

8    didn't deem worthy of citing, you know, in the record, what is

9    it going to say, I don't know.  Right?  I don't know.

10       And maybe we'll raise with Mr. Cooper or raise with

11   Your Honor, *Well, you know, now they're belatedly coming*

12   *forward with X, Y, and Z.  Well, I don't know what it says*.

13   Right?  So it's difficult.

14           **THE COURT:**  No.  I understand.

15       I understand your argument to be, *We believe that on this*

16   *record, as it stands today when we submit our reply* --

17   tomorrow, or if you want an extra day, that's fine -- *that we*

18   *will win.  If, though, we come to the hearing,* whatever we set

19   the hearing for, *it looks like, Judge Corley, you may be*

20   *wavering a bit or have some questions, at that point* -- we want

21   *to reserve our right at that point to maybe say, well, maybe we*

22   *do need something like that*.

23           **MS. BAILY:**  That's correct.

24           **THE COURT:**  I hear what you're saying.  Okay.

25       You still don't -- just still standing --

1          **MR. GONZALEZ:**  I'm just waiting, Your Honor.

2          **MR. EHRLICH:**  I'll chime in.

3          **MR. GONZALEZ:**  Let me add one thing and then you'd be

4    happy to add the chime.

5       I don't know what the appropriate procedure is for raising

6    this issue, but I suspect that when they file their reply

7    brief, they're going to make a lot of brand new arguments that

8    were not part of their opening papers.  That's what I suspect.

9    If I'm wrong, so be it.  If all they do is respond to our

10   points, fine.

11      But if they make brand new arguments, this is a matter

12   that is likely going to end up, one way or the other, in the

13   Federal Circuit, and we need to get it right.

14      So if they do make brand new arguments, given that we've

15   got a little bit of time, we would ask for leave -- and I don't

16   know what the appropriate procedure is -- to file a very short

17   surrebuttal brief that only addresses any new arguments that

18   they might raise.

19      Now, if they don't raise anything new, I won't have an

20   issue, but I suspect that they are going to.

21          **THE COURT:**  I'm not going to say anything and I'm not

22   going to give you an advisory opinion.  I'm not going to say

23   anything in advance.  You'll do what you do when we get to the

24   hearing and I'll say what I say and, you know, decide what I

25   decide.

1          **MS. BAILY:**  Your Honor, I would say that anything that

2     they characterize as *new arguments* is because they withheld the

3     information --

4          **THE COURT:**  That's why -- but I got it.  I got it.

5          But he's right in the sense that I do want to -- I don't

6     know if I'll get it right.  I do want to do my best and make my

7     best decision because we're -- and then I assume whatever I do

8     will get appealed to Judge Alsup and whatever he does will get

9     appealed to the Federal Circuit.  So at least I have that

10    comfort.

11         **MR. GONZALEZ:**  Your Honor, I guess my question really

12    was a procedural one, which is, is that an issue that you would

13    like us to address with the Special Master first?

14         **THE COURT:**  I don't -- sure.  Sure.

15         **MR. GONZALEZ:**  Or not?

16         **THE COURT:**  Because it may be helpful.  For example,

17    you could ask Mr. Cooper whether, you know -- you could say to

18    him, you know, *We actually think this is a brand new argument*,

19    and Mr. Cooper could say, *You're full it of it, and, no,*

20    *Mr. Gonzalez, Judge Corley will never buy that,* and then so

21    maybe you'll just decide, *Well, I don't want to waste my good*

22    *karma.*

23         **MR. GONZALEZ:**  On the other hand, on the other hand,

24    if Mr. Cooper agrees with me that these do appear to be new

25    arguments and if he were to advise that it would be reasonable

1    for us to have a short surreply, then they would have an

2    opportunity to either agree to that, or if not, we come to you.

3         **THE COURT:**  You come to me, right.  But he's not the

4    decision-maker.

5         **MR. GONZALEZ:**  Understood.

6         **THE COURT:**  That is sort of to give you a neutral's

7    view to help the parties make decisions about what they want to

8    bring to me.  I think it's a good idea to run everything by

9    him.  He has incredibly good judgment.

10        **MR. GONZALEZ:**  That is the clarity I seek.

11        **THE COURT:**  Mr. Ehrlich, they did not want you at the

12   party.

13        **MR. ERHLICH:**  Thank you.

14        **THE COURT:**  Actually, they would change their mind and

15   allow you at the party if your client would speak.

16        **MR. ERHLICH:**  So I'm told.

17      That raises -- Ms. Baily raises something that may also

18   need some clarity as to whether Mr. Cooper will be addressing

19   the issue of whether we are permitted to intervene for the

20   purpose of this motion.

21      I would say the record is quite clear that Mr. Levandowski

22   was a party to this joint defense --

23        **THE COURT:**  Can I ask you something, though?

24   Something they mentioned in their Motion to Compel, I think,

25   was that when he was asked at deposition to even acknowledge

the existence of the Due Diligence Report, if I recall, he wouldn't even answer that question.  Now, I could be wrong.  I thought that's what I read.

   If that's the case, how does he have any standing to come in and move to intervene?  Because by moving to intervene, he has to acknowledge that he's a party to the agreement.

        **MR. ERHLICH:**  Well, we briefed the issue, and the evidence is before the Court, that he -- that he signed it.  I mean, he's -- he's signed -- a signatory to the agreement that was submitted before Judge Alsup several weeks ago.

        **THE COURT:**  No.  I know it is.  It's just an interesting question because it seems a little playing fast and loose -- I'm just going to say, playing fast and loose with the courts to, on the one hand when you're asked the question at deposition in a civil case, he is not required to plead the Fifth to everything.  In fact, when courts have to decide whether there is an adverse inference or not, they are supposed to really do it on a question-by-question basis.

   When asked that question, he refused to even acknowledged the agreement's existence.  But now he's moving to intervene in something that's directly contradictory to his testimony.

        **MR. ERHLICH:**  Two answers there, Your Honor.  It's a fair question.

   One is the -- I have -- I don't know if, in fact, that's the question and answer that took place.

1      **THE COURT:**  Sure enough.

2      **MR. ERHLICH:**  It may be.  We were clearly asserting

3  very, very broadly.  That's well-known.

4      Our concern in these instances where we have a client who

5  is in that situation where they need to invoke their

6  constitutional rights is to be very concerned that civil

7  litigants will try to shoehorn any answer as a waiver of

8  subject matter and pry open and then claim he's waived.

9      **THE COURT:**  Why isn't bringing the motion then that

10  same waiver?  I mean, you shouldn't be able to have it both

11  ways.  If it's not a waiver, it's not a waiver, but you

12  shouldn't be able to avoid a waiver argument by just making

13  attorney argument.

14      **MR. ERHLICH:**  No.  That's -- that's true.  Your Honor

15  may know that we've filed a motion seeking permission to file

16  an in camera submission from Mr. Levandowski --

17      **THE COURT:**  Yes.  I --

18      **MR. ERHLICH:**  -- to address -- I mean, if it's clear

19  that there is no waiver, clearly it's our position he's a party

20  to this agreement.  We submitted it.  We have evidence before

21  the Court.

22      The Fifth Amendment is a little different question.  When

23  you take the Fifth Amendment, there can be the possibility of

24  an adverse inference, but as was heavily litigated, that's only

25  when there is corroborating evidence for the inference you're

1    trying to draw.

2        And clearly he's a party to the agreement.  We're not

3    contending otherwise.  The record, I think, more than

4    establishes that he has rights that are at stake that the Court

5    is going to adjudicate if the Court is to going to evaluate the

6    vitality of this joint defense common interest privilege.

7        If the Court would prefer a submission just on that point

8    where he's acknowledging that he's a party to it, I don't know

9    that that would be --

10            **THE COURT:**  I don't know if I prefer one.  It struck

11   me when I was reading it and I read through that that there was

12   an inconsistency there.  I don't know what it means.  I'm not

13   going to adjudicate it today.

14        So there are two things, and I understood the main thing

15   about the Motion to Intervene was wanting to have standing and

16   ability to appeal, as we all acknowledged.  This is the

17   beginning.  To appeal.  And so that's there.  That's one.

18        The second issue is the submission of something ex parte

19   that Waymo wouldn't see; right?

20            **MR. ERHLICH:**  Correct.  In camera.

21            **THE COURT:**  Would -- Uber or Otto presumably would see

22   it?

23            **MR. ERHLICH:**  No.

24            **THE COURT:**  Would not either?

25            **MR. ERHLICH:**  No.

1          **THE COURT:**  Just the Court?

2          **MR. ERHLICH:**  Only the Court.

3          **THE COURT:**  What I will tell you is I'm not going to

4     look at it until I adjudicate whether it would even be proper.

5     So I'm not even going to look at it because that to me seems

6     very dicey on this particular motion.

7          I understand on a motion with respect to the Fifth

8     Amendment privilege that's different.  But here we're just

9     talking about the Due Diligence Report and its exhibits.

10    That's what we're talking about.

11         **MS. BAILY:**  We will be filing an opposition to the

12    motion so you will have the benefit of that, Your Honor.

13         **THE COURT:**  Well, I guess that all depends on timing.

14         **MS. BAILY:**  We were going to file that opposition

15    either with our reply or a day after, you know, so very

16    quickly.  We would like to get all of these issues resolved

17    very quickly because a ruling on these issues will affect other

18    discovery, and under the current proposed schedule, discovery

19    is only going to be about two and a half months, so we don't

20    want to dilly-dally with these things.

21         We are going to respond to the Motion for Leave either

22    tomorrow with our reply or on Monday we were planning to.

23         **THE COURT:**  And you do know that the report itself was

24    provided to the Court for in camera review?

25         **MS. BAILY:**  We're aware of that, yes.

1          **THE COURT:** All right.

2          **MR. ERHLICH:** Your Honor, can I just make a comment

3     about that?

4          **THE COURT:** Yes.

5          **MR. EHRLICH:** Because I think we had a more fulsome

6     discussion before Judge Alsup earlier in the case.

7          The due diligence process, as we -- Mr. Ramsey and I

8     argued earlier -- there is a question of privilege that is

9     overarching and whether this is a valid privilege --

10         **THE COURT:** You mean the joint defense?

11         **MR. ERHLICH:** The joint defense common interest

12    privilege.

13         There is also underlying that a core Fifth

14    Amendment/*Hubbell*, active production concern, and that is

15    something that we think is appropriately, for the reasons

16    stated in our papers, addressed in camera.

17         **THE COURT:** Well, you can brief it.  No one is making

18    Mr. Levandowski produce anything.  The Motion to Compel isn't

19    directed to him; right?  So the first legal issue --

20         **MR. ERHLICH:** There is a subpoena directed to

21    Mr. Levandowski.

22         **THE COURT:** But this report, this Due Diligence

23    Report --

24         **MR. ERHLICH:** Correct.

25         **THE COURT:** -- was in the hands -- is it not -- is in

1    the hands of Uber and Otto and maybe the author; right?

2            **MR. ERHLICH:**  That's correct.

3            **THE COURT:**  So nothing is coming from your client.  So

4    the first legal question I guess I would need to have

5    answered -- and I haven't read your brief so perhaps it's in

6    there -- is how the Fifth Amendment is even implicated given

7    that nothing is coming from him, no one is asking him to do

8    anything.  He can be as far away from it as he wants.  No one

9    is asking him to do it.

10       Has that been addressed?

11           **MS. BAILY:**  Your Honor, Judge Alsup has already

12   addressed just that issue.  I believe it's Docket 205.

13           **THE COURT:**  Is that with respect to the privilege log?

14           **MS. BAILY:**  Right.  But where he essentially found

15   that there is no Fifth Amendment right to avoid testimony by

16   production when there is no -- this issue has nothing to do

17   with discovery from Mr. Levandowski.

18       We have those issues, but that's not one of these issues

19   on the Due Diligence Report.

20           **MR. ERHLICH:**  I don't think that's quite accurate, if

21   the Court reads Judge Alsup's order.

22       It was a dispute about whether the third party due

23   diligence vendor could be named on a privilege log.  But Judge

24   Alsup, in the order, went through a number of very

25   uncontroversial premises about the Fifth Amendment and how it

1    would apply.

2        And the language that's most relevant here is he

3    acknowledged that under *Fisher vs. United States*, which is the

4    predecessor to *Hubbell*, to the extent there is a valid

5    attorney-client privilege -- and at that point, there wasn't as

6    fulsome record as there is now -- to the extent there is a

7    valid attorney-client privilege, a client sharing any tangible

8    items, anything for review by an attorney, compelling counsel

9    to produce is the same as compelling an individual.

10        So it does raise the *Hubbell* concern if the Court were to

11   conclude that this is a valid joint defense common interest

12   privilege.

13        **MS. BAILY:**  Judge Alsup also found that there was

14   no -- that production by counsel was not implicated.  We're

15   talking about production by Uber.

16        **THE COURT:**  All right.  So my question is -- because

17   I'm not resolving that today.  This is just a preview.

18        Is that already -- that's briefed then?  Because I

19   haven't -- as I said, I haven't read your brief yet.

20        **MR. ERHLICH:**  The Fifth Amendment issue is not

21   squarely briefed in connection with this Motion to Compel.  It

22   has been briefed before in the case, and we could --

23        **THE COURT:**  You could just refer me to those briefs.

24        **MR. ERHLICH:**  Yes.  We could do that.

25        **MS. BAILY:**  Your Honor, I just want to flag that this

kind of serial, you know, raising of issues -- you know,

Mr. Levandowski filed all manner of paper with respect to this

motion, so the notion that this wasn't raised, if they intended

to raise it --

        **THE COURT:**  Well, I raised it.

        **MS. BAILY:**  Right.  Exactly.

      But if there was going to be an issue with respect to the

Fifth Amendment with respect to Uber's production of a due

diligence document, it should have been raised when they filed

all their other papers on this motion because there is this

tendency to do things serially with respect to

Mr. Levandowski's Fifth Amendment rights, and we don't have

time for it under the schedule.

        **MR. PERLSON:**  Sorry, Your Honor.  If I could intervene

one thing?

        **THE COURT:**  Do you oppose his intervention?  I'm just

kidding.

        **MR. ERHLICH:**  No.

        **MR. PERLSON:**  In reference to Mr. Levandowski, you

know, this first thing that Ms. Baily refers to started with

the secret hearing that they called where they were asking for

the Court's advice on Fifth Amendment, and then the Court even

commented that what happened is, as it went on -- is as they

were losing one argument, they would raise another argument.

They would lose one argument, they would raise another

1   argument.

2       They're doing the same thing here, and I will note,

3   Your Honor -- and this is probably something that we'll be

4   raising very soon -- that Mr. Levandowski himself has violated

5   the Court's orders in relation to the subpoena as to him

6   grossly.  And he is personally obstructing our ability to take

7   discovery in this case.  He was ordered to produce documents on

8   the day of his deposition.  That was about a month ago --

9       **THE COURT:**  Okay.  You know who you're going to talk

10  to about that first?  Mr. Cooper.

11      **MR. PERLSON:**  Understood.

12      But, Your Honor, what's happening here is that there seems

13  to be some interest in Mr. Levandowski and hiding things that

14  he's been involved in, and the arguments around that are

15  changing, and yet at the same time, he's not producing

16  documents in this case and he's not agreeing to say anything in

17  this case.  And it's grossly unfair.

18      **THE COURT:**  All right.  I'm not -- as I said, I will

19  decide whether he can intervene, whether he had standing,

20  whether he has all that, before I read -- before I read what he

21  says.  I just think it's a matter of fairness because the truth

22  is you can't undue it once it's there.  And I do have

23  concerns --

24      **MR. ERHLICH:**  Can't undue the in camera.

25      **THE COURT:**  Right.  Exactly.  But I'll read everything

1    you write.

2         **MR. ERHLICH:**  I will say our papers do address the

3    Fifth Amendment issue as being the basis for which we're making

4    the request.

5         **THE COURT:**  All right.

6         **MR. ERHLICH:**  So it's squarely there.

7         **THE COURT:**  You filed your motion.  You'll file your

8    opposition.  You will file your reply.

9         **MR. ERHLICH:**  Can I say, for the record, I don't agree

10   with the characterization about Mr. Levandowski's conduct in

11   discovery, but we'll talk to Mr. Cooper.

12        **THE COURT:**  You can.  Of course you can say that.

13        **MR. ERHLICH:**  Thank you.

14        **THE COURT:**  Right.  That's an example of an issue that

15   should be brought to Mr. Cooper first, and then before it's

16   then -- then he can let Ms. Means know when it's teed up for

17   me.

18       Let's see.  Today is the 11th.  I don't think I could

19   really -- your opposition and then your reply --

20        **MS. BAILY:**  So we have the reply on the original

21   motion.  That's currently set for tomorrow.  And then --

22        **THE COURT:**  Would you like until Monday?

23        **MS. BAILY:**  I mean, I do not want to hold -- do

24   anything to hold up the schedule.  So it just depends on when

25   your first availability is for a hearing.

1      The only reason that we even thought about asking for

2    Monday is because we had been told today that there are

3    documents coming today, and so, you know, if there's going to

4    be something made of these documents, we would like a chance to

5    review them before filing our reply.

6            **THE COURT:**  Well, and we should specially set this

7    hearing, I think.

8        June 1st.

9            **MS. BAILY:**  If that is your earliest availability.

10           **THE COURT:**  We are going to need some time.  It's a

11   big issue, and I have settlements.

12           **MR. GONZALEZ:**  So, Your Honor, I --

13           **THE COURT:**  You can't do the 1st?

14           **MR. GONZALEZ:**  I'm in trial that week.  I was

15   concerned as it is with the 8th.  I hadn't raised the 8th

16   because I wanted to see how the trial goes.  You know how

17   sometimes you settle at the end.  I don't think I'm going to.

18   I think we are going to be in trial that week.

19       It's only a week earlier.  It's not really going to make

20   that big a difference in the large scheme of things.

21           **THE COURT:**  How about the 24th?  And I will be as

22   ready as I am.

23           **MS. BAILY:**  Sorry.  The 24th will be the hearing?

24           **MR. GONZALEZ:**  I could do the 24th.  My only

25   reservation -- I could do the 24th, if we need to.  My only

1    reservation is there is a lot there for the Court to absorb,

2    and I know how much you have on your calendar.  If you think

3    you can do it on the 24th --

4         THE COURT:  I can do a hearing.  It does not mean I'm

5    going to issue the decision the next day.

6         MR. GONZALEZ:  Understood.

7         THE COURT:  And it may be that I decide, depending how

8    the hearing goes, there is something else I can frame -- I

9    actually think it makes sense to maybe have it.  My initial

10   take on what I've seen and read and thought, we can narrow it

11   in some sense, maybe I will want additional argument on

12   something, and get that process going.

13        MR. GONZALEZ:  Twenty-fourth will be fine.

14        MS. BAILY:  In light of that hearing date, is

15   Your Honor willing to have our reply on Monday?

16        THE COURT:  Yes.  Absolutely.  Trust me, I won't be

17   reading it this weekend.

18        MS. BAILY:  I don't know why not.

19        MR. GONZALEZ:  What time on the 24th, Your Honor?

20        THE COURT:  How about 10:00?  9:00?

21        MR. ERHLICH:  Your Honor, I know I have not even been

22   allowed into the party here, but I have a very difficult

23   conflict on the 24th, and -- at least through 1:00.

24        THE COURT:  Could you be here by 2:00?

25        MR. ERHLICH:  I think so, yes.

1      **THE COURT:**  2:00 on the 24th.

2      **MR. GONZALEZ:**  That would be fine, Your Honor.  Thank

3  you.

4      **MS. BAILY:**  Just to be clear, Judge Alsup usually

5  expects briefs at noon, but if we could have until the end of

6  the day on Monday?

7      **THE COURT:**  Yes.  He referred all discovery to me.  So

8  what that means is you should work with Mr. Cooper, and those

9  rules don't apply.  You should feel free to ask anything.

10      **MS. BAILY:**  Thank you, Your Honor.

11      **THE COURT:**  We are sticking to his deadlines, though,

12  of course, and so I understand that there is urgency with

13  respect to discovery.

14      **MR. GONZALEZ:**  I have one issue, but I didn't want to

15  interrupt you.  Were you finished?

16      So, Your Honor, I appreciate you're going to tell us to go

17  see Mr. Cooper, and I would be happy to talk to Mr. Cooper

18  about all of this stuff, but I'm wondering what your procedures

19  are for imposing some type of limitation on discovery.

20      I ask that question because you may or may not know that

21  we've already responded to 72 document requests already in this

22  case.  And in the last two days, they served us with 152 more.

23  And these are not simple document requests.  I can show them to

24  you at the appropriate time.  They are very extensive.  In

25  fact, I read just the first 40 because I was curious about "all

1   documents and communications."  Of the first 40 requests, 20 of

2   them have that language.

3        **THE COURT:**  So let me tell you what my theory is about

4   document requests and the way it should work, and actually I

5   did a State Bar Webcast yesterday on this.

6        You serve your document request, and you should never

7   respond without sitting and talking to the other side; right?

8   Because always when you're propounding discovery, you're going

9   to be as broad as possible because the last thing you want is

10  the argument, which maybe I've seen made here, *Oh, no, it*

11  *wasn't covered by the document request*, so they're always

12  broad.

13       But then what you do is you sit down and you say, *What is*

14  *it you're looking for and why?  Okay*.  *This is how we get there*

15  *and this is what we do*.  So that's what I really want you to

16  do.  I think you should do that.

17       So you got that request; Ms. Baily is here.  You can have

18  that conversation now.  You can have it tomorrow.  You should

19  have it pronto.  And I think you should try to have it among

20  yourselves.  To the extent you still can't narrow it enough,

21  then that's when you involve Mr. Cooper there.

22       But really, you know, document requests -- I personally

23  believe they cannot be responded to without people having

24  words, actual face-to-face conversation.  And when I have a

25  document dispute in front of me, my first word out of my mouth

1    is *Why?  why do you need this*?  I don't care what the language

2    of the request was or anything.  I just want to know why.

3    Okay.  Okay.  Why.  That sounds good.  *How do we get it to*

4    *them*?  That's it.  So just sort of in plain English language.

5        It's a conversation you have among yourselves and then

6    with Mr. Cooper and then you can bring it to me when it's

7    narrowed.  So at that point, I don't actually care what the

8    language of the request is.  What I care is what are the

9    documents you're looking for and why are you saying you can't

10   produce them, if you are going to say that.

11       **MR. GONZALEZ:**  That's very helpful, Your Honor.  Thank

12   you.

13       **MR. PERLSON:**  Your Honor, that's great.

14       One of the things that I had proposed to Mr. Gonzalez

15   today, which I think perhaps prompted his statement today, is

16   that it seemed to us that given our abbreviated schedule, that,

17   you know, it doesn't make sense to wait 30 days to get

18   objections and responses and that we thought that just even

19   getting the objections after 14 days and then maybe shortening

20   the period for both of us to respond -- same true with

21   interrogatories and document requests -- might be a good idea,

22   given the short time frame, but we can address that further

23   with Mr. Cooper.

24       **THE COURT:**  Yes.  But really it's sort of -- yeah.  I

25   mean, basically you want to know what are you agreeing to

1    produce, what are you not agreeing to produce and why.  And

2    then if there is a dispute about what they're not agreeing to

3    produce, then through Mr. Cooper, that can be brought to me and

4    I can adjudicate that.

5         **MR. PERLSON:**  I think one of the things we've seen

6    over time -- and there have been attempts to narrow the issues

7    and things like that -- but doing that stuff earlier rather

8    than later is going to be critical so there is not, like, a

9    crunch of a bunch of issues that we are all trying to jam in.

10        **THE COURT:**  This is like totally off topic or even

11   sort of not even my realm, but Mr. Cooper is here and we have

12   some experience with that.

13        Whenever you have these type -- and you've probably all

14   discussed this because you are so experienced, but I just can't

15   help it.  I'm just going to throw it out there.

16        Whenever you have trade secret cases like this, often one

17   way to try to get to the nub of the matter is to hire some

18   neutral, neutral, neutral person to go in and do the forensic

19   examination of the servers and the like.

20        Anyway, I just throw that out there as something I've seen

21   before.

22        The parties certainly have plenty of money to pay for the

23   best forensic examiner you could ever come up with.

24        I just throw that out there as something I've seen work

25   actually in some cases, as long as it's someone the parties

1   mutually agree to and trust, and then the competitive concerns

2   are alleviated with that.

3        Anyway, couldn't help myself.  Sorry.

4            **MR. GONZALEZ:**  I appreciate that, Your Honor.

5            **MR. PERLSON:**  I think there has been some discussion

6   of that.  There certainly hasn't been anything worked out

7   specifically.

8            **THE COURT:**  Yes.  But with a trade secret case, it's

9   often just a way of getting to that sort of answer in a way

10  that both sides can sort of trust and feel comfortable with, if

11  you can get there.

12       Okay.  So we will see you on May 24th at 2:00 p.m.

13       I will see you, Mr. Ehrlich, one way or the other.

14           **MR. ERHLICH:**  Yes.  Thank you.

15           **THE COURT:**  Okay.  Thank you.  And thank you,

16  Mr. Cooper.

17           **MR. COOPER:**  Thank you.

18               (Proceedings adjourned at 2:47 p.m.)

19

20

21

22

23

24

25

1

2

3                    <u>CERTIFICATE OF REPORTER</u>

4          I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     DATE:   Thursday, May 11, 2017

8

9     *Pamela A. Batalo*

10    _____
      Pamela A. Batalo, CSR No. 3593, RMR, FCRR
11    U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25