United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WAYMO LLC,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., *et al.*,

Defendants.
/

No. C 17-00939 WHA

**ORDER DENYING MOTION TO COMPEL ARBITRATION**

**INTRODUCTION**

Defendants seek to steer this case into arbitration even though they have no agreement with anyone to arbitrate the case. Instead, they rely on a non-party's employment agreements with plaintiff, which contained an arbitration clause, and attempt to invoke "equitable estoppel." This order holds that defendants have not shown the elements necessary to justify application of equitable estoppel.

**STATEMENT**

In 2009 and 2012, while working at Waymo LLC, Anthony Levandowski signed two "At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement[s]." Each contained an arbitration clause that provided in relevant part (Dkt. No. 138-1 at 38, 50 (originals in all caps, emphasis added)):

> In consideration of my employment with the Company, *its promise to arbitrate all employment-related disputes*, and my receipt of the compensation, pay raises and other benefits paid to me by the Company, at present and in the future, I agree that *any and all*

> *controversies, claims, or disputes with anyone* (including the Company and any employee, officer, director, shareholder or benefit plan of the Company in their capacity as such or otherwise), whether brought on an individual, group, or class basis, arising out of, relating to, or resulting from my employment with the Company or the termination of my employment with the Company, including any breach of this agreement, shall be subject to binding arbitration under the arbitration rules set forth in California Code of Civil Procedure Section 1280 through 1294.2, including section 1283.05 (the "Rules") and pursuant to California law. . . . I further understand that this agreement to arbitrate also applies to any disputes that the Company may have with me.

Pursuant to the 2009 and 2012 agreements, Waymo initiated two arbitration proceedings against Levandowski on October 28, 2016, asserting claims for breach of contract, breach of fiduciary duties or duties of loyalty, fraud-deceit, tortious interference with contract, tortious interference with prospective economic advantage, unfair competition, and unjust enrichment (Dkt. Nos. 138-1, 138-3). The gravamen of those proceedings is Waymo's allegations of employee poaching by Levandowski. Neither proceeding has anything to do with Waymo's claims of trade secret misappropriation against defendants here. As of the date of this order, those arbitration proceedings remain the only proceedings by Waymo against Levandowski.

Although our defendants — Uber Technologies, Inc., Ottomotto LLC, and Otto Trucking LLC — are not signatories to either the 2009 or the 2012 agreement, they now wish to take advantage of those agreements to compel Waymo to arbitrate this case based on "equitable estoppel." In addition to the instant motion to compel arbitration of Waymo's trade secret misappropriation and unfair competition claims, defendants initiated a new arbitration proceeding against Waymo on March 31 of this year, seeking a declaration that said claims are (1) subject to arbitration and (2) meritless (Dkt. No. 243-1 ¶ 9).

**ANALYSIS**

Both sides agree that, under the Federal Arbitration Act, defendants may enforce the 2009 and 2012 agreements only if the relevant state contract law permits them to do so (Dkt. Nos. 204 at 9; 243 at 2). *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013). Both sides further agree California law applies (Dkt. Nos. 125 at 7; 204 at 9).

Contrary to defendants' suggestion, California law does not hold that a nonsignatory may enforce the terms of an arbitration agreement merely because the agreement uses broad language (*see* Dkt. No. 125 at 10–12). Actually, California law recognizes that nonsignatories may enforce arbitration agreements only based on certain enumerated principles, none of which turn on the broadness of an agreement's language. *See Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219–20 (2009). Nor does the liberal federal policy favoring arbitration help defendants here, because "where the question is whether a particular party is bound by the arbitration agreement, the liberal federal policy favoring arbitration agreements, which is best understood as concerning the scope of arbitrable issues, is inapposite." *Id.* at 220 (citations omitted). In short, defendants' motion turns not on the broad language of the arbitration clause at issue but on their theory that equitable estoppel requires Waymo to submit to arbitration.

Under California law, a party that is not otherwise subject to an arbitration agreement will be equitably estopped from avoiding arbitration only under two specific circumstances. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). Our court of appeals in *Kramer* adopted from *Goldman* the following controlling statement of California law on this issue:

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Kramer*, 705 F.3d at 1128–29 (citing *Goldman*, 173 Cal. App. 4th at 221) (internal alterations, citations, and quotations omitted). As our court of appeals more recently observed in *Murphy*, the *Goldman*/*Kramer* standard remains the controlling law on this issue in our circuit. *Murphy*, 724 F.3d at 1229.

Significantly, the policy underlying the two *Goldman* prongs is intended to prevent a plaintiff from having it both ways, *i.e.*, seeking to hold a nonsignatory liable via duties imposed by an agreement, while resisting arbitration called for by the same agreement on the ground that the defendant is a nonsignatory. *Murphy*, 724 F.3d at 1229–30 (quoting *Goldman*, 173 Cal.

**United States District Court**
For the Northern District of California

App. 4th at 220). Here, defendants have not shown that either *Goldman* prong is met, or that Waymo's actions implicate the policy rationale for applying equitable estoppel.

With respect to the first *Goldman* prong, this order holds that Waymo need not rely on the 2009 and 2012 agreements to prove its case against defendants, and that Waymo's claims are not intimately founded in or intertwined with those agreements. With respect to the second *Goldman* prong, Waymo's allegations of interdependent conduct by Levandowski and defendants are not founded in or intimately connected with the obligations of the 2009 and 2012 agreements. Indeed, it appears Waymo can make out its case-in-chief without any reference to either agreement. Defendants' counterarguments are unavailing.

With respect to the first *Goldman* prong, defendants argue that Waymo relies on the 2009 and 2012 agreements in asserting claims for trade secret misappropriation here (Dkt. No. 243 at 6–7). Specifically, defendants point out that Waymo "repeatedly invokes the confidentiality provisions of its employment contracts" to show reasonable efforts to maintain secrecy (*id.* at 6). But Waymo need not *rely* on the terms of its written agreements merely because it makes *reference* to such agreements. *See Goldman*, 173 Cal. App. 4th at 218; *see also Murphy*, 724 F.3d at 1230–31 (that a plaintiff's claims may "on some abstract level require the existence of" an arbitration agreement is not enough to establish equitable estoppel under the first *Goldman* prong). To the contrary, Waymo has alleged and provided a sworn record of how it takes reasonable measures to maintain secrecy. Some examples of those measures are described in the companion order on Waymo's motion for provisional relief (*see also, e.g.*, Dkt. Nos. 23 at 17–18; 25-47 ¶ 25; 260 at 3 n.4). Additionally, during oral argument, Waymo expressly forswore reliance on its 2009 and 2012 agreements with Levandowski to prove up its claims. Since Waymo can show the reasonable measures element of its misappropriation claims independent of the arbitration agreements in question, defendants have not shown that equitable estoppel applies under *Goldman*. *See Kramer*, 705 F.3d at 1131 ("Looking to California contract law, the correct analysis is whether [plaintiff] would have a *claim* independent of the existence of the [agreement].").

Next, and in a similar vein, defendants claim Waymo must "show that Mr. Levandowski acquired the trade secrets through improper means, or that Uber derived its knowledge from Mr. Levandowski, who owed a duty to Waymo to maintain the secrecy over (or limit the use of) those alleged trade secrets. Thus, the [2009 and 2012] Agreements are central to Waymo's ability to prove liability under its trade secret claims" (Dkt. No. 243 at 8). Improper means, however, are not limited to the violation of contractual obligations. *See* 18 U.S.C. 1839(6); CAL. CIV. CODE § 3426.1. As stated, Waymo has expressly forsworn reliance on its agreements with Levandowski. If Waymo can assert its misappropriation claims independent of the existence of the 2009 and 2012 agreements, then it does not *rely* on those agreements for purposes of equitable estoppel under *Goldman*. *See Kramer*, 705 F.3d at 1131.

Indeed, Waymo contends its misappropriation claims here are based, not on any contractual obligation, but on Levandowski's duty of loyalty under California law (Dkt. No. 204 at 13–14). *See Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414, 416 (2007) (discussing duty of loyalty between employee and employer). Indeed, the operative complaint contains abundant allegations — and the record contains ample evidence — showing that Levandowski breached that duty to Waymo. Defendants respond that "specific terms of a contract supersede the general provisions of the common law," citing out-of-state decisions for the proposition that express contractual provisions *can* override common law obligations (Dkt. No. 243 at 7 & n.5). But even if that proposition held true here, defendants have identified no express contractual provision overriding Levandowski's common law obligations. In short, while defendants stress that Waymo's allegations *reference* the arbitration agreements in question, they have still not shown that Waymo must *rely* on those agreements such that equitable estoppel applies. *See Goldman*, 173 Cal. App. 4th at 218; *see also Murphy*, 724 F.3d at 1230–31.

Turning to the second *Goldman* prong, defendants argue that Waymo alleges substantially interdependent and concerted misconduct by defendants and Levandowski, and that such allegations are founded in or intimately connected with Levandowski's obligations under the 2009 and 2012 agreements (Dkt. Nos. 125 at 7–9; 243 at 10–11). But "mere allegations of collusive behavior between signatories and nonsignatories to a contract are not

enough to compel arbitration between parties who have not agreed to arbitrate. . . . It is the relationship of the claims [to the contract], not merely the collusive behavior of the signatory and nonsignatory parties, that is key." *Murphy*, 724 F.3d at 1231 (quoting *Goldman*, 173 Cal. App. 4th at 223).

Here, as stated, Waymo's claims against defendants are not "dependent on or inextricably bound up with the contractual obligations of the agreement[s] containing the arbitration clause." *See id.* at 1232. At bottom, defendants have not shown that Waymo relies on the 2009 or 2012 agreements to assert its claims against defendants while simultaneously seeking to avoid the arbitration clauses of those agreements. The inequities that equitable estoppel is designed to address are simply not present. Accordingly, equitable estoppel does not apply. *See id.* at 1231–32; *Kramer*, 705 F.3d at 1134; *Goldman*, 173 Cal. App. 4th at 232–33.

* * *

In their reply brief, defendants unfairly and for the first time identify "an entire body of case law holding that a nonsignatory may compel a signatory to arbitrate its claims" (Dkt. No. 243 at 2–3, 11–13). Every decision cited by defendants, however, is inapposite or readily distinguishable. As illustrative examples, this order addresses four.

In *Metalclad Corp. v. Ventana Environmental Organizational Partnership*, Ventana proposed to Metalclad that Ventana subsidiary Geologic would acquire Metalclad subsidiary Esconsa, the holding company for Metalclad's planned waste disposal project, in exchange for Ventana's investment in the project. 109 Cal. App. 4th 1705, 1709 (2003). Metalclad entered into a written agreement with Geologic for the sale of Econsa with the understanding that Ventana would honor its commitment to invest in the project. *Id.* at 1709–10. The sale agreement included a broad arbitration clause. Metalclad then sued Ventana, Geologic, and others for breach of contract, fraud, and related claims, alleging that Ventana had reneged on its investment obligations. *Id.* at 1710. Ventana successfully moved to compel arbitration based on equitable estoppel. *Id.* at 1713.

In *Metalclad*, equitable estoppel applied because Metalclad's claims against Ventana and Geologic, whether cast in tort or contract, were "based on the same facts and . . . inherently

inseparable" such that Metalclad effectively "[sought] the benefit of [its contract with Geologic] in the form of damages from Ventana while avoiding its arbitration provision." Under those circumstances, equitable estoppel prevented Metalclad from having it both ways. *Id.* at 1717–18. Here, in contrast, defendants had nothing to do with Waymo's 2009 and 2012 agreements with Levandowski. Waymo has dutifully brought its separate claims against Levandowski (which concern employee poaching, not trade secret misappropriation) in arbitration pursuant to those agreements. Moreover, its claims here are not dependent on or inextricably bound up with those agreements. In short, unlike Metalclad, Waymo is not trying to have it both ways.

In *Turtle Ridge Media Group, Inc. v. Pacific Bell Directory*, equitable estoppel required the plaintiff to arbitrate with one defendant where that defendant had an arbitration agreement with a second defendant, which arbitration agreement was expressly incorporated into a separate subcontract between the plaintiff and the second defendant. 140 Cal. App. 4th 828, 831–34 (2006). Here, however, Waymo is not a party to any contract incorporating any agreement to arbitrate with defendants. And unlike the allegations in *Turtle Ridge,* Waymo's allegations here do not presuppose the existence of any "tripartite, on-going relationship" benefitting defendants, Levandowski, and Waymo. *See id.* at 834. The reasoning for applying equitable estoppel in *Turtle Ridge* is thus inapposite here.

In *Uptown Drug Co., Inc. v. CVS Caremark Corp.*, the plaintiff's trade secret misappropriation claims were "founded [in] and intertwined with the underlying contract obligations" of an agreement containing an arbitration clause because, to prevail on those claims, the plaintiff would have had to prove that a defendant's use of information exceeded the scope of use expressly permitted under that agreement. 962 F. Supp. 2d 1172, 1185 (N.D. Cal. 2013) (Judge Jon Tigar). Thus, under *Kramer* and *Goldman*, nonsignatories could compel that plaintiff to arbitrate those claims on the basis of equitable estoppel. *Ibid.* In contrast, as stated, Waymo need not rely on the arbitration agreements in question to prove the improper means element of its misappropriation claims here. Thus, unlike the plaintiff in *Uptown*, Waymo is not

equitably estopped to resist arbitration of those claims against defendants with whom it had no arbitration agreement.

In *Torbit, Inc. v. Datanyze, Inc.*, Torbit asserted trade secret misappropriation claims against a former employee, Ilya Semin, and his competing company, Datanyze, alleging that Semin had downloaded and stolen Torbit's trade secrets and proprietary information for Datanyze's use. No. 5:12–CV–05889–EJD, 2013 WL 572613, at *1–2 (N.D. Cal. Feb. 13, 2013) (Judge Edward Davila). Torbit and Semin had an agreement containing an arbitration clause, to which Datanyze was not a signatory. Nonetheless, Datanyze successfully compelled arbitration of Torbit's misappropriation claim against it because that claim was premised on allegations that Datanyze knew or had reason to know that Semin had acquired Torbit's trade secrets through improper means. *Id.* at *4. Specifically, *Torbit* concluded that equitable estoppel applied because (1) if Datanyze knew that Semin acquired Torbit's trade secrets by breaching his confidentiality obligations under the agreement, "proof of such knowledge would plainly rely on interpretation of the Agreement and Mr. Semin's duties thereunder," and (2) insofar as Datanyze knew that Semin acquired Torbit's trade secrets through other misconduct, such misconduct "touch[ed] matters" covered by the agreement so as to be "intertwined with the contract providing for arbitration." *Ibid.*

Defendants claim "*Torbit* compelled arbitration based on facts that are virtually identical to those presented here" but gloss over the fact that *Torbit* relied on federal case law predating the Supreme Court's holding in *Carlisle*. *Torbit* did not mention California law, *Murphy*, *Kramer*, or *Goldman*. Defendants attempt to overcome this problem with a footnote that says, "*Kramer* did not cite *Torbit* or say anything that was inconsistent with the holding and rationale in *Torbit*" (Dkt. No. 243 at 11–12 & n.7). But *Kramer* did not cite *Torbit* for the simple reason that it *predated Torbit* by approximately two weeks.

Significantly, the legal framework set forth by *Goldman* and adopted by our court of appeals in *Kramer* and *Murphy* differs in numerous ways from the one used in *Torbit*. One such difference suffices to produce a contrary outcome here. As stated, *Torbit* rejected Torbit's attempt to show improper means without relying on its agreement with Semin, reasoning that

United States District Court
For the Northern District of California

such a showing would still "touch matters" covered by the agreement. *Torbit* cited for support *Simula, Inc. v. Autoliv, Inc.*, which stated, "To require arbitration . . . factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." 175 F.3d 716, 721 (9th Cir. 1999). In other words, *Torbit*, relying on pre-*Carlisle* federal law, conflated the question of whether certain claims fall within the scope of an arbitration agreement with the separate question of whether a nonsignatory can enforce the agreement.

As explained, however, *Goldman* rejected this "touch matters" approach under California law. 173 Cal. App. 4th at 220 ("[W]here the question is whether a particular party is bound by the arbitration agreement, the liberal federal policy favoring arbitration agreements, which is best understood as concerning the scope of arbitrable issues, *is inapposite*." (citations omitted, emphasis added)). Under California law, unlike in *Torbit*, mere reference to the terms of an arbitration agreement is not enough for equitable estoppel to apply in favor of a nonsignatory. *See Kramer*, 705 F.3d at 1129 (citing *Goldman*, 173 Cal. App. 4th at 218). Thus, Waymo, unlike Torbit, can resist arbitration by showing that its claims for relief do not rely or depend on the arbitration agreements in question here.

* * *

One final point of equity deserves mention. Defendants have repeatedly accused Waymo of using "artful" or "tactical" pleading to evade its arbitration obligations by omitting Levandowski as a defendant (*see, e.g.*, Dkt. Nos. 125 at 9; 243 at 12). These accusations are unwarranted. Waymo has honored its obligation to arbitrate against Levandowski by arbitrating its claims (concerning employee poaching) against Levandowski. Its decision to bring separate claims against defendants in court was not only reasonable but also the only course available, since Waymo had no arbitration agreement with defendants. Even though he is not a defendant here, moreover, Levandowski's assertion of his Fifth Amendment privilege has obstructed and continues to obstruct both discovery and defendants' ability to construct a complete narrative as to the fate of Waymo's purloined files. As a practical matter, it is hard to imagine how

United States District Court
For the Northern District of California

consolidating proceedings as to Levandowski and defendants, whether here or in arbitration, could alleviate these difficulties.

## CONCLUSION

For the foregoing reasons, defendants' motion to compel arbitration is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 11, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE