QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>          Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>          Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO LLC'S OBJECTIONS TO PROPOSED ORDER RE: SPECIAL MASTER'S MONITORING AND VERIFICATION PROTOCOL** |

Pursuant to the Court's May 18 Order (Dkt. 463), Plaintiff Waymo LLC ("Waymo") hereby provides its objections to the Special Master's Proposed Order re: Monitoring and Verification Protocols ("Proposed Protocol").  (Dkt. 462.)

Waymo has deep concerns about Defendants' compliance with the Court's May 11, 2017 Order.  (Dkt. 426.)  Those concerns are based on Defendants' serial non-compliance with Court Orders to date.  They are also based on Defendants' conduct on the very issue of the Protocols themselves.  Pursuant to the Court's Order, the Special Master instructed the parties on May 13 that "each party shall submit to me in writing **via PDF that party's complete and detailed protocol** as quoted below from paragraph 7, page 26 of the May 11, 2017 Order ruling on Plaintiff's motion for provisional relief. … the parties shall participate in a conference call with the special master [] to **discuss and resolve the final protocol** for monitoring and verification by the special master of the requirements in the Court's Order.  **I anticipate that the final protocol with input from each party shall be submitted to Judge Alsup for his review and alteration or approval on May 15**." (Perlson Decl., Ex. I (emphases added).)

Waymo carefully reviewed both the Court's Order and the Special Master's instructions, and provided, as requested, "via PDF" its "complete and detailed protocol," which "provide for the special master to visit defendants' facilities and monitor communications as necessary to ensure that Anthony Levandowski remains sealed off from LiDAR activities."  Waymo's proposed Protocol ("Waymo's Proposed Protocol") was over 11 pages, with an additional 13 pages of exhibits.  (Perlson Decl., Ex. I.)

In contrast, Defendants merely sent a four sentence email that reads, in its entirety:

> Quinn team,
> Uber's proposed protocol is as follows:
>
> Uber employees will be provided with the email address and telephone number of the special master. If the special master receives a complaint of a potential violation of the Court's order, he will be allowed to speak to that employee and, if he deems it necessary, to also speak with anyone else who may have witnessed the alleged violation. If the special master believes the complaint may have merit, he will inform the parties and allow the parties an opportunity to respond to the allegation. Once he receives the parties' responses, he will determine whether the complaint should be reported to Judge Alsup.

(Perlson Decl., Ex. B.)

The Special Master's efforts to establish a reasonable protocol for compliance with this Court's May 11 order have been materially undermined by Defendants' delay tactics, leaving Waymo without any option but to strenuously object to his proposal. Defendants only begrudgingly complied with the Special Master's instructions to provide a proposed protocol on May 16, **after** the May 15 meet and confer with the Special Master. (Perlson Decl., Ex. C and Ex. D.) As a result, the final protocol with input from each party was not submitted to the Court for its review and alteration and approval until May 17.

Defendants' willful failure to comply with the Special Master's instructions regarding proposed protocols is very troubling. It demonstrates as well as any briefing Waymo could draft, why it is so critical that the Special Master and the Court implement detailed and rigorous protocols for monitoring and verifying Defendants' ongoing compliance with the Court's Order. It is also part and parcel with Defendants' conduct to date in this litigation. Defendants have repeatedly flouted Court Orders, leaving Waymo to discover – only after a Court-imposed deadline has already passed – that Defendants had intentionally evaded compliance by interpreting their obligations as narrowly as possible at every turn. This has in turn denied Waymo (and the Court) the opportunity to consider the withheld evidence until after relevant briefing or hearing have already passed.

Defendants have repeatedly evaded compliance with court orders and discovery in this matter as part of an overall strategy of "relentless concealment of likely probative evidence, both documentary and testimonial, from Waymo's" – and the Court's – "view." (Dkt. 426 at 8.) Counsel for Defendants have alluded to the possibility that Uber had no role whatsoever in Mr. Levandowski's theft, yet Defendants' tactics in this matter have only undermined any confidence in their supposed innocence. Instead, Defendants' behavior has reinforced Waymo's reasonable belief – supported by what little discovery it has obtained – that Uber not only knew about Mr. Levandowski's theft, but intentionally structured its relationship with Mr. Levandowski and the acquisition of his companies in order to benefit from his theft. Apart from ratifying Mr. Levandowski's conduct and continuing to employ him, Defendants have invoked a dubious claim of privilege to shield the very documents that one would expect to line up with their alleged story of clean hands. They have also dragged their feet in producing key documents precisely so that Waymo would not have any opportunity to depose

witnesses and further explore the facts that have now come to light in those documents. Defendants' behavior has severely prejudiced Waymo and deprived this Court of the record it should have had when it decided Waymo's motion for preliminary injunction. For starters, this Court's May 11 Order is directed in part at Defendants' failure to adequately comply with this Court's March 16 Order for the return of Waymo's stolen files. It is particularly telling that injunctive relief is required in order to ensure even the most basic compliance from Defendants. In addition, Defendants withheld responsive, non-privileged documents until the eleventh hour prior to the preliminary injunction hearing in order to minimize the impact of those records on their defense and otherwise sandbag Waymo and this Court. While there are many examples, a couple are worth highlighting here: Defendants withheld a January 12, 2016 email exchange discussing a list of deliverables to be provided to Mr. Levandowski as part of ongoing negotiations with Uber until April 28, and a document showing that Mr. Levandowski was awarded 5,309,445 shares of Uber stock apparently backdated to January 28, 2016 – the day after he quit Waymo without notice – until May 2. And the acquisition agreements that the Court (and Waymo) expected to see long ago were produced on May 11, four weeks after the first of three clear requests for production that called for these materials, and after counsel for Uber disingenuously suggested to this Court that no such request had been propounded.[1] While Defendants continue to withhold documents that should complete the picture, its is clear on the face of these materials why Defendants did not want this Court to consider them – or any testimony about them- for a decision on Waymo's motion for preliminary injunction. Permitting Defendants to play the same games in response to the Court's May 11 Order would be unacceptable. Defendants have proven again and again that they cannot be trusted to comply with the Court's granted provisional relief without close and ongoing supervision by the Special Master that begins **in advance of** each Court-set deadline for compliance.

In light of Defendants' history, Waymo respectfully submits two objections to the Proposed Protocol. **First**, while Waymo recognizes that an effective Protocol requires ex parte communications

---

[1] And even this production appears to be missing key materials – such as the standard data room for diligence – that one would expect in any acquisition.

between the Special Master and Defendants, Waymo should have notice of those communications. The policy considerations cautioning against ex parte communications are widely recognized. Civil L.R. 11-4(c); *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1543 (9th Cir. 1993) ("By definition, ex parte contacts cannot be addressed and rebutted through an adversarial discussion among the parties."); *State of N.C. Envtl. Policy Inst. v. E.P.A.*, 881 F.2d 1250, 1258 (4th Cir. 1989)(disclosure requirements for ex parte communications "serve the 'fundamental notions of fairness implicit in due process'") (quoting *Home Box Office, Inc. v. F.C.C.*, 567 F.2d 9, 56 (D.C. Cir. 1977)). A Protocol that requires Defendants to promptly log their ex parte communications – with the date, participants, nature of the communication (for example, telephonic conference), duration (if oral), and general subject matter – will strike the right balance to avoid potential prejudice to Waymo. Waymo's proposed modifications to the Proposed Protocol, which would resolve these objections, are set forth in Section I of Waymo's Proposed Order. For the convenience of the Court, Waymo also provides a redline of Waymo's Proposed Order against the Proposed Protocol. (Perlson Decl., Ex. E.)

**Second**, the Protocol should provide Waymo with greater transparency into what actions Defendants are, and are not, taking to comply with the Court's Order. The Proposed Protocol would potentially leave Waymo in the dark about whether Defendants have obtained written certification from Anthony Levandowski that he no longer has the downloaded materials, whether Defendants have inspected Mr. Levandowski's electronic devices to recover the downloaded materials, and whether Uber has exercised the full extent of its authority over Mr. Levandowski – including (but not exclusively) firing him if he refuses to hand over the downloaded materials.[2] To be sure, the

---

[2] Defendants have no excuse to "pull any punches with Levandowski." (Dkt. 426 at 23 n.9.) Indeed, Uber fires employees for far less than obstructing Court Orders. For example, just last December, Uber fired two in-house attorneys – not for refusing to turn over 14,000 stolen files – but "after they turned to outside attorneys for advice on proposed changes to the company's document- and data-retention policy, allegedly without the necessary authorization from the company." (*See* http://www.corpcounsel.com/top-stories/id=1202786179042/Ubers-Firing-of-2-InHouse-Lawyers-Raises-Questions-About-Legal-Culture?mcode=1202614998472&curindex=0.)  And Uber reportedly will "disable" (i.e., terminate) drivers of its ride-sharing service for offenses far less serious than criminal trade secret misappropriation, including if a) their average star rating drops below 4.6, b) they violate Uber's Code of Conduct, c) they engage unsafe driving, or d) they drive with a companion in their car. (*See* http://www.ridesharingdriver.com/fired-uber-drivers-get-deactivated-and-

Proposed Protocol provides the Special Master with the discretion to share such information with Waymo. But disclosure of whether Defendants have (or have not) taken specific actions should be mandatory where, as with the above examples, the actions themselves are mandated by the Court's Order. Waymo has proposed modifications to the Proposed Protocol providing for such "Required Disclosures" (Perlson Decl., Ex. E at Section 1), including by identifying which disclosures are required for each part of the Court's Order. (*Id.* at Sections II-V.) Required disclosures will ensure that Waymo can comment on what Defendants are – and are not – doing, and assist the Special Master's compliance efforts.

Already, Defendants' representations of what they may or may not be doing in response to the Court's Order show the importance of such mandatory disclosures. On the May 17 meet and confer with the Special Master, counsel for Uber and Ottomotto indicated that Anthony Levandowski, will continue to work directly with Velodyne LiDAR output data as part of his role and responsibilities at Uber. (Perlson Decl., ¶ 2, Ex. G.) As Waymo immediately recognized, this would constitute a willful violation of the Court's Order, because the Court's prohibitions on Mr. Levandowski's roles, responsibilities, and communications are not limited to the actual hardware components or laser beams of Defendants' in-house custom LIDAR systems – Velodyne LiDAR output data "pertain[s] to LiDAR" and any communication Mr. Levandowski either receives or sends about Velodyne LiDAR data is "on the subject of LiDAR." In this instance, Defendants' violation of the Order is self-evident, and Waymo is presently addressing this issue with the Special Master.[3]

---

reactivated/.) There can be no dispute that Uber has the authority to terminate Mr. Levandowski for refusing to return the downloaded files.

[3] As another example, Defendants have already indicated that with respect to the Paragraph 4 accounting, they "cannot guarantee" compliance: "With respect to Paragraph 4 of the Scope of Relief (Order at 24), we are concerned that as written, the Order appears to require Uber to identify information that is protected by the attorney client or joint interest privilege. We will make a good faith effort to comply but cannot guarantee that these privileges will be waived. As required by the Court's May 15, 2017 Order, we will advise the Court regarding what privileges (if any) are being waived and proceed accordingly."). (Perlson Decl., Ex. C at 1.) And yet another example is Otto Trucking's contradictory representations regarding whether it has any contractual, legal, or other authority over Anthony Levandowski. In its Objections to Waymo's May 15 protocol, Otto Trucking

Waymo is concerned that they will seek to avoid the Court's Order in ways both obvious and subtle. Waymo – with its resources and technical expertise – would be a very valuable tool for the Special Master and his team in monitoring Defendants' compliance efforts. But only if Waymo knows what Defendants are and are not doing. For that reason, foundational aspects of Defendants' compliance should be "Required Disclosures" under the Protocol.

For the foregoing reasons, Waymo respectfully requests that the Court enter its Proposed Order.[4]

DATED:  May 19, 2017                QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
   Charles K. Verhoeven
   Attorneys for WAYMO LLC

---

asserted that it could not enforce prohibitions with respect to Mr. Levandowski because "Otto Trucking has no authority over Mr. Levandowski[.]" (Perlson Decl. Ex. H.). However, just this morning on a meet and confer with the Special Master, counsel for Otto Trucking admitted that Mr. Levandowski is an officer of Otto Trucking. (Perlson Decl., ¶ 3.)

[4] In addition to the modifications described above, Waymo's Proposed Order also changes the term "self-driving automobile" in Section III to "self-driving vehicle" consistent with the Special Master's direction in his May 18, 2017 email to the parties. (Perslon Decl., Ex. F.). Nevertheless, with respect to Defendants' Request for Clarification, Waymo does not oppose a request for clarification that "customers," "suppliers," "consultants," and "agents" (as used in Paragraphs 2 and 3 only) should be limited to Defendants' customers, suppliers, consultants, and agents related to LiDAR.