# EXHIBIT C

MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
RUDY Y. KIM (CA SBN 199426)
RKim@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone: 202.237.2727
Facsimile: 202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　　　　Defendants. | Case No.　　3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S OBJECTIONS TO WAYMO'S PROPOSED PROTOCOLS PURSUANT TO PARAGRAPH 7 OF THE COURT'S ORDER (DKT. 427)** |

The lengthy and onerous protocol submitted by Waymo assumes that Uber has been found liable by a jury and that a final judgment has been entered against it. Even then, the conditions would be unreasonable.

To prepare an appropriately reasonable protocol, some clarification is required in Judge Alsup's ruling. We will divide this submission into three parts: (1) Uber's requests for clarification, (2) Uber's objections to Waymo's proposal, and (3) Uber's proposed protocol.

## I.  UBER'S REQUESTS FOR CLARIFICATION

Counsel for Waymo has said during conferences with Uber and the Special Master that they read the Court's order to require Uber to provide notice to all customers, all of its agents, and all of its suppliers, without regard to whether they have any nexus to LiDAR. For example, Waymo has taken the position that Uber must provide notice to all Uber drivers, and to every Uber passenger. Uber's view is that the only reasonable interpretation is that these various terms, such as "customers," "suppliers" and "agents" be interpreted to mean entities that are related to LiDAR. In other words, Judge Alsup could not possibly have intended to Uber give notice to every passenger or Uber driver, or to the suppliers who deliver food and paper towels to Uber.

With respect to Paragraph 4 of the Scope of Relief (Order at 24), we are concerned that as written, the Order appears to require Uber to identify information that is protected by the attorney client or joint interest privilege. We will make a good faith effort to comply but cannot guarantee that these privileges will be waived. As required by the Court's May 15, 2017 Order, we will advise the Court regarding what privileges (if any) are being waived and proceed accordingly.

## II.  UBER'S OBJECTIONS TO WAYMO'S PROPOSAL

1. We do not need Waymo's assistance in preparing the letters required by the Court. The letters required by the Order have been prepared and disseminated by Uber. Copies of those letters will be provided to the Special Master.

2. The protocol does not need to, and should not, include provisions for disciplining or terminating Uber employees. That would not be appropriate.

3. Certifications are not necessary. Uber employees have been told not to speak with Anthony Levandowski about LiDAR, and have been advised of a procedure for reporting any

violations.

4. With respect to Mr. Levandowski, the Order states that the requested actions must be completed by May 30 at noon. There is no reason to impose additional burden with earlier deadlines as Waymo has suggested. (Waymo Protocol at 4.)

5. The provision that Mr. Levandowski be "searched" every time he enters the building (Waymo Protocol at 6) is unreasonable and oppressive. We agree that he will no longer be allowed to use his personal devices at Uber and we have instructed him as such in the letter he received today. Similarly, it would not be reasonable to "confiscate" a personal cell phone. He needs a personal cell phone to communicate with his legal counsel.

6. We cannot "disable" Mr. Levandowski's authorization to access any servers with LiDAR data. That would effectively bar him from working at Uber. We are investigating whether there are any LiDAR-only servers and if there are, would agree to bar him from accessing such servers.

7. It is not necessary to interview 35 employees, 15 customers, or 10 suppliers (Waymo Protocol at 6-7), especially when there has been no finding of liability and when there is no evidence that any allegedly misappropriated files are at Uber. We agree to a far more modest "audit" procedure whereby the Special Master can randomly select two employees who work in autonomous vehicles to ask them about Uber's compliance with this provision of the Order.

8. The request to provide the Special Master with access to all "means of communication" of "any LiDAR personnel" (Waymo Protocol at 8) would violate the privacy rights of those employees.

9. Asking that the Special Master receive all calendar invitations for any meeting or conference regarding LiDAR (Waymo Protocol at 8) is burdensome and unnecessary.

10. Uber requests 96 hours' notice (as opposed to Waymo's proposed 48) of a request for inspection. (Waymo Protocol at 10.) We have no objection to the Special Master attending.

11. No protocol is needed to keep "complete and accurate" records of Uber's compliance with the Court's Order. In particular, no "litigation holds" are necessary beyond those required by law. (Waymo Protocol at 10.) Uber will comply with the Order.

### III. UBER'S PROPOSED PROTOCOL

**A.** **"Defendants must immediately and in writing exercise the full extent of their corporate, employment, contractual, and other authority to (a) prevent Anthony Levandowski and all other officers, directors, employees, and agents of defendants from consulting, copying, or otherwise using the downloaded materials; and (b) cause them to return the downloaded materials and all copies, excerpts, and summaries thereof to Waymo (or the Court) by MAY 31 AT NOON." (Dkt. 427 at page 23, paragraph 2)**

On May 16, 2016, Uber sent the following letters:

A letter to Mr. Levandowski explaining the Order's directives and threatening employment sanctions (including possibly termination) if he does not comply (This letter was accompanied by a redacted copy of the Order); and

a letter informing all of Uber's "officers, directors, employees" that they must not consult, copy or use any materials allegedly downloaded by Mr. Levandowski, and asking them to return any downloaded materials they may have.

The letter to Mr. Levandowski was transmitted by email. The letter to the Board was posted to the Board portal. Copies of the letters will be sent to the Special Master.

New employees working in self-driving vehicle technology who join after the date that Waymo posts the required bond shall also receive the letter

**B.** **Implementing the Court's requirement that "With respect to Anthony Levandowski, defendants shall immediately (a) remove him from any role or responsibility pertaining to LiDAR; (b) take all steps in their power to prevent him from having any communication on the subject of LiDAR with any officer, director, employee, agent, supplier, consultant, or customer of defendants; and (c) prohibit him from consulting, copying, or otherwise using the downloaded materials in any way. Defendants shall instruct all their officers, directors, employees, agents, suppliers, consultants, and customers in writing of this prohibition, and further instruct them in writing to immediately report any suspected breaches thereof to the Special Master (or to the Court)." (Dkt. 427 at pages 23-24, paragraph 3)**

Uber already has removed Anthony Levandowski from any role or responsibility pertaining to LiDAR.

Uber has sent a letter informing all Uber "officers, directors, employees" of Mr. Levandowski's recusal from any role involving LiDAR; informing them that they should not speak to Mr. Levandowski about LiDAR; and instructing them to report immediately any breaches to the Special Master or the court.

As discussed above, Uber will seek clarification from the Court regarding the meaning of "agent, supplier, consultant, or customer." Pending clarification, Uber will send letters to its LiDAR suppliers. It does not have LiDAR agents or customers.

Mr. Levandowski is prohibited from using personal devices on any of Uber's networks, servers, infrastructure, or systems. As noted above, we are looking into whether there are any LiDAR-only servers that he can be blocked from accessing.

Uber employees have been provided with the email address and telephone number of the Special Master. If the Special Master receives a complaint of a potential violation of the Court's order, he will be allowed to speak to that employee and, if he deems it necessary, to also speak with anyone else who may have witnessed the alleged violation. If the Special Master believes the complaint may have merit, he will inform the parties and allow the parties an opportunity to respond to the allegation. Once he receives the parties' responses, he will determine whether the complaint should be reported to Judge Alsup.

To confirm that Mr. Levandowski is not engaged in any LiDAR work and that Uber is in compliance with that portion of the Order, the Special Master may, on a monthly basis, request to interview two randomly selected Uber employees who work on autonomous vehicles to confirm they have had no discussions about LiDAR with Mr. Levandowski, and that they have not heard of any such discussions.

     C.    that "With respect to all other persons, including those with Stroz Friedberg, defendants shall conduct a thorough investigation and provide a detailed accounting under oath setting forth every person who has seen or heard any part of any downloaded materials, what they saw or heard, when they saw or heard it, and for what purpose. In their investigation, defendants must do more than query servers with term searches. For example, they must interview personnel with particular focus on anyone who has communicated with Anthony Levandowski on the subject of LiDAR. Defendants' accounting shall not be limited to Uber but shall include all persons who fit the foregoing description, including Levandowski and his separate counsel. The accounting may exclude, for only the time period after the commencement of this civil action, the attorneys of record and their staff and experts employed for this litigation. The accounting shall not be limited to downloaded materials that happened to make their way into some due diligence report but shall cover any and all downloaded materials. The accounting shall also identify the complete chains of custodians for every copy of any downloaded materials or due diligence report referencing downloaded materials. Defendants must also use the full extent of their authority and influence to obtain cooperation with the foregoing procedure from all involved. For example, if a potential custodian refuses to cooperate, then defendants' accounting shall set forth the particulars, including all efforts made to obtain cooperation. The accounting must be filed and served by JUNE 23 AT NOON."

No protocol is necessary. Uber will comply with this paragraph. Two issues that will have to be addressed are (1) Levandowski's counsel may assert attorney-client privilege; and (2) the Stroz material is subject to a joint interest privilege. As required by the Court's May 15, 2017, Order, we will advise the Court regarding what privileges (if any) are being waived and proceed accordingly.

     D.    "Also by JUNE 23 AT NOON, defendants shall provide Waymo's counsel and the Court with a complete and chronologically organized log of all oral and written communications — including, without limitation, conferences, meetings, phone calls, one-on-one conversations, texts, emails, letters, memos, and voicemails — wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier, or consultant of defendants. The log shall identify for each such communication the time, place (if applicable), mode, all persons involved, and subjects discussed, as well as any and all notes or records referencing the communication."

Again, no protocol is necessary. Uber will comply with this paragraph.

**E.** **"Subject to the protective order, and upon reasonable notice, Waymo's counsel and one expert may inspect any and all aspects of defendants' ongoing work involving LiDAR — including, without limitation, schematics, work orders, source code, notes, and emails — whether or not said work resulted in any prototype or device." (Dkt. 427 at page 25, paragraph 6)**

As noted above, on four days' notice, Uber will make its LiDAR work available for inspection by one Waymo lawyer and one expert. The request has to be specific regarding what is to be inspected so that Uber has a fair opportunity to prepare for the inspection. A lawyer for Uber shall attend the inspection. The Special Master is welcome to attend.

Dated: May 16, 2017              MORRISON & FOERSTER LLP

By: */s/ Arturo J. González*
         ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC