# EXHIBIT D

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>        Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO LLC'S<br>OBJECTIONS TO, AND COMMENTS<br>ON, DEFENDANTS' PROPOSED<br>PROTOCOLS PURSUANT TO<br>PARAGRAPH 7, PAGE 26 OF THE<br>COURT'S ORDER GRANTING IN PART<br>AND DENYING IN PART PLAINTIFF'S<br>MOTION FOR PROVISIONAL RELIEF<br>(DKT. 427)** |

01980-00104/9289268.1

CASE NO. 3:17-cv-00939-WHA
OBJECTIONS TO DEFENDANTS' PROTOCOLS FOR MONITORING AND VERIFYING DEFENDANTS' COMPLIANCE WITH ORDER
GRANTING PROVISIONAL RELIEF

1    Plaintiff Waymo LLC ("Waymo") hereby provides its objections to, and comments on,

2  Defendants' proposed Protocol for monitoring and verifying Defendants' compliance with the

3  requirements of the provisional relief granted by the Court's May 11, 2017 Order in *Waymo LLC v.*

4  *Uber Technologies, Inc., Ottomotto LLC, and Otto Trucking LLC*, Case No. 3:17-cv-00939-WHA

5  (N.D. Cal.) ("Uber's Proposed Protocol").

6  I.    **Introduction**

7    First and foremost, Waymo objects to Uber's Proposed Protocol because it is not a "protocol"

8  at all.   The Court's Order grants Waymo certain provisional relief (Dkt. 427 at pages 22-26,

9  paragraphs 1-6) and then provides:

10    Defendants shall keep complete and accurate records of their compliance with all of
11    the foregoing requirements, including directives given to Anthony Levandowski and
      others. The special master shall monitor and verify said compliance. To that end, the
12    special master shall promptly develop proposed monitoring and verification
      protocols with the parties' input and then submit the  proposed protocols to the Court
13    for approval. The protocols shall  provide for the special master to visit defendants'
      facilities and   monitor communications as necessary to ensure that Anthony
14    Levandowski remains sealed off from LiDAR activities.

15  (*Id.* at 26, paragraph 7).  Pursuant to the Court's Order, the Special Master instructed the parties on

16  May 13 that "each party shall submit to me in writing **via PDF that party's complete and detailed**

17  **protocol** as quoted below from paragraph 7, page 26 of the May 11, 2017 Order ruling on Plaintiff's

18  motion for provisional relief. … the parties shall participate in a conference call with the special

19  master [] to **discuss and resolve the final protocol** for monitoring and verification by the special

20  master of the requirements in the Court's Order.   **I anticipate that the final protocol with input**

21  **from each party shall be submitted to Judge Alsup for his review and alteration or approval on**

22  **May 15**." (5/13/2017 email from Special Master John Cooper (emphases added).)

23    Waymo carefully reviewed both the Court's Order and the Special Master's instructions, and

24  provided, as requested, "via PDF" its "complete and detailed protocol," which "provide for the special

25  master to visit defendants' facilities and monitor communications as necessary to ensure that Anthony

Levandowski remains sealed off from LiDAR activities."  Waymo's proposed Protocol ("Waymo's Proposed Protocol") was over 11 pages, with an additional 13 pages of exhibits.

In contrast, Defendants provided a four sentence email that reads, in its entirety:

Quinn team,
Uber's proposed protocol is as follows:

Uber employees will be provided with the email address and telephone number of the special master. If the special master receives a complaint of a potential violation of the Court's order, he will be allowed to speak to that employee and, if he deems it necessary, to also speak with anyone else who may have witnessed the alleged violation. If the special master believes the complaint may have merit, he will inform the parties and allow the parties an opportunity to respond to the allegation. Once he receives the parties' responses, he will determine whether the complaint should be reported to Judge Alsup.

(5/15/2017 Wendy Ray email.)

During the 4 PM meet and confer with the Special Master, counsel for Defendants admitted that this email did not cover (among many other things required) any protocol for the special master to visit defendants' facilities and monitor communications as necessary to ensure that Anthony Levandowski remains sealed off from LiDAR activities.  Indeed, counsel for Defendants suggested they had not read the Court's Order closely enough to even notice that requirement for the Protocol.

In large part because Defendants failed to provide any Protocol in advance of the meet and confer, the final protocol with input from each party was not submitted to Judge Alsup for his review and alteration or approval on May 15.  On the contrary, because Defendants had not yet provided any Protocol at all, Defendants have succeeded in causing further delay.  Now, the earliest date that the final protocol can be submitted to Judge Alsup is the evening of May 17.  It is therefore likely that, despite the Court's order requiring Defendants to "immediately" take certain steps to prohibit Mr. Levandowski or other of Defendants' officers and employees from using or disclosing Waymo's trade secrets, and the fact that Waymo has now posted the required bond (Dkt. 448), there will be no ability

01980-00104/9289268.1

-3-                                        CASE NO. 3:17-cv-00939-WHA
OBJECTIONS TO DEFENDANTS' PROTOCOLS FOR MONITORING AND VERIFYING DEFENDANTS' COMPLIANCE WITH ORDER
GRANTING PROVISIONAL RELIEF

1  for either the Special Master or anyone else to monitor or verify whether Defendants are actually

2  complying with any of the Court's provisional relief until May 18.

3          Defendants' willful failure to comply with the Court's and the Special Master's instructions

4  regarding proposed protocols is very troubling.  It demonstrates, as well as any briefing Waymo could

5  draft, why it is so critical that the Special Master and the Court implement detailed and rigorous

6  protocols for monitoring and verifying Defendants' ongoing compliance with the Court's Order.  It is

7  also part and parcel with Defendants' conduct to date in this litigation.  Defendants have repeatedly

8  flouted Court Orders, leaving Waymo to discover – only after a Court-imposed deadline has already

9  passed – that Defendants had set themselves up for failure, intentionally pursing a path of supposed

10  compliance that could not possibly achieve what was ordered.  This has in turn denied Waymo (and

11  the Court) the opportunity to consider the withheld evidence until after relevant briefing or hearing

12  have already passed.

13          For example, Defendants were ordered on March 16 to produce "all files and documents

14  downloaded by Anthony Levandowski, Sameer Kshirsagar, or Radu Raduta before leaving plaintiff's

15  payroll and thereafter taken by them … as well as all subsequent emails, memoranda, PowerPoints,

16  text messages, or notes that have forwarded, used, or referred to any part of said downloaded

17  material," and "[i]f any part of said downloaded material has been deleted, destroyed, or modified,

18  then defendants shall state the extent thereof and produce all documents bearing on said deletion,

19  destruction, or modification."  (Dkt. 61 at 2.)  However, instead of looking where Defendants knew

20  the downloaded materials were – on Mr. Levandowski's personal laptop and with Stroz Friedberg

21  (which received raw electronic files from Mr. Levandowski and other Ottomotto employees that have

22  never been either produced or logged) – Defendants looked at a handful of servers and computers they

23  knew didn't have the downloaded materials.  Moreover, Defendants never bothered to inspect the

24  stolen 14,000 files, which was obviously necessary to know what to look for, and instead searched

exclusively with hash values and file names.  And to date, Defendants have still never explained whether any of the downloaded files have been destroyed or modified.  Waymo only learned of Defendants' head in the sand, "Ostrich" approach to purported compliance with the Court's Order **after** the March 29 deadline had passed.  Permitting Defendants to play the same games in response to the Court's May 11 Order would be unacceptable.  Defendants have proven again and again that they cannot be trusted to comply with the Court's granted provisional relief without close and ongoing supervision by the Special Master that begins **in advance of** each Court-set deadline for compliance.

Because to date Defendants have provided no protocol at all, it is difficult for Waymo to comprehensively brief these issues.  Below, Waymo does its best to anticipate what Defendants might object to in a complete and detailed protocol.  To the extent Waymo does not address any specific objection or comment raised in Defendants' objections, Waymo incorporates by reference its Proposed Protocol and Exhibits thereto.

II.     **Defendants' Proposed Protocol Is Grossly Inadequate**

    A.     Defendants Provide No Protocol to Ensure Compliance, Monitoring, and Verification of Paragraph 2 Requirements

Paragraph 2 requires that "Defendants **must immediately and in writing** exercise **the full extent** of their corporate, employment, contractual, and other authority to (a) prevent **Anthony Levandowski and all other officers, directors, employees, and agents** of defendants from consulting, copying, or otherwise using the downloaded materials; and (b) **cause them to return the downloaded materials** and all copies, excerpts, and summaries thereof to Waymo (or the Court) **by MAY 31 AT NOON**.  Copies essential for counsel of record and their litigation experts to use in defending this civil action are exempted from the foregoing requirement." (Dkt. 427 at 26 (emphases added).)

Waymo's Proposed Protocol effects the Court's requirements.  Uber's Proposed Protocol does not.

1

             1.        <u>Waymo's Proposed Protocol Section I.A</u>

2

In order to comply with Paragraph 2, Defendants must immediately and in writing send a letter

3

to all officers, directors, employees, and agents.  That's what Waymo proposes, including with Exhibit

4

1 and the enclosure of the Court's redacted Order.  Defendants' suggest that they can send the letter at

5

any time before May 31, and that it can send it to only a subset of its officers, directors, employees

6

and agents (i.e., those it deems work in LiDAR).  That is inadequate.

7

8

Paragraph 2 also requires that Defendants exercise the full extent of their corporate,

9

employment, contractual, and other authority.  That's what Waymo proposes, including with penalties,

10

up to and including termination, and with Exhibit 1, which requires all recipients to certify compliance

11

with the requirements of Paragraph 2.  Requiring recipients to certify compliance is within

12

Defendants' corporate, employment, contractual, and other authority, and necessary for Defendants to

13

exercise that full authority.  Defendants suggest that they need not require any certifications.  That is

14

well below the "full extent" of their authority.  Defendants also suggest they need not disclose to

15

anyone – even the Special Master – what penalties they may (or may not) use to enforce Paragraph 2.

16

But there can be no compliance with Paragraph 2 without penalties for those who will not cooperate –

17

up to  and including termination (explained further below on page 9).

18

19

             2.        <u>Waymo's Proposed Protocol Section I.B</u>

20

To verify Defendants' compliance with Paragraph 2, the Special Master must know –

21

immediately – who receives the written letter and what it says.  The Special Master must also have

22

access (consistent with Paragraph 7 and as Waymo's protocol provides) to communicate with anyone

23

who receives the letter to confirm that it was actually received by that person.  Defendants will likely

24

be using list servs and aliases, and the Special Master will not, in any event, know every necessary

25

recipient's email address.  Defendants suggest that they can provide the Special Master, at an

26

27

28

01980-00104/9289268.1

-6-                        CASE NO. 3:17-cv-00939-WHA

OBJECTIONS TO DEFENDANTS' PROTOCOLS FOR MONITORING AND VERIFYING DEFENDANTS' COMPLIANCE WITH ORDER
GRANTING PROVISIONAL RELIEF

unspecified time after the fact, with whatever letter it sends.  Uber provides for no verification mechanism that the letter actually gets to the people it needs to go to.  That is inadequate.

Waymo proposes that the Special Master specifically communicate with 35 recipients of the letter, some selected by him and some by Waymo.  This is appropriate both as a spot check and because some recipients are more important than others.  Uber has not identified any argument against this protocol, other than that it would be burdensome and that it apparently would rather have full control over whom the Special Master talks to (and whom he does not).  But any burden on Defendants is irrelevant, because it has been ordered to comply with the Court's Order to the "full extent" of their authority.  And verification requires that someone other than Defendants select whom the Special Master talks to.

Certifications in response to the directives of Exhibit 1 are necessary for Defendants to comply with the requirement that they exercise the full extent of their corporate, employment, contractual, and other authority, and the Special Master must have access to all returned certifications.  If a recipient of Exhibit 1 fails to respond with the completed certification, the Special Master needs to know that so that he can monitor and verify penalties.  And if a recipient responds and indicates he or she has information relevant to Paragraph 2, then the Special Master needs to know that Defendants are immediately following up to ensure that the downloaded materials will not be consulted, copied or otherwise used and that Defendants will cause the downloaded materials to be returned to Waymo (or the Court) by the May 31 deadline.

Finally, the Protocol should provide that the Special Master verify to the Court compliance to date in advance of the May 31 deadline.  There is no monitoring, and effectively no verification of compliance, if Waymo and the Court find out on May 31 that Defendants have – yet again – eviscerated a Court order by avoiding taking the very actions that would be necessary to comply.

CASE NO. 3:17-cv-00939-WHA
OBJECTIONS TO DEFENDANTS' PROTOCOLS FOR MONITORING AND VERIFYING DEFENDANTS' COMPLIANCE WITH ORDER GRANTING PROVISIONAL RELIEF

B.      Defendants Provide No Protocol to Ensure Compliance, Monitoring, and Verification of Paragraph 3 Requirements

Paragraph 3 requires that "With respect to Anthony Levandowski, defendants shall **immediately** (a) remove him from any role or responsibility pertaining to LiDAR; (b) **take all steps in their power to prevent him from having any communication** on **the subject** of **LiDAR** with **any officer, director, employee, agent, supplier, consultant, or customer** of defendants; and (c) **prohibit him from consulting, copying, or otherwise using the downloaded materials in any way**. **Defendants shall instruct all their officers, directors, employees, agents, suppliers, consultants, and customers in writing of this prohibition**, and further **instruct them in writing to immediately report any suspected breaches thereof to the special master (or to the Court).**" (Dkt. 427 at pages 23-24 (emphases added).)

Waymo's Proposed Protocol effects the Court's requirements.  Uber's Proposed Protocol does not.

1.      Waymo's Proposed Protocol Section II.A

In order to comply with Paragraph 3, Defendants must immediately and in writing instruct to Mr. Levandowski and all officers, directors, employees, agents, suppliers, consultants, and customers of Defendants of certain prohibitions, and to report any suspected breaches thereof.  That's what Waymo proposes, including with Exhibits 1, 2, 3, and 4, and the enclosure of the Court's redacted Order.[1]  Defendants suggest that they can send one or more letters at any time before May 31 and that they can send them to only a subset of its officers, directors, employees, agents, suppliers, consultants, and customers (i.e., those it deems work in LiDAR).  That is inadequate.

---

[1]   As discussed on the May 15 meet and confer, Waymo is willing to meet and confer about any specific objections Defendants have to the Court's Order, such as the requirement that written instructions go to all of Defendants' customers and suppliers.  Waymo understands Defendants' objections to the Court's Order will be forthcoming today so that any request for modification or clarification can be immediately resolved.

Paragraph 3 also requires that Defendants take "all steps in their power" to prevent Mr. Levandowski from having communications about LiDAR with any of Defendants' officers, directors, employees, agents, suppliers, consultants, and customers.  That's what Waymo proposes, including with penalties, up to and including termination, and with Exhibit 2, which requires Mr. Levandowski to certify compliance with the requirements of Paragraph 3 (and Paragraph 2).  Defendants suggests that they need not require Mr. Levandowski to return any certification, much less that they need to fire him if he fails to comply with the prohibitions of Paragraph 3 (or Paragraph 2).  But the Court did not order that Defendants take "some steps" or even "reasonable steps."  The Court ordered Defendants take "all steps in their power."  What Defendants propose to do (if anything) is well below taking all steps in their power.

It is very clear from the Court's Order that Mr. Levandowski must be fired if he refuses to comply with Defendants' directives.  Defendants have no excuse to "pull any punches," to use the Court's language.  Indeed, Uber fires employees for far less than obstructing Court Orders.  For example, just last December Uber fired two in-house attorneys – not for refusing to turn over 14,000 stolen files – but "after they turned to outside attorneys for advice on proposed changes to the company's document- and data-retention policy, allegedly without the necessary authorization from the company."[2]  And Uber reportedly will "disable" (i.e., terminate) drivers of its ride-sharing service for offenses far less serious than criminal trade secret misappropriation, including if a) their average star rating drops below 4.6, b) they violate Uber's Code of Conduct, c) they engage unsafe driving, or d) they drive with a companion in their car.[3]  There can be no dispute that Uber has the authority to terminate Mr. Levandowski for refusing to return the downloaded files.

---

[2]  *See* http://www.corpcounsel.com/top-stories/id=1202786179042/Ubers-Firing-of-2-InHouse-Lawyers-Raises-Questions-About-Legal-Culture?mcode=1202614998472&curindex=0.

[3]  *See* http://www.ridesharingdriver.com/fired-uber-drivers-get-deactivated-and-reactivated/.

Paragraph 3 also requires that Mr. Levandowski immediately make his personal devices available for inspection.  Otherwise there is no way to enforce (or verify) that he can no longer consult, copy, or otherwise use the downloaded materials.  That's what Waymo proposes, as well as monitoring and verification by the Special Master and a forensic auditing expert of his choosing.  Defendants suggest that they could somehow comply with Paragraph 3 (or Paragraph 2) without inspecting Mr. Levandowski's electronic media.  They could not.

Waymo's proposal also properly requires that Mr. Levandowski be prohibited from using any devices to access Defendants' servers or networks that are not issued by Defendants – i.e., no access from personal devices, that Mr. Levandowski be prohibited from bringing personal devices into offices or facility with LiDAR personnel or work, and that Mr. Levandowski be prohibited from entering any area of any of Defendants' offices or facilities where LiDAR work is conducted or LiDAR personnel are stationed.  Defendants suggest that they could comply with Paragraph 3 without such prohibitions.  They could not.

2.      Waymo's Proposed Protocol Section II.B

To verify Defendants' compliance with Paragraph 3 (or Paragraph 2), the Special Master must know – immediately – who receives the written letters and what they say, and must also be able to conduct spot check interviews of recipients.  (*See* pages 6-7, *supra*.)  This is even more crucial with respect to Mr. Levandowski.  The Special Master must have access to communicate with this key individual, whom Paragraph 3's requirements (among others) are centrally focused on.  Simply put, the Special Master cannot verify Defendants' compliance with Paragraph 3 without interviewing Mr. Levandowski.  It is telling that Defendants have proposed a protocol that does not provide for such an interview.

The Special Master also cannot verify compliance with Paragraph 3 without access to the responsive certifications.  (*See* page 7, *supra*.)

Verification of compliance with Paragraph 3 also requires that the Special Master have access to communicate the relevant IT and security personnel who will be enforcing the prohibitions on Mr. Levandowski's access to LiDAR.  That's what Waymo proposes.  Defendants suggest that even if such technical and security measures were implemented, the Special Master could verify compliance without any communications or on-site visits.  That is inadequate.

Finally, the Protocol should provide that the Special Master verify to the Court compliance to date in advance of the May 31 deadline, for the same reasons as above.  (*See* page 7, *supra*.)

### 3.   Waymo's Proposed Protocol Section II.C

In order to monitor Defendants' ongoing compliance with the requirements of Paragraph 3, the Special Master must have access to LiDAR personnel's communications.  Specifically, the Special Master must be able be able to inspect, on demand, the emails, phones, and electronic chat accounts of any LiDAR personnel, and verify whether any incoming communications have come from Mr. Levandowski.  The Special Master must also be notified of any meetings of the LiDAR team or sub-teams, and be given the opportunity to monitor such meetings either in person or remotely.  That's what Waymo proposes, and it is consistent with Paragraph 7 ("The protocols shall provide for the special master to visit defendants' facilities and monitor communications as necessary to ensure that Anthony Levandowski remains sealed off from LiDAR activities.").  It is not clear what Defendants suggest as an alternative.

Finally, the Protocol should provide that the Special Master periodically verify to the Court ongoing compliance, for the same reasons as above.  (*See* page 7, *supra*.)

### C.   Defendants Provide No Protocol to Ensure Compliance, Monitoring, and Verification of Paragraph 4 Requirements

Paragraph 4 requires that, "With respect to all other persons, including those with Stroz Friedberg, **defendants shall conduct a thorough investigation and provide a detailed accounting under oath setting forth every person who has seen or heard any part of any downloaded**

**materials, what they saw or heard, when they saw or heard it, and for what purpose**. In their investigation, defendants must do more than query servers with term searches. For example, they must interview personnel with particular focus on anyone who has communicated with Anthony Levandowski on the subject of LiDAR. Defendants' accounting shall not be limited to Uber but shall include all persons who fit the foregoing description, including Levandowski and his separate counsel. The accounting may exclude, for only the time period after the commencement of this civil action, the attorneys of record and their staff and experts employed for this litigation. The accounting shall not be limited to downloaded materials that happened to make their way into some due diligence report but shall cover any and all downloaded materials. **The accounting shall also identify the complete chains of custodians for every copy of any downloaded materials or due diligence report referencing downloaded materials**. **Defendants must also use the full extent of their authority and influence to obtain cooperation with the foregoing procedure from all involved.** For example, if a potential custodian refuses to cooperate, then defendants' accounting shall set forth the particulars, including all efforts made to obtain cooperation. The accounting must be filed and served by JUNE 23 AT NOON. The accounting may be filed under seal *only* to the extent that it quotes or appends downloaded materials." (Dkt. 427 at 24-25) (emphases added).)

Waymo's Proposed Protocol effects the Court's requirements. Uber's Proposed Protocol does not.

### 1.    Waymo's Proposed Protocol III.A

Paragraph 4 requires a thorough investigation resulting in a detailed accounting. Defendants obviously cannot wait until June 22 to begin the investigation; they must begin immediately. Waymo is gravely concerned that absent early monitoring and verification, Defendants will take their customary "ostrich" head in the sand approach and fail to conduct an adequate investigation or prepare an adequate accounting. If Waymo, the Special Master, and the Court do not learn until June 23 that Defendants have been spinning their wheels for six weeks, and seek to give themselves another

01980-00104/9289268.1

-12-

CASE NO. 3:17-cv-00939-WHA

OBJECTIONS TO DEFENDANTS' PROTOCOLS FOR MONITORING AND VERIFYING DEFENDANTS' COMPLIANCE WITH ORDER GRANTING PROVISIONAL RELIEF

1   unauthorized extension (as they did with the Order to provide an unredacted privilege log to Waymo

2   by April 27 at noon – something they already had but simply withheld for over 24 hours after the

3   Court-imposed deadline, without explanation), there will not be enough time until the close of fact

4   discovery (currently set for July 21) for Defendants to actually set about complying with Paragraph 4.

5   Waymo's proposal seeks to avoid this otherwise likely scenario, by providing for early monitoring and

6   verification.  Defendants provide for no monitoring or verification until June 23 – which is too late.

7           Defendants do not dispute that in order to meaningfully comply with Paragraph 4, they must

8   devise a plan for compliance by May 22.  Rather, Defendants balk on having to share that plan with

9   the Special Master or Waymo.  But Waymo is not seeking any attorney work product or privileged

10  information.  Defendants must simply explain how they intend to comply with the Court's Order – for

11  example, which employees and entities they will seek to interview and in what time frame(s), and

12  what they will do to exercise the full extent of their authority and influence to obtain cooperation.

13  This transparency is warranted here based on Defendants' prior conduct.  If Defendants' plan is

14  reasonable, there will be no further issues.  If, however – as Waymo suspects – there is no plan, or it is

15  plainly deficient, then Waymo and the Special Master should given the opportunity to suggest

16  modifications, and brief any disputes to Magistrate Judge Corley by May 27.  That will give the

17  Magistrate Judge an opportunity to rule sufficiently in advance of the June 23 deadline for Defendants

18  to provide a compliant accounting by the Court-imposed deadline.

19          D.      Defendants Provide No Protocol to Ensure Compliance, Monitoring, and
                    Verification of Paragraph 5 Requirements
20

21          Paragraph 5 requires that, "Also by JUNE 23 AT NOON, defendants shall provide

22  Waymo's counsel and the Court **with a complete and chronologically organized log of all oral**

23  **and written communications** — including, without limitation, **conferences, meetings, phone**

24  **calls, one-on-one conversations, texts, emails, letters, memos, and voicemails — wherein**

25  **Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier,**

26  **or consultant of defendants**. The log shall identify for **each such communication the time,**

27

28

1   **place (if applicable), mode, all persons involved, and subjects discussed, as well as any and**

2   **all notes or records referencing the communication.**" (Dkt. 427 at 25 (emphases added).)

3          Waymo's Proposed Protocol effects the Court's requirements. Uber's Proposed Protocol

4   does not.

5                  1.      <u>Waymo's Proposed Protocol IV.A</u>

6          Paragraph 5 requires a complete and chronologically organized log of all oral and written

7   communications between Mr. Levandowski and anyone from Defendants. As with Paragraph 4,

8   Defendants obviously cannot wait until June 22 to begin this substantial undertaking that Waymo

9   expects will comprise many thousands of entries. And although the Order is clear what level of detail

10  the log must provide and by what date, the Court's standing order on privilege logs is equally clear –

11  yet Defendants have repeatedly failed to provide the required level of detail by the required date. For

12  the same reasons as for Paragraph 4, therefore, monitoring and verification of compliance requires that

13  Defendants disclose their plan well in advance. (*See* pages 12-13, *supra*.)

14          E.      <u>Defendants Provide No Protocol to Ensure Compliance, Monitoring, and</u>
                <u>Verification of Paragraph 6 Requirements</u>

15          Paragraph 6 requires that, "Subject to the protective order, and upon reasonable notice,

16  Waymo's counsel and one expert may inspect **any and all aspects** of defendants' **ongoing work**

17  **involving LiDAR** — including, without limitation, **schematics, work orders, source code, notes,**

18  **and emails** — whether or not said work resulted in any prototype or device." (Dkt. 427 at 25)

19  (emphases added).)

20          Waymo's Proposed Protocol effects the Court's requirements. Uber's Proposed Protocol

21  does not.

22

23                  1.      <u>Waymo's Proposed Protocol V.A</u>

24          Waymo proposes a protocol for these Court-ordered inspections. Defendant does not. The

25  Special Master must have access to these inspections, and should be required to submit period

26  certifications of Defendants' compliance with the inspection protocol, to avoid what Waymo fears

27

28

1  would otherwise be serial disputes over whether Waymo is entitled to inspect certain of Defendants'

2  on-going LiDAR work.

3          F.      Defendants Provide No Protocol to Ensure Compliance, Monitoring, and
               Verification of Paragraph 7 Requirements
4

5          Paragraph 7 requires that, "Defendants shall keep **complete and accurate records o**f their

6  **compliance with all of the foregoing requirements, including directives given to Anthony**

7  **Levandowski and others.**"  (Dkt. 427 at 26) (emphases added).)

8          Waymo's Proposed Protocol effects the Court's requirements.  Uber's Proposed Protocol

9  does not.
10

11          1.      Waymo's Proposed Protocol VI.A

12          Paragraph 7 requires that Defendants maintain complete and accurate records of their

13  compliance with the requirements of all of the preceding paragraphs.  That requires that Defendants

14  immediately issue appropriate litigation holds.  The Special Master must be cc-ed on these litigation

15  holds, and have the ability to interview recipients, in order to verify compliance.  (*See* pages 6-7,

16  *supra*.)   The Special Master must also have access to any personnel involved in Defendants'

17  compliance efforts to confirm that records – such as of directives given to Mr. Levandowski – are

18  being generated and maintained.  Waymo's proposal provides for this.  Defendants suggest that no

19
20  monitoring or verification protocol is required.  That is inadequate.

21          Finally, because the requirements of Paragraph 7 are ongoing, the Special Master should

22  submit ongoing, periodic certifications of compliance to the Court.  (*See* page 7, *supra*.)

23
24
25
26
27
28