MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Telephone: 202.237.2727
Facsimile: 202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>                    Defendants. | Case No.    3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S SUR-REPLY IN OPPOSITION TO WAYMO'S MOTION TO COMPEL PRODUCTION OF DUE DILIGENCE REPORT**<br><br>Date: May 25, 2017<br>Time: 10:00 a.m.<br>Ctrm: F, 15th Floor<br>Judge: Hon. Jacqueline Scott Corley<br><br>Trial Date: October 2, 2017 |

Waymo primarily uses its reply brief (Dkt. 445) to set forth an unsupported narrative of wrongdoing in an effort to persuade this Court that the Due Diligence Report (the "Report") and accompanying exhibits[1] are not protected by three fundamental legal doctrines: the attorney-client privilege, the work product doctrine, and the common interest doctrine. Waymo does not, however, base its arguments on these legal principles or associated case law, nor does Waymo dispute many of Defendants' legal arguments or evidence. Unsupported rhetoric, like that offered by Waymo, cannot unravel foundational legal privileges particularly where, as here, the case law amply supports preserving them. Apparently accepting that Defendants have the better of the legal arguments already made, Waymo inappropriately advances two new arguments in its reply. Defendants appreciate leave granted by the Court to address those two arguments.[2]

### A. The Way in Which This Litigation has Unfolded is Irrelevant to an Assessment of the Existence of a Common Legal Interest, Which Must be Analyzed at the Time the Communications are Made.

Waymo contends that Defendants and Messrs. Levandowski and Ron lack a common legal interest in light of "the way in which the litigation against Waymo has actually unfolded…." (Dkt. 445 at 6.) This argument fundamentally misunderstands key principles of the common interest doctrine.

First, it is well established that the assessment of the existence of a common legal interest is made *at the time* the privileged information is communicated. Waymo argues that the parties' *current* adversity on some issues, which developed *after* sharing the privileged information, destroys the common interest protections afforded to privileged information shared previously (and pursuant to a common legal interest). This is not the law. *See Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374179, at *4 (C.D. Cal. Dec. 23, 2003) ("[T]he common interest rule is concerned with the relationship between the transferor and the transferee *at the time that the confidential information is disclosed*. The fact that the parties' interests have diverged over the

---

[1] For the avoidance of any doubt, the Report and exhibits are the only documents rightfully before this Court on this motion. *See* Apr. 25, 2017 Order (Dkt. 271) at 1 ¶ 2 ("[P]laintiff shall move, if it wishes to do so at all, to compel production of the due diligence report that was the subject of Levandowski's motion.").

[2] This sur-reply is limited to the issues raised in Defendants' request for this brief. (Dkt. 460.) Failure to address any other issue is not a waiver as to that issue.

course of the litigation does not necessarily negate the applicability of the common interest rule.") (citing *In re United Mine Workers of Am. Employee Ben. Plans Litig.*, 159 F.R.D. 307, 314 (D.D.C. 1994); *Ellis v. J.P. Morgan Chase & Co.*, 2014 WL 1510884, at *7 (N.D. Cal. Apr. 1, 2014) (court evaluates whether, "***at the time*** of the communications at issue," parties "continued to share a common interest") (citations, internal quotation marks omitted); *Microban Sys., Inc. v. Skagit Nw. Holdings, Inc.*, 2016 WL 7839220, at *1 (W.D. Wash. Aug. 17, 2016) ("***At the time of the communications***, the interests of both Microban and Barr were aligned in attempt to determine the value of Microban's intellectual property, and to determine whether litigation would be required to secure the full value of those rights.") (emphases added).

Second, it is axiomatic that parties to a common interest agreement can share a common legal interest in one or more respects and nonetheless be adverse in other respects. The common interest doctrine "does not require a complete unity of interests among the participants, and it may apply where the parties' interests are adverse in substantial respects." *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003); *see also United States v. Gonzalez*, 669 F.3d 974, 980 (9th Cir. 2012) ("[P]arties to an asserted JDA need not have identical interests and may even have some adverse motives."). Thus, even assuming that an adversity of interests between Uber and Mr. Levandowski existed at any time prior to Mr. Levandowski's assertion of the Fifth Amendment, like when the Report was circulated in August 2016 as Waymo suggests (Dkt. No. 445 at 7), that would not—and did not—prevent the joint defense parties from entering into a joint defense agreement months prior for the common legal interest of gathering and understanding facts related to the risk of joint litigation with Google following Uber's proposed acquisition of Ottomotto and Otto Trucking LLC. (Tate Decl. (Dkt. 370) ¶¶ 7, 9, 12; Suhr Decl. (Dkt. 378) ¶ 6; Bentley Decl. (Dkt. 376) ¶¶ 8, 11; Baker Decl. (Dkt. 375) ¶¶ 5-6; Gardner Decl. (Dkt. 381) ¶¶ 3-4; *see also* Ex. 2 (Dkt. 370-2) at 1; Ex. 3 (Dkt. 370-3) at 2 (confirming parties' common legal interest).) The court in *Matter of Grand Jury Subpoena Duces Tecum Dated Nov. 16, 1974*, 406 F. Supp. 381, 392 (S.D.N.Y. 1975), cited in *Bergonzi*, 216 F.R.D. at 495, explained this well: parties to a joint defense agreement are "entitled to risk" their potential adversity "for the sake of strengthening [their] immediate defense . . . . That a joint defense may be made by

DEFENDANTS' SUR-REPLY IN OPPOSITION TO WAYMO'S MOTION TO COMPEL PRODUCTION OF DUE DILIGENCE REPORT
Case No. 3:17-cv-00939-WHA

2

somewhat unsteady bedfellows does not in itself negate the existence or viability of a joint defense." *See also The Pampered Chef. v. Alexanian*, 2010 WL 7809455 (N.D. Ill. Aug. 18, 2010) ("The potential for adversity on certain issues **in the future** is not inconsistent with a present and continued common interest with respect to other 'legal goal[s].'") (emphasis added).

### B. Newly-Alleged Predicate Crimes Do Not Compel Application of the Crime-Fraud Exception.

After failing to establish the applicability of the crime-fraud exception based on alleged trade secret theft—because, as Defendants showed in opposition, it did not even try to meet its evidentiary burden of proving every element of the alleged ongoing crime (Dkt. 369 at 17)—Waymo now includes fleeting references to two more predicate crimes they propose to justify the application of the crime-fraud exception: obstruction of justice and receipt of stolen property, in violation of California Penal Code § 496. (Dkt. 445 at 10; n.7.) Again, Waymo makes no attempt to satisfy its burden of presenting evidence that would establish the elements of such alleged predicate crimes—and, incredibly, Waymo again does not even argue that obstruction of justice or receipt of stolen property *are* the predicate crimes; it just says that each *would or could be* predicate crimes and hopes the Court finds such unsupported argument sufficient. To reiterate: Waymo is required to "present evidence which, if believed by the jury would establish the elements of the alleged crime or fraud." *Laser Indus. Ltd. v. Reliant Techs., Inc.*, 167 F.R.D. 417, 436 (N.D. Cal. 1996) (citing *United States v. Laurins*, 857 F.2d 529, 541 (9th Cir. 1988)). This is an exacting showing that Waymo's own briefing makes clear cannot be satisfied. *See Laser Indus.*, 167 F.R.D. at 441-42 (requiring proponent of crime-fraud exception to present evidence establishing every element of common law fraud by a preponderance of the evidence; discussing all requirements for application of exception in civil case); *In re Napster Inc. Copyright Litig.*, 479 F.3d 1078, 1096-98 (9th Cir. 2007) (same, citing *Laser Indus.* with approval).[3]

---

[3] Even had it tried, Waymo would fail in presenting evidence showing obstruction of justice. *See, e.g., United States v. Ruhbayan*, 201 F. Supp. 2d 682, 686 (E.D. Va. 2002) (evidence that, in letters the defendant wrote, he explained to the recipient how to lie to defendant's attorney and directed the recipient to give false testimony satisfied evidentiary burden; crime-fraud exception applied); *Laurins*, 857 F.2d 529, 541 (cited but not discussed by Waymo) (defendant lied to attorney about location of documents; evidentiary burden satisfied; crime-fraud exception applied); *United States v. Reeder*, 170 F.3d 93, 106 (1st Cir. 1999) (criminal defendant's

DEFENDANTS' SUR-REPLY IN OPPOSITION TO WAYMO'S MOTION TO COMPEL PRODUCTION OF DUE DILIGENCE REPORT
Case No. 3:17-cv-00939-WHA

3

Waymo instead attempts to cast Defendants' compliance with Judge Alsup's March 16 Order as evidence of an ongoing crime.  The Order required Defendants to produce "documents downloaded . . . and taken" by Messrs. Levandowski, Kshirsagar, and Raduta as well as ***any*** documents "that have forwarded, used, or referred to any part of said downloaded material." (Dkt. 61 ¶ 4.)  Defendants' extensive efforts to comply with this (rightfully) broad Order are the exact opposite of obstruction of justice and are not evidence of an ongoing crime or concealment of a crime.  (Dkt. 445 at 10.)  The Court's *in camera* review will confirm this to be the case. Additionally, the joint defense parties' reasons for engaging the services of attorneys—to understand joint litigation risks arising from Uber's potential acquisition of Ottomotto and Otto Trucking—would defeat any cognizable evidence to the contrary.  (Tate Decl. (Dkt. 370) ¶¶ 7, 9, 12; Suhr Decl. (Dkt. 378) ¶ 6; Bentley Decl. (Dkt. 376) ¶¶ 8, 11; Baker Decl. (Dkt. 375) ¶¶ 5-6; Gardner Decl. (Dkt. 381) ¶¶ 3-4; *see also* Ex. 2 (Dkt. 370-2) at 1; Ex. 3 (Dkt. 370-3) at 2 (confirming parties' common legal interest)); *cf. Laser Indus.*, 167 F.R.D. at 438 (where evidence and argument of ongoing crime in "equipoise," crime-fraud exception does not apply).

As part of the "bad acts" narrative it pushes, Waymo is essentially asking the Court to cast Defendants' lawful invocation of fundamental legal privileges as evidence of an ongoing crime, or put differently, to hold that Defendants' assertion of privilege is in and of itself a criminal act.  As Defendants' extensive cited authorities show, this is not the law.  The Court should not allow Waymo to distort such fundamental legal privileges for its own ends.

---

conversation with attorney in which he asked for help "to cover up his criminal conduct" admissible under crime-fraud exception).  Likewise, Waymo would have failed in its burden to prove trade secret theft had it tried.  *Cf. In re Heraeus Kulzer GmbH*, No. 3:09-CV-530 RM, 2012 WL 1493883, at *6 (N.D. Ind. Apr. 26, 2012) ("The evidence upon which Heraeus relies doesn't rise to the level of a prima facie showing or support an inference that Biomet employees sought legal advice and conspired with counsel to further a scheme to use Heraeus' trade secrets. Even if the court were to find Heraeus' conclusion plausible—that Biomet employees sought legal advice about how to successfully use Heraeus' trade secrets without detection—Biomet's alternative explanation is equally plausible—that Biomet employees sought legal advice relating to the company's new relationship with Esschem and how to properly conduct that business.").

| | | |
|---|---|---|
| 1 | Dated:     May 19, 2017 | MORRISON & FOERSTER LLP |
| 2 | | BOIES SCHILLER FLEXNER LLP |

By:  /s/ *Karen L. Dunn*
        Karen L. Dunn

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC

DEFENDANTS' SUR-REPLY IN OPPOSITION TO WAYMO'S MOTION TO COMPEL PRODUCTION OF DUE DILIGENCE REPORT
Case No. 3:17-cv-00939-WHA

5