# EXHIBIT 1

```
                                                  Pages 1 - 47

                   UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

            BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

WAYMO, LLC,                     )
                                )
          Plaintiff,            )
                                )
  VS.                           )   No. C 17-00939 WHA
                                )
UBER TECHNOLOGIES, INC.,        )
et al.,                         )
                                )
          Defendants.           )
                                )   San Francisco, California
                                    Thursday, April 27, 2017

                      TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:
                        QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                        50 California Street
                        22nd Floor
                        San Francisco, California  94111
                  BY:   CHARLES K. VERHOEVEN, ESQ.
                        MELISSA J. BAILY, ESQ.
                        JAMES D. JUDAH, ESQ.
                        JOHN W. MCCAULEY, IV, ESQ.
For Defendants:
                        MORRISON & FOERSTER, LLP
                        425 Market Street
                        San Francisco, California  94105
                  BY:   ARTURO J. GONZÁLEZ, ESQ.
                        MICHAEL A. JACOBS, ESQ.




Reported By:  BELLE BALL, CSR 8785, CRR, RDR
              Official Reporter, U.S. District Court

(Appearances continued, next page)
```

1   in for Morrison & Foerster to represent one of the defendants in
2   the case, that being Otto Trucking.
3       **THE COURT:**  All right.  I did see that.  I did not realize I
4   had to sign it, but I will get that done, at some point.  All
5   right.
6       **MR. GONZÁLEZ:**  Thank you.
7       **THE COURT:**  So we are here on a motion to compel
8   arbitration.  It's your motion.
9       **MR. GONZÁLEZ:**  Your Honor, Mr. Hume is going to present our
10  argument.
11      **THE COURT:**  Fine.
12      **MR. HUME:**  Good morning, Your Honor.  Hamish Hume from Boies
13  Schiller for Uber and Otto Moto.
14      Your Honor, the Court asked four seemingly very on-point
15  questions.  I don't know if the Court would like to hear the
16  answer to that first.
17      **THE COURT:**  Let's do this, if you don't mind.
18      Who is going to respond on your side?
19      **MR. VERHOEVEN:**  I am, Your Honor.
20      **THE COURT:**  Okay.  So, let's go through these four
21  questions.  And then hopefully we will still have some time for
22  you to do some argument.  The questions are really directed --
23  the first two, anyway -- at Waymo.
24      So the first question is:  Will Waymo forego any reliance in
25  this case on any employment or other agreement with Levandowski

```
 1   containing an arbitration clause?
 2        MR. VERHOEVEN:  So --
 3        THE COURT:  Wait, wait.
 4        Will Waymo seek to use any such agreement for any purpose in
 5   this case?
 6        Okay, so what's the answer to that?
 7        MR. VERHOEVEN:  So if I could, Your Honor, I would break it
 8   up into each question.
 9        THE COURT:  Sure.
10        MR. VERHOEVEN:  So with respect to the first question, the
11   answer is:  Yes.
12        THE COURT:  Wait a minute.
13        MR. VERHOEVEN:  Waymo will forego any reliance on the terms
14   of any employment or other agreement with Levandowski containing
15   an arbitration clause.
16        THE COURT:  Answer:  Yes.  Okay.  How about the second
17   question?
18        MR. VERHOEVEN:  The second questions is:  Will Waymo seek to
19   use any such agreement for any purpose in the case?
20        The answer is:  No, provided that Uber does not open the
21   door by reference to these agreements or the lack thereof of
22   those agreements, which is something that we would just have to
23   address down the road if they tried to inject them into the
24   case, somehow.  But otherwise the answer is:  No.
25        THE COURT:  Well, all right.
```

1  So the other side in the briefing has said even if you're
2  not relying on the contracts, per se, the moment will come in
3  the case when you have got to prove up that these were trade
4  secrets.  And one of the things that you look at to see if it
5  was a trade secret was:  Did your company have security measures
6  to safeguard the confidentiality of the information?
7  **MR. VERHOEVEN:**  (Nods head)
8  **THE COURT:**  To which you would normally want to say:  Well,
9  we made him sign an agreement that he would keep it
10  confidential.  And we made everybody else sign a similar
11  agreement.
12  I mean, I'm -- I think that's one of the things.  It's not
13  the only way to do it, but that would be one of the things that
14  you would normally point to.
15  So, what is your answer to that?
16  **MR. VERHOEVEN:**  ==My answer to that, Your Honor, is we have==
17  ==plenty of other evidence to support that standard other than==
18  ==specifically relying on any term in Mr. Levandowski's employment==
19  ==agreement.==
20  **THE COURT:**  Well --
21  **MR. VERHOEVEN:**  So we will not --
22  **THE COURT:**  To be --
23  **MR. VERHOEVEN:**  Sorry.
24  **THE COURT:**  But does that mean that you will not refer to
25  that in your -- in presentation to the jury to try to show that

1   the company had plenty of ways to maintain confidentiality?
2   **MR. VERHOEVEN:**  We would not refer to Mr. Levandowski's
3   employment agreements or any of them in an effort to show that
4   we're maintaining confidentiality.
5       We may ask your Court -- and it would be only with
6   permission -- whether we could talk about our general policy
7   that employees sign employment agreements.  But if Your Honor
8   believes that is too close, then we won't do that either.
9       We have plenty of evidence to support our measures that we
10  have taken.  And we have outlined those in our brief.  I can go
11  over them if you would like, Your Honor.
12  **THE COURT:**  Well, let's -- I realize you've got more to your
13  trade secrets quiver than that one arrow.  But, okay.
14      What's wrong with what -- what do you say in response to
15  what I just heard on Question 1?
16  **MR. HUME:**  ==Your Honor, Waymo doesn't get to pretend that==
17  ==these contracts don't exist in order to avoid arbitration.  They==
18  ==want to invoke other sources of law, common law, the protections==
19  ==they took on their files, and say that's enough to show both==
20  ==that they took reasonable measures for confidentiality, and that==
21  ==Mr. Levandowski breached some duty of confidentiality.==
22      ==But the fact of the matter is, Waymo chose to have a==
23  ==contract.  They chose to have a contract with a lot of relevant==
24  ==provisions in it.  A contract that talks about confidential==
25  ==information.  A contract that talks about returning documents==

```
 1   when you leave.  A contract that talks about inventions.  And
 2   who owns what, including itemizing in an exhibit:  Which
 3   inventions did Mr. Levandowski already own?
 4       One only needs to read a little bit of the press in this
 5   case.  You know, Mr. Levandowski had an active inventorship
 6   before he went to Google; he had side businesses while he was at
 7   Google.  One of those businesses was bought back.  The terms of
 8   this agreement (Indicating) tell us:  What did they own, what
 9   did he own.
10       They chose to have that contract.  They can't now litigate
11   this case as if it were nonexistent, which is what they want to
12   do to avoid arbitration.  There's no case that allows that.  And
13   there are at least three cases in California state court that
14   have required a plaintiff in this position to arbitrate, even
15   though they did not want to rely in any way on the contract.
16   They tried to stay as far away from it as they could.
17       **THE COURT:**  Well, give me one such example.
18       **MR. HUME:**  In the *Metalclad* case, Your Honor -- and if we
19   could, we have some demonstratives, and --
20       **THE COURT:**  No, no, no, wait, wait, wait.  Wait.  Just give
21   me the -- no, I don't want -- I don't want those yet.  Time
22   permitting, we'll get to them.  But give me the name of the
23   case, because I -- I question what you just told me.  And I want
24   to just look at your best case.
25       **MR. HUME:**  So let me be clear:  None of these cases had a
```

1   their argument that there's inexplicable intertwining, as you
2   may recall in the reply brief, there's a long list of bulleted
3   points from our pleadings and complaint.
4       And as we pointed out in our surreply, not a single one of
5   those quotes referenced or relied on the employment agreement
6   with Mr. Levandowski.  So the second aspect of the second prong
7   is not met.
8       And so, even if Your Honor is a little skeptical about my
9   comments about whether they need to be a signatory which I think
10  is supported under the law, it's -- it's not going to turn the
11  scales anyway, because you've got the second prong, which has
12  been construed by the Court to refer to the obligations in the
13  contract.  It's not inextricably intertwined with the facts or
14  whatever.
15      It's inter- -- sorry, Your Honor.  It's inter- --
16  intertwined, I'll say, with the causes of action -- or excuse
17  me -- the clauses and the obligations in the employment
18  agreement.  And here, it's not.  We're not relying on the
19  employment agreement, at all.  And so there's no intertwinement.
20      **THE COURT:**  All right.  Let's hear the other side's view of
21  that.
22      **MR. HUME:**  ==Your Honor, there's nowhere that Waymo was more==
23  ==clear with its employees and Mr. Levandowski on what the terms==
24  ==of their obligations were on keeping trade secret and other==
25  ==proprietary information confidential than the contract.==  So the

that Waymo's got to do the same thing?  It's reciprocal?  What do you say to that?

**MR. VERHOEVEN:**  Well, what I say, I think it's important -- well, first of all, we are not suing Levandowski.  And so he's not a defendant in these claims.  So there's no other side of the coin here.

**THE COURT:**  Well, no, you're suing -- you're suing Uber based upon something that Levandowski did.

**MR. VERHOEVEN:**  Based on something Uber did.

**THE COURT:**  Yes, and Levandowski.  You say in your complaint that he downloaded 14,000 --

**MR. VERHOEVEN:**  That's correct, and he continued --

**THE COURT:**  While he was an employee.

**MR. VERHOEVEN:**  And he continued to do things that we allege were improper while he was a head of Uber's self-driving car program.

**THE COURT:**  Well, I know, but the heart of your -- the key thing is that he downloaded 14,000 files while he was at your company, while he was an employee.

**MR. HUME:**  And while they allege he was talking to us.  Paragraphs 42 to 48.

**THE COURT:**  I understand, but --

**MR. VERHOEVEN:**  So --

**THE COURT:**  So if it was reciprocal, why wouldn't you have to also arbitrate?

1  of its employees, and it's at ==the broadest possible arbitration==
2  ==agreement you can==.  And then when there's the least little
3  possibility that maybe you're going to get stuck with the same
4  reciprocal obligation, you're suddenly scrambling to try to
5  figure out some -- so now you say:  Oh, "anyone," "anyone," oh,
6  that means anyone at Google.  All right.
7      **MR. VERHOEVEN:**  So be that as it may, Your Honor, the issue
8  here is equitable estoppel.  And that doesn't mean equity in the
9  world.  I just want to focus this.
10     The equitable estoppel we're talking about has been defined
11 by the courts.  And what it's talking about is precluding a
12 party from claiming the benefits of the terms of the contract
13 while simultaneously attempting to avoid the burdens of that
14 contract.
15     **THE COURT:**  I understand that.  And I -- I think that tends
16 to work in your favor.  But I, nevertheless -- all right.
17 Mr. Chatterjee, I'm going to give you a chance to say what you
18 wanted to say, and then we have got to bring it to a close.
19     **MR. HUME:**  We also, Your Honor, haven't had a chance to
20 answer Questions 3 and 4.
21     **THE COURT:**  We have run out of time.  You see what's
22 happened today.  Been going since 8:00.
23     **MR. HUME:**  I don't think they're controversial.  Question
24 No. 3 --
25     **THE COURT:**  I may give you a chance to submit it under --

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/  Belle Ball*_____
  Belle Ball, CSR 8785, CRR, RDR

Friday, April 28, 2017