# EXHIBIT 3

```
                                                    Pages 1 - 127

                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

              BEFORE THE HONORABLE WILLIAM H. ALSUP

WAYMO, LLC                      )
                                )
                                )
           Plaintiff,           )
                                )
  vs.                           ) No. C 17-00939 WHA
                                )
UBER TECHNOLOGIES, LLC., OTTO   )
TRUCKING, LLC, and OTTOMOTTO, LLC, )
                                ) San Francisco, California
           Defendants.          ) Wednesday
                                ) May 3, 2017
_____) 9:00 a.m.

                    TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:         QUINN, EMANUEL, URQUHART, OLIVER
                         & Sullivan, LLP
                       50 California Street
                       22nd Floor
                       San Francisco, California 94111
                  BY:  CHARLES KRAMER VERHOEVEN, ESQ.
                       JORDAN R. JAFFEY, ESQ.


For Defendants:        MORRISON & FOERSTER, LLP
                       425 Market Street
                       San Francisco, California 94105
                  BY:  ARTURO J. GONZALEZ, ESQ.
                       RUDOLPH KIM, ESQ.
                       MICHAEL A. JACOBS, ESQ.
                       ESTHER KIM CHANG, ESQ.

           (APPEARANCES CONTINUED ON FOLLOWING PAGE)


Reported By:   Debra L. Pas, CSR 11916, CRR, RMR, RPR
               Official Reporter - US District Court
               Computerized Transcription By Eclipse
```

```
 1   Chatterjee on behalf of Otto Trucking, LLC.
 2            THE COURT:  All right.  Thank you.
 3            MR. COOPER:  Good morning, John Cooper, Special
 4   Master.
 5            THE COURT:  Thank you.
 6       All right.  So we are here for the public portion of the
 7   motion.  Those of you who just joined us, we have been going at
 8   it for about an hour and a half concerning alleged trade
 9   secrets.  So that part was under seal.  Now this is the public
10   portion.
11       And I want to ask my clerk if we can get the air
12   conditioner cranked up, because we've got so many people in
13   here, it's hard to breathe.  Can we get the air conditioner
14   going?
15            THE CLERK:  I'll call.
16            THE COURT:  All right.  Anyway, forgive us for the
17   stuffiness of the room.
18       So this is the Waymo Motion for Preliminary Injunction.
19   Please go ahead.
20            MR. VERHOEVEN:  Thank you, your Honor.  I have some
21   slides I would like to hand up, if I may.
22            THE COURT:  All right.  My clerk is dealing with the
23   air conditioner.
24       (Document tendered to the Court)
25            MR. VERHOEVEN:  Obviously, I'm not going to go
```

```
 1   through all of those slides, your Honor, but we're
 2   over-inclusive just in case we need to show something.
 3          This is an extraordinary case of misappropriation of
 4   intellectual property.  Mr. Levandowski downloaded over 14,000
 5   proprietary files while he was at Waymo for use at a
 6   competitor.
 7          While at Waymo, he's still working there, he went out of
 8   his way to search Google's internet for instructions on how to
 9   access Waymo's confidential .svn file repository.  He then
10   installed specialized software, TortoiseSVN, to access that
11   repository.  He downloaded 9.7 gigabytes of Waymo's proprietary
12   files onto his laptop, his Waymo laptop.
13          He then attached an external drive to the laptop for eight
14   hours and, we allege, transferred those files to the external
15   drive.  He then tried to cover his tracks, your Honor, by
16   reformatting his laptop and trying to wipe clean the evidence
17   of what he had done.
18          The statements I just made, your Honor, are undisputed.
19   Mr. Levandowski has taken the Fifth Amendment.  He refuses to
20   testify on the ground that he may incriminate himself.
21          Elsewhere we've discovered, when asked about it, he has
22   not denied that he did this.
23          Importantly, the defendants in this case, Uber, which I'll
24   call collectively Uber, your Honor, do not dispute that he did
25   it.  They do not contest that he did it.
```

1  It is now clear, your Honor, that at the time of the
2  download, Uber and Mr. Levandowski were planning to build a
3  replica LiDAR system for Uber. It turns out, through
4  discovery, we've learned that Uber and Levandowski, together,
5  created a cover-up scheme for what they were doing. They
6  concocted a story for public consumption.
7       The story was that Mr. Levandowski left Waymo because he
8  wanted to found his own company. And only after months later,
9  Uber decided to buy that company. While that is troubling
10 enough, the facts are even more disturbing.
11      In fact, the evidence shows that while Mr. Levandowski was
12 still working at Waymo, Uber and Mr. Levandowski were planning
13 to have Levandowski build a custom LiDAR for Uber based on his
14 experience with Waymo's efforts.
15          THE COURT: Wait a minute now. Tell me that last
16 sentence one more time.
17          MR. VERHOEVEN: I'll show you the document, your
18 Honor.
19          THE COURT: Okay.
20          MR. VERHOEVEN: If we could go to slide 11. Oh, I'm
21 sorry. It's sealed, your Honor.
22      But I have received permission to publish it, correct?
23          MR. GONZALEZ: Yes.
24          MR. VERHOEVEN: Yes.
25      So could we put it up, please?

*Debra L. Pas, CSR, RPR, RMR, CRR*
*Official Reporter - U.S. District Court - San Francisco*
*(415) 431-1477*

```
 1   developed such a product with Levandowski.  It was called the
 2   PBR.  That's all I'm saying.
 3       I'm not trying to say this document shows
 4   misappropriation.  I'm saying it shows their deal was while
 5   he's at Waymo, he's negotiating -- or Uber is negotiating with
 6   Mr. Levandowski saying:  We want you to build a product just
 7   like Waymo developed, and we want it on a certain timeline, and
 8   we want certain deliverables, and you don't get paid unless you
 9   deliver them.
10           THE COURT:  All right.  But the specifications of
11   what it's going to do, these technical specifications, could
12   turn out to be different from what the Waymo PBR did, right?
13           MR. VERHOEVEN:  I'm not making assertions that
14   there's an identity of the specifications.
15       All I'm saying, your Honor, is this is evidence that they
16   had a plan, and this is taking place during the download of the
17   14,000 -- contemporaneous with the download of the 14,000
18   proprietary Waymo files.  And this relates directly to a
19   product that Waymo had developed for long -- for a long-range
20   LiDAR sensor.
21       If you go to the next slide, which is sealed -- and I
22   don't think they will -- for the same reasons, I don't think
23   they will --
24           THE COURT:  Just let me ask you something.  Let's say
25   that Waymo goes out and hires somebody from a competing
```

```
 1   self-driving car company.  There are other companies out there.
 2   Just make one up.
 3        Your proposition seems to be that they are -- that that's
 4   bad because they're going to wind up using information that
 5   they were working on at the other company.  And I bet you Waymo
 6   itself has hired people from other companies.
 7             MR. VERHOEVEN:  That's not what I'm saying, your
 8   Honor.
 9        I'm saying this is one piece in the puzzle that shows
10   intent, along with the download of the 14,000 documents, the
11   secret negotiation while he's an employee of Waymo, the plan
12   ahead of time that they were going to -- that he was going to
13   create a company and build, ostensibly, his own company and
14   build a -- these, according to these detailed specifications,
15   LiDAR systems that are the same products as Waymo had,
16   according to specific timelines and specific --
17             THE COURT:  Not the same products.  The same generic
18   type products, but that's all this shows so far.
19             MR. VERHOEVEN:  And tied to specific revenue
20   payments, all while he's employed at Waymo.
21             THE COURT:  All right.  Does it say in that document
22   that he's supposed to download documents?
23             MR. VERHOEVEN:  No, it does not.
24             THE COURT:  All right.  Now, I am not saying you've
25   got to have this kind of proof.  But I am listening very
```

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Debra L. Pas*

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Thursday, May 4, 2017