QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br>         Plaintiff,<br>    vs.<br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br>         Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING RESOLUTION OF DEFENDANTS APPEAL OF ORDER DENYING MOTION COMPEL ARBITRATION OF, AND TO STAY, TRADE SECRET AND UCL CLAIMS**<br><br>Date:         June 7, 2017<br>Time:        9:00 a.m.<br>Ctrm:        8, 19th Floor<br>Judge:       Honorable William H. Alsup<br>Trial Date: October 2, 2017 |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

STANDARD OF REVIEW ............................................................................................................ 2

ARGUMENT .................................................................................................................................. 3

I.  UBER HAS NOT SHOWN THAT ITS APPEAL PRESENTS SUBSTANTIAL
    QUESTIONS OR SERIOUS LEGAL ISSUES WARRANTING A STAY ........................ 3

    A.  The Court's Denial Of Uber's Motion To Compel Arbitration Applied
        Well-Established Ninth Circuit Precedent .............................................................. 4

    B.  Uber Identifies No Matters of "First Impression" .................................................. 6

    C.  Fact-Dependent Determinations Do Not Present Substantial Questions Or
        Serious Issues For Appeal; Uber's Reliance On *Jones* Is Misplaced .................. 10

II. THE BALANCE OF HARDSHIPS FAVORS PROCEEDING TO A
    RESOLUTION OF WAYMO'S CLAIMS ON THE MERITS IN THIS FORUM ............ 11

    A.  A Stay Will Prejudice and Cause Substantial Injury To Waymo ......................... 11

    B.  Uber Has Not Shown That It Will Be Irreparably Harmed If The Case
        Proceeds ................................................................................................................ 14

III. UBER FAILS TO SHOW A STAY WOULD BE IN THE PUBLIC INTEREST .............. 16

CONCLUSION ............................................................................................................................. 16

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Alascom v. ITT N. Elec. Co.*,
   727 F.2d 1419 (9th Cir. 1989) .................................................................................. 14, 15

*Ambrosio v. Cogent Commc'ns, Inc.*,
   No. 14-CV-02182-RS, 2016 WL 7888024 (N.D. Cal. Sept. 21, 2016) ................................ 5, 15

*Bradberry v. T-Mobile USA, Inc.*,
   No. C 06 6567 CW, 2007 WL 2221076 (N.D. Cal. Aug. 2, 2007) ............................ 6, 12, 14, 16

*Britton v. Co-op Banking Grp.*,
   916 F.2d 1405 (9th Cir. 1990) ......................................................................... 2, 3, 14, 15, 16

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
   No. C-12-MD-2330 EMC, 2014 WL 2922726 (N.D. Cal. June 13, 2014) ........................ 3, 5, 11

*Flex–Foot, Inc. v. CRP, Inc.*,
   238 F.3d 1362 (Fed. Cir. 2001) ........................................................................................... 2

*Ford v. Verisign, Inc.*,
   No. 05 CV 0819 JM(RBB), 2006 U.S. Dist. LEXIS 88856 (S.D. Cal. Mar. 8, 2006) ............... 14

*Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*,
   512 F.3d 1112 (9th Cir. 2008) ............................................................................................. 3

*Goldman v. KPMG LLP*,
   173 Cal. App. 4th 209 (2009) ................................................................ 4, 6, 7, 8, 9, 10, 11

*Gray v. Golden Gate Nat. Recreational Area*,
   No. C 08-00722 EDL, 2011 WL 6934433 (N.D. Cal. Dec. 29, 2011) ............................... 14, 15

*Guifu Li v. A Perfect Franchise, Inc.*,
   No. 5:10-CV-01189-LHK, 2011 WL 2293221 (N.D. Cal. June 8, 2011) ........... 3, 4-5, 10, 14, 15

*Harnish v. Frankly Co.*,
   No. 5:14-CV-02321-EJD, 2015 WL 1064442 (N.D. Cal. Mar. 11, 2015) ............................... 6

*Jade Trading, LLC v. United States*,
   65 Fed. Cl. 443 (2005) ....................................................................................................... 6

*Jones v. Deutsche Bank AG*,
   No. C 04-05357, 2007 WL 1456041 (N.D. Cal. May 17, 2007) ......................................... 11

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) .......................................................... 1, 4, 5, 6, 7, 8, 9, 10, 11

*Leiva–Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ................................................................................... 3, 11, 14

*Lopez v. Heckler*,
   713 F.2d 1432 (9th Cir. 1983) ............................................................................................ 3

*Mahan v. Howell*,
   410 U.S. 315, *modified*, 411 U.S. 922 (1973) ................................................................... 6

*McArdle v. AT & T Mobility LLC*,
   No. C 09–1117 CW, 2010 WL 2867305 (N.D. Cal. July 20, 2010) ..................................... 4

*Mohamed v. Uber Techs., et al.*,
   115 F. Supp. 3d 1024 (N.D. Cal. 2015) ............................................................................ 11

*Molnar v. NCO Fin. Sys., Inc.*,
   No. 13-CV-00131-BAS JLB, 2015 WL 1906346 (S.D. Cal. Apr. 20, 2015) ............................... 5

*Morse v. Servicemaster Glob. Holdings, Inc.*,
   No. C 08-03894, 2013 WL 123610 (N.D. Cal. Jan. 8, 2013) ......................................... 3, 14, 15

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) ................................................................................... 1, 4, 5, 7, 8

*Murphy v. DirecTV, Inc.*,
   No. 2:07-CV-06465-FMC, 2008 WL 8608808 (C.D. Cal. July 1, 2008) .................................... 4

*Nitsch v. DreamWorks Animation SKG Inc.*,
   100 F. Supp. 3d 851 (N.D. Cal. 2015) ....................................................................................... 7

*Nken v. Holder*,
   556 U.S. 418 (2009) .......................................................................................... 2, 3, 15, 16

*Pokorny v. Quixtar, Inc.*,
   No. 07–00201 SC, 2008 WL 1787111 (N.D. Cal. Apr. 17, 2008).......................................... 3, 4

*Rajagopalan v. Noteworld, LLC*,
   718 F.3d 844 (9th Cir. 2013)................................................................................................. 4, 7

*Rajagopalan v. Noteworld, LLC*,
   No. C11-5574 BHS, 2012 WL 727075 (W.D. Wash. Mar. 6, 2012) ......................................... 4

*Rajagopalan v. Noteworld, LLC*,
   No. C11-5574 BHS, 2012 WL 2115482 (W.D. Wash. June 11, 2012) ..................................... 4

*Ribbens Int'l, S.A. de C.V. v. Transp. Int'l Pool, Inc.*,
   40 F. Supp. 2d 1141 (C.D. Cal. 1999)....................................................................................... 6

*Stern v. Cingular Wireless Corp.*,
   No. CV 05 8842 CAS, 2006 WL 2790243 (C.D. Cal. Sept. 11, 2006)..................................... 14

*Ting v. AT & T*,
   319 F.3d 1126 (9th Cir. 2003)................................................................................................. 11

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
   830 F.3d 1335 (Fed. Cir. 2016) ................................................................................................. 2

*Wallis v. Centennial Ins. Co.*,
   No. CIV. 08-02558 WBS, 2012 WL 1552766 (E.D. Cal. May 1, 2012) ................................... 6

*Winig v. Cingular Wireless LLC*,
   No. C06-4297 MMC, 2006 WL 3201047 (N.D. Cal. Nov. 6, 2006) ....................................... 14

**INTRODUCTION**

Uber sought "to steer this case into arbitration even though they have no agreement with anyone to arbitrate the case."[1] Dkt. 425 (the "Order") at 1. The Court denied that motion. *Id.* Now, Uber seeks to stay this case – and its October 2 trial date – pending appeal of the Court's denial, even though Uber still has no agreement with anyone to arbitrate the case. Uber's latest ploy to obstruct the full, fair, and timely adjudication of Waymo's claims in this Court should also be denied.

Uber's motion to compel arbitration was not the first time that non-signatories to an agreement, applying California law, have sought to enforce an arbitration provision in this Circuit under a theory of equitable estoppel. Rather, the Ninth Circuit has addressed this scenario recently, and in depth, in multiple published cases. In its Order, the Court quoted at length from two of these published cases – *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013) and *Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013). The Court correctly denied Uber's motion after applying these controlling authorities to the specific facts of this case, in a well-reasoned opinion.

Uber bears the burden to justify shutting down discovery, further provisional relief, and trial in this case while it pursues an appeal. Uber has not and cannot do so. The Ninth Circuit applies a four factor test to determine whether the moving party has met its burden to stay a case pending denial of a motion to compel arbitration: (1) whether the party has made a strong showing it is likely to succeed on the merits; (2) whether it will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties in the proceeding; and (4) where the public's interest lies. None of these factors favor a stay.

Uber has not made a strong showing that it is likely to succeed on the merits. Indeed, Uber does not even **argue** that it is likely to succeed on appeal. Recognizing the lack of merit of any appeal, Uber argues instead that a stay is justified because the appeal will present "serious legal questions." But Uber also fails to meet its burden under this alternative framework. The Court's Order was based on established Ninth Circuit precedent that addresses the very same equitable

---

[1] "Uber" as used herein collectively refers to Defendants Uber Technologies, Inc., Ottomotto LLC and Otto Trucking LLC.

estoppel issues raised in Uber's motion to compel arbitration. The laundry list of supposedly novel "legal questions" that Uber points to either are not matters of first impression in this Circuit, do not raise constitutional issues, are immaterial to the success of any appeal (and therefore unlikely to be considered at all), or –usually – all of the above.

Moreover, even if Uber could point to "serious legal questions" in the pending appeal (it cannot), it still could not meet its burden for a stay because the balance of hardships here do not – as **required** for a stay under this approach – "tip sharply" in its favor. Rather, the balance of hardships tips towards Waymo. Uber would not be irreparably harmed absent a stay, as is clear from its repeated delays – in bringing the arbitration demand (over a month after Waymo filed the complaint), in noticing its appeal (a week after the Court issued the Order), and in bringing its appeal brief or request for expedited briefing (still unfiled, over two weeks after the May 11 Order). In contrast, Waymo, who the Court has already found is suffering irreparable harm from Uber's ongoing possession and misuse of its trade secrets, will suffer irreparable harm from a stay of further provisional relief and trial. And the public's interest lies in the prompt administration of justice in public courts, not in the purported right to secret arbitration proceedings by those who "have no agreement with anyone to arbitrate."

Uber's motion should be denied, Waymo should be permitted to take discovery and seek further provisional relief, and this case should proceed to trial on the merits.

## STANDARD OF REVIEW

In the Ninth Circuit, an order denying a motion to compel arbitration does not effectuate an automatic stay of proceedings pending appeal.[2] *Britton v. Co-op Banking Grp.,* 916 F.2d 1405, 1412 (9th Cir. 1990). Instead, the party requesting the stay bears the burden of showing that the case's circumstances justify the stay request. *Nken v. Holder,* 556 U.S. 418, 433–34 (2009). The Ninth Circuit applies a four factor test to determine whether the moving party has met its burden:

---

[2] The Federal Circuit, where the present appeal is pending, applies regional circuit law to substantive and procedural issues that are not unique to and intimately involved in federal patent law. *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 830 F.3d 1335, 1338 (Fed. Cir. 2016) (citing *Flex–Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001).

(1) whether the party has made a strong showing it is likely to succeed on the merits; (2) whether it will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties in the proceeding; and (4) where the public's interest lies. *Leiva–Perez v. Holder,* 640 F.3d 962, 964 (9th Cir. 2011); *see also Nken,* 556 U.S. at 434.

A moving party who cannot satisfy a strong likelihood of success under the first factor must at minimum show that its appeal presents "a substantial case on the merits," *Leiva–Perez,* 640 F.3d at 965, which Courts have alternatively articulated as requiring the "moving party [to] demonstrate that serious legal questions are raised and that the balance of hardships **tips sharply** in its favor." *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983) (emphasis added); *see also Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008); *In re Carrier IQ, Inc. Consumer Privacy Litig.*, No. C-12-MD-2330 EMC, 2014 WL 2922726, at *1 (N.D. Cal. June 13, 2014).

## ARGUMENT

### I. UBER HAS NOT SHOWN THAT ITS APPEAL PRESENTS SUBSTANTIAL QUESTIONS OR SERIOUS LEGAL ISSUES WARRANTING A STAY

Uber does not even try to argue that it actually has **any** likelihood of success on appeal as to the first factor. Uber instead asserts that its appeal raises "serious legal questions." Dkt. 476 at 1, 3-7. But Uber's "request[ed] review of the district court's decision does not automatically mean they have raised a 'serious legal question' on appeal." *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 2293221, at *3 (N.D. Cal. June 8, 2011) (citations omitted). Rather, "[f]or a legal question to be 'serious,' it must be a question going to the merits **so serious, substantial, difficult and doubtful**, as to make the issues ripe for litigation and deserving of more deliberate investigation." *Id.* (emphasis added) (internal quotation omitted). In other words, in order to meet this minimum threshold, Uber's appeal must be "one that raises **genuine matters of first impression** within the Ninth Circuit" or one that "may implicate a constitutional question, or otherwise address a pressing legal issue which urges the Ninth Circuit to hear the case." *Morse v. Servicemaster Glob. Holdings, Inc.*, No. C 08-03894, 2013 WL 123610, at *3 (N.D. Cal. Jan. 8, 2013) (emphasis added) (citing *Britton*, 916 F.2d at 1412 and *Pokorny v. Quixtar, Inc.,* No. 07–00201 SC, 2008 WL 1787111 at *2 (N.D. Cal. Apr. 17, 2008)); *see also Guifu Li*, 2011 WL 2293221, at *3 ("In the Ninth Circuit,

serious legal questions often concern constitutionality."). Uber's appeal does not raise any such questions or issues.

### A. The Court's Denial Of Uber's Motion To Compel Arbitration Applied Well-Established Ninth Circuit Precedent

Uber argues that its motion trail-blazed no fewer than five issues of first impression under California and/or Ninth Circuit law. This is not credible. Indeed, Uber never previously asserted that the issues presented in its motion to compel arbitration were novel or complex, or that its motion presented **any** issues of first impression. To the contrary, Uber repeatedly argued that "numerous cases" and "an entire body of case law" has previously considered these issues. Dkt. 243 at 2, 3, 11. And in denying Uber's Motion, the Court relied on controlling Ninth Circuit authority based on well-developed California precedent concerning the applicability of equitable estoppel principles to motions to compel arbitration. Order at 2-8 (citing *Kramer*, 705 F.3d 1122), at 3-6 and 8 (citing *Murphy*, 724 F.3d 1218), and at 3-9 (citing *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209 (2009)).

Moreover, Uber does not dispute the Court's determination that the standard set out in *Goldman* and *Kramer*, and subsequently reaffirmed in *Murphy* and multiple other Ninth Circuit opinions, controls the Court's analysis. Order at 3 (citing *Murphy*, 724 F.3d at 1229); s*ee* Dkt. 476 at 3-6. Instead, Uber argues that the Court misapplied the Ninth Circuit's test, and notes that it disagrees with the Court's analysis of other California appellate court decisions (cited "unfairly and for the first time" in Uber's reply brief, Order at 6). *See* Dkt. 476 at 3-6. But Uber's disagreements with the Court's analysis do rise to "serious legal issues" that warrant a stay as a matter of law.[3] *Guifu Li*, 2011

---

[3] For reference, in the context of a motion to stay pending appeal of an order denying arbitration, substantial or serious legal questions were found in circumstances where the Supreme Court had granted certiorari to determine "whether this case can proceed as a class action, if at all" *McArdle v. AT & T Mobility LLC,* No. C 09–1117 CW, 2010 WL 2867305, at *3 (N.D. Cal. July 20, 2010); where the appeal asked the Ninth Circuit to resolve "an apparent split between [the] Court's ruling on the motion to compel arbitration and the rulings of a number of other state and federal courts", *Pokorny*, 2008 WL 1787111, at *1; where the appeal asked whether California law properly applies to invalidate the class action waiver contained in the arbitration provisions of the Customer Agreement and there was "a paucity of authority on the issue", *Murphy v. DirecTV, Inc.*, No. 2:07-CV-06465-FMC, 2008 WL 8608808, at *2 (C.D. Cal. July 1, 2008); or where the district court had previously said it was "not aware of an analogous case" in its order denying the motion to compel. *Rajagopalan*

WL 2293221, at *4 ("Defendants argue that this Court misapplied the test that all parties agree is the proper test. Defendants cite no authority in support of their argument that this rises to the level of a 'serious legal question.'"); *Ambrosio v. Cogent Commc'ns, Inc.*, No. 14-CV-02182-RS, 2016 WL 7888024, at *2 (N.D. Cal. Sept. 21, 2016) (finding that the appeal does not present a "substantial case on the merits" where the movant simply rehashed arguments previously rejected by the court and also mischaracterized the prior order); *In re Carrier IQ*, 2014 WL 2922726, at *1 (rejecting defendants' argument that a recent Fifth Circuit opinion presented "serious legal questions" where the court had already determined that "under Ninth Circuit law, the doctrine of equitable estoppel does not apply" and found the Fifth Circuit case to be distinguishable). Here, the Court determined that the weight of Ninth Circuit and California authority cited by both parties in their briefs did not support Uber's assertion of equitable estoppel to compel arbitration of Waymo's claims. That determination was backed by well-reasoned and fully supported analysis, and raises no serious legal questions of first impression in this Circuit.

Nevertheless, Uber contends that "several issues" raised in the Court's analysis of what are now garden variety equitable estoppel principles somehow raise matters of "first impression" that Uber intends to resolve in its appeal. To the contrary, in denying Uber's motion to compel the Court quoted from and relied extensively on two Ninth Circuit cases directly on point, *Kramer* and *Murphy*. *See, e.g.* Order at 4-5 (citing *Kramer*, 705 F.3d at 1131; *Murphy*, 724 F.3d at 1230-31) (analyzing first *Kramer* prong); Order at 5-6 (quoting *Murphy*, 724 F.3d at 1231 and citing *Kramer*, 705 F.3d at 1134) (analyzing second *Kramer* prong). Courts have routinely rejected assertions that an appeal would raise issues of first impression in analogous situations where, like here, the order being appealed was based on controlling Ninth Circuit authority. *See, e.g.*, *Molnar v. NCO Fin. Sys., Inc.*, No. 13-CV-00131-BAS JLB, 2015 WL 1906346, at *3 (S.D. Cal. Apr. 20, 2015) (finding that the matter does not

---

*v. Noteworld, LLC*, No. C11-5574 BHS, 2012 WL 727075, at *6, 2012 WL 2115482, at *2, (W.D. Wash. June 11, 2012). To the extent the same or similar issues raised in the *Rajagopalan* appeal apply here, the Ninth Circuit ultimately rejected the appellants' argument and went even further to find that "[w]e have never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff, and we decline to expand the doctrine here." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013).

require resolution of an issue of first impression where Ninth Circuit precedent had directly addressed the issue being appealed); *Harnish v. Frankly Co.*, No. 5:14-CV-02321-EJD, 2015 WL 1064442, at *4 (N.D. Cal. Mar. 11, 2015) (finding no issue of first impression where "[t]he Ninth Circuit and district courts in this jurisdiction have already considered" the issue being appealed); *Wallis v. Centennial Ins. Co.*, No. CIV. 08-02558 WBS, 2012 WL 1552766, at *3 (E.D. Cal. May 1, 2012) ("This is not a case, however, in which there is an absence of controlling Ninth Circuit case law."); *Bradberry v. T-Mobile USA, Inc.*, No. C 06 6567 CW, 2007 WL 2221076, at *2 (N.D. Cal. Aug. 2, 2007) ("Defendant's motion does not present a matter of first impression. This Court relied on Ninth Circuit cases which directly addressed the unconscionability of a class action waiver.").[4]

### B. Uber Identifies No Matters of "First Impression"

Uber's attempt to recast the Court's Order as somehow raising a bevy of new issues of first impression does not pass the straight face test especially given its prior representations, repeated above, that its motion to compel was based on established legal principals, not issues of first impression.[5] Dkt. 476 at 3-6. Looking at these supposed "new" issues only further confirms there are no issues of "first impression" here.

For example, Uber first contends that "[t]his Court's reasoning with respect to the first *Kramer* prong focused on whether Waymo relied on the 2009 and 2012 employment agreements between Google and Levandowski." Dkt. 476 at 3. Uber contends this is an issue of "first impression" because "a serious claim can be made that just because a party does not formally rely on the underlying contract, its claims of 'concerted misconduct' may still be intimately founded in and

---

[4] *See also Mahan v. Howell*, 410 U.S. 315, 334, *modified*, 411 U.S. 922 (1973) (finding that where the problem presented is "squarely controlled" by prior decisions, it is "in no sense one of first impression"); *Jade Trading, LLC v. United States*, 65 Fed. Cl. 443, 448 (2005) (rejecting assertion that substantial grounds for difference of opinion existed when three Circuits had already squarely addressed the issue and uniformly answered the question); *Ribbens Int'l, S.A. de C.V. v. Transp. Int'l Pool, Inc.*, 40 F. Supp. 2d 1141, 1144 (C.D. Cal. 1999) ("The issue is not, however, one of first impression, and in fact numerous courts have addressed the precise question presented by the instant motion.")

[5] Uber's issues can be succinctly boiled down to two themes: (1) the proper formulations of, and proof required for, the different "reliance" or "intertwined" factors in the two prongs of the *Goldman*/*Kramer* test (issues 1-2 and 4-5) and (2) "whether Waymo can rely on the Levandowski Agreements in its complaint and then subsequently disclaim reliance to avoid arbitration" (issue 3).

intertwined with' the obligations of [a] signatory's underlying agreement." *Id.* at 4. But the Court was applying "the first *Goldman* prong" when it rejected Uber's argument, i.e., that Waymo's claims were founded in and intertwined with the Levandowski Agreements because the Agreements "are central to Waymo's ability to prove liability under its trade secret claims." Order at 5 (quoting Dkt. 243 at 8). And while Uber repeats the argument it asserted for the first time in its reply brief – that the first *Kramer* test is actually two separate prongs (*see* Dkt. 243 at 4, Dkt. 476 at 3) – this argument, which was correctly rejected by the Court, and does not independently raise a substantial question for appeal. Indeed, in *Goldman* the California Court of Appeals reviewed and synthesized California's equitable estoppel jurisprudence, including cases cited by Uber in its briefs, into the current test that has been independently analyzed and adopted by the Ninth Circuit in *Kramer* and then applied in subsequent equitable estoppel cases, including by this Court. Order at 3 ("[T]he *Goldman*/*Kramer* standard remains the controlling law on this issue in our circuit.") (citing *Murphy*, 724 F.3d at 1229). Uber cites no case that supports its reformulation of the *Goldman*/*Kramer* standard that has been consistently applied to hold that regardless of whether the Court analyzes the test under principles of reliance or intertwining, equitable estoppel only applies if the plaintiff cannot otherwise assert a **claim** against the nonsignatory defendant independent of the arbitration agreement. *Kramer*, 705 F.3d at 1131; *Goldman*, 173 Cal. App. 4th at 222; *Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851, 866 (N.D. Cal. 2015); *see also Rajagopalan*, 718 F.3d at 847-48. Under that test, equitable estoppel cannot apply here – as the Court properly found. Order at 5.

Uber further contends that "[s]erious minds can disagree" as to its next supposed issue of first impression—whether "holding that a party does not rely on the underlying contract is sufficient to establish that *Kramer* prong **two** is not met." Dkt. 476 at 4 (emphasis added). But the Court applied Ninth Circuit law to the facts of this case and determined that the second prong of *Goldman*/*Kramer* was not met. Contrary to Uber's argument that the Court misapplied the second *Goldman*/*Kramer* test, the Court expressly found that "[w]ith respect to the second *Goldman* prong, Waymo's allegations of interdependent conduct by Levandowski and defendants **are not founded in or intimately connected with** the obligations of the 2009 and 2012 agreements." Order at 4 (emphasis added). In support of this conclusion, the Court again relied on established Ninth Circuit precedent

and determined that, regardless of whether Waymo has alleged substantially interdependent and concerted misconduct, "[i]t is the relationship of the claims [to the contract], not merely the collusive behavior of the signatory and nonsignatory parties, that is key." Order at 5-6 (quoting *Murphy*, 724 F.3d at 1231). Thus, the Court correctly found that "Waymo's claims against defendants are not 'dependent on or inextricably bound up with the contractual obligations of the agreement[s] containing the arbitration clause.'" *Id.* (quoting *Murphy*, 724 F.3d at 1232). Thus, Uber is incorrect that the Court's Order can lead "serious minds" to disagree on the proper application of the second *Goldman*/*Kramer* test.

Uber's third issue, which it claims to be "unprecedented," asks "whether Waymo can rely on the Levandowski Agreements in its complaint and then subsequently disclaim reliance to avoid arbitration." Dkt. 476 at 4-5. But this is just a recasting of Uber's incorrect, and properly rejected, narrative that Waymo's claims against Uber cannot exist absent proof that the Levandowski Agreements were breached. *See* Dkt. 115 at 8-9; Dkt. 243 at 7-9. While Uber argued at length that Waymo must rely on the terms of the Levandowski Agreements because the allegations in the First Amended Complaint referenced confidentiality agreements, either directly or (in most cases) indirectly,[6] the Court properly found that "Waymo need not *rely* on the terms of its written agreements merely because it makes *reference* to such agreements." Order at 4 (emphasis in original) (citing *Goldman*, 173 Cal. App. 4th at 218); *see also Murphy*, 724 F.3d at 1230-31 (that a plaintiff's claims may "on some abstract level require the existence of" an arbitration agreement is not enoughto apply equitable estoppel under the first *Goldman* prong). The Court also found that "Waymo has alleged and provided a sworn record" with "abundant allegations" and "ample evidence" to support its claims, independent of the existence or terms of the Levandowski Agreements. Order at 4-5. It is therefore irrelevant for purposes of this motion that, in response to a question posed by the Court during the hearing on the motion to compel arbitration, Waymo further forswore reliance on the Levandowski Agreements.

---

[6] As Waymo showed in its sur-reply, not a single one of the excerpts from the First Amended Complaint that Uber quoted in its reply brief even mentioned the Levandowski Agreements, let alone relied on them. Dkt. 260 at 4.

1    Uber finally asserts that "no Ninth Circuit or California Court of Appeal decision has clearly
2    articulated a standard for what would be sufficiently intertwined or intimate with a contract or its
3    underlying obligations," and "neither the Ninth Circuit nor the California Court of Appeals have
4    definitely resolved the difference between the 'intimately intertwined with the underlying contract'
5    standard of the first prong and the 'intimately connected with the obligations of the underlying
6    contract' standard of the second prong." Dkt. 476 at 5-6. However, in its briefing related to the
7    motion to compel arbitration, Uber took the exact opposite position it takes now with respect to the
8    standards in *Kramer*. Indeed, while Uber now argues for a stay because there is "a difference between
9    the standards" and prior decisions have left courts with "little clarity on the standards" (*id.*), Uber has
10   previously told the Court it could disregard any differences between the language in the
11   *Goldman*/*Kramer* standard. Dkt. 243 at 4 ("*Kramer* does not hold that these three sets of
12   circumstances are mutually exclusive—**they obviously are not, and frequently overlap, as they do**
13   **here**.") (emphasis added). Having lost its first attempt to stay the case, Uber now reformulates these
14   arguments in an attempt to create purportedly novel disputes for appeal that could warrant a stay.
15   Uber's improper efforts to manufacture issues should be rejected.

16   With respect to the substance of Uber's fourth and fifth issues, neither raises substantial or
17   serious questions for the Ninth Circuit. The Ninth Circuit has already held that "**causes of action**
18   against the nonsignatory are intimately founded in and intertwined with the underlying contract
19   obligations" when the plaintiff would not "have a **claim** independent of the [arbitration agreement.]"
20   *Kramer*, 705 F.3d at 1131 (9th Cir. 2013) (internal quotation marks and citations omitted) (emphases
21   in original). The Court properly used that very standard in denying Uber's Motion. Dkt. 425 at 5 ("If
22   Waymo can assert its misappropriation claims independent of the existence of the 2009 and 2012
23   agreements, then it does not *rely* on those agreements for purposes of equitable estoppel under
24   *Goldman*. *See Kramer*, 705 F.3d at 1131."). Uber's argument that the difference between the
25   "intimately intertwined with the underlying contract" standard and the "intimately connected with the
26   obligations of the underlying contract" standard "could be critical to resolving the appeal because
27   there is no dispute that there are allegations of interdependent misconduct in this case" is incorrect.
28   Waymo **does** dispute that it has alleged interdependent misconduct under the second

*Goldman*/*Kramer* prong, because it has not brought any trade secret claims against Mr. Levandowski. Dkt. 204 at 10-14. Further, the Ninth Circuit and the California Court of Appeals have held that both prongs require, at minimum, that the "claims against the nonsignatory are founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause" (*Kramer*, 705 F.3d at 1133 (quoting *Goldman*, 173 Cal. App. 4th at 213)) – a threshold that the Court correctly found Uber did not meet. Dkt. 425 at 6. Since any further clarification of this issue would not affect the outcome of Uber's appeal, this is not a substantial question.

Finally, regardless of Uber's arguments concerning the slight differences in the framing of the two prongs of the *Goldman*/*Kramer* standard, the Court found that in addition to failing both prongs of *Kramer* substantively, Uber failed to demonstrate that the undisputed fundamental policy underlying equitable estoppel was met in this case. Order at 4 ("Here, defendants have not shown that either *Goldman* prong is met, or that Waymo's actions implicate the policy rationale for applying equitable estoppel."), *id.* at 6 ("At bottom, defendants have not shown that Waymo relies on the [Levandowski Agreements] to assert its claims against defendants while simultaneously seeking to avoid the arbitration clauses of those agreements. The inequities that equitable estoppel is designed to address are simply not present."), *id.* at 7 ("Waymo is not trying to have it both ways."). For that additional reason Uber has failed to show that any equitable estoppel issues rise to the level of a substantial question of first impression for appeal.

### C. Fact-Dependent Determinations Do Not Present Substantial Questions Or Serious Issues For Appeal; Uber's Reliance On *Jones* Is Misplaced

As a supposed further ground under the first factor of the stay analysis, Uber argues it raises substantial issues for appeal because "the Court's holding is a fact-dependent determination." Dkt. 476 at 6. But whether a decision is fact-dependent is irrelevant for the stay analysis, and actually cuts against any argument that Uber is likely to succeed on appeal. The Ninth Circuit's test for whether to grant a stay asks whether the appeal presents a "serious **legal** question" that would be analyzed by the Federal Circuit *de novo*, as opposed to factual findings that are reviewed only for clear error. *Guifu Li*, 2011 WL 2293221, at *3, n.2 (emphasis added) (citing *Ting v. AT & T,* 319 F.3d 1126, 1135 (9th Cir. 2003).

*Jones v. Deutsche Bank AG*, No. C 04-05357, 2007 WL 1456041 (N.D. Cal. May 17, 2007), cited by Uber, does not hold otherwise. Indeed, *Jones* did not actually grant a stay on the basis suggested by Uber, i.e. that "the degree of interrelatedness necessary to allow a non-signatory to compel arbitration based on equitable estoppel is extremely fact dependent." Dkt. 476 at 6. Instead, substantial questions were found because courts were split on the applicability of equitable estoppel – with some taking "an expansive view of equitable estoppel in the arbitration context" and others finding "that equitable estoppel is inapplicable on similar facts" – and "[t]he Ninth Circuit ha[d] not yet ruled on this issue." *Jones*, 2007 WL 1456041, at *2. But those findings, from 2007, were **before** *Goldman* synthesized the law in California on equitable estoppel, and **before** the Ninth Circuit adopted the *Goldman* standard in *Kramer*. Therefore any "substantial questions concerning the law of arbitrability and the doctrine of equitable estoppel in the Ninth Circuit" discussed in *Jones* have since been resolved. *Id.*

## II. THE BALANCE OF HARDSHIPS FAVORS PROCEEDING TO A RESOLUTION OF WAYMO'S CLAIMS ON THE MERITS IN THIS FORUM

Uber relies on the wrong standard in asserting that the balance of harms supports a stay. Uber asserts that all it must show is a "*probability* of irreparable injury if a stay is not granted." Dkt. 476 at 2, 7 (emphasis in original). But, as noted above, where, as here, a party does not assert a likelihood of success on appeal, and instead only asserts that the appeal presents substantial questions or serious issues, more than a "probability" is needed to justify a stay. *Leiva–Perez,* 640 F.3d at 966, 970. Uber must demonstrate that the balance of hardships under the second and third stay factors "**tips sharply**" in its favor. *Id.*; *see also In re Carrier IQ,* 2014 WL 2922726, at *1; *Mohamed*, 115 F. Supp. 3d at 1032. Here, it is **Waymo** who will suffer the balance of irreparable harm if this case is stayed pending an appeal of issues that, as shown above, present no substantial questions or serious issues.

### A. A Stay Will Prejudice and Cause Substantial Injury To Waymo

Uber's proposed stay pending appeal would cause substantial injury to Waymo. The Court has found that "as far as the record shows, Levandowski remains in possession of over 14,000 confidential files from Waymo, at least some of which likely contain Waymo's trade secrets." Dkt. 433 at 20. And "troves of likely probative evidence have been concealed from Waymo" already in this case

1  "under relentless assertions of privilege that shroud dealings between Levandowski and defendants in
2  secrecy." *Id.* at 18-19.  The Court has also found that "[i]t would likely be futile to attempt, after the
3  fact, to estimate the monetary value of injury suffered from either the loss of Waymo's competitive
4  position in this nascent industry or the destruction of its trade secrets pertaining to the same." *Id.* at
5  19.  These findings, none of which are addressed in Uber's Motion, directly rebut Uber's argument
6  that any harm to Waymo can be mitigated by monetary damages.  *See* Dkt. 476 at 9.  And based on
7  these findings, the district court granted additional expedited discovery, and provided that Waymo is
8  entitled to seek further provisional relief as discovery progresses "right up to the day of trial."  Dkt.
9  433 at 10.  A stay as requested by Uber of all proceedings not specifically outlined by the Court in its
10 Preliminary Injunction Order (Dkt. 433) and clarified by Magistrate Judge Corley's Order (Dkt. 441)
11 would also open the door to an argument that Waymo may not seek provisional relief until after the
12 appeal is resolved and the stay is lifted.  A stay would further prejudice Waymo by delaying the date
13 when it could obtain **permanent** injunctive relief.

14       Further, Waymo would also be barred from seeking critical (non-expedited) third-party
15 discovery from persons who are currently under no obligation to retain documents, as well as general
16 discovery into Uber's trade secret theft, unfair competition, and patent infringement.  As the Court has
17 found, the evidence received to date "indicates that, during the acquisition, Uber likely knew or at
18 least should have known that Levandowski had taken and retained possession of Waymo's
19 confidential files."  Dkt. 433 at 1-2; *see also id.* at 7.  The Court has further found that "those files
20 have not been returned and likely remain in Levandowski's possession" and that Uber's denials that
21 the **files** were ever received by Uber "leave open the danger of all manner of mischief."  *Id.* at 7-8.
22 While Uber does not oppose proceeding with the expedited discovery ordered by the Court, staying
23 further discovery beyond what has been expressly granted by the Court presents the "risk of lost
24 evidence [that] weighs against granting a stay" causing further prejudice to Waymo.[7]  *Bradberry*,

---

[7] Based on recent reports, it appears that this risk of lost evidence could be further exacerbated at Uber given that a recent whistleblower lawsuit has accused Uber of routinely deleting information that was "subject to litigation hold."  *See*, *e.g.*, "Uber is now being accused of violating the privacy of their exes, politicians, and Beyoncé," dated December 12, 2016, available at

2007 WL 2221076, at *4. That is true for both party and non-party witnesses and evidence. And even for the expedited discovery the Court has ordered, Waymo has already been forced to raise multiple issues with the Special Master, and elevate certain of those issues to Magistrate Judge Corley, to obtain discovery from Uber. *See, e.g.*, Dkt. 498, 501, 506, 509.

The disruption of the schedule is all the more egregious given Uber's, and its executive Mr. Levandowski's, attempts to delay the progress of this case or to seek prompt relief. Waymo filed the Complaint in this case on February 23, but Uber waited over a month to move to compel arbitration (on March 27), and to file its arbitration demand (on March 31).[8] Dkt. 204 at 5; *see also* Dkt. 119 at 3. As the court has noted, "[D]efendants have known about this controversy for months and could have brought their motion to compel arbitration earlier. Instead, defendants waited until after the other side had made its motion for provisional relief." Dkt. 130. Even after the Court denied Uber's motion to compel arbitration on May 11, Uber waited a full week to file its Notice of Appeal (on May 18, *see* Dkt. 464), and then another five days to approach Waymo regarding potentially expediting the briefing schedule with a facially unreasonable proposal. (Declaration of David A. Perlson, Ex. A.).[9] As of this filing, Uber has still not filed its appeal brief or emergency motion for an expedited schedule. Moreover, Mr. Levandowski has separately sought to undermine and delay implementation of the Court's Preliminary Injunction Order by repeatedly, and baselessly, asserting his Fifth Amendment privilege in serial fashion and where it has no application here. *See* Dkt. 466. Put simply, Uber's purported "desire to resolve these proceedings quickly" is not credible.

---

http://mashable.com/2016/12/12/uber-privacy-customer-data-beyonce/#mY6CVwf5QaqN; Declaration of Samuel Ward Spagenberg, dated October 5, 2016, available at https://www.documentcloud.org/documents/3227535-Spangenberg-Declaration.html at ¶ 8 ("During my employment with Uber, I always took extreme caution to retain data which was the subject of any litigation holds. I never deleted any emails or crashplan logs, or any other information which belonged to Uber. In contrast, **Uber routinely deleted files which were subject to litigation holds**, which was another practice I objected to when reporting my concerns to Flynn and Wegley.") (emphasis added).

[8] In light of the Court's Order, JAMS has stated that the arbitration Uber filed against Waymo is not proceeding at this time. (Declaration of David A. Perlson, Ex. B.)

[9] As it did with its request to shorten the briefing schedule for its motion to compel arbitration, Uber proposed an unreasonable schedule that would cut Waymo's time to respond to Uber's opening brief to a fraction of the time Uber will have since the Order issued. Perlson Dec. ¶ 2.

**B.      Uber Has Not Shown That It Will Be Irreparably Harmed If The Case Proceeds**

Uber's "burden with regard to irreparable harm is higher than it is on the likelihood of success prong, as [Uber] must show that an irreparable injury is the more probable or likely outcome." *Leiva-Perez*, 640 F.3d at 968.  If this burden is not met, "then a stay may not issue, **regardless of the petitioner's proof regarding the other stay factors.**" *Id.* at 965 (emphasis added).  Further, in cases like this where Uber has asserted only that the appeal raises "substantial questions," as opposed to asserting a "likelihood of success on the merits," Uber must make an even **stronger** showing regarding its probability of irreparable harm, as compared to the harm Waymo will suffer if the case is stayed.  *Id.* at 966, 970.  Uber has made no such showing.

Uber relies extensively on *Alascom v. ITT N. Elec. Co.*, 727 F.2d 1419 (9th Cir. 1989), and cases applying a similar analysis, to assert that if a stay is not granted, irreparable harm to Uber should be presumed.  Dkt. 476 at 7-8 (citing *Winig v. Cingular Wireless LLC*, No. C06-4297 MMC, 2006 WL 3201047, at *2 (N.D. Cal. Nov. 6, 2006) (Chesney, J.); *Stern v. Cingular Wireless Corp.*, No. CV 05 8842 CAS, 2006 WL 2790243, at *2 (C.D. Cal. Sept. 11, 2006); *Ford v. Verisign, Inc.*, No. 05 CV 0819 JM (RBB), 2006 U.S. Dist. LEXIS 88856, at *7 (S.D. Cal. Mar. 8, 2006)).  However the analysis in *Alascom* is inapplicable to present situation because it only considers whether an order staying arbitration may be appealed, and does **not** consider a court's denial or grant of a stay of proceedings pending appeal.  *Alascom*, 727 F.2d at 1422.  And "to the extent that *Alascom* is understood to hold that proceeding through litigation necessarily causes irreparable harm, that holding was modified by *Britton,* 916 F.2d at 1412, which gave district courts clear discretionary authority to evaluate each motion based on individual circumstances."  *Morse*, 2013 WL 123610, at *4.  Moreover, the holding in *Alascom* "depends upon the existence of a valid arbitration agreement" between the parties.  *Guifu Li*, 2011 WL 2293221, at *5.  In contrast, here Uber has "no agreement with anyone to arbitrate the case."  Dkt. 425 at 1.  *See also Bradberry*, 2007 WL 2221076, at *3 (dismissing analysis from *Alascom* as "unpersuasive").

Uber's reliance on *Gray v. Golden Gate Nat. Recreational Area*, No. C 08-00722 EDL, 2011 WL 6934433 (N.D. Cal. Dec. 29, 2011) is also misplaced.  *Gray* concerned an appeal of an order

granting a motion for class certification. *Id.* at *1. After finding that the defendants had presented "serious questions of law," which do not exist here as discussed above, the court considered whether the expense of litigating on a class-wide basis, as opposed to litigating claims of individual class members, would cause irreparable harm. *Id.* at *2-3. Under these **specific** circumstances, the court determined that the additional expense of litigation would moot the appeal and render any reversal of the order certifying the class "meaningless." *Id.* at *3. However, for litigation that is on a party, rather than class-wide, basis – such as Waymo's litigation against Uber – "the money and time a party must expend in [the litigation] process, while burdensome, does not alone constitute irreparable injury." *Morse*, 2013 WL 123610, at *3 (citations omitted).

Uber's argument that the potential harm is greater here because trial is imminent is also without merit.[10] It presupposes, incorrectly, that Uber has demonstrated the appeal raises serious issues or substantial questions. Given its failure to carry its burden on the first prong, the scenario Uber envisions concerning irreparable harm "**is no more than a possibility**." *Morse,* 2013 WL 123610, at *4 (emphasis added). And Uber cannot prevail unless it "makes a threshold showing that irreparable harm is **probable** absent a stay." *Id.* (emphasis in original) (citing *Nken,* 556 U.S. at 434); *Ambrosio*, 2016 WL 7888024, at *3 (finding that the "limited likelihood that Cogent will succeed on appeal" factored against finding irreparable harm). Even if Uber's appeal were to somehow succeed, "[t]he Ninth Circuit has explained that if a denial of a motion to compel arbitration is reversed, then any ruling by the district court would be vacated and arbitration will proceed." *Bradberry*, 2007 WL 2221076, at *4, n.5 (citing *Britton,* 916 F.2d at 1410).

Uber has not shown that irreparable harm is probable or likely, much less that the balance of harms would tip sharply in its favor. Moreover, even if the Court determines that Uber would suffer harm if a stay were denied, the propriety of a stay depends on the circumstances of each case, and here all other factors favor denying Uber's Motion. A stay is not warranted. *Nken*, 556 U.S. at 433 (finding no absolute right to a stay "even if irreparable injury might otherwise result").

---

[10] Uber's arguments regarding the costs of litigation in this case are also inapposite. The cost of litigation, in particular discovery costs, are inevitable even if Uber's appeal is successful and the claims proceed in arbitration. *Guifu Li,* 2011 WL 2293221, at *4.

### III. UBER FAILS TO SHOW A STAY WOULD BE IN THE PUBLIC INTEREST

As the Court found in the Preliminary Injunction Order, it is undisputed that "the public has an interest in vindicating intellectual property rights, and in prohibiting unfair competition." Dkt. 433 at 20. It is that recognized and undisputed public interest that must prevail here. Moreover, as shown above, Uber does not even argue that it has a strong likelihood of success on appeal, so the public interest in the conservation of judicial resources is inapplicable. *Bradberry*, 2007 WL 2221076, at *5. This factor therefore does not favor a stay pending appeal.

Uber's reliance on the Federal Arbitration Act and the public interest in promoting arbitration is misplaced. "[W]here the question is whether a particular party is bound by the arbitration agreement, the liberal federal policy favoring arbitration agreements, which is best understood as concerning the scope of arbitrable issues, is inapposite." Order at 3 (quoting *Goldman* 173 Cal. App. 4th at 220). Indeed, the FAA reflects a federal policy favoring arbitration only insofar as it confers the right to obtain an order directing that arbitration proceed in the manner provided for in an agreement. The liberal policy is inapplicable, however, to one who is not a party to a contract and has no standing to compel arbitration. *Britton*, 916 F.2d at 1413.

### CONCLUSION

For the foregoing reasons, Waymo respectfully requests that the Court deny Uber's motion.

DATED: May 26, 2017                QUINN EMANUEL URQUHART & SULLIVAN, LLP


By   */s/ Charles K. Verhoeven*
     Charles K. Verhoeven
     Attorneys for Plaintiff Waymo LLC