QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa J. Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>     v.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>            Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**OPPOSITION TO ANTHONY LEVANDOWSKI'S MOTION FOR INTERVENTION UNDER RULE 24 AND MODIFICATION OF ORDER GRANTING IN PART AND DENYING IN PART PROVISIONAL RELIEF** |

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT .........................................................................................................................5

I.   MR. LEVANDOWSKI FAILS TO MEET HIS BURDEN TO INTERVENE ...................5

     A.   There Is No Basis To Intervene as of Right. ...........................................................5

          1.   The Application Is Not Timely. ......................................................................6

          2.   Mr. Levandowski Cannot Justify Intervention With A "Significantly
               Protectable Interest." ...................................................................................7

          3.   Denial of Intervention Will Not Impair Mr. Levandowski's Ability
               to Protect His Interests. .................................................................................9

          4.   Defendants Can Adequately Represent Mr. Levandowski's Interests
               in Protecting his Alleged Privileges. ...........................................................10

          5.   Equitable Considerations Weigh Against Intervention. ...............................12

     B.   Levandowski's Motion for Permissive Intervention Should Be Denied .................12

II.  MR. LEVANDOWSKI'S MOTION TO MODIFY THE COURT'S ORDER
     SHOULD BE DENIED ....................................................................................................13

     A.   The Court's Order Does Not Implicate Mr. Levandowski's Fifth
          Amendment Privilege ..............................................................................................14

          1.   Any Adverse Employment Action By Uber Under The Court's
               Order Would Not Amount To "State Action" ...............................................15

          2.   The Threat Of Adverse Employment Action Does Not Effectively
               Compel Mr. Levandowski to Speak .............................................................19

          3.   To The Extent The Order Merely Requires The Production Of
               Documents, The Fifth Amendment Does Not Apply At All ..........................20

     B.   The Court's Order Does Not Implicate Mr. Levandowski's Other Privileges .........21

III. RESPONSES TO COURT ORDERED QUESTIONS .......................................................23

          1.   When an employee steals and retains a competitor's trade secrets,
               may the employer, upon learning of the theft, direct the employee to
               make it right with the competitor and to return all copies of the trade
               secrets to the competitor on pain of adverse employment action, up
               to and including termination?  Yes, this happens all the time.  Does
               the Fifth Amendment prevent such private action?  No ...............................23

1

2.    In such circumstances, may a court order the employer to exercise the full scope of its private authority over the employee to cause the employee to return all copies of the stolen trade secrets? Yes.  Does the Fifth Amendment bar such an order?  No. ...............................................23

2

3

3.    Where an employer learns that its employee has stolen trade secrets from a competitor and fails to, on its own initiative, use the full scope of its private authority over the employee to return all copies of the trade secrets to their rightful owner, may the Court instruct the jury that it may consider such failure as a ratification by the employer of the theft?  Yes. ......................................................................24

4

5

6

CONCLUSION ...................................................................................................................25

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO ANTHONY LEVANDOWSKI'S MOTION FOR INTERVENTION AND MODIFICATION OF ORDER

# **TABLE OF AUTHORITIES**

**Page**

### CASES

*Ajaxo Inc. v. E*Trade Grp., Inc.*,
    135 Cal.App.4th 21 (2005).................................................................................. 24

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015)........................................................................... 6, 12

*Aptix Corp. v. Quickturn Design Sys., Inc.*,
    2000 WL 852813 (N.D. Cal. Jun. 14, 2000), *vacated in part on other grounds* ............... 25

*Arakaki v. Cayetano*,
    324 F.3d 1078 (9th Cir. 2003)............................................................................... 10

*Armacell LLC v. Bostic*,
    205 N.C. App. 467 (2010) .................................................................................... 25

*ATS Prods Inc. v. Ghiorso*,
    Case No. 3:10-cv-04880-BZ, Dkt. 271 (N.D. Cal. Jan. 27, 2012) ....................................... 15

*Baxter v. Palmigiano*,
    425 U.S. 308 (1976) ..................................................................................... 17, 19

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) ......................................................................................... 15

*Braswell v. United States*,
    487 U.S. 99 (1988) ............................................................................................ 7

*Brinks, Inc. v. City of New York*,
    717 F.2d 700 (2d Cir. 1983) ........................................................................... 18, 25

*Contemporary Servs. Corp. v. Landmark Event Staffing Servs., Inc.*,
    --- Fed. Appx. ---, 2017 WL 393718 (9th Cir. Jan. 30, 2017)........................................... 24

*Convertino v. United States DOJ*,
    674 F. Supp. 2d 97 (D.D.C. 2009) ........................................................................ 13

*Data General Corp. v. Gruman Systems Support Corp.*,
    825 F. Supp. 340 (D. Mass. 1993) ........................................................................ 25

*Dep't of Fair Employment & Housing v. Lucent Techs. Inc.*,
    642 F.3d 728 (9th Cir. 2011)................................................................................ 13

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1988)................................................................................ 13

*Executive Risk Specialty Ins. Co. v. Rutter Hobbs and Davidoff, Inc.*,
    564 Fed. Appx. 887 (9th Cir. 2014) ....................................................................... 12

*Garrity v. New Jersey,*
    385 U.S. 493 (1967) ................................................................................ 14, 19

*Gilman v. Marsh & McLennan Cos., Inc.,*
    826 F.3d 69 (2d Cir. 2016) ............................................................................ passim

*Harris v. Lang Pharma Nutrition, Inc.,*
    No. MC 14-1154, 2015 WL 12832093 (C.D. Cal. May 22, 2015) ................................... 22

*In re Grand Jury Subpoena,*
    274 F.3d 563 (1st Cir. 2001) ............................................................................ 10

*In re Grand Jury Matter,*
    735 F.2d 1330 (11th Cir. 1984) ........................................................................ 10

*In re Katz,*
    623 F.2d 122 (2d Cir. 1980) ............................................................................ 8

*In re Tableware Antitrust Litig.,*
    2007 WL 781960 (N.D. Cal. Mar. 13, 2007) ........................................................ 25

*In re Weingarten,*
    492 Fed. Appx. 765 (9th Cir. 2012) ................................................................... 11

*Johnson v. Hewlett-Packard Co.,*
    Case No. C09-3596 CRB (BZ), 2010 WL 4510345 (N.D. Cal. Nov. 1, 2010) ................ 22

*Lefkowitz v. Cunningham,*
    431 U.S. 801 (1977) ..................................................................................... 14

*Lynn v. Gateway Unified Sch. Dist.,*
    Case No. 2:10-cv-00981, 2011 WL 6260362 (E.D. Cal. Dec. 15, 2011) ......................... 20

*Minnesota v. Murphy,*
    465 U.S. 420 (1984) ..................................................................................... 14

*Moore v. Gilead Sciences, Inc.,*
    2011 WL 5572975 (N.D. Cal. Nov. 16, 2011) ...................................................... 21

*Nidec Corp. v. Victor Co. of Japan,*
    249 F.R.D. 575 (N.D. Cal. 2007) ..................................................................... 22

*Northwest Forest Resource Council v. Glickman,*
    82 F.3d 825 (9th Cir. 1996) ............................................................................ 7

*People v. Lee,*
    3 Cal. App. 3d 514 (1970) .............................................................................. 21

*Perry v. Proposition 8 Official Proponents,*
    587 F.3d 947 (9th Cir. 2009) ....................................................................... 6, 13

*PMC, Inc. v. Kadisha,*
    78 Cal. App. 4th 1368 (2000) ......................................................................... 25

OPPOSITION TO ANTHONY LEVANDOWSKI'S MOTION FOR INTERVENTION AND MODIFICATION OF ORDER

*Pyro Spectaculars North, Inc. v. Souza,*
    861 F. Supp. 2d 1079 (E.D. Cal. 2012) ................................................................. 16

*RAD Serv., Inc. v. Aetna Cas. & Sur. Co.,*
    808 F.2d 271 (3d Cir. 1986) ...................................................................... 18, 25

*Sackman v. Liggett Grp.,*
    167 F.R.D. 6 (E.D.N.Y. 1996) ............................................................................ 10

*Saini v. Int'l Game Tech.,*
    434 F. Supp. 2d 913 (D. Nev. 2006) ................................................................... 16

*SEC v. Graystone Nash, Inc.,*
    25 F.3d 187 (3d Cir. 1994) ................................................................................. 17

*Southern California Edison Co. v. Lynch,*
    307 F.3d 794 (9th Cir. 2002) .............................................................................. 12

*Sutton v. Providence St. Joseph Med. Ctr.,*
    192 F.3d 826 (9th Cir. 1999) .............................................................................. 15

*Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation,*
    392 U.S. 280 (1968) ........................................................................................... 14

*United States ex rel. Sanney v. Montanye,*
    500 F.2d 411 (2d Cir. 1974) .......................................................................... 19, 20

*United States v. Alisal Walter Corp.,*
    370 F.3d 915 (9th Cir. 2004) ........................................................................... 6, 12

*United States v. Am. Telephone & Telegraph Co.,*
    642 F.2d 1285 (D.C. Cir. 1980) ......................................................................... 10

*United States v. California,*
    538 Fed. Appx. 759 (9th Cir. 2013) ..................................................................... 6

*United States v. Edison,*
    No. CR 07-0074, 2008 WL 170660 (N.D. Cal. Jan. 17, 2008) ............................ 22

*United States v. Goodpaster,*
    65 F. Supp. 3d 1016 (D. Or. 2014) ................................................................ 14, 23

*United States v. Hubbell,*
    530 U.S. 27 (2000) ............................................................................................. 21

*United States v. Solomon,*
    509 F.2d 863 (2d Cir. 1975) ...................................................................... 8, 16, 17

*United States v. Stein,*
    541 F.3d 130 (2d Cir. 2008) ............................................................................... 17

## STATUTES

18 USC § 1836 .......................................................................................... 15, 23

Cal. Civ. Code § 2310 ........................................................................................................ 24

Cal. Civ. Code § 3426.2 ............................................................................................... 15, 24

Fed. R. Civ. P. 24 ............................................................................................................... 5

<u>OTHER AUTHORITIES</u>

Restatement (Third) of the Law Governing Lawyers § 82 ............................................... 22

Plaintiff Waymo LLC ("Waymo") hereby opposes Non-Party Anthony Levandowski's Motion for Intervention and Modification of the Court's May 11, 2017 Order Granting Provisional Relief (Dkt. 466) (the "Motion").

**INTRODUCTION**

Mr. Levandowski stole 14,000 highly sensitive files immediately prior to departing Waymo so that he could use this information to compete with Waymo's technology on behalf of his new employer Uber in the nascent self-driving vehicle market.  Recognizing that Waymo had established a strong evidentiary record on this score, Judge Alsup granted in part Waymo's Motion for Preliminary Injunction (Dkt. 433) and ordered Uber to take a number of remedial steps to ameliorate the potential for competitive harm to Waymo.  Mr. Levandowski now seeks to undermine and delay implementation of that Order by asking to intervene for the purposes of raising a meritless constitutional challenge.

If Mr. Levandowski believed that Waymo's Motion for Preliminary Injunction was likely to implicate his constitutional rights, he should have intervened for this purpose long ago, as he has on various other limited issues throughout this case.  His failure to do so not only confirms that the present Motion is purely a delay tactic, it also renders his request "untimely," which is grounds enough to deny the proposed intervention.  Mr. Levandowski also fails to articulate a protectable interest that would warrant intervention.  Nothing in the Preliminary Injunction Order compels *Mr. Levandowski* to do anything.  Rather, the Order merely requires Uber, a private employer, to exercise its corporate authority to ensure that Mr. Levandowski return the files he stole from Waymo so that they cannot be unfairly exploited by Uber.  Mr. Levandowski also fails to explain how his intervention will place him in a better position to protect his purported interests, particularly given his prior refusals to offer evidence in support of the asserted privileges.  Finally, Mr. Levandowski fails to explain why his alleged interests are not already adequately represented by the existing parties to the case, including Defendants, who have every incentive to chip away at the Preliminary Injunction Order.  Under these circumstances, the request for intervention, whether permissive or as of right, should be denied.

1    Even if intervention were permitted, Mr. Levandowski's requested relief fails on the

2    merits.  On the current evidentiary record, the Court was well within its power to order Uber—a

3    private employer—to take remedial steps towards minimizing the threat of irreparable competitive

4    injury to Waymo.  Mr. Levandowski's argument, that the Court's Order somehow transforms

5    Uber's private employment decisions into unconstitutional "state action," is not supported by any

6    authority, and is in fact contrary to the prevailing law.  The Court should deny Mr. Levandowski's

7    proposed modifications, so as to not further delay compliance with the Preliminary Injunction

8    Order.

9                                    **BACKGROUND**

10    Mr. Levandowski has repeatedly sought, without justification, to intervene to assert

11    baseless claims of privilege to create delay and obstruct discovery.  His latest Motion, seeking to

12    postpone Uber's implementation of appropriate, Court-ordered remedial provisions, is simply the

13    latest attempt to improperly leverage Mr. Levandowski's constitutional rights to permit Uber to

14    avoid compliance with this Court's orders and discovery obligations.

15    Waymo filed the original complaint on February 23rd, followed shortly thereafter by

16    motions for preliminary injunction and expedited discovery on March 10th.  In the motion for

17    preliminary injunction, Waymo repeatedly referenced Mr. Levandowski's theft of its confidential

18    material (*e.g.*, Dkt. 24 at 1, 7-9), emphasized the risk that Waymo would suffer irreparable

19    competitive harm absent court intervention (*id.* at 20-23), and sought to enjoin Defendants "from

20    accessing, using, imitating, copying, disclosing, or making available to any person or entity

21    Waymo's Asserted Trade Secrets, including but not limited to the Asserted Trade Secrets as

22    embodied in LiDAR systems" (*id.* at 2).

23    Mr. Levandowski understood that the preliminary injunction and expedited discovery

24    proceedings could potentially impact his claims to various privileges.  Indeed, as this Court noted

25    at the first case management conference, Mr. Levandowski's need for separate counsel in this

26    matter was evident from the start.  (3/16/2017 Hr'g Tr. at 16:23-17:3.)  Yet Mr. Levandowski

27    never sought to intervene for all purposes, but instead sought to do so in piecemeal fashion to

28

assert his Fifth Amendment privilege improperly—over and over—in order to shield Uber from compliance with this Court's orders, causing significant delays and obstructing Waymo's access to key information.

On March 29th, Uber's counsel (not even Mr. Levandowski's counsel) requested a "short in-chambers conference" to discuss a "confidential matter." (Dkt. 122.)  At the hearing, Mr. Levandowski, represented by separate counsel, "broadly asserted his Fifth Amendment privilege against self-incrimination, seeking to prohibit defendants from revealing certain information about the due diligence report—even on a privilege log." (Dkt. 433 at 6.) Mr. Levandowski then intervened on April 5th for the limited purpose of opposing the compelled disclosure of the identity of a third-party forensic investigator who conducted "due diligence" relating to Uber's acquisition of Mr. Levandowski's company Otto. (Dkt. 151.)  The Court denied Mr. Levandowski's request (Dkt. 202), and the Federal Circuit denied his appeal (Case No. 17-1904 Dkt. 9).

On April 9th, Waymo subpoenaed Mr. Levandowski for a deposition and documents. (Dkt. 244.)  Abusing his non-party status, Mr. Levandowski initially refused to produce documents, but the Court ruled that the subpoena was enforceable, that Mr. Levandowski must appear for deposition, and that he must produce documents in response to certain of Waymo's requests by April 14th.  (4/12/2017 Hr'g Tr. at 70:20-22, 72:2-4, 72:5-11.)  Subsequently, at his deposition, Mr. Levandowski asserted the Fifth Amendment in response to virtually every substantive question asked of him.  (*See generally* Dkt. 366-8.)  Additionally, Mr. Levandowski violated the Court's order that he timely produce documents, delaying his first of several productions until April 24th.  Mr. Levandowski then failed to complete his production until May 11th, *after* the hearing on Waymo's Motion for Preliminary Injunction and a full month after the deadline imposed by the Court.  In addition, Mr. Levandowski failed to disclose information to Waymo sufficient to establish his assertion of the Fifth Amendment privilege.  (Dkt. 501 at 2.)

When Waymo sought to compel production of certain "due diligence" materials from Defendants, Mr. Levandowski once again sought limited intervention to oppose the request (Dkt.

371), joined in Defendants' opposition (Dkt. 384), and made a motion to file an *in camera* declaration with the Court in support of Defendants' opposition (Dkt. 382).

On May 15th—after a months-long expedited discovery process and lengthy briefing schedule (to which Mr. Levandowski never attempted to intervene)—the Court entered its Order granting in part Waymo's request for provisional relief.  (Dkt. 433.)  The Court found that "Waymo has made a strong showing that Levandowski absconded with over 14,000 files from Waymo, evidently to have them available to consult on behalf of Otto and Uber."  (*Id.* at 7.)  The Court also found it likely that "Uber knew or should have known" of the theft "when it brought [Mr. Levandowski] on board."  (*Id.* at 12.)  Although the Court denied (without prejudice) Waymo's request that it enjoin Uber's use of Waymo's trade secrets, it did order that Uber take certain remedial steps towards minimizing the risk that the 14,000 stolen files ("downloaded materials") would continue to be exploited between now and the October 2nd trial date in this matter.  (*Id.* at 22-26.)

As pertinent here, the Court ordered that Uber "immediately and in writing exercise the full extent of their corporate, employment, contractual, and other authority to (a) prevent Anthony Levandowski and all other officers, directors, employees, and agents of defendants from consulting, copying, or otherwise using the downloaded materials; and (b) cause them to return the downloaded materials and all copies, excerpts, and summaries thereof to Waymo (or the Court) by MAY 31 AT NOON."  (*Id.* at 23 ¶ 2.)  The Court further ordered that Uber "conduct a thorough investigation and provide a detailed accounting under oath setting forth every person," "including Levandowski and his separate counsel," "who has seen or heard any part of any downloaded materials, what they saw or heard, when they saw or heard it, and for what purpose."  (*Id.* at 24 ¶ 4.)

On May 16th, Uber's legal department apparently sent Mr. Levandowski a letter, a copy of which Waymo only received when it was attached as Exhibit A to the Motion.  In the letter— which was obviously prepared specifically for the purposes of creating a record to support this Motion—Uber threatened "adverse employment action," against Mr. Levandowski, which Uber

OPPOSITION TO ANTHONY LEVANDOWSKI'S MOTION FOR INTERVENTION AND MODIFICATION OF ORDER

1   stated "***may*** include termination of [Mr. Levandowski's] employment."  (Dkt. 466-2 (Ex. A to

2   Mot.) at 4 (emphases added and omitted from original).)  In the letter, Uber concedes that it has

3   adequately represented Mr. Levandowski's interests throughout these proceedings by "respect[ing]

4   his personal liberties."  (*Id.* at 3.)  Thus, Uber seeks to "shift blame" for the necessary remedial

5   provisions to the Court.  (*Id.* ("[I]t is our view that the Court's Order requires us to make these

6   demands of you.").)

7           Within two days of receiving the letter, Mr. Levandowski filed the present Motion seeking

8   intervention to assert, for the first time, his purported personal rights relating to Waymo's

9   requested provisional relief.  Based on this filing, the Court extended the deadline for Uber to

10  comply with certain provisions of the Preliminary Injunction Order and set the current briefing

11  schedule.  (Dkt. 471.)  For the reasons set forth below, Mr. Levandowski's Motion is an untimely

12  attempt to assert baseless arguments designed only to delay implementation of the reasonable

13  remedial provisions ordered by the Court.  The Motion should be denied in all respects.

14                                    **ARGUMENT**

15  **I.      MR. LEVANDOWSKI FAILS TO MEET HIS BURDEN TO INTERVENE**

16           **A.      There Is No Basis To Intervene as of Right.**

17           Under Federal Rule of Civil Procedure 24, a party is entitled to intervene as of right if it

18  "claims an interest relating to the property or transaction that is the subject of the action, and is so

19  situated that disposing of the action may as a practical matter impair or impede the movant's

20  ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R.

21  Civ. P. 24(a)(2).  The Ninth Circuit has adopted a four-factor test that an applicant must satisfy in

22  order to intervene as of right: (1) the motion must be timely; (2) the applicant must have a

23  significant protectable interest relating to the property or transaction which is the subject of the

24  action; (3) the applicant must be situated such that the disposition of the action may, as a practical

25  matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's

26  interest must be inadequately represented by the other parties.  *United States v. Alisal Water*

27  *Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).  The party seeking to intervene has the burden of

28

1  showing all four factors are satisfied.  *Id.*  If the applicant is unable to show that any one of the

2  factors is met, then the application for intervention as of right fails and the court is not required to

3  consider the remaining factors.  *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950

4  (9th Cir. 2009).  Because Mr. Levandowski does not meet his burden, the court should deny his

5  motion to intervene.

6  **1.     The Application Is Not Timely.**

7  The Ninth Circuit has explained that timeliness is a threshold requirement for intervention

8  as of right.  *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015); *United States v. California*, 538

9  Fed. Appx. 759, 760 (9th Cir. 2013).  In evaluating the timeliness of a motion to intervene, the

10  Ninth Circuit has held that courts should consider "(1) the stage of the proceeding at which an

11  applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of

12  the delay."  *California*, 787 F.3d at 760 (quotations and citations omitted).

13  Here, while Mr. Levandowski has repeatedly asserted his purported privileges, and has

14  sought **limited** intervention throughout these proceedings to do so, he never once, prior to the

15  issuance of the Order, sought intervention to assert such rights within the context of Waymo's

16  Motion for Preliminary Injunction.  Instead, Mr. Levandowski sat on his alleged rights, apparently

17  so that in the event of an unfavorable decision, he could use them to derail and further delay any

18  provisional relief that the Court was likely to grant against his employer.  This gamesmanship has

19  already delayed the implementation of appropriate remedial measures, thereby compounding the

20  risk of irreparable competitive harm to Waymo.  For these reasons, Mr. Levandowski's request for

21  intervention is not timely.

22  Mr. Levandowski argues that his request for intervention is timely because it was not

23  necessitated until the Court entered its Order for provisional relief on May 15th.  However, given

24  the factual background recounted above, Mr. Levandowski clearly understood for months that a

25  likely Order on the Motion for Preliminary Injunction could have ramifications on his claimed

26  rights.  Indeed, the Court stated as much on the record as early as March 29th.  (3/29/2017 Hr'g

27  Tr. at 12:7-11 ("Uber has the authority to say to its employees, 'If you have anything at home you

28

1   bring it in here, give it to Mr. González, and he will turn it over to the Court.'  You have the

2   authority to do that.  ***And you also have the authority to say, 'And if you don't do that, you're***

3   ***fired.***'") (emphasis added).)  Clearly, as of at least March 29th, Mr. Levandowski was on notice

4   that an Order directing Uber to direct him to return the stolen documents was a distinct possibility.

5          Because Mr. Levandowski did not seek intervention earlier for the purposes of asserting

6   his alleged rights in the context of Waymo's Motion for Preliminary Injunction, his request is now

7   untimely, and should be denied.

8                  **2.      Mr. Levandowski Cannot Justify Intervention With A "Significantly**
                           **Protectable Interest."**
9
10          In addition to timeliness, a movant seeking intervention as of right must demonstrate that

11   he has a "significantly protectable interest."  In particular, the Ninth Circuit has held that a

12   prospective intervenor must establish that "(1) the interest [asserted] is protectable under some

13   law, and (2) there is a relationship between the legally protected interest and the claims at issue."

14   *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (internal

15   quotations and citations omitted) (alterations in original).

16          Here, Mr. Levandowski claims an interest in protecting his Fifth Amendment and attorney-

17   client privileges.  (Mot. at 7.)  His argument as to the Fifth Amendment privilege is baseless.

18   Under settled law, Mr. Levandowski has no protected Fifth Amendment right that prevents

19   Defendants from producing or disclosing documents in their own possession, even if they are

20   incriminating against Mr. Levandowski.  In particular, courts have held that the Fifth Amendment

21   is a *personal* right and does not prohibit the compelled production of incriminating evidence from

22   a third party, such as Defendants.  *See, e.g.*, *Braswell v. United States*, 487 U.S. 99 (1988)

23   (president of corporation could not assert personal Fifth Amendment right to prevent production of

24   corporate records); *see also* Dkt. 202 (denying Mr. Levandowski's request to modify Defendants'

25   privilege log obligations on the grounds that doing so would violate Mr. Levandowski's Fifth

26

27

28

1    Amendment privilege).[1]  Thus, Mr. Levandowski has no protectable Fifth Amendment interest

2    with respect to information possessed by Uber or any other third party.

3            To the extent Mr. Levandowski argues that his personal Fifth Amendment privilege is

4    implicated by the Court's Order that Uber take steps to discipline him for his continued criminal

5    activity, this argument too fails.  Constitutional restrictions, including those under the Fifth

6    Amendment, apply only to state, not private, actors.  *Gilman v. Marsh & McLennan Cos., Inc.*,

7    826 F.3d 69, 76 (2d Cir. 2016); *United States v. Solomon*, 509 F.2d 863, 870 (2d Cir. 1975)

8    ("[T]here would be a complete breakdown in the regulation of many areas of business if

9    employers did not carry most of the load of keeping their employees in line and have the sanction

10   of discharge for refusal to answer what is essential to that end.").  As discussed more fully below

11   (*infra* Section II.A.1), Mr. Levandowski cites no binding authority for his argument that adverse

12   employment action taken by Uber is somehow transformed into "state action" simply because

13   Uber takes steps to comply with the Court's Preliminary Injunction Order.[2]

14           Mr. Levandowski also vaguely claims that intervention should be granted so that he can

15   protect other privileges, including the attorney-client, common interest, and work product

16   privileges.[3]  (*E.g.*, Mot. at 2 & n.1.)  But, as explained below and elsewhere in the record,

---

[1]   Mr. Levandowski cites to *In re Katz*, 623 F.2d 122 (2d Cir. 1980), in support of his argument that the interest in asserting a Fifth Amendment privilege justifies intervention. (Motion at 7.)  In *Katz*, an attorney received a subpoena to produce documents, over which one of his clients asserted a Fifth Amendment claim, and the court permitted intervention as of right. *Id.* at 125.  As the Second Circuit recognized, however, this case was dependent upon the fact that the recipient of the subpoena was the *attorney* of the individual seeking to protect his Fifth Amendment rights.  Thus, the reasoning in *Katz* was grounded in the attorney-client privilege—*not* the Fifth Amendment privilege.  *Id.* at 126 n.2.  In citing to *Katz* here, Mr. Levandowski misinterprets the law in the same way he did on his Motion to Modify Defendants' Privilege Log Requirements.  (*See* Dkt. 202 at 8 ("This misinterpretation of *Fisher* erroneously conflates the Fifth Amendment and attorney-client privileges.").)

[2]   As the Court recognized, the Preliminary Injunction Order "threatens no sanctions against *Levandowski*. It simply directs *Uber*, a private employer, to do whatever it can to ensure that its employees return 14,000-plus pilfered files to their rightful owner. If Uber were to threaten Levandowski with termination for noncompliance, that threat would be backed up by only Uber's power as a private employer, and Levandowski would remain free to forfeit his private employment to preserve his Fifth Amendment privilege." (Dkt. 433 at 23 n.9.)

[3]   As discussed below (*infra* Section II.B), in the portion of his Motion seeking to Modify the Court's Preliminary Injunction Order, Mr. Levandowski makes *no* argument that the Court's Order implicates any applicable attorney-client, common interest, or work product privilege.

1    Mr. Levandowski has no other protectable attorney-client privilege in information possessed by

2    Uber, because he and Uber have failed to establish that they have ever shared a sufficiently

3    common legal interest to preclude waiver of shared attorney-client communications. (*Infra* Section

4    II.B; *See generally* Dkts. 321, 444 (Waymo's Motion and Reply ISO Motion to Compel

5    Production of Due Diligence Materials).)

6         In sum, Mr. Levandowski has no protectable interest in a Fifth Amendment or attorney-

7    client privilege that intervention into this matter could protect.  Intervention should be denied.

8              **3.      Denial of Intervention Will Not Impair Mr. Levandowski's Ability to
                         Protect His Interests.**

9         Mr. Levandowski does not, and cannot, explain how intervention will place him in any

10   better position to protect his alleged Fifth Amendment and attorney-client privileges.  Indeed, even

11   as a non-party, Mr. Levandowski has selectively acted in defense of his alleged privileges.

12        With regards to the alleged attorney-client privilege, Mr. Levandowski refused to answer

13   questions at his deposition regarding the nature and the basis for the supposed common legal

14   interest between himself and Uber.  (Dkt. 366-8, Levandowski Depo. Tr. at 33:16-23, 34:3-35:13,

15   35:14-37:6, 37:7-38:3, 38:4-43:7.)  And when Uber sought to oppose Waymo's Motion to Compel

16   production of the Uber-Otto "due diligence" materials, Mr. Levandowski took the position that he

17   was only willing to provide the evidence necessary to establish the alleged common interest

18   privilege *in camera*.  (Dkt. 382.)

19        With regards to the Fifth Amendment privilege, Mr. Levandowski refuses to provide even

20   basic information necessary to maintain the privilege over documents responsive to the third-party

21   subpoena served on him.  (Dkt. 493.)  As the Court recently recognized, Mr. Levandowski "failed

22   to comply with the Court's directive" to provide information to Waymo sufficient to assess his

23   assertion of the Fifth Amendment.  (Dkt. 501 at 2.)  Again, the most Mr. Levandowski has been

24   willing to provide regarding his assertion of privilege is secret evidence, *in camera* (4/12/17 Hr'g

25   Tr. at 78:21-79:5), which the Court has also found lacking (Dkt. 501 at 2 ("Levandowski's in

26

27   _____
     Thus, Mr. Levandowski's request to intervene to protect these interests must also be denied for
     this separate reason.

28

camera submission largely failed to remedy the deficiencies of his public brief.").)  There is no reason to believe Mr. Levandowski will suddenly be more forthcoming with relevant evidence if allowed to intervene, and thus intervention should be denied.[4]

### 4.   Defendants Can Adequately Represent Mr. Levandowski's Interests in Protecting his Alleged Privileges.

Mr. Levandowski also fails to demonstrate that the existing Defendants cannot adequately protect his interests in this action.  Under Ninth Circuit law, the court should consider three factors in determining the adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect."  *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).  "The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties. *When an applicant for intervention and an existing party have the same ultimate objective*, a presumption of adequacy of representation arises."  *Id.* (internal citation omitted) (emphasis added).  Here, the existing Defendants, who have had every incentive to obstruct Waymo's discovery, have adequately represented Mr. Levandowski's interests.[5]

---

[4]   The out-of-circuit cases Mr. Levandowski cites are all distinguishable.  In each of these cases, the intervenor demonstrated that it was ready, willing, and able to provide evidence and arguments to defend its protectable interest that the existing parties to the litigation were unwilling to make.  *In re Grand Jury Subpoena*, 274 F.3d 563, 568 (1st Cir. 2001) (permitting intervention to allow board members to assert attorney-client privilege that company was willing to waive); *In re Grand Jury Matter*, 735 F.2d 1330, 1330 (11th Cir. 1984) (permitting intervention where clients were prepared to provide "letters and other evidence" in support of their asserted attorney-client privilege); *United States v. Am. Telephone & Telegraph Co.*, 642 F.2d 1285, 1289-90 (D.C. Cir. 1980) (permitting intervention to allow appeal by non-party claiming work product over documents in possession of government, where government was unwilling to appeal); *Sackman v. Liggett Grp.*, 167 F.R.D. 6, 19 (E.D.N.Y. 1996) (permitting intervention for the purpose of filing specific objections to the discovery order of the magistrate judge).

[5]   Although Waymo disputes the existence of a valid joint-defense privilege between Mr. Levandowski and Uber and also contests any right by Uber to assert a Fifth Amendment claim on behalf of Mr. Levandowski, the fact remains that Uber has vigorously defended the applicability of these privileges, which supports denying Mr. Levandowski's request to intervene.

1    Throughout the expedited discovery period, Uber has repeatedly sought to rely on

2   Mr. Levandowski's alleged rights.  Indeed, Uber benefits from Mr. Levandowski's assertion of the

3   Fifth Amendment, because such assertion is cloaking in secrecy Mr. Levandowski's continuing

4   criminality—and Uber's complicity therein.  (Dkt. 433 at 8 (noting that the combined actions of

5   Levandowski and Uber has resulted in the "relentless concealment of likely probative evidence,

6   both documentary and testimonial, from Waymo's view.").  For example, Uber has sought to hide

7   behind Mr. Levandowski's Fifth Amendment privilege, by providing improperly redacted

8   privilege logs to shield the identity of its "due diligence" consultant. (Dkt. 202.)  Uber has also

9   refused to comply with Judge Alsup's expedited discovery order that it insist Mr. Levandowski

10  return the 14,000 files he stole from Waymo.  (3/29/2017 Hr'g Tr. at 11:24-12:5.)  As Uber itself

11  admits, it has striven to "respect[]" Mr. Levandowski's "personal liberties" in this case (Dkt. 466-

12  2 (Ex. A to Mot.) at 3)—at least when it suited Uber.  If it is the case that Uber now can no longer

13  shield Mr. Levandowski from the consequences of his criminal activity, that is not because Uber is

14  unwilling to defend Mr. Levandowski's interest, it is only because the parties have now, finally,

15  reached the limits of what the Fifth Amendment credibly protects.

16    Mr. Levandowski's interest in protecting his alleged common-interest privilege is likewise

17  adequately represented by the existing Defendants.  Throughout this case, Defendants have

18  contested the production of alleged privileged materials based on exactly the same common

19  interest privilege that Mr. Levandowski seeks to assert. (*See* Defs' Opp. to Mot. to Compel (Dkt.

20  369).)  Indeed, Mr. Levandowski filed a "joinder" to Defendants' Opposition to Waymo's Motion

21  to Compel, which offered zero new arguments and instead simply "relie[d] on the points and

22  authorities set forth in Uber's memorandum . . . ." (Dkt. 384.)  This confirms that

23  Mr. Levandowski has no new facts, arguments, or evidence to add to those already presented by

24  Uber.  *See, e.g.*, *In re Weingarten*, 492 Fed. Appx. 765, 756 (9th Cir. 2012) (finding that proposed

25  intervenors' interests were adequately represented where the existing party to the litigation and the

26  proposed intervenors shared the same ultimate objective of defeating another party's attempt to

27  recover certain property and where the existing party and the proposed intervenors were

28

1  represented by the same counsel); *Executive Risk Specialty Ins. Co. v. Rutter Hobbs and Davidoff,*

2  *Inc.*, 564 Fed. Appx. 887 (9th Cir. 2014) (affirming denial of motion to intervene where existing

3  litigant and proposed intervenor had the same ultimate objective). As such, intervention should be

4  denied.

5              **5.        Equitable Considerations Weigh Against Intervention.**

6            "In determining whether intervention is appropriate, courts are guided primarily by

7  practical and equitable considerations . . . ." *Alisal*, 370 F.3d at 919. Here, the equities weigh

8  strongly against permitting Mr. Levandowski to intervene. As summarized in a recent discovery

9  letter brief, Mr. Levandowski has flouted this Court's orders that he timely produce documents in

10 response to a subpoena and provide information sufficient to justify his asserted privileges. (Dkt.

11 493.) For example, even though Mr. Levandowski was ordered to produce all documents

12 responsive to the subpoena served on him by April 14th, he delayed his first production until April

13 24th and failed to complete his production until May 11th, almost a month late. In addition, Mr.

14 Levandowski "failed to comply with the Court's directive to provide 'enough of the argument'"

15 regarding his assertion of the Fifth Amendment privilege "so that Waymo could respond." (Dkt.

16 501 at 2, *quoting* Dkt. 250.) Given his failures to comply with the Court's discovery orders, Mr.

17 Levandowski's request to intervene should be denied on equitable grounds as well.

18          **B.        Levandowski's Motion for Permissive Intervention Should Be Denied.**

19            Under the Ninth Circuit's test for permissive intervention, a movant seeking permissive

20 intervention must first establish certain threshold requirements: "(1) independent grounds for

21 jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action,

22 have a question of law or a question of fact in common." *Southern California Edison Co. v.*

23 *Lynch*, 307 F.3d 794, 803-04 (9th Cir. 2002).

24            For many of the same reasons that intervention as a matter of right should be denied, so too

25 should permissive intervention be denied. The Motion is not timely, because it was not brought

26 during the lengthy discovery period and briefing schedule leading up to the Preliminary Injunction

27 Order. *See, e.g.*, *Allen*, 787 F.3d at 1222 ("A timely motion is required for the granting of

28

intervention, whether as a matter of right or permissively.").  Mr. Levandowski also fails to explain what his intervention will accomplish, or how his position on the Preliminary Injunction Order will differ from that of Uber.[6]  *Dep't of Fair Employment & Housing v. Lucent Techs. Inc.*, 642 F.3d 728, 742 (9th Cir. 2011) (holding that court does not abuse its discretion in denying or limiting permissive intervention where the positions of the purported intervenors are adequately represented by another party); *Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011) (denying intervention where the would-be intervenor has "no new evidence or arguments to introduce into the case.").  Finally, the proposed intervention has already delayed the appropriate remedial measures outlined in the Preliminary Injunction Order, which of course is the intended purpose.  *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1988) (upholding denial of permissive intervention where "allowing intervention would only serve to undermine the efficiency of the litigation process" (quotation omitted)).  The relevant factors, as well as the equities, weigh in favor of denying permissive intervention.

## II.  Mr. Levandowski's Motion To Modify The Court's Order Should Be Denied

Even if intervention were permitted, it would be futile, because Mr. Levandowski is not entitled to the underlying relief that he seeks.  Consistent with governing trade secret law, the Court's Preliminary Injunction Order simply requires that Uber take reasonable remedial measures to avoid the exploitation of Waymo's intellectual property.  These measures, which are directed to Uber as a private employer, do not require Mr. Levandowski or his attorneys to do *anything*, much less compel him to waive his applicable privileges.  The Motion should be denied.

---

[6]  Mr. Levandowski's cited authority, *Convertino v. United States DOJ*, 674 F. Supp. 2d 97 (D.D.C. 2009), is distinguishable because that case involved an intervenor seeking to vindicate attorney-client privileges that were *not* being asserted by any party in interest to the action.  *Id.* at 108.  Here, by contrast, and as the Court has recognized, Defendants have "asserted extensive claims of privilege" which has led to the "relentless concealment of likely probative evidence, both documentary and testimonial." (Dkt. 433 at 8.)  Mr. Levandowski is asserting attorney-client privilege under the very same common interest argument advanced by the existing Defendants.

**A.** **The Court's Order Does Not Implicate Mr. Levandowski's Fifth Amendment Privilege**

In his Motion, Mr. Levandowski argues that the Court's Preliminary Injunction Order infringes on his constitutional rights by compelling him to waive his Fifth Amendment rights or else face adverse employment consequences.  (Mot. at 9-16.)  To support this claim, he cites to *Garrity v. New Jersey*, 385 U.S. 493 (1967), and related cases which merely stand for the unremarkable proposition that the ***government*** may not condition a ***government*** employee's employment on the individual's waiver of his or her Fifth Amendment rights.  *See, e.g.*, *Garrity*, 385 U.S. at 494 (employment as police officers); *Lefkowitz v. Cunningham*, 431 U.S. 801 (1977) (state political party office and public office); *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation*, 392 U.S. 280 (1968) (employment with the New York Department of Sanitation); *United States v. Goodpaster*, 65 F. Supp. 3d 1016, 1024 (D. Or. 2014) (employment with the U.S. Postal Service).[7]  But the same prohibitions do not apply to purely private employers.  As stated in one of Mr. Levandowski's own cited cases:  "There is nothing inherently wrong with pressuring an employee to cooperate or punishing one who does not.  Employers sometimes need information from their employees, and a private employer may fire an employee who refuses to answer."  *Goodpaster*, 65 F. Supp. 3d at 1025.

Here, nothing in the Preliminary Injunction Order directly affects the terms of Mr. Levandowski's employment or forces him to waive his Fifth Amendment privilege against self-incrimination.  Rather, the Order merely directs Defendants to use their corporate, employment, contractual and other authority and influence to obtain cooperation from Mr. Levandowski in returning Waymo's stolen files.  (Dkt. 433 at 23 & n.9.)  Given that Uber "knew or should have known" that Mr. Levandowski was in possession of stolen Waymo materials at the time it hired him (*id.* at 12), this sort of remedial provision is entirely proper and

---

[7]  *Minnesota v. Murphy*, 465 U.S. 420 (1984), which Mr. Levandowski also cites, is completely irrelevant because there, the court noted the general principle that the state could not attach penalties to the exercise of the Fifth Amendment, before concluding that the state had not in fact done so.  *Id.* at 437-38 ("[T]here is no reasonable basis for concluding that Minnesota attempted to attach an impermissible penalty to the exercise of the privilege against self-incrimination.").

1    appropriate in order to minimize the possibility of competitive harm to Waymo.  *See* 18 USC

2    § 1836(b)(3)(A)(ii) (providing that "if determined appropriate by the court," an injunction may

3    issue "requiring affirmative actions to be taken to protect the trade secret"); Cal. Civ. Code

4    § 3426.2(c) ("In appropriate circumstances, affirmative acts to protect a trade secret may be

5    compelled by court order.").

6                    **1.    Any Adverse Employment Action By Uber Under The Court's Order**
                           **Would Not Amount To "State Action"**
7

8            Mr. Levandowski concedes, as he must, that "the Fifth Amendment [does not] bar adverse

9    action from a private employer."  (Mot. at 13.)  Thus, his argument rests on the proposition that

10   the Court's Preliminary Injunction Order is "state compulsion" sufficient to deem the actions of a

11   private employer that of the State.  (Mot. at 12, *quoting Blum v. Yaretsky*, 457 U.S. 991, 1004

12   (1982).)  But, the "state compulsion" doctrine cited by Mr. Levandowski is a theory for holding

13   the government liable for monetary damages based on the actions of a private entity—*not* a

14   doctrine for deeming that the actions of a private entity amount to a constitutional violation that

15   voids the underlying government action.  In fact, the very Ninth Circuit case cited by Mr.

16   Levandowski, *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826 (9th Cir. 1999), noted the

17   limitations of the "state compulsion" doctrine, holding that it should not be interpreted in a way

18   that would "convert every employer—whether it has one employee or 1,000 employees—into a

19   governmental actor every time it complies with a presumptively valid, generally applicable law . .

20   . ."  *Id.* at 838.

21           Mr. Levandowski cites *no* precedent, either from the Ninth Circuit or elsewhere (and

22   Waymo is aware of none), that holds that a court order requiring a company to return stolen

23   documents in the possession of its employees is unconstitutional.  Indeed, courts require private

24   employers to return materials in the possession of those under their control all the time.  *See, e.g.*,

25   *ATS Prods Inc. v. Ghiorso*, Case No. 3:10-cv-04880-BZ, Slip Op., Dkt. 271 at ¶ 58 (N.D. Cal. Jan.

26   27, 2012) ("Defendants and anyone covered by this injunction must return to Plaintiff within 30

27   days of entry of this injunction all documents or materials, including electronically stored

28   information, that contain, discuss, or reflect the Shea trade secrets . . . within their possession, *or*

---

1   *within the possession of anyone under their control*." (emphasis added)); *Pyro Spectaculars*

2   *North, Inc. v. Souza*, 861 F. Supp. 2d 1079, 1093-94 (E.D. Cal. 2012) ("[T]he court already issued

3   an interim injunctive order essentially requiring collection, production, and the subsequent

4   destruction of any remnants of all PSI documents, databases, and information in defendant's actual

5   or constructive possession, or in the actual or constructive possession of those acting in concert or

6   active participation with defendant . . . ."); *cf. Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 925

7   (D. Nev. 2006) (granting preliminary injunction against individual to return confidential and

8   proprietary documents taken from former employer).

9          Although court orders requiring the return of trade secret information are ubiquitous,

10  Mr. Levandowski fails to cite a single case in which such an order was found to contravene an

11  individual's Fifth Amendment privilege against self incrimination.  Indeed, to find an example of

12  an even somewhat similar argument being raised, we must look far afield from the current factual

13  setting—where the prevailing law holds that there is no Fifth Amendment problem with a private

14  employer coercing an employee to cooperate with an internal investigation, even where such

15  coercion came as a result of government influence.  *See, e.g.*, *Gilman*, 826 F.3d at 76.  In *Gilman*,

16  a former employer was sued, in a civil case, by the New York Attorney General for alleged

17  fraudulent business practices and antitrust violations based on the actions of its two employees.

18  *Id.* at 72.  Facing potential criminal indictment itself, the employer ordered the two employees to

19  sit for interviews with the state authorities, and when they refused, promptly fired them.  *Id.*  The

20  employees then sued the employer for lost employment benefits, contending amongst other things

21  that the employer's "interview demands constitute state action that infringed their right against

22  self-incrimination." *Id.* at 76.  The Second Circuit rejected this argument, characterizing it as "the

23  legal equivalent of the 'Hail Mary pass' in football." *Id.*  According to the Second Circuit, "a

24  company is not prohibited," in response to government action, from coercing its employees to

25  cooperate, "even when employees suspected of crime end up jettisoned." *Id.*; *see also Solomon*,

26  509 F.2d at 870 ("[T]here would be a complete breakdown in the regulation of many areas of

27

28

1   business if employers did not carry most of the load of keeping their employees in line and have

2   the sanction of discharge for refusal to answer what is essential to that end.").

3           The primary case relied upon by Mr. Levandowski, *United States v. Stein*, 541 F.3d 130

4   (2d Cir. 2008), is not controlling here.  In *Stein*, federal prosecutors exerted "overwhelming"

5   influence over accounting firm KPMG in order to minimize the involvement of criminal defense

6   attorneys acting on behalf of KPMG employees during a criminal investigation.  541 F.3d at 136,

7   143.  Contrary to Mr. Levandowski's argument (Mot. at 14), the government's influence in *Stein*

8   was not a mere "consideration" to the company's decision to withhold legal assistance to its

9   employees.  Rather, the Second Circuit affirmed the district court's factual findings that

10  prosecutors effectively stepped into the shoes of KPMG to set company policy and then applied

11  that policy to KPMG employees for the direct benefit of an ongoing criminal investigation and in

12  contravention of those employees' alleged constitutional right (*i.e.*, effective assistance of

13  counsel).[8]  *Id.* at 148.  This is distinguishable from the present case.  Here, in the civil context, this

14  Court has made certain findings—*i.e.*, "Waymo has made a strong showing that Levandowski

15  absconded with over 14,000 files from Waymo, evidently to have them available to consult on

16  behalf of Otto and Uber" and "those files have not been returned" (Dkt. 433 at 7)—based on an

17  extensive evidentiary record.  As a result, the Court has ordered Uber to do everything in its power

18  to cause the stolen files to be returned.  (*Id.* at 23.)  Perhaps Uber's compliance with that Order

19  will put Mr. Levandowski to a difficult choice with regard to his employment.  Such

20  considerations, however, have no bearing on whether the Order passes constitutional muster.  *See*

21  *Gilman*, 826 F.3d at 76; *Solomon*, 509 F.2d at 870.  Indeed, adverse consequences often flow from

22  an individual's choice to assert one's Fifth Amendment rights in the context of a civil case.  *E.g.*,

23  *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *see also SEC v. Graystone Nash, Inc.*, 25 F.3d

24  187, 191 (3d Cir. 1994).

25

26  ───────────────────

27      [8]  In *Stein*, the Second Circuit emphasized the nature of the Sixth Amendment right, which guarantees a "principle of non-interference" by the government with a defendant's choice of legal counsel.  541 F.3d at 154.

28

1         Mr. Levandowski seems to suggest that a constitutional violation results from all adverse

2    employment consequences, unless such consequences are "the product of *purely private discretion*

3    *untainted by government coercion*."  (Mot. at 13 (emphasis in original).)  But this extreme position

4    would lead to absurd results.  Private employers routinely demand cooperation from employees

5    out of a desire to comply with all manner of laws, regulations, and court orders.  The notion that

6    all legitimate court orders against companies that happen to have incidental effects on the

7    employment of their employees are thereby transformed to state action with constitutional

8    limitations would be "incompatible with corporate governance and modern regulation."[9] *Gilman*,

9    826 F.3d at 77.

10        The rule proposed by Mr. Levandowski—that anything short of unfettered discretion on

11   the part of the employer renders adverse employment decisions "state action"—would also lead to

12   particularly perverse results here.  Despite Waymo making the showing that it has with respect to

13   the stolen files, Uber would like to keep Mr. Levandowski as an employee and continue to benefit

14   from Mr. Levandowski's access to Waymo's files.  And in Mr. Levandowski's view, so long as

15   Uber can construct a self-serving narrative that its actions are motivated by compliance with a

16   Court Order, this itself is sufficient to void such Order and defeat Waymo's entitlement to

17   appropriate provisional relief.  Indeed, this appears to be precisely what has occurred in Uber's

18   letter to Mr. Levandowski (Dkt. 466-2 (Ex. A to Mot.) at 3), which goes out of its way to lay

19   blame for the threatened adverse employment actions with the Court's Preliminary Injunction

20   Order.  *Id.* ("While we have respected your personal liberties, it is our view that the Court's Order

21   requires us to make these demands of you.").  It is unthinkable that Uber can render the Court's

22   Preliminary Injunction Order unconstitutional through such self-serving statements.

23

24      [9]  Further confirming that there is no constitutional defect with the Court's Preliminary
     Injunction Order is the fact that there is no barrier, under the Fifth Amendment or otherwise, to the

25   Court sanctioning and drawing adverse inferences against Uber for failing to coerce Mr.
     Levandowski's cooperation.  *See, e.g.*, *RAD Serv., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271,

26   275 (3d Cir. 1986) ("Nothing forbids imputing to a corporation the silence of its personnel.");
     *Brinks, Inc. v. City of New York*, 717 F.2d 700, 709-10 (2d Cir. 1983) (drawing adverse inferences

27   against a corporation based on assertion of Fifth Amendment privilege by non-party employees
     and former employees).

28

### 2. The Threat Of Adverse Employment Action Does Not Effectively Compel Mr. Levandowski to Speak

Even if, for the sake of argument, it were assumed that the Court's Order renders Uber's threat of adverse employment action "state action," it still would not result in a constitutional violation because it would not effectively remove Mr. Levandowski's free choice or compel him to speak. Although the Supreme Court has held that state action constituting a threat of "**substantial** economic sanction" is sufficient to trigger constitutional scrutiny,[10] Mr. Levandowski has made no showing that the threatened sanction here is "substantial" under the circumstances.

Mr. Levandowski received $120 million in bonus payments from Google before absconding with its intellectual property (Dkt. 133-3 ¶ 3; *see also* Dkt. 1 (Compl.) ¶¶ 7, 55) and likely received significant cash compensation from Uber after its acquisition of Otto for $680 million (Dkt. 1 (Compl.) ¶¶ 7, 55). As a result, the threat of termination in this case cannot seriously be compared to the types of sanctions at issue in the more typical "penalty" cases cited in Mr. Levandowski's Motion. *E.g., Garrity*, 385 U.S. at 497 (holding that for state police officers "[t]he option to lose their means of livelihood" was too great a penalty to bear as the price for remaining silent). Where the threatened sanction does not appear "to have been of sufficiently appreciable size and substance to deprive the accused of his 'free choice to admit, to deny, or to refuse to answer,'" courts have found that no constitutional violation arises. *United States ex rel. Sanney v. Montanye*, 500 F.2d 411, 415 (2d Cir. 1974), *quoting Garrity*, 385 U.S. at 496. As the Court in *Montanye* held:

> [T]he threat of discharge from a job as a driver's assistant, which Sanney had held for one or two days, can hardly be labelled a 'substantial economic sanction' rendering his statement involuntary. Sanney was not a policeman or public employee with many years of public service who faced the loss of pension rights, seniority status or other privileges if he refused to cooperate. Nor was he a professional who would lose his license, or be permanently foreclosed from an important segment of industry, unless he confessed. Sanney was a transient manual laborer who had been on the job for at most a couple of days.

---

[10] *Baxter*, 425 U.S. at 330 (emphasis added).

*Id.* (internal citations omitted); *see also id.* at fn. 3 (noting that "[w]ere he a pampered professional or high-paid businessman with a similar transient employment history and no assurance of tenure, the result would be the same.").

Such is the case here.  The threat of termination from a job that Mr. Levandowski has held for just one year does not effectively compel him to speak, particularly given the resources that would be available to him while he seeks alternative employment.  Termination by Uber also would not cause him to "lose [any] license" or "be permanently foreclosed from [any] industry." *Montanye*, 500 F.2d at 415.  Because any threat by Uber to terminate Mr. Levandowski's employment is insufficient to deprive him of his free choice to remain silent, no Fifth Amendment violation can possibly arise in this case.

### 3.   To The Extent The Order Merely Requires The Production Of Documents, The Fifth Amendment Does Not Apply At All.

Finally, Mr. Levandowski has not met his burden to show that the portion of the Court's Order that requires Uber to return Waymo's stolen files implicates the Fifth Amendment at all.

As noted above, the Fifth Amendment privilege is a *personal* right to not incriminate oneself, and it does not extend to the production of materials within the possession of others. (*Supra* Section I.A.2.)  Mr. Levandowski argues that "[t]he Court's requirement to collect information from Mr. Levandowski's counsel, as well as consultants working for legal counsel, . . . crosses into constitutionally improper compulsion."  (Mot. at 15.)  But the Court has already rejected this argument, holding that it "erroneously conflates the Fifth Amendment and attorney-client privileges," seeking to "lend 'Constitutional dimensions' to the latter."  (Dkt. 202 at 8 (citation omitted).)  To the extent that documents in question are within the custody of a third-party, including Mr. Levandowski's personal attorneys or a third-party consultant working at the direction of his or Uber's attorneys, requiring their production ***does not have Fifth Amendment implications***.[11]

---

[11]   Not only are stolen documents in the possession of Mr. Levandowski's attorneys ***not*** subject to a Fifth Amendment privilege, Mr. Levandowski's attorneys actually have an ***ethical obligation*** to return them immediately.  *Lynn v. Gateway Unified Sch. Dist.*, Case No. 2:10-cv-00981, 2011 WL 6260362, at *6 (E.D. Cal. Dec. 15, 2011) (disqualifying attorney who took

1      Moreover, even with respect to documents and information within Mr. Levandowski's

2  personal possession, the Fifth Amendment does not apply unless the act of production *itself* is

3  incriminating.  *Moore v. Gilead Sciences, Inc.*, No. C 07-03850 SI, 2011 WL 5572975, at *7-8

4  (N.D. Cal. Nov. 16, 2011).  Merely because certain documents called for by the Court's Order

5  may contain within them incriminating facts is not sufficient to raise a Fifth Amendment

6  objection.  As stated in *United States v. Hubbell*, 530 U.S. 27 (2000), "a person may be required to

7  produce specific documents even though they contain incriminating assertions of fact or belief

8  because the creation of those documents was not 'compelled' within the meaning of the privilege."

9  *Id.* at 35-36.  As has become a running theme in this case, Mr. Levandowski has not even

10  attempted to meet his burden to establish the predicates as to how Uber's compliance with the

11  Court's Order could be a violation of Mr. Levandowski's Fifth Amendment rights.

12      For all these reasons, the Court's Preliminary Injunction Order poses no Fifth Amendment

13  concerns.  Mr. Levandowski's Motion to Modify the Order should be denied.

14      **B.      The Court's Order Does Not Implicate Mr. Levandowski's Other Privileges.**

15      Although Mr. Levandowski additionally seeks intervention to protect his attorney-client,

16  common interest, and work product privileges, his argument to modify the Court's Order rests

17  entirely on the Fifth Amendment and does not explain how the Court's Preliminary Injunction

18  Order implicates these other privileges.[12]  (Mot. at 9-15.)  Mr. Levandowski does note that Uber's

19  letter to him demands cooperation from his personal attorneys.  (Mot. at 14.)  But he then goes on

20  to admit that "it appears that the Court's order is only intended to require Uber to *state which*

21  *people have* 'seen or heard any part of any downloaded materials . . . including . . . separate

22  counsel'" (Mot. at 14, *quoting* Dkt. 433 at 24).  Thus, by his own concession, there is nothing in

23  the Preliminary Injunction Order that requires Mr. Levandowski to waive any attorney-client,

24  _____

25  possession of stolen emails, which possibly violated the California Penal Code, improperly
   suppressed evidence of a crime; and breached attorney's ethical duties); *see also People v. Lee*, 3

26  Cal. App. 3d 514, 526 (1970) ("It has been held an abuse of a lawyer's professional responsibility
   knowingly to take possession of and secrete the instrumentalities of a crime." (quotation omitted)).

27  [12]   Accordingly, the Court should deny Mr. Levandowski's request to intervene to the extent it is
   based on these interests.

28

1   common interest, or work product privilege.  *See Johnson v. Hewlett-Packard Co.*, Case No. C09-

2   3596 CRB (BZ), 2010 WL 4510345, at *1 (N.D. Cal. Nov. 1, 2010) (underlying facts of an

3   attorney-client relationship, such as whether a communication took place, the identity of parties

4   who were present, and the date of the communication, are not privileged) (citation omitted).

5          In any event, Mr. Levandowski cannot complain about the Court requiring Uber to disclose

6   Mr. Levandowski's allegedly attorney-client privileged materials because any claim of privilege

7   over these materials was waived by disclosure from Mr. Levandowski and his counsel to Uber.

8   *See generally* Dkts. 321, 444 (Waymo's Motion and Reply ISO Motion to Compel Production of

9   Due Diligence Materials).)  Indeed, the very fact that Mr. Levandowski now deems it necessary to

10  intervene to protect an alleged privilege that he fears Uber will not defend confirms that these

11  parties have had divergent legal interests all along, and any sharing between them of attorney-

12  client communications was merely in furtherance of a commercial, as opposed to a legal, interest.

13  *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575 (N.D. Cal. 2007) (holding that the common

14  interest privilege does not apply to communications between a potential bidder and acquisition

15  target that were merely "helpful to facilitate the potential commercial transaction."); *see also*

16  *Harris v. Lang Pharma Nutrition, Inc.*, No. MC 14-1154, 2015 WL 12832093, at *2 (C.D. Cal.

17  May 22, 2015) (holding that the doctrine does not apply where the only common legal interest

18  between parties to a commercial transaction is to comply with the laws regarding the products they

19  sold—"[i]f such a general legal interest were sufficient, the common interest exception would

20  swallow the waiver rule.").

21         In fact, the only conceivable shared legal interest between Mr. Levandowski and Uber

22  would be in the location and possession of stolen files (or the concealment thereof), which falls

23  within the crime-fraud exception, rendering any possible claim of privilege void.  *E.g. United*

24  *States v. Edison*, No. CR 07-0074, 2008 WL 170660, at *4 (N.D. Cal. Jan. 17, 2008) (Alsup, J.)

25  (holding that under the crime-fraud exception, "conversations that furthered ongoing efforts to

26  obstruct justice would not be protected."); Restatement (Third) of the Law Governing Lawyers §

27  82, cmt. e ("Confidential communications concerning ways in which Client can continue to

28

1   possess the stolen goods, including information supplied by Client about their present location, are

2   not protected by the privilege because of the crime-fraud exception.").

3         Mr. Levandowski's request to modify the Preliminary Injunction Order is wholly

4   unsupported by any authority, and is in fact contrary to prevailing law and common sense.  His

5   Motion should be denied.

6   **III.      Responses To Court Ordered Questions**

7         In its Order continuing certain deadlines relating the granted provisional relief and setting a

8   briefing schedule on this Motion, the Court posed three specific questions.  (Dkt. 471.)  Based

9   upon the analysis and authorities outlined above, Waymo provides the following responses:

> **1.    When an employee steals and retains a competitor's trade secrets, may the employer, upon learning of the theft, direct the employee to make it right with the competitor and to return all copies of the trade secrets to the competitor on pain of adverse employment action, up to and including termination?  Yes, this happens all the time.  Does the Fifth Amendment prevent such private action?  No.**

14        There are no constitutional limitations on the ability of a private employer to threaten a

15  employee with termination unless an employee returns materials stolen from a former employer.

16  Mr. Levandowski admits as much.  (Mot. at 13 ("[T]he Fifth Amendment [does not] bar adverse

17  action from a private employer.").)  Additionally, as Mr. Levandowski's own cited authority

18  makes clear:  "There is nothing inherently wrong with pressuring an employee to cooperate or

19  punishing one who does not.  Employers sometimes need information from their employees, and a

20  private employer may fire an employee who refuses to answer."  *Goodpaster*, 65 F. Supp. 3d at

21  1025.

> **2.    In such circumstances, may a court order the employer to exercise the full scope of its private authority over the employee to cause the employee to return all copies of the stolen trade secrets? Yes.  Does the Fifth Amendment bar such an order?  No.**

25        A court may order that an employer use the full scope of its private authority over its

26  employees to ensure that a competitor's trade secrets are not unlawfully exploited.  *See* 18 USC

27  § 1836(b)(3)(A)(ii) (providing that "if determined appropriate by the court," an injunction may

28

1  issue "requiring affirmative actions to be taken to protect the trade secret"); Cal. Civ. Code

2  § 3426.2(c) ("In appropriate circumstances, affirmative acts to protect a trade secret may be

3  compelled by court order.").

4      The Fifth Amendment does not bar the Court from making such an order.  Courts have

5  expressly rejected the argument that "acts . . . taken by a private company in response to

6  government action . . . amount to state action" for purposes of the Fifth Amendment.  *Gilman*, 826

7  F.3d at 76.  Indeed, there is *no* authority suggesting that a Court, in a civil case and on the basis of

8  an extensive evidentiary record, cannot order an employer to do everything within its power to

9  return stolen materials, regardless of whether its employees take the Fifth.

10      **3.    Where an employer learns that its employee has stolen trade secrets
11          from a competitor and fails to, on its own initiative, use the full scope of
          its private authority over the employee to return all copies of the trade
12          secrets to their rightful owner, may the Court instruct the jury that it
          may consider such failure as a ratification by the employer of the theft?**
13          **<span style="color:red">Yes.</span>**

14      Under California law, an employer who fails to take reasonable remedial measures in

15  response to credible evidence that its employee is in possession of a competitor's trade secrets

16  ratifies the employee's conduct.  Cal. Civ. Code § 2310 ("A ratification can be made . . . by

17  accepting or retaining the benefit of the act, with notice thereof."); *Contemporary Servs. Corp. v.*

18  *Landmark Event Staffing Servs., Inc.*, --- Fed. Appx. ---, 2017 WL 393718, at *1 (9th Cir. Jan. 30,

19  2017) (unpublished) ("CSC raised a triable issue as to whether Landmark unlawfully ratified

20  employee Grant Haskell's misappropriation of CSC trade secrets when Landmark failed to cease

21  the use of CSC documents, disavow Haskell's conduct, or terminate Haskell's employment after

22  Landmark "had reason to know" of Haskell's misappropriation."); *Ajaxo Inc. v. E*Trade Grp.,*

23  *Inc.*, 135 Cal. App. 4th 21, 67-68 (2005) (conduct of an employee who misappropriated trade

24  secrets was ratified where ratifying company's "top management had the opportunity to know of

25  and either ignore or actually approve of" the theft); *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368,

26  1385 (2000) (finding triable issue where employer made "no real attempt to determine" whether

27  trade secret misappropriation had occurred).  There must be some consequence for Uber's failure

28

1    to—on its own initiative—use the full scope of its private authority over Mr. Levandowski to have

2    Waymo's stolen files returned (even after this Court's March 16 Order requiring the return of those

3    files (Dkt. 61)).  At the very least, the jury should be instructed that it may consider such failure as

4    a ratification by Uber of the theft.

5            It is also permissible to instruct the jury that it may draw an adverse inference against an

6    employer as a result of its employee's assertion of the Fifth Amendment.  *See, e.g.*, *RAD Serv.,*

7    *Inc.*, 808 F.2d at 275 (3d Cir. 1986) ("Nothing forbids imputing to a corporation the silence of its

8    personnel."); *Brinks*, 717 F.2d at 709-10 (drawing adverse inferences against a corporation based

9    on assertion of Fifth Amendment privilege by non-party employees and former employees); *Data*

10   *General Corp. v. Gruman Systems Support Corp.*, 825 F. Supp. 340, 353 (D. Mass. 1993);

11   *Armacell LLC v. Bostic*, 205 N.C. App. 467, at *12-14 (2010) (granting preliminary injunction

12   against employer based, in part, on adverse inferences drawn from employee's assertion of the

13   Fifth Amendment).  Although the Ninth Circuit has not considered this specific situation, the Third

14   Circuit's opinion in *RAD Services* is widely accepted as the leading authority on this question, and

15   has been cited in this District, including by this Court.  *E.g.*, *In re Tableware Antitrust Litig.*, No.

16   C-04-3514 VRW, 2007 WL 781960, at *4 (N.D. Cal. Mar. 13, 2007); *Aptix Corp. v. Quickturn*

17   *Design Sys., Inc.*, No. 98–00762, 2000 WL 852813, at *21 (N.D. Cal. Jun. 14, 2000) (Alsup, J.),

18   *vacated in part on other grounds*.   This principle also informs the permissibility of a jury

19   instruction that Uber has ratified Mr. Levandowski's conduct.

20                                         **CONCLUSION**

21           For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion in

22   all respects.

23

24   DATED:  May 26, 2017                    QUINN EMANUEL URQUHART & SULLIVAN,
                                             LLP
25

26                                     By        */s/Charles K. Verhoeven*
                                               Charles K. Verhoeven
27                                             Attorneys for WAYMO LLC

28