MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel.: 415.268.7000; Fax: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Tel.: 202.237.2727; Fax: 202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S RESPONSE TO COURT'S QUESTIONS (DKT. 471)**<br><br>Date:　June 7, 2017<br>Time:　10:00 a.m.<br>Ctrm:　8, 19th Floor<br>Judge:　The Honorable William H. Alsup<br><br>Trial Date: October 2, 2017 |

DEFENDANTS' UBER TECHNOLOGIES, INC., OTTOMMOTTO LLC'S RESPONSE TO DKT. 471
Case No. 3:17-cv-00939-WHA

Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") hereby submit this response to the Court's questions (Dkt. 471), which were issued in response to Anthony Levandowski's motion to intervene and modify the Court's preliminary injunction order (Dkt. 466).

Uber takes no position on Mr. Levandowski's underlying motion. Uber's responses to the Court's three questions are as follows:

**1. When an employee steals and retains a competitor's trade secrets, may the employer, upon learning of the theft, direct the employee to make it right with the competitor and to return all copies of the trade secrets to the competitor on pain of adverse employment action, up to and including termination? Does the Fifth Amendment prevent such private action?**

It is Uber's understanding that the Fifth Amendment does not prevent such private action. While Uber has not located any Ninth Circuit authority on point, lower courts have found an employer, acting without governmental coercion or influence, to be free to fire an employee who invoked the Fifth Amendment. *See Gomez v. Garda CL Great Lakes, Inc.*, 76 F. Supp. 3d 788, 795 (N.D. Ill. 2014); *United States v. Goodpaster*, 65 F. Supp. 3d 1016, 1025 (D. Or. 2014). More generally, Uber's understanding is informed by the case law holding that the Fifth Amendment generally "proscribes ***state*** intrusion to extract self-condemnation." *Couch v. United States*, 409 U.S. 322, 327 (1973) (emphasis added); *see also Pub. Utils. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952) (the First and Fifth Amendments "concededly apply to and restrict only the Federal Government and not private persons"); *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 156 (1978) ("[M]ost rights secured by the Constitution are protected only against infringement by governments").[1]

Even though the Fifth Amendment does not, strictly speaking, prevent a private employer like Uber from terminating an employee for invoking his Fifth Amendment rights, that employer may still exercise the discretionary judgment to respect the employee's invocation of his Fifth Amendment rights,

---

[1] In Uber's demonstrative slides from the May 3 oral argument, we included a quote from *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) stating that "individuals cannot be forced to waive their Fifth Amendment rights against self-incrimination by threats that their employment will be terminated." This quote did not specify whether the Fifth Amendment violation would depend on whether the threat of terminating employment involved state or private action. However, the case the Ninth Circuit cited for that proposition—*Lefkowitz v. Turley*, 414 U.S. 70, 82 (1973)—concerned state action (the award of government contracts). Other Supreme Court authority on this point forbids the government from firing its employees for invoking the Fifth Amendment. *E.g.*, *Garrity v. New Jersey*, 385 U.S. 493 (1967) (state police officers); *Slochower v. Bd. of Higher Educ. of N.Y.C.*, 350 U.S. 551 (1956) (professor employed by a city college). Uber withdraws any reliance on that quote from *Glanzer*.

and may choose to avoid (or postpone) making any final termination decision based on the invocation of those rights.

**2. In such circumstances, may a court order the employer to exercise the full scope of its private authority over the employee to cause the employee to return all copies of the stolen trade secrets? Does the Fifth Amendment bar such an order?**

Uber submits that the Fifth Amendment is violated by a court order requiring an employer to terminate an employee for asserting his Fifth Amendment rights. Uber chose not to appeal or seek reconsideration of the order on that basis, but that position as advanced by Mr. Levandowski appears well founded and supported.

**3. Where an employer learns that its employee has stolen trade secrets from a competitor and fails to, on its own initiative, use the full scope of its private authority over the employee to return all copies of the trade secrets to their rightful owner, may the Court instruct the jury that it may consider such failure as a ratification by the employer of the theft?**

No. It would be an error to give such an instruction.

The question refers to the failure of the employer to "use the full scope of its private authority over the employee to return all copies of the trade secrets to their rightful owner." We understand this to be a reference to a decision by the employer not to terminate the employee if the employee fails "to return all copies of the trade secrets to their rightful owner." Such a decision, on its own, cannot constitute a factual basis for finding "ratification." Thus, an instruction that a jury "may" make a finding of ratification based on that fact alone would be improper.

Under California law, a "ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or where an oral authorization would suffice, ***by accepting or retaining the benefit of the act, with notice thereof***." CAL. CIV. CODE § 2310 (emphasis added). In this case, such a finding requires more than the fact that Uber has continued to employ Mr. Levandowski. It would require evidence of Uber actually "accepting or retaining the benefit of" the 14,000 allegedly downloaded files. *Meyer v. Glenmoor Homes, Inc.*, 246 Cal. App. 2d 242, 257 (1966) (ratification instruction against corporation was not warranted where "there was no evidence to show any corporate act retroactively authorizing" an agent's actions and "there were no benefits bargained for and received by the corporation"); *Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of N.Y.*, No. 06-CV-1164, 2010 WL 3907489, at *19 (N.D.N.Y. Sept. 30, 2010) (dismissing allegations of trade-

secret theft against a competitor, even where former business partner may have misappropriated trade secrets, where plaintiff failed to establish that competitor, "knowing of a tort committed for its benefit, ratified it").[2]

Mere failure to fire an employee does not by itself amount to ratification of that employee's action under California law. This has been true for a hundred years. In *Edmunds v. Atchison, T. & S.F. Ry. Co.*, the California Supreme Court held that "the omission to dispense with the services of the offender, standing by itself and unsupported by any other circumstances indicating the employer's approval of his course, is never sufficient to establish ratification." 174 Cal. 246, 249 (1917). The *Edmunds* court reversed a trial verdict below where the court had given an erroneous jury instruction that suggested that knowledge of the tort in combination with failure to terminate constituted ratification. *Id.*

The *Edmunds* rule holds particularly true where an employee's "special skill and experience" justifies his retention notwithstanding the existence of unproven allegations against him. *Sullivan v. Matt*, 130 Cal. App. 2d 134, 144 (1955) ("It would be unfair to both the employer and employee to hold that the mere retention of an employee in service, whose special skill and experience were necessary, is a ratification of his malicious acts committed within the course of his employment"). Actions short of termination that sequester the employer from the alleged wrongdoing can also negate any finding of ratification. *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1203 (E.D. Cal. 2009) (citing *Fretland v. Cty. of Humboldt*, 69 Cal. App. 4th 1478, 1491 (1999)) (finding no ratification where employer issued a "letter of warning" to the employee—"an employer need not always terminate an employee in order to avoid ratification."); *see also Chavez v. City of Hayward*, No. 14-CV-00470-DMR, 2015 WL 3833536, at *8 (N.D. Cal. June 19, 2015) (granting summary judgment of no ratification where there was no evidence that the principal knew of the agent's actions while they were occurring).

---

[2] The same is true if the question is framed as imputing knowledge to Uber. Where an employer does nothing more than fail to take action concerning an employee's actions pre-dating his employment, the employee's prior wrongful acts cannot be imputed to the employer. *See Rankine v. Roller Bearing Co. of Am.*, No. 12-CV-2065-MMA BLM, 2013 WL 5944248, at *5 (S.D. Cal. Nov. 5, 2013), *aff'd sub nom. Rankine v. Does, 1-10*, 628 F. App'x 494 (9th Cir. 2015) (rejecting claim of imputed knowledge where alleged misappropriation occurred before relevant agreement was executed).

Misappropriation of trade secrets requires that the allegedly misappropriating party—here, Uber—actually acquire, disclose, or use the alleged trade secrets. 18 U.S.C. § 1839 (defining "misappropriation" to include "acquisition", "disclosure or use"); CAL. CIV. CODE § 3426.1 (same). An employee's independent theft of a trade secret does not amount to misappropriation by an employer where the employer never acquired, disclosed, or used the trade secret allegedly stolen by the employee. *Central Valley Gen. Hosp. v. Smith* 162 Cal. App. 4th 501, 528 (2008) (defendant's mere possession of trade secret, without more, does not provide a basis for a preliminary injunction for claim of actual or threatened misappropriation); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 230 (2010), *as modified on denial of reh'g* (May 27, 2010) *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) (denying plaintiff's motion for summary judgment where defendant "never *had* the trade secret whose theft is the subject matter of this action") (emphasis in original).[3]

Thus, the failure to threaten termination of employment (or the failure to actually terminate employment) is not sufficient evidence on which a jury could find ratification. For that reason alone, the answer to Question 3 is "No." But there is an additional reason the answer must be "No." The instruction posited by the Court's question—that the jury "may consider such failure as a ratification by the employer of the theft"—is precisely the kind of "thumb on the scale" instruction that courts routinely reject because they unduly emphasize one side's case themes or view of the evidence. *Cf. Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 681 (W.D. Wash. 2014) (rejecting inference instruction as "too strong a thumb on the scales of justice"). As a general matter, the Ninth Circuit has "question[ed] the effectiveness of permissive inference instructions"—those that allow, but do not require, the jury to find

---

[3] To suggest, as the Court's hypothetical does, that a failure to fire an invoking employee alone constitutes an employer's ratification of prior trade-secret misappropriation is also inconsistent with California's "complete" rejection of the inevitable disclosure doctrine. *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1464 (2002). In recognition of its strong public policy permitting employees to move from one competitor to another, California refuses to allow a finding of threatened trade-secret misappropriation based solely on an assertion that the employee's new job duties will inevitably cause him to rely upon trade secrets, even where there is evidence that the former employee actually downloaded files from his previous employer. *See FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1280 (2009) (finding such an argument to be a "restatement of the inevitable disclosure doctrine which is not the law in California").

a conclusion if certain predicate facts are shown—noting:

> They are most effective when least appropriate: where the evidence supporting the inference is sparse and the inference is most crucial to the government's case. Where extensive background facts support the inference and reduce the likelihood that the verdict will be tainted, the instruction is far less likely to play a significant role in the jury's deliberations. Perhaps we are emphasizing the opposite ends of a spectrum; there may be a middle ground where a permissive inference instruction assists the jury without being overly intrusive or misleading. Still, closing argument affords the government and defense counsel ample opportunity to argue which inferences may be drawn from the evidence. By inviting the district court to join in this process, the government risks introducing error, without gaining much tangible benefit.

*United States v. Warren*, 25 F.3d 890, 899–900 (9th Cir. 1994). Telling the jury that it may infer a conclusion based on certain "isolated facts," at the expense of others, risks invading the province of the jury as fact-finder, because such an instruction implies that the court had "prejudged a conclusion which the jury should reach of its own volition," "risks conveying the message to the jury" that the judge "has weighed the evidence in his own mind," and creates "the risk that the jury would abdicate its responsibility to evaluate the evidence in deference to the judge." *United States v. Rubio-Villareal*, 967 F.2d 294, 298–99 (9th Cir. 1992) (remanding for a new trial after a permissive-inference instruction that the jury "could infer knowledge" from two facts) (citation and internal quotation marks omitted).

Ratification "is a question of fact for the jury". *Chavez*, 2015 WL 3833536, at *8. As noted above, failure to fire an employee who committed alleged wrongdoing does not itself lead to a ratification; instead, it may only be considered amongst other evidence to determine whether the tort at issue has been ratified, including whether a principal has actually "accepted or retained" the benefit of an agent's alleged tort. Emphasis of just one factor amongst the constellation required to find ratification would be precisely the kind of emphasis on a few facts, at the expense of others, that the Ninth Circuit has "roundly criticized." *Rubio-Villareal*, 967 F.2d at 298.

Dated: May 26, 2017                                        Respectfully Submitted,

                                                            MORRISON & FOERSTER LLP

                                                            BOIES SCHILLER FLEXNER LLP

By:  /s/ *Hamish P.M. Hume*
      Hamish P.M. Hume
      Attorneys for Defendants
      UBER TECHNOLOGIES, INC.
      and OTTOMOTTO LLC