1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   ERIC A. TATE (CA SBN 178719)
    ETate@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Tel.: 415.268.7000; Fax: 415.268.7522
6

7   KAREN L. DUNN (*Pro Hac Vice*)
    kdunn@bsfllp.com
8   HAMISH P.M. HUME (*Pro Hac Vice*)
    hhume@bsfllp.com
9   BOIES SCHILLER FLEXNER LLP
    1401 New York Avenue, N.W.
10  Washington DC  20005
    Tel.: 202.237.2727; Fax: 202.237.6131
11

12  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
13  and OTTOMOTTO LLC

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16               SAN FRANCISCO DIVISION

17  WAYMO LLC,                          | Case No.      3:17-cv-00939-WHA

18            Plaintiff,                | **DEFENDANTS UBER
                                        | TECHNOLOGIES, INC. AND
19       v.                             | OTTOMOTTO LLC'S REPLY IN
                                        | SUPPORT OF MOTION TO STAY
20  UBER TECHNOLOGIES, INC.;            | PENDING RESOLUTION OF
    OTTOMOTTO LLC; OTTO TRUCKING LLC,   | DEFENDANTS' APPEAL OF
21                                      | ORDER DENYING MOTION TO
            Defendants.                 | COMPEL ARBITRATION OF,
22                                      | AND TO STAY, TRADE SECRET
                                        | AND UCL CLAIMS**
23
                                        | Date:   June 7, 2017
24                                      | Time:   9:00 a.m.
                                        | Ctrm:   8, 19th Floor
25                                      | Judge:  Honorable William H. Alsup
26                                      | Trial Date: October 2, 2017
27

28

1

# TABLE OF CONTENTS

2

I.      INTRODUCTION ............................................................................................................... 1

II.     DEFENDANTS' MOTION TO STAY RAISES SERIOUS ISSUES OF LAW. .............. 1

        A.      Waymo Attempts to Distort The Meaning of "Serious Legal Questions."............. 1

        B.      Defendants' Agreement That *Goldman* and *Kramer* Control the Standard in
                This Case Does Not Mean That There Are No Serious Legal Questions. .............. 3

        C.      Waymo Misconstrues or Fails to Address Defendants' Arguments
                Demonstrating Serious Legal Questions. ................................................................ 4

                i.      Appellate Review Is Required to Confirm Whether Reliance Is
                        Truly Required Under Both *Kramer* Circumstances ................................. 5

                ii.     Appellate Review Is Required to Determine Whether the District
                        Court's Citation of Waymo's Post-Hoc Disavowal of Reliance Was
                        Proper. ......................................................................................................... 6

                iii.    Appellate Review Is Required to Define Intertwinement and
                        Intimate Connectedness Under *Kramer* ..................................................... 8

        D.      This Case Raises Serious Questions Regarding the Law's Application to
                Undisputed Facts ..................................................................................................... 8

III.    DEFENDANTS WILL BE IRREPARABLY HARMED IF THE CASE
        PROCEEDS ..................................................................................................................... 10

IV.     WAYMO WILL NOT BE HARMED IF THE CASE IS STAYED ............................... 11

V.      DEFENDANTS HAVE SHOWN THAT A STAY WOULD BE IN THE PUBLIC
        INTEREST ....................................................................................................................... 13

VI.     CONCLUSION ................................................................................................................ 14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Acasio v. San Mateo Cnty.*,
No. 14-CV-04689-JSC, 2015 WL 5568345 (N.D. Cal. Sept. 22, 2015) ................................. 12

4

*Alascom, Inc. v. ITT N. Elec. Co.*,
727 F.2d 1419 (9th Cir. 1984)................................................................................................ 11

5

*Antonelli v. Finish Line, Inc.*,
No. 5:11-CV-03874 EJD, 2012 WL 2499930 (N.D. Cal. June 27, 2012) ............................. 11

6

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)............................................................................................................... 14

7

*Azoulai v. BMW of N. Am. LLC*,
No. 16-CV-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ............................... 12

8

9

*Bradberry v. T-Mobile USA, Inc.*,
No. C 06 6567 CW, 2007 WL 2221076 (N.D. Cal. Aug. 2, 2007)........................................... 4

10

*Britton v. Co-op Banking Group*,
916 F.2d 1405 (9th Cir. 1990)......................................................................................... 11, 14

11

*Eberle v. Smith*,
No. 07-CV-0120 W WMC, 2008 WL 238450 (S.D. Cal. Jan. 29, 2008)............................... 13

12

*Goldman v. KPMG LLP*,
173 Cal. App. 4th 209 (2009) ...................................................................................... 3, 4, 7, 9

13

14

*Gray v. Golden Gate Nat. Recreational Area*,
No. C 08-00722 EDL, 2011WL 6934433 (N.D. Cal. Dec. 29, 2011) ..................................... 11

15

*Guifu Li v. A Perfect Franchise, Inc.*,
No. 5:10-CV-01189-LHK, 2011WL 2293221 (N.D. Cal. June 8, 2011) .................................. 2

16

*Harnish v. Frankly Co.*,
No. 5:14-CV-02321-EJD, 2015 WL 1064442 (N.D. Cal. Mar. 11, 2015) ............................... 4

17

*Jones v. Deutsche Bank AG*,
No. C 04 05357 JW, 2007 WL 1456041 (N.D. Cal. May 17, 2007) .................................... 8, 9

18

19

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013).......................................................................................... passim

20

*Lair v. Bullock*,
697 F.3d 1200 (9th Cir. 2012)................................................................................................... 2

21

*Laster v. T-Mobile USA, Inc.*,
No. 05CV1167 DMS (AJB), 2008 WL 5377635 (S.D. Cal. Nov. 4, 2008) ............................. 2

22

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011)..................................................................................... 2, 10, 11

23

24

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
109 Cal. App. 4th 1705 (2003) .................................................................................. 3, 4, 5, 14

25

*Molnar v. NCO Fin. Sys., Inc.*,
No. 13-CV-00131-BAS JLB, 2015 WL 1906346 (S.D. Cal. Apr. 20, 2015) ........................... 4

26

*Morse v. Servicemaster Glob. Holdings, Inc.*,
No. C 08-03894, 2013 WL 123610 (N.D. Cal. Jan. 8, 2013) .................................................. 2

27

*Murphy v. DirecTV, Inc.*,
No. 2:07-CV-06465-FMC, 2008 WL 8608808 (C.D. Cal. July 1, 2008) ............................. 3, 4

28

*Nken v. Holder*,
 556 U.S. 418 (2009) .......................................................................................................... passim

*Richards v. Ernst & Young LLP*,
 No. C-08-04988 RMW, 2012 WL 92738 (N.D. Cal. Jan. 11, 2012) ...................................... 3, 9

*Richards v. Ernst & Young, LLP*,
 744 F.3d 1072, 1074 (9th Cir. 2013) ..................................................................................... 9

*Rodriguez v. Shen Zhen New World I LLC*,
 No. CV 13-02959-RSWL, 2014 WL 908464 (C.D. Cal. Mar. 6, 2014) .................................... 3

*Roe v. SFBSC Mgmt., LLC*,
 No. 14-CV-03616-LB, 2015 WL 1798926 (N.D. Cal. Apr. 17, 2015) .................................... 11

*Steiner v. Apple Computer, Inc.*,
 No. C 07-04486 SBA, 2008 WL 1925197 (N.D. Cal. Apr. 29, 2008) ........................................ 2

*Stern v. Cingular Wireless Corp.*,
 No. CV 05 8842 CAS, 2006 WL 2790243 (C.D. Cal. Sept. 11, 2006) .................................... 13

*Torbit, Inc. v. Datanyze, Inc.*,
 No. 5:12-CV-05889-EJD, 2013 WL 572613, at *4 (N.D. Cal. Feb. 13, 2013) ..................... 3, 14

*Turtle Ridge Media Grp., Inc. v. Pac. Bell Directory*,
 140 Cal. App. 4th 828 (2006) ...................................................................................... 3, 4, 10

*Wallis v. Centennial Ins. Co.*,
 No. CIV. 08-02558 WBS, 2012 WL 1552766 (E.D. Cal. May 1, 2012) .................................... 4

*Ward v. Estate of Goossen*,
 No. 14-CV-03510-TEH, 2014 WL (N.D. Cal. Dec. 22, 2014) ............................................. 2, 10

*Zaborowski v. MHN Gov't Servs., Inc.*,
 No. C 12-05109 SI, 2013 WL 1832638 (N.D. Cal. May 1, 2013) ........................................ 2, 11

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY
Case No. 3:17-cv-00939-WHA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      **INTRODUCTION**

Defendants seek a limited stay for the purpose of appealing the Court's ruling on its Motion to Compel Arbitration.  They do not seek to stay enforcement of the preliminary injunction issued by this Court, including the additional expedited discovery ordered by this Court and clarified by Magistrate Judge Corley's Order re: Paragraph Six of District Court's PI Order.  (Dkt. 433, 441.)

Waymo mischaracterizes the scope of Defendants' proposed stay and thus claims supposed harm that simply would not occur as a result of the stay.  Waymo asserts that granting the requested stay would "open the door to an argument that Waymo may not seek provisional relief until after the appeal is resolved and the stay is lifted." (Opp. at 12.)  But Defendants have not requested a stay of any additional provisional relief Waymo may seek.  Waymo also complains that the stay would prevent it from conducting "critical" third-party discovery (*id.*), but does not mention that Magistrate Judge Corley already ordered that expedited discovery–which Defendants do not seek to stay–can include third-party discovery.  (Stein Reply Decl., Ex. 1 (5/25/17 Hearing Transcript) at 60:8-11; *see also* Dkt. 441 (authorizing discovery as to Gorilla Circuits).)  Nor have Defendants requested a stay of any powers the Court has at its disposal to hold the parties to their expedited discovery obligations.

Given the limited scope of the stay sought by Defendants, and that Defendants have identified a likelihood of success on serious legal issues raised by its appeal to the Federal Circuit, the equities tip sharply in Defendants' favor.  *See Nken v. Holder*, 556 U.S. 418, 434 (2009).  Defendants have thus demonstrated that their appeal of this Court's denial of their Motion to Compel Arbitration merits the requested stay.

II.     **DEFENDANTS' MOTION TO STAY RAISES SERIOUS ISSUES OF LAW.**

A.      **Waymo Attempts to Distort The Meaning of "Serious Legal Questions."**

Although Waymo does not dispute that a stay is warranted where an appeal raises "serious legal questions," it attempts to distort the meaning of "serous legal questions" through its misreading and misapplication of unpublished district court decisions.  According to Waymo, *Morse v. Servicemaster Global Holdings* holds that "Uber's appeal must be one that raises

1

1    *genuine matters of first impression* within the Ninth Circuit' or one that 'may implicate a

2    constitutional question.'"  (Opp. at 3 (quoting *Morse v. Servicemaster Glob. Holdings, Inc.*, No. C

3    08-03894, 2013 WL 123610, at *3 (N.D. Cal. Jan. 8, 2013) (emphasis added by Waymo).)  This

4    deliberately misreads *Morse*, which actually states: "*Often* a 'substantial case" is one that raises

5    genuine matters of first impression within the Ninth Circuit.  *Other times*, the issue on appeal *may*

6    implicate a constitutional question . . . ."  *Morse*, 2013 WL 123610, at *3 (emphases added).  In

7    other words, the *Morse* decision simply provided nonexclusive examples of appeals that would

8    raise serious legal questions.[1]

9         In fact, in order to satisfy the "serious legal question" requirement, "the movant need only

10   raise a serious legal issue, *i.e.,* one that is not frivolous."  *Laster v. T-Mobile USA, Inc.*, No.

11   05CV1167 DMS (AJB), 2008 WL 5377635, at *2 (S.D. Cal. Nov. 4, 2008); *see also Steiner v.*

12   *Apple Computer, Inc.*, No. C 07-04486 SBA, 2008 WL 1925197, at *3 (N.D. Cal. Apr. 29, 2008)

13   (Armstrong, J.) (crediting defendant's argument that the question presented "was a substantial

14   one, and certainly not frivolous, in essence because reasonable persons could disagree as to the

15   answer").  In applying this standard, courts in this circuit have regularly found that appeals of a

16   denied motion to compel arbitration present serious or substantial legal questions that merit a stay

17   by the district court, even without a finding that the issue was one of "first impression."  *See, e.g.,*

18   *Ward v. Estate of Goossen*, No. 14-CV-03510-TEH, 2014 WL 7273911, at *3 (N.D. Cal. Dec. 22,

19   2014) (Henderson, J.) (finding "substantial question" where interpretation of the potentially

20   applicable arbitration provisions was "especially complicated"); *Zaborowski v. MHN Gov't*

21   *Servs., Inc.*, No. C 12-05109 SI, 2013 WL 1832638, at *2 (N.D. Cal. May 1, 2013) (Illston, J.)

22   (finding "substantial question" where courts were still working to determine "the exact contours"

23   _____

24   [1] Waymo also quotes the statement in *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011WL 2293221, at *3 (N.D. Cal. June 8, 2011) that "[f]or a legal question to be '*serious*,' it must be a question going to the merits so serious, substantial, difficult and doubtful, as to make

25   the issue ripe for litigation and deserving of more deliberate investigation."  (Opp. at 3 (emphasis added by Waymo).)  However, this unpublished district court decision was issued before the

26   Ninth Circuit's decision in *Lair v. Bullock*, 697 F.3d 1200 (9th Cir. 2012), which is the controlling precedent.  Additionally, in making this particular statement, the district court in

27   *Guifu* relied on and quoted from a nonbinding Tenth Circuit decision.  The standard articulated in *Lair* and *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011), are controlling, not this alternative

28   standard delineated by the Tenth Circuit.

1    of the applicable legal standard); *Richards v. Ernst & Young LLP*, No. C-08-04988 RMW, 2012

2    WL 92738, at *2 (N.D. Cal. Jan. 11, 2012) (Whyte, J.) (finding "substantial question" where the

3    court recognized the potential for the facts regarding waiver to be weighed differently).

4         Here, as demonstrated in Defendants' opening brief and discussed further below, this

5    appeal concerns both (a) serious legal issues as to how the equitable estoppel doctrine should be

6    applied to the undisputed facts and claims being made in this case, and (b) important issues of

7    first impression regarding that doctrine.

8    **B.    Defendants' Agreement That *Goldman* and *Kramer* Control the Standard in This Case Does Not Mean That There Are No Serious Legal Questions.**

9         Waymo repeatedly states and implies that there is no serious legal question because

10   Defendants agree with the Court that the "*Goldman*/*Kramer* standard" applies to its motion.  (*See*

11   Opp. at 4-5.)  There is no dispute that the decisions in *Kramer*, *Murphy*, and *Goldman* adopted the

12   applicable two-circumstance test to determine whether California's equitable estoppel doctrine

13   compels arbitration.  *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013); *Murphy*

14   *v. DirecTV, Inc.*, No. 2:07-CV-06465-FMC, 2008 WL 8608808 (C.D. Cal. July 1, 2008);

15   *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209 (2009).  There is, however, a dearth of appellate

16   authority regarding the meaning and application of these two circumstances, including the

17   differences between them (and whether the first circumstance actually consists of two

18   independent circumstances, as shown by *Goldman*'s and *Kramer*'s use of an "or" in describing

19   the two ways the first circumstance can be met).  And there are at least four decisions that are

20   factually similar to this case, and that support Uber's motion.  *See Metalclad Corp. v. Ventana*

21   *Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705 (2003); *Turtle Ridge Media Grp., Inc. v.*

22   *Pac. Bell Directory*, 140 Cal. App. 4th 828 (2006), *as modified* (July 20, 2006); *Torbit, Inc. v.*

23   *Datanyze, Inc.*, No. 5:12-CV-05889-EJD, 2013 WL 572613, at *4 (N.D. Cal. Feb. 13, 2013)

24   (Davila, J.); *Rodriguez v. Shen Zhen New World I LLC*, No. CV 13-02959-RSWL, 2014 WL

25   908464, at *1 (C.D. Cal. Mar. 6, 2014).  Although these cases are relatively few in number, they

26   demonstrate that Defendants should prevail on the merits of their appeal, and their relevance to

27   the appeal is made even greater by the fact that this Court's Order failed to distinguish them.

28   Further, because **California state law** governs the determination of equitable estoppel in this case,

1    *Metalclad* and *Turtle Ridge* are of paramount importance; determining how the holdings in those

2    cases apply to the facts of this case raise serious legal issues on which Defendants have a

3    substantial likelihood of success.

4         Waymo also cites several cases in support of its argument that an order does not raise

5    serious legal questions when the order "was based on controlling Ninth Circuit authority."[2]  (Opp.

6    at 5; *see also* Opp. at 5-6 (discussing cases).)  None of these cases is analogous.  In one of those

7    cases, *Bradberry v. T-Mobile USA, Inc.*, the district court found the first *Nken* factor met, which is

8    of course of no help to Waymo.  No. C 06 6567 CW, 2007 WL 2221076, at *5 (N.D. Cal. Aug. 2,

9    2007) (Wilken, J.).  All of the remaining cases cited by Waymo on this subject involved issues of

10   statutory interpretation that the Ninth Circuit had routinely addressed in the past.  In both *Molnar*

11   and *Harnish*, the movants asked for a stay in order to obtain clarification from the Federal

12   Communications Commission where "Ninth Circuit courts have routinely ruled on this issue of

13   statutory interpretation."  *Molnar v. NCO Fin. Sys., Inc.*, No. 13-CV-00131-BAS JLB, 2015 WL

14   1906346, at *6 (S.D. Cal. Apr. 20, 2015); *see also Harnish v. Frankly Co.,* No. 5:14-CV-02321-

15   EJD, 2015 WL 1064442, at *4 (N.D. Cal. Mar. 11, 2015) ("the Ninth Circuit has already stated

16   that the statutory language is clear and unambiguous"); *Wallis v. Centennial Ins. Co.*, No. CIV.

17   08-02558 WBS, 2012 WL 1552766, at *3 (E.D. Cal. May 1, 2012) (noting that the Ninth Circuit

18   had already "decided a substantially similar motion").  That is not the case here.  There is no case

19   law that dictates the result reached by the Court here, let alone a body of case law that has

20   routinely done so.  Moreover, there is substantial case law supporting Uber's motion.

21        Waymo's argument is simply wrong.  There is no case holding that just because two

22   parties agree on the Ninth Circuit case law that governs, there is no room for a "serious legal

23   question" over how that case law should be applied to the facts of a particular case.

24   **C.   Waymo Misconstrues or Fails to Address Defendants' Arguments Demonstrating Serious Legal Questions.**

25        In their opening brief, Defendants explained why there are several serious legal issues

26   _____

27   [2] It is worth noting that California Court of Appeal decisions, such as *Goldman*, *Metalclad*, and *Turtle Ridge*, are the controlling authority here because the equitable estoppel doctrine is an issue of California state law.  While *Kramer* and *Murphy* are relevant authority, they simply identify

28   the rule established by California courts and under California law.

1    presented in their appeal to the Federal Circuit.  Waymo either misconstrues or fails to address all

2    of these arguments, and has been unable to point to a single case that definitively resolves any

3    serious legal question identified in Defendants' opening brief.

4                      **i.      Appellate Review Is Required to Confirm Whether Reliance Is Truly
                                 Required Under Both *Kramer* Circumstances**

5

6            As explained in Defendants' opening brief, this Court's Order denying Defendants'

7    Motion to Compel Arbitration conflates *Kramer* by effectively reading the word "or" out of

8    *Kramer*'s first circumstance and reading reliance into *Kramer*'s second circumstance.  (Mot. at 3-

9    4 (quoting Dkt. 425 at 5, 6).) Thus, there are two serious legal questions related to this Court's

10   collapse of the entire *Kramer* standard into a question of reliance.  (*Id.*)

11           The first question is how to read *Kramer*'s description of the first circumstance in which

12   equitable estoppel has been held to apply, which *Kramer* described as follows: "a signatory must

13   rely on the terms of the written agreement in asserting its claims against the nonsignatory *or* the

14   claims are intimately founded in and intertwined with the underlying contract," irrespective of

15   whether the signatory expressly relies on the terms of the written agreement.  705 F.3d at 1128.

16   Defendants contend that the existence of an "or" in this description means that this circumstance

17   is satisfied if "the claims are intimately founded in and intertwined with the underlying contract."

18   That is the plain reading of the language used in *Kramer*, and is supported by the California case

19   law.

20           Waymo responds that "this argument . . . was correctly rejected by the Court."  (Opp. at 7.)

21   But that misses the point.  This Court may have disagreed with Defendants, but that does not

22   mean Defendants have failed to present a "serious legal question."   There is no binding authority

23   rejecting Defendants' argument.  And the plain reading of *Kramer* supports it.

24           Waymo erroneously claims that "Uber cites no case that supports" such a distinction.

25   (Opp. at 7.)  In addition to *Kramer*, Defendants cite *Metalclad* in their motion.  (Mot. at 3-4.)

26   Thus, Defendants' argument presents the serious legal question of whether, as the Court's

27   analysis implies, "reliance" on an underlying contract is required for equitable estoppel to apply,

28   or whether, following the text of *Kramer*, "rely on," "intimately founded in and intertwined with,"

1    and "founded in or intimately connected with" are each separately adequate to trigger the doctrine.

2    That is a substantial question for the appellate court.

3           The second issue raised by Defendants is whether reliance is required to satisfy the second

4    circumstance that *Kramer* identifies as triggering equitable estoppel, which makes absolutely no

5    mention of "rely" or "reliance" but instead says the claim is based on allegations of "concerted

6    misconduct" that are "founded in *or* intimately connected with" the obligations of the underlying

7    contract.  705 F.3d at 1129.  With respect to this issue, Waymo again disregards the explicit

8    wording of *Kramer* and that the second *Kramer* circumstance would be duplicative of the first if

9    it required reliance.  Waymo concludes that "serious minds" cannot disagree as to whether the

10   Ninth Circuit meant "reliance" when it instead said "founded in or intimately connected with."

11   (Opp. at 7.)  Waymo's response is simply that the Court "applied Ninth Circuit law to the facts of

12   this case" in reaching its decision.  (*Id.*)  The fact that this Court applied *Kramer*'s two

13   circumstances to this case is irrelevant to whether this Court *correctly* applied *Kramer* when it

14   added a reliance requirement into the second *Kramer* circumstance.  This issue is one of first

15   impression since no binding authority condones this approach.

16                    ii.        **Appellate Review Is Required to Determine Whether the District
                                 Court's Citation of Waymo's Post-Hoc Disavowal of Reliance Was**
17                               **Proper.**

18          This Court's Order relies on Waymo's representation at oral argument that it would no

19   longer make reference to its contracts with Levandowski to prove its claims, subject to certain

20   important conditions.  (*See* Dkt. 425 at 4, 5.)[3]  There is a serious legal question as to whether such

21   a representation should be credited in the court's estoppel analysis. (Mot. at 4-5.)  In fact, the

22   extent to which the Court should have relied on Waymo's post hoc disavowal at oral argument is

23   undeniably an issue of first impression (and it would be a serious legal issue even if it were not

24   one of first impression), and Waymo does not attempt to show otherwise.  Waymo's response that

25   this is "just a recasting" of Defendants' argument that "Waymo's claims against Uber cannot

26   exist absent proof that the Levandowski Agreements were breached" deliberately ignores the

27   _____

28   [3] Waymo now attempts another post hoc repudiation by suggesting that its representation at oral
     argument is "irrelevant," (Opp. at 8), despite the fact that it was relied on by this Court's Order.

1  legal issue raised in Defendants' opening brief.  (Opp. at 8.)  Waymo cites *zero* cases in which a

2  court permitted a party to go beyond the facts alleged in its complaint by disavowing at oral

3  argument any future reliance on the contract at issue.  To the contrary, the *Goldman* decision –

4  which Waymo cites numerous times throughout its brief – observed that courts evaluating

5  equitable estoppel arguments must "examine the facts alleged in the *complaints*."  173 Cal. App.

6  4th at 231 (emphasis added).

7       Moreover, there is a serious legal question created by the fact that the Court rejected the

8  arbitration motion based on Waymo's statement that it "would not rely" on the Levandowski

9  contracts given that (a) reliance does not equal "sue for breach of contract" but is a broader

10  concept that includes reliance on the obligations in the agreement (at a minimum, that is an issue

11  that the appellate court must resolve); (b) those contracts, in fact, do not make arbitration

12  dependent on whether the claim being advanced is one for breach of contract or one that relied on

13  contract obligations, (c) Waymo cannot deny that its claims are based on conduct that

14  Levandowski engaged in as an employee that, if true, breaches his employment contracts with

15  Google, and (d) Waymo is therefore trying to litigate this case *as if* there were no employment

16  contracts between Google and Levandowski, when in fact there *are* such contracts, Google

17  drafted those contracts, and those contracts require arbitration over "any dispute" arising under or

18  relating to Levandowski's employment relationship with Google.  Indeed, Waymo even reserved

19  the right to sue Levandowski for breach of the contracts if Defendants succeed on their motion to

20  compel arbitration.  (Stein Reply Decl., Ex. 2 (4/27/17 Hearing Transcript) at 11:15-12:1.)

21  Waymo also gave the most carefully worded disclaimer of reliance on the contracts, stating that it

22  reserved the right to rely on the contracts if Uber "open[s] the door"—a statement that is vague

23  enough to allow Waymo to use the contracts opportunistically in the future under the guise of

24  rebutting Defendants' defenses.  (Stein Decl., Ex. 1 (4/27/17 Hearing Transcript) at 5:20-22.)

25  These attempts by Waymo to navigate "reliance" all add further strength to the serious legal

26  issues present by Defendants' appeal, and give Defendants a substantial chance of success.

27

28

1

### iii. Appellate Review Is Required to Define Intertwinement and Intimate Connectedness Under *Kramer*

2

In their opening brief, Defendants also identified serious legal questions related to "what

3

would be sufficiently intertwined or intimate with a contract," and how to definitively resolve the

4

difference between the "founded in *and* intimately intertwined with the underlying contract"

5

standard of the first *Kramer* circumstance and the "founded in *or* intimately connected with the

6

obligations of the underlying contract" standard of the second. (Mot. at 5-6.) Instead of citing

7

binding authority answering these questions and demonstrating that these are not issues of first

8

impression, Waymo responds by misconstruing *Kramer* and again attempts to collapse the entire

9

*Kramer* standard into a question of reliance by reading the word "or" out of *Kramer*. (Opp. at 9-

10

10.)

### D. This Case Raises Serious Questions Regarding the Law's Application to Undisputed Facts

11

12

In their opening brief, Defendants argued that an appeal raises serious legal questions

13

where it depends on the "'extremely fact dependent'" analysis of the "'degree of interrelatedness

14

necessary to allow a non-signatory to compel arbitration based on equitable estoppel.'" (Mot. at 6

15

(quoting *Jones v. Deutsche Bank AG*, No. C 04 05357 JW, 2007 WL 1456041, at *2 (N.D. Cal.

16

May 17, 2007) (Ware, J.)).) Waymo does not dispute that the Order's interrelatedness inquiry is

17

dependent on the undisputed factual allegations and circumstances of this case. It tries to avoid

18

the conclusion that follows (i.e., that Defendants' appeal presents a "serious question"), but its

19

arguments fail.

20

First, Waymo argues, "whether a decision is fact-dependent is irrelevant for the stay

21

analysis," because the first *Nken* factor requires a serious legal question rather than disputed

22

factual findings. (Opp. at 10.) Similarly, Waymo argues that *Jones* granted a stay because

23

"substantial questions were found because courts were split on the applicability of equitable

24

estoppel," (*id*. at 11), rather than a finding of disputed facts. But Defendants never argued that

25

*disputed* facts in this case indicate a serious legal question for the appeal. Defendants' argument

26

was that the analysis of *undisputed facts* makes its appeal *fact-specific*, and one on which serious

27

legal minds can reasonably disagree about the application of those facts under *Kramer*'s two

28

circumstances.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY
Case No. 3:17-cv-00939-WHA

1    For instance, *Jones* noted that some courts had differed on whether to compel arbitration

2    based on the doctrine of equitable estoppel when a plaintiff alleged that several tax shelter

3    promoters acted in concert to defraud the plaintiff, where some of the promoters had arbitration

4    agreements with plaintiff and some were non-signatories who attempted to enforce the arbitration

5    clauses in those other agreements. *Jones*, 2007 WL 1456041, at \*2. *Jones* noted that the

6    interrelatedness inquiry was "extremely fact dependent" and that there were serious legal

7    questions because the "Ninth Circuit has not yet ruled on this issue" - i.e., on the application of

8    the equitable estoppel doctrine to such facts. *Id.*  Similarly, in *Richards*, the district court held

9    that it was appropriate to take defendant's conduct, about which there was no factual dispute, into

10   account in deciding whether defendant knowingly waived its arbitration right. *Richards*, 2012

11   WL 92738, at \*2*; see also Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013)

12   (discussing district court decision).  The district court held that the case presented a substantial

13   legal question because the appellate court could hold the conduct "either irrelevant, or insufficient

14   to carry the heavy burden of proving waiver." *Richards*, 2012 WL 92738, at \*2.  Like *Jones* and

15   *Richards*, in this case the Ninth Circuit has not ruled specifically as to whether a party's repeated

16   invocation of obligations set forth in contracts containing arbitration provisions in its complaint

17   demonstrates sufficient interrelatedness under *Kramer*.  That alone highlights the presence of

18   serious legal questions as to the application of law to the facts in this case.

19   Second, Waymo argues that *Jones* is irrelevant because it was decided "*before Goldman*

20   synthesized the law in California on equitable estoppel, and *before* the Ninth Circuit adopted the

21   *Goldman* standard in *Kramer*."  (Opp. at 11.)  But *Goldman* and *Kramer* did nothing to

22   undermine *Jones*.  Both continue to instruct courts to consider the same "degree of

23   interrelatedness" that *Jones* described as "fact dependent," and neither definitely resolves the

24   interrelatedness inquiry identified in *Jones*.  In fact, *Goldman* explicitly re-stated the relevant

25   point: "application of the doctrine is fact-specific." 173 Cal. App. 4th at 235.[4]  Today, as in 2007,

26

27   [4] *Goldman* also directly rejects Waymo's claim that the fact-specific nature of the inquiry reduces
     Defendants' likelihood of success on appeal by ushering in a more deferential standard of review:
     "In California, absent conflicting evidence, we review the issue de novo as the question is
28   whether the undisputed facts constitute a sufficient legal basis for the application of equitable

9

1    the degree of interrelatedness is a fact-bound question about which serious legal minds can

2    disagree.  (*See* Order at 7 ("Under *those circumstances*, equitable estoppel prevented Metalclad

3    from having it both ways.") (emphasis added); *see also id.* ("And unlike the allegations in *Turtle*

4    *Ridge*, Waymo's allegations here do not presuppose the existence of any 'tripartite, on-going

5    relationship' benefitting defendants, Levandowski, and Waymo. The reasoning for applying

6    equitable estoppel in *Turtle Ridge* is thus inapposite here.").)[5]

7    **III.    DEFENDANTS WILL BE IRREPARABLY HARMED IF THE CASE PROCEEDS**

8           Waymo concedes that to succeed on the second *Nken* factor, Defendants "must show that

9    an irreparable injury is the more probable or likely outcome." (Opp. at 14; *see also* Mot. at 7.)  In

10   their opening brief, Defendants presented a series of cases in which courts in this circuit

11   concluded that the risk of altogether losing the advantages of arbitration by having to litigate

12   during the pendency of appeal–a risk that is amplified by the imminent trial date that has been set

13   in this case–satisfied the irreparable injury requirement.  (Mot. at 7-9.)

14          Waymo's opposition filing does not meaningfully address this body of case law.  Instead,

15   it rehashes misguided arguments about the nature of the "serious legal questions" inquiry under

16   the first *Nken* factor by suggesting that because this Court did not find a valid arbitration

17   agreement in its Order, Defendants cannot prevail on the irreparable harm analysis.  (Mot. at 14.)

18   In fact, post-*Leiva-Perez* decisions often find that the "irreparable harm" standard is satisfied by

19   facts similar to those raised by Defendants in their opening brief.  *See, e.g.*, *Ward*, 2014 WL

20   7273911, at *4 (finding "strong showing of irreparable harm" based on "[t]he contrast, in time

21   and expense, between the arbitration process . . . and the process of litigation in federal court");

22   *Roe v. SFBSC Mgmt., LLC*, No. 14-CV-03616-LB, 2015 WL 1798926, at *3 (N.D. Cal. Apr. 17,

23   ─────────────────────────────────

24   estoppel."  173 Cal. App. 4th at 226 n.9 (internal citation omitted).  That the inquiry is fact-
     specific does not mean that there is a dispute over the facts.

25

26   [5] Waymo also argues that this Court's determination that "Uber failed to demonstrate that the
     undisputed fundamental policy underlying equitable estoppel was met in this case" cuts against a
     stay. (Opp. at 10.)  Waymo asserts without citation that this is relevant to the first *Nken* factor.

27   To the extent policy arguments are relevant to this factor, the issue of whether this fundamental
     equitable policy is met in this case is not established by binding precedent and is an additional

28   serious issue to be addressed in Defendants' appeal.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY
Case No. 3:17-cv-00939-WHA

1   2015) (Beeler, J.) (noting the "tilts sharply" standard and finding the second *Nken* factor in

2   movant's favor because "[t]he relative benefits of arbitration, 'speed and economy,' will largely

3   be lost if this lawsuit proceeds and the Ninth Circuit then decides that the case must be sent to

4   arbitration"); *Antonelli v. Finish Line, Inc.*, No. 5:11-CV-03874 EJD, 2012 WL 2499930, at *1-2

5   (N.D. Cal. June 27, 2012) (Davila, J.) (citing *Leiva-Perez* for "continuum" standard, finding a

6   serious legal question, and holding that the second *Nken* factor favors movant because "the rather

7   onerous burdens imposed on Defendant in preparing for dispositive motions and a subsequent

8   jury trial would be avoided if the decision on appeal is favorable to Defendant").

9          In their opening brief, Defendants also argued that they face irreparable harm without a

10   stay because they face "forever" losing the "'speed and economy'" "'advantages of arbitration.'"

11   (Mot. at 7-8 (quoting *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984), and

12   citing seven in-circuit cases embracing this view of irreparable harm).)  Waymo first attempts to

13   avoid *Alascom* by distinguishing it factually, but then is forced to acknowledge that other cases

14   understand *Alascom* to apply to the irreparable harm standard in the stay analysis.  (Opp. at 14.)

15   Next, Waymo argues that *Alascom* was overruled by *Britton v. Co-op Banking Group*, 916 F.2d

16   1405, 1412 (9th Cir. 1990).  (Opp. at 14.)  But *Britton* simply held that the issuance of a stay is

17   "the proper subject for the exercise of discretion by the trial court," 916 F.2d at 1412 n.8, a

18   proposition with which Defendants do not disagree.  Waymo also attempts to distinguish

19   Defendants' use of *Gray v. Golden Gate Nat. Recreational Area*, No. C 08-00722 EDL, 2011WL

20   6934433 (N.D. Cal. Dec. 29, 2011), by arguing that it applies to the "*specific*" class certification

21   circumstances in that case.  (Opp. at 15.)  But the reasoning that "if 'defendants are forced to

22   incur the expense of litigation before their appeal is heard, the appeal will be moot, and their right

23   to appeal would be meaningless,'" (Mot. at 8 (quoting *Golden Gate*, 2011WL 6934433, at *3)), is

24   not limited to the class certification context, and courts have applied this reasoning in other

25   circumstances.  *See, e.g.*, *Zaborowski*, 2013 WL 1832638, at *2.

26   **IV.    WAYMO WILL NOT BE HARMED IF THE CASE IS STAYED**

27          In their opening brief, Defendants explain that they are seeking to stay pretrial

28   proceedings and trial, but are not seeking to stay this Court's burdensome Preliminary Injunction

11

1  Order, including the accounting and expedited discovery outlined in the Court's Preliminary

2  Injunction Order and clarified by Magistrate Judge Corley's Order re: Paragraph Six of District

3  Court's PI Order. (Mot. at 1, 9 (citing Dkt. 433, 441).)  This leaves Waymo with little potential

4  harm to cite that could be relevant for the third *Nken* factor.

5       Recognizing that it has already obtained provisional relief, Waymo first cites the right to

6  seek further provisional relief as a form of harm that would be caused by a stay. (Opp. at 12.)

7  That argument is unavailing.  Because Defendants do not seek to use this stay to avoid the

8  Preliminary Injunction Order, Defendants would not argue that a motion for further provisional

9  relief would be barred under the stay.  In other words, under the proposed stay, Waymo could

10  move for additional provisional relief based on the expedited discovery allowed for under the

11  Preliminary Injunction Order.

12       Second, Waymo cites delay in "critical (non-expedited) third-party discovery" as

13  irreparable harm that would be caused by the stay. (Opp. at 12.)  But Magistrate Judge Corley

14  ruled that "the expedited discovery can include third-party discovery." (*See* Stein Reply Decl.,

15  Ex. 1 at 60:8-11.) Waymo has already availed itself of expedited discovery against a third party.

16  (S*ee* Dkt. 441 (authorizing discovery as to Gorilla Circuits).)

17       Third, Waymo cites the possibility of irreparable harm from lost evidence, despite the fact

18  that this Court has ordered voluminous expedited discovery and the Court, Magistrate Judge, and

19  Special Master all maintain close oversight of discovery in this case.  Its only purported evidence

20  in support of this possibility is a bare allegation in a declaration from a former employee who is

21  currently suing Uber for, *inter alia*, damages and restitution related to his alleged wrongful

22  termination. (*See* Opp. at 12 n.7; Request for Judicial Notice, Attachment A.)[6]  The declaration is

23  ───────────────────
[6] Waymo cites a declaration by Samuel Ward Spangenberg, dated October 5, 2016, available at

24  https://www.documentcloud.org/documents/3227535-Spangenberg-Declaration.html. The Court
cannot use this declaration as a basis for its decision.  Waymo did not file a Request for Judicial

25  Notice of this declaration.  Even if it had, the Court could "only take judicial notice of the
existence of [his] declaration, not the truth of its contents." *Azoulai v. BMW of N. Am. LLC*, No.

26  16-CV-00589-BLF, 2017 WL 1354781, at *4 (N.D. Cal. Apr. 13, 2017) (Freeman, J.); *see also*
*Acasio v. San Mateo Cnty.*, No. 14-CV-04689-JSC, 2015 WL 5568345, at *1 n.1 (N.D. Cal. Sept.

27  22, 2015) (Corley, M.J.) ("It is well established that the Court may take judicial notice of records
from other proceedings not to credit the truth of the allegations or facts set forth therein, but

28  rather for purposes of noticing the existence of the [prior] lawsuit, the claims made in the lawsuit,
and the fact that various documents were filed therein.") (internal quotation marks omitted).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY
Case No. 3:17-cv-00939-WHA

1    neither reliable nor relevant to this case, as there is no evidence of spoliation.  To the contrary,

2    Defendants have cooperated in discovery, working cooperatively with Waymo, the Court, the

3    Magistrate Judge and the Special Master.  Defendants have not requested a stay of any powers the

4    Court has as its disposal to hold the parties to their expedited discovery obligations.

5         Finally, Waymo accuses Defendants of seeking to delay this case, even after it refused to

6    stipulate to expedite the briefing schedule in the Federal Circuit.  (Declaration of David A.

7    Perlson ISO Opp., Ex. A.)  As Waymo's exhibit shows, Defendants met and conferred with

8    Waymo, and made two proposals for an expedited briefing schedule.  (*Id.*)  Waymo rejected both

9    proposals.  (*Id.*)  Waymo now accuses Defendants of failing to file their appeal brief or

10   emergency motion for an expedited schedule, but fails to mention that Defendants cannot file

11   these papers until their Notice of Appeal has been docketed by the Federal Circuit.  Defendants

12   are ready to file their Motion to Expedite as soon as this occurs.

13

14   **V.    DEFENDANTS HAVE SHOWN THAT A STAY WOULD BE IN THE PUBLIC
     INTEREST**

15        In their Motion, Defendants argue that public policy favors a stay because a stay would

16   favor the efficient allocation of resources.  (Mot. at 9-10.)  In response, Waymo asserts that a

17   party that does not show a likelihood of success on the merits under the first *Nken* factor cannot

18   show that public policy favors conservation of judicial resources in its case.  (Opp. at 16.)  But

19   many cases demonstrate that Waymo is wrong.  *See, e.g.*, *Stern v. Cingular Wireless Corp.*, No.

20   CV 05 8842 CAS, 2006 WL 2790243, at *2 (C.D. Cal. Sept. 11, 2006) (finding "substantial

21   question" and that public interest favors movants who argued that a stay would promote judicial

22   efficiency); *Eberle v. Smith*, No. 07-CV-0120 W WMC, 2008 WL 238450, at *2, 4 (S.D. Cal.

23   Jan. 29, 2008) (finding "serious legal issues" were raised and concluding that "[i]t is clear that

24   disputes about whether or not parties must submit to arbitration take place against a backdrop of

25   policies encouraging arbitration and the preservation and integrity of judicial resources. Here,

26   continuing to litigate in this Court during the pendency of the appeal would undermine both

27   policies because of the risk of redundant or inconsistent actions. Accordingly, the public interest

28   weighs in favor of a stay.").

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY
Case No. 3:17-cv-00939-WHA

1    Defendants also argue that a stay would further the public policy goal of promoting

2    arbitration.  (Mot. at 9-10.)  Waymo argues that "[t]he liberal policy [favoring arbitration] is

3    inapplicable . . . to one who is not a party to a contract and has no standing to compel arbitration."

4    (Opp. at 16 (citing *Britton*, 916 F.2d at 1413.).)  Since *Britton* was decided in 1990, the Supreme

5    Court and Ninth Circuit have held that nonsignatories to arbitration clauses can compel arbitration

6    when equitable estoppel applies, and courts often emphasize the policy favoring arbitration in

7    such cases.  *See, e.g.*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009); *see also*

8    *Kramer*, 705 F.3d at 1128.  Waymo fails to show that a non-signatory to an arbitration contract

9    cannot be favored on public policy grounds, and case law demonstrates that Waymo's position is

10   frivolous.  *See, e.g.*, *Torbit, Inc.*, 2013 WL 572613, at *4 ("In this [equitable estoppel] context,

11   where a non-signatory seeks to compel a signatory to arbitrate, the doctrine operates to protect the

12   vitality of arbitration agreements and federal arbitration policy."); *Metalclad*, 109 Cal. App. 4th at

13   1718 ("Estoppel prevents Metalclad from avoiding arbitration by suing only the parent

14   corporation in these circumstances. Otherwise, . . . the federal policy in favor of arbitration

15   [would be] effectively thwarted.") (citations and internal quotation marks omitted).

16   Finally, Waymo attempts without citation to add fair competition and intellectual property

17   to the list of public interest concerns this Court should consider.  (Opp. at 16.)  However, the

18   Court's preliminary injunction that Defendants do not seek to disturb will protect any such

19   interest.

20   **VI.    CONCLUSION**

21   Defendants' Motion for a Stay while its appeal is pending in the Federal Circuit should be

22   granted for the reasons explained in its opening brief and for the foregoing reasons.

23   Dated: May 30, 2017                    Respectfully Submitted,

24                                          MORRISON & FOERSTER LLP
                                            BOIES SCHILLER FLEXNER LLP
25

26                                          By:  */s/ Hamish P.M. Hume*
                                                 Hamish P.M. Hume
27                                          Attorneys for Defendants
                                            UBER TECHNOLOGIES, INC. and
28                                          OTTOMOTTO LLC

14

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY
Case No. 3:17-cv-00939-WHA