MILES EHRLICH (Bar No. 237954)
miles@ramsey-ehrlich.com
ISMAIL RAMSEY (Bar No. 189820)
izzy@ramsey-ehrlich.com
AMY CRAIG (Bar No. 269339)
amy@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600 (Tel)
(510) 291-3060 (Fax)

Attorneys for Non-Party Anthony Levandowski

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC., *et al.*,<br><br>      Defendants. | Case No.: 3:17-cv-00939-WHA<br><br>**ANTHONY LEVANDOWSKI'S REPLY IN SUPPORT OF MOTION FOR INTERVENTION UNDER RULE 24 AND MODIFICATION OF ORDER GRANTING IN PART AND DENYING IN PART PROVISIONAL RELIEF**<br><br>Date: June 7, 2017<br>Time: 10:00 a.m.<br>Courtroom: The Honorable William H. Alsup, Courtroom 8, 19th Floor |

# TABLE OF CONTENTS

I.     THE COERCIVE CHOICE IMPOSED BY THE COURT'S ORDER HAS NOW  BEEN
       SHARPENED EVEN FURTHER ................................................................................... 1

II.    MR. LEVANDOWSKI MUST BE PERMITTED TO INTERVENE .............................. 2

  A.   Timeliness ....................................................................................................................... 2

  B.   Mr. Levandowski Has a "Significantly Protectable" Interest ............................................. 3

  C.   Impediment to Mr. Levandowski's Ability to Protect His Interests ................................... 3

  D.   The Defendants Cannot Adequately Represent Mr. Levandowski's Interests ................... 4

III.   THE COURT SHOULD MODIFY ITS ORDER TO AVOID VIOLATING MR.
       LEVANDOWSKI'S FIFTH AMENDMENT RIGHTS .................................................... 4

  A.   The Court's Order, if Unmodified, Constitutes State Action ............................................. 5

  B.   Termination Constitutes a Threat of Substantial Economic Sanction
       for Mr.  Levandowski ...................................................................................................... 7

  C.   The Court's Order Seeks Waiver of Mr. Levandowski's Privileges .................................. 9

IV.    THE COURT'S QUESTIONS ...................................................................................... 11

  A.   Question No. 1 ............................................................................................................... 11

  B.   Question No. 2 ............................................................................................................... 11

  C.   Question No. 3 ............................................................................................................... 12

V.     CONCLUSION............................................................................................................. 14

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Blum v. Yaretsky,*
4
457 U.S. 991 (1982) ................................................................................................. 12

5
*Brentwood Acad. v. Tennessee Secondary Sch. Athl. Ass'n,*
6
531 U.S. 288 (2001) ................................................................................................... 5

7
*Doe v. United States,*
487 U.S. 201 (1988) ................................................................................................... 9
8

*eBay, Inc. v. Digital Point Solutions, Inc.,*
9
No. C 08-4052 JF (PVT), 2010 U.S. Dist. LEXIS 7997 (N.D. Cal. Jan. 12, 2010) ..................... 10

10
*Edmonson v. Leesville Concrete Co.,*
11
500 U.S. 614 (1991) ................................................................................................... 5

12
*Fisher v. United States,*
425 U.S. 391 (1976) ................................................................................................... 9

13
*Gardner v. Broderick,*
14
392 U.S. 273 (1968) ................................................................................................... 5

15
*Garrity v. New Jersey,*
385 U.S. 493 (1967) ......................................................................................... passim
16

17
*GE v. Liang,*
No. CV 13-08670 DDP (VBKx), 2014 U.S. Dist. LEXIS 36243(C.D. Cal. Mar. 19,  2014) ...... 10
18

19
*Gilman v. Marsh & McLennan Cos.,*
826 F.3d 69 (2nd Cir. 2016) .................................................................................. 6, 7

20
*Griffin v. California,*
21
380 U.S. 609 (1965) ................................................................................................... 8

22
*Lefkowitz v. Cunningham,*
431 U.S. 801 (1977) ............................................................................................... 4, 8
23

24
*Malloy v. Hogan,*
378 U.S. 1 (1964) ...................................................................................................... 8

25
*Skinner v. Railway Labor Executives' Ass'n,*
26
489 U.S. 602 (1989) ................................................................................................... 5

27
*Southwest Ctr. for Biological Diversity v. Berg,*
268 F.3d 810 (9th Cir. 2001) ..................................................................................... 3

28

ii

LEVANDOWSKI'S REPLY RE MOTION FOR INTERVENTION PURSUANT TO RULE 24 AND MODIFICATION OF
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROVISIONAL RELIEF
Case No. 3:17-cv-00939-WHA

*Spevack v. Klein*,
385 U.S. 511 (1967)........................................................................ 5, 8

*Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation*,
392 U.S. 280 (1968)........................................................................ 4

*United States ex rel. Sanney v. Montanye*,
500 F.2d 411 (2d Cir. 1974)........................................................... 8

*United States v. Antelope*,
395 F.3d 1128 (9th Cir. 2005) ........................................................ 8

*United States v. Bright*,
596 F.3d 683 (9th Cir. 2010) .......................................................... 10

*United States v. Goodpaster*,
65 F. Supp. 3rd 1016 (D. Or. 2014)................................................ 5

*United States v. Hubbell*,
530 U.S. 27 (2000)........................................................................ 11

*United States v. Oregon*,
745 F.2d 550 (9th Cir. 1984) .......................................................... 2

*United States v. Sideman & Bancroft, LLP*,
704 F.3d 1197, 1201-02 (9th Cir. 2013) ......................................... 10

*United States v. Stein*,
541 F.3d 130 (2nd Cir. 2008)......................................................... passim

*Westlands Water Dist. v. United States*,
700 F.2d 561 (9th Cir. 1983) .......................................................... 2

**Rules**

Rule of Federal Procedure 24(a) ................................................... 2, 3

LEVANDOWSKI'S REPLY RE MOTION FOR INTERVENTION PURSUANT TO RULE 24 AND MODIFICATION OF
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROVISIONAL RELIEF
Case No. 3:17-cv-00939-WHA

The issue before the Court is governed by a straight-forward principle rooted in binding Supreme Court authority:  The government—no matter the branch—may not force a person to choose between her continued employment and her Fifth Amendment rights.  It may not do so as a direct employer.  And it may not do so by proxy, using a private employer as its instrument.

Waymo seeks to prevent Mr. Levandowski from gaining any relief from this unconstitutional dilemma by asking that he be barred from even presenting his constitutional objections, and by advancing constructions of applicable law that defy reason and logic. Because none of Waymo's objections are well founded, Mr. Levandowski's motion should be granted in full.

## I.   THE COERCIVE CHOICE IMPOSED BY THE COURT'S ORDER HAS NOW BEEN SHARPENED EVEN FURTHER

Since the filing of our motion, a new development has added additional force to Mr. Levandowski's position: On May 26, 2017, Uber sent Mr. Levandowski a new letter stating that, because he has thus far failed to "cooperat[e]" with Uber's efforts to comply with the Court's May 11, 2017 Order (the "Preliminary Injunction Order" or "Order"), Mr. Levandowski ***will be terminated on June 15, 2017***, unless he "cures" the failure to cooperate by immediately complying with the demands contained in Uber's original May 15, 2017 letter.  *See* Supplemental Declaration of Ismail Ramsey ("Supp. Ramsey Decl.") at ¶ 2 & Ex. B.

The Preliminary Injunction Order has thus placed Mr. Levandowski on the horns of an unconstitutional dilemma: either he must waive his Fifth Amendment rights and provide the information and materials specified by the Order or face immediate firing.  Before this Order, Mr. Levandowski was facing no threat of termination from the exercise of his constitutional rights.  Now, as a result of the Order's command that Uber "exercise the full extent of [its] corporate, employment, contractual, and other authority," Dkt. 433 at 23, Mr. Levandowski's continued employment hinges on his willingness to waive his Fifth Amendment privilege.

## II.    MR. LEVANDOWSKI MUST BE PERMITTED TO INTERVENE

Waymo first asks the Court to deny Mr. Levandowski an opportunity to defend his constitutional rights by rejecting his motion to intervene.  The various rationales it advances for this position, however, are unpersuasive, and Federal Rule of Federal Procedure 24(a) requires that Mr. Levandowski be permitted to intervene.[1]

### A.    Timeliness

Mr. Levandowski filed the instant motion just two days after receiving Uber's letter threatening his employment and only four days after the Preliminary Injunction Order was filed on the public docket.  Nevertheless, Waymo insists that Mr. Levandowski's motion was untimely.  Dkt. 512 at 6-7.  The thrust of Waymo's argument is that Mr. Levandowski should have anticipated the Court's Order and sought to intervene for all purposes from the beginning of the case.  *Id.*  That is unrealistic.

As an initial matter, when Mr. Levandowski first moved to intervene on April 5, 2017, Waymo asked the Court to limit Mr. Levandowski's intervention "for the sole purpose of litigating his Motion for an Order Modifying the Court's March 16, 2017 Order."  Dkt. 162 at 2:6-10.  The Court granted Waymo's request and expressly limited Mr. Levandowski's intervention "solely for purposes" of litigating his Motion to Modify the Court's Expedited Discovery Order.  Dkt. 169 at 4:10-13.  More recently, Waymo has continued to contest Mr. Levandowski's efforts to intervene, even on limited issues infringing upon his rights.  *See, e.g.,* Dkt. 451.  Waymo's suggestion that Mr. Levandowski's failure to seek broad intervention on the issue of provisional relief—where no impairment of his constitutional rights was even proposed or contemplated—somehow constituted a waiver of his right to protect his constitutional privileges is meritless.

In any event, timeliness, like the other requirements of Rule 24(a), is "to be construed in favor of the applicant for intervention."  *Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir. 1983); *see also United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).  Mr.

---

[1] In the alternative, the Court should permit intervention under Rule 24(b).  *See* Dkt. 466 at 8-9.

Levandowski is not a party to this fast-moving litigation, but the conduct of discovery in this case has implicated his privileges.  When that has occurred, as in this instance, he has moved expeditiously to protect his interests.  Mr. Levandowski brought this motion within two days of being confronted with the unconstitutional threat to his employment and long before Uber's compliance with the Preliminary Injunction Order was due.  *See* Dkt. 433 at 22-26.  Because this motion poses little threat of serious prejudice to Waymo, will at most cause only a short delay as to limited portions of the Order that impact Mr. Levandowski, and will otherwise serve the important purpose of protecting a constitutional privilege, it is timely.  *See Oregon*, 745 F.2d at 552.

**B.     Mr. Levandowski Has a "Significantly Protectable" Interest**

Surprisingly, Waymo asserts that Mr. Levandowski's interests in his own constitutional and attorney-client privileges are insufficient to permit intervention.  Dkt. 512 at 7-9.  Waymo's contention, however, cannot survive the numerous cases cited in our opening papers, each of which holds that intervention is mandated under Rule 24(a) when the applicant seeks to protect a privilege.  *See* Dkt. 466 at 7 (citing cases).  Waymo addresses none of those authorities, instead arguing that Mr. Levandowski's privileges somehow do not apply here.

But, as discussed below, Waymo is incorrect: Mr. Levandowski's privileges protect him from being compelled by state action to produce records and information.  In any case, a motion for intervention is not the appropriate stage to litigate the merits of such questions; the issue under Rule 24(a) is whether Mr. Levandowski has *asserted* a protectable interest.  *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).  Plainly, he has done so.

**C.     Impediment to Mr. Levandowski's Ability to Protect His Interests**

Waymo also argues that the Preliminary Injunction Order will not impair Mr. Levandowski's interests.  The apparent basis for Waymo's argument is its disapproval of Mr. Levandowski's assertion of his Fifth Amendment privilege in this litigation.  *See* Dkt. 512 at 9-10.  This is not a proper ground for refusing intervention.  In determining an intervention motion, the Court must accept Mr. Levandowski's assertions as true.  *Southwest Ctr. for Biological*

LEVANDOWSKI'S REPLY RE MOTION FOR INTERVENTION PURSUANT TO RULE 24 AND MODIFICATION OF ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROVISIONAL RELIEF
Case No. 3:17-cv-00939-WHA

*Diversity*, 268 F.3d at 819.  Mr. Levandowski has provided a more than colorable basis to demonstrate that the Court's Order threatens his Fifth Amendment privilege against self-incrimination.  And, as this Court is aware, Mr. Levandowski is currently involved in ongoing efforts with both public and *in camera* submissions to protect his privileges, matters which have yet to be ruled upon by Magistrate Judge Corley or this Court.  *See* Part III, *infra*.

> ### D.     The Defendants Cannot Adequately Represent Mr. Levandowski's Interests

Finally, there is Waymo's most surprising assertion: that Uber can adequately represent Mr. Levandowski's interest in avoiding the unconstitutional threat to his employment.  Dkt. 512 at 10-12.  This contention is put to rest simply by recalling that *it is Uber itself who issued the unconstitutional threat to Mr. Levandowski's employment* after the Court ordered it to do so.  *See* Dkt. 466-2; Supp. Ramsey Decl. Ex. B.  Uber did not seek to modify the Court's demands of Mr. Levandowski.  Rather, Uber dutifully passed those demands along, backing them with the threat of imminent termination.  Plainly, Uber cannot be counted upon to assert Mr. Levandowski's rights in this situation.  Further, because the Fifth Amendment is a personal right, Mr. Levandowski is best situated to assert it.  This would be true even if Uber had not been directed by the preliminary injunction order to fire Mr. Levandowski.  For these reasons and all the others discussed above intervention should be granted.

### III.     THE COURT SHOULD MODIFY ITS ORDER TO AVOID VIOLATING MR. LEVANDOWSKI'S FIFTH AMENDMENT RIGHTS

The legal basis of Mr. Levandowski's motion is uncontroversial: the government may not compel an individual to choose "between self-incrimination or job forfeiture."  *Garrity v. New Jersey*, 385 U.S. 493, 497, 500 (1967).  When the government presents an individual with "a choice between the rock and the whirlpool" of either waiving his Fifth Amendment or losing his employment, the government has exacted such a high price for the exercise of the Fifth Amendment that the resulting statements are deemed to be constitutionally compelled.  *Id.* at 497-98; *see also Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977); *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation*, 392 U.S. 280, 282-83 (1968); *Gardner v. Broderick*, 392 U.S.

1   273, 278-79 (1968); *Spevack v. Klein*, 385 U.S. 511, 517-18 (1967) (pl. opn.); *United States v.*

2   *Goodpaster*, 65 F. Supp. 3rd 1016, 1024 (D. Or. 2014).  Here, the government—the Court—has

3   imposed just such "a choice between the rock and the whirlpool."  Unless the Court withdraws

4   the compulsion, it will work a constitutional error.

5       **A.      The Court's Order, if Unmodified, Constitutes State Action**

6           Waymo expresses doubts about whether a *Garrity*-style violation of the Fifth

7   Amendment privilege against self-incrimination can be enacted by the government through a

8   private party.  Dkt. 512 at 15-16.  But the cases make clear that Waymo's doubts are groundless.

9           Conduct by a private actor can implicate the constitution "if the private party acted as an

10   instrument or agent of the Government."  *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S.

11   602, 615 (1989).  Although conduct by private parties "lies beyond the Constitution's scope in

12   most instances, governmental authority may dominate an activity to such an extent that its

13   participants must be deemed to act with the authority of the government and, as a result, be

14   subject to constitutional constraints."  *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620

15   (1991).  The state action question "turns on the degree of the Government's participation in the

16   private party's activities."  *Skinner*, 489 U.S. at 615 (finding that the Fourth Amendment was

17   implicated by a railway's searches because the searches were a product of the "compulsion of

18   sovereign authority"); *see, e.g., Brentwood Acad. v. Tennessee Secondary Sch. Athl. Ass'n*, 531

19   U.S. 288, 295-300 (2001) (discussing various state action tests and finding the Fourteenth

20   Amendment implicated by a private association's decisions); *Edmonson*, 500 U.S. at 620-28

21   (finding the Fifth Amendment due process clause implicated when private litigants employ

22   peremptory challenges to exclude jurors on account of their race); *United States v. Stein*, 541

23   F.3d 130, 147-51 (2nd Cir. 2008) (finding a Sixth Amendment violation based on a private

24   company's decisions because the decisions were the product of government action).

25           The overriding question for the Court is whether its Order renders Uber's follow-on

26   "waive-your-Fifth-or-get-fired" threat to Mr. Levandowski "state action."  In our opening papers,

27   we drew an analogy to *Stein*, 541 F.3d 130, explaining that the Court's explicit command for

28

5

Uber to *exercise the full extent of its powers* was more direct and coercive than the policy statements communicated by federal prosecutors in *Stein*.  *See* Dkt. 446 at 14.  Waymo tries to distinguish *Stein,* Dkt. 512 at 16-17, but the case on which Waymo relies most heavily to distinguish *Stein—Gilman v. Marsh & McLennan Cos.*, 826 F.3d 69 (2nd Cir. 2016)—only serves to clarify why *Stein* serves as such a useful analog here.

In *Gilman*, two individuals sued their former employer, Marsh, for firing them after they refused to discuss with the employer conduct that was the subject of a criminal investigation.  *Id.* at 71.  One argument advanced by the plaintiffs was that the employer's "interview demands constitute[d] state action that infringed [on their] right against self-incrimination."  *Id*. at 76.  The plaintiffs sought to rely on *Stein* for the proposition that constitutional restrictions applied because the employer was effectively a state actor.  *Id*.  But the *Gilman* court rejected the analogy to *Stein—*not because the state action principles were inapplicable in the context of a violation of the right against self-incrimination, but because the court found that the employers' actions were simply not caused by the government's activities:

> Marsh had good institutional reasons for requiring [the plaintiffs] to sit for interviews or else lose their jobs . . . . [Unlike in *Stein*,] [t]here is no evidence that the [prosecutor] 'forced' Marsh to demand interviews, 'intervened' in Marsh's decisionmaking, 'steered' Marsh to request interviews, or 'supervised' the interview requests . . . . [¶] . . . . [Plaintiffs] adduced no evidence that Marsh's request for an interview arose out of pressure or coercion from the [prosecutor].

*Id*. at 76-77.  The court further distinguished *Stein* because KPMG, the employer in *Stein,* "had no institutional interest in stripping its employees of their chosen defense counsel and [the employer] was forced to abandon a longstanding policy that it had decided to continue; it was therefore found that government compulsion was the 'but for' cause" of the employer's action. *Id*. at 77.  Thus, like *Stein* (with respect to the Sixth Amendment), *Gilman* (as to the Fifth Amendment) focuses on the question of whether private conduct was sufficiently encouraged by the government to constitute state action, thereby putting constitutional requirements in play.

On the continuum of increasing government encouragement that runs from *Gilman* to *Stein*, the extent of government intrusion from the Court's Order here goes beyond even what

LEVANDOWSKI'S REPLY RE MOTION FOR INTERVENTION PURSUANT TO RULE 24 AND MODIFICATION OF ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROVISIONAL RELIEF
Case No. 3:17-cv-00939-WHA

was present in *Stein*, which never amounted to a direct order from the government.  An express command, as is present here, goes far beyond the "steering" and "supervising" that was present in *Stein* and might have altered the result in *Gilman*.  *Gilman*, 826 F.3d at 76-77.  Under its current language, the Order *requires* Uber to use all of its powers against Mr. Levandowski (which, of course, includes the power to terminate) to get him to relent in his reliance on his legal privileges.  It is difficult to imagine any stronger "steering" or "supervision" from the government than a direct court order backed by the power of contempt.

Further, consistent with what occurred in *Stein,* but unlike in *Gilman*, the Court's Order has compelled Uber to change its previous course of conduct.  Before the Preliminary Injunction Order, Uber had not threatened Mr. Levandowski's employment despite his repeated assertion of his Fifth Amendment rights; and Uber's May 15 letter even recounts its previous reluctance to respond to these assertions with adverse action.  Dkt. 466-2 at 3 ("While we have respected your personal liberties, it is our view that the Court's Order requires us to make these demands of you. Footnote 9 of the Order specifically states that 'in complying with this order, Uber has no excuse under the Fifth Amendment to pull any punches as to Levandowski.'  Thus, we must demand that you set these privileges aside and confirm that you will promptly comply with the Court's Order.").  What changed is the issuance of the Court's Preliminary Injunction Order and its directive to "exercise the full extent of [Uber's] corporate, employment, contractual, and other authority" to get Mr. Levandowski to change course.  Dkt. 433 at 23.  As such, the Court's Order, at a minimum, "steered" Uber's decision to threaten Mr. Levandowski with immediate termination, thus constituting compulsion.

## B.   Termination Constitutes a Threat of Substantial Economic Sanction for Mr. Levandowski

Waymo next argues that the constitutional principles announced in *Garrity* and its progeny do not apply to Mr. Levandowski because he is assumed to be a person of means.  Dkt. 512 at 19-20.  But this is not the law. The principle underlying *Garrity* is that the "government cannot penalize assertion of the constitutional privilege against compelled self-incrimination by

7

1   imposing sanctions to compel testimony." *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977).

2   The Fifth Amendment guarantees "the right of a person to remain silent unless he chooses to

3   speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence."

4   *Malloy v. Hogan*, 378 U.S. 1, 8 (1964).  "In this context 'penalty' is not restricted to fine or

5   imprisonment.  It means . . . the imposition of any sanction which makes assertion of the Fifth

6   Amendment privilege 'costly.'"  *Spevack v. Klein*, 385 U.S. 511, 515 (1967) (pl. opn.; quoting

7   *Griffin v. California*, 380 U.S. 609, 614 (1965)).

8           As the Ninth Circuit recognized in *United States v. Antelope*, 395 F.3d 1128 (9th Cir.

9   2005), the precedents that derive from *Garrity* are commonly called "penalty cases."  *Id*. at 1136.

10  Penalties deemed to be sufficiently "costly" to offend the Fifth Amendment include termination

11  of employment, loss of a professional license, ineligibility to receive government contracts, and

12  the loss of the right to participate in political associations.  *Id*. (citing cases).  Contrary to

13  Waymo's suggestion, neither the Supreme Court nor the Ninth Circuit has ever suggested that

14  the "penalty" must threaten to leave the individual destitute to rise to a constitutional dimension.

15          *United States ex rel. Sanney v. Montanye*, 500 F.2d 411 (2d Cir. 1974), on which Waymo

16  relies, does not suggest otherwise.  The court's holding in *Montanye* was that the petitioner, "a

17  transient manual laborer who had been on the job for at most a couple of days," was not subject

18  to a substantial penalty because he had no real expectation of future earnings.  *Id*. at 415-16 &

19  n.3.  In fact, the court expressly stated that its holding was not dependent on the petitioner's

20  socioeconomic status.  *Id*. at 516 n.3.

21          Mr. Levandowski is in an entirely different situation than the petitioner in *Montanye*.  His

22  employment at Uber, at least until the Preliminary Injunction Order, was stable and stood to

23  provide him with considerable financial remuneration for his efforts—including specific

24  compensation for achieving various technological and business milestones in the months and

25  years ahead.  *See, e.g.,* Dkt. 510 (term sheet).  In sharp contrast to the day laborer in *Montanye*,

26  Mr. Levandowski has committed his entire career to advancing the self-driving car industry.  Mr.

27  Levandowski spent nine years at Google before joining Uber as a vice president, a position he

28

LEVANDOWSKI'S REPLY RE MOTION FOR INTERVENTION PURSUANT TO RULE 24 AND MODIFICATION OF
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROVISIONAL RELIEF
Case No. 3:17-cv-00939-WHA

intended to stay in for years to come.  Termination by Uber constitutes a significant penalty, carrying considerable opportunity and economic costs.

## C.   The Court's Order Seeks Waiver of Mr. Levandowski's Privileges

Waymo next argues that Mr. Levandowski's privileges do not apply to the records and information implicated by the Court's Preliminary Injunction Order, and thus that the Order does not threaten those privileges.  Dkt. 512 at 20-23.  Again Waymo is wrong.

As an initial matter, contrary to Waymo's suggestion, the Court's Order goes well beyond "merely" requiring the return of documents.  The order demands that Uber compel Mr. Levandowksi to identify and produce responsive documents and report what he "saw or heard, when [he] saw or heard it, and for what purpose."  Dkt. 433 at 24:3-25:2.  The Order thus requires Mr. Levandowski to make affirmative representations and otherwise use the "contents of his own mind" to select relevant records, thereby admitting their existence and authenticity. *See Doe v. United States*, 487 U.S. 201, 211 (1988) ("It is the 'extortion of information from the accused,' the attempt to force him 'to disclose the contents of his own mind,' that implicates the Self-Incrimination Clause." (citations omitted)).  As we have previously explained, if forcing Mr. Levandowski to undertake these steps could tend to furnish a link in a chain of possible incrimination, the Fifth Amendment bars such a demand.  *See, e.g.,* Dkt. 147 at 5-8, 244 at 2-7.  Indeed, Uber's May 15, 2017 letter to Mr. Levandowski is unequivocal that he must waive his constitutional rights: "this letter requires you to turn over information wherever located, including but not limited to, your personal devices, and to waive any Fifth Amendment protection you may have."  Dkt. 466-2 at 3.

Waymo further argues that Mr. Levandowski has not shown how the act of producing the requested documents implicates his Fifth Amendment rights.  Dkt. 215 at 21.  This argument is a red herring.  As Mr. Levandowski has previously explained, the question under *Fisher v. United States*, 425 U.S. 391 (1976) and its progeny is whether the government was already aware of the information that might be conveyed through the act of producing the records.  *See, e.g.,* Dkt. 244 at 5-7.  The requesting party has the burden of demonstrating that the government already had

LEVANDOWSKI'S REPLY RE MOTION FOR INTERVENTION PURSUANT TO RULE 24 AND MODIFICATION OF ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROVISIONAL RELIEF
Case No. 3:17-cv-00939-WHA

such extensive knowledge as to render the existence, possession, location, and authenticity of the records a "foregone conclusion." *Id*.; *see also United States v. Bright*, 596 F.3d 683, 692 (9th Cir. 2010); *GE v. Liang*, No. CV 13-08670 DDP (VBKx), 2014 U.S. Dist. LEXIS 36243 at *13-15 (C.D. Cal. Mar. 19,  2014); *eBay, Inc. v. Digital Point Solutions, Inc.*, No. C 08-4052 JF (PVT), 2010 U.S. Dist. LEXIS 7997 at *21-22 (N.D. Cal. Jan. 12, 2010).  Here, there has been no showing of what the government knows in this case, and thus any production of relevant records threatens to incriminate Mr. Levandowski.

Put simply, Waymo is accusing Mr. Levandowski of a crime.  In light of these allegations, and on this record, the notion that Mr. Levandowski's act of production would not implicate his Fifth Amendment rights is meritless.

There is also no question that the Order implicates Mr. Levandowski's attorney-client privilege.  *See* Dkt. 512 at 21-23.  The Order demands that Uber report not only on the contents of Mr. Levandowski's mind, but also information known by any of "his separate counsel."  Dkt. 433 at 24:3-25:2.  In compliance with the Court's clear directive, Uber demanded that Mr. Levandowski waive his attorney-client privileges.  Dkt. 466-2 at 3.  Waymo seeks to discount the importance of the Court's ruling by arguing (contrary to precedent) that information known to Mr. Levandowski's personal attorneys cannot implicate Mr. Levandowski's Fifth Amendment rights.  But both the Supreme Court and the Ninth Circuit have held that, where an individual has provided documents protected by the Fifth Amendment to his or her attorney for the purpose of obtaining legal advice, those documents continue to be protected—by both the attorney-client privilege and the individual's Fifth Amendment rights.  *Fisher*, 425 U.S. at 404-405; *United States v. Sideman & Bancroft, LLP*, 704 F.3d 1197, 1201-02 (9th Cir. 2013).  The Court's Order, as carried out by Uber, would require waiver of the privileges protected under those precedents.

Finally, as to information known to Uber's attorneys, we have asserted that some such information is covered by a common interest privilege.  *See* Dkt. 379.  The question whether the common interest privilege properly applies remains pending before Judge Corley.  For the reasons expressed in our motion papers, we again assert that the affected records are privileged.

LEVANDOWSKI'S REPLY RE MOTION FOR INTERVENTION PURSUANT TO RULE 24 AND MODIFICATION OF ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROVISIONAL RELIEF
Case No. 3:17-cv-00939-WHA

## IV.    THE COURT'S QUESTIONS

In its May 19, 2017 order, the Court instructed the litigants to address three specific questions.  Dkt. 471 at 2.  Mr. Levandowski addresses each question in turn.[2]

### A.    Question No. 1

When an employee steals and retains a competitor's trade secrets, may the employer, upon learning of the theft, direct the employee to make it right with the competitor and to return all copies of the trade secrets to the competitor on pain of adverse employment action, up to and including termination?   Does the Fifth Amendment prevent such private action?

Dkt. 471 at 2.  Without accepting the Court's hypothetical, the Fifth Amendment does not govern purely private action.  Our contention, however, is that the adverse employment action being threatened by Uber is the product of state action.

### B.    Question No. 2

In such circumstances, may a court order the employer to exercise the full scope of its private authority over the employee to cause the employee to return all copies of the stolen trade secrets?  Does the Fifth Amendment bar such an order?

Dkt. 471 at 2.

Again, without accepting the underlying premise of the Court's hypothetical, the answer to the question (as argued extensively in our original motion papers and above) is "No."  Where an employee has a Fifth Amendment right under *United States v. Hubbell*, 530 U.S. 27 (2000) to avoid incriminating herself through the act of producing records, a court's order that a private employer threaten that person's employment to force production of those records runs afoul of the Fifth Amendment.  Absent a grant of immunity, such an order is unconstitutional state action.

---

[2] To be clear, Mr. Levandowski makes no comment about the premises of the Court's questions, some of which appear to assume that the hypothetical employee in Mr. Levandowski's position is guilty of the theft of trade secrets.

LEVANDOWSKI'S REPLY RE MOTION FOR INTERVENTION PURSUANT TO RULE 24 AND MODIFICATION OF ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROVISIONAL RELIEF
Case No. 3:17-cv-00939-WHA

### C.      Question No. 3

Where an employer learns that its employee has stolen trade secrets from a competitor and fails to, on its own initiative, use the full scope of its private authority over the employee to return all copies of the trade secrets to their rightful owner, may the Court instruct the jury that it may consider such failure as a ratification by the employer of the theft?

Dkt. 471 at 2.  Mr. Levandowski expresses no opinion about whether such an instruction might be proper in some other hypothetical case.  But in *this* case, the threat of an adverse jury instruction against Uber if it does not use all of its powers to coerce Mr. Levandowski would still render Uber's threat to Mr. Levandowski's employment the product of state action, and thus still violate *Garrity* and its progeny.

As previously discussed, state action may be found when the government has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State."  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *see also* Part III.A, *supra*.  The Court's rulings to date must be considered at least "significant encouragement" to Uber.  Uber surely recognizes that the Court desires a particular outcome as to Mr. Levandowski—namely, that he be pressured to provide materials and information as to which he has asserted privilege.  The Court's question only adds to that encouragement: an adverse jury instruction could cause great damage to Uber's case.  The only safe course for Uber, as a direct consequence of the Court's suggestion, would be to maintain its threat to Mr. Levandowski's employment and avoid any jeopardy at trial.

Again the *Stein* case is instructive.  There, the court found that a company's "adoption and enforcement of a policy under which it conditioned, capped and ultimately ceased advancing legal fees to [certain criminal] defendants followed as a direct consequence of the government's overwhelming influence, and that [the company's] conduct therefore amounted to state action." 541 F.3d at 136.  The government's mechanism of "influence" in *Stein* was not an express command.  Rather, the influence stemmed from policies and statements by the United States Attorney's Office that indicated that the company was more likely to be indicted if it did not cease advancing fees to its former employees.  *See id.* at 147-48.  In light of the policies and

LEVANDOWSKI'S REPLY RE MOTION FOR INTERVENTION PURSUANT TO RULE 24 AND MODIFICATION OF ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROVISIONAL RELIEF
Case No. 3:17-cv-00939-WHA

statements, "the only safe course" was for the company to act in the way the government apparently preferred, and to cease advancing legal fees to its employees and former employees. *Id*. at 148.

At some point after the company in *Stein* had ceased advancing fees and the defendants raised their constitutional claims, the government attempted to "cure" the error by purporting to express that the company was "free to 'exercise [its] business judgment'" in deciding whether to advance fees. *Id*. at 145 (alteration in original).  The Second Circuit rejected the notion that the government had thereby cleared the taint of government influence. *Id*. at 146.  The court's ruling in this regard was based, in part, on the conclusion that

> it was unrealistic to expect [the company] to exercise uncoerced judgment . . . as if it had never experienced the government's pressure in the first place.  The government's intervention, coupled with the menace inherent in the [U.S. Attorney's policy], altered the decisional dynamic in a way that the district court could find irreparable.

*Id*. at 145.

So too here.  The Court's influence on Uber began with a command—a far stronger coercion than was ever present in *Stein*.  But even if the Court were now to withdraw that command, the proverbial bell will be difficult to "un-ring."  Uber knows that it will have to litigate its case in this Court, and further knows that the Court wants the company to use its full powers to compel Mr. Levandowski to waive his privileges and reveal materials and information.  Now Uber also knows that it confronts the prospect of an adverse jury instruction if it does not use its full powers "on its own initiative."  As things stand, issuing a threat to Mr. Levandowski's employment is "the only safe course" for Uber, *see id*. at 148—and that is exactly what the company has done.  Likewise, it would be "unrealistic to expect [Uber] to exercise uncoerced judgment . . . as if it had never experienced the [Court]'s pressure in the first place." *See id*. at 145.

For all of those reasons, regardless of whether some hypothetical court might issue the instruction contemplated in the Court's question number 3, in this case the Court can only avoid constitutional error by expressly assuring Uber that the Court will not punish the company—by

LEVANDOWSKI'S REPLY RE MOTION FOR INTERVENTION PURSUANT TO RULE 24 AND MODIFICATION OF ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROVISIONAL RELIEF
Case No. 3:17-cv-00939-WHA

way of an adverse jury instruction or any other means—for failing to terminate Mr. Levandowski if he does not produce the records and respond to the inquiries set forth in the Court's Order.

## V.      CONCLUSION

For all the foregoing reasons, the Court should grant Mr. Levandowski's motions to intervene and to modify the Preliminary Injunction Order.


Date:    May 30, 2017                            Respectfully submitted,


                                                 /s/
                                                 Miles Ehrlich
                                                 Ismail Ramsey
                                                 Amy Craig
                                                 Ramsey & Ehrlich

                                                 *Counsel for Non-Party Anthony
                                                 Levandowski*

LEVANDOWSKI'S REPLY RE MOTION FOR INTERVENTION PURSUANT TO RULE 24 AND MODIFICATION OF ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROVISIONAL RELIEF
Case No. 3:17-cv-00939-WHA