1    [Counsel listed on signature page]

2

3

4

5

6

7

8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                       SAN FRANCISCO DIVISION
11

12

13   WAYMO LLC,                              CASE NO. 3:17-cv-00939-WHA

14              Plaintiff,                    **JOINT CASE MANAGEMENT
           v.                                STATEMENT & [PROPOSED] ORDER**
15
     UBER TECHNOLOGIES, INC.;                Date:        June 7, 2017
16   OTTOMOTTO LLC; OTTO TRUCKING            Time:        8:00 a.m.
     LLC,                                    Location:    Ctrm. 8, 19th Floor
17
              Defendants.                    Date Filed:  February 23, 2017
18                                           Trial Date:  October 2, 2017

19                                           **PUBLIC REDACTED VERSION OF
                                             DOCUMENT SOUGHT TO BE SEALED**
20

21

22

23

24

25

26

27

28

Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, Patent Local Rule 2-1, the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, and the Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup, the parties to the above-titled action, Plaintiff Waymo LLC ("Waymo") and Defendants Uber Technologies, Inc. ("Uber"), Ottomotto LLC, and Otto Trucking LLC (collectively, "Defendants"), jointly submit this Case Management Statement and Proposed Order in advance of the Case Management Conference on June 7, 2017.

**Waymo's Statement**:  Waymo is ready to proceed on June 7.   While Charles Verhoeven, Waymo's lead trial counsel, will be in Washington D.C. arguing an appeal before the Federal Circuit next week during the currently-scheduled case management conference, in light of the extremely expedited schedule, Waymo believes that the case management conference should go forward and is prepared to proceed.   Although Defendants have proposed postponing the case management conference until a later date when their lead trial counsel is available, at the same time, Defendants insist that the hearings on their two pending motions and non-party Anthony Levandowski's pending motion stay on calendar on June 7.  Waymo submits it is unreasonable and unfair for them to suggest hearings go forward with their two motions and Mr. Levandowski's Motion (which Defendants have not joined, but have supported (Dkt. 514 at 3)), while the CMC not go forward.

**Defendants' Statement**:  Uber notes that its lead trial counsel, Arturo Gonzalez, is currently in the middle of a trial before Judge Gilliam which will continue through at least June 7, 2017.  To permit Mr. Gonzalez to attend the case management conference in this case, Uber will request that the conference be re-scheduled for June 16, 2017.  Uber has asked Waymo's counsel to agree to a short one-week continuance of the conference, but

Waymo's counsel, in this statement, has indicated its refusal to do so..  Uber will promptly

file an administrative motion to move the conference date.  Waymo claims that Defendants

"insist" that the three scheduled motions proceed on June 7.  That is not accurate.

Defendants are willing to continue their motion to dismiss to the new CMC date if that is

convenient for the Court.

1.      **JURISDICTION AND SERVICE**

This Court has subject matter jurisdiction over Waymo's federal trade secret claim

pursuant to 18 U.S.C. §§ 1836-39 *et seq*. and 28 U.S.C. §§ 1331 and 1343.  This Court has subject

matter jurisdiction over Waymo's claims for patent infringement pursuant to the Federal Patent

Act, 35 U.S.C. § 101 *et seq.* and 28 U.S.C. §§ 1331 and 1338(a).  The Court has supplemental

jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.  The

parties do not dispute personal jurisdiction, venue, or service.  All parties have been served.

2.      **FACTS**

**Waymo's Statement**

As set forth in detail in Waymo's Amended Complaint (Dkt. 23) and Preliminary

Injunction Motion (Dkt. 24), in December 2016, a LiDAR vendor inadvertently sent Waymo a

drawing of a circuit board used by Uber in connection with developing its custom LiDAR.  That

drawing appeared to copy Waymo's own design.  In February 2017, Waymo discovered that Uber

made a sworn declaration to a Nevada regulator confirming Uber's plan to use LiDAR built in-

house at Uber.

A former Waymo manager, Anthony Levandowski, illicitly downloaded more than 14,000

files from Waymo's confidential design server in late 2015, shortly before resigning from

Waymo.  Among the 9 GBs of data downloaded, 2 GBs relate to Waymo's proprietary LiDAR

designs, including the one that was sent by the LiDAR vendor.  Around the time Mr. Levandowski

downloaded Waymo's files, Mr. Levandowski confided in some Waymo colleagues that he

1   planned to "replicate" Waymo's LiDAR technology at a Waymo competitor.  Defendants' own

2   privilege log shows that two days after Mr. Levandowski left Waymo, Uber and Mr. Levandowski

3   were discussing an acquisition of Mr. Levandowski's company, which Uber ultimately purchased

4   for $680 million.  In its order granting Waymo's motion for a preliminary injunction in part, the

5   Court found that Uber "knew or should have known" that Mr. Levandowski had misappropriated

6   Waymo's trade secrets when it brought Mr. Levandowski on board.  (Dkt. 433 at 12.)  The Court

7   further found credible evidence to support the idea that Defendants are using at least two of

8   Waymo's trade secrets.  With respect to Trade Secret # 7 (█████████████████), the Court held that

9   "This ██████████████████████ would likely qualify as a trade secret.  Uber's Fuji indeed

10  ████████████████████████ Defendants do not deny this and have no credible

11  explanation for how they arrived at ███████████████████"  (*Id.* at 14.)  With respect to

12  Trade Secret # 2 ██████████████████), the Court held that, the fact "that Fuji — and, at

13  least on this record, no other LiDAR — copies such specific GBr3 specifications is striking

14  evidence suggesting that at least some information from Waymo's files has already found its way

15  into Uber's LiDAR designs."  (*Id.* at 15.)

16          Discovery to date has revealed that  at least two of Uber's LiDAR projects reflect

17  numerous Waymo trade secrets and at least one infringes Waymo's patents.

18          Substantial evidence of Defendants' knowledge of the bad acts (including trade secret

19  misappropriation) of Mr. Levandowski and other former Waymo employees has been withheld to

20  date on Defendants' massive privilege logs.  The privilege log Defendants provided in response to

21  the Court's March 16 Order, which required Defendants to "produce for inspection all files and

22  documents downloaded by Anthony Levandowski, Sameer Kshirsagar, or Radu Raduta before

23  leaving plaintiff's payroll and thereafter taken by them," "the card reader, thumb drive, or other

24  media used for the downloads, as well as all subsequent emails, memoranda, PowerPoints, text

25  messages, or notes that have forwarded, used, or referred to any part of said downloaded

26  material," and "all documents bearing on [the] deletion, destruction, or modification" of the

27  downloaded material, identifies over 3,000 responsive but withheld documents.

28

**Defendants' Statement**

As detailed in Defendants' Opposition to Waymo's Preliminary Injunction Motion (Dkt. 177), there is no evidence that any files allegedly taken from Waymo[1] were ever obtained by Defendants or used by Defendants' engineers to develop Defendants' LiDAR technology. An extensive search of Uber's computers has not yielded any of the 14,000 files Waymo alleges were misappropriated. Defendants are independently developing their own LiDAR system known as "Fuji," a dual bistatic design with multiple lenses that is starkly different from Waymo's patented single-lens (monostatic) LiDAR. Uber engineer Scott Boehmke began developing laser beam patterns in 2015 (well before Mr. Levandowski arrived at Uber) that informed the development of Fuji's design. Fuji does not infringe Waymo's patents on its single-lens design, Waymo's retained technical expert was forced to withdraw his prior erroneous opinion of infringement, and Waymo did not assert those patents against Fuji in its infringement contentions of May 23, 2017. Waymo has indicated that it is dropping its infringement contentions with respect to U.S. Patent 9,086,273 entirely.

Waymo accuses Fuji's transmit boards of incorporating Waymo's trade secrets, but the specifications reveal that every critical parameter in Fuji is different from its counterpart in Waymo's LiDAR. The general concepts that Waymo claims as trade secrets are known, routine design choices disclosed in the public literature. An earlier LiDAR design by Defendants known as "Spider" was never finished, never developed into a working prototype, and has been abandoned.

On May 11, 2017, the Court issued an order on Waymo's motion for a preliminary injunction partially granting "narrowly-tailored provisional relief" that "mainly prohibits Levandowski from working on Uber's LiDAR," but denying Waymo's requests for broader relief. (Dkt. 433 at 2, 23.) The Court observed that "not all of Waymo's 121 asserted trade secrets actually qualify as such, and few have been traced into the accused technology. Waymo's patent

---

[1] Defendants use "Waymo" to mean Waymo LLC, Google Inc., and Alphabet Inc.

infringement accusations on this motion also proved meritless." (*Id*. at 2.)  The Court also noted that "Waymo's descriptions of its asserted trade secrets follow a pattern of claiming broad swaths of solutions to general competing considerations and engineering tradeoffs rather than the single, specific solution adopted by Waymo.  The problem, of course, is that such considerations and trade-offs are known outside of Waymo." (*Id*. at 12-13.)  With respect to Waymo's first asserted trade secret, the Court concluded that "Waymo's supposed trade secret is nothing more than Optics 101." (*Id*. at 17.)

In compliance with the Court's order, Uber has undertaken further measures to confirm that none of the Waymo materials allegedly downloaded by Mr. Levandowski are present or being used at Uber.  Uber also directed Mr. Levandowski to fully cooperate in complying with the Court's order.  Mr. Levandowski declined to do so.  Uber terminated Mr. Levandowski's employment on May 26, 2017.

### 3.   <u>LEGAL ISSUES</u>

The principal disputed legal issues are:

- Whether Defendants have misappropriated any valid Waymo trade secrets in violation of the Defend Trade Secrets Act and the California Uniform Trade Secrets Act;

- Whether any such misappropriation has been willful;

- Whether Defendants have infringed any valid and enforceable claims of Waymo's U.S. Patent Nos. 8,836,922, 9,285,464, and 9,368,936;

- Whether any such infringement has been willful;

- Whether Defendants' conduct has constituted fraudulent and unfair business acts and practices in violation of California's Unfair Competition Law;

- Whether an injunction should issue against Defendants arising from the alleged trade secrets misappropriation, patent infringement, and unfair competition; and

- The amount of any damages owed Waymo by Defendants for the alleged trade secrets misappropriation and patent infringement, as well as any fees and costs owed Waymo.

Waymo reserves the right to raise additional factual or legal issues that may arise through the course of this action.

## 4.    MOTIONS

### A.    Pending Motions

- Waymo's Motion to Compel Production of Withheld Documents (Dkt. 321) is currently pending.  Defendants and Mr. Levandowski filed oppositions on May 8, 2017.  (Dkt. 369, 379.)  Waymo filed its reply on May 16, 2017.  (Dkt. 444.) Defendants sought leave to file a sur-reply on May 17, 2017 (Dkt. 456), and filed their sur-reply on May 19, 2017.  (Dkt. 474.)  Judge Corley held a hearing on Waymo's motion on May 25, 2017.  (Dkt. 506.)  As requested by the Court, Waymo filed a supplemental brief on May 30, 2017.  (Dkt. 523.)

- Defendants' Motion to Dismiss Waymo's Unfair Competition Law claim (Dkt. 312) is currently pending.  Waymo filed its opposition on May 12, 2017 (Dkt. 431), and Defendants filed a reply on May 19, 2017.  (Dkt. 475.)  A hearing is scheduled for June 7, 2017.

- Defendants' Motion to Stay (Dkt. 476) is currently pending.  Waymo filed an opposition on May 25, 2017 (Dkt. 511), and Defendants filed a reply on May 30, 2017. (Dkt. 518.)  A hearing is scheduled for June 7, 2017.

- Non-party Anthony Levandowski's Motion for Intervention and Modification of the Court's Preliminary Injunction Order (Dkt. 466) is currently pending.  Waymo filed an opposition on May 26, 2017 (Dkt. 512), and Anthony Levandowski filed a reply on May 30, 2017.  (Dkt. 519.)  A hearing is scheduled for June 7, 2017.

### B.    Anticipated Motions

The parties anticipate that the following motions may be brought:

**Waymo's Motions**

- Should Uber continue its strategy of obstructing discovery, Waymo anticipates various discovery motions may need to be filed and heard by Magistrate Judge Corley and potentially this Court.  These motions may include but are not limited to:  (1) further motion practice regarding the propriety and scope of Anthony Levandowski's Fifth Amendment assertions, particularly following Mr. Levandowski's submission of a further privilege log *in camera* on Friday, June 2, 2017; (2) motion practice regarding Stroz Friedberg's compliance with its third party subpoena; (3) motion practice regarding redactions to agreement between Stroz Friedberg and Anthony Levandowski; and (4) motion practice regarding an order to show cause with respect to Defendants' failure to comply with Preliminary Injunction Order.

- Pursuant to the Court's order granting Waymo's motion for a preliminary injunction in part (Dkt. 433), Waymo anticipates bringing a renewed motion for provisional relief after completing the "further expedited discovery in aid of possible further provisional relief" ordered by the Court.  (Dkt. 433 at 25.)

- Waymo anticipates moving for summary judgment on at least some of its claims.

**Defendants' Motions**

- Defendants anticipate moving for summary judgment on at least some of Waymo's claims.

- Should Waymo continue its strategy of overreaching discovery, Defendants anticipate various discovery motions may need to be filed and heard by Magistrate Judge Corley and potentially this Court, including potentially imposing a limit on the number of discovery requests permitted by the parties.  To date, Waymo has propounded 72

requests for production (RFPs) in the preliminary injunction phase, 28 RFPs as part of further expedited discovery, and 265 regular RFPs.

### 5.   AMENDMENTS OF PLEADINGS

**Waymo's Statement**

Waymo does not intend to amend the pleadings before the preliminary injunction hearing on May 3.

**Defendants' Statement**

Defendants have not yet answered Waymo's Amended Complaint.  Defendants' Motion to Dismiss Waymo's Unfair Competition Law claim (Dkt. 312) is currently pending and scheduled for hearing on June 7, 2017.

### 6.   EVIDENCE PRESERVATION

**Waymo's Statement**

Waymo has reviewed the ESI Guidelines and represents that it has taken reasonable and proportionate steps to preserve evidence to the issues reasonably evident in this action, including electronic data and materials.  It does not appear that Uber has taken similarly reasonable and proportionate steps to preserve evidence.  Uber alleges that it was anticipating litigation regarding the issues raised in this case starting in January 2016 but has "declined to answer questions about a litigation hold," including questions regarding whether a litigation hold was ever issued and when.  (4/19/17 Email from S. Rivera ("I did not confirm or deny the date any litigation hold issued.").)  In light of this, Waymo's position is that Uber should preserve any and all back-up tapes.

**Defendants' Statement**

Counsel for Defendants have reviewed the ESI Guidelines and represent that they have taken reasonable and proportionate steps to preserve evidence to the issues reasonably evident in this action, including electronic data and materials.  Defendants issued litigation holds as appropriate, including after Google commenced arbitration against Anthony Levandowski in October 2016.  Until then, Defendants were not on notice that litigation was probable, the standard

for when the duty to preserve attaches.  *See In re Napster Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006).  Defendants' document preservation efforts were proper.  Preserving back-up tapes would be an undue burden for which Waymo has offered no justification.

### 7.   INITIAL DISCLOSURES

The parties exchanged initial disclosures pursuant to Rule 26(a) on April 3, 2017.

### 8.   DISCOVERY

The parties anticipate taking discovery in accordance with the Federal Rules of Civil Procedure, the Local Rules, and the Court's Standing Order for Civil Cases.  Pursuant to Rule 26(f) and paragraph 8 of the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, the parties propose the following discovery plan.

#### A.   Discovery Taken To Date

Pursuant to the Court's order granting Waymo's motion for a preliminary injunction in part (Dkt. 433), Waymo and Defendants are engaging in further expedited discovery.  By order of Magistrate Judge Corley, Waymo must first exhaust its expedited discovery requests before proceeding with regular discovery.

#### B.   Scope of Anticipated Discovery

The parties expect to engage in additional fact discovery, including third party discovery, and expert discovery.

##### 1.   Waymo's Anticipated Discovery

In addition to the further expedited discovery that has been ordered by the Court, Waymo anticipates seeking additional discovery on at least the following topics:

- The design, development and operation of all LiDAR technologies by Uber, including those in testing and development;

- Uber's knowledge of Mr. Levandowski's porting of trade secret materials to Uber, including but not limited to the alleged due diligence report created for Uber in connection with its acquisition of Otto;

- The basis for Uber's alleged common interest privilege with Mr. Levandowski;

- Damages and harm caused by Uber's trade secret misappropriation, patent infringement, and unfair competition.

### 2. Defendants' Anticipated Discovery

Defendants are currently seeking discovery and anticipate seeking additional discovery on at least the following topics:

- The design, development and operation of all LiDAR technologies by Waymo;

- Waymo's delay in bringing this lawsuit;

- Waymo's motivations for litigating against Defendants and Mr. Levandowski;

- Waymo's practice of allowing competing side businesses;

- Waymo's failure to protect the confidentiality of its alleged trade secrets;

- Prior public disclosure of Waymo's alleged trade secrets, by either Waymo or third parties who independently developed technology claimed in Waymo's alleged trade secrets;

- Prior art to the asserted patents.

- Lack of damages or irreparable harm to Waymo.

### C. Proposed Limitations or Modifications Of the Discovery Rules

The parties agree on the following modification to the Federal Rules of Civil Procedure.

- The parties agree that privilege logs need not include documents authored following the filing of the Complaint in the first instance; however, each party reserves the right to request that the other party log one or more categories of

documents authored following the filing of the Complaint should a basis arise for such a request.

- Each side may serve up to 50 non-authentication requests for admission and unlimited authentication requests for admission.

The parties disagree as to the number of depositions that each party should be entitled to take.

**Waymo's Position**

Waymo proposes that each side may take 15 party depositions and 10 non-party depositions. Uber has already identified close to 30 party witnesses who communicated with Mr. Levandowski regarding LiDAR before Uber acquired Ottomotto and Otto Trucking, and Defendants will likely identify even more when they comply with Paragraph 4 of the Court's order granting Waymo's motion for a preliminary injunction in part (Dkt. 433). As for third parties, Defendants identified three third parties with an interest in the outcome of this litigation in their corporate disclosure statement; Defendants have pointed to third-party companies as part of their purported "independent development" story; and Waymo intends to depose the supplier that sent Waymo a schematic of one of Uber's PCBs last fall. In addition, Waymo intends to depose Stroz Friedberg LLC, the author of the due diligence report commissioned by Defendants.

Throughout discovery to date, Defendants have stonewalled Waymo at every turn, hiding the ball and refusing to provide relevant, responsive information even when under a Court order to do so. Moreover, the overall equities in this case favor permitting Waymo to conduct the discovery necessary to fully understand the extent to which Defendants have misappropriated and infringed Waymo's intellectual property. Defendants should not be heard to oppose Waymo's proposed deposition limits, which are reasonable for this case, on the basis that discovery regarding their misconduct is too burdensome for them.

**Defendants' Position**

It is Waymo that has insisted on the expedited trial date and demanded that the case be put on the fast track. Indeed, the Court recognized that Waymo was "the one that wants this on a hurry-up basis" and forewarned Waymo: "[Y]ou can't have everything. . . [Y]ou're not going to

1  get a full deck of cards.  You're going to get a half a deck of cards because it's all expedited. It's

2  impossible to get everything."  (Apr. 12, 2017 Hearing Tr. 97:-18-98:2.)

3     Fact discovery closes in less than two months.  During those two months, the parties will

4  be preparing invalidity contentions, damages contentions, and exchanging preliminary claim

5  constructions.  In addition, Waymo already took 12 depositions during the preliminary injunction

6  phase, and Defendants took eight.  The Court's order on preliminary injunction permits Waymo to

7  take an additional seven depositions on an expedited basis, of which Waymo has already taken

8  one.  In light of the compressed case schedule and the depositions taken to date, Defendants

9  propose that each party (Waymo, Uber/Ottomotto, and Otto Trucking) be limited to an additional

10  10 party depositions and 5 non-party depositions.

11         **D.      Report on Whether the Parties Have Considered Entering Into A
                      Stipulated E-Discovery Order**

12

13     During the Rule 26(f) conference, the parties discussed entering into a stipulated protective

14  order and a stipulated order regarding e-discovery.  The parties plan to submit these proposed

15  stipulated orders at or before the June 7 case management conference.

16

17         **E.      Discovery Disputes**

18         **Waymo's Statement**

19     Uber has been and continues to stonewall Waymo's discovery efforts and to obfuscate the

20  truth.  Uber has not conducted a reasonable inquiry to locate, much less produce, all documents

21  reflecting the confidential materials that Mr. Levandowski took from Waymo to use at Uber.  As

22  the Court noted in its order granting Waymo's motion for a preliminary injunction in part, the

23  narrative that Defendants have put forward in this case has "studiously omitted any inquiry into

24  Levandowski's work, essentially erasing him from the history of Uber's self-driving car

25  development." (Dkt. 433 at 7.)  And Uber has attempted to hide from discovery huge swaths of

26  relevant information in this case, including key documents and communications relating to Uber's

27  acquisition of Ottomotto and Otto Trucking.  As the Court recognized in the preliminary

28

injunction order, Defendants have engaged in the "relentless concealment of likely probative evidence, both documentary and testimonial, from Waymo's view."  For example, Uber has produced over 1,000 pages in privilege logs in this case claiming a combination of attorney-client, work product, and common interest privileges, even where such privileges clearly do not apply. Uber initially asserted a common interest privilege over the identity of Stroz Friedberg, the third party investigator retained to prepare the Due Diligence Report on Mr. Levandowski's trade secret theft.  Uber has also asserted the common interest privilege over documents that predate the February 22, 2016 term sheet, the first date on which Defendants even arguably had a common interest.  Uber also redacted important portions of the term sheet itself, and only agreed to produce an unredacted version at the insistence of Magistrate Judge Corley, who had to instruct Uber that "you are not allowed to redact documents because you just don't want to give that information. You can only redact it if you have a good faith belief that it is attorney-client privilege or work product privilege." (5/25/2017 Hearing Tr. at 23:10-13.)  Uber withheld until June 1 the agreement between Mr. Levandowski and Stroz Friedberg that Uber has been affirmatively relying on to justify its common interest privilege over the Due Diligence Report and the downloaded materials Mr. Levandowski provided to Stroz in connection with the Due Diligence investigation – and even then, only producing a heavily redacted copy.  Uber has also represented to Waymo and Special Master John Cooper that the redacted terms of this belatedly-produced agreement prevent it from asking Stroz Friedberg to return to Waymo the downloaded materials.  Uber also purports to assert Mr. Levandowski's privilege against self-incrimination (something that, if upheld, would be unprecedented in criminal law) and actively consults with Mr. Levandowski regarding this case while simultaneously arguing that no adverse inference against Uber should result from Mr. Levandowski's assertion of the Fifth.  Uber purports to have contemplated litigation over the very issues at the heart of this case starting in January 2016 but has "declined to answer questions about a litigation hold," including questions regarding whether a litigation hold was ever issued and when.

**Defendants' Statement**

Defendants have worked diligently and in good faith to comply with the Court's orders on expedited discovery, including the May 11, 2017 order on preliminary injunction, and to contend with Waymo's apparent strategy of flooding the litigation with discovery demands and disputes to distract attention from the lack of merit in its patent infringement and overbroad trade secret contentions.  Defendants complied with the March 16, 2016 order, which required that Defendants "produce for inspection all files and documents downloaded by Anthony Levandowski, Sameer Kshirsagar and Radu Raduta before leaving plaintiff's payroll and thereafter taken by them" and "all subsequent emails, memoranda, PowerPoints, text messages or notes that have forwarded, used or referred to any part of said downloaded material."  Contrary to Waymo's assertions, Defendants searched the computers of all three named individuals, their emails, their Google Drive files and the entire software/engineering repository.  With his permission, Defendants also searched Mr. Kshirsagar's personal phone and gmail and produced two emails that it located in Mr. Kshirsagar's personal email.  Defendants even went beyond what was ordered and interviewed all former Waymo employees and searched the data of seven additional former Waymo employees, which was all that could be searched in the short time frame.  Defendants produced over 5,000 files that were filename and hash matches for the 14,000 allegedly stolen files.  (Notably, Waymo has not asserted that any of these files are those that were allegedly stolen—because they are not.  The list of 14,000 files contains a significant number of standard files and filenames that are not trade secrets.)

Pursuant to the Court's May 11, 2017 order on preliminary injunction, Uber has undertaken numerous compliance measures and provided additional discovery to Waymo, including, but not limited to, the following:

(1)  Uber sent letters to Mr. Levandowski and Uber's officers, directors, and over 11,000 employees around the world instructing the recipients to respond if they possessed any of the allegedly downloaded materials or any copies, excerpts, or summaries thereof.  Uber received no affirmative responses.  Uber also sent letters to its LiDAR suppliers, all in an effort to comply with item no. 2 of the May 11, 2017 order.

(2)  Uber sent a survey to its employees in its effort to comply with items no. 4 and 5 of the May 11, 2017 order.

(3)  Uber has collected documents and information to prepare the required log of Mr. Levandowski's LiDAR-related communications, in compliance with item no. 5 of the May 11, 2017 order.  Further to this effort, Uber has begun conducting interviews with persons to whom Mr. Levandowski has mentioned LiDAR.

(4)  In a further effort to comply with item no. 2 of the May 11, 2017 order, Uber initially placed Mr. Levandowski on paid time-off.  When Mr. Levandowski failed to comply with Uber's request that he fully cooperate in complying with the Court's order, Uber terminated his employment on May 26, 2017.

(5)  On May 24, 2017, Uber allowed Waymo's attorneys and the special master to inspect its facilities for more than seven hours.  Uber has responded to numerous follow-up requests for information stemming from this inspection.

(6)  On May 26, 2017, Uber allowed Waymo's attorneys to inspect LiDAR-related source code.

(7)  On June 1, 2017, Uber allowed Waymo's attorneys to inspect more than 100,000 emails.

(8)  On May 30, 2017, Uber produced employee Mason Feldman for deposition on an expedited basis.

(9)  Uber is collecting and will be producing documents and information responsive to Waymo's expedited interrogatories and document requests.

Defendants' privilege logs demonstrate Defendants' diligence in attempting to comply with the expedited discovery schedule.  Counsel for Defendants have reviewed and logged over 3,000 privileged documents, setting forth each of the required categories of information.  Though voluminous, those privilege logs pertain to narrow subject matter, which warrants inclusion of the same or very similar privilege descriptions.  Defendants have not withheld non-privileged documents from production.  Defendants issued appropriate legal holds, including after Waymo

commenced arbitration proceedings against Anthony Levandowski in October 2016.  Until then, Defendants was not on notice that litigation with Waymo was *probable*, the applicable standard for when the duty to preserve attaches.

On May 25, Uber was ordered by the Court to produce the February 22, 2016 term sheet relating to the Uber/Ottomotto acquisition in unredacted form.  In doing so, Uber continues to stand by its assertions of various privileges, and has not waived those assertions.

Waymo also mischaracterizes Uber's representations regarding why Uber has not directed Stroz to do anything with respect to any allegedly downloaded files.  Uber has not done so because Uber does not have control over Mr. Levandowski's personal property, including any property he may have provided to Stroz.  Uber cannot compel a third party to produce documents that it does not control.  Uber directed Mr. Levandowski to return any downloaded files under his control, which would include any files that Mr. Levandowski may have provided to Stroz.  To date, he has not complied and therefore he has been terminated.

**9.      CLASS ACTIONS**

This section is not applicable to the above-captioned action.

**10.      RELATED CASES**

There are no cases related to the above-captioned action.

**11.      RELIEF**

**Waymo's Statement**

Waymo's First Amended Complaint (Dkt. 23) seeks the following relief:

- Judgment in Waymo's favor and against Defendants on all causes of action alleged;

- Preliminary and permanent injunctive relief;

- Trebling of all damages awarded with respect to infringement of the '922, '464, and '273 patents;

- Judgment that this is an exceptional case;

- Punitive damages;

- Restitution;

- Costs of suit;

- Prejudgment interest;

- Attorneys' fees and costs; and

- Such other and further relief as the Court may deem to be just and proper.

Waymo has been and will be irreparably harmed by Defendants' ongoing trade secret misappropriation, patent infringement, and unfair competition such that monetary damages are insufficient and preliminary and permanent injunctive relief are necessary.  To estimate past damages to the limited extent that damages are quantifiable here, Waymo will need, among other things, to understand the full extent of Defendants' use of Waymo's trade secrets and patented technology, the identity of all individuals who have ever had access to Waymo's confidential files (or information derived from those files), and the work each of those individuals has done for Defendants and/or other Waymo competitors.  Defendants have not been forthcoming on those subjects (Uber has not even completed its search for Waymo's files) and more discovery on those subjects is necessary.  To the extent Defendants satisfy their discovery obligations, Waymo expects to be able to provide a non-binding, good-faith estimate of the damages range expected for the case (along with an explanation for the estimate) after additional discovery, by June 26, 2017.

**Defendants' Statement**

Defendants seek the following relief:

- Denial of Waymo's preliminary injunction motion;

- Declaratory judgment that the patents are not infringed and invalid;

- Declaratory judgment that Waymo's asserted trade secrets are not trade secrets or were not misappropriated by Defendants in developing their LiDAR systems;

- Waymo take nothing for any of the claims asserted in its Amended Complaint;

- Costs of suit;

- Attorneys' fees and costs; and

- Such other and further relief as the Court may deem to be just and proper.

Defendants do not see a basis for awarding Waymo any damages in this action for the following reasons:  (1) Defendants do not infringe the asserted patents or the asserted patents are invalid; (2) the 14,000 files allegedly downloaded by Mr. Levandowski never crossed into Uber's grounds; and (3) Waymo's asserted trade secrets are not trade secrets or Defendants have not used Waymo's asserted trade secrets in developing its LiDAR systems.  In addition, this case is not a "money case."  Neither side has sold anything.  Further, Waymo is exposed to an award of attorney's fees if it persists in pursuing meritless claims.

### 12.   SETTLEMENT AND ADR

Pursuant to ADR L.R. 3-5, the parties have reviewed the Court's ADR handbook, discussed the available ADR procedures and considered whether this case would benefit from an ADR procedure.  This case has already been referred to Magistrate Judge Elizabeth D. Laporte for settlement, and a settlement conference took place on April 26, 2017, at 9:30 a.m.  (Dkt. 178.) The parties have also filed ADR certificates as required by Civil L.R. 16-8(b) and ADR L.R. 3-5 (b ).  (Dkt. 454, 461, 477.)

### 13.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties do not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

### 14.   OTHER REFERENCES

This case has already been referred to a special master for discovery disputes.  (Dkt. 235.) The parties do not otherwise believe that this case is suitable for reference to binding arbitration or the Judicial Panel on Multidistrict Litigation.

### 15.   NARROWING OF ISSUES

**Waymo's Statement**

Without prejudice to any positions that Waymo has taken in this case, and although an Uber engineer has confirmed that Uber considers the identity of its vendors and suppliers for its LiDAR systems to be confidential trade secrets, Waymo does not plan to proceed on the trade secrets listed in Section H of its Asserted Trade Secrets List (Dkt. 25-7) at this time.

In light of Defendants' position below, Waymo notes that the evidence to date confirms that Defendants' Spider system infringes Waymo's patents and that Defendants' Fuji and Spider systems each reflect numerous Waymo trade secrets.

**Defendants' Statement**

Waymo has conceded that Defendants' Fuji system does not infringe the claims of the '922, '464, and '273 patents.  (Kintz Dep. 211:5-7; 217:5-18).  In addition, Waymo has conceded that Defendants' Spider system components do not use the trade secrets discussed in Waymo's preliminary injunction motion, i.e., Asserted Trade Secret 1-4, 7, 14, 94-99 from Waymo's List of Asserted Trade Secrets (Dkt. 25-7).  (Kintz Dep. 223:10-13.)  In addition, Spider was a design idea that never evolved into a working prototype and was abandoned in October 2016, months before this lawsuit was filed.  Only one cavity was ever built and, because of problems with the design, that single cavity never even worked.  There is no evidence that Defendants have made, used, offered for sale, sold, or imported Spider, (Kintz Dep. 206:24-208:10), as required for patent infringement.

## 16.    EXPEDITED TRIAL PROCEDURE

The parties do not propose that this case proceed under the Expedited Trial Procedure of General Order 64 Attachment A.

## 17.    SCHEDULING

The parties' proposed schedule is detailed in Exhibit A.

## 18.    TRIAL

The parties understand that the Court has set a trial date of October 2, 2017.  The parties estimate that this case can be tried in eight court days.

### 19.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Each party has filed the Certification of Interested Entities or Persons required by Civil Local Rule 3-15.

### 20.   PROFESSIONAL CONDUCT

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### 21.   PLAN TO PROVIDE OPPORTUNITIES FOR JUNIOR LAWYERS

**Waymo's Plan**

Waymo plans to provide opportunities for junior lawyers working on this matter to argue discovery-related motions and portions of claim construction motions; to take or defend depositions of witnesses; and to examine witnesses at trial.  To date, Felipe Corredor (class of 2013) presented a portion of Waymo's technology tutorial to the Court, and Jeff Nardinelli (class of 2012) and Lindsay Cooper (class of 2012) have taken depositions for Waymo.

**Defendants' Statement**

Defendants plan to provide opportunities for junior lawyers working on this matter to argue motions, take or defend depositions of witnesses, and examine witnesses at trial.  To date, associates Esther Kim Chang and Michelle Yang presented Defendants' technology tutorial to the Court, and Ms. Chang has taken depositions for Defendants.

### 22.   CLAIM CONSTRUCTION

The parties provided the Court with a tutorial regarding the technology at issue on April 12.  The parties propose that claim construction issues be addressed in the context of dispositive motions pursuant to the schedule set forth in Exhibit A.

DATED:  June 1, 2017

/s Charles K. Verhoeven

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
    Charles K. Verhoeven (Bar No. 170151)
    charlesverhoeven@quinnemanuel.com
    David A. Perlson (Bar No. 209502)
    davidperlson@quinnemanuel.com
    Melissa Baily (Bar No. 237649)
    melissabaily@quinnemanuel.com
    John Neukom (Bar No. 275887)
    johnneukom@quinnemanuel.com
    Jordan Jaffe (Bar No. 254886)
    jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Attorneys for WAYMO LLC

DATED:  June 1, 2017

/s Arturo Gonzalez

MORRISON & FOERSTER LLP
MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
425 Market Street San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

BOIES SCHILLER FLEXNER LLP
KAREN L. DUNN (Pro Hac Vice)
kdunn@bsfllp.com
HAMISH P.M. HUME (Pro Hac Vice)
hhume@bsfllp.com
1401 New York Avenue, N.W.
Washington DC 20005
Telephone: 202.237.2727
Facsimile: 202.237.6131

Attorneys for Defendants UBER
TECHNOLOGIES, INC  and OTTOMOTTO
LLC.

DATED:  June 1, 2017

*s/ Shane Brun*

GOODWIN PROCTER LLP
Indra Neel Chatterjee (SBN 173985)
nchatterjee@goodwinlaw.com
Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA  94025
Tel:  (650) 752-3100
Fax: (650) 853-1038

Brett M. Schuman (SBN 189247)
bschuman@goodwinlaw.com
Shane Brun (SBN 179079)
sbrun@goodwinlaw.com
Rachel M. Walsh (SBN 250568)
rwalsh@goodwinlaw.com
Goodwin Procter LLP
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

Attorneys for Defendant OTTO TRUCKING LLC

1

## **ATTESTATION**

2

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this

3

document has been obtained from every other signatory to this document.

4

By:  */s/ Charles K. Verhoeven*

5

Charles K. Verhoeven

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and the parties shall comply with its provisions.

IT IS SO ORDERED.

Dated: _____

_____
HON. WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

## APPENDIX A

The parties propose that the Court enter the following schedule for this action:

| Events | Proposed Deadline |
|---|---|
| Case Management Conference | June 7, 2017 |
| Infringement Contentions | May 23, 2017 |
| Invalidity Contentions | June 2, 2017 |
| Exchange of Proposed Terms Needing Construction, | June 9, 2017 |
| Exchange of Preliminary Claim Constructions and Extrinsic Evidence | June 19, 2017 |
| Damages Contentions | June 26, 2017 |
| Close of Fact Discovery | July 21, 2017 |
| Opening Expert Reports | July 21, 2017 |
| Responsive Expert Reports | August 7, 2017 |
| Close of Expert Discovery | August 18, 2017 |
| Deadline to file Dispositive and *Daubert* Motions | August 23, 2017 |
| Oppositions to Dispositive and *Daubert* Motions | September 4, 2017 |
| Fed. R. Civ. P. 26(a)(3) Disclosures | September 4, 2017 |
| Serve Motions *in Limine* | September 8, 2017 |
| Oppositions to Motions *in Limine* | September 15, 2017 |
| Replies in support of Dispositive and *Daubert* Motions | September 15, 2017 |
| File Motions *in Limine* and Oppositions | September 18, 2017 |
| Joint Pretrial Order | September 18, 2017 |
| Objections to Fed. R. Civ. P. 26(a)(3) Disclosures | September 18, 2017 |
| Final Pretrial Conference Hearing on Dispositive and *Daubert* Motions | September 25, 2017 |
| Trial | October 2, 2017 |