MILES EHRLICH (Bar No. 237954)
miles@ramsey-ehrlich.com
ISMAIL RAMSEY (Bar No. 189820)
izzy@ramsey-ehrlich.com
AMY CRAIG (Bar No. 269339)
amy@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600 (Tel)
(510) 291-3060 (Fax)

Attorneys for Non-Party Anthony Levandowski

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                Plaintiff,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC., *et al.*,<br><br>                Defendants. | Case No. 3:17-cv-00939 WHA<br><br>**Second Supplement to Court-Ordered Fifth Amendment Submission**<br><br>*Public Version* |

## <u>TABLE OF CONTENTS</u>

I.   BACKGROUND ................................................................................................ 1

   A.   Factual Background .................................................................................. 1

   B.   Procedural Background ............................................................................. 1

II.   THE LEGAL BASES FOR MR. LEVANDOWSKI'S ASSERTION OF THE FIFTH
      AMENDMENT .............................................................................................. 3

   A.   The Constitution Prohibits the Court from Forcing Mr. Levandowksi to Be a Witness
        Against Himself ...................................................................................... 4

   B.   The Fifth Amendment Protects Not Just Against Directly-Incriminating Disclosures, But
        Also Against Those That Could Serve as an Indirect Link to Incriminating Evidence ....... 5

   C.   The Fifth Amendment Protects an Individual from Being Forced to Produce Records if
        Her "Act of Production" Would Implicitly Communicate Incriminating Information ...... 8

   D.   The Breadth of a Discovery Request Contributes to a Finding that the Act of Production
        Constitutes Compelled Incrimination ....................................................... 8

   E.   Mr. Levandowski's Fifth Amendment Rights Extend to Any Materials He Provided As
        Part of the Common-Interest Privileged Due Diligence Review ......................... 10

III.  THE "FOREGONE CONCLUSION" INQUIRY FOCUSES ON WHAT
      INFORMATION IS ALREADY KNOWN TO THE GOVERNMENT ......................... 12

IV.   MR. LEVANDOWSKI SHOULD NOT BE FORCED TO PUBLICLY REVEAL THE
      VERY INFORMATION THE FIFTH AMENDMENT PROTECTS HIM FROM
      DISCLOSING ............................................................................................. 14

V.    WAYMO'S REQUESTS CALL FOR POTENTIALLY INCRIMINATING RESPONSES
      AND THUS VIOLATE MR. LEVANDOWSKI'S FIFTH AMENDMENT RIGHTS
      UNDER *HUBBELL* ...................................................................................... 18

   A.   Request 1 ............................................................................................. 19

   B.   Request 3 ............................................................................................. 21

**TABLE OF AUTHORITIES**

**Cases**

*Bright*, 596 F.3d at 691 ............................................................................ 13, 18

*Curcio v. United States*, 354 U.S. 118 (1957) ............................................ 17

*Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000)..................................... 4, 22

*Doe v. United States (In re Grand Jury Subpoena)*, 383 F.3d 905 (9th Cir. 2004)...................... 8

*eBay, Inc. v. Digital Point Solutions, Inc.*, No. C 08-4052 JF (PVT),
 2010 U.S. Dist. LEXIS 7997 (N.D. Cal. Jan. 12, 2010) ........................... 14

*Fisher v. United States*, 425 U.S. 391 (1976) ................................... passim

*GE v. Liang*, No. CV 13-08670 DDP (VBKx),
 2014 U.S. Dist. LEXIS 36243 (C.D. Cal. Mar. 19, 2014) ......................... 14

*Haught v. City of Anderson*, No. 2:11-CV-1653-JAM-CMK, 2015 U.S. Dist. LEXIS 127823
 (E.D. Cal. Sept. 23, 2015)........................................................................ 7

*Henry v. Sneiders*, 490 F.2d 315 (9th Cir. 1974)..................................... 14

*Hoffman v. United States*, 341 U.S. 479 (1951)........................................ 6

*Holmes v. Collection Bureau of Am., Ltd.*, No. 09-02540-WHA, 2010 U.S. Dist. LEXIS 4253
 (N.D. Cal. Jan. 8, 2010) ......................................................................... 11

*In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI (EMC), 2006 U.S. Dist. LEXIS 41568
 (N.D. Cal. Jun 16, 2006).......................................................................... 12

*In re Grand Jury Proceedings, Subpoenas for Documents*, 41 F.3d 377 (8th Cir. 1994) ..... passim

*In re Grand Jury Subpoena*, 383 F.3d at 909 ................................... passim

*In re Harris*, 221 U.S. 274 (1911) ........................................................... 12

*In re Katz*, 623 F.2d at 126 ..................................................................... 11

*In re Syncor ERISA Litig.*, 229 F.R.D. 636 (C.D. Cal. 2005) ................... 15

*J.C. Penney Life Ins. Co. v. Houghton,* No. 86-2637, 1986 U.S. Dist. LEXIS 16072
 (E.D. Pa. Dec. 23, 1986) ...................................................................... 6, 22

NON-PARTY ANTHONY LEVANDOWSKI'S SECOND SUPPLEMENT TO COURT-ORDERED SUBMISSION – PUBLIC VERSION
CASE NO. 3:17-cv-00939 WHA

1    *Kastigar v. United States*, 406 U.S. 441 (1972) ...................................................................... 18

2    *Maffie v. United States*, 209 F.2d 225 (1st Cir. 1954) ............................................................ 6

3    *Malloy v. Hogan*, 378 U.S. 1 (1964) ........................................................................................ 4

4    *Marchetti v. United States*, 390 U.S. 39 (1968) ...................................................................... 14

5    *Quinn v. United States*, 349 U.S. 155 (1955) .......................................................................... 4

6    *SEC v. Chin*, No. 12-cv-01336-PAB-BNB, 2012 U.S. Dist. LEXIS 182252

7    (D. Colo. Nov. 29, 2012) .......................................................................................................... 15

8    *SEC v. Forster*, 147 F. Supp. 3d 223 (S.D.N.Y. 2015) ................................................ 16, 17, 21

9    *Shendal v. United States*, 312 F.2d 564 (9th Cir. 1963) .......................................................... 6

10    *Simpson v. United States*, 241 F.2d 222 (9th Cir.), *rev'd* 355 U.S. 7 (1957) ............................... 7

11    *Simpson v. United States*, 355 U.S. 7 (1957) .......................................................................... 7

12    *Teleglobe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.)*,

13    493 F.3d 345 (3rd Cir. 2007) .................................................................................................. 12

14    *United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003) ................................................ 11

15    *United States v. Chandler*, 380 F.2d 993 (2d Cir. 1967) .......................................................... 6

16    *United States v. Christensen*, 828 F.3d 763 (9th Cir. 2016) .................................................. 12

17    *United States v. Doe*, 465 U.S. 605 (1984) ...................................................................... 8, 9, 15

18    *United States v. Equihua-Juarez*, 851 F.2d 1222 (9th Cir. 1988) ............................................ 7

19    *United States v. Fox*, 721 F.2d 32 (2d Cir. 1983) .................................................................. 10

20    *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000) ............................................................ 11

21    *United States v. Hubbell*, 530 U.S. 27 (2000) ................................................................... passim

22    *United States v. Kahriger*, 345 U.S. 22 (1953) ...................................................................... 14

23    *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) ............................................................ 12

24    *United States v. Neff*, 615 F.2d 1235 (9th Cir. 1980) ................................................................ 6

25    *United States v. Ponds*, 454 F.3d 313 (D.C. Cir. 2006) ............................................................ 8

26    *United States v. Sideman & Bancroft, LLP*, 704 F.3d 1197 (9th Cir. 2013) ............................ 10

27

iii

28   NON-PARTY ANTHONY LEVANDOWSKI'S SECOND SUPPLEMENT TO COURT-ORDERED SUBMISSION – PUBLIC VERSION
CASE NO. 3:17-cv-00939 WHA

*United States v. Stone*, 976 F.2d 909 (4th Cir. 1992) ................................................... 13

*United States v. Zolin*, 491 U.S. 554 (1989) ................................................................ 18

**Statutes**

18 U.S.C. § 1832 ............................................................................................................ 5

18 U.S.C. § 6002 .......................................................................................................... 21

18 U.S.C. §§ 6002 ........................................................................................................ 16

On May 24, 2017, Judge Alsup informed the parties that any question concerning the validity of Mr. Levandowski's invocation of his Fifth Amendment privilege in response to Waymo's requests for production of records has been referred to Magistrate Judge Corley along with other discovery matters in the case.  Dkt. 501.  We make this submission to set forth the basis for Mr. Levandowski's invocation of his Fifth Amendment privilege with respect to any materials he is withholding under that privilege.  In his notice, Judge Alsup commented that Mr. Levandowski's submission "should not be a long document," Dkt. 501 at 1:19-22, but he noted certain deficiencies in both the *in camera* showing and public briefing Mr. Levandowski had made thus far.  With this submission, Mr. Levandowski seeks to correct any deficiencies, and, as compelled by Judge Alsup's initial April 12, 2017 Order, provide additional detail *in camera* regarding the proper legal basis under the Fifth Amendment for any materials Mr. Levandowski is withholding in response to Waymo's subpoena.

## I.   BACKGROUND

### A.   Factual Background

 Mr. Levandowski is not a party to this litigation.  Nevertheless, Waymo's lawsuit against Uber centers on the allegation that Mr. Levandowski stole Waymo's trade secrets for later use at Uber and the related allegation that Uber was complicit in Mr. Levandowski's "criminality." *See, e.g.,* Dkt. 512 at 11:1-6. On May 11, 2017, Judge Alsup formally referred this case to the United States Attorney's Office "for investigation of possible theft of trade secrets."  Dkt. 428.  Given the nature of the allegations, Mr. Levandowski retained personal counsel through whom he has repeatedly asserted his Fifth Amendment protection against self-incrimination.  *See, e.g.,* Dkts. 131, 147, 169, 230, 244, and 382.

### B.   Procedural Background

**April 9, 2017:**  On Sunday, April 9, 2017, Waymo served non-party Mr. Levandowski with a subpoena containing six broadly-framed document requests.  Because the Court's expedited discovery order authorized discovery only from parties (and Mr. Levandowski is not a

1

party), Mr. Levandowski informed Waymo that its subpoena was outside the scope of the Court's discovery order.  In response, Waymo asked the Court to authorize its subpoena and rule that its requests were not unduly burdensome. *See* Dkt. 212.

**April 12, 2017:**  At a hearing on April 12, Judge Alsup granted Waymo's request and modified the existing expedited discovery order to allow third-party discovery relating to Mr. Levandowski, including deposition and document requests.  Judge Alsup also struck four of Waymo's six requests as overbroad, but ordered Mr. Levandowski to respond to two requests (Request No. 1 and Request No. 3).  Judge Alsup also ordered Mr. Levandowski to file an *in camera* privilege log as well as a public brief setting out the basis for his invocation of the Fifth Amendment by April 19, 2017.

**April 14, 2017:**  Waymo took Mr. Levandowski's deposition, during which Mr. Levandowski asserted his Fifth Amendment rights.

**April 19, 2017:**  In compliance with the Court's April 12 order, Mr. Levandowski filed an *in camera* submission setting forth the basis for his Fifth Amendment invocation, along with a public brief setting forth, in more general terms, the legal principles underlying his Fifth Amendment assertions.  On the same day, Mr. Levandowski also produced the first of what would later amount to four separate sets of responsive, non-privileged documents to Waymo.

**April 24, 2017**:  Based on further review, Mr. Levandowski supplemented his *in camera* Fifth Amendment privilege submission to Judge Alsup. (Mr. Levandowski had this supplement prepared for submission on Friday, April 21, 2017, but the courthouse was unexpectedly closed for the day due to a power outage.).

**April 27, 2017 - May 11, 2017:** Mr. Levandowski made three additional productions of responsive, non-privileged documents to Waymo.

**May 22, 2017**:  At Waymo's request, Mr. Levandowksi engaged in a meet and confer to discuss Waymo's concerns with Mr. Levandowski's invocation of his Fifth Amendment rights.  On the call, Waymo requested briefing on the issues they raised and the Special Master

NON-PARTY ANTHONY LEVANDOWSKI'S SECOND SUPPLEMENT TO COURT-ORDERED SUBMISSION – PUBLIC VERSION
CASE NO. 3:17-cv-00939 WHA

instructed both parties to submit simultaneous two-page letter briefs to the Court by 4 pm the next day, May 23, 2017.[1]  Mr. Levandowski and Waymo both complied with that order.

**May 23, 2017:**  In accordance with the Special Master's directive, Mr. Levandowski filed a letter brief with the Court to address issues Waymo had asked the Court to address.

**May 24, 2017:**  Judge Alsup issued a notice stating that the sufficiency of Mr. Levandowski's *in camera* showing was to be decided by Judge Corley.  In his notice, Judge Alsup criticized Mr. Levandowski's public filing for failing "to provide 'enough of the argument' so that Waymo could respond."  Dkt. 501 at 2:1-6.  Judge Alsup observed that the "privilege log" he had ordered "should not be a long document and could be supplied in short order."  *Id.* at 1:19-20.  Judge Alsup also noted that the submissions made thus far *in camera* had not supported the full breadth of the Fifth Amendment privilege Mr. Levandowski was then invoking.  *Id.* at 3:19-21 ("Levandowski's submissions thus far have been wholly inadequate to support his sweeping claims of privilege.").

**May 25, 2017**[2]:  During a hearing on another motion, Judge Corley ordered Mr. Levandowski to supplement his *in camera* submission and his public filing by Friday, June 2, 2017 at 4:00 p.m.

## II.   THE LEGAL BASES FOR MR. LEVANDOWSKI'S ASSERTION OF THE FIFTH AMENDMENT

---

[1] The Court's May 24, 2017 Notice describes Mr. Levandowski's letter brief as "an apparently preemptive discovery letter brief."  Dkt. 501 at 2:23-25.  That was not the case. Waymo requested the briefing and the Special Master acceded to that request and directed Mr. Levandowski and Waymo to file "simultaneous" two-page letter briefs at 4 p.m. on May 23, 2017.  Both briefs were filed within minutes of each other.
[2] From April 9, 2017 through May 30, 2017, non-party Mr. Levandowski was also required to file nearly a dozen other briefs in this litigation, including emergency briefing with the Federal Circuit to stay the effect of the Court's April 10, 2017 Order. *See* Dkt. Nos. 371, 379, 382, 384, 466, 472, 473, 492, 519 and USCA Case No. 17-1904 Federal Circuit, Docket Nos. 2 and 8.

1  Judge Alsup has already observed that the central bases for Mr. Levandowski's

2  invocation of the Fifth Amendment are "uncontroversial":

3      *First*, the Fifth Amendment privilege against self-incrimination can be asserted in
       a civil proceeding when "the person invoking the privilege reasonably believes
4      that his disclosures could be used in a criminal prosecution, or could lead to other
       evidence that could be used in that manner." *Doe ex rel. Rudy-Glanzer v.*
5      *Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). *Second*, an individual may invoke
       the Fifth Amendment to avoid producing documents on the basis that the act of
6      production "may have a compelled testimonial aspect" as to that individual.
       *United States v. Hubbell*, 530 U.S. 27, 36 (2000); *Fisher v. United States*, 425
7      U.S. 391, 410 (1976).

8  Dkt. 202 at 6. As further discussed below, these principles prohibit the Court from compelling

9  Mr. Levandowski to produce the records Waymo now seeks—unless he is granted immunity.

10      **A.      The Constitution Prohibits the Court from Forcing Mr. Levandowksi to Be a
                   Witness Against Himself**
11

12      The Fifth Amendment privilege not to be a witness against oneself is a central tenet of

13  our democracy. *Quinn v. United States*, 349 U.S. 155, 161 (1955). "[A]ny compulsory

14  discovery by extorting the party's oath . . . to convict him of crime . . . is contrary to the

15  principles of a free government . . . . It may suit the purposes of despotic power, but it cannot

16  abide the pure atmosphere of political liberty and personal freedom." *Malloy v. Hogan*, 378 U.S.

17  1, 9 n.7 (1964). The Fifth Amendment's "protections against self-incrimination can be asserted

18  in any proceeding, be it civil, criminal, administrative, judicial, investigative or adjudicatory."

19  *Glanzer*, 232 F.3d at 1263. In the civil context, an individual may invoke the Fifth Amendment

20  privilege in all "circumstances in which the person invoking the privilege reasonably believes

21  that his disclosures could be used in a criminal prosecution, or could lead to other evidence that

22  could be used in that manner." *Id.* The application of the "privilege against self-incrimination

23  does not depend upon the *likelihood*, but upon the *possibility,* of prosecution." *Id.* (emphasis in

24  original).

25      There is no question that Mr. Levandowski's Fifth Amendment privilege is implicated by

26  the case at bench. Waymo has directly accused Mr. Levandowski of committing a crime. The

27                                          4

28  NON-PARTY ANTHONY LEVANDOWSKI'S SECOND SUPPLEMENT TO COURT-ORDERED SUBMISSION – PUBLIC
    VERSION
    CASE NO. 3:17-cv-00939 WHA

complaint alleges that Mr. Levandowski was involved in "steal[ing]" and "misappropriat[ing]" intellectual property.  *See, e.g.*, Dkt. 23 ¶¶ 10, 11 & p. 11 § IV.D.  Waymo's briefs are similarly threatening; a recent brief, for example, began with the assertion that "Mr. Levandwoski stole 14,000 highly sensitive files immediately prior to departing Waymo . . . ."  Dkt. 512 at 1.  Waymo's claims plainly conjure the threat of criminal sanction under 18 U.S.C. § 1832 and other similar federal or state statutes.[3]  And, indeed, on May 11, 2017, Judge Alsup formally referred this case to the United States Attorney's Office "for investigation of possible theft of trade secrets."  Dkt. No. 428.

Mr. Levandowski is thus faced with a clear "possibility[ ] of prosecution" and his Fifth Amendment privilege against self-incrimination is implicated.  *Glanzer*, 232 F.3d at 1263.  Put simply, then, in the current circumstances, Mr. Levandowski cannot be compelled to testify—either explicitly or implicitly—about whether he took alleged trade secrets when he departed Waymo's employ, or about any other topics that might tend to inculpate him.

### B. The Fifth Amendment Protects Not Just Against Directly-Incriminating Disclosures, But Also Against Those That Could Serve as an Indirect Link to Incriminating Evidence

The Fifth Amendment privilege applies not only in "those circumstances where the disclosures would . . . be directly incriminating" (as in a confession), but also to circumstances in which disclosures "could provide an indirect link to incriminating evidence."  *Glanzer*, 232 F.3d at 1263.  As the Supreme Court put it, "[t]he privilege afforded [by the Fifth Amendment] not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed

---

[3] The question whether the allegations in the complaint are accurate, of course, remains to be litigated — but that question is irrelevant to the issues before the Court in this motion, as "one of the Fifth Amendment's basic functions . . . is to protect innocent men . . . who otherwise might be ensnared by ambiguous circumstances."  *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (quoting *Grunewald v. United States*, 353 U.S. 391, 421 (1957), quotation marks omitted).  "[T]ruthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth."  *Id.*

NON-PARTY ANTHONY LEVANDOWSKI'S SECOND SUPPLEMENT TO COURT-ORDERED SUBMISSION – PUBLIC VERSION
CASE NO. 3:17-cv-00939 WHA

to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951).  Thus, the privilege applies when answers to questions could:

- "[P]rovide a lead or clue to evidence having a tendency to incriminate."  *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir. 1980).

- Disclose "a fact that could serve as a link in a chain of circumstantial evidence from which guilt might be inferred" or a "fact" that "might furnish a lead to a bit of evidence useful to the prosecution."  *Maffie v. United States*, 209 F.2d 225, 228 (1st Cir. 1954).

- "[G]ive a prosecutor a starting point from which he might proceed step by step to link the witness with criminal offenses."  *J.C. Penney Life Ins. Co. v. Houghton,* No. 86-2637, 1986 U.S. Dist. LEXIS 16072 at *9 (E.D. Pa. Dec. 23, 1986).

In short, the link-in-the-chain test is "broadly protective" and must be "liberally construed" by the courts.  *United States v. Chandler*, 380 F.2d 993, 997, 1000 (2d Cir. 1967).  A "claim of privilege is good unless the court can find that any prospective [disclosure] *could not possibly* incriminate or form a link in the chain."  *Shendal v. United States*, 312 F.2d 564, 565 (9th Cir. 1963) (emphasis added, citing *Hoffman*, 341 U.S. 479).

In this context, the seemingly benign character of requested evidence makes no difference: the Fifth Amendment protects individuals from disclosing *any* information, no matter how uncontroversial in isolation, that could potentially be used against that individual in a criminal prosecution or to gather information that could be used to establish guilt.  Thus, in *Hoffman*, the Supreme Court reversed a contempt conviction arising from a grand jury witness's refusal to answer questions about his occupation and about whether he had contacts with a particular person.  341 U.S. at 481.  A "special grand jury" had been empaneled to investigate criminal "rackets" involving alleged "violations of the customs, narcotics and internal revenue liquor laws of the United States, the White Slave Traffic Act, perjury, bribery, and other federal criminal laws."  And the *Hoffman* Court found that, under the circumstances of the investigation underway, answers to the questions posed could have disclosed that the witness was "engaged in . . . proscribed activity" or "forged links in a chain of facts imperiling petitioner with conviction of a federal crime."  *Id.* at 481, 487.

Similarly, in *Simpson v. United States*, 355 U.S. 7 (1957), the Solicitor General confessed error, and the Supreme Court summarily reversed a conviction for contempt when a witness refused to answer on Fifth Amendment grounds such seemingly innocuous queries as "would you please state your residence[,]" "[w]ould you give ... a brief resume of your educational background[,]" "did you ever go to high school[,]" and "[w]ere you ever in the armed forces of the United States?" *Simpson v. United States*, 241 F.2d 222, 223 (9th Cir.), *rev'd* 355 U.S. 7 (1957).

Likewise, in *United States v. Equihua-Juarez*, 851 F.2d 1222 (9th Cir. 1988), the court found that a man crossing the border had a Fifth Amendment right not to reveal his true name, as that information would have permitted border patrol agents to discover his prior illegal entry convictions, and would thereby have provided a link in a chain of evidence that would help prove that he was violating the law in trying to enter the country again. *Id*. at 1227.

In *Maffie*, the First Circuit found error where the district court had required a witness to answer, among other things, questions about his occupation and about whether he knew particular people—as the answers to those questions might have helped link the witness to criminal activities. 209 F.2d at 231-32. And in *Haught v. City of Anderson*, No. 2:11-CV-1653-JAM-CMK, 2015 U.S. Dist. LEXIS 127823 (E.D. Cal. Sept. 23, 2015), the court held that a witness, a police officer, need not answer questions at a deposition in a civil case seeking to hold a city liable for an alleged rape by another police officer of a woman in custody. The court held that the witness, who had allegedly transferred custody of the woman to the other officer at fault, properly invoked the Fifth Amendment in response to questions about whether he had in fact authorized the transfer of the woman and questions about the department's policy for determining who may authorize such a transfer. *Id.* at *4-5, 10-11.

Here, as demonstrated below, Waymo's requests seek materials that, if they exist at all, would either tend to directly incriminate Mr. Levandowski, or alternatively establish a link in a chain of evidence that could prove useful to the government in building a prosecution against

7

1   Mr. Levandowski.  Mr. Levandowski is privileged under the Fifth Amendment to refuse to

2   disclose either type of information.

3       **C.**    **The Fifth Amendment Protects an Individual from Being Forced to Produce**
                **Records if Her "Act of Production" Would Implicitly Communicate**

4                   **Incriminating Information**

5           As Judge Alsup recognized, it is "uncontroversial" that an individual may invoke the

6   Fifth Amendment privilege in responding to a request for the production of documents.  Dkt. No.

7   202 at 6.  Even when the contents of a pre-existing document are themselves not privileged, the

8   act of producing the document may implicate the Fifth Amendment privilege:

9
10          The act of producing evidence in response to a subpoena . . . has communicative
        aspects of its own, wholly aside from the contents of the papers produced.
11          Compliance with the subpoena tacitly concedes the existence of the papers
        demanded and their possession or control by the [subpoenaed witness].  It also
12          would indicate the [witness]'s belief that the papers are those described in the
        subpoena.

13  *Fisher*, 425 U.S. at 410; *see also Hubbell*, 530 U.S. at 32-36 (holding that, in response to a

14  subpoena for documents, a subpoenaed witness may refuse to produce because "the act of

15  production itself may implicitly communicate statements of fact," such as admissions that "the

16  papers existed, were in the [witness's] possession or control, and were authentic"); *United States*

17  *v. Doe*, 465 U.S. 605, 612 (1984) ("Although the contents of a document may not be privileged,

18  the act of producing the document may be.").  In short, "[b]y producing documents in

19  compliance with a subpoena, the witness admits that the documents exist, are in his possession or

20  control, and are authentic."  *Doe v. United States (In re Grand Jury Subpoena)*, 383 F.3d 905,

21  909 (9th Cir. 2004).  She also implicitly admits the "location" of the documents.  *Fisher*, 425

22  U.S. at 411; *see also Hubbell*, 530 U.S. at 45; *United States v. Ponds*, 454 F.3d 313, 323-24

23  (D.C. Cir. 2006).  All of "[t]hese types of admissions implicitly communicate statements of fact

24  that may lead to incriminating evidence."  *In re Grand Jury Subpoena*, 383 F.3d at 909.

25      **D.**    **The Breadth of a Discovery Request Contributes to a Finding that the Act of**

26                  **Production Constitutes Compelled Incrimination**

27

28  NON-PARTY ANTHONY LEVANDOWSKI'S SECOND SUPPLEMENT TO COURT-ORDERED SUBMISSION – PUBLIC
VERSION
CASE NO. 3:17-cv-00939 WHA

Further, the breadth of a records request is often an important factor in determining whether producing records in response to the request amounts to implicit testimonial incrimination.  Broad requests will more likely violate the Fifth Amendment privilege because they require a respondent to exercise her own discretion in reviewing sometimes voluminous records and deciding what is or is not responsive to the particular request, implicit testimony that goes beyond mere confirmation of an item's existence or possession.  Courts thus recognize that a discovery request's "broad language contributes to a finding that the response . . . may be testimonial."  *In re Grand Jury Subpoena*, 383 F.3d at 911; *see also Hubbell*, 530 U.S. at 41-42 ("*Given the breadth of the description* of the 11 categories of documents called for by the subpoena, the *collection and production of the materials demanded was tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents fitting certain broad descriptions* . . . . [I]t is undeniable that providing a catalog of existing documents fitting within any of the 11 broadly worded subpoena categories could provide a prosecutor with a 'lead to incriminating evidence,' or 'a link in the chain of evidence needed to prosecute.'") (emphasis added).  In *In re Grand Jury Subpoena*, the Ninth Circuit followed this central teaching in *Hubbell* and relied in part on the breadth of the records request at issue to find that the production of records would be testimonial:

> The breadth of the subpoena in this case far exceeded the government's knowledge about the actual documents that Doe created or possessed during his former employment and that he retained after he terminated his employment.  The government probably could identify with sufficient particularity the existence of [certain] e-mails . . . .  The government, however, failed to draft the subpoena narrowly to identify the documents that it could establish with reasonable particularity.  Thus, on the record before us, the subpoena's breadth far exceeded the reasonably particular knowledge that the government actually possessed when it served the subpoena on Doe.

383 F.3d at 910-11; *see also United States v. Doe*, 465 U.S. 605, 614 n.12 (1984) (quoting the court of appeals for the proposition that "[t]he most plausible inference to be drawn from the broad-sweeping subpoenas is that the Government, unable to prove that the subpoenaed

documents exist . . . is attempting to compensate for its lack of knowledge by requiring the appellee to become, in effect, the primary informant against himself"); *In re Grand Jury Proceedings, Subpoenas for Documents*, 41 F.3d 377, 380 (8th Cir. 1994) ("The broader, more general, and subjective the language of the subpoena, the more likely compliance with the subpoena would be testimonial."); *United States v. Fox*, 721 F.2d 32, 38 (2d Cir. 1983) ("The inference we draw from this broad-sweeping summons is that the government is attempting to compensate for its lack of knowledge by requiring [the witness] to become the primary informant against himself."). As discussed in Part V, *infra*, the broad requests in this case violate the Fifth Amendment in the same way as the requests in *Hubbell*, *In re Grand Jury Proceedings*, and the other above-cited cases.

### E.   Mr. Levandowski's Fifth Amendment Rights Extend to Any Materials He Provided As Part of the Common-Interest Privileged Due Diligence Review

In responding to Waymo's subpoena, Mr. Levandowski has interpreted the document requests as covering materials (if any exist) that Mr. Levandowski may have provided to Stroz Friedberg under a common interest joint defense agreement.[4] Such materials would remain Mr. Levandowski's property, are within his constructive possession and control, and are protected from disclosure by the same Fifth Amendment principles discussed throughout this brief.

In particular, the Fifth Amendment's protection against the compelled disclosure of records "extends to prevent an individual's attorney from being compelled to produce documents if that production would violate the individual's Fifth Amendment rights." *United States v. Sideman & Bancroft, LLP*, 704 F.3d 1197, 1201 (9th Cir. 2013).

> In *Fisher* [ ], the Supreme Court explained that where an individual transfers documents to his or her attorneys to obtain legal assistance . . . , those documents, 'if unobtainable by summons from the client, are unobtainable by summons directed to the attorney by reason of the attorney-client privilege.' Accordingly, [the attorney] does not have to produce the . . . records if doing so violates [the individual]'s Fifth Amendment rights.

---

[4] The parties are separately litigating a subpoena issued by Waymo to Stroz itself. That litigation raises some of the same issues as the dispute discussed in this brief.

NON-PARTY ANTHONY LEVANDOWSKI'S SECOND SUPPLEMENT TO COURT-ORDERED SUBMISSION – PUBLIC VERSION
CASE NO. 3:17-cv-00939 WHA

1   *Id.* at 1201-02 (quoting *Fisher*, 425 U.S. at 405; citation omitted); *see also In re Katz*, 623 F.2d

2   at 126 (describing the two questions to be addressed under *Fisher*: "(1) Would the documents in

3   issue be privileged under the fifth amendment had they remained in the possession of [the client]

4   and had the subpoena been directed to him? [and] (2) Are they protected by the attorney-client

5   privilege while in the possession of [the attorney]?"); Dkt. 202 at 8 (Judge Alsup explaining that

6   "the attorney-client privilege immunizes a lawyer against compelled production if two

7   requirements are met.  First, the client must be privileged against production of the document in

8   question, 'either as a party at common law' or under the Fifth Amendment.  Second, the client

9   must have transferred the document in question to the attorney 'for the purpose of obtaining legal

10  advice.'" (emphasis omitted; quoting *Fisher*, 425 U.S. at 404-05)).

11          The same result must obtain when an individual transfers records pursuant to a common

12  interest agreement, as common interest or joint-defense agreements are "an extension of the

13  attorney-client privilege."  *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000).  "A joint

14  defense agreement establishes an implied attorney-client relationship" between individuals and

15  the attorneys of other parties to the agreement.  *Id.*  Thus, when an individual is privileged

16  against production of a record pursuant to the Fifth Amendment, and transfers that record as part

17  of a common interest communication for the purpose of obtaining legal advice, under the

18  reasoning of *Fisher*, the possessor of the record must be immunized from compelled disclosure

19  of the record.

20          Previous briefing established that Mr. Levandowski joined Uber and others in a valid

21  common interest agreement.  *See* Dkts. 369, 370, 372, 374, 375, 376, 378, 379, 380, 381, 383,

22  384; *see also Henke*, 222 F.3d at 637; *Holmes v. Collection Bureau of Am., Ltd.*, No. 09-02540-

23  WHA, 2010 U.S. Dist. LEXIS 4253 at *5-6 (N.D. Cal. Jan. 8, 2010); *United States v. Bergonzi*,

24  216 F.R.D. 487, 495 (N.D. Cal. 2003).  Stroz Friedberg was retained by members of the common

25  interest group, and any materials it obtained from Mr. Levandowski were reviewed in order to

26  facilitate the attorneys' provision of legal advice to the various parties to the agreement.  *See*

27                                                   11

28

1  Dkts. 369, 370, 372, 374, 375, 376, 378, 379, 380, 381, 383, 384.[5]  Accordingly, Mr.

2  Levandowski's communication or production of any potentially incriminating records for review

3  by Stroz Friedberg—if any such production occurred—was privileged.  *See United States v.*

4  *Christensen*, 828 F.3d 763, 802 (9th Cir. 2016); *Teleglobe Communs. Corp. v. BCE, Inc. (In re*

5  *Teleglobe Communs. Corp.)*, 493 F.3d 345, 359 (3rd Cir. 2007); *United States v. Kovel*, 296 F.2d

6  918, 922 (2d Cir. 1961); *In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI (EMC), 2006

7  U.S. Dist. LEXIS 41568 at *18-20 (N.D. Cal. Jun 16, 2006).

8       Thus, as to the first prong of the *Fisher/Katz* inquiry, this brief and the accompanying *in*

9  *camera* submissions establish that Mr. Levandowski is himself privileged against production of

10 any responsive records in question.  And then, as to the second prong, because he transferred

11 responsive documents (if any) for the purpose of obtaining legal advice, they remain privileged

12 against compelled disclosure under the Fifth Amendment, as extended through the attorney-

13 client and common interest privilege.

14 **III.   THE "FOREGONE CONCLUSION" INQUIRY FOCUSES ON WHAT
        INFORMATION IS ALREADY KNOWN TO THE GOVERNMENT**

15

16      The Fifth Amendment act-of-production privilege can only be overcome in cases in

17 which the "existence and location" of records under subpoena are a "foregone conclusion" and

18 the witness "adds little or nothing to the sum total of the Government's information by

19 conceding that he in fact has the [documents]"; in such cases, no Fifth Amendment right is

20 implicated because the "question is not of testimony but of surrender."  *Fisher*, 425 U.S. at 411

21 (quoting *In re Harris*, 221 U.S. 274, 279 (1911)); *see also Hubbell*, 530 U.S. at 45; *Bright*, 596

22 F.3d at 692; *In re Grand Jury Subpoena*, 383 F.3d at 910.

23      When the government seeks records from a witness whose Fifth Amendment privilege is

24 implicated by the circumstances of a case, the government cannot compel production unless it

25
26 [5] The parties are about to brief this issue more extensively for the Court.  Further briefing concerning
   Waymo's subpoena to Stroz Friedberg, which raises some of these same legal issues, will be filed next
   week.

27                                                    12

1   can first establish that "the documents' existence, the documents' authenticity and respondent's

2   possession or control of the documents" is already known to a "foregone conclusion." *Bright*,

3   596 F.3d at 692 (citation omitted).  And notably, "[t]he government bears the burden of proof

4   and *must have had the requisite knowledge before issuing the summons or subpoena*." *Id.*

5   (emphasis added); *see also In re Grand Jury Subpoena*, 383 F.3d at 911 ("It is the quantum of

6   information possessed by the government *before it issues the relevant subpoena* that is central to

7   the foregone conclusion inquiry." (quotation marks omitted, emphasis added)).  Put another way,

8   "the government is required . . . to establish the existence of the documents sought and [the

9   witness]'s possession of them with 'reasonable particularity' before the existence and possession

10  of the documents could be considered a foregone conclusion and production therefore would not

11  be testimonial." *In re Grand Jury Subpoena*, 383 F.3d at 910 (quoting *Hubbell*, 530 U.S. at 44).

12      Similarly, "[t]he authenticity prong of the foregone conclusion doctrine requires the

13  government to establish that it can independently verify that the compelled documents 'are in

14  fact what they purport to be.'" *Id.* at 912 (quoting *United States v. Stone*, 976 F.2d 909, 911 (4th

15  Cir. 1992)).  "Independent verification not only requires the government to show that the

16  documents sought to be compelled would be admissible independent of the witness' production

17  of them, but also inquires into whether the government is compelling the witness to use his

18  discretion in selecting and assembling the responsive documents, and thereby tacitly providing

19  identifying information that is necessary to the government's authentication of the subpoenaed

20  documents." *Id*.

21      This is a civil case, of course, and the government is not a litigant before this Court.  But

22  the "foregone conclusion" inquiry has the same focus here as it would in a criminal case.  In

23  deciding whether compelled production of records might be *incriminating* to Mr. Levandowski,

24  the question is whether the inherent testimonial aspects of production would provide *the*

25  *government* with new or additional information about the existence, authenticity, possession or

26  location of records that it did not otherwise have at the time the subpoena was issued.  *See GE v.*

1   *Liang*, No. CV 13-08670 DDP (VBKx), 2014 U.S. Dist. LEXIS 36243 at *13-15 (C.D. Cal. Mar.

2   19, 2014); *eBay, Inc. v. Digital Point Solutions, Inc.*, No. C 08-4052 JF (PVT), 2010 U.S. Dist.

3   LEXIS 7997 at *21-22 (N.D. Cal. Jan. 12, 2010); *see also Henry v. Sneiders*, 490 F.2d 315, 317

4   (9th Cir. 1974).

5          Undersigned counsel is not aware of any active government investigation into the matters

6   at issue in this case (although, as discussed, Judge Alsup has referred the case to the United

7   States Attorney's Office for investigation).  Thus, at this stage, one can only assume that

8   essentially *any* revelation by Mr. Levandowski about the existence, authenticity, possession, or

9   location of records would add to the government's quantum of information.  And to the extent

10  any such documents have the potential to be incriminating—either because they are directly

11  inculpatory or because they could provide a prosecutor with a clue or an indirect link in a chain

12  to other inculpatory information—Mr. Levandowski is privileged under the Fifth Amendment to

13  refuse production.

14  **IV.   MR. LEVANDOWSKI SHOULD NOT BE FORCED TO PUBLICLY REVEAL
         THE VERY INFORMATION THE FIFTH AMENDMENT PROTECTS HIM
15       FROM DISCLOSING**

16          Waymo has consistently asserted that Mr. Levandowski should be required to produce

17  specific information about the records, if any, over which he claims a Fifth Amendment

18  privilege.  That requirement, however, would turn the Fifth Amendment inquiry on its head.

19          The information that is protected by Mr. Levandowski's Fifth Amendment privilege is

20  information concerning the existence, possession, location and authenticity of any records over

21  which the privilege is claimed.  *See* Parts II & III, *supra*.  Mr. Levandowski cannot produce to

22  Waymo a traditional privilege log or otherwise divulge the identity of any records over which he

23  asserts the privilege because even revealing the existence (or possession) of any such records

24  would disclose the information that is expressly protected by the privilege itself.  Mr.

25  Levandowski should not be compelled to "to prove guilt to avoid admitting it."  *Marchetti v.*

26  *United States*, 390 U.S. 39, 50 (1968) (quoting *United States v. Kahriger*, 345 U.S. 22, 34 (1953)

27                                              14

28  NON-PARTY ANTHONY LEVANDOWSKI'S SECOND SUPPLEMENT TO COURT-ORDERED SUBMISSION – PUBLIC
    VERSION
    CASE NO. 3:17-cv-00939 WHA

1    (Jackson, J., concurring)).

2           For that very reason, courts have refused to require a litigant who raises a Fifth

3    Amendment privilege against compelled production of records to produce a detailed privilege

4    log.  *See SEC v. Chin*, No. 12-cv-01336-PAB-BNB, 2012 U.S. Dist. LEXIS 182252 at *26 (D.

5    Colo. Nov. 29, 2012) ("requiring [respondents] to provide a detailed privilege log of the

6    documents claimed to be subject to the protections of the Fifth Amendment . . . is testimonial,

7    could be incriminating, and falls within the protection against self-incrimination"); *In re Syncor*

8    *ERISA Litig.*, 229 F.R.D. 636, 649 (C.D. Cal. 2005) (rejecting a motion to compel a privilege log

9    because "requiring defendant [ ] to produce a privilege log listing responsive documents may

10   incriminate defendant [ ] by forcing him to 'admit that the documents exist, are in his possession

11   or control, and are authentic'").

12          Likewise, courts applying the Fifth Amendment privilege reject discovery requests *in*

13   *their entirety* when they require production of broad categories of documents.  As emphasized by

14   the Supreme Court in *Hubbell*, a broad discovery request is akin to requiring the respondent to

15   answer detailed interrogatory requests or a series or pointed oral questions, an outcome that can

16   never be compelled when such answers would tend to incriminate the respondent.  *See Hubbell*,

17   530 U.S. at 41-42; *United States v. Doe*, 465 U.S. at 614 n.12; *In re Grand Jury Subpoena*, 383

18   F.3d at 910-11; *In re Grand Jury Proceedings, Subpoenas for Documents*, 41 F.3d at 380; *Fox*,

19   721 F.2d at 38.  When the courts consider broad discovery demands in the context of a Fifth

20   Amendment act of production assertion, they do not require the responding litigant to pick

21   through his documents and prove how the production of each item would tend to incriminate.

22   The courts, instead, simply quash the offending request.

23          For instance, in *In re Grand Jury Subpoena*, the Ninth Circuit found that the broad

24   requests at issue were testimonial in nature, but it remanded the case for a determination whether

25   the production of records "would be incriminating."  383 F.3d at 913.  The court ordered that

26   "[i]f the testimonial production would be incriminating, the motion to quash should be granted

27                                          15

unless the government secures an immunity order . . . ."  *Id.*; *see also In re Grand Jury Proceedings, Subpoenas for Documents*, 41 F.3d at 381 ("We conclude that the act of producing at least some of the subpoenaed documents would involve compelled testimonial self-incrimination in violation of the [respondents'] fifth amendment privilege.  The government cannot enforce the subpoenas without granting use immunity pursuant to 18 U.S.C. §§ 6002, 6003 or significantly narrowing the scope of the subpoenas.").

To similar effect is *SEC v. Forster*, 147 F. Supp. 3d 223 (S.D.N.Y. 2015), a case in which a civil defendant in an SEC matter invoked his Fifth Amendment privilege against compelled production, and the SEC argued that the defendant's assertion of privilege was "impermissibly broad" and that the respondent "must explain the privilege's application to each withheld document."  *Id.* at 228.  The court disagreed, however, explaining:

> [A] document-by-document analysis by [the respondent] would not be useful to determining whether [the respondent] has validly asserted the act-of-production privilege, and the SEC has not explained how such a proffer would even work. The act-of-production privilege does not focus on the content of the individual documents because it is not the content of the documents — which was not compelled — but the act of producing them that might trigger the act-of-production protection under the Fifth Amendment.

*Id.*

As discussed in more detail in Part V, *infra*, Waymo's requests in this matter sweep broadly, and they are focused explicitly on trying to establish that Mr. Levandowski intentionally stole Google files or other data.  The subpoena seeks materials that (a) either constitute misappropriated information or could help demonstrate that Mr. Levandowski wrongfully possessed such materials, as well as (2) communications with Uber that might help establish his allegedly improper intent or motive, or at the very least guide a prosecutor on how to gather further evidence about alleged misappropriation or other purported misconduct.  Further, given the breadth of the requests, as in *Hubbell*, "the collection and production of the materials demanded [would be] tantamount to answering a series of interrogatories asking [Mr.

16

Levandowski] to disclose the existence and location of particular" incriminating materials and—as the process of generating this filing has amply demonstrated—it would "unquestionably [be] necessary for [Mr. Levandowski] to make extensive use of 'the contents of his own mind' in identifying" any records responsive to Waymo's requests.  530 U.S. at 42-43 (quoting *Curcio v. United States*, 354 U.S. 118, 128 (1957)).

The lesson of the precedents discussed above is that this Court must approach with extreme caution broad requests like those that appear in Waymo's subpoena.  Unless Waymo can show that its subpoena seeks only particular materials about which *the government* was already aware—with enough particularity to render it a "foregone conclusion" *such that the demand is akin to mere surrender*—the subpoena requests should be quashed in their entirety.  *See, e.g., In re Grand Jury Subpoena*, 383 F.3d at 913; *In re Grand Jury Proceedings, Subpoenas for Documents*, 41 F.3d at 381; *Forster*, 147 F. Supp. 3d at 229, 231.

But here, the record falls well short of even the showings found deficient in *Hubbell* or *In re Grand Jury Subpoena*.  There has been no showing that the government knows any of the information Mr. Levandowski would be compelled to provide about the existence, possession, location, or identity of any incriminating documents that may exist—or indeed that the government knows any particular information at all about this case.  *See* Part III, *supra*.  To paraphrase the Supreme Court in *Fisher,* the broad and incriminating requests in this case, and the absence of any showing of foregone conclusion, raise the "question of testimony"—not "surrender."  *Fisher*, 425 U.S. at 411 (finding no Fifth Amendment violation in compelled production when the "question is not of testimony but of surrender").  On this basis alone, the requests should be quashed.

We recognize, however, that Judge Alsup has required Mr. Levandowski to make an *in camera* submission concerning the contours of his Fifth Amendment privilege, and we hereby comply with his order.  See Dkt. 230 (4/12/2017 Tx) at 77-79 (Judge Alsup's ruling that, in order to assert his Fifth Amendment privilege against compelled production of records, Mr.

17

Levandowski will "have to give me a[n *in camera*] privilege log . . . . I'm not ruling against the ultimate assertion of the privilege, but I am saying that you've got to do more than just say in court 'Fifth Amendment.'  You have to do a privilege log . . . . I'm not ruling against you yet on that, on the ultimate answer, but I have to have it.").

It is well-established that an *in camera* submission of information does not itself destroy the claimed privilege.  *Bright*, 596 F.3d at 691 (citing *United States v. Zolin*, 491 U.S. 554, 569 (1989)).  But the Court should not require Mr. Levandowski to make any further public disclosures of information, since doing so would destroy the very privilege he is entitled to protect.

Finally, we ask the Court to take care, in the course of governing the ongoing litigation, to respect Mr. Levandowski's constitutional right to avoid revealing the existence, possession, location, and authenticity of potentially incriminating records.  Any public reference to, or disclosure of, the information set forth in Mr. Levandowski's *in camera* submission would impair Mr. Levandowski's Fifth Amendment rights and subject any eventual state or federal prosecutors to the "the affirmative duty [of having] to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar v. United States*, 406 U.S. 441, 460-61 (1972).

## V.    WAYMO'S REQUESTS CALL FOR POTENTIALLY INCRIMINATING RESPONSES AND THUS VIOLATE MR. LEVANDOWSKI'S FIFTH AMENDMENT RIGHTS UNDER *HUBBELL*

Each of Waymo's document requests broadly seek records whose production—if they exist—could tend to incriminate Mr. Levandowski under the legal principles discussed above. As such, the Court should deny Waymo's motion to compel Mr. Levandowski to produce responsive records.

In this section, which will be filed in the public docket, we describe why the responses to Waymo's requests could tend to incriminate Mr. Levandowski.  In the section below, which will

NON-PARTY ANTHONY LEVANDOWSKI'S SECOND SUPPLEMENT TO COURT-ORDERED SUBMISSION – PUBLIC VERSION
CASE NO. 3:17-cv-00939 WHA

be filed solely *in camera*, we will describe any responsive materials that may exist, and provide further relevant information to the Court.

### A.    Request 1

In its Request for Production No. 1, Waymo seeks:

> The Misappropriated Materials, including **any media that contains or contained the Misappropriated Materials**, any **documents** derived from, or **reflecting the substance of**, the **Misappropriated Materials** outside of Waymo, and any documents reflecting any meetings or discussions regarding the substance of the Misappropriated Materials outside of Waymo.

Dkt. 212-1 (Waymo subpoena to Anthony Levandowski, April 9, 2017) at 7 (emphasis added).

Waymo defines "Misappropriated Materials" as follows:

> "MISAPPROPRIATED MATERIALS" refers to **all GOOGLE and WAYMO DOCUMENTS and materials**, whether digital or physical, and regardless of the manner stored, **for which LEVANDOWSKI retained possession, without authorization** of either GOOGLE or WAYMO, after LEVANDOWSKI's employment with GOOGLE/WAYMO ended. Without limitation, MISAPPROPRIATED MATERIALS includes at least: (i) each of the more than 14,000 digital files downloaded by LEVANDOWSKI on or about December 11, 2015 from the SVN repository; (ii) each file copied by LEVANDOWSKI from his GOOGLE laptop to an RDF5 USB 3.0 card reader on or about December 14, 2015; (iii) each of the five files titled: PBR Intensity Calibration; Pbr Extrinsic Calibration; Tx and Rx tuning Instructions; GBr Assembly Flowchart SOP; and TBR Testing Station that were exported by LEVANDOWSKI from Google Drive to a personal device on or about January 4, 2016; and (iv) the file titled: Chauffer TL weekly updates – Q4 2015 exported by LEVANDOWSKI from Google Drive to a personal device on or about January 11, 2016.

*Id.* at p. 3 (emphasis added).

This request plainly seeks records that are inherently incriminating.  At its very essence, the request says: "give us back the stuff we think you stole."  To the extent that Mr. Levandowski still possesses any Google or Waymo records he was not authorized to retain, his act of producing such documents now would obviously tend to inculpate Mr. Levandowski in criminal activity, as it would tacitly admit that he did, in fact, take or retain materials without authorization.  *Glanzer*, 232 F.3d at 1263.

19

Plainly, any production of records that constitute actual trade secrets would directly incriminate Mr. Levandowski.  But even as to "Misappropriated Materials" that are not trade secrets, it takes little effort to imagine how a prosecutor might use this sort of evidence to establish intent, as Rule 404(b) evidence, or in cross-examining a defendant on the witness stand. If nothing else, compelled production of Google information that Mr. Levandowski kept after leaving Google would "give a prosecutor a starting point from which he might proceed step by step to link the witness with criminal offenses." *J.C. Penney Life Ins. Co.,* 1986 U.S. Dist. LEXIS 16072 at *9; *see also Glanzer*, 232 F.3d at 1263 (stating that the "privilege against self-incrimination . . . covers those circumstances where the disclosures would not be directly incriminating, but could provide an indirect link to incriminating evidence"); Part II.B, *supra*. Further, as to materials or devices that *previously* "contained . . . Misappropriated Materials," Dkt. 212-1 at 7, these items could contain metadata or electronic "footprints" that could help a prosecutor prove that alleged misappropriations had occurred in the past.

As noted above, there is zero evidence that the government is already aware of *any* of this information.  As a result, the Court is not in a position to hold that it is a "foregone conclusion" that, as of the date of Waymo's subpoena, the government already knew about each of the particular records or items in question.  *See In re Grand Jury Subpoena*, 383 F.3d at 911; *GE*, 2014 U.S. Dist. LEXIS 36243 at *13-15; *eBay*, 2010 U.S. Dist. LEXIS 7997 at *21-22; *see also Henry*, 490 F.2d at 317; Part III, *supra*.

In sum, given the inherently incriminating nature of Waymo's Request No. 1—essentially, "give us back all the information we allege you stole"—there are no responsive documents that Mr. Levandowski can produce in response to Waymo's Request No. 1 without impairing his privilege against self-incrimination.  To the extent any documents exist, they are protected from disclosure by Mr. Levandowski's assertion of his Fifth Amendment rights against self-incrimination.  By the same token, any documents that do not qualify as "Misappropriated Materials" are not responsive to Waymo's request, and therefore do not need to be produced.

20

1    A number of courts have held that once an individual establishes that production of

2 requested documents would constitute tacit testimony that could be used against her, she need

3 not make an additional showing to substantiate her invocation of the Fifth Amendment.  *See, e.g,*

4 *SEC v. Forster*, 147 F. Supp. 3d 223 (S.D.N.Y. 2015); Part IV, *supra*.  But in abundance of

5 caution, given the Court's directive on April 12, and its recent criticism of Mr. Levandowski's

6 earlier submissions, *see* Dkt. 501, in the *in camera* portion of this brief below Mr. Levandowski

7 will provide further information about any materials that are potentially responsive to Waymo's

8 Request No. 1, and explain exactly why those materials are incriminating and should be

9 protected from discovery, absent a grant of immunity coextensive with the protections afforded

10 by 18 U.S.C. § 6002.

11    **B.      Request 3**

12    In Request for Production No. 3, Waymo seeks: "All communications between [Mr.

13 Levandowski] and Uber between January 2015 and August 2016."  Waymo subpoena, April 9,

14 2017 (Dkt. 212-1) at p. 7.

15    Mr. Levandowski has already produced to Waymo records that are (a) responsive to this

16 request, and (b) raise no Fifth Amendment concerns.  With respect to any other responsive

17 communications between Mr. Levandowski and Uber, to the extent they exist, Mr. Levandowski

18 has invoked his Fifth Amendment privilege against compelled production.

19    As previously discussed, at present the record contains no showing—or even

20 suggestion—that the government knows anything at all about the facts of this matter.  As a

21 consequence, *any disclosure* of information about this case might "possibly" add to the

22 government's existing sum or quantum of evidence should it begin an investigation at some point

23 in the future.  *See Glanzer*, 232 F.3d at 1263; Part II.B, *supra*.

24    Communications between Mr. Levandowski and Uber employees during the period in

25 question plainly have the potential—fairly or unfairly—to incriminate Mr. Levandowski and

26 provide context for an argument concerning his intent or preparations for the alleged

27                                              21

28

1   misappropriation.  For example, even a facially benign email message that predates Mr.

2   Levandowski joining Uber might suggest to a prosecutor which Uber employees to interview, or

3   which materials to subpoena or request.  Even purely innocuous information could give "a

4   prosecutor a starting point from which he might proceed step by step to link the witness with

5   criminal offenses"—providing, in effect, a court-ordered "assist" that the Fifth Amendment

6   plainly forbids.  *J.C. Penney Life Ins. Co.,* 1986 U.S. Dist. LEXIS 16072 at *9; *see also Glanzer*,

7   232 F.3d at 1263; Part II.B, *supra*.  As there can be no suggestion on this record that it is a

8   "foregone conclusion" that the government already possessed such leads, clues, and starting

9   points, *see GE*, 2014 U.S. Dist. LEXIS 36243 at *13-15; *eBay,* 2010 U.S. Dist. LEXIS 7997 at

10  *21-22; Part III, *supra*, the Fifth Amendment prohibits compelling Mr. Levandowski to produce

11  the records in question.

12          Any communications responsive to Waymo's Request No. 3 over which Mr.

13  Levandowski asserts the Fifth Amendment privilege against compelled production are discussed

14  below in the *in camera* portion of this brief.

                                    * * *

15  **[*REDACTED* -- THE REMAINING PORTIONS OF THIS SUBMISSION HAVE BEEN
16  FILED SOLELY IN THE *IN CAMERA* VERSION OF THE BRIEF]**

17  Date:    June 2, 2017                        Respectfully submitted,

18

19                                              /s/
                                                _____
                                                Miles Ehrlich
20                                              Ismail Ramsey
                                                Amy Craig
21                                              Ramsey & Ehrlich LLP
                                                803 Hearst Avenue
22                                              Berkeley, CA 94710
                                                Tel: (510) 548-3600
23                                              Fax: (510) 291-3060
                                                miles@ramsey-ehrlich.com
24                                              izzy@ramsey-ehrlich.com
25                                              amy@ramsey-ehrlich.com
26                                              ***Counsel for Intervenor Anthony Levandowski***

27                                      22
28  NON-PARTY ANTHONY LEVANDOWSKI'S SECOND SUPPLEMENT TO COURT-ORDERED SUBMISSION – PUBLIC
    VERSION
    CASE NO. 3:17-cv-00939 WHA