Neel Chatterjee (SBN 173985)
nchatterjee@goodwinlaw.com
**GOODWIN PROCTER LLP**
135 Commonwealth Drive
Menlo Park, California 94025
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

Brett Schuman (SBN 189247)
bschuman@goodwinlaw.com
Rachel M. Walsh (SBN 250568)
rwalsh@goodwinlaw.com
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

Attorneys for Defendant
Otto Trucking LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| Waymo LLC, | Case No. 3:17-cv-00939-WHA |
| Plaintiff, | **DEFENDANT OTTO TRUCKING LLC'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. NO. 549)** |
| v. | |
| Uber Technologies, Inc.; et al., | Courtroom: 8 - 19th Floor<br>Judge: Hon. William Alsup |
| Defendants. | Filed/Lodged Concurrently with:<br>1. [Proposed] Order |

Otto Trucking's and Uber's attorneys jointly hired Stroz Friedberg, LLC ("Stroz") to conduct a factual investigation concerning anticipated litigation from plaintiff Waymo. The resulting Stroz Report and its exhibits include Stroz's findings and analysis, including confidential information provided by Otto Trucking's principals, Anthony Levandowski and Lior Ron. Judge Corley's order compelling production of the Stroz Report and its exhibits undermines the attorney-client and work-product protections that are fundamental to our adversary system. Judge Corley ignored the Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), which holds that a company's attorneys' communications with employees and officers for purposes of factual investigation are protected by the attorney-client privilege. And Judge Corley ignored decades of precedent recognizing that attorney-client and work-product privileges are not waived by disclosure among parties finalizing commercial agreements when the disclosure is intended to further a common legal interest. The Court should grant relief from Judge Corley's order and deny Waymo's motion to compel.[1]

**I.   Otto Has An Enforceable Attorney-Client Privilege In Its Employees' Confidential Communications With Otto's Counsel's Agent As Part Of Counsel's Factual Investigation (Objection to 10:5-10:19).**

Otto Trucking retained O'Melveny & Myers LLP ("OMM") to provide it with legal advice concerning potential litigation by Google. Decl. of Eric A. Tate, ECF No. 370 ("Tate Decl.") ¶ 4; Decl. of John F. Gardner, ECF No. 381 ("Gardner Decl.") ¶ 4. OMM, in turn, retained Stroz to "engage its professional services in conducting an investigation to ascertain facts" that "informed the potential legal exposure and claims that could be brought by Google related to Uber's potential acquisition of Otto." Tate Decl. ¶ 10. Stroz's interviewed, and collected information from, Otto's principals, including Mr. Levandowski. Tate Decl. ¶ 23. Stroz's report and exhibits include the communications and information provided by Otto Trucking's principals to Stroz. *Id.*

The conversations between Otto Trucking's principals and agents of Otto's counsel are

---

[1] Given the importance of the issues at stake, if this Court denies relief from Judge Corley's order, Otto Trucking respectfully requests a brief stay while Otto Trucking files a mandamus petition at the Federal Circuit. *See In re Regents of University of California*, 101 F.3d 1386, 1387 (Fed. Cir. 1996) ("[B]ecause maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy, … mandamus is appropriate.").

precisely the type of communication that are privileged under the Supreme Court's decision in *Upjohn*. The Court recognized that the attorney-client "privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice"; the "first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." 449 U.S. 390-91. Though here the investigation was conducted by OMM's agent, "confidential communications passing through persons acting as the attorney or client's agent are also covered by the privilege." *Segerstrom v. United States*, No. 00-cv-0833, 2001 WL 283805, at *2 (N.D. Cal. Feb. 6, 2001).

Judge Corley concluded (at 10), with almost no reasoning, that the Stroz Report and exhibits are not protected by the attorney-client privilege because "Stroz's interview of Levandowski was performed in Levandowski's individual capacity, and not as an Otto executive." But Judge Corley failed to explain this largely unsupported statement, and it is wrong. *First*, *Otto Trucking* was seeking legal advice from OMM, and Otto's principals' communications with OMM's agent are privileged under *Upjohn*. *Second*, Judge Corley relied on the incentives under the Term Sheet for Levandowski to provide information to Stroz to ensure that he is indemnified, and letters from Levandowski's counsel to Stroz specifying conditions for Levandowski's participation in the investigation. But even if Levandowski had personal incentives to participate in the investigation, and personal interests to protect in so participating, that does not take away from the fact that communications Levandowski and others made to Stroz were needed for OMM to provide legal advice. That employees may have their own individual reasons to participate in a company's internal investigation cannot vitiate the company's attorney-client privilege.

**II.    Otto, Uber, Levandowski, and Ron Shared A Common Interest In Preparing For A Legal Challenge By Waymo Such That There Was No Waiver Of Attorney-Client Privilege Or Work-Product Protection (Objection to 10:20-11:10, 13:20-21:2).**

On February 22, 2016, Otto and Uber signed a Term Sheet for Uber's potential acquisition of Otto. Tate Decl. ¶ 5. The term sheet set forth the agreed economic terms of Uber's potential acquisition. At that point, Uber, Ottomotto, Otto Trucking, Levandowski, and Ron recognized the

1  potential that a completed acquisition would trigger litigation by Waymo.  The parties therefore
2  agreed, first orally and then in writing, to a Joint Defense, Common Interest, and Confidentiality
3  Agreement ("JDA").  Tate Decl. ¶¶ 8, 11, Exs. 1, 2.  That JDA stated that the parties "share a
4  common interest in resolving any issues concerning the Transaction under all applicable laws and
5  that a joint defense effort will promote evaluation and preparation of their respective defenses."
6  Tate Decl. Ex. 2 at 1.  OMM engaged Stroz with Uber's counsel at Morrison & Foerster ("MoFo")
7  to conduct a factual investigation so that OMM and MoFo could advise the parties to the JDA
8  concerning potential litigation.  Tate Decl. Ex. 3 at 2.

9        Courts repeatedly recognize that parties in the late stages of negotiating mergers or other
10 commercial agreements share a common legal interest in litigation that may arise as a result of the
11 commercial agreement, such that disclosing confidential information between the parties does not
12 waive attorney-client or work-product privileges.  In *Hewlett-Packard Co. v. Bausch & Lomb,*
13 *Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987), for instance, the court held that Bausch & Lomb did not
14 waive its attorney-client privilege in an attorney opinion letter by disclosing it to GEC, which was
15 considering acquiring part of Bausch's business.  Because there was a "real possibility" that the
16 purchase would go through, and in that case the "odds were quite strong" that the companies
17 would face joint litigation, the two entities shared a "common legal interest" in the subject of the
18 letter.  *Id.* at 309-10.  Similarly, in *Rayman v. American Charter Federal Savings & Loan*
19 *Association*, 148 F.R.D. 647 (D. Neb. 1993), the court held that when parties negotiating a merger
20 exchanged privileged information so that one party "would be more fully informed of the potential
21 liability it would take on by merging" with the other party, that exchange was undertaken pursuant
22 to a common legal interest and did not waive any privilege.  *Id.* at 655.[2]  Similarly, an insurance
23 company defending a suit under a reservation of rights shares an interest with the insured in
24 defending the suit, despite being represented by separate counsel and otherwise adverse.  *E.g.*,
25 *Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 572-73 (E.D. Cal. 2002).

---

26 [2] *See also Morvil Technology, LLC v. Ablation Frontiers, Inc.*, No. 10-cv-2088, 2012 WL 760603, at *2-*3 (S.D. Cal. March 2, 2012); *Rembrandt Patent Innovations, LLC v. Apple Inc.*, No. 14-cv-
27 05094, 2016 WL 427363, at *6 (N.D. Cal. Feb. 4, 2016); *FastVDO LLC v. AT&T Mobility LLC*, No. 16-cv-385, 2016 WL 6138036 (S.D. Cal. Oct. 21, 2016); *Britesmile, Inc. v. Discus Dental*
28 *Inc.*, No. 02-cv-3220, 2004 WL 2271589 (N.D. Cal. Aug. 10, 2004).

3
MOTION FOR RELIEF FROM ORDER OF MAGISTRATE JUDGE      CASE NO. 3:17-CV-00939-WHA

1    Judge Corley's finding of a lack of common interest among the parties to the JDA is based
2    largely on her conclusion (at 15) that the term sheet was not binding and Uber "had no obligation
3    to consummate the transaction." But the law does not require a binding agreement for there to be
4    a common interest among parties considering a transaction. It is enough that the parties were in
5    the late stages of negotiation when they jointly retained Stroz. The parties knew that they would
6    likely be sued by Waymo if the merger were consummated. And they shared a common legal
7    interest in preparing to defend that litigation. Indeed, the stated purpose of the Stroz investigation
8    was to enable the parties "to understand certain factual matters potentially relevant to potential
9    litigation and related matters." Tate Decl. Ex. 2 at 2. That those factual matters might *also* have
10   been relevant to indemnification between the JDA parties does not undermine their joint interest in
11   defending against litigation. *See Callwave Communications, LLC v. Wavemarket, Inc.*, No. 14-cv-
12   80112, 2015 WL 831539, at *4 (N.D. Cal. Feb. 23, 2015).

13   Judge Corley erred (at 10-11, 15) by trying (at 17) to distinguish the common interest case
14   law cited by the defendants on the ground that it involved situations where the privileged
15   information was jointly created, rather than shared. Judge Corley provided no explanation for why
16   that would make any difference, and there is no reason it should.

17   Judge Corley also erred (at 15-20) in concluding that even if the JDA parties shared a
18   common legal interest, the Stroz investigation was intended for due diligence purposes. This
19   conclusion is directly contrary to the *Stroz engagement letter itself*, which describes the purpose of
20   Stroz's engagement as conducting a factual investigation in preparation for litigation. Tate Decl.
21   Ex. 2 at 2. And it conflicts with extensive testimony that Stroz was retained to prepare for a suit
22   from Waymo—testimony that Judge Corley largely ignored. *E.g.*, Tate Decl. ¶ 13; Gardner Decl.
23   ¶ 6; Decl. of Justin Suhr, ECF No. 378 ¶¶ 9-10; Decl. of Eric Friedberg, ECF No. 380 ¶ 3. But
24   even if Judge Corley was right that Stroz's engagement served some due diligence purpose in
25   addition to its role in pre-litigation factfinding, that does not undermine the common legal interest.
26   *In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004). For instance, in *Hewlett-Packard*,
27   the court held that a common legal interest requires only that the interest not be "*solely*
28   commercial." 115 F.R.D. at 309 (emphasis added). Similarly, in *Rayman* the court held that

parties negotiating a merger had a common legal interest in addressing litigation even though the sharing of the documents also served to allow one of the entities to "be more fully informed of the potential liability it would take on by merging with" the other company.  148 F.R.D. at 653.

### III. Because The Documents Were Never Disclosed To An Adversary, There Was No Waiver Of The Work-Product Doctrine (Objection to 21:3-22:5).[3]

As Judge Corley recognized (at 21), waiver of work-product protection requires disclosure to an *adversary*.  Judge Corley's conclusions that the JDA parties were adversaries was based only on the ongoing due diligence.  But given that negotiating parties share a *common legal interest* despite ongoing due diligence, *e.g.*, *Rayman*, 148 F.R.D. at 653, it is not fair or correct to characterize them as *adversaries*.  While they may still be opposite each other in negotiating terms of their potential transaction, they are united in anticipating potential litigation from a common adversary.  The only case Judge Corley cited (at 21) involved disclosure of internal documents to *government investigators*, which is nothing like this case.  *See United States v. Bergonzi*, 216 F.R.D. 487, 498 (N.D. Cal. 2003).

### IV. The Report And Its Exhibits Are Opinion Work Product, Not Fact Work Product (Objection to 22:6-23:21).

Judge Corley also erred (at 23) in concluding that portions of the Stroz Report and its exhibits were fact, rather than opinion, work product.  Judge Corley declined to specify precisely what exactly was fact rather than opinion work product given her prior conclusion that any work-product protection was waived.  Otto Trucking preserves its right to challenge Judge Corley's classification if this Court or the Federal Circuit reverses her waiver holding.

### V. Conclusion.

The Court should grant Otto Trucking relief from Judge Corley's order, and deny Waymo's motion to compel.  If the Court upholds Judge Corley's order, it should stay its decision pending Otto Trucking's petition for a writ of mandamus to the Federal Circuit.

---

[3] Judge Corley "assum[ed]" (at 14) that the Stroz report and related materials qualified as attorney work-product.  The Stroz report and related materials unquestionably qualify for protection as attorney work-product.  As explained below, Otto Trucking disagrees with Judge Corley's separate findings that (1) work-product protection was waived, and (2) some of the materials prepared by Stroz are "factual work product" and, therefore, discoverable based on a showing of substantial need.

Dated: June 8, 2017                                Respectfully submitted,

                                                    By:  /s/ Neel Chatterjee
                                                          Neel Chatterjee (SBN 173985)
                                                          *nchatterjee@goodwinlaw.com*
                                                          **GOODWIN PROCTER LLP**
                                                          135 Commonwealth Drive
                                                          Menlo Park, California 94025
                                                          Tel.: +1 650 752 3100
                                                          Fax.: +1 650 853 1038

                                                          Brett Schuman (SBN 189247)
                                                          *bschuman@goodwinlaw.com*
                                                          Rachel M. Walsh (SBN 250568)
                                                          *rwalsh@goodwinlaw.com*
                                                          **GOODWIN PROCTER LLP**
                                                          Three Embarcadero Center
                                                          San Francisco, California 94111
                                                          Tel.: +1 415 733 6000
                                                          Fax.: +1 415 677 9041

                                                          *Attorneys for Defendant*
                                                          *Otto Trucking LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on June 8, 2017. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed this 8th day of June 2017.

/s/ Neel Chatterjee
Neel Chatterjee