MILES EHRLICH (Bar No. 237954)
miles@ramsey-ehrlich.com
ISMAIL RAMSEY (Bar No. 189820)
izzy@ramsey-ehrlich.com
AMY CRAIG (Bar No. 269339)
amy@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600 (Tel)
(510) 291-3060 (Fax)

Attorneys for Non-Party Anthony Levandowski

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, | Case No.: C 17-00939 WHA |
| Plaintiff, | **NON-PARTY ANTHONY LEVANDOWSKI'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE; AND [PROPOSED] ORDER** |
| v. | |
| UBER TECHNOLOGIES, INC., *et al.*, | |
| Defendants. | |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that non-party Anthony Levandowski seeks relief pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A) from the order of Magistrate Judge Corley granting Waymo LLC's motion to compel production of a report generated by Stroz Friedberg, LLC. *See* Dkt. 566. We ask the Court to set aside Judge Corley's order and deny Waymo's motion to compel.

This motion is based on this notice of motion and motion, the below memorandum of points and authorities, the pleadings, files, and records in this case, as well as other written or

oral argument which may be presented at the hearing.

Date:   June 8, 2017                              Respectfully submitted,


                                                  /s/_____
                                                  Miles Ehrlich
                                                  Ismail Ramsey
                                                  Amy Craig
                                                  Ramsey & Ehrlich LLP
                                                  *Counsel for Non-Party Anthony Levandowski*

LEVANDOWSKI'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE; AND [PROPOSED] ORDER   Case No. C 17-00939 WHA

**MEMORANDUM OF POINTS AND AUTHORITIES**

On June 5, 2017, Magistrate Judge Corley granted Waymo LLC's motion to compel production of a report generated by Stroz Friedberg, LLC. Dkt. 549 & 566. Non-party Anthony Levandowski objected that the report and its attachments are protected by the common interest, attorney-client, and attorney work product privileges. Because Judge Corley's order denying these privilege claims rested on three fundamental errors, pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A), the Court should set aside Judge Corley's order and deny Waymo's motion.[1]

I. *Objection 1*: **In a Common Interest Group, the Privilege Protects More than Just the Sharing of Already-Privileged Information Between Attorneys**

Judge Corley ruled that communications between Mr. Levandowski and Stroz were not protected by the attorney-client privilege as extended by the common interest privilege. Dkt. 566 at 11-13. Central to this conclusion was Judge Corley's holding that the common interest privilege solely protects information that is initially communicated by a party to *his or her own attorney* in an attorney-client privileged manner and only *later* communicated between attorneys engaged in a common interest arrangement. *Id.* at 11-13. As the information at issue here was not first communicated by Mr. Levandowski to his own attorney, but was instead communicated to Stroz in the first instance, *id.* at 6-10, Judge Corley opined that the communications with Stroz could not be protected by the common interest privilege:

> In all of the cases cited by Uber and Levandowski, the document or communication was protected by the attorney-client privilege before counsel provided it to another party. The circumstances here are different. Levandowski, without his attorney present, gave an interview in his individual capacity to Stroz, an agent for Otto's separate counsel and Uber's separate counsel.

*Id*. at 13. That ruling was contrary to law: the common interest privilege protects more than just communications between the client and his own lawyer or his own lawyer's agents.

A joint-defense or common interest agreement "establishes an implied attorney-client relationship" between each of the attorneys and parties involved. *United States v. Henke*, 222

---
[1] Mr. Levandowski hereby joins and adopts Parts II-IV of the objections to Judge Corley's order filed by Otto Trucking. Dkt. 572.

LEVANDOWSKI'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE; AND [PROPOSED] ORDER   Case No. C 17-00939 WHA

F.3d 633, 637 (9th Cir. 2000). Once the joint defense relationship is established, "[t]he joint defense privilege . . . protects not only the confidentiality of communications passing from a party to his or her attorney but also '*from one party to the attorney for another party* where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.'" *United States v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005) (emphasis added, quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)); *see also United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (citing *Austin* and the principle set out above); *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) ("Participants in a joint or common defense or individuals with a community of interests '*may communicate among themselves and with the separate attorneys on matters of common legal interest*, for the purpose of preparing a joint strategy, and the attorney-client privilege will protect those communications to the same extent as it would communications between each client and his own attorney.'" (emphasis added)). As the Ninth Circuit has held, "the rationale for the joint defense rule" is that "persons who share a common interest in litigation *should be able to communicate with their respective attorneys and with each other* to more effectively prosecute or defend their claims." *Gonzalez*, 669 F.3d at 978 (emphasis added).

Moreover, for the common interest privilege to apply, it is *not* "necessary for the attorney representing the communicating party to be present when the communication is made to the other party's attorney." *Schwimmer*, 892 F.2d at 244. In *Schwimmer*, Schwimmer and Renda were the subjects of a grand jury investigation. The court found that statements made by Schwimmer to an "accountant hired by Renda's attorney" were "protected by the attorney-client privilege"—even though Schwimmer's attorney was not present during the statements. *Id.* at 241, 244; *see also United States v. McPartlin*, 595 F.2d 1321, 1336-37 (7th Cir. 1979); *Corporate Express Office Prods. v. Gamache (In re Wagar)*, No. 1:06-MC-127 (LEK/RFT), 2006 U.S. Dist. LEXIS 90345 at *39 (S.D.N.Y. Dec. 13, 2006).

Accordingly, the law contradicts Judge Corley's ruling that, because Mr. Levandowski communicated directly with the agent for another party's attorney, his communications with Stroz were not protected by the common interest privilege. The privilege *does* protect such

LEVANDOWSKI'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE; AND [PROPOSED] ORDER   Case No. C 17-00939 WHA

communications, so long as a common interest agreement has been established.[2]  As set out in the litigants' previous papers, Dkt. 369, 370, 372, 374, 375, 376, 378, 379, 380, 381, 383, 384, and in this brief, *infra*, the evidence establishes that such an agreement was in force at the time of Mr. Levandowski's communications to Stroz.

**II.     *Objection 2*: Mr. Levandowski, Otto, and Uber Shared a Common Legal Interest**

Judge Corley next found that Uber, Otto, and Mr. Levandowski lacked a "common legal interest" at the time of Mr. Levandowski's communications to Stroz, and thus that the common interest privilege could not apply.  Dkt. 566 at 15, 20.  That finding was clearly erroneous.

As Judge Corley's order itself makes clear, prior to the engagement of Stroz, Uber, Otto, Mr. Levandowski, and others entered into an agreement (the "Term Sheet") that required Uber—*regardless whether it ended up purchasing Otto*—to indemnify Otto and Mr. Levandowski against third party actions alleging misappropriation of trade secrets or other violations.  *Id*. at 2-3.  Plainly, once this Term Sheet was signed, this indemnity obligation gave Uber, Otto, and Mr. Levandowski an immediate shared legal interest in the facts that might underlie an action that Uber would be required to defend.  *Cf., e.g., Lectrolarm Custom Sys. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 572-73 (E.D. Cal. 2002) (finding that the common interest privilege protected communications between an insurer defending an insured party).

To the extent Judge Corley concluded that entities engaged as buyers and sellers in a potential transaction *cannot* have a common legal interest, *see* Dkt. 566 at 15, that conclusion is contrary to law.  *See, e.g., In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (holding that an inventor/patentee and a potential licensee have a common legal interest in successfully prosecuting patent applications); *Rembrandt Patent Innovations, LLC v. Apple Inc.*, No. C 14-05094 WHA, 2016 U.S. Dist. LEXIS 13749 at *23-24 (N.D. Cal. Feb 4, 2016); *Rayman v. Am. Charter Fed. Sav. & Loan Ass'n*, 148 F.R.D. 647, 655 (D. Neb. 1993); *Hewlett-Packard Co. v. Bauch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987).

---

[2] As the common interest privilege is "an extension of the attorney-client privilege," *Henke*, 222 F.3d at 637, any records provided by Mr. Levandowski to Stroz must likewise be protected from disclosure under the reasoning of *Fisher v. United States*, 425 U.S. 391, 405 (1975).

LEVANDOWSKI'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE; AND [PROPOSED] ORDER   Case No. C 17-00939 WHA

3

**III.   *Objection 3*: Stroz Drafted its Report in Furtherance of a Common Legal Strategy**

Judge Corley also committed clear error by finding that, even if Uber, Otto, and Mr. Levandowski shared a common legal interest, Stroz's investigation and report were not undertaken to vindicate that legal interest. Dkt. 566 at 15-21.

First: This ruling ignores sworn declarations of five attorneys and Stroz's president, each of whom attests that Stroz *was* retained for a litigation purpose. Dkt. 370 ¶¶ 9-10; Dkt. 375 ¶ 3; Dkt. 376 ¶ 11; Dkt. 378 ¶¶ 2-3, 5-6, 9; Dkt. 380 ¶ 3; Dkt. 381 ¶¶ 3-6.

Second: Judge Corley's order disregards the fact that the attorneys involved in the Stroz investigation efforts and communications were Uber's *litigation* counsel, *not* separate corporate transactional counsel engaged to handle the Uber-Otto deal—and the Stroz materials were not shared with transactional counsel. *See, e.g.*, Dkt. 370 ¶¶ 3 & 9-10, 20; Dkt. 375 ¶ 3; Dkt. 378 ¶¶ 2-5; Dkt. 381 ¶¶ 4-6; Dkt. 383 ¶¶ 2-3. This is strong evidence that Stroz was engaged to gather information relevant to potential litigation, not to guide the decision whether to "sign the Put Call Agreement," *see* Dkt. 566 at 15-16, or any other business matter. Indeed, even if the parties had *both* business and legal purposes, the privilege would still apply. *Rayman*, 148 F.R.D. at 654.

Third: Prominent in Judge Corley's reasoning were erroneous conclusions about an engagement letter between Stroz and the joint-defense participants. The letter expressly recites that the engagement was designed to "understand certain factual matters potentially related to potential litigation," but Judge Corley found the letter unpersuasive evidence of the parties' intent at the relevant time because, according to Judge Corley, the letter—which on its face is dated "as of March 4, 2016"—was not executed until April 11, 2016. Dkt. 566 at 18-19. Judge Corley's conclusions were incorrect and miss important facts.

In the Ninth Circuit, a common interest agreement may be established orally or "implied from conduct and situation." *Gonzalez*, 669 F.3d at 979. The declarations of the involved parties clearly demonstrate that the engagement letter's recitation of the litigation-related purpose of the common interest agreement—like similar language in the formal Joint Defense and Common Interest Agreement—merely confirmed an existing oral understanding that was reached no later than March 11, 2016. Dkt. 381 ¶¶ 3-4, 6, 8-9; *see also* Dkt. 370 ¶¶ 12-14; Dkt.

LEVANDOWSKI'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE; AND [PROPOSED] ORDER   Case No. C 17-00939 WHA

4

375 ¶¶ 5-8; Dkt. 376 ¶¶ 8-9; Dkt. 378 ¶¶ 5-8; Dkt. 380 ¶ 5.  Judge Corley's focus on the date this particular letter was signed misses the mark; the parties to the common interest agreement were not required to memorialize the agreement in writing at all, and the uncontradicted evidence demonstrates that the parties had at least an oral agreement at all times relevant here.

Fourth: Judge Corley seized on a sentence included by Mr. Levandowski's counsel in March 2016 letters to Stroz stating that Mr. Levandowski and Otto shared a "common legal interest in the subject matter of the Stroz Examination," without mentioning Uber in the same breath.  Dkt. 566 at 4, 17.  But this phrase emphasizes that Mr. Levandowski and Otto both had a "common legal interest"—rather than an adversarial, or purely business, interest—in the "subject matter" of Stroz's investigative work.  This confirms, rather than refutes, the conclusion that the Stroz work was done in service of a common interest agreement including Levandowski.  The omission of Uber here hardly negates uncontradicted sworn declarations demonstrating that he was already party to a common interest agreement including Uber and Otto.

Fifth: Relatedly, Judge Corley apparently concluded that Mr. Levandowski was not seeking legal advice when he participated in the Stroz investigation.  Dkt. 566 at 8.  This conclusion is belied by the uncontradicted declaration of Mr. Levandowski's counsel, who describes that he and Mr. Levandowski participated in the investigation in order to evaluate litigation risks and generate litigation strategy.  Dkt. 381 ¶¶ 3-6, 11.[3]

## V. Request for Additional Briefing

Civil Local Rule 72-2 confines to five pages a litigant's objections to a magistrate judge's non-dispositive order.  In light of the important interests involved and the complicated underlying factual scenario—which yielded a 24-page order—Mr. Levandowski requests that the Court order more extensive briefing on this motion.[4]

---

[3] Judge Corley denied Mr. Levandowski's request to file an *in camera* submission to support his opposition to Waymo's motion to compel.  Dkt. 566 at 7; Dkt. 382.  We object that this ruling deprived Mr. Levandowski of a significant opportunity to support his opposition without waiving his privileges.

[4] Given the importance of the issues at stake, if this Court upholds Judge Corley's order, we respectfully request a brief stay while Mr. Levandowski files an appeal and/or mandamus petition at the Federal Circuit.  *See Regents of University of California*, 101 F.3d at 1387.

Dated: June 8, 2017                     Respectfully submitted,

/s/_____
Miles Ehrlich
Ismail Ramsey
Amy Craig
Ramsey & Ehrlich LLP

*Counsel for Non-Party Anthony Levandowski*

LEVANDOWSKI'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE; AND [PROPOSED] ORDER   Case No. C 17-00939 WHA

**[PROPOSED] ORDER**

On June 5, 2017, Magistrate Judge Corley issued an order granting Waymo LLC's motion to compel production of a report authored by Stroz Friedberg, LLC. Dkt. 566. This Court finds under Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A) that Judge Corley's order was contrary to law and clearly erroneous. The order is hereby SET ASIDE. Waymo's motion to compel, Dkt. 321, is DENIED.

DATE: _____     _____
                            HONORABLE WILLIAM ALSUP
                            UNITED STATES DISTRICT JUDGE