MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Telephone: 202.237.2727
Facsimile: 202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　　　Defendants. | Case No.　　3:17-cv-00939-WHA<br><br>**DEFENDANT UBER TECHNOLOGIES, INC. AND OTTOMOTTO, LLC'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 566)**<br><br>Judge:　The Honorable William Alsup<br><br>Trial Date: October 2, 2017 |

Pursuant to Local Civil Rule 72-2,[1] Defendants Uber Technologies, LLC and Ottomotto LLC respectfully submit the following Objections to the Order compelling production of the due diligence report ("the Report") and its Exhibits compiled by Stroz Friedberg, LLC ("Stroz"). Upon timely objections to a non-dispositive order of the Magistrate Judge, this Court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002).

## I. The Holding That Uber Waived Attorney-Work Product Is Contrary To Law And Clearly Erroneous (Order at 13-22).

### A. The Joint Defense Parties Shared A Common Legal Interest.

The Order holds that Uber did not have a common legal interest with Ottomotto, Levandowski, and Ron even after the February 22, 2016 Term Sheet was signed, and therefore holds that Uber waived work-product protection over the Report and Exhibits by disclosing them to those parties. Order at 15. The Order further holds that "Uber and Otto could only have a common legal interest in pursuing a defense of a possible lawsuit by Waymo once Uber was obligated (if certain conditions were met) to acquire Otto and thus inherit or create any liabilities to Waymo." *Id*. This holding is both contrary to law and clearly erroneous.

First, there is no legal basis for holding that two parties cannot share litigation risk prior to the time that one of them becomes "obligated" to acquire the other. Two parties can share a common interest in preparing for anticipated litigation based on their expectation to do a transaction, even if they are not yet legally bound to do the transaction.[2] Here, the undisputed

---

[1] Uber and Ottomotto believe that the Court should, as called for in Local Rule 72-2, decide these Objections without a hearing.

[2] *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987) is in accord. There, the court held the parties shared a common legal interest at the time that "there was a real possibility" that one would purchase the other even though the deal did not subsequently transpire. As of February 22, 2016, there was a "real possibility" Uber would acquire Ottomotto. *See also Morvil Tech., LLC v. Ablation Frontiers, Inc.*, 2012 WL 760603, at *3 (S.D. Cal. Mar. 8, 2012) (common legal interest attaches as soon as two companies were "contemplating" the wholesale acquisition of one by the other; documents turned over during "negotiations" were protected); *FTC v. Abbvie, Inc.*, 2015 WL 8623076 (E.D. Pa. Dec. 14, 2015) ("The common interest doctrine applies even if there is no final agreement or if the parties do not ultimately unite in a common enterprise.").

facts show that Uber, Ottomotto, Levandowski and Ron knew they faced litigation risk from Waymo even prior to the signing of the Put Call Agreement on April 11, 2016; indeed, they faced that risk irrespective of whether the deal closed. Suhr Decl. (Dkt. 378) ¶ 6. Thus, those parties shared a common legal interest at that time even though the Term Sheet was not binding. Moreover, even accepting that parties conducted the diligence for the purposes of determining whether to close the transaction and the metes and bounds of indemnity for Levandowski and Ron (precisely because the parties contemplated litigation by Waymo), the Ninth Circuit has stated that ***dual purpose documents*** are protected work product if "it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.),* 357 F.3d 900, 908 (9th Cir. 2004).[3] The Order erred by considering only "one motive that contributed to a document's preparation." *Id*. Here, the real risk of litigation, irrespective of whether the deal ultimately closed, was a "because of" reason for the Stroz investigation and the Report and Exhibits it created. *See* Suhr Decl. ¶ 10 ("Uber took the additional, unique step of authorizing the Stroz investigation, and would not have done so absent the litigation risk.").

Second, even if there was no common legal interest when the Term Sheet was signed, there was undoubtedly one by April 11, when the parties executed the binding Put Call Agreement. The Order acknowledges this fact.[4] Order at 17 n.2 (after signing Put Call Agreement, "Uber and Otto, and perhaps even Levandowski and Ron, arguably shared a common legal interest."). The Order erroneously tries to get around this fact by saying "Uber's only

---

[3] *See also Morvil Tech.,* 2012 WL 760603, at *3 ("There may indeed have been an overlap of commercial and legal interests given the purpose of the disclosure, namely wholesale purchase . . . . But this overlap does not negate the effect of the legal interest in establishing a community of interest," even where it was "unclear" that the parties "would face joint litigation").

[4] The Order distinguishes *Rembrandt Patent Innovations LLC v. Apple Inc.*, 2016 WL 427363 (N.D. Cal. Feb. 4, 2016), on the grounds that there, the common interest attached as soon as one party had an "exclusive option to purchase," because it was engaged in a common legal enterprise with the seller. Here, once Uber signed the Put Call Agreement, it joined a common legal enterprise with Ottomotto, Levandowski, and Ron. The Order did not distinguish the other authorities Uber cited that supports enforceability of a common interest between two parties once an agreement to merge, purchase, or acquire is reached, which occurred on April 11, 2016.

1  argument" was that the common legal interest arose upon signing the Term Sheet. *Id.* at 18 n.2.
2  Not so; Uber argued and presented extensive evidence that that the common legal interest was
3  established certainly as of the Put Call Agreement and continued thereafter.[5]  Although the Stroz
4  investigation began before April 11, the Report and most Exhibits were not completed and
5  disclosed until August 5, 2016 and August 11, 2016, respectively.[6]  Because such documents
6  were not disclosed until *after* Uber was obligated to move forward with the acquisition, they are
7  protected work product under the Order's own reasoning.

**B. Uber Did Not Disclose the Report and Exhibits to A Litigation Adversary.**

Waiver of work product occurs only "where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an *adversary* to gain access to the information." *Ellis v. J.P. Morgan Chase & Co.*, 2014 WL 1510884, at *5 (N.D. Cal. Apr. 1, 2014) (emphasis added) (citing *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007)).  Because "[t]he policy underlying work-product protection is to promote the adversary system by safeguarding the fruits" of an attorney's preparations for litigation, waiver of attorney work product requires "*an act inconsistent with the adversary system.*" *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (emphasis added).

Here, the Order erroneously held that Uber had waived work product privilege because Ottomotto, Levandowski, and Ron were Uber's "adversaries" on the other side of a potential business transaction. Order at 21.  But disclosure of confidential information to another party in a business transaction is not "an act inconsistent with the adversary system," and case law makes clear that an "adversary" for purposes of the work product waiver analysis is an adversary in litigation or potential litigation, not parties on either side of a transaction. *See Nidec Corp*, 249 F.R.D. at 578 (having different interests with respect to the purchase and sale of the majority interest in the company did not make the company and the prospective buyers adversaries for

---

[5] Apr. 11, 2016 JDA (Dkt. 370-2); Tate Decl. (Dkt. 370) ¶11; Baker Decl. (Dkt. 375) ¶ 7; Gardner Decl. (Dkt. 381) ¶¶ 8-9; Bentley Decl. (Dkt. 376) ¶ 10; Suhr Decl. ¶ 7.  The Put Call Agreement was in fact executed on April 11. Tate Decl. ¶ 17; Bentley Decl. ¶ 14.

[6] Tate Decl. ¶¶ 18, 22; Baker Decl. ¶ 14; Bentley Decl. ¶ 16; Suhr Decl. ¶13; Friedberg Decl. (Dkt. 380) ¶¶ 8-9; Gardner Decl. ¶ 11.

purposes of work product analysis); *United States v. Anthem, Inc.*, 2016 WL 8461264, at *8 (D.D.C. Oct. 10, 2016) (holding that two parties to a potential merger cannot have been adversaries when they exchanged documents prepared in anticipation of litigation to enjoin the merger); *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010) (rejecting argument that independent auditor was a potential adversary to the defendant because that was not "the sort of *litigation adversary* contemplated by the waiver standard").[7]

The Order relies exclusively on *United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003), in holding that Ottomotto was an adversary of Uber's. Order at 21. But *Bergonzi* does not stand for the proposition that parties to a potential business transaction are adversaries. In *Bergonzi*, the court held that a company that disclosed *to the government* the results of its internal investigation into security fraud had waived work-product privilege because the government, which was investigating the company and eventually recommended filing charges against the company, was the company's adversary. The posture of a government investigator is not the same as the posture of two parties preparing to do a transaction, as Uber and Ottomotto were.[8]

## II. The Holding That The Report Is Not Protected by Uber's Attorney-Client Privilege Is Contrary To Law And Clearly Erroneous (Order at 10-11).

The holding that the Report is not protected by the attorney-client privilege is also contrary to law and clearly erroneous. Order at 10. The Order reasons that the attorney-client privilege does not apply to the Report because when Uber and Ottomotto jointly retained Stroz they were parties to a potential acquisition that they were not obligated to close. *Id.* at 11. But that does not bear on whether OMM and MoFo jointly engaged Stroz to facilitate the provision of legal advice to their clients regarding potential litigation by Waymo. Here, the Report reflects information communicated in confidence to an agent of OMM and MoFo, at the direction of

---

[7] *See also Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 447–49 (S.D.N.Y. 2004).

[8] Even if Ottomotto, Levandowski, and Ron were Uber's adversaries prior to April 11, 2016 (they were not), under the Order's reasoning, they were not adversaries after that date. Thus, any disclosure after April 11—including the Report, which was not disclosed until August 5, 2016— did not waive the work product privilege because it was never disclosed to a litigation adversary.

1  OMM and MoFo, for the purpose of obtaining legal advice from OMM and MoFo. Tate Decl. ¶
2  9; Friedberg Decl. ¶ 3; Bentley Decl. ¶ 11; Engagement Ltr. (Dkt. 370-3). That is sufficient to
3  establish the attorney-client privilege. *E.g., U.S. v. Christensen*, 828 F.3d 763, 802 (9th Cir.
4  2016). Nor was the attorney-client privilege waived when the Report was shared with
5  Levandowski, Ottomotto, and Ron because, at the time the Report was disclosed in August 2016,
6  those parties had a common legal interest. *See supra* I.A.

### III.  The Court Should Clarify That The Scope Of The Order Extends Only To Documents And Communications Disclosed Prior to April 11, 2016.

Even if the Court upholds the Order, Uber requests that the Court clarify the scope and implications of the Order by holding that (1) on its face, the Order holds only that the Report and its Exhibits must be produced; and (2) the only materials over which Uber has asserted privilege that the Order's rationale may imply are not privileged are communications among the parties (Uber or its lawyers, or its lawyers' agent, Stroz, on the one hand, and Ottomotto, Levandowski, Ron or their lawyers, on the other hand) that were made prior to April 11, 2016.

After that date, Uber had an obligation to acquire Ottomotto, and under the Order's own rationale, the parties thereafter had a common legal interest.[9] Waymo can challenge privilege assertions over communications made after April 11, 2016, but the Order does not determine the outcome of any such challenge. The Order acknowledges that a common legal interest arguably existed after the parties signed the binding Put Call Agreement on April 11, 2016, and acknowledges that "[t]he outcome might be different after the signing of the Put Call Agreement." Order at 15, 17 n.2. This strongly supports the view that the Order did not intend to override any privilege assertion over communications made between the Uber and Ottomotto, Levandowski or Ron that were (a) not presented to the Magistrate Judge in this dispute, and (b) were made after April 11, 2016. Even if the Court upholds the Order in its entirety, Uber asks the Court to confirm this understanding of the Order.

---

[9] The record is clear that "an acquisition obligation existed" after April 11. Order at 15.

5

1  Dated: June 8, 2017                    MORRISON & FOERSTER LLP
                                          BOIES SCHILLER FLEXNER LLP
2
3                                         By:  */s/ Karen L. Dunn*
                                               KAREN L. DUNN
4
                                          Attorneys for Defendants
5                                         UBER TECHNOLOGIES, INC. and
                                          OTTOMOTTO LLC
6