

Neel Chatterjee
+1 650 752 3256
NChatterjee@goodwinlaw.com

Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025

goodwinlaw.com

+1 650 752 3100

June 9, 2017

**VIA ECF**

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
United States District Court for the Northern District of California
San Francisco Courthouse Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Waymo LLC v. Uber Technologies, Inc. et al.*, N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Judge Corley,

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendant Otto Trucking LLC ("Otto Trucking") respectfully submits this Motion to Quash Plaintiff Waymo LLC's ("Waymo") subpoena served upon non-party Stroz Friedberg LLC ("Stroz") on May 10, 2017 for the production of documents and things (the "Subpoena").[1]

Through the Subpoena, Waymo improperly seeks privileged information from non-party Stroz, an investigation firm retained by Defendants in anticipation of litigation. At the outset that Defendants Uber Technologies, Inc. ("Uber"), Ottomotto LLC ("Ottomotto"), and Otto Trucking contemplating entering into a deal, they recognized the need to undertake a due diligence review—as Stroz had done—to jointly prepare a defense should Waymo decide to bring suit. Thus, and as explained below, Stroz's factual investigation and impressions are protected under the attorney-client privilege and Defendant's joint defense and common interest privileges.

**I. Beginning In February 2016, Defendants Understood They Could Be Forced To Defend The Uber–Otto Acquisition, And Therefore Engaged Stroz In Anticipation Of Their Legal Defense.**

In February 2016, Uber, Ottomotto, and Otto Trucking executed a Term Sheet that set forth the terms of Uber's potential acquisition of Otto. Decl. of Eric A. Tate, ECF No. 370

[1] Following conferences with Special Master Cooper, the parties agreed to an omnibus briefing schedule regarding the enforcement of the Subpoena. The parties agreed that Defendants may move to quash or for protective order by June 9, 2017, and Waymo may file an opposition to such motion by June 15, 2017. The parties understand that Special Master Cooper has communicated the briefing schedule to the Court.





("Tate Decl.") ¶ 5. Defendants were aware at the time that because of the competition in developing autonomous driving technology, and because the deal involved companies formed by two ex-Google employees, such an acquisition had the potential to invite intense litigation from Waymo. *Id.* ¶ 3.

*For this reason*, Defendants, along with Anthony Levandowski and Lior Ron (collectively, the "Joint Defense Group"), agreed to enter into a joint defense and common interest agreement. *Id.* ¶ 7. The parties confirmed that agreement orally shortly following executing the Term Sheet *on February 24, 2016*, and once again through email the following day, *on February 25, 2016*. *Id.* ¶¶ 7–8, Ex. 1 (Email correspondence from Adam Bentley to Eric A. Tate dated February 25, 2016). Even though the parties signed the Joint Defense, Common Interest, and Confidentiality Agreement (the "JDA") on April 11, 2016, the JDA merely memorialized what Defendants were concerned with all along: preparing for potential litigation in the acquisition. *Id.* ¶ 11, Ex. 2 at 2 (Joint Defense, Common Interest and Confidentiality Agreement memorializing the parties' "*pre-existing understanding and oral agreement*" (emphasis added)).

Thus from the inception—months before the parties executed the JDA—the Joint Defense Group recognized the need to take steps to jointly evaluate their legal positions against Waymo and strengthen their defenses should Waymo decide to bring suit. *Id.* They retained and directed Stroz to conduct the due diligence review specified in the Term Sheet. *Id.* ¶ 9. Stroz was retained to "engage its professional services in conducting an investigation to ascertain facts" that "informed the potential legal exposure and claims that could be brought by Google related to Uber's potential acquisition of Otto." *Id.*; *see also id.* Ex. 2 at 2. Moreover, under Defendants' engagement agreement with Stroz, the parties understood that information Stroz gathered—including its factual investigation and impressions—would be kept confidential. Decl. of Eric Friedberg, ECF No. 380 ("Friedbeg Decl.") ¶¶ 6–7.

## II. The Record Evidence Establishes That Information Gathered And Impressions Made In The Course Of Stroz's Investigation Are Protected Under The Attorney-Client Privilege.

Given the context in which Stroz was retained, Waymo may not seek information Stroz gathered and developed in the course of its investigation because it is protected by the attorney-client privilege. As explained above, Stroz was retained to "engage its professional services in conducting an investigation to ascertain facts" that "informed the potential legal exposure and claims that could be brought by Google related to Uber's potential acquisition of Otto." The conversations between Anthony Levandowski and Lior Ron, Otto Trucking's principals, are precisely the type of communications that are protected by the attorney-client privilege under the Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383, 390–91 (1981) (explaining that the attorney-client "privilege exists to protect not only the giving of professional





advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."). Here, Stroz was acting as an agent, through which its communications are privileged. *Segerstrom v. United States*, No. 00-cv-0833, 2001 WL 283805, at *2 (N.D. Cal. Feb. 6, 2001) ("[C]onfidential communications passing through persons acting as the attorney or client's agent are also covered by the privilege.").

In the Court's June 5 Order on Waymo's Motion to Compel (the "June 5 Order," Dkt. No. 549), the Court concluded that the Stroz Report and exhibits were not protected by the attorney-client privilege because "Stroz's interview of Levandowski was performed in Levandowski's individual capacity, and not as an Otto executive." But that conclusion relied in part on the incentives under the Term Sheet for Mr. Levandowski to provide information to Stroz to ensure that he was indemnified, and letters from Mr. Levandowski's counsel to Stroz specifying conditions for his participation in the investigation. Even if, however, Mr. Levandowski had personal incentives to participate in the investigation, and personal interests to protect in so participating, that does not diminish the fact that communications Mr. Levandowski and others made to Stroz were needed for Defendants' counsel to provide legal advice. That an individual may have his or her own individual reasons to participate in a company's internal investigation cannot be the reason to vitiate the company's attorney-client privilege. In fact, as explained above, the reason for Stroz to conduct its investigation at all, including of Mr. Levandowski, was so that the parties may form a defense against potential litigation brought by Waymo.

**III. Defendants Shared A Common Legal Interest In The Stroz Investigation Because They Recognized The Need To Undertake A Due Diligence Review To Jointly Prepare A Defense Should Waymo Decide To Bring Suit.**

The Joint Defense Group shared a common legal interest in defending from possible litigation months before the JDA was even executed. In connection with the Term Sheet in February 2016, the parties contemplated the need to join together in a legal defense. They made that agreement orally, and soon thereafter memorialized that agreement in writing in an email. Tate Decl. ¶¶ 8, 11, Exs. 1, 2. Defendants' counsel, O'Melveny & Myers ("OMM") and Morrison & Foerster ("MoFo"), engaged Stroz to conduct a factual investigation so that OMM and MoFo could advise the parties to the JDA concerning potential litigation. *Id.* Ex. 3 at 2. The JDA stated that the parties "share[d] a common interest in resolving any issues concerning the Transaction under all applicable laws and that a joint defense effort will promote evaluation and preparation of their respective defenses." *Id.* Ex. 2 at 1.

The common interest/joint defense doctrine does not make a document or communication privileged; rather, it is a doctrine that prevents waiver of a pre-existing privilege if the privileged information is shared only with those with a legal interest. "The interests of the parties involved in a common defense need not be identical, *and, indeed may even be adverse in some respects*.





The joint-defense exception, however, protects only those communications that are part of an on-going and joint effort to set up a common defense strategy." *Rembrandt Patent Innovations, LLC v. Apple Inc.*, No. C 14-05093 WHA, 2016 WL 427363, at *7 (N.D. Cal. Feb. 4, 2016) (citation omitted). Defendants—Uber, OttoMotto, Otto Trucking, Mr. Levandowski, and Mr. Ron—had, from the outset, recognized the real and present risk of litigation in connection with the Uber-Otto acquisition. They were concerned that the transaction would invite a lawsuit from Waymo and, on that basis, sought legal counsel to evaluate legal risks involved in the transaction, to anticipate potential defenses, and to explore legal strategies in responding to such litigation. In other words, as Judge Alsup explained in *Rembrandt*, Defendants were "part of an on-going and joint effort to set up a common defense strategy." The Stroz investigation was covered under the attorney-client privilege, and the Joint Defense Group shared common legal interests in the privileged nature of that information.

In the June 5 Order, the Court's finding of a lack of common interest among the Joint Defense Group to the JDA was based largely on the conclusion that the Term Sheet was not binding, and Uber "had no obligation to consummate the transaction." But the law does not require a binding agreement for there to be a common interest among parties considering a transaction. It is enough that the parties were in the late stages of negotiation when they jointly retained Stroz. The Defendants knew that they would likely be sued by Waymo if the merger were consummated. And, they shared a common legal interest in preparing to defend that litigation. Indeed, the stated purpose of the Stroz investigation was to enable the parties "to understand certain factual matters potentially relevant to potential litigation and related matters." *Tate Decl.* Ex. 2 at 2. That those factual matters might also have been relevant to indemnification between the JDA parties does not undermine their joint interest in defending against litigation. *See Callwave Communications, LLC v. Wavemarket, Inc.*, No. 14-cv- 80112, 2015 WL 831539, at *4 (N.D. Cal. Feb. 23, 2015).

The June 5 Order also concluded that even if the JDA parties shared a common legal interest, the Stroz investigation was intended for due diligence purposes. However, this conclusion is directly contrary to the Stroz engagement letter itself, which describes the purpose of Stroz's engagement as conducting a factual investigation in preparation for litigation. Tate Decl. Ex. 2 at 2. It further conflicts with extensive testimony that Stroz was retained to prepare for a suit from Waymo—testimony that the June 5 Order did not address. *See, e.g.*, *id.* ¶ 13; Decl. of John Gardner, ECF No. 381 ¶ 6; Decl. of Justin Suhr, ECF No. 378 ¶¶ 9–10; Friedberg Decl. ¶ 3. Moreover, even if Stroz's engagement served some due diligence purpose in addition to its role in pre-litigation factfinding, that does not undermine the common legal interest. *In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004). For instance, in *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, the court held that a common legal interest requires only that the interest not be "*solely* commercial." 115 F.R.D. 308, 309 (N.D. Cal. Apr. 9, 1987) (emphasis added). Similarly, in *Rayman v. American Charter Federal Savings & Loan Association*, the court held that parties negotiating a merger had a common legal interest in addressing litigation even





though the sharing of the documents also served to allow one of the entities to "be more fully informed of the potential liability it would take on by merging with" the other company. 148 F.R.D. 647, 653 (D. Neb. May 12, 1993).

***

For the foregoing reasons, Waymo's subpoena served on non-party Stroz improperly seeks privileged information. Otto Trucking respectfully requests an Order from the Court GRANTING the Motion to Quash the Subpoena.

Respectfully submitted,

*/s/ Neel Chatterjee*
Neel Chatterjee
GOODWIN PROCTER LLP

*Attorneys for Defendant*
OTTO TRUCKING LLC

cc: All counsel of record (via ECF)





**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on June 9, 2017. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed this 9th day of June 2017.

/s/ Neel Chatterjee
Neel Chatterjee