


June 9, 2017

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
United States District Court for the Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Waymo LLC v. Uber Technologies, LLC et al.*, Case No. 3:17-cv-00939-WHA

Dear Judge Corley:

Below please find Defendants Uber Technologies Inc.'s and Ottomotto LLC's (collectively, "Uber") letter brief moving to quash Waymo LLC's ("Waymo") Subpoena to Stroz Friedberg LLC ("Stroz").

Sincerely,

*/s/ Karen L. Dunn*

Karen L. Dunn
Counsel for Uber Technologies, Inc. and Ottomotto LLC

cc: counsel of record; Special Master John Cooper; counsel for Stroz Friedberg, LLC





Defendants Uber Technologies Inc. and Ottomotto LLC (collectively, "Uber") hereby move to quash the subpoena (the "Stroz Subpoena," attached hereto as Ex. 1) issued by Plaintiff Waymo LLC ("Waymo") to Stroz Friedberg, LLC ("Stroz") to the extent it calls for the production of documents and communications protected by Uber's attorney-client privilege and work product protections.

## I. RFPs Subject to this Letter Motion[1]

Uber moves to quash the following Requests for Production ("RFPs") in the Stroz Subpoena:

- RFPs 1, 2, 3, 4, and 5: these RFPs call for (1) the letter whereby Morrison & Foerster, LLP ("MoFo") and O'Melveny & Myers LLP ("OMM") engaged Stroz to perform the diligence investigation, as well as (2) the letter agreements between Stroz and counsel for Anthony Levandowski ("Levandowski"), John Gardner.[2]
- RFPs 6, 7, 8: these RFPs call for production of the Due Diligence Report, as well as any other reports or analyses created by Stroz pursuant to its retention with MoFo and OMM.
- RFPs 13, 14, 15, 18, 19, 28, 29: these RFPs call for all documents and communications regarding the diligence investigation among Stroz, OMM, MoFo, Uber, Ottomotto, and Otto Trucking. Similarly, RFP 28 calls for communications between Stroz and a related entity of Uber, Apparate International.[3]
- RFP 11: this RFP calls for documents and communications regarding the joint defense agreement among Uber, Ottomotto, Levandowski, and Ron.
- RFPs 16, 17, 20, 21: these RFPs call for all communications between Stroz, on the one hand, and Levandowski, Ron, or their respective attorneys, on the other hand.

## II. Legal Standard

A party has standing to move to quash a non-party subpoena "when the party has a personal right or privilege in the information sought to be disclosed." *Knoll, Inc. v. Moderno, Inc.*, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012) (citing 9A Charles A. Wright & Arthur R. Miller, Fed. Prac. & P. § 2459 (3d ed. 2008)). The attorney-client privilege, work product doctrine, and

---

[1] While Uber is not moving to quash RFPs 9, 12, 30, and 31, which call for documents, data, and any other materials provided by Levandowski, Ron, and other diligenced employees to Stroz, these RFPs would call for production of documents that are protected by the diligenced employees' personal attorney-client, marital, privacy, or other privileges and protections and would require production of personal documents that have no relevance to this suit. *See Chevron Corp. v. Donziger*, 2013 WL 4536808, at *11 (N.D. Cal. Aug. 22, 2013) ("[T]he Court has an independent obligation 'to avoid imposing undue burden or expense on a person subject to the subpoena,'" and the party issuing the subpoena "must demonstrate the discovery is sought is relevant.").

[2] Uber moves to quash these RFPs to the extent they call for production of the letter agreements between Gardner and Stroz. Uber's Opp. to Mot. to Compel re same (Dkt. 577) (incorporated herein by reference).

[3] Uber is not moving to quash with respect to the remainder of RFP 28, which seeks communications between Stroz on the one hand and Dogwood Leasing or Pouch Holdings, on the other hand.





common interest doctrine all constitute a "personal right or privilege" giving a party standing to object to a non-party subpoena. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 2012 WL 9245988, at *2 (C.D. Cal. Jan. 25, 2012) ("[P]arties have standing to move to quash or modify third-party subpoenas where the materials sought implicate those parties' right to privacy or their attorney-client or work-product privileges."); *Knoll*, 2012 WL 4466543, at *2 (the "joint defense privilege" provided standing for the defendant to object to a subpoena issued to non-party Google Inc. to the extent the subpoena called for production of communications between the defendants and Google regarding a litigation); Fed. R. Civ. P. 45(d)(3)(iii) ("On timely motion, the court . . . must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies.").

## III. Argument

### A. The Due Diligence Report, Its Exhibits, and Documents and Communications Pertaining Thereto Shared Among the Joint Defense Parties Are Uber's Protected Attorney-Work Product.

#### 1. The Joint Defense Parties Shared A Valid Common Legal Interest.

Uber moves to quash the Stroz Subpoena because the RFPs challenged above call for production of Uber's protected attorney work product. As explained in the Objections,[4] Uber shared a common legal interest with Ottomotto, Levandowski, and Ron as of February 24, 2016—after the parties executed the February 22, 2016, Term Sheet—even though that Term Sheet was not binding. Parties can share a common legal interest in preparing for anticipated litigation based on their expectation to do a transaction, even if they are not yet legally bound to do the transaction. In *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987), the court held the parties shared a common legal interest at the time that "there was a real possibility" that one would purchase the other even though the deal did not subsequently transpire. Likewise, as of February 22, 2016, there was a "real possibility" Uber would acquire Ottomotto. *See also Morvil Tech., LLC v. Ablation Frontiers, Inc.*, 2012 WL 760603, at *3 (S.D. Cal. Mar. 8, 2012) (common legal interest attaches as soon as two companies were "contemplating" the wholesale acquisition of one by the other; documents turned over during "negotiations" were protected); *FTC v. Abbvie, Inc.*, 2015 WL 8623076, at *11 (E.D. Pa. Dec. 14, 2015) ("The common interest doctrine applies even if there is no final agreement or if the parties do not ultimately unite in a common enterprise."); Opp. to MTC (Dkt. 369) at 13-17 (citing cases). And the uncontroverted facts show that Uber, Ottomotto, Levandowski, and Ron knew they faced litigation risk from Waymo well prior to the signing of the Put Call Agreement on April 11, 2016; indeed, they faced that risk irrespective of whether the deal closed. Suhr Decl. (Dkt. 378) ¶ 6.

Next, accepting that the joint defense parties conducted the diligence for the purposes of determining whether to close the transaction and the metes and bounds of indemnity for Levandowski and Ron (an indemnity agreed to precisely because the parties contemplated

[4] Uber incorporates by reference all arguments made and cases cited in its Objections.





litigation by Waymo), Uber, Ottomotto, Levandowski, and Ron ***also*** simultaneously shared a common ***legal*** interest in defending possible litigation brought by Google. The documents called for in the Stroz Subpoena are thus dual purpose documents. The Ninth Circuit has stated that a dual purpose document is protected work product if "it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004). It would be erroneous to consider only "one motive that contributed to a document's preparation." *Id*. Here, the real risk of litigation, irrespective of whether the deal closed, was a "because of" reason for the Stroz investigation and was why the Report and Exhibits were created. *See* Suhr Decl. ¶ 10 ("Uber took the additional, unique step of authorizing the Stroz investigation, and would not have done so absent the litigation risk.").

Even if there was no common legal interest when the Term Sheet was signed, there was undoubtedly one by April 11, 2016 when the parties executed the Put Call Agreement, as the MTC Order acknowledges. MTC Order at 17 n.2 (after signing Put Call Agreement, "Uber and Otto, and perhaps even Levandowski and Ron, arguably shared a common legal interest."). And although the Stroz investigation began before April 11, 2016, it continued well beyond it. Because many responsive documents were not disclosed among the joint defense parties until *after* Uber was obligated to move forward with the acquisition, documents responsive to the Stroz Subpoena dated on or after April 11, 2016, which includes the Due Diligence Report and Exhibits, are protected attorney work product.

2. Even If There Was No Common Legal Interest, There Was No Disclosure To Adversaries.

Even if the Court finds that the common legal interest shared by Uber, Ottomotto, Levandowski, and Ron does not protect against disclosure of documents responsive to the Stroz Subpoena, they remain protected attorney work product because such documents were not disclosed to an adversary. Waiver of work product occurs only "where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information." *Ellis v. J.P. Morgan Chase & Co.*, 2014 WL 1510884, at *5 (N.D. Cal. Apr. 1, 2014) (emphasis added) (citing *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007)). Because "[t]he policy underlying work-product protection is to promote the adversary system by safeguarding the fruits" of an attorney's preparations for litigation, waiver of attorney work product requires "an act inconsistent with the adversary system." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (emphasis added).

Uber, Ottomotto, Levandowski, and Ron were not "adversaries" within the meaning of this rule at the time that they began the diligence process, and certainly were not adversaries within the meaning of this rule as of April 11, 2016, when Uber was obligated to move forward with the acquisition. That is because disclosure of confidential information to another party in a business transaction is not "an act inconsistent with the adversary system," and case law makes clear that an "adversary" for purposes of the work product waiver analysis is an adversary in litigation or potential litigation, not parties on either side of an acquisition. *See Nidec Corp.*, 249 F.R.D. at 578 (noting that having different interests with respect to the purchase and sale of the majority interest in the company did not make the company and the prospective buyers adversaries for





purposes of work product analysis); *United States v. Anthem, Inc.*, 2016 WL 8461264, at *8 (D.D.C. Oct. 10, 2016) (holding that two parties to a potential merger cannot have been adversaries when they exchanged documents prepared in anticipation of litigation to enjoin the merger); *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010) (rejecting argument that independent auditor was a potential adversary to the defendant because it was not "the sort of litigation adversary contemplated by the waiver standard"); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 447–49 (S.D.N.Y. 2004) (holding that "an auditor's need to scrutinize and investigate a corporation's records and book-keeping practices simply is not the equivalent of an adversarial relationship contemplated by the work product doctrine").

*United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003), does not dictate a different result. In *Bergonzi*, the court held that a company that had disclosed to the government the results of its internal investigation into security fraud had waived work-product privilege because the government, which was investigating the company and recommended that charges be filed against the company, was the company's adversary. Uber and Ottomotto were not potential litigation adversaries as a result of the Stroz investigation; indeed, the opposite was true.

B. The Due Diligence Report and Documents and Communications Pertaining Thereto Shared Among the Joint Defense Parties Are Uber's Protected Attorney-Client Privilege.

The Due Diligence Report and documents responsive to RFPs 6-8 are protected by Uber's attorney-client privilege. OMM and MoFo jointly engaged Stroz to facilitate the provision of legal advice to their clients regarding potential litigation by Google to their respective clients. The Due Diligence Report reflects information provided in confidence to an agent of OMM and MoFo, at the direction of OMM and MoFo, for the purpose of obtaining legal advice from OMM and MoFo. Tate Decl. ¶ 9; Friedberg Decl. ¶ 3; Bentley Decl. ¶ 11; Engagement Ltr. (Dkt. 370-3). That is sufficient to establish the attorney-client privilege. *See, e.g.*, *U.S. v. Christensen*, 828 F.3d 763, 802 (9th Cir. 2016). Nor was the attorney-client privilege waived when the Report was shared with Levandowski, Ottomotto, and Ron because, at the time the Report was disclosed in August 2016, those parties had a common legal interest. *Supra* at III.A.

Documents responsive to RFP 29 (invoices) are also protected attorney-client privilege because they "reveal the motive of [Uber] in seeking representation, litigation strategy, or the specific nature of the services provided." *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992). Uber was the sole recipient of invoices. Engagement Ltr. (Dkt. 370-3) at 2 ("The charges will be billed 100% to Uber. Stroz Friedberg will send invoices directly to Uber with a copy to [MoFo].").

Documents responsive to RFPs 13, 14, 15, 18, and 19 (communications between Stroz, on the one hand, and, on the other hand, MoFo, OMM, Uber, or Ottomotto) are, irrespective of whether there was a common legal interest among Uber, Ottomotto, Levandowski and Ron, independently protected by the attorney-client privilege. *Miller v. City of Los Angeles*, 2015 WL 12781181, at *3 (C.D. Cal. May 15, 2015) ("Reddock–Wright was the City's agent, and therefore her communications with City attorneys concerning her internal investigation are privileged."); *McCaugherty v. Siffermann*, 132 F.R.D. 234, 239 (N.D. Cal. 1990)





(communications between a company's outside investigators and its counsel were privileged because both the investigators were acting as the company's agents).

C. The Subpoena Must Be Quashed To The Extent It Calls For Documents Not Disclosed Among Purported Adversaries And Any Documents Disclosed After April 11, 2016.

Additionally, Uber moves to quash for reasons based on the scope of the MTC Order. By its terms, the MTC Order extends only to: (1) the Report and its Exhibits; and (2) documents and communications pertaining to the Stroz investigation that were both (a) disclosed to Uber's "adversaries," *i.e*., Ottomotto, Levandowski, and Ron, and (b) disclosed prior to April 11, 2016. The MTC Order is premised upon the finding that Stroz was the agent of Uber and Ottomotto. MTC Order at 11; *see also id*. at 4, 7-8, 11, 13. Nevertheless, the MTC Order holds that Uber waived work-product protection over the Report and Exhibits because Uber lacked a common legal interest with Ottomotto, Levandowski, and Ron, MTC Order at 15-21, and that, as parties on either side of an acquisition, they were adversaries, *id*. at 21-22.

Therefore, communications or documents pertaining to the Stroz investigation ***not disclosed*** to any adversary do not fall within the scope of the Order. These communications are: (1) communications between or among MoFo and its agent, Stroz; (2) communications between or among OMM and its agent, Stroz; (3) communications between or among OMM, as the attorney for Ottomotto, and Levandowski and/or Ron and/or their attorneys[5]; and (4) communications and documents solely internal to Stroz.

Documents falling into categories 1 and 2 in the paragraph above are independently protected by the attorney-client privilege. *See supra* III.B. Similarly, documents that fall within categories 1, 2, and 4 are independently protected by the work product doctrine. *Robinson v. Cty. of San Joaquin*, 2014 WL 5473049, at *2 (E.D. Cal. Oct. 28, 2014) ("Any internal investigation done by counsel or other agents of the corporation in anticipation of litigation will generally be covered by work product."); *Solis v. Seafood Peddler of San Rafael, Inc.*, 2012 WL 12547592, at *6 (N.D. Cal. Oct. 16, 2012) ("As the Wage Hour investigators conducted their investigation on behalf of the Department of Labor in anticipation of litigation, their internal communications and case diaries are privileged work product.").

Second, under the Order's reasoning, it is clear that Uber, Ottomotto, Levandowski, and Ron shared a common legal interest at least as of April 11, 2016, and therefore any responsive documents or communications shared ***after*** that date remain protected. Because, after April 11, "an acquisition obligation existed," MTC Order at 15, otherwise privileged or work-product protected communications and documents shared among these once-adversaries remain protected by the common interest doctrine.

---

[5] The MTC Order suggests that Levandowski and Ottomotto shared a common legal interest. MTC Order at 4. Thus, communications among Ottomotto's attorney's agent, Stroz, and Levandowski and/or his attorney, John Gardner, and Ron and/or his attorney, Alisa Baker, remain protected under the common interest doctrine and the MTC Order's reasoning.





**IV. Conclusion**

For the foregoing reason, Uber requests that the Court quash RFPs 1-8, 11, 13-26, and 29 in the Stroz Subpoena.