**RAMSEY | EHRLICH** LLP

ATTORNEYS AT LAW

June 9, 2017                                                                                         **PUBLIC REDACTED VERSION**

Magistrate Judge Jacqueline Scott Corley
U.S. District Court for the Northern District of California
San Francisco Courthouse, Courtroom F — 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

*Re: Waymo LLC v. Uber Technologies, Inc.*, et al., No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

**Introduction**

In 2016, Anthony Levandowski, Uber, the Ottomotto entities, and Lior Ron entered into a joint-defense agreement through which Stroz Friedberg was engaged to investigate facts pertinent to providing legal advice that was being sought jointly by the parties. *See* Dkt. 369, 370, 372, 374, 375, 376, 378, 379, 380, 381, 383, 384.[1] Plaintiff Waymo has now subpoenaed a range of materials from Stroz, including any materials and information provided by Mr. Levandowski to Stroz in the context of this privileged relationship.

Mr. Levandowski moves this Court to quash Waymo's subpoena to the extent it seeks:

1. Any materials Mr. Levandowski may have provided to Stroz
2. Any statements (or records of statements) Mr. Levandowski may have made to Stroz
3. Any records that reference materials Mr. Levandowski may have provided to Stroz

All three categories of materials are protected from disclosure by Mr. Levandowski's common interest, attorney-client, and/or work product privileges. Mr. Levandowski and the Defendants have set forth the legal and factual bases for these privileges with respect to Stroz in previous pleadings in this case. *Id.; see also* Dkt. 572, 574, 575. Mr. Levandowski joins and incorporates for this motion each of the arguments establishing that Waymo's requests to Stroz seek privileged materials as set forth in these prior filings.

In addition, Mr. Levandowski also moves the Court to quash Waymo's subpoena to the extent it seeks unfettered access to any devices Mr. Levandowski may have provided to Stroz, as such requests are overly broad, burdensome, and invasive of Mr. Levandowski's privacy interests.

**Motion to Intervene**

Mr. Levandowski moves to intervene in order to litigate this motion to quash and protect his Fifth Amendment, common interest, attorney-client, and attorney work product privileges. He is entitled to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2), which provides for mandatory intervention in certain circumstances. As has been discussed in prior briefing, the

---

[1] We recognize that the Court recently granted, over the joint-defense parties' objections, Waymo's motion to compel production of a report authored by Stroz. Dkt. 566. Yesterday, the joint-defense parties filed objections to the order. Dkt. 572, 574, 575. The objections have not yet been resolved.

Ninth Circuit applies a four-part test under Rule 24(a):

> (1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). The four-factor test is plainly satisfied in this case.

*First*, Mr. Levandowski's intervention is timely, as Stroz has not yet produced the records in question. *Second*, intervention is mandated under the second and third factors because Mr. Levandowski seeks to protect evidentiary privileges. *See, e.g., In re Grand Jury Subpoena (Newparent, Inc.)*, 274 F. 3d 563, 570 (1st Cir. 2001) ("Colorable claims of attorney-client and work product privilege [are] . . . a textbook example of an entitlement to intervention as of right."); *In re Grand Jury Proceedings*, 735 F.2d 1330, 1331 (11th Cir. 1984) (reversing denial of intervention where an applicant sought to intervene to protect his attorney-client privilege); *Sackman v. Liggett Group*, 167 F.R.D. 6, 20-21 (E.D.N.Y. 1996) (granting intervention by applicants who sought to protect a joint-defense privilege). The same principle applies with even more force in situations in which the applicant, like Mr. Levandowski here, seeks to protect his Fifth Amendment privilege against self-incrimination. *See In re Katz*, 623 F.2d 122, 125-26 (2nd Cir. 1980) (reversing the denial of intervention in a case where the applicant's attorney had received a grand jury subpoena, and the applicant sought to assert his Fifth Amendment and attorney-client privileges over documents in the attorney's possession under the authority of *Fisher v. United States*, 425 U.S. 391 (1975)). And, *third*, the existing defendants cannot protect Mr. Levandowski's interests, since the Fifth Amendment rights are personal, and none of the parties can raise this constitutional objection on his behalf. *See Katz*, 623 F.2d at 125. *Fourth*, and finally, though the other parties assert common interest, attorney-client, and attorney work product privileges similar to those raised by Mr. Levandowski, they do not overlap precisely, and Mr. Levandowski must be permitted to protect his own interests. *See In re Toyota Motor Corp. Unintended Acceleration Litig.*, No. 8:10ML2151 JVS (FMOx), 2012 U.S. Dist. LEXIS 189351 at *2-4 (C.D. Cal. Jan. 25, 2012); Dkt. 466-2 (letter from Uber to Mr. Levandowski demanding that he waive his Fifth Amendment and attorney-client privileges). Thus, intervention is mandatory under Rule 24(a)(2).

*Alternatively*, under Federal Rule of Civil Procedure 24(b), the Court should grant permissive intervention. *See, e.g., Convertino v. United States DOJ*, 674 F. Supp. 2d 97, 109 (D.D.C. 2009) ("Without the right to intervene in discovery proceedings, a third party with a claim of privilege in otherwise discoverable materials could suffer 'the obvious injustice of having his claim erased or impaired by the court's adjudication without ever being heard.'").

**Standing**

A litigant has "standing to move to quash [a] subpoena issued to another when the subpoena infringes on the movant's legitimate interests." *United States v. Tomison*, 969 F. Supp. 587, 596 (E.D. Cal. 1997); *see also Wells Fargo & Co. v. ABD Ins.*, No. C 12-03856 PJH (DMR), 2012 U.S. Dist. LEXIS 173365 at *5-6 (N.D. Cal. Dec. 6, 2012). Mr. Levandowski has standing to challenge Waymo's subpoena because it threatens to compel the disclosure of materials protected by Mr. Levandowski's Fifth Amendment, common interest, attorney-client, and work product privileges, *see, e.g., Tomison*, 969 F. Supp. at 596; *In re Toyota Motor Corp. Unintended Acceleration Litig.*, No. 8:10ML2151 JVS (FMOx), 2012 U.S. Dist. LEXIS 189351 at *4 (C.D.

Cal. Jan. 25, 2012), Fed. R. Civ. P. 45(d)(3)(iii), and also because Mr. Levandowski has ownership interests in any materials he provided to Stroz. *See Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir. 1985) (identifying proprietary interest as basis for standing).

**Argument**

   I.   **Waymo's Requests Seeking Materials Mr. Levandowski May Have Provided to Stroz Must be Quashed**

At least seven of Waymo's requests seek the production of materials Mr. Levandowski may have provided to Stroz.[2] These requests must be quashed because they seek the disclosure of records in violation of Mr. Levandowski's Fifth Amendment and attorney-client privileges.

   A.  **Under *Fisher*, a valid attorney-client privilege extends Mr. Levandowski's Fifth Amendment protection against compelled production of documents to his attorneys and their agents.**

The allegations in this case—along with Judge Alsup's formal referral of this matter to the U.S. Attorney's Office to investigate "possible theft of trade secrets"—unquestionably implicate Mr. Levandowski's right against self-incrimination. Dkt. 428; *see also* Dkt. 539 at 4-8. Because a prosecution is possible, Mr. Levandowski cannot be compelled to testify—explicitly or implicitly—about whether he took alleged trade secrets when he left Waymo or about any other topics that might tend to inculpate him. *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000).

As Judge Alsup has recognized, it is "uncontroversial" that an individual may invoke the Fifth Amendment privilege in responding to a request for the production of documents. Dkt. 202 at 6. Even when the contents of a document are themselves not privileged, the act of producing the document may implicate the Fifth Amendment privilege. *See United States v. Hubbell*, 530 U.S. 27, 32-36 (2000); *Fisher v. United States*, 425 U.S. 391, 410 (1976). "By producing documents in compliance with a subpoena, the witness admits that the documents exist, are in his possession or control, and are authentic. These types of admissions implicitly communicate statements of fact that may lead to incriminating evidence." *Doe v. United States (In re Grand Jury Subp.)*, 383 F.3d 905, 909 (9th Cir. 2004); *see also* Dkt. 539 at 8-10. If Waymo had served this same subpoena on Mr. Levandowski, the subpoena would be quashed. *See* Dkt. 539 & 6/2/2017 *In Camera* Submission.

The Fifth Amendment protection against the compelled disclosure of records "extends to prevent an individual's attorney from being compelled to produce documents if that production would violate the individual's Fifth Amendment rights." *United States v. Sideman & Bancroft, LLP*, 704 F.3d 1197, 1201-02 (9th Cir. 2013). "[W]here an individual transfers documents to his or her attorneys to obtain legal assistance . . . , those documents, 'if unobtainable by summons from the client, are unobtainable by summons directed to the attorney by reason of the attorney-client privilege.' Accordingly, [the attorney] does not have to produce the . . . records if doing so violates [the individual]'s Fifth Amendment rights." *Fisher*, 425 U.S. at 405. Thus, under *Fisher*, the operative question is whether the documents sought by Waymo's subpoena are protected by the attorney-client privilege. *In re Katz*, 623 F.2d at 126; *see also* Dkt. 202 at 8. The answer is yes.

---

[2] The requests that may seek production of materials, if any exist, communicated by Mr. Levandowski to Stroz include Requests No. 9, 12, 13, 16, 20, 30 and 31.

> ### *i. A common-interest privilege extends the attorney-client relationship of a client—here, Mr. Levandowski—to all attorneys within the joint-defense group and to these attorneys' agents.*

A joint-defense or common interest agreement "establishes an implied attorney-client relationship" between each of the attorneys and parties involved. *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000). Common interest or joint-defense agreements are "an extension of the attorney-client privilege." *Id.* at 637. Once the joint defense relationship is established, "[t]he joint defense privilege . . . protects not only the confidentiality of communications passing from a party to his or her attorney but also '*from one party to the attorney for another party* where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.'" *United States v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005) (emphasis added, quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)); *see also United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (citing *Austin* and the principle set out above); *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) ("Participants in a joint or common defense or individuals with a community of interests '*may communicate among themselves and with the separate attorneys on matters of common legal interest*, for the purpose of preparing a joint strategy, and the attorney-client privilege will protect those communications to the same extent as it would communications between each client and his own attorney.'" (emphasis added)). As the Ninth Circuit has held, "the rationale for the joint defense rule" is that "persons who share a common interest in litigation *should be able to communicate with their respective attorneys and with each other* to more effectively prosecute or defend their claims." *Gonzalez*, 669 F.3d at 978 (emphasis added).

For the common interest privilege to apply, it is *not* "necessary for the attorney representing the communicating party to be present when the communication is made to the other party's attorney." *Schwimmer*, 892 F.2d at 244. In *Schwimmer*, Schwimmer and Renda were the subjects of a grand jury investigation. The court found that statements made by Schwimmer to an "accountant hired by Renda's attorney" were "protected by the attorney-client privilege"—even though Schwimmer's attorney was not present during the statements. *Id.* at 241, 244; *see also United States v. McPartlin*, 595 F.2d 1321, 1336-37 (7th Cir. 1979) (finding privileged a defendant's statements to an investigator retained by his co-defendant's attorney); *Corporate Express Office Prods. v. Gamache (In re Wagar)*, No. 1:06-MC-127 (LEK/RFT), 2006 U.S. Dist. LEXIS 90345 at *39 (S.D.N.Y. Dec. 13, 2006) ("[I]f a joint defense agreement exists there is an implicit understanding that one attorney is permitted not only to confer with another attorney but with the other attorney's party.").

Mr. Levandowski recognizes that, in deciding a motion to compel Uber to produce the Stroz report and exhibits, this Court ruled that communications between Mr. Levandowski and Stroz were not protected by the attorney-client privilege as extended by the common interest privilege. Dkt. 566 at 11-13. The Court held that the common interest privilege solely protects information that is initially communicated by a party to *his or her own attorney* in an attorney-client privileged manner and only *later* communicated between attorneys engaged in a common interest arrangement. *Id.* at 11-13. As the information in question here was not first communicated by Mr. Levandowski to his own attorney, but was instead communicated directly to Stroz, *id.* at 6-10, the Court opined that the communications with Stroz could not be protected by the common interest privilege:

> In all of the cases cited by Uber and Levandowski, the document or communication was protected by the attorney-client privilege before counsel provided it to another party. The circumstances here are different. Levandowski, without his attorney

> present, gave an interview in his individual capacity to Stroz, an agent for Otto's separate counsel and Uber's separate counsel.

*Id.* at 13. That ruling was contrary to law. As set forth above: the common interest privilege protects more than just communications between the client and his own lawyer or his own lawyer's agents. It protects information that Mr. Levandowski communicated directly with the agent for another party's attorney, so long as a common interest agreement has been established.

> ***ii. Mr. Levandowski, Otto, and Uber shared a valid common interest privilege and Stroz conducted its investigation to further a common legal strategy.***

Prior to Stroz's engagement, Uber, Otto, Mr. Levandowski, and others entered into an agreement (the "Term Sheet") that required Uber—*regardless whether it ended up purchasing Otto*—to indemnify Otto and Mr. Levandowski against third party actions alleging misappropriation of trade secrets or other violations. Dkt. 566. at 2-3. Plainly, once the Term Sheet was signed, this indemnity obligation gave Uber, Otto, and Mr. Levandowski an immediate common legal interest in the facts that might underlie such an action that Uber would be required to defend. *Cf., Lectrolarm Custom Sys. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 572-73 (E.D. Cal. 2002) (finding that the common interest privilege protected communications between an insurer defending an insured party); *Enns Pontiac, Buick, & GMC Inc. v. Flores*, No. CV-F-07-01043 LJO-BAM, 2011 U.S. Dist. LEXIS 143151 at *12-15 (E.D. Cal. Dec. 13, 2011) (same).

Further, in the Ninth Circuit, a common interest agreement may be established orally or "implied from conduct and situation." *Gonzalez*, 669 F.3d at 979. The declarations of the involved parties clearly demonstrate that recitations of the joint-defense agreement in various written documents merely confirmed an existing oral understanding that was reached no later than March 11, 2016. Dkt. 381 ¶¶ 3-4, 6, 8-9; *see also* Dkt. 370 ¶¶ 12-14; Dkt. 375 ¶¶ 5-8; Dkt. 376 ¶¶ 8-9; Dkt. 378 ¶¶ 5-8; Dkt. 380 ¶ 5.

Entities engaged as buyers and sellers in a potential transaction can have a common legal interest. *See, e.g., In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (holding that an inventor/patentee and a potential licensee have a common legal interest in successfully prosecuting patent applications); *Rayman v. Am. Charter Fed. Sav. & Loan Ass'n*, 148 F.R.D. 647, 655 (D. Neb. 1993); *Hewlett-Packard Co. v. Bauch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987). It does not matter that their interests are not wholly aligned, or even if they continue to be adverse in some respects. *Rembrandt Patent Innovations, LLC v. Apple Inc.*, No. C 14-05094 WHA, 2016 U.S. Dist. LEXIS 13749 at *23-24 (N.D. Cal. Feb 4, 2016). The determinative question is whether their interests are aligned with respect to "an on-going and joint effort to set up a common defense strategy." *Id.* That was the case here.

Members of the common interest group undertook the Stroz investigation and report to explore their common legal interest in protecting against potential lawsuits. Dkt. 566 at 15-21. In sworn declarations, five attorneys and Stroz's president each attested that Stroz was retained for this litigation purpose. Dkt. 370 ¶¶ 9-10; Dkt. 375 ¶ 3; Dkt. 376 ¶ 11; Dkt. 378 ¶¶ 2-3, 5-6, 9; Dkt. 380 ¶ 3; Dkt. 381 ¶¶ 3-6. And the attorneys involved in the Stroz investigation efforts and communications were Uber's *litigation* counsel, *not* separate corporate transactional counsel who had been engaged to handle the Uber-Otto deal; indeed, the Stroz materials were not shared with transactional counsel. *See, e.g.*, Dkt. 370 ¶¶ 3 & 9-10, 20; Dkt. 375 ¶ 3; Dkt. 378 ¶¶ 2-5; Dkt. 381 ¶¶ 4-6; Dkt. 383 ¶¶ 2-3. This is strong evidence that Stroz was engaged to gather information relevant to potential litigation, not to guide the decision whether to "sign the Put Call Agreement," *see* Dkt. 566 at 15-16, or any other business matter. Further, even if the parties had *both* business and legal purposes, the privilege would still apply. *Rayman*, 148 F.R.D. at 654

Again, we recognize that, in deciding a motion to compel production of the Stroz report, this Court found that Uber, Otto, and Mr. Levandowski lacked a "common legal interest" at the time of Mr. Levandowski's communications to Stroz and that the report was not undertaken to further a legal strategy, and thus a common interest privilege did not apply. Dkt. 566 at 15, 20. As set forth in Mr. Levandowski's objections to this order, Dkt. 574, however, this finding was clearly erroneous.

Stroz's engagement letter expressly recites that the engagement was designed to "understand certain factual matters potentially related to potential litigation." Still, the Court found the letter unpersuasive evidence of the parties' intent at the relevant time because, according to the Court, the letter—which on its face is dated "as of March 4, 2016"—was not executed until April 11, 2016. Dkt. 566 at 18-19. But the date the engagement agreement was actually executed is a red herring. The uncontradicted record establishes that a valid common interest agreement was already in force before Stroz began its examination. *See* Dkt. 369, 370, 372, 374, 375, 376, 378, 379, 380, 381, 383, 384.

As the Court highlighted, in March 2016 letters to Stroz, Mr. Levandowski's counsel noted that Mr. Levandowski and Otto shared a "common legal interest in the subject matter of the Stroz Examination." Dkt. 566 at 4, 17. This phrase emphasizes that Mr. Levandowski and Otto both had a "common *legal* interest"—rather than an adversarial, or purely business, interest—in the "subject matter" of Stroz's investigative work. The fact that Mr. Levandowski's counsel did not list Uber does not negate the six uncontradicted sworn declarations demonstrating that Mr. Levandowski was already a party to a common interest agreement including Uber and Otto.

Relatedly, the Court apparently concluded that Mr. Levandowski was not seeking legal advice when he participated in the Stroz investigation. Dkt. 566 at 8. Again, this conclusion is belied by the uncontradicted declaration of Mr. Levandowski's counsel, who attests that he and Mr. Levandowski participated in the investigation in order to evaluate litigation risks and generate litigation strategy. Dkt. 381 ¶¶ 3-6, 11.

> ### iii. The Fifth Amendment, attorney-client, and common-interest privileges combine to preclude a subpoena to Stroz for information that Mr. Levandowski may have provided to Stroz but that could not have been subpoenaed from Mr. Levandowski himself.

Waymo's subpoena to Stroz seeks materials that Mr. Levandowski may have transferred to Stroz, despite the fact that Stroz is an agent of attorneys within the common interest group to which Mr. Levandowski is a party. But, as discussed, when an individual is privileged against production of a record pursuant to the Fifth Amendment and transfers that record as part of a common interest communication for the purpose of obtaining legal advice, the attorney or agent possessing it is immune from compelled disclosure of the record under the reasoning of *Fisher*.

These predicates for a motion to quash exist here. *First*, the Fifth Amendment would preclude Waymo from obtaining the records in question (if any exist) by directly subpoenaing Mr. Levandowski. If Mr. Levandowski communicated any materials to Stroz, he did so as part of a joint effort to evaluate and obtain advice about the very issues that underlie this case: the possibility that former Google employees moving to the Otto entities, and thereafter to Uber, might trigger litigation. *See* Dkt. 369 at 2-4 (and documents cited therein). Mr. Levandowski's public and *in camera* filings outlining his invocation of the Fifth Amendment privilege in response to Waymo's subpoena to Mr. Levandowski himself describe how these requests call for information that is potentially incriminating. *See* Dkt. 539, *passim*, and *in camera* submission.

*Second*, as previously established, Mr. Levandowski joined Uber and others in a valid common

interest agreement. Stroz was retained by the common interest group, and any materials obtained from Mr. Levandowski were obtained in order to facilitate the attorneys' provision of legal advice to the various parties to the agreement. See Dkt. 369, 370, 372, 374, 375, 376, 378, 379, 380, 381, 383, 384; see also Dkt. 572, 574, 575.

### B. Waymo's request seeks records that are protected from production under the exception recognized in *Couch v. United States*.

Even if this Court were to find (incorrectly) that Mr. Levandowski's transfer of materials to Stroz was not under a valid common-interest agreement, the materials in Stroz's possession would still be protected against disclosure by Mr. Levandowski's personal Fifth Amendment privilege. In *Couch v. United States*, 409 U.S. 322 (1973), the Supreme Court found that, while in general a subpoena that demands production of records from a third party does *not* violate an individual's Fifth Amendment privilege, *id.* at 328-29, 333-34, there is an exception to that general rule: "[S]ituations may well arise where constructive possession is so clear . . . as to leave the personal compulsions upon the accused substantially intact."[3] *Id.* at 333; *see also id.* at 333 n.16; *accord Fisher*, 425 U.S. at 398 (re-stating the exception).

While the Ninth Circuit has observed that the Supreme Court "has provided no further guidance as to what circumstances would trigger this reserved exception" (*In re Grand Jury Subpoena (Maltby)*, 800 F.2d 981, 984 (9th Cir. 1986); *see also In re Grand Jury Subpoena (ABC, Inc.)*, 668 F. Supp. 2d at 311), the facts here establish that Mr. Levandowski maintained constructive possession of any materials provided to Stroz as Stroz ████████████████████████ ████████████████████████ (Stroz Report, Exh. 3.) This case is thus a far cry from those in which the privilege holder relinquished "the right to immediate possession" of the records in question, *United States v. Hershenow*, 680 F.2d 847, 856-57 (1st Cir. 1982), or in which the records were actually prepared by the subpoenaed party, *In re Grand Jury Empaneled (Colucci)*, 597 F.2d 851, 862-63 (3d Cir. 1979).

### II. Waymo's Requests Seeking Statements by Mr. Levandowski Must be Quashed

Several of Waymo's requests also seek records that reflect or contain any statements made by Mr. Levandowski to Stroz.[4] As discussed above and in previously-filed pleadings, any such statements would have been communicated by Mr. Levandowski pursuant to a valid common interest agreement, and are therefore protected from disclosure by the joint defense, attorney-client, and attorney work product privileges. See Dkt. 369, 370, 372, 374, 375, 376, 378, 379, 380, 381, 383, 384, 572, 574, 575.

### III. Waymo's Requests Seeking Records that Reference or Discuss Materials That May Have Been Provided by Mr. Levandowski to Stroz Must Also Be Quashed.

Waymo's requests seeking records that contain recitations or discussions of materials provided by Mr. Levandowski to Stroz must be quashed as well.[5] The information in any responsive records would reveal the existence, possession, and authenticity of materials in Mr. Levandowski's possession or control. Mr. Levandowski has a privilege to prevent the revelation

---

[3] *Couch* also offered another scenario that would give rise to an exception (where "the relinquishment of possession is so temporary and insignificant"); that is not the prong our argument relies upon.
[4] The requests that call for records that reflect or contain statements by Mr. Levandowski include Requests Nos. 6-8, 11, 13, and 15-28.
[5] The requests that seek records that discuss materials provided by Mr. Levandowski include Requests Nos. 6-8, 11, 13-28, and 31.

of such information by attorneys (or their agents) who obtained the information under a common interest agreement. *See* Part I.A., *supra*.

As several courts have recognized, the Fifth Amendment not only protects a privilege-holder from producing *records* if doing so would tend to incriminate, it also protects against the revelation of the *information* that would be incriminating. *See SEC v. Chin*, No. 12-cv-01336-PAB-BNB, 2012 U.S. Dist. LEXIS 182252 at *26 (D. Colo. Nov. 29, 2012) ("requiring [respondents] to provide a detailed privilege log of the documents claimed to be subject to the protections of the Fifth Amendment . . . is testimonial, could be incriminating, and falls within the protection against self-incrimination"); *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 649 (C.D. Cal. 2005) (rejecting a motion to compel a privilege log because "requiring defendant [ ] to produce a privilege log listing responsive documents may incriminate defendant [ ] by forcing him to 'admit that the documents exist, are in his possession or control, and are authentic'"). Enforcing that constitutional mandate in this case requires shielding from production records created by Stroz pursuant to a common interest agreement—again, a form of the attorney-client privilege—if those records would reveal information protected by Mr. Levandowski's Fifth Amendment privilege.

### IV. Waymo's Requests For Unfettered Access To Any Devices Mr. Levandowski Provided to Stroz Must Be Quashed as Overbroad, Burdensome, and Invasive

Finally, we note that among the records sought by Waymo are any devices, such as computers, that Mr. Levandowski may have provided to Stroz. *See, e.g.,* Request No. 12. While such devices, if they exist, could conceivably contain relevant materials, they would likely also contain all manner of other materials to which Waymo has no right—and over which Mr. Levandowski might have other personal privileges and significant privacy interests, such as personal photographs, confidential financial information, intimate correspondence, medical information, social-security numbers, attorney-client confidential communications and attorney work-product, not to mention proprietary and confidential business information unrelated to this litigation. Waymo's request for unfettered access to such information is unsupported by the law.

Even in cases where a court determines some access is appropriate, parties are required to work out an examination protocol that protects the litigant's legitimate privacy interests. *See Advante Int'l Corp. v. Mintel Learning Tech.*, No. C 05-01022 JW (RS), 2006 U.S. Dist. LEXIS 86334 at *3 (N.D. Cal. Nov. 21, 2006) ("[E]ven in a case where imaging of an opposing party's hard drives might be warranted, such an inspection would not be permitted absent an examination protocol that would protect the other party's legitimate privacy and other interests." (quotation marks omitted)); *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, No. 13-cv-01806-JCS, 2014 U.S. Dist. LEXIS 45727 at *34 (N.D. Cal. Apr. 1, 2014) (same). If any responsive devices exist, and the Court orders them produced, a protocol would be necessary to protect Mr. Levandowski's legitimate privacy interests and personal privileges.

### Conclusion

For all of the reasons set forth above, and for the reasons set out in the briefs and filings that Mr. Levandowski joins or incorporates by reference, this Court should grant Mr. Levandowski's motion to intervene and grant Mr. Levandowski's motion to quash Waymo's subpoena to Stroz.

Respectfully submitted,

*/s/ Ismail J. Ramsey*
Ismail Ramsey
RAMSEY & EHRLICH LLP
*Counsel for Non-Party Anthony Levandowski*

cc: Counsel of record (via ECF); Special Master John Cooper