QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa J. Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO LLC'S<br>CONSOLIDATED RESPONSE TO<br>MOTIONS FOR RELIEF FROM<br>NONDISPOSITIVE PRETRIAL ORDER<br>OF MAGISTRATE JUDGE (DKTS. 572,<br>574, 575)** |

## **TABLE OF CONTENTS**

**Page**

I.     LEGAL STANDARD .................................................................................................1

II.    MOVANTS HAVE NOT SHOWN THAT MAGISTRATE CORLEY'S RULINGS
       ON THE ATTORNEY-CLIENT PRIVILEGE WERE CLEARLY ERRONEOUS ............2

       A.    The Due Diligence Materials Are Not Protected By Uber's Attorney-Client
             Privilege .........................................................................................................2

       B.    The Due Diligence Materials Are Not Protected By OT's Newly Asserted
             Claim of Attorney-Client Privilege ..............................................................3

III.   MOVANTS HAVE NOT SHOWN THAT MAGISTRATE CORLEY'S JOINT
       DEFENSE INTEREST FINDINGS ARE CLEARLY ERRONEOUS ...............................4

       A.    Magistrate Corley's Finding That The Term Sheet Created No Joint
             Defense Interest Is Not Clearly Erroneous...................................................5

       B.    Magistrate Corley Did Not Clearly Err By Concluding That The
             Indemnification Clause Did Not Create A Joint Defense Interest ...........................6

       C.    Magistrate Corley Did Not Clearly Err By Finding That Correspondence
             From Levandowski's Counsel Indicated He Shared No Joint Defense
             Interest With Uber ..........................................................................................7

       D.    The Purpose Of The "Due Diligence Report" Was, In Fact, Due Diligence ............8

IV.    MAGISTRATE CORLEY DID NOT CLEARLY ERR IN REJECTING
       LEVANDOWSKI'S ARGUMENT THAT A JOINT DEFENSE AGREEMENT
       CREATES A NEW PRIVILEGE WHERE NONE EXISTED ...........................................10

V.     MOVANTS' ASSERTION THAT WORK PRODUCT WAIVER OCCURS
       ONLY THROUGH DISCLOSURE TO A LITIGATION ADVERSARY IS
       INCORRECT ...........................................................................................................11

VI.    MAGISTRATE CORLEY DID NOT CLEARLY ERR BY ORDERING
       PRODUCTION OF THE STROZ REPORT BECAUSE IT POST-DATED THE
       PUT CALL AGREEMENT ........................................................................................12

VII.   MAGISTRATE CORLEY DID NOT CLEARLY ERR IN HOLDING THAT
       "WAYMO HAS A SUBSTANTIAL NEED FOR PARTS OF THE STROZ
       REPORT" ..............................................................................................................14

VIII.  REVERSAL IS INAPPROPRIATE IN LIGHT OF THE ALTERNATIVE BASES
       FOR AFFIRMANCE .................................................................................................14

IX.    NO STAY PENDING APPEAL OR MANDAMUS IS WARRANTED...........................14

X.     CONCLUSION .......................................................................................................15

1

2

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

3

4

*Bank Brussels Lambert v. Credit Lyonnais*,
   160 F.R.D. 437 (S.D.N.Y. 1995)..................................................................................5

5

*Beavers-Gabriel v. Medtronic, Inc.*,
   No. 13-686, 2015 WL 3397859 (D. Hawaii May 26, 2015) ...................................3, 13

6

7

*In re Fujitsu Ltd.*,
   578 F. App'x 997 (Fed. Cir. 2014) ............................................................................14

8

*In re Grand Jury Subpoena*,
   357 F.3d 900 (9th Cir. 2004)...............................................................8, 9, 11, 13

9

10

*Griffith v. Davis*,
   161 F.R.D. 687 (C.D. Cal. 1995) ..............................................................................11

11

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
   115 F.R.D. 308 (N.D. Cal. 1987) ................................................................................5

12

13

*In re JP Morgan Chase & Co. Sec. Litig.*,
   MDL No. 1783, 2007 WL 2363311 (N.D. Ill. Aug. 13, 2007) ....................................5

14

*Libbey Glass, Inc. v. Oneida, Ltd.*,
   197 F.R.D. 342 (N.D. Ohio 1999).................................................................................5

15

16

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) ....................................................................................................15

17

*NL Indus., Inc. v. Commercial Union Ins. Co.*,
   144 F.R.D. 225 (D.N.J. 1992) ......................................................................................7

18

19

*Neilson v. Union Bank of Cal., N.A.*,
   No. 02-6942, 2003 WL 27374179 (C.D. Cal. Dec. 23, 2003) ...................................11

20

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007) ................................................................................5

21

22

*Oak Industries v. Zenith Industries*,
   No. 86 C 4302, 1988 WL 79614, 1988 U.S. Dist. LEXIS 7985
   (N.D. Ill. July 27, 1988) ..............................................................................................5

23

24

*In re Pac. Pictures Corp.*,
   679 F.3d 1121 (9th Cir. 2012)....................................................................................10

25

*Patrick Caldwell v. Facet Retiree Med. Plan*,
   No. C 13-00385 WHA ..................................................................................................2

26

27

*In re Rearden LLC*,
   841 F.3d 1327 (Fed. Cir. 2016) .................................................................................14

28

*SCM Corp. v. Xerox Corp.*,
    70 F.R.D. 508 (D. Conn. 1976) .........................................................................................5

*Sec. & Exch. Comm'n v. Mercury Interactive LLC, No. C*,
    07-02822 WHA 2012 WL 4466582 (N.D. Cal. Sept. 25, 2012).................................1

*In re Shelbyzme LLC*,
    547 F. App'x 1001 (Fed. Cir. 2013) ................................................................................14

*In re Shukh*,
    485 F. App'x 437 (Fed. Cir. 2012) ..................................................................................14

*In re Taiwan Union Tech. Corp.*,
    587 F. App'x 638 (Fed. Cir. 2014) ..................................................................................14

*United States v. Bergonzi*,
    216 F.R.D. 487 (N.D. Cal. 2003) ....................................................................................12

*United States v. Boyce*,
    No. 13-601, 2014 WL 7507240 (C.D. Cal. May 2, 2014) ..............................................3

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2016).............................................................................................2

*United States v. MIT*,
    129 F.3d 681 (1st Cir. 1997) ...........................................................................................11

*United States v. Schwimmer*,
    892 F.2d 237 (2d Cir. 1989) ............................................................................................10

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ..........................................................................................................3

*Verigy US, Inc. v. Mayder*,
    No. 07-4330, 2008 WL 4866290 (N.D. Cal. Nov. 7, 2008)...........................................11

*In re Verisign, Inc. Sec. Litig., No. C 02-02270 JW*,
    2004 WL 2445243 (N.D. Cal. Mar. 10, 2004) ..................................................................1

**Statutes**

Cal. Civ. Code. § 1668 .........................................................................................................7

Cal. Ins. Code § 533 ............................................................................................................7

Fed. R. Civ. P. 72(a) ..........................................................................................................14

Cal R. Prof'l Conduct 3-310(c) ...........................................................................................5

Magistrate Judge Corley found that Waymo's Motion To Compel should be granted on multiple grounds.  Rather than attempt to identify any specific "clear error," as required to meet their burden to overturn the Magistrate's ruling, the Movants collectively throw the kitchen sink in their objections, citing to anything and everything they can to try to avoid the Magistrate's ruling and continue their "relentless concealment of likely probative evidence."  (Dkt. 433, 8.)  Otto Trucking ("OT") argues, for example, that the Magistrate "clearly erred" in finding that what Defendants themselves have repeatedly referred to as the Stroz "Due Diligence Report" related to "due diligence."  (Dkt. 574, 4.)  And Movants attempt to show error by relying on arguments and case law never presented to the Magistrate.

Movants do not come close to meeting the clear error standard for setting aside the Magistrate's 24-page opinion.  All of Magistrate Corley's findings – that Stroz was not retained by Levandowski or his lawyer, that Levandowski communicated with Stroz in his individual capacity rather than in his capacity as an officer of any Otto entity, that the recipients of the report did not share a common litigation interest, that the preparation and sharing of the report was not designed to further any alleged shared litigation interest, and that the declarations submitted by Movants were not credible – are supported by the evidence and the law and necessitate the conclusion that the due diligence materials must be produced.  They certainly do not rise to "clear error," and Movants do not show otherwise.  Magistrate Corley's Opinion should be affirmed.

## I.       LEGAL STANDARD

As this Court has explained, "[a] non-dispositive order entered by a magistrate must be deferred to unless it is 'clearly erroneous or contrary to law.' . . . . A district court reviewing the magistrate judge's order 'may not simply substitute its judgment for that of the deciding court.'" *Sec. & Exch. Comm'n v. Mercury Interactive LLC*, No. C 07-02822 WHA, 2012 WL 4466582, at *3 (N.D. Cal. Sept. 25, 2012) (Alsup, J.) (citations omitted).  More specifically, discretionary discovery rulings by a magistrate judge should be upheld unless they are clearly erroneous.  *In re Verisign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2004 WL 2445243, at *1 (N.D. Cal. Mar. 10, 2004) ("The 'clearly erroneous' standard applies to factual findings and discretionary decisions made [by

1  magistrate judges] in connection with non-dispositive pretrial discovery matters."); *see also*

2  *Patrick Caldwell v. Facet Retiree Med. Plan*, No. C 13-00385 WHA, Dkt. 86 at 3 (March 31,

3  2014) (Alsup, J.) ("Had this issue been before the assigned judge *ab initio*, he would have allowed

4  the depositions to go forward.  That, however, is not the standard of review.  Defendants have

5  simply not met their burden to prove that the discovery order was clearly erroneous or contrary to

6  law.").

7  **II.     MOVANTS HAVE NOT SHOWN THAT MAGISTRATE CORLEY'S RULINGS ON THE ATTORNEY-CLIENT PRIVILEGE WERE CLEARLY ERRONEOUS**

8             In her ruling, Magistrate Corley held that the report and its attachments are not protected

9  by anyone's attorney-client privilege, because Stroz was retained jointly by Ottomotto and Uber

10  while those companies "were on the opposite sides of a proposed transaction represented by

11  separate counsel."  (Dkt. 566, 10.)  The Magistrate noted that there is no case holding "that

12  communications between separate parties with separate counsel on opposite sides of a proposed

13  transaction are protected by the attorney-client privilege" (*id*.) and rightly pointed out that "[t]wo

14  clients represented by separate counsel do not create an attorney-client relationship by jointly

15  retaining an agent" (*id*. 11).  Magistrate Corley further found that memoranda summarizing

16  interviews with Ron and Levandowski are not privileged because neither held an attorney-client

17  relationship with any of the attorneys who retained Stroz.  (*Id*.)  Movants have not shown clear

18  error for any of these findings, nor could they as they are well supported in the opinion.

19         **A.     The Due Diligence Materials Are Not Protected By Uber's Attorney-Client Privilege**

20             Uber contends that Magistrate Corley clearly erred by not concluding that the Stroz Report

21  is privileged under *United States v. Christensen*, 828 F.3d 763, 802 (9th Cir. 2016).  (Dkt. 575, 4-

22  5.)  Magistrate Corley, however, considered *Christensen* and found that it "merely held that

23  conversations between a lawyer and an investigator retained by the lawyer about the lawyer's

24  client are privileged."  (Dkt. 566, 10.)  As discussed above, however, Magistrate Corley found that

25  neither Levandowski, Ron, nor their lawyers hired Stroz.  (*Id*.)  This case is therefore unlike

26  *Christensen*.  Nor does Uber address Magistrate Corley's finding (*id*.) that the report is not

27  privileged because it was prepared by an "independent expert" for two parties "on opposite sides

28

1    of a proposed transaction."  Magistrate Corley noted that Uber had not cited authority "that holds

2    that communications between separate parties with separate counsel on opposite sides of a

3    proposed transaction are protected by the attorney-client privilege" (Dkt. 566, 10), and Uber's

4    motion still cites no such authority.  Nor does Uber cite any authority contrary to Magistrate

5    Corley's holding that "[t]wo clients represented by separate counsel do not create an attorney-

6    client privilege by jointly retaining an agent."  (Dkt. 566, 11.)[1]

7         **B.**     **The Due Diligence Materials Are Not Protected By OT's Newly Asserted
     Claim of Attorney-Client Privilege**

8         OT argues that Magistrate Corley erred by not finding the report to be protected by *OT's*

9    attorney-client privilege because Stroz and Levandowski were supposedly acting on OT's behalf

10   when Stroz interviewed Levandowski .  (Dkt. 572, 2.)  But no one ever made that argument

11   before, so it is waived.[2]  *See Beavers-Gabriel v. Medtronic, Inc*., No. 13-686, 2015 WL 3397859,

12   at *4 (D. Hawaii May 26, 2015); *United States v. Boyce,* No. 13-601, 2014 WL 7507240, at *7

13   (C.D. Cal. May 2, 2014).  Having not made this argument, no movant can show that Magistrate

14   Corley's decision not to adopt it is clear error.  It is without merit in any event.  While OT asserts

15   it "jointly retained Stroz" (Dkt. 572, 1, 4), the Stroz retention agreement makes no mention of OT

16   (who was not a party to the Term Sheet) at all.  Thus, Magistrate Corley correctly found "the Term

17   Sheet and [Levandowski's counsel's] side agreements with Stroz establish that Stroz's interview

18   of Levandowski was performed in Levandowski's individual capacity," and not as an OT or

19   Ottomoto executive.[3]  (Dkt. 566, 10.)

20

21

22       [1]   Even crediting Uber's arguments, Magistrate Corley found that Uber waived any work

23   product protection by sharing the withheld documents with Otto (Dkt. 566, 13-21), and that same
     conclusion would equally compel a finding that any attorney-client privilege was waived.

24

25       [2]   OT joined Uber and Ottomoto's opposition to Waymo's motion to compel rather than file its
     own.  (Dkt. 389.)

26

27       [3]   The fact that Levandowski communicated with Stroz in his individual capacity renders
     *Upjohn Co. v. United States*, 449 U.S. 383 (1981), inapposite.

28

### III.   MOVANTS HAVE NOT SHOWN THAT MAGISTRATE CORLEY'S JOINT DEFENSE INTEREST FINDINGS ARE CLEARLY ERRONEOUS

Magistrate Corley held that any privileges over the report and its attachments had been waived by their distribution to parties who do not satisfy the joint defense doctrine.  She found that, at the time the Term Sheet was signed by Uber and Ottomotto, the companies "were on the opposite sides of a proposed acquisition with no obligation to consummate the transaction."  (Dkt. 566, 15.)  Uber and Ottomotto "could only have a common legal interest in pursuing a defense of a possible lawsuit by Waymo once Uber was obligated (if certain conditions were met) to acquire Otto and thus inherit or create any liabilities to Waymo."[4]  (*Id*.)  Magistrate Corley also noted that the fact that Levandowski's lawyer, in a letter to Stroz, had claimed that Levandowski "shared a common legal interest with Otto, but did not also claim to share a common interest with Uber," evidenced that Levandowski did not share such an interest with Uber.  (*Id*., 17.)

Magistrate Corley went on to find that, even if Ottomotto and Uber had shared a common legal interest when they hired Stroz, the purpose of the Stroz investigation was "to enable Uber to evaluate whether to purchase Otto rather than to develop a joint strategy regarding Waymo litigation."  (Dkt. 566, 16.)  She noted that the Term Sheet identified the purpose of the Stroz investigation as allowing Uber to conduct due diligence before deciding whether to sign the Put Call Agreement and creating a record that "will control whether any diligenced employees have to reimburse Uber for indemnification expenses should Waymo sue the diligenced employees."  (*Id*. 15-16.)  Magistrate Corley then noted that Stroz provided Uber with an interim report "just before Uber signed the Put Call Agreement," confirming that the purpose of the investigation was so that Uber could evaluate whether to sign the agreement.  (*Id.*, 16.)  Indeed, the Term Sheet requires that Stroz's "initial due diligence" be completed prior to the time Uber was required to sign the Put Call Agreement, confirming that the purpose of the investigation was to complete the acquisition.  (Dkt. 523-5, UBER00017566; Dkt. 566, 3.)

---

[4]   Contrary to OT's contention (Dkt. 575, 1), Magistrate Corley did not hold that two parties can never "share litigation risk prior to the time that one of them becomes 'obligated' to acquire the other."  Rather, Magistrate Corley held that Defendants had not met their burden of proving that Uber shared any risk of litigation with Waymo prior to acquiring Ottomotto.

### A.   Magistrate Corley's Finding That The Term Sheet Created No Joint Defense Interest Is Not Clearly Erroneous

Movants contend that Magistrate Corley erred by finding that the Term Sheet did not create a joint defense interest because Ottomotto and Uber were on opposite sides of the proposed transaction.  (Dkt. 572, 3-4; Dkt. 574, 3; Dkt. 575, 1.)  For its part, Uber claims there is "no legal basis" for Magistrate Corley's finding.  But the Court need look no further than the Rules of Professional Conduct, which describes the legal interests of parties to a proposed business deal as adverse such that the same attorneys cannot represent both sides, absent a waiver.  Cal. R. Prof'l Conduct 3-310(c).  Courts, therefore, often hold that no joint defense privilege arises merely because two parties contemplate a business transaction that may give rise to litigation.[5]

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987), the primary authority relied on by Uber, is not to the contrary.  Magistrate Corley considered this decision and distinguished it on the ground that it "involve[d] the sharing of already privileged information, and not the joint production of purportedly privileged work product."  (Dkt. 566, 17.) *Hewlett-Packard* involved the disclosure of a single opinion letter concerning one patent during the sale of a business, not the joint commissioning of an investigation into "Bad Acts" as a precondition to whether a business transaction would go forward.  That decision has, further, been widely criticized as taking too "expansive" of a view of the joint defense privilege by expanding that doctrine to predominantly commercial transactions.  *See Nidec*, 249 F.R.D. at 579; *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 348 (N.D. Ohio 1999); *Bank Brussels Lambert v. Credit Lyonnais,* 160 F.R.D. 437, 447 (S.D.N.Y. 1995); *Oak Industries v. Zenith Industries,* No. 86 C 4302, 1988 WL 79614, at *4, 1988 U.S. Dist. LEXIS 7985, at *12 (N.D. Ill. July 27, 1988).

---

[5]   *In re JP Morgan Chase & Co. Sec. Litig.*, MDL No. 1783, 2007 WL 2363311, *5 (N.D. Ill. Aug. 13, 2007) ("Fundamentally, the Court does not understand how Bank One and JP Morgan can be said to share a common legal interest prior to their signing the merger.  Prior to the merger, these organizations stood on opposite sides of a business transaction."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579 (N.D. Cal. 2007) (joint defense doctrine did not apply to communications between a company and potential purchasers of that company); *SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508, 513 (D. Conn. 1976)(antitrust analysis offered during joint venture negotiations not privileged as parties were not commonly interested, but adverse, negotiating an arm's length a business transaction).

The Magistrate therefore correctly followed the later authority from this and other Districts declining to follow *Hewlett-Packard*.  (*See* 6/7/27 Hearing Tr., 8 ("There's no such thing as 'the Northern District has decided.'").)

Uber also argues that it shared a common legal interest with Ottomotto when the Term Sheet was signed because they "faced that risk [of litigation] irrespective of whether the deal closed."  (Dkt. 575, 1-2.)  Although Uber cites paragraphs 6 and 10 of the declaration of its in-house counsel, Justin Suhr, to support that contention (Dkt. 378), those paragraphs simply state that Uber "contemplated the specific possibility that Google could bring claims arising out of Uber's acquisition of Otto against some or all of the parties" and that there were "litigation risks that the proposed acquisition presented."  (*Id*. ¶¶ 6, 10.)  Suhr does not suggest, much less explain, how Uber faced a shared risk of litigation against Waymo with Ottomoto even if the acquisition was not completed.

In its part, OT contends a shared joint defense interest existed because the parties were "in the late stages of negotiation" when they (albeit not OT) signed the Term Sheet to retain Stroz.  (Dkt. 572, 4.)  OT cites no authority that the "stage of negotiations," whether early or late, impacts whether a joint defense privilege exists.  Even if it had, Movants do not even meet the legal standard OT contends Magistrate Corley should have applied.  The Magistrate Judge found that the Term Sheet imposed significant due diligence requirements that had to occur before the acquisition could be completed.  (Dkt. 566, 2-3.)  And while OT argues that the Term Sheet gave it a joint defense interest with Uber, Ottomotto, Ron, and Levandowski (Dkt. 572, 2), again, OT is not a signatory to the Term Sheet.  (Dkt. 510-3.)

### B.   Magistrate Corley Did Not Clearly Err By Concluding That The Indemnification Clause Did Not Create A Joint Defense Interest

Levandowski argues that the indemnification obligation in the Term Sheet gave rise to a shared litigation risk "regardless whether it ended up purchasing Otto."  (Dkt. 574, 3.)  But this argument ignores, and does not rebut, Magistrate Corley's finding that the parties remained adverse with respect to that shared litigation risk at least until after the Stroz investigation was completed.  (Dkt. 566, 3.)  As Magistrate Corley found (Dkt. 566, 3), the Term Sheet explicitly

makes the indemnification obligation conditional (Dkt. 523-5, UBER00017566).  Further, as the Magistrate found (Dkt. 566, 2-3), Uber did not even have an indemnification obligation until after "execution of the Put Call Agreement" (Dkt. 523-5, UBER00017566).  Uber therefore owed no indemnification obligation at the time the Term Sheet was signed and the Stroz investigation undertaken.  Regardless, indemnification agreements covering intentional torts like trade secret theft are illegal and unenforceable, Cal. Ins. Code § 533; Cal. Civ. Code. § 1668, and therefore cannot give rise to a shared legal interest.  Further, an indemnification relationship does not, per se, create a joint defense privilege, and there is no insured-insurer privilege.[6]

But even crediting Levandowski's position that the indemnification provision in the Term Sheet created a common legal interest between Uber and Ron and between Uber and Levandowski, that is not sufficient to show clear error.  Levandowski has not shown that all members of the "joint defense group" shared that *same* common interest.  In particular, he has not shown that he and Ron shared the same common interest.  Levandowski and Ron were not in an indemnitor-indemnitee relationship with each other and therefore shared no joint defense interest with respect to their individual "Bad Acts" being investigated by Stroz.

### C.   Magistrate Corley Did Not Clearly Err By Finding That Correspondence From Levandowski's Counsel Indicated He Shared No Joint Defense Interest With Uber

Levandowski faults (Dkt. 574, 5) Magistrate Corley for relying on the letter from his counsel to Stroz that asserted that Levandowski shared a common legal interest with Ottomotto but made no mention of any shared interest with Uber.  (Dkt. 566, 17.)  Levandowski's argument simply disagrees with the reasonable inference Magistrate Corley drew from the evidence, which suggested Levandowski shared no interest with Uber.  Because Levandowski's conversations with Stroz were shared with Uber, it is not sufficient for Levandowski to merely show a joint defense interest with Ottomotto.

---

[6]  *See, e.g., NL Indus., Inc. v. Commercial Union Ins. Co.* 144 F.R.D. 225, 231 (D.N.J. 1992) ("The common interest doctrine is applicable only when it has been determined that the ... insurer is obligated to defend the underlying action brought against the insured ... and the parties 'have employed a lawyer to act for them in common.'").

**D.     The Purpose Of The "Due Diligence Report" Was, In Fact, Due Diligence**

OT contends that any finding that "the Stroz investigation was intended for due diligence purposes" was clear error in light of the attorney declarations the defendants submitted.  (Dkt. 572, 4.)  That the purpose of the Stroz investigation was not "due diligence" does not pass the straight face test.  Uber identified Stroz's work as a "due diligence review" the first time they disclosed its existence and stated the Stroz report is "based on that due diligence."  (3/29/17 Hearing Tr., 12, 24.)  The privilege log itself refers to Stroz's work as the "Due Diligence Investigation."  (Dkt. 321-2.)

Uber argues the Stroz investigation had a "dual purpose" that was both business and in anticipation of litigation.  (Dkt. 575, 2.)  Uber asks the Court to apply, in the joint defense context, the standard for determining if a "dual purpose" document is work product, which Uber states is met "if it can fairly be said that the document was created because of anticipated litigation and would not have been created in substantially similar form but for the prospect of litigation."  (Dkt. 575, 2 (*quoting In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004).)[7]  The decision Uber cites does not address the joint defense privilege at all.  But even if that standard were applicable, Magistrate Corley found that the purpose of the Stroz investigation was to advise Uber on whether to complete the merger and to determine the scope of any indemnification obligations.  (Dkt. 566, 15-16.)  There is no indication that the Stroz investigation would not have occurred in substantially similar form even if there was no expected litigation.  And they certainly have not shown Magistrate Corley's opposite conclusion was clear error.

Levandowski argues (Dkt. 574, 4) that Magistrate Corley erred by not giving dispositive weight to the fact that the Stroz retention agreement states that its purpose is to allow the parties "to understand certain factual matters potentially relevant to potential litigation . . ."  (Dkt. 370-3, 2 (emphasis added).)  As an initial matter, Levnadowski makes this argument only by ignoring that the Stroz retention agreement explicitly states that its purpose includes other "related matters,"

---

[7]  Otto Trucking relies on the same case for its articulation of the joint defense interest standard.  (Dkt. 572, 4.)

1   *i.e.*, the business purposes identified by Magistrate Corley, including deciding whether to

2   complete the acquisition and determine the scope of any indemnification obligations.[8]  What is

3   more, the "potential litigation" relied on by Levandowski is litigation in which he and Uber would

4   have *adverse* interests, examples of which include this litigation as well as litigation between Uber

5   and Levandowski concerning the indemnification provisions themselves.  The retention

6   agreement, therefore, does not compel a finding that the Stroz Report "would not have been

7   created in substantially similar form but for the prospect of litigation" in which Levandowski and

8   Uber would have a common legal interest.  *In re Grand Jury Subpoena*, 357 F.3d at 908.

9        OT and Levandowski also contend that Magistrate Corley did not sufficiently credit their

10   self-serving and conclusory attorney declarations stating that the purpose of Stroz's investigation

11   was to obtain litigation advice.  (Dkt. 572, 4; Dkt. 574, 4-5.)  But they do not show clear error in

12   Magistrate Corley's finding that the declarations were "not persuasive evidence" and to be

13   afforded "little weight" because the declarations went out of the way to ignore all the contrary

14   evidence.  (Dkt. 566, 20.)  Magistrate Corley noted that although the attorney declarations

15   discussed and relied on the Term Sheet extensively, they conspicuously failed to attach it, "a key

16   hole in Uber's argument."  (Dkt. 566, 20; 5/25/17 Hearing Tr., 17.)  Such weighing of the

17   evidence and credibility findings are owed deference.[9]

18        Levandowski further argues that Magistrate Corley erred when she found that the Stroz

19   investigation was for due diligence purposes because Uber had what it refers to as a "litigation"

20   attorney retain Stroz.  (Dkt. 574, 4.)  While it is true that this attorney, Eric Tate of Morrison &

21   Foerster, has appeared for Uber in this litigation, Tate stated in his declaration that Uber retained

---

8   Magistrate Corley further noted that Defendants failed to explain why the Stroz Engagement letter is dated "[a]s of March 4, 2016" (Dkt. 370-3), which implies that there is some unexplained earlier version.  (Dkt. 566, 18.)  Evidence that the parties "back dated" the retention agreement suggests, if anything, that any concern about litigation post-dated the start of the Investigation.

9   Even if Levandowki's attorney's declaration were credible, Levandowski does not accurately represent its contents.  Contrary to his assertion, the declaration nowhere states that the reason Levandowski spoke to Stroz was "to evaluate litigation risks and generate litigation strategy." (Dkt. 381.)  At best, the declaration states there was "litigation risk."  (*Id*. ¶3.)

him "to provide legal advice regarding a potential *corporate transaction*."[10]  (Dkt. 370 ¶2 (emphasis added).)  And Levandowski cites no authority that places any relevance as to the specialty of a lawyer on this issue.[11]

## IV.   MAGISTRATE CORLEY DID NOT CLEARLY ERR IN REJECTING LEVANDOWSKI'S ARGUMENT THAT A JOINT DEFENSE AGREEMENT CREATES A NEW PRIVILEGE WHERE NONE EXISTED

Magistrate Corley held, citing extensive authority, that the joint defense doctrine does not, by itself, create a privilege, but instead "prevents waiver of a pre-existing privilege if the privileged information is shared only with those with a common legal interest."  (Dkt. 566, 12.) "Rather than a separate privilege, the 'common interest' or 'joint defense' rule is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other."  *In re Pac. Pictures Corp*., 679 F.3d 1121, 1129 (9th Cir. 2012).  Levandowski's opposition to Waymo's Motion similarly characterized the common interest privilege as "[a]n exception to the waiver of privilege."  (Dkt. 379, 7.)  Levandowski's attorney agreed with this statement at the hearing.  (5/25/17 Hearing Tr., 41, 46-47.)

Nevertheless, Levandowski now claims that his communications with Stroz are privileged, not because he was communicating with Stroz to obtain legal advice, but instead because he shared a common legal interest with Uber, Stroz's principal.  (Dkt. 574, 1.)  Levandowski relies on the Second Circuit decision *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir. 1989), a case he did not cite to Magistrate Corley.  In *Schwimmer*, one co-defendant's attorney hired an accountant "to serve [both co-defendants'] joint interests" and "on behalf of both clients."  *Id*.  But

---

[10]   In any event, Tate's website states he "counsels companies on . . . transactional matters . . . and employment aspects of mergers and acquisitions," not merely litigation. https://www.mofo.com/people/eric-tate.html.

[11]   Many of the attorneys that received the Stroz Report were not retained for litigation advice. Ron's attorney was retained to advise him "in connection with the proposed transaction."  (Dkt. 375 ¶2.)  Although they may also have given litigation advice, Ottomotto and Otto Trucking's attorneys were "hired to perform the negotiation and related corporate representation of Otto in connection with the potential transaction."  (Dkt. 376 ¶4.)  Levandowski's attorney was hired "to provide personal counsel regarding a potential corporate transaction."  (Dkt. 381 ¶2.)

Magistrate Corley found, and Levandowski does not dispute, that he agreed to speak with Stroz only on the condition that those communications *not* be shared with Uber or even his own company, Otto.  (Dkt. 566, 4.)  Further, Stroz was hired by Uber and Ottomotto (*id.*, 2; Dkt. 370-3), not Levandowski, to serve Uber and Ottomotto's interests, not Levandowski's.  Magistrate Corley further found that Levandowski only spoke to Stroz in his individual capacity (Dkt. 566, 10) and Stroz, therefore, was not his agent.  *Schwimmer* and its progeny are therefore inapposite.

## V.  MOVANTS' ASSERTION THAT WORK PRODUCT WAIVER OCCURS ONLY THROUGH DISCLOSURE TO A LITIGATION ADVERSARY IS INCORRECT

Uber argues that even if no joint defense privilege applies, sharing the Stroz report among the various recipients is not a waiver of work product protection because waiver of work product protection occurs only if there is disclosure with a litigation adversary.  (Dkt. 575, 3.)

As an initial matter, Uber's argument presupposes that the report is work product in the first place.  But it is not.  Uber contends that work product protection applies to these documents only "if it can fairly be said that the document was created because of anticipated litigation and would not have been created in substantially similar form but for the prospect of litigation."  (Dkt. 575, 2 (*quoting In re Grand Jury Subpoena*, 357 F.3d at 908).)  In light of Magistrate Corley's findings that the primary, if not sole, purpose of the Stroz investigation was to advise Uber on whether to acquire Ottomotto and to determine the scope of any indemnification obligations, this standard is not met.

But even if Uber could show that the report was work product, its argument that waiver of work product only occurs when disclosure is made to an actual "litigation adversary" is unavailing.  (Dkt. 575, 3.)  To the contrary, waiver arises from disclosure to a "potential adversary."  *United States v. MIT*, 129 F.3d 681, 687 (1st Cir. 1997); *Neilson v. Union Bank of Cal., N.A.*, No. 02-6942, 2003 WL 27374179, at *5 (C.D. Cal. Dec. 23, 2003).  It also arises from disclosures that merely increase the opportunity for a potential adversary to obtain the information.  *Verigy US, Inc. v. Mayder, No*. 07-4330, 2008 WL 4866290, at *2 (N.D. Cal. Nov. 7, 2008); *Griffith v. Davis*, 161 F.R.D. 687, 699 (C.D. Cal. 1995).  Magistrate Corley found that disclosure here was made to at least potential litigation adversaries, and Uber's argument therefore fails.

Specifically, Magistrate Corley found that: (1) "Uber disclosed the Stroz investigation to its then adversaries Otto, Levandowski and Ron" (Dkt. 566, 21); (2) "Otto was Uber's adversary because they were on opposite sides of a potential transaction" (*id.*); and (3) "Uber engaged Stroz to investigate Otto and its employees and the results of that investigation could have caused Uber to not proceed with the acquisition" (*id.*).  Further, during the course of the Stroz investigation (and still to this date), the parties were potential litigation adversaries at least with respect to Uber's potential obligation to indemnify Otto and Levandowski for their "Bad Acts."  (*Id.* 2-3 (discussing Uber's indemnification obligations).)

To support her finding of waiver, Magistrate Corley cited *United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003), in which a company disclosed its attorneys' investigation to the SEC under a confidentiality agreement.  The court held that the SEC and the company did not share a true common interest because the SEC maintained as a consideration the potential to bring charges against the company.  *Id.* at 496.  Uber contends that "*Bergonzi* does not stand for the proposition that parties to a potential business transaction are adversaries."  (Dkt. 575, 4.)  But that is not the proposition for which Magistrate Corley cited *Bergonzi*.  Rather, as Magistrate Corley found: (1) "Levandowski and Ron were also Uber's adversaries as Uber was investigating them" (Dkt. 566, 21); (2) "[t]he investigation results could have led to Levandowski and Ron losing millions of dollars if Uber decided not to sign the Put Call Agreement because of what it learned" (*id.*); and (3) "the investigation could lead to Levandowski or Ron having to reimburse Uber for indemnification expenses if an arbitrator or court found that they were not truthful with Stroz" (*id.*).  In short, the recipients of Uber's due diligence report potentially faced litigation with Uber concerning the scope of Uber's contractual indemnification obligations and their "Bad Acts," which were precisely the subject of the report, as well as potential litigation that could arise out of the proposed acquisition.  Magistrate Corley's conclusion was not clear error.

## VI.   MAGISTRATE CORLEY DID NOT CLEARLY ERR BY ORDERING PRODUCTION OF THE STROZ REPORT BECAUSE IT POST-DATED THE PUT CALL AGREEMENT

Uber argues that Magistrate Corley clearly erred by ordering production of the Stroz report because the report post-dated the April 11, 2016 signing of the Put Call Agreement that Uber

1  contends bound Uber to purchase Ottomotto and, thus, created a joint defense interest.  (Dkt. 575,

2  2-3, 5.)  Uber's argument fails on multiple grounds.

3         Initially, none of the Movants argued that any common legal interest arose upon anything

4  other than the signing of the Term Sheet.  None argued that a common legal interest arose as of the

5  signing of the Put Call Agreement.  Having not made this argument, Uber cannot show that

6  Magistrate Corley's decision not to adopt it is clear error.[12]  *See Beavers-Gabriel*, 2015 WL

7  3397859, at *4; *Boyce,* 2014 WL 7507240, at *7.

8         Moreover, Uber does not even address the alternative basis for Magistrate Corley's

9  decision that "the Stroz Investigation began well before the Put Call Agreement was signed"

10 (Dkt. 567, 18 n.2.), much less show that it was clearly erroneous.  Nor does it address Magistrate

11 Corley's finding that, prior to the signing of the Put Call Agreement, Stroz provided an "interim

12 report" to Uber, including the withheld witness interviews. (Dkt. 566, 5.)  Perhaps it is due to the

13 woefully inadequate privilege logs served by Defendants, but it appears that Defendants have

14 withheld and not even logged this "interim" report.  Nevertheless, Movants cannot retroactively

15 cloak all of this work and related communications in privilege merely by signing an agreement.

16        Further, even crediting Uber's argument, its argument is contrary to its position that the

17 Stroz report is work product.  As noted above, Uber contends that work product protection applies

18 to these documents only "if it can fairly be said that the document was created because of

19 anticipated litigation and would not have been created in substantially similar form but for the

20 prospect of litigation."  (Dkt. 575, 2 (*quoting In re Grand Jury Subpoena*, 357 F.3d at 908).)  In

21 light of Magistrate Corley's findings that the primary, if not sole, purpose of the Stroz

22 investigation was to advise Uber on whether to acquire Ottomotto and determine the scope of any

23 indemnification obligations, this standard is not met.

---

[12]  Uber claims it made this argument to Magistrate Corley (Dkt. 575, 3), but it cites only its declarations, not any briefing (*id.*, 3 n.5).  A party cannot raise arguments solely in factual declarations and not in their briefs.  Even if they could, the citations to those declarations merely establish that the date the Put Call Agreement was signed.  They do not make this legal argument.

Finally, the parties remained adverse with respect to the scope of Uber's indemnification obligations even after April 11. The Term Sheet provides that even "after the Closing," Uber's obligations to indemnify were dependent on whether the "Diligenced Employees" committed certain "Bad Acts." (Dkt. 523-5, UBER00017566; Dkt. 566, 3.) Those "Bad Acts" were the subject of the Stroz investigation.

## VII. MAGISTRATE CORLEY DID NOT CLEARLY ERR IN HOLDING THAT "WAYMO HAS A SUBSTANTIAL NEED FOR PARTS OF THE STROZ REPORT"

Magistrate Corley held that even assuming portions of the Stroz report were work product, Waymo had a substantial need for production in light of Levandowski's refusal to testify or produce documents. (Dkt. 566, 22.) Neither Uber nor Levandowski challenges this holding. OT mentions it in passing, saying it "preserves its right to challenge Judge Corley's classification if this Court or the Federal Circuit reverses her waiver holding." (Dkt. 572, 5.) But the time to challenge all bases for the Opinion is now, not at some later date. Fed. R. Civ. P. 72(a). The argument is, therefore, waived and these documents should be produced.

## VIII. REVERSAL IS INAPPROPRIATE IN LIGHT OF THE ALTERNATIVE BASES FOR AFFIRMANCE

Even assuming the Movants identified some clear error, that conclusion does not warrant reversing Magistrate Corley's Order. In its motion to compel, Waymo presented other grounds for compelling production of the Stroz Report that Magistrate Corley did not reach. These grounds include: (1) that Uber's privilege log was facially deficient (Dkt. 321, 5-7); (2) application of the crime-fraud exception (*id.*, 12); (3) the "attachments" to the Stroz Report are not work product merely because Stroz selected them as exhibits to the Report (*id.*, 14-16); and (4) Defendants failed to submit the necessary declarations from Ron, Levandowski, and O'Melveny & Myers to establish that no waiver has occurred (Dkt. 445, 7-9). If any of Movants' arguments are accepted, the Court should either address Waymo's other arguments or remand them to Magistrate Corley for consideration.

## IX. NO STAY PENDING APPEAL OR MANDAMUS IS WARRANTED

Levandowski and OT argue that, if the Court denies his motion, it should stay enforcement of the Opinion pending a mandamus petition to the Federal Circuit. (Dkt. 574, 5 n.4; Dkt. 572, 5.)

1   Such a petition (the third appellate proceeding in this case already) would not justify a stay.  The

2   Federal Circuit routinely denies petitions for writs of mandamus challenging privilege rulings,[13]

3   and such rulings "are unlikely to be reversed on appeal, particularly when they rest on factual

4   determinations for which appellate deference is the norm."  *Mohawk Indus., Inc. v. Carpenter*, 558

5   U.S. 100, 109 (2009).  Nor can Movants show irreparable harm.  *Mohawk* rejected the argument

6   that the harm from adverse privilege rulings is irreparable.  *Id*. at 109 ("Appellate courts can

7   remedy the improper disclosure of privileged material in the same way they remedy a host of other

8   erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in

9   which the protected material and its fruits are excluded from evidence.").  And here, the balance of

10  harms and public interest weigh in favor of disclosure in light of the substantial showing that

11  Waymo's trade secrets have been stolen, Levandowski's refusal to testify or produce documents,

12  and the relevance of the withheld documents.

13          Further, if a stay is granted, fact discovery may close before any appeal is decided, denying

14  Waymo the ability to take further discovery related to the contents of the withheld documents.

15  This case is on an expedited discovery and trial schedule.  Movants intend to use any appeal and

16  stay to obstruct the production of more than 3,500 documents they are withholding on privilege

17  and work product grounds so that Waymo may not consider any of these documents in its trial

18  preparation and potentially to cause a delay in the trial date.  Both Waymo and the public have an

19  interest in timely and orderly proceeding through discovery and to trial.

20  **X.     CONCLUSION**

21          Movants have not shown clear error, and their motions should be denied.

22

23

24

25          [13]   *In re Rearden LLC*, 841 F.3d 1327, 1334 (Fed. Cir. 2016); *In re Taiwan Union Tech. Corp.*,
    587 F. App'x 638, 641 (Fed. Cir. 2014); *In re Fujitsu Ltd.*, 578 F. App'x 997 (Fed. Cir. 2014); *In
26  re Shelbyzme LLC*, 547 F. App'x 1001, 1002 (Fed. Cir. 2013); *In re Shukh*, 485 F. App'x 437, 438
    (Fed. Cir. 2012).
27

28

1   DATED:  June 11, 2017                    QUINN EMANUEL URQUHART & SULLIVAN,
                                             LLP
2
                                             By  /s/Charles K. Verhoeven
3                                                Charles K. Verhoeven
                                                 Attorneys for WAYMO LLC
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WAYMO'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION FOR RELIEF