# EXHIBIT 89

                                                      **Pages 1 - 118**

                UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

WAYMO LLC,                          )
                                    )
            Plaintiff,              )
                                    )
    VS.                             )   **NO. C 17-00939 WHA**
                                    )
UBER TECHNOLOGIES, INC.; OTTO       )
TRUCKING LLC; and OTTOMOTTO         )
LLC,                                )
                                    )
            Defendants.             )
_____)

                                    San Francisco, California
                                    Wednesday, April 12, 2017

                    **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                        QUINN, EMANUEL, URQUHART, OLIVER
                           & SULLIVAN LLP
                        50 California Street - 22nd Floor
                        San Francisco, California  94111
                 **BY:   JORDAN R. JAFFE, ATTORNEY AT LAW
                        FELIPE CORREDOR, ATTORNEY AT LAW
                        DAVID A. PERLSON, ATTORNEY AT LAW
                        JEFFREY W. NARDINELLI, ATTORNEY AT LAW**

For Defendants:
                        MORRISON & FOERSTER LLP
                        425 Market Street
                        San Francisco, California  94105
                 **BY:   ARTURO J. GONZALEZ, ATTORNEY AT LAW**

              (APPEARANCES CONTINUED ON FOLLOWING PAGE)

REPORTED BY:   Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
               Official Reporter

1  **MR. JAFFE:** So there's a long list of things. The
2  beginning of that list, which is I think what you're asking
3  about, says (reading):
4      "Selected advanced self-driving technologies
5    developed in-house and/or currently deployed in Otto's
6    autonomous vehicles include..."
7  And then it has this list including what I just mentioned.
8      **THE COURT:** Okay. Read the one about the 10 Hz again.
9      **MR. JAFFE:** Sure. It says (reading):
10     "LiDAR - In-house custom built 64 laser (Class 1)
11   emitting 6.4 million beams a second at 10 Hz."
12     **THE COURT:** All right. So just hold that thought.
13 Why can't they see that? First, does that -- what were
14 they referring to whenever they made that representation under
15 oath to the Nevada people?
16     **MR. GONZALEZ:** So, Your Honor, we clarified that on
17 Chang Exhibit 8, which is a letter that we sent to the Nevada
18 Department of Motor Vehicles once they saw that they were
19 making it an issue, clarifying that we are developing but we
20 have not yet deployed any in-house custom-built LADAR.
21 What we --
22     **THE COURT:** Well, whether it was deployed or not, it
23 sounds like somebody was working on it.
24     **MR. GONZALEZ:** Precisely. And, Your Honor --
25     **THE COURT:** That would be an update. Why don't you

```
 1   let them see what they were working on?
 2           MR. GONZALEZ:  Because, Your Honor, we showed it to
 3   them yesterday.  It's the Fuji.
 4           MR. JAFFE:  So this --
 5           THE COURT:  Does Fuji track on that description?
 6           MR. JAFFE:  So we don't know if these are the same
 7   devices, but I can tell you what we know from the information
 8   that we have, which is that it doesn't appear to be Fuji.  And
 9   the reason for this is because the certification that I was
10   talking about was filed September 15th, 2016; and in the papers
11   they just filed last Friday, one of their declarants notes that
12   the Fuji project didn't start until October.  And so based on
13   the evidence that we have, Fuji didn't even exist when they
14   were filing this.
15           THE COURT:  All right.  So that may be, but answer my
16   question.  That description of 10 Hz -- and I've forgotten all
17   the other things.  Read it again.  There were about six items
18   in there.
19           MR. JAFFE:  Sure.  One second, please.
20                   (Pause in proceedings.)
21           MR. JAFFE:  (reading)
22            "In-house custom built 64 laser (Class 1) emitting
23       6.4 million beams a second at 10 Hz."
24           THE COURT:  All right.  Does the Fuji do that?
25           MR. JAFFE:  It could be.  You know, it's not -- we
```

```
 1  don't know from the short inspection that we had.  We haven't
 2  gotten any document production from them on this issue.
 3          THE COURT:  Let me ask.  Does it do that?
 4          MR. GONZALEZ:  Where's Rudy?
 5                  (Pause in proceedings.)
 6          MR. KIM:  We don't know.  Your Honor, we have to
 7  confirm that and get back to you.
 8          THE COURT:  Who is that that just said something?
 9          MR. GONZALEZ:  My partner Rudy Kim, Your Honor.  He's
10  the one that was there for the inspection.  He knows more about
11  technology than I know.
12          THE COURT:  Why don't we get Mr. Gupta -- is that his
13  name?
14          MR. JAFFE:  Yes, Your Honor.
15          THE COURT:  Bring him in here, put him under oath, and
16  I can ask him or you can ask him *What in the world were you*
17  *talking about?*
18          MR. GONZALEZ:  That's what I've suggested, Your Honor.
19  I said, *You can take people's depositions and ask them the*
20  *questions you want to ask and you'll get your answers.*
21     We're not hiding some device, Your Honor.  We've got two
22  devices basically and we showed both of them to them yesterday.
23          THE COURT:  But just be clear, I read your papers and
24  there's a difference between prototypes and final devices or
25  devices and work.  For example, whenever I do an order, the
```

         **THE COURT:** That sounds like somebody's fixing the
record.
         **MR. GONZALEZ:** Well, that -- I'm not going to deny
that, Your Honor. In their papers they cited this letter to
Nevada. We looked at the letter. We discussed it with our
client. The letter wasn't clear, so we submitted a
clarification.
         **THE COURT:** All right. Is Mr. Gupta still with the
company?
         **MR. GONZALEZ:** Yes, Your Honor.
         **THE COURT:** Why don't you depose him? Have you gone
and interviewed him to see what he was referring to?
         **MR. GONZALEZ:** Someone on my team, Your Honor, has dug
into this, and that's why we sent the clarification letter.
         **THE COURT:** I will just say this: I'm not ordering
anything more on the Nevada front. I will just say that I
absolutely believe that plaintiff is entitled to inspect
whatever was being referred to back at the time, not in March
but back when that thing was filed with the Nevada people in
2016. Whatever that was that was being referred to, they're
entitled to look at it even if it never got to the level of a
prototype. If it was just work in progress and thoughts in
progress or designs in progress, they're entitled to see if any
of their secrets were being used.
         So I'm just making that observation, but there's nothing