QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br>     v.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>            Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO'S OBJECTIONS TO IMPROPER EVIDENCE CITED IN DEFENDANTS' PRELIMINARY INJUNCTION SUR-REPLY** |

<u>UNREDACTED VERSION OF DOCUMENT SUBMITTED UNDER SEAL</u>

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

Pursuant to the expedited discovery order that governs the preliminary injunction ("PI") proceedings in this case, Defendants' PI Sur-reply was to be "limited strictly to addressing material in plaintiff's reply." As such, Defendants were precluded from relying on "fresh sur-reply declarations on any point that could and should have been raised in the opposition." Dkt. 61 at ¶ 8. In violation of this order, however, Defendants did just that. Defendants' Sur-reply (Dkt. 295-4) relies on new declarations that set forth or attach numerous pieces of evidence that could and should have been raised in Defendants' Opposition. Indeed, Defendants' Sur-reply is largely devoted to trying to shore up evidentiary gaps in Defendants' Opposition that Waymo pointed out in its Reply. But any evidence that existed to allegedly fill these gaps could and should have been filled in Defendants' Opposition itself; it is improper for Defendants to use their Sur-reply as a vehicle for filling these gaps as the expedited discovery order provides. Indeed, if permitted, the new arguments and evidence presented in Defendants' Sur-reply would significantly prejudice Waymo because it did not have the opportunity to depose Defendants' witnesses regarding these new arguments and evidence, or address them in its Reply in advance of the PI hearing. Therefore, Waymo objects to the newly submitted evidence and corresponding argument in Defendants' Sur-reply.

The improper evidence and argument from Defendants' Sur-reply is detailed below. Plaintiff Waymo respectfully objects to each piece of listed evidence and corresponding statements in Defendants' Sur-reply, on the ground that they could and should have been raised in Defendants' Opposition:

A.  **Supplemental Declaration of Dr. Michael Lebby (Dkt. No. 298-1)**

- **New Opinion Regarding Alleged Differences Between Fuji and GBr3 (¶¶ 3-7, Sur-reply at 3:14-4:12).** Dr. Lebby is one of Uber's two technical experts. Paragraphs 3-7 of his declaration are part of a section titled, "Differences between the Fuji and GBr3." Lebby Supp. Decl. ¶¶ 3-7. The paragraphs address an analysis that Waymo's expert Mr. Kintz provided comparing the features of Uber's Fuji transmit boards to Waymo's GBr3 transmit boards. *Id.* While Dr. Lebby references Mr. Kintz's reply declaration and

deposition, the same subject matter was presented in Mr. Kintz's original declaration. *See* Kintz Orig. Decl. (Dkt. No. 25-61) ¶¶ 29-35. Uber chose to have its *other* technical expert, Dr. McManamon, address those portions of Mr. Kintz's analysis in connection with Uber's opposition. McManamon Orig. Decl. (Dkt. No. 174-8) ¶ 33. But Dr. McManamon provided only a cursory analysis and admitted in his deposition that he offered no comparison of the Fuji and GBr3 ▮▮▮▮▮▮. McManamon Tr. (Dkt. No. 246-83) 29:23-30:1 ("Q. I just want to make sure I'm clear that you did not compare the Fuji ▮▮▮▮▮▮ to any Waymo PCB board design files. A. That's fair."). It now appears that Uber has abandoned Dr. McManamon and is attempting to rely on Dr. Lebby to respond to Mr. Kintz's comparison of the Fuji and GBr3 transmit boards. Uber and Dr. Lebby should have presented this testimony in connection with Uber's opposition papers.

- **New Opinion Regarding Trade Secret No. 1 (¶¶ 49-56, Sur-reply at 5:1-3).** These paragraphs provide new opinions from Dr. Lebby. Even though Waymo addressed Trade Secret No. 1 in its PI Motion and the accompanying declaration of Waymo's expert Mr. Kintz (Kintz Orig. Decl. ¶¶ 29-35), Uber did not have Dr. Lebby opine on Trade Secret No. 1 *at all* in his original declaration.

Instead, here too, Uber relied on Dr. McManamon only for this trade secret. *See* Lebby Orig. Decl. § VI; McManamon Orig. Decl. § VII. As noted above, Uber appears to have abandoned Dr. McManamon and is attempting to rely on Dr. Lebby to fill holes in Dr. McManamon's analysis. Uber should have and could have presented these arguments and analysis from Dr. Lebby in its opposition papers. For example, Dr. Lebby addresses Mr. Boehmke's work with ▮▮▮▮▮▮ in 2015 and 2016 to allegedly show independent development, but the cited materials were all included in Mr. Boehmke's original declaration and there is no reason why Dr. Lebby (or Dr. McManamon) could not have addressed them at that time. *Compare* Lebby Supp. Decl. ¶¶ 51-53 *with* Boehmke Orig.

Decl. ¶¶ 8-9, Exs. B, D, F.[1] Dr. Lebby also provides new public domain arguments that should have been included in his original declaration, including arguments that Velodyne's '190 patent discloses the claimed trade secret, and further argument about a previously unmentioned patent application. Lebby Supp. Decl. ¶¶ 54-55. Finally, Dr. Lebby presents a brand new argument that Fuji allegedly does not use ▮▮▮▮▮▮▮▮. But again, this analysis is based on information available to Uber at the time it filed its opposition brief and should have been presented at that time.[2]

- **New Opinions on Trade Secret Nos. 2-4, 6-7, 14, 28-30, 39, 94-99 (¶¶ 57-66, Sur-reply at 3 n.4, 5:5-20, 6:3-7, 6:11-17, 6:25-26).** These paragraphs provide new opinions from Dr. Lebby on Waymo trade secrets that were addressed as part of his initial declaration. *Compare* Lebby Supp. Decl. ¶¶ 57-66 *with* Lebby Orig. Decl. § VI. Uber has simply submitted a supplemental declaration as part of its Sur-reply to attempt to fill gaps in Dr. Lebby's original analysis of these trade secrets. This is improper under the Court's expedited discovery order. Dkt. 61 at ¶ 8.

**New Analysis of the 14,000 Stolen Files (¶¶ 67-70; not cited in Sur-reply).** These paragraphs address Waymo's native computer aided design files, including files from the set of 14,000 that Mr. Levandowski stole before leaving Waymo. Lebby Supp. Decl. ¶¶ 67-70. During his deposition, Mr. Lebby specifically explained that he did not consider Waymo's native design files as part of his analysis. Lebby Tr. (Dkt. No. 84) 77:6-12 ("Q. Okay. You didn't look at the native versions of the design files, for example? A. That is

---

[1] Dr. Lebby's new analysis and arguments are also objectionable insofar as they mischaracterize the nature of the cited documents. First, with a figure purporting to show beam spacing, Dr. Lebby incorporates a document cited by Mr. Boehmke that omits the portion of the document that says the ▮▮▮▮▮▮▮▮ *Compare* Lebby Supp. Decl. ¶ 51, Fig. 1 *with* Boehmke Orig. Decl. Ex. B at 10. Second, Dr. Lebby cites ▮▮▮▮▮▮▮▮, which are different than the ▮▮▮▮▮▮▮▮. *See* Dkt. No. 25-7, Trade Secret No. 1.

[2] This argument is based on the same incorrect distinction between ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ discussed in the previous footnote.

correct. Q. And you didn't offer an opinion about whether these files themselves are trade secrets; correct? A. I never looked. It wasn't part of my remit to look at native files, so I haven't offered any opinions."). There is no reason why Dr. Lebby could not have considered these files as part of his original declaration. Indeed, Waymo made the 14,000 files available for inspection on March 22, well in advance of Uber's opposition. Dkt. 135. They should not be able to do so now in violation of the Court's expedited discovery order.

B.  **Supplemental Declaration of Scott Boehmke (Dkt. No. 299-1)**

- **Mr. Boehmke's Work with ▓▓▓ (¶¶ 2-5; Sur-reply at 3:2-4, 3:6-8).** These paragraphs discuss work by Mr. Boehmke between 2015 and 2016, including coordination with ▓▓▓ to develop a LiDAR device. Mr. Boehmke argues that this work demonstrates independent development of ▓▓▓, but as Mr. Boehmke admits in his declaration, his original declaration already described his work during this period as a means to show independent development. Boehmke Supp. Decl. ¶ 3. The new declaration admittedly covers the same development period, but includes brand new analysis and arguments that should have been presented in Mr. Boehmke's original declaration. For example, Mr. Boehmke characterizes certain beam patterns ▓▓▓ as allegedly showing ▓▓▓. Boehmke Supp. Decl. ¶¶ 3-5, Figs. 1-3. As these same beam patterns were included in Mr. Boehmke's original declaration, there is no reason he could not have provided the same analysis and arguments at that time. Boehmke Orig. Decl. (Dkt. No. 176-1) ¶¶ 8-9, Exs. B, D, F.[3]

- **Mr. Boehmke's Claimed Development of Multiple Laser Diodes on a Single Curved PCB (¶¶ 6-10; Sur-reply at 3:4-6).** These paragraphs discuss Mr. Boehmke's purported

---

[3] Mr. Boehmke's new analysis and arguments mischaracterize the nature of the cited documents, making it further objectionable. First, with respect to Figure 1, Mr. Boehmke omits the portion of the document that says the ▓▓▓. *Compare* Boehmke Supp. Decl. ¶ 3, Fig. 1 *with* Boehmke Orig. Decl. Ex. B at 10. Second, Dr. Lebby cites ▓▓▓, which are completely different than the ▓▓▓. *See* Dkt. No. 25-7, Trade Secret 1.

efforts independently develop the idea to place multiple laser diodes on a single curved printed circuit board. Boehmke Supp. Decl. ¶ 6. Again, the discussion includes brand new analysis and arguments based on Exhibits that were provided as part of Mr. Boehmke's original declaration. *Compare id*. Figs. 4, 6, 7 *with* Boehmke Orig. Decl. ¶ 12, Exs. G, I. For example, Mr. Boehmke argues, "I have been considering positioning multiple laser diodes on a curved edge of a printed circuit board since December 2015," and goes on to provide three paragraphs of discussion. Boehmke Supp. Decl. ¶¶ 6-10. Uber knew that positioning laser diodes on a curved printed circuit board was a relevant trade secret when it filed its Opposition. So Uber should have had Mr. Boehmke provide his discussion at that time rather than waiting (unfairly) until after Waymo filed its Reply.

Mr. Boehmke's supplemental declaration also cites an additional exhibit that was not included in his original declaration. *Id.* ¶ 8, Ex. E. This exhibit was in Uber's possession when it filed its Opposition, so there is no reason why Uber could not have cited the exhibit at that time.

- **Mr. Levandowski's Involvement in Fuji (¶¶ 11-13; Sur-reply at 1:13-14, 2:19-21, 3:6-7, 3:12-13).** These paragraphs attempt to downplay Anthony Levandowski's involvement with the Fuji design, something Defendants already tried to do in their Opposition. If Uber believed that Mr. Boehmke's testimony could have shed light on Mr. Levandowski's involvement in the Fuji development, Uber should have the testimony in its opposition so that Waymo would have had an opportunity to respond.

- ███ **"Dual Stack" (¶¶ 14-17; Sur-reply at 3:8-10).** These paragraphs attempt to compare Mr. Boehmke's work on a ███ "Dual Stack" device to the Fuji device. Specifically, Mr. Boehmke writes that his earlier beam-spacing work on the ███ device was similar to his later work on the Fuji. Again, it was Defendants to make their case for independent development with his original declaration. Instead, the new declaration includes brand new analysis and arguments based on exhibits that were attached to the original . For example, Mr. Boehmke provides a much more detailed

1  explanation of the ▮▮▮ "Dual Stack" design than he presented in his original
2  declaration. *Compare* Boehmke Supp. Decl. ¶¶ 16-17 *with* Boehmke Supp. Decl. ¶ 9.
3  These details should have been included in Mr. Boehmke's original declaration.

C.  **Supplemental Declaration of James Haslim**

- **The Spider Device Defendants Omitted from Their Opposition (¶¶ 2-10, 20-23; Sur-reply at 7:1-6 and n.10).** Uber chose not to discuss Spider in connection with its opposition papers. *See generally* Haslim Orig. Decl. (Dkt. No. 174-1) (discussing only the Fuji device). Rather, as the Court already observed:

> I am concerned from the narrow way in which you have presented your opposition that you are focusing on two things -- Fuji and the original Velodyne -- and you are ignoring all of the other work, and you never mention what Mr. Levandowski did. You always talk about the professor, but you never say what he was working on. Well, why did you hire that guy for 680 million if he wasn't doing anything? So I wonder, what was he working on? It does leave the impression that you have cleverly written around the problem of what was Levandowski working on all this time even if it didn't turn into a prototype. That's a fair question and they're entitled to an answer on that.

4/12 Hr'g Tr. at 90. Consistent with Defendants' approach, Mr. Haslim's original declaration discussed only his development work beginning only in October 2016. Only now does his supplemental declaration Mr. Haslim provides a detailed discussion of the Spider LiDAR device that he worked on for months earlier, including technical drawings, photographs, and an explanation of the development timeline. Haslim Supp. Decl. (Dkt. No. 297-1) ¶¶ 2-10. Uber should not be permitted present new evidence concerning Spider's design and operation for the first time with its Sur-reply having omitted and ignored the existence of the device in its Opposition.

- ▮▮▮▮▮▮▮▮▮▮▮▮▮ **(¶¶ 12-14; NOT CITED in Sur-reply).** These paragraphs discuss Uber's purported efforts to place multiple laser diodes on a single curved printed circuit board, and the ▮▮▮▮▮▮▮▮▮▮ in the Fuji device. The discussion includes new analysis and details that were not provided as part of Mr. Haslim's original

declaration, despite that fact that he provided testimony on each of these topics in that declaration.  *Compare* Haslim Orig. Decl. ¶¶ 11, 14 *with* Haslim Supp. Decl. ¶¶ 12-14. Again, Uber knew that these issues were directly relevant at the time it filed its Opposition and should have provided its full analysis at that time.

- **Beam Spacing in Fuji (¶¶ 16-19, Sur-reply at 3:10-12).**  These paragraphs discuss Uber's alleged development of the "Beam Spacing in Fuji."  Haslim Supp. Decl. ¶ 16.  Mr. Haslim addressed this same issue in his original declaration, in a single paragraph, without any evidentiary support.  Haslim Orig. Decl. ¶ 18.  Mr. Haslim's supplemental declaration goes much further and includes a discussion and characterization of certain beam angle data that Mr. Haslim allegedly received from Mr. Boehmke.  Haslim Supp. Decl. ¶¶ 16-19.[4]  But having failed to do this with its Opposition, Uber may not now provide a detailed development story based on the same information, and on the same issue, as it had and addressed in its Opposition.[5]

DATED:  May 1, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By     */s/Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC

---

[4] Like Mr. Boehmke, Mr. Haslim focuses on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, which are different than the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

[5] *Cybertek Comp. Prods. v. Whitfield,* 203 U.S.P.Q. 1020, 1977 WL 22730 at *5 (Cal. Sup. Nov. 31, 1977) ("The Court also has considered the well recognized principle that where a defendant in a trade secret case claims independent development, that the burden then shifts to the defendant and places upon the defendant a heavy burden of persuasion to show that the production was a result of independent development and not from the use of information confidentially secured during the prior employment.").