**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
RUDY Y. KIM (CA SBN 199426)
RKim@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone:    202.237.2727
Facsimile:    202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>        Defendants. | Case No.     3:17-cv-00939-WHA<br><br>**DEFENDANTS' RESPONSE TO WAYMO'S SUPPLEMENTAL BRIEF REGARDING HASLIM TESTIMONY**<br><br>Date:    May 3, 2017<br>Time:   7:30 a.m.<br>Ctrm:   8, 19th Floor<br>Judge:  The Honorable William Alsup<br><br>Trial Date: October 2, 2017 |

**UNREDACTED VERSION OF DOCUMENT SUBMITTED UNDER SEAL**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## I. WAYMO'S SUPPLEMENTAL BRIEF SHOULD BE STRICKEN

The Court invited Waymo to submit excerpts from the further deposition of Uber engineer James Haslim; instead, Waymo submitted a 15-page substantive brief, misrepresenting Mr. Haslim's testimony, raising new issues, and rehashing Waymo's old arguments. Waymo's supplemental brief should be stricken in its entirety, except for the quotes and citations to Mr. Haslim's testimony.

At the hearing on May 3, 2017, Defendants volunteered to make Mr. Haslim available for additional deposition time. The Court gave Waymo four additional hours to depose Mr. Haslim and permitted Waymo to submit any "home run" testimony from Mr. Haslim by May 8 (Hearing Tr., May 3, 2017 at 1pm, p. 77):

> MR. JAFFE: So, your Honor, we will take the deposition.
>
> THE COURT: All right. Let's do it tomorrow morning, 9:00 a.m. And let's say you've got four hours max. And then you – if you hit my [sic] home runs in there, you have submit it by Monday. Because I'm going to try to get an order out next week, so submit it by Monday.

On May 4, 2017, Waymo deposed Mr. Haslim for 5.5 additional hours on the record.

The Court did not authorize Waymo to file an additional substantive brief, yet that is exactly what Waymo has done. Even if Waymo's submission had just included quotes and citations to Mr. Haslim's testimony, it would have exceeded the Court's authorization, as there was no home-run testimony or finding from Mr. Haslim's deposition. But Waymo's May 8 supplemental brief goes far beyond including just relevant excerpts from Mr. Haslim's testimony—it contains 15 pages of technical arguments re-treading Waymo's various trade secret theories. It is prejudicial and unfair for Waymo to grant itself additional substantive briefing when the Court asked only for "home run" deposition testimony. Waymo's brief should be stricken.

Alternatively, if the Court is not inclined to strike Waymo's brief, Defendants respectfully request permission to respond to Waymo's improper arguments. Below is Defendants' proposed response. At minimum, Defendants respectfully request that the Court accept, for the sake of completeness, Defendants' counter-designations of relevant testimony in the boxes below, so that

1  the Court may consider this testimony alongside the testimony identified by Waymo.

**II.    DEFENDANTS' RESPONSE TO WAYMO'S SUPPLEMENTAL BRIEF**

Waymo misstates Mr. Haslim's May 4 deposition testimony[1] on the alleged trade secrets and Anthony Levandowski's past and current role with respect to Defendants' LiDAR. The "rule of completeness" requires that Mr. Haslim's full relevant testimony on these issues, provided below, be considered.[2]

   **A.    Mr. Haslim's Testimony[3] Confirms That Fuji Does Not Use ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As Defined by Waymo's Own Expert**

Waymo claims Mr. Haslim confirmed that the "▮▮▮▮▮▮" between Fuji's diodes ▮▮▮▮▮▮▮▮▮" (Br. 4-5), but omits his testimony that the ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as defined by Waymo's own expert, Gregory Kintz.[4] Waymo misleadingly quotes Mr. Haslim's testimony concerning the ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ (Br. at 5 (quoting Haslim testimony o▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, but that is ***not*** how Mr. Kintz defines ▮▮▮▮▮▮▮▮▮ n Waymo's alleged trade secret. At his deposition (quoted below), Mr. Kintz specifically defined the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ When Mr. Haslim applied Mr. Kintz's definition of the ▮▮▮▮▮▮▮▮ between diodes, he confirmed that Fuji's diodes do no▮▮▮

---

[1] Excerpts to the Haslim transcript are attached as Yang Ex. 1, and a full transcript as Yang Ex. 6.
[2] Rule 106 of the Federal Rules of Evidence states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." *See also In re Chase Bank USA, N.A. CHECK LOAN Contract Litigation*, 274 F.R.D. 286, 288 fn. 1 (N.D. Cal May 13, 2011) (granting leave to file supplemental declaration attaching additional deposition transcript excerpts that "provide context for the excerpts on which plaintiffs rely").
[3] While Waymo argues that Mr. Haslim had private conferences with counsel, Mr. Haslim confirmed on the record that he and counsel did not discuss the subject matter of his testimony or how he should testify, and only discussed procedural issues—specifically, how much time was left on the record and the expected length of the redirect, but not what the redirect questions were or the substance of the redirect. (Haslim Tr. 143:25-144:3, 145:6-8, 146:1-147:2.)
[4] Mr. Kintz also compared the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Yang Ex. 2, Kintz Tr. 54:1-12, 89:17-90:6.) Mr. Haslim confirmed that looking at ▮▮▮▮▮ Fuji diodes do not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Haslim Tr. 186:14-187

| Mr. Kintz's April 26 Deposition | Mr. Haslim's May 4 Deposition |
|---|---|
| Q By ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is that correct?<br>A No. I was computing the – ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br>Q Using ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br>A Yes.<br>(Yang Ex 2, Kintz Tr. at 50:16-21.)<br><br>Q Okay. And in order to calculate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br>(Yang Ex. 2, Kintz Tr. at 83:2-9.) | Q. Could you describe generally how you calculated that or determined that?<br>A. Yeah. So ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I don't know if you need any more --<br>Q. Is there a name for that equation that you just described?<br>A ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or -- yeah.<br>(Haslim Tr. at 181:5-16.)<br><br>Q. Same question for the distance between diodes. Is that distance ▮▮▮▮▮▮▮▮<br>A. No. The linear distance is not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br>(Haslim Tr. at 187:2-9; see Yang Ex. 4, Exhibit 1060 to Haslim Dep.)<br><br>Does the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br>THE WITNESS: There is a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Tr. at 192:2-11; see Yang Ex. 4, Exhibit 1060 to Haslim Dep.) |

**B.     Mr. Haslim Confirmed That Mr. Boehmke's Custom Beam Spacing for Fuji Determined the Positioning of Fuji's Laser Diodes**

Waymo argues that Mr. Haslim's testimony revealed a "gap" between Mr. Boehmke's custom beam spacing for Fuji ▮▮▮▮▮▮▮▮▮▮▮▮ and the ▮▮▮▮▮▮▮▮▮▮ of the

---

[5] Inexplicably, Waymo argues that Mr. Haslim explained the "correct way" to determine ▮▮▮▮▮▮ Br. at 5), but it is not Mr. Haslim's role to define ▮▮▮▮▮▮▮▮▮▮ in Waymo's own ▮▮▮▮ ade secret, particularly given that Mr. Haslim has no access to Waymo's alleged trade secret descriptions (which is marked Waymo AEO).

1  laser diodes on the ▮▮▮▮▮▮ (Br. at 6-7). However, Waymo omits Mr. Haslim's testimony

2  confirming that Mr. Boehmke's custom beam spacing drove the placement of Fuji's laser diodes.

| **Mr. Haslim's May 4 Deposition** |
|---|
| Q. And you were asked about whether there was any evidence that the information you received from Scott Boehmke referred to in this paragraph was actually used in Fuji, and you referred to CAD files. What did you -- what CAD files are you referring to?<br>THE WITNESS: I was referring --<br>THE WITNESS: I was referring to mechanical CAD files in the SolidWorks software created by Gaetan that have the angles specified by Scott Boehmke that end up terminating in a set of points for each laser diode emitting point. He then also included a CAD model of the laser board outline that he developed that also had those same emitting points on there. And then, finally, you can see the theta angle matches the prescribed angles that we got from Scott.<br>(Haslim Tr. 198:23-199:16.)<br><br>Q. Can you explain step by step the process from going from the angles that you received from Scott --<br>A. Okay.<br>Q. -- to what ultimately ended up being the diode placement angles reflected in Exhibit B of your original declaration and marked as Exhibit 155 for your deposition?<br>THE WITNESS: My understanding of the process that led to the coordinates we have in Exhibit 155, starting with angles that Scott Boehmke provided, was that Gaetan designed a lens in Zemax. We had decided on 150 millimeter focal length, chosen material for the lens. From the lens optimization provided by the Zemax software, we had the focal length behind the lens to the beginning of a focal surface. And he had a radius of curvature for the focal surface. From that information in Zemax, you can take that into SolidWorks software, model up a curved surface with the same radius of curvature as the focal surface defined by Zemax. That could be -- he modeled that at a location behind the lens with a consistent focal length developed in Zemax. He then, as I understand it, created lines or rays in the CAD geometry that reflected the vertical angles specified by Scott Boehmke, one by one, individually, for the ▮ different beam angles for the ▮▮▮▮ boards in the mid-range cavity. He extended those lines or rays until it intersected this curved focal surface. The point of intersection defined the location for the laser diodes emitting surface. He then put that into his model, modeled a PCB behind that.<br>(Haslim Tr. 199:18-201:4.) |

### C. Mr. Haslim's Lack of Knowledge About Mr. Boehmke's Pre-Ottomotto Documents Does Not Discredit Mr. Boehmke's Independent Development Work

In an effort to undermine Mr. Boehmke's independent development work that led to Fuji, Waymo points to Mr. Haslim's lack of knowledge about Uber's "Plan B" design mentioned in a May 2016 document created by Mr. Boehmke. Mr. Haslim cannot be expected to testify about Mr. Boehmke's document from May 2016, months before Mr. Haslim joined Uber as part of Uber's acquisition of Ottomotto in August 2016. Mr. Boehmke explained at his deposition that

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Uber's Plan B design, referenced in his May 2016 "LiDAR Thoughts" document, became Fuji[6]:

| Mr. Haslim's May 4 Deposition | Mr. Boehmke's Testimony |
|---|---|
| Q. I've marked as Exhibit 157 a document with the slip sheet labeled "Exhibit H." And then the document underlying that says, "LiDAR Thoughts." Is this a document that you were referring to before that Mr. Levandowski, Anthony Levandowski that is, called you about and discussed?<br>THE WITNESS: No, this is not, to my recollection, the same document. There does appear to be some features in here, but for reasons I don't understand, there seems to be pages I'm not familiar with.<br>(Haslim Tr. at 138:14-24.)<br><br>Q. And, actually, before we get there, going back to the first page, it's dated May 16th, 2016. You worked at Otto at that time; right?<br>A. I believe I did, yes.<br>Q. And you had had conversations with Mr. Boehmke by that time?<br>A. Probably not.<br>(Haslim Tr. at 139:6-12.) | Q Plan B was -- did it have a name other than plan B?<br>A It turned into Fuji.<br>Q And then what was plan C?<br>A Plan C was the Spider.<br>(Yang Ex. 3, Boehmke Tr. at 58:18-22) |

### D. Mr. Haslim Confirmed His Independent Development of Fuji's ▓▓▓ Transmit Block Configuration

Waymo claims that Mr. Haslim "discredits" Defendants' independent development of Fuji's ▓▓▓ configuration (Br. at 8-9), but Mr. Haslim confirmed that he came up with the ▓▓▓ transmit block configuration:

| Mr. Haslim's May 4 Deposition |
|---|
| Q. Who was involved in coming up with ▓▓▓<br>A: In coming up with ▓▓▓? I would say that was primarily me and the electrical engineer, Florin.<br>(Haslim Tr. 72:15-20.)<br><br>Q: Where did the idea to have ▓▓▓ come from?<br>A: Florin and I both worked at Velodyne. We've seen multiple laser boards used in LiDAR. The need to ▓▓▓ developed quickly between Florin and I. Looking at the size of the circuit, knowing when Scott Boehmke defines a certain ▓▓▓ when Gaetan has designed a lens that has a 150 millimeter focal length, it becomes ▓▓▓ hat the ▓▓▓ It was obvious to me that wasn't going to work and we would have to ▓▓▓. Later we went back and looked closer, |

---

[6] Waymo argues that Mr. Boehmke is silent on the authorship of "LiDAR Thoughts" document (Br. at 13), but Mr. Boehmke confirmed that he "documented my thoughts for the ▓▓▓ dual-stack ('Plan A') and the Fuji device ('Plan B') in the May 2016 'LiDAR Thoughts.'" (Supp. Boehmke ¶ 15; see Boehmke Decl. Ex. H at 1 (Boehmke name and email on title page).)

> and I realized, wait a minute ██████████████ So we can't put circuits on █
> ████████████████████████████████████████████████████████████ Furthermo███
> ████████████████████████████████████████████████████████████ the receiver that
> were themselves ████████. Those were high voltage components. They needed
> additional space between them as well. So it seemed pretty clear at the time
> ████████ was not going to work, so we said ████████? Florin thought he
> ████████ So that ended up with ██████████. We already had decided two cavities to
> ████████ 64 channels, so that ended up with ████████ in the sensor.
> (Haslim Tr. 77:15-78:21.)

Instead of addressing this evidence, Waymo mischaracterizes Mr. Haslim's testimony and the demonstrative evidence in his declaration.[7] Waymo touts Mr. Haslim's statement that his October 28, 2016 email was "not indicative" of a ████ design, but Mr. Haslim has always stated that the email showed a ████ per cavity design. (Br. at 8; Haslim Decl. ¶ 11.) Waymo claims Mr. Haslim concedes there is "no documentary evidence" of the development timeline, but Mr. Haslim clarified that there were documents showing the beam angles, lens designs, and circuit design that led to the ████ configuration:

**Mr. Haslim's May 4 Deposition**
> Q. Okay. So there are no -- there's no documentary evidence to evidence -- to support what you just said?
> A. Not quite. We have documents showing and indicating to us what the vertical angles were to be for the sensor as specified by Scott Boehmke. We have a lens design that's documented from Gaetan. We have the original circuit Florin had developed for testing out lasers. At that point, the documentation stopped. And we don't have documents for discussions describing how █
> ████████████████████████████████████████████████████
> (Haslim Tr. 78:25-79:11.)

Finally, Waymo misstates Mr. Haslim's testimony regarding Anthony Levandowski's lack of involvement in the ████ configuration:

| Waymo's Supplemental Brief (Br. at 8-9) | Mr. Haslim's May 4 Deposition |
|---|---|
| Mr. Haslim explained that it was former Waymo engineer Gaetan Pennecot who primarily was responsible for the ████████████████ (*Id.* at 262:3- | Q. And so Mr. Pennec█ actually came up with ████████ based o█ ████████ at right? <br> A. No, I don't think so. <br> (. . . .) |

---

[7] Waymo attacks an annotated table included in Mr. Haslim's declaration that demonstrates how the custom beam angles that were independently derived and provided by Mr. Boehmke in November 2016 are actually distributed across the ████████ (Figure 8.A) and the ████ Figure 8.B) in the Fuji design. (Br. at 8-9) ████████ declaration clearly d███s ████otation in his declaration, and Mr. Haslim never identifies the table as contemporaneous evidence of th████ ██onfiguration. (Supp. Haslim ¶ 17.) While Waymo makes much of the fact that this tab██ ██nitially prepared by Uber's counsel, Mr. Haslim testified that he checked to confirm the accuracy of these annotations before he signed his declaration. (Haslim Tr. 234:1-235:16.)

| | |
|---|---|
| | Q. Who told Mr. Pennecot to use [REDACTED]? <br> A. I told Mr. Pennecot to use [REDACTED] in the optical cavity. <br> (Haslim Tr. 262:14-263:11.) |
| And Mr. Haslim admitted that he did not know whether Mr. Pennecot discussed the design with Anthony Levandowski. (*Id.* at 74:1-10.) | Q. So you're not saying that Mr. Levandowski has never had discussions or input into the idea to use [REDACTED]; right? <br> THE WITNESS: What I am saying is that Anthony never had input into my decision with my electrical engineer to put [REDACTED] <br> (Haslim Tr. 74:11-17.) |

### E. Mr. Haslim's [REDACTED] Testimony Does Not Discredit Mr. Gruver's Testimony

Waymo claims that Mr. Haslim discredited Mr. Gruver's testimony that [REDACTED] used [REDACTED]. (Br. at 9-10; Yang Ex. 5, Gruver Tr. 51:4-52:1.) Mr. Haslim was [REDACTED], prior to the launch of the [REDACTED]. (Haslim Decl. ¶ 3.) Nothing in his testimony discredits Mr. Gruver's testimony.

### F. Mr. Haslim Confirmed That Fuji Does Not Use [REDACTED]

Waymo misstates Mr. Haslim's testimony regarding the [REDACTED] on the Fuji PCBs (Br. at 10). Mr. Haslim confirmed again that the [REDACTED]:

| Mr. Haslim's May 4 Deposition |
|---|
| Q. So the original idea was [REDACTED]? <br> A. No. <br> (Haslim Tr. 116:11-13.) <br><br> Q. Are [REDACTED] on Fuji boards? <br> THE WITNESS: No. As I understand it, the [REDACTED]. <br> BY MR. KIM: <br> Q. Do you have an understanding as to why there are [REDACTED] listed there? <br> A. Yeah. As I was discussing earlier, my understanding is these coordinates referencing the [REDACTED] were generated early in the development of Fuji when [REDACTED]. More specifically, these coordinates were given to the electrical engineer before the electrical engineer had laid out the circuits onto the board and added the fiducial mark onto the board. <br> Q. Are there any plans at Uber to use [REDACTED] on any transmit boards for Fuji? <br> A. Not that I'm aware of. <br> (Haslim Tr. 195:21-196:16.) |

### G.  Mr. Haslim's Testimony Confirms That ▓▓▓▓▓▓▓▓▓▓▓ Is a Publicly Known Technique, Not a Waymo Trade Secret

Waymo's claim that Mr. Levandowski communicated a ▓▓▓▓▓▓▓▓▓▓▓ to Mr. Haslim that "bears a striking resemblance to Waymo's trade secret" (Br. 11-12) ignores Mr. Haslim's testimony revealing that this design was "*publicly-available information*":

| Mr. Haslim's May 4 Deposition |
|---|
| Q. When you were asked whether or not he gave you any confidential information, you said you thought it was general information. What did you mean by that?<br>A. I believe information Anthony provided regarding a ▓▓▓▓▓▓▓▓▓▓▓ was information that I've seen other places on the Internet as white papers, as publicly-available information in terms of architect or configuration for a laser.<br>(Haslim Tr. 222:6-15.) |

The circuit Mr. Haslim sketched at his deposition would bear a "striking resemblance" to any ▓▓▓▓▓▓▓▓▓▓▓ because the basic technique is standard and well-known in the fiber laser field. (Supp. Haslim Decl. ¶ 7; Supp. Lebby Decl. ¶ 42-44.) In his declaration, Mr. Haslim cited a 2011 published article that discusses ▓▓▓▓▓▓▓▓▓▓▓ and includes a diagram of the ▓▓▓▓▓▓▓▓▓▓▓.[8] Below is a comparison of Mr. Haslim's sketch with: (1) Waymo's alleged trade secret (left) and (2) ▓▓▓▓▓▓▓▓▓▓▓ from the 2011 published article (right). The components of the ▓▓▓▓▓▓▓▓▓▓▓ in Mr. Haslim's sketch are present in the public diagram, including the ▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ In fact, Mr. Haslim's sketch more closely resembles the public diagram than it does Waymo's alleged trade secret, since the sketch and the public diagram each contain only ▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ In any event, the basic technology of ▓▓▓▓▓▓▓▓▓▓▓ is not proprietary to Waymo.

---

[8] *See* Grzegorz Sobon et al., *Controlling the 1 μm spontaneous emission in Er/Yb co-doped fiber amplifiers*, 19 Optics Express 19106 (2011) (Supp. Haslim ¶ 7 fn. 1) (publicly available at https://www.osapublishing.org/oe/fulltext.cfm?uri=oe-19-20-19104&id=222547.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| Mr. Haslim's Sketch | |
|---|---|
| **Waymo's Alleged Trade Secret** | **2011 Public Diagram** |

### H. Mr. Levandowski Did Not Have Substantive Technical Input to Fuji

Waymo touts Mr. Levandowski's personal involvement in Defendants' LiDAR in terms of managerial activities (e.g., staff meetings), but omits Mr. Haslim's testimony confirming the limited nature of Mr. Levandowski's input on technical issues.[9]

| Mr. Haslim's May 4 Deposition |
|---|
| Q. Did Mr. Levandowski have any technical input for the Fuji design?<br>A. To my recollection, the only potentially technical input Anthony Levandowski had on the Fuji design were telling us to make it as good as the Velodyne or better. To under-regard any concerns given to us from people in Pittsburgh regarding size and weight, that that should not be a prioritized requirement.<br>(Haslim Tr. 221:15-24.) |

Waymo challenges Mr. Haslim's "investigation" of Mr. Levandowski's involvement (Br. at 13), but Mr. Haslim, a non-30(b)(6) witness, properly testified based on his personal knowledge.[10]

### I. Mr. Haslim Had Limited Knowledge About Anthony Levandowski's Laptop

Waymo misrepresents Mr. Haslim's testimony regarding Mr. Levandowski's laptop (Br. 13-14). Contrary to Waymo's suggestion, Mr. Haslim testified that he did not know if

---

[9] Haslim Tr. at 133:2-6.
[10] Defendants described Mr. Levandowki's LiDAR-related work in their Interrogatory Response No. 3 (ECF No. 264-4 at 3-5.)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Mr. Levandowksi brought his personal laptop to work:

| Mr. Haslim's May 4 Deposition |
|---|
| Q. How often did Mr. Levandowski bring his personal laptop to work with him?<br>THE WITNESS: I couldn't possibly know.<br>Q. Every day?<br>THE WITNESS: The reason I couldn't possibly know is I don't know whether the laptop he may have carried was his personal laptop or the work laptop.<br>(Haslim Tr. 41:1-10.)<br><br>Q. You saw him at work with the personal laptop; right?<br>A. I'm sure I've seen him at work with *a laptop*.<br>(Haslim Tr. 41:19-21 (emphasis added.) |

### J.   Anthony Levandowski Has Been Recused from All LiDAR Development

Waymo claims that Mr. Levandowski's recusal is ineffective because Mr. Haslim was unaware of a "formal company policy" restricting Mr. Levandowki's work. (Br. at 14.) But Mr. Haslim, a key engineer in LiDAR development, confirmed that he "received an email" with instructions (Haslim Tr. 54:18-21):

| Mr. Haslim's May 4 Deposition |
|---|
| [REDACTED] |
| (Haslim Tr. 55:6-12.) |

### III.   CONCLUSION[11]

The Court invited Waymo to submit any "home run" testimony it obtained from Mr. Haslim. In truth, there was none. Instead, Waymo presents a distorted, incomplete version of what Mr. Haslim said. And takes liberty with the Court's limited invitation by submitting a substantive brief consisting of 15 pages of technical arguments, when no such leave was given. Accordingly, Waymo's supplemental brief should be stricken.

Alternatively, Defendants' response to Waymo's misrepresentations should be accepted, and at minimum, Defendants' counter-designations of relevant testimony should be considered to complete the record.

---

[11] Waymo also makes irrelevant arguments relating to discrepancies between Mr. Haslim's identification of LiDAR-related employees and suppliers with the list submitted to the Court by Defendants on April 5, 2017. (Br. 14-15.) At the Court's request, Defendants will make an additional submission providing reasonable explanations for these discrepancies.

Dated: May 9, 2017                           MORRISON & FOERSTER LLP

By: */s/Michael A. Jacobs*
     MICHAEL A. JACOBS

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC