# EXHIBIT 10
# FILED UNDER SEAL

EXECUTION

## INDEMNIFICATION AGREEMENT

THIS INDEMNIFICATION AGREEMENT (as may be amended from time to time, this "**Agreement**") is made and entered into as of April 11, 2016 (the "**Agreement Date**"), by and among: (i) Apparate International C.V., a limited partnership (commanditaire vennootschap) organized under the laws of the Netherlands ("**Purchaser**"), (ii) Ottomotto LLC, a Delaware limited liability company (the "**Company**"), (iii) Otto Trucking LLC, a Delaware limited liability company, Lior Ron, as the Indemnified Persons' Representative, (iv) each of the individuals signatory hereto (together with any additional Diligenced Employees who become party to this Agreement pursuant to Section 3.13 (if any), collectively, the "**Diligenced Employees**") and (v) solely with respect to Section 3.14, Uber Technologies, Inc. a Delaware corporation ("**Parent**").  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Merger Agreement (as defined below).

WHEREAS, Parent, Purchaser, Zing Merger Sub 1, LLC, a Delaware limited liability company ("**Merger Sub**"), and the Company are entering into an Agreement and Plan of Merger of even date herewith (as the same may be amended or supplemented, the "**Merger Agreement**") providing for the merger of Merger Sub with and into the Company;

WHEREAS, Purchaser is agreeing to indemnify each member of the Company Group and each Diligenced Employee (each, an "**Indemnified Person**," and, collectively, the "**Indemnified Persons**") in the event of certain claims by Former Employers pursuant to the terms and subject to the conditions of this Agreement;

WHEREAS, prior to the execution of this Agreement, and as a material inducement to Purchaser's willingness to enter into this Agreement, each Diligenced Employee as of the Agreement Date has (i) initiated or completed a due diligence review by the Outside Expert to determine whether such Diligenced Employee has committed any Pre-Signing Bad Acts and (ii) certified to the Company (and in the case of the Founders certified to the Company and to Parent in a mutually agreeable form) as to the good faith, complete and truthful cooperation with such due diligence review by such Diligenced Employee and to the good faith, complete and truthful response by such Diligenced Employee to all inquiries of the Outside Expert;



WHEREAS

WHEREAS

WHEREAS

WHEREAS, the Parties agree that any claim that has arisen out of or resulted from any Pre-Signing Bad Acts committed by or on behalf of any member of the Company Group by a Diligenced

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          BLUE = CONFIDENTIAL; YELLOW = AEO

Employee and/or committed by any Diligenced Employee and that reasonably arises or results from any facts, circumstances, activities or events contained or disclosed on the face of such final report shall, subject to Section 2(b)(ii), constitute an Indemnifiable Claim in accordance with, and subject to, the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements contained herein, and intending to be legally bound hereby, the parties hereby agree as follows:

SECTION 1.   DEFINITIONS.

As used in this Agreement, the following terms shall have the meanings specified below:

"409A Valuation Report" means the formal report issued by a third-party valuation firm setting forth the valuation of Parent Shares pursuant to Section 409A of the Internal Revenue Code of 1986, as amended, which valuation of such Parent Shares shall be approved by Parent's board of directors (or a compensation committee thereof).

"Bad Acts" shall mean (a) fraud committed by or on behalf of any member of the Company Group and/or committed by any Employee, (b) willful, intentional or deliberate conduct by an Employee or any member of the Company Group that constitutes or directly leads or contributes to the infringement (direct or indirect) or misappropriation by an Employee or any member of the Company Group of any patents, copyrights, trademarks or trade secrets of such Employee's Former Employer, including, without limitation, taking, removing and/or copying software, product plans, or invention disclosures, in electronic or tangible form that are owned by such Employee's Former Employer, (c) willful and/or intentional breach by any member of the Company Group or any Employee of any fiduciary duty or duty of loyalty to such Former Employer and/or (d) willful and/or intentional breach by any member of the Company Group or any Employee of any lawful and enforceable non-solicitation, non-competition, confidentiality or other similar restrictive covenant or agreement between any Employee and such Employee's Former Employer.

"Cause" shall mean, with respect to any particular Diligenced Employee, the termination of such Diligenced Employee's employment by Parent or any Affiliate of Parent (or a successor, if appropriate) based on one or more of the following events having occurred during such person's employment with Parent or any Affiliate of Parent (or a successor, if appropriate), which with respect to clauses (A), (C), (D) and (F) below, if curable, such Diligenced Employee has not cured within twenty (20) days after prior written notice has been given to him/her by Parent (or a successor, if appropriate) specifying with reasonable particularity such occurrence: (A) such Diligenced Employee's material neglect of his/her duties and responsibilities to Parent (or a successor, if appropriate) and/or its Affiliates; (B) such Diligenced Employee's (1) commission of any act of fraud, theft or embezzlement, or (2) willful misconduct or any other unlawful act that materially harms Parent and/or any of its Affiliates; (C) (1) such Diligenced Employee's material breach of any of his/her obligations under any written agreement with Parent (or a successor, if appropriate), including without limitation, such Diligenced Employee's employment contract with Parent or the Confidential Information and Invention Assignment Agreement between such Diligenced Employee and Parent, or (2) such Diligenced Employee's material breach of any statutory duty or fiduciary duty that he/she owes to Parent; (D) such Diligenced Employee's material failure to comply with Parent's written policies, directives or rules; (E) such Diligenced Employee's indictment or conviction of, or plea of "guilty" or "no contest" to, (1) a felony under the laws of the United States or any State thereof or (2) a crime of moral turpitude; or (F) such Diligenced Employee's failure to cooperate in good faith with a governmental or internal investigation of Parent, its Affiliates or

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          BLUE = CONFIDENTIAL; YELLOW = AEO

any of their respective officers or employees, if Parent has reasonably requested such Diligenced Employee's cooperation.  For the avoidance of doubt, the inclusion of the definition of "Cause" in this Agreement or in any other agreement will not, in any manner, modify the "at-will" nature of such Diligenced Employee's employment contract with Parent.

"**Company Group**" means the Company and Otto Trucking LLC, a Delaware limited liability company.

"**Employee**" means any current or former employee of the Company Group.

"**Expenses**" means (a) any expense, liability, or loss, including reasonable attorneys' fees, mediation fees, arbitration fees, expert witness fees, vendor fees, costs (such as witness fees, duplication charges, data storage fees, filing fees, travel and meals), (b) any judgments, fines, bonds, penalties, damages, awards, and amounts paid or to be paid in settlement, and (c) any interest, assessments, taxes or other charges imposed on any of the items in part (a) and (b) of this definition, in each case, that is out-of-pocket and documented; provided, that Expenses shall exclude special, consequential, indirect, exemplary or punitive damages, unless such Expenses were specifically awarded in a Final Judgment.

"**Final Judgment**" means, with respect to any matter, the final non-appealable judgment of a court of competent jurisdiction with respect to such matter (or, the final non-appealable decision of the arbitrator(s), if the Parties elect to pursue arbitration to adjudicate such matter pursuant to Section 2.2(e)).

"**Forfeiture Share Price**" means (i) if Parent Shares are publicly traded, the average of the closing sales price of such Parent Shares as quoted on the national stock exchange on which Parent Shares are publicly traded for the twenty (20) consecutive trading days ending with the trading day that is one (1) trading day immediately preceding the date of the resolution of the relevant Forfeiture Claim, or (B) if Parent Shares are not publicly traded, the price per Parent Share as determined by Parent's most recent 409A Valuation Report prior to the date of the resolution of the relevant Forfeiture Claim.

"**Former Employer**" means, with respect to an Employee, any Person (together with such Person's Affiliates) that such Employee has previously either provided services to as an employee or a non-employee service provider.

"**Founders**" means, collectively, Anthony Levandowski and Lior Ron (and each, individually, a "**Founder**").

"**Outside Expert**" means Stroz Friedberg, LLC or such other vendor as mutually agreed to by the Company and Parent in writing.

"**Post-Signing Specified Bad Acts**" shall have the meaning set forth on Exhibit A attached hereto.

"**Pre-Signing Bad Acts**" means any Bad Act committed prior to the Agreement Date.



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY            BLUE = CONFIDENTIAL; YELLOW = AEO

**SECTION 2.** **INDEMNIFICATION**

     **2.1**    **Indemnification.**

     **(a)**    Purchaser will indemnify and hold harmless each Diligenced Employee and the Company Group, to the maximum extent permitted by applicable Law (subject to the limitations and exclusions set forth herein), from and against any and all Expenses incurred by such Diligenced Employee or any member of the Company Group, as applicable, arising out of any claim brought or threatened in writing by any Former Employer of such Diligenced Employee against any member of the Company Group or such Diligenced Employee, as applicable, arising out of or alleged to arise out of: (i) the infringement (direct or indirect) or misappropriation by such Diligenced Employee or any member of the Company Group of any intellectual property, including any patents, copyrights, trademarks or trade secrets, of such Diligenced Employee's Former Employer, (ii) breach by such Diligenced Employee of such Diligenced Employee's fiduciary duty or duty of loyalty to such Diligenced Employee's Former Employer, and/or (iii) breach by such Diligenced Employee of any non-solicitation, non-competition, confidentiality or other similar restrictive covenant or agreement between such Diligenced Employee and such Diligenced Employee's Former Employer (each, subject to Section 2.1(b) below, an "**Indemnified Claim**", and, collectively, the "**Indemnified Claims**"); *provided*, that notwithstanding the foregoing, if (A) the Merger Agreement is terminated in accordance with its terms prior to the Closing as a result of or by reason of a Post-Signing Specified Bad Act (that was the subject of a Former Employer Claim) being committed by or on behalf of any member of the Company Group by such Diligenced Employee and/or being committed by such Diligenced Employee (and such Post-Signing Specified Bad Act was either (x) mutually agreed to have occurred by both Purchaser and the Company or (y) determined by a Final Judgment to have occurred) or (B) following the Closing (if the Closing occurs), it is determined by a Final Judgment that a Post-Signing Specified Bad Act (that was the subject of a Former Employer Claim) was committed by such Diligenced Employee on behalf of any member of the Company Group and/or was committed by such Diligenced Employee prior to the Closing, then, in each case of clauses (A) and (B), Purchaser's indemnification obligation to such Diligenced Employee pursuant to this Agreement shall immediately become null and void and of no further force and effect and there shall be no liability on the part of Parent, Purchaser or any of their respective Affiliates to indemnify (1) such Diligenced Employee for any Indemnified Claims or (2) the Company Group for any Indemnified Claims arising out of or alleged to arise out of the actions of such Diligenced Employee.

     **(b)**    Notwithstanding anything herein to the contrary, an Indemnified Claim shall not, regardless of whether the Closing occurs, include, and none of Parent, Purchaser or any of their respective Affiliates shall have any obligation hereunder to indemnify the Company Group or any Diligenced Employee in respect of, any:

     **(i)**    claims that have been determined by a Final Judgment to arise or result from Bad Acts committed by any Employee other than a Diligenced Employee (and only to the extent that any such claim arises or results from Bad Acts committed by any Employee other than a Diligenced Employee), regardless of whether such Bad Acts were committed prior to or after the execution of the Merger Agreement; *provided*, for the avoidance of doubt, this subclause (i) shall not limit Purchaser's obligation to indemnify the Diligenced Employees and the Company Group for Indemnified Claims in accordance with Section 2.1(a);

     **(ii)**    claims that have been determined by a Final Judgment to arise or result from any Pre-Signing Bad Acts committed by or on behalf of any member of the Company Group by a Diligenced Employee and/or committed by any Diligenced Employee that reasonably arise or result from any facts, circumstances, activities or events arising prior to the date hereof that either (A) were not truthfully disclosed by the Diligenced Employees to the Outside Expert in response to relevant inquiries

4.

in connection with the due diligence performed by the Outside Expert or (B) were not contained or reflected in the due diligence materials provided by the Diligenced Employees to the Outside Expert; and

        **(iii)**    claims that have been determined by a Final Judgment to arise or result from any Post-Signing Specified Bad Acts (that was the subject of a Former Employer Claim) committed by a Diligenced Employee on behalf of any member of the Company Group and/or committed by any Diligenced Employee (the matters excluded from Indemnified Claims in the preceding subclauses (i), (ii) and (iii) collectively, the "**Excluded Claims**" and each, an "**Excluded Claim**").

**2.2**     **Indemnified Claim Procedure**.

        **(a)**    In the event that any Indemnified Person becomes aware of any actual claim, or claim threatened in writing, by any Former Employer (including any Proceeding commenced or threatened in writing to be commenced by any Former Employer) which such Indemnified Person believes is reasonably expected to result in indemnification pursuant to this Agreement (each, a "**Former Employer Claim**"), such Indemnified Person shall promptly deliver a written notice of such claim (such notice, the "**Claim Notice**") to Purchaser. The Claim Notice shall be accompanied by any documentation received by or otherwise in the possession or control of the Indemnified Person (or its Representatives) in respect of such Former Employer Claim (including the information set forth in Sections 2.2(c)(i) and 2.2(c)(ii)) and shall describe in reasonable detail (to the extent known to the Indemnified Person) and subject to a Joint Defense Agreement (as defined below) the facts, circumstances and events constituting the basis for such Former Employer Claim (including the identity and address of such Former Employer) and the amount of the damages claimed in such Former Employer Claim; *provided,* that no delay or failure on the part of an Indemnified Person in delivering a Claim Notice shall relieve Purchaser from any liability hereunder unless and to the extent Purchaser and/or its Affiliates have been actually and materially prejudiced by such delay or failure.

        **(b)**    Purchaser shall direct and control the defense or settlement of the Former Employer Claim referred to in the Claim Notice. The Indemnified Person party to such Former Employer Claim shall be given the opportunity to participate at its own cost and expense (which shall not be included in Expenses) in, but not direct or control, the defense of such Former Employer Claim. Such Indemnified Person's participation will be subject to Purchaser's right to fully direct and control such defense and Purchaser shall have the right in its sole discretion to settle any Former Employer Claim; provided that without the prior written consent of the applicable Indemnified Person (such consent not to be unreasonably withheld, conditioned or delayed), no settlement shall be agreed to by Purchaser and/or any of its Affiliates that shall (i) require an Indemnified Person to admit that such Indemnified Person breached or violated (x) any law or (y) any obligations to any Former Employer, (ii) impose on an Indemnified Person any obligation, agreement or undertaking to take or refrain from taking any future action or (iii) involves any relief against an Indemnified Person other than monetary damages that are included as Expenses hereunder. In addition, notwithstanding anything to the contrary contained herein, if the Indemnified Person is a Founder, at the time the Claim Notice is delivered, such Founder shall advise Purchaser if such Founder reasonably believes that a conflict of interest exists with respect to the defense of such Indemnified Claim between such Founder's interests and those of Purchaser, any applicable Affiliate of Purchaser or any other Indemnified Person (including the Company Group) (a "**Conflict of Interest Claim**"). Subject to the proviso in this sentence, in the event of such Conflict of Interest Claim, such Founder may, at such Founder's sole cost and expense (which shall not be included in Expenses), engage individual counsel to act on such Founder's behalf in defense of such Conflict of Interest Claim; provided, however, that if (i) such Conflict of Interest Claim arises following the termination of the Merger Agreement or (ii) if such Conflict of Interest Claim arises prior to the Closing, but the Merger Agreement is thereafter terminated, all reasonable costs and expenses incurred in connection with such representation by such counsel shall be Expenses for purposes of this Agreement.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY        BLUE = CONFIDENTIAL; YELLOW = AEO

(c)      The Indemnified Person(s) party to such Former Employer Claim (i) shall furnish Purchaser and its Representatives with such information as such Indemnified Person(s) may have with respect to such Former Employer Claim (including copies of any summons, complaints or other pleadings which may have been served on such Indemnified Person(s) and any written claim, demand, invoice, billing or other document evidencing or asserting the same), (ii) shall provide to Purchaser and its Representatives any documents or other materials in the possession or control of such Indemnified Person(s), or that come into the possession or control of such Indemnified Person(s), that may be necessary or useful to the defense of such Former Employer Claim, subject to protection of the attorney-client privilege, the attorney work product protection, confidentiality obligations owed to third parties and other applicable privileges and protections, (iii) shall make himself or herself available to Purchaser upon reasonable notice for interviews and factual investigations and to appear at Purchaser's reasonable request to give testimony (including deposition and trial testimony) with respect to the defense of such Former Employer Claim without requiring service of a subpoena or other legal process and (iv) shall otherwise reasonably cooperate with and assist Purchaser and its Representatives in the defense of such Former Employer Claim.  Additionally, the Indemnified Person(s) shall enter into a separate confidentiality, common interest or joint defense agreement with Purchaser, in a form reasonably agreed upon in good faith between the Indemnified Person(s) and Purchaser (the "**Joint Defense Agreement**"), prior to participating in the defense of any Former Employer Claim if requested by Purchaser or the Indemnified Person(s).

(d)      In the event that Purchaser believes all or a portion of a Former Employer Claim is an Excluded Claim hereunder, Purchaser shall have the right (in its sole discretion), within 60 days following the settlement or final non-appealable adjudication of such Former Employer Claim, to initiate arbitration under Section 2.2(e) with the Indemnified Person(s) party to such Former Employer Claim in order to determine whether all or a portion of such Former Employer Claim is an Excluded Claim under the terms of this Agreement.  For the avoidance of doubt, Purchaser shall advance all Expenses incurred by the Indemnified Person(s) pursuant to Section 2.3(a) through the later to occur of the final settlement or final adjudication of such Former Employer Claim, which Expenses may be subject to reimbursement pursuant to this Section 2.2(d).  Following such arbitration, if the arbitrator(s) determines in a Final Judgment that all or a portion of such Former Employer Claim is an Excluded Claim hereunder, then Purchaser shall be entitled to receive reimbursement for, and the Indemnified Person(s) party to such Former Employer Claim shall be required to pay to Purchaser, the amount of all Expenses paid or incurred by or on behalf of Purchaser and/or its Affiliates with respect to such Excluded Claim (or, if the arbitrator(s) determine in a Final Judgment that only a portion of the Former Employer Claim is an Excluded Claim, the amount of all Expenses incurred by Purchaser and/or its Affiliates with respect to that portion of such Former Employer Claim that was determined to be an Excluded Claim) (such amount, as determined by the arbitrator(s) in such arbitration, the "**Expense Reimbursement Amount**"). The obligations of the Indemnified Persons under this Section 2.2(d) are several and not joint, and each Indemnified Person party to such Former Employer Claim shall only be responsible for paying to Purchaser its pro-rata portion of the Expense Reimbursement Amount (based on the total number of Indemnified Person(s) party to such Former Employer Claim, unless otherwise determined by the arbitrator(s) in a Final Judgment) and such amount shall be paid by such Indemnified Person to Purchaser by wire transfer of immediately available funds to an account designated by Purchaser promptly, but in no event more than three (3) months, following the date of the Final Judgment referenced in the preceding sentence.  Purchaser and/or its Affiliates, as applicable, may offset on a dollar-for dollar basis any amounts that Purchaser and/or its Affiliates, as applicable, owe an Indemnified Person against any amounts that such Indemnified Person owes Purchaser hereunder other than compensation of base salary. Unless otherwise provided under applicable Law and determined by a Final Judgment, no Diligenced Employee shall be personally liable for the Company Group's or any other Diligenced Employee's portion of the Expense Reimbursement Amount.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    BLUE = CONFIDENTIAL; YELLOW = AEO

(e)     Within 60 days after the settlement or final non-appealable judgment of a Former Employer Claim, Purchaser may elect (in its sole discretion) to arbitrate (A) whether an Indemnified Claim is an Excluded Claim and/or (B) whether a Diligenced Employee is entitled to indemnification under this Agreement (subject to the terms and conditions hereof, including the proviso in Section 2.1(a) and the last sentence of Section 2.3(a)).  An Indemnified Person may elect (in its sole discretion) to arbitrate whether such Indemnified Person is entitled to the advancement of Expenses under Section 2.3(a).  In the event of any dispute between Purchaser, on the one hand, and any Indemnified Person, on the other, as to whether a Former Employer Claim is an Excluded Claim, each reference to an "Indemnified Person" who is not a Founder in the following sentences of this Section 2.2(e) shall be replaced with "Indemnified Persons' Representative" and each such Non-Founder Indemnified Person shall acknowledge and agree that the Indemnified Persons' Representative shall, pursuant to Section 3.10, direct and control such arbitration (including the right to settle such arbitration) and that the Final Judgment of such arbitration shall be conclusive and binding on such Indemnified Person.  A Founder may, but shall not be required to, agree to be represented by the Indemnified Persons' Representative at the time of the arbitration.  Any such arbitration shall be held in San Francisco, California, under the Comprehensive Arbitration Rules and Procedures of JAMS ("**JAMS**") and each of Purchaser, on the one hand, and the Indemnified Person, on the other, agree to appear at such arbitration Proceeding.  With respect to any matter submitted to arbitration, such arbitration shall be settled by an arbitration conducted by one arbitrator mutually agreeable to both Purchaser and the Indemnified Person.  In the event that, within fifteen (15) days after submission of any dispute to arbitration, Purchaser and the Indemnified Person cannot mutually agree on one arbitrator, then, within ten (10) days after the end of such fifteen (15) day period, Purchaser, on the one hand, and the Indemnified Person, on the other, shall each select one independent arbitrator.  The two arbitrators so selected shall select a third independent arbitrator.  The arbitrator(s) shall determine how all Expenses relating to the arbitration shall be paid (subject to Section 3.2), including the respective Expenses of each party, the fees of each arbitrator and the administrative fee of JAMS.  The arbitrator or arbitrators, as the case may be, shall set a limited time period that shall exceed no more than 180 days after the demand for arbitration is filed and establish procedures designed to reduce the cost and time for discovery while allowing the parties an opportunity, adequate in the sole judgment of the arbitrator or majority of the three arbitrators, as the case may be, to discover relevant information from the opposing parties about the subject matter of the dispute.  The arbitrator, or a majority of the three arbitrators, as the case may be, shall rule upon motions to compel or limit discovery and shall have the authority to impose sanctions, including attorneys' fees and costs, to the same extent as a competent court of law or equity, should the arbitrators or a majority of the three arbitrators, as the case may be, determine that discovery was sought without substantial justification or that discovery was refused or objected to without substantial justification. The decision of the arbitrator or a majority of the three arbitrators, as the case may be, as to the validity and amount of any claim submitted to arbitration shall, subject to any appeal permitted under the Federal Arbitration Act ("**FAA**"), be final, binding, and conclusive upon the Parties to this Agreement.  Such decision shall be written and shall be supported by written findings of fact and conclusions which shall set forth the award, judgment, decree or order awarded by the arbitrator(s).  Within thirty (30) days of a decision of the arbitrator(s) requiring payment by any Party to another Party, such Party shall make such payment to such other Party. Judgment upon any award rendered by the arbitrator(s) may be entered in any court having jurisdiction.

(f)     In any Proceeding between Purchaser, on the one hand, and any member of the Company Group and/or any Diligenced Employee, on the other hand, to determine whether a Former Employer Claim is an Excluded Claim or whether an Indemnified Person is entitled to indemnification in respect of a Former Employer Claim under the terms of this Agreement, Purchaser shall have the burden of proving, as applicable, that a Former Employer Claim is an Excluded Claim under the terms of this Agreement or that an Indemnified Person is not entitled to indemnification under the terms of this Agreement in respect of a Former Employer Claim.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    BLUE = CONFIDENTIAL; YELLOW = AEO

2.3     **Expenses.**

(a)     Upon receipt of a written request for the advancement of Expenses incurred by an Indemnified Person arising out of any Indemnified Claim and reasonable documentation evidencing such Expenses, Purchaser shall pay, or cause to be paid, to such Indemnified Person the amount of such Expenses ▮▮▮▮▮▮▮▮▮▮▮▮ of such request.   If Purchaser denies any such request or otherwise fails to advance such Expenses to such Indemnified Person ▮▮▮▮▮▮▮▮▮▮▮▮▮ Day period, such Indemnified Person shall have the right to enforce its right to receive such Expenses by commencing arbitration under Section 2.2(e).   In the event of any such arbitration described in this Section 2.3(a), Purchaser shall not be permitted to arbitrate in such Proceeding whether the Indemnified Claim giving rise to such Expenses is an Excluded Claim until such time as such Indemnified Claim has been settled or subject to a final, non-appealable judgment in accordance with this Agreement.

(b)     In the event that Purchaser or any of its Affiliates advance any Expenses to an Indemnified Person in respect of a Former Employer Claim in accordance with Section 2.3(a) and thereafter it is determined in a Final Judgment that such Indemnified Person was not entitled to indemnification for such Former Employer Claim because (i) it is an Excluded Claim under the terms of this Agreement, or (ii) such indemnification is determined to be null and void pursuant to the proviso in Section 2.1(a) of this Agreement, then Purchaser shall be entitled to receive reimbursement for, and such Indemnified Person shall be required to pay to Purchaser, the amount of all such Expenses paid or incurred by or on behalf of Purchaser or its Affiliates to such Indemnified Person in respect of such Excluded Claim.  Such amount shall be paid by such Indemnified Person to Purchaser by wire transfer of immediately available funds to an account designated by Purchaser promptly, but in no event more than three (3) months, following the date of the Final Judgment referenced in the preceding sentence.  Unless otherwise provided under applicable Law and determined by a Final Judgment, no Diligenced Employee shall be personally liable for the amount of Expenses paid by or on behalf of Purchaser or its Affiliates to the Company Group in respect of such Former Employer Claim.

2.4     **Indemnification Limitations.**

(a)     Notwithstanding anything herein to the contrary, under no circumstances shall Parent, Purchaser or any of their respective Affiliates have any obligations hereunder to indemnify any Employee that is not a Diligenced Employee, and no Employee (other than a Diligenced Employee, subject to the terms and conditions of this Agreement) shall have any right to indemnification hereunder.

(b)     Notwithstanding anything herein to the contrary, for purposes of calculating or determining the amount of Expenses resulting from, relating to or arising out of any Indemnified Claims, there shall be deducted from such Expenses an amount equal to the amount of any proceeds actually received by any Indemnified Person from any third-party insurer or from any other third parties in connection with such Expenses (net of any costs or expenses actually incurred by such Indemnified Person to recover or collect such proceeds).

(c)     Each Indemnified Person's right to seek indemnification from Purchaser hereunder, subject to the terms and conditions of this Agreement (including Section 3.2), constitutes the sole and exclusive remedy of such Indemnified Person against Parent, Purchaser or any of their respective Affiliates with respect to all Expenses resulting from or arising out of any Indemnified Claims.

2.5     **Forfeiture of Parent Shares.**

(a)     Following the Closing, in the event of an Indemnified Claim against a Diligenced Employee (each, a "**Forfeiture Claim**"), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8.



**(b)**

**(c)**     Notwithstanding anything to the contrary in the Award Agreement (including Section 4 of the Award Agreement), each Diligenced Employee unconditionally and irrevocably agrees that in the event that a Forfeiture Claim is brought against such Diligenced Employee, that until all Forfeited Parent Shares (or such lesser number as provided in Sections 2.5(a) and (b)) have been forfeited to Parent in accordance with this Section 2.5, in addition to the restrictions on transfer set forth in Section 3 of the Award Agreement, such Diligenced Employee shall not shall transfer any vested Parent Shares if

9.

such transfer of Parent Shares (as applicable) would result in such Diligenced Employee holding a number of vested Parent Shares in an amount less than the amount of Forfeited Parent Shares (or such lesser number as provided in Sections 2.5(a) and (b)).

2.6 **Claim Survival Period.** No Indemnified Person shall be entitled to make any claims for indemnification under this Agreement, and none of Parent, Purchaser or any of their respective Affiliates shall have any obligation to indemnify any Indemnified Person for any Indemnified Claims, following the expiration of the statute of limitations for making such claims (the date of such expiration, the "**Claims Termination Date**"); *provided*, that this Section 2.6 shall not limit any Indemnified Person's right to indemnification under this Agreement in respect of any Indemnified Claim that is set forth in a Claim Notice that is timely delivered by such Indemnified Person in accordance with Section 2.2 on or before the Claims Termination Date.

**SECTION 3.   MISCELLANEOUS PROVISIONS**

3.1 **Amendment.**   This Agreement may only be amended (a) prior to the Effective Time, with the written approval of Purchaser, the Company and both Founders and (b) after the Effective Time, with the written approval of Purchaser and both Founders.

3.2 **Expenses.**   Except as otherwise specifically provided herein and except as provided in the Merger Agreement, all fees and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the Party incurring such expenses.  In the event of any Proceeding arising under this Agreement between Purchaser, on the one hand, and any Indemnified Person(s), on the other hand (including any Proceeding in order to determine (i) whether an Indemnified Claim is an Excluded Claim or (ii) whether an Indemnified Person is entitled to the advancement of Expenses), the prevailing party (as determined by a Final Judgment in such Proceeding) shall be entitled to recover from the non-prevailing party its reasonable, out-of-pocket costs and expenses (including reasonable attorneys fees) incurred in connection with such Proceeding.

3.3 **Waiver.**

(a) No failure on the part of any Party to exercise any power, right, privilege or remedy under this Agreement, and no delay on the part of any Party in exercising any power, right, privilege or remedy under this Agreement, shall operate as a waiver of such power, right, privilege or remedy; and no single or partial exercise of any such power, right, privilege or remedy shall preclude any other or further exercise thereof or of any other power, right, privilege or remedy.

(b) No Party shall be deemed to have waived any claim arising out of this Agreement, or any power, right, privilege or remedy under this Agreement, unless the waiver of such claim, power, right, privilege or remedy is expressly set forth in a written instrument duly executed and delivered on behalf of such Party; and any such waiver shall not be applicable or have any effect except in the specific instance in which it is given.

3.4 **Entire Agreement; Counterparts.**   This Agreement and the documents and instruments and other agreements specifically referred to herein, including the Exhibits attached hereto, constitute the entire agreement and supersede all prior agreements and understandings, both written and oral, among or between any of the Parties with respect to the subject matter hereof and thereof.  This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which constitute one and the same instrument.  Any such counterpart, to the extent delivered by means of a fax machine or by .pdf, .tif, .gif, .jpeg or similar attachment to electronic mail (any such delivery, an "**Electronic Delivery**") shall be treated in all manner and respects as an original executed counterpart and shall be

10.

BLUE = CONFIDENTIAL; YELLOW = AEO

considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.  No Party hereto shall raise the use of Electronic Delivery to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of Electronic Delivery as a defense to the formation of a Contract, and each such Party forever waives any such defense, except to the extent that such defense relates to lack of authenticity.

**3.5** **Applicable Law.**  This Agreement shall be governed by, and construed in accordance with, the laws of the State of California, regardless of the Laws that might otherwise govern under applicable principles of conflicts of laws thereof.  Other than as set forth in Section 2.2(e), each of the Parties hereto irrevocably consents to the exclusive jurisdiction and venue of the state and federal courts located in the City and County of San Francisco in connection with any matter based upon or arising out of this Agreement or the matters contemplated herein, agrees that process may be served upon them in any manner authorized by the laws of the State of California for such persons and waives and covenants not to assert or plead any objection which they might otherwise have to such jurisdiction, venue and such process.  Each Party agrees, except as otherwise provided under Section 2.2(e), not to commence any Proceedings related hereto except in such courts.

**3.6** **Assignability**.  Neither this Agreement nor any of the rights, interests or obligations under this Agreement may be assigned or delegated, in whole or in part, by operation of Law or otherwise by any of the Parties hereto without the prior written consent of the other Parties hereto, and any such assignment without such prior written consent shall be null and void; *provided*, that (a) Purchaser shall be entitled to assign this Agreement and its obligations hereunder to any of its Affiliates without the prior written consent of the other Parties hereto and (b) any such assignment by Purchaser to its Affiliates shall not relieve Purchaser of any of its obligations under this Agreement regardless of when such obligations may arise; *provided further* that any Diligenced Employee shall be entitled to assign this Agreement and her, his or its obligations hereunder to any heirs without the prior written consent of the other Parties hereto.

**3.7** **Third Party Beneficiaries.**  Nothing in this Agreement, express or implied, is intended to or shall confer upon any Person (other than the parties hereto) any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.  No covenant or other undertaking in this Agreement shall (a) constitute an amendment to any employee benefit plan, program, policy or arrangement or (b) be construed as a guarantee of continued employment or to require Parent or any of its Affiliates (including, following the Effective Time, the Company) to retain the employment of any Diligenced Employee, which employment may be terminated at any time in accordance with applicable Law.

**3.8** **Notices.**  Any notice or other communication required or permitted to be delivered to any Party under this Agreement shall be in writing and shall be deemed properly delivered, given and received (a) upon receipt when delivered by hand, (b) upon transmission, if sent by facsimile or electronic transmission (in each case with receipt verified by electronic mail or telephone confirmation), or (c) one Business Day after being sent by overnight courier or express delivery service (with proof of delivery), *provided* that in each case the notice or other communication is sent to the address or facsimile telephone number set forth beneath the name of such Party below (or to such other address or facsimile telephone number as such Party shall have specified in a written notice given to the other Parties):

(a)      **if to Purchaser, to:**

Apparate International C.V.
c/o Uber Technologies, Inc.
1455 Market Street, 4th Floor

11.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    BLUE = CONFIDENTIAL; YELLOW = AEO

San Francisco, CA 94103
Attn: General Counsel

with a copy (which shall not constitute notice) to:

Cooley LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Attn: Jamie Leigh
Facsimile No.: 1.415.693.2222
Telephone No.: 1.415.693.2190
Email: jleigh@cooley.com

**(b)**    **if to any member of the Company Group, to:**

Ottomotto LLC and Otto Trucking LLC

████████████

Attn: Anthony Levandowski and Lior Ron

████████████

with a copy (which shall not constitute notice) to:

O'Melveny & Myers LLP
2765 Sand Hill Road
Menlo Park, CA 94025
Attn: Paul Sieben
Facsimile No.: 1.650.473.2601
Telephone No.: 1.650.473.2613
Email: psieben@omm.com

**(c)**    **if to Anthony Levandowski (Founder), to:**

Anthony Levandowski



with a copy (which shall not constitute notice) to:

Donahue Fitzgerald LLP
1646 N. California Boulevard, Suite 250
Walnut Creek, CA 94596
Attn: John F. Gardner

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    BLUE = CONFIDENTIAL; YELLOW = AEO

Facsimile No.: (925) 746-7776
Telephone No.: (925) 746-7770
Email: JGardner@Donahue.com

**(d)**     **If to Lior Ron (Founder), to:**

Lior Ron



with a copy (which shall not constitute notice) to:

Levine & Baker LLP
340 Pine Street, Suite 300
San Francisco, CA 94104
Attn: Alisa J. Baker
Tel: 415-391-3510
Fax: 415-391-8488
Email: abaker@levinebakerlaw.com

**(e)**     **If to the Indemnified Persons' Representative (which shall constitute notice to all Diligenced Employees other than Founders), to:**

Lior Ron



with a copy (which shall not constitute notice) to:

O'Melveny & Myers LLP
2765 Sand Hill Road
Menlo Park, CA 94025
Attn:  Paul Sieben
Facsimile No.: 1.650.473.2601
Telephone No.: 1.650.473.2613
Email: psieben@omm.com

**3.9**     **Severability.**  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.   If the final judgment of a court of competent jurisdiction or other Governmental Body declares that any term or provision hereof is invalid or unenforceable, the Parties

13.

agree that the court or other Governmental Body making such determination shall have the power to limit the term or provision, to delete specific words or phrases, or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Agreement shall be enforceable as so modified.  In the event such court or other Governmental Body does not exercise the power granted to it in the prior sentence, the Parties shall use commercially reasonable efforts to replace such invalid or unenforceable term or provision with a valid and enforceable term or provision that will achieve, to the extent possible, the economic, business and other purposes of such invalid or unenforceable term.

**3.10    Indemnified Persons' Representative.**

(a)    In order to efficiently administer certain matters contemplated under this Agreement, including any actions that the Indemnified Persons' Representative may, in his sole discretion, determine to be necessary, desirable or appropriate in connection with the matters set forth in Section 2.3(e) or any other Proceeding between Purchaser, on the one hand, and any Diligenced Employee, on the other hand, to determine whether a Former Employer Claim is an Excluded Claim (each, a "**Representative Proceeding**"), the Indemnified Persons other than the Founders (the "**Non-Founder Indemnified Persons**"), by execution of this Agreement, subject to Section 3.10(b), have irrevocably and unconditionally designated Lior Ron as the representative of the Non-Founder Indemnified Persons (the "**Indemnified Persons' Representative**").

(b)    In the event the Indemnified Persons' Representative dies, becomes unable to perform its responsibilities hereunder or resigns from such position, the Founders shall be authorized to and shall select another representative to fill such vacancy and such substituted representative shall be deemed to be the Indemnified Persons' Representative for all purposes of this Agreement.  The Founders may remove the Indemnified Persons' Representative from its position and select another representative to fill such vacancy by providing written notice to Purchaser and the Indemnified Persons' Representative.  Such substituted representative shall be deemed to be the Indemnified Persons' Representative for all purposes of this Agreement.

(c)    The Non-Founder Indemnified Persons hereby agree, in addition to the foregoing, that:

(i)    the Indemnified Persons' Representative shall be appointed and constituted the true and lawful agent and attorney-in-fact of each Non-Founder Indemnified Person, with full power in his, her or its name and on his, her or its behalf to act according to the terms of this Agreement and in general to do all things and to perform all acts including (A) executing and delivering any agreements, certificates, receipts, instructions, notices or instruments contemplated by or deemed advisable in connection with this Agreement, (B) agreeing to, negotiating, giving and receiving notices in relation to, entering into settlements and compromises of, and complying with arbitration awards and orders of courts with respect to any Representative Proceeding, (C) receiving service of process for each Non-Founder Indemnified Person, and (D) taking all actions necessary or appropriate in the judgment of the Indemnified Persons' Representative for the accomplishment of the foregoing.  By execution of this Agreement, the Indemnified Persons' Representative hereby accepts such appointment;

(ii)    the Indemnified Persons' Representative shall have full authority to (A) execute, deliver, acknowledge, certify and file on behalf of the Non-Founder Indemnified Persons (in the name of any or all of the Non-Founder Indemnified Persons or otherwise) any and all documents that the Indemnified Persons' Representative may, in its sole discretion, determine to be necessary, desirable or appropriate, in such forms and containing such provisions as the Indemnified Persons' Representative may, in its sole discretion, determine to be appropriate, (B) give and receive notices and other

14.

communications relating to this Agreement and the transactions contemplated hereby (except to the extent that this Agreement contemplates that such notice or communication shall be given or received by an Non-Founder Indemnified Person individually), (C) take or refrain from taking any actions (whether by negotiation, settlement, litigation or otherwise) to resolve or settle all matters and disputes arising out of or related to any Representative Proceeding, and (D) engage attorneys, accountants, financial and other advisors, paying agents and other persons necessary or appropriate in the judgment of the Indemnified Persons' Representative for the accomplishment of the foregoing;

(iii)    Parent, Purchaser and each of their respective Affiliates and their respective representatives and agents will be entitled to rely conclusively on the instructions and decisions given or made by the Indemnified Persons' Representative with respect to the Non-Founder Indemnified Persons as to any Representative Proceeding, and no Person shall have any cause of action against any of the foregoing Persons for any action taken or not taken in reliance upon any such instructions or decisions;

(iv)    all actions, decisions and instructions of the Indemnified Persons' Representative shall be conclusive and binding upon each of the Non-Founder Indemnified Persons;

(v)    no Non-Founder Indemnified Persons shall have any cause of action against the Indemnified Persons' Representative for any action taken, decision made or instruction given by the Indemnified Persons' Representative under this Agreement, except for fraud or willful breach of this Agreement on the part of the Indemnified Persons' Representative;

(vi)    the provisions of this Section 3.10 are independent and severable, are irrevocable and coupled with an interest, and shall be enforceable notwithstanding any rights or remedies that any Non-Founder Indemnified Person may have in connection with this Agreement; and

(vii)    the provisions of this Section 3.10 shall be binding upon the executors, heirs, legal representatives successors and assigns of each Non-Founder Indemnified Person, and any references in this Agreement to a Non-Founder Indemnified Person or the Non-Founder Indemnified Persons shall mean and include the successors to the Non-Founder Indemnified Persons' rights hereunder, whether pursuant to testamentary disposition, the laws of descent and distribution or otherwise.

**3.11    Specific Performance.**  Except as set forth in this Agreement, the rights and remedies of the Parties specified shall be cumulative (and not alternative).  Each of the Parties agrees that this Agreement is intended to be legally binding and specifically enforceable pursuant to its terms and that Purchaser and the Indemnified Persons would be irreparably harmed if any of the provisions of this Agreement are not performed in accordance with their specific terms and that monetary damages would not provide adequate remedy in such event.  Accordingly, in addition to any other remedy to which a non-breaching Party may be entitled at law, a non-breaching Party shall be entitled to seek injunctive relief to prevent breaches of this Agreement and to specifically enforce the terms and provisions hereof.

**3.12    Construction.**

(a)    For purposes of this Agreement, whenever the context requires: the singular number shall include the plural, and vice versa; the masculine gender shall include the feminine and neuter genders; the feminine gender shall include the masculine and neuter genders; and the neuter gender shall include the masculine and feminine genders, and "or" is not exclusive.

15.

(b)     The Parties agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting Party shall not be applied in the construction or interpretation of this Agreement.

(c)     As used in this Agreement, the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, but rather shall be deemed to be followed by the words "without limitation."

(d)     Except as otherwise indicated, all references in this Agreement to "Sections" and "Exhibits" are intended to refer to Sections of this Agreement and Exhibits to this Agreement.

(e)     The words "hereof," "herein" and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement as a whole and not to any particular provision of this Agreement.

(f)     In this Agreement, unless the context otherwise requires, references to (i) any agreement (including this Agreement), Contract or Law are to the agreement, Contract or Law as amended, modified, supplemented or replaced from time to time, and to any section of any statute or regulation are to any successor to the section; and (ii) any Person include any heirs, successors and permitted assigns of that Person or permitted successors and assigns of that Person.

(g)     The word (i) "will" shall be construed to have the same meaning and effect as the word "shall", (ii) "any" shall mean "any and all" unless otherwise clearly indicated by context and (iii) "or" is disjunctive but not mutually exclusive.

(h)     Where a word or phrase is defined herein, each of its other grammatical forms shall have a corresponding meaning.

(i)     No prior draft of this Agreement nor any course of performance or course of dealing shall be used in the interpretation or construction of this Agreement.  No parole evidence shall be introduced in the construction or interpretation of this Agreement unless the ambiguity or uncertainty in issue is plainly discernable from a reading of this Agreement without consideration of any extrinsic evidence.

(j)     The table of contents, captions and headings contained in this Agreement are for convenience of reference only, shall not be deemed to be a part of this Agreement and shall not be referred to in connection with the construction or interpretation of this Agreement.

(k)     As used in this Agreement, "Business Day" means any day other than a Saturday, Sunday or other day on which banks in San Francisco, California are required to be closed.

(l)     All references to dollar amounts or "$" are references to U.S. dollars, and all payments hereunder shall be made in U.S. dollars.

**3.13    New Diligenced Employees.**  From time to time following the Agreement Date but prior to the Closing, if Parent and the Company mutually agree in writing that a potential new Employee of any member of the Company Group should complete a due diligence review by the Outside Expert to determine whether such potential new Employee has committed any Bad Acts and such Person (a) completes such due diligence review to the satisfaction of Parent (and certifies to the Company as to the good faith, complete and truthful completion of such due diligence review by such Person and that such Person has responded truthfully and in good faith to all inquiries of the Outside Expert) and (b) is hired by

16.

any member of the Company Group with Parent's written consent, then, such Person shall be given the opportunity to execute a joinder to this Agreement in a form attached as Exhibit B hereto (a "**Joinder**") no later than 60 days following the Closing.  Following the delivery by such Person to Purchaser of such a Joinder to this Agreement (which Joinder may be delivered at any time within 30 days of such person being named in an Indemnified Claim (but in no event after 60 days following the Closing)), such Person shall be deemed a Diligenced Employee for all purposes under this Agreement (including the right to be indemnified from any Indemnified Claims subject to the terms and conditions of this Agreement).

3.14    **Limited Guarantee**.  Parent agrees to take all action necessary to cause Purchaser to perform all of its agreements, covenants and obligations under this Agreement (subject, in each case, to the terms and limitations set forth in this Agreement, the "**Guaranteed Obligations**").  Parent unconditionally and irrevocably guarantees to the Company Group and the Diligenced Employees the full and complete performance by Purchaser of the Guaranteed Obligations and shall be liable for any breach of any covenant or obligation of Purchaser under the Guaranteed Obligations.  This is a guarantee of payment and performance and not of collection.  Parent hereby waives diligence, presentment, demand of performance, filing of any claim, any right to require any proceeding first against Purchaser in connection with the performance of its obligations set forth in this Section 3.14.

[signature page follows]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    BLUE = CONFIDENTIAL; YELLOW = AEO

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered as of the Agreement Date.

**APPARATE INTERNATIONAL C.V.,**
a Dutch law-governed limited partnership

**By: Neben, LLC**
**Title: General Partner**

By: _____
Name:   Jerome Wilson
Title:   Power of Attorney

**UBER TECHNOLOGIES, INC.,** solely with
respect to Section 3.14

By: _____
Name: Travis Kalanick
Title:  President, Chief Executive Officer and
Secretary

[SIGNATURE PAGE TO INDEMNIFICATION AGREEMENT]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          BLUE = CONFIDENTIAL; YELLOW = AEO

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered as of the Agreement Date.

**APPARATE INTERNATIONAL C.V.,**
a Dutch law-governed limited partnership

**By: Neben, LLC**
**Title: General Partner**

By: _____
Name:
Title:  Authorized Signatory

**UBER TECHNOLOGIES, INC.,** solely with
respect to Section 3.14

By: _____
Name: Travis Kalanick
Title:  President, Chief Executive Officer and
        Secretary

[SIGNATURE PAGE TO INDEMNIFICATION AGREEMENT]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          BLUE = CONFIDENTIAL; YELLOW = AEO

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered as of the Agreement Date.

**APPARATE INTERNATIONAL C.V.**

By: _____
Name:
Title:

**UBER TECHNOLOGIES, INC., SOLELY WITH RESPECT TO SECTION 3.14**

By: _____
Name:
Title:

**OTTOMOTTO LLC**

By: _____
Name: LIOR RON
Title: PRESIDENT

**OTTO TRUCKING LLC**

By: _____
Name: LIOR RON
Title: PRESIDENT

**INDEMNIFIED PERSONS' REPRESENTATIVE**

By: _____
Name: LIOR RIN
Title:

[INDEMNIFICATION AGREEMENT]

Anthony Levandowski

Lior Ron

Soren Juelsgaard

Colin Sebern

Don Burnette

[INDEMNIFICATION AGREEMENT]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          BLUE = CONFIDENTIAL; YELLOW = AEO