**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

May 17, 2017

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Plaintiff Waymo respectfully submits this letter brief requesting that you exercise your discretion to deny Defendants' request to file a Sur-Reply in opposition to Waymo's motion to compel. As explained below, no Sur-Reply is justified, and Uber should be held to the record created by its own discovery misconduct. Indeed, Uber asked the Court for leave to file a Sur-Reply even before Waymo filed its Reply, making clear that Uber's purported justifications for a Sur-Reply are just an excuse to get the last word. Alternatively, Waymo requests that any Sur-Reply be filed by 11:59 p.m. on May 19th, and that Waymo be authorized to file a response by 12:00 p.m. on May 22nd.

Defendants have improperly alleged a common interest privilege over materials relating to a "due diligence" report prepared in furtherance of Uber's 2016 acquisition of Anthony Levandowski's company Otto. On May 1st, Waymo filed a motion to compel. (Dkt. 321.) On May 8th, Uber filed an Opposition (Dkt. 369), supported by seven declarations alleging new and never-before disclosed facts. These declarations sought to establish the existence of a "common legal" interest by characterizing—but failing to attach—several of the Otto acquisition documents. On May 10th, Waymo requested immediate production of these documents. The acquisition documents had previously been requested by Waymo during expedited discovery, and the Court requested that they be produced at the preliminary injunction hearing, but Uber improperly withheld them. Late in the evening of May 11th, after the preliminary injunction order issued, some the documents were produced, some were produced in heavily redacted form, and others were not produced at all. On Saturday, May 13th, the parties met and conferred with the Special Master regarding the withheld documents and redactions, and Uber agreed to provide revised versions. Even then and to this day, not all referenced documents have been produced and relevant documents continue to have improper redactions. On May 16th, Waymo filed its Reply. (Dkt. 444.)

Having prejudiced Waymo by relying on self-serving characterizations of improperly withheld documents in its Opposition, Uber now seeks to parlay its discovery misconduct into an unauthorized Sur-Reply. This is improper. As noted below, both of the supposed "new" arguments that Uber identifies from Waymo's Reply brief are either fairly within the scope of arguments presented in the Opening Brief, or are responsive to the late-produced documents.

Uber raises two—and *only* two—points (addressed below) that it alleges warrant a Sur-Reply. (Ex. 1.) Although Uber is not entitled to any Sur-Reply for the reasons discussed below, Waymo requests that if such Sur-Reply is granted, it be *strictly* limited to these two points.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

1. **Waymo's argument regarding the parties' common legal interest, as evidenced by the way this litigation has unfolded at pages 6-7 of the Reply Brief.**

Uber first takes issue with Waymo's Reply citing events from the litigation as evidence that Mr. Levandowski and Uber lack a "common legal interest." Waymo cited the Court's statement that Mr. Levandowski may need his own lawyer (3/16/2017 Hr'g Tr. at 16:16-17:3), and the admission by Uber's counsel that Uber and Mr. Levandowski had a "conflict" (3/29/2017 Hr'g Tr. at 17:15-20). (Dkt 444 at 7.) Waymo also cited aspects of Judge Alsup's May 3rd Preliminary Injunction Order, which was not available at the time of the Opening Brief. (*Id.*, *citing* Dkt. 433 at 7-8.)

Uber should not be permitted to re-open briefing to address these specific citations, which are fairly encompassed by the Opening Brief. For example, Waymo clearly raised Defendants' failure to demonstrate a common legal interest between recipients of the disputed documents. (Dkt. 321 at 10-12.) Waymo also argued that actions in the unfolding litigation—including Mr. Levandowski's assertion of the Fifth Amendment—made clear that there was no proper legal interest because Uber and Mr. Levandowski. (*Id.* at 12-14.) Uber had ample opportunity to respond and demonstrate the alleged common interest (including by submitting seven new declarations) in its Opposition.

Waymo's Reply arguments are also proper rebuttal to Defendants' Opposition which alleged, for the first time, that "Uber and Otto agreed to the 'essential terms' of Uber's acquisition on February 22, 2016." (Dkt. 369 at 15.) Based on this new information, Defendants cited case law in support of the proposition that a common interest can attach "[o]nce an agreement in principle was reached." (*Id.* at 14, *citing Rembrandt Patent Innovations, LLC v. Apple, Inc.*, No. C14-05094 WHA, 2016 U.S. Dist. LEXIS 13749, at *12 (N.D. Cal. Feb. 4, 2016). Waymo responded to Defendants' argument by alleging all the ways in which this litigation has proven that Mr. Levandowski and Uber have had conflicting interests all along, distinguishing the cases on which Defendants relied.

Finally, Waymo's Reply arguments are proper because the newly and belatedly produced acquisition documents underscore the extent to which the interests of Uber and Mr. Levandowski actually did diverge at the time of the disputed communications. For example, based on the acquisition documents, we now know that Uber was aware all along that Mr. Levandowski committed "Pre-Signing Bad Acts" as early as February 2016 (and likely even earlier). We also now know that Mr. Levandowski was required to disclose information regarding his "Bad Acts" to Stroz (but not necessarily to Uber) for the purpose of closing a business transaction and *not* for the purpose of formulating legal strategy. All of this material evidence—which was improperly withheld from Waymo when it filed its Opening Brief—justifies Waymo's Reply argument that the parties have had diverging interests all along sufficient to defeat the common interest doctrine.

2. **Waymo's argument regarding the predicate crimes to establish applicability of crime-fraud exception at pages 10-11 of the Reply Brief.**

Waymo argued in its Opening Brief that "[t]here is also substantial evidence that the withheld due diligence report is related to and in furtherance of *at least concealing* that trade secret theft." (Dkt. 321 at 14 (emphasis added).) Uber simply ignored this argument in its Opposition, setting up a strawman argument that anything less than a "smoking gun" of trade secret misappropriation was insufficient to establish the crime-fraud exception. (Dkt. 369 at 18.) On Reply, Waymo simply reiterated its argument that a concealment crime was sufficient to establish the crime-fraud exception, providing additional legal support and specificity where necessary to rebut Uber's opposition. (Reply at p. 10.) Also, to the extent Waymo's Reply recites specific predicate crimes, that is only because new evidence to establish such crimes only came to light upon production of the acquisition materials.

Respectfully,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven

cc:     All counsel of record; Special Master John Cooper