MILES EHRLICH (Bar No. 237954)
miles@ramsey-ehrlich.com
ISMAIL RAMSEY (Bar No. 189820)
izzy@ramsey-ehrlich.com
AMY CRAIG (Bar No. 269339)
amy@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600 (Tel)
(510) 291-3060 (Fax)

Attorneys for Non-Party Anthony Levandowski

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, <br><br> Plaintiff, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., *et al.*, <br><br> Defendants. | Case No.: C 17-00939 WHA <br><br> **NON-PARTY ANTHONY LEVANDOWSKI'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** <br><br> Hon. William H. Alsup |

Waymo's response to the various objections made to the order compelling production of the Stroz report, Dkt. 585, adds little to Judge Corley's order, instead relying on the same errors Judge Corley committed in analyzing the motion in the first instance. The Court should sustain the parties' objections, overrule Judge Corley's order, and deny Waymo's motion to compel.

## I. The Common Interest Privilege Protects the Stroz Report from Disclosure

Waymo scarcely mentions the foundational legal error on which Judge Corley's order rests: the order presumes that the common interest privilege can only protect information that is initially communicated by a party to *his or her own attorney* (step 1), and then, *only later*, communicated between attorneys engaged in a common interest arrangement (step 2). Dkt. 566 at 11-13. But as discussed in our opening papers, that premise is contrary to settled law. Dkt. 574 at 1-3.

Waymo attempts to distinguish *United States v. Schwimmer*, 892 F.2d 237 (2nd Cir. 1989), emphasizing that it is a "Second Circuit decision." Dkt. 585 at 10. Yet the Ninth Circuit in *United States v. Gonzalez* relied extensively on *Schwimmer* in describing the contours of the common interest privilege. *Gonzalez*, 669 F.3d 974, 978, 980, 981, 983 (9th Cir. 2012); *see also United States v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005) (quoting *Schwimmer*). The point of *Schwimmer,* as well as the Ninth Circuit precedents cited in our opening brief, is that parties to a common interest agreement may communicate amongst themselves in various ways—not simply in the two-step method described above—without losing the protection of the common interest and joint defense privilege. Dkt. 574 at 1-3. Hence, the fact that Stroz was formally retained (and paid) by Uber and Ottomoto, and not Mr. Levandowski, Dkt. 585 at 10-11, has no significance to the analysis. So long as Stroz was acting as an agent of counsel for one of the other parties to the common interest agreement, Mr. Levandowski's communications with the other parties' counsel—or in this case, with counsels' agent, Stroz—are similarly privileged because joint-defense parties and their respective lawyers (and the lawyers' agents) all share an implicit attorney-client relationship with one another. *See Gonzalez*, 669 F.3d at 978; *Schwimmer*, 892 F.2d at 244; Dkt. 574 at 1-2.

Further, Waymo's brief—like Judge Corley's order—places undue emphasis on isolated

LEVANDOWSKI'S REPLY RE MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE; **Case No. C 17-00939 WHA**

1

language that either appears in, or is omitted from, certain written communications between the joint-defense parties.  But it is undisputed that "no written agreement is required" for there to be a valid joint defense agreement, and "a [joint-defense agreement] may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or *potentially* may be codefendants or have common interests in litigation."  *Gonzalez*, 669 F.3d at 979 (emphasis added).  It is uncontradicted that the parties to the common interest agreement here *acted* as though they were protected by such an agreement. Thus, the question is simply whether Mr. Levandowski and the other parties could "potentially" have had "common interests in litigation."  Contemporaneous documents express that they did share such a common interest, and the numerous declarations of counsel confirm it.  Dkt. 574 at 3-5.

The assertion that the interests of all the various parties to this joint-defense agreement were not then (and are not now) identical, *see* Dkt. 585 at 7, 9, does not undermine the validity of the joint-defense privilege itself.  "[P]arties to an asserted JDA need not have identical interests and may even have some adverse motives," so long as so long as the parties are "work[ing] together toward a common objective."  *Gonzalez*, 669 F.3d at 980; *see also id.* at 981 (observing that co-defendants in a criminal matter could have a common interest in the defense of one count even if one defendant was blaming the other with respect to liability on a different count).

Additionally, while it may be true, as Waymo suggests, that "no joint defense privilege arises *merely because* two parties contemplate a business transaction that may give rise to litigation," Dkt. 585 at 5 (emphasis added), it is also true that such a circumstance *may* support a common interest privilege if the parties "'share[ ] at least a substantially similar legal interest' in actual or potential litigation against a common adversary" and join in an agreement to act in concert to defend against the potential litigation.  *See, e.g., FTC v. AbbVie, Inc.*, No. 14-5151, 2015 U.S. Dist. LEXIS 166723 at *36-37 (E.D. Penn. Dec. 14, 2015); Dkt. 575 at 1-2.  The common interest doctrine applies "even if there is no 'final' agreement or if the parties do not ultimately unite in a common enterprise."  *Katz v. AT&T Corp.*, 191 F.R.D. 433, 437 (E.D. Penn. 2000) (citing cases).  The record evidence establishes quite plainly that the joint-defense parties (a) were engaged in "a process for Uber to potentially acquire 100% ownership of Otto," Dkt.

LEVANDOWSKI'S REPLY RE MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE; **Case No. C 17-00939 WHA**

2

566 at 2; and (b) jointly anticipated that they might be sued by Google, Dkt. 574 at 4-5 (citing evidence). The record further establishes that Stroz was retained to assist the joint-defense parties in preparing for that potential litigation. Dkt. 574 at 4-5. Taken together, all of that evidence demonstrates that a valid common interest agreement was in place.

Waymo quibbles about the date on which a formal indemnity obligation might have arisen. Dkt. 585 at 6-7. But that misses the point. As discussed, parties that jointly face potential litigation may engage in a valid common interest agreement to prepare to defend against anticipated litigation, whether or not they have formally entered a commercial transaction. The record evidence shows that, at least as of the date the Term Sheet's execution, the parties anticipated facing a common legal adversary and they endeavored to assess and defend against this litigation risk.

In sum, the Court should find that Judge Corley erred in construing both the law and the facts. The Stroz report is protected by the common interest, attorney-client, and attorney work product privileges, and should therefore be immune from production.

**II.    Joinder**

Mr. Levandowski previously joined portions of Otto Trucking's objections. *See* Dkt. 574 at 1 n.1. Mr. Levandowski also joins the objections lodged by Uber. *See* Dkt. 575.

**III.   Request for Stay**

The parties are presently briefing a closely related issue: whether the Court should quash or enforce Waymo's subpoena to Stroz, which seeks materials provided for review by Stroz in the course of the same common interest agreement discussed in the present motion. *See* Dkt. 570, 580, 581, 583. In the interest of judicial efficiency, and given the identity of issues involved, in the event that the Court overrules the objections to Judge Corley's order, we respectfully request that the matter be temporarily stayed pending resolution of these related motions to quash and compel so that all of the issues may be appealed to the Federal Circuit together.

LEVANDOWSKI'S REPLY RE MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE; **Case No. C 17-00939 WHA**

Dated: June 13, 2017

Respectfully submitted,

/s/
Miles Ehrlich
Ismail Ramsey
Amy Craig
Ramsey & Ehrlich LLP

*Counsel for Non-Party Anthony Levandowski*

LEVANDOWSKI'S REPLY RE MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE; **Case No. C 17-00939 WHA**

4