MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Telephone: 202.237.2727
Facsimile: 202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                    Plaintiff,<br><br>         v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>                    Defendants. | Case No.    3:17-cv-00939-WHA<br><br>**DEFENDANT UBER TECHNOLOGIES, INC. AND OTTOMOTTO, LLC'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 566)**<br><br>Judge:   The Honorable William Alsup<br><br>Trial Date: October 2, 2017 |

Defendants Uber Technologies, LLC and Ottomotto LLC (collectively, "Uber") submit this reply in support of their Objections to the Order compelling production of the Stroz Report.

### I. Waymo Relies Upon The Wrong Standard of Review

Rule 72(a) requires a district court to set aside any part of a magistrate judge's order that is contrary to law. *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002). Waymo ignores this applicable standard, relying instead on case law applying the clearly erroneous standard to discretionary discovery rulings. Dkt. 585 at 1. But the applicability of the attorney-client privilege, the work product doctrine, and the common interest privilege is not a discretionary discovery ruling; rather, it is a conclusion of law. *United States v. Graf*, 610 F.3d 1148, 1157 (9th Cir. 2010). And a district court judge reviews the magistrate's rulings on privilege issues under the "contrary to law" standard. *E.g., In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Litig.*, 116 F.R.D. 297, 301 (C.D. Cal. 1987). Neither case cited by Waymo has anything to do with the applicability of any privileges. *In re Verisign, Inc. Sec. Litig.*, 2004 WL 2445243, at *1 (N.D. Cal. Mar. 10, 2004) (applying clearly erroneous standard to order to supplement document production and interrogatory responses); *Patrick Caldwell v. Facet Retiree Med. Plan*, No. C 13-00385 WHA, Dkt. 86 at 3 (Mar. 31, 2014) (Alsup, J.) (applying clearly erroneous standard to order denying motion to compel deposition appearance and modify the litigation schedule).

### II. The Order's Holding That the Attorney-Client Privilege Does Not Protect The Report Is Contrary To Law

The Order's holding that Uber did not have a common legal interest with Ottomotto, Levandowski, and Ron after the February 22, 2016 Term Sheet was signed is contrary to law. Waymo cites *In re JP Morgan Chase & Co. Sec. Litig.*, 2007 WL 2363311, *5 (N.D. Ill. Aug. 13, 2007), for the proposition that no joint defense privilege arises when two parties contemplate a business transaction. But the documents that JP Morgan sought to withhold had nothing to do with possible litigation or legal exposure. Waymo dismisses *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987) (Dkt. 585 at 5), but that decision is persuasive authority for this Court, is still good law, and establishes that even parties on opposite sides of a transaction *that does not ultimately transpire* may nonetheless enter into an enforceable common interest agreement. Here, the argument is even stronger because the deal did go forward. *See*

1

*also Rayman v. American Charter Federal Savings & Loan Association*, 148 F.R.D. 647 (D. Neb. 1993) (parties negotiating a merger may exchange privileged information so that one party "would be more fully informed of the potential liability it would take on by" the merger).

Waymo fails to address *Morvil Tech., LLC v. Ablation Frontiers, Inc.*, 2012 WL 760603, at *3 (S.D. Cal. Mar. 8, 2012), which held that an overlap of commercial and legal interests in a business transaction "does not negate the effect of the legal interest in establishing a community of interest," even where it was "unclear" the parties "would face joint litigation." And Waymo ignores that Uber submitted uncontroverted evidence that "in light of the litigation risks that the proposed acquisition presented … Uber took the additional, unique step of authorizing the Stroz investigation, and would not have done so absent the litigation risk." Suhr Decl. (Dkt. 378) ¶ 10.

### III. The Report Was Never Disclosed To A Litigation Adversary And Its Work Product Protection Was Therefore Never Waived

The Order's holding that Uber waived work product protection because it disclosed the Report to Ottomotto, Levandowksi, and Ron is contrary to law because those parties were never potential *litigation* adversaries. First, despite Waymo's argument that the Report is not attorney work product, the Order specifically found that "[m]uch of the Report … reflects Stroz's 'findings and methodology' and thus, may be *opinion* work product." Dkt. 566 at 23. Second, an "adversary" for purposes of the work product waiver analysis is an adversary in litigation or potential litigation. Dkt. 575 at 3-4. Waymo baldly asserts that "Magistrate Corley found that disclosure here was made to at least potential litigation adversaries" (Dkt. 585 at 11), but cites nothing for this assertion, which misrepresents the Order's finding that "Otto was Uber's adversary *because they were on opposite sides of a potential transaction*." Dkt. 566 at 21. Finally, in *United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003), the company and the government were adversaries because the government's investigation led to a recommendation that the government file a lawsuit against the company. By contrast, Stroz's investigation was not undertaken in anticipation of litigation between Uber and Ottomotto.

### IV. The Order's Holding That The Attorney-Client Privilege Does Not Protect The Report Is Contrary To Law

The Order's holding that the Report is not protected by the attorney-client privilege is contrary to law. Waymo notes that the Order found that "neither Levandowski, Ron, nor their

lawyers hired Stroz." Dkt. 585 at 2. But that does not address the flaw in the Order's holding that the Report is not protected because when Uber and Ottomotto jointly retained Stroz they were parties to a potential acquisition that they were not obligated to close. Dkt. 566 at 11. This holding is contrary to law because whether the parties were obligated to close the transaction does not change the uncontroverted fact that OMM and MoFo jointly engaged Stroz to facilitate the provision of legal advice regarding potential litigation by Waymo, making the Report protected by the attorney-client privilege. Dkt. 575 at 4-5.

**V. The Order Should Be Read To Extend Only To Documents And Communications Disclosed Prior to April 11, 2016**

Waymo contends that Uber did not argue that any common legal interest arose upon the signing of the Put Call Agreement. Dkt. 585 at 13. This argument is nonsensical. By arguing that a common interest arose as of February 22, 2016, the date the Term Sheet was signed, Uber was necessarily also arguing that the common interest continued to exist on and after April 11, 2016, the date Uber signed the Put Call Agreement. If there was a common interest as of February 22, then there was a common interest on April 11, particularly given that the written JDA was executed on April 11.

Uber is not attempting to "retroactively cloak all of this work and related communications in privilege merely by signing an agreement." Dkt. 585 at 13. If a common interest agreement existed between the joint defense parties as of April 11, then privileged joint communications after that date are protected from disclosure. Neither the fact that the Stroz investigation began before April 11 nor the fact that Stroz provided an interim report to Uber before April 11 means that joint defense communications related to the ongoing investigation that occurred after April 11 are not protected communications. Waymo cites nothing to support such an argument.

The Court should confirm that the scope of the Order extends only to production of the Report and its Exhibits; and to communications among the parties (Uber or its lawyers, or its lawyers' agent, Stroz, on the one hand, and Ottomotto, Levandowski, Ron or their lawyers, on the other hand) that were made prior to April 11, 2016.

| | |
|---|---|
| Dated: June 13, 2017 | MORRISON & FOERSTER LLP<br>BOIES SCHILLER FLEXNER LLP<br><br>By: */s/ Karen L. Dunn*<br>   KAREN L. DUNN<br><br>Attorneys for Defendants<br>UBER TECHNOLOGIES, INC. and<br>OTTOMOTTO LLC |