# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Robert B. Ellis, P.C.
To Call Writer Directly:
(312) 862-2309
robert.ellis@kirkland.com

300 North LaSalle
Chicago, Illinois 60654

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

June 13, 2017

The Honorable Jacqueline Scott Corley
United States District Court for the
Northern District of California
San Francisco Courthouse Courtroom F
15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc.*, Case No. 3:17-cv-00939-WHA (JSC)

Dear Magistrate Judge Corley:

Stroz Friedberg, LLC ("Stroz") respectfully submits this response to the letter brief filed by Waymo on June 8, 2017 (the "Letter Brief"), seeking an order compelling the production of documents responsive to a third-party document subpoena served on May 10, 2017 (the "Subpoena").

Waymo's suggestion—that Stroz improperly objected to Waymo's Subpoena, or that Stroz is unjustifiably withholding documents responsive to the Subpoena—is incorrect. As outlined in *Anthony Levandowski's Motion to Quash Plaintiff Waymo LLC's Subpoena* [Docket No. 583], Mr. Levandowski, Uber Technologies, Inc. ("Uber"), the Ottomotto entities, and Lior Ron entered into a joint defense agreement, through which Stroz was ultimately engaged, and pursuant to which Mr. Levandowski has asserted privileges. Stroz is also party to an engagement letter (the "Engagement Letter") with Uber and Ottomotto LLC ("Ottomotto"), which requires Stroz to protect those privileges and forbids the disclosure of materials covered by those asserted privileges without express consent. Defendants and Mr. Levandowski have now filed motions to quash the Subpoena on those grounds, arguing that the requests call for the production of privileged materials. *See id.*; *Defendant Otto Trucking LLC's Motion to Quash Plaintiff Waymo LLC's Subpoena* [Docket No. 580]; *Defendants Uber Technologies Inc. and Ottomotto LLC's Motion to Quash the Stroz Subpoena* [Docket No. 581]. Stroz therefore objected to the Subpoena to preserve those asserted privileges, as it was contractually obligated to do. Stroz stands ready to produce those materials if it receives the requisite consent, or if this Court so orders.[1]

---

[1]   On June 12, 2017, Stroz received a letter from Uber and Ottomotto's counsel stating that Uber and Ottomotto do not want Stroz to retain possession of, destroy, or delete any materials Stroz

# KIRKLAND & ELLIS LLP

The Honorable Jacqueline Scott Corley
June 13, 2017
Page 2

Regardless of the resolution of Uber's, Ottomotto's, and Mr. Levandowski's asserted privileges, Stroz also objected to the Subpoena because certain of Waymo's requests seek communications protected by Stroz's *own* attorney-client and work product privileges. Waymo cannot seriously contend that Stroz is not entitled to protect its own privileges. Finally, Stroz respectfully requests that the Court shift the significant expense Stroz is likely to incur in responding to certain of the Subpoena's broad requests to Waymo, as required under Federal Rule of Civil Procedure ("Rule") 45(d)(2)(B)(ii).

## I.     BACKGOUND

### A.     Stroz's Engagement

Stroz is a consulting company that provides digital forensics, electronic discovery, and factual investigation services to its clients. Uber, the Ottomotto entities, Mr. Levandowski, and Mr. Ron entered into a joint defense agreement, through which Stroz was engaged to conduct an investigation as part of Uber's proposed acquisition of Ottomotto and Otto Trucking, LLC.

The terms of Stroz's retention are outlined in the Engagement Letter, attached to the Subpoena as Exhibit D. The Engagement Letter specifically provides that "Stroz Friedberg's communications with Clients, Uber, Ottomotto, (and Messrs. Levandowski and Ron (including their respective counsel), Stroz Friedberg's work product, and all information and data received from Clients, Uber, and Ottomotto (including its employees and/or their respective counsel) are covered by common interest, attorney-client privilege and/or attorney work product doctrine." Engagement Letter at 2-3. The Engagement Letter identifies those materials as "Confidential Information," and bars Stroz from disclosing any Confidential Information to any parties other than Clients, Uber, Ottomotto, or Messrs. Levandowski and Ron without their consent. *Id.*

### B.     Waymo's Subpoena

On May 10, 2017, Waymo served a sweeping third-party document subpoena on Stroz. The Subpoena contains 31 broad document requests, which collectively seek the production of virtually every document or communication generated in connection with Stroz's engagement,

---

may have gathered from Mr. Levandowski, and further they want Stroz to produce to Waymo any such materials that constitute Google information. Uber and Ottomotto's counsel also provided a copy of a letter addressed to Mr. Levandowski asking that he instruct Stroz to provide to Waymo any "downloaded material," as that term is defined in the Court's May 11 Order, that may be in Stroz's possession. Counsel for Stroz thereafter received an email from Mr. Levandowski's counsel stating that Mr. Levandowski does not consent to any such production. Stroz therefore remains where it started—contractually prohibited from taking the requested actions absent the requisite consent or a Court order.

## KIRKLAND & ELLIS LLP

The Honorable Jacqueline Scott Corley
June 13, 2017
Page 3

including: (1) all agreements with Uber, Ottomotto, Mr. Levandowski, and Mr. Ron; (2) all the forensic data provided to Stroz as part of its investigation; (3) all documents produced as part of the investigation; and (4) all communications with virtually anyone regarding the engagement, which would include communications between Stroz and its own counsel that are privileged. *See* Subpoena, Request No. 12 ("The forensic data underlying the 'forensic analysis' YOU did in connection with the August 5, 2016 due diligence report[.]"); Request No. 13 ("All DOCUMENTS and COMMUNICATIONS REGARDING the 'forensic analysis' YOU did in connection with the August 5, 2016 due diligence report[.]").

Accordingly, the Subpoena seeks information that Uber and Ottomotto have identified as "Confidential Information" under the Engagement Letter and that Stroz is barred from producing absent their consent. As a result, on June 7, 2017, Stroz served its responses and objections to Waymo's Subpoena (the "<u>Responses and Objections</u>"), attached as Exhibit 3 to the Letter Brief. The Responses and Objections state with specificity the grounds for objecting to each of the requests in the Subpoena, as required by Rule 34(b)(2)(B).

Stroz specifically noted that the documents and communications sought were subject to claims of privilege by Uber, Ottomotto, Mr. Levandowski, and Mr. Ron, and that it was further prohibited from producing those documents and communications pursuant to the express terms of the Engagement Letter. Stroz also objected to the production of information protected by its own attorney-client and work product privileges, including communications between Stroz and its counsel during the negotiation of the Engagement Letter.

Stroz nevertheless agreed to produce the requested documents to the extent it receives permission from Uber, Ottomotto, Mr. Levandowski, and Mr. Ron. Certainly, Stroz will comply with any order of this Court directing production of some or all of the requested materials.

II.   **ARGUMENT**

Waymo's motion to compel rests largely on mischaracterizations of Stroz's stated position in its Responses and Objections.

*First*, to be clear, Stroz is not refusing to produce documents or communications responsive to the requests in the Subpoena. Stroz is party to agreements that require it to treat the documents and communications sought as privileged, and to prevent the disclosure of those documents and communications unless it receives permission to do so. Stroz is simply honoring its contractual obligations. Stroz stands ready to comply with the Subpoena if it receives the requisite permission, or if it is ordered to do so by the Court.

*Second*, separate and apart from Stroz's contractual obligations, the Subpoena seeks the production of documents and communications that are subject to claims of privilege. Stroz is

# KIRKLAND & ELLIS LLP

The Honorable Jacqueline Scott Corley
June 13, 2017
Page 4

entitled to assert those privileges in responding to the Subpoena—Rule 45(s)(3)(A)(iii) states that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter[.]" Courts have previously quashed subpoenas served on non-party consultants retained in connection with ongoing litigation, on the basis that the documents sought were protected by a privilege asserted by a third party. *See Feist v. RCN Corp.*, No. 12-cv-80119, 2012 WL 12895679, at *3-5 (N.D. Cal. Aug. 13, 2012) (quashing subpoenas served on consultants retained to assist in drafting of plaintiff's complaint, because documents sought were protected by the attorney work product privilege asserted by plaintiff). Because Defendants and Mr. Levandowski have moved to quash the Subpoena, Stroz's assertion of Uber's, Ottomotto's, and Mr. Levandowski's privileges in its Responses and Objections is proper.

The only case cited by Waymo in support of its contention that Stroz is not entitled to assert Defendants' and Mr. Levandowski's privileges is inapposite. *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664 (7th Cir. 2009). In that case, Health Grades, Inc. sought to enforce an arbitration award against Gotham Holdings, LP in a New York action. *Id.* at 665. Gotham Holdings requested the production of related arbitration documents. *Id.* Health Grades refused, on the basis that the parties to the arbitration had pledged confidentiality. *Id.* Gotham Holdings served a subpoena on the non-party in possession of the arbitration documents. *Id.* The Seventh Circuit affirmed the district court's order directing the production of documents, noting that the parties did "not argue that any privilege protects this material," and that the confidentiality provisions specifically provided that arbitration materials may be disclosed in response to a subpoena. *Id.* at 665-66. Neither of those factors is present here—Uber, Ottomotto, and Mr. Levandowski have specifically asserted that the documents sought are protected by attorney-client and work product privileges, and the Engagement Letter does not permit the disclosure of those documents in response to a subpoena.

Moreover, contrary to Waymo's assertions, Stroz understands that the issue of whether the Due Diligence Report is privileged remains quite live. On June 8, 2011, for example, Defendants moved for relief from the Court's *Order re: Waymo's Motion to Compel* [Docket No. 566] (the "Order"). *See Defendant Uber Technologies, Inc. and Ottomotto, LLC's Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge (Dkt. 566)* [Docket No. 575]; *Defendant Otto Trucking LLC's Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge (Dkt. No. 566)* [Docket No. 572].

**Third**, separate and apart from its contractual obligation to protect asserted privileges of Uber, Ottomotto, and Mr. Levandowski, Stroz properly objected to the subpoena because several of the Subpoena's broad requests for "all communications" sought the production of information protected by its own attorney-client and work product privileges—specifically communications between Stroz and its counsel generated during the negotiation of the Engagement Letter. The Court should deny the motion to compel to the extent Waymo seeks the production of

# KIRKLAND & ELLIS LLP

The Honorable Jacqueline Scott Corley
June 13, 2017
Page 5

communications protected from disclosure by Stroz's own privilege. *See Meyer v. Colavita, USA, Inc.*, No. SACV 11-00696-AG, 2011 WL 2457681, at *2-3 (C.D. Cal. June 17, 2011) (quashing subpoena served on nonparty based on nonparty's assertion of privilege over the documents sought). Stroz will provide a privilege log of any materials withheld on those grounds at the appropriate time.

*Fourth*, many of the document requests are overly broad and, for example, purport to seek "all communications" with anyone, about any of Stroz's work in connection with the engagement. Stroz will incur significant expense reviewing such materials for production, including reviewing for potential privilege, particularly in the accelerated time frame that would be required to meet Waymo's demands. To the extent the Court grants Waymo's motion to compel the production of such materials, the Court should require Waymo to bear the significant costs that Stroz will incur to comply with those requests. Rule 45(d)(2)(B)(ii) mandates any order to produce documents in response to a subpoena to "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance," which the Ninth Circuit has held "requires the district court to shift a non-party's cost of compliance with a subpoena, if those costs are significant." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013).

## III. CONCLUSION

Stroz stands ready to produce responsive materials that Uber, Ottomotto, and Mr. Levandowski consent to produce, or that this Court orders Stroz to produce. However, to the extent the Court grants the motion to compel, Stroz respectfully requests that the Court protect Stroz's own privileged materials from disclosure, and require Waymo to bear all significant expenses that Stroz will incur in responding to the Subpoena.

Sincerely,

*/s/ Robert B. Ellis, P.C.*

Robert B. Ellis, P.C.

cc: Counsel of Record
    Special Master John Cooper

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1(i)(3)**

I, Kevin K. Chang, am the ECF User whose ID and password are being used to file this document. I hereby attest that concurrence in the filing of this document has been obtained from the signatory.

DATED:  June 13, 2017

*/s/ Kevin K. Chang*
Kevin K. Chang (SBN 300371)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: kevin.chang@kirkland.com