

|  |  |
|---|---|
| Neel Chatterjee<br>+1 650 752 3256<br>NChatterjee@goodwinlaw.com | Goodwin Procter LLP<br>135 Commonwealth Drive<br>Menlo Park, CA 94025<br><br>goodwinlaw.com<br><br>+1 650 752 3100 |

June 13, 2017

**VIA ECF**

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
United States District Court for the Northern District of California
San Francisco Courthouse Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   Otto Trucking's Opposition to Waymo's Motion to Compel Production of Documents in Response to Subpoena on Stroz Friedberg LLC (Dkt. No. 570) — *Waymo LLC v. Uber Technologies, Inc. et al.*, N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Judge Corley,

Defendant Otto Trucking respectfully submits this letter brief in opposition to Waymo's Motion to Compel the production of documents and things (the "Motion," Dkt. No. 570).[1]  On May 10, 2017, Waymo served a subpoena on non-party Stroz Friedberg LLC ("Stroz") seeking information related to Stroz's communications, factual investigation, and impressions in the course of preparing for Defendants' anticipated legal defense (the "Subpoena").  However, and as explained in this letter brief and in Otto Trucking's Motion to Quash the Subpoena,[2] this information is protected under the attorney-client privilege, the work product doctrine, and Defendants' joint defense and common interest privileges.

Months before the parties executed the Joint Defense and Common Interest Agreement ("JDA"), Defendants, along with Anthony Levandowski and Lior Ron (collectively, the "Joint Defense Group") recognized the need to take steps to jointly evaluate their legal positions against Waymo and strengthen their defenses should Waymo decide to bring suit following the Uber–Otto acquisition.  Decl. of Eric A. Tate, ECF No. 370, ¶ 11.  They retained and directed Stroz to conduct the due diligence review specified in the Term Sheet.  *Id.* ¶ 9.  Stroz was retained to "engage its professional services in conducting an investigation to ascertain facts" that "informed

---

[1] Following conferences with Special Master Cooper, the parties agreed to an omnibus briefing schedule regarding the enforcement of the Subpoena.  The parties agreed that Defendants may file a letter brief in opposition to the Motion by June 13, 2017.

[2] Otto Trucking incorporates by reference the arguments in its Motion to Quash filed June 9, 2017.  (Dkt. No. 580).



The Honorable Jacqueline Scott Corley
June 13, 2017
Page 2

the potential legal exposure and claims that could be brought by Google related to Uber's potential acquisition of Otto." *Id.*; *see also id.* Ex. 2 at 2.

Given the context in which Stroz was retained, Waymo may not seek information Stroz gathered and developed in the course of its investigation because it is protected by the attorney-client privilege. Here, Stroz was acting as an agent, through which its communications are privileged. *Segerstrom v. United States*, No. 00-cv-0833, 2001 WL 283805, at *2 (N.D. Cal. Feb. 6, 2001) ("[C]onfidential communications passing through persons acting as the attorney or client's agent are also covered by the privilege."). The conversations between Stroz on the one hand, and Otto Trucking's principals, Anthony Levandowski and Lior Ron on the other, are precisely the type of communications that are protected by the attorney-client privilege under the Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383, 390–91 (1981) (explaining that the attorney-client "privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.").

Stroz's factual investigation and the impressions it made from that investigation are also attorney work product. *Admiral Ins. Co. v. U.S. District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989); *see also* Fed. R. Civ. P. 26(b)(3). The Joint Defense Group recognized the need to prepare for a potential future suit with Waymo, and commissioned an investigation and report by Stroz to inform their legal strategy. The fact that the acquisition of Ottomotto was being finalized while the Joint Defense Group was obtaining this report is beside the point. A term sheet had already been signed. Uber had already agreed to the acquisition. The Joint Defense Group had a separate need to share information through a joint defense agreement to prepare for possible litigation. Moreover, there was no waiver here because Stroz was part of the team that helped inform the litigation strategy, and was part of the investigative team creating the work product. Work product protection is not waived by merely sharing information with third parties when parties share an interest. *Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994); *see also Sullivan v. Warminster Twp.*, 274 F.R.D. 147, 150 (E.D. Pa. 2011).

Moreover, the Joint Defense Group shared a common legal interest in defending from possible litigation months before the JDA was even executed. Defendants—Uber, OttoMotto, Otto Trucking, Mr. Levandowski, and Mr. Ron—had, from the outset, recognized the real and present risk of litigation in connection with the Uber-Otto acquisition. They were concerned that the transaction would invite a lawsuit from Waymo and, on that basis, sought legal counsel to evaluate legal risks involved in the transaction, to anticipate potential defenses, and to explore legal strategies in responding to such litigation. In other words, as Judge Alsup explained in *Rembrandt Patent Innovations, LLC v. Apple Inc.*, Defendants were "part of an on-going and joint effort to set up a common defense strategy." No. C 14-05093 WHA, 2016 WL 427363, at *7 (N.D. Cal. Feb. 4, 2016) (citation omitted). The Stroz investigation was covered under the



The Honorable Jacqueline Scott Corley
June 13, 2017
Page 3

attorney-client privilege, and the Joint Defense Group shared common legal interests in the privileged nature of that information.

In its Motion, Waymo relies on *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009), to argue that Stroz may not condition its compliance with the Subpoena on Defendants' approval. This argument mischaracterizes the issue however. *Gotham Holdings* stood for the unexceptional proposition that contractual agreements with third parties to litigation do not bar discovery because the litigants themselves are not bound by the agreements. *Id.* The Seventh Circuit noted that the parties there did "not argue that any privilege protects [the challenged] material," and that the confidentiality provisions specifically provided that arbitration materials may be disclosed in response to a subpoena. *Id.* at 665-66. But here, neither of those factors are present; instead, there are only the well-settled principles of privilege that protect communications made between attorneys and their agents on the one hand, and their clients on the other. *Upjohn*, 449 U.S. at 383. Waymo's Subpoena may not compel the production of privileged information.

Waymo also broadly categorizes the requests in its Subpoena into six groups of information, and thereby sweeps in documents outside the scope of the Court's June 5 Order on Waymo's Motion to Compel (the "June 5 Order," Dkt. No. 549). The June 5 Order left protected: (1) communications between or among MoFo and its agent, Stroz; (2) communications between or among OMM and its agent, Stroz; (3) communications between or among OMM, as the attorney for Ottomotto, and Levandowski and/or Ron and/or their attorney; and (4) communications and documents solely internal to Stroz.

Waymo's Motion, however, seeks to compel the production of these very documents. For instance, Waymo explains that "Group 1" seeks "[a]greements between Stroz and Defendants and/or third parties relating to the downloaded files, the due diligence investigation, or Ottomotto (RFP Nos. 1-5)." But within that Group, RFP No. 1 and RFP No. 5 each seeks privileged agreements that were made solely between counsel for Uber and its agent, Stroz, and between counsel for Ottomotto and Stroz. The same pertains to RFP Nos. 14 (Group 3), 18 (Group 2), and 19 (Group 2), which also seek communications made between Stroz and each of Uber or Ottomotto's counsel. In fact, Waymo's Subpoena seeks documents protected by Stroz's *own* attorney-client and work product privileges. *See, e.g.*, RFP No. 13 (Group 4). Waymo's Subpoena is therefore improper because, *inter alia*, it seeks documents and communications that are privileged.



The Honorable Jacqueline Scott Corley
June 13, 2017
Page 4

***

For the foregoing reasons, Waymo's Subpoena served on non-party Stroz improperly seeks privileged information. Otto Trucking respectfully requests an Order from the Court DENYING Waymo's Motion to Compel.

                                                Respectfully submitted,

                                                 _/s/ Neel Chatterjee_
                                                Neel Chatterjee
                                                GOODWIN PROCTER LLP

                                                *Attorneys for Defendant*
                                                OTTO TRUCKING LLC

cc: All counsel of record (via ECF)



The Honorable Jacqueline Scott Corley
June 13, 2017
Page 5

## CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on June 13, 2017. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed this 13th day of June 2017.

                                                        /s/ Neel Chatterjee
                                                        Neel Chatterjee