quinn emanuel trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

June 14, 2017

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California        **REDACTED VERSION**
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102        **FILED PUBLICLY**

Re:     <u>Waymo LLC v. Uber Technologies, Inc., et al</u>., N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Waymo respectfully submits this Opposition to Anthony Levandowski's Motion to Quash the subpoena that Waymo served on third party Stroz Friedberg, LLC ("Stroz").

**Introduction**

Non-party Levandowski again seeks to intervene in this case, this time to make a motion to quash a subset of requests included in a Subpoena that Waymo has served on Stroz. This is just the latest attempt by Levandowski to reargue issues ***that have already been decided*** in a continued quest to obstruct Waymo's efforts to retrieve its stolen files and to understand the full extent of their distribution and use. Indeed, Levandowski's motion is explicitly predicated on a reversal of the Court's order requiring production of the Stroz Report and attachments (Dkt. 566), but that order is not properly presented for reconsideration here, and Levandowski's motion should be rejected on that basis alone. To the extent Levandowski argues that his personal right against self-incrimination can be extended to others via (here non-existent) attorney-client and common interest privileges under *Fisher*, that issue too has already been decided against Levandowski (Dkt. 202). There is nothing new here. Levandowski's motion must be denied consistent with the prior rulings in this case.

**Background**

The history and details regarding Waymo's subpoena to Stroz (the "Subpoena") are recounted in Waymo's Motion To Compel Stroz's Compliance (Dkt. 570), which is incorporated here by reference. To summarize, the Subpoena seeks information related to a "due diligence" investigation that Stroz performed in furtherance of Uber's acquisition of Anthony Levandowski's start-up company Ottomotto. The Subpoena was served on May 10, with a May 25 return date. On May 22, Waymo designated Request Nos. 3 and 30 in the Subpoena as "expedited requests" under the Court's Preliminary Injunction Order. On June 7, Stroz served Responses and Objections to the Subpoena (Dkt. 570-3), refusing to produce documents in response to any of the Subpoena requests because such documents are allegedly (i) subject to claims of privilege by Defendants and/or other third-parties; and (ii) subject to a confidentiality provision in Stroz's agreement with Defendants and/or third-parties. (*Id.*) On June 8, Waymo filed a Motion To Compel (Dkt. 570), explaining how the Court's Order finding that the requested documents are not subject to any valid claim of privilege (Dkt. 566 (hereafter, "Privilege Order")) moots Stroz's first objection. The Motion To Compel further explains that Stroz's second objection is not proper because a mere confidentiality agreement

between Stroz and its clients cannot defeat an otherwise duly issued and enforceable subpoena. *See Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009).

On June 9, Defendants filed motions to quash the Subpoena (Dkts. 580 (Otto Trucking) & 581 (Uber/Ottomotto)), which do little more than rehash their respective objections to the Magistrate Judge's Privilege Order (Dkts. 572 (Otto Trucking) & 575 (Uber/Ottomotto)). Also on June 9, non-party Levandowski filed a motion to intervene and to quash the Subpoena (Dkt. 583), which rehashes his own objections to the Privilege Order (Dkt. 574) and makes two additional arguments based on his alleged rights under the Fifth Amendment and his purported privacy interests.

For the reasons set forth below, Levandowski's motion to quash lacks merit. The Court should deny it, and the other motions to quash,[1] and grant Waymo's motion to compel, in order to ensure Stroz's full compliance with the Subpoena without further delay.

**Argument**[2]

**I.    Levandowski Lacks Standing To Move To Quash**

"In general, a party has no standing to quash a subpoena served upon a third party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena." *Wells Fargo & Co. v. ABD Ins.*, Case No. No. C 12-03856 PJH, 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012). The party seeking to quash bears the burden of establishing standing with competent evidence. *United States v. Tomison*, 969 F. Supp. 587, 596 (E.D. Cal. 1997). Absent standing of the moving party, the court lacks jurisdiction to quash. *Id.*

Levandowski fails to establish standing. Although his attorneys have argued that his attorney-client and common interest privileges are implicated, Levandowski has never offered evidence in support of these assertions.[3] *Compare Loop AI Labs Inc. v. Gatti*, Case No. 15-cv-00798-HSG (DMR), 2017 WL 111591, at *2 (N.D. Cal. Jan. 11, 2017) (holding that non-party had standing to make a motion to quash where chairman submitted a declaration stating that an attorney-client relationship existed). In fact, when asked about the nature and timing of his alleged common interest with Defendants at deposition, Levandowski refused to answer. (Dkt. 366-8, Levandowski Depo. Tr. at 37:7-38:3, 34:3-35:13.) Levandowski also declined to file any public declaration or evidence in support of the alleged common interest in opposing Waymo's motion to compel production of the Stroz due diligence materials from Defendants, and the Court denied his request to file a secret declaration *in camera*. (Dkt. 566 at 7.)

Levandowski's vague, non-specific claims that he *may* have a right to privacy similarly fails to confer standing for this motion. Levandowski refuses to even confirm, much less explain, the privacy right at issue, offering instead arguments that are entirely hypothetical and abstract. (Dkt. 583 at 8 ("While such devices, *if they exist*, could conceivably contain relevant materials, they would *likely* also contain all manner of other materials . . . over which Mr. Levandowski *might* have other personal

---

[1] Per the parties' agreed-upon briefing schedule, Waymo will file its opposition to each of Defendants' motions to quash on June 15.

[2] Waymo expressly incorporates by references all arguments made in its consolidated response to the various objections to the Privilege Order (Dkt. 585), as well as its motion to compel documents withheld by Levandowski on the basis of the Fifth Amendment (Dkt. 595).

[3] Levandowski's claims regarding his Fifth Amendment privilege are predicated on the existence of his alleged attorney-client and common interest privileges and therefore also fail.

privileges and significant privacy interests . . . .") (emphasis added).)  Because Levandowski fails to offer evidence to establish a protectable interest, he lacks his standing, and the Court should deny the motion on this ground alone.

## II. The Court Should Deny Levanodwski's Motion To Intervene

This is now the fourth time that Levandowski has sought intervention in this case to largely parrot the arguments asserted by Defendants.  (*See, e.g.*, Dkts. 151, 371, 466, & 583.)  These repeated requests for intervention, which are virtually always untimely, have unnecessarily complicated these proceedings and delayed discovery.  Intervention is also inequitable given Levandowski's violations of the Court's order that he comply with his own discovery obligations.  (*E.g.*, Dkt. 596 at 2-3.)

The Court should curtail Levandowski's repeated efforts to intervene, particularly where, as here, intervention is not justified under the Federal Rules.  First, Levandowski's request to intervene and quash the Subpoena is not "timely," because the motion was not brought prior to the May 25 return date on the Subpoena.  Fed. R. Civ. P. 45(d)(3)(A); *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015) (noting that timeliness is a threshold requirement for intervention as of right under Fed. R. Civ. P. 24(a)(2)).  Second, as discussed below, Levandowski has no "significantly protectable interest" because, as the Court has already found, his privilege objections are meritless.  (*See generally* Dkt. 566.)  Third, denial of intervention will not impede Levandowski's ability to protect his purported rights, because even where Levandowski has intervened in the past, he has steadfastly refused to offer pertinent evidence, opting instead to hide behind his baseless assertions under the Fifth Amendment.  Fourth, Levandowski's interests are already adequately represented by the Defendants, who have asserted the same "common interest" arguments advanced by Levandowski to suppress the same evidence that Levandowski claims is privileged to him.  Thus, under these circumstances, the Court should deny Levandowski's request to intervene, whether as a matter of right or permissively.

## III. To The Extent Levandowski's Motion Is A Disguised Motion To Reconsider The Court's Privilege Order, It Should Be Denied

Most of the issues raised in Levandowski's motion to quash simply seek to reargue points that Levandowski and Defendants already lost before the Magistrate Judge.  (*See* Dkt. 566.)  Those issues are presently the subject of Motions for Relief to the District Court Judge, which Waymo has opposed.  (Dkts. 572, 574, 575, & 585.)  Until those Motions are resolved and/or Levandowski properly seeks reconsideration of the Court's ruling on the privilege issues, he should not be heard to reargue the same issues again here.  *See* N.D. Cal. Civ. L.R. 7-9(b) ("No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion."); *Ibrahim v. Dept. of Homeland Security*, Case No. C 06-00545 WHA, 2014 WL 12641572, at *2 (N.D. Cal. Apr. 25, 2014) (Alsup, J.) (refusing to consider arguments that "essentially" sought reconsideration of Court's prior order without leave of court).  Accordingly, the Court should reject Levandowski's arguments on all issues that were already decided by the Privilege Order.

## IV. The Court Should Deny Levandowski's Motion To Quash

Levandowski's motion[4] also fails on the merits.

---

[4] Levandowski's motion only seeks to quash the Subpoena insofar as it seeks (i) materials Levandowski provided to Stroz; (ii) statements Levandowski made to Stroz; and (iii) records that reference such materials and statements.  He is not challenging Requests 1-5, 10, or 29.  (*See* Dkt.

The party seeking to quash a subpoena bears the "burden of persuasion" that the discovery sought is not proper. *United States v. Real Property & Improvements Located at 2441 Mission St., San Francisco, California*, No. C 13-2062 SI, 2013 WL 6774081, at *2 (N.D. Cal. Dec. 23, 2013). Levandowski cannot meet that burden here. As the Court has already found, there is no underlying privilege that protects the information provided from Levandowski to Stroz, and such information must therefore be produced. Alternatively, even if some underlying privilege did exist, the sharing of such information among the purported joint defense group waived the privilege because the parties lacked a common legal interest. Finally, the law is clear that *Levandowski* has no Fifth Amendment right with respect to documents within the custody of *Stroz*. For all of these reasons, the Court should deny the motion to quash.

### A. No Attorney-Client Privilege Existed Between Levandowski And Stroz.

The Court has already found that no privilege protects Levandowski's communications with Stroz. (Dkt. 566 at 7-10.) This is not a motion for reconsideration (*supra* Section III), and Levandowki's attempt to reargue the issue is improper and should be rejected. Regardless, Levandowski adds nothing to what the Court previously found unpersuasive.

The attorney-client privilege only protects from disclosure "confidential communications made by a client to an attorney to obtain legal services . . . ." *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). Levandowski admits that "the information in question here was not first communicated by Mr. Levandowski to his attorney, but was instead communicated directly to Stroz . . . ." (Dkt. 583 at 4.) Yet he argues these communications are protected because "Stroz was retained by the common interest group." This argument is wrong as both a factual and a legal matter. Stroz was not retained by the "common interest group"; Stroz was retained by some members of the "group" to investigate other members of the "group." (Dkt. 370-3; Dkt. 566 at 7-8.) Moreover, contrary to Levandowski's suggestion, the common interest doctrine does not create a privilege where one does not otherwise exist. Rather, the doctrine is a limited exception to ordinary waiver rules, "designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). Thus, Levandowski's communications with Stroz—admittedly outside the presence of any attorney, and to an agent that was not acting at his direction or the direction of his attorney—were never privileged.

Levandowski's cited authority does not suggest a different result. In *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989), the court's holding was based on the finding that the agent in question had been retained "on behalf of **both clients**." *Id.* at 244 (emphasis added). Here, by contrast, the evidence shows (Dkt. 370-3)—and the Court has already found (Dkt. 566 at 7-8)—that Stroz was retained by Uber and Ottomotto, **not** Levandowski, to serve only Uber and Ottomotto's interests. Similarly, in *United States v. McPartline*, 595 F.2d 1321 (7th Cir. 1979), the defendant's communications to an investigator hired by his co-defendant were expressly made pursuant to the common legal goal of attacking the credibility of an adverse trial witness—that is, the investigator's work was on behalf of **both defendants** at the direction of their respective attorneys. *Id.* at 1335-37. Again, this is distinguishable from the current factual setting, where the Court has already found that Stroz was retained in furtherance of only Uber and Ottomotto's commercial interests. (Dkt. 566 at 7-8.) Finally, *In re Wagner*, Case No. 1:06-MC-127 (LEK/RFT), 2006 WL 3699544 (N.D.N.Y. Dec.

---

583 at nn. 2, 4, & 5.) He also does not challenge the remaining requests to the extent they seek information provided by parties other than Levandowksi or relate to analyses that do not mention what Levandowski provided to Stroz. (*See generally* Dkt. 583.)

13, 2006), did not involve an attorney's agent at all, and it merely stands for the different and more limited proposition that "one attorney is permitted not only to confer with another attorney but with the other attorney's party." *Id.* at *12. Because there is no underlying privilege to protect Levandowski's communications with Stroz, such communications are discoverable. This alone is grounds to deny Levandowski's motion.[5]

### B. No Common Legal Interest Existed Amongst Levandowski, Uber, And Ottomotto.

Levandowski's motion must also fail because, as the Court has already found, no valid common legal interest existed among Levandowski, Uber, and Ottmotto to preclude waiver of any otherwise privileged communications. Again, in arguing for the opposite conclusion, Levandowski rehashes the same arguments that he and Defendants previously presented and that the Court rejected. (S*upra* Section III.) These arguments are even less persuasive the second time around.

Contrary to Levandowski's suggestion (Dkt. 583 at 4-5), the Court carefully considered all the evidence of record in determining that the common interest doctrine does not apply. The Court analyzed the many declarations offered by counsel for the relevant parties and found that these declarations failed to address the key details underlying the purpose of the Stroz investigation and intentionally omitted from the record critical evidence regarding that purpose. (Dkt. 566 at 20.) The Court also considered, and distinguished, the case law Levandowski cites again now, which shows only that parties to a potential merger or acquisition can form a common legal interest under certain circumstances not present here. (*Id.* at 16-17.) The Court concluded that the Stroz engagement letter was likely backdated and did not, in any event, create a common legal interest. (*Id.* at 18-19.) And, the Court found that the March 2016 letter from Levandowski's counsel to Stroz actually undermined the argument that a common legal interest existed, because—in a paragraph dealing with privileges—the letter refers to an alleged common interest with Otto but not Uber. (*Id.* at 18.) In sum, the Court's fact-intensive analysis was well-grounded in the objective, contemporaneous evidence, and Levandowski provides no reason to second-guess those findings now. There was no common interest with respect to materials provided to Stroz, which resulted in waiver of any otherwise applicable privilege. This is an additional reason to deny Levandowski's Motion.

### C. The Fifth Amendment Does Not Apply To Information Possessed By Stroz.

To the extent Levandowski argues that his Fifth Amendment privilege adds anything to the analysis (Dkt. 583 at 3, 6-7), he is wrong.

#### 1. The Fifth Amendment Does Not Protect Materials Levandowski Provided To Stroz.

Levandowski's argument to quash the Subpoena on Fifth Amendment grounds is more limited than his request to quash on attorney-client privilege grounds. For materials that Levandowski provided to Stroz (*i.e.*, Request Nos. 9, 12, 13, 16, 20, 30, and 31), he argues that "when an individual is privileged against production of a record pursuant to the Fifth Amendment and transfers that record as part of a common interest communication . . . the attorney or agent possessing it is immune from compelled disclosure of

---

[5] Levandowski's Fifth Amendment argument is primarily predicated on the theory that his Fifth Amendment rights are "extend[ed]" to information in the possession of Stroz by virtue of his attorney-client and common interest privileges. As discussed below, this argument lacks merit

the record under the reasoning of *Fisher*." (*See id.* at 6 & n.2.) This argument fails, for several reasons.

First, Levandowski fails to explain how documents responsive to these requests might potentially incriminate him. (Dkt. 583 at 3, 6-7.) Rather, as has been his practice throughout this case, Levandowski relies simply on blanket, conclusory allegations of privilege that are insufficient to meet his burden to quash the Subpoena. (Dkt. 596 at 3-4.) Also, compelling Stroz's production of evidence that Levandowsi provided does not require Levandowski to undertake a "testimonial" act, and therefore does not even implicate the Fifth Amendment at all. (*Id.* at 6-7.) Levandowski fails to demonstrate that the "act of production" of these materials by Stroz can incriminate him, particularly given that his theft of Waymo information is "foregone conclusion" based on the current record. (*Id.* at 4-6, 7.)

Additionally, Levandowski has no possible Fifth Amendment privilege in documents and information that is within the custody of Stroz, a third-party. As the Ninth Circuit and Supreme Court have held "'a person inculpated by materials sought by a subpoena issued to a third party cannot seek shelter in the Self-Incrimination Clause of the Fifth Amendment.'" *In re Grand Jury Subpoena (Maltby)*, 800 F.2d 981, 983 (9th Cir. 1986), *quoting S.E.C. v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 742-43 (1984). This principle applies to all categories of evidence responsive to the Subpoena that are in the possession of Stroz and eliminates any Fifth Amendment consideration from the analysis.

In suggesting otherwise, Levandowski continues to stretch the Supreme Court's holding in *Fisher v. United States*, 425 U.S. 391 (1976), beyond recognition, arguing that an individual can prevent a third party, who here is not even his agent, from complying with a subpoena by asserting his personal privilege against self-incrimination over the documents sought. (Dkt. 583 at 6.) When Levandowski made a close variation of that same argument in support of his request to withhold the identity of Stroz on Defendants' privilege logs, Judge Alsup rejected it, explaining that only the attorney-client privilege, not a client's privilege against self-incrimination, is at issue when documents are sought from an attorney. (Dkt. 202.)

Levandowski's reliance on *United States v. Sideman & Bancroft, LLP*, 704 F.3d 1197, 1205 (9th Cir. 2013) (affirming order compelling production), is also misplaced. This Court previously considered *Sideman* in ruling on Levandowski's request to conceal the identity of Stroz. (Dkt. 202 at 7 n.*.) There, Judge Alsup noted that, while some language in *Sideman* appeared to "superficially" support Levandowski's position, such language conflicted with the express holding of the Supreme Court in *Fisher* that "a client's 'Fifth Amendment privilege is . . . *not violated by* enforcement of [document] summonses directed toward their attorneys.'" (*Id.* (*quoting Fisher*, 425 U.S. at 397).) To the extent there is any conflict between the Supreme Court's holding in *Fisher* and the Ninth Circuit's holding in *Sideman* (which is far from clear), Judge Alsup ruled that the Court will "follow[] *Fisher*'s express holding." (*Id.*)

Of course, with respect to the subpoena at issue here, Waymo is not seeking documents from Levandowski's attorneys. Waymo is seeking documents from Stroz, a third-party forensics firm that was not even operating as Levandowski's agent. Thus, in a last-ditch effort to circumvent the rule that "[t]he privilege against self-incrimination is personal, and applies only to compulsion of the individual holding the privilege," *Couch v. United States*, 409 U.S. 322, 328 (1973), Levandowski attempts to invoke an alleged exception for situations where the party claiming privilege maintains "constructive possession" of the disputed documents that "is so clear . . . as to leave the personal compulsions upon the accused substantially intact . . . ." (Dkt. 583, *quoting Couch*, 409 U.S. at 333.) But constructive possession was not at issue in *Couch*, and Levandowski fails to cite a single instance of any court anywhere applying this so-called *Couch* exception. Indeed, the Ninth Circuit has suggested that such an exception would apply only where the objecting party maintains actual control of documents "while merely storing them on the premises of a third party." *In re Grand Jury Subpoena (Maltby)*,

6

800 F.2d 981, 984 (9th Cir. 1986); *see also United States v. Hershenow*, 680 F.2d 847, 856-57 (1st Cir. 1982) (rejecting *Couch* constructive possession argument where the objecting party had relinquished "the right to immediate possession").

Regardless, Levandowski should not be heard to argue that he maintained "constructive possession" over any documents at Stroz. Levandowski's only support for that proposition appears to be a letter agreement between his attorney and Stroz. (Dkt. 583 at 7; *see also* Dkt 546-8 (Letter).) But important information concerning the disposition of information Levandowski provided to Stroz is redacted, making it impossible for Waymo to understand the context of what Levandowski is now citing.[6] (Dkt. 568-8.) Levandowski cannot rely on a redacted agreement while keeping Waymo in the dark about the letter's broader context—this is yet another example of Levandowski and Defendants improperly using the privilege as both a sword and a shield. Moreover, the unredacted portions of the letter agreement ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (Dkt. 568-8 at UBER00017894.)

### 2. The Fifth Amendment Does Not Protect Information That Stroz Created That Happen To Reference Materials That Levandowski Provided To Stroz.

For the category of Requests that Levandowski characterizes as seeking "records that contain recitations or discussions of materials provided by Mr. Levandowski to Stroz" (*i.e.*, Request Nos. 6-8, 11, 13-28, and 31), Levandowski goes a step further, arguing that his personal Fifth Amendment privilege not only protects materials he provided to Stroz but also materials that Stroz itself prepared that reflect materials Levandowski provided to Stroz. (Dkt. 583 at 7-8.) Again, the Fifth Amendment does not sweep nearly as broadly as Levandowski contends.

Again, Levandowski fails to specifically identify materials in a manner sufficient to establish the privilege. Additionally, the Fifth Amendment cannot apply to such materials, because requiring production of documents that were created by Stroz does not amount to compelling evidence that is both "testimonial" and "incriminating" from Levandowski. Even if it did, the "act of production" does cannot further incriminate Levandowski because his theft of Waymo information is a "foregone conclusion" based on the current evidentiary record. (Dkt. 596.) Finally, and most importantly, the Fifth Amendment, which is a personal privilege, does not apply to materials created by and in the possession of Stroz. *Couch v. United States*, 409 U.S. 322, 328 (1973) ("The privilege against self-incrimination is personal, and applies only to compulsion of the individual holding the privilege.").

The cases cited by Levandowski (at p. 8) relate to the different issue of whether the holder of the privilege may be compelled to produce a privilege log describing information *in his own possession*. Additionally, these cited cases are also contradicted by the law in this District, as Waymo argued it is motion to compel production of documents withheld by Levandowski on Fifth Amendment grounds. (Dkt. 596 at 4, *citing United States v. Real Property & Improvements Located at 2366 San Pablo Avenue, Berkeley, California*, 2014 WL 5335266, at *3 (N.D. Cal. Oct. 17, 2014).)

The Fifth Amendment allows Levandowski to refuse to testify against himself. It does not extend to the production of documents in the possession of a third party who is not even Levandowski's agent.

---

[6] On June 14, the Court granted Waymo's motion to compel Uber to produce an unredacted version of this letter. (Dkt. 621.)

        **D.**        **Levandowski Fails To Establish Any Other "Personal Privileges" Or "Significant Privacy Interests" That Would Justify Quashing The Subpoena.**

Levandowski contends that certain of the Requests in the Subpoena encompass any "devices, such as computers, that Mr. Levandowski may have provided to Stroz" and that such requests are "Overbroad, Burdensome, and Invasive." (Dkt. 583 at 8.) Such objections are meritless.

As an initial matter, the Court should reject the "overbreadth" and "burdensome" objections because, even if Levandowski has standing to assert a privilege or personal right, he clearly lacks standing to assert these other objections, which belong solely to Stroz.[7] *Eclat Pharms, LLC v. West-Ward Pham. Corp.*, Case No. CV 13-6252-JAK (PLAx), 2014 WL 12607663, at *1 (C.D. Cal. Mar. 26, 2014) (holding that defendants lacked standing to argue that subpoenas to third-parties were overbroad, unduly burdensome, and not reasonably likely to lead to admissible evidence); *see also Drummond Co., Inc. v. Collingsworth*, Case No. 13-mc-80169-JST (JCS), 2013 WL 6074157, at *15 (N.D. Cal. Nov. 18, 2013) ("[A] party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.").

The Court should also reject Levandowski's "privacy" objection because he fails to adequately allege any cognizable privacy interest in the materials called for by the Subpoena. Levandowski does not have a cognizable privacy interest in the files he stole from Waymo or in any documents related to other "Bad Acts" that were the subject of Stroz's investigation. Indeed, Levandowski does not even state unequivocally that he has a privacy interest in *any* responsive materials, and his hypothetical objection to the production of any documents that may exist and that may implicate privacy concerns cannot serve as the basis for his motion to quash. *Chevron Corp. v. Donzinger*, Case No. 12-mc-80237 CRB (NC), 2013 WL 4536808, at *9-10 (N.D. Cal. Aug. 22, 2013 (denying motion to quash where movant failed to articulate a reasonable expectation of privacy in requested materials).

Finally, Levandowski argues that, to the extent his electronic devices are in the possession of Stroz, the parties will have to "work out an examination protocol that protects [Levandowski's] legitimate privacy interests." (Dkt. 583 at 8.) This argument is not well taken. Stroz can produce materials under the protective order governing this case, which is more than adequate to ensure that information such as social security numbers is not broadly disseminated. Levandowski should not be permitted to further delay the production of materials in response to the Subpoena by requesting some unspecified protocol to protect a privacy interest that only hypothetically exists.

        **E.**        **Levandowski's "Opposition" To Waymo's Motion To Compel**

On June 13, Levandowski filed an "opposition" to Waymo's motion to compel Stroz's compliance with the Subpoena. (*See* Dkt. 610.) But, Waymo's motion to compel does not seek to compel anything from Levandowski. To the extent Levandowski claims a limited right to object on the basis of his personal privilege or interest, he has already does so via his motion to quash. The opposition to the motion to compel is unnecessary, procedurally improper, and should be stricken.

For these reasons, the Court should deny Levandowski's motion to quash and enforce the Subpoena.

---

[7] Stroz asserts "overbreadth" and "burdensome" objections only as part of its improper, boilerplate objections in response to every Request. (*See generally* Dkt. 570-3.) Stroz does not, however, purport to withhold any documents on these bases.

Respectfully,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

cc:     All counsel of record; Special Master John Cooper