quinn emanuel trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

June 15, 2017

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Waymo respectfully submits this Opposition to Defendant Otto Trucking, LLC's ("Otto Trucking") motion to quash the subpoena that Waymo served on third party Stroz Friedberg, LLC ("Stroz").[1]

**Background**

Waymo hereby incorporates the factual and procedural background set forth in its opposition to Uber and Ottomoto's motion to quash, which is filed concurrently herewith.

**Argument**

Because Defendants/Levandowski have filed a combined *six* briefs on the Subpoena, Waymo's various oppositions overlap to some extent. In the future, to ease the number of filings and reduce duplication, Waymo proposes that Defendants consolidate their responses to third-party discovery.

### I.   Otto Trucking Lacks Standing.

"In general, a party has no standing to quash a subpoena served upon a third party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena." *Wells Fargo & Co. v. ABD Ins.*, Case No. C 12-03856 PJH, 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012). The party seeking to quash bears the burden of establishing standing with competent evidence. *United States v. Tomison*, 969 F. Supp. 587, 596 (E.D. Cal. 1997). Absent standing of the moving party, the court lacks jurisdiction to quash. *Id.*

Otto Trucking fails to establish standing. Throughout this case, Otto Trucking has failed to offer declarations or any other evidence from either Anthony Levandowski or Lior Ron that either of these individuals were communicating with Stroz in their capacities as principals of Otto Trucking. The only outside counsel declaration that Otto Trucking has offered comes from Adam Bently (Dkt. 376),

---

[1]   For purposes of this opposition, Waymo hereby incorporates by reference (i) its opposition to the motion to quash of Defendants Uber and Ottmotto, filed concurrently herewith (ii) its prior briefing concerning the Subpoena (Dkts. 570 & 628); (iii) its briefing on its motion to compel due diligence materials from defendants (Dkts. 321, 445, & 474); and (iv) its consolidated response to Defendants' motions for relief from the nondispositive pretrial order of the Magistrate Judge (Dkt. 585).

who is now in-house counsel for Defendant Uber.  (*id.* ¶ 1.)  Tellingly, the Bently Declaration is silent as to the capacity in which Levandowski and Ron were communicating with Stroz.  The declarations of Levandowski's and Ron's personal attorneys are also silent on this issue.  (Dkts. 381 & 375.)

In addition, the evidence of record demonstrates that Stroz was not retained as an agent of attorneys representing Otto Trucking.  The Stroz retention agreement makes no mention of Otto Trucking (who was not a party to the Term Sheet).  (Dkt. 370-3; Dkt. 585 at 3.)  Additionally, the Friedberg Declaration offered by Defendants makes clear that Stroz understood its clients to be only Uber and Ottomotto—*not* Otto Trucking.  (Dkt. 380 ¶¶ 3, 5.)

Under these circumstances, there is not even a threshold showing that Otto Trucking has a personal, protectable interest or privilege in the materials that Levandowski and Ron provided Stroz.  Thus, Otto Trucking has failed to establish its standing, and the Court should deny its motion to quash on these grounds alone.

## II. Otto Trucking's Motion Is A Disguised Motion To Reconsider The Court's Privilege Order and Should Be Summarily Denied.

All of the issues raised in Otto Trucking's motion to quash simply seek to reargue points that Defendants already lost before the Magistrate Judge.  (*See* Dkt. 566.)  Those issues are presently the subject of Motions for Relief to the District Court Judge, which Waymo has opposed.  (Dkts. 572, 574, 575, & 585.)  Until those Motions are resolved and/or Otto Trucking properly seeks reconsideration of the Court's ruling on the privilege issues, it should not be heard to reargue the same issues again here.  *See* N.D. Cal. Civ. L.R. 7-9(b) ("No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion."); *Ibrahim v. Dept. of Homeland Security*, Case No. C 06-00545 WHA, 2014 WL 12641572, at *2 (N.D. Cal. Apr. 25, 2014) (Alsup, J.) (refusing to consider arguments that "essentially" sought reconsideration of Court's prior order without leave of court).  Accordingly, the Court should summarily reject Otto Trucking's arguments on this motion and disregard Otto Trucking's re-arguments and waived arguments.

## III. If the Court Entertains the Merits of Otto Trucking's Disguised Reconsideration Motion (It Should Not), The Court Should Also Deny Otto Trucking's Motion To Quash.

Otto Trucking's motion also fails on the merits.  The party seeking to quash a subpoena bears the "burden of persuasion" that the discovery sought is not proper.  *United States v. Real Property & Improvements Located at 2441 Mission St., San Francisco, California*, No. C 13-2062 SI, 2013 WL 6774081, at *2 (N.D. Cal. Dec. 23, 2013).  Otto Trucking cannot meet that burden here.

### A. Otto Trucking Fails To Object To Specific Requests In The Subpoena.

As an initial matter, Otto Trucking cannot meet its burden to quash the Subpoena because it does not even bother to explain, even in general terms, the subject matter or the requests that it wishes to quash.  Certainly, Otto Trucking cannot claim that *every* single document requested by the Subpoena falls within the scope of its attorney-client privilege.  Not even Levandowski—whose communications Otto Trucking seeks privilege over—makes such a sweeping claim.  (Dkt. 583 nn. 2, 4, & 5.)  Where, as here, a movant seeks to quash a subpoena based on what amounts to a "blanket assertion" of privilege, courts have held that this fails, as a matter of law, to satisfy the movant's burden.  *Robocast, Inc. v. Microsoft Corp.*, Case No. 1:13-mc-00104-RGA, 2013 WL 1498666, at *2 (D. Del. Apr. 12, 2013).  The fact that Otto Trucking would file a motion that completely ignores the Requests of the Subpoena entirely confirms that it, and the other Defendants, are abusing this process to improperly

2

re-litigate the Privilege Order.

### B. Communications From Levandowski To Stroz Are Not Protected By Otto Trucking's Attorney-Client Privilege.

Otto Trucking contends that information transmitted to Stroz by "Anthony Levandowski and Lior Ron, Otto Trucking principals, are . . . protected by [Otto Trucking's] attorney-client privilege" because these individuals were communicating on behalf of Otto Trucking in their representative capacities. (Dkt. 580 at 2.) This is an argument that Otto Trucking did not bother to previously make to the Magistrate Judge in opposing Waymo's motion to compel production of the due diligence materials. (Dkt. 585 at 3 & n.2.) In any event, it lacks merit. The Stroz retention agreement makes clear that Stroz was retained on behalf of Uber and Ottomotto—*not* Otto Trucking. (Dkt. 370-3 at 1; Dkt. 585 at 3.) Moreover, there is absolutely no evidence that Levandowski and Ron were communicating with Stroz in their representative capacities at this time for the purposes of obtaining legal advice for Otto Trucking. Neither Levandowski nor Ron offer declarations attesting to this fact. And, Otto Trucking's own former outside counsel declarant is notably silent on this issue. (Dkt. 376.) As the Court already correctly found, "the Term Sheet and [Levandowski's personal counsel's] side agreements with Stroz establish that Stroz's interview of Levandowski was performed in Levandowski's individual capacity," and not in his representative capacity. (Dkt. 566 at 10.)

Otto Trucking takes issue with the Court's finding that Levandowski was communicating with Stroz in his individual capacity, arguing that even if Levandowski had "personal incentives to participate in the investigation" that "does not diminish the fact that communications Mr. Levandowski and others made to Stroz were needed for Defendants' counsel to provide legal advice." (Dkt. 580 at 3.) Again, this reconsideration argument is not proper in this motion. But, simply because Levandowski's cooperation was allegedly "needed" does not automatically render such cooperation subject to the attorney-client privilege. As the Court correctly found, Levandowski was represented by separate counsel, and the nature and circumstances of his communications indicate that they were taken purely out of his own self-interest to comply with the Term Sheet—*not* for obtaining legal advice of behalf of Otto Trucking. There were no communications subject to Otto Trucking's attorney-client privilege, and the Court should deny its motion to quash on these grounds alone.[2]

### C. No Common Legal Interest Existed Amongst Levandowski, Uber, And Ottomotto.

The motion to quash also fails because even if certain of the communications were subject to Otto Trucking's attorney-client privilege, the privilege was waived by the sharing of these communications with, at least, Uber who did not share a common legal interest at the relevant time.

---

[2] Otto Trucking did not raise the issue of work product previously before the Magistrate Judge, and it does not assert work product protection as a basis to quash the Subpoena here. Nor could it—Otto Trucking cannot credibly claim that any of the due diligence materials were created for the purposes of anticipated litigation. *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 440 (N.D. Cal. 2010) (finding that work product did not attach to documents that "were not created in anticipation of litigation but rather, would have been created in substantially similar form even if no litigation was anticipated."). Additionally, the Court need not even consider the work product claim because even if work product protection did attach to some documents, such protection was waived by the sharing of these materials amongst entities that lacked a common legal interest at the relevant time and in a manner that is inconsistent with the adversarial system. (*Infra* Section III.C.)

Again, in arguing for the opposite conclusion, Otto Trucking improperly rehashes the same arguments that Defendants previously presented and that the Court rejected. (*Supra* Section II.) None establish that the Court clearly erred in finding that no common interest existed.

Otto Trucking argues that "the Court's finding of a lack of a common interest . . . was based largely on the conclusion that the Term Sheet was not binding." (Dkt. 580 at 4.) This, however, mischaracterizes the Court's Privilege Order. The Court carefully considered all the evidence of record in determining that the common interest doctrine does not apply. The Court analyzed the many declarations offered by counsel for the relevant parties and found that these declarations failed to address the key details underlying the purpose of the Stroz investigation. (Dkt. 566 at 20.) The Court also considered, and distinguished, the case law Otto Trucking cites that parties to a potential merger or acquisition can form a common legal interest under certain circumstances not present here. (*Id.* at 16-17.) The Court concluded that the Stroz engagement letter was likely backdated and did not, in any event, create a common legal interest. (*Id.* at 18-19.) And, the Court found that the March 2016 letter from Levandowski's counsel to Stroz further undermined the conclusion that a common legal interest existed, because this letter indicated that Levandowski had a common interest with Otto but was silent as to Uber. (*Id.* at 18.) In sum, the Court's fact-intensive analysis was well-grounded in the objective, contemporaneous evidence, and Otto Trucking provides no reason to second-guess those findings here. (Dkt. 585 at 4-10.)

Otto Trucking also (again improperly) disputes the Court's finding that the Stroz investigation was serving a "due diligence" function. (Dkt. 580 at 4-5.) But, the Court's findings were fully supported by the Term Sheet itself, which "calls for the investigation, sets its parameters, and even in detail describes what information the diligenced employees must give to Stroz." (Dkt. 566 at 15; Dkt 585 at 8-10.) Moreover, the fact that the investigation culminated in an "interim" report that was provided to Uber's outside counsel shortly before the acquisition was consummated was strong evidence that the "due diligence" investigation was in furtherance of commercial, and not legal interests. (*Id.* at 16 ("There is no reason for Uber to receive that interim report other than to evaluate whether to sign the Put Call Agreement. And, indeed, it appears that within days of receiving the interim Stroz report Uber did just that."). In sum, the Court's rulings that no common interest existed were amply supported by the evidence and consistent with the governing law. *See Elan Microelectronics Corp. v. Apple, Inc.*, 2011 WL 3443923, at *2 (N.D. Cal. Aug. 8, 2011) (holding that the common interest doctrine "does not extend to communications about a joint business strategy that happens to include a concern about litigation."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579-80 (N.D. Cal. 2007) (holding that even where defendant and bidders may have been likely to become joint defendants, the common interest doctrine is still limited to only those communications that were specifically "designed to further [the joint legal] effort or made "in the course of formulating a common legal strategy.").

### D.    Otto Trucking's "Opposition" To Waymo's Motion To Compel Is Improper.

On June 13, Otto Trucking filed an "opposition" to Waymo's motion to compel Stroz's compliance with the Subpoena. (*See* Dkt. 617.) But, the motion to compel does not seek to compel anything from Otto Trucking. To the extent Otto Trucking claims a limited right to object on the basis of its personal privilege or interest, it has already does so via its motion to quash. The opposition to the motion to compel is therefore unnecessary and procedurally improper. Waymo requests that the Court strike Otto Trucking's "opposition."

Otto Trucking's "opposition" to Waymo's motion to compel is particularly objectionable, because it

4

goes far beyond opposing the specific arguments Waymo raised in the motion to compel and instead devotes pages to once more re-litigating the issues surrounding its purported privileges. In fact, Otto Trucking's "opposition" expands upon arguments in its earlier filed motion to quash and argues, now for the first time, that the Subpoena to Stroz seeks Otto Trucking *work product* in addition to attorney-client privileged material. Otto Trucking's work product claims—which were *not* raised in its motion to quash have been waived. *See* Fed. R. Civ. P. 45(d)(3)(A) (allowing court authority to quash subpoena "[o]n *timely* motion"). The Court should not permit Otto Trucking to do an end-run around the parties' stipulated briefing schedule by advancing new arguments in what amounts to a second, transparent attempt to improperly seek reconsideration of the Court's Privilege Order.

For all of these reasons, the Court should deny Otto Trucking's motion to quash and enforce the Subpoena without further delay.

Respectfully,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

cc:     All counsel of record; Special Master John Cooper