quinn emanuel trial lawyers | san francisco
50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

June 15, 2017

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Waymo respectfully submits this Opposition to Defendants Uber and Ottomotto's motion to quash the subpoena that Waymo served on third party Stroz Friedberg, LLC ("Stroz").[1]

**Background**

While Uber was considering whether to acquire Anthony Levandowski's newly formed company Ottomotto for $680 million, Uber and Ottomotto arranged for a forensic consultant to perform a "due diligence" investigation, relating to the "Bad Acts," including trade secret misappropriation, of Levandowski and other Ottomotto employees. Defendants have refused to produce documents relating to this investigation, asserting various privileges. On June 5, however, the Court rejected all of Defendants' claimed privileges. (Dkt. 566 (hereafter the "Privilege Order").)

In the meantime, on May 10, Waymo served a document subpoena (the "Subpoena") on Stroz seeking information relating to the due diligence investigation. On May 22, Waymo designated Request Nos. 3 and 30 in the Subpoena as "expedited" under the Court's Preliminary Injunction Order. Stroz served Responses and Objections on June 7 (Dkt. 570-3). Waymo filed a motion to compel on June 8 (Dkt. 570), and Stroz opposed on June 13 (Dkt. 614). Uber and Ottomotto filed the instant motion on June 9. (Dkt. 581.) Also on June 9, Defendant Otto Trucking filed a motion to quash (Dkt. 580), and Levandowski filed a motion to intervene and quash (Dkt. 583). Waymo opposed Levandowski's motion on June 14 (Dkt. 628), and opposes Otto Trucking's motion in a submission filed herewith.

In their June 9 submission, Uber and Ottomotto (hereafter, "Uber") strongly urged the Court to not order production of documents that Levandowski provided to Stroz on the grounds that such documents were protected by Levandowski's privileges. (Dkt. 581 a 1 n.1.) Later, however, Uber apparently recognized that that these arguments violated its obligation under the Court's preliminary injunction order to "exercise the full extent of [its] corporate, employment, contractual, and other authority to cause [its agents, including Stroz] to return the downloaded materials and all copies, excerpts, and summaries thereof to Waymo (or the Court) . . . ." (Dkt. 433 ¶ 2(b).) Thus, on June 13,

---

[1]   Waymo hereby incorporates by reference (i) its opposition to the motion to quash of Defendant Otto Trucking, filed herewith (ii) its prior briefing concerning the Subpoena (Dkts. 570 & 628); (iii) its briefing on its motion to compel due diligence materials from Defendants (Dkts. 321, 445, & 474); and (iv) its response to Defendants'objections to the Privilege Order (Dkt. 585).

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

Uber has now clarified that "Uber does not object to the production by Stroz of any documents, data, and other materials provided by Anthony Levandowski, Lior Ron, and other diligenced employees to Stroz." (Dkt. 616.)

**Argument**

Because Defendants/Levandowski have filed a combined *six* briefs on the Subpoena, Waymo's various oppositions overlap to some extent. In the future, to ease the number of filings and reduce duplication, Waymo proposes that Defendants consolidate their responses to third-party discovery.

### I.     Uber's Motion Is A Disguised Motion To Reconsider The Court's Privilege Order And Should Be Summarily Denied.

Most (if not all) of the issues raised in Uber's motion to quash simply reargue points that Defendants already lost. (*See* Dkt. 566.) Those issues are presently the subject of Motions for Relief, which Waymo has opposed. (Dkts. 572, 574, 575, & 585.) Until those Motions are resolved and/or Uber properly seeks reconsideration of the Court's ruling on the privilege issues, Uber should not be heard to reargue the same issues again. *See* N.D. Cal. Civ. L.R. 7-9(b) ("No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion."); *Ibrahim v. Dept. of Homeland Security*, Case No. C 06-00545 WHA, 2014 WL 12641572, at *2 (N.D. Cal. Apr. 25, 2014) (Alsup, J.) (refusing to consider arguments that "essentially" sought reconsideration without leave of court). The Court should reject all arguments on issues decided by the Privilege Order.

### II.    The Court Should Deny Uber's Motion to Quash.

Uber's motion also fails on the merits.[2] The party seeking to quash a subpoena bears the "burden of persuasion" that the discovery sought is not proper. *United States v. Real Property & Improvements Located at 2441 Mission St., San Francisco, California*, No. C 13-2062 SI, 2013 WL 6774081, at *2 (N.D. Cal. Dec. 23, 2013). Uber cannot meet that burden here.

#### A.     Uber Has No Protectble Work Product Interest In The Due Diligence Materials.

The Court has already ruled on this issue. Accordingly, the Court should summarily reject Uber's attempt at reconsideration and disregard Uber's re-argument in its entirety. Insofar as the Court desires a response to the re-argument on this issue, Waymo repeats that Uber fails to show that the Subpoena seeks protectable work product. First, Uber waived any conceivable protection over these materials by sharing them amongst entities and individuals that lacked a shared common interest. (*See* Dkt. 566 at 14 ("MoFo and OMM . . . directed Stroz to jointly and simultaneously communicate the investigation's factual findings to MoFo and OMM. Thus, the Stroz work product was simultaneously disclosed to Otto at the time it was created."); *see also* Dkt. 585 at 4-10, 11-12).

Uber fails to demonstrate that the Court erred when it previously ruled on this issue. The Court rejected the possibility that a common legal interest might exist despite the lack of a binding Term Sheet after considering all the facts and circumstances of the investigation,[3] including the fact that Stroz was required to deliver an "interim" report to Uber just days before Uber made the final decision as to whether to close the transaction. (Dkt. 566 at 16 ("There is no reason for Uber to receive that interim report other than to evaluate whether to sign the Put Call Agreement."); Dkt. 585 at 8-10.) The Court's findings were also supported by the Term Sheet itself, which "calls for the investigation,

---

[2]   Uber only seeks to quash Request Nos. 1-8, 11, 13-21, and 28-29. (Dkt. 581 at 1.)

[3]   As Waymo argues in its Consolidated Response to Defendants' Motion for Relief from the Privilege Order (Dkt. 585), Defendants cite no authority in support of their "dual purpose" theory and, in any event, fail to establish that the documents have a "dual purpose." (*Id.* at 8-10.)

sets its parameters, and even in detail describes what information the diligenced employees must give to Stroz." (Dkt. 566 at 15; Dkt. 585 at 4-10.) In sum the Court's ruling that no common interest existed were amply supported by the evidence and was consistent with the governing law.[4] *See Elan Microelectronics Corp. v. Apple, Inc.*, 2011 WL 3443923, at *2 (N.D. Cal. Aug. 8, 2011) (holding that the common interest doctrine "does not extend to communications about a joint business strategy that happens to include a concern about litigation."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579-80 (N.D. Cal. 2007) (holding that even where defendant and bidders may have been likely to become joint defendants, the common interest doctrine is limited to only those communications that were specifically "designed to further [the joint legal] effort or made "in the course of formulating a common legal strategy.").

Second, Uber fails to establish that the materials qualify for work product protection in the first place. *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1080-81 (N.D. Cal. 2002) (party claiming work product has the burden to establish the doctrine applies). The Privilege Order notes that the purpose of the investigation was "(1) to allow Uber to conduct due diligence into certain Otto employees prior to making a decision to sign the Put Call Agreement, and (2) to create a record that will control whether any diligenced employees have to reimburse Uber for indemnification expenses should Waymo sue the diligenced employees." (Dkt. 566 at 15-16.) So, while Uber asserts that the parties were "preparing for anticipated litigation" (Dkt. 581 at 2), the evidence demonstrates that this was not the case at all. *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 440 (N.D. Cal. 2010) (work product did not apply where documents "would have been created in substantially similar form even if no litigation was anticipated."). At most, these documents were created in anticipation of an obligation to indemnify the diligenced employees and shared amongst parties with diverging interests, which is not sufficient. *See Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 49-50 (E.D.N.Y. 2011) (holding that report prepared by consultant of surety was not prepared in "anticipation of litigation" merely because it related to potential liability under the bonds).

Third, Uber argues that even if there was no common interest, work product was still not waived because the due diligence materials were not shared amongst "adversaries." (Dkt. 581 at 3-4.) But this argument takes far too narrow a view of the law on waiver. (Dkt. 585 at 11-12.) Waiver of work product requires merely "an act inconsistent with the adversary system." *Great Am. Assur. Co. v. Liberty Surplus Ins. Co.*, 669 F. Supp. 2d 1084, 1092 (N.D. Cal. 2009) (Alsup, J.). Thus, waiver can arise from disclosure to a "potential adversary." *United States v. MIT*, 129 F.3d 681, 687 (1st Cir. 1997); *Neilson v. Union Bank of Cal., N.A.*, No. 02-6942, 2003 WL 27374179, at *5 (C.D. Cal. Dec. 23, 2003). Waiver can also arise from disclosures that merely increase the opportunity for a potential adversary to obtain the information. *Verigy US, inc. v. Mayder*, No. 07-4330, 2008 WL 4866290, at *2 (N.D. Cal. Nov. 7, 2008). As the Magistrate Judge previously found when considering this exact issue, at least Ottomotto and Levandowski were potential adversaries, and the sharing of the due diligence investigation was inconsistent with the adversarial system. (Dkt. 566 at 21, 2-3, 4.)

Uber's cited cases do not hold otherwise. *Ellis v. J.P. Morgan Chase & Co.*, Case No. 12-cv-03897-YGR (JCS), 2014 WL 1510884, at *5 (N.D. Cal. Apr. 1, 2014), confirms that waiver can occur where a disclosure merely "enables an adversary to gain access to the information," but held that under the facts of that case no waiver occurred where litigation was already underway and the defendant shared a letter with a third-party who was named in the plaintiff's complaint and was, if anything, a potential co-defendant. *Id.* at *5-6. In *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575 (N.D. Cal. 2007),

---

[4] Uber also argues that documents after April 11, 2016 are protectable. (Dkt. 581 at 3.) Waymo addresses this argument below in Section II.C.

the Court did not determine the scope of work product waiver at all, but rather provided "guidance" to the parties about the relevant legal principles in advance of the plaintiff re-serving the subpoena. *Id.* at 578. For these reasons, the materials requested by the Subpoena are not work product.

### B. Uber Has No Attorney-Client Privilege Over The Due Diligence Materials.

Uber also improperly rehashes its argument that the requested documents are subject to its attorney-client privilege. (*Supra* Section I). Again, the Court has already ruled on this issue. The Court should summarily reject Uber's attempt at reconsideration and disregard Uber's re-argument in its entirety. Insofar as the Court desires a response to the re-argument on this issue, Waymo repeats that the argument fails. Uber waived the attorney-client privilege with respect to documents responsive to Requests 6-8 of the Subpoena. (Dkt. 566 at 10 ("Uber cites no case, and the Court is aware of none, that holds that communications between separate parties with separate counsel on opposite sides of a proposed transaction are protected by the attorney-client privilege.").) As discussed above (*supra* Section II.A), the findings of the due diligence investigation were simultaneously reported back to at least Uber and Ottomotto, who were separately represented. Because no common interest existed, attorney-client privilege was waived. (Dkt. 585 at 2-3.)

Nor are documents responsive to Request 29 subject to the attorney-client privilege. The privilege "protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988) (citation and quotation omitted). Thus "discovery of [a] consultant's identity and fees are not protected by the attorney-client privilege." *Solidda Grp., S.A. v. Sharp Elecs. Corp.*, Case No. 12-24469, 2013 WL 12091057, at *7 (S.D. Fla. Mar. 19, 2013).

Finally, Uber argues that certain documents responsive to Requests 13, 14, 15, 18, and 19 were communicated only between Stroz and one of MoFo, OMM, Uber, or Ottomotto, and these documents are therefore privileged "irrespective of whether there was a common legal interest . . . ." (Dkt. 581 at 4.) But, there is *no* evidence that any such documents even exist. Defendants certainly did not log any such documents prior to the briefing on Waymo's motion to compel, opting instead to use boilerplate privilege log entries indicating that all due diligence related materials were sent "to/from" all of the members of the joint defense group. (*E.g.*, Dkt. 321 at 6-7.) Uber has refused for months to provide document-by-document details in its privilege logs—it should not now be permitted to provide new details in an effort to narrow the scope of the Court's waiver findings.

Even if such documents were logged, communications between either one of Uber or Ottomotto with Stroz would not have had the requisite confidentiality to qualify for the privilege. *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (holding that he attorney-client privilege only protects from disclosure "confidential communications made by a client to an attorney to obtain legal services . . . ."). The Stroz retention agreement (backdated "as of March 4") makes clear that Stroz agreed that "all communications (including emails) by it relating to the Engagement will be sent ***to all Clients together***." (Dkt. 370-3 at 3 (emphasis added).) Additionally, Stroz was generally free to disclose "Confidential Information" amongst "Clients, Uber, Ottomotto, or Messrs. Levandowski and Ron (including their respective counsel)." (*Id.* at 2-3.) Although the retention agreement limited (per redacted Exhibit A) Stroz's ability to share "Confidential Information" obtained from Ottomotto or Levandowski with Uber, there were no such restrictions on Stroz's ability to share such information with Uber's counsel Morrison and Foerster. (*Id.* at 3.) It is therefore clear that Stroz was free to share Uber-only communications with Ottomotto and Ottomotto-only communications with at least outside counsel for Uber. Accordingly, none of the due diligence materials are protected by attorney-client privilege, and the Court should deny the motion to quash.

### C. Uber's Objections Regarding The Scope of Privilege Order Lack Merit.

Attempting to chip away at the effect of the Court's Privilege Order, Uber next attempts to draw various distinctions across documents that it failed to previously include in its privilege log and failed to raise before the Magistrate Judge during briefing on Waymo's motion to compel the due diligence materials. These distinctions cannot now serve as the basis to quash the Subpoena to Stroz. *First*, Uber never once before accounted for documents on its privilege log that were allegedly sent or received by only a subset of the purported joint defense group. Uber should not be permitted to avoid waiver of attorney-client privilege or work product protection by submitting such details now. (Standing Order ¶ 16 (stating that failure to provide information necessary to establish the privilege "at the time of the assertion will be deemed a waiver of the privilege or protection." ).)

*Second*, as discussed above, the Stroz retention agreement makes clear that Stroz was free to share "Confidential Information" amongst the purported Joint Defense Group in a manner that destroyed any reasonable expectation of confidentiality between Stroz and any one single member. Thus, no attorney-client privilege or common interest protection can exist over any of the *four* categories of information enumerated in Uber's motion to quash (at p. 5). To the extent documents responsive to these categories are possessed by Stroz, the retention agreement provides that Stroz was permitted to share the information with at least one adverse member of the purported joint defense group.

*Third*, Uber's argument that documents after April 11, 2016 are protectable also lacks merit. During the lengthy briefing on Waymo's motion to compel, Uber never once drew a distinction between documents created prior to April 11, 2016 and those created after. Also, the Magistrate Judge has already found that post-April 11 documents are discoverable because they reflect information from an investigation that "began well before the Put Call Agreement was signed." (Dkt. 566 at 18 n.2; Dkt. 585 at 12-14.) It is not true, as Uber alleges, that the Magistrate Judge found that a common legal interest amongst the relevant parties definitively existed after April 11. (*Id.* at 17 n.2 ("The outcome ***might*** be different after the signing of the Put Call Agreement.") (Emphasis added).) In many respects, Uber, Ottomotto, and Levandowski continued to have adverse, conflicting interests after the signing of the Put Call Agreement, including with respect to the scope of indemnification. (Dkt. 523-5 at UBER00017566 (Term Sheet describing Indemnification rights and obligations after "Closing").) Besides, even if a common legal interest did arise at some time after April 11, it would still only protect those limited communications that were pursuant to *that* interest. *Nidec Corp.*, 249 F.R.D. at 579-80 (holding that even where parties were likely to become joint defendants, the common interest doctrine is still limited to communications specifically "designed to further [the joint legal] effort or made "in the course of formulating a common legal strategy."). The Court should reject Uber's attempt to undermine the Privilege Order by now raising document-specific arguments.

### III. Uber's "Opposition" To Waymo's Motion To Compel Adds Nothing.

On June 13, Uber filed an "opposition" to Waymo's motion to compel Stroz's compliance with the Subpoena. (*See* Dkt. 616.) But, the motion to compel does not seek to compel anything from Uber. To the extent Uber claims a limited right to object on the basis of its personal privilege or interest, it has already done so via this motion to quash. The opposition to the motion to compel is therefore unnecessary and procedurally improper. Waymo requests that the Court strike Uber's "opposition."

For all of these reasons, the Court should deny Uber's motion to quash and enforce the Subpoena.

Respectfully,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

cc:   All counsel of record; Special Master John Cooper