QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa J. Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>              Plaintiff,<br><br>       v.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>              Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PRÉCIS ON MOTIONS IN LIMINE IN RESPONSE TO CASE MANAGEMENT ORDER RE: TRIAL PREPARATION** |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

***Motion in limine no. 1: To preclude Uber from arguing that Uber never possessed the 14,000 files or, in the alternative, for an adverse inference that Uber possessed the 14,000 files***.

At an April 5 hearing, Uber told the Court that "we will demonstrate to you that those 14,000 files never made it to Uber." (Dkt. 160, Apr. 5 Hr'g Tr. at 9:13-15.) Ten weeks later, the opposite has occurred. Uber can no longer credibly claim that it never took possession of any stolen files. Despite Uber's repeated attempts to obfuscate, Waymo has now shown that Uber's agents (Stroz Friedberg), counsel (Morrison & Foerster), and former head of self-driving (Anthony Levandowski) have each put hands on the trade secret files taken from Waymo.[1] While Uber continues to assert that Uber never possessed the stolen files, this assertion (even assuming it were true) is irrelevant and misleading, as it does not change the fact that Uber's agents and employee possessed the files, and thus in every meaningful sense Uber possessed them as well. Thus, under Rule 402 or, in the alternative, Rule 403, this Court should preclude Uber from arguing to the jury that it never possessed the stolen material. At a minimum, this Court should impose an adverse inference that Uber possessed the stolen material.

That Levandowski stole Waymo's trade secrets is no longer seriously in doubt. In support of its motion for preliminary injunction, Waymo submitted the declaration of forensic engineer Gary Brown detailing his findings that Levandowski downloaded software to access Waymo's SVN server, downloaded 14,000 files from that server, connected a memory stick to the computer for several hours, removed the memory stick, then reformatted the computer. (Dkt. 25-29.) Uber has made no attempt to discredit Mr. Brown's analysis. No defendant has ever denied that Levandowski took the files, and recently Uber all but admitted to Levandowski's theft by firing him for his purported refusal to cooperate in Uber's internal investigation. (Dkt. 625, June 7 Hr'g Tr. at 86-87.) In sum, as the Court has already found, "Waymo has made a strong showing that

---

[1] In an email dated June 12, 2017, defendants' counsel stated that MoFo does not have any of the downloaded materials, "*except* to the extent that any such material may appear . . . in certain materials AL [*i.e.*, Anthony Levandowski] and other persons provided to Stroz to which MoFo was given limited access during the Stroz investigation pursuant to the terms of the AL-Stroz contract and the protocol governing the investigation, and under strict conditions preventing MoFo from sharing those materials with anyone, including Uber."

1  Levandowski absconded with over 14,000 files from Waymo" and those files "likely remain in
2  Levandowski's possession." (Dkt. 433 at 7.)  And since then, the evidence has only grown
3  stronger, as Uber recently admitted that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
4  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
5  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt. 595-3 at 4.)
6         In addition to the clear and undisputed evidence of theft, Uber likewise has produced no
7  evidence to dispute that Levandowski had every opportunity to use that information at Uber
8  regardless of whether Uber ever possessed the files.  The Court long ago noted that Uber has
9  offered no evidence of "prophylactic steps" taken to prevent Levandowski from bringing and
10 using Waymo's stolen files.  (Dkt. 433 at 7.)  In addition, Uber has not disputed that Levandowski
11 regularly used his personal computer in the course of his LiDAR work at Uber – a personal
12 computer that Uber has never examined, nor produced for inspection in this litigation.
13 Accordingly, Uber does not and cannot dispute that Levandowski possessed the files and that he
14 might well have accessed those files from his personal computer while working at Uber.  Indeed,
15 as this Court has found:  "As to whether Levandowski ever consulted those files in his work for
16 Uber, defense counsel has admitted that nothing prevented him from doing so.  Whether
17 Levandowski kept the files on personal or work devices and servers would make little difference
18 to his ability to consult the files." (Dkt. 433 at 9.)
19        Given these undisputed facts, any argument from Uber that it never took possession of the
20 stolen files is false and, at any rate, irrelevant.  As the Court has recognized, Levandowski was
21 free to create "all manner and mischief" with the stolen files even without porting them over to
22 Uber's own network, including by "keep[ing] that treasure trove of files as handy as he wished (so
23 long as he kept it on his own personal devices)." (Dkt. 433 at 8.)  More generally, the legal issue
24 of misappropriation is not dependent on where the trade secrets are physically located.  Thus, Uber
25 should be precluded from making the irrelevant argument that "those 14,000 files never made it to
26 Uber." Fed. R. Evid. 402.  In the alternative, Uber should be precluded because the minimal
27 probative value of the evidence would be substantially outweighed by the risk of misleading the
28

jury, who might be inclined to erroneously exculpate Uber on the ground that there could be no trade secret misappropriation unless the files physically came under Uber's direct control.  Fed. R. Evid. 403.  That risk of confusion is amplified by the fact that, through Uber and Levandowski's assertions of various privileges, Waymo has been deprived of the evidence that would allow Waymo to fully present to the jury exactly how and when Uber possessed the 14,000 files.

Finally, even if Uber were permitted to make the argument, there should be an adverse inference against Uber that Uber did, in fact, possess the 14,000 files.  Levandowski's refusal to testify, combined with other evidence, warrants the inference that Uber possessed the files.  *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (adverse inference appropriate if there is independent evidence of the fact that the witness refuses to admit).  Asked whether he took over 14,000 confidential Waymo files before resigning from Waymo and made those 14,000 confidential files available to Uber and Otto, Levandowski pleaded the Fifth.  (Dkt. 588-7 at 14:25-20:24.)  Asked whether he used those files at both Uber and Otto to "accelerate the development" of LiDAR, Levandowski again pleaded the Fifth.  (*Id*.)  And independent evidence corroborates that he retained the files for use at Uber.  (*See* Dkt. 433 at 9-10 ("[I]t would strain credulity to imagine that Levandowski plundered Waymo's vault the way he did with no intent to make use of the downloaded trove.").)

***Motion in limine no. 2:  To preclude Uber from arguing that Uber used the due diligence process to prevent Waymo's trade-secret information from reaching Uber.***

Waymo respectfully requests that the Court hold defendants to their choice, expressly made under pain of preclusion, to cloak the due diligence process in privilege rather than to affirmatively rely on evidence relating to that investigation.

While Uber was considering whether to acquire Anthony Levandowski's newly formed company Ottomotto for $680 million, Uber and Ottomotto arranged for a forensic consultant, Stroz Friedberg, to perform a "due diligence" investigation into the "Bad Acts" committed by Levandowski and others, including trade secret misappropriation.  Defendants have steadfastly resisted discovery relating to this investigation, initially refusing to even identify the forensic

vendor, and continuing now to refuse to produce the due diligence report and several exhibits to that report, all under color of a latticework of privilege doctrines. Recognizing that it might be in defendants' interests "to waive some claims of privilege in order to bolster their defense," the Court invited defendants to set forth any waiver of privilege, "on pain of preclusion," to enable defendants to affirmatively raise the investigation. (Dkt. 438.) Defendants chose preclusion. Defendants must now be held to that choice, and precluded from relying on any due diligence materials in their defenses to Waymo's claims.

The Court issued its invitation on May 15, noting that defendants may want to rely on the due diligence materials, for example, to show "precautions they may have taken at the time of Otto's acquisition to prevent Waymo's confidential files from influencing defendants' LiDAR research and development." (Dkt. 438.) This invitation issued ten days before a hearing on Waymo's motion to compel the due diligence materials, giving defendants ample time to consider the Court's offer. They refused it. On May 25, at the hearing, defendants maintained their longstanding position that under a combination of the attorney-client, work-product, and common-interest doctrines, the due diligence materials were entirely privileged.[2] (*See, e.g.*, Dkt. 516, May 25 Hr'g Tr. at 31:6-7 ("For work product privilege we're saying that includes the report and all the exhibits.").) Defendants followed up on June 1 with formal responses to the Court's invitation, again maintaining their privilege claims in their entirety. (Dkt. 531 at 1 ("Defendants do not intend to waive any privileges."); Dkt. 532 at 1 ("Otto Trucking does not intend to waive any privileges.").)

Defendants must be held to their bargain. Even without the Court's express offer (which defendants rejected), the Court would be well within its power to preclude defendants from offering positive evidence of the due diligence process. Where a party asserts privilege over a particular subject matter, it is appropriate for the Court to preclude the litigant from later waiving

---

[2] That the Magistrate Judge rejected defendants' privilege arguments (Dkt. 566) has no bearing on defendants' choice to pursue them on pain of preclusion. At any rate, far from even attempting an untimely acceptance of the Court's offer, defendants continue to press their privilege arguments by appealing the Magistrate Judge's ruling. (Dkts. 572 & 575.)

the privilege or offering evidence on related subject matter. *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, Case No. 12-cv-00329-AG , 2014 WL 8096334, at *8 (C.D. Cal. Apr. 21, 2014) (noting that where plaintiff previously asserted attorney-client privilege over certain subjects, "[c]ertainly Plaintiff cannot now provide answers to those questions"); *U.S. Rubber Recycling, Inc. v. ECORE Int'l, Inc.*, Case No. CV 09-09516 SJO, 2011 WL 13127343, at *8 (C.D. Cal. Oct. 5, 2011) (requiring defendant to assure the Court that it was not relying on an opinion of counsel defense); *Edward Lowe Indus., Inc. v. Oil–Dri Corp. of America,* Case No. 94-C-7568, 1995 WL 609231, at *5 (N.D. Ill. 1995) ("[B]y waiting until after the close of discovery to waive its attorney-client privilege, it was precluded from asserting an advice of counsel defense."). "[T]he attorney-client privilege cannot be used as a sword as well as a shield." *Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, Case No. C-03-05669-JW, 2007 WL 2069946, at *2 (N.D. Cal. July 13, 2007) (*quoting In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987)).

Defendants have repeatedly argued that they have been handcuffed from disclosure by a combination of Levandowski's Fifth Amendment privilege and the work-product, attorney-client, and common-interest doctrines. (*e.g.,* Dkts. 369, 572, 575.) The heavily-disputed merits of these claims of privilege are of no moment here. As the Magistrate Judge pointed out long ago, "always, when somebody takes the Fifth, it has certain consequences." (Dkt. 277, Apr. 25 Hr'g Tr. at 20.) If Levandowski's invocation drove defendants to refuse the Court's offer, so be it. Whatever defendants' motive for choosing privilege over disclosure, they are bound by that decision, and may not now affirmatively raise evidence of the due diligence process for any reason, including to show that Uber sought to prevent Levandowski from bringing stolen materials to Uber.

DATED:  June 16, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC