

June 16, 2017

Magistrate Judge Jacqueline Scott Corley
U.S. District Court for the Northern District of California
San Francisco Courthouse, Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:  *Waymo LLC v. Uber Technologies, Inc.*, et al., Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

For the reasons set forth below, the Court should deny Waymo's motion to compel production of materials Mr. Levandowski is withholding based on his Fifth Amendment privilege.

I.     Introduction

It is a bedrock principle of constitutional law that, whenever an individual has "reasonable cause to apprehend danger" of criminal liability, he is privileged under the Fifth Amendment not to be compelled to make testimonial communications—whether through words from his mouth or through the production of records in response to subpoena—that could "furnish a link in the chain of evidence needed to prosecute [him]."  *Hoffman v. United States*, 341 U.S. 479, 486 (1951); *see also United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995) (stating that the Fifth Amendment "protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used").

The law does not require an individual in such a situation to first divulge the information in order to protect it from being divulged.  As the Ninth Circuit has explained: "It is not necessary, of course, that the person to whom the question has been put establish the precise manner in which he will incriminate himself by responding. *This would make the privilege useless*."  *Davis v. Fendler*, 650 F.2d 1154, 1159 (9th Cir. 1981) (emphasis added).  Waymo complains that Mr. Levandowski made a "secret" and "unexplained" submission to the Court, Dkt. 596 at 3. But the courts are in broad agreement that, if any inquiry into the validity of an asserted privilege is needed, it should be done *in camera*.  *See United States v. Drollinger*, 80 F.3d 389, 393 (9th Cir. 1996) ("the required inquiry is best made in an *in camera* proceeding"); *Bodwell*, 66 F.3d at 1002 (reversing and remanding for *in camera* proceeding); *United States v. Argomaniz*, 925 F.2d 1349, 1355 (11th Cir. 1991) (remanding for *in camera* proceeding); *United States v. Rendahl*, 746 F.2d 553, 555-56 (9th Cir. 1984) (affirming finding, based on *in camera* submissions, that the Fifth Amendment privilege applied); *Takiguchi v. MRI Int'l, Inc.*, No. 2:13cv-1183-HDM-VCF, 2016 U.S. Dist. LEXIS 18340 at *12 n.6 (D. Nev. Feb. 12, 2016) ("The submission of a privilege log for *in camera* inspection is an appropriate procedure, when the Fifth Amendment privilege is asserted . . . .").  That, no doubt, is why Judge Alsup concluded that *in camera* review is the appropriate mechanism in this case.  *See* Dkt. 230 (4/12/2017 Tx) at 77-84.

None of Waymo's arguments override Mr. Levandowski's valid Fifth Amendment assertion.

## II.     Argument

### A.  Mr. Levandowski Has Not Waived His Fifth Amendment Rights

Mr. Levandowski has consistently asserted his Fifth Amendment privilege against self-incrimination whenever it has been implicated in this case. Recently, on June 2, 2017, he supplemented his *in camera* submission to support the validity of his Fifth Amendment invocation regarding the materials at issue here. These detailed *in camera* submissions amply justify Mr. Levandowski's Fifth Amendment claims.

As Waymo concedes, the test for the assertion of the Fifth Amendment is whether "there are 'substantial hazards of self-incrimination that are real and appreciable, not merely imaginary and unsubstantial. . . .'" *United States v. Bright*, 596 F.3d 683, 690 (9th Cir. 2010). Plainly, a real risk of jeopardy arises in this matter. Yet, since Waymo was not given a log detailing each of the items (if any) Mr. Levandowski has withheld, Waymo now contends that Mr. Levandowski has thereby waived his Fifth Amendment privilege. This is not the law.

Waymo ignores that this Court ordered Mr. Levandowski to submit his privilege log *in camera*—a process that is "secret" by definition, and the proper method by which courts routinely evaluate Fifth Amendment claims. The Supreme Court has long embraced the principle that an inquiry into the invocation of a Fifth Amendment assertion must not require the witness "to surrender the very protection which the privilege is designed to guarantee." *Hoffman*, 341 U.S. at 486. And, as explained in a case Waymo itself cites, an *in camera* proceeding allows a person "the chance to provide targeted support for his Fifth Amendment claims without the loss of privilege and without the concern of incrimination." *United States v. Belcik*, No. 8:15-mc-2-T-23MAP, 2016 U.S. Dist. LEXIS 90138 at *11 n.9 (M.D. Fla. Jul. 20, 2016) (citing *United States v. Zolin*, 491 U.S. 554, 569 (1989)); *see also Drollinger*, 80 F.3d at 393; *Bodwell*, 66 F.3d at 1002; *Argomaniz*, 925 F.2d at 1355; *Rendahl*, 746 F.2d at 555-56; *Takiguchi*, 2016 U.S. Dist. LEXIS 18340 at *12 n.6; *United States v. Christensen*, No. MC 12-08002-PHX-FJM, 2012 U.S. Dist. LEXIS 107372 at *5 (D. Ariz. Jul. 30, 2012).

Under *Hubbell*, the questions for the Court are whether Mr. Levandowski's production in response to the particular requests would tacitly admit the existence, possession, location, or authenticity of records, and whether these tacit admissions could potentially incriminate him. *United States v. Hubbell*, 530 U.S. 27, 32-36 (2000). Requiring Mr. Levandowski to produce a conventional privilege log, which would by itself admit the implicit testimonial facts that *Hubbell* protects, would eviscerate his Fifth Amendment rights. For that reason, courts do not require litigants who raise Fifth Amendment act of production claims to produce a detailed privilege log to opposing parties. *See SEC v. Chin*, No. 12-cv-01336-PAB-BNB, 2012 U.S. Dist. LEXIS 182252 at *26 (D. Colo. Nov. 29, 2012) (holding that "requiring [respondents] to provide a detailed privilege log of the documents claimed to be subject to the protections of the Fifth Amendment . . . is testimonial, could be incriminating, and falls within the protection against self-incrimination"); *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 649 (C.D. Cal. 2005) (rejecting a motion to compel a privilege log because "requiring defendant [ ] to produce a privilege log listing responsive documents may incriminate defendant [ ] by forcing him to 'admit that the documents exist, are in his possession or control, and are authentic'"). Waymo has no answer to these cases.

The only precedent Waymo cites to suggest it must be provided a privilege log is a case that does not even support the proposition they advance. In *United States v. Real Property & Improvements Located at 2366 San Pablo Avenue, Berkeley, California,* No. 13-cv-02027-JST (MEJ), 2014 U.S. Dist. LEXIS 148441 (N.D. Cal. Oct. 17, 2014), the court ordered a business entity *that has no Fifth Amendment rights*—not an individual—to produce a privilege log in response to a particular RFP without any discussion of the Fifth Amendment. *Id.* at *5. In fact, as to the particular holdings cited by Waymo, the business entity had not even relied on the Fifth Amendment in briefing to the court, *see 2366 San Pablo Avenue*, No. 13-cv-02027-JST, Dkt. No. 155 at 4-5 (Oct. 10, 2014), which explains why the court did not address the Fifth Amendment in ordering the production of a log. 2014 U.S. Dist. LEXIS 148441, at *4-6. Later in the order, however, when the Court *did* address a Fifth Amendment objection, the Court refused to compel the production of certain documents because there was a possibility that production would implicate an individual's Fifth Amendment protections. *Id.* at *9.

Further, in claiming Mr. Levandowski has waived his Fifth Amendment by not furnishing a privilege log, Waymo cites to cases that could not be more different from the present case. For instance, after the respondent in *Belcik refused to attend* a court-ordered *in camera* proceeding "to substantiate his privilege claims," the court issued a warrant and had Belcik arrested. Belcik, 2016 U.S. Dist. LEXIS 90138 at *6. Even after the respondent was brought to court and had secured counsel, Belcik still refused to take the oath or affirm that he would testify truthfully or present any evidence at the *in camera* proceeding. *Id.* at *8. Thus, the court was left to evaluate the respondent's Fifth Amendment claims only upon "the paucity of information in the public file and the reasonable implications that are to be drawn from that consideration." *Id.* at *11. That case has no similarity to the case at bench.

Likewise, in *Davis*, 650 F.2d 1154, the Ninth Circuit found waiver because Fendler had plainly acted in bad faith. *Id. at* 1160-61. He had waited *15 months* after receiving interrogatories to assert his Fifth Amendment rights, and did so only after receiving a motion to compel. He then refused to submit information to support his claim beyond a "blanket claim of privilege," including to questions about "his address, his social security number, and about the address, place of employment, and nearest living relative of [his wife]." *Id.* at 1160. Given the absence of any evidence or explanation in the record to explain or support his Fifth Amendment invocation, the Court found it was not justified.

Again, these cases bear no resemblance to the present case. Here, Mr. Levandowski timely submitted a detailed *in camera* submission in good faith, as ordered by the Court. There has been no waiver, and the Court should evaluate the submission on its merits.

## B. Records Withheld from Request No. 1 Are Protected by the Fifth Amendment

Waymo does not deny that it would be incriminating if Mr. Levandowski now possesses the "Misappropriated Materials" Waymo seeks in Request No. 1. Nor does Waymo deny that Request No. 1 would compel Mr. Levandowski "to make extensive use of 'the contents of his own mind' in identifying" and assembling responsive records, something that was roundly condemned by the Supreme Court in *Hubbell*. 530 U.S. at 43. Instead, Waymo argues that the

request does not implicate Mr. Levandowski's Fifth Amendment rights *at all* because (1) Mr. Levandowski does not have an ownership interest in any Google files he may have retained, and (2) it is, they claim, a "foregone conclusion" that Mr. Levandowski currently possesses the materials that Waymo seeks.  Dkt. 596 at 4-6.  Both arguments fail.

1. <u>Ownership is Irrelevant to the Fifth Amendment Inquiry</u>

First, the question of ownership is a red herring.  For purposes of the Fifth Amendment analysis, it is irrelevant whether the individual has an ownership right or other possessory rights to the particular item in his possession.  Whether an item is alleged to be stolen or not, the sole question is whether *compelling the individual to produce it* would involve potentially incriminating testimonial communications.  *See, e.g., United States v. Doe (In re Three Grand Jury Subpoenas Duces Tecum Dated January 29, 1999),* 191 F.3d 173, 176, 183 (2d Cir. 1999) (affirming lower court decision which found that the "question of testimonial incrimination is at its height when [the document] is produced by a person who is no longer employed by the corporation, because there is an *inference that [he] may have stolen [it]*." (emphasis added); *McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.,* 117 F.R.D. 492, 494 (D. Mass. 1987) (refusing to enforce a subpoena requiring the production of allegedly *stolen customer lists*, noting that production "would compel [the respondent] to admit by the very act of production that such documents exist, are in his possession, and are authentic . . . [and] in light of the allegation that [he] stole customer lists, the Court concludes that the compelled disclosure of such documents could seriously implicate fifth amendment concerns").

Likewise, courts recognize that forcing an individual to produce even contraband or illegal drugs (things that no person can lawfully possess) would violate the Fifth Amendment by compelling the self-incriminating admission that the individual knowingly possessed the prohibited goods. *See, e.g., State v. Alexander*, 281 N.W.2d 349, 352 (Minn. 1979) (upholding Fifth Amendment objection to producing an allegedly obscene film).  This same rule applies to instrumentalities of crime, which the prosecution may certainly seize with a warrant, but may not compel to be produced in the face of a Fifth Amendment invocation.  *See, e.g., Commonwealth v. Hughes*, 404 N.E.2d 1239, 1244 (Mass. Sup. Ct. 1980) (quashing under *Fisher* a prosecution's subpoena of a handgun because the defendant "would be making implicitly a statement about its existence, location, and control to which the [prosecution] would allude at trial to show he had possession and control . . . ."). Here again, the sole inquiry under the Fifth Amendment is whether production would entail implicit testimony—about the item's existence, possession, location, or authenticity—that would tend to incriminate.

In short, Request No. 1—for all "Misappropriated Materials"—is nothing short of a demand that Mr. Levandowski sift through, identify, hand over, and authenticate everything that Waymo claims he stole. For a request such as this, the incriminating nature of any responsive production is self-evident on its face.  And in a context of "real and appreciable" jeopardy, as exists here for Mr. Levandowski, the Fifth Amendment requires that such a patently incriminating request be quashed outright.  *See Hoffman,* 341 U.S. at 486-87 ("To sustain the privilege, it *need only be evident from the implications of the question*, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." (emphasis added)).

### 2. Whether Mr. Levandowski Took Misappropriated Information When He Left Google's Employ is Far From a "Foregone Conclusion"

Waymo's final attempt to salvage Request No. 1 is the claim that it is a "foregone conclusion" that Mr. Levandowski "absconded" with Waymo files, and thus, making him produce what he *likely* now possesses would add nothing to what Waymo and the government already know. Dkt. 596 at 4. But this is simply not the case. To meet the foregone conclusion burden, Waymo must show that there already exists such conclusive certainty in the evidence that production of the materials sought would entail *no* incriminating testimony—but would instead be akin to mere surrender. *Fisher v. United States*, 425 U.S. 391, 411 (1976) (observing that "no constitutional rights are touched" when "the question is not of testimony but of surrender.") (quoting *In re Harris*, 221 U.S. 274, 279 (1911)). Waymo has not made, and cannot make this showing here.

The only affirmative evidence Waymo has adduced suggests that (a) Mr. Levandowski downloaded and possessed files associated with his job at Google *while he was still employed* at Google, and (b) after leaving Google, Mr. Levandowski reportedly "identified five discs in his possession containing Google information" that he then destroyed.

First, the alleged fact that Mr. Levandowski downloaded certain files before leaving Google's employ does not prove, of course, that Mr. Levandowski *took this information* with him when he left Google—a separate element that would have to be proved in a criminal prosecution. Compelling production of the requested records, if they exist, could certainly help the government establish that crucial, missing fact by forcing Mr. Levandowski to implicitly "admi[t] that the documents [still] exist [and] are in his possession or control . . . ." *Doe v. United States (In re Grand Jury Subpoena)*, 383 F.3d 905, 909 (9th Cir. 2004).

Similarly, in a criminal prosecution, the government would need to prove facts that go far beyond the evidence suggesting that Mr. Levandowski identified and destroyed "five discs in his possession containing Google information." Just as one example, the government would need to show *the nature of any alleged Google information involved–i.e., that it constituted an actual trade secret*. And this is yet another gap that Waymo (or the government) may not force Mr. Levandowski to fill through his compelled act of production. Where the hazard of prosecution is real and not imaginary, the Fifth Amendment does not permit an individual to be conscripted into assisting the government in meeting its evidentiary burden through the act of production, and the implicit compelled testimony it entails. *Id*.

Further, Waymo cites to Judge Alsup's observation that there has been a "strong showing" that Mr. Levandowski "absconded" with Waymo's trade secrets that "likely remain in Levandowski's possession." Dkt. 596 at 5. But a "strong showing" that something is "likely," in a civil context no less, is a long way from the level of certainty required to establish "foregone conclusion." Indeed, it is the distance between suspecting and knowing. Compelled production is only allowed when it is clear that it adds "little or nothing to the sum total of the Government's information"—not, as here, when it would fill critical evidentiary gaps in a possible prosecution. *Fisher*, 425 U.S. at 411.

Finally, Waymo's analysis fails because it wrongly focuses on what Waymo knows, when the relevant inquiry for purposes of the foregone conclusion analysis is what the *government* knows. *See, e.g., In re Grand Jury Subpoena*, 383 F.3d at 911 ("It is the quantum of information *possessed by the government* before it issues the relevant subpoena that is central to the foregone conclusion inquiry." (emphasis added)); Dkt. 539 at 12-14.

### C. Records Withheld from Request No. 3 Are Protected by the Fifth Amendment

Waymo's arguments about the withheld communications (e.g., emails and text messages) between Mr. Levandowski and Uber under Request No. 3 also miss the mark. This request requires Mr. Levandowski to use the contents of his own mind—specifically, he must sift through his written communications and identify which ones involved individuals who were connected to Uber and then, through production, implicitly testify to the existence, possession, and authenticity of the communications. Such tacit testimony is potentially incriminating because it could well "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.'" *Hubbell*, 530 U.S. at 36; *In re Grand Jury Proceedings*, 41 F.3d 377, 378, 381 (8th Cir. 1994) (quashing subpoena that sought "correspondence," among other items, because, "[a]lthough the contents of the documents are not protected," the production of the requested records would "involve compelled testimonial self-incrimination").

"Compelled testimony that communicates information that may 'lead to incriminating evidence' is privileged even if the information itself is not inculpatory." *Hubbell*, 530 U.S. at 38 (*quoting Doe v. United States*, 487 U.S. 210, 208 n.6 (1988)). Certainly, not every document responsive to Request No. 3 raises a concern about furnishing a "link in the chain" of incrimination. Thus, Mr. Levandowski has produced responsive documents. But, with respect to any that have been withheld, production here would disclose whether certain communications (i.e., communications that predate Mr. Levandowski's resignation from Google) occurred and thereby provide the starting point for identifying individuals—i.e., sources of information—who might in Waymo's view supply inculpatory information about Mr. Levandowski's move to Uber. These implicit statements are thus potentially incriminating and the Fifth Amendment privilege therefore applies. *See In re Grand Jury Subpoena,* 383 F.3d at 913.

Waymo's reliance on *Moore v. Gillead Scis., Inc.*, No. C 07-03850 SI, 2011 U.S. Dist. LEXIS 132408 (N.D. Cal. Nov. 16, 2011), is misplaced. The district court in *Moore* apparently construed *Hubbell* to hold that possession of requested documents *must itself be a crime* in order to implicate the Fifth Amendment privilege. *Id.* at *19-21. But that is not the law. The proper question is whether the tacit testimony involved in producing documents could provide a link in the chain to other inculpatory information. *Hubbell*, 530 U.S. at 38. Here, Waymo seeks the documents in order to attempt to prove what it believes was Levandowski's theft of trade secrets. If Waymo is correct, then Mr. Levandowski's implicit testimony as to the documents' existence and location would provide a leg up to a prosecutor attempting to develop a case against him.

Waymo has also failed to meet its burden to establish the "foregone conclusion" exception, which requires establishing that the government has independent knowledge of the information

803 Hearst Avenue, Berkeley CA 94710 · www.ramsey-ehrlich.com · Tel: (510) 548-3600 · Fax: (510) 291-3060

that production would implicitly provide.  *See Bright,* 596 F.3d at 692; *In re Grand Jury Subpoena*, 383 F.3d at 910-12.  Waymo has submitted no evidence to demonstrate that the location and identification of the emails it seeks are foregone conclusions to the government.  Moreover, Waymo fails to demonstrate that it is a foregone conclusion that the government can "establish that it can independently verify that the compelled documents are in fact what they purport to be."  *In re Grand Jury Subpoena*, 383 F.3d at 912 (quotation marks omitted).  Waymo has made no suggestion that it can meet such a burden—and it cannot.  To the extent remaining communications that are responsive to Request No. 3 exist, the Constitution forbids the Court from requiring Mr. Levandowski to ease the government's burden of proving the authenticity of the communications by making him produce the records.

### D. Under *Fisher*, Any Documents Mr. Levandowski Provided to Stroz are Protected by the Fifth Amendment and the Attorney-Client Privilege

In *Fisher*, the Supreme Court recognized an essential corollary to the "act of production" doctrine: If the government cannot constitutionally compel a defendant to produce an item, then the attorney-client privilege prohibits the government from compelling it from the defendant's attorney—so long as the defendant had transferred the material to his attorney for the purpose of obtaining legal advice.  *Fisher*, 425 U.S. at 404 ("[W]hen the client himself would be privileged from production of the document . . . the attorney having possession of the document is not bound to produce." (internal quotation marks omitted)).  The Ninth Circuit has explained *Fisher*'s rationale: "The attorney-client privilege and the interests it protects would be ill-served by holding that [the client] walked into his attorney's office unquestionably shielded with the [F]ifth [A]mendment's protection, and walked out with something less."  *In re Grand Jury Proceedings on Feb. 4, 1982*, 759 F.2d 1418, 1420 (9th Cir. 1985) (quotation marks omitted).

Here, there is no question that the Fifth Amendment protects against compulsion of the above-requested materials directly from Mr. Levandowski.  And the record establishes that he provided materials to Stroz Friedberg for the purpose of obtaining legal advice as part of the joint defense effort.[1]  *See, e.g.,* Dkt. 574; Dkt. 583.  As of at least March 11, 2016, Mr. Levandowski was a member of a valid joint-defense agreement.  *Id.*; Dkt. 381 ¶8.  Stroz was retained by members of that joint-defense agreement for the express purpose of assisting the joint-defense parties in preparing for potential litigation.  A joint-defense or common interest agreement "establishes an implied attorney-client relationship" between each of the attorneys and parties involved.  *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000).  Any materials Mr. Levandowski provided to Stroz were provided subject to those agreements.  Dkt. 574; Dkt. 583.  Thus, because both prongs of *Fisher* are met, any materials Mr. Levandowski provided to Stroz are protected from disclosure both by his Fifth Amendment privilege and his attorney-client privilege.  *See United States v. Sideman & Bancroft, LLP*, 704 F.3d 1197, 1201-02 (9th Cir. 2013) (the Fifth Amendment protection "extends to prevent an individual's attorney from being compelled to produce documents if that production would violate the individual's Fifth Amendment rights").

---

[1] Mr. Levandowski incorporates by reference his separate pleadings establishing the factual and legal bases for the privileged nature of communications he had with Stroz Friedberg. Mr. Levandowski acknowledges that Magistrate Judge Corley has ruled otherwise. Dkt. 566 at 11-13.  He summarizes his position here as he and the Defendants have lodged objections to the Court's order with Judge Alsup, Dkt. 574, 572, 577, and those objections are currently pending.

Respectfully submitted,

*/s/ Ismail J. Ramsey*
Ismail Ramsey
RAMSEY & EHRLICH LLP
*Counsel for Non-Party Anthony Levandowski*

cc: Counsel of record (via ECF); Special Master John Cooper