CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
MARJA-LIISA OVERBECK (State Bar No. 261707)
mari.overbeck@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Non-Party Lyft, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, <br><br> Plaintiff, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, <br><br> Defendants. | Case No. 3:17-cv-00939-WHA <br><br> **NON-PARTY LYFT, INC.'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:   TBD <br> Time:   TBD <br> Crtrm.:  F – 15th Floor <br> Judge:   The Hon. Jacqueline Scott Corley <br><br> Trial Date: October 2, 2017 |

**PLEASE TAKE NOTICE** that Non-Party Lyft, Inc. ("Lyft") will and hereby does move the Court for a protective order and/or for an order quashing subpoenas for the production of a deposition witness and documents served by Uber Technologies, Inc. ("Uber"). This motion is made under Federal Rules of Civil Procedure 26(c) and 45 on the grounds that the subpoenas seek confidential, irrelevant documents.

As required by Federal Rule of Civil Procedure 26(c) and the Court's Standing Order, before filing this motion, counsel for Lyft met and conferred with counsel for Uber in an attempt to address the issues raised by this motion. Counsel for Lyft and counsel for Uber also participated in a meeting with John Cooper, the assigned Special Master in the above-captioned matter, who has requested and approved the filing of this motion. The Special Master set a schedule for briefing with this brief due today, Uber's opposition due Tuesday, June 20 by close of business, and Lyft's reply due Thursday, June 22 by close of business.

This motion is supported by this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Carolyn Hoecker Luedtke and Taggart Matthiesen, filed concurrently herewith, the pleadings and papers filed in this action, and such further evidence or argument as may be presented at or prior to any hearing on this matter.

Lyft hereby requests a hearing on this matter to be scheduled at the Court's convenience and with the understanding that any hearing will likely occur on an expedited basis to accommodate the discovery and trial deadlines in this litigation.

DATED: June 16, 2017            MUNGER, TOLLES & OLSON LLP
                                CAROLYN HOECKER LUEDTKE
                                MARJA-LIISA OVERBECK


                         By:    */s Carolyn Hoecker Luedtke*
                                CAROLYN HOECKER LUEDTKE
                                Attorneys for Non-Party Lyft, Inc.

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   BACKGROUND ................................................................................................................. 4

III.  LEGAL STANDARD ......................................................................................................... 6

IV.  ARGUMENT ...................................................................................................................... 6

    A.    The Subpoenas Improperly Seek Confidential Commercial Information. ................ 6

    B.    The Subpoenas Seek Irrelevant Information Not Within the Scope of Permissible Discovery and Thus Create a De Facto Undue Burden. ........................ 8

    C.    If the Court Determines That Some Discovery Must Be Provided, Uber Should First Seek the Information from Waymo, a Party to the Litigation. ............. 9

V.   CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Standard Inc. v. Pfizer Inc.*,
 828 F.2d 734 (Fed. Cir. 1987) ................................................................................................. 3

*AngioScore, Inc. v. TriReme Med., Inc.*,
 No. 12-cv-03393-YGR, 2014 WL 6706898 (N.D. Cal. Nov. 25, 2014) .................................. 8

*Beinin v. Ctr. for Study of Popular Culture*,
 No. C 06-2298 JW (RS), 2007 WL 832962 (N.D. Cal. Mar. 16, 2007) .................................. 8

*Cacique, Inc. v. Robert Reiser & Co.*,
 169 F.3d 619 (9th Cir. 1999) ................................................................................................... 3

*Compaq Computer Corp. v. Packard Bell Elecs., Inc.*,
 163 F.R.D. 329 (N.D. Cal. 1995) ..................................................................................... 3, 7, 9

*Convolve, Inc. v. Dell, Inc.*,
 No. C 10-80071 WHA, 2011 WL 1766486 (N.D. Cal. May 9, 2011) .................................... 8

*Dart Industries Co. v. Westwood Chemical Co.*,
 649 F.2d 646 (9th Cir. 1980) ................................................................................................... 6

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
 34 F.3d 774 (9th Cir. 1994) ..................................................................................................... 6

*Falicia v. Advanced Tenant Servs., Inc.*,
 235 F.R.D. 5 (D.D.C. 2006) .................................................................................................... 8

*Gonzales v. Google, Inc.*,
 234 F.R.D. 674 (N.D. Cal. 2006) ......................................................................................... 6, 9

*Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*,
 211 F.R.D. 658 (D. Kan. 2003) ............................................................................................... 3

*Heilman v. Lyons*,
 No. 2:09-cv-2721 KJN P, 2010 WL 5168871 (E.D. Cal. Dec. 13, 2010) ........................... 8, 10

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
 161 F.R.D. 86 (N.D. Cal. 1995) ........................................................................................... 6, 9

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*,
 123 F. Supp. 3d 1215 (N.D. Cal. 2015) .................................................................................. 4

*Laxalt v. McClatchy*,
 116 F.R.D. 455 (D. Nev. 1986) ........................................................................................... 2, 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Li v. Sheltzer*,
   No. 1:07-cv-01039 AWI GSA, 2008 WL 2694825 (E.D. Cal. July 7, 2008) ..............................8

*Little v. City of Seattle*,
   863 F.2d 681 (9th Cir. 1988)..................................................................................................6

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005) .......................................................................................3, 4

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   No. 09-cv-01967 CW (NC), 2012 WL 4846522 (N.D. Cal. Aug. 7, 2012)................................6

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007) ..........................................................................................10

*Nitsch v. DreamWorks Animation SKG Inc.*,
   No. 5:14-cv-04062-LHK (SVK), 2017 WL 930809 (N.D. Cal. Mar. 9, 2017) ..........................9

*Soto v. Castlerock Farming & Transp., Inc.*,
   282 F.R.D. 492 (E.D. Cal. 2012)............................................................................................10

*In re Subpoena of DJO, LLC*,
   295 F.R.D. 494 (S.D. Cal. 2014)..............................................................................................7

*United States v. C.B.S., Inc.*,
   666 F.2d 364 (9th Cir. 1982)..............................................................................................6, 9

*Verinata Health, Inc. v. Sequenom, Inc.*,
   No. C 12-00865 SI, 2014 WL 2582097 (N.D. Cal. June 9, 2014) ............................................7

**FEDERAL RULES**

Fed. R. Civ. P. 26 ...........................................................................................................................2

Fed. R. Civ. P. 26(b)(1) .................................................................................................................2

Fed. R. Civ. P. 26(b)(2) .................................................................................................................9

Fed. R. Civ. P. 26(b)(2)(C)(i)..............................................................................................2, 6, 10

Fed. R. Civ. P. 26(b)(2)(C)(iii).......................................................................................................6

Fed. R. Civ. P. 26(c)(1)(G).............................................................................................................7

Fed. R. Civ. P. 45 ..................................................................................................................2, 3, 7

Fed. R. Civ. P. 45(c)(1) ..................................................................................................................3

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Fed. R. Civ. P. 45(d)(1) ................................................................................................................. 2, 6

Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv) ..................................................................................................6

Fed. R. Evid. 803 ..............................................................................................................................4

**OTHER AUTHORITIES**

Biz Caston, *Lyft Tripled its Rides in 2016*, Business Insider (Jan. 5, 2017),
    http://www.businessinsider.com/lyft-tripled-its-rides-in-2016-2017-1 ........................................1

Mike Isaac, *Lyft and Waymo Reach Deal to Collaborate on Self-Driving Cars*,
    N.Y. Times (May 14, 2017)
    https://www.nytimes.com/2017/05/14/technology/lyft-waymo-self-driving-
    cars.html ......................................................................................................................................1

*Lyft and Waymo Have Signed a Deal to Collaborate on Self-Driving Pilot Projects*,
    Fortune.com (May 14, 2017), http://fortune.com/2017/05/15/lyft-waymo-deal/ .........................1

*Meet the 2017 CNBC Disruptor 50 Companies*, CNBC.com (May 17, 2017),
    http://www.cnbc.com/2017/05/16/the-2017-cnbc-disruptor-50-list-of-
    companies.html ............................................................................................................................1

## I. INTRODUCTION

Uber and Lyft are the two biggest domestic competitors in the ride-sharing business and are engaged in robust competition with one another, with Lyft achieving notable success. Last year, Lyft handled more than 160 million rides—triple the number it handled in 2015—representing a 34.5% increase in rides from July to December 2016, compared to the 25.8% growth in total domestic rides that Uber recorded during the same 6-month period.[1] And, Lyft's development of proprietary technology, its high driver satisfaction ratings, and its stated path to profitability helped push it ahead of Uber on the 2017 "CNBC Disruptor 50" list.[2] This motion seeks the Court's assistance to stop Uber—accused of stealing trade secrets related to self-driving cars from Waymo—from using a litigation created by its own alleged wrongdoing as an improper vehicle to extract competitive intelligence from its rival Lyft in the ride-sharing business.

Specifically, on May 14, 2017, the press reported that Waymo and Lyft have entered into a collaboration related to self-driving cars.[3] While this collaboration is very exciting for Lyft and represents a tremendous development in its participation in the cutting edge world of autonomous vehicles, the details of the collaboration are confidential and are the subject of a non-disclosure agreement between Lyft and Waymo. (Declaration of Taggart Matthiesen ("Matthiesen Decl.") ¶¶ 3-4.) In light of the press reports, a Lyft spokesman confirmed: "Waymo holds today's best self-driving technology, and collaborating with them will accelerate our shared vision of improving lives with the world's best transportation." (Matthiesen Decl. ¶ 5.) A Waymo spokesman said: "Lyft's vision and commitment to improving the way cities move will help Waymo's self-driving technology reach more people, in more places."[4] Beyond that, the details of

---

[1] *See* Biz Carson, *Lyft Tripled its Rides in 2016*, Business Insider (Jan. 5, 2017) http://www.businessinsider.com/lyft-tripled-its-rides-in-2016-2017-1.

[2] *See Meet the 2017 CNBC Disruptor 50 Companies*, CNBC.com (May 17, 2017) http://www.cnbc.com/2017/05/16/the-2017-cnbc-disruptor-50-list-of-companies.html.

[3] *See* Mike Isaac, *Lyft and Waymo Reach Deal to Collaborate on Self-Driving Cars*, N.Y. Times (May 14, 2017) https://www.nytimes.com/2017/05/14/technology/lyft-waymo-self-driving-cars.html ("Isaac"); *Lyft and Waymo Have Signed a Deal to Collaborate on Self-Driving Pilot Projects*, Fortune.com (May 14, 2017), http://fortune.com/2017/05/15/lyft-waymo-deal.

[4] *See* Isaac, *Lyft and Waymo Reach Deal to Collaborate on Self-Driving Cars*, https://www.nytimes.com/2017/05/14/technology/lyft-waymo-self-driving-cars.html.

the Lyft-Waymo collaboration are not public, and they are certainly not something that Lyft's primary competitor Uber should be permitted to explore in this litigation. (*See* Mathieson Decl. ¶¶ 5-6.)

But so piqued is Uber by Lyft's alliance with Waymo that its discovery strategy in this lawsuit is now focused on probing Lyft—its main competitor in the United States—rather than pursuing relevant merits discovery. Just days after Waymo and Lyft's partnership was announced, Uber served two subpoenas on Lyft, seeking confidential documents and a deposition on twelve expansive and irrelevant topics including, among other things, Lyft's "communications with Waymo about past, current, or potential competition with Uber" and "analysis of Lyft as a potential acquisition target by Waymo, including Lyft's past, current, or potential competition with Uber." (Declaration of Carolyn Hoecker Luedtke ("Luedtke Decl."), Exs. A, B ("the Subpoenas").) Uber further seeks internal analysis "by or for Lyft on the potential impact of this Action on Uber, Lyft, or the ride-sharing market," as well as actual copies of the agreements, term sheets, and/or letters of intent between Lyft and Waymo. (Luedtke Decl., Ex. A.)

Although the standard of relevance in the context of discovery is construed broadly, it does not permit the overreaching tactic being used by Uber here, particularly for non-party discovery. *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The standards for nonparty discovery . . . require a stronger showing of relevance than for simple party discovery."). These requests facially reveal that the information Uber seeks is beyond the claims asserted in this lawsuit, and is instead an obvious effort by Uber to use the pending litigation to try to obtain competitive information from and about its primary domestic ride-sharing competitor, Lyft.

To determine whether a subpoena should be enforced, the Court is guided by Rule 45, which protects a subpoenaed party from "undue burden," and Rule 26, which provides that the Court must limit discovery if "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 45(d)(1); Fed. R. Civ. P. 26(b)(2)(C)(i), (b)(1). A party or lawyer responsible for issuing and serving a subpoena therefore must take reasonable steps to avoid imposing undue burden or expense on a person subject to the

-2-

1  subpoena.  Fed. R. Civ. P. 45(c)(1).

2       Uber has failed to heed the mandate of Rules 45 and 26 to avoid imposing undue burden
3  on non-party Lyft for several reasons.

4       *First*, it cannot reasonably be disputed that the information that Uber seeks qualifies as
5  "confidential . . . commercial information" within the meaning of Rule 45.  Disclosure of
6  confidential information to a competitor carries the presumption of harm, and Uber has not
7  demonstrated a "substantial need" for the information sufficient to override the inherent harm in
8  Lyft's information being released to a direct competitor.  *Am. Standard Inc. v. Pfizer Inc.*, 828
9  F.2d 734, 741 (Fed. Cir. 1987) ("Courts have presumed that disclosure to a competitor is more
10 harmful than disclosure to a noncompetitor."); *Compaq Computer Corp. v. Packard Bell Elecs.,*
11 *Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995).

12      *Second*, and relatedly, the Subpoenas are overbroad and seek irrelevant information.  Lyft
13 is a non-party who understands that it has not been identified in any party's disclosures (or
14 otherwise) as having relevant or potentially relevant knowledge or information about the
15 misappropriation claims at issue.  *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal.
16 2005) (citing *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 662
17 (D. Kan. 2003)) (to assess undue burden, courts must consider relevance); *see also Cacique, Inc.*
18 *v. Robert Reiser & Co.*, 169 F.3d 619, 622 (9th Cir. 1999) ("Enforcing a discovery request for
19 *irrelevant* information is a per se abuse of discretion.") (emphasis in original).  When asked during
20 meet and confer efforts to explain the relevance of the documents sought under the broadly-drafted
21 requests, Uber's counsel responded that the information requested might reveal that Waymo
22 disclosed the trade secrets at issue in the litigation to Lyft, or that during their negotiations Waymo
23 might have provided Lyft with an estimated value of the trade secrets. (Luedtke Decl. ¶ 4.)  This
24 is utterly speculative and not a proper justification for overbroad discovery into a non-party
25 competitor's business.  Any effort to try to narrow the discovery to the particular trade secrets
26 does not solve the problem.  Uber cannot tailor its requests to Lyft without disclosing the trade
27 secrets, which are under a Protective Order and unavailable to Lyft, and Lyft cannot tailor the
28 requests served on it without revealing confidential information about the nature of the

-3-
NON-PARTY LYFT, INC.'S MOT. FOR PROTECTIVE
ORDER & TO QUASH; CASE NO. 3:17-CV-00939-WHA

communications and documents that do or do not exist.

*Third*, if the Court were to determine that some narrowly tailored category of information related to the Lyft-Waymo collaboration ought to be produced (which Lyft argues it should not), Uber could (and should) first seek that information from the actual parties to this litigation. *See Moon*, 232 F.R.D. at 638 ("Since plaintiffs have not shown they have attempted to obtain these documents from defendant, the Court finds that, at this time, requiring nonparty KSA to produce these documents is an undue burden on nonparty KSA."); *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1219 (N.D. Cal. 2015) ("As between parties to litigation and nonparties, the burden of discovery should be placed on the latter only if the former do not possess the material sought to be discovered.") (quotation omitted). The rationale behind this general rule is placed into sharp focus in a case such as this where Uber confirmed in meet and confer that it has served overlapping requests on Waymo. (Luedtke Decl. ¶ 5.) While there are no requests related to Lyft that are appropriate in this litigation, if the Court disagrees, any such discovery should be pursued first through meet and confer and significantly narrowed requests to Waymo insofar as the trade secrets at issue can be discussed with Waymo.

For the reasons set forth herein, Lyft is entitled to a protective order and the motion to quash should be granted.[5]

## II.  BACKGROUND

On May 19, 2017, Uber served Lyft with a non-party deposition subpoena and a *subpoena duces tecum* for the production of documents. (Luedtke Decl. ¶ 2, Exs. A, B.) The Subpoenas are identical in terms of content, and seek sweeping categories of documents and testimony including:

- "All communications with Waymo about past, current, or potential competition with Uber." (Luedtke Decl., Ex. A (Request No. 1));

- "All documents relating to analysis of Lyft as a potential acquisition target by Waymo, including Lyft's past, current, or potential competition with Uber." (*Id.* (Request No. 2));

---

[5] The deposition subpoena should be quashed for the additional reason that it is duplicative and unnecessary insofar as it overlaps entirely with the document subpoena. To the extent the deposition subpoena was issued for purposes of authenticating any documents produced, this could more easily be accomplished by declaration under the Federal Rules of Evidence. *See* Fed. R. Evid. 803; *Intermarine*, 123 F. Supp. 3d at 1218 (quashing deposition subpoena requiring "further testimony" about produced documents as "duplicative and unnecessarily burdensome").

- "All communications with Waymo relating to the ride-sharing market or autonomous vehicles that refer to Uber." (*Id.* (Request No. 10).);

- "All documents relating to any analysis by or for Lyft on the potential impact of this Action on Uber, Lyft, or the ride-sharing market." (*Id.* (Request No. 12).)

On May 26, 2017, counsel for Lyft reached out to counsel for Uber to commence the meet and confer process. (Luedtke Decl. ¶ 3, Ex. C.) The parties engaged in a good faith effort to meet and confer and were unable to resolve their disputes. Specifically, on May 30, 2017, counsel for Lyft engaged in a telephonic meet and confer with counsel for Uber (located in Denver, Colorado), and asked for Uber's explanation regarding the relevance of the requested documents. (Luedtke Decl. ¶ 4.) Uber's counsel claimed that there could be communications between Lyft and Waymo that discussed the value of the specific trade secrets at issue in the litigation or that discussed whether those trade secrets were generally known in the industry. (*Id.*) Uber's counsel could not share a description of the trade secrets at issue because he said they were designated as "attorneys' eyes only" under a Protective Order. (*Id.*) Lyft's counsel reiterated concerns about the lack of relevance and overbreadth of the Subpoenas, but agreed to talk further the next week. (*Id.*)

Counsel engaged in additional telephonic meet and confer conversations on June 1 and June 8, 2017. (Luedtke Decl. ¶ 5.) During these discussions, Lyft's counsel again explained Lyft's concerns about Uber seeking competitively sensitive information from Lyft as a non-party in litigation where Uber has been accused of wrongdoing. (*Id.*) Lyft's counsel also explained that the requests are overbroad and seek irrelevant information, but that Lyft is hamstrung to propose narrowed requests because it does not know the specific trade secrets at issue and the very act of meeting and conferring about what documents exist could reveal confidential information about the Lyft-Waymo collaboration. (*Id.*) Uber's counsel said he was unable to propose narrowed requests. (*Id.*) He did confirm that Uber sought similar categories of documents from Waymo and were meeting and conferring with Waymo in parallel. (*Id.*) Uber's counsel provided an extension on the time to respond to the Subpoenas to June 16, 2017. (*Id.*)

On June 13, 2017, counsel for Lyft participated in a meeting with counsel for Uber and John Cooper, the Special Master assigned to this action. During that call, counsel for Lyft and Uber set forth their respective positions on the Subpoenas, and the Special Master agreed that an

impasse had been reached and authorized Lyft to file the instant motion before the Court.

## III.    LEGAL STANDARD

Rule 45(c) requires the party issuing a subpoena to take "reasonable steps to avoid imposing undue burden or expense" on the person subject to the subpoena. Fed. R. Civ. P. 45(d)(1); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). Where a subpoena seeks "disclosure of privileged or otherwise protected matter" or "subjects a person to undue burden," the Court shall issue an order quashing or modifying the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i), (iii); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (a court determining the appropriateness of a subpoena "balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena").

With respect to non-party discovery, greater restrictions are permitted. *See, e.g.*, *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted . . . the 'necessary' restriction may be broader when a nonparty is the target of discovery."); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-01967 CW (NC), 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts.") (citing *United States v. C.B.S., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982) (noting courts afford special protections to nonparties because they "are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of litigation."); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995).

This court "has wide discretion" on discovery and "will not be overturned unless there is a clear abuse of discretion." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

## IV.    ARGUMENT

### A.    The Subpoenas Improperly Seek Confidential Commercial Information.

Under Federal Rule of Civil Procedure Rule 45, a court may quash a subpoena that requires the disclosure of confidential commercial information. Fed. R. Civ. Proc. 45(d)(3)(B)(i)

1  (court may quash or modify a subpoena that requires "disclosing a trade secret or other
2  confidential research, development, or commercial information"); *see also* Fed. R. Civ. P.
3  26(c)(1)(G) (court may enter an order requiring that "confidential research, development, or
4  commercial information not be revealed").

5  　　　　The Subpoenas demand the production of documents containing confidential and
6  proprietary business information, such as all "communications" between Lyft and Waymo "about
7  past, current, or potential competition with Uber," (Luedtke Decl., Ex. A, Request No. 1); all
8  "communications" between Lyft and Waymo "relating to the ride-sharing market or autonomous
9  vehicles that refer to Uber" (*id.*, Request No. 10); and internal "[a]nalysis by or for Lyft on the
10 potential impact of this Action on Uber, Lyft, or the ride-sharing market." (*id.*, Request No. 12.)
11 These requests are in addition to Uber's demands to see any actual agreements, term sheets, and/or
12 letters of intent relating to Waymo and Lyft's alliance, notwithstanding the confidential nature of
13 those documents.

14 　　　　To the extent any such communications or analyses exist—which is pure speculation by
15 Uber, as demonstrated by the overbreadth of the requests themselves—they would be proprietary
16 and competitively sensitive. (*See* Matthiesen Decl. ¶¶ 3-6.) For this reason, Lyft has not disclosed
17 in meet and confer or in this Motion whether responsive documents exist because a description of,
18 and details about, Lyft and Waymo's collaboration is confidential. (*Id.*) While Lyft has
19 acknowledged the existence of the partnership with Waymo in the self-driving car arena, neither
20 company has provided details to the public. (*See id.* ¶ 5.)

21 　　　　In such circumstances where confidential information is at issue, the requesting party must
22 demonstrate a "substantial need for the testimony or material that cannot be otherwise met without
23 undue hardship." *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 2582097,
24 at *2 (N.D. Cal. June 9, 2014); *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal.
25 2014). This showing must be particularly strong "when confidential information from a non-party
26 is sought." *Compaq*, 163 F.R.D. at 338 (requiring moving party to show "substantial need" before
27 court compels "disclosure of trade secrets or other confidential research, development or
28 commercial information"). Uber has not, and cannot, make any such "strong showing of need"

here.  *Convolve, Inc. v. Dell, Inc.*, No. C 10-80071 WHA, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) (Alsup, J.) ("The subpoena calls for confidential technology . . . While a protective order would restrict access to some extent, it would still allow access by counsel, legal assistants, experts, their assistants, the jury, and court staff . . . [the non-party] should not have to suffer such disclosure without a clear-cut need and a subpoena narrowly drawn to meet that need.").

The Subpoenas call for the disclosure by Lyft—to one of its primary competitors—of confidential business agreements, strategies, tactics, and work plans.  Even a meet and confer about narrowing the requests would call on Lyft to reveal information about the nature of the communications that exist for a partnership that has not been publicly described.  Uber has shown no substantial need for this information, particularly where Lyft's competition with Uber is not at issue in the pending litigation.  *See Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 7 (D.D.C. 2006) (courts "presume[] that disclosure to a competitor is more harmful than disclosure to a noncompetitor") (citations omitted).  For this reason alone, the motion should be granted.

**B.     The Subpoenas Seek Irrelevant Information Not Within the Scope of Permissible Discovery and Thus Create a De Facto Undue Burden.**

A subpoena must be narrowly tailored to request only evidence which is necessary in the presentation of a party's case.  *See AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-03393-YGR (JSC), 2014 WL 6706898, at *1 (N.D. Cal. Nov. 25, 2014) (Corley, J.).  This is particularly true when the discovery is sought from a non-party.  *Convolve*, 2011 WL 1766486, at *2 ("Requests to non-parties should be narrowly drawn to meet specific needs for information."); *Beinin v. Ctr. for Study of Popular Culture*, No. C 06-2298 JW (RS), 2007 WL 832962, at *2 (N.D. Cal. Mar. 16, 2007) ("A court keeps this distinction between a party and nonparty in mind when it determines the propriety of a nonparty's refusal to comply with a subpoena").  Thus, in all instances, and especially so with non-parties, "[p]roper reliance on a subpoena duces tecum is limited by the relevance standards set forth in Federal Rule of Civil Procedure 26(b)(1) . . . and considerations of burden and expense set forth in Federal Rules of Civil Procedure 26(b)(2) and 45(c)(1)."  *Heilman v. Lyons*, No. 2:09-cv-2721 KJN P, 2010 WL 5168871, at *1 (E.D. Cal. Dec. 13, 2010) (internal citation omitted); *Li v. Sheltzer*, No. 1:07-cv-01039 AWI GSA, 2008 WL 2694825, at *2 (E.D.

Cal. July 7, 2008) ("[T]he standards for non-party discovery require a stronger showing of relevance than for party discovery."); *Laxalt*, 116 F.R.D. at 458 (same).

The Subpoenas here are plainly overbroad and seek documents that are irrelevant to the claims asserted against Uber. Uber is alleged to have used trade secrets wrongly obtained from Waymo, yet the Subpoenas have nothing to do with these trade secret allegations, and instead request agreements, letters of intent, and term sheets relating to Waymo and Lyft's alliance (Luedtke Decl., Ex. A, Request Nos. 3-5), and communications between Waymo and Lyft about "past, current, or potential competition with Uber." (*Id.*, Request No. 1.) Even more irrelevant are Uber's requests for *internal analyses* conducted by Lyft on "the potential impact" of the instant litigation "on Uber, Lyft, or the ride-sharing market." (*Id.*, Request No. 12.) Even assuming any such internal analyses related to the "potential impacts" of this litigation exist, there is no grounded reason why they would be relevant to this litigation or any of Uber's defenses.

The protections due to Lyft as a non-party—especially in light of the irrelevance of the information sought—weigh heavily against Uber in a burden analysis. *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (awarding sanctions against party who failed to avoid burden to non-party); *Gonzales*, 234 F.RD at 683. Because the sought-after information is not relevant to the underlying litigation, any burden imposed upon Lyft would be undue, providing the Court with good cause to issue the requested protective order. *Compaq*, 163 F.R.D. at 335-36.[6]

### C. If the Court Determines That Some Discovery Must Be Provided, Uber Should First Seek the Information from Waymo, a Party to the Litigation.

Lyft strenuously objects to discovery into its confidential collaboration with Waymo being provided by either Lyft or Waymo, and it objects to any meet and confer process that would disclose the nature of the documents that exist. However, if the Court finds that there needs to be some considerably narrowed discovery on the topic, Lyft respectfully submits that this narrow production should come from Waymo in the first instance and not non-party Lyft.

---

[6] Lyft reserves its right to seek expenses if the Subpoenas are not quashed. *See Nitsch v. DreamWorks Animation SKG Inc.*, No. 5:14-cv-04062-LHK (SVK), 2017 WL 930809, at *1 (N.D. Cal. Mar. 9, 2017); *C.B.S., Inc.*, 666 F.2d at 371-72.

Generally, a party must first seek discovery from parties to the litigation before turning to non-parties.  Specifically, a court may limit discovery if it determines the information is available from another source that is "more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).  In applying this rule, courts have required a party to seek discovery from its party opponent first before burdening a non-party.  *Heilman*, 2010 WL 5168871, at *1 (citing cases); *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) ("[T]here is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007).  The rationale behind this rule is amplified here, where (1) Uber has served overlapping requests on Waymo, and (2) those requests could be tailored through meet and confer with Waymo insofar as Waymo has knowledge of the trade secrets at issue and can work with Uber to narrow the requests appropriately.

## V.  CONCLUSION

For the foregoing reasons, Lyft respectfully requests that the Court grant its motion for protective order and to quash the Subpoenas.

DATED:  June 16, 2017

MUNGER, TOLLES & OLSON LLP
  CAROLYN HOECKER LUEDTKE
  MARJA-LIISA OVERBECK

By: *s/ Carolyn Hoecker Luedtke*
      CAROLYN HOECKER LUEDTKE
Attorneys for Non-Party Lyft, Inc.