CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
MARJA-LIISA OVERBECK (State Bar No. 261707)
mari.overbeck@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

Attorneys for Non-Party Lyft, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　　Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DECLARATION OF TAGGART MATTHIESEN IN SUPPORT OF NON-PARTY LYFT, INC.'S MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS**<br><br>Date:　　TBD<br>Time:　　TBD<br>Crtrm.:　F – 15th Floor<br>Judge:　The Hon. Jacqueline Scott Corley<br><br>Trial Date: October 2, 2017 |

**DECLARATION OF TAGGART MATTHIESEN**

I, Taggart Matthiesen, declare and state as follows:

1. I am the Director, Product Management at Lyft, Inc. ("Lyft"), which I understand has been served with various subpoenas by Uber Technologies, Inc. ("Uber") in the above-captioned litigation between Waymo, LLC ("Waymo") and Uber. The matters set forth herein are based on my personal knowledge. If called as a witness, I could and would testify competently to the matters set forth herein.

2. I have been the Director, Product Management at Lyft since July of 2015. In my capacity as Lyft's Director, Product Management, I am in charge of developing and communicating Lyft's product vision from its executive leadership to its development and implementation teams. Among other responsibilities, I investigate, select, and drive the development of Lyft's products, ensuring that I clearly articulate the business value of any new products to my team so that they understand the intent behind the new product or product release, and so that we can push the strategy behind the product along with its roadmap and work with Lyft's engineering team to build the product that Lyft has envisioned. As Lyft's Director, Product Management, I was involved in negotiating the collaboration between Lyft and Waymo related to autonomous vehicles.

3. During the Lyft/Waymo negotiations, Lyft and Waymo agreed that these negotiations, as well as the scope of any collaboration between the parties, would remain highly confidential. To facilitate and underscore the confidentiality of the parties' negotiations and any exchange of information related to those negotiations, Lyft and Waymo entered into a reciprocal non-disclosure agreement.

4. Based on my involvement in the negotiations between Lyft and Waymo, Lyft took its non-disclosure obligations seriously and took measures to ensure that the nature of the collaboration and the negotiations themselves remained confidential. For example, Lyft carefully selected a small team of Lyft employees who would be involved in the negotiations. Outside of this limited group, Lyft asked for input on the deal from a limited number of other employees and

only on an "as needed" basis to get feedback on specific issues as they arose. The terms of the deal remain confidential, even within Lyft.

5. The Lyft/Waymo collaboration appeared in a news story that was published on May 14, 2017. When Lyft was called for comment, it confirmed the deal in a short public statement, noting only that "Waymo holds today's best self-driving technology, and collaborating with them will accelerate [Lyft's] shared vision of improving lives with the world's best transportation." My understanding is that Waymo also publicly confirmed the deal. I am not aware of any other public comments that Lyft or Waymo have made about the deal. In fact, the details of the Lyft-Waymo alliance, including the level of collaboration expected, remain highly confidential.

6. By involving only a limited number of people in the negotiations, and by ensuring that only this limited team has access to the deal details, Lyft has taken steps to ensure the confidentiality of the nature of its alliance with Waymo. Lyft has done so to protect its business strategies, such as its visions for the future of Lyft and the ride-sharing industry generally, from its competitors, including Uber.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on June 15, 2017, at San Francisco, California.

_____
Taggart Matthiesen