QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa J. Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:   (415) 875-6600
Facsimile:   (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>            Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**WAYMO'S RESPONSE TO DEFENDANTS' PRÉCIS ON MOTIONS *IN LIMINE* IN RESPONSE TO CASE MANAGEMENT ORDER RE: TRIAL PREPARATION** |

***Waymo's Response to MIL No. 1: "Attorney-Client Privilege and Work Product Protection"***

Defendants argue that "[i]t is impermissible to draw an adverse inference from a party's invocation of the attorney-client privilege or work product protection," such that "any argument or evidence regarding, or designed to elicit, Uber's assertions of attorney-client privilege" should be precluded. (Def. Precis (Dkt. 641) at 1.) That is not the law. While the mere assertion of attorney-client privilege or work-product protection may not warrant an adverse inference in all circumstances, Defendants do not, and cannot, show that any and all evidence "regarding" or "designed to elicit" assertion of the privilege should be barred, as Defendants broadly assert.

For example, in *GSI Tech., Inc. v. United Memories, Inc.*, No. 5:13-cv-01081-PSG, 2016 WL 3035699, at *11 (N.D. Cal. May 26, 2016), the defendant played a video clip of plaintiff's attorney instructing a fact witness not to answer a question on the grounds of attorney-client privilege. *Id.* The court rejected the argument that this was improper, holding that the plaintiff failed to cite any cases "holding that evidence of the assertion of the privilege causes a jury to draw an adverse inference." *Id.* In other words, just because evidence of the privilege assertion is admitted, that does not mean the jury will draw an adverse inference from such assertion.

Moreover, there are important and wholly legitimate reasons why Waymo might need to inform the jury about a privilege assertion. The most obvious reason is to dispel jury confusion about why key tranches of evidence are missing from this case. Some of the "key issues" in this case involve Uber's acquisition of Otto and "what Uber knew and when they knew it" about Mr. Levandowski's downloading of Waymo's confidential files. (Dkt. 625 at 40:6-11.) Yet Defendants have asserted privilege over thousands of documents and communications relating to these issues, meaning that the jury will be faced with a gaping evidentiary hole on some of the most important issues in this case. The Court itself has already noted how Defendants' sweeping privilege assertions have resulted in "relentless concealment of likely probative evidence, both documentary and testimonial, from Waymo's view." Preliminary Injunction Order (Dkt. 426) at 8. These same privilege assertions are likely to hide vast swaths of evidence from the ***jury's*** view, and create puzzling (at best) evidentiary holes on critical issues in this case.

The jury is likely to be confused by these evidentiary holes, but this confusion could be ameliorated by simply informing the jury that these evidentiary holes are the result of Defendants' privilege assertions, with an appropriate clarifying instruction.  Ergo, the parties should be allowed to make this point to the jury, so that the jury is not confused as to why critical issues in this case have significant evidentiary holes.  *See, e.g.*, *United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 445-448 (Ariz. Ct. App. 1983) (affirming trial court's ruling that "if they can't get the evidence in, I think the jury has a right to know why they can't get the evidence in"); *see also Commonwealth v. Simms*, 521 A.2d 391, 395 (Pa. 1987) ("Forcing that witness to invoke the statutory privilege in the presence of the jury in no way undermines the underlying policy supporting that privilege.").

But *even if* the Court were to rule that Waymo cannot directly comment on Defendants' invocation of privilege, Defendants' request to preclude all evidence or argument "regarding" or "designed to elicit" assertion of privilege is vastly overbroad.  For example, Waymo is certainly allowed to comment on the absence of evidence regarding key issues, even if the reason for this absence is Defendants' assertion of privilege.  (*See* Dkt. 548 at 5-6.)  A contrary rule would muzzle Waymo from even talking about the relative weight of evidence that each party has offered in this case, which would be wholly unfair.  Similarly, Waymo should not have to suffer the *in terrorem* effect of an *in limine* rule precluding all argument and evidence "designed to elicit" Uber's assertion of privilege.  Such a rule would be difficult if not impossible to administer, and could allow Defendants to turn legitimate Waymo questions into *in limine* violations merely by having the witness assert privilege in response to the question.

Finally, apart for any issues surrounding invocation of attorney-client privilege or work product protection, an adverse inference based on invocation of **Fifth Amendment** privilege together with other corroborating evidence is certainly appropriate.  As detailed in Waymo's *in limine* precis (Dkt. 640-4 at 1-3), there is compelling evidence that Uber possessed the 14,000 files that Mr. Levandowski stole — whether these files were stored on Uber's own servers or stored on Mr. Levandowski's devices for him to use (as Uber's agent, employee and officer) in furthering

Uber's self-driving car efforts. This evidence, combined with Mr. Levandowski's assertion of Fifth Amendment privilege, would at minimum warrant an adverse inference that Uber possessed these files. As the Court already noted, "it would strain credulity to imagine that Levandowski plundered Waymo's vault the way he did with no intent to make use of the downloaded trove." (Preliminary Injunction Order at 9-10.) In this context, Mr. Levandowski "making use" of Waymo's files would mean using them as Uber's agent to further Uber's self-driving car efforts.

***Waymo's Response to MIL No. 2: "Evidence of Irrelevant and Unfairly Prejudicial Character Evidence About Matters Garnering Substantial Media Attention on Uber and Its Employees"***

Defendants' Motion *in Limine* No. 2 is vague, overbroad, and not amenable to resolution *in limine*. Defendants provide a laundry list of Uber matters "garnering substantial media attention," ranging from matters that are relatively removed from this case (such as sexual harassment investigations) to matters that are directly linked to this case (such as the Court's referral of Mr. Levandowski's theft to the U.S. Attorney's Office for criminal investigation). Defendants then state that ***all*** of these disparate matters should be precluded as irrelevant character evidence under Rules 401, 403, and 404. (Def. Precis at 3-4.) A single *motion in limine* is not a proper vehicle to decide on the admissibility or inadmissibility of such varied evidence. *Norman v. CP Rail Sys.*, No. 99 C 2823, 2000 WL 1700137, at *2 (N.D. Ill. Nov. 13, 2000) ("A few well-focused motions addressed to real, live concerns are what is called for in making motions in limine; use a fine paintbrush, not a spray can."); *Volland-Golden v. City of Chi.*, No. 13-C-1477, 2016 WL 4678299 at *5 (N.D. Ill. Sept. 7, 2016) ("D. Motion 3 asks that this Court 'bar testimony/evidence/argument reference to unrelated allegations of police misconduct in the media' . . . [the Court] denies without prejudice D. Motion 3 in its global form, with defendants free to raise that issue in individual circumstances at the time of trial.")

Defendants' preclusion request as to these matters is also premature. Discovery in this case has been held up by Defendants' aggressive and overbroad assertion of privilege, meaning that Waymo does not yet know whether any of the "internal and external investigations" that

Defendants reference might dovetail with the relevant issues in this case. For example, Defendants seek to broadly preclude "evidence about [Uber CEO] Mr. Kalanick," including evidence about Mr. Kalanick's "leadership style." (Def. Precis at 4.) But at this point in the case, where Mr. Kalanick has not yet been deposed, few of his email communications have been produced, and *none* of the dozens of text messages he sent to Mr. Levandowski have been produced, Waymo simply does not know how deeply Mr. Kalanick was personally involved in Uber's trade secret theft. Depending on how discovery progresses on these issues, evidence about Mr. Kalanick could become highly relevant.

The various Uber matters discussed in Defendants' motion could also be fair game for impeachment. For example, if any of Defendants' witnesses argue that Uber is an upstanding corporate citizen that has never engaged in any malfeasance, then it is perfectly acceptable for Waymo to impeach that witness by pointing to specific instances where Uber has been investigated or sanctioned for various acts of malfeasance. Even if such evidence were deemed "character evidence," it would be admissible for impeachment purposes. *Norby v. City of Tombstone*, No. CIV 07-232-TUC-CKJ, 2012 WL 6725608, at *5 (D. Ariz. Dec. 27, 2012) ("Plaintiffs are precluded from presenting character evidence *except for impeachment purposes*.") (emphasis added); *Lombardo v. Stone*, No. 99 CIV. 4603 (SAS), 2002 WL 113913, at *6 (S.D.N.Y. Jan. 29, 2002) ("Character evidence may also be used to impeach.")

Turning to the specifics of the "Uber matters" that Defendants seek to preclude, at least one of these matters — the referral of Mr. Levandowski to the U.S. Attorney's Office for criminal investigation — is relevant to the issues in this case. Indeed, this criminal referral supports a key issue in this case: namely, that Mr. Levandowski stole Waymo's trade secrets.

Defendants' cited cases are not to the contrary. In *FDIC v. Refco Grp., Ltd.,* 184 F.R.D. 623 (D. Colo. 1999), the relevant question was whether defendant Refco had committed bad acts that resulted in the failure of Jefferson Bank & Trust ("JBT"). The court excluded evidence of a six-year-old criminal investigation of *JBT*'s former president, on the ground that this evidence had "limited probative value" which was outweighed by the risk of prejudice or jury confusion. *Id.*

626. But whereas the investigation of JBT's former president was only tenuously linked to the question of whether Refco had committed culpable bad acts, here the criminal investigation of Mr. Levandowski is much more closely connected to the relevant legal questions in this case. Thus, while the Rule 403 balance tipped against admissibility in *Refco*, the opposite is true here.

Defendants' other cited case, *J.W. v. City of Oxnard*, No. CV 07-06191, 2008 WL 4810298 (C.D. Cal. Oct. 27, 2008), is also readily distinguishable. *J.W.* was a civil suit over alleged sexual abuse by a police officer, and the sexual abuse allegations automatically triggered a "routine criminal investigation" of the officer. *Id.* at *2. Particularly given that the investigation was a "routine" response to the allegations, the court found that there was no "compelling argument for introduction of evidence that a criminal investigation occurred . . ." *Id.*[1] Here, however, the Court's referral of Mr. Levandowksi for criminal investigation was hardly a routine occurrence. Thus, this referral has far more probative value than the routine criminal investigation in *J.W.*

As for the other Uber matters that Defendants raise in their motion *in limine* — sexual harassment investigations, investigations into Uber's deception of government regulators, etc. — Waymo has no present intent to prove its liability case based on these other matters. However, these other matters would at least be relevant to damages. For example, trade secret damages (like patent damages) can be assessed through a hypothetical negotiation between the parties. *Secure Energy, Inc. v. Coal Synthetics, LLC*, 708 F. Supp. 2d 923, 931 (E.D. Mo. 2010); *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 189 (S.D.N.Y. 2002). If Uber was being pummeled in the press due to sexual harassment allegations, government-regulator deceptions, etc., then this could be relevant to what sort of bargain Uber would have been motivated to strike with Waymo in order to resolve this case.

DATED:  June 19, 2017                          QUINN EMANUEL URQUHART & SULLIVAN, LLP

---

[1] Moreover, the parties in *J.W.* actually **agreed** that the fact of the criminal investigation would not be admissible, at least during the liability phase of trial, thus making *J.W.* a particularly easy preclusion case. 2008 WL 4810298 at *2.

By */s/Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC