

June 19, 2017

The Honorable William Alsup
U.S. District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

    Re:    *Waymo LLC v. Uber Technologies, Inc., et al.*, No. C 17-00939-WHA

    Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") submit this response to Waymo LLC's June 16, 2017 Précis (Dkt. 640-3). For the reasons set forth below, Waymo's two proposed motions *in limine* are improper.

**Waymo MIL #1: Preclude Uber From Presenting**
**Evidence That It Never Received The Downloaded Files**

    Waymo's lawsuit hinges on its ability to prove to a jury that Uber misappropriated alleged trade secrets found in the 14,000 files Mr. Levandowski downloaded while employed by Waymo (the "Downloaded Files"). Under the law, to show misappropriation, Waymo must show that Uber *acquired*, disclosed, or used the trade secrets at issue. *See* 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1.

    With this MIL, however, Waymo seeks to prevent the jury from hearing facts core to Uber's defense: specifically, that Uber never acquired—improperly or otherwise—the Downloaded Files, much less any trade secrets alleged to be contained therein. This is as true today as when Waymo filed its lawsuit. In response to Waymo's claims, Uber conducted an extensive forensic examination of its file servers, performed over 80 custodial interviews of former Waymo employees, and reviewed hundreds of thousands of documents in its search for the Downloaded Files. (*See* Dkt. 183; Dkt. 303; Dkt. 305). Since then, Uber finished searching all LiDAR servers, surveyed or interviewed over 120 employees to determine if they have seen or heard any of the Downloaded Files, and permitted Waymo's counsel to inspect Uber's facilities, email, computers, documents, design files, and source code in San Francisco and Pittsburgh on seven occasions. In doing so, Uber has made available for inspection over 383,000 emails and documents; the devices of Anthony Levandowski, Gaetan Pennecot, Daniel Gruver, James Haslim, and Asheem Linaval; and all four locations in which there is ongoing LiDAR development. To date, Waymo has conducted approximately 47 hours and 54 minutes of inspection and continued its investigation. Yet, no one—neither Waymo nor Uber—has located any evidence that the Downloaded Files ever made their way to Uber's networks.

    Waymo knows full well that its lack of evidence against Uber—the Defendant that Waymo chose to sue—is a fundamental flaw in its case, and it needs the Court's assistance to dispose of it. Its proposed motion *in limine*, therefore, is simply an improper attempt to have this Court resolve that core factual dispute in its favor. As a matter of law, however, motions *in limine* cannot be used to resolve factual disputes. *See e.g.*, *Sec. & Exch. Comm'n v. Sabrdaran*,



No. 14-CV-04825-JSC, 2016 WL 7826653, at *2 (N.D. Cal. Oct. 20, 2016) ("Dr. Sabrdaran's challenge on this front goes to weighing the evidence, which is the province of the jury; the Court therefore declines to resolve the factual dispute on a motion *in limine*."); *Feld v. Heeter*, No. C 06-4031 JF (PVT), 2008 WL 2982015, at *1 (N.D. Cal. July 31, 2008) ("Whether Plaintiffs can demonstrate that they came within the tort-of-another doctrine is a contested factual question that is not appropriate for disposition by a motion *in limine*.").

Waymo does not—and cannot—contend that these files ever came into Uber's physical possession. Indeed, it implicitly recognizes as much. (See Dkt. 640-3 at 2). Instead, based on a single email between counsel exchanged in the course of this litigation (*id*. at 1 n.1 (quoting Dkt. 637-7)), Waymo argues that Stroz Friedberg ("Stroz") and Morrison & Foerster ("MoFo") acquired the Downloaded Files, and that acquisition should be imputed to Uber. As that email clearly explains, however, Mr. Levandowski, not Uber or its counsel, at all times controlled access to the materials he provided to Stroz, per the terms of his contract with Stroz. Mr. Levandowski never relinquished that control, and neither he nor Stroz ever provided those files to Uber.

Uber directed Mr. Levandowski to return any Google files that he may have or that he may have given to Stroz. He did not comply and was terminated. More recently, Uber sent additional letters to both Mr. Levandowski and Stroz making absolutely clear that Uber wants any Google material that may have been given to Stroz by Mr. Levandowski to be returned to Google.

Not only does Waymo get the facts wrong, it intends to ask for a ruling that is contrary to law: "it is generally not appropriate to direct a jury to impute an agent's knowledge of a [trade] secret to the principal" because "such an instruction would permit recovery even when the trade secret was not actually communicated to or used by the principal," and a "plaintiff is not entitled to a windfall when in fact there has been no invasion of those interests which trade-secret law seeks to protect." *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792-93 (9th Cir. 1976) (applying California law). "Whether the agent conveyed such information to the corporation is a question for the fact-finder to decide." *Id*. at 793 n.1.[1] Thus, even if Waymo can prove that Stroz or MoFo possessed the Downloaded Files, that proof does not establish that *Uber* possessed or used them.

Nor can Waymo impute Mr. Levandowski's alleged possession of the Downloaded Files to Uber. Waymo argues that, because it presented evidence that Mr. Levandowski downloaded files *while employed at Waymo*, Uber should not be allowed to present evidence that it never received the Downloaded Files. But an individual's independent theft of a trade secret does not amount to misappropriation by that individual's *future* employer where the employer never acquired, disclosed, or used the trade secret allegedly stolen by the individual it later hired. *See CanWe Studios LLC v. Sinclair*, No. CV136299PSGFFMX, 2013 WL 12120437, at *7 (C.D. Cal.

---

[1] Waymo's contention that any information passed to Uber's outside counsel or the firm it hired to conduct a due diligence investigation should be imputed to Uber is also unpersuasive on its face because outside counsel and the third parties they retain are routinely engaged to access and review documents that a client cannot review or possess for reasons of confidentiality. Waymo's argument would destroy the very logic behind attorneys' eyes only designations.



Nov. 20, 2013) (no actual or threatened trade secret misappropriation where plaintiff could not show that former employee was "actually using its source code" or "intend[ed] to use Plaintiff's source code"); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 230 (2010), *as modified on denial of reh'g* (May 27, 2010) *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) (denying plaintiff's motion for summary judgment where defendant "never *had* the trade secret whose theft is the subject matter of this action") (emphasis in original).

A hypothetical previously offered by this Court demonstrates correctly why Mr. Levandowski's possession cannot be simply imputed to Uber. In that hypothetical, the Court noted that, while Mr. Levandowski downloaded certain material, it was possible that Uber said "we just want [Mr. Levandowski]. He is brilliant. He is the man in the Smithsonian with the motorcycle. We just want him. We don't want his documents. So go put those documents in a vault. Never look at them. Promise us you're never going to inspect them." (Public PI Hr'g Tr. 107-109). The Court referred to this as an "innocent explanation," noting that no explanation had been proved up yet and that Waymo had thus far failed to produce a "smoking gun." (*Id.*).

Further, and contrary to Waymo's contention, Uber *did* take steps to prevent Mr. Levandowski from bringing any Waymo files with him. For example, Uber's employment agreement with Mr. Levandowski required him to certify that he would "not use or disclose any trade secrets or other proprietary information" belonging to Waymo, and that he had "returned or destroyed all property and confidential information belonging to any prior employer."[2] Indeed, as Uber stated in response to Waymo's First Set of Expedited Interrogatories, during a meeting on or around March 11, 2016, Mr. Kalanick told Mr. Levandowski that he should not bring any Google information into Uber and that Uber did not want any Google information. Waymo relies upon this very interrogatory response but selectively omits this part.

Waymo's attempt to dispose of its burden of proving that Uber actually acquired and possessed the Downloaded Files is really just an assertion that Mr. Levandowski *must have* disclosed the files to Uber because he later went to work there. That argument is a thinly veiled articulation of the "inevitable disclosure" doctrine, which California has definitively rejected. *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463 (2002). California refuses to find trade-secret misappropriation based solely on an assertion that an employee's new job duties will inevitably cause him or her to rely on trade secrets gained from a former employer because of its strong public policy interest in permitting employees to move from one competitor to another. *See FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1277-80 (2009).

Incredibly, Waymo also argues that evidence of Uber's non-acquisition of the Downloaded Materials should be excluded under Federal Rules of Evidence 402 and 403. But to show misappropriation, Waymo must show that Uber *acquired* the trade secrets at issue. *See* 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1. Waymo is asking to be excused from having to

---

[2] Uber produced Mr. Levandowski's Uber-owned computer for inspection, and also searched it. Counsel for Mr. Levandowski provided Uber with work files that were on Mr. Levandowski's personal computer. Uber also has a partial backup from Mr. Levandowski's personal computer, which was saved on Uber's network. Uber has completed its search of these files, has almost finished its review, and will produce search term hits shortly. Uber will also make the partial backup available for inspection upon reasonable notice.



prove an essential element of its claim. This is part and parcel of a request for summary judgment, not a motion *in limine*. And Rules 402 and 403 do not require—indeed they do not permit—such exclusion.

Finally, Waymo asks that "even if Uber were permitted to make this argument, there should be an adverse inference against Uber" based on Mr. Levandowski's invocation of his Fifth Amendment privilege. Waymo's alternative request is baseless because it fails to provide any independent corroborating evidence that Uber ever possessed the Downloaded Files. *See* Dkt. 302 at 7-8; *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 912 (9th Cir. 2008). Although Waymo claims that "independent evidence corroborates that [Mr. Levandowski] retained the files for use at Uber," Waymo, in fact, cites *no* such corroborating evidence,[3] because no such evidence exists. Moreover, even if Mr. Levandowski *had* "retained the files for [later] use at Uber," that is not proof that Uber ultimately *did* acquire or use the trade secrets; Mr. Levandowski's bad intent, even if proven, does not show misappropriation *by Uber*.

Just as Waymo attempted at the preliminary injunction stage, Waymo hopes to leverage Mr. Levandowski's invocation of his Fifth Amendment privilege to justify an adverse inference against Uber in support of a fact Waymo cannot otherwise prove—because it is false. The law does not allow this. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (adverse inference permissible only where witness refuses to answer questions "in response to probative evidence offered against them"); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (corroboration required because "under certain circumstances, within the civil framework, because of the constitutional nature of the right implicated, an adverse inference from an assertion of one's privilege not to reveal information is too high a price to pay"); *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 622 F. Supp. 2d 890, 907-908 (N.D. Cal. 2009) (finding adverse inference proper only "to the extent plaintiff has relied on independent evidence establishing" the fact at issue). Furthermore, Waymo ignores that the Ninth Circuit has never found an adverse inference against an employer based on a former employee's Fifth Amendment invocation. *Cf. Glanzer*, 232 F.3d at 1265 (adverse inference "can only be drawn when independent evidence exists of the fact to which *the party* refuses to answer") (emphasis added).

### Waymo MIL #2: Preclude Uber from Offering Evidence Of Its Due Diligence

Waymo also seeks to preclude Uber from offering "evidence of the due diligence process for any reason." (Dkt. 640 at 4.) By this proposed motion, it appears that Waymo wants to prevent Uber from offering *any* evidence regarding the due diligence investigation, even non-privileged facts, simply because Uber has asserted attorney-client and work product privileges over aspects of the due diligence investigation. This is nonsensical and contrary to law. Uber cannot be precluded from presenting non-privileged facts simply because Uber has asserted privilege over other related communications. To hold otherwise would eviscerate the protections afforded by the attorney-client and work product privileges. (*See* Uber's Stmt. Re Privilege, Dkt. 531 at 1, 2 (citing cases)).

Waymo's argument that its pending challenges to Uber's privilege claims "are of no moment here" (Dkt. 460 at 4 n.2, 5) is also meritless. If, through motion practice, the Court

---

[3] Waymo cites this Court's Preliminary Injunction Order (Dkt. 433), but that Order is not evidence.



rejects Uber's assertion of privilege over aspects of the due diligence investigation, this information becomes non-privileged and is, like any non-privileged relevant evidence, admissible at trial.

For example, Judge Corley has so far refused to uphold Uber's assertions of privilege over the Stroz Report and other aspects of the due diligence investigation. Uber has appealed Judge Corley's order (Dkt. 575), but it is possible that this Court will affirm Judge Corley's order in part or in its entirety. To the extent that the Court rules that the information in dispute is not privileged, then the previously withheld information would be fully disclosed and available to Waymo to use at trial. *See Chattler v. United States*, No. C-07-4040 MMC(EMC), 2009 WL 1313227, at *7 (N.D. Cal. May 12, 2009) ("Accordingly, the Court orders that any nonprivileged document listed on Defendants' log be produced."). This Court's trial guidelines require that "[a]ny exhibit timely noticed by anyone . . . is usable as if timely noticed by everyone, subject to substantive objections." (Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases, ¶ 11). To hold that Uber could not rely on such *non-privileged* information would effectively hold that only Waymo could rely on such information—a nonsensical and unfairly prejudicial result.

Waymo also mistakenly claims that Uber cannot present any evidence regarding the due diligence investigation because Uber did not waive any privilege in response to the June 1 waiver deadline. But this Court's June 1 privilege waiver deadline applied only to any decision by Uber to *waive* privilege, on pain of preclusion. It did not—and cannot—apply to information that the Court ultimately determines is not privileged. *Cf. Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 746 (Fed. Cir. 1987) (where a disputed legal opinion did not reveal any confidential communication of a client, there was no privilege and, therefore, no waiver had occurred based on the disclosure of the document). Uber's choice not to waive privilege over certain matter cannot result in preclusion if that matter is later found non-privileged—i.e., if the Court later finds that Uber had no privilege to waive, whether it chose to do so or not. For the same reasons set forth above, if this Court rejects Uber's assertion of privilege over any information, including information about the due diligence investigation, Uber should be permitted to present this non-privileged information.

        Respectfully submitted,

        */s/ Karen L. Dunn*
        Karen L. Dunn
        *Counsel for Uber Technologies, Inc.*
        *and Ottomotto LLC*