# RAMSEY | EHRLICH LLP

ATTORNEYS AT LAW

June 19, 2017

**VIA ECF**

Magistrate Judge Jacqueline Scott Corley
U.S. District Court for the Northern District of California
San Francisco Courthouse, Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

*Re: Waymo LLC v. Uber Technologies, Inc.*, *et al., Case No. 3:17-cv-00939-WHA*

Dear Magistrate Judge Corley:

Non-party Anthony Levandowski submits the attached letter brief in response to Waymo's opposition to Mr. Levandowski's motion to quash portions of Waymo's subpoena to Stroz Friedberg, LLC.  *See* Dkt. 583 & 628.

Respectfully submitted,

*/s/ Ismail J. Ramsey*

Ismail Ramsey
RAMSEY & EHRLICH LLP
*Counsel for Non-Party Anthony Levandowski*

cc: Counsel of record (via ECF); Special Master John Cooper

**Standing**

Waymo begins by contesting Mr. Levandowski's standing to quash the subpoena. Dkt. 628 at 2-3. As Mr. Levandowski asserts privilege claims over the materials in Stroz's possession, he plainly has standing. The "general rule," as described by numerous courts, is that a third party has standing to seek to quash a subpoena to that third party when he raises "claims of privilege relating to the documents being sought." *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014); *see also* Dkt. 583 at 2-3 (citing cases).

Waymo's other contentions regarding standing mostly relate to the merits of Mr. Levandowski's privilege claims. In making these arguments, Waymo insists that Mr. Levandowski has "never offered evidence" in support of the privileges claimed. Dkt. 628 at 2. This contention ignores the declarations filed by Mr. Levandowski's own counsel and other parties to the common interest agreement, *see* Dkt. 370, 375, 376, 378, 380, 381, 383, as well as the fact that Mr. Levandowski has made an *in camera* submission substantiating his Fifth Amendment claims, *see* Dkt. 538 (and accompanying *in camera* submission).

Finally, Waymo derides as "vague" and "non-specific" Mr. Levandowski's arguments relating to privacy and relevancy. Dkt. 628 at 2. As we explained in our opening brief, Waymo's requests seek entire "devices," such as computers and cell phones, that Mr. Levandowski may have provided to Stroz. Such devices would almost surely contain materials that are not relevant to the case, but protected by Mr. Levandowski's privacy rights and other privileges. Dkt. 583 at 8. We cannot spell out such claims in more detail in part because Mr. Levandowski has a Fifth Amendment right not to reveal the existence of responsive devices. *See* Dkt. 583 at 3-7. In any event, Mr. Levandowski clearly has standing to raise these objections. *See, e.g., Belling v. DDP Holdings, Inc.*, 2013 U.S. Dist. LEXIS 198078 at *7-8 (C.D. Cal. May 30, 2013); *Abu v. Piramco SEA-TAC, Inc.*, 2009 U.S. Dist. LEXIS 12626 at *3 (W.D. Wash. Feb. 5, 2009).

**Intervention**

Waymo also contests Mr. Levandowski's right to intervene. Its primary argument seems to be that Mr. Levandowski has already had to intervene in this matter several times. Dkt. 628 at 3. That is of no moment—if Waymo persists in propounding discovery demands that violate Mr. Levandowski's privileges, he is entitled under the law to continue to resist such demands.

Waymo also claims that Mr. Levandowski's motion was not timely because it was not filed "prior to the May 25 return date." Dkt. 628 at 3. That contention is disingenuous. As Waymo acknowledges, Waymo designated just two requests (Nos. 3 & 30) as expedited for return on May 25 (Dkt. 628 at 1), and Mr. Levandowski does not object to those requests. *Id.* at 3 n.4. In meet and confers, Uber confirmed that the return date for the non-expedited requests and the deadline for Mr. Levandowski to file a motion to quash was June 9. *See* Dkt 570 n.2; *see also* Ramsey Declaration (filed herewith) at ¶¶ 2-3. Mr. Levandowski filed his motion on June 9 — *before* Stroz produced records in response to the subpoena. In any case, contrary to Waymo's suggestion, there is no requirement that a litigant in Mr. Levandowski's position move to intervene before the date on which the subpoenaed party must respond. *In re Grupo Unidos Por El Canal S.A.*, No. 14-mc-80277-JST (DMR), 2015 U.S. Dist. LEXIS 52358 at *14 n.4 (N.D.

1

Cal. Apr. 21, 2015) (finding no "authority for the proposition that third-party intervenors must file a motion to quash a subpoena within the same 14-day deadline that a party must meet when objecting to a subpoena . . . .").

**The Subpoena to Stroz Should Be Quashed**

The issues that underlie the merits of Mr. Levandowski's claims have been briefed several times. *See, e.g.,* Dkt. 574 & 583. Rather than repeating that briefing here, we make a few short points.

*First*, Waymo continues to try to dance around the jurisprudence establishing that parties to a common interest agreement may confidentially communicate amongst themselves in a variety of fashions. Waymo's attempts to distinguish the cases cited in our previous briefs, *see* Dkt. 628 at 4-5, ignore both binding caselaw, such as the Ninth Circuit's decision in *United States v. Gonzalez*, 669 F.3d 974 (9th Cir. 2012), and core principle enshrined in the cases cited—that a common interest privilege may protect a communication between one party and another party's attorney, *see* Dkt. 583 at 4-5; Dkt. 574 at 1-3. That binding legal principle defeats the main thrust of Waymo's arguments: Mr. Levandowski's communications with Stroz were, in fact, privileged under the common interest cases cited herein and in our other briefs.

*Second*, Waymo contends that Mr. Levandowski has no right to protect materials in the possession of a third party, Stroz. Dkt. 628 at 5-7. Waymo's position cannot be reconciled with *Fisher v. United States*, 425 U.S. 391 (1976), and its progeny. Under those cases, a privilege-holder unquestionably may protect from disclosure materials held by a third party—in *Fisher* and in *United States v. Sideman & Bancroft, LLP*, 704 F.3d 1197 (9th Cir. 2013), the third party was an attorney—so long as the materials were communicated to the third party in a privileged manner. *Fisher*, 425 U.S. at 405; *Sideman & Bancroft*, 704 F.3d at 1101-02; *see also In re Katz*, 623 F.2d 122, 126 (2nd Cir. 1980); Dkt. 202 at 8. Based on these binding precedents, the same principle governs here: although Stroz obviously is not Mr. Levandowski's own attorney, it served as the agent for an attorney engaged with Mr. Levandowski in a common interest agreement, which "establishes an implied attorney-client relationship" between each of the attorneys and parties involved. *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000). Thus, much like the conventional *Fisher* case (involving a client and his personal attorney), to the extent Mr. Levandowski communicated materials to Stroz, such communication was part of an extended attorney-client relationship—as a result of the joint defense doctrine—and the materials are therefore protected from disclosure.

*Third*, Waymo argues that Mr. Levandowski cannot have any privilege with respect to materials "created by Stroz" that reference information provided by Mr. Levandowski. Dkt. 628 at 7. This would be a surprising result. As the *Fisher* Court recognized, the purpose of the attorney-client privilege is "to encourage clients to make full disclosure to their attorneys." 425 U.S. at 403. Similarly, "the rationale for the joint defense rule" is that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *Gonzalez*, 669 F.3d at 978. These purposes would be radically undermined if privilege protections were lost merely because the communication in question was recorded or summarized by the attorney receiving it—and that is not the law. *See, e.g., Continental Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964)

(protecting under the attorney-client and joint-defense privileges attorneys' memoranda describing communications from clients); *Bio-Rad Laboratories, Inc. v. Pharmacia, Inc.*, No. C-88-2021-DLJ (JSB), 1991 U.S. Dist. LEXIS 3365 at *14 (N.D. Cal. Jan. 3, 1991) (finding a writing protected by the attorney-client privilege because it reflected the contents of an attorney-client telephone call). The logic and reasoning of *Fisher* and its progeny control: if Mr. Levandowski is privileged to prevent the disclosure of materials he may have provided to Stroz under a common interest agreement, he must also be privileged to prevent the disclosure of writings that *reflect or record* information and materials he may have provided to Stroz.

*Fourth*, Waymo misinterprets Mr. Levandowski's privacy argument. Mr. Levandowski does not claim a privacy interest in "files he [allegedly] stole from Waymo." Dkt. 628 at 8. The issue is that Waymo has requested *entire devices* that may contain or may once have contained the files it seeks. *See, e.g.,* Request 12. Of course, it is not difficult to imagine a device that contains some "files" relevant to Waymo's case but also many other completely irrelevant, yet nonetheless private or privileged, materials. *See e.g., Riley v. California*, 134 S. Ct. 2473, 2489-91 (2014) (recognizing that electronic devices have "immense storage capacity" and store "many distinct types of information," including "a broad array of private information"); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1175-77 (9th Cir. 2010) (en banc) (describing the care with which law enforcement and judicial officers must approach searches of electronically-stored information, even when there is probable cause for a search warrant, to avoid unconstitutionally broad searches); *Kelly v. San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987) ("federal courts generally should give some weight to privacy rights that are protected by state constitutions or state statutes"); *Tien v. Superior Court*, 139 Cal. App. 4th 528, 539 (Cal. Ct. App. 2006) ("The right of privacy is an 'inalienable right' secured by article I, section 1 of the California Constitution. It protects against the unwarranted, compelled disclosure of various private or sensitive information regarding one's personal life . . . ."). To the extent responsive devices exist, Waymo has no legitimate reason to obtain the irrelevant and/or private matters, and the courts will not require the production of such devices without also requiring some form of examination protocol. Dkt. 583 at 8 (citing cases); *see also Bos. Sci. Corp. v. Lee*, No. 5:14-mc-80188-BLF-PSG, 2014 U.S. Dist. LEXIS 107584, at *20 (N.D. Cal. Aug. 4, 2014) (granting motion to quash as "[t]he risks attached to forensic imaging are simply too great to permit such unchecked discovery"). Further, the courts recognize that a protective order is not always sufficient to protect privacy and proprietary interests, particularly when such information is sought from a non-party. *See, e.g., Universal Delaware, Inc. v. Comidata Network, Inc.*, 2011 U.S. Dist. LEXIS 28963, at *7, 18 (M.D. Tenn. Mar. 21, 2011) ("there is a constant danger inherent in disclosure of confidential information pursuant to a Protective Order . . . ."); *In re Vitamins Antitrust Litig.*, 267 F. Supp. 2d 738, 741–42 (S.D. Ohio 2003)).

Finally, Waymo's complaint that Mr. Levandowski has not identified specific materials to which his privacy rights might apply, Dkt. 628 at 8, is unfair and premature. At this juncture, the very existence of any devices that might be relevant to this dispute is information subject to a privilege claim. Mr. Levandowski could not specifically raise his privacy rights without simultaneously waiving his Fifth Amendment rights. The courts do not require such a Hobson's choice. *See, e.g., Simmons v. United States*, 390 U.S. 377, 391-94 (1968); *Bittaker v. Woodford*, 331 F.3d 715, 723-24 (9th Cir. 2003) (en banc); *United States v. Khan*, 309 F. Supp. 2d 789, 798-800 (E.D. Va. 2004); *see also Garrity v. New Jersey*, 385 U.S. 493, 496 (1967).