

Neel Chatterjee
+1 650 752 3256
NChatterjee@goodwinlaw.com

Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025

goodwinlaw.com

+1 650 752 3100

June 19, 2017

**VIA ECF**

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
United States District Court for the Northern District of California
San Francisco Courthouse Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc. et al.,* N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Judge Corley,

Defendant Otto Trucking LLC ("Otto Trucking") respectfully submits this letter brief in opposition to Waymo's Letter Brief Regarding Privilege Issues filed on June 16, 2017 (the "June 16 Letter Brief").  (Dkt. No. 637).

Waymo incorrectly argues that Otto Trucking lacked a common legal interest because it was "a separate legal entity from Ottomotto," and "Uber never acquired it."  *Id.* at 3.  This argument mistakes both the facts and the law at issue here.  Waymo omits to mention that during the course of the Uber–Ottomotto acquisition, Uber also obtained the option to acquire Otto Trucking in the future.  This transaction occurred at the same time of Uber's acquisition of Ottomotto.  The parties expressly contemplated that the possibility for Otto Trucking's acquisition may come later.  Thus from the outset that Defendants were considering the Uber–Otto transaction, they left open the possibility of an Otto Trucking acquisition and held common legal interests in defending against potential Waymo litigation in connection with the exercise of that option.

Waymo's argument is also incorrect as to the law.  The fact that the Uber–Otto Trucking acquisition was not ultimately consummated, or that Otto Trucking exists independent of Ottomotto cannot seriously be the basis for concluding that Otto Trucking "never shared a common interest privilege with anyone," as Waymo claims.  The common interest privilege exists whenever parties engage in "an on-going and joint effort to set up a common defense strategy."  *Holmes v. Collection Bureau of Am., Ltd.*, No. 09-02540 WHA, 2010 WL 143484, at *2 (N.D. Cal. Jan. 8, 2010) (internal citation omitted).  It prevents the waiver of a pre-existing privilege when the privileged information is shared with those holding the common legal interest.  *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007).  As explained below, Otto Trucking shared with Uber, Ottomotto, Levandowski, and Ron (the "Joint Defense



The Honorable Jacqueline Scott Corley
June 19, 2017
Page 2

Group") a significant concern that Waymo could bring litigation in connection with the Uber–Otto transaction. They therefore sought counsel to prepare for their legal defense. Irrespective of Otto Trucking's status as a separate legal entity or the outcome of the Uber–Otto acquisition, Otto Trucking's common legal interest existed here.

Next, Waymo recognizes that Otto Trucking was a signatory to the Indemnification Agreement, and yet concludes that the Agreement did not "offer[] any basis for the assertion of a common interest between Otto Trucking and anyone else (including Ottomoto [*sic*])." (Dkt. No. 637 at 3). In support of this, Waymo's only explanation is that the "[Agreement] plays no role in Uber's indemnification of 'certain employees under certain circumstances.'" *Id.* Not only is this explanation inadequate (which employees? what circumstances?), but it is also wrong. The Indemnification Agreement—entered into by Uber, Ottomotto, and Otto Trucking, among others—expressly provides that the "Purchaser is agreeing to indemnify each member of the Company Group . . . in the event of certain claims by Former Employers pursuant to the terms and subject to the conditions of this Agreement." Should there be any doubt, the Agreement defines the Company Group as "the Company [Ottomotto] and Otto Trucking LLC, a Delaware limited liability company." Thus contrary to Waymo's unsupported claim, the Indemnification Agreement expressly binds Otto Trucking with Uber and Ottomotto to indemnification rights and obligations subject to the terms and conditions stipulated to in the Agreement.

In addition, the parties' indemnification rights and obligations under the Agreement endure regardless of whether the acquisition was consummated; it was not contingent upon closing. This is reflected in Section 2.1 of the Agreement, which expressly contemplates the survival of indemnification claims "following the Closing (*if the Closing occurs*)." This makes sense in light of the purpose of the Agreement which, as stated above, was to indemnify the members of Otto Trucking and Ottomotto in the event that Waymo brought suit in connection with Uber's acquisition. As signatories to the Agreement, Uber, Ottomotto, and Otto Trucking recognized that they shared a common legal interest in preparing for their defense. In fact, this District has recognized that such common legal interests exist in the context of similar indemnification agreements. *See, e.g.*, *Callwave Commc'ns, LLC v. Wavemarket, Inc.*, No. C 14-80112 JSW (LB), 2015 WL 831539, at *4 (N.D. Cal. Feb. 23, 2015) (Judge Beeler explaining that the parties "have an interest in defeating . . . claims of patent infringement in the Underlying Litigation. That they also have negotiated possible indemnification with respect to those claims does not necessarily cancel that out."); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987) (finding the parties had a common legal interest in connection with the sale of a business). Contrary to Waymo's argument, the Indemnification Agreement provides an independent basis that memorializes the parties' common legal interest.

Here, the Joint Defense Group recognized that the Uber–Otto transaction would potentially trigger litigation by Waymo. The parties therefore agreed, first orally and then in



The Honorable Jacqueline Scott Corley
June 19, 2017
Page 3

writing, to a JDA stated that the parties "share[d] a common interest in resolving any issues concerning the Transaction under all applicable laws and that a joint defense effort will promote evaluation and preparation of their respective defenses." Decl. of Eric A. Tate, ECF No. 370 Ex. 2 at 1. The law does not require a binding agreement for there to be a common interest among parties considering a transaction. It is enough that the parties were in the late stages of negotiation when they undertook steps to prepare for potential Waymo litigation, including engaging Stroz. Defendants knew that they would likely be sued by Waymo if the merger were consummated. That those factual matters might also have been relevant to indemnification between the Joint Defense Group does not undermine their common interest in defending against litigation. *See Callwave Comm'ns*, 2015 WL 831539, at *4.

\*\*\*

For the foregoing reasons, Otto Trucking respectfully requests an Order from the Court DENYING the relief sought in Waymo's June 16 Letter Brief.

        Respectfully submitted,

         /s/ Neel Chatterjee
        Neel Chatterjee
        GOODWIN PROCTER LLP

        *Attorneys for Defendant*
        OTTO TRUCKING LLC

cc: All counsel of record (via ECF)



The Honorable Jacqueline Scott Corley
June 19, 2017
Page 4

## CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on June 19, 2017. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed this 19th day of June 2017.

                                                          /s/ *Neel Chatterjee*
                                                           Neel Chatterjee