1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   ERIC A. TATE (CA SBN 178719)
    ETate@mofo.com
4   RUDY Y. KIM (CA SBN 199426)
    RKim@mofo.com
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California  94105-2482
    Telephone:    415.268.7000
7   Facsimile:    415.268.7522

8   KAREN L. DUNN (*Pro Hac Vice*)
    kdunn@bsfllp.com
9   HAMISH P.M. HUME (*Pro Hac Vice*)
    hhume@bsfllp.com
10  BOIES SCHILLER FLEXNER LLP
    1401 New York Avenue, N.W.
11  Washington DC  20005
    Telephone:    202.237.2727
12  Facsimile:    202.237.6131

13  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
14  and OTTOMOTTO LLC

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17                SAN FRANCISCO DIVISION

18  WAYMO LLC,                          Case No.      3:17-cv-00939-WHA

19              Plaintiff,              **DECLARATION OF SYLVIA**
                                        **RIVERA IN SUPPORT OF**
20        v.                            **DEFENDANTS' OPPOSITION TO**
                                        **MOTION TO COMPEL**
21  UBER TECHNOLOGIES, INC.,
    OTTOMOTTO LLC; OTTO TRUCKING LLC,   Date:      June 23, 2017
22                                      Time:      10:00 a.m.
              Defendants.               Ctrm:      F, 15th Floor
23                                      Judge:   Hon. Jacqueline Scott Corley

24                                      Trial Date: October 10, 2017

25

26

27

28

I, Sylvia Rivera, declare as follows:

1.      I am a member of the bar of the State of California and a partner with Morrison & Foerster LLP, counsel of record for Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") in this action.  I am admitted to practice before this Court.  I submit this declaration in support of Defendants' Opposition to Motion to Compel Regarding Certain Outstanding Privilege Issues.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently as to these facts.

2.      Plaintiff Waymo LLC ("Waymo") attached Uber's privilege logs as under seal Exhibits 1-3 to the Declaration of Kevin Smith (Dkt. 637-1) ("Smith Decl.").  Exhibit 1 reflects documents from Morrison & Foerster, Exhibit 2 reflects documents from O'Melveny & Myers, and Exhibit 3 reflects documents from Uber custodians.  To avoid burdening the Court with additional papers, I do not re-attach them here, but instead refer to the Smith Decl.

3.      Uber's privilege logs reflect various authors, senders, and recipients of the logged documents.  When Uber transmitted to Waymo its initial set of privilege logs, it included in the transmittal an identification of the individuals and firms listed in the logs.  I re-state that list here for the Court's reference in evaluating the logs:

        a.      Uber In-House Counsel - Nicole Bartow, Jay Choi, Andrew Glickman, Todd Hamblet, Christian Lymn, Angela L. Padilla, Justin Suhr, Salle Yoo;

        b.      Morrison & Foerster LLP - counsel for Uber in connection with the due diligence investigation;

        c.      Cooley LLP - corporate counsel for Uber;

        d.      O'Melveny & Myers LLP - counsel for Ottomotto in the acquisition by Uber;

        e.      Donahue Fitzgerald LLP - counsel for Anthony Levandowski; and

        f.      Levine & Baker - counsel for Lior Ron.

4.      On June 9, 2017, Uber explained to Waymo its understanding of how the June 5, 2017 Order on Waymo's Motion to Compel Production of Withheld Documents ("Order") would affect communications on Uber's privilege logs (Smith Decl., Ex. 4):

a.   For communications on or before April 11, 2016 (date the Put Call agreement was signed), communications between (1) Uber, its counsel or its agent Stroz, on the one hand, and, on the other hand, (2) Otto or its counsel, Mr. Levandowski or his counsel, or Mr. Ron or his counsel, are not privileged or covered by work product protection.

b..   Similarly, on or before April 11, 2016, joint communications between Uber, Otto, and Stroz Friedberg are not privileged or covered by work product protection.

c.   The Stroz Report and its Exhibits are not privileged or covered by work product protection.

d.   Privilege and work product claims concerning communications after April 11, 2016 (other than the Stroz Report and its Exhibits) are not affected by the Order.

e.   The Order does not affect privilege and work product claims concerning communications:

1.   Between any of the parties and their separate counsel;

2.   Between Otto, Mr. Levandowski, or Mr. Ron, or their counsel; and

3.   Between Stroz, on the one hand, and Uber or Uber's counsel, on the other hand.

5.   The privilege logs attached to the Smith Decl. reflect, in the last column, whether the document reflected in a particular log entry would be produced in full, produced in part (redacted), or would continue to be withheld as privileged[1], should the Order become final.

6.   Exhibit 2 to the Smith Decl., which is the log for documents from O'Melveny & Myers, is an earlier version of the log that states "Produce in Full or in Part" for most entries. Uber subsequently served an updated version that differentiated between documents that would

---

[1] For purposes of this Declaration, I use "privileged" inclusively to refer to any protection from disclosure, including the work product doctrine.

1  be produced "in full" versus those that would be produced "in part."  Attached hereto as

2  Exhibit A is a copy of that log, which was transmitted to Waymo's counsel on June 15, 2017.

3  **Uber Already Addressed Waymo's Concerns Regarding the Employee Attestations**

4        7.    During the parties' meet-and-confer exchanges, Uber addressed the concerns

5  Waymo raised regarding employee attestations that were removed from the privilege logs and

6  produced.  (Letter Br. at 5.)  When Uber initially prepared its privilege logs, it primarily followed

7  a convention under which it logged privileged emails and attachments as a "family."  In other

8  words, for example, where a parent email and one attachment were responsive to the March 16

9  Order and privileged, but the other attachments were not responsive to the March 16 order, that

10  parent email and attachment "family" were kept intact and each document was entered on the

11  privilege log, even though some of the attachments were not responsive.  In that case, the

12  privilege descriptions used for the non-responsive documents within the "family" were based

13  largely on the responsive communications within the "family"; the non-responsive documents

14  were placed on the log simply to account for the fact there was an email and attachment "family."

15        8.    In response to concerns Waymo raised, Uber's counsel undertook to remove from

16  the privilege log it served on April 10, 2017, documents that were not responsive to the March 16

17  Order, which included the employee attestations to which Waymo refers.  It produced updated

18  logs on or about April 27, 2017, and subsequently produced the non-responsive employee

19  attestations as "loose" documents without the responsive and privileged parent email and without

20  the other attachments to that parent email that were responsive and privileged.  The parent emails

21  associated with the employee attestation attachments were privileged.  Attached as Exhibit B is a

22  true and correct copy of excerpts from Uber's privilege log for communications from Morrison &

23  Foerster  served on April 10, 2017, which Waymo references in paragraphs ¶¶ 13-18 of the Smith

24  Declaration.  (*See* Log No. 311 (email between Uber's in-house counsel, Andrew Glickman to

25  Uber's outside counsel, Eric Tate of Morrison & Foerster, and other in-house counsel at Uber);

26  Log No. 1455 (email between Uber's outside counsel Eric Tate and Anna Ferrari of Morrison &

27  Foerster, and Eric Tate's administrative assistant Elizabeth Whittom-Crandall).  Waymo does not

28  contend that the attestations we produced were responsive to the March 16 Order.

9.      Upon receiving the documents (attestations), Waymo complained that the attestations did not match the entries on the log that were removed.  Uber explained that the descriptions were based on the entire communication, which formed the basis of the privilege, and that other entries on the privilege log more accurately described the individual attestations. The three attestations referenced in paragraph 14 of the Smith Decl. were also included elsewhere on the log, and those entries were more specific to those attachments (which were non-responsive) and reflected that the documents were "[s]tatement[s] reflecting communication[s] made in confidence by Ottomotto employee and shared pursuant to joint defense agreement to further investigation for the purpose of obtaining or giving legal advice, in anticipation of litigation, regarding due diligence for potential acquisition of Ottomotto." (*See* Ex. B (No. 316 (van den Berg), No. 317 (Grigsby), No. 318 (M. Levandowski), No. 322 (Espinosa), No. 323 (Burkholder), No. 324 (Tran); Smith Decl., Ex. 11 (May 25 email).)  Waymo did not challenge that description of the attestations.

10.      In sum, the descriptions for attachments on the current log were done on a document by document basis, and Waymo's critique was resolved.

**Applying Dates of Cover Emails to Attachments**

11.      I explained to Waymo's counsel during our telephonic meet-and-confer exchanges, including on June 14, 2017, that email attachments are listed on the privilege logs directly after their associated parent email.  I also conveyed that where an attachment lacked electronic metadata setting forth its date, Uber typically used the date of the parent email to log the document.  (Smith Decl., Ex. 8.)  As set forth in Uber's concurrently-filed opposition letter brief, that is the relevant date for the assertion of the privilege.

12.      Uber is not withholding non-privileged documents that are responsive to the March 16 Order on the ground that the documents were forwarded to an attorney.  For example, where a document attached to an email between Uber and its counsel was created on April 11, 2016 or earlier and is not privileged under the Order (e.g., the document was created jointly by Uber and Ottomotto), Uber will produce a copy of the document with the non-privileged email from April 11 or earlier to which it corresponds if the Order becomes final.

13.     With regard to entries 2031-33 of Smith Decl. Exhibit 1, discussed at paragraph 21 of the Smith Decl., entry 2031 is a privileged email between Uber's outside counsel Eric Tate and Anna Ferrari.  The documents that follow on the log are attachments to that email, and consist of an invoice and a memorandum prepared by Stroz Friedberg.  If either the invoice or memorandum was created on or before April 11, 2016 and transmitted to persons who would break the privilege on or before April 11 (e.g., Ottomotto), then that invoice or memorandum would be produced with the non-privileged email from on or before April 11 to which it was attached.  It would not, however, be produced with a privileged parent email exchanged between counsel for Uber.  The same analysis holds true for entries 1237-1240.

**Use of "And/Or"**

14.     When Uber first prepared it privilege logs, it used the term "and/or" in the "common interest" descriptions in the logs to describe documents that contained information regarding one or more of the Diligenced Employees in order to complete the logs on a timely basis.  All of the Diligenced Employees (Mr. Levandowski, Mr. Ron, Don Burnette, Soren Juelsgaard, and Colin Sebern) were employees of Ottomotto LLC, which was a party to the Joint Defense and Common Interest Agreement, and thus Uber understood that the particular identity of the person at issue was not relevant to the privilege determination.  The original logs contained 2,511 instances of "and/or."  After Waymo objected to the use of "and/or," Uber's counsel re-reviewed the documents and provided a more specific description where it could determine which employee was the subject, in a good faith effort to address Waymo's concerns.  Waymo now challenges only a couple dozen entries that use "and/or," each of which are between Uber and its outside counsel, so regardless of whether the information pertains to one or more of the Diligenced Employees, those communications will remain privileged.  (*See* Smith Decl. Ex. 1.) To the extent there is responsive, non-privileged information in documentary form (or information that is later deemed to be not privileged) that exists separate and apart from any attorney-client communication, those documents either already have been produced or will be produced in accordance if the Order becomes final.

1  **Law Firms as Authors**

2       15.     All of the privilege log entries that list one or more law firms as the authors are

3  documents that do not readily reflect which individuals contributed to the document, even though

4  all four firms contributed to the drafting.  Waymo is well aware of the attorneys who were

5  involved in the diligence process because their names are all over the privilege logs.  The same is

6  true for documents authored by Stroz Friedberg, where the document on its face does not reflect

7  the identity of specific individuals.  Which specific individual at the firm contributed to the

8  drafting does not affect the privilege determination.

9  **Agreements**

10       16.     Waymo's complaint about the identity of parties to an agreement was raised for

11  the first time in this motion to compel.  If it had been raised earlier, Uber could have addressed it.

12  Entry 33 on Smith Decl. Exhibit 1 is a draft agreement that reflects Morrison & Foerster work

13  product.  Entries 1361-1364 are attachments to a privileged joint defense communication, and

14  non-privileged versions of the contracts have already been produced.

15  **Documents With Identical Descriptions Treated Differently**

16       17.     Entry 59 on Smith Decl. Exhibit 1 is draft questionnaire that reflects Morrison &

17  Foerster work product that was only circulated to Uber, so it remains privileged even if the Order

18  becomes final.  Entry 107 on Smith Decl. Exhibit 1 is an updated version of the questionnaire,

19  which was subsequently circulated to the joint defense team, so if the Order becomes final, this

20  version would be produced in full.  As to entry 23, it was incorrectly coded and would be

21  produced in full pursuant to the Order because the email is between Morrison & Foerster and

22  O'Melveny & Myers on or before April 11, 2017.  As to Exhibits 9 and 11, Uber already

23  explained the logging of the employee attestations, which is more appropriately viewed as two

24  family groups and not 67 documents.  These complaints already were addressed, and the non-

25  responsive, non-privileged family members produced.

26

27

28

1        18.     Attached hereto as Exhibit C is a true and correct copy of an email dated June 15,

2   2017, from Wendy Ray to David Perlson, with copies to the email aliases for Morrison &

3   Foerster LLP and Quinn Emanuel attorneys in this litigation, and Mr. Perlson's response thereto.

4        I declare until penalty of perjury that the foregoing is true and correct.  Executed this 19th

5   day of June, 2017 at Los Angeles, California.

6

7                                         */s/ Sylvia Rivera*

                                          Sylvia Rivera

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28