MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
RUDY Y. KIM (CA SBN 199426)
RudyKim@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone:  202.237.2727
Facsimile:  202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>    Defendant. | Case No.     3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S OPPOSITION TO LYFT INC.'S MOTION TO QUASH SUBPOENA**<br><br>Date:    TBD<br>Time:    TBD<br>Ctrm:    F - 15th Floor<br>Judge:   Jacqueline Scott Corley<br><br>Trial Date: October 10, 2017 |

## I. INTRODUCTION

Consistent with the Special Master's guidance on briefing, Uber hereby opposes Lyft's motion to quash. As set forth in more detail below, Uber requests that the Court deny Lyft's motion because the requested discovery is relevant to the issues in this case and not unduly burdensome.

As Lyft's motion confirms, Waymo and Lyft entered into a deal around May 2017, (*see* Decl. of Taggart Matthiesen, ECF No. 646-2 ¶¶ 5-6), and that deal likely involves the same technology at issue in this case, with Waymo contributing self-driving technology and Lyft contributing ride-sharing technology. (Ex. 1 to Decl. of Michelle Yang, 5/14/17 *New York Times* article). While Uber's knowledge of the deal is limited to what has been reported in the press, documents and information regarding the deal—including the terms, the course of negotiations and the parties' diligence—appear likely to be relevant to numerous issues in this case. Among other things, (1) the terms of the deal may be relevant to damages in this matter because the Waymo/Lyft deal may be a roughly comparable agreement for purposes of valuing self-driving technology; (2) the parties' diligence regarding and analysis of the deal may similarly be relevant to the measure of damages here, and also to Waymo's request for injunctive relief (based on the alleged loss of potential first-mover advantages); and (3) the procedures for and content of the exchange of information regarding Waymo's self-driving technology, along with any indications of preexisting Lyft or public knowledge regarding that technology, are relevant to whether Waymo's technology is entitled to trade-secret protection.

Accordingly, Uber's subpoenas to Lyft are well within the scope of permissible third-party discovery, particularly where Lyft (1) appears likely to have responsive internal documents and information that are not available from Waymo, (2) entered into a deal with Waymo knowing of the pending litigation, and (3) has itself confirmed that the scope of the discovery is not unduly burdensome. Because the requested discovery will not be unduly burdensome, and focuses in significant part on relevant information Lyft alone possesses, Uber respectfully requests that the Court deny Lyft's motion to quash.

## II. ARGUMENT

### A. Discovery from third-parties is available, unless unreasonable or oppressive.

Federal Rule of Civil Procedure 45 governs subpoenas seeking discovery from non-parties. Fed. R. Civ. P. 45(a)(1)(A)(iii). The scope of discovery permitted via a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b). *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, Nos. 16-mc-80062-JSC, 16-mc-80076-JSC, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016).

The moving party bears the burden of persuasion on a motion to quash under Fed. R. Civ. P. 45(c)(3), while the party issuing the subpoena must demonstrate the relevance of the discovery sought. *Carroll v. Wells Fargo & Co.*, 2017 WL 1316548, at *2 (N.D. Cal. April 10, 2017); *Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. CV-12-80300-RMW, 2013 WL 1508894, at *4 (N.D. Cal. Apr. 10, 2013) ("The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed."); *Chevron Corp. v. Donziger*, No. 12-mc-80237 CRB (NC), 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (permitting discovery on non-parties).

### B. The documents and information Uber seeks from Lyft are relevant to multiple issues in this case.

Waymo's case thus far has emphasized two allegations relevant to the Lyft discovery Uber seeks: (1) that Uber allegedly took information from Waymo which had previously been kept secret and was not publicly known, and (2) that Uber allegedly harmed Waymo by depriving it of a possible first-mover advantage. Because discovery regarding Lyft's deal with Waymo should shed light on the value of Waymo's technology and the extent to which it was known in the industry, it is relevant to these two key issues.

Lyft and Uber are competitors in the ride-sharing industry, and Waymo and OttoMotto both are focused on self-driving technology. While the details of the Waymo/Lyft deal are currently unknown outside of Waymo and Lyft, there are at least some parallels between the players and technology involved in the Lyft/Waymo and Uber/OttoMotto deals. Further, the self-driving technology Waymo brings to the Lyft deal presumably includes some of the very

technology Waymo asserts has been misappropriated in this case (along with everything else Waymo might bring to such a deal). The Waymo/Lyft deal thus may provide insight into a variety of issues:

*First*, the documents and information Uber seeks from Lyft may be relevant to the valuation of the technology that Waymo asserts Uber obtained in connection with its acquisition of OttoMotto. While there generally are few industry licensing deals or models to consider for purposes of valuing technology in nascent industries, the Waymo/Lyft deal may provide a model in some respects for purposes of analyzing damages in this matter, particularly to the extent Lyft analyzed the value of Waymo's self-driving technology to its ride-sharing business, given other options in the market for Lyft to use. *See* James Pooley, Trade Secrets § 7.03(2)(d) (2017) (parties may use "the terms of other licenses" to analyze damages in a trade secrets case); *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) (in calculating royalties in a patent case, courts may consider relevant licenses).

*Second*, the documents and information Uber seeks from Lyft are likely relevant to Waymo's requested injunctive relief. Waymo's filings on injunctive relief repeatedly emphasize the harm Uber's efforts might cause to Waymo's purported first-mover advantage by permitting Uber to get to market sooner than it might otherwise. Lyft's communications regarding and the terms of the Waymo/Lyft deal are likely to be relevant to whether Waymo has suffered any harm to its momentum in the self-driving industry, based on the perception of a third-party (Lyft) rather than Waymo's internal view.

*Third*, the documents and information Uber seeks from Lyft may be relevant to industry practices regarding the negotiation of deals involving, and the exchange of information regarding, confidential technological information—in particular, self-driving technology—along with general industry familiarity with the nature and scope of Waymo's self-driving technology. This information thus may be relevant to whether Waymo's purported trade secrets are in fact secrets.

There are also a number of other ways in which information about the Waymo/Lyft deal may be relevant. Because this litigation was pending at the time, Lyft and Waymo presumably

1  will have discussed the implications of the litigation on their deal, which may inform a variety of
2  issues, depending on the position Waymo took on the scope and value of its technology.
3        Accordingly, regardless of whether the requested discovery might require disclosure of
4  competitive intelligence, the requested discovery is appropriate. *Medtronic MiniMed, Inc. v.*
5  *Animas Corp.*, No. C 13-80294 WHA, 2014 WL 308952, at *2 (N.D. Cal. Jan. 27, 2014) (Alsup,
6  J.) (denying motion to quash subpoena request for third-party competitive intelligence related to
7  the product at issue in the litigation). This is particularly true where the non-party may limit
8  disclosure only to outside counsel of record under the relevant protective order, and thus the
9  documents and information produced cannot be used for business purposes. *See Louisiana Pac.*
10 *Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 490 (N.D. Cal. 2012)
11 (approving designation of competitive intelligence for production subject to attorneys' eyes only);
12 *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 252 (E.D. Pa. 2014) (permitting
13 discovery of non-party competitive intelligence with instructions for the parties to meet and
14 confer to determine how to protect the information from disclosure).

15       **C.    Lyft is not a disinterested, unrelated third-party.**

16       This case (1) was pending at the time Lyft entered into a deal with Waymo involving the
17 same technology, (2) is very high-profile, and (3) involves what Lyft contends is its main
18 competitor. (*See* Lyft Motion, ECF No. 646 at 1-2.) Lyft thus doubtlessly went forward with the
19 deal understanding that it might be impacted in some way by the pending litigation, whether via
20 discovery or otherwise. Indeed, Lyft and Waymo presumably discussed the implications of this
21 litigation for their deal.
22       Perhaps more importantly, Lyft provides a third-party perspective regarding the value of
23 Waymo's technology, particularly the value of that technology in connection with the ride-
24 sharing business, and in light of what is known or understood in the industry regarding Waymo
25 and third-party self-driving technology. Discovery from Waymo on the Waymo/Lyft deal almost
26 certainly will not reflect this perspective in the same way that internal Lyft documents and other
27 information will. The discovery Uber seeks from Lyft thus generally is not available from
28 Waymo instead. Of course, given the small size of the relevant industry currently, as Waymo

1  repeatedly asserts in its pleadings and elsewhere, any deal in this space may be relevant to the
2  value of and knowledge regarding the relevant technology.  But the deal between Lyft and
3  Waymo presumably involves at least some of the very technology at issue in this case.
4  Accordingly, discovery regarding Lyft's assessment of that technology likely cannot be obtained
5  from another source.  *See Callwave Commc'ns, LLC v. Wavemarket, Inc.*, No. C 14-80112 JSW
6  (LB), 2014 WL 2918218, at *5 (N.D. Cal. June 26, 2014) (permitting discovery of documents
7  from non-party where non-party was the "only source" of the documents); *In re Domestic*
8  *Drywall*, 300 F.R.D. at 245 (permitting discovery of non-party investigative files where non-party
9  was "likely the only entity" that had access to the "mosaic" of information).

### D.   Lyft's remaining objections are meritless.

Lyft's other objections to Uber's requests do not warrant denial of the discovery Uber seeks:

*First*, contrary to Lyft's arguments, the confidential nature of the information sought does not warrant quashing relevant discovery.  As the Special Master noted during the parties' meet and confer, the protective order in this case provides a level of confidentiality that limits access to outside counsel and a limited number of in-house counsel. (Decl. of Michelle Yang ¶ 3.)  The approved in-house counsel are not involved in competitive decision-making. (*See* 3/16/2017 Hr'g Tr. 3:12-5:24.)  Accordingly, the information Lyft discloses and designates as attorneys' eyes only confidential will not be made available to Uber for business purposes. As other cases have noted, "[w]here trade secrets or other confidential commercial information is involved, . . . [d]isclosure may be ordered to opposing party's trial attorney only (and not to the opposing party)," *RSI Corp. v. Int'l Bus. Machines Corp.*, No. 5:08-CV-3414 RMW, 2012 WL 3095439, at *1 (N.D. Cal. July 30, 2012), thus protecting the confidentiality of that information, *Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. CV-12-80300-RMW, 2013 WL 1508894, at *3 (N.D. Cal. Apr. 10, 2013) (finding that the party seeking to quash the subpoena offered "no specific explanation regarding how [the protective order] measures fail to safeguard information.").

*Second*, contrary to Lyft's arguments, Uber has tailored its requests to the extent possible given the limited information it currently possesses regarding the Waymo/Lyft deal.  *See Fed.*

DEFENDANTS' OPPOSITION TO LYFT'S MOTION TO QUASH SUBPOENA
Case No. 3:17-cv-00939-WHA
dn-193477

5

1  *Deposit Ins. Corp. v. Berling*, No. 15-mc-80150-JSC, 2015 WL 4198645, at *4 (N.D. Cal. July 10, 2015) (finding no undue burden where deposition testimony of two non-parties would be relevant to the claims in the case). In contrast, Lyft has used the confidentiality of the deal as purported justification for a motion to quash, while also asserting that the deal is irrelevant, presumably based on confidential information regarding the deal that Lyft will not or cannot disclose. (*See* Decl. of Carolyn Hoecker Luedtke, ECF No. 646-1 ¶¶ 4-5.)

Nevertheless, Lyft's motion confirms that responding to the relevant discovery will not be unduly burdensome on Lyft, regardless of the scope of the requests. As Lyft's declarant, Mr. Matthiesen, makes clear, there are very few people at Lyft with relevant documents or information, given the narrow scope of those with any knowledge about the deal. (Decl. of Taggart Matthiesen, ECF No. 646-2 ¶¶ 4, 6.) Mr. Matthiesen, states that Lyft's dealings with Waymo were confined to a "carefully selected . . . small team of Lyft employees," and were only expanded to a "limited number of other employees and only on an 'as needed' basis." (*Id.* ¶ 4.) It also appears from Mr. Matthiesen's declaration that all documents related to the deal's terms and negotiations have been compiled and managed to further limit access. (*Id.* ¶ 6.) Accordingly, Lyft should be able to identify relevant documents and a deponent (presumably, Mr. Matthiesen) with relative ease.

*Third*, given the expedited nature of this case, Uber must seek relevant information on the Waymo/Lyft deal from both Waymo and Lyft simultaneously. Lyft's objection that Uber should *first* obtain the information from Waymo rather than pursue discovery from Lyft is incompatible with this case's schedule,[1] particularly where Waymo has objected to providing the relevant documents and information.[2] And as noted above, Lyft has a unique third-party perspective on Waymo's technology and its value to the self-driving market. Accordingly, regardless of the

---

[1] As the Court made clear, expediency is a concern in this case. (Order Re Scheduling of Depositions, ECF No. 622 ("The Court is concerned that counsel in this action are not moving fast enough to complete depositions and will put too much pressure on the jury trial and final pretrial conference dates.").)

[2] The special master has directed the parties to brief that issue too, with Uber's opening letter brief on this and other issues due 6/21/17.

corresponding requests served on Waymo, Uber's requests to Lyft are entirely proper, particularly for purposes of use in connection with the deposition of a Lyft representative (who presumably will have only a limited basis, if any, to testify regarding documents produced by Waymo, rather than Lyft).

### III.   CONCLUSION

For the reasons set forth here, Uber respectfully requests that the Court deny Lyft's motion to quash.

Dated:  June 20, 2017                    MORRISON & FOERSTER LLP

By:   */s/ Arturo J. González*
      ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC