QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>         Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>         Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S NOTICE OF MOTION AND MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT OF THE PRELIMINARY INJUNCTION ORDER (Dkt. 426) AND EXPEDITED DISCOVERY ORDER (Dkt. 61)**<br><br>**[PUBLIC REDACTED VERSION]**<br><br>Date:      July 27, 2017<br>Time:      8:00 a.m.<br>Ctrm:      8, 19th Floor<br>Judge:     Honorable William H. Alsup<br>Trial Date: October 10, 2017 |

TO DEFENDANTS UBER TECHNOLOGIES, INC., OTTOMOTTO LLC, AND OTTO TRUCKING LLC, AND THEIR COUNSEL OF RECORD:

      PLEASE TAKE NOTICE that on July 27, 2017 on 8:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable William Alsup at the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California, Plaintiff Waymo LLC ("Waymo") shall and hereby does move the Court for an Order to Show Cause why Defendants Uber Technologies, OttoMotto LLC, and Otto Trucking LLC should not be held in contempt of the Court's Preliminary Injunction Order (Dkt. 426) and Expedited Discovery Order (Dkt. 61) for: (1) failing to "exercise the full extent of their corporate, employment, contractual, and other authority" to cause their agent Stroz Friedberg to return all materials in Stroz Friedberg's possession that Anthony Levandowski downloaded from Waymo's servers; (2) failing to timely notify Waymo and the Court about the apparent destruction of five discs of downloaded materials; (3) failing to "exercise the full extent of their corporate, employment, contractual, and other authority" to cause their agent, Morrison & Foerster, LLP ("MoFo") to return the downloaded materials; and (4) failing to "exercise the full extent of their corporate, employment, contractual, and other authority" to cause Otto Trucking's officer, Mr. Levandowski, to return the downloaded materials.

      Waymo's motion is based on this notice of motion and supporting memorandum of points and authorities, the supporting declaration of Patrick Schmidt and accompanying exhibits, reply briefing in further support of this motion and supporting declarations and accompanying exhibits, as well as other written or oral argument that Waymo may present to the Court.

DATED: June 21, 2017        QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                  By  */s/ Charles K. Verhoeven*
                                      Charles K. Verhoeven
                                      Attorneys for Plaintiff Waymo LLC

-2-
WAYMO'S MOTION FOR ORDER TO SHOW CAUSE

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................................1

STATEMENT OF FACTS ..................................................................................................................2

I.    DEFENDANTS HAVE BEEN UNDER AN OBLIGATION TO PRODUCE THE DOWNLOADED MATERIALS SINCE MARCH 2017 ......................................................2

II.    THE COURT'S PI ORDER REQUIRES DEFENDANTS TO USE THE FULL SCOPE OF THEIR AUTHORITY TO COMPEL ALL OF THEIR OFFICERS AND AGENTS TO RETURN THE DOWNLOADED MATERIALS ................................3

III.    DEFENDANTS FAIL TO ASK THEIR AGENT STROZ TO RETURN THE DOWNLOADED MATERIALS .........................................................................................4

IV.    ON JUNE 8 UBER SERVES AN INTERROGATORY RESPONSE STATING THAT SOME OF THE DOWNLOADED MATERIALS WERE DESTROYED IN MARCH OF LAST YEAR .................................................................................................6

V.    DEFENDANT OTTO TRUCKING FAILS TO EXERCISE ITS FULL AUTHORITY TO CAUSE MR. LEVANDOWSKI TO RETURN THE DOWNLOADED MATERIALS .........................................................................................6

VI.    DEFENDANTS FAIL TO EXERCISE THEIR FULL AUTHORITY TO CAUSE THEIR AGENT, MOFO, TO RETURN THE DOWNLOADED MATERIALS .................7

ARGUMENT ......................................................................................................................................8

I.    DEFENDANTS ARE IN CONTEMPT FOR FAILING TO TAKE ALL STEPS TO CAUSE STROZ TO RETURN THE DOWNLOADED MATERIALS ........................9

    A.    Defendants Violated the PI Order and Expedited Discovery Order With Respect to Stroz ........................................................................................................9

    B.    Defendants' Violation Was "Beyond Substantial Compliance" ..............................10

    C.    Defendants' Violation Is Not Based on a Good Faith and Reasonable Interpretation of the PI Order or Expedited Discovery Order .................................11

II.    DEFENDANTS ARE IN CONTEMPT FOR FAILING TO TAKE ALL STEPS TO CAUSE MOFO TO RETURN THE DOWNLOADED MATERIALS ........................13

III.    DEFENDANTS ARE IN CONTEMPT FOR FAILING TO TIMELY DISCLOSE THE DESTRUCTION OF FIVE DISCS OF DOWNLOADED MATERIALS .................13

IV.    DEFENDANT OTTO TRUCKING IS IN CONTEMPT FOR FAILING TO TAKE ALL CORPORATE STEPS TO PRESSURE MR. LEVANDOWSKI TO RETURN THE DOWNLOADED MATERIALS ..........................................................................14

CONCLUSION .................................................................................................................................15

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Perez v. i2a Techs., Inc.,*
    No. C 15-04963 WHA, 2015 WL 7753330 (N.D. Cal. Dec. 2, 2015) ......................................... 8

*Perez v. RMRF Enter., Inc.,*
    No. C 13-80059 SI, 2014 WL 3869935 (N.D. Cal. Aug. 6, 2014) ................................. 8, 10, 11

**INTRODUCTION**

The Court has issued multiple Orders requiring Defendants to return to Waymo the more than 14,000 files stolen by Anthony Levandowksi. First, on March 16, the Court's Expedited Discovery Order ordered Defendants to "produce for inspection all files and documents downloaded by Anthony Levandowski" by March 31. (Dkt. 61 at 2 ¶ 4.) After Defendants refused to turn over *any* of the stolen files, the Court issued a second Order (the Preliminary Injunction Order), this time ruling that "Defendants must immediately and in writing exercise the full extent of their corporate, employment, contractual, and other authority to (a) prevent Anthony Levandowski and all other officers, directors, employees, and agents of defendants from consulting, copying, or otherwise using the downloaded materials; and (b) cause them to return the downloaded materials and all copies, excerpts, and summaries thereof to Waymo (or the Court) by **MAY 31 AT NOON**." (Dkt. 426 at 23 ¶ 2.) Once again, the compliance deadline came and went without the return of a single one of the misappropriated files.

Defendants have never disputed that some of the stolen files are in the hands of Stroz Friedberg ("Stroz"), a digital forensics firm that Defendants retained as an agent in 2016 to conduct due diligence in connection with Uber's contemplated acquisition of the Otto Defendants. Nor has anyone ever disputed that Mr. Levandowski still has the downloaded files. Moreover, just days ago Boies Schiller Flexner ("BSF") revealed that another one of Defendants' agents — Morrison & Foerster LLP ("MoFo") — *also* has been sitting on some of the stolen files for over a year. Nevertheless, in flagrant disregard of two Court Orders, not a single one of the downloaded files has been returned to Waymo to date. Meanwhile, Stroz remains Defendants' agent in this very litigation, Mr. Levandowski remains a senior officer with full stock privileges at Otto Trucking, and MoFo remains counsel of record for Uber and Ottomotto.

Nor is this Defendants' only willful violation of the Court's Orders. In addition to ordering the production of any downloaded materials, the Court's March 16 Expedited Discovery Order required that "[i]f any part of said downloaded materials has been deleted, destroyed, or modified, then defendants shall state the full extent thereof and produce all documents bearing on said deletion, destruction, or modification." (Dkt. 61 at 2 ¶ 4.) No statement of any destruction

was provided pursuant to the Court's Order by the March 31 deadline. Yet, over two months later, Defendants Uber's and OttoMotto's June 5 response to Waymo's expedited interrogatory revealed that documents were destroyed, allegedly at Uber's direction, back in March 2016:

> On or about March 11, 2016, Mr. Levandowski reported to [Travis] Kalanick, Nina Qi and Cameron Poetzscher at Uber as well as Lior Ron that he had identified five discs in his possession containing Google information. Mr. Kalanick conveyed to Mr. Levandowski in response that Mr. Levandowski should not bring any Google information into Uber and that Uber did not want any Google information. Shortly thereafter, Mr. Levandowski communicated to Uber that he had destroyed the discs.

(Ex. 1 at 4.)[1]

There is no avoiding the plain fact that Defendants have willfully violated two Court Orders. Waymo respectfully requests that the Court promptly issue an Order to Show Cause why Defendants should not be held in contempt.

## STATEMENT OF FACTS

### I. DEFENDANTS HAVE BEEN UNDER AN OBLIGATION TO PRODUCE THE DOWNLOADED MATERIALS SINCE MARCH 2017

On March 16, 2017, the Court issued its Expedited Discovery Order in this case, which set a March 31 deadline for Defendants to "produce for inspection all files and documents downloaded by Anthony Levandowski, Sameer Kshirsagar, or Radu Raduta before leaving plaintiff's payroll and thereafter taken by them." (Dkt. 61 at 2 ¶ 4.) The Expedited Discovery Order also stated: "If any part of said downloaded material has been deleted, destroyed, or modified, then defendants shall state the extent thereof and produce all documents bearing on said deletion, destruction, or modification" by the same March 31 deadline. (*Id.*) Defendants did not produce any of the downloaded materials by this March 31 deadline, nor did they report on the destruction of any such materials. Instead, Defendants provided redacted privilege logs between April 10 and April 13 that were supposedly responsive to the Court's Order. (Dkts. 272-2, 272-4, & 272-6.)

---

[1] Unless otherwise noted, citations herein to "Ex. __" shall refer to the accompanying Declaration of Patrick Schmidt in Support of this Motion.

Notably, Defendants' privilege logs redacted the identity of the agent that performed due diligence for Defendant Uber's potential acquisition of the Otto Defendants. After Defendants' redactions were rejected by both this Court and the Federal Circuit, Defendants finally admitted that this due diligence agent was Stroz. As discussed below, Stroz is also the very entity that Defendants retained in this case to purportedly search Defendants' computer networks for the downloaded materials. (Statement of Facts § III, *infra*.)

## II. THE COURT'S PI ORDER REQUIRES DEFENDANTS TO USE THE FULL SCOPE OF THEIR AUTHORITY TO COMPEL ALL OF THEIR OFFICERS AND AGENTS TO RETURN THE DOWNLOADED MATERIALS

On May 11, 2017, the Court issued its Preliminary Injunction Order ("PI Order"). (Dkt. 426.) Initially, the PI Order found that "Waymo has made a strong showing that Levandowski absconded with over 14,000 files from Waymo, evidently to have them available to consult on behalf of Otto and Uber. As of the date of this order, those files have not been returned and likely remain in Levandowski's possession. The record further indicates that Uber knew or at least should have known of the downloading but nevertheless proceeded to bring Levandowski and Otto on board." (*Id.* at 7.) The PI Order further found that "at least some information from those files, if not the files themselves, has seeped into Uber's own LiDAR development efforts." (*Id.* at 17.)

Given these findings, the PI Order set forth a detailed set of actions that Defendants must take. Relevant to this Motion, the PI Order held that "Defendants must immediately and in writing exercise the full extent of their corporate, employment, contractual, and other authority to (a) prevent Anthony Levandowski and all other officers, directors, employees, and agents of defendants from consulting, copying, or otherwise using the downloaded materials; and (b) cause them to return the downloaded materials and all copies, excerpts, and summaries thereof to Waymo (or the Court) by **MAY 31 AT NOON**." (*Id.* at 23 ¶ 2.) "Downloaded materials" were defined as "all materials that Anthony Levandowski downloaded from Waymo and kept upon leaving Waymo's employment." (*Id.* at 22 ¶ 1.)

### III. DEFENDANTS FAIL TO ASK THEIR AGENT STROZ TO RETURN THE DOWNLOADED MATERIALS

Stroz is Defendants' agent in connection with the due diligence that Defendants conducted as to Uber's potential acquisition of the Otto entities. (Dkt. 370 ¶¶ 9-10.) Indeed, counsel for Defendants Uber and Otto repeatedly called Stroz their "agent" at a recent discovery hearing before Judge Corley in relation to this work. (5.25.17 Hearing Tr. at 24:6-7; 38:5-12; 53:4-9.) As Defendants have stated, the main thrust of Stroz's work was "to conduct an investigation regarding the activities of *Mr. Levandowski*, Mr. Ron, and certain other former Google employees who had joined Otto, *surrounding their respective departures from Google and onboarding to Otto*." (Dkt. 370 at ¶ 9 (emphasis added).) Otto Trucking has also claimed Stroz is its agent. (*E.g.*, Dkt. 572 at 1-2.) As the Court is aware, Waymo claims that Mr. Levandowski stole confidential Waymo files and provided them to Defendants for use in Defendants' self-driving car efforts. Thus, these stolen files (*i.e.*, the "downloaded materials") would have been front and center in Stroz's investigative efforts, a fact that neither Stroz nor Defendants has ever denied.[2] As part of this due diligence, Stroz prepared a Due Diligence Report that is the subject of a motion to compel by Waymo and is part of the "relentless concealment of likely probative evidence, both documentary and testimonial, from Waymo's view" that the Court noted in its PI Order. (Dkt. 426 at 8.)

Stroz is also Defendants' agent in this very litigation, as they are acting as Defendants' discovery vendor and digital forensics consultant. (Dkt. 175-1 (Faulkner Decl.)). By its own testimony, Stroz has provided extensive e-discovery services for Defendants in this case related to Defendants' alleged search of their computer networks for the downloaded materials. (*Id.* at ¶¶ 3-6.)

On May 31, Waymo asked Defendants whether they had instructed their agent Stroz to return any copies of the downloaded materials in Stroz's possession. Defendants Uber and

---

[2] Indeed, recent briefing by Mr. Levandowski suggests that Stroz has imaged the entire contents of Mr. Levandowski's personal computer and has these image files in its possession. (Dkt. 583 at 8 & Dkt. 652 at 3.)

-4-

OttoMotto said they had not: "We have not directed Stroz to do anything with respect to any allegedly downloaded files because Uber does not have control over Mr. Levandowski's personal property, including any property he may have provided to Stroz.  Uber cannot compel a third party to produce documents that it does not control." (Ex. 2 at 3 (5.31.17 email from W. Ray to A. Roberts).)  In a subsequent meet-and-confer between the parties, Uber and OttoMotto reiterated their position that the downloaded materials are Mr. Levandowski's "personal property and he put very tight restrictions on the ability even of Stroz to share that with anyone . . ." (*Id.* at 1 (6.1.17 email from M. Baily to W. Ray).)  Otto Trucking similarly stated that they had not directed or asked Stroz to return the downloaded materials, giving the same explanation that these materials are Mr. Levandowski's "property." (Ex. 3 at 1 (6.14.17 email from J. Judah to S. Brun).)

On May 1, Waymo filed a motion to compel production of the Due Diligence Report that Stroz provided to Defendants, along with associated documents.  (Dkt. 321.)  Defendants Uber/OttoMotto an opposition brief (in which Defendant Otto Trucking joined), contending that the Due Diligence Report was protected by the attorney-client privilege and work product protection and that identifying which documents Stroz selected as exhibits or attachments to the Report would intrude on work product protection.  (*See generally* Dkts. 369, 389.)  As noted above, Defendants do not seek to justify their failure to ask Stroz to return the ***downloaded materials*** based on privilege, but instead based on the contention that the downloaded materials are somehow Mr. Levandowki's personal property.

On June 12— more than a month after the Court ordered Defendants to "***immediately*** and in writing" exercise their authority over their agents — BSF forwarded to Waymo two letters of the same date, one addressed to Mr. Levandowski and the other addressed to Stroz, that purported to (finally) ask Stroz to return the downloaded files.  (Ex. 4.)  However, even this letter is plainly less than the full extent of Uber and Ottomotto's authority.  After going through the motions of telling Stroz that Uber and Ottomotto "do not want" Stroz to "retain possession of" or "destroy or delete" the downloaded materials, but rather "want" Stroz to produce them to Waymo, the letter then explains to Stroz that "Uber and Ottomotto do not have the contractual power to order Stroz" to do any of those things.  (*Id.* at 2 ¶ 4.)

## IV. ON JUNE 8 UBER SERVES AN INTERROGATORY RESPONSE STATING THAT SOME OF THE DOWNLOADED MATERIALS WERE DESTROYED IN MARCH OF LAST YEAR

On June 8, Uber served a response to Waymo's Expedited Interrogatory No. 1. In relevant part, Uber's response stated:

> On or about March 11, 2016, Mr. Levandowski reported to Mr. Kalanick, Nina Qi and Cameron Poetzscher at Uber as well as Lior Ron that he had identified five discs in his possession containing Google information. Mr. Kalanick conveyed to Mr. Levandowski in response that Mr. Levandowski should not bring any Google information into Uber and that Uber did not want any Google information. Shortly thereafter, Mr. Levandowski communicated to Uber that he had destroyed the discs. Uber never received those discs, and does not know whether those discs contained any of the "DOWNLOADED MATERIALS."

(Ex. 1 at 4.) Also, in a recent deposition, Mr. Ron — one of the two Managing Members for Defendant Otto Trucking — ████████████████████████████████████████ ████████████████████████████████████████████████. (Ex. 5 (Ron Depo. Tr.) at 90:16-94:4, 266:4-14.) Mr. Poetzscher, ████████████████████████████████ (Ex. 6 (Poetzscher Depo. Tr.) at 21:24-22:1), ████████████████████████████ ████ (*id.* at 259:1-7) .

## V. DEFENDANT OTTO TRUCKING FAILS TO EXERCISE ITS FULL AUTHORITY TO CAUSE MR. LEVANDOWSKI TO RETURN THE DOWNLOADED MATERIALS

Mr. Levandowski is an officer of Defendant Otto Trucking — specifically, he is Otto Trucking's sole Managing Member other than Mr. Ron. Given Otto Trucking's obligations under the PI Order to "exercise the full extent of [its] corporate, employment, contractual, and other authority" to cause Mr. Levandowski to return the downloaded materials, Waymo requested that Otto Trucking take action by ████████████████████████████████████████ ████████████████████████████████████████████ (Ex. 3 at 5-6 (6.7.17 email from L. Cooper to J. Cooper et al.).) Otto Trucking responded that it would not or could not take the step. It reasoned that ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

▊▊▊▊ (*Id.* at 4 (6.8.17 email from Walsh to J. Cooper et al.).) (internal citation omitted). Otto Trucking later doubled down, asserting, despite this Court's rulings to the contrary (Dkt. 426 at 23 fn. 9, 6.7.17 Hearing Tr. 93:8-24), that taking ***any*** action against Mr. Levandowski for refusing to obey the Court's Order is not only impossible, but would violate Mr. Levandowski's Fifth Amendment rights:

> As reflected in the various agreements, ▊▊▊▊ Further, we believe that attempting to coerce Mr. Levandowski to agree to take punitive action against himself if he refuses to waive his 5th Amendment rights raises constitutional issues that are unique and different from those raised by the Court's direction to Uber to take punitive action against Mr. Levandowski. We also do not believe that Judge Alsup intended to require such action through the preliminary injunction order.

(*Id.* at 2 (6.12.17 email from S. Brun to J. Cooper).)

Notably, Mr. Ron testified in deposition that ▊▊▊▊. (Ex. 5 (Ron Depo. Tr.) at 25:23-26:18, 53:22-54:24.)

## VI. DEFENDANTS FAIL TO EXERCISE THEIR FULL AUTHORITY TO CAUSE THEIR AGENT, MOFO, TO RETURN THE DOWNLOADED MATERIALS

The parties met and conferred on June 1 regarding Defendants' compliance (or lack thereof) with Paragraph 2 of the Court's PI Order, and Waymo promptly memorialized that discussion on June 2. (Ex. 7 at 3 (6.2.17 J. Judah email to J. Cooper et al.).) On the June 1 meet and confer, in response to a direct question from Waymo, MoFo represented that "it does not have any of the materials that Anthony Levandowski downloaded from Waymo and kept upon leaving Waymo's employment, regardless of how long he kept them for and whether or not any such materials qualify as trade secrets or proprietary or confidential information (the 'downloaded materials'), or any copies, excerpts, or summaries of the downloaded materials." (*Id.*)

However, almost two weeks later, on June 12, counsel at BFS (oddly, not MoFo) emailed Waymo to explain that what MoFo had represented on June 1 was not accurate. BFS explained that, "to be sure the record is clear and accurate," they needed to provide certain "caveats and clarifications" to what MoFo had said on the June 1 call. (*Id.* at 1.)

Significantly, BFS "clarified" that MoFo, Defendants' agent, *did* have some of the downloaded materials:

> 2. MoFo does not have any downloaded materials (or any copies, excerpts or summaries thereof), **except to the extent that any such material may appear**: (1) excerpted in or as an exhibit to the Stroz Report, which is privileged; and (2**) in certain materials AL and other persons provided to Stroz to which MoFo was given limited access during the Stroz investigation** pursuant to the terms of the AL-Stroz contract and the protocol governing the investigation, and under strict conditions preventing MoFo from sharing those materials with anyone, including Uber.

(*Id.* (emphasis added).) Defendants have never explained why MoFo's possession of stolen files was not revealed until June 12, why those stolen files were not returned to Waymo on March 31 or May 31, or how the terms of an unproduced contract between two third-parties (Mr. Levandowski and Stroz) could prevent *MoFo* from returning the stolen files or prevent *Defendants* from requiring MoFo to do so.

## ARGUMENT

"Federal courts have the power to enforce compliance with their orders. One way is through holding a party in civil contempt." *Perez v. i2a Techs., Inc.*, No. C 15-04963 WHA, 2015 WL 7753330, at *3 (N.D. Cal. Dec. 2, 2015) (Alsup, J.). "To establish a *prima facie* case for civil contempt, the moving party must establish by clear and convincing evidence that the defendants: (1) violated a court order, (2) beyond substantial compliance, and (3) such violation was not based on a good faith and reasonable interpretation of the order." *Id.; see also Perez v. RMRF Enter., Inc.*, No. C 13-80059 SI, 2014 WL 3869935, at *2 (N.D. Cal. Aug. 6, 2014) (same).

Applying these factors, Defendants should be held in civil contempt for: (1) failing to "exercise the full extent of their corporate, employment, contractual, and other authority" to cause their agent Stroz Friedberg to return all materials in Stroz Friedberg's possession that Anthony Levandowski downloaded from Waymo's servers; (2) failing to timely notify Waymo and the

Court about the apparent destruction of five discs of downloaded materials; (3) failing to "exercise the full extent of their corporate, employment, contractual, and other authority" to cause their agent, Morrison & Foerster, LLP ("MoFo") to return the downloaded materials; and (4) failing to "exercise the full extent of their corporate, employment, contractual, and other authority" to cause Otto Trucking's officer, Mr. Levandowski, to return the downloaded materials

## I. DEFENDANTS ARE IN CONTEMPT FOR FAILING TO TAKE ALL STEPS TO CAUSE STROZ TO RETURN THE DOWNLOADED MATERIALS

### A. Defendants Violated the PI Order and Expedited Discovery Order With Respect to Stroz

As noted above, the Court's PI Order required Defendants to "exercise the full extent of their corporate, employment, contractual, and other authority" to cause their "officers, directors, employees, and agents" to "return the downloaded materials and all copies, excerpts, and summaries thereof to Waymo (or the Court) by **MAY 31 AT NOON**." (Dkt. 426 at 23 ¶ 2.)  The Expedited Discovery Order required that Defendants produce these materials by March 31. (Dkt. 61 at 2 ¶ 4.)

As detailed above (Statement of Facts § II, *supra*), there is no dispute that Stroz is Defendants' agent.  Yet May 31 (not to mention March 31) has come and gone, and Defendants have refused to use their full authority to persuade or compel Stroz to return any of the downloaded materials that Stroz possesses (as required by the PI Order) so that Defendants could produce these materials (as required by the Expedited Discovery Order).  Thus, Defendants have violated both Orders.  Nor do Defendants have any reasonable or good faith excuse for this violation, as discussed in Section I(C), *infra.*

Nor, for that matter, have Defendants ever denied that Stroz possesses at least some of the downloaded materials.  Indeed, the facts of this case raise a strong inference that Stroz does indeed possess these documents.  Consider, for example, the very first privilege log that Defendants produced, in response to the Court's March 16 order for Defendants to produce the downloaded materials.  This document was replete with references to Stroz — though Stroz's name was originally and improperly redacted.  Defendants have provided no explanation (and no explanation

is apparent) for why Stroz would have been listed on this privilege log, except that Stroz possesses the downloaded materials that this log was designed to address.

### B. Defendants' Violation Was "Beyond Substantial Compliance"

There can be no doubt that Defendants' violation is "beyond substantial compliance." Indeed, Defendants have fallen short of substantial compliance in two distinct ways.

First, to date, the *only* effort that Defendants have made to induce or persuade Stroz to return the downloaded materials is Uber's and Ottomotto's June 12 letter to Stroz, in which they state that they "want" Stroz to return the downloaded materials but then state in the next breath that they "do not have the contractual power to order Stroz to produce such materials to Waymo." (Ex. 4 at 2 ¶ 4 (6.12.17 Ltr. from K. Dunn to S. Brown).)  The lukewarm and equivocal nature of this letter is underscored by the final substantive sentence, which states that "if Stroz . . . believes it is able to produce any Google Information it may have to Waymo based solely on the wishes expressed by Uber and Ottomotto in this letter, but without the consent of Levandowski, it *may* do so immediately."  (*Id.* (emphasis added).)  For its part, Otto Trucking has made no request to Stroz at all.

Needless to say, this equivocal request falls far short of "exercis[ing] the full extent of [Defendants'] corporate, employment, contractual, and other authority" to compel Stroz to return the downloaded materials.  Defendants do not, for example, *order* Stroz to return these materials. They do not say that they will fire Stroz if Stroz fails to comply.  They do not say that they will withhold future business from Stroz if Stroz fails to comply.  A lukewarm and equivocal statement that Defendants "want" Stroz to return the downloaded materials simply does not come close to discharging Defendants' obligation to "exercise the full extent of their corporate, employment, contractual, and other authority" to compel Stroz to return these materials.  Thus, Defendants' violation of the PI Order is "beyond substantial compliance."  *Perez*, 2014 WL 3869935 at *2 ("substantial compliance" standard requires that "every reasonable effort has been made to comply.")

Defendants' violation is also beyond substantial compliance for a different reason.  Even if the June 12 letter to Stroz was substantively sufficient to discharge their obligations under the PI

Order, this letter was not sent until June 12. Yet the deadline for Defendants to "exercise the full extent of their corporate, employment, contractual, and other authority" to compel Stroz to return these materials was May 31. The deadline for Defendants to produce these materials under the Expedited Discovery Order was March 31. Thus, Defendants violated the Court's deadlines by weeks to months, which is far too long a delay to constitute "substantial compliance" — particularly given the sensitive nature of the documents, the risks that Waymo suffers by having these documents in others' hands, and the compressed nature of this litigation. Clearly Defendants could have sent their letter to Stroz by the Court's deadlines, had they employed "every reasonable effort" to do so. *Perez*, 2014 WL 3869935 at *2.

### C. Defendants' Violation Is Not Based on a Good Faith and Reasonable Interpretation of the PI Order or Expedited Discovery Order

There is no good faith reading of the Court's Orders that would excuse Defendants' conduct. The lead reason that Defendants offered in correspondence for why they did not ask Stroz to return the downloaded materials was that these materials are "Mr. Levandowski's personal property." (Ex. 2 at 3 (5.31.17 email from W. Ray to A. Roberts).) This argument is absurd. The downloaded materials at issue in the PI Order were explicitly defined as "all materials that Anthony Levandowski downloaded from Waymo and kept upon leaving Waymo's employment." (Dkt. 426 at 22 ¶ 1.) They are not Mr. Levandowski's property; they are Waymo's property. Defendants cannot credibly argue that the materials that Mr. Levandowski *stole* from Waymo have been somehow transmuted into "Mr. Levandowski's personal property." Nor (needless to say) could any contract between Mr. Levandowski and Stroz convert these materials from Waymo's property into Mr. Levandowski's property.

Defendants also stated in correspondence that they would not demand that Stroz turn over the downloaded materials because "Uber does not have control" of these materials and "Uber cannot compel a third party to produce documents that it does not control." (Ex. 2 at 3 (5.31.17 email from W. Ray to A. Roberts); *see also* Ex. 3 at 1 (6.14.17 email from J. Judah to S. Brun).) But this makes no sense. While Defendants may not presently have physical control over the materials in Stroz's possession, they do have the power to direct that Stroz produce these materials

-11-

and to use their full contractual power to persuade Stroz to follow this directive.  The PI Order did not demand impossible or superhuman efforts from Defendants, but it did require Defendants to use "the full extent of their corporate, employment, contractual, and other authority" to persuade or direct Stroz to return these materials.  This would include, for example, ordering Stroz to return these materials and/or threatening to cut off business ties with Stroz should Stroz refuse to do so.  But as detailed in Section I(B) above, Defendants have exercised far less than their "full authority" to pressure Stroz to return the downloaded materials.

Finally, while they have not so far proffered it as a reason for their non-compliance with the Court's Preliminary Injunction Order, Defendants may argue that the deadline for them to use their "full authority" against Stroz has not yet arrived, given the Court's order extending the PI compliance deadline from May 31 to June 23 "insofar as compliance would implicate either issues raised by non-party Anthony Levandowski's motion to modify the May 11 provisional relief order (Dkt. No. 466) or privilege disputes currently pending before Judge Corley." (Dkt. 499.)  Yet this argument would be unavailing as well.  Mr. Levandowski's motion to modify the PI Order addresses whether the Court may order Uber to discipline **Mr. Levandowski** for failing to waive his Fifth Amendment rights; it does not implicate what actions Defendants can or cannot take against Stroz.  Moreover, the Court never extended the March 31 deadline in the Expedited Discovery Order, so nothing can excuse Defendants' failure to try to obtain the downloaded materials from Stroz so that they could be produced by that March 31 deadline.

Nor does the privilege dispute now resolved by Judge Corley's Order of June 5 implicate production of the Stroz Due Diligence Report and its attachments.  (*See* Statement of Facts § II, *supra*.)  Defendants seek to justify their failure to ask Stroz to return the downloaded materials based on the contention that the downloaded materials are somehow Mr. Levandowki's personal property, *not* based on privilege.  And in the privilege briefing before Judge Corley, Defendants never contended that wholesale production of the files that Mr. Levandowski gave to Stroz would implicate any privilege or protection.  It follows *a fortiori* that Defendants' ordering Stroz to return these files would not tread on any privilege or protection.

In sum, Defendants' obligation to order Stroz to return the downloaded materials does not implicate Mr. Levandowski's motion to modify the PI Order, nor does it implicate the privilege dispute. Thus, the deadline for Defendants to comply with their PI Order obligations via-a-vis Stroz remains May 31, not June 23. Yet May 31 has come and gone, and Defendants have not used their "full authority" to direct and pressure Stroz to return the downloaded materials. Thus, Defendants have violated the PI Order.

## II.    DEFENDANTS ARE IN CONTEMPT FOR FAILING TO TAKE ALL STEPS TO CAUSE MOFO TO RETURN THE DOWNLOADED MATERIALS

As explained in Statement of Facts § VI, *supra*, BSF has now admitted that MoFo has had copies of at least some the downloaded materials for months now, as part of the Stroz investigation. BSF's admission means that MoFo misrepresented to Waymo when it stated on June 1 that it did ***not*** possess these materials. It also means that MoFo (who is, after all, Defendants' agent) violated the PI Order by not returning these materials by the May 31 deadline, and violated the Expedited Discovery Order by not returning these materials by March 31. Alternatively, Defendants violated the PI Order by not compelling MoFo to do so.

This failure goes far beyond substantial compliance, and there is no good-faith or reasonable reading of the orders that would excuse it. BSF's June 12 email argued that there were contractual restrictions that prevented MoFo from turning over the downloaded materials. (Statement of Facts § VI, *supra*.) But contractual restrictions cannot stymie or overcome the Court's orders. If they could, then ***any*** party could relieve itself from a Court order by just entering into a contract forbidding compliance with the order. Needless to say, this is not the law.

## III.   DEFENDANTS ARE IN CONTEMPT FOR FAILING TO TIMELY DISCLOSE THE DESTRUCTION OF FIVE DISCS OF DOWNLOADED MATERIALS

As recounted above, the Court's Expedited Discovery Order required Defendants to disclose, ***by March 31***, whether any of the downloaded materials had been destroyed. Defendants did not disclose any destruction by that date. However, it its ***June 8*** interrogatory response, Defendant Uber disclosed that it has known since shortly after ***March 11, 2016*** that Mr. Levandowski destroyed five discs containing Google information. Uber's failure to disclose this destruction by March 31 is a blatant violation of the Expedited Discovery Order.

Again, this failure goes far beyond substantial compliance, and there is no good-faith or reasonable reading of the Expedited Discovery Order that would excuse it.  Uber did say in its interrogatory response that it "does not know whether those discs contained any of the 'DOWNLOADED MATERIALS.'"  (Ex. 1 at 4.)  Yet Uber knew that these discs contained Google information in Mr. Levandowski's possession.  If Uber's interrogatory response is to be believed, it also was alarmed enough by these discs to emphasize to Mr. Levandowski that he "should not bring any Google information into Uber and that Uber did not want any Google information."  (*Id.*)  Mr. Poetzscher — ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆ (Ex. 6 at 253-256 (Poetzscher Depo.).)  Even if Uber did not "know" to a certainty that the discs contained downloaded materials, these facts and circumstances raise an exceedingly strong inference that the discs did indeed contain downloaded materials — *i.e.*, materials that Mr. Levandowski downloaded from Waymo before leaving Waymo.  It is difficult if not impossible to see any other way that Mr. Levandowski could have come to possess five discs of Google/Waymo information in the first place.  Thus, for Uber to fairly honor and obey the Expedited Discovery Order, it needed to disclose this destruction by March 31.  By failing to do so, Uber is in contempt of the Expedited Discovery Order.

Otto Trucking is in contempt of the Expedited Discovery Order for the same reason.  As shown in Uber's interrogatory response and ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆  Yet, like Uber, Otto Trucking failed to disclose this fact by the March 31 deadline under the Expedited Discovery Order.

### IV. DEFENDANT OTTO TRUCKING IS IN CONTEMPT FOR FAILING TO TAKE ALL CORPORATE STEPS TO PRESSURE MR. LEVANDOWSKI TO RETURN THE DOWNLOADED MATERIALS

As noted above, Otto Trucking has failed to take all available corporate steps to pressure Mr. Levandowski to return the downloaded materials.  (Statement of Facts § IV, *supra*.)  Specifically, ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆ — should he fail to return the

1  downloaded materials.  (*Id.*)  Yet Otto Trucking has refused to take this step.  (*Id.*)  By failing to
2  take this significant step, Otto Trucking has failed to comply with the PI Order or Expedited
3  Discovery Order, and its failure falls well short of "substantial compliance."
4       Nor has Otto Trucking proffered any good faith or reasonable interpretation of the Orders
5  that would excuse its failure.  As noted above, Otto Trucking's only proffered excuse is to say that
6  it cannot take this step ███████████████████████████████████████████████
7  ███████████████████████████████████████████████ But this
8  excuse makes no sense.  If Mr. Levandowski — ███████████████████████████
9  ██████████████████████████ that would simply mean that Otto Trucking
10 (through its Managing Members) has refused to take all steps to compel return of the downloaded
11 materials.  In other words, Mr. Levandowski's recalcitrance would simply be what puts Otto
12 Trucking in contempt of the PI Order.  ████████████████████████████████
13 ████████████████████████████████████████████████████
14 ██████████████████████ By refusing to exercise this power, Otto Trucking is in
15 contempt of the PI Order and Expedited Discovery Order.

## CONCLUSION

17      For the foregoing reasons, Waymo respectfully requests that the Court issue an Order to
18 Show Cause why Defendants should not be held in civil contempt of the PI Order and Expedited
19 Discovery Order.[3]

21 DATED:  June 21, 2017     QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC

---

[3] Should the Court ultimately find Defendants in contempt, Waymo requests that Waymo be permitted to propose remedies for contempt commensurate with the Court's findings, which could include further provisional relief, evidentiary sanctions, and/or adverse inferences.