CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
MARJA-LIISA OVERBECK (State Bar No. 261707)
mari.overbeck@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:   (415) 512-4077

Attorneys for Non-Party Lyft, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**NON-PARTY LYFT, INC.'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS**<br><br>Date:　TBD<br>Time:　TBD<br>Crtrm.:　F – 15th Floor<br>Judge:　The Hon. Jacqueline Scott Corley<br><br>Trial Date: October 2, 2017 |

## I. INTRODUCTION

Uber's opposition to Lyft's Motion to Quash ignores settled precedent and reveals that Uber is trying to do exactly what it is not permitted to do: use this litigation in an attempt to obtain sensitive competitive business information that it would otherwise have no right to access. This kind of abuse is not countenanced by even the broadest reading of the discovery statutes—Uber's curiosity about what Lyft is doing with Waymo is not a basis for sweeping discovery. *See Specialized Bicycle Components, Inc. v. Barton*, No. C10-05725 HRL, 2011 WL 1599653, at *2 (N.D. Cal. Apr. 28, 2011) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'") (quoting *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)). Uber even makes the remarkable argument that Lyft somehow signed up for this invasive discovery from its competitive rival because it finalized a deal with Waymo while this litigation over Uber's alleged theft of trade secrets from Waymo was underway. This is not what the Federal Rules allow.

Uber concedes that it bears the burden of showing the relevance of its requests, but it fails to meet that burden. Its relevance justifications fall into two main categories, neither of which has any merit. First, Uber attempts to conscript Lyft into being an involuntary expert by seeking information from Lyft on the value of the trade secrets and the harm Uber's alleged theft caused Waymo. Of course, Uber offers nothing more than mere speculation that Lyft—particularly as a nonparty—would have any documents or testimony to this end, and the case law is clear in any event that this is not a proper use of a nonparty subpoena. Second, Uber makes the claim that it needs to see what information was exchanged between Uber and Waymo to determine whether the exchanged information was treated as confidential. Yet, in making this argument, Uber utterly ignores the evidence offered with Lyft's opening brief that there was a non-disclosure agreement in place between Waymo and Lyft and that steps were taken to keep any information exchanged confidential. Without revealing what information was exchanged, which is itself confidential, there can be no dispute that anything shared between Lyft and Waymo was done in a way that would not have destroyed confidentiality or trade secret status.

Uber concludes its argument by pointing to the parties' Protective Order and saying that this is a panacea for all of Lyft's confidentiality concerns. This argument is not only wrong, but it also misses the point. Before Uber can obtain highly confidential information from Lyft (or Waymo, for that matter), it must first meet its burden of showing relevance, which it has not done. Uber cannot excuse overbroad and improper requests by saying there is "no harm" because a protective order is in place.

Lyft respectfully requests that this Court quash both of Uber's overbroad Subpoenas and similarly deny production of the same types of information about Lyft from Waymo. If this Court is inclined to deny this motion, Lyft respectfully requests the opportunity for a hearing given the importance of these confidentiality issues to the company.

## II. ARGUMENT

### A. Uber Fails to Meet Its Burden of Demonstrating Relevance.

Uber concedes, at it must, that the "party issuing the subpoena must demonstrate the relevance of the discovery sought." (Opposition Brief ("Opp.") at 2, ECF No. 665.) Uber has failed to make this showing, particularly in the context of the nonparty discovery it seeks, where courts extend greater protections. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-01967 CW (NC), 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts.") (citing *United States v. C.B.S., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982)).

Uber's first relevance justification—that "the Waymo/Lyft deal may provide a model in some respects for purposes of analyzing damages in this matter, particularly to the extent Lyft analyzed the value of Waymo's self-driving technology to its ride-sharing business" (Opp. at 3)— is specious. Here, Uber appears to be trying to conscript Lyft as an involuntary industry expert on the value of the trade secrets that Waymo accuses Uber of stealing. This tactic has been rejected outright by the Ninth Circuit. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) ("Rule 45(c)(3)(B)(ii) was intended to provide appropriate protection for the intellectual property of [a] non-party witness . . . A growing problem has been the use of subpoenas to compel the giving of evidence and information by unretained experts.") (citations

omitted).[1]  Uber needs to find its own expert to support its case, and any damages analyses in this litigation ought to be offered by that expert, not by Uber's direct competitor.  *Convolve, Inc. v. Dell, Inc.*, No. C 10-80071 WHA, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) ("The instant subpoena effectively requires non-party Seagate to act as an unpaid expert witness in support of defendants' defense against Convolve in the Texas litigation.  This is an abuse of the subpoena power.").

Uber repeats its speculative refrain that these documents might offer a "unique third-party perspective," but cites no authority for the proposition that it is entitled to such a perspective, particularly from a competitor.  Uber does not have the unfettered right to the discovery of its choice.  Here, Lyft assumes the *parties* to this litigation no doubt have provided (or shortly will provide) damages information in their interrogatory responses and contentions, and Uber will also be able to explore Waymo's damages contentions through expert or contention discovery, which is the more appropriate means to obtain the information it seeks.  *See, e.g.*, *UniRAM Tech., Inc. v. Monolithic Sys. Tech., Inc.*, No. C 04-1268 VRW (MEJ), 2007 WL 915225, at *3 (N.D. Cal. Mar. 23, 2007).

The other possible justification Uber offers regarding the relevance of its discovery requests is that the documents might show "whether Waymo has suffered any harm to its momentum in the self-driving industry, based on the perception of a third-party (Lyft) rather than Waymo's internal view."  (Opp. at 3.)  As a general matter, a nonparty's opinions, evaluations, or "perceptions" of issues in the case are simply not probative.  *See, e.g.*, *Henderson v. Zurn Indus., Inc.*, 131 F.R.D. 560, 568 (S.D. Ind. 1990) (third party insurer's evaluation of the case not discoverable even though it may be "enlightening to the plaintiff.").  Further, Uber makes no showing that Lyft would have any evidence about the harms Uber's conduct may have caused Waymo.[2]  *See Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir.

---

[1] This is especially problematic here where Lyft, as a nonparty, does not know what the trade secrets at issue in this case are.  This highlights the practical difficulty placed on Lyft of identifying and isolating any documents that might be relevant, assuming any even exist.

[2] To the extent such analyses or evaluations exist, Uber's motion also seeks to intrude upon areas that are clearly confidential and privileged. The Subpoenas seek opinions and evaluations of this litigation (*see* Luedtke Decl., Ex. A (Request No. 12), ECF No. 646-1).  Any such evaluations

-3-

1992) (plaintiffs did not establish claim of relevancy where they failed to make a "specific showing . . . that the requested documents would lead to relevant evidence") (citation and quotation omitted); *Li v. Sheltzer*, No. 1:07-cv-01039 AWI GSA, 2008 WL 2694825, at *2 (E.D. Cal. July 7, 2008) ("[T]he standards for non-party discovery require a stronger showing of relevance than for party discovery.").

Uber's final possible relevance justification—that the documents "may be relevant to industry practices" for handling confidential information—also finds no traction. With its opening brief, Lyft submitted a declaration that discussed the numerous ways in which Lyft and Waymo took measures to protect the information exchanged between them as confidential. (*See* Matthiesen Decl. ¶¶ 2-6, ECF No. 646-2.) These measures included the execution of a mutual non-disclosure agreement. (*Id.* ¶ 3.) Thus, even if any of the purported trade secrets were exchanged, there is no question that those trade secrets were received pursuant to that agreement and the other confidentiality protections that Lyft (and Waymo) put into place. Uber will find no evidence here to support any claim that Waymo did not take reasonable steps to protect any trade secrets with respect to Lyft, and Lyft's declaration and accompanying evidence about the existence of an NDA is dispositive on that front. Uber cannot meet its burden of showing that it is entitled to more information than it already received in Lyft's declaration. *See, e.g.*, *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, 2008 WL 4542948, at *2 (N.D. Ill. Aug. 15, 2008) ("We find the NDA sufficient to show a confidential relationship."); *XTec, Inc. v. Hembree Consulting Servs., Inc.*, No. 14-21029-CIV, 2015 WL 3797165, at *10 (S.D. Fla. June 18, 2015) (finding sufficient evidence that appropriate measures were taken by party to protect its alleged trade secret by requiring the execution of non-disclosure agreements by third parties).

Allowing Uber to rifle around in a competitor's communications in an alleged attempt to learn "whether Waymo's purported trade secrets are in fact secrets," when Waymo and Lyft

---

would likely have been formulated by Lyft's internal legal team, and would be privileged. *Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 609 (N.D. Cal. 2000) (documents comprising counsel's advice regarding legal implications and potential liability of corporation's decision protected by attorney-client privilege); *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 179 (S.D. Ohio 1993) (memo from counsel to corporate officers regarding the terms of the acquisition and issues of due diligence protected from disclosure by attorney-client privilege).

1  clearly took reasonable measure to protect the exchange of data between them is an obvious abuse

2  of the discovery procedures and should be rejected outright.  (Opp. at 3); *see Moon v. SCP Pool*

3  *Corp.*, 232 F.R.D. 633, 635 (C.D. Cal. 2005) (quashing a subpoena served on a nonparty based on

4  relevance grounds); *Convolve*, 2011 WL 1766486, at *2 ("Requests to non-parties should be

5  narrowly drawn to meet specific needs for information.").

6        Moreover, and in light of its articulated relevance justifications, Uber's contention that it

7  "has tailored its requests to the extent possible" (Opp. at 5) is baseless.  The Subpoenas appear to

8  request *everything* about the Waymo/Lyft collaboration, with no emphasis on the trade secrets at

9  issue in the litigation or the subset of those documents related to the value of trade secrets.

10  Instead, the Subpoenas seek (1) *all* "communications" between Lyft and Waymo "about past,

11  current, or potential competition with Uber," (2) *all* "documents relating to analysis of Lyft as a

12  potential acquisition target by Waymo," (3) *all* communications "relating to the ride-sharing

13  market or autonomous vehicles that refer to Uber," and (4) *all* "documents *relating to* any analysis

14  by or for Lyft on the potential impact of this Action on Uber, Lyft, or the ride-sharing market."

15  (Luedtke Decl., Ex. A (Request Nos. 1, 2, 10, 12), ECF No. 646-1 (emphasis added).)  Uber

16  makes no effort to describe the documents it seeks from Lyft except in the broadest possible

17  terms.[3]  *See AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-03393-YGR (JSC), 2014 WL

18  6706898, at *1 (N.D. Cal. Nov. 25, 2014) (Corley, J.) (a subpoena must be narrowly tailored to

19  request only evidence which is necessary in the presentation of a party's case).

20        Finally, Uber's argument that Lyft somehow made itself a target for sweeping discovery

21  by doing a deal with Waymo is unfounded.  It is a preposterous argument—Uber would ask this

22  Court to hold that because Uber is accused of stealing trade secrets from Waymo, this means that

23  Lyft should be expected to disclose its own confidential information to Uber because it entered

24  into a collaboration with Waymo.  Uber provides no authority for this absurd contention, nor could

25  it.  Lyft had no expectation that Uber would seek irrelevant, confidential discovery from it in

26  litigation in which Lyft has no role.  Lyft remains a nonparty, and has never been identified in this

---

[3] Uber also has offered no justification for why any actual agreements, term sheets, and/or letters of intent relating to Waymo and Lyft's alliance are relevant, and says nothing of its sweeping request for "analysis or due diligence relating to" the Waymo/Lyft deal.

-5-

matter as an entity with relevant or potentially relevant information.  Uber may not extend discovery in this litigation to a nonparty on a theoretical whim—Rule 26 requires much more.  *In re Ashworth, Inc. Sec. Litig.*, No. 99-CV-121, 2002 WL 33009225, at *4-6 (S.D. Cal. May 10, 2002) (granting motion to quash nonparty subpoenas and rejecting the plaintiff's "efforts to equate the theory of the case . . . as its 'claim' for discovery purposes").[4]

The lack of relevance of the information sought makes the burden on Lyft undue by definition.  "[I]f the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed would be by definition undue."  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (internal quotation marks omitted); *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995).[5]

### B. Uber Has Not Demonstrated a Substantial Need for the Confidential, Irrelevant Documents It Seeks.

Uber acknowledges, as it must, that its discovery would require disclosure of competitive intelligence, but it mistakenly claims that this is "appropriate."  (Opp. at 4.)  As Lyft set forth in its opening motion, when confidential information is at issue, the requesting party must demonstrate a "substantial need" for the material—a showing that Uber has failed to make here.  *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 2582097, at *2 (N.D. Cal. June 9, 2014); *Compaq*, 163 F.R.D. at 338 (requiring moving party to show "substantial need" before court compels "disclosure of trade secrets or other confidential research, development or

---

[4] The impropriety of Uber's requests is underscored in its now-pending motion to compel against Waymo (ECF No. 687).  There, Uber asserts that Waymo ought to disclose when it and Lyft initiated discussions because this might show that Waymo filed this lawsuit "to take Uber's share of the ride-sharing market."  (*Id.* at 6.)  This is not a proper use of Rule 26, which tethers discovery to matters relevant to a party's claims or defenses.  *In re Ashworth*, 2002 WL 33009225, at *4.

[5] Uber's contention that Lyft "confirm[ed] that responding to the relevant discovery will not be unduly burdensome" is nonsense.  (Opp. at 6.)  Lyft confirmed that it took measures to guard the confidentiality of the details of its collaboration with Waymo, but its efforts in this regard have nothing to do with the resources and costs associated with responding to the Subpoenas.  Moreover, as the case authority make clear, *any* burden on Lyft under the circumstances presented is by definition undue—no additional factual showing is necessary.  Of course, Lyft reserves its right to make such a showing and to seek its legal fees and expenses if the Subpoenas are not quashed.  *See Nitsch v. DreamWorks Animation SKG Inc.*, No. 5:14-cv-04062-LHK (SVK), 2017 WL 930809, at *1 (N.D. Cal. Mar. 9, 2017); *C.B.S., Inc.*, 666 F.2d at 371-72.

commercial information").

In lieu of making the requisite showing of "substantial need," Uber instead argues that a protective order could be used to limit the disclosure of any confidential information so that it "cannot be used for business purposes." (Opp. at 4.) Uber apparently views any such protective order as a "cure all" for Lyft's legitimate confidentiality concerns, but this Court has not taken the same view, particularly with respect to nonparties. *Convolve*, 2011 WL 1766486, at *2 ("The subpoena calls for confidential technology . . . While a protective order would restrict access to some extent, it would still allow access by counsel, legal assistants, experts, their assistants, the jury, and court staff . . . [the non-party] should not have to suffer such disclosure without a clear-cut need and a subpoena narrowly drawn to meet that need.").

Uber's argument that a protective order ought to vitiate Lyft's legitimate confidentiality concerns also misses the point insofar as Uber has proffered it as a solution in order to sidestep its burden. The existence of a protective order does not suspend application of the Federal Rules of Civil Procedure, and under those Rules, neither Lyft nor any other nonparty is compelled to produce trade secret, proprietary, financial, or confidential information that is irrelevant to the operative pleadings simply because a protective order is in place. Parties cannot use the existence of a protective order—even one with an attorneys' eyes only designation—to get sweeping, irrelevant, and highly sensitive information from competitors. Protective orders are not a license for overbroad discovery, and the existence of one in this litigation does not compel the production of Lyft's confidential information in response to objectionable and inappropriate document demands.[6] *Insulate Am. v. Masco Corp.*, 227 F.R.D. 427, 434 (W.D.N.C. 2005) ("There is a constant danger inherent in disclosure of confidential information pursuant to a Protective Order. Therefore, the party requesting disclosure must make a strong showing of need, especially when

---

[6] Uber overstates the court's holding in *Medtronic MiniMed, Inc. v. Animas Corp.*, No. C 13-80294 WHA, 2014 WL 308952 (N.D. Cal. Jan. 27, 2014). (*See* Opp. at 4.) There, Judge Alsup found that the plaintiffs' document requests to a third-party (owned by the same parent company as the defendant), which were "generally directed at the accused product . . . the relationship between [the third-party] and plaintiffs, and confidential information exchanged between plaintiffs and [the third-party]" were "overly broad and of questionable relevance to the underlying patent infringement action," except as to a mere two requests. *Id.* at *2.

confidential information from a non-party is sought.").[7]

Uber has not and cannot make any such "strong showing of need," particularly where Lyft's competition with Uber is not at issue in the pending litigation. *See Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 7 (D.D.C. 2006) (courts "presume[] that disclosure to a competitor is more harmful than disclosure to a noncompetitor") (citations omitted). Under Uber's argument, in every litigation where a company is sued of wrongdoing, the company could subpoena each of its competitors to blindly inquire about whether there are any internal documents discussing the litigation or the claims at issue. This is of course well beyond the reaches of even the broadest possible permissible reading of the Discovery Act. *See Convolve*, 2011 WL 1766486, at *2 ("Non-parties may occasionally have to testify and give evidence for and against litigants, but non-parties should not be burdened in discovery to the same extent as the litigants themselves. Requests to non-parties should be narrowly drawn to meet specific needs for information.").

### C. Uber Admits That Party Discovery Has Not Been Exhausted.

Although Rule 45(d)(1) requires the party issuing a subpoena to take "reasonable steps to avoid imposing undue burden or expense" on the person subject to the subpoena, Uber admits that it has taken no such steps here, and has instead served subpoenas on Lyft that are nearly identical to requests simultaneously served on Waymo. (Opp. at 6.)

Uber attempts to justify this "simultaneous discovery" by pointing to the expedited schedule in this case. (Opp. at 6.) This argument is wholly without support. Just as Rule 45 subpoenas are subject to the same deadlines as other forms of discovery under Rule 26, *see Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 561 (S.D. Cal. 1999), so too are they subject to the same overarching principles of discovery, including that the issuing party seek such information from the opposing party first. *Moon*, 232 F.R.D. at 638 (where issuing party failed to show that it attempted to obtain the requested documents from the opposing party first, the court

---

[7] The two decisions cited by Uber at page five of its opposition do not compel a different result. Neither decision involved discovery into a nonparty's confidential information. Although the decision in *American Broadcasting Companies, Inc. v. Aereo, Inc.*, No. CV-12-80300-RMW, 2013 WL 1508894 (N.D. Cal. Apr. 10, 2013), sought discovery from nonparty Google, the discovery related to the defendant (not a third-party), and it was the defendant who asserted confidentiality concerns and moved to quash. Google raised no objection to producing the requested data. The cited decisions are easily (and highly) distinguishable.

denied the subpoena to the nonparty); *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) ("[T]here is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (nonparty subpoena quashed where "[t]here [was] simply no reason to burden non-parties when the documents sought are in possession of the party defendant").

The failure to exhaust party discovery is a problem of Uber's own making; it does not follow that, because Uber is under pressure to comply with expedited discovery, it should be given a pass to serve overly-broad and duplicative requests on parties and nonparties alike and expect amnesty from the requirements of the Federal Rules. To the extent there may be some kernel of relevant documents that Uber's requests legitimately could seek (which Lyft asserts there is not), it was incumbent upon Uber to narrow its requests appropriately. *See Robin Singh Educ. Servs., Inc. v. Excel Test Prep,* No. C-03-5039 JSW(JCS), 2004 WL 2554454, at *1 (N.D. Cal. Nov. 9, 2004) ("Rule 26 does not require the Court to rewrite discovery requests for the parties."). As stated in its opening brief, Lyft strenuously objects to discovery into its confidential collaboration with Waymo being provided by either Lyft or Waymo. But if the Court disagrees and finds that there needs to be some considerably narrowed discovery on the topic, Lyft respectfully submits that this narrow production should come from Waymo in the first instance and not nonparty Lyft.

### III. CONCLUSION

For the foregoing reasons, Lyft respectfully requests that the Court grant its motion for protective order and to quash the Subpoenas.

DATED: June 22, 2017      MUNGER, TOLLES & OLSON LLP
                                                CAROLYN HOECKER LUEDTKE
                                                MARJA-LIISA OVERBECK


By: */s Carolyn Hoecker Luedtke*
     CAROLYN HOECKER LUEDTKE
Attorneys for Non-Party Lyft, Inc.