IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYMO LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC., *et al.*,<br><br>    Defendants.<br>_____/ | No. C 17-00939 WHA<br><br>**ORDER DENYING MOTIONS FOR RELIEF FROM JUDGE CORLEY'S NONDISPOSITIVE PRETRIAL ORDER RE DUE DILIGENCE REPORT** |

**INTRODUCTION**

The magistrate judge overseeing discovery in this action granted plaintiff's motion to compel and ordered production of a due diligence report previously withheld under claims of privilege. Defendants and a non-party move for relief from the order pursuant to Civil Local Rule 72. The motions are **DENIED**.

**STATEMENT**

The due diligence report by forensics firm Stroz Friedberg at the heart of this dispute first came to light during a non-public conference on March 29, when counsel for all defendants — Uber Technologies, Inc., Ottomotto LLC, and Otto Trucking LLC — explained that, before Uber acquired Ottomotto, "some due diligence was done." Counsel revealed that "[a] third party prepared a report based on that due diligence," and that defendants intended to put the report on a privilege log (Dkt. No. 131 at 12:23–13:1). Non-party Anthony Levandowski then moved — unsuccessfully — to prevent defendants from disclosing even the basic information about the due diligence report required for privilege log purposes (Dkt. No. 147).

After the Federal Circuit rejected Levandowski's appeal from this Court's denial of his motion, plaintiff Waymo LLC moved to compel production of the due diligence report (Dkt. No. 321). Per the discovery referral in this action, Magistrate Judge Jacqueline Corley heard and decided Waymo's motion (*see* Dkt. Nos. 237, 350). After full briefing (*see* Dkt. Nos. 369, 379, 445, 474, 524), oral argument (Dkt. No. 516), and in camera review of the due diligence report, Judge Corley issued an order setting forth detailed findings of fact and concluding that (1) the report is not protected by any attorney-client privilege, (2) Uber waived any work-product privilege over the report, and (3) Waymo has a substantial need for parts of the report such that those parts must be produced even if privileged as work product (Dkt. No. 566).[1]

The factual background of this dispute is summarized in detail in Judge Corley's excellent order and need not be recited here. For present purposes, however, it bears repeating that, in connection with Uber's acquisition of Ottomotto, Morrison and Foerster ("MoFo") and O'Melveny and Myers ("OMM") represented Uber and Ottomotto, respectively. Levandowski individually retained John Gardner as his personal attorney in connection with Stroz Friedberg's due diligence investigation against him (*see id.* at 4). Additionally, Stroz Friedberg's investigation of Lior Ron is at issue because Ron also previously worked at Waymo, co-founded Ottomotto with Levandowski, and participated in the alleged "common interest" or "joint defense" arrangement between defendants and Levandowski.

Uber and Ottomotto (collectively, "Uber") moved for relief from Judge Corley's order pursuant to Civil Local Rule 72 (Dkt. No. 575). Otto Trucking, now represented by separate counsel, also filed its own motion for the same relief (Dkt. No. 572), as did Levandowski (Dkt. No. 574). This order follows full briefing, including replies.

**ANALYSIS**

1. **STANDARD OF REVIEW.**

Under FRCP 72, a district judge considering timely objections to a magistrate judge's nondispositive order must defer to the order unless it is "clearly erroneous or contrary to law."

---

[1] This dispute actually concerns both the due diligence report and its exhibits. For brevity's sake, unless otherwise specified, this order refers to both collectively as "the due diligence report."

2

*Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991). "The reviewing court may not simply substitute its judgment for that of the deciding court." *Ibid.* (citing *United States v. BNS Inc.*, 858 F.2d 456, 464 (9th Cir. 1988)). This order does not attempt to retread all the factual findings and legal analysis in Judge Corley's order but merely addresses key points raised in the instant motions for relief.[2]

## 2. ATTORNEY-CLIENT PRIVILEGE.

### A. Legal Framework.

The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed, and the party asserting the privilege bears the burden of proving each essential element. *United States v. Ruehle*, 583 F.3d 600, 607–08 (9th Cir. 2009) (citations and quotations omitted). The privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice. *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). Voluntary disclosure of the contents of a privileged communication waives the privilege as to all other communications on the same subject. *Ibid.* (citing *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)). There is, however, a "common interest" or "joint defense" exception to ordinary waiver principles where two or more parties "make the communication in pursuit of a joint strategy in accordance with some form of agreement." *See, e.g.*, *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) (citing *Cont'l Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964)).

### B. Uber's Objections.

Judge Corley held that Uber has no attorney-client privilege over the contents of the due diligence report (Dkt. No. 566 at 10–11). Uber objects to her order on the basis that the report "reflects information communicated in confidence to an agent of OMM and MoFo, at the

---

[2] The law of our circuit applies to questions of privilege and waiver that do not implicate substantive issues unique to patent law. *See Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP*, 684 F.3d 1364, 1368 (Fed. Cir. 2012); *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1346 (Fed. Cir. 2005); *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1374 (Fed. Cir. 2001).

3

1    direction of OMM and MoFo, for the purpose of obtaining legal advice from OMM and MoFo"
2    (Dkt. No. 575 at 4–5). Uber's objection conspicuously omits who the "client" seeking to obtain
3    legal advice is supposed to be in its attorney-client privilege theory. The "information
4    communicated in confidence" ostensibly refers to interviews given by Levandowski and Ron to
5    Stroz Friedberg during the course of its due diligence investigation. But Judge Corley correctly
6    found that "MoFo and OMM were not Levandowski's attorneys" (Dkt. No. 566 at 10). For
7    example, the engagement letter cited in Uber's motion expressly stated that MoFo and OMM
8    represented Uber and Ottomotto, respectively (*see* Dkt. No. 370-3). And counsel from MoFo
9    declared that the purpose of Stroz Friedberg's investigation "was to aid MoFo and OMM in
10   providing legal advice *to their respective clients*" (Dkt. No. 370 ¶ 9 (emphasis added)).

11   In other words, Uber's theory is not that Levandowski, *as a client of MoFo and OMM*,
12   communicated in confidence to Stroz Friedberg so that *he* could obtain legal advice from MoFo
13   and OMM. Nor is it that the due diligence report reflects any information communicated in
14   confidence to Stroz Friedberg by *Uber or Ottomotto* for the purpose of obtaining legal advice
15   from their attorneys. Instead, Uber's carefully-worded objection suggests the remarkable
16   proposition that information communicated in confidence by *anyone* to Stroz Friedberg for the
17   purpose of enabling *Uber and Ottomotto* to obtain legal advice from MoFo and OMM should be
18   covered by the attorney-client privilege. That suggestion has no basis in the law.

19   Uber further argues that its "common legal interest" and "joint defense privilege" with
20   Ottomotto, Levandowski, and Ron preserved its attorney-client privilege. But "[t]he joint
21   defense and common interest doctrines are not privileges in and of themselves. Rather, they
22   constitute exceptions to the rule on waiver where communications are disclosed to third
23   parties." *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (Judge
24   Edward Chen); *see also Pac. Pictures*, 679 F.3d at 1129 ("Rather than a separate privilege, the
25   'common interest' or 'joint defense' rule is an exception to ordinary waiver rules designed to
26   allow attorneys for different clients pursuing a common legal strategy to communicate with
27   each other."). Uber's argument is thus unresponsive to Judge Corley's decision that it had no
28   attorney-client privilege over the contents of the due diligence report in the first place. Since

4

Uber has not shown that her conclusion is "clearly erroneous or contrary to law," this order need not reach Uber's further argument that it did not waive any attorney-client privilege over the contents of the due diligence report.

### C. Otto Trucking's Objections.

In rejecting Uber's claim of attorney-client privilege over the contents of the due diligence report, Judge Corley relied in part on her finding that "Stroz's interview of Levandowski was performed in Levandowski's individual capacity, and not as an Otto executive" (Dkt. No. 566 at 10). In its motion for relief, Otto Trucking argues for the first time that it has a claim of attorney-client privilege over Levandowski's interview with and disclosures to Stroz Friedberg because OMM represented Otto Trucking, and Stroz Friedberg — acting as OMM's agent — interviewed Levandowski in his capacity as a principal of Otto Trucking (Dkt. No. 572 at 1–2). This argument could have been, but was not, made before Judge Corley in the first instance. This order declines to consider it now.

In its reply brief, Otto Trucking claims it presented this argument to Judge Corley by joining in Uber's opposition to Waymo's motion to compel, which "argued that Stroz's report and exhibits were privileged because they 'reflect information provided in confidence to an agent of counsel, at the direction of counsel, for the purpose of obtaining legal advice from OMM and MoFo'" (Dkt. No. 609 at 1 (quoting Dkt. No. 369 at 5)). This is incorrect. Uber's opposition brief never articulated the theory now asserted by Otto Trucking. Indeed, Uber's opposition brief never even once cited *Upjohn Co. v. United States*, 449 U.S. 383 (1981), which forms the legal foundation for Otto Trucking's theory and which Otto Trucking wrongly accuses Judge Corley of ignoring (*see* Dkt. No. 572 at 1). The specific sentence quoted by Otto Trucking simply echoes Uber's carefully-worded objection, rejected above, which studiously avoids anchoring the purported claim of privilege to any specific explanation about the underlying attorney-client relationship. In short, it is uselessly vague boilerplate. It is wholly unreasonable, and most disappointing, for Otto Trucking to suggest that Judge Corley should have surmised from that single sentence that it was asserting attorney-client privilege under

5

1  *Upjohn* on the basis that Levandowski gave an interview and made disclosures to Stroz
2  Friedberg in his capacity as Otto Trucking's principal.
3        Like Uber, Otto Trucking also argues that defendants, Levandowski, and Ron shared a
4  "common interest" such that none of them waived any privilege by disclosing information to
5  each other (Dkt. No. 572 at 2–5). Again, Judge Corley determined that no attorney-client
6  privilege covered the contents of the due diligence report in the first place. Like Uber, Otto
7  Trucking has not shown that this determination was "clearly erroneous or contrary to law."
8  This order therefore does not reach Otto Trucking's further argument that a "common interest"
9  protected its attorney-client privilege from waiver.

          **D.    Levandowski's Objections.**

11        Judge Corley considered and rejected Levandowski's argument that the attorney-client
12  privilege protects his interview with and disclosures to Stroz Friedberg because of a "common
13  interest in preparing for potential litigation against Waymo." Her order explained, "The
14  common interest/joint defense doctrine does not make a document or communication
15  privileged; rather, it is a doctrine that prevents waiver of a pre-existing privilege if the
16  privileged information is shared only with those with a common legal interest." Thus, "[t]hat
17  Otto, Uber, Levandowski and Ron purportedly shared a common legal interest at the time of
18  Levandowski's communications does not make Levandowski's communications with Uber's
19  attorney's agent an attorney-client privileged communication" (Dkt. No. 566 at 11–13).
20        In his motion, Levandowski describes Judge Corley's order as holding "that the
21  common interest privilege solely protects information that is initially communicated by a party
22  to *his or her own attorney* in an attorney-client privileged manner and only *later* communicated
23  between attorneys engaged in a common interest arrangement" (Dkt. No. 574 at 1). But Judge
24  Corley did not so hold. The portion of her order cited by Levandowski simply observed that
25  Uber and Levandowski had only cited decisions where "the document or communication was
26  protected by the attorney-client privilege before counsel provided it to another party," and that
27  "[t]he circumstances here are different" (Dkt. No. 566 at 12–13). This, in turn, factored into
28  Judge Corley's conclusion that Levandowski had not carried his burden to establish the

6

existence of a valid privilege. Indeed, Judge Corley expressly clarified this exact point in another recent order on a related discovery dispute (*see* Dkt. No. 670 at 2 n.1).

Levandowski's argument is unresponsive to a more basic point. As Judge Corley explained, a common interest or joint defense does not create attorney-client privilege where that privilege otherwise does not exist. *See, e.g.*, *Pac. Pictures*, 679 F.3d at 1129 ("Rather than a separate privilege, the 'common interest' or 'joint defense' rule is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other.") Thus, whether Levandowski gave an interview and made disclosures to Stroz Friedberg directly (within the context of a purported "common interest" or "joint defense" arrangement) or through his own attorney, the bottom line is that the interview and disclosures must still, as an initial matter, qualify for the attorney-client privilege.

As stated, the attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *Ruehle*, 583 F.3d at 607–08. The decisions cited by Levandowski merely confirm that the "common interest" or "joint defense" exception extends the privilege to protect "not only the confidentiality of communications passing from a party to his or her attorney but also from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *See, e.g.*, *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (citations omitted). Put differently, those decisions do not purport to water down the elements of attorney-client privilege, in the "common interest" or "joint defense" context or otherwise. On the contrary, the "common interest" or "joint defense" exception requires both that the elements of attorney-client privilege are met *and* that the communication in question "was made for the 'limited and restricted purpose to assist in asserting . . . common claims.'" *See id.* at 977–78 (discussing *Cont'l Oil*); *see also Pac. Pictures*, 679 F.3d at 1129 ("[A] shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception."); *Ruehle*, 583 F.3d at 608–09 (rejecting the proposition that communications made in the course of an attorney-client relationship are presumed privileged).

7

Significantly, Judge Corley found that "Levandowski was complying with the Term Sheet," which laid out steps for Uber's acquisition of Ottomotto, "rather than seeking OMM's legal advice, when he participated in Stroz's investigation" (Dkt. No. 566 at 8). This finding goes directly to the question of whether, as an initial matter, Levandowski's interview with and disclosures to Stroz even qualify for standard attorney-client privilege. Levandowski objects to Judge Corley's finding, citing his own attorney's declaration for the proposition that he "participated in the investigation in order to evaluate litigation risks and generate litigation strategy" (Dkt. No. 574 at 5 (citing Dkt. No. 381 ¶¶ 3–6, 11)). The cited portions of Attorney Gardner's declaration, however, simply assert that *Attorney Gardner* subjectively believed a "common interest" or "joint defense" exception applied to Stroz Friedberg's investigation, and that he worked with other counsel to prepare for future litigation. The declaration does not support the very different proposition that *Levandowski* gave an interview to Stroz Friedberg for the purpose of seeking legal advice. Even assuming that Judge Corley would have credited the declaration of Levandowski's attorney in this context, that declaration does not show that she clearly erred in finding that Levandowski did not give an interview or make disclosures to Stroz Friedberg for the purpose of seeking legal advice.[3]

In short, because Judge Corley held that Levandowski's interview with and disclosures to Stroz Friedberg did not qualify for attorney-client privilege in the first place, she did not err in further concluding that his interview and disclosures did not become privileged merely by virtue of his participation in a purported "common interest" or "joint defense" arrangement.

**3. WORK-PRODUCT PRIVILEGE.**

**A. Legal Framework.**

The work-product privilege protects from discovery "documents and tangible things prepared by a party or his representative in anticipation of litigation," and "covers documents or the compilation of materials prepared by agents of the attorney in preparation for litigation." *Richey*, 632 F.3d at 567. Where a document was not prepared exclusively for litigation but

---

[3] Judge Corley's factual finding on this point is also fatal to Levandowski's argument, asserted in a footnote to his motion, that "any records provided by [him] to Stroz must likewise be protected from disclosure under the reasoning of *Fisher v. United States*, 425 U.S. 391, 405 (1975)" (Dkt. No. 574 at 3 n.2).

8

serves a "dual purpose," it is protected if, "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." In applying this "because of" standard, courts must consider the totality of the circumstances and determine whether the document "was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *Id.* at 567–68 (citations and quotations omitted). The work-product privilege is qualified and may be waived. *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (quotations and citations omitted). "What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances." *United States v. Nobles*, 422 U.S. 225, 239 n.14 (1975).

### B. Uber's Objections.

Judge Corley found that Uber waived any work-product privilege it may have had over the contents of the due diligence report by disclosing it to then-adversaries Ottomotto, Levandowski, and Ron, and that no "common interest" prevented such waiver (Dkt. No. 566 at 13–22). Uber objects that it did not disclose the due diligence report to an adversary, as required for waiver of work-product privilege, because defendants, Levandowski, and Ron shared a "common interest" in that they all "knew they faced litigation risk from Waymo even prior to the signing of the Put Call Agreement on April 11, 2016," and "irrespective of whether the deal closed" (Dkt. No. 575 at 1–4).

Uber cites *In re Grand Jury Subpoena (Mark Torf/Torf Envt'l Mgmt.)*, 357 F.3d 900 (9th Cir. 2004), for the proposition that "***dual purpose documents*** are protected work product if 'it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation'" (Dkt. No. 575 at 2). The citation is correct as far as it goes, but is inapposite to Uber's argument. *In re Grand Jury Subpoena* discussed "dual purpose" only within the context of explaining what kinds of documents qualify as work product in the first place. *See* 357 F.3d at 907–08. It did not even mention the issue of waiver, let alone the "common interest" or "joint defense"

9

1 exception to waiver. In short, Uber's argument in reliance on *In re Grand Jury Subpoena*
2 misapplies the "dual purpose" work product analysis and is unavailing.

3       Uber also cites non-binding decisions for the proposition that parties on opposite sides
4 of a transaction are not "adversaries" for purposes of work-product privilege waiver. Judge
5 Corley considered and rejected this proposition. For example, she specifically considered
6 Uber's primary reliance on *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D.
7 Cal. 1987) (Judge Wayne Brazil), which held that disclosure of a privileged opinion letter in
8 connection with the attempted sale of a business did not waive attorney-client privilege. Judge
9 Brazil actually observed, with good reason, that *Hewlett-Packard* presented a "close question"
10 on the waiver issue. Although Uber continues to urge that *Hewlett-Packard* is persuasive
11 authority, numerous subsequent decisions have disagreed with its suggestion that "the common
12 interest privilege extends generally to disclosures made in connection with the prospective
13 purchase of a business." *See Nidec*, 249 F.R.D. at 579 (summarizing decisions). Under the
14 facts of our case, Judge Corley found *Hewlett-Packard* both distinguishable and unpersuasive.

15       Uber also criticizes Judge Corley's reliance on *United States v. Bergonzi*, 216 F.R.D.
16 487 (N.D. Cal. 2003) (Judge Martin Jenkins), because "*Bergonzi* does not stand for the
17 proposition that parties to a potential business transaction are adversaries" (Dkt. No. 575 at 4).
18 This criticism attacks a strawman. Judge Corley cited *Bergonzi* for the very different
19 proposition that two parties have adverse rather than common interests where one party is
20 investigating the other and the results of that investigation threaten adverse consequences (*see*
21 Dkt. No. 566 at 21). The comparison is apt here.

22       It also bears repeating that Judge Corley made extensive factual findings in reaching her
23 conclusion that, under the circumstances of our case, defendants, Levandowski, and Ron had
24 adverse rather than common interests in Stroz Friedberg's investigation, and that Uber therefore
25 waived any work-product privilege it may have had over the due diligence report by disclosing
26 the contents of that report to adversaries. Those factual findings, which need not be repeated
27 here, took into account evidence both in the record and in camera and are not clearly erroneous.
28

10

1      Uber contends that, at the very least, any work-product privilege it had over the due
2 diligence report remained intact after the signing of the Put Call Agreement on April 11, 2016
3 (Dkt. No. 575 at 2–3). Uber did not properly raise this argument before Judge Corley in the
4 first instance and cannot now rely on it for the first time to establish work-product privilege
5 over the due diligence report (*see* Dkt. Nos. 566 at 17–18 n.2; 585 at 13 n.12; 670 at 7–8).

### C. Otto Trucking's Objections.

Otto Trucking briefly echoes Uber's arguments that Judge Corley clearly erred in finding a waiver of any work-product privilege that may have covered the due diligence report, and in relying on *Bergonzi* (Dkt. No. 572 at 5). Otto Trucking's arguments on these points also fail for the reasons stated above.

Judge Corley also concluded that, even if the due diligence report constitutes non-waived work product, at least some parts thereof — including Stroz Friedberg's memorandum about its interview of Levandowski — must nevertheless be produced because they constitute ordinary fact work product as opposed to opinion work product (Dkt. No. 566 at 22–23). Otto Trucking makes a bald assertion, styled as an objection, that Judge Corley erred in her conclusion (Dkt. No. 572 at 5). This assertion shows no error and merits no further discussion.

### D. Levandowski's Objections.

Judge Corley held that, "even if Otto and Uber shared a common legal interest notwithstanding the lack of any acquisition agreement," Stroz Friedberg's investigation and communications made therein are not privileged because the investigation was not designed to further the common legal effort (Dkt. No. 566 at 15–21). Again, this conclusion resulted from extensive factual findings, including factual findings based on Judge Corley's in camera review of the due diligence report. Levandowski styles as an objection his various disagreements with Judge Corley's weighing of the evidence in reaching her factual findings (Dkt. No. 574 at 4–5). The objection is unavailing. *See, e.g.*, *United States v. Christensen*, 828 F.3d 763, 779 (9th Cir. 2015) (explaining that clear error review is deferential, and where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous).

11

*First*, Levandowski complains that Judge Corley ignored the "sworn declarations of five attorneys and Stroz's president, each of whom attests that Stroz *was* retained for a litigation purpose." Levandowski is wrong. Judge Corley expressly noted that "[c]ounsel's declarations are . . . not persuasive evidence that Otto and Uber retained Stroz to pursue a common legal strategy," and went on to explain why. For example, she pointed out that "[t]he only objective contemporaneous evidence as to the purpose of the Stroz engagement . . . is omitted from all of the counsel declarations." She therefore decided to "accord[] them little weight" (Dkt. No. 566 at 20). Judge Corley's decision to credit objective evidence in the record over attorney declarations submitted in support of their clients' arguments was not clearly erroneous.

*Second*, Levandowski complains that Judge Corley "disregard[ed] the fact that the attorneys involved in the Stroz investigation efforts and communications were Uber's *litigation* counsel, *not* separate corporate transactional counsel." True, Judge Corley did not explicitly mention this point in her order. Her ultimate conclusion about the purpose of Stroz Friedberg's investigation, however, took into account ample evidence weighing both in favor of and against Levandowski's position. It is well-supported by her factual findings and not clearly erroneous even if her order did not specifically address Levandowski's point about the distinction between Uber's litigation and corporate counsel.

*Third*, Levandowski accuses Judge Corley of incorrectly interpreting the significance of Stroz Friedberg's engagement letter. Levandowski acknowledges, however, that Judge Corley considered the letter and found it unpersuasive for reasons clearly explained in her order. As just one example, Judge Corley found that the engagement letter "was most likely revised on April 11, 2016 and then given the date 'as of March 4, 2016,'" so it is "not evidence of the parties' intent when Stroz began its investigation in early March 2016" (Dkt. No. 566 at 19). Levandowski attempts to gloss over this backdating problem by suggesting that it "merely confirmed an existing oral understanding that was reached no later than March 11, 2016" (Dkt. No. 574 at 4–5). But this argument is nothing more than Levandowski's disagreement with Judge Corley's weighing of the actual evidence. Contrary to Levandowski, Judge Corley's

12

decision to not credit Stroz Friedberg's engagement letter as evidence of the parties' prior intent was not clearly erroneous.

*Fourth*, Judge Corley found probative the fact that, "on March 14 and March 21, Levandowski's counsel told Stroz that Levandowski shared a common legal interest with Otto, but did not also claim to share a common interest with Uber" (Dkt. No. 566 at 17). Judge Corley construed this omission as supportive of her conclusion that no common interest existed between defendants. According to Levandowski, Judge Corley should have instead inferred that "the Stroz work was done in service of a common interest agreement including Levandowski." Again, despite Levandowski's disagreement, Judge Corley's inferences from the evidentiary record are not clearly erroneous.

Levandowski also objects that, by denying his request to file an in camera submission in support of his opposition to Waymo's motion to compel, Judge Corley "deprived [him] of a significant opportunity to support his opposition without waiving his privileges" (Dkt. No. 574 at 5 n.3). Levandowski implies, as he did before Judge Corley, that he is somehow entitled to every "significant opportunity" to support his position, even via in camera submissions that would use his privileges as both sword and shield and be patently unfair to Waymo. Judge Corley's refusal to consider such submissions was neither clearly erroneous nor contrary to law.

Finally, Levandowski requests additional briefing to challenge Judge Corley's order. The request is **DENIED**. Levandowski, a non-party, has already been afforded ample opportunity to brief the issues raised on Waymo's motion. Judge Corley has already allowed him to intervene and be heard. He has filed and briefed his own motion for relief from her order, subject to the same constraints that are applicable to defendants and Waymo. In addition, he has expressly joined both Uber and Otto Trucking's objections to Judge Corley's order (Dkt. No. 607 at 3). He is entitled to nothing more.

## CONCLUSION

For the foregoing reasons, all motions for relief from Judge Corley's order granting Waymo's motion to compel production of Stroz Friedberg's due diligence report are **DENIED**. All stated objections to Judge Corley's order are **OVERRULED**.

13

Judge Corley had stayed her order pending resolution of these motions for relief (Dkt. No. 566 at 24). This order continues that stay until **JUNE 30 AT NOON** to give defendants and Levandowski an opportunity to seek emergency relief from the Federal Circuit. In light of the pressing need for discovery based on the due diligence report to be provided to meet the agreed-upon trial date of October 10, 2017, any further stay must be requested from the Federal Circuit.

On appeal, counsel are urged to be fair and accurate in reciting what was or was not argued before Judge Corley. The due diligence report submitted for Judge Corley's in camera review shall be preserved for the Federal Circuit.

**IT IS SO ORDERED.**

Dated: June 21, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14