UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYMO LLC,<br>         Plaintiff,<br>   v.<br>UBER TECHNOLOGIES, INC., et al.,<br>         Defendants. | Case No. 17-cv-00939-WHA  (JSC)<br><br>**ORDER RE: UBER PRIVILEGE LOG**<br>Re: Dkt. Nos. 634, 637 |

Waymo accuses Uber of misappropriation of Waymo's driverless vehicle trade secrets. The district court ordered Uber to produce all files and documents downloaded by then-Uber employee Anthony Levandowski and others before they left Waymo's employ, as well "all subsequent emails, memoranda, PowerPoints, text messages, or notes that have been forwarded, used, or referred to any part of said downloaded material." (Dkt. No. 61 ¶ 4.)  In response, Uber produced a privilege log with more than 3400 entries.  According to Uber, "[w]here a privileged document 'referred' to Google [Waymo] information (whether actual or potential thereof) or material that one of the three employees may have had in their possession, it was identified on the log." (Dkt. No. 657-3 at 2.)  Since the log was originally produced, it has been amended with some of the originally logged documents produced.  Most recently, in response to this Court's Order directing Uber to produce the Stroz Report (Dkt. No. 566), it has identified log entries that it will have to produce if the Court's Motion to Compel Order ("MTC Order") becomes final. Waymo contends that the remaining logged documents should be ordered produced as well.  As explained at oral argument, the Court declines to order additional production of the logged documents.  This Order briefly summarizes the Court's reasoning, and incorporates its two previous orders on privilege issues. (Dkt. Nos. 566, 670.)

**A. MoFo/Uber Communications**

Over 1000 of the logged entries involve communications between Uber and its attorneys at MoFo and/ Cooley and no one else. Waymo does not dispute that these communications are as an initial matter protected by the attorney-client and attorney work-product privileges; instead, it argues that the crime-fraud exception to the privileges requires their production.

**1.     The Crime/Fraud Exception does not Apply**

A party seeking disclosure of attorney-client communications or attorney work product under the crime-fraud exception must show by a "preponderance of the evidence" that a two-part test is satisfied. First, that the "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel." Second, the attorney-client communications for which production is sought are "sufficiently related to" and were made "in furtherance of [the] intended, or present, continuing illegality." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007) (emphasis in original), abrogated on other grounds by *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).

Waymo contends (1) Uber was engaged in or planning the crime of receipt of Waymo's stolen property; and (2) that its communications with MoFo were in furtherance of that scheme. It cites the evidence that Levandowski took 14,000 of Waymo's files and that Uber knew that Levandowski took some material as evidence that satisfies its burden. The Court is not persuaded. That Uber knew Levandowski took some of Waymo's files is not a showing by a preponderance of the evidence that Uber retained MoFo in January/February 2016 to assist it with the crime of receiving stolen property. Further, based on the Court's review of the entire record in this case, including the *in camera* Stroz Report, the Court found that Uber retained MoFo to conduct an investigation into Levandowski and Otto and to create an evidentiary record that would govern Uber's obligation to indemnify Levandowski and Otto in any lawsuit brought by Waymo. The Court does not find that Uber retained MoFo to assist with obtaining Waymo's trade secrets. That in the course of that investigation MoFo received documents that may be Waymo's trade secrets, does not mean that Waymo has shown by a preponderance of the evidence that Uber's and MoFo's communications were made in furtherance of a criminal scheme. Evidence developed

later may show otherwise, but that is the state of the record at this time. Further, Waymo has not established that the crime/fraud exception applies to an attorney's purported violation of an ethical rule.

Waymo's request for expedited crime/fraud discovery is denied. The Court notes that Waymo did not seek to satisfy the lower standard for *in camera* review of the documents. *See Roe v. White*, 2014 WL 842790 *3 (N.D. Cal. Feb. 28, 2014).

### 2. Fact Work Product

As previously held, in light of Levandowski's refusal to answer questions or produce documents on the basis of his Fifth Amendment privilege, Waymo has demonstrated a substantial need for fact work product reciting Levandowski's statements or attaching documents/materials found on Levandowski's devices or that Levandowski otherwise provided Stroz. (Dkt. No. 566 at 22-23.) To the extent any such work product is attached to a communication shared only among Uber/MoFo/Cooley, that work product must be produced. For example, if an email attaches material that Levandowski provided Stroz, the attached material must be produced. Doing so will not reveal opinion work product as any email or discussion of the material or even the context of the communication will not be disclosed: the only disclosure is the material found on Levandowski's devices or otherwise provided by Uber. Uber does not have to produce this fact work product unless and until the MTC Order becomes final. In the meantime, however, the privilege log must be amended to reflect any such possible fact work product consistent with the Court's MTC Order. So long as it is arguably fact work product, the privilege log must reflect this possibility. The log must be amended to reflect this fact work product attached to or part of an Uber/MoFo or Cooley communication by **June 30, 2017.**

### B. Post Put Call Agreement Log Entries

The Court's MTC Order found that Uber had waived any attorney work-product protection for documents shared with Otto, Levandowski or Ron, at least before the Put Call Agreement was signed. (Dkt. No. 566 at 17 n.2, 21.) Waymo argues that Uber also waived the attorney-client privilege and work-product privilege for documents shared after the Put Call Agreement was signed but before Uber's acquisition of Otto closed on August 23, 2016. The Court disagrees.

3

Once Uber and Otto signed the Put Call Agreement, Uber was no longer investigating Otto and its employees to determine whether to enter into the Agreement; rather, upon execution of the Agreement Uber was required to indemnify Levandowski, Ron and Otto even if neither Uber nor Otto ever exercised its option to buy/sell. Sharing confidential information with a party one is required to indemnify is not inconsistent with the adversary system, provided the information concerns the subject matter of the indemnification right as it does here. *See Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1092 (N.D. Cal. 2009) (holding that waiver of attorney work-product requires disclosure of confidential information in a manner that is inconsistent with the adversary system).

Waymo insists that following the signing of the Put Call Agreement Otto, Levandowski and Ron still did not share a "common interest." Such an argument, however, is relevant to waiver of attorney-client privileged material, not attorney work-product. *See id.* In any event, to the extent any post Put Call Agreement log entries contain only attorney-client privileged information, and not also attorney work-product, the common interest doctrine applies. At the time Otto and Uber executed the Put Call Agreement, Otto, Uber, Levandowski, Ron and Otto Trucking executed the "Joint Defense, Common Interest and Confidentiality Agreement." (Dkt. No. 266 at 5.) With the indemnification obligation, they all shared a joint common legal interest in defending claims brought by Waymo for misappropriation of trade secrets, among other things. As the Court previously found, until this indemnification obligation arose, and until Uber and Otto had exclusive options to make the acquisition happen, they did not share a common legal interest. (Dkt. No. 566 at 14-21.) But once the indemnification obligation arose, they shared a common legal interest in defending claims brought by Waymo. Waymo's arguments to the contrary are not persuasive.

### C. Privilege Log Entry Issues

As the Court noted at oral argument, there is ambiguity as to some of the documents Uber has logged as only being shared among Uber and MoFo. For example, entry 59 is a questionnaire regarding information obtained by Levandowski that is logged as only having been shared among MoFo and Uber and thus is identified as "privileged," even if the Court's MTC Order becomes

4

final. Entry 107 is the same questionnaire, again identified as shared only among MoFo and Uber, but this time is marked as "Produce-in-Part." Uber explains that this version of the questionnaire was subsequently circulated to the "joint defense team" and thus if the Court's MTC Order is affirmed, will have to be produced in full. (Dkt. No. 659 ¶ 17.) At oral argument, however, Uber was unable to explain why entry 107 did not reflect that it had been shared with the joint defense team. It also did not explain why the log says "produce-in-part" but its declaration to this Court says it will be produced in full.

Further, for many of the entries for whom the authors, senders and recipients are all MoFo/Uber the log reflects that the document is being withheld pursuant to attorney-client, attorney work-product, and confidential interest privileges. As the confidential interest privilege is a non-waiver doctrine that applies when a document is shared with a third party, designating the document as "confidential interest" does not make sense. At oral argument Uber explained that it so designated a document if another version of the document had been shared with the joint defense group and that such version would be produced. This explanation still does not makes sense.

Uber must again review and amend the log. The first step is to carefully review every entry through April 11, 2016. If a document was shared with anyone from the joint defense group, and thus discoverable under the Court's MTC Order, the log entry must reflect with whom the document was shared and identify it as a document to be produced. Further, if a document was not shared among the joint defense group, then it should not be designated as "confidential information" and the log must be so amended. Further, Uber's log must explain why it is noting a document as "produce in part" rather than "produce in full." Uber's amended log must be produced to Waymo **by June 30, 2017**. To the extent Waymo has questions regarding the amended log, the parties shall attempt to resolve the issues among themselves and, failing that, with the benefit of the Special Master. Uber must produce the compelled documents if and as soon as the District Court's Order (Dkt. No. 685) is no longer stayed. This means any issues regarding whether a document will be produced in full or in part, whatever that means, must be resolved in advance, to the extent possible.

While the above discussion shows there are deficiencies with the current log, the Court does not find them so egregious that Uber should have to produce otherwise protected material, especially given the volume of log entries and the brief period Uber had to reevaluate the privilege log in light of the MTC Order.

### D. Documents Required for *In Camera* Review

As stated at oral argument, Uber shall produce to Judge Alsup for his *in camera* review any Stroz protocols other than the one previously produced. This production shall occur by **Wednesday, June 28, 2017**.

Also, at oral argument Uber represented that the Put Call Agreement was signed late in the day on April 11, 2016. Yet some of the April 11, 2016 entries are designated as "privileged" following the Court's MTC Order even when they show on their face that they were shared with Levandowski or Ron. *See, e.g.,* No. 1102, 1103, 1106. Accordingly, Uber is directed to provide to the Court for *in camera* review all of the documents logged on April 11, 2016 that were shared with or authored by a party other than Uber/MoFo/Cooley. Before it provides the documents, it should review all of the entries to determine if they correctly identify with whom the document was shared in light of the concern as to entry No. 107 discussed above. These documents must be provided to the Court for *in camera* review by **June 28, 2017** so the Court can confirm whether they have been properly designated**.**

Any objections to this Order shall be filed with the District Court on or before **June 29, 2017.** This Order disposes of docket nos. 634 and 637.

**IT IS SO ORDERED.**

Dated: June 26, 2017

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge