# EXHIBIT 6

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Charles K. Verhoeven (Cal. Bar No. 170151)
2   charlesverhoeven@quinnemanuel.com
    David Perlson (Cal. Bar No. 209502)
3   davidperlson@quinnemanuel.com
    Melissa J. Baily (Cal. Bar No. 237649)
4   melissabaily@quinnemanuel.com
    John Neukom (Cal. Bar No. 275887)
5   johnneukom@quinnemanuel.com
    Jordan R. Jaffe (Cal. Bar No. 254886)
6   jordanjaffe@quinnemanuel.com
    50 California Street, 22nd Floor
7   San Francisco, California  94111-4788
    (415) 875-6600
8   (415) 875-6700 facsimile

9   Attorneys for Plaintiff WAYMO LLC

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13

14   WAYMO LLC                          Case No. 17-cv-00939-JCS

15           Plaintiffs,                **PLAINTIFF'S OBJECTIONS AND
                                        RESPONSES TO UBER'S FIRST SET OF
16        v.                            INTERROGATORIES (NOS. 1-11)**

17   UBER TECHNOLOGIES, INC.;
     OTTOMOTTO, LLC; OTTO TRUCKING
18   LLC,

19           Defendants.

20

21

22

23

24

25

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Waymo LLC ("Waymo") hereby objects and responds to Defendant Uber Technologies, Inc.'s ("Uber") First Set of Interrogatories (Nos. 1-11). These objections and responses are made based on its current understanding and on information reasonably available to Waymo at the present time. Waymo reserves the right to supplement these responses if and when additional information becomes available.

## GENERAL OBJECTIONS

Waymo makes the following General Objections, whether or not separately set forth in response, to each and every instruction, definition, and question posed in the interrogatories. By responding to any of the interrogatories or failing to specifically refer to or specify any particular General Objection in response to a particular interrogatory, Waymo does not waive any of these General Objections, or admit or concede the appropriateness of any purported interrogatory or any assumptions contained therein.

1. Waymo objects to each interrogatory, and to the Definitions and Instructions, to the extent that they purport to impose any obligations upon Waymo beyond the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, and the Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup.

2. Waymo objects to the definitions of "Waymo," "Plaintiff," "You," and "Your" on the grounds the definitions are overbroad, unduly burdensome, and vague, including, but not limited to, the extent that they include Alphabet Inc. or any Waymo subsidiary, subcontractor, partnership, joint venture, or other business cooperation involving Waymo LLC, Google Inc., and/or Alphabet Inc., the present and former officers, directors, employees, agents, representatives, accountants, financial advisors, consultants, and attorneys or other persons owned or controlled by Waymo LLC, Google Inc., and/or Alphabet Inc., regardless of their affiliation or employment.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1      3.      Waymo objects to the definition of "Side Business" as overly broad, unduly

2  burdensome, vague and ambiguous, to the extent that the definition includes personal side

3  project(s) or business(es).

4      4.      Waymo objects to each interrogatory to the extent that they seek information

5  protected by the attorney-client privilege or the work product doctrine or that is otherwise

6  privileged or protected from discovery.

7      5.      Waymo objects to each interrogatory to the extent that they seek information that is

8  not relevant to a claim or defense of any party or to the subject matter of this action and is not

9  proportional to the needs of the case, considering the importance of the issues at stake in the

10  action, the amount in controversy, the parties' relative access to relevant information, the parties'

11  resources, the importance of the discovery in resolving the issues, and whether the burden or

12  expense of the proposed discovery outweighs its likely benefit.

13      6.      Waymo objects to each interrogatory to the extent that they are compound,

14  complex, and contain multiple subparts.

15      7.      Waymo objects to each interrogatory to the extent that they are overbroad, unduly

16  burdensome, vague, and/or ambiguous.

17      8.      Waymo objects to each interrogatory to the extent that they seek information that

18  does not already exist, or that is not in Waymo's possession, custody, or control.

19      9.      Waymo objects to each interrogatory to the extent that they require Waymo to

20  provide information beyond what is available to Waymo at present from a reasonable search of its

21  own files likely to contain relevant or responsive documents and from a reasonable inquiry of its

22  present employees.

23      10.     Waymo objects to each interrogatory to the extent that they seek confidential or

24  proprietary information, including without limitation, confidential business information,

25  proprietary and/or competitively sensitive information, or trade secrets.  Subject to its other

26  General Objections, and to any specific objections set forth below, Waymo will only provide

27  relevant information in a manner consistent with the Protective Order entered by the Court in this

28  matter.

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

11.     Waymo objects to each interrogatory to the extent that they seek information that Waymo is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

12.     Waymo objects to each interrogatory to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to the patents-in-suit, and therefore burdensome, oppressive, overly broad, and not proportional to the needs of the case.

13.     Waymo objects to each and every interrogatory to the extent that they call for a legal conclusion.

14.     Waymo objects to each and every interrogatory to the extent that they call for responses that are the subject of expert testimony.  Waymo will provide its expert reports pursuant to deadlines to be set by the Court for the exchange of such reports and will supplement or amend those reports as appropriate and as permitted by the Court.

15.     Waymo objects to each and every interrogatory to the extent that they call for information that is publicly available and therefore as accessible to Defendants as to Waymo.

16.     Waymo objects to these interrogatories to the extent that they are premature. Discovery is ongoing and Waymo has not yet completed its investigation of the matters at issue in this action.  Waymo reserves the right to modify, supplement, change or amend its responses once Waymo has conducted the necessary discovery and investigation.

17.     Waymo objects to Instruction No. 5 as overbroad, unduly burdensome, vague, and ambiguous to the extent that it refers to "Provision 1(d) of the Default Standard for Discovery in this judicial district."

18.     Waymo responds to each and every interrogatory based on its knowledge, information and belief based on its investigation as of the date of the response; however, Waymo's investigation into the issues of this action remains ongoing.  Waymo reserves the right to supplement or amend its responses without prejudice pursuant to Rule 26(e).

19.     Waymo's responses are not to be construed as an admission that any of the requested information exists, that any information is admissible, relevant or proportional to the

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1 needs of the case, or that any contention or assumption contained in the interrogatories, whether

2 implicit or explicit, is correct.

3       20.     Waymo incorporates by reference its General Objections in each of the specific

4 responses set forth below.

5

6 **<u>STATEMENT ON SUPPLEMENTATION</u>**

7       Waymo's investigation in this action is ongoing, and Waymo reserves the right to rely on

8 and introduce information in addition to any information provided herein at the trial of this matter

9 or in other related proceedings.  Waymo anticipates that facts it learns later in the litigation may be

10 responsive to one or more of these interrogatories and Waymo reserves its right to supplement its

11 responses at appropriate points throughout this litigation without prejudice and/or to otherwise

12 make available to Defendants such information.  Waymo also reserves the right to change, modify

13 or enlarge the following responses based on additional information, further analysis, and/or in

14 light of events in the litigation such as rulings by the Court.  Waymo reserves the right to rely on

15 or otherwise use any such amended response for future discovery, trial or otherwise.  Unless

16 specifically stated otherwise in the individual responses to these interrogatories, Waymo's

17 statement on supplementation applies to all interrogatories.

18       Waymo's reservation of rights on supplementation is particularly warranted in light of

19 Defendants' "relentless concealment of likely probative evidence, both documentary and

20 testimonial, from Waymo's view."  Preliminary Injunction Order, Dkt. 433 at 8.  As illustrative

21 examples, Defendants' concealment of evidence by asserting a web of inapplicable privileges with

22 respect to the Stroz Friedberg due diligence investigation has hindered Waymo's efforts to

23 discover relevant evidence.  *See* Motion to Compel Order, Dkt. 549.  As another example,

24 Defendants' continued assertion of a web of inapplicable privileges to withhold 3,500 documents

25 related to Uber's acquisition of Ottomotto continues to hinder Waymo's efforts to discover

26 relevant evidence.  Misleading arguments Defendants made to the Court leading the Court and

27 Waymo to believe that Fuji was the only LiDAR system being developed in-house by Defendants

28 have similarly hindered Waymo's efforts.  *See* Apr. 12, 2017 Hr'g Tr. 87:12-88:3.  As a final

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

illustrative example, Waymo's efforts to discover relevant evidence were thwarted by evasive testimony from Defendants' employees Gaetan Pennecot (Pennecot Dep. 62:3-13, 69:14-15) and Daniel Gruver (Gruver Dep. 45:13-46:19) suggesting that ███████████████████ ███████████████, which was later contradicted by testimony provided by James Haslim in his court-ordered deposition (Haslim May 4 Dep. 50:14-51:9), as well as by misleading testimony from Gruver (Gruver Dep. 51:4-15) suggesting that █████████████████████████████, which was later contradicted in Haslim's court-ordered deposition (Haslim May 4 Dep. 165:1-11).

**SPECIFIC OBJECTIONS AND RESPONSES**

Waymo expressly incorporates the above objections as though set forth fully in response to each of the following individual interrogatories, and, to the extent that they are not raised in the particular response, Waymo does not waive those objections.

**INTERROGATORY NO. 1:**

Identify each alleged Waymo trade secret from "Plaintiff's List of Asserted Trade Secrets Pursuant to Cal. Code Civ. Proc. Section 2019.210," served on March 10, 2017, that You contend is used by Uber, and identify all facts and Documents (by Bates number) that you believe support Your contention.

**RESPONSE TO INTERROGATORY NO. 1:**

Waymo incorporates by reference its General Objections.  Waymo further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive, including to the extent that it asks Waymo to respond separately for each alleged Waymo trade secret.  Waymo further objects to this request to the extent it is compound, complex, and contains multiple subparts.  Waymo further objects to this interrogatory as premature to the extent it calls for information that is subject to expert testimony.  Waymo will provide expert testimony in accordance with the Court's procedural schedule.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    Subject to and without waiving the foregoing General and Specific Objections, Waymo

2  responds as follows:

3    The head of Defendants' self-driving car program, Anthony Levandowski took from

4  Waymo over 14,000 design files containing Waymo's proprietary information, as well as other

5  proprietary documents describing Waymo's confidential trade secrets.  *See* Declaration of Gary

6  Brown ("Brown Decl."); Deposition Transcript of Anthony Levandowski ("Levandowski Dep.")

7  at 20:9-24, 100:9-101:15, 115:3-16.  The stolen files describe and contain certain of Waymo's

8  asserted trade secrets including Trade Secret Nos. 1-8, 14-17, 19, 20, 38, 39, 42, 43, 46, 48, 49, 62,

9  63, and 75-109 from Waymo's List of Asserted Trade Secrets.  *See* Dkt. No. 25-7.  Mr.

10  Levandowski, on behalf of Uber and in coordination with other Uber employees, including former

11  Waymo employees, used these files to design and build LIDAR designs and systems that include

12  information contained in and derived from Waymo's trade secrets.  *See* Levandowski Dep. at

13  20:9-24, 100:9-101:15, 115:3-16; *see also* Uber's Response to Court Ordered Interrogatory No. 1,

14  Dkt. No. 265-1.  They also used know-how contained in and derived from Waymo's trade secrets

15  to determine risks and benefits associated with various LiDAR designs and systems, including

16  Trade Secret Nos. 110-121.  *See id*.  Further evidence of Uber's use of Waymo's asserted trade

17  secrets is provided below:

18    **Trade Secret Nos. 1 and 4**

19    Uber does not dispute that it uses Trade Secret Nos. 1 and 4.  Uber uses Trade Secret No. 1

20  at least because ███████████████████████████████████

21  ████████████████████████████████████████████

22  ██████████████████████████████████. Uber uses

23  Trade Secret No. 4 at least because ████████████████████████

24  ████ ████ ████ ████ ██ ████ ██ ████ ████ ████

25  ████████████████████████████████████████████

26  ████████████  ████████████████████████████████

27  ████████████████████████████████████████████

28  ████████████████████████████████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**Trade Secret Nos. 2, 3, and 6**

Uber uses Trade Secret No. 2 at least because the Fuji device includes or is derived from a

or a derivative thereof.  Uber uses Trade Secret No. 3 at least because the Fuji device includes or is derived from a

or a derivative thereof.  Uber uses Trade Secret No. 6 at least because the Fuji device includes or is derived from a

or a derivative thereof:

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1 ████████████████████████████████████████████████████

2 ████████████████████

### Trade Secret No. 5

Uber uses Trade Secret No. 5 at least because the Fuji device includes ████████

████████████████████████████████████

████████████████████████████████████████████████████

██ ████ ████ █ ██ ███ ███ ████ ████████

████████ ███ ████ █████ ████ ██ ███ ████ █████

████████████████████████████████████

### Trade Secret No. 7

Uber does not deny that it uses Trade Secret No. 7.  Uber uses Trade Secret No. 7 at least because the Fuji device includes a ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

### Trade Secret No. 8

Uber does not dispute that it uses Trade Secret No. 8.  Uber uses Trade Secret No. 8 at least because the Fuji device ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████,

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1 ██████████████████████████████████████████

2 ████████████████████████████████████████

3 **Trade Secret Nos. 9 and 10**

4     Uber uses Trade Secret No. 9 at least because the Fuji device includes ████████

5 ██████████████████████████████████████████

6 ██████████████████████████████████████████

7 ██████████████████████████████████████████

8 ██████████████████████████████████████████

9 ████████████████ Uber uses Trade Secret No. 10 at least because the Fuji device ████

10 ██████████████████████████████████████████

11 ██████████████████████████████████████████

12 ██████████████████████████████████████████

13 ██████████████████████████████████████████

14 ████ ████ ████ █ ███ ████ ████ ███ ███ ███ ████

15 ██████████████████████████████████████████

16 ███ ████ ████ █████ █████ █████ ████ █████

17 ██████████████████████████████████████████

18 ██████████████████████████████████████████

19 ██████ ████ ████ ████ ████ █ ███ ███ ████ ████

20 ██████████████████████████████████████████

21 ██████

22 **Trade Secret No. 13**

23     Uber does not dispute that it uses Trade Secret No. 13.  Uber uses Trade Secret No. 13 at

24 least because the Fuji device ██████████████████████████

25 ██████████████████████████████████████████

26 ██████████████████████████████████████████

27 ██████████████████████████████████████████

28 ██████████████████████████████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**Trade Secret No. 14**

Uber uses Trade Secret No. 14 at least because the Fuji device implements a ███████

**Trade Secret No. 19**

Uber does not dispute that it uses Trade Secret No. 19.  Uber uses Trade Secret No. 19 at least because the Fuji device ██████████

**Trade Secret Nos. 48 and 90**

Uber uses Trade Secret No. 48 at least because the Spider device ██████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**Trade Secret Nos. 94-99**

Uber uses Trade Secret Nos. 94-99 at least because the Fuji device includes ███████

Discovery is ongoing and Waymo reserves the right to supplement this response after further discovery and investigation into Uber's use of Waymo's trade secrets.

**INTERROGATORY NO. 2:**

Separately for each alleged Waymo trade secret identified in response to Interrogatory No. 1, identify each Person who you claim has knowledge that Uber has used that trade secret, and your basis for asserting that that person has knowledge of use of that specific trade secret.

**RESPONSE TO INTERROGATORY NO. 2:**

Waymo incorporates by reference its General Objections. Waymo further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive, including to the extent that it asks Waymo to respond separately for each alleged Waymo trade secret. Waymo further objects to this request to the extent it is compound, complex, and contains multiple subparts.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    Subject to and without waiving the foregoing General and Specific Objections, Waymo

2  responds as follows:  Waymo identifies the individuals in the documents and deposition testimony

3  cited in Waymo's response to Interrogatory No. 1.   Waymo further identifies all individuals

4  identified by Defendants in response to Court Ordered Interrogatory No. 2.  Waymo prospectively

5  identifies those individuals to be identified by Uber in its required accounting pursuant to the

6  Court's preliminary injunction order.   Waymo identifies these individuals based on their

7  conversations with Mr. Levandowski who has possessed and/or still does possess Waymo's

8  confidential documents as described in Waymo's response to Interrogatory No. 1, Waymo's Trade

9  Secret List, and the Court's preliminary injunction order.

10    Waymo additionally identifies the following individuals who have knowledge that Uber

11  has used that trade secrets identified in response to Interrogatory No. 1, along with Waymo's basis

12  for asserting each individual has such knowledge:

13    Anthony Levandowski:   Mr. Levandowski stole more than 14,000 design files from

14  Waymo's SVN repository, including design files that describe each of Waymo's trade secrets

15  identified in response to Interrogatory No. 1.  Mr. Levandowski is a former Waymo employee and

16  is knowledgeable about Waymo's development and use of these trade secrets.  Mr. Levandowski

17  was involved in the design of Defendants' Fuji and Spider devices, including the specific features

18  of those devices that use each of Waymo's trade secrets identified in response to Interrogatory No.

19  1, and therefore has knowledge of Defendants' use of each of those trade secrets.

20    Gaetan Pennecot:  Mr. Pennecot is a former Waymo employee and is knowledgeable about

21  Waymo's development and use of Waymo's trade secrets identified in response to Interrogatory

22  No. 1.  Mr. Pennecot was involved in the design of Defendants' Fuji and Spider devices, including

23  the specific features of those devices that use each of Waymo's trade secrets identified in response

24  to Interrogatory No. 1, and therefore has knowledge of Defendants' use of each of those trade

25  secrets.  Mr. Pennecot also retained on Uber's servers specifications and data concerning his prior

26  work at 510 Systems (acquired by Google).  Mr. Pennecot similarly retained in his possession

27  until June 13, 2017, Google proprietary hardware, lenses, and unknown data and documents

28  (currently encrypted).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1      Daniel Gruver:  Mr. Gruver is a former Waymo employee and is knowledgeable about

2  Waymo's development and use of Waymo's trade secrets identified in response to Interrogatory

3  No. 1.  Mr. Gruver was involved in the design of Defendants' Fuji and Spider devices, including

4  the specific features of those devices that use each of Waymo's trade secrets identified in response

5  to Interrogatory No. 1.

6      James Haslim:  Mr. Haslim was involved in the design of Defendants' Fuji and Spider

7  devices, including the specific features of those devices that use each of Waymo's trade secrets

8  identified in response to Interrogatory No. 1.

9      Scott Boehmke:  Mr. Boehmke was involved in the design of Defendants' Fuji and Spider

10  devices, including the specific features of those devices that use each of Waymo's trade secrets

11  identified in response to Interrogatory No. 1.

12      Lior Ron:  Mr. Ron is a former Waymo employee and is knowledgeable about Waymo's

13  development and use of each of the trade secrets identified in response to Interrogatory No. 1.

14  Upon information and belief, Mr. Ron is knowledgeable about the design files that Mr.

15  Levandowski stole from Waymo's SVN repository, including design files that describe each of

16  Waymo's trade secrets identified in response to Interrogatory No. 1.  Upon information and belief,

17  Mr. Ron is knowledgeable about Defendants' Fuji and Spider devices, including the specific

18  features of those devices that use each of Waymo's trade secrets identified in response to

19  Interrogatory No. 1.

20      Colin Sebern:  Mr. Sebern is a former Waymo employee and is knowledgeable about

21  Waymo's development and use of each of the trade secrets identified in response to Interrogatory

22  No. 1.  Upon information and belief, Mr. Sebern is knowledgeable about the design files that Mr.

23  Levandowski stole from Waymo's SVN repository, including design files that describe each of

24  Waymo's trade secrets identified in response to Interrogatory No. 1.  Upon information and belief,

25  Mr. Sebern is knowledgeable about Defendants' Fuji and Spider devices, including the specific

26  features of those devices that use each of Waymo's trade secrets identified in response to

27  Interrogatory No. 1.

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   Don Burnette:  Mr. Burnette is a former Waymo employee and is knowledgeable about
2   Waymo's development and use each of the trade secrets identified in response to Interrogatory No.
3   1.  Upon information and belief, Mr. Burnette is knowledgeable about the design files that Mr.
4   Levandowski stole from Waymo's SVN repository, including design files that describe each of
5   Waymo's trade secrets identified in response to Interrogatory No. 1.  Upon information and belief,
6   Mr. Burnette is knowledgeable about Defendants' Fuji and Spider devices, including the specific
7   features of those devices that use each of Waymo's trade secrets identified in response to
8   Interrogatory No. 1.

9   Soren Juelsgaard:  Mr. Juelsgaard is a former Waymo employee and is knowledgeable
10  about Waymo's development and use of each of the trade secrets identified in response to
11  Interrogatory No. 1.  Upon information and belief, Mr. Juelsgaard is knowledgeable about the
12  design files that Mr. Levandowski stole from Waymo's SVN repository, including design files that
13  describe each of Waymo's trade secrets identified in response to Interrogatory No. 1.  Upon
14  information and belief, Mr. Juelsgaard is knowledgeable about Defendants' Fuji and Spider
15  devices, including the specific features of those devices that use each of Waymo's trade secrets
16  identified in response to Interrogatory No. 1.

17  Claire Delauney:  Ms. Delauney is a former Waymo employee and is knowledgeable about
18  Waymo's development and use of each of the trade secrets identified in response to Interrogatory
19  No. 1.  Upon information and belief, Ms. Delauney is knowledgeable about the design files that
20  Mr. Levandowski stole from Waymo's SVN repository, including design files that describe each
21  of Waymo's trade secrets identified in response to Interrogatory No. 1.  Upon information and
22  belief, Ms. Delauney is knowledgeable about Defendants' Fuji and Spider devices, including the
23  specific features of those devices that use each of Waymo's trade secrets identified in response to
24  Interrogatory No. 1.

25  Max Levandowski: Upon information and belief, Max Levandowski is knowledgeable
26  about the design files that Anthony Levandowski stole from Waymo's SVN repository, including
27  design files that describe each of Waymo's trade secrets identified in response to Interrogatory No.
28  1.  Upon information and belief, Max Levandowski is knowledgeable about Defendants' Fuji and

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   Spider devices, including the specific features of those devices that use each of Waymo's trade

2   secrets identified in response to Interrogatory No. 1.

3   Brian McClendon:  Mr. McClendon is a former Google employee and is knowledgeable

4   about Waymo's development and use of each of the trade secrets identified in response to

5   Interrogatory No. 1.  Upon information and belief, Mr. McClendon is knowledgeable about the

6   design files that Mr. Levandowski stole from Waymo's SVN repository, including design files that

7   describe each of Waymo's trade secrets identified in response to Interrogatory No. 1.  Upon

8   information and belief, Mr. McClendon is knowledgeable about Defendants' Fuji and Spider

9   devices, including the specific features of those devices that use each of Waymo's trade secrets

10  identified in response to Interrogatory No. 1.

11  Individuals from Stroz Friedberg:  Upon information and belief, individuals from Stroz

12  Friedberg are knowledgeable about files that Mr. Levandowski and other former Google/Waymo

13  employees took from Waymo, including design files that describe each of Waymo's trade secrets

14  identified in response to Interrogatory No. 1.

15  Individuals from Defendants' Law Firms:  Upon information and belief, individuals and

16  law firms representing defendants and Mr. Levandowski are knowledgeable about files that Mr.

17  Levandowski and other former Google/Waymo employees took from Waymo, including design

18  files that describe each of Waymo's trade secrets identified in response to Interrogatory No. 1.

19  Discovery is ongoing and Waymo reserves the right to supplement this response after

20  further discovery and investigation into individuals knowledgeable about Uber's use of Waymo's

21  trade secrets.

22

23  **INTERROGATORY NO. 3:**

24  Separately for each alleged Waymo trade secret identified in response to Interrogatory No.

25  1, state why you believe it has independent economic value from not being generally known.

26

27

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**RESPONSE TO INTERROGATORY NO. 3:**

Waymo incorporates by reference its General Objections.  Waymo further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive, including to the extent that it asks Waymo to respond "[s]eparately for each alleged Waymo trade secret." Waymo further objects to this request to the extent it is compound, complex, and contains multiple subparts.  Waymo further objects to this interrogatory as premature to the extent it calls for information that is subject to expert testimony.  Waymo will provide expert testimony in accordance with the Court's procedural schedule.

Subject to and without waiving the foregoing General and Specific Objections, Waymo responds as follows:  Waymo hereby incorporates by reference its identification of asserted trade secrets.  Waymo further responds:

Waymo's trade secrets derive independent economic value from not being generally known, thereby enabling Waymo's position at the forefront of the effort to bring fully self-driving cars to market.  In particular, Waymo was the first major U.S. technology firm to dedicate significant resources to the development of self-driving car technology, which promises to make transportation safer, cleaner, more efficient, and more widely available.  Waymo developed its own unique, proprietary technology tailored to fully autonomous vehicles.  Among others, Waymo designed its own LiDAR systems to enable a self-driving vehicle to "see" its surroundings and thus detect traffic, pedestrians, and other obstacles that a vehicle must be able to see in order to drive safely.  This technology was pivotal in Waymo achieving the world's first — and only — truly driverless trip on public roads in 2015.  Waymo's early, sustained investment in self-driving car technology has made it a leader not only in performance and safety but also in cost-reduction, a critical element for commercialization.  *See, e.g.*, Declaration of Pierre-Yves Droz ("Droz Decl.") ¶ 38.

With respect to LiDAR specifically, Waymo has invested millions of dollars and thousands of engineering hours to develop its own proprietary LiDAR systems that are high-performing and low-cost — *i.e.*, tailored to advance the commercialization of autonomous vehicles.  Waymo's early efforts to develop its mid-range LiDAR systems were directed at selecting a fundamental

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

architecture that could provide the right balance among a variety of priorities: high resolution, compact and durable design, simple software, easy manufacture, and overall robustness. *Id.* ¶¶ 10-12.  The Waymo team spent years working on a variety of possibilities that proved to be dead ends. *See, e.g.*, *id.* ¶¶ 10-11.  Waymo's experience with these "dead-end" designs helped lead Waymo to the architecture now at the heart of its current LiDAR systems. *Id.* ¶ 12.

Waymo's current-generation LiDAR technology, known internally as GBr3, incorporates innovations that optimize the balance among resolution, durability, size, simplicity, ease of manufacture, and cost. *Id.* ¶ 20.  Such innovations are not patented, are not visible to passers-by as Waymo tests its vehicles, and derive their economic value from being kept secret from competitors, as described in Waymo's Trade Secret List (Exhibit 1 to Jaffe Declaration).  Thus, these innovations qualify as trade secrets.  They derive independent economic value from not being generally known at least in part because they embody Waymo's expenditure of time and resources into developing the trade secrets, which a competitor could circumvent in the event that such trade secrets were generally known.  Any ability to shorten or eliminate engineering cycles represents a valuable time-saving advantage.

**Trade Secret Nos. 1, 4, and 6**

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████
████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  ████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ████████████████████████

4  **Trade Secret Nos. 2 and 3**

5  ███████████████████████████████████████████████████

6  ████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ████████████████████████████████████

9  ███████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ███████████████████████████

14 ██████████████████████████████████████████████████

15 ████████████████████████████ ████████████ ███████████████

16 ████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████

18 ██████████████████████████████ ██ ███████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████

21 ███████████████████ ████████████████████████████████

22 ████████████████████████████████████████████████████

23 ██████████████████████████████████████████████ ███████

24 ████████████████████████████████████████████████████

25 ███████████████████████████████████████████████████

26 ████████████████████

27 ██████████████████████████████████████████████████

28 ████████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1 ████████████████████████████████████████████

2 ████████████    ██████████████████████████████

3 ████████████████████████████████████████████

4 ██████████████   ████████████████████████████

5 ██████████████

6 ████████████████████████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████

9 ████████████████████████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

12 ████████████████████████████████████████████

13 ██████████████████████

14 **Trade Secret No. 5**

15 ████████████████████████████████████████

16 ██████████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████████████

19 ████████████████████████████████████████████

20 █████████   ██████████████████████████████████

21 ████████████████████████████████████████████

22 ██████████████████████████

23 **Trade Secret No. 7**

24 ██████████████████████████████████████████

25 ██████████████████████████████████████████

26 ████████████████████████████████████████

27 ████████████████████████████████████████████

28 ████████████████████████████████████████████

No. 3:17-cv-00939-WHA

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**Trade Secret No. 8**

**Trade Secret Nos. 9 and 10**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19    **Trade Secret No. 13**

20

21

22

23

24

25

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████████████████████████████████████

6 ████████████████████████████    ████████████

7 █████████████████████████████

8 **Trade Secret No. 14**

9 ████████████████████████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████

12 ████████████████████████████████████████████

13 ████████████████████████████████    ████████

14 ████████████████████████████████████████████

15 ████████████████████    ████████████████████

16 ████████████████████████████████████████████

17 █    ████████████████████████████████████████

18 ████████████████████████████    ████████████

19 ████████████████████████████████████████████

20 ████████████████████████████████████████████

21 ████████████████████████████████████████████

22 ████████████████████████    ████████████████

23 ██████████████    ██████████████████████████

24 ████████████████████████████████████████████

25 ████████████████████████████████    ████████

26 ████████████████████████████████████████████

27 █████████████████████

28

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**Trade Secret No. 19**

**Trade Secret No. 48 and 90**

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  ████ ██ ████ ███ ████ ████ ███ ████ ███ ████ ██ ████

2  ████████████████████████████████████████████████

3  ██████████████

4  ████████████████████████████████████████

5  ████████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████████████████████████████████████████

8  ████████████████████████████████████████████████

9  ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ████████████

12 ██████████████████████████████████████████████

13 ████████████████████████████████████████████████

14 ████████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 ████████████████████████████

19 **Trade Secret Nos. 75-80**

20 ████ ████ ███ ██ ███ ████ ████ ███ ███ ████

21 ████████████████████████████████████████████████

22 ████████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ██████████████

25 ████████████████████████████████████████

26 ████████████████████████████████████████████████

27 ████████████████████████████████████████████████

28 ████ ███ ██ █ ███████ ████ ███ ██ ████ ████ ████

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2

3

4     **Trade Secret No. 81**

5

6

7

8

9

10

11

12     **Trade Secret No. 85**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27     **Trade Secret No. 86**

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1 ████████████████████████████████████████████

2 ███████████████████████

3 ████████████████████████████████████████████

4 █████████████████████████████████████████████

5 █████████████████████████████████████████████

6 ███████████████████████████   ██████████████

7 ████████████████████████████████████████████

8 **Trade Secret Nos. 87-88**

9 ████████████████████████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

12 █████████████████████████████████████████████

13 █████████████████████████████████████████████

14 █████████████████████████████████████████████

15 █████████████████████████████████████████████

16 █████████████████████████████████████████████

17 █████████████████████████████████████████████

18 █████████████████████████████████████████████

19 ███████████████████████████████████

20 **Trade Secret No. 91**

21 ████████████████████████████████████████████

22 █████████████████████████

23 ████████████████████████████████████████████

24 █████████████████████████████████████████████

25 **Trade Secret Nos. 94-109**

26 ████████████████████████████████████████████

27 █████████████████████████████████████████████

28 █████████████████████████████████████████████

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27     **Trade Secret No. 110**

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  ████████████████████████████████████████████

2  ████████████████████████████████████

3  ████████████████████████████████████████████

4  █████████████████████████████████████████████

5  █████████████████████████████████████████████

6  ██████████████  ████████████████████████████

7  █████████████████████████████████████████████

8  █████████████████████████████████████████████

9  █████████████████████████████████████████████

10 █████████████████████████

11    **Trade Secret No. 111**

12 ████████████████████████████████████████████

13 █████████████████████████████████████████████

14 ███████████████

15 ████████████████████████████████████████████

16 █████████████████████████████████████████████

17 █████████████████████████████████████████████

18 ████████████████████  ████████████████████████

19 █████████████████████████████████████████████

20 █████████████████████████████████████████████

21 ████████████████████  ██████████████████████

22 █████████████████████████████████████████████

23 █████████████████████████████████████████████

24 ██████████████████████████  █████████████████

25 █████████████████████████████████████████████

26 ███████████████

27    **Trade Secret No. 112**

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2

3

4

5

6

7

8

9

10      **Trade Secret No. 113**

11

12

13

14

15

16

17

18

19

20

21

22      **Trade Secret No. 114**

23

24

25

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ███████   ████████████████████████████████████████████

4 ████████████████████

5    **Trade Secret No. 115**

6    ████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 ██████████████

9    ████████████████████████████████████████████████

10 ███████████████████████████████████████████████████

11 ███████████████████████████████████████   ████████████

12 ███████████████████████████████████████████████████

13 ███████████████████████████████████████████████████

14 ███████████████████████████████████████████████████

15 ███████████████████████████████████████████████████

16 ████████████████████

17    **Trade Secret No. 116**

18    ████████████████████████████████████████████████

19 ███████████████████████████████████████████████████

20 ███████████████████████████████

21    ████████████████████████████████████████████████

22 ███████████████████████████████████████████████████

23 ███████████████████████████████████████████████████

24 ███████████████████████████████████████████████████

25 ███████████████████████████████████████████████████

26 ██████████████████████████   ██████████████████████

27 ███████████████████████████████████████████████████

28

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1 ███████████████████████████████████████████████

2 ██████████████████████████████████

3     **Trade Secret No. 117**

4 ████████████████████████████████████████████

5 ████ ███ ████ ██ ███ ██████████ ████ ██ █ ████ ████ ████

6 █████████████████████

7 ███████████████████████████████████████████

8 ███████████████████████████████████████████████

9 ███████████████████████████████████████████████

10 ███████████████████████████████████████████████

11 ███████████████████████████████████████████████

12 ███████████████████████████████████████████████

13 ███████████████████████████████████████████████

14 ███████████████████████████████████████████████

15 ██████████

16     **Trade Secret No. 118**

17 ████████████████████████████████████████████

18 ███████████████████████████████████████████████

19 ██

20 ████████████████████████████████████████████

21 ███████████████████████████████████████████████

22 ███████████████████████████████████████████████

23 █████████████ █████████████████████████████████

24 ███████████████████████████████████████

25     **Trade Secret No. 119**

26 ████████████████████████████████████████████

27 ███████████████████████████████████████████████

28 █████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2

3

4

5

6

7

8    **Trade Secret No. 120**

9

10

11

12

13

14

15

16

17

18

19

20

21

22    **Trade Secret No. 121**

23

24

25

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1 ████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████

4 ████████████████████████████████████████

5 ████████████████████████████████

6

7 <u>**INTERROGATORY NO. 4:**</u>

8    Separately for each alleged Waymo trade secret identified in response to Interrogatory No.

9 1, identify all Documents (by Bates number) that reflect the development, content, and scope of

10 the alleged trade secret.

11

12 <u>**RESPONSE TO INTERROGATORY NO. 4:**</u>

13    Waymo incorporates by reference its General Objections.  Waymo further objects to this

14 interrogatory on the grounds that (i) it is vague and ambiguous, including with respect to the

15 phrase "development, content, and scope"; and (ii) it is overbroad, unduly burdensome, and

16 oppressive, including to the extent that it asks Waymo to respond "[s]eparately for each alleged

17 Waymo trade secret" and to identify "all Documents."  Waymo further objects to this request to

18 the extent it is compound, complex, and contains multiple subparts.

19    Subject to and without waiving the foregoing General and Specific Objections, Waymo

20 responds as follows:

21    Waymo identifies the following documents as responsive to this interrogatory:  WAYMO-

22 UBER-00003147,  WAYMO-UBER-00003156,  WAYMO-UBER-00003176,  WAYMO-UBER-

23 00003184,      WAYMO-UBER-00003185,      WAYMO-UBER-00003210,      WAYMO-UBER-

24 00003211,      WAYMO-UBER-00003217,      WAYMO-UBER-00003248,      WAYMO-UBER-

25 00003249,      WAYMO-UBER-00003259,      WAYMO-UBER-00003260,      WAYMO-UBER-

26 00003261,      WAYMO-UBER-00003266,      WAYMO-UBER-00003267,      WAYMO-UBER-

27 00003299,      WAYMO-UBER-00003306,      WAYMO-UBER-00003323,      WAYMO-UBER-

28 00003341,      WAYMO-UBER-00003452,      WAYMO-UBER-00002485,      WAYMO-UBER-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  00002542,      WAYMO-UBER-00002551,      WAYMO-UBER-00002559,      WAYMO-UBER-

2  00002570,      WAYMO-UBER-00002595,      WAYMO-UBER-00002985,      WAYMO-UBER-

3  00003499, WAYMO-UBER-00004025, WAYMO-UBER-00004845.

4

5  **INTERROGATORY NO. 5:**

6      Separately for each alleged Waymo trade secret identified in response to Interrogatory No.

7  1, identify all Persons involved in the development of the alleged trade secret and describe their

8  roles in the development.

9

10  **RESPONSE TO INTERROGATORY NO. 5:**

11      Waymo incorporates by reference its General Objections.  Waymo further objects to this

12  interrogatory on the grounds that (i) it is vague and ambiguous, including with respect to the term

13  "development"; and (ii) it is overbroad, unduly burdensome, and oppressive, including to the

14  extent that it asks Waymo to respond "[s]eparately for each alleged Waymo trade secret" and to

15  identify "all Persons."  Waymo further objects to this request to the extent it is compound,

16  complex, and contains multiple subparts.

17      Subject to and without waiving the foregoing General and Specific Objections, Waymo

18  responds as follows:

19      Waymo identifies the following individuals involved in the development of the trade

20  secrets identified in response to Interrogatory No. 1:

21      • Pierre-Yves Droz, Waymo Principal Hardware Engineer and LiDAR Team

22        Technical Lead.

23      • Ben Ingram, Waymo Hardware Engineer.

24      • Luke Wachter, Waymo Software Engineer.

25      • Drew Ulrich, Waymo Mechanical Engineer.

26      • Zachary Morriss, Waymo Mechanical Engineer.

27      • Dorel Ionut Iordache, Waymo Software Engineer.

28      • Sam Lenius, Waymo Hardware Engineer.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

- Bernard Fidric, Waymo Hardware Engineer.
- Anthony Levandowski, former Google Software Engineer and LiDAR Team Manager.
- Gaetan Pennecot, former Google Hardware Engineer.
- Daniel Gruver, former Google Engineer.

**INTERROGATORY NO. 6:**

Separately for each alleged Waymo trade secret identified in response to Interrogatory No. 1, describe how long it took and how much it cost to develop.

**RESPONSE TO INTERROGATORY NO. 6:**

Waymo incorporates by reference its General Objections.  Waymo further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive, including to the extent that it asks Waymo to respond "[s]eparately for each alleged Waymo trade secret." Waymo further objects to this request to the extent it is compound, complex, and contains multiple subparts.

Subject to and without waiving the foregoing General and Specific Objections, Waymo responds as follows:

Waymo began developing its in-house LiDAR systems in 2011.  Waymo's development of its in-house LiDAR systems drew from development efforts of 510 Systems, led by engineer Pierre-Yves Droz.  510 Systems began developing a mapping LiDAR in 2009; by December 2010, these efforts had led to a prototype code-named "Little Bear" ("LBr").  In early summer 2011, 510 Systems began developing LiDAR systems for self-driving applications, building on the success of LBr.  However, because of ███████████████████████████████████ that 510 Systems learned from its experience with LBr, 510 Systems proceeded with development of two distinct LiDAR designs: a LiDAR system for long ranges ("Papa Bear" or "PBr") and a separate LiDAR system for medium ranges ("Mama Bear" or "MBr"). *See* Droz Decl. ¶¶ 5-7.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    In July 2011, Waymo acquired 510 Systems.  Since the acquisition, Waymo's LiDAR

2  team has grown from ▮ people when Waymo acquired 510 Systems to approximately▮ people

3  today. *Id.* ¶ 7.

4    In 2011, Waymo's self-driving cars were using an off-the-shelf LiDAR device (the

5  Velodyne HDL64), which cost approximately $70,000.  Waymo spent years working on a variety

6  of possible LiDAR designs that proved not to work.  Waymo's experience with these "dead-end"

7  designs helped lead Waymo to the architecture now at the heart of its current LiDAR systems.  *Id.*

8  ¶ 10-12.

9    Designing and developing LiDAR systems is a difficult and time-consuming process that

10  requires significant experience with using LiDAR systems for the desired application — in

11  Waymo's case, self-driving cars.  Thanks to Waymo's experience with self-driving cars dating

12  back to 2009, Waymo had the knowledge required for optimizing LiDAR for self-driving car test

13  scenarios.  Optimization is difficult and time-consuming, as ██████████████████████████

14  ████████████████████████████████████  As discussed above, early on, Waymo

15  realized that different LiDAR designs would be required to satisfy all the needed self-driving car

16  test scenarios for different ranges.

17    For example, for long ranges, ████████████████████████████████████████

18  ████████████████████████████.  Early development of PBr involved ██████████

19  ████████████████████████████████████ — a solution that did not

20  work.  After trying several other designs and building several different prototypes of Papa Bear,

21  Waymo began equipping its fleet (in ██████) with version 5 of PBr, which was ██████████

22  ████████████████████████████████████████████  Waymo

23  thus iterated more designs of Papa Bear, eventually settling on the PBr design that it still uses on

24  its self-driving fleet.  Waymo is not aware of viable alternatives for long-range LiDAR.  *See id.*

25  ¶¶ 9-10.

26    Development of Waymo's mid-range LiDAR system was equally, if not more, difficult,

27  time-consuming, and expensive than development of PBr.  In parallel with PBr design, beginning

28  in 2011, Waymo worked on MBr, which used ██████████████████████████.  After more

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   than a year of work on MBr, however, this design proved not to be viable for use in self-driving

2   cars.  Accordingly, in late 2012, Waymo decided to abandon MBr and came up with an entirely

3   new design for a mid-range LiDAR, codenamed "Grizzly Bear" (or "GBr").  *See id.* ¶ 11.

4         Beginning in December 2012, Waymo began devoting many resources into developing the

5   mid-range GBr LiDAR.  GBr was a very different and innovative design made possible by all the

6   know-how and technological capabilities Waymo's LiDAR team had developed over several years

7   of working on LiDAR systems.  In contrast to commercially available LiDAR systems, such as the

8   Velodyne system originally used by Waymo, GBr had many advantages: it was ████████

9   ████████████████████████████████████████████

10  ████████████████████████████████████████████

11  ████████████████████████████████████████.  *See id.*

12  ¶ 12.

13        One of GBr's innovations was a design that it eventually patented: its use of a single lens

14  — rather than multiple sets of lenses — to both transmit and receive the collection of laser beams

15  used to scan the surrounding environment.  Traditionally, a multi-beam LiDAR system used lens

16  assemblies with multiple elements (such as one lens for the transmit side and another for the

17  receive side), but this approach was not practical in a self-driving car LiDAR because of the

18  significant size and cost of the system due to the complexity of manufacturing numerous complex

19  lens elements.  *See id.* ¶¶ 13-14.  Waymo first pioneered its single-lens design in GBr.  GBr's

20  single-lens design makes the focal plane curved, complicating the optical layout.  Accordingly,

21  Waymo developed many innovations, some patented and some maintained as trade secrets, to ████

22  ████████████████████████ and allowed Waymo to get the small-size and low-cost

23  benefits of a single-lens system.  *See id.* ¶ 15.

24       In ████████ Waymo rolled out the second generation of its mid-range LiDAR — GBr2.

25  The GBr design (as refined in GBr2), was groundbreaking, as it significantly reduced the cost and

26  size of the LiDAR system while increasing performance.  To get to this point, it took Waymo two

27  years from when it first set out to build an in-house mid-range LiDAR for self-driving car

28  applications.  Development of GBr2 required solving innumerable issues, which Waymo

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

accomplished by devoting significant resources.  The issues Waymo spent time and money resolving, and the solutions to those issues, are something a LiDAR designer not previously familiar with Waymo's designs could not address in advance.  *See id.* ¶¶ 17-18.

Through Waymo's many months of design and development, Waymo finally switched from off-the-shelf Velodyne LiDAR systems to its in-house GBr2 LiDAR in ██████████ ████ almost three years after Waymo first started developing its in-house mid-range LiDAR and approximately one year after Waymo first came up with the single-lens concept for GBr.  *See id.* ¶ 19.

Waymo's mid-range LiDAR development did not stop then.  It continued spending time and resources on improving GBr2, leading to the current-generation of Waymo's mid-range LiDAR, known internally as GBr3, which adds innovations onto the same foundation as GBr and GBr2, ██████████████████████████████████████████████████████.  These arrangements were designed — based on Waymo's years of testing, simulation, experimentation, and optimization for different test scenarios — for use in self-driving cars.  These designs result in GBr3 ████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████.  *See id.* ¶ 20.

Waymo spent much time, effort, and resources developing GBr3.  As just one example, ████████████████████████████████████████████████████████ ████████████████████████████████████████████    ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████    ████████████████████████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 ███████

4 ████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ████████████████████████   ███████████████████████████████

9 ████████████████████████████████████████████████████████████

10 ██████████████████████████████████████████████   █████████

11 ██████

12       In brief, Waymo's LiDAR development efforts led to the replacement of the Velodyne

13 HDL64 with an in-house LiDAR solution that was ██████████████████████.

14 Waymo's research and development efforts into LiDAR technology also led to the creation of a

15 new type of LiDAR to cover long-range perception needs with █████████████████

16 ████████████████████████████████████████████████████████████

17 █████████████████████   By ██████, Waymo's test fleet was equipped exclusively with

18 Waymo's in-house LiDAR systems.

19       Even after the success of Waymo's in-house LiDAR designs, Waymo's LiDAR research

20 and development efforts are ongoing and have led to additional innovations, many maintained as

21 trade secrets, beyond those incorporated into its PBr, GBr, and TBr LiDARs.  For example,

22 ████████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████

26 ████████   ██████████████████████████████████████████████████

27 ██████████████████████████████████████████████

28

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

These recent development efforts have resulted in several major improvements to Waymo's technology, most or all of which are maintained as trade secrets. █████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████

**INTERROGATORY NO. 7:**

Separately for each alleged Waymo trade secret identified in response to Interrogatory No. 1, identify all efforts to maintain the secrecy and confidentiality of the trade secret.

**RESPONSE TO INTERROGATORY NO. 7:**

Waymo incorporates by reference its General Objections.  Waymo further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive, including to the extent that it asks Waymo to respond separately for each alleged Waymo trade secret.  Waymo further objects to this request to the extent it is compound, complex, and contains multiple subparts.

Subject to and without waiving the foregoing General and Specific Objections, Waymo responds as follows:

Waymo hereby incorporates by reference its List of Asserted Trade Secrets, Dkt. No. 25-7, and the Declarations of Michael Janosko (Janosko Decl.), Gary Brown ("Brown Decl."), and

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   Pierre-Yves Droz (Droz Decl.), all of which describe Waymo's efforts to maintain secrecy of its

2   trade secrets.

3       In addition, Waymo provides the following response:

4       Waymo takes robust measures to protect its LiDAR trade secrets.  As a condition of

5   employment, Waymo requires all employees to enter into written agreements to maintain the

6   confidentiality of proprietary and trade secret information, and not to misuse such information.

7   Waymo also enforces an employee code of conduct that explains employees' strict obligations to

8   maintain the secrecy of confidential information, and requires employee training in security

9   procedures.  Droz Decl. ¶ 30.

10       Waymo also takes reasonable measures to mark confidential and proprietary information,

11   such as documents and other materials, with visible legends designating them as such when

12   sharing them outside of Waymo, subject to NDAs or other confidentiality agreements.

13   Disclosures to vendors are limited to the subject matter necessary for the vendor's engagement and

14   do not reveal the entirety of a given LiDAR system or design.  Waymo employs reasonable efforts

15   to secure physical facilities by restricting access and employing locks, cameras, guards, and other

16   security measures.  *Id*. ¶¶ 33-37; Janosko Decl. ¶ 22.

17       Waymo uses Subversion (SVN) — a revision control system — to store its electrical

18   design information.  All traffic (both ingress to and egress from) the SVN repository is encrypted.

19   All traffic is authenticated against a list of authorized users before access to the repository is

20   granted, and users do not share credentials — all accesses are unique to specific users.  Access

21   control lists are audited monthly and stale users are aggressively purged.  The SVN server is

22   password protected and accessible through specialized software.  *Id*. ¶¶ 23-25.

23       Additionally, Waymo imposes network security measures and access policies that restrict

24   the access and dissemination of certain confidential and proprietary trade secret information to

25   only teams that are working on projects related to that information. For example, Google

26   employees working on projects with no relation to Waymo or self-driving cars could not (and

27   cannot) access Waymo's confidential and proprietary schematics.  They are distributed on a "need

28   to know" basis.  Droz Decl. ¶ 32.  Google's networks generally are also secured through ███████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1 ██████████████████████████████████████████████████████

2 ████████. Janosko Decl. ¶¶ 13-16.

3      Google employs a variety of security mechanisms to prevent network intruders or attackers

4 who may compromise Waymo's trade secret information.   Google also secures employees'

5 devices and credentials against attacks through ███████████████████████████████

6 ████████████████ *Id.* ¶¶ 7-12, 20.

7      ██████████████████████████████████████████

8 ██████████████████████████████████████████████████████

9 ██████████████████████████████████████████████████████

10 ██████████████████ ███████████████████████████████████

11 ██████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████

14 ████████████████████████████████████ *Id.* ¶¶ 17-21.

15      Discovery is ongoing and Waymo reserves the right to supplement this response after

16 further discovery and investigation.

17

18 **INTERROGATORY NO. 8:**

19      Separately for each alleged Waymo trade secret identified in response to Interrogatory No.

20 1, describe all instances in which the trade secret (or any Waymo LiDAR device utilizing the trade

21 secret) was publicly or otherwise disclosed to third parties, and identify all Documents (by Bates

22 number) Concerning such disclosure.

23

24 **RESPONSE TO INTERROGATORY NO. 8:**

25      Waymo incorporates by reference its General Objections.  Waymo further objects to this

26 interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive, including to

27 the extent that it asks Waymo to respond separately for each alleged Waymo trade secret.  Waymo

28 further objects to this request to the extent it is compound, complex, and contains multiple

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

subparts.  Waymo further objects to this interrogatory to the extent it seeks information subject to a non-disclosure agreement or claim of third-party confidentiality.

Subject to and without waiving the foregoing General and Specific Objections, Waymo responds as follows:

Waymo is not aware of any instances in which the trade secrets identified in Response to Interrogatory No. 1 or any Waymo LiDAR device utilizing the trade secrets was publicly or otherwise disclosed to third parties.

Discovery is ongoing and Waymo reserves the right to supplement this response after further discovery and investigation.

**INTERROGATORY NO. 9:**

Separately for each alleged Waymo trade secret identified in response to Interrogatory No. 1, state why you contend it is not generally known in light of the public disclosures referenced in the Declarations of Paul McManamon and Michael Lebby submitted in this case.

**RESPONSE TO INTERROGATORY NO. 9:**

Waymo incorporates by reference its General Objections.  Waymo further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive, including to the extent that it asks Waymo to respond separately for each alleged Waymo trade secret.  Waymo further objects to this request to the extent it is compound, complex, and contains multiple subparts.  Waymo further objects to this interrogatory as premature to the extent it calls for information that is subject to expert testimony.  Waymo will provide expert testimony in accordance with the Court's procedural schedule.

Subject to and without waiving the foregoing General and Specific Objections, Waymo responds as follows:

The following paragraphs address the specific portions of the public disclosures referenced in the Declarations of Paul McManamon and Michael Lebby submitted in this case.  To the extent

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  Dr. McManamon and Dr. Lebby are permitted to supplement their opinions, Waymo reserves the

2  right to supplement this interrogatory response.

3      **Trade Secret No. 1**

4      Trade Secret No. 1 is not generally known in light of the public disclosures referenced in

5  the Declarations of Paul McManamon and Michael Lebby for at least the following reasons:

6   

7   

8   

9   

10   

11   

12   

13   

14   

15   

16   

17   

18   

19   

20   

21   

22   

23   

24   

25   

26   

27   

28   

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**Trade Secret Nos. 2, 3, and 6**

Trade Secret Nos. 2, 3, and 6 are not generally known in light of the public disclosures referenced in the Declarations of Paul McManamon and Michael Lebby for at least the following reasons:

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2

3

4

5

6

7

8

9

10

11

12     **Trade Secret No. 5**

13         Trade Secret No. 5 is not generally known in light of the public disclosures referenced in

14 the Declarations of Paul McManamon and Michael Lebby for at least the following reasons:

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**Trade Secret No. 7**

Trade Secret No. 7 is not generally known in light of the public disclosures referenced in the Declarations of Paul McManamon and Michael Lebby for at least the following reasons:

**Trade Secret No. 10**

Trade Secret No. 10 is not generally known in light of the public disclosures referenced in the Declarations of Paul McManamon and Michael Lebby for at least the following reasons:

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████

5 ███████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 ██████████████████████████████████  ████████████████████

9 ████████████████████████████████████████████████████

10 ████████████████████████████████████████

11 **Trade Secret No. 13**

12      Trade Secret No. 13 is not generally known in light of the public disclosures referenced in

13 the Declarations of Paul McManamon and Michael Lebby for at least the following reasons:

14 ████████████████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████

17 ███████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ██████████████████████████████████████████████████

21 ████████████████████████████████████████████████

22 ████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████

25 ██████████████████████████████████  ███████████████████

26 ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1 ███████████████████████████████████████████████████████

2 ████

**Trade Secret No. 14**

Trade Secret No. 14 is not generally known in light of the public disclosures referenced in the Declarations of Paul McManamon and Michael Lebby for at least the following reasons:

6 ████████████████████████████████████████████████████

7 ███████████████████████████████████████████████████████

8 ███████████████████████████████████████████████████████

9 ████████████████████████████████████████████   ████████

10 ██████████████████████████████████████████████████████

11 ███████████████

12 ████████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████

14 █████████████████████████████

15 ████████████████████████████████████████████████████

16 ██████████████████████████████████████████████████████

17 ██████████████████████████████████████████████████████

18 ████████████████████████████   ███████████████████████

19 ██████████████████████████████████████████████████████

20 ██████████████████████████████████████████████████████

21 █████████████████████████

22 ████████████████████████████████████████████████████

23 ██████████████████████████████████████████████████████

24 ██████████████████████████████████████████████████████

25 ██████████████████████████████████████████████████████

26 ██████████████████████   ██████████████████████████████

27 ██████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  ████████████████████████████████████████████████

2  ████████████████████████  ████████████████████████

3  ███████████████████████████████████  ██████████████

4  ████████████████████████████████████████████████

5  ████████████████████████████████████████████████

6  ████████████████████████

7  **Trade Secret No. 19**

8       Trade Secret No. 19 is not generally known in light of the public disclosures referenced in

9  the Declarations of Paul McManamon and Michael Lebby for at least the following reasons:

10  ████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████

14  ████████████████████████████████████████████████

15  ███████████████████████  ██████████████████████████

16  ████████████████████████████████████████████████

17  ████████  ██████████████████████████████████████████

18  ████████████████████████████████  ████████████████████

19  ████████████████████████████████████████████████

20  ███████████████████████████  ██████████████████████

21  ████████████████████████████████████████████████

22  ████████████████████████████████████████████████

23  ████████████████████████████████████████████████

24  ███████████████████████████████████████

25  ████████████████████████████████████████████████

26  ████████████

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  **Trade Secret Nos. 48 and 90**

2  Trade Secret Nos. 48 and 90 are not generally known in light of the public disclosures

3  referenced in the Declarations of Paul McManamon and Michael Lebby for at least the following

4  reasons:

5  ███████████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████████

7  ████████████████████████████████████████ ████████

8  ███████████████████████████████████████████████████████████

9  ██████████

10  ████████████████████████████████████████████████████

11  ███████████████████████████████████████████████████████████

12  ████████████████████████████████████████████ ████

13  ██████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████

15  ██████████████ ████████████████████████████████

16  ███████████████████ ██████████████████████████

17  ███████████████████████████████████████████████████████████

18  ███████████████████

19  **Trade Secret No. 62**

20  Trade Secret No. 62 is not generally known in light of the public disclosures referenced in

21  the Declarations of Paul McManamon and Michael Lebby for at least the following reasons:

22  Dr. McManamon did not cite any public disclosures to allege that Trade Secret No. 62 was

23  generally known.

24

25  <u>**INTERROGATORY NO. 10:**</u>

26  Separately for each alleged Waymo trade secret identified in response to Interrogatory No.

27  1, identify any and all Allegedly Misappropriated Files that You contend disclose that trade secret

28  and describe how those files disclose the trade secret.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**RESPONSE TO INTERROGATORY NO. 10:**

Waymo incorporates by reference its General Objections.  Waymo further objects to this interrogatory on the grounds that (i) it is vague and ambiguous, including with respect to the phrase "describe how those files disclose the trade secret"; and (ii) it is overbroad, unduly burdensome, and oppressive, including to the extent that it asks Waymo to respond "[s]eparately for each alleged Waymo trade secret" and to identify "any and all . . . Files."  Waymo further objects to this request to the extent it is compound, complex and contains multiple subparts.

Subject to and without waiving the foregoing General and Specific Objections, Waymo responds as follows:

The trade secrets identified below are disclosed at least in part by, among others, the misappropriated materials listed below.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

WAYMO'S OBJECTIONS AND RESPONSES TO UBER'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**INTERROGATORY NO. 11:**

For the past five years, identify every Waymo executive (with a title of Senior Vice President or Executive Vice President or above) who has had a separate Side Business during any part of the time that he or she has worked at Waymo.

**RESPONSE TO INTERROGATORY NO. 11:**

Waymo incorporates by reference its General Objections. Waymo further objects to this interrogatory on the grounds that it seeks information that is not relevant to the parties' claims and defenses nor proportional to the needs of the case.

DATED: June 16, 2017                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _/s/ Charles K. Verhoeven_
Charles K. Verhoeven
Attorneys for WAYMO LLC