MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:    415.268.7000
Facsimile:     415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone:    202.237.2727
Facsimile:     202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>        Defendants. | Case No.       3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., OTTOMOTTO LLC'S, AND OTTO TRUCKING LLC'S RESPONSE TO THE COURT'S TEN QUESTIONS (DKTS. 664, 693)**<br><br>Date: June 29, 2017<br>Time: 8:00 a.m.<br>Ctrm: 8, 19th Floor<br>Judge: Hon. William H. Alsup<br><br>Trial Date: October 10, 2017 |

Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") and Otto Trucking LLC ("Otto Trucking") (collectively, "Defendants") submit the answers below to the Court's questions (Dkts. 664, 693) based on information currently available to Defendants, which is limited by Waymo's unjustified resistance to providing discovery. Otto Trucking states that it is unclear what relevance Waymo's proposed motions *in limine* have to Otto Trucking. *See* Dkt. 649. Otto Trucking is a separate entity from Uber and Ottomotto, and Otto Trucking is concerned that the inferences sought by Waymo, references to Defendants' privilege assertions, and any instruction regarding those assertions will confuse the jury with respect to Otto Trucking's role in this case. To the extent that any of these questions implicate Otto Trucking, however, Otto Trucking joins in Uber's responses. Defendants reserve their rights to amend these answers as discovery proceeds and based on Waymo's submission on these questions, pretrial filings, and trial presentation.

**Question 1:** At trial, won't both sides wish to affirmatively address the following question: What, if any, precautions did Uber take to make sure Levandowski didn't use Waymo trade secrets at Uber? Isn't this a legitimate question that the jury is likely to consider, even on its own, and also a question likely to be asked by counsel for both sides of individual fact witnesses, maybe even of experts as well?

Yes, Uber will present evidence of the precautions it took to ensure that Levandowski (and others) did not bring to Uber any proprietary information or trade secrets from their former employers, including Google (or Waymo). That evidence is relevant to showing that Uber never acquired, used, or disclosed any Waymo trade secrets. Cal. Civ. Code § 3246.1(b).

Uber agrees this is a legitimate question the jury is likely to consider, and also a question likely to be asked by counsel for both sides of individual fact and expert witnesses. Uber would object to such questions only to the extent they call for the disclosure of privileged information. Uber, likewise, would not rely on such privileged information to demonstrate the precautions it undertook. If the Court rules that certain information is not privileged, however, such as it did in its recent ruling on the Stroz Report, then (assuming that ruling is affirmed through trial), Uber may present such evidence to show additional precautions that it undertook.

Otto Trucking joins and adopts Uber's response to the extent this question is relevant to

1  Otto Trucking.

2  **Question 2:** In addressing this question, should Uber be barred from referencing any precaution it undertook on which it has refused to reveal evidence, even if the refusal was based on a sustained claim of privilege and even if Uber otherwise has made a full disclosure on the subject?  If Uber is barred from any such reference, under what circumstances could Waymo open the door?

Uber should be permitted to reference any precaution it undertook, except to the extent such reference would require Uber to reveal information over which Uber has asserted a privilege that has been sustained by the Court.  As stated in Uber's June 1, 2017 submission (Dkt. 531), Uber intends to rely on non-privileged facts for its defense.  In addition, if the Court overrules an assertion of privilege over certain information, then Uber may rely on that information as well.

Furthermore, with respect to any privileged information concerning Uber's precautions, Uber's decision not to waive attorney-client privilege or work product protection is proper. Uber's invocation of privilege does not bar Uber from offering non-privileged facts about its precautions.  Privileged matter involving non-privileged facts and events always exists in a lawsuit, but only "non-privileged matter" is discoverable, and subsequently admissible at trial (absent waiver).  Fed. R. Civ. P. 26(b)(1).  If parties were barred from referencing facts for which there was also privileged matter (they are not), then parties would almost never be permitted to offer those facts at trial.

Because Uber will not rely at trial on information protected by privilege, there are no circumstances in which Waymo should be allowed to "open the door" and reference such information.  Only the party invoking privilege (here, Uber) can open the door.  To hold otherwise would allow adversaries to force opponents to waive privilege or suffer adverse inferences.  That is not permitted.  *See* Dkt. 641 at 1–3.  To the contrary, not only is Waymo prohibited from opening the door, but it should be barred from any argument that might lead the jury to draw an adverse inference against Uber based on its invocation of privilege, including any argument about the diligence investigation if the Court's order to produce the Stroz Report is reversed.  *Knorr-Bremse Sys. Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) ("no adverse inference shall arise from invocation of the attorney-client and/or work product privilege").

Otto Trucking joins and adopts Uber's response to the extent this question is relevant to Otto Trucking, and believes jury confusion will arise particularly if Waymo takes the position that Uber opened the door to inquiry.

**Question 3:** In considering the question indented above, isn't it inevitable that the jury will learn that some precautions taken by Uber were taken by its counsel and that those precautions remain secret and privileged?

No.  All parties should be precluded from presenting evidence of actions or communications over which another party has asserted a privilege sustained by the Court.  Uber may present non-privileged evidence that it took steps A, B, and C to prevent Waymo's trade secrets from crossing the threshold into Uber, even if it took an additional step, D, that it cannot present without waiving the attorney-client or work product privileges.  The jury would only learn about Step D if Waymo put on such evidence, which would be impermissible because Waymo's only purpose would be to invite the jury to draw an improper adverse inference, as explained in Uber's proposed motion *in limine*.  Dkt. 641 at 1–3; *see also* Dkt. 531 at 2–3.  Moreover, Uber is not asserting an advice-of-counsel defense, and any actions taken by counsel do not diminish Uber's ability to introduce its non-privileged precautions.

Otto Trucking joins and adopts Uber's response to the extent this question is relevant to Otto Trucking.

**Question 4:** If Waymo is precluded by privilege from showing what Uber and its counsel knew and when they knew it, should we tell the jury why Waymo has been precluded, with an appropriate instruction that invocation of privilege is a legitimate right and no adverse inference may be drawn therefrom?

No.  The jury should not be told that Waymo has been precluded from discovery into privileged matters.  Waymo is not entitled to such discovery, *see* Fed. R. Civ. P. 26(b)(1), and juries may not draw adverse inferences based on the invocation of privilege, as shown by the legal authorities previously cited by Uber.  *See* Dkt. 641 at 1–3.  Waymo should not be permitted to present evidence that it was precluded from discovering certain privileged information because such evidence has no permissible probative value and would only be offered for an improper purpose.  The resulting prejudice to Uber would be severe and could not be cured with an instruction.  It must therefore be excluded under Federal Rules of Evidence 402 and 403.

If, contrary to the law, Waymo is permitted to argue that it was unable to discover privileged matters, or improperly asks the jury to speculate about Uber's assertion of privilege, the Court should instruct the jury that Uber's invocations are an absolute right and no adverse inference may be drawn therefrom. *See* CACI No. 215 (Exercise of a Communication Privilege). Such an instruction, however, could not protect against the severe prejudice that would result from that improper inference.

Finally, Uber disputes that Waymo would be "precluded" from offering proper evidence of what Uber and its counsel knew. Waymo obviously has access to the same non-privileged facts on which Uber would rely to address that question.

Otto Trucking joins and adopts Uber's response to the extent this question is relevant to Otto Trucking. Otto Trucking believes the Court's proposal will create jury confusion. An instruction and explanation will also create jury confusion as to how Otto Trucking fits into this case.

**Question 5:** To what extent may Uber argue to the jury that Waymo has failed to present proof that Uber knew or suspected Levandowski had stolen Waymo trade secrets where Uber has asserted privilege over what it actually knew or suspected? Would such an argument by Uber open the door to an explanation to the jury that Uber has asserted privilege over what it knew or suspected? To avoid this, should Uber be limited to arguing only that within the universe of non-privileged materials produced by Uber, Waymo has failed to find damning evidence?

Uber should be permitted to argue to the jury that Waymo has failed to present proof that Uber knew or suspected Levandowski had (allegedly) stolen Waymo trade secrets. The assertion of a privilege by Uber should not prevent Uber from making this argument to the jury. Both Uber and Waymo must present non-privileged evidence to the jury, and it is appropriate and fair for Uber to argue to the jury that Waymo's evidence does not prove that Uber knew or suspected that trade secrets had been taken. Uber and Waymo can both argue about what the non-privileged facts do or do not show.

An argument by Uber about what Waymo's evidence shows (or fails to show) does not "open the door" to allowing Waymo to introduce evidence of Uber's assertion of privilege, or try to suggest to the jury what it should infer from that privilege.

Uber will be limited to arguing what is shown by the universe of non-privileged facts

because neither Uber nor Waymo will be introducing privileged information. There should be no requirement that Uber limit its arguments by formulating them by express reference to "non-privileged evidence." Both parties should simply be required to present only non-privileged evidence and to argue about what that evidence shows.

In respect of all of the above, any evidence that the Court rules is not privileged should be considered "non-privileged" and fair for full use by either side at trial, notwithstanding that it may previously have been the subject of a privilege claim (such as the Stroz Report).

Otto Trucking joins and adopts Uber's response to the extent this question is relevant to Otto Trucking.

**Question 6:** Waymo should not argue or imply that invocation of a privilege was a coverup — except to the extent the Court has overruled the claim of privilege. Agreed?

Uber agrees that Waymo should be precluded from arguing or implying at trial that Uber's invocation of a privilege was a "coverup." Uber does not agree that Waymo should be permitted to make such arguments or implications if the Court has overruled the claim of privilege.

As shown in the case law Uber previously cited to the Court, it is improper for a party to suggest to the jury that it should draw an adverse inference from the other party's assertion of a privilege. Dkt. 641 at 1–3; Dkt. 531 at 2-3. Moreover, while this is not the basis for our answer, it is worth noting that Judge Corley rejected the "coverup" theory at last week's hearing on Waymo's motion to compel. Order on Uber's Privilege Log (Dkt. 731) at 2 ("Further, based on the Court's review of the entire record in this case, including the in camera Stroz Report, the Court found that Uber retained MoFo to conduct an investigation into Levandowski and Otto and to create an evidentiary record that would govern Uber's obligation to indemnify Levandowski and Otto in any lawsuit brought by Waymo. The Court does not find that Uber retained MoFo to assist with obtaining Waymo's trade secrets.").

To the extent the Court overrules a claim of privilege, the information simply becomes non-privileged and is, like all other non-privileged evidence, potentially admissible at trial. That Uber invoked and declined to waive a privilege that the Court ultimately overruled is not something the jury should ever hear, as it would unfairly prejudice Uber based on its good faith

assertion of privilege and improperly invite the jury to speculate about Uber's privilege assertions. Any other ruling would contradict the case law holding that a party's assertion of a privilege may not be used to persuade a jury to draw an adverse inference. Dkt. 641 at 1–3.

Otto Trucking joins and adopts Uber's response to the extent this question is relevant to Otto Trucking. Otto Trucking further states:

Otto Trucking does not believe Waymo should be allowed to argue or imply any "coverup" with respect to Otto Trucking, as no such evidence exists. As stated before, any such argument or implication about a coverup could create considerable confusion as to how Otto Trucking fits into this case. As such, Otto Trucking agrees that the invocation of privilege does not constitute a "coverup" as it is well-established that no adverse inference may be drawn from the invocation of privilege. *See* Dkt. 649 at 3.

The assertion of privilege protections should not be considered a "coverup." First, as Uber points out, Waymo's argument that Defendants have used counsel to cover up the alleged misappropriation was rejected by Judge Corley. Order on Uber's Privilege Log (Dkt. 731) at 2. Allowing Waymo to imply a coverup simply because documents were withheld based on a reasonable belief that the materials were privileged, even if the Court ultimately disagrees, amounts to an improper sanction as Otto Trucking has not violated any court order. *See Genetech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1422-23 (Fed. Cir. 1997) (collecting cases holding sanctions require a predicate violation of a court order).

Further, if the Court overrules a party's initial claim of privilege, presumably that party will produce the documents withheld on the grounds of privilege. Thus, no adverse inference regarding a "coverup" is necessary because the substance of the documents will be available for the parties to use to argue on the merits whether a "coverup" existed or not. Established public policy favors resolution of issue on the merits. *See Wendt v. Host International, Inc*., 125 F.3d 806, 814 (9th Cir. 1997) (reversing evidentiary sanction in part because public policy favors disposition of cases on their merits).

Moreover, should the Court disagree with the assertion of privilege, and the documents at issue are produced, no inference of a coverup is warranted or appropriate because Defendants will

have complied with the Court's order. *See Genentech*, 122 F.3d at 1423 (reversing sanction because plaintiff produced documents after ordered to do so).

**Question 7:** Under what circumstances, if any, would possession by Morrison & Foerster or Stroz Friedberg of any downloads in question be admissible (if true) to show unlawful acquisition or use by Uber, assuming the downloaded information qualifies as trade secrets?

None. First, the contract between Levandowski and Stroz makes clear that Stroz and MoFo received access to Levandowski's materials under strict conditions that did not permit Stroz or MoFo to provide those materials to Uber. Gardner-Stroz Side Letter (Dkt. 545-7). Second, case law holds that an agent's possession of trade secrets cannot automatically be attributed to the principal for purposes of showing misappropriation.

The scope of MoFo's agency on behalf of Uber did not give Uber the power to control or possess the materials that Levandowski provided to Stroz. Levandowski placed strict conditions on the use and distribution of those materials, including a prohibition on their distribution to Uber or other parties. *See* Dkt. 545-7. Indeed, Waymo's counsel acknowledged that Uber did not control Stroz with respect to the material that Levandowski provided it. 6/23/17 Hr'g Tr. at 42:10-13 (Mr. Verhoeven: "And so you still have an independent expert out there who Uber has no control over, who they allege Levandowski has control over to a certain extent in a way that conflicts with the interests of Uber…."). To this day, Levandowski has not relinquished that control, and neither he nor Stroz provided any Google material to Uber. Uber also never exercised control over, or had the right to control, any Google material that may have come into MoFo's possession because any such information could be disclosed per the terms of Stroz's engagement only on an outside counsel attorneys' eyes only basis. Dkt. 370-3 at 3. And MoFo has never provided any such material to Uber. As this Court's Model Protective Orders demonstrate, it is entirely appropriate for competitively sensitive material to be provided only to outside counsel specifically to prevent the client from possessing it.

In the Ninth Circuit, "it is generally not appropriate to direct a jury to impute an agent's knowledge 'of a secret to the principal.'" *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792-93 (9th Cir. 1976) (reversible error to instruct jury that defendant could not defend

misappropriation claim by pointing to its agent's failure to tell defendant's other employees about the trade secrets the agent allegedly received). Instructing the jury to the contrary "would permit recovery even when the trade secret was not actually communicated to or used by the principal." *Id.* at 793. A "plaintiff is not entitled to a windfall when in fact there has been no invasion of those interests which trade-secret law seeks to protect." *Id.* These rulings are in accord with California's rejection of the inevitable disclosure doctrine.

It is especially inappropriate to impute knowledge of any purported agent here. As noted above, Uber did not exercise control over, or have the right to control, any Google material Levandowski may have provided to Stroz. And Uber cannot be liable for acquisition of material it does not control, when it has not engaged in "pointed conduct intended to secure dominion over the thing." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 223 (2010), *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). Levandowski, not Uber or its counsel, at all times controlled access to any Google material he provided to Stroz pursuant to his contract with Stroz. Thus, there can be no liability on the part of Uber for any possession by MoFo or Stroz on any theory, such as ratification or respondeat superior liability.

Furthermore, even if any possession by MoFo or Stroz were imputed to Uber, any probative value of such evidence would be vastly outweighed by the resulting unfair prejudice to Uber because Waymo has no legitimate damages claim based on possession alone—especially possession only by outside counsel and its forensics vendor. CACI No. 4405 ("In some cases, the mere acquisition of a trade secret, as distinguished from a related disclosure or use, will not result in damages . . ."); *see also Silvaco*, 184 Cal. App. 4th at 223 ("One does not ordinarily 'acquire' a thing inadvertently; the term implies conduct directed to that objective. The choice of that term over 'receive' suggests that inadvertently coming into possession of a trade secret will not constitute acquisition. Thus one who passively receives a trade secret, but neither discloses nor uses it, would not be guilty of misappropriation."). Lastly, any *possession* by MoFo or Stroz certainly cannot be evidence of *use* of trade secrets by Uber, and cannot be admitted for that purpose.

Otto Trucking joins and adopts Uber's response to the extent this question is relevant to

Otto Trucking. Under no circumstances should MoFo's or Stroz's possession of any materials at issue be considered unlawful acquisition or use by Otto Trucking. Otto Trucking is an entity that is completely separate from Uber and Ottomotto. Otto Trucking merely has a joint defense relationship with MoFo by nature of MoFo's representation of Uber and Ottomotto. Earlier in this case, MoFo also served as joint counsel to Ottomotto, Uber, and Otto Trucking. However, such a joint representation does not automatically confer a custodial relationship over materials obtained for a different client. There is no agency or other custodial relationship that would impute their possession of any materials onto Otto Trucking.

**Question 8:** Both sides should lay out their affirmative evidentiary case on what Uber or its counsel knew and when they knew it, so that we can evaluate which actual items of proof ought to be challenged in limine. (This should be at least <u>three</u> of your fifteen pages.)

Uber's affirmative evidentiary case on these matters is set forth below. Uber is still conducting witness interviews and its factual investigation, and thus this filing does not limit the evidence that Uber will present at trial.

- Prior to the filing of this lawsuit, no one at Uber knew that Levandowski had downloaded any Google proprietary information for any improper purpose or that he had deliberately taken any Google proprietary information with him when he left Google, as now alleged by Waymo.
- No one at Uber ever asked Levandowski to download or take Google information or endorsed him doing so.
- Uber prohibits new employees, including Levandowski, from bringing or using any proprietary information of their former employers to Uber and takes precautions to prevent new employees from bringing or using such information in the performance of their duties at Uber.
- Levandowski signed an employment agreement with Ottomotto stating that "We wish to impress upon you that we do not want you to, and we hereby direct you not to, bring with you any confidential or proprietary material of any former employer or to violate any other obligations you may have to any former employer." Ottomotto Employment Agrmt.

(Dkt. 660-1).

- Levandowski also signed an employee invention assignment and confidentiality agreement with Ottomotto in which he represented: "I will not bring with me to the Company or use in the performance of my duties for the Company any documents or materials or intangibles of my own or of a former employer or third party that are not generally available for use by the public or have not been legally transferred to the Company."  (UBER00006920)

- Likewise, when Levandowski joined Uber, he signed an employment agreement with Uber in which he promised not to "use or disclose any trade secrets or other proprietary information or intellectual property in which you or any other person has any right, title, or interest and your Employment will not infringe or violate the rights of any other person."  Uber Employment Agrmt. (Dkt. 661-1).

- In his employment agreement with Uber, Levandowski also agreed to "represent and warrant to the Company that you have returned or destroyed all property and confidential information belonging to any prior employer."  Uber Employment Agrmt. (Dkt. 661-1).

- In his confidential information and invention assignment agreement with Uber, Levandowski represented to Uber: "I will not disclose to the Company or use any inventions, confidential or non-public proprietary information or material belonging to any previous client, employer or any other party. I will not induce the Company to use any inventions, confidential or non-public proprietary information, or material belonging to any previous client, employer or any other party."  (UBER00017092)

- Uber employees, including John Bares, impressed upon Levandowski the importance of not relying on proprietary information of prior employers, including but not limited to Google.  Uber instructed Levandowski not to bring such information to Uber or use such information in the performance of his duties at Uber, and Bares never knew of Levandowski having taken Google proprietary information with him when he left Google.  Bares Dep. Tr. at 49-50.

- Sometime prior to March 11, 2016, Levandowski told his Ottomotto and Otto Trucking

1  (collectively, "Otto") colleague Lior Ron that he had found five discs in his home that
2  contained Google information. Ron Dep. Tr. at 26. Ron asked Levandowski if this
3  information had ever touched any Otto system or had been used at Otto, and was told that
4  it had not. *Id.* at 27. Ron also told Levandowski that he should discuss this with his
5  lawyers and Otto's lawyers, and that he should report this fact to Uber. *Id*. Levandowski
6  did not tell Ron that he had downloaded any Google proprietary information for any
7  improper purpose or that he had deliberately taken any Google proprietary information
8  with him when he left Google. Instead, Levandowski reported that these five discs were
9  still in his home from the time when he used to work at Google. *Id*. at 26.

- On March 11, 2016, as Ron had advised, Levandowski reported to Uber executives Travis Kalanick, Cameron Poetzscher, and Nina Qi that he had found five discs in his home with Google information. Kalanick emphatically told Levandowski that Uber did not want any such information, that Levandowski should not bring any such information to Uber, and to talk to his lawyer. *See* Poetzscher Dep. Tr. at 249-56; Qi Dep. Tr. at 278-285; Ron Dep. Tr. at 29-31. The instruction that Levandowski was not to bring any Google proprietary information to Uber was consistent with other instructions Levandowski had previously received and with the written agreements he was required to sign.

- Later in the day on March 11, 2016, Levandowski conveyed to Ron that he had destroyed the discs, and Ron conveyed this to Qi. Shortly thereafter, Levandowski also conveyed to Poetzscher that he had destroyed the discs. Qi Dep. Tr. at 289; Poetzscher Dep. Tr. at 258; Ron Dep. Tr. at 264-66.

- During these conversations, Levandowski did not tell or suggest to Kalanick, Poetzscher, or Qi that he had downloaded any Google proprietary information for any improper purpose or that he had deliberately taken any Google proprietary information with him when he left Google, as Waymo now alleges occurred.

- Uber is not aware of any communication between Levandowski and anyone employed by Uber that predates the filing of this lawsuit and in which Levandowski communicated that he had downloaded any Google proprietary information for any improper purpose or that

he had deliberately taken any Google proprietary information with him when he left Google, as Waymo now alleges occurred.

- With the filing of this lawsuit, Uber first learned that Waymo believed and was alleging that Levandowski had deliberately downloaded Google proprietary information with the intent to take it with him and that Levandowski took that information with him when he left Google.

- Waymo's allegations in this lawsuit, and subsequent presentation of evidence of Levandowski's downloading, was the first time that anyone at Uber learned that Levandowski may have engaged in improper downloading and theft of Google information as alleged by Waymo.

- Uber believes that the downloading of files by Levandowski had nothing to do with Levandowski's future employment at Uber. This is consistent with the complete lack of evidence that such files exist at, or have ever been used by, Uber. Rather, Uber believes that the downloading was done in relation to Levandowski's employment at Google, specifically to ensure the expected payment of Levandowski's $120 million bonus from Google. Of that total bonus, approximately $50 million was payable as of October 2015, but was paid in late December 2015, and approximately $70 million was paid in August 2016. Uber's factual investigation and discovery is ongoing but we anticipate presenting this and other evidence at trial.

- Uber never used any Google trade secrets or patented technology in the development of the technology at issue in this case.

- No Uber employee is aware of Levandowski ever using any Google proprietary information in the performance of his duties at Ottomotto or Uber. In fact, Uber engineers will testify about how they independently developed Uber's technology.

- In March 2017, within approximately a month of the filing of this lawsuit, Levandowski asserted his Fifth Amendment right against self-incrimination.

- In Spring 2017, Uber made formal demands of Levandowski, including specifically that he cooperate in Uber's investigation, fact gathering, and defense of the lawsuit, and in

particular demanded that Levandowski return anything belonging to Waymo that he might still have in his possession or control.

- After Levandowski failed to cooperate as directed, Uber terminated Levandowski's employment by letter dated May 26, 2017.

This response to the Court's question is based on non-privileged information. As discovery proceeds, and if the Court's ruling regarding the Stroz Report remains in place, Uber will be able to supplement this response with additional information. In addition, Uber is still investigating and taking discovery on the alleged downloads, and reserves the right to further challenge and rebut the inferences Waymo is trying to draw.

Otto Trucking joins and adopts Uber's response to the extent this question is relevant to Otto Trucking. Otto Trucking further states that at trial, Otto Trucking intends to produce at least two witnesses who will testify and introduce evidence that Otto Trucking is separate from Uber and Ottomotto, has no employees, and never received or was in possession of any of Waymo's trade secrets.

**Question 9:** At trial, will either side introduce summary evidence or present results of internal investigations? If so, what specifically? For example, does either side expect to present a witness to testify that many employees were interviewed and none of them ever received any information about Waymo, or that many gigabytes of Uber emails were searched for keywords and none showed traces of Waymo trade secrets? If so, make your specific offer of proof and explain how it would avoid hearsay problems and why it would be admissible.

Yes. At trial, Uber intends to introduce evidence of its extensive and comprehensive efforts, both prior to and after the Court's Preliminary Injunction Order, to locate in Uber's files any copies of the "Downloaded Materials." Such evidence will include expert testimony about the search and whether there were file name or hash value matches for the 14,000 allegedly downloaded files, and potentially testimony from Uber personnel about file name or hash value matches. Such evidence also may potentially include testimony from outside counsel about any other non-privileged aspects of the search. This evidence is relevant to showing that Uber never acquired or used any of the purported trade secrets allegedly contained within the Downloaded Materials. There are no hearsay issues because Uber will present this evidence through a forensic expert that either participated in, or is familiar with, this work, and through Uber personnel or

1  outside counsel, including counsel for Waymo, who were percipient witnesses in connection with
2  the subject matter of the testimony.

3  Should it become necessary, Uber will also present evidence of its numerous interviews
4  with employees, officers, directors, and suppliers pursuant to this Court's Preliminary Injunction
5  Order to determine whether any of them saw or heard the Downloaded Materials.  This evidence
6  is admissible under Federal Rules of Evidence 803(6) and 807 because these interviews were
7  conducted by officers of the Court—attorneys at MoFo—pursuant to a Court order, for the
8  purpose of reporting information to the Court, and conducting investigations is an activity
9  regularly performed by attorneys.  MoFo attorneys would testify as to the number of interviews
10 and the fact that, to date, none of the persons interviewed reported having seen or heard the
11 Downloaded Materials outside of the allegations in this case or press reports of same.  In this
12 regard, attorneys would provide testimony only on efforts to comply with this Court's
13 Preliminary Injunction Order.

14 Alternatively, or in addition, Uber may offer testimony from an expert who will opine on
15 the adequacy of Uber's efforts to locate any of the Downloaded Materials.  There are no hearsay
16 issues because such expert could base his opinion on information obtained from another of Uber's
17 testifying experts, Uber personnel, and/or outside counsel, irrespective of the admissibility of that
18 underlying data, pursuant to Federal Rule of Evidence 703.

19 Uber does not intend to introduce any evidence, summary or otherwise, of any privileged
20 "internal investigation."  It will not introduce evidence of the Stroz due diligence if the Court's
21 ruling regarding the Stroz Report is reversed.  If that ruling stands, however, then the Stroz
22 Report becomes non-privileged evidence on which Uber may rely.  There would be no hearsay
23 issues because a forensic expert from Stroz could explain the process and results.

24 Otto Trucking joins and adopts Uber's response to the extent this question is relevant to
25 Otto Trucking.  Otto Trucking further states that at trial, Otto Trucking intends to produce at least
26 two witnesses who will testify and introduce evidence that Otto Trucking is separate from Uber
27 and Ottomotto, has no employees, and never received or was in possession of any of Waymo's
28 trade secrets.

**Question 10:** At trial, will either side introduce in evidence the privilege logs or information gleaned therefrom? If so, what information will be presented, by which sponsoring witness, and for what purpose?

No. Uber will not introduce privilege logs or their contents at trial, and Waymo should not be permitted to do so. Privilege logs are not trial evidence; they are tools to facilitate discovery. The fact that a privilege claim may be challenged and overruled during discovery only means that the withheld information can be used at trial, like any other non-privileged evidence.

The privilege logs are also irrelevant to Waymo's claims (and thus must be excluded under Rule 402), and their contents are inadmissible hearsay. Even assuming Waymo could clear those hurdles, their use at trial would be far more prejudicial than probative, and confusing to the jury, under Rule 403. The only reason Waymo would want to tell the jury about Uber's logs is to encourage the jury to draw an impermissible adverse inference against Uber based on the invocation of privilege or work-product protection. *See, e.g.*, *Knorr-Bremse Sys.*, 383 F.3d at 1344 ("no adverse inference shall arise from invocation of the attorney-client and/or work product privilege"); Dkt. 641 at 1-3.

If Waymo were permitted to present evidence of these logs, the proceedings would quickly devolve from a trial on the elements of Waymo's claims to a mini-trial on the standards and propriety of invoking privilege. Adding to the confusion, the jury would need to be instructed that it cannot speculate on the contents of logged documents, that Uber has an absolute right not to disclose privileged information, and that the jury cannot consider the fact that Uber did not disclose such communications. *See, e.g.*, CACI No. 215 (Exercise of a Communication Privilege). But there should be no need for any such curative instruction because there should not be any disclosure of privilege logs that could lead to prejudice in the first place.

Otto Trucking does not intend to introduce its privilege logs or information gleaned from those logs.

//
//
//
//

| | | |
|---|---|---|
| 1 | Dated:     June 28, 2017 | MORRISON & FOERSTER LLP |
| 2 | | BOIES SCHILLER FLEXNER LLP |
| 4 | | By:  */s/ Karen L. Dunn*<br>        Karen L. Dunn |
| 5 | | Attorneys for Defendants<br>UBER TECHNOLOGIES, INC. and<br>OTTOMOTTO LLC |
| 7 | | GOODWIN PROCTER LLP |
| 10 | | By:  */s/ Neel Chatterjee*<br>        Neel Chatterjee |
| 11 | | Attorneys for Defendant<br>OTTO TRUCKING LLC |

**ATTESTATION OF E-FILED SIGNATURE**

I, Karen L. Dunn, am the ECF User whose ID and password are being used to file this Declaration. In compliance with General Order 45, X.B., I hereby attest that Neel Chatterjee has concurred in this filing.

Dated: June 28, 2017                         */s/     Karen L. Dunn*
                                                              Karen L. Dunn