ANGELA L. PADILLA (CA SBN 154863)
angela.padilla@uber.com
NICOLE T. BARTOW (CA SBN 189655)
nbartow@uber.com
AARON BERGSTROM (CA SBN 264751)
abergstrom@uber.com
UBER TECHNOLOGIES, INC.
1455 Market Street, 4th Floor
San Francisco, California 94103
Telephone: (415) 533-7652

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendant. | Case No.   3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S SUPPLEMENTAL ACCOUNTING PURSUANT TO PARAGRAPH FOUR OF MAY 11, 2017 PRELIMINARY INJUNCTION ORDER**<br><br>Ctrm:   8, 19th Floor<br>Judge:  The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

Pursuant to the Court's May 11, 2017 Order Granting in Part and Denying in Part Plaintiff's Motion for Provisional Relief ("PR Order"), Defendants Uber Technologies, Inc. ("Uber") and Ottomotto LLC (collectively "Defendants") provide the following supplemental accounting to their June 23, 2017 submission setting forth persons who have seen or heard any part of any downloaded materials, or potentially downloaded materials,[1] what they saw or heard, when they saw or heard it, and for what purpose. Defendants also describe below the chains of custodians for copies of downloaded materials. Through counsel Defendants made inquiries of individuals at Uber, members of Uber's Board of Directors, Stroz Friedberg LLC, Morrison & Foerster LLP, Cooley LLP, Levine & Baker LLP, external counsel for Uber, Donahue Fitzgerald LLP (both individually and as counsel for Anthony Levandowski), Rogers Joseph O'Donnell, PC (as counsel for John Gardner), Ramsey & Ehrlich LLP (as counsel for Anthony Levandowski), suppliers, and O'Melveny & Myers LLP, which included individuals identified on Defendants' privilege logs.

Nothing in this accounting is an admission by Defendants of the relevance or admissibility of any information, for any purpose. Defendants reserve all objections as to competency, relevance, materiality, privilege, or admissibility related to the use of any information in this accounting as evidence for any purpose whatsoever in any subsequent proceeding in this trial or any other action. Defendants do not waive, intentionally or otherwise, any attorney-client privilege, work-product immunity, joint defense or common-interest privilege or any other privilege, immunity, or other protection that may be asserted to protect information from disclosure.

---

[1] "Downloaded materials" was defined by the Court as "any and all materials that Anthony Levandowski downloaded from Waymo and kept upon leaving Waymo's employment, regardless of how long he kept them for and whether or not any such materials qualify as trade secrets or proprietary or confidential information." For purposes of this accounting, some individuals had seen or heard information that was obtained from Anthony Levandowski and from other custodians, but did not know specifically which custodian that information had been obtained from or whether that information was downloaded by Anthony Levandowski from Waymo. Accordingly, out of an abundance of caution, this accounting uses the term "potentially downloaded information" to mean information that could have been obtained from Anthony Levandowski's devices and that may be of uncertain origin.

DEFTS' SUPP. ACCTING PER PARAGRAPH FOUR OF MAY 11, 2017 PRELIM INJUNCTION ORDER
Case No. 3:17-cv-00939-WHA

1

## I. UBER TECHNOLOGIES, INC.

Defendants sent a survey to every employee at Uber (over 11,000 individuals) and through counsel interviewed over 160 employees who responded that they had communications with Anthony Levandowski about LiDAR. Through counsel Defendants verbally confirmed with each of those individuals that none of them has seen or heard content of downloaded materials. Defendants through counsel have also interviewed former Uber CEO Travis Kalanick. Mr. Kalanick confirmed that he has not seen or heard downloaded materials.

## II. STROZ FRIEDBERG LLC AND EPIQ SYSTEMS, INC.

Stroz Friedberg collected and imaged Anthony Levandowski's personal devices for the purpose of preparing a due diligence report. Through counsel Defendants interviewed 61 individuals at Stroz Friedberg, including Stroz Friedberg individuals identified on Defendants' privilege logs. The following individuals at Stroz Friedberg saw portions of potentially downloaded materials at various times between March 2016 and the present for the purposes of preparing the due diligence report. These individuals viewed portions of potentially downloaded materials on Stroz Friedberg's internal server using Stroz Friedberg's Relativity viewer: Tara Allport, Cristina Antalik, Judith Branham, Hanley Chew, Mitchell Dobi, Eric Friedberg, Mary Fulginiti, Christine Gabitass, Jessica Madore, Melanie Maugeri, Kenneth Mendelson, Christine Oropeza, Joe Shapiro, Sharat Sridhar, Aditi Tatti, Charles Wille, and Wendy Wu. These individuals confirmed that they did not send any downloaded materials to Defendants.

As set forth in Section IX.A. below, Relativity data including potential downloaded materials was sent on an encrypted hard drive to Epiq Systems, Inc. ("Epiq") as a litigation support vendor. The following individuals at Epiq viewed portions of potentially downloaded materials on Epiq's internal server using Epiq's Relativity viewer: Horace Lebiga, Pranav Desai and Sashikumar Govindasamy. Epiq confirmed that it did not send any downloaded materials to Defendants.

## III. MORRISON & FOERSTER LLP

Individuals at Morrison & Foerster viewed potentially downloaded materials in connection with the firm's representation of Uber in its acquisition of Ottomotto, as well as the

firm's representation of Anthony Levandowski and Lior Ron in the *Google Inc. v. Levandowski and Ron* arbitration. Through counsel Defendants interviewed 30 individuals at Morrison & Foerster, including Morrison & Foerster individuals identified on Defendants' privilege logs. From April 2016 until the time this litigation was filed, the following individuals at Morrison & Foerster read or viewed the exhibits to Stroz Friedberg's due diligence report: Elizabeth Balassone (after the arbitration was filed), Shouvik Biswas (August 2016), Sarah Davis (after the arbitration was filed), Anna Ferrari (August 2016), Teresa MacLean (after the arbitration was filed), Eric Tate (August 2016), Diek Van Nort (August 2016), Ethel Villegas (August 2016), and Ben Williams (after the arbitration was filed). Anna Ferrari, a Morrison & Foerster associate who has been on maternity leave since January 2017, assisted Mr. Tate in providing legal advice to Uber at the time of the acquisition. At that time, Ms. Ferrari would have had access to the due diligence report and exhibits to the due diligence report and would have also reviewed additional information that may or may not have included downloaded materials. Similarly, Mr. Tate would have reviewed additional information that may or may not have included downloaded materials. Elizabeth Balassone, Anna Ferrari, and Benjamin Williams reviewed potentially downloaded materials in Stroz Friedberg's Relativity database. All individuals confirmed that they did not send any downloaded materials to Defendants.

### IV.    COOLEY LLP AND LEVINE & BAKER LLP

Through counsel Defendants interviewed the individuals from Cooley and from Levine & Baker identified on Defendants' privilege logs. None of these individuals has seen or heard content from downloaded materials.

### V.    EXTERNAL COUNSEL

Through counsel Defendants interviewed external counsel who are not counsel of record. Tom Nolan, Daniel Olmos, and Serenity Wang of Nolan Barton Olmos received the report from Angela Padilla of Uber and received the exhibits from Esther Villegas of Morrison & Foerster after this litigation was filed, for the purpose of rendering legal advice. Patrick Robbins, Matt Berkowitz, and Daniel Laguardia, of Shearman and Sterling, received the report and exhibits after

this litigation was filed, from Morrison & Foerster, for the purpose of rendering legal advice. These individuals confirmed that no additional copies were circulated. These individuals confirmed that they did not send any downloaded materials to Defendants.

### VI. ANTHONY LEVANDOWSKI AND COUNSEL

Through counsel, Defendants attempted to interview individuals at Donahue Fitzgerald who appear on Defendants' privilege log. Through counsel Defendants sent three emails to John Gardner requesting an interview, on June 13, June 19, and June 20. Defendants' counsel's June 20 email also requested an interview with Anthony Levandowski. No response has been received. Also on June 20, through counsel, Defendants sought an interview with John Gardner through his counsel, Merri Baldwin of Rogers Joseph O'Donnell, P.C., who did not respond to Defendants' request.

Through counsel, Defendants contacted Miles Ehrlich of Ramsey & Ehrlich LLP on May 18 to request a search of Anthony Levandowski's personal emails and devices, including text messages from his personal phone. Mr. Ehrlich responded asking for detailed guidance on search terms, which Defendants' counsel provided: LiDAR, LaDAR, and the full names of each technology. Through counsel Defendants emailed Amy Craig of Ramsey & Ehrlich on May 23 asking for an update and received a same-day response that Ramsey & Ehrlich had finished a review and that the number of responsive documents "will be pretty low." Defendants through counsel replied that same day asking for the search terms used and sources searched, but received no response. Defendants through counsel again requested an update on May 24 and 25, and in the May 25 request arranged a meeting with Ms. Craig, but Ms. Craig did not attend the meeting. Later, on May 31, Defendants through counsel again called Ms. Craig, asking for assistance compiling the log of communications about Anthony Levandowski's conversations with others regarding LiDAR. Ms. Craig responded that she had collected some communications but had not yet decided whether to share them with Uber or produce them to Waymo. During that conversation, Ms. Craig asked for, and Defendants provided, a shell for logging the communications. Every week, on Tuesday or Wednesday between May 31 and June 22, counsel

for Defendants called Ms. Craig regarding document collection progress and whether Anthony Levandowski would appear for an interview, which efforts were reported weekly to the Special Master. Finally, on June 22, counsel for Defendants again called Ms. Craig, but she stated that Ramsey & Ehrlich had decided they could not cooperate with Defendants' requests. In addition, through counsel Defendants contacted Miles Ehrlich of Ramsey & Ehrlich LLP on June 22 to request an interview of Mr. Levandowski, but Mr. Ehrlich declined the request that same day based on Mr. Levandowski's Fifth Amendment rights.

### VII. SUPPLIERS

Through counsel Defendants attempted to obtain responses from two suppliers, Oryx Vision and Princeton Lightwave, who had responded to a survey indicating that they had communications with Anthony Levandowski related to LiDAR, to determine whether they had seen or heard downloaded materials.

**Oryx Vision.** Through counsel Defendants called Oryx Vision on June 19, 20 and 21, but were unable to leave voicemails. Through counsel Defendants emailed Oryx Vision on June 21, 2017, asking to schedule a teleconference without success. Counsel for Oryx Vision contacted Defendants' counsel on June 25, 2017, requesting additional information. Defendants' counsel responded on June 27, 2017, describing the information required in this accounting and are awaiting a further substantive response with the requested information.

**Princeton Lightwave.** Defendants' counsel also reached out to Princeton Lightwave by phone on June 19, 20, and 21, and spoke with Princeton Lightwave's CEO. Defendants' counsel was unsuccessful in conducting interviews because Princeton Lightwave directed Defendants to make a written request for information. Accordingly, on June 22, 2017, Defendants' counsel emailed Princeton Lightwave asking it to confirm whether or not, to its knowledge, it ever saw or heard any materials that it believed Anthony Levandowski downloaded from Waymo during his employment at the company and kept after leaving Waymo. Upon receipt of Defendants' written request, Princeton Lightwave directed Defendants to speak with its counsel. On June 22, 2017, Defendants' counsel spoke with Princeton Lightwave's counsel reiterating Defendants' request

for information.  Later on June 22, 2017, Princeton Lightwave's counsel, William Davis of Mintz Levin, provided an email response indicating that counsel needs time to conduct an investigation to determine whether they possess any relevant information.  On June 27, Defendants through counsel again spoke with Princeton Lightwave's counsel, who stated that employees have no knowledge about any downloaded materials.

## VIII. O'MELVENY & MYERS LLP

Through counsel, Defendants have attempted to conduct interviews with lawyers from O'Melveny & Myers who appear on Uber's privilege log.  Specifically, on June 13, Defendants through counsel emailed Paul Sieben, Eric Amdursky, Kyle Uhlman, Andy Trafford, and Hayley Reynolds of O'Melveny & Myers to arrange interviews.  O'Melveny's general counsel, Martin S. Checov, responded by email dated June 14, 2017 (included in Exhibit A hereto) to Defendants' counsel Brian Kramer on behalf of the O'Melveny attorneys, informing Mr. Kramer that because Google is a client of O'Melveny its lawyers will not voluntarily assist Uber with its inquiry without the informed written consent of Google.  O'Melveny explained that it does not represent Google in the instant action and asked Mr. Kramer to obtain the consent from Google through appropriate contacts.  On June 15, 2017, Morrison & Foerster contacted Quinn Emanuel to attempt to obtain such consent.  Quinn Emanuel—in the attached June 16, 2017 email from David Perlson to Wendy Ray of Morrison & Foerster (also included in Exhibit A hereto)—informed Ms. Ray that it did not think her request was "appropriate" and directed Morrison & Foerster back to O'Melveny.

## IX. CHAIN OF CUSTODIANS FOR DOWNLOADED MATERIALS OR DUE DILIGENCE REPORT REFERENCING DOWNLOADED MATERIALS

### A. Drives Containing Potentially Downloaded Materials

Stroz Friedberg received Anthony Levandowski's devices from Anthony Levandowski and imaged them on March 22, 2016, as part of the due diligence project.  Stroz retained all personal devices except for Mr. Levandowski's phone.  Stroz made and retained two copies of the forensic image.  User-generated content was extracted and processed into a Relativity server for

review, and the remaining content was evaluated by Stroz Friedberg's forensic team. Two copies of the Relativity data were created: one was sent to John Gardner as counsel for Mr. Levandowski and the other was sent to Epiq at the request of Morrison & Foerster in its capacity as counsel for Mr. Levandowski in the *Google v. Levandowski and Ron* arbitrations and currently is being stored at Epiq.

### B. Copies of the Due Diligence Report Without Exhibits[2]

The following individuals received copies of the due diligence report without exhibits:

- Wendy Wu and Tara Allport of Stroz Friedberg, who received it from Mary Fulginiti at Stroz Friedberg on August 5, 2016 and August 6, 2016, respectively, for the purpose of the due diligence project;

- Eric Tate and Anna Ferrari of Morrison & Foerster, who received it on August 5, 2016 from Mary Fulginiti at Stroz Friedberg, for the purpose of rendering legal advice;

- Colette Reiner Mayer of Morrison & Foerster, who received it in October 2016 from Eric Tate or Anna Ferrari, for the purpose of rendering legal advice;

- John Gardner of Donahue Fitzgerald, who received it on August 5, 2016, from Mary Fulginiti, for the purpose of rendering legal advice;

- Eric Amdursky of O'Melveny & Myers, who received it on August 5, 2016, from Mary Fulginiti, for the purpose of rendering legal advice;

- Angela Padilla and Justin Suhr, of Uber's internal legal team, who received it August 6, 2016 from Anna Ferrari (Justin Suhr received it again from Eric Tate after this litigation was filed), for the purpose of rendering legal advice;

- Christian Lymn, of Uber's internal legal team, who received it on August 6, 2016, from Justin Suhr, for the purpose of rendering legal advice;

---

[2] The due diligence report does not contain downloaded material; therefore the individuals disclosed in this section (except as noted in other sections of this accounting) have not "seen or heard downloaded materials."

- Adam Bentley, of Uber's internal legal team, who received it on August 7, 2016, from Eric Amdursky, for the purpose of rendering legal advice;
- Andrew Glickman and Robert Wu, of Uber's internal legal team, who received it after this litigation was filed from Christian Lymn, for the purpose of rendering legal advice;
- Nicole Bartow, of Uber's internal legal team, who received two copies after this litigation was filed, one from Andrew Glickman and one from Eric Tate, for the purpose of rendering legal advice;
- Aaron Bergstrom, of Uber's internal legal team, who received it after this litigation was filed from Nicole Bartow, for the purpose of rendering legal advice;
- Todd Hamblet, of Uber's internal legal team, who received it after this litigation was filed from Andrew Glickman, for the purpose of rendering legal advice;
- Salle Yoo, of Uber's internal legal team, who received it after this litigation was filed from Nicole Bartow, for the purpose of rendering legal advice;
- Kristina Bunting, Martin Flumenbaum, Evan Kubota, and Kaveri Vaid of Paul Weiss (who received it after this litigation was filed from then-Uber board member Bill Gurley), for the purpose of rendering legal advice;
- Former Uber board member Bill Gurley (who received it after this litigation was filed from Uber in-house counsel Angela Padilla), for the purpose of advising the board;
- Former Uber board member David Bonderman (who received it after this litigation was filed from Uber's in-house counsel but could not specifically remember the individual who sent it; Mr. Bonderman subsequently shredded his copy), for the purpose of advising the board;
- Uber board member Arianna Huffington (who received it after this litigation was filed from Uber's in-house counsel but could not specifically remember the individual who sent it), for the purpose of advising the board;

- Melinda Haag and Walter Brown of Orrick (who received it after this litigation was filed from external counsel Tom Nolan), for the purpose of rendering legal advice; and

- Anthony Levandowski and Lior Ron. Defendants have not been able to determine when and from whom Mr. Levandowski and Mr. Ron received the report.

### C. Copies of the Due Diligence Report With Exhibits

Defendants provide the following the location of copies of the due diligence report and its exhibits. Two copies reside on Morrison & Foerster's shared drive accessible only to members of this case team; Eric Tate and Teresa MacLean from Morrison & Foerster have copies in their offices;[3] electronic copies of the due diligence report, the addendum to the due diligence report, and certain exhibits to the due diligence report reside in Morrison & Foerster's email records; Tom Nolan, Daniel Olmos, and Serenity Wang received the report from Angela Padilla of Uber and received the exhibits from Esther Villegas of Morrison & Foerster after this litigation was filed; and Patrick Robbins, Matt Berkowitz, and Daniel Laguardia of Shearman and Sterling were sent the report and exhibits after this litigation was filed by Morrison & Foerster. Alisa Baker of Levine & Baker has a copy of the report that she received from Mary Fulginiti at Stroz Friedberg on August 5, 2016. Ms. Baker received documents to review in April 2016 from Stroz Friedberg that later were incorporated as exhibits to the due diligence report, but she did not receive anything that contained downloaded material.

### D. Other Potentially Downloaded Materials

Defendants state on information and belief that Anthony Levandowski identified five disks in his possession that he believed may have contained downloaded material. As described in Uber's response to expedited Interrogatory No. 1, Mr. Levandowski reported this information in a meeting on March 11, 2016, and subsequently stated that he destroyed those disks.

---

[3] In Defendants' original accounting, filed on June 23, 2017, Defendants disclosed that two Morrison & Foerster partners and one associate had a copy of the report and exhibits in their offices. Defendants have since clarified that Morrison & Foerster partner Colette Reiner Mayer only has a copy of the report without exhibits and is listed in Section IX.B. of this accounting; partner Eric Tate and associate Teresa MacLean have copies of the report with exhibits.

Defendants have never seen those disks and do not know whether those disks did in fact contain downloaded material.

Dated: June 28, 2017                                  UBER TECHNOLOGIES, INC.

                                                      By: */s/ Aaron J. Bergstrom*
                                                          AARON J. BERGSTROM

                                                      Attorneys for Defendants
                                                      UBER TECHNOLOGIES, INC.
                                                      and OTTOMOTTO LLC

**VERIFICATION**

I, Aaron Bergstrom, declare:

I am Senior Counsel, Litigation for Uber Technologies, Inc. ("Uber"), and am an authorized representative of Uber.

I have reviewed the foregoing DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S SUPPLEMENTAL ACCOUNTING PURSUANT TO PARAGRAPH FOUR OF MAY 11, 2017 PRELIMINARY INJUNCTION ORDER ("Supplemental Accounting").

The matters stated in the Supplemental Accounting are not wholly within my personal knowledge. I have read the foregoing Supplemental Accounting, know the contents thereof and, upon information and belief, state that they are true based on my own personal knowledge and/or information obtained from Uber's records and files and from Uber's employees and/or agents.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 28, 2017 at San Francisco, California.

*/s/ Aaron J. Bergstrom* .
AARON J. BERGSTROM