1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   ERIC A. TATE (CA SBN 178719)
    ETate@mofo.com
4   RUDY Y. KIM (CA SBN 199426)
    RudyKim@mofo.com
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California  94105-2482
    Telephone:     415.268.7000
7   Facsimile:     415.268.7522

8   KAREN L. DUNN (*Pro Hac Vice*)
    kdunn@bsfllp.com
9   HAMISH P.M. HUME (*Pro Hac Vice*)
    hhume@bsfllp.com
10  BOIES SCHILLER FLEXNER LLP
    1401 New York Avenue, N.W.
11  Washington DC  20005
    Telephone:     202.237.2727
12  Facsimile:     202.237.6131

13  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
14  and OTTOMOTTO LLC

15                UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                 SAN FRANCISCO DIVISION

18

19  WAYMO LLC,                          Case No.       3:17-cv-00939-WHA

20              Plaintiff,              **UBER'S LIST OF OPINIONS FOR
                                        CASE-IN-CHIEF AT TRIAL**
21         v.                           **PURSUANT TO DOCKET NO. 669
                                        AND 697**
22  UBER TECHNOLOGIES, INC.,
    OTTOMOTTO LLC; OTTO TRUCKING LLC,
23                                      Trial Date: October 10, 2017
                Defendant.
24

25

26

27

28

1   Pursuant to the Court's June 21, 2017 Order and June 22, 2017 Notice and Supplement to

2   Order (Dkt. 669 and 697), Uber Technologies, Inc. and Ottomotto LLC ("Uber") submit the

3   following list of trial witnesses, both retained and non-retained, who are expected to give any

4   opinion testimony in Uber's case-in-chief at trial (including those who will also give fact

5   testimony).[1]

6   ## A.   Dr. Paul McManamon

7   Dr. McManamon is a retained expert witness for Uber.  Uber expects to call Dr.

8   McManamon to testify regarding (1) background information about the LiDAR and self-driving

9   vehicle technology at issue in the case; (2) Uber's defenses to Waymo's trade secret

10   misappropriation claims based on non-use, independent development, public knowledge, and/or

11   the readily ascertainable nature of Waymo's asserted trade secrets, including without limitation

12   the asserted trade secrets identified by Waymo in response to Uber's Interrogatory No. 1; (3) the

13   technical value of the asserted trade secrets; (4) the time that it would take a competitor to

14   replicate the asserted trade secrets from public information or to develop the asserted trade secrets

15   without misappropriation; and (5) potential design-arounds.  Dr. McManamon is also expected to

16   testify about the '922 and '464 patents, including (1) the state of the art; (2) the level of a person

17   of ordinary skill in the art at the time of filing of the two patents; (3) disclosed embodiments;

18   (4) how a person of ordinary skill would interpret the claim language in view of the intrinsic

19   record; (5) invalidity of the asserted claims; (6) non-infringement of the asserted claims; (7) non-

20   infringing alternatives; and (8) potential design-arounds.  Dr. McManamon is also expected to

21

22

23   [1] Pursuant to the Court's June 21, 2017 Order (Dkt. 669), Uber has identified every
witness expected to give opinion testimony with as much specificity as is now possible.  But, as
24   set forth in Defendants' motion to compel (Dkt. 687), Waymo has refused to respond to
interrogatories or produce documents fundamental to Uber's defenses.  If and when Waymo
25   fulfills its interrogatory response and document production obligations, Defendants may
supplement this list of opinions based on information not currently known to Defendants.
26   Furthermore, as discovery and trial preparation progresses, and before the deadline to disclose
experts, Uber reserves its right to modify its roster of opinion witnesses and the testimony they
27   will provide, including adding or dropping witnesses, adding or dropping opinions to be offered,
or modifying the distribution of subjects among the witnesses.  For example, it may be the case
28   that one expert will testify about most of the topics addressed by Expert Nos. 6-8.

UBER'S LIST OF OPINIONS FOR CASE-IN-CHIEF AT TRIAL
Case No. 3:17-cv-00939-WHA
dc-889326

1

1   respond to any opinions offered by any expert retained by Waymo relating to Waymo's trade

2   secret misappropriation and patent infringement claims.

3   **B.   Dr. Michael Lebby**

4   Dr. Lebby is a retained expert witness for Uber.  Uber expects to call Dr. Lebby to testify

5   about (1) background information about the electro-optical system technologies and designs at

6   issue in the case; (2) Uber's defenses to Waymo's trade secret misappropriation claims based on

7   non-use, independent development, public knowledge, and/or the readily ascertainable nature of

8   Waymo's asserted trade secrets, including, without limitation, asserted trade secrets identified by

9   Waymo in response to Uber's Interrogatory No. 1; (3) the technical value of the asserted trade

10  secrets; (4) the time that it would take a competitor to replicate the asserted trade secrets from

11  public information or to develop the asserted trade secrets without misappropriation; (5) potential

12  design-arounds; and (6) the contents of the allegedly downloaded files.  Dr. Lebby is also

13  expected to testify about the '922, '464, and '936 patents, including (1) the state of the art; (2) the

14  level of a person of ordinary skill in the art at the time of filing of the three patents; (3) disclosed

15  embodiments; (4)  how a person of ordinary skill would interpret the claim language in view of

16  the intrinsic record; (5) invalidity of the asserted claims; (6) non-infringement of the asserted

17  claims; (7) non-infringing alternatives; and (8) potential design-arounds.  Dr. Lebby is also

18  expected to respond to any opinions offered by any expert retained by Waymo relating to

19  Waymo's trade secret misappropriation and patent infringement claims.

20  **C.   Retained Uber Expert No. 3**

21  Uber expects to call Expert No. 3 to testify about (1) background information about the

22  LiDAR,  self-driving vehicle technology, and/or electro-optical system technologies and designs

23  at issue in the case; (2) Uber's defenses to Waymo's trade secret misappropriation claims based

24  on non-use, independent development, public knowledge, and/or the readily ascertainable nature

25  of Waymo's asserted trade secrets, including, without limitation, asserted trade secrets identified

26  by Waymo in response to Uber's Interrogatory No. 1; (3) the technical value of the asserted trade

27  secrets; (4) the time that it would take a competitor to replicate the asserted trade secrets from

28  public information or to develop the asserted trade secrets without misappropriation; and

1    (5) potential design-arounds.  Expert No. 3 is also expected to testify about the '922, '464, and

2    '936 patents, including (1) the state of the art; (2) the level of a person of ordinary skill in the art

3    at the time of filing of the three patents; (3) disclosed embodiments; (4)  how a person of ordinary

4    skill would interpret the claim language in view of the intrinsic record, (5) invalidity of the

5    asserted claims; (6) non-infringement of the asserted claims; (7) non-infringing alternatives; and

6    (8) potential design-arounds.  Expert No. 3 is also expected to respond to any opinions offered by

7    any expert retained by Waymo relating to Waymo's trade secret misappropriation and patent

8    infringement claims.

9         **D.     Kevin Faulkner**

10        Mr. Faulkner is a digital forensic expert for Uber.  Uber expects to call Mr. Faulkner to

11   testify about the investigation by his firm Stroz Friedberg during the course of this litigation into

12   whether any Waymo downloaded material exists on the computer systems of Uber.  In addition to

13   fact testimony, Mr. Faulkner is expected to testify about (1) data collection methods and forensic

14   techniques used to search the computer systems of Uber in this case; (2) the results of Stroz

15   Friedberg's investigation during the course of this litigation; (3) the types of files in the alleged

16   Waymo downloaded materials; and (4) the techniques applied by Stroz Friedberg to eliminate

17   "false positives" from the search of the computer systems of Uber.  Mr. Faulkner is also expected

18   to respond to any opinions offered by any expert retained by Waymo on these subjects.

19         **E.     Retained Uber Expert No. 5**

20        Uber expects to call Expert No. 5 to testify about the investigation of whether any Waymo

21   downloaded material exists on the computer systems of Uber.  Expert No. 5 is expected to testify

22   about (1) data collection methods and forensic techniques used to search the computer systems of

23   Uber in this case; (2) the results of the investigation of Uber's computer systems; (3) the types of

24   files in the alleged Waymo downloaded material; and (4) the techniques applied to eliminate

25   "false positives" from the search of the computer systems of Uber.  Expert No. 5 is also expected

26

27

28

1 to respond to any opinions offered by any expert retained by Waymo on these subjects, such as

2 analysis of Google and Waymo networks and logs.[2]

3   **F.**  **Retained Uber Expert No. 6**

4    Uber expects to call Expert No. 6 to testify about the adequacy of Uber's efforts (1) to

5 ensure that trade secrets and other intellectual property of Waymo was not brought to Uber by

6 incoming employees, and (2) to investigate whether any Waymo downloaded material exists or

7 has been used within Uber.  Expert No. 6 is expected to testify about (1) corporate practices and

8 customs (including, without limitation, employment agreements and instructions to employees)

9 for ensuring that trade secrets and other intellectual property of third parties are not brought to a

10 company by incoming employees; (2) Uber's employment agreements restricting employees from

11 bringing or utilizing the trade secrets or other intellectual property of former employers; and (3)

12 the adequacy of Uber's efforts to search its computer systems, interview employees, collect and

13 review documents, submit to inspections of Uber's facilities by Waymo's counsel, and take other

14 measures to locate any Waymo downloaded material at Uber.  Expert No. 6 is also expected to

15 respond to any opinions offered by any expert retained by Waymo on these subjects.[3]

16   **G.**  **Retained Uber Expert No. 7**

17    Uber expects to call Expert No. 7 to testify about relevant Silicon Valley business

18 practices, including practices and/or customs regarding (1) employee exploration of other

19 employment options while at an employer; (2) recruiting of employees by competitors;

20 (3) sharing of information in connection with exploration of employment options and/or

21 recruiting of employees; (4) use of technical knowledge in subsequent employment; (5) employee

22

23   [2] Should the Stroz Friedberg due diligence report and other documents subject to
24 Waymo's motions to compel be produced pursuant to the Court's June 8, 2017 and June 21, 2017 Orders (Dkt. 566 and 670), Mr. Faulkner and/or Expert No. 5 are expected to testify about any
25 data collection methods and forensic techniques used in connection with the due diligence investigation.

26   [3] Should the Stroz Friedberg due diligence report and other documents subject to
27 Waymo's motions to compel be produced pursuant to the Court's June 8, 2017 and June 21, 2017 Orders (Dkt. 566 and 670), Expert No. 6 is expected to testify about the adequacy of Uber's due diligence efforts to ensure that Waymo trade secrets and other intellectual property would not be
28 brought to Uber as a result of the Otto acquisition.

1   mobility; and (6) employee side businesses.  Expert No. 7 is also expected to respond to any

2   opinions offered by any expert retained by Waymo on these subjects.

3         **H.    Retained Uber Expert No. 8**

4         Uber expects to call Expert No. 8 to testify about Uber's acquisition of Ottomotto as it

5   compares to general merger and acquisition practices in technology companies, including

6   (a) intellectual property due diligence, (b) evaluation of potential litigation, and

7   (c) indemnifications provided by parties to acquisitions.

8         **I.    Retained Uber Expert No. 9**

9         Uber expects to call Expert No. 9 to testify regarding any damages claimed by Waymo in

10  connection with Waymo's trade secret misappropriation and patent infringement claims.  Expert

11  No. 9 is expected to testify regarding (1) the absence of actual damages; (2) the absence of lost

12  profits; (3) a reasonable royalty, if any, for the use of relevant technology; (4) damages in the

13  context of emerging technologies; and (5) whether Waymo's damages claim is speculative.

14  Expert No. 9 is also expected to testify regarding whether the patented features drive demand for

15  Waymo's products.  Expert No. 9 is also expected to respond to any opinions offered by any

16  expert retained by Waymo on the subject of damages.

17        **J.    James Haslim**

18        Mr. Haslim is a senior engineering manager at Uber.  In addition to fact testimony, Mr.

19  Haslim is expected to testify about public knowledge and/or engineering knowledge of general

20  principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs

21  that Waymo claims were based on misappropriated trade secrets.

22        **K.    Scott Boehmke**

23        Mr. Boehmke is an engineering manager at Uber.  In addition to fact testimony, Mr.

24  Boehmke is expected to testify about public knowledge and/or engineering knowledge of general

25  principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs

26  that Waymo claims were based on misappropriated trade secrets.

27

28

**L.     Gaetan Pennecot**

Mr. Pennecot is an engineer at Uber.  In addition to fact testimony, Mr. Pennecot is expected to testify about public knowledge and/or engineering knowledge of general principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs that Waymo claims were based on misappropriated trade secrets.

**M.     Daniel Gruver**

Mr. Gruver is a Senior Program Manager at Uber.  In addition to fact testimony, Mr. Gruver is expected to testify about public knowledge and/or engineering knowledge of general principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs that Waymo claims were based on misappropriated trade secrets.

**N.     Dr. John Bares**

Dr. Bares is an Operations Director at Uber.  In addition to fact testimony, Dr. Bares is expected to testify about public knowledge and/or engineering knowledge of general principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs that Waymo claims were based on misappropriated trade secrets.

**O.     Florin Ignatescu**

Mr. Ignatescu is an engineer at Uber.  In addition to fact testimony, Mr. Ignatescu is expected to testify about public knowledge and/or engineering knowledge of general principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs that Waymo claims were based on misappropriated trade secrets.

**P.     Asheem Linaval**

Mr. Linaval is an engineer at Uber.  In addition to fact testimony, Mr. Linaval is expected to testify about the types of files and file names routinely created by Altium, LT Spice, and SolidWorks software, and why hash or file name matches do not establish that such files came from Waymo.

**Q.     Eric Meyhofer**

Mr. Meyhofer is Head of the Advanced Technologies Group at Uber.  In addition to fact testimony, Mr. Meyhofer is expected to testify about public knowledge and/or engineering

1    knowledge of general principles and approaches in LiDAR and related fields pertaining to

2    features in Uber's LiDARs that Waymo claims were based on misappropriated trade secrets.

3         **R.**     **Witnesses from Velodyne or other Third-Party LiDAR Suppliers**

4         Witnesses from Velodyne or other third-party LiDAR suppliers may testify about public

5    knowledge and/or engineering knowledge of general principles and approaches in LiDAR and

6    related fields pertaining to LiDAR features of relevance to this case.

7

8    Dated: June 29, 2017                    MORRISON & FOERSTER LLP

9

10

11                                           By:   */s/ Arturo J. González*
                                                  ARTURO J. GONZÁLEZ

12                                               Attorneys for Defendants
13                                               UBER TECHNOLOGIES, INC.
                                                 and OTTOMOTTO LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28