QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>    Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>    Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 731)**<br><br>**REDACTED VERSION**<br><br>**FILED PUBLICLY**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

Pursuant to Civil L.R. 72-2, Plaintiff Waymo LLC ("Waymo") respectfully submits these Objections to the Magistrate Judge's Order Regarding Uber's Privilege Log (Dkt. 731). Waymo objects to the finding that Defendants did not waive their privileges and protections.[1]

On June 8, Judge Corley compelled production of materials relating to the Stroz due diligence investigation (Dkt. 566), and this Court overruled Defendants' objections, agreeing that "defendants, Levandowski, and Ron had adverse rather than common interests in [the] investigation, and that Uber therefore waived any work-product privilege it may have had over the due diligence report by disclosing the contents of that report to adversaries." (Dkt. 685 at 10.) Following Judge Corley's order, the parties briefed several remaining issues regarding the adequacy of Defendants' privilege log entries and the status of documents post-dating the signing of the Uber-Ottomotto Put-Call Agreement on April 11, 2016. (Dkts. 637, 654, 658, & 667.) On June 26, Judge Corley ruled that Defendants had not waived privilege or protection with respect to certain post-April 11 documents. (Dkt. 731 at 3-4.) Respectfully, this holding was clearly erroneous and contrary to law. Most significantly, Defendants' operative privilege logs clearly violate this Court's requirements and therefore necessitate a finding of waiver. Defendants' logs were so deficient, Judge Corley was not even able to tell from the entries which documents remained privilege under her reasoning, requiring her to order Defendants, yet again, to provide adequate logs. (Dkt. 731 at 4-6.) Defendants are not entitled to this "do-over." Judge Corley also erred in finding that post-April 11 sharing of the remaining documents did not result in waiver because the purported joint defense group continued to have conflicting interests after this date.

**I.  The Magistrate Judge Erred In Holding That Defendants' Defective Privilege Logs Did Not Result In Waiver (Dkt. 731 at 6 ¶ 1).**

Waymo is entitled to relief because Judge Corley clearly erred in excusing Defendants' defective privilege logs. Judge Corley acknowledged "there are deficiencies with the current log." (Dkt. 731 at 6.) In fact, Judge Corley required Defendants to revise their logs by June 30 so that the parties could determine what remained privileged. (*Id.* at 5.) But, this is a process Defendants should

---

[1] Waymo does not object to the crime-fraud findings, but reserves this theory for after the due diligence materials are produced. As Judge Corley noted, her crime-fraud findings were based on the record "at this time" and "[e]vidence developed later may show otherwise." (Dkt. 731 at 3, 2.)

have done ***months*** ago;[2] their failure to do so should result in waiver.

The operative versions of Defendants' privilege logs (which were only first served in mid-June) are attached as Exhibits 1-3 of Waymo's June 16 Letter Brief. (Dkts. 636-5 (MoFo), 636-7 (OMM), & 636-9 (Uber).) Together, these logs represent over 950 pages and 3,162 privilege log entries—a remarkable number given that these logs cover a pre-litigation period spanning approximately 9 months. As the Court will see from its first-hand review, even a cursory review of these logs demonstrates that they are vague to the point of being meaningless. For example, Defendants have applied the same boilerplate descriptions to broad swaths of documents, which—stripped to their essentials—basically say: "Email," "Memorandum," or "Notes" ". . . regarding acquisition of Ottmotto." (*E.g.*, Dkt. 636-5 (entries 1-28).) When confronted with similarly vague privilege log entries back in ***April***, this Court commented that they were inadequate. (Dkt. 202 at 5 ("Even in its unredacted form some questions would remain (such as why the report was prepared, whether it referenced any of the downloaded files, and for what purpose each recipient used it).").

To provide just one example of the current deficiencies, during the June 23 hearing, Judge Corley asked for which entry corresponded to the Stroz "interim report" provided to Uber before the execution of the April 11 Put-Call Agreement. (Hr'g Tr. at 25:17-26:18.) Defendants could not immediately respond, but later in the hearing pointed to log entries 378-381. (*Id.* at 44:1-4.) But, these entries read "Email" (entry 378), "Attachment to memorandum" (entries 379-380), and "Memorandum" (entry 381) "concerning legal analysis or advice, in anticipation of litigation involving Google, regarding acquisition of Ottomotto." (Dkt. 636-5.) These entries are entirely misleading, providing Waymo and the Court no clue as to what Defendants were actually withholding.

Defendants have also used the date of cover emails for the date of associated attachments, which is problematic given the importance of dates for establishing non-waiver under Judge Corley's ruling. (Dkt. 637-9.) Defendants have used "and/or" in describing the source of certain information such that Waymo cannot tell whether an entry relates to Levandowski "and/or" another Diligenced

---

[2] Waymo repeatedly objected to Defendants' privilege log deficiencies and stated its intent to file a motion. (Dkt. 637-8.) In response, Defendants promised to amend their logs to provide accurate entries. (Dkt. 637-10.) But, the amended logs did not rectify any of Waymo's concerns.

Employee (who is not a signatory to any asserted common interest agreement). (*E.g.*, Dkt. 636-5 (e.g., entries 1, 7-10, 12-15, 17-21, 30-32.) Defendants have listed entire law firms as authors/senders rather than the specific individuals. (*E.g.*, Dkt. 636-5 (e.g., entries 59, 71, 73, 75, 91.) And, Defendants have included "common interest" as a basis for withholding pre-April 11 documents that they now claim were not shared amongst the group at all. (Dkt. 731 at 5.)

These are just the deficiencies that Waymo has identified with limited visibility into what Defendants are actually withholding. And, because Defendants' privilege logs are so boilerplate, when they eventually produce documents withheld on improper grounds (*e.g.*, the acquisition documents), it is impossible to match them to their corresponding privilege log entries. But, on June 1, Defendants produced a "cross-reference" chart matching privilege log entries to certain previously withheld documents. (Dkt. 637-13.) As Waymo has shown, these newly produced documents bore no resemblance to their original privilege log entries. (Dkt. 637-1 (Smith Decl.) ¶¶ 13-18; *Compare* Dkt. 636-11 (entry 1466), *with* Dkt. 637-15 at UBER -17202; *Compare* Dkt. 636-11 (entry 1467), *with* Dkt. 637-15 at UBER -17203; *Compare* Dkt. 636-11 (entry 1468), *with* Dkt. 637-15 at UBER -17204.) This Court's Standing Order does not permit such egregious irregularities. (Standing Order ¶ 16.) Defendants were warned as early as April 5 that the Court expected "bone crushing" detail in their privilege logs (Hr'g Tr. at 27:10-28:4), yet they have relied entirely on generalized, boilerplate, and error-ridden privilege log entries. This should result in waiver of all logged documents.

## II. The Magistrate Judge Erred In Holding That Post-April 11 Sharing Amongst Defendants And Levandowski Did Not Result In Waiver (Dkt. 731 at 1 ¶¶ 1-2).

Judge Corley also erred insofar as she allowed Defendants to maintain privilege over post-April 11 materials that were shared with Levandowski. As Uber concedes, the logs at issue were served in response to the Court's order requiring production of the downloaded materials and subsequent documents relating to the downloaded materials. (Dkt. 658 at 1; *see also* Dkt. 61 ¶ 4.) Defendants withheld documents shared with Levandowski alleging that they shared common legal interests. But now that the Court has ordered Defendants to cause Levandowski to return the stolen files (Dkt. 426 at 23 ¶ 2(b)), Defendants switched tactics and represented that they lack the authority to control Stroz or Levandowski in regards to the stolen files. (*E.g.* Dkt. 658 at 4; *see also* Dkt. 676 at 4-

5.) Defendants cannot have it both ways—either they control the materials subject to the Preliminary Injunction Order, or their interests were never really aligned with Levandowski.

Judge Corley found that Uber's Indemnification Agreement with Levandowski prevents waiver. (Dkt. 731 at 4.) But this does not necessarily create a common legal interest with respect to Levandowski's criminal activity. Indeed, proceedings in this case have vividly illustrated how, notwithstanding the Indemnity Agreement, Levandowski and Defendants have vastly diverging interests. Besides, the Indemnification Agreement itself contemplates that the interests of Levandowski and Uber would directly conflict in certain circumstances. (Dkt. 515-5 § 2.2(b).) With respect to the stolen documents (which is the subject of all of the documents on the logs in question), Defendants and Levandowski have never had aligned interests.

### III. The Magistrate Judge Erred In Holding That Post-April 11 Sharing Amongst The Purported Joint Defense Group Did Not Result In Waiver (Dkt. 731 at 4 ¶¶ 1, 2).

In addition, Judge Corley erred in holding that there was no waiver with respect to documents transmitted amongst the joint defense group after April 11, 2016. The rationale of Judge Corley's original order on Waymo's motion to compel was that members of the purported joint defense group could not have shared a common legal interest and were instead "adversaries" of one another so long as (1) the acquisition of Otto by Uber remained contingent; and (2) the scope of Uber's indemnification agreement to Otto remained in flux. But, these exact conditions were present at all times up until the transaction closed on August 23, 2016.[3]

First, Judge Corley reasoned that a common legal interest arose parties by April 11 because "[a]t the time Otto and Uber executed the Put Call Agreement, Otto, Uber, Levandowski, Ron, and Otto Trucking executed the 'Joint Defense, Common Interest and Confidentiality Agreement.'" (Dkt. 731 at 4; *see also* Dkt. 370-2.) But, the existence of a written agreement is not controlling.

---

[3] Judge Corley seemingly faulted Waymo for not distinguishing between waiver of attorney-client privilege and work product protection. (Dkt. 731 at 4 ("Such an argument, however, is relevant to waiver of attorney-client privileged material, not attorney work-product.").) But, as the parties have recognized throughout briefing this issue, the same arguments and considerations inform the "common interest" inquiry and the "not-inconsistent-with-the-adversarial-system" inquiry. Indeed, Uber agreed that under the circumstances here, the inquiries were the same. (*See* Dkt. 658 at 2 (arguing that "the common interest doctrine protected the sharing of privileged communications and work product between Uber and Ottomotto").)

*See United States v. Stepney*, 246 F. Supp. 2d 1069, 1079 (N.D. Cal. 2003).

Second, Judge Corley found that Uber and Otto each having "exclusive options" created a common interest. (Dkt. 731 at 4.) But, the Agreement ████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████" (*Id.* § 6.12, A-10, A-14, & Dkt. 515-4 Ex. O.) In other words, Uber ████████████████████████████████████████ ████████████████████████████████████████. So long as Uber ██████████ (*i.e.*, up until August 23, 2016), no common interest could arise.

Third, Judge Corley found that Uber's obligation to indemnify Levandowski and the other "diligenced employees" created a common interest. (Dkt. 731 at 4.) But, indemnity is excluded for any "Post-Signing Bad Acts" and any "Pre-Signing Bad Acts" that were not truthfully disclosed. (Dkt. 515-5 § 2.1(b).) Thus, as Stroz continued to investigate after April 11, the parties continued to have conflicting interests with regard to the record for a future indemnity claim. Indeed, as Uber has now represented, due diligence by its outside counsel did not cause it to "know" of misappropriation (6/29 Hr'g Tr. at 29:18-22), which raises the likelihood of undisclosed pre-signing "Bad Acts."[4] Because the *scope* of indemnity remained uncertain until at least Stroz delivered its final report shortly before closing, Uber, Otto, Levandowski, and Ron had, at most, "a shared desire to see the same outcome in a legal matter" which is "insufficient to bring a communication . . . within [the common interest] exception." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012).[5]

---

[4] Uber and Levandowski's conflicting and adverse interests is further evidenced by Uber's recent filing, which publicly discloses its "belie[f]" that Levandowski's "downloading was done in relation to Levandowski's employment at Google, specifically to ensure the expected payment of Levandowski's $120 million bonus from Google." (Dkt. 755 at 12.)

[5] Even if a common legal interest did arise, Judge Corley's findings were still overbroad because the non-waiver doctrine applies only with respect to communications concerning *that* interest. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579 (N.D. Cal. 2007). Thus, at a minimum, the Court should find waiver with respect to any post-April 11 shared communications that were not shared for the purpose of developing joint legal strategy under the Indemnification Agreement.

**Conclusion**

For these reasons, Waymo respectfully requests that the Court grant its Motion for Relief.

DATED: June 29, 2017                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                        By /s/ Charles K. Verhoeven
                                            Charles K. Verhoeven
                                            Attorneys for WAYMO LLC