**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94101 | TEL (415) 875-6600

June 30, 2017

Magistrate Judge Jacqueline Scott Corley

Re: *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal., Case 3:17-cv-00939-WHA
**Uber's Improper Requests to Depose Apex Witnesses**

Dear Judge Corley:

Please find below Plaintiff Waymo LLC's ("Waymo") statement regarding depositions of apex witnesses Larry Page, David Drummond, Eric Schmidt, Sergey Brin, and David Krane.

Sincerely,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

At Uber's request, Judge Alsup has set Alphabet Inc. CEO Larry Page's deposition for July 17 – subject to Waymo's right to "promptly and in good faith" seek a protective order.  That is exactly what Waymo seeks in this motion, which is identical to the relief that Waymo sought – and obtained – from this Court when Uber improperly sought to depose this apex witness in the expedited discovery phase.  Waymo also seeks a protective order for four additional apex witnesses – David Drummond, whose deposition Uber has told Waymo it plans to take, and Eric Schmidt, Sergey Brin, and David Krane, all of whom are identified in Uber's Initial Disclosures.

Uber argues that Waymo's motion is premature.  It is not.  Judge Alsup has told the parties that they "are not moving fast enough to complete depositions and will put too much pressure on the jury trial and final pretrial conference dates[,]" and accordingly ordered them to submit a complete deposition schedule **last week**.  (Dkt. 622.)  In order to comply with that Order, Waymo proposed that the parties exchange their deposition lists, but Uber refused – arguing, as here, that Waymo's proactivity was "premature."  (Ex. 1.)  As a result of Uber's obstruction, Judge Alsup bluntly assessed that the parties had "utterly failed to comply with" his Order, and the Court took it upon itself to set dates for the first twenty depositions – including Mr. Page's. (Dkt. 679.)  Waymo intends to follow the Court's directives, and has provided Uber with its deposition list, as well as dates of availability for apex witnesses identified in Uber's initial disclosures in the event the depositions are compelled.  But Uber, consistent with its practice of "doing everything [it] can to throw road blocks in the way" of the October trial date (Dkt. 625 at 26:10-11), is still withholding its deposition list, and is seeking to push off any resolution of apex issues.  Judge Alsup has been clear: the time to tee up and resolve disputes over depositions – apex or otherwise – is **now**, not at some unspecified time in the waning weeks of fact discovery.  This motion is ripe, and the Court should grant a protective order as to these five improper apex depositions.

To the extent the Court does compel any of these apex depositions, there should be strict time limits (no more than 3 hours).  This should not be controversial, as Uber indicated at the parties' June 29 meet and confer that it anticipated needing only 2-3 hours for any of these witnesses.

**<u>Uber's Request for Mr. Page's Deposition Should be Denied, Again</u>.** Uber served its first deposition notice for Mr. Page on April 20, 2017.  As recounted in Waymo's prior letter brief regarding Mr. Page's deposition, Mr. Page is without question an "apex" witness as the CEO of Alphabet, the second-most valuable publicly-traded company in the United States and the parent company of Google.  (Dkt. 278.)  Uber has never claimed otherwise. Nor has Uber disputed that an apex deposition is proper only if (i) the witness has **unique** and **personal** knowledge of the facts at issue and (ii) the party seeking the deposition has exhausted less intrusive discovery methods. *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007).  Uber previously contended Mr. Page's testimony was necessary to cover the following particular topics: (1) whether Google has any policies and/or practices that permit its executives to participate in separate ventures or side businesses that compete with Google; (2) the background of Waymo's pre-lawsuit investigation into misconduct by Anthony Levandowski; (3) whether Google has a history of asserting a "joint interest" privilege in ways analogous to Uber and Mr. Levandowski's use of that doctrine in this case; and (4) conversations between Mr. Levandowski and Mr. Page.  (Dkt. 280-4 at 1-2.)  The Court rejected all of these arguments, and denied Uber's request for Mr. Page's deposition.  (Dkt. 276; Dkt. 277.)

1

Uber has now renewed its request for this apex deposition, but admits its bases to depose Mr. Page are the same ones rejected by the Court just two months ago. Specifically, Uber says it wants to ask Mr. Page about side businesses ((1) above) and conversations he had with Mr. Levandowski ((4) above). (Ex. 2.) Uber does not dispute that the Court has already rejected these bases, but argues that the Court's prior Order during expedited discovery did not preclude a deposition during normal discovery. Uber also argues that while it cannot justify Mr. Page's deposition at this time, it should have the flexibility to wait a month or more to develop its theories justifying this apex deposition. These arguments are without merit.

First, Uber has not and cannot meet its burden of showing that Mr. Page has unique and personal knowledge regarding so-called side businesses or conversations with Mr. Levandowski, just as it could not meet this burden in April. As a threshold matter, Uber has failed to show that its requested "side-business" discovery is relevant at all. In its motion to compel documents and interrogatory responses, Uber argued that "many Google employees are allowed to operate their own side businesses." (Dkt. 687 at 4.) But while **Levandowski's** side businesses could be relevant to this case – e.g., if Mr. Levandowski has permission to use Waymo's trade secrets in a side business, that would support a defense that Uber did not obtain Waymo's trade secrets through improper means – the fact that Alphabet may permit **other** employees or executives to engage in certain side businesses has nothing to do with whether Uber stole Waymo's trade secrets or infringes its patents. Nor, in any event, would Mr. Page have unique insight into the side businesses of Alphabet's 70,000+ employees.

As for conversations between Mr. Levandowski and Mr. Page, the Court has already ruled that an interrogatory, not an apex deposition, suffices to determine whether Mr. Page knew of Mr. Levandowski's plans to go to Uber – and Mr. Page provided a verified response to that interrogatory. And even if Mr. Page had relevant conversations with Mr. Levandowski (which is simply speculation by Uber's attorneys) Uber still could not show Mr. Page has **unique** knowledge of those conversations, because Mr. Levandowski would have been there. As the Court noted the first time Uber made this argument, "you're going to be prejudiced by [Levandowski taking the 5th] just to begin with…. There's nothing you can do with that. That's just a consequence that flows from that." (Dkt. 277 at 28.) In seeking Mr. Page's deposition on the ground that it cannot obtain information from Mr. Levandowski, Uber seeks not just to avoid those consequences but to flip them in Uber's favor and against Mr. Page personally.

Second, there is nothing premature about this motion. Uber argues that briefing apex issues now subjects them to a Catch-22: to satisfy the apex doctrine they must show that less-intrusive discovery is inadequate, but Mr. Page's July 17 deposition date does not give them enough time to make that showing. But this makes no sense. It was Uber who identified Mr. Page as a "top ten" deponent in response to a Court Order that expressly provided "[t]he judge will assign dates." (Dkt. 679.) Well aware of Mr. Page's status as an apex deponent, the Court scheduled that deposition for July 17, and further ordered that "[a]ny unilateral motion to change a date on the schedule [] must (1) show compelling reasons – not merely good cause – for the requested change and (2) offer an **alternative date reasonably close to the assigned date**." (Dkt. 725 at 2 (emphasis added).) Waymo does not consent to change the assigned date, which is the date Mr. Page is available. And in any event, as the CEO of Alphabet Inc., Mr. Page has little availability for a deposition and so it is not practicable to wait until August to brief the issue and only then, if his deposition is compelled, schedule his deposition before the August 24 fact discovery cutoff.

2

**Uber's Request for Mr. Drummond's Deposition Should be Denied**.  While not among its "top ten" witnesses, Uber has stated it also seeks to depose David Drummond, Google's Chief Legal Officer and Senior Vice President of Corporate Development.  (Ex. 3.)  Uber does not dispute that Mr. Drummond is an apex witness.  It provided the following to justify his deposition: "Mr. Drummond had a position on Uber's Board of Directors.  During that time, Mr. Drummond had access to Uber's business plans and strategy for its self-driving car program. Defendants seek to discover Mr. Drummond's knowledge of Waymo's plans to compete against Uber, Waymo's refusal to enter into a partnership with Uber, Uber's plans to acquire Ottomotto, the timing of such knowledge and whether that knowledge coincided with his membership on Uber's Board of Directors."  (*Id.* at 4.)  And: "At this point, it looks like we will be deposing Mr. Drummond because he sat on Uber's board at the time Waymo began to prepare to compete with Uber.  We believe he also had conversations with and regarding Anthony Levandowski and is familiar with Google's side business program."  (*Id.* at 3.)  However, when Waymo asked Uber to explain how Mr. Drummond has unique and personal knowledge on these issues, and how Uber sought, but was unable to obtain this information from other sources (such as within Uber itself), Uber refused to substantively respond.  (*Id.* at 1-3.)  That is not surprising, as Uber cannot show Mr. Drummond has unique and personal knowledge on these issues.  Uber obviously knows its own business plans and strategy for its self-driving car program that were provided to its Board of Directors, Uber's plans to acquire Ottomotto, and the timing of Mr. Drummond's membership on Uber's board.  The "side-businesses" and vague assertion of "conversations with Anthony Levandowski" topics fail for the same reasons as for Mr. Page, discussed above.  As for the rest of these topics, Uber cannot credibly contend that Mr. Drummond has unique knowledge on any of these issues.

Here too, even though it has affirmatively stated it seeks Mr. Drummond's deposition (Ex. 3), Uber contends it should be allowed to keep its request to depose Mr. Drummond hanging until August – *i.e.*, with less than four weeks before the discovery cut-off.  But Uber's approach makes no sense, particularly for an apex witness such as Mr. Drummond.  As Waymo informed Uber on June 22, even before Uber filed its "top ten" deponent list, and also informed the Court with its submission, Mr. Drummond has extremely limited availability before August 24, and the available date he has is July 17.  (Ex. 4; Dkt. 699 at 3.)  Had Defendants identified Mr. Drummond as a "top ten" witness, Waymo expects the Court would have set the deposition for his date of availability, as the Court did when assigning deposition dates for apex witnesses for both parties – Travis Kalanick, John Krafcik, and Mr. Page.  Uber's election not to identify Mr. Drummond as a "top ten" witness should not be used to Mr. Drummond's prejudice – but that is exactly what Uber is proposing to do.

Under Uber's proposed approach, it can wait until August – after Mr. Drummond's July 17 date of availability – to even **notice** Mr. Drummond's deposition, and only then could Waymo seek a protective order.  At that point, even with an expedited briefing schedule and an immediate order, if Mr. Drummond's deposition is compelled he would be jammed into disrupting his existing schedule to find a deposition date within the roughly two week period between August 10 and August 24 (the discovery cutoff).  This is obviously what Uber wants – or at least, the lingering threat to Mr. Drummond of such a disruption – but is exactly the sort of annoyance, oppression, and harassment that Rule 26, and in particular the apex doctrine, forbids.  As for Uber's objection to the ripeness of Waymo's motion – that setting up a deposition schedule now is premature – it should be overruled based on Judge Alsup's Case Management Orders.  Uber's

3

purported preference to give itself at most an extra two or three weeks to decide whether to take Mr. Drummond's deposition, while upending his calendar in the meantime, is unreasonable and contrary to Judge Alsup's directives.

**The Court Should Grant a Protective Order Preventing any Deposition of Mr. Schmidt, Mr. Brin, or Mr. Krane.**  Uber has identified three additional Alphabet executives on its Initial Disclosures: Eric Schmidt (Executive Chairman of Alphabet), Sergey Brin (President of Alphabet), and David Krane (Chief Executive Officer and managing partner at GV, which was formerly known as Google Ventures).  Uber does not dispute these are apex witnesses. As such, it is unsurprising that all three have limited availability between now and August 24.  Recognizing this, and given that Uber identified them on their initial disclosures, Waymo has provided the dates each of them are available for a deposition in the event that the Court compels it.  Mr. Schmidt is available the morning of July 12; Mr. Brin is available the afternoon of July 17; and Mr. Krane is available August 9.  While Uber has not yet stated it intends to take these apex witnesses' depositions, whom Waymo has not identified on its own disclosures and does not intend to call at trial, Uber seeks to leave open their depositions at some point later in the case.  For the same reasons as explained above for Mr. Drummond, Waymo needs to resolve the status of their depositions now, so that these individuals can stop holding these dates available for depositions that Uber likely has no intention of seeking – and which should not proceed in any event – and they can avoid any further disruption of their schedules and normal work.

Moreover, it is apparent from even a cursory review of Uber's Initial Disclosures that these apex witnesses have no unique or personal knowledge of the matters identified for each, and that Uber could easily obtain any discovery of these issues from alternative means. Uber has not refuted this because it refuses to engage substantively on this issue at all.  Uber discloses all three as having knowledge about "Development and operation of Waymo's autonomous vehicle program" and "Anthony Levandowski's departure from Waymo." (Ex. 5 at 25-26.)  Mr. Brin and Mr. Krane also are identified as having knowledge of "Waymo's policies surrounding side projects and side businesses; knowledge of Waymo employee involvement in side projects and side businesses, including that of Anthony Levandowski." (*Id.*)  Finally, Mr. Krane is disclosed as knowledgeable about "Waymo's business plans; knowledge of discussions with Defendants regarding a partnership with Defendants in the self-driving vehicle/ride-sharing space." (*Id.* at 25.)  Obviously other witnesses – and even Uber – have knowledge about these issues, and indeed dozens of the more than **seventy-five** witnesses disclosed on Uber's Initial Disclosures are identified as having similar or identical knowledge. (*Id.* at 3-28 (Anthony Levandowski, Lior Ron, Don Burnette, Soren Juelsgaard, Colin Sebern, Brian McClendon, John Krafcik, Pierre-Yves Droz, William McCann, Ben Ingram, Bernard Fidric, Luke Wachter, Dmitri Dolgov, Nathaniel Fairfield, Andrew Chatham, Rahim Pardhan, Blaise Gassend, Mark Shand, Andrew Shultz, Ryan Andrade, Drew Ulrich, Zachary Morris, Samuel Lenius, Ionut Dorel Iordache, Joanne Chin, Meiling Tan, David Lu, Chris Urmson, Bryan Salesky, Sebastian Thrun, Jiajun Zhu, and Dave Ferguson).)