**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

June 12, 2017

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California        **UNREDACTED VERSION**
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102        **FILED UNDER SEAL**

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Waymo requests an order compelling third-party Anthony Levandowski to produce all documents withheld on the basis of the Fifth Amendment privilege, including documents provided as part of the alleged "common-interest privileged due diligence review."  (Dkt. 539 at 10-12.)

**Background**

In late 2015 and early 2016, Levandowski downloaded over 14,000 highly confidential and proprietary files from Waymo, while he was in talks with Uber regarding the acquisition of his new startup, Ottomotto.  Uber later acquired Ottomotto for $680 million and installed Levandowski as the head of its self-driving car program.  As the Court has already found:  "Waymo has made a strong showing that Levandowski absconded with over 14,000 files from Waymo, evidently to have them available to consult on behalf of Otto and Uber.  As of the date of this order, those files have not been returned and likely remain in Levandowski's possession.  The record further indicates that Uber knew or at least should have known of the downloading but nevertheless proceeded to bring Levandowski and Otto on board."  (Dkt. 433 at 7.)

Waymo filed its complaint on February 23, alleging trade secret misappropriation against Uber for its use of the information stolen by Levandowski.  Early in the case, at the request of Uber, the Court held an *in camera* hearing during which Levandowski appeared for the first time through separate counsel and expressed his intention to broadly assert his Fifth Amendment privilege.  (3/29 Hr'g Tr. at 5:10-6:18.)  Uber's counsel confirmed that "we obviously have a conflict here."  (*Id.* at 17:15-20.)

In light of the purported "conflict" between Uber and Levandowski, Waymo served Levandowski with a third-party subpoena for documents and a deposition on April 9.  (Ex. 1 ("Subpoena").)  On April 12, Judge Alsup confirmed that RFP Nos. 1 and 3 of the Subpoena were enforceable (4/12 Hr'g Tr. at 72:2-4) and ordered Levandowski to produce documents responsive to those requests on the morning prior to his April 14 deposition (*id.* at 76:4-14).  Those requests are produced below:

> **REQUEST FOR PRODUCTION NO. 1**: The Misappropriated Materials, including any media that contains or contained the Misappropriated Materials, any documents derived from, or reflecting the substance of, the Misappropriated Materials outside of Waymo, and any documents reflecting any meetings or discussions regarding the substance of the Misappropriated Materials outside of Waymo;

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

**REQUEST FOR PRODUCTION NO. 3**: All communications between You and Uber between January 2015 and August 2016.

At the April 12 hearing, Judge Alsup also ordered Levandowski to submit his privilege log *in camera* by April 19, so the Court could evaluate Levandowski's position that the log itself was incriminating. (*Id.* at 78:21-79:5.)  Judge Alsup rejected the argument that a privilege log was not necessary to support an assertion of the Fifth Amendment. (*Id.* at 77:22-78:2 ("I never heard of that.  Typically it is in my court, . . . under your theory, all kinds of wrongdoing could go unchecked . . . ."); *see also id.* at 79:1-5.)  Judge Alsup also ordered that, with the *in camera* submission, Levandowski must "give the other side enough of the argument so that they can respond to it." (*Id.* at 79:13-14.)

Levandowski violated the Court's order.  First, Levandowski produced no documents on April 14 as ordered and refused at that time to clarify whether any documents would be forthcoming at all. Levandowski did not begin producing documents until April 24, and did not complete his production until May 11, nearly a full month late.[1]  Levandowski also failed to provide "enough of the argument" to allow Waymo to challenge the assertion of the Fifth Amendment, providing instead a high-level brief that merely purported to "discuss the general legal principles" regarding the Fifth Amendment. (Dkt. 244 at 2.)  As Waymo argued in an April 21 submission, this was inadequate. (Dkt. 250.)

At the suggestion of the Special Master, on May 23, the parties filed letter briefs regarding Waymo's request for a more detailed privilege log. (Dkts. 493 (Waymo) & 492 (Levandowski).)  This prompted a May 24 Notice from the Court, which held that Levandowski's April 19 filings were "wholly inadequate," and "failed to comply with the Court's directive to provide 'enough of the argument' so that Waymo could respond." (Dkt. 501 at 3, 2.)  Levandowski's submission to Waymo "provided no meaningful information whatsoever to justify, even at an abstract level, application of [the Fifth Amendment] principles in this case and in response to Waymo's production requests." (*Id.* at 2.)  The Court also noted that "Levandowski's in camera submission largely failed to remedy the deficiencies of his public brief," as it consisted merely of two "automated data compilation[s]" with "no intelligent review or analysis involved." (*Id.*)  Finally, the Court clarified that "whether Levandowski has any valid clam of Fifth Amendment privilege . . . is a matter encompassed by the referral to Judge Corley." (*Id.* at 3.)

At the May 25 hearing, the Magistrate Judge ordered that Levandowski file revised public and *in camera* statements on June 2. (5/25 Hr'g Tr. at 118:7-22.)  That second attempt, however, fares no better than the first. (Dkt. 539.)  Levandowski simply filed a brief of general legal principles.  But he provides no information "whatsoever to justify, even at an abstract level, application of those principles in this case and in response to Waymo's production requests." (Dkt. 501 at 2.)  Apparently, Levandowski has also submitted a portion of his "brief" *in camera*.  But, despite Waymo's attempts to meet and confer, Levandowski refuses to provide any details regarding the content of the secret, *ex parte* filings or any information that would shed light on the methodology used to apply the Fifth Amendment to specific categories of documents in this case.

Although Levandowski has repeatedly sought intervention in this case to assert his purported rights

---

[1]  Levandowski's counsel claimed on April 19 that she mailed the first production to Waymo's counsel (Dkt. 248-15), but Waymo's counsel did not receive that production until April 24, which Levandowski's counsel attributed to a FedEx "delivery issue." (Ex. 2 (4/24 email from A. Craig)). Levandowski's counsel then claimed they would try to complete production by May 2, but sent no additional production until May 9 (*id.* (5/9 email from P. Schmidt)), which was then supplemented by a further production on May 11 (*id.* (5/11 email from A. Craig)).

(*e.g.*, Dkts. 151, 371, 466, & 583), he has refused to comply with the Court's order to timely produce documents and to meaningfully justify his assertions of privilege. This has significantly delayed resolution of the issues and has contributed to the "relentless concealment of likely probative evidence." (Dkt. 433 at 8.) Waymo should not have to suffer further delay: Levandowski has not justified his claims of privilege, and he must make a full production in response to the Subpoena.

## Argument

The Fifth Amendment applies only if "there are 'substantial hazards of self-incrimination that are real and appreciable, not merely imaginary and unsubstantial . . . .'" *United States v. Bright*, 596 F.3d 683, 690 (9th Cir. 2010). The party asserting the privilege bears the burden of establishing its existence. *United States v. Brown*, 918 F.2d 82, 84 (9th Cir. 1990). Levandowski fails to meet this burden, and the Court should order production of all documents withheld under the Fifth Amendment.

### 1.    Levandowski Has Waived His Privileges.

Under the Court's standing order, "[p]rivilege logs shall be promptly provided and must be sufficiently detailed and informative to justify the privilege." (Standing Order ¶ 16.) A failure to furnish the information necessary to establish the privilege "at the time of the assertion will be deemed a waiver of the privilege or protection." (*Id.*) Levandowski has repeatedly failed to furnish the information necessary to support his assertion of the Fifth Amendment privilege. And he has failed to meet his burden to show that producing each document he is withholding poses a real and appreciable risk of self-incrimination. This failure should now result in waiver.

The Court already found Levandowski violated Judge Alsup's order in April to provide Waymo "enough of the argument" so that it could respond. (4/12 Hr'g Tr. at 79:13-14.) Rather, Levandowski opted instead to rely on a high-level legal brief, which the Court later characterized as "wholly inadequate to support [Levandowski's] sweeping claims of privilege." (Dkt. 501 at 3.)

Levandowski fails again, in its second-chance submission allowed by the Court, to provide Waymo meaningful information regarding how the Fifth Amendment supposedly applies in this case. Instead, refusing to provide any detail whatsoever on what was withheld, Levandowski relies on secret, unexplained, *in camera* filings with the Court, and a legal brief that provides no clue as to what, or even whether, documents are being withheld under the Fifth Amendment. (Dkt. 539.) Levandowski also again relies upon the general idea that anything he produces might incriminate him. This blanket, conclusory assertion of privilege does not satisfy Levandowski's burden to show that each document withheld is, in fact, privileged as a matter of law. Under these circumstances, the court should find that Levandowski's claims of privilege are waived. *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (finding waiver of a Fifth Amendment privilege where respondent failed to respond for fifteen months after interrogatories were propounded); *United States v. Belcik*, Case No. 8:15-mc-2-T-23 MAP, 2016 WL 3922829, at *8 (M.D. Fla. July 20, 2016) (holding that party waived Fifth Amendment privilege over documents because "[a] blanket refusal to produce records, which is what Belcik has done, is not enough"); *see also Bright*, 596 F.3d at 692 (holding that party asserting the privilege cannot refuse to produce a privilege log or documents for *in camera* review and then protest an insufficient opportunity to present a claim of privilege).

Rather than comply with the Court's orders, Levandowski argues that he should not have to "produce a detailed privilege log" at all, because doing so would "disclose the information that is expressly protected by the privilege itself." (Dkt. 539 at 15, 14.) However, the Court has consistently rejected Levandowski's argument in this case that a privilege log is not required and has made clear that the

type of high-level legal brief he has now twice submitted does not suffice. (4/12 Hr'g Tr. at 77:22-78:2, 79:1-5; Dkt. 501.) Indeed, Levandowski's assertion is contrary to case law in this District, which has made clear that a privilege log supporting the Fifth Amendment is required. *See United States v. Real Property & Improvements Located at 2366 San Pablo Avenue, Berkeley, California*, 2014 WL 5335266, at *3 (N.D. Cal. Oct. 17, 2014) ("Without a privilege log, the Court cannot properly rule on this matter.").

Based on Levandowski's latest public submission, the Court should find that the Fifth Amendment privilege is waived and order production of all withheld documents.

## 2. Documents Responsive To Request No. 1 Are Not Privileged Under The Fifth Amendment.

The first half of Request No. 1 requires Levandowski to return the "Misappropriated Materials" that he stole from Waymo. Levandowski argues that "his act of producing such documents now would obviously tend to inculpate," because it would effectively "admit that he did, in fact, take or retain materials without authorization." (Dkt. 539 at 19.) But Levandowski cites no precedent for the idea that he has a Fifth Amendment right to retain stolen property. Waymo has a right to the return of its property and a substantial interest in the return—regardless of any supposed testimonial value of its production—simply to prevent further spread and use of its protected trade secrets. The only case Levandowski cites on this issue is *Doe ex rel. Rudy-Glazner v. Glazner*, 232 F.3d 1258 (9th Cir. 2000), but *Glazner* did not involve the application of the Fifth Amendment privilege to a production of documents, but rather the scope of permissible adverse inferences from a *testimonial* assertion of the Fifth Amendment. *See generally id.*

Levandowski also argues, incredibly, that the requested materials—most of which are files that were stolen from Waymo—are protected by Levandowski's legal privileges because such files are somehow his "property." (Dkt. 539 at 10.) Needless to say, the "Misappropriated Materials" are **not** Levandowski's property—they are Waymo's property, and the law does not privilege information relating to the retention of stolen property. *See United States v. Tucker*, 486 F.2d 1040, 1041 (8th Cir. 1973) (holding that instruction that jury may permissibly draw an inference from criminal defendant's possession of recently stolen goods did not violate defendant's Fifth Amendment right against self-incrimination). At a minimum, people *other than* Levandowski cannot retain the stolen property because attorney-client privilege (or common-interest privilege) does not allow an attorney to retain stolen property. *See, e.g.*, *In re January 1976 Grand Jury*, 534 F.2d 719, 727 (7th Cir. 1976) ("The recognition that an attorney need not produce stolen monies in response to a subpoena would provide a mechanism by which a member of a learned profession could become the privileged repository of the fruits of a violent crime. There is no reason for thinking that the policy of respecting the private enclave of individual citizens reaches that far."); *Lynn v. Gateway Unified Sch. Dist.*, Case No. 2:10-cv-00981, 2011 WL 6260362, at *6 (E.D. Cal. Dec. 15, 2011) (disqualifying attorney who took possession of stolen emails, which possibly violated the California Penal Code, improperly suppressed evidence of a crime, and breached attorney's ethical duties); *see also infra* at 7.

Furthermore, even if the Fifth Amendment privilege applied to the retention of stolen property, given the current record, which already overwhelmingly shows that Levandowski downloaded and absconded with specific Waymo files, the mere act of returning the stolen files would "add[] little or nothing" to the evidence that already exists. *United States v. Fisher*, 425 U.S. 391, 411 (1976). Under these circumstances, where Levandowski's theft is a "foregone conclusion," the Fifth Amendment privilege does not apply. *Id.*; *see also Bright*, 596 F.3d at 693.

Here, there is no doubt that the "Misappropriated Materials" exist and Levandowski has possessed them.  In support of its Motion for Preliminary Injunction, Waymo provided the unrebutted, sworn testimony of Gary Brown, which forensically proves that shortly before departing Waymo, Levandowski downloaded, and transferred to an external media device, 14,000 specific files from Waymo's highly sensitive SVN repository.[2]  (Dkt. 24-2 (Brown Decl.) ¶¶ 17-19, 22.)  Indeed, as the Court has already found, "Waymo has made a *strong showing* that Levandowski absconded with over 14,000 files from Waymo" and that those files "likely remain in Levandowski's possession." (Dkt. 433 at 7 (emphasis added).)  Uber has confirmed these facts by terminating Mr. Levandowski "for cause"(Dkt. 519-2 (5/26 Ltr. from Uber to Levandowski)), and by admitting in its Interrogatory Responses that "[o]n or about March 11, 2016, Mr. Levandowski reported to Mr. Kalanick, Nina Qi and Cameron Poetzscher at Uber as well as Lior Ron that *he had identified five discs in his possession containing Google information*" (Ex. 3 at 4 (emphasis added)).  Thus, the evidence amply demonstrates Levandowski has possessed such documents.  *Fisher*, 425 U.S. at 412-13 (holding that government had prior knowledge that the documents were in custodian's possession); *United States v. Sideman & Bancroft, LLP*, 704 F.3d 1197, 1203 (9th Cir. 2013) ("The IRS knew with 'reasonable particularity' the existence and Sideman's possession of Nolan's 2007 and 2008 tax records prior to issuing the summons.").  Under the circumstances here, one can scarcely imagine a more appropriate application of the "foregone conclusion" test.[3]

Levandowski's only response to the "foregone conclusion" point is his repeated suggestion that the Court can ignore the existing evidence in this civil case because it is not aware of any criminal investigation and thus the government currently knows nothing.  (Dkt. 539 at 13-14, 17, 20.)  This argument is legally and logically baseless.  The "foregone conclusion" exception cannot be defeated merely because a government investigation supposedly has not commenced.  Rather, in applying the exception, the Court should reasonably presume that the government is on notice of at least all pertinent facts that are part of the record in this civil case.  *See Fisher*, 425 U.S. at 426 (holding that items of public record "such as automobile registrations or property deeds, would seem ordinarily to fall outside the protection of the privilege. They hardly reflect an extension of the person.").  Thus, in light of all the aforementioned evidence of record in this case—and the failure of Uber or Levandowski to provide *any* evidence or argument to rebut the clear showing that Levandowski absconded with the 14,000 Waymo files—the "foregone conclusion" exception applies.

The second half of Request 1 seeks documents "derived from, or reflecting the substance of," the "Misappropriated Materials" and documents "reflecting any meetings or discussions regarding the substance of the Misappropriated Materials."  There is no reason simply to presume that the production of *any* document related to the "Misappropriated Materials" is necessarily testimonial and incriminating; it is Levandowski's burden to prove the privilege applies.  Levandowski utterly fails to meet his burden as to these documents because he does not provide any argument as to why these documents are testimonial and incriminating.

Finally, these documents are also within the ambit of the "foregone conclusion" exception.  Just as in

---

[2]   The Subpoena's definition of "Misappropriated Materials" specifically identifies these materials by reference to the same facts averred to by Mr. Brown.  (*Compare* Ex. 1, *with* Dkt. 24-2 (Brown Decl.) ¶¶ 17-19, 22.)

[3]   In addition to the current record, the documents Levandowski is required to produce in response to the second half of Request No. 1 and Request No. 3—as well as the documents Stroz must produce (including the "Misappropriated Materials" if Stroz possesses them)—would very likely confirm Levandowski's theft of the "Misappropriated Materials."

*Bright*, where the government's prior knowledge of specific accounts was sufficient to justify the production of unremunerated documents "related to" such accounts, *Bright*, 596 F.3d at 693, Levandowski's possession of the "Misappropriated Materials" here justifies production of the additional requested documents related to such "Misappropriated Materials." Indeed, because Levandowski's theft of the "Misappropriated Materials" is a foregone conclusion, there is nothing about such related documents that can further incriminate him.

>    3.    **Documents Responsive To Request No. 3 Are Not Privileged Under The Fifth Amendment.**

Documents responsive to Request No. 3, which seeks communications between Levandowski and Uber between January 2015 and August 2016, are similarly not covered by the Fifth Amendment. For documents responsive to this Request, Levandowski fails to articulate how the "act of production" itself will incriminate him. It is not enough to claim simply that the contents of responsive documents may happen to contain incriminating facts. Rather, it is a "settled proposition" that "a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the [Fifth Amendment] privilege." *United States v. Hubbell*, 530 U.S. 27, 35-36 (2000). Thus, it is Levandowski's burden to demonstrate that "the tacit averments" that result from the production of responsive documents "are both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment." *Fisher*, 425 U.S. at 410. He fails to meet that burden.

The only argument in support of the Fifth Amendment privilege that Levandowski offers is that "[c]ommunications between Mr. Levandowski and Uber employees during the period in question plainly have the potential—fairly or unfairly—to incriminate Mr. Levandowski and provide context for an argument concerning his intent or preparations for the alleged misappropriation." (Dkt. 539 at 21-22.) But this conclusory argument suggests, at most, that the *content* of the documents—and not the act of producing them—may tend to incriminate Levandowski. As discussed above, this is insufficient. Even if Levandowski's communications with Uber during the relevant period contain incriminating facts, his possession of the communications is not itself incriminating, and thus requiring their production does not compel an incriminating, testimonial act within the meaning of the Fifth Amendment. *Moore v. Gilead Scis., Inc.*, Case No. No. C 07-03850 SI, 2011 WL 5572975, at *7-8 (N.D. Cal. Nov. 16, 2011) ("[I]f the documents themselves contain incriminating assertions of fact or belief, the Fifth Amendment does not apply because the creation of those documents was not compelled.") (citation and quotation omitted); *Bear Sterns & Co., Inc. v. Wyler*, 182 F. Supp. 2d 679, 681 (N.D. Ill. 2002) ("Wyler does little to explain how the act of producing documents would pose a real danger of incrimination."); *see also In re Grand Jury Proceedings*, 40 F.3d 959, 962 (9th Cir. 1994) ("Because the disclosure directive instructs banks to produce documents that have already been prepared, there is no compulsion and no Fifth Amendment implication.").

Levandowski's cited authority does not support his assertion of privilege here. In *United States v. Fisher*, 425 U.S. 391 (1976), the Supreme Court held that the compelled production of subpoenaed tax papers did ***not*** implicate the Fifth Amendment because "however incriminating the contents . . . might be, the act of producing them . . . would not itself involve testimonial self-incrimination." *Id.* at 410-11. In the other cited Supreme Court cases, the Government had *conceded* that the respective acts of production were testimonial, so this issue was not before the Court. *See Hubbell*, 530 U.S. at 43 ("[T]he Government arguably conceded that respondent's act of production . . . had a testimonial aspect . . . ."); *United States v. Doe*, 465 U.S. 605, 614 n. 13 (1976) ("The Government concedes that the act of producing the subpoenaed documents might have had some testimonial aspects . . . ."). Finally, *Doe v. United States (In re Grand Jury Subpoena)*, 383 F.3d 905, 909 (9th Cir. 2004), is

inapposite because in that case the requested documents included communications about pricing amongst competitors meaning that, unlike here, the existence of the document itself reflected a criminal act under the antitrust laws. *Id.* at 908-10. Here, the question is not the existence of communications, but their substance, which is not protected by the Fifth Amendment. *See Fisher*, 425 U.S. at 410 ("The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, *wholly aside from the contents of the papers produced*.") (emphasis added).

In any event, the "foregone conclusion" exception also supports a finding that Levandowski's communications with Uber are not protected by the Fifth Amendment. The record already contains compelling evidence that extensive communications between Levandowski and Uber exist, even prior to the time Levandowski departed Waymo. For example, Defendants have produced documents in this case indicating that Levandowski and Uber were discussing an acquisition of Levandowski's new company by Uber at least weeks prior to his departure from Waymo. (*E.g.* Exs. 4 & 5.) Additionally, Waymo submitted evidence in support of its Motion for Preliminary Injunction that Levandowski admitted to other Waymo engineers that he had been in talks with Uber as early as the summer of 2015. (Dkt. 25-31 (Droz Decl.) ¶ 28.) Thus, the mere act of producing additional communications with Uber—even those that pre-date Levandowski's departure from Waymo— cannot further incriminate him. *Fisher*, 425 U.S. at 411 ("The existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers."). Once again, Levandowski's only response to the "foregone conclusion" issue—that the government has not started an investigation (Dkt. 539 at 21)—is meritless. *See supra* at 5. Thus, the Fifth Amendment cannot shield documents responsive to Request No. 3, and Levandowski must immediately produce such documents to Waymo.

### 4. There Is No Privilege Over Documents Provided To Third Parties.

Finally, Levandowski is wrong to assert that his "Fifth Amendment rights extend to any materials he provided as part of the common-interest privileged due diligence review." (Dkt. 539 at 10-12.) First, in arguing that his Fifth Amendment privilege extends to documents in the possession of a ***third party***, Levandowski continues to misconstrue the Supreme Court's holding in *Fisher*. When Levandowski made the same argument in support of his request to withhold the identity of Stroz on Defendants' privilege logs, Judge Alsup criticized Levandowski for "erroneously conflat[ing] the Fifth Amendment and attorney-client privileges." (Dkt. 202 at 8.) As Judge Alsup noted, under *Fisher*, it is only the attorney-client privilege and "not the [client's] Fifth Amendment privilege that would excuse the Attorney from production." (Dkt. 202 at 8, *quoting Fisher*, 425 U.S. at 396.) Thus, Mr. Levandowski's attempt to lend "Constitutional dimensions" to materials he shared with Stroz must fail. (Dkt. 202.) At a minimum, Levandowski should have logged such documents long ago, and his failure to do so has waived any claim to the attorney-client and/or common interest privilege. (Standing Order ¶ 16.)

Second, the Magistrate Judge has now found that there was no common interest between Levandowski and the clients of Stroz in the first place. (Dkt. 566.) Thus, not only are these documents not protected by the Fifth Amendment privilege, they are not (and never have been) protected by any privilege at all. Mr. Levandowski must immediately produce any documents that he provided to Stroz.

Respectfully,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

cc:    All counsel of record; Special Master John Cooper