**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

June 16, 2017

**VIA ECF**

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Waymo LLC ("Waymo") submits the attached letter brief regarding certain privilege issues that remain outstanding following the Court's order on Waymo's Motion to Compel (Dkt. 321).

Respectfully Submitted,

/s *Charles K. Verhoeven*

Counsel for Plaintiff Waymo LLC

In March, this Court ordered that Defendants produce the 14,000+ files that Levandowski stole from Waymo, along with any documents that refer to those stolen files. In response, Defendants produced hundreds of pages of privilege logs, the operative amended versions of which include 3,204 entries.[1] (Exs. 1-3.)[2] Those logs are inaccurate and unreliable: they recite factual information (date, recipients, etc.) that has nothing to do with the underlying documents; they recite rote, self-serving characterizations ("legal analysis or advice") that are not tailored to the underlying documents; they omit information (such as parties to withheld contracts) necessary to justify any privilege. (*Infra* Part IV.) Such logs are essentially useless and effectively preclude Waymo from understanding what specifically Defendants are withholding and why. For at least the reasons stated below, however, it is clear that Defendants must produce the 3,204 documents that discuss the stolen files.

I. **No Common Interest Privilege Exists Except, At Most, As Between Uber And Ottomoto After The Ottomoto Acquisition Closed On August 23, 2016**

The Court's June 8 Order granting Waymo's prior motion to compel (Dkt. 566) held that none of Uber, Ottomotto, Otto Trucking, Levandowski, and Ron shared a common legal interest at least before the Put Call Agreement was signed on April 11, 2016. (*Id.* 20-21.) There is thus no dispute that no common interest privilege can be asserted over any communications or documents shared among any members of this group before April 11. (*Id.*; Ex. 4.)

Based on a footnote in which the Court noted that it did not need to reach the issue of whether this conclusion would also hold true after April 11,[3] Defendants maintain their attorney-client and work product claims "concerning communications after the Put Call Agreement was signed on April 11, 2016 (other than the Stroz Report and its Exhibits)." (Ex. 4.) But this position is unfounded for many of the same reasons that the Court found no common interest existed before April 11. Specifically, the Put Call Agreement (i) does not obligate Ottomoto or Uber to trigger the acquisition by exercising its Put/Call Rights and (ii) expressly provides that Uber will not inherit the relevant Ottomoto liabilities to Waymo unless and until any acquisition closed, which did not occur until August 23, 2016. Moreover, although Uber's and Ottomoto's interests may have become aligned as of the closing date, the relevant interests of Levandowski, Ron, and Otto Trucking were never so aligned. In sum, the only common legal interest Defendants could possibly rely on to prevent waiver is one between Uber and Ottomoto after August 23, 2016.

 A. **Uber And Ottomoto Did Not Share A Common Legal Interest Vis-à-Vis Waymo Until August 23, 2016**

Uber and Ottomoto cannot meet their burden of proving a common legal interest prior to the closing of the acquisition on August 23, 2016 (Dkt. 370 ¶ 28). As the Court previously held, no common interest with respect to any litigation with Waymo arose until Uber was obligated to "inherit" Ottomotto's liabilities to Waymo. (Dkt. 566 at 15.) Uber and Ottomoto have self-

---

[1] Rulings regarding these 3,204 withheld documents will likely inform the parties' positions regarding additional privilege logs being produced by Defendants in this case. Waymo reserves its rights to make separate objections to Defendants' additional logs.

[2] All references to paragraphs and Exhibits refer to the Declaration of Kevin Smith.

[3] The Court noted: "The outcome might be different after the signing of the Put Call Agreement. At that point Uber and Otto, and perhaps even Levandowski and Ron, arguably shared a common legal interest." (Dkt. 566, 17 n.2 (emphases added).)

servingly tried to back-date this obligation, first to the February 22, 2016 Term Sheet (Dkt. 369) (which the Court rejected) and now to the April 11, 2016 Put Call Agreement (Ex. 4). But Section 1 of the Put Call Agreement (Dkt. 515-3) makes clear that neither Ottomoto nor Uber was required to trigger the acquisition by exercising its Put/Call Rights. That is, until such Right was exercised, Uber and Ottomoto were separate companies with separate liabilities.

Moreover, even once a Put/Call Right was exercised, Section 6 of the Put Call Agreement (*id.*) lays out fourteen "conditions precedent" to closing. One such condition was that, prior to closing, Waymo had not threatened to bring trade secret misappropriation claims based on allegations that, if true, "would reasonably result in a judgment" that "substantially restricts" Uber from using Ottomotto's intellectual property, that "prohibits" Ottomoto from hiring Levandowski, or that "enforces a claim of damages in excess of $100,000,000." (*Id.* § 6; Dkt. 515-4, A-10, A-15, O.) In other words, Uber explicitly delayed until closing its "inheritance" of Ottomotto's potential liabilities with respect to the very issues over which Defendants now try to assert a common interest privilege.

For the same reasons the Court already found that there is no common legal interest between Uber and Ottomoto prior to April 11, there is also no such interest prior to the closing of the acquisition on August 23, 2016. Accordingly, any privilege has been waived with respect to documents shared between Uber and Ottomoto on or before August 23, 2016, and all such documents must be produced.

> B. Levandowski Has Never Shared A Common Legal Interest With *Anyone* Regarding The Stolen Documents

Levandowski has never had a common legal interest with anyone, at any time, vis-à-vis Waymo, with respect to the 14,000+ files he stole. Since the time he committed that criminal act, Levandowski's interest would always be in protecting himself from criminal liability. As the Court recognized at the start of this case, Levandowski's pursuit of that interest would invariably impair Uber's ability to defend itself in this civil suit, creating a conflict that would require Levandowski and Uber to have separate counsel. (3.16.17 Hearing Tr. 16:23-17:3.) Morrison & Foerster agreed. (*Id.*) Indeed, Mr. Levandowski's broad assertion of his Fifth Amendment rights has effectively precluded Uber from offering any coherent defense to Waymo's claims and has opened the door to all manner of adverse inferences. (Dkt. 277 at 20.)

Defendants have sought to avoid these facts by pointing to an indemnification agreement under which Defendants vaguely allege that "Uber agreed to indemnify certain employees under certain circumstances." (Dkt. 369, 2.) But the specifics of those "certain circumstances" confirm that the agreement does not create a common legal interest between Levandowski and Uber (or anyone else) regarding the stolen files. The agreement expressly provides that Levandowski will advise Uber "if he reasonably believes that a conflict of interest exists with respect to the defense of an Indemnified Claim between [his] interests and those of [Uber]." (Dkt. 515-5 § 2.2(b).) With respect to such a "Conflict of Interest Claim," Levandowski "may, at [his] sole cost and expense . . . engage individual counsel to act on [his] behalf in defense." (*Id.*) That is, if Levandowski has a conflict of interest with Uber with respect to a claim brought by Waymo, there is no indemnification: Levandowski pays his own way and Uber cannot control his defense. Accordingly, the agreement cannot be read, as Defendants argue, to create an artificial common-interest cloak around Levandowski and Uber with regard to matters where their legal interests are fundamentally diverse. The most obvious example of such a matter is

2

one in which Levandowski's personal interest would be in protecting himself from criminal prosecution rather than in protecting Uber from liability to Waymo.

No common interest privilege extends to any documents shared with Levandowski by anyone at any time, and all such documents must be produced.

### C. Otto Trucking Has Never Shared A Common Legal Interest With Anyone Regarding The Stolen Documents

Otto Trucking is a separate legal entity from Ottomotto. Uber never acquired it. (Dkt. 283, 5-6) And while Otto Trucking is a signatory to the Indemnification Agreement, it plays no role in Uber's indemnification of "certain employees under certain circumstances." (Dkt. 515-5.) Thus, neither the Uber/Ottomoto acquisition documents nor the indemnification agreement offers any basis for the assertion of a common interest between Otto Trucking and anyone else (including Ottomoto) with respect to the stolen documents (or any other legal interest). All documents shared by anyone with Otto Trucking must be produced.[4]

## II. The Court's Prior Rulings Regarding Work Product Waiver And Substantial Need Should Be Extended Consistent With The Common-Interest Analysis Above

The Court previously found that Ottomoto, Levandowski, and Ron were Uber's adversaries with respect to the Stroz investigation, and – as a result – Uber's disclosure to them of investigation-related work product was a waiver. (Dkt. 566, 21.) With respect to Ottomoto, this conclusion holds through the closing of the deal on August 23, 2016. With respect to Levandowski and Ron, this conclusion holds regardless of time, as the investigation implicated Levandowski's and Ron's continuing indemnification rights vis-à-vis Uber (*id.* 21). Accordingly, Uber's sharing of investigation results with Ottomotto (until August 23), Levandowski, or Ron resulted in waiver.

The Court also previously found that, to the extent materials attached to the Stroz report constitute ordinary work product, those materials should be produced because Waymo satisfied the relevant "substantial need" and "undue hardship" standard. (Dkt. 566, 22.) The Court's reasoning on that issue applies equally to all ordinary work product related to the location, use, and dissemination of Waymo's stolen files. There is no reason to distinguish between work product created before and after the Put Call Agreement (*see* Ex. 4)) or even before and after the acquisition closed. Waymo has a "substantial need" for the stolen files themselves, regardless when they were retrieved from Levandowski (or others) and regardless whether or when they were attached to any communications or memoranda. (Dkt. 566, 23.) And, in light of Levandowski's assertion of his Fifth Amendment rights, Waymo has a "substantial need" for all witness statements that touch on the circumstances surrounding his theft of Waymo's files, regardless by whom those statements were given. *See Rexford v. Olczak*, 176 F.R.D. 90 (W.D.N.Y. 1997) (ordering production of work product that was plaintiff's contemporaneous account of events central to the case); *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 584-85 (S.D. Tex. 1996) (ordering production of work product witness interviews because the witness's more immediate impressions would be superior to statements made after the incident).

---

[4] Otto Trucking has identified the documents in the privilege logs with respect to which it has had possession, custody, or control. (Ex. 5.)

3

### III. The Crime-Fraud Exception Applies To All Documents For Which Privilege Was Not Already Waived

"Under the crime-fraud exception, communications are not privileged when the client consults an attorney for advice that will serve him in the commission of a fraud or crime." *In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016). To invoke the crime-fraud exception, the movant must satisfy a two-part test: that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme" and that the attorney-client communications for which production is sought are "sufficiently related to" and were made "in furtherance of [the] intended, or present, continuing illegality." *Roe v. White*, No. 03-cv-4035, 2014 WL 842790, at *2 (N.D. Cal. Feb. 28, 2014) (quoting *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007)). This Court has not yet needed to reach the issue of the crime-fraud exception. But in this unusual case, the exception clearly applies, and it should be invoked to compel the production of documents for which privilege has not already been waived (*see supra* Parts I, II).

"Every person who buys or <u>receives any property that has been stolen</u> or that has been obtained in any manner constituting theft or extortion, <u>knowing the property to be so stolen</u> or obtained, or who conceals, sells, withholds, <u>or aids in</u> concealing, selling, or <u>withholding any property from the owner</u>" is guilty of a crime. Cal. Penal Code § 496(a) (emphasis added). This crime has two elements. The accused must receive property that has been stolen. *People v. Davis*, No. E036572, 2005 WL 2767132, at *4 (Cal. App. Oct. 26, 2005). And the accused must know the property was stolen. *Id.* There is substantial evidence of both here.

The Court already found that there is "compelling evidence" that Levandowski "downloaded over 14,000 confidential files from Waymo" and that "Uber likely knew or at least should have known that Levandowski had taken and retained possession of Waymo's confidential files." (Dkt. 433, 1, 2.) The Court also already found that Stroz, acting as Uber's agent, "collected and analyzed" various "devices and cloud-based storage" retrieved from Levandowski (and others) as part of an investigation into trade secret misappropriation and other Bad Acts. (Dkt. 566 at 4-5.) Stroz issued multiple reports on its findings, at least one of which attached files retrieved from Levandowski and was distributed to Uber, Ottomotto, MoFo, OMM, Donahue Fitzgerald, and Levine & Baker. (*Id.* 5.) Uber's counsel Boies Schiller has now "clarified" that MoFo has been in possession of the stolen files[5] to the extent they are:

> (1) <u>excerpted in or as an exhibit to the Stroz Report</u>, which is privileged; and (2) in certain <u>materials AL and other persons provided to Stroz to which MoFo was given limited access</u> during the Stroz investigation pursuant to the terms of the AL-Stroz contract and the protocol governing the investigation, and under strict conditions preventing MoFo from sharing those materials with anyone, including Uber.

(Ex. 6.)[6] And from at least March 11, 2016 through November 18, 2016, those same actors

---

[5] MoFo originally represented that it did not have any of the stolen materials. (Ex. 6.)

[6] MoFo – and all other lawyers who received the stolen materials – had an ethical obligation to return them to Waymo immediately. *E.g.*, *Lynn v. Gateway Unified Sch. Dist.*, Case No. 2:10-cv-00981, 2011 WL 6260362, at *6 (E.D. Cal. Dec. 15, 2011) (disqualifying attorney who took possession of stolen emails, which possibly violated the California Penal Code, improperly

4

exchanged literally thousands of communications regarding what to do with the stolen files.[7] What they did <u>not</u> do is return the stolen files to Waymo.

This evidence more than demonstrates a "reasonable cause to believe" that attorney services were "utilized . . . in furtherance of" the unlawful concealing and withholding of property stolen from Waymo in violation of Section 496(a) of the California Penal Code. *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996). Courts have and should compel disclosure of privileged attorney-client communications related to the possession and use of stolen property, including trade secrets. *E.g.*, *In re Uehling*, No. 1:13-mc-22, 2013 WL 3283212, at *7 (E.D. Cal. June 27, 2013) (ordering party to reveal whether his counsel instructed him to retain copies of stolen trade secrets). This Court should compel such disclosure here.

Should the Court conclude that the current record[8] is insufficient to compel production of all otherwise privileged documents pursuant to the crime-fraud exception, Waymo would request that the Court order Defendants to produce at least all privileged communications that refer to the location of Waymo's documents within 24 hours. Such documents fall squarely within the crime-fraud exception,[9] and Defendants and their lawyers should not be permitted to continue to conceal the location of stolen property. Waymo would further request that the Court authorize Waymo (i) to take the immediate depositions of MoFo and OMM (separate from other discovery limits and with guidance that questions about communications for which there has already been a waiver (*see* Parts I, II) must be answered), and (ii) to then supplement its record on this motion.

### IV. All Privileges Asserted In Defendants' Logs Have Been Waived Because The Logs Are Deficient, Self-Serving, Inaccurate, And Unreliable

The adoption of any one of the principles above would ordinarily result in the production of certain categories of documents identifiable from Defendants' logs. But the logs provided in this case are so deficient and have been <u>proved</u> so unreliable that they are essentially meaningless and cannot be used for that purpose or any other. Some examples are illustrative:

- Defendants produced documents from their initial logs for which <u>not a single descriptor</u> (date, recipient, etc.) corresponded to the associated document. (¶¶ 13-18 & Exs. 12-14.)

- Defendants applied the same self-serving descriptors to vast swaths of documents regardless whether they are true – *i.e.*, describing executed employee attestations as "concerning legal analysis or advice" (¶¶ 13-18 & Exs. 12-14) and describing a "nearly verbatim" witness

---

suppressed evidence of a crime, and breached attorney's ethical duties).

[7] Defendants conceded as much when they served their privilege logs in response to the Court order requiring production of information regarding the stolen materials. (Dkt. 61.)

[8] Waymo does not have access to the Stroz report and exhibits, as their production is currently stayed. The Court has access to these documents *in camera* such that it may take them into account in deciding this motion. Waymo nonetheless reserves its right to supplement the arguments and record made here if and when the Stroz report and exhibits are produced.

[9] As summarized in the Restatement (Third) of the Law Governing Lawyers (§ 82 cmt. e), for crimes like theft that have continuing legal consequences, "[c]onfidential communications concerning ways in which Client can continue to possess the stolen goods, <u>including information supplied by Client about their present location</u>, are not protected by the privilege because of the crime-fraud exception" (emphasis added).

5

statement as an "analysis" (Dkt. 566, 23; Dkt. 321-2 (entry 5)).

- Defendants used the date of cover emails for the date of associated attachments, regardless whether such dates are accurate, even though Defendants contend that timing is key to privilege determinations in this case. (Ex. 8; ¶¶ 19-22 & Exs. 1 & 8.)
- Defendants used "and/or," such that Waymo cannot tell whether an entry relates to Levandowski "and/or" another Diligenced Employee (for which no common interest agreement is identified). (¶¶ 23-24 & Exs. 1 & 2.) They listed entire law firms as authors/senders , even though Waymo is entitled to know (and potentially depose) the individual authors/senders. (¶¶ 25-26 & Ex. 1.) Defendants failed to identify the parties to contracts over which Defendants are somehow asserting a privilege. (¶¶ 27-28 & Ex. 1.)
- Defendants are treating documents with <u>identical</u> senders/authors, recipients, and subject matters <u>differently</u> in response to the Court's order on Waymo's motion to compel (*i.e.*, producing one but not another). (¶¶ 29-33 & Exs. 1, 9 & 11.)[10]

Waymo repeatedly expressed concern over the apparent unreliability of and deficiencies in the logs and – when Defendants failed to address those concerns – stated its intent to make a motion. (Ex. 7.) Waymo agreed to delay that motion only when Defendants stipulated that – rather than stand on the logs they had served – they would amend their logs to provide accurate, detailed entries. (Ex. 9.) But that stipulation was just an excuse to delay Waymo's motion: Defendants' amended logs did not address a single one of the issues identified above.[11]

The amended logs are unreliable and effectively preclude Waymo from making specific challenges to specific privilege assertions over specific documents.[12] Waymo made clear that it intended to seek a waiver ruling on these grounds (Ex. 7), but Defendants steadfastly refuse to provide adequate logs. Consistent with this Court's standing orders and specific instructions (Dkt. 152, 28), Waymo requests a ruling that all privileges asserted in the logs are waived.

---

[10] Waymo does not have full visibility into Defendants' logs and is thus unable to identify or describe the full nature and scope of the problems with those logs or to tally the number of entries that do not accurately describe documents being withheld.

[11] Two amended logs appear to include no changes; one appears to include only a handful of changes, the vast majority of which were to add a "sender/author" or a "privilege assertion" where such field had previously been left blank.

[12] The extent of the problem came into sharp relief when Defendants finally indicated which documents they intended to withhold, produce in part, and produce in full if the order compelling production of the Stroz materials were to be affirmed. Waymo cited examples where such indications seemed contrary to Defendants' own position regarding the effect of that order – *e.g.*, Defendants planned to withhold communications dated April 7, 2016, sent/authored by four law firms, with "CI" as an asserted privilege. (Ex. 10; Ex. 1 (entries 857, 861, 862).) Defendants responded that those communications are actually "drafts with comments from attorneys for Uber, exchanged among attorneys for Uber." (Ex. 10.) That description is contrary to the description in the log, and Defendants should not now be heard to offer a different description to support their privilege assertion. Should the Court decline to find that all asserted privileges in these logs have been waived, it should at least order the production of all documents for which the "CI" privilege when there was no common interest.