JONATHAN A. PATCHEN
ATTORNEY
jpatchen@taylorpatchen.com

TAYLOR & PATCHEN, LLP

July 5, 2017

The Honorable Judge Jacqueline Scott Corley
U.S. District Court for the Northern District of California
San Francisco Courthouse, Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re: *Waymo LLC v. Uber Technologies, Inc. et al*, No. 3:17-cv-00939-WHA

Dear Judge Corley:

Waymo LLC ("Waymo") issued a subpoena to Stroz Friedberg ("Stroz") seeking every document Mr. Ron provided to Stroz (the "Stroz subpoena"). Waymo did not alert Mr. Ron that it was seeking such records, nor did Stroz. And Waymo knew, at least as early as the date of its deposition of Mr. Ron, that Mr. Ron had provided his personal devices to Stroz. When Mr. Ron discovered, belatedly, that this Court had ordered Stroz Friedberg to produce all the material he had provided to Stroz, he promptly moved to intervene, seeking to protect from discovery his irrelevant, personal, and private information. Judge Alsup denied that request without prejudice, directing that it be raised with Your Honor in the first instance.

Meanwhile, the day before Judge Alsup issued his Order, Waymo served a document subpoena on Mr. Ron (the "Ron subpoena"). That subpoena, unlike Waymo's subpoena to Stroz, did not seek every document Mr. Ron provided to Stroz. Rather, the subpoena was limited to those topics that Waymo deemed relevant to the litigation. Counsel for Mr. Ron promptly conferred with counsel for Waymo, confirmed that Mr. Ron had possession, custody, or control of the materials he had provided to Stroz, and proposed that production of his materials be dealt with through the Ron subpoena, rather than the Stroz subpoena. Waymo's counsel declined that proposal and offered no alternative, apparently under the mistaken belief that Waymo was entitled to the entirety of Mr. Ron's digital life for it to search through at its convenience. Waymo is wrong. Mr. Ron—a third party against whom Waymo has made no allegations in this litigation—is entitled to protection. He therefore asks this Court to institute by order what Waymo refused to do by compromise, allowing him to intervene, quashing the portions of the Stroz subpoena directed to the production of his materials, and directing Waymo to obtain relevant documents through the Ron subpoena.

TAYLOR & PATCHEN, LLP

Magistrate Judge Jacqueline Scott Corley
July 5, 2017
Page 2

### I.   THE COURT SHOULD ALLOW MR. RON TO INTERVENE

Mr. Ron has a legitimate privacy interest in a significant number of the documents related to him that would be produced through the Stroz subpoena.  This interest has not been adequately represented in this litigation so far and, because Mr. Ron only recently became aware of the subpoena and has not previously been heard on this issue, he now seeks relief on this narrow issue.  The Court should allow him to do so.

Mr. Ron first became aware of the Stroz subpoena after the Court's June 21, 2017 Order Granting Motion to Compel Stroz Documents and Denying Motions to Quash (Dkt. 670; the "Stroz Order").  (Dkt. 729-2 at ¶ 6; Dkt. 729-1 at ¶ 3.)  Because the Stroz Order stated that any objections must be filed with the district court by June 23, 2017, and in the interest of providing minimal disruption to the case schedule, Mr. Ron filed a motion to intervene to seek partial relief from the Stroz Order with the district court on June 23, 2017.  (*See* Dkt. 729.)  On June 27, 2017, Judge Alsup issued an Order denying Mr. Ron's motion without prejudice to its renewal before Your Honor, noting that Your Honor was in "the best position to evaluate it."  (Dkt. 745.)

In response, Mr. Ron's attorneys reached out to Waymo's counsel to meet and confer regarding this issue and, specifically, to see if Waymo would agree not to seek ***all*** of Mr. Ron's documents from Stroz in light of the Ron Subpoena.  (Declaration of Jonathan Patchen ("Patchen Decl."), Ex. C (June 30, 2017 e-mail from J. Patchen to D. Perlson).)  On July 4, 2017, counsel for Waymo responded that—despite the fact that Mr. Ron and his attorneys were not informed about the subpoena or that his documents were at issue—it was Waymo's position that these issues should have been raised in earlier motion practice and that it expects Stroz to comply with the subpoena in full.  (Patchen Decl., Ex. D (July 4, 2017 e-mail from D. Perlson to J. Patchen).)  Waymo's counsel did not address the fact that it has sought Mr. Ron's relevant documents from Mr. Ron directly.  (*See id*.)

As a result, Mr. Ron now moves to intervene in order to litigate this motion to quash or, in the alternative, motion for a protective order pursuant to the rules governing mandatory intervention.  *See* Fed. R. Civ. Proc. 24(a)(2).  The Ninth Circuit applies a four-part test for mandatory intervention:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

ONE FERRY BUILDING, SUITE 355, SAN FRANCISCO, CA 94111   T 415.788.8200   F 415.788.8208

TAYLOR & PATCHEN, LLP

Magistrate Judge Jacqueline Scott Corley
July 5, 2017
Page 3


*State ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006) (quotation omitted). All four of these factors weigh in favor of granting Mr. Ron's motion to intervene.

*First*, the motion to intervene is timely. "The 'timeliness' requirement of Rule 24 is to be construed broadly in favor of the party seeking intervention." *United States v. Andrews*, No. MISC-95-280 GEB PAN, 1996 WL 442730, at *1 (E.D. Cal. May 24, 1996). Courts generally look at "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996) (citation omitted). Here, the documents have not yet been produced and there is no prejudice to other parties, as the district court stayed enforcement of the Stroz Order until today, and the Federal Circuit has further temporarily stayed the Order pending Mr. Levandowski's emergency appeal. Mr. Ron would have filed this motion sooner had he been aware of the subpoena to Stroz before Your Honor issued the Stroz Order. But, neither Mr. Ron nor his attorneys were notified of the Stroz subpoena. (Dkt. 729-2 at ¶ 6; Dkt. 729-1 at ¶ 3.) As a result, Mr. Ron timely filed a motion with the district court after first becoming aware of the Stroz subpoena and its implications for his privacy rights. And Mr. Ron brings these motions now shortly after the district court's July 27, 2017 Order instructing him to do so and following its attempt to try to resolve this dispute with Waymo without involving the Court. (*See* Dkt. 745.)

*Second*, Mr. Ron's privacy interest is a "significantly protectable interest" that Mr. Ron would not be able to protect if the Court enforced Waymo's broad subpoena. *See Lockyer*, 450 F.3d at 441. The Ninth Circuit has "taken the view that a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.*; *see also SW Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) ("We follow the guidance . . . that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'"). Here, Mr. Ron's privacy rights are guaranteed by the California Constitution, recognized federally, and directly implicated by a large majority of the documents related to Mr. Ron that are sought through the Stroz subpoena. *See* Cal. Const. Article 1, Section 1; *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995). Other courts have found that an intervenor's rights would not be adequately protected if property containing personal information—the type of information contemplated here—were released to a Plaintiff. *See, e.g.*, *Mims v. United States*, No. CV-16-00585-PHX-JAT (BSB), 2016 U.S. Dist. LEXIS 149779, at *3 (D. Ariz. Oct. 28, 2016).

*Third*, the parties in this litigation cannot and have not adequately represented Mr. Ron's privacy interests. In the Stroz Order, in compelling the production of documents responsive to Waymo's Requests for Production Nos. 9, 12, 30, and 31 (the specific Requests at issue here), Your Honor acknowledged the significance of the fact that Mr. Ron had not objected to their production. (Dkt. 670 at 9.) Uber did not object to Stroz's production of these

TAYLOR & PATCHEN, LLP

Magistrate Judge Jacqueline Scott Corley
July 5, 2017
Page 4

materials at all.  And, while Mr. Levandowski did object by saying that there may be some devices that may contain his own personal, private information not relevant to the litigation, Your Honor noted that the Court could not make that finding as to Mr. Levandowski because he "has refused to testify in this action."  (*Id*.)[1]  Mr. Ron, in contrast, has been deposed in this action and in the process of doing so did not assert his Fifth Amendment rights.  Mr. Ron is also uniquely aware of the multitude of his and his family's personal, private information that is in Stroz's possession.  In other words, Mr. Ron *can* testify to the contents of this information and he has done so. (Dkt. 729-2 at ¶ 8.)  The other parties' oppositions to Waymo's motion to compel thus did not sufficiently protect Mr. Ron's interests.  Indeed, their roles in this litigation are quite different from Mr. Ron, who is a non-party against whom there are no allegations of trade secret misappropriation, who never developed LiDAR, and who never worked at Waymo or on the Chauffeur team at Google.  (*Id*. at ¶ 2.)

For the above reasons, the Court should grant Mr. Ron's motion for mandatory intervention under Federal Rule of Civil Procedure 24(a).  To the extent the Court finds that mandatory intervention is not appropriate, it should grant Mr. Ron permissive intervention on this narrow issue.  *See Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1997) (noting that a trial court has broad discretion to grant permissive intervention under Rule 24(b)).

## II.     MR. RON REQUESTS THAT THE COURT QUASH WAYMO'S SUBPOENA AS IT RELATES TO THE PRODUCTION OF MR. RON'S DOCUMENTS

Mr. Ron requests that the Court quash Request Nos. 9, 12, 30, and 31 of the Stroz subpoena as they relate to Mr. Ron.  As the Requests are framed, compliance with the Stroz Order would result in Stroz producing hundreds of thousands of Mr. Ron's personal and private documents that are both irrelevant to the issues in this litigation and were not used in the due diligence process.

For context, as part of the Stroz due diligence process, Mr. Ron provided Stroz with access to *all* of his personal electronic devices, as well as his personal Cloud accounts, which includes all of his personal email and storage accounts.  (Dkt. 729-2 at ¶ 4.)  Stroz did a forensic collection of these sources that resulted in the collection of over six hundred

---

[1] Your Honor indicated the Court would, after the resolution of any pending privilege issues, "address whether a protocol is appropriate to protect any privacy interests."  (Dkt. 670 at 9.)  But, as Mr. Ron did not have the capacity to previously object, it appears that such a protocol would only be directed at protecting Mr. Levandowski's privacy interests at this time.

TAYLOR & PATCHEN, LLP

Magistrate Judge Jacqueline Scott Corley
July 5, 2017
Page 5

thousand files.  (Dkt. 729-1 at ¶ 6.)  This set of documents captures the entirety of Mr. Ron's digital life over several years and includes private and sensitive information, such as Mr. Ron and his family's personal banking records; state and federal U.S. tax returns and preparation documents; financial investments; online purchases; social engagements; credit card information; passwords; loan information; and personal communications that are wholly unrelated to the dispute.  (Dkt. 729-2 at ¶ 8.)  This information "falls squarely within the umbrella of California's privacy right," which requires that Waymo show a "compelling need for the particular documents."  *Music Group Macao Commer. Offshore Ltd. v. Foote*, No. 14-cv-03078-JSC, 2015 U.S. Dist. LEXIS 60785, at *6-8 (N.D. Cal. May 7, 2015) (J. Corley).  Only a small subset, if any, of these more than six hundred thousand files will have any relevance to the due diligence process and therefore, *at most*, only that subset has any possible relevance to this litigation.  And, there is no need for speculation regarding relevance, as the Ron subpoena requests all of the documents in Mr. Ron's possession, custody, or control that it deems relevant to the case.  (Patchen Decl., Ex. B (Ron subpoena).)

The Stroz subpoena Requests in dispute are not tailored to the issues in this case and will result in the production of *all* of Mr. Ron's documents.  For instance, Request No. 9 seeks "All documents provided to you . . . by Lior Ron . . . regarding Lior Ron . . . ." (*i.e.*, every single document that Mr. Ron has provided to Stroz).  (Patchen Decl., Ex. A (Stroz subpoena) at 11.)  Similarly, Request No. 12 seeks the "forensic data" underlying the "forensic analysis" done by Stroz, which could be construed as every document provided to Stroz regardless of whether or not Stroz actually analyzed any particular document in connection with its investigation and report.  (*Id*.)

These broad Requests are not "sufficiently relevant to justify the imposition on third-party privacy rights."  *See Kolker v. VNUS Med. Techs., Inc.*, No. C 10-0800 SBA (PSG), 2011 U.S. Dist. LEXIS 122810, at *15-17 (N.D. Cal. Oct. 24, 2011) (with respect to employee information); *Tierno v. Rite Aid Corp.*, No. C 05-02520 TEH, 2008 U.S. Dist. LEXIS 112461, at *15-16 (N.D. Cal. July 8, 2008) (rejecting requests seeking personal information of marginal relevance).  A subpoena directly to Mr. Ron to turn over *all* of his electronic devices would be improper; it therefore also should not be allowed via Stroz—particularly when Waymo has served a subpoena on Mr. Ron that is significantly more limited in scope.  And the fact that there is a protective order in this case is not sufficient to protect Mr. Ron's rights.  There is "constant danger [of dissemination] inherent in disclosure of [] information pursuant to a protective order," which requires a strong showing of need, especially as to a non-party.  *Rocky Mt. Med. Mgmt., LLC v. LHP Hosp. Group, Inc.*, No. 75-3300, 2013 U.S. Dist. LEXIS 175590, at *18 n.5 (D. Idaho Dec. 9, 2013) (citation omitted).  Waymo cannot show that it needs non-party Mr. Ron's private information unrelated to this litigation.

TAYLOR & PATCHEN, LLP

Magistrate Judge Jacqueline Scott Corley
July 5, 2017
Page 6

### III. IN THE ALTERNATIVE, A PROTECTIVE ORDER SHOULD BE GRANTED AND A PROTOCOL SHOULD BE ESTABLISHED

In the alternative, Mr. Ron moves for a protective order under Federal Rule of Civil Procedure 26(c) to protect him from the disclosure of the substantial number of personal, private documents that Waymo has compelled through Request Nos. 9, 12, 30 and 31 of the subpoena. Fed. R. Civ. Proc. 26(c) allows the imposition of protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including to protect confidential information. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). The scope of the subpoena to Stroz should be limited to only those materials that are relevant to this litigation, which is, at most, those materials that were considered by Stroz when preparing its due diligence analysis and report that actually relate to the issues in this case. Thus, Mr. Ron requests—in the alternative—that a protocol be put in place that allows Mr. Ron and his counsel to review each document before production to ensure the documents are properly designated and private information is redacted in order to protect Mr. Ron's privacy interests.

### IV. CONCLUSION

For these reasons, Mr. Ron respectfully requests that the Court grant his motion to intervene and his motion to quash Request Nos. 9, 12, 30, and 31 of Waymo's subpoena to Stroz as they relate to Mr. Ron, or, in the alternative, motion for a protective order.

Respectfully submitted,

*/s/ Jonathan A. Patchen*

Jonathan A. Patchen


cc:    Counsel of record (via ECF); Special Master John Cooper

ONE FERRY BUILDING, SUITE 355, SAN FRANCISCO, CA 94111   T 415.788.8200   F 415.788.8208