# MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

July 6, 2017

Writer's Direct Contact
+1 (415) 268.7020
AGonzalez@mofo.com

The Honorable Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse
Courtroom F - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc. et al.,* Case No. 3:17-cv-00939
      Uber's Requests to Depose Apex Witnesses

Dear Magistrate Judge Corley:

Please find below Defendant Uber Technologies, Inc. and Ottomotto LLC's response to Waymo's statement regarding depositions of Apex witnesses Larry Page, David Drummond, Eric Schmidt, Sergey Brin, and David Krane (Dkt. 783).

Respectfully submitted,

*/s/ Arturo J. González*

Arturo J. González

sf-3801657

It is clear from discovery currently available that Mr. Page was intimately involved in Project Chauffeur and has unique knowledge about that project and Waymo's trade secret claims. In addition, Defendants have attempted to reduce the burden on any deposition of Mr. Page, as we have told Waymo that Mr. Page does not have to be produced on July 17, and that we will wait for the production of documents pursuant to this Court's ruling (issued today) on discovery motions, and take other depositions before commencing with any Apex deposition. At this stage, Waymo has produced relatively few documents and has resisted providing discovery at every turn. Its failure to comply with discovery and position that Mr. Page's deposition must be taken, if at all, only on July 17, opens him up to additional deposition as discovery progresses. The Court should deny Waymo's request for a protective order and order Mr. Page's deposition on a date after the pending discovery from Waymo is more substantially completed. In addition, there is ample support for the deposition of Mr. Drummond who has unique knowledge of communications with Uber that Defendants are entitled to probe.

"When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition. *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). The burden is on Waymo to show that these depositions should not go forward.[1] Waymo has not met this burden. First, these witnesses have unique and personal knowledge of the facts at issue, and Defendants have exhausted the less intrusive discovery methods available under the compressed discovery schedule in place at Waymo's behest. Second, the Court's decision that Mr. Page's deposition should not proceed during the preliminary injunction phase of this case has no bearing on whether his deposition is proper now. Finally, we have told Waymo that Defendants do not currently seek to depose Mr. Brin, Mr. Schmidt, and Mr. Kraus.

## I.     Mr. Page's Unique and Personal Knowledge

Mr. Page was deeply involved in all aspects of Chauffeur from the beginning, including development of purported trade secrets Waymo now claims were misappropriated. Mr. Page and Anthony Levandowski had conversations regarding Mr. Levandowski's desire to develop self-driving products, including trucks, either through Chauffer or by setting up his own venture. Waymo does not deny that Mr. Page had such conversations, and substantial evidence has been developed to support it. In January 2016, Mr. Levandowski and Mr. Page had at least a one on one meeting and exchanged long emails regarding Chauffeur. (*See* Exs. A & B (WAYMO-UBER-00011746; WAYMO-UBER-00011779.) As Mr. Levandowski has asserted his Fifth Amendment rights, Mr. Page is the only person who can speak on these communications. Further, Lior Ron has testified that Mr. Levandowski discussed his goals regarding autonomous trucking and aftermarket kits for self-driving cars with Mr. Page before Mr. Levandowski resigned from Waymo. (Ron Dep. Tr. 260:5-21.) John Bares has also testified that prior to his departure, Mr. Levandowski "met with Larry and Sergey and Astro and they tried to talk him away from leaving." (Bares Dep. Tr. 238:12-239:1; 305:25-

---

[1] *Id.* ("[A] party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied"); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C-07-05634 CRB (DMR), 2014 WL 939287, at *2 (N.D. Cal. Mar. 6, 2014) ("[T]he party opposing discovery—here, ANA—bears the burden of showing that the deposition should not be allowed").

sf-3801657

306:17.) Finally, Pierre Yves-Droz testified that Mr. Levandowski even presented to Mr. Page on potential opportunities for Google to invest in or enter into cross-licensing agreements with the company Mr. Levandowski planned to start to pursue these projects. (Droz Dep. Tr. 139:16-22.) "Where [as here] the testimony of lower level employees indicates that the apex deponent may have some relevant personal knowledge, the party seeking protection will not likely meet the high burden necessary to warrant a protective order." *Kennedy v. Jackson Nat. Life Ins. Co.*, 2010 WL 1644944, *2 (N.D. Cal. 2010).

Relatedly, Google allows executives to work on side ventures, even if they may compete with Google. (Indeed, Mr. Page himself engages in a competing business.) Mr. Page's knowledge is relevant to rebut Waymo's claims that Mr. Levandowski acted improperly by meeting with Uber to discuss autonomous opportunities. Defendants need to question Mr. Page about his conversations with Mr. Levandowski, and about Google's policy on side businesses (including who approved his competing venture), in order to provide context for Mr. Levandowski's conversations with Uber, departure from Waymo, and founding of Ottomotto and Otto Trucking.

Mr. Page also had conversations with Uber's then-CEO Travis Kalanick that took place after Waymo discovered Mr. Levandowski's alleged theft of 14,000 files. Importantly, Mr. Page did not mention these files to Mr. Kalanick and did not suggest that Mr. Levandowski had done anything wrong. Defendants should be allowed to question Mr. Page as to why he did not advise Uber of the alleged theft, even though he knew Mr. Levandowski had gone to Uber to work on its autonomous vehicle project. **If Waymo might produce Mr. Page to testify about such conversations (or to claim that they did not happen), Uber needs to know what Mr. Page will say**.

Mr. Page also has personal knowledge of Google's discussions of a partnership with Uber, including a lunch meeting to discuss this topic between Mr. Page, Mr. Kalanick, and Mr. Drummond on March 10, 2015. (Ex. C.) Mr. Page also has knowledge about why Waymo rejected that avenue and instead chose to compete with Uber. Discussions regarding competing with Uber are particularly probative because Google invested in Uber through Google Ventures, the venture capital arm of Waymo's parent Alphabet, Inc., and Mr. Drummond sat on Uber's Board of Directors. Mr. Page's testimony on these business strategies and decisions is inherently unique. Any such competitive business decisions are relevant to the issues in and motivations behind this lawsuit, and to damages.

## II.    Mr. Drummond's Unique and Personal Knowledge

Mr. Drummond also has unique knowledge of multiple critical issues. First, Mr. Drummond had conversations in 2015 with Mr. Kalanick regarding a potential partnership between Uber and Google in the self-driving car space. Mr. Kalanick and Mr. Drummond exchanged emails in early 2015 in which Mr. Kalanick expressed an interest in partnering with Google and requested a meeting with Mr. Page about Google's entrance into the self-driving car space. (Exs. D & E.) That led to the lunch meeting reference above with Mr. Page.

Moreover, Mr. Drummond held a position on Uber's Board of Directors from 2013 through 2016. (Ex. F, a newsletter discussing Mr. Drummond's role on the Uber Board of Directors

2

sf-3801657

in the context of Uber and Google becoming competitors in the self-driving car space.) During that time, Mr. Drummond had access to Uber's business plans and strategy for its self-driving car program.

In light of Mr. Drummond's conversations with Mr. Kalanick and position on Uber's Board of Directors, Defendants need to depose Mr. Drummond about the following topics: Mr. Drummond's knowledge of Google's plans to compete against Uber, Google's refusal to enter into a partnership with Uber, and Uber's plans to acquire Ottomotto; the timing of such knowledge; and whether that knowledge coincided with his membership on Uber's Board of Directors.

### III.    No Less Intrusive Methods Available

There appears to be no substitute for the personal testimony of Mr. Page and Mr. Drummond on these highly relevant topics. The competitive and business-sensitive nature of the issues makes the deposition testimony of these witnesses indispensable, as does the fact that there are conversations in which one of these individuals was the only adverse witness present.

Waymo suggests that the participation of Mr. Levandowski or Mr. Kalanick in any conversations with Mr. Page or Mr. Drummond obviates Uber's need to depose these witnesses. But that ignores the fact that Mr. Levandowski will not testify at trial. It also ignores that the apex witness doctrine applies only in situations where a lower level employee of the same company has the information sought from an apex witness. *See e.g., Kennedy,* 2010 WL 1644944, *2. That Mr. Kalanick is able to testify about communications he had with Mr. Page or Mr. Drummond does not support Waymo's motion as Mr. Kalanick is not a lower level employee of the same company, are adversarial in this litigation, and may have different accounts of the conversations. Mr. Page's and Mr. Drummond's testimony about their conversations with Mr. Levandowski and/or Mr. Kalanick is crucial for many reasons, including for allowing the fact-finders in this case to assess the credibility of any divergences in the descriptions of these conversations.

In addition, it should be noted that exhaustion of alternative sources is "a consideration, not a requirement." *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, at *5. Here, given the time constraints imposed by Waymo's insistence on an expedited schedule, Defendants should not be prejudiced by the fact that it must take these depositions during the early stages of fact discovery. *Medimmune, LLC v. PDL Biopharma, Inc.*, No. C08-05590 JF (HRL), 2010 WL 2640473, at *2 (N.D. Cal. June 30, 2010) ("[T]here is insufficient time to hold off on [the executive's deposition] until all other possible sources of relevant testimony have been exhausted").

### IV.    Preliminary Injunction Phase is Irrelevant

Waymo's letter makes much of the fact that Mr. Page's deposition was not permitted during the preliminary injunction phase of expedited discovery. That ruling does not dispose of the current motion. First, as this Court recognized, the only consideration at that time was whether the deposition was necessary for the limited purpose of Defendants' preliminary injunction sur-reply. (April 25, 2017, Hr. Tr. at 6-7; 21) ("His deposition may very well be

3

appropriate once discovery is opened on particular … things."). Second, at the prior hearing the Court noted that Defendants position would be strengthened if Mr. Levandowski were no longer employed by Uber. (*Id.* at 18-19). Since then, Mr. Levandowski has been fired. Third, subsequent discovery has provided additional bases, detailed above, that support the need for Mr. Page's deposition. For these reasons, the outcome of the earlier dispute has no bearing on whether Mr. Page's deposition is proper at this time.

## V.   Waymo's Arguments Regarding Additional Apex Depositions are Premature

Waymo's argument that the depositions of Mr. Brin, Mr. Schmidt, and Mr. Kraus are improper is premature. Defendants have not yet noticed the depositions of any of these individuals, nor are Defendants required to do so by some arbitrary deadline. Discovery is still in the early phases, and has been largely one sided.[2] Defendants' review of documents not yet produced and information obtained via upcoming depositions will allow Defendants to determine whether to pursue these depositions.

## VI.   Deposition Length

Finally, with respect to the length of any Apex deposition, we note that Waymo is deposing most of Uber's top executives and we have not requested time limitations. It is our expectation that Waymo will take only what time is reasonably necessary to complete the depositions, and we intend to do the same.

---

[2] At this time, Waymo has propounded 287 regular RFPs (in addition to 26 expedited RFPs and 77 RFPs during the preliminary injunction phase), propounded 28 expedited interrogatories, and taken 19 depositions, in addition to informal discovery requests propounded after inspections and elsewhere. Uber has produced to Waymo more than 23,900 documents, consisting of more than 77,000 pages. By contrast, Waymo has produced only 3,709 documents, totaling only 18,193 pages.

4