1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Bar No. 170151)
2     charlesverhoeven@quinnemanuel.com
      David A. Perlson (Bar No. 209502)
3     davidperlson@quinnemanuel.com
      Melissa J. Baily (Bar No. 237649)
4     melissabaily@quinnemanuel.com
      John Neukom (Bar No. 275887)
5     johnneukom@quinnemanuel.com
      Jordan Jaffe (Bar No. 254886)
6     jordanjaffe@quinnemanuel.com
    50 California Street, 22nd Floor
7   San Francisco, California 94111-4788
    Telephone:     (415) 875-6600
8   Facsimile:     (415) 875-6700

9   Attorneys for WAYMO LLC

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                     SAN FRANCISCO DIVISION

13   WAYMO LLC,                          CASE NO. 3:17-cv-00939

14              Plaintiff,               **PLAINTIFF WAYMO LLC'S REPLY IN
                                         SUPPORT OF ITS MOTION FOR RELIEF
15        vs.                            FROM NON-DISPOSITIVE PRETRIAL
                                         ORDER OF MAGISTRATE JUDGE (DKT.
16   UBER TECHNOLOGIES, INC.;            731)**
     OTTOMOTTO LLC; OTTO TRUCKING LLC,
17                                       Judge: The Honorable William Alsup
              Defendants.
18                                       Trial Date: October 10, 2017

19

20                                       **PUBLIC REDACTED VERSION OF
                                         DOCUMENT SOUGHT TO BE SEALED**

21

22

23

24

25

26

27

28

Per the Court's authorization (Dkt. 781), Waymo respectfully submits this Reply in Support of its Motion for Relief from the Non-Dispositive Pretrial Order of the Magistrate Judge (Dkt. 731).

## I.   Defendants' Defective Privilege Logs Result In A Waiver Of All Privileges

Defendants allege that "Waymo offers **no authority** to support its contention" that the privilege logs are inadequate.  (Dkt. 800 at 3-4.)  This is false.  Waymo cited the Standing Order governing this very case, as well as the Court's repeated instructions regarding the level of detail expected from Defendants' logs.  (Dkt. 779 at 3:15-18.)  In their Opposition, Defendants simply ignore this argument, as they have ignored the Court's guidance.

Defendants also fail to demonstrate that they have provided adequate logs.  Defendants do not dispute that they have applied some version of the same boilerplate description for nearly all of their 3,162 privilege log entries.  These entries basically disclose only that the withheld documents pertain to "anticipated litigation . . . regarding acquisition of Ottomotto."  (Dkt. 778-3 at 2.)  In a prior Order, this Court made clear that similarly vague descriptions—stating, for example, that a particular document concerned a "due diligence report"—would not suffice.  (Dkt. 202 at 5.)  Such entries, held the Court, would leave important questions unanswered "such as why the report was prepared, whether it referred to any of the downloaded files, and for what purpose each recipient used it."  (*Id.* (parenthesis omitted).)  Yet, these essential pieces of information remain missing from Defendants' current privilege logs.[1]  (Dkts. 636-5 (MoFo), 636-7 (OMM), 636-9 (Uber).)

The example of the "interim report" provided by Waymo it its Motion (Dkt. 779 at 2:14-21) is illustrative of the problem.  Defendants claim that these log entries "correctly denote" the type of document withheld, the author, and the recipient.  (Dkt. 800 at 4.)  But even if true,[2] this misses the

---

[1]   The "do over" logs served by Defendants on June 30 pursuant to Judge Corley's order **still** do not cure these overly vague subject-matter descriptions.  To spare the Court another 1,000 page of exhibits, Waymo does not attach those logs here, but will do so upon request from the Court.

[2]   Defendants now claim that these entries relate to the delivery of a mere draft interview memorandum.  (Dkt. 800 at 4 n.2.)  But, Judge Corley noted from her *in camera* review that Stroz appeared to have delivered an "interim report" to Uber's outside counsel (Dkt. 566 at 5:6-13), and Defendants have never once contested this finding.  Also, when Judge Corley asked about the log entries that related to the "interim report" at the June 23 hearing, Defendants did not deny that Stroz had, in fact, provided an "interim report."  (Hr'g Tr. at 25:17-26:18, 44:1-4.)  It is unclear to

1    point. These entries—which are indistinguishable from the other boilerplate entries on Defendants'

2    logs—are entirely devoid of substance, and they certainly did not indicate to Waymo or the Court that

3    Stroz was delivering to Uber's outside counsel "interim" information for the purpose of allowing Uber

4    to determine whether to enter into the Put-Call Agreement. This information was **_critical_** to Judge

5    Corley's original Order (Dkt. 566 at 5:6-13, 16:5-10, 18:9-19), and it only came to light as a result of

6    Judge Corley's attention to the _in camera_ record. There is no telling what other key information

7    Defendants' logs are currently obfuscating, and an across-the-board waiver finding is necessary.[3]

8        Defendants similarly fail to explain away their other privilege log deficiencies. _First_,

9    Defendants are withholding attachments to documents that post-date April 11, 2016, even if such

10    documents were created prior to April 11, 2016. Defendants contend that this is not problematic,

11    because earlier versions of such documents will be "separately produced." (Dkt. 800 at 5.) But, as

12    Waymo explained at the hearing, there has been no showing that these post-April 11 attachments are

13    still in existence and/or have not been lost. (6/23 Hr'g Tr. at 24:3-6.) Defendants' declaration merely

14    states that they will not withhold earlier versions of the same documents that might happen to exist

15    (Dkt. 659 ¶ 12), but makes no attempt to demonstrate that such earlier versions do exist and will be

16    produced. This is not acceptable and illustrates the shortcuts that Defendants have taken in their logs.

17        _Second_, Defendants' logs have not cured the "and/or" issue. By Waymo's count, the MoFo

18    log alone continues to describe potential document recipients with the "and/or" descriptor in no less

19    than 130 log entries. (Dkt. 636-5.) This issue is important because, as Defendants acknowledge (Dkt.

20    800 at 5), certain individuals who may have received documents were not part of the purported joint

21    defense group. Defendants now argue that these documents would at least be privileged under _Upjohn_

22    _v. United States_, 449 U.S. 383, 395 (1981), because the additional recipients were all Ottomotto

---

23    Waymo what actually is being withheld, but the indefiniteness of Defendants' log entries

24    contributes to the confusion on this subject.

25    [3]   Uber's recent Opposition to Waymo's Motion for an Order to Show Cause (Dkt. 806) further demonstrates the prejudice of Defendants' vague privilege log entries. In the Opposition, Uber now argues it should not be held in contempt for failing to disclose its knowledge that

26    Levandowski destroyed five discs of Waymo information in his possession, because "Uber has produced a privilege log identifying the emails referencing any possible downloaded material" (_id._

27    at 16). Tellingly, however, Uber does not identify the log entry number, and the operative versions of the logs provided no clue that Uber was withholding documents reflecting

28    Levandowski's possession of Waymo material and subsequent destruction of the same.

1   employees.  But, again, there is no showing by Defendants that this was the case—Defendants cannot

2   even definitively say who received what document when.

3        *Third*, further underscoring the sloppiness of Defendants' logs is their listing of entire law

4   firms, rather than individual attorneys, as authors.  Defendants claim in their brief that this was

5   necessary because the "metadata does not reflect individual authors."  (Dkt. 800 at 5.)  But this

6   representation is inconsistent with the attorney Declaration that Defendants submitted in support of

7   their opposition to Waymo's motion before Judge Corley.  The Declaration submitted to Judge Corley

8   (which Defendants' tellingly do not cite here) merely states that the documents did not "readily reflect"

9   individual author information.  (Dkt. 659 ¶ 15.)  In other words, logging individual authors would have

10  required individualized treatment, which Defendants apparently were not willing to provide.

11       *Fourth*, Defendants' claim to have corrected their over-inclusive reliance on the "common

12  interest" doctrine in their logs served on June 30.  But, it is the prior, mid-June versions of the logs that

13  are at issue for purposes of this Motion.  And in those earlier versions, it is undisputed that Defendants

14  asserted the common interest privilege where they knew it did not apply.  As a result, Defendants

15  contended that Waymo could not rely on their assertions of the common interest privilege to determine

16  which documents would be produced in the event a common interest was not found.  The reason

17  Defendants included "common interest" amongst the bases for withholding these documents is

18  obvious: it was easier for them to simply cut-and-paste every possible privilege across multiple log

19  entries than it was to individually consider the applicable privileges on a document-by-document basis.

20  That is, Defendants intentionally served logs that were inaccurate as to the asserted privileges.  Again,

21  this illustrates the haphazard and defective nature of Defendants' logs.

22       *Fifth*, Defendants claim to have "resolved" Waymo's concern regarding the employee

23  attestations by simply removing them from their logs because they were not responsive to the Court's

24  March 16 production order.  (Dkt. 659 ¶¶ 7-10.)  But, Waymo's concern was not about whether the

25  documents should have been logged; the concern was that the log entries corresponding to these

26  documents were completely inaccurate—a fact that Defendants do not contest.  These documents were

27  part of only a select few that Waymo has actually been able to match up against Defendants' original

28  logs.  The fact that the logs entirely misrepresented these documents, casts serious doubt on the

efficacy of Defendants' remaining log entries.  For all of these reasons, the Court should find that Defendants' defective privilege logs result in waiver of all protections over all logged documents. Alternatively, Waymo requests that the Court review, or direct the magistrate judge to review, the logs and documents *in camera* to create a record as to the extent of the privilege log failings.

## II. There Was Never Any Shared Common Interest Between Defendants And Levandowski. With Regards To The Stolen Materials

Defendants argue that they did not waive privilege over post-April 11 documents shared with Levandowski because Uber's indemnification of Levandowski created a shared legal interest "in defending claims brought by Waymo for misappropriation of trade secrets."  (Dkt. 800 at 1-2, *quoting* Dkt. 731 at 4.)  But, the documents reflected on these log were not created for the purpose of formulating joint legal strategy against Waymo.  *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579 (N.D. Cal. 2007) (holding that even where a common legal interest exists as to some matters, the non-waiver principle only applies to protect those documents that were communicated in furtherance of *that* interest).  Rather, these documents were logged in response to the Court's Order requiring the production of downloaded materials and subsequent documents relating to downloaded materials.  (Dkt. 61 ¶ 4.)  This is precisely the type of material that Uber must now contend it lacked control over in order to avoid the application of the crime-fraud exception.  (Dkt. 658 at 4 ("Uber could not control Stroz or MoFo with respect to those materials given *Levandowski's directive not to disclose them to Uber absent his consent*.") (emphasis added).)  If Uber never had access to the downloaded materials that Levandowski stole from Waymo, then it cannot claim a "shared common interest" on a privilege log created to log such materials.

Further, Uber's argument that Waymo focuses on the parties' interests during the wrong time period is a strawman.  It is true that the Court must evaluate the purported common interest at the time the privilege is asserted.  But, the predictable conflicts of interest that have arisen in this case between Levandowski and the other Defendants in regards to the stolen materials is compelling evidence that the parties understood that that they lacked a common legal interest with regards to Levandowski's theft even at the time the Put-Call Agreement was signed.  Indeed, the fact that the Agreement expressly includes provisions to deal with such a conflict of interest (Dkt. 515-5 § 2.2(b)) is strong

evidence that the parties did not view their legal interests as aligned at the time of execution.  Because Defendants and Levandowski never shared a common interest in regards the stolen materials (*i.e.*, the subject matter of the March 16 Order), any documents shared with Levandowski waived privilege.

**III.   There Was Not A Common Legal Interest With Respect To The Stroz Investigation Amongst The Rest Of The Purported Joint Defense Group Until August 23, 2016.**

Defendants' various arguments as to why the purported joint defense group shared a common legal interest and lacked adversity with respect to the Stroz investigation between April 11 and August 23, 2016 are equally unpersuasive.  Defendants emphasize that "Uber was required to indemnify Levandowski, Ron and Otto even if neither Uber nor Otto[motto] ever exercised the buy/sell."  (Dkt. 800 at 3, *quoting* Dkt. 731 at 4.)  But, Defendants do not dispute Waymo's argument that the scope of indemnity *itself* was still uncertain after this date.  (Dkt. 779 at 5:11-21.)  Indeed, Judge Corley found that establishing the record for a potential indemnity claim was a primary purpose of the Stroz investigation.  (Dkt. 731 at 2:22-24.)  This record remained in flux until Stroz completed its investigation and delivered its final report immediately prior to the transaction closing on August 23.  Thus, between April 11 and August 23, the interests of Uber, Ottomotto and the Diligenced Employees were directly adverse with regard to a primary reason for the Stroz investigation.

The fact that the parties to the Put-Call Agreement held mutual options to trigger the acquisition also did not create a common legal interest in the investigation.  Defendants do not dispute Waymo's argument that Uber ███████████████████████████████ ████████████████████████████████████████████████.  Contrary to Defendants' suggestion, a ████████████████████ was not one that the parties viewed as remote or "exceedingly narrow" (Dkt. 800 at 3.)  Rather, this type of claim was ██████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████ (Dkt. 515-4.)  The fact that Uber would ███████████████████████ ██████████████████ confirms the parties' adverse interests prior to August 23, 2016.

**CONCLUSION**

The Court should grant Relief from the Magistrate Judge's Order.

DATED:  July 7, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Charles K. Verhoeven*

Charles K. Verhoeven
Attorneys for WAYMO LLC