QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
   charlesverhoeven@quinnemanuel.com
   David A. Perlson (Bar No. 209502)
   davidperlson@quinnemanuel.com
   Melissa J. Baily (Bar No. 237649)
   melissabaily@quinnemanuel.com
   John Neukom (Bar No. 275887)
   johnneukom@quinnemanuel.com
   Jordan Jaffe (Bar No. 254886)
   jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:      (415) 875-6600
Facsimile:      (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                Plaintiff,<br><br>         vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>                Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S MEMORANDUM REGARDING ADVERSE INFERENCES TO BE DRAWN FROM ANTHONY LEVANDOWSKI'S ASSERTION OF THE FIFTH AMENDMENT**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: October 10, 2017<br><br>**PUBLIC REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

Page

ARGUMENT ..................................................................................................................1

I.      There Is Sufficient Corroborating Evidence To Support Adverse Inferences On The
        Subjects Identified In Waymo's Accompanying Statement Of Proposed Questions ............1

II.     An Adverse Inference May Be Drawn Despite Levandowski's Employment Status. ...........4

        A.      The Employment Status Of A Witness Is Not Determinative Of Whether An
                Adverse Inference May Be Drawn From A Fifth Amendment Assertion. ...............4

                1.      The Relationship Between Defendants And Levandowski Support
                        Allowing The Jury To Draw An Adverse Inference. ...................................6

                2.      The Degree of Control Of Defendants Over Levandowski Support
                        Allowing The Jury To Draw An Adverse Inference. ...................................8

                3.      The Compatibility Of Interests Between Defendants And
                        Levandowski Support Allowing The Jury To Draw An Adverse
                        Inference. ......................................................................................................8

                4.      Levandowski's Role In the Litigation Supports Allowing The Jury
                        To Draw An Adverse Inference. ..................................................................9

        B.      At A Minimum, An Adverse Inference May Be Drawn From Testimony By
                Levandowski While He Was Employed By Defendants. .......................................10

CONCLUSION ...........................................................................................................11

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>CASES</u>

4

*Baxter v. Palmigiano,*
5
    *425 U.S. 308 (1976)* ................................................................................................ *1*

6
*Brink's Inc. v. City of New York,*
    *717 F.2d 700 (2d Cir. 1983)* ............................................................................... *5, 7*
7

*Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.,*
8
    *819 F.2d 1471 (8th Cir. 1987)* ..................................................................... *5, 7, 9, 10*

9
*Coquina Invs. v. TD Bank, N.A.,*
    *760 F.3d 1300 (11th Cir. 2014)* ....................................................................... *4, 7, 8, 9*
10

*Doe ex rel. Rudy-Glanzer v. Glazner,*
11
    *232 F.3d 1258 (9th Cir. 2000)* ............................................................................... *1*

12
*Federal Deposit Ins. Corp. v. Fidelity & Deposit Co.,*
    *45 F.3d 969 (5th Cir. 1995)* ..................................................................................... *5*
13

*Keating v. Office of Thrift,*
14
    *45 F.3d 322 (9th Cir. 1995)* ..................................................................................... *1*

15
*LiButti v. United States,*
    *107 F.3d 110 (2d Cir. 1997)* ............................................................................... *5, 6, 8*
16

*Nationwide Life Ins. Co. v. Richards,*
17
    *541 F.3d 903 (9th Cir. 2008)* ............................................................................... *2, 4*

18
*Pac. Gas & Elec. Co. v. Howard P. Foley Co., Inc.,*
    *Case No. 85-2922-SW, 1993 WL 299219 (N.D. Cal. July 27, 1993)* ................................ *10*
19

*Perez v. Seafood,*
20
    *Case No. 12-cv-00116-WHO, 2014 WL 2810113 (N.D. Cal. June 20, 2014)* ..................... *5*

21
*Powell v. Union Pac. R. Co.,*
    *Case No. Civ. S-09-1857 KJM-CKD, 2012 WL 3647715 (E.D. Cal. Aug. 22, 2012)* .......... *2*
22

*RAD Servs., Inc. v. Aetna Cas. & Sur. Co.,*
23
    *808 F.2d 271 (3d Cir. 1986)* ............................................................................... *5, 7, 8*

24
*SEC v. Colello,*
    *139 F.3d 674 (9th Cir. 1998)* ................................................................................... *1*
25

*SEC v. Jasper,*
26
    *678 F.3d 1116 (9th Cir. 2012)* ................................................................................. *1*

27
*In re Tableware Antitrust Litig.,*
    *Case No. C-04-3514 VRW, 2007 WL 781960 (N.D. Cal. Mar. 13, 2007)* ........................... *5*

28

1

<u>STATUTES</u>

2     *Fed. R. Evid. 801* .................................................................................................................... 8

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WAYMO'S MEMORANDUM REGARDING ADVERSE INFERENCES TO BE DRAWN
FROM ANTHONY LEVANDOWSKI'S ASSERTION OF THE FIFTH AMENDMENT

1    Per the Court's Order Regarding Early Motions *in limine* and Related Matters (Dkt. 784),

2    Plaintiff Waymo LLC ("Waymo") respectfully submits this memorandum regarding adverse

3    inferences that the jury may draw from Anthony Levandowski's assertion of the Fifth

4    Amendment.

5                                    **ARGUMENT**

6    Although the Fifth Amendment may be asserted in civil litigation, it is permissible for the

7    finder of fact to draw an adverse inference as a result.  *Baxter v. Palmigiano*, 425 U.S. 308, 318

8    (1976) (holding that the Fifth Amendment "does not forbid adverse inferences against parties to

9    civil actions when they refuse to testify in response to probative evidence offered against them");

10   *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998); *Keating v. Office of Thrift*, 45 F.3d 322, 326

11   (9th Cir. 1995).  The finder of fact may give the inference whatever evidentiary value is

12   "warranted by the facts surrounding [the] case."  *Baxter*, 425 U.S. at 31.  In fashioning an adverse

13   inference jury instruction, district courts must carefully analyze the "competing interests of the

14   party asserting the privilege, and the party against whom the privilege is invoked" on a "case-by-

15   case basis under the microscope of the circumstances of that particular civil litigation."  *Doe ex*

16   *rel. Rudy-Glanzer v. Glazner*, 232 F.3d 1258, 1265 (9th Cir. 2000).

17   **I.      There Is Sufficient Corroborating Evidence To Support Adverse Inferences On The
     Subjects Identified In Waymo's Accompanying Statement Of Proposed Questions**

18

19   Waymo is entitled to adverse inferences on the subject matter of the questions presented in

20   its accompanying statement.  An adverse inference requires the proponent to offer "corroborating

21   evidence to support the fact under inquiry."  *Glanzer*, 232 F.3d at 1264.  But, post-*Glanzer*, the

22   Ninth Circuit has rejected the notion that a district court is required, in all cases, to make specific

23   evidentiary rulings or "tailor its adverse inference instructions on a 'question-by-question basis.'"

24   *SEC v. Jasper*, 678 F.3d 1116, 1126 (9th Cir. 2012) (noting that in appropriate cases, a properly

25   instructed jury can "conclude[] that the sum total of [a witness's] Fifth Amendment invocations

26   support[] the adverse inference . . . .").  Additionally, as this Court has recognized, requiring

27   ***definitive*** proof of facts on which Waymo requests an adverse inference is "unreasonable."

28   (5/3/2017 Hr'g Tr. at 75:22-76:1); *see Powell v. Union Pac. R. Co.*, Case No. Civ. S-09-1857

1   KJM-CKD, 2012 WL 3647715, at *3 (E.D. Cal. Aug. 22, 2012) (rejecting argument that plaintiff

2   must provide "definitive evidence"; "where plaintiff has provided compelling evidence to

3   corroborate his allegations and defendants possess the only information that could further buttress

4   the claim, drawing an adverse inference . . . is appropriate").

5          Where, as here, the Fifth Amendment is asserted in response to questions regarding the

6   "central issue in the case," circumstantial evidence can help to satisfy the corroboration

7   requirement.  *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 913 (9th Cir. 2008).  This is

8   because where the Fifth Amendment goes to the heart of the issues in dispute, "[a] decision ***not*** to

9   draw the inference poses substantial problems for an adverse party who is deprived of a source of

10  information that might conceivably be determinative in a search for the truth."  *Id.* at 911

11  (emphasis added).  Thus, in *Nationwide*—a case involving a wife's eligibility for her husband's

12  life insurance proceeds—the Ninth Circuit affirmed the trial court's decision to permit an adverse

13  inference after the wife refused to answer questions regarding her involvement in her husband's

14  murder.  *Id.* at 913.  The Ninth Circuit approved of an adverse inference despite conflicting

15  evidence on the issue and based largely on ***circumstantial*** corroborating evidence, including, *inter*

16  *alia*, the wife's knowledge of her husband's life insurance policy, the wife's affair with the

17  convicted killer of her husband, and the wife's misrepresentations to police regarding her

18  knowledge of the life insurance policy.  *Id.* at 913.

19         Here, as in *Nationwide*, Waymo's proposed questions for Levandowski go to the central

20  issue in this case, including Levandowski's theft of Waymo's trade secrets and his use of such

21  trade secrets in developing technology for Defendants.  While Waymo's corroborating evidence is

22  circumstantial in some respects (as is to be expected where issues of liability are hotly contested),

23  the sum total of the circumstantial inferences is at least as strong as those that supported the

24  requested inference in *Nationwide*.  As indicated in its accompanying statement, Waymo intends

25  to corroborate the answers suggested by the vast majority of the identified questions through

26  testimony and documentary evidence.  Also, as discussed below, the proof to be offered is

27  sufficient to justify adverse inferences on at least the issue of Mr. Levandowski's reference to the

28  stolen materials during his work for Uber, and Uber's knowledge/expectation regarding the same.

1    The evidence shows that Levandowski was in talks about joining Uber's self-driving car

2    development effort as early as May 2015, and continued these discussions with Uber executives

3    until his abrupt departure from Waymo in January 2016.  (*See* Dkt. 712, Ex. 1. )  During this time,

4    Levandowski confided in other Waymo engineers that he intended to "replicate" Waymo's LiDAR

5    designs for Uber.  (Dkt. 24-3 ¶ 27.)  Mere days before his departure, Levandowski downloaded

6    over 14,000 highly confidential and proprietary files from Waymo's design server and then sought

7    to conceal these downloads by reformatting his computer.  (Dkt. 24-2 ¶¶ 12-23.)  In some

8    instances, these downloads occurred on the very same day that Levandowski secretly met with

9    Uber's CEO.  (Dkt. 712, Ex.1.)  The downloads also overlapped with the period Levandowski was

10   negotiating an incentive-laden acquisition by Uber of his newly formed business, including a

11   detailed set of technical LiDAR milestones that Uber expected Levandowski to meet.  (Dkts. 789-

12   3, 789-4, & UBER00012751-54.)

13   Within a month of Levandowski's theft and departure from Waymo, he and Uber had

14   agreed upon a Term Sheet (Dkt. 790-5) for Uber's acquisition of his newly formed company

15   Ottomotto, which scarcely could have developed its own independent body of technical work at

16   this time.  Under the Term Sheet, Uber required Levandowski to submit to an elaborate "due

17   diligence" process so that Uber could fully understand the extent of Levandowski's prior "Bad

18   Acts," including trade secret misappropriation, before entering into the agreement.  (Dkt. 790-5.)

19   Uber also learned during this period that Levandowski retained at least five discs of Waymo

20   information that Levandowski later destroyed.  (Dkt. 695 (Response to Interrogatory No. 1).)

21   Apparently, as a result of the due diligence investigation, an "interim report" of was delivered to

22   Uber's outside counsel in April 2016 (Dkt. 566 at 5), and days later Uber entered into a Put-Call

23   Agreement to purchase Ottomotto and to indemnify Levandowski for his "Bad Acts" to Waymo

24   (Dkt. 790-2).  In August 2016, the acquisition closed at an $680 million valuation.  (Dkt. 27-26.)

25   Throughout the due diligence process and pre-closing process, Levandowski was heavily

26   involved in Uber's LiDAR development.  (Dkt. 712, Ex.1.)  Levandowski collaborated with

27   Uber's LiDAR engineers and personally helped design an in-house, long-range LiDAR system

28   that reflects Waymo's patented and trade secret designs.  (*See* Pennecot Tr. 42:15-45:10, 71:10-

-3-

1   72:5; Linaval Tr. 35:13-14; Boehmke Tr. 12:1-4, 16:18-17:3, 20:11-16; Haslim Tr. 93:24-94:24; Qi

2   Tr. at 177:4-2 .)  During this entire period, the evidence also shows that Levandowski deliberately

3   avoided written communication and even instructed one Uber engineer to delete all text messages

4   she had received from him.  (*See* Qi Tr. at 177:4-23; Poetzscher Tr. at 52:2-19, 152:1-10, 159:2-24;

5   *see also* UBER00071620 at UBER00060169-22.)

6        After the closing of the Uber-Ottomotto transaction in August 2016, Uber installed

7   Levandowski as the head of its self-driving car program.  Two months later, in late October 2016,

8   Uber claims that it "pivoted" to a new LiDAR design, now known as "Fuji."  (Dkt. 176-2.)

9   Within a matter of weeks of the "Fuji" pivot, the evidence shows that Uber had arrived at a printed

10  circuit board layout and configuration that bears a striking resemblance to the design developed

11  through years of trial and error at Waymo.  (Dkt. 24-14.)  With respect to certain key elements of

12  this design, Uber's engineers have been unable to explain a coherent independent development

13  narrative.  (*See, e.g.*, Dkt. 433 at 14 (explaining Defendants' lack of a credible explanation for

14  certain similarities to Waymo's design).)

15       The Court has already found that this record presents a compelling case that Levandowski

16  stole Waymo's trade secrets and that Uber "knew or should have known" of the theft when it

17  brought Levnadowski onboard.  (Dkt. 433 at 12.)  Under the Ninth Circuit's reasoning in

18  *Nationwide*, this evidence, as well as that recited in Waymo's accompanying statement, entitle the

19  jury to draw an  adverse inference with respect to each of Waymo's proposed questions.

20  **II.**     **An Adverse Inference May Be Drawn Despite Levandowski's Employment Status.**

21          **A.**     **The Employment Status Of A Witness Is Not Determinative Of Whether An**
                        **Adverse Inference May Be Drawn From A Fifth Amendment Assertion.**

22
        The inference to which Waymo is entitled runs against Defendants despite Levandowski's

23  employment status at the time of trial.  An assertion of the Fifth Amendment by a non-party

24  witness can justify drawing an adverse interest against a party regardless of whether the witness is

25  a current employee of the party.  *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1311 (11th Cir.

26  2014) (plaintiff permitted to call ***former employee*** of defendant for purpose of having former

27  employee invoke Fifth Amendment in presence of the jury and jury was entitled to draw adverse

28

-4-

1   inference); *LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997) (allowing adverse

2   inference to be drawn against daughter based on father's assertion of Fifth Amendment); *Federal*

3   *Deposit Ins. Corp. v. Fidelity & Deposit Co.*, 45 F.3d 969, 977-78 (5th Cir. 1995) (allowing

4   adverse inference to be drawn against surety from assertion of the Fifth Amendment by ***non-party,***

5   ***non-agent witnesses*** who had received allegedly fraudulent bank loans); *Cerro Gordo Charity v.*

6   *Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1481 (8th Cir. 1987) (defendant permitted to

7   call ***former voting member*** of plaintiff charity for purpose of having former member invoke the

8   Fifth Amendment and jury was permitted to draw adverse inference); *RAD Servs., Inc. v. Aetna*

9   *Cas. & Sur. Co.*, 808 F.2d 271, 277 (3d Cir. 1986) (adverse inference permitted as a result of Fifth

10   Amendment assertions by company's ***former employee***); *Brink's Inc. v. City of New York*, 717

11   F.2d 700, 707-10 (2d Cir. 1983) (adverse inference permitted as result of Fifth Amendment

12   assertions by current and ***former employees*** of plaintiff/counter-defendant).  As the Third Circuit

13   has noted, "the mere fact that the witness no longer works for the corporate party should not

14   preclude as evidence his invocation of the Fifth Amendment."  *RAD Servs., Inc.*, 808 F.2d at 275.

15        Although the Ninth Circuit does not appear to have ever considered this issue (*see, e.g.*,

16   *Perez v. Seafood*, Case No. 12-cv-00116-WHO, 2014 WL 2810113, at *6 n.4 (N.D. Cal. June 20,

17   2014) ("There does not appear to be any Ninth Circuit authority addressing whether a court can

18   grant such a request . . . ."), courts in this district have held that the employment status of a non-

19   party witness is not the determinative factor in the adverse inference analysis.  *In re Tableware*

20   *Antitrust Litig.*, Case No. C-04-3514 VRW, 2007 WL 781960, at *4 (N.D. Cal. Mar. 13, 2007)

21   (denying request to exclude Fifth Amendment assertions by ***former CEO***).

22        In what is often referred to as a leading case on the subject of adverse inferences resulting

23   from the invocation of the Fifth Amendment by a non-party, the Second Circuit stressed the

24   importance of avoiding "bright-line" rules based on the relationship between the witness and the

25   party against whom the adverse inference is sought.  *LiButti*, 107 F.3d at 121.  ("[T]he

26   circumstances of a given case, rather than the status of a particular non-party witness, is the

27   admissibility determinant.").  Rather, the Second set forth a four-factor test to guide consideration

28   of whether a non-party's assertion of the Fifth Amendment may support an adverse inference

against an affiliated party: (1) "the nature of the relevant relationships"; (2) "the degree of control of the party over the nonparty witness"; (3) "the compatibility of the interests of the party and non-party witness in the outcome of the litigation"; and (4) "the role of the non-party witness in the litigation." *Id.* at 123-24 (capitalization altered). "[T]he overarching concern," explained the Second Circuit, "is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth. *Id.* at 124. As set forth below, application of the *LiButti* factors here overwhelmingly supports permitting the jury to draw adverse inferences against Defendants, regardless of Levandowski's present employment status.

### 1. The Relationship Between Defendants And Levandowski Support Allowing The Jury To Draw An Adverse Inference.

The close relationship between Levandowski and Defendants with respect to the issues in this litigation strongly supports an adverse inference. Levandowski is the founder of Defendants Ottomotto, LLC and Otto Trucking, LLC (Dkts. 5156-4 at 40, 515-9 at 1), and remains a "managing member" and significant equity holder of Otto Trucking. (*E.g.*, Dkt. 676-4 at 6-7.) These entities were created by Levandowski to be acquired by Defendant Uber, and Levandowski personally began negotiations with Uber regarding such acquisition months before his departure from Waymo. (Dkts. 712, Ex. 1, 789-3, 789-4, & UBER00012751-54.) In fact, the evidence shows that Levandowski had personal meetings with Uber CEO Travis Kalanick on the very same days that he illegally downloaded thousands of highly sensitive Waymo design files. (Dkt 712, Ex. 1; *see also* Dkt. 756 at 9.) After Levandowski departed Waymo, he and Defendants undertook an elaborate "due diligence" process that allowed Uber to understand the scope of Levandowski's "Bad Acts" prior to the acquisition and obligated Uber to indemnify Levandowski with regard to litigation by Waymo in certain circumstances. (*E.g.*, Dkt. 790-5.) In August 2016, Uber officially acquired Ottomotto in a transaction valued at $680 million and hired Levandowski as Vice President and head of its self-driving car program—a position that Levandowski held with no restrictions until shortly before the hearing on Waymo's motion for Preliminary Injunction. These facts regarding the relationship among Levandowski, Ottomotto, Otto Trucking, and Uber support drawing adverse inferences against Defendants from Levandowski's Fifth Amendment invocation.

1    The fact that Uber reluctantly terminated the employment of Levandowski in response to

2    this Court's Preliminary Injunction Order does not alter the analysis.  Every federal appellate court

3    to consider the issue has held that an adverse inference is permissible based on a *former*

4    employee's assertion of the Fifth Amendment.  *Coquina Invs.*, 760 F.3d at 1311 (11th Circuit);

5    *Cerro Gordo Charity*, 819 F.2d at 1481 (Eighth Circuit); *RAD Servs., Inc.*, 808 F.2d at 274-79

6    (Third Circuit); *Brink's*, 717 F.2d at 707-10 (Second Circuit).  Such an inference is particularly

7    warranted here.  Levandowski's Fifth Amendment assertions relate to actions taken on behalf of

8    Uber at a time when their commercial and financial interests were closely aligned.  That

9    Levandowski's employment was later terminated does not change the fact that Levadowski's

10   wrongdoing was committed in the context of and is intertwined with his relationship with

11   Defendants.  *See Coquina*, 760 F.3d at 1311 (allowing adverse inference against witness's former

12   employer given witness's relationship to employer and involvement in key underlying events).

13   Additionally, despite the termination of his employment, there is ample evidence that

14   Levandowski and Uber remain loyal to each other, which further reinforces the trustworthiness of

15   drawing an inference based on the former's Fifth Amendment assertions.  *RAD Servs., Inc.*, 808

16   F.2d at 276 (stating that "[a]ny factors suggesting that a former employee retains some loyalty to

17   his former employer—such as the fact that the employer is paying for his attorney"—serves the

18   purpose of "reduc[ing] the chance that the employee will falsely claim to have engaged in criminal

19   conduct for which the defendant employer is liable").  In the context of arguments regarding a

20   purported common interest privilege, Uber has made much of the fact that it is obligated to

21   indemnify Levandowski for his legal expenses in relation to actions brought by Waymo pertaining

22   to Levandowski's misappropriation of trade secrets and other Bad Acts.  (Dkt. 790-2

23   (Indemnification Agreement).)  Moreover, Levandowski continues to have a vested interest in

24   Uber's success by virtue of his role as equity holder and managing member of Otto Trucking.

25   Uber retains an ███████████████████████████ (Dkt. 515-9 at § 1.1; *see also* Dkt. 515-

26   13 at -7487), and in the event of such ██████ Otto Trucking's shareholders, including

27   Levandowski, are ████████████████████████████. (Dkt.

28

515-14 at -7524.)  Thus, the relationship between Levandowski and Defendants justifies drawing an adverse inference against Defendants from Levandowski's Fifth Amendment assertions.

### 2. The Degree of Control Of Defendants Over Levandowski Support Allowing The Jury To Draw An Adverse Inference.

Additionally, the degree of Defendants' control over Levandowksi "in regard to the key facts and general subject matter of the litigation" justifies treating Levandowski's Fifth Amendment assertions as akin to "vicarious" admissions. *LiButti*, 107 F.3d at 123 (analogizing to admissibility standard under Fed. R. Evid. 801(d)(2)).  Levandowski's Fifth Amendment assertions relate to actions that Levandowski took in preparation to join Uber and his subsequent exploitation of Waymo's intellectual property as head of Uber's self-driving car program.  During these key periods, Levandowski was under the Defendants' control and acting pursuant to his employment or expected employment relationship.  Indeed, while Uber was conducting due diligence, the structure of the parties' agreement was such that Uber had control over to enter into an agreement based on the results of the investigation.  (*E.g.*, Dkt. 566 at 16.)  Uber's control over Levandowski after he joined Uber is further highlighted by Uber's power to terminate his employment, as it has now done.  (Dkts 466-2 & 52+-2.)  Even now, Uber retains a degree of control of Levandowski as a result of the indemnification obligation.  (Dkt. 790-2).

Moreover, Levandowski remains a "managing member" under the control of, and acting for the benefit of Defendant Otto Trucking.  Accordingly, his failure to testify regarding events during this key period are fairly attributable to Defendants.  *RAD Servs., Inc.*, 808 F.2d at 275 ("The bases for admitting these vicarious admissions against the corporation also justify informing the factfinder when the corporation's agent invokes the Fifth Amendment privilege.").  Thus, this factor too supports attributing Levandowski's Fifth Amendment assertions to Defendants.

### 3. The Compatibility Of Interests Between Defendants And Levandowski Support Allowing The Jury To Draw An Adverse Inference.

The unity of interests between Levandowski and Defendants in regards to this litigation also supports an adverse inference against Defendants.  Defendants benefit from Levandowski's Fifth Amendment assertions because concealment of the facts of Levandowski's trade secret theft and exploitation at Uber makes the litigation more difficult for Waymo.  *See Coquina Invs.*, 760

-8-

1    F.3d at 1300 (noting that former employee's assertion of Fifth Amendment in regards to pre-

2    termination events "likely advanced the interests" of both former employee and employer).

3           Additionally, finding that Levandowski and Defendants have compatible interests with

4    respect to Levandowski's assertion of the Fifth Amendment is consistent with Defendants'

5    conduct in this case.  Early in this case, the Court held an *in camera* hearing at the request of

6    **Uber**'s counsel so that Levandowski's separate counsel could appear and explain his intention to

7    invoke the Fifth Amendment.  (*E.g.*, Dkt. 433 at 6.)  Assenting to Levandowski's Fifth

8    Amendment objections, Defendants redacted identifying information from their privilege logs,

9    which this Court later found was improper.  (Dkt. 202.)  Despite this Court's expedited discovery

10   order (Dkt. 61 ¶ 4), Uber never exercised its authority to require Levandowski to provide

11   information in his personal custody or control, and Uber only took adverse action against

12   Levandowski for his refusal to provide evidence after the Court issued its Preliminary Injunction

13   ruling (Dkt. 433).  In fact, as recently as June 9, Uber continued to try to use Levandowski's Fifth

14   Amendment privilege to its own advantage by urging the Magistrate Judge to quash Waymo's

15   subpoena to Stroz to the extent it sought information protected by "other privileges and

16   protections" of Levandowski.  (Dkt. 581 at 1 n.1.)

17          Also, to this day, Defendants have blocked Waymo's access to ***thousands*** of highly

18   relevant documents in this on the grounds that they shared a "common legal interest" with

19   Levandowski during the critical periods in this case.  (Dkts. 636-5 , 636-7, 636-9.)  Although

20   Waymo contests the existence of this common legal interest, Uber should be held to its representations

21   that such interest exists.  For these reasons, an adverse inference should be permitted to prevent

22   Defendants from capitalizing on Levandowski's refusal to testify.

23                  **4.      Levandowski's Role In the Litigation Supports Allowing The Jury To
                             Draw An Adverse Inference.**

24

25          Finally, Levandowski's role as a central witness in this case weighs heavily in favor of

     allowing the jury to consider his testimony and draw appropriate adverse inferences against
26
     Defendants.  *Coquina Invs.*, 760 F.3d at 1311 (citing the invoking witness's role as a "key figure"
27
     in the lawsuit as a factor justifying the adverse inference); *Cerro Gordo Charity*, 819 F.2d at 1482
28

1   (same).   As the Eighth Circuit noted in *Cerro Gordo Charity*, when a central figure in a litigation

2   invokes the Fifth Amendment, the party with the burden of proof is entitled to inform the jury of

3   that fact in order to explain why it was required to resort "to less direct and more circumstantial

4   evidence."  819 F.2d at 1482; *see also Pac. Gas & Elec. Co. v. Howard P. Foley Co., Inc.*, Case

5   No. 85-2922-SW, 1993 WL 299219, at *10 (N.D. Cal. July 27, 1993).  This rationale applies with

6   special significance in this case, where Levandowski is obviously the clearest and most direct

7   source of proof regarding how Waymo's intellectual property has become entangled into

8   Defendants' self-driving car technology.  Given Levandowski's central importance, the jury must

9   be allowed to draw an appropriate adverse inference from his assertion of the Fifth Amendment.

10          For all of these reasons, not only are Levandowski's Fifth Amendment assertions

11  admissible but the jury may draw an adverse inferences against each of the Defendants from such

12  assertions without regard to Levandowski's current employment status.

13          **B.      At A Minimum, An Adverse Inference May Be Drawn From Testimony By
                 Levandowski While He Was Employed By Defendants.**

14

15          Even if employment status were determinative, the Court should at least permit Waymo to

16  introduce Levandowski's April 14, 2017 deposition testimony and instruct the jury that it may

17  draw an adverse inference against Uber based on *that* testimony.  As of April 14th, Levandowski

18  was a senior vice president overseeing Uber's entire self-driving car program and there is no

19  reason to doubt his loyalty or unity of interest with Uber on that date.  Indeed, multiple times

20  during this deposition, *Uber* instructed Levandowski not to answer questions on the purported

21  basis of the common interest doctrine.  (Dkt. 342-8 at 17:1-6, 27:2-7, 27:15-23, 28:21-29:1, 32:25-

22  33:3, 33:16-23, 35:14-36:19, 36:20-27:6, 38:4-9, 41:21-42:12, 43:18-25, 44:4-24, 79:24-75:7.)

23  Thus, at least an adverse inference against Uber based on the April 14th deposition is appropriate.

24          Additionally, if employment status were determinative, any further Fifth Amendment

25  assertions by Levandowski remain admissible and subject to adverse inferences against Defendant

26  Otto Trucking as a result of Levandowski's role as managing member of that entity.

27

28

**CONCLUSION**

For these reasons, Waymo respectfully requests that the Court rule that the jury shall be entitled to draw an adverse inference against all Defendants as a result of Levandowski's Fifth Amendment assertions in response to Waymo's proposed questions at trial.


DATED: July 7, 2017                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                       By /s/ Charles K. Verhoeven
                                          Charles K. Verhoeven
                                          Attorneys for WAYMO LLC