MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

KAREN L. DUNN (Admitted *Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (Admitted *Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: 202.237.2727
Facsimile: 202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>    Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>    Defendants. | Case No.     3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO, LLC'S BRIEF REGARDING LEVANDOWSKI'S ADVERSE INFERENCES (DKT 784, ¶ 4)**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

Uber Technologies, Inc. and Ottomotto LLC (collectively "Uber") submit this response to the Court's June 30, 2017 questions about the impact of Anthony Levandowski's former employment at Uber on Waymo's request for an adverse inference based on Levandowski's invocation of the Fifth Amendment. (Dkt. 784, ¶ 4.)

## **INTRODUCTION**

The Ninth Circuit has never held that an employee's Fifth Amendment invocation is admissible against his former employer in a civil case. On the facts of this case, and on this Circuit's blank slate, Uber respectfully submits that Levandowski's Fifth Amendment invocations should not be presented to the jury at trial or admitted against Uber. The context surrounding his invocation—including Uber's repeated urging that Levandowski not invoke the Fifth and, ultimately, Uber's decision to terminate Levandowski's employment for failure to cooperate and testify—weighs strongly against allowing Waymo to fill the substantial evidentiary holes in its case with the admission of such highly prejudicial evidence at trial, and against drawing any adverse inference against Uber. There is every indication that this is precisely what Waymo seeks to do. At the June 29 hearing, the Court commented that "I don't think you have any proof" that Uber "used [Google trade secrets] at Uber," to which Waymo's immediate response was "we asked Mr. Levandowski; and he took the Fifth Amendment." (6/29 Hrg. at 43:2–23.)

Even if Levandowski improperly downloaded and deliberately kept the 14,000 files upon his departure from Google, the evidence does not suggest that he did so to use that information at Uber, and there is no evidence that anyone at Uber knew he had done so. Indeed, there is a notable absence of evidence to support Waymo's theory of the case that Levandowski stole the 14,000 files to bring to or use at Uber. To the contrary, the evidence will show that Levandowski did so for reasons unrelated to his work at Uber—namely, in connection with ensuring full payment of a $120 million bonus from Google, $50 million of which had become payable in October 2015 but was not paid until December 31, 2015—and that Levandowski is taking the Fifth because of the potential exposure associated with that conduct. In other words, even if Levandowski did what Waymo says he did, he did it as a Google employee, for reasons related to his employment at Google, and not related to his future employment at Uber. After the

allegations in this case arose, but before he took the Fifth, Levandowski told Travis Kalanick (and perhaps others) that he downloaded Waymo's files in relation to the payment of his $120 million bonus from Waymo. The timing of the downloads strongly corroborates that the downloading was related to Levandowski's sizable bonus, as does Google's indication in arbitration papers that it was not inclined to pay Levandowski for what it called his "supposed contributions." (Dkt. 138 at 10, ¶ 3.) Uber will present this and other evidence at trial.

Neither Levandowski's actions, nor his invocations, benefit Uber in any way; indeed, Uber is harmed by Levandowski's refusal to offer testimony that would have benefitted Uber (even though presumably it would harm Levandowski). That is why Uber repeatedly demanded that Levandowski return any files and explain what happened (thereby clearing Uber's name), and why Uber fired Levandowski after these efforts failed. Under these circumstances, Levandowski's broad invocations cannot be considered vicarious admissions of Uber.

If the Court concludes that Levandowsi's invocations <u>may</u> be admissible, Uber respectfully submits such evidence should be excluded under Federal Rule of Evidence 403 because of the severe prejudice Uber would suffer. It is hard to think of greater prejudice than being held responsible for another party's Fifth Amendment invocation. If admitted at trial, however, the jury at a minimum should be instructed that they cannot infer from Levandowski's invocations that it is more or less likely that Uber did anything wrong. Uber therefore respectfully requests that the Court instruct the jury that Levandowski has declined to testify because he has a constitutional right to do so, and the jury should not speculate as to why he chose not to testify, or whether his testimony would be adverse to Waymo or Uber.

## BACKGROUND ON ADVERSE INFERENCES

In *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976), the Supreme Court held that it is constitutionally permissible in a civil action to introduce evidence of <u>a party's</u> refusal to testify. *Id.* The Supreme Court has never extended this reasoning to hold that the invocation of a <u>non-party witness</u> (like Levandowski) may be admitted against a party (like Uber). Neither has the Ninth Circuit.

To the extent that courts in other circuits have addressed this issue, they universally hold

1  that a non-party's invocation must not be <u>automatically</u> imputed to a party. *E.g. Veranda Beach
2  Club Ltd. v. Western Surety Co.*, 936 F.2d 1364, 1374 (1st Cir. 1991) (finding that invocation of
3  the Fifth "is a personal decision" and "cannot be imputed to a corporation" "without more."). As
4  counsel for Waymo emphasized earlier in this case, "the Fifth Amendment privilege is a personal
5  privilege." (4/6/2017 Hrg. Tr. 12:10–12.)  Instead, a case-by-case analysis is required. *See e.g.*
6  *LiButti v. United States*, 107 F.3d 110, 123 (2d Cir. 1997) (identifying "non-exhaustive" list of
7  factors). In instances where a non-party's invocation was introduced, that holding has sparked
8  vigorous dissents. *E.g.*, *Lionti v. Lloyd's Ins. Co.*, 709 F.2d 237, 244–45 (3d Cir. 1983) (Stern, J.,
9  dissenting) (the majority committed "grave error" by "impart[ing] evidential value to the
10 assertion of the fifth amendment");  *Brink's Inc. v. City of N.Y.*, 717 F.2d 700, 715 (2d Cir. 1983)
11 (Winter, J., dissenting) ("This holding allows juries to draw prejudicial inferences from leading
12 questions put to witnesses, denies parties the right to cross-examine, and is an invitation to sharp
13 practice."). And even if some inference is warranted, that does not mean it should be applied
14 against the party. *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp.
15 2d 489, 555–56 (S.D.N.Y. 2011).

16 The factors that other courts have considered in deciding whether to admit evidence of a
17 non-party's invocation of the Fifth Amendment are all in service of the ultimate goal of providing
18 a "fair trial" and "accurate decisions." *Baxter*, 425 U.S. at 318–19. Uber's termination of
19 Levandowski—as well as the lack of evidence to support Waymo's case and the growing
20 evidence that Levandowski invoked the Fifth in connection with actions he took <u>unrelated</u> to his
21 employment at Uber—tip the weight of these factors strongly in favor of excluding any evidence
22 of Levandowski's invocation in this case.

23 Further, even if the Court were to conclude that the factors weigh in favor of admitting
24 Levandowski's invocations (which it should not), three critical procedural safeguards are
25 necessary to limit the scope and applicability of inferences. First, there must be independent
26 corroborating evidence of <u>every</u> fact on which an inference is sought. Second, an inference is only
27 available on a question-by-question basis. *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258,
28 1264 (9th Cir. 2000). And third, courts should exclude any inference under Rule 403.

**THE COURT'S QUESTIONS AND UBER'S RESPONSES**

**I.   "Whether and to what extent adverse inferences can be drawn against defendants based on Levandowski's refusal to testify at trial now that Levandowski no longer works for Uber" (Dkt. 784, ¶ 4, Question 1)**

Uber's termination of Levandowski—as well as Uber's demand for Levandowski's testimony—is highly relevant to the court's consideration of the factors and weighs strongly against permitting any adverse inference against Uber.

*The nature of the relationship between the invoking non-party and the party*. According to the Second Circuit, the relationship between the party and the invoking witness is the "most important circumstance" to be examined, and must be considered from "the perspective of a non-party witness' loyalty to the plaintiff or defendant, as the case may be. The closer the bond, whether by reason of blood, friendship or business, the less likely the non-party witness would be to render testimony in order to damage the relationship." *LiButti*, 107 F.3d at 123. For example, most employees' "self-interest would counsel him to exculpate his employer, if possible." *RAD Services, Inc. v. Aetna Casualty and Surety Co.*, 808 F.2d 271, 275 (3d Cir. 1986); *see also In re Tableware Antitrust Litig.*, 2007 WL781960, at *5 (N.D. Cal. Mar. 13, 2007) (denying motion in limine to exclude former employee testimony where facts suggested continued loyalty). But where this assumption is not true—for example, where the employee is acting out of his own self-interest, and has cast aside the interests of his employer—an inference is inappropriate. *Cotton v. City of Eureka,* 2010 WL 2889498, at *3–4 (N.D. Cal. July 22, 2010) (rejecting any adverse inference because, *inter alia*, there was "no evidence of any close or special relationship between" the party and the invoking witness); *Salem Fin. Inc. v. United States*, 2013 U.S. Claims LEXIS 2119, at *9–10 (Cl. Ct. June 13, 2013) (precluding adverse inference where the invocation "was for personal reasons, not because of a desire to protect" the party).

Here, the Court should look to all the facts and circumstances to investigate the "nature of the relationship" between Levandowski and Uber—including Uber's termination of Levandowski after Uber tried and failed to secure Levandowski's cooperation. Those circumstances demonstrate that Levandowski consistently has been protecting his own interests at the expense of Uber, including at the time of his deposition, and certainly after his termination. After learning

Levandowski's explanations for Waymo's allegations, Uber has repeatedly urged him to testify, cooperate, and clear Uber's name. (E.g., 4/6/2017 Hrg. Tr. 50:13–14 (Mr. Gonzalez: "Well, Your Honor, if I have my way, he'll testify but I can't compel him."); Dkt. 519-2 (5/26/2017 Ltr. from S. Yoo to A. Levandowski (terminating Levandowski's employment unless Levandowski cooperated).) After those efforts failed, Uber fired him—further demonstrating that the "nature of the relationship" between Levandowski and Uber is not and has for some time not been one of "loyalty." *LiButti*, 107 F.3d at 123. Uber and Levandowski's interests are simply not aligned.

***The "degree of control" that the party has over the non-party witness.*** When the invoker has the power to waive the privilege, he can make a choice: Testify and potentially avoid civil liability but incur criminal charges, or refuse to testify. For the application of an adverse inference against a non-party to be fair, the non-party should be able to make the same choice. *LiButti*, 107 F.3d at 123. By contrast, where there is no showing that the party has the ability to control the witness or his choice to invoke, an inference is not proper. *Lionti*, 709 F.2d at 246 (Stern, J., dissenting) ("it is by allowing inferences from a witness's refusal to testify that one party will be harmed, and in a manner that is beyond his power to control"); *Cotton*, 2010 WL 2889498, at *4; *Banks v. Yokemick,* 144 F. Supp. 2d 272, 290 (S.D.N.Y. 2001) (adverse inference instruction was inappropriate without a showing that the party "could exercise any form of control over" the invoking witness "to guide their testimony" or otherwise show that their "interests coincide"). Here, again, Uber has had no power over Levandowski's choice to invoke. Uber had no control over Levandowski at the time of his deposition—Levandowski was refusing to testify despite Uber's urging—and since it terminated him, Uber has even less control over Levandowski, which makes it even <u>less</u> fair to hold his invocations against Uber.

***Whether the invocation advances both the interests of the party and the non-party witness in the litigation***. If the witness's interests are served by invoking the Fifth, but the interests of the party are not, it is inappropriate to sanction the party for a benefit it is not receiving. *LiButti*, 107 F.3d at 123; *Fujisawa Pharm. Co. v. Kapoor*, 1999 WL 543166, at *9 (N.D. Ill. July 21, 1999) (citing cases for the proposition that "identity of interests is important element in trustworthiness of inference") (citations omitted); *Cotton*, 2010 WL 2889498, at *4

5

(rejecting adverse inference where there was "no assertion that the invocation of the privilege advances the interests of both Plaintiffs and Mr. Healy in the outcome of this litigation"); *Data General Corp. v. Grumman Sys.*, 825 F. Supp. 340, 352 (D. Mass. 1993) (distinguishing prior case law; inference may not be appropriate unless "employer was aware of or benefited from the employee's alleged wrongdoing"). Here, Uber unquestionably wants Levandowski to testify, because Levandowski is in possession of additional facts that would be exculpatory to Uber, including, but not limited to, facts demonstrating that Levandowski never used any Waymo or Google trade secrets in the course of his work at Uber or took any Google files to benefit Uber in any way. The Fifth Amendment may be protecting Levandowski, but it is not protecting Uber.

## II. "If not, whether and to what extent adverse inferences can be drawn against defendants based on Levandowski's refusal to testify in deposition while he still worked for Uber" (Dkt. 784, ¶ 4, Question 2)

There is no bright-line rule that an employer is always responsible for an employee's invocations, let alone the continued invocations of a former employee. No case in any circuit supports a finding that, because Levandowski was an employee at the time of his deposition, Uber must <u>automatically</u> bear the brunt of those invocations. Instead, courts look to the factors above and make a case-by-case determination.

Moreover, courts ***must limit an employee's invocation and any adverse inference against an employer only to matters that pertain to the scope of the witness's employment***. An employee's invocation is only admissible as a vicarious admission of the employer pursuant to Federal Rule of Evidence 801(d)(2)(D) if the question and response concerns "a matter within the scope of his agency or employment … during the existence of the relationship." FED. R. EVID. 801(d)(2)(D); *RAD*, 808 F.2d at 275 (allowing admission where questions put to former employees "pertained solely to events occurring while they worked for RAD"). No employee's statement—invocation or otherwise—would be admissible against his employer as a vicarious admission if it does not satisfy this basic test.

Here, Levandowski was asked multiple questions regarding his work <u>at Google</u>, including as to his alleged downloads, access, and obligations while he was a Google employee, and Google's security measures. (Dkt. 248-3 (A. Levandowski Dep. Tr. 10:17–24; 11:2–9; 51:1–7;

65:4–9; 90:12–14; 121:10–12).) Because these statements were not within the scope of his employment for Uber, and in light of the evidence suggesting that Levandowski did not engage in the conduct at issue to benefit Uber, his silence in response to those questions cannot be imputed to Uber. *Pure Power*, 813 F. Supp. 2d at 555 (declining to draw adverse inference against party where the "actions clearly fell outside of the scope of her employment duties").

### III. "Whether and to what extent adverse inferences can be drawn against defendants regardless of Levandowski's employment status" (Dkt. 784, ¶ 4, Question 3)

Regardless of the non-party's employment status, courts regularly consider additional factors and limit the evidentiary value of the invocation through important evidentiary safeguards.

#### A. *The Court May Limit Admission of Invocations and Reject an Inference Due to Several Additional Factors Unrelated to Levandowski's Employment Status.*

***Whether the party against whom an invocation is offered can rebut the inference by furnishing evidence of its own.*** Where a party can "rebut any adverse inference that might attend the employee's silence, by producing contrary testimonial or documentary evidence," the application of the inference may not be unfair. *RAD*, 808 F.2d at 275. Here, Uber must prove a negative in the absence of Levandowski's testimony, making it unreasonable and unfair to apply an inference against Uber.

***The nexus between the conduct of the witness and the conduct of the defendant.*** *In re Polyurethane Foam Antitrust Litig. Direct Purchaser Class*, No. 1:10 MD 2196, 2015 WL 12747961, at *6 (N.D. Ohio Mar. 6, 2015) (denying inference as to certain parties with an insufficient nexus). Without any evidence that Uber participated in any allegedly criminal activity—including the fact that no other Uber employee is taking the Fifth and that Uber employees did not know until Waymo's complaint was filed that Levandowski improperly downloaded and deliberately kept any files—an inference is inappropriate. Uber never coordinated any theft of trade secrets with Levandowski.

***The likely reasons for the invocation.*** Anyone may invoke the Fifth to a question that may furnish a "link in the chain" to incriminating evidence—thus an invocation alone does not indicate that the answer to any particular question is incriminating, or even that the invoker is not innocent. *Hoffman v. United States*, 341 U.S. 479, 486 (1951); *Grunewald v United States*, 353 U.S. 391, 421–23 (1957) (the Fifth Amendment privilege is wholly consistent with innocence);

*Lionti*, 709 F.2d at 245 (Stern, J., dissenting) ("the invocation of the fifth amendment privilege is without evidential content"). This is particularly true where the witness's assertions are of such breadth and scope as to make impossible any credible inferences about the answers. As Judge Illston stated in granting a motion *in limine* to preclude testimony from a former employee, "who knows what the criminal anxiety is that she is bringing to bear"? *In Re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827, Dkt. No. 5536, Pretrial Conf. Hrg. Tr., at 88:9–19 (N.D. Cal. Apr. 25, 2012). Here, Levandowski was instructed to, and did, take the Fifth in response to every question relating to both his employment <u>both</u> at Google <u>and</u> at Uber—more than 400 invocations in total. (Dkt. 248-3 (A. Levandowski Dep. Tr. 85:8–11, 86:2–5 (instructing Levandowski "not to answer in any way about matters that occurred after the date you began employment with Google"); 9:20–22, 10:5–6 (taking the Fifth in response questions "What are your responsibilities as vice president of engineering [at Uber]?" and "How long have you worked at Uber?").) It is nonsensical to posit that the answers to each of these questions would be adverse to Uber.

***Which, if any, party is using the invocation for strategic advantage.*** The "overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *LiButti*, 107 F.3d at 124. The Fifth Amendment invocation has the potential to be abused in two ways. On the one hand, the privilege should not be invoked strategically in order to shield a party from a burden of proof. *E.g. United States v. Rylander*, 460 U.S. 752, 758 (1983); *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 522–23 (8th Cir. 1984) (forbidding a party from using a witness's substantive deposition testimony and then shielding him from cross-examination by deeming him unavailable when he began to invoke the Fifth); *see also Lionti*, 709 F.2d at 246 (Stern, J., dissenting) (noting that the reasoning in allowing adverse inferences in civil cases, although "less than satisfying, would appear to be that this is a necessary toll exacted from civil litigants who might otherwise use the privilege as a weapon against the opposing side"). But an invoking witness invites mischief from the questioning attorney, too. Where opposing counsel examines a witness who is invoking as broadly as Levandowski is here, she can pose limitless unsubstantiated and strategic questions in order to create artificial inferences, safe from contradiction. *See, e.g.*, *Brink's*, 717 F.2d at 715 (2d

Cir. 1983) (Winter, J., dissenting) (permitting interrogation of an invoking witness "allows juries to draw prejudicial inferences from leading questions put to witnesses, denies parties the right to cross-examine, and is an invitation to sharp practice"); *Ullman-Briggs, Inc. v. Salton/Maxim Housewares, Inc.*, No. 92-c-680, 1996 WL 535083, at *17 (N.D. Ill. Sept. 17, 1996) (allowing an inference under the circumstances would allow counsel "to fashion the questions in such a way as to be able to create the most damaging testimony through negative inference, safe from any contradiction by the witness no matter what the actual facts") (quotation omitted); *In re Citric Acid Antitrust Litig.*, 996 F. Supp. 951, 961 (N.D. Cal. 1998) (declining adverse inferences based on strategically phrased questions). Here, the privilege is <u>not</u> being strategically invoked to shield Uber—Uber does not want anything to do with this shield. Instead, <u>Waymo</u> is the party that is abusing the privilege, by posing unsubstantiated questions to Levandowski for which there is no corroborating evidence. Their strategy is clear: Waymo needs to make up for an absence of evidence in support of the aggressive claims it made in its Complaint and they are relying on Levandowski's Fifth Amendment invocation to do that. The Court should require Waymo to prove its case through actual evidence. Moreover, if Levandowski testifies, Uber will seek its own adverse inferences and otherwise raise questions demonstrating the lack of evidentiary value from Levandowski's invocation. It makes far more sense and will be much less confusing to the jury to exclude Levandowski's invocation from the jury's purview. *Brink's*, 717 F.2d at 716 (Winter, J., dissenting) (positing such an examination as a "mindless exchange").

***Whether the witness chooses later to testify substantively.*** If Levandowski later chooses to testify substantively, "no adverse inference is justified." *In re Polyurethane Foam*, 2015 WL 12747961, at *4.

B. *Additional Evidentiary Safeguards and Rule 403 Apply Regardless of Levandowski's Employment Status.*

Even if Waymo could justify admission of such evidence (and it cannot), it must satisfy additional safeguards, but Waymo has yet to identify the specific invocations on which it seeks to rely. At the Court's request, Uber will supplement the analysis below after Waymo identifies the specific invocations that it will seek to introduce into evidence at trial. (Dkt. 784, ¶ 3.)

First, courts require specific corroborating "probative evidence" of each and every fact on which an inference is sought. *Baxter*, 425 U.S. at 318. As the Ninth Circuit explained in *Glanzer*, "an adverse inference can be drawn when silence is countered by independent evidence of the fact being questioned." 232 F.3d at 1246 (emphasis in original); *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 622 F. Supp. 2d 890, 907 (N.D. Cal. 2009) (adverse inference "cannot be drawn when, for example, silence is the answer to an allegation contained in a complaint"). The corroborating evidence must be both specific and narrowly tailored to the inference sought. *Sun*, 622 F. Supp. 2d at 907–908.

Second, an adverse inference, like the privilege itself, is only available on a question-by-question basis. *Glanzer*, 232 F.3d at 1265. *S.E.C. v. Jasper*, 678 F.3d 1116, 1127 (9th Cir. 2012), cited by Waymo, does not affect this. The question there was whether the jury could receive a general, but appropriately scoped, adverse inference instruction, or had to be given a "separate jury instruction" regarding each individual inference. *Jasper* reaffirms the need for Waymo to set forth its adverse inferences and their foundation "at length," as the jury was tasked with understanding the precise nature of "the questions to which the privilege was invoked." *Glanzer*, 232 F.3d at 1265. This affirms the rule that the inference is only as broad as the question asked.

Finally, adverse inferences are inappropriate where they fail to satisfy the requirements of Federal Rule of Evidence 403, like "all evidence presented to the jury," requiring the court to determine whether the "value of presenting such evidence" is "substantially outweighed by the danger of unfair prejudice." *Glanzer*, 232 F.3d at 1266. The probative value of an invocation is lessened when parties invite "jurors to give evidentiary weight to questions rather than answers." *Brink's*, 717 F.2d at 716 (Winter, J., dissenting). Here, the inference would be incredibly prejudicial and not probative. Levandowski's invocations are not probative because, among other reasons, there is a credible alternative theory for why Levandowski has asserted his Fifth Amendment rights. And his invocations would raise the specter of criminal activity before the jury, when there is no tie or nexus between that activity and anything Uber did. *E.g.*, *In Re: TFT-LCD (Flat Panel) Antitrust Litig.*, *supra*, Dkt. No. 5536, Pretrial Conf. Hrg. Tr., at 88:9–19 (excluding Fifth Amendment invocation as prejudicial under 403).

Dated: July 7, 2017

MORRISON & FOERSTER LLP

BOIES SCHILLER FLEXNER LLP

By: */s/ Karen L. Dunn*
      KAREN L. DUNN

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC