MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

KAREN L. DUNN (Admitted *Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (Admitted *Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:    202.237.2727
Facsimile:    202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| WAYMO LLC,<br><br>          Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>          Defendants. | Case No.     3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO, LLC'S BRIEF REGARDING IMPUTATION (DKT 784, ¶ 6)**<br><br>Judge:  The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

Uber Technologies, Inc. and Ottomotto LLC (collectively "Uber") respectfully submit this response to the questions posed by the Court in its June 30, 2017 Order concerning whether Morrison & Foerster LLP's ("MoFo's") or Stroz Friedberg LLC's ("Stroz's") "knowledge from the due diligence investigation can be imputed to" Uber. (Dkt. 784, ¶ 6.)

**INTRODUCTION**

Waymo filed this action, to great publicity, based on a claim that *Uber* stole Waymo's trade secrets and that *Uber* is using them to develop competing technology for self-driving cars. But the massive discovery that Waymo has undertaken does not support this claim. Rather, as the Court recently noted, Waymo does not yet have "any proof" that the alleged trade secrets "ever got used at Uber." (6/29 Hr'g Tr. at 43:2-10.) Nor is there any evidence that the 14,000 files that Waymo alleges Anthony Levandowski improperly downloaded and kept ever made their way to Uber.

In light of this lack of evidence, Waymo has shifted to a new and unprecedented theory of liability against Uber based on a claim of "imputed acquisition" (not use). This novel, new theory would impute to Uber any possible acquisition of materials containing Waymo's alleged trade secrets by MoFo or Stroz as part of Stroz's due diligence investigation regardless of whether such trade secrets were ever shared with Uber (they were not). Waymo seeks to advance this theory even though MoFo and Stroz were retained for the very purpose of *preventing* any violation of intellectual property rights in connection with Uber's acquisition of Ottomoto, and were contractually bound *not* to (and did not) disclose to Uber any confidential or proprietary Waymo information. Irrespective of what MoFo or Stroz may or may not have obtained, they were contractually barred from sharing any such information with Uber—and they never did so. There is no support for imposing liability for trade secret misappropriation in this situation. Moreover, doing so would render impossible any meaningful due diligence in a wide range of transactions, and would run counter to California's strong preference for employee mobility.

An agent's acquisition or knowledge of trade secrets cannot be imputed to a principal under established trade secrets law. Nor, more generally, can an agent's knowledge be imputed to a principal where "the agent owes a duty to another not to disclose the fact to the principal."

Restatement (Third) Of Agency § 5.03 (Am. Law Inst. 2006).  These principles are embodied in Ninth Circuit and California trade secret precedent.  In this case, the principal (Uber) could not receive any confidential or proprietary Waymo information that its agent (MoFo) or an agent of its agent (Stroz) might have uncovered during the diligence process.  The parties' agreements expressly barred MoFo and Stroz from disclosing to Uber any confidential or proprietary Waymo information obtained from Anthony Levandowski or any other former Waymo employee.  Magistrate Judge Corley has firmly rejected the notion that these agreements were part of an illegitimate scheme.  (Dkt. 731.)  Because neither MoFo nor Stroz could disclose Waymo confidential or proprietary information to Uber, and because there is no evidence that MoFo or Stroz (or Uber) knew of the improper downloading or trade secret theft alleged by Waymo, the Court should determine as a matter of law that there can be no imputation to Uber of acquisition or knowledge of improper means.

## RESPONSES TO THE COURT'S THREE QUESTIONS

**Question 1:** "whether the judge versus the jury should decide whether and to what extent the exception to imputation applies, *e.g.*, as a result of any secrecy obligations imposed on Morrison or Stroz Friedberg"

The Judge, not the jury, should decide that, as a matter of law, no imputation of alleged trade secret acquisition or knowledge is permissible from either MoFo or Stroz to Uber.  Trade secrets law does not recognize imputation of either acquisition or knowledge to a principal.  Well-recognized principles of agency also confirm that there cannot be imputation of an agent's knowledge to the principal where, as here, the agent is bound not to disclose the information at issue to the principal.  Because acquisition and knowledge cannot be imputed to Uber under Ninth Circuit and California precedent, and because MoFo and Stroz were bound *not* to disclose to Uber any confidential or proprietary Waymo business information, the Court should determine, as a matter of law, that there cannot be imputation to Uber.

**A. Imputation For Trade Secrets Liability Is Unavailable Under Controlling Case Law.**

To prevail on its trade secret claim based on an acquisition theory, Waymo must establish that Uber (1) acquired the trade secret and (2) knew or had reason to know that the trade secret

1  was wrongfully acquired.  *See* Cal. Civ. Code 3426.1(b)(1) ("'Misappropriation' means:
2  Acquisition of a trade secret of another by a person who knows or has reason to know that the
3  trade secret was acquired by improper means"); *see also* Judicial Council of California Civil Jury
4  Instructions (2017) No. 4405 (Misappropriation by Acquisition).

5        With respect to the element of acquisition, "passively receiv[ing]" or "inadvertently
6  coming into possession of a trade secret will not constitute acquisition."  CACI No. 4405, Sources
7  and Authority (quoting *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 223 (2010), *as*
8  *modified on denial of reh'g* (May 27, 2010), *disapproved of on other grounds by Kwikset Corp. v.*
9  *Superior Court*, 51 Cal. 4th 310 (2011)).  California law instead requires a showing of "pointed
10 conduct intended to secure dominion over the thing." *Silvaco*, 184 Cal. App. 4th at 223.  As the
11 Court has previously noted, *Silvaco* is binding authority.  (*See* 6/7 Hr'g Tr. at 11:24-12:7.)  As
12 noted in that decision, use of "acquire" instead of "receive" in the California Uniform Trade
13 Secrets Act ("CUTSA") indicates that a party's receipt of trade secrets is insufficient grounds for
14 liability. *See Silvaco,* 184 Cal. App. 4th at 223.  Thus, unless Waymo can establish that Uber
15 engaged in pointed conduct to secure dominion over Waymo's trade secrets–and there is no
16 evidence that Uber did–this case cannot go to a jury based on an acquisition theory.  *See id.*
17 (absent a basis to find that the defendant "acquired" trade secrets for purposes of CUTSA, "the
18 mental state required for actionable acquisition appears to be academic").  There is no legal
19 support for Waymo's theory that acquisition or possession of any asserted trade secret by MoFo
20 or Stroz alone can be deemed to be acquisition or possession by Uber.  Waymo has identified no
21 case, and Uber is not aware of any, in which a principal was held liable for misappropriation
22 based on imputation of an agent's acquisition.

23       With respect to knowledge of improper means, there is no evidence that Stroz or MoFo
24 (or Uber) had knowledge of the improper downloading or trade secret theft alleged by Waymo.
25 The Ninth Circuit has held that "it is generally not appropriate to direct a jury to impute an
26 agent's knowledge of a secret to the principal."  *Droeger v. Welsh Sporting Goods Corp.*, 541
27 F.2d 790, 792-93 (9th Cir. 1976) (reversible error to instruct jury that it was "no defense" for
28 corporate defendant that its agent did not pass along information he received).  In *Droeger*, the

Ninth Circuit rejected the notion that a sales representative's knowledge of a trade secret could be imputed to his employer, explaining that it would be error to "permit recovery even when the trade secret was not actually communicated to or used by the principal." *Id.* at 793.  Like the agent in *Droeger*, neither Stroz nor MoFo have disclosed to Uber any confidential Waymo information they may have received.  Indeed, the demand for non-imputation is even greater in this case, as the relationship between agent and principal here is more attenuated than the employee-employer relationship in *Droeger*, and the parties' contracts expressly barred Stroz or MoFo from any such disclosure.

That "use" was the theory of liability at issue in *Droeger*, and that *Droeger* was decided before "acquisition" was codified as a basis for liability, does not alter the force of its holding regarding imputed knowledge of whether the trade secrets at issue were wrongfully acquired.  If anything, *Droeger*'s rationale applies even more strongly to acquisition: to be held liable on a theory of "acquisition," a company should have to have actually *acquired* the trade secret at issue.  In any event, *Droeger*'s analysis of the same knowledge standard that is now codified in CUTSA and the federal Defend Trade Secrets Act ("DTSA") remains binding as to whether an agent's knowledge can be imputed to a principal, regardless whether the theory is of acquisition or use. *See, e.g.*, *Joshua David Mellberg, LLC v. Will*, No. CV-1402025-TUC-CKJ-CRP, 2016 WL 4592181, at *13 n.2 (D. Ariz. Jan. 22, 2016), *report and recommendation adopted,* No. CV-14-02025-TUC-CKJ, 2016 WL 944958 (D. Ariz. Mar. 14, 2016) (citing *Droeger* and declining to impute knowledge of improper acquisition under Arizona's Uniform Trade Secret Act, which defines misappropriation by acquisition the same as CUTSA).

**B. Settled Agency Principles Confirm That Imputation Is Not Available In This Case.**

Well-established general principles of agency, embodied in the Restatement, confirm that any acquisition or knowledge by MoFo or Stroz cannot be imputed to Uber in light of the agreements among the parties prohibiting Stroz or MoFo from disclosing any confidential or proprietary Waymo information to Uber.  The Restatement (Third) of Agency provides that an agent's knowledge cannot be imputed to a principal where the agent "is subject to a duty to

another not to disclose the fact to the principal." § 5.03; *see also* Restatement (Second) of Agency § 281 (Am. Law Inst. 1958) ("A principal is not affected by the knowledge of an agent who is privileged not to disclose or act upon it and who does not disclose or act upon it"). This principle is directly applicable here.

As noted in the Commentary to Restatement (Third) § 5.03, "[t]he scope of an agent's duties delimits the content of knowledge that is imputed to the principal," and "[n]otice of facts known by an agent is not imputed to the principal unless the agent has a duty to furnish them to the principal." § 5.03 cmt. b. California has codified a similar provision. *See* Cal. Civ. Code § 2315 ("An agent has such authority as the principal, actually or ostensibly, confers upon him."). California courts applying these fundamental principles recognize that the "scope of the imputation of knowledge is directly related to the scope of the duty arising from the agency agreement." *Triple A Mgmt. Co. v. Frisone*, 69 Cal. App. 4th 520, 535 (1999); *see also In re Marriage of Cloney*, 91 Cal. App. 4th 429, 440 n.10 (2001) ("Imputation is based on the theory that the agent will disclose to the principal that which it is obligated to disclose."). In short, all relevant authority makes clear the limits of imputation from an agent to a principal where, as here, an agent has a duty not to disclose.

Courts applying California law regularly rely on the Restatement (Third) of Agency. *See, e.g.*, *Dynatrace LLC v. Ramey*, No. 16-CV-01777-EMC, 2016 WL 7157650, at *6 (N.D. Cal. Dec. 8, 2016) (Chen, J.); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009) (Hamilton, J.); *In re Gonda*, No. 10-58722, 2011 WL 5240154, at *5 (Bankr. N.D. Cal. Oct. 31, 2011). There is thus no reason to rely on the Second rather than Third Restatement, as Waymo has, although the Second Restatement provides for the same conclusion of non-imputation. *See* Restatement (Second) of Agency § 281; *see also id.*, Reporter's Notes ("there is universal agreement to the effect that where an agent's duties to others prevent him from disclosing facts to the principal, the latter is not bound because of the agent's knowledge"). The Third Restatement consolidates several related sections of the Second Restatement, including Section 281 of the Second Restatement (which Waymo omitted in its response to the Court's previous questions (Dkt. 756), *see* 6/29/17 H'rg Tr. at 33:20-34:2). *See* Restatement (Third) Of

Agency § 5.03 (2006), Reporter's Notes, subdvs. (a) ("This section consolidates treatment of topics covered by Restatement Second, Agency §§ 272 to 281."). The Third Restatement fully supports the rule that notice of facts is not imputed to the principal unless the agent has a duty to furnish them to the principal.

Thus, even if imputation of acquisition or knowledge of wrongful means were available in the trade secrets context (which, as discussed above, it is not), the Court would be able to rely on established principles of agency to decide as a matter of law that there are no grounds for imputing Stroz's or MoFo's acquisition or knowledge of any confidential or proprietary Waymo information to Uber. Such a decision could be based on the contractual agreements amongst Uber, Stroz and MoFo that explicitly preclude such disclosure, along with the absence of any evidence suggesting that the principal otherwise compelled such disclosure.

"The interpretation of a contract is a question of law when the contract terms are unambiguous." *Abifadel v. Cigna Ins. Co.*, 8 Cal. App. 4th 145, 159 (1992); *see also SCC Alameda Point LLC v. City of Alameda*, 897 F. Supp. 2d 886, 892 (N.D. Cal. 2012). Here, Stroz and MoFo had a clear, contractual duty *not* to disclose any confidential or proprietary Waymo information to Uber. The engagement letter between Stroz and MoFo made clear that if information received by Stroz during the due diligence process "includes or may include confidential or proprietary information of a former employer of an Ottomotto employee, or there is any potential question or uncertainty whether information relates to the Services and purpose of the Engagement, such information will be disclosed to Clients only on an outside counsel attorney's eyes only (AEO) basis." (Dkt. 370-3 ("Stroz Engagement Letter"), at 3.) Moreover, the letter agreement between Levandowski and Stroz required Stroz not to disclose any Waymo information it may have received from Levandowski "to any third party whatsoever, including without limitation its Clients, or any of them, or any law firm representing Uber USA, LLC or Ottomotto Inc., except as provided in the attached Examination Protocol." (Dkt. 806-4 ("Levandowski-Stroz Agreement"), at 3.) The referenced "Examination Protocol" was at all times subject to the AEO restriction from the Stroz Engagement Letter described above (i.e., the provision prohibiting the disclosure of confidential information from a former employer on

anything other than an AEO basis). Thus, regardless of what Stroz might have reviewed during the diligence effort, and regardless of what Stroz could have disclosed to MoFo as AEO, in no event could Uber have acquired or exercised dominion over proprietary Waymo information.

In sum, the principal-agent relationship between Uber (the principal), MoFo (the agent), and Stroz (the sub-agent) barred Uber from exercising dominion over or obtaining knowledge of any confidential or proprietary Waymo information that Levandowski provided to Stroz. (*See id*.) Waymo's counsel has acknowledged that Uber lacked control over those materials. (*See* 6/23 Hr'g Tr. at 42:10-13 (Mr. Verhoeven: "And so you still have an independent expert out there who Uber has no control over, who they allege Levandowski has control over to a certain extent in a way that conflicts with the interests of Uber….").) Finally, there is no evidence that, despite these contractual obligations, Uber ever sought to exercise dominion over any confidential or proprietary Waymo materials identified by Stroz or MoFo in the due diligence process—let alone that it did so "pointedly" as required by the governing legal standard. Indeed, Uber's business executives and CEO never received the due diligence report that resulted from the Stroz process. And, as noted above, there is no evidence that Stroz, MoFo, or Uber had knowledge of the improper downloading or trade secret theft alleged by Waymo. Agency principles therefore preclude imputation to Uber, as a matter of law.

### C. Imputation Would Undermine Routine Due Diligence And The Policies That The Trade Secrets Laws Are Intended To Protect.

Precedent and principles of agency counsel a decision that, as a matter of law, imputation to Uber of trade secrets liability based on the due diligence investigation is not available in this case. Not only would a contrary result be legally unsupported, but it would undermine the policy interests advanced by the legal protection of trade secrets. "The maintenance of standards of commercial ethics and the encouragement of invention are the broadly stated policies behind trade secret law." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 481 (1974); *see also Droeger*, 541 F.2d at 793 (rejecting imputation of knowledge in the trade secret context because to do otherwise would permit liability "when in fact there has been no invasion of those interests which trade-secret law seeks to protect") . It is for the express purpose of facilitating ethical competition

and innovation in the market that companies in the technology sector among others regularly undertake comprehensive investigation and diligence efforts, leveraging significant legal and forensic resources to prevent the violation of competitors' intellectual property rights. To hold that such reasonable due diligence may itself be used to impose liability – by holding the principal liable for the agent's detection, isolation and non-disclosure of a competitor's confidential business information – would have a severe and undesirable chilling effect on due diligence, contrary to the intent of CUTSA and DTSA.

Imposing liability in this context would also amount to an end-run around CUTSA's and DTSA's rejection of the "inevitable disclosure" theory of trade secrets misappropriation. *See Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1447 (2002) (rejecting inevitable disclosure under CUTSA); *see also* 18 U.S.C. § 1836(b)(3)(A)(i) (barring an injunction under the DTSA on an inevitable disclosure theory). California's unequivocal rejection of inevitable disclosure reflects the state's strong policy interest favoring employee mobility. *See, e.g.*, Cal. Bus. & Prof. Code § 16600 ("every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void"); *see also Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 955 (2008) (invalidating non-competes unless statutorily excepted). Allowing a party to be held liable under the imputation theory Waymo now advances would, contrary to the clear public policy expressed in California law, deter companies and individuals alike from seeking in good faith to respect intellectual property rights through due diligence, as well as from engaging in the mobility that helps promote technological innovation.

**Question 2:** "if the judge [should decide whether and to what extent the exception to imputation applies], whether the issue can be decided based on in camera review of privileged information"

In deciding whether MoFo's and Stroz's acquisition or knowledge could be imputed to Uber, the Court should rely on the evidentiary record, including the Stroz Engagement Letter. The Court can also rely on the Levandowski-Stroz Agreement and the referenced protocols to the extent it determines those documents, all of which have now been produced in unredacted form, are relevant. *See* Exhibit 1 (unredacted versions of the documents submitted by Uber to the Court

*in camera* on June 28, 2017, which are produced today with the consent of Mr. Levandowski's counsel). Any privileged information that the Court has reviewed *in camera* to make privilege determinations but that has not been produced should not be the basis for the Court's decision unless the privilege claim is ultimately rejected, because otherwise that information is unavailable as evidence.

"[C]ourts may conduct *in camera* review to assess the scope of privilege or confidentiality claims, but not to rule on the merits of an underlying disputed issue." *Apple, Inc. v. Samsung Elecs. Co.*, No. 11CV01846LHK (PSG), 2014 WL 4684842, at *7 (N.D. Cal. Sept. 19, 2014) (rejecting use of privileged information to determine whether a protective order had been violated by Samsung and Quinn Emanuel); *see also Ibrahim v. Department of Homeland Sec.,* No. C 06–00545 WHA, 2012 WL 6652362 (N. D. Cal. Dec. 20, 2012). If materials submitted to the Court for an *in camera* privilege determination are found not to be privileged, then they can be entered into evidence and considered as part of the Court's imputation analysis like any non-privileged evidence. However, if materials submitted to the Court for an *in camera* privilege determination *are* found to be privileged, then, absent voluntary production by the submitting party, they cannot be used by either party or by the Court as evidence concerning imputation or any other issue. (*See* Dkt. 651 at 4-5 (Uber's Response to Waymo's Precis); Dkt. 755 at 1-6 (Uber's Response to Court's Ten Questions).) Uber is aware of no case where the issue of imputation was decided based on a court's *in camera* review of privileged information.

**Question 3:** "whether and to what extent defendants can rely on the exception [to imputation] without waiving privilege over documents bearing on such obligations — including as to *every* version of any and all protocols put in place for the due diligence investigation — that have thus far been withheld from production"

The evidence in this case–primarily, the disclosure prohibitions in the Stroz Engagement Letter, along with the absence of any evidence suggesting that Stroz or MoFo did nonetheless disclose any such material to Uber–establishes, as a matter of law, that Stroz's or MoFo's acquisition or knowledge of such material cannot be imputed to Uber. The Court can also consider the Levandowski-Stroz Agreement and the referenced protocols to the extent it

determines those documents, all of which have now been produced in unredacted form, are relevant. *See* Exhibit 1. The evidence in this case clearly establishes that Uber had no right to exercise dominion over or otherwise acquire any confidential or proprietary Waymo information that might have been obtained from Levandowski by Stroz or MoFo as part of the due diligence investigation. Uber's production in unredacted form of the documents submitted to the Court *in camera* on June 28, 2017 does not waive privilege over any additional materials.

## CONCLUSION

For all the above reasons, the Court should conclude as a matter of law that Uber cannot be held liable for trade secret misappropriation based on a theory of imputation relating to actions taken by Stroz or MoFo during the due diligence process.

Dated: July 7, 2017

MORRISON & FOERSTER LLP

BOIES SCHILLER FLEXNER LLP

By: */s/ Karen L. Dunn*
         KAREN L. DUNN

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC