# EXHIBIT 1

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

June 28, 2017

Writer's Direct Contact
+1 (415) 268.7020
AGonzalez@mofo.com

## LODGED WITH THE CLERK FOR *IN CAMERA* REVIEW
## PER COURT ORDER (DKT. 731)

**BY HAND DELIVERY**

Honorable William Alsup
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc. et al, Case No. 3:17-cv-00939*

Dear Judge Alsup:

Pursuant to Magistrate Judge Corley's June 26, 2017 Order (Dkt. 731), Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively "Uber") provide the following documents, which implicate the protocols for Stroz Friedberg LLC's ("Stroz") work on the due diligence investigation, for Your Honor's *in camera* review:

Exhibit A:   Original Stroz engagement letter, which was agreed upon by the parties via email on March 4, 2016.

Exhibit B:   Two letters from Ms. Alisa Baker and Mr. John Gardner to Eric Friedberg of Stroz regarding the treatment of privileged materials in the Stroz diligence process.

Exhibit C:   Two side agreements between Mr. John Gardner and Eric Friedberg of Stroz regarding specific limitations on the provision of certain materials in the Stroz diligence process.

Exhibit D:   The original protocol, which was agreed upon by the parties via email on March 21, 2016.

Exhibit E:   The revised protocol, which was agreed on upon by the parties via email on or around April 11, 2016.

sf-3789368

**MORRISON | FOERSTER**

Honorable William Alsup
June 28, 2017
Page Two


Exhibit F:    The revised engagement letter, which was executed on April 11, 2016.

Uber respectfully requests that, after the Court concludes its review of the documents, it contact me so that I can arrange for prompt and secure return of the materials submitted herewith.

Sincerely,



Arturo J. Gonzalez

# EXHIBIT A

**PRIVILEGED AND CONFIDENTIAL**

ENGAGEMENT LETTER

VIA EMAIL

March 4, 2016

Eric Akira Tate
Partner
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482

Paul Sieben
Partner
O'Melveny & Myers LLP
2765 Sand Hill Road
Menlo Park, CA  94025


Dear Eric and Paul:

Thank you to Morrison & Foerster LLP ("Morrison") and its client Uber Technologies, Inc. ("Uber") and to O'Melveny & Myers LLP ("O'Melveny") and its client Ottomotto Inc. ("Ottomotto") for jointly engaging Stroz Friedberg, LLC.  This letter (the "Agreement") will serve to document the terms and conditions of our engagement.

Services

Morrison and O'Melveny (each a "Client", and together "Clients") on behalf of their clients Uber and Ottomotto, respectively, have requested that Stroz Friedberg, LLC ("Stroz Friedberg") provide consulting and technical services regarding an independent investigation into whether certain current or prospective employees (which for purposes of this Agreement includes non-employee service providers) of Ottomotto have improperly retained on devices or in storage repositories not belonging to former employers, confidential information belonging to former employers, or breached any fiduciary duty, duty of loyalty, or other confidentiality, non-solicitation, non-competition or other obligations based in contract, statute or otherwise, as such obligations are defined to Stroz Friedberg by Clients, to former employers in accordance with a Statement of Work that will be agreed to by the parties and incorporated as part of the Agreement (the "Services") and Stroz Friedberg has agreed to provide the Services (the "Engagement"). Uber agrees to pay all fees, charges and disbursements incurred in connection with the Services, in accordance with the terms set forth in this Agreement.

Fees

a) General Rates. Stroz Friedberg charges for the time devoted to the Engagement on an hourly fee basis, at the rates in effect when the work is performed.  The current hourly rates are set forth as follows:  Chairmen and Executive Managing Directors: $1,000 - $1,150; Managing Directors and Vice Presidents: $680 - $850; Directors and Assistant Directors: $600 - $715; Consulting and Forensics Professionals: $250 - $600; Data Discovery Professionals: $275 - $375; and Administrative Professionals: $110 - $275.  These rates apply generally, as well as to travel.  The use of subcontractors, if needed, will be charged at Stroz Friedberg's rates.

b) <u>Machine Time and Specialized Solutions</u>. The rate for machine time devoted to running a forensic process is $95 per hour.  The rate for use of our proprietary host interrogation tool is $100 per host (capped at $150,000 per incident); our network traffic capture tool $1,500 per week; our proprietary incident response tool $5,000 per week per platform; the OmniPeek Network Analyzer $5,000 per week per platform; and our high speed, on-site malware analysis and forensic hosting tool, $2,500 per week per platform.  Use of our mobile electronic disclosure/discovery processing, hosting and production unit will be charged at an amount to be structured depending upon the circumstances of the deployment.

c) <u>Electronic Discovery Services</u>.  Any electronic discovery consulting services will be billed at the hourly rates set forth above.  All other electronic discovery charges are detailed in Exhibit A.

d) <u>Intelligence and Investigations Division</u>.  Forensic accounting, due diligence, or investigation services requested by Clients will be performed by our Intelligence and Investigations division at the rates in effect when the work is performed.

e) <u>Testimony</u>.  Written testimony or reports will be provided at normal hourly rates.  Internal peer review is part of an Engagement, and normal hourly rates will apply to any supervision of oral testimony and any internal peer review of proposed reports, affidavits, declarations or oral testimony.

f) <u>Retainer</u>.  Stroz Friedberg requests an initial retainer of $75,000 to begin work in this Engagement.  In cases where Stroz Friedberg's fees and charges approach the limit of the initial or a later retainer amount, Stroz Friedberg will request funds to replenish the retainer.  At the end of the Engagement, Stroz Friedberg agrees to refund to Uber any amount of the retainer or replenishment, not properly applied to fees and costs incurred as of the date of termination.

g) <u>Miscellaneous Charges</u>.  Stroz Friedberg may charge for other miscellaneous expenses, fees, and costs including, but not limited to, use of forensically-prepared thumb drives or hard drives (at $50 - $420 depending on size); other computer hardware and digital media; transportation, meals, and lodging; copies or printed documents; overnight delivery charges; storage fees for original media provided to Stroz Friedberg, after 30 days at rates up to $50 per month per item; credit check fees, and database searches. Stroz Friedberg reserves the right to pass on any reasonable legal fees and expenses that are incurred as the result of the Engagement but will notify Uber before such fees and expenses are incurred.

h) <u>Invoices</u>.  The charges will be billed 100% to Uber. Stroz Friedberg will send invoices directly to Uber with a copy to Morrison.  Invoices are due within 30 days of the invoice date.  Morrison and Uber shall notify Stroz Friedberg in writing of any disputed charges within these 30 days; otherwise Stroz Friedberg's invoices shall be deemed payable in full.  Any charges that remain undisputed and unpaid 30 days after the invoice date will accrue interest at 1.5 percent per month.  Stroz Friedberg reserves the right to terminate its services at any time if Uber fails to pay Stroz Friedberg's invoices on time or fails to pay the requested refresher of a retainer.  Any provided estimates of fees and expenses are only estimates and are not binding.

<u>Confidentiality</u>

The purpose of the Engagement is to enable Uber, Ottomotto and their respective counsel to understand certain factual matters potentially relevant to potential litigation and related matters; therefore, Stroz Friedberg's communications with Clients, Uber and Ottomotto, Stroz Friedberg's work product, and all information and data received from Clients, Uber and Ottomotto (including its employees) are covered by common interest, attorney-client privilege and/or attorney work product doctrine.  Accordingly, Stroz Friedberg will maintain as confidential all information and data it receives from Clients, Uber and Ottomotto (including its employees) (the "Confidential Information").

Stroz Friedberg agrees all communications (including emails) by it relating to the Engagement will be sent to both Clients together. In addition, all phone calls relating to the Engagement must include both Clients, unless otherwise agreed to in writing by both Clients. However, communications concerning general administrative or billing matters may be dealt with individually. In performing the Engagement, Stroz

Friedberg agrees that only information relating to the Services and purpose of the Engagement may be disclosed to Morrison and Uber, provided, however, that in the event such information includes or may include confidential or proprietary information of a former employer of an Ottomotto employee, or there is any potential question or uncertainty whether information relates to the Services and purpose of the Engagement, such information will be disclosed to Clients only on an outside counsel attorney's eyes only (AEO) basis.  Notwithstanding the foregoing, under no circumstances will Stroz Friedberg disclose to Uber or Morrison or any of their representatives  any attorney-client privileged communications between Ottomotto and/or any of its employees, stockholders, officers, members, managers or directors, on the one hand, and counsel for Ottomotto or counsel to any of such persons, on the other hand, that are disclosed to or discovered by Stroz Friedberg in its performance of the services.  For the avoidance of doubt, communications between Ottomotto and/or any of its employees, stockholders, officers, members, managers or directors, on the one hand, and any of the following attorneys and law firms, on the other hand, is attorney-client privileged communication and will not be disclosed by Stroz Friedberg to Uber or Morrison or any of their respresentatives: O'Melveny & Myers LLP, Fenwick & West LLP (including text messages with Ted Wang at 650-464-0059), Orrick, Herrington & Sutcliffe LLP, Donahue Fitzgerald LLP (including emails with John Gardner at jgard8167@gmail.com), Ognen Stojanovski at ognen@alumni.stanford.edu, Doug Mandell at dmandell@mlawgroup.com, Maureen Dorney at maureen@paradigmcounsel.com, GCA Law Partners LLP, or Levine & Baker LLP or any other attorney or law firm with whom such persons had attorney-client privileged communications.

Confidential Information does not include (1) information that has been or is, prior to the Engagement, in the public record, or is placed in the public record by Clients or Uber or Ottomotto after the Engagement begins, through no unlawful act of anyone; (2) indications of compromise (i.e., data, configurations, specifications, and other conditions that are identified as malware, vulnerabilities, anomalies, compromises, or potentially harmful conditions) identified by Stroz Friedberg; or (3) facts necessary to set forth in proceedings for non-payment of invoices.  If Stroz Friedberg encounters what it deems to be any child pornography on any computer media delivered to it in the course of the Engagement, Stroz Friedberg reserves the right to disclose such contraband to the appropriate authorities.

<u>Authority to Access Data and Indemnification</u>

Uber and Ottomotto each authorize Stroz Friedberg to access the data related to this Engagement and represents that such access does not violate any applicable law or treaty.  Uber and Ottomotto agree to hold harmless and indemnify Stroz Friedberg, including its officers, employees, and agents against all third-party claims, damages and costs including attorneys' fees and disbursements arising from the Engagement, except for actions by Stroz Friedberg, its officers, employees, and/or agents that are adjudicated to constitute willful misconduct or gross negligence.

<u>Limitation of Liability and Damages</u>

Because digital equipment/data/media are fragile and may be damaged, infected, or corrupted prior to the time Stroz Friedberg receives them, other than due to its and their willful misconduct, Stroz Friedberg for itself and its officers, employees, or agents will not assume responsibility for damage that may occur to Uber's or Ottomotto's equipment/data/media prior to or during Stroz Friedberg's efforts to complete the Engagement.  As such, other than due to its willful misconduct of Stroz Friedberg will not be liable for direct or indirect damages arising from harm that may occur to Uber's or Ottomotto's equipment/data/media.  Any data, especially data restored from unknown sources, may contain viruses or other malware; therefore, Clients, Uber and Ottomotto assumes responsibility to protect themselves with respect to the receipt of data from Stroz Friedberg or any other party and shall advise its agents and third-party recipients to take similar precautions.  Other than due to its and their willful misconduct, in no event shall Stroz Friedberg, its officers, employees, or agents be liable for damages, under any theory, beyond the amount paid to Stroz Friedberg under this Engagement.

<u>Return of Client Materials</u>

Prior to the end of the Engagement, Stroz Friedberg and Clients will confirm the disposition of any original materials provided by Client or Uber or Ottomotto to Stroz Friedberg.  In the event that, after using its

reasonable efforts to do so, Stroz Friedberg is not able to return to Clients or Uber or Ottomotto original materials provided by Clients or Uber or Ottomotto to Stroz Friedberg, Stroz Friedberg reserves the right to destroy such original materials pursuant to its then-current destruction policy (subject to the preceding sentence).

Conflicts

This Engagement pertains to a discrete matter and would not preclude Stroz Friedberg from rendering services to other clients adverse to Clients or Uber or Ottomotto on matters that are not specifically related to this Engagement.

Miscellaneous

Clients, Uber, Ottomotto and Stroz Friedberg agree that the Engagement shall be governed by and construed and enforced in accordance with the internal laws of the State of California (as opposed to the conflict of law provisions) as an agreement made and to be performed entirely within such State.  Clients, Uber, Ottomotto and Stroz Friedberg agree that this Agreement (1) may not be modified or amended, except by a writing signed by each party; (2) shall be binding upon each party, its successors and permitted assigns; and (3) contains the entire agreement and understanding among Clients, Uber, Ottomotto and Stroz Friedberg with respect to the subject matter hereof and supersedes all prior agreements and understandings, written or oral, among Clients, Uber, Ottomotto and Stroz Friedberg with respect to the subject matter hereof.  No provision of this Agreement may be waived except in writing by the party against whom such waiver is sought to be enforced.  No express or implied waiver, breach or default by any party of any provision of this Agreement shall constitute a continuing waiver of such provision or of any other provision of this Agreement.  Clients, Uber, Ottomotto and Stroz Friedberg hereby consent to the jurisdiction of the Superior Court of the State of California for the County of Santa Clara and the United States District Court for the Northern District of California for all purposes in connection with the Engagement, and further consent that any process or notice of motion may be served as a notice, if in writing and given by (1) prepaid certified or regular first class mail, (2) personal delivery, or (3) nationally recognized overnight delivery service at the addresses set forth at the beginning of this letter, and shall be deemed given when sent, within or without the State of California, provided a reasonable time for appearance is allowed.

If you find this letter satisfactory, kindly return an executed copy together with a check or wire transfer in the amount of $75,000.  Stroz Friedberg looks forward to working with you. Very truly yours,

STROZ FRIEDBERG, LLC

By: _____
    Eric Friedberg
    Executive Chairman

AGREED TO AND ACCEPTED:
**O'Melveny & Myers LLP**


By: _____
    Paul Sieben
    Partner


ACKNOWLEDGED AND AGREED TO:
**Uber Technologies, Inc.**


By:_____
  Name:
  Title:

AGREED TO AND ACCEPTED:
**Morrison & Foerster LLP**


By: _____
    Eric Akira Tate
    Partner


ACKNOWLEDGED AND AGREED TO:
**Ottomotto Inc.**


By:_____
  Name:
  Title:

**EXHIBIT A**

| **EARLY CASE ASSESSMENT – FIRST GLANCE** | |
|---|---|
| First Glance Processing (*concept clustering, searching, visual data analysis, ability to cull data/promote docs for full processing to review platform*) | $ 125/GB |
| **PROCESSING** | |
| Data culling (*de-NIST, dedupe, date and/or keyword filtering,*) | $ 75/GB |
| Processing (*de-NIST,  dedupe, extract  text/metadata & embedded objects, promote to review*) | $ 295/GB |
| Foreign Language Translation to English (*machine translation*) | $ 295/GB or $ .03/page |
| **PRE-PROCESSED DATA** | |
| Ingestion of Pre-Processed Data (*Paper/ 3rd Party Productions/ Migrated Data*) | $ 75/GB |
| OCR or other text extraction | $ 100/GB |
| **REVIEW ANALYTICS** | |
| Relativity Analytics Bundle (*Near Duplication & Email Threading, Conceptual Search, Clustering, Categorization (Predictive Coding), Keyword Expansion*) | $175/GB |
| Stroz Analytics Bundle (*Near Duplication & Email Threading, Conceptual Search, Clustering, Categorization (Predictive Coding), Keyword Expansion*)    Note: Near dupe and threading can be unbundled upon request at  $ 75/GB    Note: Privilege Analytics can be unbundled upon request at  $ 50/GB | $ 150/GB |
| **HOSTING** | |
| Standard Hosting | $ 35/GB/month |
| Near-line "In"/Active "Out" Hosting | $ 10/$ 35/GB/month |
| User Licenses | $ 100/user/month |
| **PRODUCTION** | |
| Tiff Generation | $ .03/page |
| Tiff Bundle (Production including Bates Stamping, Branding & Watermarking) | $ .05/page |
| Load File Delivery | $ 75/load file |
| Output to Hard Drive | $ 175 to $ 400 per drive |
| Output to CD/DVD | $ 35/$ 55 per media |
| **DATA STORAGE** | |
| Data Deletion | No Charge |
| Full Archiving | $ 35/GB |
| Near Line Storage | $ 10/GB/month |
| **CONSULTING & ENGINEERING SERVICES** | |
| Expert Consulting & Forensic Analysis | Per Engagement Letter |
| Project Management & Exception Handling | Per Engagement Letter |
| Customized Engineering Services | Per Engagement Letter |

# EXHIBIT B

# LEVINE & BAKER LLP

ATTORNEYS AT LAW
340 PINE STREET, SUITE 300
SAN FRANCISCO, CA 94104
*www.levinebakerlaw.com*

ALISA J. BAKER
TEL (415) 391-2995
DD: (415) 391-3510
FAX: (415) 391-8488

Stroz Friedberg, LLC
Eric Friedberg, Executive Chairman
101 Montgomery St
Suite 2450
San Francisco, CA 94104

March 4, 2016

Dear Mr. Friedberg:

This firm represents Lior Ron, individually, with respect to a proposed examination by Stroz Friedberg, LLC ("Stroz") of Mr. Ron's electronic media, personal accounts and related materials, all as described in your joint engagement letter with Morrison & Foerster LLP and its client Uber USA, LLC, and O'Melveny & Myers LLP and its client Ottomotto Inc. (collectively, "Clients"), dated February 26, 2016 ("Stroz Examination").

Mr. Ron is prepared to provide full cooperation with the Stroz Examination. The Stroz Examination requests possession of physical electronic media, passwords for personal accounts and other direct and unsupervised access to Mr. Ron's information ("Accessed Materials"). Due to the nature of this request, we will not be in a position to examine and screen in advance attorney-client privileged communications, attorney work product and other privileged documents ("Privileged Documents").

The Accessed Materials are likely to contain Privileged Documents as to which Mr. Ron holds the attorney-client privilege from disclosure to third parties, including the Clients. In the event Stroz discovers Privileged Documents during the course of the Stroz Examination, we are instructing Stroz not to review the content of any such Privileged Documents inadvertently included in the Accessed Materials. Stroz is further directed to immediately segregate and return to us any Privileged Documents discovered during the course of the Stroz Examination. As described in the Stroz engagement letter, Stroz is not authorized to directly or indirectly disclose any Privileged Documents, nor the content or existence of such materials, to its Clients or to any third party whatsoever.

This letter is provided to Stroz with the express intention of preserving the attorney-client and work product privileges held by Mr. Ron with respect to any Privileged Documents contained or reflected in the Accessed Materials. Mr. Ron's cooperation in providing Stroz access to the Accessed Materials not shall be deemed or construed as a waiver of any privilege held by Mr. Ron with respect to such materials, information and documentation.

Sincerely,

LEVINE & BAKER LLP
By: Alisa J. Baker



1646 N. California Boulevard, Suite 250, Walnut Creek, CA 94596
tel: (925) 746-7770   fax: (925) 746-7776

John F. Gardner
jgardner@donahue.com

March 4, 2016

Stroz Friedberg, LLC
Eric Friedberg, Executive Chairman
101 Montgomery St
Suite 2450
San Francisco, CA 94104

Dear Mr. Friedberg,

      We represent Anthony Levandowski, individually, with respect to a proposed examination by Stroz Friedberg, LLC ("Stroz") of Mr. Levandowski's electronic media, personal accounts and related materials, all as described in your joint engagement letter with Morrison & Foerster LLP and its client Uber USA, LLC, and O'Melveny & Myers LLP and its client Ottomotto Inc. (collectively, "Clients"), dated March 4, 2016 ("Stroz Examination").

      Mr. Levandowski is prepared to provide full cooperation with the Stroz Examination. The Stroz Examination requests possession of physical electronic media, passwords for personal accounts and other direct and unsupervised access to Mr. Levandowski's information ("Accessed Materials"). Due to the nature of this request, we will not be in a position to examine and screen in advance attorney-client privileged communications, attorney work product and other privileged documents ("Privileged Documents").

      The Accessed Materials are likely to contain Privileged Documents as to which Mr. Levandowski holds the attorney-client privilege from disclosure to third parties, including the Clients. In the event Stroz discovers Privileged Documents during the course of the Stroz Examination, we are instructing Stroz not to review the content of any such Privileged Documents inadvertently included in the Accessed Materials. Stroz is further directed to immediately segregate and return to us any Privileged Documents discovered during the course of the Stroz Examination. As described in the Stroz engagement letter, Stroz is not authorized to directly or indirectly disclose any Privileged Documents, nor the content or existence of such materials, to its Clients or to any third party whatsoever.

      This letter is provided to Stroz with the express intention of preserving the attorney-client and work product privileges held by Mr. Levandowski with respect to any Privileged Documents contained or reflected in the Accessed Materials. Mr. Levandowski's cooperation in providing

Stroz Friedberg, LLC
March 4, 2016

 Stroz access to the Accessed Materials not shall be deemed or construed as a waiver of any privilege held by Mr. Levandowski with respect to such materials, information and documentation.

Sincerely,

John Gardner

JFG:af

# EXHIBIT C



JOHN F. GARDNER
jgardner@donahue.com

1999 Harrison Street, 25th Floor, Oakland, CA 94612-3520
tel: (510) 451-3300   fax: (510) 451-1527
www.donahue.com

March 14, 2016

Stroz Friedberg, LLC
Eric Friedberg, Executive Chairman
101 Montgomery St
Suite 2450
San Francisco, CA 94104

Dear Mr. Friedberg,

We represent Anthony Levandowski, individually, with respect to a proposed examination by Stroz Friedberg, LLC ("Stroz") of Mr. Levandowski's electronic media, personal accounts and related materials, all as described in your joint engagement letter with Morrison & Foerster LLP and its client Uber USA, LLC, and O'Melveny & Myers LLP and its client Ottomotto Inc. (collectively, "Clients"), dated March 4, 2016 ("Stroz Examination").

In connection with the Stroz Examination, Stroz has requested that Mr. Levandowski provide a list of all Google employees with whom he had business interactions during his tenure at Google, Inc. ("Employee List"). To confirm our understanding, Stroz has requested the Employee List solely for the purpose of assisting Stroz in the development of a protocol for examining Mr. Levandowski's physical electronic media, personal electronic accounts, and other hard copy and electronic materials in connection with the Stroz Exmination ("List Usage Purpose"), and for no other purpose.

Mr. Levandowski's disclosure of information regarding the employees of his prior employer is highly sensitive, and we wish to ensure that the information will be used solely by Stroz and only for the List Usage Purpose.

As a condition to providing Stroz the Employee List, we are therefore requesting that Stroz agree to the below terms of such disclosure:

- Stroz will use the Employee List solely for the List Usage Purpose.

- Stroz will not disclose the Employee List or any portion thereof, nor the contents of the Employee List, to any third party whatsoever, including without limitation its Clients, or any of them, or any law firm representing Uber USA, LLC or Ottomotto Inc.

- Stroz will not upload or archive the Employee List in any Proposed Disclosure Folder, Final Disclosure Folder, "attorneys-eyes-only" folder, or any other electronic location to which any of its Clients have access.

Stroz Friedberg, LLC
March 14, 2016
Page 2

- Upon Mr. Levandowski's written request, Stroz will promptly return or destroy all hard copies the Employee List, will permanently delete all electronic files containing or referencing the Employee List or any portion thereof, and will certify such destruction to Mr. Levandowski; provided that Stroz may keep one archival copy for purposes of documenting the protocol used in the Stroz Examination.

Nothing in this letter shall be deemed or construed as a waiver of any right or privilege held by Mr. Levandowski with respect to the Stroz Examination or the Employee List provided to Stroz. Mr. Levandowski and Ottomotto Inc. share a common legal interest in the subject matter of the Stroz Examination, and in Stroz's retention through O'Melveny & Meyers, as counsel for Ottomotto Inc., as a related party to Mr. Levandowski. All attorney-client, work product and joint defense privileges are reserved with respect to this letter, the Employee List or any other materials, information and documentation delivered to Stroz.

Notwithstanding the foregoing, nothing in this letter prohibits Stroz from reporting to its Clients, if applicable, at the end of the Stroz Examination the identity of any person with respect to whom Mr. Levandowski's actions constituted, in the opinion of Stroz, a violation of his non-solicitation or other duties to Google, Inc.

If the foregoing meets with your approval, please indicate your acceptance by signing and returning a copy of this letter. The Employee List is prepared and ready for circulation to you promptly upon receipt.

Sincerely,

John Gardner

AGREED AND ACCEPTED:

STROZ FRIEDBERG, LLC

By: _____
Eric Friedberg
Executive Chairman

Dated: _____3/14/16_____

JFG:af



JOHN F. GARDNER
jgardner@donahue.com

1999 Harrison Street, 25th Floor, Oakland, CA  94612-3520
tel: (510) 451-3300   fax: (510) 451-1527
www.donahue.com

March 21, 2016

***Via E-mail***

Stroz Friedberg, LLC
Eric Friedberg, Executive Chairman
101 Montgomery St
Suite 2450
San Francisco, CA 94104

Dear Mr. Friedberg,

We represent Anthony Levandowski, individually, with respect to a proposed examination by Stroz Friedberg, LLC ("Stroz") of Mr. Levandowski's electronic media, personal accounts and related materials, all as described in your joint engagement letter with Morrison & Foerster LLP and its client Uber USA, LLC, and O'Melveny & Myers LLP and its client Ottomotto Inc. (collectively, "Clients"), dated March 4, 2016 ("Stroz Examination").

In connection with the Stroz Examination, Stroz has requested that Mr. Levandowski provide certain devices, access to personal accounts, electronic files, and hard copy documentation which may reflect or contain information associated with business interactions between Mr. Levandowski, 510 Systems, LLC, and Anthony's Robots, on the one hand, and Google, Inc., on the other hand ("Aspen Information").  To confirm our understanding, Stroz has requested the Aspen Information solely for the purpose of assisting Stroz in a forensic examination of whether Mr. Levandowski has improperly retained confidential information belonging to former employers, or breached any fiduciary duty, duty of loyalty, or other confidentiality, non-solicitation, non-competition or other obligations based in contract, statute or otherwise, as such obligations are defined by Clients ("Document Usage Purpose"), and for no other purpose.

Mr. Levandowski's disclosure of the Aspen Information is highly sensitive, and we wish to ensure that the information will be used solely by Stroz and only for the Document Usage Purpose.

As a condition to providing Stroz the Aspen Information, and as a condition to Stroz's receipt, review and usage of the Aspen Information, we are therefore requesting that Stroz agree to the below terms of such disclosure:

- Stroz will use the Aspen Information solely for the Document Usage Purpose.

---

Stroz Friedberg, LLC
March 21, 2016
Page 2

- Stroz will not disclose the Aspen Information, or any portion thereof, nor the contents of the Aspen Information, to any third party whatsoever, including without limitation its Clients, or any of them, or any law firm representing Uber USA, LLC or Ottomotto Inc., except as provided in the attached Examination Protocol.

- Upon Mr. Levandowski's written request, Stroz will promptly return or destroy all hard copies the Aspen Information, will permanently delete all electronic files containing or referencing the Aspen Information or any portion thereof, and will certify such destruction to Mr. Levandowski; provided that Stroz may keep one archival copy for purposes of documenting its forensic examination under the protocol used in the Stroz Examination.

Nothing in this letter shall be deemed or construed as a waiver of any right or privilege held by Mr. Levandowski with respect to the Stroz Examination or the Aspen Information provided to Stroz.  Mr. Levandowski and Ottomotto Inc. share a common legal interest in the subject matter of the Stroz Examination, and in Stroz's retention through O'Melveny & Meyers, as counsel for Ottomotto Inc., as a related party to Mr. Levandowski.  All attorney-client, work product and joint defense privileges are reserved with respect to this letter, the Aspen Information or any other materials, information and documentation delivered to Stroz.

Notwithstanding the foregoing, but subject to the Examination Protocol, nothing in this letter prohibits Stroz from reporting to its Clients, if applicable, at the end of the Stroz Examination, any portion of the Aspen Information which Stroz, in the opinion of Stroz, believes constitutes factual information which may relate to or be relevant to a potential breach any fiduciary duty, duty of loyalty, or other confidentiality, non-solicitation, non-competition or other obligations based in contract, statute or otherwise, as defined by Clients.

If the foregoing meets with your approval, please indicate your acceptance by signing and returning a copy of this letter.  The Aspen Information is prepared and ready for distribution upon receipt of a signed counterpart.

Sincerely,

John Gardner

AGREED AND ACCEPTED:

STROZ FRIEDBERG, LLC

By: _____
Eric Friedberg
Executive Chairman

Dated: _____March 22, 2016_____

Stroz Friedberg, LLC
March 21, 2016
Page 3

## PROTOCOL FOR REVIEW OF DATA AND DEVICES

This protocol shall govern the review of the data that has been collected from the email accounts, online repositories, laptops, desktops, hard drives, flash drives, thumb drives, mobile devices, CD's, and any other electronic or digital media owned or in the custody, control, or possession of the Diligenced Employees (referred to herein as the "In-Scope Digital Media"), as well as, the digital forensic analysis of the devices collected from the Diligenced Employees.

As part of its independent investigation, Stroz Friedberg will forensically collect the In-Scope Digital Media, load and process the active (i.e. non-deleted), user-created documents and communications identified on the In-Scope Digital Media into Stroz Friedberg's Stroz Review platform.  In the event that there are user-created documents that cannot be processed/decrypted, the Stroz team will attempt to clear those exceptions, including through manual QC, password-cracking, and obtaining passwords from the Diligenced Employees. A proposed final list of exceptions that cannot be cleared will be initially provided to O'Melveny & Myers and if applicable, any separate counsel retained by the Diligenced Employee (jointly for all purposes under this protocol, "O'Melveny") for review.  O'Melveny will have the right to include annotations and explanatory comments to the exceptions.  Upon receiving written authorization from O'Melveny, Stroz will provide a final list of exceptions to O'Melveny and Morrison & Foerster ("Morrison"), together with any annotations or comments separately identified as provided by O'Melveny.

As part of its independent investigation, Stroz Friedberg will also examine forensic images of smartphones, tablets, and computers, where applicable, belonging to the Diligenced Employees. Stroz Friedberg will analyze these images for evidence of copying, transfer, ongoing possession, or deletion of sensitive information from a prior employer, and for evidence of breaches of non-solicitation, non-compete, and fiduciary obligations to former employer(s). Stroz Friedberg will analyze active files, deleted files, unallocated space, and the host controlled area for relevant information.

Stroz Friedberg will use its understanding of the goal of the investigation, its interviews with the Diligenced Employees, and input from O'Melveny and Morrison, given their familiarity with the matter, to create search criteria.  Stroz Friedberg will also use Pure Discovery early case assessment/concept searching technology to develop the search criteria.  Stroz Friedberg will then use the final search criteria as approved by O'Melveny and Morrison to search the user-created documents from the In-Scope Digital Media for relevant documents. Identified documents of interest may lead to additional interviews of the Diligenced Employees.

At the end of its investigation, if Stroz Friedberg believes that non-privileged[1], relevant documents or communications – whether active, deleted, or fragments -- should be shared with O'Melveny

---

[1] O'Melveny has provided Stroz Friedberg with some criteria to aid Stroz Friedberg in its classification of privileged documents. Specifically, O'Melveny has included a list of attorney client names, firms, domains, addresses and

Stroz Friedberg, LLC
March 21, 2016
Page 4

and Morrison, it will first place those documents in a folder (the "Proposed Disclosure Folder") on Stroz Review for review by O'Melveny, but shall not provide Morrison access to the Proposed Disclosure Folder.  If O'Melveny claims that any of the documents subject to proposed disclosure are subject to attorney-client privilege, attorney work-product privilege, or other restriction on disclosure O'Melveny will produce a privilege log to Morrison regarding such documents, and Stroz Friedberg will, unless and until the documents are cleared for disclosure by O'Melveny, remove the documents from the Proposed Disclosure Folder. In addition, if O'Melveny identifies any documents in the Proposed Disclosure Folder to be "outside counsel-eyes-only" or "attorneys-eyes-only" (as such terms are defined below), Stroz Friedberg will move those documents to an outside counsel-eyes-only or attorneys-eyes-only folder. Upon receiving written authorization from O'Melveny, and only upon receiving such authorization, Stroz Friedberg will make the Proposed Disclosure Folder and the outside counsel-eyes-only or attorneys-eyes-only folder available to Morrison. If the parties agree that Unicorn or Zing executives should have access to the Proposed Disclosure Folder, Stroz Friedberg will arrange for such access.  Unicorn executives will not have access to the outside counsel or attorneys-eyes-only folder. Stroz Friedberg will not create for Unicorn executives user credentials that have access to the outside counsel or attorneys-eyes-only documents.  Morrison attorneys will not give to Unicorn executives credentials to, or otherwise give access to the documents in, the outside counsel or attorneys eyes only folder.  The only documents and communications that Stroz Friedberg's independent report will rely on or reference will be documents contained in the approved Proposed Disclosure Folder, except to the extent that privileged communications contain substantive content that is relevant, in which case Stroz Friedberg may reference such substantive content in a manner that the parties mutually agree (or an arbitrator, if the parties cannot agree, determines) reasonably addresses the parties' respective concerns. Stroz Friedberg will issue its final report reflecting the materials contained in the Final Disclosure Folder only upon written authorization from both O'Melveny and Morrison..

For purposes of this Protocol, the term "outside counsel eyes only" means O'Melveny, Morrison or any other law firm that is mutually identified by Unicorn and Zing as outside counsel to Unicorn, Zing or the Diligenced Employees who may have access to documents marked as outside counsel eyes only.

For purposes of this Protocol, the term "attorneys eyes only" means in-house counsel of Unicorn and Zing who may have access to documents marked as attorneys eyes only.

For purposes of this Protocol, the term "O'Melveny" means O'Melveny & Meyers and if applicable, any separate counsel retained by the Diligenced Employee.  All deliverables and folder access under this Protocol pertaining to "O'Melveny" shall be delivered or made available

---

telephone numbers for Stroz Friedberg to use in identifying potentially privileged documents and communications. Stroz Friedberg will use this list, its own manual review, and its proprietary privilege-identifying algorithms to identify privileged documents and e-mails that relate to the subject matter of the investigation.  Stroz Friedberg will create a folder on Stroz Review that contains such documents and e-mails – whether active, deleted, or fragments – and O'Melveny will create and deliver to Morrison a privilege list relating to those documents.

Stroz Friedberg, LLC
March 21, 2016
Page 5

concurrently to such counsel, and any required authorizations or approvals of "O'Melveny" shall be issued jointly by such counsel.

Any dispute between Unicorn, Zing or the Diligenced Employees regarding this Protocol, including whether documents should be excluded from disclosure pursuant to this Protocol on the grounds that such documents are subject to attorney-client privilege, attorney work-product privilege, or other restriction on disclosure, shall be subject to final and binding expedited arbitration in accordance with the terms of this paragraph. Any such arbitration shall be held in San Francisco, California, under the Comprehensive Arbitration Rules and Procedures of JAMS ("JAMS") and each of Parent or Unicorn, on the one hand, and Zing or the Diligenced Employees (as applicable), on the other, agree to appear at and be bound by such arbitration proceeding. With respect to any matter submitted to arbitration, such arbitration shall be settled by an arbitration conducted by one arbitrator mutually agreeable to by the parties to the arbitration. In the event that, within fifteen (15) days after submission of any dispute to arbitration, the parties to the arbitration cannot mutually agree on one arbitrator, then, JAMS shall within seven (7) days thereafter submit to the parties a list of seven proposed arbitrators and each party shall have the right to the arbitration to strike three names from the list and rank the remaining four proposed arbitrators in order of preference. Within seven (7) days after such submission, JAMS shall identify the arbitrator with the highest combined ranking in terms of preference. Unicorn shall pay all Expenses (as such term is defined in the Indemnification Agreement) relating to the arbitration. The arbitrator, as the case may be, shall set a limited time period that shall exceed no more than 60 days after the demand for arbitration is filed and establish procedures designed to reduce the cost and time for discovery while allowing the parties an opportunity, adequate in the sole judgment of the arbitrator or majority of the arbitrator, as the case may be, to discover relevant information from the opposing parties about the subject matter of the dispute. The decision of the arbitrator as to the validity of any claim submitted to arbitration shall be final, binding, and conclusive upon the parties to this Protocol pursuant to the Federal Arbitration Act ("FAA"). Such decision shall be written and shall be supported by written findings of fact and conclusions which shall set forth the award, judgment, decree or order awarded by the arbitrator(s). Judgment upon any award rendered by the arbitrator(s) may be entered in any court having jurisdiction.

# EXHIBIT D

Stroz Friedberg, LLC
March 21, 2016
Page 3

## PROTOCOL FOR REVIEW OF DATA AND DEVICES

This protocol shall govern the review of the data that has been collected from the email accounts, online repositories, laptops, desktops, hard drives, flash drives, thumb drives, mobile devices, CD's, and any other electronic or digital media owned or in the custody, control, or possession of the Diligenced Employees (referred to herein as the "In-Scope Digital Media"), as well as, the digital forensic analysis of the devices collected from the Diligenced Employees.

As part of its independent investigation, Stroz Friedberg will forensically collect the In-Scope Digital Media, load and process the active (i.e. non-deleted), user-created documents and communications identified on the In-Scope Digital Media into Stroz Friedberg's Stroz Review platform.  In the event that there are user-created documents that cannot be processed/decrypted, the Stroz team will attempt to clear those exceptions, including through manual QC, password-cracking, and obtaining passwords from the Diligenced Employees. A proposed final list of exceptions that cannot be cleared will be initially provided to O'Melveny & Myers and if applicable, any separate counsel retained by the Diligenced Employee (jointly for all purposes under this protocol, "O'Melveny") for review.  O'Melveny will have the right to include annotations and explanatory comments to the exceptions.  Upon receiving written authorization from O'Melveny, Stroz will provide a final list of exceptions to O'Melveny and Morrison & Foerster ("Morrison"), together with any annotations or comments separately identified as provided by O'Melveny.

As part of its independent investigation, Stroz Friedberg will also examine forensic images of smartphones, tablets, and computers, where applicable, belonging to the Diligenced Employees. Stroz Friedberg will analyze these images for evidence of copying, transfer, ongoing possession, or deletion of sensitive information from a prior employer, and for evidence of breaches of non-solicitation, non-compete, and fiduciary obligations to former employer(s). Stroz Friedberg will analyze active files, deleted files, unallocated space, and the host controlled area for relevant information.

Stroz Friedberg will use its understanding of the goal of the investigation, its interviews with the Diligenced Employees, and input from O'Melveny and Morrison, given their familiarity with the matter, to create search criteria.  Stroz Friedberg will also use Pure Discovery early case assessment/concept searching technology to develop the search criteria.  Stroz Friedberg will then use the final search criteria as approved by O'Melveny and Morrison to search the user-created documents from the In-Scope Digital Media for relevant documents. Identified documents of interest may lead to additional interviews of the Diligenced Employees.

At the end of its investigation, if Stroz Friedberg believes that non-privileged[1], relevant documents or communications – whether active, deleted, or fragments -- should be shared with O'Melveny

---

[1] O'Melveny has provided Stroz Friedberg with some criteria to aid Stroz Friedberg in its classification of privileged documents. Specifically, O'Melveny has included a list of attorney client names, firms, domains, addresses and

Stroz Friedberg, LLC
March 21, 2016
Page 4

and Morrison, it will first place those documents in a folder (the "Proposed Disclosure Folder") on Stroz Review for review by O'Melveny, but shall not provide Morrison access to the Proposed Disclosure Folder.  If O'Melveny claims that any of the documents subject to proposed disclosure are subject to attorney-client privilege, attorney work-product privilege, or other restriction on disclosure O'Melveny will produce a privilege log to Morrison regarding such documents, and Stroz Friedberg will, unless and until the documents are cleared for disclosure by O'Melveny, remove the documents from the Proposed Disclosure Folder. In addition, if O'Melveny identifies any documents in the Proposed Disclosure Folder to be "outside counsel-eyes-only" or "attorneys-eyes-only" (as such terms are defined below), Stroz Friedberg will move those documents to an outside counsel-eyes-only or attorneys-eyes-only folder. Upon receiving written authorization from O'Melveny, and only upon receiving such authorization, Stroz Friedberg will make the Proposed Disclosure Folder and the outside counsel-eyes-only or attorneys-eyes-only folder available to Morrison. If the parties agree that Unicorn or Zing executives should have access to the Proposed Disclosure Folder, Stroz Friedberg will arrange for such access.  Unicorn executives will not have access to the outside counsel or attorneys-eyes-only folder. Stroz Friedberg will not create for Unicorn executives user credentials that have access to the outside counsel or attorneys-eyes-only documents.  Morrison attorneys will not give to Unicorn executives credentials to, or otherwise give access to the documents in, the outside counsel or attorneys eyes only folder.  The only documents and communications that Stroz Friedberg's independent report will rely on or reference will be documents contained in the approved Proposed Disclosure Folder, except to the extent that privileged communications contain substantive content that is relevant, in which case Stroz Friedberg may reference such substantive content in a manner that the parties mutually agree (or an arbitrator, if the parties cannot agree, determines) reasonably addresses the parties' respective concerns. Stroz Friedberg will issue its final report reflecting the materials contained in the Final Disclosure Folder only upon written authorization from both O'Melveny and Morrison..

For purposes of this Protocol, the term "outside counsel eyes only" means O'Melveny, Morrison or any other law firm that is mutually identified by Unicorn and Zing as outside counsel to Unicorn, Zing or the Diligenced Employees who may have access to documents marked as outside counsel eyes only.

For purposes of this Protocol, the term "attorneys eyes only" means in-house counsel of Unicorn and Zing who may have access to documents marked as attorneys eyes only.

For purposes of this Protocol, the term "O'Melveny" means O'Melveny & Meyers and if applicable, any separate counsel retained by the Diligenced Employee.  All deliverables and folder access under this Protocol pertaining to "O'Melveny" shall be delivered or made available

---

telephone numbers for Stroz Friedberg to use in identifying potentially privileged documents and communications. Stroz Friedberg will use this list, its own manual review, and its proprietary privilege-identifying algorithms to identify privileged documents and e-mails that relate to the subject matter of the investigation.  Stroz Friedberg will create a folder on Stroz Review that contains such documents and e-mails – whether active, deleted, or fragments – and O'Melveny will create and deliver to Morrison a privilege list relating to those documents.

Stroz Friedberg, LLC
March 21, 2016
Page 5

concurrently to such counsel, and any required authorizations or approvals of "O'Melveny" shall be issued jointly by such counsel.

Any dispute between Unicorn, Zing or the Diligenced Employees regarding this Protocol, including whether documents should be excluded from disclosure pursuant to this Protocol on the grounds that such documents are subject to attorney-client privilege, attorney work-product privilege, or other restriction on disclosure, shall be subject to final and binding expedited arbitration in accordance with the terms of this paragraph. Any such arbitration shall be held in San Francisco, California, under the Comprehensive Arbitration Rules and Procedures of JAMS ("JAMS") and each of Parent or Unicorn, on the one hand, and Zing or the Diligenced Employees (as applicable), on the other, agree to appear at and be bound by such arbitration proceeding. With respect to any matter submitted to arbitration, such arbitration shall be settled by an arbitration conducted by one arbitrator mutually agreeable to by the parties to the arbitration. In the event that, within fifteen (15) days after submission of any dispute to arbitration, the parties to the arbitration cannot mutually agree on one arbitrator, then, JAMS shall within seven (7) days thereafter submit to the parties a list of seven proposed arbitrators and each party shall have the right to the arbitration to strike three names from the list and rank the remaining four proposed arbitrators in order of preference. Within seven (7) days after such submission, JAMS shall identify the arbitrator with the highest combined ranking in terms of preference. Unicorn shall pay all Expenses (as such term is defined in the Indemnification Agreement) relating to the arbitration. The arbitrator, as the case may be, shall set a limited time period that shall exceed no more than 60 days after the demand for arbitration is filed and establish procedures designed to reduce the cost and time for discovery while allowing the parties an opportunity, adequate in the sole judgment of the arbitrator or majority of the arbitrator, as the case may be, to discover relevant information from the opposing parties about the subject matter of the dispute. The decision of the arbitrator as to the validity of any claim submitted to arbitration shall be final, binding, and conclusive upon the parties to this Protocol pursuant to the Federal Arbitration Act ("FAA"). Such decision shall be written and shall be supported by written findings of fact and conclusions which shall set forth the award, judgment, decree or order awarded by the arbitrator(s). Judgment upon any award rendered by the arbitrator(s) may be entered in any court having jurisdiction.

EXHIBIT E

# EXHIBIT A

PROTOCOL FOR REVIEW OF DATA AND DEVICES AND FOR REPORTING RESULTS OF INVESTIGATION

As of March 4, 2016

Stroz Friedberg has been retained to conduct an independent investigation, under the direction and supervision of Morrison & Foerster LLP ("Morrison") and O'Melveny & Myers LLP ("O'Melveny") (collectively, "Clients"), as described below.  Morrison represents Unicorn, O'Melveny represents Zing, Donahue Fitzgerald LLP ("Donahue") represents Anthony Levandowski ("Levandowski"), and Levine & Baker LLP represents Lior Ron ("Ron"). Levandowski and Ron are former employees of Aspen and current employees of Zing. Levandowski, Ron, and three other Aspen employees are referred to herein as the "Diligenced Employees."

In the independent investigation, Stroz Friedberg will conduct a series of interviews, forensic preservation and analysis of data, and electronic document review, through which Stroz Friedberg will ascertain and report on certain factual matters that may be pertinent to certain legal issues being considered by the Clients in relation to their clients and a number of present or prospective employees or independent contractors of Zing (the "Diligenced Employees"). This protocol will govern the review of the data that has been collected from the email accounts, online repositories, laptops, desktops, hard drives, flash drives, thumb drives, mobile devices, CD's, and any other electronic or digital media owned or in the custody, control, or possession of the Diligenced Employees (referred to herein as the "In-Scope Digital Media"), as well as, the digital forensic analysis of the devices collected from the Diligenced Employees, and reporting results of investigation to Clients.

As part of its independent investigation, Stroz Friedberg will forensically collect the In-Scope Digital Media, load and process the active (i.e. non-deleted), user-created documents and communications identified on the In-Scope Digital Media into Stroz Friedberg's Relativity platform. In the event that there are user-created documents that cannot be processed/decrypted, the Stroz team will attempt to clear those exceptions, including through manual QC, password-cracking, and obtaining passwords from the Diligenced Employees. A proposed final list of exceptions that cannot be cleared will be initially provided to O'Melveny, Donahue and Levine. O'Melveny, Donahue, and Levine will have the right to include annotations and explanatory comments to the exceptions. Upon receiving written authorization from O'Melveny, Donahue, and Levine, Stroz will provide a final list of exceptions to O'Melveny, Donahue, Levine, and Morrison, together with any annotations or comments separately identified as provided by O'Melveny, Donahue, and Levine.

As part of its independent investigation, Stroz Friedberg will also examine forensic images of smartphones, tablets, and computers, where applicable, belonging to the Diligenced Employees. Stroz Friedberg will analyze these images for evidence of copying, transfer, ongoing possession, or deletion of sensitive information from a prior employer, and for evidence of breaches of non- solicitation, non-compete, and fiduciary obligations to former employer(s). Stroz Friedberg will analyze active files, deleted files, unallocated space, and the host controlled area for relevant information.

Clients will supervise and direct Stroz Friedberg in its construction of criteria to search the In-Scope Digital Media. Stroz Friedberg will use its understanding of the goal of the investigation, its interviews with the Diligenced Employees, and direction from O'Melveny, Donahue and Levine, to create proposed search criteria. Stroz Friedberg will develop, likely in an iterative fashion, proposed search criteria. Stroz Friedberg will distribute proposed search criteria to O'Melveny, Donahue, and Levine.  O'Melveny, Donahue, and Levine will designate any proposed search terms which should not be shared with Morrison because the terms themselves may convey confidential Aspen information.  Stroz will distribute to Morrison a list that contains only the search terms approved by O'Melveny, Donahue and Levine. Stroz will then consolidate the direction and feedback from O'Melveny, Donahue, Levine, and Morrison with respect to the search terms and – using its judgment with respect to revise or drop overly-generic or improperly or inefficiently constructed search terms -- will create a consolidated set of search terms.

7

Stroz will then use the resulting search terms as part of its review of the documents harvested from, and its forensic review of media on, the In-Scope Digital Media. Identified documents of interest may lead to additional interviews of the Diligenced Employees.

At any time during, or at the end of, its investigation, if Stroz Friedberg believes that non-privileged , relevant documents or communications – whether active, deleted, or fragments – should be shared with O'Melveny and Morrison, it will first place those documents in a folder (the "Proposed Disclosure Folder") on Stroz Review for review by O'Melveny, Donahue or Levine but shall not provide Morrison access to the Proposed Disclosure Folder. If O'Melveny, Donahue, and/or Levine claims that any of the documents subject to proposed disclosure are subject to attorney-client privilege, attorney work-product privilege, or other restriction on disclosure, O'Melveny, Donahue, and/or Levine will produce privilege logs to Morrison regarding such documents, and Stroz Friedberg will, unless and until the documents are cleared for disclosure by O'Melveny, Donahue, or Levine, remove the documents from the Proposed Disclosure Folder. In addition, if O'Melveny, Donahue, and/or Levine identifies any documents in the Proposed Disclosure Folder to be "outside counsel-eyes-only" or "attorneys-eyes-only" (as such terms are defined below), Stroz Friedberg will move those documents to an outside counsel-eyes-only or attorneys-eyes-only folder. Upon receiving written authorization from O'Melveny, Donahue, or Levine and only upon receiving such authorization, Stroz Friedberg will make the Proposed Disclosure Folder and the outside counsel-eyes-only or attorneys-eyes-only folder available to Morrison. If the Clients agree that Unicorn executives should have access to the Proposed Disclosure Folder, Stroz Friedberg will arrange for such access. Unicorn executives will not have access to the outside counsel or attorneys-eyes-only folder. Stroz Friedberg will not create for Unicorn executives user credentials that have access to the outside counsel or attorneys-eyes-only documents. Morrison attorneys will not give to Unicorn executives credentials to, or otherwise give access to the documents in, the outside counsel or attorneys-eyes-only-folder. The only documents and communications that Stroz Friedberg's independent report will rely on or reference will be documents contained in the approved Proposed Disclosure Folder, except to the extent that privileged communications contain substantive content that is relevant, in which case Stroz Friedberg may reference such substantive content in a manner that the parties mutually agree (or an arbitrator, if the parties cannot agree, determines) reasonably addresses the parties' respective concerns. Stroz Friedberg will issue its final report reflecting the materials contained in the Final Disclosure Folder only upon written authorization from both O'Melveny and Morrison.

For purposes of this Protocol, the term "outside counsel eyes only" means O'Melveny, Morrison, Donahue, Levine, or any other law firm that is mutually identified by Clients as outside counsel to Unicorn, Zing or the Diligenced Employees who may have access to documents marked as outside counsel eyes only.

For purposes of this Protocol, the term "attorneys' eyes only" means in-house counsel of Unicorn and Zing who may have access to documents marked as attorneys eyes only.

If Clients unanimously agree in writing that Stroz Friedberg can share with Morrison specifically-identified documents, fragments, metadata, conclusions, interview statements, or other information without adhering to the above procedures, Stroz Friedberg will be authorized to share such information.

Any dispute between Unicorn, Zing or the Diligenced Employees regarding this Protocol, including whether documents should be excluded from disclosure pursuant to this Protocol on the grounds that such documents are subject to attorney-client privilege, attorney work-product privilege, or other restriction on disclosure, shall be subject to final and binding expedited arbitration in accordance with the terms of this paragraph. Any such arbitration shall be held in San Francisco, California, under the Comprehensive Arbitration Rules and Procedures of JAMS ("JAMS") and each of Parent or Unicorn, on the one hand, and Zing or the Diligenced Employees (as applicable), on the other, agree to appear at and be bound by such arbitration proceeding. With respect to any matter submitted to arbitration, such arbitration shall be settled by an arbitration conducted by one arbitrator mutually agreeable to by the parties to the arbitration. In the event that, within fifteen (15) days after submission of any dispute to arbitration, the parties to the arbitration cannot mutually agree on one arbitrator, then, JAMS shall within seven (7) days thereafter submit to the parties a list of seven proposed arbitrators and each party shall

have the right to the arbitration to strike three names from the list and rank the remaining four proposed arbitrators in order of preference. Within seven (7) days after such submission, JAMS shall identify the arbitrator with the highest combined ranking in terms of preference. Unicorn shall pay all Expenses (as such term is defined in the Indemnification Agreement) relating to the arbitration. The arbitrator, as the case may be, shall set a limited time period that shall exceed no more than 60 days after the demand for arbitration is filed and establish procedures designed to reduce the cost and time for discovery while allowing the parties an opportunity, adequate in the sole judgment of the arbitrator or majority of the arbitrator, as the case may be, to discover relevant information from the opposing parties about the subject matter of the dispute. The decision of the arbitrator as to the validity of any claim submitted to arbitration shall be final, binding, and conclusive upon the parties to this Protocol pursuant to the Federal Arbitration Act ("FAA"). Such decision shall be written and shall be supported by written findings of fact and conclusions which shall set forth the award, judgment, decree or order awarded by the arbitrator(s). Judgment upon any award rendered by the arbitrator(s) may be entered in any court having jurisdiction.

# EXHIBIT F

STROZ FRIEDBERG

**PRIVILEGED AND CONFIDENTIAL**

ENGAGEMENT LETTER

VIA EMAIL

As of March 4, 2016

Eric Akira Tate
Partner
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105

Paul Sieben
Partner
O'Melveny & Myers LLP
2765 Sand Hill Road
Menlo Park, CA  94025

Dear Counsel:

Thank you to Morrison & Foerster LLP ("Morrison") and its client Uber Technologies, Inc. ("Uber"), to O'Melveny & Myers LLP ("O'Melveny") and its client Ottomotto LLC ("Ottomotto") for jointly engaging Stroz Friedberg, LLC ("Stroz Friedberg").  This letter (the "Agreement") will serve to document the terms and conditions of our engagement.

<u>Services</u>

Morrison and  O'Melveny (each a "Client", and together "Clients") on behalf of their clients Uber and Ottomotto, respectively, have requested that Stroz Friedberg, LLC ("Stroz Friedberg"), among other things, provide forensic preservation and analysis, interviews, and document review in connection with an independent factual investigation  The purpose of the investigation is to ascertain facts that, in the opinion of Clients, bear on the issues of whether certain current or prospective employees (which for purposes of this Agreement includes non-employee service providers) of Ottomotto have improperly retained on devices or in storage repositories not belonging to former employers, confidential information belonging to former employers, and whether such current or prospective employeesr breached any fiduciary duty, duty of loyalty, or other confidentiality, non-solicitation, non-competition or other obligations based in contract, statute or otherwise, as such obligations are defined to Stroz Friedberg by Clients, to former employers of such current or prospective employees of Ottomoto. In conducting forensic searches, document review, and interviews, Stroz Friedberg will use criteria provided to us by Clients to aid Clients in their review of documents for potential relevance or potential privilege, it being understood that the ultimate decision to assert a privilege and/or the relevance of any particular document will be made by Clients pursuant to the protocol attached hereto as Exhibit A. Stroz Friedberg will report the results of its factual investigation to Clients pursuant to the protocol attached hereto as Exhibit A. These services constitute the "Engagement". Uber agrees to pay all fees, charges and disbursements incurred in connection with the Services, in accordance with the terms set forth in this Agreement. Stroz Friedberg is not authorized to practice law or provide legal services and that the services offered by Stroz Friedberg as part of the Engagement are limited to non–legal services.

<u>Fees</u>

a) <u>General Rates</u>. Stroz Friedberg charges for the time devoted to the Engagement on an hourly fee basis, at the rates in effect when the work is performed.  The current hourly rates are set forth as follows:  Chairmen and Executive Managing Directors: $1,000 - $1,150; Managing Directors and Vice Presidents: $680 - $850; Directors and Assistant Directors: $600 - $715; Consulting and Forensics

Professionals: $250 - $600; Data Discovery Professionals: $275 - $375; and Administrative Professionals: $110 - $275.  These rates apply generally, as well as to travel.  The use of subcontractors, if needed, will be charged at Stroz Friedberg's rates.

b) <u>Machine Time and Specialized Solutions</u>. The rate for machine time devoted to running a forensic process is $95 per hour.  The rate for use of our proprietary host interrogation tool is $100 per host (capped at $150,000 per incident); our network traffic capture tool $1,500 per week; our proprietary incident response tool $5,000 per week per platform; the OmniPeek Network Analyzer $5,000 per week per platform; and our high speed, on-site malware analysis and forensic hosting tool, $2,500 per week per platform.  Use of our mobile electronic disclosure/discovery processing, hosting and production unit will be charged at an amount to be structured depending upon the circumstances of the deployment.

c) <u>Electronic Discovery Services</u>.  Any electronic discovery consulting services will be billed at the hourly rates set forth above.  All other electronic discovery charges are detailed in Exhibit B.

d) <u>Intelligence and Investigations Division</u>.  Forensic accounting, due diligence, or investigation services requested by Clients will be performed by our Intelligence and Investigations division at the rates in effect when the work is performed.

e) <u>Testimony</u>.  Written testimony or reports will be provided at normal hourly rates.  Internal peer review is part of an Engagement, and normal hourly rates will apply to any supervision of oral testimony and any internal peer review of proposed reports, affidavits, declarations or oral testimony.

f) <u>Retainer</u>.  Stroz Friedberg requests an initial retainer of $75,000 to begin work in this Engagement.  In cases where Stroz Friedberg's fees and charges approach the limit of the initial or a later retainer amount, Stroz Friedberg will request funds to replenish the retainer.  At the end of the Engagement, Stroz Friedberg agrees to refund to Uber any amount of the retainer or replenishment, not properly applied to fees and costs incurred as of the date of termination.

g) <u>Miscellaneous Charges</u>.  Stroz Friedberg may charge for other miscellaneous expenses, fees, and costs including, but not limited to, use of forensically-prepared thumb drives or hard drives (at $50 - $420 depending on size); other computer hardware and digital media; transportation, meals, and lodging; copies or printed documents; overnight delivery charges; storage fees for original media provided to Stroz Friedberg, after 30 days at rates up to $50 per month per item; credit check fees, and database searches.  Stroz Friedberg reserves the right to pass on any reasonable legal fees and expenses that are incurred as the result of the Engagement but will notify Uber before such fees and expenses are incurred.

h) <u>Invoices</u>.  The charges will be billed 100% to Uber. Stroz Friedberg will send invoices directly to Uber with a copy to Morrison.  Invoices are due within 30 days of the invoice date.  Morrison and Uber shall notify Stroz Friedberg in writing of any disputed charges within these 30 days; otherwise Stroz Friedberg's invoices shall be deemed payable in full.  Any charges that remain undisputed and unpaid 30 days after the invoice date will accrue interest at 1.5 percent per month.  Stroz Friedberg reserves the right to terminate its services at any time if Uber fails to pay Stroz Friedberg's invoices on time or fails to pay the requested refresher of a retainer.  Any provided estimates of fees and expenses are only estimates and are not binding.

<u>Confidentiality</u>

The purpose of the Engagement is to enable Uber, Ottomotto, Anthony Levandowski and Lior Ron (who are parties to a Joint Defense and Common Interest Agreement), along  with their respective counsel, to understand certain factual matters potentially relevant to potential litigation and related matters; therefore, Stroz Friedberg's communications with Clients, Uber, Ottomotto, (and Messrs. Levandowski and Ron (including their respective counsel), Stroz Friedberg's work product, and all information and data received from Clients, Uber, and Ottomotto(including its employees and/or their respective counsel) are covered by common interest, attorney-client privilege and/or attorney work product doctrine.  Accordingly, Stroz Friedberg will maintain as confidential all information and data it receives from Clients, Uber, Ottomotto (including its employees), and Messrs. Levandowski and Ron (including their respective counsel) (the

2

"Confidential Information"), and not disclose any Confidential Information to any parties other than Clients, Uber, Ottomotto, or Messrs. Levandowski and Ron (including their respective counsel).  Any such disclosures of Confidential Information disclosures of data from Ottomotto or Messrs. Levandowski and Ron (including through their respective counsel) to Uber shall be governed by the protocol attached hereto as Exhibit A.

Stroz Friedberg agrees all communications (including emails) by it relating to the Engagement will be sent to all Clients together. In addition, all phone calls relating to the Engagement must include all Clients, unless otherwise agreed to in writing by all Clients. However, communications concerning general administrative or billing matters may be dealt with individually. In performing the Engagement, Stroz Friedberg agrees that only information relating to the Services and purpose of the Engagement may be disclosed to Morrison and Uber, underlined provided, however, that in the event such information includes or may include confidential or proprietary information of a former employer of an Ottomotto employee, or there is any potential question or uncertainty whether information relates to the Services and purpose of the Engagement, such information will be disclosed to Clients only on an outside counsel attorney's eyes only (AEO) basis.  Notwithstanding the foregoing, under no circumstances will Stroz Friedberg disclose to Uber or Morrison or any of their representatives  any attorney-client privileged communications between Ottomotto and/or any of its employees, stockholders, officers, members, managers or directors, on the one hand, and counsel for Ottomotto or counsel to any of such persons, on the other hand, that are disclosed to or discovered by Stroz Friedberg in its performance of the services.  For the avoidance of doubt, communications between Ottomotto and/or any of its employees, stockholders, officers, members, managers or directors, on the one hand, and any of the following attorneys and law firms, on the other hand, is attorney-client privileged communication and will not be disclosed by Stroz Friedberg to Uber or Morrison or any of their representatives: O'Melveny & Myers LLP, Fenwick & West LLP (including text messages with Ted Wang at 650-464-0059), Orrick, Herrington & Sutcliffe LLP, Donahue Fitzgerald LLP (including emails with John Gardner at jgard8167@gmail.com), Ognen Stojanovski at ognen@alumni.stanford.edu, Doug Mandell at dmandell@mlawgroup.com, Maureen Dorney at maureen@paradigmcounsel.com, GCA Law Partners LLP, or Levine & Baker LLP or any other attorney or law firm with whom such persons had attorney-client privileged communications.

Confidential Information does not include (1) information that has been or is, prior to the Engagement, in the public record, or is placed in the public record by Clients, Uber, or Ottomotto after the Engagement begins, through no unlawful act of anyone; (2) indications of compromise (i.e., data, configurations, specifications, and other conditions that are identified as malware, vulnerabilities, anomalies, compromises, or potentially harmful conditions) identified by Stroz Friedberg; or (3) facts necessary to set forth in proceedings for non-payment of invoices.  If Stroz Friedberg encounters what it deems to be any child pornography on any computer media delivered to it in the course of the Engagement, Stroz Friedberg reserves the right to disclose such contraband to the appropriate authorities.

<u>Authority to Access Data and Indemnification</u>

Uber and Ottomotto each authorize Stroz Friedberg to access the data related to this Engagement and represents that such access does not violate any applicable law or treaty.  Uber and Ottomotto agree to hold harmless and indemnify Stroz Friedberg, including its officers, employees, and agents against all third-party claims, damages and costs including attorneys' fees and disbursements arising from the Engagement, except for actions by Stroz Friedberg, its officers, employees, and/or agents that are adjudicated to constitute willful misconduct or gross negligence.

<u>Limitation of Liability and Damages</u>

Because digital equipment/data/media are fragile and may be damaged, infected, or corrupted prior to the time Stroz Friedberg receives them, other than due to its and their willful misconduct, Stroz Friedberg for itself and its officers, employees, or agents will not assume responsibility for damage that may occur to Uber's or Ottomotto's equipment/data/media prior to or during Stroz Friedberg's efforts to complete the Engagement.  As such, other than due to its willful misconduct of Stroz Friedberg will not be liable for direct or indirect damages arising from harm that may occur to Uber's, Ottomotto's, or Levandowski's equipment/data/media.  Any data, especially data restored from unknown sources, may contain viruses or

other malware; therefore, Clients, Uber and Ottomotto assume responsibility to protect themselves with respect to the receipt of data from Stroz Friedberg or any other party and shall advise its agents and third-party recipients to take similar precautions.  Other than due to its and their willful misconduct, in no event shall Stroz Friedberg, its officers, employees, or agents be liable for damages, under any theory, beyond the amount paid to Stroz Friedberg under this Engagement.

Return of Client Materials

Prior to the end of the Engagement, Stroz Friedberg and Clients will confirm the disposition of any original materials provided by Client or Uber or Ottomotto, to Stroz Friedberg.  In the event that, after using its reasonable efforts to do so, Stroz Friedberg is not able to return to Clients, Uber, or Ottomotto original materials provided by Clients, Uber, or Ottomotto to Stroz Friedberg, Stroz Friedberg reserves the right to destroy such original materials pursuant to its then-current destruction policy (subject to the preceding sentence).

Conflicts

This Engagement pertains to a discrete matter and would not preclude Stroz Friedberg from rendering services to other clients adverse to Clients or Uber or Ottomotto on matters that are not specifically related to this Engagement.

Miscellaneous

Clients, Uber, Ottomotto and Stroz Friedberg agree that the Engagement shall be governed by and construed and enforced in accordance with the internal laws of the State of California (as opposed to the conflict of law provisions) as an agreement made and to be performed entirely within such State.  Clients, Uber, Ottomotto, and Stroz Friedberg agree that this Agreement (1) may not be modified or amended, except by a writing signed by each party; (2) shall be binding upon each party, its successors and permitted assigns; and (3) contains the entire agreement and understanding among Clients, Uber, Ottomotto, and Stroz Friedberg with respect to the subject matter hereof and supersedes all prior agreements and understandings, written or oral, among Clients, Uber, Ottomotto, and Stroz Friedberg with respect to the subject matter hereof.  No provision of this Agreement may be waived except in writing by the party against whom such waiver is sought to be enforced.  No express or implied waiver, breach or default by any party of any provision of this Agreement shall constitute a continuing waiver of such provision or of any other provision of this Agreement.  Clients, Uber, Ottomotto, and Stroz Friedberg hereby consent to the jurisdiction of the Superior Court of the State of California for the County of Santa Clara and the United States District Court for the Northern District of California for all purposes in connection with the Engagement, and further consent that any process or notice of motion may be served as a notice, if in writing and given by (1) prepaid certified or regular first class mail, (2) personal delivery, or (3) nationally recognized overnight delivery service at the addresses set forth at the beginning of this letter, and shall be deemed given when sent, within or without the State of California, provided a reasonable time for appearance is allowed. This letter, along with the protocol attached hereto,amends, restates, and supersedes all previous communications between the undersigned regarding the Engagement.

4

If you find this letter satisfactory, kindly return an executed copy together with Uber's check or wire transfer in the amount of $75,000.  Stroz Friedberg looks forward to working with you. Very truly yours,

STROZ FRIEDBERG, LLC

By: _____
Eric Friedberg
Executive Chairman

AGREED TO AND ACCEPTED:
**Morrison & Foerster LLP**

By: _____
Eric Akira Tate
Partner

ACKNOWLEDGED AND AGREED TO:
**Uber Technologies, Inc.**

By: _____
  Name:
  Title:

AGREED TO AND ACCEPTED:
**O'Melveny & Meyers**

By: _____
Paul Sieben
Partner

ACKNOWLEDGED AND AGREED TO:
**Ottomotto LLC**

By: _____
  Name: LIOR RON
  Title: PRESIDENT

If you find this letter satisfactory, kindly return an executed copy together with Uber's check or wire transfer in the amount of $75,000.  Stroz Friedberg looks forward to working with you. Very truly yours,

STROZ FRIEDBERG, LLC

By: _____
     Eric Friedberg
     Executive Chairman

AGREED TO AND ACCEPTED:           AGREED TO AND ACCEPTED:
**Morrison & Foerster LLP**           **O'Melveny & Meyers**

By: _____       By: _____
     Eric Akira Tate                       Paul Sieben
     Partner                             Partner

ACKNOWLEDGED AND AGREED TO:     ACKNOWLEDGED AND AGREED TO:
**Uber Technologies, Inc.**             **Ottomotto LLC**

By:_____       By:_____
     Name:                             Name:
     Title:                              Title:

If you find this letter satisfactory, kindly return an executed copy together with Uber's check or wire transfer in the amount of $75,000.  Stroz Friedberg looks forward to working with you. Very truly yours,

STROZ FRIEDBERG, LLC

By: _____
Eric Friedberg
Executive Chairman

AGREED TO AND ACCEPTED:                    AGREED TO AND ACCEPTED:
**Morrison & Foerster LLP**                 **O'Melveny & Meyers**


By: _____           By: _____
Eric Akira Tate                             Paul Sieben
Partner                                     Partner


ACKNOWLEDGED AND AGREED TO:                ACKNOWLEDGED AND AGREED TO:
**Uber Technologies, Inc.**                 **Ottomotto LLC**

By: _____           By: _____
Name: Angela Padilla                        Name:
Title: Associate General Counsel,           Title:
        Employment and Litigation

6

**EXHIBIT B**

| | |
|---|---|
| **EARLY CASE ASSESSMENT – FIRST GLANCE** | |
| • First Glance Processing (*concept clustering, searching, visual data analysis, ability to cull data/promote docs for full processing to review platform*) | $ 125/GB |
| **PROCESSING** | |
| • Data culling (*de-NIST, dedupe, date and/or keyword filtering,*) | $ 75/GB |
| • Processing (*de-NIST,  dedupe, extract  text/metadata & embedded objects, promote to review)* | $ 295/GB |
| • Foreign Language Translation to English (*machine translation*) | $ 295/GB or $ .03/page |
| **PRE-PROCESSED DATA** | |
| • Ingestion of Pre-Processed Data (*Paper/ 3rd Party Productions/ Migrated Data*) | $ 75/GB |
| • OCR or other text extraction | $ 100/GB |
| **REVIEW ANALYTICS** | |
| • Relativity Analytics Bundle (*Near Duplication & Email Threading, Conceptual Search, Clustering, Categorization (Predictive Coding), Keyword Expansion*) | $175/GB |
| • Stroz Analytics Bundle (*Near Duplication & Email Threading, Conceptual Search, Clustering, Categorization (Predictive Coding), Keyword Expansion*)  *Note: Near dupe and threading can be unbundled upon request at  $ 75/GB  Note: Privilege Analytics can be unbundled upon request at  $ 50/GB* | $ 150/GB |
| **HOSTING** | |
| • Standard Hosting | $ 35/GB/month |
| • Near-line "In"/Active "Out" Hosting | $ 10/$ 35/GB/month |
| • User Licenses | $ 100/user/month |
| **PRODUCTION** | |
| • Tiff Generation | $ .03/page |
| • Tiff Bundle (Production including Bates Stamping, Branding & Watermarking) | $ .05/page |
| • Load File Delivery | $ 75/load file |
| • Output to Hard Drive | $ 175 to $ 400 per drive |
| • Output to CD/DVD | $ 35/$ 55 per media |
| **DATA STORAGE** | |
| • Data Deletion | No Charge |
| • Full Archiving | $ 35/GB |
| • Near Line Storage | $ 10/GB/month |
| **CONSULTING & ENGINEERING SERVICES** | |
| • Expert Consulting & Forensic Analysis | Per Engagement Letter |
| • Project Management & Exception Handling | Per Engagement Letter |
| • Customized Engineering Services | Per Engagement Letter |