**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94101 | TEL (415) 875-6600

July 7, 2017

Magistrate Judge Jacqueline Scott Corley

Re:     *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal., Case 3:17-cv-00939-WHA
        **Uber's Improper Requests to Depose Apex Witnesses**

Dear Judge Corley:

Plaintiff Waymo LLC ("Waymo") files this brief reply to address new arguments and evidence raised for the first time in Uber's Opposition to Waymo's request for a protective order as to depositions of apex witnesses.

Sincerely,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven
01980-00104/9407798.1

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

**Uber still provides no legitimate basis for Mr. Page's deposition**.   Uber previously represented that it seeks Mr. Page's deposition for two of the same bases previously rejected by the Court – conversations Mr. Page had with Mr. Levandowski and side businesses of Google and Waymo employees.  (Dkt. 783, 2.)  Uber has failed to show that those bases have any more merit now than they did then.  After Waymo showed in its letter brief that Uber's request for Mr. Page's deposition should again be rejected, Uber now improperly raises new arguments and evidence.   Even if considered, this new argument and evidence fails to make the required showings under the apex doctrine to justify Mr. Page's deposition.

Uber argues that Mr. Page spoke with Mr. Levandowski regarding Mr. Levandowski's desire to develop self-driving products…." (Dkt. 811, 1.)  Uber cites piecemeal evidence in support, including a couple of emails between Mr. Page and Mr. Levandowski, hearsay testimony from Uber witnesses not present at those conversations, and testimony of Waymo engineer Pierre Droz.  (Dkt. 811, 1-2.)  Uber fails to show, as required, that Mr. Page has **unique** knowledge of **any** those conversations.  For example, Uber can ask Mr. Droz what he knows at his August 3 deposition.  And significantly, Uber does not rebut Waymo's argument that Mr. Levandowski was present at these conversations, and that Uber cannot use Levandowski's Fifth Amendment assertion to justify an apex deposition.  (Dkt. 783, 2)  It makes no difference that Uber has now fired Levandowski.  That he is now terminated does not avoid the fact they could have gotten this information from him before.  And it would also be odd policy to allow a company to fire its own knowledgeable employees to create a need for an apex deposition.

With no evidence of unique knowledge, citing *Kennedy v. Jackson Nat. Life Ins. Co*., 2010 WL 1644944, (N.D. Cal. 2010), Uber argues it instead need only show that "testimony of lower level employees indicates that the apex deponent may have some relevant personal knowledge," and that "the apex witness doctrine applies only in situations where a lower level employee of the same company has the information sought from an apex witness."  (Dkt. 811, 2, 3.)  *Kennedy,* however, does not support Uber's argument.  Rather, in *Kennedy*, unlike here, a 30(b)(6) witness named the CEO "several times" as "being the main decision-maker" regarding important issues in the case, so the court found that the CEO might have relevant personal knowledge.  *Kennedy*, 2010 WL 1644944 at *2.  And while *Kennedy* does say that "courts are sometimes willing to protect high-level corporate officers from depositions when the officer has no first hand knowledge of the facts of the case or where the officer's testimony would be repetitive," and that "Courts will usually not permit an apex deposition to go forward where lower level employees with more intimate knowledge of the case have not yet been deposed" (*id.*), it does not say or even suggest, as Uber contends (Dkt. 811, 3), that apex only applies where a lower level employee of the "same company" has the information sought.

Further, Uber still fails to justify Mr. Page's deposition on the subject of side businesses.  Here too, Uber does not show any **unique** knowledge that Mr. Page has on this subject that Uber could not get from less burdensome means.  Indeed, the Court ordered yesterday that "Waymo shall produce responsive documents from the past five years limited to employees in Google/Waymo's self-driving car business."[1]  (Dkt. 808, 2.)

---

[1] Uber argues "Mr. Page himself engages in a competing business," presumably in reference to Kitty Hawk, which does not deal with self-driving cars.  http://www.businessinsider.com/larry-page-kitty-hawk-flying-car-photos-what-we-know-so-far-2017-4

Uber also now contends that Mr. Page's deposition is needed due to the (also) previously rejected reason of conversations with Uber's then-CEO Travis Kalanick.  (Dkt. 811, 2.)  Uber argues that these conversations took place after Waymo discovered Mr. Levandowski's alleged theft of 14,000 files" and that "Mr. Page did not mention these files to Mr. Kalanick and did not suggest that Mr. Levandowski had done anything wrong." (*Id.*)  Yet Uber presents no details or evidence of such communications, even though Mr. Kalanick is still an Uber director and Uber's largest shareholder.  Uber stated in bold that "**If Waymo might produce Mr. Page to testify about such conversations (or to claim that they did not happen), Uber needs to know what Mr. Page will say**" (Dkt. 811, 2), but Waymo does not currently plan to call Mr. Page.  That Mr. Page "might" later testify to counter as-yet unrevealed statements concerning alleged conversations with Mr. Kalanick cannot justify an apex deposition now.

Uber makes yet another argument not raised in the parties' meet and confers, citing a lunch meeting between Page and Kalanick to show that Mr. Page has "inherently unique" knowledge of "Google's discussions of a partnership with Uber." (*Id.*)  But here too, these facts would obviously be known to Mr. Kalanick, to the extent they are even relevant.

Finally, Uber provides no legitimate basis why Mr. Page's deposition, if compelled at all, should be set later than July 17 in the afternoon, on the date the Court ordered and when he is available.  Again, the Court stated that "[a]ny unilateral motion to change a date on the schedule [] must (1) show compelling reasons – not merely good cause – for the requested change and (2) offer an alternative date reasonably close to the assigned date." (Dkt. 725, 2.)  Uber has not moved to change the date for Mr. Page's deposition, much less provide a "compelling reason" to move it.

**Uber also still fails to justify Mr. Drummond's deposition**.  Uber does not even try to justify its refusal to engage Waymo substantively in the parties' meet and confers as to how Mr. Drummond has unique and personal knowledge that it could not obtain from other sources.  (Dkt. 811, 1-3.)  And while Uber argues Mr. Drummond's position on the Uber's Board of Directors warrants his deposition (*id.*, 2-3), the Court has already found "that Uber has not shown how documents related to David Drummond's resignation from Uber's Board are relevant." (Dkt. 808, 3.)  Indeed, it was widely reported in the press that it was <u>Uber</u> that barred Mr. Drummond from attending board meetings before he resigned.[2]  Uber also now points to some emails regarding Mr. Kalanick's interest in a potential "partnership" between Uber and Google in the self-driving car space.  (Dkt. 811, 2.)  Again, even if somehow relevant, Mr. Kalanick himself (and likely others at Uber and beyond) would have knowledge of such conversations.  Indeed, Uber does not even attempt to demonstrate others would not have similar knowledge, much that only Mr. Drummond (or Mr. Page) would have relevant knowledge.

**Time limits are appropriate.**  Uber does not dispute that it previously stated that it anticipated needing not more than 2-3 hours for any of the apex witnesses that were the subject of Waymo's letter brief.  (Dkt. 783, 1.)  Uber now vaguely states that it intends only to take "what time is reasonably necessary," but offers no argument that the previously-stated 2-3 hours is insufficient.

---

[2]  *See, e.g.,* "Uber Shuts Out Alphabet Execs From Board Meetings," https://www.theinformation.com/uber-shuts-out-alphabet-execs-from-board-meetings.