MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
RUDY Y. KIM (CA SBN 199426)
RudyKim@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:     415.268.7000
Facsimile:      415.268.7522

KAREN L. DUNN (Admitted *Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (Admitted *Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone:     202.237.2727
Facsimile:      202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendant. | Case No.        3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES INC. AND OTTOMOTTO LLC'S STATEMENT IN RESPONSE TO PARAGRAPH 3 OF ORDER RE EARLY MOTIONS *IN LIMINE* AND RELATED MATTERS (DKT. 784)**<br><br>Judge:   The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

1       Defendants Uber Technologies Inc. and Ottomotto LLC ("Uber") file this statement in

2  response to paragraph 3 of the Court's June 30, 2017, Order re Early Motions *in Limine* and

3  Related Matters, Dkt. 784, which directed each party seeking any adverse inference based on

4  Anthony Levandowski's assertion of his Fifth Amendment privilege to submit a statement with

5  the questions it intends to ask Mr. Levandowski at trial and the circumstance or evidence in the

6  record that would corroborate the adverse inference sought.  At this point, Uber intends to depose

7  Mr. Levandowski but does not plan to call him as a witness at trial.  Uber also opposes placing

8  Mr. Levandowski's Fifth Amendment invocations before the jury (Dkt. 821).  However, if the

9  Court allows Mr. Levandowski's testimony at trial, this statement sets forth the questions Uber

10  would ask and the inferences Uber would seek.

11      **Question 1:  Before you left Google, you were concerned that Google wouldn't pay**

12  **you your full $120 million Project Chauffeur bonus, correct?**

13      If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

14  will seek an inference that Mr. Levandowski was concerned that Google would not pay his full

15  Project Chauffeur bonus, which is relevant to his motivation for taking confidential information

16  from Google.  Uber anticipates that this inference will be corroborated by emails between Mr.

17  Levandowski and others, documentary evidence from Waymo, and testimony from individuals

18  who spoke with Mr. Levandowski.  Specifically, the inference will be corroborated by the

19  following direct and circumstantial evidence, as well as other evidence that will be developed in

20  discovery and at trial:

21     •  Documents and testimony showing the structure of the bonus plan and the timing of Mr.

22        Levandowski's bonus relative to the alleged downloads.  A bonus of over $50 million was

23        payable to Mr. Levandowski as of October 2015, but was not paid until the end of

24        December 2015, as evidenced by, e.g., WAYMO-UBER-0014078 (Project Chauffeur

25        Bonus Program) and WAYMO-UBER-00014099 (Levandowski bonus payment notice).

26        Additional documentary evidence in Waymo's control, and that Waymo has wrongfully

27        withheld in discovery, will likely augment this testimony.  As explained in the Project

28        Chauffeur Bonus Program, the amount of the bonus payable to Mr. Levandowski was

based in part ███████████████████████████

- Testimony from other former Project Chauffeur employees about the alternative compensation foregone by participants in the Project Chauffeur bonus program. In addition, testimony from witnesses familiar with Google's actions between October 2015 and December 2015, including the fact that Google was not paying the bonuses owed as of October 2015 and waited to pay them until December 2015. Such testimony will be developed in the upcoming depositions of numerous party and non-party witnesses who formerly worked on Project Chauffeur. Documentary evidence in Waymo's control, and that Waymo has wrongfully withheld in discovery, will likely augment this testimony.

- Testimony from witnesses, including current and former Project Chauffeur employees, who knew that Mr. Levandowski was worried about receiving his bonus as of late 2015. Documentary evidence in Waymo's control, and that Waymo has wrongfully withheld in discovery, will likely augment this testimony.

- Google's statement in its arbitration demand against Mr. Levandowski that Mr. Levandowski's bonus was based on his "*supposed* contributions," which suggests Google thought Mr. Levandowski had not earned his promised bonus. *E.g.*, Dkt. 138-2 at 9 ¶ 3 (emphasis added).

- Testimony from witnesses to whom Mr. Levandowski explained—after this litigation was filed but before Mr. Levandowski began asserting his Fifth Amendment privilege—the reason for his alleged downloading of 14,000 files, including testimony from Travis Kalanick.  Such testimony is admissible hearsay under at least Federal Rule of Evidence 804(b)(3) (statement against interest). Documentary evidence in Waymo's control, and that Waymo has wrongfully withheld in discovery, may also augment this testimony.

- Other documentary evidence in Waymo's control that Waymo has wrongfully withheld in discovery.

UBER AND OTTOMOTTO STATEMENT IN RESPONSE TO PARAGRAPH 3 OF ORDER RE EARLY MOTIONS
IN LIMINE & RELATED MATTERS (DKT. 784)
Case No. 3:17-cv-00939-WHA

2

1        **Question 2:  In December 2015, you were concerned that Google wouldn't pay your**

2  **full Project Chauffeur bonus, correct?**

3        If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

4  will seek an inference that when Mr. Levandowski was considering leaving Google in December

5  2015, he was concerned that Google would not pay his full Project Chauffeur bonus, which is

6  relevant to his motivation for taking confidential information from Google.  Uber anticipates that

7  this inference will be corroborated by emails between Mr. Levandowski and others, documentary

8  evidence from Waymo, testimony from individuals who spoke with Mr. Levandowski, and the

9  other direct and circumstantial evidence outlined under Question 1.

10        **Question 3:  In January 2016, you were concerned that Google wouldn't pay your**

11  **full Project Chauffeur bonus, correct?**

12        If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

13  will seek an inference that when Mr. Levandowski was considering leaving Google in January

14  2016, he was concerned that Google would not pay his full Project Chauffeur bonus, which is

15  relevant to his motivation for taking confidential information from Google.  Uber anticipates that

16  this inference will be corroborated by emails between Mr. Levandowski and others, as well as

17  testimony from individuals who spoke with Mr. Levandowski and the other direct and

18  circumstantial evidence outlined under Question 1.

19        **Question 4:  In December 2015, you were concerned that Google wouldn't pay your**

20  **full Project Chauffeur bonus based on a view at Google that your team hadn't been**

21  **successful in developing LiDAR technology, correct?**

22        If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

23  will seek an inference that when Mr. Levandowski prepared to leave Google in December 2015,

24  he was concerned that Google would not pay his full Project Chauffeur bonus based on a view at

25  Google that the Project Chauffeur team had not been successful in developing LiDAR

26  technology, which is relevant to his motivation for taking confidential information from Google.

27  Uber anticipates that this inference will be corroborated by emails between Mr. Levandowski and

28

UBER AND OTTOMOTTO STATEMENT IN RESPONSE TO PARAGRAPH 3 OF ORDER RE EARLY MOTIONS
IN LIMINE & RELATED MATTERS (DKT. 784)
Case No. 3:17-cv-00939-WHA

3

1    others, documentary evidence from Waymo, testimony from individuals who spoke with Mr.

2    Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

3        **Question 5:  In January 2016, you were concerned that Google wouldn't pay your**

4    **full Project Chauffeur bonus based on a view at Google that your team hadn't been**

5    **successful in developing LiDAR technology, correct?**

6        If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

7    will seek an inference that when Mr. Levandowski prepared to leave Google in January 2016, he

8    was concerned that Google would not pay his full Project Chauffeur bonus based on a view at

9    Google that the Project Chauffeur team had not been successful in developing LiDAR

10   technology, which is relevant to his motivation for taking confidential information from Google.

11   Uber anticipates that this inference will be corroborated by emails between Mr. Levandowski and

12   others, documentary evidence from Waymo, testimony from individuals who spoke with Mr.

13   Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

14       **Question 6:  In December 2015, you were concerned that Google wouldn't pay your**

15   **full Project Chauffeur bonus based on Google's determination of the value of Project**

16   **Chauffeur,** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮**, correct?**

17       If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

18   will seek an inference that when Mr. Levandowski prepared to leave Google in December 2015,

19   he was concerned that Google would not pay his full Project Chauffeur bonus based on Google's

20   determination of the value of Project Chauffeur, ▮▮▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮  This is relevant to his motivation for taking confidential information from Google.  Uber

22   anticipates that this inference will be corroborated by emails between Mr. Levandowski and

23   others, documentary evidence from Waymo, testimony from individuals who spoke with Mr.

24   Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

25       **Question 7:  In January 2016, you were concerned that Google wouldn't pay your**

26   **full Project Chauffeur bonus based on Google's determination of the value of Project**

27   **Chauffeur,** ▮▮▮▮▮▮▮▮▮▮▮▮▮ **correct?**

28

1    If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

2    will seek an inference that when Mr. Levandowski prepared to leave Google in January 2016, he

3    was concerned that Google would not pay his full Project Chauffeur bonus based on Google's

4    determination of the value of Project Chauffeur, ████████████████████████

5    ████  This is relevant to his motivation for taking confidential information from Google.  Uber

6    anticipates that this inference will be corroborated by emails between Mr. Levandowski and

7    others, documentary evidence from Waymo, testimony from individuals who spoke with Mr.

8    Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

9    **Question 8:  When you were considering leaving Google in December 2015 and**

10   **January 2016, you were concerned that Google wouldn't pay you your full $120 million**

11   **Project Chauffeur bonus, correct?**

12   If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

13   will seek an inference that when Mr. Levandowski was considering leaving Google, he was

14   concerned Google would not pay him his full Project Chauffeur bonus, which is relevant to his

15   motivation for taking confidential information from Google.  Uber anticipates that this inference

16   will be corroborated by emails between Mr. Levandowski and others, documentary evidence from

17   Waymo, testimony from individuals who spoke with Mr. Levandowski, and the other direct and

18   circumstantial evidence outlined under Question 1.

19   **Question 9:  You were concerned that Google would claim that it was not required to**

20   **pay your full $120 million Project Chauffeur bonus on the grounds that your team hadn't**

21   **been successful in developing LiDAR technology, correct?**

22   If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

23   will seek an inference that when Mr. Levandowski was leaving Google, he was concerned Google

24   would claim it was not required to pay him his full Project Chauffeur bonus on the grounds that

25   the Project Chauffeur team had not been successful in developing LiDAR technology, which is

26   relevant to his motivation for taking confidential information from Google.  Uber anticipates that

27   this inference will be corroborated by emails between Mr. Levandowski and others, documentary

28

1    evidence from Waymo, testimony from individuals who spoke with Mr. Levandowski, and the

2    other direct and circumstantial evidence outlined under Question 1.

3         **Question 10:  You were concerned that Google would claim that it was not required**

4    **to pay your full $120 million Project Chauffeur bonus based on Google's determination of**

5    **the value of Project Chauffeur,** ███████████████████████  **correct?**

6         If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

7    will seek an inference that when Mr. Levandowski was leaving Google, he was concerned Google

8    would claim it was not required to pay him his full Project Chauffeur bonus based on Google's

9    determination of the value of Project Chauffeur, ████████████████████

10   ████.  This is relevant to his motivation for taking confidential information from Google.  Uber

11   anticipates that this inference will be corroborated by emails between Mr. Levandowski and

12   others, documentary evidence from Waymo, testimony from individuals who spoke with Mr.

13   Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

14        **Question 11:  In December 2015 and January 2016, you downloaded confidential**

15   **Google files so you could show the work your team had done on LiDAR technology,**

16   **correct?**

17        If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

18   will seek an inference that Mr. Levandowski downloaded confidential Google files so that he

19   could show the work the Project Chauffeur team had done in developing LiDAR technology,

20   which was relevant to whether Mr. Levandowski had earned his full Project Chauffeur bonus.

21   Uber anticipates that this inference will be corroborated by emails between Mr. Levandowski and

22   others, documentary evidence from Waymo, testimony from individuals who spoke with Mr.

23   Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

24        **Question 12:  In December 2015 and January 2016, you downloaded confidential**

25   **Google files so you could prove that your team had been successful in developing LiDAR**

26   **technology, correct?**

27        If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

28   will seek an inference that Mr. Levandowski downloaded confidential Google files so that he

1   could prove that the Project Chauffeur team had been successful in developing LiDAR

2   technology, and that he was therefore entitled to his full Project Chauffeur bonus.  Uber

3   anticipates that this inference will be corroborated by emails between Mr. Levandowski and

4   others, documentary evidence from Waymo, testimony from individuals who spoke with Mr.

5   Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

6          **Question 13:  In December 2015 and January 2016, you downloaded confidential**

7   **Google files so you could dispute Google's determination of the value of Project Chauffeur,**

8   ████████████████████████████████████████  **correct?**

9          If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

10  will seek an inference that Mr. Levandowski downloaded confidential Google files so that he

11  could dispute Google's determination of the value of Project Chauffeur, ███████████████

12  ███████████████████  This is relevant to his motivation for taking confidential information

13  from Google.  Uber anticipates that this inference will be corroborated by emails between Mr.

14  Levandowski and others, documentary evidence from Waymo, testimony from individuals who

15  spoke with Mr. Levandowski, and the other direct and circumstantial evidence outlined under

16  Question 1.

17         **Question 14:  In December 2015 and January 2016, you downloaded Google files so**

18  **you could prove that Google owed you your full $120 million Project Chauffeur bonus,**

19  **correct?**

20         If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

21  will seek an inference that Mr. Levandowski downloaded confidential Google files so that he

22  could prove that Google owed him his full Project Chauffeur bonus.  Uber anticipates that this

23  inference will be corroborated by emails between Mr. Levandowski and others, documentary

24  evidence from Waymo, testimony from individuals who spoke with Mr. Levandowski, and the

25  other direct and circumstantial evidence outlined under Question 1.

26         **Question 15:  In December 2015 and January 2016, you downloaded confidential**

27  **Google files so that you could protect your ability to receive your full $120 million Project**

28  **Chauffeur bonus if Google did not pay your full Project Chauffeur bonus, correct?**

If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber will seek an inference that Mr. Levandowski downloaded confidential Google files to protect his ability to receive his full Project Chauffeur bonus, if Google did not pay his full bonus.  Uber anticipates that this inference will be corroborated by emails between Mr. Levandowski and others, documentary evidence from Waymo, testimony from individuals who spoke with Mr. Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

**Question 16:  After the lawsuit in this case was filed, you admitted to Travis Kalanick that the reason you downloaded confidential Google files as alleged by Waymo in its complaint was to protect your ability to receive your full $120 million Project Chauffeur bonus from Google, correct?**

If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber will seek an inference that Mr. Levandowski downloaded confidential Google files as alleged by Waymo so that he could protect his ability to receive his full Project Chauffeur bonus.  Uber anticipates that this inference will be corroborated by emails between Mr. Levandowski and others, documentary evidence from Waymo, testimony from individuals who spoke with Mr. Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

**Question 17:  The only reason you downloaded confidential Google files as alleged by Waymo was to protect your ability to receive your full Project Chauffeur bonus from Google, and not to benefit Uber, correct?**

If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber will seek an inference that the only reason Mr. Levandowski downloaded confidential Google files as alleged by Waymo was to protect his ability to receive his full Project Chauffeur bonus, and not to benefit Uber.  Uber anticipates that this inference will be corroborated by emails between Mr. Levandowski and others, documentary evidence from Waymo, testimony from individuals who spoke with Mr. Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

**Question 18:  Any confidential files you took from Google were downloaded solely for your own self-interest and not for Uber's benefit, correct?**

UBER AND OTTOMOTTO STATEMENT IN RESPONSE TO PARAGRAPH 3 OF ORDER RE EARLY MOTIONS IN LIMINE & RELATED MATTERS (DKT. 784)
Case No. 3:17-cv-00939-WHA

8

1    If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

2  will seek an inference that Mr. Levandowski downloaded all of the confidential files he took from

3  Google solely due to his own self-interest.  Uber anticipates that this inference will be

4  corroborated by emails between Mr. Levandowski and others, documentary evidence from

5  Waymo, testimony from individuals who spoke with Mr. Levandowski, and the other direct and

6  circumstantial evidence outlined under Question 1.

7    **Question 19:  Any confidential files you took from Google were downloaded for**

8  **reasons related to your employment at Google, correct?**

9    If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

10  will seek an inference that Mr. Levandowski downloaded all of the confidential files he took from

11  Google for reasons related to his employment at Google.  Uber anticipates that this inference will

12  be corroborated by emails between Mr. Levandowski and others, documentary evidence from

13  Waymo, testimony from individuals who spoke with Mr. Levandowski, and the other direct and

14  circumstantial evidence outlined under Question 1.

15    **Question 20:  Any confidential files you took from Google were downloaded for**

16  **reasons completely unrelated to anything you planned to do with Ottomotto, correct?**

17    If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

18  will seek an inference that Mr. Levandowski downloaded all of the confidential files he took from

19  Google for reasons completely unrelated to anything he planned to do with Ottomotto.  Uber

20  anticipates that this inference will be corroborated by emails between Mr. Levandowski and

21  others, documentary evidence from Waymo, testimony from individuals who spoke with Mr.

22  Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

23    **Question 21:  Any confidential files you took from Google were downloaded for**

24  **reasons completely unrelated to anything you planned to do at Uber, correct?**

25    If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

26  will seek an inference that Mr. Levandowski downloaded all of the confidential files he took from

27  Google for reasons completely unrelated to anything he planned to do with Uber.  Uber

28  anticipates that this inference will be corroborated by emails between Mr. Levandowski and

1    others, documentary evidence from Waymo, testimony from individuals who spoke with Mr.

2    Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

3         **Question 22:  Any confidential files you took from Google were downloaded for**

4    **reasons completely unrelated to any of your discussions or negotiations with Uber, correct?**

5         If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

6    will seek an inference that Mr. Levandowski downloaded all of the confidential files he took from

7    Google for reasons completely unrelated to any of his discussions or negotiations with Uber.

8    Uber anticipates that this inference will be corroborated by emails between Mr. Levandowski and

9    others, documentary evidence from Waymo, testimony from individuals who spoke with Mr.

10   Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

11        **Question 23:  Everything you did with any confidential Google files you downloaded**

12   **you did solely for your own self-interest and not for Ottomotto's benefit, correct?**

13        If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

14   will seek an inference that everything Mr. Levandowski did with the downloaded confidential

15   Google files was done solely for Mr. Levandowski's self-interest, and not for Ottomotto's benefit.

16   Uber anticipates that this inference will be corroborated by emails between Mr. Levandowski and

17   others, documentary evidence from Waymo, testimony from individuals who spoke with Mr.

18   Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

19        **Question 24:  Everything you did with any confidential Google files you downloaded**

20   **you did solely for your own self-interest and not for Uber's benefit, correct?**

21        If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

22   will seek an inference that everything Mr. Levandowski did with the downloaded confidential

23   Google files was done solely for Mr. Levandowski's self-interest, and not for Uber's benefit.

24   Uber anticipates that this inference will be corroborated by emails between Mr. Levandowski and

25   others, documentary evidence from Waymo, testimony from individuals who spoke with Mr.

26   Levandowski, and the other direct and circumstantial evidence outlined under Question 1.

27

28

1   **Question 25**:  **In order to avoid detection by Uber during the due diligence for the**

2   **Ottomotto transaction, you deleted or destroyed all copies you had of any confidential**

3   **Google files you downloaded in December 2015 and January 2016, correct?**

4   If Mr. Levandowski refuses to answer this question on Fifth Amendment grounds, Uber

5   will seek an inference that Mr. Levandowski deleted or destroyed all remaining copies of the

6   downloaded files during the due diligence for the Uber acquisition of Ottomotto, in order to avoid

7   detection by Uber.  Uber anticipates that this inference will be corroborated by emails between

8   Mr. Levandowski and others, documentary evidence from Waymo, testimony from individuals

9   who spoke with Mr. Levandowski, and the other direct and circumstantial evidence outlined

10  under Question 1.

11  **Additional Questions:**  Should the Court permit Mr. Levandowski to appear at trial, Uber

12  also anticipates that it will ask Mr. Levandowski questions designed to demonstrate to the jury

13  that Mr. Levandowski's invocation of the Fifth Amendment has no evidentiary value, because

14  Mr. Levandowski is invoking the Fifth Amendment in response to every or nearly every question

15  asked in this case. For example, Uber may ask Mr. Levandowski the converse of each of

16  Waymo's questions that elicits a Fifth Amendment invocation. Uber has no other means of cross-

17  examining Mr. Levandowski or preventing Waymo from suggesting to the jury—even in the

18  absence of an adverse inference directed by the Court—that it should treat Waymo's self-serving

19  questions of Mr. Levandowski as evidence rather than mere attorney argument.  *See Brink's Inc.*

20  *v. City of New York*, 717 F.2d 700, 716 (2d Cir. 1983) (Winters, J., dissenting) (noting that

21  adverse inferences based on a third party's invocation of the Fifth Amendment deprive a

22  defendant of any meaningful opportunity for cross-examination except, perhaps, the "mindless

23  exchange" of asking, and eliciting Fifth Amendment invocations in response to, the converse of

24  each question asked by the plaintiff).

25  Uber has barely begun to receive discovery from Waymo: to date, Waymo has produced

26  fewer than 5,000 documents, and Uber has not yet taken any depositions of Waymo witnesses

27  outside of the limited and expedited preliminary injunction discovery conducted in April and

28  May.  As a result, Uber has not yet been able to develop all the corroborating evidence from

Waymo that will be available by the time of trial.  Uber also anticipates that it will obtain additional corroborating evidence through depositions of Uber and third-party witnesses that have yet to take place.  However, in an attempt to clarify the issues for potential motions *in limine*, Uber has identified above the questions it may ask Mr. Levandowski and the types of corroborating evidence that Uber believes will emerge in discovery.  Uber reserves its rights to supplement this statement with additional questions, inferences it may seek, and corroborating evidence based on further discovery.

Dated: July 7, 2017                           BOIES SCHILLER FLEXNER LLP


By:   */s/ Karen L. Dunn*
         KAREN L. DUNN

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC