1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   David A. Perlson (Bar No. 209502)
3  davidperlson@quinnemanuel.com
   Melissa Baily (Bar No. 237649)
4  melissabaily@quinnemanuel.com
   John Neukom (Bar No. 275887)
5  johnneukom@quinnemanuel.com
   Jordan Jaffe (Bar No. 254886)
6  jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:    (415) 875-6600
8  Facsimile:    (415) 875-6700

9  Attorneys for WAYMO LLC

10                          UNITED STATES DISTRICT COURT

11                         NORTHERN DISTRICT OF CALIFORNIA

12                                SAN FRANCISCO DIVISION

13 WAYMO LLC,                              CASE NO. 3:17-cv-00939

14              Plaintiff,                 **PLAINTIFF WAYMO LLC'S NOTICE OF
                                           MOTION AND MOTION FOR ORDER
15       vs.                               TO SHOW CAUSE WHY OTTO
                                           TRUCKING SHOULD NOT BE HELD IN
16 UBER TECHNOLOGIES, INC.;                CONTEMPT OF THE PRELIMINARY
   OTTOMOTTO LLC; OTTO TRUCKING            INJUNCTION ORDER (Dkt. 426)**
17 LLC,
                                           **PUBLIC REDACTED VERSION OF
18              Defendants.                DOCUMENT SOUGHT TO BE SEALED**

19
                                           Date:      August 17, 2017
20                                         Time:      8:00 a.m.
                                           Ctrm:      8, 19th Floor
21                                         Judge:     Honorable William H. Alsup
                                           Trial Date: October 10, 2017
22

23

24

25

26

27

28

TO DEFENDANTS UBER TECHNOLOGIES, INC., OTTOMOTTO LLC, AND OTTO TRUCKING LLC, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 17, 2017 on 8:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable William Alsup at the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California, Plaintiff Waymo LLC ("Waymo") shall and hereby does move the Court for an Order to Show Cause why Defendant Otto Trucking LLC should not be held in contempt of the Court's Preliminary Injunction Order (Dkt. 426) for: (1) failing to "use the full extent of [its] authority and influence to obtain cooperation" from its officers and agents, including Anthony Levandowski and Lior Ron, with Otto Trucking's "thorough investigation" and "detailed accounting under oath setting forth every person who has seen or heard any part of any downloaded materials, what they saw or heard, when they saw or heard it, and for what purpose," as required by Paragraph 4 of the "Scope of Relief Granted"; and (2) failing to "provide Waymo's counsel and the Court with a complete and chronologically organized log of all oral and written communications – including, without limitation, conferences, meetings, phone calls, one-on-one conversations, texts, emails, letters, memos, and voicemails – wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier, or consultant of defendants," as required by Paragraph 5 of the "Scope of Relief Granted."

Waymo's motion is based on this notice of motion and supporting memorandum of points and authorities, the supporting declaration of James Judah and accompanying exhibits, reply briefing in further support of this motion and supporting declarations and accompanying exhibits, as well as other written or oral argument that Waymo may present to the Court.

DATED: July 10, 2017    QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for Plaintiff Waymo LLC

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................................1

STATEMENT OF FACTS ....................................................................................................................2

I.   THE COURT'S PI ORDER REQUIRES OTTO TRUCKING TO USE THE FULL EXTENT OF ITS AUTHORITY AND INFLUENCE TO PREPARE A DETAILED ACCOUNTING OF THE DOWNLOADED MATERIALS AND STROZ REPORT ..................................................................................................................2

II.  OTTO TRUCKING FAILS TO USE THE FULL EXTENT OF ITS AUTHORITY AND INFLUENCE TO OBTAIN THE COOPERATION OF ITS PRINCIPALS AND AGENTS IN ITS PARAGRAPH 4 INVESTIGATION ................................................3

III. OTTO TRUCKING FAILS TO PROVIDE A LOG OF MR. LEVANDOWSKI'S LIDAR COMMUNICATIONS ..................................................................................6

ARGUMENT .........................................................................................................................................7

I.   OTTO TRUCKING IS IN CONTEMPT FOR FAILING TO TAKE ALL STEPS TO OBTAIN COOPERATION FROM ITS OFFICERS AND AGENTS IN PREPARING ITS PARAGRAPH 4 ACCOUNTING ............................................................7

   A.  Otto Trucking Violated the PI Order With Respect to the Paragraph 4 Accounting ...............................................................................................................7

   B.  Otto Trucking's Violation Was "Beyond Substantial Compliance" ..........................9

   C.  Otto Trucking's Violation Is Not Based on a Good Faith and Reasonable Interpretation of the PI Order ...................................................................................9

II.  OTTO TRUCKING IS IN CONTEMPT FOR FAILING TO PROVIDE A COMPLETE PARAGRAPH 5 LOG ..................................................................................9

CONCLUSION ...................................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Perez v. i2a Techs., Inc.,*
  No. C 15-04963 WHA, 2015 WL 7753330 (N.D. Cal. Dec. 2, 2015) ......................................... 8

*Perez v. RMRF Enter., Inc.,*
  No. C 13-80059 SI, 2014 WL 3869935 (N.D. Cal. Aug. 6, 2014) ................................. 8, 10, 11

**INTRODUCTION**

Defendant Otto Trucking is an LLC with two principals: Anthony Levandowski, who is Executive Chairman and one of two Managing Members, and Lior Ron, who is the other Managing Member. The Court has ordered Otto Trucking to "conduct a thorough investigation and provide a detailed accounting under oath setting forth every person who has seen or heard any part of any downloaded materials, what they saw or heard, when they saw or heard it, and for what purpose," as well as "the complete chains of custodians for every copy of any downloaded materials or due diligence report referencing downloaded materials." (Dkt. 426 at 24 ¶ 4.) As part of that investigation, Otto Trucking was ordered to "interview personnel … including Levandowski and his separate counsel," and to "use the full extent of [its] authority and influence to obtain cooperation with the foregoing procedure from all involved. For example, if a potential custodian refuses to cooperate, then [Otto Trucking's] accounting shall set forth the particulars, including all efforts made to obtain cooperation." (*Id.*) Otto Trucking was also ordered to "provide Waymo's counsel and the Court with a complete and chronologically organized log of all oral and written communications – including, without limitation, conferences, meetings, phone calls, one-on-one conversations, texts, emails, letters, memos, and voicemails – wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier, or consultant of defendants." (*Id.* at 25 ¶ 5.) The Court gave Otto Trucking over six weeks to prepare these accountings, which were due on June 23. Otto Trucking has willfully violated these provisions of the Court's Order.[1]

First, Otto Trucking's "detailed accounting" is a total of five sentences. (Dkt. 717 at 1-2.) Otto Trucking did not interview Mr. Levandowski at all. The only attempt by Otto Trucking to obtain cooperation from Mr. Levandowski was a single letter, sent on May 30, 2017, addressed to Mr. Levandowski's criminal attorneys. (Dkt. 717-1 at 5-6.) Otto Trucking did not interview Mr. Ron either, instead deferring to Uber's interview of Mr. Ron. The only attempt to obtain cooperation from

---

[1] Waymo previously filed a Motion for an Order to Show Cause on June 21, 2017, demonstrating that Otto Trucking has violated other provisions of the Court's Preliminary Injunction Order, including Paragraphs 2 and 3. (Dkt. 677) Waymo could not raise Otto Trucking's violations of Paragraphs 4 and 5 in that motion because the accountings were not due until two days later, on June 23.

1  Mr. Ron was a virtually identical letter, sent the same day, to Mr. Ron at his Uber work address. (*Id.*
2  at 2-3.)  O'Melveny & Myers ("OMM"), the law firm representing Otto Trucking during the
3  negotiations with Uber, was not interviewed, or even mentioned in Otto Trucking's accounting.  No
4  attempt was made to obtain cooperation from OMM.  There is no chain of custody accounting for the
5  due diligence report, and no information of any kind about the downloaded materials or even the five
6  discs that Uber, but not Otto Trucking, has revealed Mr. Levandowski told Mr. Ron about in March of
7  2016 and that Mr. Levandowski then purportedly destroyed.

8  Second, Otto Trucking's "complete and chronologically organized log of all oral and written
9  communications … wherein Anthony Levandowski mentioned LiDAR to any officer, director,
10 employee, agent, supplier, or consultant of defendants" is only four sentences, and fails to identify a
11 single communication.  Otto Trucking responds that it "has no information beyond that which was
12 disclosed by Uber pursuant to the PI Order with respect to oral and written communications where Mr.
13 Levandowski mentioned LiDAR."  But this is obviously not true.  Mr. Levandowski remains to this
14 day Otto Trucking's Executive Chairman, Managing Member, and ■■■■■■■■

15 Otto Trucking is not above the Court's Orders.  Waymo respectfully requests that the Court
16 promptly issue an Order to Show Cause why Otto Trucking should not be held in contempt for these
17 violations of the Court's Preliminary Injunction Order.

**STATEMENT OF FACTS**

**I.  THE COURT'S PI ORDER REQUIRES OTTO TRUCKING TO USE THE FULL EXTENT OF ITS AUTHORITY AND INFLUENCE TO PREPARE A DETAILED ACCOUNTING OF THE DOWNLOADED MATERIALS AND STROZ REPORT**

21 On May 11, 2017, the Court issued its Preliminary Injunction Order ("PI Order"). (Dkt. 426.)
22 Initially, the PI Order found that "Waymo has made a strong showing that Levandowski absconded
23 with over 14,000 files from Waymo, evidently to have them available to consult on behalf of Otto and
24 Uber.  As of the date of this order, those files have not been returned and likely remain in
25 Levandowski's possession." (*Id.* at 7.)  Given these findings, the PI Order set forth a detailed set of
26 actions that Defendants, including Otto Trucking, must take.  Relevant to this Motion, the PI Order
27 held that:

> With respect to all other persons, including those with Stroz Friedberg, defendants shall conduct a thorough investigation and provide a detailed accounting under oath setting forth every person who has seen or heard any part of any downloaded materials, what they saw or heard, when they saw or heard it, and for what purpose. In their investigation, defendants must do more than query servers with term searches. For example, they must interview personnel with particular focus on anyone who has communicated with Anthony Levandowski on the subject of LiDAR. Defendants' accounting shall not be limited to Uber but shall include all persons who fit the foregoing description, including Levandowski and his separate counsel. The accounting may exclude, for only the time period after the commencement of this civil action, the attorneys of record and their staff and experts employed for this litigation. The accounting shall not be limited to downloaded materials that happened to make their way into some due diligence report but shall cover any and all downloaded materials. The accounting shall also identify the complete chains of custodians for every copy of any downloaded materials or due diligence report referencing downloaded materials. Defendants must also use the full extent of their authority and influence to obtain cooperation with the foregoing procedure from all involved. For example, if a potential custodian refuses to cooperate, then defendants' accounting shall set forth the particulars, including all efforts made to obtain cooperation. The accounting must be filed and served by **JUNE 23 AT NOON**. The accounting may be filed under seal *only* to the extent that it quotes or appends downloaded materials.

(*Id*. at 24-25 ¶ 4.)

## II. OTTO TRUCKING FAILS TO USE THE FULL EXTENT OF ITS AUTHORITY AND INFLUENCE TO OBTAIN THE COOPERATION OF ITS PRINCIPALS AND AGENTS IN ITS PARAGRAPH 4 INVESTIGATION

Anthony Levandowski is the Executive Chairman of Otto Trucking, as well as one of its two Managing Members. (Dkt. 717-1 at 5.) Lior Ron is the other Managing Member. ((*Id.* at 2.) As the Court is well aware, Otto Trucking has taken the position that it has no authority or influence over its two principals and primary shareholders, as recently as the June 29 Case Management Conference, where it categorically denied that any action by or knowledge of Mr. Levandowski could be imputed to Otto Trucking – despite the fact that Otto Trucking has to date elected to take zero adverse actions against its Executive Chairman and ▓▓▓▓▓▓

---

[2] *See*, *e.g.*, Ex. 1 (6/29/2017 Lior Ron Deposition Tr.) at 273:6-8 ("Q. ▓▓▓▓▓▓ ▓▓▓▓▓▓").

-3-

**[THE COURT:]** But Otto Trucking was owned by Levandowski.

**MR. CHATTERJEE:** In part it is, Your Honor.

**THE COURT:** So doesn't Otto Trucking – isn't Otto Trucking soaked -- s-o-a-k-e-d – with.  All guilty knowledge attributable to Levandowski is attributable to Otto trucking.

**MR. CHATTERJEE:** Absolutely not, Your Honor.

**THE COURT:** You're going to have to persuade me on that one. And it's his company, for goodness' sakes.

(Dkt. 775 at 65:16-24.)

Consistent with its stance that it has no authority or influence over Mr. Levandowski or apparently, even Mr. Ron, Otto Trucking initially did not even ask for their cooperation with the Paragraph 4 procedure.  It was not until **Waymo** raised these issues on a May 17 meet and confer, and again in follow-up correspondence on May 19, that Otto Trucking even began to consider whether it had any obligation to seek cooperation from its corporate officers.  (Ex. 2 [5/29/2017 Cooper email].) Finally, on May 30 – over three weeks after the Court issued the PI Order – Otto Trucking sent letters to Mr. Levandowski (through his criminal counsel) and Mr. Ron, asking them to "make yourself available to assist in this [Paragraph 4] investigation and to provide interviews and consultations to identify information requested by the Court, including by identifying information to outside counsel at Goodwin Procter LLP and to counsel for Uber."  (Dkt. 717-1 at 3 and 6.)  Those May 30 letters were the first and only attempts by Otto Trucking to obtain cooperation from Mr. Levandowski (or, apparently, Mr. Ron) with the Paragraph 4 accounting – Otto Trucking made no further efforts at any point between May 30 and the June 23 deadline.  (Ex. 3 [6/27/2017 Judah email]; Dkt. 717 at 1-2.)

Otto Trucking did not even attempt to obtain cooperation from other persons called for under the PI Order, such as Mr. Levandowski's "separate counsel" (PI Order at 24) and Otto Trucking's agents at OMM.  (Dkt. 717 at 1-2.)  At no point during the more than six weeks the Court provided

---

Unless otherwise noted, citations herein to "Ex. __" shall refer to the accompanying Declaration of James Judah in Support of this Motion.

Otto Trucking to conduct its "thorough investigation" did Otto Trucking contact either Mr. Levandowski's separate counsel or anyone from OMM to ask for an interview or consultation. (*Id.*)

Shortly before noon on June 23, Otto Trucking filed a "Summary of Actions Taken Re: Order Continuing Deadline and Setting Hearing on Motion to Intervene and Modify Provisional Relief." (Dkt. 717.) Section III of this page and a half-long "Summary" is entitled, "Defendants' Detailed Accounting." (*Id.* at 2-3.) The "Detailed Accounting" is nine lines long:

> Mr. Ron, Ms. Morgan, and Mr. Bentley are employees of Uber Technologies Inc., and as such all three of them have been interviewed for Defendants' detailed accounting. Consequently, their information is included in the accounting filed by Uber.
> Ms. Morgan has not seen or heard of the contents of the downloaded materials. Mr. Ron also has not seen or heard any part of any downloaded materials.
> To the extent that it is responsive to the detailed accounting, Mr. Bentley, Mr. Ron and Mr. Levandowski each received the Stroz report, but none of them received the attachments.

(*Id.* at 1-2.) As is clear from even a cursory review, this is not the "Detailed Accounting" required by the PI Order. There is no information about what Mr. Levandowski saw or heard about the downloaded materials. There is no chain of custody information for the downloaded materials. The supposedly "under oath" accounting as to Mr. Ron – who "has not seen or heard any part of any downloaded materials" – is contradicted by sworn deposition testimony from Mr. Ron, who testified ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt. 676-12.) There is not even complete chain of custody information about the due diligence report – such as who sent copies to Mr. Levandowski and Mr. Ron, and when, and what happened to those copies after their receipt (or even any information about the copies purportedly sent to Mr. Levandowski's separate counsel and to OMM).

Waymo promptly met and conferred with Otto Trucking regarding the manifold deficiencies in the accounting, in an effort to resolve these issues without having to bring another motion for an Order to Show Cause. Otto Trucking adamantly refused to supplement its "Detailed Accounting" absent

Court action.³ (Ex. 4 [6/25/2017 Judah email]; Ex. 3 [6/27/2017 Judah email]; Ex. 5 [6/29/2017 Brun email]).

### III. OTTO TRUCKING FAILS TO PROVIDE A LOG OF MR. LEVANDOWSKI'S LIDAR COMMUNICATIONS

Section IV of Otto Trucking's "Summary" is entitled "Defendants' Log of Mr. Levandowski's Communications Regarding LiDAR." (Dkt. 717 at 3.) The "Log" is seven lines long:

> Ms. Morgan has never discussed LiDAR with Mr. Levandowski. Mr. Ron is not involved in the development of LiDAR. To the extent Mr. Ron and Mr. Bentley did have any conversations with Mr. Levandowski regarding LiDAR, these conversations would appear in the logs generated by Co-Defendant Uber. Otto Trucking has no information beyond that which was disclosed by Uber pursuant to the PI Order with respect to oral and written communications where Mr. Levandowski mentioned LiDAR.

(*Id.*) This is not a log at all. Otto Trucking's bid to piggy-back off of Uber's log is completely inadequate because – despite Otto Trucking's contention that it "has no information beyond that which was disclosed by Uber" – Otto Trucking has direct and unfiltered access to the knowledge of its current Executive Chairman and ▮▮▮▮▮▮▮▮▮▮ Yet Otto Trucking apparently did not even ask Mr. Levandowski for input on the Paragraph 5 log, as the May 30 letter he was sent does not even mention this aspect of the Court's PI Order or Otto Trucking's obligations arising from it. (*See* Dkt. 717-1 at 2-4.) Further, documents produced within the last month by Otto Trucking reveal the existence of a wholly owned subsidiary, Otto Transport LLC, that owns (and apparently operates) trucks employing

---

³ Waymo similarly raised with Uber numerous ways in which its Paragraph 4 (and 5) accountings were non-compliant with the Court's PI Order (*See*, *e.g.*, Ex. 6 [6/25/2017 Judah email re Paragraph 4]; Ex. 7 [6/25/2017 Judah email re Paragraph 5]; Ex. 8 [6/26/2017 Judah email re Para 4 and 5]), but unlike Otto Trucking, Uber has at least attempted to remedy some of these deficiencies. (*See*, *e.g.*, Dkt. 762 (Uber's June 28 "Supplemental Accounting Pursuant to Paragraph Four of May 11, 2017 Preliminary Injunction Order); Dkt. 792 (Uber's July 3 Notice of Lodgment of Supplemental Chronological Communications Log Pursuant to Paragraph 5 of This Court's Order Granting in Part and Denying in Part Plaintiff's Motion for Provisional Relief), adding more than 300 LiDAR communications from Mr. Levandowski that were not identified in the June 23 log.) While deficiencies remain – for example, Uber has still failed to provide a chain of custodians or dates for the copies of the Stroz Due Diligence report that were sent to Mr. Levandowski (*see* Dkt. 762 at 9), and has not identified any LiDAR communications after February 21, 2017 (*see* Dkt. 792) – Waymo is willing to continue to meet and confer with Uber to try to obtain compliant Paragraph 4 and 5 logs without the threat of contempt.

self-driving technology, and which is based out of **Uber/Ottomotto's** headquarters at 777 Harrison Street, San Francisco, CA 94107. (Ex. 9 [7/5/2017 Vu email].)

As with its Paragraph 4 accounting, Otto Trucking refused to supplement its "Log of Mr. Levandowski's Communications Regarding LiDAR" unless compelled by the Court. (Ex. 4 [6/25/2017 Judah email]; Ex. 3 [6/27/2017 Judah email]; Ex. 5 [6/29/2017 Brun email]).

## **ARGUMENT**

"Federal courts have the power to enforce compliance with their orders. One way is through holding a party in civil contempt." *Perez v. i2a Techs., Inc.*, No. C 15-04963 WHA, 2015 WL 7753330, at *3 (N.D. Cal. Dec. 2, 2015) (Alsup, J.). "To establish a *prima facie* case for civil contempt, the moving party must establish by clear and convincing evidence that the defendants: (1) violated a court order, (2) beyond substantial compliance, and (3) such violation was not based on a good faith and reasonable interpretation of the order." *Id.; see also Perez v. RMRF Enter., Inc.*, No. C 13-80059 SI, 2014 WL 3869935, at *2 (N.D. Cal. Aug. 6, 2014) (same).

Applying these factors, Otto Trucking should be held in civil contempt for (1) failing to "use the full extent of [its] authority and influence to obtain cooperation with the [Paragraph 5] procedure" from Mr. Levandowski, Mr. Ron, Mr. Levandowski's separate counsel, or OMM; and (2) failing to provide "a complete and chronologically organized log of all oral and written communications – including, without limitation, conferences, meetings, phone calls, one-on-one conversations, texts, emails, letters, memos, and voicemails – wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier, or consultant of defendants."

### I. **OTTO TRUCKING IS IN CONTEMPT FOR FAILING TO TAKE ALL STEPS TO OBTAIN COOPERATION FROM ITS OFFICERS AND AGENTS IN PREPARING ITS PARAGRAPH 4 ACCOUNTING**

#### A. **Otto Trucking Violated the PI Order With Respect to the Paragraph 4 Accounting**

The Court's PI Order required Otto Trucking to "use the full extent of [its] authority and influence to obtain cooperation with the [Paragraph 5] procedure." (Dkt. 426 at 24 ¶ 4.) As detailed above (Statement of Facts § II, *supra*), Otto Trucking failed to use the full extent of its authority and influence to obtain this cooperation Mr. Levandowski, Mr. Ron, any attorneys at OMM, or Mr.

Levandowski's separate counsel. With respect to Mr. Levandowski, Otto Trucking has, among other leverage, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ — should he refuse to cooperate. (*See also* Dkt. 676-8 at 6-7.) Otto Trucking has failed to exercise this "▓▓▓▓▓" or use any of its other authority or influence to obtain Mr. Levandowski's cooperation. Otto Trucking has argued (in opposition to Waymo's earlier Motion for an Order to Show Cause) that it has no authority or influence over Mr. Levandowski because "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" and "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" (including Mr. Levandowski, as there are only two) would have to consent to any remedial action. (Dkt. 804 at 3.) But it is undisputed that Otto Trucking has never even put the matter to a corporate resolution or ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ And even if Mr. Ron had actually attempted to use Otto Trucking's authority ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, but was thwarted by Mr. Levandowski's affirmative refusal (which of course has not occurred), that would not excuse Otto Trucking from complying with a District Court's Orders, nor has Otto Trucking provided any authority for its assertion that it could. Under Otto Trucking's reasoning, any corporation would be permitted to violate a Court Order whenever the leadership – i.e. CEO, Board of Directors, or owners – decide they don't want to comply.[4]

With respect to OMM, and Mr. Levandowski's personal attorneys, Otto Trucking has offered no justification for failing to ask for cooperation in the first place. Even where cooperation was apparently obtained (Mr. Ron, Mr. Bentley, and Ms. Morgan), the accounting is non-compliant, as Otto Trucking refused to detail any chain of custody information for the due diligence reports received

---

[4] Otto Trucking has made additional arguments in its opposition to Waymo's earlier Motion for an Order to Show Cause that, while not specifically raised in meet and confers for the Paragraph 4 or 5 accountings, Waymo addresses here. First, as the Court has ruled when Uber and Mr. Levandowski have made this argument, Otto Trucking would not violate any of Mr. Levandowski's Fifth Amendment privileges were it to use its authority or influence to obtain cooperation in response to Court Orders. (*See*, *e.g.*, Dkt. 131 at 12:6-11; Dkt. 625 at 90:11-94:13.) Second, the requirements of Paragraph 4 – "the full extent of [its] authority and influence" – are clear and definite, and it is undisputed that Otto Trucking has failed to take **any** steps to obtain Mr. Levandowski's cooperation beyond sending the single letter on May 30.

-8-

by Mr. Ron and Mr. Bentley, as well as any information about the five discs of downloaded material that Mr. Ron heard about in March 2016.

### B. Otto Trucking's Violation Was "Beyond Substantial Compliance"

There can be no doubt that Otto Trucking's violation is "beyond substantial compliance." First, to date, the **only** effort that Otto Trucking has made to obtain cooperation from Mr. Levandowski is to send a single letter to his criminal counsel, and no effort has been made to obtain cooperation from OMM or Mr. Levandowski's separate counsel. Second, Otto Trucking has ignored the express requirements of Paragraph in refusing to account for information that Mr. Ron (among others) made available to Otto Trucking, such as the chain of custody of the due diligence report or information about the five discs of downloaded material that Mr. Ron heard about from his co-Managing Member Mr. Levandowksi. Clearly Otto Trucking has not made "every reasonable effort" to comply with the Court's Order. *Perez*, 2014 WL 3869935 at *2.

### C. Otto Trucking's Violation Is Not Based on a Good Faith and Reasonable Interpretation of the PI Order

There is no good faith reading of the Court's Orders that would excuse Otto Trucking's conduct. To the extent Otto Trucking has tried to justify its non-compliance, it has trotted out the same excuses it offered for refusing to use its authority to require Mr. Levandowski to return the stolen Waymo files – that it cannot take any action without Mr. Levandowski's consent, and it doesn't think Mr. Levandowski would grant such consent (although it hasn't actually asked him directly or held a meeting of the Managing Members to vote on the issue). But, as explained in Waymo's earlier Motion for an Order to Show Cause, Otto Trucking's argument is essentially that it is Mr. Levandowski's fault that Otto Trucking is in contempt of the Court's PI Order. But that is nothing more than a circular admission that Otto Trucking has violated the Court's Order, not a good faith and reasonable interpretation of the Order.

## II. OTTO TRUCKING IS IN CONTEMPT FOR FAILING TO PROVIDE A COMPLETE PARAGRAPH 5 LOG

As recounted above, Otto Trucking has failed to provide a complete and chronological log of Mr. Levandowski's LiDAR-related communications, as required by the PI Order. (Dkt. 426 at 25 ¶ 5.) Otto Trucking's total failure to provide a log based on input from its Executive Chairman,

Managing Member, and ▮▮▮▮▮▮▮▮ is well beyond substantial compliance. Nor is Otto Trucking's theory – that it was only required to log communications Mr. Levandowski had in his capacity as an officer of Otto Trucking – a good faith or reasonable interpretation of the PI Order, which makes no distinctions between which corporate "hat" Mr. Levandowski was wearing at the time he mentioned LiDAR to any "officer, director, employee, agent, supplier, or consultant of defendants." (*Id.*) Otto Trucking is in contempt of this requirement of the PI Order as well.

## CONCLUSION

For the foregoing reasons, Waymo respectfully requests that the Court issue an Order to Show Cause why Otto Trucking should not be held in civil contempt of the PI Order with respect to the Paragraph 4 and Paragraph 5 accountings.[5]

DATED: July 10, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC

---

[5] Should the Court find Otto Trucking in contempt, Waymo requests that Waymo be permitted to propose remedies for contempt commensurate with the Court's findings, which could include further provisional relief, evidentiary sanctions, and/or adverse inferences.