# EXHIBIT 7

# James Judah

| | |
|---|---|
| **From:** | James Judah |
| **Sent:** | Sunday, June 25, 2017 11:59 AM |
| **To:** | 'John Cooper'; Matthew Cate; UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); Otto Trucking at Goodwin (DG-GPOttoTruckingWaymo@goodwinlaw.com) |
| **Cc:** | QE-Waymo |
| **Subject:** | Waymo v Uber - Uber's Paragraph 4 Accounting |

Counsel and John –

We have reviewed the "Accounting Pursuant to Paragraph Four of May 11, 2017 Preliminary Injunction Order" ("Accounting") submitted by Uber and Ottomotto ("Uber"), and have a number of serious concerns.  Uber's Paragraph 4 Accounting is non-compliant with the Court's express requirements and appears to be yet another willful violation of a Court Order.  We request to add this to our meet and confer at 10 AM Monday morning.  We will be following up separately on the other accountings submitted on Friday in connection with the PI Order.

First, the Court's PI Order required Uber to "conduct a thorough investigation and provide a detailed accounting under oath setting forth **every person who has seen or heard any part of any downloaded materials**, **what they saw or heard**, **when they saw or heard it**, **and for what purpose**."  (Dkt. 433 at 24 (emphasis added).)  Uber's accounting fails to identify every person who received any part of the downloaded materials, fails to identify what they saw or heard, and fails to explain for what purpose they saw or heard it.

**"[E]very person who has seen heard any part of any downloaded materials"**

- Uber's accounting fails to identify the "external counsel for Uber, who are not counsel of record in this litigation and whose representation of Uber is confidential" who "received and reviewed copies of the due diligence report and exhibits" and who "have copies of the report that were provided to them by Uber's in-house counsel and the exhibits that were sent to them electronically by Morrison & Foerster[.]"   (Accounting at 3 and 6.)

- Uber's accounting fails to identify the person or persons at "Epiq Systems, Inc." who have seen or heard any part of any downloaded materials.  (Accounting at 2 and 5.)

- Uber's accounting fails to identify the "four attorneys at Paul Weiss (who received it from then-Uber board member Bill Gurley)[.]"  (Accounting at 5.)

- Uber's accounting fails to identify which Morrison & Foerster partners and which associate have copies of the due diligence report and exhibits in their offices.  (Accounting at 6.)

- Uber's accounting fails to disclose Mr. Levandowski, Travis Kalanick, Lior Ron, Cameron Poetzcher, and Nina Qi, all of whom saw and/or heard about five discs of downloaded materials in March 2016.

**"[W]hat they saw or heard"**

- Uber's accounting fails to identify what part of any downloaded materials were in the due diligence report and its exhibits.  It is clear from Uber's accounting that at least some of the exhibits to the due diligence report contain portions of downloaded materials (for example, the accounting sets forth that Alisa Baker received "only some of the exhibits, none of which contain downloaded material" (Accounting at 6), but

1

there is no such caveat for anyone else who received exhibits).  It is also apparent that the due diligence report describes and/or quotes from portions of downloaded materials.  But nowhere in Uber's accounting is there any explanation of what downloaded material (i.e., which downloaded files) anyone saw or heard, in the either in the due diligence report or in any of its exhibits.

- Uber's accounting fails to identify what part of any downloaded materials were seen or heard by the Stroz Friedberg employees involved with collecting and imaging Mr. Levandowski's personal devices.  Rather, the accounting vaguely states that "individuals at Stroz Friedberg saw portions of potentially downloaded materials" (Accounting at 2) – but what portions, and what does "potentially downloaded materials" mean?

- Uber's accounting fails to identify what part of any downloaded materials were seen or heard by Morrison & Foerster attorneys.  For example, Uber's accounting states that "[Anna] Ferrari would have had access to the due diligence report and exhibits to the due diligence report and would also have reviewed additional information that may or may not have included downloaded materials" (Accounting at 3) – but did she see or hear any portion of the downloaded materials or not?  And if so, what did she see or hear?  Uber's accounting makes the same vague statement about Eric Tate.  (*Id.*)  As another example, Uber's accounting states that "Elizabeth Balassone, Anna Ferrari, and Benjamin Willaims reviewed potentially downloaded materials in Stroz Friedberg's Relativity Database" – but again, what does "potentially downloaded materials" mean?

- Uber's accounting fails to identify what part of any downloaded materials were seen or heard by Epiq or John Gardner in the Relativity data they were sent by Stroz Friedberg.  (Accounting at 5.)

**"[W]hen they saw or heard it"**

- Uber's accounting fails to identify when Stroz Friedberg received Mr. Levandowski's personal devices.  (Accounting at 2.)

- Uber's accounting fails to identify when Ms. Ferrari, Mr. Tate, Ms. Balassone, and Mr. Williams saw or heard portions of downloaded materials.  (Accounting at 3.)

- Uber's accounting fails to identify when the six "external counsel for Uber" received and reviewed copies of the due diligence report and exhibits.  (Accounting at 3 and 5.)

- Uber's accounting fails to identify when Mr. Gardner was sent a copy of the forensic image of Mr. Levandowski's personal devices.  (Accounting at 5.)

- Uber's accounting fails to identify when Epiq was sent a copy of the forensic image of Mr. Levandowski's personal devices.  (Accounting at 5.)

- Uber's accounting fails to identify when Tara Allport and Wendy Wu of Stroz Friedberg received copies of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify when the "four attorneys at Paul Weiss" received copies of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify when former Uber board member Bill Gurley received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify when former Uber board member David Bonderman received a copy of the due diligence report.  (Accounting at 5.)

2

- Uber's accounting fails to identify when Uber board member Arianna Huffington received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify when Nicole Bartow, Aaron Bergstrom, Andrew Glickman, Todd Hamblet, Christian, Lymn, Angela Padilla, Justin Suhr, Robert Wu, and Salle Yoo of Uber's internal Legal Team received copies of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify when Adam Bentley of Uber received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify when Mr. Gardner received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify when Eric Amdursky of O'Melveny & Myers received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify when Anthony Levandowksi received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify when Lior Ron received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify when Alisa Baker of Levine & Baker received a copy of the due diligence report and some exhibits.  (Accounting at 6.)

**"[A]nd for what purpose"**

- Uber's accounting fails to identify the purpose for which the individuals at Morrison & Foerster viewed downloaded materials – did each individual view the materials for the purpose of providing legal advice to Uber in connection with Uber's acquisition of Ottomotto, or for the purpose of providing legal advice to Mr. Levandowski in connection with the Google-Levandowski arbitration, or for the purpose of providing legal advice to Mr. Ron in connection with the Google-Levandowski arbitration, or some or all of the above?

- Uber's accounting fails to identify the purpose for which each of the six "external counsel for Uber" received and reviewed copies of the due diligence report and exhibits, beyond the vague statement that they received them "in connection with their representation of Uber."  (Accounting at 3.)

- Uber's accounting fails to identify the purpose for which Mr. Gardner was sent a copy of the image of Mr. Levandowski's personal devices.  (Accounting at 5.)

- Uber's accounting fails to identify the purpose for which Ms. Allport and Ms. Wu of Stroz Friedberg received copies of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify the purpose for which the four attorneys at Paul Weiss received copies of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify the purpose for which the former Uber board member Mr. Gurley received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify the purpose for which the former Uber board member Mr. Bonderman received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify the purpose for which the Uber board member Ms. Huffington received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify the purpose for which each of Uber's in-house attorneys received copies of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify the purpose for which Adam Bentley of Uber received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify the purpose for which the Eric Amdursky of OMM received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify the purpose for which Mr. Levandowski received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify the purpose for which Mr. Ron received a copy of the due diligence report.  (Accounting at 5.)

- Uber's accounting fails to identify the purpose for which Ms. Baker of Levine & Baker received a copy of the due diligence report and some exhibits.  (Accounting at 6.)

Second, The Court's PI Order required Uber to "identify the **complete chains of custodians** for every copy of any downloaded materials or due diligence report referencing any and all downloaded materials."  (Dkt. 433 at 24 (emphasis added).)  Uber's accounting fails to identify the complete chains of custodians for every copy of the downloaded materials or due diligence report.

- Uber's accounting fails to identify who sent Mr. Levandowski's personal devices to Stroz Friedberg.  (Accounting at 2.)

- Uber's accounting fails to identify who sent a copy of the image of Mr. Levandowski's personal devices to Epiq.  (Accounting at 2 and 5.)

- Uber's accounting fails to identify who sent copies of the due diligence report to the six "external counsel for Uber."  (Accounting at 3.)

- Uber's accounting fails to identify who sent copies of the due diligence report to attorneys at Morrison & Foerster.  (Accounting at 5.)

- Uber's accounting fails to identify who sent a copy of the image of Mr. Levandowski's personal devices to Mr. Gardner.  (Accounting at 5.)

- Uber's accounting fails to identify who sent copies of the due diligence report to Ms. Allport and Ms. Wu of Stroz Friedberg.  (Accounting at 5.)

- Uber's accounting fails to identify who sent a copy of the due diligence report to former Uber board member Mr. Bonderman.  (Accounting at 5.)

- Uber's accounting fails to identify who sent a copy of the due diligence report to Uber board member Ms. Huffington.  (Accounting at 5.)

- Uber's accounting fails to identify who sent copies of the due diligence report to Angela Padilla and Justin Surh.  (Accounting at 5.)

- Uber's accounting fails to identify who sent a copy of the due diligence report to Mr. Bentley.  (Accounting at 5.)

- Uber's accounting fails to identify who sent a copy of the due diligence report to Mr. Gardner.  (Accounting at 5.)

- Uber's accounting fails to identify who sent a copy of the due diligence report to Mr. Amdursky.  (Accounting at 5.)

- Uber's accounting fails to identify who sent a copy of the due diligence report to Mr. Levandowski.  (Accounting at 5.)

- Uber's accounting fails to identify who sent a copy of the due diligence report to Mr. Ron.  (Accounting at 5.)

- Uber's accounting fails to identify who sent a copy of the due diligence report to Ms. Baker.  (Accounting at 6.)

Third, the Court's PI Order required Uber to "use the full extent of their authority and influence to obtain cooperation with the foregoing procedure from all involved.  For example, if a potential custodian refuses to cooperate, then defendants' accounting **shall set forth the particulars, including all efforts made to obtain cooperation**."  (Dkt. 433 at 24 (emphasis added).)  Uber's accounting fails to set forth the particulars of all efforts made to obtain cooperation with potential custodians who refused to cooperate.

- Uber's accounting fails to identify the particulars of its efforts to obtain cooperation from Travis Kalanick.  Discovery to date shows that Mr. Kalanick has had extensive communications with Mr. Levandowski, including about downloaded materials.  (*See*, *e.g.*, Uber's Response to Expedited Interrogatory No. 1.)  Uber says it was unable to interview Mr. Kalanick before June 23 due to personal issues (Accounting at 2), but numerous media reports indicate that Mr. Kalanick has been doing work for Uber the past month on matters other than complying with the Court's PI Order.  For example, the New York Times reported that Mr. Kalanick traveled to Chicago on Tuesday, June 20 to "interview executive candidates for Uber[.]"  (https://www.nytimes.com/2017/06/21/technology/uber-travis-kalanick-final-hours.html.)  Mr. Kalanick also had time that day to meet for hours with two of Uber's investors from the venture capital firm Benchmark and talk on the phone with Uber board member Arianna Huffington.  (*Id.*)  Mr. Kalanick also apparently attended an all-day Board of Directors meeting on June 11.

- Uber's accounting fails to identify the particulars of its efforts to obtain cooperation from Mr. Levandowski.  (Accounting at 3.)  For example, Uber does not provide the contents of any emails it sent to any of Mr. Levandowski's attorneys, or even the date or nature of the "request" to Miles Ehrlich.

- Uber's accounting fails to identify the particulars of its efforts to obtain cooperation from John Gardner.  (Accounting at 3.)  For example, Uber does not provide the contents of any emails it sent to Mr. Gardner, or even the date or nature of the "requests" to Merri Baldwin.

- Uber's accounting fails to identify the particulars of its efforts to obtain cooperation from Oryx Vision.

5

- Uber's accounting fails to identify the particulars of its efforts to obtain cooperation from Princeton Lightwave.

- Uber's accounting fails to identify the particulars of its efforts to obtain cooperation from O'Melveny & Myers.  For example, Uber only provides the content of a single email sent to anyone at OMM.

Finally, Uber's accounting suggests that Uber has also violated other Court Orders.  For example, Judge Alsup's Standing Order requires that privilege logs "must at the time of assertion identify [] all persons making or receiving the privileged or protected communication."  (Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup ¶ 16.)  However, for a number of the individuals that Uber now asserts, under oath, received the due diligence report – Mr. Gurley, Mr. Bonderman, Ms. Huffington, the six "external counsel for Uber," and the four "Paul Weiss attorneys" to name just a few – Waymo has not been able to find them on Uber's privilege log for the Stroz due diligence report.

The foregoing is not intended to be an exhaustive catalog of all of the deficiencies in Uber's accounting.  Waymo reserves all rights.

**James Judah**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6420 Direct
415.875.6600 Main Office Number
415.875.6700 FAX
jamesjudah@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.