# EXHIBIT 8

# James Judah

| | |
|---|---|
| **From:** | James Judah |
| **Sent:** | Monday, June 26, 2017 7:22 PM |
| **To:** | 'UberWaymoMoFoAttorneys'; 'DG-GP Otto Trucking Waymo'; 'Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com)'; 'John Cooper'; 'Matthew Cate' |
| **Cc:** | QE-Waymo |
| **Subject:** | Waymo - meet and confer re Defendants' Paragraph 4 and 5 accountings |

Counsel and John –

I write to summarize the meet and confer this morning with Otto Trucking and Uber/Ottomotto regarding their June 23 submissions in response to Paragraphs 4 and 5 of the Court's PI Order (Dkt. 433).

**Otto Trucking**

Shane Brun, the only attorney on the 11 AM call for Otto Trucking, said that no one on his team had seen my email about Otto Trucking's deficient Paragraph 4 and 5 accountings until this morning, and that the attorneys with knowledge of the issues raised in my 6/25 email were not available for either the 10 AM or 11 AM calls. Otto Trucking will respond in writing to my 6/25 email by tomorrow morning at 10 AM, and then provide an attorney knowledgeable about these issues on the 10 AM call with the Special Master. Waymo reiterates its request that Defendants provide attorneys for meet and confer calls with sufficient knowledge of the issues to be discussed.

**Uber/Ottomotto**

Paragraph 5 Accounting. Arturo Gonzalez, the only attorney on the 11 AM call for Uber/Ottomotto, said that he was not prepared to discuss my 6/25 email regarding Uber's deficient Paragraph 5 accounting. Uber will provide an attorney knowledgeable about those issues on tomorrow's 10 AM call with the Special Master. Waymo reiterates its request that Defendants provide attorneys for meet and confers with sufficient knowledge of the issues to be discussed.

Paragraph 4 Accounting. We discussed the issues in my 6/25 email regarding Uber's deficient Paragraph 4 accounting. Below are each of those issues from the 6/25 email (in blue), with a summary of the discussion below each issue (in black). As an initial matter, Waymo notes that Defendants' accounting was due on June 23 at noon, and Waymo does not believe the Court's Order contemplated an iterative approach to compliance whereby Uber is permitted to provide a facially non-complaint accounting on the deadline, and then supplement that accounting in the days or weeks that follow in response to policing by Waymo. Nevertheless, Waymo is willing to meet and confer with Defendants in order to remedy deficiencies in these accountings as soon as possible, while reserving all rights.

**"[E]very person who has seen heard any part of any downloaded materials"**

- Uber's accounting fails to identify the "external counsel for Uber, who are not counsel of record in this litigation and whose representation of Uber is confidential" who "received and reviewed copies of the due diligence report and exhibits" and who "have copies of the report that were provided to them by Uber's in-house counsel and the exhibits that were sent to them electronically by Morrison & Foerster[.]" (Accounting at 3 and 6.)

    o Uber will get back to us today on the identity of the six external counsel.

- Uber's accounting fails to identify the person or persons at "Epiq Systems, Inc." who have seen or heard any part of any downloaded materials. (Accounting at 2 and 5.)

1

- o   Uber will supplement its Paragraph 4 accounting, within the next few days, to identify who at Epiq received the hard drive of Relativity data from Mr. Levandowski's personal devices.

- Uber's accounting fails to identify the "four attorneys at Paul Weiss (who received it from then-Uber board member Bill Gurley)[.]"  (Accounting at 5.)

    - o   Uber will get back to us today on the identity of the four Paul Weiss attorneys.

- Uber's accounting fails to identify which Morrison & Foerster partners and which associate have copies of the due diligence report and exhibits in their offices.  (Accounting at 6.)

    - o   Uber will get back to us today on the identity of the MoFo attorneys with copies of the due diligence report and exhibits.

- Uber's accounting fails to disclose Mr. Levandowski, Travis Kalanick, Lior Ron, Cameron Poetzcher, and Nina Qi, all of whom saw and/or heard about five discs of downloaded materials in March 2016.
-
    - o   Uber will supplement its Paragraph 4 accounting, within the next few days, to include information provided in Uber's response to expedited Interrogatory No. 1.

**"[W]hat they saw or heard"**

- Uber's accounting fails to identify what part of any downloaded materials were in the due diligence report and its exhibits.  It is clear from Uber's accounting that at least some of the exhibits to the due diligence report contain portions of downloaded materials (for example, the accounting sets forth that Alisa Baker received "only some of the exhibits, none of which contain downloaded material" (Accounting at 6), but there is no such caveat for anyone else who received exhibits).  It is also apparent that the due diligence report describes and/or quotes from portions of downloaded materials.  But nowhere in Uber's accounting is there any explanation of what downloaded material (i.e., which downloaded files) anyone saw or heard, in the either in the due diligence report or in any of its exhibits.

    - o   Uber indicated that it is unable to provide more information about what downloaded materials were seen or heard by anyone in the accounting (both in the due diligence report, its exhibits, and in Mr. Levandowski's personal devices) because 1) that information is currently subject to a privilege assertion whose resolution is currently stayed until June 30 and which may be subject to an emergency appeal by Mr. Levandowski (although not Uber), and 2) Uber does not know whether any of the specific information qualifies as "downloaded material."

- Uber's accounting fails to identify what part of any downloaded materials were seen or heard by the Stroz Friedberg employees involved with collecting and imaging Mr. Levandowski's personal devices.  Rather, the accounting vaguely states that "individuals at Stroz Friedberg saw portions of potentially downloaded materials" (Accounting at 2) – but what portions, and what does "potentially downloaded materials" mean?

    - o   Same as above.

- Uber's accounting fails to identify what part of any downloaded materials were seen or heard by Morrison & Foerster attorneys.  For example, Uber's accounting states that "[Anna] Ferrari would have had access to the due diligence report and exhibits to the due diligence report and would also have reviewed additional information that may or may not have included downloaded materials" (Accounting at 3) – but did she see or hear any portion of the downloaded materials or not?  And if so, what did she see or hear?  Uber's accounting makes the same vague statement about Eric Tate.  (*Id.*)  As another example, Uber's accounting

2

states that "Elizabeth Balassone, Anna Ferrari, and Benjamin Willaims reviewed potentially downloaded materials in Stroz Friedberg's Relativity Database" – but again, what does "potentially downloaded materials" mean?

- o Same as above.

- Uber's accounting fails to identify what part of any downloaded materials were seen or heard by Epiq or John Gardner in the Relativity data they were sent by Stroz Friedberg.  (Accounting at 5.)

  - o Same as above.

**"[W]hen they saw or heard it"**

- Uber's accounting fails to identify when Stroz Friedberg received Mr. Levandowski's personal devices.  (Accounting at 2.)

  - o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.
  - o Waymo notes that for this request, as for others for which Uber did not agree to provide a date certain on a response, we request a response today.

- Uber's accounting fails to identify when Ms. Ferrari, Mr. Tate, Ms. Balassone, and Mr. Williams saw or heard portions of downloaded materials.  (Accounting at 3.)

  - o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when the six "external counsel for Uber" received and reviewed copies of the due diligence report and exhibits.  (Accounting at 3 and 5.)

  - o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when Mr. Gardner was sent a copy of the forensic image of Mr. Levandowski's personal devices.  (Accounting at 5.)

  - o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when Epiq was sent a copy of the forensic image of Mr. Levandowski's personal devices.  (Accounting at 5.)

  - o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when Tara Allport and Wendy Wu of Stroz Friedberg received copies of the due diligence report.  (Accounting at 5.)

  - o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when the "four attorneys at Paul Weiss" received copies of the due diligence report.  (Accounting at 5.)

  - o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

3

- Uber's accounting fails to identify when former Uber board member Bill Gurley received a copy of the due diligence report.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when former Uber board member David Bonderman received a copy of the due diligence report.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when Uber board member Arianna Huffington received a copy of the due diligence report.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when Nicole Bartow, Aaron Bergstrom, Andrew Glickman, Todd Hamblet, Christian, Lymn, Angela Padilla, Justin Suhr, Robert Wu, and Salle Yoo of Uber's internal Legal Team received copies of the due diligence report.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when Adam Bentley of Uber received a copy of the due diligence report.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when Mr. Gardner received a copy of the due diligence report.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when Eric Amdursky of O'Melveny & Myers received a copy of the due diligence report.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when Anthony Levandowksi received a copy of the due diligence report.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when Lior Ron received a copy of the due diligence report.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify when Alisa Baker of Levine & Baker received a copy of the due diligence report and some exhibits.  (Accounting at 6.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

**"[A]nd for what purpose"**

- Uber's accounting fails to identify the purpose for which the individuals at Morrison & Foerster viewed downloaded materials – did each individual view the materials for the purpose of providing legal advice to Uber in connection with Uber's acquisition of Ottomotto, or for the purpose of providing legal advice to Mr. Levandowski in connection with the Google-Levandowski arbitration, or for the purpose of providing legal advice to Mr. Ron in connection with the Google-Levandowski arbitration, or some or all of the above?

    o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the purpose for which each of the six "external counsel for Uber" received and reviewed copies of the due diligence report and exhibits, beyond the vague statement that they received them "in connection with their representation of Uber."  (Accounting at 3.)

    o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the purpose for which Mr. Gardner was sent a copy of the image of Mr. Levandowski's personal devices.  (Accounting at 5.)

    o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the purpose for which Ms. Allport and Ms. Wu of Stroz Friedberg received copies of the due diligence report.  (Accounting at 5.)

    o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the purpose for which the four attorneys at Paul Weiss received copies of the due diligence report.  (Accounting at 5.)

    o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the purpose for which the former Uber board member Mr. Gurley received a copy of the due diligence report.  (Accounting at 5.)

    o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the purpose for which the former Uber board member Mr. Bonderman received a copy of the due diligence report.  (Accounting at 5.)

    o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the purpose for which the Uber board member Ms. Huffington received a copy of the due diligence report.  (Accounting at 5.)

    o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the purpose for which each of Uber's in-house attorneys received copies of the due diligence report.  (Accounting at 5.)

    o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the purpose for which Adam Bentley of Uber received a copy of the due diligence report.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the purpose for which the Eric Amdursky of OMM received a copy of the due diligence report.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the purpose for which Mr. Levandowski received a copy of the due diligence report.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the purpose for which Mr. Ron received a copy of the due diligence report.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the purpose for which Ms. Baker of Levine & Baker received a copy of the due diligence report and some exhibits.  (Accounting at 6.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

Second, The Court's PI Order required Uber to "identify the **complete chains of custodians** for every copy of any downloaded materials or due diligence report referencing any and all downloaded materials."  (Dkt. 433 at 24 (emphasis added).)  Uber's accounting fails to identify the complete chains of custodians for every copy of the downloaded materials or due diligence report.

- Uber's accounting fails to identify who sent Mr. Levandowski's personal devices to Stroz Friedberg.  (Accounting at 2.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify who sent a copy of the image of Mr. Levandowski's personal devices to Epiq.  (Accounting at 2 and 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify who sent copies of the due diligence report to the six "external counsel for Uber." (Accounting at 3.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information, as well as whether its supplemental Paragraph 4 accounting will identify who sent copies of the exhibits to the due diligence report to the six external counsel for Uber.

- Uber's accounting fails to identify who sent copies of the due diligence report to attorneys at Morrison & Foerster.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

6

- Uber's accounting fails to identify who sent a copy of the image of Mr. Levandowski's personal devices to Mr. Gardner.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify who sent copies of the due diligence report to Ms. Allport and Ms. Wu of Stroz Friedberg.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify who sent a copy of the due diligence report to former Uber board member Mr. Bonderman.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify who sent a copy of the due diligence report to Uber board member Ms. Huffington.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify who sent copies of the due diligence report to Angela Padilla and Justin Surh.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify who sent a copy of the due diligence report to Mr. Bentley.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify who sent a copy of the due diligence report to Mr. Gardner.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify who sent a copy of the due diligence report to Mr. Amdursky.  (Accounting at 5.)

    o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify who sent a copy of the due diligence report to Mr. Levandowski.  (Accounting at 5.)

- - o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify who sent a copy of the due diligence report to Mr. Ron.  (Accounting at 5.)

  - o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify who sent a copy of the due diligence report to Ms. Baker.  (Accounting at 6.)

  - o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

Third, the Court's PI Order required Uber to "use the full extent of their authority and influence to obtain cooperation with the foregoing procedure from all involved.  For example, if a potential custodian refuses to cooperate, then defendants' accounting **shall set forth the particulars, including all efforts made to obtain cooperation**."  (Dkt. 433 at 24 (emphasis added).)  Uber's accounting fails to set forth the particulars of all efforts made to obtain cooperation with potential custodians who refused to cooperate.

- Uber's accounting fails to identify the particulars of its efforts to obtain cooperation from Travis Kalanick.  Discovery to date shows that Mr. Kalanick has had extensive communications with Mr. Levandowski, including about downloaded materials.  (*See*, *e.g.*, Uber's Response to Expedited Interrogatory No. 1.)  Uber says it was unable to interview Mr. Kalanick before June 23 due to personal issues (Accounting at 2), but numerous media reports indicate that Mr. Kalanick has been doing work for Uber the past month on matters other than complying with the Court's PI Order.  For example, the New York Times reported that Mr. Kalanick traveled to Chicago on Tuesday, June 20 to "interview executive candidates for Uber[.]"  (https://www.nytimes.com/2017/06/21/technology/uber-travis-kalanick-final-hours.html.)  Mr. Kalanick also had time that day to meet for hours with two of Uber's investors from the venture capital firm Benchmark and talk on the phone with Uber board member Arianna Huffington.  (*Id.*)  Mr. Kalanick also apparently attended an all-day Board of Directors meeting on June 11.

  - o   Uber will be talking to Mr. Kalanick as early as today, and its supplemental Paragraph 4 accounting, served within the next few days, will include information provided by Mr. Kalanick.

- Uber's accounting fails to identify the particulars of its efforts to obtain cooperation from Mr. Levandowski. (Accounting at 3.)  For example, Uber does not provide the contents of any emails it sent to any of Mr. Levandowski's attorneys, or even the date or nature of the "request" to Miles Ehrlich.

  - o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the particulars of its efforts to obtain cooperation from John Gardner. (Accounting at 3.)  For example, Uber does not provide the contents of any emails it sent to Mr. Gardner, or even the date or nature of the "requests" to Merri Baldwin.

  - o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the particulars of its efforts to obtain cooperation from Oryx Vision.

  - o   Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

8

- Uber's accounting fails to identify the particulars of its efforts to obtain cooperation from Princeton Lightwave.

    o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

- Uber's accounting fails to identify the particulars of its efforts to obtain cooperation from O'Melveny & Myers.  For example, Uber only provides the content of a single email sent to anyone at OMM.

    o Uber will get back to us whether its supplemental Paragraph 4 accounting will provide this information.

Finally, Uber's accounting suggests that Uber has also violated other Court Orders.  For example, Judge Alsup's Standing Order requires that privilege logs "must at the time of assertion identify [] all persons making or receiving the privileged or protected communication."  (Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup ¶ 16.)  However, for a number of the individuals that Uber now asserts, under oath, received the due diligence report – Mr. Gurley, Mr. Bonderman, Ms. Huffington, the six "external counsel for Uber," and the four "Paul Weiss attorneys" to name just a few – Waymo has not been able to find them on Uber's privilege log for the Stroz due diligence report.

    o Uber will confirm but indicated that these recipients of the due diligence report and exhibits were not included on Uber's privilege logs because they received the report/exhibits after the filing of the lawsuit, and Uber did not log communications that post-date the filing of the lawsuit.

Given that Uber's "thorough investigation" and "detailed accounting" was due last week, to the extent Uber is not able to provide all of the outstanding information today, we would like to get a date certain by no later than tomorrow's call so that Waymo can seek relief on these urgent issues as necessary.

Best,
James


**James Judah**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6420 Direct
415.875.6600 Main Office Number
415.875.6700 FAX
jamesjudah@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.