MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
RUDY Y. KIM (CA SBN 199426)
RudyKim@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:     415.268.7000
Facsimile:     415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone:     202.237.2727
Facsimile:     202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendant. | Case No.     3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S IDENTIFICATION OF MOTIONS IN LIMINE FOR RESOLUTION PRIOR TO TRIAL**<br><br>Judge:   The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

**REDACTED VERSION OF DOCUMENT SUBMITTED UNDER SEAL**

## I. MOTION NO. 1: EXCLUDE REFERENCE TO STROZ REPORT AS A PROXY FOR MISAPPROPRIATED TRADE SECRETS

The Court should preclude Waymo from arguing that certain materials, including the Stroz Report, constitute or contain the allegedly misappropriated trade secrets. Such references are without foundation and highly prejudicial to Uber. Indeed, the Court has recognized that such statements should not be permitted. (*See* 6/29/17 Hr'g Tr. at 80:21-81:2 (Court agreeing that it would not be "accurate" or "fair" for Waymo "to conflate the existence of a Due Diligence Report with misappropriated trade secrets"); *see also id.* at 56:3-6.)

Waymo has referred multiple times to the Stroz investigation and report as relating to the 14,000 allegedly "stolen documents." (*E.g.*, 5/25/17 Hr'g Tr. at 103:11-104:17; Dkt. 677 at 8; Dkt. 756 at 12.) Waymo has made these claims despite not knowing the content of the Stroz Report and related materials. Waymo has and is likely going to continue to suggest, without basis, that other materials are equivalent to the "stolen files," such as the five discs that Anthony Levandowski stated that he destroyed. Unsupported claims that certain materials are or contain the "stolen files" are neither accurate nor fair and should be barred. Fed. R. Evid. 401, 403.

## II. MOTION NO. 2: EXCLUDE ARGUMENT REGARDING ADVERSE INFERENCES FROM PRIVILEGE INVOCATIONS

Because the Court has not yet ruled on it, Uber hereby incorporates by reference its June 16, 2017 precis outlining why the Court should exclude any argument or evidence regarding Uber's assertions of attorney-client privilege or work-product protection. (Dkt. 641.) Waymo's opposition (Dkt. 650) to Uber's proposed MIL lacks merit and all the cases to which Waymo cites can be distinguished. Moreover, Waymo's complaint that a ruling excluding any questions "designed to elicit" assertions of privilege would be impossible to administer is nonsense. Waymo knows perfectly well the issues over which Uber has claimed privilege.

## III. MOTION NO. 3: EXCLUDE ARGUMENT REGARDING ADVERSE INFERENCES FROM IMAGINED DISCOVERY MISCONDUCT

Waymo should not be allowed to argue that Uber engaged in supposed discovery misconduct or obstruction. Such argument would be particularly improper where Waymo has not even proven misconduct by prevailing on a sanctions motion. *Green v. Baca*, 226 F.R.D. 624,

DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S IDENTIFICATION OF MOTIONS IN LIMINE
Case No. 3:17-cv-00939-WHA
sf-3803328

1

1  642-43 (C.D. Cal. 2005) ("Absent [discovery sanctions] order . . . , discovery disputes and initial
2  failures to produce documents do not constitute admissible evidence of consciousness of
3  wrongdoing or efforts to conceal relevant evidence."). Further, Waymo's prior attempt to get
4  adverse inferences based on alleged discovery misconduct was denied. (Dkt. 245-3 at 11-13;
5  Dkt.  426 at 8-10.)

6  Uber has complied with all of its discovery obligations throughout both the expedited and
7  regular phases of discovery. Any suggestion or argument to the jury that Uber has engaged in
8  imagined discovery misconduct would be improper. No. CV-05-3027-PHX-ROS, *Walton v.*
9  *Bridgestone/Firestone, Inc.*, 2009 WL 2778441, at *9 (D. Ariz. Jan. 16, 2009) (on motion in
10 limine, "[a]ny reference or argument to the jury concerning . . . alleged discovery misconduct [is]
11 irrelevant and prejudicial and is excluded."). Such an argument is unduly prejudicial to Uber,
12 confusing to the jury, and of no probative value in view of both Uber's good-faith efforts and the
13 lack of any harm to Waymo. *Id.* Thus, Waymo should be barred from doing so.

14 **IV.   MOTION NO. 4: EXCLUDE CALLING LEVANDOWSKI TO TRIAL FOR PURPOSE OF DEMONSTRATING FIFTH AMENDMENT INVOCATION**
15

16 Assuming Levandowski continues to invoke the Fifth Amendment, Waymo should be
17 precluded from calling him as a witness at trial merely to have him invoke the Fifth Amendment.
18 There would be no purpose in having Levandowski take the stand, other than to prejudice
19 Uber. Such prejudice is precisely Waymo's goal. The Ninth Circuit has recognized that
20 witnesses should not be called just to invoke the Fifth Amendment in front of the jury. *See*
21 *United States v. Licavoli*, 604 F.2d 613, 624 (9th Cir. 1979); *United States v. Roselli*, 432 F.2d
22 879, 903-04 (9th Cir. 1970).

23 As indicated by Waymo's "necessarily incomplete" list of questions it plans to ask
24 Levandowski at trial, Waymo intends to pose, at a minimum, **461** questions for which it expects
25 Levandowski to take the Fifth. (Dkt. 835 at 1.) That would be wholly inappropriate and would
26 cause Uber grave prejudice, in violation of Federal Rule of Evidence 403.

27
28

DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S IDENTIFICATION OF MOTIONS IN LIMINE
Case No. 3:17-cv-00939-WHA
sf-3803328

2

## V.  MOTION NO. 5:  EXCLUDE ADVERSE INFERENCES TO UBER FROM LEVANDOWSKI'S INVOCATIONS OF THE FIFTH AMENDMENT

The Court should not permit the jury to draw an adverse inference against Uber based on Levandowski's decision to invoke the Fifth Amendment.  Such evidence would be irrelevant and unfairly prejudicial.  As Uber explained in its adverse inference submission, which Uber incorporates herein by reference, factors that courts generally consider in determining whether to allow an adverse inference from a non-party's invocation overwhelmingly weigh against such an adverse inference against Uber.  (Dkt. 821.)  Rather, the Court's instruction should inform the jury:  (1) that Levandowski has declined to testify because he has a constitutional right to do so and (2) that the jury should not speculate as to why he chose not to testify or whether his testimony would have been adverse to Waymo or Uber.  (*See id.* at 2.)

Should the Court allow adverse inferences against Uber based on Levandowski's invocation, however, the Court should also allow Uber to draw specific adverse inferences against Levandowski.  (Dkt. 829-3.)  And to the extent that any adverse inference is warranted, the Court must apply critical procedural safeguards to limit the scope and applicability of any such inferences:  the requirement of independent corroborating evidence; the requirement of a question-by-question basis; and the vigorous application of Rule 403.  (Dkt. 821 at 3, 7-10.)

## VI.  MOTION NO. 6:  EXCLUDE EVIDENCE OR ARGUMENT OF THE "BACKDATED" STOCK PURCHASE, WHICH WAS DATED ONE DAY AFTER LEVANDOWSKI LEFT WAYMO

Waymo should not be permitted to argue that Levandowski's January 28, 2016 vesting commencement date is evidence of impropriety or collusion with Uber.  There is no basis for such an inference.  Fed. R. Evid. 403.  At the hearing for Waymo's motion for preliminary injunction, Waymo argued that Levandowski's vesting commencement date demonstrated that Levandowski received stock from Uber the day after he quit Waymo and that it proved "he[ was] secretly working for Uber" "when he [was] supposedly starting his own company . . . [and] his own technology."  (5/3/2017 Hr'g Tr. (Public Session) at 34:4-11.)

*First*, the Notice of Restricted Stock Award ("Notice") that included the January 28, 2016 vesting date was not issued until August 17, 2016, when Uber issued Levandowski's offer letter,

DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S IDENTIFICATION OF MOTIONS IN LIMINE
Case No. 3:17-cv-00939-WHA
sf-3803328

3

1  UBER00006435.  As such, the Notice does not show that Levandowski received stock from Uber
2  the day after he quit.  ***Second***, consistent with common corporate practice, the vesting
3  commencement date used for Levandowski and all other former Ottomotto LLC employees (from
4  truck driver to co-founder) was the start date at Ottomotto, to give vesting credit for time served
5  at the acquired company.  (Declaration of Esther Kim Chang in Support of Defendants Uber
6  Technologies, Inc. and Ottomotto LLC's Identification of Motions in Limine for Resolution Prior
7  to Trial ("Chang Decl."), Ex. 1, UBER00011726; *compare* Ex. 2, UBER00045442, *with* Ex. 3,
8  UBER00023106; *compare* Ex. 4, UBER045537, *with* Ex. 5, UBER00023523.)  Thus, Waymo
9  should not be permitted to argue that Levandowski's vesting commencement date indicates any
10 special treatment for Levandowski or collusion with Uber or undermines the legitimacy of the
11 founding of Ottomotto.

12 Finally, as is evident on the face of the Restricted Stock Notice, Levandowski's vesting
13 commencement date does not demonstrate that Levandowski received *any* Uber stock as of
14 January 28, 2016, or ever.  (*Id.* Ex. 6, UBER00016410.)  Levandowski's stock award was
15 contingent upon multiple factors, including specific milestone accomplishments.  (*Id.*)  Because
16 Levandowski did not accomplish any of those milestones prior to his termination for cause, he
17 never received any Uber stock.  Waymo should not be permitted to argue otherwise.

### VII. MOTION NO. 7: EXCLUDE EVIDENCE OR ARGUMENT REGARDING UBER'S INDEMNIFICATION OBLIGATIONS, OTHER THAN AS SET FORTH IN THE INDEMNIFICATION AGREEMENT

20 Based on a February 5, 2016 e-mail, Waymo seeks to present evidence at trial that Uber
21 agreed to indemnify Ottomotto, Otto Trucking, Levandowski, and Lior Ron for "downloading of
22 files of ACME," *i.e.*, Google.  (Chang Decl. Ex. 7, UBER00017265, at -73; Dkt. 754-3 at 11-12.)
23 This is contrary to the only admissible evidence of what Uber agreed to indemnify Levandowski
24 for:  i.e., the Indemnification Agreement itself, which makes clear that Uber did not agree to
25 indemnify downloading of files.  This evidence and argument must be excluded under Rules 402
26 and 403 and the parol evidence rule.

27 First, the e-mail to which Waymo points does not "make a fact more or less probable than
28 it would be without the evidence."  Fed. R. Evid. 401(a).  What the parties were negotiating in

DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S IDENTIFICATION OF MOTIONS IN LIMINE
Case No. 3:17-cv-00939-WHA
sf-3803328

4

early February 2016, before any diligence even began, says nothing about what Uber actually *knew or should have known* regarding whether Levandowski allegedly improperly downloaded or deliberately took Waymo files before leaving Waymo.  Additionally, if there is any marginal probative value, it is vastly outweighed by the unfair prejudice to Uber, and should be excluded under Rule 403, especially given that Uber did not agree to indemnify Levandowski for downloading of files.

Further, the parol evidence rule "is a rule of substantive law making the integrated written agreement of the parties their exclusive and binding contract no matter how persuasive the evidence of additional oral understandings.  Such [extrinsic] evidence is legally irrelevant and cannot support a judgment." *Marani v. Jackson*, 183 Cal. App. 3d 695, 701 (1986); *see also* Cal. Civ. Proc. Code § 1856; Cal. Civ. Code § 1625.  The parol evidence rule applies when a contract's terms are at issue, even if no breach of contract claim is alleged.  *See Thermech Eng'g Corp. v. Abbott Labs.*, No. G030381, 2003 WL 23018553, at *8 (Cal. Ct. App. Dec. 22, 2003); *TK Prod., LLC v. Buckley*, No. 3:16-CV-803-SI, 2016 WL 7013470, at *5 (D. Or. Nov. 29, 2016).

Here, the Indemnification Agreement is a fully integrated agreement.  (Dkt. 599-1.) Section 3.4 includes a complete integration clause, which "has been held conclusive on the issue of integration, so that parol evidence to show that the parties did not intend the writing to constitute the sole agreement will be excluded." *Grey v. Am. Mgmt. Servs.*, 204 Cal. App. 4th 803, 807 (2012).  Courts routinely exclude parol evidence, like that offered by Waymo, on a motion in limine. *E.g.*, *Ringfree USA Corp. v. Ringfree Co.*, No. CV 06-7813 CAS (CTx), 2008 WL 11339112, at *2 (C.D. Cal. Aug. 15, 2008); *EPA Real Estate P'Ship v. Kang*, 12 Cal. App. 4th 171, 175-76 (1992).

The Indemnification Agreement provides that Uber will indemnify the other parties for claims brought by former employers arising out of alleged "infringement [] or misappropriation . . . of any intellectual property, including any patents, copyrights, trademarks, or trade secrets" of the former employer, provided that the alleged misconduct was truthfully disclosed to Uber during the Stroz diligence process and was alleged to have occurred prior to the

DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S IDENTIFICATION OF MOTIONS IN LIMINE
Case No. 3:17-cv-00939-WHA
sf-3803328

5

signing of the Merger Agreement. (Dkt. 599-1, § 2.1(a), (b)(ii).) Nowhere in Section 2.1 does Uber agree to indemnify Levandowski for "downloading of files" from Waymo. Moreover, even if it did, "downloading of files" is not a proxy for trade secret misappropriation.

## VIII.  MOTION NO. 8: EXCLUDE EVIDENCE OR ARGUMENT REGARDING ACTUAL HARM RESULTING IN MONETARY DAMAGES

At trial, Waymo should not be permitted to introduce evidence or argument regarding actual harm resulting in monetary damages. Moreover, Waymo should also be precluded from offering evidence of damages due to its failure to timely disclose its damages theories, in contravention of this Court's orders and Rule 26. (Dkt. 797.)

There is no evidence of any commercial sales of either Waymo or Uber's in-house LiDAR, and Uber's Fuji LiDAR ███████████████████████████. With no commercialization of the technology at issue, Waymo's purported damages for actual harm are speculative at best. This uncertainty is confirmed by Waymo's deficient damages disclosures, which lack any computation of damages, let alone actual harm resulting in current monetary damages. (Dkt. 797.) In *Winston Research Corp. v. Minnesota Mining & Manufacturing Co.*, 350 F.2d 134, 144 (9th Cir. 1965), the Ninth Circuit affirmed the district court's denial of monetary damages where there were "no past profits to disgorge," because the defendant had sold none of its accused machines and evidence of future profits was "at best highly speculative." The *Winston* court also found that evidence of any advantage from improper use was "too remote and speculative," and thus could not support monetary damages. *Id.*; *see also Atlantic Inertial Systems, Inc. v. Condor Pacific Industries of California, Inc.*, 545 Fed.Appx. 600, 602 (9th Cir. 2013) ("("[R]ecovery of a royalty is not guaranteed even where actual losses and unjust enrichment are not provable."). Similarly, Waymo should be precluded from presenting evidence or argument of actual harm resulting in monetary damages to the jury.

## IX. MOTION NO. 9: EXCLUDE EVIDENCE OR ARGUMENT OF STROZ FRIEDBERG OR MORRISON & FOERSTER'S ALLEGED POSSESSION OF WAYMO TRADE SECRETS

Waymo filed this action, to great publicity, based on a claim that *Uber* stole Waymo's trade secrets and that *Uber* is using them to develop competing technology for self-driving cars.

DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S IDENTIFICATION OF MOTIONS IN LIMINE
Case No. 3:17-cv-00939-WHA
sf-3803328

6

But the massive discovery that Waymo has undertaken in this case does not support this claim—Waymo has uncovered no proof that the 14,000 allegedly downloaded files ever got to Uber or that any alleged trade secrets were ever used by Uber. In light of this complete lack of evidence, Waymo has shifted to a new and unprecedented theory of liability against Uber, based on a claim of "imputed *acquisition*." This novel theory would impute to Uber any possible acquisition of materials containing Waymo's alleged trade secrets by Morrison & Foerster or Stroz Friedberg as part of Stroz's due diligence investigation—regardless of whether such trade secrets were ever shared with Uber (which they were not). For the reasons explained in Uber's brief regarding imputation (Dkt. 824), incorporated herein by reference, the Court must exclude any evidence of Stroz or Morrison & Foerster's alleged acquisition or knowledge of trade secrets because that acquisition or knowledge cannot be imputed to Uber under established trade secrets law.

Additionally, the Court must exclude this evidence because it is not pled in Waymo's complaint, and the time to seek leave to amend has passed. *Markos v. Sears, Roebuck & Co.*, No. CV 05-3051 CBM (JWJx), 2007 WL 5162457, at *3 (C.D. Cal. Mar. 19, 2007) (granting motion *in limine* to exclude evidence of damages theory not pled in complaint); *Rich v. BAC Home Loans Servicing LP*, No. CV-11-00511-PHX-DLR, 2014 WL 7671615, at *5 (D. Ariz. Oct. 9, 2014), *aff'd sub nom. Rich v. Bank of Am., N.A.*, 666 F. App'x 635 (9th Cir. 2016) (granting motion *in limine* to exclude evidence of unpled, alternative theory not pled in complaint).

### X.  MOTION NO. 10:  EXCLUDE EVIDENCE OR ARGUMENT THAT UBER TRIED TO HIDE SPIDER FROM WAYMO

Waymo alleges that Uber attempted to hide Spider from Waymo and the Court. (Dkt. 245-3 at 2.) Uber did no such thing, and Waymo should not be allowed to mislead the jury in this way. Fed. R. Evid. 403.

In response to Waymo's "on-the-fly, out-of-left field" request "to order an inspection" of Uber's "LiDAR system," (4/6/2017 Hr'g Tr. 56:19-57:3; 4/12/2017 Hr'g Tr. 95:20-96:17), Uber made its completed prototypes, i.e., Fuji and Owl, available for inspection (Chang Decl. Ex. 8, 4/8/2017 A. Gonzàlez e-mail). Waymo inspected those LiDAR systems on April 11, 2017.

DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S IDENTIFICATION OF MOTIONS IN LIMINE
Case No. 3:17-cv-00939-WHA
sf-3803328

7

In addition to those two completed LiDAR systems, Defendants also worked on another design that was never completed, code-named Spider.  "Spider was never made, used, sold, offered for sale, or imported." (Dkt. 331 at 5.)  Defendants first disclosed Spider on April 7, 2017, in the declaration of Scott Boehmke. (Dkt. 176-1 at 6, ¶ 14 ("Uber was considering several different LiDAR options. . . . Plan C was to use a fiber laser design . . . using eight fiber lasers.").)  When Waymo asked about Spider, after learning more about the design during the deposition of one of Uber's engineers (Chang Decl. Ex. 9, A. Linaval Dep. 34:1-35:9), Uber promptly made the components of Spider available for inspection.  (Chang Decl. Ex. 10, 4/16/17 A. Gonzàlez e-mail.)  Before Uber abandoned the Spider design in late October 2016, it built a few components for testing purposes.  (Dkt. 331 at 4-5.)  All of the parts needed for a working LiDAR prototype were never built, and those components that were built were never completely assembled.  (*Id.* at 5.)  In order to make the components of Spider available for inspection, an Uber engineer had to collect these components from scattered locations.  (Dkt. 297-1, ¶¶ 20-23; Dkt. 330-6, ¶¶ 14-17.)  Waymo inspected these components on April 19, 2017.  (Chang Decl. Ex. 11, 4/18/17 A. Gonzàlez e-mail.)  Uber also brought the components of Spider to the May 3 hearing on Waymo's motion for a preliminary injunction for the public to see.  (Dkt. 418.)

Moreover, the Spider design is largely excluded from this case.  Waymo has dropped three of the four asserted patents—the only asserted patents that implicated Spider.  And only trade secrets 48 and 90 implicate the Spider design.  Evidence as to these issues should be excluded because its probative value—to the extent there is any—is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and wasting time.  Fed. R. Evid. 403.

### XI. MOTION NO. 11:  EXCLUDE EVIDENCE OR ARGUMENT THAT THE NEVADA CERTIFICATION REVEALS USE OF WAYMO'S ALLEGED TRADE SECRETS

Waymo has misconstrued the original certification submitted to the Nevada authorities as evidence that Uber is deploying "Waymo's LiDAR technology." (Dkt. 24 at 2.)  On September 19, 2016, Nevada ATCF LLC, a wholly owned subsidiary of Ottomotto, submitted a document titled "Autonomous Technology Knowledge and Expertise—Certification of

DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S IDENTIFICATION OF MOTIONS IN LIMINE
Case No. 3:17-cv-00939-WHA
sf-3803328

8

Autonomous Vehicles" ("Nevada Certification"), in support of its application for an Autonomous Technology Certification Facility license. The Nevada Certification contained the following statement on pages 9 and 10: "Selected advanced self-driving technologies developed in-house and/or currently deployed in Otto's autonomous vehicles include: . . . LiDAR – In-house custom built 64-laser (Class 1) emitting 6.4 million beams a second at 10Hz." (Dkt. 27-32 at 60-61.)

As clarified in Uber's March 15, 2017 letter to the Nevada Department of Motor Vehicles, this statement did not and was not intended to refer to any in-house custom LiDAR that was under development at Otto or Uber during that time, or at any other time, including Spider, which was under development at the time but never completed and abandoned. (Dkt. 186-8.) In its March 15 letter, Uber clarified that:

- Otto has been developing its own LiDAR systems, but has not yet deployed an "[i]n-house custom built 64-laser" in its autonomous vehicles, and
- To the extent any vehicles tested and certified by Nevada ATCF LLC to date included a LiDAR sensor, such LiDAR sensor was commercially available. (*Id.*)

The only custom in-house LiDAR system that Uber is currently developing is "Fuji," which has a rate of 1.536 million beams a second. To be admissible at trial, the statements must be relevant to some issue in this case, and any statement regarding the Nevada submission is not. *See* Fed. R. Evid. 402.

### XII.   MOTION NO. 12: EXCLUDE EVIDENCE OR ARGUMENT OF ACCESS TO OR POSSESSION OF WAYMO PROPRIETARY MATERIAL BY FORMER WAYMO EMPLOYEES OTHER THAN LEVANDOWSKI

The gravamen of Waymo's complaint is that Levandowski downloaded 14,000 confidential files before resigning from Waymo and took them to Uber. (Dkt. 23.) Waymo also alleged that two former Waymo employees, Sameer Kshirsagar and Radu Raduta, downloaded confidential Waymo files before resigning and took them to Uber. (*Id.* ¶¶ 51-54; Dkt. 584-42 ¶¶ 24-29; Dkt. 584-53, ¶¶ 6-11.) After an exhaustive search for the 14,000 files at Uber, Waymo has found no evidence that those files were ever acquired or used by Uber.

As to Messrs. Kshirsagar and Raduta, Waymo must be held to its statement that the files allegedly downloaded by these individuals do not contain trade secrets. (6/7/17 Hr'g Tr. at

DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S IDENTIFICATION OF MOTIONS IN LIMINE
Case No. 3:17-cv-00939-WHA
sf-3803328

9

14:11-21.) As such, Waymo must be excluded from presenting evidence of their downloading under the doctrine of judicial estoppel. *See In re Clawson*, 434 B.R. 556, 566 (N.D. Cal. 2010) (holding that if party's attorney had "previously stated or represented to the court" one position at hearing, "then judicial estoppel would preclude inconsistent statements to contrary.").

With only Levandowski's downloading left, Waymo has signaled its intent to present evidence that "at least one other engineer," not identified in the amended complaint, took confidential Waymo files to Uber. (6/29/2017 Hr'g Tr. at 60:13-61:4.) Waymo must be excluded from presenting evidence of this engineer or any other employee taking confidential Waymo information to Uber because such allegations are not pled in the complaint.

Allegations not properly before the Court cannot provide grounds for relief. *See Consol. Data Terminals v. Applied Dig. Data Sys., Inc.*, 708 F.2d 385, 398 (9th Cir. 1983) (reversing judgment in favor of plaintiff where "theory was not pleaded and was not tried by consent"). The time for Waymo to amend its complaint has passed. (*See* Dkt. 563 at ¶ 2.) Waymo insisted on the expedited schedule in this case, and it could not claim that expedited deadlines are malleable when doing so benefits it and prejudices Uber. As such, the Court must preclude Waymo from presenting evidence of other former Waymo engineers purportedly taking Waymo confidential information to Uber. *See Markos*, 2007 WL 5162457, at *3 (granting motion *in limine* to exclude evidence of damages theory not pled in complaint); *Rich*, 2014 WL 7671615, at *5.

*****

In addition to the foregoing, we note that after Waymo submits its narrowed list of trade secrets alleged to have been misappropriated, Uber may file motions in limine to: (1) exclude any reference to the alleged downloading of the 14,000 files if those files do not contain any of the narrowed list of alleged trade secrets and (2) require a demonstration at the beginning of trial of the facts that supposedly establish that such alleged trade secrets actually constitute trade secrets, thereby allowing Uber to seek a directed verdict during trial if Waymo is unable to establish that threshold fact.

DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S IDENTIFICATION OF MOTIONS IN LIMINE
Case No. 3:17-cv-00939-WHA
sf-3803328

10

| | | |
|---|---|---|
| Dated: July 10, 2017 | | MORRISON & FOERSTER LLP |

By: */s/ Arturo J. González*
ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S IDENTIFICATION OF MOTIONS IN LIMINE
Case No. 3:17-cv-00939-WHA
sf-3803328

11