QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, <br><br> Plaintiff, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, <br><br> Defendants. | CASE NO. 3:17-cv-00939 <br><br> **PLAINTIFF WAYMO LLC'S ORDERED LIST OF POTENTIAL *IN LIMINE* MOTIONS (DKT. 784)** |

Waymo awaits further document production and will take many more depositions over the next several weeks on numerous subjects. Waymo also awaits complete production of further discovery and information subject to numerous Court Orders. Further, Defendants have not yet taken any Waymo depositions, and are continuing to serve discovery on Waymo. Thus, Waymo reserves its rights to make additional motions or alter its list of proposed motions *in limine*, and the substance thereof. Initially, as described in Waymo's Précis on Motions *in Limine* (Dkt. 640-4), this Court should (1) preclude Defendants from arguing that they never possessed stolen material or, in the alternative, for an adverse inference that Defendants possess the stolen material, and (2) hold Defendants to their choice, expressly made under pain of preclusion, to cloak the due diligence process in privilege rather than to affirmatively rely on evidence relating to that investigation.

**1.     To preclude Defendants from arguing any theory as to why Anthony Levandowski downloaded Waymo trade secrets.**

The Court should exclude any argument as to why Levandowski downloaded Waymo files, including its recent theory that Levandowski downloaded and held the 14,000+ files as "ransom" for Google to pay his bonus(es). (*See* Dkt. 755 at 12; Dkt. 821 at 1-2.) Previously, Levandowski purportedly told individuals that he downloaded the materials so that he could work from home. (Dkt. 248-7.) Defendants should not be permitted to make any argument or introduce any evidence regarding the reasons why Levandowski downloaded the 14,000+ files because Defendants have not produced any admissible evidence to support any such theory.

The only person with personal knowledge of *why* Levandowski downloaded the 14,000+ files is Levandowski, and he refuses to testify. (Dkt. 366-8 at 181:5-13 (invoking the Fifth Amendment in response to the question, "if you were such an accomplished engineer, why did you steal 14,000 documents from Google?") Without his testimony, Defendants may present theories of why he stole the files through other witnesses' testimony. That testimony is inadmissible. Indeed, Defendants previously challenged Levandowski's out-of-court statements on the reasons for downloading the files as hearsay. (Dkt. 385 at 8 n.13). Another witness—for example, Travis Kalanick (Dkt. 821 at 1-2)—cannot testify that Levandowski told him that Levandowski downloaded the files as "ransom" for his bonus because such testimony is inadmissible hearsay. Fed. R. Evid. 801, 802, 805.

1  Defendants may try to introduce circumstantial evidence that Levandowski downloaded the 14,000+ files to hold them hostage in exchange for bonus payments by questioning Waymo witnesses about Waymo's bonus program. Although a Waymo witness may be able to testify about the bonus program, when Levandowski was scheduled to be paid, and the payments he received, no Waymo witness will have personal knowledge of whether the bonus payments had anything to do with Levandowski's actions. Fed. R. Evid. 602. And, Defendants should not be permitted to present this theory simply by questioning a Waymo witness about the bonus program because Waymo cannot rebut the theory by cross-examining the one person who can definitively say whether the bonus program drove the decision to steal 14,000+ proprietary files—Anthony Levandowski.

Additionally, evidence regarding why Levandowski downloaded the files is not probative of whether Defendants misappropriated Waymo's trade secrets by acquiring them through improper means, or using or disclosing Waymo's trade secrets. Cal. Civ. Code § 3426.1; 18 U.S.C. § 1839; Fed. R. Evid. 402. Even if there was a legitimate reason for Levandowski to download this massive amount of files—there is not, and using them as ransom certainly is not—that has no bearing on whether **Defendants** acquired those trade secrets through improper means, or used or disclosed them.

This theory should also be excluded pursuant to Federal Rule of Evidence 403. The minimal (at best) probative value of unreliable theories as to why Levandowski did what he did is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time." Fed. R. Evid. 403. It is unfairly prejudicial to Waymo to the extent that Defendants may have access to Levandowski and his "story" via their purported common interest, but Waymo has no opportunity to cross-examine Levandowski. Permitting Defendants to argue that Levandowski held the files for "ransom" also risks undue delay and wasting time because it will require the parties to present evidence regarding Waymo's bonus program, which is otherwise irrelevant. Specifically, the jury will hear testimony that Levandowski received his December 2015 bonus payment on time; Levandowski received the last of his on-time bonus payments in August 2016 less than a month before announcement of the Uber acquisition of Otto; and Levandowski never told Waymo he downloaded Waymo's trade secrets, undermining the notion that he was holding them hostage until he received his bonus(es). As the evidence shows, Levandowski purloined the files and

took them to Otto, to be acquired by Uber. He was clearly aware—as were Defendants through the due diligence process—that his conduct was not "innocent," because he sought indemnification from Uber and Uber agreed.

**2.     To preclude Defendants from arguing any theory as to why Levandowski left Google.**

The Court should exclude any argument as to why Levandowski left Google. Defendants have offered no admissible evidence supporting the assertion that Levandowski left Google for any particular reason, and must therefore be precluded from making such arguments at trial. The only person with personal knowledge of *why* Levandowski left Google when he did is Levandowski, and he refuses to testify. Without him, Defendants may try to present theories of why he left through other witnesses. But that testimony is inadmissible. For example, another witness cannot testify as to why Levandowski left because such testimony is inadmissible hearsay. Fed. R. Evid. 801, 805. Defendants may try to introduce circumstantial evidence about why *other* employees left to imply that Levandowski left for the same reasons. Indeed, Uber served document requests aimed at developing this theory. Magistrate Judge Corley denied Uber's motion to compel some of these documents (Dkt. 808 (regarding Uber's RFPs 44, 64-65, 67-68, 138)), but Uber is continuing to pursue other, similar documents. Defendants should not be permitted to present a theory of why Levandowski left through questioning Waymo witnesses or former employees because Waymo cannot cross-examine the one person who can definitively say why Levandowski left—Anthony Levandowski.

Additionally, evidence about why Levandowski or other Google or Waymo employees left is irrelevant. Fed. R. Evid. 401. Whatever the reason, it did not give him license to misappropriate trade secrets. ***Why*** a former employee left is not probative of ***whether*** Defendants misappropriated Waymo's trade secrets by acquiring them through improper means, or using or disclosing Waymo's trade secrets. Cal. Civ. Code § 3426.1; 18 U.S.C. § 1839. How Levandowski or others at Waymo felt about their jobs has no bearing on the elements of the causes of action.

Further, any evidence supporting a theory of why Levandowski left Google should be excluded pursuant to Rule 403. Fed. R. Evid. 403. The minimal (at best) probative value of unreliable theories as to why Levandowski left is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time." *Id.* It is

unfairly prejudicial to Waymo to the extent that Defendants had access to Levandowski's "story" as to why he left via their purported common interest agreement, which Waymo does not have because he pled the Fifth.  It is also unfairly prejudicial because it appears to be an attempt by Uber to run a competitor's run name through the mud.  Permitting Defendants to present this theory also risks undue delay and wasting time because it requires the jury to hear irrelevant testimony about why certain Waymo employees left their jobs.  Finally, this theory confuses the issues and risks misleading the jury because deciding to leave one's job is no excuse for misappropriating trade secrets.

**3.     To preclude any argument, testimony, or evidence that Waymo/Google employees (other than Mr. Levandowski) have side businesses at Waymo or Google.**

The Court should exclude any argument, testimony, or evidence that Waymo or Google employees (other than Levandowski) have side businesses.  This evidence is irrelevant to the parties' claims and risks confusing the jury.  Uber sought document discovery regarding Waymo and Google employees' side businesses, and Magistrate Judge Corley recently granted Defendants' motion to compel such discovery. (Dkt. 808 at 2.)  Waymo expects that Uber will argue that other Waymo and Google employees have side businesses, and thus, that Waymo permitted Levandowski to set up Otto before leaving Waymo.  Waymo's claim, however, is not that Levandowski improperly set up a side business.  Waymo's claim is that Defendants acquired Waymo's trade secrets through improper means when Levandowski stole 14,000+ files containing Waymo's trade secrets, took them to his newly formed business, and then Uber paid a large sum of money for that business only a few months after it was founded.  Uber negotiated to acquire Levandowski's new company before it was founded, and when it had no employees and no products.  What Levandowski's new company had to offer was the stolen Waymo trade secrets.  Notwithstanding Magistrate Judge Corley's Order (Dkt. 808), that other Waymo or Google employees have legitimate side businesses does not excuse Levandowski and Defendants' behavior.  The existence of side businesses is not relevant to the claims. Fed. R. Evid. 401.  At a minimum, any discussion of other employees' side businesses should be limited to side businesses related to self-driving car technology (should there be any).

Further, any evidence regarding other employees' side businesses should be excluded pursuant to Federal Rule of Evidence 403.  The minimal probative value of this evidence is "substantially

-4-

1  outweighed by a danger of . . . confusing the issues, misleading the jury, undue delay, [and] wasting
2  time." Fed. R. Evid. 403. It is likely to confuse the issues and mislead the jury because Defendants
3  will imply that Levandowski and Uber did nothing wrong. Further, it will cause undue delay and
4  waste time because it will require explaining what side businesses are, Google and Waymo's policies
5  for side businesses, and whether Levandowski complied with them. These facts are not important to
6  whether Defendants misappropriated Waymo's trade secrets and should, therefore, be excluded.

7  **4.    To preclude any argument, testimony, or evidence about efforts taken in response to the Court's Preliminary Injunction Order, including to preclude any reference to the questionnaires and witness interviews Defendants did during the litigation.**
8

9   The Court should exclude any argument, testimony, or evidence regarding Defendants' efforts
10  during the litigation to try to locate "downloaded materials," including reference to the thousands of
11  questionnaires and witness interviews Defendants and their counsel conducted during the
12  litigation. First, permitting Defendants to introduce this argument would open the door to allowing
13  Waymo to explain to the jury *why* Defendants conducted those investigations, namely in response to
14  the Court's March 16, 2017 Expedited Discovery Order and May 11, 2017 Order Granting in Part
15  Waymo's Motion for a Preliminary Injunction. If Defendants argue they conducted these broad
16  investigations, Waymo must be allowed to tell the jury that Defendants were ***ordered to do so.***

17  Second, if Defendants withhold the questionnaires and all other documents relating to their
18  post-litigation investigations on the basis of privilege or work product, then Defendants should not be
19  permitted to present the purported results of those investigations. Where a party asserts privilege over
20  a particular subject matter, it is appropriate for the Court to preclude the litigant from later waiving the
21  privilege or offering evidence on related subject matter. *Universal Elecs., Inc. v. Universal Remote*
22  *Control, Inc.*, Case No. 12-cv-00329-AG , 2014 WL 8096334, at *8 (C.D. Cal. Apr. 21, 2014) (where
23  plaintiff previously asserted attorney-client privilege over certain subjects, "[c]ertainly Plaintiff cannot
24  now provide answers to those questions"); *U.S. Rubber Recycling, Inc. v. ECORE Int'l, Inc.*, Case No.
25  CV 09-09516 SJO, 2011 WL 13127343, at *8 (C.D. Cal. Oct. 5, 2011) (requiring defendant to assure
26  the Court that it was not relying on an opinion of counsel defense); *Edward Lowe Indus., Inc. v. Oil–*
27  *Dri Corp. of America,* Case No. 94-C-7568, 1995 WL 609231, at *5 (N.D. Ill. 1995) ("[B]y waiting
28  until after the close of discovery to waive its attorney-client privilege, it was precluded from asserting

an advice of counsel defense."). "[T]he attorney-client privilege cannot be used as a sword as well as a shield." *Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, Case No. C-03-05669-JW, 2007 WL 2069946, at *2 (N.D. Cal. July 13, 2007) (*quoting In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987)). If Defendants want to put forth the "results" of their investigation, Defendants must produce the entire results of those questionnaires and interviews to test that assertion, which they have yet to do.

Finally, the only individuals with personal knowledge of the relevant facts are MoFo attorneys, whom Defendants say they will not call as trial witnesses (Dkt. 809). Thus, the Court should exclude any argument, evidence, or testimony of the questionnaires or interviews. Fed. R. Evid. 602.

**5.    To preclude any argument, evidence, or testimony regarding amount or types of discovery from Defendants as showing alleged non-use of Waymo's trade secrets.**

Defendants should be precluded from offering any argument, evidence, or testimony about their discovery efforts, including any purported expert testimony drawing conclusions therefrom. First, any argument, testimony, or evidence regarding Defendants' discovery in this case is irrelevant to the issue of whether Defendants misappropriated Waymo's trade secrets. Waymo will show that Defendants acquired Waymo's protectable trade secrets through improper means, used those trade secrets, or disclosed those trade secrets. Cal. Civ. Code § 3426.1; 18 U.S.C. § 1839. Waymo has direct evidence of use by Defendants, as well as evidence that Waymo's trade secrets were acquired, used, or disclosed by agents of Defendants acting on Defendants' behalf. As one example, the Court recognized that "it remains entirely possible that Uber knowingly left Levandowski free to keep that treasure trove of files as handy as he wished (so long as he kept it on his own personal devices), and that Uber willfully refused to tell Levandowski to return the treasure trove to its rightful owner." (Dkt. 433 at 7-8.) To rebut this evidence, Defendants may try to introduce evidence about the amount and types of discovery conducted *after* this case was filed, *without* productions from key custodial sources (e.g., Levandowski's personal computer), and *without* access to the thousands of documents withheld as privileged. The amounts or types of discovery that was not withheld, and was conducted from a subset of custodial sources, does not disprove the use uncovered by Waymo, or suggest lack of use of files Defendants' agents knew were in their possession. It is irrelevant. Fed. R. Evid. 401. To the extent there is any probative value that can be derived from the amounts or types of discovery by

Defendants, it is far outweighed by the unfair prejudice to Waymo, likelihood of confusing the issues, and potential for misleading the jury. Admission of evidence regarding Defendants' discovery efforts would open the door to Waymo presenting evidence of Defendants' repeated failure to produce discovery and to comply with the Court's orders. It should therefore be excluded. Fed. R. Evid. 403.

Second, Defendants stated they plan to introduce expert testimony on the sufficiency of Defendants' discovery efforts in this case. (Dkt. 769 at 3-4 (describing the expected testimony of "Retained Expert No. 5" as including "data collection methods and forensic techniques used to search the computer systems of Uber in this case[ and] the results of the investigation of Uber's computer systems").) This proposed testimony suggests Defendants' expert will use an irrelevant fact (search of Uber systems in discovery) to draw impermissible legal conclusions ("results of the investigation of Uber's computer systems"). Such testimony is thus inadmissible expert testimony. Federal Rule of Evidence 702 permits admission of relevant, reliable, and qualified expert testimony to assist the trier of fact in understanding the evidence or determining a fact in issue. But "[r]esolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Nationwide Trans. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). "Accordingly, federal courts typically prohibit experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case." *Mannick v. Kaiser Found. Health Plan, Inc.*, No. C-03-5905, 2006 WL 1626909, at *17 (N.D. Cal. June 9, 2006) (citing *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988)). For example, experts may not testify as to "reasonableness" (*Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992)), nor apply facts to the law to draw legal conclusions (*Nationwide*, 523 F.3d at 1058-60). *See also id.* at 1058 ("As a general rule, testimony . . . is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704(a). That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)) (internal quotation marks omitted)). In addition, the purported testimony would not be based on admissible facts or data, as the only individuals with personal knowledge of the relevant facts are Defendants' attorneys who Defendants will not call at trial (Dkt. 809). Fed. R. Evid. 602, 703. Defendants may not use an expert to testify

about discovery efforts, based on inadmissible statements by Defendants' attorneys.

**6.     To disqualify Morrison & Foerster from acting as Defendants' trial counsel.**

MoFo set up the inspection protocol for the forensic due diligence, and advised Uber in light of the due diligence report issued by Stroz as it was deeply involved in the Otto acquisition. Indeed, *Defendants* listed MoFo attorneys who have appeared in this case (Eric Tate, Rudy Kim, Wendy Ray, Daniel Muino, Esther Kim Chang, Sylvia Rivera) on their Initial Disclosures, as did Waymo. Uber disclosed Eric Tate, Rudy Kim, and Shouvik Biswas as having knowledge of the due diligence process for the Otto acquisition. MoFo attorneys are also listed on Defendants' privilege logs and were involved in the Otto acquisition. (*See, e.g.*, Dkt. 799-2). Even though Uber indicated it does not plan to call MoFo attorneys as trial witnesses (Dkt. 809), at least some of them will likely be trial witnesses because they have relevant knowledge of the Otto acquisition, knowledge that is imputed to Uber. *Columbia Pictures Corp. v. DeToth*, 87 Cal.App.2d 620, 630 (1948); Cal. Civ. Code § 2332.

Attorneys that are likely to be witnesses on disputed issues may be disqualified as trial counsel. Cal. R. Prof. Conduct 5-210. While the default rule is that, if the client provides informed, written consent, an adversary cannot disqualify the counsel, California courts also turn to ABA Model Rule 3.7 (which does not contain an informed consent exception) and their inherent power to disqualify counsel despite client consent (*Caluori v. One World Techs., Inc.*, No. CV 07–2035 CAS (VBKx), 2012 WL 2004173, at *4-*6 (C.D. Cal. June 4, 2012)). A California court has "inherent power and discretion to disqualify counsel in order to maintain the ethical standards of professional responsibility." *Id.* at *4-*5. MoFo should be disqualified because it is a necessary witness regarding Uber's due diligence, and MoFo's actions as Uber's agent are relevant to the case. Thus, the integrity of the judicial process mandates MoFo's disqualification. *See Smith, Smith & Kring v. Superior Court*, 60 Cal.App.4th 573, 579 (1997) ("[W]e must ask, based on the evidence supplied to the trial court, was there 'a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process[?]'" (quoting *Lyle v. Superior Court*, 122 Cal.App.3d 470, 482 (1981))).

Although the advocate-witness rule generally is "not intended to apply to circumstances in which a lawyer in an advocate's firm will be a witness" (Cal. R. Prof. Conduct 5-210 at Discussion), disqualifying MoFo is appropriate due to its pervasive involvement in the due diligence process. The

jury will likely be confused by why some MoFo attorneys are arguing as attorneys, and others are on the stand as fact witnesses, and why Waymo's attorneys are not on the stand. This confusion, along with the fact that Uber's attorneys will be able to argue from the witness box, is prejudicial to Waymo. Thus, all MoFo attorneys should be disqualified as trial counsel. At a minimum, any MoFo attorney involved in the due diligence should be disqualified from acting as trial counsel for Defendants.

**7.     To preclude Defendants from calling Waymo's counsel as trial witnesses.**

Uber identified Quinn Emanuel attorneys in its Initial Disclosures as having knowledge of the "[i]nspection pursuant to the Court's provisional remedy order." It is unclear what relevant, non-privileged, non-work product testimony at trial Uber could elicit from Waymo's litigation counsel on this subject, or how any such relevance would not be "substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time." Fed. R. Evid. 403. This is in no way comparable to Defendants' counsel MoFo's involvement in the Otto acquisition or Defendants' attempt to leave the door open to argue their conduct and investigations in this litigation shows that Waymo's trade secrets allegedly "never made it to Uber."

**8.     To preclude evidence of Quinn Emanuel's previous representation of Uber.**

Even though Magistrate Judge Corley already denied Uber's motion to compel Waymo's communications with Quinn Emanuel regarding this litigation (Dkt. 808), Uber continues to seek discovery as to Quinn Emanuel's prior representation of Uber on unrelated matters. Testimony on this issue would not be relevant to any claims or defenses in the case. Fed. R. Evid. 401. And there would be substantial danger of undue prejudice, confusing the issues, misleading the jury, waste of time, and delay. Fed. R. Evid. 403. Indeed, it could create a trial within a trial on conflict issues, necessitating educating the jury on conflicts, and require testimony into other litigation, Uber's delay in raising this issue and the reasons for that delay (such as negative results in the litigation and negative publicity).

**9.     To preclude any reference to Waymo's arbitrations against Levandowski and Ron.**

The Court should preclude any reference to Google's arbitrations with Levandowski and Ron. Those arbitrations relate to claims specific to employee poaching by Levandowski, and are not probative in this matter. Defendants moved to compel arbitration of this matter, arguing that Waymo improperly sought to avoid arbitration of its claims against Defendants. (Dkt. 125.) The Court denied

1  Defendants' motion to compel arbitration, and explained that neither pending arbitration proceeding
2  against Levandowski or Ron have "anything to do with Waymo's claims of trade secret
3  misappropriation against defendants here." (Dkt. 425 at 2.) Any reference to the arbitration
4  proceedings, therefore, would be irrelevant. Fed. R. Evid. 402. Additionally, because it does not
5  serve to aid the fact finder in determining a fact in issue, any reference to the pending arbitrations
6  would waste time and confuse the issues. Furthermore, it is unduly prejudicial to Waymo because the
7  jury may incorrectly believe that Waymo can obtain relief for Levandowski's wrongdoing elsewhere,
8  despite the fact that this is a separate case involving separate issues. Thus, any reference to the
9  pending arbitrations should be excluded. Fed. R. Evid. 402, 403.

**10. To preclude any argument regarding the reduction in number of claims or trade secrets at issue at trial.**

The Court should preclude Defendants from arguing at trial that Waymo reduced the number of trade secrets at issue or that Waymo dismissed some of its patent claims, and implying that this reflects the merit of Waymo's claims overall. Waymo expects that Defendants will make these arguments because Uber has done so in the press. Whether Waymo takes only a subset of its misappropriated trade secrets to trial, or dismissed some of its patent claims, is not relevant to Defendants' trade secret misappropriation or patent infringement. Fed. R. Evid. 401.

Further, permitting Defendant to make these arguments at trial risks confusing the issues and misleading the jury, as well as wasting time and causing delay. The Court ordered the parties to agree on a date by which Waymo must identify the no more than ten trade secrets Waymo will present at trial; that date is August 1. (Dkt. 647.) Thus, Waymo's compliance with the Court's Order has no bearing on the merit of Waymo's claims. Similarly, Waymo dismissed patents that it asserted against a product Uber abandoned and has no plans to revive—facts Waymo learned through this litigation. (Dkts. 385-6, 841.) It will waste time and cause delay for Waymo to rebut Defendants' arguments by explaining this procedural history. Defendants' arguments should be excluded. Fed. R. Evid. 403.

DATED: July 10, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC