CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
MARJA-LIISA OVERBECK (State Bar No. 261707)
mari.overbeck@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077

Attorneys for Non-Party Lyft, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>        Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**NON-PARTY LYFT, INC.'S OBJECTION AND REQUEST FOR A STAY OF MAGISTRATE JUDGE'S JULY 7, 2017 DISCOVERY ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    TBD<br>Time:   TBD<br>Crtrm.:  8 – 19th Floor<br>Judge:   The Hon. William H. Alsup<br><br>Trial Date: October 2, 2017 |

## I. INTRODUCTION

This is a time-sensitive objection to a discovery order by the Magistrate Judge that is set to go into effect on Thursday, July 13. Nonparty Lyft, Inc. ("Lyft") hereby objects to and seeks *de novo* determination of one portion of the Magistrate Judge's July 7, 2017 Order Regarding Lyft-Related Documents ("Discovery Order"). Lyft respectfully seeks the Court's review of the portion of the Discovery Order that requires Plaintiff Waymo LLC ("Waymo") to produce to Lyft's primary rival, and the alleged perpetrator of a scheme to misappropriate a competitor's trade secrets, Uber Technologies, Inc. ("Uber"), confidential deal documents relating to a collaboration between Waymo and Lyft that are subject to the terms of a mutual non-disclosure agreement. In light of the sensitivity and undisputed confidential nature of this information, Lyft further requests an immediate stay of the Magistrate Judge's Discovery Order while the instant request is adjudicated.

The document requests at issue are Request Nos. 149-153 served by Uber on Waymo. These requests arise from a May 14, 2017 press report that announced that Waymo and Lyft have entered into a collaboration related to self-driving cars.[1] The details of the collaboration have not been disclosed, even within Lyft, and the discussions between Lyft and Waymo occurred under a mutual non-disclosure agreement. (ECF No. 646-2 ¶¶ 3-4.) Just days after the announcement of the deal, Uber served a document subpoena and a deposition subpoena on nonparty Lyft, and simultaneously served a nearly identical set of requests for production on Waymo. These document requests sought, among other things, copies of the Lyft/Waymo agreements, term sheets and/or letters of intent, and all "due diligence" documents relating to the deal. (ECF No. 688-7.)

The Magistrate quashed the subpoenas served on Lyft, finding that Uber failed to show that it has a "substantial need for the requested information . . . that outweighs the confidential and commercial nature of the information requested." (*See* ECF No. 832 at 6.) However, the Magistrate ordered Waymo to produce copies of the Lyft/Waymo agreements, term sheets and/or letters of intent, and all "due diligence" documents (Request Nos. 149-153) relating to the deal.

---

[1] *See* Mike Isaac, *Lyft and Waymo Reach Deal to Collaborate on Self-Driving Cars*, N.Y. Times (May 14, 2017), https://www.nytimes.com/2017/05/14/technology/lyft-waymo-self-driving-cars.html.

Lyft does not challenge the Magistrate Judge's Discovery Order as it relates to the subpoenas served on Lyft, and it appreciates the relief from the burden of producing internal documents and a deposition witness, but Lyft respectfully contends that the Magistrate Judge's order fails to apply the correct legal standard regarding Request Nos. 149-153 aimed at Waymo. Thus, Lyft respectfully requests that the Magistrate's rulings on Request Nos. 149-153 be set aside.

Lyft raises two objections. ***First***, in analyzing whether the documents at issue ought to be produced, the Magistrate Judge focused exclusively on relevance, and did not analyze whether Uber had demonstrated that the disclosure of the documents is "necessary"—i.e., that Uber has a need for the documents that outweighs the potential harm to Lyft and Waymo that will be caused by the disclosure of this confidential information to a direct competitor. It is undisputed that the documents in question are confidential and contain commercially-sensitive information. It is also undisputed that Lyft and Uber are direct rivals in the ride sharing business in the United States. Lyft has kept the information about its collaboration with Waymo confidential, even within the company, and it would suffer harm if information about the collaboration were to be disclosed to Lyft's primary domestic competitor or its counsel. Lyft is also concerned that this case appears bound for a highly-publicized trial and it would not want confidential information about its collaboration with Waymo disclosed in any way during that trial. Given the confidentiality of the documents at issue, the Magistrate's relevance analysis, which was void of any discussion of "necessity," failed to apply the correct legal standard. ***Second***, the Magistrate Judge erred in finding that Requests Nos. 149-153 are narrowly tailored. Lyft respectfully asserts they are overbroad and *not* narrowly tailored.

For these reasons, the Magistrate Judge's rulings in the Discovery Order on Uber's Requests For Production Nos. 149-153 should be set aside. In the alternative, if the Court wishes to hear further briefing on this question, Lyft respectfully requests a stay of the July 13 production deadline for Waymo in the July 7, 2017 Discovery Order.

## II. RELEVANT BACKGROUND

On May 19, 2017, Uber served Lyft with a non-party deposition subpoena and a *subpoena duces tecum* for the production of documents. (ECF No. 646-1, Exs. A, B.) Simultaneously, Uber

served Waymo with a nearly identical set of Requests for Production, represented at Request Nos. 147-156.  (*See* ECF No. 688-7.)  Relevant here are Request Nos. 149-153, in which Uber has sought:

- All agreements (including exhibits) with Waymo regarding autonomous vehicles, including the "deal" between Waymo and Lyft identified in the May 14, 2017 *New York Times* article titled 'Lyft and Waymo Reach Deal to Collaborate on Self-Driving Cars' (Request No. 149);

- Any letter of intent or interest relating to the "deal" between Waymo and Lyft identified in the May 14, 2017 *New York Times* article (Request No. 150);

- Any term sheet relating to the "deal" between Waymo and Lyft identified in the May 14, 2017 *New York Times* article (Request No. 151);

- Any definitive agreement relating to the "deal" between Waymo and Lyft identified in the May 14, 2017 *New York Times* article (Request No. 152); and,

- Any analysis or due diligence relating to the "deal" between Waymo and Lyft identified in the May 14, 2017 *New York Times* article (Request No. 153).

Following a series of meet and confers between Lyft and Uber through their counsel of record, and with the permission of the Special Master, Lyft filed a Motion for Protective Order and to Quash on June 16, 2017.  (ECF No. 646.)  Five days later, on June 21, 2017, Uber moved to compel responses to these requests served on Waymo.  (ECF No. 687.)  After both motions were fully briefed, the Magistrate Judge issued a joint order on the motions on July 7, 2017.  (ECF No. 832.)  The Discovery Order quashed the subpoenas served on Lyft in their entirety.  In reaching this ruling, the Magistrate Judge relied on long-standing Ninth Circuit precedent holding that greater restrictions on discovery are permissible where the discovery target is a nonparty to the litigation.  *See Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted . . . the 'necessary' restriction may be broader when a nonparty is the target of discovery.").  With this standard in mind, the Magistrate found that Uber did "not adequately explain how they have a substantial need for the requested information . . . that outweighs the confidential and commercial nature of the information requested."  (ECF No. 832 at 6.)

While Lyft appreciates and agrees with the Court's ruling quashing the subpoenas served on Lyft, the Discovery Order nevertheless ordered that Waymo produce documents related to the

-3-
NON-PARTY LYFT, INC.'S OBJECTION AND REQUEST FOR A STAY OF MAGISTRATE JUDGE'S JULY 7, 2017 DISCOVERY ORDER; CASE NO. 3:17-CV-00939-WHA

Lyft collaboration that are responsive to Requests Nos. 149-153, finding that the information sought via these requests is "relevant to Plaintiff's claim of damages, at least as to the amount of any such damages," and "also relevant to Plaintiff's request for permanent injunctive relief." (ECF No. 832 at 3.)  The Magistrate further ordered that the documents be produced on an "outside attorneys' eyes only basis." (*Id.*)

The Discovery Order set July 11, 2017 as the deadline to file any objection. (*Id.* at 6.)

## III. LEGAL STANDARD

This Court may reconsider any pretrial matter referred to a magistrate when "the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); Civ. L.R. 72-2; *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991). When reviewing a non-dispositive order, "[t]he magistrate's factual determinations are reviewed for clear error," and the district court should set aside those factual determinations if it is left with a "definite and firm conviction that a mistake has been committed." *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010). "The magistrate's legal conclusions are reviewed de novo to determine whether they are contrary to law." *Id.* The "clearly erroneous" standard is met where the magistrate judge (1) failed to "apply the correct legal standard"; (2) "misapprehended the underlying substantive law"; or (3) rested the decision "on a clearly erroneous finding of a material fact." *Hunt v. NBC*, 872 F.2d 289, 292 (9th Cir. 1989); *see also Cohen v. Trump*, No. 10-cv-0940-GPC-WVG, 2015 WL 3966140, at *1 (S.D. Cal. June 30, 2015).

## IV. ARGUMENT

### A. The Discovery Order Should Be Set Aside Because It Requires the Disclosure of Confidential Commercial Information That Uber Has Not Demonstrated Is Necessary to the Case.

It is undisputed that the Lyft/Waymo documents requested by Uber are confidential and commercially sensitive. The Discovery Order itself implicitly recognizes the sensitivity of these documents insofar as the Magistrate Judge ruled that they be produced on an "outside attorneys' eyes only basis." (ECF No. 832 at 3.) Because the commercially sensitive nature of these documents is undisputed, the burden falls on Uber to show the information sought is "necessary" to the defense of its case and that its need outweighs the harm of disclosing this information—a

-4-

high burden when disclosure is to a direct competitor.  *Hartley Pen Co. v. U.S. Dist. Court*, 287 F.2d 324, 330 (9th Cir. 1961)  ("The courts have generally recognized . . . that a disclosure of [confidential information] will be required only where such disclosure is *relevant and necessary* to the prosecution or defense of a particular case.") (emphasis added); *Edwards v. Cal. Dairies, Inc.*, No. 1:14-mc-00007-SAB, 2014 WL 2465934, at *5 (E.D. Cal. June 2, 2014) (quoting *Nat'l Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 681 (C.D. Cal. 2009) (before ordering disclosure of confidential information, party seeking disclosure must show "the information is relevant to the subject matter of the lawsuit *and is necessary* to prepare the case for trial.") (emphasis added); *see also Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) ("Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor."); *Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 7 (D.D.C. 2006) (courts "presume[] that disclosure to a competitor is more harmful than disclosure to a noncompetitor") (citations omitted).

Uber made no showing of necessity regarding Request Nos. 149-153, and the Discovery Order therefore is clearly erroneous in that the Magistrate failed to apply the correct legal standard in ordering that the documents be produced.  *See also Frank Brunckhorst, LLC v. Ihm*, No. 11CV1883-CAB (KSC), 2012 WL 12868292, at *6 (S.D. Cal. Sept. 26, 2012) (under Rule 26(c)(1)(G) the party seeking discovery must show that the information "is relevant to the subject matter of the lawsuit *and* is necessary to prepare the case for trial.") (emphasis added) (citing *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir. 1991) ("If the party seeking discovery fails to show *both* the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted") (emphasis added).

This error is evident from the Discovery Order itself, which finds that the documents in question might be *relevant*, but does not find that the information sought is necessary to Uber's preparation of its case. (*See* ECF No. 832 at 3 ("Requests 149 to 152 seek Plaintiff's agreement to collaborate with Lyft and Request No. 153 seeks Plaintiff's due diligence documents related to the deal.  These documents are *relevant* to Plaintiff's claim of damages, at least as to the amount of any such damages. They are also *relevant* to Plaintiff's request for permanent injunctive

relief.") (emphasis added).)  Uber provided no basis upon which the Magistrate Judge could have made any finding on the issue of necessity because it, too, focused singularly on the potential relevance of the documents.[2]  (*See id.* at 5 ("The *relevance* of the Waymo/Lyft deal is obvious") (emphasis added).)  In light of the confidential nature of the documents, it was error for the Magistrate Judge to order the documents produced without first holding Uber to the requisite burden of proof, particularly given the substantial harm to Lyft of disclosure of this confidential deal information to a direct competitor.  *Edwards*, 2014 WL 2465934, at *6; *In re Remington Arms Co.*, 952 F.2d at 1033 ("Discovery should be denied unless [plaintiff] establishes the relevance of the [confidential information] to his case, demonstrates a true need for the information, and shows that the potential harm to [defendant] is outweighed by [plaintiff's] need for discovery.").

This error is underscored by Waymo's apparent agreement to produce its "business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and investment plans for its ride-sharing business, including projections for revenue generation and profitability."  (ECF No. 832 at 3 (citing Uber's Request for Production No. 93).)  Waymo also apparently agreed to produce "documents showing the valuations of Project Chauffeur/Waymo."  (ECF No. 746-2 (citing 688-5, Waymo's Response to Request for Production No. 69).)  The Magistrate Judge found that Waymo's production of these and other documents "does not make the Lyft deal irrelevant."  (ECF No. 832 at 3.)  But the pertinent inquiry is not one merely of relevance—it also is one of "necessity" that factors in the harm of the disclosure.  *See Edwards*, 2014 WL 2465934, at *5 ("Whether the information sought is necessary to the case is satisfied where the party's claim or defense virtually rises or falls with the admission or exclusion of the proffered evidence.") (internal quotations omitted); *cf. Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed.

---

[2] Lyft maintains its objection that the documents requested by Uber are *not* relevant to the preparation of its case, and that any marginal relevance is significantly outweighed by the risk of harm caused by the disclosure of the documents.  In further support of the lack of relevance of the documents sought is Uber's most recent filing setting forth "[a] list of all events occurring after the commencement of this civil action that [Uber] plans to present in its case in chief at trial." (ECF No. 854 at 1.)  Nowhere within this pleading does Uber list or even mention the Lyft/Waymo collaboration.  Since Uber apparently does not intend to rely on the collaboration at trial, the information is not relevant—much less necessary—to Uber's defense.

Cir. 1990) ("*Even if relevant*, discovery is not permitted . . . where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.") (italics in original).  The Magistrate Judge's focus on the relevancy of the documents, rather than on their necessity, misapplied the appropriate legal standard, and for this reason alone, the Discovery Order should be set aside.

      Equally as important, given that Waymo agreed to produce its plans and projections as well as its valuation of the Lyft collaboration, the Discovery Order fails to assess why the Lyft/Waymo deal documents would not be "unreasonably cumulative or duplicative" of that information pursuant to Rule 26(b)(2)(C).  There is no need to compel Waymo to turn over the confidential agreements it entered into with nonparty Lyft—Uber's primary rival in the United States—and related due diligence if the damages information Uber seeks is available through another source that could be produced without the corresponding harm to Lyft.  Uber should not be permitted to use this litigation as means of sifting through its competitors' confidential business agreements, particularly where there are other mechanisms by which Uber may obtain any relevant information it seeks, and more so where Uber has failed to establish the requisite showing of need.  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (instructing courts to balance conflicting interests, such as the risk of inadvertent disclosure of confidential information to competitors against the risk that protection of confidential information would impair the ability of the party seeking disclosure to defend its claims).

      Lyft has serious concerns about its most confidential business documents falling into the hands of its primary ride-sharing rival.  This information is so sensitive that Lyft has controlled its dissemination even within Lyft.  (ECF No. 646-2 ¶¶ 3-4.)  It is not a sufficient buttress against that harm for the documents to be produced on an "outside counsel only" basis.  *See Convolve, Inc. v. Dell, Inc.*, No. C 10-80071 WHA, 2011 WL 1766486 at *2 ("The subpoena calls for confidential technology . . . While a protective order would restrict access to some extent, it would still allow access by counsel, legal assistants, experts, their assistants, the jury, and court staff . . . [the non-party] should not have to suffer such disclosure without a clear-cut need and a subpoena narrowly drawn to meet that need."); *Brown Bag Software*, 960 F.2d at 1471 (finding only outside

consultant, and not in-house counsel, could review confidential information at issue).  To that end, Lyft is worried that these documents could end up as part of a highly-publicized trial and thus could lose all confidentiality protection.  There is no showing of necessity as required by law, and Lyft respectfully requests that the Discovery Order be overturned to prevent harm to Lyft.

### B. The Discovery Order Should Also Be Set Aside Because the Information Uber Seeks Is Available Through Less Intrusive Means.

The Discovery Order should further be set aside because the information Uber has requested can be provided through less intrusive means.  The Federal Rules generally allow for broad discovery, but district courts have equally broad discretion to limit discovery where it "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Crawford–El v. Britton*, 523 U.S. 574, 598 (1998) (trial court has "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"); *In re Sealed Case (Med. Records)*, 381 F.3d 1205, 1215 (D.C. Cir. 2004) (citing the advisory committee's notes to Rule 26 and finding that "the last sentence of Rule 26(b)(1) was added in 2000 'to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery'").

Uber seeks all agreements, letters of intent, term sheets, and "due diligence" relating to Waymo and Lyft's deal, arguing that these documents are relevant to "(1) the valuation of self-driving technology for purposes of analyzing damages," and "(2) the appropriateness of injunctive relief, given Waymo's assertions that Uber has negatively impacted Waymo's first-mover advantage."  (ECF No. 687 at 5-6.)  The Magistrate Judge found "[t]hese documents are relevant to Plaintiff's claim of damages, at least as to the amount of any such damages. They are also relevant to Plaintiff's request for permanent injunctive relief."  (ECF No. 832 at 3.)  By so ruling, the Discovery Order implicitly finds that the Lyft/Waymo agreement and/or the diligence documents contain a "valuation" of Waymo's self-driving technology.  This is utterly speculative, but even if it is true, that information is discoverable without having to turn over the deal documents themselves.  For example, if Uber is truly interested in obtaining only the damages-related information it has identified as relevant, then it could serve a narrow interrogatory on

1  Waymo. *See UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, No. CV-14-3466-MMM
2  (JPRx), 2014 WL 12639323, at *3 (C.D. Cal. Dec. 19, 2014) ("Defendants are correct that a mere
3  recitation of dates is better obtained through an interrogatory or some other less intrusive
4  means."). It is wholly unnecessary that Uber, or its counsel, be permitted access to the entire
5  "treasure trove" of deal documents. *See Bernstein v. Mafcote*, *Inc.*, No. 3:12CV311 (WWE), 2014
6  WL 3579494, at *3 (D. Conn. July 21, 2014) ("The Court rejects these arguments as there are less
7  intrusive discovery mechanisms at defendant's disposal to obtain this information, including, for
8  example, . . . interrogatories."); *see also Music Grp. Macao Commercial Offshore Ltd. v. Foote*,
9  No. 14-cv-03078-JSC, 2015 WL 2170121, at *3 (N.D. Cal. May 8, 2015) ("[T]here is no
10 compelling need to produce the entire employment agreement, as Defendant has not met his
11 burden of establishing that the entire document is relevant and there is no less intrusive means of
12 obtaining the information."); *Echostar Satellite LLC v. Freetech Inc.*, No. C 07-6124 JW (RS),
13 2008 WL 4460236, at *2 (N.D. Cal. Sept. 29, 2008) (denying discovery where "[Plaintiff] has
14 several alternative, less intrusive means to obtain evidence regarding its . . . claims.").

15       For this reason, the Discovery Order should be set aside or, at a minimum, revised to
16 establish certain restrictions on Uber's access to these documents, such as by permitting sensible
17 redactions. *See* Fed. R. Civ. Proc. 26(c)(1) & (G) ("The court may, for good cause, issue an order
18 . . . requiring that . . . [confidential information] not be revealed or be revealed only in a specified
19 way").

20 **V.  CONCLUSION**

21       For the foregoing reasons, Lyft respectfully requests that the Court set aside the Discovery
22 Order as related to Uber's Document Request Nos. 149-153, and issue a stay while the instant
23 request is under consideration.

24 DATED: July 11, 2017　　　　　　　　MUNGER, TOLLES & OLSON LLP
25 　　　　　　　　　　　　　　　　　　　　　　CAROLYN HOECKER LUEDTKE
　　　　　　　　　　　　　　　　　　　　　　MARJA-LIISA OVERBECK
26
27 　　　　　　　　　　　　　　　　　By:　*/s Carolyn Hoecker Luedtke*
　　　　　　　　　　　　　　　　　　　　CAROLYN HOECKER LUEDTKE
28 　　　　　　　　　　　　　　　　　Attorneys for Non-Party Lyft, Inc.