1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  ERIC A. TATE (CA SBN 178719)
   ETate@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California  94105-2482
   Telephone:    415.268.7000
6  Facsimile:    415.268.7522

7  KAREN L. DUNN (*Pro Hac Vice*)
   kdunn@bsfllp.com
8  HAMISH P.M. HUME (*Pro Hac Vice*)
   hhume@bsfllp.com
9  BOIES SCHILLER FLEXNER LLP
   1401 New York Avenue, N.W.
10 Washington DC  20005
   Telephone:    202.237.2727
11 Facsimile:    202.237.6131

12 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.
13 and OTTOMOTTO LLC

14                UNITED STATES DISTRICT COURT

15                NORTHERN DISTRICT OF CALIFORNIA

16                     SAN FRANCISCO DIVISION

17 | WAYMO LLC,                                  | Case No.    3:17-cv-00939-WHA
18 |              Plaintiff,                     | **DECLARATION OF MAXWELL V. PRITT IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC.'S AND OTTOMOTTO, LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**
19 |        v.                                   |
20 | UBER TECHNOLOGIES, INC.,                    |
   | OTTOMOTTO LLC; OTTO TRUCKING LLC,           |
21 |                                             |
   |              Defendants.                    |
22 |                                             |
23 |                                             | Judge:  Hon. Jacqueline Scott Corley
   |                                             | Trial Date: October 10, 2017

I, Maxwell Pritt, declare as follows:

1. I am counsel at the law firm of Boies Schiller Flexner LLP representing Defendants Uber Technologies Inc. and OttoMotto LLC (collectively, "Uber") in this matter. I am a member in good standing of the Bar of the State of California. I make this declaration in support of Uber's Motion to Compel Production of Documents in response to Uber's Requests for Production Sets One and Two. I make this declaration based upon matters within my own personal knowledge and if called as a witness, I could and would competently testify to the matters set forth herein.

2. Attached as **Exhibit 1** is a true and correct copy of Plaintiff Waymo LLC's ("Waymo's) Objections and Responses to Uber's First Set of Requests for Production of Documents (Nos. 1-149).

3. Attached as **Exhibit 2** is a true and correct copy of Waymo's Responses and Objections to Uber's Second Set of Requests for Production of Documents (Nos. 147-162).

4. Attached as **Exhibit 3** is a true and correct copy of an email chain between Uber counsel Edward Takashima, Waymo counsel Andrea Roberts, and Special Master John Cooper (the "Special Master") dated between June 30 and July 5, 2017, meeting and conferring on issues raised by Uber concerning Waymo's responses to Uber's first and second sets of Requests for Production of Documents ("RFPs"), including RFP Nos. 46, 63, 66, 119, 121, and 122, and whether Waymo was relying on its general objection to Uber's definition of "Waymo," "Plaintiff," "You," and "Your," to exclude responsive documents and information at Google or Alphabet.

5. The parties met and conferred by phone with the Special Master on July 1, 2017, to discuss the issues raised in Mr. Takashima's June 30 email and others, including whether Waymo was relying on its general objection to Uber's definition of "Waymo," "Plaintiff," "You," and "Your," to exclude searching for or producing responsive documents at Google or Alphabet (collectively, "Google").

6. The parties met and conferred by phone with the Special Master again on July 5, 2017, to continue discussing issues concerning Waymo's objections and responses to Uber's first

and second sets of RFPs.  During the call, I informed the Special Master that the parties were at an impasse over Waymo's objections to RFP Nos. 46, 63, 66, 119, 121, and 122.  I also requested, and the Special Master directed, that Waymo provide Uber with a list of the RFPs for which it applied its general objection to Uber's definition of "Waymo," "Plaintiff," "You," and "Your," and for which Waymo refused to search for or produce responsive documents at Google.

7. The next day, on July 6, 2017, the parties again met and conferred by phone with the Special Master to continue discussing Waymo's objections and responses to Uber's first and second sets of RFPs.  I again asked Waymo's counsel to provide Uber with a list of the RFPs for which it applied its general objection to Uber's definition of "Waymo," "Plaintiff," "You," and "Your," and for which Waymo refused to search for or produce responsive documents at Google. Waymo's counsel said on the call that Waymo would try to get back to Uber by 4:00 p.m. that same day with the list of Uber's RFPs for which Waymo had selectively applied its general objection and interpreted "You" or "Waymo" to mean Waymo only (and not to include Google), and for which Waymo limited its search to Waymo documents and excluded Google documents. I also asked, and the Special Master directed, Waymo to provide a list of any of the non-custodial sources it identified on July 3, 2017, that it limited to sources at Waymo and had excluded Google sources.

8. Attached as **Exhibit 4** is a true and correct copy of an email chain between Waymo counsel Andrea Roberts, myself, and the Special Master, among others, dated July 6 and 7, 2017, concerning Waymo's responses to Uber's RFP Nos. 54 and 119, among other things.

9. Attached as **Exhibit 5** is a true and correct copy of emails between Waymo counsel Jeff Nardinelli, myself, and the Special Master, among others, dated July 6, 2017, in which Mr. Nardinelli wrote he would provide the list of RFPs Uber had been requested on July 7, 2017.  Mr. Nardinelli was not on the June 30, July 1, July 5, or July 6 meet and confer calls with the Special Master.  I explained again in response to Mr. Nardinelli's email to the Special Master and counsel that Uber requested a list of Uber's RFPs for which Waymo had applied its general objection and interpreted "You" or "Waymo" to mean Waymo only (and not to include Google), and for which Waymo limited its search to Waymo documents and excluded Google documents.

I also asked if Waymo would withdraw any limitations it had imposed in connection with its general objection in light of the Court's June 6, 2017 order denying Uber's motion to produce documents showing the interrelationship between Waymo and Google based on the "understand[ing] that Waymo has represented that it will not object to any discovery request on the grounds that the responsive documents are in the possession, custody or control of Google or Alphabet."

10. Attached as **Exhibit 6** is an email chain dated July 7, 2017, regarding a meet and confer with the Special Master scheduled for later that day, in which I again reiterated my request that Waymo provide a list of Uber's RFPs for which Waymo applied its general objection to exclude Google and for which Waymo limited its search to Waymo documents and excluded Google documents.

11. The parties met and conferred by phone with the Special Master again on July 7, 2017. I informed the Special Master that Waymo still had not provided the list Uber and the Special Master requested, and had been promised, days earlier. Waymo counsel Jeff Nardinelli stated that Waymo had not refused to produce responsive Google documents. I pointed out that representation was false because, as an example, Waymo responded to Uber's RFP 95 that it did not have responsive documents despite the fact that Waymo counsel Andrea Roberts did not dispute on the parties' July 6, 2017 meet and confer that Google had responsive documents. Mr. Nardinelli responded, "good" or "fair point." Mr. Nardinelli then stated that Waymo had applied its general objection and refused to produce responsive Google documents when Waymo decided it did not need to search for Google documents due to relevance, burden, overbreadth, or similar objections. I reiterated my request, and the special Master reiterated his direction, that Waymo give Uber a list identifying (1) the RFPs to which Waymo applied its general objection to the definition of "Waymo," "Plaintiff," "You," and "Your" to mean Waymo only (and not Google); (2) the RFPs for which Waymo limited its search to only Waymo personnel and documents (and not Google), along with the reasons for Waymo's limitation; and (3) whether Waymo limited any non-custodial sources it identified on July 3 to sources at Waymo only and excluded any similar sources at Google.

12. Attached as **Exhibit 7** is a true and correct copy of an email chain between Mr. Nardinelli, myself, and the Special Master, among others, dated July 6 and 7, 2017, in which Mr. Nardinelli wrote that Waymo would "provide a list of the RFPs for which we limited our search to only Waymo personnel and documents, along with the reasons for our limitation" by "EOB Monday," July 10. I responded and again reiterated that what Uber requested, and the Special Master directed, was for Waymo to provide a list identifying (1) the RFPs to which Waymo applied its general objection to the definition of "Waymo," "Plaintiff," "You," and "Your" to mean Waymo only (and not Google); (2) the RFPs for which Waymo limited its search to only Waymo personnel and documents (and not Google personnel and documents), along with the reasons for Waymo's limitation; and (3) whether Waymo limited any non-custodial sources it identified on July 3 to sources at Waymo only and excluded any similar sources at Google. I also requested that Waymo provide this information no later than the morning of July 10 so that the parties could discuss whether they were at an impasse on this issue during a met and confer that had been scheduled with the Special Master at 1:00 p.m. on July 10. Waymo's counsel did not respond.

13. Attached as **Exhibit 8** is a true and correct copy of an email from Ms. Roberts to myself, the Special Master, and others dated July 10, 2017, concerning Uber's RFP Nos. 53 and 119.

14. The parties and the Special Master conferred again on July 10, 2017. I identified on the call that the parties were at an impasse on Waymo's objections and responses to Uber's RFP Nos. 46, 53, 63, 66, 119, 121, and 122, and Waymo's unidentified, selective application of its general objection to Uber's definition of "Waymo," "Plaintiff," "You," and "Your" to mean Waymo personnel and documents only, and refusal to search for and produce responsive Google documents. I explained that Waymo's failure to describe this selective approach in its objections to Uber's requests, and its failure to identify in its responses any of the requests for which it had imposed this limitation waived any objection or limitation on these grounds. Waymo counsel Andrea Roberts then stated, for the first time, that when Waymo referred to "Waymo" in its responses, it included "Google's self-driving car program." Ms. Roberts also said Waymo would

4

provide the list of requests to which they applied this new definition by close of business on July 10. The Special Master agreed these issues were at an impasse and said he would inform Judge Corley. The parties compromised on some requests and are in the process of meeting and confer on others.

15. Attached as **Exhibit 9** is a true and correct copy of an email from Mr. Nardinelli to myself, the Special Master, and others dated July 10, 2017, defining "Waymo" as "Google's self-driving car program, from its inception as Project Chauffeur to its current incarnation," and listing more than 73 RFPs for which "Waymo applied its general objection to the definition of 'Waymo,' meaning Waymo did not search custodians and/or sources beyond" Waymo, *i.e.*, Google's self-driving car program.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 11th day of July, 2017, in Oakland, California.

*/s/ Maxwell V. Pritt*
Maxwell V. Pritt

**ATTESTATION OF E-FILED SIGNATURE**

I, Karen L. Dunn, am the ECF User whose ID and password are being used to file this Declaration. In compliance with General Order 45, X.B., I hereby attest that Maxwell V. Pritt has concurred in this filing.

*/s/ Karen L. Dunn*
Karen L. Dunn