# EXHIBIT 4

| | |
|---|---|
| **From:** | Maxwell Pritt |
| **Sent:** | Friday, July 07, 2017 8:40 AM |
| **To:** | Andrea P Roberts; UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; DG-GP Otto Trucking Waymo; John Cooper (JCooper@fbm.com); Matthew Cate (MCate@fbm.com) |
| **Cc:** | QE-Waymo |
| **Subject:** | RE: Waymo v. Uber Meet and Confer Follow Up |

Hi Andrea,

Regarding RFP 54, first, we understand from yesterday's meet and confer you've agreed to produce all versions of the template agreements. Second, thank you for confirming that "generally employees do not negotiate terms that differ from those in the template agreement." However, when you refer to employees, are you referring to Waymo and Google/Alphabet employees? Also, does "generally" mean there in fact are employees who have negotiated different terms? If so, please confirm that you will identify and produce those employees' agreements as well.

Regarding RFP 119, you asked "why Uber needs to know which suppliers, vendors, and customers, signed the various templates," and why production of template agreements does not "show all confidentiality and/or non-disclosure agreements Waymo has or has had with its vendors, suppliers, and customers, from 2009 to the present," which is what the requests seeks. You also said there "is not an easy way to provide an answer" to which of Waymo's vendors, suppliers, and customer's signed which template agreements, because "[d]oing so would require searching for and collecting each and every agreement for the 150 suppliers, vendors, and customers identified on the list we produced, which is a time-consuming, manual process."

To being with, we do not understand why it would burdensome to produce NDAs for vendors, suppliers, and customers, even assuming those NDAs are not already located in a centralized database or location. Pulling 150 or so NDAs for entities Waymo does business with does not seem like it would be time-consuming or burdensome. Unless you can demonstrate why producing these NDAs would be so difficult, please confirm you will produce them immediately.

Moreover, Waymo's efforts to protect its alleged trade secrets are central to Waymo's trade secret claims. Uber therefore is entitled to discover Waymo's efforts to protect its alleged secrets in its dealings with vendors, suppliers, and customers. That discovery includes the extent to which Waymo safeguarded its trade secrets in its dealing with each of its vendors, suppliers, and customers. Such discovery is necessary to show, for example, the extent to which Waymo sought to protect its alleged trade secrets when dealing with third parties.

Finally, please confirm that WAYMO-UBER-00000574 is the complete "list of suppliers, vendors, and customers" you produced. We have been unable to locate any other list. Since this document only has a single column titled "Supplier Name" and then a list of entities, please let us know which entities on the list are suppliers, which entities are vendors, and which entities are customers.

Best,
Max

**From:** Andrea P Roberts [mailto:andreaproberts@quinnemanuel.com]
**Sent:** Thursday, July 06, 2017 8:37 PM
**To:** UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; DG-GP Otto Trucking Waymo; John Cooper (JCooper@fbm.com); Matthew Cate (MCate@fbm.com)

1

**Cc:** QE-Waymo
**Subject:** Waymo v. Uber Meet and Confer Follow Up

Max,

I write to follow up on a couple of the RFPs we discussed today and issues that you raised.

With respect to RFP 54, on today's call, you asked if employees make changes to the templates for employment and confidentiality agreements.  We've confirmed that generally employees do not negotiate terms that differ from those in the template agreements.

With respect to RFP 119, you asked if Waymo would identify which of the suppliers, vendors, and customers signed each of the template agreements that we produce.  There is not an easy way to provide that answer.  Doing so would require searching for and collecting each and every agreement for the 150 suppliers, vendors, and customers identified on the list we produced, which is a time-consuming, manual process.  Can you explain why Uber needs to know which suppliers, vendors, and customers, signed each of the various templates?  If Uber contends that the production of template agreements is an insufficient response to Uber's request (seeking "Documents sufficient to show all confidentiality and/or non-disclosure agreements Waymo has or has had with its vendors, suppliers, and customers, from 2009 to the present"), please explain why.  To the extent Uber wants our position with respect to RFP 119 during tomorrow's meet and confer, we'd appreciate a response to this question in advance of the meet and confer.

Additionally, we intended to get back to you today regarding whether we will produce the 14,000 stolen files, rather than make them available for inspection.   Unfortunately, largely due to today's mediation, we are unable to do so.  We will provide a response tomorrow.

Thanks,
Andrea


**Andrea Pallios Roberts**
*Of Counsel,*
Quinn Emanuel Urquhart & Sullivan, LLP

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
650-801-5023 Direct
650.801.5000 Main Office Number
650.801.5100 FAX
andreaproberts@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.