QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, | CASE NO. 3:17-cv-00939 |
| Plaintiff, | **PLAINTIFF WAYMO LLC'S MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 832)** |
| vs. | |
| UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
| Defendants. | Judge: The Honorable William Alsup |
| | Trial Date: October 10, 2017 |

Pursuant to Civil L.R. 72-2, Plaintiff Waymo LLC ("Waymo") respectfully submits these Objections to the Magistrate Judge's Order Regarding Lyft-Related Documents. (Dkt. 832.) Waymo objects to the Court's Order requiring production of documents responsive to Request Nos. 149-153, and 156. Waymo further respectfully requests that the Court stay the portions of the Order relating to these Requests until the Court rules on these objections and all appeals are resolved.

## I.   REQUEST FOR A STAY

Magistrate Judge Corley's underlying Order (Dkt. 832) requires Waymo to produce the documents at issue by July 13, 2017. Waymo requests that the Court stay Judge Corley's Order as it relates to Request Nos. 149-153 and 156, until the Court rules on these objections and all appeals are resolved.[1]

## II.   THE MAGISTRATE ERRED IN RULING THAT DOCUMENTS RESPONSIVE TO REQUEST NOS. 149-153 AND 156 SHOULD BE PRODUCED.

The Magistrate erred in ruling that Waymo should produce documents responsive to Request Nos. 149-153 and 156. These Requests seek information relating to the recent announcement of a collaboration between Waymo and Uber-rival Lyft. The terms of that agreement are extremely confidential and have not been publicly disclosed by Waymo or Lyft. In the Order below, Magistrate Judge Corley focused on the purported relevance of the documents Uber seeks, but took inconsistent positions with respect to Waymo and Lyft's production of these documents. With respect to Waymo, the Court stated: "that the documents are commercially sensitive does not make them non-discoverable." (Dkt. 832 at 3.) But, with respect to Lyft, the Court stated: "Defendants' suggestion that the protective order covering this case ameliorates any confidentiality concerns . . . is unavailing." (*Id.* at 5.) Initially, it is not Waymo's position that the mere commercial "sensitivity" of these documents warrants non-production. Rather, Waymo showed below that the requested documents are not relevant and Uber does not need them beyond the documents Waymo already agreed to produce.

---

[1] Stays of prior Orders from Magistrate Judge Corley granting motions to compel pending appeals were issued, over Waymo's objection.

But, in any event, requiring Waymo to produce the requested documents would undermine the confidentiality concerns that the Court recognized with respect to Lyft. Ordering production by Waymo effectively undoes the Court's finding as to confidentiality with respect to Lyft.

Further, as Waymo showed below, the minimal relevance of these documents is not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). Waymo already agreed to produce documents directed at the issues Uber claims the Lyft documents are relevant to, thus Uber does not need these additional, highly confidential documents relating to a collaboration between Uber's competitors.

For example, Uber argued that information about the Lyft deal "appear[s] at least relevant to (1) the valuation of self-driving technology for purposes of analyzing damages." (Dkt. 687 at 5.) Uber did not present any basis to believe that a collaboration between two companies would involve a valuation. Uber's Lyft-related document requests do not even specifically ask for such valuations. In fact, they go well beyond the scope of being limited to valuations, seeking agreements between Waymo and Lyft, letters of intent, term sheets, and analysis and due diligence relating to the deal.

Further, Uber argued that its requests go to "the appropriateness of injunctive relief, given Waymo's assertions that Uber has negatively impacted Waymo's first-mover advantage." (Dkt. 687 at 5-6.) As Waymo explained in opposition to Uber's motion to compel, however, the Lyft deal does not affect and is not relevant to Waymo's first-mover advantage. Uber eroded Waymo's technical lead by stealing trade secrets to accomplish in months what took Waymo "sustained effort over many years." (Dkt. 23 (Complaint) at 5 ¶ 10.) The extent of Uber's improper acceleration of its program is not impacted by the nature of Waymo's deal with Lyft. And again, Uber need not look to Lyft-related documents for irreparable-harm discovery because Waymo already agreed to provide it. (*See* Dkt. 688-5, Response to RFP Nos. 89 (agreeing to produce "all documents on which Waymo intends to rely to demonstrate that it will suffer irreparable harm"); 90-97 (agreeing to produce documents concerning its business plans, forecasts, and analyses and competition and barriers to entry, documents which

include discussion and analysis of the first-mover advantage)).  The Court dismissed these other Requests, saying that Uber is entitled to develop its own defense and "need not rely solely on what [Waymo] contends is relevant."  (Dkt. 832 at 3.)  But the documents Waymo already agreed to produce are not solely limited to "what [Waymo] contends is relevant."  (*Id.*)  They are documents that are responsive to Uber's document requests.  Request Nos. 90-97 in particular seek broad categories of documents relating to this topic; they are not limited to "what [Waymo] contends is relevant."  (*Id.*)  In the Order, the Court only addressed Request Nos. 89 and 93, and ignored Waymo's agreement to produce documents responsive to Request Nos. 90-92 and 94-97.  Uber simply does not need documents relating to the Lyft deal in addition to the documents Waymo agreed to produce in response to Request Nos. 89-97.

Moreover, Uber argued that its requests go to "industry practice regarding and knowledge about self-driving technology." (Dkt. 687 at 6.)  As Waymo argued in its opposition to Uber's motion to compel, to the extent that Uber wants to capture any disclosure by Waymo to Lyft of trade-secret information, Waymo already agreed to produce "communications between Waymo and any third party regarding any of the Alleged Waymo Trade Secrets," whether that third party is Lyft or anyone else.  (Dkt. 688-5, Response to RFP No. 114.)  The Court did not address this Request in its Order.  (Dkt. 832.)  And, with respect to Lyft, the Court held that Uber's argument that the requested documents go to "industry practices" "does not come close to showing substantial need." (Dkt. 832 at 5.)  As the Court said:

> Lyft has demonstrated that "even if any of the purported trade secrets were exchanged, there is no question that those trade secrets were received pursuant to [the companies' non-disclosure] agreement and the other confidentiality protections that Lyft (and Waymo) put into place."  Further, the issue in this lawsuit is how [Waymo] treated its information, not how Lyft treats its information.  Under that reasoning, Defendants would be entitled to subpoena all technological companies to determine 'industry practice' in the treatment of technological information.

(*Id.* at 5.)  This analysis applies equally to the request for Lyft-related documents from Waymo purportedly to determine "industry practice."  The requested documents from Waymo are not needed to show "industry practice" any more than they would be from Lyft.

For these reasons, this Court should sustain Waymo's Objections and hold that Waymo is not required to produce documents responsive to Request Nos. 149-153 and 156.  In the alternative, the Court should narrow the scope of the documents Waymo is required to produce in response to Request Nos. 149-153, and limit them to any documents from the Lyft deal and negotiations relating to it which discuss Waymo's trade secrets at issue in this case.  This narrowed set of documents, to the extent they exist, would address the subject matter Uber purports to seek with these Requests.

DATED:  July 11, 2017                                   QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
　　Charles K. Verhoeven
　　Attorneys for WAYMO LLC