CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
carolyn.luedtke@mto.com
MARJA-LIISA OVERBECK (State Bar No. 261707)
mari.overbeck@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for Non-Party Lyft, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, <br><br> Plaintiff, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, <br><br> Defendants. | Case No. 3:17-cv-00939-WHA <br><br> **NON-PARTY LYFT, INC.'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** <br><br> Date: TBD <br> Time: TBD <br> Crtrm.: 8 – 19th Floor <br> Judge: The Hon. William H. Alsup <br><br> Trial Date: October 2, 2017 |

## I.  INTRODUCTION AND RELEVANT BACKGROUND

Non-party Lyft, Inc. ("Lyft") seeks relief from one portion of the Magistrate Judge's July 7, 2017 Order Regarding Lyft-Related Documents ("Order") that requires Plaintiff Waymo LLC ("Waymo") to produce to Lyft's primary rival, and the alleged perpetrator of a scheme to misappropriate a competitor's trade secrets, Uber Technologies, Inc. ("Uber"), confidential deal documents relating to a collaboration between Waymo and Lyft.  Specifically, Lyft objects to the ruling in the Order at page 3, line 14 to 26 and page 6, lines 10-11, excerpted below.  In light of the sensitivity and undisputed confidential nature of these documents, Lyft also requests a stay of the Magistrate's Order, which goes into effect July 13.

The document requests at issue arise from a May 14, 2017 press report that announced that Waymo and Lyft entered into a collaboration related to self-driving cars.  The details of the collaboration have not been disclosed, even within Lyft, and the discussions between Lyft and Waymo occurred under a mutual non-disclosure agreement.  (ECF No. 646-2 ¶¶ 3-4.)  Days after the announcement, Uber served a document subpoena and a deposition subpoena on Lyft (ECF No. 646-1, Exs. A, B), as well as a nearly identical set of Requests for Production on Waymo.  (*See* ECF No. 688-7.)  Relevant here are Request Nos. 149-153, in which Uber has sought:

- All agreements (including exhibits) with Waymo regarding autonomous vehicles, including the "deal" between Waymo and Lyft (Request No. 149);
- Any letter of intent or interest relating to the "deal" between Waymo and Lyft (Request No. 150);
- Any term sheet relating to the "deal" between Waymo and Lyft (Request No. 151);
- Any definitive agreement relating to the "deal" between Waymo and Lyft (Request No. 152); and,
- Any analysis or due diligence relating to the "deal" between Waymo and Lyft (Request No. 153).

The Magistrate quashed the subpoenas served on Lyft, finding that Uber failed to show that it has a "substantial need for the requested information . . . that outweighs the confidential and commercial nature of the information requested."  (ECF No. 832 at 6.)  However, the Magistrate ordered Waymo to produce documents in response to Request Nos. 149-153, finding:

> Requests 149 to 152 seek Plaintiff's agreement to collaborate with Lyft and Request No. 153 seeks Plaintiff's due diligence documents related to the deal. These documents are relevant to Plaintiff's claim of damages, at least as to the amount of any

such damages. They are also relevant to Plaintiff's request for permanent injunctive relief. The documents shall be produced on an outside attorneys' eyes only basis. Plaintiff's agreement to produce "all documents on which [it] intends to rely to demonstrate that it will suffer irreparable harm in the absence of a permanent injunction," (Request No. 89) and its "business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and investment plans for its ride-sharing business, including projections for revenue generation and profitability" (Request No. 93), does not make the Lyft deal irrelevant. Defendants are entitled to develop their own defense to Plaintiff's claims for relief and need not rely solely on what Plaintiff contends is relevant. Further, that the documents are commercially sensitive does not make them non-discoverable. Plaintiff and Lyft entered into the deal in the midst of this litigation and thus should have expected that they could become relevant.

(ECF No. 832 at 3:14-26.) Lyft appreciates, and does not challenge, the Magistrate Judge's Order as it relates to the subpoenas served on Lyft, but respectfully contends that the Order fails to apply the correct legal standard regarding Request Nos. 149-153 aimed at Waymo. Lyft raises two objections. ***First***, in analyzing whether the documents at issue ought to be produced, the Magistrate focused exclusively on relevance, and did not analyze whether Uber had demonstrated that the disclosure of the documents is "necessary." Given the confidential nature of the documents at issue, the Magistrate's relevance analysis, which was void of any discussion of "necessity," failed to apply the correct legal standard. ***Second***, the Magistrate erred in finding that Request Nos. 149-153 are narrowly tailored. Lyft respectfully asserts they are overbroad and *not* narrowly tailored, and that the rulings in the Order on Uber's Request Nos. 149-153 be set aside.

## II.   ARGUMENT

This Court may reconsider any pretrial matter referred to a magistrate when "the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" standard is met where the magistrate judge failed to "apply the correct legal standard." *Hunt v. NBC*, 872 F.2d 289, 292 (9th Cir. 1989); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991).

### A.   The Order Should Be Set Aside Because It Requires Disclosure of Confidential Commercial Information That Uber Has Not Demonstrated Is Necessary.

It is undisputed that the Lyft/Waymo deal documents are confidential and commercially sensitive. The burden therefore falls on Uber to show the information is "necessary" to the defense of its case and that its need outweighs the harm of disclosure—a high burden when, as is the case here, disclosure is to a direct competitor. *Hartley Pen Co. v. U.S. Dist. Court*, 287 F.2d 324, 330 (9th Cir. 1961) ("[D]isclosure of [confidential information] will be required only where

-2-

1  such disclosure is *relevant and necessary* to the prosecution or defense of a particular case.")
2  (emphasis added); *Edwards v. Cal. Dairies, Inc.*, No. 14-00007, 2014 WL 2465934, at *5 (E.D.
3  Cal. June 2, 2014) (quoting *Nat'l Academy of Recording Arts & Sciences, Inc. v. On Point Events,*
4  *LP*, 256 F.R.D. 678, 681 (C.D. Cal. 2009) (information sought must be relevant and "necessary to
5  prepare the case for trial."); *see also Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir.
6  1987) ("Courts have presumed that disclosure to a competitor is more harmful than disclosure to a
7  noncompetitor.").

8        The Order compelling production of the Lyft/Waymo collaboration documents is clearly
9  erroneous because the Magistrate failed to apply the correct legal standard in ordering that the
10 documents be produced.  Uber did not make the required showing of necessity regarding Request
11 Nos. 149-153 and the Magistrate, in turn, made no such finding.  *Frank Brunckhorst, LLC v. Ihm*,
12 No. 11-1883, 2012 WL 12868292, at *6 (S.D. Cal. Sept. 26, 2012) (party seeking discovery must
13 show the information "is relevant to the subject matter of the lawsuit and is necessary to prepare
14 the case for trial.") (citing *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir. 1991) ("If the
15 party seeking discovery fails to show both the relevance of the requested information and the need
16 for the material in developing its case, there is no reason for the discovery request to be granted").

17       This error is evident from the Order itself, which finds that the deal documents might be
18 *relevant*, but does not find that the information is *necessary* to Uber's preparation of its case.  (*See*
19 ECF No. 832 at 3 ("These documents are *relevant* to Plaintiff's claim of damages, at least as to the
20 amount of any such damages. They are also *relevant* to Plaintiff's request for permanent injunctive
21 relief.") (emphasis added).)[1]  It was error for the Magistrate to order the documents be produced
22 without first holding Uber to the requisite burden of proof, particularly given the substantial harm
23 to Lyft of disclosure of this confidential deal information to a direct competitor.  *In re Remington*
24 *Arms Co.*, 952 F.2d at 1033 ("Discovery should be denied unless [plaintiff] establishes the

---

[1] Lyft also maintains that the documents requested by Uber are *not* relevant to the preparation of its case.  Uber's most recent filing sets forth "[a] list of all events occurring after the commencement of this civil action that [Uber] plans to present in its case in chief at trial."  (ECF No. 854 at 1.)  Nowhere within this pleading does Uber even mention the Lyft/Waymo collaboration.  Since Uber apparently does not intend to rely on the collaboration at trial, the information is not relevant—much less necessary—to Uber's defense.

relevance of the [confidential information] to his case . . . a true need for the information, and shows that the potential harm to [defendant] is outweighed by [plaintiff's] need for discovery.").

This error is underscored by Waymo's apparent agreement to produce, among other things, its "business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and investment plans for its ride-sharing business, including projections for revenue generation and profitability." (ECF No. 832 at 3 (citing Uber's Request No. 93); *see also* ECF No. 746-2 (citing 688-5, Waymo's Response to Request No. 69 (agreeing to produce "documents showing the valuations of Project Chauffeur/Waymo.").) The Magistrate Judge found that Waymo's production of these and other documents "does not make the Lyft deal irrelevant." (ECF No. 832 at 3.) But the pertinent inquiry is not one merely of relevance—it also is one of "necessity" that factors in the harm of the disclosure. *Edwards*, 2014 WL 2465934, at \*5 ("Whether the information sought is necessary to the case is satisfied where the party's claim or defense virtually rises or falls with the admission or exclusion of the proffered evidence.") (internal quotations omitted); *cf. Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990) ("*Even if relevant*, discovery is not permitted . . . where harm . . . outweighs the need of the person seeking discovery of the information.") (italics in original).

Equally as important, given that Waymo agreed to produce its plans and projections as well as any valuation of the Lyft collaboration, the Order fails to assess why the Lyft/Waymo deal documents would not be "unreasonably cumulative or duplicative" pursuant to Rule 26(b)(2)(C). There is no need to compel Waymo to turn over the confidential agreements with non-party Lyft—Uber's primary rival in the United States—and related due diligence if the damages information Uber seeks is available through another source that could be produced without the corresponding harm to Lyft.

Lyft has serious concerns about its most confidential business documents falling into the hands of its primary ride-sharing rival and subsequently ending up as part of a highly-publicized trial. This information is so sensitive that Lyft has controlled its dissemination even within Lyft. (ECF No. 646-2 ¶¶ 3-4.) It is not a sufficient buttress against that harm for the documents to be produced on an "outside counsel only" basis. *See Convolve, Inc. v. Dell, Inc.*, No. C 10-80071

WHA, 2011 WL 1766486 at *2 ("While a protective order would restrict access to some extent, it would still allow access by counsel, legal assistants, experts, their assistants, the jury, and court staff"); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992).

### B. The Order Should Be Set Aside Because the Information Uber Seeks Is Available Through Less Intrusive Means.

The information Uber has requested can be provided through less intrusive means and it was clear error for the Magistrate Judge to not consider these alternatives. The district courts have broad discretion to limit discovery where it "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Uber has asserted that the deal documents are relevant to "(1) the valuation of self-driving technology for purposes of analyzing damages," and "(2) the appropriateness of injunctive relief." (ECF No. 687 at 5-6.) Whether these documents contain this information is speculative, but even if they do, this information is discoverable without having to turn over the actual deal documents. If Uber is truly interested in obtaining only the damages-related information it has identified as relevant, then it could serve a narrow interrogatory on Waymo. It is unnecessary that Uber, or its counsel, be permitted access to the entire "treasure trove" of documents. *See UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, No. 14-3466, 2014 WL 12639323, at *3 (C.D. Cal. Dec. 19, 2014); *Music Grp. Macao Commercial Offshore Ltd. v. Foote*, No. 14-03078, 2015 WL 2170121, at *3 (N.D. Cal. May 8, 2015) ("Defendant has not met his burden of establishing that the entire document is relevant and there is no less intrusive means of obtaining the information."); *Echostar Satellite LLC v. Freetech Inc.*, No. 07-6124, 2008 WL 4460236, at *2 (N.D. Cal. Sept. 29, 2008) (denying discovery where "[Plaintiff] has several alternative, less intrusive means to obtain evidence regarding its . . . claims.").

Lyft respectfully requests that the Court set aside the Order regarding Uber's Request Nos. 149-153, and issue a stay while the instant motion is under consideration.

DATED: July 11, 2017

MUNGER, TOLLES & OLSON LLP

By: */s Carolyn Hoecker Luedtke*
CAROLYN HOECKER LUEDTKE
Attorneys for Non-Party Lyft, Inc.