**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
RUDY Y. KIM (CA SBN 199426)
RKim@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:   415.268.7000
Facsimile:    415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone:   202.237.2727
Facsimile:    202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>                    Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S RESPONSES TO WAYMO'S THIRD SET OF EXPEDITED INTERROGATORIES PURSUANT TO PARAGRAPH SIX OF THE MAY 11, 2017 PRELIMINARY INJUNCTION ORDER (NOS. 21-28)**<br><br>Trial Date: October 10, 2017 |

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

In accordance with Rule 34 of the Federal Rules of Civil Procedure, Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively "Defendants") object and respond to Plaintiff Waymo LLC's Third Set of Expedited Interrogatories, served on June 6, 2017.

**GENERAL OBJECTIONS**

Defendants make the following general responses and objections ("General Objections") to each definition, instruction, and request propounded in Waymo's Interrogatories. These General Objections are hereby incorporated into each specific response. The assertion of the same, similar, or additional objections or partial responses to the individual requests does not waive any of Defendants' General Objections.

1. Defendants object to each Interrogatory, Definition, or Instruction to the extent it seeks or purports to impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure or the applicable rules and orders of this Court.

2. Nothing in these responses is an admission by Defendants of the existence, relevance, or admissibility of any information, for any purpose. Defendants reserve all objections as to competency, relevance, materiality, privilege, or admissibility related to the use of their responses and any document or thing identified in their responses as evidence for any purpose whatsoever in any subsequent proceeding in this trial or any other action.

3. Defendants object to each Interrogatory to the extent it seeks information not within Defendants' possession, custody, or control and not kept by Defendants in their ordinary course of business. Defendants will provide only relevant, non-privileged information that is within their present possession, custody, or control and available after a reasonable investigation.

4. Defendants object to these Interrogatories insofar as they purport to require Defendants to search for information beyond that which is available after a reasonable search as it relates to this case and the limited scope of discovery at this stage.

5. Defendants object to each Interrogatory to the extent that it is not limited in time. Defendants will produce information from a reasonable time period as it relates to this case.

6. Defendants object to each Interrogatory to the extent it seeks a response from persons or entities that are not parties to the lawsuit and over whom Defendants have no control.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1. Defendants respond to the Interrogatories on Defendants' own behalf.

2. 7. To the extent any Interrogatory, Instruction, or Definition may be construed as calling for disclosure of information subject to the attorney-client privilege, work product immunity, joint defense or common interest, or any other applicable privilege or protection, Defendants hereby claim such privileges and immunities and object on such grounds. Defendants do not waive, intentionally or otherwise, any attorney-client privilege, work-product immunity, joint defense or common-interest privilege or any other privilege, immunity, or other protection that may be asserted to protect information from disclosure.

3. 8. Although Defendants have diligently complied with their discovery obligations at this stage, their investigations in connection with this litigation are continuing. These responses are limited to information obtained to date and are given without prejudice to Defendants' right to amend or supplement their responses after considering information obtained through further discovery or investigation.

Subject to and without waiving its General Objections, Uber objects and responds to the Interrogatories as follows:

## SPECIFIC OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 21:**

Describe in detail the development of the ▮▮▮▮ used by DEFENDANTS in their LIDAR designs and devices, including who contributed to the design, and when and how the ▮ ▮▮▮▮▮▮▮▮▮▮ were first selected and evolved over time, and the identity, by Bates Number, of the DOCUMENTS evidencing the same.

**RESPONSE TO INTERROGATORY NO. 21:**

Defendants object to this interrogatory as unreasonably overbroad to the extent that it requests information about the development of ▮▮▮▮ in third-party LiDAR sensors used by Uber and Otto.

Subject to and without waiving the specific and general objections above, Defendants respond as follows:

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1. [REDACTED]
2. [REDACTED]
3. [REDACTED]
4. [REDACTED]
5. [REDACTED] *See, e.g.*, UBER00052183-UBER00052197, UBER00051483-UBER00051486.
6. [REDACTED]
7. [REDACTED]
8. [REDACTED]
9. [REDACTED]
10. [REDACTED]
11. [REDACTED]
12. [REDACTED]
13. [REDACTED]
14. [REDACTED] *See, e.g.*,
15. UBER00051413-UBER00051420, UBER00051439-UBER00051446, UBER00051457-
16. UBER00051461, UBER00051482.
17. [REDACTED]
18. [REDACTED]
19. [REDACTED]
20. [REDACTED]
21. [REDACTED]
22. [REDACTED]
23. [REDACTED]
24. [REDACTED]
25. [REDACTED]
26. [REDACTED] *See,*
27. *e.g.*, UBER00051409-UBER00051412, UBER00051330-UBER00051336, UBER00056299-
28. UBER00056325, UBER00011609-UBER00011612.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**INTERROGATORY NO. 22:**

Describe in detail the development of the photodetectors and photodetector circuits implemented by UBER or OTTO for LIDAR, including who contributed to the design and when, and the identity, by Bates Number, of the DOCUMENTS evidencing the same.

**RESPONSE TO INTERROGATORY NO. 22:**

Defendants object to this interrogatory as unreasonably overbroad to the extent that it requests information about the development of the photodetectors and photodetector circuits implemented by Uber and Ottomotto in LiDAR designs developed by third-parties. Defendants further object to this interrogatory because "OTTO," though a capitalized term, is undefined. Defendants will construe the term to mean Ottomotto LLC.

Subject to and without waiving the specific and general objections above, Defendants respond as follows:

The photodetector circuit design implemented by Uber in Fuji was developed by Florin Ignatescu and William Treichler. The photodetector implemented in Fuji's photodetector circuit was selected by Daniel Gruver. In November 2016, Mr. Ignatescu began working on an initial photodetector circuit for the receive board and in December 2016, finished the design for a partially completed prototype receive board having 16 out of 32 channels. The photodetector circuit is designed to maximize the distance the photodetector can receive reflected light pulse. The photodetector used in this initial design was a commercially available avalanche photodiode supplied by █████████████████████████ and was selected because its package shape and size was the best fit for the requirements of the receive board and its sensitivity wavelength matched the emitting wavelength of the laser diodes used on the transmit boards. In late January 2017, Mr. Treichler created a second prototype receive board with Mr. Ignatescu's photodetector circuit for all 32 channels. After testing the second prototype receive board, Messrs. Ignatescu and Treichler recognized that the initial photodetector design's maximum amplitude (i.e. the amount of light input the photodetector can receive before saturation) was too low, and sunlight alone saturated the detector. Mr. Treichler revised the photodetector circuit design to use a different amplifier suggested by Mr. Ignatescu █████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  █████████ to increase the maximum amplitude and to include an additional circuit to
2  increase the dynamic range of the photodetector circuit (i.e. the ratio of the highest amplitude the
3  photodetector circuit can detect to the lowest amplitude the photodetector circuit can detect).
4  Concurrently, Mr. Ignatescu designed a new photodetector circuit that is based on the
5  photodetector circuit in Tyto's Owl sensor but incorporates the ████████ photodetector in Mr.
6  Ignatescu's initial photodetector design. Currently, Messrs. Ignatescu and Treichler are testing
7  and revising their photodetector circuit designs. *See, e.g.*, UBER00074400- UBER00074408,
8  UBER00074449-UBER00074521, UBER00074551- UBER00074654.

9  Fuji's T0 board also has a photodetector circuit, which was developed by Mr. Treichler
10 using the same photodetector circuit as Fuji's receive board. Mr. Treichler began work on the T0
11 board in December 2016. The first version of the T0 board used an avalanche photodiode (APD)
12 supplied by ████████ and is based on Mr. Ignatescu's initial circuit design for the receive
13 board. The second version of the T0 board used a pin diode supplied by ████████ instead of an
14 APD and is based on Mr. Treichler's circuit design for the second prototype receive board. *See,*
15 *e.g.*, UBER00074547-UBER00074448.

16 The photodetector circuit design that was intended for use in Spider was developed by
17 Mr. Ignatescu using the schematics of the photodetector circuit in Tyto's Owl sensor.
18 Mr. Ignatescu began work on this in June 2016. Since the Owl sensor only had one fiber laser
19 and one channel, Mr. Ignatescu modified the photodetector circuit for Spider so that it could
20 accommodate eight fiber lasers and eight splitters to create sixty-four channels. The
21 photodetector circuit design contemplated the use a different photodetector supplied by ████████
22 ████████, which was selected by Mr. Gruver. Radu Raduta also reached out to ████████, an
23 engineering consulting firm, to provide a prototype photodetector circuit for Spider, but ████████
24 design did not work for Spider and was abandoned. There is currently no work performed on any
25 photodetector circuit for Spider, as Spider has been abandoned since the pivot to Fuji in October
26 2016. *See, e.g.*, UBER00074364-UBER00074378, UBER00074522-UBER00074546.

27 In the first quarter of 2016, Scott Boehmke and Jim Gasbarro tested the use of silicon
28 photomultipliers (SiPM) detectors and created three versions of photodetector circuitry for these

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   SiPM detectors.  There are two additional in-house sensor designs that used APDs, but these
2   APDs do not require any circuits to interface to them.  Beginning in mid-2015, Messrs. Boehmke
3   and Gasbarro worked on a short-range LiDAR design that used a commercially available APD
4   array module from ▓▓▓▓.  After purchasing additional parts for this module, Messrs.
5   Boehmke and Gasbarro were able to successfully capture data using this module in September
6   2016.  In December 2015, Robert Doll along with Messrs. Boehmke and Gasbarro worked on a
7   ▓▓▓▓ LiDAR design that used a commercially available 1550 nm APD module supplied by
8   ▓▓▓▓.  *See, e.g.*, UBER00008418-UBER00008419, UBER00008421-UBER00008422,
9   UBER00008424-UBER00008425, UBER00008598, UBER00074328.

10  **INTERROGATORY NO. 23:**
11       Describe in detail the development of DEFENDANTS' ▓▓▓▓
12  including who contributed to the design, how ▓▓▓▓
13  were first selected and evolved over time, how ▓▓▓▓ were first selected
14  and evolved over time, and the identity, by Bates Number, of the documents evidencing the same.
15  **RESPONSE TO INTERROGATORY NO. 23:**
16       Defendants object to this interrogatory as unreasonably overbroad to the extent that it
17  requests information about the development of ▓▓▓▓ for LiDAR developed or
18  designed by third-parties.
19       Subject to and without waiving the specific and general objections above, Defendants
20  respond as follows:
21       The ▓▓▓▓ designed by Uber and Otto for Spider was based on Owl's
22  amplified fiber laser design, which was acquired through the asset acquisition of Tyto in May
23  2016.  At least James Haslim worked on designing Owl's amplified fiber laser at Tyto.  In 2013,
24  Mr. Levandowski discussed with Mr. Haslim general ▓▓▓▓ concepts, provided
25  a handwritten drawing, and suggested that Mr. Haslim follow up with a few commercial suppliers
26  of fiber laser components (▓▓▓▓) and to find a YouTube video
27  from a professor on lasers in general to learn more.  *See* Haslim May 4, 2017 Dep. Tr. at 130.
28  Mr. Haslim studied fiber lasers and laser amplification concepts online and later recognized his

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  discussion with Mr. Levandowski on fiber laser amplification concepts and Mr. Levandowski's
2  handwritten drawing as showing a well-known and "plain vanilla" technique for ▉▉▉▉
3  ▉▉▉▉▉▉▉▉▉. *See* Haslim May 4, 2017 Dep. Tr. at 136; Haslim Suppl. Decl. at 4.
4  Uber and Otto have been unable to ascertain all facts regarding the development of Owl's ▉
5  ▉ due to confidentiality obligations of former employees to Tyto.  Uber and Otto are
6  continuing to investigate these facts and may supplement this response upon obtaining Tyto's
7  permission to disclose its confidential information.
8      Below is a schematic of the ▉▉▉▉▉ designed for Spider, showing the f▉
9  ▉▉▉▉ materials, and manufacturers for the different components of the ▉▉▉▉
10  ▉  The ▉▉▉▉ is based on the particular ▉ purchased (e.g., ▉▉▉▉
11  ▉▉▉▉▉▉▉▉).  The only modification Uber and Otto made to
12  Owl's ▉▉▉▉ design for Spider was to reduce the length of a ▉ component from
13  10 meters for one of the FC / APC supplied by ▉▉▉ to 16 inches long, as only 16 inches
14  was needed for Spider.  This schematic was made available for inspection by Waymo's outside
15  counsel on June 6, 2017, and was produced.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



After acquiring the amplified fiber laser design from Tyto, Matthew Palomar and Marlon Bocalan were responsible for building additional ▬▬▬▬ using the design shown in the above schematic in June 2016.  In July 2016, Filip Trojanek began building a revised mechanical design for the ▬▬▬▬ but because the LiDAR team pivoted to Fuji, Mr. Trojanek's work on the revised mechanical design was never implemented in Spider.  In August 2016, Asheem Linaval began revising the ▬▬▬▬ shown in the schematic above, but the revision was never implemented because Spider was abandoned when the LiDAR team pivoted to Fuji.  *See, e.g.*, UBER00074323-UBER00074327, UBER00074339-UBER00074363.

In May 2016, Daniel Gruver and Brent Schwarz started the process of contacting manufacturers who could potentially produce the ▬▬▬▬ in volume, and this process was continued by Sameer Kshirsagar when he joined in August 2016.  The manufacturers considered were ▬▬▬▬.  Anthony Levandowski introduced Daniel

1   Gruver to [redacted] and was involved in setting up some meetings with [redacted]
2   Messrs. Palomar and Bocalan provided technical guidance and training for the manufacturers on
3   the build process. Because Spider was abandoned when the LiDAR team pivoted to Fuji, Uber
4   and Otto ultimately did not contract with any manufacturers to produce the [redacted]
5   in volume. *See, e.g.*, UBER00006517-UBER00006520, UBER00006535-UBER00006536.

**INTERROGATORY NO. 24:**

Identify the components of DEFENDANTS' self-driving vehicles that LEVANDOWSKI contributed to.

**RESPONSE TO INTERROGATORY NO. 24:**

Defendants object to this interrogatory as unreasonably overbroad because it seeks information that goes beyond Waymo's asserted trade secrets and is therefore not "reasonably narrow" and outside of the scope of the Court's order granting expedited discovery with respect to "[Waymo's] trade secret misappropriation claims only." (*See* Order, ECF No. 426.) Defendants further object to this interrogatory because "OTTO," though a capitalized term, is undefined. Defendants will construe the term to mean Ottomotto LLC.

Subject to and without waiving the general and specific objections above, Defendants respond as follows:

As of the date of this response, Uber's self-driving vehicles have only used Velodyne LiDARs. During his time at Otto and Uber, Anthony Levandowski did not contribute to the Velodyne LiDARs used in Uber's self-driving vehicles or any of its components. Uber understands from Mr. Levandowski's deposition that he contributed to an early Velodyne LiDAR, prior to joining Google. There may be additional non-LiDAR related components relating to Defendants' self-driving vehicles that are not implicated by Waymo's trade secret allegations to which Mr. Levandowski did contribute.

**INTERROGATORY NO. 25:**

Identify the components of DEFENDANTS' self-driving vehicles that LEVANDOWSKI did not contribute to.

**RESPONSE TO INTERROGATORY NO. 25:**

Defendants object to this interrogatory as unreasonably overbroad because it seeks information that goes beyond Waymo's asserted trade secrets and is therefore not "reasonably narrow" and outside of the scope of the Court's order granting expedited discovery with respect to "[Waymo's] trade secret misappropriation claims only." (*See* Order, ECF No. 426.) Defendants further object to this interrogatory because "OTTO," though a capitalized term, is undefined. Defendants will construe the term to mean Ottomotto LLC.

Subject to and without waiving the general and specific objections above, Defendants respond as follows:

As of the date of this response, Uber's self-driving vehicles have only used Velodyne LiDARs. During his time at Otto and Uber, Anthony Levandowski did not contribute to the Velodyne LiDARs used in Uber's self-driving vehicles or any of its components. Uber understands from Mr. Levandowski's deposition that he contributed to an early Velodyne LiDAR, prior to joining Google. There may be additional non-LiDAR related components relating to Defendants' self-driving vehicles that are not implicated by Waymo's trade secret allegations to which Mr. Levandowski did not contribute.

**INTERROGATORY NO. 26:**

Describe all "Pre-Signing Bad Acts" as defined in the ACQUISITION DOCUMENTS, and identify, by Bates Number, the documents evidencing or describing the same.

**RESPONSE TO INTERROGATORY NO. 26:**

Defendants object to this interrogatory because it calls for disclosure of information subject to the attorney-client privilege, work product immunity, and joint defense or common interest protections. Defendants further object that this interrogatory calls for a legal conclusion in light of the definition of "Bad Acts" in the acquisition documents.

Subject to and without waiving the general and specific objections above, Defendants respond as follows:

To the extent there is any information responsive to this interrogatory, it is protected and privileged.

**INTERROGATORY NO. 27:**

Describe the meetings that took place in San Francisco between LEVANDOWSKI and UBER on or around January 12, 2016, including an identification of who was present (whether in person or telephonically) and the subject matter of what was discussed.

**RESPONSE TO INTERROGATORY NO. 27:**

Defendants object to this interrogatory because it is vague as to "on or around January 12, 2016."

Subject to and without waiving the general and specific objections above, Defendants respond as follows.

On January 12, Anthony Levandowski discussed with Jeff Holden, Brian McClendon, and John Bares the terms of a potential acquisition of a company to be formed by Mr. Levandowski. On that same day, Mr. Levandowski also discussed this issue with Cameron Poetzscher and Nina Qi. These discussions took place in person.

**INTERROGATORY NO. 28:**

Describe any alternate LIDAR designs that UBER or OTTO considered for Fuji that did not include ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and identify, by Bates Number, the documents evidencing the same.

**RESPONSE TO INTERROGATORY NO. 28:**

Defendants object to this interrogatory because "OTTO," though a capitalized term, is undefined. Defendants will construe the term to mean Ottomotto LLC.

Subject to and without waiving the general and specific objections above, Defendants respond as follows:

Fuji is a ▓▓▓ cavity design with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ per cavity. In arriving at this LiDAR design for Fuji, James Haslim considered using one transmit board per cavity (i.e. 32 laser diodes per transmit board) and two transmit boards per cavity (i.e. 16 laser diodes per transmit board). However, after consulting with the engineers working for him, Mr. Haslim realized that one transmit board per cavity and two transmit boards per cavity did not provide adequate minimum spacing between circuitry and components associated with adjacent laser

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

channels mounted on the transmit boards.  Moreover, because detectors on the receive board would need to have substantially the same spacing as associated laser channels, Mr. Haslim realized that one transmit board per cavity and two transmit boards per cavity also did not provide adequate minimum spacing between the detectors' associated circuitry and components.  *See, e.g.*, UBER00008595.

Dated: June 20, 2017                                         MORRISON & FOERSTER LLP

By:  */s/ Arturo J. González*
         ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## VERIFICATION

I, Eric Meyhofer, declare:

1. I am Head of ATG for Defendant Uber Technologies, Inc. ("Uber") in the above-captioned action, and I am authorized to execute this verification on behalf of Uber and Ottomotto LLC.

2. I have read Defendants Uber Technologies, Inc. and Ottomotto LLC's Responses to Waymo's Third Set of Expedited Interrogatories (the "Responses"), and know the contents thereof.

3. I am informed and believe that the matters stated in the Responses are true and correct and, on that ground, allege that the matters stated therein are true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of June 2017, at Pittsburgh, Pennsylvania.

_____
Eric Meyhofer

# CERTIFICATE OF SERVICE

I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address is 755 Page Mill Road, Palo Alto, CA 94304. I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on June 20, 2017, I served true and correct copies of the following documents:

- **DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S RESPONSES TO WAYMO'S THIRD SET OF EXPEDITED INTERROGATORIES PURSUANT TO PARAGRAPH SIX OF THE MAY 11, 2017 PRELIMINARY INJUNCTION ORDER (NOS. 21-28)**

☒ **BY ELECTRONIC SERVICE [Fed. Rule Civ. Proc. rule 5(b)]** by electronically mailing a true and correct copy through Morrison & Foerster LLP's electronic mail system to the e-mail address(es) set forth below, or as stated on the attached service list per agreement in accordance with Federal Rules of Civil Procedure rule 5(b).

| Recipient | Email Address: |
|---|---|
| Charles K. Verhoeven<br>David A. Perlson<br>Melissa Baily<br>John Neukom<br>Jordan Jaffe<br>James D. Judah<br>John W. McCauley<br>Felipe Corredor<br>Grant Margeson<br>Andrew M. Holmes<br>Jeff Nardinelli<br>Lindsay Cooper<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>50 California Street, 22nd Floor<br>San Francisco, CA 94111-4788 | qewaymo@quinnemanuel.com |
| Leo P. Cunningham<br>Wilson Sonsini Goodrich & Rosati<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br><br>*Attorneys for Plaintiff Waymo LLC* | lcunningham@wsgr.com |

CERTIFICATE OF SERVICE
Case No. 3:17-cv-00939-WHA
sf-3785353

1

| Recipient | Email Address: |
|---|---|
| I. Neel Chatterjee<br>GOODWIN PROCTER LLP<br>135 Commonwealth Drive<br>Menlo Park, CA94025<br><br>Brett M. Schuman<br>Rachel M. Walsh<br>GOODWIN PROCTER LLP<br>Three Embarcadero Center<br>San Francisco, California 94111<br><br>*Attorneys for Defendant Otto Trucking LLC* | nchatterjee@goodwinlaw.com<br>bschuman@goodwinlaw.com<br>rwalsh@goodwinlaw.com<br>DG-GPOttoTruckingWaymo@goodwinlaw.com |
| John L. Cooper<br>Farella Braun + Martel LLP<br>Russ Building<br>235 Montgomery Street, 17th Floor<br>San Francisco, CA  94104<br><br>*Special Master* | JCooper@fbm.com<br>MCate@fbm.com |

I declare under penalty of perjury that the foregoing is true and correct.  Executed at Palo Alto, California, this 20th day of June 2017.

| Ethel Villegas | */s/ Ethel Villegas* |
|:---:|:---:|
| (typed) | (signature) |