# EXHIBIT 5
# FILED UNDER SEAL

| From: | Rivera, Sylvia <SRivera@mofo.com> |
|---|---|
| Sent: | Tuesday, July 11, 2017 4:13 PM |
| To: | James Judah; Andrea P Roberts; 'jcooper@fbm.com'; 'MCate@fbm.com'; UberWaymoMoFoAttorneys; 'Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com)'; 'DG-GP Otto Trucking Waymo'; QE-Waymo |
| Subject: | RE: Waymo v. Uber Meet and Confer Follow Up |

James,

We're not withholding non-privileged documents on RFP No. 120.  On Interrogatory No. 26, we will supplement the response to state that Uber received a demand for indemnification pursuant to the indemnification agreement entered into in connection with the Uber-Ottomotto acquisition, and we will cite by Bates number the demand and related documents.  Uber cannot supplement further because, as reflected in its written response, any additional information would call for a legal conclusion and invade the attorney-client privilege.

On yesterday's call you also asked for clarification on whether we had produced all non-privileged employment, consulting, compensation-related, or "side letter" agreements with Claire Delaunay, Don Burnette, or Jur Van Den Berg.  I have confirmed that those have all been produced in response to previous RFPs.

Sylvia

**From:** James Judah [mailto:jamesjudah@quinnemanuel.com]
**Sent:** Monday, July 10, 2017 10:05 PM
**To:** Rivera, Sylvia; Andrea P Roberts; 'jcooper@fbm.com'; 'MCate@fbm.com'; UberWaymoMoFoAttorneys; 'Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com)'; 'DG-GP Otto Trucking Waymo'; QE-Waymo
**Subject:** RE: Waymo v. Uber Meet and Confer Follow Up

**- External Email -**

Sylvia –

I have a question about RFP No. 120.  The RFP seeks "All DOCUMENTS and COMMUNICATIONS REGARDING the LIDAR-related 'Milestones' in UBER00006451, INCLUDING (without limitation) how such milestones were calculated and/or determined, the negotiation of such milestones, and any discussions REGARDING the satisfaction of such milestones."  Can you clarify what, if anything, Uber is withholding based on what you say below?

Additionally, with respect to Expedited Interrogatory No. 26, you indicated that you would check with Wendy to get more information as to how Uber will supplement its response, which Uber committed to do by Wednesday.  Your email below does not provide any information.  Specifically, will Uber be supplementing its response to this interrogatory to describe all "Pre-Signing Bad Acts"?

Thank you,
James

**From:** Rivera, Sylvia [mailto:SRivera@mofo.com]
**Sent:** Monday, July 10, 2017 9:19 PM
**To:** Andrea P Roberts <andreaproberts@quinnemanuel.com>; 'jcooper@fbm.com' <jcooper@fbm.com>;

1

'MCate@fbm.com' <MCate@fbm.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; 'Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com)' <BSF_EXTERNAL_UberWaymoLit@bsfllp.com>; 'DG-GP Otto Trucking Waymo' <DG-GPOttoTruckingWaymo@goodwinlaw.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** RE: Waymo v. Uber Meet and Confer Follow Up

Andrea, James:

Further to our discussion this afternoon, here is Uber's position on the following requests.

RFP No. 42 – Uber will produce all non-privileged documents exchanged between Uber and Ottomotto reflecting the negotiation of the Indemnification Agreement, any demands for indemnification submitted by Mr. Levandowski to Uber, and any non-privileged communications about those demands.

RFP No. 74 – This request seeks "documents sufficient to show the number of times LEVANDOWSKI has accessed any of DEFENDANTS' servers or networks . . . from a personal device."  As previously stated, Uber's records of server access identify users but do not identify the device from which they are accessing the network.  Accordingly, there are no responsive documents for this RFP.  In our meet and confer you requested, and Uber agreed to produce, records showing instances where Mr. Levandowski accessed Uber's servers before the point in time at which Mr. Levandowski got his Uber computer.  During our call this afternoon you asked Uber to further expand its production to include records of every instance Mr. Levandowski accessed Uber's servers, regardless of time period and regardless of the fact those records do not identify what device was being used.  That request exceeds the four corners of this RFP and Uber declines to expand its production in that regard.

RFP No. 85 – As described in my July 7 email, your proposal to narrow this request does not cure its vast overbreadth because it would include every document and communication, regardless of date, that even mentions Mr. Levandowski's employment agreement or any of his stock related agreements or merely refers to any of their terms.  To resolve this RFP, Uber is willing to produce non-privileged documents exchanged between Uber and Ottomotto (or individually with Mr. Levandowski) regarding the negotiation of Mr. Levandowski's salary, bonus, and stock awards, to the extent such documents are located.

RFP No. 120 – Uber will produce all non-privileged documents reflecting the negotiation, calculation, and satisfaction of the Milestones.

Exp. Rog Nos. 24 and 25 – Uber declines to supplement its responses to address components other than LiDAR.

Best,
Sylvia

---

**From:** Rivera, Sylvia
**Sent:** Monday, July 10, 2017 12:47 PM
**To:** 'Andrea P Roberts'; 'jcooper@fbm.com'; 'MCate@fbm.com'; UberWaymoMoFoAttorneys; 'Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com)'; 'DG-GP Otto Trucking Waymo'; 'QE-Waymo'
**Subject:** RE: Waymo v. Uber Meet and Confer Follow Up

Andrea, James:

I'm getting back to you on RFP Nos. 72 and 74:

RFP No. 72 – Uber agrees to produce non-privileged, responsive documents regarding Anthony Levandowski's use of personal computers or other devices, to the extent it locates such documents.

RFP No. 74 – Per Mr. Judah's request, Uber will produce non-privileged, responsive documents reflecting Mr. Levandowski's access history from before the point in time he obtained his Uber-issued computer.

I expect to have a final response regarding RFP Nos. 42 and 91 later today.

Best,
Sylvia

**From:** Rivera, Sylvia
**Sent:** Friday, July 07, 2017 3:13 AM
**To:** 'Andrea P Roberts'; jcooper@fbm.com; MCate@fbm.com; UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); DG-GP Otto Trucking Waymo; QE-Waymo
**Subject:** RE: Waymo v. Uber Meet and Confer Follow Up

Andrea,

I write with regard to my discussions with James Judah concerning Uber's responses to Waymo's RFP Set 1, including in response to your email below. Mr. Judah and I conferred on Friday with the Special Master, and again on Saturday and Sunday for several more hours. My colleague, Marcie Brimer, joined us on those calls. I understand you were not on those calls.

Before responding to the specifics of your email, I'd like to recap an overarching issue regarding privilege logging. At the outset of the parties' discussions we discussed at length the subject of privilege logging in response to several requests, particularly those pertaining to documents concerning the Uber-Otto acquisition and all related diligence, negotiations, and other documents. I explained that, in light of the expedited case schedule the parties are working under and that the Uber-Otto transaction transpired over eight months and yielded voluminous amounts of email – much of which is privileged – it's unworkable for us to prepare a privilege log for all such communications and documents that are privileged. Because of the expedited schedule and the volume of emails from the deal, we don't have time to have reviewers review a document, quickly tag it for privilege if it appears to be privileged, and then move on the next document, because we don't have time to then have reviewers go back to those same documents that were tagged for privilege and review them again more carefully to create a privilege log. After much discussion, and at the Special Master's urging, Waymo agreed that Uber does not need to prepare a privilege log on the usual timeline. Instead, privilege logging will be tabled in favor of focusing on reviewing and producing non-privileged documents, with the understanding that once documents are produced the privilege log topic will be revisited. To the extent a log of some kind is needed, as the Special Master stated, the presumption is that it would be a categorical or "block" log rather than a document-by-document log, with a showing of good cause required for anything more than that. Having reached that resolution, Mr. Perlson asked, "what timeline are we talking about?" I responded that we need to discuss Uber's responses and determine if we can reach agreement. I now turn to the specific RFPs.

**RFP No. 1, 2, 3, 4, 67**

Contrary to your email below, as to **RFP Nos. 1-4 and 67**, I did not agree to "get back to Waymo with the volume of responsive, privileged documents this week, at which point the parties will meet and confer regarding how to proceed with respect to privilege logging vis-à-vis the pending appeals regarding the due diligence report." We discussed obtaining volume estimates over the weekend before we ultimately agreed on tabling the logs. My responses to your specific points are below.

For **RFP No. 1**, our written response states that we've already produced and on the Friday call I told Mr. Judah that I was unaware of any other agreements with Stroz beyond perhaps an e-discovery vendor services agreement for the litigation and expert engagement letter with Mr. Kevin Faulkner, which I did not consider responsive. The Special Master commented that seeking our e-discovery vendor agreement is pretty far afield and unproductive, given all the discovery that needs to take place. Mr. Judah said he'd check with his team. I understand your email is requesting

those latter two agreements.  The Faulkner engagement letter has already been produced, and we do not see the relevance of an e-discovery vendor agreement that has nothing to do with Mr. Faulkner.

For **RFP No. 2**, which seeks "all documents and communications regarding" the agreements with Stroz sought in RFP No. 1 (e.g., emails about drafts of the Stroz engagement letter), I stated that those are already on the privilege logs Waymo has to the extent they arguably were responsive to the March 16 Order.  I further stated that to the extent such communications were not arguably responsive and were not placed on those logs, they would be subject to the same privilege analysis that's pending before the courts and we don't want to put effort into putting things on a log that we might have to turn around and produce.  I further stated that we are not aware of anything that's not privileged that would be responsive.  I confirmed our plan to produce the documents on our privilege log within four days if the orders on privilege issues requiring production become final, and that we'd produce the Stroz Report promptly upon entry of a final order.  We agreed to table the issue of additional privilege logging pending resolution of the privilege issues pending before the courts.

For **RFP No. 3**, I said the analysis was the same as RFP No. 2.  We're not withholding for grounds other than privilege.

We didn't specifically discuss **RFP No. 4**, but the analysis is the same as RFP No. 2.

### RFP Nos. 6, 8, 22, 23, 28, 29, and 44

Contrary to your email, I did not state that Uber would be producing any non-privileged, responsive documents for **RFP Nos. 6, 8, 22, 23, 28, 29, and 44** this week.  As discussed below, these RFPs are extraordinarily overbroad both on their face and as purportedly "narrowed" by Waymo.  Indeed, as your email reflects, we did not even reach agreement on the scope of production.  Uber's responses to RFP Nos. 22-23 reflect that, with the exclusion of Apparate International, Uber has no responsive documents to produce.  Thus, I would not have agreed to produce documents this week.

**RFP 6** seeks "all documents and communications regarding agreements between Levandowski and any Defendant."  Your proposal remains vastly overbroad as to this RFP.  As you know, because we've produced them, Mr. Levandowski has numerous agreements with Ottomotto and Uber, including employment agreements, agreements related to stock awards, invention assignment agreements, and ADR agreements.  Those agreements aren't unique to Mr. Levandowski; we've produced such agreements for numerous other employees too.  Your request for "all documents and communications" regarding the negotiation of all such agreements with Mr. Levandowski and, at any time after the agreements were entered, that merely reference the agreement or reference any term of the agreement is completely untethered to what's pertinent to Waymo's claims or defenses.  To the extent you're talking specifically about the Indemnification Agreement, which was the example you gave, that would be covered by RFP No. 42 (all documents and communications re: the Indemnification Agreement).  I also note that, as reflected below, Uber has agreed to produce non-privileged, responsive documents for RFP Nos. 28-29 pertaining to the negotiation of the consideration for the Uber-Otto transaction, the IP acquired, and the satisfaction of certain closing conditions (the parties to confer on which closing conditions as described below **at RFP No. 27**).

**RFP 8** seeks "all documents and communications regarding agreements between Uber and Ottomotto and/or Otto Trucking," while **RFP No. 44** seeks "all documents and communications regarding the 'Merger Agreement'" entered on April 11, 2016.  Your proposal effectively would render responsive *every* document and *every* communication reflecting any negotiation in the Uber-Otto deal up until the agreements were signed, and thereafter *every* document and *every* communication to date that so much as mentions the name of any agreement from the merger or references even a single term of any of the agreements.  That remains vastly overbroad and unmoored to any legitimate need.  Uber will agree to produce non-privileged, responsive documents for RFP Nos. 8 and 44 pertaining to the negotiation of the consideration for the Uber-Otto transaction, the IP acquired, and the satisfaction of certain closing conditions (the parties to confer on which closing conditions as described below **at RFP No. 27**).  The parties agreed these RFPs are subject to the agreement to table privilege log issues.

For **RFP Nos. 28-29**, which on their face are overbroad in seeking "all documents and communications regarding Uber's due diligence of Ottomotto" and regarding "negotiations over Uber's acquisition of Ottomotto," Uber agrees to produce non-privileged, responsive documents pertaining to the negotiation of the consideration for the Uber-Otto transaction, the IP acquired, and the satisfaction of certain closing conditions (the parties to confer on which closing conditions as described below **at RFP No. 27**). The parties agreed these RFPs are subject to the agreement to table privilege log issues.

* * *

**RFP No. 20** seeks "all documents and communications regarding agreements between any Defendant and Tyto and/or Odin Wave." On Sunday, Mr. Judah and I agreed that it was subject to the agreement to table privilege logging. I did not, however, agree that non-privileged responsive documents would be produced this week. Importantly, we already have produced the agreements with Tyto and their exhibits/attachments pertaining to Ottomotto's asset purchase and the hiring of Tyto employees.

**RFP Nos. 81-83**. These seek certain agreements and documents and communications regarding any "founder" of Ottomotto, on the one hand, and Uber or Ottomotto, on the other hand. As reflected in Uber's written response, the merger agreement documents identify the "Founders" as Mr. Levandowski and Mr. Ron, and Uber therefore responded as to them. Mr. Judah sought to expand these requests to include Claire Delauney, Don Burnette, and Jur van Den Berg (adding Mr. van den Berg because his "Linked In" page describes him as a founder). Uber objects to any such expansion of this RFP based on the fact Uber has already responded in full to the text of the RFP and on grounds of relevance. That said, we already have produced Uber and Ottomotto agreements for Ms. Delauney and Mssrs. Burnette and van den Berg in response to other requests, including their employment agreements and agreements related to stock awards. I am not aware of any responsive consulting agreements. In light of that, I believe there's no dispute as to these.

**RFP No. 68** seeks "all documents and communications regarding the attestations that Defendants first required employees to sign in April 2016." When I conferred with Mr. Judah, I explained that Uber had produced non-privileged attestations for employees, but for a small number of employees the attestations are privileged and are subject to the privilege disputes that are currently before the courts. Mr. Judah stated that once there's a judicial resolution, we will circle back to this RFP. In the meantime, I can report that as to the attestations over which Uber currently asserts privilege, we are unaware of any communications about the negotiation/preparation of the attestations that is not privileged (at least until the court's orders become final). Moreover, as to Mr. Levandowski, the privilege logs already produced include communications about his attestation.

**RFP No. 27** seeks documents sufficient to show the reasons behind Uber's decision to acquire Ottomotto. As stated in Uber's written response, it already has produced responsive documents. In discussing this RFP, Mr. Judah mentioned Waymo's desire for documents regarding the satisfaction of closing conditions. I raised an overbreadth issue with respect to that; namely, that the list of closing conditions included with Uber's opposition to Waymo's pending motion to compel is 7 pages long and producing documents pertaining to the satisfaction of everything on that list would be burdensome and unnecessary. We then agreed that, as to the RFPs where I said I would check if we can agree to produce any non-privileged responsive documents regarding the satisfaction of closing conditions **(RFP Nos. 28-29, 44),** the parties would review the 7-page list of closing conditions; Waymo would identify for which closing conditions it believes it needs non-privileged documents concerning the satisfaction thereof, and Uber also would consider the same. We have not received Waymo's identification of closing conditions. Please forward at your earliest opportunity.

Beyond that, as reflected elsewhere herein, Uber agrees to produce non-privileged documents regarding the negotiations and due diligence regarding the consideration for the deal and IP acquired.

On **RFP No. 30**, Uber declines to expand the scope of its agreement to produce beyond documents regarding any consulting work Mr. Levandowski performed related to LiDAR, the subject matter of this litigation. I understand this issue has been raised in connection with other Uber discovery responses, so I will not address it further here.

**RFP Nos. 35, 36, 37, 38** - I did not state that Uber would produce non-privileged, responsive documents this week.  We will produce in advance of the deposition of Ognen Stojanovski.  The parties agreed to table the privilege log.

**RFP No. 40** seeks all documents regarding the Feb. 1, 2016 Mutual Non-Disclosure Agreement.  Your proposal to "limit" the request to *every* document and *every* communication after Feb. 1, 2016 that merely mentions that agreement or refers to any of its terms does not cure the overbreadth issues.  Uber's written response agreed to produce non-privileged, responsive documents exchanged between Uber and Ottomotto (to the extent located), which is more than reasonable.  On Saturday, the parties agreed to table the privilege log.

**RFP No. 56** seeks "all documents and communications regarding the formation of Ottomotto."  Uber's written response cites the fact that it's produced responsive documents in response to Expedited RFPs 13-17 and also agreed it would produce any additional responsive, non-privileged documents if any are located.  I did not state Uber would be producing additional documents responsive to RFP No. 56 by Wednesday of this week.  Mr. Judah asked generally whether Uber had produced documents since serving its written objections and responses on June 23 and when it would make another production; I said we expected to make another production by Wednesday (we produced documents the next day, on Saturday).  I did not mean that we'd produce specifically for this RFP by Wednesday.  Indeed, I'm not aware that there even are any responsive, non-privileged documents that haven't already been produced.  But as stated in the written response, if we find any, we'll produce.

**RFP No. 58** is the same as RFP No. 56, except as to Otto Trucking.  To the extent we locate non-privileged, responsive documents that we haven't already produced, we will produce them.

**RFP No. 72** seeks "All DOCUMENTS REGARDING DEFENDANTS' policies regarding employees' use of personal computers or other devices while working at or for DEFENDANTS," and Waymo has agreed to limit it to Mr. Levandowski's use of a personal computer while working at or for Uber/Ottomotto.  On further reflection, that limitation doesn't seem to align with the text of the RFP, since the RFP seeks documents about policies.  Are you limiting it to "all documents regarding Defendants' policies regarding Mr. Levandowski's use of a personal computer or other device while working at or for Uber/Ottomotto"?  Or are you eliminating "policies" and instead seeking all documents regarding Mr. Levandowski's use of personal computers or other devices?

**RFP No. 78** – we're not aware of any side letter agreement responsive to this RFP as it pertains to Mr. Levandowski and Mr. Ron, the "founders" as defined in the merger documents.  Uber declines to expand this RFP to include Ms. Delauney and Mssrs. Burnette and van den Berg for the reasons outlined above for RFP nos. 81-83.  That resolves **RFP No. 79** too.

**RFP No. 84** – The analysis here is the same as RFP nos. 81-83.  Uber already has produced compensation-related agreements for Ms. Delauney and Mssrs. Burnette and van den Berg in response to other requests.

**RFP No. 85** seeks "all documents and communications regarding any compensation-related agreements" for any Ottomotto founder, which the merger documents identify as Mr. Levandowski and Mr. Ron.  For the reasons stated above, Uber will not produce for Mr. Burnette, Ms. Delauney, and Mr. ven den Berg.  Moreover, even as to Mr. Levandowski, your proposal to "limit" this overbroad RFP fails to accomplish much of any narrowing.  It would include any document or communication that even mentions Mr. Levandowski's employment agreement or any of the various stock related agreements or simply refers to any of their terms.  Like **RFP 6,** this remains vastly overbroad.  I note that, in response to other RFPs, Uber is agreeing to produce non-privileged documents reflecting the negotiations of the consideration for the Otto deal.

**RFP No. 87** seeks all documents provided to Stroz by Defendants or Levandowski regarding certain topics.  I stated to Mr. Judah that Uber does not have possession, custody, or control over what Mr. Levandowski provided to Stroz.  I also clarified that as to documents sent to Stroz by Uber in connection with the investigation, there could be some emails that are not already on the privilege logs, but the rulings on the pending privilege issues in the courts will be the gate keeping issue about the determination of privilege for such things.  Assuming the courts' final rulings conclude there is

no privilege, we'll produce the Stroz report first, then other documents on our privilege logs that are affected by the ruling, then any documents that are not already on the privilege logs (because they're not arguably responsive to the March 16 order) that are affected by ruling.  Mr. Judah agreed with that approach.  I did not say I would let Waymo know this week the volume of responsive, privileged documents.  We agreed to table the privilege log issues, so Uber is focusing on reviewing and producing non-privileged documents for Waymo's other RFPs first, particularly since Waymo already has voluminous privilege logs on these issues.

**RFP Nos. 88, 89** – Uber will search for documents responsive to RFP No. 88 and produce any non-privileged, responsive documents it locates.  On RFP No. 89, Uber will also undertake a search, however, if we determine that there are burden or other issues related to producing "all documents and communications" regarding such negotiations, we will inform you and confer.

We are still following up as to RFP Nos. 1, 42, 74, and 91.  We will respond as to those just as soon as we are able.

Best,
Sylvia

---

**From:** Andrea P Roberts [mailto:andreaproberts@quinnemanuel.com]
**Sent:** Wednesday, July 05, 2017 10:03 PM
**To:** jcooper@fbm.com; MCate@fbm.com; UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); DG-GP Otto Trucking Waymo
**Cc:** QE-Waymo
**Subject:** Waymo v. Uber Meet and Confer Follow Up

- External Email -

---

John and Counsel –

I write to follow up on certain issues discussed on this morning's meet and confer call, as well as certain issues discussed with Sylvia Rivera in the past few days regarding Uber's responses and objections to Waymo's First Set of RFPs.  Unless otherwise indicated, where we indicate that we expect a response from Uber for a particular issue, we expect that response on or before tomorrow morning's meet and confer call.

## Waymo's Proposal to Narrow Patent Claims

On the call this morning Defendants agreed they would endeavor to get back to Waymo regarding its proposal to narrow the patent claims (by 10 AM tomorrow morning).  As we indicated, Defendants should have had enough time to respond substantively on this proposal.

## Confidentiality Designations of First and Second Sets of RFP Responses

Please let us know by tomorrow's call what portions, if any, of Uber's RFP responses are confidential and/or AEO.

## RFP No. 1, 2, 3, 4, 67

For RFP No. 1, Waymo is not excluding any agreements between Stroz and Uber, i.e., Uber should produce its agreements with Stroz for expert service (such as Kevin Faulkner)  and its agreements with Stroz for document hosting.  These agreements are relevant to bias, as Stroz is a percipient witness in this case – Uber itself lists four Stroz employees as percipient witnesses.  Uber elected to retain and pay a percipient witness presumably hundreds of thousands (if not millions) of dollars for services.  Waymo is entitled to know the terms of those agreements.  To the extent Uber refuses to produce these documents, the parties are at an impasse.

Otherwise, for all of these RFPs, Uber indicates it is not aware of any non-privileged, responsive documents.  Uber will get back to Waymo with the volume of responsive, privileged documents this week, at which point the parties will meet and confer regarding how to proceed with respect to privilege logging vis-à-vis the pending appeals regarding the due diligence report.

With respect to production of documents that are on Uber's existing privilege logs and subject to pending appeals, Uber will produce any compelled documents within 4 days of a final order (affirming the district court's ruling) or lifting of a stay.

However, for RFP No. 67, (Due Diligence Report itself, as well as its exhibits) Uber will produce these immediately upon a final order or lifting of a stay.

**RFP Nos. 5, 7**

Uber represented that it is not withholding any responsive documents on grounds other than privilege.

**RFP Nos. 6, 8, 22, 23, 28, 29, 44**

For these RFPs, Uber agreed to prioritize production of non-privileged documents.  For documents where Uber will be asserting privilege, the parties will meet and confer next week (once the non-privileged documents are produced) regarding the volume of privileged documents and how to proceed with respect to logging – for example, whether a categorical log would be appropriate for some or all of the RFPs, or whether there are specific people, time periods, or subject matter for which it would be appropriate for Uber to provide a standard privilege log.

Also, for RFP Nos. 6, 8, and 44, Uber will get back to Waymo on whether it will agree to the proposal suggested in Mr. Judah's June 28 email (also below):

For the time period after the date of the agreement, the scope of the request would be limited to documents and communications that either reference the agreement itself or terms of the agreement.  By way of example, a document post-dating the execution of the Indemnification Agreement between Uber and Mr. Levandowski would be responsive if it referenced the Indemnification Agreement or a term of the agreement (such as a term that required indemnification or a request for indemnification pursuant to one of the terms ), but would not be responsive if it related only to a "Bad Act" of Mr. Levandowski that would impact one or more terms of the Indemnification Agreement  (provided the communication doesn't also reference the agreement or one of one or more of those terms).

For RFP Nos. 22 and 23, Waymo agreed that Uber need not search for or produce responsive documents with respect to Apparate International (as the relevant agreements and communications/documents with respect to Apparate International are being produced in response to other RFPs).  With respect to Dogwood Leasing and Pouch Holdings, Uber represented that it was not withholding any responsive, non-privileged documents.

**RFP Nos. 9, 20, 25, 31, 45, 49, 51, 65, 73, 76, 77, 81, 82, 83**

Uber represented that it is not withholding any responsive documents on grounds other than privilege, and will not be withholding any responsive, non-privileged documents.

For RFP No. 20, Uber agreed to prioritize production of non-privileged documents.  For documents where Uber will be asserting privilege, the parties will meet and confer next week (once the non-privileged documents are produced) regarding the volume of privileged documents and how to proceed with respect to logging – for

example, whether a categorical log would be appropriate for some or all of the RFPs, or whether there are specific people, time periods, or subject matter for which it would be appropriate for Uber to provide a standard privilege log.

For RFP No. 76, Uber will be providing an update on additional responsive documents later this week.

For RFP No. 81, Uber will confirm that all agreements with Mr. Burnette, Ms. Delauney, and Mr. van den Berg have been produced.  Without prejudice to later asking for additional documents, Waymo agrees that for now Uber does not need to produce all documents and communications regarding Mr. Burnette, Mr. Delauney, and Mr. van den Berg's employment agreements.

For RFP Nos. 82 and 83, Uber will confirm that all consulting agreements with Mr. Burnette, Ms. Delauney, and Mr. van den Berg have been produced, and/or produce them and meet and confer with Waymo regarding the RFP No. 83.


**RFP No. 11, 12, 19, 21, 34, 50, 52, 53, 55, 57, 63, 68, 69, 70, 71, 75**

Uber represented that it is not withholding any responsive documents on grounds other than privilege.  If additional responsive documents are located, Uber will either produce them or promptly notify Waymo of objections so that the parties can meet and confer.

For RFP No. 34, Uber represented that it was undertaking a broader search for Tyto-related documents.

For RFP No. 68, Waymo asked whether Uber would agree to prioritize searching for and producing/logging documents regarding the set of attestations that are currently on the privilege log (i.e., for the diligenced employees), while Waymo would reserve its rights to seek additional documents regarding other attestations.  Uber will get back to Waymo as to whether it will agree to this proposal.

**RFP Nos. 13, 14, 15, 16, 17, 18, 33, 46, 48**

Uber represented that it is not withholding any responsive documents on grounds other than privilege.  If additional responsive documents are located, Uber will either produce them or promptly notify Waymo of objections so that the parties can meet and confer.

**RFP Nos. 24, 26, 54**

Uber represented that it is not withholding any responsive documents on grounds other than privilege.  If additional responsive documents are located, Uber will either produce them or promptly notify Waymo of objections so that the parties can meet and confer.

**RFP No. 27**

Uber agreed to prioritize production of non-privileged documents, focusing on negotiations and due diligence documents regarding 1) consideration, 2) intellectual property, and 3) satisfaction of the closing conditions.

**RFP No. 30**

Uber will get back to Waymo whether it will agree to produce non-privileged, responsive documents regardless of whether or not they "related to LiDAR."  If Uber will not agree, the parties will be at an impasse.

**RFP No. 32**

For this RFP, Uber represented that it is not withholding any responsive documents on grounds other than privilege, and that Uber would conduct a reasonably diligence search and produce any responsive, non-privilege documents.

**RFP Nos. 35, 36, 37, 38**

For these RFPs, Uber agreed to prioritize production of non-privileged documents, focusing on negotiations and due diligence documents regarding 1) consideration, 2) intellectual property, and 3) satisfaction of the closing conditions.  For documents where Uber will be asserting privilege, the parties will meet and confer next week (once the non-privilege documents are produced) regarding the volume of privileged documents and how to proceed with respect to logging – for example, whether a categorical log would be appropriate for some or all of the RFPs, or whether there are specific people, time periods, or subject matter for which it would be appropriate for Uber to provide a standard privilege log.

**RFP No. 40**

Uber will get back to Waymo on whether it will agree to the proposal suggested in Mr. Judah's June 28 email.

**RFP No. 42**

Uber will get back to Waymo on whether it will agree to the proposal suggested in Mr. Judah's June 28 email.

Further, Waymo confirms that it is seeking all indemnification-related between Mr. Levandowski and Defendants, including any documents or communications regarding any indemnification demand by Mr. Levandowski and/or indemnification by Uber of Mr. Levandowski.  To the extent Uber will not produce these documents (which are also responsive to RFP No. 6), the parties are at an impasse.

**RFP No. 56**

Uber indicated that an additional production of responsive documents would be made by today.  To the extent Uber is withholding any responsive, non-privileged documents, the parties are at an impasse.

**RFP No. 58**

Uber agreed to get back to Waymo on whether it would agree to produce all non-privileged responsive documents by tomorrow morning's 10 AM meet and confer.  To the extent Uber intends to withhold any responsive, non-privileged documents in their possession, custody, or control, the parties are at an impasse.

**RFP Nos. 59, 60**

For these RFPs, Uber indicated it was not withholding any responsive, non-privileged documents.

**RFP Nos. 61, 62**

Waymo agreed that Uber need not search for or produce responsive documents with respect to Apparate International.  With respect to Dogwood Leasing and Pouch Holdings, Uber indicated it was not withholding any responsive, non-privileged documents.

**RFP Nos. 64, 80, 86**

Uber represented that it is not withholding any responsive documents on grounds other than privilege.  If additional responsive documents are located, Uber will either produce them or promptly notify Waymo of objections so that the parties can meet and confer.

## RFP No. 66

Uber maintained its privilege objection, but acknowledged that some or all of these documents will be produced if the Federal Circuit appeals do not maintain that privilege.

## RFP No. 72

Waymo agreed to limit the scope of this RFP (without prejudice) to just Mr. Levandowksi's use of a personal computer while working at or for Uber/Ottomotto.  Uber agreed to get back to Waymo about this proposal.  If Uber does not agree, the parties are at an impasse.

## RFP No. 74

Waymo asked for more information about whether, as Uber has suggested, its specific servers or networks (e.g., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ do not keep any records of whether a particular Uber employee has accessed them, or whether such records are kept but do not indicate whether the employee is accessing from a personal rather than an Uber-issued computer.  If the latter, then any records of access by Mr. Levandowski that pre-date the date he was issued an Uber computer would be records of access by a personal computer, and therefore should be produced.  If Uber cannot clarify how it has determined that there are no responsive documents, then the parties are at an impasse.

## RFP No. 78

Uber agreed to get back to Waymo as to whether it would agree to produce all agreements with Mr. Burnette, Ms. Delauney, and Mr. van den Berg (including side letter agreements).  Uber will get back to Waymo regarding whether any side letter agreements exist between any Defendant and any Ottomotto founder (including these three individuals).

## RFP No. 79

Uber will get back to Waymo as to whether any side letter agreements exist (RFP No. 78), and then the parties will meet and confer regarding this RFP.

## RFP No. 84

Uber agreed to get back to Waymo as to whether it would agree to produce all agreements with Mr. Burnette, Ms. Delauney, and Mr. van den Berg (including compensation-related agreements).  Uber will get back to Waymo regarding whether it is withholding any compensation-related agreements with any Ottomotto founder (including these three individuals) on any grounds.

## RFP No. 85

Uber will get back to Waymo on whether it will agree to the proposal suggested in my January 28 email.  Also, Uber will get back to Waymo on whether it will agree to prioritize documents and communications regarding negotiations of these compensation-related agreements.  Finally, Uber will get back to Waymo on whether it

will agree to include Mr. Burnette, Ms. Delauney, and Mr. ven den Berg in their definition of "founder of OTTOMOTTO."

## RFP No. 87

Uber will get back to Waymo with the volume of responsive, privileged documents this week, at which point the parties will meet and confer regarding how to proceed with respect to privilege logging vis-à-vis the pending appeals regarding the due diligence report.

## RFP Nos. 88, 89

Uber will get back to Waymo regarding whether Ottomotto negotiated with anyone other than Uber.  To the extent there are no such negotiations, then there will be no burden with respect to RFP No. 89.  To the extent Uber refuses to agree to produce documents responsive to these RFPs, the parties are at an impasse.

## RFP Nos. 90, 91

Uber represented that it is not withholding any responsive documents on grounds other than privilege.  If additional responsive documents are located, Uber will either produce them or promptly notify Waymo of objections so that the parties can meet and confer.

Also, Waymo had specific questions about the scope of the search for responsive documents, particularly No. 91, and whether "Authorized Devices" are limited to phones or whether it also includes laptops.  Uber will get back to Waymo on these questions.

Thanks.

**Andrea Pallios Roberts**
*Of Counsel,*
Quinn Emanuel Urquhart & Sullivan, LLP

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
650-801-5023 Direct
650.801.5000 Main Office Number
650.801.5100 FAX
andreaproberts@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

==========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

==========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.