Case 3:17-cv-00939-WHA   Document 879-12   Filed 07/12/17   Page 1 of 7

# EXHIBIT 12
# FILED UNDER SEAL

```
 1              IN THE UNITED STATES DISTRICT COURT FOR THE
 2                    NORTHERN DISTRICT OF CALIFORNIA
 3                          SAN FRANCISCO DIVISION
 4
 5      WAYMO, LLC,                    )
 6              Plaintiffs,            )
 7              - vs -                 ) Case  No.
 8      UBER TECHNOLOGIES, INC.,       ) 3:17-cv-00939
 9      OTTOMOTTO LLC; OTTO            )
10      TRUCKING, LLC,                 )
11              Defendants.            )
12      _____
13
14
15          VIDEOTAPED DEPOSITION OF JOHN BARES,
16      a witness, called by the Plaintiff for examination,
17      in accordance with the Federal Rules of Civil
18      Procedure, taken by and before Tammie Elias, RPR and
19      Notary Public in and for the Commonwealth of
20      Pennsylvania, at the office of Reed Smith, 225 Fifth
21      Avenue, Suite 1200, Pittsburgh, Pennsylvania, on
22      Friday, June 16, 2017, commencing at 9:05 a.m.
23
24      JOB No. 2640097
25      PAGES 1 - 317
```

Page 1

| | | | |
|---|---|---|---|
| 1 | | that -- | 02:16p |
| 2 | A. | I think.  Now -- | 02:16p |
| 3 | | MR. BRILLE:  Let him finish his | 02:16p |
| 4 | | question.  It was about a half of a question. | 02:16p |
| 5 | A. | Sorry.  Let you finish your question. | 02:16p |
| 6 | BY MR. JUDAH: | | 02:16p |
| 7 | Q. | So it was on that January 12th phone call that | 02:16p |
| 8 | | document began to be drafted by the Uber side? | 02:16p |
| 9 | A. | As far as I know.  It is certainly conceivable | 02:16p |
| 10 | | that that document which consisted of like 12 | 02:17p |
| 11 | | bullets might have been drafted by somebody | 02:17p |
| 12 | | that I don't know about in December, but I | 02:17p |
| 13 | | think it was done live in that first meeting. | 02:17p |
| 14 | | I looked at the date stamp on the document and | 02:17p |
| 15 | | it is January 12th, so I'm pretty sure it | 02:17p |
| 16 | | happened in that meeting. | 02:17p |
| 17 | Q. | You're saying that there were kind of separate | 02:17p |
| 18 | | bullets or separate requirements for a mid | 02:17p |
| 19 | | range long laser? | 02:17p |
| 20 | A. | Correct. | 02:17p |
| 21 | Q. | Did Uber's side say to Anthony Levandowski and | 02:17p |
| 22 | | Newco, we want a mid range laser, we want a | 02:17p |
| 23 | | long range laser and here's some requirement | 02:17p |
| 24 | | ideas we have or did the notion of supplying | 02:17p |
| 25 | | two lasers, a medium range laser and a long | 02:17p |

Page 178

| | | | |
|---|---|---|---|
| 1 | | range laser, did that come from Newco side? | 02:17p |
| 2 | | MR. BRILLE: Objection to form. | 02:17p |
| 3 | A. | So Mr. Levandowski came to the table in | 02:17p |
| 4 | | December with long range because he was doing | 02:18p |
| 5 | | the ▮▮▮▮▮ concept and that was our long | 02:18p |
| 6 | | range lasers for over-the-road vehicles, | 02:18p |
| 7 | | highway speed vehicles. When we started | 02:18p |
| 8 | | talking to him then and in that January 12th | 02:18p |
| 9 | | discussion, we started talking about our needs | 02:18p |
| 10 | | and it emerged in that discussion that we also | 02:18p |
| 11 | | his long range laser idea wouldn't be enough, | 02:18p |
| 12 | | we needed a mid range. | 02:18p |
| 13 | BY MR. JUDAH: | | 02:18p |
| 14 | Q. | So while you were talking to Mr. Levandowski | 02:18p |
| 15 | | that week of January 12th, you were aware that | 02:18p |
| 16 | | he still had access to confidential | 02:18p |
| 17 | | information at Waymo; correct? | 02:18p |
| 18 | A. | Sure. | 02:19p |
| 19 | Q. | Putting ethics aside, do you think it would be | 02:19p |
| 20 | | useful for someone trying to build a medium | 02:19p |
| 21 | | range Lidar for Uber to have a spare copy of | 02:19p |
| 22 | | Waymo's specifications for medium range Lidar | 02:19p |
| 23 | | handy to consult? | 02:19p |
| 24 | | MR. BRILLE: Objection to form. | 02:19p |
| 25 | A. | Of course. I mean they are eight years ahead, | 02:19p |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | they had custom lasers.  It would be useful to | 02:19p |
| 2 | anybody to have that information, totally | 02:19p |
| 3 | unethical and illegal, but certainly useful. | 02:19p |
| 4 | BY MR. JUDAH: | 02:19p |
| 5 | Q.  And same question with respect to long range | 02:19p |
| 6 | Lidar.  Putting this aside, wouldn't it be | 02:19p |
| 7 | useful for someone trying to build a long | 02:19p |
| 8 | range Lidar for Uber to have a spare copy of | 02:19p |
| 9 | Waymo's specifications for long range Lidar | 02:19p |
| 10 | handy to consult? | 02:19p |
| 11 |         MR. BRILLE:  Same objection. | 02:19p |
| 12 | A.  Sure. | 02:19p |
| 13 | BY MR. JUDAH: | 02:19p |
| 14 | Q.  So -- | 02:19p |
| 15 | A.  And again unethical and illegal, but sure, why | 02:20p |
| 16 | not. | 02:20p |
| 17 | Q.  Were you at all concerned that by having these | 02:20p |
| 18 | discussions with Mr. Levandowski in January | 02:20p |
| 19 | with requirements for a long range and a | 02:20p |
| 20 | medium range laser and while you still had | 02:20p |
| 21 | access to Waymo confidential information with | 02:20p |
| 22 | their eight year head start, that there was | 02:20p |
| 23 | any incentive for Mr. Levandowski to take back | 02:20p |
| 24 | up copies of Waymo's specifications? | 02:20p |
| 25 |         MR. BRILLE:  Objection to form. | 02:20p |

| | | | |
|---|---|---|---|
| 1 | A. | I never thought of it as an incentive.  I | 02:20p |
| 2 | | thought of it more as a concern that I wanted | 02:20p |
| 3 | | to be sure that he didn't let any Waymo or | 02:20p |
| 4 | | other intellectual property, trade secrets, | 02:20p |
| 5 | | prior art, bleed into what he was building for | 02:21p |
| 6 | | us and that's why I mentioned it to him. | 02:21p |
| 7 | BY MR. JUDAH: | | 02:21p |
| 8 | Q. | What steps did Uber take to make sure that | 02:21p |
| 9 | | that didn't happen? | 02:21p |
| 10 | A. | So I brought it up with him.  He offered that | 02:21p |
| 11 | | he would make it part of our contractual | 02:21p |
| 12 | | agreement, that he would I guess state or | 02:21p |
| 13 | | guarantee, not quite a legal term, but | 02:21p |
| 14 | | guarantee that the intellectual property that | 02:21p |
| 15 | | he would build for us would be free and clear | 02:21p |
| 16 | | of others confidential proprietary | 02:21p |
| 17 | | information. | 02:21p |
| 18 | | I then pushed and had -- we did a | 02:21p |
| 19 | | diligence review and I also I don't know if I | 02:22p |
| 20 | | caused, I'd like to think that I caused to | 02:22p |
| 21 | | have happen the bad acts document that was | 02:22p |
| 22 | | created.  It maybe a standard document, I | 02:22p |
| 23 | | don't know because there wasn't one when they | 02:22p |
| 24 | | bought my piece.  So anyway, we created a bad | 02:22p |
| 25 | | acts document and I edited through it and felt | 02:22p |

Page 181

```
 1          I declare under penalty of perjury
 2   under the laws that the foregoing is
 3   true and correct.
 4
 5          Executed on _____ , 20___,
 6   at _____, _____.
 7
 8
 9
10               _____
11                        JOHN BARES
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```