**EXHIBIT A**

**PRIVILEGED AND CONFIDENTIAL**

ENGAGEMENT LETTER

VIA EMAIL

As of March 4, 2016

Eric Akira Tate
Partner
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105

Paul Sieben
Partner
O'Melveny & Myers LLP
2765 Sand Hill Road
Menlo Park, CA  94025


Dear Counsel:

Thank you to Morrison & Foerster LLP ("Morrison") and its client Uber Technologies, Inc. ("Uber"), to O'Melveny & Myers LLP ("O'Melveny") and its client Ottomotto LLC ("Ottomotto") for jointly engaging Stroz Friedberg, LLC.  This letter (the "Agreement") will serve to document the terms and conditions of our engagement.

Services

Morrison and  O'Melveny (each a "Client", and together "Clients") on behalf of their clients Uber and Ottomotto, respectively, have requested that Stroz Friedberg, LLC ("Stroz Friedberg"), among other things, provide forensic preservation and analysis, interviews, and document review in connection with an independent factual investigation  The purpose of the investigation is to ascertain facts that, in the opinion of Clients, bear on the issues of whether certain current or prospective employees (which for purposes of this Agreement includes non-employee service providers) of Ottomotto have improperly retained on devices or in storage repositories not belonging to former employers, confidential information belonging to former employers, and whether such current or prospective employeesr breached any fiduciary duty, duty of loyalty, or other confidentiality, non-solicitation, non-competition or other obligations based in contract, statute or otherwise, as such obligations are defined to Stroz Friedberg by Clients, to former employers of such current or prospective employees of Ottomoto. In conducting forensic searches, document review, and interviews, Stroz Friedberg will use criteria provided to us by Clients to aid Clients in their review of documents for potential relevance or potential privilege, it being understood that the ultimate decision to assert a privilege and/or the relevance of any particular document will be made by Clients pursuant to the protocol attached hereto as Exhibit A. Stroz Friedberg will report the results of its factual investigation to Clients pursuant to the protocol attached hereto as Exhibit A. These services constitute the "Engagement". Uber agrees to pay all fees, charges and disbursements incurred in connection with the Services, in accordance with the terms set forth in this Agreement. Stroz Friedberg is not authorized to practice law or provide legal services and that the services offered by Stroz Friedberg as part of the Engagement are limited to non–legal services.

Fees

a) General Rates. Stroz Friedberg charges for the time devoted to the Engagement on an hourly fee basis, at the rates in effect when the work is performed.  The current hourly rates are set forth as follows:  Chairmen and Executive Managing Directors: $1,000 - $1,150; Managing Directors and Vice Presidents: $680 - $850; Directors and Assistant Directors: $600 - $715; Consulting and Forensics

Professionals: $250 - $600; Data Discovery Professionals: $275 - $375; and Administrative Professionals: $110 - $275. These rates apply generally, as well as to travel. The use of subcontractors, if needed, will be charged at Stroz Friedberg's rates.

b) <u>Machine Time and Specialized Solutions</u>. The rate for machine time devoted to running a forensic process is $95 per hour. The rate for use of our proprietary host interrogation tool is $100 per host (capped at $150,000 per incident); our network traffic capture tool $1,500 per week; our proprietary incident response tool $5,000 per week per platform; the OmniPeek Network Analyzer $5,000 per week per platform; and our high speed, on-site malware analysis and forensic hosting tool, $2,500 per week per platform. Use of our mobile electronic disclosure/discovery processing, hosting and production unit will be charged at an amount to be structured depending upon the circumstances of the deployment.

c) <u>Electronic Discovery Services</u>. Any electronic discovery consulting services will be billed at the hourly rates set forth above. All other electronic discovery charges are detailed in Exhibit B.

d) <u>Intelligence and Investigations Division</u>. Forensic accounting, due diligence, or investigation services requested by Clients will be performed by our Intelligence and Investigations division at the rates in effect when the work is performed.

e) <u>Testimony</u>. Written testimony or reports will be provided at normal hourly rates. Internal peer review is part of an Engagement, and normal hourly rates will apply to any supervision of oral testimony and any internal peer review of proposed reports, affidavits, declarations or oral testimony.

f) <u>Retainer</u>. Stroz Friedberg requests an initial retainer of $75,000 to begin work in this Engagement. In cases where Stroz Friedberg's fees and charges approach the limit of the initial or a later retainer amount, Stroz Friedberg will request funds to replenish the retainer. At the end of the Engagement, Stroz Friedberg agrees to refund to Uber any amount of the retainer or replenishment, not properly applied to fees and costs incurred as of the date of termination.

g) <u>Miscellaneous Charges</u>. Stroz Friedberg may charge for other miscellaneous expenses, fees, and costs including, but not limited to, use of forensically-prepared thumb drives or hard drives (at $50 - $420 depending on size); other computer hardware and digital media; transportation, meals, and lodging; copies or printed documents; overnight delivery charges; storage fees for original media provided to Stroz Friedberg, after 30 days at rates up to $50 per month per item; credit check fees, and database searches. Stroz Friedberg reserves the right to pass on any reasonable legal fees and expenses that are incurred as the result of the Engagement but will notify Uber before such fees and expenses are incurred.

h) <u>Invoices</u>. The charges will be billed 100% to Uber. Stroz Friedberg will send invoices directly to Uber with a copy to Morrison. Invoices are due within 30 days of the invoice date. Morrison and Uber shall notify Stroz Friedberg in writing of any disputed charges within these 30 days; otherwise Stroz Friedberg's invoices shall be deemed payable in full. Any charges that remain undisputed and unpaid 30 days after the invoice date will accrue interest at 1.5 percent per month. Stroz Friedberg reserves the right to terminate its services at any time if Uber fails to pay Stroz Friedberg's invoices on time or fails to pay the requested refresher of a retainer. Any provided estimates of fees and expenses are only estimates and are not binding.

Confidentiality

The purpose of the Engagement is to enable Uber, Ottomotto, Anthony Levandowski and Lior Ron (who are parties to a Joint Defense and Common Interest Agreement), along with their respective counsel, to understand certain factual matters potentially relevant to potential litigation and related matters; therefore, Stroz Friedberg's communications with Clients, Uber, Ottomotto, (and Messrs. Levandowski and Ron (including their respective counsel), Stroz Friedberg's work product, and all information and data received from Clients, Uber, and Ottomotto(including its employees and/or their respective counsel) are covered by common interest, attorney-client privilege and/or attorney work product doctrine. Accordingly, Stroz Friedberg will maintain as confidential all information and data it receives from Clients, Uber, Ottomotto (including its employees), and Messrs. Levandowski and Ron (including their respective counsel) (the

2

"Confidential Information"), and not disclose any Confidential Information to any parties other than Clients, Uber, Ottomotto, or Messrs. Levandowski and Ron (including their respective counsel).  Any such disclosures of Confidential Information disclosures of data from Ottomotto or Messrs. Levandowski and Ron (including through their respective counsel) to Uber shall be governed by the protocol attached hereto as Exhibit A.

Stroz Friedberg agrees all communications (including emails) by it relating to the Engagement will be sent to all Clients together. In addition, all phone calls relating to the Engagement must include all Clients, unless otherwise agreed to in writing by all Clients. However, communications concerning general administrative or billing matters may be dealt with individually. In performing the Engagement, Stroz Friedberg agrees that only information relating to the Services and purpose of the Engagement may be disclosed to Morrison and Uber, <u>provided, however,</u> that in the event such information includes or may include confidential or proprietary information of a former employer of an Ottomotto employee, or there is any potential question or uncertainty whether information relates to the Services and purpose of the Engagement, such information will be disclosed to Clients only on an outside counsel attorney's eyes only (AEO) basis.  Notwithstanding the foregoing, under no circumstances will Stroz Friedberg disclose to Uber or Morrison or any of their representatives any attorney-client privileged communications between Ottomotto and/or any of its employees, stockholders, officers, members, managers or directors, on the one hand, and counsel for Ottomotto or counsel to any of such persons, on the other hand, that are disclosed to or discovered by Stroz Friedberg in its performance of the services.  For the avoidance of doubt, communications between Ottomotto and/or any of its employees, stockholders, officers, members, managers or directors, on the one hand, and any of the following attorneys and law firms, on the other hand, is attorney-client privileged communication and will not be disclosed by Stroz Friedberg to Uber or Morrison or any of their representatives: O'Melveny & Myers LLP, Fenwick & West LLP (including text messages with Ted Wang at 650-464-0059), Orrick, Herrington & Sutcliffe LLP, Donahue Fitzgerald LLP (including emails with John Gardner at jgard8167@gmail.com), Ognen Stojanovski at ognen@alumni.stanford.edu, Doug Mandell at dmandell@mlawgroup.com, Maureen Dorney at maureen@paradigmcounsel.com, GCA Law Partners LLP, or Levine & Baker LLP or any other attorney or law firm with whom such persons had attorney-client privileged communications.

Confidential Information does not include (1) information that has been or is, prior to the Engagement, in the public record, or is placed in the public record by Clients, Uber, or Ottomotto after the Engagement begins, through no unlawful act of anyone; (2) indications of compromise (i.e., data, configurations, specifications, and other conditions that are identified as malware, vulnerabilities, anomalies, compromises, or potentially harmful conditions) identified by Stroz Friedberg; or (3) facts necessary to set forth in proceedings for non-payment of invoices.  If Stroz Friedberg encounters what it deems to be any child pornography on any computer media delivered to it in the course of the Engagement, Stroz Friedberg reserves the right to disclose such contraband to the appropriate authorities.

<u>Authority to Access Data and Indemnification</u>

Uber and Ottomotto each authorize Stroz Friedberg to access the data related to this Engagement and represents that such access does not violate any applicable law or treaty.  Uber and Ottomotto agree to hold harmless and indemnify Stroz Friedberg, including its officers, employees, and agents against all third-party claims, damages and costs including attorneys' fees and disbursements arising from the Engagement, except for actions by Stroz Friedberg, its officers, employees, and/or agents that are adjudicated to constitute willful misconduct or gross negligence.

<u>Limitation of Liability and Damages</u>

Because digital equipment/data/media are fragile and may be damaged, infected, or corrupted prior to the time Stroz Friedberg receives them, other than due to its and their willful misconduct, Stroz Friedberg for itself and its officers, employees, or agents will not assume responsibility for damage that may occur to Uber's or Ottomotto's equipment/data/media prior to or during Stroz Friedberg's efforts to complete the Engagement.  As such, other than due to its willful misconduct of Stroz Friedberg will not be liable for direct or indirect damages arising from harm that may occur to Uber's, Ottomotto's, or Levandowski's equipment/data/media.  Any data, especially data restored from unknown sources, may contain viruses or

3

other malware; therefore, Clients, Uber and Ottomotto assume responsibility to protect themselves with respect to the receipt of data from Stroz Friedberg or any other party and shall advise its agents and third-party recipients to take similar precautions. Other than due to its and their willful misconduct, in no event shall Stroz Friedberg, its officers, employees, or agents be liable for damages, under any theory, beyond the amount paid to Stroz Friedberg under this Engagement.

Return of Client Materials

Prior to the end of the Engagement, Stroz Friedberg and Clients will confirm the disposition of any original materials provided by Client or Uber or Ottomotto, to Stroz Friedberg. In the event that, after using its reasonable efforts to do so, Stroz Friedberg is not able to return to Clients, Uber, or Ottomotto original materials provided by Clients, Uber, or Ottomotto to Stroz Friedberg, Stroz Friedberg reserves the right to destroy such original materials pursuant to its then-current destruction policy (subject to the preceding sentence).

Conflicts

This Engagement pertains to a discrete matter and would not preclude Stroz Friedberg from rendering services to other clients adverse to Clients or Uber or Ottomotto on matters that are not specifically related to this Engagement.

Miscellaneous

Clients, Uber, Ottomotto and Stroz Friedberg agree that the Engagement shall be governed by and construed and enforced in accordance with the internal laws of the State of California (as opposed to the conflict of law provisions) as an agreement made and to be performed entirely within such State. Clients, Uber, Ottomotto, and Stroz Friedberg agree that this Agreement (1) may not be modified or amended, except by a writing signed by each party; (2) shall be binding upon each party, its successors and permitted assigns; and (3) contains the entire agreement and understanding among Clients, Uber, Ottomotto, and Stroz Friedberg with respect to the subject matter hereof and supersedes all prior agreements and understandings, written or oral, among Clients, Uber, Ottomotto, and Stroz Friedberg with respect to the subject matter hereof. No provision of this Agreement may be waived except in writing by the party against whom such waiver is sought to be enforced. No express or implied waiver, breach or default by any party of any provision of this Agreement shall constitute a continuing waiver of such provision or of any other provision of this Agreement. Clients, Uber, Ottomotto, and Stroz Friedberg hereby consent to the jurisdiction of the Superior Court of the State of California for the County of Santa Clara and the United States District Court for the Northern District of California for all purposes in connection with the Engagement, and further consent that any process or notice of motion may be served as a notice, if in writing and given by (1) prepaid certified or regular first class mail, (2) personal delivery, or (3) nationally recognized overnight delivery service at the addresses set forth at the beginning of this letter, and shall be deemed given when sent, within or without the State of California, provided a reasonable time for appearance is allowed. This letter, along with the protocol attached hereto,amends, restates, and supersedes all previous communications between the undersigned regarding the Engagement.

4

Case 3:17-cv-00939-WHA Document 822-2 Filed 07/12/17 Page 6 of 9

If you find this letter satisfactory, kindly return an executed copy together with Uber's check or wire transfer in the amount of $75,000. Stroz Friedberg looks forward to working with you. Very truly yours,

STROZ FRIEDBERG, LLC

By: *[signature: Eric Friedberg]*
Eric Friedberg
Executive Chairman

AGREED TO AND ACCEPTED:
**Morrison & Foerster LLP**

By: _____
Eric Akira Tate
Partner

AGREED TO AND ACCEPTED:
**O'Melveny & Meyers**

By: *[signature]*
Paul Sieben
Partner

ACKNOWLEDGED AND AGREED TO:
**Uber Technologies, Inc.**

By: _____
Name:
Title:

ACKNOWLEDGED AND AGREED TO:
**Ottomotto LLC**

By: *[signature]*
Name: LIOR RON
Title: PRESIDENT

6

If you find this letter satisfactory, kindly return an executed copy together with Uber's check or wire transfer in the amount of $75,000. Stroz Friedberg looks forward to working with you. Very truly yours,

STROZ FRIEDBERG, LLC

By: _____
    Eric Friedberg
    Executive Chairman

AGREED TO AND ACCEPTED:
**Morrison & Foerster LLP**

By: _____
    Eric Akira Tate
    Partner

AGREED TO AND ACCEPTED:
**O'Melveny & Meyers**

By: _____
    Paul Sieben
    Partner

ACKNOWLEDGED AND AGREED TO:
**Uber Technologies, Inc.**

By:_____
  Name:
  Title:

ACKNOWLEDGED AND AGREED TO:
**Ottomotto LLC**

By:_____
  Name:
  Title:

6

If you find this letter satisfactory, kindly return an executed copy together with Uber's check or wire transfer in the amount of $75,000. Stroz Friedberg looks forward to working with you. Very truly yours,

STROZ FRIEDBERG, LLC

By: _____
    Eric Friedberg
    Executive Chairman

| AGREED TO AND ACCEPTED:<br>**Morrison & Foerster LLP** | AGREED TO AND ACCEPTED:<br>**O'Melveny & Meyers** |
|---|---|
| By: _____<br>    Eric Akira Tate<br>    Partner | By: _____<br>    Paul Sieben<br>    Partner |
| ACKNOWLEDGED AND AGREED TO:<br>**Uber Technologies, Inc.**<br><br>By: _____<br>    Name: Angela Padilla<br>    Title: Associate General Counsel,<br>          Employment and Litigation | ACKNOWLEDGED AND AGREED TO:<br>**Ottomotto LLC**<br><br>By:_____<br>   Name:<br>   Title: |

6

# EXHIBIT B

| EARLY CASE ASSESSMENT – FIRST GLANCE | |
|---|---|
| • First Glance Processing (*concept clustering, searching, visual data analysis, ability to cull data/promote docs for full processing to review platform*) | $ 125/GB |
| **PROCESSING** | |
| • Data culling (*de-NIST, dedupe, date and/or keyword filtering,*) | $ 75/GB |
| • Processing (*de-NIST, dedupe, extract text/metadata & embedded objects, promote to review*) | $ 295/GB |
| • Foreign Language Translation to English (*machine translation*) | $ 295/GB or $ .03/page |
| **PRE-PROCESSED DATA** | |
| • Ingestion of Pre-Processed Data (*Paper/ 3rd Party Productions/ Migrated Data*) | $ 75/GB |
| • OCR or other text extraction | $ 100/GB |
| **REVIEW ANALYTICS** | |
| • Relativity Analytics Bundle (*Near Duplication & Email Threading, Conceptual Search, Clustering, Categorization (Predictive Coding), Keyword Expansion*) | $175/GB |
| • Stroz Analytics Bundle (*Near Duplication & Email Threading, Conceptual Search, Clustering, Categorization (Predictive Coding), Keyword Expansion*)<br>  Note: Near dupe and threading can be unbundled upon request at $ 75/GB<br>  Note: Privilege Analytics can be unbundled upon request at $ 50/GB | $ 150/GB |
| **HOSTING** | |
| • Standard Hosting | $ 35/GB/month |
| • Near-line "In"/Active "Out" Hosting | $ 10/$ 35/GB/month |
| • User Licenses | $ 100/user/month |
| **PRODUCTION** | |
| • Tiff Generation | $ .03/page |
| • Tiff Bundle (Production including Bates Stamping, Branding & Watermarking) | $ .05/page |
| • Load File Delivery | $ 75/load file |
| • Output to Hard Drive | $ 175 to $ 400 per drive |
| • Output to CD/DVD | $ 35/$ 55 per media |
| **DATA STORAGE** | |
| • Data Deletion | No Charge |
| • Full Archiving | $ 35/GB |
| • Near Line Storage | $ 10/GB/month |
| **CONSULTING & ENGINEERING SERVICES** | |
| • Expert Consulting & Forensic Analysis | Per Engagement Letter |
| • Project Management & Exception Handling | Per Engagement Letter |
| • Customized Engineering Services | Per Engagement Letter |