MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
RUDY Y. KIM (CA SBN 199426)
RudyKim@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:    415.268.7000
Facsimile:     415.268.7522

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendant. | Case No.    3:17-cv-00939-WHA<br><br>**MORRISON & FOERSTER LLP'S RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Date:   August 16, 2017<br>Time:   8:00 a.m.<br>Ctrm:   8, 19th Floor<br>Judge:  The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

I Eric A. Tate, declare as follows:

1. I am a member of the bar of the State of California and a partner with Morrison & Foerster LLP, counsel of record for Defendants Uber Technologies, Inc. and Ottomotto LLC in this action. I am admitted to practice before this Court. I submit this declaration in support of MoFo's Response to the Court's Order to Show Cause. I make this declaration based on personal knowledge and based on my communications with my colleagues and my and their inspection of records. If called as a witness, I could and would testify competently to the matters set forth herein.

2. The Court has ordered MoFo to show cause why it is "not in violation of orders herein and should not be ordered to turn over all originals and copies of any files in their possession that originated from Waymo to either Waymo or the Court." The Court has further ordered that MoFo "explain what controlling authority allows someone to knowingly receive and keep suspected stolen property despite a demand or order that it be returned to its rightful owner" and that MoFo do so under oath. I address each of these directives below.

**THE MATERIALS AT ISSUE IN THE COURT'S ORDER.**

3. The Court's Order asks MoFo why it "should not be ordered to turn over all originals and copies of any files in their possession that originated from Waymo."

4. As we disclosed in Uber's Response to Waymo's Motion for Order to Show Cause (Dkt. 806), MoFo has in its possession exhibits to the Stroz due diligence report ("Stroz Exhibits"), which Judge Corley has reviewed *in camera* and which are subject to the pending Federal Circuit appeal and stay. MoFo ceased to have access to other files that it reviewed during the diligence process before this litigation commenced. Those who had access have confirmed that no copies of these other files exist at MoFo.

5. The Court's March 16 and May 11 Orders were directed at Uber. As it relates to MoFo, the May 11 Order instructed Uber to cause its "officers, directors, employees, and agents . . . to return the downloaded materials" to Waymo or the Court. (Dkt. 426 at 23.) Uber complied with this Order as set forth in Uber's Opposition to Waymo's Motion for an Order to

1  Show Cause. (Dkt. 806.) Uber logged documents that it had control of from the Stroz

2  investigation, which was conducted at MoFo's direction as an agent of Uber.

3  6. The Court's Order to Show Cause directed MoFo to explain why it "should not be
4  ordered to turn over all originals and copies of any files in their possession that originated from
5  Waymo." As this Court is aware, separate from our representation of Uber in this matter, MoFo
6  previously represented Anthony Levandowski personally in the two arbitration matters filed by
7  Google and Waymo against Mr. Levandowski. As part of our representation of Mr. Levandowski
8  in those arbitration matters, Mr. Levandowski authorized Stroz to release his materials in their
9  possession to our firm to provide him with counsel and to respond to discovery obligations. In
10 March 2017, we received some materials from Stroz (not all of them) and began review of these
11 materials before Mr. Levandowski retained separate counsel. We stopped the review very shortly
12 after we started because of the change in counsel. We do not know the contents of the vast
13 majority of these documents, including whether they would be responsive to the Court's Order.

14 7. When reviewing our files for purposes of this declaration, it came to our attention
15 following submission of Uber's Response to Waymo's Motion for an Order to Show Cause
16 (Dkt. 806) that we had inadvertently retained an electronic copy of these documents. These
17 documents were not referenced in Uber's July 5 filing (Dkt. 806) because our focus in preparing
18 that filing was on the materials that MoFo received during the due diligence period. In preparing
19 the July 5 filing, we did not focus on the fact that we had received some Stroz materials in
20 connection with representing Mr. Levandowski in the arbitrations. In preparing the present
21 declaration, we reviewed documents that we have received since this litigation was filed, and
22 these materials were located.

23 8. We informed Mr. Levandowski's counsel at the Ramsey & Ehrlich firm that we
24 had this electronic copy. Mr. Levandowski's counsel advised us that Mr. Levandowski has
25 asserted, and continues to assert, his rights under *United States v. Hubbell*, 530 U.S. 27 (2000),
26 and *Fisher v. United States*, 425 U.S. 391 (1976), as to any documents in the possession of his
27 own counsel or any common interest counsel, and instructed us to inform the Court that
28 Mr. Levandowski does not authorize our firm to disclose any of his materials that we received in

our capacity as his personal counsel.  (*See* Order Re Waymo Subpoena to Levandowski, Dkt. 802 at 5 (ruling that "Waymo's insistence that its 'right to return of its stolen property' trumps Levandowski's Fifth Amendment privilege is specious.").)

9. Separately, in connection with a subpoena propounded directly to Stroz, Waymo and Mr. Levandowski are still litigating whether any materials in Stroz's possession that were provided by Mr. Levandowski are covered by his attorney-client, common-interest, and Fifth Amendment privileges.  On June 30, 2017, the Federal Circuit entered a stay preventing the compelled production of these materials in response to Waymo's subpoena to Stroz.  The materials at issue under the Stroz subpoena include those later provided to our firm in our role as Mr. Levandowski's arbitration counsel.

**MOFO HAS COMPLIED WITH THE COURT'S ORDERS REGARDING THE STROZ REPORT AND EXHIBITS.**

10. The Court's Order asks why MoFo is "not in violation of orders herein."  MoFo has complied with every order pertaining to the Stroz Exhibits as described below.

11. **March 16, 2017 Order re Expedited Discovery**.  (Dkt. 61.)  The Court ordered defendants to produce all files and documents downloaded by Mr. Levandowski, Sameer Kshirsagar, or Radu Raduta.  In response to this Order, Uber prepared privilege logs for potentially responsive but privileged documents in its possession, custody or control.  (*See* Rivera Decl. ¶ 2, Dkt. 806-5.)  The privilege logs comply with the Court's rules, which require a party asserting privilege to list, in addition to the location where the document was found:

> (a) all persons making or receiving the privileged or protected communication;
> (b) the steps taken to ensure the confidentiality of the communication, including affirmation that no unauthorized persons have received the communication;
> (c) the date of the communication; and
> (d) the subject matter of the communication.

(6/17/2016 Suppl. Order To Order Setting Initial Case Mgmt. Conf. In Civil Cases Before J. William Alsup at 5; *cf.* Uber's Privilege Logs, Dkts. 248-1, 633-2, 633-4, 633-6, 806-6.)  Those logs disclosed that MoFo had possession of the Stroz Exhibits that MoFo received when it represented Uber during the due diligence investigation and disclosed the basis for withholding

those documents from production. (*See* Dkts. 248-1, 633-2, 633-4, 633-6, 806-6.) The privilege logs did not disclose documents that MoFo had received in connection with our representation of Mr. Levandowski in the arbitration matters, which were not in Uber's possession, custody, or control.

12. **April 25, 2017 Order re Defendants' Privilege Log and Due Diligence Report.** (Dkt. 271.) The Court set a briefing schedule for Waymo to move to compel production of the Stroz due diligence report and exhibits. As part of its briefing schedule, the Court ordered Uber to provide a copy of the Stroz Report and exhibits for *in camera* review. MoFo provided this copy to Judge Corley on May 8, 2017.

13. **May 11, 2017 Provisional Relief Order.** (Dkt. 426.) The Court required Uber to provide an accounting of individuals who had seen or heard downloaded materials, as defined by the Court, and a chain of custodians for the Stroz due diligence report, including the Stroz Exhibits. MoFo accounted for all MoFo personnel who had seen or heard the Stroz Exhibits and provided information about the chain of custodians for each copy of the Stroz Exhibits in MoFo's possession as directed by the Court's Order.

14. **June 8, 2017 Order re Waymo's Motion to Compel.** (Dkt. 566.) After reviewing the Stroz Report and exhibits *in camera*, Judge Corley compelled production of documents including the Stroz Exhibits. However, she stayed the Order until further order of this Court.

15. **June 21, 2017 Order Denying Motions for Relief from Judge Corley's Nondispositive Pretrial Order Re Due Diligence Report.** (Dkt. 685.) The Court adopted Judge Corley's June 8 recommendation but stayed its Order until June 30, 2017 at noon to give defendants and Levandowski time to seek emergency relief from the Federal Circuit. Levandowski sought emergency relief but Uber did not. The Court also ordered that "[t]he due diligence report submitted for Judge Corley's in camera review shall be preserved for the Federal Circuit." (*Id.* at 14.)

16. **June 29, 2017 Order of the Federal Circuit.** (Dkt. 838; Fed. Cir, Case No. 17-2235, Dkt. 4.) The Federal Circuit temporarily stayed this Court's June 21, 2017 Order pending

resolution of Levandowski's motion for a stay pending appeal.  On July 6, 2017, Levandowski filed a reply brief in support of his motion for a stay.  (Fed. Cir., Dkt. 9.)  The Federal Circuit has not ruled on Levandowski's motion.

17. MoFo has complied with each of the Court's Orders relating to the Stroz Exhibits.

**THE EXHIBITS IN MOFO'S POSSESSION ARE NOT "STOLEN PROPERTY" THAT NEEDS TO BE RETURNED TO WAYMO.**

18. Finally, the Court has asked us to "explain what controlling authority allows someone to knowingly receive and keep suspected stolen property despite a demand or order that it be returned to its rightful owner."

19. In her June 26, 2017 Order re Uber's Privilege Log (Dkt. 731 at 2), Judge Corley put to rest any notion that MoFo had assisted in any crime:

> Further, based on the Court's review of the entire record in this case, including the *in camera* Stroz Report, the Court found that Uber retained MoFo to conduct an investigation into Levandowski and Otto and to create an evidentiary record that would govern Uber's obligation to indemnify Levandowski and Otto in any lawsuit brought by Waymo. The Court does not find that Uber retained MoFo to assist with obtaining Waymo's trade secrets.

20. Nor is MoFo relying on any permission under civil or criminal law to "keep suspected stolen property."  MoFo is prepared to produce the Stroz Report and exhibits if the Federal Circuit rules in Waymo's favor.  We note, however, that in the context of intellectual property misappropriation, such intellectual property is not necessarily "stolen property."  *See Dowling v. United States*, 473 U.S. 207, 217 (1985) (bootleg music albums not stolen property where defendant "does not assume physical control over the copyright; nor does he wholly deprive its owner of its use.").

21. For the avoidance of doubt, with respect to the documents that MoFo received from Stroz in connection with its representation of Anthony Levandowski, Uber has never had possession, custody, or control over these records and the documents and they are being withheld solely at the direction of our former client, Anthony Levandowski.  With respect to these documents, Mr. Levandowski contends that the attorney-client privilege protects them under the two-part test of *Fisher v. United States*, 425 U.S. 391 (1976) this Court previously articulated:

"First, the client must be privileged against production of the document in question, 'either as a party at common law' or under the Fifth Amendment. Second, the client must have transferred the document in question to the attorney 'for the purpose of obtaining legal advice.'" (Order Denying Motion to Modify Privilege Log Requirements Based on Fifth Amendment, Dkt. 202 at 8); *see also Lowthian v. United States*, 575 F.2d 1292 (9th Cir. 1978) (same).

22. As to the first factor, Magistrate Corley has ruled that Waymo cannot compel Mr. Levandowski to produce those records. (*See* Order Regarding Waymo Subpoena to Levandowski, Dkt. 802 (ruling that "Waymo's insistence that its 'right to return of its stolen property' trumps Levandowski's Fifth Amendment privilege is specious.").) As to the second factor, Mr. Levandowski transferred those documents in March 2017 to MoFo, who were his attorneys in the arbitration at the time, for the purpose of obtaining legal advice in the arbitration matters.

23. In sum, Mr. Levandowski contends that the Court's and Judge Corley's rulings regarding attorney-client and Fifth Amendment privilege, respectively, apply here such that MoFo can hold the materials in question if we possess them by virtue of personally representing Mr. Levandowski in conjunction with the arbitration proceedings.

I declare until penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 12th day of July, 2017, in San Francisco, California.

MORRISON & FOERSTER LLP

By: */s/ Eric A. Tate*
ERIC A. TATE