**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

July 13, 2017

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:    *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Waymo respectfully submits this Opposition to non-party Lior Ron's ("Ron") Motion to intervene and quash or limit certain requests in the third-party subpoena issued to Stroz Friedberg LLC ("Stroz"). Ron's request comes far too late, after both the Magistrate Judge and the District Court have ruled that the subpoena is enforceable.[1]  (Dkts. 670, 745.)  That, as he claims, Ron was not provided notice of the subpoena to Stroz is no excuse.  Indeed, Ron is either employed by (Ottomotto/Uber) or partially manages/owns (Otto Trucking) Defendants.  And Ron's motion rests on the unsupported notion that Stroz was obligated to keep the materials he provided to Stroz private. If that was true, one would have expected Stroz to give notice to Ron that these materials were implicated.

Ron's argument that he only first learned of the subpoena on June 21 does not excuse his delay. At a minimum, Ron had constructive notice of the subpoena as one of two managing members of Defendant Otto Trucking, as a founder of Defendant Ottomotto, and as a Senior Director of Defendant Uber, all of whom filed their own motions to quash the subpoena and opposed Waymo's motion to compel.  These facts not only demonstrate that Ron's request to intervene is untimely, they also confirm that his interests have been adequately represented during the course of these extensive proceedings.

Additionally, to the extent Ron lacked actual notice of the subpoena, that fact only serves to illustrate his lack of a reasonable expectation of privacy in the disputed materials.  It was Defendants Uber and Ottomotto who drafted the investigation protocol, and it was Stroz that took possession of Ron's materials.  Thus, if anyone had a responsibility to provide notice to Ron of the subpoena, it was some combination of Uber, Ottomotto, and Stroz.  The fact that *none* of these entities provided such notice indicates that Ron voluntarily surrendered his materials without any restrictions.  Under these circumstances, no reasonable expectation of privacy can arise.  For these reasons, and those set forth below, Ron's request to quash or limit the subpoena should be denied.

---

[1]    Levandowski has filed a notice of appeal and an emergency motion to stay which is currently pending before the Federal Circuit.  (US CAFC Case No. 17-2253.)

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

**Argument**

**I.      The Court Should Deny Ron's Motion To Intervene.**

As an initial matter, the Court should deny Ron's motion to intervene as "untimely" under Fed. R. Civ. P. 24(a)(2). A timely motion is a threshold requirement for intervention. *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015). This is particularly true where, as here, serial motion practice is delaying the production of relevant material and causing prejudice to Waymo. *Id.* Ron did not first seek intervention until June 23—after the Magistrate Judge's ruling on the subpoena—and even then he did so by improperly appealing directly to the District Court. (Dkt. 729.) In fact, his motion now comes over a week after the District Court has affirmed the Magistrate Judge's ruling, and even <u>after</u> his co-principal at Otto Trucking appealed those rulings with the Federal Circuit.

Ron argues that the Court should excuse his tardiness because he "first became aware of the Stroz subpoena after the Court's June 21, 2017 Order . . . ." (Dkt. 805 at 2; *see also* Dkt. 729-2 at ¶¶ 6-7.) But, Ron is one of two managing members of Defendant Otto Trucking. Otto Trucking filed both a motion to quash the subpoena and an opposition to Waymo's motion to compel (Dkts. 580 & 617.) So to the extent Mr. Ron did not somehow know about the subpoena, that is the fault of Otto Trucking's counsel or his own counsel. Ron is also a founding member of Defendant Ottomotto, and a "Senior Director" of Defendant Uber (Dkt. 792-2 at ¶ 1), both of whom <u>also</u> vigorously opposed enforcement of the subpoena. (Dkts. 580, 581, 616, & 617.) To the extent his own employer did not alert Mr. Ron, that is Uber's, its counsel's and his counsel's fault. Indeed, Ron's attorneys admit that they are actively monitoring the docket in this case (Dkt. 729-1 at ¶ 5).

Moreover, Waymo's subpoena to Stroz and motion to compel has been a matter of public record since at least June 8. (Dkt. 570.) Under these circumstances, Ron, at a minimum, had constructive notice of the subpoena and should have moved to intervene much earlier. *United States v. Oregon*, 913 F.2d 576, 589 (9th Cir. 1990) ("A party seeking to intervene must act as soon as he **knows or has reason to know** that his interests might be adversely affected by the outcome of the litigation.") (quotation omitted) (emphasis added); *see also MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377 (2d Cir. 2006) (holding that in determining timeliness, Court should consider the length of time the purported intervenor "**knew or should have known**" of his alleged interest before he petitioned to intervene) (emphasis added); *Culbreath v. Dukakis*, 630 F.2d 15, 20 (1st Cir. 1980) (same). Thus, Ron's request to intervene now is untimely, and should be denied.

Ron says Stroz also did not notify Ron of the subpoena at any time after the May 10 service date. In its initial objections and responses to the Subpoena, Stroz expressly acknowledged that it had obligations to some, undisclosed "Third Persons." (Dkt. 570-3 (objecting that Stroz could not produce documents "without the express written permission of the defendants in the above-captioned action ("Defendants") or any other relevant third persons ('Third Persons')."). Soon after, Levandowski (but not Ron) sought to intervene and quash the Subpoena. If Stroz did not provide notice to Ron, that is either the fault of Stroz, or Ron himself for failing to obligate Stroz to provide such notice.

Ron also faults Waymo for not informing him of the subpoena. (Dkt. 805 at 1.) It is unclear why Ron feels Waymo had any obligation to notify him of a subpoena to Stroz. But in any event, Defendants have consistently withheld the details of the protocol governing the Stroz investigation. Waymo was not even aware that Ron's personal devices were imaged *en masse* during the lengthy motion practice on the subpoena. Indeed, as Ron admits (*id.*), Waymo had no reason to know of this

2

fact until Ron's deposition on June 19—just 2 days before the Magistrate Judge granted Waymo's Motion to Compel.

Ron also fails to establish other prerequisites for intervention. As discussed below, Ron fails to establish even a *prima facie* case for the existence of his supposed privacy interest, much less meet his burden of establishing a "significantly protectable" interest. (*Infra* Section II.) Moreover, Ron fails to establish that his privacy interest is not adequately represented by the virtually identical objection by Levandowski for which the Magistrate Judge has reserved ruling. (Dkt. 670 at 9.) Indeed, in determining that Ron's prior request was improper, Judge Alsup noted that Ron's objections were "similar" to those raised by Levandowski, and appeared to suggest that the Magistrate Judge's eventual ruling on the Levandowski issue might obviate the need for a separate ruling with respect to Ron. (Dkt. 745 at 6.) For all of these reasons, the Court should deny Ron's request for intervention as untimely, unnecessary, and designed only to further prolong resolution of these subpoena issues.

## II. Ron Lacks Standing To Object To The Stroz Subpoena.

"In general, a party has no standing to quash a subpoena served upon a third party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena." *Wells Fargo & Co. v. ABD Ins.*, Case No. C 12-03856 PJH, 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012). The party seeking to quash bears the burden of establishing standing with competent evidence. *United States v. Tomison*, 969 F. Supp. 587, 596 (E.D. Cal. 1997). Absent standing of the moving party, the court lacks jurisdiction to quash. *Id.*

Ron provides no evidence in support of the present Motion, and instead relies upon the Declarations submitted in support of his Objections to Judge Alsup. (Dkt. 729-2.) There, Ron vaguely stated that it was his "expectation" that his private information would not "be used for any purpose other than the due diligence evaluation." (Dkt. 729-2 at ¶ 5.) But Ron provides no evidence to support this "expectation." Indeed, this information was voluntarily surrendered by Ron to a third-party (Stroz) in order to facilitate due diligence by Ottomotto and Uber, both of whom the Court has already determined where "adversaries" of Ron at this time. (*See* Dkt. 566 at 15-16.) The very fact that Ron would share this information with his adversaries in this manner underscores his lack of a reasonable expectation of privacy. (*Infra* Section III ¶ 4.)

Additionally, Ron apparently shared this alleged private information with Stroz without insisting on any restrictions as to how Stroz could use such information. Indeed, the evidence in this case demonstrates that under the protocol drafted by Uber, Levandowski and Ron did ***not*** expect that the information they provided to Stroz would necessarily be kept confidential—that is why Levandowski (but, apparently not Ron) insisted upon a separate side-agreement with Stroz in order to govern the disposition of information that Levandowski provided to Stroz. (Dkt. 546-3.) Ron cites to no similar side-agreement that would have obligated Stroz to maintain privacy over any information that Ron provided to Stroz. The very fact that Stroz apparently did not inform Ron of the subpoena is strong evidence that no such obligation applied. Under these circumstances, Ron has no reasonable expectation of privacy in the information he voluntarily surrendered to Stroz, and he therefore lacks standing to intervene in this matter.

### III.   Ron's Motion Fails On The Merits

The party seeking to quash a subpoena bears the "burden of persuasion" that the discovery sought is not proper. *United States v. Real Property & Improvements Located at 2441 Mission St., San Francisco, California*, No. C 13-2062 SI, 2013 WL 6774081, at *2 (N.D. Cal. Dec. 23, 2013). Tellingly, although Ron is similarly situated to Levandowski in regards to the subpoena, Ron does *not* claim (as Levandowski did) that information provided by him to Stroz is somehow subject to his attorney-client privilege. Rather, Ron's objection is limited to his purported right of privacy which he contends is "guaranteed by the California Constitution" and "recognized federally." (Dkt. 805 at 3.) Ron, however, fails to meet his burden of persuasion that the subpoena implicates his protected right of privacy at all.

As an initial matter, Ron's request to quash or limit the subpoena is untimely for the same reasons his request to intervene is untimely. (*Supra* Section I.) The Court has already ruled on the enforceability of the subpoena, and Ron should not now be able to attack those findings with yet another round of motion practice.

Ron also fails to establish his alleged right of privacy. In discussing the narrow concept of "information privacy" that is created under state law, the California Supreme Court has noted that a "legally protected" interest is not even implicated unless "well-established social norms recognize the need to maximize individual control over [the information's] dissemination and use to prevent unjustified embarrassment or indignity." *Pioneer Electronic (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 370 (2007) (quotation and citation omitted). Only after this showing is made is the privacy interest of a third-party "measured against other competing or countervailing interests in a 'balancing test.'" *Alch v. Superior Court*, 165 Cal. App. 4th 1412, 1423-24 (2008); *see also McArdle v. AT&T Mobility LLC*, Case No. C 09-1117 CW (MEJ), 2010 WL 1532334, at *6 (N.D. Cal. April 16, 2010) ("[I]n balancing the competing interests present here, the Court finds that the balance weighs in favor of disclosure."). The Court should compel even information subject to a valid privacy interest of a third-party where such information is "directly relevant" and "essential to the fair resolution" of the claims at issue. *Alch*, 165 Cal. App. 4th at 1428. Production is particularly warranted where there is a "strong protective order already in place to protect the information sought." *Id.* at 1439.

As an initial matter, Ron fails to provide evidence that Stroz even possesses information subject to his claim of privacy. The most Ron is able to say in his Declaration is that "*[i]t is my understanding* that Stroz imaged files from all of my personal devices and Cloud accounts." (Dkt. 729-2 ¶ 8 (emphasis added).) Likewise, his attorney merely avers as to his own "understanding" that "more than six hundred thousand files were imaged from Ron's devices, emails, and Cloud accounts." (Dkt. 729-1 ¶ 6.) In other words, it is not even clear from the evidence provided whether and to what extent Stroz is in possession of Ron's personal documents. There is no reason why Ron should not be able to obtain from Stroz the details of any sensitive information that he provided. Because he has failed to do so, the Court should decline to quash the subpoena on uncertain and speculative grounds. *See F.T.C. v. Ameridebt, Inc.*, Case No. C-058025JSWEDL, 2006 WL 618563, at *2 (N.D. Cal. Mar. 13, 2006) (holding that third-party's argument that private and confidential documents existed in his email account was "baseless," because third-party never submitted any evidence at the Motion to Quash stage to support that assertion).

Even assuming, as Ron claims, that he turned over to Stroz documents reflecting "the entirety of [his] digital life over several years" (Dkt. 805 at 5), this does not establish grounds to quash the

subpoena.  The reason why such a broad range of documents are allegedly responsive to the subpoena is not because of improper or overbroad requests by Waymo to Stroz; it is because ***Defendants*** who, based on their awareness of the relevant circumstances, required Ron to make this broad disclosure to Stroz as part of the due diligence process into Uber's proposed acquisition of the Otto entities.  Defendants determined that collecting complete, forensic images of all of Ron's digital information was critical to their investigation of the prior "Bad Acts" of Otto principals, and Ron acquiesced to this collection when it was in his own self-interest to do so.  As a result, Waymo should now be entitled to the same access that was provided to Defendants and their agents.  Ron cannot now selectively and belatedly assert privacy rights over information that he previously surrendered voluntarily to Stroz.  To the extent the documents produced by Stroz include Ron's private information, the existing protective order in the case is adequate to protect against inappropriate use of such documents.

Finally, the Court should also deny Ron's alternative request for a protective order.  Ron requests that the Court limit the scope of the subpoena "to only those materials that are relevant to this litigation." (Dkt. 805 at 6.)  But, this sort of relief is completely unworkable, and allowing Stroz to withhold documents that it unilaterally deems irrelevant risks the concealment of potentially highly relevant information.  As Defendants themselves recognized in fashioning the due diligence process, the problem here is that Otto principals are suspected to have stolen Waymo information and comingled it with personal information in their vast digital repositories.  Thus, the only way to ensure that Waymo's information is fully disentangled is to collect complete digital images that can be forensically and comprehensively searched for potentially misappropriated materials.  In short, before Waymo can even begin to search for the "needle in the haystack," it first needs access to the entire haystack.

For all of these reasons, the Court should deny Ron's motion to quash or for protective order and enforce the subpoena.

Respectfully,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

cc:     All counsel of record; Special Master John Cooper