QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa J. Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>        vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S OPPOSITION TO UBER'S MOTION IN LIMINE REGARDING ITS LEGAL COUNSEL**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

Per the Court's Order Regarding Early Motions *in limine* and Related Matters (Dkt. No. 784), Plaintiff Waymo LLC ("Waymo") respectfully opposes Uber's motion *in limine* seeking to exclude any reference to Morrison & Foerster's ("MoFo") role in Uber's acquisition of Ottomotto.

Uber's *entire* substantive argument as to this MIL is as follows (Dkt. 809 ("Br.") at 1):

> Uber will not be calling anyone from MoFo as a witness at trial. Moreover, Magistrate Corley has already considered and rejected Waymo's assertion that the crime fraud exception should apply in this case. (Dkt. No. 731 at 2 ["The Court does not find that Uber retained MoFo to assist with obtaining Waymo's trade secrets."].) Thus, MoFo's role in the acquisition is irrelevant to the issues in this trial and any remote relevance is substantially outweighed by the probability that the jury will be confused or that Uber will be prejudiced, because the only reason Waymo would mention MoFo's involvement is to suggest wrongdoing by Uber's trial counsel.

As explained below, Uber fails to justify its MIL for each of these conclusory arguments.

## I. MOFO'S POSSESSION OF OR ACCESS TO THE STOLEN DOCUMENTS IS RELEVANT TO MULTIPLE ASPECTS OF WAYMO'S TRADE SECRET CLAIMS

Uber's statement that "MoFo's role in the acquisition is irrelevant to the issues in this trial" (Br. at 1:7-8) is untrue for several reasons. First, Waymo has contended that the knowledge and actions of Uber's agents, included MoFo and Stroz Friedberg, should be imputed to Uber. (*See, e.g.*, Dkt. No. 784, ¶ 6.) While this issue is currently being briefed by the parties, (*see* Dkt. No. 824), should Waymo be permitted to argue that MoFo's knowledge or actions are legally imputed to Uber, then MoFo's role in the acquisition of Ottomotto and MoFo's resulting possession and access to the stolen files is obviously relevant to the Waymo's trade secret claims. In such an instance, reference to MoFo and its role in the acquisition would be unavoidable to show possession of the stolen materials by Uber's agents.

Second, even absent imputation, MoFo's possession of the stolen documents, the circumstances under which it acquired those documents, and the treatment of those documents after acquisition by MoFo are all directly relevant to Waymo's trade secret claims. MoFo was deeply involved in the due diligence relating to the acquisition of Ottomotto, including the due diligence that resulted in the report created by Stroz Friedberg and ordered to be produced to Waymo. (Dkt. 685 at 3-4, 9-10.) Thus, MoFo undoubtedly has knowledge relevant to "what Uber knew and when they knew it," which the Court stated is "one of the key issues in the case."

(6.14.17 Hearing Tr. at 40:10-11.)  And as a practical matter, MoFo and its attorneys are deeply embedded in the evidentiary record — they signed the Stroz Friedberg retainer on behalf of "their client[] Uber," they are likely referenced repeatedly in the due diligence report and its exhibits, and they appear on many hundreds of entries on Uber's privilege logs in response to the March 16 Order.  The jury is likely to be confused if such highly relevant documents are excluded from evidence, or if such documents only enter with heavy redactions to conceal references to MoFo, and Waymo would face severe prejudice in presenting the factual record surrounding the preparation, contents, and distribution of the due diligence report.

Moreover, the fact that any of the stolen documents were or are in the possession of MoFo at any point during or after the acquisition of Ottomotto is overwhelming proof that the documents were misappropriated from Waymo in the first instance.  Though "Waymo has made a strong showing that [Anthony] Levandowski absconded with over 14,000 files from Waymo," (Dkt. 426 at 7), Uber has apparently not conceded that point, arguing that there is no "evidence that the 14,000 files that Waymo *alleges* Anthony Levandowski improperly downloaded and kept ever made their way to Uber."  (Dkt. 824 at 1 (emphasis added).)  Waymo must be permitted to demonstrate that the 14,000 files were actually taken from Waymo — which can be logically proven by showing that these files made their way to MoFo.

Uber has also recently implied that MoFo's testimony regarding such materials in its possession is unique and that Waymo cannot obtain such testimony from another source.  Specifically, in response to Waymo's motion for an order to show cause, Uber argued that "Uber has never had possession, custody, or control over these [Stroz Report] materials," despite the materials being in MoFo's possession.  (Dkt. 885 at 15.)  Indeed, Uber argued that it "did ***not know MoFo even had these materials***." (*Id.* (emphasis added).)  If Uber's argument that it is unaware of what MoFo did with the materials that MoFo possessed on Uber's behalf, then MoFo attorneys may be the ***only*** percipient witnesses who can testify on this subject.  Fed. R. Evid. 602.  It is likely for this reason that Uber's own Initial Disclosures listed no fewer than seven MoFo attorneys as persons likely to have discoverable information under Fed. R. Civ. P. 26(a)(1)(A)(i).  (Dkt. 879-9 at 16.)

1  Uber next argues that Magistrate Corley's ruling not to apply the crime-fraud exception to
2  the Uber-MoFo relationship (Dkt. No. 731 at 2), resolves the question of relevance. But this
3  argument overextends the breadth and import of that ruling. As is evident from Magistrate
4  Corley's ruling, the Court was considering only the narrow issue of whether certain documents
5  needed to be produced to Waymo despite a claim of attorney-client privilege, not ruling
6  conclusively that MoFo played no role in Uber's misappropriation of trade secrets. (Dkt. 731 at
7  2:25-3:1 ("That in the course of that investigation MoFo received documents that may be
8  Waymo's trade secrets, does not mean that Waymo has shown by a preponderance of the evidence
9  that Uber's and MoFo's communications were made in furtherance of a criminal scheme.
10 Evidence developed later may show otherwise, but that is the state of the record at this time.").)
11 Moreover, even assuming that Uber did not retain "MoFo in January/February 2016 to assist it
12 with the crime of receiving stolen property" (*id.* at 2:20-21), that finding would not end the inquiry
13 here. (*Id.* at 2.) MoFo need not have been retained for the purpose of receiving stolen property, or
14 even involved in wrongdoing, in order to have information relevant to *Uber's* misappropriation of
15 Waymo's trade secrets.

16 Finally, Uber's statement that *Uber* will not call a witness from MoFo at trial (Br. at 1:4) is
17 obviously insufficient to justify preclusion. *Waymo* presently intends to call MoFo attorneys
18 Rudy Kim and Eric Tate on issues relating to Uber's trade secret misappropriation, including those
19 outlined above. (Dkt. 797-3.) MoFo may not shield itself and Uber from this line of inquiry
20 merely because *they* are opting not to present affirmative argument.

21 **II.    UBER MAKES NO SHOWING OF PREJUDICE TO OUTWEIGH RELEVANCE**

22 While a district court is not required to explain precisely how it conducts its Federal Rule
23 of Evidence 403 balancing, it must provide a sufficient record for an appellate court to review its
24 discretion. *See, e.g.*, *US v. Breitkreutz*, 8 F.3d 688 (9th Cir. 1993). But here, Uber has laid no
25 factual predicate to support Rule 403 preclusion. It instead makes a cursory statement that
26 "relevance is substantially outweighed by the probability that the jury will be confused or that
27 Uber will be prejudiced, because the only reason Waymo would mention MoFo's involvement is
28 to suggest wrongdoing by Uber's trial counsel." (Br. at 1:8-10.) This is untrue, as discussed

above. Testimony regarding MoFo, and from MoFo witnesses, is relevant either with or without a showing of wrongdoing by MoFo.

Moreover, any prejudice that Uber might suffer is of Uber's own choice and making. Waymo's theories and inquiries into MoFo's involvement have been clear for months, Uber has retained separate trial counsel in Boies Schiller Flexner LLP (Br. at 1:1-2), and yet Uber has apparently opted to proceed with MoFo as trial counsel as well. Uber may choose to weigh and waive the conflict inherent in having its trial counsel as factual witnesses, but that does not preclude Waymo from presenting relevant facts and evidence underlying its trade secret claims.

### III. TO EXTENT THERE IS PREJUDICE, THE COURT SHOULD DISQUALIFY MOFO AS TRIAL COUNSEL

Should the Court agree that there is "probability that the jury will be confused or that Uber will be prejudiced" due to evidence of MoFo's role in the Otto acquisition "suggest[ing] wrongdoing by Uber's trial counsel" (Br. at 1:9-10), the Court should prevent this potential confusion or prejudice by disqualifying MoFo from acting as trial counsel in this action. As described above, several MoFo witnesses have relevant, admissible evidence regarding Uber's acquisition of Otto. MoFo is an important player in the circumstances leading to what Uber knew about the misappropriated files in use at Otto and Uber, and when Uber learned those facts. Thus, the proper remedy for MoFo running afoul of the advocate-witness rule is not to preclude relevant MoFo evidence; rather, it is to disqualify MoFo as trial counsel.

An attorney is precluded from acting as both an advocate and a witness unless one of three exceptions applies: "(A) The testimony relates to an uncontested matter; or (B) The testimony relates to the nature and value of legal services rendered in the case; or (C) The member has the informed, written consent of the client." Cal. R. Prof. Conduct 5-210. As MoFo has not stipulated that its actions taken and information received in Uber's due diligence and the Otto acquisition is imputable to Uber, or that the misappropriated materials were passed from MoFo to Uber, exception (A) is inapplicable. Similarly, Waymo is not seeking to introduce testimony that would fall under exception (B). Furthermore, there is no indication that Uber and Otto have provided informed, written consent for MoFo to act as both trial counsel and percipient witness in the action.

Regardless, even if MoFo received client consent from Uber and Otto, the Court may still disqualify MoFo from acting as trial counsel. Although consent may generally prevent an adversary from disqualifying counsel under the advocate-witness rule, California courts have disqualified counsel under Rule 5-210 despite client consent. *Caluori v. One World Techs., Inc*., No. CV 07–2035 CAS (VBKx), 2012 WL 2004173, at *4-*6 (C.D. Cal. June 4, 2012). Indeed, "prohibit[ing] an attorney from both an advocate and a witness in the same proceeding[] has long been a tenet of legal ethics in the American legal system[.]" *Id.* at *4 (quoting *Kennedy v. Eldridge*, 201 Cal. App. 4th 1197, 1208 (2011)). California courts may look to the American Bar Association Model Rules (ABA Model Rule 3.7 does not contain a carve out for client consent), as well as rely on their "inherent power and discretion to disqualify counsel in order to maintain the ethical standards of professional responsibility." *Id.* at *4-*5. In these circumstances, the Court can determine whether, "based on the evidence supplied to the trial court, . . . 'a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process'" would result from the dual role. *Smith, Smith & Kring v. Superior Court*, 60 Cal. App. 4th 573, 579 (1997) (quoting *Lyle v. Superior Court*, 122 Cal.App.3d 470, 482 (1981)).

Although the general rule is that only testifying lawyers (and not an entire firm) are disqualified by California Rule 5-210 (*see id.* at Discussion), MoFo's widespread involvement in the due diligence investigation and Otto acquisition warrants extending the rule in this circumstance. Indeed, when making its preclusion argument in the present motion *in limine*, MoFo did not distinguish between prejudice based on testifying versus non-testifying MoFo attorneys. To the extent the Court finds undue prejudice and jury confusion from MoFo acting as both trial counsel and witnesses, such a finding means that the dual role would undermine the integrity of the judicial proceedings.

**IV.   CONCLUSION**

For these reasons, Waymo respectfully requests that the Court deny Uber's motion *in limine*. To the extent the Court determines that testimony from or relating to MoFo should be limited in any way, due to the dual-role MoFo has played, the appropriate remedy is disqualification, not prejudice to Waymo's case.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: July 14, 2017 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 3 | | By /s/ Charles K. Verhoeven |
| 4 | | Charles K. Verhoeven<br>Attorneys for WAYMO LLC |