QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>            Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S RESPONSE TO MOFO'S AND STROZ'S ORDER TO SHOW CAUSE RESPONSES (DKTS. 882-883)** |

## I. INTRODUCTION

On July 3, 2017, the Court issued an Order to Show Cause why Defendants' counsel Morrison & Foerster ("MoFo") and Defendants' agent Stroz Friedberg ("Stroz") "are not in violation of orders herein and should not be ordered to turn over all originals and copies of any files in their possession that originated from Waymo to either Waymo or the Court." (Dkt. 795.) On July 12, MoFo and Stroz filed responses to the Order to Show Cause. (Dkt. 882 ("Stroz Response"); Dkt. 883 ("MoFo Response").) But far from demonstrating compliance with the Court's Orders, these responses further show how MoFo and Stroz have violated these Orders and should be held in contempt.

MoFo's response admits that MoFo has possessed a previously-undisclosed electronic copy of stolen Waymo files (*i.e.*, the "downloaded materials") since at least March 2017, after receiving these materials from Stroz. (MoFo Response at ¶¶ 7-8.) To reiterate: despite multiple Court orders requiring that these stolen files be returned to Waymo, MoFo now admits that it has possessed these files since March yet has made no move to return them. Equally egregiously, MoFo's recent admission means that MoFo misled Waymo and the Court when it previously stated that it did ***not*** possess these files. For example, on July 5 MoFo attorney Wendy Ray had submitted a sworn declaration stating that MoFo did not possess any of the downloaded materials, except to the extent any of these materials were attached as exhibits to the Stroz due diligence report. (Dkt. 806-3 at ¶ 7 ("MoFo does not have any downloaded materials (or any copies, excerpts or summaries thereof), except to the extent that any such material may appear excerpted in or as an exhibit to the Stroz Report").) Yet a week later, MoFo's July 12 response to the Order to Show Cause now states that MoFo has in fact possessed a previously-undisclosed set of the downloaded materials since March 2017:

> [S]eparate from our representation of Uber in this matter, MoFo previously represented Anthony Levandowski personally in the two arbitration matters filed by Google and Waymo against Mr. Levandowski. As part of our representation of Mr. Levandowski in those arbitration matters, Mr. Levandowski authorized Stroz to release his materials in their possession to our firm to provide him with counsel and to respond to discovery obligations. In ***March 2017***, we received some materials from Stroz . . . . When reviewing our files for purposes of this declaration, it came to our attention following submission of Uber's Response to Waymo's Motion for an Order to Show Cause (Dkt. 806) that we had inadvertently retained an electronic copy of these documents. These documents were not referenced in Uber's July 5 filing . . . .

(MoFo Response at ¶¶ 6-7) (emphasis added).

Notably, MoFo does not specify the precise date in March when it received these materials, rendering it ambiguous whether MoFo received these materials before or after the March 16 Expedited Discovery Order. Either way, of course, MoFo was obliged to produce these materials in response to the Expedited Discovery Order. Indeed, as detailed below, MoFo's recent response simply accentuates how MoFo (and Stroz) are in violation of the Court's Orders.[1]

## II.    MOFO IS IN VIOLATION OF THE COURT'S ORDERS FOR FAILING TO RETURN DOWNLOADED MATERIALS THAT IT NOW ADMITS IT HAS POSSESSED SINCE MARCH 2017

To recap the Court Orders at issue: the Expedited Discovery Order (Dkt. 61) stated that "[b]y March 31, defendants shall produce for inspection all files and documents downloaded by Anthony Levandowski, Sameer Kshirsagar, or Radu Raduta before leaving plaintiff's payroll and thereafter taken by them." (*Id.* at ¶ 4.) The PI Order (Dkt. 426) stated that "Defendants must immediately and in writing exercise the full extent of their corporate, employment, contractual, and other authority to (a) prevent Anthony Levandowski and all other officers, directors, employees, and agents of defendants from consulting, copying, or otherwise using the downloaded materials; and (b) cause them to return the downloaded materials and all copies, excerpts, and summaries thereof to Waymo (or the Court) by **MAY 31 AT NOON.**" (*Id.* at 23 ¶ 2.) The PI Order also states that Defendants must provide a detailed accounting of all individuals who have received downloaded materials. (*Id.* at 24 ¶ 4.)

---

[1] Nor is this the only recent example of conflicting accounts from Uber over who received the downloaded materials and when. Uber's most recent Paragraph Four Accounting, filed on June 28, identifies Mr. Levandowski and Lior Ron as among the Uber personnel who received copies of the Due Diligence Report. (Dkt. 762 at 9.) Before he was fired, Mr. Levandowski was Uber's Vice President of Engineering. Mr. Ron remains to this day a Senior Director at Uber. But Uber's Statement in Response to Paragraph 7 of Order re Early Motions in Limine and Related Matters, filed on July 7, does not identify either Mr. Levandowski or Mr. Ron as among the "board member[s], in-house counsel, or other officer or director of Uber who read or received any part of the due diligence report or its exhibits, whether in final or draft form, as well as the approximate date(s) that each such individual read or received it." (*See* Dkt. 823.) Uber subsequently confirmed, on July 9, that Mr. Ron was sent the Due Diligence Report on August 8, 2016, but muddied the water even further as to Mr. Levandowski — stating (without explanation) that it knows he received a copy of the Due Diligence Report, but does not know who sent it to him, or when. (Judah Decl., Ex. 1 [7.09.2017 Wendy Ray email].)

Despite these two Orders, it is now clear that MoFo has possessed one set of downloaded materials since March 2017 and has not returned these materials to Waymo. The facts also show that MoFo has access to a separate set of downloaded materials through its litigation support vendor, Epiq Systems, Inc., for MoFo's use in the *Google-Levandowski* arbitrations — and MoFo has not returned this set of downloaded materials either. Nor has MoFo properly disclosed either set of downloaded materials under Paragraph 4 of the PI Order. For all these reasons, MoFo is in violation of the Expedited Discovery Order and PI Order.

### A. MoFo Cannot Excuse Its Actions By Claiming That It Possesses The Downloaded Materials as Counsel for Mr. Levandowski Instead of Counsel for Defendants

MoFo argues that it has no obligation to return the downloaded materials because MoFo supposedly received them in its capacity as counsel for Mr. Levandowski, not in its capacity as counsel for Defendants. (MoFo Response at ¶ 21 ("with respect to the documents that MoFo received from Stroz in connection with its representation of Anthony Levandowski, Uber has never had possession, custody, or control over these records and the documents and they are being withheld solely at the direction of our former client, Mr. Levandowski.").) This argument is specious. Defendants have argued — thus far successfully — that Uber and Mr. Levandowski had a common legal interest in Mr. Levandowski's theft of Waymo's files, once the Put Call Agreement was signed in April 2016 that provisionally bound Uber to acquire Mr. Levandowski's company, Ottomotto. (*See* 6.26.17 Judge Corley Order (Dkt. 731) at 3-4.) Indeed, Uber was obligated to indemnify Mr. Levandowski for his theft of Waymo's files, under the terms of the Put Call Agreement. (*Id.*) Notably, MoFo never says that it is barred from sharing its copy of the downloaded materials with Uber — which is unsurprising, given that Uber claims it shared a common interest with Mr. Levandowski regarding these materials and agreed to indemnify Mr. Levandowski for his theft of them. Indeed, it is likely, given MoFo jointly represented Mr. Levandowski and his employer Uber, that MoFo was allowed to use documents Mr. Levandowski provided to assist both.

Thus, upon this record, MoFo had an obligation to produce these materials as ***Uber's*** agent in order to comply with the Court's Orders for Uber to produce these materials. *See* Fed. R. Civ.

1  P. 65(d)(2)(B) (injunctive orders against a party apply to that party's attorneys and agents); *Kirk v.*
2  *Schaeffler Grp. USA, Inc.*, No. 3:13-CV-5032-DGK, 2016 WL 740300, at *1 fn. 1 (W.D. Mo. Feb.
3  24, 2016) ("when the Court directs 'Plaintiff' or 'Defendants' to do something, that directive
4  applies to the litigant and the litigant's attorneys, experts, witnesses, and anyone else to whom the
5  directive could conceivably apply.").

6        MoFo's Response seems to suggest that, until recently, MoFo thought these downloaded
7  materials had been deleted or destroyed instead of retained.  (MoFo Response at ¶ 7 ("When
8  reviewing our files for purposes of this declaration, it came to our attention following submission
9  of Uber's Response to Waymo's Motion for an Order to Show Cause (Dkt. 806) that we had
10 inadvertently retained an electronic copy of these documents.").)  This excuse does not hold water.
11 Even if MoFo had previously thought that this set of downloaded materials was no longer
12 "retained," MoFo still had a duty to report and account for this set of materials under Paragraph 4
13 of the PI Order.  Yet until its July 12 Response, MoFo gave no indication that this set of
14 downloaded materials even existed.

15       A similar analysis applies to the downloaded materials that MoFo directed Stroz Friedberg
16 to send to MoFo's litigation support vendor, Epiq Systems, Inc., for MoFo's use in the *Google-*
17 *Levandowski* arbitrations.  (Dkt. 762 at 2 and 6-7.)  MoFo's Response alludes to this category of
18 downloaded materials, but never identifies Epiq by name, never explains what restrictions (if any)
19 attached to Epiq's receipt of those downloaded materials or MoFo or Uber's ability to obtain or
20 access them (including directly through Epiq's Relativity viewer), never identifies who is paying
21 Epiq to store those downloaded materials, and never identifies any efforts to return those
22 downloaded materials to Waymo or the Court.  Uber and MoFo have even refused to disclose
23 when Epiq received those downloaded materials (or when they were received by Mr.
24 Levandowski's personal counsel, John Gardner), despite the Court's clear instructions in the PI
25 Order that Defendants' Paragraph Four Accounting must set forth "every person who has seen or
26 heard any part of any downloaded materials, what they say or heard, ***when*** they saw or heard it,
27 and for what purpose."  (PI Order at 24 ¶ 4 (emphasis added).)
28

**B.     MoFo Cannot Excuse Its Actions by Arguing That The Downloaded Materials Are Somehow Privileged**

MoFo also argues that the downloaded materials it received from Stroz are subject to attorney-client privilege under *Fisher v. United States*, 425 U.S. 391 (1976).  (MoFo Response at ¶ 21.)  This is both incorrect and irrelevant.  It is incorrect because *Fisher* allows for privilege if two conditions are met: "*First*, the *client* must be privileged against production of the document in question, 'either as a party at common law' or under the Fifth Amendment.  *Second*, the client must have transferred the document in question to the attorney 'for the purpose of obtaining legal advice.'"  (Court's 4.10.17 Order (Dkt. 202) at 8:16-19) (quoting *Fisher*, 425 U.S. at 404-05) (Court's emphasis).  But here, the documents in question were not transferred from Mr. Levandowski to MoFo.  They were instead transferred from ***Stroz*** to MoFo.  MoFo admits this expressly.  (MoFo Response at ¶ 6.)  The fact that these documents went to Stroz for due diligence purposes before being later routed to MoFo takes this factual situation outside the ambit of *Fisher*.  The Court explained this precise point at length in its April 10 Order (reference to the "third party" in this Order is a reference to Stroz):

> the policy considerations underlying *Fisher* counsel against application of the attorney-client privilege here.  As stated, the record does not show that Levandowski communicated the [] information at issue in confidence to his attorney for the purpose of obtaining legal advice.  Indeed, if Levandowski transferred any incriminating documents to the third party, it would seem he did so for the purpose of selling his ventures to Uber for $680 million.  In contrast, *Fisher* involved individuals who transferred documents to their personal attorneys for legal advice in connection with IRS investigations.  It did not involve a joint defense agreement. Not did it involve presenting documents to a non-lawyer.  Nor did it involve presenting documents to a consultant for due diligence by the other side in an acquisition. *Fisher* is very far removed from the circumstances of our case, which simply do not involve the kind of client-attorney communications that *Fisher* intended to protect.

(4.10.17 Order (Dkt. 202) at 11:10-20.)  The Court's April 10 Order thus conclusively defeats the *Fisher*-related privilege argument that MoFo now makes.

MoFo's argument is not only substantively incorrect, but it is also procedurally irrelevant.  Again, the Orders that required MoFo to produce the downloaded materials are the Expedited Discovery Order and the PI Order.  If MoFo believed that the downloaded materials were privileged from disclosure under *Fisher* — such that they did not need to be produced under the

Expedited Discovery and PI Orders — then MoFo had a duty to seek modification of those Orders or appeal them.[2]  MoFo did neither.  Thus, MoFo cannot raise its supposed privilege concerns as a reason to disobey these Orders.

### C. MoFo's Argument That the Downloaded Materials Are Not "Stolen Property" Is Incorrect

In response to the Court's directive for MoFo to "explain what controlling authority allows someone to knowingly receive and keep suspected stolen property despite a demand or order that it be returned to its rightful owner" (Dkt. 795 at 1:22-23), MoFo states that "in the context of intellectual property misappropriation, such intellectual property is not necessarily 'stolen property.'"  (MoFo Response at 5:18-19.)  This position is meritless.  First, the materials at issue here are discrete files stolen from Waymo.  These files are clearly "property."  Second, even if one focuses on the incorporeal trade secrets embodied in these files, rather than the files themselves, trade secrets are "property" as well.  The *Silvaco* case — which has been cited repeatedly by both Uber and the Court during the course of this lawsuit — makes that clear.  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) ("the only property interest that Silvaco could have in that software under the facts alleged in the pleadings is a trade secret.")  And while the civil tort pled by Waymo in this case is trade secret "misappropriation," such misappropriation can also constitute the crime of trade secret "theft" under both California and Federal law.  *See* Cal. Penal Code § 499c(b) (referring to "theft" of trade secrets); 18 U.S.C. § 1832(a)(1) (referring to "steal[ing]" of trade secrets).  For all these reasons, MoFo's position that misappropriated trade secret documents are not "stolen property" is meritless.

Indeed, the only case MoFo cites for this position is *Dowling v. United States*, 473 U.S. 207 (1985), which did not deal with trade secrets at all.  *Dowling* instead held that the transportation of copyright-infringing records across state lines does not violate a particular Federal statute criminalizing the interstate transportation of goods known to have been "stolen,

---

[2]  By way of illustration, Mr. Levandowski sought modification of the PI Order when he believed that this Order impinged on his Fifth Amendment rights (Dkt. 466), and the Court stayed compliance with the PI Order in relation thereto in order to allow time for that issue to be briefed.  (Dkt. 471.)

converted or taken by fraud." *Id.* (citing 18 U.S.C. § 2314) ("Section 2314").  Relying in part on the legislative history of Section 2314 and the separate body of criminal copyright-infringement law, *Dowling* held that the transport of copyright-infringing goods did not infringe Section 2314.

There are numerous reasons why *Dowling* does not support MoFo's argument that it has not retained "stolen property."  First, it is questionable whether *Dowling* can be extended from the copyright context to the trade secret context at all.  *See, e.g., United States v. Kwan*, No. 02 CR. 241 (DAB), 2003 WL 21180401, at *2 (S.D.N.Y. May 20, 2003) (noting that *Dowling* has been restricted to the copyright context and not extended to other forms of intellectual property). Second, *Dowling* did not purport to address the metes and bounds of "stolen property" in the abstract — it was expressly limited to the scope of Section 2314.  And third, MoFo's retention of the downloaded materials would constitute "stolen property" even under *Dowling*.  As *Dowling* stated: "cases . . . . prosecuted under § 2314 have always involved physical 'goods, wares, [or] merchandise' that have themselves been 'stolen, converted or taken by fraud.' . . . the provision seems clearly to contemplate a physical identity between the items unlawfully obtained and those eventually transported, and hence some prior physical taking of the subject goods." *Dowling*, 473 U.S. at 216.  Here, the Waymo files were actually stolen by Mr. Levandowski, and there is a "physical identity" between those files and the files retained by MoFo.

In sum, the files that MoFo possesses and refuses to return certainly constitute "stolen property," notwithstanding MoFo's arguments to the contrary.

### III. STROZ IS IN VIOLATION OF THE COURT'S ORDERS FOR FAILING TO RETURN THE SAME SET OF DOCUMENTS

For much the same reason that MoFo is in violation of the Court's Orders, Stroz is in violation as well.  As recounted above, the copy of downloaded materials that MoFo has possessed since March 2017 and is refusing to produce is a copy that MoFo received ***from Stroz***.  Similarly, the copies of downloaded materials received by MoFo's litigation support vendor and Mr. Levandowski's personal counsel were received ***from Stroz***.  There also is no dispute that Stroz itself still possesses other copies of these downloaded materials, including the user-generated content that was extracted and sent to Epiq and Mr. Gardner, the actual physical devices

themselves, and forensic images of those devices. (*See, e.g.*, Dkt. 762 at 6-7.) Just as MoFo was obliged to produce these materials in response to the Court's Orders, so too was Stroz.

After all, Stroz is Defendants' "agent" just as much as MoFo is. Defendants' counsel repeatedly called Stroz their "agent" at a discovery hearing before Judge Corley. (5.25.17 Hearing Tr. at 24:6-7; 38:5-12; 53:4-9.) Thus, Stroz was bound to produce its copies of the downloaded materials in response to the Expedited Discovery and PI Orders. Fed. R. Civ. P. 65(d)(2)(B) (party's agents are bound by court orders). By failing to do so, Stroz is in violation of those Orders.

Stroz argues that it is not in violation because one particular Order — namely, the Order for Stroz to produce the downloaded materials *in response to the Stroz subpoena* — has been appealed to the Federal Circuit and is stayed pending Federal Circuit resolution. (Stroz Response at 3:3-4:6 (recounting the procedural history of the Stroz subpoena Order).) But this overlooks the fact that the Stroz subpoena Order is not the only order that requires Stroz to produce the downloaded materials. The Expedited Discovery Order and PI Order also require Stroz to produce these materials. As with MoFo, if Stroz wished to resist producing the downloaded materials in response to those Orders, it had a duty to appeal or seek modification of *those Orders*. Yet it never did so. Those Orders remain fully in force and are not stayed pending appeal. Thus, Stroz plainly has an obligation to produce the downloaded materials in response to those Orders, even if the separate Stroz subpoena Order is temporarily stayed.

Stroz also argues that "it is in an impossible position — either honor its contractual obligations and Mr. Levandowski's asserted Fifth Amendment rights and asserted attorney-client privileges and attract the ire of the Court [by refusing to produce the downloaded materials], or breach those obligations and ignore Mr. Levandowski's asserted constitutional rights and privileges." (Stroz Response at 5:1-4.) But Stroz's position is not "impossible" at all — there are multiple ways for Stroz to resolve its supposed dilemma without disobeying the Court's Orders. First, as noted above, Stroz could have promptly appealed every Court Order requiring it to produce the downloaded materials and sought a stay of its production obligations pending appeal. Second, Stroz could have informed Mr. Levandowski that it intended to comply with the Court's

1  Orders and thereby but the burden on him to seek modification and/or a stay of those Orders.  But
2  instead, Stroz has chosen to retain the downloaded materials in the face of two unstayed,
3  unappealed Court Orders to produce them.  Thus, Stroz is squarely in violation of these Orders.

5  DATED:  July 17, 2017              QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                      By     */s/ Charles K. Verhoeven*
                                         Charles K. Verhoeven
                                         Attorneys for WAYMO LLC