QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa J. Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>        Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S OPPOSITION TO UBER AND OTTOMOTTO'S MOTION TO ENFORCE THE COURT'S JUNE 7, 2017 ORDER, STRIKE WAYMO'S SUPPLEMENTAL INITIAL DISCLOSURE, AND PRECLUDE DAMAGES CLAIMS AND CERTAIN WITNESSES**<br><br>Date: August 10, 2017<br>Time: 8:00 a.m.<br>Ctrm: 8, 19th Floor<br>Judge: The Honorable William H. Alsup<br><br>Trial Date: October 10, 2017 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................2

II. BACKGROUND ....................................................................................................................2

    A. Waymo's Damages Disclosures Were Sufficient In The Context Of Asymmetric Damages Discovery ............................................................................2

    B. Waymo Still Needs Evidence From Uber in Order to Quantify Harm ......................5

    C. Waymo's Damages Disclosures In The Context Of Fairness ...................................7

    D. Waymo's Inadvertent Omission Of Witnesses (For Less Than 24 Hours) ................8

III. ARGUMENT .........................................................................................................................8

    A. Waymo's Damages Disclosures Were Sufficient As Of The Time They Were Made .................................................................................................................8

    B. Uber Has Not Alleged Any Specific Prejudice Relating To Waymo's Damages Disclosures ...............................................................................................11

    C. Preclusion Of Compensatory And Exemplary Damages Is Not An Appropriate Remedy ..............................................................................................11

    D. Uber's Motion Regarding Inadvertently Disclosed Witnesses Should Also Be Denied ................................................................................................................13

IV. CONCLUSION ....................................................................................................................13

-1-
WAYMO'S OPPOSITION TO UBER AND OTTOMOTTO'S MOTION TO STRIKE

## I. INTRODUCTION

Uber's motion to strike Waymo's damages disclosures should be denied.  <u>First</u>, Waymo's disclosures were sufficient at the time they were made, especially given that Uber will not even ***begin*** producing damages-specific discovery until July 28.  <u>Second</u>, Uber has not articulated any colorable claim of prejudice in their motion.  Indeed, Waymo has been providing damages-specific discovery to Uber on an ongoing basis and has already produced thousands of lines of financial information, estimates of the time to develop each of its trade secrets on a trade secret by trade secret basis, estimates of the cost to develop each of its trade secrets on a trade secret by trade secret basis, etc.  <u>Third</u>, Uber has not cited any case in which preclusion has been imposed as a sanction for allegedly inadequate disclosures where time to amend within the fact discovery period remains.  Indeed, the Ninth Circuit has cautioned against preclusion as a sanction even for egregious discovery conduct if the result would be the dismissal of a claim or a request for exemplary damages.  <u>Fourth</u>, Uber ignores its own violations of Rule 26 in bringing this motion to strike.  Uber's barely-disguised motion for summary judgment of no damages should be denied.  Uber's request to strike 14 witnesses inadvertently omitted from Waymo's initial disclosures (which were corrected a day later) should be denied as well.

## II. BACKGROUND

### A. <u>Waymo's Damages Disclosures Were Sufficient In The Context Of Asymmetric Damages Discovery</u>

On February 23, Waymo filed its complaint.  Fifteen days later, Waymo filed a motion for expedited discovery and a motion for a preliminary injunction.  On March 16, this Court ordered Defendants to produce the files downloaded by Levandowski and others, the media used for the downloads, and all subsequent emails, memoranda, PowerPoints, text messages, or notes referring to the downloaded materials by March 31 (Dkt. 61 at 2) – although none of the downloaded materials were actually produced on that date.  The Court also ordered that "Plaintiff may depose the declarants who submit declarations in opposition to the motion for preliminary injunction" as well as three additional officers, directors or employees of defendants," for "a total of 18 hours of deposition time (not counting breaks)[.]"  (*Id.*)  And the Court further allowed Waymo to serve

document requests that "must be very narrowly drawn and limited to six requests per deponent." (*Id.*) For from the period March 23 to May 4, both parties were engaged in significant expedited discovery concerning Waymo's request for provisional relief enjoining Defendants from accessing, using, or disclosing Waymo's trade secrets and from making, using, selling, or offering to sell devices that infringe two of Waymo's asserted patents. None of this discovery was directed toward Waymo's monetary damages claim.

On May 11, the Court issued its preliminary injunction order, granting in part Waymo's request for injunctive relief. Among other things, the Court ordered:

> Waymo is hereby granted further expedited discovery in **aid of possible further provisional relief**. Subject to the protective order, and upon reasonable notice, Waymo's counsel and one expert may inspect any and all aspects of defendants' ongoing work involving LiDAR — including, without limitation, schematics, work orders, source code, notes, and emails — whether or not said work resulted in any prototype or device. With respect to its trade secret misappropriation claims *only*, Waymo may take seven further depositions on seven calendar days notice, may propound 28 reasonably narrow document requests for which the response time is reduced to 14 calendar days, and may propound 28 reasonably narrow interrogatories for which the response time is also reduced to 14 calendar days. If Waymo moves for further provisional relief before trial, then all its declarants in support of such motion must sit for depositions on an expedited basis. Otherwise, defendants may take only normal, unexpedited discovery. **After Waymo has exhausted its expedited discovery, it may continue with normal discovery**.

Dkt. 426 at 25-26 (emphases added.) This expedited discovery, by definition, was also not directed toward Waymo's monetary damages claims.

After the Court issued its PI Order, Waymo promptly began issuing expedited discovery requests. Waymo also attempted to simultaneously pursue non-expedited, general discovery. But Defendants filed a motion to prohibit Waymo from conducting any general discovery until the second phase of expedited discovery was completed. (Dkt. 439.) Magistrate Judge Corley granted Defendants' request to delay Waymo from obtaining any discovery not in furtherance of injunctive relief: "Waymo must first proceed with the expedited discovery ordered in the district court's preliminary injunction order. Once Waymo exhausts the expedited discovery, it may continue discovery with the standard deadlines." (Dkt. 441.) As a result, Waymo's initial non-

expedited requests for production were stayed pending the conclusion of expedited discovery. (*Id.*)

Waymo exhausted its second round of expedited requests for production on May 26. However, because of the earlier stay of non-expedited discovery, none of Defendants' responses to any of Waymo's general discovery requests were due until late June. (Ex. 1.)[1] Then, at the June 7 Case Management Conference, Defendants raised with the Court the number of requests for production that Waymo had served to date (265) and asked for relief from any further document requests. The Court, after extending the close of fact discovery from July to late August, noted that "265 [requests] is plenty for the time being" and advised Waymo to "follow[] up on the discovery you've propounded" before serving any additional document requests. (Dkt. 625 at 65:20-67:4.) Accordingly the Court ruled that Waymo "can't serve any more document requests till the special master thinks you need them." (*Id.*)

On a meet and confer conference with Special Master Cooper later that same day, Waymo raised its concern that it had not sought any damages-related information in its initial discovery requests, as it had not foreseen that there would be any limit imposed on the number of requests for production. (Ex. 2.) Indeed, in negotiating the Joint Case Management Statement, the parties had discussed limiting other forms of discovery but had not discussed limiting document requests. (*See* Dkt. 536 at 11-12.) On that June 7 meet and confer, Special Master Cooper agreed that Waymo should be allowed to serve a reasonable number of damages-related production requests, but Defendants insisted that Waymo must wait until Defendants responded to the already-propounded requests before serving these damages-related document requests. (Ex. 2.)

Before that first set of general requests for production was even due, the case schedule required Waymo to provide final Rule 26 disclosures on June 21. As of that date, not only had Waymo not received a single response to any general discovery requests, Waymo had not even been able to *serve* a single damages-specific document request.

---

[1] "Ex. __" refers to exhibits to the Declaration of James Judah, filed concurrently herewith.

Once Defendants had responded to Waymo's first two sets of general document requests, Waymo requested, on June 27, that it be permitted to serve thirty additional requests for production specific to damages issues. In obvious litigation sharp practice, Defendants objected and argued that Waymo should be precluded from serving any damages-related discovery at all, because it had not served it earlier. (Ex. 2.) Waymo even agreed to withdraw ten of its existing requests for production in an attempt to reach agreement on its damages discovery. (Ex. 3.) Defendants continued to resist, however, forcing the Special Master to finally rule on June 28 – over the objections of Defendants – that Waymo was allowed to serve damages-related document requests. (Ex. 4, 5.)

Having lost its "gotcha" strategy before the Special Master, Defendants now run this strategy again before the District Court. By this motion, Defendants now seek to block Waymo from taking any damages discovery, indeed from even presenting a damages case at all. Defendants' logic is a classic "catch 22": Waymo should not be allowed to take damages discovery now; Waymo should be precluded because it has not yet provided detail regarding damages. The Court should not reward such gamesmanship.

**B.     Waymo Still Needs Evidence From Uber in Order to Quantify Harm**

From the beginning, Waymo has made it clear that injunctive relief will be necessary in this case. (Dkt. 1 at ¶¶ 86, 134, 137; Dkt. 24.) But absent a broad injunction (*e.g.*, enjoining Uber[2] from developing and commercializing self-driving cars for a period of time), such relief will not be sufficient. Accordingly, Waymo has a right to quantify the harm caused by the use of its trade secrets (and derivatives) at Uber and, as Uber employees leave, the spread of its trade secrets (and derivatives) to other Waymo competitors. Waymo must also be allowed to quantify the harm caused by Uber's use of Waymo's patented technology in connection with its LiDAR development efforts.

---

[2] As used hereafter in this brief, "Uber" refers to the moving parties, Uber Technologies, Inc. and Ottomotto LLC.

To complete that quantification, Waymo needs to understand not only the extent of Uber's use of Waymo's technology but also the state of Uber's development efforts before Uber began using Waymo's technology, Uber's plans for competing against Waymo (as they existed both before and after Uber began using Waymo's technology), and various aspects of Uber's financial information and modeling (related to, for example, its investments in research and development over time and its revenue and profit projections). The extent to which reliable conclusions can be drawn from these categories of information will necessarily inform Waymo's damages calculations.

Because Waymo has been delayed from taking damages discovery, Waymo has not yet obtained this critical information from Uber. Uber knows how far along they were in their LiDAR development process before accessing Waymo's technology; Uber knows how obtaining Waymo's technology facilitated and otherwise affected their development process and timeline; Uber knows the cost-savings it has achieved to date through use of Waymo's technology; Uber knows how they model competition in the relevant markets; Uber knows how its expectations for revenues changed once it had access to Waymo's technology; and so on. Waymo, through no fault of its own, to date has received no responses to discovery requested directed to this information.

Moreover, because Uber was able to conduct discovery regarding damages while Waymo was still conducting expedited discovery regarding injunctive relief, Uber already has virtually all of Waymo's confidential information related to damages. For example, Uber has already received Waymo's financial information by month and by cost center, Waymo's estimates of the time incurred to develop each of its trade secrets (on a trade secret by trade secret basis), Waymo's estimates of the costs incurred to develop each of its trade secrets (on a trade secret by trade secret basis), Waymo's explanation of its estimates of those times and costs, and Waymo's current (post-initial disclosure) views regarding how damages might be assessed depending on the robustness of information provided by Uber on July 28. (Ex. 6, 7.) In sharp contrast to Waymo, Uber already has most if not all of the information they need to evaluate how damages can properly be assessed in this case; Waymo still does not have the information necessary to make that evaluation.

In this context, it is clear that Waymo's early disclosures were sufficient as of the dates they were provided.  It is also clear that to grant Uber's motion to strike would be highly inequitable.  As set out in detail below, Uber has not come close to meeting the high burden of precluding Waymo's damages claims and thereby also precluding Waymo's claims for punitive damages based on its willful conduct.[3]

### C.  Waymo's Damages Disclosures In The Context Of Fairness

Regardless of the adequacy of Waymo's disclosures in light of the asymmetric state of damages-specific discovery in this case, basic tenets of fairness and equal treatment also dictate that Waymo have an opportunity to amend its disclosures.  Uber has routinely been given extensive leeway to provide, supplement, and amend Court-ordered disclosures well after Court-ordered deadlines, to the prejudice of Waymo and without any consequence to Uber.  For example, Uber was under a Court order to provide an accounting of all communications in which Anthony Levandowski mentioned LiDAR by June 23.  (Dkt. 426.)  The accounting Uber served on that date was woefully incomplete; Uber has since supplemented its accounting three times (increasing the number of logged communications from 561 to 934) and — more  than three weeks after the deadline — Uber has not even *started* to log those communications that post-date the filing of this action.  (Ex. 792, Exhibit 1.)

Uber's conduct with respect to its privilege logs is on another scale altogether.  Uber (and Mr. Levandowski) have been given not one but *repeated* opportunities to correct, supplement, and amend their privilege logs, since and despite the Court's April 5 warning that privileges would be waived if logs did not provide "bone-crushing detail."  (Dkt. 160 at 27:10-28:4; Dkt. 567 (ordering Uber to "revise its privilege log" by June 1); Dkt. 730 at 5 (granting Uber leave to "again review and amend the log" by June 30); Dkt. 501 (noting that Levandowski's submissions were "wholly inadequate to support his sweeping claims of privilege"); Dkt. 516 at 118:7-21 (providing Levandowski another opportunity to submit an adequate privilege log).)  Now that Uber has *still*

---

[3]  Indeed, Waymo submits that this is simply a disguised motion for summary judgment in an attempt to avoid the consequences of losing (*i.e.*, no more summary judgment motions).  (*See* Dkt. 563 at 3; Dkt. 502 at 123:15-21.)

— after multiple chances — refused to serve logs that provide any meaningful descriptions of the thousands of communications regarding the stolen documents that Uber continue to withhold, there *should* be a finding of waiver. (Dkt. 779.) In contrast, (i) where Waymo has provided Uber with damages-related information in Waymo's possession and (ii) where Waymo is still waiting for Uber to begin producing damages-related information, Waymo should be granted leave to amend.

This is consistent with what the Court suggested on June 29:

> "If the other side has violated Rule 26A by not giving the contact information for the witnesses, which is often what happens, then that may be your free ticket for— in other words, if they violate the rule, you get to violate the rule. . . . The rule says that you should give contact information. And if all you did was through the lawyer, that's not good enough. That's a violation of the rule, too. So if they violate the rule, you get a free ticket."

(Dkt. 775 at 100.) Uber did violate that rule as predicted by the Court – by, for example, failing to provide contact information for Anthony Levandowski other than identifying his counsel of record. (879-9 at 5.) For this reason too, Waymo should be afforded an opportunity to amend its disclosures.

### D. Waymo's Inadvertent Omission Of Witnesses (For Less Than 24 Hours)

Waymo inadvertently omitted 14 witnesses from its initial disclosures. (Dkt. 797-3.) Uber had already identified 13 of these witnesses in their own initial disclosures, interrogatory responses, and Court-ordered accountings.[4] Uber does not contend that it was previously unaware of the fourteenth omitted witness, Stephanie Olsen (Anthony Levandowski's life partner). In any event, Waymo supplemented its initial disclosures to add all 14 of these witnesses in 24 hours.

## III.   ARGUMENT

### A. Waymo's Damages Disclosures Were Sufficient As Of The Time They Were Made

To the extent monetary damages can be calculated, the California and Federal statutes allow a trade secret plaintiff to collect damages for "the actual loss caused by misappropriation"

---

[4] George Lagui, Eric Meyhofer, Jeff Holden, Rachel Keitzer, Brent Schwarz, Rudy Sevile, Ognen Stojanovski, Salle Yoo, Adam Bentley, Jur van den Berg, Emil Michael, Eric Tate, and Rudy Kim. (Dkt. 797-1; Dkt. 879-9.)

1    and any "unjust enrichment caused by misappropriation." Cal. Civil Code § 3426.3(a); 18 U.S.C.
2    § 1836(b)(3)(B).  In the alternative, a reasonable royalty may be awarded under both statutes.  Cal.
3    Civil Code § § 3426.3(b); 18 U.S.C. § 1836(b)(3)(B).  A reasonable royalty is also an appropriate
4    remedy for patent infringement under 35 U.S.C. § 284.

5            As described in Part II above, even the determination of the most reliable metrics for
6    determining trade secret damages in this case (as among actual loss, unjust enrichment, and
7    reasonable royalty) requires an analysis of what information is actually available and how robust
8    that information is.  What information can be used to estimate the degree to which Uber
9    accelerated its development through the use of Waymo's trade secrets?  What information can be
10   used to quantify how far along Uber was in its development timeline before it had the benefit of
11   Waymo's trade secrets?  What information is available about Uber's actual plans and funding
12   (both before and after the misappropriation) to commercialize self-driving technology and to
13   compete with Waymo?  And so on.  Waymo had little of this information at the time it made its
14   Rule 26 initial disclosures; some of this information will necessarily be the subject of technical
15   expert testimony; and Uber will not produce much of the rest of this information until at least July
16   28.  Waymo has always anticipated updating its disclosures to more specifically identify the trade
17   secret damages methodologies it intends to pursue once Uber makes at least its first damages-
18   related production.  (It will likely be that Waymo must also update its disclosures on trade secret
19   damages once the due diligence report and related communications are produced.)

20           With respect to patent damages, Waymo indicated in its Patent Local Rule 3-8 disclosure
21   that it intends to seek a reasonable royalty under 35 U.S.C. § 284.  In compliance with Local Rule
22   3-8, Waymo also "identif[ied] the information it requires" before it can "provide a fulsome
23   response to the disclosures required."  That required information — and the circumstances of its
24   expected production on July 28 — have already been described.  Moreover, at the time of its
25   patent damages disclosure, Waymo was reviewing Uber's representations to the Court regarding
26   its abandonment of a single-lens design and began negotiating the predicate agreement with Uber
27   for Waymo to narrow its patent allegations in view of trial.  Once Waymo receives at least some
28   of the information necessary from Uber to inform the reasonable royalty analysis for the '936

patent on July 28, Waymo will update its disclosures accordingly. In the meantime, Waymo has already provided additional information (beyond what is in its Rule 3-8 disclosure) regarding its damages contentions for the '936 patent in response to Uber's damages-related interrogatories. (Ex. 6.)

In its Motion, Uber cites no cases addressing alleged Rule 26 deficiencies in the trade secret context. They cite several cases addressing alleged Rule 26 deficiencies in the patent context, but those cases address the scenario in which "a patent holder should already know the royalties it and/or its predecessors in interest have already received for licensing its own patent in suit and it should already know at least some of the license agreements it contends are comparable." *Brandywine Commc's Tech., LLC v. Cisco Sys., Inc.*, 2012 WL 5504036, at *2 (N.D. Cal. 2012); *Corning Optical Commc's Wireless Ltd. v. Solid, Inc*., 306 F.R.D. 276, 279 (N.D. Cal. 2015) (applying *Brandywine* and ordering patentee to disclose comparable licenses); *THX, Ltd. v. Apple, Inc.*, 2016 WL 2899506, at *8 (N.D. Cal. 2016) (applying *Brandywine* and ordering patentee, an entity with significant experience in licensing, to disclose information about its damages theories, including licenses). Here, however, there is no established royalty rate for technology to be applied in the nascent but highly competitive self-driving car space.

In the absence of such an established royalty, it is well recognized that "[t]o provide meaningful calculations, patentees need lots of information from accused infringers." *Corning*, 306 F.R.D. at 278. In *Eon Corp IP Holding LLC v. Sensus USA Inc*, 2013 WL 3982994, at *1 (N.D. Cal. 2013), Judge Laporte acknowledged that "[e]arly damages disclosure promises many advantages but is challenging to put into practice and necessarily varies to some extent with the nature of the particular case." In *Eon,* Judge Laporte held that "Defendants' desire to pin down Plaintiff to detailed early damages contentions before any significant discovery and allow amendment only on a showing of good cause goes well beyond the initial damages disclosures contemplated by Rule 26(a)." *Id.* Thus, under Rule 3-8 and the case law that applies to the circumstances of this case, Waymo's patent damages disclosure — which identified the information needed to provide a more robust analysis — was adequate when made, especially in light of the fact that damages-specific information will not be produced by Uber until July 28, and

the fact that Uber already has the benefit of Waymo's production of damages-related information in its own possession.

Because Waymo's damages disclosures were adequate under the circumstances, Uber's motion should be denied.

### B. Uber Has Not Alleged Any Specific Prejudice Relating To Waymo's Damages Disclosures

Uber vaguely argues that it is being "prejudiced" by Waymo's allegedly deficient damages disclosures, but its most specific claim of prejudice is that the alleged deficiencies are hampering its "ability to prepare its case for trial." (Mot. at 9). As described above, however, the opposite is true. Uber currently has access to much more damages-related information than Waymo in this case: Uber has the due diligence report; Uber has all of the correspondence regarding the stolen documents (and has already identified which correspondence will be produced under this Court's June 21 Order if and when the stay is lifted); Uber has its own valuations of Waymo's technology done in connection with the Ottomotto acquisition; Uber has its own Board presentations regarding the value of Ottomotto; Uber has its own financial information, market analysis, and revenue projections; Uber has its own information regarding the cost savings it is achieving through the use of Waymo's technology; and Uber has Waymo information provided in response to Uber's damages-related discovery (including nearly 4000 rows of Waymo financial information broken out by month and cost center, Waymo's estimate of the time it took to develop each of its trade secrets, Waymo's estimate of the cost incurred to develop each trade secret, and Waymo's explanations for those figures). Waymo, on the other hand, will be receiving damages-specific discovery from Uber for the first time on July 28. This asymmetry prejudices Waymo, not Uber. And Waymo already intends to amend its disclosures shortly after July 28.

Having made no showing of prejudice, Uber's motion regarding Waymo's damages disclosures should be denied.

### C. Preclusion Of Compensatory And Exemplary Damages Is Not An Appropriate Remedy

Precluding Waymo from offering any theory of compensatory damages — and thereby precluding Waymo from seeking punitive damages for Uber's willful conduct — based on an

-11-
WAYMO'S OPPOSITION TO UBER AND OTTOMOTTO'S MOTION TO STRIKE

alleged Rule 26 deficiency would be unprecedented, and none of the cases Uber cites supports such a result.  In every case Uber cites where one party contests the sufficiency of the other side's Rule 26 disclosures, the remedy has been leave to amend or supplement the contested disclosures. *THX*, 2016 WL 2899506 at *8 (ordering patentee to supplement disclosures within 14 days); *Corning Optical*, 306 F.R.D. at 279 (ordering patentee to supplement disclosures within 14 days); *Brandywine*, 2012 WL 5504036 at *2 (ordering patentee to supplement disclosures within 21 days).  Preclusion has only resulted where, for example, a plaintiff said it was ***not*** seeking economic damages in its Rule 26 disclosures but changed course after the close of fact discovery, *Klamut v. Nibecker*, 2017 WL 1196725, at *2 (N.D. Cal. 2017), where a plaintiff failed to provide an expert report for two and a half years, *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105 (9th Cir. 2001), and where a plaintiff failed to produce key evidence underlying its damages theory during the fact discovery period, *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012).  That sort of conduct is not at issue here.

Indeed, in the Ninth Circuit, if preclusion, "in practical terms . . . amount[s] to dismissal of a claim," the district court must consider two things:  first, whether the alleged non-compliance involved willfulness, fault or bad faith, and second, whether lesser sanctions are available.  *Id.* (collecting Ninth Circuit and out-of-circuit authority).  Uber has not even argued that Waymo's alleged non-compliance involved willfulness, fault or bad faith, but in any event it did not: Waymo is pursuing the discovery it needs to determine its damages in this case, and Waymo is meanwhile providing Uber with the information in Waymo's control that may be relevant to a damages determination.  And Uber has not even attempted to explain how lesser sanctions — or the damages-related discovery it has received from Waymo since Waymo served its initial disclosures — could be insufficient.  *See THX,* 2016 WL 2899506, at *8; *Corning Optical*, 306 F.R.D. at 279; *Brandywine*, 2012 WL 5504036, at *3.

Evidence preclusion is a "harsh sanction" and should not be imposed where it would amount to "dismissal of a claim."  *R & R Sails*, 673 F.3d at 1247 (finding a Rule 26 violation where a plaintiff failed to produce certain invoices during the fact discovery period but reversing the district court's preclusion sanction because "it dealt a fatal blow not only to plaintiff's

1 entire fees claim but also its request for punitive damages)." *Id.* Uber has not come close to showing that the alleged insufficiencies in Waymo's initial damages disclosures should result in the preclusion of compensatory and punitive damages here. Uber's motion with respect to Waymo's damages disclosures should be denied in all respects.

### D. Uber's Motion Regarding Inadvertently Disclosed Witnesses Should Also Be Denied

As noted in Part I.C above, Waymo inadvertently omitted 14 witnesses from its initial disclosures. (Dkt. 797-3.) Waymo corrected the mistake 24 hours later. (Dkt. 797-3, 797-4.) Uber does not and cannot explain how this caused any prejudice, especially where 13 witnesses had already been disclosed by Uber, where there is no evidence that Uber was unaware of the 14th witness, and where Uber does not point to anything they would have done differently in the intervening day between Waymo's initial and corrected disclosures. Uber's motion should be denied as to this issue as well.

### IV. CONCLUSION

For all of the foregoing reasons, Waymo respectfully submits that Uber's motion should be denied.

DATED: July 17, 2017    QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
    Charles K. Verhoeven
    Attorneys for WAYMO LLC