# Exhibit 3

## Lindsay Cooper

| | |
|---|---|
| **From:** | Lindsay Cooper |
| **Sent:** | Thursday, June 29, 2017 4:22 PM |
| **To:** | Rivera, Sylvia |
| **Cc:** | John Cooper; Walsh, Rachel M.; James Judah; DG-GP Otto Trucking Waymo; UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); Matthew Cate; QE-Waymo; Ray, Wendy J.; Gonzalez, Arturo J. |
| **Subject:** | RE: Waymo - meet and confer call |

Wendy, Sylvia,

During our meet and confer this morning, the Special Master indicated (again) that Waymo is entitled to reasonable discovery.  Even so, he encouraged Waymo to carefully review its previously served RFPs to see if withdrawing some could make Waymo's new RFPs more palatable to Defendants.  We have done so.

To facilitate a compromise here, Waymo is willing to withdraw the following RFPs if Uber agrees that it will:  (1) make a full and fair effort to respond to Waymo's new RFPs; and (2) treat Waymo's new RFPs as being served as of 4:09 p.m. on Wednesday, June 28.  Note that Waymo has focused on withdrawing RFPs from its third set, at Defendants' request.

As with all other written discovery in this case, we expect Defendants to come to us with any issues or concerns even before the deadline for responses if there are going to be objections regarding the scope of requested discovery.

Please let us know by email tonight if we have an agreement.  If there are any remaining disputes, my colleagues will be available to discuss them during tomorrow morning's call with the Special Master.  Unfortunately, I will not be able to attend that call because I will be traveling.

**REQUEST FOR PRODUCTION NO. 154:**
All agreements between any DEFENDANT and Nevada ATCF LLC.

**REQUEST FOR PRODUCTION NO. 155:**
All DOCUMENTS and COMMUNICATIONS REGARDING any agreements between any DEFENDANT and Nevada ATCF LLC.

**REQUEST FOR PRODUCTION NO. 157:**
DOCUMENTS sufficient to show the reasons behind DEFENDANTS' and/or OTTO TRUCKING's decision not to deploy self-driving trucks in Texas.

**REQUEST FOR PRODUCTION NO. 212:**
DOCUMENTS sufficient to show all LiDAR designs considered or implemented by DEFENDANTS comprising a 64 beam LiDAR system with an optical cavity having a downward pitch relative to the base.

**REQUEST FOR PRODUCTION NO. 215:**
DOCUMENTS sufficient to show any techniques for mounting a flex receive board in a curved shape considered or implemented by DEFENDANTS in a LiDAR design.

**REQUEST FOR PRODUCTION NO. 219:**
DOCUMENTS sufficient to show all LiDAR designs considered or implemented by

DEFENDANTS comprising a 360 degree horizontal field of view achieved in part through the use
of ball bearings between magnets to give more than 360 degree rotational freedom.

**REQUEST FOR PRODUCTION NO. 234:**
DOCUMENTS sufficient to show all LiDAR designs considered or implemented by
DEFENDANTS comprising a 256 sensor array and having a vertical field of view from -18
degrees to +7 degrees, with a denser concentration of 208 sensors in the +7 degree to -7 degree
field of view, with the other 48 sensors more sparsely spread over the -7 to -18 degree range.

**REQUEST FOR PRODUCTION NO. 238:**
DOCUMENTS sufficient to show any sequence of steps for assembling LiDAR motor
components considered or implemented by DEFENDANTS.

**REQUEST FOR PRODUCTION NO. 240:**
DOCUMENTS sufficient to show any sequence of steps for assembling LiDAR receive
components considered or implemented by DEFENDANTS.

**REQUEST FOR PRODUCTION NO. 241:**
DOCUMENTS sufficient to show any sequence of steps for assembly of LiDAR optical
cavity components considered or implemented by DEFENDANTS.

---

**From:** Lindsay Cooper
**Sent:** Thursday, June 29, 2017 3:02 PM
**To:** 'Rivera, Sylvia' <SRivera@mofo.com>
**Cc:** John Cooper <JCooper@fbm.com>; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; James Judah
<jamesjudah@quinnemanuel.com>; DG-GP Otto Trucking Waymo <DG-GPOttoTruckingWaymo@goodwinlaw.com>;
UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; Boies Service
(BSF_EXTERNAL_UberWaymoLit@bsfllp.com) <BSF_EXTERNAL_UberWaymoLit@bsfllp.com>; Matthew Cate
<MCate@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>; Ray, Wendy J. <WRay@mofo.com>; Gonzalez,
Arturo J. <AGonzalez@mofo.com>
**Subject:** RE: Waymo - meet and confer call

Sylvia, we'll follow up with a proposal in writing tonight.

---

**From:** Rivera, Sylvia [mailto:SRivera@mofo.com]
**Sent:** Thursday, June 29, 2017 2:52 PM
**To:** Lindsay Cooper <lindsaycooper@quinnemanuel.com>
**Cc:** John Cooper <JCooper@fbm.com>; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; James Judah
<jamesjudah@quinnemanuel.com>; DG-GP Otto Trucking Waymo <DG-GPOttoTruckingWaymo@goodwinlaw.com>;
UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; Boies Service
(BSF_EXTERNAL_UberWaymoLit@bsfllp.com) <BSF_EXTERNAL_UberWaymoLit@bsfllp.com>; Matthew Cate
<MCate@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>; Ray, Wendy J. <WRay@mofo.com>; Gonzalez,
Arturo J. <AGonzalez@mofo.com>
**Subject:** RE: Waymo - meet and confer call

Lindsay,

Sorry for the delayed response.  The team that needs to weigh in on these issues are in transit today.  I can join a call at
3:00 pm to discuss the existing requests that Waymo proposes to narrow or withdraw, in exchange for additional
damages RFPs.  Then Uber can respond on a call tomorrow morning, once others are available.  Alternatively, we could

forego a 3:00 pm call and you could instead send us an email setting forth your proposal, to which we'll respond on a call tomorrow.  Let me know which you prefer.

Sylvia

**From:** Lindsay Cooper [mailto:lindsaycooper@quinnemanuel.com]
**Sent:** Thursday, June 29, 2017 12:15 PM
**To:** Ray, Wendy J.; Gonzalez, Arturo J.
**Cc:** John Cooper; Walsh, Rachel M.; James Judah; DG-GP Otto Trucking Waymo; UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); Matthew Cate; QE-Waymo
**Subject:** RE: Waymo - meet and confer call

**- External Email -**

Wendy and team,

To follow up on our meet and confer with the Special Master before the hearing today, we can be available at 3:00 p.m. this afternoon to discuss narrowing Waymo's existing RFPs.

If this works, we can use the following dial-in:

    866-499-9580
    Participant Number = 2757950

Thank you,
Lindsay

**From:** Lindsay Cooper
**Sent:** Wednesday, June 28, 2017 9:31 PM
**To:** 'Ray, Wendy J.' <WRay@mofo.com>; Gonzalez, Arturo J. <AGonzalez@mofo.com>
**Cc:** John Cooper <JCooper@fbm.com>; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; James Judah <jamesjudah@quinnemanuel.com>; DG-GP Otto Trucking Waymo <DG-GPOttoTruckingWaymo@goodwinlaw.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com) <BSF_EXTERNAL_UberWaymoLit@bsfllp.com>; Matthew Cate <MCate@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** RE: Waymo - meet and confer call

John,

It is evident from the response below that Defendants are attempting to obstruct and delay our ability to take damages discovery in this case.  Every day they delay this, they gain further advantage to Waymo's prejudice.  We ask that this latest attempt at obfuscation be rejected immediately and reiterate our request that our RFPs be deemed served yesterday or that the response time for be accelerated.  We can discuss at our 7:30 am meeting tomorrow, but given the timeframes, we need to get this issue resolved right away to avoid further prejudice.

Judge Alsup said Waymo would get additional RFPs if "the special master recommends that more should be allowed."  6/8 Tr. at 65:20-66:6.  After the June 8 case management conference, Waymo raised the fact that it had not served any damages RFPs with the Special Master, and you agreed that Waymo would be allowed to serve reasonable damages discovery the same day, a point you reiterated again during our meet and confer earlier this week.

Defendants' email argues (at an *extremely* high level) that Waymo has already served damages discovery, but they fail to point out any overlap between Waymo's already-served RFPs and Waymo's new RFPs.  Certainly, Defendants are not

representing they will be producing documents responsive to the 32 requests we served in response to the prior requests.

Specific responses to their points are below:

- The only RFP  quoted in full (RFP 174) calls for "forecasts, market analyses, or market projects REGARDING self-driving vehicles" generally.  But Waymo should not be precluded from basing its damages theory on "forecasts," "market analyses" or "market projects" alone.  Based on the preclusion arguments (addressed below), RFP 174 seems to be the only RFP from Waymo's prior set that Defendants have identified as truly relating to damages.

- Defendants argue, vaguely, that Waymo's RFPs 27-29, 34-38, 43-44, 55, 57, 59, 61, 120, and 153 seek "business formation documents, business plans, solicitations of investment capital, acquisitions and potential acquisitions of various entities, negotiations over acquisitions, due diligence of various entities, milestones, and bonus programs."  But they don't specifically quote them, and with good reason:  these RFPs call for factual information regarding the complex structure of Uber's acquisition of Ottomotto, the due diligence process that Uber conducted on Otto, and ownership information regarding Otto, Otto Trucking, and Anthony Levandowski's various shell entities.  None of these RFPs seek information regarding Uber's <u>valuation</u> of Otto, and Defendants do not argue otherwise.

- Defendants claim, vaguely, that Waymo's Expedited RFPs 2-5, 22, 25-26 seek "corporate formation, agreements, diligence, closing conditions, and milestones."  Again, these RFPs seek factual information regarding the Uber-Otto transaction (and in some cases, Otto's acquisition of Tyto and Odin Wave).  They do not seek information regarding Uber's <u>valuation</u> of Otto.

- Defendants argue that RFP 174 precludes RFPs 270 and 271.  But whereas 174 called for forecasts" and "market analyses" generally, 270 specifically asks for Defendants' estimates of the size of the ride-sharing market on a quarterly basis for the last six years, and 271 specifically asks for forecasts regarding the size of the ride-sharing market and the percentage of the ride-sharing market that will be serviced by self-driving cars in the U.S. (broken down quarterly).

- Defendants argue that RFP 174 precludes RFPs 266, 269, 272-275, and 279.  Again, it does not.  Whereas 174 called for "forecasts" and "market analyses" generally, 266, 269, 272-275 and 279 call for extremely precise information regarding Uber's market cap and internal valuation (broken down quarterly), Defendants' commercial plans with respect to a launch of self-driving cars, projections regarding future revenue generation and profitability, Defendants' analysis of any barriers to entry in the ride-sharing market, and the date on which Uber first considered developing custom LiDAR.

- Wendy's email states that "RFP 27 may also overlap with the existing RFPs covering acquisition and negotiation issues."  We assume this is a typo as there is no RFP 27 in Waymo's new set.

Defendants' argument seems to boil down to, "Waymo should wait until it finishes meeting and conferring with Defendants regarding the existing RFPs."  But the close of fact discovery is less than two months away, and opening expert reports are due on the same day fact discovery closes.  With a 30-day response period, Waymo needs to serve its damages RFPs <u>now</u> in order to get documents and follow up with Defendants as appropriate before the deadline.  There is simply not time to wait, as Defendants propose.

Defendants' position is groundless for another reason.  Defendants should not be heard to argue first, that Waymo should wait longer before serving additional RFPs, and then, that Waymo should be precluded from seeking damages at all because it hasn't disclosed a theory of damages.  As we've already explained, the plain text of P.R. 3-8 provides that, "to the extent a party contends it is unable to provide a fulsome response to the disclosures required by this rule, it shall identify the information it requires."  And Waymo has done so, precisely because it does not have the information it needs from Defendants.

Thank you,
Lindsay

---

**From:** Ray, Wendy J. [mailto:WRay@mofo.com]
**Sent:** Wednesday, June 28, 2017 4:15 PM
**To:** Lindsay Cooper <lindsaycooper@quinnemanuel.com>; Gonzalez, Arturo J. <AGonzalez@mofo.com>
**Cc:** John Cooper <JCooper@fbm.com>; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; James Judah
<jamesjudah@quinnemanuel.com>; DG-GP Otto Trucking Waymo <DG-GPOttoTruckingWaymo@goodwinlaw.com>;
UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; Boies Service
(BSF_EXTERNAL_UberWaymoLit@bsfllp.com) <BSF_EXTERNAL_UberWaymoLit@bsfllp.com>; Matthew Cate
<MCate@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** RE: Waymo - meet and confer call

Lindsay and John,
We do not agree that the requests should be deemed served as of yesterday.  That was not the agreed
process.  Our analysis is below.  We await Waymo's response as to why it needs the large number of
additional requested damages RFPs at this juncture.

In connection with Waymo's request to serve 30 "damages" RFPs in addition to the 265 regular RFPs they
have already served (on top of their 28 expedited RFPs), you asked me to identify the damages-related
discovery that Waymo has already served on Uber and Ottomotto (collectively, "Uber"), and identify
which of Waymo's proposed RFPs may overlap with those requests.

To be clear, Waymo is now asking to serve 32 additional RFPs, not just 30.  Also, Judge Alsup made clear
at the June 7th conference he considered 265 RFPs "a huge number" that was "plenty for the time
being."  Tr. at 66:9, 13-15.  He said he would consider granting Waymo additional RFPs, but only after
Waymo "follow[ed] up on the discovery you've propounded," and even then only "at such time as the
special master recommends that more should be allowed."  Tr. at 65:20-66:6; id. at 66:10-13 ("So you
should just be enforcing what you've got, negotiating with what you've got, and then when the dust begins
to settle on that, if you really need more, we'll find a way to – to do it.")

Further, Waymo stated in its LR 3-8 damages contentions, which were served at 7:40 p.m. on June 26th,
that it "has sought permission from Special Master Cooper to serve damages-related discovery."  But
Waymo did not email it was planning on serving damages-related discovery until 9:00 p.m., and even then
it did not seek permission but simply announced its plans to serve the requests.

Moreover, Waymo stated in its damages contentions, and on the call with you yesterday, that "damages-
related" discovery "was not included in Waymo's initial three requests for production. . . ."  That is
demonstrably false, and we request that you order Waymo to correct that misstatement to the
Court.  Waymo's 265 RFPs contain numerous "damages-related" requests.  For example, RFP 174
requests "All forecasts, market analyses, or market projects REGARDING self-driving
vehicles."  Waymo's 265 RFPs also contain requests for documents and communications about business
formation documents, business plans, solicitations of investment capital, acquisitions and potential
acquisitions of various entities, negotiations over acquisitions, due diligence of various entities,
milestones, and bonus programs.  See RFPs 27-29, 34-38, 43-44, 55, 57, 59, 61, 120, and 153.  Waymo's
expedited RFPs also contain "damages-related" requests.  See Expedited RFPs 2-5, 22, 25-26 (seeking,
among other things, documents regarding corporate formation, agreements, diligence, closing conditions,
and milestones).  At a minimum, Waymo should not be permitted to request any additional RFPs until, as
Judge Alsup ordered, it has followed-up on its current 265 RFPs.  Indeed, Uber's responses to Waymo's
third set of RFPs, which includes RFP 174, are not even due until the end of the day today.  Waymo also
should not be permitted to serve any additional damages RFPs until Judge Alsup has determined if

Waymo should be precluded from pursuing a claim for damages at trial based on the inadequacy of its initial disclosures.

As for Waymo's 32 proposed RFPs themselves, you requested we identify which proposed RFPs we believe may be duplicative.  We believe proposed RFPs 270 and 271 overlap with existing RFP 174, as do parts of proposed RFPs 266, 269, 272-275, and 279.  We also believe proposed RFPs 269-275 also overlap with parts of existing RFPs 55, 57, 59, and 61.  RFP 27 may also overlap with the existing RFPs covering acquisition and negotiation issues.

Without waiving other objections to Waymo's proposed RFPs, we do not understand how proposed RFP 281 (requesting documents regarding the "relative value of safety" in commercialization of autonomous vehicles) is related to damages in this case at all.  And for the following RFPs, we cannot evaluate Waymo's supposed need for them without understanding specifically how they relate to Waymo's cursory and inadequate damages contentions: RFP 266 (Uber's "market capitalization and internal valuation of itself on a quarterly basis); RFPs 267-271 (Uber's development of autonomous vehicles; Uber's plans to launch autonomous vehicles; Uber's forecasts of its ride-sharing vehicles; and estimates and forecasts about the "ride-sharing market"); RFPs 274-281 (analysis of barriers to entry, discussion of Waymo or its business, the date Uber considered deploying autonomous vehicles and using in-house LiDAR, and the "importance of LiDAR" and a first-mover advantage in commercializing autonomous vehicles); RFPs 282-285 ("analysis of Waymo's technological lead" in autonomous vehicles and LiDAR); RFP 286 (comparisons of cost and profitability of human-driven versus autonomous vehicles in a ride-sharing fleet); RFP 289 ("investment, in terms of time" in developing LiDAR); and RFP 290 (patent licenses and agreements);

As stated above, we believe you should not recommend to Judge Alsup at this time that he grant Waymo permission to serve any additional RFPs.  If you decide to do so, however, we suggest you only recommend Waymo be allowed to serve proposed RFPs 273, 288, and 293 through 296 (except to the extent RFP 295 seeks financials of Uber divisions other than autonomous vehicles).  We're not including proposed RFP 287 because it appears duplicative of RFP 288.  Again, this is without prejudice to Uber's ability to fully object to these requests.

Best,
Wendy

---

**From:** Lindsay Cooper [mailto:lindsaycooper@quinnemanuel.com]
**Sent:** Wednesday, June 28, 2017 4:08 PM
**To:** Ray, Wendy J.; Gonzalez, Arturo J.
**Cc:** John Cooper; Walsh, Rachel M.; James Judah; DG-GP Otto Trucking Waymo; UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); Matthew Cate; QE-Waymo
**Subject:** RE: Waymo - meet and confer call

John and counsel,

At the meet and confer Monday, Defendants indicated they would identify which of Waymo's previously served RFPs constituted damages discovery such that further requests would be cumulative.  Defendants have not identified any such requests.

Attached are the requests in the email below in a pleading.

John, we request that you direct these to be considered as served yesterday when we initially sent them.

Thank you,
Lindsay

**From:** Lindsay Cooper
**Sent:** Tuesday, June 27, 2017 2:59 PM
**To:** 'Ray, Wendy J.' <WRay@mofo.com>; Gonzalez, Arturo J. <AGonzalez@mofo.com>
**Cc:** John Cooper <JCooper@fbm.com>; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; James Judah <jamesjudah@quinnemanuel.com>; DG-GP Otto Trucking Waymo <DG-GPOttoTruckingWaymo@goodwinlaw.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com) <BSF_EXTERNAL_UberWaymoLit@bsfllp.com>; Matthew Cate <MCate@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** RE: Waymo - meet and confer call

Thanks Wendy, but I didn't provide any inadvertently.  I think the counting error was due to the fact that the auto-numbering in the document failed to update.

The list below is what we're proposing.

**From:** Ray, Wendy J. [mailto:WRay@mofo.com]
**Sent:** Tuesday, June 27, 2017 2:51 PM
**To:** Lindsay Cooper <lindsaycooper@quinnemanuel.com>; Gonzalez, Arturo J. <AGonzalez@mofo.com>
**Cc:** John Cooper <JCooper@fbm.com>; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; James Judah <jamesjudah@quinnemanuel.com>; DG-GP Otto Trucking Waymo <DG-GPOttoTruckingWaymo@goodwinlaw.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com) <BSF_EXTERNAL_UberWaymoLit@bsfllp.com>; Matthew Cate <MCate@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** RE: Waymo - meet and confer call

Lindsay,
Thanks.  There are 32 requests below.  Are there 32 proposed RFPs or did you include ones you didn't intend to?

Best,
Wendy

**From:** Lindsay Cooper [mailto:lindsaycooper@quinnemanuel.com]
**Sent:** Tuesday, June 27, 2017 2:26 PM
**To:** Ray, Wendy J.; Gonzalez, Arturo J.
**Cc:** John Cooper; Walsh, Rachel M.; James Judah; DG-GP Otto Trucking Waymo; UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); Matthew Cate; QE-Waymo
**Subject:** RE: Waymo - meet and confer call

Wendy, John,

Our 30 proposed damages RFPs are below:

**REQUEST FOR PRODUCTION NO. 266:**
DOCUMENTS sufficient to show UBER's market capitalization and internal valuation of itself on a quarterly basis, from the year prior to the year in which UBER first contemplated developing autonomous vehicles through the present.

**REQUEST FOR PRODUCTION NO. 266:**
DOCUMENTS sufficient to show the impact of developing autonomous vehicles on Uber's internal valuation of itself from the year prior to the year in which UBER first contemplated developing autonomous vehicles through the present.

**REQUEST FOR PRODUCTION NO. 267:**
DOCUMENTS describing UBER's development of autonomous vehicles as necessary to the  continued viability of UBER or to the continued viability of any aspect of UBER's business, INCLUDING but not limited to characterizations of a competitor's development or deployment of autonomous vehicles as an existential threat to UBER.

**REQUEST FOR PRODUCTION NO. 268:**
DOCUMENTS sufficient to show each iteration of DEFENDANTS' plan to launch any autonomous vehicles in any geographic region from the time DEFENDANTS first contemplated developing or deploying autonomous vehicles to the present.

**REQUEST FOR PRODUCTION NO. 269:**
DOCUMENTS sufficient to show DEFENDANTS' estimates of the size of the ride-sharing market and DEFENDANTS' share of that market in the United States for each of the last six years on a quarterly basis.  To the extent DEFENDANTS break out such estimates by geography (region, city, etc.), those estimates should also be provided.

**REQUEST FOR PRODUCTION NO. 270:**
DOCUMENTS sufficient to show DEFENDANTS' forecasts of the size of the ride-sharing market, the percentage of the ride-sharing market that will be serviced by autonomous vehicles, and DEFENDANTS' share of that market in the United States (by autonomous vehicles and vehicles driven by contractors) for any period of time forecasted by UBER, on a quarterly basis.  To the extent DEFENDANTS break out such estimates by geography (country, region, city, etc.), those estimates should also be provided.  To the extent DEFENDANTS create different forecasts based on different assumptions, documents REGARDING each forecast – with documents sufficient to show the assumptions for each – should be provided.

**REQUEST FOR PRODUCTION NO. 271:**
DOCUMENTS sufficient to show DEFENDANTS' forecasts REGARDING the number of DEFENDANTS' ride-sharing vehicles in the United States (by autonomous vehicles and vehicles driven by contractors), for any period of time forecasted by UBER —broken out by on a quarterly basis.  To the extent DEFENDANTS break out such estimates by geography (country, region, city, etc.), those estimates should also be provided.  To the extent DEFENDANTS create different forecasts based on different assumptions, documents REGARDING each forecast – with documents sufficient to show the assumptions for each – should be provided.

**REQUEST FOR PRODUCTION NO. 272:**
DOCUMENTS sufficient to show DEFENDANTS' business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and investment plans for its ride-sharing business, INCLUDING projections for revenue generation and profitability.

**REQUEST FOR PRODUCTION NO. 273:**
DOCUMENTS sufficient to show DEFENDANTS' business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and investment plans for its autonomous vehicle program, INCLUDING projections for revenue generation and profitability of the autonomous vehicle program.

**REQUEST FOR PRODUCTION NO. 274:**
DOCUMENTS sufficient to show DEFENDANTS' analysis of any barriers to entry in the ride-sharing market and the status of any attempts by DEFENDANTS to enforce such barriers against competitors INCLUDING WAYMO, INCLUDING investments and infrastructure needed.

**REQUEST FOR PRODUCTION NO. 275:**

8

DOCUMENTS REGARDING DEFENDANTS' discussion of WAYMO or its business, INCLUDING DEFENDANTS' analysis of WAYMO's impact or potential impact on the ride-sharing market or on UBER.

**REQUEST FOR PRODUCTION NO. 276:**
DOCUMENTS sufficient to identify the date that UBER first considered deploying autonomous vehicles.

**REQUEST FOR PRODUCTION NO. 277:**
DOCUMENTS sufficient to identify the date that UBER first considered developing its own autonomous vehicles.

**REQUEST FOR PRODUCTION NO. 278:**
DOCUMENTS sufficient to identify the date that UBER first considered developing its own in-house LiDAR.

**REQUEST FOR PRODUCTION NO. 279:**
DOCUMENTS REGARDING the importance of a first-mover advantage in commercializing autonomous vehicles, INCLUDING any estimates of the market shares of other entrants that are not first to market.

**REQUEST FOR PRODUCTION NO. 280:**
DOCUMENTS REGARDING the importance of LiDAR, INCLUDING the importance of low-cost LiDAR, to DEFENDANTS' ability to compete.

**REQUEST FOR PRODUCTION NO. 281:**
DOCUMENTS REGARDING the relative value of safety (vis-à-vis, for example, cost and timing of entry into relevant markets) in the commercialization of autonomous vehicles.

**REQUEST FOR PRODUCTION NO. 282:**
DOCUMENTS sufficient to show DEFENDANTS' analysis of WAYMO's technological lead REGARDING autonomous vehicle technology (INCLUDING DEFENDANTS' estimates of the time, personnel, and investment needed to close the gap between DEFENDANTS and WAYMO), and documents sufficient to show how DEFENDANTS' analysis or estimates have changed over time.

**REQUEST FOR PRODUCTION NO. 283:**
DOCUMENTS sufficient to show DEFENDANTS' analysis of how WAYMO's technological lead over DEFENDANTS REGARDING autonomous vehicle technology (INCLUDING DEFENDANTS' estimates of the time, personnel, and investment needed to close the gap between DEFENDANTS and WAYMO) changed after Uber's acquisition of OTTOMOTTO and OTTO TRUCKING.

**REQUEST FOR PRODUCTION NO. 284:**
DOCUMENTS sufficient to show DEFENDANTS' analysis of WAYMO's technological lead REGARDING LiDAR technology (INCLUDING DEFENDANTS' estimates of the time, personnel, and investment needed to close the gap between DEFENDANTS and WAYMO), and documents sufficient to show how DEFENDANTS' analysis or estimates have changed over time.

**REQUEST FOR PRODUCTION NO. 285:**
DOCUMENTS sufficient to show DEFENDANTS' analysis of how WAYMO's technological lead over DEFENDANTS REGARDING LiDAR technology (INCLUDING DEFENDANTS' estimates of the time, personnel, and investment needed to close the gap between DEFENDANTS and WAYMO) changed after UBER's acquisition of OTTOMOTTO and OTTO TRUCKING.

**REQUEST FOR PRODUCTION NO. 286:**
DOCUMENTS sufficient to show DEFENDANTS' comparisons of the cost and profitability of a human-driven versus an autonomous vehicle in a ride-sharing fleet.

**REQUEST FOR PRODUCTION NO. 287:**
DOCUMENTS sufficient to show the historical and current cost of DEFENDANTS' autonomous vehicles, broken down by component, and dating back to the inception of DEFENDANTS' autonomous vehicle program.  As noted in the Instructions above, to the extent DEFENDANTS can provide separate information for each Defendant, DEFENDANTS should do so.

**REQUEST FOR PRODUCTION NO. 288:**
DOCUMENTS sufficient to show DEFENDANTS' total financial investment including but not limited to employee time, purchase of capital equipment, and outside consultants, by quarter, into its efforts to develop in-house LiDAR.  As noted in the Instructions above, to the extent DEFENDANTS can provide separate information for each Defendant, DEFENDANTS should do so.

**REQUEST FOR PRODUCTION NO. 289:**
DOCUMENTS sufficient to show DEFENDANTS' investment, in terms of time including but not limited to engineers, software developers, managers, and executives (broken out be each category of employee), into its efforts to develop in-house LiDAR.  As noted in the Instructions above, to the extent DEFENDANTS can provide separate information for each Defendant, DEFENDANTS should do so.

**REQUEST FOR PRODUCTION NO. 290:**
Patent licenses or agreements relating to LiDAR.

**REQUEST FOR PRODUCTION NO. 291:**
DOCUMENTS REGARDING non-infringing alternatives to the patents-in-suit, and the estimated cost (INCLUDING both money and time) of implementing the same.

**REQUEST FOR PRODUCTION NO. 292:**
DOCUMENTS sufficient to show the impact to DEFENDANTS of having to redesign Fuji to avoid using the trade secrets identified in response to UBER's interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 293:**
DOCUMENTS sufficient to show any valuation (whether conducted by UBER or by a third party) of the assets and technology acquired in the acquisition of Otto by Uber, INCLUDING valuations performed for the purpose of purchase price accounting or any other purpose.

**REQUEST FOR PRODUCTION NO. 294:**
DOCUMENTS sufficient to show any DEFENDANTS' projected revenue, gross margin, and operating profit for any division including autonomous vehicles.

**REQUEST FOR PRODUCTION NO. 295:**
DOCUMENTS sufficient to show any the financials, INCLUDING profit and loss statements and balance sheet, for OTTOMOTTO, OTTO TRUCKING, and any division of UBER including autonomous vehicles.

**REQUEST FOR PRODUCTION NO. 296:**
DOCUMENTS sufficient to show DEFENDANTS' approved requests for capital expenditure authorizations related to its autonomous vehicle program, INCLUDING R&D expenditures, technology/equipment acquisitions, and marketing expenditures.

---

**From:** Ray, Wendy J. [mailto:WRay@mofo.com]
**Sent:** Tuesday, June 27, 2017 12:34 PM
**To:** Gonzalez, Arturo J. <AGonzalez@mofo.com>; Lindsay Cooper <lindsaycooper@quinnemanuel.com>
**Cc:** John Cooper <JCooper@fbm.com>; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; James Judah

<[jamesjudah@quinnemanuel.com](mailto:jamesjudah@quinnemanuel.com)>; DG-GP Otto Trucking Waymo <[DG-GPOttoTruckingWaymo@goodwinlaw.com](mailto:DG-GPOttoTruckingWaymo@goodwinlaw.com)>; UberWaymoMoFoAttorneys <[UberWaymoMoFoAttorneys@mofo.com](mailto:UberWaymoMoFoAttorneys@mofo.com)>; Boies Service ([BSF_EXTERNAL_UberWaymoLit@bsfllp.com](mailto:BSF_EXTERNAL_UberWaymoLit@bsfllp.com)) <[BSF_EXTERNAL_UberWaymoLit@bsfllp.com](mailto:BSF_EXTERNAL_UberWaymoLit@bsfllp.com)>; Matthew Cate <[MCate@fbm.com](mailto:MCate@fbm.com)>; QE-Waymo <[qewaymo@quinnemanuel.com](mailto:qewaymo@quinnemanuel.com)>
**Subject:** RE: Waymo - meet and confer call

Quinn team,
Please forward the 30 proposed RFPs to us so that we can provide the email that John requested us to provide on the call (noting damages RFPs served and comparing to the 30).  Thanks.

Best,
Wendy

---

**From:** Gonzalez, Arturo J.
**Sent:** Tuesday, June 27, 2017 7:32 AM
**To:** Lindsay Cooper
**Cc:** John Cooper; Ray, Wendy J.; Walsh, Rachel M.; James Judah; DG-GP Otto Trucking Waymo; UberWaymoMoFoAttorneys; Boies Service ([BSF_EXTERNAL_UberWaymoLit@bsfllp.com](mailto:BSF_EXTERNAL_UberWaymoLit@bsfllp.com)); Matthew Cate; QE-Waymo
**Subject:** Waymo - meet and confer call

John,

We object to this. Waymo can't insist on an expedited schedule and then continue to pile on discovery. Their damages contentions were due yesterday and we got nothing. They need to explain why they chose not to pursue this discovery sooner and, assuming there is a showing of good cause, make a specific offer of proof.  They can't just wave a wand and say "we want 30 more document requests."

They were required to disclose their purported damages in their initial disclosures and again in yesterday's submission. We are 3 months from trial and they have given us nothing, which has already severely prejudiced our clients. They should be required to explain to Judge Alsup why they tactically chose not to include damages related discovery among the 265 document requests that they have served.

To be clear, we do not believe Waymo has made a showing that entitles them to any additional document requests, and the deadlines for disclosing their damages case has come and gone.

Arturo

Sent from my iPad

On Jun 26, 2017, at 9:00 PM, Lindsay Cooper <[lindsaycooper@quinnemanuel.com](mailto:lindsaycooper@quinnemanuel.com)> wrote:

> John, Counsel,
>
> As we indicated previously, Waymo did not include damages-specific discovery in its initial sets of requests for production.  Since then, there have been discussions regarding limiting the number of requests for production, and the Special Master advised that Waymo should notify him before serving additional requests.  Waymo plans to serve approximately 30 requests for production on damages-related topics.  We are available to discuss this at 10 a.m. tomorrow.
>
> Thank you,
> Lindsay

**From:** John Cooper [mailto:JCooper@fbm.com]
**Sent:** Monday, June 26, 2017 1:25 PM
**To:** 'Gonzalez, Arturo J.' <AGonzalez@mofo.com>
**Cc:** Ray, Wendy J. <WRay@mofo.com>; Walsh, Rachel M. <RWalsh@goodwinlaw.com>; James Judah <jamesjudah@quinnemanuel.com>; DG-GP Otto Trucking Waymo <DG-GPOttoTruckingWaymo@goodwinlaw.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com) <BSF_EXTERNAL_UberWaymoLit@bsfllp.com>; Matthew Cate <MCate@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** RE: Waymo - meet and confer call

We will have a meet and confer session tomorrow at 10:00 am.   The call in number is 888 759 6039 access 415 954 4410.  We would appreciate having a lawyer for Otto Trucking on this call.  John

**From:** Gonzalez, Arturo J. [mailto:AGonzalez@mofo.com]
**Sent:** Monday, June 26, 2017 10:08 AM
**To:** Cooper, John (19) x4410
**Cc:** Ray, Wendy J.; Walsh, Rachel M.; James Judah; DG-GP Otto Trucking Waymo; UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); Cate, Matthew (20) x4469; QE-Waymo
**Subject:** Waymo - meet and confer call

John, I should be able to join at 11.

Sent from my iPad

On Jun 26, 2017, at 9:58 AM, John Cooper <JCooper@fbm.com> wrote:

> **- External Email -**
>
> ---
>
> Wendy
>
> Do you know when Arturo can join the call?  We will begin at 10 and deal with the issues that the parties on the call can deal with.
>
> ---
>
> **From:** Ray, Wendy J. [mailto:WRay@mofo.com]
> **Sent:** Monday, June 26, 2017 9:50 AM
> **To:** Cooper, John (19) x4410; 'Walsh, Rachel M.'; James Judah; DG-GP Otto Trucking Waymo; UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); Cate, Matthew (20) x4469
> **Cc:** QE-Waymo
> **Subject:** RE: Waymo - meet and confer call
>
> John,
> Arturo would like to join the discussions on Uber's compliance submissions and the Page deposition.  He has a conflict at 10.  We ask that Uber's issues be placed at the end of the agenda to give Arturo a chance to join.  If he isn't able to join before we get to those issues, perhaps we add them to the later call with Trucking's issues.  Thanks.
>
> Best,
> Wendy

**From:** John Cooper [mailto:JCooper@fbm.com]
**Sent:** Monday, June 26, 2017 9:09 AM
**To:** 'Walsh, Rachel M.'; James Judah; DG-GP Otto Trucking Waymo; UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); Matthew Cate
**Cc:** QE-Waymo
**Subject:** RE: Waymo - Otto Trucking's Paragraph 4 and 5 Accountings

**- External Email -**

Rachel

One of the issues for discussion relates to Otto Trucking.  When will you be available for a meet and confer today?  We will go forward with the meet and confer at 10 on the other issues.  John

**From:** Walsh, Rachel M. [mailto:RWalsh@goodwinlaw.com]
**Sent:** Monday, June 26, 2017 9:07 AM
**To:** James Judah; Cooper, John (19) x4410; DG-GP Otto Trucking Waymo; UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); Cate, Matthew (20) x4469
**Cc:** QE-Waymo
**Subject:** RE: Waymo - Otto Trucking's Paragraph 4 and 5 Accountings

John and James,

Otto Trucking is not available today at 10 am.

Regards,

Rachel

**From:** James Judah [mailto:jamesjudah@quinnemanuel.com]
**Sent:** Sunday, June 25, 2017 9:07 PM
**To:** 'John Cooper'; DG-GP Otto Trucking Waymo; UberWaymoMoFoAttorneys; Boies Service (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); Matthew Cate
**Cc:** QE-Waymo
**Subject:** Waymo - Otto Trucking's Paragraph 4 and 5 Accountings

John and Counsel –

We have reviewed the "Summary of Actions Taken Re: Order Continuing Deadline and Setting Hearing on Motion to Intervene and Modify Provisional Relief" (Dkt. 717-1) submitted by Otto Trucking, and have serious concerns.  Otto Trucking's "Summary" is non-complaint with the Court's express requirements for the PI Order's Paragraph 4 and Paragraph 5 accountings and appears to be additional willful violations of a Court Order.   We request to add this to our meet and confer at 10 AM Monday morning.

With respect to Paragraph 4, the Court's PI Order required Otto Trucking to "conduct a thorough investigation and provide a detailed accounting under oath setting forth every person who has seen or heard any part of any downloaded materials, what they saw or heard, when they saw or heard it, and for what purpose."  (Dkt. 433 at 24.)  The PI Order

13

explicitly provided that Otto Trucking to "**must** also use the **full extent of their authority and influence to obtain cooperation with the foregoing procedure** from all involved.  **For example, if a potential custodian refuses to cooperate, then defendants' accounting shall set forth the particulars, including all efforts made to obtain cooperation**." (*Id.*, emphases added.)  Because Otto Trucking's accounting fails to set forth what its Managing Member and Executive Chairman Anthony Levandowski saw or heard of the downloaded materials, when he saw or heard it, and for what purpose, it appears that Mr. Levandowski refused to cooperate with Otto Trucking's investigation.  However, Otto Trucking's accounting also fails to set forth the particulars of its efforts (if any) to obtain Mr. Levandowski's cooperation (beyond a single letter sent on May 30, 2017, *see* Dkt. 717-1 at Exhibit B).  Otto Trucking has violated the Court's Order under any scenario.

- If Mr. Levandowski cooperated with the investigation but Otto Trucking failed to include information about Mr. Levandowski's knowledge of the materials that **he** downloaded, Otto Trucking is in non-compliance with the Court's Order to "provide a detailed accounting under oath setting forth every person who has seen or heard any part of any downloaded materials, what they saw or heard, when they saw or heard it, and for what purpose."

- If Mr. Levandowski refused to cooperate with the investigation, but the only effort Otto Trucking made to obtain his cooperation was to send a single letter (care of his criminal attorneys) on May 30, then Otto Trucking is in non-compliance with the Court's Order to "use the full extent of their authority and influence to obtain cooperation with the foregoing procedure from all involved."

- If Mr. Levandowski refused to cooperate with the investigation, but Otto Trucking made efforts to obtain his cooperation beyond the letter attached as Exhibit B, then Otto Trucking is non-compliance with the Court's Order that "[i]f a potential custodian refuses to cooperate, then defendants' accounting shall set forth the particulars, including all efforts made to obtain cooperation."

With respect to Paragraph 5, the Court's PI Order required Otto Trucking to "provide Waymo's counsel and the Court with a complete and chronologically organized log of all oral and written communications — including, without limitation, conferences, meetings, phone calls, one-on-one conversations, texts, emails, letters, memos, and voicemails — wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier, or consultant of defendants. The log shall identify for each such communication the time, place (if applicable), mode, all persons involved, and subjects discussed, as well as any and all notes or records referencing the communication." (Dkt. 433 at 25.)  Otto Trucking's "Summary" fails to provide any log, instead attempting to piggy-back off of Uber's log based on the assertion that "Otto Trucking has no information beyond that which was disclosed by Uber pursuant to the PI Order with respect to oral and written communications where Mr. Levandowski mentioned LiDAR." (Dkt. 717-1 at 2.)  But this assertion is simply incorrect.  Unlike Uber, Otto Trucking has access to complete information about Mr. Levandowski's communications involving LiDAR by virtue of the fact that Mr. Levandowski remains to this day a senior officer at Otto Trucking – specifically, its Executive Chairman and Managing Member.  Otto Trucking's failure to provide a "complete and chronologically organized log" of its officer's LiDAR-related communications is a violation of the Court's PI Order.

The foregoing is not intended to be an exhaustive catalog of all of the deficiencies in Otto Trucking's Paragraph 4 and 5 accountings.  Waymo reserves all rights.

**James Judah**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6420 Direct
415.875.6600 Main Office Number
415.875.6700 FAX
jamesjudah@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

****************************************************************

This message was sent from Goodwin Procter LLP and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
****************************************************************

_____

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

=========================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

=============================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an

intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.

================================================================

This message may be confidential and privileged. Use or disclosure by anyone other than an intended addressee is prohibited. If you received this message in error, please delete it and advise the sender by reply email.