MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
RUDY Y. KIM (CA SBN 199426)
RudyKim@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Telephone: 202.237.2727
Facsimile: 202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendant. | Case No.   3:17-cv-00939-WHA<br><br>**UBER'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE REGARDING ITS TRIAL COUNSEL**<br><br>Date:  July 26, 2017<br>Time:  8:00 a.m.<br>Ctrm:  8, 19th Floor<br>Judge: The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

## I. UBER'S MOTION IN LIMINE TO EXCLUDE REFERENCE TO WORK BY TRIAL COUNSEL ON OTTO DILIGENCE SHOULD BE GRANTED

In opposing Uber's *in limine* motion to preclude mention of MoFo's role in the Otto due diligence, Waymo moves to disqualify MoFo from acting as Uber's trial counsel based on Waymo's plan to call two MoFo partners as trial witnesses. At no point does Waymo identify the specific information it intends to elicit from those MoFo partners. Instead, it resorts to generalizations and false assertions about why testimony from these witnesses is relevant. We briefly respond to each of the arguments made by Waymo in support of its assertion that it needs to call MoFo partners as trial witnesses.

First, as Waymo's own cited authority makes clear, the right of a party to be represented by the attorney of his or her choice is a "significant right" that should not be abrogated "in the absence of some indication the integrity of the judicial process will otherwise be injured." *Smith, Smith & Kring v. Super. Ct. (Oliver)*, 60 Cal. App. 4th 573, 580 (1997) (citation omitted). Here, as in *Smith*, *Smith & Kring*, there has been no such showing. Furthermore, even if there were need for MoFo witnesses (there is not), the professional conduct rule contains an exception for where the attorney has "informed, written consent of the client." Rule 5–210, Cal. State Bar Rules of Prof. Conduct. The underlying general principle is that "only an attorney's former or current clients have a sufficient stake in litigation to have standing to move for disqualification" absent "an ethical breach" so severe that it "infects" the litigation. *Nemec v. Linebarger*, No. 5:14-CV-01343-PSG, 2014 WL 3667232, at *1 (N.D. Cal. July 22, 2014) (collecting cases).

Second, courts have long recognized that "[t]he ethical rules are not intended to allow a lawyer to disqualify opposing counsel merely by calling him or her as a trial witness." *Nemecr*, 2014 WL 3667232, at *1. That is precisely what Waymo seeks to do here.

Third, Waymo falsely equates the PI Order's broad definition of "downloaded materials" to "stolen files," and argues that MoFo's "possession and access to the stolen files is obviously relevant." (Dkt. 894 at 1.) But Waymo cites no evidence for its conclusory assertion that MoFo has ever had possession or access to any of the alleged 14,000 stolen files. Moreover, as explained below with respect to Waymo's imputation theory, even if there were evidence of

1  MoFo possession or access (there is not), it would be improper to impute such knowledge to
2  Uber, thus undermining the entire foundation of Waymo's claimed rationale for calling MoFo
3  partners as trial witnesses.  *See Nemec*, 2014 WL 3667232, at *2 (denying a motion to disqualify
4  where movant, who sought to call opposing counsel as a trial witness, "conclusorily allege[d] that
5  [counsel was] involved in a conspiracy with Defendants that would prejudice his representation of
6  the Defendants.").

7  Fourth, Waymo claims that it intends to call two MoFo partners as trial witnesses "on
8  issues relating to Uber's trade secret misappropriation, including those outlined above." (Dkt.
9  894 at 3.)  But the only issue "outlined above" is the same unfounded assertion that MoFo has the
10 14,000 missing files—"Waymo must be permitted to demonstrate that the 14,000 files were
11 actually taken from Waymo—which can be logically proven by showing that these files made
12 their way to MoFo."  (*Id.* at 2.)  But there is *no* evidence that these files made their way to MoFo.

13 Fifth, Waymo resorts to wild speculation in claiming that MoFo is "likely referenced
14 repeatedly in the due diligence report and its exhibits."  (*Id.* at 2.)  Such speculation cannot form
15 the basis for disqualification.

16 Sixth, Waymo notes that MoFo retained Stroz.  That is irrelevant.  It is undisputed that
17 Stroz was retained by counsel for Uber and Otto.  The identity of the law firms is irrelevant.

18 Seventh, Waymo distorts the record by claiming that Uber has argued that "it is unaware
19 of what MoFo did with the materials that MoFo possessed on Uber's behalf."  (*Id.* at 2.)  Thus, it
20 claims that MoFo may be the only percipient witness regarding certain documents.  This is
21 wrong.  As was made clear by Uber's filing last week, MoFo obtained *some* Stroz materials *after*
22 *this litigation was filed* in its prior capacity as arbitration counsel for Mr. Levandowski.  (Dkt.
23 885 at 15.)  These are not—and never have been—Uber documents.  (Dkt. 883 ¶¶ 6-9.)  As
24 explained below with respect to Waymo's imputation theory of liability, the issue is whether Uber
25 knew or had reason to know that the alleged trade secret was wrongfully acquired.  *See* Cal. Civ.
26 Code 3426.1(b)(1).  Uber witnesses, not MoFo, will testify as to what Uber did or did not know.

27 Eighth, Waymo notes that Uber's Initial Disclosures include MoFo witnesses.  They did
28 so in an abundance of caution, including in light of claims by Waymo that there was a conspiracy

1  that included intentional wrongdoing by MoFo.  (*See* Dkt. 634 at 4-5 (arguing that crime-fraud
2  exception applied because MoFo and others "exchanged literally thousands of communications
3  regarding what to do with stolen files").)  After months of discovery, there is no evidence to
4  support this claim, and we do not expect the Court will allow such argument at trial.  Thus, there
5  will be no need for MoFo witnesses to rebut these unsupported claims.
6       Ninth, before disqualifying counsel, courts should consider "the availability of other
7  witnesses or documentary evidence by which these matters may be independently established."
8  *Smith, Smith & Kring*, 68 Cal. App. 4th at 581 (quoting *Comden v. Super. Ct.*, 20 Cal. 3d 906, 913
9  (1978).  There has been no showing that whatever facts Waymo seeks to establish cannot be
10 "independently established."  (*Id*.)
11      Finally, Waymo claims that MoFo appears on "hundreds of entries on Uber's privilege
12 logs."  (Dkt. 894. at 2.)  That too is irrelevant.  As Judge Corley said in rejecting a similar
13 argument, in light of "this elaborate due diligence that was going on," it "doesn't surprise me in
14 the least that there are those numbers of e-mails."  (Dkt. 734, 6/23/2017 Hr'g Tr at 20:12-20.)
15      In sum, at no point does Waymo explain how it will be prejudiced if MoFo does not
16 testify.  It fails to identify any specific, non-privileged information that it will be unable to present
17 in support of its case absent MoFo witnesses.  Waymo's silence on this key point is a far cry from
18 the only case it cites, *Calouori v. One World Technologies, Inc.*, 2012 WL 2004173 (C.D. Cal.
19 2012), where disqualification was granted.  In *Calouori*, the plaintiff was represented by the same
20 lawyer who prosecuted the original patent and allegedly failed to name the correct inventors or
21 disclose the plaintiff's own prior art.  The court found that because plaintiff's counsel was
22 responsible for drafting the patent application, he was a "necessary witness."  *Id*. at 5.  That is not
23 the case here.
24      For all of these reasons, there is no good-faith basis for Waymo to call a MoFo partner as
25 a witness, and Waymo cannot do so solely so that it may seek disqualification under the advocate-
26 witness rule.  The fact that MoFo acted as due diligence counsel is irrelevant.  Thus, the motion to
27 preclude Waymo from arguing or suggesting that MoFo was due diligence counsel should be
28 granted, and Waymo's request that MoFo should be disqualified as trial counsel should be denied.

## II. WAYMO SHOULD BE EXCLUDED FROM INTRODUCING EVIDENCE OR ARGUMENT OF STROZ FRIEDBERG OR MOFO'S ALLEGED POSSESSION OF WAYMO TRADE SECRETS

Pursuant to the Court's Order (Dkt. 874 ¶ 6), Uber also requests that the Court exclude evidence or argument of Stroz Friedberg or MoFo's alleged possession of Waymo trade secrets. There is no evidence that either ever possessed any of the 14,000 allegedly misappropriated files, and even if there was, it would be improper to impute such knowledge or possession to Uber where Uber never saw any such materials.

Waymo filed this action, to great publicity, based on a claim that *Uber* stole Waymo's trade secrets and that *Uber* is using them to develop competing technology for self-driving cars. But the massive discovery that Waymo has undertaken in this case does not support this claim – Waymo has uncovered no proof that any of the 14,000 allegedly downloaded files ever got to Uber or that any alleged trade secrets were ever used by Uber. In light of this complete lack of evidence, Waymo has shifted to a new and unprecedented theory of liability against Uber, based on a claim of "imputed *acquisition*." This novel theory would impute to Uber any possible acquisition of materials containing Waymo's alleged trade secrets by MoFo or Stroz Friedberg as part of Stroz's due diligence investigation – regardless of whether such trade secrets were ever shared with Uber (which they were not). For the reasons explained in Uber's brief regarding imputation (Dkt. 824), incorporated herein by reference, the Court must exclude any evidence of Stroz or MoFo's alleged acquisition or knowledge of trade secrets because that acquisition or knowledge cannot be imputed to Uber under established trade secrets law.

As explained in Uber's brief, imputation for trade secrets liability is unavailable under controlling case law. (Dkt. 824 at 2-4.) Waymo must establish that Uber (1) acquired the trade secret and (2) knew or had reason to know that the trade secret was wrongfully acquired. *See* Cal. Civ. Code 3426.1(b)(1). To show the "acquisition" element, California law requires "pointed conduct intended to secure dominion over the thing." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 223 (2010), *disapproved of on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011). *Silvaco* explains that the use of "acquire" instead of "receive" in the California Uniform Trade Secrets Act ("CUTSA") indicates that a party's receipt of trade secrets

1  is insufficient grounds for liability. *See* 184 Cal. App. 4th at 223. "[P]assively receiv[ing]" or
2  "inadvertently coming into possession of a trade secret will not constitute acquisition." CACI
3  No. 4405, Sources and Authority (quoting *Silvaco*). As the Court has previously noted, *Silvaco* is
4  binding authority. (*See* Dkt. 625, 6/7 Hr'g Tr. at 11:24-12:7.) Notably, Waymo has no response
5  to *Silvaco*. (*See* Dkt. 893.)

6  With respect to knowledge of improper means, the Ninth Circuit has held that "it is
7  generally not appropriate to direct a jury to impute an agent's knowledge of a secret to the
8  principal." *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792-93 (9th Cir. 1976)
9  (reversible error to instruct jury that it was "no defense" for corporate defendant that its agent did
10 not pass along information he received). The Ninth Circuit rejected an imputation theory,
11 explaining that it would be error to "permit recovery even when the trade secret was not actually
12 communicated to or used by the principal." *Id.* at 793. In *Droeger*, the employee merely
13 "testified that he did not communicate [plaintiff's] design idea within his company," despite his
14 duty to do so. *Id.* at 792. The relationship between agent (Stroz and MoFo) and principal (Uber)
15 here is more attenuated than in *Droeger*, and the contracts here expressly barred Stroz or MoFo
16 from disclosing to Uber any confidential Waymo information it may have received.

17 Waymo argues that *Droeger* is distinguishable because the principal there never
18 authorized its agent to engage in trade secret misappropriation. (Dkt. 893 at 7-8.) But this
19 conclusory argument presumes (without foundation) that due diligence investigations are by
20 definition authorizations to engage in trade secrets misappropriation. Judge Corley rejected such
21 an argument based on her review of "the entire record in this case," including "the *in camera*
22 Stroz report." (Dkt. 731 at 2.) She found that Uber retained MoFo "to conduct an investigation
23 into Levandowski and Otto and to create an evidentiary record that would govern Uber's
24 [indemnification] obligation"— not "to assist with obtaining Waymo's trade secrets." (*Id.*)

25 Settled agency principles confirm that any acquisition or knowledge by MoFo or Stroz
26 cannot be imputed to Uber because Stroz and MoFo were prohibited by contract from disclosing
27 any confidential Waymo information it may have received to Uber. (Dkt. 824 at 6-7
28 (summarizing Stroz and MoFo's contractual duty not to disclose any confidential or proprietary

Waymo information to Uber).)  The Restatement (Third) of Agency provides that an agent's knowledge cannot be imputed to a principal where the agent "is subject to a duty to another not to disclose the fact to the principal."  § 5.03; *see also* Restatement (Second) of Agency § 281 (Am. Law Inst. 1958) ("A principal is not affected by the knowledge of an agent who is privileged not to disclose or act upon it and who does not disclose or act upon it").  Courts applying California law regularly rely on the Restatement (Third) of Agency, and there is no reason to rely on the Second rather than the Third Restatement, as Waymo urges.  (Dkt. 824 at 5 (listing cases and explaining the Third Restatement's consolidation of several related sections of the Second Restatement).)  California has codified a similar provision, and California courts recognize that the "scope of the imputation of knowledge is directly related to the scope of the duty arising from the agency agreement."  *Triple A Mgmt. Co. v. Frisone,* 69 Cal. App. 4th 520, 535 (1999).

Additionally, the Court must exclude this evidence because it is not pled in Waymo's complaint, and the time to seek leave to amend has passed.  *Markos v. Sears, Roebuck & Co.*, No. CV 05-3051 CBM (JWJx), 2007 WL 5162457, at *3 (C.D. Cal. Mar. 19, 2007) (granting motion *in limine* to exclude evidence of damages theory not pled in complaint); *Rich v. BAC Home Loans Servicing LP*, No. CV-11-00511-PHX-DLR, 2014 WL 7671615, at *5 (D. Ariz. Oct. 9, 2014), *aff'd sub nom. Rich v. Bank of Am., N.A.*, 666 Fed. Appx 635 (9th Cir. 2016) (granting motion *in limine* to exclude evidence of unpled, alternative theory not pled in complaint); *Consol. Data Terminals v. Applied Dig. Data Sys., Inc.*, 708 F.2d 385, 398 (9th Cir. 1983) (reversing judgment in favor of plaintiff where "theory was not pleaded and was not tried by consent").  Waymo insisted on the expedited schedule in this case, and it could not claim that expedited deadlines are malleable when doing so benefits it and prejudices Uber.

**CONCLUSION**

This Court should (a) grant Uber's motion *in limine* to exclude evidence of MoFo's role in the due diligence; (b) deny Waymo's request that MoFo be disqualified; and (c) grant Uber's motion *in limine* to exclude evidence or argument regarding MoFo or Stroz's alleged possession of trade secrets.

| | | |
|---|---|---|
| Dated: July 18, 2017 | | MORRISON & FOERSTER LLP |

By: */s/ Arturo J. González*
    Arturo J. González

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC