QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa J. Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S RESPONSE TO DEFENDANTS' BRIEFS REGARDING LEVANDOWSKI'S ADVERSE INFERENCES**<br><br>**UNREDACTED VERSION FILED UNDER SEAL**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................................1

ARGUMENT .......................................................................................................................................2

I. An Inference Is Justified Regardless Of Levandowski's Employment Status. .....................2

    A. Defendants And Levandowski Are Closely Aligned. ................................................2

    B. Defendants Have Controlled And Continue To Control Levandowski. ...................3

    C. The Interests Of Defendants And Levandowski Are Compatible. ............................4

    D. It Is Undisputed That Levandowski Is A "Key Figure" In This Lawsuit. .................5

II. At A Minimum, An Inference Is Justified Based On Levandowski's Deposition. ...............5

III. Uber's "Additional Factors" Do Not Limit The Effect Of The Adverse Inference. .............6

    A. The Ability Of The Employer To Rebut The Inference. ...........................................6

    B. The Nexus Between The Conduct Of The Witness And The Defendant. .................7

    C. The Likely Reason For The Invocation. ....................................................................7

    D. Use Of The Invocation For Strategic Advantage ......................................................7

    E. Whether The Witness Later Chooses To Testify. .....................................................8

IV. The "Evidentiary Safeguards" Cited By Defendants Are Satisfied In This Case. .................8

V. Uber's Proposed Questioning Of Mr. Levandowski Is Improper. .........................................9

CONCLUSION ..................................................................................................................................11

# TABLE OF AUTHORITIES

**Page**

## Cases

*Baxter v. Palmigiano,*
   425 U.S. 308 (1976) ................................................................................................. 2

*Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.,*
   819 F.2d 1471 (8th Cir. 1987) .................................................................................. 4

*Coquina Invs. V. TD Bank, N.A.,*
   760 F.3d 1300 (11th Cir. 2014) ................................................................................ 2

*Data Gen. Corp. v. Grumman Sys. Support Corp.,*
   825 F. Supp. 340 (D. Mass. 1993) ............................................................................ 3

*Fed. Deposit Ins. Corp. v. Fidelity & Deposit Co.,*
   45 F.3d 969 (5th Cir. 1995) ................................................................................ 4, 10

*LiButti v. United States,*
   107 F.3d 110 (2d Cir. 1997) ................................................................................. 1, 2

*LiButti v. United States,*
   178 F.3d 114 (2d Cir. 1999) ...................................................................................... 2

*Nationwide Life Ins. Co. v. Richards,*
   541 F.3d 903 (9th Cir. 2008) ................................................................................ 4, 8

*In re Polyurethane Foam Antitrust Litig. Direct Purchaser Class,*
   No. 1:10-MD-2196, 2015 WL 12747961 (N.D. Ohio Mar. 6, 2015) ....................... 7

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,*
   813 F. Supp. 2d 489 (S.D.N.Y. 2011) ...................................................................... 6

*RAD Servs., Inc. v. Aetna Cas. & Sur. Co.,*
   808 F.2d 271 (3d Cir. 1986) ................................................................................. 2, 6

*SEC v. Jasper,*
   678 F.3d 1116 (9th Cir. 2012) .................................................................................. 8

*In re Sunset Bay Assocs.,*
   944 F.2d 1503 (9th Cir. 1991) .................................................................................. 6

*United States v. Hankey,*
   203 F.3d 1160 (9th Cir. 2000) .................................................................................. 9

*United States v. Kimball,*
   15 F.3d 54 (5th Cir. 1994) ...................................................................................... 10

*United States v. Oliver,*
   45 Fed. App'x 659 (9th Cir. 2002) ........................................................................... 9

**Rules and Regulations**

Fed. R. Evid. 403 ................................................................................................................. 9

Fed. R. Evid. 802(d)(2)(D) .................................................................................................. 6

Fed. R. Evid. 804(b)(3) ...................................................................................................... 10

Per the Court's Order (Dkt. 784 ¶ 4), Waymo LLC ("Waymo") respectfully submits this response to Defendants' Briefs Regarding Levandowski's Adverse Inferences (Dkts. 821, 822).

**INTRODUCTION**

There is little dispute regarding the basic legal landscape involving adverse inferences from a Fifth Amendment assertion by a non-party. Although Defendants argue that a non-party's invocation should not "automatically" be imputed to a party (Dkt. 821 at 3), Waymo has never so argued. Waymo acknowledges that this question requires a fact-specific analysis based on the circumstances of each case. (Dkt. 819 at 1, 5.) As both parties seem to agree, the fundamental inquiry is whether the proposed inference is "trustworthy" and "will advance the search for the truth." (Dkt. 819 at 6, Dkt. 821 at 3); *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997).

Where the parties diverge is in the application of the facts to the law. In an effort to avoid the consequences of their close affiliation with Levandowski, Defendants mischaracterize their relationship with him, downplay how his refusal to testify advances their interest in this litigation, and ignore the centrality of Levandowski's testimony to this case. Defendants also demand an elevated, unsupported, and untenuous corroborating evidence requirement. When viewed objectively, however, the evidence is that there is a significant nexus among Levandowski's relationship with Defendants, his Fifth Amendment invocations, and the issues in this litigation.

Levandowski plotted his departure from Waymo for months, and he had secret meetings with Uber about its self-driving car program on the very same days that he illegally downloaded thousands of Waymo's confidential design files. Shortly thereafter, Uber claims to have formed a "common legal interest" with Levandowski, acquired his newly formed company for an exorbitant sum of money, placed him in a position where he would be uniquely situated to exploit Waymo's technology, and agreed to pay his legal bills for what eventually became this very litigation. As a result, within an unrealistically short time frame, Uber's technology has come to bear a striking resemblance to Waymo's proprietary designs. Thus, when inquiry into these facts results in Levandowski asserting the Fifth Amendment, the most (and indeed only) reasonable inference is that Levandowski stole Waymo's technology to accelerate Uber's self-driving car program. Denying the jury the ability to draw this inference would be unfair and prejudicial to Waymo.

**ARGUMENT**

An adverse inference is appropriate from the Fifth Amendment assertion of a non-party where the "inference is trustworthy under all of the circumstances and will advance the search for the truth." *E.g.*, *LiButti*, 107 F.3d at 124. The jury may give the inference whatever weight is "warranted by the facts surrounding [the] case." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Indeed, the inference can carry "significant weight because silence when one would be expected to speak is a powerful persuader." *LiButti v. United States*, 178 F.3d 114, 120 (2d Cir. 1999).

**I.     An Inference Is Justified Regardless Of Levandowski's Employment Status.**

Adverse inferences based on the refusal of a former employee to testify are common. (Dkt. 819 at 4-5.) An analysis of the relevant factors confirms that this case is no exception.

**A.     Defendants And Levandowski Are Closely Aligned.**

The nature of the relationship between Levandowski and Defendants—both at the time of the relevant events and now—is such that an inference against Defendants is trustworthy. The critical question in this case is whether and to what extent Levandowski used Waymo's "treasure trove" of confidential information in his possession while fulfilling his role as head of Uber's self-driving car program under an incentive-laden contract that encouraged unrealistically rapid technological development. If the answer to this question is incriminating to Levandowski, then it is only reasonable to assume that it is also harmful to Uber's defense in this case. *Coquina Invs. V. TD Bank, N.A.*, 760 F.3d 1300, 1311 (11th Cir. 2014) ("The chance is remote that Spinosa would have invoked the Fifth Amendment if he neither knew of nor participated in Rothstein's Ponzi scheme because doing so increased his own exposure to criminal prosecution."). Uber argues that Levandowski "is acting out of his own self-interest." (Dkt. 821 at 5.) Of course, this is true. Uber, ignores, however, that in so acting, Levandowski is concealing a truth that logically leads to the conclusion that he illegally exploited Waymo's trade secrets for the benefit of Uber. This is a reasonable and sufficiently trustworthy inference that ought to be put before the jury.

This is not the type of case where a former employee is likely to "falsely claim to have engaged in criminal conduct for which the defendant employer is liable." *See RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 276 (3d Cir. 1986) (quotation and citation omitted). That is

especially true here given that the district court has referred the case to the U.S. Attorney (Dkt. 428), and Levandowski's personal attorneys have repeatedly emphasized that the threat of criminal liability is real. Also, Levandowski has many reasons to remain loyal to Uber. Uber is obligated to indemnify Levandowski and pay his legal fees for this very action. (Dkt. 790-2.) Uber retains ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ which has the potential ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Dkt. 515-9 at § 1.1; Dkt. 515-13 at -7487; Dkt. 515-14 at -7524.) Levandowski even has a familial connection to Uber, as his brother remains a prominent Uber engineer. (5/4 Haslim Depo. Tr. at 98:2-18.) Any suggestion that Levandowski might invoke the Fifth Amendment out of animus to Uber is not credible.

The case for an adverse inference is even stronger against Otto Trucking—an entity for which Levandowski remains ▓▓▓▓▓▓▓▓▓▓▓▓▓ "Executive Chairman," and a "managing member." (Dkt. 676-12 at 279:14-18.) The jury should also be permitted to draw an adverse inference against Otto Trucking. *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 825 F. Supp. 340, 353 (D. Mass. 1993) (permitting adverse inference against current employer in trade secret case where employer "turned a blind-eye to [employee's] potential continued wrongful use . . . , and probably shared in the rewards of [employee's] apparent wrongdoing . . . .").

B. **Defendants Have Controlled And Continue To Control Levandowski.**

The degree of control exercised by Defendants over Levandowski further supports drawing an adverse inference. Levandowski was allowed to continue in his role at the helm of Uber's self-driving car technology development effort for months after this case surfaced, including well after Levandowski made clear that he would refuse to testify. In fact, Uber continued to benefit from Levandowksi's services and technical input up until the Court issued the Preliminary Injunction commanding Uber to take remedial steps with respect to Levandowski's theft. (Dkt. 433 at 23 ¶ 2 & n.9.) Even now, Uber retains leverage over Levandowski by virtue of its role as his indemnitor, and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ of Otto Trucking. And, Levandowski is obviously under the control of Otto Trucking, which has ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Dkt. 676-4 at 6-7.)

Despite this control over Levandowski, Uber argues that the Court should disallow any

inference, because it is not "fair" when the choice to invoke the Fifth Amendment ultimately belonged to Levandowski. (Dkt. 821 at 5.) But the law does not support this sweeping assertion. *Fed. Deposit Ins. Corp. v. Fidelity & Deposit Co.*, 45 F.3d 969, 978 (5th Cir. 1995) (drawing an inference against a party based on a non-party, non-agent's invocation of the Fifth Amendment is not prejudicial as a matter of law). In fact, the prevailing case law suggests that excluding an appropriate inference would be unfair to **Waymo**, as it could cause the jury to "infer[] that [Waymo] did not call [Levandowski] to testify because his testimony would have damaged [its] case." *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1481 (8th Cir. 1987); *see also Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 913 (9th Cir. 2008) ("A decision not to draw the inference poses substantial problems for an adverse party who is deprived of a source of information that might conceivable be determinative in a search for the truth.").

### C. The Interests Of Defendants And Levandowski Are Compatible.

Uber benefits from Levandowski's Fifth Amendment assertions because they frustrate Waymo's investigation into the fate of its stolen files. While Uber claims that it "wants Levandowski to testify" (Dkt. 821), its conduct in this litigation suggests otherwise. As early as March 29, Uber requested an *in camera* hearing to allow Levandowski to inform the Court of his intention to invoke the Fifth Amendment. (*See generally* 3/29 Hr'g Tr.) When Levandowski improperly sought to withhold the identity of Stroz on Fifth Amendment grounds, Uber redacted its privilege logs. (*See* Dkt. 202.) After the Court ordered Uber to take remedial action, Uber joined in Levandowski's baseless argument that this violated the Fifth Amendment, arguing that the position "advanced by Mr. Levandowski appears well founded and supported." (Dkt. 514 at 2.) And, as recently as June 9, Uber urged the Court to quash subpoena requests to Stroz on the grounds that they violated **Levandowski**'s Fifth Amendment rights. (Dkt. 581 at 1 n.1.)

Besides assenting to Levandowski's Fifth Amendment assertions at every turn, Uber has also made clear that it only wishes for Levandowski to testify on matters that fit its litigation narrative. Early in this case Uber stated that it wanted Levandowski to testify because "he has a good story to tell." (3/29 Hr'g Tr. at 16:7-11.) At Levandowski's deposition, Uber's counsel took the opportunity to question Levandowski at length, but never once inquired about *anything* having

to do with the misappropriation or Levandowski's work at either Waymo or Uber. (Dkt. 342-8 at 165:14-179:11.) Uber's argument that it wants Levandowski to testify is disingenuous.

Uber's firing of Levandowski also does not demonstrate an incompatibility of interests with regard to Levandowski's Fifth Amendment assertions. Contrary to Uber's claim that it fired Levandowski for his refusal to testify (Dkt. 821 at 1:10-11), Uber's contemporaneous statements indicate that it only fired Levandowski when it became necessary to avoid contempt with the Court's Preliminary Injunction Order and after Levandowski refused to cooperate with an "internal investigation," the details of which Uber is refusing to disclose on grounds of privilege. (Dkt. 519-2.) Besides, regardless of whether Levandowski is a current employee, Uber continues to benefit from Levandowski's refusal to testify, just as it did prior to Levandowski's termination.

Finally, Uber's argument that it wants the facts of Levandowski's theft out in the open ring hollow in light of its "extensive claims of privilege" that have led to the "relentless concealment of likely probative evidence . . . from Waymo's view." (Dkt. 433 at 8.) Uber and its attorneys are blocking access to thousands of relevant documents—including, apparently, Waymo's own stolen files—on the basis of Uber's "common legal interest" with Levandowski. Uber went so far as to interpose "common interest" objections during Levandowski's deposition. That Uber is wielding its own privileges to conceal evidence on the same issues for which Levandowski refuses to testify confirms a unity of interests. An adverse inference is therefore warranted.

**D.     It Is Undisputed That Levandowski Is A "Key Figure" In This Lawsuit.**

Defendants do not even bother to address the last *LiButti* factor, regarding the central role of Levandowski in this lawsuit. It is undisputed that Levandowski's importance as a witness weighs heavily in favor of permitting the jury to hear his testimony and draw an appropriate inference. Thus, for all of these reasons, the Court should admit Levandowski's Fifth Amendment assertions at trial and instruct the jury that an adverse inference is permitted.

**II.    At A Minimum, An Inference Is Justified Based On Levandowski's Deposition.**

As Uber seems to concede, an adverse inference based on Levandowski's assertions of the Fifth Amendment during his April 14th deposition is even more appropriate because, at the time of this deposition, Levandowski remained an Uber Vice President and there was no reason to

question his loyalty to Uber.  Uber argues, however, with respect to this deposition testimony, the Court should nonetheless limit the adverse inference to only those matters that "pertain to the scope of [Levandowski's] employment." (Dkt. 821 at 6.)  There is no basis for this limitation.

Levandowski cites *RAD Servs., Inc.*, 808 F.2d at 275.  But, in that case, the Third Circuit specifically rejected the argument that this standard was an absolute limit on the admissibility of an employee's Fifth Amendment assertion and a resulting adverse inference.  *Id.* at 275-76.  Likewise, in *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489 (S.D.N.Y. 2011), the Court held only that, under the circumstances of that case, an employer was not likely liable for the illegal actions of an employee taken outside the scope of the employee's duties.  *Id.* at 555.  In this case, by contrast, Uber would *necessarily* be liable for any exploitation of Waymo's intellectual property by Levandowski.

In any event, even if the standard under Fed. R. Evid. 802(d)(2)(D) were an absolute prerequisite to admissibility (which it is not), all of Levandowski's activities in misappropriating and exploiting Waymo's intellectual property satisfy this standard because such activities, at least, "concern" Levandowski's role as the head of Uber's self-driving car program.  *See In re Sunset Bay Assocs.*, 944 F.2d 1503, 1519 (9th Cir. 1991) (holding that Fed. R. Evid. 801(d)(2), "statements need only *concern* matters within the scope of the agency; they need not be made within the scope of the agency").  Thus, at a minimum, Waymo's April 14th deposition questioning is admissible and properly the subject of an adverse inference.

### III.   Uber's "Additional Factors" Do Not Limit The Effect Of The Adverse Inference.

In addition to the factors set forth above, Uber articulates a host of additional factors that it contends may limit the admission of Fifth Amendment invocations and adverse inferences. (Dkt. 821 at 7-9).  These factors, however, are derived from an over-reading or a mischaracterization of the relevant case law, and they do not support limiting Levandowski's invocations here.

### A.   The Ability Of The Employer To Rebut The Inference.

Uber's cites to *RAD Servs., Inc.*, 808 F.2d at 275, to suggest that the Court should limit the permissible inferences from Levandowski's invocation because Uber cannot rebut the inference.  But *RAD Servs.* suggests exactly the opposite, holding that employers are generally well-

positioned to "rebut any adverse inference that might attend the employee's silence." *Id.*  This is particularly true in this case, where Uber controls virtually all of the evidence relating to misappropriation, including its technical documentation, prototypes, and the percipient witnesses on its engineering teams.  Indeed, Uber's position has been that at trial it will attempt to prove that it "took strict precautions to ensure that no trade secrets belonging to a former employer would be brought to or used at Uber." (Dkt. 173-3.)  This weighs in favor of admissibility, not against.

### B. The Nexus Between The Conduct Of The Witness And The Defendant.

Uber does not explain how its proposed "nexus" factor differs from, or adds any analytical value to, the *LiButti* factors articulated above.  In *In re Polyurethane Foam Antitrust Litig. Direct Purchaser Class*, No. 1:10-MD-2196, 2015 WL 12747961, at *6 (N.D. Ohio Mar. 6, 2015), the Court only denied an adverse inference where the witnesses were never employed by the defendant, and the questioning related to events that occurred prior to when the defendant even came into existence.  These facts are distinguishable, as discussed above. (*Supra* Section I.A)

### C. The Likely Reason For The Invocation.

Uber's argument that it is "impossible" to know why Levandowski asserted the Fifth Amendment is specious.  (Dkt. 821.)  The Court has already found that "Waymo has supplied a compelling record that Levandowski pilfered over 14,000 files from Waymo, and that Uber knew or should have known as much when it brought him on board." (Dkt. 433 at 12.)  The Court also found that Levandowski "evidently" stole these files "to have them available to consult on behalf of Otto and Uber" and that the stolen files "likely remain[ed] in Levandowski's possession." (*Id.* at 7.)  This record supports the inference that Levandowski's refusal to testify is because his use of Waymo's intellectual property at Uber would subject him to further criminal liability.

### D. Use Of The Invocation For Strategic Advantage

Uber accuses Waymo of "pos[ing] limitless unsubstantiated and strategic questions in order to create artificial inferences, safe from contradiction." (Dkt. 821.)  But this is not true.  In fact, as discussed below (*infra* Section I.D), the questions proposed by Waymo (Dkt. 835) satisfy each of the "evidentiary safeguards" that Uber insists are necessary.  Indeed, the very fact that the parties are now, in advance of trial, briefing the Fifth Amendment issues and presenting proposed

-7-

lines of questioning mitigates the risk of "limitless" and "unsubstantiated" questioning at trial.

### E. Whether The Witness Later Chooses To Testify.

Uber ominously suggests that the adverse inferences resulting from Levandowski's testimony will simply be washed away should Levandowski choose to testify at trial. (Dkt. 821 at 9.) The Court should not permit such gamesmanship. Uber would almost certainly be behind any decision by Levandowski to suddenly testify at trial, especially given the close economic and financial ties that persist between Levandowski, Uber, and the other Defendants. (*Supra* Section I.A.1.) The Court should not allow Levandowski to suddenly recant his Fifth Amendment assertions and shape his testimony to strategically exonerate Defendants at the eleventh hour. In *Nationwide*, 541 F.3d at 913, for example, the Ninth Circuit affirmed a district court's decision to not only draw an adverse inference from a witness's invocation of the Fifth Amendment, but also to preclude that witness from abandoning the Fifth Amendment and testifying at trial. *Id.* (rejecting argument that this constituted a "double penalty for a legitimate exercise of her Fifth Amendment privilege"). A similar rationale applies should Levandowski try to testify in this case.

## IV. The "Evidentiary Safeguards" Cited By Defendants Are Satisfied In This Case.

Finally, Uber overstates the "additional safeguards" required to justify the questioning and adverse inferences that Waymo seeks. (Dkt. 821 at 9-10.) First, while corroborating evidence is required, Uber's suggestion that the proponent must definitively *prove* the fact under inquiry prior to obtaining an adverse inference is nonsensical and incorrect. The Ninth Circuit has recognized that circumstantial evidence can sufficiently corroborate an adverse inference. *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 902, 913 (9th Cir. 2008). Moreover, the Ninth Circuit has recognized that every individual question need not be treated as an "instance where the adverse inference was drawn" because the finder of fact is entitled to conclude that the "sum total" of a witnesses Fifth Amendment invocations support an adverse inference against him. *SEC v. Jasper*, 678 F.3d 1116, 1126 (9th Cir. 2012). Under this proper standard, Waymo has supplied adequate corroborating evidence to justify its proposed lines of questioning. (Dkt. 835.)

Second, while the Fifth Amendment must be invoked by a witness on a question-by-question basis, *Jasper* specifically rejects the argument that every requested adverse inference

must be tied to a single question. 678 F.3d at 1126. Rather, the "sum total" of several invocations can lead to a single adverse inference, and the district court is not required to scrutinize the admissibility or scope of inferences on a question-by-question basis. *Id.* Thus, Waymo's proposed list of questions is properly organized by subject-matter category (Dkt. 835), and provides sufficient corroborating evidence to support the inference sought on each category.

Third, the adverse inferences that Waymo will seek easily satisfy Federal Rule of Evidence 403. Rule 403 only bars evidence if its probative value is ***substantially*** outweighed by the danger of unfair prejudice. *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) ("FRE 403 favors admissibility . . . ."). Once it is established that Waymo has satisfied the *LiButti* trustworthiness factors and has provided sufficient corroborating evidence to support each inference, Uber can hardly claim that an adverse inference is not "probative." *United States v. Oliver*, 45 Fed. App'x 659, 661 (9th Cir. 2002) (unpublished) ("Evidence is sufficiently probative if it supplies even a small piece of the puzzle."). Uber claims there are "credible alternative" explanations for Levandowski's Fifth Amendment invocations (Dkt. 821 at 10.) But even if true (which Waymo contests), Uber does not even attempt to contest that the inferences sought by Waymo are "probative" and indeed the most reasonable under the circumstances. In sum, Uber fails to meet its heavy burden of demonstrating that the probative value of Waymo's requested adverse inferences is "substantially outweigh[ed]" by the risk of unfair prejudice.

## V. Uber's Proposed Questioning Of Mr. Levandowski Is Improper.

Apparently recognizing that Waymo's proposed adverse inferences will be admitted, Uber attempts to "turn the table" on this evidence by concocting a far-fetched line of questioning that Levandowski stole Waymo's proprietary files because he was "concerned that Google would not pay his full Project Chauffeur bonus." (Dkt. 829-4 at 1.) But, Uber fails to satisfy the legal requirements to admit this evidence against Waymo, much less the elevated and overly stringent requirements that it raises in response to Waymo's proposed inferences.

Most importantly, Uber's theory does not follow logically. The notion that Levandowski would subject himself to criminal liability by stealing Waymo's proprietary information and holding it "ransom" for his performance bonus strains credibility. Further, a fundamental premise

of Uber's theory—that Levandowski was owed money that was past due—is simply wrong and misunderstands the Project Chauffer Bonus Agreement and Plan, as Waymo will fully explain in a motion *in limine* to exclude Uber's improper questioning.

Additionally, Uber fails to satisfy the *LiButti* test discussed above. While Levandowski was formally employed by Waymo at the time of the theft, he was actively plotting his departure and betraying his loyalty to Waymo. In fact, Uber has contended that it and Levandowski were contemplating litigation against Waymo at this time, which further illustrates the strained relationship, Waymo's lack of control over Levandowski, and the incompatibility of interests. The circumstances of the relationship—both at the time of the theft, and now—also raise the prospect that Levandowski "may purposefully invoke the privilege solely to discredit [Waymo]." *Fed. Deposit Ins. Corp.*, 45 F.3d at 978 ("The classic example would be a disgruntled former employee who invokes the privilege to hurt his former employer."). Under these circumstances, the inferences that Uber proposes are unreliable and should be excluded.

Finally, Uber fails the corroboration requirement it argues is so important in the context of Waymo's proposed inferences. Much of the evidence cited by Uber is speculative, based on testimony and documents that it expects to obtain. (Dkt. 829-4 at 1-2.) Uber also inappropriately relies on Waymo's arbitration demand, which merely demonstrates that Waymo now doubts Levandowski's contributions to its LiDAR program—not necessarily that Levandowski then had expected that his bonus would not be paid. Finally, the only specific evidence that Uber identifies is the self-serving testimony of its CEO, who will apparently testify regarding what Levandowski told him about the theft. (Dkt. 829-4 at 2.) But, this secondhand testimony is inadmissible heresy and inherently unreliable. There is reason to doubt that a "reasonable person in [Levandowski's] position would have made [the statement] only if the person believed it to be true." Fed. R. Evid. 804(b)(3). Further, Uber should not be permitted to invoke a hearsay exception where it has contributed to Levandowski's unavailability by supporting the Fifth Amendment assertions. *See United States v. Kimball*, 15 F.3d 54, 55-56 (5th Cir. 1994) ("The sponsor of a declarant's former testimony may not create the condition of unavailability and then benefit therefrom."). For all these reasons, Uber's proposed questioning of Levandowski should be excluded from evidence.

**CONCLUSION**

Waymo respectfully requests that the Court rule (i) that the jury shall be entitled to draw an adverse inferences as requested in its July 7th Statement, and (ii) that Uber's proposed line of questioning shall be excluded.

DATED: July 14, 2017                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC