

July 18, 2017

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
United States District Court for the Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, LLC et al.,* Case No. 3:17-cv-00939-WHA

Dear Judge Corley:

Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") submit this letter brief to request a protective order against the depositions of Bill Gurley, Arianna Huffington, and David Bonderman, current and former members of Uber's Board of Directors (the "Board Members"). As discussed below, Waymo has not made any showing that the Board Members have unique, first-hand knowledge relevant to this case. Instead, Waymo is relying on the generic assertion that the Board Members must have relevant information simply by virtue of their positions at the top of Uber's corporate structure, and a vague speculation based on press accounts that Mr. Gurley and Ms. Huffington might have some unspecified further information Waymo believes is somehow relevant to this case.

"When a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), courts have 'observed that such discovery creates tremendous potential for abuse or harassment." *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (citing *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007)). Accordingly, "[w]hen a party seeks the deposition of a high-level executive . . . the court may exercise its discretion under the federal rules to limit discovery." *Affinity Labs v. Apple, Inc.*, No. C 09-4436 CW (JL), 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011); *see* Fed. R. Civ. P. 26(b)(1) (permitting discovery into relevant matters "proportional to the needs of the case," and weighing "whether the burden or expense of the proposed discovery outweighs its likely benefit."). "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has **unique** first-hand, **non-repetitive knowledge of the facts at issue in the case** and (2) whether the party seeking the deposition has exhausted other less intrusive discovery measures." *In re Google Litig.*, No. C 08-03172 RMW (PSG), 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011) (emphasis added). "Where a high-level decision maker 'removed from the daily subjects of the litigation' has no **unique personal knowledge** of the facts at issue, a deposition of the official is improper." *Celerity*, 2007 WL 205067, at *3 (citations omitted).

Waymo has offered two grounds for its requested apex depositions. Neither even comes close to satisfying this standard.

BOIES SCHILLER FLEXNER LLP

1401 New York Avenue NW, Washington, DC 20005 | (t) 202 237 2727 | (f) 202 237 6131 | www.bsfllp.com



*First*, Waymo explained that it is seeking Mr. Gurley's deposition:

> [B]ecause he received the due diligence report and, as a member of Uber's Board of Directors, is expected to have knowledge of Uber's business plans and strategy for its self-driving car program, reasons why the Board approved of the acquisition of Otto, what information was disclosed to the Board before that decision was made, what Uber knew and when Uber knew it.

(Ex. A.)  Waymo gave the same reasons, almost verbatim, to explain why it is seeking the depositions of Ms. Huffington and Mr. Bonderman.  (Ex. B.)  This boilerplate does not even attempt to explain what unique, first-hand knowledge these Board Members have that would justify an apex deposition.

The three Board Members' receipts of the due diligence report prepared by Stroz Friedberg (without its exhibits) cannot logically be a basis for their depositions.  First, the Board Members received the report after the complaint in this case was filed, and hence as part of responding to this litigation.  That is not a proper basis for discovery.  Second, as the Court knows, Mr. Levandowski has appealed the Court's orders requiring the production of the due diligence report, and that appeal is pending before the Federal Circuit.  Until there is a final decision concerning Mr. Levandowski's privilege claims over the due diligence report, the Board Members will not be able to answer questions about the report; on the other hand, if there is a final decision overruling Mr. Levandowski's assertions of privilege, Waymo will receive a copy of the report.  In that circumstance, Waymo will have no basis for questioning the Board Members, who received the report after the complaint was filed.  The Board Members received the report for the purpose of assessing, responding to, and helping to manage this litigation– meaning that all of their discussions about the report will remain privileged even if the report itself is held not to be privileged.  Moreover, Waymo has no basis for suggesting that these Board Members know anything unique about the report – an assertion that would be contradicted by the fact they did not see it until after the complaint in this case was filed.

Waymo's other reasons for seeking the Board Members' depositions are equally unfounded.  Waymo has already deposed Uber's Vice President of Corporate Development and Uber's Senior Manager of Corporate Development, who were closely involved in Uber's acquisition of Ottomotto and who met with Uber's Board of Directors in connection with the acquisition.  Waymo is scheduled to re-depose both witnesses, and other witnesses knowledgeable about the acquisition, including Uber Board member and former CEO Travis Kalanick.  Uber has also agreed to produce minutes of its Board meetings (or meetings of Board committees) during which Ottomotto, Otto Trucking, or Mr. Levandowski were discussed, and documents regarding Ottomotto, Otto Trucking, or Mr. Levandowski that were prepared for Uber's Board or Board committees.  Waymo has not even attempted to explain what *unique* personal knowledge the Board Members they seek to depose might have, over and above the discovery Waymo has already taken and will be taking.  Similarly, many of Waymo's discovery requests concern "Uber's business plans and strategy for its self-driving car program," and many deponents already scheduled (or being scheduled) will be able to speak more directly to that topic than the Board Members, including Mr. Kalanick and other senior Uber executives.



The last part of Waymo's boilerplate for seeking the depositions of the Board Members—that the Board Members have knowledge about "what Uber knew and when Uber knew it"—cannot justify any apex depositions. As the Court is aware, Waymo has conducted extensive discovery of Uber. It has received more than 30,000 documents to date (with more forthcoming); conducted ten inspections of Uber's facilities, design files, source code, emails, and documents;; deposed over a dozen Uber witnesses; and will take an additional seventeen Uber depositions before fact discovery closes. There is absolutely no basis to suggest that the Board Members would somehow have *additional* information about "what Uber knew and when Uber knew it," above and beyond what the Uber employees responsible for negotiating and executing the Otto transaction had. The Board Members received their information from people within Uber. They did not negotiate or execute the deal. By definition, they did not know things independently from the other Uber employees Waymo is deposing or earlier than those other Uber employees. Waymo has not even tried to explain what unique first-hand information the Board Members might have—because it cannot.

If Waymo's proffered boilerplate, generic justification for the depositions of the Board Members was enough to warrant apex depositions, then the apex rule would be meaningless. If it were sufficient that board members may have some knowledge about general topics relevant to the case, then every board member of every party in every case (including Waymo, Google, and Alphabet in this case) would be subject to deposition. That is obviously not the law.

*Second*, Waymo contends that it is entitled to depose Mr. Gurley based on his reported role in a "campaign" that led to Mr. Kalanick's resignation as CEO. (Ex. A.) Waymo claims that this "litigation was a factor" in that reported campaign, citing a Bloomberg article. (*Id.*) That article's entire discussion of this litigation, based on anonymous sources, is as follows: "They crafted a two-page letter outlining their grievances. It blames Kalanick for putting the company at legal risk, citing a trade secrets lawsuit by Alphabet Inc.'s Waymo . . . ." (Ex. C). Waymo also contends that it is entitled to depose Ms. Huffington in relation to this "campaign," based on even less—two lines in a New York Times article (again, based on anonymous sources): "Mr. Kalanick, who had built Uber into a transportation behemoth in just eight years, quickly called Arianna Huffington, an Uber board member, for advice. Ms. Huffington told Mr. Kalanick that the suggestions in the letter were worth considering." (Ex. D).

Even assuming that these press accounts are accurate, there is no reason to believe that Mr. Gurley has unique information *relevant to this case* because he reportedly was involved in an effort to bring about Mr. Kalanick's resignation as CEO. In light of the extensive discovery Waymo is obtaining in this case, including the Board minutes and documents prepared for the Board relating to the Otto transaction, as well as the deposition of Mr. Kalanick and other senior executives, there is no other information Mr. Gurley has that would bear on the merits of this litigation. Waymo has not even explained what additional, relevant, first-hand information it thinks Mr. Gurley might have, or offered any reason to think that information is uniquely within Mr. Gurley's knowledge.

Waymo's claim that it should be allowed to depose Ms. Huffington based on one reported conversation—which may not have even involved any discussion of this case or the


facts at issue in this litigation—is even more attenuated.  Suffice it to say, again, that Waymo has not explained what unique information it is seeking that is relevant to the issues presented in this case, or why it believes Ms. Huffington would have unique information pertinent to this case simply because she spoke with Mr. Kalanick before his resignation as CEO.

     For the reasons above, the Court should bar Waymo from taking the depositions of Bill Gurley, Arianna Huffington, or David Bonderman.  However, to the extent the Court allows any of these apex depositions, it should limit those depositions to no more than four hours each, as it has for the depositions of Waymo's apex witnesses.

                            Sincerely,

                            */s/ Karen L. Dunn*

                            Karen L. Dunn
                            Counsel for Uber Technologies, Inc. and
                            Ottomotto LLC

cc: counsel of record; Special Master John Cooper