**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94101 | TEL (415) 875-6600

July 20, 2017

Magistrate Judge Jacqueline Scott Corley

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal., Case 3:17-cv-00939-WHA
      **Waymo's Opposition to Uber Technologies Inc. and Ottomotto LLCs Motion for a**
      **Protective Order**

Dear Judge Corley:

Plaintiff Waymo LLC ("Waymo") files this brief in opposition to Uber and Ottomotto's  motion
for a protective order.  (Dkt. 953).

Sincerely,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

Plaintiff Waymo LLC ("Waymo") submits this letter brief in opposition to Defendants' Uber Technologies, Inc. ("Uber") and Ottomotto LLC (collectively, "Defendants") motion for a protective order against the depositions of former Uber board members Bill Gurley and David Bonderman, and current Uber board member, Arianna Huffington (collectively, the "Board Members") (the "Motion").

The Court instructed Waymo to "find out what Uber knew and when they knew it" and that Waymo should do it "as quickly as humanly possible" because "[t]hat's one of the key issues in this case." (Dkt. 625 at 40:7-11.)  Yet, despite Uber's previous representation to the Court in relation to depositions that "Nobody is hiding at Uber," (Dkt. No. 354, 503 [F, G, H]), Uber seeks to prevent Waymo from seeking the depositions of Messrs. Gurley and Bonderman and Ms. Huffington who are highly relevant to that key issue as each possesses unique, non-repetitive knowledge of relevant facts in issue.  To the extent feasible, Waymo has attempted to exhaust less intrusive discovery methods and Defendants fail to meet their burden to show otherwise.

**Each Board Member has first-hand, non-repetitive knowledge of relevant facts**. Defendants' argument that Waymo asserts that the Board Members have relevant information "simply by virtue of their positions at the top of Uber's corporate structure," is incorrect.  Br. at 1.  Indeed, only Ms. Huffington is still at the top of Uber's corporate structure, Messrs. Gurley and Bonderman being former Uber Board members.  In any event, according to Cameron Poetzscher, Uber's Vice President of Corporate Development, Uber's Board of Directors had "final sign-off" on the decision to acquire Ottomotto.  (Ex. 1 [6/19/2017 Poetzcher Deposition Tr.] at 279:11-280:5.).  Uber's Board of Directors, which included then CEO Travis Kalanick, Gurley, Bonderman, and Huffington, approved the deal at a Board meeting shortly before the signing of the April 11, 2016 Put Call Agreement. (Ex. 2 [6/22/2017 Qi Deposition Tr.] at 100:13-104:21.).  Waymo chose Gurley, Huffington, and Bonderman because they were the members of Uber's broader Board of Directors who received copies of the final Stroz Due Diligence Report.  (Dkt. 823 at 1.)  That Waymo has only sought to depose these three individuals, not the entire Uber board, demonstrates that its discovery requests have been narrowly tailored and are not intended to abuse the discovery process or harass.  *See* Br. at 2.  If other Uber Board members have more relevant knowledge here, Waymo would be happy to engage Uber on that point, but Uber provides no basis to preclude Waymo from deposing any of these Board members.  It is notable also that a Board of Directors is necessarily, and by design, a small group of people who are to make decisions amongst themselves.  Where, as here, they were involved in key facts of the case and are a critical part of what the Court has already determined to be a "key issue," that requires their deposition to get at the facts underlying the key issue.  In other words, the Board Members testimony is unique and personal to them and not repetitive.  Even though they may have "received their information from people within Uber" and "did not negotiate or execute the deal", they *decided* that the deal would occur and the reasons why, which only they had.  Br. at 3.

Further, Mr. Kalanick resigned as Uber's CEO in mid-June of 2017.  (*See, e.g.,* https://www.nytimes.com/2017/06/21/technology/uber-ceo-travis-kalanick.html.)  According to media reports, Mr. Kalanick's decision was precipitated by delivery of a letter "urging Kalanick's resignation," which "was the result of a multi-week campaign led behind the scenes by Bill Gurley  .  .  .  with the goal of ousting Kalanick."  (*See*

https://www.bloomberg.com/news/articles/2017-06-22/kalanick-s-ouster-as-uber-ceo-began-with-a-hand-delivered-letter.). Media reports allege that the letter "blames Kalanick for putting the company at legal risk, citing a trade secrets lawsuit by Alphabet Inc.'s Waymo"—*i.e.* this litigation—after speaking with "people familiar with the matter." (*Id.*) Kalanick's resignation, at the instigation of members of Uber's Board of Directors in such close time proximity to receipt of the due diligence report by the three Uber Board Members Waymo proposes to depose, including Gurley, who "led" the "multi-week campaign," is highly suggestive of the fact that Kalanick's resignation was because the due diligence report provided unequivocal evidence that Levandowski misappropriated trade secrets from Waymo and Ottomotto was subsequently nevertheless acquired. Even if Defendants (misguided) assertions that the due diligence report is privileged were accurate (they are not), the fact of Kalanick's resignation and the timing of the report's receipt is highly factually relevant to Uber's knowledge of misappropriation of trade secrets at the center of this litigation. *See Rita Med. Sys., Inc. v. Resect Med., Inc.*, 2007 WL 161049, at *8 (N.D. Cal. Jan. 17, 2007) (Alsup, J.).

The Court granted Uber's motion to compel David Drummond's testimony, due to his "conversations . . . with Mr. Kalanick . . . as well as his knowledge of the Uber/Otto deal," unless Waymo stipulated not to call Mr. Drummond as a witness. (Dkt. 833, __.) Here, there is no dispute, each of the potential deponents indisputably had conversations with Kalanick regarding the Uber/Otto deal," and this litigation.

Moreover, the Board of Directors had final sign off on Kalanick's resignation such that, even if Bonderman and Huffington had no involvement with the letter to Kalanick, they took part in, and were key decision-makers, on Kalanick's resignation. And Defendants gripe that based on only press releases cannot be held against Waymo who has tried, but failed, to obtain directly from Uber, including through these very depositions, information about the circumstances leading to Kalanick's resignation and the linkages to this litigation. Br. at 3.

Defendants argue that the receipt of the due diligence report by these three Board Members is not a basis for their depositions because these Board members "received the report after the complaint in this case was filed, and hence as part of responding to this litigation." Br. at 2. Yet Defendants do not assert privilege nor attempt to carry their burden to establish the elements of privilege. That is because they cannot. There is no basis for asserting that any attorney was present at the relevant board meetings or legal advice was discussed, as opposed to generic legal matters. Defendants vaguely claim that the "Board members received the report for the purpose of assessing, responding to, and helping to manage this litigation" such that "their discussions about the report will remain privileged." But Defendants fail to carry their burden to establish any privilege exists for non-lawyers, without attorney input, assessing, responding, or managing a litigation, as a preliminary matter. Board member discussions about legal matters do not of themselves attract privilege. More importantly, Defendants do not claim that their receipt of the due diligence report was for the purpose of obtaining legal advice.

Through slight-of-hand, Defendants attempt to detract from the centrality of these Board Members' deposition testimony as to "what Uber knew and when Uber knew it" because Uber has produced some discovery in this case through documents—just not the critical ones going to knowledge like the due diligence report and minutes of board meetings—and other Uber

witnesses—none of whom can speak to the issues Waymo seeks to depose the Board members about.  Br. at 3.

**There Are No Less Intrusive Discovery Methods Available Here.**  The high-level decision-making involved by these very Board Members, for which their reasoning may only come from their personal knowledge, makes their testimony indispensable.  (Dkt. No. 566 at 10–11) (Doc. No. 685) at 3-7 (Alsup, J.).

Defendants claim that deposing other nameless witnesses and Uber Board member and former CEO Travis Kalanick should suffice.  But Kalanick, urged to resign by these very Board Members, is likely to present a different perspective to that of these Board Members. Defendants also assert that Waymo need not depose the Board Members because it deposed Uber's Vice President of Corporate Development and Uber's Senior Manger of Corporate development, who were "closely involved in Uber's acquisition of Ottomotto and who met with Uber's Board of Directors in connection with the acquisition."  Br. at 2.  Notably, Defendants do not claim that these two employees actually made any decisions regarding Otomotto's acquisition nor the designation to support Kalanick's resignation and the reasons for that signoff. Indeed, both individuals testified on deposition that it was the *Board* who had signoff, not them. (Poetzcher Dep. Tr. 279:11-19; Qi at 100:5-15).  Courts order apex depositions in these circumstances.  *Hunt v. Cont'l Cas. Co.*, 2015 WL 1518067, at *3 (N.D. Cal. Apr. 3, 2015) ("other witnesses have testified that they did not know of, did not recall or were not involved in communications and decisions . . . the Court is satisfied that Plaintiff has attempted less intrusive discovery methods.).  It follows that only members of the Board will know the reasons why the Board made these critical decisions and whether it was made with knowledge of Waymo's trade secret misappropriation.

Uber's minutes of Board meetings are also poor substitutes for deposing these Board members because minutes of board meetings are unlikely to contain full recordation of the *reasons* for approving the acquisition of Ottomotto, nor particularly the reasons Mr. Kalanick's resignation was urged—and Defendants do not claim otherwise.[1]

For all these reasons, the Court should deny the Motion in its entirety and order the depositions of the Board Members.

Respectfully,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

cc: All counsel of record; Special Master John Cooper

99999-00084/9434362.1

---

[1]  Defendants seek to put off the Board members depositions "[u]ntil there is a final decision" on Mr. Levandowski's appeal of the Orders to produce the due diligence report.  Br. at 2-3.