# EXHIBIT 15

# UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**Stephen Swedlow** <stephenswedlow@quinnemanuel.com>  Fri, Sep 23, 2016 at 3:57 PM
To: "Salle Yoo (salle@uber.com)" <salle@uber.com>, Angela Padilla <angela.padilla@uber.com>, "Jen Ghaussy (jeng@uber.com)" <jeng@uber.com>, Jason Allen <jallen@uber.com>, Martin White <mwhite@uber.com>, "haswell@uber.com" <haswell@uber.com>, Aaron Bergstrom <abergstrom@uber.com>, Christin Hill <chill@uber.com>
Cc: John Quinn <johnquinn@quinnemanuel.com>, Melissa Baily <melissabaily@quinnemanuel.com>, Christine Chung <christinechung@quinnemanuel.com>, Arthur Roberts <arthurroberts@quinnemanuel.com>, David Perlson <davidperlson@quinnemanuel.com>, Shon Morgan <shonmorgan@quinnemanuel.com>

Salle, Angela, All:

I am writing to inform you that we have made the very difficult decision to end our attorney-client relationship with Uber. For me personally, it has been both an honor and a privilege to represent Uber in many of its most important litigations over the past 4.5 years. It was gratifying to have beaten Yellow Cab in Chicago when they sought a TRO while Uber was in its relative infancy. I am proud of the work we have done for Uber and I value the professional relationships and personal friendships that have developed over the years. However, it is no longer feasible to serve the role we have been relegated to in the context of representing Uber.

We understand Uber's need and desire to control litigation costs. All sophisticated in-house legal departments have to control costs. To that end, it makes sense for Uber to have a preferred counsel program and to enter into fixed fee arrangements with outside counsel by phase. However, the fixed fees that Uber requires for certain phases is below the threshold for what makes financial sense for our firm. For example, negotiating down to ▓▓▓▓ for an answer to a complaint and negotiating down to ▓▓▓▓ for a settlement agreement leave very little time or ability to provide the superior legal services we, as a firm, must provide to all of our clients on every task. Simply put, the cases and tasks Uber has hired QE for since we were admitted into the preferred counsel program have been at rates that are not financially viable for our firm. As we have discussed many times, if QE was also getting the cases with larger amounts in dispute involving more significant budgets, the smaller tasks on smaller cases would be part of the overall relationship. But we have not gotten any of the larger disputes for Uber under the preferred counsel program.

We will follow up with each of you individually to enter withdrawals in the cases where we have entered appearances (Ehret, Goncharov, Cordas, Checker/Memphis) and help to transition the other cases where we have not yet entered appearances (Braintree, Boston City Litigation). I believe this is an opportune time for Uber to replace QE in all of the cases and matters because nothing is at a critical stage and many of these engagements have just begun. There are no imminent deadlines that would pose an issue for Uber vis-à-vis replacing QE.

I will continue to be a loyal Uber customer and hope to maintain the friendships with each of you in the future.

**Stephen Swedlow**
*Managing Partner – Chicago*
Quinn Emanuel Urquhart & Sullivan, LLP
500 West Madison Street, Suite 2450
Chicago, IL 60661
312-705-7488  Direct
stephenswedlow@quinnemanuel.com