quinn emanuel trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

June 20, 2017

**VIA ECF**

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:     *Waymo LLC v. Uber Technologies, Inc., et al*., N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Waymo LLC ("Waymo") submits the attached reply brief in support of its motion to compel (Dkt. 637).

Respectfully Submitted,

/s *Charles K. Verhoeven*

Counsel for Plaintiff Waymo LLC

I.      **No Common Interest Privilege Existed Between Uber And Ottomotto Until After The Ottomotto Acquisition Closed On August 23, 2016**

Defendants' Opposition affirmatively ignores the very provision in the Put Call Agreement that necessitates finding that Uber and Ottomotto did not hold a common legal interest with respect to the stolen documents prior to the closing of the acquisition on August 23, 2016. That is, even if one of the parties triggered the acquisition,[1] a condition precedent to closing was that Waymo had not threatened to bring trade secret misappropriation claims based on allegations that, if true, "would reasonably result in a judgment" that "substantially restricts" Uber from using Ottomotto's intellectual property, that "prohibits" Ottomotto from hiring Levandowski, or that "enforces a claim of damages in excess of $100,000,000." (Dkt. 515-3 § 6.12 ("No Company Material Adverse Effect") (referring to Dkt. 515-4, A-10, A-14, O for various defined terms).) In other words, Uber specifically and expressly held liability related to the stolen documents at bay until the last possible moment – *i.e.*, closing.

Rather than address this, Uber rehashes the very same case law that was addressed by the parties in the context of Waymo's motion to compel the due diligence materials. (Opp. 1-2.) But that law is unavailing now for the same reason it was unavailing then. There is <u>not</u>, as Defendants contend (*id.* 1), a default, blanket rule that "[t]he common interest doctrine protects the sharing of privileged information between parties to a potential acquisition, merger, or purchase well before the potential transaction is finalized." Instead, one has to look to the relevant interests with respect to the relevant issue. An "exclusive option to purchase [a] patent" (*id.* 1) may well create a common interest in defending the validity of the patent. But an option to buy a company, in which the purchaser explicitly reserves the right to back out if certain issues arise, cannot create a common interest <u>in those certain issues</u>. That is the situation we have here.

Moreover, Defendants' new argument that there is an April 11 cutoff is inconsistent with the Court's order regarding the due diligence materials. There, the Court provided extensive reasoning as to why there was no common interest between Uber and Ottomotto in the due diligence investigation and ordered the production of materials related to that investigation regardless of date (*i.e.*, including the final report and 35 other documents dated August 2 and 5, 2016). The due diligence report was the product of a project that was meticulously described in the February 22 Term Sheet, at a time when this Court held there was no common interest. Obviously, the documents concerning that investigation also are not privileged, regardless of date.[2] A waiver cannot be taken back. *See In re Pac. Pictures*, 679 F.3d 1121, 1125 (9th Cir. 2012). In any event, the Put Call Agreement, on which Defendants rely for the first time now, does not turn a non-privileged project retroactively into one protected by a purported common interest.

No common interest should be found until Uber actually acquired Ottomotto on August 23.

---

[1] Defendants insist that Waymo is "wrong on the facts" because the "Put Call Agreement allowed either party to obligate the other to close the transaction." (Opp. 2.) But that does not negate that neither party was obligated to trigger the acquisition in the first place (Mot. 1).

[2] Defendants changed the "same document description" (Opp. 5) used for nearly every logged document from "regarding due diligence for potential acquisition" to "regarding acquisition" after they were compelled to disclose Stroz's identity. (*Compare* Dkt. 636-9 *with* Dkt. 636-5.)

**II.   Levandowski Has Never Shared A Common Legal Interest With Anyone Regarding The Stolen Files**

Tellingly, Defendants say very little with respect to any purported common interest with Levandowski.  (Opp. 3.)  They simply recite the uncontroversial principle that parties may have common legal interests with respect to some issues while simultaneously having divergent legal interests with respect to others.  But this just proves Waymo's point.  Here, Defendants are seeking to protect communications regarding the stolen files.[3]  And with respect to that "single issue" (*id.* 5), even Defendants do not claim a common interest with Levandowski.  (*Id.* 3 (referring only to an unspecified general interest in potential litigation by Google).)

Indeed, Defendants' own Opposition confirms that there was never a common interest between Defendants and Levandowski with respect to the stolen files.  In an effort to avoid the consequences of the crime-fraud exception, Defendants argue that "Uber could not control Stroz or MoFo" (Uber's own agents) "with respect to [the downloaded materials] given Levandowski's directive not to disclose them to Uber absent his consent."  (*Id.* 4.)  Defendants cannot have it both ways:  they cannot say they were helpless to do anything about the stolen files because Levandowski insisted on looking out for himself during the due diligence process while simultaneously asserting a "common interest" with respect to the same subject matter.

In a footnote, Defendants observe that Uber's indemnification obligation does not cease where there is a conflict of interest between Uber and Levandowski (Opp. 3 n.6) – in other words, it is Levandowski who can opt out of indemnification where a conflict of interest arises (Dkt. 515-5 § 2.2(b)).  That is true.  But it is also entirely besides the point.  The fact is that the indemnification agreement expressly contemplates indemnification giving way when there is a conflict of interest between Uber and Levandowski.  This precludes Defendants from doing what they have done here: pointing to the indemnification agreement as an artificial, all-purpose cloak of secrecy without regard to whether the relevant legal interests on a specific issue diverge.

No common interest existed between Levandowski and anyone else regarding the stolen files.

**III.  Otto Trucking Has Never Shared A Common Legal Interest With Anyone Regarding The Stolen Files**

Despite Defendants' assertion to the contrary (Opp. 3), Waymo has consistently pointed out that no justification has ever been offered for a common interest between Otto Trucking and anyone with respect to the stolen files (Dkt. 444-3, 5).  Otto Trucking has pointed to no evidence to support its self-serving attorney argument that the parties "left open the possibility of an Otto Trucking acquisition."  (Dkt. 654, 1.)  And the characterization of the indemnification agreement that Otto Trucking now says is "inadequate" and "wrong" (*id.* 2) – *i.e.*, that "Uber agreed to indemnify certain employees under certain circumstances" – is verbatim the characterization

---

[3] Defendants fight this characterization of the logged documents.  (Opp. 1, 4.)  But Defendants acknowledge that the logs at issue were served in response to an order requiring production of the downloaded materials and all subsequent documents that have forwarded, used, or referred to any part of those downloaded materials.  (*Id.* 1.)  Defendants concede that all of the logged documents refer to Google information.  (*Id.*)  And Defendants claim that the "same document descriptions" can be used for every logged document because "[t]he privilege logs pertain to a single issue."  (*Id.* 5.)  That single issue is the stolen files.

provided by Defendants in a sworn declaration to support their assertion of a purported common interest (while refusing to produce the indemnification agreement itself) (Dkt. 370 ¶ 5).

Regardless, Otto Trucking notably stops short of contending that it is actually being indemnified by Uber in this case. Although Otto Trucking was originally represented by MoFo, like Levandowski, it quickly retained separate counsel. And Otto Trucking has now made clear that Uber is not controlling its defense (as would be required under §2.2(b) of the indemnification agreement), claiming that it cannot act in this case without the "approval" of <u>Mr. Levandowski</u>.[4] (Baily Ex. 1.) Again, an indemnification agreement cannot create an artificial common interest where one does not actually lie. Uber and Otto Trucking (as controlled by Mr. Levandowski) do not have a common interest with respect to the stolen files.

### IV.     **The Court's Rulings On Waiver And Substantial Need Should Be Extended**

Other than arguing that the prior ruling on work product waiver was wrong (Opp. 3), Defendants cite no reason that the ruling should not be extended to be consistent with the analysis above (regarding the absence of common interests). Defendants do argue that Waymo does not have a substantial need for fact work product related to interviews of witnesses other than Levandowski, because such interviews were not "contemporaneous" with the stealing of the files. (Opp. 3 n.7.) But any interviews conducted in March-May 2016 are "near-contemporaneous" with that event (Mot. 3 (citing cases)) and may be "contemporaneous" with other Bad Acts that are currently unknown to Waymo. At the very least, Defendants should identify interview memos on their logs (the deficiencies in the logs make it impossible for Waymo to do so) for *in camera* review.

### V.     **The Crime-Fraud Exception Applies**

Defendants contend that "Waymo has not met its exacting burden" with respect to establishing the crime-fraud exception. But, as correctly stated in Waymo's opening brief (at 5), all Waymo needs to show is a "<u>reasonable cause to believe</u>" that attorney services were "utilized . . . in furtherance of" a crime, *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996)[5] – here, the unlawful concealing and withholding of property stolen from Waymo in violation of Section 496(a) of the California Penal Code. Waymo has made that showing in spades.[6]

Uber's counsel is left arguing among themselves regarding "receipt" (Opp. 4) of the stolen files. MoFo contends it never "possessed any downloaded materials" (*id.*), but Boies says otherwise:

> MoFo does not have any downloaded materials (or any copies, excerpts or summaries thereof), **except** to the extent that any such material may appear: (1) excerpted in or as an exhibit to the Stroz Report, which is privileged; and (2) in certain materials AL and other persons provided to Stroz to which MoFo was given limited access ..."

---

[4] Otto Trucking cannot return stolen files unless Mr. Levandowski agrees, for example. (Ex. 1.)

[5] The burden is not any more "exacting" (Opp. 4), because the party seeking to apply the exception does not have the benefit of access to the underlying materials.

[6] Defendants fault Waymo for doing so, claiming that Waymo's showing is not permitted because Waymo argued crime-fraud as an alternative (that the Court did not reach) in its prior motion to compel. (Opp. 4 n.8.) That assertion is silly, especially when Defendants and Levandowski have spent at least 36 pages explicitly rearguing issues <u>already decided</u> in the order resolving that very motion. (*E.g.*, Dkts. 552, 580, 581, 582-4, 610, 616, 617, 652.)

(Dkt. 634-7 (emphasis added).)  Regardless, "receipt" of the stolen files is not required; it is enough that Defendants' relentless assertions of privilege have been in furtherance of the crime of "aid[ing] in . . . withholding any property from the owner."  Cal. Penal Code § 496(a).

If the Court finds the current record insufficient to invoke the crime-fraud exception, it should at least (i) compel production of all otherwise privileged communications regarding the location of the stolen files for the reasons Waymo stated (Mot. 5 n.9) and Defendants do not contest; (ii) review the remainder of the materials *in camera*, as Defendants suggest (Opp. 5 n.9); and (iii) authorize the depositions of MoFo and OMM.[7]

## VI.   A Waiver Ruling Is Appropriate In Light Of The Unreliability Of The Logs

Defendants' responses to Waymo's concerns regarding their privilege logs only confirm that the logs are unreliable and that the asserted privileges should be deemed waived.

First, Defendants fault Waymo for citing "only one alleged 'inaccuracy,' pertaining to certain employee attestations."  (Opp. 5.)  But the employee attestations are the only documents that Defendants have produced from their privilege logs.  That is, Defendants produced exactly one set of documents from their logs, and with respect to that one set, Waymo found that descriptions did not match documents at all.  (*Compare* Dkt. 636-11 (Entry 1466) *with* Dkt. 637-15 (UBER17202).)  Next, Defendants concede that non-privileged information cannot be converted into privileged information by attaching it to a privileged communication.  (Opp. 6 n.13.)  But that is exactly what Defendants are doing here, by using a purportedly privileged cover email to log non-privileged attachments rather than producing (or separately logging) those attachments.  Defendants then advance a self-serving argument that the "use of 'and/or' does not impair its privilege assertions."  (*Id.* 6.)  But that is belied by their admission that three of the individuals in the "and/or" list "were not parties to the joint defense agreement" (*id.*) – *i.e.*, the identity of the specific individual matters with respect to privilege.  Defendants next essentially tell Waymo to figure out the individual authors of logged documents for which they list entire law firms.  (*Id.*)  But that is Defendants' burden, and Waymo does not have access to any metadata that should have informed such a task.  Finally, Defendants affirmatively contend that they asserted the "CI" privilege even where it does not apply – that is, regardless whether "a document or communication [was] shared with someone who would otherwise break the privilege" (*id.* 6 n.15), such that not all documents labeled "CI" would be produced even if there were a ruling that no common interest existed.

The sum of these problems – identified by Waymo without the thousands of underlying documents and in some instances in less than three hours between Defendants' service of "coded" logs and the deadline for Waymo's motion – proves that the logs cannot be relied on.  At this point, a waiver finding is appropriate.

---

[7] That MoFo lawyers are percipient witnesses and also Uber's trial counsel is a circumstance created by MoFo/Uber, not Waymo.  Depositions of trial counsel are permitted in just such a circumstance.  *Pamida v. E.S. Originals*, 281 F.3d 726, 731 (8th Cir. 2002); *ATS v. Champion Fiberglass*, No. 13-CV-02403-SI, 2015 WL 3561611, *6 (N.D. Cal. June 8, 2015) (applying *Pamida*).  Indeed, "[t]o permit a fact witness to evade a deposition simply because he acted as an attorney" in the context of an underlying event "would invite parties to retain the same counsel" in order to hide "information that would otherwise be discoverable."  *ATS*, 2015 WL at *6.