QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, <br><br> Plaintiff, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, <br><br> Defendants. | CASE NO. 3:17-cv-00939 <br><br> **PLAINTIFF WAYMO LLC'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING THE INDEMNIFICATION AGREEMENT** <br><br> **[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]** |

## I. INTRODUCTION

Defendants' motion *in limine* No. 7 (Dkt. 921 ("MIL 7")) seeks to preclude all documents or communications regarding Uber's agreement to indemnify Mr. Levandowski and his companies for his theft of Waymo's files and misappropriation of the trade secrets contained therein. However, this indemnification evidence is highly relevant to show what Uber knew about Mr. Levandowski's theft and when Uber knew about it, which the Court held is "one of the key issues in the case." The indemnification evidence is also relevant to prove issues of bias and agency. Neither Fed. R. Evid. 402, 403, nor 411 bars this highly relevant evidence.

## II. THE INDEMNIFICATION EVIDENCE IS HIGHLY RELEVANT TO THE "KEY ISSUE" OF "WHAT UBER KNEW AND WHEN IT KNEW IT"

As the Court has held, "one of the key issues in the case" is "what Uber knew and when they knew it," with "it" referring to Mr. Levandowski's theft of Waymo's files and misappropriation of the trade secrets contained therein. (6.14.17 Hearing Tr. at 40:10-11.) There is compelling evidence that Uber knew about this malfeasance quite early on, as evidenced by the negotiations and consummated agreement for Uber to indemnify Mr. Levandowski *for these specific acts*.

For example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

By February 5, 2016, the parties were specifically discussing indemnity for "Bad Acts," including "downloading of files of [Google]." (Dkt. 855-8 at 9.) These indemnification discussions ultimately resulted in an Indemnification Agreement of April 11, 2016, by which Uber agreed to indemnify Mr. Levandowski for "Bad Acts" that expressly included misappropriation of Waymo's/Google's trade secrets. (Dkt. 790-2 at 2.)

In circumstances like these — where indemnification evidence is relevant to show a party's knowledge of potential wrongdoing — courts have regularly held that such evidence is admissible. *See, e.g., Procaps S.A. v. Patheon Inc.*, No. 1:12-CV-24356-JG, 2015 WL 11090665, at *6 (S.D. Fla. Oct. 19, 2015) ("the indemnity agreements are relevant to show Patheon's

decision-making process leading up to, and after, the Banner acquisition.  Although Patheon alleges it did not consider the Banner acquisition to be unlawful or harmful to Procaps, Procaps contends that Patheon and its owners were well aware of the anticompetitive consequences of that acquisition, but proceeded anyway because the Banner deal was too lucrative to pass up."); *see also id.* at *5 ("Indemnification agreements are admissible when relevant to prove a party's knowledge"); *Galaxy Computer Servs., Inc. v. Baker*, 325 B.R. 544, 551 (E.D. Va. 2005) ("the indemnification agreement is probative evidence that Sullivan may have intended to engage in what he believed to be wrongful conduct or felt that he had already engaged in wrongful conduct with respect to Galaxy."); *Sanford v. Ektelon/Prince Sports Grp., Inc.*, No. 8:97CV368, 1999 WL 33544436, at *1-2 (D. Neb. Nov. 5, 1999) (admitting evidence of indemnification agreement and crediting argument "that the Indemnity Agreement is relevant to what the parties knew about whether the Astrospec (Prism) would meet the applicable safety standards for racquet sports.").

Notably, the indemnification evidence in this case does not relate to a broad or generic indemnification that just coincidentally covers the document theft at issue in this case.  Rather, the indemnification evidence shows that Uber *specifically* had this document theft in mind when negotiating over its indemnification of Mr. Levandowski and his companies.  (Dkt. 855-8 at 9 (listing "downloading of files" as an act potentially subject to indemnity).)  Such specificity renders the indemnification evidence particularly relevant.  As the *Galaxy* court explained: "Unlike a defendant in a typical case involving a liability insurance policy, where the insurer is not a party to the lawsuit, the party indemnifying Sullivan, CSI, is itself a Defendant in this case.  The relationship and understanding between the Defendants with regard to liability for the acts that comprise this lawsuit are especially probative.  Baker and Sullivan are not alleged to be Defendants who *happen to be* insured against the acts at issue in the case.  Rather, Baker and Sullivan are alleged to have conspired with the entity that has agreed to indemnify them." *Galaxy*, 325 B.R. at 552 (emphasis in original).  Here too, the indemnification evidence shows that Uber and Mr. Levandowski conspired to effectuate the specific wrongful conduct accused in this case.  Thus, as in *Galaxy*, the indemnification evidence is "especially probative."

Secondarily, the indemnification evidence is also relevant to help prove issues of bias and agency. For example, if Uber tries to minimize the wrongdoing on Mr. Levandowski, it would be relevant to show that Uber has every motive to minimize this wrongdoing since it is contractually on the hook for this wrongdoing. Similarly, the fact that Uber agreed to indemnify Mr. Levandowski and his companies is relevant to show whether these entities were acting as agents for Uber when they performed their wrongful acts.

### III. THE HIGH RELEVANCE OF THE INDEMNIFICATION EVIDENCE IS NOT SUBSTANTIALLY OUTWEIGHED BY ANY RISK OF UNFAIR PREJUDICE

Defendants argue that the indemnification evidence should be excluded on Rule 403 grounds, reasoning that "its only purpose is to unfairly suggest to the jury that Uber is liable for trade secret misappropriation simply because it entered into the Indemnification Agreement." (MIL 7 at 3:19-20.) As discussed above, however, Uber's indemnification of Mr. Levandowski is highly relevant to prove that Uber knew about and ratified Mr. Levandowski's document theft and trade secret misappropriation. This does not constitute unfair prejudice; it instead constitutes compelling evidence on the "key issue[]" of "what Uber knew and when they knew it." (6.14.17 Hearing Tr. at 40:10-11.)

Defendants also argue that it would be unfairly prejudicial for Waymo to "rely[] on the February 5, 2016 email [discussed above] to argue that Uber knew or should have known of Levandowski's improper downloading … ." (MIL 7 at 4:1-2.) Once again, Defendants are confusing probative evidence with unfair prejudice. The February 5 email is highly probative evidence that Uber knew about the improper downloading, and the Court has already explained that Uber's knowledge is a key issue in this case. The fact that Defendants do not *like* this evidence — or the Uber knowledge that this evidence proves — does not create any unfair prejudice.

Defendants next argue that the indemnification evidence could create jury confusion because "Levandowski is not a defendant." (*Id.* at 4:4-5.) This makes little sense. While Mr. Levandowski is not a defendant, his malfeasance and his relationship to Defendants are obviously central issues in this case. The jury will hear copious evidence about Mr. Levandowski regardless

of the indemnification evidence. It is thus meritless for Defendants to suggest that the indemnification evidence would inject the issue of Mr. Levandowski into this case. Similarly, there is no merit to Defendants' argument that "introducing evidence of Uber's indemnification of Otto Trucking, a co-defendant, would also confuse the issues for the jury." (MIL 7 4:10-11.) Just as the jury will become well-acquainted with Mr. Levandowski over the course of trial, the jury will become well-acquainted with Otto Trucking. Other than conclusory attorney argument, Defendants never explain how Uber's indemnification of Otto Trucking would confuse the jury.

Notably, the cases cited above — *Galaxy*, *Procaps*, and *Sanford* — all rebuffed Rule 403 challenges to indemnification evidence when such evidence was relevant to a party's knowledge of wrongdoing. *Galaxy*, 325 B.R. at 551-52; *Procaps*, 2015 WL 11090665 at *6; *Sanford*, 1999 WL 33544436 at *1-2. The same result should hold here. Defendants have not articulated any reason why the relevance of the indemnification evidence is outweighed (much less ***substantially*** outweighed) by any legitimate prejudice concerns.

### IV. THE INDEMNIFICATION EVIDENCE IS NOT BARRED BY RULE 411

Equally meritless is Defendants' argument that the indemnification evidence is barred by Fed. R. Evid. 411. (MIL 7 at 1-2.) Indeed, the plain text of Rule 411 defeats Defendants' argument. This Rule states: "Evidence that ***a person was or was not insured*** against liability is not admissible to prove whether ***the person*** acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." Fed. R. Evid. 411 (emphasis added). "The person" in Rule 411 refers back to "a person [who] was or was not insured." Thus, assuming for the sake of argument that indemnification qualifies as "insurance" under Rule 411, Rule 411 would bar introduction of the Indemnification Agreement for the purpose of proving that the "insured" — *e.g.*, Mr. Levandowski — acted negligently or wrongly. By contrast, as explained above, Waymo will use the Indemnification Agreement and related evidence to show the knowledge of the "***insurer***" — Uber. By its plain terms, Rule 411 does not prohibit this in any way. It imposes no restrictions on use of liability insurance against the ***insurer*** — only against the ***insured***.

Moreover, even when an indemnification agreement is offered as evidence against an indemnitee (*i.e.* the "insured"), it is admissible to prove that party's knowledge. *Procaps*, 2015 WL 11090665 at *6; *Galaxy*, 325 B.R. at 551; *Sanford*, 1999 WL 33544436 at *1–2. Here, as explained above, the indemnification evidence is offered to prove Uber's knowledge of Mr. Levandowski's malfeasance. So even if Uber were the "insured" (as opposed to the "insurer"), this is a permissible use of indemnification evidence under Rule 411.

Finally, Rule 411 expressly states that it does not bar the introduction of indemnification evidence to show "bias" or "agency." As explained in Section II, *supra*, the indemnification evidence here can be used to show Uber's bias and to show that Mr. Levandowski and his companies acted as agents for Uber. For this reason as well, the indemnification evidence is not barred by Rule 411.

## V. THE FEBRUARY 5 EMAIL (AND OTHER EVIDENCE OF INDEMNIFICATION NEGOTIATIONS) IS NOT BARRED BY THE PAROL EVIDENCE RULE

Defendants finally argue that, even if the Indemnification Agreement is admitted into evidence, the Court should bar all evidence about the negotiation of that agreement, including the February 5 email discussed above. (MIL 7 at 5-6.) Specifically, Defendants argue that this evidence should be barred under the parol evidence rule. (*Id.*) But this argument is meritless as well. As Defendants admit, "[t]he parol evidence rule 'generally prohibits the introduction of any extrinsic evidence, whether oral or written, ***to vary, alter, or add to the terms of an integrated written agreement***.'" (*Id.* at 5:6-7) (emphasis added). By contrast, Waymo is not offering the February 5 email (or any other negotiation-related evidence) "to vary, alter, or add to the terms of an integrated written agreement." In other words, Waymo is not offering this evidence to vary, alter, or add to the terms of the Indemnification Agreement. Instead, Waymo is offering this evidence as free-standing, independent evidence of "what Uber knew and when they knew it." By way of illustration, the negotiation evidence would be probative of Uber's knowledge even if no final Indemnification Agreement was ever struck. Because the negotiation evidence is not being used to vary, alter, or add to the terms of any final written agreement, the parol evidence rule is simply beside the point.

## VI. CONCLUSION

For the foregoing reasons, Waymo respectfully requests that Defendants' motion *in limine* No. 7 be denied.

DATED: July 21, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC