QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa J. Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:   (415) 875-6600
Facsimile:   (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>            Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S SUR-REPLY TO UBER'S MOTION IN LIMINE REGARDING ITS LEGAL COUNSEL**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

Plaintiff Waymo LLC ("Waymo") respectfully submits this sur-reply in opposition to Uber's motion *in limine* seeking to exclude any reference to Morrison & Foerster's ("MoFo") role in Uber's acquisition of Ottomotto, and in support of Waymo's motion to disqualify MoFo from acting as trial counsel for Uber.

Uber's opening motion was twelve lines with no substantive argument or evidence. Its Reply is six pages and thus obviously, and unfairly, contains new arguments and evidence beyond the briefing on MoFo's disqualification subsequently ordered by the Court. Despite this dramatic increase in length, Uber's Reply remains notable in what is lacking. At no point in Uber's Reply does it address Waymo's argument that Uber would suffer no prejudice stemming from either reference to MoFo at trial or the calling of MoFo witnesses to testify. Nor does Uber rebut that MoFo attorneys appear all over critical, relevant documents to this case, such as those relating to the Otto acquisition and its related due diligence, such that the jury will already know MoFo had a role in the facts underlying the case. Moreover, Uber offers no contention, let alone evidence, that Uber in fact gave informed, written consent to MoFo to proceed as trial counsel in this action, which is its sole basis for relief from the advocate-witness rule. And Uber continues to make no distinction between MoFo as a firm and the MoFo partners Waymo intends to call at trial.

Uber further misrepresents Waymo's argument as "gamesmanship." Not so. Fundamental fairness dictates that, even if the Court finds that Uber would be prejudiced in any fashion by the mention of MoFo's role in the acquisition of Otto or the calling of MoFo witnesses to testify at trial, this finding should not prejudice Waymo from being able to fully and fairly present its case. After all, it is ***Uber*** that decided to hire MoFo in this case despite the fact that attorneys there, including those who have appeared for Uber in this case, have relevant knowledge as percipient witnesses. Rather, the appropriate remedy is disqualification of MoFo as trial counsel. While the record supports, at a minimum, the disqualification of MoFo partners that Waymo intends to call as witnesses from participating at trial, the Court should exclude MoFo as a firm from participating as trial counsel.

## I. MOFO WITNESSES POSSESS INFORMATION RELEVANT TO MULTIPLE ASPECTS OF WAYMO'S TRADE SECRET CLAIMS

As set forth in Waymo's Opposition to Uber's motion, possession by MoFo of stolen

documents, the circumstances under which it acquired those documents, and the treatment of those documents after acquisition by MoFo are all directly relevant to Waymo's trade secret claims. (Dkt. 894 at 1-3.) Specifically, MoFo's involvement in the due diligence relating to the acquisition of Ottomotto, including the due diligence that resulted in the report created by Stroz Friedberg and ordered to be produced to Waymo, means that MoFo has information relevant to "what Uber knew and when they knew it," which the Court stated is "one of the key issues in the case." (6/7/17 Hearing Tr. at 40:10-11.)

Uber's only response is the repeated, conclusory assertion that there is "no evidence" that stolen materials made their way to MoFo. This is unsupported and incorrect. MoFo's very involvement in the diligence performed by Stroz, and its acquisition of materials related to that diligence (Dkt. 715 at 2-3; Dkt. 885 at 2), is direct evidence that either stolen materials or descriptions of those materials are or were in MoFo's possession. The claim that MoFo only obtained certain materials related to Stroz's investigation after the filing of the litigation is irrelevant even if true. MoFo's access to and possession of those materials at any point in time is relevant to the actual theft in the first instance. And the issue is not whether those documents are *Uber's*, the issue is that those Stroz materials are or describe *stolen Waymo* materials.

By focusing solely on MoFo's possession of the stolen documents, Uber also inappropriately narrows Waymo's demonstration of relevance as it relates to witnesses from MoFo. While the existence of any stolen materials in MoFo's possession is obviously relevant to Waymo's claims—and could be testified to by MoFo witnesses exclusively—the absence of those documents in MoFo's possession does not alter MoFo's knowledge as to either the theft of the materials in the first instance or what Uber knew. Given the claimed wall separating Uber and Stroz with respect to the stolen materials, MoFo has information related to what was passed to Stroz that may not be in Uber's possession. And despite Uber's continued reliance on Magistrate Judge Corley's ruling regarding the production of certain documents, MoFo need not have been retained for the purpose of receiving stolen property, or even involved in wrongdoing, in order to have information relevant to Uber's misappropriation of Waymo's trade secrets. The mere fact that MoFo—and certain MoFo partners specifically—directed the due diligence of Uber's acquisition means that they have

information relevant to Waymo's claim that Uber was aware of and acquiesced to Mr. Levandowski's theft and use of Waymo trade secrets. (Dkt. 893.)

Indeed, despite arguing that MoFo attorneys' involvement in the due diligence report is irrelevant, as recently as two days ago Uber has sought trial stipulations on facts regarding **attorney** involvement in the case. (*See* Ex. 1 ("We would like to discuss trial stipulations that would eliminate the need for certain witnesses. For example, there is an issue that you have raised in an in limine motion regarding Uber's search for downloaded materials.")) Such a proposal is clear indication that Uber intends to introduce evidence relating to their—and by definition, MoFo's—search for stolen materials and diligence related to the transaction. This is an admission that MoFo's involvement in the due diligence—and related testimony—is relevant.

Uber's claim that other witnesses could testify to facts surrounding the due diligence or Uber's knowledge is meritless. Initially, that Waymo may elicit testimony from Uber witnesses on similar topics does not obviate the need for testimony from MoFo, particularly where witness credibility will be key. Nor can Uber dictate how and through whom Waymo presents its case or shield entire lines of inquiry from the jury through its choice of counsel or by opting not to present certain witnesses. Additionally, as set forth in Waymo's Opposition to Uber's motion, MoFo and its attorneys are deeply embedded in the evidentiary record — they appear all over relevant, admissible documents. (Dkt. 894 at 2.) Uber makes the conclusory assertion that MoFo's appearance throughout these documents is "speculation." (Dkt. 941 at 2.) But Uber does not address the practical fact that MoFo's involvement throughout the diligence and acquisition means that the record will be replete with references to MoFo.

Just two examples, both mentioned in Waymo's Opposition, suffice to make this point. First, the back-dated, six page Stroz Engagement Letter mentions MoFo and/or MoFo attorneys no fewer than fifteen times. (Dkt. 882-2.) Second, many hundreds of entries on Uber's privilege logs that have been designated by Uber to "Produce In-Full" if the Federal Circuit affirms the Court's Order on the Due Diligence Report (Dkt. 685) are communications to and from MoFo attorneys. Because these documents were logged in response to the Court's March 16 Order — and therefore necessarily refer to downloaded materials — they will be, if the Federal Circuit affirms, highly relevant evidence

of Uber's knowledge of stolen Waymo files (and even if the Federal Circuit does not affirm, the privilege log entries themselves are probative evidence).  It would be prejudicial to Waymo to attempt to wash MoFo's name from these documents through heavy redaction, especially since it was Uber's choice to hire as trial counsel the same lawyers who handled the due diligence and were mired in the underlying relevant facts of this case.  (*See* Dkt. 894 at 2.)

## II. ON THIS RECORD, THE COURT SHOULD DISQUALIFY MOFO AS TRIAL COUNSEL

As an initial matter, Waymo notes that Uber makes no effort to claim that it would be prejudiced by MoFo's disqualification as trial counsel.  Uber does not dispute that it has retained able, alternative trial counsel in Boies Schiller Flexner LLP.  This is likely why Uber does not contend that it, or the schedule set by this Court, would be impacted in any manner whatsoever should either MoFo as a whole or specific MoFo partners be forced to withdraw from this litigation.  So Uber should not be heard to argue that an order disqualifying MoFo or its partners would impact its ability to defend itself in any manner.

Instead, Uber claims that Waymo failed to make the requisite showing under *Smith, Smith & Kring v. Super. Ct. (Oliver)*, 60 Cal. App. 4th 573, 580 (1997) to warrant disqualification.  Not so.  It would greatly harm the "integrity of the judicial process," *Smith,* 60 Cal. App. 4th at 580, if MoFo were allowed to remain as trial counsel and leverage that status to exclude relevant MoFo evidence on the ground that such evidence would be prejudicial due to MoFo's role as both advocate and witness.  But more critically, Uber fails entirely to show it is entitled to the lone claimed exception to the advocate-witness rule.  Despite claiming that client consent may overcome the advocate-witness rule, Uber does not actually state that it has provided such consent as to MoFo.  Absent such consent, neither Uber nor MoFo can avoid the consequences of the advocate-witness rule.

Additionally, even if MoFo had informed, written consent from Uber (which neither Uber nor MoFo have claimed), this Court may nonetheless disqualify MoFo from acting as trial counsel.  Uber's purported distinction of *Calouori v. One World Technologies, Inc.*, 2012 WL 2004173 (C.D. Cal. 2012), does not advance its cause.  Uber does not contest that California courts may reject,

through their inherent power and discretion, client consent as an exception to the advocate-witness rule or that California courts may look to authorities such as the American Bar Association Model Rules, which do not contain a carve-out for client consent.

Given that Uber makes no attempt to draw any distinction between those MoFo partners that participated in the diligence, those partners that may be called as witnesses, and the MoFo firm as a whole, Uber appears to concede that any disqualification based on the advocate-witness rule applies equally to the entirety of MoFo. At a minimum, Uber does not contest that the Court has the authority to do so. As set forth in Waymo's Opposition, MoFo's widespread involvement in the due diligence investigation and Otto acquisition warrants disqualification of the firm as a whole. (Dkt. 894 at 5.) Thus, any prejudice or jury confusion resulting from MoFo's dual role should apply equally to both those MoFo partners called as witnesses and the MoFo firm.

Finally, Uber's allegations of gamesmanship are unfounded. Waymo is not seeking to call witnesses for the purpose of disqualifying MoFo; Waymo is seeking to ensure that it be afforded the opportunity to fairly present its case and prevent Uber from obstructing that presentation by using percipient witnesses as trial counsel. To the extent that the Court is inclined to limit Waymo from presenting evidence either from MoFo or relating to MoFo's role in the acquisition based in any way on MoFo's current representation of Uber, the answer is disqualification of MoFo, not the unfair limitation of Waymo's trial preparation. And to the extent Waymo is permitted to call MoFo partners as witnesses at trial, those partners—at a minimum—should be excluded from participating in the trial as advocates. Any other alternative severely prejudices Waymo.

## III.    CONCLUSION

For these reasons, Waymo respectfully requests that the Court deny Uber's motion *in limine*. To the extent the Court determines that testimony from or relating to MoFo should be limited in any way, due to the dual-role MoFo has played, the appropriate remedy is disqualification, not prejudice to Waymo's case.

DATED: July 21, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC