QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>            Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 12 TO EXCLUDE EVIDENCE OF TRADE SECRET MISAPPROPRIATION BASED ON ANYTHING OTHER THAN THE ALLEGED DOWNLOADING OF FILES BY ANTHONY LEVANDOWSKI** |

## I. INTRODUCTION

Defendants Uber Technologies, Inc. and Ottomotto LLC's ("Uber") motion *in limine* No. 12 (Dkt. 918 ("MIL 12")) seek to preclude direct evidence of Uber's misappropriation of Waymo's trade secrets, plain and simple. Uber's argument is that because **other** of its LIDAR engineers have testified to using Waymo's trade secrets, and Waymo did not identify all of them by name in its complaint, Waymo is prevented from presenting this evidence at trial. Waymo's claims are not so limited and Uber's misinterpretation of the Federal Rules would permit trade secret defendants to easily wriggle out of meritorious claims by simply shifting the blame to one of its other employees. That is not the law. Waymo provided notice of its claims of trade secret misappropriation against Uber pursuant to Federal Rule of Civil Procedure Rule 8. It identified its trade secrets at the beginning of the litigation. Waymo is entitled to pursue the full scope of those claims at trial under basic principles of notice pleading.

The evidence uncovered to date has shown that Uber's custom LiDAR devices use Waymo's trade secrets. In a number of cases, Uber does not even dispute that certain trade secrets used in Uber's Fuji LIDAR and were created based on Waymo's confidential trade secret information. Uber's refrain that it "never received the files Levandowski allegedly downloaded . . . never wanted those files, never possessed those files, and never used those files" is inconsistent with the record. Levandowski was the head of Uber's self-driving program. Dkt. 433 at 4. To admit that Levandowski had the files (as Uber has never disputed) but to argue that Uber "never possessed" those files is a non-sequitur. That Levandowski may have been trying to hide his misconduct concerning the 14,000 files by not uploading them to Uber's servers is of no moment. As the Court previously found, "Uber knowingly left Levandowski free to keep that treasure trove of files as handy as he wished." Dkt. 433 at 8. Uber's Court-ordered accountings served to date (which Uber continues to update despite being ordered to provide them weeks ago) make this point well. They reveal hundreds upon hundreds communications between Levandowski and other Uber engineers related to LiDAR, including related to the trade secrets that are the subject of Waymo's misappropriation claims. Uber's MIL 12 would prohibit Waymo from presenting evidence that these employees, fresh off of discussions with Levandowski, were the culprits who

ultimately implemented Waymo's trade secrets into Uber's LiDAR devices. It similarly would prohibit Waymo from presenting evidence that other former Waymo employees, also in regular contact with Levandowski, have admitted they used confidential information from Waymo's LiDAR designs to design components of Uber's LiDAR devices incorporating Waymo's trade secrets.

All of this is well within Waymo's operative complaint under the relevant notice pleading standard: Uber has improperly acquired and is presently using Waymo's valuable trade secret information. In short, Uber points to nothing in the record that would support its attempt to bar highly relevant and probative evidence of Uber's misappropriation of Waymo's valuable trade secret information. Uber's MIL 12 should be denied.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is *678 entitled to relief.'"). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Twombly*, 550 U.S. at 556–57.

To state a claim for misappropriation of trade secrets "a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Fortinet Inc. v. FireEye Inc.*, No. 5:13-CV-02496-EJD, 2014 WL 4955087, at *7 (N.D. Cal. Sept. 30, 2014) (finding that the plaintiff sufficiently alleged its claims of trade secret misappropriation); *see also DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1146 (N.D. Cal. 2010) ("In California, a trade secret misappropriation claim has two primary elements: (1) the existence of a trade secret, and (2) misappropriation of the trade secret. DocMagic's allegations are sufficient to support each of those elements.") (citation omitted); *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1237 (C.D. Cal. 2014) (finding that the plaintiff's trade secret misappropriation allegations "readily put Defendants on notice" of the

1 trade secret claims asserted and "sufficiently established that Defendants misappropriated these trade secrets").

### III. UBER'S ATTEMPT TO EXCLUDE EVIDENCE OF ITS MISAPPROPRIATION AS OUTSIDE WAYMO'S COMPLAINT CONTRADICTS BASIC PRINCIPLES OF NOTICE PLEADING

Uber's assertion that evidence and argument of Uber's use of Waymo's trade secrets based on other former Waymo employees "bringing trade secrets to Uber (or using them at Uber)" should be excluded "because Waymo did not plead such claims in its First Amended Complaint" relies upon a fundamental misunderstanding of the Federal Rules of Civil Procedure. (MIL 12 at 4.)

#### A. Waymo's Complaint Provided Proper Notice Of Its Trade Secret Misappropriation Against Uber

Waymo articulated a claim for trade secret misappropriation by Uber related to its driverless car technology, and in particular, related to its LIDAR technology. Its complaint provided notice of its claims and went well beyond what is required by the Federal Rules. *Twombly*, 550 U.S. at 555. Waymo was not required to prove up the entirety of its claims in its complaint. One "cannot expect the proof of the case to be made through the pleadings, and [] such proof is really not their function. We can expect a general statement distinguishing the case from all others, so that the manner and form of trial and remedy expected are clear, and so that a permanent judgment will result." *Twombly*, 550 US at 575 (quoting Weinstein & Distler, Comments on Procedural Reform: Drafting Pleading Rules, 57 Colum. L.Rev. 518, 520-521 (1957).) Waymo's complaint goes far beyond what the Supreme Court has deemed required to make out a trade secret misappropriation claim, and an interpretation limiting Waymo's claim would be contrary to black letter law.

The allegations in the FAC against Uber (not Levandowski) were sufficient to put Uber on fair notice of the scope of Waymo's trade secret misappropriation claims, and as Uber's lead case recognizes, fair notice is all that is required of the FAC. *See, e.g.*, *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) ("Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"). As recognized in another of Uber's cited cases, "[a] complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to

defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000); *see also McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (stating that a complaint should set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery"). Here, the parties have since equally utilized the discovery process to prove or defend against the trade secret misappropriation claims that Waymo alleged in the FAC.

Even assuming arguendo that notice pleading is a more limited system than the Supreme Court has stated, Uber's restrictive interpretation of Waymo's claims is directly contradicted by the actual allegations in Waymo's complaint, where Waymo asserts trade secret misappropriation claims against Uber that go beyond Levandowski's theft of Waymo's confidential files. The FAC includes allegations that Uber acquired Otto for the "LiDAR system developed in-house at Otto"; Otto continued to misappropriate Waymo's trade secrets after its launch; Uber "stole Waymo's long term investments and property" and "leveraged stolen information" to cut corners on designing its own custom LiDAR; Waymo received evidence "suggesting that Otto and Uber were actually using Waymo's trade secrets" in Uber's custom LiDAR devices; the "Replicated Board" obtained by Waymo reflected Waymo's highly confidential and proprietary current-generation LiDAR technology and trade secrets; Uber represented to Nevada authorities that it was developing an "in-house custom built 64-laser" LiDAR system; and Waymo's technical information, designs, and "know how" related to its LiDAR system constitute trade secrets that were all being used by Uber. (FAC ¶¶ 7, 10, 50-54, 58-59, 61, 67, 75, 80, 83-84.) Waymo also alleges that a number of Levandowski's colleagues left to join Levandowski's new business after he told them he planned to set up a new self-driving vehicle company, and that those individuals downloaded additional Waymo trade secrets on their way out the door.[1] (*Id.* ¶¶ 5-6.)   None of these allegations mention Levandowski's downloading of files, but instead refer to Uber's improper use of Waymo's trade secrets more broadly. Indeed, Waymo specifically alleges that the Levandowski downloaded files are but "one example" of Uber's

---

[1] Waymo asserted that the additional information "included confidential supplier lists, manufacturing details and statements of work." (FAC ¶ 6.) Waymo has since indicated that it does not intend to pursue trade secret claims related to the "supply information" downloaded by Mr. Raduta and Mr. Kshirsagar. (6/7 H'rg Tr. 14:13-19.)

misappropriation of Waymo's trade secrets as reflected in Uber's custom LiDAR devices. (*Id.* ¶¶ 67, 80.) Furthermore, in connection with its Preliminary Injunction Motion Waymo provided a specific identification of trade secrets that Uber is using in its LiDAR devices. (Dkt. 25-7.) As recently as the June 29 Hearing, Waymo reiterated that its trade secret misappropriation claims have never strayed from the allegations in the FAC and the specifically identified trade secrets. (6/29/17 Hr.g Tr. at 60:17-21 ("And we have sued Uber. And if Uber is using a trade secret from Waymo *that's identified in our trade-secret list and in our Complaint*, we would reserve the right and may or may not argue that, depending on what we find in fact discovery.")

### B. Uber's MIL 12 Is A Thinly-Veiled Attempt To Hide Direct Evidence Of Its Trade Secret Misappropriation

What Waymo has found to date in fact discovery, and what Uber is now attempting to shield from the jury through its improper blame shifting tactic, is telling. For example, paragraph 5 of the Scope of Relief Granted to Waymo in the Preliminary Injunction Order required Uber to submit "a complete and chronologically organized log of all oral and written communications – including, without limitation conferences, meetings, phone calls, one-on-one conversations, texts, emails, letters, memos, and voicemails – wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier, or consultant of defendants." Dkt. 433 at 25 (the "LiDAR Log"). The Court recognized in ordering Uber to provide this information that the independent development narrative Uber had asserted in opposing Waymo's Preliminary Injunction Motion "studiously omitted any inquiry into Levandowski's work, essentially erasing him from the history of Uber's self-driving car development." Dkt. 433 at 7. Uber provided its initial LiDAR Log on the Court ordered deadline, and has since supplemented its LiDAR Log three times, adding over 500 entries in what now totals 1085 LiDAR communications involving Levandowski in Uber's most recent supplementation. *See* Dkt. 956, Ex. 1.

The LiDAR Log is replete with communications between Levandowski and other former Waymo employees, including Gaetan Pennecot and Dan Gruver, discussing topics that reference subject matter claimed by Waymo in its trade secret list and shown in discovery to be implemented into Uber's designs. *Id.* Moreover, the Uber engineers who provided declarations in support of Uber's

Opposition to Waymo's Preliminary Injunction Motion for Uber's independent development theories – James Haslim and Scott Boehmke – are also repeat players on the LiDAR log, discussing the information they claim was developed independent of Levandowski's input. *Id.* Uber's MIL 12 is a transparent attempt to exclude this evidence from the jury and continue its efforts to "erase [Levandowski] from the history of Uber's self-driving car development" under the guise that Waymo should be strictly limited to claims that tie Levandowski's theft of Waymo's files directly to Uber's misappropriation of Waymo's trade secrets. Such a limitation ignores the realities of Mr. Levandowski's attempts to hide his illicit downloading of Waymo's confidential information and Uber's attempts to hide its own use of Waymo's trade secrets.

      Indeed, Waymo has already relied on the testimony of one of its other former engineers who joined Otto and Uber, Gaetan Pennecot, as the basis for its misappropriation claims. *See, e.g.*, Dkt. 245-3 at 5, 246-3. The Court found, based on the evidence Waymo presented, that Uber had "no credible explanation" for how it arrived at exactly the same design as Waymo's asserted Trade Secret No. 7, and therefore lacked any evidence of independent development. Dkt. 433 at 14. Despite its protestations now, Uber never raised any objection to Waymo's use of such evidence, nor did it argue at the time that Waymo was asserting claims outside the scope of FAC. Since then, Waymo has discovered additional facts concerning the implementation of Waymo's Trade Secret No. 7 into Uber's devices by Mr. Pennecot under Mr. Levandowski's supervision. In a subsequent deposition, Mr. Penncot admitted that the basis for the particular design choice referenced by the Court in the Preliminary Injunction Order was his "experience in the past at Google." (Jaffe Dec., Ex. 1, Pennecot Tr. at 214:9-19.) Waymo has also learned that Mr. Pennecot was responsible for the implementation of additional Waymo trade secrets into Uber's designs. For example, Mr. Pennecot testified that he incorporated the design elements corresponding to Trade Secret No. 14 in "[t]he same way" that he did at Google. (*Id.* at 424:18-23.) Uber's MIL 12, if granted, would preclude Waymo from presenting this highly relevant and probative evidence of Uber's trade secret misappropriation at trial.

      Finally, Waymo's trade secret misappropriation claims do not "run headlong into California's rejection of the inevitable disclosure doctrine" as Uber suggests. (MIL 12 at 5.) To the contrary, discovery has shown Uber's "actual use" of Waymo's trade secrets, which is exactly what California

law requires. *See Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp. 2d 1111, 1120 (N.D. Cal. 1999) ("A trade-secrets plaintiff must show an actual use or an actual threat . . . once the employee violates the trade-secrets law in a nontrivial way, the employee forfeits the benefit of the protective policy in California."); *Ikon Office Sols., Inc. v. Rezente*, No. 2:10-1704 WBS KJM, 2010 WL 5129293, at *3 (E.D. Cal. Dec. 9, 2010) (citation omitted) ("To the extent that plaintiff relies on a theory of inevitable disclosure, which is not recognized in California, the misappropriation claim must fail. However, plaintiff also alleges wrongful acquisition and actual use, which are proper theories of misappropriation.").

The discovery taken to date shows that Uber's in-house LiDAR designs implement Waymo's trade secret information, and that the trade secret information was obtained by Uber through improper means. Because these are precisely the claims alleged by Waymo in the FAC, Waymo should not be forced to limit the scope of its presentation at trial to solely Levandowski's theft of the 14,000 files.

## IV. CONCLUSION

For the foregoing reasons, Waymo respectfully requests that Defendants' motion *in limine* No. 12 be denied.

DATED: July 21, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By      */s/ Charles K. Verhoeven*
       Charles K. Verhoeven
       Attorneys for WAYMO LLC