1  Neel Chatterjee (SBN 173985)
   nchatterjee@goodwinlaw.com
2  James Lin (SBN 310440)
   jlin@goodwinlaw.com
3  **GOODWIN PROCTER LLP**
   135 Commonwealth Drive
4  Menlo Park, California 94025
   Tel.: +1 650 752 3100
5  Fax.: +1 650 853 1038

6  Brett Schuman (SBN 189247)
   bschuman@goodwinlaw.com
7  Shane Brun (SBN 179079)
   sbrun@goodwinlaw.com
8  Rachel M. Walsh (SBN 250568)
   rwalsh@goodwinlaw.com
9  Hayes P. Hyde (SBN 308031)
   hhyde@goodwinlaw.com
10 **GOODWIN PROCTER LLP**
   Three Embarcadero Center
11 San Francisco, California 94111
   Tel.: +1 415 733 6000
12 Fax.: +1 415 677 9041

13 Hong-An Vu (SBN 266268)
   hvu@goodwinlaw.com
   **GOODWIN PROCTER LLP**
14 601 S. Figueroa Street, 41st Floor
   Los Angeles, CA  90017
15 Tel.: +1 213 426 2500
   Fax.: +1 213 623 1673
16
   *Attorneys for Defendant*
17 *Otto Trucking LLC*

18                **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
19                      **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 20  WAYMO LLC, | Case No. 3:17-cv-00939-WHA |
| 21             Plaintiff, | **DEFENDANT OTTO TRUCKING'S OPPOSITION TO PLAINTIFF WAYMO LLC'S MOTION FOR ORDER TO SHOW CAUSE (DKT. NO. 847)** |
| 22       v. | |
| 23  UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, | Date:        August 16, 2017<br>Time:        8:00 a.m.<br>Courtroom: 8, 19th Floor<br>Judge:       Honorable William Alsup<br>Trial Date:  October 10, 2017 |
| 24 | |
| 25             Defendants. | |
| 26 | REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL |
| 27 | |

28

**I.      PRELIMINARY STATEMENT**

> "Waymo's complaint that Mr. Levandowski knows where the material he downloaded from Waymo is located, and therefore Otto Trucking must know, is disingenuous."

Magistrate Judge Corley, Dkt. No. 881 at 3 (denying motion to compel brought by Waymo).

Plaintiff Waymo LLC's ("Waymo") motion for an order to show cause should be denied. Waymo's current motion, which is merely repackaging its prior pending motion for an order to show cause, is ultimately seeking remedies against Anthony Levandowski. But Waymo chose not to sue Mr. Levandowski. And the remedy that Waymo seeks here is to force Otto Trucking to do something Waymo never asked for, that the Court did not clearly order, and that Otto Trucking cannot lawfully do. In fact, Waymo's request (if Otto Trucking could comply) would require Otto Trucking to pay Anthony Levandowski for choosing to assert his Fifth Amendment rights.

Otto Trucking has fully complied with the Court's Preliminary Injunction Order (the "PI Order"). It provided substantial information from the other officers of Otto Trucking—Lior Ron, Adam Bentley, and Rhian Morgan—and has provided information about Otto Trucking (and its subsidiary) to respond to Waymo's endless questions. In addition, as these officers are also employees of Uber, Otto Trucking has referred Waymo to the accounting and detailed logs provided by Uber. In arguing that these responses were insufficient, Waymo does not identify any information it believes Otto Trucking has beyond what was provided by Uber.

The heart of Waymo's motion is that it complains yet again about Mr. Levandowski's assertion of his Fifth Amendment rights. Judge Corley recognized that imputation of knowledge through these repeated requests for a waiver of Fifth Amendment rights as "disingenuous." Mr. Levandowski is not an employee of Otto Trucking; it cannot fire him like Uber did to try to coerce his cooperation. The only possible mechanism that Waymo identifies is a provision which would require Otto Trucking ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. At no point in the preliminary injunction proceedings was this ever mentioned by Waymo. It also was not mentioned in the Court's Order. This belated, after the fact request should be denied.

1

OTTO TRUCKING'S OPPOSITION TO WAYMO'S MOTION FOR OSC (DKT 847)
CASE NO. 3:17- CV -00939-WHA

## II. THE COURT ORDERS DEFENDANTS TO UNDERTAKE AN ACCOUNTING

This case was filed in January 2017. The complaint errantly coupled Otto Trucking as being part of Uber. This fact was untrue.

By lumping together all defendants (including Otto Trucking), Waymo sought injunctive relief. Waymo never made any specific requests related to Otto Trucking. It never sought to order the repurchase of shares or an accounting from Otto Trucking as to any alleged downloaded documents. On May 11, 2017, the Court issued an order granting in part and denying in part Waymo's request for provisional relief (Dkt. No. 433) (the "PI Order"). Specifically, Paragraph 4 of the PI Order required Defendants to:

- Provide a detailed accounting of every individual "who has seen or heard any part of any downloaded materials" (Dkt. No. 433 at 24);
- Interview individuals "with a particular focus on anyone who has communicated with [Mr.] Levandowski on the subject of LiDAR," including Mr. Levandowski's "separate counsel" (*Id.*);
- Identify chains of custody for copies of downloaded materials or due diligence reports for individuals who have seen or heard copies of those materials or reports (*Id.*); and
- Use the full extent of their authority to obtain cooperation from necessary parties. (*Id.*).

Paragraph 5 of the PI Order required Defendants to:

- Provide a chronological log of communications that occurred between Mr. Levandowski and any individuals associated with Defendants wherein LiDAR was mentioned. (*Id.* at 25).

In response, Otto Trucking attempted to obtain information from Anthony Levandowski, interviewed its other officers for information required by the PI Order, and provided an accounting that confirmed that Otto Trucking's officers other than Mr. Levandowski did not receive or see any of Waymo's purported trade secrets. Otto Trucking also incorporated the accounting and chronologies provided by Uber. *See* Dkt. No. 717.

1   Even though it never asked for any of the relief the Court ordered, Waymo now seeks to hold Otto Trucking in contempt for allegedly failing to (1) provide a detailed accounting of every individual "who has seen or heard any part of any downloaded materials"; and (2) provide a chronology of Mr. Levandowski's LiDAR-related communications.  In each case, as Otto Trucking has provided the information in its possession, custody, and control, Waymo's motion is based on Otto Trucking's inability to provide the information in the possession of Mr. Levandowski because of his assertion of his Fifth Amendment rights.  The motion should be denied.

### III.   LEGAL STANDARD

"A district court has the power to adjudge in civil contempt any person who willfully disobeys a specific and definite order of the court." *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984).   However, the Supreme Court has cautioned that contempt "is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of defendant's conduct." *Tivo v. Echostar*, 646 F.3d 869, 881–82 (Fed. Cir. 2011) (*en banc*) (citing *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)).  A *prima facie* case of civil contempt requires: (1) the nonmoving party violated a specific and definite court order; (2) beyond substantial compliance; (3) not based upon a reasonable and good faith interpretation of the order; and (4) the foregoing has been shown by clear and convincing evidence." *In re Dual-Deck Video Cassette Recorded Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993); *see also Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 891 (9th Cir. 1982).  "Substantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695 (quotation marks omitted).  Waymo has not shown how Otto Trucking has violated the Court's order and cannot meet the standard for contempt.

   **A.   Otto Trucking's Accounting Complies with Paragraph 4 of the Court's Order.**

Otto Trucking took the actions required by the PI Order and provided the information requested by the Court.  To comply with the Court's PI Order, Otto Trucking sent letters to the officers of Otto Trucking—Anthony Levandowski, Lior Ron, Adam Bentley, and Rhian Morgan notifying them about the PI Order and informing them that they must cooperate with Otto

3

1  Trucking's investigation into the identities of anyone who has seen the downloaded materials, what

2  they saw, and under what circumstances they saw the allegedly downloaded materials. *See* Dkt. No.

3  717-1. Mr. Levandowski asserted his Fifth Amendment rights, but Mr. Ron, Ms. Morgan, and Mr.

4  Bentley cooperated with this request and confirmed that none of them had "seen or heard any part of

5  the downloaded materials." Dkt. No. 717. Otto Trucking set forth in its detailed accounting the

6  information provided from Mr. Ron, Ms. Morgan, and Mr. Bentley and the information it could

7  gather regarding Mr. Levandowski. Because Mr. Ron, Ms. Morgan, and Mr. Bentley had not seen or

8  heard any part of the downloaded materials, no further chain of custody information was necessary.[1]

9        Otto Trucking further disclosed that Mr. Levandowski, Mr. Ron, and Mr. Bentley received

10 the Stroz Report, but not any of the referenced exhibits. To the extent that Waymo contends that

11 seeing the Stroz Report is tantamount to seeing the downloaded materials (which it is not), Otto

12 Trucking included their receipt of the Stroz Report in its accounting. Additionally, Otto Trucking

13 incorporated by reference Uber's accounting and 26-page chronology of LiDAR-related

14 communications with Mr. Levandowski to supplement Otto Trucking's accounting of its officers,

15 since Otto Trucking's officers are also Uber employees and were covered by Uber's submissions.

16 Otto Trucking has no independent knowledge of LiDAR-related communications beyond Uber's

17 disclosure.

18       These disclosures satisfy the Court's Order. Otto Trucking has provided the information in

19 its possession, custody, and control and identified Uber's logs as a source for additional information.

20 That Waymo does not like this response does not make Otto Trucking's accounting inaccurate or

21 incomplete.

22       The sole basis for Waymo's motion (as well as its earlier motion seeking the same relief) is

23 that Otto Trucking has not obtained information in the possession of Mr. Levandowski. This motion

24 fails for several reasons.

---

25

26 [1] This is not unusual considering Otto Trucking is a limited liability company that merely owns a subsidiary that owns trucks. Otto Trucking and its subsidiary, Otto Transport, are not involved in the development of LiDAR or any self-driving technology. ███████████████████████

27 ███████████████████████████████████████████████████████

28 ███████████████████████████████████. The accused devices, Fuji and Spider, have not been used on any of Otto Transport's trucks.

4

First, Waymo is trying to get to Mr. Levandowski through the back door arguing that because Mr. Levandowski knows facts, Otto Trucking must know those same facts is just wrong.  As Judge Corley noted in her July 12, 2017 order, "Waymo's complaint that Mr. Levandowski knows where the material he downloaded from Waymo is located, and therefore Otto Trucking must know, is disingenuous.  As Waymo is well aware, Mr. Levandowski has refused to cooperate with any discovery in this matter on Fifth Amendment grounds."  (Dkt. No. 881 at 3).

Second, there can be no dispute that Mr. Levandowski has the right to assert the Fifth Amendment privilege.  *Quinn v. United States*, 349 U.S. 155, 161 (1955) ("The privilege against self-incrimination is a right that was hardearned by our forefathers. The reasons for its inclusion in the Constitution—and the necessities for its preservation—are to be found in the lessons of history.").  The Fifth Amendment prohibits state compelled action that might require Mr. Levandowski to testify or produce documents that incriminate himself as "any compulsory discovery by extorting the party's oath . . . to convict him of crime . . . is contrary to the principles of a free government . . . . It may suit the purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom."  *Malloy v. Hogan*, 378 U.S. 1, 9 n.7 (1964); *see also United States v. Bright*, 596 F.3d 683, 692 (9th Cir. 2010) ("The Fifth Amendment grants persons the privilege not to provide the State with [self-incriminatory] evidence of a testimonial or communicative nature."  (quotation marks omitted and alteration in original)).  Indeed, forcing the issue through Otto Trucking would violate Mr. Levandowski's Fifth Amendment rights by making him choose between a punitive state action and invoking his constitutional right against self-incrimination.  *See, e.g.*, *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977) (noting that "government cannot penalize assertion of the constitutional privilege against compelled self-incrimination by imposing sanctions to compel testimony which has not been immunized"); *Malloy*, 378 U.S. at 8 (stating that the Fifth Amendment guarantees "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence").

Third, contrary to Waymo's assertion, Otto Trucking has exercised the full extent of its authority in attempting to obtain cooperation from Mr. Levandowski.  As discussed in Otto

1   Trucking's objection to Judge Corley's Order on Waymo's Motion to Compel (Dkt. No. 928), Otto
2   Trucking does not have the power to compel any action from Mr. Levandowski as he is a managing
3   member with sole discretion (shared with Mr. Lior) to make decisions for the company and does not
4   owe any fiduciary duties. *Id*. at 4. In addition, his consent is required before the company can take
5   any action. *See id*.

6   And yet, Otto Trucking still tried to obtain information in connection with the PI Order. Otto
7   Trucking contacted Mr. Levandowski by letter to his counsel at Ramsey & Ehrlich LLP on May 30,
8   2017, requesting that Mr. Levandowski cooperate with the investigation, but received no response.
9   *See* Dkt. No. 717, Ex. B. When Waymo still complained about the extent of Otto Trucking's efforts
10  to obtain Mr. Levandowski's cooperation, Otto Trucking offered to have fellow managing member,
11  Lior Ron, contact Mr. Levandowski and request his assistance. *See* Dkt. No. 847-1, Ex. 5 (email
12  from Mr. Brun regarding Otto Trucking's compliance with the PI Order and offering to have Mr.
13  Lior contact Mr. Levandowski). Waymo ignored this offer.

14  Waymo then complained that Otto Trucking failed to contact Mr. Levandowski's "personal
15  attorneys" and O'Melveny & Myers LLP ("O'Melveny") to request their cooperation with the
16  accounting. This is false.

17  Otto Trucking contacted Mr. Levandowski's personal attorneys, John Gardner and the
18  Ramsey and Ehrlich firm. The Ramsey and Ehrlich firm was only retained after this litigation
19  started. Any information relating to Mr. Gardner is accounted for in Uber's accounting, including
20  that he received a copy of the Stroz Report from Stroz Friedberg without exhibits. Dkt. No. 715 at 7.
21  Mr. Gardner would not provide any further information on the grounds of attorney-client privilege,
22  as he is legally bound to keep his confidences under the attorney-client privilege. *See* Cal. Bus. &
23  Prof. Code § 6068(e) (stating it is the duty of every lawyer to "maintain inviolate the confidence, and
24  at every peril to himself or herself to preserve the secrets, of his or her client").

25  Otto Trucking also contacted its corporate counsel at O'Melveny. O'Melveny refused to
26  cooperate without Google's consent, due to O'Melveny's attorney-client relationship with Google in
27  other matters. *See* Dkt. No. 715-1. Defendants contacted Waymo's counsel in this case regarding
28  O'Melveny's refusal to cooperate and sought an agreement to allow O'Melveny to provide

1  responsive information despite this alleged conflict.   Waymo's counsel claimed that Defendants'
2  attempt to seek O'Melveny's cooperation through Google's counsel was not "appropriate" and
3  refused to assist in facilitating O'Melveny's cooperation.  *Id.*  Otto Trucking cannot be held in
4  contempt for Waymo's own stonewalling.

5  Finally, Waymo again argues that Otto Trucking should be held in contempt because it failed
6  to ███████████████████████████.  As explained in Otto Trucking's opposition to Waymo's
7  first motion for an order to show cause (Dkt. No. 804), Waymo's argument has no merit.[2]  Waymo
8  never requested this relief in its injunction briefing, and the Court never explored Otto Trucking's
9  role (if any) in this case as part of the injunction proceedings.  The Court's PI Order does not
10 specifically and definitely ████████, and as such, Otto Trucking cannot be held in
11 contempt.  *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989) ("Civil contempt
12 is appropriate only when a party fails to comply with a court order that is both specific and definite.
13 Thus, to support a contempt motion, *the order alleged to have been disobeyed must be sufficiently*
14 *specific*.") (internal citations omitted) (emphasis added).  Moreover, ████████████
15 ████████████ is not "a reasonable step within [Otto Trucking's] power to comply."  *Reno*
16 *Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006).  Rather, ████████
17 ████████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████.

20  **B.    Otto Trucking's Adoption of Uber's Logs Provides Waymo with the Information
21        in OT's Possession, Custody and Control and Complies with Paragraph Five of
       the Order.**

22  Otto Trucking is also not in contempt for referring to Uber's chronology detailing
23 communications involving Mr. Levandowski and LiDAR instead of providing a chronology of its
24 own.  Uber provided Waymo with a full chronology of communications including over 500 LiDAR-
25 related communications with Mr. Levandowski.  *See* Dkt. No. 712.  Otto Trucking adopted this

---

[2] Waymo first argued that Otto Trucking should be held in contempt for failing to repurchase Mr. Levandowski's shares in its motion for an order to show cause dated June 21, 2017 (Dkt. No. 677). Otto Trucking opposed this motion (Dkt. No. 804), and because these arguments are again relevant, Otto Trucking incorporates Section III.A of its opposition as if it were fully set forth herein.

1  chronology as its own, as it had no facts beyond those disclosed by Uber.  Dkt. No. 717.  Uber's log
2  sufficiently sets forth Mr. Ron's, Ms. Morgan's, and Mr. Bentley's LiDAR-related communications
3  with Mr. Levandowski as they are also employees of Uber who were interviewed in connection with
4  the Court's Order.  Indeed, Uber's chronology includes dozens of entries for Mr. Ron and Ms.
5  Morgan.  Waymo has not shown why Mr. Ron or the other officers would provide different
6  information to Otto Trucking than they did to Uber or any information it believes is missing other
7  than what may be in Mr. Levandowski's sole possession.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Waymo's motion for an order to show cause.

Dated:  July 24, 2017                    Respectfully submitted,

By:   /s/   Neel Chatterjee
      Neel Chatterjee
      *nchatterjee@goodwinlaw.com*
      Brett Schuman
      *bschuman@goodwinlaw.com*
      Shane Brun
      *sbrun@goodwinlaw.com*
      Rachel M. Walsh
      *rwalsh@goodwinlaw.com*
      Hong-An Vu
      *hvu@goodwinlaw.com*
      Hayes P. Hyde
      *hhyde@goodwinlaw.com*
      James Lin
      *jlin@goodwinlaw.com*
      **GOODWIN PROCTER LLP**

*Attorneys for Defendant:*
*Otto Trucking LLC*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on July 24, 2017. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed this 24th day of July 2017 in Menlo Park, California.

                          /s/ Neel Chatterjee  
                            Neel Chatterjee