MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
RUDY Y. KIM (CA SBN 199426)
RudyKim@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone:    202.237.2727
Facsimile:    202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>    Defendant. | Case No.    3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO, LLC'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM AND EMERGENCY MOTION FOR STAY OF NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 881)**<br><br>Trial Date: October 10, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I. INTRODUCTION

Waymo's opposition brief confirms that the July 12 Order expanding discovery into Ottomotto's non-LiDAR software should be reversed. Two undisputed legal principles support this outcome. First, the Cal Civ. Proc. Code 2019.210 trade secrets disclosure controls the scope of discovery. Second, any asserted trade secret should be identified *with specificity* in its Section 2019.210 trade secrets list. Before Judge Corley, Waymo argued that its identification of a spreadsheet containing "development, goals, challenges, and accomplishments" sufficed to disclose non-LiDAR software trade secrets, but Waymo has no rebuttal to the case authority that such disclosures are insufficient. (Opp'n, Dkt. 970-4.) Its other arguments do not overcome this fundamental deficiency.

Furthermore, Waymo does not dispute that the discovery it seeks will threaten the Court's schedule. The expansion of discovery to non-LiDAR technology, at a time Waymo should be narrowing its trade secret claims, would render the October 10 trial date untenable.

## II. ARGUMENT

In its opposition brief, Waymo never disputes that, as established by case authority in this District, the Section 2019.210 disclosure governs the scope of trade secrets discovery. (*Compare* Mot. For Relief at 2, Dkt. 929-4 (citing *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1044 (N.D. Cal. Nov. 15, 2014*)* and *Via Techs., Inc. v. Asus Computer Int'l*, Case No. 14-cv-03586-BLF, 2016 WL 1056139, at *2 (N.D. Cal. Mar. 17, 2016)), *with* Opp'n.) Waymo also does not contend that the non-LiDAR software modules in question relate to the one software trade secret specified on its Section 2019.210 list, for ▮▮▮▮▮▮▮▮▮▮▮. (*See* Mot. for Relief at 2-3.) Uber has since confirmed that none of its software serves this purpose.

Waymo also does not challenge Northern District decisions requiring plaintiffs to identify asserted trade secrets with more specificity than broad, generalized descriptions. (*See* Opp'n at 2.) In *Loop*, a Northern District court rejected as insufficiently specific the Section 2019.210

DEFS.' REPLY IN SUPP. OF MOT. FOR RELIEF FROM & EMERGENCY MOTION FOR STAY OF NON-DISPOSITIVE PRETRIAL ORDER (DKT. 881); Case No. 3:17-cv-00939-WHA
dc-892688

1

identification of "Plaintiff's confidential information, including regarding problems experienced with certain tests," which was "catchall" wording that did not "clearly refer to tangible trade secret material." *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1115 (N.D. Cal. 2016) (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (1998); citation omitted). Waymo distinguishes *Loop* only by arguing that the defendant in *Loop* challenged the sufficiency of the Section 2019.210 disclosure, but Uber did not. (Opp'n at 2.) But Uber had argued before Judge Corley that Waymo was supposed to identify its trade secrets with particularity before discovery, and that the "weekly updates" spreadsheet could not be used to expand Waymo's asserted trade secrets to cover software that was not part of its trade secrets list. (*Compare* Resp. to Waymo Ltr. Br. at 3, Dkt. 748-13, *with* Opp'n at 2:18-20.) Furthermore, because the Section 2019.210 disclosure "controls the scope of discovery," a Northern District court found that "*even if* Defendants no longer object to the disclosure, the court therefore must evaluate its sufficiency." *Via Techs., Inc.*, 2016 WL 1056139, at *3 (denying-in-part plaintiff's motion to compel production of documents because plaintiff's disclosure is "plainly insufficient").

Waymo's identification of a 43-page "weekly updates" spreadsheet is an insufficient disclosure of any purported non-LiDAR software trade secret.[1] (Mot. for Relief at 3.) Waymo merely summarized the spreadsheet as containing "goals, challenges, and accomplishments" exactly the type of broad description that was rejected in *Loop*. (*See* Mot. for Relief at 3 (citing Dkt. 25-7 at 48-49 (Section 2019.210 list description of spreadsheet as containing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Before Judge

---

[1] As Uber pointed out – and Waymo does not dispute – the spreadsheet contains no description of claimed trade secrets relating to software algorithms or source code. (*Compare* Mot. for Relief at 3; Resp. to Waymo Ltr. Br. at 3 (Dkt. 748-13); *with* Opp'n at 1-3.)

DEFS.' REPLY IN SUPP. OF MOT. FOR RELIEF FROM & EMERGENCY MOTION FOR STAY OF NON-DISPOSITIVE PRETRIAL ORDER (DKT. 881); Case No. 3:17-cv-00939-WHA
dc-892688

2

Corley, Waymo attempted to get around its broad description of the spreadsheet by identifying specific ▮▮▮ to ▮▮▮ and ▮▮▮ and specific ▮▮▮ for ▮▮▮ software of ▮▮▮ (Dkt. 681-3 at 5.) In its opposition to this motion, Waymo moved the target, arguing that the Ottomotto software is also relevant to two additional portions of the spreadsheet: ▮▮▮ and ▮▮▮ (Opp'n at 1.) The spreadsheet excerpt below, which highlights two of the lines Waymo quoted before Judge Corley in yellow and one of the new lines identified in Waymo's opposition brief in purple, illustrates the mischief wrought by Waymo's bootstrapping arguments. (*See* Dkt. 929-5, Ex. 1 to Mot. For Relief at 1 (first page of spreadsheet).)  Waymo's Section 2019.210 disclosure for this spreadsheet only identified two example problems: "▮▮▮." (*See* Dkt 25-7 at 49.)  The trade secrets list did not point to these particular portions of the spreadsheet – and Defendants would not have been able to guess which isolated lines from the spreadsheet were Waymo's purported trade secrets. (*Compare* Dkt. 25-7 at 48-49 (Section 2019.210 list description of spreadsheet), *with* Dkt. 929-5 (spreadsheet).)



DEFS.' REPLY IN SUPP. OF MOT. FOR RELIEF FROM & EMERGENCY MOTION FOR STAY OF NON-DISPOSITIVE PRETRIAL ORDER (DKT. 881); Case No. 3:17-cv-00939-WHA
dc-892688

3

As explained in *Loop*, "categorical descriptions render it impossible for Defendants to conduct public domain or other research to challenge the alleged secrecy of the information at issue." 195 F. Supp. 3d at 1115; *see also VasoNova Inc. v. Grunwald*, No. C 12–02422 WHA, 2012 WL 4119970, at *2 (N.D. Cal. Sept. 18, 2012) (interpreting Section 2019.210 "reasonable particularity" requirement to mean "enough detail so that the defendant is able to learn the boundaries of the alleged trade secret in order to investigate defenses"). Here, Waymo identified the spreadsheet only as containing "goals, challenges, accomplishments" – and did not identify any of references to software that it now claims as disclosures of non-LiDAR software trade secrets. If Waymo is allowed to freely quote shifting portions of this spreadsheet or other documents to expand the list of its asserted trade secrets, Defendants will not be able to discern the boundaries of the alleged trade secrets or investigate its defenses for trial.

Waymo's other arguments do not overcome the fundamental deficiency in its trade secrets disclosure. Waymo argues that the non-LiDAR software modules are relevant because they reveal what Uber purchased when it acquired Ottomotto and show whether Uber acquired Waymo's trade secrets. (Opp'n at 2-3.) Waymo also complains that Uber has not provided any discovery on the software modules in the Ottomotto acquisition. (*Id.* at 3.) But, as Uber pointed out before Judge Corley, "[a] true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery." (Dkt. 748-13 at 3 (quoting *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519 WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014).) Because it never identified any non-LiDAR software trade secrets *before* discovery, Waymo cannot "take discovery into the defendants'" non-LiDAR software, "and then cleverly specify what[ever] happens to be there as having been trade secrets stolen from plaintiff." *Jobscience*, 2014 WL 852477, at *5.

DEFS.' REPLY IN SUPP. OF MOT. FOR RELIEF FROM & EMERGENCY MOTION FOR STAY OF NON-DISPOSITIVE PRETRIAL ORDER (DKT. 881); Case No. 3:17-cv-00939-WHA
dc-892688

4

Waymo argues that, because Ottomotto software designer Don Burnette was a "Diligenced Employee" in the Stroz investigation for the Otto acquisition, discovery should extend to Ottomotto software. (Opp'n at 2.) But as Judge Corley found that the Stroz investigation was not "to assist with obtaining Waymo's trade secrets," (Dkt. 731 at 2), Mr. Burnette's participation in the Stroz investigation does not entitle Waymo to discovery beyond the scope of its Section 2019.210 disclosure.

Waymo also argues that it is entitled to discovery of what would justify the "price tag" of the Ottomotto acquisition. (Opp'n at 2.) But Waymo ignores Uber's commitment not to argue that the Ottomotto software modules account for the value associated with the acquisition.[2] (Mot. for Relief at 3.) Waymo still fails to identify any case authority that trade secrets misappropriation discovery—the only expedited discovery it was granted—extends beyond its Section 2019.210 disclosure, or to arguments that Uber will not make.

## III. CONCLUSION

The July 12 Order was contrary to law because, with no specific identification in the Section 2019.210 of non-LiDAR software trade secrets, there is no basis for discovery into that technology. Allowing Waymo to expand discovery into new areas, on the basis of an ever-shifting set of isolated spreadsheet lines that was never in its Section 2019.210 list, would threaten the October 10 trial date.

---

[2] Waymo continues to mischaracterize the Ottomotto acquisition as bearing a "price tag" of $680 million, despite Uber's explanation that the reported number reflected the potential value of the performance-based incentive stock options offered to Ottomotto employees. (*See* Opp'n at 2; Mot. for Relief at 3.) To date, Uber has paid only ▮▮▮▮▮ for the acquisition of Ottomotto, and none of the performance-based incentives have been met. (Gonzalez Decl. Ex. A, C. Poetzscher Tr. at 32:2-7; 135:12-17.)

DEFS.' REPLY IN SUPP. OF MOT. FOR RELIEF FROM & EMERGENCY MOTION FOR STAY OF NON-DISPOSITIVE PRETRIAL ORDER (DKT. 881); Case No. 3:17-cv-00939-WHA
dc-892688

5

1 | Dated: July 24, 2017           MORRISON & FOERSTER LLP

By:    */s/ Arturo J. González*
       ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

DEFS.' REPLY IN SUPP. OF MOT. FOR RELIEF FROM & EMERGENCY MOTION FOR STAY OF NON-DISPOSITIVE PRETRIAL ORDER (DKT. 881); Case No. 3:17-cv-00939-WHA
dc-892688

6