MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:    202.237.2727
Facsimile:    202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>  Defendants. | Case No.   3:17-cv-00939-WHA<br><br>**DEFENDANT UBER TECHNOLOGIES, INC. AND OTTOMOTTO, LLC'S REPLY IN SUPPORT OF MOTION TO ENFORCE THE COURT'S JUNE 7, 2017 ORDER (DKT. 563), TO STRIKE PLAINTIFF WAYMO LLC'S CORRECTED SUPPLEMENTAL INITIAL DISCLOSURES, AND TO PRECLUDE DAMAGES CLAIMS AND CERTAIN WITNESSES**<br><br>Date: August 10, 2017<br>Time: 8:00 a.m.<br>Ctrm: 8, 19th Floor<br>Judge: The Honorable William H. Alsup<br><br>Trial Date: October 10, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

DEFENDANTS' REPLY TO ENFORCE THE COURT'S ORDER AND TO STRIKE
CASE NO. 3:17-CV-00939-WHA

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    I.    Uber Has Been Prejudiced. ........................................................................................ 2

    II.   Waymo's Rule 26(a) Damages Disclosures Are Insufficient. ................................... 3

    III.  Waymo Cannot Remedy its Insufficient Disclosures Through Discovery. .............. 4

    IV.  Uber Still Does Not Have Waymo's Damages Information. ................................... 7

    V.   The Only Meaningful Remedy at This Point Is Preclusion. ................................... 10

        A.   As the Court Has Correctly Observed, Preclusion Is the Proper Remedy for Failure to Provide Adequate Initial Disclosures. ................................. 10

        B.   Waymo's Failures Are Neither Substantially Justified Nor Harmless. ....... 11

            1.   Waymo's Failure Was Not Substantially Justified. ......................... 12

            2.   Waymo's Failure Was Not Harmless. .............................................. 13

    VI.  Waymo's Late-Disclosed Witnesses Are an Independent Violation of Rule 26. ... 14

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Fin. Corp.*,
   2005 WL 977850 (S.D.N.Y. Apr. 28, 2005) ............................................................................. 11

*Baca v. State of California*,
   No. C 13-02968 SBA, 2016 WL 234399 (N.D. Cal. Jan. 20, 2016) ........................... 6, 8, 11, 12

*Baker v. W. Contra Costa Sch. Dist.*,
   No. C-11-02529-WHA, 2011 U.S. Dist. LEXIS 127406 (N.D. Cal. Nov. 3, 2011) .................. 14

*Brandywine Commc'ns Techs., LLC v. Cisco Sys., Inc.*,
   No. C 12-01669 WHA, 2012 WL 5504036 (N.D. Cal. Nov. 13, 2012) ............................. passim

*Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*,
   306 F.R.D. 276 (N.D. Cal. 2015) ............................................................................. 5, 10, 13, 14

*Gilvin v. Fire*,
   No. 99-CV-530, 2002 WL 32170943 (D.D.C. Aug. 16, 2002) ................................................ 11

*Klamut v. Nibecker*,
   No. 15-CV-02132-MEJ, 2017 WL 1196725 (N.D. Cal. Mar. 31, 2017) ................................... 14

*Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd.*,
   No. 07 C 4023, 2008 WL 1883435 (N.D. Ill. Apr. 28, 2008) ..................................................... 6

*Maine v. Kerramerican, Inc.*,
   No. CV-04-191-B-W, 2007 WL 731306 (D. Me. Mar. 6, 2007) .............................................. 14

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) .................................................................................................. 11

**Rules**

FED. R. CIV. P. 26 ........................................................................................................................ passim

FED. R. CIV. P. 26(a)(1)(A) ......................................................................................................... passim

FED. R. CIV. P. 26(a)(1)(E) ............................................................................................................ 4, 13

FED. R. CIV. P. 26(b)(1) ................................................................................................................. 5, 13

FED. R. CIV. P. 33(b)(2) ...................................................................................................................... 2

FED. R. CIV. P. 34(b)(2) ...................................................................................................................... 2

FED. R. CIV. P. 37(c) ......................................................................................................................... 11

**INTRODUCTION**

Uber's last day to serve discovery is ***tomorrow.*** The expedited trial Waymo demanded is eleven weeks away. Yet Uber still does not know either the form or amount of damages Waymo will claim. Waymo's hired experts have had months to concoct their admittedly "complicated" and "new" damage theories. But under the compressed schedule Waymo demanded, Uber will have only two weeks to respond (between opening expert reports on August 24 and rebuttal reports on September 7). Meanwhile, Uber does not know what discovery to request, or what to ask Waymo's witnesses about alleged damages, and has now lost that opportunity as discovery closes. The Federal Rules and this Court expressly sought to prevent this prejudice by requiring Waymo to comply with Rule 26. To this day, it has not. The only suitable remedy is preclusion.

Waymo's opposition (Dkt. 934 ("Opp.")) to Uber's motion to strike (Dkt. 797) boils down to an argument that Waymo should not be held to the Federal Rule's damages disclosure requirements, and instead should be permitted to hold its damages theories, computations, and supporting documents in reserve. Despite failing to make adequate initial disclosures by the Court's firm deadline, Waymo now announces that it "already intends to amend its disclosures shortly after July 28" (Opp. 11), more than a month after the Court's June 21 deadline for initial disclosures, after the deadline for serving written discovery, and apparently without any effort to show good cause. (Dkt. 563 at 1.) Waymo offers no reason why the Court did not mean what it said when it ordered that sufficient initial disclosures had to be made by June 21, 2017 on "pain of preclusion." (*Id*.) The plain text of Rule 26 does not support Waymo's insistence on special treatment, and neither do the facts of this case.

Instead, Waymo devotes more than half of its opposition to a revisionist narrative about discovery in this case; a description that is both inaccurate and irrelevant. A party's Rule 26 obligations are independent of any subsequent discovery: they must be made "***without awaiting a discovery request***." FED. R. CIV. P. 26(a)(1)(A) (emphasis added). The rule exists to ensure that "basic information that is needed in most cases to prepare for trial or make an informed decision about settlement" is disclosed early in the case, shaping and informing discovery and trial preparations. FED. R. CIV. P. 26, 1993 adv. comm. note. Waymo had an obligation to disclose its

1

damages calculations based on the information available to it at the time. It failed to do so three times.[1] Moreover, Waymo's failure has not been remedied, as Waymo continues to resist Uber's repeated requests for clarity on Waymo's speculative damage claims. Waymo's delay would be inappropriate in any context, but is acutely prejudicial due to the extraordinary pace of this litigation—a pace Waymo demanded.

Separate from its failure to provide sufficient damages disclosures, Waymo also attempted to add 14 late-disclosed witnesses to its initial disclosures without seeking leave of Court or establishing good cause. Waymo obviously waited to receive and review Uber's initial disclosures before deciding who to add to its own list. Again, Waymo offers no credible justification for its untimely supplement or any meaningful response to Uber's showing of prejudice. Waymo's "corrected" supplemental disclosures—including the 14 late-disclosed witnesses—should be struck.

## ARGUMENT

### I. Uber Has Been Prejudiced.

The discovery cutoff in this case is fast approaching, and expert reports are due on August 24, 2017. (Dkt. 563 ¶ 5.) The cutoff for providing new discovery requests is **tomorrow**, July 25, 2017. (*Id.* at ¶ 3 (setting the non-expert discovery cut-off on August 24, 2017); FED. R. CIV. P. 33(b)(2) and 34(b)(2) (allowing a responding party 30 days to answer an interrogatory or request for production of documents).) At this point, Uber has already lost the opportunity to conduct meaningful and thorough damages discovery with the appropriate level of knowledge of what Waymo is claiming. Because Waymo has failed to explain its damages computations and theories, Uber does not know if it served the right discovery, deposed the right people, or asked the right questions. Uber is also disabled and prejudiced in having its own experts analyze Waymo's damage theories. Uber has conducted eleven depositions to date, including Alphabet's CEO, without the benefit of this information. This is clear prejudice to Uber, particularly given

---

[1] Waymo served its first initial disclosures on April 3, 2017. It then served supplemental initial disclosures on June 21, 2017—the deadline set by the Court "on pain of preclusion." (Dkt. 563 ¶ 1.) The following day, without seeking leave or establishing good cause, Waymo served "corrected supplemental initial disclosures." (Dkt. 797-3; *see* Dkt. 797-1 (Pritt Decl.) ¶¶ 2-3, 5-6.)

the expedited nature of this case.

As a result, Uber's damages discovery has been a guessing game. Even given Waymo's most recent interrogatory responses—served the same week that Waymo filed its opposition to this motion—Waymo's damages theories and computations have been shifting and vague. Waymo continues to hold critical information in reserve, including the specific theories that it is proceeding under, any information relating to lost profits (if Waymo is seeking lost profits), the royalty base and royalty rate for its alleged "reasonable royalty" measure of damages, and even the form in which that royalty will be claimed. Waymo's apparent aim is to disclose its claimed damages in its expert report—but this will be acutely prejudicial to Uber. Under the compressed schedule in this case, Uber will only have fourteen days to respond to Waymo's opening expert report. (Dkt. 563 ¶ 5.)

The speculative nature of Waymo's damages amplifies the prejudice to Uber. Waymo told the Court that it its damages theories are "complicated, and they're new." (Dkt. 775 (06/29/2017 Hr'g Tr.) 98:10–12.) Waymo should not be permitted to come forward now with speculative new theories about damages, leaving Uber to scramble to address these "new" theories at the eleventh hour. Uber's ability to defend against these new theories has already been irreparably undermined.

**II.     Waymo's Rule 26(a) Damages Disclosures Are Insufficient.**

Waymo argues its disclosures were "sufficient as of the dates they were provided." (Opp. 7; *see also id.* at 1, 8, 10–11.) This is plainly not true. No version of Waymo's disclosures provided a "computation" of any category of damages, as required under Rule 26(a)(1)(A)(iii) and Patent Local Rule 3-8. (Dkt. 797-2 (Supplemental Initial Disclosures) at 18; Dkt. 797-3 ("Corrected" Suppl. Disclosures) at 19-20; *see also* Dkt. 797-5 (Patent Damages Contentions) at 2.) Nor did Waymo identify a *single* document related to its damages claims, *any* information that was being withheld on the basis of privilege, or *any* explanation of why Waymo was allegedly not able to provide more information at the time. (*See* Dkt. 797 (explaining deficiencies).) Waymo simply provided a generic list of legal categories of potentially available damages, including categories where the information on which the calculation would be based was entirely

3

1  in Waymo's control, stating it "would be premature to estimate the amount of damages at this
2  time." (*Id.* (quoting Dkt. 797-2 at 18).) Put another way: A party need not have known anything at
3  all about this case to produce the "disclosures" Waymo put forth. This type of deficient disclosure
4  is exactly what the rules and the Court's Orders prohibit. (Dkt. 563 ¶ 1.)

To the extent that Waymo believed it was missing necessary information, Rule 26 and *Brandywine* expressly explain how to deal with such a situation. Waymo should have disclosed the information within its possession, and specifically stated what it needed but did not have. *See* FED. R. CIV. P. 26(a)(1)(E); *Brandywine Commc'ns Techs., LLC v. Cisco Sys., Inc.*, No. C 12-01669 WHA, 2012 WL 5504036, at *3 (N.D. Cal. Nov. 13, 2012) (holding plaintiffs must be "specific" in identifying "any such disability and the reason therefor"). Waymo did not.

Waymo claims *Brandywine* is irrelevant because it was a patent case. (Opp. 10.) That is incorrect. First, this is also a patent case; one patent infringement claim remains, and Waymo's patent damages disclosures, like its initial disclosures, were woefully inadequate. (*See* Dkt. 797-5 (Pritt Decl. Ex. D).) Moreover, *Brandywine*'s discussion of the requirements for lost profits and reasonable royalty disclosures apply equally to trade secrets claims, particularly where, as here, Waymo expressly claimed both of these forms of relief in its initial disclosures. (Dkt. 797-3 (Pritt Decl. Ex. B).) And finally, Federal Rule of Civil Procedure 26 applies to ***all*** cases—regardless of their subject matter. There is no "trade secret exception" to Rule 26.

Nor is Waymo excused from Rule 26 simply because there is "no established royalty rate for technology to be applied in the nascent but highly competitive self-driving car space." (Opp. 10.) That Waymo has no viable theory for damages because the market does not exist is a reason Waymo should be required to identify and explain its alleged damages in ***greater*** detail and ***earlier***, not in less detail and later.

**III.   Waymo Cannot Remedy its Insufficient <u>Disclosures</u> Through <u>Discovery</u>.**

Waymo argues that the ongoing nature of discovery in this matter excuses its failure to disclose its alleged damages. (Opp. 1–6.) Waymo's focus is misplaced: "Disclosure is not the same as discovery. Those are two different things." (Dkt. 775 (06/29/17 Hrg. Tr.) 98:3–4; 97:2–3.)

The Federal Rules separate out initial disclosures from discovery because of the value to the parties—and to the fair and efficient administration of justice and due process—in receiving initial disclosures early in the litigation. Rule 26(a)'s requirements are "the functional equivalent of court-ordered interrogatories" that concern "certain basic information that is needed in most cases to prepare for trial or make an informed decision about settlement." FED. R. CIV. P. 26, 1993 adv. comm. note. "A major purpose of [Rule 26] is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information." *Id*. Failure to provide damages computations and documents as part of initial disclosures—as Waymo failed to do in its initial, supplemental, and corrected disclosures, and still has not done—prevents the parties from meaningfully engaging in settlement discussions and makes it impossible for the parties and the Court to accurately apply the proportionality requirements to discovery. *Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc*., 306 F.R.D. 276, 278 (N.D. Cal. 2015); FED. R. CIV. P. 26(b)(1). Under the compressed schedule in this case, early and complete damages disclosures were necessary to permit Uber to serve the right discovery and prepare to rebut Waymo's expert claims.

To the extent Waymo's argument is that it needed discovery from **Uber** to complete its damages computations, that is no excuse for Waymo's failing to provide ***any*** damages computations and supporting materials in its initial disclosures. Even assuming Uber's information would help Waymo further refine its damages computations, a party "should not be allowed to evade the duty to lay out its damages contentions at the outset of the case merely because it hopes it can frame more handsome contentions after discovery." *Brandywine*, 2012 WL 5504036, at *1, *3; *see also* FED. R. CIV. P. 26(a)(1)(A).  In any event, Waymo's contention is belied by the face of its disclosures, in which Waymo conceded that it would rely on "***its*** estimates of future profit and cash flows; ***its*** assessment and projections regarding the relevant markets . . . and ***its*** investment in LiDAR technology" in calculating its damages. (Dkt. 797-3 (Pritt Decl. Ex. B) at 19 (emphasis added).) Even where the basis for a computation was entirely within its control, Waymo provided none. Waymo's excuse is also belied by its service of 265 early requests for production long before the June 21 deadline—which it has claimed included

essentially no damages-related requests. (*See, e.g.*, Declaration of Meredith Dearborn in Support of Defendants' Reply ("Dearborn Reply Decl.") Ex. 1 (6/26 9:00pm L. Cooper email ("Waymo did not include damages-specific discovery in its initial sets of requests for production. . . . Waymo plans to serve approximately 30 requests for production on damages-related topics.").)

Waymo's argument that its provision of damages-related discovery to Uber is an adequate substitute for initial disclosures turns Rule 26 on its head. (Opp. 6.) Uber cannot fairly be expected (let alone required) to divine how Waymo may use its insufficient damage disclosures. In *Baca v. State of California*, No. C 13-02968 SBA, 2016 WL 234399 (N.D. Cal. Jan. 20, 2016), Judge Armstrong rejected the argument Waymo makes here and precluded the plaintiff from seeking damages. There, the plaintiff failed to provide any damages computation in his initial disclosures regarding his medical costs, but argued that his failure was harmless because all of the information underlying his expenses was "contained within the medical records" that were already in the defendants' possession. *Id.* at *5. Judge Armstrong rejected this proposition, holding that "a party cannot avoid its obligation to provide a damage calculation merely by producing records ostensibly containing such information." *Id.* (citing *Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd.*, No. 07 C 4023, 2008 WL 1883435, at *6 (N.D. Ill. Apr. 28, 2008) ("Rule 26 requires that the calculation be done by the party claiming damages, not its opponent, who under the defendants' unsupportable theory is left to sift through extensive records of the defendants and guess at what the damage claim is.")). In *Baca*, where the case was 82 days from trial at the time of the order, the remedy was preclusion. *Id.* at *1 (disclosing the trial date). Here, trial is only 78 days away. Preclusion is warranted here, just as in *Baca*.

Under Waymo's vision of Rule 26—where a party may be excused from violating the Rule's requirements based on subsequent production of documents through discovery—Rule 26's early-disclosure requirements would be meaningless. (*See* Opp. 9 ("Waymo has always anticipated updating its disclosures to more specifically identify the trade secret damages methodologies it intends to pursue once Uber makes at least its first damages-related production.").) There is no "gamesmanship" (Opp. 5) in holding Waymo to its obligations under the Federal Rules of Civil Procedure in order to prevent the prejudice Uber will otherwise suffer.

**IV. Uber Still Does Not Have Waymo's Damages Information.**

Although Waymo's production of materials in discovery could not, as a matter of law, cure the inadequacy of its initial disclosures, Waymo is wrong that Uber "has virtually all of Waymo's confidential information related to damages." (Opp. 6.) Instead, Waymo has continued to hide the ball, serving interrogatory responses that obfuscate Waymo's actual damages theories, and resisting Uber's repeated requests for damages discovery.

Since Uber served its document requests in May 2017, Uber has repeatedly had to force Waymo to produce damages-related discovery, including by seeking relief before Judge Corley *twice* so far. (*See* Dkt. 808 (7/6 Order) at 2 (granting Uber's motion to compel Waymo to produce documents responsive to RFPs related to "damages/relief issues"); Dkt. 832 (7/7 Order) at 3 (granting Uber's motion to compel Waymo to produce documents regarding Waymo's relationship with Lyft because "documents are relevant to Plaintiff's claim of damages").) Waymo's counsel continues to refuse to search for or produce *any* emails concerning, among other things, "Waymo's 'financial ability' and 'performance,'" and Waymo's business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and investment plans for its ride-sharing business, including projections for revenue generation and profitability. (Dearborn Reply Decl. Ex. 2 (7/19 1:39pm M. Baily email ("Waymo will not agree to do that")).) This information is plainly relevant to Waymo's damages. And contrary to its representation that Uber already has "virtually all" relevant damages information, Waymo continues to withhold documents and revise its interrogatories. (Dkt. 934-7 (Judah Decl. Ex. 6) at 4–5; *see also* Dearborn Reply Decl., Ex. 3 (7/21 L. Cooper 5:15pm email (stating that Waymo "expects to produce additional information regarding damages early next week")).) In short, Waymo has not come close to producing everything Uber has requested.

Waymo also exaggerates the significance of the damages-related documents it has produced to date. For example, Waymo's motion makes much of the "nearly 4000 rows of Waymo financial information" it produced weeks after the June 21 initial-disclosure deadline (Opp. 11), referring to a spreadsheet of indecipherable content that Waymo cited in its July 13 supplemental response to Uber's interrogatories. The document offers virtually no context for

interpreting its contents. As best as Uber can tell, this spreadsheet identifies ***every single cost*** associated with Waymo's Chauffeur program from 2009 to the present, including legal fees, marketing, and driver instruction. (*See also* Dearborn Reply Decl., Ex. 3 (7/21 L. Cooper 5:15pm email (describing the document as "the costs Waymo has incurred in developing its asserted trade secrets on a month-by-month basis, broken down by cost center")).) Notably, the spreadsheet does not break down costs on a trade-secret-by-trade-secret basis. When Waymo narrows its list of trade secrets by August 1, (Dkt. 563 at 4), the spreadsheet will be even more useless than it is today. In any event, Waymo was and remains required to do more than throw confounding raw data at Uber. *Baca*, 2016 WL 234399 at *5. It was required to provide a damages computation. FED. R. CIV. P. 26(a)(1)(A)(iii). None of the "nearly 4000 rows of Waymo financial information" provide that.

Waymo also points to two of its interrogatory responses to claim that Uber has already received Waymo's financial information. (Opp. 6 (citing Judah Decl., Exs. 6 and 7 (Interrogatory Nos. 6 and 13)).) Though lengthy, these interrogatory responses say little of substance. They largely recite categories of damages, and then go to great lengths to preserve Waymo's flexibility to change its theories later.

In its response to Uber's contention interrogatory on damages (Interrogatory No. 13), for example, Waymo has stated that it will seek damages in the form of unjust enrichment, and its interrogatory response generally identifies four alternative measures of such relief, but Waymo does not identify which measure (or combination of measures) it will actually apply in this case. (Dkt. 934-7 (Judah Decl., Ex. 6) at 9–12.) The same is true of Waymo's claim for a reasonable royalty: Waymo does not tell Uber what form that royalty will take, hedging its bets by claiming that it will either be "in the form of a lump sum payment or a running royalty rate, or a combination of both." (*Id.* at 15 (trade secrets), 23 (remaining patent).) Waymo also fails to disclose the theory underlying its royalty claim, saying that it may take a "analytical approach and/or a hypothetical negotiation approach," by reference to extremely broad categories of documents, such as those "recognized as relevant to the determination of a reasonable royalty in cases such as *Georgia-Pacific*, among others." (*Id.* at 15 (trade secrets), 25 (patent).) Tellingly,

while Waymo spends eleven additional pages cutting-and-pasting some of the factors its expert may consider (*id.* at 14–28), **nowhere** does it identify the "claimed royalty rate" or "claimed royalty base," or multiply "the two for a total, specifying the information by year," which "can and should [have been] done" at least preliminarily in Waymo's initial disclosures. *Brandywine*, 2012 WL 5504036, at *2.

Equally unenlightening is Waymo's response to Uber's Interrogatory No. 6, concerning the "time to develop each of its trade secrets," (Opp. 2), which Waymo identified, along with the spreadsheet identified above, as the "damages-related discovery" referenced in its Opposition. (Dearborn Reply Decl. Ex. 3 (7/21 L. Cooper 5:15pm email).) First, the information in this response describes documents and information within Waymo's control; there is no reason why Waymo did not include this information in its June 21 initial disclosures other than to sandbag Uber. And Waymo continues to update this interrogatory response, including as recently as July 21, without making the required showing of good cause that is required to amend a party's initial disclosures. (Dearborn Reply Decl. ¶¶ 5-6, Ex. 4 ("Second Supplemental Response to Interrogatory No. 6," served on July 21, 2017).)

Second, this information is obviously not all of the information Waymo will rely on for its damages computations, as it provides only a subset of the costs Waymo allegedly incurred. Because it does not provide any computation of any form of legally available damages, it could not substitute for the disclosures required under Rule 26.

Third, this disclosure is broad and ambiguous. Buried in 111 pages of boilerplate, Waymo has estimated that it spent ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is not clear from this interrogatory whether these values are cumulative or overlapping. Nor is it clear whether or how these numbers will figure into any damages "computation." Nor is it clear which of these are the "less than ten" trade secrets that Waymo plans to take to trial. (Dkt. 563 at 4.) But assuming that Waymo may seek to recoup as damages some percentage of the value it spent on these trade secrets (which is an assumption Uber cannot

9

make and does not know, and would almost certainly be improper), all Uber can guess is that Waymo may be seeking somewhere between zero ▓▓▓▓▓▓▓▓▓▓ Thus, Waymo's interrogatory response does nothing more than hide Waymo's true damages calculations. This is the opposite of what Rule 26 requires of all litigants.

Moreover, neither of Waymo's interrogatory responses contain any information *whatsoever* about lost profits, a form of damages Waymo claimed in its inadequate initial disclosures, and which Uber has been left to speculate about in preparation for trial ever since. (*Compare* Dkt. 797-2 (Pritt Decl., Ex. A) at 18 *with* Dkt. 934-7 (Judah Decl., Ex. 6) at 9–28.) While Waymo has since disclaimed lost profits as a measure of damages for its patent claims (Dkt. 934-7 (Judah Decl., Ex. 6) at 23), it is unclear whether it is disclaiming this measure for its trade secret claims. To the extent Waymo is attempting to reserve the right to add lost profits back into the case in at a later time, this is a particularly egregious violation of the rules. *All* of the information required to calculate lost profits is, and remains, in Waymo's control. (*See* Dkt. 797-2 (Pritt Decl. Ex. A) at 18.)

In short, even if Waymo could use its interrogatory responses as a replacement for its initial disclosures, these responses still fall far short. To this day, Waymo has not provided a meaningful computation of any category of damages, flouting Rule 26 and the Court's orders, and continuing to deprive Uber and the Court of an understanding of what this case is allegedly "worth." *Corning*, 306 F.R.D. at 278.

Waymo chose to bring this case, and it demanded an expedited trial and "bone-crushing" discovery schedule. (Dkt. 731 (7/18 Order) at 3.) It must comply with the rules. Without adequate disclosures by Waymo, Uber is left with the shifting sands of discovery as Waymo repeatedly claims that its theories, numbers, and responses are subject to constant change. This hide-the-ball approach is inequitable and unfair, and has prejudiced Uber.

## V. The Only Meaningful Remedy at This Point Is Preclusion.

### A. As the Court Has Correctly Observed, Preclusion Is the Proper Remedy for Failure to Provide Adequate Initial Disclosures.

The Court has repeatedly cautioned the parties that the remedy for failure to make

adequate initial disclosures is preclusion. The Court specifically ordered, in permitting the parties to amend their initial disclosures, that failure to provide adequate damages disclosures by the court-ordered June 21, 2017 deadline would be "on pain of preclusion." (Dkt. 563 ¶ 1.) The Court further emphasized that any amendment beyond that deadline would require the party supplementing its disclosures to "throw" itself "on the mercies of the court and do supplements for good cause." (Dkt. 625 (6/7/2017 Hr'g Tr.) 69:2–72:9.) The Federal Rules likewise call for preclusion. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."); *Brandywine*, 2012 WL 5504036, at *1 ("plaintiff must nonetheless do the best it can on pain of preclusion").

To begin with, Waymo has not even purported to seek leave of Court to serve belated initial disclosures, or to make the required showing of good cause. Rather, Waymo simply announced in its opposition to this motion that it "always anticipated updating its disclosures" after Uber's document production in late July, as if the Court's words and the Federal Rules' requirements meant nothing. (Opp. 9.)

Contrary to Waymo's suggestion (Opp. 11–12), courts will not hesitate to preclude a party from advancing a damages claim when the party's initial damages disclosures were inadequate. *E.g.*, *Gilvin v. Fire,* No. 99-CV-530, 2002 WL 32170943 at *3 (D.D.C. Aug. 16, 2002) (applying Rule 37 to preclude damages evidence where plaintiff failed to "provide a computation of such damages in accordance with" Rule 26); *Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Fin. Corp.*, 2005 WL 977850, at *1 (S.D.N.Y. Apr. 28, 2005) (precluding plaintiff from presenting new damages theory, even though it was disclosed before the close of fact discovery; disclosure was "simply too late"); *Baca*, 2016 WL 234399 at *5 (precluding damages in an order 82 days from trial, where plaintiff had made inadequate disclosures).

**B.     Waymo's Failures Are Neither Substantially Justified Nor Harmless.**

Preclusion is the right remedy here because Waymo's failure to provide adequate initial damages disclosures was neither substantially justified nor harmless. FED. R. CIV. P. 37(c). Once Uber identified the inadequacies of Waymo's initial disclosures, the burden shifted to Waymo to

11

explain why the failure was substantially justified or harmless. *Baca*, 2016 WL 234399, at *3. Waymo has done neither and preclusion is therefore appropriate.

### 1. Waymo's Failure Was Not Substantially Justified.

The only excuse Waymo offers for its inadequate disclosures is that it was waiting for Uber to provide some discovery first in order to "inform" its damages computation. (Opp. 6.) This is not a valid excuse: Waymo was required to disclose the computation available at that time, along with the information on which that computation was based, as of the deadline, even if that computation would later be amended. *Brandywine*, 2012 WL 5504036, at *2–3. Indeed, under Rule 11, Waymo had to have had at least some computation to even claim damages in the first place, which it was unquestionably required to disclose under Rule 26.

Waymo also argues that "fairness and equal treatment" dictate that Waymo "should have an opportunity to amend its disclosures." (Opp. 7.) To be clear, Waymo has had *two* opportunities to serve adequate disclosures, and then gave itself a third opportunity with its belated "corrected supplemental initial disclosures." It has failed now three times. In an effort to distract from its own failings, Waymo engages in a gratuitous description of separate disputes relating to Uber's privilege logs (Opp. 7–8), the characterization of which Uber disputes. In any event, Waymo cites no rule or case for the proposition that Rule 26 violations may be offset by legitimate, unrelated disputes about the nature and scope of the attorney-client privilege.

Nor were there any failures in Uber's own Rule 26 disclosures, never mind any that would substantially justify Waymo's own deficient disclosures. (Opp. 8.) Waymo would have this Court equate Uber's purported failure "to provide contact information for Anthony Levandowski other than identifying his counsel of record" (*id*.) with Waymo's failure to provide any damages computation at all to this day. Not only is that argument absurdly lopsided, but the lone "defect" Waymo identifies in Uber's disclosures is not a defect at all. (*Id*.) The rules say that a party must provide the name and, "if known," contact information for each individual likely to have discoverable information. FED. R. CIV. P. 26(a)(1)(A)(i). At the time of the revised disclosures, on June 21, 2017, Levandowski was no longer an Uber employee and had not for some time been under Uber's control. Waymo itself did not list any address for several third-party witnesses,

including third-party Stephanie Olsen, "Anthony Levandowski's life partner," and Waymo listed no non-business address for any witness. (*Id*. at 17.) Moreover, Waymo has not had any difficulty in getting in touch with Mr. Levandowski through his counsel. In any event, this one "defect"—which is not a violation of the rules—bears no comparison to Waymo's refusal to provide meaningful information about its damages claims, as required by Court Order and the rules.

Finally, Waymo claims its failure was substantially justified because it always intended to provide an adequate damages disclosure after it received additional discovery from Uber—more than a month after the Court's mandated deadline for amending initial disclosures. (Opp. 9–10.) This excuse fails as a matter of law for the reasons described above. "A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures." FED. R. CIV. P. 26(a)(1)(E).

### 2. Waymo's Failure Was Not Harmless.

As described above, Uber still does not have an adequate disclosure of Waymo's damages computations and supporting documents. Waymo's deficient initial disclosures and continued violation of the rules has not been harmless. To the contrary, it has resulted in significant and ongoing prejudice to Uber's ability to defend itself.

*First*, as described above, without accurate and complete disclosures, Uber cannot adequately prepare its discovery requests, its expert reports, or its case for trial. Under the compressed schedule that Waymo demanded, Uber has now lost the opportunity to craft appropriate discovery before the cutoff, and Uber will have just fourteen days to respond to "complicated" and "new" theories that Waymo has been cooking up for months.

*Second*, the proper scope of discovery and resolution of discovery disputes in this case hinge on the question of whether the request is "proportional to the needs of the case." FED. R. CIV. P. 26 (b)(1). It is impossible for Uber, the Special Master, or the Court to adequately gauge whether discovery is proportional if Waymo refuses to explain what it believes its case is worth. *Corning*, 306 F.R.D. at 279 ("Even if Solid were willing to wait to find out what this case is worth—which it is not—the court still needs to know as it resolves the parties' various discovery-

related disputes. Proportionality is part and parcel of just about every discovery dispute."). Waymo claims that "patentees need lots of information from accused infringers," citing *Corning*, but omits Judge Grewal's immediate following sentence: "the expense of producing lots of information can only be justified by a meaningful calculation suggesting that substantial dollars are actually at stake." *Id.* at 278. Under the recently revised Federal Rules, an early computation of damages is necessary to determine proportionality in ongoing discovery disputes.

***Third***, without Waymo's damages computation, Uber has been unable to accurately determine the value of this case for settlement. FED. R. CIV. P. 26, 1993 adv. comm. note.

**VI.    Waymo's Late-Disclosed Witnesses Are an Independent Violation of Rule 26.**

Waymo devotes only seven lines to attempting to justify why it disclosed fourteen witnesses after the Court's deadline. It cites no case law to support its late disclosure. Rather, Waymo relies on the unsupported assertion that Uber has not suffered prejudice and that Waymo's conduct was "inadvertent." (Opp. 13.) Waymo submitted no attorney declaration explaining this "inadvertent" mistake. *Klamut v. Nibecker*, No. 15-CV-02132-MEJ, 2017 WL 1196725, at *2 (N.D. Cal. Mar. 31, 2017) (requiring a declaration from counsel to establish excuse under Rule 37). But even if it had, "inadvertence . . . do[es] not substantially justify failure to comply with the rules." *Baker v. W. Contra Costa Sch. Dist.*, No. C-11-02529-WHA, 2011 U.S. Dist. LEXIS 127406, at *5 (N.D. Cal. Nov. 3, 2011). Waymo has failed to establish the good cause required for supplementation. (Dkt. 625 (6/7/2017 Hr'g Tr.) 69:2–72:9.)

What happened here is obvious. Waymo waited to see Uber's disclosures and then decided to add names after doing so. Uber was prejudiced by this delay because Waymo gained the benefit of reviewing Uber's timely filed disclosures before making the strategic decision about which witnesses to include. Waymo does not disclaim this. Simultaneous disclosures impose discipline and mutuality, requiring the parties to identify their case-in-chief without cheating off the other side's homework. *See Maine v. Kerramerican, Inc.*, No. CV-04-191-B-W, 2007 WL 731306, at *3 (D. Me. Mar. 6, 2007) (imposing sanctions under Rule 37 where "[h]olding back this information was a deliberate attempt to gain a strategic advantage from non-disclosure and violates the spirit of the Court's orders and the rules of civil procedure"). Waymo

did not comply with the Court's orders and has no excuse—plain and simple.

## CONCLUSION

The Court gave both parties the express instruction to "complete[]" initial disclosures by June 21, 2017 "on pain of preclusion." (Dkt. 563¶ 1.) The Case Management Order can only be modified by a showing of good cause—a showing that Waymo has not even attempted to make. Uber' ability to defend against Waymo's damages claims has already been irreparably undermined. Under the circumstances, the Court is fully within its authority to preclude Waymo from seeking damages at trial, to preclude Waymo's reliance on the late-disclosed witnesses, and to strike Waymo's untimely filing. Uber respectfully requests it do so.

Dated: July 24, 2017                MORRISON & FOERSTER LLP
                                    BOIES SCHILLER FLEXNER LLP


                                    By: */s/ Karen L. Dunn*
                                         KAREN L. DUNN

                                    Attorneys for Defendants
                                    UBER TECHNOLOGIES, INC. and
                                    OTTOMOTTO LLC