# EXHIBIT 3

| | |
|---|---|
| **From:** | Lindsay Cooper <lindsaycooper@quinnemanuel.com> |
| **Sent:** | Friday, July 21, 2017 5:15 PM |
| **To:** | Maxwell Pritt; John Cooper |
| **Cc:** | QE-Waymo; UberWaymoMoFoAttorneys; Matthew Cate; BSF_EXTERNAL_UberWaymoLit; DG-GP Otto Trucking Waymo |
| **Subject:** | RE: Waymo/Uber - Request for Meet and Confer |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Maxwell,

Waymo produced over 4,000 rows of cost information at WAYMO-UBER-00027045, which describes the costs Waymo has incurred in developing its asserted trade secrets on a month-by-month basis, broken down by cost center. The rest of the information you seek regarding Waymo's estimate of the time it took to develop each of its trade secrets, Waymo's estimate of the cost incurred to develop each trade secret, and Waymo's explanations for those figures, is contained in Waymo's response to Interrogatory No. 6 and the documents cited therein.

Waymo expects to produce additional information regarding damages early next week.

Lindsay

**From:** Maxwell Pritt [mailto:mpritt@BSFLLP.com]
**Sent:** Wednesday, July 19, 2017 10:25 AM
**To:** John Cooper <JCooper@fbm.com>
**Cc:** QE-Waymo <qewaymo@quinnemanuel.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; Matthew Cate <MCate@fbm.com>; BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; DG-GP Otto Trucking Waymo <DG-GPOttoTruckingWaymo@goodwinlaw.com>
**Subject:** RE: Waymo/Uber - Request for Meet and Confer

That works for me, thanks John.

We also request that Waymo let us know on the call at 11:00am today if they will provide bates numbers (or at least the production date(s)) for the damages-related discovery they refer to in their opposition to Defendants' motion to enforce the Court's June 7, 2017 order. (*See* Dkt. 934 at 12 ("Uber has Waymo information provided in response to Uber's damages-related discovery (including nearly 4000 rows of Waymo financial information broken out by month and cost center, Waymo's estimate of the time it took to develop each of its trade secrets, Waymo's estimate of the cost incurred to develop each trade secret, and Waymo's explanations for those figures).").  For example, we have not been able to locate the "nearly 4000 rows of Waymo financial information" referred to in the opposition.

Best,
Max

**From:** John Cooper [mailto:JCooper@fbm.com]
**Sent:** Wednesday, July 19, 2017 10:18 AM
**To:** Maxwell Pritt
**Cc:** QE-Waymo; UberWaymoMoFoAttorneys; Matthew Cate; BSF_EXTERNAL_UberWaymoLit; DG-GP Otto Trucking

1

Waymo
**Subject:** RE: Waymo/Uber - Request for Meet and Confer

I know it is short notice but can we have a meet and confer call at 11:00 am this morning.  Call in 888 759 6039 access 415 954 4410?  John

---

**From:** Maxwell Pritt [mailto:mpritt@BSFLLP.com]
**Sent:** Tuesday, July 18, 2017 10:00 PM
**To:** Cooper, John (19) x4410
**Cc:** QE-Waymo; UberWaymoMoFoAttorneys; Cate, Matthew (20) x4469; BSF_EXTERNAL_UberWaymoLit; DG-GP Otto Trucking Waymo
**Subject:** Waymo/Uber - Request for Meet and Confer

Dear John and Counsel,

Pursuant to Judge Corley's order (Dkt. 923 at 2), Uber requests a further meet and confer at 10:00 a.m. tomorrow on Waymo's exclusion of Google and Alphabet.  In particular, we would like Waymo to reconsider its exclusion of Google/Alphabet in searching for documents responsive to RFPs 3-5, 18, 20, 23, 27, 29, 30, 38-43, 61, 62, 90-95, 114, 125-128, 147-151, 153, 156, and 157, and to produce any Google/Alphabet documents responsive to these requests.

We would also like a response to my July 8 email about RFPs 61, 62, 90-94, and 96-97. We have asked several times for Waymo to confirm it will search custodians' files, including email, for non-privileged documents responsive to these requests.  (Waymo already confirmed that it would do so for RFPs 96 and 97, which we assume remains the case.)

**RFPs 3 and 4 (1st Set)**:  These RFPs seek documents sufficient to show how often Waymo engineers downloaded documents (RFP 3) and the number of times Waymo employees downloaded more than 10,000 files at one time (RFP 4).  You wrote in your July 10 email that "Waymo provided six months of [Google] Drive download data from 20 of Levandowski's former engineer colleagues, as well as more than a year's worth of unfiltered SVN log data." You also wrote in your July 14 email that you've offered to produce additional documents.  And in ordering the parties to meet and confer on Waymo's exclusion of Google and Alphabet documents, Judge Corley stated only that "it would not be reasonable for Uber to insist that Waymo conduct a search involving every single Google engineer for the past *seven* years."  (Dkt. 923 at 2 (emphasis added).)  Please confirm you will produce Google Drive download data from all Waymo, Google and Alphabet engineers from December 2013 to December 2016, and confirm there are no other drives or sources from which such engineers download files that contain alleged trade secrets.  Please also confirm that you will produce SVN log data for all Waymo, Google, and Alphabet employees who downloaded more than 10,000 files at one time from December 2013 to December 2016.  Please also confirm employees did not download more than 10,000 files at one time from servers with alleged trade secrets other than the SVN.

**RFPs 5, 18, 20, 23, 27, 29, 30, and 114 (1st Set):**  These RFPs seek documents relating to whether Waymo's asserted trade secrets are in fact trade secrets (RFPs 18, 20, 23, 27, 29, 30), and Waymo's efforts (or lack thereof) to safeguard its trade secrets (RFPs 5, 18, 114).  You wrote in your July 10 email that "development of Waymo trade secrets took place entirely inside of Waymo," and thus "[t]here is no good reason to search Alphabet, other than within its self-driving car business, for documents concerning development efforts exclusive to its self-driving car business."  Are you representing that, because "development of Waymo trade secrets took place entirely inside of Waymo," there are no responsive documents concerning Waymo's trade secrets are located at Google or Alphabet?  Further, these requests do not simply concern Waymo's "development efforts" for its asserted trade secrets but the protections, or lack thereof, that Waymo applied to its asserted trade secrets, and the extent to which Waymo's asserted trade secrets are based on public information or third party's technology or information.  Please confirm that you will produce all responsive documents regardless of whether they're located at Waymo, Google or Alphabet.

**RFPs 38-43, 125-128 (1st Set):**  These RFPs seek documents and communications relating to side businesses and projects.  Judge Corley already ordered Waymo to produce responsive documents for "employees in Google/Waymo's self-driving car businesses."  (Dkt. 808 at 2.)  That includes any Alphabet or Google executives that oversee or manage

Google/Waymo's self-driving car business, including Larry Page who we already know has responsive documents. Please confirm that you will produce documents responsive to these RFPs for any Alphabet or Google executives that have any managerial or oversight role of the self-driving car business.

**RFPs 61 and 62 (1st Set):** RFPs 61 and 62 seeks documents relating to Waymo's financial viability and performance. Your wrote in your July 10 email that "[t]o search for documents concerning *Alphabet*'s finance and performance would mean searching for documents concerning the performance of Search, Gmail, and other Alphabet entities with nothing to do with this case." These requests do not seek documents concerning Alphabet's or Google's finance and performance. They do, however, seek documents concerning Waymo's financial viability and performance *regardless of whether they're located at Google or Alphabet*. For example, if Alphabet executives have documents relating to Waymo's financial viability and performance, those documents should be produced. Please confirm that you will produce all responsive documents regardless of whether they're located at Waymo, Google or Alphabet.

**RFPs 90-95 (1st Set) and 157 (2nd Set):** These documents concern the ride-sharing market and business. You wrote in your July 10 email that "[t]o the extent any other areas of Alphabet are engaged in the ride-sharing business without connection to Waymo or this suit, those areas are irrelevant." You did not include a relevance objection in your responses to these RFPs, however, and thus the objection is waived. Regardless, to the extent "other areas of Alphabet" are engaged in the ride-sharing market, it is relevant to Uber's defenses in this case and the issue of damages. Indeed, Waymo served almost identical requests on Uber in connection with its belated damages-related discovery. As Judge Corley already held, "Defendants are entitled to develop their own defense to Plaintiff's claims for relief and need not rely solely on what Plaintiff contends is relevant." (Dkt. 832 at 3.) Please confirm that you will produce all responsive documents regardless of whether they are located at Waymo, Google or Alphabet.

Also, you listed RFP 89 in your July 10 email, but that RFP does not concern ride-sharing. Please confirm that was a typo.

**RFPs 147-151, 153, and 156 (2nd Set):** These RFPs seek documents and communications related to Lyft. You wrote in your July 10 email that Waymo would search only Waymo sources because Judge Corley stated in granting Uber's motion to compel that "Plaintiff and Lyft entered into the deal," and thus, according to your email, "[t]o the extent that Alphabet may have had communications or negotiations with Lyft unrelated to the Waymo/Lyft deal, they are irrelevant." You seem to be suggesting that these RFPs only concern "the Waymo/Lyft deal" announced in May 2017. That is true only for RFPs 150, 151, and 153, which seek any letter of intent/interest, term sheet, and analyses or due diligence relating to that deal. Please confirm that you will produce those documents if Judge Corley's order is confirmed regardless of whether such documents are located at Waymo, Google or Alphabet.

For RFPs 147-149 and 156, however, those requests are not limited "to the Waymo/Lyft deal," and Judge Corley imposed no such restriction. These RFPs seek all communications with Lyft about past, current or potential competition with Uber (RFP 147); all documents relating to Waymo's analysis of Lyft as a potential acquisition target (RFP 148); all agreements with Lyft regarding autonomous vehicles (RFP 149); and documents sufficient to identify the first date Waymo began discussing any potential merger or agreement with Lyft (RFP 156). As Judge Corley explained, these "documents are relevant to Plaintiff's claim of damages" and "request for permanent injunctive relief." Judge Corley also rejected your suggestion that responsive Alphabet or Google documents "unrelated to the Waymo/Lyft deal" are irrelevant: "Defendants are entitled to develop their own defense to Plaintiff's claims for relief and need not rely solely on what Plaintiff contends is relevant." (Dkt. 832 at 3.) Please confirm you will produce documents responsive to RFPs 147-149 and 156 regardless of whether such documents are located at Waymo, Google or Alphabet.

**RFP 163 (3rd Set):** You responded to RFP 163 ("All Documents and Communications relating to any anticipated or actual payments owed or made to Anthony Levandowski under the Project Chauffeur bonus program") that you searched for documents "regardless of whether that location is exclusive to Waymo LLC" and have already produced all responsive documents. However, we have located only four documents in Waymo's productions with Anthony Levandowski as a custodian that even reference "bonus," and none are responsive to RFP 163. Please confirm that you searched the custodial files and emails of former Project Chauffeur employees, including Anthony Levandowski, Chris Urmson, Bryan

3

Salesky, and Sebastian Thrun; Google employees, including Chelsea Bailey; and Alphabet executives, including Larry Page, for documents and communications relating to Project Chauffeur bonus payments owed or made to Levandowski.

Finally, please confirm that you will supplement your responses to Uber's discovery requests with the list of requests for which you excluded Google and Alphabet as reflected in your July 10 email, and that you will supplement your responses to correct the typo in your response to RFP 53, which Andrea confirmed was a typo in her July 3 email.

Regards,
Max

---

**From:** Jeff Nardinelli [mailto:jeffnardinelli@quinnemanuel.com]
**Sent:** Friday, July 14, 2017 4:45 PM
**To:** Maxwell Pritt; John Cooper
**Cc:** QE-Waymo; UberWaymoMoFoAttorneys; Matthew Cate; BSF_EXTERNAL_UberWaymoLit; DG-GP Otto Trucking Waymo
**Subject:** RE: Waymo/Uber - Pending Discovery Motion

John,

We're going in circles here and I won't make it worse by addressing Max's multiple points below.  The parties have submitted their briefs to Judge Corley, including on ripeness.  We believe it would be improper for you to take up Uber's invitation to weigh in with Judge Corley on Uber's behalf.

Thanks,
Jeff

---

**From:** Maxwell Pritt [mailto:mpritt@BSFLLP.com]
**Sent:** Friday, July 14, 2017 3:59 PM
**To:** Jeff Nardinelli <jeffnardinelli@quinnemanuel.com>; John Cooper <JCooper@fbm.com>
**Cc:** QE-Waymo <qewaymo@quinnemanuel.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; Matthew Cate <MCate@fbm.com>; BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; DG-GP Otto Trucking Waymo <DG-GPOttoTruckingWaymo@goodwinlaw.com>
**Subject:** RE: Waymo/Uber - Pending Discovery Motion

John,

That is absurd and contrary to our numerous meet-and-confer discussions on this issue.  The reason we raised the issue of Waymo's limitation on its searches for responsive documents to begin with is because we objected to *any* application of Waymo's general objection (limiting "Waymo" to Waymo employees), and requested that Waymo "*produce* responsive documents in the possession, custody, or control of Google or Alphabet."  (7/1 7:36pm Takashima Email (emphasis added).)  We raised this issue repeatedly over several meet and confer calls (a number of which Jeff did not attend), and withheld moving to compel until Waymo finally provided us with a list of the RFPs for which it had applied its improper limitation; a list we had to request repeatedly.  The suggestion that we never asked for additional documents is specious.  And the "offer" that Jeff refers to below is beside the point—it's an offer to *Otto Trucking* in response to *Otto Trucking*'s RFPs 15 and 19, not as Jeff falsely states Uber's RFP 3 (*see* attached)  and only an offer to produce documents from additional "*Waymo*" employees.  (Nonetheless, to the extent Waymo has withheld responsive "*Waymo*" documents, it must produce them immediately.)  I stated more than once on Monday's meet and confer that our motion would include the RFPs that Waymo was going to belatedly identify.  You agreed and authorized us to move on those RFPs since we cannot continue to delay these issues.  We again respectfully request that you inform Judge

4

Corley that the parties met and conferred on the issues and RFPs identified in Uber's motion to compel, and that they are ripe for resolution now.

Best,
Max

---

**From:** Jeff Nardinelli [mailto:jeffnardinelli@quinnemanuel.com]
**Sent:** Friday, July 14, 2017 2:29 PM
**To:** Maxwell Pritt; John Cooper
**Cc:** QE-Waymo; UberWaymoMoFoAttorneys; Matthew Cate; BSF_EXTERNAL_UberWaymoLit; DG-GP Otto Trucking Waymo
**Subject:** RE: Waymo/Uber - Pending Discovery Motion

John,

That is not what happened.  Uber asked us to list the RFPs in response to which we had limited our search to "Waymo."  We tried to be helpful by doing so.  Uber turned around the next day and filed a motion on a large number of those RFPs, including RFPs that the parties had never discussed.  And even on the RFPs that the parties did discuss – RFP Nos. 3 and 95 are the only ones shown in the numerous emails on the issue that Uber attached to its brief – Uber never asked for additional responsive documents, but merely asked Waymo to identify its search efforts relating to those RFPs.

In fact, with respect to RFP No. 3 concerning Drive download data, Waymo offered *on June 21* to produce additional documents:

> Waymo has already produced documentation of Drive downloads from roughly 20 members of Project Chauffeur over a six-month period.  *See, e.g.,* WAYMO-UBER-00001963.  To the extent that Otto Trucking seeks "representative" download behavior of Waymo employees, statistical principles demonstrate that you already have it.  We are nonetheless willing to make a reasonable additional production of the same type of Drive data.

Defendants never took us up on our offer.  Instead they moved to compel.

Thanks,
Jeff

---

**From:** Maxwell Pritt [mailto:mpritt@BSFLLP.com]
**Sent:** Friday, July 14, 2017 12:44 PM
**To:** John Cooper <JCooper@fbm.com>
**Cc:** QE-Waymo <qewaymo@quinnemanuel.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; Matthew Cate <MCate@fbm.com>; BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; DG-GP Otto Trucking Waymo <DG-GPOttoTruckingWaymo@goodwinlaw.com>
**Subject:** Waymo/Uber - Pending Discovery Motion

John,

In the opposition to Uber's motion to compel (Dkt. 868) that Waymo just filed (Dkt. 985), Waymo states: "Uber did not meet and confer with Waymo about some of these Requests prior to filing its motion, and Uber's motion should be denied on that basis."  As you, and Waymo, know that is false.  We repeatedly met and conferred on the issue of

5

Waymo's refusal to "search custodians and/or sources beyond those identified with Waymo," including as to RFP 3 (which Waymo also falsely states we raised for the first time in our motion) and RFP 95.  Waymo agreed on Monday's meet and confer that we were at an impasse on its "Waymo" limitation on RFPs, including RFP 3, RFP 95, *and* any other RFPs that Waymo finally identified later that evening.  You authorized us to file our motion on those RFPs and agreed that the parties could not continue to meet and confer on this issue and these RFPs.  <u>We ask that you inform Judge Corley that the parties did met and confer on these issues and RFPs, and that they are ripe for resolution now</u>.  Waymo cannot be allowed to further delay and prejudice Uber's ability to obtain discovery to which it is entitled.

Thank you,
Max

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]