QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>          Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>          Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S RESPONSE TO UBER AND OTTOMOTTO'S MOTION FOR RELIEF FROM AND EMERGENCY MOTION TO STAY OF NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 881)**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

**UNREDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

This Court should deny Defendants Uber and Ottomotto's (collectively "Uber's") Motion for Relief From and Emergency Motion for Stay of Non-Dispositive Pretrial Order of Magistrate Judge. (Dkt. 811.) Magistrate Judge Corley did not err in finding that the Ottomotto software modules that are identified in sections 2.8, 2.10, and 2.15 of the Ottomotto Disclosure Schedules that are part of the Uber-Ottomotto acquisition agreement are relevant and should be produced. The requested software modules reveal what Uber purchased when it acquired Ottomotto. This is relevant to showing whether Uber acquired Waymo trade secrets, and whether Uber knew it was doing so. They are also within the scope of Waymo's asserted trade secret claims, including specifically a document illicitly downloaded by Mr. Levandowski that describes on a weekly basis the work Waymo was doing, problems faced, solutions and other information regarding the same kind of software modules Judge Corley ordered produced.

## I. THE REQUESTED SOFTWARE MODULES ARE RELEVANT TO SHOW WHETHER UBER ACQUIRED WAYMO TRADE SECRETS.

The five software modules disclosed in the Ottomotto Disclosure Schedules—called ███ ████████████████████████████████████████████████████████████████████ — are part of what Uber acquired when it acquired Ottomotto less than three months after Ottomotto was formed (emphasis added). Thus, they are very relevant to determining *what* Uber acquired, namely whether it acquired Waymo trade secrets. As Waymo explained in its Motion to Compel, one of the confidential Waymo documents downloaded by Mr. Levandowski in January before his resignation is "Chauffeur TL weekly updates – Q4 2015," which is a collection of proprietary information from technical leads across the entire self-driving program – including Waymo's software team. (Dkt. 748-3; *see also* Dkt 25-31 ¶ 26.) The document lists software, including "████████" and "████████." The document describes, on a weekly basis, Waymo's software development, goals, challenges, and accomplishments, including, for example, the "████████" to "████████████████████████████████████████████████████████████ as well as identifying ████████████████ software as including a "████████████████" "████████████████ ████████," and "████████████████████████████████████." (Dkt. 748-3, at 1)

-1-

1  (emphasis added).  Moreover, Ottomotto co-founder Don Burnette, who apparently designed the

2  Ottomotto software in the very short period of time between its founding and acquisition, was one

3  of the five "Diligenced Employees" investigated by Stroz and indemnified by Uber under the

4  April 11 Indemnification Agreement.  (Dkt. 515-5 at 22; Ex. 12.)  Dozens of entries on Uber's

5  privilege logs refer to "information obtained from . . . Don Burnette[.]" (*See*, *e.g.*, Dkt. 637-4 at

6  entries 293-300.)

7        Uber does not dispute any of this in its Objections to the Magistrate's Order.  (Dkt. 929-4.)

8  Instead, Uber argues that Waymo is not entitled to the software modules because they are not

9  related to LiDAR.  (*Id.*, at 2-3.)  Uber made this argument below and the Magistrate correctly

10 rejected it.  Waymo's asserted trade secrets are not limited to LiDAR and Waymo pointed the

11 Court specifically to the trade secrets which the software modules may relate to, including the

12 "Chauffeur TL weekly updates – Q4 2015."  In its Objections, Uber argues that the weekly update

13 spreadsheet does not support expanded discovery and relies on *Loop AI Labs Inc. v. Gatti*, 195 F.

14 Supp. 3d 1107 (N.D. Cal. 2016), which Uber did not cite below.  (Dkt. 748-3, at 3.)  *Loop*,

15 however, is distinguishable and does not mandate denial of Waymo's motion to compel the

16 disclosed software modules.  In *Loop*, the defendant challenged the sufficiency of the plaintiff's

17 trade secret disclosure pursuant to Cal. Civ. Proc. Code § 2019.210.  *Id.*  The Court addressed the

18 sufficiency of the disclosure; the scope of discovery was not at issue.  *Id.*  Here, Uber did not

19 challenge the sufficiency of Waymo's trade secrets, and cannot be heard to complain now about

20 the sufficiency of Waymo's disclosure as a tactic for denying Waymo relevant discovery.

21 **II.   THE SOFTWARE MODULES ARE RELEVANT TO SHOW THAT UBER KNEW IT WAS ACQUIRING WAYMO TRADE SECRETS.**

22

23       The requested software modules identified in the Uber-Ottomotto acquisition agreement are

24 also relevant to Uber's trade secret defenses and what Uber thought it was buying.  Uber began

25 negotiating to acquire Ottomotto before the company was founded, before it had any employees, and

26 before it had any products.  Then, just a few months after Ottomotto was founded, Uber acquired it for

27 $680 million.  Waymo is entitled to know what exactly was worth $680 million; Waymo contends that

28 it was Waymo's trade secrets that justified that impressive price tag.  Uber witnesses have described

the deal as a "talent acquisition," but Waymo is entitled to discovery into what else was part of that acquisition. This is not "fishing" as Uber states in the very first sentence of its Objections. (Dkt. 929-4, at 1.) According to the acquisition documents, Uber did acquire five software modules in the acquisition; Waymo is entitled to know what they are as they are potentially reflective of Waymo's asserted trade secrets in its 2019.210 disclosures.

In its Objections, Uber complains that Waymo has already taken extensive discovery. (Dkt. 929-4, at 3.) But, Uber does not and cannot dispute that it has not provided any discovery on the software modules that Uber acquired as part of the deal. Uber also continues to cloak its entire "due diligence" process under claims of privilege, shielding from Waymo's view the information "Diligenced Employee" Don Burnette provided to Uber/Otto regarding these software modules and his prior work at Waymo. Uber further complains that Waymo requested the software modules as part of the expedited discovery the Court granted to Waymo as provisional relief when granting Waymo's Motion for a Preliminary Injunction. According to Uber, that expedited discovery was limited to Waymo's "trade secret misappropriation claims only." (*Id.*) But, whether the software modules acquired by Uber constitute Waymo trade secrets is directly relevant to whether Uber acquired Waymo's trade secrets, as well as relevant to understanding what Uber thought it was buying and the overall value of the acquisition.

Uber's arguments that the Magistrate Judge erred in ordering production of the software modules identified in sections 2.8, 2.10, and 2.15 of the Ottomotto Disclosure Schedules are without merit. Waymo respectfully requests that this Court deny Uber's request for relief from the Magistrate Judge's Order.

DATED: July 21, 2017                                      QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC