# EXHIBIT 4

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David Perlson (Cal. Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa J. Baily (Cal. Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Cal. Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan R. Jaffe (Cal. Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Attorneys for Plaintiff WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC <br><br> Plaintiff, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC.; OTTOMOTTO, LLC; OTTO TRUCKING LLC, <br><br> Defendants. | Case No. 3:17-cv-00939-JCS <br><br> **PLAINTIFF WAYMO LLC'S FOURTH SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS** <br><br> Honorable William H. Alsup |

**PLAINTIFF'S FOURTH SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS UBER TECHNOLOGIES, INC.; OTTOMOTTO, LLC; OTTO TRUCKING LLC,**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Waymo LLC ("Waymo") request that Defendants Uber Technologies, Inc. ("Uber"), Ottomotto, LLC ("Ottomotto"), and Otto Trucking LLC ("Otto Trucking" (collectively "Defendants"), produce for inspection and copying within thirty days (30) hereof the documents set forth below at the offices

of Quinn Emanuel Urquhart & Sullivan, LLP, 50 California Street, 22nd Floor, San Francisco, California, 94111, or at a place and time as may be agreed to by counsel.

## DEFINITIONS

1. "WAYMO" means Waymo LLC and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and WAYMO's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by WAYMO, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by WAYMO.

2. "GOOGLE" means Google Inc. and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and GOOGLE's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by GOOGLE, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by GOOGLE.

3. "UBER" means Uber Technologies, Inc. and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and UBER's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by UBER, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by UBER.

4. "OTTOMOTTO" means Ottomotto LLC and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and OTTOMOTTO's affiliates, parents, divisions, joint ventures,

1  licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities,
2  whether foreign or domestic, that are owned or controlled by OTTOMOTTO, and all predecessors
3  and successors in interest to such entities, and any entity owned in whole or in part by, affiliated
4  with, or controlled in whole or in part by OTTOMOTTO.  For the avoidance of doubt,
5  OTTOMOTTO includes all former names under which OTTOMOTTO operated, including
6  without limitation 280 Systems, Inc., 280 Systems, LLC, and Ottomotto, Inc.

7       5.    "OTTO TRUCKING" means Otto Trucking LLC and its officers, directors,
8  current and former employees, counsel, agents, consultants, representatives, and any other persons
9  acting on behalf of any of the foregoing, and OTTO TRUCKING's affiliates, parents, divisions,
10 joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any
11 other legal entities, whether foreign or domestic, that are owned or controlled by OTTO
12 TRUCKING, and all predecessors and successors in interest to such entities, and any entity owned
13 in whole or in part by, affiliated with, or controlled in whole or in part by OTTO TRUCKING.

14      6.    "DEFENDANTS" means UBER, OTTOMOTTO, and OTTO TRUCKING.
15      7.    "LEVANDOWSKI" means Anthony Levandowski.
16      8.    "FUJI" means each version or generation of the LIDAR system(s) DEFENDANTS
17 have identified by the name Fuji, including any "precursor" or related projects such as LIDAR 0
18 or Mr. Fast Lens.

19      9.    "SPIDER" means each version or generation of the LIDAR system(s)
20 DEFENDANTS have identified by the name Spider.

21      10.   "OWL" means each version or generation of the LIDAR system(s) DEFENDANTS
22 have identified by the name Owl.

23      11.   "KSHIRSAGAR" means Sameer Kshirsagar.
24      12.   "RADUTA" means Radu Raduta.
25      13.   "MISAPPROPRIATED MATERIALS" refers to all GOOGLE and WAYMO
26 DOCUMENTS and materials, whether digital or physical, and regardless of the manner stored, for
27 which any current or former employee of DEFENDANTS retained possession, without
28

1 authorization of either GOOGLE or WAYMO, after the employee ended his or her employment
2 with GOOGLE/WAYMO.  Without limitation, MISAPPROPRIATED MATERIALS includes at
3 least: (i) each of the more than 14,000 digital files downloaded by LEVANDOWSKI on or about
4 December 11, 2015 from the SVN repository; (ii) each file copied by LEVANDOWSKI from his
5 GOOGLE laptop to an RDF5 USB 3.0 card reader on or about December 14, 2015; (iii) each of
6 the five files that were exported by LEVANDOWSKI from Google Drive to a personal device on
7 or about January 4, 2016; (iv) the file exported by LEVANDOWSKI from Google Drive to a
8 personal device on or about January 11, 2016; (v) the file that was exported by LEVANDOWSKI
9 from Google Drive to a personal device on or about November 19, 2016; (vi) the file that was
10 exported by LEVANDOWSKI from Google Drive to a personal device on or about November 4,
11 2016; each of the five files that were exported by KSHIRSAGAR from Google Drive in or around
12 June and July 2016; (vii) each of the three files that were exported by RADUTA from Google
13 Drive on or around July 28, 2016.

14        14.    "LiDAR" means Light Detection and Ranging.

15        15.    "ASSERTED PATENTS" means U.S. Patent Nos. 8,836,922; 9,368,936;
16 9,285,464; and 9,086,273.

17        16.    "PCB" means printed circuit board.

18        17.    "DOCUMENTS" shall INCLUDE, without limitation, all written, graphic or
19 otherwise recorded material, INCLUDING without limitation, electronically stored information
20 regardless of the form of storage medium, microfilms or other film records or impressions, tape
21 recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films,
22 recordings, memoranda, books, records, accounts, communications, letters, telegrams,
23 correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office
24 memoranda or written communications of any nature, recordings of conversations either in
25 writings or upon any mechanical or electrical recording devices, INCLUDING e-mail, notes,
26 papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings,
27 time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone
28

bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, INCLUDING by the addition of handwritten notations or other written or printed matter of any nature, from the original.  The foregoing specifically INCLUDES information stored in a computer database and capable of being generated in documentary form, such as electronic mail, text messages (i.e., SMS messages), other electronic messages including messages sent or received via Slack, WhatsApp, Google Hangouts, Facebook Messenger, and the like.

18. "COMMUNICATIONS" shall mean, without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, DOCUMENT, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail ("e-mail").

19. "THING" means any tangible object, other than a DOCUMENT.

20. "PERSON" means to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.  The masculine includes the feminine and vice versa; the singular includes the plural and vice versa.

21. "REGARDING" shall mean relating to, referring to, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

22. "INCLUDE" and "INCLUDING" shall mean including without limitation.

23. Use of the singular also INCLUDES the plural and vice-versa.

24. The words "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Requests for Production.

25. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

26. The term "any" shall include "all" and "all" shall include "any."

**INSTRUCTIONS**

The following instructions shall apply to each of the Requests herein:

27. In answering the following Requests, furnish all available information, including information in the possession, custody or control of any of DEFENDANTS' attorneys, directors, officers, agents, employees, representatives, associates, investigators, divisions, affiliates, partnerships, parents, subsidiaries and PERSONS under DEFENDANTS' control, who have the best knowledge, not merely information known to DEFENDANTS based on DEFENDANTS own personal knowledge. If DEFENDANTS cannot fully respond to the following Requests after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each Request that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the Request cannot be answered fully and completely; and state what knowledge, information or belief DEFENDANTS have concerning the unanswered portion of any such Request.

28. All documents must be produced in accordance with the requirements of Federal Rule of Civil Procedure 34(b).

29. Electronic records and computerized information shall be produced in an intelligible format, together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

30. Selection of documents from the files and other sources and the numbering of such documents shall be performed in such a manner as to ensure that the source of each document can be determined.

31. File folders with tabs or labels or directories of files identifying documents shall be produced intact with such documents.

32. Documents attached to each other shall not be separated. All documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all addenda, appendices, attachments and enclosures.

33. If DEFENDANTS' response to a particular Request is a statement that DEFENDANTS lack the ability to comply with that Request, DEFENDANTS shall specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced or stolen, or has never been, or is no longer in DEFENDANTS' possession, custody or control, in which case DEFENDANTS shall identify the name and address of any person or entity known or believed by DEFENDANTS to have possession, custody or control of that information or category of information.

34. DEFENDANTS' obligation to respond to these Requests is continuing, and their responses are to be supplemented to include subsequently acquired information in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

35. To the extent DEFENDANTS can provide separate information for each DEFENDANT, DEFENDANTS should do so.

## DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 266:**

DOCUMENTS sufficient to show UBER's market capitalization and internal valuation of itself on a quarterly basis, from the year prior to the year in which UBER first contemplated developing autonomous vehicles through the present.

**REQUEST FOR PRODUCTION NO. 267:**

DOCUMENTS sufficient to show the impact of developing autonomous vehicles on Uber's internal valuation of itself from the year prior to the year in which UBER first contemplated developing autonomous vehicles through the present.

**REQUEST FOR PRODUCTION NO. 268:**

DOCUMENTS describing UBER's development of autonomous vehicles as necessary to the continued viability of UBER or to the continued viability of any aspect of UBER's business, INCLUDING but not limited to characterizations of a competitor's development or deployment of autonomous vehicles as an existential threat to UBER.

**REQUEST FOR PRODUCTION NO. 269:**

DOCUMENTS sufficient to show each iteration of DEFENDANTS' plan to launch any autonomous vehicles in any geographic region from the time DEFENDANTS first contemplated developing or deploying autonomous vehicles to the present.

**REQUEST FOR PRODUCTION NO. 270:**

DOCUMENTS sufficient to show DEFENDANTS' estimates of the size of the ride-sharing market and DEFENDANTS' share of that market in the United States for each of the last six years on a quarterly basis. To the extent DEFENDANTS break out such estimates by geography (region, city, etc.), those estimates should also be provided.

**REQUEST FOR PRODUCTION NO. 271:**

DOCUMENTS sufficient to show DEFENDANTS' forecasts of the size of the ride-sharing market, the percentage of the ride-sharing market that will be serviced by autonomous vehicles, and DEFENDANTS' share of that market in the United States (by autonomous vehicles and vehicles driven by contractors) for any period of time forecasted by UBER, on a quarterly basis. To the extent DEFENDANTS break out such estimates by geography (country, region, city, etc.), those estimates should also be provided. To the extent DEFENDANTS create different forecasts based on different assumptions, documents REGARDING each forecast – with documents sufficient to show the assumptions for each – should be provided.

**REQUEST FOR PRODUCTION NO. 272:**

DOCUMENTS sufficient to show DEFENDANTS' forecasts REGARDING the number of DEFENDANTS' ride-sharing vehicles in the United States (by autonomous vehicles and vehicles driven by contractors), for any period of time forecasted by UBER —broken out by on a quarterly

basis. To the extent DEFENDANTS break out such estimates by geography (country, region, city, etc.), those estimates should also be provided. To the extent DEFENDANTS create different forecasts based on different assumptions, documents REGARDING each forecast – with documents sufficient to show the assumptions for each – should be provided.

**REQUEST FOR PRODUCTION NO. 273:**

DOCUMENTS sufficient to show DEFENDANTS' business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and investment plans for its ride-sharing business, INCLUDING projections for revenue generation and profitability.

**REQUEST FOR PRODUCTION NO. 274:**

DOCUMENTS sufficient to show DEFENDANTS' business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and investment plans for its autonomous vehicle program, INCLUDING projections for revenue generation and profitability of the autonomous vehicle program.

**REQUEST FOR PRODUCTION NO. 275:**

DOCUMENTS sufficient to show DEFENDANTS' analysis of any barriers to entry in the ride-sharing market and the status of any attempts by DEFENDANTS to enforce such barriers against competitors INCLUDING WAYMO, INCLUDING investments and infrastructure needed.

**REQUEST FOR PRODUCTION NO. 276:**

DOCUMENTS REGARDING DEFENDANTS' discussion of WAYMO or its business, INCLUDING DEFENDANTS' analysis of WAYMO's impact or potential impact on the ride-sharing market or on UBER.

**REQUEST FOR PRODUCTION NO. 277:**

DOCUMENTS sufficient to identify the date that UBER first considered deploying autonomous vehicles.

**REQUEST FOR PRODUCTION NO. 278:**

DOCUMENTS sufficient to identify the date that UBER first considered developing its own autonomous vehicles.

**REQUEST FOR PRODUCTION NO. 279:**

DOCUMENTS sufficient to identify the date that UBER first considered developing its own in-house LiDAR.

**REQUEST FOR PRODUCTION NO. 280:**

DOCUMENTS REGARDING the importance of a first-mover advantage in commercializing autonomous vehicles, INCLUDING any estimates of the market shares of other entrants that are not first to market.

**REQUEST FOR PRODUCTION NO. 281:**

DOCUMENTS REGARDING the importance of LiDAR, INCLUDING the importance of low-cost LiDAR, to DEFENDANTS' ability to compete.

**REQUEST FOR PRODUCTION NO. 282:**

DOCUMENTS REGARDING the relative value of safety (vis-à-vis, for example, cost and timing of entry into relevant markets) in the commercialization of autonomous vehicles.

**REQUEST FOR PRODUCTION NO. 283:**

DOCUMENTS sufficient to show DEFENDANTS' analysis of WAYMO's technological lead REGARDING autonomous vehicle technology (INCLUDING DEFENDANTS' estimates of the time, personnel, and investment needed to close the gap between DEFENDANTS and WAYMO), and documents sufficient to show how DEFENDANTS' analysis or estimates have changed over time.

**REQUEST FOR PRODUCTION NO. 284:**

DOCUMENTS sufficient to show DEFENDANTS' analysis of how WAYMO's technological lead over DEFENDANTS REGARDING autonomous vehicle technology (INCLUDING DEFENDANTS' estimates of the time, personnel, and investment needed to close

the gap between DEFENDANTS and WAYMO) changed after Uber's acquisition of OTTOMOTTO and OTTO TRUCKING.

**REQUEST FOR PRODUCTION NO. 285:**

DOCUMENTS sufficient to show DEFENDANTS' analysis of WAYMO's technological lead REGARDING LiDAR technology (INCLUDING DEFENDANTS' estimates of the time, personnel, and investment needed to close the gap between DEFENDANTS and WAYMO), and documents sufficient to show how DEFENDANTS' analysis or estimates have changed over time.

**REQUEST FOR PRODUCTION NO. 286:**

DOCUMENTS sufficient to show DEFENDANTS' analysis of how WAYMO's technological lead over DEFENDANTS REGARDING LiDAR technology (INCLUDING DEFENDANTS' estimates of the time, personnel, and investment needed to close the gap between DEFENDANTS and WAYMO) changed after UBER's acquisition of OTTOMOTTO and OTTO TRUCKING.

**REQUEST FOR PRODUCTION NO. 287:**

DOCUMENTS sufficient to show DEFENDANTS' comparisons of the cost and profitability of a human-driven versus an autonomous vehicle in a ride-sharing fleet.

**REQUEST FOR PRODUCTION NO. 288:**

DOCUMENTS sufficient to show the historical and current cost of DEFENDANTS' autonomous vehicles, broken down by component, and dating back to the inception of DEFENDANTS' autonomous vehicle program. As noted in the Instructions above, to the extent DEFENDANTS can provide separate information for each Defendant, DEFENDANTS should do so.

**REQUEST FOR PRODUCTION NO. 289:**

DOCUMENTS sufficient to show DEFENDANTS' total financial investment including but not limited to employee time, purchase of capital equipment, and outside consultants, by quarter, into its efforts to develop in-house LiDAR. As noted in the Instructions above, to the

extent DEFENDANTS can provide separate information for each Defendant, DEFENDANTS should do so.

**REQUEST FOR PRODUCTION NO. 290:**

DOCUMENTS sufficient to show DEFENDANTS' investment, in terms of time including but not limited to engineers, software developers, managers, and executives (broken out be each category of employee), into its efforts to develop in-house LiDAR.  As noted in the Instructions above, to the extent DEFENDANTS can provide separate information for each Defendant, DEFENDANTS should do so.

**REQUEST FOR PRODUCTION NO. 291:**

Patent licenses or agreements relating to LiDAR.

**REQUEST FOR PRODUCTION NO. 292:**

DOCUMENTS REGARDING non-infringing alternatives to the patents-in-suit, and the estimated cost (INCLUDING both money and time) of implementing the same.

**REQUEST FOR PRODUCTION NO. 293:**

DOCUMENTS sufficient to show the impact to DEFENDANTS of having to redesign Fuji to avoid using the trade secrets identified in response to UBER's interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 294:**

DOCUMENTS sufficient to show any valuation (whether conducted by UBER or by a third party) of the assets and technology acquired in the acquisition of Otto by Uber, INCLUDING valuations performed for the purpose of purchase price accounting or any other purpose.

**REQUEST FOR PRODUCTION NO. 295:**

DOCUMENTS sufficient to show any DEFENDANTS' projected revenue, gross margin, and operating profit for any division including autonomous vehicles.

**REQUEST FOR PRODUCTION NO. 296:**

DOCUMENTS sufficient to show any the financials, INCLUDING profit and loss statements and balance sheet, for OTTOMOTTO, OTTO TRUCKING, and any division of UBER including autonomous vehicles.

**REQUEST FOR PRODUCTION NO. 297:**

DOCUMENTS sufficient to show DEFENDANTS' approved requests for capital expenditure authorizations related to its autonomous vehicle program, INCLUDING R&D expenditures, technology/equipment acquisitions, and marketing expenditures.

DATED: June 27, 2017               QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP


                                   By:   */s/ Charles K. Verhoeven*
                                        Charles K. Verhoeven
                                        Attorneys for Plaintiff WAYMO LLC.

**PROOF OF SERVICE**

I, James D. Judah, am employed in the County of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 50 California Street, 22nd Floor, San Francisco, California 94111-4788.

On June 28, 2017, I served true copies of the following document(s) described as "Plaintiff's Third Set of Requests for Production to Defendants Uber Technologies, Inc.; Ottomotto, LLC; and Otto Trucking LLC" on the interested parties in this action as follows:

| Recipient | Email Address: |
|---|---|
| Arturo J. Gonzalez<br>Daniel Pierre Muino<br>Eric Akira Tate<br>Esther Kim Chang<br>Matthew Ian Kreeger<br>Michael A. Jacobs<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105<br><br>Michelle Ching Youn Yang<br>MORRISON FOERSTER LLP<br>2000 Pennsylvania Avenue, NW<br>Washington, DC 20006<br><br>Rudolph Kim<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304<br><br>Wendy Joy Ray<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Suite 6000<br>Los Angeles, CA 90017 | UberWaymo@mofo.com |
| Michael Darron Jay<br>BOIES SCHILLER & FLEXNER LLP<br>401 Wilshire Boulevard, Suite 850<br>Santa Monica, CA 90401<br><br>Meredith Richardson Dearborn<br>BOIES SCHILLER FLEXNER | BSF_EXTERNAL_UberWaymoLit@bsfllp.com |

| | |
|---|---|
| 1 | LLP<br>435 Tasso Street |
| 2 | Suite 205<br>Palo Alto, CA 94301 |
| 3 | |
| 4 | Hamish Hume<br>Jessica E Phillips |
| 5 | Karen Leah Dunn<br>Kyle N. Smith |
| 6 | Martha Lea Goodman<br>BOIES SCHILLER FLEXNER |
| 7 | LLP<br>1401 New York Ave., NW |
| 8 | Washington, DC 20005 |

```
 1   LLP
     435      Tasso        Street
 2   Suite              205
     Palo   Alto,    CA    94301
 3
     Hamish Hume
 4   Jessica E Phillips
     Karen Leah Dunn
 5   Kyle N. Smith
     Martha    Lea    Goodman
 6   BOIES   SCHILLER   FLEXNER
 7   LLP
     1401 New York Ave., NW
 8   Washington, DC 20005
     I. Neel Chatterjee (SBN 173985)           nchatterjee@goodwinlaw.com
 9   GOODWIN PROCTER LLP
10   135 Commonwealth Drive
     Menlo Park, CA 94025
11   Tel.: +1 650 752 3100
     Fax: +1 650 853 1038
12   Brett M. Schuman (SBN 189247)             bschuman@goodwinlaw.com
     Shane Brun (SBN 179079)                   sbrun@goodwinlaw.com
13   Rachel M. Walsh (SBN 250568)
                                               rwalsh@goodwinlaw.com
14   GOODWIN PROCTER LLP
     Three Embarcadero Center
15   San Francisco, California 94111
     Tel.: +1 415 733 6000
16   Fax.: +1 415 677 9041

17

18   BY ELECTRONIC MAIL TRANSMISSION: by electronic mail transmission from

19   jamesjudah@quinnemanuel.com on June 28, 2017, by transmitting a PDF format copy of such

20   document(s) to each such person at the e mail address listed above.  The document(s) was/were

21   transmitted by electronic transmission and such transmission was reported as complete and

22   without error.

23         Executed on June 28, 2017, at San Francisco, California.

24

25                                             /s/ Lindsay M. Cooper
                                              Lindsay M. Cooper
26

27

28
```