QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, <br><br> Plaintiff, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, <br><br> Defendants. | CASE NO. 3:17-cv-00939 <br><br> **PLAINTIFF WAYMO LLC'S REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY OTTO TRUCKING SHOULD NOT BE HELD IN CONTEMPT OF THE PRELIMINARY INJUNCTION ORDER (DKT. 426)** <br><br> **REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL** |

## I. OTTO TRUCKING VIOLATED THE PI ORDER WITH RESPECT TO THE PARAGRAPH 4 ACCOUNTING

### A. Otto Trucking Violated Paragraph 4 by Failing to Provide Date and Chain-of-Custody Information for Mr. Bentley's and Mr. Ron's Receipt of the Stroz Report

Otto Trucking's Opposition tries to limit Waymo's Motion to the issue of Mr. Levandowski. Indeed, Otto Trucking argues that "[t]he ***sole basis*** for Waymo's motion (as well as its earlier motion seeking the same relief) is that Otto Trucking has not obtained information in the possession of Mr. Levandowski." (Opp. (Dkt. 995-4) at 4:22-23 (emphasis added).) This statement is false, and seeks to avoid Otto Trucking's numerous PI Order violations that do ***not*** center around its failure to obtain information from Mr. Levandowski.

For example, Otto Trucking's Accounting under Paragraph 4 of the PI Order states that Mr. Bentley and Mr. Ron received the Stroz Report. (Dkt. 717 at 1:27-2:1.) There is no real dispute that the Stroz Report contains at least excerpts of the downloaded materials. Defendants have admitted as much. (*See, e.g.*, Uber Opp. to Motion for Order to Show Cause (Dkt. 806) at 2:2-4 ("Concerning whether it has access to any 'downloaded materials,' MoFo explained that it does not 'except to the extent that any such material may appear: (1) excerpted in or as an exhibit to the Stroz Report . . .'").) Thus, under the plain terms of Paragraph 4, Otto Trucking's Accounting needed to state "when" Mr. Bentley and Mr. Ron received the Stroz Report and also needed to "identify the complete chains of custodians" for the copies of the Report that they received. (PI Order (Dkt. 426) at 24, ¶ 4.) Otto Trucking's paltry, seven-line Accounting does not provide this information. (Dkt. 717 at 1:22-2:1.) Thus, Otto Trucking has plainly violated Paragraph 4. Notably, Otto Trucking's Opposition ignores this violation altogether.

### B. Otto Trucking Violated Paragraph 4 by Failing to Seek Cooperation from Mr. Levandowski's Counsel John Gardner and Otto Trucking's Counsel O'Melveny & Myers

As explained in Waymo's Motion, Otto Trucking also failed to interview or seek cooperation from Mr. Levandowski's personal attorney (John Gardner) and Otto Trucking's own counsel (O'Melveny and Myers ("OMM")) regarding whether they had seen or possessed any copies of the downloaded materials. Otto Trucking's Paragraph 4 Accounting does not even mention Mr. Gardner

or OMM, even though these counsel were heavily involved with the due diligence process and thus likely possessed or saw the downloaded materials.

In response, Otto Trucking's Opposition now says that Otto Trucking contacted Mr. Gardner. (Opp. at 6:17.) But Otto Trucking submits no Declaration supporting this, nor have they updated their Paragraph 4 Accounting to address their purported efforts to obtain cooperation from Mr. Gardner. Otto Trucking also does not state **when** they allegedly contacted Mr. Gardner, raising the possibility that Otto Trucking may have only done so in response to this very Motion.  Needless to say, Otto Trucking cannot show compliance with the PI Order by making a belated, unsworn statement in a brief about the actions that it has supposedly taken before the June 23 deadline.

Otto Trucking also says that "[a]ny information relating to Mr. Gardner is accounted for in Uber's accounting . . . ." (Opp. at 6:19.) This attempted reliance on **Uber's** accounting is facially meritless. Throughout this litigation, Otto Trucking has stressed its distinction from Uber, arguing that Otto Trucking has "nothing to do" with the Uber activities at issue in this case. (*See, e.g.*, Dkt. 733 at 1 ("OT [Otto Trucking], an entity that is not part of Uber or Ottomotto, has nothing to do with Waymo's claims against Uber and Ottomotto.").) Thus, Otto Trucking cannot freeride off Uber's Paragraph 4 Accounting in lieu of conducting its own complete and sufficient Accounting.

Moreover, it is far from clear that Mr. Gardner would refuse to cooperate with Otto Trucking to the same extent that he refused to assist Uber. After all, Mr. Gardner has no allegiance to or relationship with Uber. By the time the Accounting was due, Uber had fired his client (Mr. Levandowski). By contrast, Otto Trucking is **Mr. Levandowski's** company. So unless prevented by Mr. Levandowski himself, there is every reason to believe Mr. Gardner would be forthcoming with Otto Trucking even if he was not with Uber. For this reason as well, Otto Trucking cannot simply piggyback off Uber's Accounting when it comes to Mr. Gardner.

The point is that Otto Trucking had a duty under the Court's PI Order to conduct its own sufficient investigation and submit its own sufficient Accounting, based on all the resources that it could bring to bear. It cannot excuse its insufficient investigation and Accounting by pointing to Uber's.

A similar analysis holds regarding OMM. Otto Trucking says that it "also contacted its corporate counsel at O'Melveny." (Opp. at 6:25.) Yet the only thing Otto Trucking cites is an email string where **Uber's** counsel (MoFo) reached out to OMM. (*Id.* at 6:27 (citing Dkt. 715-1).) Again, Otto Trucking cannot excuse its own lassitude by pointing to actions that Uber has taken. Otto Trucking is a separate Defendant with separate obligations under PI Order.[1]

### C. Otto Trucking Violated Paragraph 4 by Not Taking All Steps to Pressure Mr. Levandowski to Provide the Information Required by Paragraph 4

Turning to the issue of Mr. Levandowski, Otto Trucking also violated Paragraph 4 by not taking all available steps to cause Mr. Levandowski to provide the information required by Paragraph 4. Contrary to the statements in Otto Trucking's Opposition, the issue is not that "because Mr. Levandowski knows facts, Otto Trucking must know those same facts . . . ." (Opp. at 5:1-2.) Rather, the issue is that Paragraph 4 requires Otto Trucking to use "the full extent of [its] authority and influence" to persuade Mr. Levandowski to provide the information called for by Paragraph 4, and Otto Trucking has not done so. For example, as explained in Waymo's Motion, Otto Trucking has not ███████████████████████████████████████████████████████████████████████████████ – should he fail to provide the information required by Paragraph 4.

Otto Trucking does not dispute that it failed to ███████████ – and failed to pressure Mr. Levandowski with any other adverse consequences – for his refusal to provide the requested information. Rather than disputing this point, Otto Trucking argues that "forcing the issue through Otto Trucking would violate Mr. Levandowski's Fifth Amendment rights by making him choose between a punitive state action and invoking his constitutional right against self-incrimination." (Opp. at 2:18-21.) But the Court rejected a similar argument just last month, holding: "A district court has the authority to order as part of provisional relief a private company to do something that it would

---

[1] Otto Trucking also cites OMM's alleged conflict of interest due to its representation of Google, and complains that Waymo's counsel would not broker a conflict waiver. (Opp. at 6:25-7:4.) Needless to say, it was not the job of Waymo or its counsel to broker a conflict waiver for OMM. If Otto Trucking (or Uber) needed to obtain a Google-OMM conflict waiver in order to complete their Accounting, it was incumbent upon them to resolve this issue with their own lawyers, OMM.

have the authority to do, meaning the company, on its own.  And if in this case, Uber would have the authority to -- to put Mr. Levandowski to a choice between his Fifth Amendment and his job without any problem at all . . . then the district court can say to Uber, you have to do that to satisfy the equities of this situation as part of the provisional relief that the court is granting." (Dkt. 625 at 93:8-18.) Substitute "Otto Trucking" for "Uber," and the Court's ruling applies fully to the situation at bar. Otto Trucking has the power to take such actions as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, by failing to take these actions, Otto Trucking violated the PI Order.

Otto Trucking also argues that it is powerless to put any pressure on Mr. Levandowski because "he is a managing member" and "his consent is required before the company can take any action." (Opp. at 5:2-5.)  This argument, which Otto Trucking has made in prior briefing as well, is tantamount to arguing that Otto Trucking should be excused from complying with the Court's orders because Otto Trucking's management does not wish to comply and will not let Otto Trucking comply.  Otto Trucking cites no authority for this extraordinary argument, nor could it.  Court orders against a company – any company – would become meaningless if the company could excuse compliance by simply arguing that its management will not let it comply.  Again, there is no authority (or logic) for this argument.  A company cannot nullify a Court order simply because its own management does not wish to comply with the order.

## II. OTTO TRUCKING VIOLATED THE PI ORDER WITH RESPECT TO THE PARAGRAPH 5 LIDAR COMMUNICATIONS LOG

Turning to Otto Trucking's woefully-incomplete communications log under Paragraph 5 of the PI Order, Otto Trucking's only defense of that log is to say that it "adopted" Uber's log. (Opp. at 7:22-8:7.)  As explained in Section I(B), *supra*, this explanation is insufficient as a matter of law. Otto Trucking is a separate Defendant from Uber and needed to provide its own LiDAR communications log.  This is particularly true given that the central character for the requisite logged communications – Mr. Levandowski – no longer has any affiliation with Uber yet remains a Managing Member and ▮▮▮▮▮▮▮▮ of Otto Trucking.

Otto Trucking's Opposition also shows that Otto Trucking's communications log is false and cannot be trusted.  Specifically, Otto Trucking's Opposition recognizes that "Uber's chronology [*i.e.*,

Uber's log of LiDAR-related communications with Mr. Levandowski] includes dozens of entries for Mr. Ron **and Ms. Morgan**." (Opp. at 8:4-5 (emphasis added).)  Yet Otto Trucking's log says "Ms. Morgan has never discussed LiDAR with Mr. Levandowski." (Dkt. 717 at 2:4.)  These statements cannot both be correct.  Thus, Otto Trucking's Opposition only highlights the insufficient and untrustworthy nature of Otto Trucking's LiDAR communications log.

### III. CONCLUSION

For the foregoing reasons, Waymo respectfully requests that the Court issue an Order to Show Cause why Otto Trucking should not be held in civil contempt of the PI Order with respect to the Paragraph 4 and Paragraph 5 Accountings.

DATED:  July 31, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By    */s/ Charles K. Verhoeven*
    Charles K. Verhoeven
    Attorneys for WAYMO LLC