MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
RUDY Y. KIM (CA SBN 199426)
RudyKim@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Telephone: 202.237.2727
Facsimile: 202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>    Defendant. | Case No.   3:17-cv-00939-WHA<br><br>**UBER'S LIST OF OPINIONS FOR CASE-IN-CHIEF AT TRIAL**<br><br>Trial Date: October 10, 2017 |

Pursuant to the Court's June 7, 2017 Orders (Dkts. 562 and 563), Uber Technologies, Inc. and Ottomotto LLC ("Uber") submit the following list of trial witnesses, both retained and non-retained, who are expected to give any opinion testimony in Uber's case-in-chief at trial (including those who will also give fact testimony), as well as witnesses who are expected to give testimony that depends on their scientific, technical, or other specialized knowledge under Federal Rule of Evidence 702.[1]  Uber reserves the right to rely on and/or adopt any opinion testimony and/or witnesses identified by Otto Trucking LLC.

## I. RETAINED EXPERTS

### A. Dr. Paul McManamon

Dr. McManamon is a retained expert witness for Uber.  Uber expects to call Dr. McManamon to testify regarding (1) background information about the LiDAR and self-driving vehicle technology at issue in the case; (2) Uber's defenses to Waymo's trade secret misappropriation claims based on non-use, independent development, public knowledge, and/or the readily ascertainable nature of Waymo's asserted trade secrets, including, without limitation, the asserted trade secrets identified by Waymo in its August 1, 2017 Notice Regarding Trade Secret Narrowing; (3) the technical value of the asserted trade secrets; (4) the time that it would take a competitor to replicate the asserted trade secrets from public information or to develop the asserted trade secrets without misappropriation; (5) potential design-arounds; and (6) LiDAR sensors offered by third parties.  Dr. McManamon is also expected to respond to any opinions offered by any expert retained by Waymo relating to Waymo's trade secret misappropriation.

---

[1] Uber has identified expected subjects of expert testimony with as much specificity as is now possible.  Discovery is ongoing, and Defendants may supplement this list of opinions based on information not currently known to Defendants.  Furthermore, as discovery and trial preparation progresses, and before the deadline to disclose experts, Uber reserves its right to modify its roster of expert witnesses and the testimony they will provide, including adding or dropping witnesses, adding or dropping opinions to be offered, or modifying the distribution of subjects among the witnesses.  For example, it may be the case that some of the topics associated with Professor David Lewin may be addressed by Professor Joshua Gans or Professor Gary Lawrence, or vice versa.  Uber understands the purpose of this disclosure as identifying the expected subjects of expert testimony, as opposed to identifying the specific subjects that will be offered by specific experts.

## B. Dr. Michael Lebby

Dr. Lebby is a retained expert witness for Uber. Uber expects to call Dr. Lebby to testify about (1) background information about the electro-optical system technologies and designs at issue in the case; (2) Uber's defenses to Waymo's trade secret misappropriation claims based on non-use, independent development, public knowledge, and/or the readily ascertainable nature of Waymo's asserted trade secrets, including, without limitation, asserted trade secrets identified by Waymo in its August 1, 2017 Notice Regarding Trade Secret Narrowing; (3) the technical value of the asserted trade secrets; (4) the time that it would take a competitor to replicate the asserted trade secrets from public information or to develop the asserted trade secrets without misappropriation; (5) potential design-arounds; (6) LiDAR sensors offered by third parties; and (7) the contents of the allegedly downloaded files. Dr. Lebby may also testify about the ''936 patent, including (1) the state of the art; (2) the level of a person of ordinary skill in the art at the time of filing of the three patents; (3) disclosed embodiments; (4) how a person of ordinary skill would interpret the claim language in view of the intrinsic record; (5) invalidity of the asserted claims; (6) non-infringement of the asserted claims; (7) non-infringing alternatives; and (8) potential design-arounds. Dr. Lebby is also expected to respond to any opinions offered by any expert retained by Waymo relating to Waymo's trade secret misappropriation and patent infringement claims.

## C. Dr. Philip Hobbs

Dr. Hobbs is a retained expert witness for Uber. Uber expects to call Dr. Hobbs to testify about (1) background information about the LiDAR, self-driving vehicle technology, and/or electro-optical system technologies and designs at issue in the case; (2) Uber's defenses to Waymo's trade secret misappropriation claims based on non-use, independent development, public knowledge, and/or the readily ascertainable nature of Waymo's asserted trade secrets, including, without limitation, asserted trade secrets identified by Waymo in its August 1, 2017 Notice Regarding Trade Secret Narrowing; (3) the technical value of the asserted trade secrets; (4) the time that it would take a competitor to replicate the asserted trade secrets from public information or to develop the asserted trade secrets without misappropriation; (5) potential

design-arounds; and (6) LiDAR sensors offered by third parties.  Dr. Hobbs may also testify about the '936 patent, including (1) the state of the art; (2) the level of a person of ordinary skill in the art at the time of filing of the three patents; (3) disclosed embodiments; (4) how a person of ordinary skill would interpret the claim language in view of the intrinsic record, (5) invalidity of the asserted claims; (6) non-infringement of the asserted claims; (7) non-infringing alternatives; and (8) potential design-arounds.  Dr. Hobbs is also expected to respond to any opinions offered by any expert retained by Waymo relating to Waymo's trade secret misappropriation and patent infringement claims.

### D. Kevin Faulkner and/or Robert DeCicco

Uber expects to call Mr. Faulkner to testify about Uber's efforts to investigate whether any Waymo downloaded material exists or has been used within Uber, such as the investigation by his firm Stroz Friedberg during the course of this litigation into whether any Waymo downloaded material exists on the computer systems of Uber. In addition to this fact testimony, Mr. Faulkner and/or Mr. DeCicco  are expected to testify about (1) data collection methods and forensic techniques used to search the computer systems of Uber in this case; (2) the results of Stroz Friedberg's investigation during the course of this litigation; (3) the types of files in the alleged Waymo downloaded materials; (4) the techniques applied by Stroz Friedberg to eliminate "false positives" from the search of the computer systems of Uber; (5) the results of the investigation of Uber's computer systems; and/or (6) the adequacy of Uber's efforts to search its computer systems, collect and review documents, and take other measures to locate any Waymo downloaded material at Uber.  Mr. Faulkner and/or Mr. DeCicco are also expected to respond to any opinions offered by any expert retained by Waymo on these subjects, such as analysis of Waymo networks and logs.[2]

---

[2] Should the Stroz Friedberg due diligence report and other documents subject to Waymo's motions to compel be produced pursuant to the Court's June 8, 2017 and June 21, 2017 Orders (Dkt. 566 and 670), Mr. Faulkner and/or Mr. DeCicco are expected to testify about any data collection methods and forensic techniques used in connection with the due diligence investigation and the adequacy of efforts to ensure that Waymo trade secrets and other intellectual property were not brought to Uber as a result of the Otto acquisition.

### E.      Retained Expert No. 6

Uber expects to call Retained Expert No. 6 regarding the adequacy of Waymo's measures to keep its alleged trade secrets confidential.

### F.      Dr. David Lewin

Uber expects to call Dr. Lewin to testify about relevant business practices, customs, and policies about: (1) ensuring that trade secrets and other intellectual property of third parties are not brought to a company by incoming employees (including, without limitation, employment agreements and instructions to employees); (2) employee exploration of other employment options while at one employer; (3) recruiting of employees by competitors; (4) use of technical knowledge in subsequent employment; (5) employee manuals and policies; (6) measures taken to protect the confidentiality of trade secrets; (7) employee mobility; (8) employee side businesses; (9) employment agreements; and (10) employee compensation practices, and the incentives created by those practices. Dr. Lewin also may opine on (11) Waymo, Uber's, and Ottomotto's customs and practices on these topics in light of any/all of the above, such as: (a) Uber and Ottomoto's efforts to ensure that trade secrets and other intellectual property of Waymo was not brought by incoming employees; (b) Uber's, Waymo's, and/or Ottomoto's employment and HR practices generally, including employee manuals and workplace policies, and policies related to protecting trade secrets;[3] (c) Uber's, Waymo's, and/or Ottomotto's employee compensation and benefits, such as but not limited to stock incentive grants and bonus plans. Dr. Lewin is also expected to opine on (12) the supply of human talent, the importance of human talent and competition for that talent among companies in the relevant industries, and the way that competition for talent affected or contextualized the industry and facts relevant to this case. Dr.

---

[3] Waymo has agreed to forego any reliance on its employment agreement for any purpose in this case unless Uber "opens the door." Consistent with this agreement, Uber does not intend to offer any expert testimony on the use of Waymo's employment agreements to demonstrate the reasonableness or unreasonableness of Waymo's measures taken to protect the confidentiality of its alleged trade secrets.

Lewin is also expected to respond to any opinions offered by any expert retained by Waymo on these subjects.[4]

### G. Gary Lawrence

Uber expects to call Gary Lawrence to respond to any opinions that Waymo offers about mergers and acquisition practices, and to testify about Uber's acquisition of Ottomotto as it compares to general merger and acquisition practices, including but not limited to: (a) intellectual property due diligence, (b) evaluation of potential litigation, and (c) indemnifications provided by parties to acquisitions.[5]

### H. Dr. Joshua Gans and/or Retained Expert No. 10

Uber expects to call Dr. Joshua Gans and/or Retained Expert No. 10 to testify regarding any damages claimed by Waymo in connection with Waymo's trade secret misappropriation and patent infringement claims. Dr. Gans and/or Retained Expert No. 10 is expected to testify regarding (1) the absence of actual damages; (2) the absence of lost profits; (3) a reasonable royalty, if any, for the use of relevant technology; (4) damages in the context of emerging technologies; (5) whether Waymo's damages claim is speculative; (6) costs claimed by Waymo to develop the trade secrets and patents at issue; (7) relevant markets, market share, and/or market value; (8) issues and theories related to first mover and technological advantages; (9) importance of human talent and competition for same; (10) competition for human talent in high-tech industries; (11) costs to design around and/or redesign to avoid the trade secrets and patents at issue; (12) alternatives in the market place; (13) apportionment of value to the trade secrets and patents at issue; and (14) possible models for commercializing the technology at issue. These experts are also expected to testify regarding whether the patented features and purported trade secrets drive demand for Waymo's products. These experts are also expected to respond to any

---

[4] Fact witnesses may also provide opinion testimony on any of the issues identified above as associated with Dr. Lewin.

[5] Should the Stroz Friedberg due diligence report and other documents subject to Waymo's motions to compel be produced pursuant to the Court's June 8, 2017 and June 21, 2017 Orders (Dkt. 566 and 670), Mr. Lawrence is expected to testify about Uber's due diligence efforts to ensure that Waymo trade secrets and other intellectual property would not be brought to Uber as a result of the Otto acquisition.

opinions or analyses offered by any expert retained by Waymo on the subject of damages and remedies.

## II.  FACT WITNESSES WHO MAY GIVE EXPERT OPINION TESTIMONY

### A.  James Haslim

Mr. Haslim is a senior engineering manager at Uber.  In addition to his other fact testimony, Mr. Haslim is expected to testify about public knowledge and/or engineering knowledge of general principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs that Waymo claims were based on misappropriated trade secrets.  Mr. Haslim is also expected to testify regarding a software simulation of Uber's Fuji firing circuit that he supervised.

### B.  Scott Boehmke

Mr. Boehmke is an engineering manager at Uber.  In addition to his other fact testimony, Mr. Boehmke is expected to testify about public knowledge and/or engineering knowledge of general principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs that Waymo claims were based on misappropriated trade secrets.

### C.  Gaetan Pennecot

Mr. Pennecot is an engineer at Uber.  In addition to his other fact testimony, Mr. Pennecot is expected to testify about public knowledge and/or engineering knowledge of general principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs that Waymo claims were based on misappropriated trade secrets.

### D.  Daniel Gruver

Mr. Gruver is a Senior Program Manager at Uber.  In addition to his other fact testimony, Mr. Gruver is expected to testify about public knowledge and/or engineering knowledge of general principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs that Waymo claims were based on misappropriated trade secrets.

### E.  Dr. John Bares

Dr. Bares is an Operations Director at Uber.  In addition to his other fact testimony, Dr. Bares is expected to testify about public knowledge and/or engineering knowledge of general

principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs that Waymo claims were based on misappropriated trade secrets.

### F. Florin Ignatescu

Mr. Ignatescu is an engineer at Uber. In addition to his other fact testimony, Mr. Ignatescu is expected to testify about public knowledge and/or engineering knowledge of general principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs that Waymo claims were based on misappropriated trade secrets. Mr. Ignatescu is also expected to testify regarding a software simulation of Uber's Fuji firing circuit that he conducted.

### G. Asheem Linaval

Mr. Linaval is an engineer at Uber. In addition to his other fact testimony, Mr. Linaval is expected to testify about the types of files and file names routinely created by Altium, LT Spice, and SolidWorks software, and why hash or file name matches do not establish that such files came from Waymo.

### H. Eric Meyhofer

Mr. Meyhofer is Head of the Advanced Technologies Group at Uber. In addition to his other fact testimony, Mr. Meyhofer is expected to testify about public knowledge and/or engineering knowledge of general principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs that Waymo claims were based on misappropriated trade secrets.

### I. William Treichler

Mr. Treichler is an engineer at Uber. In addition to his other fact testimony, Mr. Treichler is expected to testify about public knowledge and/or engineering knowledge of general principles and approaches in LiDAR and related fields pertaining to features in Uber's LiDARs that Waymo claims were based on misappropriated trade secrets.

### J. Jur van den Berg

Dr. van den Berg is a senior software engineer at Uber. In addition to his other fact testimony, Dr. van den Berg is expected to testify about the value Ottomotto provided to Uber through Uber's acquisition of Ottomotto's engineering talent.

### K. Soren Juelsgaard

Mr. Juelsgaard is a director of hardware engineering at Uber. In addition to his other fact testimony, Mr. Juelsgaard is expected to testify about the value Ottomotto provided to Uber through Uber's acquisition of Ottomotto's engineering talent.

### L. Don Burnette

Mr. Burnette is a senior software engineer at Uber. In addition to his other fact testimony, Mr. Burnette is expected to testify about the value Ottomotto provided to Uber through Uber's acquisition of Ottomotto's engineering talent.

### M. Witnesses from Velodyne or other Third-Party LiDAR Suppliers

Witnesses from Velodyne or other third-party LiDAR suppliers may testify about public knowledge and/or engineering knowledge of general principles and approaches in LiDAR and related fields pertaining to LiDAR features of relevance to this case.

Dated: August 3, 2017          MORRISON & FOERSTER LLP

By:  */s/ Arturo J. Gonzalez*
     ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC