

August 3, 2017

Honorable Jacqueline Scott Corley
U.S. District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

REDACTED VERSION OF
DOCUMENT SOUGHT TO BE
SEALED

      Re:    *Waymo LLC v. Uber Technologies, Inc. et al.*, Case No. 3:17-cv-00939

Dear Judge Corley:

Waymo continues to stonewall Uber's discovery into key issues in this case by "unilaterally decid[ing] what documents are sufficient to show [what Uber has requested], and . . . to cherry pick those that support [Waymo's allegations] while withhold[ing] those that do not." (Dkt. 1051 at 2.) And Waymo does so in direct contravention of Judge Alsup's instruction not to thwart Uber's ability to gather evidence for its defense: "It offends me, with all the pain and suffering that you have inflicted on the court system, not you, but your client, Waymo, that when it comes time for Waymo to come across with some documents and witnesses, that they're too busy and important." (Dkt. 1050, 7/26 Tr. at 83:4-8.) Uber now moves to compel Waymo to run two targeted searches and produce highly relevant, responsive communications from Waymo executives and senior businesspeople discussing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, along with communications about the Project Chauffeur Bonus Program and valuations of Waymo. These communications are directly relevant to proving that the true reasons Anthony Levandowski downloaded files before leaving Google had nothing to do with Uber. Rather, Mr. Levandowski thought he might need these files to demonstrate to Google he was entitled to a sizable bonus (which turned out to be $120 million), the amount of which was contingent on a valuation of the Chauffeur business that was entirely within ▮▮▮▮▮▮ discretion.

Waymo claims that it should not have to run these searches because they result in tens of thousands of documents, and might include unresponsive documents. Waymo's claims are specious. Waymo's hit-counts are not de-duplicated (1) across custodians, (2) across searches Waymo has already agreed to run, or (3) against documents it has already produced. As a result, Waymo is double, if not triple or quadruple-counting search hits and claiming burden based on documents it has *already* reviewed or agreed to review. Uber has endeavored to narrow its proposed searches to ameliorate Waymo's concerns and focus the scope of document discovery, but Waymo has refused Uber's compromises at every turn. Waymo has not—and cannot— articulate how Uber's searches are disproportionate to the needs of this case, particularly in light of the potentially astronomical damages Waymo has hinted at (*see* Dkt. 1004 at 9); *Waymo*'s demand for this "bone-crushing" and compressed discovery schedule (Dkt. 731 at 3); and the fact that Uber is reviewing over **170,000** documents, *in addition* to the many thousands of documents Uber already reviewed in the preliminary injunction and expedited discovery phases.[1]

---

[1] Unlike the shifting hit counts Waymo has bandied about for Uber's searches, the more than 170,000 documents Uber is reviewing (just in this phase of discovery) *are* de-duplicated across all custodians.

BOIES SCHILLER FLEXNER LLP

1401 New York Avenue NW, Washington, DC 20005 | (t) 202 237 2727 | (f) 202 237 6131 | www.bsfllp.com



Defendants Uber Technologies Inc.'s and Ottomotto LLC's Motion to Compel Production of Documents
Case No. C 17-00939 WHA

**Background**

On July 3, Waymo and Uber exchanged search terms and custodians they had been applying. (Pritt Decl., ¶ 2.)[2] A few days later, Uber raised concerns about Waymo's searches and custodians, including Waymo's restrictive search parameters and their inconsistent application. (*Id.*, ¶ 3.) The parties spent the past month negotiating searches and custodians with the Special Master's assistance. (*Id.*) While the parties reached agreement on searches Wamyo asked Uber to run, and those searches are underway, Waymo refused to run some of Uber's proposed searches, claiming that they were overbroad because Waymo would have to review too many documents. (*Id.*)

**Argument**

**1.** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Uber asked Waymo to search emails of eleven of the most senior witnesses in this case, over the three years before the complaint was filed, for the terms ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Waymo refused, claiming that the searches resulted in approximately ▓▓▓▓ emails and attachments, as follows: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Waymo offered to run ▓▓▓▓▓▓▓ but not ▓▓▓▓▓▓▓ because the former hit on ▓▓▓ documents and the latter ▓▓▓. Waymo claims these numbers alone make the terms overbroad because it believes "[n]ot every document that references Uber it relevant—even if Mr. Page references Uber," and that the ▓▓▓▓▓▓ could result in "emails discussing ▓▓▓▓ other than ▓▓▓▓▓▓▓." (Pritt Decl., ¶ 6.)

*First*, the number of documents Waymo claims these terms hit on are misleading because they are not de-duplicated across custodians, other searches Waymo agreed to run, or documents Waymo already produced. (*See* Pritt Decl., ¶ 10.) Thus, the number of unique documents Waymo would have to review is substantially less. *Second*, Waymo does not dispute that these witnesses, including Mr. ▓▓▓, refer to Mr. ▓▓▓▓▓ in emails as "▓▓▓▓" without using his last name. *Third*, Uber offered to exclude other ▓▓▓▓, but Waymo never identified any or responded to Uber's proposal. (*Id.*, ¶ 6) *Fourth*, the only emails about ▓▓▓ that Waymo identified as unresponsive were "emails in which the sender said he/she was ▓▓▓▓▓▓▓▓" (*Id.*, ¶ 6.) Uber agreed to exclude terms that would result in those irrelevant documents; Waymo still refused to run the search. (*See id.*) *Fifth*, the fact that these 11 key witnesses have tens of thousands of emails referencing ▓▓▓ is itself extremely relevant; the content of those discussions more so. That Google's ▓▓▓▓ *alone* have ▓▓▓▓ emails mentioning Uber is extraordinary. Even more so when compared to the fact that Waymo produced only 106 emails from Mr. ▓▓▓ custodial files that hit on ▓▓▓ and 27 from Mr. ▓▓▓ files (half of which are

---

[2] Uber does not include as exhibits with this motion the parties' numerous correspondence about search parameters and custodians because they contain extensive discussions about search terms designated Highly-Confidential AEO, and because Uber does not believe they are necessary to resolve this dispute. Uber nonetheless will immediately provide the parties' correspondence if the Court would like to review them.

[3] These numbers add up to over ▓▓▓▓ because they were provided before Uber proposed excluding (a) these witnesses' emails from 2013, and (b) the terms that Waymo suggested returned false hits: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Waymo did not provide updated hit counts for these witnesses.



duplicates of Mr. ▮▮▮▮ documents). Similarly, Mr. ▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮ each have over ▮▮▮▮ emails referring to ▮▮▮. Discussions of Uber as a competitor, assessments of Uber's business, and monitoring of Waymo or Google employees going to Uber are all highly relevant to this lawsuit. *Sixth*, Waymo has articulated no other basis for refusing to run these searches other than its belief that there *may* be other unresponsive documents. But "a belief is not the same as conducting a search and determining if there are responsive documents." (Dkt. 1051, 7/31 Order at 2.) Waymo has offered no evidence that reviewing and producing these documents is disproportionate, *see, e.g.*, *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-226-YGR (JSC), 2015 WL 7180662, at *1 (N.D. Cal. Nov. 16, 2015) ("The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections") (quotation marks omitted), nor could it in light of the potentially astronomical damages Waymo has hinted at and the fact that Uber has reviewed hundreds of thousands of documents at Waymo's request. *Seventh*, Waymo's claim that "[t]o the extent we've agreed to search for documents related to Uber (such as in response to RFP 96), it is a reasonably diligent search"[4]—which Waymo has said means "we tell a human being to go find x documents, and they do so in the most efficient way they can think of" (Pritt Decl., Ex. 7)—is not helpful or reasonable.

Uber has endeavored to draw a reasonable line on its requests by limiting these searches to 11 key witnesses over three years prior to the complaint, and offering to exclude unique terms in order to eliminate irrelevant documents such as Uber receipts. However, Waymo should not be allowed to avoid its discovery obligations simply because it has a large number of relevant—and given the senior custodians, likely *highly* relevant—documents. Thus, Uber requests that the Court order Waymo to run Uber's proposed searches for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[5]

**2. Google's Project Chauffeur Bonus Program:** Uber requests that the Court order Waymo to run Uber's proposed searches about the Project Chauffeur Bonus Program and valuations of Waymo, which are key to locating, reviewing, and producing documents that are directly relevant to understanding the true reasons Anthony Levandowski downloaded files before leaving Google: to show the value he had contributed to earn his bonus and to justify a high valuation for the Project Chauffeur self-driving car business. Uber asked Waymo to search 13 custodians' emails since 2011, when the Bonus Program was developed and put into place, for:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[4] Uber's RFP 96 asks for all documents and communications relating to Uber or its business, which Waymo had agreed to produce. (*See* Dkt. 1032-5 at 1.) Several of Uber's other RFPs also ask specifically for documents regarding Uber. (*See* Pritt Decl.*,* Ex. 1 (Request Nos. 21, 48, 83, 97, 134, 144, 146, 147, 148).)

[5] If the Court declines to do so, Uber requests that the Court order Waymo to run (a) the terms ▮▮▮▮ and ▮▮▮▮▮▮" (terms that Waymo has previously proposed running), (b) the term ▮▮▮▮" and (c) the terms ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Defendants Uber Technologies Inc.'s and Ottomotto LLC's Motion to Compel Production of Documents
Case No. C 17-00939 WHA

- ███████

Uber repeatedly narrowed its proposed searches by acquiescing to Waymo's requested proximity limiters, limiting the date range, and excluding terms and unique phrases like "█████ ████" which Waymo said resulted in unresponsive "bug reports that track milestone █████." Waymo still refused to run the searches because of their hit-counts—the first search hit on ████ documents; the second ████. But these counts do not accurately reflect Waymo's claimed burden.

*First*, these numbers do not accurately reflect the burden of these search terms because Uber has since reduced the requested custodians from 28 to 11, and the hit-counts are not de-duplicated across custodians or other searches, and they include documents already produced.[7]  *Second*, when Waymo claimed that the term "████" resulted in unresponsive documents referring to "many other code related concepts" and "irrelevant bug reports and change logs," Uber agreed to exclude unique terms associated with "████" that would weed out irrelevant documents, but Waymo never identified any.  Uber cannot exclude "████" by itself because Project Chauffeur bonuses were calculated based on █████ valuation of the self-driving car business at different times, and the valuation was a ████████████████████████████████████████████ ████████.  Uber needs the emails and attachments evidencing that debate, and to prove that Levandowski's superiors, who were ███████████████████████████ the valuation, had become hostile to him and led him to believe that his payout would not be fair.  The details and discussion surrounding Waymo's wide-ranging and speculative valuations in a nascent industry are also highly relevant to Waymo's damages allegations.  Waymo should not be permitted "to cherry pick those [responsive documents] that support [Waymo's claims] while withhold[ing] those that do not." (Dkt. 1051 at 2.)  Thus, Uber requests that the Court order Waymo to run Uber's proposed searches for emails about the Project Chauffeur Bonus Program and valuations of Waymo set forth above and produce non-duplicative responsive documents identified by these searches.

---

[6] Waymo's original search was unduly restrictive because it was limited to Levandowski and failed to include terms that Google's executives used to refer to the Bonus Program—*e.g.*, ██████████████████████. (*See* Pritt Decl. Ex. 5 (████████████████████████████████████████████████████), Ex. 3 (████████████████████████████████████████████████████████████████████████████████), Ex. 4 ███████████████████████████████████████████████████; Dkt. 1069-1 (Page Tr.) at 23:23-24:1, 25:2-3 ████████████████████████████) Uber's proposed searches just added these terms for the 11 senior witnesses (minus Mr. ████ and ████████████████████████████████. Uber's RFPs 69, 163, 165, 170, 178 seek all documents and emails about these bonus issues.  (*See* Pritt Decl., Exs. 1 and 2.)

[7] Waymo previously said the second search resulted in ████ "unique" documents, meaning they had been de-duplicated against Uber's other searches but still not de-duplicated against documents Waymo had already searched and produced.  (*See* Pritt Decl., ¶ 9.)  And that was *before* Uber proposed additional limitations, including reducing the custodians for these searches from 28 to 11 senior business executives and officers.

[8] As Waymo's CEO, John Krafcik, testified yesterday, ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████.  (Pritt Decl., Ex. 6, 8/2 Krafcik Tr. 253:15-19; *see* 47:23-50:1 (████████████████████████



        Respectfully submitted,

        */s/ Karen L. Dunn*

        Karen L. Dunn
        *Counsel for Uber Technologies, Inc. and Ottomotto LLC*

cc:    All Counsel of Record
        Special Master John Cooper