MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:    415.268.7000
Facsimile:     415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C.  20005
Telephone:    202.237.2727
Facsimile:     202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>   Defendants. | Case No.    3:17-cv-00939-WHA<br><br>**DECLARATION OF MAXWELL V. PRITT IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC.'S AND OTTOMOTTO, LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Judge:  Hon. Jacqueline Scott Corley<br>Trial Date: October 10, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1        I, Maxwell Pritt, declare as follows:

2        1.     I am counsel at the law firm of Boies Schiller Flexner LLP, representing
3    Defendants Uber Technologies Inc. and OttoMotto LLC (collectively, "Uber") in this matter. I
4    am a member in good standing of the Bar of the State of California. I make this declaration in
5    support of Uber's Motion to Compel.  I make this declaration based on matters within my own
6    personal knowledge and if called as a witness, I could and would competently testify to the
7    matters set forth herein.

8        2.     On July 3, 2017, Uber and Waymo exchanged lists of the search terms and
9    custodians that each party had developed independently and applied to identify documents and
10   communications that were potentially responsive to each other's document requests as of that
11   time.

12       3.     On July 6, 2017, at 1:17 a.m., I emailed the Special Master and Waymo's counsel,
13   among others, raising "some initial concerns and deficiencies" in the search terms and custodians
14   that Waymo had applied to identify documents responsive to Uber's first and second sets of
15   document requests.  Since that time, Waymo's counsel and I, along with other Uber counsel, have
16   corresponded extensively about the search terms and custodians the parties' exchanges on July 3,
17   and engaged in negotiations over additional proposed searches and custodians.  The parties also
18   met and conferred by phone numerous times with the Special Master about these issues.  Uber
19   and Waymo reached agreement on "technical" searches, date ranges, and custodians that each
20   party proposed the other run (one minor issue remains outstanding regarding one of Waymo's
21   proposed technical searches, but it is not the subject of this motion), and the parties reached
22   agreement on the "business" searches, date ranges, and custodians that Waymo proposed Uber
23   run.  Although the parties reached agreement on several "business" searches, date ranges, and
24   custodians Uber proposed, the parties have been unable to reach agreement on two searches set
25   forth below, which were designed to locate responsive documents for several of Uber's document
26   requests.

27       4.     Uber issued several requests in RFP sets one and two relating to Uber's business
28   and activities, including RFPs 21 ("All documents supporting Waymo's contention that Uber is

1  using any Alleged Waymo Trade Secret, including documents sufficient to show Waymo's first
2  notice of any alleged use"), 83 ("All documents relating to Waymo's view of or reaction to the
3  formation of Ottomotto, including but not limited to John Krafcik's August 2016
4  communication(s) with Uber"); 96 ("All documents relating to Waymo's discussion of Uber or its
5  business"), 97 ("All documents relating to Waymo's analysis of Uber's ride-sharing business");
6  134 ("All documents relating to the resignation of David Drummond from Uber's Board of
7  Directors").

8      5.    In response to these requests, Waymo's original search for emails relating to Uber
9  was limited to two search strings: (1) ███████████████████████████████ and
10  (2) ██████████████████████. The first search was run only against only four
11  current Waymo employees (████████████████████████████. The
12  second search was run against only seven custodians (████████████████████████
13  ████████████████████████). For these custodians, emails
14  discussing ██ that did not also hit on "█████" or "███████" within one or two sentences
15  were not searched or reviewed. Waymo did not explain the basis for its restrictive search terms,
16  the reason why the terms were applied inconsistently depending on the custodian, or why Waymo
17  only chose to apply its search terms on such a limited number of custodians. Uber objected to
18  these overly restrictive and inconsistently applied search terms multiple times over the past few
19  weeks.

20      6.    Uber proposed that Waymo search for ████████████████████
21  across 33 proposed custodians from 2013 to the present—nearly all of whom are deponents.
22  Waymo claimed that Uber's proposed search hit on too many documents, and the terms "████"
23  and "████" were overbroad because the former "would hit on emails in which the sender said
24  he/she was ████████—having nothing to do with the issues in the case," and the latter
25  "could hit on emails discussing █████ other than ██████████" (7/14 Waymo Ltr.) As a
26  compromise, Uber proposed limiting the search to eleven current and former Waymo and
27  Google/Alphabet executives and officers: ██████████████████████████
28  ██████████████████████████████████████

1  ███████████████ (collectively, "senior business custodians").  (7/20 Uber Ltr.)  Waymo
2  responded that Uber's proposed limitation still resulted in too many documents and reiterated that
3  the terms "████" and "████" were overbroad for the reasons above.  (7/25 Waymo Ltr.)  I
4  agreed that Waymo could exclude unique terms like ████████████████████████
5  ████████████████████████ and ultimately offered to replace "████" with just
6  "████" and "██████" to address Waymo's concern about the term "████."  I also stated that Uber
7  was fine with Waymo excluding other "██████" but needed Waymo to identify the other
8  ██████ and I explained that the reason searching for ██████ within the 11 senior business
9  custodians' emails was important was because these custodians, including ████████, referred to
10 ████████████ in documents as ██████ without his last name.  Waymo replied with an enlarged
11 hit count, saying that the proposed "term hits on over ████ documents including families"—not
12 ████ as it previously identified—████ (including attachments) of which hit on the "████"
13 and ████ (including attachments) that hit on the term "████."  Waymo provided the following
14 breakdown of the hits counts for each of the 11 senior business custodians: ████████████
15 ████████████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████████
17 ████████████████████████████████████  Waymo proposed that Uber drop the
18 term "████" and "████" in exchange for Waymo running Uber's other two proposed terms,
19 "████" and "██████," which Waymo said "hit on ████ documents and ████ documents,
20 respectively."  I proposed limiting the date range to 2014 to the day before Waymo filed its
21 complaint and again offered to exclude any unique terms that Waymo identified as resulting in
22 unresponsive emails and to exclude other "██████" that Waymo identified.  Waymo never
23 identified any other "██████" and replied that using terms "████" and "██████" (instead of
24 "████" and excluding "████████████") and limiting the search to "1/1/14-present" (despite
25 my proposal to end the search when the complaint was filed) "still hits on over ████
26 documents."  Waymo refused to run "this overbroad search," but offered no explanation how it
27 was overbroad except to say, "Not every document that says ████ is relevant—even if Mr. ████
28 references ████."  I suggested that we might be willing to limit "████" and "██████" to just emails

3

1  sent by the senior business custodians as long as Waymo agreed to run the other terms without
2  limitation, but Waymo refused, proposing instead to limit all of the terms to emails sent by the
3  custodians.
4       7.    Uber has issued several requests seeking documents and communications relating
5  to the Project Chauffeur Bonus Program: Request Nos. 69 ("Documents sufficient to show any
6  bonus program for Waymo LLC or Project Chauffeur employees, including but not limited to
7  specific bonuses paid out over time and to whom; related policies; practices and/or procedures;
8  the determination, calculation, changes to, and timing of any valuations; and inquiries from
9  participants of the plan."), 163 ("All Documents and Communications relating to any anticipated
10 or actual payments owed or made to Anthony Levandowski under the Project Chauffer bonus
11 program, including but not limited to all Documents and Communications relating to the timing
12 and amount of those payments"), 165 ("All documents and communications related to
13 compensation, bonuses, or equity for current or former Waymo employees working on
14 autonomous vehicles or technology, including, but not limited to, all documents and
15 communications concerning Waymo's delay or withholding of payment , the financial impact of
16 such payment on Waymo, and statements made by Waymo executives and officers regarding
17 such compensation, bonus, and/or equity programs (e.g., the Project Chauffeur bonus program)"),
18 177 ("Documents regarding Google's internal communications on what the valuation should be
19 for Project Chauffeur, for each occasion that Google has valued Project Chauffeur for the purpose
20 of paying bonuses"), 178 ("Documents showing the amounts of each of the bonuses paid to the
21 Project Founders of Project Chauffeur, or other Participants in the Project Chauffeur Bonus
22 Program, and the dates those bonuses were paid"), and 183 ("All Documents and
23 Communications relating to Anthony Levandowski's participation in the Project Chauffeur bonus
24 program").
25      8.    Waymo's original search for bonus-related emails was limited to six current
26 employees and five former employees, and Waymo applied only the search: [REDACTED]
27 [REDACTED]. These search parameters
28 did not encompass the timing, calculation, value or negotiations relating to the Project Chauffeur

Bonus Program. Moreover, Waymo only searched for the word "█████" in connection with Google drive files (e.g. non-email sources) belonging to *former* Google employees. Uber noted that Waymo's search was overly restrictive and was not consistently applied across custodians.

9.   Uber proposed that Waymo run the following search across custodians: ████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████. Waymo claimed that Uber's proposed search hit on too many documents because it was not tied to a particular employee, and proposed that "AND should be replaced with a proximity limiter." To address Waymo's concerns, Uber proposed splitting the search into two and applying a proximity limiter to the second: first, ████████████████████████████████████████████████████████ ██████████████████████ and second, ████████████████████████████████████████████ ████████████████████████████████████. Waymo responded that the first search hit on over ████ unique documents, while the second just hit "on over ████ unique documents," and said that the "term '████████' appears to be bringing in non-responsive documents, specifically bug reports that track '████ ████'" and the "word ████" is being used not just to refer to ████████ but to many other code related concepts and is bringing in large amounts of irrelevant bug reports and change logs." So Uber proposed limiting both searches by using a "w/10" proximity limiter, and agreeing to exclude "████████████████████████████ (which Waymo also claimed resulted in unresponsive documents), "████████████," and unique terms associated with bug reports and change logs (but not "████" by itself since emails discussing value and valuation are highly relevant to the Project Chauffeur bonus program and to Waymo's damages allegations). Waymo said these changes reduced the hit count for the first search to ████ and ████ for the second, but both of these numbers were not de-duped across custodians, across the other searches Waymo agreed to run, or against the documents Waymo has already reviewed or produced. Regardless, Uber again offered to limit these searches by excluding any unique terms associated with ████" that Waymo identified (it didn't), agreeing to change the date range from 4/1/2007 to present, to 1/1/2011 to the date before the lawsuit was filed, and agreeing to limit both searches

1  to the 11 senior business custodians (replacing ▮▮▮▮ with Google's ▮▮▮▮
2  ▮▮ plus four others (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), rather
3  than all 33 Waymo custodians.  Waymo rejected that proposal as well, claiming there were still
4  too many hits.

5      10.    I confirmed with Waymo's counsel on meet-and-confer calls with the Special
6  Master on August 3, 2017, that the hit counts Waymo provided for the searches at issue in this
7  motion were not de-duplicated across custodians, other searches, or documents Waymo already
8  produced.

9      11.    Uber is in the process of reviewing over 170,000 documents plus full families,
10  after de-duplication, with a search term hit for responsiveness based on the search terms that Uber
11  exchanged with Waymo and the additional terms and custodians proposed by Waymo.  These
12  documents do not include the many thousands of documents Uber reviewed to respond to the
13  discovery Waymo served in the preliminary injunction and expedited discovery phases of this
14  case.

15      12.    Attached as **Exhibit 1** is a true and correct copy of excerpts of Waymo's
16  Responses and Objections to Uber's First through Fifth Sets of Requests for Production of
17  Documents.

18      13.    Attached as **Exhibit 2** is a true and correct copy of Uber's Sixth Set of Requests
19  for Production.

20      14.    Attached as **Exhibit 3** is a true and correct copy of a December 6, 2010 email from
21  Larry Page to David Lawee produced by Waymo, bearing thebates number WAYMO-UBER-
22  00026138-26140.

23      15.    Attached as **Exhibit 4** is a true and correct copy of a March 18, 2011 email from
24  Sebastian Thrun to Dirk Haehnel produced by Waymo, bearing bates number WAYMO-UBER-
25  0008935-8939.

26      16.    Attached as **Exhibit 5** is a true and correct copy of a September 2, 2015 email
27  from Chris Urmson to Ian Smith, produced by Waymo, bearing bates number WAYMO-UBER-
28  00019667-19668.

17. Attached as **Exhibit 6** is a true and correct copy of excerpts of the certified deposition transcript of John F. Krafcik, Waymo's Chief Executive Officer, dated August, 2, 2017.

18. Attached as **Exhibit 7** is a true and correct copy of an email chain between myself, Waymo's counsel, the Special Master, and others dated August 1, 2017, concerning Uber's RFP 165.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 3rd day of August, 2017, in Oakland, California.

*/s/ Maxwell V. Pritt*
Maxwell V. Pritt

### ATTESTATION OF E-FILED SIGNATURE

I, Karen L. Dunn, am the ECF User whose ID and password are being used to file this document. In compliance with General Order 45, X.B., I hereby attest that Maxwell V. Pritt has concurred in this filing.

Dated: August 3, 2017

*/s/ Karen L Dunn*
Karen L. Dunn