# EXHIBIT 7

| | |
|---|---|
| **From:** | Jeff Nardinelli <jeffnardinelli@quinnemanuel.com> |
| **Sent:** | Wednesday, August 02, 2017 10:29 AM |
| **To:** | Maxwell Pritt; John Cooper; QE-Waymo; DG-GPOttoTruckingWaymo@goodwinlaw.com |
| **Cc:** | BSF_EXTERNAL_UberWaymoLit; UberWaymoMoFoAttorneys; Matthew Cate |
| **Subject:** | RE: Waymo v. Uber - Request for M&C re Waymo Response to Uber RFP 165 |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Ah, if I was acting on old information on the hit term counts, my apologies. We'll see what happens with your proposed changes.

You're mischaracterizing what I said below. I did not agree to produce "all documents" about the subjects below, because to find "all documents" would require searching *every* document at Alphabet just to make sure we didn't miss a single one, which is exactly what Judge Corley said we don't have to do.

The "targeted, intelligent searches" we run is we tell a human being to go find x documents, and they do so in the most efficient way they can think of. It can be a pretty quick process when there's a specific ask.

**From:** Maxwell Pritt [mailto:mpritt@BSFLLP.com]
**Sent:** Wednesday, August 02, 2017 10:22 AM
**To:** Jeff Nardinelli <jeffnardinelli@quinnemanuel.com>; John Cooper <JCooper@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>; DG-GPOttoTruckingWaymo@goodwinlaw.com
**Cc:** BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; Matthew Cate <MCate@fbm.com>
**Subject:** RE: Waymo v. Uber - Request for M&C re Waymo Response to Uber RFP 165

Thanks, Jeff. If you're agreeing to produce all documents about the subjects below, that's great. As for the search terms, please provide the "targeted, intelligent searches" you've run for responsive documents. As for our proposed searches, my emails with you and Andrea on these issues show Uber has repeatedly and continually narrowed its proposed search terms over the past few weeks and agreed to exclude unique terms you've identified as returning false hits (and to exclude any additional such terms you identify when reviewing documents). The 40K hit count you refer to was a hit count for search term no. 8.1 only, not 8.2, and was a hit count before we agreed to further narrow the connector as you requested. The count also doesn't exclude the unique terms you identified that we agreed you could exclude or the further limitations on date ranges we've proposed. And the count doesn't de-dup against the numerous documents you say you've already produced (or the documents you've already searched but not produced). I've asked for updated hit counts taking into account these additional limitations and exclusions for some time and understood you would be providing those today in hopes of reaching agreement on these terms.

Best,
Max

**From:** Jeff Nardinelli [mailto:jeffnardinelli@quinnemanuel.com]
**Sent:** Wednesday, August 02, 2017 10:11 AM
**To:** Maxwell Pritt; John Cooper; QE-Waymo; DG-GPOttoTruckingWaymo@goodwinlaw.com
**Cc:** BSF_EXTERNAL_UberWaymoLit; UberWaymoMoFoAttorneys; Matthew Cate
**Subject:** RE: Waymo v. Uber - Request for M&C re Waymo Response to Uber RFP 165

I think we're agreed on the redactions thanks Max.

On RFP 165 you were somewhat specific but still quite broad:

> all documents and communications about the development and approval of the Project Chauffeur bonus program and the Chauffeur award program, the 2015 and 2016 Project Chauffeur bonus payments/valuations, and the financial impact or liability of those payments/valuations, including impacts on employee retention; and documents showing 2015 and 2016 compensation and bonus amounts for Waymo employees working on autonomous vehicles or technology (broken down by employee).  We believe responsive emails would be captured by running our business search strings nos. 8.1 (with the term "compensate*" to capture documents like WAYMO-UBER-00026142, and the term "payment" modified to "payment*" to capture documents like WAYMO-UBER-00006348) and 8.2.

We have already produced numerous documents on the 2011 development of the Plan and on the 2015 valuation and will produce more as we search relevant custodians such as David Lawee and Chris Urmson.  We will produce this week documents showing each Plan employee's 2015 bonus, and can follow up with documents showing the additional payments made to any employees who resigned; you already have these for Levandowski.  Note that we find these using targeted, intelligent searches, not by using search terms that hit on tens of thousands of other documents.

It sounds like our only point of disagreement is whether to search for terms 8.1 and 8.2.  Even without your new proposed additions those return over 40,000 hits.  As you know Judge Corley recently denied Uber's motion to compel production of email documents on this ground:  "While responsive emails may have some relevant information, Uber has failed to articulate search parameters that will not result in thousands of unresponsive emails; that is, that make the likely value from what is discovered by the search worthwhile."  (Dkt. 755.)  Given that I don't think 8.1 and 8.2 are workable.

Jeff

---

**From:** Maxwell Pritt [mailto:mpritt@BSFLLP.com]
**Sent:** Wednesday, August 02, 2017 9:36 AM
**To:** Jeff Nardinelli <jeffnardinelli@quinnemanuel.com>; John Cooper <JCooper@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>; DG-GPOttoTruckingWaymo@goodwinlaw.com
**Cc:** BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; Matthew Cate <MCate@fbm.com>
**Subject:** RE: Waymo v. Uber - Request for M&C re Waymo Response to Uber RFP 165

Morning Jeff,

Thank you for agreeing to remove the privacy redactions.  As we discussed separately, it doesn't look like our vendor can identify all of the documents with privacy redactions (because there's no associated metadata field).  Please let me know if your vendor can do so, and then we can discuss whether there's a global solution.  In the meantime, we'll send you bates numbers for re-production as we identify them.  For now, please remove the privacy redactions from WAYMO-UBER-00008945, -00026142, and -00011807.  When you re-produce these documents, please produce the metadata for the documents as well (as it appears the application of the privacy redactions may have stripped metadata fields prior to production).  We have some other production/metadata questions that I'll email you about separately.

You also asked what we're looking for in RFP 165.  The RFP is limited to compensation, bonuses, and equity of Waymo employees working on autonomous vehicles or technology, and describes particular categories of documents we're seeking.  In particular, we're looking for all documents and communications about the development and approval of the Project Chauffeur bonus program and the Chauffeur award program, the 2015 and 2016 Project Chauffeur bonus

payments/valuations, and the financial impact or liability of those payments/valuations, including impacts on employee retention; and documents showing 2015 and 2016 compensation and bonus amounts for Waymo employees working on autonomous vehicles or technology (broken down by employee).  We believe responsive emails would be captured by running our business search strings nos. 8.1 (with the term "compensate*" to capture documents like WAYMO-UBER-00026142, and the term "payment" modified to "payment*" to capture documents like WAYMO-UBER-00006348) and 8.2.

Best,
Max

---

**From:** Jeff Nardinelli [mailto:jeffnardinelli@quinnemanuel.com]
**Sent:** Tuesday, August 01, 2017 8:05 PM
**To:** Maxwell Pritt; John Cooper; QE-Waymo; DG-GPOttoTruckingWaymo@goodwinlaw.com
**Cc:** BSF_EXTERNAL_UberWaymoLit; UberWaymoMoFoAttorneys; Matthew Cate
**Subject:** RE: Waymo v. Uber - Request for M&C re Waymo Response to Uber RFP 165

Max,

On the privacy redactions we've clarified with employment counsel that we are clear to un-redact that information, as long as we produce AEO.  Let us know which documents you'd like us to re-produce without the privacy redactions and as long as we can do so consistent with that guidance, we will.

Beyond that can you clarify what you're looking for through RFP 165?  On its face RFP 165 asks for every pay stub ever issued to a Waymo (meaning self-driving program) employee, every offer letter or employment letter discussing salary, every communication amongst HR or other personnel concerning salary or payment, and much much more.  Surely you don't ask for all of that.  Because Uber claims that Waymo paid out its 2015 Plan bonuses late, we searched for and located documents concerning those payments, which we'll produce this week.  If there's something specific beyond that you're looking for, let us know what it is.  Also as a style point can we stop using the word "unilaterally" as a global pejorative?  It's difficult for a single entity to act bi- or trilaterally and I think the word has crept way too deeply into this case's vernacular.

Best,
Jeff

---

**From:** Maxwell Pritt [mailto:mpritt@BSFLLP.com]
**Sent:** Tuesday, August 01, 2017 12:51 PM
**To:** John Cooper <JCooper@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>; DG-GPOttoTruckingWaymo@goodwinlaw.com
**Cc:** BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; Matthew Cate <MCate@fbm.com>
**Subject:** Waymo v. Uber - Request for M&C re Waymo Response to Uber RFP 165

Dear John and Counsel,

We would like to add to our next meet and confer  Waymo's objections and response to Uber's RFP 165 (*see* attached at 4-5), which seeks all documents and communications related to compensation, bonuses, or equity for current or former Waymo employees working on autonomous vehicles or technology.

Waymo included overbreadth, relevance, compound, and proportionality objections but did not state whether it was withholding any documents based on those objections.  We would like to know if Waymo is withholding documents as a result of any of these objections.  With respect to the objections themselves, Waymo objects that the RFP is compound

because it seeks "both documents relating to employee compensation and for executive statements regarding compensation." But any executive statements about employee compensation, bonuses or equity clearly fall within a request for "all documents and communications related to compensation, bonuses, or equity." Further, while Waymo complains that RFP 95 is overbroad, it provides no explanation, or even assertion, of any undue burden. Similarly, there's no explanation for how any part of the request is not relevant or proportional. Judge Alsup has already made clear that Waymo needs to provide the discovery that Uber has requested on this subject. *See* 7/26 Tr. at 83:4-8, 82:16-17; *see also* Dkt. 832, 7/7 Order (Corley, MJ), at 3 ("Defendants are entitled to develop their own defense to Plaintiff's for relief and need not rely solely on what Plaintiff contends is relevant.").

Uber does not dispute Waymo's definition of "Waymo employees" as "employees of the self-driving car program from 2009 to present." However, Waymo has unilaterally limited its production of responsive documents to "documents sufficient to show the amount and timing of payments made to employees under the Project Chauffeur bonus program" and "documents sufficient to show the overall personnel costs of the self-driving car program from 2009 to the present." As Judge Corley held yesterday, "Waymo's insistence that responsive documents should be limited to those 'sufficient to show' is not acceptable." (Dkt. 1051, 7/31 Order, at 2.) Limiting this request to the amount and timing of payments and the overall personnel cost is also not acceptable. As Uber has previously explained (e.g., Dkt. 900-4 at 7-9), the overall design and operation of all of Waymo's compensation schemes is important to understanding the incentives and behavior of Waymo employees—both current and former—including both Anthony Levandowski's motives and the likely bias of Waymo witnesses such as Pierre Yves Droz. It is not merely the amount and timing of payments under the Project Chauffeur Bonus Program that are relevant, but also the calculation of those payments and all communications relating to those payments, which will show the understanding that Bonus Program participants would have had at the relevant times. Waymo's attempt to limit its production to the Bonus Program, rather than all Waymo compensation schemes, also denies Uber essential context, including the outcome of Waymo's experience with the Bonus Program and the decisions Waymo made in designing new compensation structures when it was spun out of Google. Uber requests that Waymo produce all non-duplicative responsive documents, whether located at Waymo, Alphabet or Google.

Additionally, I have not received a response to my request that Waymo explain the basis for applying privacy redactions to documents discussing the bonus program. *See, e.g.*, WAYMO-UBER-00008945, -00026142.

Thanks,
Max

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]