

August 4, 2017

Magistrate Judge Jacqueline Scott Corley
U.S. District Court, Northern District of California
San Francisco Courthouse Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

    Re:    *Waymo LLC v. Uber Technologies, Inc., et al.*, No. C 17-00939-WHA

Dear Magistrate Judge Corley:

Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") submit this letter brief in opposition to Waymo's July 30, 2017 motion to compel production of all documents and communications on the subject matter of Anthony Levandowski's downloading of Waymo files and the reasons for his pleading the Fifth Amendment. Dkt. 1060. Uber does not oppose Waymo's motion to the extent it seeks the production of an unredacted copy of the presentation Travis Kalanick and Cameron Poetzscher made to Uber's board of directors on April 11, 2016; that document was produced without redaction yesterday.

In connection with the rest of Waymo's motion, Uber respectfully asks that Your Honor read the entirety of Mr. Kalanick's testimony at pages 74-122 of his deposition transcript, which Waymo provided in full as Exhibit 1 to its motion.

        Respectfully Submitted,

        */s/ Karen L. Dunn*

        Karen L. Dunn
        Counsel for Uber Technologies, Inc. and Ottomotto LLC



Ever since Waymo filed its complaint based on Anthony Levandowski's alleged downloading of files while at Google, Uber has repeatedly confirmed that no Google files ever came to Uber and has tried to understand the circumstances of any such downloading, if it occurred. We believe that Mr. Levandowski's actions had nothing to do with Uber, but instead were undertaken for his own personal reasons: namely, to justify a sizable bonus (which turned out to be $120 million), the amount of which depended on Google's valuation of the Chauffeur business. This explanation rings true, and is supported by the evidence, but it is also inconvenient for Waymo and, thus, Waymo took the immediate position no one should hear it.[1]

On July 26, 2017, Waymo learned in open court that Travis Kalanick, Uber's former CEO, was prepared to testify to Mr. Levandowski's "bonus explanation." 7/26 Hr'g Tr. at 91:6-7. During Mr. Kalanick's deposition the next day, Waymo's counsel set about creating a muddled and confused record of the meeting in which Mr. Levandowski communicated that explanation. He did so by repeatedly asking imprecise questions designed to elicit privileged communications (that Uber's counsel instructed Mr. Kalanick not to answer). *E.g.*, Kalanick Dep. Tr. ("Tr.") (Dkt. 1059-6) at 80:16-19. And after it was clear from Mr. Kalanick's testimony and from Uber's objections that Waymo's counsel was blurring the lines between a series of different meetings, he still refused to ask more precise questions about the non-privileged conversations to which Mr. Kalanick was permitted to testify. *Id.* at 80:23-24, 81-82:1-11. In one glaring example, Waymo's counsel chose never to ask Mr. Kalanick who was present for the conversation where Mr. Levandowski discussed his bonus, even after this failure was identified on the record. *Id*. at 107:3-6. Had he done so, he would have learned that only Angela Padilla, Uber's Associate General Counsel, was in the room with Mr. Kalanick and Mr. Levandowski, and he might have elicited testimony establishing why this conversation was not privileged, as explained by Ms. Padilla in her attached declaration.

Waymo wants to keep the "bonus explanation" and all the related evidence hidden from the jury and the public. Indeed, it has asserted that nearly all information related to the Chauffeur Bonus Program is AEO, a designation Uber has challenged. Dkt. 900. The present motion is Waymo's latest effort to keep this evidence from ever seeing the light of day, even as it claims to be on a search for the truth about what happened to its 14,000 files. Waymo is trying to create the false impression that Mr. Levandowski's statements about his bonus were made during a privileged communication, and that he waived that privilege, so that Waymo may then argue that Uber is precluded from presenting this evidence because this purported waiver came after Judge Alsup's June 1 deadline to set forth "any waiver of privilege on pain of preclusion thereafter." Dkt. 438.[2]

---

[1] *See, e.g.*, 6/29 Hr'g Tr. at 89:14-90:22 (Mr. Verhoeven: "They've proffered a new theory which they have absolutely no evidence for. … It sounds ridiculous … this may be something that we object to and move *in limine* on … [I]t's silly …"); Dkt. 851 (Waymo MIL #1 "to preclude Defendants from arguing any theory as to why Anthony Levandowski downloaded Waymo trade secrets"); Dkt. 874 ¶ 8 (tentatively denying Waymo MIL #1); Dkt. 951 (Waymo MIL #11 "to preclude defendants from introducing evidence via hearsay statements attributed to Anthony Levandowski"); 6/29 Hr'g Tr. at 90:20; Dkt. 943 (Waymo declaration in support of sealing facts pertaining to the Chauffeur bonus program); Dkt. 944 (displaying what Waymo wants to keep under seal about the bonus program).

[2] While Waymo's anticipated motion *in limine* on this issue (Dkt. 1060 n. 2) is beyond the scope of this brief, it would nonetheless fail for various reasons, including (but not limited to) the fact that any waiver

Despite unclear questioning by Waymo's counsel, Mr. Kalanick testified to his personal knowledge of a non-privileged conversation with Mr. Levandowski in which Mr. Levandowski told Mr. Kalanick (and Ms. Padilla) the explanation concerning his bonus. Tr. at 90:18-101:6. Mr. Kalanick was properly instructed during his deposition not to reveal the content of privileged communications that occurred during other, separate meetings that day for which Mr. Kalanick was also present. *Id.* at 80:16-19, 85:13-19, 104:7-18. There were no waivers or improper instructions during Mr. Kalanick's deposition. Waymo's motion should be denied.

I. <u>Mr. Levandowski's Statements To Which Mr. Kalanick Testified Are Not Privileged</u>.

Mr. Kalanick testified that multiple meetings occurred at Uber's headquarters on the evening of March 29, 2017. Tr. at 88:12-16. He was permitted to testify about the statements made during one of those meetings because those communications were not privileged. Padilla Decl. ¶¶ 6-7. Mr. Kalanick testified that, at this meeting, Mr. Levandowski explained that he "was incredibly worried at the time about a very large bonus he was supposed to get from Google. And he felt, essentially, like Google was going to stiff him on his bonus. And he wanted to – he wanted to have the sort of the work that he did, so he could show that he earned that bonus." *Id*. at 91:21-92:2. Mr. Kalanick also testified to his sense that Mr. Levandowski wanted to testify but was not doing so based upon the advice of his personal lawyers. *Id*. at 79:22-80:8; 119:8-11; 119:18-22. Mr. Kalanick was never instructed on the basis of privilege not to answer questions about the discussions during this meeting.

Waymo's questioning, however, created a muddled record about the details of that meeting in relation to ***other*** meetings that occurred that same evening. Padilla Decl. ¶¶ 4, 8. Despite being alerted to the issue, counsel never sought to distinguish the various meetings, even though the witness was clear that there were multiple meetings with different attendees. Tr. at 74:18-19, 76:6-18, 88:12-16, 89:18-90:2. At one point, after persistent questioning about what Mr. Levandowski's personal attorneys told Mr. Kalanick (a claim with no basis in Mr. Kalanick's testimony, because Mr. Levandowski's counsel arrived later in the evening, *id*. at 89:13-14), Mr. Kalanick explained that "what you're characterizing as a conversation I was having where a personal attorney responded, was not necessarily how it happened." *Id*. at 89:24-90:2. Waymo's only attempt to clarify the facts of the meeting at which Mr. Levandowski provided the bonus explanation was to ask whether Mr. Kalanick ever had "any conversations with Mr. Levandowski about his assertion of the Fifth Amendment when there weren't attorneys in the room, privately," to which the answer was "no." *Id*. at 90:11-15, 122:10-18.

Waymo did not seek to clarify which statements occurred during which meetings or to ask Mr. Kalanick which attorneys were present when Mr. Levandowski provided the bonus explanation, even after (1) the witness said he was confused by the questions with regard to privilege, *id*. at 76:19-25 and (2) Uber's counsel alerted Waymo's counsel to the ambiguity he was creating in the record by blurring the lines between meetings, misstating witness testimony, and cultivating witness confusion, *Id*. at 77:1-20, 80:23-81:16. When Uber's counsel sought to clarify the record,

---

was clearly inadvertent (not intentional under Rule 502) in light of Uber's good faith basis for believing the communications are not privileged.



*id*. at 77:1-24,Waymo's counsel refused, responding: "Well, I will take the risk." *Id*. at 77:25-78:2.

Consistent with that approach, Waymo's counsel continued his ambiguous questioning so that Waymo could later assert waiver. In response, Uber's counsel explained the state of the record (outside of the witness's presence):

> MS. DUNN: The witness has already testified that this was an evening with not just one meeting in it, and that there were people in and out. And so we—his testimony just now is about a conversation that he had with Mr. Levandowski. And it remains unestablished who was in the room during that conversation. And Counsel is asking him about other conversations that he had that he's testified to. So we—the conversation that Mr. Kalanick has just testified to where Mr. Levandowski explained to him the reason for the downloading is not a privileged conversation. There were other conversations in that same night that are privileged. And so we are waiving no privileges, but we maintain the privilege over the conversations that were privileged. And the conversation that Mr. Kalanick has just testified to is not privileged.

Tr. 106:22-107:17. Based on Mr. Kalanick's testimony and Ms. Padilla's declaration, the conversation in which Mr. Levandowski told Mr. Kalanick that the reason for his downloading files related to his Google bonus was not privileged; therefore, there was no waiver.

It is textbook law that the mere presence of an attorney does not render a communication privileged. The attorney-client privilege "applies only when legal advice is sought from a professional legal advisor in his capacity as such." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). "The fact that a person is a lawyer does not make all communications with that person privileged." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). As Waymo's cited cases explain, "[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973); *see also United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1069 (N.D. Cal. 2002) ("The privilege protects communications between an attorney and her client made in confidence for the purpose of securing legal advice from the lawyer.").

Many conversations with in-house counsel are not privileged. *See ChevronTexaco*, 241 F. Supp. 2d at 1076. Thus, "[w]ith respect to internal communications involving in-house counsel," it must be clear that the "***speaker*** made the communications…[for] the ***primary purpose*** of … securing legal advice." *Id.*; *see also* Paul Rice *et al*., 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 7:30 (2016) ("[C]ommunications to and from in-house counsel can be sheltered only upon a clear showing that in-house counsel gave advice in a professional legal capacity.").

Ms. Padilla was the only attorney present when Mr. Levandowski provided the bonus explanation, and her presence did not make the communications to which Mr. Kalanick testified privileged. Padilla Decl. ¶¶ 6-7; Tr. at 89:10-12, 18-22. No one sought her legal advice during that meeting, nor did she provide any. Padilla Decl. ¶ 7. She does not consider the discussion that took place in that meeting to be privileged. *Id*. For these reasons, Mr. Kalanick properly testified



to the discussions that occurred during that meeting without any waiver.

II. Mr. Kalanick Was Properly Instructed Not To Testify As To Privileged Conversations.

In contrast, Mr. Kalanick was instructed not to answer questions on the basis of privilege with respect to a ***separate meeting*** attended by Mr. Kalanick, Mr. Levandowski, Ms. Padilla, and Mr. Levandowski's personal attorneys.[3] *E.g.*, Tr. at 85:13-19. This meeting occurred later in the evening, after Mr. Levandowski gave the bonus explanation, and ***after*** his personal attorneys arrived at Uber. *Id.* at 89:13-14 ("At some point, we had Anthony's personal attorney come to the office."); Padilla Decl. ¶ 8. Despite Waymo's purposeful conflation of these different conversations, each time Waymo's counsel sought to elicit privileged testimony about the meeting that Mr. Levandowski's attorneys attended, Mr. Kalanick was properly instructed not to answer. Mr. Kalanick did not testify to what he, Mr. Levandowski, or his attorneys said in that meeting. Tr. at 80:9-19; 85:13-19; 104:7-15.

Uber has not waived any privilege over this meeting because Mr. Kalanick did not testify to any privileged communications that occurred at this meeting. As Ms. Padilla's declaration makes clear, she understood the communications that occurred during that meeting to be privileged and covered by a common interest agreement between Uber and Levandowski. Padilla Decl. ¶ 8. She did not, however, provide any legal advice during that meeting. *Id*.

III. Waymo's View of Purported Subject Matter Waiver Is Overbroad and Unjustified.

Mr. Kalanick did not waive any of Uber's privileges, including privileges over documents or communications concerning the same subject matter—Levandowski's stated reasons for downloading Google files or his stated reasons for invoking the Fifth Amendment. As the court in Waymo's cited case *Chevron Corp*. explains, once the potential privilege holder proves that a communication is not privileged, "then it will not have waived the privilege" over communications and documents on that same subject matter "simply by disclosing non-privileged documents" or communications. *United States v. Chevron Corp.*, 1996 WL 264769, at *5 (N.D. Cal. Mar. 13, 1996).

But even if the Court were to conclude that the conversation to which Mr. Kalanick testified was privileged (and it should not), the scope of any waiver would never be as broad as Waymo contends: "all privileged testimony (from Mr. Kalanick and others) and documents on the subjects of (1) Mr. Levandowski's reasons for downloading Waymo's files and (2) Mr. Levandowski's reasons for pleading the Fifth Amendment." Dkt. 1060 at 6. As Waymo's own cited authorities instruct, a waiver extends only to "matters actually revealed." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992); *see also Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, 2016 WL 7475820, at *9 (N.D. Cal. Dec. 29, 2016) (carefully parsing the disclosure to determine the scope of the waiver); *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*,

[3] Mr. Kalanick was also instructed not to answer questions to the extent the answer would potentially reveal communications at a meeting with Uber's in-house counsel and outside counsel which occurred on March 26, a few days before the meeting with Mr. Levandowski's personal attorneys. Padilla Decl. ¶ 11; Tr. 75:2-10; 82:2-9.



254 F.R.D. 568, 576 (N.D. Cal. 2008) (to determine scope of the waiver, "courts weigh the circumstances of the disclosure [and] the nature of the legal advice sought"). All that was revealed are ***Mr. Levandowski's statements*** regarding his bonus—to show his contributions and substantiate that he earned his bonus—as well as ***his statements*** regarding his invocation of the Fifth Amendment. Waymo's proposed scope would encompass far more than what Mr. Kalanick actually testified to: only things that Mr. Levandowski said. Any waiver would be limited to only those things, because that waiver is not the kind of waiver covered by Rule 502, which requires an "intentional" waiver in a "federal proceeding," not an inadvertent waiver or a waiver of a communication protected by someone else's privilege. *See, e.g.*, *United States v. Hatfield*, 2009 WL 3806300, at *12 (E.D.N.Y. Nov. 13, 2009) ("A member of a joint defense agreement can waive the privilege with respect to its own communications, but typically cannot disclose privileged information received from other joint defense agreement members."). The scope of any waiver (again, there was none), would extend ***only*** to Mr. Levandowski's statements regarding those matters.

Further, Mr. Kalanick did not reveal any legal advice that Uber received regarding these matters. Thus, there is no waiver of any privilege belonging to Uber, intentional or otherwise. Indeed, Rule 502 requires such a waiver to be "intentional." Fed. R. Evid. 502 (requiring an intentional disclosure of privileged communications in a federal proceeding). Here, there was no intentional waiver as to Uber's privileged communications with its own counsel. Waymo does not argue otherwise. Nor do Waymo's cases support a finding of intentional waiver over Uber's privileged communications. *See Theranos, Inc. v. Fuisz Techs., Ltd.*, 2013 WL 2153276, at *5 (N.D. Cal. May 16, 2013) (excluding from the scope of the subject matter waiver under Rule 502 any "communications with or work product created by its counsel in this litigation."). Nor could any conceivable waiver (and there was none) ever reach any of Uber's attorney work product. *See Cave Consulting Grp.*, 2016 WL 7475820, at *8 ("work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege. Instead, work-product waiver only extends to 'factual' or 'non-opinion' work product concerning the same subject matter as the disclosed work product.").

IV. Mr. Kalanick's Text Messages Are Irrelevant To This Motion.

Waymo includes a paragraph about Mr. Kalanick's text messages, even though it asks for no relief about that issue. In so doing, Waymo has disregarded the conferral process overseen by the Special Master, who was clear during the July 31 conferral that issues pertaining to Mr. Kalanick's text messages would be addressed separately, given that the parties were still conferring and Mr. Kalanick's counsel and Uber are working to get all retrievable messages to which Waymo is entitled produced as quickly as possible. We expect all issues on these fronts ot be resolved. But any unresolved issue regarding the text messages or the length of Mr. Kalanick's second deposition (for which Waymo reserved 45 minutes, *see* Tr. at 328:9) should be briefed separately.