1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  ERIC A. TATE (CA SBN 178719)
   ETate@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California  94105-2482
   Telephone:    415.268.7000
6  Facsimile:    415.268.7522

7  KAREN L. DUNN (*Pro Hac Vice*)
   kdunn@bsfllp.com
8  HAMISH P.M. HUME (*Pro Hac Vice*)
   hhume@bsfllp.com
9  BOIES SCHILLER FLEXNER LLP
   1401 New York Avenue, N.W.
10 Washington, D.C.  20005
   Telephone:    202.237.2727
11 Facsimile:    202.237.6131

12 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.
13 and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>    Defendants. | Case No.    3:17-cv-00939-WHA<br><br>**DECLARATION OF ANGELA L. PADILLA**<br><br>Trial Date: October 10, 2017 |

I, Angela L. Padilla, declare as follows:

1. I am the Associate General Counsel for Litigation & Employment for Uber Technologies, Inc. ("Uber"). I have served in this position since November 2015. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently as to these facts.

2. I understand that Waymo LLC ("Waymo") is arguing that Uber has asserted but subsequently waived the attorney-client privilege over the content of a meeting that took place on March 29, 2017, during which Anthony Levandowski explained that he had downloaded files while at Google to be able to prove to Google he had done the work to earn his bonus. I attended that meeting—and others on the same day related to this litigation—and I set forth below my recollection of the purpose of those meetings and the subject matters discussed.

3. On March 29, 2017, I attended several meetings related to the matters that are the subject of the litigation brought by Waymo against Uber. I recall that these meetings occurred on March 29 because, earlier that day, Uber's counsel of record had appeared before Judge Alsup at a closed-door hearing attended by counsel for Waymo and counsel for Mr. Levandowski. Uber's counsel of record had requested that hearing earlier in the week. At that hearing, counsel for Mr. Levandowski informed counsel for Waymo and Judge Alsup that Mr. Levandowski intended to invoke his Fifth Amendment right against self-incrimination in connection with this litigation. I recall that Judge Alsup indicated that the transcript of that proceeding would be made public as soon as possible.

4. The first meeting I attended on March 29, 2017, that related to this matter was also attended by various Uber executives, including, to the best of my recollection, Travis Kalanick, Uber's then-CEO; Rachel Whetstone, Uber's then-Senior Vice President of Communications and Public Policy; Salle Yoo, Uber's then General Counsel (and current Chief Legal Officer); and Liane Hornsey, Uber's Chief Human Resources Officer. It is likely, but I do not recall for certain, that Chelsea Kohler, Senior Manager, Communications at Uber; and Matt Kallman, Head of Corporate Communications at Uber, were also present. Ms. Yoo attended by video conference as she was abroad at the time. I recall that Anthony Levandowski was not present when the

1  meeting began but joined the meeting at some point after it started.  This meeting took place at
2  Uber's headquarters at 1455 Market Street in San Francisco, California, in a conference room
3  named "New York City."

4      5.    I understood that the purpose of this meeting was to review the transcript of the
5  proceedings earlier that day before Judge Alsup, as well as to discuss the implications of the
6  release of the transcript and of Mr. Levandowski's invocation of his Fifth Amendment rights.  I
7  participated in this meeting in order to provide legal advice on these issues, including by
8  responding to questions about the legal significance of what was said during the proceedings
9  before Judge Alsup.  Therefore, I consider the communications that occurred during this meeting
10 that were related to that advice to be subject to the attorney-client privilege.

11     6.    Following this discussion, I joined Mr. Kalanick and Mr. Levandowski at a
12 separate meeting that took place in a nearby conference room named "Minneapolis."  No one else
13 was present during this second meeting.  In my view, the purpose of this meeting was for Mr.
14 Kalanick to discuss with Mr. Levandowski Waymo's allegations about improper downloading of
15 information while Mr. Levandowski was employed at Google.  During this meeting, I recall Mr.
16 Kalanick pressing Mr. Levandowski about what happened.  Mr. Levandowski responded to Mr.
17 Kalanick that he was worried that Google was not going to pay him his bonus and he wanted to
18 be able to demonstrate the work he had done in order to earn that bonus.  I recall Mr.
19 Levandowski also saying that he no longer had the files he had downloaded because he had
20 deleted them.  I recall that Mr. Kalanick responded by telling Mr. Levandowski in strong
21 language that what he did was incredibly stupid and that he should just tell the Court what he did.
22 I recall saying to Mr. Levandowski that while I could not provide him any legal advice, I agreed
23 he should just tell the Court what he did.  Mr. Levandowski responded that his lawyers had
24 advised against testifying at all about these subjects.

25     7.    I do not consider every meeting that I attend or conversation that I have at Uber to
26 be protected by the attorney-client privilege.  I do not consider the discussion that occurred during
27 this second meeting on the evening of March 29 to be privileged because it did not involve the
28 provision of any legal advice to either Mr. Kalanick (on behalf of Uber) or Mr. Levandowski.  At

1  this time, Mr. Levandowski was represented by his personal counsel, Miles Erlich and Ismail
2  Ramsey, and was not seeking any legal advice from me.  (Mr. Levandowski's personal counsel
3  were not present for this meeting, so he was obviously not seeking legal advice from them.)  I
4  told Mr. Levandowski a few times that I was not giving him legal advice.  I did not understand
5  Mr. Kalanick's questions to Mr. Levandowski as seeking any legal advice from me.  And I did
6  not provide any legal advice during that meeting.  For these reasons, Uber has not asserted the
7  attorney-client privilege over the discussions that occurred during this meeting, and therefore has
8  never waived any such protections.

9        8.     A third meeting later that same evening began after Mr. Levandowski's personal
10 attorneys, Mr. Erlich and Mr. Ramsey, arrived at Uber.  I do not recall who called Mr. Erlich and
11 Mr. Ramsey to Uber, nor do I recall the reasons why Mr. Erlich and Mr. Ramsey were summoned
12 to Uber.  I believe, however, that this third meeting occurred because Mr. Kalanick and I wanted
13 to convince Mr. Levandowski to testify about what he had told us, and Mr. Levandowski had said
14 his lawyers advised him not to do so.  Therefore, Mr. Ramsey, Mr. Erlich, Mr. Kalanick, Mr.
15 Levandowski, and I all met in the New York City conference room.

16       9.     At the outset of this meeting, either Mr. Erlich or Mr. Ramsey (I don't recall which
17 one), asked for my oral agreement that this meeting was subject to a common interest agreement,
18 which I provided.  I treated that conversation as covered by a common interest agreement and I
19 continue to treat the conversation as privileged and confidential.  Because I believe I am obligated
20 by the common interest agreement not to divulge the contents of that meeting, I cannot say what
21 was discussed.  I did not provide any legal advice during that meeting.

22       10.    I do not recall any other meetings taking place on the evening of March 29 that
23 related to Mr. Levandowski's bonus explanation or Fifth Amendment invocation.  I do not recall
24 anyone, other than as set forth in this declaration, who was present for any of the conversations
25 and meetings taking place in the evening on March 29, 2017 as described above.

26       11.    I understand that Waymo believes the meetings to which Mr. Kalanick testified
27 during his deposition occurred on March 26.  This is incorrect.  While there was a meeting on
28 March 26, the purpose of that meeting was for Uber's in-house and outside counsel in this

1  litigation to update Mr. Kalanick on the status of the Waymo litigation, to discuss then-pertinent
2  issues regarding the litigation, and to provide legal advice regarding those aspects of the
3  litigation.  One such issue discussed in this meeting was Mr. Levandowski's plan to invoke the
4  Fifth Amendment and the implications of that plan for Uber's defense in this litigation.  This
5  meeting was attended by myself, Mr. Kalanick, Justin Suhr (in-house counsel), Nicole Bartow
6  (in-house counsel), Salle Yoo, as well as outside counsel Karen Dunn, Hamish Hume, Arturo
7  Gonzalez, Rudy Kim, Eric Tate, and Michael Jacobs.  Mr. Levandowski was present at the
8  beginning of the meeting, but left part of the way through the meeting.

9        12.    I declare under penalty of perjury under the laws of the United States of America
10  that the foregoing is true and correct.  Executed this 4th day of August, 2017, in San Francisco,
11  California.

                                          /s/ Angela L. Padilla
                                          Angela L. Padilla

**ATTESTATION OF E-FILED SIGNATURE**

I, Karen L. Dunn, am the ECF User whose ID and password are being used to file this Declaration. In compliance with General Order 45, X.B., I hereby attest that Angela L. Padilla has concurred in this filing.

Dated: August 4, 2017         */s/ Karen L. Dunn*
                              Karen L. Dunn