# EXHIBIT 1

# Andrea P Roberts

| | |
|---|---|
| **From:** | Andrea P Roberts |
| **Sent:** | Tuesday, May 30, 2017 4:13 PM |
| **To:** | UberWaymoMoFoAttorneys; 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com' (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); nchatterjee@goodwinlaw.com; bschuman@goodwinlaw.com; sbrun@goodwinlaw.com; rwalsh@goodwinlaw.com |
| **Cc:** | QE-Waymo; John Cooper |
| **Subject:** | Waymo v. Uber Proposed ESI Order |
| **Attachments:** | 9314588_1_Proposed Order Governing ESI  (2017_05_30).DOCX |

Counsel,

Attached is a proposed ESI Order.  This proposed Order is intended to govern discovery of ESI that is outside the scope of that ordered in Paragraph 6 of the May 11, 2017 Preliminary Injunction Order, i.e. "normal discovery."  Please let us know if Defendants agree.

Thanks,
Andrea


**Andrea Pallios Roberts**
*Of Counsel,*
Quinn Emanuel Urquhart & Sullivan, LLP

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
650-801-5023 Direct
650.801.5000 Main Office Number
650.801.5100 FAX
andreaproberts@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br>       v.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>            Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**[PROPOSED] STIPULATED ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED  INFORMATION** |

1.     **Purpose.** This Order will govern discovery of electronically stored information ("ESI"), in view of the specific facts, contentions, and causes of action present in this case, as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

2.     **General Provisions.**

      a.     **Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information consistent with Fed. R. Civ. P. 26(b)(1).[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

      b.     **Preservation of Discoverable Information.** A party has a common law obligation to take reasonable and proportionate steps to preserve discoverable information in the party's possession, custody or control.  In furtherance of the Federal Rules on proportionality, the categories of ESI identified in Schedule A attached hereto need not be searched, collected, or preserved by Waymo.  Additionally, these data sources are not reasonably accessible by Waymo because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved pursuant to normal business retention, but need not be not searched[2], reviewed, or produced by Waymo:

           i.     backup systems and/or tapes used for disaster recovery;

           ii.    systems, server and network logs; and

           iii.   systems no longer in use that cannot be accessed.

      c.     **Privilege.**

           i.     The parties will follow the guidelines for privilege logs set forth in the Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup.

           ii.    With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs, except that with good cause shown either party may request a privilege log for certain specific post-complaint

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

communications for the time period between the filing of the Complaint and the Court's March 16, 2017 Order re Expedited Discovery.

           iii.    Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privilege or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or any other federal or state proceeding. Information that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been inadvertently produced or if notice is provided.

           iv.    Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI. Disclosures among defendants' attorneys of work product or other communications relating to issues of common interest shall not affect or be deemed a waiver of any applicable privilege or protection from disclosure.

3.    **Custodians.**  Subject to any exclusions set forth herein, if proportionate to the needs of the case, as contemplated by Fed. R. Civ. P. 26(b)(1), the parties shall meet and confer to identify no more than 5 Waymo custodians, 30 custodians collectively from Uber Technologies, Inc. and Ottomotto LLC, and 5 Otto Trucking LLC custodians, most likely to have discoverable information in their possession, custody or control. To the extent that a custodian has been an employee of both Uber Technologies, Inc. and Ottomotto LLC, if they are identified as a custodian, the search for their emails should include searching their email accounts from both companies. That custodian shall count as one custodian for the purpose of this paragraph, even if multiple email accounts are searched.

4.    **Non-custodial data sources.**  Subject to any exclusions set forth herein, the parties agree to identify and collect non-custodial sources of data to the extent a party reasonably

anticipates the source may contain non-duplicative, discoverable documents. The parties agree to limit the scope of discovery from non-custodial sources if it is unduly burdensome or otherwise disproportionate as contemplated by Fed. R. Civ. P. 26(b)(1).

5. **Specific Discovery Issues.**

   a. **On-site inspection of electronic media at Waymo.** Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

   b. **Search methodology.**

      i. If the producing parties elect to use search terms to locate potentially responsive ESI, Waymo may propose a list of 10 terms per custodian to be used by the opposing party (irrespective of any other terms the party may employ to locate documents for potential use in the litigation), and Defendants may collectively propose a list of 10 terms per custodian to be used by Waymo (irrespective of any other terms Waymo may employ to locate documents for potential use in the litigation). To the extent any of the Defendants elect to use search terms to locate potentially responsive ESI in non-custodial sources, Waymo may propose a list of 10 terms per source to be used by the Defendants (irrespective of any other terms the Defendants may employ to locate documents for potential use in the litigation). The parties shall meet and confer on any modifications to the proposed terms needed to improve their efficacy in locating discoverable information and ensuring that the terms are proportional to the needs of the case as required by Fed. R. Civ. P. 26(b). Absent a showing of good cause, a requesting party may not request additional terms to be used in connection with the electronic searches.

      ii. Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include, but are not limited to: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File,

Database File, Dictionary files, Dynamic Link Library, Executables Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, MP3 Files, MP4 Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Quicktime Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Video Media Files, Waveform Audio File Format, Windows Cabinet File, Windows Command Files, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

                iii.       Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate" email threads as follows:  In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-deduplication.

        c.       **Format.**  ESI and non-ESI shall be produced to the requesting party in the formats described in Schedule B.

    6.       **Modification.**

This Stipulated Order may be modified by the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Discovery Order".

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: _____     _____
                                   Counsel for Plaintiff

Dated: _____     _____
                                   Counsel for Defendant

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____     _____
                                   United States District / Magistrate Judge

# SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last- opened dates.

5. Automatically saved versions of documents and emails.

6. Voice messages.

7. Instant messages.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Video and audio recordings.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.

14. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment.

# SCHEDULE B
# PRODUCTION FORMAT AND METADATA

1. **Production Components.** Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

2. **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:
   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)
   - Multi-value delimiter - ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |

| BCC | All recipients that were included on the "BCC" line of the email |
|---|---|
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| DOCDATE | Date an electronic document was last modified or created (format: MM/DD/YYYY) (Edoc or attachment) |
| FILESIZE | Size (in bytes) of an electronic document (Edoc or attachment) |
| FILEEXTENSION | Suffix to a filename that indicates the file format of its content (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |
| TEXTLINK | Link to text files |

4. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the original documents.

5. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

6. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

7. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

8. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

9. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

10. **NATIVE FILE PRODUCTIONS.** Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in either their native format or MS Excel. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

11. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information.  The parties shall meet and confer to finalize the appropriate production format.

12. **Production Media.** Documents shall be encrypted and produced via secured FTP on external hard drives, readily accessible computer(s) or other electronic media ("Production Media").  Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.

1
2
3  DATED: May ___, 2017                QUINN EMANUEL URQUHART & SULLIVAN, LLP
4                                       By _____
5                                         Charles K. Verhoeven
                                          Attorneys for WAYMO LLC
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28