August 7, 2017

**VIA ECF**

Magistrate Judge Jacqueline Scott Corley  **REDACTED VERSION OF**
USDC, Northern District of California  **DOCUMENT SOUGHT TO BE**
San Francisco Courthouse Courtroom F - 15th Floor  **FILED UNDER SEAL**
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc., et al*., N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Plaintiff Waymo LLC ("Waymo") submits this letter brief in support of Waymo's motion to compel the depositions of former Uber Board of Director David Bonderman and current Uber Director Arianna Huffington.

Uber is once again trying to game the system to obstruct Waymo's discovery into what its most senior leadership knew about its employees' trade secret theft and when they knew it. Back in mid-July, Waymo sought to depose three current and/or former members of Uber's Board of Directors – all of whom approved the Ottomotto acquisition before the Put Call Agreement was signed in April 2016 and subsequently received the Stroz Due Diligence Report: Bill Gurley, David Bonderman, and Arianna Huffington. Uber, despite its public protestations that "Nobody is hiding at Uber" (Dkt. 502 at 70), sought to hide all three witnesses – moving for a protective order to block their depositions. (Dkt. 953; *see also* Dkt. 958.) At the July 20 telephonic hearing, the Court proposed an "iterative process" whereby Waymo would start with Mr. Gurley's deposition, and then "after that, if you think you haven't gotten what you need, you'd have to make a showing as to why you need more." (Dkt. 1012 at 5:13-20.) Uber agreed to that proposal. (*Id.* at 6:13-14 ("We'll produce Mr. Gurley for up to four hours.").) However, in an obvious end-run around the Court's iterative approach, Uber then offered Mr. Gurley for deposition on one day, and one day only – August 24, the final day of fact discovery. As Uber knew very well when it tactically offered that date and that date only, Waymo cannot depose Mr. Gurley, obtain and review a final transcript, make a determination of whether additional Board depositions are needed, fully brief a motion to compel, obtain a Court Order granting that motion, schedule deposition dates for Mr. Bonderman and Ms. Huffington, and then take those depositions, all in a single day. Due to these circumstances – created entirely by Uber and its discovery gamesmanship – Waymo therefore seeks relief from the Court to compel the depositions of Mr. Bonderman and Ms. Huffington on dates before the close of the fact discovery period.

Uber has suggested a "counter-proposal" that is unworkable and unfair to Waymo for a number of reasons. Specifically, Uber has offered that Mr. Bonderman and Ms. Huffington could be made available at one or more unspecified dates between August 24 and September 8, if the Court were to grant a motion to compel after an expedited briefing schedule, and if the Court were to approve of taking these depositions after the close of fact discovery. But Judge Alsup has already expressly ruled out such a "delay" solution, ordering that "**In no event may depositions be taken after the discovery cut-off**."[1] (Dkt. 725 at 2.) Uber has not even attempted to seek reconsideration of that Order, let alone obtained it. Further, opening expert reports are due on August 24, and Uber's proposal – even if permitted against the express prohibition by Judge Alsup of out-of-time depositions – would prevent Waymo from including important damages and liability related discovery in its opening reports. Finally, Uber's refusal to provide hard dates for these depositions (as opposed to purported windows of availability) provide no assurance that depositions will actually proceed before September 8, let alone proceed on dates that are mutually agreeable to the parties.

Moreover, discovery taken since the parties briefed these issues in mid-July have only reinforced the need to depose Mr. Bonderman and Ms. Huffington. Uber has finally produced the minutes from the crucial

---

[1] That ruling came after the Court first expressed, back in mid-June, "concern[] that counsel in this action are not moving fast enough to complete depositions and will put too much pressure on the jury trial and final pretrial conference dates[.]" (Dkt. 622.) The Court therefore ordered the parties to meet and confer "to develop a schedule under which all depositions counsel wish to take will be completed before the fact discovery cutoff," to be filed with the Court by June 21. (*Id.*) However, Uber refused to provide its deposition list or dates for witnesses, despite repeated requests by both Waymo and the Special Master, resulting in a "Second Order re Scheduling of Depositions" in which the Court assessed that "the parties have utterly failed to comply with the Court's 'Order re Scheduling of Depositions[.]'" (Dkt. 679.) Finally, the Court resorted to setting an initial schedule itself simply "to keep this case on track." (Dkt. 725.) Waymo is concerned that Uber is once again putting up roadblocks to prevent discovery from being completed in a timely fashion in its latest attempt to create delay and put pressure on the jury trial and final pretrial conference dates.

April 11 Board of Directors meeting where Uber's Board approved the Otto acquisition. (Dkt. 1059-12.) Uber has also – in response to a motion to compel (Dkt. 1060) – produced an unredacted version of the presentation that then-Uber CEO Travis Kalanick and Cameron Poetzscher made to the Board at that meeting. (Ex. 1, UBER00109871.)  That presentation indicates that Uber's most senior leadership was apprised by no later than April 11 of the "███████████████████" related to the Stroz report, including:



(*Id.*)  The April 11 Board meeting was over a year before Mr. Bonderman and Ms. Huffington received copies of the Stroz Due Diligence Report in May of 2017.  Meeting minutes Uber first produced in late July also show that the Board has met repeatedly since the filing of the Complaint to discuss (among other things) ███████████████████████████████████████████████████████████. (Ex. 2, UBER00101499 [May 15, 2017 BoD meeting]; Ex. 3, UBER00101501 [May 22, 2017 BoD meeting]; Ex. 4, UBER00101505 [May 25, 2017 BoD meeting]; Ex. 5, UBER00101507  [June 22, 2017 BoD meeting].)

These long-withheld documents, as well as recent depositions, confirm that different Uber Board members – including Mr. Bonderman and Ms. Huffington – had varying levels of knowledge and opinions about the proposed acquisition, the Due Diligence and indemnification issues, and the question of whether and when to fire Mr. Levandowski for his conduct. (*See, e.g.*, Dkt. 1060-1 [T. Kalanick Deposition Tr.] at 132:25-5 ("Q.  Okay.  Was the board of directors in any way involved in the decision to fire Mr. Levandowski?  A.  They – they – they definitely made their – different board members had different opinions on this, but they definitely made their opinions known to me."); Ex. 6 [E. Michael Deposition Tr.] at 36:11-18 ("Q.  Do you recall discussing the termination of Mr. Levandowski outside of that 60-minute meeting?  A.  Yes.  Q.  With whom?  A.  With – with various board members.  Q.  And which board members?  A.  David Bonderman and Bill Gurley."); Dkt. 1059-12 at 1 ("Mr. Kalanick and Mr. Poetzscher led a discussion regarding a potential acquisition and described key aspects of the proposed transaction.  Members of the Board asked questions.  Discussion ensued.").)

That is on top of the evidence presented in Waymo's earlier brief about their unique knowledge, including Ms. Huffington's conversations with Mr. Kalanick about the letter from Mr. Gurley (and others) demanding Mr. Kalanick's resignation based on, among other reasons, "█████████████████ █████████" which the Board letter recognized to be "█████████" and related to "█████████ ██████████████████████████[.]" (Ex. 7, UBER00099109 at 1; *see also* Dkt. 958.)  Mr. Bonderman and Ms. Huffington therefore have unique knowledge about these highly relevant topics, many of which go to the key issue of what Directors at the very top of the company knew about Mr. Levandowski's theft and retention of Waymo trade secrets, when they knew it, and why Uber nevertheless

permitted Mr. Levandowski free reign to use his personal laptop containing those trade secrets while directing Uber's entire self-driving car project.

Moreover, Waymo has been unable to obtain discovery about these key issues from alternative sources. Uber has broadly instructed witnesses who attended Board meetings "not to speak about the content of those meetings" because there were attorneys present.[2] (*See*, *e.g.*, Dkt. 1060-1 [T. Kalanick Deposition Tr.] at 132:25-136:7; Ex. 6 [E. Michael Deposition Tr.] at 32:11-49:25, 132:5-134:17 ("Q. And what – tell me what you remember about your discussions with Mr. Bonderman? MS. RAY: Wait. I'm going to instruct you not to answer to the extent that your discussions reveal attorney-client privileged communications. THE DEPONENT: Yes, there was the – primarily, the discussion was about what the lawyers were advising David, as a board member, about the – about the Levandowski situation.").) To the extent Waymo has been permitted to even ask about Board meetings, important witnesses have suffered from selective amnesia. For example, even though Mr. Kalanick was sent in advance the "Project Zing Review" slides he presented to the Board, and the minutes clearly state that "Mr. Kalanick and Mr. Poetzscher led a discussion regarding a potential acquisition and described key aspects of the proposed transaction," Mr. Kalanick professed to have no recollection of the meeting or even what "Project Zing" was. (Dkt. 1060-1 [T. Kalanick Deposition Tr.] at 256:11-274:18; 241:5-6 ("Q. What does Project Zing refer to? A. No idea. Q. Is that another name for the deal with Mr. Levandowski? A. I have no idea what it is.").) Emil Michael, then-Senior Vice President of Business, sent a copy of the slides to Mr. Kalanick (Ex. 8, UBER00100361), and also attended the April 11 Board meeting by phone (Dkt. 1059-12 at 1), but similarly testified that he couldn't remember anything about either the presentation or the Board meeting's discussion of the deal. (Ex. 6 [E. Michael Deposition Tr.] at 108:7-109:18.) Mr. Poetzscher, who co-presented the "Project Zing Review" slides with Mr. Kalanick but was deposed in the expedited phase before any of the Board documents had been produced, couldn't remember what day the Board meeting was or who attended, or offer any specifics about the Board's communications beyond the recollection that it was a "serious discussion." (Ex. 9 [C. Poetzscher Deposition Tr.] at 296:9-298:22.) In the face of this campaign of concealment and forgetfulness, Waymo must be permitted to question Uber's Board members about what they remember and what communications they have had outside the presence of attorneys.

Waymo therefore requests an order compelling the depositions of Mr. Bonderman and Ms. Huffington.

Respectfully,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
cc:   All counsel of record; Special Master John Cooper

---

[2] Of course, this position is inconsistent with Uber's position that the March 29 conversation between Mr. Kalanick and Mr. Levandowski was not privileged, despite the presence (as the third and only other participant) of Uber's Associate General Counsel for Litigation & Employment, Angela Padilla. (*See* Dkt. 1060 and Dkt. 1065.)