# EXHIBIT 6
# ENTIRE EXHIBIT
# SUBMITTED UNDER SEAL

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1          UNITED STATES DISTRICT COURT
 2         NORTHERN DISTRICT OF CALIFORNIA
 3             SAN FRANCISCO DIVISION
 4
 5   WAYMO LLC,
 6        Plaintiff,
 7   vs.                    Case No.
 8   UBER TECHNOLOGIES, INC.;   3:17-cv-00939-WHA
 9   OTTOMOTTO LLC; OTTO
10   TRUCKING, INC.,
11        Defendants.
12   _____/
13
14      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
15
16       VIDEOTAPED DEPOSITION OF JOHN KRAFCIK
17              REDWOOD SHORES, CALIFORNIA
18                WEDNESDAY AUGUST 2, 2017
19
20
21   BY:  ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~
22   CSR LICENSE NO. 9830
23   JOB NO. 2661281
24
25   PAGES 1 - 321
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | REDWOOD SHORES, CALIFORNIA | |
| 2 | WEDNESDAY, AUGUST 2, 2017 | |
| 3 | 9:03 A.M. | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | THE VIDEOGRAPHER: Good morning. We are on | |
| 8 | the record at 9:03 a.m. on August the 2nd, 2017. This | 09:03 |
| 9 | is the video-recorded deposition of John Krafcik. | 09:03 |
| 10 | My name is Ken Reeser, here with our court | 09:04 |
| 11 | reporter, Andrea Ignacio. We are here from Veritext | 09:04 |
| 12 | Legal Solutions at the request of counsel for | 09:04 |
| 13 | defendant. | 09:04 |
| 14 | This deposition is being held at 555 Twin | 09:04 |
| 15 | Dolphin Drive, 5th Floor, Redwood Shores, California. | 09:04 |
| 16 | The caption of this case is Waymo LLC versus | 09:04 |
| 17 | Uber Technologies, Inc., et al. | 09:04 |
| 18 | Case No. 3:17-CV-00939 WHA. | 09:04 |
| 19 | Will counsel present please state their names | 09:04 |
| 20 | and who they represent. | 09:04 |
| 21 | MR. GONZALEZ: Arturo Gonzalez for Morrison & | 09:04 |
| 22 | Foerster, on behalf of Uber. | 09:04 |
| 23 | MR. WILSON: Bryan Wilson, also from | 09:04 |
| 24 | Morrison & Foerster, for Uber. | 09:04 |
| 25 | MR. SCHUMAN: Brett Schuman from Goodwin | 09:04 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Procter, on behalf of defendant Otto Trucking, LLC. | 09:04 |
| 2 | MS. TANG: Fiona Tang from Boies Schiller | 09:04 |
| 3 | Flexner, on behalf of Uber and Ottomoto. | 09:04 |
| 4 | MR. NARDINELLI: Jeff Nardinelli from Quinn | 09:04 |
| 5 | Emanuel, for Waymo. | 09:05 |
| 6 | MR. TRESSLER: David Tressler with Waymo. | 09:05 |
| 7 | MR. VERHOEVEN: Charles Verhoeven from Quinn | 09:05 |
| 8 | Emanuel, representing Waymo. | 09:05 |
| 9 | THE VIDEOGRAPHER: Thank you. | 09:05 |
| 10 | If there are no stipulations, the reporter | 09:05 |
| 11 | may administer the affirmation. | 09:05 |
| 12 | | |
| 13 | JOHN KRAFCIK, | |
| 14 | having been sworn as a witness | |
| 15 | by the Certified Shorthand Reporter, | |
| 16 | testified as follows: | |
| 17 | | |
| 18 | EXAMINATION | |
| 19 | BY MR. GONZALEZ: | |
| 20 | Q   Sir, would you state your full name for the | 09:05 |
| 21 | record, please. | 09:05 |
| 22 | A   It's John Francis Krafcik. | 09:05 |
| 23 | Q   Are you the CEO for Waymo? | 09:05 |
| 24 | A   I am. | 09:05 |
| 25 | Q   How long have you been CEO? | 09:05 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MR. GONZALEZ: I don't know the answer to | 09:46 |
| 2 | that. I'll just assume -- I'll assume that it's my | 09:46 |
| 3 | highlighting that I added at some point. | 09:46 |
| 4 | MR. VERHOEVEN: Okay. So, just for the | 09:46 |
| 5 | record, there's highlighting on the date and -- | 09:46 |
| 6 | MR. GONZALEZ: Because my copy is not | 09:46 |
| 7 | highlighted, so I'm assuming that I added that. | 09:46 |
| 8 | MR. VERHOEVEN: Well, why don't you give the | 09:46 |
| 9 | witness the one that -- | 09:46 |
| 10 | MR. GONZALEZ: Sure. That's fine. | 09:46 |
| 11 | MR. VERHOEVEN: That's better. | 09:46 |
| 12 | MR. GONZALEZ: Okay. Fair enough. No, no, | 09:46 |
| 13 | my copy isn't. In any event -- | 09:46 |
| 14 | MR. VERHOEVEN: So, for the record, the | 09:46 |
| 15 | witness is now looking at Exhibit -- | 09:46 |
| 16 | MR. GONZALEZ: 1085. | 09:46 |
| 17 | MR. VERHOEVEN: -- 1085, and it's not | 09:46 |
| 18 | highlighted. | 09:46 |
| 19 | MR. GONZALEZ: Q. So you notice on the upper | 09:46 |
| 20 | right-hand side, the date of this is June 17th, 2015? | 09:46 |
| 21 | A    Yep. | 09:46 |
| 22 | Q    And that's just a few months before you | 09:46 |
| 23 | became CEO; correct? | 09:46 |
| 24 | A    Yeah. I became CEO three months after that, | 09:47 |
| 25 | September 28th. | 09:47 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | Q   And then, if you look right -- right above | 09:47 |
| 2 | the dark box, you see that there's ▮▮▮ | ▮ |
| 3 | ▮▮▮   Do you see that? | 09:47 |
| 4 | A   I see that. | 09:47 |
| 5 | Q   Is this the first time you're seeing this | 09:47 |
| 6 | document? | 09:47 |
| 7 | A   Possibly. | 09:47 |
| 8 | Q   Did anybody ever explain to you how they got | 09:47 |
| 9 | to ▮▮▮ | 09:47 |
| 10 | A   Possibly, but I don't recall specifically. | 09:47 |
| 11 | Q   What is your understanding of who the person | 09:47 |
| 12 | was, or who the people were, who were ▮▮▮ | ▮ |
| 13 | ▮▮▮   before you arrived? | 09:47 |
| 14 | A   I don't know specifically. | 09:47 |
| 15 | Q   Generally? | 09:47 |
| 16 | A   I would guess corp development, corporate | 09:47 |
| 17 | development. | 09:47 |
| 18 | Q   Who in corporate development? | 09:47 |
| 19 | A   I don't know. | 09:47 |
| 20 | Q   And why do you assume corporate development? | 09:47 |
| 21 | A   It's a likely place ▮▮▮ | ▮ |
| 22 | ▮▮▮, but I don't know. | 09:48 |
| 23 | Q   Okay.  Once you became CEO, at some point | 09:48 |
| 24 | after that ▮▮▮; right? | 09:48 |
| 25 | A   Yes.  (▮▮▮) | 09:48 |

Page 47

```
1    (████████████████████)                              09:48
2       Q    And when you say "we," who is "we"?         09:48
3       A    Well, there are many parties to those       09:48
4    discussions, including the -- the board members that 09:48
5    we spoke about, Chauffeur plan members, Chauffeur   09:48
6    bonus plan members.                                 09:48
7       Q    Did you go ███████████████████████████████  09:48
8    ██████)                                             09:48
9       A    They were certainly consulted, yeah.        09:48
10      Q    And -- and are they the same ones that you  09:48
11   mentioned before?                                   09:48
12      A    Yeah.                                       09:48
13      Q    Tell me, for the record, so there's no      09:48
14   confusion.                                          09:48
15      A    (████████████████████████████████)   were   09:48
16   probably the three most engaged.                    09:49
17      Q    How many board members did you have at that 09:49
18   time?                                               09:49
19      A    Again, that construct I'm using was after we 09:49
20   became Waymo.                                       09:49
21      Q    Correct.  That's fair.                      09:49
22           And the Waymo board that you're referring to 09:49
23   is how many people?                                 09:49
24      (█    █████)                                     09:49
25      Q    And who were they?                          09:49
```

Veritext Legal Solutions
866 299-5127

```
1       A    This is already covered, but ▓▓▓▓▓▓▓            09:49
2  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓         09:49
3       Q    And you would have been intensely involved in   09:49
4  these discussions; fair?                                  09:49
5       A    Getting to consensus on ▓▓▓▓▓▓▓▓, yes.          09:49
6       Q    Who on your side, meaning the Waymo side, was   09:49
7  driving the train on these discussions?                   09:49
8       A    Which discussions specifically?                 09:49
9  ( ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ )   I assume -- I assume           09:49
10 that there was a person who was primarily responsible     09:49
11 for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓             09:50
12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓             09:50
13      A    The process involved each side, meaning         09:50
14 Chauffeur plan bonus members ▓▓▓▓▓▓▓▓▓▓▓▓▓▓               09:50
15 ( ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ), and Alphabet ▓▓▓▓▓▓▓▓▓▓▓▓▓▓           09:50
16 ( ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ), and then seeking some consensus.      09:50
17      Q    Fair enough.                                    09:50
18           Who on the Alphabet side was in charge of       09:50
19 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓                     09:50
20      A    For the second of those two parties, do you    09:50
21 mean, or do you mean the Chauffeur plan bonus people?     09:50
22      Q    No.  I mean your side.                          09:50
23           Was that you, or was that somebody else?        09:50
24      A    My role was to essentially bring the parties    09:50
25 together to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓                       09:50
```

```
1      Q    You were more like a mediator?              09:50
2      A    You could sort of leave it that way.        09:50
3      Q    Okay.  So who was the advocate on the Waymo 09:51
4    side who was coming forth with ▇▇▇▇▇▇▇▇?           09:51
5      A    There was the Chauffeur bonus plan team.    09:51
6    Chris Urmson had a major role.                     09:51
7      Q    Okay.  Maybe we're not communicating.       09:51
8           Chris Urmson, was he on the side of the bonus 09:51
9    employees?                                         09:51
10     A    Yes.                                        09:51
11     Q    Yeah, that's -- that's what I assumed.      09:51
12     A    Okay.                                       09:51
13     Q    So who was on the other side?  Who -- who was 09:51
14   on the company side?                               09:51
15     A    Oh, that's a good point.  I -- I don't know 09:51
16   specifically, again, who that was.  This goes back to 09:51
17   it was likely the corporate development function.  09:51
18     Q    And is there somebody in the corporate      09:51
19   development group who's in charge of these sorts of 09:51
20   things?                                            09:51
21     A    I don't know specifically who that was for 09:51
22   this.                                              09:51
23     Q    So, if you had to go back and ask, "Hey, who 09:51
24   was it that was in charge of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇      ▇▇
          ▇▇▇▇▇▇ who would you ask?                     09:52
```

Page 50

| | | | |
|---|---|---|---|
| 1 | A | David Drummond. | 09:52 |
| 2 | Q | Do you recall what ████████████████ | 09:52 |
| 3 | | ██████ during these negotiations or discussions | 09:52 |
| 4 | | in 2015 after you became CEO? | 09:52 |
| 5 | A | I recall ████████████████████ | 09:52 |
| 6 | | ████ | 09:52 |
| 7 | Q | And ████████████████████████? | 09:52 |
| 8 | A | On the Alphabet side, something in the ███ | 09:52 |
| 9 | | ██████████ | 09:52 |
| 10 | Q | And was that ██████████████ arrived | 09:52 |
| 11 | | at after discussions with the board members? | 09:52 |
| 12 | A | I don't know. | 09:52 |
| 13 | Q | Did you think at the time that ████ | 09:52 |
| 14 | | ██████████████████? | 09:52 |
| 15 | A | I thought it was reasonable, yeah. | 09:52 |
| 16 | Q | Why? | 09:52 |
| 17 | | ████████████████████████████████ | |
| 18 | | ████████████████████████████████ | |
| 19 | | ████████████████████ | 09:53 |
| 20 | Q | And, when you say ██████████████ | 09:53 |
| 21 | | ██████ for people that are not as knowledgeable as | 09:53 |
| 22 | | you are about the business world, what do you mean by | 09:53 |
| 23 | | that? | 09:53 |
| 24 | A | Yeah, this goes back a couple of years. | 09:53 |
| 25 | Q | I -- I appreciate your recollection won't be | 09:53 |

Page 51

| | | |
|---|---|---|
| 1 | MR. SCHUMAN: I'm actually handing you what's | 14:46 |
| 2 | been marked as Exhibit 1265. | 14:46 |
| 3 | (Document marked Exhibit 1265 | 14:46 |
| 4 | for identification.) | 14:46 |
| 5 | MR. SCHUMAN: Q. Do you recognize | 14:46 |
| 6 | Exhibit 1265? | 14:46 |
| 7 | MR. VERHOEVEN: Object to form. | 14:46 |
| 8 | THE WITNESS: So I see that this is an e-mail | 14:46 |
| 9 | from -- from Chris Urmson to me on October 14th that | 14:46 |
| 10 | has ███████████████████████████████████ ███ | 14:46 |
| 11 | ███████████████████████ | 14:46 |
| 12 | MR. SCHUMAN: And -- and I think you | 14:46 |
| 13 | testified this morning that the employee -- the -- the | 14:46 |
| 14 | bonus plan participants ████████████████████ ███ | 14:46 |
| 15 | ██████████████████████. | 14:47 |
| 16 | Q   Is this the document ████████████████████ | 14:47 |
| 17 | A   I believe so. Yeah, I believe so. I don't | 14:47 |
| 18 | know for sure. I don't know if this is the final one, | 14:47 |
| 19 | but yeah. | 14:47 |
| 20 | Q   So ██████ is a code name in this document | 14:47 |
| 21 | for Chauffeur; correct? | 14:47 |
| 22 | A   Yeah, it appears to be so. | 14:47 |
| 23 | Q   Okay. | 14:47 |
| 24 | A   I don't recall. | 14:47 |
| 25 | Q   And if you go to the very last page of the | 14:47 |

Veritext Legal Solutions
866 299-5127

```
 1   ███████████████████████   the very last bullet:            14:47
 2   █████████████████████████████████████████                  ██
     █████████████████████████████████████████                  ██
     █████████████████████████████████████████                  ██
 5   ███████████████                                            14:47
 6        So I think -- I mean, this morning you said           14:47
 7   █████████████████████                                      14:47
 8        Is it -- is this ████████████████████████             ██
     ██████████████████████████████████████████████████
10   ██████████████████████████                                 14:47
11      A   You know, I don't know if there was anything        14:47
12   after this, but this is certainly in that ballpark.        14:47
13      Q   Okay.  And then Urmson sends it to you in           14:48
14   October of 2015.                                           14:48
15           Do you recall any further discussions around       14:48
16   ████████████)                                              14:48
17      A   In general, I mean, there were a lot of             14:48
18   discussions to -- ████████████████████████████████████)    14:48
19   ██████████████████████)                                    14:48
20      Q   Was there a similar document prepared to            14:48
21   support the -- ████████████████████████?                   14:48
22      A   It's possible.  I don't have a specific             14:48
23   recollection of it, but it's possible.                     14:48
24      Q   If such a ████████████████ had been                 14:48
25   prepared, would that document likely have been sent to     14:48
```

Page 253

```
1    you in the same way that ████████████████████     
2    ████████████████████?                             14:48
3           MR. VERHOEVEN:  Object to form.             14:48
4           THE WITNESS:  Yeah, I mean, I don't know.   14:48
5    Maybe.  I'm not sure.  It's possible.              14:48
6           MR. SCHUMAN:  Q.  This is shortly after --  14:48
7    very shortly after you joined Chauffeur?           14:49
8        A   Two weeks in.                              14:49
9        Q   Right.                                     14:49
10           Do you recall during last quarter of 2015, 14:49
11   your first quarter there, or early January 2016, any  14:49
12   discussion about ████████████████████              
13   ████████████                                       14:49
14       A   I do, yeah.                                14:49
15       Q   And tell me what you recall about -- about 14:49
16   that topic.                                        14:49
17       A   This -- this is, like, a -- a little speed 14:49
18   bump, where ████████████████████                   
19   ████████████████████                               
20   ████████████████████████████                       
21   ████████████████████████                           
22   ████████████████                                   14:50
23       Q   Do you recall ever discussing with Anthony 14:50
24   Levandowski, prior to the time he left Google, the 14:50
25   possibility of ████████████████                    14:50
```

Veritext Legal Solutions
866 299-5127

1        CERTIFICATE OF REPORTER

2

3        I, ANDREA M. IGNACIO, hereby certify that the
4   witness in the foregoing deposition was by me duly
5   sworn to tell the truth, the whole truth, and nothing
6   but the truth in the within-entitled cause;
7        That said deposition was taken in shorthand
8   by me, a disinterested person, at the time and place
9   therein stated, and that the testimony of the said
10  witness was thereafter reduced to typewriting, by
11  computer, under my direction and supervision;
12       That before completion of the deposition,
13  review of the transcript [x] was [ ] was not
14  requested.  If requested, any changes made by the
15  deponent (and provided to the reporter) during the
16  period allowed are appended hereto.
17       I further certify that I am not of counsel or
18  attorney for either or any of the parties to the said
19  deposition, nor in any way interested in the event of
20  this cause, and that I am not related to any of the
21  parties thereto.
22       Dated: 8/3/2017

23       _____

24       ANDREA M. IGNACIO,
25       RPR, CRR, CCRR, CLR, CSR No. 9830

Page 321