# EXHIBIT 4

| | |
|---|---|
| **From:** | John Cooper <JCooper@fbm.com> |
| **Sent:** | Sunday, August 06, 2017 3:21 PM |
| **To:** | Maxwell Pritt |
| **Cc:** | QE-Waymo; UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; Matthew Cate; DG-GPOttoTruckingWaymo@goodwinlaw.com |
| **Subject:** | Re: Waymo v. Uber - Request for Meet & Confer re Waymo ROG Responses |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Counsel

Meet and confer is scheduled for tomorrow morning at 9:30. Call in 888 759 6039 access 415 954 4410.

John

Sent from my iPhone; dictated to Siri

On Aug 6, 2017, at 2:38 PM, Maxwell Pritt <mpritt@BSFLLP.com> wrote:

> Dear John and Counsel,
>
> Uber requests a meet and confer on Waymo's objections and responses (and failures to respond) to Uber's ROG sets three, four, and five.  I will email separately about Waymo's responses to RFPs sets 4 and 5.
>
> Failure to Respond to ROGs 26 and 27:  Waymo did not respond to ROGs 26 and 27, claiming that it believed "Uber/Otto were limited to a total of 25 interrogatories."  Waymo cites Andrea Roberts' emails from June 8 and June 21 noting that the parties were seeking clarification from the Special Master concerning how many interrogatories each party could serve.  The parties did seek that clarification on June 22 and the Special Master ruled that the plan language of FRCP 33 governs and each party could serve 25 interrogatories on a party, that is, Waymo could serve 25 interrogatories on each of the three defendants and each of the three defendants could serve 25 interrogatories on Waymo.  *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288, 288–89 (D. Mass. 2003) ("Under the plain terms of Rule 33(a), each defendant could, without leave of court, serve 25 interrogatories on the plaintiff.").  Wendy Ray and I were on this call and have reviewed our records, which reflect this ruling.  I also confirmed the ruling again on another meet and confer call a few weeks later, specifically raising our understanding that each party, including each of Uber and Ottomotto, could serve 25 interrogatories, which the Special Master confirmed again.  Please let us know if you will respond to ROGs 26 and 27, and the remaining outstanding ROGs from Uber and Ottomotto.
>
> Objections to ROGs set 3-5 and RFPs set 4-5:  Waymo responds to many of these requests but also includes unexplained boilerplate objections, like "unduly burdensome, oppressive, overly broad, and not proportional," "vague and ambiguous," and "compound, complex and contains multiple subparts."  *See, e.g.*, *Synopsys, Inc. v. ATopTech, Inc.*, 319 F.R.D. 293, 298 (N.D. Cal. 2016) (subparts are permissible as long as they are related to the same subject or contention); *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 1221924, at *2 (N.D. Cal. 2015) (same); *Johnson v. Cate*, 2014 WL 1419816, at *2 (E.D. Cal. 2014) (collecting caselaw overruling boilerplate, unexplained objections like "unduly burdensome,"

1

"irrelevant," "overbroad," and "vague and ambiguous") (collecting caselaw). For each of these requests, please let us know if Waymo is withholding any responsive documents or information on the basis of an objection. If so, please identify the specific requests and objection, and the basis for the objection.

ROGs 15-17: Waymo responded to each of these interrogatories relying entirely on FRCP 33(d) and citing business records, and also referring to deposition transcript in response to ROG 15. References to depositions are not permitted. *E.g.*, *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG(DMR), 2016 WL 2342128, at *1–3 (N.D. Cal. May 3, 2016) ("Incorporation by reference is not a responsive answer"; an interrogatory response "should be complete in itself and should not refer to the pleadings, or to depositions or other documents," and can only incorporate another interrogatory responses if doing so does not require "an elaborate comparison of answers"). Please amend your response to ROG 15.

We are in the process of reviewing your citations to business records in response to these interrogatories. We note, however, that a "responding party may not abuse the [Rule 33(d)] option by directing the propounding party to a mass of undifferentiated records." *Id.*; *Hash v. Cate*, No. C 08-03729 MMC DMR, 2012 WL 6043966, at *3 (N.D. Cal. Dec. 5, 2012) (plaintiff "may not refer to other discovery responses or external documents in his [interrogatory] responses"). Furthermore, if only "some pertinent information may be found in the documents, this is not enough[.]" *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 4999762, at *3 (N.D. Cal. Aug. 21, 2015) (it is the responding party's "burden to show that the documents contain complete answers to the interrogatory").

ROG 18: Waymo's response appears to be limited to steps taken in deciding "whether or not to acquire or enter a commercial partnership or joint venture," but the request also asks about steps Waymo takes in deciding whether to "invest in any company or entity." The response identifies industry consultants but does not "describe the roles and purpose of [those] consultants" at any given stage in the process. The response refers to "further steps" after executing an NDA but it is unclear whether the response describes each step. The response is otherwise exceedingly vague: it says Waymo's teams' objectives are to "acquire information" (what sort of information?), "answer questions" (what types of questions?), and "explore technical requirements and potential transactions structures" (again, what types?). The response also only refers generally to "a partnership manager," "the legal department," "Waymo's management team," and "further legal review," but does not explain, for example, who are the "partnership manager[s]," who is part of the "management team," whether the legal department includes Google/Alphabet attorneys, who conducts the "further legal review." The response also states that Waymo has retained outside counsel "on limited occasions," but fails to explain anything about those occasions. Waymo also states that it has not "retained forensic analysis firms to assist in any part of the process described in this response," but fails to state whether that includes any such firms hired by Waymo's consultants or outside counsel, or whether any Alphabet entities other than Waymo have retained forensic analysis firms. Whether Google/Alphabet (or their attorneys or consultants) have retained forensic analysis firms or conducted forensic investigations in connection with due diligence processes is plainly relevant given Waymo's allegations and accusations about the diligence performed by MoFo and Stroz. Please supplement this response.

ROG 19: Like with ROG 18, Waymo's response does not describe efforts taken in connection with investments contemplated or completed by Waymo. The response also states that Waymo uses NDAs but does not explain anything about the NDAs—what language/provisions protect confidential information shared by Waymo, does Waymo ever share confidential information without using an NDA, what times has Waymo used an NDA and with whom, etc. The response says Waymo "trains its employees on the treatment of confidential information" but does not describe how it trains its employees—e.g., what does that training entail, how often is there training, etc. The response states vaguely that Waymo "holds all employees to the standard of care described in the employee handbook, employee code of conduct, employment and confidentiality agreements, and numerous other Google policies relating to security and confidentiality"; that is plainly insufficient—e.g., how does Waymo hold

2

its employees to any given standard of care, what are those standards, what are the "numerous other Google policies relating to security and confidentiality"?  The response also vaguely states that Waymo "limits information access as much as possible," but provides no explanation whatever regarding how Waymo limiting information access.  Please supplement this response.

ROGs 20 and 24:  Waymo refuses to respond to these requests, presumably based on the objection that efforts taken by Waymo and other Google/Alphabet entities "to prohibit, sequester, or otherwise prevent confidential, propriety, or trade secret information of any other company or entity from entering" their businesses (ROG 20), and the instances in which such information has entered Waymo and other Alphabet entities (ROG 24), are not relevant.  But Waymo has placed Uber's efforts to prevent new employees from bringing or using former employers' confidential, proprietary or trade secret information, and the due diligence performed by MoFo and Stroz, at the heart of this litigation.  Thus, the extent to which other companies' trade secrets came into the possession of Waymo and other Alphabet entities, and the extent to which Waymo and other Alphabet entities failed to take efforts, or took similar or less comprehensive efforts than Uber, to prevent such information from entering Waymo, is plainly relevant.  Please provide full and complete answers to these requests.

ROG 21:  Uber cannot ascertain a complete answer to this interrogatory by referring to the documents Waymo listed.  *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*,  2015 WL 4999762, at *3 (N.D. Cal. Aug. 21, 2015) (holding if only "some pertinent information may be found in the documents, this is not enough"; it is the responding party's "burden to show that the documents contain complete answers to the interrogatory").  The documents are missing metadata that is needed to interpret them, such as date/time; it's unclear whether or not the documents are drafts; the custodian names on all the files is "Google," which makes it difficult to know who contributed to them, signed off on them, or received them;  the P&L statements include financial information for future dates and do not give context for the assumptions underlying the information.  Even Waymo's employees were confused by the lack of this information.  (*See* Haroon Tr. 201:23-202:5 ("Q: Just looking at the file name in the middle of the document here, can you tell whether that is the file name for the final—or the official version of the P&L? A: I can't because it—this file name looks like it was the file name from downloading from Google Drive into [Excel], and I don't recognize a lot of this tag.").)  Also, eight of the 35 "documents" you identify are just different pages of the same document: WAYMO-UBER-00004108, WAYMO-UBER-00004132, WAYMO-UBER-00004137, WAYMO-UBER-00004155, WAYMO-UBER-00004175, WAYMO-UBER-00004195, WAYMO-UBER-00004234.  Please supplement this response with a full and complete answer.

ROG 22:  Waymo responds that will produce at some point in the future responsive documents to the extent they "relate to communications had by Mr. Drummond in the context of his roles at Google and Alphabet."  It is unclear what Waymo means by "the context of his roles at Google and Alphabet."  Please explain whether Waymo intends this phrase to limit its obligation to provide a full and complete answer to this interrogatory, and identify when Waymo will supplement its response with an answer to this request.  Please also explain the basis for the objection and assertion that "any responsive information related to Mr. Drummond's role on Uber's Board of Directors is in Uber's possession."  Presumably information about communications Mr. Drummond had regarding his "role on Uber's Board of Directors" with individuals other than Uber employees would not be "in Uber's possession."

ROG 23: Waymo's response only identifies and cites documents about the acquisition of 510 Systems and Anthony's Robots, and a potential acquisition of Tyto LiDAR.  We are evaluating the referenced documents to see if they contain the information requested.  But this request is not limited to acquisitions; it also includes mergers, joint ventures, partnerships, and investments.  Waymo's response also does not appear to describe other Google/Alphabet entities' transactions motivated primarily or in part by acquiring, hiring or recruiting employees/talent.   Please supplement with this information.

3

ROG 25:  Waymo's response improperly incorporates by reference depositions, briefs, and another interrogatory.  *E.g.*, *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG(DMR), 2016 WL 2342128, at *1–3 (N.D. Cal. May 3, 2016) (an interrogatory response "should be complete in itself and should not refer to the pleadings, or to depositions or other documents," and can only incorporate another interrogatory responses if doing so does not require "an elaborate comparison of answers"); *In re Lithium Ion Batteries Antitrust Litig.*,  2015 WL 4999762, at *3 (N.D. Cal. Aug. 21, 2015) (if only "some pertinent information may be found in the documents, this is not enough"; it is the responding party's "burden to show that the documents contain complete answers to the interrogatory").  Please supplement this response.

Best,
Max

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP