RAMSEY | EHRLICH LLP

ATTORNEYS AT LAW

August 8, 2017

Magistrate Judge Jacqueline Scott Corley
U.S. District Court for the Northern District of California
San Francisco Courthouse, Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:  *Waymo LLC v. Uber Technologies, Inc.*, et al., Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

The Court should deny Waymo's motion to compel an *in camera* submission and production in response to Waymo's two most recent subpoenas to Mr. Levandowski. This Court's prior ruling that Mr. Levandowski properly asserted his Fifth Amendment rights covers the issues in dispute with respect to these subpoenas. Further, Waymo's new document requests on their face demonstrate that Waymo is hoping to compel Mr. Levandowski to identify potentially incriminating records; indeed, Waymo admits as much in its brief.

## Background

In April 2017, Waymo first served third-party witness Anthony Levandowski a subpoena demanding the production of documents. On July 5, 2017, this Court held that Mr. Levandowski properly invoked his Fifth Amendment privilege against self-incrimination with respect to that subpoena. Dkt. 802.[1] Prior to the Court's order, on June 23, 2017, Waymo had already served Mr. Levandowski with another document subpoena. Dkt. 1086-1. And, after the order, on July 17, 2017, Waymo served yet another subpoena. Dkt. 1086-3. Mr. Levandowski objected to the new subpoenas, as many of Waymo's requests again implicate Mr. Levandowski's Fifth Amendment rights. Indeed, at least six of Waymo's new requests expressly seek supposedly misappropriated materials or evidence related thereto. *See* Dkt. 1086-1, Req. 16 (calling for "ALL DOCUMENTS and COMMUNICATIONS REGARDING the MISAPPROPRIATED MATERIALS"), Reqs. 33-36 (seeking documents in Mr. Levandowski's possession "belonging to" Waymo and Google and records referring to such documents) & Req. 37 (seeking records regarding "any attempt to conceal, hide or destroy the MISAPPROPRIATED MATERIALS"). Mr. Levandowski nevertheless undertook a review and produced non-privileged documents in response to the new subpoenas.[2]

Waymo now seeks an order requiring Mr. Levandowski to file another *in camera* submission, along with another public brief, to support his invocation of the Fifth Amendment privilege. Those steps are simply not necessary or appropriate. This Court's prior order generally controls the issues in dispute regarding the latest two document subpoenas. And the incriminating threat of the new subpoena requests can be discerned from the face of the demands themselves. For

---

[1] The Court's order directed than any objections had to be filed on or before July 10, 2017. Waymo filed no such objections, so the order is now law of the case.

[2] Mr. Levandowski has produced a total of 4,293 pages of responsive documents.

example, with respect to its third subpoena to Mr. Levandowski, Waymo's brief explains that each request is intended to capture information about "shell entities" Mr. Levandowski supposedly used "to misappropriate Waymo's intellectual property so that it would be available to Defendants after the acquisition." Dkt. 1086 at 2. In short, by its own admission, Waymo's requests are fishing expeditions designed to ferret out incriminating information in support of its overarching theory that Mr. Levandowski engaged in "a concerted plan to steal Waymo's trade secrets and intellectual property." *See https://medium.com/waymo/a-note-on-our-lawsuit-against-otto-and-uber-86f4f98902a1*.[3]

## Argument

### I.  THE FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION

A witness may invoke the Fifth Amendment privilege against self-incrimination in a civil proceeding if "the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). The Fifth Amendment privilege extends not only to directly-incriminating information, but also to "those circumstances in which disclosures 'could provide an indirect link to incriminating evidence.'" Dkt. 802 at 3 (*quoting Glanzer*, 232 F.3d at 1263).

"[A]n individual may invoke the Fifth Amendment to avoid producing documents on the basis that the act of production 'may have a compelled testimonial aspect' as to that individual." *Waymo LLC v. Uber Techs., Inc.*, 319 F.R.D. 284, 289 (N.D. Cal. 2017) (*citing United States v. Hubbell*, 530 U.S. 27, 36 (2000); *Fisher v. United States*, 425 U.S. 391, 410 (1976)); *see also* Dkt. 802 at 2-3; Dkt. 539 at 8.

> The act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the [subpoenaed witness]. It also would indicate the [witness]'s belief that the papers are those described in the subpoena.

*Fisher*, 425 U.S. at 410; *see also Hubbell*, 530 U.S. at 32-36 (holding that, in response to a subpoena for documents, a subpoenaed witness may refuse to produce because "the act of production itself may implicitly communicate statements of fact," such as admissions that "the papers existed, were in the [witness's] possession or control, and were authentic"); *United States v. Doe*, 465 U.S. 605, 612 (1984) ("Although the contents of a document may not be privileged, the act of producing the document may be."). In short, "[b]y producing documents in compliance with a subpoena, the witness admits that the documents exist, are in his possession or control, and are authentic." *Doe v. United States (In re Grand Jury Subpoena),* 383 F.3d 905,

---

[3] Waymo's letter brief seems to suggest that Mr. Levandowski's only objection to the "supplemental" July 17, 2017 subpoena is that it seeks confidential records. Dkt. 1086 at 1. To be clear, Mr. Levandowski did and hereby does object to the requests in the July 17 subpoena on the ground that the production of responsive records (if they exist) cannot be compelled in light of Mr. Levandowski's Fifth Amendment privilege against self-incrimination.

909 (9th Cir. 2004).  She also implicitly admits the "location" of the documents.  *Fisher*, 425 U.S. at 411; *see also Hubbell*, 530 U.S. at 45; *United States v. Ponds*, 454 F.3d 313, 323-24 (D.C. Cir. 2006).  All of "[t]hese types of admissions implicitly communicate statements of fact that may lead to incriminating evidence."  *In re Grand Jury Subpoena*, 383 F.3d at 909.[4]

As this Court previously recognized, "it is undisputed that this lawsuit implicates Levandowski's Fifth Amendment privilege."  Dkt. 802 at 3.  "Waymo has repeatedly accused Levandowski of stealing Waymo's trade secrets—a crime under state and federal law—and the district court made a formal referral to the United States Attorney's Office to investigate the possible criminal misappropriation of Waymo's trade secrets."  *Id.*  "Levandowski thus faces at least the possibility that he will be prosecuted for stealing Waymo's trade secrets."  *Id.*

## II.  NO *IN CAMERA* SUBMISSION IS NECESSARY TO DEMONSTRATE THE INCRIMINATING POTENTIAL OF WAYMO'S NEW DEMANDS

Waymo asks this Court to require Mr. Levandowski to again make an *in camera* showing, accompanied by a public brief, to support his invocations of the Fifth Amendment privilege in response to the two new subpoenas.  Dkt. 1086 at 1-2.  But many of the requests in Waymo's new subpoenas (at least fifteen) mirror previous requests with respect to which the Court has already reviewed Mr. Levandowski's *in camera* submission and determined that his invocation of the Fifth Amendment was valid.  Dkt. 802.  As to the remaining requests, there is no need for an *in camera* showing because the incriminating character of the document requests is apparent from the face of the requests themselves, particularly in light of Waymo's explanation for why it seeks the documents.

Although it is often appropriate for a court to consider an *in camera* submission when deciding Fifth Amendment issues like the ones at bench, in some cases the threat of incrimination is plain even without the granular showing that would be entailed by an in camera submission.  For example, in *SEC v. Forster*, 147 F. Supp.3d 233 (S.D.N.Y. 2015), the court found that the SEC's document requests were incriminating on their face.  *Id.* at 228-30; *see also Doe*, 465 U.S. at 617 (finding, without the benefit of an *in camera* submission, that "[t]he act of producing the documents at issue in this case is privileged" under the Fifth Amendment); *SEC v. Chin*, No. 12-cv-01336-PAB-BNB, 2012 U.S. Dist. LEXIS 182252 at *10-26 (D. Colo. Nov. 29, 2012) (finding that the SEC's broad document demands were incriminating on their face and an *in camera* review was not necessary).  Indeed, the Supreme Court has held that the "text of [a] subpoena itself" may demonstrate the propriety of a witness's invocation of the Fifth Amendment privilege against self-incrimination.  *Hubbell*, 530 U.S. at 41.[5]

---

[4] The Fifth Amendment does not bar the enforcement of a government subpoena if the existence and location of the sought-after documents are known to the government and therefore the subpoena recipient's production of the documents "adds little or nothing to the sum total of the Government's information."  *Fisher*, 425 U.S. at 411.  As this Court observed in its July 5, 2017 order, however, this "foregone conclusion" exception, to the extent it applies at all in a civil case, must focus on information known *to the government*, not to Waymo or Google—and "there is no evidence in the record as to the government's knowledge."  Dkt. 802 at 5.

[5] Waymo cites *United States v. Brown*, 918 F.2d 82 (9th Cir. 1990) for the proposition that *all* "assertions of the Fifth Amendment must be made on a 'document-by-document' basis."  Dkt. 1086 at 2.  *Brown*

Furthermore, as discussed in prior briefing, the breadth of a records request is often an important factor in determining whether producing responsive records would amount to implicit testimonial incrimination. Courts recognize that a discovery request's "broad language contributes to a finding that the response . . . may be testimonial." *In re Grand Jury Subpoena*, 383 F.3d at 910-11; *see also Hubbell*, 530 U.S. at 41-42 ("Given the breadth of the description of the 11 categories of documents called for by the subpoena, the collection and production of the materials demanded was tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents fitting certain broad descriptions . . . . [I]t is undeniable that providing a catalog of existing documents fitting within any of the 11 broadly worded subpoena categories could provide a prosecutor with a 'lead to incriminating evidence,' or 'a link in the chain of evidence needed to prosecute.'"); *Doe*, 465 U.S. at 614 n.12 (quoting the court of appeals for the proposition that "[t]he most plausible inference to be drawn from the broad-sweeping subpoenas is that the Government, unable to prove that the subpoenaed documents exist . . . is attempting to compensate for its lack of knowledge by requiring the appellee to become, in effect, the primary informant against himself"); *In re Grand Jury Proceedings, Subpoenas for Documents*, 41 F.3d 377, 380 (8th Cir. 1994) ("The broader, more general, and subjective the language of the subpoena, the more likely compliance with the subpoena would be testimonial."); *United States v. Fox*, 721 F.2d 32, 38 (2d Cir. 1983) ("The inference we draw from this broad-sweeping summons is that the government is attempting to compensate for its lack of knowledge by requiring [the witness] to become the primary informant against himself."); *Chin*, 2012 U.S. Dist. LEXIS 182252 at *17 ("The difference between subpoena categories to which a respondent must make a document-specific Fifth Amendment objection and those to which no such document-by-document objection is necessary turns on whether the respondent is 'being compelled to disclose the existence of incriminating documents which the Government is unable to describe with reasonable particularity.'" (*quoting Hubbell*, 530 U.S. at 29-30)); Dkt. 539 at 9-10.

Here, for several reasons, the threat of incrimination is apparent from the face of Waymo's requests.

**First**, many of Waymo's demands seek "misappropriated materials," information related to such materials, or such similar sub-categories as "DOCUMENTS belonging to WAYMO" or "REGARDING WAYMO'S LiDAR." *See* Dkt. 1086-1 (Requests No. 16, 31, 33-37).[6] This Court has already found that Mr. Levandowski cannot be compelled to produce such materials, if they exist, because "requiring Levandowski to produce the 'Misappropriated Materials,' or documents referring to the Misappropriated Materials in response to [Waymo's request] could directly incriminate him for stealing trade secrets." Dkt. 802 at 3-4. The Court's ruling was

---

does not so hold. Instead, the *Brown* court simply held that, where a subpoena respondent failed to make a showing in an IRS summons proceeding justifying his invocation of the Fifth Amendment privilege, he was properly held in contempt by the district court. 918 F.2d at 84. Here, by contrast, Mr. Levandowski contends that the requisite showing is accomplished by the subpoenas themselves and the underlying circumstances of the case.

[6] Waymo's new subpoena defines "MISAPPROPRIATED MATERIALS" in the same manner as the subpoena this Court considered in its July 5, 2017 order (Dkt. 802). *Compare* Dkt. 212-1 at 3 with Dkt. 1086-1 at 16.

plainly correct—the documents subject to Waymo's demands are either directly incriminating or could "give a prosecutor a starting point from which he might proceed step by step to link the witness with criminal offenses," *J.C. Penney Life Ins. Co. v. Houghton*, No. 86-2637, 1986 U.S. Dist. LEXIS 16072 at *9 (E.D. Pa. Dec. 23, 1986*); see also* Dkt. 539 at 19-21—and the Court's holding should apply as well to Waymo's new requests.[7]

**Second**, many of Waymo's new requests seek Mr. Levandowski's communications with Uber employees.  *See* Dkt. 1086-1 Requests No. 3, 9-13, 19-20.  As before, Mr. Levandowski is producing non-privileged documents responsive to these requests and asserting the Fifth Amendment privilege with respect to records, if any, the production of which could incriminate him.  This is the same approach he took in response to a nearly identical request in Waymo's first subpoena—and one that the Court approved.  Dkt. 802 at 4.  Waymo's earlier request sought "All communications between You and Uber between January 2015 and August 2016."  *Id.* at 1.  The June 23, 2017 subpoena (Dkt. 1086-1) effectively repeats this request:

- Request No. 3 seeks "All DOCUMENTS and COMMUNICATIONS REGARDING UBER before August 23, 2016."  For the same reason that communications *with* Uber might be incriminating, communications *about* Uber—if they existed—would also be incriminating.  As the Court acknowledged in its July 5, 2017 order, "[c]ommunications between Mr. Levandowski and Uber employees during the period in question plainly have the potential—fairly or unfairly—to incriminate Mr. Levandowski and provide context for an argument concerning his intent or preparations for the alleged misappropriation."  Dkt. 802 at 4 (quoting Dkt. 539 at 26-27).

- Requests No. 9-13 and 19-20 each seek communications with Uber employees.  Accordingly, these demands seek subsets of the records that Waymo already sought in its April 2017 subpoena—and the production of which this Court has already refused to compel.  *See* Dkt. 802 at 1, 4.  As before, Mr. Levandowski has produced other communications that do not implicate his Fifth Amendment rights.

**Third**, many of Waymo's requests (twenty-two in all) seek records the production of which—if they exist—would obviously tend to incriminate Mr. Levandowski.  *See* Dkt. 1086-1 (Requests No. 1, 2, 4-6, 24-27), Dkt. 1086-3 (Requests No. 1-13).  These requests seek information about specific entities: Odin Wave, Tyto, Apparate International, Pouch Holdings, Dogwood Leasing, Sandstone, Bismuth, and Alaska.  But the broad nature of the requests demonstrates that they are fishing expeditions—they seek "all communications," "all agreements" and "all documents" with respect to the specified entities.  And Waymo's brief explains that it is fishing for incriminating information in support of its theories that Mr. Levandowski (1) "while still a Waymo employee and downloading files for use by Defendants – was also funneling Waymo trade secrets to, and personally funding, another LiDAR company designed to be acquired by

---

[7] For the reasons set forth in this section, Waymo's requests calling for "ALL COMMUNICATIONS" with certain individuals "REGARDING WAYMO, GOOGLE, or LiDAR," likewise implicate Mr. Levandowski's Fifth Amendment protections.  Dkt. 1086-1 (Requests No. 17, 19-22).  So do Waymo's requests for communications and agreements with Lior Ron.  Dkt. 1086-1 (Requests No. 18 and 28).

Ottomotto (and Uber)," Dkt. 1086 at 3; and (2) used "shell entities" in order "to misappropriate Waymo's intellectual property," *id.* at 2.[8]

Because Waymo's broad requests are an obvious attempt to establish its incriminating theories "by requiring the appellee to become, in effect, the primary informant against himself," the Fifth Amendment applies. *Doe*, 465 U.S. at 614 n.12. Indeed, as Waymo's counsel made clear, Mr. Levandowski's mere possession of documents relating to these business entities—if such possession could be proved—would constitute a link in the chain of evidence that would help to establish purported misconduct by helping to show Mr. Levandowski's connection with purported "shell" entities into which he supposedly "misappropriated" "Waymo trade secrets" in order to generate profits. Mr. Levandowski cannot be compelled, absent a grant of immunity, to make that link himself.

**Finally**, others of Waymo's requests seek documents clearly protected by other privileges. For example, Waymo seeks Mr. Levandowski's agreements with his attorneys. Dkt. 1086-1 (Request Nos. 29-30). Waymo also seeks Mr. Levandowski's "COMMUNICATIONS with STROZ" and "any PERSON REGARDING STROZ." *Id.* (Requests No. 14-15). Mr. Levandowski's position with respect to any Stroz materials has been thoroughly briefed and is now pending before the Federal Circuit.[9]

### Conclusion

For all of the above reasons, the Court should deny Waymo's motion and sustain Mr. Levandowski's assertion of his Fifth Amendment privilege without the need for an *in camera* submission. Of course, should the Court order a further *in camera* submission to support his assertion of his Fifth Amendment privilege regarding these two latest subpoenas, Mr. Levandowski will provide one.

Respectfully submitted,

*/s/ Ismail J. Ramsey*
Ismail Ramsey
RAMSEY & EHRLICH LLP
*Counsel for Non-Party Anthony Levandowski*

cc: Counsel of record (via ECF); Special Master John Cooper

---

[8] Given the nature of Waymo's theories, Waymo's requests calling for "ALL DOCUMENTS REGARDING the formation of OTTOMOTTO" and "OTTO TRUCKING," Dkt. 1086-1 (Requests No. 7 and 8), and "All agreements with any DEFENDANT," Dkt. 1086-1 (request No. 23), likewise implicate Mr. Levandowski's Fifth Amendment rights.

[9] During the meet and confer process, Special Master Cooper put aside Waymo's request number 32 as an improper fishing expedition, as it seeks *all* "COMMUNICATIONS with *any* PERSON REGARDING THIS CASE." Dkt. 1086-1 (Request 32 (emphasis added)).