# EXHIBIT 1

KeyCite Yellow Flag - Negative Treatment
Distinguished by In the Matter of Schering-Plough Corporation, a corporation, Upsher-Smith Laboratories, a corporation, and American Home Products Corporation, a corporation., F.T.C., February 12, 2002

1999 WL 608711
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.

ADVERTISING TO WOMEN, INC.
and LOLIERE, INC., Plaintiffs,
v.
GIANNI VERSACE S.p.A.; Saks Fifth Avenue;
and Versace Profumi U.S.A. Ltd.; Defendants.

No. 98 C 1553.
|
Aug. 4, 1999.

MEMORANDUM OPINION AND ORDER

SCHENKIER, Magistrate J.

 *1 This case comes before the Court on Plaintiffs' motion to compel production of documents and testimony relating to advice-of-counsel on the trademark in suit, which is before this Court pursuant to a referral order dated June 17, 1999 for ruling on all discovery motions. For the reasons stated below, the motion to compel is denied.

BACKGROUND

Plaintiffs Advertising to Women, Inc. and Loliere, Inc. (collectively, "ATW") initiated this action in March 1998, alleging that Defendants Gianni Versace S.p.A and Versace Profumi U.S.A. Ltd. (collectively, "Versace") willfully infringed upon ATW's federally registered eau de BLONDE trademark for perfume, in violation of the Lanham Act, 15 U.S.C. § 1051 et seq. On July 22, 1997, Versace answered, denying any infringement and asserting various affirmative defenses, including laches and estoppel. Thereafter, in December 1998, ATW served its first request for the production of documents (Pl.Mem., Ex. A.). In that request, ATW asked for documents concerning "opinions of counsel rendered regarding [Versace's Blonde trademarks]" (Id., Request No. 33). In February 1999, Versace responded with an assertion of the attorney-client privilege and work product doctrine, and did not indicate it would produce any documents (Def. Mem., Romer Aff., Ex. E, Response to Request No. 33). At the time of that response, plaintiffs did not challenge the invocation of those privileges as having been waived by the assertion of the estoppel and laches defenses.

Thereafter, Versace produced additional documents in connection with the deposition of Luciano Abbati on May 6–7, 1999. Those documents include two cover letters from the Italian trademark firm of Notarbartolo & Gervasi, which enclosed computerized search results on the availability of the mark BLONDE in Italy (Def. Mem., Romer Aff., Ex. C). Those cover letters and attached searches are in the Italian language, and neither side has offered the Court a verbatim translation of those documents.

The issue now before the Court appears to have come to a head in June 1999, when ATW served deposition notices for three attorneys who represented Versace in connection with the Versace BLONDE mark: Ricardo Gori–Montanelli, Lawrence Abelman, and Jonathan Tillem. ATW again requested that Versace produce documents relating to advice of counsel, but Versace's counsel asserted that Versace did not intend to produce such documents since it was not relying on advice of counsel as a defense to the claim of willful infringement (Pl. Mem. at 4). Versace further asserted that Gori–Montanelli, Abelman and Tillem would not answer any questions in their depositions relating to advice-of-counsel rendered in connection with the trademark in suit (Id.).

The parties agree that Versace is not relying on advice of counsel as a defense to plaintiffs' claim of willful infringement. However, plaintiffs assert that Versace nonetheless has waived its privilege on advice of counsel regarding the trademark in suit for two reasons: *first,* plaintiffs assert that Versace waived the privilege by voluntarily producing in May 1999 the two Italian-language cover letters that transmitted trademark searches (plaintiffs do not claim that the production of the searches themselves constitutes a waiver); and *second,* plaintiffs claim that the assertion of the estoppel and laches defenses necessarily placed in issue the advice of counsel regarding the trademark in suit, and thus waived the privilege. Based on this alleged waiver, plaintiffs seek to compel production of certain documents from Versace's

privilege log (Pl. Mem. Ex. F, Doc. Nos. 3, 9, 11, 12, 14–17, 21–25, 27–33, 37–43, 47, 49, 51–56, and 60–69); an *in camera* review of the other 26 documents on that log to determine if they pertain to advice of counsel regarding the trademark and thus must be produced; and an order barring Versace from asserting attorney-client privilege to bar Messrs. Abelman, Tillem and Gori–Montanelli from testifying about advice of counsel or opinions sought or received regarding the trademark in suit.

**\*2** Versace, not surprisingly, disagrees. At the threshold, Versace claims that this motion comes too late in the discovery process to be heard at all (in short, that plaintiffs have waived the waiver argument). Versace also claims that the motion is substantively without merit: *first,* that no privileged material was produced and, that if it was, the production was inadvertent, and *second,* that the assertion of a laches defense is not enough to waive the privilege.[1]

After careful review of the arguments and cases submitted by the parties, the Court concludes that: (1) Versace has not waived an attorney-client privilege with respect to any documents regarding the trademark in suit by voluntarily producing the two cover letters; and (2) plaintiffs' assertion of waiver based on laches comes too late and, in any event that, Versace's assertion of the laches defense does not waive the privilege. The reasons for these conclusions are set forth below.

## I.

ATW contends that Versace waived the attorney-client privilege by voluntarily producing the two cover letters, which ATW claims are privileged documents (Pl. Mem. at 6). ATW argues that the documents produced are privileged because the foreign agents who wrote the letters acted as attorneys and provided substantive legal advice (*Id.* at 7). For its part, Versace insists that the agents were not acting as attorneys giving legal advice, but merely passing along results from an Italian trademark search (Def. Mem. at 10–11).[2]

The Court follows a three-step analysis in addressing claims for waiver based on production of privileged documents: (1) determine if the document is indeed privileged; (2) if the document is privileged, then determine if the document was inadvertently produced; and (3) if the document is found to be privileged and inadvertently produced, then determine whether the privilege was waived. *See Tokar v. City of Chicago,* No. 96 C 5311, 1999 WL 138814, at \*1 (N.D.Ill. Mar. 5, 1999). We address each of the steps of this analysis in turn.

## A.

The Seventh Circuit defines the attorney-client privilege as "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are ... permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir.1997). The definition of attorney client privilege in this Circuit, however, does not control resolution of this motion. As a matter of comity, this Court will recognize Italian law of attorney-client privilege, provided the law does not conflict with the laws of this jurisdiction. *See Burroughs Wellcome Co. v. Barr Labs., Inc.,* 143 F.R.D. 611, 616–17 (E.D.N.C.1992). Thus, the Court must look to Italian law to determine if the cover letters are privileged, because the drafters of these letters are Italian patent agents and/or attorneys and the communications in these letters are, according to both parties, related to Italian trademark activities. *See Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.,* No. 95 CIV. 8833(RPP), 1998 WL 158958, at \*1 (S.D.N.Y. Apr. 2, 1998); *Baxter Travenol Labs., Inc. v. Abbott Labs.,* No. 84 C 5103, 1987 WL 12919 at \*8 (N.D. Ill. June 19, 1987).

**\*3** Since it is ATW that asserts that the cover letters are privileged, in order to argue that there has been a waiver of that privilege by the voluntary production of those two documents, it is ATW that bears the burden of proving that the letters are privileged. *See Diversey U.S. Holdings v. Sara Lee Corp.,* No. 91 C 6234, 1994 WL 71462, at \*1 (N.D.Ill. Mar. 3, 1994). Therefore, ATW is responsible for providing the Court with the Italian law on privilege and a translation of the cover letters so that the Court can make the relevant determinations. As discussed below, ATW has failed to provide the Court with such proof, and its motion to compel must be denied.

The general rule is that the determination whether a communication between a foreign patent agent and a client is privileged depends upon whether under the

foreign law: (1) certain communications between a foreign patent agent and a client can be privileged, and (2) whether the information conveyed in a particular communication at issue in fact falls within that privilege. *Baxter,* 1987 WL 12919, at *8. Under this rule, the Court must look to foreign law to determine whether a communication between a client and a foreign patent agent, engaged in the lawyering process, is privileged under that law. *Id.* It is true that in *Burroughs,* the court confronted the issue of Italian attorney-client privilege and found that "under Italian law, attorney-client privilege attaches to a [trademark] attorney's communications to and from a client." 143 F.R.D. at 623. However, *Burroughs* does not answer the question whether the privilege attaches to communications between an Italian patent agent and a client, and there is a dispute here as to whether the drafters of the letters were acting as attorneys or patent agents. Although ATW cites *Baxter,* which points out that the existence of privileged communications between foreign agents and clients depends on the law of the foreign country, 1987 WL 12919, at *8, ATW inexplicably fails to provide this Court with the requisite proof of whether communications with trademark agents may be privileged under Italian law.

In their opening memorandum, Plaintiffs refer to the authors of the two cover letters (Ms. Cristina Cazzetta and Ms. Emma Casagrande), who are with the Italian firm of Notarbartolo and Gervasi, as "Italian trademark *agents* " (Pl. Mem. 7, emphasis added)—which is not the same thing as *attorneys.* In their reply, plaintiffs provide more specifics about their backgrounds (Pl. Reply Mem., Rao Decl., ¶¶ 3–7). Ms. Casagrande does not appear to be a lawyer by training, and is not mentioned in the Martindale–Hubbell listing for the Gervasi firm. As for Ms. Cazzetta, she is a lawyer by training who is authorized to practice in the Italian trademark office. But she is not admitted to any Italian bar as an attorney, and is not listed in that capacity in Martindale–Hubbell (*Id.,* Ex. A).

On the other hand, plaintiffs' reply cites the deposition testimony in which Versace's in-house counsel, Ms. Rossi, referred to Ms. Cazzetta as a "lawyer" (Pl. Reply Mem., Rao Dec., Ex. D, Rossi Tr. 92–93). Moreover, plaintiffs note that Versace has asserted privilege for documents written or received by Ms. Rossi (Pl. Reply Mem. 3), even though—like Ms. Cazzetta—Ms. Rossi is a law school graduate, but is not admitted to the bar in Italy (Pl. Reply Mem., Rao Dec., Ex. D, Rossi Tr. 3). Although virtually all of those documents are between Ms. Rossi and a licensed attorney, one—(Pl.Mem., Ex. F, Doc. No. 61)—is between Ms. Rossi and Ms. Cazzetta. Another (Pl.Mem., Ex. F, Doc. No. 62) is between Ms. Cazzetta and Dominico Pappalettera, who is not identified as a lawyer.

**\*4** On the face of it, all of this might suggest that Versace treated Ms. Cazzetta (but not Ms. Casagrande) as an attorney, and that she possibly acted as such. The Court cannot be sure of this, however; it is possible that the two documents in the log mentioned above (Pl.Mem., Ex. F, Doc. Nos.61, 62) reflected advice from a licensed attorney that was being passed on to or by Ms. Cazzetta. Moreover, despite offering evidence that Ms. Cazzetta may have functioned as an attorney *generally,* plaintiffs have offered no evidence that she did so with respect to the *particular* letter in issue. Nor have they offered evidence to rebut the declaration offered by Versace that neither Ms. Cazzetta nor Ms. Casagrande dispensed legal advice, but acted strictly as trademark agents with respect to the letters (Def.'s Mem., Cannatella Aff. ¶¶ 5–6). Indeed, plaintiffs have failed even to provide the Court with an English translation of the two letters, which are written in Italian.

If a foreign agent is merely transmitting non-confidential information to a client, the communication is not privileged. *See Baxter,* 1987 WL 12919, at *8 (*citing Mendenhall v. Barber–Greene,* 531 F.Supp. 948, 953 (N.D.Ill.1982). The analysis shifts, however, if the foreign agent is providing substantive legal advice. Where a foreign agent "...is engaged in the substantive lawyering process and communicates with his client, the communication is privileged to the same extent as a communication between an American attorney and his client." *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.,* No. 95 C 0673, 1996 WL 732522, at *10 (N.D.Ill., Dec. 18, 1996). Plaintiffs' failure to provide translation of the letters and other evidence to rebut that Cannatella affidavit makes it impossible to verify plaintiffs' assertion that the letters contain privileged information. Without such information, the Court cannot determine whether the subject matter of the cover letters falls within the attorney-client privilege, either as applied under Italian law or in this forum. The failure of proof here must rest with the plaintiffs, who bear the burden of establishing waiver (and with it, the necessary prerequisite that the documents in

question were privileged). *Sara Lee,* 1994 WL 71462, at *1. ATW's motion to compel must therefore be denied.[3]

B.

Even if ATW were to offer the Italian law on privilege and a translation of the cover letters, and if this evidence showed that the letters were privileged, this Court still would not grant the motion because this Court finds that the cover letters were "inadvertently" produced. Versace asserts that if the documents are indeed privileged, then they were produced inadvertently (Def. Mem. at 11). In determining inadvertence, there is no bright-line rule; instead, the Court must look to the "circumstances surrounding the disclosure." *Harmony Gold U.S.A., Inc. v. FASA Corp.,* 169 F.R.D. 113, 116 (N.D.Ill.1996).

**\*5** ATW asserts that Versace is unable to prove inadvertence, based on a balancing test consisting of five factors: "1) the reasonableness of the precautions taken to prevent the disclosure; 2) the time taken to rectify the error; 3) the scope of the discovery; 4) the extent of the disclosure; and 5) the overriding issue of fairness." *Sanner v. Board of Trade,* 181 F.R.D. 374, 379 (N.D.Ill.1998). However, this particular mode of analysis does not fit will here, because the facts of this case do not fall within a traditional "inadvertent production" analysis. Inadvertent production most typically arises in a situation where a party is producing large quantities of documents in a compressed time frame, and a privileged document is unwittingly produced. Here, Versace admits that the cover letters were intentionally (not inadvertently) produced. But Versace claims that the cover letters were produced intentionally because Versace believed they were *not* privileged, and that Versace had no intention of knowingly producing privileged documents (Def. Mem. at 11).

Under these circumstances, it seems only fair to conclude that if privileged, the cover letters were "inadvertently" produced because Versace never intended to turn over privileged communications. Fairness is an "overriding issue" in the inadvertent production analysis. *Sanner,* 181 F.R.D. at 379. The information before the Court does not indicate that Versace lacked a good-faith basis to believe that the cover letters were not privileged. In these circumstances, fairness would be ill-served by applying waiver simply because a court later found that

Versace erred in its assessment. Accordingly, even if the documents were found to be privileged, the Court would not find waiver based on their production because, given the "circumstances surrounding the disclosure," the production was inadvertent.

II.

Versace raises the defense of laches to ATW's infringement claim (Def. Mem. at 1). ATW contends that raising the defense of laches waives any claim of attorney-client privilege with respect to documents produced in this case (Pl. Mem. at 5–6; Pl. Reply Mem. at 5). Versace insists that there is no reliance element to laches, and thus, the assertion of laches does not waive the privilege (Def. Mem. at 8).

The affirmative defense of laches consists of "(1) an unreasonable and unexcused delay plus (2) prejudice to the defendant ." *A.C. Aukerman Co. v. Miller Formless, Co.,* 693 F.2d 697, 701 (7th Cir.1982); *see also Hot Wax, Inc. v. Turtle Wax, Inc.,* 27 F.Supp.2d 1043, 1048 (N.D.Ill.1998). Estoppel combines the two elements of laches with two additional, critical elements: "(3) affirmative conduct by the [plaintiff] inducing the belief that it had abandoned its claims against the alleged infringer, and (4) detrimental reliance by the infringer." *Aukerman,* 693 F.2d at 701. Thus, while estoppel requires proof of detrimental reliance by the defendant, laches does not. *See Denstply Int'l, Inc. v. Sybron Corp.,* No. 84 C 3822, 1986 WL 5757, at *3 (N.D.Ill. May 12, 1996).

**\*6** The Court believes that this distinction between the requisite elements of estoppel and laches undermines plaintiffs' argument that the assertion of laches waives the privilege. The defense of laches looks to whether a defendant suffered harm by reason of a plaintiff's delay in bringing suit, and the reasons why plaintiff delayed. The advice of counsel received by a defendant does not pertain to either issue, as laches does not require an inquiry into defendant's state of mind. Thus, the mere assertion of a laches defense, without more, does not result in a waiver of the attorney-client privilege.

None of the cases cited by plaintiffs applies a waiver solely as a result of the assertion of a laches defense. Indeed, in *Pittway Corp. v. Maple Chase Co.,* No. 91 C 3582, 1992 WL 392584, at *6 (N.D.Ill.Dec. 16, 1992), the court

stated that even raising the defense of estoppel based on detrimental reliance, without specifically putting reliance on advice of counsel into issue, was insufficient to waive privilege. Instead, it was estoppel coupled with reliance on the opinions of counsel that waived the privilege in that case. *Id.* That is also true of other key cases upon which plaintiffs rely. *Videojet Systems Int'l v. Inkjet, Inc.,* No. 95 C 7016, 1997 WL 138008 at *4 (N.D.Ill. Mar. 19, 1997); *McLaughlin v. Lunde Truck Sales, Inc.,* 714 F.Supp. 916, 919–20 (N.D.Ill.1989); *Southwire Co. v. Essex Group, Inc.,* 570 F.Supp. 643, 650 (N.D.Ill.1983). Those cases provide no support for asserting waiver based merely on the assertion of a laches defense.

ATW argues that it cannot assess the strength of the laches defense without reviewing opinions of counsel relied upon by Versace (Pl. Mem. at 6). In other words, plaintiffs claim they should be entitled to offer evidence that Versace did not, in fact, rely upon plaintiffs' delay in bringing this lawsuit as a basis for going forward with its allegedly infringing trademark. Plaintiffs claim such evidence may be found in the advice of counsel and so claims that it must have access to otherwise privileged documents. However, Versace no longer asserts an estoppel defense, and proof of reliance by Versace is not an element of laches. Moreover, ATW's argument sweeps far too broadly, as it is tantamount to asserting that a defendant is invariably put to the Hobson's choice of waiving the privilege or forgoing the laches defense. While that may be a defendant's unpalatable choice when putting in issue advice of counsel expressly (by asserting it as a defense to wilfullness), to force that choice upon a defendant who merely asserts laches would run contrary to the principle that a waiver of the attorney-client privilege will not be lightly implied.

Finally, there also is merit to Versace's argument that the motion comes too late insofar as it is based on laches. Unlike the situation concerning the waiver claim based on documents first produced in May 1999, plaintiffs knew about the assertion of the laches defense for some 11 months prior to filing this motion. They knew that Versace asserted privilege at least as of February 1999 to the documents containing legal advice regarding the trademarks in suit. Yet, plaintiffs have offered no reason for their delay in asserting a waiver based on laches until just two weeks before the July 8, 1999 cutoff date for non-expert fact discovery.

***7** In these circumstances, the Court agrees that the motion based on laches appears to be "too little and too late." *Dentsply,* 1986 WL 5757, at *4 (denied motion to compel where the motion was filed only three weeks before the discovery cutoff, and the plaintiff had been aware of the affirmative defense that allegedly waived the privilege for nearly 17 months). In sum, the Court finds that plaintiffs' assertion of waiver based on the laches defense is procedurally barred because it is untimely, and in any event that Versace's assertion of laches does not waive privilege.[4]

CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel (doc. # 77–1) is denied.

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 608711

Footnotes

1   Subsequent to the filing of this motion, by an Order dated July 14, 1999 (doc. # 95–1), the presiding district judge granted the Versace defendants' motion to withdraw their estoppel defense. Accordingly, this opinion will only address the issue of whether there is a waiver based on assertion of laches, and not on estoppel.

2   Versace asserts that ATW delayed in its objection to Versace's assertion of privilege, and that considerations of fairness dictate that this Court should deny ATW's motion (Def. Mem. at 6). As to the prong of the motion based on production of the cover letters, this argument lacks merit. Those documents were not produced until May 6–7, 1999, at the Abbati deposition (Pl. Mem. at 3). ATW filed its motion less than two months after the production of the documents that form the basis of this part of their argument; thus, the motion was timely.

3   There is uncontroverted testimony that the recipient of the cover letters, Ms. Barbetta of Giver Profumi S.p.A. ("Giver"), "is not a defendant in this action, but a 75%-owned subsidiary of Gianni Versace S.p.A." and that the two cover letters were searches performed for Giver, not Versace (Cannatella Aff. ¶ 4). If so, then the communication was not with Versace defendants, and only a defendant can waive its own privilege. See *Southwire v. Essex Group, Inc.,* 570 F.Supp. 643,

|  |  |
|---|---|
|  | 645 (N.D.Ill.1983) ("only the party that holds the attorney-client privilege may waive it"). Plaintiffs have failed to rebut this assertion, which provides further reason for rejecting the waiver argument. |
| 4 | As a result of the Court's finding that there has been no waiver, the Court need not address Versace's assertion that certain documents in issue should not be produced because they are protected work product (Def. Mem. at 7). Moreover, as a result of the Court's ruling today, plaintiffs' request to bar defendants from asserting attorney-client privilege deny the depositions of Messrs. Abelman, Tillem and Gori–Montanelli (Pl. Mem. at 2) is moot. However, because Versace has questioned the authority of the Court to enter such an order (Def. Mem. at 5–6), we pause to observe that Versace's position is without merit. The issue presented was not whether to enforce the subpoenas for deposition, but rather whether to require or prohibit conduct during these depositions by the Versace defendants, who are parties before this Court. The Court wishes there to be no misunderstanding on this point: it plainly possesses full authority to control the conduct of all parties (plaintiffs and defendants) in discovery pursued in this case. |

**End of Document**  © 2017 Thomson Reuters. No claim to original U.S. Government Works.