

August 10, 2017

*Via ECF*

Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

+1 415 773 5700

**orrick.com**

**Melinda Haag**

E  mhaag@orrick.com
D  +1 415 773 5495
F  +1 415 773 5759

Hon. Jacqueline Scott Corley
United States District Court
Northern District of California
San Francisco Courthouse, Courtroom F
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Waymo LLC v Uber Technologies, Inc., et al.*, N.D. Cal Case No.: 3:17-cv-00939-WHA

Dear Judge Corley:

We represent Travis Kalanick in his individual capacity. Although Mr. Kalanick is not a party to this litigation and is not subject to Waymo's motion to compel, we write to assert Mr. Kalanick's important privacy rights and to address inaccurate statements contained in Waymo's August 7, 2017 letter brief. In short, Mr. Kalanick has already produced all responsive text messages located after extensive forensic analysis and manual eyes-on review of all text message data residing on his personal mobile device. Waymo's motion to compel production of Mr. Kalanick's responsive text messages is therefore moot, as production already has occurred.

On June 29, 2017, on Mr. Kalanick's behalf, Orrick caused an image of Mr. Kalanick's personal Apple iPhone 7 to be created. The work was done by Stroz Friedberg in Orrick's San Francisco office, and was observed by Allan Vogel, a forensic analyst retained by Orrick on Mr. Kalanick's behalf. Decl. of Allan Vogel ("Vogel Decl.") ¶ 3. Mr. Vogel used an industry standard forensic application to collect all text message data from the image of Mr. Kalanick's iPhone, including deleted texts and fragments of deleted texts. *Id*. at ¶ 5. Orrick attorneys promptly conducted a manual line-by-line review of this text message data to identify messages between Mr. Levandowski and Mr. Kalanick. Decl. of Robert L. Uriarte ("Uriarte Decl.") ¶ 3. The text message data identified during this comprehensive manual eyes-on review has already been produced to Waymo. *Id*. at ¶¶ 3-6.

In addition to conducting a manual search specifically for text messages between Mr. Levandowski and Mr. Kalanick, Orrick attorneys also applied the party-litigants' agreed-to ESI search terms to



Hon. Jacqueline Scott Corley
August 10, 2017
Page 2

Mr. Kalanick's text message data to identify any additional text messages responsive to Waymo's discovery requests; these texts, too, have already been produced to Waymo. *Id.* at ¶ 5. There are no additional responsive text messages for Mr. Kalanick to produce, and ▮▮▮▮▮▮▮▮▮▮▮▮▮ there is nothing further to do beyond what Orrick's forensic expert has already done to recover text messages from Mr. Kalanick's iPhone. Vogel Decl. at ¶ 13.

All of Waymo's speculative arguments about missing text messages are based on misstated facts. First, Waymo's statement that Uber has produced "no text messages [sent by Mr. Kalanick to Mr. Levandowski] before March 2016 and only a single one before April 5" is untrue, as Mr. Kalanick has produced more than a dozen text messages from Mr. Kalanick to Mr. Levandowski sent between February 13 and April 5, 2016. Uriarte Decl. at ¶ 6. Second, while Waymo feigns ignorance about the cause of what it refers to as "gaps" in Mr. Kalanick's text message production, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ these purported "gaps" make sense in light of Mr. Kalanick's 30-day auto deletion setting and the way deleted data is overwritten by the iOS operating system as additional memory space is needed. Vogel Decl. at ¶ 7. Given the volume of texts Mr. Kalanick receives and his high data usage, it is unsurprising that some text messages that were automatically deleted have already been overwritten with new data and are no longer recoverable from Mr. Kalanick's iPhone 7. *Id.* at ¶ 7-8. Nor is it surprising that Mr. Levandowski's phone has text messages on it that Mr. Kalanick's iPhone does not; the phones are different devices belonging to two different users with different data usage patterns and deletion settings.

Given that all of Mr. Kalanick's available responsive text messages have already been produced, there is nothing left to compel. It goes without saying, therefore that an order compelling production of Mr. Kalanick's iPhone (or a forensic image of it) is unnecessary and inappropriate. Granting Waymo's requested relief would do serious violence to Mr. Kalanick's constitutionally protected privacy rights. As the Supreme Court has observed, for Mr. Kalanick and many others in modern society, a mobile phone constitutes "a digital record of nearly every aspect of their lives—from the mundane to the intimate." *Riley v. California*, 189 L. Ed. 2d 430, 447-448 (2014). It is tantamount to providing access to one's most personal, private and family matters, for no reason. Mr. Kalanick has a privacy interest in his mobile phone that is protected by the United States Constitution, *e.g. id.*, and as the Ninth Circuit has expressly recognized, "[t]hat privacy



Hon. Jacqueline Scott Corley
August 10, 2017
Page 3

interest [is] substantial in light of the broad amount of data contained in…his cell phone," *United States v. Lara*, 815 F.3d 605, 611-612 (9th Cir. 2016).

"When the constitutional right of privacy is involved, the party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are carefully balanced." *Lawrence v. Hoban Mgmt.*, 305 F.R.D. 589, 591 (S.D. Cal. 2015). Moreover, "[b]ecause personal computers contain highly personal and sensitive material courts generally require a heightened showing of good cause" to justify an imaging order. *Cefalu v. Holder*, 2013 U.S. Dist. LEXIS 113485, *4 (N.D. Cal. Aug. 12, 2013). Here, Mr. Kalanick's substantial privacy rights far outweigh Waymo's desire to explore the baseless supposition that there are additional text messages not already identified and produced on Mr. Kalanick's behalf by counsel. *See, e.g., Memry Corp. v. Ky. Oil Tech.*, N.V., 2007 U.S. Dist. LEXIS 104031, *10 (N.D. Cal. Mar. 19, 2007).

Waymo's motion does not come close to articulating any compelling need that outweighs Mr. Kalanick's substantial privacy interests. Nor does Waymo's motion put forth the heightened showing required to obtain a forensic image of a personal device. *See id.; Cefalu*, 2013 U.S. Dist. LEXIS 113485, *4. On the contrary, Waymo indiscriminately seeks production of every single byte of data on Mr. Kalanick's iPhone, regardless of whether the data has any relevance to this case. Federal law does not countenance such invasive, harassing, and burdensome discovery requests. *See, e.g*., Fed. R. Civ. P. 26 (b)(1). Notably, the only reason Waymo argues it needs an image of Mr. Kalanick's phone is to "independently verify whether [the auto-delete] setting…was actually in place for the entirety of the time period at issue." Dkt. 1118 at p.1. If that is the information Waymo is after, it does not need to rifle through every picture, voicemail, and private personal communication on Mr. Kalanick's phone to get it. Although Mr. Kalanick is under no obligation to do so, he is willing to voluntarily produce configuration files for his iPhone 7 sufficient to show that the 30-day auto delete protocol was turned on at all times relevant.

For the foregoing reasons, Mr. Kalanick respectfully submits that Waymo's motion to compel production of Mr. Kalanick's responsive text messages should be denied as moot, and that Waymo's request for production of Mr. Kalanick's iPhone or image thereof should be denied as overbroad, unduly burdensome, harassing, and violative of Mr. Kalanick's constitutional privacy rights.



Hon. Jacqueline Scott Corley
August 10, 2017
Page 4


Respectfully,

*/s/ Melinda Haag*

Melinda Haag
Walter Brown
Attorneys for Travis Kalanick