QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
   charlesverhoeven@quinnemanuel.com
   David A. Perlson (Bar No. 209502)
   davidperlson@quinnemanuel.com
   Melissa Baily (Bar No. 237649)
   melissabaily@quinnemanuel.com
   John Neukom (Bar No. 275887)
   johnneukom@quinnemanuel.com
   Jordan Jaffe (Bar No. 254886)
   jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>           Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>           Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE TRADE SECRET CLAIMS** |

## I.      __INTRODUCTION__

Defendants' "motion to strike" is actually an untimely and improper motion for partial summary judgment.  Defendants seek to irrevocably remove four trade secrets from this case, due to alleged noncompliance with Cal. Code Civ. Proc. § 2019.210.  But Defendants did not bring their motion until discovery was nearly over, thus rendering their motion untimely.  Defendants oppose any attempt for Waymo to provide more detail on the challenged trade secrets, thus showing that they are using their motion as an unauthorized summary judgment motion.  And the challenged trade secrets satisfy the requirements of Section 2019.210 in any event, meaning that Defendants' motion also fails on the merits.  Indeed, given the evidence Waymo has uncovered showing Defendants' use of the very trade secrets they now challenge, the present motion appears to be nothing more than another attempt by Defendants to hide probative evidence of trade secret misappropriation from the jury.

## II.     __DEFENDANTS' MOTION IS UNTIMELY__

Waymo's trade secret list under Section 2019.210 was served on March 10, 2017.  (Dkt. 25-7.)  Discovery commenced on March 16, 2017 (Dkt. 61) and has continued ever since.  Yet from March to July 2017, Defendants never argued that Waymo's trade secret list was insufficient under Section 2019.210.  Defendants instead delayed any objection until August 5 — less than a month before the close of discovery — and filed their motion to strike two days later.  (*See* Mot. at 2 fn. 4.)

This renders Defendants' motion untimely.  After all, a core purpose of Section 2019.210 is to "defin[e] the appropriate scope of discovery in a trade secrets case." *Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 4149066, at *3 (N.D. Cal. July 9, 2015); *accord Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012) ("Section 2019.210 … assists the court and parties in defining the appropriate scope of discovery.")  It follows that any objections to a Section 2019.210 disclosure must be raised at an early stage, so they can be resolved in advance of discovery.  By delaying a Section 2019.210 objection until near the close of discovery, a defendant subverts the core purpose of Section 2019.210.

The Court recognized as much at the March 16 status conference, stating:  "I urge you [Waymo] to trim down your list of trade secrets to the ones that you really think are going to hold up.  ***But in the meantime, there is a list, and we have got to go forward.  And you [Uber] can't hold back***

1     *and say:  Oh, no, we don't know this, we don't know that*."  (Mar. 16, 2017 Hearing Tr. at 19:21-

2     20:1) (emphasis added).  The Court then stated: "I'm here to help with your discovery disputes. I hope

3     you don't have any.  But I want to try to cut through it if I need to."  (*Id.* at 20:10-12.)  Thus,

4     Defendants were on notice that "there is a list" of trade secrets, the parties "have got to go forward"

5     with discovery, and the Court was open to prompt resolution of any discovery disputes.  There could

6     hardly be a clearer invitation and directive: if Defendants had any objection to the trade secret list,

7     they should promptly raise it with the Court so that discovery could move forward in conformance

8     with the list.  Thus, it was clearly improper for Defendants to sit on their objections for *five months*,

9     until near the close of discovery, and only then complain about Waymo's trade secret list.

10      Other precedent from this Court supports the same point.  For example, in *Jobscience, Inc. v.*

11    *CVPartners, Inc.*, No. C 13-04519 WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014), this Court

12    ordered plaintiff to file a Section 2019.210 trade secret list and gave the Defendant just *one week* to

13    raise any challenges to that list.  *Id.* at *5.  Yet Defendants posit that they should be allowed five

14    months to challenge Waymo's trade secret list.

15      The only case Defendants cite for their timeliness position is *Via Techs., Inc. v. Asus Computer*

16    *Int'l*, 2016 WL 1056139 (N.D. Cal. Mar. 17, 2016).  But *Via* supports Waymo's position.  In *Via*,

17    defendant resisted providing discovery that was outside the scope of plaintiff's Section 2019.210

18    disclosure.  *Id.* at *2.  To resolve this discovery dispute, the court analyzed what trade secrets plaintiff

19    had sufficiently disclosed.  *Id.* at *2-3.  Thus, *Via* supports the point that a Section 2019.210 list

20    controls the scope of discovery, and that any challenges to that list should be brought promptly enough

21    to allow that list to control discovery.  By contrast, Defendants brought their motion near the end of

22    discovery, and their goal is to seek partial summary judgment against Waymo's trade secret case and

23    hide probative evidence of their trade secret misappropriation.  (*See* Sections III, V, *infra*.)

24      Nor can Defendants excuse their tardiness by arguing that Waymo recently trimmed its trade

25    secret list down to the ten trade secrets that it plans to take to trial.[1]  (*See* Mot. at 9 (making this

26

27    ─────────────────

28    [1]  Defendants also incorrectly claim that Waymo has engaged in a "shifting sands" approach merely
because Waymo's counsel identified other trade secrets for which it has obtained evidence of use, but

argument).)  First, as noted above, the core purpose of a Section 2019.210 disclosure is to govern the scope of *discovery*, not the scope of *trial*.  It is thoroughly common for parties to narrow their claims in the lead-up to trial, based in part on what is unearthed during discovery.  So it is perverse to say that Defendants should be able to defer their Section 2019.210 objections until discovery is nearly complete and the final trial narrowing has occurred.  This subverts the purpose of Section 2019.210, which (again) is to govern the scope of discovery.

Moreover, the unspoken premise behind Defendants' argument is that it would have been too burdensome to challenge Waymo's trade secret list before Waymo trimmed that list to the nine trade secrets that it planned to take to trial.  Yet earlier in this case, Defendants argued that burdensomeness is no bar to Waymo providing individualized interrogatory responses on each of its trade secrets. (Dkt. 687 at 2 ("Waymo cannot complain about the burden of responding with specificity as to *each* trade secret.") (emphasis in original).)  Judge Corley agreed.  (Dkt. 808.)  Thus, Defendants cannot claim that it would have been too burdensome to challenge Waymo's trade secret list before Waymo narrowed that list to the trade secrets that it planned to take to trial.

## III.  DEFENDANTS' MOTION IS AN IMPROPER SUMMARY JUDGMENT MOTION

Defendants' motion is also improper because it is a *de facto* motion for partial summary judgment.  Defendants seek to irrevocably remove four trade secrets from this case, without any leave for Waymo to further clarify or specify those trade secrets.  (Mot. at 9-10.)  Likewise, prior to filing the present Motion, Defendants ignored Waymo's offers to address Defendants' concerns regarding the challenged trade secrets.  (Roberts Dec. ¶ 2.)  Thus, the goal of Defendants' motion is clear: they want partial summary judgment against the four challenged trade secrets.

But under the Case Management Order, no summary judgment motion can be filed without

---

that were not included in its narrowed list. (Mot. at 2.)  As the colloquy makes clear, the Court was asking for trade secrets used by Defendants.  Waymo counsel specifically qualified that recitation of trade secrets used by Defendants in advance of the election deadline the following week.  July 26, 2017 Hearing Tr. at 55:4-9 ("I said those numbers off the top of my head. Hopefully I didn't misquote a number. . . . [O]ur deadline under Your Honor's Case Management Order to narrow trade secrets is not until next week, so this is without prejudice to arguments on that front.").  In any event, the fact that Waymo has evidence of Defendants using *additional* trade secrets for which it was compelled by Court order not to pursue at trial simply shows the breadth of Defendants' misappropriation, not any bad faith on Waymo's part.

leave of the Court.  (Dkt. 563 at ¶ 9.)  Defendants never sought leave for their current motion. Moreover, each party is allowed a single summary judgment motion, and can file a second summary judgment motion only if they prevail on the first.  (May 3, 2017 Hearing Tr. (a.m. public session) at 123:15-23.)  Here, Defendants already filed a *de facto* summary judgment motion of no damages, through their motion to strike Waymo's damages disclosures.  (Dkt. 797, 942.)  That motion is still pending.  Unless and until Defendants win that motion, they cannot file another summary judgment motion — including the *de facto* summary judgment motion at issue here.

Finally, precedent states that a motion challenging the sufficiency of a Section 2019.210 disclosure should not be used as a *de facto* summary judgment motion.  *Art of Living Found. v. Does 1-10*, No. 5:10-CV-05022-LHK, 2012 WL 1565281, at *22 (N.D. Cal. May 1, 2012) ("[S]ection 2019.210 [is not] a substitute for a summary judgment motion") (quoting *Brescia v. Angelin*, 172 Cal. App. 4th 133, 149 (2009)) (Court's brackets).)  Yet that is precisely what Defendants have done here. Accordingly, Defendants' motion should be denied.

## IV.   THE CHALLENGED TRADE SECRETS ARE SUFFICIENTLY DESCRIBED UNDER SECTION 2019.210

As shown in more detail below, and as Waymo highlighted for Defendants prior to their filing this Motion, Waymo's disclosures for Trade Secret Nos. 25, 90, 96, and 111 are more than sufficient to enable Defendants to investigate defenses and prepare for trial.  Defendants' challenges to these disclosures ignore the controlling law on trade secret disclosures, take an overly simplistic view of the disclosed trade secrets, and rely on internally inconsistent reasoning in attempting to explain why the trade secret disclosures are deficient.  Indeed, Defendants' Motion, in addition to Defendants' responses to Waymo's discovery requests, provide several examples of the arguments Defendants have already formulated in their defense of Waymo's trade secret misappropriation claims, demonstrating their ability to understand the boundaries of the challenged trade secrets.

The California Court of Appeal has interpreted the "reasonable particularity" requirement of Section 2019.210 to include enough detail so that the defendant is able to learn the boundaries of the alleged trade secret in order to investigate defenses.  *Brescia,* 172 Cal. App. 4th at 138; *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 836 (2005) ("What is required is

not absolute precision, but 'reasonable particularity.'").  In order to satisfy Section 2019.210, a party alleging misappropriation need not "define every minute detail of its claimed trade secret at the outset of the litigation," but instead "must make some showing that is reasonable, i.e., fair, proper, just and rational." *Advanced Modular*, 132 Cal. App. 4th at 835-36.  "The statute ... does not create a procedural device to litigate the ultimate merits of the case—that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists." *Brescia*, 172 Cal. App. 4th at 149; *see also Advanced Modular,* 132 Cal. App. 4th at 835-36 (stating that Section 2019.210 does not require a "trial court to conduct a miniature trial on the merits of a misappropriation claim").  Thus, a trade secret designation is to be liberally construed, and reasonable doubts regarding its adequacy are to be resolved in favor of allowing the case to proceed.  *Brescia*, 172 Cal. App. at 152.

**Trade Secret 25**:  Even a cursory review of the documents cited in Waymo's disclosure of this asserted trade secret, including the portions excerpted by Defendants as a purported example of Waymo's insufficient disclosure, demonstrates the sufficiency of Waymo's disclosure of the ████████████████████████████████████████████████████ (Dkt. 25-7 at 17.)  Contrary to Defendants' assertions, Waymo does not broadly claim "general concepts" such as lane marking detection and the identification of children by a self-driving car for Trade Secret 25.  (Mot. at 3, 6-7.)  As the title of the trade secret indicates, Waymo claims ██ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████ (Dkt. 25-10 at 1).  The collection of information in the three supporting documents discloses ████████████████████████████████████████ ████████████████████████████. (Ex. 1, 150:6-153:16.)  This is highly confidential trade secret information derived from Waymo's years of self-driving car experience, and the disclosure is more than enough information to meet the particularity requirements of section 2019.210. *Id.*; *see Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 4149066, at *4-5 (N.D. Cal. July 9, 2015) (finding that the plaintiff was claiming as trade secret the "specific way" that it authored and structured source code and that the disclosure was "more than enough information" to meet the particularity requirement of Section 2019.210).

1    Moreover, Defendants have shown they are able to investigate Waymo's trade secret assertions

2    and are prepared to mount defenses to Waymo's claims of misappropriation, which is ultimately all

3    that is required by Section 2019.210.  *Advanced Modular,* 132 Cal. App. 4th at 836 (finding that trade

4    secrets must be disclosed in a manner that will allow the parties "a fair opportunity to prepare and

5    present their best case or defense at a trial on the merits").   Indeed, while Waymo disputes

6    Defendants' characterizations of the scope of information available in the public domain related to

7    Trade Secret 25, Defendants' citation to such evidence "demonstrate[s] not that [Defendants] were

8    unable to discern the boundaries of [Waymo's] alleged trade secret[s] . . . , but rather that they

9    understood and were quite capable of investigating possible defenses." *Brescia*, 172 Cal. App. 4th at

10   152; *see also Prolifiq Software Inc. v. Veeva Sys. Inc.*, No. C 13-03644 SI, 2014 WL 2527148, at *3

11   (N.D. Cal. June 4, 2014) ("Indeed, the fact that Veeva is able to craft detailed arguments for why

12   Prolifiq's information does not constitute trade secrets means that Prolifiq has sufficiently identified

13   that information to Veeva so that it may investigate the merits of Prolifiq's claim.").

14   **Trade Secret Nos. 90 & 96:** Defendants' complaints concerning Trade Secrets 90 and 96 are

15   related, and do not appear to concern any particular failure to define the trade secrets with reasonable

16   particularity, but instead concern Defendants' issues with Waymo's choice of these particular trade

17   secrets over others.  (*E.g.* Mot. at 4-5 (asserting that Trade Secrets 90 and 96 are too broadly claimed

18   because they are related to information claimed in other trade secrets).)  However, Trade Secrets 90

19   and 96 do not fail to meet Section 2019.210 merely because they purportedly disclose multiple

20   discrete features that are related to other Waymo trade secrets.  To the contrary, such overlap is

21   expressly permissible provided that Waymo's disclosed trade secrets otherwise meet the reasonable

22   particularity requirement, which they do.  *Advanced Modular*, 132 Cal. App. 4th at 836 (finding

23   "reasonable particularity" under Section 2019.210 in plaintiff's disclosure of "eight alleged trade

24   secrets, each with several discreet [*sic*] features that, in combination with one another, form the

25   alleged trade secrets").  Indeed, far from being claimed generally or as "catch alls," Trade Secrets 90

26   and 96 are directed to ***specific implementations*** of Waymo's trade secret LiDAR designs (and designs

27   derived therefrom) that the Court has previously noted would qualify as protectable trade secrets.  *See,*

28   *e.g.*, May 3, 2017 Hearing Tr. (a.m. closed session)at 15:21-22 ("[Y]our specific implementation, I

-6-

think, would be a trade secret."); May 3, 2017 Hearing Tr. (p.m. closed session) at 44:11-13 ("Trade secrets are about how you implement your design. It doesn't have to be—qualify for a patent. It's about implementation."); *see also VasoNova Inc. v. Grunwald*, No. C 12-02422 WHA, 2012 WL 4119970, at *3 (N.D. Cal. Sept. 18, 2012) (finding that the disclosure of trade secrets for "implementation information" met the reasonable particularity requirement).

The presentation that is incorporated into Trade Secret 90, for example, is a six-page document describing detailed ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. (Dkt. 25-7 at 52; Dkt. 25-24.) Mr. Levandowski presumably thought it contained enough detail to be helpful—he downloaded this specific file on his way out the door from Waymo and en route to Uber. As to Trade Secret No. 96, Waymo is claiming as its trade secret ████████████████████████████████ █████████████, as reflected in the ████████████████ documents found in a Waymo SVN schematic repository folder ████████████████████████████████ (Dkt. 25-7 at 55.) It is not clear how a trade secret disclosure that identifies one specific PCB in one specific LIDAR design could be defined with any more "reasonable particularity" under Section 2019.210.[2] *See Advanced Modular*, 132 Cal. App. 4th at 836 (finding that Section 2019.210 does not require a trade secret disclosure to "reach such an exacting level of specificity that even its opponents are forced to agree the designation is adequate"); *see also Via Techs., Inc. v. Asus Computer Int'l*, No. 14-CV-03586-BLF, 2016 WL 1056139, at *3 (N.D. Cal. Mar. 17, 2016) (finding that the plaintiff satisfied the reasonable particularity requirement for "at least the trade secrets that it has specifically identified: the 12 schematics"). Mr. Levandowski again presumably thought these schematics had some value— these specific files were amongst the 14,000 files he illicitly downloaded from Waymo *the same day* he was meeting with Uber executives. *Compare* Dkt. 712, Ex. 1 at No. 27 (identifying Dec. 11, 2015 meeting between Levandowski and Uber executive) *with* Dkt. 24, ¶ 16-17 (describing Mr.

---

[2]  By Defendants' own admission, Trade Secret 96 covers "detailed engineering schematics." (Dkt. 1107-20 at 3.) Defendants have apparently walked back from this admission in their Motion, but it is telling Defendants have been unable to articulate a consistent challenge to Waymo's disclosure for Trade Secret 96.

1    Levandowski's downloading of 14,000+ files on Dec. 11, 2015.)

2           Here too with respect to Trade Secret Nos. 90 and 96, Defendants have already demonstrated

3    the sufficiency of Waymo's disclosure, as they clearly understand and are quite capable of

4    investigating Waymo's misappropriation claims and their defenses.  *See Brescia*, 172 Cal. App. 4th at

5    152; *Prolifiq*, 2014 WL 2527148, at *3.  Indeed, in their Motion and in Uber's Responses to Waymo's

6    Second Set of Interrogatories that were served the day before Waymo narrowed its list of trade secrets,

7    Defendants set out their defense of public availability in some detail.  (Motion at 7-8; Ex. 2 at 20-21,

8    28-29.)  Uber also set forth its contention that ████████████████████████████████████████████

9    ██████████████████████████████████████████ and that it therefore does not use Trade Secret No.

10   96.[3]  (Ex. 2 at 7, 12; *see also id.* at 17 ("████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████████████████████████████████

12   ████████████████████").)  For Trade Secret 90, Uber asserted that it did not misappropriate Waymo's

13   trade secrets because ██████████████████████████████████████  *Id.* at 12.  Again,

14   while Waymo disputes the veracity of these defenses, their existence alone belies Defendants' claims

15   that Waymo's trade secrets lack the requisite particularity.

16          **Trade Secret No. 111:** Waymo's disclosure for Trade Secret No. 111 describes ████████

17   ███████████████████████████████████████████████████████████████████████ (Dkt. 25-7 at

18   63.)  More than just explaining ████████████████████ or claiming "all accumulated know how"

19   as Defendants assert (Mot. at 5), the trade secret disclosure provides specific details ████████████

20   ████████████████████████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████.  (Dkt. 25-7 at 63; Ex. 1, 148:2-149:19.)  The disclosed trade

23   secret therefore provides specific information as to ████████████████████████████████████████

24   ████████████████████████████████████████████████████████████—highly

25   confidential information that is very valuable to Defendants and other competitors.

─────────────────────────

26

27   [3]  Moreover, despite the assertions of non-use and that Waymo failed to define Trade Secret 96 with

28   particularity, ███████████████████████████████████████████████████████████████████████████████████
     ████████████████████████████████████████████████████████████.  (Ex. 3 at 3-6.)

─────────────────────────

## V.   DEFENDANTS' MOTION IS YET ANOTHER ATTEMPT TO HIDE EVIDENCE OF TRADE SECRET MISAPPROPRIATION FROM THE JURY

It is undisputed that Mr. Levandowski downloaded the files that embody Trade Secrets 90 and 96 while he was meeting with Uber executives prior to leaving Google.  In addition, Waymo has previously shown that Mr. Levandowski was personally disclosing Trade Secret 90 to engineers at Tyto, a company Ottomotto acquired after entering into a term sheet with Uber, well before he left Google, and with such particularity that one of the engineers was able to reproduce the disclosed information on the fly during a deposition.  (Dkt. 387-4 at 11-12.)  It is these trade secret designs that were incorporated into Uber's first attempted design of a custom LiDAR device in 2016, with undisputed input from Mr. Levandowski and his Otto team that included the engineers acquired from Tyto.  Then, after Uber pivoted to the current Fuji device, ███████████████████████████ ████████████████████████████████████████████████████████████████████. (Dkt. 245-3 at 3-4; Ex. 4, 323:14-324:4, 330:2-332:20.)

Far from simply pilfering the information disclosed in the files downloaded by Mr. Levandowski on his way out the door, discovery has shown that Uber sought and obtained additional Waymo LiDAR trade secret information from Mr. Levandowski and the team of engineers that reported to him at Otto.  For example, in an email chain with the subject line ████████████ from March 2016 between John Bares, then Head of Uber's ATC Program, and two of his Uber ATC colleagues, Mr. Bares explains that his ████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ (Ex. 5.)  During this same time frame, Mr. Bares was taking detailed notes related to his discussions with Mr. Levandowski related to ████████████████████████ in Waymo's trade secret designs (Dkt. 25-13; Ex. 6 (████████████████████████████);  ████████████████████████████████████████████ (Dkt. 25-10 (████████████████████████); Ex. 6 ████████████████████████████████████████████████ ████████████████; and the detection of ████████████████████ (Dkt. 25-10; Ex. 6). Moreover, before Mr. Levandowski even left Google, Uber's executives ████████████████████████

1  ██████████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████. (Ex. 7; Ex. 8,

3  86:21-87:15.)  Indeed, the same engineer who was receiving leaked Google information from Mr.

4  Levandowski while working at Tyto was later told by Mr. Levandowski after joining Otto ████████

5  ████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████

7  ████████████████████████ (Ex. 9, 481:6-483:6.)

8         Thus, Defendants' Motion appears to be yet another attempt to improperly conceal evidence of

9  its trade secret misappropriation from the jury, by trying to strike four trade secrets for which the

10  evidence of misappropriation is quite strong.  It would be manifestly unjust to prevent Waymo from

11  seeking relief on Uber's misuse of Waymo's trade secrets based on a technical challenge to Waymo's

12  trade secret disclosures.  Under the appropriate standard for summary judgment (Fed. R. Civ. P. 56),

13  there is ample evidence showing genuine disputes as to material facts contained in Uber's motion,

14  including Uber's use of Waymo's trade secrets and whether Waymo's trade secrets are allegedly in

15  the "public domain."  Those disputed issues of fact are for the jury to decide.

16  **VI.    CONCLUSION (AND ALTERNATIVE REMEDY)**

17         For the foregoing reasons, Defendants' motion should be denied.  In the alternative, if the

18  Court were inclined to grant Defendants' motion, it should not grant Defendants' proposed remedy of

19  eliminating the challenged trade secrets from the case.  That result would only vindicate Defendants'

20  improper use of this motion as an unauthorized summary judgment motion.  Instead, if the Court is

21  inclined to grant Defendants' motion, it should at minimum grant Waymo leave to revise its Section

22  2019.210 disclosure.  As Defendants admit, this Court's prior precedent has granted plaintiffs ***multiple***

23  attempts to provide a sufficient Section 2019.210 disclosure before dismissing the challenged trade

24  secrets.  (Mot. at 9 (citing *Jobscience*, 2014 WL 1724763, at *4.)  Waymo deserves no less.  And as

25  for Defendants' argument that the case schedule will not allow enough time for Waymo to revise its

26  Section 2019.210 disclosure, that is the result of Defendants' decision to delay their motion until the

27  final month of discovery.  Defendants should not be allowed to profit from that tactical choice.

28

1

DATED:  August 11, 2017

2

QUINN EMANUEL URQUHART & SULLIVAN, LLP

3

By      /s/ Charles K. Verhoeven

4

Charles K. Verhoeven
Attorneys for WAYMO LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28