# EXHIBIT 1
# REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN FRANCISCO DIVISION
 4                         ---oOo---
 5   WAYMO LLC,
 6         Plaintiff,
 7   vs.                              No. 3:17-cv-00939-WHA
 8   UBER TECHNOLOGIES, INC.;
 9   OTTOMOTTO LLC; OTTO TRUCKING,
     INC.,
10         Defendants.
11   _____/
12
13
14       HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY
15
16       VIDEOTAPED DEPOSITION OF DMITRI DOLGOV
17                PALO ALTO, CALIFORNIA
18                TUESDAY, AUGUST 8, 2017
19
20
21
22   BY:  ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~
23   CSR LICENSE NO. 9830
24   JOB NO. 2664656
25   Pages 1 - 156
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4                       ---oOo---
 5   WAYMO LLC,
 6         Plaintiff,
 7   vs.                            No. 3:17-cv-00939-WHA
 8   UBER TECHNOLOGIES, INC.;
     OTTOMOTTO LLC; OTTO TRUCKING,
 9   INC.,
10         Defendants.
     _____/
11
12
13        Videotaped Deposition of Dmitri Dolgov,
14   taken on behalf of the Defendants, on August 8,
15   2017, at Morrison & Foerster LLP, 950 Page Mill
16   Road, Palo Alto, California, beginning 2:11 p.m.,
17   and commencing at 6:00 p.m., Pursuant to Notice,
18   and before me, ANDREA M. IGNACIO, CSR, RPR, CRR,
19   CLR ~ License No. 9830.
20
21
22
23
24
25
```

Page 2

| | | |
|---|---|---|
| 1 | A    I'm not aware of that. | 17:49 |
| 2 | MR. LIN:  Okay.  That's all I have. | 17:49 |
| 3 | MR. JAFFE:  So I -- I have some brief | 17:49 |
| 4 | questions.  I can do it from this seat, or we can -- | 17:49 |
| 5 | we can trade spots.  Up to you guys.  I don't care. | 17:49 |
| 6 | MR. LLEWELLYN:  I'm fine with you doing it | 17:49 |
| 7 | from there. | 17:49 |
| 8 | MR. JAFFE:  Okay. | 17:49 |
| 9 | | 17:49 |
| 10 | EXAMINATION | 17:49 |
| 11 | BY MR. JAFFE: | 17:49 |
| 12 | Q    Dr. Dolgov, I'm -- I'm going to make this go | 17:49 |
| 13 | as quickly as humanly possible. | 17:49 |
| 14 | Can you please grab 1360 from your stack. | 17:49 |
| 15 | A    (Witness complies.) | 17:49 |
| 16 | Q    It's the e-mail thread with the subject line: | 17:49 |
| 17 | "Laser/camera thoughts." | 17:50 |
| 18 | A    Yeah. | 17:50 |
| 19 | Q    So I want to take you to the e-mail at the -- | 17:50 |
| 20 | at the bottom of the page, dated June 19, 2015. | 17:50 |
| 21 | Do you see that? | 17:50 |
| 22 | A    I do. | 17:50 |
| 23 | Q    Okay.  What was your position on the | 17:50 |
| 24 | self-driving project as of June 15, 2015? | 17:50 |
| 25 | A    I led the software team. | 17:50 |

Page 146

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    Q    Okay.  So in your e-mail, it says:           17:50
2         "Bryan, we just had ▮▮▮▮▮▮▮▮▮▮▮▮             ▮
3    ▮▮▮▮▮."                                          17:50
4         Do you see that?                            17:50
5    A    I do.                                       17:50
6    Q    As the head of the software team, why were  17:50
7  you doing ▮▮▮▮▮▮▮▮▮?                               17:50
```



```
22   Q    Do you remember an MBr LiDAR device?        17:51
23   A    I do.                                       17:51
24   Q    Okay.  Do you know what -- what it stands   17:51
25  for?                                              17:51
```

Veritext Legal Solutions
866 299-5127

```
1      A    I think Mama Bear.                              17:51

2      Q    Did Waymo, or Project Chauffeur before that,    17:51
```



```
                                                            17:52

20     Q    And what was your role personally in that --    17:52

21   in those discussions?                                  17:52

22     A    I'm not sure I can recall those directly.  I    17:53

23   think those were in pretty early days of the team.  I  17:53

24   think, at that time, I worked or maybe led the effort  17:53

25   that was focused on planning at -- maybe at that point 17:53
```

Page 148

| | | |
|---|---|---|
| 1 | I led the on-board software team. | 17:53 |
| 2 | But regardless of that role, I think I was | 17:53 |
| 3 | one of the experienced -- more experienced software | 17:53 |
| 4 | engineers on the team. | 17:53 |
| 5 | So, I was involved in kind of the discussions | 17:53 |
| 6 | █████████████████████████████████ | ███ |
| 7 | ████████████████████ | ███ |
| 8 | ██████████████████████████████ | ███ |
| 9 | ███████████████████████████████ | ███ |
| 10 | █ ████████████████████████ | ███ |
| 11 | ██████████████████ | ███ |
| 12 | █ ███████████████████ | ███ |
| 13 | ██████████████████████ | ███ |
| 14 | ████████████████████████████████ | ███ |
| 15 | █████████████████████████ | ███ |
| 16 | █ ██████████████████████ | ███ |
| 17 | █████████████████████████████ | ███ |
| 18 | ████████ | ███ |
| 19 | █ ██████████████ | ███ |
| 20 | Q   Okay.  So going back to 1360. | 17:54 |
| 21 | Actually, before we get there, if you can | 17:54 |
| 22 | look at 1361. | 17:54 |
| 23 | A   (Witness complies.) | 17:54 |
| 24 | Got it. | 17:55 |
| 25 | Q   So in the -- in the middle e-mail here, there | 17:55 |

```
1    is a -- there is a list of items the follow-on actions        17:55
2    are.                                                          17:55
3           Do you see that?                                       17:55
4    A      I do.                                                  17:55
5    Q      And No. 2 says:                                        17:55
6           ███████████████████████████████████                    ██
7    ██████████████████████████████████████████                    ██
8           Do you see that?                                       17:55
9    A      I do.                                                  17:55
10   Q      What does ████████████████ refer to here?              17:55
11   A      I -- my understanding is that this is a                17:55
12   ████████████████████████████████████████████                  ██
13   ████████████████████████████████████████████                  ██
14   ███████████████████████████████████████                       ██
15   ██████████████████████████████████                            ██
16   ████████████████████████████████                              ██
17   ██████████████████████████████████████████                    ██
18   ████████████████████████████████████████                      ██
19   ████████████████████████████████                              ██
20   ████████████████████                                          ██
21          MR. JAFFE:  All right.                                 17:56
22          Let's mark this next document as 602.  And             17:56
23   it's a big piece of paper, so hat's off to the -- the         17:56
24   file room for printing this off.                              17:56
25          MR. LLEWELLYN:  Counsel, I just want to                17:56
```

Page 150

```
 1   clarify.  Do you think this redirect is responsive to      17:56
 2   something that was raised in the course of his             17:56
 3   deposition?                                                17:56
 4         MR. JAFFE:  Yep.                                     17:56
 5         (Document marked Exhibit 602                         17:56
 6          for identification.)                                17:56
 7         MR. JAFFE:  Dr. Dolgov, I've marked as               17:56
 8   Exhibit 602.                                               17:56
 9     Q    Are these ███████████████ that were                 17:56
10   referred -- that you just referred to?                     17:56
11     A    I can't be exactly confident, but that              17:57
12   mention in the e-mail looks like it has a link.  I        17:57
13   can't be, you know, confident.  I can't know for sure     17:57
14   if it links to that document, that spreadsheet.  But      17:57
15   the spirit of it, as I described it, is -- is -- is       17:57
16   accurate, yeah.                                            17:57
17     Q    Okay.  So, in just looking at the information       17:57
18   on the left-hand side, in the left-hand-most column,       17:57
19   ███████████████████████████████████ where did these        17:57
20   entries in the leftmost column come from?                  17:57
21         MR. LLEWELLYN:  So Counsel, I'm going to             17:57
22   object to all of this as beyond the scope of proper       17:57
23   redirect.                                                  17:57
24         MR. JAFFE:  Q.  Go ahead.                            17:57
25   █ ██████████████████████████████████████████              17:57
```

Page 151

| | | |
|---|---|---|
| 1 | ███████████████████████████████ | ███ |
| █ | ██████████████████████████████████ | ███ |
| █ | ████████████████████████████████████ | ███ |
| █ | ████████████████████████████ | 17:58 |
| 5 | Q   Is the information in this document, such as | 17:58 |
| 6 | in the left-hand corner, is -- is this kept -- kept | 17:58 |
| 7 | confidential within Waymo? | 17:58 |
| 8 | A   I would expect so.  I mean, by default, | 17:58 |
| 9 | everything that we have to do, especially things that | 17:58 |
| 10 | are essence as the -- ████████████████████ | ███ |
| █ | ██████████████ are kept confidential. | 17:58 |
| 12 | Q   And why are the -- ████████████████████ | ███ |
| █ | ██████████████ -- why is that in particular | 17:58 |
| 14 | sensitive? | 17:58 |
| 15 | A   Oh, this is, in a way, a product of the | 17:58 |
| 16 | experience that the team has accumulated over the | 17:58 |
| 17 | years of working on this technology, understanding, | 17:58 |
| 18 | you know, ████████████████████████ | ███ |
| █ | ██████████████████████████████████ | ███ |
| █ | ████████████████████████ | ███ |
| █ | ██████████████████████████████████ | ███ |
| █ | ██████████████████████ | 17:59 |
| 23 | Q   Would Waymo share the information in | 17:59 |
| 24 | Exhibit 602 with a competitor? | 17:59 |
| 25 | A   Not unless there were really good reasons to | 17:59 |

```
1    do so.                                                      17:59
2        Q    And do you have any personal knowledge             17:59
3    regarding the value of -- of this information to Waymo      17:59
4    in the self-driving car project?                            17:59
5        A    I can't -- I'm not sure if I can quantify the      17:59
6    value.  But it -- as I just mentioned, it's -- in my        17:59
7    mind, the value is tremendous because it captures the       17:59
8    experience accumulated over the course of developing        17:59
9    the system and trying different ideas and                   18:00
10   understanding, you know, ███████████████████████             ██
     ████████████████████████████████████████████████             ██
     ███████████████████████████████████████                      18:00
13       Q    And, to your knowledge, is the information         18:00
14   contained in this document, Exhibit 602 -- does it          18:00
15   reflect -- is it in the public domain?                      18:00
16       A    Not that I'm aware of.                             18:00
17       Q    Okay.                                              18:00
18            MR. JAFFE:  All right.  No further questions.      18:00
19            MR. LLEWELLYN:  I have a further question.         18:00
20                                                               18:00
21                    FURTHER EXAMINATION                        18:00
22   BY MR. LLEWELLYN:                                           18:00
23       Q    You testified that you couldn't be sure            18:00
24   whether this newly marked exhibit was, in fact, the         18:00
25   ████████████████████ that were specifically called out in   18:00
```

Page 153