MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
RUDY Y. KIM (CA SBN 199426)
RudyKim@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:     415.268.7000
Facsimile:     415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone:     202.237.2727
Facsimile:     202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　　　　Defendant. | Case No.　　3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO, LLC'S MOTION TO STRIKE VAGUE AND OVERBROAD TRADE SECRET CLAIMS AND EMERGENCY MOTION FOR EXPEDITED BRIEFING AND HEARING**<br><br>Trial Date: October 10, 2017 |

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I.   INTRODUCTION

At Waymo's insistence, the Court set an aggressive discovery schedule and October trial date. Recognizing that many of Waymo's purported trade secrets were nothing of the sort, and to give Uber a fair opportunity to defend itself, the Court also ordered Waymo to reduce its list of 121 purported trade secrets to a final "lineup of trade secrets to be tried" that was "less than ten." (Dkt. 563 at 4.) Just days ago, Waymo's counsel stood before this Court and confidently rattled off a list of trade secrets he claimed Uber was using:

> THE COURT: You are flailing about with theory after theory after theory, and a lot of these are not panning out, and so now you're going after MoFo as the agent or Stroz as the agent. Is that because you just can't prove -- name a single trade secret that -- describe it in some way where Uber is actually using it.
>
> MR. JAFFE: 6, 10, 11, 94, 95, 96, 97, 98.
>
> THE COURT: Are you making those up, or is that for real?
>
> MR. JAFFE: That's for real.[1]

Yet, at the August 1 deadline, Waymo identified an almost entirely *different* list. Moreover, instead of identifying specific trade secrets, Waymo's "narrowed" lineup is in large part a collection of vague and ill-defined "catchall" statements that are devoid of the "reasonable particularity" required by Section 2019.210 of the California Code of Civil Procedure. Even after extensive discovery,[2] Waymo is still fishing, and its inability to sufficiently describe its alleged trade secrets flies in the face of the Court's instruction and demonstrates Waymo's lack of evidence of use.

Uber requests an order striking Waymo's Trade Secret Nos. ("TS") 25, 90, 96, and 111 based on its legally inadequate disclosure.[3] These alleged trade secrets are so vague and

---

[1] 7/26/17 Hr'g Tr. at 48:13-22.

[2] To date, Waymo has taken 29 depositions, conducted eleven inspections over 57 hours of Uber's facilities, source code, documents, and engineers' computers, served 46 interrogatories and 307 requests for production, and obtained over 187,000 pages of production documents from Uber.

[3] Pursuant to Local Rule 6-3, Uber requests an order to shorten time for the briefing and hearing schedule for this motion to strike. The deadline for close of fact discovery and opening expert reports is August 24, and responsive expert reports are due September 7. The shortened briefing and hearing schedule is necessary given these upcoming deadlines, which all occur

DEFS.' MOT. TO STRIKE VAGUE AND OVERBROAD TRADE SECRET CLAIMS AND EMERGENCY MOT. FOR EXPEDITED BRIEFING AND HEARING; CASE NO. 3:17-CV-00939-WHA
dc- 894562

1

1  overbroad as to undermine the clear intent of this Court's case management order and deprive
2  Uber of any meaningful opportunity to prepare its defense for trial.  Discovery closes on August
3  24, but Waymo has refused to provide sufficient disclosures for Uber to determine the boundaries
4  of Waymo's alleged trade secrets and investigate known art.[4]  Having woefully failed to identify
5  its list of trade secrets with the specificity required by this Court, Waymo should be limited at
6  trial to the five other purported trade secrets it has identified (i.e., TS 2, 7, 9, 13 and 14).

7  **II.   ARGUMENT**

8      **A.   Waymo's TS 25, 90, 96, and 111 Should Be Stricken**

9      Six days after Waymo told the Court it had evidence of Uber's use of alleged TS "6, 10,
10 11, 94, 95, 96, 97, 98,"[5] Waymo's list of nine "trade secrets to be tried" instead identified an
11 almost entirely different set of trade secrets:  TS 2, 7, 9, 13, 14, 25, 90, 96, and 111.  This is yet
12 another example of Waymo's "shifting sands" approach to this case.  TS 25, 90, 96 and 111 in
13 particular are vaguely described as follows:



**TS 25**: The trade secret claimed is ▮▮▮▮▮

**TS 90:** The trade secret claimed is the technical information contained in the ▮▮▮▮▮ presentation.

**TS 96:** The trade secret claimed is ▮▮▮▮▮

---

before the September 11 hearing date for this motion under normal court rules, such that Uber would be severely prejudiced in the absence of a shortened schedule. (Decl. of E. Chang ¶¶ 18-19.)

[4] On August 5, 2017, Uber requested a meet and confer with Waymo identifying TS 25, 90, 96, and 111 as vague and overbroad. (Decl. of R. Kim ¶ 2.)  Waymo responded on August 6, 2017, stating that Uber's concerns about TS 25, 90, 96, and 111 were meritless. (*Id.* ¶¶ 3-4.)  On August 7, 2017, Uber met and conferred with Waymo's counsel and the Special Master about TS 25, 90, 96, and 111 and confirmed that the parties were at an impasse. (*Id.* ¶ 5.)  The Special Master proposed that Waymo file its opposition by August 11, 2017 at noon, but Waymo has not responded to Uber's request for confirmation of the deadline. (Decl. of E. Chang ¶¶ 20-21.)

[5] 7/26/17 Hr'g Tr. at 48:13-22.

DEFS.' MOT. TO STRIKE VAGUE AND OVERBROAD TRADE SECRET CLAIMS AND EMERGENCY MOT. FOR EXPEDITED BRIEFING AND HEARING; CASE NO. 3:17-cv-00939-WHA
dc- 894562

2

1   **TS 111:** The trade secret claimed is the accumulated know-how regarding ████████████████████████████████████

2   ████████████████████

3   (Decl. of Esther Chang Exhibit ("Ex.") 1, Waymo's August 1, 2017 Notice Regarding Trade

4   Secret Narrowing; Ex. 2, Waymo's Section 2019.210 List at 17-18, 55, 63.)  Notably, TS 25 and

5   111, although part of Waymo's original laundry list of 121 alleged trade secrets, have not

6   previously been the focus of this litigation, and Waymo admits that they are not disclosed in any

7   files allegedly downloaded by Anthony Levandowski or any other former Waymo employee.

8   (Ex. 3, Waymo 4th Suppl. Resp. to Uber's 1st Set of Interrogs. at 199-201 (no "misappropriated

9   files" identified for TS 25 or TS 111).

10          For TS No. 25, Waymo broadly claims "████████████████████████████

11   ██████" in three documents with a combined 98 pages, and certain unspecified "█████

12   ███████████████████" in those documents. (Ex. 4, ███████████; Ex. 5, █████

13   ███████████        Ex. 6, ███████████████   Much of the disclosures in those

14   documents, however, appear to be general concepts, such as ████████   involving a

15   ████████████████████████████████████████████████████████

16   ██████" (Ex. 4 at 4 (excerpt below).)  Waymo fails to identify what specific information it

17   considers to be its trade secret.

18   ████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████

26          TS 90 broadly claims "the technical information contained in" a 6-page presentation,

27   without identifying what specific information Waymo contends is a trade secret.  But the only

28   example of the "technical information" disclosed in Waymo's Section 2017.210 list is a ████

DEFS.' MOT. TO STRIKE VAGUE AND OVERBROAD TRADE SECRET CLAIMS AND EMERGENCY MOT. FOR EXPEDITED BRIEFING AND HEARING; CASE NO. 3:17-CV-00939-WHA
dc- 894562

3

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮" (Ex. 2 at 52; *see* Ex. 7, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at 7.)  The same

3 information, however, appears to be claimed in Waymo's TS 48, which claims ▮▮▮▮

4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 2 at

6 31.).  Waymo presumably dropped TS 48 in view of its witnesses' admissions about known art,

7 such as Waymo expert Mr. Kintz's concession that "[t]here are certainly references in the public

8 domain that discuss ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 13,

9 Kintz Dep. Tr. at 193:15-18; *see also* Ex. 12, Morriss Dep. Tr. 122:20-123:4; 149:2-17; 149:22-

10 150:5; Ex. 13, Kintz Dep. Tr. 193:1-194:10.)[6]  Waymo should not be allowed to vaguely and

11 broadly assert TS 90 to cover the non-elected concept covered in TS 48 as well as other

12 unspecified elements of the specific implementations disclosed in the 6-page presentation

13 referenced in TS 90.

14     TS 96 claims ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the Section 2019.210 statement says

15 only that "they contain ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of a transmit board,

16 which "include ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 2 at 55.)  Waymo fails to identify with particularity

19 what specific aspects of the hundreds of components disclosed in the "detailed engineering

20 schematics" it contends to be a trade secret, and what specific elements it intends to argue were

21 misappropriated at trial.  This trade secret is so broad that its inclusion can only be an attempt to

22 circumvent the Court's order requiring narrowing of the trade secrets by seeking to encompass

---

[6] Waymo concedes the overlapping nature of TS 48 and 90, and appears to be attempting to improperly shoe-horn TS 48 back into their "narrowed" list.  *See* R. Kim Decl. Ex. 1 (Waymo's counsel email stating, "Indeed, all of Waymo's specific implementations of ▮▮▮▮▮▮▮▮▮▮▮▮ are its trade secrets – including the implementation reflected in Trade Secret Nos. 48 and 90.")

1  other specific trade secrets that were not included in Waymo's narrowed list (e.g., TS 1, 4, 5, 6, 8,
2  15, etc.).[7]
3         In TS 111, Waymo broadly claims all "accumulated know-how" regarding a
4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 63.)  This was a LiDAR design that
5  Waymo apparently tried and abandoned.  While Waymo identified a few examples of ▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ it fails to identify what specific "know-how" it considers
7  to be a trade secret and what specific elements it intends to argue were misappropriated at trial.
8  Nor does Waymo disclose any specific documents (downloaded by Mr. Levandowski or anyone
9  else at Uber) that purportedly disclose such trade secret.
10        Each of these four purported trade secrets fails to meet the "reasonable particularity"
11 standard of Section 2019.210.  "[T]he burden on the trade secret claimant is to provide a level of
12 detail adequate to distinguish the subject information from general knowledge or knowledge of
13 skilled persons in the field."  *Brescia v. Angelin*, 172 Cal. App. 4th 133, 147, 90 Cal. Rptr. 3d 842
14 (2009); *see also VasoNova Inc. v. Grunwald*, No. C 12-02422 WHA, 2012 WL 4119970, at *2
15 (N.D. Cal. Sept. 18, 2012) (requiring "enough detail so that the defendant is able to learn the
16 boundaries of the alleged trade secret in order to investigate defenses").  Waymo's disclosures are
17 precisely the type of "categorical descriptions" the Northern District court has rejected as
18 "render[ing] it impossible for Defendants to conduct public domain or other research to challenge
19 the alleged secrecy of the information at issue."  *See Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d
20 1107, 1115 (N.D. Cal. 2016).  In *Loop*, the court found that plaintiff's Section 2019.210 listing of
21 "unnamed experiments, test results, research, analysis, evaluations, applications, and design
22 concepts" to be "plainly insufficient." *Id.* at 1114.  Here, Waymo's identification of unnamed
23 ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮ (TS 25), "technical information contained in [a Google]
24 presentation" (TS 90), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[7] In fact, Waymo's corporate witness testified that "everything" disclosed in the design files were trade secret, including the concept of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (TS 1), which he acknowledged was "dropped" and not "elected" as part of Waymo's narrowed list. (Ex. 15, Droz Dep. Tr. at 285:22-286:19, 287:10-288:11, 332:19-23.)  Mr. Droz also proceeded to provide a laundry list of other things disclosed in those files that Waymo might want to keep secret. (Ex. 15, Droz Dep. Tr. at 288:13-291:20.)

DEFS.' MOT. TO STRIKE VAGUE AND OVERBROAD TRADE SECRET CLAIMS AND EMERGENCY MOT. FOR EXPEDITED BRIEFING AND HEARING; CASE NO. 3:17-cv-00939-WHA
dc- 894562

5

1  ▓▓▓▓▓▓ (TS 96), and "accumulated know-how" (TS 111) likewise fail to meet the Section

2  2019.210 standard.[8]

3   Waymo has touted that it identified the alleged trade secrets "with particularity in

4  accordance with this Court's guidance in *JobScience*" with "a list of the specific elements for

5  each, as claims would appear at the end of a patent." (Dkt. 386 at 4 (quoting *JobScience, Inc. v.*

6  *CVPartners, Inc.*, No. C 13-04519-WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014).)  But in

7  *JobScience*, this Court struck plaintiff's trade secret claim after finding that plaintiff's disclosure

8  "ma[de] it virtually impossible to distinguish the alleged trade secrets from knowledge in the

9  field," such that "Defendants cannot reasonably prepare its defenses." *JobScience, Inc. v.*

10  *CVPartners, Inc.*, No. C 12-04519-WHA, 2014 WL 1724763, at *3 (N.D. Cal. May 1, 2014).

11  Notably, this Court found that plaintiff's identification of three schematics, with no explanation

12  except that they were a "representation of Jobscience's proprietary process and efficient solution,"

13  was insufficient. *Id.* at *2.  This Court also rejected plaintiff's description of its software, because

14  the disclosure contained "mere criteria and in no way tell[s] the reader the secret of how it is

15  done." *Id.* at *3. Waymo knew the level of detail required by this Court in *JobScience*, but failed

16  to provide it anyway.

17   Waymo's vague and overbroad descriptions present moving targets, when much

18  information cited by Waymo appear to be concepts in the public domain.  For example, Waymo's

19  spreadsheets for TS 25 identify such ▓▓▓▓ as ▓▓▓▓▓▓

20  ▓▓▓ and ▓▓▓▓▓▓ (Ex. 4 at 1, 4.)  It is publicly well-known that self-

21  driving cars have struggled with detection of lane markings.  (Ex. 8 at 1 ("lane markings

22  confusing Tesla's autopilot"); Ex. 9 at 4 ("driverless cars struggle on roads without clear lane

---

[8] Waymo's interrogatory responses are equally devoid of detail and fail to specify with particularity what Waymo considers to be its specific trade secrets that are purportedly used by Uber. (Ex. 3 at 23-25 (Waymo's response for TS 25, 90, 96, and 111 to contention interrogatory seeking evidence alleged use by Uber.)  Furthermore, while Waymo fails to provide specific detail regarding its alleged trade secrets, it unreasonably demands responses to overbroad discovery requests. (*See e.g.*, Ex. 16, Uber's Resp. to 3rd Set of RFPs at 38-39 (stating in response for request number 200 for ▓▓▓▓▓▓▓▓▓▓▓▓" that Uber has produced documents and made available for in▓▓▓▓▓▓▓▓▓ments, devices of six engineers, and all four locations at which there is ongoing LiDAR development).

DEFS.' MOT. TO STRIKE VAGUE AND OVERBROAD TRADE SECRET CLAIMS AND EMERGENCY MOT. FOR EXPEDITED BRIEFING AND HEARING; CASE NO. 3:17-CV-00939-WHA
dc- 894562

6

markings"). Also, Google itself has publicly disclosed that "we teach our cars to drive more cautiously around children" because children "can be more unpredictable" and "are easily obscured behind parked cars." (Ex. 10, "Google self-driving car project.") Waymo fails to identify what specific information in the nearly 100 pages of documents it considers to be a trade secret.

Likewise, TS 111 claims unnamed know-how relating to [REDACTED] but LiDAR systems having "a rotating multifaceted polygon mirror" have been known to the public since at least the early 1990s. (*See* Ex. 11, U.S. Patent No. 5,006,721.) Waymo fails to identify with particularity what specific "know-how" it considers to be trade secret and what specific elements it intends to argue was misappropriated at trial. Nor does it disclose any documents that purportedly disclose such a trade secret.

In claiming the "technical information" of TS 90 in its final line-up, Waymo seems to be an attempt at gamesmanship, to get around admissions from its own witnesses that [REDACTED] claimed in its TS 48 is known to the public. (*See e.g.*, Ex. 12, Morriss Dep. Tr. 122:20-123:4; 149:2-17; 149:22-150:5; Ex. 13, Kintz Dep. Tr. 193:1-194:10.) Waymo has failed to identify what other specific information contained in the six-page presentation is a trade secret.

At the preliminary injunction hearing, the Court told Waymo, "[T]here is no doubt in my mind that your specific [REDACTED] configuration, very specific configuration, would be a trade secret. That's okay. They don't use that though." (5/3/17 AM Sealed Hr'g Tr. at 14:23-25.) In apparent recognition of this gap in its case, Waymo has dropped its trade secret covering the general concept of [REDACTED] and instead asserted TS 96, which is directed to a specific Waymo implementation. Waymo's Section 2019.210 list, however, vaguely references certain general concepts (i.e., [REDACTED]

[REDACTED]") without specifying what specific [REDACTED] are claimed in TS 96. (Ex.

DEFS.' MOT. TO STRIKE VAGUE AND OVERBROAD TRADE SECRET CLAIMS AND EMERGENCY MOT. FOR EXPEDITED BRIEFING AND HEARING; CASE NO. 3:17-CV-00939-WHA
dc- 894562

7

2 at 55.) For example, the claimed transmit board's placement of diodes along a curved board was disclosed by Waymo in its '922 patent:

| Waymo's ▓▓▓▓▓▓▓▓▓▓ (Ex. 14.) | '922 Patent, Fig. 4 |
|---|---|
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |  |

Without further specificity, Waymo's identification of TS 96 appears to be a deliberate attempt to include a broad catchall "trade secret" that encompasses other alleged trade secrets (e.g., TS 1, 4, 5, 6, 8 & 15) that it has not specifically elected in its "narrowed" list, in direct circumvention of the Court's case management order. (*See e.g.*, Ex. 2 (TS 1, TS 4, TS 5, TS 6, TS 8, TS 15); Dkt. 563 at 4 ("The final lineup should consist of less than ten trade secrets, and the deadline should fall on a date in August 2017 that will permit sufficient preparation time for opening expert reports.")[9]

---

[9] During the deposition of Waymo's designated corporate representative on TS 96, Waymo's designee could not specify with any clarity or specificity what aspect of the schematics Waymo alleges to be a trade secret that was misappropriated by Defendants. (*See, e.g.*, Ex. 15, Droz Dep. Tr. at 272:21-273:18, 275:11-276:9, 277:22-278:22, 285:14-286:19.)

Waymo's witness who was designated to testify regarding TS 96 (and all other trade secrets on Waymo's narrowed list except for TS 25) appeared to confirm that TS 96 broadly encompasses other trade secrets, including those not elected by Waymo (e.g., TS 1). (*See, e.g.*, Ex. 15, Droz Dep. Tr. at 287:10-288:11.) Curiously, however, Mr. Droz was not prepared to testify on those trade secret concepts because they were not elected and had been dropped. (*See, e.g.*, Ex. 15, Droz Dep. Tr. at 329:6-332:23.) Waymo should not be allowed to hide the ball by broadly asserting that everything contained in detailed schematics and layout files is a trade secret, including other trade secret concepts that Waymo chose not to elect.

DEFS.' MOT. TO STRIKE VAGUE AND OVERBROAD TRADE SECRET CLAIMS AND EMERGENCY MOT. FOR EXPEDITED BRIEFING AND HEARING; CASE NO. 3:17-CV-00939-WHA
dc- 894562

8

### B. Uber's Motion to Strike Is Timely

Contrary to Waymo, Uber has timely brought this motion to strike. In March, the Court told Waymo that "there were a number of [alleged trade secrets] that I thought were questionable" and urged Waymo "to trim down your list of trade secrets to the ones that you really think are going to hold up." (3/16/17 Hr'g Tr. at 19:15-23.) In June, recognizing that "both sides ought to know which trade secrets are in play," the Court ordered Waymo to identify its specific trade secrets "before the expert reports are due." (6/7/17 Hr'g Tr. at 51:23-52:4.) After the Court's repeated warnings, Waymo had months to identify its trade secrets with the required specificity, and Uber brings this motion days after Waymo served the court-ordered list.

Furthermore, Waymo can point to no deadline by which defendants must move to strike inadequate trade secret disclosures. In *Via Tech*, for example, a Northern District court *sua sponte* limited plaintiff's trade secrets claims based on inadequate disclosures, seven months after plaintiff's amended Section 2019.210 statement. *Via Techs., Inc. v. Asus Computer Int'l*, Case No. 14-cv-03586-BLF 2016 WL 1056139, at *2-3 (N.D .Cal. Mar. 17, 2016) (denying-in-part plaintiff's motion to compel production of documents because plaintiff's disclosure is "plainly insufficient"). The Northern District court found that "even if Defendants no longer object to the disclosure, the court . . . must evaluate its sufficiency." *Id.* In order to make trial manageable here, insufficiently disclosed trade secrets should be struck from Waymo's list.

### III. CONCLUSION

This case is now less than three weeks from the end of fact discovery and opening expert reports and five weeks from responsive expert reports. While this Court in *Jobscience* warned plaintiff to identify its trade secrets in "two prior orders" before dismissing its claims, that extended process would not be tenable here. *Cf. Jobscience*, 2014 WL 1724763, at *3. Waymo's continued sandbagging after repeated warnings by the Court has imposed severe prejudice on Uber. Throughout discovery, Waymo leveraged its broad list of 121 purported trade secrets to obtain several hundred thousand pages of documents and extensive inspections from Uber, while

DEFS.' MOT. TO STRIKE VAGUE AND OVERBROAD TRADE SECRET CLAIMS AND EMERGENCY MOT. FOR EXPEDITED BRIEFING AND HEARING; CASE NO. 3:17-CV-00939-WHA
dc- 894562

9

hiding the ball on its exact evidence of purported use by Uber.  (*See supra* Fn. 2, Fn. 8.)  At the same time, the large number of alleged trade secrets have hurt Uber's ability to search public literature and seek discovery from third-party self-driving car companies, as the Court has recommended.  (6/7/17 Hr'g Tr. at 50:6-12.)  With Waymo's failure to identify the specific "trade secrets in play," Uber has been deprived of a meaningful chance to respond under this expedited schedule.

This Court made clear to Waymo that, having demanded an October trial date, it must act in good faith and provide Uber with sufficient disclosures to build its defense.  Waymo failed to do so.  Accordingly, Uber's motion for expedited briefing and hearing, and motion to strike TS 25, 90, 96, and 111 should be granted.

Dated: August 7, 2017                    MORRISON & FOERSTER LLP

                                         By:  */s/ Arturo J. González*
                                              ARTURO J. GONZÁLEZ

                                              Attorneys for Defendants
                                              UBER TECHNOLOGIES, INC.
                                              and OTTOMOTTO LLC

DEFS.' MOT. TO STRIKE VAGUE AND OVERBROAD TRADE SECRET CLAIMS AND EMERGENCY MOT. FOR EXPEDITED BRIEFING AND HEARING; CASE NO. 3:17-CV-00939-WHA
dc- 894562

10