August 7, 2017

**VIA ECF**

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc., et al*., N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Plaintiff Waymo LLC ("Waymo") submits this letter brief in support of Waymo's motion to compel Uber to (1) produce to Waymo Travis Kalanick's phone(s), all forensic images of these phone(s), and all text messages to or from Anthony Levandowski or regarding the subject matter of Mr. Levandowski, LiDAR, Ottomotto, and/or Otto Trucking, and (2) produce all documents responsive to Waymo's Request for Production No. 256.

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

**I. Uber Should Be Compelled to Produce Travis Kalanick's Text Messages**

Waymo has been extremely patient regarding discovery into Mr. Kalanick's text messages.

Uber was ordered on May 11 to provide to Waymo all of Travis Kalanick's text messages with Anthony Levandowski pertaining to LiDAR. (Dkt. 433 at 25.) Waymo has been asking for these text messages since May 25 – over ten weeks ago. (Ex. 1 [5/25/2017 J. Jaffe email].) Waymo has also been asking for the rest of Mr. Kalanick's text messages to and from Mr. Levandowski, as well as his texts with others regarding Mr. Levandowski, LiDAR, and/or Defendants Ottomotto and Otto Trucking, since early June. (Ex. 2 [6/28/2017 A. Roberts email]; *see also* Ex. 3 [Second Set Expedited RFPs], served May 26, at No. 15 ("All COMMUNICATIONS between Travis Kalanick and LEVANDOWSKI") and Ex. 4 [Third Set RFPs], served May 31, at No. 165 ("All COMMUNICATIONS between Travis Kalanick and any PERSON REGARDING LiDAR, OTTOMOTTO, OTTO TRUCKING, or LEVANDOWSI").) These text messages are highly relevant, as communications between Uber's CEO, on the one hand, and Ottomotto's CEO, Otto Trucking's ███████, and Uber's Vice President of Engineering (in charge of Uber's entire self-driving car program), on the other, go directly to one of the key issues in this case – what Uber knew, and when Uber knew it. Nevertheless, it is now August 7, and with the close of fact discovery just 11 business days away, Uber has produced just a fraction of these text messages. Waymo cannot wait any longer to obtain this key evidence, and therefore seeks relief from the Court in the form of an Order compelling Uber to either get these text messages to Waymo, or provide Waymo the phone(s) and forensic image(s) so that Waymo can get the text messages itself.

It is undisputed that Uber's production of Mr. Kalanick's text messages is incomplete, even though the Court expressly told Uber on July 20 that "I'm just putting you on notice that all hands on deck, that stuff needs to be produced" and that "Uber will do whatever it needs. If it needs to be that the phone is turned over to Waymo's expert, it will be, all right?" (Dkt. 1012 at 8:20-9:6.) Uber has (belatedly) produced approximately 400 text messages that Mr. Levandowski sent to Mr. Kalanick, but there are significant and inexplicable gaps – including not a single text message sent before February 13, 2016, even though the two had at least one business meeting at Uber's headquarters in December 2015 and Mr. Kalanick personally "met up with [Levandowski] over the weekend" of January 2, 2016. (Dkt. 1060-1 at 194:13-196:3.) Uber has also produced approximately 130 text messages sent by Mr. Kalanick to Mr. Levandowski, but the gaps in this crucial evidence are even larger and more glaring – including apparently no text messages before March 2016 and only a single one before April 5. (*See generally* Exs. 5 and 6.)

Uber blames its deficient production on the fact that Mr. Kalanick deleted all of the text messages. Mr. Kalanick says he does not remember deleting any of the text messages, but rather attributes their deletion to his use of a "30-day auto-delete" setting on his phone. (Dkt. 1060-1 at 160:3-161:6.) However, Waymo has been unable to independently verify whether that setting – which is not the default, but rather must be affirmatively selected by the user – was actually in place for the entirety of the time period at issue. Indeed, to date Uber has refused to provide in writing any information about Mr. Kalanick's phone(s) or what efforts (if any) Uber has taken to collect and produce the text messages. (*See, e.g.*, Ex. 7 [8/4/2017 J. Judah email].) Instead, Uber has played "hot potato" – seeking to shift its discovery obligations onto Mr. Kalanick and his personal counsel at Orrick, Herrington & Sutcliffe ("Orrick"), even though Mr. Kalanick was CEO of Uber until just weeks ago – including at all times he exchanged text messages with Mr. Levandowski – and remains on Uber's Board of Directors. Orrick has similarly refused to provide in

writing any information about Mr. Kalanick's phone(s) or what efforts (if any) it has taken to collect and produce the text messages.[1] (*Id.*)

As the Court recognized at the July 20 telephonic hearing, these texts are highly relevant. (Dkt. 1012 at 8:21-25) Text messages produced by Mr. Levandowski – but still missing from Uber's production – confirm that this is crucial evidence. For example, on March 21, 2016 – in the midst of Stroz's due diligence investigation – Mr. Levandowski texted Mr. Kalanick:

> Yes we were slow on two items. They were the due diligence questionnaires (dumb questions like how many email accounts I have), and product design questionnaires for IP check.

(Ex. 8, LEV 002310.) Waymo does not know what Mr. Kalanick texted to Mr. Levanodwski to elicit his assessment that the Stroz due diligence investigation asked only "dumb questions," or how Mr. Kalanick responded to this assessment, because Uber has produced only a single text message sent by Mr. Kalanick before April 5, 2016. On that same day, however, Mr. Levandowski texted Mr. Kalanick that:

> I think we're good, I am squeezing our attorneys like toothpaste too. Thanks for pushing it really is helping.

(Ex. 9, LEV_002242.)

Even the partial text message production from Uber to date, almost entirely from the post-Put Call Agreement time frame, indicates that Mr. Levandowski and Mr. Kalanick were texting frequently about LiDAR and Mr. Levandowski's input on Uber's autonomous vehicle technology, starting well before Mr. Levandowski became an Uber executive. For example, on May 5, 2016, Mr. Levandowski texted Mr. Kalanick his schedule for meeting with Uber LiDAR engineer Scott Boehmke to "guide" Uber's LiDAR team:

> Driving to SF to meet with Scott ATC laser guy and guide the team.

(Ex. 10, UBER00073820.) Five days later, Mr. Levandowski texted Mr. Kalanick an update:

---

[1] Orrick has provided some information orally, including in connection 

███████████████████████████████████████

(Ex. 11, UBER00073811.) Of course, Waymo has not been afforded discovery into what Mr. Kalanick was texting on his side of these highly relevant exchanges, as Uber has not produced any text messages from Mr. Kalanick on either of these days.

Uber has been on notice for months that these text messages are relevant and must be produced, but has to date succeeded in keeping them hidden from Waymo – along with any written or attested explanation as to what, if anything, Uber has been doing with Mr. Kalanick's phone this whole time. Waymo is entitled to see these text messages and verify information about their deletion, and requests the Court order that Uber either produce this discovery to Waymo, or hand over for inspection to Waymo's experts all devices and forensic images that may contain this discovery.

## II. Uber Should Be Compelled to Produce Documents Responsive to RFP No. 265

Waymo's Request for Production No. 256 seeks "DOCUMENTS sufficient to show all PCB design schematics for radar sensors considered or implemented by DEFENDANTS." This discovery is relevant to Waymo's asserted trade secrets. (*See, e.g.*, Trade Secret Nos. 108 and 109.) Yet Uber refuses to produce documents responsive to the full scope of the request, based on its – already overruled – objection as to non-LiDAR trade secrets. For the same reasons that the Court compelled non-LiDAR trade secret discovery in prior orders (Dkt. 881 and Dkt. 951), the Court should compel this RFP as well.

Respectfully,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
cc:     All counsel of record; Special Master John Cooper