1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7 WAYMO LLC,

Case No. 17-cv-00939-WHA   (JSC)

8           Plaintiff,

9     v.

**ORDER RE: UBER'S WAIVER OF PRIVILEGED COMMUNICATIONS**

10 UBER TECHNOLOGIES, INC., et al.,

Re: Dkt. No. 1060

11           Defendants.

12

13        In a case stuffed with surprising scenarios yet another has arisen: the party that would

14 normally assert that a conversation between its in-house litigation counsel and its top executives

15 regarding ongoing litigation is protected by the attorney-client privilege is denying any such

16 protection.  The Court is thus in the unusual situation of having to adjudicate whether a

17 conversation is privileged notwithstanding the purported privilege holder's insistence that it is not.

18 After considering the parties' written submissions, and having had the benefit of oral argument on

19 August 9, 2017, the Court finds that the March 29, 2017 conversation between Uber's litigation

20 counsel Angela Padilla, its then CEO Travis Kalanick, and its then-Advanced Technology Group

21 executive Anthony Levandowski was for the purpose of enabling Uber's counsel to provide legal

22 advice to Uber regarding this litigation and therefore protected by Uber's attorney-client privilege.

23 Accordingly, when Mr. Kalanick testified about the contents of that conversation during his July

24 27, 2017 deposition, Uber waived the privilege as to the subject matter of Mr. Kalanick's

25 testimony.  Following supplemental briefing the Court will determine the scope of that waiver,

26 and whether the waiver should even be allowed given objections that Mr. Levandowski may raise.

27 The Court also recommends that the district court determine whether the waiver is precluded as

28 untimely.

**BACKGROUND**

Waymo sued Uber for misappropriation of trade secrets on Thursday, February 23, 2017. The next day Uber held an "all hands meeting" with its Advanced Technology Group San Francisco and Pittsburgh employees, of which there were hundreds, if not close to a thousand. (Dkt. No 1059-6 at 6, 9.)[1]  The purpose of the meeting was to give Uber's "employees the confidence that we had that the technology was built from the ground up."  (*Id.* at 7 (19:1-3); *see also id*. at 9.)  At that meeting Mr. Levandowski advised his co-workers that he downloaded files when he worked from home.  (*Id.* at 7.)  James Haslam, Uber's head of the driverless vehicle laser effort showed the employees the laser he had built. (*Id.*)

On March 26, 2017, Uber's in-house and outside litigation counsel met with Mr. Kalanick and Mr. Levandowski to discuss the status of the Waymo litigation and to provide legal advice. One issue discussed was Mr. Levandowski's intent to invoke the Fifth Amendment "and the implications of that plan for Uber's defense in this litigation."  Mr. Levandowski left the meeting part-way through.  (Dkt. No. 1082-1 at ¶ 11; Dkt. No. 1059-6 at 21.)

Three days later, on March 29, in a confidential hearing requested by Uber, Judge Alsup met with counsel for Mr. Levandowski, Uber's counsel and Waymo's counsel.  Mr. Levandowski's personal counsel advised Judge Alsup of Mr. Levandowski's intent to invoke the Fifth Amendment, among other related matters.  Judge Alsup stated during that hearing that he intended to make the hearing transcript public.  (Dkt. No. 1082-1 ¶ 3; Dkt. No. 131.)

Later that day Uber held a series of meetings at its headquarters to address the day's proceedings and their implications.  One of those meetings was attended by Mr. Kalanick, Rachel Whetstone, Uber's then-Senior Vice President of Communications and Public Policy, and perhaps two other Uber executives, along with Sallie Yoo, Uber's then-General Counsel and Angela Padilla, Uber's Associate General Counsel for Litigation and Employment for Uber Technologies. (Dkt. No. 1082-1 ¶¶ 1, 4, 5; Dkt. No. 1059-6 at 74.)  Mr. Levandowski joined the meeting at some point after it started. (Dkt. No. 1082-1 at ¶ 4.)

---

[1] Citations are to the ECF docket number and page.

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1    Following this meeting, Ms. Padilla, Mr. Levandowski and Mr. Kalanick moved to a

2    different conference room.  According to Ms. Padilla, this meeting's purpose "was for Mr.

3    Kalanick to discuss with Mr. Levandowski Waymo's allegations about improper downloading of

4    information while Mr. Levandowski was employed at Google."  (Dkt. No. 1082-1 at ¶ 6.)  During

5    this meeting, Mr. Kalanick told Mr. Levandowski that "it was very important for Uber to get to the

6    bottom of the allegations that Waymo made," and "it was very important for him to cooperate with

7    Uber and very important for him to cooperate with the Court."  (Dkt. No. 1059-6 at 25 (90:22-

8    91:5).)  Ms. Padilla advised Mr. Levandowski that she could not provide him with legal advice,

9    but that she "agreed that he should just tell the Court what he did."  (Dkt. No. 1082-1 ¶ 6.)  Mr.

10   Levandowski disclosed that he downloaded the information because he used it to work from

11   home, and also because he was concerned about Google paying him his bonus.  (Dkt. No. 1082-1

12   ¶ 6; Dkt. No. 1059-6 at 25 (91:19-23).)  According to Ms. Padilla (but not Mr. Kalanick) he also

13   reported that he had deleted the downloaded files.  (Dkt. No. 1082-1 ¶ 6; Dkt. No. 1059-6 at 80.)

14   And he explained that he was pleading the Fifth on the advice of his personal counsel.  (Dkt. No.

15   1059-6 at 22.)  Levandowski's personal attorney later joined this same conversation. (Dkt. No.

16   1059-6 at 24.)

17   Uber's attorneys were present at all of the conversations Mr. Kalanick had with Mr.

18   Levandowski regarding whether and why he downloaded Google's documents and whether and

19   why he was invoking the Fifth Amendment.  (Dkt. No. 1059-6 at 11, 12, 19, 31.)

20   The district court entered a preliminary injunction on May 11, 2017 (Dkt. No. 433) and set

21   the case for trial on October 5, 2017.  On May 15, 2017 the district court ordered:

22

23       To prevent discovery prejudice and waste of resources, defendants shall file a
         written statement by **JUNE 1 AT NOON** setting forth any waiver of privilege on
24       pain of preclusion thereafter. . . . This issue shall be discussed at the case
         management conference, which remains set for June 7 at 8:00 a.m.  This is without
25       prejudice to any argument that certain waivers of privilege are already too late to
         avoid discovery prejudice, or that certain claims of privilege should never have
26       been asserted in the first place.

27   (Dkt. No. 438.)  June 1 came and went without Uber identifying any waiver of privilege; to the

28   contrary, it affirmatively represented that it did "not intend to waive any privilege." (Dkt. No.

3

531.)

In a response to a district court order filed June 28, 2017, Uber revealed for the first time that it believed Mr. Levandowski had downloaded Google's files to ensure the payment of his Google bonus. (Dkt. No. 755 at 13.) The response did not state how or when Uber had come to this belief. Then, in a pleading filed 12 days later, Uber stated that "after the allegations in this case arose, but before he took the Fifth, Levandowski told Travis Kalanick (and perhaps others) that he downloaded files in relation to the payment of this bonus from Google (a bonus that was ultimately worth $120 million)." (Dkt. 854 at 11.) Uber has not explained why it told the district court that Levandowski "perhaps" told others about the bonus when Mr. Kalanick's deposition and Ms. Padilla's declaration establish that Uber knew that Mr. Levandowski had told Mr. Kalanick *and* Ms. Padilla this information at the same time. Then, at a hearing before the district court on July 26, 2017—the day before Waymo took Mr. Kalanick's deposition—Waymo argued that Uber's Levandowski bonus theory is unsupported by any evidence. The following colloquy then occurred:

> THE COURT: Well, no, there's maybe inadmissible before the jury, but there's somebody who heard him say that.
>
> [WAYMO'S COUNSEL]: They say that someone heard him say that. There's no –
>
> THE COURT: Who is that person who heard him say that?
>
> UBER'S COUNSEL: Mr. Kalanick heard him say that.

(Dkt. No. 95 at 91:2-7.) Uber again failed to disclose that Ms. Padilla had heard Mr. Levandowski's statement. Such a disclosure would have revealed the attorney-client privilege issue.

Waymo deposed Mr. Kalanick the next day. Mr. Kalanick testified that he could not specifically remember the next conversation he had with Mr. Levandowski following the "all hands" meeting regarding whether Mr. Levandowski had taken files from Google. (Dkt. No. 1059-6 at 13.) He then proceeded to testify as to conversations he had with Mr. Levandowski "during a very long night with attorneys at Uber. Some of those discussions included Anthony. Some of them did not." (*Id.* at 21 (76:6-14).) At times he testified to the content of those

4

conversations or conversation, but at others Uber's counsel instructed him not to answer on the grounds of attorney-client privilege. (*See, e.g, id*. at 21.)  He was clear, however, that attorneys were present at all of the conversations.  (*Id*. at 31.)  Of significance here, he testified as to Mr. Levandowski telling him about the bonus reason for downloading the Google documents and his reason for invoking the Fifth.  (*Id*. at 25.)

Waymo subsequently filed a motion to declare that by having Mr. Kalanick testify as to what Mr. Levandowski said regarding his reasons for pleading the Fifth and for taking the documents in the first place, Uber has waived any privilege objection to everything Mr. Levandowski said to Uber on those topics; in other words, that a subject matter waiver is appropriate.  Uber responds that the only communications Mr. Kalanick substantively discussed were between Mr. Levandowski, Mr. Kalanick and Ms. Padilla and were not privileged in the first instance and thus there is no privilege waiver.

### DISCUSSION

Mr. Kalanick's deposition testimony on this issue is muddled at best.  It is impossible to discern what meeting or meetings he is speaking about, or even necessarily when they occurred. Although Uber raised this issue with Waymo during the deposition, Waymo chose to "take a risk" with the current status of the record.  (Dkt. No. 1059-6 at 21-22.)  Accordingly, for purposes of this motion, the Court will accept Uber's characterization that the only post-complaint conversation about which Mr. Kalanick testified to (other than the all-hands meeting), at least as to its substantive contents, is the one meeting on March 29 at which Mr. Levandowski, Mr. Kalanick and Ms. Padilla were present.

**A.  The March 29 Communications Were Privileged**

The question remains whether that conversation, or at least the communications regarding why Mr. Levandowski took Google's information and his decision to invoke the Fifth Amendment, were protected by Uber's attorney-client privilege.  Waymo, as the party asserting that the privilege applies, bears the burden of proof.  *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000). The privilege applies to communications made in confidence between an attorney and her client for the purpose of the provision of legal advice of any kind. *United States v. Martin*,

1   278 F.3d 988, 999 (9th Cir. 2002).  Although the attorney-client privilege is strictly construed,

2   *Weil v. Inv./ Indicators, Research & Mgmt., Inc.* 647 F.2d 18, 24 (9th Cir. 1981), the Court finds

3   that the record overwhelmingly compels the finding that Mr. Kalanick's testimony regarding that

4   conversation was protected by Uber's attorney-client privilege.

5            The Court finds that the purpose of the March 29 meeting between Mr. Levandowski, Mr.

6   Kalanick and Ms. Padilla was to learn information from then-Uber executive Mr. Levandowski to

7   enable to Ms. Padilla and her colleagues to advise their client—Uber—about how to proceed in

8   this lawsuit.  Ms. Padilla's declaration supports this finding.  She states that the purpose was to

9   discuss with Mr. Levandowski "Waymo's allegations of improper downloading of Google

10  information while he was employed at Google," (Dkt. No. 1082-1 at ¶ 6), that is, to discuss the

11  allegations of Waymo's legal complaint.  Why did Uber want to know what Mr. Levandowski had

12  to say about those allegations?  The declaration is silent.  The Court finds that Uber wanted to

13  know what Mr. Levandowski had to say because of its implications for this lawsuit.  Indeed, the

14  reason for the meeting with Mr. Levandowski that immediately preceded this meeting was

15  precisely to learn the facts and determine "their implications" for legal advice. (*Id.* at ¶ 5.)  The

16  Court's finding is also supported by Mr. Kalanick's testimony.  His testimony supports the

17  inference, and the Court finds, that he viewed this meeting as a continuation of the meeting before

18  (which Uber insists is protected by its privilege) and the meetings that followed (again privileged).

19  Indeed, he testified that Mr. Kalanick's lawyers "joined" the conversation he had been having with

20  Mr. Levandowski and Ms. Padilla.  (Dkt. No. 1059-6 at 24.)

21           Ms. Padilla's declaration is also silent as to why she was at the meeting.  Uber contends

22  that the presence of a lawyer does not necessarily mean a communication is privileged.  True.  But

23  from all the circumstances here, the only purpose the Court can find was to enable Ms. Padilla and

24  her colleagues to provide Uber legal advice.  She was Uber's head of litigation.  She was present

25  at similar meetings immediately before and after that were for the purpose of providing legal

26  advice.  And Uber has in fact used what she learned in that meeting to shape its litigation strategy.

27  Uber's oral argument speculation that perhaps she was there to provide Mr. Kalanick "comfort" is

28  not supported by anything in the record and, in any event, does not make the communications

United States District Court
Northern District of California

6

unrelated to Uber's purpose of obtaining legal advice.  Why was Ms. Padilla a comfort?  Because she was the in-house litigation counsel and Mr. Kalanick was hoping to learn facts relevant to this litigation.

Further, during that conversation Ms. Padilla actually advised Mr. Levandowski (as an Uber executive) and Mr. Kalanick (as Uber's CEO) as to what Uber wanted him to do in this litigation; namely, testify. This, too, supports the Court's finding that the communications during that meeting were for the purpose of enabling Uber to obtain legal advice.  While Ms. Padilla told Mr. Levandowski she could not offer him advice, given that she knew he was represented by his own personal counsel, she was free to advise him what his employer—Uber—wanted him to do in the litigation and she did just that.  In doing so she was also providing legal advice to Uber as she stated, in her capacity as Uber's in-house litigation counsel, she agreed with Mr. Kalanick that Mr. Levandowski should testify.

Ms. Padilla's testimony that she did not believe the conversation to be privileged (although, again, she does not then explain why she was present) does not make the conversation not privileged.  If that was all it took to make a communication that has all the hallmarks of a privileged communication not privileged then the rule about not using the privilege as a shield and a sword would be meaningless. Under Uber's theory all a party would have to do is cherry pick the communications they want the opposing party to see and identify those as not privileged, all the while being able to shield other not so favorable communications from disclosure even if they are about the very same topic by claiming those communications privileged.  The law of privilege is not that unfair.  *See Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340–41 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness. Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable.").

Uber's oral argument emphasis on its disclosure of the contents of the February 2017 "all hands" meeting is unpersuasive.  There the stated purpose was to assure the hundreds if not close

7

to a thousand Uber Advanced Technology Group employees in San Francisco and Pittsburg of Uber's commitment to not stealing the technology of others. Ms. Padilla's stated purpose was to likewise assure them of Uber's processes for ensuring that does not happen. It was not an intimate meeting between two of a corporation's top executives and its in-house litigation counsel about the allegations of a lawsuit against the corporation.

The Court also finds that the communications during that meeting were made in confidence. Again, Mr. Kalanick's deposition testimony reveals that he viewed the meeting as one of many that he had with his attorneys that evening to discuss the implications of the decision of Uber executive Anthony Levandowski to invoke the Fifth Amendment. They were made in a conference room between the head of litigation and two top Uber executives and there is no evidence from which the Court could conclude that they were not intended to be confidential. *Compare with United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009) (holding that no individual attorney-client privilege attached to corporation executive's communications with outside counsel where the executive knew the communications were for the purpose of disclosure to the corporation's outside auditors). Indeed, Uber's reluctance to even admit that Ms. Padilla was present is consistent with the confidential nature of the communications.

That Ms. Padilla was not Mr. Levandowski's personal attorney is of no moment. The attorney-client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors in order to secure legal advice. *United States v. Chen,* 99 F.3d 1495, 1502 (9th Cir. 1996). Mr. Levandowski was himself a corporate superior. But even if not, the communications occurred at the direction of Mr. Kalanick, the CEO, in the midst of a series of meetings to address Mr. Levandowski's intent to invoke the Fifth Amendment in litigation in which Uber was a defendant. Classic attorney-client privileged communications.

The cases upon which Uber relies do not help its cause. In *United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009), Ruehle, the corporation's chief financial officer, was interviewed by the corporation's outside counsel in connection with a stock backdating inquiry. *Id*. at 602. The Ninth Circuit assumed that Ruehle's communications with outside counsel were protected by the corporation's attorney-client privilege. *Id*. at 607. The *Ruehle* court's conclusion that Ruehle did

8

United States District Court
Northern District of California

1    not have an individual attorney-client relationship with the corporation's outside counsel is not

2    applicable here.  This Court's finding is that the communications are protected by Uber's attorney-

3    client privilege, not any privilege held by Mr. Levandowski.

4         *United States v. Chevron*, 241 F.Supp.2d 1085 (N.D. Cal. 2002), held that

5    "communications involving in-house counsel might well pertain to business rather than legal

6    matters" and that "[t]he privilege does not protect an attorney's business advice."  *Id.* at 1076. The

7    court also held that for a communication to be entitled to protection, the privilege proponent must

8    show that the "primary purpose" of the communication was securing legal advice.  *Id.*  Assuming

9    that this district court case is reciting the current governing standard, for the reasons explained

10   above the Court finds that the primary purpose of the communications between Mr. Levandowski,

11   Mr. Kalanick and Ms. Padilla was to learn facts relevant to this lawsuit to enable Ms. Padilla and

12   Uber's other counsel to provide Uber with legal advice.  Indeed, Uber has not identified what

13   "business advice" Ms. Padilla, Uber's in-house litigation counsel, may have been giving in these

14   circumstances.  The omission is unsurprising given that Ms. Padilla gave Uber (through its CEO

15   Mr. Kalanick) legal advice during those same communications: Mr. Levandowski should testify in

16   the litigation.

17        The only other case Uber cited on this issue, *United States v. Gunter*, 474 F.2d 297 (9th

18   Cir. 1973), is inapposite.  It merely held that communications to an accountant for the purpose of

19   obtaining accounting advice are not protected by the attorney-client privilege. Uber could not find

20   any case with facts even remotely similar to those here to support its unprecedented "no privilege"

21   argument.

22        **B.**     **Uber Waived its Privilege**

23        By electing to disclose Uber's communications between Mr. Levandowksi, Mr. Kalanick

24   and Ms. Padilla Uber deliberately waived its attorney-client privilege with respect to those

25   communications. *See Ruehle*, 583 F.3d at 607.  The waiver extends to undisclosed

26   communications regarding the subject matter of the disclosed communications.  *See* Fed. R. Evid.

27   502(a).

28        Uber nonetheless insists that the Court should not apply a subject matter waiver because its

disclosure of privileged communications (if any) was inadvertent as it had a good faith belief that the communications were not privileged. The Court disagrees. Federal Rule of Evidence 502 provides:

> (b) Inadvertent Disclosure. When made in a federal proceeding . . . , the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b). Even if the Court found that Uber had a good faith belief that Mr. Levandowski's communications with Ms. Padilla and Mr. Kalanick were not privileged (and the Court does not so find), Uber offers no support for its assertion that a lawyer's incorrect advice on whether communications are privileged constitutes inadvertence for purposes of Rule 502(b). Moreover, as Uber did not take any reasonable steps to prevent the disclosure, the second required element of Rule 502(b) is also not met. Finally, at oral argument the Court offered Uber the opportunity to withdraw its waiver and assert the privilege over the communications, in other words, "to rectify the error." Uber declined. Thus the third element of Rule 502(b) is not satisfied. Subject matter waiver applies.

### C.     Next Proceedings

The next step is for the parties to provide supplemental briefing on the scope of Uber's waiver. As Mr. Kalanick's deposition demonstrates, however, it appears that the scope of the waiver may extend to communications made by and to Mr. Levandowski while his personal attorneys were present. He thus may have an individual attorney-client privilege in those communications, although he did not assert such a privilege as to the communications at issue on this motion. The parties must therefore address whether (1) Mr. Levandowski has an individual attorney-client privilege in communications that would be swept within the scope of Uber's subject matter waiver, (2) Uber can waive the privilege with respect to those communications if Mr. Levandowski has an individual attorney-client privilege and, (3) if Uber cannot, whether in

10

fairness Uber should be allowed to waive the privilege with respect to the communications in which Mr. Levandowski does not claim an individual privilege.  The parties, including counsel for Mr. Levandowski, shall meet and confer, with the assistance of the Special Master if necessary, and propose a process for addressing these questions.

## CONCLUSION

The Court finds that the primary purpose of the March 29, 2017 communications among Mr. Levandowski, Mr. Kalanick and Ms. Padilla was to learn facts to assist with Uber's counsel's provision of legal advice to Uber.  Accordingly, those communications were protected by Uber's attorney-client privilege.  Uber waived the privilege by, at a minimum, having Mr. Kalanick and Ms. Padilla testify as to the substance of the communications.  The waiver exception in Federal Rule of Evidence 502(b) does not apply.

Any objections to this Order must be filed with the district court by noon on Wednesday, August 16, 2017.  The Court recommends that when the district court resolves any objections (assuming it agrees with this Court's finding), or if no objections are filed, that the district court address whether Uber is precluded from making the waiver and thus offering evidence from Mr. Kalanick or Ms. Padilla as to Mr. Levandowski's communications in light of the district court's deadline for identifying waivers of the attorney-client privilege.  If the waiver is barred by its tardiness, such a holding would impact whether and to what extent a subject matter waiver should be imposed.

This Order disposes of Docket No. 1060.

**IT IS SO ORDERED.**

Dated: August 14, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge