1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  ERIC A. TATE (CA SBN 178719)
   ETate@mofo.com
4  RUDY Y. KIM (CA SBN 199426)
   RudyKim@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California 94105-2482
   Telephone: 415.268.7000
7  Facsimile: 415.268.7522

8  KAREN L. DUNN (*Pro Hac Vice*)
   kdunn@bsfllp.com
9  HAMISH P.M. HUME (*Pro Hac Vice*)
   hhume@bsfllp.com
10 BOIES SCHILLER FLEXNER LLP
   1401 New York Avenue, N.W.
11 Washington DC 20005
   Telephone: 202.237.2727
12 Facsimile: 202.237.6131

13 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.
14 and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　　Defendant. | Case No.　　3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO, LLC'S REPLY IN SUPPORT OF MOTION TO STRIKE VAGUE AND OVERBROAD TRADE SECRET CLAIMS**<br><br>Trial Date: October 10, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I. INTRODUCTION

Waymo's opposition brief confirms that its alleged TS 25, 90, 96, and 111 should be stricken. Notwithstanding its embrace of the Court's *Jobscience* requirement to disclose its trade secret claims with precision, Waymo does not even attempt to show that its Section 2019.210 disclosure of these trade secrets meets this standard. Instead, it cherrypicks specific examples encompassed by its alleged trade secrets. But its actual claimed trade secrets represent the kind of categorical descriptions and catchall language that courts have rejected.

In March, the Court instructed Waymo to narrow its trade secrets list to "ones that will hold up." Uber timely brought this motion to strike only days after Waymo provided its narrowed list. Contrary to Waymo's claims, Northern District courts have evaluated the sufficiency of a plaintiff's trade secret disclosure under Section 2019.210 late in the case, and not just early in discovery. Furthermore, because Waymo's obligation to identify trade secrets with specificity is a duty owed ***to the Court***, Uber is correct to bring a motion to strike, rather than a summary judgment motion. Waymo should not get another bite at the apple: the proper remedy for Waymo's depriving Uber of the meaningful opportunity to prepare its defense is to strike the improperly delineated trade secrets.

## II. ARGUMENT

### A. Waymo Does Not Dispute This Court's *JobScience* Requirements, or Its Failure to Meet Them

Earlier in this case, Waymo accepted this Court's *JobScience* requirement to list "the specific elements for each [trade secret], as claims would appear at the end of a patent." (Mot. at 6.) In its opposition brief, Waymo does not challenge the Court's holding in that case that an identification of schematics without further explanation or of "mere criteria" without "the secret of how it is done" fails to meet this standard. *JobScience, Inc. v. CVPartners, Inc.*, No. C 13-04519-WHA, 2014 WL 1724763, at *3 (N.D. Cal. May 1, 2014). Yet, Waymo does not even attempt to show that it has identified the "specific elements" of each of its trade secrets in the actual language of its Section 2019.210 disclosure. (*Compare* Mot. at 2-3 *with* Opp'n at 5-8.)

DEFS.' REPLY ISO MOT. TO STRIKE VAGUE AND OVERBROAD TRADE SECRET CLAIMS
CASE NO. 3:17-cv-00939-WHA
sf-3814517

1

These disclosures are the type of broad categories, schematics, and "mere criteria" that this Court has rejected as making it "virtually impossible to distinguish the alleged trade secrets from knowledge in the field." *JobScience,* 2014 WL 1724763, at *3. Without an identification of the "specific elements" required by *JobScience*, "Defendants cannot reasonably prepare its defenses" because "boundaries of the trade secret are so undetermined." *Id.* at *2-3.

**B. Waymo's Cherrypicked Examples Do Not Cure Its Overbroad Disclosures**

Rather than defend the actual language of its trade secret disclosures, Waymo resorts to identifying specific examples encompassed by its alleged trade secrets. But these examples do not cure the fundamental deficiency of Waymo's trade secret descriptions, which claim far more than the specific examples identified in Waymo's opposition brief.

For TS 25, Waymo argues that it does not claim "general concepts," but instead claims [redacted] (Opp'n at 5.) Waymo's trade secret disclosure, however, is not limited to any specific named parameters, but claims [redacted]" (Mot. at 2-3.) The issue is not whether, as Waymo contends, Defendants can search for any public information on self-driving car scenarios. (*See* Opp'n at 6.) The issue is that it is impossible to conduct such an investigation when Waymo refuses to name what specific information in a combined 98 pages are "general concepts" and what are its trade secrets.

Furthermore, Waymo has tipped its hand about how it intends to present TS 25 at trial, such that Defendants cannot prepare a meaningful defense. Waymo attempts to narrow its TS 25 through attorney argument to survive this motion to strike, and then revive the broad scope of its TS 25 disclosure for trial. Where Defendants have identified publicly-known self-driving car scenarios such as detection of lane markings or the identification of children by a parked car, Waymo contends that it is not claiming such "general concepts." (Opp'n at 5.) But Waymo's purported evidence of misappropriation appears to be discussions of such broad concepts (e.g., conversations about [redacted] or [redacted] without any showing that its [redacted] documents were ever downloaded or that specific

parameters from its documents were used. (Opp'n at 9; *see* Mot. at 3.) Waymo cannot have it both ways.

      For both TS 90 and 96, Waymo contends that it claims "■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■" (Opp'n at 6 (emphasis added).) Waymo's obscure reference to "■■■■■■■■■■■■■■■■■■■" is the crux of the issue—without specificity about the exact technical features covered by the asserted trade secrets, it is impossible for Defendants to formulate a defense against Waymo's broad disclosures of ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■" without any explanation (TS 96). (*See* Mot. at 2-5.) Waymo's TS 90 claims not only ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ but also unnamed ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (Opp'n at 7.) Likewise, Waymo's TS 96 goes beyond what it calls ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ and instead includes also unnamed "design characteristics" for which Waymo fails to identify the specific trade secret elements or components. (Opp'n at 7; Mot. at 4-5.)

      Furthermore, Waymo does not dispute that its TS 90 and 96 encompass other, purportedly dropped trade secrets; instead, it argues that this overlap is permissible under Section 2019.210. (Opp'n at 6.) This reliance on catchall trade secrets, however, circumvents the Court's order that Waymo limit its final lineup to "less than ten." (Dkt. 563 at 4.) And Waymo does not dispute that it has hidden the ball by asserting such catchall trade secrets, while its 30(b)(6) witnesses are unprepared to testify about them. (Mot. at 8 n.9.)

      Waymo argues that its TS 111 claims more than ■■■■■■■■■■■■■■■■■■■■ and identifies specific ■■■■■■■■■■■■■■■■■■■■■■■■■■." (Opp'n at 8.) Waymo disregards the actual text of its Section 2019.210 disclosure, which claims "■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■" that is not limited to any specific problem. (Mot. at 3.) Moreover, Waymo apparently intends to prove misappropriation of TS 111 based on a general recommendation to use a spinning head LiDAR over other approaches, ■■■■■■■■■■■■■■■■■■■■■■■■■, not any specific problems stated

in its trade secrets list. (Dkt. 1159-20 at 482:2-12.) Again, Waymo should not be allowed to narrow TS 111 to survive this motion only to claim a broader scope at trial.

      **C.    Uber's Motion to Strike Is Timely and Not a Motion for Summary Judgment**

Waymo contends that Uber waived its challenge by failing to move earlier in discovery. But the Court ordered Waymo to narrow its list to patents that will "hold up" by August 1. (Mot. at 8-9.) Waymo's Court-ordered list amended TS 7 but not the other trade secrets. (Dkt. 1110-1; Dkt. 335-4 at 2-4 (specifying a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).) Uber filed this motion only days later.

Citing *JobScience*, Waymo argues that Defendants should have raised challenges immediately after the original filing of its Section 2019.210 list. (Opp'n at 2.) But in *Jobscience*, plaintiff filed its Section 2019.210 list after two orders from the Court to define its trade secrets, which defendants then challenged. *JobScience*, 2014 WL 1724763, at *3. Here, the Court twice instructed Waymo to provide a narrowed list of the specific trade secrets "to be tried," and Uber timely filed this motion after Waymo served its narrowed list. (Mot. at 9.)

Furthermore, in *Fortinet*, the Northern District court assessed the sufficiency of plaintiff's TS under Section 2019.210 late in the case, three months before trial. *Fortinet, Inc. v. Sophos, Inc.*, No. 13-cv-05831-EMC, 2015 WL 5971585, at *2-3 (N.D. Cal. Oct. 15, 2015); *see Fortinet*, Dkt. 110 (scheduling order). Because defendant "has already accepted [plaintiff's] trade secret disclosure for discovery purposes," the "primary question for the Court [was] whether the trade secret disclosure is sufficiently specific such that [defendant] can adequately defend itself." 2015 WL 5971585 at *2; *see also Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 4149066, at *4 (N.D. Cal. July 9, 2015) (case cited by Waymo identifies Section 2019.210's purpose as framing scope of discovery, but also to "enable[] defendants to form complete and well-reasoned defenses" instead of waiting for "eve of trial"). This is the same inquiry that Uber requests the Court conduct here.

Uber has challenged the sufficiency of individual trade secrets when Waymo raised them in discovery. (*See* Dkt. 929-4 and 1006-4.) Notably, Waymo does not dispute that TS 25 and TS 111 had not previously been the focus of this litigation. Waymo alleged for the first time on July 28, days before its August 1 list, that Uber used TS 25 and 111. Waymo had previously admitted

1  that TS 25 and TS 111 were not disclosed in any allegedly downloaded files.  (Mot. at 3; Dkt.
2  1107-8 at 23-25.)  Waymo's August 1 interrogatory responses were devoid of detail about the
3  scope of TS 25 and 111, and its newly served interrogatory responses on August 10 are no more
4  precise in their delineation of these trade secrets.  (Chang Reply Decl. Ex. A, Waymo's Amended
5  4th Suppl. Resp. to 1st of Interrogs. at 23-25.)

Furthermore, this motion is properly a motion to strike, not a summary judgment motion that litigates the merits of this case.  "[A] particularized description of an alleged trade secret is a duty owed to the court," which is separate from whether an asserted trade secret is in fact a trade secret.  *Agency Solutions.Com, LLC v. Trizetto Grp.*, Inc., 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011).  As explained in *AgencySolutions.com*, a district court can "reject a claim that information is a trade secret *sua sponte* if the information is not identified . . . with sufficient particularity to allow the court to determine what the information is."  *Id.*  Waymo has no answer to this Court's ruling in the *JobScience* case, which similarly granted a motion to strike trade secret claims that were not sufficiently disclosed.

## III. CONCLUSION

Waymo has no excuse for this lack of precision.  After 12 inspections, hundreds of thousands of pages of documents, and 35 Uber depositions, including 15 of Uber engineers, Waymo evidently cannot muster more than a handful of more narrowly delineated trade secrets to assert.  The Court should hold Waymo to those trade secrets, and strike the remainder.

Striking Waymo's overbroad trade secrets is the appropriate remedy, not another chance at supplementation.  Unlike in *Jobscience*, this case is on an accelerated trial schedule at Waymo's insistence.  The Court was clear that Waymo needed to identify the specific trade secrets in play before expert reports were due on August 24, which is a week from the August 16 hearing on this motion.  Waymo understood its obligations to provide disclosures with specificity for TS 7, but declined to provide this detail for TS 25, 90, 96, and 111.  Waymo should not be allowed a third bite at the apple.  Accordingly, Uber's motion should be granted.

| | | |
|---|---|---|
| Dated: August 14, 2017 | | MORRISON & FOERSTER LLP |

By: */s/ Arturo J. González*
ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC