

August 15, 2017

Honorable Jacqueline Scott Corley
U.S. District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

　　　　Re:　*Waymo LLC v. Uber Technologies, Inc. et al.*, Case No. 3:17-cv-00939

Dear Judge Corley:

Defendants Uber Technologies Inc. and Ottomotto LLC (collectively, "Uber") move to compel Waymo to answer and supplement its responses to Uber's Interrogatory Nos. 18-20 and 24-25, to produce documents sought by Uber's Request for Production Nos. 166 and 170-175, and to designate a 30(b)(6) witness to testify on Uber's Topic 7 regarding Waymo's use of indemnification provisions. Uber also moves to enforce the Court's August 7 order and order Waymo to run the bonus search terms on one of the 11 custodians identified by Uber, along with two 30(b)(6) witnesses designated after the Court's order. The Special Master authorized this motion.

**Efforts to Protect Confidentiality and Secrecy (Interrogatory 19 and Requests 171 and 173):** Interrogatory No. 19 and Request Nos. 171 and 173 seek evidence of Waymo's efforts to protect confidentiality and secrecy of information. Interrogatory No. 19 asks Waymo to describe the efforts, contracts or agreements it takes to maintain the confidentiality or non-public nature of its M&A transactions. (Pritt Decl., Ex. 1 at 5-6.) Request No. 171 seeks documents about those efforts, and Request No. 173 seeks documents sufficient to show the timing, character, nature, claims, parties, purpose, and resolution of legal actions taken by Waymo against former employees or their new employers. (*Id.*, Ex. 4 at 6-8.) Waymo refused to produce documents in response to these requests (*id.*), and its interrogatory answer provides little more than vague and conclusory statements that Waymo protects the confidentiality of transactions and information.

Uber offered to limit Request No. 173 to Waymo's confidentiality and information-sharing policies and practices, and agreements entered into by Waymo or other Alphabet entities with privilege or common interest provisions that extend beyond the life of an M&A transaction. Uber also offered to limit Request No. 171 to demand letters, complaints, and documents sufficient to show their resolution, involving allegations similar to those in this case—breach of confidentiality, trade secret misappropriation, and patent infringement. Waymo still refused to produce any documents, arguing that evidence of other similar claims (or the lack thereof) and Waymo/Google's practices are not relevant, relying on the Court's previous "▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* at 7.)

*First*, the Court's decision that common interest documents and the positions Waymo has taken in other litigation were not relevant to the preliminary injunction hearing (*see* 4/25 Tr., Dkt. 277, at 43-44, 4/27 Tr., Dkt. 296, at 2:17-21), was not a ruling that those documents—let alone the


documents sought by any of the requests at issue in this motion—were not relevant during merits discovery.  (*See* 7/7 Order, Dkt. 833, at 2.)  Evidence of Waymo's efforts to maintain the secrecy of its alleged trade secrets and to protect the technology covered by Waymo's remaining patent in suit—including whether Waymo made other demands or filed lawsuits involving similar claims against other former employees or their new employers—is directly relevant to the parties' claims and defenses.  Cal. Civ. Code § 3426.1(d)(2) (a "trade secret" must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy"); *American Honda Motor Co., Inc. v. Coast Distr. Sys., Inc.*, No. C 06-4752 JSW, 2007 WL 47258, at *5 (N.D. Cal. 2007) ("other lawsuits also evidence [plaintiff's] willingness to protect technology covered by these patents") (citing Federal Circuit caselaw).  Indeed, in deciding "whether or not [Waymo] made reasonable efforts to" maintain secrecy, the jury is entitled to consider, and Uber is entitled to discover, "whether [Waymo] took any action to protect [a] specific [trade secret], or whether [Waymo] relied on general measures taken to protect its business information."  CACI 4404; *see also* 8/14 Order, Dkt. 1188, at 3 ("discovery relevant to Waymo's misappropriation claims may extend beyond evidence directly concerning Waymo's own asserted trade secrets").

*Second*, Uber is entitled to more than a vague and conclusory interrogatory response that Waymo ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (Pritt Decl., Ex. 1 at 6.)  Merely "[d]eclaring that something is confidential and a trade secret is not the same thing as providing evidence that the information . . . is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  *Earthcam, Inc. v. Oxblue Corp.*, 2017 WL 3188453, at *8 (11th Cir. 2017) (quotation marks and alterations omitted).  Moreover, Uber is entitled to know whether Waymo's confidentiality practices and instructions "to keep 'everything' . . . confidential" are just "ceremonial measures," *Hertz v. Luzenac America, Inc.*, 2006 WL 1794736, at *2 (D. Colo. 2006); *see* Pritt Decl., Ex. 5 (Krishnan Tr.) at 101:16-104:1, 107:11-13, 110:10-13 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ or whether Waymo has actually taken measures to protect its trade secrets.  Waymo's interrogatory response, like its complaint and filings throughout this case, does not "distinguish its trade secrets from non-trade secret 'confidential information.'"  6/8 Order, Dkt. 576, at 6; *see, e.g.*, *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F.Supp.3d 224, 261 (S.D.N.Y. 2014) (plaintiff "uses 'trade secret' and 'confidential' as if the terms were interchangeable, but they are not"; a "unilateral declaration of confidentiality relating to an entire commercial field" is "vague and indefinite").

*Third*, discovery of Waymo's efforts to maintain the confidentiality of its M&A transactions is necessary to rebut Waymos' allegations that Uber's efforts to maintain the confidentiality of its acquisition of Ottomotto were part of some scheme to steal Waymo's confidential information and trade secrets.  (*See* Dkt. 756 at 6 (arguing that Uber "went to great lengths to shroud the acquisition and the due diligence process in secrecy," and its confidentiality efforts and common interest agreement in connection with the Ottomotto acquisition are "evidence of a coverup").)



Uber's Motion to Compel RFP & ROG Responses, Enforce Order, and Compel 30(b)(6) Testimony
Case No. C 17-00939 WHA

If Waymo wants to avoid discovery on these issues, then it should be required to stipulate that: (1) it will not argue at trial that it has taken any actions to protect its trade secrets other than general measures taken to protect its business information, and (2) Uber's efforts to maintain the confidentiality of the Ottomotto acquisition were not a "coverup." (*See* 7/6 Order, Dkt. 808, at 2 (ordering production of documents because Waymo refused to stipulate that it would not argue Levandowski violated Google's side business policies).) Absent such a stipulation, Uber asks that the Court order Waymo to produce responsive documents and supplement its interrogatory response.

**M&A Transactions and Due Diligence (Interrogatory 18 and Requests 170 and 172):**
Interrogatory No. 18 asks Waymo to describe the steps, including due diligence, that Waymo and other Alphabet entities take in M&A transactions. (Pritt Decl., Ex. 1 at 4.) Request Nos. 170 and 172 seek documents about those steps relating to transactions with companies that had yet to commercialize products or tangible assets, and transactions motivated by acquiring, hiring or recruiting employees, i.e., "acqui-hire" transactions (No. 170); and documents sufficient to show Waymo/Google's due diligence processes, procedures, and protocols, including whether they have performed forensic analysis during due diligence (No. 172). (*Id.*, Ex. 4 at 7-8.) Waymo refuses to produce documents, or to provide information about Google/Alphabet's transactions.

Like discovery into Waymo/Google's confidentiality efforts, discovery into Waymo's and Google/Alphabet's acqui-hire transactions and due diligence practices are relevant to Uber's defense against the conspiracy theories Waymo intends to present to the jury, alleging that the steps Uber took in connection with acquiring Ottomotto were done to "coverup" Levandowski's alleged "theft" of 14,000 Waymo files and to "steal" Waymo's trade secrets. (Dkt. 756 at 1, 5-6.) Also, "[g]iven that Waymo did not exist until December 2016," Waymo's limitation of Uber's requests to exclude other Alphabet entities' documents and information "serves no other purpose than to deprive Uber of relevant information." (4/28 Order, Dkt. 313, at 2.) The same is true of Waymo's unilateral limitation of Uber's requests to "Waymo's acquisitions in the self-driving space." While the number of Waymo's "acquisitions in the self-driving space," if any, is unclear, the vast majority of Google/Alphabet's acquisitions are not limited to that space, and Google/Alphabet's practices in connection with its other acquisitions are just as relevant. That relevance is further demonstrated by the fact that Waymo has taken advantage of its self-imposed limitation by responding to Interrogatory No. 18 that Waymo ▊▊▊▊▊▊▊▊▊▊▊▊

Moreover, as one recent example, Waymo's self-imposed limitation would not capture Google's recent hiring of Tesla's vice president of its Autopilot autonomous driving software. *See* https://www.cnbc.com/2017/08/14/google-hires-tesla-autopilot-chief-chris-lattner.html ("Interestingly, Lattner is not joining Alphabet's Waymo autonomous driving group . . . .").

Uber offered to limit the documents and information sought by these requests to a handful of acquisitions—DeepMind, Waze, SCHAFT, Redwood Robotics, Apportable, JustSpotted, and Path—and hires from other prominent technology competitors—Blaise Agüera y Arcas, Kai-Fu Lee, Mark Lucovsky, Manu Gulati, Vinton Cerf, Diane Greene, and Chris Lattner; along with a request that Waymo investigate whether Alphabet entities have hired teams of employees from competitors or used forensic analysis efforts in the course of recruiting or hiring employees (and, if so, to produce documents sufficient to show those hires and efforts). Waymo still refused.



Uber's Motion to Compel RFP & ROG Responses, Enforce Order, and Compel 30(b)(6) Testimony
Case No. C 17-00939 WHA

Again, if Waymo wants to avoid discovery on these issues, it should be required to stipulate that it will not argue at trial that there is anything improper or unusual about (1) acquiring a company for its talent or employees, or acquiring a company without commercialized products or tangible assets; (2) recruiting or hiring employees from competitors; and (3) the processes, procedures, and protocols used by Uber in connection with acquiring Ottomotto. Absent such a stipulation, Waymo should produce responsive documents for the acquisitions and hires identified by Uber; produce documents sufficient to show the instances in which Alphabet entities have hired teams of employees from competitors or conducted forensic analysis (internally or through an agent or third party) in connection with a transaction or hire; and supplement its response to Interrogatory No. 18 with that information. The Court should also require Waymo to amend its interrogatory answer to provide sufficient detail. (*See* Pritt Decl., Ex. 1 at 5.)

**Efforts to Prevent Misappropriation (Interrogatories 20 and 24, and Requests 174 and 175):** Interrogatory Nos. 20 and 24 ask Waymo to describe the efforts it has taken to prevent another company's confidential, proprietary or trade secret information from entering Waymo, including any investigations or forensic analysis Waymo performs, and any instances in which such information has entered Waymo. (Pritt Decl., Ex. 1 at 7, 13.) Waymo refused to respond (*id.*), again relying on the Court's ruling that Waymo's common interest agreements were not relevant to the preliminary injunction hearing (*see* Dkts. 277, 296). As discussed above, that ruling does not excuse Waymo from complying with these requests. Waymo has made Uber's efforts to prevent other companies' confidential, proprietary or trade secret information from entering Uber, and whether those efforts were unique or improper, the central issue in its case. Discovery into whether Waymo and other Alphabet entities have taken similar or less comprehensive efforts (or failed to take such efforts at all), and whether other companies' trade secrets have come into their possession, is therefore critical to rebut and defend against Waymo's allegations. Thus, Uber requests that the Court order Waymo to answer these interrogatories.[1]

Similarly, Request Nos. 174 and 175 seek documents about Waymo's efforts to prevent other companies' confidential, proprietary or trade secret information from entering Waymo (No. 174), and instances in which such information has entered Waymo or come to its attention in the course of a M&A transaction, or recruiting or hiring employees (No. 175). (Pritt Decl., Ex. 4 at 9-10). Waymo responded to both requests and refused to produce more. But that is not responsive to whether such information has entered Waymo/Google. It is also unclear if there are policies applicable to Waymo that are not or whether those policies are the only efforts that Waymo has taken to prevent companies' confidential information from entering Waymo.

Nonetheless, Uber offered to limit its request for documents responsive to Request No. 175 to those identified by whoever is most knowledgeable about whether confidential or trade secretion information has ever entered Waymo or Google/Alphabet in connection with M&A transactions

---

[1] If the Court declines to order Waymo to answer these interrogatories, Uber requests that the Court permit Uber to ask two additional interrogatories from its previously-served Interrogatory Nos. 26-50.


or acqui-hires.  (Pritt Decl., Ex. 4.)  Uber also offered to withdraw Request No. 174 if Waymo stipulates it will not argue at trial that it takes efforts to prohibit, sequester or otherwise prevent companies' confidential or trade secret information from entering Waymo except for any efforts described in the ████████████████████████ Waymo says it has produced.  (*Id.*)  Absent that stipulation, the Court should order Waymo to provide the discovery sought by Uber.

**Alleged Use of the 14,000 Files (Interrogatory 25):**  Interrogatory No. 25 asks Waymo to "identify every fact" it contends "shows use by Uber of any of the 14,000 files that [Waymo] claims were improperly downloaded by Anthony Levandowski."  (Pritt Decl., Ex. 2 at 5.)  Waymo's response incorporates by reference its answer to Interrogatory No. 1 (asking Waymo to identify the facts that show use by Uber of alleged trade secrets), and then purports to set forth additional "facts."  (*Id.*)  But most of these "facts" are just unsupported inferences and argument. ████████████████████████████████████████████████████████████████████████ (*Id.* at 5-6.)  Waymo also refers to ██████████████ it claims should be inferred from Levandowski's invocation of the Fifth Amendment, providing a single ██████████████ that is just another conclusory statement without any independent corroborating fact.  (*Id.* at 6.)

Despite extensive discovery, when asked to provide *facts* showing that Uber used any of the 14,000 files Waymo claims Mr. Levandowski stole, Waymo responds with unsupported inferences and conclusory arguments.  That is plainly insufficient.  *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) ("an adverse inference can be drawn when silence is countered by independent evidence of the fact being questioned"); *Reading Int'l, Inc. v. Malulani Grp., Ltd.*, 2014 WL 12606497, at *2 (D. Haw. 2014) ("conclusory statements do not identify facts"); *Talbot v. Sentinel Ins. Co., Ltd.*, 2012 WL 5288167, at *2 (D. Nev. 2012) (compelling further responses with conclusory assertions instead of facts); *see also U.S. v. Jordan*, 291 F.3d 1091, 1099 (9th Cir. 2002) ("merely speculative logic cannot displace the need for evidence").  If Waymo actually has *facts* to support its claims, it must disclose them, and it must do so now.  *See, e.g.*, *Cambridge Electronics Corp. v. MGA Electronics, Inc.,* 227 F.R.D. 313 (C.D. Cal. 2004) (excluding all evidence not disclosed to defendants in plaintiff's deficient interrogatory answers" because "[l]earning of plaintiff's liability theories only after they had filed their motion for summary judgment placed defendants at a distinct disadvantage"); 7/26 Tr., Dkt. 1050, at 57:12-25 (ordering Waymo to provide "a detailed offer of proof as to how Uber misappropriated and/or misused the trade secrets that [Waymo is] going to keep in the case").)  Thus, the Court should order Waymo to supplement its response by withdrawing its unsupported inferences and conclusory assertions, and instead either setting forth actual facts or admitting there are none.

**Conflicts with Mr. Levandowski (Request 166):**  Request No. 166 seeks documents and communications about complaints, arguments, disputes, conflicts, and evaluations relating to Mr.



Uber's Motion to Compel RFP & ROG Responses, Enforce Order, and Compel 30(b)(6) Testimony
Case No. C 17-00939 WHA

Levandowski. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Pritt Decl., Ex. 3 at 5.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See id.* at 6, Appx.)  Uber had a simple request: because ▓▓▓▓ and ▓▓▓▓ tenures post-date Levandowski's, ask three HR personnel (and deponents) who actually communicated with Levandowski—Chelsea Bailey, Stacey Sullivan, and Jolie Sorge—if they are aware of responsive documents, and produce any that are non-duplicative.  Waymo refused.  This request is neither burdensome nor unreasonable, especially given Waymo's demands on Uber and this Court.  (7/7 Order, Dkt. 833, at 3; *see generally Atmel Corp. v. Authentec Inc.*, No. C-06-2138 CW (EDL), 2008 WL 276393, at *1–3 (N.D. Cal. Jan. 31, 2008) (persons most knowledgeable must search for documents).  Uber thus requests that the Court order Waymo to ask Mss. ▓▓▓▓ Bailey, Sullivan, and Sorge, and ▓▓▓▓ to search for documents responsive to this request, and to produce non-duplicative responsive documents.

**Bonus Search Term Custodians:**  The Court ordered Waymo to "run Uber's proposed [bonus] search terms . . . on the 11 proposed custodians."  (8/7 Order, Dkt. 1094, at 1.)  But Waymo refuses to run the terms on the 11 custodians at issue in Uber's motion (*see* Dkt. 1081 at 4 n.6; Dkt. 1081-1 (Pritt Decl.) at 6:1-3 (Uber replaced ▓▓▓▓▓▓▓ with Google CFO ▓▓▓▓▓▓ as a custodian for the bonus terms)) on the ground that it would "take a few days" to collect Ms. ▓▓▓▓ emails.  (Pritt Decl., Ex. 8.)  That is not a sufficient justification to refuse to include Ms. ▓▓▓▓ as a custodian, especially when the Court ordered Waymo to run the terms on Uber's 11 custodians.  Also unjustified is Waymo's refusal to run the terms against the two additional witnesses that Waymo designated as its 30(b)(6) witnesses on the topic of the bonuses—▓▓▓▓ and ▓▓▓▓▓▓▓.  Waymo objects to adding these two as custodians on the grounds that the Court did not order Waymo to include them, Uber could have served its 30(b)(6) notice before July 28, and their emails hit on 5,000 documents.  (*Id.*)  But Waymo agreed that Uber could add custodians if there were additional deponents (*see* Pritt Decl., Ex. 6 at 1), and Waymo designated Mr. ▓▓▓▓ and Mr. ▓▓▓▓ on August 7 and 11, respectively, *after* both Uber's motion and the Court's order.  Moreover, the fact that Messrs. ▓▓▓▓▓▓▓▓ have 5,000 emails that hit on the bonus terms proves only that they are highly relevant custodians.  Accordingly, Uber requests that the Court order Waymo to run these terms on Ms. ▓▓▓▓ Mr. ▓▓▓▓ and Mr. ▓▓▓▓

**Uber is Entitled to a Corporate Witness on 30(b)(6) Topic 7:**  Topic 7 seeks testimony about Waymo's use of indemnification provisions in its acquisition or employment contracts, including policies pertaining to the use of such provisions and contracts that have included such provisions.  Waymo has refused to designate a corporate representative to testify about this topic.  Waymo, however, has insistently put the indemnification agreement between Uber and Mr. Levandowski—and what inferences, if any, may be drawn from that agreement—squarely at issue in this case.  Waymo argues that the "indemnification evidence is highly relevant to show what Uber knew about Mr. Levandowski's theft and when Uber knew about it," as well as "relevant to prove issues of bias and agency."  (Dkt. 968-4 at 1:4-7, *see also* 7/26 Tr., Dkt. 1050, at 11:24-25.)  Because Waymo seeks to argue that the indemnification agreement is evidence of knowledge and bias, among other things, Uber is entitled to discovery on Waymo's use of indemnification provisions in its acquisition and employment contracts in order to rebut these allegations.



Uber's Motion to Compel RFP & ROG Responses, Enforce Order, and Compel 30(b)(6) Testimony
Case No. C 17-00939 WHA

Respectfully submitted,

*Karen L. Dunn*

Karen L. Dunn
*Counsel for Uber Technologies, Inc. and Ottomotto LLC*

cc:   All Counsel of Record
      Special Master John Cooper