**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94101 | TEL (415) 875-6600

August 16, 2017

Magistrate Judge Jacqueline Scott Corley

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal., Case 3:17-cv-00939-WHA
       **Waymo's Opposition to Otto Trucking's Motion to Compel**

Dear Judge Corley:

Please find below Plaintiff Waymo LLC's opposition to Defendant Otto Trucking LLC's motion to compel privileged communications regarding Waymo's forensic investigation of Mssrs. Levandowski, Raduta, and Kshirsagar.

Sincerely,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

Anthony Levandowski, Radu Raduta, and Sameer Kshirsagar are all former Waymo employees ("the Former Employees") who left the company to form Defendants Ottomotto and Otto Trucking. During the preliminary injunction phase of the case, Waymo submitted the Declaration of Gary Brown (Dkt. 25-29) setting forth the factual aspects of Waymo's forensic investigation of the Former Employees. Waymo decided to waive work product with respect to the forensic investigations of the Former Employees so that it could submit the Brown Declaration in support of its Motion for a Preliminary Injunction. However, Waymo never waived attorney-client privilege over any attorney-client communications conducted during its investigation of the Former Employees, nor did the Brown Declaration disclose any such communications. Due to the work product waiver, Defendants have been free to probe into the factual details of what Mr. Brown and others did to conduct the investigation of the Former Employees. Defendants are not entitled, however, to privileged attorney-client communications on this subject.

Now Otto Trucking has filed a motion to compel, asking the Court to rule that Waymo has implicitly waived attorney-client privilege over any attorney-client communications regarding the investigation of the Former Employees. Otto Trucking's motion contradicts settled caselaw on the scope of work product waiver and its relationship to the attorney-client privilege. Further, Otto Trucking asks for relief with respect to an issue that is not even in dispute. The outcome of the forensic investigation of the Former Employees was that Levandowski downloaded over 14,000 files and took them with him when he left Waymo. Uber has conceded this point. (Dkt. 1082-1 ¶ 6.) Thus, Otto Trucking's motion is nothing more than an attempt to harass Waymo during the closing stages of fact discovery.

I.      **Waymo's Position on Its Narrow Work Product Waiver Has Been Consistent**

Throughout this case, Waymo has taken a principled approach and drawn a consistent line with respect to the attorney-client privilege and work product protection concerning its forensic investigation of the Former Employees. Although Waymo has waived work product protection over the investigation of the Former Employees, it has consistently asserted attorney-client privilege over attorney-client communications related to that investigation. Otto Trucking cites nothing to the contrary. For example, footnotes 2 and 3 of Otto Trucking's Motion cite 70 deposition passages in an attempt to prove selective waiver. However, in 65 of those 70 passages, the witness was ordered not to answer questions about forensic investigation(s) on grounds of *attorney-client privilege* because the questions at issue sought to elicit the substance of communications with attorneys, and not underlying facts. This is fully consistent with Waymo's position that it has not waived attorney-client privilege over its investigation of the Former Employees. Again, Defendants have always been free to discover the *facts* about what Waymo did to conduct its investigation of the Former Employees, but they are not entitled to discover *attorney-client communications* on this subject.[1]

---

[1] In the interest of full disclosure, Waymo notes that its counsel also lodged work product objections for some of the aforementioned 65 passages in which an attorney-client privilege objection was lodged. (*See, e.g.,* Mot., Ex. 1 at 28:23-29:3; Ex. 4 at 60:11-18; 206:5-20.) To the extent the objected-to question involved the investigation of the Former Employees, such work

As for the remaining five passages cited by Otto Trucking, three of them (Mot., Ex. 1 at 38:9-17; 38:19-23; 38:25-39:7) involved forensic investigations of employees *other than* the Former Employees. In these three instances, the witness was properly instructed not to answer on grounds of work product. Waymo has never waived any privilege or protection for investigations of employees *other than* the Former Employees.

The remaining two passages cited by Otto Trucking (Mot., Ex. 1 at 29:19-24 and 39:21-24) involved situations where Waymo's counsel originally asserted work product protection over information regarding Waymo's investigation of the Former Employees, but shortly thereafter, withdrew this objection. (Ex. 1 at 40:24-41:12.) Thus, Defendants' counsel was free to re-ask the earlier questions. In other words, after an initial and short-lived objection, Waymo's counsel re-asserted Waymo's consistent position: Waymo will waive work product protection over factual information relating to its investigation of the Former Employees, while retaining attorney-client privilege over attorney-client communications on this subject.

Finally, Otto Trucking complains that Waymo clawed back one document on privilege grounds. (Mot. at 2.) This document contained information about investigations of Waymo employees other than the Former Employees, and was clawed back for the limited purpose of redacting information about these other investigations. (Nardinelli Decl. at ¶ 5 and Ex. 4.) Again, this is consistent with Waymo's position that it has maintained all privileges and protections over investigations of employees other than the Former Employees.

## II.    Waymo's Position Is Fully Supported by the Relevant Legal Authority

Waymo's narrow waiver of work product protection over its investigation of the Former Employees, while maintaining attorney-client privilege over any attorney-client communications made during the course of that investigation, is completely proper. It is well-recognized that "[t]he attorney-client privilege and the work-product doctrine, though related, are two distinct concepts and waiver of one does not necessarily waive the other." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006); *see also Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-CV-03424-JCS, 2016 WL 7475820, at *8 (N.D. Cal. Dec. 29, 2016) ("Because the attorney client privilege and the work product doctrine are distinct theories of protection with different purposes, waiver of one does not necessarily waive the other.")

Otto Trucking cites no authority holding otherwise. While Otto Trucking states that "[t]he law draws no lines between the attorney-client privilege and work product doctrine here" (Mot. at 4), the only case it cites for this point is *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 623 n. 3 (N.D. Cal. 2006). Yet *Stanford* in no way suggests that a party who waives work product protection over a given subject matter necessarily waives attorney-client privilege over that subject. In *Stanford*, a patentee disclosed attorney-

---

product objections were overbroad. But they did not block Defendants from receiving any information because all 65 passages also contained a valid *attorney-client privilege* objection, which would block testimony even without the redundant work product objection.

client communications *and* work product in inventorship declarations that it submitted to the PTO. *Stanford*, 237 F.R.D. at 621-22. The court held that these disclosures waived both attorney-client privilege and work product protection over the subject of the declarations, as these disclosures "substantially increase[d] the possibility of an opposing party obtaining the information". *Id.* at 623 fn. 3. The critical point distinguishing *Stanford* from this case is the *Stanford* patentee's disclosure of attorney-client communications *and* work product material, thereby waiving both protections. By contrast, Waymo has never disclosed any attorney-client communications about its investigation of the Former Employees. Thus, there is no basis to say that the attorney-client privilege has been waived over such communications.

In a separate part of its brief, Otto Trucking cites *Walker v. Cty. of Contra Costa*, 227 F.R.D. 529, 533 (N.D. Cal. 2005). (Mot. at 3.) But in *Walker*, as in *Stanford*, a party disclosed information that was protected by both attorney-client privilege and work product protection. *Walker*, 227 F.R.D. at 534. Again, no such disclosure occurred here.

The other cases cited by Otto Trucking hold that a party cannot selectively rely on certain attorney-client communications while shielding other communications on the same subject. Like *Walker* and *Stanford*, these cases are inapposite. Again, Waymo has not relied on any attorney-client privileged communications about its investigation of the Former Employees. Rather, Waymo has consistently withheld such attorney-client communications as privileged.

### III.   Waymo Did Not Waive Privilege By Listing Brown and Gudjonsson as Experts

Otto Trucking also argues that "Waymo designated Mr. Brown and Mr. Gudjonsson to provide expert testimony about the investigation. This alone is sufficient to cause a waiver of privilege." (Mot. at 3.) This argument fails. In an abundance of caution, Waymo disclosed that Brown and Gudjonsson may provide percipient expert testimony related to the forensic investigation of the Former Employees and the "conclusions drawn" from their investigation. (Mot., Ex. 14 at 2.) Further, the very case cited by Otto Trucking explains that designation of an expert will only waive privilege if "the expert's prospective testimony 'will necessarily disclose a significant part of the privileged communication to the expert . . .'" (Mot. at 3 (quoting *QST Energy, Inc. v. Mervyn's*, 2001 WL 777489, \*3 (N.D. Cal. May 14, 2001).) Even if Brown or Gudjonsson provide conclusions drawn from their investigation, that will not "necessarily disclose" a "significant part" of any privileged communications to Brown and Gudjonsson. Again, Otto Trucking is perfectly free to discover facts about the investigation, including what conclusions Brown and Gudjonsson drew from those facts. But it is not entitled to attorney-client communication on this subject, nor has it shown that Brown or Gudjonsson will "necessarily disclose" a "significant part" of any privileged communications just by testifying about the conclusions that they drew from their investigation.

### IV.   Otto Trucking Mischaracterizes the Factual Record

Finally, though it is not actually relevant to the merits of its motion, Otto Trucking tries to disparage the integrity and thoroughness of the investigation that Mr. Brown conducted. According to Otto Trucking, Mr. Brown analyzed Levandowski's log data in March 2016 but

found nothing, instead finding evidence only months later, after an attorney told him to look for it. (Mot. at 2.) The implication is that sometime between March and October 2016, one or more attorneys manufactured false evidence of downloading and enlisted Mr. Brown to rubber-stamp their efforts and to ignore evidence painting Levandowski as an innocent man. This is nonsense, and Otto Trucking's charge that Brown ignored exculpatory evidence is built on numerous misrepresentations. For example:

- Otto Trucking claims Mr. Brown testified that Levandowski's computer went into lock-down mode during the download and that Mr. Brown ignored that fact. (Mot. at 2, citing Ex. 2 at 194:1:19.) Actually, Levandowski's computer never went into lock-down mode. Mr. Brown testified only to the existence of the lock-down feature. *Id.*
- Otto Trucking claims Mr. Brown testified that he did not review Levandowski's activities before concluding that his download was anomalous. (Mot. at 2, citing Ex. 2 at 262:18-261:21.) Mr. Brown testified to the opposite. (Mot., Ex. 2 at 263:11-13.) At any rate, Mr. Brown's declaration contained no opinions on perceived anomalies, only facts.
- Otto Trucking minimizes Mr. Brown's investigation as including only "one laptop and various metadata." Actually, Mr. Brown investigated two laptops and numerous log data, including ███████████████████████████████████████████████████████.

Despite Otto Trucking's allegations otherwise, the reason Mr. Brown did not see any log activity in March 2016 is simple – he had not yet begun to investigate. (Ex. 1, at 22:15-19.) As Otto Trucking knows, Waymo did not begin to investigate the possibility that Levandowski stole files until July 29, 2016 (Ex. 2.) and did not pull Levandowski's SVN log history until September 19, 2016. (Ex. 3.) That SVN log data showed that, over the prior 52 weeks, Mr. Levandowski accessed the SVN exactly one time, on December 11, when he downloaded its entire 14,000+ files. Mr. Brown then became involved and confirmed the download. Waymo has produced ***all*** data supporting the Brown Declaration, and Otto Trucking does not claim otherwise. That data, and not attorney communications, proves the download. The data is the data regardless of any privileged communications, and Otto Trucking has been fully able to challenge that data since March.