MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:    202.237.2727
Facsimile:    202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | Case No.    3:17-cv-00939-WHA<br><br>**DEFENDANT UBER TECHNOLOGIES, INC. AND OTTOMOTTO, LLC'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 1172)**<br><br>Judge:   The Honorable William Alsup<br>Trial Date: October 10, 2017 |

Pursuant to Local Civil Rule 72-2, Defendants Uber Technologies, LLC and Ottomotto LLC (collectively, "Uber") object to the Order regarding Uber's Waiver of Privileged Communications (Dkt. 1172) as clearly erroneous and contrary to law.  FED. R. CIV. P. 72(a).

## I.  The Order's Holding That The March 29, 2017 Meeting Was Privileged Is Clearly Erroneous and Contrary to Law. (Order at 5-9)

On March 29, 2017, Travis Kalanick, in the presence of Uber in-house counsel Angela Padilla, pressed Anthony Levandowski about his downloading of Google files. As Mr. Kalanick testified, Mr. Levandowski explained that he downloaded the files because he "was incredibly worried at the time about a very large bonus he was supposed to get from Google. And he felt, essentially, like Google was going to stiff him on his bonus.  And he wanted to – he wanted to have the sort of the work that he did, so he could show that he earned that bonus."  Kalanick Tr. 91:21-92:2 (Dkt. 1088-1).  In so stating, Mr. Levandowski did not seek legal advice from Ms. Padilla.  Nor did Ms. Padilla provide any legal advice to Uber in response.  Padilla Decl. (Dkt. 1082-1) ¶ 7.  But the Order found that these communications were attorney-client privileged because "the purpose of the March 29 meeting between Mr. Levandowski, Mr. Kalanick, and Ms. Padilla was to learn information from then-Uber executive Mr. Levandowski to enable to Ms. Padilla and her colleagues to advise their client—Uber—about how to proceed in this lawsuit." Order at 6. For the following reasons, that ruling is clearly erroneous and contrary to law.[1]

First, the Order erred by relying on its inference as to the purpose of the meeting rather than conducting an analysis of the specific *communications* at issue. The Order was based on the inference that Ms. Padilla attended the March 29 meeting to provide legal advice. Order at 6. That inference was not supported by the facts, which show only that Ms. Padilla accompanied Mr. Kalanick to a meeting in which Mr. Kalanick was trying to understand what it was that Mr. Levandowski had done, and why.  The Ninth Circuit has held that the privilege analysis must focus on the nature of the "*specific communications*" at the meeting, not the general purpose of the meeting. *See United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002).  As *Martin*

---

[1] This motion must address several arguments not made by Waymo and presented for the first time in the Order.  Thus, Uber's objections to those arguments are properly before this Court.

1   instructs, for a communication to be privileged, it "must be between the client and lawyer for the

2   purpose of obtaining legal advice," and each specific communication must be evaluated

3   independently. *Id.* ("A party claiming the privilege must identify specific communications and

4   the grounds supporting the privilege"). Moreover, the law requires a finding that the "primary

5   purpose" of the communication was to obtain legal advice. *See United States v. ChevronTexaco*

6   *Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) ("With respect to internal communications

7   involving in-house counsel . . . the proponent of the privilege must demonstrate that the *primary*

8   *purpose* of the communication was securing legal advice.").

9          Here, Mr. Levandowski's statements to Mr. Kalanick concerning the reason for his

10  downloading were not made for the purpose of obtaining legal advice, let alone for the "primary

11  purpose" of obtaining legal advice. The Order's factual inferences to the contrary are clearly

12  erroneous. Mr. Levandowski was answering to Mr. Kalanick, his supervisor and the CEO,

13  because Mr. Kalanick was "pressing Mr. Levandowski about what happened," Padilla Decl. ¶ 6,

14  and because Mr. Kalanick wanted Mr. Levandowski to provide Mr. Kalanick with the relevant

15  facts, Kalanick Tr. 91:2-5. This is the precise type of non-privileged communication between a

16  business superior and subordinate that happens regularly in corporate organizations with and

17  without attorneys present. This communication called for no response or input by Ms. Padilla,

18  and, indeed, could have happened in exactly the same way were Ms. Padilla not present.

19          Further, as in-house counsel, it is common for Ms. Padilla to be at meetings, like this one,

20  in which she was not asked to provide legal advice or in which she made a statement for purposes

21  other than to obtain (or give) legal advice. Because in-house counsel "may act as integral players

22  in a company's business decisions or activities . . . to demonstrate that an internal communication

23  involving in-house counsel deserves privileged status, a party therefore must make a clear

24  showing that the speaker made the communication for the purpose of obtaining or providing legal

25  advice." *Oracle Am. Inc. v. Google, Inc.*, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011).

26  Nothing in the record provides that required "clear showing." Uber evaluated the specific

27  communications that occurred during this meeting and determined they were not privileged, just

28  as it has produced documents on which Ms. Padilla is copied but contain no communications

1    related to the provision of legal advice. *E.g.*, Ex. 1. "[I]t is well settled that merely copying an

2    attorney on an email does not establish that the communication is privileged." *IP Co., LLC v.*

3    *Cellnet Tech., Inc.*, 2008 WL 3876481 at *3 (N.D. Cal. Aug. 18, 2008). Likewise, Ms. Padilla's

4    mere presence does not make Mr. Levandowski's oral communication to Mr. Kalanick privileged.

5         Second, even if Ms. Padilla learned facts that would allow her to later provide legal advice

6    to Uber, that fact does not make Mr. Levandowski's statements privileged. An employee's

7    communications with in-house counsel are privileged only if his statements "concern matters

8    within the scope of the employee's corporate duties and the employee is aware that the

9    information is being furnished to enable the attorney to provide legal advice to the corporation."

10   *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1492 (9th Cir. 1989) (citing

11   *Upjohn v. United States*, 449 U.S. 383, 394 (1981)). Mr. Levandowski's statements did not

12   concern his "actions within the scope of [his] employment." *Upjohn*, 449 U.S. at 391. They

13   concerned actions he took *before* joining Uber and show that his reasons for those actions had

14   nothing to do with Uber, let alone anything within the scope of his future employment. When a

15   statement is made by a corporate employee "who, for one reason or another is not held to be

16   within the corporate privilege, the communication is like that of a non-employee witness" and is

17   not privileged. *In re Grand Jury Subpoena*, 599 F.2d 504, 510 (2d Cir. 1979); *see also United*

18   *States v. Lonich*, 2016 WL 1733633, at *6 (N.D. Cal. May 2, 2016) ("It would be illogical for the

19   privilege to extend to a corporation where the individual through whom the corporation was

20   acting did not intend to seek legal advice."). In-house attorneys routinely gather facts from

21   witnesses outside the protection of the attorney-client privilege and subsequently rely on those

22   facts when providing legal advice to their client. The communications with witnesses are not

23   protected by the attorney-client privilege; the communications providing advice to the client are.

24         Third, Ms. Padilla's statement echoing Mr. Kalanick's that Uber wanted Mr. Levandowski

25   to testify (a) was not legal advice to Uber and (b) was not intended to remain confidential. *See*

26   *Martin*, 278 F.3d at 999 (one element of the privilege is that communications are "made in

27   confidence"). Earlier that day, Uber's outside counsel stated in Court that Uber wanted nothing

28   more than for Mr. Levandowski to testify. 3/29/17 Hr'g Tr. 16:7-10 (Mr. Gonzalez: "Let me be

1   clear about something.  I want you to know, it is important for me that you know this.  I would

2   love to put Mr. Levandowski on the stand to explain to you what happened, because I think he

3   has a good story to tell.").  Nothing Ms. Padilla told Mr. Levandowski or Mr. Kalanick during the

4   conversation reveals any ***confidential*** legal advice she was providing to Uber.[2]  Rather, Ms.

5   Padilla agreed with Mr. Kalanick's desire that Mr. Levandowski explain to the Court and Waymo

6   what happened.  This advice, to the extent it is advice at all, is simply not legal advice, or is

7   predominantly a business judgment that Mr. Kalanick had already made about what was in the

8   best interests of the company.  *See Wit v. United Behavioral Health*, 2016 WL 258604, at *3

9   (N.D. Cal. Jan. 21, 2016) ("The privilege does not extend to business advice or other non-legal

10  advice, even if it is provided by a client's attorney."); *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D.

11  406, 411 (W.D. Tex. 2009) (as to communications with in-house counsel, "the attorney-client

12  privilege attaches only to communications made for the purpose of giving or obtaining legal

13  advice or services … [and t]he critical inquiry is, therefore, whether any particular

14  communication facilitated the rendition of predominantly legal advice or services to the client.").

15      Finally, in seeking waiver, it was Waymo's burden to prove the communications were

16  privileged.  *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000); Order at 5 ("Waymo, as

17  the party asserting the privilege applies, bears the burden of proof.").  Rather than attempting to

18  show all elements of the privilege were met, Waymo only argued that the communication was

19  privileged because an attorney was present; this fact does not satisfy their burden.  *See United*

20  *States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) ("The fact that a person is a lawyer does not

21  make all communications with that person privileged."); *Martin*, 278 F.3d at 999 (listing eight

22  elements necessary for a communication to be attorney-client privileged).  Thus, in filling

23  Waymo's gaps, the Order made clearly erroneous findings of fact about the nature of the

24  communications at issue, because the record evidence demonstrates that these communications

25  did not occur in order to obtain or provide confidential legal advice.  *See Seller Agency Council,*

26

27  _____

    [2] For the same reason, Ms. Padilla's statements do not in any way support an inference that Mr.
    Levandowski provided his bonus explanation for the purpose of obtaining legal advice.

28

1   *Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 986 (9th Cir. 2010) (a fact finding

2   is "clearly erroneous if it is . . . without support in inferences that may be drawn from the facts in

3   the record"); *Lamon v. Adams*, 2014 WL 172352, at *2 (E.D. Cal. Jan. 15, 2014) ("Inferences are

4   not drawn from the air, and it is the opposing party's obligation to produce a factual predicate

5   from which the Court may draw the inferences.").  Therefore, the Order's legal conclusion that

6   Uber's attorney-client privilege applies to Mr. Levandowski's communications with Mr. Kalanick

7   and Ms. Padilla is contrary to law.  *See Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D.

8   Cal. 1999) ("[L]egal conclusions are freely reviewable de novo to determine whether they are

9   contrary to law."); *cf. United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997) (district court's

10  rulings on scope of attorney-client privilege are reviewed de novo).

## II.    Because The Communications Were Not Privileged, Uber Has Not Waived Any Of Its Privileges. (Order at 9-10)

13          The Order's holding that Uber's disclosure was a deliberate waiver is contrary to law.

14  Without a disclosure of privileged information, there is no waiver.  While Judge Corley offered

15  Uber the opportunity to withdraw the potential waiver during the hearing on this motion, Uber's

16  decision not to do so was based on its continued good faith belief, reached after a careful analysis

17  of the issues,[3] that these communications were not privileged, and hence Uber did not make a

18  deliberate waiver.  Order at 10.  More generally, under the circumstances presented here, where a

19  party has a good-faith belief that communications at issue are not privileged, the party should not

20  be forced to decide whether to rescind a purported waiver of privilege until the question of

21  whether the material was privileged is fully adjudicated.  *See Advert. to Women, Inc. v. Gianni*

22  *Versace S.p.A.*, 1999 WL 608711, at *5 (N.D. Ill. Aug. 4, 1999).

---

[3] If the Court affirms Judge Corley's ruling, additional briefing is required before the Court can decide whether Uber should be precluded from offering evidence within the waiver's scope. *See* Dkt. 438 (May 15 Order regarding privilege waiver before June 1).  We read the May 15 Order as applying to deliberate waivers, not waivers resulting from a good faith belief that a communication was not privileged. Moreover, the parties and Court were, at the time of that submission, focused on the privilege issues associated with the due diligence, and diligence, and the beginning stages of fact discovery and investigation. Indeed, Mr. Kalanick's personal tragedy shortly before the June 1 deadline prevented Uber's outside counsel from learning all facts related to this meeting for some time.

Dated:  August 16, 2017

MORRISON & FOERSTER LLP
BOIES SCHILLER FLEXNER LLP


By:  */s/ Karen L. Dunn*
                KAREN L. DUNN

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC