**RAMSEY | EHRLICH** LLP

ATTORNEYS AT LAW

August 17, 2017

Magistrate Judge Jacqueline Scott Corley
By ECF Filing

Re: *Waymo LLC v. Uber Technologies, Inc.*, et al., Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Undersigned counsel for third-party witness Anthony Levandowski has reviewed the parties' recent filings at Docket 1060 and 1082, along with the transcript of the hearing that occurred before the Court on August 9, 2017 and the Court's order of August 14, 2017. The Court solicited Mr. Levandowski's input on the consequences that flow from Uber's position on the communications that supposedly occurred between Mr. Levandowski, Travis Kalanick, and Angela Padilla during a March 29, 2017 meeting in Uber's "Minneapolis" conference room ("the Minneapolis meeting"). Dkt. 1172 at 10-11.[1] Our view is that any statements made by Mr. Levandowski during the Minneapolis meeting or the other meetings on March 26 or 29, 2017 were subject to the common interest privilege; and Uber is not entitled to unilaterally waive the privilege with respect to Mr. Levandowski's communications.

**I.  Intervention**. Mr. Levandowski moves to intervene in this dispute pursuant to Federal Rule of Civil Procedure 24(a). As the Court invited Mr. Levandowski to participate in briefing these issues, we will not argue the intervention question extensively. Plainly, Mr. Levandowski has significant interests—his common interest and attorney-client privileges—at stake; the disposition of the matters under dispute threatens to impair his ability to protect those interests by revealing privileged communications; and none of the parties, including Uber, can adequately represent Mr. Levandowski's interests.

**II.  The Common Interest Privilege**. The common interest or "joint defense privilege is 'an extension of the attorney-client privilege.'" *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (quoting *United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000)). The privilege applies when parties make a "communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *Pacific Pictures Corp. v. United States Dist. Court*, 679 F.3d 1121, 1129 (9th Cir. 2012); *see also Gonzalez*, 669 F.3d at 979. This Court has previously held that, for the privilege to apply, "the parties must have a common legal interest and the communications sought to be shielded from discovery must have been in furtherance of a joint strategy in support of that legal interest." Dkt. 566 at 15.

A joint-defense or common interest agreement "establishes an implied attorney-client relationship" between each of the attorneys and parties involved. *Henke*, 222 F.3d at 637. Once

---

[1] Mr. Levandowski does not concede that he made the statements Uber alleges he made in the Minneapolis meeting or other meetings. Nonetheless, in light of the findings in the Court's August 14 order, we will assume for purposes of this brief that the communications occurred as stated in the order.

803 Hearst Avenue, Berkeley CA 94710 · www.ramsey-ehrlich.com · Tel: (510) 548-3600 · Fax: (510) 291-3060

the joint defense relationship is established, "[t]he joint defense privilege . . . protects not only the confidentiality of communications passing from a party to his or her attorney but also 'from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.'" *United States v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)); *see also Gonzalez*, 669 F.3d at 978 (citing *Austin* and the principle set out above); *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) ("Participants in a joint or common defense or individuals with a community of interests 'may communicate among themselves and with the separate attorneys on matters of common legal interest, for the purpose of preparing a joint strategy, and the attorney-client privilege will protect those communications to the same extent as it would communications between each client and his own attorney.'"). "[T]he rationale for the joint defense rule" is that "persons who share a common interest in litigation should be able to communicate with their respective attorneys *and with each other* to more effectively prosecute or defend their claims." *Gonzalez*, 669 F.3d at 978 (emphasis added). Thus, for the common interest privilege to apply, it is not "necessary for the attorney representing the communicating party to be present when the communication is made to the other party's attorney." *Schwimmer*, 892 F.2d at 244.

**III.  No Unilateral Waiver**.  "[O]ne party to a JDA cannot unilaterally waive the privilege for other holders." *Gonzalez*, 669 F.3d at 982; *see also Teleglobe Commc'ns Corp. v. BCE Inc.*, 493 F.3d 345, 363 (3rd Cir. 2007); *United States v. BDO Seidman, LLP*, 492 F.3d 806, 817 (7th Cir. 2007).

There is a limited exception to this rule against unilateral waiver: "Any member [of a common interest group] may waive the privilege with respect to that person's own communications." *Gonzalez*, 669 F.3d at 982 (quoting Restatement (Third) of the Law Governing Lawyers § 76, cmt. g. (2000)).  But the authorities make clear that this exception must be construed narrowly to avoid undermining the very purpose of the privilege.  For example, the Third Circuit has held that, while one member of a joint-defense group "may unilaterally waive the privilege as to its own communications," the member may not "unilaterally waive the privilege as to any of the other joint clients' communications *or as to any of its communications that relate to other joint clients*." *Teleglobe*, 493 F.3d at 363 (emphasis added); *see also Robinson Mechanical Contractors Inc. v. PTC Group Holding Corp.*, No. 1:15-CV-77 SNLJ, 2017 U.S. Dist. LEXIS 72636 at *6 (E.D. Mo. May 12, 2017) (same); *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 479 (D. Del. 2012) (same); *Lord Abbett Mun. Income Fund, Inc. v. Asami*, No. C-12-03694 DMR, 2013 U.S. Dist. LEXIS 147830 at *17-18 (N.D. Cal. Oct. 11, 2013); *United States v. Balsiger*, No. 07-Cr-57, 2011 U.S. Dist. LEXIS 157516 at *20-25 (E.D. Wis. May 11, 2011), *aff'd in relevant part by* 2013 U.S. Dist. LEXIS 96387 at *30-32 (E.D. Wis. Jul. 10, 2013).  As the *Balsiger* court recognized, preventing a party from waiving the privilege with respect to "its own communications that reveal, *either directly or indirectly*, the confidential, privileged communications of any non-waiving member of the joint defense" is a rule that "preserves the public policy behind the common interest doctrine, as it allows non-waiving members to protect any confidential disclosures they may have made pursuant to a joint defense agreement." 2011 U.S. Dist. LEXIS 157516 at *24-25 (emphasis added); *see also Western Fuels Ass'n v. Burlington N. R.R. Co.*, 102 F.R.D. 201, 203 (D. Wyo. 1984) ("This limitation is necessary to assure joint defense efforts are not inhibited or even precluded by the

fear that a party to joint defense communications may subsequently unilaterally waive the privileges of all participants, either purposefully in an effort to exonerate himself, or inadvertently.").

When one member of a joint-defense group reveals privileged matters without permission from the other members, in some ways the cat is out of the bag. Nonetheless, courts take care to ensure that any evidence derived from such a waiver may be used only against the waiving party to the agreement—and *not* against non-waiving parties. *See, e.g., Cargill Inc. v. Budine*, No. CV-F-07-349-LJO-SMS, 2008 U.S. Dist. LEXIS 72809 at \*14-16 (E.D. Cal. Jul. 21, 2008) (holding that, although one member waived the privilege through deposition testimony, the court would "protect" a non-waiving member's privilege over the same information by employing "a protective, limiting instruction to preclude use of the privileged communications against her, the sole non-disclosing party").

**IV.  Mr. Levandowski and Uber Had a Common Interest Agreement**. This Court has already ruled that, as of April 11, 2016, Uber, Otto, Mr. Levandowski, and Lior Ron had a valid common interest agreement because, at that point, they "all shared a joint common legal interest in defending claims brought by Waymo for misappropriation of trade secrets, among other things." Dkt. 731 at 4; *see also* Dkt. 949 at 3-5. That interest continued until and beyond the filing of the instant action—and was still in place at the time of the meetings on March 29, 2017.

Indeed, by March 29, 2017, Mr. Levandowski had retained undersigned counsel to represent him. Upon being retained on March 25, 2017, undersigned counsel confirmed with counsel for Uber that communications between the parties and counsel concerning Waymo's lawsuit would continue to be covered by a common interest/joint-defense agreement. Declaration of Miles Ehrlich ("Ehrlich Decl.") ¶ 3. And, as Uber's counsel acknowledges, undersigned counsel *re*confirmed that agreement on March 29—counsel "asked for [an] oral agreement that" a meeting on that day was "covered by a common interest agreement," and Uber agreed. Dkt. 1082-1 at ¶ 9; *see also* Ehrlich Decl. ¶ 5.

**V.  The Common Interest Privilege Protects Any Communications During the Minneapolis Meeting**. The Court's order observes that on March 29, 2017, there were a "series of meetings" at Uber's headquarters concerning the ongoing litigation with Waymo. Dkt. 1172 at 2-3. The Minneapolis meeting was one. *Id*. at 3. In light of the facts embodied in this Court's prior orders and those contained in the declarations of counsel, it is plain that the communications at that meeting present a classic case for application of the common interest privilege.

This Court has already found that the communications that occurred at the Minneapolis meeting were covered by Uber's attorney-client privilege. Dkt. 1172 at 6-9. It is but a short step to the common interest privilege. As discussed in Part IV, *supra*, the interlocutors were all parties to an ongoing joint-defense agreement relating to the defense of Waymo's claims. Further, according to the Court, the purpose of the Minneapolis meeting was to discuss Waymo's claims, the facts underlying the case and litigation strategy; Ms. Padilla described to Mr. Levandowski what "Uber wanted him to do in this litigation"; and Mr. Kalanick and Mr. Levandowski discussed both strategy and factual matters that had key importance to the litigation. *Id*. at 3, 6-7; Dkt. 1082-1 at ¶ 6. Moreover, as the Court already found, "the communications during that

meeting were made in confidence." Dkt 1172 at 8. The participants were thus "communicat[ing] among themselves and with the separate attorneys on matters of common legal interest," and the common interest privilege applies. *Nidec Corp.*, 249 F.R.D. at 578.

It is true that Mr. Levandowski's individual attorneys did not attend the Minneapolis meeting, but that is of no moment. As discussed, "[t]he joint defense privilege . . . protects not only the confidentiality of communications passing from a party to his or her attorney but also 'from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.'" *Austin*, 416 F.3d at 1021 (9th Cir. 2005) (quoting *Schwimmer*, 892 F.2d at 243); *see also Gonzalez*, 669 F.3d at 978; *Nidec Corp.*, 249 F.R.D. at 578. It is not "necessary for the attorney representing the communicating party to be present when the communication is made to the other party's attorney." *Schwimmer*, 892 F.2d at 244.

Likewise, the fact that Ms. Padilla "told Mr. Levandowski she could not offer him advice, given that she knew that he was represented by his own personal counsel," Dkt. 1172 at 7, does not militate against the conclusion that the conversation was covered by the joint-defense privilege. As the cases make clear, a common interest agreement permits the parties to discuss between themselves strategy, factual development, and other matters relating to the litigation. But the respective parties' attorneys would not normally provide *advice* to a co-party; indeed, doing so might be improper and could generate a conflict of interest.

**VI.   Any Communications During Other Meetings Were Also Privileged**. Allegedly, Mr. Levandowski attended at least parts of three other privileged meetings, during which the participants discussed subjects similar to those discussed at the Minneapolis meeting. One meeting occurred on March 26, 2017, and the other two occurred before and after the Minneapolis meeting on March 29, 2017. Dkt. 1172 at 2; Dkt. 1082-1 at ¶¶ 4-5, 8-9, 11; Ehrlich Decl. ¶ 5. Uber's attorneys were present for all three meetings. Dkt. 1172 at 3; Dkt. 1082-1 at ¶¶ 4-5, 8-9, 11. Mr. Levandowski's individual counsel was present at the later March 29, 2017 meeting. Dkt. 1082-1 at ¶¶ 8-9; Ehrlich Decl. ¶ 5.

There has been no claim that Mr. Levandowski made any statements at any of these other meetings. But even if he did, the communications would be protected from disclosure. At the March 26 meeting, the participants "discuss[ed] the status of the Waymo litigation and . . . [Uber attorneys] provide[d] legal advice." Dkt. 1172 at 2; *see also* Dkt. 1082-1 at ¶ 11. Likewise, at the first March 29 meeting, the participants discussed the "implications" of the developments at an earlier court hearing before Judge Alsup. Dkt. 1172 at 2; Dkt. 1082-1 at ¶¶ 4-5. Thus, for the reasons discussed above, communications at these meetings were plainly subject to the common interest privilege. A joint-defense agreement had long been in place, the participants discussed the subject of their joint legal interest, and the communications have been held in confidence.

As to the March 29 meeting that included Mr. Levandowski's own attorney, the communications therein are plainly protected by the common interest privilege. Prior to the meeting, there was an express confirmation that the communications therein would be subject to a joint-defense agreement. Dkt. 1082-1 at ¶¶ 8-9; Ehrlich Decl. ¶ 5. The participants again discussed subjects related to their joint legal interests. Ehrlich Decl. ¶ 5. And the communications have been held

in confidence.  Dkt. 1082-1 at ¶ 9; Ehrlich Decl. ¶ 6.

Finally, to the extent that assertions arise that Mr. Levandowski made other statements regarding the same subjects to Uber employees or attorneys,[2] we assert that any such putative communications are, for similar reasons, protected by the common interest privilege.  *See* Ehrlich Decl. ¶¶ 7-8.

**VII.   Uber's Waiver Cannot be Held Against Mr. Levandowski**.  The Court has found that Uber waived its own attorney-client privilege concerning the subjects of Mr. Levandowski's communications during the Minneapolis meeting.  Dkt. 1172 at 9-10.  But, as discussed in Part III, *supra*, Uber cannot unilaterally waive the common interest privilege as it relates to communications by other members of the joint-defense group.  Accordingly, Uber's waiver cannot justify the disclosure of Mr. Levandowski's communications during the meetings on March 26 or March 29, 2017 (or any other joint-defense communications by Mr. Levandowski).

Of course, Uber has *already* revealed the substance of some of the communications at issue.  But Mr. Levandowski did not agree to this waiver, and, since the communications were subject to a common interest privilege, the Court should take steps to protect Mr. Levandowski from the impact of Uber's unauthorized waiver.  *See Cargill*, 2008 U.S. Dist. LEXIS 72809 at *14-16.  Since Mr. Levandowski is not a party in this litigation, no prophylactic instruction will be required.  Instead we request that the Court make a factual finding that Mr. Levandowski did not waive his privilege with respect to the communications at the Minneapolis meeting—or, for that matter, any other joint-defense communications—and that the content of the purported communications may not be used against Mr. Levandowski in any future proceedings.

Respectfully submitted,

*/s/ Miles Ehrlich*
Miles Ehrlich
RAMSEY & EHRLICH LLP
*Counsel for Non-Party Anthony Levandowski*

cc: Counsel of record (via ECF); Special Master John Cooper

---

[2] We are not presently aware of any such communications.  We do not claim that any statements made by Mr. Levandowski at Uber's "all-hands" meeting on February 23 were privileged.