August 17, 2017

**VIA ECF**

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:    *Waymo LLC v. Uber Technologies, Inc., et al*., N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Pursuant to the Court's Order re: Uber's Waiver of Privileged Communications (Dkt. 1172), Plaintiff Waymo LLC ("Waymo") submits this supplemental brief on the scope of Uber's waiver.

**(1) Whether Mr. Levandowski has an individual attorney-client privilege in communications that would be swept within the scope of Uber's subject matter waiver;**

The subject matter of the March 29, 2017 conversation between Uber's in house litigation counsel Angela Padilla, its then-CEO Travis Kalanick, and its then-Advanced Technology Group executive Anthony Levandowki concerned two topics: the reasons for Mr. Levandowski's downloading of Waymo files and the reasons for his pleading of the Fifth Amendment. (Dkt. 1060 at 1-4.) Accordingly, the scope of Uber's subject matter waiver is all privileged communications between Uber and Mr. Levandowski relating to his reasons for downloading Waymo files and reasons for pleading the Fifth Amendment.

Mr. Levandowski does not have an individual attorney-client privilege in those communications.

However, counsel for Mr. Levandowski indicated on the parties' August 14 meet and confer that Mr. Levandowski would be asserting a common interest privilege over at least some communications between Mr. Levandowski and Uber on this subject matter, such as the "third meeting" described in Ms. Padilla's declaration (Dkt. 1082-1 ¶¶ 8-9) that was attended by Miles Ehrlich and Ismail Ramsey. Therefore, Mr. Levandowski may claim that communications within the scope of Uber's subject matter waiver are subject to a common interest privilege.

**(2) Whether Uber can waive the privilege with respect to those communications if Mr. Levandowski has an individual attorney-client privilege;**

A party to communications protected by the common interest doctrine cannot waive privilege without the consent of all parties to the privilege. *In re Imperial Corp. of Am.*, 179 F.R.D. 286, 289 (S.D. Cal. 1998) ("Moreover, under the common interest privilege, waiver of the privilege requires consent of all parties who share the privilege."); *US v Gonzalez*, 669 F.3d 974, 982 (9th Cir. 2012) ("The Restatement similarly indicates that one party to a common-interest arrangement lacks the ability to waive the privilege as to other members[.]"); *Narog v. City of Redwood City*, 2014 WL 1088297, at *4 (N.D. Cal. March 17, 2014) ("[T]he case law is clear that one party to a [joint defense agreement] cannot unilaterally waive the privilege for other holders.") (quoting *Gonzalez*, 669 F.3d at 982); *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 248 (4th Cir. 1990) ("An exception to the general rule that disclosure to a third party of privileged information thereby waives the privilege, a joint defense privilege cannot be waived without the consent of all parties who share the privilege.") (citations omitted).

Therefore, to the extent any common interest applies to Mr. Levandowski's communications with Uber relating to the subject matter of Mr. Levandowski's reasons for downloading the files or his reasons for pleading the Fifth Amendment, Uber cannot unilaterally waive privilege over those communications. Earlier in this case, when it suited Uber's then-litigation strategy, Uber took this same position with respect to the unredacted privilege log identifying Stroz Friedberg as the third party due diligence investigator. (*See*, *e.g.*, Dkt. 131 at 12:18-13:7 ("Second, to add just a tiny bit of clarity on what we are talking about, because one of the things I wanted to discuss is how do we log this on a privilege log without infringing rights. Here's what you're missing right now because we haven't explained it clearly: Before the acquisition some due diligence was done. A third party prepared a report based on that due diligence. We intend to put that report on a privilege log. There's a concern that's been raised about whether or not we should identify the party who prepared the report. The concern is that by identifying the party, we are waiving or infringing upon a Fifth Amendment right. That's the issue I want to talk to Your Honor about because I don't want Your Honor to think we're being sneaky.").)

1

**(3) If Uber cannot, whether in fairness Uber should be allowed to waive the privilege with respect to the communications in which Mr. Levandowski does not claim an individual privilege.**

To the extent Uber cannot waive privilege over all communications swept within the scope of the subject matter waiver, then in fairness Uber should not be allowed to waive the privilege with respect to any of those communications. Any contrary determination runs afoul of bedrock principles of law prohibiting the use of attorney-client privilege as both a sword and a shield. Permitting Uber to effectively pick and choose which communications to rely on and which to hide from discovery – which would be both the intent and effect of Uber's tactical disclosures here – imposes tremendous prejudice on Waymo and violates any notion of fair play.

As an initial matter, Uber is attempting to make use of privilege as both a sword and a shield. Uber's "bonus" explanation – first unveiled on June 28, despite numerous Court Orders and discovery requests that would have called for its disclosure as early as March 31 – has emerged as its leading defense theory for why Mr. Levandowski stole over 14,000 confidential files and why he is invoking the Fifth Amendment privilege against self-incrimination in order to avoid testifying in this case. Uber has admitted that the only basis for advancing this theory comes from the March 29 conversation between Mr. Levandowski, Mr. Kalanick, and Ms. Padilla. There can be no serious question that Uber seeks to use the contents of this conversation to its advantage as an affirmative rebuttal to Waymo's trade secret claims. Indeed, Uber has actually used this conversation to argue that **Uber** should be entitled to an adverse inference from Mr. Levandowski's Fifth Amendment invocation in this case. (*See*, *e.g.*, Dkt. 829-4 (requesting adverse inferences from twenty-five proposed questions for Mr. Levandowski, such as "The only reason you downloaded confidential Google files as alleged by Waymo was to protect your ability to receive your full Project Chauffeur bonus from Google, and not to benefit Uber, correct?", based on the purported corroboration of "Testimony from witnesses to whom Mr. Levandowski explained – after this litigation was filed but before Mr. Levandowski began asserting his Fifth Amendment privilege – the reason for his alleged downloading of 14,000 files, including testimony from Travis Kalanick.").) And this Court has already found that "the record overwhelmingly compels the finding that Mr. Kalanick's testimony regarding that conversation was protected by Uber's attorney-client privilege," as well as the fact that "[b]y electing to disclose Uber's communications between Mr. Levandowski, Mr. Kalanick and Ms. Padilla Uber deliberately waived its attorney-client privilege with respect to those communications." (Dkt. 1172 at 6 and 9.) This is a textbook example of using the privilege as a sword. To the extent Waymo is denied – for any reason – all of Uber's privileged communications on the same subject matter, this would also be a classic use of privilege as both a sword and a shield, which is the very unfairness that the law of waiver operates to prevent.

As the Ninth Circuit has explained, "[t]he doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness. Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996). Simply put, "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). Here, given that the Court has already found the disclosed communications to be privileged, and Uber to have waived that privilege, the question turns to what remedy can adequately address the prejudice to Waymo.

Courts have traditionally confronted the issue of remedy in terms of what scope of waiver fairness demands once the privilege has been tactically waived. *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) ("The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter.  The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not.") (internal citations omitted); *Theranos, Inc. v. Fuisz Techs., Ltd.*, No. C 11-5236 PSG, 2013 WL 2153276, at *3 (N.D. Cal. May 16, 2013) (the party asserting privilege bears the "burden to show that fairness does not require waiver of the privilege over documents relating to the same subject matter as the documents disclosed."); *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-CV-03424-JCS, 2016 WL 7475820, at *8 (N.D. Cal. Dec. 29, 2016) (finding that fairness required subject matter waiver as to the "the *issues* that Rosenbaum, Dang, and Portnoy discussed in the privileged communications disclosed in the reexamination, and is not limited to what they knew about those issues at the time") (emphasis in original).  This well-established rule prevents a party from "cherry-picking" those helpful communications while shielding damaging ones from discovery, thereby unfairly distorting the record.  *Theranos*, 2013 WL 2153276, at *4 ("Fuisz may have chosen a representative sample of communications or he may have cherry-picked selective communications that are favorable to him.  The court cannot tell which was Fuisz's motivation, and that is why disclosure is necessary.").  "In practical terms, [the doctrine] means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).

The Court recognized this exact unfairness in finding that Uber waived privilege by electing to disclose Uber's communications at the March 29 meeting between Mr. Levandowski, Mr. Kalanick, and Ms. Padilla:

> If [Ms. Padilla's testimony that she did not believe the conversation to be privileged] was all it took to make a communication that has all the hallmarks of a privileged communication not privileged then the rule about not using the privilege as a shield and a sword would be meaningless.  Under Uber's theory all a party would have to do is cherry pick the communications they want the opposing party to see and identify those as not privileged, all the while being able to shield other not so favorable communications from disclosure even if they are about the very same topic by claiming those communications privileged.  The law of privilege is not that unfair.

(Dkt. 1172 at 7.)

If the traditional remedy of subject matter waiver is unavailable here because of Uber's inability to waive the privilege over the full scope of communications, then that does not alter the fairness inquiry or absolve the Court from addressing the prejudice the Waymo would incur.  Instead, it merely changes the remedy.  The only fair and appropriate remedy would be preclusion of any testimony regarding the March 29 conversation.  *See*, *e.g.*, *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (affirming district court's remedy of exclusion of selectively waived privileged communications, because "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield," and "[h]ere, Feltner sought to argue that he continued his infringing activities based on the advice of his attorney, while at the same time refusing to answer questions regarding relevant communications with counsel until the 'eleventh hour.'  Under these circumstances, the district court was within its discretion in precluding Feltner from invoking the advice of counsel defense.") (quoting *Chevron Corp.*, 974 F.2d

3

at 1162); *Andover Healthcare, Inc. v. 3M Co.*, No. CV 13-843-LPS, 2016 WL 6404111, at *2 (D. Del. Oct. 27, 2016) ("3M's witnesses will not be permitted to testify that they developed their product to have no crystallinity also, at least in part, to avoid infringement, as this would impermissibly permit 3M to use privilege (which 3M repeatedly asserted in its Rule 30(b)(6) deposition) as both a sword and shield."); *Pena v. Handy Wash, Inc.*, 114 F. Supp. 3d 1239, 1245 (S.D. Fla. 2015) (excluding any evidence regarding consultation of counsel as a remedy for selective disclosure because "Defendants are not permitted to use the attorney-client privilege as both a sword and a shield.").

The Federal Circuit's recent decision in *Regeneron Pharmaceuticals, Inc. v. Merus N.V.* is instructive. 2017 WL 3184400, -- F.3d --- (Fed. Cir. July 27, 2017). There, a patent holder maintained privilege during prosecution regarding references that were withheld but during litigation produced trial affidavits relating to the same. *Id.* at *13-15. The district court found those trial affidavits to constitute an affirmative, broad subject matter waiver. *Id.* at *14 ("Thus, on the day that Regeneron disclosed Dr. Smeland's trial affidavit, it waived the privilege as to the subject matter of each of the topics the affidavit addressed. In particular, Regeneron waived privilege as to Dr. Smeland's views on the broadest reasonable construction of the claim language, understanding of the technology, and materiality (including cumulativeness) of each of the Withheld References."). While the patent holder contended that it had complied with its discovery obligations in response to the subject matter waiver, its privilege log suggested otherwise. *Id.* at *15. After an in camera review, the district court declared the log a "Pandora's Box," identifying dozens of "documents on the privilege log relating to precisely those topics waived by Regeneron when Regeneron filed trial declarations of Drs. Smeland and Jones." *Id.* Finding that "it could not possibly learn the full extent of the problem," the district court evaluated its options with respect to the "many documents on the log were directly relevant to the topics as to which privilege has been waived." *Id.* The district court rejected the option of re-opening discovery as unfair to the prejudiced party, and considered striking the trial affidavits and precluding the witnesses from testifying. *Id.* at 15-16. The district court ultimately rejected that option as **insufficient** to remedy the prejudice and opted for an adverse inference to the jury that the patent holder intended to deceive the PTO. *Id.* at 16. The Federal Circuit affirmed, approving of both the district court's rationale and remedy. *Id.* at 16-17. Here, the same logic would dictate at least the remedy of preclusion of testimony about the March 29 conversation.[1]

Respectfully,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
cc:     All counsel of record; Special Master John Cooper

01980-00104/9496903.1

---

[1]  There are additional reasons why Uber should be precluded from asserting its "bonus" theory for the downloads, such as the untimely privilege waiver recognized by the Court (Dkt. 1172 at 3-4). These additional reasons are beyond the scope of the briefing requested in the Court's Order re: Uber's Waiver of Privileged Communications, but will be addressed in Waymo's forthcoming Renewed Motion in Limine No. 1.