

August 18, 2017

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
United States District Court for the Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *Waymo LLC v. Uber Technologies, LLC et al.,* Case No. 3:17-cv-00939-WHA

Dear Judge Corley:

Defendants Uber Technologies Inc. and Ottomotto LLC ("Defendants") hereby submit their opposition to Chris Urmson, David Ferguson, Aurora Innovation, LLC ("Aurora"), and Nuro, Inc.'s ("Nuro") (collectively, "the Urmson Parties") motion to quash and modify subpoenas that Defendants served on them or for a protective order regarding those subpoenas.

Chris Urmson led Project Chauffeur until he left Google in August of 2016, to start his own autonomous vehicle company, Aurora. *See* Zifkin Decl., Ex. 1. David Ferguson is likewise a former Project Chauffeur employee who also left Google in August of 2016, to start his own autonomous vehicle company, Nuro. *See* Zifkin Decl., Ex. 2. Urmson and Ferguson do not contest the relevance of the discovery sought by Defendants relating to their employment at Google. (Urmson Br. 1-2.) Rather, this dispute centers only on whether Defendants are entitled to certain discovery related to Aurora and Nuro. (*Id.*) As detailed below, the discrete discovery sought from Aurora and Nuro is likely to lead to the discovery of admissible evidence that is relevant to Waymo's claims and theories. Indeed, Judge Alsup has already recognized that such discovery is proper. At the June 7 hearing, Judge Alsup observed that it is necessary for Defendants to subpoena information about the technologies Waymo has put at issue that have been developed by other companies in the autonomous vehicle field "in order to see how they do it," and to "see if they already have discovered the same [] alleged trade secret." *See* 6/7 Hr'g Tr. at 49:20-50:12. Aurora and Nuro are not only such companies, but were also founded by former Google employees who worked on Project Chauffer just months after Mr. Levandowski left Google to start Ottomotto.

**Issues In Dispute.**  As the Urmson Parties admit, Defendants have already agreed to *limit* the information they seek related to Aurora and Nuro. (Urmson Br. 1.) In particular, Defendants agreed to limit the information they seek related to Aurora and Nuro to the following: (1) Aurora and Nuro's development of LiDAR technology; (2) Aurora and Nuro's compensation plans (including for former Waymo employees) and any valuations of those companies; (3) recruitment of former Waymo employees by Nuro and Aurora, including the number of former Waymo employees employed by each; and (4) why people left Waymo, including why people left to join either Aurora or Nuro. The Urmson Parties have refused to provide discovery on these topics.



**Legal Standard:** Federal Rule of Civil Procedure 45 governs subpoenas seeking discovery from nonparties. Fed. R. Civ. P. 45(a)(1)(A)(iii). The scope of discovery permitted via a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b). *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, No. 16-MC-80062-JSC, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016) . "The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed." *Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. CV-12-80300-RMW, 2013 WL 1508894, at *4 (N.D. Cal. Apr. 10, 2013); *see also Chevron Corp. v. Donziger*, No. 12-mc-80237 CRB (NC), 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (permitting discovery on non-parties). For the reasons explained below, the Urmson Parties are unable to meet this burden. Therefore, the Defendants ask Your Honor to compel the production of documents and testimony responsive to these requests.

**Relevance:** The Urmson Parties contend that none of the information sought regarding Aurora and Nuro has any relevance to this case and instead goes to "atmospherics." (Urmson Br. 2.) That is incorrect. The limited information sought from Aurora and Nuro is directly relevant to Waymo's trade secret claims, theories, and purported evidence in this case.

**LiDAR Technology.** The circumstances surrounding the creation and operation of Aurora and Nuro are similar to that of Defendant Ottomotto. Like Defendant Ottomotto, Aurora and Nuro are autonomous vehicle companies that were formed by former Google employees who worked on Project Chauffer shortly after those employees left Google. While Aurora and Nuro will not say whether they have made efforts to develop LiDAR, their silence speaks volumes because, if they have not, they would simply need to disclose that fact under the Protective Order in this case and all of the requests regarding LiDAR would have been withdrawn (i.e., the majority of the discovery requests in dispute). In other words, it can be inferred from their silence that both Aurora and Nuro are doing work on LiDAR.

As noted above, Judge Alsup specifically explained that it is necessary for the Uber Defendants to subpoena other companies for information about the technology at issue in this case "in order to see how they do it," and to "see if they already have discovered the same [] alleged trade secret." *See* 6/7 Hr'g Tr. at 49:20-50:12. Judge Alsup recognized the substantial need for information from other companies, like Aurora and Nuro, that are developing LiDAR because it is directly relevant to whether any of Waymo's alleged trade secrets are, in fact, a trade secret. The Urmson Parties disagree with Judge Alsup, claiming that such information is irrelevant to determining misappropriation because "[i]t is entirely possible that two companies could have similar technology, and yet both could be trade secrets." (Urmson Br. 3.) Even if that speculation were true and their disagreement with Judge Alsup had any merit, it does not diminish the relevance of such information to determining whether Waymo can establish the required elements of its trade secret claims.

*First*, the fact that another company has developed the same technology or information is important evidence that the information does not satisfy the definition of a trade secret either because (i) it is generally known by persons of skill in the industry, *see Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 465–66 (9th Cir. 1990); (ii) it "consist[s] essentially of general engineering principles that are simply part of the intellectual equipment of technical employees" (Dkt. 433 at 17); or (iii) it is easily duplicated or otherwise derived from known processes. *Walker v. University Books, Inc.*, 602 F.2d 859, 865 n.2 (9th Cir. 1979); *Motorola, Inc. v. Fairchild Camera & Instrument Corp.*, 366 F. Supp. 1173, 1184 (D. Ariz. 1973);



*American Paper & Packaging Prods., Inc. v. Kirgan*, 183 Cal.App.3d 1318, 1326 (1986).[1]  Thus, the information sought by the subpoenas is directly relevant to showing that Waymo's alleged trade secrets do not satisfy the statutory definition of a trade secret.

*Second*, even if Aurora and/or Nuro used information it had acquired from Waymo that did not fall into one of these categories, its unfettered use of the alleged trade secrets would be evidence that they have not been "the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy," Cal. Civ. Code § 3426.1(d)(2), which is a required element of Waymo's trade secret claims.  Indeed, in deciding "whether or not [Waymo] made reasonable efforts to" maintain secrecy, the jury is entitled to consider, and the Uber Defendants are entitled to discover, "whether [Waymo] took any action to protect [a] specific [trade secret], or whether [Waymo] relied on general measures taken to protect its business information."  CACI 4404.  The documents and communications requested may prove that Waymo lacked a "willingness to protect technology" that it alleges is proprietary because it did not prevent former employees from using such information in competing ventures in the autonomous vehicle space.  *See American Honda Motor Co., Inc. v. Coast Distr. Sys., Inc.*, No. C 06-4752 JSW, 2007 WL 47258, at *5 (N.D. Cal. 2007).  For this additional reason, the information sought by the subpoenas seeks evidence to show that Waymo cannot establish its trade secret claims.

**Employee Compensation and Valuation.**  Waymo has repeatedly argued that the terms of Uber's acquisition of Ottomotto are evidence that Uber was purchasing misappropriated trade secrets.  In its Amended Complaint, Waymo emphasizes that Uber allegedly paid "$680 million, a remarkable sum" and that Ottomotto's technology played a "central role" in the transaction.  (Dkt. 23, ¶¶55-56 ("Complaint").)  Waymo has continued to rely on this allegation.  For example, in a July 21 filing, Waymo stated:  "Waymo contends that it was Waymo's trade secrets that justified the impressive price tag" of "$680 million." (Dkt. 971 at 2-3.)  Waymo's claims are specious because Uber purchased talent, not technology, when it purchased Ottomotto for incentive stock (not $680 million in cash).  While Uber will testify to this fact, Uber is entitled to develop evidence of industry practice in this nascent industry.  Contextual evidence is critical here because the average juror may not be able to fairly evaluate the terms of the Ottomotto acquisition without such context.  That is precisely the type of evidence that the subpoenas are requesting.  Information related to employee compensation will show that, in the autonomous vehicle industry, talent is highly valued and compensated (more so than a juror may expect without such evidence).  Similarly, information related to the valuation of Aurora and Nuro will show that, in the autonomous vehicle industry, new startup companies receive high valuations based on their talent and not the technology they have developed to date.

**Recruitment of Former Waymo Employees and Their Reasons for Leaving Waymo.**  The recruitment of former Waymo employees, including the number of former Waymo employees employed by Aurora and Nuro, is also relevant.  Once again, this evidence is important to give the jury context.  Waymo suggests that there is something nefarious about Mr. Levandowski and others leaving Waymo to work for Ottomotto and Uber because they compete with Waymo in the autonomous vehicle space.  *See, e.g.*, Complaint at ¶¶42-50.  The jury will

---

[1] Indeed, given that Aurora and Nuro were founded by former Google employees, if aspects of their technology are similar or identical to Waymo's alleged trade secrets, they presumably believe the alleged trade secrets are not, in fact, trade secrets for one of these reasons.

3



likely require context to understand why that argument is plainly false.  The subpoenas seek evidence that provide such context.   For example, the information sought will show that it is not uncommon for Waymo employees to leave Waymo for another autonomous vehicle company.

The Urmson Parties do not dispute the relevance of information regarding why people left Waymo.  They nonetheless seek to introduce an artificial time barrier to discovery on this topic.  While Urmson and Ferguson have agreed to testify to "why others left Waymo *during their time there*," the Urmson Parties have refused to testify about why others left Waymo to join Aurora and Nuro – which necessarily occurred after Urmson and Ferguson left Waymo.  The Court should reject the artificial time constraint proposed by the Urmson Parties.  This evidence is directly relevant to the circumstances surrounding Levandowski's departure from Waymo, showing that others were leaving Waymo for the same reasons that Levandowski was – namely, dissatisfaction with the business plan and prospects for Project Chauffer.

**The Protective Order.**  The Urmson Parties argue that the Protective Order in this case is insufficient to protect the confidentiality of information they produce in this case.  That argument is incorrect because courts in Rule 45 rulings have routinely found that outside-counsel only designations are sufficient to "mitigate this primary concern." *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 339 (N.D. Cal. 1995); *see also Beaver Cty. Employers Ret. Fund*, 2016 WL 3162218, at *5 ("Such protections alleviate any trade secret concerns.").  And the great relevance of the discovery sought balances against any potential burden faced by the Urmson Parties in the form of risk to its trade secrets.  "In cases such as this, the risk of competitive injury to third parties, and the seriousness of such potential injury, must be balanced against the need for the information in the preparation of the defense. . . . Judicial inquiry should not be unduly hampered. Inconvenience to third parties may be outweighed by the public interest in seeking the truth in every litigated case." *United States v. Am. Optical Co.,* 39 F.R.D. 580, 586 (N.D. Cal. 1966) (citations omitted).  Moreover, the Uber Defendants are willing to adopt more stringent AEO provisions to ameliorate the Urmson Parties' concern, such as limiting the discovery to experts and a limited number of outside counsel.

**The Lyft Subpoena.**  The Urmson Parties repeatedly reference the Lyft subpoena that was quashed, claiming that Aurora and Nuro are "further removed" from this case than Lyft.  But the issue here is not whether Aurora and Nuro are "removed" from this case, but whether the discovery sought from them is likely to lead to the discovery of admissible evidence.  *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).  As detailed above, that is the case here.  Moreover, the Lyft subpoena is readily distinguishable.  Unlike with the subpoenas to the Urmson Parties, the information sought in the Lyft subpoena did not relate to Lyft's development of LiDAR technology in the autonomous vehicle industry.  Nor is Lyft an autonomous vehicle company founded by former Waymo employees who worked on Project Chauffer.  Thus, unlike here, the Lyft subpoena did not seek information from another autonomous vehicle company about the technology at issue "in order to see how they do it," and to "see if they already have discovered the same [] alleged trade secret." *See* 6/7 Hr'g Tr. at 49:20-50:12.  Likewise, the Lyft subpoena did not seek information about employee recruitment and compensation and company valuations in the autonomous vehicle industry, which provides important evidence regarding the nascent industry at the center of this case. Finally, Waymo possesses and produced Lyft-related documents; the same is not true for Aurora and Nuro.



Defendants Uber Technologies Inc. and Ottomotto LLC's Opposition to Motion for Protective Order
Case No. C 17-00939 WHA

Sincerely,

*/s/ Karen L. Dunn*

Karen L. Dunn
Counsel for Uber Technologies, Inc. and Ottomotto LLC

cc: counsel of record; Special Master John Cooper; counsel for the Urmson Parties.