MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

August 20, 2017

Writer's Direct Contact
+1 (415) 268.7020
AGonzalez@mofo.com

The Honorable William Alsup
United States District Judge
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Waymo LLC v. Uber Technologies, Inc. et al.,* Case No. 3:17-cv-00939

Dear Judge Alsup:

Defendants Uber Technologies, Inc. and Ottomotto LLC ("Uber") submit the attached motion to compel Rule 30(b)(6) topics.

Respectfully submitted,

Arturo J. González
Counsel for Uber Technologies, Inc.
and Ottomotto LLC

cc: All Counsel of Record
 Special Master John Cooper

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED
[CORRECTED REDACTIONS]**

sf-3816324

Defendants Uber Technologies, Inc. and Ottomotto LLC seek deposition testimony regarding another two of the ten Rule 30(b)(6) topics served on Waymo LLC. Just as it did with Topic 7 relating to its acquisition and indemnification practices, Waymo seeks to obstruct Uber and Ottomotto's access to discoverable and relevant information. Special Master John Cooper has twice expressed his views on both of the topics at issue in this motion, each time directing Waymo to: (1) produce a witness on Topic 5 relating to certain of Waymo's side businesses and (2) make the designated witness on Topic 8 available for a Rule 30(b)(6) deposition, given that Jennifer Haroon was designated as Waymo's corporate representative on that topic *after* being deposed in her personal capacity. The Court should affirm the Special Master's conclusions.

I.  **WAYMO SHOULD PRODUCE A CORPORATE DESIGNEE FOR UBER'S RULE 30(B)(6) TOPIC 5 REGARDING CERTAIN SIDE BUSINESSES**

Topic 5 requests a company representative to testify about certain side businesses at Waymo. Specifically, Topic 5 seeks testimony regarding:

> Approval for having Project Chauffeur or Waymo employees perform work for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, including who was approved to work for them, what work they were approved to perform, who approved that work, and the circumstances of such approval.

Waymo refuses to produce a witness on this topic, despite the relevance of side businesses to this litigation. In fact, Special Master Cooper has expressed his opinion that side businesses are relevant to this litigation and has directed Waymo to produce a witness on this topic. Moreover, this Court has previously expressed the view that information on side business at Waymo is discoverable. (Dkt. 808 at 2 (ordering Waymo to respond to document request nos. 36-43, 125-128 and interrogatory no. 11 relating to side businesses operated by Waymo and Google employees).)

Waymo has put side businesses directly at issue in this case. Waymo asserts that Anthony Levandowski improperly set up Otto while he was still at Waymo. Indeed, Waymo's operative complaint includes allegations about how Mr. Levandowski started Otto, its apparent purpose, the individuals he included in forming Otto, the timing of its creation, and that its existence was kept from Waymo.[1] According to Waymo, Mr. Levandowski's planned venture was abnormal and clandestine and an attempt to bring trade secrets to Uber.

---

[1] *See, e.g.*, Dkt. 23, First Amended Compl. ¶¶ 5 (Levandowski "set up his own new venture—which eventually became Otto— before leaving Waymo in January 2016."), 41 (Levandowski "was also secretly preparing to launch a competing vehicle automation venture . . . which later would become Otto"), 42 (Levandowski "went to great lengths to take what he needed to 'replicate' Waymo's technology and then to meet with Uber executives, all while still a Waymo employee"), 48 ("[W]hile still a Waymo employee . . . Mr. Levandowski attended meetings with high-level executives at Uber's headquarters").

Waymo further alleges that Mr. Levandowski and Uber engaged in a "cover-up scheme" regarding the formation of his new company before he left Waymo.[2]

Discovery on ▮▮▮▮▮ in particular is highly relevant because ▮▮▮▮▮ (Chang Ex. 1, Page Dep. 33:20-36:9 (▮▮▮); 26:14-16 (▮▮▮).) ▮▮▮ (*Id.*, Page Dep. 28:21-31:18 (▮▮▮).) Further, ▮▮▮. (Chang Ex. 2, Page Dep. Ex. 1104.) ▮▮▮ (*Id.*; Chang Ex. 3, Page Dep. Ex. 1099; Chang Ex. 4, Page Dep. Ex. 1100; Chang Ex. 5, Page Dep. Ex. 1101.)

Waymo argues that Mr. Levandowski's involvement in Otto was nefarious. To defend against this allegation, Uber seeks discovery regarding details about Mr. Levandowski's involvement in ▮▮▮ and how Waymo (and the related entities Alphabet and Google) viewed Mr. Levandowski's involvement in those side businesses. Such discovery is essential in establishing that Mr. Levandowski's involvement in side projects or businesses was commonplace and, in fact, encouraged—▮▮▮.

Both Judge Corley and Judge Alsup have ruled that Waymo may not refuse to respond to discovery requests based on Waymo's assertions that such requests are irrelevant. (Judge Alsup Order, Dkt. 1132 at 2 ("Waymo does not get to decide which responsive documents Uber is entitled to discover."); Judge Corley Order, Dkt. 832 at 3 ("Defendants are entitled to develop their own defense to Plaintiff's claims for relief and need not rely solely on what Plaintiff contends is relevant.").) Uber seeks information it believes is necessary to develop its defenses. Accordingly, Uber requests that the Court order Waymo to produce a witness on Topic 5.

## II. WAYMO SHOULD MAKE ITS CORPORATE DESIGNEE ON TOPIC 8 AVAILABLE FOR DEPOSITION

Topic 8 of Uber's Rule 30(b)(6) notice seeks testimony on:

---

[2] *See, e.g.*, 5/3/17 Public PI Hr'g Tr. at 6:4-14 ("[W]e've learned that Uber and Levandowski, together, created a cover-up scheme for what they were doing . . . . while Mr. Levandowski was still working at Waymo"); 6/12/17 Waymo Ltr. Br. (Dkt. 595-4 at 7) ("The record already contains compelling evidence that extensive communications between Levandowski and Uber exist, even prior to the time Levandowski departed Waymo.").

> All valuations of Project Chauffeur or Waymo, including the circumstances for such valuation, how the valuation was arrived at, and the proportion attributable to LiDAR technologies.

Valuations of Project Chauffeur and Waymo are highly relevant to both Uber's defense regarding Mr. Levandowski's alleged downloading of Waymo files as well as Uber's ability to rebut Waymo's damages case. Limited information related to the outcome of the few select valuations provided by Waymo thus far is insufficient for Uber's purposes. Uber seeks (and should receive) discovery on all valuations of Project Chauffeur or Waymo, as well as the circumstances and methodology behind each valuation, especially given that this information is critical to Uber's defense in this case.

Waymo did not provide any objections to Topic 8. But on August 17, 2017, Waymo stated that it would retroactively designate portions of Jennifer Haroon's July 26, 2017 personal deposition as responsive to Topic 8. (Chang Ex. 7.) On a meet and confer teleconference later that day, Special Master Cooper indicated his view that Waymo should produce Ms. Haroon for a Rule 30(b)(6) deposition, because she was designated as a Rule 30(b)(6) witness after she had been deposed in her personal capacity. (Chang Decl. ¶ 2.) Waymo indicated that it would take into consideration the Special Master's views in responding to Uber's request for a Rule 30(b)(6) deposition of Ms. Haroon. (*Id.*) On the August 19, 2017 meet and confer teleconference, however, Waymo indicated its refusal to make Ms. Haroon available for deposition, despite Mr. Cooper's reiterated opinion that Waymo should do so. (*Id.*)

Uber has never received a comprehensive list of all valuations done by Project Chauffeur or Waymo and needs information about each to mount its defense. Based on Waymo documents, Uber believes that Project Chauffeur or Waymo has been involved in at least ▋ valuations: ▋

Waymo has produced few documents related to these valuations. For example, Gerard Dwyer, Waymo Chief Financial Officer, testified that ▋, but Waymo has not produced ▋. (Chang Ex. 8, Dwyer Dep. at 39:15-41:2.) As another example, Waymo has not produced the ▋. It is also unclear whether there are any other valuations (Waymo has not confirmed that these are the only ones) or whether Waymo has produced all documents and communications regarding Waymo/Google's negotiations, calculations, and analyses related to each of the valuations, which are responsive to Uber's document request nos. 61, 69, 93, 176, 177, and 181.

---

[3] Even if Waymo had produced more documents related to these valuations, that would not replace its duty to produce a witness. *See Louisiana Pac. Corp. v. Money Market 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 486 (N.D. Cal. 2012) (Beeler, U.S.M.J) ("[I]n responding to a Rule 30(b)(6) notice or subpoena, a corporation may not take the position that its documents state the company's position.").

At her deposition, Ms. Haroon testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Chang Ex. 6, Haroon Dep. at 202:20-203:2, 217:8-15.) At her deposition, Uber did not ask her about ▮▮▮▮▮▮▮▮ in which she was not involved for two reasons. First, because Ms. Haroon was being deposed in her personal capacity, there was no reason to question Ms. Haroon about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See Mitchell Eng'g v. City & Cnty. of S.F.*, No. C 08-04022 SI, 2010 WL 455290, at *1 (N.D. Cal. Feb. 2, 2010) (Illston, J.) ("Even if the general topics to be addressed at the 30(b)(6) deposition will overlap to some extent [with individual depositions], the questions asked and the answers given might not."). Second, many of the Waymo documents that mention ▮▮▮▮▮▮▮▮ were produced after her deposition. (*See, e.g.*, Chang Ex. 10, WAYMO-UBER-00039951; Chang Ex. 11, WAYMO-UBER-00043124; Chang Decl. ¶¶ 12-13.)

Further, Ms. Haroon was inadequately prepared to be a Rule 30(b)(6) designee on valuations, even for the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for which she had some knowledge. *See Louisiana Pac.*, 285 F.R.D. at 486 ("A party producing a Rule 30(b)(6) witness 'must prepare deponents by having them review prior fact witness deposition testimony as well as document and deposition exhibits.'"). For example, for the ▮▮▮▮▮▮▮▮ she had knowledge of, Ms. Haroon ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Chang Ex. 6, Haroon Dep. at 203:3-12, 216:22-217:7.)

In addition, for the ▮▮▮▮▮▮▮▮▮▮▮▮, Ms. Haroon did not know basic information, such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* at 207:1-20, 209:2-4), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* at 213:2-18), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* at 210:9-16, 213:19-25). Moreover, with respect to ▮▮▮▮▮▮ Ms. Haroon testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*Id.* at 212:9-17, 213:2-18.) Further, the document that appears to be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was not produced until after her deposition. (*See* Chang Ex. 12, WAYMO-UBER-00033192; Chang Decl. ¶ 14.)

Finally, Judge Alsup's standing order ¶ 23(b) requires that personal and corporate designee depositions should be "should be separately transcribed." Waymo insisted on separating the 30(b)(6) and individual portions of the Pierre-Yves Droz and Gary Brown depositions. (*See*, *e.g.*, Chang Ex. 13, Brown Dep. at 15:18-23.) Waymo's proposal to retroactively designate individual testimony by Ms. Haroon runs counter to Waymo's insistence in separating out Rule 30(b)(6) and individual testimony.

For the foregoing reasons, Waymo should produce a witness on Topic 5 and should produce Ms. Haroon for testimony as Waymo's corporate representative on Topic 8. Further, Ms. Haroon should be adequately prepared to testify about all of the valuations, or another witness should be produced for Topic 8.