# EXHIBIT 2
# ENTIRE EXHIBIT SUBMITTED UNDER SEAL

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David Perlson (Cal. Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa J. Baily (Cal. Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Cal. Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan R. Jaffe (Cal. Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California  94111-4788
(415) 875-6600
(415) 875-6700 facsimile

Attorneys for Plaintiff WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO, LLC; OTTO TRUCKING LLC,<br><br>　　　　　Defendants. | Case No. 17-cv-00939-JCS<br><br>**PLAINTIFF'S OBJECTIONS AND RESPONSES TO UBER'S SIXTH SET OF INTERROGATORIES (NOS. 25-27)** |

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Waymo LLC ("Waymo") hereby objects and responds to Defendant Uber Technologies, Inc.'s ("Uber") Sixth Set of Interrogatories (Nos. 25-27). These objections and responses are made based on its current understanding and on information reasonably available to Waymo at the present time. Waymo reserves the right to supplement these responses if and when additional information becomes available.

**GENERAL OBJECTIONS**

Waymo makes the following General Objections, whether or not separately set forth in response, to each and every instruction, definition, and question posed in the interrogatories. By responding to any of the interrogatories or failing to specifically refer to or specify any particular General Objection in response to a particular interrogatory, Waymo does not waive any of these General Objections, or admit or concede the appropriateness of any purported interrogatory or any assumptions contained therein.

1. Waymo objects to each interrogatory, and to the Definitions and Instructions, to the extent that they purport to impose any obligations upon Waymo beyond the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, and the Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup.

2. Waymo objects to the definitions of "Waymo," "Plaintiff," "You," and "Your" on the grounds the definitions are overbroad, unduly burdensome, and vague, including, but not limited to, the extent that they include Alphabet Inc. or any Waymo subsidiary, subcontractor, partnership, joint venture, or other business cooperation involving Waymo LLC, Google Inc., and/or Alphabet Inc., the present and former officers, directors, employees, agents, representatives, accountants, financial advisors, consultants, and attorneys or other persons owned or controlled by Waymo LLC, Google Inc., and/or Alphabet Inc., regardless of their affiliation or employment.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

3. Waymo objects to each interrogatory to the extent that they seek information protected by the attorney-client privilege or the work product doctrine or that is otherwise privileged or protected from discovery.

4. Waymo objects to each interrogatory to the extent that they seek information that is not relevant to a claim or defense of any party or to the subject matter of this action and is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

5. Waymo objects to each interrogatory to the extent that they are compound, complex, and contain multiple subparts.

6. Waymo objects to each interrogatory to the extent that they are overbroad, unduly burdensome, vague, and/or ambiguous.

7. Waymo objects to each interrogatory to the extent that they seek information that does not already exist, or that is not in Waymo's possession, custody, or control.

8. Waymo objects to each interrogatory to the extent that they require Waymo to provide information beyond what is available to Waymo at present from a reasonable search of its own files likely to contain relevant or responsive documents and from a reasonable inquiry of its present employees.

9. Waymo objects to each interrogatory to the extent that they seek confidential or proprietary information, including without limitation, confidential business information, proprietary and/or competitively sensitive information, or trade secrets.  Subject to its other General Objections, and to any specific objections set forth below, Waymo will only provide relevant information in a manner consistent with the Protective Order entered by the Court in this matter.

10. Waymo objects to each interrogatory to the extent that they seek information that Waymo is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

11. Waymo objects to each interrogatory to the extent that they are unlimited in time or otherwise not limited to a time frame relevant to this litigation and to the patents-in-suit, and therefore burdensome, oppressive, overly broad, and not proportional to the needs of the case.

12. Waymo objects to each and every interrogatory to the extent that they call for a legal conclusion.

13. Waymo objects to each and every interrogatory to the extent that they call for responses that are the subject of expert testimony. Waymo will provide its expert reports pursuant to deadlines to be set by the Court for the exchange of such reports and will supplement or amend those reports as appropriate and as permitted by the Court.

14. Waymo objects to each and every interrogatory to the extent that they call for information that is publicly available and therefore as accessible to Defendants as to Waymo.

15. Waymo objects to these interrogatories to the extent that they are premature. Discovery is ongoing and Waymo has not yet completed its investigation of the matters at issue in this action. Waymo reserves the right to modify, supplement, change or amend its responses once Waymo has conducted the necessary discovery and investigation.

16. Waymo objects to Instruction No. 5 as overbroad, unduly burdensome, vague, and ambiguous to the extent that it refers to "Provision 1(d) of the Default Standard for Discovery in this judicial district."

17. Waymo responds to each and every interrogatory based on its knowledge, information and belief based on its investigation as of the date of the response; however, Waymo's investigation into the issues of this action remains ongoing. Waymo reserves the right to supplement or amend its responses without prejudice pursuant to Rule 26(e).

18. Waymo's responses are not to be construed as an admission that any of the requested information exists, that any information is admissible, relevant or proportional to the needs of the case, or that any contention or assumption contained in the interrogatories, whether implicit or explicit, is correct.

19. Waymo incorporates by reference its General Objections in each of the specific responses set forth below.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**STATEMENT ON SUPPLEMENTATION**

Waymo's investigation in this action is ongoing, and Waymo reserves the right to rely on and introduce information in addition to any information provided herein at the trial of this matter or in other related proceedings. Waymo anticipates that facts it learns later in the litigation may be responsive to one or more of these interrogatories and Waymo reserves its right to supplement its responses at appropriate points throughout this litigation without prejudice and/or to otherwise make available to Defendants such information. Waymo also reserves the right to change, modify or enlarge the following responses based on additional information, further analysis, and/or in light of events in the litigation such as rulings by the Court. Waymo reserves the right to rely on or otherwise use any such amended response for future discovery, trial or otherwise. Unless specifically stated otherwise in the individual responses to these interrogatories, Waymo's statement on supplementation applies to all interrogatories.

Waymo's reservation of rights on supplementation is particularly warranted in light of Defendants' "relentless concealment of likely probative evidence, both documentary and testimonial, from Waymo's view." Preliminary Injunction Order, Dkt. 433 at 8. As illustrative examples, Defendants' concealment of evidence by asserting a web of inapplicable privileges with respect to the Stroz Friedberg due diligence investigation has hindered Waymo's efforts to discover relevant evidence. *See* Motion to Compel Order, Dkt. 549. As another example, Defendants' continued assertion of a web of inapplicable privileges to withhold 3,500 documents related to Uber's acquisition of Ottomotto continues to hinder Waymo's efforts to discover relevant evidence. Misleading arguments Defendants made to the Court leading the Court and Waymo to believe that Fuji was the only LiDAR system being developed in-house by Defendants have similarly hindered Waymo's efforts. *See* Apr. 12, 2017 Hr'g Tr. 87:12-88:3. As a final illustrative example, Waymo's efforts to discover relevant evidence were thwarted by evasive testimony from Defendants' employees Gaetan Pennecot (Pennecot Dep. 62:3-13, 69:14-15) and Daniel Gruver (Gruver Dep. 45:13-46:19) suggesting that ███████████████████ ███████████████, which was later contradicted by testimony provided by James Haslim in his court-ordered deposition (Haslim May 4 Dep. 50:14-51:9), as well as by misleading testimony

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

from Gruver (Gruver Dep. 51:4-15) suggesting that Velodyne's LiDARs ▮▮▮▮▮▮▮▮▮▮, which was later contradicted in Haslim's court-ordered deposition (Haslim May 4 Dep. 165:1-11).

**SPECIFIC OBJECTIONS AND RESPONSES**

Waymo expressly incorporates the above objections as though set forth fully in response to each of the following individual interrogatories, and, to the extent that they are not raised in the particular response, Waymo does not waive those objections.

**INTERROGATORY NO. 25:**

Identify every fact that you have obtained or learned during discovery in this case that you contend shows use by Uber of any of the 14,000 files that you claim were improperly downloaded by Anthony Levandowski.

**RESPONSE TO INTERROGATORY NO. 25:**

Waymo objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive, including to the extent that it asks Waymo to "[i]dentify every fact." Waymo further objects to this interrogatory to the extent it is compound, complex, and contains multiple subparts. Waymo further objects to this interrogatory to the extent this interrogatory exceeds the number of interrogatories allowed under Federal Rule of Civil Procedure 33 and pursuant to the parties' meet and confer of June 7, 2017 and Special Master Cooper's instruction to limit the number of interrogatories served to 25 at that meet and confer.

Subject to and without waiving its objections, Waymo responds as follows:

Waymo incorporates by reference its response to Uber's Interrogatory No. 1. In addition to the facts and evidence cited in its response to Uber's Interrogatory No. 1, additional facts showing use by Uber of the 14,000 files misappropriated by Anthony Levandowski include the fact that, for the first few months of its existence, Defendant Ottomotto, whom Uber acquired and merged with, operated out of Anthony Levandowski's house. *See, e.g.*, July 18, 2017 Maxime Levandowski Depo. Tr. at 81:9-82:2. During that time period, Ottomotto's LiDAR development

efforts took place at least in part at Anthony Levandowski's house, with the benefit of the 14,000 misappropriated files.

Even after Uber acquired Ottomotto notwithstanding Uber's knowledge of trade secret misappropriation by Ottomotto and its employees, including Anthony Levandowski's misappropriation of the 14,000 files, Uber implemented no policy to limit Anthony Levandowski's input into LiDAR design and development efforts. *See, e.g.*, Apr. 20, 2017 Daniel Gruver Depo. Tr. at 38:14-18; June 19, 2017 Lior Ron Depo. Tr. at 156:23-157:10.  Neither did Uber implement any policy to prevent Anthony Levandowski from bringing his personal computers and other electronic devices to work or to prevent him from working from home, and Anthony Levandowski in fact brought personal computers to work and worked from home. *See, e.g.*, May 4, 2017 James Haslim Depo. Tr. at 157:18-158:22; May 30, 2017 Feldman Depo. Tr. at 135:21-136:6, 136:25-137:13.  By allowing Anthony Levandowski to bring personal computers to work and/or work from home, Uber allowed him to consult the 14,000 misappropriated files at will.  These facts show that the reason for Uber's acquisition of Ottomotto was to acquire Waymo's trade secrets, including as reflected in the 14,000 misappropriated files.

Anthony Levandowski's involvement in Defendants' LiDAR design and development efforts is further evidenced by the numerous communications Anthony Levandowski was having with Defendants' employees (or with third parties for the benefit of Uber), as reflected in Uber's LiDAR log pursuant to the preliminary injunction order.  As of July 19, 2017, the LiDAR log reflects 1,065 communications between Anthony Levandowski and Defendants' employees (or third parties for the benefit of Uber), most about LiDAR, beginning on May 20, 2015 and continuing until May 12, 2017.  Those communications significantly increase in number beginning around December 2015, when Anthony Levandowski was still employed at Google; indeed, Anthony Levandowski met with Uber executive Brian McClendon on December 11, 2015, the same day Anthony Levandowski improperly downloaded the 14,000 files.  Uber employees who communicated with Anthony Levandowski about LiDAR include key engineers such as Gaetan Pennecot (approximately 44 times), Daniel Gruver (approximately 169 times), James

Haslim (approximately 133 times), Scott Boehmke (approximately 112 times), John Bares (approximately 66 times), and Eric Meyhofer (approximately 169 times).

In light of the facts described above, and for the reasons discussed in Waymo's brief regarding adverse inferences (Dkt. 818-4), numerous additional facts responsive to this interrogatory should be drawn as adverse inferences from Anthony Levandowski's pleading of the Fifth Amendment. As one illustrative example of such a fact, Anthony Levandowski went to Uber and used the 14,000 files to build additional LiDAR designs that include information contained in and derived from Waymo's trade secrets. Additional facts that should be drawn as adverse inferences and responsive to this interrogatory are described in detail in Waymo's Statement Regarding Questions It Intends to Ask Anthony Levandowski at Trial (Dkt. 834-4).

Discovery is ongoing and Waymo reserves the right to supplement this response after further discovery and investigation into Uber's use of the 14,000 misappropriated files, including any such use reflected in the Stroz Friedberg due diligence report or associated materials presently being withheld under privilege assertions that have been rejected by the Court.

**INTERROGATORY NO. 26:**

Identify every fact that you have obtained or learned during discovery in this case that you contend shows that Uber acquired any of the 14,000 files that you claim were improperly downloaded by Anthony Levandowski.

**RESPONSE TO INTERROGATORY NO. 26:**

Waymo objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive, including to the extent that it asks Waymo to "[i]dentify every fact." Waymo further objects to this interrogatory to the extent it is compound, complex, and contains multiple subparts. Waymo further objects to this interrogatory to the extent this interrogatory exceeds the number of interrogatories allowed under Federal Rule of Civil Procedure 33 and pursuant to the parties' meet and confer of June 7, 2017 and Special Master Cooper's instruction

to limit Uber/Otto to 25 interrogatories at that meet and confer.  As summarized in Andrea Roberts' June 8, 2017 email to counsel and Mr. Cooper:

> Mr. Cooper concluded that each party would be limited to 25 interrogatories.  He further indicated that if the parties have objections relating to the fairness of number of interrogatories served, they can raise them in their interrogatory objections.  We request clarification from Mr. Cooper whether his conclusion is that Waymo has 25 interrogatories for Otto Trucking and 25 for Uber/Otto (i.e., 50 total, the same number that defendants will be serving on Waymo), or whether his conclusion is that Waymo has 25 interrogatories total to serve, but has to respond to 50 total from Defendants.  Waymo notes that FRCP 33 provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve **on any other party** no more than 25 written interrogatories, including all discrete subparts."

(A. Roberts 6/8/17 email (emphasis added).)  Defendants did not respond and on June 21, 2017, Ms. Roberts sent a follow-up email on this point, saying:

> For interrogatories, we requested clarification from Mr. Cooper whether his conclusion about the number of interrogatories is that Waymo has 25 interrogatories for Otto Trucking and 25 for Uber/Otto (i.e., 50 total, the same number that defendants will be serving on Waymo), or whether his conclusion is that Waymo has 25 interrogatories total to serve, but has to respond to 50 total from Defendants.  Waymo notes that FRCP 33 provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve **on any other party** no more than 25 written interrogatories, including all discrete subparts."
>
> Having not received a response, we assume that there is no objection to the above.  If there is, please promptly let us know so that we can plan our discovery accordingly.

(A. Roberts 6/21/17 email (emphasis added).)  Defendants did not respond again.  Thus, it was Waymo's understanding that the parties were in agreement that Uber/Otto were limited to a total of 25 interrogatories.

**INTERROGATORY NO. 27:**

Identify every fact that you have obtained or learned during discovery in this case that you contend shows that Uber misappropriated any Google or Waymo trade secret, including any alleged trade secret in the 14,000 files that you claim were improperly downloaded by Anthony Levandowski.

**RESPONSE TO INTERROGATORY NO. 27:**

Waymo objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and oppressive, including to the extent that it asks Waymo to "[i]dentify every fact."

Waymo further objects to this interrogatory to the extent it is compound, complex, and contains multiple subparts. Waymo further objects to this interrogatory to the extent this interrogatory exceeds the number of interrogatories allowed under Federal Rule of Civil Procedure 33 and pursuant to the parties' meet and confer of June 7, 2017 and Special Master Cooper's instruction to limit Uber/Otto to 25 interrogatories at that meet and confer. As summarized in Andrea Roberts' June 8, 2017 email to counsel and Mr. Cooper:

> Mr. Cooper concluded that each party would be limited to 25 interrogatories. He further indicated that if the parties have objections relating to the fairness of number of interrogatories served, they can raise them in their interrogatory objections. We request clarification from Mr. Cooper whether his conclusion is that Waymo has 25 interrogatories for Otto Trucking and 25 for Uber/Otto (i.e., 50 total, the same number that defendants will be serving on Waymo), or whether his conclusion is that Waymo has 25 interrogatories total to serve, but has to respond to 50 total from Defendants. Waymo notes that FRCP 33 provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve **on any other party** no more than 25 written interrogatories, including all discrete subparts."

(A. Roberts 6/8/17 email (emphasis added).) Defendants did not respond and on June 21, 2017, Ms. Roberts sent a follow-up email on this point, saying:

> For interrogatories, we requested clarification from Mr. Cooper whether his conclusion about the number of interrogatories is that Waymo has 25 interrogatories for Otto Trucking and 25 for Uber/Otto (i.e., 50 total, the same number that defendants will be serving on Waymo), or whether his conclusion is that Waymo has 25 interrogatories total to serve, but has to respond to 50 total from Defendants. Waymo notes that FRCP 33 provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve **on any other party** no more than 25 written interrogatories, including all discrete subparts."
>
> Having not received a response, we assume that there is no objection to the above. If there is, please promptly let us know so that we can plan our discovery accordingly.

(A. Roberts 6/21/17 email (emphasis added).) Defendants did not respond again. Thus, it was Waymo's understanding that the parties were in agreement that Uber/Otto were limited to a total of 25 interrogatories.

DATED:  August 4, 2017            QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                  By */s/ Charles K. Verhoeven*
                                  Charles K. Verhoeven
                                  Attorneys for WAYMO LLC