# EXHIBIT 5
# ENTIRE EXHIBIT SUBMITTED UNDER SEAL

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1            UNITED STATES DISTRICT COURT
 2          NORTHERN DISTRICT OF CALIFORNIA
 3              SAN FRANCISCO DIVISION
 4                    --oOo--
 5   WAYMO LLC,
 6              Plaintiff,
                                    Case No.
 7   vs.                            3:17-cv-00939-WHA
 8
     UBER TECHNOLOGIES, INC.;
 9   OTTOMOTTO LLC; OTTO TRUCKING LLC,
10              Defendants.
11   _____/
12
13
14     HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
15
16         VIDEOTAPED DEPOSITION OF JAI KRISHNAN
17              WEDNESDAY, AUGUST 9, 2017
18
19
20
21   Reported by:
22   Anrae Wimberley
23   CSR No. 7778
24   Job No.  2671247
25   PAGES 1 - 304
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | WEDNESDAY, AUGUST 9, 2017; SAN FRANCISCO, CALIFORNIA; | |
| 2 | 9:11 A.M. | |
| 3 | - - - | |
| 4 | THE VIDEOGRAPHER:  Good morning. | 09:11:19 |
| 5 | We're on the record at 9:11 a.m. on August | 09:11:26 |
| 6 | 9th, 2017. | 09:11:28 |
| 7 | This is the video-recorded deposition of Jai | 09:11:32 |
| 8 | Krishnan. | 09:11:32 |
| 9 | My name is Lawrence Cossar here with our | 09:11:36 |
| 10 | court reporter, Anrae Wimberley.  We are here from | 09:11:40 |
| 11 | Veritext National Deposition and Litigation Services | 09:11:43 |
| 12 | at the request of counsel for defendant. | 09:11:48 |
| 13 | This deposition is being held at Morrison | 09:11:50 |
| 14 | Foerster in San Francisco. | 09:11:53 |
| 15 | The caption of this case is Waymo LLC versus | 09:11:57 |
| 16 | Uber Technologies, Incorporated, et al.  Case | 09:12:01 |
| 17 | No. 3:17-cv-00939-WHA. | 09:12:01 |
| 18 | Please note that audio and video recording | 09:12:10 |
| 19 | will take place unless all parties agree to go off the | 09:12:13 |
| 20 | record.  Microphones are sensitive and may pick up | 09:12:17 |
| 21 | whispers, private conversations and cellular | 09:12:21 |
| 22 | interference. | 09:12:23 |
| 23 | I am not related to any party in this action, | 09:12:26 |
| 24 | nor am I financially interested in the outcome in any | 09:12:29 |
| 25 | way. | 09:12:30 |

| | | |
|---|---|---|
| 1 | At this time, will counsel and all present | 09:12:33 |
| 2 | please identify themselves for the record. | 09:12:36 |
| 3 | MR. PRITT: Maxwell Pritt, Boies Schiller Flexner, | 09:12:39 |
| 4 | counsel for defendants Uber Technologies, Inc. and | 09:12:43 |
| 5 | Ottomotto LLC, along with my colleague Matt Chou, also | 09:12:48 |
| 6 | from Boies Schiller Flexner. | 09:12:49 |
| 7 | MR. LIN: James Lin, Goodwin Procter, counsel for | 09:12:53 |
| 8 | Otto Trucking LLC. | 09:12:55 |
| 9 | MS. LANDRUM  Megan Landrum, Alphabet. | 09:12:58 |
| 10 | MS. ROBERTS: Andrea Roberts from Quinn Emanuel, | 09:13:00 |
| 11 | counsel for Waymo and the witness. | 09:13:03 |
| 12 | THE VIDEOGRAPHER: Thank you. | 09:13:03 |
| 13 | The witness will be sworn in and counsel may | 09:13:06 |
| 14 | begin the examination. | 09:13:08 |
| 15 | JAI KRISHNAN, | |
| 16 | sworn as a witness by the Certified | |
| 17 | Shorthand Reporter, testified as follows: | |
| 18 | EXAMINATION | |
| 19 | BY MR. PRITT: | 09:13:08 |
| 20 | Q. Could you please state your full name for the | 09:13:26 |
| 21 | record. | 09:13:26 |
| 22 | A. Jai Krishnan. | 09:13:27 |
| 23 | Q. And what is your home address? | 09:13:30 |
| 24 | A. ████████████, Morgan Hill, California | 09:13:35 |
| 25 | 95037. | 09:13:36 |

| | | |
|---|---|---|
| 1 | of document in the course of his work at Waymo? | 11:20:09 |
| 2 | MS. ROBERTS: Objection; form. | 11:20:10 |
| 3 | THE WITNESS: Access sometimes is controlled. And | 11:20:13 |
| 4 | so if he requests access, he would get it. | 11:20:17 |
| 5 | BY MR. PRITT: | 11:20:17 |
| 6 | Q. And it would be ordinary -- part of his | 11:20:19 |
| 7 | ordinary course of work to request and get access to | 11:20:23 |
| 8 | look at a document like this for his work? | 11:20:27 |
| 9 | MS. ROBERTS: Objection; form. | 11:20:28 |
| 10 | THE WITNESS: Yes. | 11:20:28 |
| 11 | MS. ROBERTS: Are you at a good stopping point? | 11:20:42 |
| 12 | MR. PRITT: Sure. Do you want to do -- | 11:20:44 |
| 13 | (Discussion off the record.) | |
| 14 | MS. ROBERTS: We can go off the record. | 11:20:54 |
| 15 | THE VIDEOGRAPHER: The time is 11:20 a.m. We're | 11:21:00 |
| 16 | going off the record. | 11:21:02 |
| 17 | (Recess taken.) | 11:35:14 |
| 18 | THE VIDEOGRAPHER: The time is 11:35 a.m. We're | 11:35:18 |
| 19 | back on the record. | 11:35:20 |
| 20 | MR. PRITT: Thank you. | 11:35:20 |
| 21 | BY MR. PRITT: | |
| 22 | Q. I just want to clarify one thing to make sure | 11:35:25 |
| 23 | my question wasn't misinterpreted. | 11:35:29 |
| 24 | When we were talking about Sameer's | 11:35:31 |
| 25 | declaration, do you remember that? | 11:35:34 |

Page 100

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A. Yes. | 11:35:34 |
| 2 | Q. And I wasn't asking you whether or not you | 11:35:37 |
| 3 | knew one way or another whether what Sameer said about | 11:35:43 |
| 4 | not taking files was true.  I was asking do you | 11:35:50 |
| 5 | believe that Sameer would be lying under penalty of | 11:35:53 |
| 6 | perjury that he did not take any files based on your | 11:35:58 |
| 7 | relationship with him? | 11:36:01 |
| 8 | A. Yes.  I understand the question.  The answer | 11:36:03 |
| 9 | to that is I don't know. | 11:36:06 |
| 10 | Q. So the answer is you don't know whether you | 11:36:09 |
| 11 | believe one way or the other whether Sameer is telling | 11:36:14 |
| 12 | the truth under penalty of perjury? | 11:36:17 |
| 13 | A. That's correct. | 11:36:18 |
| 14 | Q. Okay.  Thank you. | 11:36:19 |
| 15 | Let's go to a different subject. | 11:36:25 |
| 16 | How do you know what information at Waymo is | 11:36:29 |
| 17 | confidential? | 11:36:30 |
| 18 | A. By default any information we create is | 11:36:41 |
| 19 | confidential and is for intel consumption. | 11:36:45 |
| 20 | Q. What do you mean by "default"? | 11:36:46 |
| 21 | A. Like any documents I create, any notes I | 11:36:55 |
| 22 | create, they're all confidential. | 11:36:59 |
| 23 | Q. So anything you create at work is | 11:37:04 |
| 24 | confidential? | 11:37:06 |
| 25 | A. Correct. | 11:37:06 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        Q.   Is that the same thing as saying anything at      11:37:11
 2   work you create is private?                                 11:37:15
 3        MS. ROBERTS:  Objection; form.                         11:37:17
 4        THE WITNESS:  I don't understand the word              11:37:17
 5   "private."                                                  11:37:19
 6   BY MR. PRITT:
 7        Q.   So you're saying every single thing you           11:37:22
 8   create at work is confidential?                             11:37:24
 9        A.   Yes.                                              11:37:24
10        Q.   Does that include every e-mail you send?          11:37:28
11        A.   Yes.                                              11:37:28
12        Q.   And is there a difference between, say,           11:37:30
13   thinking my conversation with a friend is private           11:37:34
14   versus thinking something I created at work is              11:37:37
15   confidential?                                               11:37:38
16        MS. ROBERTS:  Objection; form.                         11:37:45
17        THE WITNESS:  I don't understand the question.         11:37:46
18   Sorry.                                                      11:37:47
19   BY MR. PRITT:                                               11:37:47
20        Q.   So something that's private is something          11:37:49
21   that's not shared with other people; is that right?         11:37:52
22   Would you agree with that?                                  11:37:54
23        MS. ROBERTS:  Objection; form.                         11:37:55
24        THE WITNESS:  Yes.                                     11:37:56
25   BY MR. PRITT:                                               11:37:56
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | Q. And you said that something -- everything you | 11:38:01 |
| 2 | do at work is confidential; is that right? | 11:38:03 |
| 3 | A. Yes. | 11:38:03 |
| 4 | Q. So if private just means you don't share it | 11:38:06 |
| 5 | with somebody else, is everything you do at work, when | 11:38:10 |
| 6 | you say it's confidential, meaning it's private? | 11:38:13 |
| 7 | MS. ROBERTS: Objection; form. | 11:38:14 |
| 8 | THE WITNESS: Private might mean -- I don't know | 11:38:17 |
| 9 | what the definition of private is. Private might mean | 11:38:21 |
| 10 | just one person being party to knowing it. | 11:38:24 |
| 11 | Confidential means a group could know it, but it is | 11:38:28 |
| 12 | not allowed to be shared outside of Waymo. | 11:38:32 |
| 13 | BY MR. PRITT: | 11:38:32 |
| 14 | Q. So the difference is private could be with | 11:38:34 |
| 15 | just one person and when you say confidential, you're | 11:38:39 |
| 16 | meaning private with the group? | 11:38:42 |
| 17 | A. Yes. | 11:38:42 |
| 18 | Q. So if a subordinate or colleague came to you | 11:38:45 |
| 19 | for advice, "How do I know what information is | 11:38:49 |
| 20 | confidential at Waymo?" what would you tell them? | 11:38:53 |
| 21 | A. Everything is confidential. The default is | 11:38:54 |
| 22 | everything is confidential. | |
| 23 | Q. And then how do you know whether something is | 11:38:58 |
| 24 | a trade secret apart from confidential information? | 11:39:03 |
| 25 | MS. ROBERTS: Objection; form. | 11:39:05 |

| | | |
|---|---|---|
| 1 | THE WITNESS:  I don't know what a trade secret is. | 11:39:09 |
| 2 | BY MR. PRITT: | 11:39:09 |
| 3 | Q.   What procedures are in place at Waymo to make | 11:39:20 |
| 4 | sure a public document doesn't contain confidential | 11:39:23 |
| 5 | Waymo information? | 11:39:25 |
| 6 | MS. ROBERTS:  Objection; form. | 11:39:28 |
| 7 | THE WITNESS:  Can you define -- what do you mean | 11:39:30 |
| 8 | by "public document"? | 11:39:31 |
| 9 | BY MR. PRITT: | |
| 10 | Q.   How do you make sure -- or how does Waymo | 11:39:34 |
| 11 | make sure that something that is confidential isn't | 11:39:38 |
| 12 | put into a public document? | 11:39:41 |
| 13 | A.   When you say "public," meaning accessible to | 11:39:46 |
| 14 | the general public? | 11:39:47 |
| 15 | Q.   Yes. | 11:39:48 |
| 16 | A.   There is -- there are only a few authorized | 11:39:53 |
| 17 | people within Waymo who are able to publicly present | 11:39:56 |
| 18 | information. | 11:39:57 |
| 19 | Q.   And who are those people? | 11:39:59 |
| 20 | A.   They would be in the marketing team. | 11:40:04 |
| 21 | Q.   Do you know who is on the marketing team? | 11:40:07 |
| 22 | A.   No. | 11:40:07 |
| 23 | Q.   Do you know how big the marketing team is? | 11:40:12 |
| 24 | A.   I can't be sure. | 11:40:13 |
| 25 | Q.   And this is the marketing team of just Waymo? | 11:40:17 |

Page 104

```
 1        A.    At Waymo, yes.                               11:40:18

 2        MS. ROBERTS:  Can you speak up just a little.      11:40:25

 3        THE WITNESS:  Sorry.                               11:40:25

 4   BY MR. PRITT:                                           11:40:25

 5        Q.    Are there any procedures for making sure that 11:40:29

 6   people other than the marketing team don't disclose     11:40:33

 7   confidential information to the public?                 11:40:36

 8        A.    There are guidelines in place.               11:40:42

 9        Q.    Anything else other than guidelines?         11:40:45

10        A.    There are some procedures in place.  For     11:40:51

11   example, if you need to present at a conference or you  11:40:54

12   need to present to a public, you need to make sure      11:40:57

13   that your presentations are vetted by the marketing     11:41:02

14   partnerships team before you can deliver it to a        11:41:08

15   public audience.                                        11:41:09

16        Q.    How would you know that you need to have your 11:41:11

17   presentations vetted by the marketing team?  Is that    11:41:14

18   in a document somewhere?                                11:41:16

19        A.    Yes.                                         11:41:16

20        Q.    In what document?                            11:41:18

21        A.    It is in our internal team website.          11:41:25

22        Q.    And are those the guidelines that you were   11:41:28

23   referring to?                                           11:41:29

24        A.    Those are the guidelines for making any      11:41:33

25   information public.                                     11:41:34
```

Page 105

| | | |
|---|---|---|
| 1 | Q.   Are there any other guidelines? | 11:41:42 |
| 2 | A.   Not that I'm aware of. | 11:41:43 |
| 3 | Q.   Are there any other procedures? | 11:41:47 |
| 4 | MS. ROBERTS:  Objection; form. | 11:41:48 |
| 5 | THE WITNESS:  I don't know. | 11:41:49 |
| 6 | BY MR. PRITT: | 11:41:49 |
| 7 | Q.   So do the confidential -- does -- the | 11:41:57 |
| 8 | confidential information you create at Waymo, does it | 11:42:00 |
| 9 | always contain any sort of legend saying that it's | 11:42:05 |
| 10 | confidential? | 11:42:07 |
| 11 | A.   Yes. | 11:42:12 |
| 12 | Q.   So does that mean every e-mail you send | 11:42:16 |
| 13 | contains a legend that says it's confidential? | 11:42:20 |
| 14 | A.   E-mails sometimes may not contain a legend. | 11:42:24 |
| 15 | Q.   But you still consider e-mails to be | 11:42:26 |
| 16 | confidential? | 11:42:27 |
| 17 | A.   Yes. | 11:42:27 |
| 18 | Q.   Are there any other things that may not | 11:42:30 |
| 19 | contain a legend? | 11:42:31 |
| 20 | A.   Not that I can think of. | 11:42:33 |
| 21 | Q.   Do you know what the legend is? | 11:42:41 |
| 22 | A.   Yes. | 11:42:46 |
| 23 | Q.   What is it? | 11:42:48 |
| 24 | A.   "Google Confidential" or "Waymo | 11:42:52 |
| 25 | Confidential." | 11:42:53 |

Veritext Legal Solutions
866 299-5127

```
 1      Q.   Is there a trade secret legend?              11:43:05
 2      A.   I don't know.                                11:43:06
 3      Q.   Have you ever seen one?                      11:43:11
 4      A.   I don't know.                                11:43:12
 5      Q.   Do you recall ever seeing a trade secret     11:43:15
 6   legend?                                              11:43:18
 7      A.   No.                                          11:43:18
 8      Q.   Who decides at Waymo what information is     11:43:26
 9   confidential?                                        11:43:27
10      MS. ROBERTS:  Objection; form.                    11:43:39
11      THE WITNESS:  There is no specific person who     11:43:43
12   decides what is confidential because the default is  11:43:48
13   everything is confidential.                          11:43:49
14   BY MR. PRITT:                                        11:43:49
15      Q.   And is that default that you referred to     11:43:52
16   found in the guidelines?                             11:43:55
17      A.   I don't know.                                11:43:57
18      Q.   How did you learn that all information would,11:44:03
19   by default, be confidential?                         11:44:06
20      A.   From my supervisor.                          11:44:08
21      Q.   And that's Mr. Willis?                       11:44:14
22      A.   My -- my first supervisor was there before I 11:44:18
23   started, Russ Atassi.  He's talked to me about that, 11:44:21
24   and Mr. Willis has certainly reinforced that.        11:44:26
25      Q.   Did you learn that all information, by       11:44:27
```

| | | |
|---|---|---|
| 1 | default, was confidential other than by talking to | 11:44:30 |
| 2 | your supervisors? | 11:44:35 |
| 3 | A.   There are also periodic online trainings we | 11:44:41 |
| 4 | receive, which are mandated.  And so it's sort of | 11:44:49 |
| 5 | mentioned there as well. | 11:44:50 |
| 6 | Q.   And how often do you receive those trainings? | 11:44:57 |
| 7 | A.   I'm not sure of the frequency, but we receive | 11:44:59 |
| 8 | them very regularly. | 11:45:01 |
| 9 | Q.   And what does "regularly" mean? | 11:45:05 |
| 10 | A.   Again, approximating it, at least once every | 11:45:09 |
| 11 | six months. | 11:45:09 |
| 12 | Q.   When you said they're "sort of mentioned" | 11:45:12 |
| 13 | that everything by default is confidential, what do | 11:45:16 |
| 14 | you mean by "sort of mentioned"? | 11:45:17 |
| 15 | A.   I don't recollect exactly if it's explicitly | 11:45:22 |
| 16 | mentioned there, but the training provides use cases | 11:45:30 |
| 17 | and scenarios on confidentiality and how to protect | 11:45:33 |
| 18 | confidential information. | 11:45:35 |
| 19 | Q.   And do you recall any examples of those | 11:45:38 |
| 20 | scenarios? | 11:45:40 |
| 21 | A.   No. | 11:45:40 |
| 22 | Q.   And are these video trainings? | 11:45:45 |
| 23 | A.   They are audiovisual. | 11:45:48 |
| 24 | Q.   And are there prerecorded audiovisual | 11:45:52 |
| 25 | trainings? | 11:45:53 |

Veritext Legal Solutions
866 299-5127

```
 1      A.   Yes.                                          11:45:53
 2      Q.   Have you ever shared confidential information 11:46:14
 3  with a third party in connection with your work?       11:46:18
 4      A.   Yes.                                          11:46:21
 5      Q.   In what circumstances do you share that       11:46:29
 6  information?                                           11:46:30
 7      A.   The third party needs to have an NDA signed   11:46:40
 8  with Waymo or Google.  And if they have, then I will   11:46:49
 9  share some specific confidential information.          11:46:52
10      Q.   And do you talk to the third parties before   11:46:55
11  you have an NDA?                                       11:46:57
12      A.   To clarify, by talking, we introduce each     11:47:05
13  other.                                                 11:47:06
14      Q.   I'm sorry?                                    11:47:06
15      A.   We introduce each other.  If you call that as 11:47:09
16  talking, then that's what we do.                       11:47:12
17      Q.   At what point when you start talking with a   11:47:14
18  third party do you enter into an NDA?                  11:47:17
19      A.   Right after introductions are made.           11:47:19
20      Q.   So you enter into an NDA before you start a   11:47:23
21  business relationship with a third party?              11:47:26
22      A.   Yes.                                          11:47:26
23      Q.   I know I've been using the term "third        11:47:35
24  party."                                                11:47:36
25           Does that include vendors?                    11:47:38
```

| | | |
|---|---|---|
| 1 | A. Yes. | 11:47:38 |
| 2 | Q. And are there any entities other than vendors | 11:47:43 |
| 3 | that you share confidential information with, you | 11:47:46 |
| 4 | personally? | 11:47:47 |
| 5 | A. No. | 11:47:47 |
| 6 | Q. Are you aware of anyone else sharing | 11:47:52 |
| 7 | confidential information with entities other than | 11:47:55 |
| 8 | vendors? | 11:47:57 |
| 9 | A. No. | 11:47:57 |
| 10 | Q. And do you enter into a separate NDA when you | 11:48:04 |
| 11 | share trade secrets with a third party? | 11:48:08 |
| 12 | MS. ROBERTS: Objection; form. | 11:48:10 |
| 13 | THE WITNESS: I don't know what trade secrets are. | 11:48:14 |
| 14 | BY MR. PRITT: | 11:48:14 |
| 15 | Q. Oh, okay. Okay. | 11:48:18 |
| 16 | Do you ever share confidential information | 11:48:20 |
| 17 | with another Alphabet company? | 11:48:23 |
| 18 | A. I have not. | 11:48:31 |
| 19 | Q. Do you know of anyone who's shared | 11:48:34 |
| 20 | confidential information with another Alphabet entity? | 11:48:37 |
| 21 | A. I don't know. | 11:48:38 |
| 22 | Q. Do you have NDAs with any Alphabet entities? | 11:48:42 |
| 23 | A. No. | 11:48:42 |
| 24 | Q. Do you know why not? | 11:48:49 |
| 25 | A. No. | 11:48:50 |

Page 110

| | | |
|---|---|---|
| 1 | MS. ROBERTS:  Objection; form. | 11:48:51 |
| 2 | BY MR. PRITT: | 11:48:51 |
| 3 | Q.   Do you know if any Alphabet entities use the | 11:48:55 |
| 4 | same vendors as Waymo? | 11:48:58 |
| 5 | A.   Yes. | 11:48:59 |
| 6 | Q.   Yes, they do -- | 11:49:02 |
| 7 | A.   Yes, they do use the same vendors as Waymo. | 11:49:06 |
| 8 | Q.   Do you talk with other people at other | 11:49:12 |
| 9 | Alphabet entities about the work you do for Waymo with | 11:49:16 |
| 10 | vendors? | 11:49:17 |
| 11 | A.   No. | 11:49:18 |
| 12 | Q.   Have you ever done that? | 11:49:21 |
| 13 | A.   No. | 11:49:24 |
| 14 | Q.   Are you aware of anyone at Waymo ever doing | 11:49:28 |
| 15 | that? | 11:49:29 |
| 16 | A.   Yes. | 11:49:33 |
| 17 | Q.   And what were those circumstances? | 11:49:39 |
| 18 | A.   It would be primarily a question around | 11:49:46 |
| 19 | getting the right contacts and suppliers.  By | 11:49:49 |
| 20 | "contacts" I mean the right people at suppliers so | 11:49:52 |
| 21 | that we can ask our suppliers a query.  That's the | 11:49:57 |
| 22 | type of conversations I know about. | 11:50:02 |
| 23 | Q.   Do you know who's had those conversations? | 11:50:08 |
| 24 | A.   No. | 11:50:08 |
| 25 | Q.   Okay. | 11:50:10 |

Page 111

```
1            FEDERAL CERTIFICATE OF DEPOSITION OFFICER
2            I, ANRAE WIMBERLEY, CSR NO. 7778, do hereby
     declare:
3            That, prior to being examined, the witness named
     in the foregoing deposition was by me duly sworn
4    pursuant to Section 30(f)(1) of the Federal Rules of
     Civil Procedure and the deposition is a true record of
5    the testimony given by the witness;
6            That said deposition was taken down by me in
     shorthand at the time and place therein named and
7    thereafter reduced to text under my direction;
8            -----   That the witness was requested to
     review the transcript and make any changes to the
9    transcript as a result of that review pursuant to
     Section 30(e) of the Federal Rules of Civil Procedure;
10           -----   No changes have been provided by the
11   witness during the period allowed;
12           -----   The changes made by the witness are
     appended to the transcript;
13           -----   No request was made that the transcript
14   be reviewed pursuant to Section 30(e) of the Federal
     Rules of Civil Procedure.
15           I further declare that I have no interest in the
16   event of the action.
17           I declare under penalty of perjury under the laws
     of the United States of America that the foregoing is
18   true and correct.
19           WITNESS my hand this 10th day of August, 2017.
20
21
22
23                    [signature: Anrae Wimberley]
24
25        ANRAE WIMBERLEY, CSR NO. 7778
```

Page 304