# EXHIBIT 10
# ENTIRE EXHIBIT SUBMITTED UNDER SEAL

| | |
|---|---|
| **From:** | Maxwell Pritt |
| **Sent:** | Saturday, August 12, 2017 6:43 PM |
| **To:** | Andrea P Roberts; 'John Cooper'; QE-Waymo |
| **Cc:** | UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; Matthew Cate; DG-GPOttoTruckingWaymo@goodwinlaw.com |
| **Subject:** | RE: Waymo v. Uber - Request for Meet & Confer re Waymo ROG Responses |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear Jeff and Andrea,

John asked me to send an email with the outstanding issues on Waymo's RFP and ROG responses identified in my August 6 emails, and the requests on which the parties appear to be at an impasse. John scheduled a call on Monday at 4:00pm to set a briefing schedule for the requests that remain at an impasse. If you could let me know your response on the requests below by Monday morning, I'd appreciate it.

**Follow-up Issues**

- Lyft RFPs (Nos. 147-151, 153, 156): Jeff said on Thursday's call that [REDACTED] The requests are broader than deal-specific documents—RFP 147 seeks "all communications with Lyft about past, current, or potential competition with Uber"; RFP 148 seeks "all documents relating to [any] analysis of Lyft as a potential acquisition target"; and RFP 156 seeks "documents sufficient to identify the first date [of any] discussion of any potential merger or agreement with Lyft." Please confirm there aren't documents responsive to these RFPs [REDACTED]

- RFP 165: Jeff said on Thursday's call that he would get back to us on whether Waymo would agree, as a compromise, to produce, in addition to documents showing the amount and time of payments made under the Bonus Program, (1) documents sufficient to show [REDACTED] and (2) the amount and timing of payments made under the Award Program. Regarding #1, Jeff said Waymo already found and would produce a spreadsheet showing [REDACTED] but it was a live document; Waymo was also looking to see if there was a way to recover the original version of the document, and I asked for all versions that could be recovered (to discover [REDACTED]. Please let us know if Waymo agrees to our requests for this RFP.

- RFP 168: Jeff said on Thursday's call that he would get back to us on whether Waymo agreed to produce, in addition to other documents, emails from Mr. Drummond's custodial files that compliment or criticize Uber or its employees (to the extent any are found in the outbound emails for Mr. Drummond that Waymo is already reviewing pursuant to Judge Corley's August 7 order).

- RFP 95: Jeff said on Thursday's call that [REDACTED] doesn't have responsive documents, and he's waiting to hear back from [REDACTED]. Jeff said that he'd try to push the client to get a response.

**Potential Impasse**

1

- <u>Bonus-related search custodians and Judge Corley's August 7 Order</u> (Dkt. 1094):  Waymo said it will only run the bonus-related searches Judge Corley ordered against Uber's *original* ▮ senior business custodians, even though Uber had replaced one of those custodians ▮▮▮▮ with a *different* custodian ▮▮▮▮ for these searches.  Waymo also said it won't run the searches against ▮▮▮▮, who Waymo recently identified as a 30(b)(6) custodian on bonus issues.  Last night, Waymo also identified ▮▮▮▮ as a 30(b)(6) custodian on bonus-related issues.  Uber will move to compel Waymo to run the bonus searches on these three custodians.

- <u>RFP 166</u>:  Jeff said Waymo already asked two HR personnel (Joanne Chin and Michael Lin, as identified in Waymo's Appendix to this set of RFPs) to identify documents called for by this RFP, and Waymo would not agree to ask three additional HR personnel (Chelsea Bailey, Stacey Sullivan, and Jolie Sorge) if they were aware of any additional, non-duplicative responsive documents.  But Ms. Chin's tenure post-dates Mr. Levandowski's, and both Ms. Sullivan and Ms. Sorge were directly involved in communications about Mr. Levandowski while he was an employee.  Uber will move to compel Waymo to ask these three employees if are aware of any documents responsive to this RFP, and to produce any non-duplicative responsive documents.

- <u>RFP 170 and 172</u>:  These requests seek documents about acqui-hires and transactions involving companies that have yet to commercialize products or tangible assets (No. 170), and documents sufficient to show due diligence efforts (processes, procedures, and protocols), including employment or retention of forensic analysis consultants or vendors in connection with those efforts (No. 172).  Waymo limited its response to "Waymo's acquisitions in the self-driving space," and Jeff said Waymo would not produce documents for any other acquisitions, including acquisitions by Google/Alphabet.  Please let us know if Waymo will compromise by producing responsive documents for a limited number of acquisitions, specifically DeepMind, Waze, SCHAFT, Redwood Robotics, Apportable, JustSpotted, and Path—and hires—Blaise Agüera y Arcas, Kai-Fu Lee, Mark Lucovsky, Manu Gulati, Vinton Cerf, and Dianne Greene.  Please also let us know if Uber will investigate (by asking David Lawlee, Don Harrison, and Stacey Sullivan) and produce responsive documents with respect to instances where Google/Alphabet hired teams of employees from competitors and, for RFPs 172 and 174, used forensic analysis efforts in the course of recruiting or hiring employees.  If Waymo refuses, Uber will move to compel Waymo to produce responsive documents for these acquisitions and hires, and to produce documents regarding hires of teams of employees from competitors and forensic analysis performed in the course of recruiting or hiring employees.  Alternatively, Uber will consider withdrawing these requests if Waymo agrees to stipulate that it will not argue or discuss at trial that there is anything improper or unusual about (1) acquiring a company for its talent or employees, or acquiring a company without commercialized products or tangible assets; (2) recruiting or hiring teams of employees from competitors; and (3) the processes, procedures, and protocols, employed by Uber in connection with its acquisition of Ottomotto.

- <u>RFPs 171</u>:  Waymo refused to produce any responsive documents.  Jeff pointed to Judge Corley's 4/27 order denying a document request appended to Mr. Page's PI deposition notice seeking JDAs and filings in other cases supporting a common interest privilege.  As she stated at the 4/25 hearing, Judge Corley simply believed whatever positions Google may have taken in other litigation on JDAs was not relevant to the PI motion.  We fail to see how that statement justifies Waymo's refusal to respond to these RFPs.  In any event, Uber offered to limit this request to demand letters and complaints involving trade secret misappropriation and/or patent infringement claims against former employees or their new employers, and documents sufficient to show the resolution of the claims.  Uber will move to compel production of these documents.

- <u>RFP 173</u>:  Waymo said it refuses to produce any documents responsive to this RFP.  As a compromise, please let us know if Waymo will (1) produce its previous policy or policies about information sharing, *see* WAYMO-UBER-00040326 (referring to the "new policy" as of June 13, 2017); and (2) investigate whether, in connection with any potential or actual M&A transactions, Google/Alphabet has entered into any agreements that have a component of privilege or common interest that extend beyond the life of the transaction, and if so, produce those documents.  If Waymo refuses, Uber will move to compel Waymo to produce these documents.

2

- RFP 174/ROG 20:  Waymo responded that it has produced "Google-wide policies and communications prohibits Google employees from bringing trade secret or proprietary information into Google," and refused to produce more.  Please let us know if there are any similar policies applicable to the SDC business that are not "Google-wide."  Also, please let us know if these "Google-wide policies and communications" are the only efforts Waymo uses to prohibit, sequester, or otherwise prevent other companies' confidential, proprietary or trade secret information from entering Waymo, and that Waymo will not rely on or discuss other efforts at trial.  If Waymo stipulates to this effect, we will consider withdrawing these requests.  If Waymo refuses, Uber will move to compel Waymo to answer ROG 20 and to produce documents sufficient to show any other efforts Waymo takes to prohibit, sequester, or otherwise prevent other companies' confidential, propriety or trade secret information from entering Waymo.

- RFP 175/ROG 24: Waymo provided the same response as it did for RFP 174 and refused to produce more.  That response is not responsive—this RFP asks about instances in which another company's confidential, proprietary or trade secretion information actually entered into or came into Waymo's possession in the course of hiring or recruiting employees.  We're willing to narrow the scope of these requests to the documents and information held by the employees who would be knowledgeable on this topic, but we don't know who they are.  Please let us know if Waymo will agree to this limitation and to identify the appropriate individuals.

- ROGs 18, 19, and 25:  I explained in my 8/6 email why Waymo's responses to ROGs 18 and 19 did not provide sufficient detail and thus did not provide a complete answer.  Andrea disagreed in her 8/10 email and refused to supplement to provide any additional information whatsoever.  Waymo's response to ROG 25 contains the same deficiencies (e.g., referring to "numerous additional facts" without identify them except for "one illustrative example").  Uber will move to compel Waymo to supplement these responses and provide complete answers.

Best,
Max


**From:** Andrea P Roberts [mailto:andreaproberts@quinnemanuel.com]
**Sent:** Thursday, August 10, 2017 6:12 PM
**To:** Maxwell Pritt; 'John Cooper'; QE-Waymo
**Cc:** UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; Matthew Cate; DG-GPOttoTruckingWaymo@goodwinlaw.com
**Subject:** RE: Waymo v. Uber - Request for Meet & Confer re Waymo ROG Responses

Max, please see inline below responses to the issues you raised in your August 6 email.

Thanks.

**From:** Maxwell Pritt [mailto:mpritt@BSFLLP.com]
**Sent:** Sunday, August 06, 2017 2:38 PM
**To:** 'John Cooper' <JCooper@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Cc:** UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; Matthew Cate <MCate@fbm.com>; DG-GPOttoTruckingWaymo@goodwinlaw.com
**Subject:** Waymo v. Uber - Request for Meet & Confer re Waymo ROG Responses

Dear John and Counsel,

Uber requests a meet and confer on Waymo's objections and responses (and failures to respond) to Uber's ROG sets three, four, and five.  I will email separately about Waymo's responses to RFPs sets 4 and 5.

3

Failure to Respond to ROGs 26 and 27:  Waymo did not respond to ROGs 26 and 27, claiming that it believed "Uber/Otto were limited to a total of 25 interrogatories."  Waymo cites Andrea Roberts' emails from June 8 and June 21 noting that the parties were seeking clarification from the Special Master concerning how many interrogatories each party could serve.  The parties did seek that clarification on June 22 and the Special Master ruled that the plan language of FRCP 33 governs and each party could serve 25 interrogatories on a party, that is, Waymo could serve 25 interrogatories on each of the three defendants and each of the three defendants could serve 25 interrogatories on Waymo.  *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288, 288–89 (D. Mass. 2003) ("Under the plain terms of Rule 33(a), each defendant could, without leave of court, serve 25 interrogatories on the plaintiff.").  Wendy Ray and I were on this call and have reviewed our records, which reflect this ruling.  I also confirmed the ruling again on another meet and confer call a few weeks later, specifically raising our understanding that each party, including each of Uber and Ottomotto, could serve 25 interrogatories, which the Special Master confirmed again.  Please let us know if you will respond to ROGs 26 and 27, and the remaining outstanding ROGs from Uber and Ottomotto.

The parties are briefing this issue.

Objections to ROGs set 3-5 and RFPs set 4-5:  Waymo responds to many of these requests but also includes unexplained boilerplate objections, like "unduly burdensome, oppressive, overly broad, and not proportional," "vague and ambiguous," and "compound, complex and contains multiple subparts."  *See, e.g.*, *Synopsys, Inc. v. ATopTech, Inc.*, 319 F.R.D. 293, 298 (N.D. Cal. 2016) (subparts are permissible as long as they are related to the same subject or contention); *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 1221924, at *2 (N.D. Cal. 2015) (same); *Johnson v. Cate*, 2014 WL 1419816, at *2 (E.D. Cal. 2014) (collecting caselaw overruling boilerplate, unexplained objections like "unduly burdensome," "irrelevant," "overbroad," and "vague and ambiguous") (collecting caselaw).  For each of these requests, please let us know if Waymo is withholding any responsive documents or information on the basis of an objection.  If so, please identify the specific requests and objection, and the basis for the objection.

As a general matter, Waymo has not held back responsive documents on the basis of the objections contained in your response above; if there is a specific request as to which you have a concern, we are happy to discuss.  It is worth nothing that Uber has asserted similar objections in response to Waymo's discovery requests.

ROGs 15-17:  Waymo responded to each of these interrogatories relying entirely on FRCP 33(d) and citing business records, and also referring to deposition transcript in response to ROG 15.  References to depositions are not permitted.  *E.g.*, *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG(DMR), 2016 WL 2342128, at *1–3 (N.D. Cal. May 3, 2016) ("Incorporation by reference is not a responsive answer"; an interrogatory response "should be complete in itself and should not refer to the pleadings, or to depositions or other documents," and can only incorporate another interrogatory responses if doing so does not require "an elaborate comparison of answers").  Please amend your response to ROG 15.

Uber has repeatedly incorporated by reference entire declarations, other pleadings, and complex answers to other interrogatories in its responses to Waymo's interrogatories (*see, e.g.* each of Uber's responses to Waymo's Second Set of Common Interrogatories.)  To the extent that Uber objects to the incorporation by reference, Uber's responses to many of Waymo's interrogatories are similarly objectionable.  Unless Uber intends to similarly amend each of its interrogatory responses which incorporates by reference pleadings or other documents, Waymo does not believe it is required to amend its response to ROG 15.  Further, Waymo's response provides the specific page and line cite(s) to the relevant deposition testimony.

We are in the process of reviewing your citations to business records in response to these interrogatories.  We note, however, that a "responding party may not abuse the [Rule 33(d)] option by directing the propounding party to a mass of undifferentiated records."  *Id.*; *Hash v. Cate*, No. C 08-03729 MMC DMR, 2012 WL 6043966, at *3 (N.D. Cal. Dec. 5, 2012) (plaintiff "may not refer to other discovery responses or external documents in his [interrogatory] responses").  Furthermore, if only "some pertinent information may be found in the documents, this is not enough[.]"  *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 4999762, at *3 (N.D. Cal. Aug. 21, 2015) (it is the responding party's "burden to show that the documents contain complete answers to the interrogatory").

4

Similarly to above, Uber has responded to many of Waymo's interrogatories with similar (and in many case more voluminous) citations to business records.  It is not useful for Uber to complain about interrogatory responses when it has not yet even reviewed the cited business records.

ROG 18:   Waymo's response appears to be limited to steps taken in deciding "whether or not to acquire or enter a commercial partnership or joint venture," but the request also asks about steps Waymo takes in deciding whether to "invest in any company or entity."  The response identifies   Whether Google/Alphabet (or their attorneys or consultants) have retained forensic analysis firms or conducted forensic investigations in connection with due diligence processes  is plainly relevant given Waymo's allegations and accusations about the diligence performed by MoFo and Stroz.  Please supplement this response.

Uber's interrogatory asks only for a description of the steps Waymo takes, which Waymo has described, conveniently separated into distinct paragraphs.                                                                                                                                                                                  Moreover, Waymo responded to this interrogatory despite minimal relevance to the case and resultant lack of proportionality.  To the extent you now seek this information from "any Alphabet entities" and all of "Google/Alphabet," such a request is grossly unproportional to the needs of the case.

ROG 19:  Like with ROG 18, Waymo's response does not describe efforts taken in connection with investments contemplated or completed by Waymo.  The response also states that Waymo uses NDAs but does not explain anything about the NDAs—what language/provisions protect confidential information shared by Waymo, does Waymo ever share confidential information without using an NDA, what times has Waymo used an NDA and with whom, etc.  The response says Waymo "trains its employees on the treatment of confidential information" but does not describe how it trains its employees—e.g., what does that training entail, how often is there training, etc.  The response states vaguely that Waymo "holds all employees to the standard of care described in the employee handbook, employee code of conduct, employment and confidentiality agreements, and numerous other Google policies relating to security and confidentiality"; that is plainly insufficient—e.g., how does Waymo hold its employees to any given standard of care, what are those standards, what are the "numerous other Google policies relating to security and confidentiality"?  The response also vaguely states that Waymo "limits information access as much as possible," but provides no explanation whatever regarding how Waymo limiting information access.  Please supplement this response.

Similar to ROG 18, Uber's interrogatory asks only for a description of Waymo's efforts, contracts, or agreements to maintain the confidentiality of transactions.  Waymo's response does so.  That Uber served a vague interrogatory does not give it leave to ask more specific questions in the guise of complaining about the alleged vagueness of Waymo's response.  Moreover, again as with ROG 18, Waymo responded to this interrogatory notwithstanding the extremely limited relevance of transactions (such as acquisitions, mergers, joint ventures, or investments) that Waymo enters into or considers entering into.

5

ROGs 20 and 24: Waymo refuses to respond to these requests, presumably based on the objection that efforts taken by Waymo and other Google/Alphabet entities "to prohibit, sequester, or otherwise prevent confidential, propriety, or trade secret information of any other company or entity from entering" their businesses (ROG 20), and the instances in which such information has entered Waymo and other Alphabet entities (ROG 24), are not relevant. But Waymo has placed Uber's efforts to prevent new employees from bringing or using former employers' confidential, proprietary or trade secret information, and the due diligence performed by MoFo and Stroz, at the heart of this litigation. Thus, the extent to which other companies' trade secrets came into the possession of Waymo and other Alphabet entities, and the extent to which Waymo and other Alphabet entities failed to take efforts, or took similar or less comprehensive efforts than Uber, to prevent such information from entering Waymo, is plainly relevant. Please provide full and complete answers to these requests.

We disagree with the relevancy here. Indeed, Judge Corley has already rejected discovery aimed at Waymo simply because it mirrors what Uber has done to end up where it is now in this case. *See* Apr. 26, 2017 Hearing Tr. at 43-44; Apr. 27, 2017 Hearing Tr. at 2. Specifically, that Uber misappropriated Waymo's trade secrets by acquiring Otto does not give Uber free rein to probe circumstances in which a third party's confidential information may have entered Waymo, to the extent such circumstances even exist in the first place. To the extent this seeks information about "other Google/Alphabet," these interrogatories are even further removed from anything relevant to the case and far out of proportion to the needs of this case.

ROG 21: Uber cannot ascertain a complete answer to this interrogatory by referring to the documents Waymo listed. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 4999762, at *3 (N.D. Cal. Aug. 21, 2015) (holding if only "some pertinent information may be found in the documents, this is not enough"; it is the responding party's "burden to show that the documents contain complete answers to the interrogatory"). The documents are missing metadata that is needed to interpret them, such as date/time; it's unclear whether or not the documents are drafts; the custodian names on all the files is "Google," which makes it difficult to know who contributed to them, signed off on them, or received them; the P&L statements include financial information for future dates and do not give context for the assumptions underlying the information. Even Waymo's employees were confused by the lack of this information. (*See* Haroon Tr. 201:23-202:5 ("Q: Just looking at the file name in the middle of the document here, can you tell whether that is the file name for the final—or the official version of the P&L? A: I can't because it—this file name looks like it was the file name from downloading from Google Drive into [Excel], and I don't recognize a lot of this tag.").) Also, eight of the 35 "documents" you identify are just different pages of the same document: WAYMO-UBER-00004108, WAYMO-UBER-00004132, WAYMO-UBER-00004137, WAYMO-UBER-00004155, WAYMO-UBER-00004175, WAYMO-UBER-00004195, WAYMO-UBER-00004234. Please supplement this response with a full and complete answer.

I understand that we have already had discussions with you regarding this issue, and we are working on providing the metadata for these documents. As noted in those discussions, the eight documents you list are in fact different documents but were inadvertently produced as a single PDF.

ROG 22: Waymo responds that will produce at some point in the future responsive documents to the extent they "relate to communications had by Mr. Drummond in the context of his roles at Google and Alphabet." It is unclear what Waymo means by "the context of his roles at Google and Alphabet." Please explain whether Waymo intends this phrase to limit its obligation to provide a full and complete answer to this interrogatory, and identify when Waymo will supplement its response with an answer to this request. Please also explain the basis for the objection and assertion that "any responsive information related to Mr. Drummond's role on Uber's Board of Directors is in Uber's possession." Presumably information about communications Mr. Drummond had regarding his "role on Uber's Board of Directors" with individuals other than Uber employees would not be "in Uber's possession."

This interrogatory is overly broad and unduly burdensome. Waymo is not searching for responsive information regarding Mr. Drummond's communications with Uber personnel and/or board members, such information is equally in Uber's possession. Waymo is searching Mr. Drummond's emails for other responsive information and will supplement its response to this interrogatory accordingly. Waymo intends to supplement its response at least 48 hours before Mr. Drummond's deposition.

ROG 23: Waymo's response only identifies and cites documents about ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. We are evaluating the referenced documents to see if they contain the information requested.  But this request is not limited to acquisitions; it also includes mergers, joint ventures, partnerships, and investments.  Waymo's response also does not appear to describe other Google/Alphabet entities' transactions motivated primarily or in part by acquiring, hiring or recruiting employees/talent.   Please supplement with this information.

Waymo's response to this interrogatory is fulsome.  After a diligent investigation, Waymo did not locate any transactions responsive to the interrogatory other than those included in its response.

ROG 25:  Waymo's response improperly incorporates by reference depositions, briefs, and another interrogatory. *E.g.*, *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG(DMR), 2016 WL 2342128, at *1–3 (N.D. Cal. May 3, 2016) (an interrogatory response "should be complete in itself and should not refer to the pleadings, or to depositions or other documents," and can only incorporate another interrogatory responses if doing so does not require "an elaborate comparison of answers"); *In re Lithium Ion Batteries Antitrust Litig.*,  2015 WL 4999762, at *3 (N.D. Cal. Aug. 21, 2015) (if only "some pertinent information may be found in the documents, this is not enough"; it is the responding party's "burden to show that the documents contain complete answers to the interrogatory").  Please supplement this response.

See above answer to ROG 15.


Best,
Max

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]