MILES EHRLICH (Bar No. 237954)
miles@ramsey-ehrlich.com
ISMAIL RAMSEY (Bar No. 189820)
izzy@ramsey-ehrlich.com
AMY CRAIG (Bar No. 269339)
amy@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
(510) 548-3600 (Tel)
(510) 291-3060 (Fax)

Attorneys for Non-Party Anthony Levandowski

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, INC., *et al.*,<br><br>            Defendants. | Case No.: 3:17-cv-00939-WHA<br><br>**NON-PARTY ANTHONY LEVANDOWSKI'S COURT-ORDERED SUBMISSION REGARDING HIS ASSERTION OF THE FIFTH AMENDMENT PRIVILEGE WITH RESPECT TO CERTAIN REQUESTS IN WAYMO'S RECENT SUBPOENAS**<br><br>*Public Version* |

In April 2017, Waymo LLC served upon third-party witness Anthony Levandowski a subpoena demanding the production of documents. On July 5, 2017, this Court held that Mr. Levandowski properly invoked his Fifth Amendment privilege against self-incrimination with respect to that subpoena. Dkt. 802.[1] Prior to the Court's order, on June 23, 2017, Waymo had already served Mr. Levandowski with a second document subpoena (the "Second Subpoena").

---

[1] The Court's order directed than any objections had to be filed on or before July 10, 2017. Waymo filed no such objections, so the order is now law of the case.

Dkt. 1086-1. And, after the order, on July 17, 2017, Waymo served a third subpoena (the "Third Subpoena"). Dkt. 1086-3. Mr. Levandowski objected to the new subpoenas, including on the ground that the requests implicate Mr. Levandowski's Fifth Amendment rights.

After briefing, this Court sustained Mr. Levandowski's objection that many of Waymo's document requests on their face implicated Mr. Levandowski's Fifth Amendment privilege against self-incrimination. Dkt. 1213. The Court ordered that Mr. Levandowski need *not* further respond to the following document requests:

- Second Subpoena Requests number 3, 9-13, 16, 19-20, 31, and 33-37. *See* Dkt. 1213 at 2.
- Second Subpoena Requests number 1, 2, 4-6, 24-27, insofar as the requests seek communications, documents and agreements related to entities other than Tyto. *See* Dkt. 1213 at 2-3.
- All requests in the Third Subpoena insofar as the requests seek communications, documents and agreements related to entities other than Tyto. *See* Dkt. 1213 at 2-3.

As to the remaining document requests in the Second Subpoena, the Court ordered Mr. Levandowski to "provide Waymo with amended responses to these requests which (1) state whether he in fact produced any documents responsive to these requests and (2) state whether any documents are being withheld and, if so, on what basis." Dkt. 1213 at 3-4. Mr. Levandowski has done so. *See* Exhibit A. The Court also directed Mr. Levandowski to

> produce an *in camera* submission similar to his earlier submission with a privilege log and a brief justifying his withholding of the documents, including any justification as to why he should not be required to produce the privilege log to Waymo. He shall submit a public version of the brief and a version for the Court's *in camera* review.

*Id.*

Mr. Levandowski asserts that producing records in response to certain requests in the Second Subpoena would incriminate him in violation of his Fifth Amendment rights. As

2

directed by the Court, we hereby file a brief demonstrating the bases for withholding documents responsive to those requests, if any exist.

**I.   BACKGROUND**

As this Court previously recognized, "it is undisputed that this lawsuit implicates Levandowski's Fifth Amendment privilege." Dkt. 802 at 3. "Waymo has repeatedly accused Levandowski of stealing Waymo's trade secrets—a crime under state and federal law—and the district court made a formal referral to the United States Attorney's Office to investigate the possible criminal misappropriation of Waymo's trade secrets." *Id*. "Levandowski thus faces at least the possibility that he will be prosecuted for stealing Waymo's trade secrets." *Id*.

Many of Waymo's new requests relate to the period between Mr. Levandowski's departure from Google and his hiring by Uber. Allegations in Waymo's recent briefing demonstrate the risky ground upon which Mr. Levandowski treads in this area:

> [B]etween the date that Ottomotto signed the Put Call Agreement with Uber (April 11), and the date that the acquisition closed (August 23), Ottomotto acquired another LiDAR company, Tyto LiDAR LLC ("Tyto"). [Redaction.] As part of the acquisition of Tyto, Ottomotto obtained not only all of its employees, including LiDAR hardware engineer James Haslim, but also its LiDAR designs. Based on the testimony of Mr. Haslim in this case, Levandowski played an active role in Tyto while he was a Waymo employee, and Levandowski personally guided Mr. Haslim to develop Tyto technology that incorporated Waymo's trade secrets. Thus, *even before Uber's acquisition of Ottomotto, Levandowski—through a number of shell entities designed to conceal his involvement—was using Tyto to misappropriate Waymo's intellectual property so that it would be available to Defendants after the acquisition*.
>
> . . . .
>
> There is also substantial evidence of Levandowski's direct involvement in Tyto before it was formally absorbed by Ottomotto . . . . In sum, *Levandowski—while still a Waymo employee and downloading files for use by Defendants—was also funneling Waymo trade secrets to, and personally funding, another LiDAR company designed to be acquired by Ottomotto (and Uber)*.

Dkt. 1086 at 2-3 (emphasis added; footnote and citations omitted). As the Court observed, in

3

light of Waymo's allegations, documents tending to demonstrate Mr. Levandowski's involvement with these entities carries the potential for incrimination—"[f]or the same reasons these documents are relevant, requiring Mr. Levandowski to admit that he possesses responsive documents will implicate his Fifth Amendment privilege against self-incrimination." Dkt. 1213 at 2-3.

## II.   THE LEGAL BASES FOR MR. LEVANDOWSKI'S ASSERTION OF THE FIFTH AMENDMENT

Judge Alsup has already observed that the central bases for Mr. Levandowski's invocation of the Fifth Amendment are "uncontroversial":

> *First*, the Fifth Amendment privilege against self-incrimination can be asserted in a civil proceeding when "the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). *Second*, an individual may invoke the Fifth Amendment to avoid producing documents on the basis that the act of production "may have a compelled testimonial aspect" as to that individual. *United States v. Hubbell*, 530 U.S. 27, 36 (2000); *Fisher v. United States*, 425 U.S. 391, 410 (1976).

Dkt. 202 at 6. As further discussed below, these principles prohibit the Court from compelling Mr. Levandowski to produce the records Waymo now seeks—unless he is granted immunity.

### A.   The Constitution Prohibits the Court from Forcing Mr. Levandowksi to Be a Witness Against Himself

The Fifth Amendment privilege not to be a witness against oneself is a central tenet of our democracy. *Quinn v. United States*, 349 U.S. 155, 161 (1955). "[A]ny compulsory discovery by extorting the party's oath . . . to convict him of crime . . . is contrary to the principles of a free government . . . . It may suit the purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom." *Malloy v. Hogan*, 378 U.S. 1, 9 n.7 (1964). The Fifth Amendment's "protections against self-incrimination can be asserted in any proceeding, be it civil, criminal, administrative, judicial, investigative or adjudicatory."

*Glanzer*, 232 F.3d at 1263. In the civil context, an individual may invoke the Fifth Amendment privilege in all "circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner." *Id*. The application of the "privilege against self-incrimination does not depend upon the *likelihood*, but upon the *possibility,* of prosecution." *Id.* (emphasis in original).

As discussed above, there is no question that Mr. Levandowski's Fifth Amendment privilege is implicated by the case at bench. *See* Dkt. 802 at 3. Mr. Levandowski is thus faced with a clear "possibility[ ] of prosecution" and his Fifth Amendment privilege against self-incrimination is implicated. *Glanzer*, 232 F.3d at 1263. Put simply, then, in the current circumstances, Mr. Levandowski cannot be compelled to testify—either explicitly or implicitly—about whether he had a "secret plan to funnel Waymo's trade secrets to Tyto and then to Uber," Dkt. 1213 at 3, or about any other topics that might tend to inculpate him.

> **B.  The Fifth Amendment Protects Not Just Against Directly-Incriminating Disclosures, But Also Against Those That Could Serve as an Indirect Link to Incriminating Evidence**

The Fifth Amendment privilege applies not only in "those circumstances where the disclosures would . . . be directly incriminating" (as in a confession), but also to circumstances in which disclosures "could provide an indirect link to incriminating evidence." *Glanzer*, 232 F.3d at 1263. As the Supreme Court put it, "[t]he privilege afforded [by the Fifth Amendment] not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). Thus, the privilege applies when answers to questions could:

- "[P]rovide a lead or clue to evidence having a tendency to incriminate." *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir. 1980).

- Disclose "a fact that could serve as a link in a chain of circumstantial evidence from which guilt might be inferred" or a "fact" that "might furnish a lead to a bit of evidence

useful to the prosecution." *Maffie v. United States*, 209 F.2d 225, 228 (1st Cir. 1954).

- "[G]ive a prosecutor a starting point from which he might proceed step by step to link the witness with criminal offenses." *J.C. Penney Life Ins. Co. v. Houghton,* No. 86-2637, 1986 U.S. Dist. LEXIS 16072 at *9 (E.D. Pa. Dec. 23, 1986).

In short, the link-in-the-chain test is "broadly protective" and must be "liberally construed" by the courts. *United States v. Chandler*, 380 F.2d 993, 997, 1000 (2d Cir. 1967). A "claim of privilege is good unless the court can find that any prospective [disclosure] *could not possibly* incriminate or form a link in the chain." *Shendal v. United States*, 312 F.2d 564, 565 (9th Cir. 1963) (emphasis added, citing *Hoffman*, 341 U.S. 479).

In this context, the seemingly benign character of requested evidence makes no difference: the Fifth Amendment protects individuals from disclosing *any* information, no matter how uncontroversial in isolation, that could potentially be used against that individual in a criminal prosecution or to gather information that could be used to establish guilt. Thus, in *Hoffman*, the Supreme Court reversed a contempt conviction arising from a grand jury witness's refusal to answer questions about his occupation and about whether he had contacts with a particular person. 341 U.S. at 481. A "special grand jury" had been empaneled to investigate criminal "rackets" involving alleged "violations of the customs, narcotics and internal revenue liquor laws of the United States, the White Slave Traffic Act, perjury, bribery, and other federal criminal laws." And the *Hoffman* Court found that, under the circumstances of the investigation underway, answers to the questions posed could have disclosed that the witness was "engaged in . . . proscribed activity" or "forged links in a chain of facts imperiling petitioner with conviction of a federal crime." *Id*. at 481, 487.

Similarly, in *Simpson v. United States*, 355 U.S. 7 (1957), the Solicitor General confessed error, and the Supreme Court summarily reversed a conviction for contempt when a witness refused to answer on Fifth Amendment grounds such seemingly innocuous queries as "would you please state your residence[,]" "[w]ould you give ... a brief resume of your educational background[,]" "did you ever go to high school[,]" and "[w]ere you ever in the armed forces of

the United States?" *Simpson v. United States*, 241 F.2d 222, 223 (9th Cir.), *rev'd* 355 U.S. 7 (1957).

Likewise, in *United States v. Equihua-Juarez*, 851 F.2d 1222 (9th Cir. 1988), the court found that a man crossing the border had a Fifth Amendment right not to reveal his true name, as that information would have permitted border patrol agents to discover his prior illegal entry convictions, and would thereby have provided a link in a chain of evidence that would help prove that he was violating the law in trying to enter the country again. *Id.* at 1227.

In *Maffie*, the First Circuit found error where the district court had required a witness to answer, among other things, questions about his occupation and about whether he knew particular people—as the answers to those questions might have helped link the witness to criminal activities. 209 F.2d at 231-32. And in *Haught v. City of Anderson*, No. 2:11-CV-1653-JAM-CMK, 2015 U.S. Dist. LEXIS 127823 (E.D. Cal. Sept. 23, 2015), the court held that a witness, a police officer, need not answer questions at a deposition in a civil case seeking to hold a city liable for an alleged rape by another police officer of a woman in custody. The court held that the witness, who had allegedly transferred custody of the woman to the other officer at fault, properly invoked the Fifth Amendment in response to questions about whether he had in fact authorized the transfer of the woman and questions about the department's policy for determining who may authorize such a transfer. *Id.* at *4-5, 10-11.

Here, as demonstrated below, Waymo's requests seek materials that, if they exist at all, would either tend to directly incriminate Mr. Levandowski, or alternatively establish a link in a chain of evidence that could prove useful to the government in building a prosecution of Mr. Levandowski. Mr. Levandowski is privileged under the Fifth Amendment to refuse to disclose either type of information.

### C. The Fifth Amendment Protects an Individual from Being Forced to Produce Records if Her "Act of Production" Would Implicitly Communicate Incriminating Information

As Judge Alsup recognized, it is "uncontroversial" that an individual may invoke the

7

Fifth Amendment privilege in responding to a request for the production of documents. Dkt. No. 202 at 6. Even when the contents of a pre-existing document are themselves not privileged, the act of producing the document may implicate the Fifth Amendment privilege:

> The act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the [subpoenaed witness]. It also would indicate the [witness]'s belief that the papers are those described in the subpoena.

*Fisher*, 425 U.S. at 410; *see also Hubbell*, 530 U.S. at 32-36 (holding that, in response to a subpoena for documents, a subpoenaed witness may refuse to produce because "the act of production itself may implicitly communicate statements of fact," such as admissions that "the papers existed, were in the [witness's] possession or control, and were authentic"); *United States v. Doe*, 465 U.S. 605, 612 (1984) ("Although the contents of a document may not be privileged, the act of producing the document may be."). In short, "[b]y producing documents in compliance with a subpoena, the witness admits that the documents exist, are in his possession or control, and are authentic." *Doe v. United States (In re Grand Jury Subpoena)*, 383 F.3d 905, 909 (9th Cir. 2004). She also implicitly admits the "location" of the documents. *Fisher*, 425 U.S. at 411; *see also Hubbell*, 530 U.S. at 45; *United States v. Ponds*, 454 F.3d 313, 323-24 (D.C. Cir. 2006). All of "[t]hese types of admissions implicitly communicate statements of fact that may lead to incriminating evidence." *In re Grand Jury Subpoena*, 383 F.3d at 909.

### D. The Breadth of a Discovery Request Contributes to a Finding that the Act of Production Constitutes Compelled Incrimination

Further, the breadth of a records request is often an important factor in determining whether producing records in response amounts to implicit testimonial incrimination. Broad requests will more likely violate the Fifth Amendment privilege because they require a respondent to exercise her own discretion in reviewing sometimes voluminous records and deciding what is or is not responsive to the particular request, implicit testimony that goes

beyond mere confirmation of an item's existence or possession. Courts thus recognize that a discovery request's "broad language contributes to a finding that the response . . . may be testimonial." *In re Grand Jury Subpoena*, 383 F.3d at 911; *see also Hubbell*, 530 U.S. at 41-42 ("*Given the breadth of the description* of the 11 categories of documents called for by the subpoena, the *collection and production of the materials demanded was tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents fitting certain broad descriptions* . . . . [I]t is undeniable that providing a catalog of existing documents fitting within any of the 11 broadly worded subpoena categories could provide a prosecutor with a 'lead to incriminating evidence,' or 'a link in the chain of evidence needed to prosecute.'" (emphasis added)). In *In re Grand Jury Subpoena*, the Ninth Circuit followed this central teaching in *Hubbell* and relied in part on the breadth of the records request at issue to find that the production of records would constitute testimonial self-incrimination, in violation of the Fifth Amendment:

> The breadth of the subpoena in this case far exceeded the government's knowledge about the actual documents that Doe created or possessed during his former employment and that he retained after he terminated his employment. The government probably could identify with sufficient particularity the existence of [certain] e-mails . . . . The government, however, failed to draft the subpoena narrowly to identify the documents that it could establish with reasonable particularity. Thus, on the record before us, the subpoena's breadth far exceeded the reasonably particular knowledge that the government actually possessed when it served the subpoena on Doe.

383 F.3d at 910-11; *see also United States v. Doe*, 465 U.S. 605, 614 n.12 (1984) (quoting the court of appeals for the proposition that "[t]he most plausible inference to be drawn from the broad-sweeping subpoenas is that the Government, unable to prove that the subpoenaed documents exist . . . is attempting to compensate for its lack of knowledge by requiring the appellee to become, in effect, the primary informant against himself"); *In re Grand Jury Proceedings, Subpoenas for Documents*, 41 F.3d 377, 380 (8th Cir. 1994) ("The broader, more general, and subjective the language of the subpoena, the more likely compliance with the

subpoena would be testimonial."); *United States v. Fox*, 721 F.2d 32, 38 (2d Cir. 1983) ("The inference we draw from this broad-sweeping summons is that the government is attempting to compensate for its lack of knowledge by requiring [the witness] to become the primary informant against himself."). As discussed in Part V, *infra*, the broad requests in this case violate the Fifth Amendment in the same way as the requests in *Hubbell*, *In re Grand Jury Proceedings*, and the other above-cited cases.

### III. THE "FOREGONE CONCLUSION" INQUIRY FOCUSES, IF IT APPLIES, ON WHAT INFORMATION IS ALREADY KNOWN TO THE GOVERNMENT

The Fifth Amendment act-of-production privilege can only be overcome in cases in which the "existence and location" of records under subpoena are a "foregone conclusion" and the witness "adds little or nothing to the sum total of the Government's information by conceding that he in fact has the [documents]"; in such cases, no Fifth Amendment right is implicated because the "question is not of testimony but of surrender." *Fisher*, 425 U.S. at 411 (quoting *In re Harris*, 221 U.S. 274, 279 (1911)); *see also Hubbell*, 530 U.S. at 45; *United States v. Bright*, 596 F.3d 683, 692 (9th Cir. 2010); *In re Grand Jury Subpoena*, 383 F.3d at 910.

When the government seeks records from a witness whose Fifth Amendment privilege is implicated by the circumstances of a case, the government cannot compel production unless it can first establish that "the documents' existence, the documents' authenticity and respondent's possession or control of the documents" is already known to a "foregone conclusion." *Bright*, 596 F.3d at 692 (citation omitted). And notably, "[t]he government bears the burden of proof and *must have had the requisite knowledge before issuing the summons or subpoena*." *Id.* (emphasis added); *see also In re Grand Jury Subpoena*, 383 F.3d at 911 ("It is the quantum of information possessed by the government *before it issues the relevant subpoena* that is central to the foregone conclusion inquiry." (quotation marks omitted, emphasis added)). Put another way, "the government is required . . . to establish the existence of the documents sought and [the witness]'s possession of them with 'reasonable particularity' before the existence and possession

of the documents could be considered a foregone conclusion and production therefore would not be testimonial." *In re Grand Jury Subpoena*, 383 F.3d at 910 (quoting *Hubbell*, 530 U.S. at 44).

Similarly, "[t]he authenticity prong of the foregone conclusion doctrine requires the government to establish that it can independently verify that the compelled documents 'are in fact what they purport to be.'" *Id*. at 912 (quoting *United States v. Stone*, 976 F.2d 909, 911 (4th Cir. 1992)). "Independent verification not only requires the government to show that the documents sought to be compelled would be admissible independent of the witness' production of them, but also inquires into whether the government is compelling the witness to use his discretion in selecting and assembling the responsive documents, and thereby tacitly providing identifying information that is necessary to the government's authentication of the subpoenaed documents." *Id*.

Bu this is a civil case, and the government is not a litigant before this Court. As the Court previously observed, there is some doubt whether this "exception could apply to a private party's Rule 45 subpoena." Dkt. 802 at 5. In any event, even if it does, the inquiry must focus on *the government's* knowledge. *Id*. As before, there is no evidence in the record that the government has any particular knowledge about the facts of this case. *Id*. Thus, at this stage, one can only assume that essentially *any* revelation by Mr. Levandowski about the existence, authenticity, possession, or location of records would add to the government's quantum of information. And to the extent any such documents have the potential to be incriminating—either because they are directly inculpatory or because they could provide a prosecutor with a clue or an indirect link in a chain to other inculpatory information—Mr. Levandowski is privileged under the Fifth Amendment to refuse production.

### IV. MR. LEVANDOWSKI SHOULD NOT BE FORCED TO PUBLICLY REVEAL THE VERY INFORMATION THE FIFTH AMENDMENT PROTECTS HIM FROM DISCLOSING

In previous litigation, Waymo demanded that Mr. Levandowski produce specific information—such as a privilege log—describing the records, if any, over which he claims a

Fifth Amendment privilege. But as this Court recognized in connection with Mr. Levandowski's earlier invocation of his Fifth Amendment privilege in response to subpoena requests, when records are validly withheld under the Fifth Amendment privilege, the privilege protects the very existence and location of the records—and producing a privilege log would work the same violation as producing the record itself. Dkt. 802 at 3-4; *see also* Dkt. 539 at 14-18 (discussing jurisprudence).

## V. MR. LEVANDOWSKI HAS PROPERLY WITHHELD RECORDS BASED ON HIS FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION

Below we list the document requests that remain outstanding after the Court's recent order.

Some of the requests broadly seek records the production of which—if they exist—could tend to incriminate Mr. Levandowski under the legal principles discussed above. The Court should sustain Mr. Levandowski's objection to these requests. In this section, which will be filed in the public docket, we describe why the responses to Waymo's requests could tend to incriminate Mr. Levandowski. In Section VI, *infra*, which will be filed solely *in camera*, we will describe any responsive materials that may exist, and provide further relevant information to the Court.

For some requests, Mr. Levandowski makes no Fifth Amendment claim.

### A. Request Seeking Documents Related to Tyto (and Odin Wave): Second Subpoena Request No. 1

As the Court recognized in its recent order, Waymo contends that Mr. Levandowski's supposed involvement with Tyto[2] is evidence of his commission of a crime:

> Waymo asserts that Mr. Levandowski played an active role in another LiDAR company, Tyto, while he was still employed by Waymo (then Google). Ottomotto acquired Tyto before Uber acquired Ottomotto; thus, argues Waymo, Mr. Levandowski "was using Tyto to misappropriate Waymo's intellectual property so

---

[2] Waymo describes that Tyto was previously named "Odin Wave." Dkt. 1086 at 2 n.1.

that it would be available to Defendants after the acquisition."

Dkt. 1213 at 2-3 (quoting Dkt. 1086 at 3). The Court observed, however, that "[i]t is now no secret that Ottomotto acquired Tyto. Thus, the fact that Mr. Levandowski possesses responsive documents related to Tyto is not necessarily incriminating." *Id*. at 3.

The Court's point is well taken: because of Mr. Levandowski's relationship with Ottomotto, his possession of responsive documents from the period *after* Ottomotto acquired Tyto would not necessarily demonstrate any wrongdoing of the kind alleged by Waymo. However, documents that *predate* the acquisition or that otherwise demonstrate Mr. Levandowski's involvement with Tyto before the acquisition—if such documents existed— would tend to corroborate Waymo's theory that Mr. Levandowski "was using Tyto to misappropriate Waymo's intellectual property so that it would be available to Defendants after the acquisition." To the extent Mr. Levandowski has any such documents in his possession, his Fifth Amendment privilege precludes an order requiring him to produce the records.

**B.     Requests Seeking Records Relating to the Formation of Ottomotto and Otto Trucking: Second Subpoena Requests No. 7-8**

Mr. Levandowski has not sought to withhold documents responsive to these requests based on the Fifth Amendment.

**C.     Requests Seeking Records Relating to Stroz: Second Subpoena Requests No. 14-15**

Second Subpoena requests number 14 and 15 seek records relating to Stroz. As the Court is aware, the question whether Mr. Levandowski has a valid privilege with respect to Stroz's review is presently on appeal before the Federal Circuit. *See* Federal Cir. Case Nos. 2017-2235 and 2253. We have consistently maintained that such materials are protected by Mr. Levandowski's Fifth Amendment, common interest and other privileges. *See, e.g.,* Dkt. 574 & 726. The Federal Circuit has stayed Judge Alsup's orders directing the production of Stroz-related materials. *See* Fed. Cir. No. 2017-2235 Dkt. 4; Fed. Cir. No. 2017-2253 Dkt. 5. For the

reasons expressed in our prior briefing, we maintain that these records are protected by Mr. Levandowski's Fifth Amendment, common interest, attorney-client and work product privileges. Judge Alsup's previous orders compelling production of Stroz-related records were stayed by the Court of Appeals.

During a meet and confer call on July 28, 2017, counsel for Waymo acknowledged that Mr. Levandowski's response to Requests 14 and 15 would be governed by the Federal Circuit's decision in Mr. Levandowski's pending appeal regarding the privileges applicable to Stroz materials. Counsel agreed that Mr. Levandowski would update his response to the Stroz-related requests in accordance with the Federal Circuit's decision, once it has been issued.

### D. Requests Seeking Communications and Agreements with Lior Ron: Second Subpoena Requests No. 17-18, 28

Second Subpoena requests number 17 and 18 seek Mr. Levandowski's communications with Lior Ron. Mr. Levandowski has produced documents in response to these requests. Mr. Levandowski is asserting his Fifth Amendment rights with respect to whether any additional communications exist as any communications could prove incriminating for the reasons discussed in Part V.A, above. Mr. Ron had a stake in Ottomotto, as well as a key management role. To the extent communications, if they existed, revealed Mr. Levandowski's relationship with Tyto prior to its acquisition by Ottomotto, that would substantiate Waymo's incriminating theory of the case.

Second Subpoena request number 28 seeks "[a]ll agreements with Lior Ron." Mr. Levandowski has not sought to withhold documents responsive to this request based on the Fifth Amendment.

### E. Request Seeking Communications with Soren Juelsgaard: Second Subpoena Request No. 21

Mr. Levandowski has not sought to withhold documents responsive to this request based on the Fifth Amendment.

### F. Request Seeking Communications and Agreements with Ognen Stojanovski: Second Subpoena Requests No. 22 & 30

Second Subpoena request number 22 seeks "[a]ll COMMUNICATIONS with Ognen Stojanovski REGARDING WAYMO, GOOGLE, or LIDAR." Request number 30 demands "[a]ll agreements with Ognen Stojanovski."[3]

Mr. Leavandowski has informed Waymo that he is not withholding any agreements with Mr. Stojanovski from production on Fifth Amendment grounds. With respect to communications, Waymo's own contentions demonstrate that records related to communications or agreements with Mr. Stojanovski could incriminate Mr. Levandowski. Waymo contends that Mr. Stojanovski was a "former Tyto and Ottomotto employee" who now works for Uber, and that his interactions with Mr. Levandowski help to demonstrate Mr. Levandowski's involvement with Tyto prior to its acquisition by Ottomotto—and, thus, Mr. Levandowski's alleged involvement in a scheme to "funnel Waymo trade secrets" to Uber. Dkt. 1086 at 3. Plainly, producing communications that tended to corroborate these alleged interactions and interconnections would have the potential to incriminate Mr. Levandowski, either directly or as a link in a chain to other incriminating evidence.

### G. Requests Seeking Agreements with Any Defendant: Second Subpoena Request No. 23

Mr. Levandowski has not sought to withhold documents responsive to these requests based on the Fifth Amendment.

### H. Request Seeking Agreements with John Gardner: Second Subpoena Request No. 29

Mr. Levandowski has not sought to withhold documents responsive to these requests

---

[3] Mr. Stojanovski is an attorney. Communications with him may therefore also implicate the attorney-client and attorney work product privileges. In our recent amended responses to Waymo's subpoena, we stated that Mr. Levandowski is withholding documents responsive to this request on attorney-client privilege grounds; to the extent any are also withheld on Fifth Amendment grounds, we will address them in Part VI., *supra*.

based on the Fifth Amendment.

### I.     Request Seeking All Communications With Any Person: Second Subpoena Request No. 32

Waymo has demanded in Second Subpoena request no. 32 "[a]ll COMMUNICATIONS with any PERSON REGARDING THIS CASE." On a July 28, 2017 meet-and-confer teleconference, Special Master Cooper set this request aside on the grounds it constituted an improper and overbroad fishing expedition. Special Master Cooper's decision is in keeping with this Court's previous orders finding that numerous categories of Mr. Levandowski's communications are subject to the Fifth Amendment privilege. The sheer breadth of this request, along with the undisputed fact that Mr. Levandowski has a Fifth Amendment right to withhold some categories of records, if any exist, demonstrate that this request must be quashed as a violation of Mr. Levandowski's privilege.

### J.     Request Seeking Documents Relating to Mr. Levandowski's Termination from Uber: Second Subpoena Request No. 38

Mr. Levandowski has not sought to withhold documents responsive to these requests based on the Fifth Amendment.

*  *  *

[*REDACTED* -- THE REMAINING PORTIONS OF THE SUBMISSION HAVE BEEN FILED SOLELY IN THE *IN CAMERA* VERSION OF THE BRIEF]

NON-PARTY ANTHONY LEVANDOWSKI'S COURT-ORDERED FITH AMENDMENT SUBMISSION RE WAYMO'S JUNE 23, 2017 SUBPOENA – *Public Version*, 3-17-cv-00939 WHA

| | | |
|---|---|---|
| 1 | Date: August 22, 2017 | Respectfully submitted, |

/s/
Miles Ehrlich
Ismail Ramsey
Amy Craig
Ramsey & Ehrlich LLP
803 Hearst Avenue
Berkeley, CA 94710
Tel: (510) 548-3600
Fax: (510) 291-3060

miles@ramsey-ehrlich.com
izzy@ramsey-ehrlich.com
amy@ramsey-ehrlich.com

*Counsel for Anthony Levandowski*

NON-PARTY ANTHONY LEVANDOWSKI'S COURT-ORDERED FITH AMENDMENT SUBMISSION RE WAYMO'S JUNE 23, 2017 SUBPOENA – *Public Version*, 3-17-cv-00939 WHA