MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
ERIC A. TATE (CA SBN 178719)
ETate@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Telephone: 202.237.2727
Facsimile: 202.237.6131

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　　Defendants. | Case No.　　3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC.'S AND OTTOMOTTO, LLC'S OPPOSITION TO PLAINTIFF WAYMO LLC'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 1276)**<br><br>Judge:　The Honorable William Alsup<br>Trial Date: October 10, 2017 |

**REDEACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Pursuant to Civil Local Rule 72-2 and this Court's Order (Dkt. 1310), Defendants Uber Technologies, Inc. and Ottomotto LLC (hereinafter "Uber") file their response to Waymo's Motion for Relief from Non-Dispositive Pretrial Order of Magistrate Judge Corley. (Dkt. 1289.)

## I.   INTRODUCTION

Judge Corley's August 19, 2017 order is not clearly erroneous or contrary to law.  Indeed, Waymo only challenges one of Judge Corley's decisions as erroneous (not even clearly erroneous); the rest are simple disagreements with Judge Corley's judgment in resolving the parties' discovery disputes.  First, Waymo claims that it need not produce any documents regarding the terms and circumstances of its own mergers or acquisitions—while continuing to argue that it is entitled to claim that the terms and circumstances of Uber's acquisition of Otto amount to evidence of liability.  Second, Waymo continues to conflate the 14,000 files allegedly downloaded by Anthony Levandowski with the trade secrets at issue in this case and attempts to avoid being bound by its inability to set forth evidence showing use by Uber of the 14,000 files.  Finally, Waymo's objection to Judge Corley's order to make four custodians available for a second deposition if documents are produced after their depositions is simply a disagreement with her judgment.  Accordingly, Uber respectfully requests that the Court deny Waymo's motion.

## II.   LEGAL STANDARD

A district judge considering objections to a magistrate judge's nondispositive order must defer to the order unless it is "clearly erroneous or contrary to law." *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

## III.   ARGUMENT

### A. M&A Transactions and Due Diligence: Interrogatory No. 18 and Request Nos. 170 and 172.

Uber's Interrogatory No. 18 asks Waymo to describe the steps it has "taken in deciding whether or not to acquire . . . or invest in any . . . entity." (Dkt. 1294-3 at 4.)  Uber's Request Nos. 170 and 172 seek related documents: No. 170 asks for documents "relating to any transaction contemplated . . . by Waymo . . . that was motivated primarily or in part by the acquiring . . . of talent," and No. 172 asks for documents "sufficient to show Waymo's due diligence efforts for any transaction." (Dkt. 1294-9 at 6-7.)

During the meet and confer process, Uber offered to limit these requests to (a) certain identified hires from competitors and (b) seven acquisitions.  (Dkt. 1214-24 at 2.)  Waymo now argues that these seven transactions are "random" and a "fishing expedition."  (Dkt. 1289 at 3-4.)  Waymo did not make this argument to Judge Corley, and it is incorrect.  (Dkt. 1237-4 at 2.)  With DeepMind, Waze, SCHAFT, and Redwood Robotics, Google acquired new technologies to gain advantage over competitors.  Apportable, JustSpotted, and Path were acquihires.  Uber limited its request to these seven among numerous Google acquisitions, leaving out companies such as Holomi and Bot & Dolly (both companies with robotics technology and software).

Additionally, Waymo answered Interrogatory No. 18 by describing general steps it has taken in acquisitions rather than describing each of the seven deals.  (*See* Dkt. 1294-4 at 5 (referring generally and vaguely to Waymo's "management," "local partnership," and "OEM team[s]").)  Waymo also responded that "Google's and Waymo's due diligence into transactions unrelated to this Action are not relevant," and limited its production in response to RFPs Nos. 170 and 172 to "documents relating to *Waymo*'s acquisitions in the self-driving space."  (Dkt. 1294-9 at 8 (emphasis added).)

Judge Corley ordered Waymo to answer Interrogatory 18 and produce documents for the seven acquisitions identified by Uber in response to Request 170 and 172.  (Dkt. 1276 at 2.)

Waymo argues that these transactions are irrelevant because "Waymo does not intend to offer evidence of the seven transactions" at trial.  (Dkt. 1289 at 3.)  This fundamentally misunderstands the purpose of discovery: ***Uber*** may very well wish to offer evidence of these transactions at trial, and just because Waymo does not intend to rely on these seven transactions does not mean they are irrelevant to the case.  (*See* Dkt. 1188 at 2 (rejecting Uber's argument to limit discovery on issue on which Uber will not argue because "Waymo remains entitled to present its own version of the story").)  Specifically, Waymo intends to argue at trial that "the Otto acquisition was unusual." (Dkt. 1289 at 3.)  Discovery into Waymo's and Google/Alphabet's acquihire transactions and due diligence practices is relevant to Uber's defense against the conspiracy theories Waymo intends to present to the jury, alleging that the steps Uber took in connection with acquiring Ottomoto were done to "coverup" Levandowski's alleged "theft" of 14,000

1  Waymo files and to "steal" Waymo's trade secrets.  (Dkt. 756 at 1, 5-6.)  Waymo also argues that

2  "Uber has made *no* attempt to show that" these deals included "forensic due diligence or

3  indemnity."  (Dkt. 1289 at 4.)  Of course, without the requested discovery Uber doesn't know

4  whether these transactions included forensic due diligence or indemnity, and the requested

5  discovery would be relevant to a showing of the typicality of such investigations even if they did

6  not.  Limiting the request to "Waymo's acquisitions" is a red herring.  ███████████

7  ███████ ; indeed it has only existed for less than a year.  (Liu Decl., Ex. 1 at 169:2-

8  6).  Limiting the request to acquisitions in the self-driving space is also unnecessarily narrow;

9  ████████████████████████████████████ (Liu Decl., Ex. 1 at 169:12-21),

10  and Google/Alphabet's practices in connection with its other acquisitions are just as relevant.

11      Uber cannot make a showing about Google's acquisition and diligence practices when

12  Waymo has refused discovery on the issue.  Since Waymo has prevented Uber from taking

13  discovery on these issues during fact discovery, the Court should prohibit Waymo from arguing at

14  trial that there is anything improper or unusual about (1) acquiring a company for its talent or

15  employees, or acquiring a company without commercialized products or tangible assets; (2)

16  recruiting or hiring employees from competitors; and (3) the processes, procedures, and protocols

17  used by Uber in connection with acquiring Ottomotto.  Absent such an order, Uber asks the Court

18  to affirm Judge Corley's order.

19  **B.  Efforts to Protect Confidentiality and Secrecy: Interrogatory No. 19 and Request No. 173.**

20      Uber's Interrogatory No. 19 asks Waymo to describe its efforts "to maintain the

21  confidentiality. . . of any transaction contemplated."  (Dkt. 1294-3 at 5-6.)  Uber's Request No.

22  173 asks Waymo to produce documents "relating to any efforts . . . to maintain the confidentiality

23  . . . of any aspect of any transaction contemplated . . . by Waymo."  (Dkt. 1294-9 at 8.)  In

24  response, Waymo described its general steps to protect confidentiality and refused to produce

25  documents in response to Request 173 on relevance.  (Dkt. 1294-3 at 6; Dkt. 1294-9 at 8.)

26      Judge Corley ordered Waymo to answer Interrogatory No. 19 and produce documents in

27  response to Request No. 173, both only with respect to the seven acquisitions listed above.  (Dkt.

28  1276 at 2.)  "By finding that Uber was entitled to the requested documents to develop its defense

against Waymo's claims for damages and injunctive relief, Judge Corley indicated the necessity of said documents to Uber's case." (Dkt. 1132 at 3.)

Despite Judge Corley's finding, Waymo renews its relevance argument to this Court. (Dkt. 1289 at 4.) However, Waymo has argued that Uber's efforts to maintain the confidentiality of its acquisition of Otto were part of a scheme to steal Waymo's confidential information and trade secrets. (*See* Dkt. 756 at 6 (arguing that Uber's "went to great lengths to shroud the acquisition and the due diligence process in secrecy," and its confidentiality efforts and common interest agreement in connection with the Ottomotto acquisition are "evidence of a coverup").)

Since Waymo wants to avoid discovery on these issues, the Court should prohibit Waymo from arguing at trial that Uber's efforts to maintain the confidentiality of the Ottomotto acquisition were a "coverup." (*See* 7/6 Order, Dkt. 808 at 2 (ordering production of documents because Waymo refused to stipulate that it would not argue Levandowski violated Google's side business policies).) Absent that, Uber requests that the Court affirm Judge Corley's order.

**C. Alleged Use of the 14,000 Files: Interrogatory No. 25**

Uber's Interrogatory No. 25 asks Waymo to identify "every fact that you have obtained or learned during discovery in this case that you contend shows use by Uber of any of the 14,000 files that you claim were improperly downloaded by Anthony Levandowski." (Dkt. 1294-5 at 5.) Waymo's response incorporates by reference its answer to Uber's Interrogatory No. 1 (which asked Waymo to identify the facts that show use by Uber of alleged trade secrets), and purports to set forth "additional facts." (*Id.*) But most of these "facts" are unsupported inferences and argument. For example, Waymo states that Ottomotto developed LiDAR "with the benefit of the 14,000 misappropriated files" because the company operated out of Mr. Levandowski's house for a time. (*Id.* at 5-6.) Judge Corley observed that "Waymo has provided a few facts in response," and "despite Waymo's numerous on-premises inspections of Uber and its servers, it does not identify any Uber technology that reflects that Uber used the files Mr. Levandowski allegedly took." (Dkt. 1276 at 3.) "Accordingly, Waymo is bound by its response." (*Id.*)

Waymo attempts to avoid Judge Corley's order by arguing that she must have ignored the fact that Waymo's answer incorporated its answer to Interrogatory No. 1. Nonsense. Waymo

made this argument to Judge Corley and she rejected it.  (*See* Dkt. 1237-4 at 3.)  As Judge Corley undoubtedly recognized, Waymo continues to improperly use the 14,000 files as a proxy for its nine elected alleged trade secrets.  Waymo has deprived Uber of the ability to take discovery and question witnesses on any overlap between 14,000 files and the operative trade secrets.  Waymo should be prevented from arguing anything about the 14,000 files to the jury other than the "few facts" listed in its response to Interrogatory No. 25, as set forth in Judge Corley's order.

### D. Conflicts with Mr. Levandowski: Request No. 166

Uber's Request No. 166 asks Waymo to produce documents "concerning any complaints, arguments, disputes, conflicts, and evaluations (both positive and negative) related to Anthony Levandowski." (Dkt. 1294-7 at 5.)  Judge Corley ordered Waymo to "search the emails of the four individuals who have or will testify on this topic" and produce those documents.  (Dkt. 1276 at 3.)  She ordered that if documents were produced after those custodians' depositions, "Waymo must make the deponent available for further deposition at Waymo's cost." (*Id.*)

In its motion, Waymo states that it already searched the emails of Chelsea Bailey and Stacey Sullivan and agrees to search the emails of Joanne Chin and Jolie Sorge, but "requests confirmation that Uber is not entitled to a second full-day deposition of either unless documents bringing new issues to light are located in their custodial files." (Dkt. 1289 at 3.)

Under Judge Corley's order, Uber has the opportunity to take additional depositions of these custodians if Waymo produces documents after their respective depositions.  Judge Corley did not limit her order to the standards unilaterally volunteered by Waymo, and Waymo has not met and conferred about these issues or sought clarification from Judge Corley.  Accordingly, Uber requests that this Court affirm Judge Corley's order with respect to Request No. 166.

### III.  CONCLUSION

Uber respectfully requests that this Court affirm Judge Corley's order.

| | | |
|---|---|---|
| 1 | Dated: August 24, 2017 | MORRISON & FOERSTER LLP<br>BOIES SCHILLER FLEXNER LLP |
| 2 | | |
| 3 | | By: */s/ Karen L. Dunn* |
| 4 | | KAREN L. DUNN |
| 5 | | Attorneys for Defendants |
| 6 | | UBER TECHNOLOGIES, INC. and<br>OTTOMOTTO LLC |