August 24, 2017

Magistrate Judge Jacqueline Scott Corley

USDC, Northern District of California

By ECF Filing

*Re:  Waymo LLC v. Uber Technologies, Inc.*, et al., Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Third party Anthony Levandowski submits this brief in opposition to the relief requested in Waymo's August 24, 2017 letter brief, Dkt. 1329.

Respectfully submitted,

*/s/ Miles Ehrlich*

Miles Ehrlich

RAMSEY & EHRLICH LLP

*Counsel for Non-Party Anthony Levandowski*

cc: Counsel of record (via ECF); Special Master John Cooper

# I. PROTOCOL FOR ADDRESSING PRIVACY AND PRIVILEGE CONCERNS

As this Court is aware, plaintiff Waymo LLC subpoenaed Stroz Friedberg, LLC for various records including, *inter alia*, all documents provided by Anthony Levandowski to Stroz. *See* Dkt. 670; Dkt. 570-1. Mr. Levandowski intervened and resisted the subpoena primarily on the ground that it sought records protected by Mr. Levandowski's Fifth Amendment, common interest, and attorney-client privileges. *See* Dkt. 583 & 652. This Court overruled those objections, *see* Dkt. 670, and the dispute made its way to the Federal Circuit, *see* Dkt. 745; Fed. Cir. Case No. 2017-2253.

In resolving Mr. Levandowski's privilege claims, this Court reserved for later decision a separate issue; namely, how to protect the Diligenced Employee's significant privacy and privilege interests in the material collected Stroz. In connection with Stroz's due diligence efforts, Mr. Levandowski was required to provide Stroz with virtually every shred of his personal, professional and business life that was ever held in electronic form—the protocol required Mr. Levandowski to provide access to his electronic devices, social media accounts, internet-based storage accounts, and email accounts. Dkt. 882-3  Such materials would of course include private information entirely irrelevant to the instant lawsuit—such as personal photographs, intimate emails with loved ones, financial information, communications and documents from long before the period at issue in this lawsuit, confidential business information of unrelated enterprises and various other private matters, some of which might additionally implicate the privacy or confidentiality interests of people or entities other than Mr. Levandowski.[1] The records at issue also include communications subject to entirely separate and pre-existing attorney-client and attorney work product privileges. Waymo's subpoena, however, purports to compel the production of *all* of this material, without exception. *See* Dkt. 570-1.[2] Mr. Levandowski duly objected to the unnecessarily broad scope of the requests, Dkt. 583 at 8; Dkt. 652 at 3, and this Court ordered that this objection would have to be resolved once the privilege issues were decided, Dkt. 670 at 9.

Given the potential for an adverse ruling from the Federal Circuit, beginning on August 14, 2017, the next business day following oral argument at the Federal Circuit, Mr. Levandowski's counsel has encouraged the parties to develop a protocol to efficiently identify and stage for production all relevant records from amongst the corpus of materials Mr. Levandowski originally provided to Stroz, and to do so in a way that would not impair his legitimate privacy and pre-existing attorney-client privilege protections. To this end, Mr. Levandowski repeatedly asked Waymo to provide a list of search terms to be used in this process, or to agree to allow Stroz to use the terms Waymo previously provided. *See, e.g.,* Dkt. 1329-1 at 2-4. Waymo has refused.

Rather, Waymo has insisted throughout that it must be permitted unfettered access to all of the materials Mr. Levandowski provided to Stroz, whether relevant or not. And Waymo suggests a protocol under which its own attorneys would access and review any communication, picture, video, document—or any other file—they wished to see, and then designate items for "production," giving Mr. Levandowski a chance at that point to propound objections. Dkt. 1329

---

[1] As discussed in prior briefing, under the California constitution, people have a privacy right to prevent disclosure of matters relating to their personal lives, financial affairs, political affiliations, medical history, sexual relationships and other such confidential information. Dkt. 652 at 3.

[2] Waymo's subpoena demands, among other things "[t]he forensic data underlying the 'forensic analysis' [Stroz] did in connection with the August 5, 2016 due diligence report" (Request 12).

at 1.  Such a procedure would be improper, and, as a practical matter, entirely unworkable.

<u>Relevancy and Privacy</u>.  The mere filing of a lawsuit does not give a plaintiff the unfettered right to forage through another person's belongings in search of interesting tidbits—especially where the target of the discovery is not even a party to the case.  Our discovery system is predicated on the principle that litigants may seek only "matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. Pro. 26(b)(1).  Thus, as a general matter, parties are not permitted simply to demand access to a discovery target's computer devices.  *See, e.g., Boston Scientific Corp. v. Lee*, No. 5:14-mc-80188-BLF-PSG, 2014 U.S. Dist. LEXIS 107584 at *20 (N.D. Cal. Aug. 4, 2014) (granting motion to quash as "[t]he risks attached to forensic imaging are simply too great to permit such unchecked discovery").  And even in cases in which courts deem that a party should have some such direct access, the courts are careful to fashion a protocol that appropriately protects the target litigant's privacy interests.  *See Advante Int'l Corp. v. Mintel Learning Tech.*, No. C 05-01022 JW (RS), 2006 U.S. Dist. LEXIS 86334 at *3 (N.D. Cal. Nov. 21, 2006) ("[E]ven in a case where imaging of an opposing party's hard drives might be warranted, such an inspection would not be permitted absent an examination protocol that would protect the other party's legitimate privacy and other interests." (quotation marks omitted)); *Ingrid & Isabel, LLC v. Baby Be Mine*, LLC, No. 13-cv-01806-JCS, 2014 U.S. Dist. LEXIS 45727 at *34 (N.D. Cal. Apr. 1, 2014) (same).  Indeed, even where a court has issued a search warrant on the basis that there is probable cause to believe a person's computer systems may contain evidence of a crime, it is still incumbent on the court (and law enforcement) to ensure that only *relevant* material is taken.  *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1175-77 (9th Cir. 2010) (en banc).

Waymo's proposed protocol turns the relevance and privacy limitations on their heads.  As discussed, the federal civil discovery rules do not permit litigants simply to rummage through the entirety of a third-party witness's electronic life.  Yet Waymo's subpoena makes no effort to confine its demands to relevant materials.  And Waymo's newly-proposed protocol would simply formalize the opportunity to fish around without restraint.  The chance to lodge a *post hoc* "objection" does nothing to cure the initial problem—which is that opposing counsel has been permitted to review, and intrude upon, private and irrelevant information in the first place.

Waymo tries to justify its extraordinary demand by asserting that the Diligenced Employees "have already shared all of this material with a third party (Stroz)."  Dkt. 1329 at 2.  But Waymo's argument ignores the fact that Stroz was *never* given unfettered access to the materials in question.  The record shows that Stroz agreed to a strict protocol that governed its review of the Diligenced Employees' materials.  *See* Dkt. 882-3 at 4 and 882-2 at 4.  In particular, Stroz screened out privileged material and provided that Stroz would use approved search criteria to identify "relevant documents." *Id.*  Waymo should not be permitted to scrutinize materials outside the scope of Stroz's tailored review.

<u>Attorney-Client Communications</u>.  Waymo demands access to all of Mr. Levandowski's electronic files, including all of Mr. Levandowski's attorney-client communications and private correspondence. Even if the Federal Circuit affirms this Court's ruling with respect to the absence of a common-interest privilege, that holding does not mean that Mr. Levandowski can no longer assert his attorney-client privilege and work product protection with respect to communications on other, earlier legal matters that are housed on his devices, but which have never been knowingly disclosed to anyone.

To be clear – the privilege at issue here is not the common-interest privilege pending before the Federal Circuit, nor Mr. Levandowski's Fifth Amendment privilege. Rather, it is Mr. Levandowski's privileged communications with his personal attorneys on matters that pre-dated the Stroz investigation, not communications that involved attorneys for Uber or Ottomotto regarding the acquisition. While this Court has ruled that no common-interest privilege existed before April 11, 2016, that ruling (if affirmed by the Federal Circuit) in no way entitles Waymo to the entirety of Mr. Levandowski's attorney-client privileged communications with his personal counsel, simply because those communications are accessible through devices in Stroz's possession

The Legal Standard:  Federal common law governs a claim of privilege in federal question cases. *Weil v. Inv./Indicators, Research and Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).  Under federal common law, there are two ways in which the attorney-client privilege can be waived: voluntary or inadvertent disclosure.  Neither applies here. Mr. Levandowski (1) never disclosed those communications to anyone, and (2) never knowingly and willfully waived his privilege.

    1.  Mr. Levandowski never voluntarily disclosed his privileged communications

Voluntary disclosure is simply defined as voluntarily disclosing or offering or producing privileged communications to a third party without objection.  *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) (attorney-client privilege waived when client authorized law firm to send attorney-client communications to the SEC); *United States v. Mass. Inst. of Tech., 129 F.3d 681, 684-87* (1st Cir. 1997) (attorney-client privilege waived when a government contractor produced documents to the Defense Department's audit agency).

Whether the claimant has waived the privilege is a fact-specific inquiry.  *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993). Courts ask whether a party intended to provide third parties access to his or her confidential attorney-client communications in determining whether disclosure was voluntary.  *In re Royce Homes, LP*, 449 B.R. 709, 743 (Bankr. S.D. Tex. 2011) (citing *Alpert v. Riley*, 267 F.R.D. 202, 210 (S.D. Tex. 2010) (concluding that there was no evidence that defendant "intended" to make information on a computer available to third parties).

Here, the record shows that Mr. Levandowski never intended to provide third parties access to his confidential attorney-client communications.  While he did provide devices to Stroz, he did so with the understanding, agreed to in writing by Stroz's co-founder and president, that Stroz would screen out all of Mr. Levandowski's attorney-client privileged communications before undertaking its review.  *See* Dkt. 882-3 at 4, n.1, and 882-2 at 4.  And that is what Stroz did. *See* Declaration of Eric Friedberg, Docket No. 882-1, ¶ 7.  As is commonplace in the modern world of electronic discovery, Mr. Levandowski provided a list of his personal attorneys to Stroz, and Stroz used those terms to electronically isolate any privileged conversations from its review. *See* Docket No. 882-2 at 4.  As a result of the steps Mr. Levandowski took to safeguard his privilege, Mr. Levandowski's communications were never in fact disclosed, and thus the privilege remains intact.[3]  *In re Royce Homes*, 449 B.R. at 724 (recognizing that only "disclosure inconsistent with an intent that communications remain confidential waives the privilege.")

Waymo's proposal, if granted, would unlawfully breach the privilege Mr. Levandowski has

---

[3] If the Court believes there is a question as to whether Mr. Levandowski has waived his attorney-client privilege, Mr. Levandowski requests an evidentiary hearing and/or the opportunity to submit additional evidence that could not be provided within the 24-hour turnaround time provided for this briefing.

taken pains to safeguard. Waymo's proposal takes no measure to protect Mr. Levandowski's privilege; instead it calls for a procedure by which counsel could only object *after* the material had already been reviewed and produced to Waymo. Dkt. No. 1329 at 1. By then, the protections of the privilege will have been eviscerated.

This Court should not allow Waymo to rifle through years-worth of Mr. Levandowski's privileged communications based on this Court's narrow (and entirely unrelated) ruling that a common-interest privilege did not exist in pre-April 11, 2016 communications regarding the potential acquisition of Ottomotto and Otto Trucking by Uber Technologies.

2. Mr. Levandowski never inadvertently disclosed his privileged communications

To the extent that Waymo argues that Stroz's mere possession of devices that house Mr. Levandowski's privileged communications constitutes inadvertent waiver, that argument also fails. "Involuntary disclosures do not automatically waive the attorney-client privilege." *In re Pac. Pictures Corp.*, 679 F.3d at 1130; *see also United States v. de la Jara*, 973 F.2d 746, 749-50 (9th Cir. 1992). Involuntary disclosures include "[c]ommunications which were intended to be confidential but are intercepted despite reasonable precautions." J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 503(a)(4)[01] at 503-31 (1982 ed.) (hereinafter Weinstein & Berger); *see also Resolution Trust Corp. v. Dean*, 813 F. Supp. 1426, 1429 (D. Ariz. 1993) (holding that unauthorized disclosure of internal memo subject to strict confidentiality restrictions did not waive attorney-client privilege) ; *In re Dayco Corp. Derivative Sec. Litig.,* 102 F.R.D. 468, 470 (S.D. Ohio 1984) (holding that privilege was not waived for unauthorized disclosure of employee's diary maintained at direction of outside counsel where employer limited access to the diary to senior executives, counsel and accountants).

At every turn, Mr. Levandowski has timely moved to protect his privileges. Before providing any materials to Stroz, he ensured that they agreed to a protocol that limited their access and walled off his privileged communications. And in this litigation he has consistently raised his Fifth Amendment, attorney-client, and common-interest privileges with respect to the materials housed at Stroz. And when the Court ruled against the common-interest privilege, he immediately raised the need to protect his separately-privileged communications from disclosure. And here again, he raised this issue with the parties and Special Master Cooper in order to resolve it in the event the Federal Circuit affirms this Court's common interest privilege ruling.

Suggested Protocol. Mr. Levandowski is mindful of the extreme time pressures on the parties in this case. For this reason, immediately after the oral argument in Washington, D.C., he was proactive in reaching out to the parties on August 14, 2017 to discuss an appropriate protocol to govern the production of the Stroz materials, should the Federal Circuit affirm. Dkt. No. 1329-1 at 7. We repeatedly made ourselves available for meet and confer teleconferences on this issue. On the meet-and-confer calls, we described how our proposal, which is laid out in detail in our email of August 21, 2017, is designed to put Stroz in a position to quickly produce relevant, responsive materials, if a ruling from the Federal Circuit requires it. *Id.* at 2-3.

What we propose is applying Waymo's own search terms—more than 14,106 in total—to Stroz's database in order to identify the materials for production. Waymo designed these terms to capture any "Misappropriated Materials" in Mr. Levandowski's possession. Mr. Levandowski's proposal also invites Waymo to propose additional terms designed to collect relevant and

responsive materials. In keeping with normal civil discovery norms, Mr. Levandowski would apply Waymo's terms, then weed out false positives and screen for any materials protected by his personal attorney-client privilege or privacy interests. The remaining documents could then be produced immediately by Stroz. This process could be completed in a matter of days. And under the protocol, Stroz would produce materials with their metadata intact and video and graphic files in native form so that they could be readily reviewable.

By contrast, Waymo's proposal is unworkable. Despite its own acknowledgement that it anticipates the need to search "over **100** devices and literally **hundreds of terabytes** of data," Waymo proposes that it will be able to quickly inspect such data, inform Stroz of documents it "would like printed and produced," and that Stroz could then circulate the designated "to all relevant parties and non-parties," to allow "counsel for the Diligenced Employees . . . the opportunity to object to that production." Dkt. 1329 at 2. It is simply not feasible that the above steps could be accomplished in a short amount of time. Even if Waymo is willing to finance an army of attorneys to identify documents "it would like printed and produced," the Diligenced Employees, all of whom are non-parties, cannot be expected to fund the matching army of lawyers it would take to review the identified materials or else forfeit any privilege or privacy rights therein.

Further, Mr. Levandowski's proposed protocol would be able to be implemented immediately, as we are awaiting the ruling, so that Stroz can be in a position to produce a vast quantity of responsive documents immediately upon an order from the Federal Circuit. Waymo's proposal, in comparison, cannot be initiated until the appeal is decided.

Materials Never Reviewed By Stroz: Waymo's proposal would also allow it access to materials never "imaged, processed, or reviewed by anyone at Stroz." Dkt. 1329 at 1. There is no justification for allowing Waymo to review these materials. Further, to the extent Stroz collected devices from Mr. Levandowski that it never analyzed, there is a question as to whether Waymo's subpoena calls for their production. Waymo demands "[t]he forensic data underlying the 'forensic analysis' [Stroz] did . . ." (Request 12). That request is clearly not applicable to material that was never analyzed. Similarly, Waymo requests "original materials provided by Client or Uber or Ottomotto, to Stroz Friedberg" (Request 30). But Mr. Levandowski is not the defined "Client" and thus that request is not applicable. Dkt. 882-2, Exhibit A at p. 2

## II.     AUGUST 22, 2017 EMAIL FROM STROZ COUNSEL

On August 22, 2017, Stroz's counsel wrote an email to Waymo's counsel disclosing privileged information subject to the appeal before the Federal Circuit. Until the Federal Circuit rules, Mr. Levandowski's Fifth Amendment privilege stands. Stroz was not entitled to waive Mr. Levandowski's privilege. Dkt. 1311 at 2; Dkt. 1248 at 1; *U.S. v. Gonzalez*, 669 F.3d 974, 982 (9th Cir. 2012); *See, e.g., Heriot v. Byrne*, 257 F.R.D. 645, 658-60 (N.D. Ill. 2009) (unauthorized disclosure by vendor deemed inadvertent). And application of Rule 502(b) demonstrates Stroz's inadvertent disclosure does not constitute a waiver. Immediately upon reviewing the email, Mr. Levandowski's counsel notified the recipients of the email and sought clawback. Dkt. 1329-2. Accordingly, the Court should order Waymo to delete all copies of Stroz's email, and that the email may not be further employed by any party.