QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S LIST OF DEFENDANTS' DISCOVERY MISCONDUCT**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

Pursuant to the Court's order at the July 26 hearing, Plaintiff Waymo LLC ("Waymo") submits this list of up to "two dozen acts" of discovery misconduct by Defendants that Waymo may request be introduced to the jury. (7/26/17 Hearing Tr., 72:11-14.) Because discovery is not yet complete, the parties await the Federal Circuit's ruling on Waymo's motion to compel production of the due diligence report and documents responsive to the Stroz subpoena, other discovery issues remain pending, more misconduct may be identified and/or become more relevant/significant as issues evolve, this list is not complete and subject to supplementation and amendment.

1. Uber was aware that as of March 2016, Levandowski had in his possession five disks of Google confidential information that he then destroyed. Uber did not disclose that to Waymo in the litigation until June 5, 2017, despite such information being responsive to at least the Court's March 16, 2017 order requiring Defendants and their attorneys to disclose any destruction of downloaded materials that they were aware of by March 31, 2017.

2. Uber's counsel did not disclose that, since March 2017, they have had access to certain downloaded materials through a third-party discovery vendor (Epiq) that they employed to archive client documents, despite such information being responsive to the Court's March 16 order requiring Defendants and their attorneys to report on and return the downloaded materials by March 31, as well as the Court's May 11 order requiring the parties to report on and return the downloaded materials by June 23, 2017. Epiq continues to be Uber's counsel's discovery vendor, and Uber's counsel continues to have access to the review database.

3. Uber's counsel did not disclose the existence of another set of downloaded materials in their possession until July 12, 2017, despite such information being responsive to the Court's March 16 order requiring Defendants and their attorneys to report on and return the downloaded materials by March 31, as well as the Court's May 11 order requiring the parties to report on and return the downloaded materials by June 23, 2017.

4. Uber's vendor (Stroz) has had access to certain downloaded materials since 2016. Despite such information being responsive to the Court's March 16 order requiring Defendants and their attorneys to report on and return the downloaded materials by March 31, as well as the Court's May 11 order requiring the parties to report on and return the downloaded materials by

June 23, 2017, Uber did not take steps to cause its vendor to return the downloaded materials. Stroz continues to work with Uber and its attorneys and is retained by Uber's counsel to assist in this litigation.

5. As recently, as August 22, two days before the close of discovery, it was revealed that Uber's vendor, Stroz, had in its possession "numerous" other devices from the Diligenced Employees that it never searched (during the "due diligence" process or otherwise) and had never previously disclosed to Waymo or the Court.

6. Defendants did not produce Uber-Otto acquisition documents until they wanted to affirmatively use them to support arguments made in briefs and then produced them in heavily redacted form. For example, Defendants redacted key provisions from these documents, such as Uber's agreement to indemnify Levandowski and Lior Ron for "Bad Acts."

7. The Court's May 11 order required Defendants to prepare and serve on Waymo by June 23 "a complete and chronological log of all oral and written communications . . . wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier, or consultant of defendants." Uber has violated that order in several respects. For example, Uber has supplemented its log on four separate occasions: June 27, June 30, July 3, and July 19, with the number of entries increasing from 561 (in the log provided by the Court's June 23 deadline) to 1086 (in the log provided on July 19). Since Uber's most recent supplemental log, Uber has produced documents showing additional LiDAR-related communications between Mr. Levandowski and Uber employees that are not disclosed on the log, such as UBER00236495 (11/16/2016 text message from Mr. Levandowski to Eric Meyhofer pertaining to LiDAR, produced by Uber on August 17) and UBER00301268 (6/21/2016 text message from Mr. Levandowski to Don Burnette pertaining to LiDAR, produced by Uber on August 23).

8. Otto Trucking has also violated the May 11 Order. Otto Trucking supplemented its log once, on August 18, after being directed to do so at the August 16 hearing on Waymo's Motion for an Order to Show Cause.

9. Uber withheld the retainer agreement and side-letter agreements with Stroz as privileged until Uber affirmatively wanted to use that document to support an argument in one of its briefs.

10. Defendants withheld the Stroz due diligence report conducted in connection with the Uber-Otto acquisition, claiming it was privileged without a clear identification thereof in its privilege log. Waymo has still not obtained a copy of that report.

11. Defendants hid the name of the vendor (Stroz) that conducted the due diligence investigation until required by the Court to disclose it.

12. Along with the Stroz report, Defendants withheld over 3,000 documents referring to the downloaded materials as privileged.

13. Defendants' numerous privilege logs have not identified documents with the detail as required by the Court. Defendants have repeatedly sought to justify privilege claims as logged with no corresponding support in the privilege logs, which is improper.

14. The Court's May 11 order required Defendants to provide by June 23 a "detailed accounting under oath setting forth every person who has seen or heard any part of any downloaded materials, what they saw or heard, when they saw or heard it, and for what purpose." Defendants violated that order by not providing a complete accounting by that date. Uber has supplemented its accounting on three separate occasions to address numerous improper omissions: June 28, July 20, and August 13, with the length of the accounting increasing from 6 pages (in the accounting provided by the Court's June 23 deadline) to 10 pages (in the accounting provided on August 13).

15. As of March 29, 2017, Uber purports to be aware that Levandowski downloaded the "downloaded materials" and subsequently destroyed them, but Uber did not disclose that to Waymo or the Court until August 4, despite such information being responsive to at least the Court's March 16 order requiring Defendants and their attorneys to disclose any destruction of downloaded materials that they were aware of by March 31, 2017, Waymo's Expedited Interrogatory No. 1, and other discovery.

16. As of March 29, 2017, Uber purports to be aware that Levandowski downloaded the "downloaded materials" and his alleged reason for doing so in relation to his bonus, but Uber did not disclose this theory in the litigation until June 28, despite having a June 21 deadline to identify witnesses with knowledge relevant to the parties claims and defenses and the Court's Order to identify Defendants' intentions to waive privilege.

17. On May 11, 2017, the Court ordered Defendants to make available for inspection to Waymo Defendants' "ongoing LiDAR work," including emails. On May 30, Waymo asked to inspect text messages between Travis Kalanick and Anthony Levandowski. Defendants did not produce text messages sent from Travis Kalanick to Anthony Levandowski until August 1, and did not produce more than 12 text messages from Travis Kalanick on that date.

18. Although Uber purports to have anticipated litigation against Google by no later than February 2016, and Travis Kalanick and Anthony Levandowski frequently corresponded via text messaging, Travis Kalanick set his text messages to automatically delete after 30 days, permanently destroying an unknown volume of highly relevant evidence.

19. Although Waymo served an expedited interrogatory on May 22 seeking information regarding ownership of Tyto LiDAR, Uber did not disclose that Levandowski (through an elaborate structure of shell companies and trusts, designed to conceal his involvement) owned and controlled Tyto LiDAR. Tyto LiDAR was acquired by Otto and ultimately Uber. Uber's independent development theory as to certain of the asserted trade secrets is based upon alleged development by Otto engineers who previously worked at Tyto LiDAR, the company that Mr. Levandowski owned and controlled but whose involvement was concealed by Uber.

20. Defendants produced large volumes of documents on the eve of the close of discovery, from previously deposed witnesses including Brian McClendon, Eric Meyhofer , and Don Burnette. Some of these documents appear to be what Defendants contend will corroborate their theory as to why Levandowski downloaded the "downloaded materials." Waymo continues to investigate this issue and meet and confer with Defendants in relation thereto.

21. Defendants claim that Anthony Levandowski refused to cooperate with Uber in this case, but blocked Waymo's attempts to obtain discovery on the extent of that lack of cooperation on the basis of privilege.

22. Although Anthony Levandowski is a shareholder and member of Otto Trucking, Otto Trucking refused to search his documents or ask him for information in response to Waymo's discovery requests, regardless of whether the information sought was incriminating. Yet, Levandowski has been available to Otto Trucking's counsel to provide guidance on legal strategy and facts and obtaining evidence. Otto Trucking did not disclose those facts or evidence to Waymo in a timely manner.

23. Otto Trucking's counsel referenced evidence in two depositions this week which has not been produced to Waymo, and refused to explain to Waymo where Otto Trucking obtained such evidence. When Waymo pressed for this information, Levandowski's separate counsel produced text messages on August 24 which make clear that Levandowski obtained the evidence at issue in late July, but did not disclose it to Waymo and still has not produced it to Waymo.

DATED: August 24, 2017    QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ David A. Perlson*
David A. Perlson
Attorneys for WAYMO LLC