QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 1276)**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

01980-00104/9511828.1

## I. THE MAGISTRATE'S ORDER REGARDING INTERROGATORY NO. 25 WAS CLEARLY ERRONEOUS TO THE EXTENT IT IGNORED WAYMO'S RESPONSE TO INTERROGATORY NO. 1

As explained in Waymo's Motion for Relief, Waymo's objection to the Magistrate's Order regarding Interrogatory No. 25 is narrow and ***should*** be moot. Interrogatory No. 25 and Interrogatory No. 1 overlap significantly, and the Magistrate may have overlooked Waymo's Interrogatory No. 1 response (which Waymo expressly incorporated into its Interrogatory No. 25 response) when the Magistrate stated that Waymo "does not identify any Uber technology that reflects that Uber used the files Mr. Levandowski allegedly took." (Order at 3:9-10.) The Magistrate then stated: "If Waymo does intend to offer such facts they need to be in its Interrogatory response" (*id.* at 3:11), apparently referring to Waymo's then-existing Interrogatory 25 response without considering the Interrogatory No. 1 response incorporated therein.

In an abundance of caution, Waymo has now updated its Interrogatory No. 25 response to include the full text of its Interrogatory No. 1 response. Thus, even under the restrictive terms of the Magistrate's Order, Waymo has now complied with that Order and should be allowed to use any facts disclosed in the latest version of the Interrogatory No. 25 response to support its contention that Uber used the files Levandowski took. Indeed, Defendants' Opposition nowhere denies that Waymo's Interrogatory No. 1 response provides the very information that Defendants seek.

Nonetheless, Defendants' Opposition tries to pretend the Interrogatory No. 25 response does not include the Interrogatory No. 1 response that Waymo incorporated by reference. (*See* Opp. at 5:4-6.) There is no basis for this sort of litigation gotcha when there has been full disclosure of the very facts Uber sought to compel. For example, with respect to asserted Trade Secret No. 96, Waymo's response to Interrogatory No. 1 explains that "the Fuji device includes printed circuit boards that incorporate design information contained in or derived from files downloaded by Anthony Levandowski on December 11, 2015," and lists the exact folder path showing where these files were located. The response then identifies specific evidence demonstrating that Uber uses information contained in or derived from the stolen files, including Fuji design schematics, images of the Fuji device, and a third party production from Uber's circuit

board vendor. (Dkt. 1174-5 (Fourth Supplemental Objections and Responses) at 25.) Waymo's response to Interrogatory No. 1 identifies the same level of detailed evidence for each of trade secrets that use information contained from the 14,000 design files that Mr. Levandowski stole. (*Id*. at 7-8 (No. 2), 21 (No. 7), 23-24 (Nos. 14, 90).)[1] These responses indisputably provide information that is responsive to Uber's Interrogatory No. 25, and it is dishonest for Uber to pretend they don't exist.

Also meritless is Defendants' argument that Waymo is "us[ing] the 14,000 files as a proxy for its nine elected trade secrets." (Opp. at 5:2-3.) Waymo has never alleged that the 14,000 files and the trade secrets are coterminous, nor does Waymo need to make this showing. In other words, Waymo does not need to show that all 14,000 files are being used in order to show use of Waymo's trade secrets. But as explained above, several of Waymo's trade secrets are disclosed in certain of the 14,000 files, and Defendants' use of those trade secrets shortly after Mr. Levandowski stole the files and began working for Defendants raises a strong inference that Defendants acquired those trade secrets through the stolen files.

In any event, the Magistrate's Order stated: "If Waymo does intend to offer such facts they need to be in its Interrogatory response." (Order at 3:10-11.) Waymo has now updated that Interrogatory response—its Interrogatory No. 25 response—to include verbatim all the information in its Interrogatory No. 1 response that Uber already had. Thus, Waymo can use any facts or resulting inferences disclosed in its latest version of the Interrogatory No. 25 response to support its contention that Uber used the Levandowski files. Out of an abundance of caution, Waymo simply seeks an order from the Court formally confirming this point.

Finally, to the extent the Magistrate meant to hold Waymo to its original Interrogatory No. 25 response and preclude any information not in the original Interrogatory No. 25 response, such a preclusion order would be clearly erroneous because the Magistrate did not even purport to conduct a preclusion analysis under Rule 37(c)(1). Rule 37(c)(1) expressly states that preclusion

---

[1] Waymo has continued to supplement these responses to identify additional evidence showing Uber's use of the stolen files.

is inappropriate for a discovery violation that was "substantially justified" or "harmless." Here, Waymo was substantially justified in incorporating by reference its Interrogatory No. 1 response into its Interrogatory No. 25 response. Indeed, incorporation-by-reference is a standard if not ubiquitous practice in written discovery. Likewise, any alleged failure to properly incorporate the Interrogatory No. 1 response into the Interrogatory No. 25 response was "harmless" because Defendants possessed the relevant information through the Interrogatory No. 1 response itself.

The caselaw factors that courts use to gauge the propriety of Rule 37(c)(1) preclusion also cut sharply against any preclusion here. These factors include "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). Here, Defendants suffered no prejudice because they possessed all the relevant information by virtue of Waymo's Interrogatory No. 1 response. There is no risk of trial disruption. And Waymo did not engage in any bad faith or willfulness when it incorporated its Interrogatory No. 1 response into its Interrogatory No. 25 response. It follows that there should be no preclusion.

## II. THE MAGISTRATE CLEARLY ERRED IN ORDERING DISCOVERY REGARDING SELECT GOOGLE ACQUISITIONS (INTERROGATORY NOS. 18 AND 19 AND RFP NOS. 170, 172, AND 173)

There is no basis for Defendants to obtain intrusive discovery into Google's acquisitions of unrelated third-party companies, just because Waymo plans to present evidence that the terms of the Uber-Otto acquisition were highly unusual. If Defendants wish to rebut Waymo's evidence and portray the terms of the Uber-Otto acquisition as standard operating procedure, there are several avenues by which Defendants can do so. They can present expert testimony on standard mergers-and-acquisitions (M&A) practice, they can introduce scholarly literature on this topic, etc. But seeking highly intrusive discovery into a few select Google acquisitions would have little to no relevance for proving what sorts of terms and conditions are standard in the M&A world. And weighed against this marginal (if any) relevance, it would be extremely burdensome for Google to divulge details about these highly sensitive acquisitions. Thus, the Rule 403 balance tips sharply against allowing this sort of discovery, and the Magistrate clearly erred in ruling otherwise.

1    To use a homespun analogy, consider a premises liability case over a shoddy staircase that
2 caused a houseguest to trip.  In determining whether the defendant homeowner used the standard of
3 care in building and maintaining the staircase, it might be relevant to submit expert testimony on the
4 industry standard for staircases.  It might be relevant to introduce building codes setting forth how
5 staircases should be constructed and maintained.  But it would be an irrelevant frolic to seek discovery
6 into various staircases in the houses that *plaintiff* has owned.  This is essentially what Defendants are
7 trying to do through their discovery requests into Google acquisitions.  The Court should not allow this
8 tactic.

9    Defendants' Opposition does nothing to rebut this point.  Defendants first argue that the
10 Google acquisitions on which they seek discovery are particularly relevant because they involved
11 circumstances where "Google acquired new technologies to gain advantage over competitors."
12 (Opp. at 2:5-6.)  But this says nothing at all.  In a capitalist economy, virtually ***every*** action that a
13 company might take would be an effort "to gain advantage over competitors."  And in the
14 technology marketplace, most if not all acquisitions are an attempt to acquire some new
15 technology.  So this does not imbue the Google acquisitions with any particular relevance.
16 Indeed, it is telling that Defendants' Opposition does not cite any specific, individualized
17 information about any of the acquisitions that would make them similar to the Uber-Otto
18 acquisition.  To call this a "fishing expedition" would be generous.

19    Defendants next argue that "Waymo answered Interrogatory No. 18 by describing general
20 steps it has taken in acquisitions rather than describing each of the seven deals."  (Opp. at 2:8-9.)
21 This is an accurate statement, but it does not answer why Defendants are entitled to sensitive
22 details about each individual Google acquisition.  In the spirit of disclosure and compromise,
23 Waymo provided information on Google's general acquisition practices (even though the
24 relevance of such information is slim-to-none).  Defendants have also now questioned at least
25 three witnesses on the topic of Google's acquisitions and all confirmed, among other things, that
26 Google doesn't indemnify for bad acts of an acquired company, and that none of the unusual terms
27 of the transaction between Uber and Otto are included in Google's acquisitions.  Delving into the
28

details of each individual acquisition would not have any more relevance, but would be greatly burdensome and harassing to Google and Waymo.

Finally, Defendants argue that it is irrelevant that Waymo will not present evidence of the Google acquisitions at trial, because "*Uber* may very well wish to offer evidence of these transactions at trial . . ." (Opp. at 2:20) (emphasis in original). But this just begs the question: why are Defendants *entitled* to put on evidence of unrelated Google acquisitions? The simple answer is that they are not. These acquisitions are not relevant. Defendants fail to rebut this point.

## III. THE MAGISTRATE DID NOT CLEARLY STATE THE SCOPE OF DISCOVERY PERMITTED IN RESPONSE TO RFP 166

Defendants offer no support for their overbroad reading of the Magistrate's Order regarding RFP 166—*i.e.*, their position that the Magistrate's Order demands a new, plenary, 7-hour deposition of the four relevant individuals if *any* responsive documents are located and produced after their depositions. The Magistrate's Order on this point simply said: "If Waymo has not already done so, it shall search the emails of the four individuals who have or will testify on this topic for emails and any attachments responsive to Request No. 166. The documents shall be produced prior to the deposition; if produced afterwards Waymo must make the deponent available for further deposition at Waymo's cost." (Order at 3:13-16.) Reasonable proportionality is appropriate here. For example, Defendants should not be entitled to a new, plenary, 7-hour deposition just because some marginally-responsive document was located and produced after the initial deposition. Thus, Waymo requests that the Court clarify or modify the Magistrate's Order to make clear that a new deposition based on late-produced documents would be proper only regarding the content of those document(s), only for the custodian of those document(s), and only if Defendants provide some showing that the topic of the newly-produced document(s) has not been adequately explored at the custodian's prior deposition.

| | | |
|---|---|---|
| 1 | DATED: August 25, 2017 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | By */s/ Charles K. Verhoeven* |
| 3 | | Charles K. Verhoeven<br>Attorneys for WAYMO LLC |