**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94101 | TEL (415) 875-6600

August 25, 2017

Magistrate Judge Jacqueline Scott Corley

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal., Case 3:17-cv-00939-WHA
      **Waymo's Opposition to Otto Trucking's Motion to Provide a Sworn Statement**

Dear Judge Corley:

Please find below Waymo's Opposition to Otto Trucking's Motion to Provide a Sworn Statement (Dkt. 1215).

Sincerely,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

Waymo has supplied Otto Trucking with an enormous amount of forensic evidence, including but not limited to the evidence relating to Levandowski's download of the 14,000 files. Otto Trucking has and remains free to challenge that evidence. Through its motion to compel, Otto Trucking seeks not to challenge it, but to preclude it and force findings opposite to the obvious conclusion therefrom, because Waymo has not agreed to burdensome and irrelevant requests nor agreed to stipulate to false facts drafted by Otto Trucking. The motion should be denied.

## I. Background

On May 17, 2017, Otto Trucking served its first set of RFPS. (Otto Trucking Motion ("Br.") Ex. 1.) Following the Court's directive to meet-and-confer before serving responses, Waymo repeatedly engaged Otto Trucking before serving its responses and objections on June 16. (Ex. 01, 6/8 email; Ex. 02, 6/15 email; Br. Ex 2.) The parties then met and conferred further about Waymo's responses to RFP Nos. 2, 4-6, 9-16, 19,20, 26, 40, 41, 45, and 46, and resolved those disputes based on Waymo's pledge to produce additional documents by June 28. (Ex. 03, 6/27 email.) Waymo produced the documents on June 27, including Waymo's complete history of SVN log data, for all users, as well as all documentation concerning the SVN server. (*Id.*)

Otto Trucking then sought additional information, and Waymo provided it. First, Otto Trucking asked Waymo to produce data that would show whether Levandowski had ever downloaded Tortoise SVN other than on December 11 just minutes before he downloaded the 14,000 files. (Br. Ex. 3.) Log files from a tool called bit9 contain that data. Whereas Waymo had previously produced bit9 data corresponding only to December 11 in connection with Mr. Brown's declaration, Waymo produced full bit9 log data for Levandowski, dating back to March 2014. (Ex. 04, July 13 email.)[1] Otto Trucking also asked Waymo to explain which SVN log data had been retained, and Waymo provided that explanation on July 18. (Br. Ex. 3.)[2]

Then, on Monday, July 24, 33 days after the parties' June 21 agreement, Otto Trucking sent a 7-page email complaining about each one of the already-resolved RFPs. (Br. Ex. 5.) The email featured many inaccuracies, including that Waymo had not produced SVN log data prior to October 2016 (data for everyone went back to March 2016; for Levandowski Waymo had retained data back to September 2015 for purposes of litigation). (Br. Ex. 5.) The parties met and conferred on Thursday, July 27, and Waymo explained its surprise at the re-opening of seemingly-resolved issues. (Nardinelli Decl. ¶ 2) At the Special Master's request, Waymo then provided a lengthy written response on Sunday, July 30, six days after the July 24 email. (*Id.*) Otto Trucking did not further address the issue until eight days later (but cites Waymo's six-day response time as primary evidence that Waymo "has stalled and stonewalled," Br. 1). (*Id.*)[3]

---

[1] The data showed that Levandowski had never previously downloaded TortoiseSVN.
[2] Otto Trucking alleges that Waymo "inexplicably refused" to provide that explanation in a verified pleading. (Br. 2.) In fact, on a conference call, the Special Master indicated a party's written representation via email is sufficient. (Nardinelli Decl. ¶ 3.) That ended the issue, until Otto Trucking re-raised it in its current brief.
[3] Further adding to the complexity of discovery was Otto Trucking's request, after taking the deposition of Kristinn Gudjonsson on July 28, for *forty-nine* additional sets of documents. (Ex.

1

On a call that day with the Special Master, the parties sought to resolve the allegedly outstanding issues. Two ideas emerged. One was for Otto Trucking to send a discovery proposal to cover unresolved issues. The other was a stipulation of facts to obviate further discovery. (Br. Ex. 7.)

Otto Trucking sent its discovery proposal two days alter, on August 10. (Br. Ex. 6.) The proposal, which Otto Trucking admitted was "narrowed" from its prior ask, still remained overly broad. (*Id*.) Otto Trucking requested, for each of 34 (apparently randomly-selected) individuals, complete production of twelve separate log sources dating back to March 2014. Counsel for Waymo explained that the data was irrelevant, and that to comply would have taken months, if not years, of an engineer's time and raise grave privacy concerns. Mr. Brown estimated that it would take a week, full-time, to deliver CAMP/Armada reports for 34 users. (Nardinelli Decl. ¶ 4.) DHCP, which shows network traffic, is even worse. It is not possible to simply query this log source for a given person. DHCP logs are based on IP addresses, and a given machine is assigned a different IP address each time it connects to the web. Thus, to come up with just Levandowski's web traffic behavior for a single day, Mr. Brown had to look up the unique identifiers associated with Levandowski's hardware, find the IP address(es) that had been assigned to that hardware on that day, then pull the DHCP data associated with that IP address on that day and further query the web addresses visited by that IP. To find Levandowski's web traffic for the next day would have required the same non-scalable manual investigation. To pull such data for 34 people over a *3+ year period* is unthinkable from a technical perspective. (*Id*.)

In addition to the serious burden this would impose on Waymo, none of this information has any relevance to the current litigation. The dynamic IP addresses assigned to an individual from day-to-day have no bearing on the evidence against Levandowski. Waymo's GRR tool is configured to deliver updates of whether a machine is online every 15 minutes. In other words, through one of its 12 requested log, Otto Trucking was seeking information about the online status of 34 individuals (not Levandowski), every 15 minutes, 24 hours a day, for a full 3.5 years. Otto Trucking fails to explain what possible relevance this information (over four million data points) has to the present litigation. The requested data would also raise privacy issues. It would show a person's complete web traffic, every search a person ran on Google's network, and more. *See* Dkt 923 (denying Uber's request for personnel files and noting that "Uber does not even acknowledge the affected employees' privacy interest").

Counsel for Waymo explained these objections in detail on an August 10 meet-and-confer call[4], and counsel for Otto Trucking indicated that they believed the best approach would be to propose a stipulation of facts. Counsel for Waymo indicated that, as always, they were willing to review any proposal that might stave off motion practice, but did not make any promises or agree to any particular facts that should or should not be included in such a stipulation.

---

05, August 1 email + attachment.) Otto Trucking later narrowed its request to only ***thirty-five*** additional sets. Waymo then explained that it had already produced or logged several of those categories of documents, and that of those that Waymo had not already produced or logged, many remained either irrelevant, privileged, or unduly burdensome. (Br. Ex. 4.)

[4] *See* Br. Ex. 7, which refers to a "Thursday, 8/9" call in which Waymo objected to "on the basis of burden." Thursday was 8/10, so Waymo refers to it as the August 10 call.

On August 15, 2017, counsel for Otto Trucking transmitted its proposal.  (Br. Ex. 7.)  The next day, the parties had another meet and confer call with the Special Master, and counsel for Waymo explained that far from a typical discovery stipulation, Otto Trucking's proposal was more akin to an additional set of requests for admission demanding that Waymo admit to false statements drafted by Otto Trucking, including that Waymo "refused to provide any of the SVN data requested by Otto Trucking," "does not have any policy, procedure, or guidelines relating to how access to the SVN server is determined," and "is unwilling to produce" multiple pieces of evidence that Waymo had produced.  (Br. Ex. 7.)

Waymo did not agree to stipulate to these alleged facts.  Otto Trucking then filed its motion, demanding that Waymo stipulate to Otto Trucking's proposed language or else be precluded from introducing its forensic evidence against Levandowski.  (Br. 1.)

## I. WAYMO HAS PRODUCED EXTENSIVE DOCUMENTS AND TESTIMONY

Otto Trucking complains that Waymo has "precluded Otto Trucking's ability" to test Waymo's "extraordinary inferences."  (Br. 1.)  Not true.  First, there are no extraordinary inferences here, just factual machine data.  As explained in Gary Brown's declaration (Br. Ex. 8), network-traffic analysis shows that Mr. Levandowski's laptop connected to Waymo's highly confidential SVN server on December 11 and downloaded nearly 10 GB of data.  Separate log sources show that a USB card reader was inserted into that laptop for several hours and that the laptop was later reformatted into a different operating system.  (*Id.*)  There are no "inferences" to test.  The data is the data.

Further, Otto Trucking has had every chance to analyze the data supporting Mr. Brown's declaration.  Waymo produced all log data underlying the declaration before his first deposition in March.  Otto Trucking has deposed Mr. Brown twice, deposed Mr. Gudjonsson, and deposed Sasha Zbrozek, the engineer who set up the SVN repository and granted access to Mr. Levandowski while he was at Waymo.  (Br. Exs. 12-14.)  Waymo has produced Mr. Brown's notes concerning the investigation, the forensic team's overall "Machine Forensic Record" detailing its investigation (Ex. 08), and following the Court's order (Dkt. 1272), counsel's communications with Mr. Brown and others involving the forensic investigation.  Waymo has provided full bit9 log data for Mr. Levandowski, which would show use of external USB devices and prior downloads of TortoiseSVN.  On August 14 Waymo provided Levandowski's hard drives to Otto Trucking so that Otto Trucking could run its own forensic examination.  (Ex. 06, 8/13 email.)  Otto Trucking has all the materials it needs for its expert to challenge the forensic investigation conducted by Google's security engineers.

### A. Retention of SVN Log Data

Otto Trucking demands that Waymo admit that "Google destroyed SVN log data."  As explained above, Waymo has produced all available SVN log data, covering Levandowski and every other person who accessed the SVN.  Further, Waymo did not "destroy" data.  Rather, as Waymo has previously explained (Br. Ex. 3), the data was subject to a standard 52-week retention period.  Waymo first investigated the SVN log in September 2016, and so the data ran back only to September 2015.  Waymo collected and produced that data for Levandowski, which covered the

3

period from September 2015 through his resignation in January 2016. Waymo did not institute additional retention on the SVN at that time. Such retention would only have preserved data relating to those not under suspicion, and as general policy Google does not retain irrelevant data. In March 2017, when defendants served discovery requests for SVN data, Waymo suspended the 52-week retention policy, placing all logs on retention.

If Otto Trucking wants further confirmation through verified admissions, it can seek it through Rule 36 RFAs. And in fact, it has – on July 25, weeks before it demanded that Waymo enter a stipulation covering the same alleged facts. (Ex. 07, RFAs 6, 8, 12.) Waymo can (and did) deny false RFAs (*id.*), but according to Otto Trucking's theory, Waymo must agree to the same false statements in Otto Trucking's proposed stipulation or be precluded from entering trial evidence.

### B. Anthony Levandowski's Devices

Otto Trucking does not and cannot complain that Waymo has blocked Otto Trucking's access to the laptop that Levandowski used to download the 14,000 files. On August 14, 2017, Waymo allowed Otto Trucking to make forensic images of both of Levandowski's laptop hard drives and take those images to its shop to perform in-house forensic analysis. (Ex. 06, 8/13 email.)[5]

Otto Trucking instead complains that Waymo has not given a sworn statement that Levandowski's old desktop computer was not forensically investigated or imaged before being reassigned to another Google employee. Otto Trucking neglects to mention that Waymo produced documentary evidence that it reassigned the workstation a month after Levandowski resigned. (Ex. 08, at -29419 ["reallocated to [] on 2016-02-24"].) The same document shows that Levandowski did not use that workstation. (*Id.* at -29454 ["Your HP Z420 workstation with Goobuntu hasn't been on the network in a while…."].). And Otto Trucking omits that both Mr. Gudjonsson and Mr. Brown have provided sworn testimony about the workstation. (Ex. 09.) Again, if Otto Trucking wants further verification from Waymo, it should have issued RFAs.

### C. Log Data

In this section of its brief (Br. 3) Otto Trucking seeks additional "log data." Otto Trucking does not specify which log data it seeks. Because the motion references a "narrowed" list of log data, Waymo assumes that Otto Trucking is renewing its request for the "narrowed scope" (to use Otto Trucking's words) of twelve sets of logs for 34 individuals for the past 40 months. (Br. Ex. 6.)

As Waymo explained above and on the August 10 call, Otto Trucking's request is unreasonable, irrelevant, and an unjustified invasion of privacy. To succeed on a motion to compel, Otto Trucking bears the burden of overcoming Waymo's objection. *Music Grp. Macao Commercial Offshore Ltd. v. Foote*, No. 14-CV-03078-JSC, 2015 WL 2170121, at *2 (N.D. Cal. May 8, 2015) ("In a motion to compel, the moving party bears the burden of showing why the other party's responses are inadequate or their objections unjustified."). It has not done so. Otto Trucking does not specify a single piece of additional log data that it wants, much less justify

---

[5] The laptop used to download the files was reformatted which erased the relevant data; the second laptop is encrypted and its data inaccessible. Waymo provided the drives nonetheless.

why that log data is relevant, why production is proportional to the needs of the case, why the information sought through that log data has not otherwise been available, and why Waymo's objections to production are inadequate.

Otto Trucking separately charges that Waymo did not review this unspecified log data "before concluding that Mr. Levandowski had downloaded 14,000 files," but that argument is baseless. As Mr. Brown, Mr. Gudjonsson and Mr. Zbrozek testified, the forensics team analyzed the log data that, based on their knowledge and professional experience, was necessary and relevant to the investigation. Based on that evidence, the forensics team concluded that Mr. Levandowski had downloaded the 14,000 files. Waymo has produced the log data providing evidence of the 14,000 file download, as well as additional data that the forensics team did not rely on. If Otto Trucking believes that the conclusions of the Google forensics team are incorrect or not credible because the security engineers did not review every source of possible log data, then Otto Trucking is free to attempt to elicit such testimony from its expert. Waymo is under no obligation to search for and produce unspecified log data that has nothing to do with this case and would place an undue burden on Waymo and Google.

### D. Other Documents

Otto Trucking next argues that Waymo has "confirmed that the following types of documents do not exist or have not been produced." (Br. 4.) Conspicuously, although Otto Trucking attached 17 exhibits to its motion, it cites to none in support. At any rate, Waymo searched for and produced items depicted on Otto Trucking's list through the close of fact discovery, including SVN-related emails and documentation (Br. Exs. 12-15), policies on reformatting, wiki pages, and the search results for the terms used by Levandowski. (Ex. 10 [collecting documents].)

## II.   THERE IS NO BASIS FOR PRECLUSION

There is no basis in the factual record for Otto Trucking's motion. Waymo produced the evidence concerning Levandowski's download of the 14,000 files. Waymo also produced evidence beyond the scope of that download, such as the bit9 log which would reveal Levandowski's prior downloads of TortoiseSVN or prior attachments of USB storage dating back to March 2014. Waymo also produced the hard drives from Levandowski's actual computers, correspondence (including otherwise privileged communications) relating to the investigation, and has produced its forensic engineers for depositions.

There is also no basis in the law for Otto Trucking's motion, and its citations do not support its request. In *Elliott v. Google, Inc.*, 860 F.3d 1151, 1161 (9th Cir. 2017), the Court merely excluded evidence that had not been disclosed during discovery. And in *Smith v. Liddell*, 682 F. App'x 630, 631 (9th Cir. 2017), the Court excluded the declaration of an undisclosed witness that defendants had no opportunity to cross-examine. Here, Otto Trucking seeks to exclude evidence and witnesses that Waymo has produced in discovery. In sum, there is no precedent for Otto Trucking's suggestion that Waymo should be "precluded by Rule 37 from raising the downloading conduct or forensic investigation at trial" (Br. 5) unless it signs a sworn statement drafted by Otto Trucking, and the Court should deny Otto Trucking's motion.