# EXHIBIT 1

# EXHIBIT 1

```
                         Pages 1 - 143

                  UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

         BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

WAYMO, LLC,                      )
                                 )
         Plaintiff,              )
                                 )
  VS.                            )  No. C 17-00939 WHA
                                 )
UBER TECHNOLOGIES, INC.,         )
et al.,                          )
                                 )
         Defendants.             )
_____) San Francisco, California
                                 Wednesday, August 16, 2017

       FULL TRANSCRIPT OF PROCEEDINGS, INCLUDING SEALED PORTION

APPEARANCES:

For Plaintiff:
                    QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                    50 California Street
                    22nd Floor
                    San Francisco, California   94111
               BY:  CHARLES K. VERHOEVEN, ESQ.
                    JORDAN R. JAFFE, ESQ.
                    MELISSA J. BAILY, ESQ.
                    JAMES D. JUDAH, ESQ.

For Defendants Uber Technologies, Inc., Ottomotto LLC, and Otto
Trucking LLC:
                    MORRISON & FOERSTER, LLP
                    425 Market Street
                    San Francisco, California   94105
               BY:  ARTURO J. GONZÁLEZ, ESQ.
                    ESTHER KIM CHANG, ESQ.


Reported By:   BELLE BALL, CSR 8785, CRR, RDR
               Official Reporter, U.S. District Court

(Appearances continued, next page)
```

```
APPEARANCES, CONTINUED:

For Defendants Uber and Ottomotto:
                    BOIES SCHILLER FLEXNER LLP
                    1401 New York Avenue NW
                    Washington, D.C.   20005
               BY:  KAREN L. DUNN, ESQ.

                    BOIES SCHILLER FLEXNER LLP
                    435 Tasso Street
                    Suite 205
                    Palo Alto, California   94301
               BY:  MEREDITH R. DEARBORN, ESQ.

For Defendant Otto Trucking LLC:
                    GOODWIN PROCTER LLP
                    135 Commonwealth Drive
                    Menlo Park, California   94025
               BY:  I. NEEL CHATTERJEE, ESQ.

For Non-Party Stroz Friedberg:
                    LATHAM & WATKINS LLP
                    505 Montgomery Street
                    Suite 2000
                    San Francisco, California   94111-6538
               BY:  MELANIE M. BLUNSCHI, ESQ.

Also Present:       NICOLE T. BARTOW, ESQ.
                    Uber Director II, Litigation
                    CHRISTINA SEKI
                    JOHN L. COOPER, SPECIAL MASTER
```

PROCEEDINGS                                                    3

1   Wednesday, August 16, 2017                         8:00 a.m.
2                        OPEN PROCEEDINGS
3        THE CLERK:   Calling Civil Action 17-939 WHA, it's Waymo LLC
4   versus Uber Technologies Inc., et al.  It's on for motions.
5        Counsel, can you please come forward, state your appearances
6   for the record.
7        MR. VERHOEVEN:   Good morning, Your Honor.  Charles Verhoeven
8   on behalf of Waymo.  And with me are my colleagues James Judah,
9   Jordan Jaffe and Melissa Baily.
10       THE COURT:   Great.  Welcome to you.
11       MR. GONZÁLEZ:   Good morning, Your Honor.  Arturo González
12  from Morrison & Foerster.  Also, Esther Chang and Michelle Yang.
13       THE COURT:   Welcome.
14       MS. DUNN:   Good morning, Your Honor.  Karen Dunn for from
15  Boies Schiller Flexner for Uber and Ottomotto.  And with me is
16  Meredith Dearborn.
17       THE COURT:   Welcome.
18       MR. CHATTERJEE:   Good morning, Your Honor, Neel Chatterjee
19  of the Goodwin Procter law firm for Otto Trucking.  And I'm
20  flying solo.
21       THE COURT:   Thank you.
22       MS. BLUNSCHI:   Good morning, Your Honor.  Melanie Blunschi
23  from Latham & Watkins, on behalf of non-party Stroz Friedberg.
24       THE COURT:   Thank you.
25       MR. COOPER:   Good morning, Your Honor.  John Cooper, special

PROCEEDINGS                                                    4

1   master.
2        THE COURT:   Good morning.  Welcome to everybody, again.
3        So, we've got several motions here.  The one that deals with
4   the trade secrets and knocking out all the trade secrets, we'll
5   do that last because I suspect we'll have to close the
6   courtroom.  We have other business we'll take up first.
7        There is a series of orders to show cause.  And then there's
8   a motion to strike damages.  So we will deal with the order to
9   show cause first.
10       Okay.  Let's start.
11       MR. VERHOEVEN:   Good morning, Your Honor.  Charles Verhoeven
12  on behalf of Waymo.
13       There are a number of submissions, Your Honor, that have
14  been made in connection with our motion.  The Court issued a OSC
15  to Morrison & Foerster, to Stroz.
16       I want to deal with all those in one argument, unless the
17  Court wants me to separate those out.
18       THE COURT:   Let's start that way.  Although I do have some
19  specific questions, I can propound those in due course.  Go
20  ahead.
21       MR. VERHOEVEN:   Okay.  So first I want to address Uber and
22  Morrison & Foerster's obligations and our contention that they
23  are in contempt for violating two of the Court's orders.
24       It is undisputed here that -- I'm going to refer to Morrison
25  & Foerster as "MoFo" just for the sake of brevity.

falls in that category. Somebody decided after the fact: Oh, we need that conversation. Oh, we're going to disclose it now.

That's the way it looks. That's how slick it looks.

**MR. GONZÁLEZ:** Your Honor --

**THE COURT:** You should add this into your proposed jury instruction, on this order to disclose, they didn't disclose. Put that in there, that it came out after the fact. And whether we're going use it or not, I don't know. But I -- it concerns me that we have this going on here.

All right, I need to move on. We've spent an hour on this. We've got to go on to other -- we have many motions today.

So, next motion deals with damages. Who is going to argue this?

**MS. DUNN:** I am, Your Honor.

(Reporter interruption)

**MS. DUNN:** Dunn, D-U-N-N.

**THE COURT:** Oh, wait a minute. Wait.

**MS. DUNN:** Oh.

**THE COURT:** Mr. Chatterjee rose, and I want to just say something, Mr. Chatterjee.

You -- you, under the order, were supposed to go to everybody in your company, and make a complete log of every communication with Mr. Levandowski on the subject of LiDAR.

Did you do that?

**MR. CHATTERJEE:** We went to everyone, and asked them. The

one person that did not give us a response was Anthony Levandowski, and he asserted his Fifth-Amendment rights.

But there are four members of the LLC. They're not employees, but they are members. We went to all four. We interviewed them. We submitted the disclosure. And Mr. Levandowski asserted his Fifth-Amendment rights, and didn't provide an answer.

**THE COURT:** But as to the other three, they were supposed to tell you about their conversations with Levandowski, emails, verbal, and everything. And you're telling me you did do that.

**MR. CHATTERJEE:** We did do that, Your Honor.

**THE COURT:** The other side said you did not do that.

**MR. CHATTERJEE:** We did; we submitted the disclosure, Your Honor, to the Court. And it was fairly cursory, because none of them had talked to him about LiDAR issues.

**THE COURT:** What? None of them had talked to Levandowski about LiDAR?

**MR. CHATTERJEE:** They had not. And I can give you the reasons why, Your Honor.

**THE COURT:** Yeah, I would like to know that. That is hard to believe, too.

Go ahead.

**MR. CHATTERJEE:** One of them is Adam Bentley, who is the legal counsel. And he was the person that was facilitating the transaction.

The second person was Lior Ron, who primarily had a business role.

The last one is Rhian Morgan, who was really in charge of hiring people and helping -- and they're actually Uber employees.

**THE COURT:** Did Mr. Verhoeven get that disclosure list?

**MR. CHATTERJEE:** Yes, Your Honor. We submitted it to them; we submitted it to the court.

**THE COURT:** Okay. Mr. Verhoeven, I had understood your paperwork to say that they had done zero. But now my -- do I stand corrected that he did do it, and it's just a short document?

**MR. VERHOEVEN:** Your Honor, my colleague, Mr. Judah, has been allocated the OT issues, so I'll allow him to answer your question if that's okay.

**THE COURT:** Fine. I just really need a yes or no. Did you get that document, or not?

**MR. JUDAH:** Well, we got a five-line response with respect to the LiDAR log that said there's no evidence in the record that they ever interviewed Mr. Ron about any of the LiDAR communications.

**THE COURT:** He just told me that he did.

**MR. JUDAH:** There's a five-line --

**THE COURT:** Can I see the five-line thing? It will be easier if you let me look at it.

**MR. JUDAH:** Yes, Your Honor. One moment; let me just find it.

(A pause in the proceedings)

**MR. CHATTERJEE:** Your Honor, the disclosure is Docket Entry 714. I am happy to read it.

**THE COURT:** Read it to me verbatim.

**MR. CHATTERJEE:** Okay, this is on Docket Entry 714. This is romanette (III), under "DEFENDANTS' DETAILED ACCOUNTING":

> "Mr. Ron, Ms. Morgan, and Mr. Bentley are employees
> of Uber Technologies, and as such all three of them
> have been interviewed for Defendants' detailed
> accounting."

So we are incorporating that --

**THE COURT:** That's no good. Come on, don't do that to me. They wear two hats. I want them interviewed on both hats.

**MR. CHATTERJEE:** Right. So let me read you what was said in addition:

> "Consequently, their information is included in the
> accounting filed by Uber."

And then we also added:

> "Ms. Morgan has not seen or heard of the contents of
> the downloaded materials. Mr. Ron also has not seen
> or heard any part of the downloaded materials."

**THE COURT:** That wasn't what I asked you to do. You were supposed to go to your people, and interview them, and make a

## 49

PROCEEDINGS

log of every single conversation or communication they had had with Levandowski on the subject of LiDAR. You didn't do that.

**MR. CHATTERJEE:** Let me read romanette (iv) for you, Your Honor. This is the detailed log of Mr. Levandowski's communications regarding LiDAR:

> "Ms. Morgan has never discussed LiDAR with Mr. Levandowski. Mr. Ron is not involved in the development..."

**THE COURT:** "Discussed" is not good enough. Did she get an email?

**MR. CHATTERJEE:** She has not. If you want us to amend this and add that, we can do that.

**THE COURT:** You know, I have learned -- so, this is so full of weasel words. "Discussed" is not good enough. It's got to cover everything that I had said in the order. Somebody may have had the emails, but they didn't discuss.

You know, some people on TV said "We had no meetings. Well, okay. Maybe they didn't have meetings, but maybe they had communications. I am -- you can't slide these weasel words by me.

I'm going to give you until Friday at noon to file something that is in full conformance with the Court's order. And that means you have got to go to those people, and interview them, and look at their emails, look at their text messages, look at their voicemails, look at their -- interview them again, see if

## 50

PROCEEDINGS

they have got anything in writing, any notes, whether they remember any conversations.

And if it had anything to do with LiDAR, wearing their hat as an OT person, then they have to -- it's got to go on that log.

Now, I'm assuming that, wearing that Uber hat, that it was done right.

**MR. CHATTERJEE:** Your Honor, we did not mean to be putting weasel words in. When we were saying "has never discussed," we did mean in writing or otherwise. But if you want us to flesh that out, we'll do that.

**THE COURT:** I want you to do that. I don't want it left to some verbal transcript. It should have been done right the first time. So you go back and do it by Friday.

And, and listen: It better be right, because if it turns out there was some conversation -- I know how it'll come out. The way it's going to come out is at trial, you're going to be desperate to use some conversation that's not on your log.

**MR. CHATTERJEE:** We will not, Your Honor.

**THE COURT:** Oh, yes, you will. That's just what happened to Mr. González. He's desperate to use conversations that he claimed privilege on. You're going to be in the same boat. And then you'll have this disclosure where you say nothing like that ever occurred.

**MR. CHATTERJEE:** Your Honor, Otto Trucking does not develop

## 51

PROCEEDINGS

LiDAR technologies. Never has.

**THE COURT:** Doesn't matter. If they had conversations -- I promise you, they had conversations about it. There's too much money involved.

By Friday at noon, you've got to update it, and make sure it's right.

**MR. CHATTERJEE:** We'll do that. Yes, thank you.

**MR. JUDAH:** Your Honor, can I briefly respond?

**THE COURT:** No. What do you need? I've ordered him to do something.

**MR. JUDAH:** I was going to point out that the representation that Ms. Morgan has never discussed LiDAR or received an email from Anthony Levandowski about LiDAR is patently false.

**THE COURT:** Give me an example.

**MR. JUDAH:** Well, Uber prepared over 1,000 entries of Mr. Levandowski's discussions about LiDAR (Indicating). Ms. Rhian Morgan, for example, received an email -- this is entry No. 95 on Uber's log. On March 6, 2016, author Anthony Levandowski, recipient Rhian Morgan --

**THE COURT:** Well, if it's already on that log, I'm not demanding that it be done again. I'm worried that that log is the Uber log. And I'm -- but that they have somehow hidden in the weeds on the OT log. I want there to be both hats covered. The OT hat and the Uber hat.

**MR. JUDAH:** I understand that, Your Honor. I'm just saying

## 52

PROCEEDINGS

this accounting says Ms. Morgan has never discussed LiDAR with Mr. Levandowski. That's not true.

**THE COURT:** Well, all right. What do you say to that?

**MR. CHATTERJEE:** Your Honor, as I understood what we are doing here, we incorporated by reference the log. And what we were talking about is in her capacity as an OT member.

**THE COURT:** Well, all right. But next time, wouldn't it be better to say -- to incorporate the Uber log? Except as provided in the Uber log, she's never had any conversations? If that's true -- I'm not saying that's true. In fact, I suspect that's not true. But I think you ought to verify that. And I'll give you until Friday at noon to do it right.

**MR. CHATTERJEE:** We will do that, Your Honor.

**THE COURT:** Thank you very much.

All right, Ms. Dunn, let's go back to you. We'll get started on the motion on damages.

**MS. DUNN:** Thank you, Your Honor.

**THE COURT:** Stay at a high level first, and tell me at a high level what the problem is, and then we'll get into the details.

**MS. DUNN:** At a very high level, Your Honor, the problem is that Rule 26 requires that a party provide computation of each category of damages claimed, first, and then second, to make available for inspection and copying the documents or other evidentiary material on which each computation is based.