# EXHIBIT 1

# EXHIBIT 1

Pages 1 – 143

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

WAYMO, LLC,                          )
                                     )
            Plaintiff,               )
                                     )
    VS.                              )   No. C 17-00939 WHA
                                     )
UBER TECHNOLOGIES, INC.,             )
et al.,                              )
                                     )
            Defendants.              )
_____        )   San Francisco, California
                                         Wednesday, August 16, 2017

FULL TRANSCRIPT OF PROCEEDINGS, INCLUDING SEALED PORTION

APPEARANCES:

For Plaintiff:
                    QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                    50 California Street
                    22nd Floor
                    San Francisco, California  94111
               BY:  CHARLES K. VERHOEVEN, ESQ.
                    JORDAN R. JAFFE, ESQ.
                    MELISSA J. BAILY, ESQ.
                    JAMES D. JUDAH, ESQ.

For Defendants Uber Technologies, Inc., Ottomotto LLC, and Otto
Trucking LLC:
                    MORRISON & FOERSTER, LLP
                    425 Market Street
                    San Francisco, California  94105
               BY:  ARTURO J. GONZÁLEZ, ESQ.
                    ESTHER KIM CHANG, ESQ.


Reported By:  BELLE BALL, CSR 8785, CRR, RDR
              Official Reporter, U.S. District Court

(Appearances continued, next page)

---

APPEARANCES, CONTINUED:

For Defendants Uber and Ottomotto:
                    BOIES SCHILLER FLEXNER LLP
                    1401 New York Avenue NW
                    Washington, D.C.  20005
               BY:  KAREN L. DUNN, ESQ.

                    BOIES SCHILLER FLEXNER LLP
                    435 Tasso Street
                    Suite 205
                    Palo Alto, California  94301
               BY:  MEREDITH R. DEARBORN, ESQ.

For Defendant Otto Trucking LLC:
                    GOODWIN PROCTER LLP
                    135 Commonwealth Drive
                    Menlo Park, California  94025
               BY:  I. NEEL CHATTERJEE, ESQ.

For Non-Party Stroz Friedberg:
                    LATHAM & WATKINS LLP
                    505 Montgomery Street
                    Suite 2000
                    San Francisco, California  94111-6538
               BY:  MELANIE M. BLUNSCHI, ESQ.

Also Present:       NICOLE T. BARTOW, ESQ.
                    Uber Director II, Litigation
                    CHRISTINA SEKI
                    JOHN L. COOPER, SPECIAL MASTER

---

1    Wednesday, August 16, 2017                    8:00 a.m.

2                    OPEN PROCEEDINGS

3         THE CLERK:  Calling Civil Action 17-939 WHA, it's Waymo LLC

4    versus Uber Technologies Inc., et al.  It's on for motions.

5         Counsel, can you please come forward, state your appearances

6    for the record.

7         MR. VERHOEVEN:  Good morning, Your Honor.  Charles Verhoeven

8    on behalf of Waymo.  And with me are my colleagues James Judah,

9    Jordan Jaffe and Melissa Baily.

10        THE COURT:  Great.  Welcome to you.

11        MR. GONZÁLEZ:  Good morning, Your Honor.  Arturo González

12   from Morrison & Foerster.  Also, Esther Chang and Michelle Yang.

13        THE COURT:  Welcome.

14        MS. DUNN:  Good morning, Your Honor.  Karen Dunn for from

15   Boies Schiller Flexner for Uber and Ottomotto.  And with me is

16   Meredith Dearborn.

17        THE COURT:  Welcome.

18        MR. CHATTERJEE:  Good morning, Your Honor, Neel Chatterjee

19   of the Goodwin Procter law firm for Otto Trucking.  And I'm

20   flying solo.

21        THE COURT:  Thank you.

22        MS. BLUNSCHI:  Good morning, Your Honor.  Melanie Blunschi

23   from Latham & Watkins, on behalf of non-party Stroz Friedberg.

24        THE COURT:  Thank you.

25        MR. COOPER:  Good morning, Your Honor.  John Cooper, special

---

1    master.

2         THE COURT:  Good morning.  Welcome to everybody, again.

3         So, we've got several motions here.  The one that deals with

4    the trade secrets and knocking out all the trade secrets, we'll

5    do that last because I suspect we'll have to close the

6    courtroom.  We have other business we'll take up first.

7         There is a series of orders to show cause.  And then there's

8    a motion to strike damages.  So we will deal with the order to

9    show cause first.

10        Okay.  Let's start.

11        MR. VERHOEVEN:  Good morning, Your Honor.  Charles Verhoeven

12   on behalf of Waymo.

13        There are a number of submissions, Your Honor, that have

14   been made in connection with our motion.  The Court issued a OSC

15   to Morrison & Foerster, to Stroz.

16        I want to deal with all those in one argument, unless the

17   Court wants me to separate those out.

18        THE COURT:  Let's start that way.  Although I do have some

19   specific questions, I can propound those in due course.  Go

20   ahead.

21        MR. VERHOEVEN:  Okay.  So first I want to address Uber and

22   Morrison & Foerster's obligations and our contention that they

23   are in contempt for violating two of the Court's orders.

24        It is undisputed here that -- I'm going to refer to Morrison

25   & Foerster as "MoFo" just for the sake of brevity.

1  falls in that category.  Somebody decided after the fact:  Oh,
2  we need that conversation.  Oh, we're going to disclose it now.
3     That's the way it looks.  That's how slick it looks.
4     MR. GONZÁLEZ:  Your Honor --
5     THE COURT:  You should add this into your proposed jury
6  instruction, on this order to disclose, they didn't disclose.
7  Put that in there, that it came out after the fact.  And whether
8  we're going use it or not, I don't know.  But I -- it concerns
9  me that we have this going on here.
10    All right, I need to move on.  We've spent an hour on this.
11 We've got to go on to other -- we have many motions today.
12    So, next motion deals with damages.  Who is going to argue
13 this?
14    MS. DUNN:  I am, Your Honor.
15    (Reporter interruption)
16    MS. DUNN:  Dunn, D-U-N-N.
17    THE COURT:  Oh, wait a minute.  Wait.
18    MS. DUNN:  Oh.
19    THE COURT:  Mr. Chatterjee rose, and I want to just say
20 something, Mr. Chatterjee.
21    You -- you, under the order, were supposed to go to
22 everybody in your company, and make a complete log of every
23 communication with Mr. Levandowski on the subject of LiDAR.
24    Did you do that?
25    MR. CHATTERJEE:  We went to everyone, and asked them.  The

1  one person that did not give us a response was Anthony
2  Levandowski, and he asserted his Fifth-Amendment rights.
3     But there are four members of the LLC.  They're not
4  employees, but they are members.  We went to all four.  We
5  interviewed them.  We submitted the disclosure.  And
6  Mr. Levandowski asserted his Fifth-Amendment rights, and didn't
7  provide an answer.
8     THE COURT:  But as to the other three, they were supposed to
9  tell you about their conversations with Levandowski, emails,
10 verbal, and everything.  And you're telling me you did do that.
11    MR. CHATTERJEE:  We did do that, Your Honor.
12    THE COURT:  The other side said you did not do that.
13    MR. CHATTERJEE:  We did; we submitted the disclosure,
14 Your Honor, to the Court.  And it was fairly cursory, because
15 none of them had talked to him about LiDAR issues.
16    THE COURT:  What?  None of them had talked to Levandowski
17 about LiDAR?
18    MR. CHATTERJEE:  They had not.  And I can give you the
19 reasons why, Your Honor.
20    THE COURT:  Yeah, I would like to know that.  That is hard
21 to believe, too.
22    Go ahead.
23    MR. CHATTERJEE:  One of them is Adam Bentley, who is the
24 legal counsel.  And he was the person that was facilitating the
25 transaction.

1     The second person was Lior Ron, who primarily had a business
2  role.
3     The last one is Rhian Morgan, who was really in charge of
4  hiring people and helping -- and they're actually Uber
5  employees.
6     THE COURT:  Did Mr. Verhoeven get that disclosure list?
7     MR. CHATTERJEE:  Yes, Your Honor.  We submitted it to them;
8  we submitted it to the court.
9     THE COURT:  Okay.  Mr. Verhoeven, I had understood your
10 paperwork to say that they had done zero.  But now my -- do I
11 stand corrected that he did do it, and it's just a short
12 document?
13    MR. VERHOEVEN:  Your Honor, my colleague, Mr. Judah, has
14 been allocated the OT issues, so I'll allow him to answer your
15 question if that's okay.
16    THE COURT:  Fine.  I just really need a yes or no.  Did you
17 get that document, or not?
18    MR. JUDAH:  Well, we got a five-line response with respect
19 to the LiDAR log that said there's no evidence in the record
20 that they ever interviewed Mr. Ron about any of the LiDAR
21 communications.
22    THE COURT:  He just told me that he did.
23    MR. JUDAH:  There's a five-line --
24    THE COURT:  Can I see the five-line thing?  It will be
25 easier if you let me look at it.

1     MR. JUDAH:  Yes, Your Honor.  One moment; let me just find
2  it.
3     (A pause in the proceedings)
4     MR. CHATTERJEE:  Your Honor, the disclosure is Docket Entry
5  714.  I am happy to read it.
6     THE COURT:  Read it to me verbatim.
7     MR. CHATTERJEE:  Okay, this is on Docket Entry 714.  This is
8  romanette (III), under "DEFENDANTS' DETAILED ACCOUNTING":
9        "Mr. Ron, Ms. Morgan, and Mr. Bentley are employees
10       of Uber Technologies, and as such all three of them
11       have been interviewed for Defendants' detailed
12       accounting."
13    So we are incorporating that --
14    THE COURT:  That's no good.  Come on, don't do that to me.
15 They wear two hats.  I want them interviewed on both hats.
16    MR. CHATTERJEE:  Right.  So let me read you what was said in
17 addition:
18       "Consequently, their information is included in the
19       accounting filed by Uber."
20    And then we also added:
21       "Ms. Morgan has not seen or heard of the contents of
22       the downloaded materials.  Mr. Ron also has not seen
23       or heard any part of the downloaded materials."
24    THE COURT:  That wasn't what I asked you to do.  You were
25 supposed to go to your people, and interview them, and make a

```
 1   log of every single conversation or communication they had had
 2   with Levandowski on the subject of LiDAR.  You didn't do that.
 3       MR. CHATTERJEE:  Let me read romanette (iv) for you,
 4   Your Honor.  This is the detailed log of Mr. Levandowski's
 5   communications regarding LiDAR:
 6           "Ms. Morgan has never discussed LiDAR with
 7           Mr. Levandowski.  Mr. Ron is not involved in the
 8           development..."
 9       THE COURT:  "Discussed" is not good enough.  Did she get an
10   email?
11       MR. CHATTERJEE:  She has not.  If you want us to amend this
12   and add that, we can do that.
13       THE COURT:  You know, I have learned -- so, this is so full
14   of weasel words.  "Discussed" is not good enough.  It's got to
15   cover everything that I had said in the order.  Somebody may
16   have had the emails, but they didn't discuss.
17       You know, some people on TV said "We had no meetings.  Well,
18   okay.  Maybe they didn't have meetings, but maybe they had
19   communications.  I am -- you can't slide these weasel words by
20   me.
21       I'm going to give you until Friday at noon to file something
22   that is in full conformance with the Court's order.  And that
23   means you have got to go to those people, and interview them,
24   and look at their emails, look at their text messages, look at
25   their voicemails, look at their -- interview them again, see if
```

```
 1   they have got anything in writing, any notes, whether they
 2   remember any conversations.
 3       And if it had anything to do with LiDAR, wearing their hat
 4   as an OT person, then they have to -- it's got to go on that
 5   log.
 6       Now, I'm assuming that, wearing that Uber hat, that it was
 7   done right.
 8       MR. CHATTERJEE:  Your Honor, we did not mean to be putting
 9   weasel words in.  When we were saying "has never discussed," we
10   did mean in writing or otherwise.  But if you want us to flesh
11   that out, we'll do that.
12       THE COURT:  I want you to do that.  I don't want it left to
13   some verbal transcript.  It should have been done right the
14   first time.  So you go back and do it by Friday.
15       And, and listen:  It better be right, because if it turns
16   out there was some conversation -- I know how it'll come out.
17   The way it's going to come out is at trial, you're going to be
18   desperate to use some conversation that's not on your log.
19       MR. CHATTERJEE:  We will not, Your Honor.
20       THE COURT:  Oh, yes, you will.  That's just what happened to
21   Mr. González.  He's desperate to use conversations that he
22   claimed privilege on.  You're going to be in the same boat.  And
23   then you'll have this disclosure where you say nothing like that
24   ever occurred.
25       MR. CHATTERJEE:  Your Honor, Otto Trucking does not develop
```

```
 1   LiDAR technologies.  Never has.
 2       THE COURT:  Doesn't matter.  If they had conversations -- I
 3   promise you, they had conversations about it.  There's too much
 4   money involved.
 5       By Friday at noon, you've got to update it, and make sure
 6   it's right.
 7       MR. CHATTERJEE:  We'll do that.  Yes, thank you.
 8       MR. JUDAH:  Your Honor, can I briefly respond?
 9       THE COURT:  No.  What do you need?  I've ordered him to do
10   something.
11       MR. JUDAH:  I was going to point out that the representation
12   that Ms. Morgan has never discussed LiDAR or received an email
13   from Anthony Levandowski about LiDAR is patently false.
14       THE COURT:  Give me an example.
15       MR. JUDAH:  Well, Uber prepared over 1,000 entries of
16   Mr. Levandowski's discussions about LiDAR (Indicating).
17   Ms. Rhian Morgan, for example, received an email -- this is
18   entry No. 95 on Uber's log.  On March 6, 2016, author Anthony
19   Levandowski, recipient Rhian Morgan --
20       THE COURT:  Well, if it's already on that log, I'm not
21   demanding that it be done again.  I'm worried that that log is
22   the Uber log.  And I'm -- but that they have somehow hidden in
23   the weeds on the OT log.  I want there to be both hats covered.
24   The OT hat and the Uber hat.
25       MR. JUDAH:  I understand that, Your Honor.  I'm just saying
```

```
 1   this accounting says Ms. Morgan has never discussed LiDAR with
 2   Mr. Levandowski.  That's not true.
 3       THE COURT:  Well, all right.  What do you say to that?
 4       MR. CHATTERJEE:  Your Honor, as I understood what we are
 5   doing here, we incorporated by reference the log.  And what we
 6   were talking about is in her capacity as an OT member.
 7       THE COURT:  Well, all right.  But next time, wouldn't it be
 8   better to say -- to incorporate the Uber log?  Except as
 9   provided in the Uber log, she's never had any conversations?  If
10   that's true -- I'm not saying that's true.  In fact, I suspect
11   that's not true.  But I think you ought to verify that.  And
12   I'll give you until Friday at noon to do it right.
13       MR. CHATTERJEE:  We will do that, Your Honor.
14       THE COURT:  Thank you very much.
15       All right, Ms. Dunn, let's go back to you.  We'll get
16   started on the motion on damages.
17       MS. DUNN:  Thank you, Your Honor.
18       THE COURT:  Stay at a high level first, and tell me at a
19   high level what the problem is, and then we'll get into the
20   details.
21       MS. DUNN:  At a very high level, Your Honor, the problem is
22   that Rule 26 requires that a party provide computation of each
23   category of damages claimed, first, and then second, to make
24   available for inspection and copying the documents or other
25   evidentiary material on which each computation is based.
```