1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Charles K. Verhoeven (Bar No. 170151)
2    charlesverhoeven@quinnemanuel.com
     David A. Perlson (Bar No. 209502)
3    davidperlson@quinnemanuel.com
     Melissa Baily (Bar No. 237649)
4    melissabaily@quinnemanuel.com
     John Neukom (Bar No. 275887)
5    johnneukom@quinnemanuel.com
     Jordan Jaffe (Bar No. 254886)
6    jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:     (415) 875-6600
8  Facsimile:     (415) 875-6700

9  Attorneys for WAYMO LLC

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13  WAYMO LLC,                          CASE NO. 3:17-cv-00939

14              Plaintiff,              **PLAINTIFF WAYMO LLC'S OFFER OF
                                        PROOF REGARDING DEFENDANTS'**
15         vs.                          **TRADE SECRET MISAPPROPRIATION**

16  UBER TECHNOLOGIES, INC.;
    OTTOMOTTO LLC; OTTO TRUCKING LLC,
17                                      Judge: The Honorable William Alsup
              Defendants.
18                                      Trial Date: October 10, 2017

19                                      **REDACTED VERSION OF DOCUMENT
                                        SOUGHT TO BE FILED UNDER SEAL**
20

21

22

23

24

25

26

27

28

Pursuant to the Court's order at the July 26 hearing and the Court's guidance (Aug. 23, 2017 Hearing Tr. at 40:15-18),[1] Plaintiff Waymo LLC ("Waymo"[2]) submits this offer of proof regarding Defendants Uber Technologies, Inc. and Ottomotto, LLC (together "Uber") and Otto Trucking, LLC ("Otto Trucking") (collectively, "Defendants") regarding Defendants use of Waymo's trade secrets.

Waymo has previously provided sufficient evidence of trade secret misappropriation for this Court to grant provisional relief, based on review of voluminous evidence provided by Waymo.   Dkt. 426.   In the course of discovery (currently ongoing) Waymo has developed evidence of Uber's misappropriation and use of all nine trade secrets in its final election, as detailed below.

Waymo notes that given the time limit and the period of discovery at this time, this offer of proof is necessarily rushed and may be incomplete.  Today is the last day of fact discovery and due to the expedited schedule there are multiple depositions taking place.  Today is also the deadline for the parties to submit initial expert reports.  Dkt. 563.  Waymo has also been required to respond to two summary judgment precis submitted by Defendants today upon two days' notice.  Dkt. 1308.  The offer of proof set forth below represents Waymo's best effort to respond fully to the Court under the circumstances.  To the extent the Court intends to make any rulings based on this offer, Waymo requests the opportunity to brief a formal motion and be given the opportunity for a briefing schedule to do so.  As the Court undoubtedly knows, Waymo has a constitutional right to a jury trial on its trade secret misappropriation claims, and that right can be taken away only where there is no genuine material dispute of fact.

## I.      WAYMO'S OFFER OF PROOF AS TO UBER

*Waymo Takes Reasonable Measures to Keep Its Trade Secrets Secret*: Generally, for all of Waymo's asserted trade secrets, the evidence to be presented by Waymo at trial in this case through its witnesses (including at least Gary Brown, Pierre-Yves Droz, Michael Janosko, and Tim Willis) and its expert witness Lambertus Hesselink will show that Waymo takes reasonable measures to protect its

---

[1]   At the Court's direction, Waymo is not including its expert reports in this filing, which include a more exhaustive marshalling of all the evidence it intends to present at trial through its experts for trade secret misappropriation.  However, Waymo stands ready and willing to provide these reports or the evidence cited therein if the Court wishes.

[2]   As used herein, "Waymo" also includes Google's Project Chauffeur.

trade secrets.  In particular, the evidence to be presented at trial will show that Waymo takes steps to protect its trade secrets, including its LiDAR-related trade secrets, from disclosure by employees (through, for example, Waymo's employee code of conduct and annual information security trainings), former employees (through, for example, exit interview processes), and vendors (through, for example, non-disclosure agreements).  The evidence will also show that Waymo takes reasonable steps to protect its electronically-stored information through, for example, extensive server, network, and user-level security measures such as access controls, as well as monitoring and forensic investigations as needed.  The evidence will also show that Waymo takes reasonable steps to protect its physical assets (through, for example, locking, guarding, and controlling access to its premises), including its LiDAR devices (through, for example, guarding using dark domes to cover its LiDARs and further placing key trade secret-related components deep inside the device where it cannot be observed from public roads).

*Waymo's Trade Secrets Are Not Generally Known or Readily Ascertainable*:  With respect to each one of Waymo's asserted trade secrets, the evidence to be presented by Waymo at trial in this case through its witnesses (including at least Dmitri Dolgov, Pierre-Yves Droz, Bernard Fidric, and Ben Ingram), its expert witness Lambertus Hesselink, and Defendants' witnesses (including at least Daniel Gruver, James Haslim, Asheem Linaval, and Gaetan Pennecot) will show that none of Waymo's asserted trade secrets are generally known in the relevant field, nor are they readily ascertainable.  In particular, the evidence to be presented at trial will show that, outside the LiDAR devices designed by Waymo and by Uber, no other LiDARs embody Waymo's asserted trade secrets. Waymo also expects that, with respect to each one of Waymo's asserted trade secrets, the evidence to be presented by Waymo at trial in this case through its witnesses (including at least Dmitri Dolgov, Pierre-Yves Droz, Bernard Fidric, and Ben Ingram), its expert witness Lambertus Hesselink, and Defendants' witnesses (including at least Scott Boehmke, James Haslim, and Gaetan Pennecot) will show that Waymo's asserted trade secrets none of Waymo's asserted trade secrets derive independent economic value from their secrecy.  In particular, the evidence to be presented at trial will show that Waymo has devoted years of research and development time and millions of dollars into developing

1   its trade secrets and that their secrecy gives Waymo a competitive advantage by, for example,

2   preventing competitors from short-circuiting the design process.

3       ***Uber's Misappropriation of Waymo's Trade Secrets***:  With respect to Uber's

4   misappropriation through acquisition, use, or disclosure of Waymo's asserted trade secrets, the

5   evidence to be presented by Waymo at trial in this case through its witnesses (including at least Gary

6   Brown and Kristinn Gudjonsson) and Uber's witnesses (including at least Scott Boehmke, Daniel

7   Gruver, James Haslim, Eric Meyhofer, and Gaetan Pennecot) will show that Anthony Levandowski

8   improperly downloaded over 14,000 files from Waymo's SVN repository and additional documents

9   from Waymo's Google Drive servers, and that Uber hired Mr. Levandowski to lead its self-driving car

10  project and acquired his company without implementing any measures to prevent Mr. Levandowski

11  from consulting the misappropriated documents in the course of his work for Uber.  The evidence to

12  be presented by Waymo through its expert witness Jim Timmins and Uber's witnesses (including at

13  least John Bares, Travis Kalanick, Emil Michael, Cameron Poetzscher, and Nina Qi) will show that

14  Uber instead agreed, in the context of its purchase of Otto, to indemnify Mr. Levandowski and others

15  for any prior "Bad Acts," including trade secret misappropriation, so long as Mr. Levandowski

16  disclosed those "Bad Acts" to a third-party due-diligence consultant, Stroz Friedberg (Uber and Mr.

17  Levandowski have asserted privilege over Mr. Levandowski's disclosures to Stroz).  Further, Uber ██

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████  would be aided and hastened by Mr. Levandowski's incorporation

20  into Uber of Waymo's stolen technology.  Further, the evidence will show that Uber did not restrict

21  Mr. Levandowski's ability to bring his personal devices to Uber—personal devices that Uber has

22  never inspected and that may well contain the 14,000 stolen files—or to consult those devices during

23  LiDAR development.  The evidence will also show that Mr. Levandowski was present and contributed

24  to hundreds if not thousands of emails, meetings, and discussions concerning LiDAR development.

25      Further evidence of Uber's misappropriation through acquisition, use, or disclosure of

26  Waymo's asserted trade secrets to be presented by Waymo at trial in this case is outlined below, on a

27  trade secret by trade secret basis.

28

**A.      Trade Secret No. 2**

As to Waymo's Trade Secret No. 2 █████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████  Former Waymo engineers and current Uber engineers admit they are aware of no other LIDAR with this design.  Pennecot 6/14/17 Depo. 547:9-12 ████████████████
███████████████████████████████████████████████████  The evidence to be presented by Waymo at trial in this case through its expert witness Lambertus Hesselink and Uber's witnesses (including at least Scott Boehmke, James Haslim, Daniel Gruver, and Gaetan Pennecot) will show that Uber uses Fuji, a LiDAR system comprising ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████.
For example, the undisputed evidence will show that the ███████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████
███████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

1 ██████████

2

3

4

5

6

7

8

9      The evidence (including at least testimony from Waymo witnesses Gary Brown, Kristinn

10 Gudjonsson, and Pierre-Yves Droz) will further show that this trade secret is fully described within the

11 14,000 files improperly downloaded by Anthony Levandowski on December 11, 2015 (for example, ██

12 ████████████████████████████████████████████████████████

13 ██████████████████████████████████████████████

14 ████████████████.   When asked about whether he used these files in designing Fuji, Mr.

15 Levandowski declined to answer and took the Fifth Amendment.  8/22/2017 Levandowski Depo.

16 at 103:19-104:3, 106:21-107:4, 119:17-120:2, 121:13-23, 128:1-10.

17      One former Waymo engineer and current Uber engineer admitted that the only LIDARs in

18 the world he knows of with this design characteristic is Waymo's GBR3 and the Fuji.  Pennecot

19 6/14/17 Depo. 226:11-24  ("Q Okay. ██████████████████████████

20 ███████████████████████████████████████████████████

21 █████████████████████████████████████████

22 ██████████████████████.  Q What are you aware of? A GBR3. Q Okay. Apart from GBR3, are there

23 any others that you're aware of? A I'm not aware of any others.")

24      As the Court previously observed, "that Fuji — and, at least on this record, no other

25 LiDAR — copies such specific GBr3 specifications is striking evidence suggesting that at least

26 some information from Waymo's files has already found its way into Uber's LiDAR designs."

27 Dkt. 426 at 15.

28

**B.      Trade Secret No. 7**

As to Waymo's Trade Secret No. 7 ███████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████ Former Waymo engineers and current Uber engineers admit they're aware of no other LIDAR with this design.  D. Gruver 8/14/17 Depo. at 323:6-14 ("And are you aware of any other LiDAR in the world that have this exact same design? A. Sorry. Describe "this design." Q. ██████████████████ A. I am not aware of ███████████████████████████████████████ in other LiDARs.")

The evidence to be presented by Waymo at trial in this case through its expert witness Lambertus Hesselink and Uber's witnesses (including at least James Haslim, Daniel Gruver, and Gaetan Pennecot) will show that Uber uses Fuji, a LiDAR system comprising a ████████ ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ For example, the undisputed evidence will show that ███████████████████████████████████████████ ████████████████

---

[3]   As described with more particularity in Dkt. 335-4 at 2-4.



The evidence (including at least testimony from Waymo witnesses Gary Brown, Kristinn Gudjonsson, and Pierre-Yves Droz) will further show that this trade secret is fully described within the 14,000 files improperly downloaded by Anthony Levandowski on December 11, 2015 (for example, █ █████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ████████████████████████.   When asked about whether he used these files in designing Fuji, Mr. Levandowski declined to answer and took the Fifth Amendment.  8/22/2017 Levandowski Depo. at 103:19-104:3, 106:21-107:4, 119:17-120:2, 121:13-23, 128:1-10.

Former Waymo engineer Gaetan Pennecot and current Uber engineer further admitted he included this design based on Waymo's LIDAR design.  Pennecot  6/16/17 Depo. at 408:6-21 ("Q. Why did you choose to ████████████████████████████? A. Because I -- I have done it from experience. . . . Q. Now, you said you had experience doing -- ██████████████████. Where did you have that experience? A. Back at Google. Q. Was there a LiDAR at Google in

1    which you used ███████████████████████? A. GBR.")  As previously observed by

2    the Court: "Uber's Fuji indeed ███████████████████████. Defendants do not

3    deny this and have no credible explanation for how they arrived at ████████████

4    ████████" Dkt. 426 at 14.

5         **C.    Trade Secret No. 9**

6         As to Waymo's Trade Secret No. 9 ████████████████████████████

7    ████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████

10   ████████████████████████████████████████████████

11   ████████████████   As explained in Waymo's response to Uber's precis, this trade secret

12   is not known in the field.  Dkt. 1342 (quoting 8/3/17 Droz. Depo. at 228:17-233:13.)  The

13   evidence to be presented by Waymo at trial in this case through its expert witness Lambertus

14   Hesselink and Uber's witnesses (including at least James Haslim, Daniel Gruver, and Gaetan

15   Pennecot) will show that Uber uses Fuji, a LiDAR system comprising ███████████████

16   ███████████████████████████████████████████

17   ████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   ████████   For example, the evidence will show that ███████████████████

21   ████████████████████████████████████████

22   ████████████

23

24

25

26

27

28



The evidence will also show that these overlaps are not a coincidence, as testified to by Uber engineers (and former Waymo engineers) Gaetan Pennecot and Daniel Gruver.  (8/9/17 Pennecot Dep. at 641:6-643:7 ("Q.  … ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is not a coincidence, is it? … A.  I mean, in some ways, yeah, it's – it's in my head.  I have, like, some experience from before, and I -- and you know -- like, you're always impacted by your previous experience."); 8/4/17 Gruver Dep. at 274:22-25 ("Q.  Okay.  You designed ▮▮▮▮▮▮▮▮▮▮, in part, based on your knowledge of ▮▮▮▮▮▮▮ that was designed at Google, right?  A. Yes."); *id.* at 275:5-8 ("Q.  You used the knowledge from your work on ▮▮▮▮▮▮▮ at Google to help ▮▮▮▮▮▮▮, right?  A.  Yes.").)

The evidence will further show that Uber ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ (UBER00011613.)

**D.      Trade Secret No. 13**

As to Waymo's Trade Secret No. 13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Former Waymo engineers and current Uber engineers admit they're aware of no other LIDAR

1   with this design.  6/14/17 Pennecot Depo.  ("Q Do you know of any other LiDAR manufacturers

2   that ████████████████████████████████? A No, I don't.")  The

3   evidence to be presented by Waymo at trial in this case through its expert witness Lambertus

4   Hesselink and Uber's witnesses (including at least James Haslim, Daniel Gruver, and Gaetan

5   Pennecot) will show that Uber uses ████████████████████████

6   ████████████████████████████████████████████

7   ████████████████████████████ in Fuji.  For

8   example, the evidence will show that both Waymo and Uber ████████████

9   ████████████████████████████████████████████

10  ████████████████████████████████



26

27  Uber engineer (and former Waymo engineer) Gaetan Pennecot was involved in the design

28  of ████████ and admitted that the design ████████ at Uber was based on his "prior

experience" at Waymo.  (6/14/17 Pennecot Dep. at 262:3-265:11; 6/16/17 Pennecot Dep. at 424:18-23; 8/9/17 Pennecot Dep. at 572:20-574:25.)

**E.     Trade Secret No. 14**

As to Waymo's Trade Secret No. 14 ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████  As admitted by former Waymo contractor and current Uber engineer, the claimed trade secret is not generally known. (*See* 4/13/17 Linaval Depo. at 59:16-19 ("Q.  Are you aware of any other LiDAR designs that use ████████████████████████████████████████?  A.  I'm not aware of any others.").  The evidence to be presented by Waymo at trial in this case through its expert witness Lambertus Hesselink and Uber's witnesses (including at least James Haslim, Daniel Gruver, Asheem Linaval, and Gaetan Pennecot) will show that Uber uses ███████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████.  In particular, the evidence will show that both Waymo and Uber use ██████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████



The evidence (including at least testimony from Waymo witnesses Gary Brown, Kristinn Gudjonsson, and Pierre-Yves Droz) will further show that this trade secret is reflected in part within the 14,000 files improperly downloaded by Anthony Levandowski on December 11, 2015 (for example, ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████. When asked about whether he used these files in designing Fuji, Mr. Levandowski declined to answer and took the Fifth Amendment. 8/22/2017 Levandowski Depo. at 103:19-104:3, 106:21-107:4, 119:17-120:2, 121:13-23, 128:1-10.

The evidence will also show that these overlaps are not a coincidence, as Uber engineers (and former Waymo engineers) Daniel Gruver and Gaetan Pennecot were involved in the design of ██████████████████████████████████ as reflected by the metadata. (Gruver Depo. Ex. 501; Pennecot Depo. Ex. 531; *see, e.g.*, 6/16/17 Pennecot Depo. at 352:16-19 ("I would

1   say ███████████████████████████████████

2   ███████████████████"); *id.* at 353:17-21 ("Q. ████████████████

3   ████████████████████████████████████████

4   ███████████████████████████████████

5   ██████████").)

**F.     Trade Secret No. 25**

7       As to Waymo's Trade Secret No. 25 ████████████████████████

8   ███████████████████████████████████

9   ████████████████████████████████████████████

10  ████████████████████████████████████████

11  ██████████████████████ This trade secret is not known in the field.

12  (*See* 8/8/17 Dolgov Depo. at 153:5-12 ("I can't – I'm not sure if I can quantify the value.  But it --

13  as I just mentioned, it's -- in my mind, the value is tremendous because ██████████████████

14  ████████████████████████████████

15  ████████████████████████████████████████

16  █████████████████████").)  The evidence to be presented by Waymo

17  at trial in this case through its expert witness Lambertus Hesselink and Uber's witnesses (including at

18  least John Bares) will show that Uber improperly acquired from Anthony Levandowski trade secret

19  information and used it to helped guide its LiDAR research and development efforts.  For example,

20  the evidence will show that, in attempting to sell Ottomotto to Uber, Mr. Levandowski ████████

21  ████████████████████████████████████████

22  ████████████████████████████████████

23  ████████████████████████████████████████████

24  ████████████████████████████

25  ████████████████████████████████████████████

26  ████████████████████████████████████████████

27  ████████████████████████████████████████████

28





(Jaffe Ex. 4, ███████████████████████████████

███████████████████████████████████████

██████████ )

Waymo's trade secret information provided by Mr. Levandowski to Uber ████████████

████████████ which consisted of ██████

████████████████████████████████ (UBER00071655 at

UBER00071949 (emphasis added).)

As another example, ██████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████ (UBER00018068.)  Such information is reflected in

Waymo's Trade Secret No. 25, as depicted below:

[REDACTED]

These examples are direct evidence of Anthony Levandowski providing Waymo's trade secret information for use in designing Uber's LIDAR sensor designs.

**G.      Trade Secret No. 90**

As to Waymo's Trade Secret No. 90 [REDACTED] The evidence will show that this presentation contains Waymo's [REDACTED]

[REDACTED]

The evidence (including at least testimony from Waymo witnesses Gary Brown, Kristinn Gudjonsson, and Pierre-Yves Droz) will further show that this trade secret is described in detail in at least two documents files improperly downloaded by Anthony Levandowski as he was in discussions

1   with Uber to form a new LiDAR company: █████████████████

2   ████████████████   (WAYMO-UBER-00085777.)  When asked about whether he

3   used these files in designing fiber laser designs at Uber/Otto, Mr. Levandowski declined to answer

4   and took the Fifth Amendment.  8/22/2017 Levandowski Depo. at 103:19-104:3, 106:21-107:4,

5   119:17-120:2, 121:13-23, 128:1-10.

6         The evidence will also show that, while still employed by Waymo, Anthony Levandowski

7   ████████████████████████████████████████

8   ████████████████████████████████████████

9   ██████████████   (5/4/17 Haslim Dep. at 129:24-132:9, 134:10-135:8, 136:16-137:21;

10   8/9/17 Haslim Dep. at 516:12-518:24, 537:14-541:25.)  ████████████████

11   ████████████████████████████████████

12   ████████████████████████████████████████

13   ████████████████████████████████████████

14   ██████████████   ██████████████████████

15   ████████████████

16
17
18
19
20
21
22
23
24
25



26

27         The evidence to be presented by Waymo at trial in this case through its expert witness

28   Lambertus Hesselink and Uber's witnesses (including at least James Haslim) will show that Uber

1 ██████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ██████████████████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████████████████

6 ██████████████████████████████████████████████████████████████████

7 ██████████████████████████████████████████████████████████████████

8 ██████████████████████████████████████████████████████████████████

9 ██████████████████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████████████████

13          Defendants have no credible explanation for Mr. Levandowski's input into this design and its

14 overlap with Waymo's ████████████████ 5/4/17 Haslim Depo. at 129:7-23 ("Q. Did you ever

15 raise to any of your fellow employees at Tyto LiDAR, hey, why are we talking with Mr. Levandowski

16 about the work that we're doing? A. No. Q. Never came up? A. Not to my recollection. Q. You never

17 asked anyone? A. No. Q. You didn't think it was odd that this person who doesn't work for the

18 company was talking about your work with you? A. No. Q. Did you know that Mr. Levandowski was

19 working on LiDAR at Waymo at the time? A. I knew he was working for Google at the time, and I

20 didn't know the details of what specifically he was working on.").   Mr. Haslim further admitted he

21 used the information provided by Mr. Levandowski to ████████████ for Otto and Uber.  5/4/17

22 Haslim Depo. at 136:16-24.

23      **H.      Trade Secret No. 96**

24          As to Waymo's Trade Secret No. 96 ████████████████████████████████████

25 ████████████████████████████ This trade secret is not generally known, and

26 in particular ████████████████████████████████ is not known.  (*See* 8/3/17 Droz

27 Depo. at 278:3-8 .  Waymo's ██████████████████████ is not either known or readily

28 ascertainable.  For example, ████████████████████████████████████

1 █████████████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 ███████████████████████████████████████████████

7 ███████████████████████

8     The evidence will show that prior LiDAR designs produced by others demonstrates that

9 Waymo's ███████████ is unique and innovative. ████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████

12 █████████████████████████████████████████████████

13 ████████████████████████████████████████████████

14 ██████████████████

15 ████████████████████████████████████████████████

16 ███████████████████████████████████████████████

17 ██████████████████████████████████████████████

18 ██████████████████████████████████████████████

19 ██████████████████████████████████████████████

20 ███████████████████████████████████████████████

21 ████████████████████████████████████████████████

22 █████████████████████████████████████████████████

23 ████████████████████████████████████████████ (See,

24 e.g., Boehmke Depo. Ex. 455 ¶¶ 8-10.)  Even at that time, Uber ████████████████

25 ███████████████████████████████████████████████

26 █████████████████████████████████████████████████

27 ███████████████████████████████████████████████

28 ██████████████████████████████████████████████

1 █████████████████████████████████████████████

2 █████████████████████████████████ (Meyerhofer Depo. Ex. 887.)

3 ████████████████████████████████████████████

4 ████████████████████████ This suggested design fails to ██████████

5 █████████████████████████████████████████████

6 ███████████████████████ Velodyne's corporate designee, subpoenaed by

7 Uber in this case, was questioned about Velodyne's ███████████████████

8 █████████████████████████████████████████████████

9 ███████████████████████████████████████████████

10 (Aug. 23, 2017 Nestinger Rough Depo. at 34:2-36:12, 142:8-144:11.).)  Thus, the Velodyne

11 approach ██████████████████████████████████████████

12 ████ These approaches are distinct from, and do not disclose the design reflected in Waymo's

13 ████████████████████████████

14 ████████████████ allegedly developed by Uber engineer Scott Boehmke in ██████████

15 also did not disclose Waymo's Trade Secret No. 96 or render it readily ascertainable. ████

16 ████████████████████████████████████████████

17 █████████████████████████████████████████████

18 ████████████████████████





This design fails to

3:17-CV-00939

01980-00104/9511143.2

WAYMO'S OFFER OF PROOF REGARDING DEFENDANTS' TRADE SECRET MISAPPROPRIATION

1   ███████████████ (Haslim Depo. Ex. 586.) ███████████████████████

2   ████████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████████████

4   ███████████████████████████ ████████████████████████████

5   ██████████████████████████████████████████████████████████████

6   ██████████████████████████████████████████████████████████████

7   ███████████████████████ ██████████████████████████████████████

8   ████████████████ (UBER00060113)  According to public news reports, "state of the art" was

9   Mr. Levandowski's code term instead of saying the words "Google" or "Waymo."[4]

10         Uber's 7.3.2017 Supplemental Log Pursuant to Orders on Motion for Preliminary Relief

11   [ECF No. 426] and Special Master's Protocol [ECF No. 500] ("LIDAR Log") is further evidence

12   that Mr. Levandowski ██████████████████████████████████████

13   ████████████████████████████████████████████████████

14   ██████████████████████████████████████████████████████████

15   █████████████████████████████████████

16         Mr. Levandowski ████████████████████████████████████

17   ████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   █████████████████████████████████████████████████████████████

20   ██████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ███████████████████

23         The documentary evidence further shows that Anthony Levandowski ██████████████

24   ██████████████████████████████████████████████████████████████

25

26   _____

27   [4]  *See* https://www.theinformation.com/the-informations-leaders-and-laggards-in-self-driving-

28   cars (last accessed Aug. 24, 2017).

WAYMO'S OFFER OF PROOF REGARDING DEFENDANTS' TRADE SECRET MISAPPROPRIATION



(UBER00236495.)[5]

In sum,

The evidence to be presented by Waymo at trial in this case through its expert witness Lambertus Hesselink and Uber's witnesses (including at least Scott Boehmke, Daniel Gruver, James Haslim, Gaetan Pennecot) will show that the resulting Uber's Fuji PCB design is strikingly similar to Waymo's Trade Secret No. 96, as depicted below:

---

[5]   Though clearly within the scope of the Court's Paragraph 5 accounting (Dkt. 426), Defendants did not disclose this conversation on their LIDAR log.



As objective evidence of the similarity between Waymo's trade secret



1  ███████████████████████████████████████████████

2  ███████    This is a completely distinct design from ████████████████████

3  ███████████████████████████████████████████   Just as with

4  the Court's analysis for Trade Secret No. 2 in its provisional relief order, "that Fuji — and, at least on

5  this record, no other LiDAR — copies such specific GBr3 specifications is striking evidence

6  suggesting that at least some information from Waymo's files has already found its way into Uber's

7  LiDAR designs." Dkt. 426 at 15.   The same is true for Trade Secret No. 96.

8         The evidence (including at least testimony from Waymo witnesses Gary Brown, Kristinn

9  Gudjonsson, and Pierre-Yves Droz) will further show that this trade secret is fully described within the

10  14,000 files improperly downloaded by Anthony Levandowski on December 11, 2015 (for example, ██

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ████████████████████   When asked about whether he used these files in designing the beam

14  spacing in Fuji, Mr. Levandowski declined to answer and took the Fifth Amendment.  8/22/2017

15  Levandowski Depo. at 103:19-104:3, 106:21-107:4, 119:17-120:2, 121:13-23, 128:1-10.

16     **I.     Trade Secret No. 111**

17         As to Waymo's Trade Secret No. 111 ████████████████████████████

18  ███████████████████████████████████████   the evidence to be

19  presented by Waymo at trial in this case through its expert witness Lambertus Hesselink and Uber's

20  witnesses (including at least James Haslim) will show that Uber improperly acquired from Anthony

21  Levandowski trade secret information and used it to helped guide its LiDAR research and

22  development efforts.  For example, the evidence will show that Uber's ████████████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  █████████████████████████████████████████   (*See*

27  8/9/17 Haslim Dep. at 476:17-20 ("██████████████████████████████

28  ████████████████████████████████████████████

1   ██████”), 482:14-483:6 (“█████████████████████████████████

2   ██████████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████████

4   █████████████████████████████████████████████████████”).)

5   *****

6   Based on all the evidence of trade secret misappropriation Waymo intends to offer at trial

7   outlined above, Waymo expects that Anthony Levandowski's assertion of the Fifth Amendment

8   should result in additional facts supportive of trade secret misappropriation being drawn as adverse

9   inferences against Uber.  (*See* Dkt. 818-4; Dkt. 834-4.)

10  **II.    WAYMO'S OFFER OF PROOF AS TO OTTO TRUCKING**

11  Waymo expects to present evidence that Otto Trucking is vicariously liable for the trade secret

12  misappropriation of its Executive Chairman and Managing Member, Anthony Levandowski.  *See,*

13  *e.g.*, *Extreme Reach, Inc. v. SpotGenie Partners, LLC*, No. CV1307563, 2013 WL 12081182, at *7

14  (C.D. Cal. Nov. 22, 2013) ("SpotGenie may be liable for the Sales Managers' misappropriation of

15  trade secrets under the doctrine of respondent superior . . . .  California and federal courts have

16  allowed vicarious liability claims under the UTSA.") (citing caselaw); *Language Line Servs., Inc.*

17  *v. Language Servs. Assocs., LLC*, No. C 10-02605, 2010 WL 2764714, at *4 (N.D. Cal. July 13,

18  2010) (imputing trade secret misappropriation from employees to employer); *Competitive Techs.*

19  *v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1147-48 (N.D. Cal. 2003) ("[T]he Court finds that Fujitsu

20  has, nonetheless, stated a claim for misappropriation of trade secrets as to UI by alleging that

21  Competitive was 'acting with and for UI.'  In particular, this allegation may be reasonably

22  construed as an allegation that UI ratified or approved Competitive's conduct.").

23  Moreover, Waymo expects to present evidence to support the doctrine of "ratification,"

24  *Fujitsu*, 286 F. Supp. 2d at 1148.  In particular, despite Levandowski's continued possession of

25  Waymo's trade secrets, Otto Trucking refuses to take any remedial actions against him.  This

26  alone shows Otto Trucking's ratification of Levandowski's misappropriation, thereby subjecting

27  Otto Trucking to liability.  Cal. Civ. Code § 2310 ("A ratification can be made . . . by accepting or

28  retaining the benefit of the act, with notice thereof."); *Contemporary Servs. Corp. v. Landmark*

*Event Staffing Servs., Inc.*, 677 Fed. App'x 314, 315 (9th Cir. 2017) ("CSC raised a triable issue as to whether Landmark unlawfully ratified employee Grant Haskell's misappropriation of CSC trade secrets when Landmark failed to cease the use of CSC documents, disavow Haskell's conduct, or terminate Haskell's employment after Landmark 'had reason to know' of Haskell's misappropriation."); *Ajaxo Inc. v. E\*Trade Grp., Inc.*, 135 Cal. App. 4th 21, 67-68 (2005).

With respect to Anthony Levandowski's misappropriation through acquisition, use, or disclosure of Waymo's asserted trade secrets (for which Otto Trucking is liable under vicarious liability or under the doctrine of ratification as discussed above), the evidence to be presented by Waymo at trial in this case through its witnesses (including at least Gary Brown and Kristinn Gudjonsson) will show that Anthony Levandowski improperly downloaded over 14,000 files from Waymo's SVN repository and additional documents from Waymo's Google Drive servers.

Waymo further expects to present evidence that Otto Trucking's misappropriation of trade secrets is ongoing.  In particular, in his capacity as an Otto Trucking executive, Mr. Levandowski effectively increases Otto Trucking's value.  (*See* Dkt. 515-13 at -7487.)

Finally, based on all the evidence of trade secret misappropriation Waymo intends to offer at trial outlined above, Waymo expects that Anthony Levandowski's assertion of the Fifth Amendment should result in additional facts supportive of trade secret misappropriation being drawn as adverse inferences against Otto Trucking.  (*See* Dkt. 818-4; Dkt. 834-4.)


DATED:  August 24, 2017                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                           By  */s/ Charles K. Verhoeven*
                                           _____
                                              Charles K. Verhoeven
                                              Attorneys for WAYMO LLC