

August 26, 2017

Magistrate Judge Jacqueline Scott Corley
U.S. District Court, Northern District of California
San Francisco Courthouse Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

      Re:    *Waymo LLC v. Uber Technologies, Inc., et al.*, No. C 17-00939-WHA

Dear Magistrate Judge Corley:

      Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") submit their opposition to Waymo's Motion to Compel Further 30(b)(6) Deposition Testimony from Uber (Dkt. 1353).

                              Respectfully Submitted,

                                */s Karen L. Dunn*

                                Karen L. Dunn
                                Counsel for Uber Technologies, Inc. and Ottomotto LLC

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED



Uber designated the head of Uber's Advanced Technologies Group ("ATG"), Eric Meyhofer, to provide testimony on behalf of Uber, and Ottomotto after Uber acquired it, regarding Anthony Levandowski's involvement in the development of LiDAR (Topic 1); Uber's investment in developing in-house LiDAR since January 2015 (Topic 9); and Uber's plans to commercialize autonomous vehicles, including projected costs, revenues, and profits, to the extent that such information is kept in the ordinary course of business (Topic 10).  *See* Ex. 1 (Uber's Responses and Objections to Waymo's 30(b)(6) Notice).  Cloaked as a complaint about the witness' preparation, Waymo's actual gripe is nothing more than Mr. Meyhofer did not testify as Waymo hoped he would.  That is not grounds for a motion to compel.  Mr. Meyhofer was amply prepared to testify as to each of these topics, and no further testimony from Uber is warranted.

**1. Mr. Meyhofer was adequately prepared to testify on Topic 1.**

Topic 1 was "Levandowski's involvement in the development of Lidar on behalf of Uber or Ottomotto." Ex. 1.  Waymo does not identify a single question on Topic 1 that Mr. Meyhofer was unable to answer.  It therefore fails to demonstrate that there was specific information Waymo was entitled to obtain on Topic 1, that it tried to obtain on Topic 1, and that the 30(b)(6) designee was unable to provide.  Since it has failed even to attempt to make such a showing, Waymo is not entitled to any relief on Topic 1.

Instead of pointing to Topic 1 questions, Waymo makes the generic claim that Mr. Meyhofer was not adequately prepared.  That is incorrect.  As Mr. Meyhofer testified, he was personally in charge of Uber's LiDAR development efforts during Mr. Levandowski's tenure at Uber.  Meyhofer 30(b)(6) Tr. ("Tr.") (Ex. 2) at 146:13-14.  He also testified that he worked closely with Mr. Levandowski and was familiar with what Mr. Levandowski was doing.  *Id.* at 251:7-14.  His personal knowledge alone therefore prepared him to testify as a corporate representative on Topic 1.

In addition, Mr. Meyhofer spoke to both Scott Boehmke and James Haslim to prepare to testify on Topic 1.  *Id.* at 142:2.  Mr. Boehmke is the Uber engineer who began and led the actual hardware engineering work related to Uber's development of its custom LiDAR device.  Dkt. 185 ¶¶ 2, 5.  Mr. Haslim is the lead engineer focusing on LiDAR work who came from the Ottomotto team.  Dkt. 180 ¶ 2.  These were the two most relevant people for Mr. Meyhofer to speak with in preparing to address questions on Topic 1.

Waymo complains that Mr. Meyhofer did not review the "LiDAR log"—i.e., the log Uber created pursuant to paragraph 5 of the May 11 preliminary injunction order.  Waymo is wrong. Mr. Meyhofer expressly testified that he *did review* that log in preparing to testify on Topic 1. Tr. at 132:17-19.  Mr. Meyhofer even answered questions about entries on the LiDAR log. *E.g.,* Tr. at 184-188.

Waymo also ignores that Mr. Meyhofer made clear in a brief re-direct examination that in preparing to testify on Topic 1, he also reviewed Uber's interrogatory response addressing Mr. Levandowski's involvement in Uber's development of LiDAR, and confirmed that the response was accurate, and that nothing shown to him during the deposition made him think otherwise.



Tr. at 248-50.  Counsel for Waymo had an opportunity to address that interrogatory response with Mr. Meyhofer, but chose not to.  *Id.* at 253-58.

Finally, in addition to Mr. Meyhofer's testimony, Waymo has had ample discovery on Mr. Levandowski's involvement in Uber's development of LiDAR.  It has deposed at least 24 percipient witnesses (some more than once) about that very subject. A sampling of those deponents' testimony is attached.  Ex. 3.  In addition, Waymo has the extensive LiDAR log, which provides detailed information about specific communications involving Mr. Levandowski and LiDAR.  Had Mr. Meyhofer created the LiDAR log to educate himself for his testimony and presented it to Waymo's counsel at the beginning of his deposition, this would have gone above any beyond the standard for 30(b)(6) preparation. Waymo is in no position to complain that it needs to know more.[1]  It may not have found what it was hoping to find, but that is not a basis for compelling more burdensome discovery.

### 2.  Mr. Meyhofer was adequately prepared to testify on Topic 9 and 10.

Waymo seeks to compel more 30(b)(6) testimony on Topic 9 (seeking information on the amount Uber has invested in developing an in-house LiDAR) and Topic 10 (seeking information on Uber's plans for commercializing autonomous vehicles).  Ex. 1.  Waymo says these topics "are relevant to Waymo's damages."  As with its speculative damage theories, Waymo's demands on these topics are unrealistic and fail to recognize that certain information does not exist and is not known to Uber or is inherently uncertain and speculative.

On Topic 9, Mr. Meyhofer explained that Uber's accounting system does not track its "investment in LiDAR" as a discrete item or accounting entry.  Tr. at 46:8-13.  He testified that Uber does not keep, in the ordinary course of business, documents detailing the exact expenses Uber has incurred in developing an in-house LiDAR; instead, Uber would need an expert to further analyze the spreadsheets and documents that Uber produced based on information kept in the ordinary course of business.  Tr. at 46:14-23 (explaining that documents provide "cost estimates" for developing in-house LiDAR and that Uber would " █████████████████████████████████████████████████████ *see also id.* 94:2-5 (" ███████

---

[1] Waymo does not complain that Mr. Meyhofer should have been able to explain the specific details of each and every entry on the LiDAR log, and with good reason—that would be unreasonable.  Rule 30(b)(6) does not require the deponent to "commit to memory" the specific details of every single communication pertaining to the noticed topic.  *See West v. Jewelry Innovations, Inc.*, 2008 WL 512731, at *3 (N.D. Cal. Feb. 25, 2008) (quoting *U.S. ex rel Fago v. M & T Mortgage Corp.,* 235 F.R.D. 11, 25 (D.D.C. 2006) ("Although Rule 30(b)(6) requires a designated witness to thoroughly educate him or herself on the noticed topic, there must be a limit to the specificity of the information the deponent can reasonably be expected to provide.")); *Barten v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 12639943, at *2 (D. Ariz. July 11, 2014) (denying motion to compel additional deposition of Rule 30(b)(6) deponent where questions "asked for information so specific that it was not reasonable to expect that she would be able to answer"); *Oracle Am., Inc. v. Google, Inc*., 2011 WL 3502481, at *2 (N.D. Cal. Aug. 10, 2011) (a Rule 30(b)(6) deponent must be "prepared and knowledgeable, but they need not be subjected to a memory contest").



▮▮▮▮▮▮").

The reality is that numerous people at Uber work on LiDAR as well as other things, and there is no system for tracking the amount of time spent on LiDAR, let alone to allocate salaries and benefits based on that allocation of time.  Thus, no amount of education about company documents maintained in the ordinary course of business would have permitted Mr. Meyhofer, or any other designee, to testify to precise dollar figures spent on developing in-house LiDAR. Rule 30(b)(6) requires educating a witness on the topic only to the extent such information is "reasonably available" to the corporate entity.  *Oracle.*, 2011 WL 3502481, at \*2. Rule 30(b)(6) does not require Uber to "make extreme efforts to obtain all information possibly relevant to the requests"; it was only required to prepare Mr. Meyhofer "to the extent matters are *reasonably available*, whether from documents, past employees, or other sources." *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 219857, at \*1 (N.D. Cal. Jan. 29, 2007) (emphasis in original).

It was also proper for Mr. Meyhofer to point Waymo's counsel to Uber's interrogatory responses that set forth the information "reasonably available" to Uber about its investment in developing in-house LiDAR.  *E.g.*, Tr. at 52:6-14 (explaining that the interrogatory response ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮"); *see also Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 486 (N.D. Cal. 2012) ("A party producing a Rule 30(b)(6) witness must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits."); *In re JDS Uniphase Corp.*, 2007 WL 219857, at \*1 (proper to prepare witness with "documents . . . or other sources").

As to the small number of specific questions Waymo asked about the spreadsheets Uber produced on this topic or itemizations in Uber's interrogatory responses on this topic, Uber is willing to provide written answers on those questions to the extent Mr. Meyhofer was not able to answer them and to the extent such questions are actually answerable.  *In re JDS Uniphase Corp.*, 2007 WL 219857, at \*1 (Rule 30(b)(6) does not require "extreme efforts to obtain all information possibly relevant to the requests").

With respect to Topic 10, Waymo is again asking for information that does not exist.  Waymo asked for "a date" when Uber will commercialize autonomous vehicles—an obviously speculative and uncertain issue.  Tr. at 17:12-22; 18:18-24.  Mr. Meyhofer explained that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.* at 19:3-5.  Mr. Meyhofer proceeded ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and then explained in detail ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 18:4-24; 19:12-21:13.  Mr. Meyhofer also gave a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 25:6-22.

Waymo also complains that Mr. Meyhofer was not prepared to testify to Uber's plans for commercializing autonomous vehicles, but that is precisely what he testified to.  Waymo just did not like the answers—that Uber's plans are contingent, speculative, and based on assumptions



and estimates that precluded Mr. Meyhofer from testifying with the degree of certitude Waymo was hoping he would.  *E.g., id.* at 34:15-36:2 (when asked ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" deponent answers, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and explaining he has "researched that question for 30 months").  Finally, Waymo complains that Mr. Meyhofer had not reviewed documents from ▇▇▇▇▇▇▇▇, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ relating to self-driving cars.  But Waymo ignores the fact that, after reviewing the documents, Mr. Meyhofer testified conclusively on behalf of Uber that the project's projections involved numerous "▇▇▇▇▇▇▇▇▇▇▇▇▇▇" that are based on various assumptions. *Id.* at 73:12-19; 76:1-24.  Those assumptions do not represent a single set of official "estimates" that were fixed and definite.  *Id.* at 77:20-25.  And as head of ATG, Mr. Meyhofer would know.

Waymo is in no position to complain that it needs to know more simply because it did not discover what it was hoping to find.  That is not a basis for compelling more discovery; it is instead an attempt to frustrate Uber's trial preparation efforts after the close of fact discovery.