# EXHIBIT 2

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4                      -  -  -
 5   WAYMO, LLC,                    )
                                    )
 6                    Plaintiff,    )
                                    )
 7            vs.                   )  No. 3:17-CV-00939
                                    )
 8   UBER TECHNOLOGIES; INC.;       )
     OTTOMOTTO, LLC; and OTTO       )
 9   TRUCKING, LLC,                 )
                                    )
10                    Defendants.  )
11   _____
12
13        ATTORNEYS' EYES ONLY - HIGHLY CONFIDENTIAL
14
15        The videotaped 30(b)(6) deposition of ERIC
     MEYHOFER, called as a witness by the Plaintiff,
16   pursuant to notice and the Federal Rules of Civil
     Procedure pertaining to the taking of depositions,
17   taken before me, the undersigned, Rebecca L. Schnur,
     Notary Public in and for the Commonwealth of
18   Pennsylvania, at the offices of Reed Smith, LLP,
     225 Fifth Avenue, Pittsburgh, Pennsylvania  15222,
19   commencing at 9:20 a.m. on FRIDAY, AUGUST 18, 2017.
20
21
22
23
24   Job No. 2681788B
25   Pages 1 - 259
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | (Whereupon, Deposition Exhibit 877 was marked | 09:22:46 |
| 2 | for identification.) | 09:22:46 |
| 3 | Q.   Okay.  So I've placed in front of you two | 09:22:46 |
| 4 | documents, two exhibits, Exhibit 876, which is Waymo's | 09:22:50 |
| 5 | 30(b)(6) notice to Uber -- | 09:22:54 |
| 6 | A.   Uh-huh. | 09:22:57 |
| 7 | Q.   -- then an e-mail dated August 7 (sic), that | 09:22:57 |
| 8 | is marked as Exhibit 877. | 09:22:59 |
| 9 | Do you see that? | 09:23:01 |
| 10 | A.   Yes, I do. | 09:23:03 |
| 11 | Q.   Why don't we start actually with Exhibit 877. | 09:23:04 |
| 12 | Do you see your name listed? | 09:23:08 |
| 13 | A.   Yes, I do. | 09:23:09 |
| 14 | Q.   And it lists topics 1, 2, 3, 9, and 10.  Do | 09:23:10 |
| 15 | you see that? | 09:23:14 |
| 16 | A.   I see that. | 09:23:14 |
| 17 | Q.   So if we can turn to Exhibit 876 and we can | 09:23:15 |
| 18 | go to the section of the document starting on page 6, | 09:23:21 |
| 19 | entitled "Deposition Topics" -- let me know when you're | 09:23:24 |
| 20 | there. | 09:23:28 |
| 21 | A.   I'm there. | 09:23:29 |
| 22 | Q.   Mr. Meyhofer, are you prepared to testify on | 09:23:30 |
| 23 | behalf of defendants Uber and Otto on behalf of -- for | 09:23:33 |
| 24 | topic number 1? | 09:23:37 |
| 25 | A.   Yes, I am. | 09:23:41 |

Page 8

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   You hesitated.  Are you not sure? | 09:23:44 |
| 2 | A.   Well, Uber and Otto, I'm just -- I was just | 09:23:45 |
| 3 | clarifying that I'm going to -- representing them both | 09:23:48 |
| 4 | because I thought we said earlier this was Uber, and | 09:23:51 |
| 5 | then this says Uber and Otto, but, yes. | 09:23:53 |
| 6 | Q.   Okay.  All right.  So to reiterate, you are | 09:23:56 |
| 7 | prepared to testify on behalf of Uber and Otto with | 09:24:01 |
| 8 | regard to topic number 1? | 09:24:04 |
| 9 | A.   Yes. | 09:24:05 |
| 10 | MR. HUME:  If you could, just give me a | 09:24:06 |
| 11 | moment to object to each question. | 09:24:07 |
| 12 | When you say "Otto," are you referring to -- | 09:24:09 |
| 13 | I think it's a little unclear the way that -- I | 09:24:13 |
| 14 | mean, Uber now owns Ottomotto. | 09:24:14 |
| 15 | Q.   Yeah.  So if you look at the front of | 09:24:19 |
| 16 | Exhibit 876, you see it says it's Rule 30(b)(6) Notice | 09:24:22 |
| 17 | to Uber and Ottomotto.  That's what I'm referring to. | 09:24:24 |
| 18 | A.   Uh-huh. | 09:24:29 |
| 19 | Q.   So if we can go to number 2, Mr. Meyhofer, | 09:24:33 |
| 20 | are you prepared to testify on behalf of the company | 09:24:41 |
| 21 | with regard to topic number 2 in Waymo's 30(b)(6) | 09:24:43 |
| 22 | notice? | 09:24:47 |
| 23 | A.   Yes, I am. | 09:24:48 |
| 24 | Q.   And this means you are prepared to testify on | 09:24:49 |
| 25 | behalf of Uber on the state and status of Uber's lidar | 09:24:52 |

Page 9

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | development for autonomous vehicles before | 09:24:58 |
| 2 | January 2016.  Is that correct? | 09:24:59 |
| 3 | MR. HUME:  I'm going to object to that | 09:25:01 |
| 4 | question.  We have objections to this and stated, | 09:25:02 |
| 5 | I mean, a little more precisely what we were going | 09:25:04 |
| 6 | to produce Mr. Meyhofer to talk about, which is | 09:25:09 |
| 7 | development of Uber's lidar between January 2015 | 09:25:12 |
| 8 | and January 2016. | 09:25:17 |
| 9 | Q.   With that clarification from your counsel, | 09:25:19 |
| 10 | can you answer my question, please. | 09:25:23 |
| 11 | A.   Yes, I am prepared. | 09:25:25 |
| 12 | Q.   And the same for topic number 1, are you | 09:25:28 |
| 13 | prepared to testify on behalf of defendants Uber and | 09:25:31 |
| 14 | Ottomotto with regard to Anthony Levandowski's | 09:25:35 |
| 15 | involvement in the development of lidar on behalf of | 09:25:39 |
| 16 | Uber and Ottomotto? | 09:25:42 |
| 17 | A.   Yes, I am. | 09:25:44 |
| 18 | Q.   Topic number 3, you see that one? | 09:25:47 |
| 19 | A.   Uh-huh. | 09:25:50 |
| 20 | Q.   Are you prepared to testify on behalf of Uber | 09:25:51 |
| 21 | and Ottomotto for topic number 3? | 09:25:53 |
| 22 | A.   I am. | 09:25:56 |
| 23 | Q.   All right.  We can go to topic number 9.  Are | 09:26:01 |
| 24 | you prepared to testify on behalf of Uber and Otto with | 09:26:05 |
| 25 | regard to topic number 9? | 09:26:08 |

Page 10

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   I am. | 09:26:09 |
| 2 | Q.   Are you prepared to testify on behalf of Uber | 09:26:10 |
| 3 | and Ottomotto with regard to topic number 10? | 09:26:12 |
| 4 | A.   I am. | 09:26:16 |
| 5 | Q.   Now, why don't we start with topic number 9. | 09:26:23 |
| 6 | What did you do to prepare to testify on behalf of the | 09:26:26 |
| 7 | company for topic number 9? | 09:26:31 |
| 8 | A.   I requested from counsel a few documents that | 09:26:36 |
| 9 | are in this folder and I believe you've been provided. | 09:26:39 |
| 10 | I spoke with ▆▆▆▆▆▆▆ who is the finance | 09:26:43 |
| 11 | person who would be most prepared to gather this sort | 09:26:55 |
| 12 | of information. | 09:26:57 |
| 13 | Q.   Anything else? | 09:27:02 |
| 14 | A.   Reviewed the documents, and then there was | 09:27:04 |
| 15 | also a spreadsheet that -- or a couple of spreadsheets | 09:27:06 |
| 16 | that were e-mailed over, that I reviewed as well. | 09:27:11 |
| 17 | Q.   That counsel for Waymo e-mailed over? | 09:27:15 |
| 18 | A.   No.  They were prepared by ▆▆▆▆ | 09:27:19 |
| 19 | Q.   Anything else? | 09:27:27 |
| 20 | A.   (No verbal response.) | 09:27:29 |
| 21 | Q.   Sorry.  You have to give audible answers. | 09:27:30 |
| 22 | A.   I don't believe so, no. | 09:27:33 |
| 23 | Q.   Before we go any further, what is your | 09:27:36 |
| 24 | current title? | 09:27:39 |
| 25 | A.   I'm the head of the Advanced Technologies | 09:27:40 |

Page 11

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   What do you mean by "skip-level | 09:29:30 |
| 2 | communication"? | 09:29:32 |
| 3 | A.   I'm sorry.  Skip level -- two rings.  So my | 09:29:32 |
| 4 | first ring would be my direct.  My second ring would be | 09:29:35 |
| 5 | their directs.  So keeping -- keeping tabs on the | 09:29:39 |
| 6 | leadership qualities that they have, making sure they | 09:29:47 |
| 7 | have the training that they need and that their careers | 09:29:50 |
| 8 | are growing in a way that matters so that they can | 09:29:54 |
| 9 | build this technology. | 09:29:57 |
| 10 | So it's important -- I don't -- as head, you | 09:29:59 |
| 11 | don't -- my responsibility is to build the team to | 09:30:02 |
| 12 | build the product. | 09:30:05 |
| 13 | Q.   And you said "I don't" or "you don't," | 09:30:09 |
| 14 | meaning -- | 09:30:10 |
| 15 | A.   I'm not responsible for -- I can't -- this | 09:30:11 |
| 16 | isn't a 20-person effort, and so I can't build a team | 09:30:15 |
| 17 | of 20 people and be intimate with everything they do | 09:30:18 |
| 18 | every day, so I have to build a team of people that can | 09:30:22 |
| 19 | build a team of people and cascade. | 09:30:26 |
| 20 | Q.   Okay.  Turning back -- well, actually, before | 09:30:36 |
| 21 | we do that, so I take it from your answer that means | 09:30:40 |
| 22 | that you are not involved in the day-to-day engineering | 09:30:43 |
| 23 | of the project? | 09:30:47 |
| 24 | A.   It depends on which project, but, typically, | 09:30:48 |
| 25 | it isn't like that. | 09:30:51 |

Page 13

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1         Q.   And you said, "it depends."  What projects      09:30:52

2    are you involved with the day-to-day engineering?         09:30:54

3         A.   I'm not involved in the day-to-day             09:30:57

4    engineering of any project, but on a particular day, I    09:30:59

5    may be involved in engineering aspects of the project.    09:31:02

6    But it isn't -- it isn't the thing that I get to do as    09:31:05

7    much as I would like.                                     09:31:09

8         Q.   Sometimes you have to make sure that -- the     09:31:10

9    right number of showers in the bathroom, for example?     09:31:13

10        A.   That's a thing, for real.                       09:31:15

11        Q.   For the bike commuters?                         09:31:18

12        A.   Yep.  It's actually a law.                      09:31:19

13        Q.   Let's go back to topic number 9.                09:31:23

14             And before we do that, I want to go to topic    09:31:28

15   number 10.  What did you do for topic -- to prepare to    09:31:31

16   testify on behalf of the company for topic number 10?     09:31:35

17        A.   Okay.  I had a phone call with ████      ████████  09:31:46

██   ████████ who is our head of product.                     09:31:46

19        Q.   How do you spell his last name?                 09:31:51

20        A.   ███████████████                                 09:31:52

21             I also spoke with ████████, who is our          09:31:58

22   head of hardware. ████████                                09:32:04

23        Q.   Anything else?                                  09:32:12

24        A.   No.                                             09:32:13

25        Q.   What did Mr. ████████                           09:32:14
```

Page 14

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        A.    ██████████████                          09:32:18

2        Q.    ██████████████   -- what did you and he speak   09:32:19

3     about?                                              09:32:22

4        A.    ██████████████████████████    ████████   09:32:22

      █  ████████████████████████████████              09:32:27

6        Q.    Anything else?                            09:32:29

7        A.    We talked about some particulars of my lack   09:32:37

8     of chief of staff and the importance of me hiring one.   09:32:43

9           He and I work together on many things that   09:32:50

10    revolve around building the best team dynamic we can.   09:32:56

11    So my direct team, which he is a part of -- ████████   09:32:59

12    is a part of -- the kind of chemistry and synergy   09:33:06

13    between that team is very important because that's my   09:33:12

14    entire front.  That's my front end of the organization.   09:33:15

15    So they touch the next ten people, and so that's where   09:33:18

16    the force multiplication occurs.                    09:33:22

17           So how we perform as a team, as a directs   09:33:25

18    team, is really important, so we spend a lot of time on   09:33:28

19    that.  So we talked about that as well.             09:33:31

20       Q.    In preparation to testify on behalf of the   09:33:33

21    company --                                          09:33:35

22       A.    No.                                        09:33:35

23       Q.    -- with regard to the topic?               09:33:36

24       A.    I'm sorry.                                 09:33:37

25       Q.    Yeah.  So let me focus you a little bit more.   09:33:38
```

Page 15

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | My question was:  What did you and Mr. ███████ speak | 09:33:40 |
| 2 | about in preparation to testify on topic number 10 on | 09:33:44 |
| 3 | behalf of Uber and Ottomotto? | 09:33:49 |
| 4 | A.   So we talked about the fact that -- so our | 09:33:50 |
| 5 | end goal is to have autonomous ride sharing that has no | 09:33:54 |
| 6 | vehicle operator, and we call that NVO.  And throughout | 09:33:59 |
| 7 | today I'll probably refer to "NVO," and that's no | 09:34:02 |
| 8 | vehicle operator.  So that means a vehicle is | 09:34:05 |
| 9 | completely autonomous and it doesn't have a supervisor | 09:34:09 |
| 10 | sitting in the passenger's seat or the driver's seat. | 09:34:12 |
| 11 | Q.   What's the difference between NVO and NSD? | 09:34:15 |
| 12 | A.   It's semantics.  It's the same thing.  NSD | 09:34:20 |
| 13 | stood for no safety driver.  And then, as we learned | 09:34:23 |
| 14 | more about the nature of the product we were building, | 09:34:29 |
| 15 | we changed it from NSD to NVO ████████████████ ████████ | |
| 16 | ████ ███████████████████ ████████████████████████ | 09:34:39 |
| 17 | We changed it to vehicle operator, and it became NVO. | 09:34:43 |
| 18 | NVO is a very, very tall mountain, and it's a | 09:34:47 |
| 19 | mountain that no one has ever climbed before.  And for | 09:34:53 |
| 20 | us to climb that mountain and go and look at it, it's | 09:34:58 |
| 21 | overwhelming.  So what we have to do is build base | 09:35:02 |
| 22 | camps as we go up this mountain.  These base camps are | 09:35:06 |
| 23 | things that we use to describe to the team that are | 09:35:10 |
| 24 | motivational and their digestible; they're bits that | 09:35:12 |
| 25 | they can understand how to get to.  It takes away some | 09:35:16 |

Page 16

```
1    of the overwhelming feeling of what we're doing.          09:35:20

2         The vision to the top of that mountain is my          09:35:22

3    responsibility and my leads' responsibilities, and        09:35:25

4    deriving the location or descriptions of these base       09:35:27

5    camps are what ████████ and I work on.  And that's        09:35:32

6    what we discussed yesterday.  We discussed that we        09:35:36

7    don't have the base camps resolved as well as we need     09:35:38

8    to and that our understandings of this journey change     09:35:41

9    every month, and we have to be adaptable.                 09:35:44

10        Q.   When is Uber planning to commercialize the      09:35:48

11   autonomous vehicles?                                      09:35:52

12   ████  ████  ████████████████████████████████      ████████

██   ████████████████████████████  ██████████████  ████████   ████████

██   ██████████████████████████████████████████████       ████████

██   ██████████████████████████████████████████████       ████████

██        ████████████████████████████████████████████    ████████

██   ████████████████████████████  ████████████████████   ████████

██   ██████████████████████████████████████████████████   ████████

██   ████████████████████████  ██████████████████████████ ████████

██   ██████████████████████  ██████████████████████████   ████████

██   ████████████████████████████████████████████████     ████████

██   ██████████████████████████████████████                09:36:28

23   ████  ██████████████████████████████████████     ████████

██   ██████████████████████████████  ████████████████████  09:36:36

25        MR. HUME:  Objection to the form.                    09:36:38
```

                                                    Page 17

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



09:37:08

7          MR. HUME:  Objection to the form.          09:37:11

8          Just give me a moment to object each time.          09:37:12

09:37:49

17     Q.   So you said "the exact date."          09:37:50

18          Is there a date?  Can you give me a date?          09:37:52

19          MR. HUME:  Objection to the form.          09:37:56

09:38:13

Page 18

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1                                                      

        
        
        
        
        
        
        
        
        
10                                             09:38:43

11       Q.    Sorry.   I didn't mean to interrupt.    09:38:46

12                                             

        
        
        
        
        
        
        
        
        
        
        
        
        
                                               09:39:32

                                               Page  19
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1
                                                        09:40:36
17         MR. HUME:  Objection to the form.            09:40:39
18
                                                        09:41:05
                                                   Page 20
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1      ████████████████████████  ████  ████     ████

        ████████████████████████████████       ████

        ████████████████████████████████       ████

        ████████████████████                   ████

        ██   ████████████████████████          ████

        ████████████████████████████ █         ████

        ██████                                 ████

        ██ ████████  ██████████  ██████████     ████

        ██████████████████████████████████     ████

        ████████████████████████████           ████

        ██████████████████████  ████████        ████

        ██████  ██████████████████              ████

        ████████████████████████              09:41:44

14          Q.   You're aware there are other autonomous    09:41:48

15      vehicle efforts out there.  Right?                   09:41:49

16          A.   Yes, I am.                                  09:41:51

17          Q.   Which ones are you aware of?                09:41:52

18          A.   Autonomy, Waymo of course, Daimler, GM      09:41:54

19      Cruise, Delphi, BMW Mobileye, NVIDIA, Toyota -- I guess  09:42:00

20      I should mention Audi.  They would be upset if they  09:42:12

21      weren't in consideration -- Volkswagen, Audi.  There  09:42:18

22      are -- there are many.  It's the hottest field right  09:42:20

23      now.                                                 09:42:23

24          Q.   Let's talk about Waymo.  ████████████       ████

        ████████████████████████████                      09:42:29

                                                           Page 21
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1                                                    09:43:14

14          MR. HUME:  Let me just register an objection    09:43:18

15      both to form but also this is outside the scope of  09:43:19

16      the 30(b)(6) topic.  And so I'll let it go, but we   09:43:22

17      would designate these kinds of speculative          09:43:27

18      questions and answers not within any 30(b)(6) top.   09:43:30

19          MR. JAFFE:  Counsel, you can object to beyond    09:43:36

20      the scope, but the rest of that is improper          09:43:37

21      speaking objection, so I would --                    09:43:40

22          MR. HUME:  It's no more improper than asking     09:43:40

23      him to speculate about things that are far outside   09:43:43

24      the topic.                                            09:43:45

25          MR. JAFFE:  That's a continued speaking          09:43:46
```

Page 22

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1        objection.                                          09:43:48

 2        Q.   Go ahead and answer, please.                   09:43:48

 3    ▆   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆            ▆▆▆▆▆▆▆

 ▆    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆   ▆▆▆▆           ▆▆▆▆▆▆▆

 ▆    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆            ▆▆▆▆▆▆▆

 ▆    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆            ▆▆▆▆▆▆▆

 ▆    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆                 ▆▆▆▆▆▆▆

 ▆    ▆  ▆▆▆   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆            ▆▆▆▆▆▆▆

 ▆    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆            ▆▆▆▆▆▆▆

 ▆    ▆▆▆▆▆▆▆▆▆▆▆▆                                 09:44:26

11        MR. HUME:   Same objection.   Beyond the scope.    09:44:30

12        A.   I have no idea what Waymo's plans to           09:44:34

13    commercialize autonomous vehicles are, ▆▆▆▆▆▆          ▆▆▆▆▆▆▆

 ▆    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆   ▆▆▆▆           ▆▆▆▆▆▆▆

 ▆    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆   ▆▆▆▆▆▆           ▆▆▆▆▆▆▆

 ▆    ▆▆▆▆▆▆▆▆                                     09:44:50

17        Q.   For topic number 10, you also said that you   09:45:16

18    spoke to Mr. ▆▆▆▆▆                                       09:45:19

19        A.   Uh-huh.                                        09:45:20

20        Q.   What did you and Mr. ▆▆▆▆ speak about in      09:45:21

21    preparation for topic number 10?                        09:45:24

22        A.   We spoke of -- ▆▆▆▆▆▆▆▆▆▆▆▆▆           ▆▆▆▆▆▆▆

 ▆    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆   ▆▆▆▆           ▆▆▆▆▆▆▆

 ▆    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆           ▆▆▆▆▆▆▆

 ▆    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆                       09:45:54
```

Page 23

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



09:47:39

Page 24

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



17     A.   No, I did not, not that I recall.  We talked      09:50:05

18  about a meeting that I needed him to prepare for, in my   09:50:11

19  absence today.                                            09:50:13

Page 26

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY





Page 28

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



09:56:24

20    Q.    Now, just so I make sure that we're

21  understanding, I want to go through a few terms.

22            What is █████████              09:56:35

23    A.    Okay.  I'm going to go back one.  Before --   09:56:37

24  there are -- it goes ██████████████████      ██████████

                  ████████████████████          09:56:45

Page 30

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 31

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    ███████████████████████████████████         ███████

 ▮    █████████████████     ███████████████        ███████

 ▮    ██████████     █████████████████████         ███████

 ▮            ████    ████████████                 09:58:27

 5            MR. HUME:  Can you -- Jordon, you've done    09:58:30

 6    this a couple times now.  Can you let him finish    09:58:30

 7    his answer.                                          09:58:31

 8            MR. JAFFE:  He's speaking for a page and a   09:58:32

 9    half to a simple question here.                      09:58:33

10            MR. HUME:  No.  He's give you very           09:58:35

11    comprehensive, direct answers, and you're           09:58:37

12    interrupting him inappropriately.  Please let him    09:58:39

13    finish.                                              09:58:41

14            MR. JAFFE:  I disagree.                       09:58:44

15    Q.   Go ahead.                                        09:58:44

16    A.   I can be shorter.                                09:58:44

17    Q.   I'm just trying to get through a lot of          09:58:46

18    topics, so --                                         09:58:48

19            ████    ████████████████              ███████

 ▮            ████    ███████████████               ███████

 ▮            ████    ███████████                   ███████

 ▮            ████    █████████████                 ███████

 ▮            ████    ████████████████████          ███████

 ▮            ████    ████    ██████████████████     ███████

 ▮            ████    ████    ████████████          09:58:57
```

Page 32

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1       ▮  ▬▬                                           ▬▬▬
▮        ▮  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬                              ▬▬▬
▮    ▬▬▬                                                ▬▬▬
▮        ▮  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬                              ▬▬▬
▮    ▬▬▬▬▬▬▬    ▬▬▬▬▬▬▬                                 ▬▬▬
▮        ▮  ▬▬▬▬▬▬▬▬▬▬                                  ▬▬▬
▮        ▮  ▬▬▬▬▬▬▬▬▬▬                                  ▬▬▬
▮        ▮  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬                              ▬▬▬
▮    ▬▬▬▬▬                                              ▬▬▬
▮        ▮  ▬▬▬▬▬▬▬▬▬▬▬▬▬                               ▬▬▬
▮    ▬▬▬                                                ▬▬▬
▮        ▮  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬                              ▬▬▬
▮    ▬▬▬▬▬                                      09:59:27
14       Q.   Got it.                           09:59:30
15            What is Catalyst?                 09:59:31
16       ▮  ▬▬▬▬▬▬▬▬▬▬▬▬▬                               ▬▬▬
▮    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬                              ▬▬▬
▮    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬                               ▬▬▬
▮    ▬▬▬▬▬▬▬▬▬▬▬▬    ▬▬▬▬▬▬▬                            ▬▬▬
▮    ▬▬▬▬▬    ▬▬▬▬▬▬▬▬                                  ▬▬▬
▮        ▮  ▬▬▬▬▬▬▬▬▬▬▬▬▬                               ▬▬▬
▮        ▮  ▮  ▬▬▬▬▬▬▬▬                                 ▬▬▬
▮    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬                                   ▬▬▬
▮    ▬                                                  ▬▬▬
▮        ▮  ▬▬▬▬▬▬▬▬▬▬                          10:00:22
```

Page 33

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    ███████████████████████████████████    ███████████

▮    ████████████████                        10:00:29

3           MR. HUME:  Object to the form and possibly    10:00:35

4    outside the scope.                       10:00:37

5           Is this within the scope of topic 10?    10:00:40

6    Q.   Go ahead.                           10:00:42

7           MR. HUME:  I'm going to object as outside the    10:00:43

8    scope.                                   10:00:44

9    A.   Can you repeat it.                   10:00:45

10      ▮   ████████████████████        ███████████

▮    █████████████████████████████████████   ███████████

▮    ████████████████                        ███████████

▮      ▮   █████████████████████████████    ███████████

▮    ███████████████████████  ████████████   ███████████

▮    █████████████████████████             ███████████

▮      ▮   ████████████████████████████    ███████████

▮    █████████████████████████████████████   ███████████

▮    ██████████                             ███████████

▮          ███████████  ████████████████    ███████████

▮      ▮   ███████████████████  ████████    ███████████

▮    ███████████████████████████████       ███████████

▮    ████████████████████                  ███████████

▮      ▮   ████████████████████████████    ███████████

▮    ████████████████████████              10:01:28

25   A.   I've researched that question for 30 months.    10:01:30
```



| | | |
|---|---|---|
| 1 | Q.   And you don't know the answer? | 10:01:33 |
| 2 | A.   That's correct. | 10:01:35 |
| 3 | ▮ ▮▮▮▮▮▮▮▮▮▮▮ ▮ | ▮▮▮▮ |
| | ▮▮▮▮▮▮▮▮▮▮ | ▮▮▮▮ |
| | ▮ ▮▮▮▮▮▮▮▮▮▮▮ | ▮▮▮▮ |
| | ▮▮▮▮▮▮▮▮▮▮ | ▮▮▮▮ |
| | ▮ ▮▮▮▮▮▮▮▮▮▮▮ | ▮▮▮▮ |
| | ▮▮▮▮▮▮▮▮▮▮ | ▮▮▮▮ |
| | ▮ ▮▮▮▮▮▮▮▮▮ | ▮▮▮▮ |
| | ▮▮▮▮▮▮▮▮ ▮▮▮▮ | ▮▮▮▮ |
| | ▮▮▮▮▮▮▮▮ | 10:02:06 |
| 12 | Q.   I want to talk about the state of Uber's | 10:02:11 |
| 13 | autonomous vehicle technology as of today.  Is that all | 10:02:14 |
| 14 | right? | 10:02:17 |
| 15 | A.   Okay. | 10:02:17 |
| 16 | ▮ ▮▮▮▮▮▮▮▮▮ | ▮▮▮▮ |
| | ▮▮▮▮▮▮▮▮▮ ▮▮▮ | ▮▮▮▮ |
| | ▮▮▮▮ ▮▮▮▮▮▮▮▮▮ | ▮▮▮▮ |
| | ▮▮▮▮▮▮ | ▮▮▮▮ |
| | ▮ ▮▮▮▮▮▮▮▮ | ▮▮▮▮ |
| | ▮ ▮▮▮▮▮▮▮▮▮ ▮ | ▮▮▮▮ |
| | ▮ ▮▮▮ | ▮▮▮▮ |
| | ▮▮▮▮▮▮▮▮▮ | ▮▮▮▮ |
| | ▮▮▮▮▮▮▮ ▮▮▮▮▮▮ | ▮▮▮▮ |
| | ▮▮▮▮▮▮▮▮▮▮ | 10:02:54 |

Page 35

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



10:04:29

10:04:41

Page 36

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



10:06:32

Page 37

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



10:07:46

Page 38

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
1    ████████████████                         █████████

     █  ██  ██████████████████████  ██         █████████

     █  ████████████████  ████████             █████████

     █    ██   ██████                          10:07:56

5        Q.   Any others?                      10:08:03

6             MR. HUME:   Let me just object as outside the   10:08:07

7    scope.                                    10:08:09

8             You can answer.                  10:08:09

9     █  ████████████████████  ██████████      █████████

█    ████████████████████████████████         █████████

█    █████████████████████████████            █████████

█    ██████████████████████████████           █████████

█    ██████████████████████████████           █████████

█    ████                                      █████████

█     ██  ████████████████  ██████████         █████████

█    ██████████████████                        10:08:30

17            MR. HUME:   Objection as outside the scope.   10:08:34

18    █  ████████████████████████████          █████████

█    ██████████████████████████████            █████████

█    ████████████████  ██████████  ████████    █████████

█    ███████████████████████████               █████████

█    ██████████████  ████████████████████      █████████

█    ███████  ██████████████████               █████████

█    ████████████████  █████████████           █████████

█    ████████████████████████████              10:09:01
```

Page 39

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



| 1 | ████████████████████ | 10:09:03 |
| 2 | Q.    Fuji is Uber's custom lidar.  Right? | 10:09:06 |
| 3 | A.    That's correct. | 10:09:08 |
| 4 | MR. HUME:  Objection. | 10:09:09 |
| 5 | | |

| | 10:09:57 |
| 22 | MR. HUME:  Just let me make -- | 10:10:00 |
| 23 | Objection.  I object to this question and | 10:10:01 |
| 24 | line of questions as outside of the scope of | 10:10:04 |
| 25 | 30(b)(6) topics. | 10:10:08 |

Page 40

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1                                                      10:10:26

 7       Q.   Is that --                               10:10:28

 8       A.   Yes.                                     10:10:28

 9       Q.   If you could just say "yes," so we can -- or   10:10:29

10   "no," whatever the answer may be, but -- so that the    10:10:31

11   court reporter can record that.                   10:10:34

12            What cities is Uber planning to launch in?   10:10:38

13                                                      10:11:19
```

Page 41

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 42

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 43

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



: 03

Page 44

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



| | | |
|---|---|---|
| 1 | Q.    Sitting here today? | 10:15:04 |
| 2 | A.    Uh-huh. | 10:15:05 |
| 3 | Q.    All right. | 10:15:06 |
| 4 | A.    Yes. | 10:15:06 |
| 12 | MR. HUME:    Same objection.    Outside the | 10:15:23 |
| 13 | scope. | 10:15:24 |

10:15:22

10:15:58

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
1
                                                                    10:17:29
24        Q.   All right.  You are here to testify on behalf  10:17:31
25   of Uber and Ottomotto with regard to its investment in   10:17:34
```

Page 46

1    developing in-house lidar.  Right?                    10:17:38

2         A.   That's correct.                             10:17:40

3         Q.   And you prepared to testify on that topic.  10:17:41

4    Right?                                                10:17:43

5         A.   Uh-huh.  That's correct.                    10:17:44



10:18:53

23        Q.   Have you ever heard of Otto referred to as a  10:18:56

24   LaserCo?                                              10:19:01

25        A.   I have not heard that.                      10:19:04

Page 47

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1      Q.   You've never heard that within Uber?          10:19:06

2      A.   Not that I recall.                            10:19:08
```



```
                                                          10:20:33
```

Page 48

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1    ████████████                                    ████
      ██   ██  ████████████████████████               ████
      ██   ████████████████   █████                   ████
      ██   ██  ████████████████████████               ████
      ██   ████████████████████████████               ████
      ██   ████████████████████  ███████████          ████
      ██   ██████████████████████████                 ████
      ██   ███                                         ████
      ██      ██  ██████████████████████               ████
      ██      ██  ████████  █████████████      10:22:00
11    Q.  You didn't prepare to testify about that    10:22:03

12    today?                                           10:22:05

13    A.  No, I did not.                               10:22:06

14    Q.  The Fuji lidar, it's being developed at Otto 10:22:10

15    in San Francisco.  Right?                        10:22:13

16    A.  Partially.                                   10:22:15

17    Q.  What parts are being developed here in       10:22:16

18    Pittsburgh?                                      10:22:18

19    MR. HUME:  Same objection as outside the         10:22:20

20    scope.                                           10:22:21

21    ██  ██████████████████████████                   ████
      ██  ████████████████████████  ████████████       ████
      ██  ██████████████████████████                   ████
      ██  ████████████████████████████████████         ████
      ██  ████████████████████████████         10:22:38
```

Page 50

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1 ███████████████████████████████     ███████

   ████████████████████████     ███████

   ██████████████████████████████     ███████

   ██████████   ████████████████     10:22:55

5      Q.   You said the mechanical engineering is     10:23:05

6    overseen through Pittsburgh.  Who oversees that     10:23:07

7    mechanical engineering?     10:23:09

8     ██  █████████     10:23:11

9       MR. HUME:  We've been going for an hour.  Are     10:23:17

10   we going to take a break sometime soon?     10:23:19

11      MR. JAFFE:  Sure.  Let me just finish a     10:23:21

12   couple quick questions here.     10:23:23

13     Q.   How many people does Uber have working on     10:23:24

14   lidar development today?     10:23:27

15     A.   Oh, quite a few.  I would say approximately     10:23:29

16   █ at some capacity.     10:23:50

17    ██  ████████████████████     ████████

   ██████     ████████

   ██  ██████████     ████████

   ██  █████████████████     ████████

   ██████████████████████     ████████

   █████████████     10:24:08

23      MR. HUME:  Objection to the form.     10:24:10

24      If you'll identify the document you're     10:24:18

25    looking at, we can give it to counsel.     10:24:20

Page 51

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1           THE WITNESS:  I don't know how to title this    10:24:24

2      document.  It's --                                   10:24:26

3           MR. HUME:  That's because it's got a long       10:24:29

4      lawyer name on top of it.                            10:24:31

5      A.   Do you know what this is?                       10:24:33

6      Q.   These are Defendants Uber Technology, Inc.      10:24:36

7 and Ottomotto, LLC's second supplemental responses to    10:24:40

8 Waymo's first set of common interrogatories.             10:24:44

9           MR. HUME:  There's a copy.                      10:24:47

10     ▄▄▄   ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄    ▄▄▄▄▄▄▄

   ▄▄  ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄    ▄▄▄▄▄▄▄

   ▄▄  ▄▄▄▄▄▄▄▄▄▄▄▄▄▄  ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄    ▄▄▄▄▄▄▄

   ▄▄  ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄  ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄    ▄▄▄▄▄▄▄

   ▄▄  ▄▄▄▄▄▄▄▄▄                                10:25:12

15     Q.   So I appreciate you pointing at Uber's          10:25:12

16 interrogatory responses.                                 10:25:15

17          Let me ask you a more pointed question, which   10:25:18

18 is:  So other than pointing at Uber's interrogatory      10:25:20

19 responses, which were prepared by Uber's lawyers, can    10:25:23

20 you tell me, sitting here today, what percentage of the  10:25:26

21 people working on lidar development came from the Otto   10:25:32

22 acquisition?                                             10:25:35

23          MR. HUME:  Objection to the form and            10:25:37

24     objection as outside the scope.                      10:25:38

25     ▄▄▄   ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄                10:25:39
```

Page 52

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1          MR. JAFFE:  All right.  We can take our first      10:25:46
 2      break.                                                 10:25:47
 3          THE VIDEOGRAPHER:  This ends media number 1.       10:25:48
 4      Going off the record, the time is 10:25 a.m.           10:25:50
 5          (Recess taken.)                                    10:42:10
 6          THE VIDEOGRAPHER:  This begins media               10:42:25
 7      number 2.  Going on the record, the time is            10:42:26
 8      10:42 a.m.                                             10:42:29
 9  BY MR. JAFFE:                                              10:42:31
10
                                                               10:43:21
25          MR. HUME:  Objection to form.  Objection as        10:43:23
```

Page 53

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



1

10:43:30

5          MR. HUME:   Same two objections.          10:43:30

6

10:44:26

Page 54



```
 1          MR. HUME:  Same objection.  Outside the        10:44:29

 2   scope.                                                10:44:30

 3

12          MR. HUME:  Objection to the form and          10:45:02

13   objection as outside the scope.                       10:45:03

14          This entire line of questioning -- the        10:45:05

15   witness is giving individually not on behalf of       10:45:06

16   the company.                                          10:45:09

17
```

Page 55

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1   ████████████████████████████████████    ██████

     ████████████████████████  ██████████    ██████

     ████████████████████████████████████    ██████

     ██████████████████████████████████████  ██████

     ██████████████████████████             10:45:57

 6      Q.   Has Uber conducted an analysis of the cost of   10:46:02

 7   a human driver versus an autonomous vehicle?            10:46:06

 8         MR. HUME:  Objection.  Outside the scope.         10:46:09

 9      A.   Yes.                                            10:46:11

10    ██  ██████████████████████████████      ██████

      ██  ████████████████████████████        ██████

   ██████████████  ██████████████████          ██████

   ██████████████████  ████████████████        ██████

   ████                                        ██████

      ██  ████████████████████████            ██████

         ██████████████  ████████████          ██████

   ████████████                                ██████

      ██  ██████████████████████               10:46:38

19         MR. HUME:  Objection.                            10:46:40

20      A.   Sorry.                                         10:46:41

21    ██  ████████████████████████████████     ██████

   ████████████████████████                   10:46:44

23         MR. HUME:  Objection as outside the scope of     10:46:48

24   the 30(b)(6) notice.                                   10:46:49

25    ██  ██████████████████████████████       10:46:51
```

Page 56

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1  ████████████████████████████████  ██████

 █  ██████████████████████████               10:46:58

 3      Q.   What does that mean?             10:47:01

 4      A.   There is a cost per mile of owning your own    10:47:03

 5  car.                                     10:47:05

 6      Q.   What is that?                    10:47:06

 7           MR. HUME:  Same objection.       10:47:07

 8      A.   According to the government, it's about    10:47:08

 9  50 cents per mile.                       10:47:09

10      ██  ████████████████████████        ██████

 █  ████████████████████████████             ██████

 █  ████████████                            ██████

 █          ████████  ████████████           ██████

 █      ██████████████████████               ██████

 █      ████████████████████  ████████       ██████

 █  ██████████████████████████████  █         ██████

 █  ████████████                            ██████

 █      ██  ████████████████████████        ██████

 █  ████  ████████████████████████████       ██████

 █  ████████████████████████████             ██████

 █  ██████████████████████████████████       ██████

 █  ██████  ████████████                    ██████

 █          ████████  ████████               ██████

 █      ██  ████████████████████████        ██████

 █  ████████████████████  ████████████                10:47:52
```

Page 57

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    ███████████████████                            10:47:55

2        Q.   What are the estimates?               10:47:57

3             MR. HUME:  Same objections.            10:47:59

4        A.   Well, we don't -- we have goals.  We have to    10:48:03

5    make these goals.  It's not what we think it's going to  10:48:06

6    cost.  It's what it needs to cost.             10:48:10

7       ██ ███████████████████████            ██████

██     ████████ █████████                       ██████

██      ██ ████████████████████████             ██████

██    ███████████████████                      ██████

██      ██ ████████████████████████             ██████

██    ████████████████████████████████          ██████

██    ██████████████████████████████            ██████

██       ███████████ ███████████████            ██████

██      ██████                                  ██████

██      ██ ██████████████████████████           ██████

██    ████████████████████████████████          ██████

██    ██████████████████ ████████████            10:48:39

19       Q.   Does Waymo present an existential threat to   10:48:42

20   Uber?                                          10:48:47

21            MR. HUME:  Objection to the question as   10:48:47

22       outside the scope of the 30(b)(6) notice, and I   10:48:48

23       also object to the form.  It calls for      10:48:52

24       speculation.                               10:48:54

25       A.   I don't understand in what context that is   10:48:55
```

Page 58

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    meant.  But I don't know how Waymo -- I don't think       10:48:57

 2    Waymo makes any money, so I don't know how that poses a    10:49:01

 3    threat.                                                    10:49:04

 4            I believe that there are hypotheticals that        10:49:04

 5    you could run, if Waymo does this and if this goes this    10:49:08

 6    way for them, that could be a threat, but I don't know     10:49:12

 7    that those things will occur.  Ruth might decide she       10:49:14

 8    doesn't want to do a robot car anymore tomorrow.          10:49:21

 9        Q.    Just -- when you refer to "robot car," what      10:49:25

10    are you referring to?                                      10:49:28

11        A.    I'm sorry.  Autonomous cars.                     10:49:29

12        Q.    And you said "Ruth." who are you referring to    10:49:30

13    as "Ruth"?                                                 10:49:32

14        A.    Ruth --                                          10:49:34

15            MR. HUME:  Same objection.                         10:49:35

16        A.    -- the CEO of Uber -- I'm sorry -- of Google.    10:49:35

17    ████   ████████████████████████████        ████████

      ████████████████████████████████████        ████████

      █████████████████████████████████████         ████████

      ██████████████████████████████████████████      ████████

      ████  ██████████████████                       10:50:02

22            MR. HUME:  Objection as outside the scope.         10:50:03

23    And object to the form.  It's mischaracterizing            10:50:04

24    prior testimony.                                           10:50:09

25    ████   █████████████████████████████           10:50:10
```

Page 59

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   ███████████████████████████████     ███████

     ███████████████████████████████     ███████

     ████████████████████████████████    ███████

     ████████████████                    10:50:28

 5           MR. JAFFE:  Why don't we actually mark,     10:50:40

 6       before we keep going, the document that you     10:50:41

 7       referred to, which is Uber's response -- second    10:50:44

 8       supplemental responses.  Why don't we mark that    10:50:48

 9       as --                                            10:50:51

10           THE WITNESS:  Which topic?                   10:50:52

11           MR. JAFFE:  -- Exhibit 878.                  10:50:53

12       This document that you referred to before,       10:50:55

13       that you handed me from your file.               10:50:56

14           THE WITNESS:  This guy?                      10:50:59

15           MR. JAFFE:  Yeah.                            10:51:01

16           (Whereupon, Deposition Exhibit 878 was marked    10:51:01

17       for identification.)                             10:51:01

18           MR. JAFFE:  I'm going to mark as             10:51:11

19       Exhibit 879 a document entitled ███████    ███████

         ████████   Bates-labeled UBER232001.            10:51:18

21           (Whereupon, Deposition Exhibit 879 was marked    10:51:33

22       for identification.)                             10:51:33

23       Q.   Mr. Meyhofer, have you seen the document that    10:51:36

24   I've placed in front of you before?                  10:51:38

25       A.   I don't recall seeing this document.        10:51:45
```

Page 60

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   You didn't review this document in | 10:51:47 |
| 2 | preparation for your testimony today on behalf of the | 10:51:49 |
| 3 | company, did you? | 10:51:52 |
| 4 | A.   No, I didn't.  You just handed it to me. | 10:51:52 |
| 5 | Q.   Okay.  All right.  So let's go to page 7. | 10:51:56 |
| 6 | A.   Uh-huh. | 10:52:03 |
| 7 | Q.   I'm going to refer to the numbers starting -- | 10:52:10 |
| 8 | on the bottom right-hand corner.  We lawyers refer to | 10:52:13 |
| 9 | those as Bates numbers. | 10:52:17 |
| 10 | A.   The 2007 number? | 10:52:18 |
| 11 | Q.   That's right. | 10:52:21 |
| 12 | A.   Got it. | 10:52:22 |
| 13 | Q.   Just for your benefit, they're to give unique | 10:52:22 |
| 14 | identifiers for each page that's produced in | 10:52:25 |
| 15 | litigation. | 10:52:28 |
| 16 | I'm going to refer to the one ending in 007. | 10:52:28 |
| 17 | A.   Thank you.  Uh-huh. | 10:52:33 |
| 18 | █  ████████████████████████████  █████ | |
| █ | ██████ | 10:52:40 |
| 20 | A.   Uh-huh. | 10:52:40 |
| 21 | █  ████████████████████████████  █████ | |
| █ | ████████████████████████████████  █████ | |
| █ | ███████████  █████ | |
| █ | █  █████████████████████  █████ | |
| █ | █  ██████████████████  | 10:52:56 |

Page 61



```
 1                                                    .       10:52:58

 2        Q.   I read the wrong line of my notes.  Thank      10:53:03

 3   you.  All right.                                         10:53:05

 4                                                            

                                                             

                                                             

                                                             

                                                             

                                                             10:53:18

10        Q.   Got it.  Okay.                                 10:53:19

11             So referring to vehicle deployment here --     10:53:20

12        A.   2007?  Page 007?                               10:53:29

13        Q.   Yes.                                           10:53:33

14        A.   Yeah.                                          10:53:35

15        Q.   You see where it says,                         

                                                             

                                                             

                                                             10:53:43

19             MR. HUME:  Objection as outside the scope.     10:53:45

20   Object to form.                                          10:53:47

21                                                            

                                                             

                                                             

                                                             

                                                             10:54:06
```

Page 62

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
1   ███████████████████████████████████       10:54:11

2        MR. HUME:  Objection as outside the scope.   10:54:16

3   ███  ███████████  ████████████████       ████████

█   ██████████  ███████████████████████████    ████████

█   █████████████████████████████████████      ████████

█   ████████████████████████████             ████████

█   ███  █████████████████████████            ████████

█        ████████████████████                ████████

█   ███  █████████                           ████████

█   ███  ████████████████████                ████████

█   ███  █████████                           ████████

█   ███  ██████████████                      ████████

█   █████████████████  █████████             ████████

█   ███  ███████████████████                  10:54:41

15       MR. HUME:  Same objections.  Outside the   10:54:42

16   scope.                                      10:54:44

17  ███  ████████████████████████████████████   ████████

█   ██████████████  ████████████████          ████████

█   ███  █████████████████                     10:54:54

20       MR. HUME:  Same objection.             10:54:56

21       MR. JAFFE:  This will be Exhibit 880.  It is   10:55:10

22   titled, ██████████████████████████████     10:55:15

23   It's Bates-labeled UBER232013.             10:55:19

24       (Whereupon, Deposition Exhibit 880 was marked  10:55:31

25   for identification.)                        10:55:31
```

Page 63

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        Q.   Mr. Meyhofer, have you seen Exhibit 880        10:55:40

 2   before?                                                  10:55:44

 3        A.   You just handed it to me.                      10:55:45

 4        Q.   Right.  Before I handed it to you, have you    10:55:47

 5   seen Exhibit 880 before?                                 10:55:49

 6        A.   I don't recall seeing this document before.    10:55:57

 7        Q.   And have you -- so it's fair to say, then,     10:56:00

 8   you didn't review Exhibit 880 in preparation to testify  10:56:02

 9   on behalf of the company today?                          10:56:05

10        A.   It's fair to say that.                         10:56:07

11        Q.   Okay.  If you can go to the second page --     10:56:08

12        A.   14?                                            10:56:17

13        Q.   Correct.                                       10:56:18

14             Do you see there's a -- the first bullet       10:56:20

15   point says, ██████████████████████████████  ████████

16   ██   ██████████                                          10:56:28

17             Do you see that?                               10:56:29

18        A.   Uh-huh.                                        10:56:29

19   ██  █████████████████████████████████████  ████████

20   ██  ██████████████████████████████                      10:56:33

21             MR. HUME:  Objection as outside the scope of   10:56:36

22        the notice.                                         10:56:38

23   ██  █████████████████████████████  ████████

     ██     █████████████████████████████████  ████████

     ██  ████████████████████  ██████████████████████      10:56:43
```

Page 64

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



| | | |
|---|---|---|
| 17 | Q.   There is a reference to ████ | 10:57:20 |
| 18 | A.   Uh-huh. | 10:57:23 |
| 19 | Q.   What does that acronym stand for? | 10:57:24 |
| 20 | MR. HUME:  Objection as outside the scope. | 10:57:27 |
| 21 | Jordan, you're asking him -- do you contend | 10:57:28 |
| 22 | that this is within the scope?  I'm just letting | 10:57:30 |
| 23 | this go for efficiency. | 10:57:33 |
| 24 | MR. JAFFE:  I'm asking what an acronym stands | 10:57:36 |
| 25 | for.  I mean, this is a basic question here. | 10:57:38 |

Page 65

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. HUME:  I understand that.  But if this is | 10:57:42 |
| 2 | a ploy to try to later say that this is corporate | 10:57:43 |
| 3 | testimony when it's outside the scope, we object | 10:57:46 |
| 4 | to that. | 10:57:48 |
| 5 | MR. JAFFE:  I'm not -- you can make your | 10:57:49 |
| 6 | objections.  I'm not going to debate that with | 10:57:49 |
| 7 | you. | 10:57:51 |
| 8 | Q.   Go ahead. | 10:57:52 |
| 9 | ██  █████████████████ | ████ |
| ██ | ██  ████████████████████████ | ████ |
| ██ | ██████████████████████████ | ████ |
| ██ | █████████████ | ████ |
| ██ | █████████████████ | 10:58:03 |
| 14 | MR. HUME:  Objection as outside the scope. | 10:58:04 |
| 15 | ██  ████████████████████████ | ████ |
| ██ | ███████████████  ███████████████████ | ████ |
| ██ | ███████████████████████████ | ████ |
| ██ | ██████████████ | 10:58:21 |
| 19 | MR. HUME:  So Jordan, let me make my | 10:58:26 |
| 20 | objection clear, because you guys have stopped | 10:58:27 |
| 21 | depositions, taken a witness outside of a room, | 10:58:29 |
| 22 | and redirected an entire deposition based on this. | 10:58:31 |
| 23 | What you've just done, asking an acronym on | 10:58:34 |
| 24 | the document not within the scope of the topic, is | 10:58:36 |
| 25 | classic personal deposition testimony.  You're | 10:58:39 |

Page 66

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | going to have an opportunity to do that after the | 10:58:42 |
| 2 | 30(b)(6). | 10:58:44 |
| 3 | I'm letting these questions go for | 10:58:45 |
| 4 | efficiency's sake.  But unless you can make a | 10:58:46 |
| 5 | showing at some point that what you're doing is | 10:58:49 |
| 6 | within the topic, we're going to -- I'm going to | 10:58:51 |
| 7 | make this objection more forcefully as we go | 10:58:54 |
| 8 | because I don't understand why you're doing it. | 10:58:57 |
| 9 | MR. JAFFE:  The speaking objections are | 10:58:59 |
| 10 | completely improper.  This is -- | 10:59:00 |
| 11 | MR. HUME:  This is exactly what you did -- | 10:59:01 |
| 12 | MR. JAFFE:  Can you please let me finish. | 10:59:02 |
| 13 | MR. HUME:  This is exactly what you did at | 10:59:04 |
| 14 | the Brown deposition, which you stopped and you | 10:59:04 |
| 15 | took the witness out of the room. | 10:59:06 |
| 16 | MR. JAFFE:  Okay.  If you'd let me finish, | 10:59:07 |
| 17 | this is talking about accelerating purchase of | 10:59:08 |
| 18 | lidar units.  That's literally what this bullet | 10:59:11 |
| 19 | says.  Topic number 9 is investment into | 10:59:13 |
| 20 | developing in-house lidar. | 10:59:18 |
| 21 | If you're going to argue that this is outside | 10:59:20 |
| 22 | the scope, make your objection, but we can take | 10:59:22 |
| 23 | that to the Court. | 10:59:24 |
| 24 | MR. HUME:  It's helpful for you to make a | 10:59:25 |
| 25 | proffer of why it's within the scope. | 10:59:27 |

Page 67

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1            MR. JAFFE:  I'm not going to make a proffer      10:59:28

 2      for every line of questioning in the deposition.      10:59:31

 3      Come on.                                              10:59:32

 4            MR. HUME:  You can make it for some if I         10:59:32

 5      object.                                               10:59:34

 6            So you're saying that this is within the        10:59:36

 7      scope of topic 9?                                     10:59:37

 8            MR. JAFFE:  It's talking about the purchase     10:59:39

 9      of lidar units.                                       10:59:41

10            MR. HUME:  If that's what you're saying, then   10:59:42

11      that's what you're saying.  That's fine.  We've       10:59:44

12      made our objection.                                   10:59:46

13      BY MR. JAFFE:                                         10:59:47

14
```

                                                             11:00:20

                                                    Page 68

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1                                                          11:00:37

8           MR. HUME:  Objection.  This is not a 30(b)(6)  11:00:38

9    topic.  I object to it as outside the scope.          11:00:40

10          If you'd be able to say what topic you're in   11:00:43

11   each time, it's not burdensome, but it actually       11:00:45

12   would help you make a clear record.                   11:00:49

13                                                          11:00:54

16          MR. JAFFE:  Okay.  This is going to be          11:01:10

17   Exhibit 881.  It was produced natively, but I'll      11:01:12

18   just mark -- for the record, it's UBER2322221.        11:01:22

19          (Whereupon, Deposition Exhibit 881 was marked  11:01:28

20   for identification.)                                  11:01:28

21   Q.   Mr. Meyhofer, have you seen what I've marked     11:01:49

22   as Exhibit 881 before I handed it to you?  Have you   11:01:51

23   seen it before?                                       11:01:55

24   A.   Not that I recall.                               11:01:56

25   Q.   Okay.  It's fair to say you didn't review        11:01:57
```

Page 69

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Exhibit 881 in preparation for your testimony on behalf | 11:02:01 |
| 2 | of the company today? | 11:02:05 |
| 3 | A.   That is fair to say. | 11:02:06 |
| 4 | Q.   Okay.  I want to go to the second page of the | 11:02:07 |
| 5 | document, please. | 11:02:09 |
| 6 | MR. HUME:  What topic are we in now, | 11:02:29 |
| 7 | Counselor? | 11:02:31 |
| 8 | MR. JAFFE:  Still talking about investment in | 11:02:33 |
| 9 | lidar. | 11:02:34 |
| 10 | Q.   Do you see one of the entries is ██████ | 11:02:41 |
| 11 | A.   Uh-huh.  Yes, I do. | 11:02:44 |
| 12 | ██ ████████████████ ████████ ████████ | |
| ██ | █████████████████████████████████ ████████ | |
| ██ | ████████ | 11:03:03 |
| 15 | Do you see that? | 11:03:05 |
| 16 | A.   I do. | 11:03:05 |
| 17 | ██ ██████████████████████ ████████ | |
| ██ | ██ ███████████ | 11:03:13 |
| 19 | MR. HUME:  Objection as outside the scope. | 11:03:14 |
| 20 | A.   I would assume so. | 11:03:17 |
| 21 | Q.   You're assuming so. | 11:03:18 |
| 22 | Sitting here today, can you tell me whether | 11:03:20 |
| 23 | it is or it isn't, on behalf of Uber? | 11:03:22 |
| 24 | MR. HUME:  Same objection. | 11:03:24 |
| 25 | A.   So I have not seen this document before. ████ | 11:03:25 |

Page 70

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1                                                              
                                                                
                                                                
                                                                
                                                                
                                                                
                                                                
                                                       11:03:52
 9        Q.   Do you see, in the right, there's a kind of      11:03:56
10   second group of columns after                              11:03:58
11        Do you see that?                                      11:04:04
12        A.   (No verbal response.)                            11:04:06
13        Q.   You have to say --                               11:04:06
14        A.   I do see that, yes.                              11:04:07
15        Q.   What does        refer to.                       11:04:09
16             MR. HUME:  Objection as outside the scope.       11:04:12
17                                                              
                                                                
                                                                
                                                                
                                                                
                                                                
                                                       11:04:34
24        A.   Yes.                                             11:04:35
25        Q.   What are the differences between those?          11:04:35
```

Page 71

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1        MR. HUME:  Objection as outside the scope.        11:04:37

2                                                          11:04:53

7        MR. HUME:  Objection as outside the scope.        11:04:55

8                                                          11:05:09

13        MR. HUME:  Objection as outside the scope of     11:05:12

14    the notice.                                          11:05:13

15    A.   I can't.                                        11:05:14

16    Q.   What is                                         11:05:34

17        MR. HUME:  Objection as outside the scope.       11:05:36

18    A.   I don't recall.                                 11:05:43

19    Q.   You're not familiar with that?                 11:05:43

20    A.   I would need a refresher.  If I see the doc,    11:05:45

21    I'll probably remember, but I don't know the         11:05:50

                I've heard it.  I don't remember.          11:05:50

23        MR. JAFFE:  Let's mark this as 882.  It's        11:05:53

24    Bates-labeled UBER232549.                            11:05:56

25                        - - -                            11:05:58

                                                           Page 72

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1          (Whereupon, Deposition Exhibit 882 was marked        11:05:58

 2      for identification.)                                     11:05:58

 3          MR. HUME:  This is 882?                              11:06:11

 4          MR. JAFFE:  Correct.                                 11:06:12

 5      Q.  All right.  I've handed you a document               11:06:20

 6  entitled, ███████████████████████████            ████████

 █  ████████████████████                                         11:06:25

 8          Do you see that?                                     11:06:26

 9      A.  I do.                                                11:06:26

10      Q.  Does this refresh your memory on what project        11:06:28

11  ████████is?                                                  11:06:31

12         ██  ████████████████████████████           ████████

 █  ██████████████████████████████████████           ████████

 █  ██████████████████████████████████████           ████████

 █  █████████████████████  █████████████████████      ████████

 █  █████████████████████████████████████████        ████████

 █  ██████████████████████████████████████           ████████

 █  ████████████████████████████████████████         ████████

 █  ████████                                                    11:06:55

20      Q.  Okay.  So you said "likely" and "probably."          11:06:57

21  Are you speculating, or do you actually know what           11:07:06

22  Project ███████████?                                        11:07:10

23      A.  I've not seen this document before.  They use       11:07:13

24  internal code names on all the teams.  And I do not         11:07:16

25  know what this ██████████ refers to specifically within     11:07:18
```

Page 73

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   ████████████ team.                               11:07:23
 2        Q.   You're not prepared to testify regarding the   11:07:25
 3   content of Exhibit 882 today.  Is that fair?      11:07:27
 4            MR. HUME:  Objection.  He hasn't reviewed the   11:07:30
 5        whole document.                              11:07:32
 6        A.   I am happy to read through the doc and give   11:07:33
 7   you my understanding of what questions you have about   11:07:35
 8   it.                                               11:07:37
 9        Q.   Did you review this document in preparation   11:07:38
10   for your testimony today?                         11:07:39
11        A.   No, I did not.                          11:07:41
12        Q.   Okay.  The date of this document is May 20,   11:07:42
13   2016.  Right?                                     11:07:50
14        A.   That's correct.                         11:07:54
15        Q.   This was after Uber decided to buy Otto.   11:07:55
16   Correct?                                          11:07:59
17        A.   That is correct.                        11:08:02
18        Q.   Now, let's go to page ending in 572.  So the   11:08:03
19   page here ending in 572 of Exhibit 882, it refers to   11:08:25
20   some information from November 2015.  Correct?    11:08:31
21        A.   Yes.  That's correct.                   11:08:43
22       ██  ████████████████████████████             ████████
   ██  ████████████████████  ███████                  ████████
   ██      ████████████████████                       ████████
   ██    ██  ██████████████                           11:08:55
```

Page 74

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1

11              MR. HUME:  Objection to form.              11:09:35

12

19     Q.   I understand.                                 11:10:02

20          So my question now -- I'm saying -- if you're 11:10:03

21   telling me that this document is not making any sort of 11:10:06

22   an estimate, my question for you:                    

                                                            75
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



1

 

 

 

 

 

 

 

 

                                                                     11:10:47

10       Q.    So your testimony is that this number was   11:10:51

11   just picked at random?                                11:10:54

12       A.    I don't think anything in                   11:10:47

 

 

 

 

 

 

                                                                     11:11:20

21            MR. HUME:   Objection to the form.          11:11:22

22                                                                   11:11:22

 

                                                                     11:11:30

25       Q.    Nothing in this document is accurate?      11:11:31

Page 76

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



1    A.    Well, this page 72 --                        11:11:33

2          MR. HUME:   Objection to the form.           11:11:36

8          MR. HUME:   Objection.   Objection to the form.   11:11:53

9    Mischaracterizes his testimony.                    11:11:54

20   Q.    So let me ask my question again.             

Page 77

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        Q.   I don't want you to imagine.  I'm asking you,        11:12:38

2   testifying on behalf of the company: ████████████    ████████

█        ████████                                                  11:12:43

4        A.   I don't have --                                      11:12:44

5             MR. HUME:  Objection to the form.  I'm not           11:12:45

6   sure that specific -- I'll just preserve an                    11:12:46

7   objection as potentially outside the scope.                   11:12:53

8       ██ ██████████████████████████████    ████████

█   █████████████                            ████████

█       ██ ████████████████████████████      ████████

█   ██████████████████████████████████       ████████

█   ██████████████████████████████                            11:13:11

13            MR. HUME:  I'll object to the form.                  11:13:18

14       A.   I don't couple the two together.                     11:13:21

15       Q.   I'm not asking you to couple.  I'm just using        11:13:23

16   that as a timing bookmark.                                    11:13:25

17      ██ █████████████████████████████       ████████

█   ███████████████████████████████████        ████████

█       ██ ████ ██████                          ████████

█       ██ ████████████████████████████████     ████████

█   ██████████                                                11:13:37

22       Q.   What about after?  Didn't --                         11:13:38

23            Let me just ask the question directly. ████        ████████

█   ████████████████████████████████████                       ████████

█   ████████████████████████████████████                      11:13:44
```

Page 78

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1                                                                11:13:52
4        Q.   So if there are documents that reflect that,       11:13:54
5    that would be wrong?                                         11:13:57
6        A.   That isn't what I'm saying.                         11:13:58
7        Q.   What are you saying?                                11:14:00
8
18            MR. JAFFE:  Let's go ahead and mark as              11:14:41
19       Exhibit 883 a document also entitled "                   11:14:57
                 " Bates-labeled UBER232488.                      11:14:57
21            (Whereupon, Deposition Exhibit 883 was marked       11:15:01
22       for identification.)                                     11:15:01
23            MR. HUME:  What are we up to?                        11:15:13
24            MR. JAFFE:  883.                                     11:15:16
25       Q.   Mr. Meyhofer, have you seen Exhibit 883              11:15:17
```

11:14:35

Page 79

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    before?                                            11:15:20

2         A.   Nope.  I have not.                        11:15:21

3         Q.   So it's fair to say that you did not review 11:15:23

4    the content of Exhibit 883 to prepare to testify on 11:15:25

5    behalf of the company today?                        11:15:28

6         A.   That's correct.                           11:15:30

7         Q.   All right.  So I want to contrast -- compare 11:15:31

8    and contrast Exhibit 883 to Exhibit 882.            11:15:35

9              Do you see Exhibit 882 is dated May 20, 2016? 11:15:39

10        A.   Uh-huh.                                    11:15:43

11        Q.   And Exhibit 883 also, ███████████████ is   11:15:44

12   dated September 13, 2016?                            11:15:48

13        A.   I do.                                      11:15:51

14        Q.   So this is a few months later, same project. 11:15:52

15   Is that fair?                                        11:15:58

16        A.   That's -- yes.                             11:15:59

17        Q.   Okay.  If you can turn to the page ending in 11:16:00

18   490 --                                               11:16:11

19        A.   Got it.                                    11:16:12

20        Q.   -- the executive summary --                11:16:13

21        A.   Uh-huh.                                    11:16:15

22        Q.   -- you see where it says, ████████         11:16:16

23        A.   Uh-huh.                                    11:16:23

24   ███ █████████████████████████████           ████████

███ ███████████████████████?                            11:16:29
```

Page 80

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
1      A.   Uh-huh.                                      11:16:32

2      Q.   Do you see that?                             11:16:33

3      A.   Yes.                                         11:16:33

4      Q.   What does that mean?                         11:16:33

5

18     Q.   So then, I want to go back to Exhibit 882,   11:17:30

19   the [               ] presentation.                 11:17:38

20     A.   Right.  Page?                                11:17:40

21     Q.   And the page 551, "Executive Summary."       11:17:42

22     A.   Got it.                                       11:17:55

23     Q.   You see it says, "                            

                                                         11:17:59

25     A.   Oh, yes, I see that.                         11:18:06
```

Page 81

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



1        Q.     And then, it says, ▮▮▮▮▮▮▮▮        ▮▮▮▮
▮        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮                              11:18:09
3        A.     I do.                                 11:18:14
4            ▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮                       ▮▮▮▮
▮        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                      ▮▮▮▮
▮        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                        ▮▮▮▮
▮            ▮   ▮▮▮▮▮▮▮▮▮▮▮▮                        ▮▮▮▮
▮            ▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                    ▮▮▮▮
▮        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                       ▮▮▮▮
▮        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                          ▮▮▮▮
▮        ▮▮▮▮▮▮▮                                     ▮▮▮▮
▮            ▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮                      ▮▮▮▮
▮        ▮▮▮▮▮▮▮▮▮▮▮   ▮▮▮▮▮▮▮▮                      ▮▮▮▮
▮        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                           ▮▮▮▮
▮        ▮▮▮▮▮▮                                      11:19:18
16       Q.     What --                               11:19:19
17       A.     -- and you see different data.        11:19:19
18       Q.     Sorry.  Go ahead.  I didn't mean to   11:19:20
19       interrupt.                                   11:19:21
20              ▮▮▮▮▮▮▮▮▮▮▮▮▮▮                        ▮▮▮▮
▮        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                         ▮▮▮▮
▮        ▮▮▮▮▮▮▮▮▮▮▮▮                                ▮▮▮▮
▮            ▮   ▮▮▮▮▮▮▮▮▮▮▮▮                        ▮▮▮▮
▮        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                        ▮▮▮▮
▮        ▮▮▮▮▮▮▮                                     11:19:44

Page 82

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1

18     Q.   I'm not asking you to read the disclaimer to        11:20:42

19     me.  I'm asking:                                          11:20:58
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1              ████  █████████████████████████         ███████            
 █      ███████                                         ███████            
 █          ████████████████████████████               11:21:04           
 4      Q.   Tell me them.                              11:21:07           
 5      A.   I do not know those.                       11:21:08           
 6          ████  ████  ███████████████████             ███████            
 █  ██████████████████████  ██████████                  ███████            
 █              █████████  ███████████████               ███████            
 █          █████████                                    ███████            
 █          ████  ██████  ████████████████               ███████            
 █      █████████                                        11:21:19          
12      Q.   Okay.  If you can, go to page 490.  We're in    11:21:20      
13  Exhibit 883.                                         11:21:43          
14      A.   Got it.                                     11:21:45          
15      Q.   Sorry.  512.  Excuse me.                    11:21:49          
16           You see this slide is entitled █████        ███████           
 █      ████████                                         11:22:17          
18      A.   I do.                                       11:22:17          
19          ████  █████████████████████████             ███████           
 █      █████████                                        ███████           
 █          ████  ████████████                          11:22:21          
22      Q.   You don't know?                             11:22:23          
23          ████  ████████████  █████████████           ███████           
 █  █████████████████████  ████████████                 ███████           
 █      ████████████████████████                        11:22:31          
```

Page 84

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



1    Q.   Are you prepared to testify on behalf of the     11:22:37

2    company about this ████████████ that we're talking     11:22:39

3    about?                                                 11:22:41

4    A.   I'm prepared to answer questions to the best     11:22:46

5    of my knowledge about what I see here, on behalf of the  11:22:48

6    company.                                               11:22:50

7

                                                            11:23:16

17   Q.   You didn't prepare to testify regarding the     11:23:17

18   ████████████ here on page 512 of Exhibit 883 for     11:23:19

19   your corporate testimony.  Is that fair?              11:23:24

20

                                                            11:23:45

Page 85

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1      ██████████  ██████████████████████████    ██████████
       ████████████████████████████████████████.         11:23:52
3          Q.   I want to ask a more specific question.  I    11:23:54
4      want to ask questions about this page and where the    11:23:56
5      numbers come from on this page ending in 512 on page --  11:23:59
6      Exhibit 883.                                           11:24:04
7              Are you prepared to explain the numbers on    11:24:05
8      this page?                                             11:24:06
9          A.   I would need to have ████████████ here to    11:24:07
10     do that accurately.                                    11:24:09
11         Q.   So "no"?                                      11:24:10
12         A.   Correct.                                      11:24:11
13             MR. JAFFE:  All right.  This is going to be    11:24:20
14         Exhibit 884.  This is UBER231748.  The first page  11:24:27
15         says ████████████████████████                     11:24:40
16             (Whereupon, Deposition Exhibit 884 was marked  11:24:53
17         for identification.)                               11:24:53
18         Q.   Mr. Meyhofer, have you seen Exhibit 884       11:24:59
19     before just when I handed it to you right now?         11:25:02
20         A.   No, I have not.                               11:25:04
21         Q.   Okay.  Do you know if this presentation is    11:25:06
22     referring to Ottomotto or Otto Trucking?               11:25:08
23         A.   I do not know which of the two it refers to.  11:25:14
24     ████████████████████████████████    ██████████
       ████████████████████████████████                       11:25:18
```

Page 86

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        Q.    So if you would just want to take a second to        11:25:21

2   look through the different pages, my question is:  Are        11:25:23

3   you prepared to testify regarding the numbers in this        11:25:27

4   document on behalf of the company?                           11:25:30

5        A.    No, I'm not.                                       11:25:32

6        Q.    So you can't explain where any of these           11:25:33

7   numbers came from or what they mean, sitting here            11:25:35

8   today?                                                       11:25:38

9        A.    No.  I'm sure it came from the finance team.      11:25:38

10  I can't explain them in detail, no.                          11:25:40

11       Q.    For example, if you go to the page ending in      11:25:44

12  750 --                                                       11:25:47

13       A.    Yes.                                              11:25:48

14       Q.    -- do you see where it refers to a ██████         ████████

██       ██████" on the top?                                    11:25:51

16       A.    Yes.  Yes.  Yes.  Yes.  Yes.                      11:25:55

17       ██  ██████████████████████████████████               ████████

██  ████████████████████████████                              ████████

██       ██  ██████████████████                              ████████

██       ██  ████████████████████████████████              ████████

██  ████████████████████████████                            ████████

██       ████████████████████████████                      ████████

██  ████████████████████                                    ████████

██       ██  ██████████████████                            ████████

██       ██  ████████████████████████████████              11:26:30
```

Page 87

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1                                              11:26:33

 2        A.   Uh-huh.                          11:26:39

 3                                              

                                               

                                                11:26:47

 6        Q.   Do you know what that refers to? 11:26:47

 7        A.   Earnings before initial tax, I would guess.  11:26:51

 8

















                                                11:27:56

25        Q.   Right.  But my understanding is -- excuse me.  11:28:00
```

Page 88

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1          My question is:

10          MR. HUME:  Objection.  I'm going to object as     11:28:24

11      outside the scope.                                     11:28:27

12

25          Q.   Do you know that, or are you speculating?     11:29:14
```

11:28:21

11:29:14

Page 89

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1
```

```
                                                              11:29:36
10        MR. JAFFE:  Okay.  You can put it aside.         11:29:38

11        All right.  Let's take out the little           11:30:00

12   computer here.                                        11:30:03

13        MR. BERGSTROM:  All right.  Do you want to       11:30:05

14   look at it before I give it to him or --             11:30:19

15        MR. JAFFE:  Yeah.  Let me just read for the      11:30:22

16   record what it is.  So why don't we look at          11:30:24

17   UBER224219.                                           11:30:26

18        And for the record, I'm just handing the        11:30:31

19   witness a laptop that has this spreadsheet loaded     11:30:35

20   up.                                                   11:30:39

21        THE WITNESS:  Thank you.                         11:30:51

22   BY MR. JAFFE:                                         11:30:51

23   Q.   Mr. Meyhofer, you'll have to bear with me       11:30:51

24   because you're looking at the computer and I am not.  11:30:53

25   But what I'd like to do is, if you could, please      11:30:57
```

Page 90



```
 1    explain for the record what the columns in this        11:31:02

 2    spreadsheet refer to.  And if you can be kind of        11:31:08

 3    explanatory so that it's clear for someone reading the  11:31:11

 4    transcript, that would be beneficial.                   11:31:16

 5                                                            

 6                                                            

 7                                                            

 8                                                            

 9                                                            

10                                                            

11                                                            

12                                                            

13                                                            

14                                                            

15                                                            11:32:05

16         Q.   And that's the first tab?                     11:32:08

17         A.   I'm sorry.  Yeah, I guess it is.              11:32:10

18                                                            

19                                                            

20                                                            

21                                                            

22                                                            

23                                                            11:32:48

24         Q.   So going back to the -- well, let me ask this 11:32:50

25    question:                                               11:32:54
```

                                                          Page 91

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1                                                      11:33:45
                                              ?
10        MR. HUME:  Objection to the form and preserve   11:33:48
11   an objection as outside the scope.                   11:33:50
12                                                        
                                                          11:34:34
24        MR. HUME:  Objection to the form.               11:34:36
25                                                        11:34:42
```

Page 92

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



1

11:34:54

4        Q.   I want to be a little more pointed about    11:34:56

5   this.  You're assuming.  I don't want you to assume.  11:34:59

6

11:35:09

10          MR. HUME:  Objection.  Sorry.  Objection to   11:35:10

11   the form.                                            11:35:15

12

11:35:45

Page 93

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



1

 

 

 

                                    11:36:05

6       Q.   Okay.  All right.  Can you go back to     11:36:07

7   Exhibit 878 for a second.                       11:36:31

8       A.   Got it.  I have it.                 11:36:49

9       Q.   If you can, go to page 18.           11:36:57

10       A.   Okay.                           11:37:04

11       Q.   Do you see the second paragraph of the second   11:37:05

12   supplemental response?                   11:37:12

13       A.   Uh-huh.                       11:37:13

14       Q.   Do you see it refers to UBER224219?     11:37:14

15       A.   Uh-huh.                       11:37:18

16       Q.   That's the same number as the title of the   11:37:19

17   spreadsheet that you've just been discussing on the   11:37:22

18   laptop.  Right?                     11:37:24

19       A.   That's right.                   11:37:25

20

 

 

 

 

                                    11:37:54

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1 ███████████████████████                    ██████████

■      ███████████████████████████████   ██████████

■   ███████████████████████████████████        11:38:05

4      Q.   Okay.  If you can -- I'm happy to do this,       11:38:10

5  but maybe you can just do it on the fly here.  Open the    11:38:17

6  other spreadsheet that's on the desktop of the computer    11:38:20

7  in front of you.  And that one should be numbered          11:38:23

8  232454.                                                    11:38:34

9      A.   Uh-huh.   ███████████ " it's called?             11:38:37

10      MR. HUME:  What's the Bates number of the one        11:38:46

11  we just opened?  Oh, 232454.                              11:38:48

12      MR. JAFFE:  Now what I want to do is mark as          11:38:58

13  Exhibit 885 Defendants Uber and Otto's fourth             11:39:00

14  supplemental responses to Waymo's first set of            11:39:13

15  interrogatories.                                          11:39:16

16      (Whereupon, Deposition Exhibit 885 was marked         11:39:16

17  for identification.)                                      11:39:16

18      Q.   All right.  So can you go to page 18 of this     11:39:33

19  document, Exhibit 885.                                    11:39:53

20      A.   Got it.                                          11:40:02

21      Q.   Actually, before we get there, did you review    11:40:03

22  Exhibit 885, Defendants' fourth supplemental responses,   11:40:06

23  in preparation for your testimony today, or did you       11:40:09

24  only review the one we marked earlier, which was the      11:40:11

25  second set of supplemental responses, Exhibit 878?        11:40:14

Page 95

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1          MR. HUME:  Objection to form.                    11:40:26

2      A.   I reviewed only 878.                            11:40:36

3      Q.   Okay.  So you didn't review and prepare to      11:40:39

4  testify regarding the third and fourth supplemental      11:40:43

5  responses to Uber's interrogatory number 3.  Is that     11:40:46

6  fair?                                                     11:40:50

7      A.   That's fair.                                     11:40:51

8      Q.   Even so, I want to try to plod along as best     11:40:55

9  we can here.  So if you look at page 18 of Exhibit 885,   11:41:00

10  do you see that it cites UBER232454?                     11:41:06

11      A.   Yes.                                            11:41:14

12

                                                             11:41:51

                                                           Page 96

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



11:43:13

25       Q.    Right.   What would that number mean?       11:43:14

Page 97

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1                                                    11:43:30

 7      Q.    Okay.                                   11:43:32

 8

                                                      11:44:00

18      Q.    All right.  If you look at column P --  11:44:01

19      A.    Yes.                                    11:44:05

20

                                                      11:44:20

24            MR. HUME:  Objection as beyond the scope.  11:44:20

25                                                    11:44:22
```

Page 98

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



1

11:44:32

6      Q.    This document is not accurate?          11:44:34

7

11:44:57

13     Q.    Okay.

11:45:43

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1                                                    11:45:54

 4        Q.    Right.   What does that date in column C refer    11:45:57

 5    to?                                             11:46:00

 6                                                    11:46:09

 9        Q.    I heard you use that word "assume" again.    11:46:14

10              Do these refer to when the charges are    11:46:20

11    entered or not?                                11:46:23

12                                                    11:47:06
```

Page 100

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1     ████████████████████████████████████        █████████
       ██    ██████████████████████████████████████ █████████
       ██████████████████████████████████ ██        █████████
       ████████                                      █████████
       ██    ██████████                              11:47:22
 6     Q.    Okay. █████████████████████████████      █████████
       █████████████████████   █████████████████████ █████████
       ████████████████████████████                  11:47:31
 9           Let me know when you're ready.           11:48:06
10     A.    It's crushing this little computer.      11:48:08
11           It looks like they're sorted by date.    11:48:10
12     Q.    Okay. ████████████████████████           █████████
       ██  ██████████████████████                     █████████
       ██    ██   ██                                  █████████
       ██    ██   ████████████████████████████████    █████████
       ██  ██████                                     █████████
       ██    ██   ████████                            █████████
       ██    ██   ████████████████████████████        █████████
       ██  ████████████████████████████████████████   █████████
       ██  ██████████████                             █████████
       ██    ██   ████████████████████████████████    █████████
       ██  █████████████████████████████████████      █████████
       ██  █████████████████████    █████████████     11:49:04
24     Q.    Why is that?                              11:49:11
25     A.    I don't know.                             11:49:13
```

Page 101

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              MR. JAFFE:  Okay.  Why don't we take our next    11:49:15

 2       break.                                                  11:49:23

 3              MR. HUME:  Okay.                                  11:49:24

 4              THE VIDEOGRAPHER:  This ends media number 2.      11:49:25

 5       Going off the record, the time is 11:49 a.m.            11:49:27

 6              (Recess taken.)                                   12:12:49

 7              THE VIDEOGRAPHER:  This begins media              12:13:06

 8       number 3.  We are on the record.  The time is           12:13:07

 9       12:12 p.m.                                               12:13:10

10    BY MR. JAFFE:                                               12:13:11

11       Q.    Welcome back, Mr. Meyhofer.                        12:13:11

12       A.    Thank you.                                         12:13:13

13       Q.    Just to -- we were talking about two               12:13:15

14    spreadsheets that are loaded up on this laptop.  One is     12:13:17

15    224219.  The other is 232454.  And as, I think, we          12:13:20

16    talked about before, you can't, sitting here today,         12:13:26

17    tell me what all the information in those means and          12:13:30

18    where -- the accuracy of the data in there.                 12:13:32

19           Is that fair?                                        12:13:34

20       A.    That is correct.                                   12:13:35

21       Q.    So my question is:  Who would know the answer      12:13:35

22    to those questions?                                         12:13:38

23       A.    So I would -- I would work with ████████    ████████    12:13:45
      ██   ████████████████  They're the two most knowledgeable

25    finance people at ATG.  And I would question the method     12:13:50
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | with which they pulled this data, how they categorized | 12:13:56 |
| 2 | it, and why they used that data. | 12:14:01 |
| 3 | Q.   And those conversations -- you didn't have | 12:14:03 |
| 4 | those conversations in preparation for your testimony | 12:14:05 |
| 5 | today? | 12:14:07 |
| 6 | A.   I had a conversation with ▉▉▉ about the | 12:14:08 |
| 7 | difficulty of us producing all of this data, given that | 12:14:10 |
| 8 | we don't have this sort of tracking in place, but I | 12:14:14 |
| 9 | didn't talk with her specifically about this | 12:14:18 |
| 10 | spreadsheet. | 12:14:20 |
| 11 | Q.   About either of the spreadsheets? | 12:14:22 |
| 12 | A.   Correct. | 12:14:23 |
| 13 | Q.   So you didn't walk with ▉▉▉▉▉ or | 12:14:24 |
| 14 | ▉▉▉▉▉ about how the data in these two spreadsheets | 12:14:27 |
| 15 | was generated, its accuracy, or any of those kinds of | 12:14:32 |
| 16 | topics? | 12:14:35 |
| 17 | A.   That is correct.  I did not talk to either of | 12:14:36 |
| 18 | them about the data in these spreadsheets. | 12:14:38 |
| 19 | Q.   Okay.  And if you wanted to get more | 12:14:40 |
| 20 | information, those would be the two people you would | 12:14:42 |
| 21 | ask? | 12:14:44 |
| 22 | A.   Oh, yes. | 12:14:45 |
| 23 | Q.   Was getting a custom lidar a motivating | 12:14:57 |
| 24 | factor in the decision to acquire Otto? | 12:15:00 |
| 25 | MR. HUME:  Objection. | 12:15:03 |

Page 103

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | What topic are you under now? | 12:15:04 |
| 2 | MR. JAFFE:  Still on topic 9. | 12:15:06 |
| 3 | MR. HUME:  Reserve the objection -- preserve | 12:15:10 |
| 4 | the objection as outside the scope. | 12:15:12 |
| 5 | ███  ████████████████████████  ██████ | |
| | ██  ███████████████████████████████████  ██████ | |
| | ██  ████████████████████████████ | 12:15:35 |
| 8 | Q.   Okay.  We talked earlier about the | 12:15:57 |
| 9 | preparation work that you did to testify on behalf of | 12:16:04 |
| 10 | topic number 9.  You said you reviewed a few documents; | 12:16:06 |
| 11 | you spoke with ████████.  And I believe that was it? | 12:16:09 |
| 12 | A.   Yes. | 12:16:16 |
| 13 | Q.   Now, we spoke about your conversation with | 12:16:19 |
| 14 | ████████.  Did you speak with ██████████ about | 12:16:21 |
| 15 | anything else, other than what we've already talked | 12:16:24 |
| 16 | about, in preparation for your testimony today? | 12:16:27 |
| 17 | MR. HUME:  Just a minute.  Go ahead. | 12:16:30 |
| 18 | A.   Will you repeat the question first. | 12:16:45 |
| 19 | Q.   Sure.  Let me rephrase it.  Hopefully, it | 12:16:48 |
| 20 | will be clear. | 12:16:49 |
| 21 | You mentioned a conversation that you had | 12:16:51 |
| 22 | with ████████. | 12:16:52 |
| 23 | A.   Uh-huh. | 12:16:54 |
| 24 | Q.   Do you remember that? | 12:16:54 |
| 25 | A.   Uh-huh. | 12:16:55 |

Page 104

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        Q.   If you could, just say "yes" or "no."        12:16:55

2        A.   Yes, I do.                                    12:16:56

3        Q.   Thank you.                                    12:16:57

4             Did you -- other than what you talked --      12:16:59

5   disclosed before, did you discuss anything else with   12:17:03

6   ███████████   to prepare for your deposition today on  12:17:06

7   behalf of the company?                                 12:17:09

8        A.   I don't remember everything I disclosed, but 12:17:11

9   I don't believe there's anything that I discussed with 12:17:14

10  her that I omitted.                                     12:17:16

11            I don't -- we talked about the ability for us 12:17:19

12  █████████████████████████████████████████   ███████

    █████████████████████████████████████   ███████

    ███████████████████████████  ██████████   ███████

    ███████████████████████████████   ███████

    ████████████  ████████████████████████   ███████

    ███████████████████████████████████   ███████

    ██████████   ███████

    ██████  ████████████████████████   ███████

    ████████████████████   ███████

    ████  ███████████████████████   ███████

    ████████████████████████████████████   ███████

    █████████████████████████████████████████   ███████

    █████████████████████████████████████   ███████

    █████████████████████████████████████         12:18:11
```

Page 105

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1
                                                      12:19:02
15       Q.   You mentioned something called "vertical beam   12:19:04
16   spacing"?                                         12:19:07
17       A.   Uh-huh.                                  12:19:08
18       Q.   What did you mean by that?               12:19:09
19       A.   So the vertical beam spacing is, the lasers   12:19:10
20   are -- it's not one laser beam.  It's an array of   12:19:13
21   lasers.  And they are emitted through lenses.  And when   12:19:16
22   they're emitted through lenses, the -- essentially, as   12:19:21
23   they sweep, they make a line.  And these lines have a   12:19:29
24   space between them.  And when you project those lines   12:19:32
25   from an angle onto a ground surface, where they hit   12:19:37
```

Page 106

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    determines the height of objects that they can paint.      12:19:42

 2    And it has an attribute to how fast your vehicle can       12:19:45

 3    go.                                                        12:19:50

 4            So the vertical beam spacing is really one of      12:19:50

 5    the big performance attributes that determines how a       12:19:53

 6    laser -- you know, its requirements, its recipe.           12:19:59

 7        Q.   You would say vertical beam spacing is the        12:20:07

 8    recipe for the lidar?                                      12:20:10

 9        A.   Well, it's one --                                 12:20:11

10            MR. HUME:  Objection.  I'm sorry.  Object as       12:20:11

11        outside the scope of the topic.                        12:20:13

12        A.   It's one of the performance attributes that       12:20:16

13    matters a lot to us.                                       12:20:19

14        Q.   It's a key performance attribute?                 12:20:22

15        A.   It's a key performance attribute, yes.            12:20:24

16        Q.   What other costs did ▮▮▮▮▮▮▮ not think to          12:20:31

17    include for lidar costs?                                   12:20:36

18        A.   The only one --                                   12:20:37

19            MR. HUME:  Objection to the form of the            12:20:38

20        question.                                              12:20:39

21    ▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮

▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                      ▮▮▮▮▮▮

▮▮         ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮        ▮▮▮▮▮▮

▮▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮               ▮▮▮▮▮▮

▮▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮               12:20:59
```

Page 107

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



1

9            So however that was pulled I don't have faith        12:21:27

10    in.  I think it's an attempt to show what our data        12:21:30

11    situation looks like, but --        12:21:34

12        Q.   You'd agree they're higher though.   Right?        12:21:36

13            MR. HUME:   I don't think he had finished his        12:21:39

14    question -- his answer.   I'm sorry.        12:21:40

15        Q.   Go ahead.        12:21:43

16

                                                                 12:22:19

Page 108

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
16      Q.   You don't know?                      12:23:05

17      A.   No, I don't.                         12:23:06

18      Q.   Let's change topics, literally.  Let's talk   12:23:21

19  about topic number 2, "The state and status of Uber's   12:23:33

20  lidar development for autonomous vehicles before   12:23:38

21  January 2016."                                12:23:40

22      A.   Got it.                              12:23:43

23      Q.   What did you do to prepare to testify with   12:23:45

24  regard to topic 2?                            12:23:47

25      A.   I had conversation with ▓▓▓▓▓▓▓▓▓   12:23:51
```

Page 109

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    output?                                          12:52:32

 2        Q.   Yes.                                    12:52:33

 3        A.   Because it's a resource that is necessary for   12:52:34

 4    us to be successful.                             12:52:40

 5            MR. HUME:  Sorry.  I don't know if I      12:53:02

 6        registered an objection to the last question, but   12:53:03

 7        I'll register it now.  It's outside the scope.   12:53:12

 8            MR. JAFFE:  I think we're on 886.  I'm going   12:53:21

 9        to mark this as Exhibit 886.  It is entitled   12:53:25

10    ███████████████████████████████████  ███████    12:53:34

          ███████████████████████████

12            (Whereupon, Deposition Exhibit 886 was marked   12:53:37

13        for identification.)                          12:53:37

14        Q.   Mr. Meyhofer, have you seen Exhibit 886   12:53:50

15    before?                                          12:53:52

16        A.   I believe so, yes.                       12:53:55

17        Q.   Did you review this document in preparation   12:53:56

18    for your testimony today?                         12:53:58

19        A.   Yes.                                     12:54:00

20        Q.   You did?                                 12:54:01

21        A.   I think I did.                           12:54:04

22        Q.   How long did you spend reviewing Exhibit 886?   12:54:06

23        A.   Not very long at all.                    12:54:10

24        Q.   Five minutes?                            12:54:12

25        A.   Not -- maybe, yeah.                      12:54:13
```

Page 132

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   Less than five minutes? | 12:54:15 |
| 2 | A.   Yes. | 12:54:16 |
| 3 | Q.   So we were talking earlier about the state of | 12:54:17 |
| 4 | Uber's lidar development before 2016. | 12:54:20 |
| 5 | Another one of the topics that you're | 12:54:24 |
| 6 | designated on relates to Mr. Levindowski's input into | 12:54:26 |
| 7 | Uber's lidar efforts. | 12:54:31 |
| 8 | A.   Yes. | 12:54:33 |
| 9 | Q.   What I wanted to direct you to is -- do you | 12:54:35 |
| 10 | see the "Date" column on Exhibit 886? | 12:54:37 |
| 11 | A.   Yes, I do. | 12:54:39 |
| 12 | Q.   And I'm going to refer to this as the "lidar | 12:54:40 |
| 13 | log," 886. | 12:54:42 |
| 14 | Do you understand what I'm referring to? | 12:54:44 |
| 15 | A.   I do. | 12:54:45 |
| 16 | Q.   If you look at the lidar log, under the date, | 12:54:45 |
| 17 | do you see ██████████████████████████   ████████ | |
| | ██████████ | 12:55:04 |
| 19 | A.   I do see that. | 12:55:05 |
| 20 | Q.   And the ██████████████████████ | 12:55:10 |
| 21 | Do you see that? | 12:55:18 |
| 22 | A.   Uh-huh. | 12:55:19 |
| 23 | Q.   What was Uber talking to Anthony Levandowski | 12:55:24 |
| 24 | about regarding lidar in 2015? | 12:55:26 |
| 25 | A.   So these people are strategy and executive | 12:55:32 |

Page 133

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   I was going to read the topics.   Sorry.   I | 13:04:31 |
| 2 | realize now -- that makes sense. | 13:04:33 |
| 3 | You are designated to testify regarding topic | 13:04:36 |
| 4 | number 1 regarding Mr. Levandowski's development of | 13:04:38 |
| 5 | lidar? | 13:04:40 |
| 6 | A.   Yes. | 13:04:41 |
| 7 | Q.   What did you do to -- | 13:04:43 |
| 8 | MR. HUME:  I think -- just for the record, I | 13:04:44 |
| 9 | think he's designated only for Uber, I think. | 13:04:44 |
| 10 | Q.   What are -- | 13:04:50 |
| 11 | MR. JAFFE:  He's only designated -- I'm | 13:04:50 |
| 12 | sorry.  What did you say? | 13:04:52 |
| 13 | MR. HUME:  I think he's designated for | 13:04:52 |
| 14 | Levandowski's involvement in the development at | 13:04:55 |
| 15 | lidar at Uber, on behalf of Uber.  I don't know | 13:05:01 |
| 16 | that he can speak to what happened at Ottomotto. | 13:05:03 |
| 17 | MR. JAFFE:  So the designation did not say | 13:05:08 |
| 18 | that. | 13:05:11 |
| 19 | MR. HUME:  I'll check on a break.  Why don't | 13:05:12 |
| 20 | you ask him questions.  We'll see if we have an | 13:05:13 |
| 21 | Ottomotto designee separately.  Maybe not. | 13:05:17 |
| 22 | Q.   Okay.  Mr. Levandowski [sic], what did you | 13:05:19 |
| 23 | do to prepare -- not -- you are not Mr. Levandowski. | 13:05:23 |
| 24 | What did you do to prepare to testify about | 13:05:25 |
| 25 | Mr. Levandowski's development or contributions to | 13:05:28 |

Page 141

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   lidar?                                              13:05:32

 2        A.   Again, I talked with ████████████        13:05:40

 3        Q.   Anything else?                            13:05:56

 4        A.   No, I mean, unless you want to count ████ 13:05:57

 5   but --                                              13:05:59

 6        Q.   Did you review any documents to prepare to 13:06:00

 7   testify regarding topic number 1?                   13:06:02

 8        A.   This is lidar work between -- just period, 13:06:11

 9   total, of Anthony?                                  13:06:14

10        Q.   Yeah.  That's what topic number 1 says.   13:06:18

11        A.   Aside from working closely with him the whole 13:06:21

12   time and talking with ███████████, that's all I     13:06:24

13   did.                                                13:06:29

14        Q.   So in preparing for your testimony on behalf 13:06:32

15   of at least Uber, you didn't review any documents?  13:06:34

16        A.   I don't remember if the documents I reviewed 13:06:50

17   were about topic 1 or were in search for other      13:06:52

18   documents, but no, I don't remember specifically    13:06:57

19   reviewing documents about this topic.               13:06:58

20        Q.   What did you and Mr. ██████ discuss with   13:07:06

21   regard to topic number 1?                           13:07:09

22        A.   Time lines, essentially, of when we broke the 13:07:12

23   specification to final and got it into ██████ for the 13:07:19

24   ████████████████████████████████████████      ████████ 

██        ████████████████████████████ -- when he started to 13:07:31

                                            Page 142
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    communicate with the NewCo consulting company, I wasn't      13:07:54

 2    clear on.  That's what I recall.                             13:08:03

 3         Q.   What else -- so what did he tell you?              13:08:16

 4         A.   That the ████████████████████       ███████

      ████████████████████████████████████████       ███████

      ██████████████████████████████████            ███████

      █████████████████████████████████             ███████

      ███████████████████████████████               ███████

      ████████████████████████████████████          ███████

      ███    ██████████████████████████████.  And --       13:08:54

11         Q.   What does that have to do with               13:09:04

12    Mr. Levandowski?                                        13:09:05

13         A.   Well, remember, Anthony Levandowski's        13:09:07

14    involvement in lidar was very limited in that he was   13:09:10

15    the head of ATG.                                        13:09:13

16         Q.   Let me -- let me back up.  So I'm trying to  13:09:15

17    get at -- topic number 1 is Mr. Levandowski's          13:09:18

18    involvement in the development of lidar on behalf of   13:09:22

19    Uber and Ottomotto.  Right?                            13:09:24

20         A.   Uh-huh.                                       13:09:25

21         Q.   You said one of the things that you did to   13:09:26

22    prepare for this topic was talk to Mr. ██████          13:09:28

23         A.   Uh-huh.                                       13:09:31

24         Q.   What did Mr. ████████ tell you about Anthony 13:09:32

25    Levandowski's involvement in the development of lidar? 13:09:33
```

Page 143

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        A.   He told me specifically about his involvement      13:09:36

 2   in it, and Anthony wasn't there.   Anthony's involvement      13:09:38

 3   was very limited.   Anthony's involvement was                 13:09:42

 4   contributing a team.                                          13:09:44

 5        Q.   So Mr. ██████ told you that he had no               13:09:47

 6   conversations with --                                         13:09:49

 7        A.   No, he did not.                                     13:09:50

 8        Q.   Sorry.   Let me finish.                             13:09:52

 9             Mr. ██████ told you that he had no                  13:09:54

10   conversations with Anthony Levandowski about lidar?           13:09:58

11        A.   He told me he had lots of conversations about      13:10:00

12   it.   He was driving the spec. ██████ was.                    13:10:02

13        Q.   So they were talking about lidar all the           13:10:06

14   time?                                                         13:10:07

15        A.   They talked -- no, they weren't talking about      13:10:08

16   lidar all the time.   But they talked about various          13:10:10

17   suppliers, ██████ you know, all the different kinds of        13:10:11

18   people that we assessed the technology of, the ██████  ██████ 13:10:18

██  ██████                                                         13:10:18

20        Q.   So what did Mr. ██████ tell you about              13:10:21

21   Anthony Levandowski's development of lidar on behalf of       13:10:24

22   Uber or Otto?                                                 13:10:28

23        A.   Specifically, when I talked to him regarding       13:10:31

24   this, very little.   But we've been working together on      13:10:32

25   this for the whole time.                                      13:10:35
```

Page 144

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | So my preparation for this, my conversation | 13:10:39 |
| 2 | with ████ was very brief about this. | 13:10:42 |
| 3 | Q.   And then, you spoke with Mr. ████ as well? | 13:10:44 |
| 4 | A.   Uh-huh. | 13:10:48 |
| 5 | Q.   What did Mr. ████ tell you about | 13:10:48 |
| 6 | Mr. Levandowski's involvement in the development of | 13:10:51 |
| 7 | lidar? | 13:10:53 |
| 8 | A.   That Anthony's involvement in the development | 13:10:53 |
| 9 | of lidar was minimal in that he was in and out of the | 13:10:56 |
| 10 | office all the time and would provide a sense of | 13:11:00 |
| 11 | urgency and a cadence for getting minimum viable | 13:11:05 |
| 12 | products built, that the majority of the design and | 13:11:10 |
| 13 | specifics and details Anthony was not aware of. | 13:11:16 |
| 14 | Q.   Was Anthony Levandowski a good engineer for | 13:11:21 |
| 15 | Uber? | 13:11:24 |
| 16 | A.   Anthony wasn't an engineer at Uber. | 13:11:28 |
| 17 | Q.   Did he provide any engineering input at all? | 13:11:31 |
| 18 | MR. HUME:   Objection as outside the scope | 13:11:36 |
| 19 | unless it's within lidar. | 13:11:37 |
| 20 | Go ahead. | 13:11:39 |
| 21 | A.   Yes, he did.  He would give his, you know, | 13:11:40 |
| 22 | ideas on -- hey, how can we get there faster, or is | 13:11:46 |
| 23 | there a way to do that planner that was more efficient, | 13:11:51 |
| 24 | or maybe consider doing this -- using this team's | 13:11:54 |
| 25 | approach. | 13:11:58 |

Page 145

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | His role isn't to get into -- it's not like | 13:12:00 |
| 2 | he was doing touching CAD tools or doing, you know, | 13:12:04 |
| 3 | specified design work.  He was providing the | 13:12:06 |
| 4 | inspiration and the motivation and the fierceness and | 13:12:14 |
| 5 | trying to pull the team to go as fast as possible. | 13:12:20 |
| 6 | His engineering was limited to -- he would, | 13:12:23 |
| 7 | you know, pop in here and there and have conversations | 13:12:26 |
| 8 | with people and test their approaches. | 13:12:29 |
| 9 | Q.   He was in charge of the lidar development | 13:12:32 |
| 10 | effort.  Right? | 13:12:34 |
| 11 | A.   No. | 13:12:35 |
| 12 | Q.   "No"? | 13:12:35 |
| 13 | A.   No.  I was in charge of the lidar development | 13:12:36 |
| 14 | effort.  Anthony was in charge of ATG. | 13:12:42 |
| 15 | MR. HUME:  Are we getting close to a break? | 13:13:07 |
| 16 | We've been going a little more than an hour now. | 13:13:09 |
| 17 | MR. JAFFE:  Sure, if you'd like. | 13:13:11 |
| 18 | THE VIDEOGRAPHER:  Going off the record, the | 13:13:16 |
| 19 | time is 1:12 p.m. | 13:13:17 |
| 20 | (Luncheon recess taken.) | 13:56:21 |
| 21 | THE VIDEOGRAPHER:  This begins media | 13:57:24 |
| 22 | number 4.  We are on the record.  The time is | 13:57:25 |
| 23 | 1:57 p.m. | 13:57:29 |
| 24 | MR. JAFFE:  All right.  This is going to be, | 13:57:30 |
| 25 | I think, 887, labeled UBER118203. | 13:57:33 |

Page 146

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | (Whereupon, Deposition Exhibit 887 was marked | 13:57:41 |
| 2 | for identification.) | 13:57:41 |
| 3 | MR. HUME:  What did you say it is? | 13:58:05 |
| 4 | THE REPORTER:  887. | 13:58:06 |
| 5 | BY MR. JAFFE: | 13:58:06 |
| 6 | Q.   Mr. Meyhofer, I've put an e-mail in front of | 13:58:07 |
| 7 | you dated December 10, 2015. | 13:58:09 |
| 8 | Do you see that? | 13:58:13 |
| 9 | A.   Yes, I do. | 13:58:14 |
| 10 | Q.   And the subject is, ██████████████." | 13:58:15 |
| 11 | Do you see that? | 13:58:17 |
| 12 | A.   Uh-huh. | 13:58:18 |
| 13 | Q.   And the first e-mail is from you, earlier in | 13:58:18 |
| 14 | the day, and it's an e-mail from you to ██████████ | 13:58:21 |
| 15 | Right? | 13:58:24 |
| 16 | A.   That's correct. | 13:58:26 |
| 17 | Q.   And you say, ██████████████████ ████████ | 13:58:— |
| ██ | ██████████████████████████████ ████████ | |
| ██ | ██████████████████████████ ██████ ████████ | |
| ██ | ██████████████████████████████ | 13:58:36 |
| 21 | Do you see that? | 13:58:39 |
| 22 | A.   I do. | 13:58:40 |
| 23 | Q.   What did you mean by your comparison of the | 13:58:43 |
| 24 | requirements that Mr. ███████ was developing as a | 13:58:48 |
| 25 | recipe? | 13:58:52 |

Page 147

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1          MR. HUME:  Objection.  Outside the scope.  I        13:58:54

2     assume we are, for the record, still on the              13:58:55

3     30(b)(6) portion?                                        13:58:57

4          MR. JAFFE:  Yes.                                    13:58:59

5          MR. HUME:  I'll just object as outside the          13:59:00

6     scope.                                                   13:59:02

7     A.    You know, the beam spacing,                        
```



```
                                                              14:00:06

23         So I was reminding him that it's really            14:00:08

24    important that you use this information carefully.       14:00:11

25                                                             14:00:14
```

Page 148

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    ███████████████████████████████████     ████████

     ██████████████████████████████              ████████

     ██      ████████                        14:00:21

4         MR. HUME:  Objection.  Same objection.      14:00:22

5    A.   I was reminding him that it's an important   14:00:24

6    piece of information.  Just not the vertical beam  14:00:26

7    spacing, but all of the work he had been doing for the  14:00:30

8    last year on lidar development.              14:00:32

9    Q.   Would you agree that the vertical beam     14:00:36

10   spacings are a sort of recipe --             14:00:38

11        MR. HUME:  Objection.  Same objection.      14:00:40

12   Q.   -- for self-driving lidar?             14:00:41

13   A.   I would agree that vertical beam spacing is  14:00:43

14   an important part of requirements and specifications  14:00:45

15   and -- yes.                               14:00:47

16   ██   █████████████████████████           ████████

     ████████████████████████████████         ████████

     ████████████████████   ██████            ████████

         ██████   ███████   █████████          ████████

     ██   ████████                         14:01:01

21   Q.   And then, later in the e-mail, you said --  14:01:02

22   later in this e-mail thread you said:      ████████   14:01:10

     ████████████████   ████████             14:01:10

24        Do you see that?                    14:01:13

25   A.   Uh-huh.                            14:01:14
```

Page 149

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1                                                    14:01:45

12          And to finally convert them to believers on   14:01:46

13   the value of self driving, which is what occurred with  14:01:50

14   the birth of Uber, it made me -- like why were we      14:01:52

15   giving this to them?  We had been asking this of them   14:01:56

16   for a decade, and now we're just giving this to them.   14:02:00

17      Q.   For a decade.                                 14:02:02

18           You hadn't worked at Uber for a decade.        14:02:03

19   Right?                                                 14:02:04

20                                                          14:02:07

22      Q.   Not for Uber.                                  14:02:08

23      A.   No.  No.                                       14:02:10

24      Q.   For whom?                                      14:02:11

25      A.   Carnegie Mellon.                               14:02:12
```

Page 150

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1 ████  ████████████████████████  ████████

2 ████████████████████████████  ████████

3 ████████  ████████  ████████

4 ████  ████  ████  ████████

5 ████████████████████  ████  ████████

6 ████  ████████

7 ████  ████████████                          14:02:31

8       Q.   And -- okay.  Would you agree that other          14:02:34

9 companies' specifications for self driving would be a          14:02:40

10 sort of recipe like the -- and have the value of the          14:02:46

11 Coca-Cola recipe?                          14:02:50

12       MR. HUME:  Objection to the form.          14:02:52

13       There's no way you can be tethered to the          14:02:53

14       scope with that question.  I don't know why you          14:02:55

15       don't save it to the second part.          14:02:57

16       Object to form.  Object, outside the scope.          14:03:00

17       A.   I would agree that other specifications and          14:03:03

18 engineering information that companies develop that are          14:03:07

19 relevant to whatever machine they're trying to          14:03:10

20 accomplish is super valuable.          14:03:12

21       MR. JAFFE:  This is going to be Exhibit 888.          14:03:40

22       It is Bates-numbered UBER147615.          14:03:49

23       (Whereupon, Deposition Exhibit 888 was marked          14:04:09

24       for identification.)          14:04:09

25       Q.   Mr. Meyhofer, do you recognize what I've          14:04:11

Page 151

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1     placed in front of you as Exhibit 888?              14:04:13

 2          A.   I do.                                     14:04:16

 3          Q.   What is it?                               14:04:18

 4          A.   It looks like an e-mail between ██████        ████████

 █               ████████████████████████████████         14:04:24

 6          Q.   And this is a discussion you were having in  14:04:31

 7     December 2015?                                      14:04:33

 8          A.   Yes.                                      14:04:36

 9          Q.   Now, there's a reference from Mr. █████  to  14:04:47

10     ██████████████████                                  14:04:52

11               Do you see that?                          14:04:56

12          A.   Uh-huh.                                   14:04:57

13          Q.   What does that refer to?                  14:04:58

14               MR. HUME:  Objection.  Form.  Beyond the  14:05:00

15          scope.                                         14:05:04

16          A.   So in the state of the art, when you're   14:05:10

17     building a robotic platform, how well it performs or  14:05:16

18     how reliable it is is a measure of, we'll say, safety  14:05:22

19     or reliability, and that whatever the state of the art  14:05:28

20     is, whatever the most reliable and most advanced one is  14:05:30

21     what you'll be compared to.  And so whatever the most  14:05:34

22     reliable or advanced system at that time is considered  14:05:37

23     state of the art.                                   14:05:42

24          Q.   So in December 2015, ██████████████████    ████████

 █          ████████████████████████████████              14:05:47
```

Page 152

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1   ████████████████████████████                        14:05:50

 2          MR. HUME:  Same objection.                    14:05:59

 3      ██  ████████████████████████████████  █████████   14:05:59

     █  █████████████  █████████████████████  █████████

     █  ██████████████████████████████████████  ████████

     █  ███████████████████████  █████████████  ████████

     █  █████████████████████████████████████  █████████

     █  ██████████████████████████████████  ████████████

     █  ███████                            ████████████

    █  ████████████████████████████████████  █████████

    █  █████████████████████████            14:06:51

12          Q.   So if you look at what -- so ██████ is a   14:07:04

13   person who's in this conversation.                   14:07:08

14          A.   Uh-huh.                                   14:07:10

15          Q.   What was ████████ role in December 2015  14:07:12

16   during this conversation?                            14:07:16

17          MR. HUME:  Same objection.  Outside the       14:07:17

18      scope.                                            14:07:18

19          A.   ██████ would probably have been on the   14:07:19

20   strategy team at that time, or biz dev.  But he wore 14:07:21

21   lots of hats, whatever he could do.                  14:07:29

22          Q.   Why was Mr. ██ referring to Google's     14:07:32

23   autonomous vehicle system including its lidar, in this 14:07:39

24   document that we've marked as Exhibit 888?           14:07:43

25          A.   Well, I mean, we compare all of our systems. 14:07:47
```

Page 153

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | And he's comparing what another company does and how | 14:07:50 |
| 2 | they go about solving the problem, having a discussion | 14:07:55 |
| 3 | about how to measure capabilities, is what it appears. | 14:07:58 |
| 4 | Q.   Uber is measuring its autonomous vehicle | 14:08:13 |
| 5 | effort and sensor suite against Google's at this point. | 14:08:18 |
| 6 | Right? | 14:08:22 |
| 7 | MR. HUME:  Objection as outside the scope. | 14:08:22 |
| 8 | A.   I think that's a fair assessment of this | 14:08:25 |
| 9 | conversation. | 14:08:27 |
| 10 | Q.   And then, I want to go to the last response, | 14:08:28 |
| 11 | which is from you.  And I'm going to skip towards the | 14:08:30 |
| 12 | end.  You say, ███████████████ ██████████████ | ██████████ |
| | ███████████████████ | 14:08:42 |
| 14 | Do you see that? | 14:08:44 |
| 15 | A.   Uh-huh. | 14:08:48 |
| 16 | Q.   What are you referring to there? | 14:08:51 |
| 17 | MR. HUME:  Objection as outside of the scope | 14:08:54 |
| 18 | of the 30(b)(6) topics. | 14:08:56 |
| 19 | A.   I'm referring to the performance of their | 14:08:58 |
| 20 | autonomous vehicle. | 14:09:02 |
| 21 | Q.   And then, you go -- next you say, ██████ | ██████████ |
| | ████████████████████████████████████████████ | ██████████ |
| | ████████████████████ ██████████████████ | ██████████ |
| | ██████████████████████████████ | ██████████ |
| | ████████████████████ | 14:09:24 |

Page 154

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              Do you see that?                        14:09:26

 2      A.   Uh-huh.                                    14:09:26

 3      Q.   Why did you say, in December 2015, █████   ████████

        █████████████████████████████████████████████  ████████

        █ █████████████████████████████                 ████████

 6      A.   I think --                                 14:09:36

 7           MR. HUME:  Objection as outside the scope. 14:09:37

 8      A.   I think it's important to remember that the 14:09:40

 9  same people that built the Google program -- we all 14:09:43

10  grew up together.  We all built these systems together. 14:09:48

11           And you know, Urmson, six months prior to me 14:09:50

12  writing this e-mail, had just given me a demo in their 14:09:53

13  cars and driven me around in it, and I knew how solid 14:09:57

14  it was.  I was just in it.  And you know, he used to  14:10:01

15  work down the hall from me.  And Bryan Salesky -- ███  ████████

    █ █████████████████████████████████████ We all come 14:10:10

17  from the same place, and we've all been doing this the 14:10:14

18  same way.                                            14:10:15

19           There are two real approaches to autonomous 14:10:15

20  vehicles, the engineered approach, which Google takes 14:10:18

21  and we take; and then, there's an approach that hasn't 14:10:21

22  yet been proven to be capable, which is what Elon is  14:10:23

23  proposing, which is the complete learning approach.   14:10:25

24           So of course, we'll have a similar approach. 14:10:30

25  We -- our careers grew up together, doing this.       14:10:33
```

Page 155

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        Q.    So when you said that Uber will have a very      14:10:42

 2   similar solution to the Google self-driving system,        14:10:47

 3   you're referring to the fact that you knew some of the     14:10:51

 4   people that worked there?                                  14:10:56

 5        A.    No.    The approach that the people that I know  14:10:57

 6   are taking there is the same kind of approach, ████████    ████████

     ███████████████████████████████████████████████████       ████████

     ███████████████████████████████████████████████████       ████████

     ███████████████████████████████████████████████████       ████████

     ██████    ████████████████████████                         14:11:12

11        Q.    So Uber was taking the same approach that        14:11:16

12   Google was taking?                                         14:11:18

13        A.    As far as I could construe.                     14:11:20

14        Q.    And the result was going to be a very similar   14:11:23

15   self-driving solution.    Is that right?                   14:11:26

16             MR. HUME:    Objection as outside the scope.      14:11:28

17        A.    I don't know about the result, but in periods   14:11:32

18   of time.                                                   14:11:36

19        Q.    That's what you said here, █████████████████    ████████

     █████████████████████████████    █████████               ████████

     ████    ███    ████████    █████████████████████████       ████████

     ██    ████████                                             14:11:44

23             At first because we do it the same way at        14:11:46

24   that time.                                                 14:11:49

25             Remember, this team -- we've been doing          14:11:52
```

Page 156

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    autonomous vehicles -- I mean, the CMU team that we      14:11:55
 2    built this with, their first autonomous vehicle went to  14:11:59
 3    from Pittsburgh to LA in 1995.  The ways you do this     14:12:03
 4    are quite known.                                         14:12:06
 5         Q.   So you later say, ███████████████      ████████
      █ ███████████████████████████████████████████      ████████
      █ ███████████████"                                        14:12:19
 8         Do you see that?                                     14:12:20
 9         A.   Uh-huh.                                         14:12:21
10         Q.   Why were you referencing ████████████      ████████
      █ ████████████████████                                 ████████
      █              █████████████████████████████████      ████████
      █ ███████████████████████                                 14:12:30
14         A.   Well, so someone's also compared; this is the  14:12:31
15    person that's got state of the art, some technology.     14:12:33
16         And this is me saying that we will assume           14:12:36
17    leadership of state of the art at some point.  You       14:12:39
18    know, we're almost a year old here.                      14:12:41
19         Q.   When you were describing Uber as going to      14:12:56
20    have a very similar solution, at first, to the Google    14:12:59
21    self-driving system, what did you understand their       14:13:04
22    lidar capabilities to be for the purposes of this        14:13:06
23    comparison that you made here, in Exhibit 888?           14:13:10
24         MR. HUME:  Objection as beyond the scope of         14:13:13
25         the 30(b)(6) topics.                                14:13:15
```

Page 157

| | | |
|---|---|---|
| 1 | A.   I didn't know anything about the performance | 14:13:17 |
| 2 | characteristics of their lidar. | 14:13:20 |
| 3 | Q.   Did Anthony Levandowski have lidar experience | 14:13:27 |
| 4 | when Uber hired him? | 14:13:30 |
| 5 | A.   Yes, he did. | 14:13:32 |
| 6 | Q.   What experience? | 14:13:34 |
| 7 | A.   I think he worked with Topcon during his days | 14:13:41 |
| 8 | at 510 Systems and then with Velodyne and then with | 14:13:48 |
| 9 | Google on their lidar and then with Otto, to some | 14:13:53 |
| 10 | extent. | 14:14:01 |
| 11 | Q.   What do you mean, "to some extent"? | 14:14:03 |
| 12 | A.   Well, I mean, in the beginning, till I took | 14:14:05 |
| 13 | over hardware. | 14:14:08 |
| 14 | MR. JAFFE:  This is going to be 889.  This is | 14:14:24 |
| 15 | labeled UBER115395. | 14:14:27 |
| 16 | (Whereupon, Deposition Exhibit 889 was marked | 14:14:30 |
| 17 | for identification.) | 14:14:30 |
| 18 | Q.   Mr. Meyhofer, do you see I've marked a text | 14:14:52 |
| 19 | message with a time stamp of May 18, 2016? | 14:14:55 |
| 20 | A.   I do. | 14:14:58 |
| 21 | Q.   And it's from Mr. ■■■■ to you. | 14:15:00 |
| 22 | At this point in time, May 18, 2016, what is | 14:15:05 |
| 23 | your position at Uber? | 14:15:07 |
| 24 | MR. HUME:  Objection as outside the scope. | 14:15:10 |
| 25 | Personal deposition again. | 14:15:13 |

Page 158

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        A.   I was the head of hardware.                    14:15:14

2        Q.   What was Mr. ████                              14:15:16

3        A.   He was the director of ATG -- or ATC at the    14:15:18

4   time, I guess.                                           14:15:22

5        Q.   Mr. Bares is saying, ███████████  ████████     14:15:25

    █ ████████████████████████████  ████████████  ████████

    █ ████████████  █████████                    14:15:30

8             Do you see that?                               14:15:32

9        A.   Yes, I do.                                     14:15:32

10       Q.   "Laser," that refers to lidar.  Right?         14:15:33

11       A.   Yes, it does.                                  14:15:35

12       Q.   Why was Mr.████ asking if you're ███████  ████████  14:15:37

    █ █████████████████████████here on May 18, 2016?        14:15:39

14            MR. HUME:  Objection.  Outside the scope.      14:15:46

15       A.   I don't know about the -- is it the "again"    14:15:51

16   word?  Is that what you're asking about?                14:15:54

17       Q.   I'm asking why -- what is this about?          14:15:55

18       A.   This is about ████████delivering a             14:15:59

19   specification to Anthony as to the performance          14:16:02

20   attributes of a laser.                                  14:16:07

21       Q.   What lidar work were you doing with Anthony    14:16:09

22   Levandowski that's referred to in this text message?    14:16:13

23       A.   That's what it is.  It's -- we had written a   14:16:17

24   spec.  We needed to ensure that the delivery of the     14:16:22

25   spec was possible by Anthony.                           14:16:26
```

                                                    Page 159

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Anthony made claims that we didn't believe he | 14:16:28 |
| 2 | could meet.  We didn't believe he could deliver the | 14:16:30 |
| 3 | laser that we asked for, because it was really hard. | 14:16:33 |
| 4 | And so we were working with him to ensure that they | 14:16:36 |
| 5 | were -- a team was going to be able to deliver it. | 14:16:38 |
| 6 | Q.   And Anthony Levandowski had no technical | 14:16:40 |
| 7 | feedback.  Is that right? | 14:16:43 |
| 8 | A.   I don't think that's fair to say. | 14:16:50 |
| 9 | Q.   He did have technical feedback? | 14:16:52 |
| 10 | A.   Yes. | 14:16:54 |
| 11 | Q.   So Anthony Levandowski was providing | 14:16:55 |
| 12 | technical feedback in response to Uber's providing of | 14:16:57 |
| 13 | specifications? | 14:17:03 |
| 14 | A.   He would give commentary to ▮▮▮ and say: | 14:17:05 |
| 15 | Do you really need that?  That's super hard, and it's | 14:17:07 |
| 16 | going to take a long time. | 14:17:10 |
| 17 | Q.   What else? | 14:17:11 |
| 18 | A.   They would probably discuss ▮▮▮ | 14:17:15 |
| 19 | requirements and Anthony would press him and ask if you | 14:17:20 |
| 20 | really need to see something this far away, of this | 14:17:23 |
| 21 | size, and try to get the spec to be easier to meet. | 14:17:26 |
| 22 | Q.   You said "probably." | 14:17:30 |
| 23 | Do you know that they discussed that, or are | 14:17:32 |
| 24 | you speculating? | 14:17:33 |
| 25 | A.   I do know.  I don't recall all the details of | 14:17:34 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   the conversation, though.                          14:17:36

 2       Q.   So other than that discussion or that type of   14:17:40

 3   discussion, what other lidar work was Anthony      14:17:46

 4   Levandowski working on with you guys, Uber?        14:17:49

 5       A.   I don't think any.  None that I can recall.   14:17:58

 6       Q.   Do you remember Anthony Levandowski providing   14:18:09

 7   detailed specifications or for what type of ████    ████    14:18:19

 ██  ████████████████                                   14:18:19

 9       A.   I do remember him -- ████████     ████    14:18:19

 ██  ████████████████████████        I                  14:18:31

11   believe they were ████████████                     14:18:34

12           MR. JAFFE:  Let's go ahead and mark this.   14:18:44

13       This is going to be 890, UBER6645.             14:18:46

14           (Whereupon, Deposition Exhibit 890 was marked   14:18:50

15       for identification.)                           14:18:50

16       Q.   Mr. Meyhofer, this is an e-mail dated     14:19:06

17   November 4, 2016.                                  14:19:08

18           Do you see that?                           14:19:11

19       A.   I do.                                     14:19:14

20       Q.   At this point, Mr. Levandowski -- he's head   14:19:16

21   of Uber ATG.  Right?                               14:19:20

22       A.   Uh-huh.                                   14:19:22

23       Q.   You are head of hardware?                 14:19:23

24       A.   Uh-huh.                                   14:19:25

25       Q.   And Mr. Levandowski is replying to an e-mail   14:19:29
```

Page 161

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    from Mr. ████████                                    14:19:37

2           Do you see that?                              14:19:41

3      A.   Uh-huh.                                       14:19:42

4      Q.   About buying fiber lasers.  Right?            14:19:43

5      A.   Uh-huh.                                       14:19:45

6      Q.   Is that correct?                              14:19:45

7      A.   Uh-huh.                                       14:19:45

8      Q.   Can you answer audibly, please.               14:19:46

9      A.   Oh, yes I'm sorry.  It is correct.            14:19:48

10     Q.   And Mr. ████████-- he had gone out and put    14:19:50

11   together an order to buy these from █████  Right?    14:19:54

12     A.   That's right.                                 14:19:58

13     Q.   Mr. Levandowski -- he then responds, ██████   ██████

██ ████████████ █████ ███████ ███████████████████████  ██████

██ ███████████████████████████████████████            ██████

██ █████████████████████████████████                  ██████

██ ████████████████████████████████████               ██████

██ ██████████████████████                              ██████

██          Do you see that?                            14:20:28

20     A.   I do.                                         14:20:29

21     Q.   So here, in November 2016, Mr. Levandowski    14:20:30

22   was ████████████████████████████████                ██████

██      ██████████████████                              14:20:41

24     A.   In this e-mail, he is doing that, yes.        14:20:43

25     Q.   Where did these specifications come from?     14:20:45
```

                                        Page 162

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        A.   I think he may have known the ████████ and      14:20:51

 2   was working with them on a new laser that they were        14:20:58

 3   developing.                                                14:21:07

 4        Q.   Where did Mr. Levandowski know the ██████  ████████ 14:21:12

 █   ████s from?                                                14:21:12

 6        A.   I do not know.                                   14:21:13

 7             I do know that this isn't something we use,      14:21:13

 8   but I don't know how he knew these people.                 14:21:16

 9        Q.   Are you aware whether he knew them from his      14:21:21

10   time at Google?                                            14:21:23

11        A.   Oh, no, I'm not aware.                           14:21:24

12        Q.   Are you aware whether these specifications       14:21:26

13   came from Mr. Levandowski's work at Google?                14:21:28

14             MR. HUME:  Objection as outside the scope.       14:21:30

15        A.   I have no knowledge that they came from          14:21:32

16   anything to do with Google.                                14:21:33

17        Q.   Where did these numbers come from?               14:21:35

18        A.   I don't know.                                    14:21:38

19             I think it's important to -- we don't use        14:21:40

20   this.                                                      14:21:42

21        Q.   You have no idea where Mr. Levandowski got       14:21:46

22   these numbers -- these specifications here in              14:21:48

23   Exhibit 890.  Is that fair?                                14:21:50

24        A.   Probably --                                      14:21:52

25             MR. HUME:  Objection as outside the scope.       14:21:52
```

Page 163

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1      A.    Probably from ███████████ but I don't --      14:21:54

 2   I don't know.                                          14:22:00

 3      Q.    You said "probably."                          14:22:02

 4            You're speculating?                           14:22:03

 5      A.    I'm speculating.  That is correct.            14:22:04

 6            MR. JAFFE:  This is 891, Exhibit 891,         14:22:28

 7      UBER12271.                                          14:22:30

 8            (Whereupon, Deposition Exhibit 891 was marked 14:22:32

 9      for identification.)                                14:22:32

10      Q.    Mr. Meyhofer, do you see what I've marked in  14:22:52

11   front of you as Exhibit 891?                           14:22:54

12      A.    (No verbal response.)                         14:22:58

13      Q.    It refers to ██████████████████               14:22:59

14            Do you see that?                              14:23:02

15      A.    I do.                                         14:23:03

16      Q.    This was a meeting that you attended.  Right? 14:23:04

17      A.    Yes, it is.                                   14:23:07

18      Q.    Anthony Levandowski also attended this        14:23:08

19   meeting.  Right?                                       14:23:09

20      A.    Yes, he did.                                  14:23:10

21      Q.    Why did Anthony Levandowski attend this       14:23:11

22   meeting?                                               14:23:13

23      A.    He was in Pittsburgh at the time, I would     14:23:15

24   assume, and was excited to be involved in any --       14:23:17

25   anything he could.  He loved -- this is his life.  This 14:23:23
```

Page 164

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    is his love.                                      14:23:26

2         Q.   He was there, working for free?         14:23:29

3         A.   What do you mean?                        14:23:34

4         Q.   You said, "This is his love."           14:23:35

5              I mean, he was there as part of his job.  14:23:37

6    Right?                                             14:23:39

7         A.   Right.                                   14:23:40

8         Q.   So he came and he was at the short-range  14:23:41

9    sensor plan meeting as part of this job,          14:23:43

10   Mr. Levandowski.  Right?                           14:23:46

11        A.   Yes.                                     14:23:47

12        Q.   Okay.  And what was Mr. Levandowski's    14:23:48

13   contribution to this meeting in February 2017?    14:23:51

14        A.   I think it would be the same as usual.  His  14:23:59

15   focus was always on things that were very practical and  14:24:03

16   not super challenging.  How do you make something more  14:24:07

17   common sense based, because these engineers tend to  14:24:11

18   rabbit hole.                                       14:24:15

19        Q.   Did Mr. Levandowski ever provide feedback for  14:24:16

20   the sensing team on specific cases that the sensor  14:24:20

21   needed to be able to sense, such as like a kid lying  14:24:24

22   next to the ground or something like that?         14:24:28

23        A.   Sure.                                    14:24:30

24        Q.   That was a regular part of his job?      14:24:31

25        A.   No, not a regular part of this job.  By no  14:24:33
```

Page 165

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    means a regular part of his job.                    14:24:36

2        Q.   But it was something that he regularly did?   14:24:38

3        A.   No, it is not something that he regularly     14:24:39

4    did.                                                 14:24:41

5        Q.   But it was something that he did do?          14:24:41

6        A.   It is something that happened on occasion,    14:24:44

7    but not very frequently.                             14:24:45

8        Q.   Where do you think he got those sensing cases 14:24:46

9    from?                                                14:24:50

10       A.   Well, so often, it's a conversation about how 14:24:50

11   we're proposing we do it, and it's a test of         14:24:54

12   sensibility.  Do you really think it makes sense to do 14:24:58

13   it like that, or do you think it make more sense to do 14:25:01

14   it like that?  So it's a discussion in the room.     14:25:04

15       Q.   Were there any times when Mr. Levandowski    14:25:06

16   would say that the lidar needs to handle the following 14:25:08

17   case?                                                14:25:11

18       A.   I can't recall.                             14:25:15

19       Q.   Did that ever happen?                        14:25:17

20       A.   I can't recall.                             14:25:18

21       Q.   Okay.  Why don't we look at this document.   14:25:19

22   And you see, about the fourth from the bottom -- you  14:25:23

23   see it says, "AL."                                   14:25:26

24            Does that refer to Mr. Levandowski?          14:25:27

25       A.   Uh-huh.                                      14:25:28
```

Page 166

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    Q.    And then it says, ███████████████    ███████

██   ████████████████████████████████████████████    ███████

██   █████████████████                               14:25:36

4          Do you see that?                          14:25:36

5    A.    Uh-huh.                                    14:25:37

6    Q.    What does that refer to?                   14:25:38

7    A.    So in this analysis, that would have been 14:25:39

8    this design review, those situations would have been  14:25:40

9    presented as:  What things should we be focusing on?   14:25:43

10         He would be emphasizing those things.     14:25:47

11   Q.    Where did he get the ███████████████      ███████

██   ███████████████████████                         14:25:55

13         MR. HUME:  Objection.  Outside the scope. 14:25:57

14   A.    It could have come from ██████ presentation 14:25:59

15   and --                                          14:26:01

16   Q.    I'm not asking where it could have come from. 14:26:03

17         MR. HUME:  Please let him finish his answer. 14:26:06

18   Q.    I'm asking:  Where did it come from?      14:26:08

19   A.    I do not recall where this came from in this 14:26:10

20   particular meeting.                             14:26:13

21   Q.    Are there any other so-called ███████████ 14:26:18

22   that Mr. Levandowski specified that these sensors 14:26:20

23   needed to be able to handle?                    14:26:27

24   ██  ████████████████████████████    ███████

██   █████████████████████████  And he would be     14:26:32

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | reviewing these and saying, what did you think of this | 14:26:35 |
| 2 | one, or does this make sense, and just, from time to | 14:26:39 |
| 3 | time, testing an engineer. | 14:26:41 |
| 4 | His exposure to the engineering team, as head | 14:26:44 |
| 5 | of ATG, wasn't very high, so whenever he had the | 14:26:46 |
| 6 | opportunity to participate, he would participate, if he | 14:26:50 |
| 7 | could. | 14:26:52 |
| 8 | Q.   So how many other times did Mr. Levandowski | 14:26:54 |
| 9 | provide these sorts of sensing cases to the Uber sensor | 14:26:59 |
| 10 | team? | 14:27:04 |
| 11 | A.   I do not know. | 14:27:05 |
| 12 | Q.   More than a dozen? | 14:27:07 |
| 13 | A.   I do not know. | 14:27:10 |
| 14 | Q.   Was it once a week? | 14:27:11 |
| 15 | A.   He was in Pittsburgh for one day -- one week | 14:27:15 |
| 16 | a month, so not very often. | 14:27:17 |
| 17 | Q.   So maybe five times a month.  Is that fair? | 14:27:19 |
| 18 | A.   I wouldn't imagine it being that high. | 14:27:27 |
| 19 | Q.   Couple times a month? | 14:27:29 |
| 20 | MR. HUME:  Objection to the form.  Calls for | 14:27:33 |
| 21 | speculation. | 14:27:35 |
| 22 | A.   I'm guessing. | 14:27:35 |
| 23 | Q.   What about for him providing that information | 14:27:36 |
| 24 | to Otto? | 14:27:40 |
| 25 | A.   I don't know why he would provide that | 14:27:45 |

Page 168

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    information to Otto.  They didn't do this sort of        14:27:47
 2    stuff.                                                   14:27:49
 3         Q.   You don't know whether he provided these       14:27:49
 4    kinds of sensing use cases to the software team at       14:27:52
 5    Otto?                                                    14:27:55
 6         A.   I don't know that he did.                      14:27:57
 7         Q.   You're not prepared to testify about that      14:28:00
 8    today, though.  Right?                                   14:28:02
 9         A.   About whether or not he provided sense cases   14:28:04
10    to Otto?                                                 14:28:05
11         Q.   Yes.                                           14:28:07
12         A.   No, I don't know if he did.  I wouldn't --     14:28:07
13    I'm not prepared to discuss that.  I don't know.         14:28:09
14              That's what I'll tell you over and over.  I    14:28:11
15    don't know.  I don't know.                               14:28:14
16              MR. JAFFE:  This will be 892, Bates number     14:28:38
17              UBER13332.                                     14:28:44
18              (Whereupon, Deposition Exhibit 892 was marked  14:28:46
19              for identification.)                           14:28:46
20         Q.   Exhibit 892 is an e-mail from ████████         14:29:05
21    to you and Anthony Levandowski.  Correct?                14:29:07
22         A.   Yes, it is.                                    14:29:09
23         Q.   And Mr. ███████ in this e-mail, is asking      14:29:12
24    you and Anthony Levandowski to help him prioritize his   14:29:16
25    work with a ██████████████ versus other lidar           14:29:20
```

Page 169

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    work.  Is that fair?                                  14:29:24

 2         A.    Yeah -- hold on one second.  Let me read it.  14:29:26

 3         Yes.                                              14:29:34

 4         Q.    Why was Mr. ██████ e-mailing you and         14:29:36

 5    Mr. Levandowski to help prioritize his lidar work?    14:29:40

 6         A.    Because █████ didn't agree that we should be 14:29:43

 7    paying attention to the ████████ when compared to     14:29:49

 8    other priorities of our work, and Anthony was so      14:29:53

 9    excited about ████████████ and thought                14:30:00

10    that it was state of the art and the most revolutionary 14:30:03

11    laser in the world and ████████████████    ███████    14:30:10

██    ████████████████████████████          ███████

██    ████████████████████████████          ███████

██    ████████████████████████████          ███████

██    ██████                                           14:30:23

16         And █████was saying, hey, it's going to cost      14:30:23

17    me -- I'm going to have to do other things.  And so the 14:30:26

18    three of us sort of had a disagreement on how to      14:30:30

19    resource allocated time.                              14:30:32

20         Q.    My question was a little bit simpler,       14:30:35

21    hopefully, which is:  Why did Mr. ██████-- why would  14:30:37

22    he e-mail you and Anthony as opposed to anyone else?  14:30:41

23         A.    Because Anthony introduced █████and me to   14:30:48

24    █████                                                 14:30:52

25         Q.    Because Anthony was involved in the ██████  14:30:54
```

Page 170

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
1   lidar development work?                          14:30:57

2        A.   Anthony was the relationship facilitator   14:30:58

3   between ████   and ████ and me.              14:31:01

4        Q.   And so looking at the second paragraph of  14:31:10

5   this e-mail --                                 14:31:13

6        A.   The ███████████████████████    ████████

7   ██████ part?                                 14:31:22

8        Q.   Yes.                                14:31:23

9             And the second sentence says, ██████  ████████

██  ███████████████████████████    ████████

██  █████████████████████████     ████████

██  ████ ████████████████████    ████████

██  ██████████████████████████████  ████████

██  ███████ ████████████████    ████████

██  ████████████████████████████

██  ███████████████                           14:31:48

17            Do you see that?                     14:31:51

18       A.   Yes.                                14:31:51

19       Q.   What did Anthony point out to ██████ about  14:31:52

20  ████████████████                           ████████

██  ██ █████████████████████████    ████████

██  ███████████████████████████    ████████

██  ███████████████████████████    ████████

██  ████████████████████                      14:32:15

25       Q.   And Anthony was telling ██████ about that  14:32:20
```

Page 171

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    problem?                                           14:32:23

 2         A.    ████████                          ████████

 ▮         ▮     ███████████████████               14:32:25

 4         A.    Yes.                                     14:32:27

 5         Q.    The next sentence says, █████████    ████████

 ▮    ██████████████████████████████████           ████████

 ▮    ████████████████████████                      14:32:35

 8              Do you see that?                          14:32:39

 9         A.    Uh-huh.                                  14:32:40

10         Q.    What does that mean?                     14:32:40

11         A.    Again, it's all about perception team.   14:32:41

12    They're the final customer for laser.  And if the   14:32:43

13    perception team doesn't like the data, it doesn't   14:32:46

14    matter.                                             14:32:48

15         Q.    Did ████████ solve these hard problems that  14:32:50

16    Anthony pointed out to them?                        14:33:02

17         A.    Not yet, or at least not to my knowledge.  14:33:03

18    ████████████████████████████                       14:33:08

19         Q.    During -- I want to break this down.  When  14:33:45

20    Otto was not yet acquired by Uber --               14:33:49

21         A.    Okay.                                    14:33:54

22         Q.    -- Mr. Levandowski was directly involved in  14:33:54

23    Otto's lidar development.  Right?                    14:33:59

24         A.    Yes, I believe that's accurate.          14:34:02

25         Q.    He provided design input on the whole stack  14:34:05
```

Page 172

Veritext Legal Solutions
866 299-5127

```
1    of lidar development.  Right?                    14:34:09

2         MR. HUME:  Objection to the form.           14:34:11

3         A.   That isn't how ████tells me it went.  But  14:34:13

4    he would have had involvement.                   14:34:16

5         Q.   What do you mean, "That isn't how ████tells  14:34:21

6    me it went"?                                     14:34:23

7         A.   The Spider was essentially -- they acquired  14:34:26

8    Tyto, which is ████and his team, and took the Tyto  14:34:28

9    IP, the Tyto -- we call it a ███████████    ███████  14:34:30

██   ██████████████████████████        That          14:34:35

11   was the Spider.                                  14:34:40

12        And Anthony's steer and guidance was, get   14:34:42

13   something built as fast as possible.  We need a minimum  14:34:45

14   viable product as fast as possible.  That was his --  14:34:48

15   that was his jam.                                14:34:51

16        Q.   Are you aware that Anthony Levandowski  14:34:53

17   designed the optical layout for Spider?          14:34:54

18        A.   I'm not aware of that.                 14:34:57

19        Q.   So you're not aware that he provided the  14:34:59

20   sketches that formed the basis for the optical design  14:35:02

21   of Spider?                                       14:35:04

22        A.   I'm not aware of that.                 14:35:07

23        Q.   Did the Tyto lidar design -- ████████   ███████  14:35:12

██   ██████████████████████                          14:35:20

25        MR. HUME:  Object to the form.  Outside the  14:35:27
```

Page 173

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1      scope.                                         14:35:28

 2      A.   I don't remember.                         14:35:29

 3           MR. HUME:  Objection.                      14:35:30

 4      A.   I don't remember.  I believe it did, but I do   14:35:33

 5   not remember.                                     14:35:35

 6      Q.   You believe it did?                       14:35:36

 7      A.   I don't remember, though.                 14:35:40

 8      Q.   Where did the fiber laser --              14:35:45

        ██████████   in Tyto come from?                14:35:48

10      A.   I thought it came from ██████             14:35:50

11      Q.   Are you aware of any interaction between  14:35:52

12   Mr. ██████ and Mr. Levandowski leading up to that  14:35:55

13   development?                                      14:35:58

14      A.   I wasn't aware that ██████and Anthony had  14:35:58

15   ever met during Tyto.                             14:36:01

16      Q.   Are you aware of that now?                14:36:03

17      A.   It has been brought to my attention --    14:36:04

18      Q.   Did you --                                14:36:08

19      A.   -- during this case.                      14:36:08

20      Q.   Did you investigate, for purposes of      14:36:10

21   testifying on behalf of the company with regard to  14:36:13

22   topic number 1, Mr. Levandowski's contribution to the  14:36:19

23   fiber laser design at Tyto?                       14:36:24

24      A.   No, I didn't.  We abandoned that design.  14:36:27

25      Q.   So you're not aware of -- you're not prepared  14:36:30
```

Page 174

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    to testify regarding Mr. Levandowski's contribution to      14:36:33

2    that design?                                                 14:36:37

3         A.    Not beyond what ████and I had discussed,          14:36:39

4    which was that Anthony's main contribution value-add         14:36:42

5    was accelerant.                                              14:36:45

6         Q.    When he was at Tyto?                              14:36:48

7         A.    I don't know about when he was at Tyto.  When     14:36:49

8    he was at Otto.                                              14:36:51

9         Q.    So Mr. █████ omitted from your discussion         14:36:52

10   the interactions that he had with Anthony Levandowski        14:36:56

11   when he was at Tyto.  Is that right?                         14:36:58

12             MR. HUME:  Object to the form.                     14:37:00

13        A.    I was not aware of them.  We never discussed      14:37:01

14   it directly.                                                 14:37:04

15             I don't know that you could say it was an          14:37:05

16   omission.  We just didn't talk about it.                     14:37:06

17        Q.    And you're not aware of it, sitting here          14:37:08

18   today?                                                       14:37:11

19        A.    I'm not aware of the nature of Anthony's          14:37:11

20   involvement in Tyto.  I am aware that I've heard,            14:37:14

21   through this, that there's been some sort -- that there      14:37:16

22   was some sort of history, that Anthony knew -- Anthony       14:37:19

23   knew Tyto.                                                   14:37:23

24             And █████ and I had been to Tyto, ██████  ████████ 14:37:27
█     █████████████████████████at Uber and met ██████and
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    thought:  Hmm, interesting, but I don't really think      14:37:31

 2    that's a good fit for us.                                  14:37:34

 3             And evidently, from -- what I've heard is         14:37:36

 4    that, around the same time, that there was some            14:37:38

 5    involvement with Anthony there, but I don't know the       14:37:40

 6    nature of it.                                              14:37:42

 7       Q.   Did you -- are you aware that Tyto Lidar was       14:37:45

 8    working out of a building that Anthony Levandowski         14:37:47

 9    owned?                                                     14:37:50

10       A.   I am not aware of that.                            14:37:50

11       Q.   Are you aware that ████████████ interviewed       14:37:51

12    with Anthony Levandowski when he was going to get a job    14:37:54

13    at Tyto?                                                   14:37:57

14             MR. HUME:  Objection as outside the scope.        14:37:58

15       A.   I was not aware of that.                           14:38:00

16       Q.   Are you aware that Anthony Levandowski drew a      14:38:02

17    fiber laser design for ████████████ when he was working   14:38:07

18    at Tyto?                                                   14:38:12

19             MR. HUME:  Objection as outside the scope.        14:38:13

20       A.   No.  I'm not aware of that.                        14:38:15

21       Q.   Does that surprise you?                            14:38:17

22       A.   Anthony's one of the smartest people I've         14:38:23

23    ever met.  It doesn't surprise me that he has that         14:38:26

24    capability.  And Anthony knows a lot of people.  So no,    14:38:28

25    it doesn't surprise me.                                    14:38:31
```

                                                      Page 176

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        Q.   It doesn't surprise you that he was          14:38:35

 2   designing -- or drawing fiber laser designs for other  14:38:39

 3   companies that you didn't know he was involved in?     14:38:43

 4             MR. HUME:  Objection to the form.  Objection  14:38:48

 5        as outside the scope.                              14:38:50

 6        A.   It does not.                                  14:38:52

 7        Q.   If he was employed as head of Uber ATG and he 14:38:53

 8   were to go and design fiber laser schematics for       14:38:57

 9   someone else, would that surprise you?                 14:39:01

10             MR. HUME:  Objection to the form.  Objection  14:39:03

11        as outside the scope.                              14:39:05

12        A.   It would surprise me because we didn't have   14:39:07

13   that arrangement.                                       14:39:15

14        Q.   What do you mean?                             14:39:16

15        A.   An arrangement where he would be doing design 14:39:17

16   work outside of Uber.                                   14:39:20

17        Q.   None of the interactions between Anthony      14:39:24

18   Levandowski and Mr. ████ -- Mr. ████ didn't mention     14:39:26

19   any of them when you talked to him in preparation for   14:39:31

20   your testimony on topic number 1, did he?              14:39:33

21        A.   No, he didn't.                                14:39:36

22             MR. HUME:  Objection to form.                 14:39:37

23        Q.   Okay.  Mr. ████ did he disclose to you        14:39:38

24   any conversations that he had with Anthony Levandowski  14:39:44

25   regarding beam spacing?                                 14:39:47
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        A.    ████    gave Anthony detailed specifications as      14:39:54

 2   to what the beam spacing needed to be.  I'm aware of            14:39:57

 3   that.                                                            14:40:02

 4        Q.    Did -- sorry.                                         14:40:02

 5        A.    I was aware of that.                                  14:40:03

 6        Q.    Did the beam spacings change as a result of          14:40:04

 7   ████████████     discussions with Anthony Levandowski?          14:40:08

 8        A.    I don't know.                                         14:40:11

 9        Q.    You didn't research that in preparation for          14:40:12

10   your testimony today?                                            14:40:14

11        A.    I don't -- no, I did not.                             14:40:15

12        Q.    So you can't tell me, sitting here today,            14:40:17

13   whether Anthony Levandowski had any level of                     14:40:19

14   contribution into the vertical beam spacings developed          14:40:22

15   by Uber and put into the Fuji lidar.  Is that fair?             14:40:26

16        A.    "Any contribution" is a very big descriptor.         14:40:33

17   A discussion could be considered a contribution.                 14:40:40

18        Q.    It could.                                             14:40:44

19        A.    ████    drove that aspect of our design.             14:40:45

20        Q.    I appreciate that answer, but I'm just              14:40:51

21   trying -- I want to make sure I get an answer to this            14:40:53

22   specific question that I asked, which is:  Sitting here        14:40:55

23   today on behalf of Uber and Otto, can you tell me                14:40:58

24   whether Anthony Levandowski contributed to the vertical        14:41:01

25   beam spacings that were eventually put into the Fuji           14:41:05
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    lidar?                                              14:41:09

 2         A.   No, I can't tell you.                     14:41:11

 3         Q.   Okay.  All right.  Did you try to talk to 14:41:15

 4    Anthony Levandowski in preparation for your deposition  14:41:22

 5    today?                                              14:41:24

 6         A.   No, I did not.                            14:41:25

 7         Q.   Are you guys still on friendly terms?     14:41:27

 8         A.   Yes, we are.                              14:41:30

 9         Q.   Why didn't you call him?                  14:41:31

10    ██   ████████████████████              ███████

██    ██   ██████████                        ███████

██    ██   ████████████  ████████████████    ███████

██    █████                                  ███████

██         ███████████████████████████       ███████

██    ████████████                           ███████

██    ██   █████████████                     14:41:47

17         MR. HUME:  Objection as outside the scope.    14:41:49

18    ██   █████████████████████████          ███████

██    █████████  █████████████████            ███████

██    ██   ██████████████████████             ███████

██    ███████████████                         14:42:00

22         MR. HUME:  Objection as outside the scope.    14:42:02

23    ██  ███  ██████████████████████████      ███████

██    ████████████████████████████████████     ███████

██         ██████████████████████  ████████    14:42:14
```

                                              Page 179

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    ██████████████████████  ████████████  ████████

▮         ██████                                  14:42:21

3         Q.   So we talked about Anthony's time -- Anthony   14:42:32

4    Levandowski's time at Otto.                       14:42:36

5              And I believe you testified that you can't    14:42:39

6    say what level of contribution he had to lidar      14:42:42

7    development during that period.  Is that fair?      14:42:45

8              MR. HUME:  Objection to the form and to the    14:42:48

9         characterization of the testimony.             14:42:52

10        A.   It's fair to say that we don't use anything  14:42:54

11   from that time in our current design.            14:42:56

12        Q.   My question was a little bit different.  Can   14:42:59

13   you tell me what was Anthony Levandowski's involvement  14:43:02

14   in the development of lidar when Otto was still,    14:43:06

15   ostensibly, a separate company?                   14:43:10

16        A.   The only thing I can give you is the       14:43:12

17   information from ██████                             14:43:14

18        Q.   Other than that, you have --              14:43:15

19        A.   No.                                       14:43:16

20        Q.   Now, going to -- going to at Uber --      14:43:26

21        A.   Okay.                                     14:43:29

22        Q.   -- what was Mr. Levandowski's involvement in   14:43:29

23   lidar?                                             14:43:40

24        A.   I ran the lidar development program at Uber,  14:43:42

25   and Anthony's involvement would be fair to describe as   14:43:45
```

Page 180

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   limited to hallway conversations and enthusiastic ideas    14:43:50

 2   about schedule and how can we do it simpler or faster.      14:43:55

 3            MR. JAFFE:  893?                                    14:44:12

 4            THE REPORTER:  Yes.                                 14:44:14

 5            MR. JAFFE:  We'll mark this as Exhibit 893.         14:44:14

 6        It's UBER76605.                                         14:44:16

 7            (Whereupon, Deposition Exhibit 893 was marked      14:44:18

 8        for identification.)                                    14:44:18

 9        Q.   Mr. Meyhofer, do you see that this reflects a     14:44:34

10   meeting invite for June 29, 2016?                           14:44:36

11        A.   Uh-huh.                                            14:44:41

12        Q.   And you were the organizer of this meeting,       14:44:42

13   according to this invite that we marked as Exhibit 893?     14:44:47

14        A.   Yes.                                               14:44:55

15        Q.   And one of the people on this meeting is          14:44:57

16   ████████████████████████                                    14:44:59

17        A.   It's TonyO.                                        14:45:05

18        Q.   TonyO.  I see.                                     14:45:06

19             Who does that refer to?                            14:45:08

20        A.   Anthony.                                           14:45:10

21        Q.   And why did he go by "TonyO"?                      14:45:11

22        A.   I don't know, especially since he doesn't         14:45:17

23   like the name Tony.  I don't know why.                      14:45:20

24        Q.   Why did he use this e-mail address instead of     14:45:22

25   his other e-mail addresses?                                 14:45:25
```

                                                    Page 181

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              MR. HUME:  Objection as outside the scope.    14:45:29

 2       Objection to the form.  It calls for speculation.    14:45:31

 3       A.   At this point, that would likely have           14:45:35

 4   appeared as an autofill when you typed "Anthony," and    14:45:38

 5   it just used a previous e-mail address that referenced   14:45:42

 6   against "Anthony."                                       14:45:45

 7       Q.   Was this address used to conceal Anthony        14:45:47

 8   Levandowski's involvement with Uber?                     14:45:50

 9              MR. HUME:  Objection as outside the scope.    14:45:53

10       A.   No, not that I am aware of.                     14:45:54

11       Q.   Do you see that it reflected that someone       14:45:58

12   accepted this invitation, right above where it says      14:45:59

13   "Laser Beam Pattern Sync"?                               14:46:08

14       A.   Yes.  Yes.  Yes.  Yes.                          14:46:10

15       Q.   Do you see it refers to someone called "ATC     14:46:12

16   Consultant"?                                             14:46:14

17       A.   Yes.                                            14:46:14

18       Q.   That, again, refers to Mr. Levandowski.         14:46:17

19   Right?                                                   14:46:19

20              MR. HUME:  Objection to form.                 14:46:20

21       A.   That's right.                                   14:46:20

22       Q.   So he was going by a code name of "ATC          14:46:21

23   Consultant" for purposes of this meeting.  Right?        14:46:24

24       A.   No.                                             14:46:26

25              MR. HUME:  Objection to the form.             14:46:27
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        Q.   Why doesn't it say "Anthony Levandowski"      14:46:27

 2   here?                                                   14:46:29

 3        A.   The ATC consultant is what he was when we     14:46:32

 4   brought him on originally.  He was a consultant.  And   14:46:35

 5   this e-mail address would have likely had that          14:46:38

 6   descriptor pointed to that address.  And so when he     14:46:44

 7   accepted it, it just autofills that descriptor.         14:46:47

 8        Q.   And he used the name TonyO, even though he    14:46:52

 9   didn't like the name Tony?                              14:46:56

10             MR. HUME:  Objection as outside the scope.    14:46:58

11        A.   I don't know how he came up with "TonyO."     14:46:59

12        Q.   What does "O" refer to?                       14:47:02

13             MR. HUME:  Objection.  Outside the scope.     14:47:04

14        A.   I don't know.                                 14:47:05

15        Q.   Let's talked about the actual meeting here,   14:47:08

16   that you scheduled on June 20, 2016 [sic] with          14:47:10

17   Mr. Levandowski.                                        14:47:14

18             Why did you schedule this meeting?            14:47:16

19             MR. HUME:  Objection.  Outside the scope.     14:47:22

20        A.   Probably to get us synced and all on the same 14:47:26

21   page.                                                   14:47:31

22             █████████ is mechanical engineering lead who  14:47:32

23   reported to me and would have been doing the design     14:47:37

24   work -- actually, he wouldn't have been doing the       14:47:43

25   design work.                                            14:47:47
```

Page 183

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | I don't recall. | 14:47:48 |
| 2 | Q.   What did you and Mr. Levandowski discuss | 14:47:50 |
| 3 | during the laser beam pattern sync? | 14:47:52 |
| 4 | A.   I don't recall the meeting. | 14:47:56 |
| 5 | MR. JAFFE:  All right.  This will be | 14:48:29 |
| 6 | Exhibit 894.  It is UBER65221. | 14:48:31 |
| 7 | (Whereupon, Deposition Exhibit 894 was marked | 14:48:39 |
| 8 | for identification.) | 14:48:39 |
| 9 | Q.   This refers to a meeting called "Birdhouse | 14:48:55 |
| 10 | Jam" on February 23, 2017.  Is that right? | 14:48:58 |
| 11 | A.   Yes, it does. | 14:49:07 |
| 12 | Q.   All right.  And if we can go back to | 14:49:09 |
| 13 | Exhibit 886 for a moment -- | 14:49:12 |
| 14 | A.   Yes. | 14:49:20 |
| 15 | Q.   -- what I referred to as the lidar log | 14:49:21 |
| 16 | earlier, if you go to -- it's not on here. | 14:49:25 |
| 17 | What happened at this meeting -- | 14:49:58 |
| 18 | MR. HUME:  Objection.  Outside the scope. | 14:50:00 |
| 19 | Q.   -- Exhibit 844? | 14:50:01 |
| 20 | A.   894? | 14:50:04 |
| 21 | Q.   894.  Excuse me.  Thank you. | 14:50:06 |
| 22 | MR. HUME:  Objection.  Outside the scope. | 14:50:09 |
| 23 | A.   Birdhouse jam was a recurring meeting that TK | 14:50:11 |
| 24 | held, or Travis held. ███████████████████ | ████████ |
| | ████████████████████████████████████████ | 14:50:20 |

Page 184

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1      ██████████████████████████████████     ███████
        ██████████████████████████████████     ███████
        ████████████████████████████             ███████
        ████████                                14:50:37
 5           Birdhouse jam was a strategic jam session   14:50:37
 6      where we would get together and talk about ideas on how   14:50:43
 7      to bring this technology to scale, ██████████   ███████
        ████████████████████████████████     ███████
        ████████████████████████████████     ███████
        ██████████████████████████████████     ███████
        ████████  ████████████████████         14:51:12
12           Q.   Did you discuss lidar at these birdhouse jam   14:51:17
13      meetings?                               14:51:21
14           A.   From time to time, Travis would ask me where   14:51:22
15      we were on lidar, yeah.                 14:51:28
16           Q.   Travis would ask -- Travis Kalanick would ask   14:51:29
17      you where you were on lidar?            14:51:33
18           A.   Where I was, yes.            14:51:35
19           Q.   Why would Travis Kalanick, the then CEO of   14:51:36
20      Uber, be asking you about the status of lidar?   14:51:41
21           A.   I mean, he asked me about the status of a   14:51:47
22      ████████  as well.  He asked -- it was the time   14:51:52
23      where we got together and talked about the components   14:51:57
24      of the vehicle and how they would --   14:52:00
25           Q.   Lidar was an important component.  Is that   14:52:03
```

Page 185

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   fair?                                              14:52:05

 2         A.   It was and -- it is an important component.   14:52:06

 3         Q.   It's important enough that the CEO of Uber    14:52:09

 4   was going to ask you about it?                     14:52:12

 5         A.   The CEO of Uber asks me about my dog, too.    14:52:19

 6         Q.   So that doesn't answer my question at all,    14:52:25

 7   not to denigrate your dog at all, but -- lidar is  14:52:27

 8   important enough that the CEO was asking you about it?  14:52:34

 9         MR. HUME:  Objection to form.                14:52:39

10         A.   Yes.  It is important enough that we discuss  14:52:43

11   it in the jam session, yes.                        14:52:45

12         Q.   And the CEO specifically asked you about it.  14:52:47

13   He raised it.  That's what you said.  Right?       14:52:50

14         A.   We would discuss it, yes.               14:52:53

15         Q.   And Travis Kalanick, the CEO -- then CEO of   14:52:54

16   Uber, he would bring up lidar?                     14:52:58

17         MR. HUME:  Objection to form.  Objection as   14:53:00

18         outside the scope as well.                   14:53:04

19         A.   I don't know, necessarily, if he would bring  14:53:08

20   it up or if I would bring it up, but we would discuss   14:53:09

21   it.  ████████████████████████████      ██████████

     ████████████████████████████████████   ██████████

     ██████████████████████████                          14:53:22

24         Q.   Did Anthony Levandowski ever provide input   14:53:25

25   regarding lidar during these meetings?            14:53:28
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   He would usually defer to me.  He has a sense | 14:53:34 |
| 2 | of optimism when he would discuss schedules or time | 14:53:43 |
| 3 | lines, and he and I wouldn't necessarily agree because | 14:53:47 |
| 4 | I didn't have that optimism.  So Anthony and I would | 14:53:50 |
| 5 | have -- you know, we would discuss it at the same time, | 14:53:54 |
| 6 | yes. | 14:53:56 |
| 7 | Q.   So both you and Anthony Levandowski would | 14:53:57 |
| 8 | discuss lidar with Travis Kalanick at these birdhouse | 14:54:00 |
| 9 | jam meetings.  Is that fair? | 14:54:05 |
| 10 | MR. HUME:  Objection to form. | 14:54:07 |
| 11 | Go ahead. | 14:54:07 |
| 12 | A.   It isn't fair to characterize it that way. | 14:54:08 |
| 13 | That sounds like it's something we would do. | 14:54:12 |
| 14 | It had occurred from time to time.  It wasn't | 14:54:13 |
| 15 | a theme. | 14:54:16 |
| 16 | Q.   Okay.  Well, then, I'll try to state it a | 14:54:18 |
| 17 | different way. | 14:54:20 |
| 18 | From time to time, you, Anthony Levandowski, | 14:54:21 |
| 19 | and Travis Kalanick would discuss lidar at these | 14:54:23 |
| 20 | birdhouse jam meetings? | 14:54:28 |
| 21 | A.   That's right. | 14:54:30 |
| 22 | Q.   Is that fair? | 14:54:30 |
| 23 | A.   Yes. | 14:54:31 |
| 24 | Q.   When did that start? | 14:54:36 |
| 25 | A.   Birdhouse? | 14:54:37 |

Page 187

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        Q.   And these discussions regarding lidar.          14:54:38

 2        A.   I have no -- I don't know.  Birdhouse            14:54:42

 3   meetings were typically late.  They typically ran a        14:54:44

 4   long time, and we did them for quite a while.  And I       14:54:48

 5   have since discontinued doing them because the audience    14:54:55

 6   got too big and it got too scattered.  We started to       14:54:59

 7   talk about things that were just a waste of time.          14:55:04

 8            I don't remember when birdhouse meetings          14:55:12

 9   started, and I ended them probably three months ago,       14:55:14

10   four months ago.                                           14:55:18

11            MR. JAFFE:  All right.  This will be 895,          14:55:21

12        UBER11976.                                            14:55:22

13            (Whereupon, Deposition Exhibit 895 was marked     14:55:27

14        for identification.)                                  14:55:27

15        Q.   This is a calendar invite for something          14:55:46

16   called a "Ladar planning meeting."  Do you see that?       14:55:47

17        A.   Uh-huh.                                          14:55:50

18        Q.   What was the Ladar planning meeting?             14:55:51

19        A.   ████████████████████████████████   ██████

     ██████████████████████████████████████████   ██████

     █████████████████████████   █████████████   ██████

     ██████████████████████████████████████████   ██████

     ███████████████████████████████████████   ██████

     ██████████████████████████████████████   ██████

     █████████████████████████████████████            14:56:24
```

Page 188

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   ███████   ████████████████████████        14:56:27

 2          I don't know what this meeting was.  That's    14:56:32

 3   what I'm guessing, based on this audience.            14:56:35

 4       Q.   I hear you guessing.  I want to talk about -- 14:56:37

 5   I want to take guessing out of this, if that's all    14:56:41

 6   right.                                                14:56:44

 7       A.   I don't remember this meeting.              14:56:44

 8       Q.   Okay.  So let me ask my question again.  What 14:56:46

 9   was the Ladar planning meeting about that's reflected 14:56:50

10   here in Exhibit 895?                                  14:56:54

11          MR. HUME:  Objection.  Beyond the scope.       14:56:56

12       A.   I don't remember.  It was likely about lidar 14:56:58

13   sim, but I don't recall.                              14:57:00

14       Q.   Why was Mr. Levandowski invited to this      14:57:02

15   meeting?                                              14:57:04

16       A.   I don't remember.                            14:57:06

17       Q.   What did Mr. Levandowski contribute to this  14:57:07

18   meeting?                                              14:57:10

19       A.   I don't remember.                            14:57:11

20          MR. JAFFE:  You can put that aside.            14:57:14

21          This will be 896.  It's UBER65164.             14:57:23

22          (Whereupon, Deposition Exhibit 896 was marked  14:57:40

23       for identification.)                              14:57:40

24       Q.   Mr. Meyhofer, do you see I've marked as      14:57:48

25   Exhibit 896 a document that reflects a meeting invite 14:57:50
```

Page 189

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    for December 21, 2016?                              14:57:56

 2         A.   Uh-huh.  I do see that.                    14:58:00

 3         Q.   And the subject is, ████████████       ████████

 ▮    ██████                                              14:58:05

 5         A.   Yes.                                        14:58:06

 6         Q.   What was this meeting about?              14:58:08

 7         A.   This meeting would be about -- ██████    ████████

 ▮    ██████████████████████████████████████████        ████████

 ▮    ████████████████████████████████████            ████████

 ▮    ████████████████████████                          14:58:26

11         Q.   Including lidar?                           14:58:28

12         A.   Absolutely.                               14:58:31

13         Q.   So this was a meeting between Anthony     14:58:32

14    Levandowski, you, Travis Kalanick, and --           14:58:36

15         A.   ████████████████                          14:58:42

16         Q.   And another person, Mr. ██████████     ████████

 ▮         ██████   ████████████████                     14:58:47

18         Q.   You were discussing the ████████████   ████████

 ▮    ████████████████████████████                       14:58:52

20         A.   G.                                         14:58:56

21         Q.   -- platform?                              14:58:56

22         A.   Yes.  ██████   the technical program manager.  14:58:57

23    ██████████ was vehicle programs manager.           14:59:00

24         Q.   What information did Anthony Levandowski  14:59:05

25    contribute to this meeting regarding the sensor suite  14:59:08
```

Page 190

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    for lidar?                                        14:59:10

2         A.    None.                                  14:59:11

3         Q.    "None"?                                14:59:11

4         A.    I would imagine none.  ████████████   ████████

██  ██████████████████████████████████  ██████      ████████

██  ████████████████████████  █████████████████     14:59:19

7         Q.    So you said, "None," and then you said, "I   14:59:24

8    would imagine none."                              14:59:26

9         I just want to make clear:  Do you remember  14:59:27

10   him providing none, or are you imaging that?      14:59:28

11        A.    I'm not imagining it.  There would be no   14:59:31

12   information for him to provide.  That's not what this   14:59:34

13   discussion would be about.                        14:59:37

14        Q.    Okay.  So for this meeting, you know that   14:59:37

15   Anthony Levandowski provided no information regarding   14:59:40

16   lidar.  Is that correct?                          14:59:45

17        A.    That's not correct.                    14:59:46

18        Q.    That's not correct?                    14:59:47

19        A.    Given this -- this attendee list and our   14:59:49

20   topics of discussion, there would be no reason for him   14:59:52

21   to discuss lidar.                                 14:59:54

22        Q.    Okay.  So maybe I -- maybe I misspoke.  14:59:57

23        So my question is:  For the meeting here,     14:59:59

24   this meeting, 896, you know that Anthony Levandowski   15:00:01

25   provided no information regarding lidar.  Is that fair?   15:00:08
```

Page 191

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        A.    I don't remember him providing any          15:00:12

 2   information about lidar at that meeting.  I don't have  15:00:13

 3   a written transcript of that meeting, so I can't say    15:00:17

 4   that I know.                                            15:00:19

 5             MR. HUME:  When next convenient, I'd like to  15:00:51

 6        take a break.                                      15:00:52

 7             MR. JAFFE:  I'm sorry?                        15:00:56

 8             MR. HUME:  When next convenient, I'd like to  15:00:56

 9        take a break                                       15:00:56

10             MR. JAFFE:  I'll just do one quick follow-up  15:00:57

11        here -- you know what; we can actually -- we can   15:01:02

12        take a break now.                                  15:01:11

13             THE VIDEOGRAPHER:  This is ends media         15:01:14

14        number 4.  Going off the record, the time is      15:01:15

15        3:00 p.m.                                          15:01:18

16             (Recess taken.)                               15:21:16

17             THE VIDEOGRAPHER:  This begins media          15:21:20

18        number 5.  Going on the record, the time is        15:21:21

19        3:21 p.m.                                          15:21:22

20   BY MR. JAFFE:                                           15:21:23

21        Q.    When we last left off, we were talking about 15:21:30

22   Anthony Levandowski's involvement in the development of 15:21:34

23   lidar at Uber.                                          15:21:38

24             Do you recall that?                           15:21:39

25        A.    Yes.                                         15:21:41
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        Q.   Let me just ask generally:  What design       15:21:46

 2   elements did Anthony Levandowski contribute regarding    15:21:50

 3   lidar at Uber?                                           15:21:55

 4        A.   Design elements -- he doesn't run CAD.  He     15:22:00

 5   doesn't do detailed design work.                         15:22:02

 6             He -- I would -- I would describe it as        15:22:06

 7   largely a -- the kind of coaching that keeps your eye    15:22:12

 8   on the ball and meaning pay attention to milestones,     15:22:18

 9   set milestones; they better be aggressive, keep the      15:22:25

10   team pushed, was sort of the way he operated.            15:22:34

11             But as far as lidar, like I said, as soon as   15:22:37

12   we acquired Otto, I took the lidar.  Team, all of        15:22:40

13   hardware went to me.  So Anthony's involvement was       15:22:44

14   typically indirect and not formal, if there was.         15:22:48

15             And then, with the ▮▮▮change, that was kind    15:22:53

16   of like the -- I would mark the clearest end of his --   15:22:59

17   you know, it just became super obvious that he wasn't    15:23:05

18   going to be doing what -- he was a ▮▮▮ fan, and I was     15:23:10

19   an ▮▮▮fan, and the team was a ▮▮▮fan.  We had been        15:23:15

20   doing 9▮▮ work all this time.  And then, you know, with  15:23:20

21   the Spider at ▮▮▮ there was kind of like a conflict.     15:23:24

22   And it ended up that we went the direction that the      15:23:27

23   team and I thought was the right direction, and it just  15:23:30

24   kept minimizing his involvement.                         15:23:34

25             And things got so busy.  And as head of ATG,   15:23:35
```

Page 193

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | it's really, really difficult to spend any detailed | 15:23:39 |
| 2 | design work on anything. | 15:23:43 |
| 3 | While we were away, I got an e-mail -- text | 15:23:44 |
| 4 | message from someone that I was invited to a meeting to | 15:23:48 |
| 5 | do some sort of interior design selection on the | 15:23:51 |
| 6 | Volvos.  And another person said, I don't even know why | 15:23:54 |
| 7 | this has made it to you. | 15:23:57 |
| 8 | You know, it's not normal to be involved in | 15:23:59 |
| 9 | detail design work.  As much as people love it and | 15:24:01 |
| 10 | engineers, at heart, love it, you have to -- kind of | 15:24:05 |
| 11 | have to give that up at that role. | 15:24:08 |
| 12 | MR. JAFFE:  All right.  I'm going to mark -- | 15:24:15 |
| 13 | I'm just going -- I think I'm just going to mark | 15:24:16 |
| 14 | these all together.  Hopefully, this will go | 15:24:19 |
| 15 | quicker.  It's UBER86445, 6, and 7.  And we'll | 15:24:19 |
| 16 | mark it as -- | 15:24:31 |
| 17 | THE REPORTER:  897. | 15:24:35 |
| 18 | MR. JAFFE:  -- Exhibit 897. | 15:24:36 |
| 19 | Thank you. | 15:24:38 |
| 20 | (Whereupon, Deposition Exhibit 897 was marked | 15:24:38 |
| 21 | for identification.) | 15:24:38 |
| 22 | Q.   Mr. Meyhofer, do you see what I've marked as | 15:25:24 |
| 23 | Exhibit 897? | 15:25:26 |
| 24 | A.   Yes, I do. | 15:25:28 |
| 25 | MR. HUME:  All three pages? | 15:25:29 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              MR. JAFFE:  Yes.                          15:25:30

 2       A.   It's, I think, one conversation.  Is that  15:25:30

 3  right.                                               15:25:32

 4       Q.   That's my interpretation of it, and,       15:25:33

 5  actually, I marked them together for that reason.    15:25:34

 6            But you're one of the people on text message 15:25:38

 7  thread.  Right?                                      15:25:41

 8       A.   I'm, I think, the only person.  Just Anthony 15:25:42

 9  and me.                                              15:25:45

10       Q.   Right.  And so can you tell me:  Is this one 15:25:46

11  conversation, the three texts I've marked as         15:25:49

12  Exhibit 897?                                         15:25:52

13       A.   Oh, this isn't me and Anthony only.  There's 15:25:53

14  another person.                                      15:25:56

15       Q.   Who's the other person?                    15:25:57

16       A.   The ██████████number.                      15:26:01

17            If I had my phone, I could punch it in and 15:26:11

18  see.  Would you like me to get it?                   15:26:13

19       Q.   Let's just talk about it really quickly,   15:26:15

20  which is, if you look at the one ending in page 445, 15:26:18

21  this unknown person says, ███████████      ████████  15:26:21

██  ██████████████ ████████████████████              15:26:25

23            Do you see that?                           15:26:27

24       A.   Yes, I do.                                 15:26:28

25       Q.   The response, which is 86446, is ██████    15:26:30
```

Page 195

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1        A.    ██████████████              15:26:35

 2        Q.    What does ██████████ refer to here, on   15:26:38

 3    445?                                               15:26:39

 4        ██    ████████████████████ ██     █████████    

      ██  ████████████████████████████████  █████████

      ██  ██████████                        █████████

      ██    ██    ████████████              15:26:48

 8        A.    Yes.                                      15:26:49

 9        Q.    So this is --                             15:26:50

10        A.    Very, very likely.  I would say, yes, lidar.   15:26:51

11        ██    ████████████████████████      █████████

      ██  ████████                           █████████

      ██    ██    ████████████               15:27:01

14        Q.    Okay.  And Anthony responds, and it appears   15:27:02

15    he just responds to you.  Is that right?           15:27:07

16        A.    No.  I don't --                           15:27:11

17        Q.    Oh, I see the next person.  Yeah.         15:27:15

18        A.    Yeah.                                     15:27:16

19        ██    ████████████████            █████████

      ██    ██  ████████████████ ████████   █████████

      ██  ██████████████████████████████    █████████

      ██  ██████                             15:27:27

23        Q.    As of November 4, 2016, what was that Anthony   15:27:29

24    Levandowski's position at Uber?                    15:27:32

25        A.    November 2, 2016, would be the head of ATG.   15:27:34
```

Page 196

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   ██   ████████████████████████     ██████
     █     ████████████████████████     ██████
     █     ███████████              15:27:45
 4        A.   He is making a design recommendation.  I     15:27:47
 5   don't know that it was implemented.                     15:27:49
 6   ██   ████████████████████████     ██████
     █     █████████   ████              ██████
     █     ██   █████████████████████████     ██████
     █     ███████████   but --              15:27:59
10        Q.   That's how --     ████████████     ██████
     █     █████████████████████████     ██████
     █     ████   ███████████   ██████
     █     ██   █████████████████████   as.     15:28:13
14             These are so far out of context it's hard to     15:28:16
15   kind of -- you know.                                     15:28:18
16             But yes, it is evidence that suggests his     15:28:20
17   work -- he's doing work on lidar.  Correct.              15:28:22
18        Q.   Okay.  So what is the context for              15:28:25
19   Exhibit 897?                                             15:28:27
20        A.   I don't remember this.  But, you know, just     15:28:29
21   like I said earlier, I was just asked to be in a         15:28:30
22   seating configuration meeting.  It was invite and a      15:28:33
23   text.  I won't even go to the meeting, but it would be   15:28:35
24   construed as if I were making seating design decisions   15:28:39
25   in the car, though I'm not.                              15:28:43
```

Page 197

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        Q.   For purposes of Exhibit 897, Anthony        15:28:44

2    Levandowski -- he responded with a ███████████    ███████████

█       ████████                                          15:28:50

4        A.   He did, yes.                                15:28:51

5        Q.   And the first text in this thread seems to  15:28:53

6    refer to ██████████████████████████████████████   ███████████

█       █████████████████████          Would you agree that's a   15:29:00

8    reasonable inference?                               15:29:03

9            MR. HUME:  Objection to the form.           15:29:04

10       A.   Which one?  This one?                       15:29:05

11       Q.   The one ending 445.                         15:29:06

12       A.   Yes.  It does -- it does -- it does seem to 15:29:09

13   suggest that, yes.                                  15:29:22

14       Q.   So Anthony Levandowski, as far -- as late as 15:29:28

15   November 4, 2016 was ███████████████████████████   ███████████

█       █████████████████████████████          Is that   15:29:39

17   right?                                              15:29:43

18           MR. HUME:  Objection to the form.           15:29:44

19       A.   That is what he's doing here, yes.          15:29:47

20           MR. JAFFE:  Okay.  Let's mark as Exhibit 898 15:29:48

21       something labeled UBER76288.                     15:29:54

22           (Whereupon, Deposition Exhibit 898 was marked 15:29:57

23       for identification.)                             15:29:57

24       Q.   Exhibit 898 is an e-mail from Anthony       15:30:12

25   Levandowski to you, dated February 5, 2017.         15:30:15
```

Page 198

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1              Do you see that?                        15:30:18

2         A.   Uh-huh.                                 15:30:19

3         Q.   At this point, February 5, 2017, what is 15:30:20

4    Anthony Levandowski's position at Uber?            15:30:24

5         A.   Head of ATG -- yes, still head.  Still head 15:30:30

6    at the time.                                       15:30:33

7         Q.   And the e-mail says, ████████████   ███████ 15:30:38

     ███████████  ████████████████████               15:30:38

9              And the subject line is, ███████████  ████████ 15:30:47

     ██████████████████                               15:30:47

11             Do you see that?                        15:30:49

12        A.   I do.                                   15:30:49

13        Q.   What is "███████████████████           15:30:50

14   Mr. Levandowski's referring to here in Exhibit 898? 15:30:53

15        A.   Do we have the screenshot?             15:30:58

16        Q.   I do not have that.                     15:31:00

17        A.   I don't remember specifically about this 15:31:04

18   text, ██████████████████████████   ████████     15:31:04

     ██████████████████████████                       15:31:08

20        Q.   Why was Anthony Levandowski, the head of ATG, 15:31:13

21   texting you to ████████████████████              15:31:17

22        A.   So there's a screenshot, which means he 15:31:22

23   probably walked by someone's desk and saw something 15:31:25

24   that he saw as ████████, took a shot of it and texted 15:31:27

25   it to me and said -- you know, maybe we had discussed 15:31:31
```

Page 199

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   ████████████████████████████████████████        ██████████

 █   ████████████████████████████████████ -- and asked    15:31:38

 3   me where we are on it, try it out.                    15:31:47

 4       Q.   This is another example of Anthony           15:31:51

 5   Levandowski being involved in some of the day-to-day  15:31:53

 6   engineering of the Fuji lidar.  You agree with that.  15:31:56

 7   Right?                                                15:32:00

 8           MR. HUME:  Object to form.  Characterization. 15:32:01

 9       A.   I'm assuming that this has to do with Fuji.  15:32:06

10           I don't know.  ████████████████████  ██████████

 █   █████████████████████  ████████████████  ██████████

 █   █████████████████████████  ██████████  ██████████

 █   ████████████████████████████████  ██████████

 █   ███████████████  ██████████████████████  ██████████

 █   ████████████████████████████████  ██████████

 █   ██████████                                          15:32:24

17       Q.   So this is -- so this is just -- well, let me 15:32:24

18   actually restate that then.                          15:32:27

19           So is this another example of Anthony         15:32:30

20   Levandowski being involved in some of the day-to-day  15:32:32

21   engineering with regard to lidar at Uber?            15:32:35

22       A.   That's fair to say.                          15:32:37

23       Q.   And this is in February 2017?               15:32:38

24       A.   Correct.                                     15:32:40

25       Q.   All right.  Do you remember a debate within  15:32:41
```

Page 200

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1    ATG on whether to use something called ████████      15:33:59

 2        A.   Yes, I do.  Also ███████████ we called         15:34:03

 3    them, but --                                            15:34:06

 4        Q.   ███████████████████████████████                ████████

 █    █████████████████████                                   ████████

 █    ██  ██████████████████████████████████                  ████████

 █    ████████████████████████████████████████                ████████

 █    ████████████████  ██████████████████████                ████████

 █    █████████████████████████████████                       ████████

 █    █████████████                                           ████████

 █    ██████████████████████████████                          ████████

 █    ████████████████████████████████                        ████████

 █    ████████████████████████  ███████                       ████████

 █    ████████████████████████████                            15:34:48

 █    ████████████████████  ███████  ███████                  ████████

 █    █████████████████  ████████████████                     ████████

 █    █████████████████                                       15:35:05

18        Q.   And what was the result of the debate?         15:35:08

19        A.   No lidar.                                       15:35:10

20        Q.   No lidar?                                       15:35:12

21        A.   No.                                             15:35:12

22             MR. JAFFE:  This will be 899, labeled           15:35:20

23    UBER234193.                                              15:35:24

24             (Whereupon, Deposition Exhibit 899 was marked   15:35:27

25    for identification.)                                     15:35:27

                                                   Page 201
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   Remember when we were talking, earlier, about | 15:35:40 |
| 2 | whether you had -- your awareness of the deal regarding | 15:35:43 |
| 3 | Otto?  Do you recall that we talked about that earlier? | 15:35:47 |
| 4 | A.   I do.  Uh-huh. | 15:35:54 |
| 5 | Q.   So what I'd like to look at in this | 15:35:55 |
| 6 | document -- well, first, did you end up hiring this | 15:36:04 |
| 7 | ▮▮▮▮▮▮▮▮▮▮ person? | 15:36:14 |
| 8 | A.   Yes. | 15:36:17 |
| 9 | Q.   This is an e-mail thread describing her job | 15:36:17 |
| 10 | description, or his job description, in early | 15:36:20 |
| 11 | January 2016.  Is that right? | 15:36:23 |
| 12 | A.   Yes. | 15:36:25 |
| 13 | Q.   And at some point, you write an e-mail to | 15:36:26 |
| 14 | ▮▮▮▮▮▮▮▮▮▮ | 15:36:31 |
| 15 | On January 13, 2016, what was ▮▮▮▮▮▮▮ | 15:36:32 |
| 16 | position at Uber? | 15:36:35 |
| 17 | A.   January 13 -- | 15:36:37 |
| 18 | MR. HUME:  I'm going to object as outside the | 15:36:39 |
| 19 | scope, this e-mail and line of questioning. | 15:36:40 |
| 20 | A.   -- I think ▮▮▮▮ is still head of ATC -- head | 15:36:44 |
| 21 | of ATC at this point. | 15:36:47 |
| 22 | Q.   Okay.  And here, on the bottom of the first | 15:36:49 |
| 23 | page, ending in 193, an e-mail from you, dated | 15:36:51 |
| 24 | January 13, 2016, you respond to ▮▮▮▮▮▮▮ and you | 15:36:55 |
| 25 | say, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 15:36:59 |

Page 202

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   ██████████████████████████████████           15:37:02

 2          Do you see that?                       15:37:04

 3      A.   Uh-huh.                                15:37:04

 4      Q.   What was the ████████████ you were     15:37:06

 5   referring to here?                            15:37:07

 6          MR. HUME:  Objection as outside the scope.  15:37:09

 7      A.   Ah, yes.  So I was aware that ██████        ████████  15:37:22

 █   ████████ were building a specification for a potential  15:37:22

 9   laser supplier, and ██████ would not disclose any  15:37:28

10   information about it. ████████████████████.     15:37:32

11      Q.   You're referring to ████████ work with  15:37:36

12   what became Otto as his ██████████████           15:37:38

13      A.   As it turns out, yes, that is what it is,  15:37:42

14   yeah.                                          15:37:44

15      Q.   Okay.  And then, after he says, no need to  15:37:45

16   wait, you then respond a little bit later -- in the  15:37:48

17   10:40 a.m. e-mail you say, ██████████████████  ██████████  15:37:48

 █   ████████████████████████████                    15:37:55

19          Do you see that?                        15:37:58

20      A.   Uh-huh.                                15:37:59

21      Q.   What did you mean by ████████████        15:38:00

22      A.   Right.  This is the thing that ██████ and --  15:38:02

23   ██████ was building a laser specification for ██████  15:38:05

24   I didn't know the specifics of it.  And ██████ is an  15:38:07

25   optics person.  And I wasn't sure if we were going to  15:38:13
```

Page 203

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    need to bring in more optics people or not based on      15:38:17

 2    what ████ was doing.                                     15:38:22

 3         Q.   The laser deal that's referred to here,        15:38:23

 4    that's referring to acquiring Otto.  Right?              15:38:25

 5         A.   It is not.  It is what it ends up being.  But  15:38:28

 6    to me, at that time when I wrote that, it was -- I       15:38:32

 7    thought they were working with a supplier to acquire or  15:38:34

 8    have them build a laser for us.                          15:38:37

 9         Q.   I see.  So the laser deal ended up being the   15:38:39

10    Otto acquisition?                                        15:38:44

11              MR. HUME:  Objection to the form.  Objection.  15:38:46

12         Outside the scope.                                  15:38:48

13         A.   What I'm referring to here as the "laser       15:38:49

14    deal" was, in fact, the Otto acquisition.                15:38:51

15         Q.   Okay.                                          15:38:57

16         A.   But I didn't know that that's what it          15:39:00

17    actually was at the time.                                15:39:04

18         Q.   You didn't know that's what it was at the      15:39:12

19    time?                                                    15:39:14

20         A.   I didn't know it was Otto.  I thought it was   15:39:15

21    the supplier arrangement ████ had been working on        15:39:17

22    with ████   That's how it was messaged to me.            15:39:20

23         Q.   You didn't know that he was looking at         15:39:23

24    acquiring a lidar company?                               15:39:25

25         A.   No.                                            15:39:27
```

Page 204

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              MR. HUME:  Objection.  Outside the scope.      15:39:27

 2        A.   No.                                             15:39:29

 3              MR. JAFFE:  So this is going to be Exhibit     15:39:30

 4        900.                                                 15:39:31

 5              (Whereupon, Deposition Exhibit 900 was marked  15:39:32

 6        for identification.)                                 15:39:32

 7        Q.   So this is an e-mail thread, on the same        15:39:48

 8   thread about that Mr. ████   And do you see that there    15:39:50

 9   is an e-mail in the middle from you, dated January 12,    15:39:53

10   2016?                                                     15:39:57

11              Do you see that?                               15:39:57

12        A.   Uh-huh.                                         15:39:58

13        Q.   And that's the day before you sent the e-mail   15:39:59

14   regarding ████████████████  Right?                        15:40:02

15        A.   Uh-huh.  I guess, yeah.  Yes.                   15:40:06

16        Q.   And here, on January 12, you say, ██████  ████  15:40:14

██ ████████████████████████  ████                             15:40:16

██ ██████████                                                 15:40:17

19              Do you see that?                               15:40:20

20        A.   I do.                                           15:40:20

21        Q.   You knew that Mr. █████ was looking at          15:40:23

22   acquiring a lidar company as of January 12?              15:40:25

23        A.   Absolutely not.                                 15:40:29

24        Q.   What does this refer to?                        15:40:30

25        A.   This would have been me speculating or          15:40:32
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    guessing at why ████ was there.                     15:40:33

 2                   ████████████████████████             ████████

 █    ██████████████  ██████████████████████              ████████

 █    ████████████  ████████████████████                 ████████

 █    ███████████████████  ████████████████               ████████

 █    ██████████████  ██████████████                      15:40:48

 7        Q.   Why did you write,████████████████         ████████

 █        ███████████████████████████████                15:40:53

 9             MR. HUME:  Objection.  Outside the scope of 15:40:55

10        the notice.  This is all personal testimony.    15:40:57

11        A.   This is what I was guessing he was doing.  15:40:59

12    ██████████  and I had our theories.                 15:41:00

13        Q.   Where does it say in this e-mail that you're 15:41:03

14    guessing?                                            15:41:05

15        A.   It doesn't.                                15:41:06

16        Q.   And Mr. -- how do you pronounce that?      15:41:10

17        A.   ████████                                   ████████

 █        ██  ████████                                    ████████

 █        ██  ████████                                    15:41:19

20        Q.   He responds, ██████████████████████         ████████

 █    ██████████████████████████████████                  ████████

 █    ████████████████████████                            15:41:25

23             Do you see that?                           15:41:27

24             It's the first line.                       15:41:32

25        A.   Oh, yes.  Sorry.                           15:41:33
```



Page 206

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1         Q.    That's referring to what became the Otto       15:41:35

 2   acquisition.  Right?                                        15:41:38

 3              MR. HUME:  Objection.  Outside the scope.        15:41:39

 4         A.    I think so.                                     15:41:41

 5         Q.    And in your e-mail, you -- the "lidar company   15:41:42

 6   acquisition," that's referring to the Otto acquisition.     15:41:47

 7   Right?                                                      15:41:49

 8         A.    As it turned out, yes.                          15:41:52

 9              MR. JAFFE:  Okay.  You can set that aside.       15:41:54

10              This will be Exhibit 901.  It's UBER129455.      15:43:44

11              (Whereupon, Deposition Exhibit 901 was marked    15:43:51

12         for identification.)                                  15:43:51

13         Q.    This is an e-mail from Mr. ████ to yourself     15:44:07

14   and Mr.██████   Is that right?                              15:44:10

15         A.    ██████                                          15:44:12

16         Q.  ██████        Excuse me.                          15:44:13

17         A.    Uh-huh -- no.  This is -- oh, from ████ to      15:44:14

18   me and ████   Yeah.  Sorry.                                 15:44:18

19         Q.    This is memorializing a birdhouse lidar         15:44:21

20   discussion from September 19, 2016.  Is that right?         15:44:24

21         A.    Uh-huh.  Looks to be, yes.                      15:44:27

22         Q.    And at this point, what is your role at Uber,   15:44:33

23   as of the date of this e-mail and this meeting?             15:44:35

24         A.    Head of hardware.                               15:44:40

25         Q.    And what is Anthony Levandowski's role as of    15:44:44
```

Page 207

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    September 20, 2016?                              15:44:47

2        A.   Head of ATG.                            15:44:48

3        Q.   Okay.  So -- and if you look at the first   15:44:49

4    bullet, it refers to "TK."  Who does that refer to?   15:44:53

5        A.   Travis Kalanick.                        15:44:56

6        Q.   So Mr. Kalanick was at this birdhouse lidar   15:44:57

7    discussion meeting?                               15:45:01

8        A.   He was always at birdhouse.             15:45:02

9        Q.   And this is reflects that he was involved in   15:45:03

10   participating in a lidar discussion?              15:45:07

11       A.   That's correct.                         15:45:09

12       Q.   I want to specifically look at the fifth   15:45:14

13   bullet.                                           15:45:20

14            Do you see that?                         15:45:22

15       A.   Uh-huh.                                  15:45:22

16       Q.   It says, ███████████████████████    ██████   

██    ██████                                          15:45:28

18       A.   Uh-huh.                                  15:45:29

19       Q.   Do you see that?                         15:45:29

20       A.   Uh-huh.                                  15:45:30

21       Q.   What does that refer to?                 15:45:30

22       ██ ██████████████████████████████    ██████

██   ██████████████████████████████████    ██████

██   ████████████████  ██████████████████    ██████

██   █████████████████                               15:45:41
```

Page 208

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1

                                                    15:46:27
18      Q.   That's not what it means?               15:46:28
19      A.   No.  It means Uber.                      15:46:29
20
                                                    15:46:36
23      A.   That's --                                15:46:37
24           MR. HUME:  Objection to the form.  You asked   15:46:38
25      him the question.  He answered it.  You don't like   15:46:39
```

Page 209

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        the answer.                                          15:46:41

2        A.   If I say -- if I use the pronounce "I" in the   15:46:42

3   context of something Uber related, I don't actually       15:46:45

4   mean me.   I mean Uber.                                   15:46:47

5   ████████████████████  █████████████   ████████

    ████████████████████████████                             15:46:53

7        Q.   So if you look a few bullets up, the second     15:46:57

8   bullet says, ██████████████████████████████████          15:47:00

9        A.   Uh-huh.                                         15:47:06

10        Q.   So doesn't this indicate that, when Mr. █████  15:47:06

11   was trying to write this e-mail, he knew how to specify  15:47:11

12   the company versus the person?                           15:47:15

13        A.   Otto is owned by Uber.                         15:47:18

14        Q.   Right.  ████████████████████████   ████████

    ██████████████████████████████████████   ████████

    ███████████                             ████████

    ███   █████████████████████████████████   ████████

    █████████████████████████████                        15:47:31

19        Q.   In the █████████████ here, that next          15:47:34

20   bullet --                                               15:47:37

21        Do you see that?                                    15:47:41

22   ███   ██████████████████████████████████   ████████

    ██████████████████████████████████████   ████████

    ██████████████████████████████████████   ████████

    ██████████████                          15:47:49
```

Page 210

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1      ███   ███    ███████████████████████    ████████

▮      ███████████                             ████████

▮               ████████████████████████       ████████

▮      ███   ████████████████                   ████████

▮      ███   ███████████████                    15:47:57

6      A.   Yes.  Yes.  Yes.  Yes.              15:47:57

7      Q.   Do you see the information included in there?   15:47:59

8      A.   Uh-huh.                             15:48:03

9      Q.   Did that come from Anthony?         15:48:03

10     A.   These are ████s notes from the meeting.   15:48:05

11   And by "timing," he means schedule, like when things   15:48:08

12   could be done.                            15:48:11

13     Q.   So did this information from that meeting --   15:48:16

14   did that come from Anthony Levandowski?    15:48:17

15     A.   It's unlikely, but --              15:48:22

16     Q.   Who else would it have come from?   15:48:25

17     A.   It would have come from someone else at the   15:48:27

18   meeting.  There would be 15 people in these meetings.   15:48:29

19          But it could have come from Anthony.  I can't   15:48:32

20   recall where that information came from.   15:48:34

21     Q.   And the last bullet sales, ████████████   ████████

▮    █████████████████████████████████████████   ████████

▮    ███████████████████████"                    15:48:43

24          Do you see that?                    15:48:45

25     A.   Uh-huh.                            15:48:45
```

Page 211

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        Q.    Why would Anthony Levandowski, the head of       15:48:46

 2   ATG, want to see technical details regarding a lidar       15:48:48

 3   product?                                                    15:48:51

 4        A.    So this is likely about the ████████████        15:48:51

 5              And this was a point of, again, contention       15:48:57

 6   between Anthony and myself, ██████████████████  ███████     15:48:59

     █ ████████████████████████████████████████                 15:49:03

     █ ███████████████████████████████                          15:49:09

 9              I'm assuming that's what this is about.  It      15:49:11

10   was a debate.                                               15:49:13

11        Q.    I want to turn to topic number 3 in Waymo's     15:50:07

12   deposition notice.                                          15:50:16

13        A.    Uh-huh.                                          15:50:17

14        Q.    Actually, before we get there, am I correct,    15:50:25

15   for topic number 1, that you are not prepared today to     15:50:27

16   testify regarding Mr. Levandowski's involvement in the     15:50:30

17   development of lidar on behalf of Otto?                     15:50:33

18        A.    It depends on the question.                      15:50:43

19        Q.    Right.  So my question is:  On behalf of --     15:50:45

20   are you prepared today to testify regarding Anthony        15:50:49

21   Levandowski's involvement in the development of lidar      15:50:52

22   at Otto before it was acquired by Uber?                     15:50:55

23        A.    No.                                              15:51:00

24        Q.    All right.  So now, let's go to topic           15:51:02

25   number 3.                                                   15:51:06
```

Page 212

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | follow-up? | 16:56:08 |
| 2 | MR. JAFFE:  Yeah.  I mean, that's what I had | 16:56:10 |
| 3 | said before.  So that's fine, if you want to do it | 16:56:13 |
| 4 | that way. | 16:56:15 |
| 5 | MR. HUME:  I'll be very brief. | 16:56:18 |
| 6 | EXAMINATION | 16:56:19 |
| 7 | BY MR. HUME: | 16:56:20 |
| 8 | Q.   Mr. Meyhofer, topic 1 is Mr. Levandowski's | 16:56:21 |
| 9 | involvement in the development of lidar on behalf of | 16:56:24 |
| 10 | Uber or Ottomotto. | 16:56:27 |
| 11 | I believe counsel for Waymo asked you if you | 16:56:29 |
| 12 | recall reviewing any documents in preparing to testify | 16:56:32 |
| 13 | on that. | 16:56:36 |
| 14 | Do you recall being asked that, generally? | 16:56:37 |
| 15 | A.   I do recall that. | 16:56:42 |
| 16 | Q.   Do you recall now -- do you recall whether | 16:56:43 |
| 17 | you reviewed or brought any documents relating to this | 16:56:44 |
| 18 | topic to your deposition? | 16:56:50 |
| 19 | A.   I did bring a document. | 16:56:55 |
| 20 | Q.   What document did you bring? | 16:57:05 |
| 21 | A.   It is an interrogatory.  I don't know how to | 16:57:06 |
| 22 | read the numbers on these.  It describes -- | 16:57:13 |
| 23 | Should I read it or should I share it, or | 16:57:30 |
| 24 | how -- what -- | 16:57:32 |
| 25 | Q.   Can you describe what you brought and why you | 16:57:34 |

Page 248

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    brought it.                                              16:57:36

2         A.   It discusses that Mr. Levandowski did not      16:57:42

3    provide beam spacing or angles for Spider but, again,    16:57:46

4    instead, asked Mr. ██████ to provide the desired beam    16:57:49

5    pattern parameters, which were ultimately used.          16:57:54

6         Q.   Can you tell -- can you say what you're        16:57:59

7    reading from?                                            16:58:01

8         A.   I'm reading from page 4.                       16:58:01

9         Q.   Why did you bring that document?               16:58:18

10        A.   It discusses the nature of the development of  16:58:27

11   our requirements and Anthony's involvement or lack of    16:58:31

12   involvement and demonstrates Boehmke's contributions.    16:58:35

13        Q.   Have you reviewed pages 4 through 5 --         16:58:45

14   sorry -- pages 3, 4, and 5 of this document?             16:58:52

15        A.   Yes.                                           16:58:56

16        Q.   Did you review them prior to the deposition?   16:58:58

17        A.   Yes.                                           16:59:00

18          ████████████████████████████        ████████

██    ██████████████████████████████████       ████████

██    ██████████████████████████████████       ████████

██    ████████████████████████████████████████  ████████

██    ████████████████████████████████████      ████████

██    ██████████████                              16:59:26

24        Q.   What does court interrogatory number 3 ask,    16:59:30

25   on page 3 of the document?                               16:59:35
```

Page 249

```
 1        A.   To identify and describe, in approximate       16:59:38

 2   chronological sequence, all lidar work Anthony had done   16:59:41

 3   since leaving Waymo, including whether or not the work     16:59:44

 4   led to or related to any prototype -- and describe how    16:59:46

 5   or where that work was reflected.                          16:59:51

 6        Q.   And then, do pages 3 through 6 provide the       16:59:54

 7   answer to that?                                            16:59:57

 8        A.   It does.  Should I read them?                    16:59:58

 9        Q.   I'm not asking you to read it into the           17:00:02

10   record.  Counsel for Waymo may want you to.  I don't       17:00:03

11   know.                                                      17:00:07

12        But I'm asking you whether you've reviewed            17:00:07

13   that answer, and, if so, do you believe it to be           17:00:09

14   accurate?                                                  17:00:12

15        A.   I do.  I have reviewed it, and I do believe      17:00:13

16   it to be accurate.                                         17:00:15

17        Q.   Have you seen -- counsel for Waymo showed you    17:00:19

18   some e-mails, some call logs on what he called the         17:00:21

19   lidar log and some other documents today.                  17:00:27

20        Did anything he showed you today cause you to         17:00:29

21   believe that anything in this answer is inaccurate?        17:00:32

22        A.   No, it did not.                                  17:00:35

23        It also discusses, like I said, Anthony being         17:00:39

24   a cheerleader and encouraging the team to focus on         17:00:41

25   prototypes, which was one of his main focuses.             17:00:45
```

```
 1      Q.   Putting aside the document and aside from the      17:00:51

 2  people you testified you spoke to prepare on topic 1,       17:00:56

 3  do you have any personal knowledge, from your               17:01:00

 4  experience at Uber working with Anthony Levandowski,        17:01:03

 5  that is relevant to topic number 1, which is                17:01:05

 6  Levandowski's involvement in the development of lidar?      17:01:10

 7      A.   I worked personally with Anthony very closely      17:01:13

 8  for the entire tenure that he's had with Uber and had       17:01:15

 9  first-hand understanding of his -- what his involvement     17:01:23

10  really was and wasn't and was directly responsible or       17:01:28

11  in charge for the lidar program.  And any contributions     17:01:33

12  that he would have made of any significance would have      17:01:42

13  been brought to my attention because the team would         17:01:46

14  have suggested that they had a change.                      17:01:48

15      Q.   Based on that personal knowledge and the           17:01:52

16  other work you did to prepare on topic 1, what is your      17:01:54

17  basic description of Mr. Levandowski's involvement with     17:01:59

18  the development of lidar at Uber?                           17:02:01

19      A.   He was the person who drove urgency and kept       17:02:05

20  everyone working with a sense of purpose, and he was        17:02:16

21  the one that got people to work really hard at whatever     17:02:22

22  the deadline was and give their all, and he kept            17:02:29

23  them excited about what we were doing.                      17:02:34

24      Q.   On topic 3, which is the efforts Uber took to      17:02:43

25  ensure Mr. Levandowski didn't use any proprietary           17:02:47
```

Page 251

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | information from someone else, I think Counsel, at the | 17:02:51 |
| 2 | end -- towards the end of that questioning asked you | 17:02:55 |
| 3 | if -- other than the diligence stuff that he asked you | 17:02:58 |
| 4 | about and other than asking Anthony not to, were you | 17:03:05 |
| 5 | aware of anything else. | 17:03:10 |
| 6 | Do you remember him asking a question along | 17:03:11 |
| 7 | those lines? | 17:03:13 |
| 8 | A.   Yes, I do. | 17:03:14 |
| 9 | Q.   And when counsel for Waymo used the | 17:03:15 |
| 10 | expression "other than asking Anthony not to use such | 17:03:19 |
| 11 | information," is it your understanding that Anthony was | 17:03:24 |
| 12 | asked not to use proprietary information or was told | 17:03:27 |
| 13 | not to use it? | 17:03:32 |
| 14 | MR. JAFFE:  Object to form.  Leading. | 17:03:34 |
| 15 | A.   So Anthony was definitely told not to use it, | 17:03:38 |
| 16 | not to use any information from a previous employer. | 17:03:42 |
| 17 | And also, the team and I would have encountered this | 17:03:47 |
| 18 | information if he were using it.  And we never | 17:03:55 |
| 19 | encountered any information, and it's simply not | 17:03:58 |
| 20 | believable. | 17:04:05 |
| 21 | Q.   Why did you bring the contracts, his | 17:04:08 |
| 22 | employment contract and the confidentiality agreement, | 17:04:10 |
| 23 | on this topic? | 17:04:12 |
| 24 | A.   To show that he complied and agreed and that | 17:04:14 |
| 25 | we discussed it in writing. | 17:04:19 |

Page 252

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. HUME:  I don't have any other questions. | 17:04:25 |
| 2 | MR. JAFFE:  I'm just going to have some short | 17:04:27 |
| 3 | follow-up. | 17:04:30 |
| 4 | REEXAMINATION | 17:04:30 |
| 5 | BY MR. JAFFE: | 17:04:30 |
| 6 | Q.   Was the testimony that you gave before your | 17:04:30 |
| 7 | counsel just started asking you questions -- was it | 17:04:33 |
| 8 | true and accurate? | 17:04:37 |
| 9 | A.   I believe so. | 17:04:39 |
| 10 | Q.   You're not taking back any of your prior | 17:04:41 |
| 11 | testimony.  Right? | 17:04:43 |
| 12 | A.   I don't -- no.  I don't -- I don't know -- | 17:04:49 |
| 13 | no, I'm not. | 17:04:52 |
| 14 | Q.   Did you discuss the subject matter of your | 17:04:58 |
| 15 | testimony before your counsel started questioning you, | 17:05:01 |
| 16 | after the deposition started? | 17:05:04 |
| 17 | A.   No. | 17:05:06 |
| 18 | Q.   I have one quick thing to do in follow up. | 17:05:08 |
| 19 | A.   You mean while we were here today? | 17:05:11 |
| 20 | Q.   Yeah. | 17:05:14 |
| 21 | A.   No. | 17:05:15 |
| 22 | THE REPORTER:  903. | 17:05:15 |
| 23 | MR. JAFFE:  903.  Thank you. | 17:05:20 |
| 24 | This is UBER76566. | 17:05:23 |
| 25 | - - - | 17:05:24 |

Page 253

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | (Whereupon, Deposition Exhibit 903 was marked | 17:05:26 |
| 2 | for identification.) | 17:05:26 |
| 3 | Q.   I've marked a document as Exhibit 903 -- yes, | 17:05:38 |
| 4 | Exhibit 903. | 17:05:41 |
| 5 | Before we get to this document, what I'd like | 17:05:43 |
| 6 | to do is -- do you see the Bates number on the bottom | 17:05:45 |
| 7 | right-hand side -- | 17:05:48 |
| 8 | A.   Yes. | 17:05:48 |
| 9 | Q.   -- that says 76566? | 17:05:49 |
| 10 | A.   Uh-huh. | 17:05:52 |
| 11 | Q.   Can you look at the -- back at our old friend | 17:05:53 |
| 12 | the lidar log here, Exhibit 866 [sic], and in | 17:05:56 |
| 13 | particular, if you can go to ▮▮▮ entry ▮▮▮ on the | 17:06:02 |
| 14 | lidar log. | 17:06:07 |
| 15 | A.   Yes. | 17:06:13 |
| 16 | Q.   And do you see the "Bates number" column, | 17:06:14 |
| 17 | second column? | 17:06:17 |
| 18 | A.   Yes. | 17:06:23 |
| 19 | Q.   Can you confirm that what we've marked as | 17:06:25 |
| 20 | Exhibit 903 has the same Bates number as what's in row | 17:06:27 |
| 21 | 549 under the lidar log? | 17:06:33 |
| 22 | A.   Yes. | 17:06:35 |
| 23 | Q.   So this reflects that the author of | 17:06:36 |
| 24 | Exhibit 903 is Anthony Levandowski? | 17:06:38 |
| 25 | A.   That's right. | 17:06:41 |

Page 254

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        Q.    And he sent this memo or document to a number      17:06:43

 2   of people, including yourself?                                 17:06:47

 3        A.    Yes.                                                17:06:50

 4        Q.    And it's dated November 2, 2016, so at this         17:06:51

 5   point Mr. Levandowski is the head of Uber ATG.  Right?         17:06:56

 6        A.    I don't see the date, but --                       17:07:01

 7        Q.    As the date reflected on the lidar log             17:07:04

 8   here --                                                        17:07:07

 9        A.    I'm sorry.  Yes.  Gotcha.  Yes, it is.             17:07:07

10        Q.    Okay.  So I'd like you to turn to -- did I         17:07:11

11   hand you with the one with the circle on it?                   17:07:17

12        A.    Red, yeah.                                          17:07:20

13        Q.    Okay.  So maybe you can switch with -- so we       17:07:20

14   don't have the one with my handwriting.                        17:07:23

15              You probably have a clue of what I'm going to      17:07:32

16   ask you about, which relates to the "Laser efforts            17:07:34

17   update" that's on the second page.                             17:07:37

18        A.    Yes.                                                17:07:39

19        Q.    And do you see -- this is Mr. Levandowski          17:07:45

20   saying, ███████████████████████████     ████████████

     █  ███████████████████████████████████  ████████████

     █  ██████████████████████████████████████  ██████████

     █  █████████████████████████████████████   17:08:01

24        A.    Uh-huh.                                            17:08:04

25        Q.    Do you see that?                                    17:08:05
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        A.   Uh-huh.  Yes, I do.                    17:08:06

 2        Q.   This is referring to going from Spider to   17:08:07

 3   Fuji.  Right?                                     17:08:09

 4        A.   Yes.                                     17:08:10

 5        Q.   And a couple sentences down he says, ██████   ██████

 █   ████████████████████████████████████████████████   ██████

 █   █████████████████████████████████████████████     ██████

 █   ████████████████████████████████████████████████   ██████

 █   ███████████████████████████████████████████        ██████

 █   ███████████████████████████            17:08:36

11        Do you see that?                         17:08:38

12        A.   Uh-huh.                              17:08:38

13        Q.   What was Mr. Levandowski referring to when he   17:08:39

14   was talking about the lasers that he's built like this   17:08:42

15   before?                                          17:08:46

16        MR. HUME:  Object to the form.             17:08:47

17        A.   I don't know.                         17:08:50

18        Q.   This is Mr. Levandowski referring to Fuji as   17:08:58

19   a lidar like ones he's built before.  Right?     17:09:02

20        MR. HUME:  Object to the form.             17:09:07

21   Mischaracterizes the document.                  17:09:08

22        A.   It's not how I read it.  It says "we," as in   17:09:10

23   the team.  So some folks on the team have built lasers   17:09:14

24   like this before, presumably, you know, a ████      ██████

 █   ████████████████████                    ██09:22
```

Page 256

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        Q.    Are you aware of whether he and other folks    17:09:26

2    that are former Google employees have built            17:09:29

3    ██████████████████████████                             17:09:32

4        A.    I wasn't aware that the Google laser was a     17:09:34

5    905 until this trial.                                  17:09:38

6        Q.    So when you read this, you have no idea        17:09:40

7    whether it's referring to Google or not?               17:09:44

8        A.    Oh, I would not have assumed for a second      17:09:47

9    that it is.  I have no idea.                            17:09:50

10        Q.    So when Mr. Levandowski writes in this        17:09:53

11    document that ███████████████████████████   ████████

      ██ █████████████████████████████████████   ████████

      ██ ███████████████████████████████████████ ████████

      ██ ███████████████████████████████████████ ████████

      ██ █████████████████████                              17:10:10

16        A.    No, because we were pivoting because I        17:10:13

17    insisted that we pivot, not because we did.  He wanted 17:10:15

18    to do ██████ and I wanted to do ██████                 17:10:18

19           And I have no knowledge of Waymo's laser, and   17:10:20

20    I wanted our team to build ████ because I felt that it 17:10:24

21    was the right part for us to do.                       17:10:28

22        Q.    And did you ever discuss with Mr. Levandowski 17:10:31

23    that -- whether he had built a laser like this before, 17:10:33

24    referring to a ██████                                  17:10:38

25        A.    No, I didn't.                                 17:10:41
```

Page 257

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1          Q.   Never came up?                        17:10:43

 2          A.   No.                                   17:10:44

 3          Q.   When you received this document from  17:10:49

 4   Mr. Levandowski in November 2016, did you ask him what  17:10:51

 5   he meant when he said we built lasers like this before?  17:10:55

 6          A.   No.                                   17:10:58

 7               MR. HUME:  Object.  Object to the form.  17:10:59

 8          Mischaracterizes the document.             17:11:00

 9          A.   I did not ask him what he meant.      17:11:03

10               MR. JAFFE:  Okay.  We can put this aside.  We  17:11:08

11          can take a quick break and switch to the personal.  17:11:11

12               THE VIDEOGRAPHER:  Going off the record, the

13          time is 5:10 p.m.

14

15               (Time noted:  5:10 p.m.)

16

17

18

19

20

21

22

23

24

25
```

Page 258

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1                 CERTIFICATE
 2   COMMONWEALTH OF PENNSYLVANIA   )
                                    )
 3   COUNTY OF ALLEGHENY            )
 4
 5       I, Rebecca L. Schnur, do hereby certify that
     before me, a Notary Public in and for the Commonwealth
 6   aforesaid, personally appeared ERIC MEYHOFER, who then
     was by me first duly cautioned and sworn to testify the
 7   truth, the whole truth, and nothing but the truth in
 8   the taking of his oral deposition in the cause
 9   aforesaid; that the testimony then given by him as
     above set forth was by me reduced to stenotype in the
10   presence of said witness, and afterwards transcribed by
     means of computer-aided transcription.
11       I do further certify that this deposition was
     taken at the time and place in the foregoing caption
12   specified.
         I do further certify that I am not a relative,
13   counsel or attorney of either party or otherwise
     interested in the event of this action.
14       IN WITNESS WHEREOF, I have hereunto set my hand
15   and affixed my seal of office at Pittsburgh,
16   Pennsylvania, on this 21st of August, 2017.
17
18
19
20
21
22   _____
23   Rebecca L. Schnur, RDR, Notary Public
24   In and for the Commonwealth of Pennsylvania
25   My Commission expires June 16, 2021.

                                       Page 259
```