# EXHIBIT 12

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

# EXHIBIT 12

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                SAN FRANCISCO DIVISION
 4
 5   WAYMO LLC,                        )
 6              Plaintiff,             )
 7         vs.                         ) Case No.
 8   UBER TECHNOLOGIES, INC.;          ) 3:17-cv-000939-WHA
 9   OTTOMOTTO LLC; OTTO TRUCKING,     )
10   INC.,                             )
11              Defendants.            )
12   _____    )
13       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15     VIDEOTAPED DEPOSITION OF KRISTINN GUDJONSSON
16                  Palo Alto, California
17                 Friday, July 28, 2017
18                       Volume I
19
20   Reported by:
21   CARLA SOARES
22   CSR No. 5908
23   JOB No. 2665814
24
25   PAGES 1 - 242
```

Page 1

```
 1        A   Oh, when I would get back to them?         11:27:59
 2        Q   Yes.
 3        A   No, that would be just as soon as
 4   possible.
 5        Q   Okay.  So what does the three months refer  11:28:04
 6   to?
 7        A   I'm sorry.  I thought you were talking
 8   about how far back I should be looking at his
 9   activity on the machine.
10        Q   Okay.  So let me go back then.             11:28:12
11            So to the best of your recollection, what
12   you had agreed on is that you would look at the
13   machine and go back about three months?
14        A   Two, three months, probably.  Yeah.
15        Q   [redacted]
                [redacted]
                [redacted]
                [redacted]
19        Q   And then did you discuss how soon you
20   would revert to Ms. Bailey with more information?   11:28:36
21        A   As quickly as possible.
22        Q   When did the meeting take place?
23        A   I'm sorry.  Did you say "when" or "where"?
24        Q   When.
25        A   I'm not completely sure.  A guess would be 11:28:52
```

```
 1   end of January, beginning of February.  Not sure.         11:28:59

 2        Q   Was that meeting in person?

 3        A   Me and Gary were in person, and then they

 4   were over VC, over videoconference.

 5        Q   Where is Ms. Bailey located?                     11:29:18

 6        A   I think she is in the Google X building.

 7        Q   I'm sorry.  You said that some lawyer was

 8   involved.  Do you recall which lawyer?

 9        A   No, I don't.  Sorry.  I'm terrible with

10   names.                                                    11:29:36

11        Q   But is it fair to say it was an in-house

12   Google lawyer?

13        A   Yes.

14        Q   Okay.  And I believe you said earlier that

15   they had provided some clarification.  Is that            11:30:06

16   Ms. Bailey or the attorney or both?

17        A   Probably both, but I don't recall.

18        Q   What did you do after the meeting in terms

19   of the investigation?

20        A   I started a tracking doc.                        11:30:34

21        Q   Did you say "a tracking doc"?

22        A   I create a -- what we call ███████

23   ████████████████████████████████████████

24   and a subsequent tracking doc.

25        Q   Okay.  And what information did you put in       11:30:53
```

Page 58

```
 1   the -- into the event management system?              11:30:55
 2           I'm sorry.  Do you need some more water?
 3       A   No, I think I'm good for now.
 4           ████████████████████████████
     ██  ████████████████████████████████████████  ████
     █   ████████████████████████████████
     █   ██████████████████████
 8       Q   And what information did you put into the
 9   tracking document?
10       A   ████████████████████████████████████████  ████
     █   ████████████
12       Q   Do you recall any of the background
13   information you put into the tracking document?
14       A   Yes.
15       Q   What was that?                                11:31:30
16           THE WITNESS:  Am I allowed to say that?
17           MR. BAKER:  Can you repeat the question
18   again?
19   BY MR. TAKASHIMA:
20       Q   Do you recall what information you put        11:31:37
21   into the tracking document?
22       A   That information is partially what was
23   given to me by lawyers and legal advice, so I'm
24   fairly certain that would be under privilege.
25           MR. BAKER:  Yeah, we can step outside and     11:31:48
```

Page 59

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1        A    Yes.                                            16:29:09
2        Q    Can you explain basically what it does,
3    what it is?
4        A    It's a search engine.
5        Q    It's a search engine?                           16:29:13
6        A    Yes.
7        Q    And who uses it?
8        A    It is an internal search engine used by
9    Googlers.
10       Q    By Google employees?                            16:29:19
11       A    Yes.
12       Q    You searched for specific terms when you
13   were analyzing Anthony Levandowski's logs.  Where
14   did these -- for example, in the Gary Brown
15   declaration, there was a search for the "Chauffeur  16:29:36
16   SVN login" and for the "EEE setup.
17       A    Do you remember which paragraph it is?
18       Q    It is paragraph 15.
19       A    Yes, 15.
20       Q    Where did these terms come from?                16:29:55
21       A    Again, this would be either derived from
22   legal counsel or from ███████████████ based
23   on what we have seen from legal counsel.
24       Q    So can you explain a little bit about this
25   ████████████ p?                                          16:30:14
```

Veritext Legal Solutions
866 299-5127



```
 1        A    As in -- okay.  So backing up, we get          16:30:16
 2   into, like, █████████████████████████████ ██
```

```
 1      A   ████████████████████████████████████  ████████
        ████████████████████████████

 3      Q   Okay.  What did the searches of the term
 4   "Chauffeur SVN login" tell you about Anthony
 5   Levandowski's objectives with respect to his           16:31:35
 6   activities?
 7      A   First of all, this is something that Gary
 8   did, and you would have to ask Gary.
 9      Q   Okay.
10      A   And I do not -- cannot speculate about          16:31:42
11   intention of somebody else.
12      Q   When you were running these searches of
13   these terms -- sorry.  Let me start over.
14          When searches of these terms were being
15   run, what sources were looked at?                      16:31:55
16      A   What sources?
17      Q   Of information.  So you ran searches of
18   these terms, right?
19      A   Yes.
20      Q   What results were you getting back?             16:32:07
21          MR. BAKER:  Just to be clear --
22          THE WITNESS:  Can you clarify a little bit
23   more?
24          MR. BAKER:  Can I ask you a question?
25   Because when we were talking about ████████████        16:32:17
```

Page 227

1       I, the undersigned, a Certified Shorthand
2  Reporter of the State of California, do hereby
3  certify:
4       That the foregoing proceedings were taken
5  before me at the time and place herein set forth;
6  that any witnesses in the foregoing proceedings,
7  prior to testifying, were administered an oath; that
8  a record of the proceedings was made by me using
9  machine shorthand which was thereafter transcribed
10 under my direction; that the foregoing transcript is
11 a true record of the testimony given.
12      Further, that if the foregoing pertains to
13 the original transcript of a deposition in a Federal
14 Case, before completion of the proceedings, review
15 of the transcript [ ] was [X] was not requested.
16      I further certify I am neither financially
17 interested in the action nor a relative or employee
18 of any attorney or any party to this action.
19      IN WITNESS WHEREOF, I have this date
20 subscribed my name.
21      Dated: 7/29/2017

*Carla Soares*

CARLA SOARES

CSR No. 5908