

Neel Chatterjee
+1 650 752 3256
NChatterjee@goodwinlaw.com

Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025

goodwinlaw.com
+1 650 752 3100

August 27, 2017

**VIA ECF**

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
United States District Court for the Northern District of California
Phillip Burton United States Courthouse
450 Golden Gate Avenue
Courtroom F - 15th Floor
San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, LLC, et al.* **(Case No. 3:17-cv-00939-WHA)**

Dear Magistrate Judge Corley:

Otto Trucking LLC submits this letter brief in opposition to plaintiff Waymo LLC's Motion to Quash Subpoena and Non-Party Keker, Van Nest & Peters LLP's Motion for Protective Order and Motion to Quash Subpoena. Waymo and Keker are attempting to re-litigate the Court's August 18, 2017 Order granting Otto Trucking's Motion to Compel Further Information Re Waymo's Forensic Investigation and the Court's finding that Waymo waived privilege a work product protection regarding its investigation of former employees. This Court has already found Waymo waived subject matter privilege and work product protection as to the investigation of former employees, yet Waymo and Keker continue to selectively disclose materials. Waymo's and Keker's motions, which merely try to relitigate a question already resolved, should be denied.

Respectfully submitted,

 */s/ Neel Chatterjee*

Neel Chatterjee
GOODWIN PROCTER LLP

*Attorneys for Defendant*
Otto Trucking LLC

cc:  Counsel of Record (via ECF); Special Master Cooper
**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1



Neel Chatterjee
+1 650 752 3256
NChatterjee@goodwinlaw.com

Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025

goodwinlaw.com
+1 650 752 3100

Waymo and its counsel Keker, Van Nest & Peters LLP ("Keker") continue to stall Otto Trucking's ("OT") efforts to obtain evidence central to Waymo's investigation into Anthony Levandowski. The scope of Waymo's waiver was clearly stated by the Court:

> While the waiver of work product does not *necessarily* waive attorney-client privileged communications, here the waiver of work product over the investigation did waive the attorney-client privilege as to counsel communications with Mr. Brown ***and anyone else involved in the investigations*** at issue as in fairness such communications should be disclosed.

Dkt. 1272 (Italics in original; bold italics added). Waymo and Keker did not object to this Order but now improperly seek to relitigate the scope of the Court's subject matter waiver finding.

Waymo and Keker are merely stonewalling. Keker should have complied with those portions of the subpoena for which there was no dispute. Instead, they have produced nothing. Waymo has continued its selective disclosure by only providing heavily redacted documents in response to the Court's order that still uses privilege as a sword and a shield. Their attempt to shut down discovery for OT is part and parcel of Waymo's continued stall tactics that have plagued this case.

Both motions should be denied. As discovery has already closed and trial is imminent, OT requests that the Court foreclose any entry of the evidence related to this matter as set forth in its original motion to compel.

## I.    BACKGROUND FACTS

As discussed in OT's previous motion, Waymo's misappropriation claim hinges on the ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Declaration of Hayes Hyde ("Hyde Decl."), Ex. 2 at 36:9-16 (Q. Who told you that Mr. Levandowski had access to the server and downloaded 14,000 files? A. A lawyer. Q. Which lawyer? A. Tom Gorman. Q. And did you then seek to confirm that by your analysis? A. Yes."). There is no dispute that attorneys directed the investigation into Mr. Levandowski's laptop and that, prior to the Court's order, Waymo had selectively waived privilege. For this reason, the Court found that Waymo had waived privilege as to that investigation. Dkt. 1272.

This Court issued its order finding a subject matter waiver on Friday, August 18, 2017. On Sunday, August 20, 2017, OT served a subpoena on Keker attaching the Order and "subpoenas addressed to Keker and Tom Gorman relating to their involvement in the investigation into the activities of Anthony Levandowski and other former Waymo employees." Chatterjee Decl., ¶ 3, Ex. 1. Keker wrote back the following morning and agreed to accept service of the subpoena via e-mail. Chatterjee Decl., ¶ 4, Ex. 2.

OT's subpoena to Keker was tailored specifically to former employees and seeks testimony and documents pertaining to four topics:

[REDACTED]

These topics were squarely within the domain of the Court's waiver findings. Nevertheless, Waymo and Keker contest the subpoena. Keker has produced absolutely nothing in response to the subpoena. Waymo has filed a motion for protective order. Keker has filed a motion for protective order and to quash.

## II.     THE MOTION TO QUASH SHOULD BE DENIED

### A.     Keker Directed The Forensic Investigation Into Anthony Levandowski And Other Employees.

Waymo and Keker incorrectly suggest that Keker was peripheral to the investigation. *See* Dkt. 1349 at 1:18-19 ("OT has served a Rule 45 subpoena on third-party law firm KVP – Google Inc.'s counsel in another matter…."). To the contrary, Keker was central in the investigation into Mr. Levandowski.



Hyde Decl., Ex. 12 at 198:22-200:24. [REDACTED] Waymo has shielded the results and conclusions of that investigation from review under the cloak of attorney client privilege. Sometime during the August to October 2016 time period [REDACTED]

What followed was a results-oriented exercise where Mr. Brown sought information to corroborate Mr. [REDACTED]'s conclusion to the exclusion of other evidence. In October 2016, Mr. Brown viewed network traffic logs. Hyde Decl., Ex. 2 at 31:21-32:11. [REDACTED]. Hyde Decl., Ex. 3 at 48:25-49:19. He also testified that he did not review the behavior of other individuals on the Chauffeur team or even Anthony Levandowski's activities on other devices before concluding that the alleged downloading was anomalous. *See* Hyde Decl., Ex. 3 at 262:18-264:21. Mr. Brown made clear that he did not consider anything that was not relevant to what he was "trying to prove." Hyde Decl., Ex. 3 at 229:19-230:1.



Hyde Decl., Ex. 3 at 117:12-118:16.

Other deposition testimony and documents produced by Waymo further reveal the level of involvement of Keker and its individual attorneys in this matter.

1. Deposition Testimony of Google and Waymo Employees Supports That Keker Was Directing the Investigation.

Gary Brown testified at his deposition that Thomas Gorman of Keker instructed him to search for evidence "corroborat[ing]" Gorman's suspicion that Mr. Levandowski took files:

> Q: Who told you that Mr. Levandowski had access to the server and downloaded 14,000 files?
> A: A lawyer.
> Q: Which lawyer?
> A: Tom Gorman.
> Q: And did you then seek to confirm that by your analysis?
> A: Yes.
> Q: And did you confirm that in October of 2016?
> A: I corroborated the download with network traffic.
> Q: So you looked at the network traffic to corroborate that 14,000 files were downloaded onto what device?
> A: Anthony Levandowski's work laptop.

Hyde Decl., Ex. 2 at 36:9-23.

Mr. Brown further testified that Mr. ▇▇▇ told him that Mr. Levandowski downloaded 14,000 files:

> Q: Did somebody tell you that Mr. Levandowski had downloaded files from the ▇▇▇ server in 2016?
> MR. BAKER: You can answer that yes or no.
> A: Yes.
> Q: Who told you that?
> MR. BAKER: You can give a name.
> A: ▇▇▇▇▇.

Hyde Decl., Ex. 3 at 51:11-20.

Mr. Brown also testified that Keker attorneys were given access to the Machine Forensic Record, which also reflected his and Mr. Gudjonsson's questions to Keker counsel:

> Q: I want to ask you one question about the document marked Exhibit 1312, which was the machine forensic record. Turning to page 29454, under "legal questions and answers," there is one question I forgot to ask you.
> (Witness perusing document.)

3

> Q. You said that the questions reflected here were questions from attorneys, correct?
> A. Yes.
> Q. And the answers reflected here are your answers to those questions, correct?
> A. Mine and Kristinn's, yes.
> Q. Did you and Kristinn communicate your answers to those questions to the attorneys?
> A. Yes.
> Q. How did you do that?
> A. Via e-mail.
> Q. Did you send this document via e-mail to the attorneys?
> A. I believe they had permissions to access the document.
> Q. So when you say they had permissions to access the document, do you mean they were able to access the document
> on Google Drive?
> A. Yes.

Hyde Decl., Ex. 3 at 117:12-118:16.

*See also* Hyde Decl., Ex. 13 at 167:10 – 168:16 (Hardware engineer Sasha Zbrozek deposition testifying about guidance from Keker lawyers) and Ex. 4 (Zbrozek correspondence with Keker attorneys regarding IP tracing and log reviews).

### 2. Documents Produced By Waymo Show The Level Of Involvement the Keker Attorneys Had In The Investigation.

Mr. Gorman's Ms. Meny's and Keker's deep involvement in the investigation is demonstrated by documents produced by Waymo for the first time last Friday. While the documents remain heavily redacted (improperly), they demonstrate that Thomas Gorman and Rachael Meny of Keker were defining and steering the investigation.

Correspondence and documents between the Keker lawyers and Google, as well as internal documents from the investigation, show that the investigation into Mr. Levandowski and other former employees was directed by Keker. As this investigation is central to Waymo's case, and Waymo has put it in issue, OT is entitled to further discovery on the investigation and Keker's involvement. Samples of these documents include:

- ███████████████████████████████████████████████████████ Hyde Decl., Ex. 4;

- ███████████████████████████████████████████████████████ Hyde Decl., Ex. 5;

- ███████████████████████████████████████████████████████ Hyde Decl., Ex. 6;

- ███████████████████████████████████████████████████████ Hyde Decl., Ex. 7;

-  Hyde Decl., Ex. 8;
- ███████████████████████████████ Hyde Decl., Ex. 9;
- ███████████████████ Hyde Decl., Ex. 10; and
- ███████████████ Hyde Decl., Ex. 11.

### A.   Otto Trucking's Discovery Requests To Waymo Do Not Preclude It From Seeking The Same Or Similar Documents From Keker.

Keker should produce all waived work product or communications in its possession, custody, or control.

There is no dispute that the Court's order requires the production of all communications between Waymo and its counsel relating to the forensics investigation. *See* Dkt. No. 1272 at 1 ("Counsel's communications to Mr. Brown regarding Mr. Brown's investigation fall within the subject matter of the disclosed investigation. In fairness these communications should be considered with the information Waymo has disclosed."). Keker nevertheless moves to quash Otto Trucking's subpoena on grounds that any of the subpoenaed materials will already be produced by Waymo. But Otto Trucking need not rely solely on Waymo to ensure that it has received all waived communications. Nor should it, given the circumstances of this case—Waymo has already indicated an unwillingness to verify in writing that it cannot or will not produce other relevant information, *see* Dkt. No. 1317 (Otto Trucking's motion seeking a sworn statement as to Waymo's representations made in discovery), and Waymo's most recent production already contains many inappropriate privilege redactions, despite the Court's finding of waiver. *See* Hyde Decl., Exs. 4-7.

Contrary to Keker's argument, Otto Trucking is entitled to subpoena Keker to confirm that all communications within the scope of the Court's order have been produced. *See Saller v. QVC, Inc.*, No. CV 15-2279, 2016 WL 8716270, at *6 (E.D. Pa. June 24, 2016) ("Defendant is entitled to serve third-party subpoenas 'to test the veracity of [the opposing party's] assertion that they have produced all documents they were required to produce.'") (citation omitted); *Med. Tech., Inc. v. Breg, Inc.*, No. 10-MC-00100, 2010 WL 3734719, at *4 (E.D. Pa. Sept. 21, 2010) ("This Court agrees that although [plaintiff] Bledsoe may have produced some documents, [defendant] Breg needs [non-party] MedEast's responsive documents not only to supplement Bledsoe's production but also to test the veracity of Bledsoe's assertions that they have produced all the documents they are required to produce."). Only then can Otto Trucking be assured that it has all materials related to the investigation that "ought in fairness to be considered together." Fed. R. Evid. 502(a).

### B.   The Topic Areas are Appropriately Tailored.

Each of the four topic areas in the subpoena at issue is squarely within the four corners of the Court's Order.

The first topic seeks documents and testimony pertaining to "any investigation of former Waymo employees, including, but not limited to Anthony Levandowski, Radu Raduta, and Sameer Kshrisagar." It cannot be disputed that OT is entitled to discovery regarding the investigations of Messrs. Levandowski, Raduta and Kshrisagar, so neither Waymo nor Keker have any reason to object to that portion of the topic area. Waymo and Keker apparently object that the inquiry into other employees goes beyond the scope of the waiver. However, as also discussed *supra*, recently discovered evidence reveals that the scope of the investigation and Keker's involvement therein went well beyond the three former employees and involved numerous other employees who left Waymo in 2016. OT is entitled to explore these investigations and whether they pertain to Keker's and Waymo's biased conclusions as to Mr. Levandowski.

The second and third topics seek communications between Keker and Alphabet pertaining to the investigation of the three former Waymo employees. It is difficult to understand why Waymo and Keker object to this topic, as it falls squarely within the scope of the waiver and what the Court compelled produced.

The fourth topic also falls within the scope of the waiver, as discussed *supra*. If Keker has information or documents pertaining its conclusions regarding the alleged downloading activity, OT is entitled to that discovery. Keker attorneys were part of the investigative "Team," not mere outside counsel, and they have put their involvement in the investigation in issue, thus waiving privilege. *See, e.g., United States v. Nobles*, 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577–78 (9th Cir. 1992); *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006).

### C.  The Subpoena to Keker is Appropriate.

Keker argues that the Court's Order compelled Waymo, not Keker, to produce documents relevant to the forensic investigation conducted by Gary Brown. The Court's order does not absolve Keker of its obligation to comply with the subpoena. The Court found that Waymo had waived the "attorney-client privilege as to counsel communications with Mr. Brown and anyone else involved in the investigations at issue as in fairness such communications should be disclosure." Dkt. 1272. The Court did not *compel* Keker to produce documents or witnesses, because no subpoena was at issue for the motion to compel. However, Waymo's belated waiver of privilege makes Keker's communications with Waymo are discoverable and the appropriate subject of a subpoena.

### D.  Keker's Attempt to Relitigate and Narrow the Court's Order Should be Rejected.

Keker seeks to rewrite the Court's order and argues that "[a]ny discovery from KVP should be limited to KVP's communications with Mr. Brown and the in-house employees working with him on the forensic investigation of Levandowski, Raduta and Kshirsagar." Dkt. 1349 at 11. The Court's Order found privilege waived as to "counsel communications with Mr. Brown and *anyone else involved in the investigation*." Dkt. 1272 (emphasis added). There is simply no reason why OT should be precluded from communications made by Keker to other employees pertaining directly to a matter that Waymo put squarely in issue in this case.

Keker also incorrectly contends that OT seeks opinion work product that was not communicated to individuals involved in the investigation and therefore should not be produced here. Waymo has already

6

conceded that it waived work product. Dkt. 1272 p. 2_4-5. As the Court has already found, fairness requires that it give a fulsome disclosure.

As Keker attorneys were considered by Waymo to be on the investigative "Team," OT is entitled to communications among Keker attorneys that pertain to the investigation. It was Keker's insertion into the underlying facts of this matter that waived the privilege, and if Keker possesses relevant evidence suggesting that its investigation was unfair, OT is entitled to that material. Moreover, as Keker notes, there is a difference between "fact" work product and "opinion" work product, and Keker's communications related to the underlying investigation should be considered "fact" work product. *See, e.g., United States v. Nobles*, 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (holding that the defendant, "by electing to present the investigator as a witness, waived the [work-product] privilege with respect to matters covered in his testimony."). Moreover, the Ninth Circuit has held that where, as here, "mental impressions are at issue in a case and the need for the material is compelling and material [is] unavailable elsewhere" opinion work product may be discovered. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577–78 (9th Cir. 1992); *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) ("We recognize that the line between 'factual' work product and 'opinion' work product is not always distinct, especially when, as here, an attorney's opinion may itself be 'factual' work product. When faced with the distinction between where that line lies, however, a district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product.") It cannot be disputed that Keker was directing the investigation with the specific intent of finding that Mr. Levandowski committed wrongdoing, and its impressions and opinions of the results and methodology of the investigation are relevant to its evidentiary value against defendants.

### E. Keker Should Comply With The Portions Of The Subpoena That It Does Not Contend Are Privileged.

Rather than attempt to comply with the subpoena, reserving objections for items that they deemed privileged, both Waymo and Keker are attempting to quash the subpoena entirely. There can be no dispute that this Court has held that a waiver of privilege has occurred, and its scope is clearly stated in the Order: "the waiver of work product over the investigation did waive the attorney-client privilege as to counsel communications with Mr. Brown and anyone else involved in the investigations at issue as in fairness such communications should be disclosed." Dkt. 1272. Waymo and its counsel are engaging in gamesmanship by not making any effort to comply, and instead forcing the parties to resolve what should not have been a dispute. Waymo and Keker have no basis to quash OT's subpoena. *See e.g.,*, *Sotelo v. Old Republic Life Ins.*, No. C-05-02238 RS, 2006 WL 2632563, at *3 (N.D. Cal. Sept. 13, 2006) ("The remedy, however, is not to quash the subpoena, particularly where no showing has been made that privileged materials exist. Rather, Swiss Re must produce all non-privileged responsive documents and a privilege log with respect to any documents it withholds under a claim of privilege. See Fed. R. Civ. Proc. 45(d)(2).")

### F. The Motion For Protective Order Should Be Denied

Keker next generally contends that it is entitled to a protective order. The only discussion of a protective order in the body of the moving papers suggest that the Court "should issue a protective order that narrowly tailors the subpoena to the precise scope of this Court's August 18, 2017 Order, excludes all protectable information, and limits the time period for any deposition." Dkt. 1349 at 1:22-24. Keker does not state specifically what the protective order should limit or how long a deposition should be.

7

To obtain a protective order, the party seeking it must show "good cause" for its issuance. Fed. R. Civ. Proc. 26(c)(1); *see, e.g., Jepson, Inc. v. Makita Elec. Works, Ltd.* 30 F. 3d 854, 858 (7th Cir. 1994) 30 F3d 854, 858 (court must find good cause even if parties stipulate to protective order). The moving party must make a clear showing of a particular and specific need for the order. *Blankenship v. Hearst Corp.*, 519 F. 2d 418, 429 (9th Cir. 1975); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F. 3d 1122, 1130 (9th Cir. 2003) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test" (internal quotes omitted).)

Keker has not made even the barest showing of good cause, nor any particularized showing of what it seeks in its motion.

### III.    OTTO TRUCKING IS ENTITLED TO INFORMATION RELATED TO ALL FORMER EMPLOYEES COVERED BY THE INVESTIGATION

Waymo has now admitted several times that it waived work-product protection with respect to Waymo's forensic investigation of Messers. Levandowski, Raduta and Krshigar. See, e.g., Dkt. No. 1227 at 1. While Waymo attempts to limit the scope of its waiver for the investigation to just those three individuals, it fails to acknowledge that the referenced forensic investigation was in fact quite broad and focused on other individuals as well. Mr. Brown admitted as much during his deposition:

> Q. Was Waymo's investigation into Mr. Levandowski part of any broader investigation of other Chauffeur employees that included Mr. Radu Raduta and Mr. Sameer Kshirsagar? . . .
>
> A. Yes.

Hyde Decl., Ex. 3 at 47:2-9. The Court's order found subject matter waiver as to "Former Employees" but not as to "other employees." Waymo merely seeks discovery related to employees who have left Waymo that were part of this investigation.



*See* Hyde Decl., Ex. 14 at WAYMO-UBER-00083653 (

. Hyde Decl., Ex. 5.

---

[1] This document was produced after the Court's ruling on subject matter waiver.



*Id.*

███████████████████████████████. Because Keker directed these investigations and they were part of a concerted investigation of former employees, Waymo's redactions are inappropriate. Counsel's communications as to investigations of all of the former employees fall within the subject matter of the disclosed investigation, since it pertained to numerous employees, and not just Mr. Levandowski.

Given this—and, thus, the broader scope of Waymo's investigation waiver—Otto Trucking's subpoena properly seeks documents and communications relating to any former Waymo employees covered by the forensic investigation. The subpoena therefore should not be quashed on this ground.

### IV. WAYMO CONTINUES TO IMPROPERLY REDACT DOCUMENTS DESPITE THE COURT'S ORDER COMPELLING DISCOVERY

After the Court issued its August 18th Order granting OT's motion to compel, Waymo produced additional documents. However, Waymo continues to redact documents related to the investigation, which violates the Court's Order. The Order specifically required Waymo to produce "communications regarding the investigation of the Former Employees." OT believes that Waymo's continued redaction of documents pertaining to the investigation is improper and consistent with the stall tactics it has employed throughout this case. In addition, it provides an even stronger basis for OT to seek the documents elsewhere, as OT does not know what Waymo is trying to hide. These documents will likely be the subject of a motion to compel, but a few examples are included with these opposition papers. *See* Hyde Decl., Exs. 4-11, 14. Given the shortness of time, OT requests that the Court address these issues at the hearing tomorrow.

### V. CONCLUSION

OT has already litigated the issues of waiver and its entitlement to discovery as to communications between counsel and Waymo regarding the investigation at issue. It should not be required to do so again. OT issued a subpoena in accord with this Court's August 18th Order and the results of discovery to date. Keker was an active participant in the investigation into Mr. Levandowski and numerous other employees at Waymo, and OT is entitled to discovery on issues that go to the heart of Waymo's case against defendants. Waymo is using privilege as a sword and a shield, in contravention of this Court's August 18th Order, and it continues to use stall tactics to thwart proper discovery. Neither Waymo nor Keker have any legal basis to quash the subpoena or obtain a protective order, and both motions should be denied.



Neel Chatterjee
+1 650 752 3256
NChatterjee@goodwinlaw.com

Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025

goodwinlaw.com
+1 650 752 3100

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on August 27, 2017. I further certify that all participants in the case are registered CM/ECF users and that service of the redacted version of this Response, including public and redacted attachments will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed this 27th day of August 2017.

                                                             /s/ Neel Chatterjee
                                                              Neel Chatterjee