# *EXHIBIT 2*

*EXHIBIT 2*

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
2                SAN FRANCISCO DIVISION
3
4    _____
                                    )
5    WAYMO LLC,                     )
                                    )
6                  Plaintiff,       )
                                    )
7            vs.                    )   Case No.
                                    )   3:17-cv-00939-WHA
8    UBER TECHNOLOGIES, INC.,       )
     OTTOMOTTO LLC; OTTO            )
9    TRUCKING LLC,                  )
                                    )
10                 Defendants.      )
     _____)
11
12
13
14
15      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
16         VIDEOTAPED DEPOSITION OF GARY T. BROWN
17               San Francisco, California
18               Friday, March 24, 2017
19                      Volume I
20
21
22
     Reported by:  SUZANNE F. GUDELJ
23   CSR No. 5111
24   Job No. 2577644
25   PAGES 1 - 65
```

Page 1

```
 1      Q    Okay.  At the time that you're talking to
 2   these people, the HRBP and the GI rep, you said to
 3   them there may have been moonlighting.
 4      A    Mm-hmm.
 5      Q    Did you explain to them what made you think    12:07:40
 6   that there might be moonlighting?
 7      A    Yes.
 8      Q    Okay.  And what did you say to them?
 9           MR. HOLMES:  Okay.  We need to take a
10   break.  I think he's confused about privilege         12:07:52
11   issues, so we should -- we should take a break and
12   talk about this with respect to privilege.  And he's
13   asked twice.  I'm not trying to --
14           MR. GONZALEZ:  All right.  All right.
15   Let's -- okay.  Let's go off the record.              12:08:01
16           MR. HOLMES:  Okay.  Thank you.
17           VIDEO OPERATOR:  We are off the record at
18   12:07 p.m.
19           (Recess.)
20           VIDEO OPERATOR:  We are back on the record    12:13:42
21   at 12:13 p.m.
22   BY MR. GONZALEZ:
23      Q    What did you say to these two women,
24   including Chelsea, about why you thought there may
25   be moonlighting?                                      12:13:53
```

Page 28

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1            MR. HOLMES:  I'm going to instruct the
 2   witness not to answer on work product and
 3   attorney-client privilege grounds.
 4   BY MR. GONZALEZ:
 5       Q    Did you have any conversation -- or strike    12:14:00
 6   that.
 7            Did either Chelsea or the other woman from
 8   HR say to you anything about legal counsel?
 9       A    I don't recall, but the implication is that
10   yes.                                                   12:14:22
11       Q    What do you mean by that?
12            MR. HOLMES:  I'm going to instruct you not
13   to answer.
14   BY MR. GONZALEZ:
15       Q    At the time you were doing the work in        12:14:32
16   March of 2016, had you heard of a company called
17   Otto?
18       A    I may have.
19       Q    Was that the name of the second job that
20   you referenced?                                        12:14:54
21            MR. HOLMES:  I'm going to instruct you not
22   to answer.
23            MR. GONZALEZ:  On the grounds of privilege?
24            MR. HOLMES:  Attorney work product.
25            MR. GONZALEZ:  Just for my record, which      12:15:12
```

Page 29

```
 1   attorney?
 2          MR. HOLMES:  Pardon me?
 3          MR. GONZALEZ:  Yeah, which -- which
 4   attorney are you referring to?
 5          MR. HOLMES:  Google and/or Waymo counsel       12:15:25
 6   generally.
 7   BY MR. GONZALEZ:
 8      Q   Your declaration --  your declaration makes
 9   reference to 14,000 files; do you recall that?
10      A   Yes.                                          12:15:40
11      Q   When did you -- are you the person who
12   discovered that there were 14,000 files allegedly
13   downloaded?
14      A   No.
15      Q   Who discovered that?                          12:15:50
16          MR. HOLMES:  Caution you not to disclose
17   any attorney-client communications or work product.
18          MR. GONZALEZ:  Well, I'm telling you it's
19   a -- it's a waiver once it makes its way into a
20   declaration filed in federal court.  So let me do it 12:16:09
21   this way.
22   BY MR. GONZALEZ:
23      Q   You say in your declaration, paragraph 17,
24   that based on your review of logs, Mr. Levandowski
25   alledgedly downloaded over 14,000 files.  Do you see 12:16:30
```

```
 1    that?
 2         A    Yes.
 3         Q    How did that first come to your attention?
 4              MR. HOLMES:  And I want to caution you not
 5    to disclose any attorney-client communications.         12:16:41
 6              THE WITNESS:  A log file was provided to
 7    me.
 8    BY MR. GONZALEZ:
 9         Q    By whom?
10              MR. HOLMES:  Same caution.                    12:16:58
11              THE WITNESS:  A former administrator of the
12    SVN server had pulled the log, provided it to a
13    lawyer.  The lawyer provided it to me.
14    BY MR. GONZALEZ:
15         Q    All right.  And when did you get this log?    12:17:11
16         A    Sometime in February 2017.
17         Q    Do you remember any more specifically what
18    the date was when you, yourself, saw the alleged
19    downloading of 14,000 files?
20         A    That varies.                                  12:17:41
21         Q    When's the first time that you saw some of
22    the downloading that ended up being 14,000 files?
23         A    I saw the network traffic in October of
24    2016.
25         Q    What is network traffic?                      12:17:59
```

1   A   When activity occurs on devices that are on
2   Google's corporate network, our sensors pick up
3   information about that traffic, and those go into
4   our logs.
5   Q   So what information was picked up about the          12:18:18
6   downloading of the 14,000 files?
7   A   From the network traffic.  Approximately 10
8   gigabytes of data was transferred from the IP
9   address and domain where the subversion server
10  relies -- resides to the work laptop of Anthony          12:18:46
11  Levandowski.
12  Q   Did you consider that to be suspicious?
13          MR. HOLMES:  Objection to form.
14          THE WITNESS:  Potentially.
15  BY MR. GONZALEZ:                                         12:19:04
16  Q   That fact by itself didn't make you to
17  think -- didn't make you think that he had done
18  anything improper, did it?
19          MR. HOLMES:  Objection to form.
20          THE WITNESS:  That fact by itself has other      12:19:15
21  factors around it that do make it suspicious.
22  BY MR. GONZALEZ:
23  Q   Such as?
24  A   Such as the searching for instructions on
25  how to access that server; such as the appearance of    12:19:27

Page 32

```
 1              MR. HOLMES:  -- the question he has.
 2              MR. GONZALEZ:  Let's go off the record.
 3              VIDEO OPERATOR:  We are off the record at
 4    12:24 p.m.
 5              (Recess.)                                    12:27:59
 6              VIDEO OPERATOR:  We are back on the record
 7    at 12:27 p.m.
 8    BY MR. GONZALEZ:
 9         Q    Who told you that Mr. Levandowski had
10    access to the server and downloaded 14,000 files?     12:28:07
11         A    A lawyer.
12         Q    Which lawyer?
13         A    Tom Gorman.
14         Q    And did you then seek to confirm that by
15    your analysis?                                         12:28:22
16         A    Yes.
17         Q    And did you confirm that in October of
18    2016?
19         A    I corroborated the download with network
20    traffic.                                               12:28:43
21         Q    So you looked at the network traffic to
22    corroborate that 14,000 files were downloaded onto
23    what device?
24         A    Anthony Levandowski's work laptop.
25         Q    The work laptop that was issued to him by   12:29:00
```

```
 1    computers of other former Google employees who now
 2    work at Uber?
 3           MR. HOLMES:  And I'm going to instruct you
 4    not to answer to the extent that he's asking for
 5    individuals other than the three that are identified         12:30:45
 6    in your declaration.
 7    BY MR. GONZALEZ:
 8       Q   Let me just first ask a yes or no question.
 9           You did work on the three people that we've
10    seen.  Did you analyze other former Google                   12:30:54
11    employees, who now work at Uber, to try to figure
12    out whether they may have taken stuff that they
13    weren't supposed to take?
14           MR. HOLMES:  Same instruction not to answer
15    to the extent that he's asking about employees that          12:31:07
16    are not identified in your declaration.  It's work
17    product.
18    BY MR. GONZALEZ:
19       Q   Do you know whether or not anybody else at
20    Google has done an analysis to see whether or not            12:31:18
21    anybody else at Uber may have taken Google
22    documents?
23           MR. HOLMES:  Same instruction.
24    BY MR. GONZALEZ:
25       Q   Sitting here today, do you know of any                12:31:31
```

Page 38

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   other Uber employee who may have taken information
 2   from Google?
 3          MR. HOLMES:  Same instruction.  To the
 4   extent that he's asking about anybody other than the
 5   three individuals identified in your declaration,      12:31:47
 6   which is why we're here, I'm instructing you not to
 7   answer.
 8          MR. GONZALEZ:  Okay.  We're here for more
 9   than just that.
10   BY MR. GONZALEZ:                                       12:32:17
11      Q   With respect to Mr. Raduta and the three
12   documents that you identify in paragraph 29, those
13   three documents were exported to his company
14   computer, right?
15      A   I'm uncertain.                                  12:32:42
16      Q   You don't have any reason to dispute that,
17   do you?
18          MR. HOLMES:  Objection to form.
19          THE WITNESS:  Not currently.
20   BY MR. GONZALEZ:                                       12:33:00
21      Q   Is there some ongoing work that you're
22   doing to try to figure that part out?
23          MR. HOLMES:  Objection.  You don't have to
24   answer that.  That's attorney work product.
25   BY MR. GONZALEZ:                                       12:33:10
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1        I, the undersigned, a Certified Shorthand
2   Reporter of the State of California, do hereby
3   certify:
4        That the foregoing proceedings were taken
5   before me at the time and place herein set forth;
6   that any witnesses in the foregoing proceedings,
7   prior to testifying, were duly sworn; that a record
8   of the proceedings was made by me using machine
9   shorthand which was thereafter transcribed under my
10  direction; that the foregoing transcript is a true
11  record of the testimony given.
12       Further, that if the foregoing pertains to
13  the original transcript of a deposition in a Federal
14  Case, before completion of the proceedings, review
15  of the transcript [ ] was [X] was not requested.
16       I further, certify I am neither financially
17  interested in the action nor a relative or employee
18  of any attorney or party to this action.
19       IN WITNESS WHEREOF, I have this date
20  subscribed my name.
21  Dated: 3/27/17

                                    *Suzanne F. Gudelj* (signature)

                                    SUZANNE F. GUDELJ
24                                  CSR No. 5111
25

Page 65