# EXHIBIT 12

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

# EXHIBIT 12

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                SAN FRANCISCO DIVISION
 4
 5   WAYMO LLC,                          )
 6             Plaintiff,                )
 7        vs.                            ) Case No.
 8   UBER TECHNOLOGIES, INC.;            ) 3:17-cv-000939-WHA
 9   OTTOMOTTO LLC; OTTO TRUCKING,       )
10   INC.,                               )
11             Defendants.               )
12   _____)
13      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15    VIDEOTAPED DEPOSITION OF KRISTINN GUDJONSSON
16                Palo Alto, California
17                Friday, July 28, 2017
18                    Volume I
19
20   Reported by:
21   CARLA SOARES
22   CSR No. 5908
23   JOB No. 2665814
24
25   PAGES 1 - 242
```

Page 1

| | | | |
|---|---|---|---|
| 1 | A | Oh, when I would get back to them? | 11:27:59 |
| 2 | Q | Yes. | |
| 3 | A | No, that would be just as soon as | |
| 4 | possible. | | |
| 5 | Q | Okay.  So what does the three months refer | 11:28:04 |
| 6 | to? | | |
| 7 | A | I'm sorry.  I thought you were talking | |
| 8 | about how far back I should be looking at his | | |
| 9 | activity on the machine. | | |
| 10 | Q | Okay.  So let me go back then. | 11:28:12 |
| 11 | | So to the best of your recollection, what | |
| 12 | you had agreed on is that you would look at the | | |
| 13 | machine and go back about three months? | | |
| 14 | A | Two, three months, probably.  Yeah. | |
| 15 | Q | ████████████████████████████ ████ | |
| | ██████ | | |
| | ▐ ████████████████████████ | | |
| | ▐ ███ | | |
| 19 | Q | And then did you discuss how soon you | |
| 20 | would revert to Ms. Bailey with more information? | 11:28:36 |
| 21 | A | As quickly as possible. | |
| 22 | Q | When did the meeting take place? | |
| 23 | A | I'm sorry.  Did you say "when" or "where"? | |
| 24 | Q | When. | |
| 25 | A | I'm not completely sure.  A guess would be | 11:28:52 |

| | | |
|---|---|---|
| 1 | end of January, beginning of February.  Not sure. | 11:28:59 |
| 2 | Q   Was that meeting in person? | |
| 3 | A   Me and Gary were in person, and then they | |
| 4 | were over VC, over videoconference. | |
| 5 | Q   Where is Ms. Bailey located? | 11:29:18 |
| 6 | A   I think she is in the Google X building. | |
| 7 | Q   I'm sorry.  You said that some lawyer was | |
| 8 | involved.  Do you recall which lawyer? | |
| 9 | A   No, I don't.  Sorry.  I'm terrible with | |
| 10 | names. | 11:29:36 |
| 11 | Q   But is it fair to say it was an in-house | |
| 12 | Google lawyer? | |
| 13 | A   Yes. | |
| 14 | Q   Okay.  And I believe you said earlier that | |
| 15 | they had provided some clarification.  Is that | 11:30:06 |
| 16 | Ms. Bailey or the attorney or both? | |
| 17 | A   Probably both, but I don't recall. | |
| 18 | Q   What did you do after the meeting in terms | |
| 19 | of the investigation? | |
| 20 | A   I started a tracking doc. | 11:30:34 |
| 21 | Q   Did you say "a tracking doc"? | |
| 22 | A   I create a -- what we call ▮▮▮▮▮▮▮▮ | |
| 23 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |
| 24 | and a subsequent tracking doc. | |
| 25 | Q   Okay.  And what information did you put in | 11:30:53 |

```
 1   the -- into the event management system?              11:30:55
 2           I'm sorry.  Do you need some more water?
 3       A   No, I think I'm good for now.
 4   [REDACTED]
 5   [REDACTED]
 6   [REDACTED]
 7   [REDACTED]
 8       Q   And what information did you put into the
 9   tracking document?
10       A   [REDACTED]
11   [REDACTED]
12       Q   Do you recall any of the background
13   information you put into the tracking document?
14       A   Yes.
15       Q   What was that?                                 11:31:30
16           THE WITNESS:  Am I allowed to say that?
17           MR. BAKER:  Can you repeat the question
18   again?
19   BY MR. TAKASHIMA:
20       Q   Do you recall what information you put          11:31:37
21   into the tracking document?
22       A   That information is partially what was
23   given to me by lawyers and legal advice, so I'm
24   fairly certain that would be under privilege.
25           MR. BAKER:  Yeah, we can step outside and       11:31:48
```

Page 59

```
1        A    Yes.                                          16:29:09

2        Q    Can you explain basically what it does,

3   what it is?

4        A    It's a search engine.

5        Q    It's a search engine?                         16:29:13

6        A    Yes.

7        Q    And who uses it?

8        A    It is an internal search engine used by

9   Googlers.

10       Q    By Google employees?                          16:29:19

11       A    Yes.

12       Q    You searched for specific terms when you

13  were analyzing Anthony Levandowski's logs.  Where

14  did these -- for example, in the Gary Brown

15  declaration, there was a search for the "Chauffeur     16:29:36

16  SVN login" and for the "EEE setup.

17       A    Do you remember which paragraph it is?

18       Q    It is paragraph 15.

19       A    Yes, 15.

20       Q    Where did these terms come from?              16:29:55

21       A    Again, this would be either derived from

22  legal counsel or from ███████████████████ based

23  on what we have seen from legal counsel.

24       Q    So can you explain a little bit about this

25  ███████████ p?                                          16:30:14
```



| | | |
|---|---|---|
| 1 | A    As in -- okay.  So backing up, we get | 16:30:16 |
| 2 | into, like, | |

16:31:19

Page 226

1      A   █████████████████████████████████   ██████

       ████████████████████████

3      Q   Okay.  What did the searches of the term

4  "Chauffeur SVN login" tell you about Anthony

5  Levandowski's objectives with respect to his                16:31:35

6  activities?

7      A   First of all, this is something that Gary

8  did, and you would have to ask Gary.

9      Q   Okay.

10     A   And I do not -- cannot speculate about               16:31:42

11  intention of somebody else.

12     Q   When you were running these searches of

13  these terms -- sorry.  Let me start over.

14         When searches of these terms were being

15  run, what sources were looked at?                           16:31:55

16     A   What sources?

17     Q   Of information.  So you ran searches of

18  these terms, right?

19     A   Yes.

20     Q   What results were you getting back?                  16:32:07

21         MR. BAKER:  Just to be clear --

22         THE WITNESS:  Can you clarify a little bit

23  more?

24         MR. BAKER:  Can I ask you a question?

25  Because when we were talking about ██████████               16:32:17

Page 227

1       I, the undersigned, a Certified Shorthand
2  Reporter of the State of California, do hereby
3  certify:
4       That the foregoing proceedings were taken
5  before me at the time and place herein set forth;
6  that any witnesses in the foregoing proceedings,
7  prior to testifying, were administered an oath; that
8  a record of the proceedings was made by me using
9  machine shorthand which was thereafter transcribed
10 under my direction; that the foregoing transcript is
11 a true record of the testimony given.
12      Further, that if the foregoing pertains to
13 the original transcript of a deposition in a Federal
14 Case, before completion of the proceedings, review
15 of the transcript [ ] was [X] was not requested.
16      I further certify I am neither financially
17 interested in the action nor a relative or employee
18 of any attorney or any party to this action.
19      IN WITNESS WHEREOF, I have this date
20 subscribed my name.
21      Dated: 7/29/2017
22
23      *Carla Soares*
24      CARLA SOARES
25      CSR No. 5908

Page 242