# EXHIBIT 6

## UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# EXHIBIT 6

## Vu, Hong-An

**From:** Vu, Hong-An
**Sent:** Thursday, August 10, 2017 12:28 PM
**To:** Brun, Shane; 'Jeff Nardinelli (jeffnardinelli@quinnemanuel.com)'; 'John Cooper (JCooper@fbm.com)'
**Cc:** 'Matthew Cate (MCate@fbm.com)'; 'QE-Waymo (qewaymo@quinnemanuel.com)'; ''BSF_EXTERNAL_UberWaymoLit@bsfllp.com' (BSF_EXTERNAL_UberWaymoLit@bsfllp.com)'; 'UberWaymoMoFoAttorneys (UberWaymoMoFoAttorneys@mofo.com)'; DG-GP Otto Trucking Waymo
**Subject:** RE: Waymo v. Uber- Meet and Confer re Waymo responses to OT Requests for Production

Jeff and John:

As discussed on the call on Tuesday, we were checking to see whether all ▮▮▮▮▮▮▮▮▮▮▮ would be sufficient for our purposes for certain RFPs.  In the past, we have also discussed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. I informed you that instead, of responding just regarding ▮▮▮▮▮▮▮▮▮▮, we were going to make a proposal that would cover the issues we were discussing regarding RFPs 13-14, 16, 20, 26, 31 and 32 and also prior discussions with you and Jim Baker, including issues for which we have not yet received a response.

We propose the following narrowed scope:

- Waymo will produce all of Anthony's Levandowsi's log data for any devices he used; and
- Waymo will produce the below log information for the following individuals:



| Individuals | Type of log information |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮ | ▮▮▮▮▮▮▮▮▮▮▮ |



The date range for these logs should be March 2014 to the present or the date of departure of any of these employees.

Please let us know by 4pm today whether Waymo will agree to provide this narrowed scope of logs. If not, we would like to meet and confer about this issue today.

We look forward to Jeff's response on the other issues raised by Shane's email below.

Thanks,
Hong-An

**Hong-An Vu**



Goodwin Procter LLP
601 South Figueroa Street
Los Angeles, CA 90017
o  +1 213 426 2557
f  +1 213 289 7728
HVu@goodwinlaw.com | goodwinlaw.com

---

**From:** Vu, Hong-An
**Sent:** Tuesday, August 08, 2017 10:53 PM
**To:** Brun, Shane; Jeff Nardinelli (jeffnardinelli@quinnemanuel.com); John Cooper (JCooper@fbm.com)
**Cc:** Matthew Cate (MCate@fbm.com); QE-Waymo (qewaymo@quinnemanuel.com);
'BSF_EXTERNAL_UberWaymoLit@bsfllp.com' (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); UberWaymoMoFoAttorneys
(UberWaymoMoFoAttorneys@mofo.com); DG-GP Otto Trucking Waymo
**Subject:** RE: Waymo v. Uber- Meet and Confer re Waymo responses to OT Requests for Production

Jeff and John:

I was hoping to get back to Jeff about whether Bit9 logs would be sufficient to satisfy Otto Trucking's issues with Waymo's productions for RFPs 13-14, 16, 20, and 26.  Instead, I am working on a proposal that may resolve the issues with RFPs 13-14, 16, 20, and 26, but also perhaps 31 and 32 and some of the issues that I have been meeting and conferring with Jim Baker separately.  I will respond tomorrow with our proposal.

Thanks,
Hong-An

**Hong-An Vu**



Goodwin Procter LLP
601 South Figueroa Street
Los Angeles, CA 90017
o  +1 213 426 2557
f   +1 213 289 7728
HVu@goodwinlaw.com | goodwinlaw.com

---

**From:** Brun, Shane
**Sent:** Tuesday, August 08, 2017 9:48 AM
**To:** Jeff Nardinelli (jeffnardinelli@quinnemanuel.com); John Cooper (JCooper@fbm.com)
**Cc:** Matthew Cate (MCate@fbm.com); QE-Waymo (qewaymo@quinnemanuel.com); 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com' (BSF_EXTERNAL_UberWaymoLit@bsfllp.com); UberWaymoMoFoAttorneys (UberWaymoMoFoAttorneys@mofo.com); DG-GP Otto Trucking Waymo; Vu, Hong-An; Brun, Shane
**Subject:** FW: Waymo v. Uber- Meet and Confer re Waymo responses to OT Requests for Production

John and Jeff,

Inset below in red text are Otto Trucking's further responses to Jeff's email below.  We would like to include these issues on the 4 o'clock meet and confer call this afternoon.

Thanks,
Shane

---

**From:** Jeff Nardinelli [mailto:jeffnardinelli@quinnemanuel.com]
**Sent:** Sunday, July 30, 2017 10:40 PM
**To:** Brun, Shane; Hyde, Hayes; dg- (jcooper@fbm.com); Matthew Cate (MCate@fbm.com); QE-Waymo
**Cc:** BSF_EXTERNAL_UberWaymoLit@bsfllp.com; UberWaymoMoFoAttorneys@mofo.com; DG-GP Otto Trucking Waymo
**Subject:** RE: Waymo v. Uber- Meet and Confer re Waymo responses to OT Requests for Production

Shane,

This is frustrating but you and I had several productive conversations back in June and so I hope we're now just talking past each other and can come to a reasonable understanding, as we did before.  You state below that Waymo "avoided a motion to compel by agreeing to produce documents in response to various requests" and that your colleague's email merely "point[ed] out various deficiencies in those productions that need to be addressed or we are going to need to move to compel," but this misstates the issue in two ways.  One, Waymo did not agree to produce additional documents in response to every RFP listed in Ms. Hyde's email – every one of which you and I discussed telephonically.  Instead, with respect to several, Otto Trucking agreed not to move even though Waymo explained that it would not produce further documents, based on the mutual understanding that the burden of responding greatly outweighed any possible relevance.  Otto Trucking now changes course and demands additional productions where it previously demanded nothing.  Second, for the RFPs in response to which Waymo agreed to produce more documents, Waymo produced exactly what it pledged to produce.  I'll explain below how each of Otto Trucking's recent requests fall into one of these two categories.

Otto Trucking's email concerning RFP no. 50 is emblematic of its failure to scrutinize its discovery needs and Waymo's production before burdening the parties and the Special Master with a lengthy email.  No. 50 seeks "Any versions of an employee handbook applicable to Waymo employees, including members of Project Chauffeur, from 2009 to the present."  Waymo agreed to produce responsive portions, and combed through the

3

handbook and produced every part of it that had any bearing on any issue in this litigation.  In its email, Otto Trucking stated – and it used an identical template for the other 25+ RFPs it complained of -  that it "rejects this attempt to limit the scope" and "demands Waymo amend its response and produce complete employee handbooks from 2009 to present."  But OT did not explain *why* Waymo is required to produce non-responsive information or *how* Waymo's production to date has fallen short.

Nor could it have.  This is a dispute that should not exist.  The employee handbook is an index of hyperlinks to subsections, an index that Waymo has produced.  *See* WAYMO-UBER-00014579.  One such subsection is "Dog policy."  Another is "Immigration, visas, and work permits."  *Id.*  Waymo did not produce those.  Ms. Hyde's email argued (without any attempt at justification) that OT is entitled to "complete employee handbooks," and Shane's email stated that there are "deficiencies" in Waymo's productions "that need to be addressed or we are going to need to move to compel."  We trust those statements don't seriously contend that OT is entitled to Waymo's dog policy for purposes of this litigation.

Other handbook sections include "Conflicts of interest" and "Confidentiality."  Waymo produced all versions of each dating back to 2009.  We don't think there's a dispute there, either.  Otto Trucking should not have complained about our handbook production until it had reviewed our production to date and identified any shortcomings.

Waymo has only produced portions of the employee that it deems "responsive" . While we agree that the dog policy is not relevant to this case, the sections titled "Solicitation and external access" and "Manager policies," for example, certainly may be.  Waymo does not get to decide what it will and won't produce in response to this RFP based on its own and possibly self-serving determination of relevance.  Waymo's piecemeal production appears to be just for the purposes of delay.  It would be more efficient for both sides for Waymo to make a complete production for our review.  Also, we do not have any handbooks post-2015.  Please confirm  that Waymo will be making a complete and up to date production in response to this request.  Otherwise, we'll need to raise this issue with Judge Corley.

Similar issues plague the rest of its allegations below.  We can be so much more efficient if we take the time to identify the discovery we need before blindly demanding more.

Onto the rest of the issues raised by Otto Trucking.

No. 4, concerning SVN policy documents.  Here's an excerpt from Mr. Brun's email of June 21, which agreed not to move the Court to compel.  The black text is from Waymo, and the blue is Mr. Brun's inline response; the highlighted text describes the documents that Waymo pledged to produce:

> No. 4 – As I've twice explained, we've asked the SVN administrator whether there are SVN-specific policies, and he has said there are not.  As I've also explained, Waymo has and will continue to produce complete policy documents relating to security, data management, and the handling of confidential information, which apply to SVN data even if they do not expressly name SVN.  Waymo will also produce two documents identified by the SVN administrator that are the closest thing to what is requested here.
>
> Otto Trucking response: We'll review Waymo's production, but reserve Otto Trucking's rights to revisit this request.

In other words, Waymo agreed to produce two documents.  Otto Trucking agreed not to move based on that representation.  We produced those two documents on June 27.  *See* WAYMO-UBER-00015963; WAYMO-UBER-00015964.  Otto Trucking now asks for more.  Thus Waymo was not, as Shane suggests below, deficient in its production.  We said we had only two documents, and we produced them.  And we now say for at least the

third time:  according to the SVN administrator, who we've interviewed several times, these documents do not exist.

<span style="color:red">RFP No. 4 asks for documents sufficient to show Waymo's policies, procedures and/or guidelines relating to which Waymo employees are allowed access to the SVN server, the supposedly highly secure and confidential repository where its allegedly highly confidential trade secrets central to this case are kept.  Waymo has claimed in this case that "access to the SVN server is limited to select Waymo employees on a 'need to know' basis," (see, e.g., Waymo's 2019.210 disclosure of asserted trade secrets) but it has failed to produce any documents supporting that claim or otherwise explaining how an employee is determined to need access to the SVN server.  We understand your response above to confirm the fact that Waymo does not have a single document that reflects any policy, procedure or guideline relating to determining which employees get access to the alleged highly confidential and secure SVN server.  Please let us know right away if this is not correct.  And so the record is accurate,  OT expressly reserved the right to revisit request after receiving and reviewing the two documents you reference above, which is what we are doing.</span>

No. 32, concerning Waymo policies regarding the formatting of Waymo computers.  Waymo has combed multiple policy databases and produced a huge number of policy documents covering accounts security, data security, network and computer security and code of conduct policies, to name just a few.  If none of those productions specifically mention formatting of Waymo computers, then we were unable to locate any such policies in our exhaustive search.

<span style="color:red">We understand your response to confirm that Waymo has no policy regarding its employees reformatting their computers, including not policy or documents indicating that its employees are not allowed to reformat their computers from the Windows operating system to a Linux operating system.  Let us know right away if this is incorrect.</span>

No. 7, concerning Waymo policies regarding software used to access Waymo's SVN server.  Again, on June 21, Otto Trucking agreed not to bring a motion even though Waymo said it would not produce any further documents responsive to this request.  Now Otto Trucking threatens to move.  This is not a "deficiency" in Waymo's production, this is Otto asking for documents where it previously accepted Waymo's representation that it had none.  At any rate our response is the same:  we've talked multiple times with the SVN administrator, and there are no such documents.

<span style="color:red">RFP No. 7 request documents sufficient to show any Waymo policy, procedure or guideline regarding use of TortoiseSVN or other software use to access the SVN server.  The documents Waymo has produced to date, as well as testimony in this case, indicates that TortoiseSVN is the standard software recommended by Waymo for accessing the SVN server.  We read your responses above as confirming that Waymo does not have any policies, procedures, guidelines, or other documents that suggest that using TortoiseSVN to access the SVN server is prohibited in any way or is otherwise indicative of any improper conduct.  Please let us know right away if this is incorrect.</span>

No. 23 and 24, which were not mentioned in the parties' agreement of June 21, asks for further policy documents about Waymo's SVN server.  Again, there are none.

<span style="color:red">RFP Nos. 23-24 request documents sufficient to show any Waymo policy, procedure or guideline for downloading documents from the SVN server, the supposedly highly secure and confidential repository where its allegedly highly confidential trade secrets central to this case are kept.  We read your response as confirming that Waymo does not have any documents placing any restrictions on its employees from downloading documents from the SVN server, including documents containing information that Waymo claims in this case to be its highly confidential trade secret information.</span>

Ms. Hyde's email next references Nos. 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 26, 35, 36.

First, here's another excerpt from Mr. Brun's June 21 email:

Nos. 2, 9-12 – Waymo is willing to produce SVN log data sufficient to demonstrate the typical SVN practices of Waymo employees.   Waymo does not have complete log data dating back to Mr. Levandowski's employment, but to the extent that Waymo has, and has not yet produced, any SVN log data for Levandowski, Waymo will produce that as well.

Otto Trucking response:  In our meet and confer discussions, Mr. Nardinelli indicated that Waymo has SVN log data dating back to around March 2016, and that Waymo was willing to produce that data.  I assume that, at a minimum, Waymo will be producing that SVN log data ██████████████   We'll review Waymo's production, but reserve Otto Trucking's rights to revisit these requests.  **Regarding Waymo's claim that** ████████

As promised, we produced log data ████████████.  We also explained why our log data ████████ ████████   Ms. Hyde's July 26 email alleges that Waymo "has not produced any documents ████████ ██ regarding how often employees other than Mr. Levandowski accessed the Waymo SVN server."  That's incorrect, we've produced data ████████████████████   Ms. Hyde alleges that "Waymo has not produced any documents prior to December 11, 2015 regarding how often Mr. Levandowski accessed the SVN server," which is also incorrect; as previously explained, Waymo has produced Levandowski's SVN log data ████████████████.  And again we question the relevance of Levandowski's prior download history in light of defendants' representation to the Court (Dkt. 755) that Levandowski downloaded the 14,000 files not in his ordinary course of work but instead as a special move made to guard against his alleged fear that his bonus would not be paid.

We understand your above response as confirming (1) that Waymo has produced SVN log data for all employees accessing the SVN server ████████████████; (2) that, other than select SVN data for Mr. Levandowski, Waymo did not preserve any SVN log data ██████████ ████████; and (3) that Waymo has produced at least some SVN log data for Mr. Levandowski ██████████   It's still unclear, however, exactly what you have produced for Mr. Levandowski.  Please tell us whether whether this SVN log data for Mr. Levandowski complete data ██████████ or is it just select data gathered by Waymo as part of the alleged investigation by Mr. Brown?  And otherwise, please let us know right away if any of the above is incorrect.

Also from the June 21 email:

Nos. 13-14, 16, 20, 26 – Again as Waymo has explained, it is extraordinarily burdensome to ████████ ████████████████████████████████████ ████████████████████████████████ ████████████████████████████ ████████████████████  The cost of responding to these requests is entirely disproportional under Rule 26.

Otto Trucking response: Otto Trucking will reassess the scope of these requests, and reserves the right to revisit these requests.

Ms. Hyde's email fails to explain why Waymo's response, which sufficed on June 21, no longer does.

Also from Shane's June 21 email:

> No. 15, 19 – Waymo has already produced documentation of Drive downloads from roughly 20 members of Project Chauffeur over a six-month period. *See, e.g.,* WAYMO-UBER-00001963.  To the extent that Otto Trucking seeks "representative" download behavior of Waymo employees, statistical principles demonstrate that you already have it.  We are nonetheless willing to make a reasonable additional production of the same type of Drive data.

> Otto Trucking response:  Otto Trucking will review Waymo's production to date and will follow up with Waymo regarding its offered additional production.

We've been dealing with overlapping RFPs with Max Pritt on Uber's side.  Otto Trucking and Uber should agree on how much more Drive download data they would like so we don't have to negotiate this twice, and also explain how this request remains relevant in light of the theory espoused at Dkt. 755.

RFP Nos. 13-14, 16, 20, 26 seek information relating to Waymo employees downloading information to personal media devices.  As you know, at the center of Waymo's misappropriation claim is that Mr. Levandowski had a personal device attached to his laptop and that he allegedly downloaded the 14k files to that laptop.  Waymo is asking the Court and ultimately the jury to infer that because Mr. Levandowski had a personal device attached that his laptop that he must have been doing something improper.  OT is entitled to see how often other Waymo employees used personal devices and downloaded information to personal devices in order to challenge the inference Waymo is trying to make.  Waymo gathered this information for Mr. Levandowski and presented that information in the declaration of Mr. Brown.  It can do the same for other employees.  Please provide us a detailed explanation of what is so "extraordinarily burdensome" about providing this same information for other Waymo employees so as to be precluded under Rule 26 so that we can resolve this issue with Special Master Cooper or with Judge Corley.

That leaves nos. 17, 18, 21, 35, and 36 from Hayes' list that were not expressly addressed in the June 21 email.  Again, Otto Trucking does not explain why it agreed to stand down on June 21 without seeking any additional productions in response to these RFPs, but now threatens motion practice.  Nos. 17 and 18 request access to and downloads from Waymo's SVN server; again, Waymo has produced all the SVN log data it has and there is nothing further to produce.  No. 21 seeks information concerning how often a foreign device was attached or removed from an employee's device.  We have produced policy documents specifically concerning the use of removable media; to do more than that would require generating individual security reports for every employee, a request well outside the bounds of Rule 26 and one that Otto Trucking has made no attempt to justify.  Nos. 35 and 36 seek information about Waymo employee download behavior and overlap nos. 15 and 19.

RFP Nos. 17/18 are addressed above by the confirmation that Waymo ███████████████████████ ████████████████████████████████

For RFP No. 21, our experts are review the ████ log data (at least that what we understand it to be) produced at Bates No. Waymo – Uber 26477 and will follow up after that review.

RFPs No. 35-36 are narrowly directed to records of downloads of particularly large amount of data and information by Waymo employees.  These do not overlap with RFP Nos. 15 and 19.  Has Waymo produced all responsive information to RFP Nos. 35-36 or not?

No. 27, concerning file transfers including to removable media.  Otto Trucking complains that Waymo has produced only overview policy documents but has not produced any documents referenced in those overview documents.  That's wrong.  We've produced an index document listing dozens of policy documents aka ████████ including one called "Can I use removable media (e.g., USB thumb-drives, CDs, magnetic tape) to

transfer or store google information." We also produced all versions of the "Can I use removable media" document dating back to 2008. I recall talking to Shane specifically about that policy document, sharing the title of that document before we even produced it, and then producing it, so this complaint is especially ill-taken.

For RFP No. 27, we are entitled to landing pages, which they haven't produced; these include "Can I use a virtual machine", "Can I use VPN/SSH into Google from my Mobile Phone", "Can I use reverse SSH." These are potential ways that a Google/Waymo employee can download information to a personal device and are thus relevant to our defenses. Producing indices is again insufficient; Waymo does not get to make the relevance determination here.

On no. 31 and 32, concerning documents showing how often Waymo computers are reformatted including to Linux, I previously explained to Shane on the phone that there is no reasonable way to obtain such data, and he agreed to back off that request if Waymo responded sufficiently to other RFPs. Again, Otto Trucking agreed not to move on June 21 notwithstanding that Waymo said that it would not produce any documents. Now OT threatens to move without any explanation of what has changed.

Waymo says there is no reasonable way to get this information, and yet you obtained it for Mr. Levandowski; and Mr. Levandowski's alleged reformatting of one of his computers from Windows to a Linux operating system is at the core of Waymo's claims that Mr. Levandowski did something wrong because shortly after the 14k download, his laptop was reformatted to a different operating system. However, experts have found that all the unallocated space on the laptops are still there. If you plan on maintaining this claim, you have to produce documents to show how often other team members changed their operating systems; Kristinn Gudjonsson testified that often this comes in the form of an IT ticket (request) from a Googler- are there any of these?

On Nos. 40-41 I'll quote again from prior correspondence:

> Nos. 40, 41 – These requests call specifically for information about data systems *other than* those from which Levandowski is accused of pilfering Waymo trade secrets. The requests are therefore irrelevant on their face. You have stated that you would like to compare security policies for those systems to the security policies governing SVN. Whether the SVN is subject to reasonable security measures – and the Court has already found that it is – is not measured by comparisons to other systems. Nonetheless, we will identify other data systems for Waymo confidential and/or proprietary information and will produce documents sufficient to identify those systems, users, and policies, to the extent such documents may be reasonably located.

> Otto Trucking response: Otto Trucking will review Waymo's production, and reserves the right to revisit these requests.

Again, there were very few additional documents, but we talked to our sysadmins and produced what we had for our ▮▮▮▮▮▮▮▮▮▮▮database. WAYMO-UBER-00029403; WAYMO-UBER-00029407; WAYMO-UBER-00029411. This however is the one complaint in Otto Trucking's email that holds water. There is one other system at Waymo, and I previously emailed its administrator but lost touch and it fell off my plate. My apologies. We will follow up and produce what we find, notwithstanding that the system is not at issue in this litigation.

We will review your follow up production and then follow up with any remaining questions.

On no. 44, concerning Waymo's review or analysis of devices from Waymo employees upon departure, Otto Trucking states that "Otto Trucking rejects Waymo's attempt to limit its response to Mr. Levandowski's device and demands Waymo produce documents regarding all employees' devices after their departure." Like with most of the email there is no articulated basis for the rejection or for the demand, but at any rate, any

investigations into Waymo employee devices upon departure would have been done under advice of counsel and are privileged. Waymo waived the privilege with respect to elements of its investigations into Mr. Levandowski as well as Messrs. Raduta and Kshirsagar, and accordingly produced the documents over which it waived privilege.

**Request No. 44 seeks documents sufficient to show collection, analysis, review, or findings related to Waymo computers, email, or other devices of Mr. Levandowski and any other Waymo employees upon their departure from Waymo or Project Chauffeur from January 2009 to present. Waymo stated its Response was limited to documents underlying the declaration of Gary Brown at Dkt. 25-29, which is limited to Mr. Levandowski's devices.**

**Documents relating to any investigation by Waymo of other former Chauffeur employees may bear on the issues in this case, and must be produced. For example, these documents likely contain information regarding Waymo's handling and protection (or lack thereof) of the alleged trade secrets in this case and similar information relating to project Chauffeur. Waymo's actions relating to other departing employees that reflect disparate treatment of those other employees and Mr. Levandowski would also be relevant to Waymo's motive for bringing this current case against Otto Trucking and Uber. To the extent Waymo is asserting privilege over documents relating to its investigations of other departing employees, please point us to the privilege log entries for those documents.**

**With respect to Waymo's investigation of Mr. Levandowski, we agree that Waymo has waived the privilege with respect to Mr. Levandowski yet it continues to withhold critical documents from that investigation. I believe that Jim Baker has been meeting and conferring about some documents, including the "███████ documents" that includes details and findings from Waymon's investigation of Mr. Levandowski. Is it your final position that you will not be producing this document? To the extent Waymo is withholding any documents relating to its forensic investigation of Mr. Levandowski, please confirm that your final position is that you will not be producing those documents based on privilege.**

**To the extent Waymo is withholding responsive documents based on privilege, please point us to the privilege log entries for those documents so we can assess Waymo's privilege assertions and decide whether we need to bring those issues to Special Master Cooper or Judge Corley for resolution. We have requested this information multiple times now and the response has been "we will try." At this stage, Waymo must identify the relevant privilege log entries or log the documents it is withholding relating to its investigation.**

Jeff

---

**From:** Brun, Shane [mailto:SBrun@goodwinlaw.com]
**Sent:** Friday, July 28, 2017 10:49 AM
**To:** Hyde, Hayes <HHyde@goodwinlaw.com>; dg- (jcooper@fbm.com) <jcooper@fbm.com>; Matthew Cate (MCate@fbm.com) <MCate@fbm.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Cc:** BSF_EXTERNAL_UberWaymoLit@bsfllp.com; UberWaymoMoFoAttorneys@mofo.com; DG-GP Otto Trucking Waymo <DG-GPOttoTruckingWaymo@goodwinlaw.com>
**Subject:** RE: Waymo v. Uber- Meet and Confer re Waymo responses to OT Requests for Production

John,

I am following up our discussion on the meet and confer call yesterday about the issues raised in Hayes' email below regarding various deficiencies in Waymo's recent documents productions, and Mr. Nardinelli's refusal to even respond to Hayes' email. My understanding is that Mr. Nardinelli's position is that these issues have all been previously addressed with me. That of course is not the case. My discussions with Mr. Nardinelli predated the document

production issues Hayes addresses in the email below.  Following my prior discussion with Mr. Nardinelli, he avoided a motion to compel by agreeing to produce documents in response to various requests.  Hayes is pointing out various deficiencies in those productions that need to be addressed or we are going to need to move to compel.

So that we can have an efficient discussion with you, we ask the you instruct Mr. Nardinelli to provide us a written response to each of the issues raised in Hayes' email below by the end of the day today and that we schedule a meet and confer call at 10 am on Monday to go through his responses.

Also, we need to add to this discussion Waymo's refusal to produce Mr. Levandowski's devices for inspection by our expert (our RFP No. 45.).  Mr. Nardinelli had answered a question  I had about why, if Waymo did not have information going back earlier than December 11, 2015 because Mr. Levandowski had reformatted his computer, Mr. Brown was able to provide information going back to an earlier date.  In response, several weeks later, counsel provided a ████ log, which I understand is a log of some activity on the computer obtained from a security tool.  Although this log helps answer one question, it raised a number of others, including what other security tools and back up data is available that Waymo has not produced.  We are entitled to the full images and access to the devices from Mr. Levandowski's computers so our expert can inspect them and should not have to rely on the partial findings of a Waymo employee. To the extent Waymo has not retained and does not have all of the relevant work and log-in history for Mr. Levandowski, we need his devices to be able to fill in the gaps.  We need Waymo's agreement on Monday to produce these devices by the end of the week, or else we need to set a briefing schedule with Judge Corley.

Thank you again for your assistance.

Best,

Shane

**Shane Brun**



Goodwin Procter LLP
3 Embarcadero Center
San Francisco, CA 94111
o  +1 415 733 6074
f   +1 415 390 7965
SBrun@goodwinlaw.com | goodwinlaw.com

---

**From:** Hyde, Hayes
**Sent:** Wednesday, July 26, 2017 12:35 PM
**To:** dg- (jcooper@fbm.com); Matthew Cate (MCate@fbm.com); QE-Waymo (qewaymo@quinnemanuel.com) (qewaymo@quinnemanuel.com) (qewaymo@quinnemanuel.com)
**Cc:** BSF_EXTERNAL_UberWaymoLit@bsfllp.com; UberWaymoMoFoAttorneys@mofo.com; DG-GP Otto Trucking Waymo
**Subject:** RE: Waymo v. Uber- Meet and Confer re Waymo responses to OT Requests for Production

John and counsel,

Given that it has been nearly two days and we still have not received a response, I write again to request a meet and confer on these matters tomorrow afternoon.

---

**From:** Hyde, Hayes
**Sent:** Monday, July 24, 2017 10:56 PM

**To:** dg- (jcooper@fbm.com); Matthew Cate (MCate@fbm.com); QE-Waymo (qewaymo@quinnemanuel.com) (qewaymo@quinnemanuel.com) (qewaymo@quinnemanuel.com)
**Cc:** BSF_EXTERNAL_UberWaymoLit@bsfllp.com; UberWaymoMoFoAttorneys@mofo.com; DG-GP Otto Trucking Waymo
**Subject:** Waymo v. Uber- Meet and Confer re Waymo responses to OT Requests for Production

Counsel and John,

I write to request a meet and confer either Wednesday or Thursday afternoon to discuss Waymo's deficient Responses to Otto Trucking's First Set of Requests for Production of Documents and Tangible Things. Despite the fact that Otto Trucking has engaged in multiple meet and confers and made multiple requests for supplementation, Waymo has evaded answering the majority of Otto Trucking's propounded discovery requests.  Waymo refuses to send supplemental verified responses to issues we have met and conferred about, which is not in good faith. Waymo's baseless restrictions on production appear only to serve the purpose of running out the clock on discovery.   In light of the impending close of discovery and Waymo's superficial attempts to avoid substantively responding, we demand Waymo resolves these issues as soon as possible or we will be forced  to bring them to the attention of Judge Corley.

**Waymo's Failure to Produce Any Responsive Documents**

Request No. 4 seeks documents sufficient to show any Waymo policy, procedure, guideline, or training regarding which employees have access to Waymo's SVN server. Waymo stated it would produce a single document that delineated which Waymo employees had access to Waymo's SVN server. This response is entirely inadequate and inapposite. Otto Trucking seeks documents regarding who decides which employees have access to the SVN server, how that decision is made, what processes employees go through to gain access, and security training employees must undergo to gain access. Otto Trucking rejects Waymo's attempt to limit documents and demands all documents responsive to this request be produced immediately and Waymo's response to this Request be amended accordingly. If no additional documents exist, please so state.

Request No. 32 seeks documents sufficient to show any Waymo policy, procedure, or guideline regarding the formatting of Waymo computers. Otto Trucking has been unable to locate any documents responsive to this request. Otto Trucking requests that Waymo produce responsive documents; to the extent these documents have been produced, Otto Trucking requests Waymo amend its Response to identify the appropriate Bates range where these documents may be located.

**Waymo's Failure to Produce Sufficient Documents**

Request No. 7

In response to Otto Trucking's request that Waymo produce "Documents sufficient to show any Waymo policy, procedure, or guideline including but not limited to any training, regarding the installation and use of TortoiseSVN or other software that may be used to access Waymo's SVN server," Waymo has produced a single one-page instruction sheet on how to access the Tortoise SVN; see WAYMO-UBER-00015963. However, this policy does not in any way address how Waymo employees are to use the SVN  server.

Further, the single page expressly references an internal Chauffeur webpage that has links to other relevant pages, such as the EE page, which is explicitly noted at the top of WAYMO-UBER-00015963 . Otto Trucking is entitled to this internal Chauffeur webpage, any links associated with this page, and any historic pages related to this internal Chauffeur webpage that Waymo has in its possession, custody, or control. Otto Trucking demands all documents responsive to this request be produced immediately and Waymo's response to this Request be amended accordingly.

Request No. 23 and 24

These requests seek documents sufficient to show any Waymo policy, procedure, guideline, and/or training regarding the downloading of files or information from Waymo's SVN server and regarding any practice of downloading versus viewing files or information from Waymo's SVN server. While Waymo has produced some documents responsive to this request, it has failed to produce documents explicitly referenced in those produced documents, including, but not limited to, Waymo's internal Team Chauffeur "Wiki" and associated landing pages. Otto Trucking is entitled to those documents as they are responsive to these requests. Waymo cannot hide behind its blanket response that it will "produce documents sufficient to show Waymo policies, procedures, and guidelines relating to highly confidential information." Otto Trucking has made several distinct, narrowly tailored requests that require specific response. Otto Trucking demands that documents directly responsive to this Request be produced immediately and that Waymo's response be amended accordingly.

**Waymo's Improper Refusal to Respond to Requests for the Proper Date Range and Proper Custodians**

Waymo unilaterally and improperly restricts its responses to multiple Otto Trucking requests to arbitrarily decided date ranges. Otto Trucking demands that Waymo amend its responses as follows:

Requests for Production Nos. 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 26, 35, 36

Waymo's Response to these requests states Waymo has produced Mr. Levandowski's activities and refuses to produce any further documents responsive to these requests. Waymo subsequently produced logs of ██ other active users, but arbitrarily limits these logs to ██████████████████████. Otto Trucking sought documents relating to the download habits of all Waymo employees starting from January 2014 to the present. Waymo has not provided any reason, let alone valid justification, ██████████████████████ ████████, it must state so and explain why.

Request No. 9 seeks documents sufficient to show how often Mr. Levandowski and other Waymo employees accessed Waymo's SVN servers from January 2014 to the present. Waymo has not produced any documents ████████████ ██ regarding how often employees other than Mr. Levandowski accessed the Waymo SVN server. Waymo has not produced any documents prior to December 11, 2015 regarding how often Mr. Levandowski accessed the SVN server.  Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 10 seeks documents sufficient to show how often Mr. Levandowski and other Waymo employees accessed Waymo's SVN servers  to view files or information relating to Waymo's LiDAR technology from January 2014 to the present. Waymo has not produced any documents ██████████████ regarding how often employees other than Mr. Levandowski accessed the Waymo SVN server to view LiDAR files or information. Waymo has not produced any documents prior to December 11, 2015 regarding how often Mr. Levandowski accessed the SVN server and viewed LiDAR files or information.  Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 11 seeks documents sufficient to show how often Mr. Levandowski and other Waymo employees downloaded files  or information from Waymo's SVN server from January 2014 to the present. Waymo has not produced any documents ████████████████ regarding how often employees other than Mr. Levandowski downloaded files or information from the SVN server. Waymo has not produced any documents prior to December 11, 2015 regarding how often Mr. Levandowski downloaded files or information from the SVN server.  Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 12 seeks documents sufficient to show how often Mr. Levandowski and other Waymo employees downloaded files  or information  relating to Waymo's LiDAR from Waymo's SVN server from January 2014 to the present. Waymo has not produced any documents █████████████████ regarding how often employees other than Mr. Levandowski downloaded files or information relating to Waymo's LiDAR from the SVN server. Waymo has not produced any documents prior to December 11, 2015 regarding how often Mr. Levandowski downloaded files or information relating to Waymo's LiDAR from the SVN server.  Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 13 seeks documents sufficient to show how often Mr. Levandowski and other Waymo employees downloaded files  or information from Waymo's SVN server to a personal computer or media device from January 2014 to the present. Waymo has not produced any documents ███████████████ regarding how often employees other than Mr. Levandowski downloaded files or information from the SVN server to a personal computer or media device. Waymo has not produced any documents prior to December 11, 2015 regarding how often Mr. Levandowski downloaded files or information from the SVN server to a personal computer or media device.  Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 14 seeks documents sufficient to show how often Mr. Levandowski and other Waymo employees downloaded files  or information regarding Waymo's LiDAR from Waymo's SVN server to a personal computer or media device from January 2014 to the present. Waymo has not produced any documents ██████████████ regarding how often employees other than Mr. Levandowski downloaded files or information relating to Waymo's LiDAR from the SVN server to a personal computer or media device. Waymo has not produced any documents prior to December 11, 2015 regarding how often Mr. Levandowski downloaded files or information relating to Waymo's LiDAR from the SVN server to a personal computer or media device.  Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 15 seeks documents sufficient to show how often Mr. Levandowski and other Waymo employees downloaded files  or information from Waymo's Google Drive relating to Waymo's LiDAR from January 2014 to the present. Waymo has only produced documents ███████████████ regarding how often employees other than Mr. Levandowski downloaded files or information from Waymo's Google Drive relating to Waymo's LiDAR. Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 16 seeks documents sufficient to show how often Mr. Levandowski and other Waymo employees downloaded files  or information from Waymo's Google Drive to a personal computer or media device from January 2014 to the present. Waymo has only produced documents ████████████████████ regarding how often employees other than Mr. Levandowski downloaded files or information from Waymo's Google Drive and it is unclear if ████████████████████████████ Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 17 seeks detailed records, logs, metadata, and other information sufficient to show each access to Waymo's SVN server from January 2014 to the present. Waymo stated it would only produce data related to Mr. Levandowski's activity. Waymo has subsequently only produced documents for ██ employees and nothing ████████ responsive to this request.  Further, Waymo has not produced any documents prior to December 11, 2015 for Mr. Levandowski. Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 18 seeks detailed records, logs, metadata, and other information sufficient to show each download from Waymo's SVN server from January 2014 to the present. Waymo stated it would only produce data related to Mr. Levandowski's activity. Waymo has subsequently only produced documents for ██ employees and ████████ responsive to this request.  Further, Waymo has not produced any documents prior to December 11, 2015 for Mr. Levandowski. Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 19 seeks detailed records, logs, metadata, and other information sufficient to show each download from Waymo's Google Drive server from January 2014 to the present. Waymo stated it would only produce data related to Mr. Levandowski's activity. Waymo has subsequently only produced documents for Project Chauffeur employees and ████████████████ responsive to this request.  Further, Waymo has not produced any documents prior to December 11, 2015 for Mr. Levandowski. Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 20 seeks detailed records, logs, metadata, and other information sufficient to show each transfer of information by a Waymo employee from a Waymo computer or server to a personal computer or removable device.  Waymo stated it would only produce data related to Mr. Levandowski's activity with respect to a "Transcend RDF5 USB 3.0 card reader". Otto Trucking rejects Waymo's attempt to limit documents you agree to produce responsive to this request. Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 21 seeks detailed records, logs, metadata, and other information sufficient to show each instance from January 2014 to present in which a foreign device was detected to be attached or removed from an employee's device, including logs generated by ████████████. Waymo stated it would only produce data related to Mr. Levandowski's activity with respect to a "Transcend RDF5 USB 3.0 card reader". Otto Trucking rejects Waymo's attempt to limit documents you agree to produce responsive to this request. Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 26 seeks documents sufficient to show how often Waymo employees downloaded files  or information to a personal computer or removable media device. Waymo stated it would only produce data related to Mr. Levandowski's activity with respect to a "Transcend RDF5 USB 3.0 card reader" and the download logs of Project Chauffeur team members with respect to Google Drive. Waymo has subsequently only produced documents from June 2016 to December 2016 for ██ employees regarding how often those employees downloaded files or information, but this does

not include information relating to downloads to personal computers or media devices. Please confirm that you will produce all documents responsive to this request and are not withholding any documents based on your objection that this Request is "irrelevant, overbroad, and not proportional to the needs of the case." This request is narrowly tailored, relevant, and proportional to the needs of this case. Please amend your response accordingly.

Request No. 27 seeks documents sufficient to show how files transferred from Waymo computers or servers to a personal computer or removable media device are secured against unauthorized access. Waymo stated it would only produce "documents sufficient to show Waymo policies, procedures, training, and guidelines relating to highly confidential information, including relating to transfer of such information to removable media devices." First, Otto Trucking rejects Waymo's attempt to limit documents it agrees to produce in response to this Request. Second, Waymo has not produced documents sufficient to this request; it has only produced "Google Security Policies" such as ███████ but has not produced any documents explicitly referenced in these ███████ Otto Trucking demands you produce such documents and amend your response accordingly.

Request Nos. 35 and 36 seek documents sufficient to show the number of times Waymo employees downloaded more than 10,000 files or 1 GB of data, respectively. Waymo improperly limited its response to documents "supporting Waymo's claim that 'the Levandowski work laptop then downloaded over 14,000 files from the SVN repository, also on December 11, 2015." Otto Trucking rejects Waymo's attempt to limit its response to Mr. Levandowski's alleged downloading activities and demands Waymo amend its response to include documents sufficient to show all Waymo employees' downloading behavior.

**Waymo's Improper Restriction of Production of Documents to Mr. Levandowski's documents**

Waymo improperly limits its responses to Request Nos. 30 and 31 to "documents supporting Waymo's claim that 'the Levandowski work laptop was reformatted…" Otto Trucking requested documents sufficient to show how often Waymo computers are reformatted and install the Linux operating system. Otto Trucking demands that Waymo withdraw its objection that these requests are "irrelevant, overbroad, and not proportional to the needs of this case." It further demands that Waymo produce documents responsive to this request with respect to all Waymo employees and amend your response accordingly.

**Waymo's Improper Restriction of Production of Documents by Repository**

Waymo improperly limits its responses to Request Nos. 40 and 41 to "a document identifying all Waymo employees…who have access to Waymo's SVN server or who had access to Waymo's SVN server from June 2015 to present. Otto Trucking requested documents sufficient to identify all data management systems where Waymo confidential and/or proprietary technical documents or information are stored and all users with access to those systems. Otto Trucking rejects Waymo's attempt to limit its response to the SVN server and demands that Waymo produce documents regarding all data systems and the employees with access to those systems.

**Waymo's Improper Restriction of Its Responses to the Gary Brown Declaration**

Request No. 44 seeks documents sufficient to show collection, analysis, review, or findings related to Waymo computers, email, or other devices of Mr. Levandowski and any other Waymo employees upon their departure from Waymo or Project Chauffeur from January 2009 to present.  Waymo stated its Response was limited to documents underlying the declaration of Gary Brown at Dkt. 25-29, which is limited to Mr. Levandowski's devices. Otto Trucking rejects Waymo's attempt to limit its response to Mr. Levandowski's device and demands Waymo produce documents regarding all employees' devices after their departure.

**Waymo's Improper Restriction of Its Response to "Responsive Portions"**

Request No. 50 seeks any versions of an employee handbook applicable to Waymo employees from 2009 to present. Waymo unilaterally limits its response to "responsive portions" without defining its definition of "responsive" and

without explaining the scope of its search. Otto Trucking rejects this attempt to limit the scope of Waymo's responsibility to produce any <u>versions</u> of the employee handbooks. Otto Trucking demands Waymo amend its response and produce complete employee handbooks from 2009 to present.

Thank you,

**Hayes Hyde**



Goodwin Procter LLP
3 Embarcadero Center
San Francisco, CA 94111
o  +1 415 733 6044
f  +1 415 390 7975
HHyde@goodwinlaw.com | goodwinlaw.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message was sent from Goodwin Procter LLP and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*