# EXHIBIT 1
# ENTIRE EXHIBIT SUBMITTED UNDER SEAL

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1                UNITED STATES DISTRICT COURT
2               NORTHERN DISTRICT OF CALIFORNIA
3                   SAN FRANCISCO DIVISION
4                         ---o0o---
5    WAYMO LLC,
6             Plaintiff,
7    vs.                                No.  3:17-cv-00939-WHA
8    UBER TECHNOLOGIES, INC.;
9    OTTOMOTTO LLC; OTTO TRUCKING,
10   INC.,
11            Defendants.
12   _____/
13
14       HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY
15
16        VIDEOTAPED DEPOSITION OF WAYMO 30(b)(6)
17                     DON HARRISON
18                  PALO ALTO, California
19                THURSDAY, AUGUST 17, 2017
20                       9:10 a.m.
21
     REPORTED BY: Nina Pavone
22   CSR LICENSE No. 7802
23   Job No. CA 2677748
24
25   PAGES 1 - 320
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1                P-R-O-C-E-E-D-I-N-G-S:

2

3            THE VIDEOGRAPHER:  Good morning.  We are on the    09:10:11

4    record at 9:10 a.m. on August 17, 2017.  This is the       09:10:33

5    videotaped deposition of Mr. Don Harrison.                 09:10:39

6            My name is Ramon Peraza, here with our court       09:10:42

7    reporter, Nina Pavone.  We are here from Veritext Legal    09:10:46

8    Solutions at the request of counsel for the defendant.     09:10:49

9            This deposition is being held at Morrison &        09:10:52

10   Forester in Palo Alto.  The caption of this case is Waymo  09:10:55

11   LLC versus Uber Technologies, et al., case number          09:10:58

12   3:17-cv-00939-WHA.                                         09:11:07

13           Please note that audio and video recording will    09:11:10

14   take place unless all parties have agreed to go off the    09:11:14

15   record.  Microphones are sensitive and may pick up         09:11:17

16   whispers or private conversations.                         09:11:21

17           At this time, counsel, please identify             09:11:22

18   yourselves for the record and state whom you represent.    09:11:23

19           MR. PRITT:  Maxwell Pritt from Boies Schiller      09:11:27

20   Flexner, representing defendant Uber Technologies, Inc.    09:11:31

21   and defendant Ottomotto LLC.  I'm here with my colleague,  09:11:33

22   Josh Friedman, also from Boies Schiller Flexner,           09:11:37

23   representing defendants.                                   09:11:39

24           MR. LIN:  My name is James Lin from Goodwin        09:11:41

25   Procter on behalf of Otto Trucking, LLC.                   09:11:45
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. EISEMAN: David Eiseman from Quinn Emanuel | 09:11:46 |
| 2 | on behalf of plaintiff Waymo and the witness Mr. Harrison. | 09:11:49 |
| 3 | MR. BERKLEY: Demarron Berkley, inhouse with | 09:11:53 |
| 4 | Google. | 09:11:56 |
| 5 | THE VIDEOGRAPHER: The court reporter may now | 09:11:56 |
| 6 | swear in the witness. | 09:11:58 |
| 7 | | 09:12:00 |
| 8 | DON HARRISON, | 09:12:00 |
| 9 | being first duly sworn by the Certified Shorthand Reporter | 09:12:00 |
| 10 | to tell the truth, the whole truth, and nothing but the | 09:12:00 |
| 11 | truth, testified as follows: | 09:12:00 |
| 12 | | 09:12:12 |
| 13 | EXAMINATION | 09:12:12 |
| 14 | BY MR. PRITT: | 09:12:14 |
| 15 | Q    Good morning, Mr. Harrison. | 09:12:14 |
| 16 | A    Good morning. | 09:12:16 |
| 17 | Q    Could you please state your full name for the | 09:12:16 |
| 18 | record. | 09:12:18 |
| 19 | A    My full name is Donald Stewart Harrison. | 09:12:18 |
| 20 | Q    And what's your home address? | 09:12:21 |
| 21 | A    ███████████████████████████ | 09:12:22 |
| 22 | Q    And is Mr. Eiseman, sitting next to you, your | 09:12:25 |
| 23 | counsel? | 09:12:29 |
| 24 | A    He is. | 09:12:29 |
| 25 | Q    Is he representing you today? | 09:12:29 |

Page 9

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1      A     He is.                                              09:12:32
2      Q     Is he representing you personally?                  09:12:32
3      A     No.                                                 09:12:34
4      Q     And do you have any counsel representing you        09:12:35
5    personally?                                                 09:12:37
6      A     I do not.                                           09:12:38
7      Q     And who is Mr. Eiseman representing?                09:12:39
8      A     He's representing Google.                           09:12:43
9      Q     Have you had a chance to review deposition          09:12:44
10   procedures with Mr. Eiseman?                                09:12:48
11     A     I have.                                             09:12:50
12     Q     Do you understand generally how the deposition      09:12:50
13   will occur?                                                 09:12:54
14     A     I think I do.                                       09:12:55
15     Q     Okay.  So I'll just quickly go over ground          09:12:56
16   rules, just to make sure we're on the same page.            09:12:59
17           You know the deposition is a question-and-answer    09:13:02
18   format, correct?                                            09:13:04
19     A     I do.  Yes, I understand.                           09:13:05
20     Q     And so I'll try to ask precise questions.  I        09:13:07
21   can't promise I'm always going to do that, so if you don't  09:13:11
22   understand something I'm asking, will you agree to ask me   09:13:14
23   to clarify it?                                              09:13:18
24     A     I will.                                             09:13:20
25     Q     Okay.  And it's important to answer questions       09:13:20
```

Veritext Legal Solutions
866 299-5127

```
 1   specific pools of IP will be treated.                    14:03:22

 2   BY MR. PRITT:                                            14:03:26

 3       Q     When you say you would negotiate and address   14:03:26

 4   that directly, negotiate how specific pools of -- were you 14:03:28

 5   talking about addressing that in the merger agreements?  14:03:33

 6       A     Yes, and adjacent agreements too.              14:03:37

 7       Q     What sort of adjacent agreements?              14:03:46

 8       A     When we ███████████████, we had to             14:03:48

 9   figure out how to who handle the patents and work with   14:03:51

10   each other on defensive and offensive litigation with    14:03:55

11   respect to the patents, and that was a services agreement 14:03:58

12   that went on for hundreds of pages.                      14:04:00

13       Q     Anything besides merger and service agreements? 14:04:04

14             MR. EISEMAN:  Objection as to form.            14:04:15

15             THE WITNESS:  You can be creative in these     14:04:15

16   setting and call the agreements whatever you want, but   14:04:17

17   they would be part of the merger agreement.  They would be 14:04:18

18   referenced in the merger agreement.  There would be a    14:04:21

19   schedule to the merger agreement.                        14:04:24

20   BY MR. PRITT:                                            14:04:26

21       Q     Thank you.                                     14:04:26

22             Does Waymo perform its own M&A transactions?   14:04:32

23       A     ████████████████████████████████████████████████

     ████████████████████████████████████████████  █████████

     ████████████████████████████████████████████             14:04:48
```

Page 168

```
1      ████████████████████████████████████              14:04:52
2      Q    Has Waymo ever performed any M&A transactions?   14:04:57
3      A    ████████████████████████████████████████████     
       ████████████████████████████████████████   ████       
       ████████████████████████████████████████   ████       
       ████████████████████████████████████              14:05:17
7      Q    Those are the ones we referred to earlier?   14:05:17
8      A    Yes.                                         14:05:22
9      Q    Do you know what companies Waymo has looked at   14:05:22
10  in connection with the potential M&A transaction?        14:05:27
11     A    I do not.                                    14:05:30
12     Q    Other than ████████ M&A transactions that we  14:05:31
13  discussed earlier, are you aware of any autonomous       14:05:53
14  vehicles transaction that Google has entered into in the 14:06:00
15  past 24 months?                                          14:06:04
16          MR. EISEMAN:  Objection as to form.           14:06:06
17          THE WITNESS:  I'm not aware of any M&A        14:06:07
18  transactions.                                            14:06:09
19  BY MR. PRITT:                                            14:06:10
20     Q    The same is true for Waymo?                  14:06:13
21     A    Yes.                                         14:06:17
22     Q    Do you recall the deal terms and components of  14:06:18
23  the ████████████ transaction?                            14:06:27
24     A    Roughly, yes.                                14:06:31
25     Q    And what were they roughly?                  14:06:32
```

```
 1    A    ████████████████████████████████████████████████

      ████████████████████████████████████████████████

      ██████████████████████████████████                   14:06:47

 4    Q    Were there any terms and components that you    14:06:52

 5  recall roughly?                                        14:06:55

 6    A    It had -- every M&A deal has standard terms and 14:06:58

 7  provisions, confidentiality being one of them.  Those were 14:07:02

 8  all part of the term sheet.  But unusual provisions or 14:07:06

 9  sort of the spoke provisions, no, I'm not aware of --  14:07:11

10  other than ████████████████████████████████████  ████

    ██████████████████████████████████████████████    ████

    ██████████████████████████████                         14:07:36

13    Q    And are you aware of the deal terms and        14:07:38

14  components for the M&A transaction with Anthony's Robots 14:07:41

15  and 510 Systems?                                      14:07:48

16    A    I'm only barely aware.                          14:07:50

17    Q    How are you aware?                              14:07:52

18    A    I think these were smaller deals in the realm of 14:07:54

19  ████████████████████████████████  for two companies that 14:08:00

20  Anthony had started.                                  14:08:08

21    Q    Are you aware of any noncash components of the 14:08:09

22  deals?                                                14:08:13

23    A    It's possible we paid out in equity versus cash. 14:08:14

24  I don't remember.                                     14:08:16

25    Q    Is there a reason you might pay out in terms of 14:08:24
```

Page 170

1          I, the undersigned, a Certified Shorthand
2    Reporter of the State of California, do hereby certify:
3          That the foregoing proceedings were taken before
4    me at the time and place herein set forth; that any
5    witnesses in the foregoing proceedings; prior to
6    testifying, were duly sworn; that a record of the
7    proceedings was made by me using machine shorthand which
8    was thereafter transcribed under my direction; that the
9    foregoing transcript is a true record of the testimony
10   given.
11         Further, that if the foregoing pertains to the
12   original transcript of a deposition in a Federal Case,
13   before completion of the proceedings, review of the
14   transcript [ ] was [ ] was not requested.
15      I further certify that I am neither financially
16   interested in the action or a relative or employee of any
17   attorney or party to this action.
18      IN WITNESS WHEREOF, I have this date subscribed my
19   name.
20   Dated: August 18, 2017
21
22
23
24   _____
              NINA PAVONE
25            CSR NO. 7802