**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94101 | TEL (415) 875-6600

August 24, 2017

Magistrate Judge Jacqueline Scott Corley

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal., Case 3:17-cv-00939-WHA
      **Waymo's Motion to Compel Further 30(b)(6) Testimony from Uber**

Dear Judge Corley:

Please find below Plaintiff Waymo LLC's motion to compel further 30(b)(6) testimony from Uber.

Sincerely,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

quinn emanuel urquhart & sullivan, llp

01980-00104/9512690.1

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

Plaintiff Waymo LLC ("Waymo") moves the Court for an order compelling Uber to provide a witness to testify fully on Waymo's 30(b)(6) Topics 1, 9 and 10.  Uber designated Eric Meyhofer to testify on each of these topics, but he was not prepared to testify on these topics, as required by Rule 30(b)(6).  Fed. R. Civ. P. 30(b)(6) ("The persons designated must testify about information known or reasonably available to the organization").  A 30(b)(6) designee "must become educated and gain the requested knowledge to the extent reasonably available."  *Oracle America, Inc. v. Google, Inc.*, 2011 WL 3502481, *2 (N.D. Cal. Aug. 10, 2011) (quoting *Kelley v. Provident Life & Accident Ins. Co.*, 2011 WL 2448276 (S.D. Cal. June 20, 2011) (a Rule 30(b)(6) deponent's role is "to provide the entity's interpretation of events and documents"); *Int'l Assn of Machinists & Aerospace Workers v. Werner-Matsuda*, 390 F.Supp.2d 479 (D. Md. 2005) ("This means that Defendant is obligated to produce a 30(b)(6) witness who is thoroughly educated about the noticed deposition topics with respect to any and all facts known to Defendant or its counsel")).  Uber did not produce a witness that did so, and so Waymo respectfully requests that the Court order Uber to make Mr. Meyhofer available for deposition again on these Topics, or produce a different witness or witnesses adequately prepared to testify on these Topics.

1.   **Uber Should Produce a Witness to Testify on Levandowski's Involvement in the Development of LiDAR.**

Topic 1 goes to the very heart of Waymo's trade secret misappropriation claim.  Waymo alleges that Levandowski illicitly downloaded 14,000+ files containing proprietary, trade secret information, and took them with him to Ottomotto and Otto Trucking, and then on to Uber.  Topic 1 seeks testimony regarding "Levandowski's involvement in the development of LiDAR on behalf of Uber or Ottomotto."  (Ex. A.)  This is relevant information because Levandowski is at the center of this case.  He is the one that facilitated Uber's improper acquisition of Waymo's trade secrets and then led Uber's autonomous vehicle program for a year and a half.  Given his role, when granting Waymo's motion for a preliminary injunction, the Court ordered Uber to "(a) remove [Levandowski] from any role or responsibility pertaining to LiDAR; (b) take all steps in their power to prevent him from having any communication on the subject of LiDAR . . . and (c) prohibit him from consulting, copying, or otherwise using the downloaded materials in any way."  (Dkt. 433, at 23.)  The Court recognized the danger to Waymo of allowing Levandowski to continue to have any role in the development of LiDAR and Uber.  It follows that his role prior to that order is highly relevant to Waymo's claims.

Uber designated Mr. Meyhofer to testify on Topic 1 regarding Levandowski's involvement in the development of LiDAR, but he did little to prepare to testify.  (Ex. B, 141:24-146:14.)  He testified that he spoke to two individuals in addition to his own personal knowledge.  In preparation to testify on this topic, he did not even review Uber's Court-ordered log of communications with Levandowski relating to LiDAR, which would be an obvious document to review in preparing to testify as a corporate representative about Levandowski's involvement.  That document is incomplete.  Since Uber's most recent supplemental log, Uber has produced documents showing additional LiDAR-related communications between Mr. Levandowski and Uber employees that are not covered on the log, such as UBER00236495 (11/16/2016 text

message from Mr. Levandowski to Eric Meyhofer pertaining to LiDAR, produced by Uber on August 17) and UBER00301268 (6/21/2016 text message from Mr. Levandowski to Don Burnette pertaining to LiDAR, produced by Uber on August 23).

Waymo is entitled to discovery on Levandowski's involvement in the development of LiDAR, and Mr. Meyhofer was not prepared to provide it.  The Court should order Uber to provide a witness on this topic.

**2.     Uber Should Produce a Witness to Testify on Topics Relating to Damages.**

Topics 9 and 10 are directed at facts that are relevant to Waymo's damages caused by Uber's misappropriation of trade secrets.  Both seek information about Uber's financial investments in developing and deploying LiDAR-enabled autonomous vehicles.  Topic 9 seeks testimony regarding Defendants' investment related to its in-house LiDAR development:

> "UBER and OTTOMOTTO's investment in developing in-house LiDAR, including both any financial investment and any investment in terms of time and personnel."

Topic 10 seeks testimony on Defendants' commercial plans with respect to autonomous vehicles:

> Uber's and Ottomotto's plans with respect to commercializing autonomous vehicles, including specifically Uber's and Ottomotto's timeline for commercializing autonomous vehicles and Uber's and Ottomotto's anticipated or projected costs, revenues and profits regarding their commercialization of autonomous vehicles.

(Ex. A.)  Mr. Meyhofer was not prepared to testify as to either.

For example, when asked if he knew the amount Uber has invested in developing in-house LiDAR, Mr. Meyhofer could not answer. (Ex. B, 47:6-8 ("Q: Can you give me a number?  How much has Uber and Otto invested in developing in-house lidar?  A. Not at this time.")).  Uber may argue, as they did when the parties met and conferred, that the reason Mr. Meyhofer could not answer that question is because although the company has financial spreadsheets from which this information might be deduced, there is no document where a total number is reported.  That is no excuse.  Topic 9 clearly calls for a witness who can explain how much money ("the financial investment") Defendants invested in developing in-house LiDAR.  If the witnesses needed to consult more than one document to educate himself on Uber's "financial investment," Uber was obligated to ensure that he did so.

Likewise, when questioned about basic aspects of spreadsheets that Uber cited in its interrogatory response related to the development costs for in-house LiDAR, Mr. Meyhofer could not provide any insight.  He did not know whether the cost information reflected in the spreadsheets included the entire ATG group (*id.* 93:13-15), or whether the cost information included all costs incurred by Ottomotto before the Uber acquisition (96:17-25).  He could not explain what the spreadsheets represented.  (*Id.* at 97:18-3.)  He could not even confirm that the spreadsheets were accurate. (*Id.* at 98:25-101:5.)  When asked who might be most knowledgeable about the spreadsheets, Mr. Meyhofer identified Julie Pankow and Brent

Schwarz. (*Id.* at 102:21-103:18.) Yet, Mr. Meyhofer admitted that he did not discuss the spreadsheets with either one of them in advance of his deposition. (*Id.*)

Nor was Mr. Meyhofer any more prepared to answer questions about Topic 10, *i.e.* Uber's current and future plans to commercialize autonomous vehicles. For example, Mr. Meyhofer could not provide a date by which Uber plans to commercialize autonomous vehicles (Ex. B, 8:25-19:5.) And he could not estimate how much of Uber's current business will be supplanted by autonomous vehicles. (*Id.*, 34:16-35:11). Defendants claim that this information does not exist because no one knows when this technology will actually make it to market. That argument rings hollow. Topic 10 does not ask Defendants to predict the future. It simply asks for Defendants to state their plans with respect to commercialization. It is unreasonable to believe that Defendants do not have a position on this issue. Indeed, at least one other Uber witness testified that Uber has such forward-looking plans and even documents reflecting them. (*See e.g.*, Ex. C, 107:2-108:10 (describing plans for a launch in ▌, 304:4-13, 305:9-13.) Uber should be required to produce a witness that is educated to testify about the company's current and future plans.

In addition, Mr. Meyhofer admitted he had not reviewed any of the ▌ models Uber produced in response to Waymo's damages RFPs, all of which related to Uber's commercialization plans). (Ex. B, 74:2-11; 80:3-6; 86:3-12.) And even when confronted with basic questions regarding the commercialization models that Uber produced, Mr. Meyhofer provided no information. (87:12-24 ("Q. What are the assumptions that underlie the base case model, for example? A. I don't know. . . Q. What are the assumptions that underlie the conservative case? A. I don't know").) Further, although he testified that Uber's data analytics team or strategy team "does work in that area," Mr. Meyhofer himself "did not do any work with them to prepare for [the deposition]." (*Id.* at 35:7-11.) Mr. Meyhofer's lack of preparation with respect to Defendants' fundamental business models underscores the need for Defendants to produce another witness on Topic 10.

Mr. Meyhofer's lack of even basic preparation contravenes Judge Alsup's mandate that "deponents . . . make a good-faith effort to prepare for depositions." (Standing Order at ¶ 22). Despite this, Uber refuses to put forward another witness on these topics. Instead, Uber offered to submit written answers to any questions Waymo thought were inadequately answered in Mr. Meyhofer's deposition. This offer is insufficient. Not only has Defendants' failure to adequately prepare a witness already hampered Waymo's ability to build its case, the sheer scope of inadequate answers Mr. Meyhofer gave during his deposition would further penalize Waymo by forcing it to expend numerous additional hours attempting to procure the information Uber should have already provided. Further, written questions do not allow for follow-up as does a live deposition. Because Uber failed to provide a witness sufficiently knowledgeable on the Topics, Waymo requests that the Court order Uber to designate a new 30(b)(6) witness to answer Topics 9 and 10.