# EXHIBIT B
# FILED UNDER SEAL

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2         FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4                      - - -
 5    WAYMO, LLC,                   )
                                    )
 6                   Plaintiff,     )
                                    )
 7             vs.                  ) No. 3:17-CV-00939
                                    )
 8    UBER TECHNOLOGIES; INC.;      )
      OTTOMOTTO, LLC; and OTTO      )
 9    TRUCKING, LLC,                )
                                    )
10                   Defendants. )
11    _____
12
13        ATTORNEYS' EYES ONLY - HIGHLY CONFIDENTIAL
14
15        The videotaped 30(b)(6) deposition of ERIC
      MEYHOFER, called as a witness by the Plaintiff,
16    pursuant to notice and the Federal Rules of Civil
      Procedure pertaining to the taking of depositions,
17    taken before me, the undersigned, Rebecca L. Schnur,
      Notary Public in and for the Commonwealth of
18    Pennsylvania, at the offices of Reed Smith, LLP,
      225 Fifth Avenue, Pittsburgh, Pennsylvania  15222,
19    commencing at 9:20 a.m. on FRIDAY, AUGUST 18, 2017.
20
21
22
23
24    Job No. 2681788B
25    Pages 1 - 259
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | (Whereupon, Deposition Exhibit 877 was marked | 09:22:46 |
| 2 | for identification.) | 09:22:46 |
| 3 | Q.   Okay.  So I've placed in front of you two | 09:22:46 |
| 4 | documents, two exhibits, Exhibit 876, which is Waymo's | 09:22:50 |
| 5 | 30(b)(6) notice to Uber -- | 09:22:54 |
| 6 | A.   Uh-huh. | 09:22:57 |
| 7 | Q.   -- then an e-mail dated August 7 (sic), that | 09:22:57 |
| 8 | is marked as Exhibit 877. | 09:22:59 |
| 9 | Do you see that? | 09:23:01 |
| 10 | A.   Yes, I do. | 09:23:03 |
| 11 | Q.   Why don't we start actually with Exhibit 877. | 09:23:04 |
| 12 | Do you see your name listed? | 09:23:08 |
| 13 | A.   Yes, I do. | 09:23:09 |
| 14 | Q.   And it lists topics 1, 2, 3, 9, and 10.  Do | 09:23:10 |
| 15 | you see that? | 09:23:14 |
| 16 | A.   I see that. | 09:23:14 |
| 17 | Q.   So if we can turn to Exhibit 876 and we can | 09:23:15 |
| 18 | go to the section of the document starting on page 6, | 09:23:21 |
| 19 | entitled "Deposition Topics" -- let me know when you're | 09:23:24 |
| 20 | there. | 09:23:28 |
| 21 | A.   I'm there. | 09:23:29 |
| 22 | Q.   Mr. Meyhofer, are you prepared to testify on | 09:23:30 |
| 23 | behalf of defendants Uber and Otto on behalf of -- for | 09:23:33 |
| 24 | topic number 1? | 09:23:37 |
| 25 | A.   Yes, I am. | 09:23:41 |

Page 8

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   You hesitated.  Are you not sure? | 09:23:44 |
| 2 | A.   Well, Uber and Otto, I'm just -- I was just | 09:23:45 |
| 3 | clarifying that I'm going to -- representing them both | 09:23:48 |
| 4 | because I thought we said earlier this was Uber, and | 09:23:51 |
| 5 | then this says Uber and Otto, but, yes. | 09:23:53 |
| 6 | Q.   Okay.  All right.  So to reiterate, you are | 09:23:56 |
| 7 | prepared to testify on behalf of Uber and Otto with | 09:24:01 |
| 8 | regard to topic number 1? | 09:24:04 |
| 9 | A.   Yes. | 09:24:05 |
| 10 | MR. HUME:  If you could, just give me a | 09:24:06 |
| 11 | moment to object to each question. | 09:24:07 |
| 12 | When you say "Otto," are you referring to -- | 09:24:09 |
| 13 | I think it's a little unclear the way that -- I | 09:24:13 |
| 14 | mean, Uber now owns Ottomotto. | 09:24:14 |
| 15 | Q.   Yeah.  So if you look at the front of | 09:24:19 |
| 16 | Exhibit 876, you see it says it's Rule 30(b)(6) Notice | 09:24:22 |
| 17 | to Uber and Ottomotto.  That's what I'm referring to. | 09:24:24 |
| 18 | A.   Uh-huh. | 09:24:29 |
| 19 | Q.   So if we can go to number 2, Mr. Meyhofer, | 09:24:33 |
| 20 | are you prepared to testify on behalf of the company | 09:24:41 |
| 21 | with regard to topic number 2 in Waymo's 30(b)(6) | 09:24:43 |
| 22 | notice? | 09:24:47 |
| 23 | A.   Yes, I am. | 09:24:48 |
| 24 | Q.   And this means you are prepared to testify on | 09:24:49 |
| 25 | behalf of Uber on the state and status of Uber's lidar | 09:24:52 |

Page 9

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | development for autonomous vehicles before | 09:24:58 |
| 2 | January 2016.  Is that correct? | 09:24:59 |
| 3 | MR. HUME:  I'm going to object to that | 09:25:01 |
| 4 | question.  We have objections to this and stated, | 09:25:02 |
| 5 | I mean, a little more precisely what we were going | 09:25:04 |
| 6 | to produce Mr. Meyhofer to talk about, which is | 09:25:09 |
| 7 | development of Uber's lidar between January 2015 | 09:25:12 |
| 8 | and January 2016. | 09:25:17 |
| 9 | Q.   With that clarification from your counsel, | 09:25:19 |
| 10 | can you answer my question, please. | 09:25:23 |
| 11 | A.   Yes, I am prepared. | 09:25:25 |
| 12 | Q.   And the same for topic number 1, are you | 09:25:28 |
| 13 | prepared to testify on behalf of defendants Uber and | 09:25:31 |
| 14 | Ottomotto with regard to Anthony Levandowski's | 09:25:35 |
| 15 | involvement in the development of lidar on behalf of | 09:25:39 |
| 16 | Uber and Ottomotto? | 09:25:42 |
| 17 | A.   Yes, I am. | 09:25:44 |
| 18 | Q.   Topic number 3, you see that one? | 09:25:47 |
| 19 | A.   Uh-huh. | 09:25:50 |
| 20 | Q.   Are you prepared to testify on behalf of Uber | 09:25:51 |
| 21 | and Ottomotto for topic number 3? | 09:25:53 |
| 22 | A.   I am. | 09:25:56 |
| 23 | Q.   All right.  We can go to topic number 9.  Are | 09:26:01 |
| 24 | you prepared to testify on behalf of Uber and Otto with | 09:26:05 |
| 25 | regard to topic number 9? | 09:26:08 |

Page 10

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   I am. | 09:26:09 |
| 2 | Q.   Are you prepared to testify on behalf of Uber | 09:26:10 |
| 3 | and Ottomotto with regard to topic number 10? | 09:26:12 |
| 4 | A.   I am. | 09:26:16 |
| 5 | Q.   Now, why don't we start with topic number 9. | 09:26:23 |
| 6 | What did you do to prepare to testify on behalf of the | 09:26:26 |
| 7 | company for topic number 9? | 09:26:31 |
| 8 | A.   I requested from counsel a few documents that | 09:26:36 |
| 9 | are in this folder and I believe you've been provided. | 09:26:39 |
| 10 | I spoke with Julie Rice Pankow who is the finance | 09:26:43 |
| 11 | person who would be most prepared to gather this sort | 09:26:55 |
| 12 | of information. | 09:26:57 |
| 13 | Q.   Anything else? | 09:27:02 |
| 14 | A.   Reviewed the documents, and then there was | 09:27:04 |
| 15 | also a spreadsheet that -- or a couple of spreadsheets | 09:27:06 |
| 16 | that were e-mailed over, that I reviewed as well. | 09:27:11 |
| 17 | Q.   That counsel for Waymo e-mailed over? | 09:27:15 |
| 18 | A.   No.  They were prepared by Julie. | 09:27:19 |
| 19 | Q.   Anything else? | 09:27:27 |
| 20 | A.   (No verbal response.) | 09:27:29 |
| 21 | Q.   Sorry.  You have to give audible answers. | 09:27:30 |
| 22 | A.   I don't believe so, no. | 09:27:33 |
| 23 | Q.   Before we go any further, what is your | 09:27:36 |
| 24 | current title? | 09:27:39 |
| 25 | A.   I'm the head of the Advanced Technologies | 09:27:40 |

Page 11

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    Group.                                             09:27:44
 2         Q.   Generally, what does being the head of Uber's   09:27:44
 3    Advanced Technologies Group entail?                09:27:48
 4         A.   So ATG is a pretty large entity.  It's about   09:27:51
 5    ███████) people fully devoted to developing autonomous   09:27:58
 6    ride-sharing technology.  And as the head of that, I'm   09:28:03
 7    responsible for multiple offices and the technology   09:28:08
 8    that we develop.  So that responsibility includes or   09:28:13
 9    focuses on building these teams, as the type of growth   09:28:19
10    that we're in; enabling the teams, giving them the   09:28:22
11    tools and resources that they need to perform; making   09:28:26
12    sure that we have well-defined objectives, and making   09:28:30
13    sure that we're meeting the objectives or have plans to   09:28:36
14    meet the objectives; communicating those very well with   09:28:39
15    the team, inspiring them, keeping them in a state of   09:28:42
16    excitement and energy about the mission that we're on.   09:28:51
17    And the reason for that is, we do this with as much of   09:28:54
18    ourselves as we can, so we need to really enjoy it.   09:29:02
19    You get more from people that way.                 09:29:05
20         And I think it's really important that we     09:29:06
21    understand that, as the head -- I have ██████ people so,   09:29:09
22    I need to build strong teams directly beneath me and   09:29:14
23    ensure that they have strong teams directly beneath   09:29:18
24    them, and maintain skip-level communication and   09:29:21
25    maintain solid communication with the entire org.   09:29:27
```

Page 12

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   What do you mean by "skip-level | 09:29:30 |
| 2 | communication"? | 09:29:32 |
| 3 | A.   I'm sorry.  Skip level -- two rings.  So my | 09:29:32 |
| 4 | first ring would be my direct.  My second ring would be | 09:29:35 |
| 5 | their directs.  So keeping -- keeping tabs on the | 09:29:39 |
| 6 | leadership qualities that they have, making sure they | 09:29:47 |
| 7 | have the training that they need and that their careers | 09:29:50 |
| 8 | are growing in a way that matters so that they can | 09:29:54 |
| 9 | build this technology. | 09:29:57 |
| 10 | So it's important -- I don't -- as head, you | 09:29:59 |
| 11 | don't -- my responsibility is to build the team to | 09:30:02 |
| 12 | build the product. | 09:30:05 |
| 13 | Q.   And you said "I don't" or "you don't," | 09:30:09 |
| 14 | meaning -- | 09:30:10 |
| 15 | A.   I'm not responsible for -- I can't -- this | 09:30:11 |
| 16 | isn't a 20-person effort, and so I can't build a team | 09:30:15 |
| 17 | of 20 people and be intimate with everything they do | 09:30:18 |
| 18 | every day, so I have to build a team of people that can | 09:30:22 |
| 19 | build a team of people and cascade. | 09:30:26 |
| 20 | Q.   Okay.  Turning back -- well, actually, before | 09:30:36 |
| 21 | we do that, so I take it from your answer that means | 09:30:40 |
| 22 | that you are not involved in the day-to-day engineering | 09:30:43 |
| 23 | of the project? | 09:30:47 |
| 24 | A.   It depends on which project, but, typically, | 09:30:48 |
| 25 | it isn't like that. | 09:30:51 |

Page 13

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.    And you said, "it depends."  What projects | 09:30:52 |
| 2 | are you involved with the day-to-day engineering? | 09:30:54 |
| 3 | A.    I'm not involved in the day-to-day | 09:30:57 |
| 4 | engineering of any project, but on a particular day, I | 09:30:59 |
| 5 | may be involved in engineering aspects of the project. | 09:31:02 |
| 6 | But it isn't -- it isn't the thing that I get to do as | 09:31:05 |
| 7 | much as I would like. | 09:31:09 |
| 8 | Q.    Sometimes you have to make sure that -- the | 09:31:10 |
| 9 | right number of showers in the bathroom, for example? | 09:31:13 |
| 10 | A.    That's a thing, for real. | 09:31:15 |
| 11 | Q.    For the bike commuters? | 09:31:18 |
| 12 | A.    Yep.  It's actually a law. | 09:31:19 |
| 13 | Q.    Let's go back to topic number 9. | 09:31:23 |
| 14 | And before we do that, I want to go to topic | 09:31:28 |
| 15 | number 10.  What did you do for topic -- to prepare to | 09:31:31 |
| 16 | testify on behalf of the company for topic number 10? | 09:31:35 |
| 17 | A.    Okay.  I had a phone call with Brian | 09:31:41 |
| 18 | Cullinane, who is our head of product. | 09:31:46 |
| 19 | Q.    How do you spell his last name? | 09:31:51 |
| 20 | A.    C-u-l-l-i-n-a-n-e. | 09:31:52 |
| 21 | I also spoke with Brian Zajac, who is our | 09:31:58 |
| 22 | head of hardware.  Z-a-j-a-c. | 09:32:04 |
| 23 | Q.    Anything else? | 09:32:12 |
| 24 | A.    No. | 09:32:13 |
| 25 | Q.    What did Mr. Cullinane -- | 09:32:14 |

Page 14

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   Cullinane. | 09:32:18 |
| 2 | Q.   -- Cullinane -- what did you and he speak | 09:32:19 |
| 3 | about? | 09:32:22 |
| 4 | A.   ██████████████████████████ | 09:32:23 |
| 5 | ████████████████████████ | 09:32:27 |
| 6 | Q.   Anything else? | 09:32:29 |
| 7 | A.   ████████████████████████████████ | 09:32:43 |
| 8 | ██████████████████████████ | |
| 9 | He and I work together on many things that | 09:32:50 |
| 10 | revolve around building the best team dynamic we can. | 09:32:56 |
| 11 | So my direct team, which he is a part of -- Brian Zajac | 09:32:59 |
| 12 | is a part of -- the kind of chemistry and synergy | 09:33:06 |
| 13 | between that team is very important because that's my | 09:33:12 |
| 14 | entire front.  That's my front end of the organization. | 09:33:15 |
| 15 | So they touch the next ten people, and so that's where | 09:33:18 |
| 16 | the force multiplication occurs. | 09:33:22 |
| 17 | So how we perform as a team, as a directs | 09:33:25 |
| 18 | team, is really important, so we spend a lot of time on | 09:33:28 |
| 19 | that.  So we talked about that as well. | 09:33:31 |
| 20 | Q.   In preparation to testify on behalf of the | 09:33:33 |
| 21 | company -- | 09:33:35 |
| 22 | A.   No. | 09:33:35 |
| 23 | Q.   -- with regard to the topic? | 09:33:36 |
| 24 | A.   I'm sorry. | 09:33:37 |
| 25 | Q.   Yeah.  So let me focus you a little bit more. | 09:33:38 |

Page 15

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    My question was:  What did you and Mr. Cullinane speak      09:33:40

2    about in preparation to testify on topic number 10 on       09:33:44

3    behalf of Uber and Ottomotto?                               09:33:49

4         A.   So we talked about the fact that -- ████████████
```

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

```
                                                             09:34:43
```

███████████████████████████████████████████████

```
18        ████ is a very, very tall mountain, and it's a       09:34:47

19   mountain that no one has ever climbed before.  And for      09:34:53

20   us to climb that mountain and go and look at it, it's       09:34:58

21   overwhelming.  So what we have to do is build base          09:35:02

22   camps as we go up this mountain.  These base camps are      09:35:06

23   things that we use to describe to the team that are         09:35:10

24   motivational and their digestible; they're bits that        09:35:12

25   they can understand how to get to.  It takes away some      09:35:16
```

Page 16

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    of the overwhelming feeling of what we're doing.        09:35:20

 2         The vision to the top of that mountain is my        09:35:22

 3    responsibility and my leads' responsibilities, and      09:35:25

 4    deriving the location or descriptions of these base     09:35:27

 5    camps are what Cullinane and I work on.  And that's     09:35:32

 6    ████████████████████████████████████████████████████

 ▮    ████████████████████████████████████████████████████

 ▮    ████████████████████████████████████████████████████

 ▮    ████████████████████████████████████████████████████

10         Q.   When is Uber planning to commercialize the    09:35:48

11    autonomous vehicles?                                    09:35:52

12         A.   ████████████████████████████████████████████

 ▮    ████████████████████████████████████████████████████

 ▮    ████████████████████████████████████████████████████

 ▮    ████████████████████████████████████████████████████

 ▮    ████████████████████████████████████████████████████

 ▮    ████████████████████████████████████████████████████

 ▮    ████████████████████████████████████████████████████

 ▮    ████████████████████████████████████████████████████

 ▮    ████████████████████████████████████████████████████

 ▮    ███████████████████████████████████████              09:36:28

23         Q.   ████████████████████████████████████████████

 ▮    ██████████████████████████████████████████           09:36:36

25         MR. HUME:  Objection to the form.                  09:36:38
```

Page 17

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1      A. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████          09:37:08

7        MR. HUME:  Objection to the form.    09:37:11

8        Just give me a moment to object each time.  09:37:12

9 ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████      09:38:13

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



09:39:32

Page 19

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1  ████████████████████████████████████████████

   ██  ████████████████                          10:00:29

3        MR. HUME:  Object to the form and possibly    10:00:35

4     outside the scope.                          10:00:37

5        Is this within the scope of topic 10?    10:00:40

6     Q.   Go ahead.                              10:00:42

7        MR. HUME:  I'm going to object as outside the    10:00:43

8     scope.                                      10:00:44

9     A.   Can you repeat it.                      10:00:45

10 ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████████████████

   ██ ████████████████████████████████            10:01:30

                                                  Page 34

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    Q. ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄                    10:01:46

7    Q.   Are you aware of any analysis on the size of   10:01:50

8    the autonomous vehicle market within Uber?          10:01:55

9    A.   I believe our data analytics team or our       10:01:58

10   strategy team does work in that area.  I did not do any   10:02:03

11   work with them to prepare for this.                 10:02:06

12   Q.   I want to talk about the state of Uber's       10:02:11

13   autonomous vehicle technology as of today.  Is that all   10:02:14

14   right?                                              10:02:17

15   A.   Okay.                                          10:02:17

16   ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄                    10:02:54

Page 35

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | developing in-house lidar.  Right? | 10:17:38 |
| 2 | A.   That's correct. | 10:17:40 |
| 3 | Q.   And you prepared to testify on that topic. | 10:17:41 |
| 4 | Right? | 10:17:43 |
| 5 | A.   Uh-huh.  That's correct. | 10:17:44 |
| 6 | Q.   Can you give me a number?  How much has Uber | 10:17:45 |
| 7 | and Otto vested in developing in-house lidar? | 10:17:47 |
| 8 | A.   Not at this time. | 10:17:51 |
| 9 | Q.   Would you agree that a substantial portion of | 10:17:51 |
| 10 | the Otto acquisition was to develop in-house lidar? | 10:17:55 |
| 11 | MR. HUME:  Objection to the form and outside | 10:18:01 |
| 12 | the scope. | 10:18:02 |
| 13 | A.   Would I agree that a substantial portion of | 10:18:13 |
| 14 | the investment in Otto was to develop in-house lidar? | 10:18:14 |
| 15 | I would not agree to that. | 10:18:18 |
| 16 | I would say that the team that Otto had was | 10:18:20 |
| 17 | important in our development and our continued | 10:18:31 |
| 18 | development of our in-house lidar, and that the market | 10:18:35 |
| 19 | size of freight and trucking is very substantial.  And | 10:18:39 |
| 20 | I don't know how I could compare -- it's an unknown | 10:18:45 |
| 21 | market, and it's an unknown value of that lidar.  I | 10:18:49 |
| 22 | don't know how to compare them. | 10:18:53 |
| 23 | Q.   Have you ever heard of Otto referred to as a | 10:18:56 |
| 24 | LaserCo? | 10:19:01 |
| 25 | A.   I have not heard that. | 10:19:04 |

Page 47

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    Schneider's team.                                    11:07:23

2        Q.   You're not prepared to testify regarding the   11:07:25

3    content of Exhibit 882 today.  Is that fair?         11:07:27

4            MR. HUME:  Objection.  He hasn't reviewed the  11:07:30

5        whole document.                                  11:07:32

6        A.   I am happy to read through the doc and give  11:07:33

7    you my understanding of what questions you have about  11:07:35

8    it.                                                  11:07:37

9        Q.   Did you review this document in preparation  11:07:38

10   for your testimony today?                            11:07:39

11       A.   No, I did not.                               11:07:41

12       Q.   Okay.  The date of this document is May 20,  11:07:42

13   2016.  Right?                                         11:07:50

14       A.   That's correct.                              11:07:54

15       Q.   This was after Uber decided to buy Otto.     11:07:55

16   Correct?                                              11:07:59

17       A.   That is correct.                             11:08:02

18       Q.   Now, let's go to page ending in 572.  So the  11:08:03

19   page here ending in 572 of Exhibit 882, it refers to  11:08:25

20   some information from November 2015.  Correct?        11:08:31

21       A.   Yes.  That's correct.                        11:08:43

22       Q.   So these were Uber's estimates from a time    11:08:45

23   period before it acquired Otto.  Right?               11:08:48

24            You're on page 572?                          11:08:51

25       A.   That's correct.                              11:08:55
```

Page 74

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   before?                                              11:15:20

 2        A.   Nope.  I have not.                         11:15:21

 3        Q.   So it's fair to say that you did not review   11:15:23

 4   the content of Exhibit 883 to prepare to testify on    11:15:25

 5   behalf of the company today?                        11:15:28

 6        A.   That's correct.                           11:15:30

 7        Q.   All right.  So I want to contrast -- compare  11:15:31

 8   and contrast Exhibit 883 to Exhibit 882.            11:15:35

 9             Do you see Exhibit 882 is dated May 20, 2016?  11:15:39

10        A.   Uh-huh.                                    11:15:43

11        Q.   And Exhibit 883 also, ███████████' is      11:15:44

12   dated September 13, 2016?                            11:15:48

13        A.   I do.                                      11:15:51

14        Q.   So this is a few months later, same project.  11:15:52

15   Is that fair?                                        11:15:58

16        A.   That's -- yes.                             11:15:59

17        Q.   Okay.  If you can turn to the page ending in  11:16:00

18   490 --                                               11:16:11

19        A.   Got it.                                    11:16:12

20        Q.   -- the executive summary --               11:16:13

21        A.   Uh-huh.                                    11:16:15

22        Q.   -- you see where it says, "Results"?      11:16:16

23        A.   Uh-huh.                                    11:16:23

24   ████████████████████████████████████████████████████

     ████████████████████?                              11:16:29
```

Page 80

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████    11:23:52

3    Q.   I want to ask a more specific question.  I    11:23:54

4 want to ask questions about this page and where the    11:23:56

5 numbers come from on this page ending in 512 on page --    11:23:59

6 Exhibit 883.    11:24:04

7         Are you prepared to explain the numbers on    11:24:05

8 this page?    11:24:06

9    A.   I would need to have Jeff Schneider here to    11:24:07

10 do that accurately.    11:24:09

11    Q.   So "no"?    11:24:10

12    A.   Correct.    11:24:11

13         MR. JAFFE:  All right.  This is going to be    11:24:20

14    Exhibit 884.  This is UBER231748.  The first page    11:24:27

15    says ████████████████████████████    11:24:40

16         (Whereupon, Deposition Exhibit 884 was marked    11:24:53

17    for identification.)    11:24:53

18    Q.   Mr. Meyhofer, have you seen Exhibit 884    11:24:59

19 before just when I handed it to you right now?    11:25:02

20    A.   No, I have not.    11:25:04

21    Q.   Okay.  Do you know if this presentation is    11:25:06

22 referring to Ottomotto or Otto Trucking?    11:25:08

23    A.   I do not know which of the two it refers to.    11:25:14

24 I would assume it's one of them, because it    11:25:17

25 has "Freight" and "Trucking" on the page.    11:25:18

Page 86

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        Q.   So if you would just want to take a second to      11:25:21

2    look through the different pages, my question is:  Are      11:25:23

3    you prepared to testify regarding the numbers in this      11:25:27

4    document on behalf of the company?                         11:25:30

5        A.   No, I'm not.                                       11:25:32

6        Q.   So you can't explain where any of these           11:25:33

7    numbers came from or what they mean, sitting here          11:25:35

8    today?                                                      11:25:38

9        A.   No.  I'm sure it came from the finance team.      11:25:38

10   I can't explain them in detail, no.                        11:25:40

11       Q.   For example, if you go to the page ending in      11:25:44

12   750 --                                                     11:25:47

13       A.   Yes.                                              11:25:48

14       Q.   -- do you see where it refers to a "Base          11:25:49

15   Case," on the top?                                         11:25:51

16       A.   Yes.  Yes.  Yes.  Yes.  Yes.                      11:25:55

17       Q.   What are the assumptions that underlie the        11:25:57

18   base case model, for example?                              11:26:00

19       A.   I don't know.                                     11:26:02

20       Q.   And similarly, if we go to the next page, you     11:26:09

21   see there is a "Conservative Case."                        11:26:12

22            What are the assumptions that underlie the        11:26:16

23   conservative case?                                         11:26:18

24       A.   I don't know.                                     11:26:24

25       Q.   And if you look -- let's go back to the base      11:26:30
```

Page 87

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | summary without them having the ability to actually say | 11:34:46 |
| 2 | who's working on what. This is the best data they | 11:34:51 |
| 3 | could probably come up with at the time. | 11:34:54 |
| 4 | Q. I want to be a little more pointed about | 11:34:56 |
| 5 | this. You're assuming. I don't want you to assume. | 11:34:59 |
| 6 | If you don't know, that's okay, but I just | 11:35:01 |
| 7 | want to know: Does this include only people working on | 11:35:04 |
| 8 | lidar? | 11:35:09 |
| 9 | A. I don't -- | 11:35:09 |
| 10 | MR. HUME: Objection. Sorry. Objection to | 11:35:10 |
| 11 | the form. | 11:35:15 |
| 12 | A. I don't know that. | 11:35:15 |
| 13 | Q. Does this include cost information for the | 11:35:17 |
| 14 | entire ATG group? | 11:35:19 |
| 15 | A. I don't know that. | 11:35:21 |
| 16 | Q. Does this exclude people working on the | 11:35:23 |
| 17 | supply chain? | 11:35:25 |
| 18 | A. I don't know that. | 11:35:28 |
| 19 | Q. Does this include or exclude people working | 11:35:30 |
| 20 | in operations? | 11:35:32 |
| 21 | A. I don't know that. | 11:35:34 |
| 22 | Q. Does this include salary information for | 11:35:36 |
| 23 | temps, vendors, and contractors? | 11:35:40 |
| 24 | A. It appears to include some of that. | 11:35:42 |
| 25 | Q. Does it include all of it? | 11:35:45 |

Page 93

| | | |
|---|---|---|
| 1 | MR. HUME:  Objection to form. | 11:40:26 |
| 2 | A.  I reviewed only 878. | 11:40:36 |
| 3 | Q.  Okay.  So you didn't review and prepare to | 11:40:39 |
| 4 | testify regarding the third and fourth supplemental | 11:40:43 |
| 5 | responses to Uber's interrogatory number 3.  Is that | 11:40:46 |
| 6 | fair? | 11:40:50 |
| 7 | A.  That's fair. | 11:40:51 |
| 8 | Q.  Even so, I want to try to plod along as best | 11:40:55 |
| 9 | we can here.  So if you look at page 18 of Exhibit 885, | 11:41:00 |
| 10 | do you see that it cites UBER232454? | 11:41:06 |
| 11 | A.  Yes. | 11:41:14 |
| 12 | Q.  And then, it says that that document relates | 11:41:15 |
| 13 | to costs incurred by Ottomotto before the acquisition | 11:41:18 |
| 14 | by Uber. | 11:41:23 |
| 15 | Do you see that? | 11:41:24 |
| 16 | A.  Yes. | 11:41:25 |
| 17 | Q.  Do you agree that the spreadsheet UBER232454 | 11:41:26 |
| 18 | represents the costs incurred by Ottomotto before the | 11:41:32 |
| 19 | acquisition by Uber? | 11:41:35 |
| 20 | A.  I agree that it relates to the costs incurred | 11:41:37 |
| 21 | by Ottomotto before the acquisition of Uber. | 11:41:39 |
| 22 | Q.  Does it represent the costs, or no? | 11:41:42 |
| 23 | A.  I believe that it represents some of the | 11:41:45 |
| 24 | costs.  I can't attest to whether or not it represents | 11:41:47 |
| 25 | all of the costs.  It's 41,000 lines. | 11:41:51 |

Page 96

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        Q.   Well, looking at this spreadsheet 232454         11:41:57

2    that's loaded up on the computer in front of you, how      11:42:01

3    would one figure out the total amount of costs incurred    11:42:05

4    by Ottomotto before its acquisition by Uber?               11:42:06

5        A.   I don't know that it would do this with only      11:42:10

6    this spreadsheet.                                          11:42:13

7             We don't have the accounting required to          11:42:14

8    accurately answer these kinds of questions.  We'd need     11:42:16

9    an expert to come in and go through this with us.          11:42:18

10       Q.   So you can't tell me, sitting here today, how     11:42:20

11   to figure out the total amount of costs incurred by        11:42:23

12   Otto before its acquisition by Uber?                       11:42:26

13       A.   Not with this one spreadsheet, no.                11:42:29

14       Q.   If you summed column AV, entered "net             11:42:31

15   amount," what would that sum give you?                     11:42:34

16       A.   AV sum amount --                                  11:42:41

17       Q.   And I'm not asking you to do the summation.       11:42:54

18            I'm asking:  What would the summation -- what     11:42:56

19   would that represent?  What would that number              11:42:59

20   represent?                                                 11:43:00

21       A.   It would represent -- it looks like a dump        11:43:01

22   from Oracle or from QuickBooks, all of the information     11:43:03

23   summarized in the query to that piece of software at       11:43:08

24   the time.                                                  11:43:13

25       Q.   Right.  What would that number mean?              11:43:14
```

Page 97

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   It wouldn't mean much to me.  It would mean | 11:43:16 |
| 2 | they tried to come up with all of the costs, and this | 11:43:18 |
| 3 | is the data they have. | 11:43:21 |
| 4 | Q.   Would that be the total amount of costs | 11:43:25 |
| 5 | incurred by Otto before its acquisition by Uber? | 11:43:26 |
| 6 | A.   I do not think so. | 11:43:30 |
| 7 | Q.   Okay. | 11:43:32 |
| 8 | A.   I think that it would be a part of those | 11:43:32 |
| 9 | costs and would need to be looked at in detail by | 11:43:34 |
| 10 | experts. | 11:43:38 |
| 11 | Q.   And if you look at column N, there's a | 11:43:41 |
| 12 | ▮▮▮▮▮▮' column. | 11:43:44 |
| 13 | A.   Yes. | 11:43:48 |
| 14 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 11:43:57 |
| 17 | A.   I don't know. | 11:44:00 |
| 18 | Q.   All right.  If you look at column P -- | 11:44:01 |
| 19 | A.   Yes. | 11:44:05 |
| 20 | Q.   -- there's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮' | 11:44:06 |
| 21 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮? | 11:44:14 |
| 23 | A.   I don't know -- | 11:44:20 |
| 24 | MR. HUME:  Objection as beyond the scope. | 11:44:20 |
| 25 | A.   I don't know that these are accurate.  I | 11:44:22 |

Page 98

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. JAFFE:  Okay.  Why don't we take our next | 11:49:15 |
| 2 | break. | 11:49:23 |
| 3 | MR. HUME:  Okay. | 11:49:24 |
| 4 | THE VIDEOGRAPHER:  This ends media number 2. | 11:49:25 |
| 5 | Going off the record, the time is 11:49 a.m. | 11:49:27 |
| 6 | (Recess taken.) | 12:12:49 |
| 7 | THE VIDEOGRAPHER:  This begins media | 12:13:06 |
| 8 | number 3.  We are on the record.  The time is | 12:13:07 |
| 9 | 12:12 p.m. | 12:13:10 |
| 10 | BY MR. JAFFE: | 12:13:11 |
| 11 | Q.  Welcome back, Mr. Meyhofer. | 12:13:11 |
| 12 | A.  Thank you. | 12:13:13 |
| 13 | Q.  Just to -- we were talking about two | 12:13:15 |
| 14 | spreadsheets that are loaded up on this laptop.  One is | 12:13:17 |
| 15 | 224219.  The other is 232454.  And as, I think, we | 12:13:20 |
| 16 | talked about before, you can't, sitting here today, | 12:13:26 |
| 17 | tell me what all the information in those means and | 12:13:30 |
| 18 | where -- the accuracy of the data in there. | 12:13:32 |
| 19 | Is that fair? | 12:13:34 |
| 20 | A.  That is correct. | 12:13:35 |
| 21 | Q.  So my question is:  Who would know the answer | 12:13:35 |
| 22 | to those questions? | 12:13:38 |
| 23 | A.  So I would -- I would work with Julie Pankow | 12:13:40 |
| 24 | and Brent Schwarz.  They're the two most knowledgeable | 12:13:45 |
| 25 | finance people at ATG.  And I would question the method | 12:13:50 |

Page 102

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | with which they pulled this data, how they categorized | 12:13:56 |
| 2 | it, and why they used that data. | 12:14:01 |
| 3 | Q.   And those conversations -- you didn't have | 12:14:03 |
| 4 | those conversations in preparation for your testimony | 12:14:05 |
| 5 | today? | 12:14:07 |
| 6 | A.   I had a conversation with Julie about the | 12:14:08 |
| 7 | difficulty of us producing all of this data, given that | 12:14:10 |
| 8 | we don't have this sort of tracking in place, but I | 12:14:14 |
| 9 | didn't talk with her specifically about this | 12:14:18 |
| 10 | spreadsheet. | 12:14:20 |
| 11 | Q.   About either of the spreadsheets? | 12:14:22 |
| 12 | A.   Correct. | 12:14:23 |
| 13 | Q.   So you didn't walk with Mr. Schwarz or | 12:14:24 |
| 14 | Ms. Pankow about how the data in these two spreadsheets | 12:14:27 |
| 15 | was generated, its accuracy, or any of those kinds of | 12:14:32 |
| 16 | topics? | 12:14:35 |
| 17 | A.   That is correct.  I did not talk to either of | 12:14:36 |
| 18 | them about the data in these spreadsheets. | 12:14:38 |
| 19 | Q.   Okay.  And if you wanted to get more | 12:14:40 |
| 20 | information, those would be the two people you would | 12:14:42 |
| 21 | ask? | 12:14:44 |
| 22 | A.   Oh, yes. | 12:14:45 |
| 23 | Q.   Was getting a custom lidar a motivating | 12:14:57 |
| 24 | factor in the decision to acquire Otto? | 12:15:00 |
| 25 | MR. HUME:  Objection. | 12:15:03 |

Page 103

| | | |
|---|---|---|
| 1 | Q.   I was going to read the topics.  Sorry.  I | 13:04:31 |
| 2 | realize now -- that makes sense. | 13:04:33 |
| 3 | You are designated to testify regarding topic | 13:04:36 |
| 4 | number 1 regarding Mr. Levandowski's development of | 13:04:38 |
| 5 | lidar? | 13:04:40 |
| 6 | A.   Yes. | 13:04:41 |
| 7 | Q.   What did you do to -- | 13:04:43 |
| 8 | MR. HUME:  I think -- just for the record, I | 13:04:44 |
| 9 | think he's designated only for Uber, I think. | 13:04:44 |
| 10 | Q.   What are -- | 13:04:50 |
| 11 | MR. JAFFE:  He's only designated -- I'm | 13:04:50 |
| 12 | sorry.  What did you say? | 13:04:52 |
| 13 | MR. HUME:  I think he's designated for | 13:04:52 |
| 14 | Levandowski's involvement in the development at | 13:04:55 |
| 15 | lidar at Uber, on behalf of Uber.  I don't know | 13:05:01 |
| 16 | that he can speak to what happened at Ottomotto. | 13:05:03 |
| 17 | MR. JAFFE:  So the designation did not say | 13:05:08 |
| 18 | that. | 13:05:11 |
| 19 | MR. HUME:  I'll check on a break.  Why don't | 13:05:12 |
| 20 | you ask him questions.  We'll see if we have an | 13:05:13 |
| 21 | Ottomotto designee separately.  Maybe not. | 13:05:17 |
| 22 | Q.   Okay.  Mr. Levandowski [sic], what did you | 13:05:19 |
| 23 | do to prepare -- not -- you are not Mr. Levandowski. | 13:05:23 |
| 24 | What did you do to prepare to testify about | 13:05:25 |
| 25 | Mr. Levandowski's development or contributions to | 13:05:28 |

Page 141

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | lidar? | 13:05:32 |
| 2 | A.   Again, I talked with Scott and James. | 13:05:40 |
| 3 | Q.   Anything else? | 13:05:56 |
| 4 | A.   No, I mean, unless you want to count Brian, | 13:05:57 |
| 5 | but -- | 13:05:59 |
| 6 | Q.   Did you review any documents to prepare to | 13:06:00 |
| 7 | testify regarding topic number 1? | 13:06:02 |
| 8 | A.   This is lidar work between -- just period, | 13:06:11 |
| 9 | total, of Anthony? | 13:06:14 |
| 10 | Q.   Yeah.  That's what topic number 1 says. | 13:06:18 |
| 11 | A.   Aside from working closely with him the whole | 13:06:21 |
| 12 | time and talking with James and Scott, that's all I | 13:06:24 |
| 13 | did. | 13:06:29 |
| 14 | Q.   So in preparing for your testimony on behalf | 13:06:32 |
| 15 | of at least Uber, you didn't review any documents? | 13:06:34 |
| 16 | A.   I don't remember if the documents I reviewed | 13:06:50 |
| 17 | were about topic 1 or were in search for other | 13:06:52 |
| 18 | documents, but no, I don't remember specifically | 13:06:57 |
| 19 | reviewing documents about this topic. | 13:06:58 |
| 20 | Q.   What did you and Mr. Boehmke discuss with | 13:07:06 |
| 21 | regard to topic number 1? | 13:07:09 |
| 22 | A.   ███████████████████████████████████████████ | |
| | ███████████████████████████████████████████████████ | |
| | ███████████████████████████████████████████████████ | |
| | ████████g -- and whether or not he -- when he started to | 13:07:31 |

Page 142

1  communicate with the NewCo consulting company, I wasn't          13:07:54

2  clear on.  That's what I recall.                                 13:08:03

3      Q.   What else -- so what did he tell you?                   13:08:16

4      A.   That the ████████████████████████████████████████

   ████████████████████████████████████████████████████████████

   ████████████████████████████████████████████████████████████

   ████████████████████████████████████████████████████████████

   ████████████████████████████████████████████████████████████

   ████████████████████████████████████████████████████████████

   ██████████████████████████████████████████ --                  13:08:54

11     Q.   What does that have to do with                         13:09:04

12  Mr. Levandowski?                                                13:09:05

13     A.   Well, remember, Anthony Levandowski's                   13:09:07

14  involvement in lidar was very limited in that he was            13:09:10

15  the head of ATG.                                                13:09:13

16     Q.   Let me -- let me back up.  So I'm trying to             13:09:15

17  get at -- topic number 1 is Mr. Levandowski's                   13:09:18

18  involvement in the development of lidar on behalf of            13:09:22

19  Uber and Ottomotto.  Right?                                     13:09:24

20     A.   Uh-huh.                                                 13:09:25

21     Q.   You said one of the things that you did to             13:09:26

22  prepare for this topic was talk to Mr. Boehmke?                 13:09:28

23     A.   Uh-huh.                                                 13:09:31

24     Q.   What did Mr. Boehmke tell you about Anthony             13:09:32

25  Levandowski's involvement in the development of lidar?          13:09:33

                                                        Page 143

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   He told me specifically about his involvement | 13:09:36 |
| 2 | in it, and Anthony wasn't there.  Anthony's involvement | 13:09:38 |
| 3 | was very limited.  Anthony's involvement was | 13:09:42 |
| 4 | contributing a team. | 13:09:44 |
| 5 | Q.   So Mr. Boehmke told you that he had no | 13:09:47 |
| 6 | conversations with -- | 13:09:49 |
| 7 | A.   No, he did not. | 13:09:50 |
| 8 | Q.   Sorry.  Let me finish. | 13:09:52 |
| 9 | Mr. Boehmke told you that he had no | 13:09:54 |
| 10 | conversations with Anthony Levandowski about lidar? | 13:09:58 |
| 11 | A.   He told me he had lots of conversations about | 13:10:00 |
| 12 | it.  He was driving the spec.  Scott was. | 13:10:02 |
| 13 | Q.   So they were talking about lidar all the | 13:10:06 |
| 14 | time? | 13:10:07 |
| 15 | A.   They talked -- no, they weren't talking about | 13:10:08 |
| 16 | lidar all the time.  But they talked about various | 13:10:10 |
| 17 | suppliers, ████ you know, all the different kinds of | 13:10:11 |
| 18 | people that we assessed the technology of, the ████ | 13:10:15 |
| 19 | ████ | 13:10:18 |
| 20 | Q.   So what did Mr. Boehmke tell you about | 13:10:21 |
| 21 | Anthony Levandowski's development of lidar on behalf of | 13:10:24 |
| 22 | Uber or Otto? | 13:10:28 |
| 23 | A.   Specifically, when I talked to him regarding | 13:10:31 |
| 24 | this, very little.  But we've been working together on | 13:10:32 |
| 25 | this for the whole time. | 13:10:35 |

Page 144

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | So my preparation for this, my conversation | 13:10:39 |
| 2 | with Scott was very brief about this. | 13:10:42 |
| 3 | Q.   And then, you spoke with Mr. Haslim as well? | 13:10:44 |
| 4 | A.   Uh-huh. | 13:10:48 |
| 5 | Q.   What did Mr. Haslim tell you about | 13:10:48 |
| 6 | Mr. Levandowski's involvement in the development of | 13:10:51 |
| 7 | lidar? | 13:10:53 |
| 8 | A.   That Anthony's involvement in the development | 13:10:53 |
| 9 | of lidar was minimal in that he was in and out of the | 13:10:56 |
| 10 | office all the time and would provide a sense of | 13:11:00 |
| 11 | urgency and a cadence for getting minimum viable | 13:11:05 |
| 12 | products built, that the majority of the design and | 13:11:10 |
| 13 | specifics and details Anthony was not aware of. | 13:11:16 |
| 14 | Q.   Was Anthony Levandowski a good engineer for | 13:11:21 |
| 15 | Uber? | 13:11:24 |
| 16 | A.   Anthony wasn't an engineer at Uber. | 13:11:28 |
| 17 | Q.   Did he provide any engineering input at all? | 13:11:31 |
| 18 | MR. HUME:  Objection as outside the scope | 13:11:36 |
| 19 | unless it's within lidar. | 13:11:37 |
| 20 | Go ahead. | 13:11:39 |
| 21 | A.   Yes, he did.  He would give his, you know, | 13:11:40 |
| 22 | ideas on -- hey, how can we get there faster, or is | 13:11:46 |
| 23 | there a way to do that planner that was more efficient, | 13:11:51 |
| 24 | or maybe consider doing this -- using this team's | 13:11:54 |
| 25 | approach. | 13:11:58 |

Page 145

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | His role isn't to get into -- it's not like | 13:12:00 |
| 2 | he was doing touching CAD tools or doing, you know, | 13:12:04 |
| 3 | specified design work.  He was providing the | 13:12:06 |
| 4 | inspiration and the motivation and the fierceness and | 13:12:14 |
| 5 | trying to pull the team to go as fast as possible. | 13:12:20 |
| 6 | His engineering was limited to -- he would, | 13:12:23 |
| 7 | you know, pop in here and there and have conversations | 13:12:26 |
| 8 | with people and test their approaches. | 13:12:29 |
| 9 | Q.   He was in charge of the lidar development | 13:12:32 |
| 10 | effort.  Right? | 13:12:34 |
| 11 | A.   No. | 13:12:35 |
| 12 | Q.   "No"? | 13:12:35 |
| 13 | A.   No.  I was in charge of the lidar development | 13:12:36 |
| 14 | effort.  Anthony was in charge of ATG. | 13:12:42 |
| 15 | MR. HUME:  Are we getting close to a break? | 13:13:07 |
| 16 | We've been going a little more than an hour now. | 13:13:09 |
| 17 | MR. JAFFE:  Sure, if you'd like. | 13:13:11 |
| 18 | THE VIDEOGRAPHER:  Going off the record, the | 13:13:16 |
| 19 | time is 1:12 p.m. | 13:13:17 |
| 20 | (Luncheon recess taken.) | 13:56:21 |
| 21 | THE VIDEOGRAPHER:  This begins media | 13:57:24 |
| 22 | number 4.  We are on the record.  The time is | 13:57:25 |
| 23 | 1:57 p.m. | 13:57:29 |
| 24 | MR. JAFFE:  All right.  This is going to be, | 13:57:30 |
| 25 | I think, 887, labeled UBER118203. | 13:57:33 |

Page 146