QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br>     v.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO LLC'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON CERTAIN AFFIRMATIVE DEFENSES**<br><br>**<u>Hearing</u>:**<br>**Date: September 20, 2017**<br>**Time: 8:00 a.m.**<br>**Place: 8, 19th Floor**<br>**Judge: The Honorable William Alsup** |

TO DEFENDANTS UBER TECHNOLOGIES, INC., OTTOMOTTO LLC, AND OTTO TRUCKING LLC, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 20, 2017 at 8:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable William Alsup at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Waymo LLC ("Waymo") shall and hereby does move the Court for partial summary judgment against Defendants' affirmative defenses of

This motion is based on this notice of motion and supporting memorandum of points and authorities, reply briefing in further support of this motion and any supporting declarations and accompanying exhibits, as well as other written or oral argument that Waymo may present to the Court.

DATED: August 31, 2017            QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Charles K. Verhoeven*
   Charles K. Verhoeven
   Attorneys for Plaintiff Waymo LLC

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

I.  SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST DEFENDANTS' WAIVER DEFENSE ..............................................................................................................1

II. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S ESTOPPEL DEFENSE ...........................................................................................4

III. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S LACHES DEFENSE ..................................................................................................6

IV. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S STATUTE OF LIMITATIONS DEFENSE ..................................................6

V.  SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST UBER'S ACQUIESCENCE DEFENSE .........................................................................................7

VI. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S RELEASE DEFENSE .................................................................................7

VII. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST DEFENDANTS' FAILURE-TO-MITIGATE DEFENSE ............................................................................8

VIII. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S PREEMPTION DEFENSE ......................................................................9

IX. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S UNCLEAN HANDS DEFENSE ..............................................................9

X.  SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S PROSECUTION HISTORY ESTOPPEL DEFENSE ..............................10

XI. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S RES JUDICATA DEFENSE ................................................................10

CONCLUSION ............................................................................................................................10

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*,
No. CV 16-2499, 2017 WL 1105648 (E.D. Pa. Mar. 24, 2017) ............... 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............... 1

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006) ............... 10

*In re Cover's Estate*,
188 Cal. 133 (1922) ............... 4

*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*,
30 Cal. App. 4th 54 (1994) ............... 1, 2, 3

*Harrison v. Frye*,
148 Cal. App. 2d 626 (1957) ............... 7

*Hopkins v. Kedzierski*,
225 Cal. App. 4th 736 (2014) ............... 4

*Hynix Semiconductor Inc. v. Rambus Inc.*,
897 F. Supp. 2d 939 (N.D. Cal. 2012) ............... 9, 10

*Jade Fashion & Co. v. Harkham Indus., Inc.*,
229 Cal. App. 4th 635 (2014) ............... 9

*Jeong Soon v. Beckman*,
234 Cal. App. 2d 33 (1965) ............... 10

*Lund v. Bally's Aerobic Plus, Inc.*,
78 Cal. App. 4th 733 (2000) ............... 8

*Magic Kitchen LLC v. Good Things Int'l Ltd.*,
153 Cal. App. 4th 1144 (2007) ............... 6

*In re Marriage of Brinkman*,
111 Cal. App. 4th 1281 (2003) ............... 4

*Micro Star v. Formgen Inc.*,
154 F.3d 1107 (9th Cir. 1998) ............... 2

*Nelson v. Pima Cmty. Coll.*,
83 F.3d 1075 (9th Cir. 1996) ............... 10

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ............... 5

*Steinhart v. Cty. of Los Angeles*,
    47 Cal. 4th 1298 (2010) ................................................................................................... 5

*Surrell v. Cal. Water Serv. Co.*,
    518 F.3d 1097 (9th Cir. 2008) ......................................................................................... 6

*Waller v. Truck Ins. Exch., Inc.*,
    11 Cal. 4th 1 (1995) ......................................................................................................... 2

**Cases**

18 U.S.C. § 1836(d) ................................................................................................................. 7

18 U.S.C. § 1838 ...................................................................................................................... 9

35 U.S.C. § 286 ........................................................................................................................ 7

Cal. Civ. Code § 1541 .............................................................................................................. 8

Cal. Civ. Code § 3426.6 ........................................................................................................... 7

# INTRODUCTION

In their respective Answers, both defendants asserted a laundry list of every affirmative defense they could think of in response to Waymo's complaint.  The facts did not then, and do not now, support defendants' laundry list of affirmative defenses.  In response to the précis letter briefing preceding this summary judgment motion, Defendants Uber and Ottomotto (collectively "Uber") withdrew the following affirmative defenses: preemption, estoppel, license, and patent exhaustion. (Dkt. 1336-4 at 1.)  With this concession, the remaining affirmative defenses for which Waymo seeks summary judgment are Uber's defenses of acquiescence, waiver, failure to mitigate damages (Dkt. 704 at 21-22) and Otto Trucking's defenses of waiver, laches, estoppel, prosecution history estoppel, failure to mitigate damages, preemption, unclean hands, release, res judicata, statute of limitations (Dkt. 703 at 15-18).[1]

Defendants bear the burden of proof on all these defenses, yet Defendants have not and cannot come forward with any evidence to support them.  Indeed, despite Uber being permitted to serve 35 interrogatories, Otto Trucking serving 25 interrogatories, and Defendants taking (to date) 50 depositions, Defendants have not even *sought* facts that would support any of these affirmative defenses, let alone discovered any facts that would support them.  Thus, summary judgment should be granted against all these defenses in order to focus this case for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## I. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST DEFENDANTS' WAIVER DEFENSE

"Waiver is the intentional relinquishment of a known right after full knowledge of the facts . . . ." *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 59 (1994).  It is a stringent standard to meet: "The burden ... is on the party claiming a waiver of a

---

[1] Otto Trucking's MSJ Précis Opp. (Dkt. 1332-4) argues that "Waymo's précis is confusing as it identifies the affirmative defenses asserted by Uber/Ottomotto, but includes Otto Trucking in its request." (Otto Trucking MSJ Précis Opp. at 1.)  This statement by Otto Trucking makes no sense. Waymo's MSJ Précis (Dkt. 1301) expressly cited both Uber's and Otto Trucking's Answers (*see id.* at 1 ¶ 1) and challenged various defenses asserted in one or both Answers.  Any suggestion that Waymo's MSJ Précis did not encompass Otto Trucking's defenses is disingenuous.

right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver.'" *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 31 (1995) (ellipses in original, citation omitted).  No reasonable factfinder could find that Defendants have met that stringent standard here.  There is nothing in the record suggesting that Waymo intentionally relinquished its right to sue Defendants for trade secret misappropriation, much less that Waymo did so "after full knowledge of the facts."

Uber argues that it has a plausible waiver defense because "Waymo knew, at least as of August 18, 2016, that it was investigating Mr. Levandowski's alleged downloading activity; that Levandowski had pursued a self-driving venture; and that [Uber] acquired Levandowski's start-up.  Waymo sat on these facts for months."  (Uber MSJ Précis Opp. (Dkt. 1336-4) at 2.)  But this allegation fails to show waiver as a matter of law.  Uber cannot show that merely "sitting on facts" creates a waiver because waiver must be "manifested by some overt act indicating an intention to abandon that right." *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998).  Waymo's purported "inaction" is thus insufficient on its own to show waiver.

Even if Waymo's alleged inaction could be enough to create a waiver (it cannot), Uber's waiver defense also fails because Uber cannot show that Waymo engaged in any inaction "after full knowledge of the facts." *DRG/Beverly Hills*, 30 Cal. App. 4th at 59.  Again, Uber argues that Waymo waived its trade secret rights by allegedly sitting on those rights for months after August 2016.  (Uber MSJ Précis Opp. at 2.)  But as Waymo has previously shown in connection with a similar "delay" argument asserted by Uber, Waymo did not have evidence that *Uber* was using its trade secrets at least until *December* 2016, when Waymo was inadvertently copied on an email from one of Uber's LiDAR component vendors showing a printed circuit board embodying several of Waymo's trade secrets.  (Dkt. 24 at 10-11; Dkt. 25-46; Dkt. 245-3 at 13-14.)  Waymo filed suit just nine weeks later – hardly an unreasonable length of time in which to authorize, prepare, and file a complex and high-stakes lawsuit, a detailed trade secret list and a motion for preliminary injunction.  Indeed, the Court previously found that Uber's delay argument "impeaches itself" in its Preliminary Injunction Order, finding further "that Waymo reasonably refrained from bringing suit until it discovered evidence indicating use, and that nothing about this course of action suggests a lack of urgency . . . ." (Dkt. 433

at 20.) Just as the purported "delay" did not show a lack of urgency then, it cannot now show that Waymo *intended* to relinquish its trade secret claims against Uber, as would be required to find a waiver. *DRG/Beverly Hills,* 30 Cal. App. 4th at 60 ("The pivotal issue in a claim of waiver is the intention of the party who allegedly relinquished the known legal right.").

For its part, Otto Trucking alleges waiver based on the following pieces of evidence concerning Mr. Levandowski, not Defendants, which occurred prior to Waymo's discovery of its trade secret misappropriation claims against Defendants: (1) a bonus/equity payment[2] that Waymo made to Mr. Levandowski in August 2016; and (2) the supposed "warm" and "congratulat[ory]" words that Waymo CEO John Krafcik had for Mr. Levandowski, not Uber or Otto Trucking, in April 2016. (Otto Trucking MSJ Précis Opp. (Dkt. 1332-4) at 2-3.) But this payment to Levandowski pursuant to the terms of the 2012 Chauffeur bonus plan, made prior to Waymo's discovery of Mr. Levandowski's trade secret theft, hardly demonstrates "relinquishment" of any right to bring a trade secret case against Otto Trucking. And purportedly "warm" or "congratulatory" words to Mr. Levandowski made months before Waymo discovered evidence showing that its trade secrets were being used by Defendants are categorically insufficient to show waiver of Waymo's claims against Uber and Otto Trucking for trade secret misappropriation.

Further, Otto Trucking does not and cannot show that Waymo took these actions "after full knowledge of the facts." *DRG/Beverly Hills*, 30 Cal. App. 4th at 59. Waymo did not even know that Mr. Levandowski had downloaded files until roughly late September 2016. (Dkt. 1227-4.) And more importantly – given that the asserted waiver is against Waymo's right *to sue Defendants for trade secret misappropriation* – Waymo did not learn that its trade secrets had been incorporated into any of Defendants' systems until December 2016. (Dkt. 433 at 5.) Thus, Waymo did not have "*full* knowledge of the facts" until at least that date. *DRG/Beverly Hills*, 30 Cal. App. 4th at 59 (emphasis added). It follows that any pre-December statements or actions taken by Waymo cannot waive Waymo's trade secret rights.

---

[2] The parties have disputed the proper characterization of this payment to Mr. Levandowski, though resolving that nomenclature dispute is not relevant to this Motion.

## II. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S ESTOPPEL DEFENSE

Uber has withdrawn its estoppel defense in response to Waymo's précis. Otto Trucking, however, continues to assert this defense based on the same facts it used to support its assertion of waiver, collapsing the two in the relevant section of its MSJ Précis Opp. and calling it a "waiver/estoppel" defense. (Otto Trucking MSJ Précis Opp. at 1.) As Uber concedes, Otto Trucking's evidence cannot establish an estoppel defense for the same reasons it cannot establish a waiver defense, and more.

Estoppel requires the following elements: "(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury." *Hopkins v. Kedzierski*, 225 Cal. App. 4th 736, 756 (2014). Like a waiver defense, the first element of an estoppel defense requires that the party to be estopped have *full* knowledge of the facts. *In re Cover's Estate*, 188 Cal. 133, 146 (1922) ("[T]o constitute an estoppel it must be made to appear that she [the person to be estopped] acted with full knowledge of all the material facts and circumstances and with full knowledge of her rights . . . ."). Moreover, like a waiver defense, an estoppel defense must be established by clear and convincing evidence. *In re Marriage of Brinkman*, 111 Cal. App. 4th 1281, 1289 (2003).

The first element, and by extension the second element, are quite obviously lacking. As explained above, Waymo did not have full knowledge of the facts when Mr. Krafcik made his "congratulatory" statements to Mr. Levandowski (not Otto Trucking) in April 2016 and when Waymo made its bonus/equity payment to Mr. Levandowski (not Otto Trucking) in August 2016. Waymo did not yet know that Mr. Levandowski had stolen Waymo's files at that time, and it certainly did not know that the information in those files had made its way into any of Defendants' LiDAR systems. Furthermore, absent any evidence that either Mr. Krafcik or Waymo knew that Waymo's trade secrets were being misappropriated, Otto Trucking also cannot show that the asserted conduct was intended to

act as a free pass for Otto Trucking to do so going forward. Thus, the first and second elements of estoppel are clearly not met here.

The final element of estoppel – reliance – is also clearly lacking. The alleged estoppel here would be that Otto Trucking supposedly relied on Waymo's conduct to infer that Waymo would not file suit for trade secret misappropriation. But the pre-suit record conclusively belies this assertion, because it shows that all Defendants were hypersensitive to the likelihood that Waymo **would** file suit for trade secret misappropriation. Indeed, Defendants engaged in a months-long due diligence process between February and August 2016, a central purpose of which was to assess the likelihood that Uber's acquisition of the Otto entities would cause Waymo to sue for trade secret misappropriation. (*See* Dkt. 566 at 2-5 (Judge Corley summarizing this due diligence process).) And the Court has found that the work-product and attorney-client privileges attach under the common interest doctrine of April 11, 2016, based on the representation made by Otto Trucking (and Uber) that they shared a joint common legal interest in defending against claims brought by Waymo.[3] (Dkt. 731, 949.) Thus, Otto Trucking clearly did not rely on Waymo's pre-suit conduct to infer that Waymo would ***not*** file suit.[4] If any form of estoppel applies on these facts, it is Otto Trucking that should be estopped – from asserting a defense that is premised on a position contrary to one it has previously taken in this litigation. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (finding the judicial estoppel doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase").

---

[3] The indemnification agreement between the parties, and the results of the due diligence process – which remain shielded by assertions of Fifth Amendment privilege, attorney-client privilege, work product protection, etc. pending the outcome of Mr. Levandowski's appeals to the Federal Circuit – further suggest that Otto Trucking was also not "ignorant of the true state of facts" such that the third estoppel element is not met either.

[4] One other point deserves mention. The California Supreme Court has stressed that "[i]n general, the law 'particularly' disfavors estoppels 'where the party attempting to raise the estoppel is represented by an attorney at law.'" *Steinhart v. Cty. of Los Angeles*, 47 Cal. 4th 1298, 1316 (2010). Here, both Defendants were represented by counsel during the aforementioned due diligence process. So estoppel is "particularly disfavor[ed]" here. *Id.*

## III. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S LACHES DEFENSE

Summary judgment should also be granted against Otto Trucking's laches defense. Here too, under the same fact pattern, Uber does not assert this defense – only Otto Trucking. To assert laches, "[a] defendant must demonstrate three elements to successfully assert a laches defense: (1) delay in asserting a right or a claim; (2) the delay was not reasonable or excusable; and (3) prejudice to the party against whom laches is asserted." *Magic Kitchen LLC v. Good Things Int'l Ltd.*, 153 Cal. App. 4th 1144, 1157 (2007). Here, as explained above and as noted by the Court in its Preliminary Injunction Order, Waymo did not have the full facts underpinning its claims until December 2016 at the earliest, and Waymo filed suit just nine weeks later. (*See* Dkt. 433 at 20.) A nine-week delay can hardly be deemed "unreasonable," particularly given the time that it took Waymo to authorize, prepare, and file a complex and high-stakes suit such as this one.

In any event, Otto Trucking cannot demonstrate any prejudice from Waymo's alleged delay. It cannot show that it would have changed its conduct or pursued a different development path had Waymo sued nine weeks earlier. Indeed, while Otto Trucking alleges (incorrectly) that Waymo has been on constructive notice of its claims as early as August 2016, Otto Trucking cannot show that it would have changed its conduct even if Waymo had sued back in August 2016.

Tellingly, the sole "explanation" of prejudice in Otto Trucking's MSJ Précis Opp. is the conclusory statement that "[t]his delay was unreasonable and prejudicial . . . ." (Otto Trucking MSJ Précis Opp. at 3.) For an affirmative defense on which Otto Trucking bears the burden of proof, such a conclusory statement is clearly insufficient. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008) ("Conclusory statements without factual support are insufficient to defeat a motion for summary judgment.").

## IV. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S STATUTE OF LIMITATIONS DEFENSE

As noted above, Waymo did not learn about Defendants' trade secret misappropriation and patent infringement activity—which began roughly a year before Waymo filed suit, give or take a few months—until weeks before it filed suit. Waymo filed well within the three-year limitations period

that applies to claims under DTSA and CUTSA. *See* 18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6. Likewise, all of Defendants' patent infringement occurred within the six-year damages window under 35 U.S.C. § 286. Waymo's claims carry no statute-of-limitations concerns.

## V. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST UBER'S ACQUIESCENCE DEFENSE

Just as Otto Trucking bundles its waiver defense with its estoppel defense, Uber bundles its waiver defense with its acquiescence defense. (*See* Uber MSJ Précis Opp. at 2 (referring to "acquiescence/waiver").) Here, it is Uber asserting a defense that Otto Trucking does not think is strong enough to include. But Uber's acquiescence defense has no more merit than its waiver defense.

"The equitable defense of acquiescence arises where the complainant has acquiesced in the violation of the same type of restriction by third parties. Where the complainant has failed to enforce a similar equitable servitude against third parties, he has debarred himself from obtaining equitable relief against the defendant for subsequent violations of the same character." *Harrison v. Frye*, 148 Cal. App. 2d 626, 630 (1957). Uber does not even try to identify any circumstances in which Waymo has "acquiesced" to the misappropriation of its trade secrets by others. Thus, any acquiescence defense must fail. And to the extent Uber tries to argue that Waymo acquiesced through the acts it points to in relation to waiver and estoppel, those facts do not show Waymo "acquiesced" to anything, much less acquiesced to anything Uber or Otto Trucking did. As with waiver and estoppel, that argument is clearly meritless.

## VI. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S RELEASE DEFENSE

Just as Uber and Otto Trucking cannot show that Waymo *waived* its claims, Otto Trucking cannot show that Waymo *released* its claims. Here, on the same factual record, it is Uber this time that does not believe it has a release defense – only Otto Trucking asserts it. But there is no written document purporting to release any of Waymo's claims against Otto Trucking (or Uber). And to the extent Otto Trucking argues that the conduct directed to Mr. Levandowski impliedly released any claims that Waymo had against Otto Trucking, an entity that Waymo did not even know existed prior to filing this lawsuit, this allegation is meritless. To constitute a valid release, "the release must be

clear, unambiguous and explicit in expressing the intent of the parties." *Lund v. Bally's Aerobic Plus, Inc.*, 78 Cal. App. 4th 733, 738 (2000) (internal quotation marks omitted). Mr. Krafcik's congratulatory comments and Waymo's payment to Mr. Levandowski did not even ***mention*** Defendants, much les serve as a "clear, unambiguous and explicit" statement that Waymo was waiving its yet-to-be-discovered legal claims against Defendants.

Moreover, if a purported release is not in writing, it must be supported by separate, new consideration. Cal. Civ. Code § 1541. The alleged congratulatory statements by Mr. Krafcik were wholly gratuitous and not supported by consideration at all, while the payment to Mr. Levandowski was part of a contract-based compensation program related to Mr. Levandowski's work at Waymo. Levandowski provided no "new" consideration for either of those actions. For this reason as well, these actions cannot be construed as a release of Waymo's claims against Defendants.

## VII. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST DEFENDANTS' FAILURE-TO-MITIGATE DEFENSE

Defendants have no evidence that Waymo failed to mitigate its damages, and therefore summary judgment should be granted against their failure-to-mitigate defense. To the extent Defendants argue that Waymo failed to mitigate damages by failing to sue as quickly as it could, this argument is unavailing. As explained above, Waymo brought suit within weeks of obtaining evidence of Defendants' patent infringement and trade secret misappropriation. Because any "delay" in bringing suit was *de minimis* at most, there could be no failure-to-mitigate defense based on any alleged delay.

There are also other reasons why the timing of Waymo's suit cannot give rise to any failure-to-mitigate defense. Waymo's damages case does not involve a damages theory that would yield a different damages number depending on the particular timing of Waymo's suit. Rather, Waymo bases its trade secret damages on the saved development costs and accelerated development timeline that Defendants were able to achieve through their use of Waymo's trade secrets. Uber's MSJ Précis Opp. argued that "[t]hese are precisely the type of damages that could have been mitigated with earlier notice as they affect the amount of time Uber allegedly benefited from using Waymo's material to catch up on Waymo's technological lead." (Uber MSJ Précis Opp. at 3.) But this makes no sense.

The length of the head start created by Uber's trade secret misappropriation does not depend on the timing of Waymo's suit. For example, if Uber could have developed a suitable LiDAR system in ten years using legitimate means, and in three years by using Waymo's trade secrets, then Uber's trade secret misappropriation gave it a seven-year head start. That seven-year number would not change depending on when Waymo brings suit. It is based solely on the difference between the amount of time that it would take Uber to develop the relevant technology through legitimate versus illegitimate means.

## VIII. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S PREEMPTION DEFENSE

Waymo's Federal DTSA claim does *not* preempt its California-law CUTSA claim. *See* 18 U.S.C. § 1838 (stating that DTSA does not preempt state-law claims or remedies); *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.,* No. CV 16-2499, 2017 WL 1105648, at *7 n. 17 (E.D. Pa. Mar. 24, 2017) ("Congress went out of its way to make clear that the DTSA does not preempt state trade secret laws.") Thus, Otto Trucking's (but not Uber's) preemption defense presumably was directed to Waymo's claim under the California Unfair Competition Law (UCL). This Court held that the UCL claim was indeed preempted by CUTSA, and therefore dismissed the UCL claim. (Dkt. 576.) With the UCL claim dismissed, there are no longer any remaining preemption concerns. Uber apparently agrees.

## IX. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S UNCLEAN HANDS DEFENSE

An unclean hands defense requires Otto Trucking to prove that Waymo engaged in misconduct directly related to the claims that Waymo is asserting. *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 978 (N.D. Cal. 2012); *Jade Fashion & Co. v. Harkham Indus., Inc.*, 229 Cal. App. 4th 635, 654 (2014). There is no evidence of any such misconduct here. Otto Trucking's MSJ Précis Opp. argued only that "for a number of years, Waymo purchased Velodyne LiDAR systems . . . *to the extent that* any of Waymo's purported trade secrets are also found in Velodyne LiDARs, Waymo *may have* misappropriated them from Velodyne or other third parties' [*sic*] whose technology Waymo has purchased." (Otto Trucking MSJ Précis Opp. at 3 (emphasis added).) But this is pure, baseless

speculation. Otto Trucking has not and cannot come forward with any *evidence* that Waymo's trade secrets were derived from Velodyne LiDAR systems, and it cannot proceed on an unclean hands defense founded on nothing more than baseless speculation. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.") On this same record, Uber does not even try to assert unclean hands. Furthermore, an unclean hands defense requires Otto Trucking to prove that the alleged misconduct caused prejudice. *Hynix*, 897 F. Supp. 2d at 978; *Jeong Soon v. Beckman*, 234 Cal. App. 2d 33, 36 (1965). Otto Trucking has no evidence of prejudice. The unclean hands defense must fail.

## X. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S PROSECUTION HISTORY ESTOPPEL DEFENSE

Like many of its other defenses, Otto Trucking's (and not Uber's) prosecution history estoppel defense is frivolous. The doctrine of prosecution history estoppel states that a patentee may have surrendered claim scope under the doctrine of equivalents by making patentability-related amendments or arguments during prosecution. *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006). Here, however, the '936 Patent was allowed in the first Office Action. Thus, Waymo made no claim amendments or patentability arguments during prosecution at all. It logically follows that there is nothing that could create a prosecution history estoppel. Indeed, Otto Trucking has never identified any prosecution activity that allegedly creates a prosecution history estoppel.

## XI. SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST OTTO TRUCKING'S RES JUDICATA DEFENSE

Otto Trucking does not identify any possible basis for res judicata to apply. Nor can it. This is the first lawsuit in which Waymo (or any Waymo privy) has accused Defendants or their privies of trade secret misappropriation or patent infringement. Res judicata cannot apply under these facts and Otto Trucking's refusal to abandon this frivolous defense should be disallowed.

## CONCLUSION

For the foregoing reasons, Waymo respectfully requests that the Court grant summary judgment against the aforementioned affirmative defenses.

DATED: August 31, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/Charles K. Verhoeven*
   Charles K. Verhoeven
   Attorneys for WAYMO LLC