

August 31, 2017

Honorable Jacqueline Scott Corley
U.S. District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

      Re:    *Waymo LLC v. Uber Technologies, Inc. et al.*, Case No. 3:17-cv-00939

Dear Judge Corley:

Defendants Uber Technologies Inc. and Ottomotto LLC (collectively, "Uber") move to compel Waymo to answer and supplement its responses to Uber's Request for Admission No. 40 and Uber's Interrogatory Nos. 20, 24, and 29, and to produce a document for which Waymo has wrongfully designated a portion as privileged. The Special Master authorized this motion.

**Request for Admission No. 40: Evidence of Levandowski Downloading Waymo Material After Joining Uber.** The central allegation in this case has always been that Levandowski downloaded files with Waymo trade secrets, and that Uber used those trade secrets in its autonomous vehicle program. To interrogate the basis of this allegation, Uber propounded Request for Admission ("RFA") No. 40 asking Waymo to admit "that after Anthony Levandowski signed his employment agreement with Uber in August 2016 (UBER00017083), he did not download any files from Waymo or Google." (Pritt Decl. Ex. 4 at 4.) Waymo denied the RFA on the basis that it "lacks sufficient knowledge to either admit or deny" if Levandowski downloaded files from Waymo or Google in or after August 2016. (*Id.*) This response is not sufficient under Federal Rule of Civil Procedure 36 and is not credible in light of the investigation Waymo conducted—and relies on—in this case.

Rule 36 permits a party to state that it lacks sufficient knowledge "if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." "In order to use lack of knowledge as a reason for neither admitting or denying a request, a party must both assert that it has made a reasonable inquiry and that the information known or readily obtainable by the party is insufficient to fashion a response." *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 15 (D.D.C. 2007); *see, e.g.*, *Lauter v. Anoufrieva*, No. CV 07-6811 JVS(JC), 2009 WL 10672595, at *2 (C.D. Cal. Mar. 30, 2009) (same). Waymo's response does not state that it made a reasonable inquiry into this RFA or that the information known or obtainable by Waymo is insufficient to admit or deny the RFA.

Counsel for Waymo stated that "Waymo is not aware of whether Levandowski downloaded files from Waymo or Google after signing his Uber employment agreement," and argued the information at issue in RFA 40 is uniquely in Levandowski's possession. (Pritt Decl. Ex. 6 at 3 & ¶ 8.) This position is not tenable in light of Waymo's forensic investigation into Levandowski (and others), and Waymo's claims that it imposes robust security and confidentiality measures to protect its files. "A party may not refuse to admit or deny a request for admission based upon a lack of personal knowledge if the information relevant to the request is reasonably available to


him." *K.C.R. v. Cnty. of Los Angeles*, No. CV 13-3806 PSG SSX, 2014 WL 3433925, at *5 (C.D. Cal. July 14, 2014) (quoting *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981)). The relevant information to respond to RFA 40 is reasonably available to Waymo.

Waymo's claimed inability to discover if Levandowski downloaded Waymo or Google files after joining Uber is astonishing. Waymo claims to have both conducted a valid forensic investigation and to have robust security measures in place, which one would reasonably expect to prevent a former employee from accessing trade secrets from company networks. The fact is that Waymo lacks any evidence or even grounds for suspicion that Levandowski downloaded any Waymo files after he joined Uber, but Waymo does not want to admit it. Waymo seeks to avoid admitting this fact by claiming it lacks sufficient knowledge. Rule 36 does not permit such willful blindness.

When a party's RFA response fails to satisfy Rule 36, the Court may "order either that the matter is admitted or that an amended answer be served." Uber respectfully requests that the Court order RFA 40 admitted, or in the alternative that Waymo admits it lacks the ability to prevent former employees from accessing confidential Waymo information from Waymo's computer networks.

**Interrogatory Nos. 20 and 24: Trade Secret Information of a Competitor at Waymo, Google, and Alphabet.** The Court ordered Waymo to respond to Uber's Interrogatory Nos. 20 and 24, which ask Waymo to describe efforts it has taken to prevent other companies' confidential, proprietary or trade secret information from entering Waymo, including any investigations or forensic analysis Waymo performed at any time, including in connection with M&A transactions and employee hires, and any instances in which such information entered Waymo. (Dkt. 1276 at 2.) The Court held that Interrogatory No. 24 "is directly related to Waymo's theory of liability," and No. 20 "seeks relevant information." (*Id.*; *see also* Dkt. 1410 at 2 ("how Waymo conducts its own acquisitions is relevant to the claims and defenses in this action").) The Court limited Waymo's response to Interrogatory No. 20 to Google's driverless car program, but ordered Waymo to "disclose if Alphabet/Google in any division ever performed forensic due diligence." (Dkt. 1276 at 2.)

Waymo responded on August 24 with [REDACTED] examples of when Waymo investigated employees to determine if they possessed a former employer's confidential information. Waymo claimed privilege over the investigations and made no mention of any investigations in connection with M&A transactions or employee hires, or of whether Google or Alphabet has ever performed forensic due diligence. (Pritt Decl. Ex. 2 at 6, 9.) Waymo supplemented its response on August 30 to say the [REDACTED] "examples" were the only such investigations Waymo performed. (*Id.* at 7, 10.) These responses are inadequate.

*First*, Uber's interrogatories concern Waymo's and Alphabet/Google's efforts to prevent other companies' confidential, proprietary or trade secret information from coming into Waymo's or Alphabet/Google's possession at any time, including in connection with M&A transactions and employee hires. Yet Waymo's responses concern just [REDACTED] after-the-fact investigations of current employees. It is unclear whether Waymo limited its responses to exclude efforts during M&A transactions or hiring employees. It appears, however, that Waymo and Alphabet/Google do *not* take any efforts to prevent other companies' confidential, proprietary or trade secret information from entering Waymo or Alphabet/Google. Indeed, during the meet and confer process Waymo represented that [REDACTED]



▇▇▇ (Pritt Decl. Ex. 3 at 3.) These responses are remarkable in light of Waymo's litigation theme that Uber failed to take any measures to ensure that Waymo's former employees did not bring confidential or trade secret information to Uber. (*See* Dkt. 1372 at 3.) At a minimum, Waymo should be ordered to amend its responses to state that neither it nor Alphabet/Google takes any measures during M&A transactions or when hiring employees to prevent the entrance of another companies' confidential, proprietary or trade secret information.

*Second*, Waymo's response to Interrogatory No. 20 does not "disclose if Alphabet/Google in any division ever performed forensic due diligence," as the Court ordered. Waymo's counsel has represented that its response "is consistent with that direction" and that the Court's order was limited to due diligence in the context of investigations. (Pritt Decl. Ex. 6 at 2.) But the interrogatory response does not mention one way or the other whether Alphabet/Google has ever performed forensic due diligence, let alone whether it has done so in the context of investigations. If Alphabet/Google has not performed forensic due diligence, in any context, it should say so in its response. Further, the interrogatory is not limited to "investigations," but any "efforts" taken. And even if the Court's order that Waymo disclose whether Alphabet/Google has ever performed forensic due diligence were limited to a particular context, Waymo should be required to disclose whether Alphabet/Google has ever performed forensic due diligence in the context of M&A transactions, as that information is directly responsive to Interrogatory No. 18.

*Third*, Waymo states that it has a process for ▇▇▇ ▇▇▇ but then hides any details about that process under the cloak of privilege beyond stating that Waymo ▇▇▇ ▇▇▇ (Pritt Decl. Ex. 2 at 7.) Waymo claims that it considers the ▇▇▇ to be privileged, but that the information was ▇▇▇ from Waymo's premises and control. (*Id*. at 8, 9.) This selective disclosure is improper, as is Waymo's attempt to shroud simple facts—such as the ▇▇▇ ▇▇▇—in privilege. Waymo should be required to set forth all of the steps it took in these investigations, whether the information it discovered was proprietary or trade secret, and what Waymo did with that information (i.e., whether it was retained, destroyed, or returned). (Pritt Decl. Ex. 6 at 2.) Waymo is not permitted to use as a sword select aspects of its investigations— like firing employees and ▇▇▇ information—while withholding the rest.

*Fourth*, Waymo responds to Interrogatory No. 24 that the ▇▇ investigations described ▇▇▇ ▇▇▇ (Pritt Decl. Ex. 2 at 10.) But this interrogatory is not limited to Waymo, and includes whether Alphabet/Google has ever discovered that another company's confidential, proprietary or trade secret information came into Alphabet/Google's possession. Waymo should be required to disclose whether Alphabet/Google is aware that any such information entered any of their divisions or came into their possession, and, if so, to describe those instances.

Waymo's refusal to adequately respond to Interrogatory Nos. 20 and 24 prejudices Uber's ability to defend itself because the requested but omitted information is crucial to evaluate and respond to Waymo's arguments that Uber's measures regarding trade secret information were inadequate.



**Interrogatory No. 29: The Basis for Waymo's Denial in Response to Certain RFAs.** Uber's Interrogatory No. 29 asks Waymo to "explain with specificity the basis" for its denial of any of Uber's RFAs. (Prit Decl. Ex. 1 at 23.) Waymo responded to this interrogatory by explaining its denial of just one of the five RFAs it denied (RFA No. 9), and refused to respond regarding the other four denials (RFA Nos. 20, 40, 43, and 44) on the basis that the interrogatory was compound. (*Id* at 23–24.)

Waymo's position is unreasonable in light of the irregular and brisk pace of discovery in this case. (*See* Dkt. 1173 (holding that "[g]iven the complexity of the case, and the short discovery period, allowing Uber to ask more than 25 interrogatories would have been warranted").) Fact discovery in this case closed almost exactly six months after the complaint was filed. Waymo's interpretation of the rules—which would require seriatim RFAs and interrogatories—would not have been practical. Under Waymo's formulation, Uber would have had to serve all of its RFAs sufficiently in advance of the close of fact discovery so that Uber could serve interrogatories directed at any denials after Waymo responded to those RFAs before discovery closed. Although some district court decisions support such practice in the normal course, that procedure was, and is, unworkable in this case. Indeed, both Uber and Waymo served their final set of RFAs and interrogatories simultaneously on July 25, 2017—the last date on which the parties could serve discovery in order to receive responses before the close of fact discovery. (*See* Pritt Decl. ¶ 2.)

Uber offered to drop its objection to Waymo's refusal to offer additional information as to three of the four outstanding RFAs if Waymo would agree to provide a response to Interrogatory No. 29 explaining the basis for its denial of RFA 43 (requesting Waymo to admit "that during its on-site inspections at Uber, Waymo found no evidence that Uber has misappropriated Google or Waymo trade secrets"), but Waymo refused. The information sought in Interrogatory No. 29 and RFA 43 is exclusively in Waymo's control because it concerns Waymo's interpretation of its on-site inspections of Uber's facilities. Waymo is seeking astronomical damages; given the significance of RFA 43 to Waymo's theory of liability as to Uber, Uber's request is proportional to the needs of the case. Uber requests that the Court order Waymo to respond to Interrogatory No. 29 by explaining the basis for its denial of RFA 43.

**Improper Privilege Claim:** Waymo claims privilege over the contents of an email—produced on August 23, 2017, the day before fact discovery closed—that was sent to, among others, the distribution list ▮▮▮▮▮@google.com, which has more than 23,000 members and can be accessed by all full-time employees of Waymo and Google/Alphabet. (Pritt Decl. Ex. 7 at 1, Ex. 8 at 3.) A party seeking to claim privilege over a communication sent to an email distribution list must provide "the court with adequate information to conclude that all recipients were in positions to have been deemed within the attorney-client relationship." *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 678 (D. Kan. 2005); *see also Muro v. Target Corp.*, 250 F.R.D. 350, 364 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009) (rejecting assertion of privilege over document sent to distribution list because distribution list had not adequately been shown to be privileged: "without the identities and job descriptions of the persons on the distribution lists, there is no way for an opposing party to assess whether they are within the sphere of corporate privilege, as is required by Federal Rule of Civil Procedure 26(b)(5)(A)"). Because Waymo has not disclosed the identities and job descriptions of the persons on the distribution list, it has not shown that it is entitled to invoke privilege over this widely disseminated communication.



Respectfully submitted,

*Karen L. Dunn*

Karen L. Dunn
*Counsel for Uber Technologies, Inc. and Ottomotto LLC*

cc: All Counsel of Record
    Special Master John Cooper