August 31, 2017

**VIA ECF**

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc., et al*., N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Plaintiff Waymo LLC ("Waymo") submits this letter brief in support of Waymo's motion to compel Uber to produce documents relating to its investigations into the misappropriated files.

Defendants Uber and Ottomotto (collectively "Uber") have made clear they intend to present testimony and evidence at trial regarding their investigation to locate the files that former head of Uber's autonomous vehicle program, Anthony Levandowski, stole from Google. Specifically, Uber has stated it intends to present testimony regarding: its forensic expert's search for Google's misappropriated materials, Uber's termination of Levandowski in relation to Uber's asserted inability to comply with this Court's Orders due to a lack of cooperation from him, and the Court-ordered inspections of Uber's ongoing work on LiDAR. (*See e.g.*, Dkt. 1050 at 71:7-16; Dkt. 978 at 2.)[1] Using privilege as a sword and shield, Uber refuses to produce documents underlying *any* of these facts and investigations, except for two self-serving letters its General Counsel sent Levandowski, clearly crafted to create an impression that Uber was complying with this Court's Orders and to shift blame to Levandowski for Uber's failure to comply. Yet, Uber admits that additional documents exist on these subjects. If Uber is going to put at issue the subject matter of its investigation to locate and return the misappropriated materials, then Waymo should be afforded the opportunity to take discovery into that investigation. Uber cannot affirmatively rely on its investigation to locate the misappropriated materials, but withhold documents relating to that investigation as privileged.

As the Court is aware, "[t]he privilege which protects attorney-client communication may not be used both as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). "[P]arties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). Here, Uber should be required to disclose all documents and communications related to its investigation to locate and return the misappropriated materials if Uber is going to offer evidence on that subject matter. *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) ("Disclosing a privileged communication or raising a claim that requires disclosure of a protected communication results in waiver as to all other communications on the same subject."); *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[V]oluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject."); *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) ("The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not.") Here, Uber intentionally waived privilege regarding its investigation into the misappropriated materials and, in fairness, the withheld documents should be considered together with the testimony and documents Uber intends to affirmatively rely upon at trial.

**Uber's Termination of Levandowski for Purported Lack of Cooperation.** Uber intends to offer evidence of its alleged request that Levandowski return the misappropriated materials, and his termination when he did not do so. When the parties met and conferred, Uber's counsel pointed Waymo to two letters Levandowski filed (before Uber produced them), relating to Uber's termination of Levandowski in connection with Uber's asserted inability to comply with this Court's Orders due to a lack of cooperation from him, as supporting this point. These letters were an obvious attempt by Uber to "set up" the narrative that it is now asserting concerning Levandowski's termination. The first is a May 15 letter from Uber's General Counsel, Salle Yoo, to Levandowski which, among other things, confirmed that Levandowski was removed from responsibility for LiDAR and asked him to

---

[1] Uber's counsel confirmed at the July 26 hearing that only these three categories of evidence will be offered to offer on this issue, and Judge Alsup instructed that Uber would need the Court's permission to introduce a fourth category of evidence. (*Id.*, 72:6-73:4.)

deny having taken any misappropriated materials, or to return them. (Dkt. 466-2.) The second is Levandowski's May 26 termination letter. (Dkt. 519-2.)

There is no dispute that more documents exist on this subject, but Uber cherry-picked and produced the ones it liked. The May 15 letter (Dkt. 466-2) explains that there was at least a conversation on April 27 removing and recusing Levandowski "from any role or responsibility pertaining to LiDAR at Uber." According to the May 26 letter, there was a "prior written directive to cooperate with Uber's investigation" sent to Levandowski on April 20 by Angela Padilla[2] which, according to the May 26 letter, is privileged. (Dkt. 519-2.) And, according to Uber's prior filings, there was at least a conversation with Levandowski on March 29 at which Uber claims the downloaded materials were discussed. (Dkt. 1081-2.) If Uber wants to show that it tried to get Levandowski to locate and return the misappropriated materials, why won't it produce documents relating to these other communications and any other investigation by Uber into whether Levandowski still has the misappropriated materials? To the extent that there are any documents reflecting Uber's investigation and discussions with Levandowski regarding the misappropriated materials and Uber's efforts to get him to return them, all such documents should be produced, or Uber should be precluded from introducing evidence of its efforts to compel Levandowski to return the misappropriated materials. The Court recognized that Uber was engaging in a "slick practice" of belatedly trying to waive privilege over the March 29 meeting to further its litigation strategy relating to Levandowski's bonus. (Dkt. 1267.) Uber is doing the very same thing here. Where "the contents of [documents] prove advantageous for Uber to reveal," it selectively produces them. "But where the contents of [documents] would hurt Uber's litigation position, Uber is quick to conceal the facts under claims of privilege." (*Id.*) This Court should again "refuse[] to indulge this pattern of convenience," as it did with respect to the March 29 meeting. (*Id.*)

**Uber's Forensic Analysis.**  Uber contends that its forensics expert looked for the misappropriated materials on Uber's servers and computers using search terms, and that none of the misappropriated materials were found. (Dkt. 978 [Uber's Opposition to Waymo's MIL #4].) Uber, however, refuses to produce communications with its forensics expert directing that forensic analysis and refuses to confirm that only Uber's expert will testify about this analysis – leaving open the possibility that fact witnesses, such as Angela Padilla, will testify about it too. To the extent that fact witnesses will testify about this investigation, this issue is very similar to Waymo's decision to waive its counsel's work product privilege with respect to the results of Gary Brown's forensic investigation into Levandowski's electronic devices, after which Waymo was ordered to produce all the communications from counsel to Mr. Brown on the subject of the disclosed investigation. (Dkt. 1272). The Court held: "Counsel's communications to Mr. Brown regarding Mr. Brown's investigation fall within the subject matter of the disclosed investigation. In fairness these communications should be considered with the information Waymo has disclosed." (*Id.* at 1.) Similarly here, if fact witnesses will testify about Uber's forensic investigation, counsel or others' communications with Uber's forensic expert(s) fall within the subject matter of the forensic investigation. In fairness, these communications should be produced. Uber may argue that this is distinguishable from Gary Brown's forensic investigation because Uber's forensic expert will disclose the results of his investigation during expert discovery. But, again, Uber has left open the possibility that fact witnesses, such as Angela Padilla, will testify about this investigation at trial.

---

[2]  Ms. Padilla has not yet been deposed. Her deposition was originally scheduled for August 24, but was deferred until after the Federal Circuit ruling. (Dkt. 1287.) Uber indicated that Ms. Padilla may provide fact testimony at trial regarding all three of these aspects of Uber's efforts to locate the misappropriated materials.

Additionally, if Uber conducted other investigations, including non-forensic investigations, into the location of the misappropriated materials, documents relating to those investigations should be produced as well, if Uber intends to rely on them at trial. For example, if Uber interviewed employees and asked them whether they have ever seen or heard of the misappropriated materials, documents relating to those interviews should be produced. Waymo is aware that employee questionnaires about this issue exist, but Uber is withholding them. (*See* Dkt. 978.) In its Opposition to Waymo's Motion for a Preliminary Injunction, Uber argued that, in addition to the forensic analysis of computers, it conducted interviews of Uber employees regarding the misappropriated materials. (Dkt. 177.) It is unfair for Uber to tell the jury that it conducted a forensic analysis and did not locate any of the misappropriated materials, but hide any other attempts to locate the misappropriated materials, particularly if those other attempts reached different results. If Uber is going to introduce evidence of its attempts to locate the misappropriated materials, it must produce all evidence of its attempts to locate the misappropriated materials, and not merely the cherry-picked helpful investigation results. Otherwise, Uber should be precluded from introducing this evidence.

**Court-Ordered Inspections.** Lastly, Uber intends to inform the jury that Waymo conducted multiple inspections on Uber's premises pursuant to the Court's Preliminary Injunction Order and, according to Uber, did not find evidence of use of Waymo's trade secrets. The latter point is not true; Waymo has ample evidence to prove its misappropriation case, and whether and what evidence resulted from those inspections, as opposed to other discovery, is irrelevant. Nor can any Uber witness know what Waymo's attorneys identified in their minds as evidence of use at those Court-ordered inspections. Uber indicated that testimony about the Court-ordered inspections would come from Ms. Padilla or an Uber employee, Adam Kenvarg, who escorted Waymo's attorneys to the inspections. It is unclear, however, whether Uber intends to merely offer evidence of the fact that Waymo attorneys conducted inspections and the dates they did so, or to offer analysis about why those inspections occurred, what Waymo was permitted to inspect, what Waymo did in fact inspect, and why those inspections do not show use. If the latter, then Uber should be required to produce all documents relating to those inspections, including any instructions that Uber's attorneys gave to Uber employees, and any reports that Uber employees provided to Uber's attorneys about the Court-ordered inspections.

The requested documents are responsive to numerous RFPs served by Waymo:

- No. 71: DOCUMENTS sufficient to show the measures taken by DEFENDANTS to ensure that former employees of WAYMO or its corporate affiliates hired by DEFENDANTS did not retain confidential WAYMO information.
- No. 73: All DOCUMENTS AND COMMUNICATIONS REGARDING the MISAPPROPRIATED MATERIALS, INCLUDING but not limited to (i) DOCUMENTS containing any information derived from the MISAPPROPRIATED MATERIALS, (ii) any electronic media that contains or contained the MISAPPROPRIATED MATERIALS, and (iii) any DOCUMENTS REGARDING any meetings or discussions REGARDING the substance of the MISAPPROPRIATED MATERIALS outside of WAYMO.
- No. 75: All DOCUMENTS and COMMUNICATIONS REGARDING the "forensic examination" of KSHIRSAGAR's personal phone, work-issued phone, and work-issued laptop (referred to in the Declaration of Sameer Kshirsagar).
- No. 76: DOCUMENTS sufficient to show the hit counts for each of the Court-ordered 135 search terms (120 proposed by DEFENDANTS, and 15 proposed by WAYMO) for each custodial (e.g., LEVANDOWSKI) and non-custodial (e.g., Git repository) source

    encompassed by the Court's Order After Hearing Re Discovery Letter Dated April 3, 2017, with a per-term, per-source level of specificity.
- No. 86: All DOCUMENTS cited by and/or referred to by DEFENDANTS in their Opposition to Motion to Compel (Dkt. 369) and supporting declarations thereto.

(Ex. A.) And given the Court's recent rulings regarding the scope of waiver from investigations, Waymo should also be afforded the opportunity to take full discovery on these three points Uber intends to present at trial regarding its investigation of the misappropriated materials.

Respectfully,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
cc:    All counsel of record; Special Master John Cooper