**Pages 1 - 121**

                        UNITED STATES DISTRICT COURT

                     NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Judge

WAYMO LLC,                          )
                                    )
            Plaintiff,              )
                                    )
   VS.                              )     **NO. C 17-00939 WHA(JCS)**
                                    )
UBER TECHNOLOGIES, INC.; OTTO       )
TRUCKING LLC; and OTTOMOTTO         )
LLC,                                )
                                    )
            Defendants.             )
_____    )


                              San Francisco, California
                              Thursday, August 31, 2017

                     **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

Special Master:
                         Farella, Braun & Martel LLP
                         235 Montgomery Street, Suite 1700
                         San Francisco, CA  94104
                         (415) 954-4400
                         (415) 954-4480 (fax)
                    **BY:  JOHN LEE COOPER**

For Plaintiff Waymo LLC:
                         Quinn Emanuel Urquhart & Sullivan, LLP
                         51 Madison Avenue, 22nd Floor
                         New York, NY  10010
                         (212) 849-7000
                         (212)  849-7100 (fax)
                    **BY:  JAMES E. BAKER**



Reported By:  Lydia Zinn, CSR No. 9223, FCRR, Official Reporter

**APPEARANCES**:

For Plaintiff Waymo LLC:
                        Quinn, Emanuel, Urquhart & Sullivan LLP
                        50 California Street, 22nd Floor
                        San Francisco, CA  94111
                        (415) 875-6600
                        (415) 875-6700 (fax)
                    BY:  **JAMES DUBOIS JUDAH**
                         **JEFFREY WILLIAM NARDINELLI**
                         **DAVID ANDREW PERLSON**

For Defendant Uber Technologies, Inc.:
                        Morrison & Foerster LLP
                        425 Market Street
                        San Francisco, CA 94105-2482
                        (415) 268-7000
                        (415) 268-7522 (fax)
                    BY:  **ESTHER KIM CHANG**
                         **ARTURO J. GONZÁLEZ (via telephone)**

For Defendant Uber Technologies, Inc.:
                        Boies Schiller & Flexner, LLP
                        1999 Harrison Street, Suite 900
                        Oakland, CA  94612
                        (510) 874-1000
                        (510) 874-1460 (fax)
                    BY:  **MAXWELL VAUGHN PRITT**

For Defendants Otto Trucking LLC; Ottomotto LLC:
                        Goodwin Procter LLP
                        Three Embarcadero Center
                        San Francisco, CA  94111
                        (415) 733-6000
                        (415) 677-9041 (fax)
                    BY:  **INDRA NEEL CHATTERJEE**
                         **JAMES LIN**

For Intervenor Defendant Anthony Levandowski:
                        Ramsey & Ehrlich LLP
                        803 Hearst Avenue
                        Berkeley, CA  94710
                        (510) 548-3600
                        (510) 291-3060 (fax)
                    BY:  **MILES F. EHRLICH**

1    **<u>APPEARANCES</u>:**

2    For Intervenor Lior Ron:
                              Taylor & Patchen, LLP
3                             One Ferry Building, Suite 355
                              San Francisco, CA   94111
4                             (415) 788-8200
                              (415) 788-8208 (fax)
5                   **BY:   JONATHAN ALAN PATCHEN**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   **Thursday - August 31, 2017**                    **10:36 a.m.**

2                    **P R O C E E D I N G S**

3                         **---oOo---**

4        **THE CLERK:**  Calling Civil Action C. 17-0939, Waymo

5   versus Uber.  Counsel, please come to the podium and state your

6   appearance.

7        **MR. BAKER:**  Good morning, Your Honor.  Jim Baker,

8   from Quinn Emanuel, for Waymo.  And with me I have

9   David Perlson, James Judah, and Jeff Nardinelli.

10        **THE COURT:**  Good morning.

11        **MR. BAKER:**  Good morning.

12        **MR. CHATTERJEE:**  Good morning, Your Honor.

13   Neel Chatterjee, for Otto Trucking.  I'm a little under the

14   weather.  That's why I sound like a frog right now.

15        With me is James Lin.  He's going to be handling the

16   detail today, so that I don't infect everyone in the courtroom.

17        **THE COURT:**  Good.  Stay away from me.  Good morning.

18        **SPECIAL MASTER COOPER:**  John Cooper, Special Master.

19        **THE COURT:**  Good morning, Mr. Cooper.

20        **MS. CHANG:**  Esther Chang, for Uber and Otto Motto.

21        **THE COURT:**  All right.  Good morning.

22        All right.  Good morning, Mr. Lin.

23        All right.  Where should we start?

24        **MR. BAKER:**  Well, Your Honor, if you would allow me,

25   I think probably I should take just a couple minutes -- and

```
 1   I'll be brief -- and give you a summary of where we are, and
 2   what has transpired since we spoke to you yesterday.
 3           THE COURT:  I know there hasn't been a lot of time in
 4   between.
 5           MR. BAKER:  Not a lot, but we've done our best, and I
 6   think we've made some progress.
 7           THE COURT:  Right.
 8           MR. BAKER:  So shortly after we got off of the phone
 9   with you around 2:30 yesterday, Your Honor, we finished
10   identifying -- and let me --
11       Just to frame this a little bit, there are two sets of
12   documents I think we're talking about today.  We're talking
13   about the documents we have produced on August 24th as a result
14   of the waiver, that still have some redactions that counsel for
15   defendants had asked us to go back and take a look at.  And
16   then we're also talking about documents that we have still
17   withheld completely, and that are still on our privilege log.
18       With respect to the first set the redactions, shortly
19   after we got off the phone with you, we finished deciding
20   exactly what we wanted to unredact, and what we wanted to keep
21   redacted; sent that to our vendor.
22       Your Honor had mentioned rolling things out.
23       The vendor told me that the fastest way to do it was to do
24   it all in one batch.  So that's what I had them do.  I hope
25   that's okay.
```

1    We had the documents to defendants by 5:30 yesterday; the

2    entire batch.   The depositions are scheduled for next week,

3    Your Honor.   So we had the entire batch to them by 5:30

4    yesterday.

5    With respect to the second a batch -- and I have those

6    that we can hand up to Your Honor, showing exactly what we have

7    now unredacted, and what remained redacted.

8    **THE COURT:**  But I only need to see where there's a

9    dispute, to the extent you know.   If you don't know now, then

10   we'll have to deal with it later.

11   **MR. BAKER:**  With respect to the second batch on the

12   documents that we had withheld, our understanding from the call

13   was that defendants had identified around 200 documents.   You

14   asked them to give us that list, and to try to resolve whatever

15   we could before the hearing this morning.

16   Counsel for Uber e-mailed us a couple hours after the

17   call, and said -- told us to give them everything, not --

18   not -- you know, they didn't identify documents.   They just

19   said, *Give us everything*.

20   I e-mailed back and said, *I don't think that was the*

21   *procedure*.   Nevertheless, I instructed our team to do it; to go

22   get everything where any of the forensics team -- Mr. Brown,

23   Mr. Gudjonsson, or Mr. Zbrozek -- had received.   And that's

24   what we started to do.

25   Around 9:00 o'clock last night we got another e-mail from

 1  counsel for Otto Trucking, where they sent us the list

 2  identifying certain documents from our privilege log.  Some

 3  were the same that we had already pulled.  Some were not.

 4      In an abundance of caution I told our team, *Look*.  *We've*

 5  *got to pull all of these, and get them together, and get them*

 6  *organized, and bring them to court*.  So that's what we did.  We

 7  worked through the night.  And that's what we have for you

 8  today:  All of the documents that they've identified, even --

 9  you know, even when counsel for Uber just said, *Bring*

10  *everything*.

11      So we have gone through those documents, Your Honor,

12  quickly.  We have not had a lot of time to do it, but we have

13  been through them.  We have identified one that needs to be

14  produced.  It's already been produced, but this is another

15  copy.  We can do that.

16      We've identified a few more that are largely talking about

17  other people; not Mr. Levandowski, Mr. Raduta, or

18  Mr. Kshirsagar, but other people.

19      But there are a couple of lines that speak to

20  Mr. Levandowski.  And so we will produce those documents with

21  the part about Mr. Levandowski unredacted.

22      And the rest of the documents --

23          **THE COURT:**  Can I ask you?

24          **MR. BAKER:**  Sure.

25          **THE COURT:**  Is there any reason you can't produce --

1   I don't know what it says -- can't produce it all, subject to

2   an understanding that they won't argue that's some waiver?

3       You know what I mean?  If it's not --

4           **MR. BAKER:**  Sure.

5           **THE COURT:**  If it's not -- if really what you're

6   concerned about is:  We don't want them to be able to argue

7   that expands the waiver, it could just eliminate objections and

8   things like that.

9           **MR. BAKER:**  Understood, Your Honor.  I mean, that is

10  something we can consider and have considered.

11      You know, you're correct that one of our main concerns

12  here is that we don't want to effect a broader waiver; but as

13  long as it is understood that, you know, that's not what's

14  going to happen here, that's something that we can consider.

15      You know, one issue that I would have with that is, you

16  know, I don't know which of all of these other individuals

17  might still be at the defendants' companies.  And if we had to

18  mark these documents "Confidential," as opposed to "Attorneys

19  Eyes Only" they could go to anyone at defendants', and these

20  individuals could see that perhaps they were under

21  investigation.  And so that is a little sensitive, but it's

22  something that we could consider, and I could talk to my client

23  about.

24          **THE COURT:**  Well, Mr. Lin, I assume that you wouldn't

25  have any objection to agreeing that it wouldn't -- if they were

1    to -- it wouldn't effect a broader waiver; that you wouldn't

2    use those to argue a broader waiver.

3          **MR. LIN:**  So part of the issue here is that many of

4    the documents are -- still remain within the boxes that have

5    been redacted.  And we can talk about this much more later on;

6    but from our perspective, we're having a difficult time

7    determining what parts of the information that can potentially

8    lie underneath would be relevant, and should be produced as a

9    result of the Court's Order.

10         **THE COURT:**  No, no, no.  I know.  And I'm trying to

11   address that problem by saying I'm getting that one of their

12   concerns is not, A, they're trying to hide super-material

13   information from you; but they're concerned about there being,

14   then, an argument that you've now waived the privilege as to

15   these other investigations, which they don't believe they've

16   waived.

17       And if you would agree, no, if you were to unredact that,

18   we would not argue that there's a broader waiver.

19       And then they may be more willing to say, *Okay.  Even*

20   *though we don't actually think, in the name of cooperation,*

21   *reducing disputes, just -- we're not trying to hide anything.*

22   *We'll unredact it.*

23         **MR. BAKER:**  And maybe, you know, I'll just say,

24   Your Honor, also it's -- you know, that could solve -- this is

25   something that I would have to -- or I would request to be able

1  to speak with my client about; but you know, there could be

2  some other documents, you know, not just where these other

3  folks that are being investigated are listed.

4      There could be some other documents that, as long as we

5  had that understanding, and perhaps a ruling under 502 from

6  Your Honor, so that there -- you know, they couldn't argue in a

7  later case or arbitration that there was a broader waiver, then

8  that might solve some of the other document issues, as well.

9  There's likely still some that we think are particularly

10  sensitive.

11          THE COURT:  Of course.

12          MR. BAKER:  Yes.

13          MR. LIN:  Your Honor, it's certainly something that

14  we would be amenable to considering.

15      I think one of the issues, though, goes to the core of our

16  concern, which is, you know, we had a call again yesterday

17  talking about the scope of Your Honor's subject-matter waiver.

18  We have concerns, based on some of the documents that have been

19  unredacted since last night -- and I'm happy to talk about that

20  more -- but that the investigation that Google made into

21  Anthony Levandowski, Sameer Kshirsagar, and Radu Raduta -- that

22  this was part of a larger forensic investigation as to

23  individuals who went to Otto Trucking, generally.

24      And so I think -- I think --

25          THE COURT:  Yeah.  No.  I understand that.

1          **MR. LIN:**  Correct.

2          **THE COURT:**  And maybe I'm just trying to cut through

3   that --

4          **MR. LIN:**  Right.

5          **THE COURT:**  -- because what you want are the e-mails

6   unredacted.

7       And what I'm saying is:  This is a way of getting them to

8   you unredacted.  You just have to agree that you won't argue

9   here or in some other case that that was a waiver.

10      That seems to me perfectly fair.

11         **MR. LIN:**  Sure.  Yeah.

12         **THE COURT:**  Right?

13         **MR. LIN:**  Under those terms, I think that might be

14   something that we could stipulate to.

15         **MR. BAKER:**  One issue we do have there, Your Honor,

16   is, you know, we have submitted the declaration of Gary Brown,

17   in describing the forensic investigation of these three

18   individuals.  That's what we are affirmatively relying on.

19      We are not affirmatively relying on the investigation of

20   anyone else, or any other investigation of even Levandowski and

21   the other two.  I mean, there are other investigations that the

22   attorneys performed; and we're not relying on any of that

23   affirmatively.  So we don't think that, you know, that falls

24   within the waiver.

25      And to the extent they are going to try to then -- you

```
 1   know, we're going to disclose these materials.  And they're
 2   going to try to then take those materials, and use them
 3   affirmatively against us.  That might be an issue, you know.
 4   But if they just want to see what's under there, you know,
 5   maybe that's not an issue.  But if they're going to try to use
 6   it affirmatively against us, when we don't think we've waived
 7   with respect to those investigations, then that could be a
 8   problem.
 9            MR. LIN:  Well, Your Honor, as you said, the
10   centerpiece of this case has been the fact that there are
11   allegations of trade-secret misappropriation, of patent
12   infringement, and that these stemmed from Google employees who
13   then, later on, eventually joined Uber.
14       In order for defendants, including Otto Trucking, to be
15   able to capably defend against allegations like this, it's
16   important to know the scope of what that forensic
17   investigation --
18            THE COURT:  That's the dispute, though.
19            MR. LIN:  Right, right.
20            THE COURT:  Did that scope encompass them, or not?
21       In fairness, I don't know.
22            MR. LIN:  Right.
23            THE COURT:  And I can do that.  I can look at each
24   redaction, case by case.  And I can figure out:  Gee, is this
25   kind of intertwined with it, or not?  Is this totally relevant?
```

1  Although, to be honest, I'm not even the best person to do

2  that, because you folks know so much more than I do.

3       And what I'm saying is why don't we cut through that?  Why

4  don't we say they'll show it to you?  You'll have it.  You can

5  use it in this litigation any way you want.  You can use it and

6  say, *This sheds light on that investigation of Mr. Levandowski.*

7       What you can't do is use it to say, *You've now*

8  *admitted/conceded that your waiver was broad enough to include*

9  *this; you've conceded that it's a waiver, and we can use it in*

10 *the arbitration, or some other litigation, or something like*

11 *that.*

12      That's what -- so that's what I'm trying to say, is:  Can

13 you just agree to that?

14      So there's no -- so that it's used just in this case.  You

15 can use it in this case however you want.

16           **MR. LIN:**  Right.

17           **THE COURT:**  Just, you can't use it to say they've

18 conceded that it falls within the waiver.

19           **MR. LIN:**  I think that -- I think I understand

20 Your Honor.

21           **MR. BAKER:**  Sorry to interrupt you.

22           **MR. LIN:**  Well, I think that that could be something

23 that we could stipulate to.  I mean, of course, we'd have to

24 negotiate with counsel.

25           **MR. BAKER:**  Well, again, the issue there, though,

1    Your Honor, is if there was some investigation of John Smith

2    that has nothing do with this case, and then they're going to

3    try to raise that as an issue and say, *We've looked at the*

4    *investigation of John Smith.  And, you know, we think that, you*

5    *know, because of the way you investigated John Smith, that the*

6    *investigation of Anthony Levandowski is somehow inadequate*, or

7    something like that --

8              **THE COURT:**  Yep.

9              **MR. BAKER:**  -- we have now opened a whole can of

10   worms.  And it has -- John Smith doesn't have anything to do

11   with this case.

12             **THE COURT:**  Well, see, but that's the problem,

13   Mr. Baker, is:  That's just a dispute as to what's relevant or

14   not.

15       And Waymo's view is just much, unsurprisingly, narrower

16   than their view as to what sheds light, or not.

17             **MR. BAKER:**  Understood.

18             **THE COURT:**  So in discovery, though, my view would be

19   more like that may be an admissibility argument; that's not a

20   discoverability argument.

21             **MR. BAKER:**  Well, the question about waiver, though,

22   Your Honor, just to -- just to challenge that a little bit -- I

23   mean, on the question of waiver, Your Honor's Order, I think,

24   went only to the investigation of the three individuals, and

25   not a broader investigation.

```
 1            THE COURT:  No.  That's true.  That's true, because
 2   you still then would have your privilege.
 3            MR. BAKER:  Exactly.
 4            THE COURT:  What we're talking about here, though,
 5   are not documents that are just separate to them.  These are
 6   redactions; at least, in the first bucket.  These are
 7   redactions within documents that refer to the investigation of
 8   Mr. Levandowski, and so are arguably more intertwined in that
 9   way.
10            MR. BAKER:  I see your point.
11            THE COURT:  Yeah.
12            MR. BAKER:  Yes.  Those, I think, are a closer call.
13            THE COURT:  That's what I'm talking about.
14            MR. BAKER:  Okay.
15            THE COURT:  So my proposal -- I'm talking about that
16   first bucket; the redactions.
17            MR. BAKER:  The slicing and dicing.
18            THE COURT:  The slicing and dicing, so that I'm
19   clear.
20            MR. LIN:  Sure.  And just for Otto Trucking, there
21   are a few topics.  And certainly we'd want to talk about the
22   redactions.
23       We'd also like to talk about what Mr. Baker talked about
24   earlier, which was privilege logs.  We have a couple of issues
25   with those.
```

1    **THE COURT:**  Okay.  All right.  So I want to figure --

2    so basically you guys -- what I want you to do is -- because

3    I'm here today, and you can sit here, and work it through.  You

4    brought your documents.  You have your people.  You can show

5    them, and do it.

6    And then to the extent we are left with some impasse, then

7    I can come in at that point.

8    So I want you to first take up that first bucket of

9    redactions.  That's my suggestion; that you agree to those

10   terms.  We can put it on the record at some point, you know, so

11   we don't have to wordsmith a stipulation that you guys won't be

12   able to agree on.

13   And then I'll just say my understanding.

14   And then you can do that.  And then you can just disclose

15   them, and that could be taken care of.

16   Okay.  So now we're talking about the second bucket.

17   Right?  The privilege log.

18   **MR. LIN:**  The privilege log.

19   Before we move on to that, if I could just respond to a

20   couple of Mr. Baker's points.  So we have received the

21   redactions that were given to us from Waymo yesterday evening

22   at about 5:30.  And we compared it also to the redactions that

23   were initially given to us on Thursday, August 24th, of last

24   week.

25   Going through the documents, we identified about --

1  portions of eight pages within that entire production that has

2  changed in terms of what has been redacted.

3      The rest of what remains has been unchanged since that

4  time.  And those are over 100 documents or a hundred pages,

5  rather, that still have redactions.

6      I'm happy to point Your Honor to a particular document, if

7  you feel it's --

8          THE COURT:  No, no, because I thought -- doesn't

9  that -- isn't my proposal encompassed by that; that now you'll

10 consider unredacting that?

11         MR. BAKER:  We will, and -- but just to respond to

12 that, Your Honor, if it would help, what we have done is we've

13 taken the documents, and everywhere that we unredacted, I've

14 highlighted in green.  And everywhere that is still redacted is

15 in yellow.

16     If you want to look and see how much we actually have

17 unredacted, I'm happy to pass these up.

18         THE COURT:  Give it to them, because, see, they

19 didn't have a lot of time.  And so --

20         MR. BAKER:  Well, some of the -- this is all --

21         THE COURT:  Oh, you can't give it to them.  I got it.

22 I got it.  I got it.

23         MR. BAKER:  That might be an issue; but it would

24 resolve their issues, I'm sure, but I'm happy --

25         THE COURT:  If you accept my proposal --

1      **MR. BAKER:**  That's true.  That's true.  I'm happy --

2   we can --

3      **THE COURT:**  Are you then disagreeing with what he

4   said is a factual matter?

5      **MR. BAKER:**  I am.  I am.

6      **THE COURT:**  All right.  That's something, then, that

7   you can --

8      It wouldn't be a surprise, because it's all been done on

9   the fly, presumably in the middle of the night, as well.

10     **MR. BAKER:**  Correct.

11     **THE COURT:**  So, you know, you can work that out,

12  but -- so I don't know what you want me to say, because what

13  I -- right?

14     **MR. LIN:**  Well, I understand, but Your Honor, I think

15  part of the concern here is that we don't know -- we don't have

16  a very good place to start, because from Thursday's production

17  compared to yesterday evening's production, it has been almost

18  identical.  I'm happy to talk with Mr. Baker and opposing

19  counsel regarding what has changed and what has not changed;

20  based on our identification of the documents, going through

21  them last night, very little.

22     And so, you know, I think we're in a position that's

23  marginally better than where we were after last time.

24     **THE COURT:**  Okay, but what do you want me to do?

25     **MR. LIN:**  Well, I think part of it is -- well, the

```
 1   issue here -- I suppose we'll have to sit down with opposing

 2   counsel.

 3          THE COURT:  See, that's what I'm saying, is:  Why are

 4   you telling me this?

 5      I mean, I understand it feels good, but what -- I just

 6   gave a proposal, which is maybe we can cut through this,

 7   instead of having me look at each one and say -- maybe they'll

 8   just give it to you, because you've agreed not to use it --

 9          MR. CHATTERJEE:  Well, Your Honor, I think the

10   problem --

11          THE COURT:  "Not to use it" -- I mean not to use it

12   as a waiver.

13          MR. CHATTERJEE:  Yeah.  The mean, the issue remains

14   ripe as to what is the scope of the waiver.  And I think that's

15   the nub.

16      Now, if they're willing to give us all of the these

17   documents in unredacted form, you know, and we can use them

18   however we want in the case, you know, we'd have the other, you

19   know, the preredacted documents, where we can haggle about what

20   the scope of the waiver is.

21      I don't think that's the case, though.  I don't think they

22   want to give us all of these documents in unredacted form.

23      And I think ultimately what I'd suggest we do is we give

24   you a couple of documents, and you give us some guidance as to

25   whether you think they're --
```

1          **MR. BAKER:**  Well, and I think that's a --

2          **MR. CHATTERJEE:**  -- or not.

3          **MR. BAKER:**  I'm glad you raised that point.

4          **THE COURT:**  Yeah.  That's good.

5          **MR. BAKER:**  Well, what I think the issue is -- I

6   think they're trying to reargue the scope of the waiver.  And

7   there's already --

8          **THE COURT:**  The waiver is the investigation of

9   Mr. Levandowski, Mr. --

10         **MR. BAKER:**  Raduta.

11         **THE COURT:**  -- Raduta, and the other one that was --

12         **MR. BAKER:**  Kshirsagar, I think.

13         **THE COURT:**  Kshirsagar.  No.  Yeah.  No.  Yes.

14   Right.

15         **MR. BAKER:**  Sameer Kshirsagar, I believe, is his

16   name.

17         **THE COURT:**  That's the scope of the waiver.  Okay?

18   And so what I said -- because that's all that was argued.  And

19   I made that ruling in the -- in my Order.  Right?  So that's

20   the scope of the waiver.  That's done.  And that's decided.

21         **MR. LIN:**  Right.

22         **THE COURT:**  So the question is:  What falls within

23   that waiver?

24      There are documents -- we're talking about our first

25   bucket -- that that clearly falls, because that's been

```
 1   unredacted.

 2        There are other things in there.  And what I said is

 3   sometimes they'll pull it out; but it can't really be pulled

 4   out.  In fairness, it's kind of intertwined.  And so it would

 5   fall within the scope of that waiver, because you can't

 6   essentially pull it out.  If you're talking about two things in

 7   the same paragraph, or something, it's too hard to pull it out.

 8        And so I could do that.  I could look at each one.  But

 9   that's the scope of the waiver.  It's just -- there has not

10   been a waiver as to the investigation as to those other

11   employees.

12        MR. CHATTERJEE:  Right, Your Honor.  I think the

13   problem is, just to identify what the problem is -- is the

14   documents that they produced last night have now shown that

15   this was part of an integrated investigation where they were

16   investigating these three, but they were looking at anyone who

17   left Google and went to Otto.  And they were looking at these

18   three as part of that.  And that's where --

19        THE COURT:  So what, though?

20        MR. CHATTERJEE:  Yeah.  Well, so all the documents

21   end up being scrambled eggs, as a result.

22        THE COURT:  Okay.  So that's what I'm dealing with:

23   The scrambled eggs.

24        That's different.

25        So what are you trying to argue, though?  I mean, just,
```

1 what do you want me to do right now?

2        MR. CHATTERJEE:  I think getting some guidance from

3 you on some documents would be --

4        THE COURT:  Okay.  That might be helpful.

5        MR. CHATTERJEE:  -- would be helpful.

6        THE COURT:  But -- but -- but if Mr. Baker, because

7 he knows what's there, is thinking, *You know what?  This could*

8 *all be obviated, if you would agree not to use my showing you*

9 *this stuff to say that there's been a broader waiver.*

10       MR. BAKER:  Well, what I'm hearing is that they are

11 still wanting to challenge the scope of the waiver.  They're

12 saying that these other -- that the documents we produced

13 yesterday show that there was a broader investigation that they

14 want to rely on.

15       And our position -- and I think this was Your Honor's

16 Order -- is that we have not waived with respect to those

17 investigations.  We're not relying on them in this case, and

18 they're not relevant to this case.

19       But I think that's what they're really challenging, and

20 that's why they want to show you some of these documents.

21       But what I would suggest is that we go through the

22 redactions, as you have suggested.  And let's see if there's --

23 you know, on the theory that we're not going to effect a

24 broader waiver.  If there's additional things that we can

25 unredact --

1    **THE COURT:**  And what you don't want to do is give up

2  the chance to come back and argue, based on newly discovered

3  evidence, there's a broader waiver.

4    **MR. CHATTERJEE:**  Which we have now.  I mean, which we

5  did not have when we presented our earlier motion.

6    **THE COURT:**  Okay.  All right.  Well, then, if you

7  don't want to give up that argument, they're not going to show

8  you those redactions, and I'm going to have to look at each

9  one.  So that's your choice.

10   **MR. CHATTERJEE:**  I think that's what we're going to

11 have to do, or at least do a sampling to give us some guidance,

12 Judge, on where you think things are.

13   **THE COURT:**  Oh, I'll do a sampling.

14   **MR. BAKER:**  I can give you the documents here.  I

15 will say, Your Honor, with the redactions, we have not had time

16 to print out numbered pages.  I had Mr. Nardinelli go through,

17 and do it by hand in the gallery.

18   **THE COURT:**  That's why he looked so spry.

19   **MR. BAKER:**  That's right, although I did my own set,

20 so I didn't make him do my set.

21   **THE COURT:**  What would be so ironic, if the

22 Federal Circuit just -- said, said, said, said, said, said --

23 and there was all this rush for nothing.

24   **MR. BAKER:**  I'd like to just hand these up.

25 (Whereupon a document was tendered to the Court.)

1          **MR. BAKER:**  And I will say, Your Honor, there is

2   another stack.  The very last document is a large spreadsheet.

3   And we had redacted -- we've left unredacted the three

4   individuals; and redacted everything else.

5       I don't think you need these pages, because they're not

6   very helpful.

7          **THE COURT:**  Okay.

8          **MR. BAKER:**  So that's really the meat of it.

9          **THE COURT:**  Okay.

10          **MR. LIN:**  And in addition, Your Honor, we have a

11   couple of documents that I believe might also help clarify for

12   the Court the scope of the redactions.

13          **THE COURT:**  All right.  So what should I look at --

14          **MR. BAKER:**  So, Your Honor, again, as you -- as you

15   scan through, everything that's highlighted in yellow is still

16   redacted.  Everything that's highlighted in green has been

17   unredacted.  And if there are no highlights, it was never

18   redacted.

19   (Whereupon a document was tendered to the Court.)

20          **THE COURT:**  So yellow is still redacted.

21          **MR. BAKER:**  And we have gone --

22          **THE COURT:**  And these are all documents which are

23   communications from attorneys to the investigation team?

24          **MR. BAKER:**  Correct, Your Honor.

25          **THE COURT:**  I see okay.

1          **MR. BAKER:**  And we've gone through.  And I can -- if

2    you have any questions on these specific redactions, I can

3    explain what the basis was.

4          **THE COURT:**  Okay.  Mr. Lin, is there any one in

5    particular that you want me to look at?

6          **MR. LIN:**  Yes, Your Honor.  If -- well, we've

7    summarized some of what we have been able to prepare in the

8    PowerPoint presentation.  There's a slide deck.

9          **MR. CHATTERJEE:**  Make sure you have a copy.

10          **MR. LIN:**  Yes.

11          **MR. CHATTERJEE:**  Give the Judge copies of the

12    document.

13          **MR. LIN:**  And if you look on page 11 of the

14    PowerPoint presentation --

15          **THE COURT:**  Okay.

16          **MR. LIN:**  These are documents that -- this is one of

17    the pages among the eight that have been unredacted as a result

18    of yesterday's production.  And it shows that -- you know.  *Hi,*

19    *Heather.  Chauffeur has experienced significant employee*

20    *attrition within the last year.*

21          And that -- it's showing the concerns that a Google had

22    around that time, regarding the individuals who had left Google

23    to go on to other things.

24          And, you know -- but based on this information, like, what

25    we were talking about before was that we don't necessarily know

```
 1   what has -- what the scope of the waiver has been, based on the

 2   fact that we haven't seen a lot of this information.

 3         THE COURT:   Okay.   There are two things here.   One is

 4   today here we're not rearguing the scope of the waiver.   The

 5   scope of the waiver is the three of those individuals.

 6         MR. LIN:   Mm-hm.

 7         THE COURT:   I will look from that first bucket at

 8   redactions, and see if those fall within -- or in fairness,

 9   just in fairness, those redactions, because they fall within

10   e-mails or documents that they've even agreed fall within the

11   scope.   Those should be produced.

12      If you're going to reargue that there's a different,

13   broader waiver, then that's going to have to be done

14   separately.   I'll address it.   That's a big issue:   Waiver of

15   work product and attorney-client is a big issue.   I'm not going

16   to do it on the fly here today.

17      So can you just identify me --

18      What Mr. Chatterjee says --

19         MR. LIN:   Sure.

20         THE COURT:   -- is there are examples.   If I give

21   examples and look at them, then I can give some guidance.

22   That's what I want to do.

23      I don't want to reargue the scope of the waiver.

24         MR. LIN:   Sure, sure.   I understand.

25      Your Honor, so there are two documents I handed to you.
```

1   And these were memoranda from Keker & Van Nest.

2          MR. BAKER:  Do you have a copy of this?

3      I'm sorry.  Do I have a copy of this?

4          MR. NARDINELLI:  (Indicating.)

5          MR. BAKER:  Thank you.

6          MR. LIN:  So there's one version of the document that

7   was the version that was produced last Thursday.  And there's

8   another version of the document that was produced yesterday

9   night.  As you can see, within the document, the redactions are

10  on the first and second paragraphs, under heading one.  It

11  explains that -- you know, it explains the general scope of the

12  forensic investigation, but keeps redacted, still, portions of

13  the memorandum that pertain to how Keker & Van Nest --

14          THE COURT:  Do you know where that is in this pile?

15          MR. BAKER:  I don't know where it is in the pile, but

16  I do have a copy of the unredacted version --

17          THE COURT:  Ah, perfect.

18          MR. BAKER:  -- that I can hand up.  And again --

19          THE COURT:  That's good.

20          MR. BAKER:  Mr. Nardinelli came prepared.

21  (Whereupon a document was tendered to the Court.)

22          THE CLERK:  Oh, again.

23          MR. BAKER:  Again, the yellow highlighting is still

24  redacted.

25          THE COURT:  Still redacted.  Thank you.

1      **MR. BAKER:**  And I'm happy to address why those

2 redactions were made, if Your Honor would like.

3      **THE COURT:**  Okay.  Why?  Because to me, this looks

4 like this is encompassed by and can't be separated out from the

5 investigation of Mr. Levandowski.

6      **MR. BAKER:**  Sure.  So what we had redacted in the

7 first paragraph, Your Honor, is the bit about investigations of

8 other employees.  Now, here, there are no specific names, but

9 there is a discussion.

10    And the other thing that we've redacted is:  There is a

11 separate -- and you'll see, in Roman Numeral II it says

12 "e-mail."  There was a separate e-mail investigation that the

13 forensics team -- Mr. Brown, Mr. Gudjonsson, and Mr. Zbrozek --

14 were not part of.  It was conducted by attorneys.  We're not

15 relying on that, and don't believe that we've waived that

16 investigation.  And you'll also --

17      **THE COURT:**  But Number II doesn't say that.  I mean,

18 it doesn't say that that's who's doing it -- the search.

19      **MR. BAKER:**  Well, we know from other documents, and

20 speaking with our client --

21      **THE COURT:**  Yeah.

22      **MR. BAKER:**  -- that that investigation was conducted

23 by attorneys.  And --

24      **THE COURT:**  Okay.  So it may be the result of that

25 investigation, then.  Right?

1    **MR. NARDINELLI:**  (Shakes head from side to side.)

2    **THE COURT:**  That might be privileged, not --

3    **MR. BAKER:**  Well, that --

4    **THE COURT:**  Who's Kevin Vosen, and Michael?

5    **MR. BAKER:**  They are attorneys, Your Honor.

6    **THE COURT:**  Oh.  So this is not even to Mr. Brown

7  or --

8    **MR. BAKER:**  It is not.

9    **THE COURT:**  I see.

10    **MR. BAKER:**  The only reason that this was produced is

11  because we found out that a version -- that this memo ended up

12  in Mr. Gudjonsson's files, but he was -- he was not a part of

13  the e-mail investigation.  He just happened to have a copy, and

14  we were trying to be inclusive.

15    **THE COURT:**  So this was provided to him?

16    **MR. BAKER:**  I don't know if he read it, or if anyone

17  talked to him about it; but Your Honor's Order said

18  communications between the forensics team and counsel.  So we

19  produced this, in an abundance of caution.

20    **THE COURT:**  You say it was electronic files?

21    **MR. BAKER:**  I believe that's correct, Your Honor.  He

22  had nothing to do with the e-mail investigation.

23    What he did have to do with is Number III, the forensic

24  investigation of the work devices.  And that's why we left that

25  unredacted.

1      But the e-mail investigation is not relevant to this case.

2  We're not relying on it.

3          MR. LIN:  Your Honor, Mr. Gudjonsson was provided

4  this memorandum as an attachment to an e-mail, and was asked to

5  review it.

6      (Reporter requests clarification.)

7          MR. BAKER:  Yeah.  He probably was asked to review

8  it.

9          THE COURT:  He was --

10     The e-mail says he was asked to review it?

11         MR. BAKER:  I'm not aware of what e-mail he's

12  referring to; but if he was, I suspect he was asked to review

13  Roman Numeral III, which is unredacted.

14         THE COURT:  Does Mr. Nardinelli know what the e-mail

15  says?

16  (Discussion off the record.)

17         MR. NARDINELLI:  What the e-mail says, I don't know,

18  Your Honor; but this is actually a very useful document in

19  helping to understand what the different investigations were.

20     So this is an overall memo provided by Keker.  And it's

21  sort of a high-level, *Okay.  This is what we're going to do*.

22  So it makes sense that it would go to Mr. Gudjonsson, because

23  Mr. Gudjonsson and his team were responsible for Part III.

24     It just so happens that Keker combined it into one memo,

25  instead of sending, you know, the Gudjonsson memo to

 1  Gudjonsson, and the e-discovery memo to e-discovery.  So it was

 2  never touched by Mr. Gudjonsson, or Mr. Brown, or Mr. Zbrozek.

 3  It was completely separate.

 4       **MR. BAKER:**  And frankly, Your Honor, I think

 5  Mr. Nardinelli makes a good point that Roman Numeral I is also

 6  an aspect that really we were not relying on.

 7       **THE COURT:**  In other words -- in other words, the

 8  investigation you were relying on is of the devices; the

 9  forensic, and those kinds of things; not any e-mail.

10       The defendants --

11       And you've produced and they've asked for relevant

12  e-mails, like any e-mail that, I'm sure, has Mr. Levandowski's

13  names, and all of those kinds of things.

14       What you're withholding is counsel's work product, in

15  terms of their similar, I guess you would say, investigation of

16  that e-mail.

17       **MR. BAKER:**  Correct, Your Honor.  We're not relying

18  on that in this case.

19       **MR. LIN:**  Your Honor, in the e-mail that this

20  memorandum was used as an attachment, it asks Mr. Gudjonsson to

21  review it.  It specifically asks him also to review Section

22  Number 2.  I don't have copies of this e-mail, but I'm happy to

23  provide counsel and the Court with --

24       **MR. BAKER:**  That's fine.  And I would just say,

25  Your Honor, even if that is the case, again, we're not relying

```
 1   on that aspect of the investigation.  We're only relying on the
 2   forensic investigation of the devices.
 3           MR. LIN:  But Your Honor, this is going back to the
 4   scope of the waiver that we were trying to talk to.  I mean,
 5   that -- that, I believe --
 6           THE COURT:  No, no, no.  I understand.
 7           MR. LIN:  I don't want us to reopen that.
 8           THE COURT:  No, no, no, no.  That's different.
 9   That's the waiver -- whether it applies to other employees.
10       This is an investigation of Mr. Levandowski.
11           MR. LIN:  Right.
12           THE COURT:  And so now we've actually spliced it
13   differently.  As Mr. Baker brought up, there were different
14   investigations of Mr. Levandowski.  The one they've waived is
15   --
16           MR. BAKER:  Correct.
17           THE COURT:  -- the forensic -- what you'd call
18   "forensic," although an e-mail is also forensic.
19       Is this the e-mail?
20           MR. LIN:  It is the e-mail, Your Honor.
21           THE COURT:  Did you provide it to --
22           MR. LIN:  I don't have another copy.  I'm happy to
23   provide counsel with a Bates number.
24           THE COURT:  So Kristinn is --
25           MR. BAKER:  Mr. Gudjonsson.  Yes.
```

```
 1              THE COURT:  -- a male?

 2              MR. BAKER:  That's correct.  He's from Iceland.

 3              THE COURT:  He's Dutch or Swedish?

 4              MR. BAKER:  Icelandic.

 5              THE COURT:  Oh, Icelandic.  Oh.

 6              MR. BAKER:  And while you're reading that,

 7   Your Honor, I'll just comment.  When we have been referring to

 8   it as "the forensic investigation," what we're specifically

 9   talking about is the investigation of the devices and the

10   investigation of log files that show what was done using those

11   devices; but that's it.  That's all we've relied on.  That's

12   all we're relying on in the case.

13              MR. LIN:  Your Honor, Mr. Brown's investigation --

14   and that was coordinated with the team at Google, including

15   Mr. Gudjonsson -- during the deposition, was asked about the

16   steps taken to analyze and investigate the devices of

17   Mr. Levandowski, of Mr. Sameer Kshirsagar, and Mr. Radu Raduta.

18       And the way that Counsel is splicing the investigation now

19   was not the way that the -- the investigation was presented

20   during testimony -- deposition testimony; and also not the way

21   that Your Honor -- that we understood Your Honor's August 18th

22   Order to --

23              THE COURT:  Was there a response to this e-mail?

24              MR. LIN:  I have a further e-mail chain on this.

25       Again, I'm happy -- I don't have copies for opposing
```

```
 1  counsel.

 2          THE COURT:  Yeah.  Maybe we should provide -- sorry.

 3  Mr. Nardinelli.

 4          MR. LIN:  It would be helpful if I gave you a

 5  complete e-mail.

 6          THE COURT:  It's okay.  Just --

 7          MR. LIN:  All right.  So here is the --

 8          THE COURT:  That seems to me that's probably coming

 9  within it.

10  (Whereupon a document was tendered to the Court.)

11          THE COURT:  Again, I'm not saying you have to turn

12  over the results of that e-mail investigation, or whatever.

13  It's just that splicing and dicing that here -- it's

14  information.  He did this investigation.  They're asking him --

15          MR. BAKER:  Well --

16          THE COURT:  -- his opinion.

17          MR. BAKER:  Your Honor, if I could point out, this

18  document says, "Dear Kristinn."

19      And I don't want to --

20      Has this been unredacted?

21      It has, because they have it.

22      So it says, *To the extent we can design our investigation*

23  *efforts to target some of the data listed in Section 3* --

24          THE COURT:  Yeah.

25          MR. BAKER:  -- *that would be ideal.*
```

1          THE COURT:  Yep.

2          MR. BAKER:  Okay?

3      Then it goes on and it says, *Would you recommend that I*

4  *connect with the discovery team regarding Section 2?*

5      The discovery team --

6          THE COURT:  Then read the next sentence.

7          MR. BAKER:  *Or would some of that be encompassed in*

8  *your scope of work?*

9          THE COURT:  Right.  That's why.  I want to know the

10 answer to that.

11         MR. BAKER:  Well, I think the answer to that is --

12         THE COURT:  Well, let's see what the answer is.  And

13 is the answer here?  Mr. Lin, do you only have one copy?

14         MR. LIN:  I only have one copy.

15         THE COURT:  Well, why don't you look at it, and tell

16 us what the answer is?

17         MR. LIN:  Sure.

18         THE COURT:  I don't know which e-mail we're looking

19 at.

20         MR. BAKER:  I'm not sure what he said --

21         THE COURT:  That's it.  What's the answer?

22         MR. BAKER:  -- but I mean our understanding is that

23 the three forensics employees were involved in the forensics

24 investigation, and that the e-discovery --

25      And let me just say when it refers to the "discovery

1  team," it's talking about -- Google has a set of e-discovery

2  lawyers that are responsible.

3         THE COURT:  No, no, no.  I agree that doesn't

4  necessarily mean he was involved in that investigation.

5      It's that last sentence:  *Or is this within the scope of*

6  *your work?*

7      If he says yes --

8         MR. LIN:  Your Honor, I think this answers your

9  question, down at the bottom paragraph of this page.

10  (Whereupon a document was tendered to the Court.)

11         MR. LIN:  That's Mr. Gudjonsson's reply at the very

12  bottom.

13         THE COURT:  Yeah.  Okay.  He says, *Some of it will*

14  *also be encompassed within the scope of our work*.

15      So you need to --

16         MR. BAKER:  Well, Your Honor --

17         THE COURT:  -- produce this document in unredacted

18  form.

19      We can't -- this is what I said the other day.  You cannot

20  slice it and dice it that way.  It's all --

21      Look.  When you choose to waive work product, that's a

22  serious decision; but it waives it as to the subject matter.

23      He's now saying this Roman Numeral II is going to be

24  within the prior scope of my work.

25         MR. NARDINELLI:  But he explains, Your Honor, here's

1  what's going to be encompassed in the scope of his work.

2          **THE COURT:**  I'm not going to slice it and dice it

3  that way.  We can't do that.  Look, you have a choice.  You

4  waive it, or you don't waive it.  When you waive it -- boom!

5          **MR. BAKER:**  Understood.

6          **THE COURT:**  You don't get that narrow.  I understand

7  that it may be -- but errors going to waiving it.

8          **MR. BAKER:**  Got it.  Got it.

9     Just to be clear, though, we're not saying that the other

10 aspects of the investigation are now within the scope of the

11 waiver.

12         **THE COURT:**  I'm not saying that.  No, no, no, no, no.

13 I'm not saying --

14         **MR. BAKER:**  We just have to produce the document.

15         **THE COURT:**  No, no, no, no, no.  I'm not saying that

16 the results of the attorneys' e-mail investigation --

17         **MR. BAKER:**  Got it.  Got it.

18         **THE COURT:**  -- have been waived.  I'm not saying

19 that.  You hear that, Mr. Lin?

20         **MR. LIN:**  I hear that.  Yes, Your Honor.

21         **THE COURT:**  I'm saying this document, give them in

22 unredacted form.

23         **MR. BAKER:**  Understood.  The slicing and dicing

24 issue.

25         **THE COURT:**  Exactly.

1    MR. BAKER:  Got it.

2    MR. LIN:  Your Honor, I also --

3    THE COURT:  Now, they may make some argument later --

4 I don't know -- but I'm not deciding that today.

5    MR. LIN:  One of the documents I passed up to the

6 Bench, Your Honor, was, I believe -- I mean, if we can get

7 clarification on this, as well, this was another major

8 document.  And I believe I passed the document -- a copy of

9 this -- to opposing counsel.

10    This is the event description incident tracking document.

11    THE COURT:  Oh.  Event description.  I see it.  Yeah.

12    MR. LIN:  Right.  And so what this -- here you go.

13 One copy is the copy that was produced last Thursday, and the

14 other copy is a copy that was produced last night.  There are

15 no changes to the redactions here.

16    THE COURT:  Okay.

17    MR. LIN:  If we can get guidance I -- you know,

18 again, not knowing what is --

19    THE COURT:  Okay.  So that they'll -- Mr. Nardinelli

20 will find it.

21 (Whereupon a document was tendered to the Court.)

22    THE COURT:  And I'll look at it.

23    Okay.  So pages 1, 2, 3 -- I don't think those need to be

24 redacted.

25    MR. BAKER:  They do, or do not?

1      THE COURT:  Do not, but page 8 -- do you have it?

2      MR. BAKER:  I do.

3      THE COURT:  Why doesn't that encompass the

4  investigation of Mr. Levandowski?  Yeah, it does.

5      MR. BAKER:  Well, I just want to make sure I'm

6  looking at the right thing.  Are you looking at -- the sentence

7  starts, "There are" --

8      THE COURT:  Eight.  Yeah.  "There are."

9      MR. NARDINELLI:  The reason, Your Honor -- page 8

10  ties to page 6.  So underneath the section where it says,

11  "Analysis from Laptops," and you see [Redacted].  That's

12  Gary Brown's alias.  And then you can see underneath, there's a

13  name highlighted.

14      And everything that follows, beginning at page 6, and

15  going, I think, to the end of the document --

16      THE COURT:  Yep.

17      MR. NARDINELLI:  Yeah, to the end of the document.

18      That's the analysis of this other person's laptop.

19      THE COURT:  Yeah, but that analysis --

20      So the investigation of Mr. Levandowski, I am sure,

21  encompassed other things and people.  Right?

22      MR. NARDINELLI:  Well --

23      THE COURT:  That's what this says.  This is talking

24  about Mr. Levandowski.  You can't slice it that way.

25      MR. BAKER:  Okay.  I mean, just so you know, the

1   reason we held this back is because, again, what we were

2   relying on is the investigation of the two devices, and the

3   logs that go with these devices.  And this was the

4   investigation.

5            THE COURT:  This is also a forensic investigation.

6            MR. BAKER:  Of someone else's device.

7            THE COURT:  But it's tied into the investigation.

8            MR. BAKER:  I understand.  I understand.

9            THE COURT:  There's no way that people doing it

10  somehow put blinders on.  You see what I mean?

11           MR. BAKER:  I do.  I understand.

12           THE COURT:  It's all in their head.  It's all in

13  their head as to Mr. Levandowski.

14           MR. BAKER:  I mean, I'm sure you can appreciate we

15  had concerns about broadening --

16           THE COURT:  I'm not faulting you, at all.  That's why

17  we're here today.

18           MR. BAKER:  Could I just ask you one question,

19  though, on pages 1, 2, and 3?

20           THE COURT:  Yes.

21           MR. BAKER:  This is a list of other individuals --

22           THE COURT:  Yes.

23           MR. BAKER:  -- that were investigated.

24       Were you saying that we do need to --

25           THE COURT:  No.  I think you don't.

1          **MR. BAKER:**  Oh, we don't.  Got it.  Got it.  Got it.

2     Okay.   Thank you.

3          **THE COURT:**  There's nothing intertwined there.

4          **MR. BAKER:**  Thank you.

5          **MR. LIN:**  Your Honor, going back to what you had

6     spoken about earlier, there were portions in which, if the

7     paragraph is split up into, you know, two words are redacted

8     here, and then a sentence, and then three words are redacted

9     thereafter, I think this goes to kind of the slicing and dicing

10    that makes it very hard for defendants to understand what the

11    contents of the redactions were.

12       If I can get clarification from the Court as to, you know,

13    to the extent that we're fine dicing some of these paragraphs

14    into pieces that would be hard to understand what the substance

15    would mean, is there -- should those redactions, as you said,

16    err on the side of disclosure --

17          **THE COURT:**  Mm-hm.

18          **MR. LIN:**  -- versus err on the side of redactions?

19          **THE COURT:**  Yeah, that's what I said; but these ones

20    I read -- it's easy.

21          **MR. LIN:**  Yes, right.

22          **MR. BAKER:**  And with respect to what Mr. Lin was

23    referring to, as I said before, we'll be happy to go back and

24    take another look, as long as we have -- now that we have the

25    Court's --

1              THE COURT:  Yeah.

2         MR. BAKER:  -- Order about a broader waiver.

3              THE COURT:  So, like, page 9 looks okay, because it

4    doesn't seem to be anything that overlaps with those three.

5         MR. LIN:  Sorry.  "Okay" as in "Okay to redact"?

6         THE COURT:  To redact, yeah.

7         MR. LIN:  Okay.

8         THE COURT:  Ten is fine.  Eleven is fine.

9    Yeah.  So basically you see where I'm going?  Is --

10             MR. BAKER:  I do, Your Honor.  I do.

11             THE COURT:  Yeah.  When it has anything that could

12   possibly bear on the investigation of those three, it should be

13   disclosed, even if it was learned in the process of

14   investigating the other people, because there's no way -- since

15   it's those three people who are doing that investigation,

16   there's no way that somehow that was parceled out in their

17   head.

18             MR. BAKER:  Understood.

19             THE COURT:  It's all part of the panoply of

20   information that they had.

21             MR. BAKER:  Understood.

22             THE COURT:  Anything else I can give guidance on?

23        MR. LIN:  Just one item regarding redactions, and

24   then we're happy to talk also about the privilege logs; but the

25   one item regarding the redactions was within the production of

```
 1   29 documents that were listed that are -- that Mr. Baker and

 2   Waymo had produced last night.

 3       Within that, there were also machine record logs that

 4   appeared to be large documents with machine string and

 5   information that, to a layperson like myself, I don't

 6   necessarily understand; but it's information that -- I can't

 7   determine at this point whether or not it would be useful for

 8   the expert.  And many pages are redacted of that info.

 9       Like, I can't recall off the top of my head, but I believe

10   one of the documents, for instance, was 165 pages.  Much of

11   that, if not, you know, two-thirds of that, was -- had some

12   form of redactions.

13           THE COURT:  All right.  We'll hear from

14   Mr. Nardinelli --

15           MR. LIN:  Sure.

16           THE COURT:  -- if he knows what they're talking

17   about, and why it's redacted.

18           MR. NARDINELLI:  I think I know what Mr. Lin is

19   talking about, and I can hand up an example.

20           THE COURT:  If he thinks he's a layperson, I'm a

21   lay-layperson when it comes to this stuff.

22   (Whereupon a document was tendered to the Court.)

23           THE COURT:  Oh, yeah, I understand this.

24           MR. NARDINELLI:  So everything in yellow is redacted.

25   And what this is is a spreadsheet, but when you print it out
```

1    on, you know, .pdf pages, it doesn't print as prettily.  You

2    don't see the columns and the rows.

3        But all of these are the actors involved.  And if you go

4    to page -- they're not numbered, but page 5, you can see where

5    the redactions end --

6           **THE COURT:**  Mm-hm.

7           **MR. NARDINELLI:**  -- corresponding to Mr. Raduta and

8    Mr. Kshirsagar.

9        So what this is is -- it's -- it's a big table.  There are

10   several of these tables, actually.  And we did the same thing

11   for all of them, which is we redacted the rows to show what

12   other people are doing, and we unredacted the rows that show

13   what Radu, Sameer, and Anthony are doing.

14          **THE COURT:**  So these show what they were doing on the

15   network at any particular time?

16          **MR. NARDINELLI:**  Yeah.  Thanks.  I did a -- I was

17   going to say I did a poor job explaining.  I think I did a

18   nonexistent job explaining.

19          **THE COURT:**  Yeah.

20          **MR. NARDINELLI:**  This is -- I'm not sure which this

21   is, but they're a similar set.  This is drive records.  So

22   there's a spreadsheet that shows:  What presentations did

23   somebody download from drive?

24       Another spreadsheet is:  What spreadsheets did somebody

25   download from drive?

1     What document did somebody download from drive?

2     What documents did somebody share from drive?

3     What presentations were shared?

4     And what spreadsheets were shared?

5     So all kind of the same beast, just different

6  permutations.  And we treated them all the same.

7          THE COURT:  Okay.

8          MR. LIN:  If that's the explanation, again, I don't

9  know if this is information that -- as a layperson, I am not

10  quite sure the significance of the information that's been

11  redacted, versus unredacted; but my understanding of

12  Mr. Nardinelli's representation is that these have nothing to

13  do with Mr. Kshirsagar or Mr. Raduta.

14          THE COURT:  No.  It's the activity of people, other

15  than those three.

16          MR. LIN:  I understand.

17          MR. CHATTERJEE:  Your Honor, if I can just add --

18          THE COURT:  Yes, Mr. Chatterjee.

19          MR. CHATTERJEE:  So this information would be

20  relevant for other reasons, because if those people are doing

21  the same things as the three folks, it would -- it would

22  actually serve to contradict their assertion that there was

23  wrongful activity.

24          THE COURT:  Okay.  That's different, though.  That's

25  not a waiver.  That's just whether the evidence is relevant.

1        **MR. CHATTERJEE:**  Right, but this is just --

2        **THE COURT:**  The evidence could be relevant.  The

3  question is whether it's a waiver -- whether it falls within

4  the scope of --

5      They did an investigation.  This is work product.  There

6  may be -- maybe you ask for this material somewhere else, and

7  then it's produced, so that it's not attorney work product.

8  Then you can make your relevance argument.  Relevance doesn't

9  get you within the scope of the waiver.

10        **MR. CHATTERJEE:**  I'm not even sure that's privileged

11  information, Your Honor, because it's just -- it's just raw

12  data about what people's activity on the network was.

13        **MR. BAKER:**  The investigations were done at the

14  advice of counsel, Your Honor.  All of them.

15        **THE COURT:**  It was directed by counsel -- this

16  investigation.  This --

17      In other words, this spreadsheet was created as part of

18  the investigation.

19        **MR. BAKER:**  Correct, Your Honor.

20        **THE COURT:**  It's not the raw data.  It's a

21  spreadsheet that was created.

22      If you had asked for the data, I guess you could create

23  your own.

24        **MR. CHATTERJEE:**  Well, we did.  And they said it was

25  too onerous to give us.

1          **THE COURT:**  That's the motion that I think I probably

2    have coming today.

3          **MR. CHATTERJEE:**  One of them.

4          **THE COURT:**  Okay.  That's when you make your

5    relevance argument.  And maybe.

6          **MR. NARDINELLI:**  But to be clear, the raw data was

7    gathered by Mr. Brown.

8          **THE COURT:**  No, no, no.  I'm saying you don't have

9    to -- as part of --

10      Mr. Chatterjee's arguing that this data could be relevant.

11   I'm not disagreeing with that.  It could be.

12      That doesn't mean that it falls within the scope of the

13   waiver.  Right?  That's a different argument, and one I'll

14   probably have to address.  It's the argument he made the other

15   day.  This is what -- SVN-log stuff.  Right?

16         **MR. CHATTERJEE:**  Well, there are a whole variety of

17   logs.

18         **THE COURT:**  Yeah, yeah, because what you want to show

19   is that other employees engaged in the same conduct that Waymo

20   claims is suspicious.

21         **MR. CHATTERJEE:**  Actually, Your Honor, I would state

22   it slightly differently, which is:  They didn't investigate

23   whether other people were -- were -- were engaging in similar

24   sorts of behavior, and forming the conclusions, and trying to

25   draw the inferences that they did.

1      THE COURT:  Okay.  Well, that's an argument.

2      MR. BAKER:  I'm not sure.

3      THE COURT:  That's just attorney argument.  Okay.

4  That's different.  All right.

5    Okay.  Anything else I could -- on the redactions you

6  think?  So --

7      MR. CHATTERJEE:  So, Your Honor, I think given the

8  interchange that I just saw, at least -- and I participated in

9  a little bit -- I think we're going to have to ask you to do it

10 *in camera*, because there's -- every single issue, there was a

11 fair amount of contention.

12     THE COURT:  No.  Right.  I'm giving guidance.

13   Mr. Baker's going to go back.  Right?

14     MR. BAKER:  Correct.

15     THE COURT:  And do it.  I'm here to the extent you

16 can't, but they'll give their explanation, but I've given the

17 guidance to both of you.

18     MR. CHATTERJEE:  I understand, Your Honor.

19     THE COURT:  Yeah.

20     MR. CHATTERJEE:  And what I would really like is a

21 very firm deadline.

22     THE COURT:  The deadline's today.

23     MR. CHATTERJEE:  Okay.  Thank you.

24     THE COURT:  You're not leaving.

25     MR. CHATTERJEE:  Okay.  So we're doing it here.

```
 1              THE COURT:  Yes.

 2              MR. CHATTERJEE:  Okay.  Perfect.

 3              THE COURT:  Even -- I have a calendar at 1:30.  I'll

 4    even do my calendar in D, if I have to.

 5              MR. CHATTERJEE:  No.  That's what I wanted to know,

 6    Your Honor.  I didn't want us all to be leaving.

 7              THE COURT:  Yes.

 8              MS. CHANG:  Your Honor, what about your suggestion to

 9    unredact everything, subject to our agreement?

10              THE COURT:  That's out there, but Mr. Chatterjee

11    wouldn't agree to it, because he wants to be able to argue --

12        Because they're going to unredact stuff.  And he wants to

13    be able to argue that, based on what he learns in that

14    unredacted stuff, that there should be an additional waiver of

15    those other investigations; but he's -- you're free to do that,

16    but all defendants have to agree to that.  And he wouldn't do

17    that.  So that's why we're doing this path.  That's, of course,

18    still out there.

19              MS. CHANG:  Understood, Your Honor.

20              THE COURT:  Yeah.  Okay.  Privilege.

21              MR. LIN:  Privilege logs.  Your Honor, I'll pass to

22    the Court --

23    (Whereupon a document was tendered to the Court.)

24              MR. LIN:  On yesterday's telephonic hearing,

25    Your Honor asked for Otto Trucking to take a look at the
```

1  privilege logs, and note for the Court which entries it
2  believed was improperly withheld after the August 18th and
3  August 28 Orders.
4      I wanted to bring this to your attention.  I'm happy to
5  talk about it further.  I think one of the privilege-log
6  entries that is particularly interesting is the Tab Number 2,
7  March 23rd, 2017, in which one of the documents is highlighted
8  in red, and the rest are in yellow.
9      I can give you some information about what the different
10 colors mean.  The red-highlighted documents are documents that
11 Waymo has said that it will remove from its existing privilege
12 logs, and produce.  They said that they would provide Bates
13 numbers to that.
14     I understood that there has been some communication with
15 our team about that -- that document.  I believe it's been
16 sent, but we're still trying to piece together -- it's very
17 difficult to make out which documents have actually been
18 produced, because, as Your Honor can see, the Bates-number
19 field is empty.
20     The -- on the other hand, the entries that are highlighted
21 in yellow are the entries that they continue to withhold, and
22 that defendants believe -- or Otto Trucking, rather, believes
23 should have been produced in response to the Court's Orders
24 about subject-matter waiver.
25     As Your Honor can see on the March 23rd, 2017, privilege

1    log, Number 2 is -- is an e-mail to and from Mr. Gorman -- from

2    Mr. Gorman, rather, and to Mr. Kristinn Gudjonsson, Gary Brown,

3    among others.  And this was on October 6th, 2016.

4        Previous -- we -- during the meet-and-confer yesterday, it

5    was -- Waymo counsel explained that the reason they were

6    continuing to withhold documents, such as these that are

7    highlighted, was because this was after the conclusion of the

8    forensic investigation.  And they said that because the

9    forensic investigation had concluded by this time, that the

10   scope of the Court's Orders no longer applied to it.

11       I don't believe that's right.  And I think Your Honor also

12   said that it --

13             THE COURT:  No.  That was before our call yesterday.

14             MR. LIN:  Right, right.  So there was no temporal

15   limitation on these productions.  And so I think that may

16   address a good number of the entries here highlighted in

17   yellow.

18             MR. BAKER:  So --

19             MR. NARDINELLI:  Well --

20             MR. BAKER:  Go ahead.

21             MR. NARDINELLI:  If I'm looking at Tab 2, the entries

22   that are in yellow -- and I think they go, starting at

23   Number 2.  We didn't claim that these occurred after the

24   investigation had concluded.  These are dated October of 2016.

25       And not only that -- and I'm looking for it, but I am

1    100 percent confident not only that we've produced this

2    document; but that we gave them yesterday a table that said,

3    *Here's the Bates number of this document*, and it corresponds to

4    entries 2 through 11.  I know that to be the case.

5              THE COURT:  All right.

6              MR. LIN:  Your Honor, I don't -- if I recall -- I

7    don't have the copy of the document in front of me, but if I

8    recall correctly, that document did not list entries 2 through

9    16.

10             THE COURT:  Okay.  Well, I can't resolve that.

11             MR. LIN:  Yeah.

12             THE COURT:  You guys have to resolve that.

13             MR. LIN:  Well --

14             THE COURT:  So in any event, what Mr. Nardinelli is

15   saying:  He believes they are going to produce it.  If they

16   haven't produced it, they intended to produce it.

17        Do you have one that I can give some guidance on?

18        I mean, I could -- if it will help, with the parties

19   meeting that will --

20             MR. LIN:  Sure.  Well, so as to these --

21             THE COURT:  And, Mr. Cooper, are you able to stay to

22   assist them?  I don't want to require you to do so, but --

23             SPECIAL MASTER COOPER:  No.  I am.

24             THE COURT:  Oh, great.

25             SPECIAL MASTER COOPER:  We're supposed to have a

1   meet-and-confer after this hearing --

2            THE COURT:  Do it here.

3            SPECIAL MASTER COOPER:  -- and so we'll do that then.

4   Thank you.

5            THE COURT:  Yeah.  Set up the phone, if you need it.

6        MR. LIN:  Your Honor, I guess one of the questions

7   that we had was on Tab Number 7, for instance.  This

8   corresponds to the August 8th, 2017, privilege log.

9        And so there's a number of entries here that are

10  interspersed that are highlighted yellow.  And if it's the case

11  that we do agree that, you know, these entries that are

12  highlighted in yellow should still be -- should be produced, or

13  if they have not been so already, then I think we might be in

14  agreement on a substantial portion of the privilege logs, but I

15  just wanted to get clarification from the Court that there

16  should be no temporal limitation on the forensic investigation.

17           THE COURT:  That's what I said in our call.  Right?

18       MR. LIN:  Okay.

19       MR. BAKER:  And our position on that, Your Honor, is

20  that we're not trying to impose a temporal limitation.  Our

21  understanding of the waiver was that it goes to the

22  investigation.  And these communications are not part of the

23  investigation.  They are communications between Quinn Emanuel

24  and in-house at Google, talking about draft Complaints, and

25  making sure that we had all of the facts correct.

1          **THE COURT:**  Right, right.  And I don't think that's

2     part of the investigation.

3          **MR. BAKER:**  Okay.

4          **THE COURT:**  That -- that waiver, necessarily; but

5     anything about --

6          **MR. LIN:**  But I think --

7          **THE COURT:**  Yeah.

8          **MR. LIN:**  One of the issues is that, from, you know,

9     reading these privilege logs, the descriptions aren't

10    sufficiently detailed to justify the privilege.  I mean, if we

11    go back to --

12         **THE COURT:**  No, no.  That's why you do your

13    meet-and-confer.  Nobody on any side should talk to me about

14    sufficiency of privilege logs.  Okay?

15         **MR. LIN:**  Okay.  Understood.

16    Well, I guess the last issue about the privilege log is

17    that there's -- on these -- on these log communications,

18    there's no -- as I understand it, there's very little

19    communication that are involving Quinn attorneys with either

20    Mr. Gudjonsson, or Mr. Sameer Kshirsagar, or Mr. Radu Raduta.

21    And I understand your Court's Order saying that, you know,

22    if it's not about the forensic investigation, that those

23    communications remain privileged.

24    However, if it is about the forensic investigation, even

25    communications with counsel -- those are not privileged.

1      The log entries, themselves, don't seem to reflect any

2   such communications.  And I think part of it is not to the

3   sufficiency of the description of the privilege log, but of the

4   logged entries, themselves.

5          THE COURT:  Well, let me ask Mr. Baker or

6   Mr. Nardinelli.  Is there a particular document you think, if I

7   looked at it right now, that would help you in your discussions

8   going on, or do you think not?

9          MR. BAKER:  Well, I'm not exactly sure what the issue

10   is, to be honest, Your Honor.  You know, are there particular

11   entries that you're referring to, or --

12          MR. CHATTERJEE:  Let me give a little guidance here.

13   Here's what our concern is, Judge, is on these logs, it doesn't

14   indicate, really, interactions with the Quinn Emanuel firm

15   associated with the investigation.

16          THE COURT:  Mm-hm.

17          MR. CHATTERJEE:  But given the timing of things, it

18   seems like there should be at least something in the log about

19   this.

20          THE COURT:  I don't know.  That doesn't surprise me,

21   at all.  That doesn't.  They were litigation counsel, come in.

22   That -- they weren't directing people.

23          MR. CHATTERJEE:  You would expect to see it on a log,

24   then.

25          MR. BAKER:  I guess my confusion -- I mean, my

```
1   confusion --
2          THE COURT:  They're not logging --
3      You're not logging all attorney-client-privileged
4   communications since the litigation was filed.  Right?
5          MR. CHATTERJEE:  No.  I'm talking about
6   prelitigation.
7          MR. PERLSON:  We dealt with this issue about trying
8   to bring us in long ago.  We had that call when they were
9   trying to subpoena our partner; but it's all related to that.
10         THE COURT:  They're not talking about that.
11         MR. PERLSON:  They know that when we came in.  And so
12  this is -- this argument, if they were actually paying
13  attention, they would know has no merit.
14         MR. CHATTERJEE:  That's not what I'm getting at, at
15  all, Your Honor.
16     On the call yesterday -- I couldn't attend it.  I was at
17  the doctor's, but I read the transcript.
18     You know, the investigation was going on, you know, within
19  days of the lawsuit being filed.  Quinn Emanuel was surely
20  involved at that point in time.  The log doesn't investigate
21  things going on at that time.  I'm not talking about, you know,
22  way earlier, whenever that conflict issue that Uber raised was.
23  I'm talking about --
24         THE COURT:  Are you saying there are zero documents
25  with Quinn Emanuel, or you think there should be more?
```

1          **MR. CHATTERJEE:**  I -- I think there should be more.

2          **THE COURT:**  Okay.  Well, that's -- if there are

3  some -- if there are some, what you're actually saying is they

4  went through, and they decided there are these relevant,

5  responsive documents; and we're only going to log some, and not

6  others.  Okay?

7      Why should I think that?  Why should I think that the

8  lawyers are violating their ethical and professional

9  responsibilities?

10         **MR. LIN:**  Well, Your Honor, when -- when -- not that

11  there were none, but I think the number comes to, like, maybe

12  six, or something like that.

13         **THE COURT:**  I have to tell you that does not surprise

14  me.  It doesn't strike me as a surprise.

15      They've gone through -- right? -- those three people; all

16  their e-mails that have the things; and they've logged them.

17         **MR. BAKER:**  We have, Your Honor.

18         **THE COURT:**  Have you seen something else that says

19  they were directing the investigation?

20      No.  It was Keker.

21         **MR. CHATTERJEE:**  But it isn't clear to me.  It

22  just -- it seems strange that they only have six

23  communications.  They file a lawsuit.  And then they file a

24  preliminary injunction motion.  And the grand total of their

25  communications with these witnesses that are the centerpiece of

```
 1    their case --

 2              THE COURT:  Yeah.

 3              MR. CHATTERJEE:  There are only six communications.

 4              THE COURT:  Okay.

 5              MR. CHATTERJEE:  But we'll investigate that with the

 6    witnesses.

 7              THE COURT:  Yeah.  Yeah.  I mean, I don't know what

 8    you want me to do.

 9              MR. CHATTERJEE:  I'd like to have you ensure that

10    they've actually logged all of their communications prefiling

11    with the witnesses.

12              THE COURT:  That are responsive?

13              MR. CHATTERJEE:  That are responsive.

14              MR. BAKER:  And I think I just answered that we have,

15    Your Honor.

16              MR. CHATTERJEE:  Okay.

17              THE COURT:  Okay.  So there aren't any ones that you

18    think that, if I looked at, would be helpful.

19        Mr. Baker?

20              MR. BAKER:  I don't think so, given Your Honor's

21    comments just now.

22              THE COURT:  All right.  Okay.  So you can have the

23    room.

24        Now, should I -- I think there may be people here not

25    involved with the case.  I think we will no longer be in public
```

1  session; and we'll essentially be using the courtroom for your

2  meet-and-confer.  So anyone who is here, who is not with the

3  firms, or -- you can have Mr. Patchen stay.  It's up to you.

4  He's a related party -- or not.  Mr. Ehrlich was here.  I don't

5  know if he left, but anyone else who's here, we're going to

6  close the courtroom, and use it as your meet-and-confer.

7       When I do come back, we'll reopen the courtroom, and it

8  will be a public proceeding.

9            **MR. BAKER:**  Thank you, Your Honor.

10           **MR. LIN:**  One last issue.  It's a small one, about

11  the confidentiality designations.  I didn't know if we wanted

12  to address that currently, or if opposing counsel had made

13  changes to the confidential designations to the exhibits of the

14  motion that he we filed.

15           **MR. BAKER:**  I believe our sealing declaration

16  deadline is tonight.  We have taken your instructions and your

17  comments about Judge Alsup to heart.  We're speaking with our

18  client.  I mean, so that's where we are.  I mean, we can talk

19  about it more if you want.

20           **THE COURT:**  I'm going to -- I'm going to rule on it

21  tomorrow.

22       They're going to submit their declaration, and it will be

23  done.  So either they've justified it, or they haven't.

24       For some of them, I'm assuming they're not going to even

25  try because it was so obvious that it wasn't.  I like it

```
 1  Mr. Baker he smiles.
 2         MR. CHATTERJEE:  Your Honor, there's one small
 3  administrative thing.  I hesitated when my colleagues have the
 4  final --
 5     Just on the scope this of this waiver issue, and the
 6  documents have been kind of trickling out, and the depositions
 7  that are now scheduled for next week -- we don't want to lose
 8  the opportunity to be able to file a Motion to Compel if
 9  there's more privilege disputes.  Today's our deadline, so I'd
10  like to get some guidance on that.
11         THE COURT:  If stuff is produced, like, after today,
12  and then it's not -- obviously, you haven't lost your
13  ability --
14         MR. CHATTERJEE:  Well, even last night, things were
15  produced.
16         THE COURT:  Right, right, right, right.  No.
17  Obviously, you can't move to compel based on stuff that you
18  didn't have.  I got that.  I got it.
19         MR. CHATTERJEE:  Yeah.  I just don't -- I want to
20  make sure that we're not held to that deadline for just this
21  limited body of stuff.
22         THE COURT:  No.  You'd have to make some showing
23  about why you couldn't do it before.  The burden will be on you
24  to make the showing why you couldn't do it before.
25         MR. CHATTERJEE:  That, we can --
```

1      **THE COURT:**  If it's based on things you didn't have,

2   then it's based on things you didn't have.  I mean, that's just

3   the way it works.

4      That's why I said I assume I will be dealing -- no -- I

5   will have the pleasure of dealing with you all through trial;

6   because I assume there will be ongoing matters that will be

7   going on, but okay.

8      And so I'll close the courtroom.  Ms. Means will give you

9   her contact number.  And -- but I assume you'll be here for a

10  while, at first.  And then you can let her know when you

11  need -- if you need -- I'm trying to be optimistic -- if you

12  need my assistance again today.  Okay?

13     But I want you to sit down -- you're all here with your

14  stuff -- and get as much as you can resolved.

15      **MR. BAKER:**  Thank you, Your Honor.

16      **THE COURT:**  Great.  Thank you.  Oh, and you're

17  welcome to go get food and bring it in here.

18      **MR. BAKER:**  Thank you.

19  (Recess taken from 11:39 a.m. until 3:28 p.m.)

20      **THE CLERK:**  Remain seated and come to order.

21  Recalling Civil Action C. 17-0939, Waymo versus Uber.

22      **THE COURT:**  Okay.  Do you still have everyone's name

23  from this morning?

24      **REPORTER:**  I'm so sorry.  With the exception of the

25  gentleman at --

```
 1            THE COURT:  Because he was back-benching this
 2   morning.
 3            MR. PRITT:  I was.  I didn't want to annoy you.
 4   Maxwell Pritt, from Boies Schiller & Flexner, on behalf of
 5   defendants Uber and Ottomotto.
 6            MR. CHATTERJEE:  And, Your Honor, I think
 7   Arturo González might be on the phone.
 8            THE COURT:  Is he on the phone?
 9            THE CLERK:  We haven't called him yet.
10            THE COURT:  Okay.  Are you going to call?
11            THE CLERK:  Well, he wasn't ready until 3:30.
12            THE COURT:  Oh, okay.  We're going to get started
13   then.
14        Everything resolved?
15            MR. BAKER:  We're all set, Your Honor.  The case is
16   good to go.
17        No.
18        So we have been working diligently, and thought that it
19   was a good time to bring you back in.  What we did was,
20   starting with the redactions, I sat down with Mr. Cooper, and
21   we were going through, redaction by redaction.  And some, we
22   had volumes --
23            THE CLERK:  I'm sorry.  Do you mind if I call
24   Mr. González to see if he's available now?
25            THE COURT:  No, but he can just join in whenever we
```

1  join in.

2     Keep going.

3        MR. BAKER:  Okay.  We had voluntarily volunteered to

4  uncover a couple of redactions; a couple Mr. Cooper had said he

5  thought were properly redacted.  And then there were several

6  that we thought we were going to have to present to you.  We

7  got about halfway through the exercise, and realized that we

8  have, I guess, a misunderstanding.

9     My understanding from this morning was that if we

10  voluntarily unredacted something, there wasn't going to be an

11  argument about a broader waiver.

12     They have said that's not the case.  They've reserved

13  their right to argue a broader waiver.  And so at this point,

14  frankly --

15        THE COURT:  Okay.  All right.  So I understand what

16  you're saying.  So -- but by "broader waiver," you mean that by

17  redacting it, they waive the subject matter; or that you want

18  to use the document in terms of your argument that the

19  subject-matter waiver -- it's just a piece of evidence that the

20  subject-matter waiver should be broader than I've drawn the

21  line?

22        MR. CHATTERJEE:  It's the latter, Your Honor.

23        THE COURT:  Okay.  Do you see the distinction?

24        MR. BAKER:  I'm not sure I do.  Actually, this is not

25  something that --

1          **THE COURT:**  They're not arguing:  By unredacting and

2     disclosing it, that, in itself, is a waiver; a subject-matter

3     waiver.

4          Because you've now disclosed something that shows the

5     investigation of those other employees, you have waived your

6     attorney-client privilege or your work-product privilege with

7     respect to that investigation.

8          However, what it is -- whatever you show -- and you would

9     be showing it because I believe it falls within the -- at

10    least, it can't be carved out, in fairness.  Whatever that

11    information is, they may use it as evidence to argue that the

12    line I've drawn in terms of the waiver is too narrow; and the

13    subject-matter waiver of the investigation of those three

14    Diligenced Employees encompasses those other things.

15         So it's not that the disclosure is a waiver; that it's

16    evidence of the waiver.  And I think that's a fair argument.

17         **MR. BAKER:**  Understood.  I mean, my understanding was

18    that they -- from our discussion a few minutes ago, was that

19    they were making the first argument; not the second argument.

20    So I'm not exactly sure where that leaves us.  We only got

21    about halfway through the exercise.

22         You know, we have the documents here (indicating), with

23    one copy that -- the remaining highlights -- the things that

24    are highlighted are the redactions.  I don't know if you want

25    me to just hand this up.

```
 1              THE COURT:  Well, maybe.  Let's see.  I mean, the
 2    reason we've all been on this very tight time schedule is I'm
 3    not here tomorrow.  I actually start a trial on Tuesday.  So we
 4    didn't do this today, and you have your depos next week.  You
 5    know, we were going to be meeting on Sunday, which we weren't.
 6              MR. BAKER:  Understood.
 7              THE COURT:  So today was the day.  So why don't you
 8    hand them to me?  Let's get this done.
 9              MR. CHATTERJEE:  Your Honor, and quite candidly, even
10    though we were going through the exercise, I think that there's
11    still a line-drawing issue that's been a real challenge for the
12    parties.
13        You know, Mr. Baker and I have both been pushing on.  You
14    know, I would say 50 percent of the time, you know, he'd say,
15    *Well, we're going to challenge that kind of initial thought*.
16    And then I would say it the other 50 percent of the time.
17        So I think the likelihood is that you'll be --
18              THE COURT:  That's fine.
19              MR. BAKER:  Yeah.  I think Mr. Cooper can --
20              THE COURT:  I will be an umpire.
21              MR. BAKER:  Some close calls here.
22              THE COURT:  I'm not saying it's necessarily
23    completely rational.
24              MR. CHATTERJEE:  Yeah.  Your Honor, we have also gone
25    through the privilege-log issues.
```

1          THE COURT:  You all say the same thing.

2          MR. CHATTERJEE:  And I think there's a handful of

3   documents.  We've come up with a protocol on that that I think

4   will simplify things.

5          THE COURT:  Okay.  All right.  So I'm looking at

6   83640.  I'm just looking at the yellow highlights.  Right,

7   Mr. Baker?

8          MR. BAKER:  That's correct, Your Honor.  And again, I

9   don't know if you want us to explain our basis, or --

10         THE COURT:  I'll ask you if I have a question.

11         MR. BAKER:  Okay.

12         THE COURT:  Does this device that it's referring

13  to --

14      I'm looking at 9:38 on March 4th.

15      Is that a device that does not belong to any of the

16  Diligenced Employees?

17         MR. BAKER:  That's what I understand, Your Honor.

18         THE COURT:  Okay.  That doesn't need to be produced,

19  then.

20         MR. CHATTERJEE:  Your Honor, if we could turn you

21  back to the earlier part of the e-mail string --

22         THE COURT:  Sure.

23         MR. CHATTERJEE:  What's the Bates number?  If you go

24  to 83644, there's an e-mail that starts on February 8th, 2016.

25         THE COURT:  I don't have 83644.

1          MR. CHATTERJEE:  It's within that same string, I

2    believe.

3          THE COURT:  Okay.  Well, they're not Bates numbered.

4    So what's the date?

5          MR. CHATTERJEE:  I'll give you the date.  It's

6    February 8th, 2016, at 4:41 p.m.  And that's the first

7    redaction in the string.

8          THE COURT:  Yes.

9          MR. CHATTERJEE:  And if you look in the e-mail, it

10   says -- one paragraph down it says, *Below is a list of folks we*

11   *believe Anthony may have been targeting directly.  We suspect*

12   *that Anthony may have been careful not to leave a trail;*

13   *however, suspect that some of the folks he may have been*

14   *targeting were perhaps not as cautious.*

15         THE COURT:  Mm-hm.

16         MR. CHATTERJEE:  And if you look at the string, what

17   they're talking about is -- is, you know:  Were these other

18   people kind of a subterfuge for taking things?

19       And from our perspective, this whole string shows the

20   intertwined nature of this investigation.

21         MR. BAKER:  And I disagree.  I don't think this is

22   saying that these people were a subterfuge for Mr. Levandowski.

23       What it's saying is:  These are folks that we think

24   Mr. Levandowski might have been targeting to bring over to

25   Ottomotto, and so we need to investigate them.

1        But these are separate investigations.  I mean, obviously,

2    we're not investigating people that we didn't think were going

3    with Mr. Levandowski, but that doesn't mean that it not a

4    separate investigation, and outside of the waiver.

5        I mean, everyone that we were investigating, we thought,

6    you know, might have been going over, you know, with him.

7              **THE COURT:**  Right, but here's the rub, I think.  And

8    this is, I think, the difficulty of the line-drawing here.

9    You're investigating Mr. Levandowski to see if he took any

10   trade secrets with him.  And you're investigating, also,

11   because he took a whole bunch of people with him.  So obviously

12   what you're investigating is whether they, too, took trade

13   secrets together; whether they worked together to do that.

14       And maybe that you found that they didn't, but it's all

15   sort of coupled together.

16       You clearly -- of course, if you had found evidence from

17   these other people that pointed to or was relevant to

18   Mr. Levandowski, you would use it.  It's part of the same

19   investigation.

20       In other words, it's not tunnel vision that you're just

21   looking at Mr. Levandowski.

22       You look at who he was interacting with.  Who he, you

23   know -- to get there.  So --

24             **MR. BAKER:**  That's correct, Your Honor.  But the

25   point that I would make is that -- that in -- and I think this

1  is what you just said.  We were looking at people that he might

2  have been soliciting.  Okay?  The solicitation investigation

3  was not conducted by the forensics team.  There was a

4  solicitation investigation; there was also an e-mail

5  investigation; but neither of those was conducted by the

6  forensics team.  Mr. Gudjonsson --

7          THE COURT:  But I'm looking at the redacted part, and

8  that question doesn't have do with solicitation; does it?

9          MR. BAKER:  Well, this has to do with, I think, the

10  e-mail --

11          THE COURT:  What are they looking for evidence of?

12     Not solicitation.

13          MR. BAKER:  Well, I think that the e-mail talks

14  about:  These are the people that we think that he was

15  targeting.

16     And my --

17          THE COURT:  Can you help us find out if there's

18  evidence of -- I don't know.  Whatever.  I just say it's not,

19  like, AEO or whatever, without there being any waiver.  Right?

20          MR. BAKER:  He -- well --

21          THE COURT:  What they're doing -- can you help us

22  find evidence of -- right?  That's intertwined.

23          MR. BAKER:  Well, that's right, but we are not

24  relying on any of that affirmatively in this case.

25          THE COURT:  No.  I understand, but, see, that's the

1   slicing and dicing, I guess.

2   　　　　　MR. BAKER:  Okay.

3   　　　　　THE COURT:  You have the results of your

4   investigation.

5   　　　　　MR. BAKER:  Understood.

6   　　　　　THE COURT:  But the investigation that you

7   conducted -- in a way, you sort of want to say -- what you want

8   to say is, *We have to disclose the stuff that supports the end*

9   *result of our investigation*, but the waiver's not that broad

10  [sic] -- I mean, that narrow.  The waiver goes to the

11  investigation, which includes -- you did things.  You didn't

12  find any evidence to support your ultimate conclusion, which

13  may be:  You investigated these other people, and you didn't

14  find anything that supported that Mr. Levandowski had anything,

15  but you looked at them as part of that investigation, to the

16  extent that those people did.  Right?

17  　　　So who did they -- who are they asking for help, here?  Is

18  this to Mr. Brown?

19  　　　　　MR. BAKER:  I'm sorry.  Where are you?

20  　　　　　THE COURT:  The 4:41 p.m.

21  　　　　　MR. BAKER:  4:41.

22  　　　　　MR. LIN:  The following reply is to

23  Mr. Kristinn Gudjonsson.

24  　　　　　THE COURT:  Oh, same person.  Yeah.  So I think that

25  one has to be disclosed.  That one --

```
 1            MR. BAKER:  Okay.

 2            THE COURT:  That's different than the other one.

 3            MR. LIN:  And the reason we brought that to

 4   Your Honor's attention is because the following e-mails that

 5   come afterwards are -- we believe is premised on what this

 6   investigation -- or what, rather, this paragraph that was

 7   redacted is trying to convey for the investigation search.

 8            THE COURT:  Yeah.  This next one, at 8:22 a.m. --

 9   that should be unredacted.  I mean, you know --

10            MR. BAKER:  Okay.

11            THE COURT:  So I understand what Mr. Chatterjee was

12   saying, I think, in fairness.

13       See, I don't fault you at all for the line that we're

14   drawing, but you see how it's just very hard to do?

15            MR. BAKER:  Oh, I understand, Your Honor.

16            THE COURT:  I don't know if you were ever a

17   prosecutor.  You're investigating one person.  You look at

18   everyone else around, and it's part of the same investigation

19   in the end.

20            MR. BAKER:  I understand.

21            THE COURT:  But I don't know that that means

22   necessarily you have to -- I don't know how far it goes, but I

23   think these, you should.

24       Now, I don't know about the 9:38 a.m. one, though; but

25   certainly the 8:41 a.m. one.  These are all names we're going
```

1  to know, anyway, because they know who went to Otto.

2  　　　　MR. BAKER:  Yeah.  I mean, you know, my fear is,

3  again, we're just opening a can of worms.

4  　　　　THE COURT:  It's not an argument that there's a new,

5  additional waiver.

6  　　　　MR. BAKER:  Okay.  Understood.

7  　　　　THE COURT:  That you waived -- that you waived the

8  investigation of these other employees.  I mean --

9  　　　　MR. BAKER:  Thank you, Your Honor.

10  　　　　THE COURT:  -- they can say that.  I won't allow it.

11  Mr. Chatterjee said he agreed with my distinction.  There's a

12  difference from saying it's evidence that it's encompassed with

13  the waiver that you knowingly made.

14  　　　　MR. BAKER:  Understood.

15  　　　　THE COURT:  See?  Okay.

16  　　But -- so tell me about the 9:38 a.m.  I mean, this is

17  the -- because that's -- it's, like, two weeks later.

18  　　　　MR. BAKER:  Right.  You know, frankly, Your Honor,

19  if -- if -- if we're going to need to uncover the e-mails

20  below, we can uncover this one, as well.

21  　　　　THE COURT:  Okay.  I appreciate that.  Okay.  Okay.

22  In 83650.

23  　　　　MR. BAKER:  Yes.  And it's on the second page.

24  　　　　THE COURT:  Yeah.

25  　　　　MR. BAKER:  And you'll see that there, in between

```
 1   Mr. Kshirsagar and Mr. Radu, there's another name there.
 2               THE COURT:  And what's an LDAP?
 3               MR. BAKER:  Good question.  We had that come up.
 4   Mr. Nardinelli informed us all.
 5               THE COURT:  Mr. Nardinelli, our technical expert.
 6               MR. BAKER:  That's right.  It is essentially your
 7   user name.  So I'm JamesBaker@quinnemanuel.com.
 8               THE COURT:  I see.  Yeah.  I think this is the same.
 9               MR. BAKER:  Same thing?
10               THE COURT:  Same thing, I think.
11               MR. BAKER:  Okay.  Then that might take care.
12       The next document in here is the memo that we talked about
13   earlier, and as I told opposing counsel, my plan was to go back
14   to our transcript, and do what you requested us to do with this
15   memo, but I think that they had some additional questions about
16   it.
17               MR. LIN:  So, yes.  It was just a quick point of
18   clarification as to the redactions within Heading Number 1.  I
19   know that we addressed Heading Number 2, which talks about the
20   e-mails, but as to the redactions that were made within Heading
21   Number 1 --
22               THE COURT:  Yeah.  I think it's going to fall within,
23   now, my admittedly broader line.
24               MR. BAKER:  Understood.  That's for Number 1?
25               THE COURT:  Yeah.  I think the whole thing -- it
```

1   comes in.

2           **MR. BAKER:**  And Roman Numeral II?

3           **THE COURT:**  I mean, the truth is -- isn't it? -- that

4   there was a suspicion as to Mr. Levandowski, and that that led

5   to a broader investigation.  It wasn't --

6       It would be one thing if this was an investigation that

7   was sort of done routinely, or something; but he went there.

8   They had a suspicion.  All these other people went there.  It's

9   sort of the genesis of the whole thing, in a way.

10          **MR. BAKER:**  I take your point, Your Honor.

11          **THE COURT:**  At least that's a way of looking at it.

12      So then I think the same thing with the next one:  83656.

13          **MR. BAKER:**  If I could just ask you on the memo, just

14  to be clear, Roman Numeral I is going to be unredacted.  And

15  Roman Numeral II?

16          **THE COURT:**  Yeah.  The whole thing now.

17          **MR. BAKER:**  The whole thing.  Okay.

18          **THE COURT:**  I know -- and trust me -- as a lawyer,

19  it's so painful to see what is so clearly work product

20  redacted.  I get it.  It hurts, but that's the problem, because

21  Keker -- Keker's client waived the -- waived it.

22          **MR. BAKER:**  And I think the next one, Your Honor,

23  which is 83656, based on Your Honor prior -- your instruction

24  about the other document --

25          **THE COURT:**  Yep.  And the same with 658, it looks

1  like.

2          **MR. BAKER:**  Okay.  We will uncover both of those.

3          **THE COURT:**  And let me look at the bottom here.  So

4  is that --

5          **MR. BAKER:**  So is that -- are we up to 8665?

6          **THE COURT:**  No.  I'm looking at 658.  There was the

7  first page.  Right?  That goes, because that's the way of 656.

8          **MR. BAKER:**  Okay.  Got it.  I mean, this --

9          **THE COURT:**  Yeah.  No.  I see what you're saying.

10  And now because of that -- but the thing is Number 2 and 3

11  here -- we know that Mr. -- I'm so terrible with their names.

12          **MR. BAKER:**  Kshirsagar?

13          **THE COURT:**  No.  The three people.  It was Brown,

14  Kristinn, and --

15          **MR. BAKER:**  Mr. Brown, Mr. Gudjonsson, and

16  Mr. Zbrozek.

17          **THE COURT:**  Oh.  And we know that Mr. Gudjonsson from

18  this morning was involved.  We had that e-mail about, *Yeah,*

19  *that's kind of within in the scope of what I'm doing*.  Right?

20  And I don't think that was Number 3.

21          **MR. BAKER:**  I think that's right.

22          **THE COURT:**  But I think that was Number 2, and that

23  he was --

24      Okay?  Do you see?

25          **MR. BAKER:**  Again, I would respectfully disagree with

1  Number 2, but that is consistent with what you ruled this

2  morning.

3          **THE COURT:**  Okay.  All right.  Fair enough.

4      But so I would say -- I hate -- trust me.  You're not

5  missing anything.  Look.  If I thought it was sort of the

6  smoking gun, I'd find a way to get it to you.  It's not.

7  You're not -- but I am trying to be consistent.

8          **MR. LIN:**  Thank you, Your Honor.

9          **THE COURT:**  So I think 2, and not 3, although I'm not

10  comfortable with that 2 and not 3.  Okay.

11          **MR. BAKER:**  And I would like to make one comment on

12  the next document.  I think it might frame it for you.

13          **THE COURT:**  Okay.  So this -- all right.  So tell me,

14  because I looked at this first one, and I just look at, you

15  know, the first line, and who it's from, and who's doing the

16  investigation --

17          **MR. BAKER:**  Sure.

18          **THE COURT:**  -- prior to forensic review.

19          **MR. BAKER:**  Sure.  So this e-mail string is talking

20  about the investigation.

21          **THE COURT:**  Oh, what somebody else is doing.

22          **MR. BAKER:**  Well, there's that.

23      And the e-mail -- it's also talking about investigation of

24  employees.  The date on e-mail.

25          **THE COURT:**  Oh, oh, oh.  I see what you're saying.

1  I'm reading what you are saying.  Yeah.  This -- it's different

2  from the other stuff we've been talking about.

3          **MR. BAKER:**  Right.  As of this date, the three --

4  Levandowski, and Sameer, and Radu -- had all left the company.

5          **THE COURT:**  They've all left the company.  And as of

6  that date, they had joined Uber.  What was the date of the

7  closing?

8          **MR. LIN:**  February 1st was when Otto Trucking was

9  created.

10          **THE COURT:**  No, no.  Of Uber.  August.

11          **MR. LIN:**  August 26th, I believe, was the date.

12          **THE COURT:**  Oh, just before.  Of course, you didn't

13  know that.  Okay.  All right.  So that looks okay.  That -- to

14  leave redacted.  Maybe I need to go read from the bottom up.

15          **MR. LIN:**  Sorry, Your Honor.  Could I --

16          **THE COURT:**  No.  It actually starts -- yeah.

17          **MR. LIN:**  Do we have a Bates number for --

18          **THE COURT:**  Oh, yeah.  Sorry.  It's 83665.

19          **MR. LIN:**  Thank you.

20          **THE COURT:**  Yeah.  I think those e-mails -- you know,

21  this is stuff that Kristinn -- I'll call him -- is doing as

22  part of the investigation, or not doing as part of the

23  investigation; but is discussing how they're sort of doing the

24  investigation.

25          **MR. BAKER:**  So does that mean all of the redactions

1  in this e-mail?

2      **THE COURT:**  But not the first.  Not the one from the

3  24th.  Well, the 24th at 12:32.  That one's fine.  That's

4  totally separate.

5      But the one beginning at 11:17 a.m., forward.

6      **MR. BAKER:**  Okay.  I had read those as being

7  connected.

8      **THE COURT:**  Oh, let's see.

9      **MR. BAKER:**  You're talking about locking down.

10     **THE COURT:**  But they're asking for his opinion on

11 whether to do that -- the investigation.  Right?

12     **MR. BAKER:**  Yeah, but it's -- it is -- well, it's the

13 same issue.  It's the same issue.

14     **THE COURT:**  You see, it's -- it's the same -- and I

15 know nobody knew this was going to happen, but in a way, it's

16 like you want to take him, and you want to say, *We just did* --

17 *we're only revealing this little part*.  *So any other part of*

18 *investigation that he was involved in, we don't have to*

19 *disclose*; but the problem is, in his head, how can you separate

20 that out?

21     Like, in a way, if you wanted it to be that linear, you

22 sort of had to not involve him in anything else; but of course,

23 that's not the reality of how things happen.

24     **MR. BAKER:**  Yeah.  I think -- sure.  I think the way

25 we were thinking about it, Your Honor, was that, you know, the

```
 1   waiver is based on this idea of a sword and a shield.  And we

 2   are not relying on investigation of these other folks, and

 3   using that as a sword.

 4          THE COURT:  In a way; but their point is -- I have no

 5   idea if this will bear out, or not, but their point is:  Maybe

 6   what it showed -- your investigation of the other people --

 7   actually cast doubt on what you claim your investigation of

 8   those people showed.  Right?

 9      And how you conducted it -- that's the problem.  Because

10   it was all conducted at the same time, it was really part of

11   the same investigation, trying to get -- really, you were

12   trying to answer one question.  What went to Otto, and then to

13   Uber?

14      It was the same question.  And you were looking at all of

15   these different people.  You see?  And so that's the danger, I

16   think.

17          MR. BAKER:  Understood.

18          THE COURT:  Yeah.  Okay.  But the first one -- fine,

19   but it's nothing.

20      So now I'm looking at 83668.  And I think these are

21   similar.  Oh, no, that's the one I just looked --

22          MR. BAKER:  Yeah.  I think that's the one I just did.

23          THE COURT:  The one I just looked at?  Okay.  No.

24   That's similar.

25          MR. BAKER:  Yeah.  I mean --
```

1          THE COURT:   These are some of the same e-mails I just

2     looked at.

3          MR. BAKER:   I think that's true, but the ones at the

4     top -- the redactions at the top of this document, though, Your

5     Honor.

6          THE COURT:   Oh.   Up here.   Okay.

7          MR. BAKER:   Yeah.   This is referring to the

8     e-discovery team.   Again, that's -- you know, this is about the

9     investigation that the e-discovery lawyers did into the

10    e-mails.

11         THE COURT:   He's cc'd.   And your argument as to why

12    stuff about the sort of discovery team investigation is not

13    within the waiver is -- just tell me again.

14         MR. BAKER:   Sure.   We're not relying on anything from

15    that investigation.

16         THE COURT:   And certainly -- and certainly, you're

17    not withholding e-mail --

18        Well, you're not withholding e-mails that were

19    investigated.   Right?

20         MR. BAKER:   By the forensics team?

21         THE COURT:   By the discovery team.   In other words,

22    right?   So they have certainly have the ability in discovery --

23         MR. BAKER:   Oh, oh.   Yes.

24         THE COURT:   To ask for --

25        Okay.   All right.   That, I think, is fair.   Then there

1  isn't a danger there that it's being used unfairly, because

2  really all that's being withheld here in the work product,

3  which is related to the discovery.  The e-mail investigation;

4  not the forensic investigation.

5          **MR. BAKER:**  Correct.

6          **THE COURT:**  Okay.  Let's see.  At the bottom -- is

7  this supposed to be green at the bottom of the second page?

8  It's not yellow anymore.  The 753.

9          **MR. BAKER:**  Yeah.  You know, I think that that was

10 actually highlighted by someone in the e-mail, and then

11 highlighted over in yellow.  So that is something that was

12 redacted.

13         **THE COURT:**  Oh, I see.  Okay.  And Kristinn's just

14 cc'd.  Okay.  That can stay redacted.

15     And the rest are what we dealt with in that other e-mail

16 string.  Okay.

17     83686.  Well, this one should disclose, because you see --

18 I'll tell you.  I don't know if this is a good line, but when

19 it's Kristinn, he's, like doing it.  Then it's -- and you're

20 relying on his forensics, I don't think we can divide his mind

21 in half and say, *This was discovery.*  *And this was* -- because

22 he conducted the investigation.

23     And since this is to him -- right?  And they're telling

24 him to do something.  They're telling -- no.  I mean,

25 Kristinn's telling somebody to do something.  So it's in his

1   head as to how the investigation should be conducted.  Maybe a

2   different investigation, but I think it's relevant to the

3   investigation he did, because that's what was in his head.

4           **MR. LIN:**  This is the August 28th, 2016, e-mail?

5           **THE COURT:**  Yeah.

6           **MR. LIN:**  Thank you.

7           **THE COURT:**  You won't be surprised.  Nothing new.

8       Now I'm at 83692.

9           **MR. BAKER:**  Redactions on the very last page.

10          **THE COURT:**  Okay.  And this is -- again, this is

11  Kristinn writing -- right? -- if I'm reading it correctly?  No,

12  no, no.  That was at 3:45 p.m.

13      Oh, Gary.  This is Brown writing.  So August 29th at

14  3:35 p.m., this is Mr. Brown writing this.  Right?

15          **MR. LIN:**  Yeah.

16          **THE COURT:**  Yeah.  So that should be disclosed.  Am I

17  reading that correctly?

18      (Discussion off the record.)

19          **THE COURT:**  It's from Gary Brown at 3:35 p.m.

20          **MR. BAKER:**  Yeah.  This is from Kristinn.  And then

21  there's Kevin Vosen.  I -- Your Honor, it's unclear to me

22  whether it's from -- who exactly; whether it's from Kristinn,

23  Gary, or Kevin Vosen, who is a lawyer.

24          **THE COURT:**  It says, "Gary Brown wrote at 3:35 p.m."

25          **MR. BAKER:**  Yeah.  And then the e-mail, at the very

1   end, though -- it says, "With Regards, Kristinn."  And then

2   underneath that is a significant for Kevin Vosen.  So --

3          **THE COURT:**  Oh I see what you're saying.

4       Well, they may be forwarding, or whatever; but the

5   highlighted part comes right after the "With regards,

6   Kristinn."  So --

7          **MR. NARDINELLI:**  Yeah.  The highlighted portions were

8   authored by Gary Brown.

9          **THE COURT:**  Ah, better -- not better.  More directly

10  involved in the investigation, I should say.  So unredact that

11  one.

12      83696 is the same e-mail?

13         **MR. BAKER:**  Same e-mail.

14         **THE COURT:**  83710, Kevin wrote.  So, well, that's

15  Kevin talking about what he -- I mean, that's Gary talking

16  about what he was able to do, and unable to do.  Right?

17         **MR. BAKER:**  I think that's correct, Your Honor.

18         **THE COURT:**  Okay.  That should be disclosed.

19      See, I think to the extent that Mr. Brown and -- they were

20  involved in investigating the other employees, it just can't be

21  separated out.  That's my judgment, best judgment.  So that

22  would be the same on 83711.

23         **MR. BAKER:**  Okay.

24         **THE COURT:**  Yeah.  Same thing.

25      I do want to say you did raise a concern about employees

1    who were investigated about privacy concerns.

2          **MR. BAKER:**  Well, I mean, my concern is that to the

3    extent that any of these folks are still at -- or are currently

4    at Uber, or Otto, if these documents are marked only

5    confidential, they will be allowed to review them, and they

6    will then know that their former employer had conducted an

7    investigation, which, of course, is sensitive, you know;

8    sensitive issue for my client.

9          **THE COURT:**  Well, normally, we don't want that to go

10   out publicly.  Right?  But it may be sensitive, but your client

11   did.  So there we are.

12         **MR. BAKER:**  Understood.

13         **THE COURT:**  But -- but I agree we don't want that

14   necessarily to be public, because we don't want to cast

15   aspersions on somebody.

16         **MR. BAKER:**  So we'll mark these --

17         **MR. LIN:**  Absolutely.

18         **THE COURT:**  I think that's the line.  Right?  So it's

19   appropriate to be confidential, but not AEO.

20         **MR. CHATTERJEE:**  That sounds right.  We might have

21   certain documents.  We'll raise those at another point.

22         **THE COURT:**  That's one of the line items.  In other

23   words, kind of that way with AEO:  That it's embarrassing or

24   difficult for you -- not a reason to make it AEO.

25     That it could be embarrassing or unfairly disparaging to

1   the employee -- a good reason to make it confidential.

2           MR. BAKER:  Understood.  And just for the record,

3   which one are we on now?  What's -- oh, I'm sorry.

4           THE COURT:  Sorry.  Yeah.  83720.  I got distracted.

5           MR. BAKER:  Right.  Thank you.

6           THE COURT:  I can't -- this one -- on -- it's two.

7   These are back and forth from Mr. Gorman and Mr. Zbrozek, so I

8   think these should be produced.  Who knows?  Maybe these things

9   may even be helpful to you, in any event.

10      83726.  Oh, it's -- I think that's similar to what we just

11  saw.  Out.

12      84484.  Again, same e-mails.  So those should be

13  unredacted.

14          MR. BAKER:  Okay.

15          THE COURT:  You can just hand them to me.

16          MR. BAKER:  Picking up speed.

17          THE COURT:  Picking up speed.

18      84492.  I'm sorry.  Maybe if I had done this earlier, it

19  would have saved you several hours, but -- oh, well.  I like

20  Mr. Brown's e-mail address.

21          MR. BAKER:  [Redacted]

22          THE COURT:  Ah, let's see.  Yep.  So that should be

23  same thing.  And I understand.  It's sort of taken me a little

24  while to get my hands around this, as well.  Think about it.

25  It's not too --

1          84509.  Oh, this is the one -- isn't this what I looked at

2     earlier today?

3              **MR. LIN:**  This was.  Yes.  I think we may have --

4     well --

5     (Discussion off the record.)

6              **THE COURT:**  Who's this from?

7              **MR. NARDINELLI:**  This is a document that is stored in

8     the folder.  So there's a folder on drive that was maintained

9     by Mr. Gudjonsson, primarily; Mr. Brown, also.  And it hosted a

10    lot of the documents that related to the investigation.  We

11    pulled this document out of that folder.

12             **THE COURT:**  So this wasn't one that was e-mailed to

13    him, or -- but -- it says hype -- oh.  "Hi, Kristinn."  I see,

14    that's right.

15             **MR. NARDINELLI:**  That "Hi, Kristinn" part is an

16    e-mail that was sent to Kristinn.  And then he copied and

17    pasted it into this -- into this report that he's maintaining.

18             **THE COURT:**  So what's highlighted here is -- was in

19    the e-mail to him from the attorney?

20             **MR. NARDINELLI:**  That's correct.

21             **THE COURT:**  Okay.  All right.  Well, I think it falls

22    within my -- so that should be unredacted.  So this is a

23    redaction here.  I don't know.  Mr. Lin --

24             **MR. LIN:**  Okay.

25             **THE COURT:**  Do you what this --

1    I'm sorry.

2    Mr. Nardinelli -- he's our technical expert.  What --

3  what -- I don't know what this is.  It's something from their

4  devices?

5          **MR. BAKER:**  This is the -- Your Honor, unfortunately,

6  this is the one document that we do not have an unredacted copy

7  for ourselves, so we are flying blind a little bit here.

8          **THE COURT:**  Oh.  Well, let me hand it to you.

9          **MR. BAKER:**  Yeah.  Thank you.

10         **MR. NARDINELLI:**  Of course, it's the one that we

11  needed.  All right.  This is the one. We looked at this

12  earlier, Your Honor, this morning.

13         **THE COURT:**  This is the spreadsheet?

14         **MR. NARDINELLI:**  No, not the spreadsheet.

15     This is the analysis of another person's computer, and a

16  lot of it's yellow; but Your Honor, this morning, looked at

17  page 8, and said, *Oh, page 8 clearly is intertwined*.

18         **THE COURT:**  Is intertwined?

19         **MR. NARDINELLI:**  Yes, exactly.  And I believe the

20  ruling from this morning was page 8 has to be unredacted,

21  because it's intertwined, but pages 7, 9, 10, all of the rest

22  of it, is not intertwined.

23         **THE COURT:**  Really?  But who -- tell me.  Who's this

24  going to?  So now I have a better understanding.  I may

25  overrule myself.  Like, is this just something that was there,

```
 1   or is this something that the forensic review team did?  That's
 2   sort of the line I'm drawing here.
 3           MR. NARDINELLI:  This is something that the forensic
 4   team did.
 5           THE COURT:  Okay.
 6           MR. NARDINELLI:  This is the output of their analysis
 7   of that person's --
 8           THE COURT:  Other people's computers.
 9           MR. NARDINELLI:  Of that person's computer.
10           THE COURT:  Okay.  I'm going to overrule myself from
11   this morning, and order it to be produced.  Now I just have a
12   better understanding.  There.  That's -- so if they're doing
13   it -- the forensic team people are doing it -- then I think
14   it's -- can't really separate it out, but it's separate from
15   what the discovery team was doing.
16       It was so much easier before e-mail, because none of this
17   would have been shared with anyone.  It wouldn't have been
18   written down.
19       So this January 18th at 11:15 a.m. e-mail -- I don't know
20   who it's to.  It doesn't appear to be our -- Elizabeth, Mo,
21   Tom.  Who are they?
22           MR. BAKER:  That's right, Your Honor.  I believe that
23   is between -- well, Tom is certainly an attorney.  And it's
24   from Rachael Meny, who is an attorney at Keker.  I think this
25   was between counsel.
```

```
 1              THE COURT:  Oh, okay.  All right.  But it's not our

 2   forensic team?

 3              MR. BAKER:  It's not our forensics team, no.

 4              THE COURT:  All right.  Okay.

 5              MR. LIN:  I'm sorry to interject.  Which Bates number

 6   is this?

 7              THE COURT:  Oh, sorry.  It's 84522.  I'm looking at

 8   the January 18 e-mail.

 9              MR. LIN:  All right.  All right.

10      And the same thing with the 12:46 p.m. e-mail.  I don't

11   see any of our forensic team on there.

12              MR. BAKER:  Correct.

13              THE COURT:  Or 12:53 p.m. e-mail saying -- I don't

14   know who she wrote it to, but --

15              MR. BAKER:  Correct.

16              THE COURT:  Does all -- well, let's see.  We have

17   Kristinn up here at 2:38 p.m.  Did Elizabeth write to Kristinn?

18              MR. BAKER:  It's unclear from the e-mail, Your Honor.

19   I mean, Your Honor, I think it is to Kristinn.  It says -- at

20   the very last it says, *Kitty, do you know what's up with that?*

21              THE COURT:  I don't know that any of this is

22   valuable, in any event.  So why don't you just disclose that?

23              MR. BAKER:  Okay.  So from 238 up, we will unredact.

24              THE COURT:  Okay, but not after that.

25      So this little logo here, somebody better -- Pixar might
```

1  be coming after them, claiming there's some infringement.

2       **MR. BAKER:**  We're going to keep these documents

3  confidential.

4       **MR. CHATTERJEE:**  There are 30 or 40 of those little

5  logos on documents, Your Honor.

6       **THE COURT:**  I think it may be fair use.

7       I think there's one name on the back here, I think.

8       Well, I'm at 84590.  I don't know what this is, or who

9  this is to.

10      **MR. BAKER:**  Your Honor, I think we'll unredact these.

11 I think this is consistent with your prior rulings.

12      **THE COURT:**  Thank you.  Now that I've figured out a

13 way to be consistent.  So tell me about this document.

14      **MR. BAKER:**  Yeah.  This one's a little more

15 difficult, Your Honor.

16      **THE COURT:**  Yeah.

17      **MR. BAKER:**  So this document breaks down the various

18 parts of the investigations.  And so you'll see on page 2, the

19 first bullet says "Sec Ops List."

20      "Sec Ops" stands for "securities operations" --

21      **THE COURT:**  Okay.

22      **MR. BAKER:**  -- which is basically the forensics team.

23 And that's why we left this unredacted, except for the names of

24 people that we did not believe were within the waiver.  So

25 that's that.

1     The next -- the next bullet --

2     Should I wait?

3          **THE COURT:**   Okay.   So this is stuff that was not done

4  by anyone on the forensics team?

5          **MR. BAKER:**   That is my understanding, Your Honor.

6  Yeah.

7          **THE COURT:**   That seems weird; doesn't it?

8          **MR. BAKER:**   Well, not really, because what was going

9  on was -- where it says "Questions," there were, you know,

10  things like, you know, people that wanted to make sure that

11  they were in certain exit interviews, and things like that.

12  And that was all counsel.   And, as we've discussed several

13  times, only counsel was involved in the e-mail investigation,

14  as well.   So it's not really surprising that the forensics

15  folks were not part of this.

16          **MR. CHATTERJEE:**   Your Honor, if you look at the

17  machine forensic record, which they've produced and was part of

18  the basis, they had exactly this sort of cadence in their

19  documents.   They would have a listing of a whole bunch of

20  things.   And then they'd say, "Questions from Legal."   And

21  they'd have a whole list of questions that were established to

22  be Mr. Gorman's questions that were answered as part of this

23  integrated study.

24          **THE COURT:**   It refers to Mr. Levandowski.   If it was

25  just somebody else -- you know, the other employees; but it's

1   about Mr. Levandowski.  It's that the investigation of

2   Mr. Levandowski is sort of the central thing.

3            **MR. BAKER:**  But not being done by the forensics team.

4            **THE COURT:**  No.  I understand, but -- I understand,

5   but it -- yeah.  I mean, none of this is a secret, in any

6   event, but I understand why you're trying to draw the line.

7       So this is all what the security team is doing?

8            **MR. BAKER:**  Correct.  And the discovery team.

9            **THE COURT:**  Okay.  I'll let that stay redacted.  I

10  understand you may have a motion later that subject-matter

11  waiver should be broad, but for now I'm going to draw that

12  line.  That was a different investigation.

13           **MR. LIN:**  I understand.  The security and the --

14           **THE COURT:**  Discovery.

15           **MR. LIN:**  -- discovery investigations.

16           **THE COURT:**  But what I've done is, though -- but when

17  those have been sort of communicated, about questions or things

18  like that to the forensics team -- that I've said "Redact it,"

19  that's what's gone into their head:  That information; that

20  question.  But this wasn't doing any of that.

21           **MR. LIN:**  I understand, Your Honor.

22           **THE COURT:**  Okay.  Lastly, 84615.  I don't know what

23  I'm looking at.

24           **MR. NARDINELLI:**  I can tell you this came from that

25  same folder; that one that's maintained by Mr. Gudjonsson and

```
 1   Gary Brown.
 2           THE COURT:  But is this something they're doing?
 3           MR. NARDINELLI:  It's -- it's guidelines for queries
 4   that they're going to run over data.  These are search
 5   commands.
 6           THE COURT:  That Mr. Brown is going to run?
 7           MR. NARDINELLI:  Either Mr. Brown, or somebody on his
 8   team.
 9           THE COURT:  Okay.  So that should be --
10           MR. NARDINELLI:  Okay.
11           THE COURT:  -- okay.
12           MR. BAKER:  I have one other folder.  Let me just
13   make sure.  Did we resolve the spreadsheet issue, or not?
14           MR. LIN:  I believe where we left it off was that
15   there were a number of spreadsheets -- maybe five or six, if I
16   understand correctly -- that are similar in format.  And I
17   believe that if we were able to get clarification on one, we
18   might be able to resolve all of them in one go.
19           MR. NARDINELLI:  Do we know what exactly?
20           MR. BAKER:  These are the redacted versions, I
21   thought.  Well, here.  I've got another.  So that's what you
22   need.  Right?
23           THE COURT:  It's hot in here.
24           THE CLERK:  I know.
25       (Discussion off the record.)
```

```
1            THE CLERK:  No.  We still have to call Mr. González.

2            THE COURT:  You can call him.

3            THE CLERK:  Okay.  Can I call him now?

4        MS. CHANG:  Yeah.  He gave me, actually, another

5    number.  I guess he's at a different number right now.

6    (650) 813-4228.

7            THE CLERK:  Okay.  Thank you.

8        MS. CHANG:  You're welcome.

9    (Whereupon a document was tendered to the Court.)

10       MR. NARDINELLI:  So that's a two-page sample, Your

11   Honor; but what Your Honor rules on that, we'll go and resolve

12   the rest of the documents.

13      So this is a spreadsheet.  I've penciled in there, because

14   you don't see it, the column header.  So I think it's date, and

15   person, and the name of the document that was downloaded.  This

16   is a spreadsheet that was generated by Gary Brown, or someone

17   on Gary Brown's team, although I think it was Gary.

18      And, as you can see, what we've done is redacted the rows

19   that do not correspond to Anthony or the two others, and

20   unredacted the other rows.

21           THE COURT:  Okay.  You know what I'm going to say.

22   Right?

23           MR. NARDINELLI:  I think I do.

24           THE COURT:  Unredacted.  Thank you.

25           MR. LIN:  Thank you, Your Honor.  This is as to the
```

1   same category of documents?

2           THE COURT:  Yeah, because this is stuff that

3   Gary Brown did.  And I don't think we can, as I said, separate.

4   If he did investigation, he did investigation.

5       Ada, sorry I dropped it (indicating).

6           MR. BAKER:  Your Honor, thank you for going through

7   that exercise.

8           THE COURT:  Do we have issues with privileged

9   documents?

10          MR. CHATTERJEE:  I'm not sure with your rulings if we

11  still have issues, because these are ones that are on the log.

12  So we have less understanding of what's in there.

13          THE COURT:  Yeah.  Maybe I can give some guidance, as

14  well.

15          MR. NARDINELLI:  We have some.  That helps -- that

16  exercise -- but we still have some.

17          THE COURT:  Okay.

18          THE CLERK:  Hold on a second.  I can't dial out from

19  the other phone.

20      (Mr. Anthony González joins hearing via telephone.)

21          THE COURT:  Everyone's lucky they're going to be in

22  San Francisco working this week, anyway.  It's supposed to be,

23  like, 117 in Walnut Creek.

24      (Discussion off the record.)

25          THE CLERK:  Okay.  He's on the line.  Good afternoon,

```
 1  Mr. González.
 2          MR. GONZÁLEZ:  Good afternoon, Your Honor.  Thank you
 3  for accommodating me.
 4          THE COURT:  All right.  So we worked out all of the
 5  redaction issues, and we're about to talk about privilege
 6  documents.
 7          MR. BAKER:  Yeah.  And I think just before we get to
 8  the privilege documents, the issue here, as I'd mentioned
 9  during a break to counsel for Otto Trucking, is that we wanted
10  to raise an issue about the depositions next week with
11  Your Honor for the deposition of Sasha Zbrozek, which is one of
12  the three forensic investigators.  We had a lengthy discussion
13  over several days about whether he was going to be deposed or
14  not.  We couldn't come to an agreement.  And so we went forward
15  with his deposition.
16      Otto Trucking, however, was the only party that went
17  forward with the deposition.  No one else -- neither Uber or
18  Ottomotto -- served a notice, or even appeared at the
19  deposition.  And so they are now seeking to -- to serve us with
20  a notice for Mr. Zbrozek, and want to appear and ask him
21  questions at a second deposition.
22      You know, we have no problem with him attending the
23  deposition; but you know, if they didn't serve him with a
24  previous notice, then we would object to them asking questions
25  now.
```

```
1              THE COURT:  Okay.  Mr. González.

2              MR. GONZÁLEZ:  Just briefly, Your Honor.  It is true

3    that we didn't attend the deposition.  And the reason we didn't

4    attend is because at the time of the deposition, they hadn't

5    produced a document where this character says that the

6    documents were taken by Mr. Levandowski are not --

7              THE COURT:  Oh, this is that person?  No.  They get

8    to ask him questions.

9              MR. BAKER:  Wait, wait, wait a minute.  I'm sorry.

10             THE COURT:  This is that e-mail from Tuesday?

11             MR. CHATTERJEE:  This is the e-mail from Tuesday.

12             MR. BAKER:  It is the same e-mail.

13             THE COURT:  No, Mr. Baker.  No, no.  Don't.  Stop.

14   That's just -- everything's going to come out.  It is what it

15   is.

16             MR. BAKER:  Understood.

17             THE COURT:  They just wanted to --

18             MR. BAKER:  Understood.  I just wanted to raise the

19   objection.

20             THE COURT:  Fair enough.  Overruled.

21             MR. GONZÁLEZ:  Your Honor, I had a half-hour speech

22   prepared for you.

23             THE COURT:  No.

24             MR. BAKER:  I'll call you later, and you can give it

25   to me.
```

1              MR. GONZÁLEZ:  I'll stand down.

2              THE COURT:  I must say I want to thank the parties

3    today.  They're being extremely cooperative.

4              MR. LIN:  Thank you, Judge.

5              THE COURT:  Yeah.

6              MR. NARDINELLI:  Thank you for hosting us, Your

7    Honor.

8              THE COURT:  Oh, you're welcome.  Really, I hope and

9    I'm trying very hard to really -- I know this is a very

10   demanding, demanding case.  And I'm trying very hard to help

11   facilitate it.  That's all.  So I appreciate everyone working

12   with me, as well.

13             MR. NARDINELLI:  So what I'm going to pass you now

14   will be a series of documents that we think should still be

15   withheld, but we need your ruling on it.  And we talked about

16   this on the break.  There's just sort of no way to really do

17   this, except by handing them to you --

18             THE COURT:  Sure.

19             MR. NARDINELLI:  -- but what we have done is grouped

20   them.  And so when you make one ruling it might apply to a

21   bunch of different documents.

22   (Whereupon a document was tendered to the Court.)

23             THE COURT:  Perfect.

24             MR. CHATTERJEE:  Your Honor, I didn't ask

25   Mr. Nardinelli.  Do they have control numbers on them, or

1  something, just so we have some --

2        **THE COURT:**  From the privilege log?  Yeah.  Or how

3  about a date?

4      I can give them the date.  Right?

5        **MR. NARDINELLI:**  Yeah, sure.

6        **THE COURT:**  It's February 22nd, 2017, at 11:04 a.m.

7        **MR. LIN:**  This might be something I have to work out

8  with Mr. Nardinelli later on.  There are a number of privilege

9  logs.  And I think we might have to match it outside of the

10  Court's time.

11        **MR. NARDINELLI:**  I think I understand the issue now,

12  and I have a solution for this.  We've got a non-Bates-number

13  number that applies to these.

14        **THE COURT:**  Yeah.  I think this is fine.  This

15  doesn't have to be disclosed.  This is nothing to do with the

16  investigation.  And doesn't shed light on his testimony as to

17  the investigation.  Nothing.  Yeah.

18        **MR. NARDINELLI:**  Great.  Okay.

19        **THE COURT:**  But I'll read the dates, so that you can

20  then try to work with Mr. Nardinelli to match which ones I've

21  ruled on.

22  (Whereupon a document was tendered to the Court.)

23        **MR. NARDINELLI:**  I can help with that, Your Honor.

24  We don't have Bates numbers, because they haven't been

25  produced; but we have our internal system numbers.  So I can

1   read those out, and we can use that.

2           **THE COURT:**  Okay.

3           **MR. NARDINELLI:**  This one is 01216242.

4           **THE COURT:**  Yep.

5           **MR. NARDINELLI:**  And if this document isn't clear to

6   Your Honor, I can explain what it is.

7           **THE COURT:**  Well, it looks like it's talking about

8   the Complaint.

9           **MR. NARDINELLI:**  Yeah.  So if you look at the -- kind

10  of the first substance, where it says "Action Items," and you

11  see Tom Gorman's name, and then there's this text that says,

12  "On December 21st, 2015."  That's an excerpt of the Draft

13  Complaint.

14      And then Tom has made a comment there on that excerpt, and

15  is, like, looking for help basically to verify whether or not

16  that sentence in the Complaint is accurate.

17          **THE COURT:**  So this is what I'm thinking is -- but --

18  this -- where it says Gary Brown, and then it says -- it lists

19  some data -- is that him telling you, *This is what I have*?

20          **MR. NARDINELLI:**  It is.  And here's -- here's what's

21  tricky about it, is this is data that already exists.  He's

22  probably pulling this from the record that he compiled in

23  October.  I don't know exactly where he's pulling it from.  I

24  know he's pulling it from somewhere.  So there's no new

25  investigation going on here.

1     But what it is is they're saying, *Gary, is this accurate?*

2     And Gary's saying, *Let me go look at this report I did*

3  *four months ago*.

4          **THE COURT:**  I'm not saying that you have to turn over

5  the whole thing.

6     I'm just saying I think this, which is just Gary -- this

7  is Gary saying, *Factually, this is the results of my*

8  *investigation*.

9     Well, what if -- I'm sure it's not.  What if it's

10  inconsistent with what he says?

11          **MR. NARDINELLI:**  Sure.

12          **THE COURT:**  Not the rest.  I don't think the rest has

13  anything to do with that part right there.

14          **MR. NARDINELLI:**  Understood.

15          **THE COURT:**  The rest is nothing.  Don't worry,

16  because essentially he's saying, *This is what I've found in my*

17  *investigation*.

18          **MR. NARDINELLI:**  Okay.  So with that guidance, we can

19  go through, because there are similar documents here.  And I

20  can show them all to you, if I want -- if you would like, but I

21  think we can avoid it.

22     If it is attorneys discussing the text of the Complaint,

23  we can leave that out, but to the extent that Gary or Kristinn

24  comes in and says, *Here's some facts*, bring that in.

25          **MR. BAKER:**  Yeah.

```
 1          THE COURT:  Correct.
 2          MR. NARDINELLI:  Okay.  Okay.  This one maybe will
 3  follow the same guidance.
 4          THE COURT:  You want to give your internal number?
 5          MR. NARDINELLI:  Yes.  01202318.  And it starts with
 6  the e-mail on what would be page 5.
 7  (Whereupon a document was tendered to the Court.)
 8          MR. NARDINELLI:  February 22nd, 2017, at 7:39 a.m.,
 9  from Ms. Stanton.
10          THE COURT:  Okay.  So -- so -- yeah.  So this is
11  Sasha answering.  Right?
12          MR. NARDINELLI:  It's -- a combination of Sasha and
13  Gary answer throughout.  Yes.
14          THE COURT:  Yeah.  And so this needs to -- this needs
15  to be produced.  That part.  I mean, I --
16      So you withheld the entire document?
17          MR. NARDINELLI:  The entire document was withheld.
18  And the grounds for the withholding --
19          THE COURT:  No, no.  I'm not -- I'm not -- I'm not --
20  I'm just trying to figure out.  It's not a redaction thing.
21  It's the whole thing?
22          MR. NARDINELLI:  Correct.
23          THE COURT:  All right.  Yeah.  I think this is just
24  asking them what they essentially found in their investigation.
25  So I think it should be produced, unless there's something --
```

```
 1        Is there something here different from that, that you want
 2   to point out to me, that maybe should not be produced?
 3        But it looks like they're just sort of giving -- it really
 4   has to do with the investigation.
 5             MR. NARDINELLI:  Yeah.  I don't -- sorry.  Did you
 6   want --
 7             MR. BAKER:  No.  Go ahead.
 8             MR. NARDINELLI:  I don't think so, Your Honor.  It
 9   was just a line-drawing exercise.  I think you understand the
10   reason for that.
11             THE COURT:  Yeah.  Yeah.  I don't fault you for that.
12   I don't fault you; but they'll get to see it now.
13             MR. NARDINELLI:  Okay.
14   (Whereupon a document was tendered to the Court.)
15             MR. NARDINELLI:  This is 01455328.
16             THE COURT:  Yeah.  I don't know why this is --
17             MR. BAKER:  So --
18             THE COURT:  This is a lawyer asking for something,
19   not --
20             MR. NARDINELLI:  Exactly.
21             THE COURT:  Unless -- you're not planning on him
22   being a witness at trial?
23             MR. BAKER:  That's not the plan today, although he
24   might make a good one.
25             MR. CHATTERJEE:  I'm okay.  Thank you.  Thank you,
```

1  though.

2          THE COURT:  Mr. González, are you still on the phone?

3          MR. GONZÁLEZ:  Still here, Your Honor.

4          THE COURT:  Oh, all right.  I was going to make a

5  snarky comment about you being a witness at trial.

6          MR. NARDINELLI:  I believe I was on their initial

7  disclosures list.

8          THE COURT:  Well, you, Mr. Nardinelli, have been in

9  the center of things.  That's why I was glad to see you here.

10          MR. NARDINELLI:  That's where I like to be.

11          THE COURT:  I kept hearing about that Nardinelli

12  Declaration, and "Mr. Nardinelli said" --

13          MR. NARDINELLI:  Every time I write an e-mail, it

14  ends up getting attached to the other side's motion.  I should

15  really learn my --

16      Okay.  So here's the next one.

17  (Whereupon a document was tendered to the Court.)

18          MR. NARDINELLI:  This is 01203245.  So it's involving

19  a different person.  And I understand Your Honor's ruling that

20  if it was a different person, but nonetheless, within the scope

21  of sort of the umbrella Sec Ops investigation, it comes in.  I

22  think this one doesn't.  I think you can see it on the

23  January 26th, 2017 e-mail from Ms. many at 2:03 p.m.

24          THE COURT:  What day?  Oh.  January 27.

25          MR. NARDINELLI:  January 26th at 2:03 p.m.  I'm sorry

1  these don't have page numbers.  It's kind of in the middle of

2  the page.

3             THE COURT:  Yep.

4             MR. NARDINELLI:  So what she's doing here, as I read

5  this, is she's drawing a distinction between:  Okay, is this

6  part of the Anthony investigation, or is this something that we

7  treat differently?

8       And I think the response is that they treat it

9  differently.

10            THE COURT:  Yeah.  And -- and it's the discovery

11  team.  Okay.  This one, you can withhold.

12            MR. NARDINELLI:  This next one, I hope Your Honor

13  agrees with me that it's not a close call.

14  (Whereupon a document was tendered to the Court.)

15            MR. NARDINELLI:  This is 01281721.  There's nobody

16  from the forensics team on this e-mail.

17            THE COURT:  Oh, there's no one on the forensics team.

18  These are in-house Google lawyers, and some other people?  Is

19  that what --

20            MR. NARDINELLI:  These are all in-house Google

21  attorneys.  Correct.

22            THE COURT:  Okay.  That's fine.

23            MR. NARDINELLI:  Withhold.  Correct?

24            THE COURT:  Yes.

25            MR. NARDINELLI:  I'm getting very close.

1          THE COURT:  Good, because it's --

2    (Whereupon a document was tendered to the Court.)

3          MR. NARDINELLI:  Okay.

4          THE COURT:  You give an internal number for Mr. Lin?

5          MR. NARDINELLI:  Yeah.  Sorry.  This is 01332258.

6          THE COURT:  What can you say about what this is?

7          MR. NARDINELLI:  This is a master tracker prepared by

8    the HR Department that lists everybody that has departed from

9    Waymo in -- I don't remember what the time frame was -- in the

10   last 18 months, or something like that.

11       So it does include some of the people that were targets of

12   the investigation, but it also includes -- and the woman on the

13   first page is an example -- people who were completely --

14         THE COURT:  Yeah.

15         MR. NARDINELLI:  -- far afield.

16         THE COURT:  They're now going to see who all of those

17   targets were, so you're unredacting all of this other stuff.

18   So I think you can keep this withheld.

19         MR. NARDINELLI:  Next one, I hope Your Honor rules

20   similarly.  This is 01 --

21         THE COURT:  Don't try to bias me.

22         MR. NARDINELLI:  -- 332260.

23   (Whereupon a document was tendered to the Court.)

24         THE COURT:  And what is this?

25         MR. NARDINELLI:  It's a similar thing.  Another list

1    of departures prepared by HR.

2              **THE COURT:**  Also HR?

3          **MR. NARDINELLI:**  Mm-hm.

4          **THE COURT:**  Yeah.  Okay.  Prepared by HR at the

5    request of attorneys.  That's why it's on the privilege log?

6    Not --

7          **MR. NARDINELLI:**  Yeah.

8          **THE COURT:**  Otherwise, it's not privileged?

9          **MR. NARDINELLI:**  Right.  That's correct.

10         **THE COURT:**  Okay.

11         **MR. NARDINELLI:**  This next one is 01068990.

12   (Whereupon a document was tendered to the Court.)

13         **THE COURT:**  Well, I think you should produce this,

14   because this is information that he had that relates to

15   Mr. Levandowski.  May not turn out to be that valuable, but

16   it's stuff that was in their head, and is part of the scope of

17   their investigation.

18   (Whereupon a document was tendered to the Court.)

19         **MR. NARDINELLI:**  Next one is 01283054.  This is one

20   that does not involve the forensics team.

21         **THE COURT:**  Who -- is it all in-house?

22         **MR. NARDINELLI:**  Ms. Bailey is HR.  Andrew Price is

23   an in-house attorney.

24         **THE COURT:**  Okay.  I think that's sort of similar to

25   the spreadsheet.

1          **MR. LIN:**  That's a withhold, Your Honor?

2          **THE COURT:**  Withhold.  Yeah.  Ultimately, they were

3   given names of people to investigate.  You're now going to have

4   them.  That's what's material.  I think it's within the scope

5   of the waiver.

6          **MR. NARDINELLI:**  We can skip that one, Your Honor.

7   It's a "P" -- produced -- so I trust you don't object.

8          **MR. LIN:**  Understood.

9          **MR. BAKER:**  This one, I think, Your Honor --

10         (Discussion off the record.)

11         **MR. BAKER:**  So this -- all right.  This is 0116609.

12   And I think this one falls within your earlier rulings with

13   respect to the other people, and so we can produce this.

14         **THE COURT:**  Oh, okay.

15         **MR. BAKER:**  Yeah.  I just want to get it on the

16   Record, you know, for the waiver issues.

17         **THE COURT:**  Ah, I see.  Right.  No waiver.

18         **MR. BAKER:**  Right.

19         **THE COURT:**  No waiver as to -- right -- to the extent

20   there's --

21         **MR. NARDINELLI:**  This is 01332257.

22   (Whereupon a document was tendered to the Court.)

23         **THE COURT:**  And it is?

24         **MR. NARDINELLI:**  And it is another tracking document

25   showing, you know, status of whether somebody's machine has

1  been collected; status of when they departed Google; whether

2  they have been put on e-mail hold, et cetera.

3          THE COURT:  Is it an HR doc, or who prepared it?

4          MR. NARDINELLI:  I don't know.  Can we just --

5  because I don't want to have to have a dispute about this

6  later, can I go look?  And if it was an HR doc, don't produce;

7  and if it came across Gary's team, produce?

8          THE COURT:  Yes.

9          MR. NARDINELLI:  This is 01203528.

10 (Whereupon a document was tendered to the Court.)

11         THE COURT:  This is talking about someone; not the

12 three Diligenced Employees.  Is that correct?

13         MR. NARDINELLI:  This is somebody who's not one of

14 the three employees, and also somebody who never actually left.

15         THE COURT:  He never left?

16         MR. NARDINELLI:  Correct.

17         THE COURT:  Yeah.

18         MR. NARDINELLI:  Ah, okay.  This might be the last

19 one.  This is 01201782.

20 (Whereupon a document was tendered to the Court.)

21         MR. NARDINELLI:  This is what is called a "machine

22 forensics record."  We have produced the records corresponding

23 to Anthony, Sameer, and Radu.  I've got a series of these that

24 correspond to other people, so you know why we withheld them.

25         THE COURT:  All right.  So tell me, Mr. Lin, why the

```
 1  machine forensic record of these employees, other than those

 2  three, fall within the scope of the waiver of the investigation

 3  of the three -- of what we call the three -- capital F, capital

 4  E -- Former Employees?

 5           MR. LIN:  Sure, Your Honor.  It was our understanding

 6  that the -- when the forensics investigation was done, it was

 7  done for those three individuals, but it was -- it was part of

 8  a --

 9      I know we talked a little bit about this this morning.   I

10  don't want to get into the merits of a scope of waiver

11  argument, but I think that that was the concern initially, was

12  that when Google made an investigation into

13  Anthony Levandowski, into Sameer Kshirsagar, into Radu Raduta,

14  of course, their investigation also enfolded in other employees

15  who informed whether or not, for example, Anthony Levandowski's

16  download data was abnormal or not.

17           THE COURT:  So that's the -- that's the data there.

18      Let me -- under the current status conclusions, because

19  that's different, what about that, Mr. Nardinelli?  That seems

20  relevant to the Levandowski investigation.

21           MR. NARDINELLI:  I agree.  That, I think, is similar

22  to the ruling that Your Honor made this morning about page 8.

23  And that's why I marked that.

24           THE COURT:  Oh, because you think you would produce

25  that?
```

```
 1            MR. NARDINELLI:  Yeah.  I'd agree we'd produce that.

 2            THE COURT:  I see.

 3            MR. NARDINELLI:  But outside of that.

 4            THE COURT:  I see.

 5            MR. NARDINELLI:  And there's nothing similar to that

 6   in any of the others.  That's why I gave that one to Your Honor

 7   first.

 8            THE COURT:  All right.  Well, then, with respect to

 9   the other stuff, I'm going to stick with my ruling from this

10   morning.  And I appreciate you reminding me of that.  Candor.

11            MR. LIN:  Sure.  Sure thing, Your Honor.

12            THE COURT:  No.  Candor is excellent for credibility

13   always, in that if you're going to make -- and I believe you

14   have a motion, in any event, to compel them to produce.  You

15   may decide -- you may not decide -- it's worth your time,

16   but --

17       Because, of course, the underlying data is not privileged.

18            MR. LIN:  That's correct.  That's our understanding,

19   as well.  That's right.

20            THE COURT:  Of course.  They don't dispute that.

21   This is just their work product.

22            MR. NARDINELLI:  Okay.  So, I mean, I've got seven or

23   eight more of these machine forensics records, but are we all

24   clear that these are withheld, unless they have something like

25   that, with mentioning Levandowski --
```

```
 1              THE COURT:  Exactly.

 2              MR. NARDINELLI:  -- or involvement in the

 3   investigation.  And we'll take a third look at it, because I've

 4   been spending a lot of time already taking my second look, but

 5   I'll take another look at it.

 6              MR. LIN:  You and I both.

 7              MR. NARDINELLI:  One final document.  And this goes

 8   back to redacting --

 9   (Discussion off the record.)

10              MR. BAKER:  Yeah.  I mean, look.  I think what we can

11   do is -- just for the Record, this is Document 01331630.  And

12   we'll produce it based on your prior rulings.

13              THE COURT:  Okay.  Okay.

14              MR. BAKER:  That it?

15              THE COURT:  So you want to know when they're going

16   to --

17        I can read your mind now.

18              MR. CHATTERJEE:  You know I don't have a good poker

19   face, Your Honor.

20              THE COURT:  So some of it, I did allow the

21   redactions.  I was going to -- so you could hand some of it

22   over, but it might be hard.  By tomorrow.

23              MR. BAKER:  For --

24              THE COURT:  All of the stuff we went through this

25   afternoon?
```

1          MR. BAKER:  For everything?

2          MR. NARDINELLI:  Produced by tomorrow?

3          THE COURT:  The stuff that we went through this

4    afternoon, just right now.

5          MR. BAKER:  I mean, the only issue, Your Honor, is

6    that we're going to have to go back through the transcript, I

7    think, and make sure that --

8       I mean, Mr. Nardinelli was taking notes, but I would like

9    a chance to go back through the transcript, to make sure that

10   we have followed your instructions.  And, you know, that might

11   take a little time.

12      The depositions are Wednesday.  That's the other thing

13   I'll point out.

14         THE COURT:  Oh, okay.  All right.  You've got to give

15   Mr. Lin a day off.

16         MR. CHATTERJEE:  I have plenty of other things for

17   him to do, but no.

18         THE COURT:  So when?

19         MR. BAKER:  I mean, you know, Saturday?  Sunday?  Is

20   that --

21         THE COURT:  Saturday.  Fine.

22         MR. CHATTERJEE:  Saturday is fine, if we get it then.

23         THE COURT:  Give him tomorrow off.

24         MR. CHATTERJEE:  He needs to get some sleep, because

25   he had to go through the documents.  He did a fabulous job.

1    Right?

2           **THE COURT:**  Everyone did a fabulous job, especially

3    Mr. Cooper.

4           **SPECIAL MASTER COOPER:**  In that category, Your Honor,

5    I usually try to give you some notification of what's going to

6    happen.

7           **THE COURT:**  Yes.

8           **SPECIAL MASTER COOPER:**  Today is the last day to file

9    motions to compel.  It's my understanding that each of the

10   parties will tonight, by midnight, file motions to compel in

11   six single-spaced pages -- each one; and that their -- and we

12   had a meet-and-confer to argue about this -- and that their

13   responses will be due at noon on Thursday.

14          **THE COURT:**  Oh, not until Thursday?

15          **SPECIAL MASTER COOPER:**  Well, that's the issue.

16   There's -- Waymo wants it done, you know, this afternoon or,

17   you know, right away.

18       And I think Mr. González still is on the line.  And

19   Esther.  There's Esther.  Yeah.  I think there was a dispute

20   about whether that would be produced, or where that would be

21   filed.

22          **THE COURT:**  Well, what is it?  Because it sort of

23   matters.

24       And I'm just telling you I'm starting a bench trial on

25   Tuesday.  So the stuff that I'm dealing with in this case is

1  going to be essentially, you know --

2          **MR. BAKER:**  Is there anyone on the line from our

3  team?  Jeff -- Mr. Nardinelli and I have been not been involved

4  in these discussions today, so --

5          **MR. CHATTERJEE:**  We were all involved in the document

6  issue.

7          **THE COURT:**  Oh.  Oh, oh, oh, oh.  Well, I can't --

8  you know, it is what it is.  You work out what you work out.

9      I'm just saying the reality is I have this gig-economy

10  bench trial starting on Tuesday.

11      Of course, I'm still -- so you know, you could submit it

12  to me on Tuesday.  I wouldn't get an answer out on Wednesday,

13  anyway.  I mean, Thursday sounds great to me.

14          **SPECIAL MASTER COOPER:**  Okay.  Well --

15          **MS. CHANG:**  And I would suggest --

16      The parties met and conferred, and that was what was

17  decided.  So I would ask that we just stay with the briefing

18  schedule that we've agreed to.

19          **MR. BAKER:**  Oh.  So we've already agreed to that?

20          **SPECIAL MASTER COOPER:**  Yeah.  I think that was what

21  I indicated, was Thursday.  And there were arguments on both

22  sides.

23          **THE COURT:**  Okay.

24          **SPECIAL MASTER COOPER:**  And then we would ask, beg,

25  beseech a ruling right away.  So that --

 1          THE COURT:  By Friday?  Okay.  Well, if I know it's

 2    coming --

 3          SPECIAL MASTER COOPER:  Maybe not by Friday.

 4      By Monday or Tuesday.

 5          THE COURT:  Oh, that's fine.

 6          MR. BAKER:  I'm sorry.  Just to be clear, though,

 7    have we already agreed to the briefing schedule?

 8          MS. CHANG:  It was decided earlier today.  So we

 9    wanted something later.  You guys wanted something earlier.

10    And John put his -- laid down the law, and said Thursday at

11    noon.

12          THE COURT:  Yeah.  Mr. Cooper gets to decide that

13    stuff.

14          MR. BAKER:  Understood, Your Honor.  I just wanted to

15    make sure I was clear.

16          SPECIAL MASTER COOPER:  Well, Your Honor, I tried to

17    decide.

18          THE COURT:  With no appeal.  He gets to decide, with

19    no appeal.

20          MS. CHANG:  Your Honor, I do want to raise one issue,

21    because this is relevant to our expert reports.  We've

22    requested natives of five documents that they've put at issue;

23    some of them being part of the misappropriated files.  And they

24    have thus far refused to produce natives.  So I would ask that

25    you would rule on that issue.

1    **MR. BAKER:**  And that -- I don't think that's exactly

2  accurate.  Mr. Nardinelli has been trying to catch up.  And

3  we've been trying to get to this issue, but we've been a little

4  busy with documents.  So --

5    **MS. CHANG:**  Right, but this issue has been the

6  subject of the multiple meet-and-confers.  And we keep on being

7  told that they'll look into it and get back to us.

8    **THE COURT:**  You know what?  It all goes through

9  Mr. Cooper.  I don't deal with disputes this way.  So what does

10  Mr. Cooper have to say?

11    **SPECIAL MASTER COOPER:**  Well, I think they ought to

12  deliver the natives.

13    **MS. CHANG:**  And he has told them that.

14    **THE COURT:**  Okay.  So when are you going to get them

15  the natives?

16    **MR. NARDINELLI:**  That is a good question.  I'm not

17  sure we can even say at this point.  I thought I saw e-mails

18  about it.  It's not a long task to get natives for five files.

19    We've been wondering why they asked for the natives.

20  Typically, we'll give a native if there's something wrong with

21  the production version, like it's illegible, or there's

22  something missing.  And we say, *Well, what do you want the*

23  *natives for?*

24    And the first thing they said was, *We want to make pretty*

25  *color things in our expert reports; not black and white.*  So we

1  give them high-resolution, color .pdfs.

2     Then they came back and they said, *Well, we want natives*

3  *because there's metadata in the natives*.

4     And we said, *Well, you already have the metadata, because*

5  *that gets produced*.  And when you give somebody a native, you

6  don't get metadata.  You know, that comes through the

7  production.

8          **THE COURT:**  Is it burdensome to produce the natives?

9          **MR. NARDINELLI:**  No, we're just -- we don't why they

10  want them.

11          **THE COURT:**  You know what?  That's the thing, is

12  you're on two different sides, and you're looking at the case

13  differently, and you'll have different ideas; and you'll never

14  truly understand why.  And it may be -- but they want it.  I

15  mean, they have a lot of people, too.  And I don't think

16  they're asking it just to hassle you.

17          **MR. BAKER:**  Yeah.  I mean, what I would say,

18  Your Honor, is the process -- my understanding of the process

19  so far has been that if you want a native, you give the other

20  side a reason.  And if there's -- if it's a good reason, then

21  they will produce the native.

22     And there was a, I think, just, you know, discussion here,

23  because the original reason that we were given was changed.

24  And then that raised some issues about:  Well, you know, what

25  really is going on here?

 1        But I mean, look.  I don't -- I don't --

 2              THE COURT:  Produce natives by Saturday, as well.

 3              MR. BAKER:  I'm sorry?

 4              THE COURT:  By Saturday, as well.

 5              MS. CHANG:  Your Honor, could we get it before then,

 6   because we've been asking for this?

 7              THE COURT:  When's your expert report due?

 8              MS. CHANG:  September 7th.

 9              THE COURT:  Then Saturday is fine.

10              MR. NARDINELLI:  Thank you, Your Honor.

11              MR. BAKER:  Thank you, again, for the exercise; and

12   Mr. Cooper, as well.

13              THE COURT:  Thank you, especially Mr. Cooper.

14              MR. LIN:  Thank you, Mr. Cooper.  Thank you,

15   Your Honor.

16              THE CLERK:  Can I just beg you guys to bring us the

17   hard copies as soon as you can, so she can read it, please?

18              THE COURT:  Oh.  You mean the binders?

19              THE CLERK:  The binders.

20              THE COURT:  When it's submitted.  So if it's going to

21   be submitted on Thursday, then Thursday -- and I want the -- I

22   need the copies with the ECF header at the top.

23              MS. CHANG:  What if it's Under Seal?  You want the

24   ECF copy and the Under Seal version?

25              THE COURT:  That would be very helpful.  Yeah.

1          **MR. NARDINELLI:**  I have one small thing to raise.  We

2     said Gary Brown's e-mail address on the record, I think, twice.

3          **THE COURT:**  Would you like that under seal?

4          **MR. NARDINELLI:**  Yeah, or taken out of the

5     transcript.  I don't know what the way is to handle it, but

6     we're okay disclosing, like, attorney e-mail addresses, because

7     that's on every website; but the Google people, we never do

8     that.

9          **THE COURT:**  Of course, of course.  All right.  Maybe

10    when you get --

11         (Reporter requests clarification.)

12         **THE COURT:**  Exactly.  Can you just not put it in

13    there?

14         **THE REPORTER:**  If it's agreeable to all of you

15    people.

16         **MR. CHATTERJEE:**  That's fine.

17         **THE COURT:**  Yeah.  It's agreed.

18         **MR. NARDINELLI:**  I think it's in there twice.  Thank

19    you.

20         **MR. LIN:**  That reminds me of an issue.  This morning

21    when I read a part of a -- I believe I may have read a portion

22    of an e-mail that was used as in our discussions about the --

23    the 29 approved redacted documents.  I wanted to make sure

24    that -- I can't recall exactly, but if we can designate the

25    transcripts in that portion of the transcripts afterwards, if

1    that's something --

2              **MR. CHATTERJEE:**  I think what we should do,

3    Your Honor -- we'll review the transcripts.  If we have

4    anything we want to put Under Seal, we'll contact you.

5              **THE COURT:**  If it's agreed to.

6              **MR. CHATTERJEE:**  We'll let the court reporter know.

7              **MR. NARDINELLI:**  We're okay with that, you guys.

8              **THE COURT:**  Don't collude on that.

9              **MR. NARDINELLI:**  I'm more concerned about the e-mail

10   address.  Okay.

11             **THE COURT:**  Great.

12        (At 4:48 p.m. the proceedings were adjourned.)

13   I certify that the foregoing is a correct transcript from the

14   record of proceedings in the above-entitled matter.

15

16   *Lydia Zinn*

17   _____  September 1, 2017
     Signature of Court Reporter/Transcriber    Date
18   Lydia Zinn

19

20

21

22

23

24

25