Pages 1 - 17

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Magistrate Judge

| | |
|---|---|
| WAYMO, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **No. CV 17-0939 WHA (JSC)** |
| vs. ) | |
| ) | |
| UBER TECHNOLOGIES, INC., ) | |
| et al., ) | |
| ) | Telephonic Discovery Hearing |
| Defendants. ) | |
| _____) | |

San Francisco, California
Wednesday, August 30, 2017
FTR 2:02 p.m. – 2:19 p.m.

**TRANSCRIPT OF PROCEEDINGS OF**

**THE OFFICIAL ELECTRONIC SOUND RECORDING**

**APPEARANCES**:

Special Master:        FARELLA BRAUN & MARTEL LLP
                       Russ Building, 30th Floor
                       235 Montgomery Street
                       San Francisco, California 94104
                   BY: **JOHN L. COOPER, ATTORNEY AT LAW**


For Plaintiff:         QUINN EMANUEL URQUHART & SULLIVAN, LLP
                       50 California Street, 22nd Floor
                       San Francisco, California 94111
                   BY: **DAVID A. PERLSON, ATTORNEY AT LAW**


        (APPEARANCES CONTINUED ON FOLLOWING PAGE)


Transcribed By:  Sarah Goekler, CSR No. 13446, RMR, CRR, CCRR

```
 1  APPEARANCES: (CONTINUED)

 2


 3  For Plaintiff:            QUINN EMANUEL URQUHART & SULLIVAN, LLP
                              51 Madison Avenue
 4                            New York, New York 10010
                         BY:  JAMES E. BAKER, ATTORNEY AT LAW
 5


 6  For Defendant Uber Technologies, Inc.:
                              MORRISON & FOERSTER, LLP
 7                            425 Market Street
                              San Francisco, California 94105
 8                       BY:  ARTURO J. GONZALEZ, ATTORNEY AT LAW
                              ESTHER KIM CHANG, ATTORNEY AT LAW
 9
                              BOIES, SCHILLER & FLEXNER, LLP
10                            1999 Harrison Street, Suite 900
                              Oakland, California 94612
11                       BY:  MAXWELL V. PRITT, ATTORNEY AT LAW

12
    For Defendant Otto Trucking, LLC:
13                            Goodwin Procter, LLP
                              135 Commonwealth Drive
14                            Menlo Park, California 94025
                         BY:  JAMES LIN, ATTORNEY AT LAW
15
                              Goodwin Procter, LLP
16                            601 S. Figueroa Street
                              Los Angeles, California 90017
17                       BY:  TODD A. BOOCK, ATTORNEY AT LAW

18
    For Intervenor Defendant Anthony Levandowski:
19                            RAMSEY & EHRLICH, LLP
                              803 Hearst Avenue
20                            Berkeley, California 94710
                         BY:  ISMAIL J. RAMSEY, ATTORNEY AT LAW
21

22

23

24

25
```

```
 1   Wednesday, August 30, 2017         FTR 2:02 p.m. - 2:19 p.m.
 2                         P R O C E E D I N G S
 3                              ---o0o---
 4         THE CLERK:  17-0939, Waymo vs. Uber.
 5         THE COURT:  All right.  Good afternoon.  This is
 6   Judge Corley.  You don't have to make your appearances.  We are
 7   recording this.
 8         How can I help you?
 9         Maybe, Mr. Cooper, you should tell me how I can help.
10         MR. COOPER:  Well, I think the first conversation
11   should involve the use or the practice of mock trials or mock
12   juries in a trade secret case.  And I believe this is Arturo
13   Gonzalez and David Perlson.
14         THE COURT:  Okay.
15         MR. GONZALEZ:  Good afternoon, Your Honor.  Thank you
16   for taking a few minutes.  This is Arturo Gonzalez for Uber.
17         The protective order in this case allows us to use AEO
18   information with jury consultants.  It does not speak to
19   whether or not that jury consultant can share that information
20   with mock jurors, and that's why we wanted to have an informal
21   discussion with the Court.  We think that a mock jury would be
22   contemplated within the jury consultant designation.
23         We conferred with Waymo on the topic, and we have not been
24   able to reach agreement as to whether we can use AEO or
25   confidentiality information with mock jurors.
```

1     Just very briefly, we've told Waymo that we're willing to
2  exclude anybody who is in any way associated with autonomous
3  vehicles, have every mock juror sign a protective order, and be
4  told specifically what it is and how important it is and not
5  give anyone any documentation of any kind.  So it will simply
6  be a matter of displaying something and having the lawyers
7  argue.
8           **THE COURT:**  Okay.  So let me -- let me tell you what
9  my view is on hearing that.  And Mr. Cooper had -- I had gotten
10 a little bit of a preview, so I had thought about that.
11       I didn't know what -- I don't think a mock jury comes
12 within a jury consultant.  A jury consultant is hired by a
13 particular party and signs onto the protective order.  And the
14 issue is normally, obviously, the jury is going to have to hear
15 this information, but that's in the confines of the courtroom,
16 supervised by the district court judge, and with all the
17 parties present.  And we don't have that in the case of a mock
18 jury.  Nobody, of course, has a right to a mock jury to use all
19 that material; it's a tool that you have.
20       Certainly, if the parties agreed, I don't think that's a
21 problem at all, as long as they agreed on both sides.  So
22 hopefully maybe there's room for compromise, but I think if
23 there's not an agreement, I would not be inclined.
24       I'm giving you my informal response to modify the
25 protective order over parties' objection.

1          **MR. GONZALEZ:**  Thank you, Your Honor.  That's the
2    guidance that we needed.
3          **THE COURT:**  Okay.
4          **MR. COOPER:**  Okay.  If that one's done, the next
5    is -- the other issue is the scope of Your Honor's August 18th
6    order, which is Docket No. 1272.  And this is a dispute that
7    involves James Lin for Otto Trucking.
8          **THE COURT:**  Okay.  Mr. Lin.
9          **MR. BOOCK:**  This is Todd Boock --
10         **THE COURT:**  Oh.
11         **MR. BOOCK:**  -- I work with Mr. Lin, and I had been
12   the one that -- we had talked about speaking to this --
13         **THE COURT:**  Okay.
14         **MR. BOOCK:**  -- if that's okay with your --
15         **THE COURT:**  Of course.
16         **MR. BOOCK:**  Thank you.
17      We had met and conferred earlier today and over the past
18   couple of days regarding the additional document production and
19   privilege unredaction in response to your order regarding the
20   August 18th waiver and motion to compel and then the
21   clarifications you gave a couple of days ago.
22      And the issue that we, for Otto Trucking, are having is
23   it's Waymo's position that the entire universe of documents
24   related to this investigation which is the centerpiece of their
25   case, in our view, is only 80 documents which it produced last

Case 3:17-cv-00939-WHA   Document 1442   Filed 09/01/17   Page 6 of 17

6

```
 1   Thursday, and that 29 of those documents were redacted.
 2        And after your order on -- two days ago stated the
 3   redactions were too extensive, we still have not received any
 4   of those documents with less redactions, and we have cutoffs
 5   and depositions coming up.  And our concern is that it
 6   shouldn't take this long.
 7        The issue that came up as part of this discussion is we
 8   had thought that Waymo would go back over their prior
 9   productions to ensure that they were in compliance with
10   Your Honor's order.
11        And Waymo, despite assuring us that it was in compliance
12   because they had a similar scope of the waiver in mind when
13   they made that production, has not agreed to go back over that
14   production again.  And we have already identified several items
15   on the privilege log from the prior production.
16        And I misspoke.  During the meet and confer, we identified
17   one item as an example on the privilege log that we believe
18   would be subject to the waiver and should be produced and was
19   part of the prior production.
20        During the meet and confer today, Mr. Baker had advised
21   that anything that was communicated during the -- that after
22   the investigation was completed, would not be subject to the
23   waiver and would not be produced.
24        And it's our view -- and there's case law on this -- that
25   there is no temporal limitation on this waiver; it's a subject
```

Case 3:17-cv-00939-WHA   Document 1442   Filed 09/01/17   Page 7 of 17

7

1  matter waiver.  And it's a waiver as to communications with the
2  individuals that you identified in your -- in your order and in
3  your clarification.
4      I don't want to waste the Court's time, but there are
5  examples that I could point to you that have been withheld.  We
6  also don't know what has not been provided to us, and we think
7  Waymo is still taking a too-restrictive view of what should be
8  produced and what shouldn't be.
9      And, you know, the case that goes directly on point to
10 this is *McCormick-Morgan, Incorporated vs. Teledyne Industries*,
11 765 F. Supp. 611 at 613 to 614.  And the Court there stated
12 that:
13          "Court's consistently have found that where the
14       waiver was voluntary and where the documents sought
15       concerned the same subject matter as the disclosed
16       documents which could provide context.  Arbitrary,
17       temporal limitations are not warranted."
18      And then, to cap this off, two more things:  This is a
19 subject matter waiver.  And Quinn's position and Waymo's
20 position has been, well, we were involved at that point.  And
21 so, to the extent that these individuals were communicating
22 amongst themselves, it would be litigation privileged.  And
23 there's no litigation counsel exception to this subject matter
24 waiver.
25      And, during his deposition, Gary Brown, the Google

1  employee, testified that Quinn lawyers were part of the
2  investigation.  And so we're in a situation again that the
3  plaintiff is using the waiver as a sword and a shield.  And
4  Quinn has -- when we brought this up, Quinn has asked us to
5  identify any documents that we feel should be produced that are
6  not in compliance with the order, and then they could deal with
7  it on a case-by-case basis.
8      But it's actually Waymo's obligation to comply with
9  Your Honor's order; it's not ours.  And, you know, Quinn has
10 also suggested during the meet and confer that it wants further
11 briefing on this issue, but our position is that Otto
12 Trucking's motion to compel was granted as to the documents
13 pertaining to the investigation.  It was clarified by
14 Your Honor a couple days ago, and we shouldn't need to
15 re-litigate this issue.
16     And we're in a position where the plaintiff and
17 plaintiff's counsel is consistently trying to delay, delay,
18 delay when we have strict deadlines approaching.
19          **THE COURT:**  Okay.
20          **MR. BOOCK:**  And I just --
21          **THE COURT:**  Let me hear from Mr. Baker.
22     Mr. Baker, have you removed any of the redactions that
23 were on those documents, examples of which Mr. Chatterjee
24 showed and were attached to the motion?
25          **MR. BAKER:**  Good afternoon, Your Honor.

```
 1          The answer to that is we're in the process of doing
 2   that --
 3          THE COURT:  Okay.  What -- when?
 4          MR. BAKER:  -- process.
 5          THE COURT:  It needs to be done by tomorrow.  So I'm
 6   just going to tell you something -- and the other thing is,
 7   tomorrow is the deadline for your declaration to support the
 8   sealing of those documents.  And I'll tell you that Judge Alsup
 9   had told me he wants that stuff unsealed ASAP.  So he's looked
10   at this --
11          MR. BAKER:  Understood, Your Honor.  We --
12          THE COURT:  -- he's read those emails, and he's
13   paying attention.  Okay?  So that's number 1.
14       And there's that.  So those all need to be provided to
15   them in the unredacted form by tomorrow.
16          MR. BAKER:  Understood, Your Honor.  And --
17          THE COURT:  Wait.  Wait.  Wait.  Before -- let me
18   correct that.  Before Mr. Brown's deposition, whatever time it
19   may be.
20          MR. BAKER:  Understood, Your Honor.
21       And Mr. Brown's deposition is currently scheduled for next
22   Wednesday --
23          THE COURT:  Oh.
24          MR. BAKER:  -- but if I could just explain the timing
25   a little bit.
```

On meet and confers with the special master yesterday and today, we had explained to counsel for Otto Trucking and Uber that we started the process immediately after the hearing on Monday, and that we were in the process of talking to our client about what should be unredacted, and that we envision that we would be able to reproduce documents in unredacted form not just before Mr. Brown's deposition but by today.

**THE COURT:** Oh.

**MR. BAKER:** And so this notion that we are somehow delaying or that we haven't agreed to do what the Court asked us to do is completely false --

**THE COURT:** Okay.

**MR. BAKER:** -- explained --

**THE COURT:** By today --

**MR. BAKER:** -- I expect --

**THE COURT:** Great.

**MR. BAKER:** -- to be able to get those documents out today.

**THE COURT:** Great.

**MR. BAKER:** And if there are -- we do think that there will be some redactions that we believe are still outside of the scope of the waiver.

And what we've talked about with the special master and with counsel for defendants is, if they then look at those redactions and want to still challenge them, that those

1  documents, assuming that Your Honor would be amenable to this,
2  could be submitted in camera for Your Honor's inspection --
3            **THE COURT:**  You know what --
4            **MR. BAKER:**  -- decided.
5            **THE COURT:**  -- what I'd like to do, because I'm not
6  here on Friday, is just to set a hearing tomorrow at 10:30.
7  Just come here with the documents and I'll just look at them.
8  And we'll do it in realtime.
9            **MR. BAKER:**  Will do.
10           **THE COURT:**  So get them to them by a reasonable time
11 today so that they -- I don't have to deal with any objections
12 that they don't -- because they haven't had time to do it.
13 We'll do that at 10:30 tomorrow.
14           **MR. BAKER:**  Understood.  We will -- we will -- we'll
15 get those documents over to them as quickly as possible.
16           **THE COURT:**  And do it on a rolling basis.  Some of
17 them should already be redacted.  Send them over now, not all
18 at once.  We're beyond all-at-once time; we're in post fact
19 discovery cutoff time.  So rolling basis.
20           **MR. BAKER:**  Understood.
21           **THE COURT:**  Okay.
22           **MR. BOOCK:**  Your Honor, this is Todd Boock.  May I
23 address one related item?
24           **THE COURT:**  Okay.
25           **MR. BOOCK:**  The documents that I was talking about

```
 1  that are beyond those 29 documents, the other documents --
 2           THE COURT:  Right.
 3           MR. BOOCK:  -- prior production.  Our -- this is
 4  purely a guesstimate; I'm not even going to say it's an
 5  estimate because we don't know what is behind redactions.  But
 6  our guesstimate is the documents we're talking about that we
 7  think would fall within the scope of the waiver numbers about
 8  200.
 9       And so, you know, to the extent if Your Honor is inclined
10  to do a review of those, if we could provide the Court with the
11  privileged log items that we have an issue with for the Court
12  to review as well.
13           THE COURT:  All right.  Let me -- let me ask
14  Mr. Baker.
15       Are you planning on producing additional documents as
16  well?
17           MR. BAKER:  No, we're not, Your Honor.  If I could
18  just address that issue briefly.
19       We have explained to Mr. Boock yesterday and today on meet
20  and confers that our understanding of the scope of the waiver
21  was exactly what Your Honor explained at the hearing on Monday.
22       And it was within -- it was with that scope of the waiver
23  in mind that we went back and produced new documents on
24  August 24.  We went back through the -- all of our privilege
25  logs.  We produced the documents that we believe fell within
```

1  the waiver.  We unredacted documents that we believe fell
2  within the waiver.  And we took a fresh look as well.
3       And with Your Honor's -- with the scope of the waiver in
4  mind, we believe that we have fully complied and produced all
5  the documents that fall within the scope of the waiver.  And
6  so, you know, there's nothing more, in our view, for us to do.
7       Now, I did say to Mr. Boock, that we're happy to take a
8  look at whatever documents, if there's a privilege log entry
9  that he wants us to look at because he believes that we missed
10 something, I'm happy to take a look at that.  So far, they've
11 only identified one document for us.  We went back and took a
12 look, and the document -- it's not a communication with the
13 forensics team, so -- and, therefore, it doesn't fall within
14 the scope of the waiver.
15      The only communication in that email thread that was with
16 the forensics team has been unredacted.  But if they're -- if
17 they want to point out additional log entries for us to take a
18 look at, we're happy to do that, but I do think that we've
19 fully complied.
20           **THE COURT:**  Okay.  So you're not withholding on
21 temporal grounds communications with the forensic team?
22           **MR. BAKER:**  We are not.
23      I mean, the issue that they have raised is that -- you
24 know, our view is the investigation ended on a given date, and
25 they are now asking for certain documents on our privilege logs

```
 1  that were generated after that date --
 2           THE COURT:  Okay.  So --
 3           MR. BAKER:  -- and we don't think that those fall
 4  within the scope of --
 5           THE COURT:  This is why I disagree with you,
 6  Mr. Baker, because Mr. Brown is actually a testifying witness
 7  and perhaps the other people as well.  And so what they were
 8  told in their understanding goes to their -- their testimony,
 9  and so I don't agree with that line at all.
10           MR. BAKER:  The temporal line --
11           THE COURT:  Correct.
12           MR. BAKER:  -- Your Honor?
13           THE COURT:  Correct.
14      Whatever date you claim the investigation ended -- and, by
15  the way, I mean, from the emails now that were only disclosed
16  after my order on the motion to compel, it's clear that a lot
17  of this was happening just before the lawsuit was filed.  So I
18  don't know how you draw the line in terms of when -- you know,
19  when investigation ended, didn't end.  It's sort of ongoing in
20  that sense.
21      And, in any event, Mr. Brown is -- is -- you've designated
22  him as an expert.  He's a witness in the case.  And so what
23  he's been told in connection with that shapes -- is relevant to
24  his testimony.
25           MR. BAKER:  The documents, Your Honor, that I think
```

1  that they are referring to on our privilege log right before
2  the complaint was drafted are documents that just go to, you
3  know, communications with Mr. Brown about, you know, drafting
4  our -- what was going into our complaint.  They're not --
5  there's no additional, you know, facts that were uncovered as
6  part of the investigation, as far as I understand it.  It's
7  just communications where, you know, we were preparing to file
8  our complaint.
9          **THE COURT:**  Okay.  Well, so what I think, Mr. Boock,
10 you should do, if you think they're about 200, identify those
11 200 and see what you can work out before 10:00 -- what time did
12 I say?  10:30? --
13         **THE CLERK:**  10:30, Your Honor.
14         **THE COURT:**  -- tomorrow.  But bring them here, and I
15 can look at them.
16         **MR. BAKER:**  Thank you.  We will do that.
17    The one other thing we would ask, because this clearly
18 seems to be a pending issue, is that just for this one issue --
19 the motion to compel deadline is tomorrow at midnight.  And, if
20 we're coming to a hearing to the court tomorrow at 10:30, that
21 may resolve the issue, but we still would have documents to be
22 produced, we would ask for that date to be extended and also
23 depositions that are dependent on the document production to be
24 extended a brief period of time to allow that to happen
25 because, like I said, I think if we're coming to court tomorrow

```
 1  and, while I would love to resolve these issues, I obviously
 2  can't guarantee them, and --
 3           THE COURT:  Okay.  Let's talk about it at court
 4  tomorrow.
 5           MR. BOOCK:  Okay.  Thank you, Your Honor.
 6           MR. BAKER:  Thank you, Your Honor.
 7           THE COURT:  Okay.  Anything else?
 8      Oh, the other thing -- I guess I said, Mr. Baker, that
 9  tomorrow is Waymo's deadline to submit a declaration, if it
10  can, just define the confidentiality or AEOs of the emails that
11  Otto Trucking submitted in connection with Docket No. 1377.
12  And I'm just telling you because I'm going to get on it right
13  tomorrow because Judge Alsup has asked me to.
14           MR. BAKER:  Understood.  Thank you.
15           THE COURT:  Okay.  Thank you.
16           MR. BOOCK:  Thank you, Your Honor.
17           THE COURT:  You're welcome.
18           UNIDENTIFIED SPEAKER:  Thank you.
19           UNIDENTIFIED SPEAKER:  Thank you.
20               (Proceedings adjourned at 2:19 p.m.)
21                          ---o0o---
22
23
24
25
```

```
 1
 2                    CERTIFICATE OF TRANSCRIBER
 3
 4        I certify that the foregoing is a true and correct
 5   transcript, to the best of my ability, of the above pages of
 6   the official electronic sound recording provided to me by the
 7   U.S. District Court, Northern District of California, of the
 8   proceedings taken on the date and time previously stated in the
 9   above matter.
10        I further certify that I am neither counsel for, related
11   to, nor employed by any of the parties to the action in which
12   this hearing was taken; and, further, that I am not financially
13   nor otherwise interested in the outcome of the action.
14
15   Dated:  August 31, 2017
16
17               _____
18                    SARAH GOEKLER, TRANSCRIBER
19
20
21
22
23
24
25
```