QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, | CASE NO. 3:17-cv-00939 |
| Plaintiff, | **PLAINTIFF WAYMO LLC'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF RE MOTION TO STRIKE TRADE SECRET CLAIMS** |
| vs. | |
| UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
| Defendants. | |

Pursuant to the Court's guidance at the Aug. 23, 2017 Hearing (Tr. at 88:17-89:22), Waymo hereby responds to Defendants Uber Technologies, Inc. and Ottomotto LLC's (collectively, "Defendants" or "Uber") supplemental brief on their motion to strike Trade Secret No. 96 under Section 2019.210.[1]

## I.  INTRODUCTION

Defendants' supplemental brief is far afield from its original motion to strike. To recap: Defendants moved to strike four of nine of Waymo's elected trade secrets based on CCP Section 2019.210 for failure to allegedly identify its trade secrets "with reasonable particularity." Dkt. 1107-4. The Court denied the motion with the exception of Trade Secret No. 96 ("TS 96"), which it held in abeyance pending Waymo's disclosure of its offer of proof. Dkt. 1247; Aug. 16, 2017 Hearing Tr. at 123:24-124:9. The Court then allowed Uber to file a supplemental brief addressing Waymo's offer of proof for Trade Secret No. 96. Aug. 23, 2017 Hearing Tr. at 89:1-10.

On the only question pending before the Court—whether Waymo's TS 96 complies with Section 2019.210—the answer is unambiguously yes. Uber's detailed supplemental brief (Dkt. 1399-4) itself confirms that Waymo did identify its trade secret with reasonable particularity well beyond the applicable standard required by Section 2019.210, and it did so in March 2017—before discovery began. In particular, Uber's full-throated rebuttal to the substance of the trade secret, arguing that it does not use [REDACTED] confirms better than any statement by Waymo that Uber knows exactly what Waymo contends is a trade secret and how Waymo contends Uber is using it. Section 2019.210 requires identification with reasonable particularity. There is no question that Waymo has done so in this instance.

Rather than argue whether Waymo identified its trade secret with reasonable particularity, Uber spends the bulk of its brief trying to persuade the Court to rule on hotly disputed issues of fact and improperly deprive Waymo of its constitutional right to a jury trial—on whether Uber misappropriated the claimed trade secret. The Court should reject this invitation as such a ruling on a

---

[1] Waymo will separately submit responses to the Court's sealed orders at Dkt. Nos. 1408 and 1416.

Section 2019 motion would constitute clear reversible error. In fact, Uber already tried these same arguments for other trade secrets Uber previously moved to strike; the Court rightly rejected them. Aug. 16, 2017 Hearing Tr. 108:5-15 (denying motion to strike TS 25: "I think it is good enough, because I have looked at the document. This document -- I have explained it. All the detail in here is -- in totality is the trade secret."); *id.* at 110:13-111:3 (denying motion to strike TS 90); *id.* at 133:24-134:18 (denying motion to strike TS 111: "But the bottom line that ███████████████████████████████████████, okay, and I'd say that's described well enough – I'm not saying it is a trade secret; I'm just saying it was described well enough. And so for the notice purposes, I would deny this motion."). The same is true for TS 96. Whether Uber is misappropriating the identified trade secret is an issue for fact at trial; not an issue of disclosure under Section 2019.

Uber's supplemental brief further argues that Waymo must show "exact duplication" of TS 96 for purposes of trade secret misappropriation to reach a jury. Wrong. There is simply no basis in trade secret law to require "exact duplication" to show misappropriation of a trade secret. The facts here are more than enough to show use of TS 96. Mr. Levandowski downloaded the exact schematic identified in TS 96. He met with an Uber executive the same day he did so. Mr. Levandowski then went to Uber to head its self-driving and LiDAR program. Uber and Mr. Levandowski, as the head of Uber's self-driving program, then created a new LiDAR in an impossibly fast amount of time (███████),[2] a LiDAR that the Court previously found to have "serious questions going to the merits" whether its use of two design elements (claimed as Waymo Trade Secret Nos. 2 and 7) "resulted from old-fashioned, all-American misappropriation of [Waymo's] trade secrets." (Dkt. 426 at 13-16.) At the same time, Mr. Levandowski had hundreds of communications with the Uber engineers regarding LiDAR, including specifically on ███████████████, all while having access to the illegally downloaded TS 96 that detailed ███████████████. Contrary to Uber's prior representations to this Court during the injunction phase, Mr. Levandowski's personal text messages to the now-head of Uber's self-driving program confirms ███████████████████████████████. He and his

---

[2] This is in contrast to the *years* that Waymo spent developing its mid-range LIDAR solution (GBr).

colleagues even went so far as to refer to Waymo's own ████████████ using a code name to hide evidence of this theft. Even if Uber failed to exactly replicate TS 96, it is reasonable to infer from the evidence that Mr. Levandowski consulted TS 96 as he shaped ████████████. Waymo has gone well beyond showing a disputed issue of fact as to whether Uber misappropriated TS 96. To hold otherwise on summary judgment in the guise of a motion to strike would constitute reversible error.

Waymo is not aware of a single case that would entirely deny a plaintiff relief—after fact discovery is over—based on Section 2019.210, when the plaintiff identified a single schematic as a trade secret six months prior, before discovery even began, and one that was personally downloaded by a key executive for the Defendants. Defendants' motion should be denied. To grant Defendants' motion would not serve the core purpose of Section 2019.210—to define the scope of discovery. Fact discovery cut-off is behind us. Waymo already served its opening expert report on trade secret misappropriation. TS 96 should proceed to trial.

## II. WAYMO IDENTIFIED BEFORE DISCOVERY BEGAN ████████████ WITHIN ONE SCHEMATIC AS TRADE SECRET NO. 96

Waymo's trade secret list under Section 2019.210 was served on March 10, 2017. (Dkt. 25-7.) Discovery commenced on March 16, 2017. (Dkt. 61.) Fact discovery closed on August 24. The same day, Waymo served its opening expert report detailing Defendants' trade secret misappropriation. Trade Secret No. 96, identified in Waymo's original trade secret list served in March, is directed to a specific implementation of Waymo's trade secret LiDAR designs (and designs derived therefrom) that the Court has previously noted would qualify as protectable trade secrets. Defendants' own brief quotes the Court on this point, essentially admitting that TS 96 is just that—a properly identified trade secret. Dkt. 1399-4 at 1 ("*[S]ee* 5/3/17 AM Sealed Hr'g Tr. 14:23-25 (Court: '[T]here is no doubt in my mind that your specific ████████████ configuration, very specific configuration, would be a trade secret. That's okay. They don't use that though.')."); *see also* May 3, 2017 Hearing Tr. (a.m. closed session) at 15:21-22 ("[Y]our specific implementation, I think, would be a trade secret."); May 3, 2017 Hearing Tr. (p.m. closed session) at 44:11-13 ("Trade secrets are about how you implement your design. It doesn't have to be—qualify for a patent. It's about implementation.").

Defendants thus appear to now admit that Waymo's TS 96, describing its implementation of its ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, qualifies as a trade secret and is identified as such. This is not surprising as Defendants cannot run from their own head of self-driving describing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Dkt. 1371-4 at 18; Jaffe Decl. Ex. 1. Left with no other options on the pending motion to strike, Defendants pivot to a new argument (entirely absent from their opening brief) that Waymo's ▬▬▬ design is "not described anywhere in TS 96 even in general terms." Dkt. 1399-4 at 3. This is clearly false. TS 96 claims one specific PCB board that includes ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See* Dkt. 1371-4 at 23-24. Waymo's trade secret list (served before discovery began) identified this exact PCB schematic, and identified for Defendants that one unique aspect of the schematic reflected ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Dkt. 25-7 at 55. There can be little debate that ▬▬▬▬▬▬▬ as implemented by Waymo is identified in TS 96 for purposes of Section 2019. *See VasoNova Inc. v. Grunwald*, No. C 12-02422, 2012 WL 4119970, at *3 (N.D. Cal. Sept. 18, 2012) (Alsup, J.) (finding that the disclosure of trade secrets for "implementation information" met the reasonable particularity requirement).

The cases uniformly hold that this type of identification is sufficient for Section 2019.210. For example, *Via Techs., Inc. v. Asus Computer Int'l*, No. 14-cv-3586, 2016 WL 1056139 (N.D. Cal. Mar. 17, 2016), cited ***by Uber*** in its original motion (Dkt. 1107-4 at 9), supports Waymo's position. In *Via*, the defendant resisted providing discovery that was outside the scope of plaintiff's Section 2019.210 disclosure. *Id.* at *2. To resolve this discovery dispute, the court analyzed what trade secrets plaintiff had sufficiently disclosed. *Id.* at *2-3. The Court specifically found that the schematics the plaintiff had identified was a sufficient identification under Section 2019.210: "However, VIA is entitled to discovery on at least the trade secrets that it has specifically identified: the 12 schematics." *Id.* at *3. As opposed to the 12 schematics identified in *Via*, Waymo has identified ***one*** schematic in Trade Secret No. 96. It further identified examples of what parts of this schematic reflect unique and trade secret information—e.g., ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Dkt. 25-7 at 55. This one schematic is sufficient for purposes of complying with Section 2019.210's requirement to identify a trade secret with reasonable particularity. *See Lilith Games (Shanghai) Co. v. uCool, Inc.*,

1  No. 15-CV-01267, 2015 WL 4149066, at *4-5 (N.D. Cal. July 9, 2015) (finding that the plaintiff was
2  claiming as trade secret the "specific way" that it authored and structured source code and that the
3  disclosure was "more than enough information" to meet the particularity requirement of Section
4  2019.210).

5        Waymo's offer of proof provided pages of detail concerning how and why ▮▮▮▮▮
6  ▮▮▮ included in TS 96 is unique and different from Uber's prior designs and those known in the
7  industry—*i.e.* why TS 96 qualifies as a trade secret. Dkt. 1371-4 at 17-25. Uber did not dispute or
8  otherwise respond to these arguments, conceding that ▮▮▮▮▮▮ in TS 96 are unique and
9  entitled to trade secret protection. Nevertheless, Uber's brief appears to implicitly argue at times that
10 anything describing how Waymo ▮▮▮▮▮▮▮▮▮▮ in TS 96 is
11 not entitled to trade secret protection because they were known in the art. This is incorrect. As
12 explained by Waymo engineer Pierre Droz, Waymo came up with ▮▮▮▮▮
13 embodied in TS 96, in part, by: "▮▮▮▮▮
14 ▮▮▮▮▮
15 ▮▮▮▮▮
16 ▮▮▮." Dkt. 453-3 at 4. This ▮▮▮▮ "helped [Waymo] solve critical driving
17 scenarios, such as ▮▮▮▮▮." *Id.* "This ▮▮▮ for GBr3
18 provided a reduction in disengages caused by the LiDAR system in hundreds of thousands of miles of
19 ensuing testing." *Id.* at 5.

20       To the extent disputed, however, it is another question of fact for the jury, not one the Court
21 can rule on in the context of a motion to strike under Section 2019. *Contemporary Servs. Corp. v.*
22 *Landmark Event Staffing Servs., Inc.,* 677 F. App'x 314, 315 (9th Cir. 2017), *as amended on denial of*
23 *reh'g* (Mar. 30, 2017) ("Here, CSC raised material triable issues as to whether its customer lists (CSC
24 California #17-18), its deployment workbook (CSC California #12), and its PowerPoint disclosing
25 financial information (CSC California #2) qualify as trade secrets. *See Abba Rubber Co. v. Seaquist*,
26 286 Cal. Rptr. 518, 526 (Cal. Ct. App. 1991) (where a customer list qualified as a trade secret); *id.* at
27 529 n.9 (noting that "ease of ascertainability is irrelevant to the definition of a trade secret"); *Whyte v.*
28

*Schlage Lock Co.*, 125 Cal. Rptr. 2d 277, 287-88 (Cal. Ct. App. 2002) (where specific and unique financial information qualified as a trade secret)." (footnote omitted))

Recognizing the futility of their argument under the pending motion to strike, Defendants at times do not even argue that TS 96 is not properly identified pursuant to Section 2019, retreating to a new position that TS 96 is not a "properly-drawn trade secret to be presented to a jury." Dkt. 1399-4 at 1. But there is no basis in trade secret law for excluding allegedly not "properly-drawn trade secrets"—whatever that newly coined term is supposed to connote. Defendants unsurprisingly cite no authority to support this theory. Instead, Uber's repeated and detailed arguments about the scope of the trade secret prove the opposite: that Waymo has complied with Section 2019's reasonable particularity requirement. *Prolifiq Software Inc. v. Veeva Sys. Inc.*, No. C 13-03644, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014) ("Indeed, the fact that Veeva is able to craft detailed arguments for why Prolifiq's information does not constitute trade secrets means that Prolifiq has sufficiently identified that information to Veeva so that it may investigate the merits of Prolifiq's claim."). This alone should resolve Defendants' motion to strike.

### III. UBER'S ARGUMENT THAT IT DOES NOT USE THE TRADE SECRET IS A FACT QUESTION FOR TRIAL; NOT A MOTION TO STRIKE UNDER SECTION 2019.210

Uber spends the majority of its brief arguing whether it uses or is otherwise liable for trade secret misappropriation. This is a question of fact not before this Court on Uber's motion to strike pursuant to Section 2019. "The statute . . . does not create a procedural device to litigate the ultimate merits of the case—that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 149 (2009); *see also Advanced Modular Sputtering, Inc. v. Superior Court,* 132 Cal. App. 4th 826, 835-36 (2005) (stating that Section 2019.210 does not require a "trial court to conduct a miniature trial on the merits of a misappropriation claim"). Converting Uber's motion to strike to a motion for summary judgment would be improper. *Art of Living Found. v. Does 1-10*, No. 5:10-CV-05022, 2012 WL 1565281, at *22 (N.D. Cal. May 1, 2012) ("[S]ection 2019.210 [is not] a substitute for a summary judgment motion." (quoting *Brescia*, 172 Cal. App. 4th at 149) (Court's brackets)).

1    Converting Defendants' motion to a summary judgment request would further be contrary to
2 this Court's case management order in this case. Dkt. 563 at 3. The Court provided for summary
3 judgment motions only with advance Court approval (*id.*), and subsequently ruled that only one such
4 motion would be allowed (Aug. 16, 2017 Hearing Tr. at 135:1-5). Defendants moved for leave and
5 were granted one motion. Dkt. 1300, 1359. Defendants could have easily raised non-use of TS 96 in
6 that request. Defendants chose not to do so. The Court should not allow Defendants to end run the
7 Court's orders to rule on multiple, serial summary judgment motions, all while Waymo has duly
8 followed the Court's guidance for summary judgment. Instead, Waymo submits the Court should rule
9 on the only thing pending before it—Defendants' motion to strike pursuant to Section 2019. As
10 discussed above, under that standard, it is clear that Waymo has complied with the requirement to
11 identify its trade secret with reasonable particularity.

12    Regardless, to the extent the Court does convert Defendants' motion to strike to a motion for
13 summary judgment (over Waymo's strenuous objection), the Court cannot decide these issues unless
14 there are no disputed issues of material fact. Fed. R. Civ. P. 56. Here, there are several disputed
15 issues of fact that prevent such a ruling under Rule 56. For example, Uber's supplemental brief is
16 conspicuously silent concerning ▮
17 ▮. Uber previously represented to the Court via briefing and sworn
18 testimony that Mr. Levandowski was not involved in ▮ in Fuji. Haslim Decl.
19 (Dkt. 174-1) ¶ 19; *see also* PI Opp. (Dkt. 173-4) at 5. ▮ *See* Dkt.
20 1371-4 at 20-22; Jaffe Decl. Ex. 2 (▮
21 ▮). Moreover, Uber ▮
22 ▮. Dkt. 1371-4 at
23 20-21. ▮
24 ▮" Jaffe Decl. Ex. 3. ▮
25 ▮
26 ▮. *See* Dkt. 1371-4 at 20-21. Waymo's expert,
27 Prof. Hesselink from Stanford, has compared the resulting designs and opined: "Given the extensive
28 engineering effort and considered trade-offs reflected in Waymo's ▮, it

1  is not plausible that Defendants ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

2  ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊." Hesselink Opening Report (Dkt. 1399-5) ¶ 428.

3  After comparing ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ (as discussed in Waymo's offer

4  of proof, Dkt. 1371-4 at 23-25), he further opined: "It is my opinion that this similarity reflects the

5  fact that ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

6  ▊." *Id.* ¶ 432. Waymo has provided far more than is required to show disputed issues of fact.

7       Uber's supplemental brief also invokes the Court's off-the-cuff statements regarding "exact

8  duplication" for purposes of showing use of TS 96. Dkt. 1399-4 at 1. "Exact duplication" is not the

9  correct standard to show misappropriation of a trade secret under CUTSA or DTSA. The question is

10 whether Uber misappropriated the trade secret—*i.e.* acquisition, disclosure or use. CCP § 3426.1(b).

11 And "use" does not mean that one must literally copy the exact design—one can easily "use"

12 something to create a different resulting design. The "use" is still clearly present and constitutes

13 misappropriation under CCP §§ 3426.1 and 18 U.S.C. § 1839(5). "If trade secret law were not

14 flexible enough to encompass modified or even new products that are substantially derived from the

15 trade secret of another, the protections that law provides would be hollow indeed." *Think Village-*

16 *Kiwi, LLC v. Adobe Sys., Inc.*, No. C 08-04166, 2009 WL 3837270, at *3 (N.D. Cal. Nov. 16, 2009)

17 (quoting *Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 037, 933 (7th Cir. 1996)).

18 Uber cites no authority requiring an "exact duplication" standard—because it does not exist.

19 Applying an "exact duplication" standard to determine whether Uber misappropriated Waymo's trade

20 secret design would constitute reversible error.

21      Here, there is a compelling case of misappropriation by Uber—as that term is used by CUTSA

22 and DTSA. Mr. Levandowski downloaded 14,000 files from Waymo, including the exact schematic

23 identified as TS 96. He did so on the same day he was meeting with an Uber executive. *Compare*

24 Dkt. 712, Ex. 1 at Nos. 21-27 (▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

25 ▊▊▊▊▊▊) with Dkt. 24 ¶¶ 16-17 (describing Mr. Levandowski's downloading of 14,000+ files on

26 Dec. 11, 2015). He then left to lead Uber's self driving program, including its LiDAR efforts. ▊▊▊

27 ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

28 ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ One could reasonably infer that Mr.

Levandowski, consulting the TS 96 schematic on his personal computer (amongst the other 14,000+ files he downloaded), used it to guide Uber's ▓▓▓▓▓▓ to implement something derivative of if not an exact copy of Waymo's GBr3. That conduct remains trade secret misappropriation, even if Uber's design is not an exact replica. This evidence (among other evidence) clearly raises disputed issues of fact for trial. *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 703 (9th Cir. 2017) ("Second, there is enough evidence in the record to raise a question of material fact as to whether Tolat misappropriated those portions of Integral's source code that qualify for trade secret protection. *See Whyte*, 125 Cal. Rptr. 2d at 289 ('"Misappropriation' is, generally speaking, improper acquisition of a trade secret or its nonconsensual use or disclosure.') (citing Cal. Civ. Code § 3426.1(b)). There is evidence that Tolat copied the source code shortly before he planned to leave Integral and join EBS. There is also evidence that, after Tolat joined EBS, EBS released a product—EBS Direct—that competed directly with some of Integral's products. A fact finder must determine whether Tolat actually gave Integral's source code to EBS and whether EBS used the source code to develop EBS Direct.").

In response, Uber is free to argue at trial that its design does not use ▓▓▓▓▓▓ contained in TS 96. It is free to argue that Mr. Levandowski did not use or refer to the schematic in TS 96 when he was guiding Uber's implementation of ▓▓▓▓▓▓. Uber is free to argue that ▓▓▓▓▓▓ are different. But those are not issues on a motion to strike pursuant to Section 2019.210. Whether Defendants misappropriated TS 96 is an issue of fact for the jury to decide. On this record, to grant summary judgment (as Uber's motion attempts to do) on Waymo's claim of trade secret misappropriation of one of the files that Mr. Levandowski personally downloaded and Waymo has put forth documentary evidence and witness and expert testimony has been acquired, disclosed and used by Uber would constitute reversible error. *Integral Dev. Corp.*, 675 F. App'x at 704 ("Because Integral has at least raised a question of material fact as to all necessary elements of a CUTSA claim (based on the alleged misappropriation of its source code), we reverse the district court's summary judgment ruling on this claim and remand.").

## IV.   CONCLUSION (AND ALTERNATIVE REMEDY)

Waymo complied with Section 2019.210 before discovery began—in March 2017. Fact

1  discovery cut-off is behind us.  Opening expert reports have been served.  For notice purposes,
2  Waymo clearly complied with Section 2019.210.  For the foregoing reasons, Defendants motion to
3  strike under Section 2019 should be denied.   In the alternative, if the Court were inclined to grant
4  Defendants' motion, Waymo renews its request that it should at minimum grant Waymo leave to
5  narrow or otherwise amend its Section 2019.210 disclosure.  This Court's prior precedent has granted
6  plaintiffs *multiple* attempts to provide a sufficient Section 2019.210 disclosure before dismissing the
7  challenged trade secrets—a ruling on the merits of the plaintiff's claim.  Dkt. 1107-4 at 9 (citing
8  *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519 WHA, 2014 WL 1724763, at *4 (N.D. Cal. May
9  1, 2014).  Waymo should not be deprived of even *one* opportunity to amend to comply with Section
10 2019 and thus exclude any relief on TS 96, which would at this stage constitute an improper summary
11 judgment ruling.

13 DATED:  September 1, 2017                QUINN EMANUEL URQUHART & SULLIVAN, LLP

By      */s/ Charles K. Verhoeven*
         Charles K. Verhoeven
         Attorneys for WAYMO LLC