1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone:     415.268.7000
5   Facsimile:     415.268.7522

6   KAREN L. DUNN (*Pro Hac Vice*)
    kdunn@bsfllp.com
7   BOIES SCHILLER FLEXNER LLP
    1401 New York Avenue, N.W.
8   Washington DC  20005
    Telephone:     202.237.2727
9   Facsimile:     202.237.6131

10  WILLIAM CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
11  SUSMAN GODFREY LLP
    1301 Avenue of the Americas, 32nd Floor
12  New York, NY  10019-6023

13  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
14  and OTTOMOTTO LLC

15  NEEL CHATTERJEE (SBN 173985)
    nchatterjee@goodwinlaw.com
16  GOODWIN PROCTER LLP
    135 Commonwealth Drive
17  Menlo Park, California 94025
    Tel.: +1 650 752 3100
18  Fax.: +1 650 853 1038

19  Attorneys for Defendant
    OTTO TRUCKING LLC

20                  UNITED STATES DISTRICT COURT
21                 NORTHERN DISTRICT OF CALIFORNIA
                      SAN FRANCISCO DIVISION

22  WAYMO LLC,                           Case No.       3:17-cv-00939-WHA

23              Plaintiff,                **DEFENDANTS' MOTION FOR
                                          SUMMARY JUDGMENT**
24        v.
                                          Date:     September 20, 2017
25  UBER TECHNOLOGIES, INC., OTTOMOTTO    Time:     8:00 a.m.
    LLC; OTTO TRUCKING LLC,               Ctrm:     8, 19th Floor
26                                        Judge:    The Honorable William Alsup
                Defendants.               Trial Date: October 10, 2017
27

28            **UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:17-cv-00939-WHA
dc-897425

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on September 20, 2017 at 8:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA, in Courtroom 8 before the Honorable William Alsup, Defendants Uber Technologies, Inc., Ottomotto LLC will, and hereby do, move for summary judgment of non-infringement of United States Patent No. 9,368,936 ("the '936 patent) and that Waymo's alleged Trade Secret No. 9 is not a trade secret, and Otto Trucking LLC will, and hereby does, move for summary judgment that Otto Trucking cannot infringe the '936 patent and has not misappropriated any alleged Waymo trade secret.

Defendants' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of James Haslim, Declaration of Brent Schwarz, Declaration of Esther Kim Chang, Declaration of Shane Brun, and all exhibits thereto, all documents in the Court's file, any matters of which this Court may take judicial notice, and on such other written and oral argument as may be presented to the Court.

Dated: August 31, 2017              MORRISON & FOERSTER LLP

By:     /s/ Michael A. Jacobs
        MICHAEL A. JACOBS

Attorneys for Defendants UBER TECHNOLOGIES, INC. and OTTOMOTTO LLC

Dated: August 31, 2017              GOODWIN PROCTER LLP

By:     /s/ Neel Chatterjee
        NEEL CHATTERJEE

Attorneys for Defendant OTTO TRUCKING LLC

# TABLE OF CONTENTS

**Page**

UBER'S MOTION FOR SUMMARY JUDGMENT ..................................................... 1

INTRODUCTION ......................................................................................................... 1

STATEMENT OF THE ISSUES .................................................................................. 1

I.      SUMMARY JUDGMENT SHOULD BE GRANTED ON THE '936 PATENT ............. 2

     A.      The '936 Patent and Accused Product .................................................. 2

     B.      Uber Does Not Infringe the '936 Patent Under the Doctrine of Equivalents ........ 5

         1.      Dr. Wolfe's DOE analysis is faulty as a matter of law .............................. 5

         2.      DOE does not apply to the '936 patent's simple circuit ........................... 8

         3.      Waymo has no remedy for any alleged infringement of the '936 Patent ... 9

II.      SUMMARY JUDGMENT SHOULD BE GRANTED ON TS 9 ................................... 10

     A.      TS 9 Claims the Publicly Known, General Concept of ███████████ ... 10

     B.      TS 9 Is Not A Trade Secret .................................................................. 13

CONCLUSION ........................................................................................................... 15

OTTO TRUCKING'S MOTION FOR SUMMARY JUDGMENT ........................... 16

I.      DEFENDANT OTTO TRUCKING CANNOT INFRINGE THE '936 PATENT AND HAS NOT MISAPPROPRIATED ANY WAYMO TRADE SECRET ............... 16

     A.      Background ........................................................................................... 16

     B.      Otto Trucking Cannot Infringe Waymo's '936 Patent ........................ 18

     C.      Otto Trucking Has Not Misappropriated Any Waymo Trade Secret ... 18

     D.      Waymo's Alternative Theories Against Otto Trucking Will Also Fail ... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajaxo Inc. v. E\*Trade Group Inc.*
    135 Cal. App. 4th 21 (2005) ....................................................................................18, 19

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
    811 F.3d 1334 (Fed. Cir. 2016)..............................................................................................6

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286 (Fed. Cir. 2014)..............................................................................................9

*AquaTex Indus., Inc. v. Techniche Sols.*,
    479 F.3d 1320 (Fed. Cir. 2007)....................................................................................5, 6, 8

*AquaWood, LLC v. Worldslide, LLC et al.*,
    No. CV 11-5611-JFW (Ex), slip op. (C.D. Cal. Oct. 31, 2012)............................................18

*Beaulieu Group, LLC v. Bates*,
    2016 WL 7626471 (C.D. Cal. Oct. 18, 2016) .......................................................................19

*ClearValue, Inc. v. Pearl River Polymers, Inc.*,
    668 F.3d 1340 (Fed. Cir. 2012)............................................................................................14

*Devex Corp. v. Gen. Motors Corp.*,
    667 F.2d 347 (3d Cir. 1981)...................................................................................................9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002) ...............................................................................................................8

*Freedman Seating Co. v. Am. Seating Co.*,
    420 F.3d 1350 (Fed. Cir. 2005)..............................................................................................8

*He Nam You v. Japan*,
    150 F. Supp. 3d 1140 (N.D. Cal. 2015) ...............................................................................20

*JW Pharm. Corp. v. Michael Kahn & Prism Pharma Co.*,
    No. CV1201006JGBRZX, 2013 WL 12125751 (C.D. Cal. Mar. 11, 2013)...........................20

*Moore U.S.A, Inc. v. Standard Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000)..............................................................................................5

*NetApp v. Nimble*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014) ...................................................................................20

*Sage Prods., Inc. v. Devon Indus., Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997)..............................................................................................9

*Stumbo v. Eastman Outdoors, Inc.*,
    508 F.3d 1358 (Fed. Cir. 2007)...................................................................................5

*Tex. Instruments Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996)...................................................................................5

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997).....................................................................................................5

*Winston Research Corp. v. Minn. Min. & Mfg. Co.*,
    350 F.2d 134 (9th Cir. 1965)...................................................................................15

**Statutes and Other Authorities**

35 U.S.C. § 271.................................................................................................................18

Cal. Civ. Code § 2310 (West 2017) ................................................................................20

Federal Rules of Civil Procedure
    Rule 30(b)(6)............................................................................................................13
    Rule 56(a)..........................................................................................................18, 19

Restatement (Third) of Torts: Apportionment Liab. § 12 (2000) .................................20

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| 3/31/17 Droz Dep. | March 31, 2017 deposition of Pierre-Yves Droz |
| 8/3/17 Droz Dep. | August 3, 2017 deposition of Pierre-Yves Droz. |
| Damages Disclosure | Plaintiff Waymo LLC's Supplemental Initial Disclosure dated June 21, 2017 |
| Gassend Dep. | August 16, 2017 deposition of Blaise Gassend |
| Haslim | Declaration of James Haslim in Support of Defendants' Motion for Summary Judgment |
| Infr. Contentions | Exhibit C to Waymo's Disclosure of Asserted Claims and Infringement Contentions |
| McCann Dep. | July 12, 2017 deposition of William McCann |
| The '936 patent | U.S. Patent No. 9,368,936 |
| Uber | Uber Technologies, Inc., Ottomotto LLC, and Otto Trucking LLC |
| Wagner Rpt. | Expert Report of Michael J. Wagner |
| Wolfe Dep. | Deposition of Andrew Wolfe, Ph.D. dated August 11, 2017 |
| Wolfe Rpt. | Opening Expert Report of Dr. Andrew Wolfe, Ph.D. Concerning Defendants' Infringement and Waymo's Practice of U.S. Patent No. 9,368,936 dated August 24, 2017 |
| Yang | Declaration of Michelle Yang in Support of Defendants' Motion for Summary Judgment |

## UBER'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Waymo does not claim literal infringement of the '936 patent, and Uber does not infringe any claim of the patent under the doctrine of equivalents because the claimed "diode" and Fuji's resistor are not equivalent circuit elements.  The '936 patent specification clearly defines the function, way, and result of the "diode" in the claimed circuit.  The specification states that, during the charging mode, the "diode" becomes forward biased to allow current to flow forward, and then reverse biased to restrict current from flowing backward, with the result of supercharging the capacitor.  Waymo's DOE analysis is defective as a matter of law because it ignores this stated function, way, and result and instead offers purported "functions" that are nowhere disclosed in the patent.  Additionally, because Waymo's damages expert provided no opinion that Waymo suffered damages as a result of Uber's alleged infringement of the '936 patent, ████████████████████████████████████████████████ ███████████, the Court should, as a matter of law, rule that Waymo is entitled to no remedies.

TS 9 is not a trade secret.  Waymo broadly claims as a trade secret the use of ████████ ██████████████████████████████████.  But FAC lenses for pre-collimating laser beams are indisputably well known, and Waymo engineers admitted that ███████████████ █████████████████████████████████████████████████ ████████.  In its preliminary injunction order, the Court warned Waymo that it "overreached in attempting to claim ownership over general principles and approaches in the field," and noted that one of Waymo's "supposed trade secret[s] is nothing more than Optics 101."  (Dkt. 426.)  TS 9 is yet another attempt to claim trade secret protection for general approaches in any engineer's toolbox, and summary judgment should be granted.

## STATEMENT OF THE ISSUES

1. Whether the claimed "diode" in the '936 patent is equivalent to a resistor present in Uber's Fuji firing circuit.

2. Whether the Court should rule that Waymo is entitled to no remedies if Uber is found to infringe any claim of the '936 patent.

3.   Whether Waymo's alleged Trade Secret No. 9 is a protectable trade secret.

## I.   SUMMARY JUDGMENT SHOULD BE GRANTED ON THE '936 PATENT

### A.   The '936 Patent and Accused Product

All independent claims of the '936 patent require a "diode" as part of a "charging path" of a laser diode firing circuit.  Independent claim 1, for example, recites "a diode coupled to the voltage source via the inductor" and "wherein the charging path includes the inductor and the diode."

The '936 patent specification discloses the laser diode firing circuit shown below:



**Figure 5A**

(Yang Ex. 1, '936 patent.)  Circuit 500 includes, among other components, voltage source 502, inductor 510, diode 514, capacitor 516, laser diode 518, and transistor 520.  (*Id*. at 17:47-64.)  The components of circuit 500 operate together to provide two modes:  a charging mode and a discharge (emission) mode.  (*Id*.)  The two modes are shown in Figures 5C and 5D:





**Figure 5C**                    **Figure 5D**

In the charging mode, transistor 520 is off, causing current to flow from voltage source 502 through inductor 510 and diode 514 to capacitor 516; the current charges capacitor 516, which accumulates charge.  (*Id*. at 18:19-22, 28-37.)  In the emission mode, transistor 520 is on, causing capacitor 516 to drive current through laser diode 518, thereby "caus[ing] the laser diode 518 to emit a pulse of light."  (*Id*. at 18:11-19.)  As shown in Fig. 5C, diode 514 is in the charging mode path (shown by a dotted line); as shown in Fig. 5D, diode 514 is not in the discharge path.

The specification discloses the function, way, and result of the "diode" in  the claimed firing circuit.  In the charging mode, diode 514 operates in forward and reverse biased states. When diode 514 is forward biased, it "allows current flow and charge[s] the capacitor."  (*Id*. at 18:35-37.)  When the voltage on capacitor 516 exceeds the voltage between inductor 510 and diode 514 (*i.e.*, node A 512), then diode 514 becomes reverse biased "to hold charge on the capacitor."  (*Id*. at 18:37-40.)  As a result of the reverse biasing of diode 514, the voltage on capacitor 516 remains supercharged at twice the voltage of voltage source $V_1$.  (*Id*. at 18:60-67; *see also* 20:35-49.)  Dr. Wolfe characterizes the specification similarly, stating that a diode allows current to flow in one direction when "forward biased" to initiate charging, but that "diode 514 becomes reverse biased to block the current flow" to the inductor during the discharge cycle. (Dkt. 1116-1 at 14-15.)  (*See also* Yang Ex. 5, Wolfe Dep. 60:13-17 (when a diode is reverse biased, the "current is about [as] close to zero as anybody would care about.").)

Waymo does not allege that Uber's Fuji circuit includes a "diode" that is part of a "charging path." █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The parties have proposed constructions of the claimed "diode."  Uber proposed that "diode" is "a two-terminal electronic device that allows the flow of current in one direction only." (Dkt. 1233 at 10.)  Waymo argues that no construction of "diode" is necessary, and the term should be accorded its plain meaning (Dkt. 1116 at 11-15), while its expert Dr. Wolfe proposed an alternate construction of "diode" as "[a] two-terminal electronic device that will conduct electricity much more easily in one direction than in the other." (Dkt. 1116-1 at 20-21.)

███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████



(Yang Ex. 4, Wagner Rpt. ¶ 370.)

**B.     Uber Does Not Infringe the '936 Patent Under the Doctrine of Equivalents**

Although infringement under the doctrine of equivalents is a question of fact, summary judgment is proper "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997). A patentee must establish "equivalency on a limitation-by-limitation basis" by "particularized testimony and linking argument" as to the insubstantiality of the differences between the claimed invention and the accused device or process. *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed. Cir. 1996). The function-way-result test "often suffice[s] to show the substantiality of the differences." *Id.* "[A]ll claim limitations are not entitled to an equal scope of equivalents." *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000). Ultimately, "many limitations warrant little, if any, range of equivalents." *Id.*

The function-way-result test focuses on "an examination of the claim and the explanation of it found in the written description of the patent." *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1326 (Fed. Cir. 2007) (citation omitted); *see also Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007).

**1.     Dr. Wolfe's DOE analysis is faulty as a matter of law**

Waymo's DOE theory is based solely on the function-way-result analysis of its expert, Dr. Wolfe. As explained above, the '936 patent specification expressly describes the function,

1  way, and result of the "diode" in the claimed circuit.  A proper function-way-result analysis must

2  remain true to the patent claims and specification.  *AquaTex*, 479 F.3d at 1326.  Dr. Wolfe's

3  analysis fails because he ignores the specification's teachings of the function, way, and result of

4  the "diode" in the claimed circuit, and instead relies on purported "functions" that are nowhere

5  disclosed in the patent.

6      The *function* of the "diode" as described in the specification is to allow current to flow in

7  one direction and restrict current from flowing in the reverse direction during the charging mode.

8  ('936 patent, 5:9-16, 19-35.)  The claim language itself (as well as Figures 5C and 5D) confirms

9  that the diode operates during the *charging mode* (Claim 1:  "charging path includes the inductor

10  and the diode"), not during the discharge mode.  The specification describes that the *way* to

11  perform these functions is by forward biasing diode 514 to allow current to flow in one direction,

12  and reverse biasing diode 514 to block current in the reverse direction.  (*Id.*)  The *results* of the

13  identified functions are to allow current to supercharge capacitor 516 when diode 514 is forward

14  biased and to hold that supercharge on capacitor 516 when diode 514 is reversed biased.  (*Id.*; *see*

15  *also id.* at 18:28-43, 20:35-49.)

16      Dr. Wolfe ignores most of this.  He identifies only one "primary" function of the claimed

17  "diode":  "to allow electrical current to flow through from the voltage source, via the inductor, to

18  the capacitor during a charge cycle."[1]  (Wolfe Rpt. ¶ 80.)  But he ignores the reverse biased state

19  of the "diode" described in the specification, and he disregards the way and result of the diode's

20  operation.  Dr. Wolfe does not offer a theory of infringement in view of the function, way, and

21  result described in the specification:

22      • *Function*:  Dr. Wolfe does not opine that the Fuji resistor performs the function of

23          restricting current from flowing in the reverse direction during the charging

24          mode, which is the stated function of the "diode" in the specification.

25  _____

26      [1] If this were the only "primary" function of the diode, it would vitiate the "diode" from
    the claims, because Dr. Wolfe admitted that even a wire in place of the "diode" would meet the
    function of allowing "electrical current to flow" to the capacitor.  (Yang Ex. 5, Wolfe Dep. at
27  72:17-73:8.)  *See Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F. 3d 1334, 1342 (Fed. Cir.
    2016) ("an infringement theory [under doctrine of equivalents] fails if it renders a claim limitation
28  inconsequential or ineffective").

- *Way*:  Dr. Wolfe does not opine that the resistor in Fuji blocks reverse current during the charging mode by way of becoming reversed biased.  He admitted that when reverse biasing comes into play, "I agree that the reverse-bias property may be *a meaningful difference between a diode and a resistor* in some circumstances."  (Wolfe Rpt. ¶ 79 (emphasis added).)

- *Result*:  Dr. Wolfe does not argue that the Fuji resistor facilitates the capacitor in the Fuji circuit's becoming supercharged, which is the stated result of the "diode" in the '936 patent circuit.  Dr. Wolfe argues only that the Fuji resistor causes current to flow into the capacitor.  (*Id.* ¶ 84.)

Instead of focusing on the function, way, and result of the "diode" disclosed in the patent, Dr. Wolfe concocts purported "functions" of the diode during the *discharge* operation that are nowhere disclosed in the specification.  Dr. Wolfe identifies a *function* of the "diode" that it "resists any current flow from the capacitor towards the inductor during a discharge cycle" (Wolfe Rpt. ¶ 81), by the *way* of its "effective resistance" (*id*. ¶ 91), with the *result* of ensuring that current flows out of the laser diode when the capacitor discharges (*id*. ¶ 94).

Dr. Wolfe's identified discharge functions of the "diode" are completely unsupported.  The claim language itself and Figures 5C and 5D make clear that the "diode" is part of the charging path, not the discharge path.  Dr. Wolfe admits that "[t]he claimed diode *does not play a direct role* in the claimed discharge operation."  (Yang Ex. 3, Wolfe Rpt. ¶ 81 (emphasis added).)  Dr. Wolfe also admitted that the specification does not disclose any "effective resistance" of a diode that underpins his function-way-result analysis for the discharge operation.  (Wolfe Dep. 99:11-19 ("the specific value of the resistance *is not taught as something that's interesting to the operation of this device*") (emphasis added).)

Dr. Wolfe's faulty DOE theory is also defeated by his own proposed construction of the term "diode," which reinforces that the claimed component allows current to flow forward while restricting its flow in reverse.  Dr. Wolfe offered the following construction of "diode":  "a two-terminal electronic device that will conduct electricity much more easily in one direction than in the other."  (Dkt. 1116-1 at 20-21.)  By acknowledging that the flow of electricity through the

1  diode is different depending on the direction of current, Dr. Wolfe's construction incorporates the

2  reverse biasing characteristic of the claimed "diode" as set forth in the specification.  As noted

3  above, Dr. Wolfe conceded that reverse biasing to restrict current is not a characteristic of a

4  resistor.  (Wolfe Rpt. ¶ 79.)

5       Dr. Wolfe's application of the function-way-result analysis of the claimed "diode" is

6  defective as a matter of law because he ignores the teaching of the specification.  *AquaTex*, 479

7  F.3d at 1326 (identification of "function" must focus on "an examination of the claim and the

8  explanation of it found in the written description of the patent").  Because the Fuji resistor has a

9  different function, performed in a different way, and yields a different result than the claimed

10  "diode" as described in the '936 patent specification, the resistor and "diode" cannot be

11  equivalent as a matter of law.

12            **2.**       **DOE does not apply to the '936 patent's simple circuit**

13       Waymo has provided no argument supporting why the DOE should even apply to a well-

14  known component like a diode in the simple circuit of the '936 patent.  The doctrine of

15  equivalents is based on the premise that claim language cannot always precisely capture the

16  contours of an invention.  The doctrine prevents a party from copying the claimed invention of

17  another and making trivial modifications to avoid infringement:

18  > The language in the patent claims may not capture every nuance of
19  > the invention or describe with complete precision the range of its
> novelty.  If patents were always interpreted by their literal terms,
20  > their value would be greatly diminished.  Unimportant and
> insubstantial substitutes for certain elements could defeat the patent,
21  > and its value to inventors could be destroyed by simple acts of
> copying.

22  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 US 722, 731 (2002).

23       The claims of the '936 patent, however, do not involve "nuances" that cannot be described

24  with "complete precision."  (*Id.*)  Rather, the claims describe a circuit with six well-known circuit

25  elements: claim 1 includes a voltage source, inductor, diode, transistor, light-emitting element,

26  and capacitor in a specific configuration.  ('936 patent, 28:5-33.)  These are simple, specific claim

27  components and any variation of those components would have been foreseeable at the time of

28  filing.  *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1360 (Fed. Cir. 2005).  Thus,

1   Waymo's attempt to employ the doctrine of equivalents to a straightforward circuit claim is a

2   misapplication and misuse of the doctrine.  *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F. 3d

3   1420, 1425 (Fed. Cir. 1997) ("The claim at issue defines a relatively simple structural

4   device….No subtlety of language or complexity of the technology, nor any subsequent change in

5   the state of the art, such as later-developed technology, obfuscated the significance of this

6   limitation at the time of its incorporation into the claim.").

7            **3.      Waymo has no remedy for any alleged infringement of the '936 Patent**

8            Waymo has no basis for seeking a remedy for any alleged infringement in this case.

9   Waymo's damages expert, Mr. Wagner, did not identify any amount of damages for Uber's

10  alleged infringement of the '936 patent.  (Wagner Rpt. ¶ 370.)  Waymo's initial disclosures do

11  not identify specific testimony upon which it expects to rely to prove that it is entitled to a

12  reasonable royalty.  (*See* Yang Ex. 6, Damages Disclosure.)  Waymo represented that it would

13  supplement its initial disclosures on computation of damages after July 28, 2017, but does not

14  appear to have done so.  (Dkt. 934 at 11:20-22.)

15           A judge may award a zero-amount reasonable royalty on summary judgment "if there is

16  no genuine issue of material fact that zero is the only reasonable royalty."  *Apple Inc. v. Motorola,*

17  *Inc.*, 757 F.3d 1286, 1328 (Fed. Cir. 2014).  Because Waymo has not identified any evidence or

18  expert opinion supporting patent damages, Uber seeks a finding of zero damages for any patent

19  infringement.  *See Devex Corp. v. Gen. Motors Corp.*, 667 F.2d 347, 361 (3d Cir. 1981) ("In the

20  absence of any evidence as to what would constitute a reasonable royalty in a given case, a fact

21  finder would have no means of arriving at a reasonable royalty, and none could be awarded.")

22  *cited by Apple*, 757 F.3d at 1328 (supporting possibility of a zero royalty award).

23           Waymo also has no basis for seeking injunctive relief, █████████████████████

24  ████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████

1    Therefore, because Waymo has

2    not identified any patent damages it seeks, and its claim for injunctive relief is moot, the Court

3    should enter a finding of no remedies for Uber's alleged infringement of the '936 patent.

4    **II.      SUMMARY JUDGMENT SHOULD BE GRANTED ON TS 9**

5        **A.      TS 9 Claims the Publicly Known, General Concept of**

6    TS 9 claims the broad concept of a                        used to

7

8

9

10

11

12

13    (Dkt. 25-7 at 8.)  Waymo does not claim that any part of this alleged trade secret prior to the

14    words                    is secret.  Nor can it:  Waymo's own '922 patent discloses a LiDAR

15    system with a plurality of laser diodes and plurality of PCBs, where each laser emits beams, and

16    further discloses the use of a cylindrical lens to precollimate the emitted light along the fast axis.

17    (Yang Ex. 7, Droz Dep. Ex. 1277, '922 patent at 5:4-7, 5:16-26.)

18        Waymo admits that TS 9 was not disclosed in any files allegedly downloaded by Anthony

19    Levandowski or any other former Waymo employee.  (Yang Ex. 8, Waymo 4th Suppl. Resp. to

20    Uber's 1st Set of Interrogs. at 199-201 (no "[m]isappropriated [f]iles" identified for TS 9).)

21    Waymo's Section 2019.210 Statement identifies its GBr LiDAR design as implementing TS 9's

22    claimed                    (*Id.* at 9.)  Waymo's 30(b)(6) designee Pierre-Yves Droz testified that

23    the lens in question is a

24                    (Yang Ex. 9, 3/31/17 Droz Dep. 69:18-24, 72:21-25.)  Mr. Droz and Waymo

25    engineer Will McCann admitted that the use of FAC lenses to pre-collimate a laser beam is well

26    known and that FAC lenses are publicly sold by vendors.  (Yang Ex. 10, 8/3/17 Droz Dep. 232:9-

27    18, 233:14-21; Ex. 11, McCann Dep. 206:8-209:7, 215:3-219:8; Ex. 12, McCann Dep. Ex. 1078

28    (vendor diagram below); *see also* Ex. 13, UBER00238820 (vendor webpage).)



Mr. Droz also conceded that Waymo's '922 patent disclosed a "cylindrical lens" that "can pre-collimate laser beam 512 along fast axis 508."  (Yang Ex. 10, 8/3/17 Droz Dep. 236:15-238:2; Ex. 7, Droz Ex. 1277 at 15:35-37.)  Public disclosures such as U.S. Patent No. 5,420,722 confirm that the use of FAC lenses in connection with laser diodes is not secret.  As seen below, the '722 Patent discloses ██████████████████████████████████████.  The '722 Patent describes a "cylindrical microlens [that] is mounted directly to a laser diode," "collecting laser light [] and shaping it into the desired degree of collimation."  (Dkt. 298-1, Lebby Sur-Reply Decl. ¶¶ 18-20; Yang Ex. 14, '722 Patent, Abstract, 2:9-11.)

| Waymo | U.S. Patent No. 5,420,722 |
|---|---|

Mr. Droz and Mr. McCann testified that ███████████████████████████████, as claimed in TS 9, ████████████████████████████████:

**McCann:**

**Droz:**

(Yang Ex. 11, McCann Dep. 169:12-25, 172:14-19; Ex. 10, 8/3/17 Droz Dep. 231:24-232:5; *see also* Ex. 11, McCann Dep. 172:20-173:5, 216:25-217:4.)  But both engineers also admitted that moving an optical lens to steer light is a known optical technique:

**McCann:**

Q.  Were you aware of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ so as to steer a beam of light?

A.  Yes.

Q.  In what context were you aware of that?

A.  Well, I mean, I'm not an optical engineer, but, you know, when you move optical lens elements, it – it moves light around. So yes, you can.

Q.  Would you say that's a pretty fundamental known concept?

A.  That moving an optical element around moves light?  Yes. *That's the fundamentals of optics.*

**Droz:**

Q.  So I'm – I'm not talking about any specific implementation, but the concept of, as you put it, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮. . . . That's a fundamental concept, right, of optics?

A.  So, I mean, moving a lens in front of something in optical, like, a focal plane, and that's during – you know, is – is not fundamental, but *it's something that's known in optics.*

(Yang Ex. 11, McCann Dep. 217:16-218:1 (emphasis added); Ex. 10, 8/3/17 Droz Dep. 230:8-20 (emphasis added); *see also* Ex. 15, Gassend Dep. 173:18-174:2.)  This comports with other public disclosures, such as U.S. Patent No. 8,559,107, which discloses that ▮▮▮▮▮▮▮▮▮▮▮▮ ▮ when "the laser elements and collimation optic are slightly offset from each other," such that

1   the "output profile may be offset."  (Yang Ex. 16, U.S. Patent No. 8,559,107 at 15:65-66, 16:2,

2   Fig. 3.)          Furthermore, the witness for LiDAR supplier Velodyne testified that ███████

3   ████████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████

6   ██████████████████████████████ (Yang Ex. 17, Nestinger Dep. 60:9-63:4, 67:5-9,

7   67:20-69:19, 70:3-5; Ex. 18, Nestinger Dep. Ex. 1963.)

8   ███████████████████████████████████████████████████████████████████

9   █████████████████████████████████████████████████████████████████████

10  █████████████████████████████████ (Yang Ex. 17, Nestinger Dep. 68:10-17.)

11  ████████████████████████████████████████████████████████████████████████

12  ███████████. (*Id.* at 68:18-69:19.)

13      **B.     TS 9 Is Not A Trade Secret**

14          With the admissions of Waymo's own engineers, there is no genuine dispute that TS 9

15  claims the known general approach of using an █████████████████████████ and is,

16  therefore, not a trade secret.  Waymo's alleged trade secret is not about any purportedly

17  downloaded files, nor a specific FAC lens shape, dimension, or lens equation.[2]  Instead, Waymo

18  claims the broad concept of a ████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████████

20  ████████████" (Dkt. 25-7 at 8.)  But Waymo engineers, including Waymo's Rule 30(b)(6)

21  designee on TS 9, admit that FAC lenses for pre-collimating beams from laser diodes are well

22  known.  They further admit that there is no secret to how the FAC lenses ████████████

23  █████ – the engineer just ███████████████████████████████████████████

24  ████████████████████████ is a general technique "known in optics."  It is undisputed

25  that FAC lenses are publicly sold for pre-collimation of light from laser diodes.  (*See* Yang Ex.

26  _____

27      [2] Waymo's Offer of Proof points to similar ████████████████████████ in GBr3 and Fuji
    and a vendor's comment that its ***price quote*** "aligned" with a previous "program" with Waymo,

28  but Waymo's Section 2019.210 Statement does not claim ████████████████████████
    ██████████████████████████ (*Compare* Offer of Proof, Dkt. 1371-4 at 8 *to* Dkt. 25-7 at 8.)

12, McCann Ex. 1078; Ex. 13, UBER00238820.)  Furthermore, the '107 patent describes a fast-axis collimation optic mounted in front of laser emitters, and Figure 3 illustrates the trajectory of the emitted beams when the collimation optic is offset from the lasers.  (Yang Ex. 16, '107 patent at 11:29-32, 15:53-57, 15:65-66, Fig. 3 (row 2, column D below).)[3]



With multiple public references and admissions from Waymo's witnesses, TS 9 is ripe for summary judgment.

     Waymo attempts to manufacture a dispute by arguing there is no public disclosure of a *LiDAR system* with a plurality of laser diodes on PCBs and



.  (Dkt. 1341-4 at 2-3.)  But, as the Court has warned Waymo, "general engineering principles that are simply part of the intellectual equipment of technical employees" are not protectable trade secrets.  (Dkt. 426 at 17 (citing *Winston Research Corp. v. Minn. Min. & Mfg. Co.*, 350 F.2d 134, 139 (9th Cir. 1965)).)  As admitted by Waymo's engineers,       is Optics 101.  (Yang Ex. 11, McCann Dep. 217:16-218:1; Ex. 10, 8/3/17 Droz Dep. 230:8-20; Ex. 15, Gassend Dep. 173:18-174:2.)  Waymo's own '922 patent discloses a LiDAR system with multiple PCBs that uses FAC lenses.  (*See* Yang Ex. 7, Droz Dep. Ex. 1277 at 15:35-37.)  In fact, at least one public disclosure, the '722 patent, describes mounting a cylindrical lens directly to a laser diode in order to collimate the light with an

 (*See* Yang Ex. 14, '722 patent, Abstract, 2:9-11, Fig. 2.)  Waymo's contention that laser diodes in LiDAR systems are different in some unnamed way

---

    [3] Though the '107 patent describes the altering of a beam by a FAC lens as resulting in an "undesired trajectory," an alleged trade secret is not a trade secret if all its elements are publicly disclosed by a reference, even if the reference "teaches away" from the alleged trade secret.  *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1346 (Fed. Cir. 2012) (affirming JMOL that alleged trade secret was not a trade secret).

1   demands, in effect, that LiDAR engineers who worked at Waymo be barred from

2   ███████████ lest they be found liable for misappropriation.  That Velodyne has been

3   using ███████████████████████████████████

4   ████████████████████████████████████████

5   ███  Waymo should not be allowed to claim this general approach, which is dictated by optics

6   principles, as a trade secret.

7       Waymo's Opposition to Uber's Precis and its Offer of Proof further confirms that its

8   broad concept of ██████████████████ cannot be a trade secret.  Having previously

9   admitted that TS 9 is not in any of the allegedly downloaded files, Waymo focuses its allegations

10  on testimony by former Waymo engineers that knowledge of FAC lenses was "in my head" and

11  affected by their "previous experience."  (Dkt. 1341-4 at 3; Dkt. 1371-4 at 8-9.)  But by

12  advancing such a broadly claimed trade secret, Waymo has overreached to cover general

13  techniques that are in these engineers' experience.  A general approach "dictated by well known

14  principles of physics . . . .  [is] not 'secret,' for it consist[s] essentially of general engineering

15  principles in the public domain and part of the intellectual equipment of technical employees."

16  *Winston Research Corp.*, 350 F.2d at 139.  Accordingly, summary judgment should be granted

17  that TS 9 is not a trade secret.

18                              **CONCLUSION**

19      For the foregoing reasons, the Court should grant Defendants' Motion for Summary

20  Judgment.

21

22

23

24

25

26

27

28

**OTTO TRUCKING'S MOTION FOR SUMMARY JUDGMENT**

## I.    DEFENDANT OTTO TRUCKING CANNOT INFRINGE THE '936 PATENT AND HAS NOT MISAPPROPRIATED ANY WAYMO TRADE SECRET

Discovery is closed and Waymo has served its expert reports.  The undisputed evidence shows Waymo has no legal basis to keep Otto Trucking in this case.  Dr. Wolfe and Dr. Hesselink, Waymo's experts, remain solely focused on Uber's Spider and Fuji LiDAR systems. The undisputed facts show that Otto Trucking has never been involved in the development of, and has never used, either the Spider or Fuji system.  Because Otto Trucking has never used or had access to the accused products, it is not possible, as a matter of law, for Otto Trucking to infringe the '936 patent or to have misappropriated any Waymo trade secret.  Accordingly, Otto Trucking is entitled to a summary judgment that it does not infringe the '936 patent and that it has not misappropriated any Waymo trade secret.

Waymo's claims against Otto Trucking were flawed from the beginning when it claimed that Uber had acquired Otto Trucking.  Even when Waymo learned that Otto Trucking was a separate company from Uber, Waymo pressed its baseless claims against Otto Trucking.  But with discovery now complete, Waymo has no evidence of patent infringement or trade secret misappropriation against Otto Trucking.  As a matter of law, it is time for Waymo's sideshow against Otto Trucking to finally come to an end.

### A.    Background

Waymo's original claims against Otto Trucking were based solely on Waymo's faulty allegation that Defendant Uber had acquired Otto Trucking.  *See* Dkt. No. 23, ¶¶ 7, 16.  Waymo's First Amended Complaint ("FAC") collectively defined Uber, Ottomotto and Otto Trucking as "Defendants" and did not include a single direct allegation against Otto Trucking.  Although Waymo learned early in the litigation that Otto Trucking had not been acquired by Uber (*see* Dkt. Nos. 265 at 1:13-14; 283 at 5:15-6:7), Waymo, and its experts, continue to this day to simply lump Otto Trucking in with Uber and Ottomotto in order to keep Otto Trucking in this case.

Otto Trucking is a limited liability company that has █████████████████████ ████████████████.  *See* Declaration of Shane Brun in Support Otto Trucking's

Motion ("Brun Decl."), Ex. 1 at 3:13-15, 5:13-15.  Otto Trucking was formed on February 1, 2016.  Brun Decl. Ex. 2 at 6:19-22.  Otto Trucking has two Managing Members, Lior Ron and Anthony Levandowski.  Brun Decl., Ex. 1 at 3:13-15, 5:13-15.   Neither Uber nor Ottomotto is a member of Otto Trucking, and neither has any ownership interest in Otto Trucking.  *Id.*

As acknowledged by Waymo's own expert, Michael J. Wagner, Otto Trucking is simply

As explained by Lior Ron,

stated that "Otto Trucking is largely just an LLC" and

Brun Decl., 4 Ex. 3 (Excerpt from Wagner Report) at 8.  Otto Trucking has never had any involvement with the Spider or Fuji LiDAR systems.

Brun Decl., Ex. 1 at 3:26-4:1; Declaration of Brent Schwarz in Support of Otto Trucking's Motion  ("Schwarz Decl.") at ¶ 2 .

Schwarz Decl. at ¶ 4.   Neither the Spider nor Fuji LiDAR system has ever been installed or used in any way on any of the Leased Trucks.  Schwarz Decl. at 6; Brun Decl., Ex. 1 at 4:11-14.

Otto Transport LLC, a wholly owned subsidiary of Otto Trucking,

(the "Otto Transport Trucks");

. *Id.* at 4:5-6; Schwarz Decl. at ¶ 3.  The Otto Transport Trucks Brun Decl., Ex. 1 at 4:9.

. *Id.* at 4:9-11; Schwarz Decl. at ¶¶  4-5.

. *Id.* at ¶ 5.  Neither the Spider nor Fuji LiDAR system has ever been

installed or used in any way on any of the Otto Transport Trucks.  Brun Decl. Ex. 1 at 4:11-14;

Schwarz Decl. at ¶ 6.  In fact, Otto Trucking has never made, used, offered for sale, sold, or

imported into the U.S. either the Spider or Fuji LiDAR system.  Schwarz Decl., ¶ 7.  Waymo

cannot dispute these facts.

### B.       Otto Trucking Cannot Infringe Waymo's '936 Patent

In its Infringement Contentions, Waymo accused only Uber's Fuji LiDAR system of

infringing the '936 Patent.  Brun Decl., Ex. 4(Plaintiff's Disclosure of Asserted Claims and

Infringement Contentions).  Likewise, Dr. Wolfe's report identifies only the Fuji LiDAR system

as allegedly infringing the '936 patent.  Brun Decl., Ex. 5.  It is undisputed, however, that Otto

Trucking has never made, used, offered for sale, sold, or imported into the U.S. the Fuji LiDAR

System, and thus cannot directly infringe the '936 patent.  *See* 35 U.S.C. § 271[4]; *see also*

*AquaWood, LLC v. Worldslide, LLC et al.*, No. CV 11-5611-JFW (Ex), slip op. at 14-15 (C.D.

Cal. October 31, 2012) (granting summary judgment of noninfringement because "it is

undisputed that AquaWood has never manufactured, imported, used, offered to sell, or sold any

of the fifteen accused . . . products . . . .)  Indeed, Dr. Wolfe offers no opinion or finding that Otto

Trucking has made, used, offered for sale, sold, or imported the Fuji LiDAR System, or that Otto

Trucking otherwise somehow infringes the '936 patent.  Waymo has not produced any other facts

to show that Otto Trucking used, made, sold, offered for sale, or imported the Fuji LiDAR

system.  Otto Trucking is thus entitled to a judgment as a matter of law that it does not infringe

the '936 patent.  *See* 35 U.S.C. § 271; F.R.C.P. 56(a); *AquaWood*, Case No. CV 11-5611-JFW

(Ex) at 14.

### C.       Otto Trucking Has Not Misappropriated Any Waymo Trade Secret

To prove its trade secret claims against Otto Trucking, Waymo must, among other things,

show that a Waymo trade secret was disclosed to Otto Trucking under circumstances giving rise

to an obligation not to use or disclose the secret to the detriment of Waymo, and that Otto

Trucking either used the trade secret or disclosed it to a third party.  *See, e.g., Ajaxo Inc. v.*

---

[4] Waymo does not allege that Otto Trucking is indirectly infringing the '936 patent.

*E*Trade Group Inc*. 135 Cal.App.4th 21, 66 (2005); CACI No. 4401.  Like Waymo's patent

claim, Waymo's misappropriation claim is based solely on Ottomotto's and Uber's development

and use of the Spider and Fuji LiDAR systems.  Specifically, Waymo discovery responses

detailing the alleged misuse of its trade secrets point only to Ottomotto's and Uber's development

and use of the Spider and Fuji LiDAR Systems.  *See* Brun Decl., Ex. 6 at 143-147.[5]  Likewise, the

only alleged misuse of Waymo's trade secrets identified by Dr. Hesselink are in connection with

Ottomotto's and Uber's development and use of the Spider and Fuji LiDAR systems.  Brun Decl.,

Ex. 7 at 4.  These allegations, even when taken as true, cannot support a claim against Otto

Trucking.

Like Waymo's patent claim, the undisputed facts are that Otto Trucking was not involved

in the development of, and has never used, either the Spider or Fuji LiDAR system.  Dr.

Hesselink offers no opinion or finding that ***Otto Trucking*** (not Uber or Ottomotto) has used either

the Spider or Fuji LiDAR system or that ***Otto Trucking*** (not Uber or Ottomotto) otherwise

somehow obtained or made use of any Waymo alleged trade secret.  After scorching the earth in

discovery, Waymo has adduced no evidence that any of its alleged trade secrets have been

disclosed to Otto Trucking, or that Otto Trucking has acquired, used or disclosed to a third party

any of those alleged trade secrets.  For at least the above reasons, Otto Trucking is entitled to

summary judgment in its favor on Waymo's trade secret misappropriation claim. *Beaulieu Group,*

*LLC v. Bates*, 2016 WL 7626471 (C.D. Cal. Oct. 18 2016) (granting summary judgment for

Defendant former employee because "Plaintiff has presented *no* evidence that Defendant *ever*

*used these secrets.*"); *see also Ajaxo*, 135 Cal. App. at 66; CACI No. 4401; Fed. R. Civ. P. 56(a).

**D.**     **Waymo's Alternative Theories Against Otto Trucking Will Also Fail**

Having conceded that it has no claim of infringement or misappropriation against Otto

Trucking by its experts' failure to present opinions on the matter, Waymo has suggested that it

may pursue more exotic theories of liability to keep Otto Trucking in the case.  For example, in

opposing Otto Trucking's earlier précis requesting permission to file a motion for summary

[5] Waymo does not assert any use of Trade Secret Nos. 25 or 111 by Otto Trucking in its
Interrogatory Responses.

1    judgment, Waymo argued that Otto Trucking is vicariously liable for, and has ratified, the alleged

2    trade secret misappropriation of Mr. Levandowski.  (Dkt. No. 752).  These arguments do not

3    survive even minimum scrutiny.

4            As established above, Otto Trucking is simply a holding company that never accepted, or

5    retained any benefit from, Waymo's allegedly stolen trade secrets, and thus cannot be found to

6    have ratified Mr. Levandowski's alleged taking of those trade secrets.  Cal. Civ. Code § 2310

7    (West 2017); CACI No. 3710.  Waymo's vicarious liability argument would similarly fail.

8    Vicarious liability may attach only when the alleged wrongful conduct is within the authority of

9    the agent/employee.  *See* CACI No. 3700, 3701; *see also NetApp v. Nimble*, 41 F.Supp.3d 816,

10   835 (N.D. Cal. 2014).  Here, Mr. Levandowski's alleged taking of Waymo's trade secrets

11   occurred before Otto Trucking even existed, and thus such actions plainly could not be within Mr.

12   Levandowski's authority as a Managing Member of Otto Trucking. *See, e.g., He Nam You v.*

13   *Japan*, 150 F.Supp.3d 1140, 1150 (N.D. Cal. 2015) (refusing to hold corporate defendants

14   vicariously liable in a reverse corporate veil piercing and noting that none of the moving

15   defendants existed during the time period when the alleged misconduct occurred.)

16           Waymo has also advanced the theory that Otto Trucking is jointly and severally liable for

17   Uber and Ottomotto's alleged patent infringement and trade secret misappropriation.  But because

18   Otto Trucking had no involvement in the alleged infringement or misappropriation, Otto Trucking

19   cannot be considered a joint tortfeasor in this case, and thus cannot be jointly and severally liable

20   for Uber and Ottomotto's alleged torts.  *See* Restatement (Third) of Torts: Apportionment Liab. §

21   12,  (2000); *JW Pharm. Corp. v. Michael Kahn & Prism Pharma Co.*, No. CV1201006JGBRZX,

22   2013 WL 12125751, at *6 (C.D. Cal. Mar. 11, 2013)

23           It remains to be seen exactly how Waymo presents these alternative theories.  Otto

24   Trucking will respond accordingly in its reply in support of this motion.  In the meantime, for the

25   reasons stated above, the Court should grant Otto Trucking's motion for summary judgment that

26   it does not infringe the '936 patent and that it has not misappropriated any Waymo trade secret.

27

28

1   Dated: August 31, 2017

2                                            MORRISON & FOERSTER LLP

3                                            By:    /s/ Michael A. Jacobs
                                                    MICHAEL A. JACOBS

4                                            Attorneys for Defendants UBER TECHNOLOGIES,
                                             INC. and OTTOMOTTO LLC

5

6   Dated: August 31, 2017                   GOODWIN PROCTER LLP

7

8                                            By:    /s/ Neel Chatterjee
                                                    NEEL CHATTERJEE

9                                            Attorneys for Defendant OTTO TRUCKING LLC

10

11

12

13

14                     **ATTESTATION OF E-FILED SIGNATURE**

15          I, Michael A. Jacobs, am the ECF User whose ID and password are being used to file

16   Defendants' Motion for Summary Judgment.  In compliance with General Order 45, X.B., I

17   hereby attest that Neel Chatterjee has concurred in this filing.

18   Dated:  August 31, 2017                    /s/ Michael A. Jacobs
                                                MICHAEL A. JACOBS

19

20

21

22

23

24

25

26

27

28