**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94101 | TEL (415) 875-6600

September 7, 2017

Magistrate Judge Jacqueline Scott Corley

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal., Case 3:17-cv-00939-WHA
       Uber's Motion to Compel Regarding RFAs and Interrogatories

Dear Judge Corley:

Please find below Plaintiff Waymo LLC's opposition to Uber's motion to compel further RFA responses, interrogatory responses, and production of a privileged document (Dkt. 1435).

Sincerely,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

Plaintiff Waymo LLC ("Waymo") respectfully requests that the Court deny Uber's August 31 motion to compel further responses to RFA 40, Interrogatory No. 29, and Interrogatory Nos. 20 and 24, and seeking production of a privileged document. With respect to each, Waymo provided or produced all that it is required to provide, and Uber is not entitled to more.

**Request for Admission No. 40**.  This RFA asks Waymo to admit that "after Anthony Levandowski signed his employment agreement with Uber in August 2016 (UBER00017083), he did not download any files from Waymo or Google."  Under Federal Rule of Civil Procedure 36, in responding to an RFA, Waymo "may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4).  Waymo's response to RFA No. 40 complies with Rule 36.  Waymo responded, subject to its objections: "Waymo lacks sufficient knowledge to either admit or deny, and on that basis: denied." (Pritt Dec., Ex. 4.)  This is a sufficient response to Uber's RFA. Waymo is not aware of any evidence that Levandowski downloaded files from Waymo or Google after Levandowski became an Uber employee, but that does not mean that Waymo knows that he did not, and Uber has not shown otherwise.  Uber cannot compel Waymo to provide an admission based upon information that Waymo does not have.

Uber's various arguments to the contrary are meritless.  Contrary to Uber's arguments, Waymo's lack of knowledge does not suggest its security measures are anything but robust.  Uber's RFA does not ask what Uber seems to think it asks.  Uber did not ask Waymo to admit that Waymo "lacks evidence . . . that Levandowski downloaded any Waymo files after he joined Uber;" Uber did not ask Waymo to admit that Waymo does not have "grounds for suspicion that Levandowski downloaded any Waymo files after he joined Uber;" and Uber did not ask Waymo to admit that "it lacks the ability to prevent former employees from accessing confidential Waymo information from Waymo's computer networks." (Dkt. 1434-4, at 2.)  Thus, Waymo is not obligated to answer those questions in its response; Uber cannot compel Waymo to make those admissions; and it is improper for Uber to ask the Court to deem those statements admitted.

Uber also argues that the response is not credible in light of the investigation Waymo conducted and relies upon in this case.  But, Waymo's forensic investigation consisted of analyzing Levandowski's conduct *while he was a Google employee*.  Waymo did not conduct a forensic investigation into whether Levandowski downloaded materials after he left Google, and after he became an Uber employee.  Nor has Waymo ever claimed that it did, or that it believes Levandowski continued to download materials after he was an Uber employee.  Waymo is not obligated to conduct such a forensic analysis to answer an RFA, and Uber's cited caselaw does not say otherwise.  Uber further calls Waymo's response "astonishing" because Waymo claims to have conducted a valid forensic investigation and to have robust security measures.  (Dkt. 1434-4, at 2.)  But again, Waymo's forensic analysis focused on Levandowski's access while he was a Google employee.  That investigation was fulsome and complete.  Uber's motion as to RFA 40 should be denied.

**Interrogatory No. 29.**  This Interrogatory asks Waymo to explain the basis for its denial of any of Uber's RFAs.  Waymo responded to this Interrogatory and provided the basis for its denial of one of Uber's RFAs, but did not respond further because the Interrogatory is compound.  It is

1

well settled that an interrogatory that asks about multiple RFAs counts as multiple interrogatories. *See* N.D. Cal. Local Rule 33-2; N.D. Cal. Local Rule 36-2; *Byard v. City and County of San Francisco*, 2017 WL 988497, *3 (N.D. Cal. Mar. 15, 2017) (finding that interrogatory asking for the basis of each admitted RFA response contained separately countable subparts); *Chapman v. California Dept. of Educ.*, 2002 WL 32854376, *2 (N.D. Cal. Feb. 6, 2002) (citing the Rutter Guide, "stating that an interrogatory asking for the basis of a denial of any requests for admission is treated as many interrogatories as there are requests for admission")). Uber does not dispute this authority or offer any authority to the contrary. Uber and Ottomotto already exceeded the number of interrogatories permitted, having served 50 interrogatories. (Dkt. 1173.) This Court rejected that attempt, but nevertheless allowed Uber/Ottomotto to ask an additional 10 interrogatories. (*Id.*) By including Interrogatory No. 29 in that group of 10, Uber effectively asked Waymo to respond to 15 additional interrogatories. Uber should not be permitted to make this end-run around the Court's prior Order.

Uber contends that Waymo's position is not reasonable given the case schedule, citing to this Court's prior order. (Dkt. 1434-4, 4.) But this Court already considered the case complexity and schedule when allowing Uber to serve an additional 10 interrogatories. (Dkt. 1173.) Thus, those issues do not warrant going back to the well and allowing Uber five additional interrogatories beyond the 10 additional interrogatories already allowed.

Finally, Uber argues that it offered to drop this issue if Waymo agreed to provide a response to this interrogatory and provide the basis for Waymo's denial of RFA 43, which asks Waymo to admit that "during its on-site inspections at Uber, Waymo found no evidence that Uber has misappropriated Google or Waymo trade secrets." Uber admits that it is asking for Waymo's counsel's interpretation of the on-site inspection. Waymo responded to multiple interrogatories laying out evidence of use of Waymo's trade secrets. (*See e.g.*, Dkt. 1323) (Waymo's responses to Uber's Interrogatory No. 1 asking for evidence of Uber's use of Waymo's trade secrets, which Waymo supplemented again before the close of fact discovery). Waymo also served its opening expert report laying out its expert's opinions on misappropriation of its trade secrets. And, Waymo filed an order of proof for its trade secret misappropriation claim. (Dkt. 1357-3.) Uber cannot dispute that it is on notice of Waymo's theories. Whether Waymo's ample evidence of misappropriation was discovered during the Court-ordered inspections of Uber's facilities, or through other discovery (i.e. documents or deposition testimony) does not matter. Nor does Uber explain why it does. Thus, there is no justification for deviating from this Court's prior ruling limiting Uber to an additional 10 interrogatories and compelling Waymo to respond to Interrogatory No. 29. Uber's motion should be denied as to this interrogatory.

**Interrogatory Nos. 20 and 24.** Waymo's supplemental responses to Interrogatory Nos. 20 and 24 are full and complete. The interrogatories call for some information that is privileged, and Waymo responded by providing non-privileged information. Further, Uber's motion to compel misrepresents what is stated in Waymo's responses.

Interrogatory No. 20 asks for Waymo to "describe any efforts taken by Waymo to prohibit, sequester, or otherwise prevent confidential, proprietary, or trade secret information of any other company or entity from entering Waymo." (Pritt Dec., Ex. 2.) Waymo's response describes

2

those efforts in detail. When new employees join Waymo, they receive a package of documents that includes reminders regarding confidentiality and trade secrets, and not bringing in trade secrets from a previous employer. (*Id.*) New employees are required to sign an employment agreement that includes a provision stating that they agree to not improperly use or disclose any proprietary information or trade secrets from any former or concurrent employer. (*Id.*) When Waymo interviews and makes offers to candidates who work for competitors, it reiterates the expectation that the candidate does not retain or bring any information from past employers to Waymo. (*Id.*) Waymo employees receive further training on these issues when they first start work, and in ongoing, regular employee trainings thereafter. (*Id.*) Uber's motion ignores all of these disclosed efforts. Waymo's response then states that if Waymo has reason to believe any confidential, proprietary, or trade secret information of another company or entity may have been brought to Waymo, it is Waymo's practice to conduct an investigation, and take prompt steps to remove any such information from Waymo's premises or systems, and take other appropriate actions in consultation with counsel. (*Id.*) Waymo then discloses instances in which that issue arose, and provides non-privileged details about the investigations of those instances. Waymo's response is full and complete.

Waymo's response to Interrogatory No. 24 is similar because that interrogatory asks for a description "of any instance and the circumstances surrounding any such instance, where confidential, proprietary, or trade secret information owned by another company or entity has entered Waymo or come into Waymo's possession." Waymo responded by providing non-privileged information regarding the same instances identified in response to Interrogatory No. 20. Again, Waymo's response is full and complete.

Uber's arguments to the contrary are meritless. Uber complains that its interrogatories ask for efforts to prevent other companies' confidential information from getting to Waymo, and disingenuously argues that Waymo's response only identifies after-the-fact investigations. Uber further notes that Waymo did not answer as to investigations in the M&A context. Uber's argument ignores the full scope of Waymo's response to Interrogatory No. 20, which details various steps taken on this issue *in addition to* the referenced investigations. Uber goes so far as to say "Waymo should be ordered to amend its responses to state that neither it nor Alphabet/Google takes any measures . . . when hiring employees to prevent the entrance of another companies' confidential, proprietary or trade secret information" (Dkt. 1434-4, at 3), even though that statement is directly contradicted by the information disclosed in Waymo's interrogatory response. Further, these steps apply for all Waymo employees, thus there is no need to provide a separate response as to employees hired in mergers and acquisitions.

Uber next argues that Waymo's response to Interrogatory No. 20 does not "disclose if Alphabet/Google in any division ever performed forensic due diligence." (Dkt. 1434-4, at 3.) It is unclear if Uber is contending that Waymo is required to disclose whether any division of Alphabet or Google ever conducted a forensic due diligence for any reason. Such a requirement is not consistent with this Court's prior order regarding this interrogatory. The Court's August 19 Order stated: "The response may be limited to Google's driverless car program, except that Waymo shall disclose if Alphabet/Google in any division ever performed forensic due

3

diligence." (Dkt. 1276.) Waymo appropriately interpreted this portion of the Order to mean that Waymo was required to respond as to whether any division at Alphabet or Google performed forensic due diligence with respect to Google's driverless car program as part of its efforts to prevent third party confidential information from entering the company. To interpret this Court's guidance any other way would render this interrogatory grossly overbroad and not proportional to the case.

Uber further argues that the interrogatory is not limited to "investigations." It is unclear why Uber believes Waymo's response is limited to "investigations." The interrogatory is directed at efforts to prevent third party confidential information from entering the company, and Waymo responded to that question.

Uber also asks whether Waymo has conducted any forensic due diligence in connection with its efforts to prevent third party confidential information from entering the company. As Waymo explained in its interrogatory response, if it has reason to believe any confidential, proprietary, or trade secret information of another company or entity may have been brought to Waymo, it is Waymo's practice to conduct an investigation, and take prompt steps to remove any such information from Waymo's premises or systems, and take other appropriate actions in consultation with counsel. (Pritt Dec., Ex. 2.) To the extent a forensic analysis was directed by counsel, it is privileged. There has not otherwise been any non-privileged forensic due diligence conducted in connection with the subject matter sought in Interrogatory No. 20. Thus, Waymo provided the non-privileged information responsive to the interrogatory. Further, Uber argues that Waymo should be required to answer whether Alphabet/Google has ever performed forensic due diligence in the context of M&A transactions. But, even if that's the information that Uber wants, it is not responsive to Interrogatory No. 20. Again, Interrogatory No. 20 asks about efforts taken to prevent third party confidential information from entering the company, not for all steps taken in a merger and acquisition. Uber served a different interrogatory (No. 18) directed at steps taken in mergers and acquisitions, which Waymo responded to, and to which Waymo will provide a supplemental response in compliance with the Court's orders.

Finally, Uber takes issue with Waymo's privilege claims in these interrogatory responses. Waymo's responses to these two interrogatories lay out the basis for the privilege; the investigations at issue are conducted in consultation with counsel. They are conducted for the purpose of providing legal advice. Contrary to Uber's argument, Waymo is not selectively disclosing privileged information; this is not a sword/shield situation. In other words, Waymo is not affirmatively attempting to rely on its investigations into whether third party confidential entered Waymo, and then withholding information about those investigations. Waymo merely disclosed non-privileged information in response to an interrogatory served by Uber. Thus, there is no basis for requiring Waymo to disclose privileged information about privileged investigations. Uber's motion as to Interrogatory Nos. 20 and 24 should be denied.

**Privileged Document**. Waymo redacted for privilege a portion of an email chain written by an attorney giving advice to others on the chain. (Pritt Dec., Ex. 7.) The email chain, distributed to a large Google mailing list, begins with a copy/paste of Waymo's public blog entry about its

lawsuit against Uber.  Two people respond with comments about the lawsuit, and then the attorney weighs in.  After the attorney's advice, no one makes any more comments.

Uber's arguments seeking to compel Waymo to lift the redaction on the attorney legal advice are not persuasive.  Uber does not argue waiver, but instead argues that the attorney's advice is not privileged in the first instance because it was sent to an email distribution list.  In support, Uber cites two cases in which the Courts lacked adequate information to rule on privilege.  *In re Universal Se*rv. *Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 678 (D. Kan. 2005);  *Muro v. Target Corp.*, 250 F.R.D. 350, 364 (N.D. Ill. 2007), aff'd, 580 F.3d 485 (7th Cir. 2009).  That is not the case here.  Here, Waymo disclosed to Uber that all recipients are full-time employees of Waymo/Google/Alphabet (Pritt Dec., Ex. 8 at 3), thus "within the sphere of corporate privilege." *Muro*, 250 F.R.D at 364.  As the document shows, the attorney directed his advice specifically to all members of the distribution list.  Such advice is privileged.

01980-00104/9532305.4