```
                UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

WAYMO LLC,                      )
                                )
          Plaintiff,            )
                                )
   VS.                          )      NO. CV 17-00939-WHA
                                )
UBER TECHNOLOGIES, INC.,        )
ET AL.,                         )
                                )
          Defendants.           )
                                )
```

San Francisco, California
Wednesday, September 6, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
           QUINN EMANUEL URQUHART & SULLIVAN LLP
           50 California Street - 22nd Floor
           San Francisco, CA  94111
    **BY:  JORDAN R. JAFFE, ESQUIRE**
        **CHARLES K. VERHOEVEN, ESQUIRE**
        **FELIPE CORREDOR, ESQUIRE**

For Defendant Uber Technologies, Inc.:
           MORRISON & FOERSTER LLP
           425 Market Street
           San Francisco, CA  94105
    **BY:  MICHAEL A. JACOBS, ESQUIRE**
        **ESTHER K. CHANG, ESQUIRE**

(Appearances continued on the next page)

Reported By:     Pamela A. Batalo, CSR No. 3593, RMR, FCRR
                   Official Reporter

```
APPEARANCES CONTINUED:


For Defendant Uber Technologies, Inc.:
                    MORRISON & FOERSTER LLP
                    2000 Pennsylvania Avenue, N.W.
                    Suite 6000
                    Washington, DC  20006
               BY:  DANIEL P. MUINO, ESQUIRE

                    SUSMAN GODFREY LLP
                    1000 Louisiana Street - Suite 5100
                    Houston, TX  77002
               BY:  JOSEPH S. GRINSTEIN, ESQUIRE


For Defendant Otto Trucking LLC:
                    GOODWIN PROCTER LLP
                    Three Embarcadero Center
                    San Francisco, CA  94111
               BY:  BRETT SCHUMAN, ESQUIRE
```

1
2  **Wednesday - September 6, 2017**                          **8:00 a.m.**
3                        **P R O C E E D I N G S**
4                              ---oOo---
5      **THE COURT:** Good morning, everyone.
6      **THE CLERK:** Calling CV 17-939, Waymo LLC vs. Uber
7  Technoogies, Inc., et al.
8      Will counsel please step forward and state your
9  appearances for the record.
10     **MR. JAFFE:** Good morning, Your Honor.  Jordan Jaffe of
11 Quinn Emanuel on behalf of the plaintiff Waymo.  With me today
12 is Charles Verhoeven, Felipe Corredor, and we have a trial tech
13 to help us present things, Mr. Ryan Fisher.
14     **THE COURT:** Great.  Welcome to all of you.
15     **MR. JACOBS:** Good morning, Your Honor.  Michael
16 Jacobs, Morrison & Foerster, for defendants Uber and Otto.
17 With me is Dan Muino, Esther Chang, and Joe Grinstein from
18 Susman Godfrey.
19     **MR. SCHUMAN:** Brett Schuman for defendant Otto
20 Trucking.
21     Real quickly, Your Honor, if it's okay, there is a
22 settlement conference with Magistrate Judge Laporte, and given
23 Otto Trucking's unique position here, I'm here today, but if
24 it's okay, if the hearing goes past 9:30, I'm going to head
25 over to the settlement conference.

1       **THE COURT:**  Fine.  That's okay.
2           All right.  So you lawyers -- I'm going to rely on you to
3   tell me when we reach the point that anything that we need to
4   go -- clear the courtroom, but so far we're not there.
5           I have a case management concern, but let me begin by
6   asking, do any of you have any hints as to when the Federal
7   Circuit is going to make its decision?
8           **MR. JACOBS:**  No smoke signals, Your Honor.
9           **MR. JAFFE:**  No, Your Honor.
10          **THE COURT:**  So my plan is to forge ahead and go to
11  trial unless a motion -- a formal motion for continuance is
12  made.  So the burden is on you.
13          If you feel -- let's just take it from the point of view
14  of Uber for the moment.  If Uber wants a continuance of the
15  trial on account of the Federal Circuit not having ruled on the
16  arbitration clause thing, then you've got to make a motion, and
17  it's got to be done before -- I think the day that -- the last
18  day that it could be heard would be October 3rd.  And you would
19  need to make that on an expedited basis, filing that on
20  September 29, and it would be briefed over the weekend.
21          Same thing for Waymo.  If you want to use that discovery
22  that you're seeking regarding the due diligence report, you
23  have to make the motion in time for us to postpone the trial.
24  And I'm not saying I would grant it, but of course I would
25  seriously consider a continuance motion.

1        Now, if we go trial -- I want to be very clear.  If Uber
2   does not make a motion to continue, you will have consented, in
3   my view, to trial by jury as opposed to arbitration.
4        And the same thing on Waymo's part.  If you don't make the
5   motion, you will have -- this is assuming there's no timely
6   decision.  If you don't make the motion and there's no timely
7   decision by the Federal Circuit, then you will have consented
8   to trying the case without the discovery you're seeking on that
9   due diligence report.
10       So you take all that -- I'm giving you plenty of notice so
11  you'll be aware of how I feel about it.  And I have no inside
12  gossip either.  I have no way to know when the Federal Circuit
13  will make its decision.  And I'm guessing that they will do
14  that in plenty of time, but I don't know.
15       All right.  Enough on that.  We will now turn to the items
16  at hand.  When we get to the point that there's an issue that
17  concerns trade secrets, I guess I'll have to clear the
18  courtroom.
19       I recognize that young lady back there.  She works for
20  somebody that's a newspaper; right?
21           **UNIDENTIFIED SPEAKER:**  Yes.
22           **THE COURT:**  Welcome.  I'm glad you're here, but I have
23  to excuse you at the right moment.
24       How about this guy right here, who is here?
25           **MR. BERGSTROM:**  Your Honor, Aaron Bergstrom.  I'm

1    in-house counsel for Uber.  I'm covered by the Protective
2    Order.
3            **THE COURT:**  Well, if you're on the Protective Order --
4    did he say that?  I couldn't hear him.
5            **MR. JACOBS:**  Yes, Your Honor.  He is one of the two
6    in-house counsel at Uber who is permitted *attorneys' eyes only*
7    access.
8            **THE COURT:**  All right.  Well, then you can stay.
9         So I would like to begin with something that I hope is not
10   a trade secret and that is something I sent out this morning by
11   5:00 a.m.  I'd like to begin with the comparison of the lenses.
12           **MR. JAFFE:**  So we brought some materials today, but
13   the specific kind of architecture of the lens is confidential
14   information.
15        So I have some kind of show-and-tell material here and can
16   talk about the shape and the design, but that's material that
17   Waymo considers confidential.
18           **THE COURT:**  Well, is that something that's -- is
19   that -- it's not one of the trade secrets -- let me ask a more
20   practical -- are they the same lens?  What is the manufacturer?
21   That can't possibly be a trade secret.
22           **MR. JAFFE:**  Well, whether it's a trade secret is --
23   and whether Waymo considers that confidential, I think the
24   identity of its suppliers Waymo considers confidential --
25           **THE COURT:**  Let me just ask Mr. Jacobs.  He'll give me

1  a straight answer.
2       Are they the same manufacturer or not?
3       **MR. JACOBS:**  Mr. Muino will give you that straight
4  answer.
5       **THE COURT:**  All right.  Give me the straight answer.
6       **MR. MUINO:**  Your Honor, we know our manufacturers.  We
7  can say our manufacturers.
8       **THE COURT:**  You don't know who theirs is?
9       **MR. MUINO:**  We're not sure who their manufacturers
10 are.
11      **THE COURT:**  I asked you to bring the information.  Did
12 you bring the information?
13      **MR. JAFFE:**  Yes, Your Honor.
14      **THE COURT:**  All right.  Before we -- do you contend
15 that this is somehow trade secret for you?
16      **MR. MUINO:**  The identity of the manufacturers,
17 Your Honor?  No.
18      **THE COURT:**  All right. Here's the reason I ask.  The
19 focal -- if you have an ordinary film camera -- camera lens --
20 which I have back in my chambers but I didn't bring out here --
21 it will project an image that is flat with very minor
22 tolerances.  It's not perfectly flat, but it is so flat that
23 the ordinary human eye can't tell much difference, unless the
24 aperture is very wide open.
25      All right.  Now, I want to know, do the lenses in these

1  cases, are they designed to have a parabolic focal surface?
2  Let's take yours.
3           **MR. MUINO:**  Sure.
4           **THE COURT:**  Tell me about the Fuji one first.
5           **MR. MUINO:**  Yes, Your Honor.  Our understanding is the
6  transmit lens will have a curved focal plane which coincides
7  generally with what's also referred to as the Petzval surface.
8      My understanding of the focal plane is that is the focal
9  length away from the center of the lens, and if you project
10 that at a radius or in a surface, you get your focal plane --
11          **THE COURT:**  Have you done a comparison to see if these
12 so-called -- for every lens -- what is the name of that thing?
13 Petzval?
14          **MR. MUINO:**  Petzval surface.
15          **THE COURT:**  It's different for every license.  Have
16 you made a comparison?
17          **MR. MUINO:**  So, Your Honor, we haven't made a direct
18 comparison --
19          **THE COURT:**  Unless it's the same lens, of course.
20 That's why I asked.
21          **MR. MUINO:**  What we know, Your Honor, is this:  The
22 Petzval curvature is determined --
23          **THE COURT:**  You don't know the answer, and you've been
24 in this case all the time and can't give me a comparison
25 between the -- it would be a home run for you if they were

1  different.  Do you understand that?  Because then the diodes by
2  definition are going to be different.
3       **MR. JAFFE:**  Your Honor, I just want to jump in.  I
4  want to respond to Your Honor's question and talk about the
5  similarities and differences, but, again, this is information
6  that Waymo considers confidential.
7       **THE COURT:**  All right.  I want you to know -- and I
8  want to apologize to that nice young lady back there -- that I
9  think this is not a trade secret; that this is basic stuff and
10 this is baloney on your part.  But out of caution, because the
11 Federal Circuit could disagree with me, I'm going to order the
12 young lady back there, with my apologies, that you may please
13 step out of the room so we can have this hearing.  Thank you.
14           (Whereupon, the proceedings were sealed)

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13              (Proceedings adjourned at 11:01 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2
 3                    CERTIFICATE OF REPORTER
 4          I certify that the foregoing is a correct transcript
 5   from the record of proceedings in the above-entitled matter.
 6
 7   DATE:   Wednesday, September 6, 2017
 8
 9   _____
10   Pamela A. Batalo, CSR No. 3593, RMR, FCRR
     U.S. Court Reporter
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```