# EXHIBIT 2

```
                              Pages 1 - 143

                     UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

            BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

WAYMO, LLC,                     )
                                )
          Plaintiff,            )
                                )
   VS.                          )   No. C 17-00939 WHA
                                )
UBER TECHNOLOGIES, INC.,        )
et al.,                         )
                                )
          Defendants.           )
_____)   San Francisco, California
                                    Wednesday, August 16, 2017

         FULL TRANSCRIPT OF PROCEEDINGS, INCLUDING SEALED PORTION

APPEARANCES:

For Plaintiff:
                     QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                     50 California Street
                     22nd Floor
                     San Francisco, California  94111
                BY:  CHARLES K. VERHOEVEN, ESQ.
                     JORDAN R. JAFFE, ESQ.
                     MELISSA J. BAILY, ESQ.
                     JAMES D. JUDAH, ESQ.

For Defendants Uber Technologies, Inc., Ottomotto LLC, and Otto
Trucking LLC:
                     MORRISON & FOERSTER, LLP
                     425 Market Street
                     San Francisco, California  94105
                BY:  ARTURO J. GONZÁLEZ, ESQ.
                     ESTHER KIM CHANG, ESQ.


Reported By:    BELLE BALL, CSR 8785, CRR, RDR
                Official Reporter, U.S. District Court

(Appearances continued, next page)
```

```
APPEARANCES, CONTINUED:

For Defendants Uber and Ottomotto:
                     BOIES SCHILLER FLEXNER LLP
                     1401 New York Avenue NW
                     Washington, D.C.  20005
                BY:  KAREN L. DUNN, ESQ.

                     BOIES SCHILLER FLEXNER LLP
                     435 Tasso Street
                     Suite 205
                     Palo Alto, California  94301
                BY:  MEREDITH R. DEARBORN, ESQ.

For Defendant Otto Trucking LLC:
                     GOODWIN PROCTER LLP
                     135 Commonwealth Drive
                     Menlo Park, California  94025
                BY:  I. NEEL CHATTERJEE, ESQ.

For Non-Party Stroz Friedberg:
                     LATHAM & WATKINS LLP
                     505 Montgomery Street
                     Suite 2000
                     San Francisco, California  94111-6538
                BY:  MELANIE M. BLUNSCHI, ESQ.

Also Present:        NICOLE T. BARTOW, ESQ.
                     Uber Director II, Litigation
                     CHRISTINA SEKI
                     JOHN L. COOPER, SPECIAL MASTER
```

---

PROCEEDINGS                                    3

1   Wednesday, August 16, 2017                     8:00 a.m.
2                     OPEN PROCEEDINGS
3       THE CLERK:  Calling Civil Action 17-939 WHA, it's Waymo LLC
4   versus Uber Technologies Inc., et al.  It's on for motions.
5       Counsel, can you please come forward, state your appearances
6   for the record.
7       MR. VERHOEVEN:  Good morning, Your Honor.  Charles Verhoeven
8   on behalf of Waymo.  And with me are my colleagues James Judah,
9   Jordan Jaffe and Melissa Baily.
10      THE COURT:  Great.  Welcome to you.
11      MR. GONZÁLEZ:  Good morning, Your Honor.  Arturo González
12  from Morrison & Foerster.  Also, Esther Chang and Michelle Yang.
13      THE COURT:  Welcome.
14      MS. DUNN:  Good morning, Your Honor.  Karen Dunn for from
15  Boies Schiller Flexner for Uber and Ottomotto.  And with me is
16  Meredith Dearborn.
17      THE COURT:  Welcome.
18      MR. CHATTERJEE:  Good morning, Your Honor, Neel Chatterjee
19  of the Goodwin Procter law firm for Otto Trucking.  And I'm
20  flying solo.
21      THE COURT:  Thank you.
22      MS. BLUNSCHI:  Good morning, Your Honor.  Melanie Blunschi
23  from Latham & Watkins, on behalf of non-party Stroz Friedberg.
24      THE COURT:  Thank you.
25      MR. COOPER:  Good morning, Your Honor.  John Cooper, special

PROCEEDINGS                                    4

1   master.
2       THE COURT:  Good morning.  Welcome to everybody, again.
3       So, we've got several motions here.  The one that deals with
4   the trade secrets and knocking out all the trade secrets, we'll
5   do that last because I suspect we'll have to close the
6   courtroom.  We have other business we'll take up first.
7       There is a series of orders to show cause.  And then there's
8   a motion to strike damages.  So we will deal with the order to
9   show cause first.
10      Okay.  Let's start.
11      MR. VERHOEVEN:  Good morning, Your Honor.  Charles Verhoeven
12  on behalf of Waymo.
13      There are a number of submissions, Your Honor, that have
14  been made in connection with our motion.  The Court issued a OSC
15  to Morrison & Foerster, to Stroz.
16      I want to deal with all those in one argument, unless the
17  Court wants me to separate those out.
18      THE COURT:  Let's start that way.  Although I do have some
19  specific questions, I can propound those in due course.  Go
20  ahead.
21      MR. VERHOEVEN:  Okay.  So first I want to address Uber and
22  Morrison & Foerster's obligations and our contention that they
23  are in contempt for violating two of the Court's orders.
24      It is undisputed here that -- I'm going to refer to Morrison
25  & Foerster as "MoFo" just for the sake of brevity.

1  **THE COURT:** All right. So the unjust-enrichment theory will
2  be something like this, I guess: Imagine your ordinary -- no,
3  no. Figure out how much money Uber saved by avoiding the
4  experimentation to come to that conclusion.
5     Is that right?
6  **MS. BAILY:** I think it's a little bit more complicated, but
7  you're right to point out the fact that it actually depends a
8  lot on Uber's side of the ledger. Because it can't just be
9  that, you know, Waymo spent all of this money developing these
10 trade secrets. There are a lot of predicates to -- you know, I
11 don't want to step into confidential information.
12    But you can't just look and defendants would cry foul if we
13 just looked at how much it cost for us to develop these trade
14 secrets.
15    Where was Uber in the process? What resources do they have?
16 What investment did they make?
17 **THE COURT:** So let's say that it would have taken somebody a
18 week -- an engineer one week to figure that one out.
19 **MS. BAILY:** So it's more complicated than that, Your Honor.
20 **THE COURT:** Maybe not. Maybe it would be less complicated
21 than that.
22    All right, let's say two weeks. How much money can that
23 possibly be? That's not very much money. That's $30,000.
24 **MS. BAILY:** I'll say that these -- the trade secrets that
25 were elected for trial now, many of them are not susceptible to

1  that kind of analysis.
2  **THE COURT:** Well, what -- tell me how -- give me an example
3  of one where this is going to get you into the stratosphere.
4  **MS. BAILY:** Sure. There is one trade secret that has a
5  variety of specification that could only be and were only
6  arrived at because of the number of miles that Waymo has driven
7  on real roads, and in simulated driving, over many years, based
8  on iterations of hardware.
9     And there is no way that these specifications could have
10 been -- and these specific cases that are involved in these
11 specifications could have been determined in the robust way that
12 is now allowing Waymo to commercialize, based on them, in a safe
13 way, without doing --
14 **THE COURT:** Is this a scenario --
15 **MS. BAILY:** -- all of that work.
16 **THE COURT:** Is this a scenario trade secret with the ways to
17 guard against that scenario? Is that the one?
18 **MS. BAILY:** It sounds like it, Your Honor. I could get you
19 the number of the trade secret.
20 **THE COURT:** And are you going to be able to prove that they
21 used the exact same set of precautions and LiDAR -- LiDAR
22 signals to -- seems unlikely that you are, but maybe, maybe they
23 copied that exactly. Did they?
24 **MS. BAILY:** We have evidence of use, Your Honor.
25 **MR. CHATTERJEE:** (Nods head)

1  **THE COURT:** Of use? So, are you going to be able to show
2  that there was some point in time where that exact set of LiDAR
3  signals was used to sort of jump-start their program? Even if
4  they're not using it now, they used it at one point in their
5  development?
6  **MS. BAILY:** Well, I would say, Your Honor, having that
7  information that resulted from seven years of iterations and
8  driving miles, it's in some ways the crown jewels of the kind of
9  technology that we are talking about.
10    So I would say that having access to that and having -- and
11 evidence of use with respect to that, that's a big damages
12 number.
13 **THE COURT:** All right. So, but I -- maybe we'll hear more
14 about this, in this closed session. But I think I know the
15 trade secret you are talking about.
16    And are you going to be able to show that that document is
17 in the files of Uber? I don't think so.
18 **MS. BAILY:** We have evidence of the use of the information.
19 **THE COURT:** I'm going to just leave it there.
20    Do you know which one she's talking about?
21 **MS. DUNN:** I do know. I --
22 **THE COURT:** Well, all right. Well, that one, if it was in
23 fact used and consulted, that would be some valuable
24 information. I think that's correct. I don't know what the
25 dollar amounts would come to.

1  But on the other hand, I am surprised to hear you think that
2  you're going to be able to prove they used it. But I -- I'm
3  learning as I go. I didn't know about the interrogatory answer
4  either, so maybe you do have that proof.
5  **MS. BAILY:** Your Honor, I would say two additional things,
6  if -- if allowed.
7  **THE COURT:** All right.
8  **MS. BAILY:** Obviously, I mean, this is an attempt to take
9  damages out of the case. Both our damages and punitive damages.
10 And the Ninth Circuit has said that before you can do that, you
11 actually have to show bad faith and willfulness.
12    We have provided, again, information in advance of their
13 depositions, just so they can do the discovery that they need
14 and want to do on damages. There is no willfulness or bad faith
15 in here. We cite to the *R&R* case in our opposition. And they
16 haven't even attempted to say that there is.
17    We're providing all of the information that we have. Again,
18 we're the ones being prejudiced because we don't get the
19 information that they have until yesterday.
20    And I do just want to remind the Court that setting aside
21 the OSC issues, even, the defendants have had opportunity after
22 opportunity after opportunity to fail to provide information, to
23 amend information, on and on and on. Right?
24    So, even Uber's LiDAR log was ordered to be provided on a
25 certain day. They provided about half of what the

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Belle Ball*

/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Friday, August 18, 2017