MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone:    202.237.2727
Facsimile:    202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@SusmanGodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>  Defendant. | Case No.    3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S RESPONSE TO PLAINTIFF WAYMO LLC'S LIST OF DEFENDANTS' ALLEGED DISCOVERY MISCONDUCT**<br><br>Judge:  The Honorable William Alsup<br><br>Trial Date: October 10, 2017 |

Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") object to Plaintiff Waymo LLC's List of Defendants' Discovery Misconduct (Dkt. 1356) ("Waymo's List") as it relates to Uber. Permitting the jury to hear the allegations listed in Waymo's submission would be unfairly prejudicial because those points are inaccurate or misleading.

## I.    Background

Uber has not obstructed discovery concerning the 14,000 files or anything else. Uber has forensically searched millions of files, documents and emails from every LiDAR server and more than 70 employees. Uber allowed Waymo to inspect its entire repository of LiDAR-related design files, source code files, over 380,000 emails and documents, four buildings, and the Uber-issued computers belonging to seven engineers over the course of over 60 hours on twelve separate inspection visits. Uber conducted over 170 interviews, reviewed over 25,000 documents and spent over 700 hours preparing the "LiDAR log" concerning communications with Mr. Levandowski. For its accounting, six attorneys spent approximately 200 hours interviewing 105 individuals.

This was a massive effort that was conducted under an extraordinarily accelerated timeline. At the same time, Uber was also pursuing and responding to massive discovery, preparing for and participating in meet and confer sessions with the Special Master on multiple issues nearly every day (sometimes more than once a day), and engaging in extensive motion practice. When Waymo or Uber identified inadvertent errors or oversights, Uber acted quickly to address them. Waymo likewise had errors or oversights in some of its submissions that had to be corrected. This is to be expected in a case of this gravity on an expedited schedule—one imposed largely at Waymo's own request.

Notably, Waymo has engaged in the type of stonewalling and gamesmanship of which it accuses Uber. This includes, for example, Waymo's selective waiver of privilege over its investigation of Mr. Levandowski's alleged downloading, which Judge Corley has now rejected. Discovery has revealed that the Google employee who attested to Mr. Levandowski's downloading did not reach his conclusion independently. (Dkt. 1161-3 at 1.) Rather, after he had concluded that Mr. Levandowski did not improperly download any files, he was instructed by

DEFS. UBER TECHS. INC. & OTTOMOTTO LLC'S RESPONSE TO LIST OF DEFS' ALLEGED DISCOVERY MISCONDUCT
CASE NO. 3:17-CV-00939-WHA
sf-3817947

1

litigation counsel to corroborate the attorney's contrary conclusion. (*Id.* at 1-2.) Waymo withheld information about the scope of the investigation, assumptions or facts provided by the attorney, information the employee was told to ignore and the keywords that were used for the forensic search. (*Id.*) Only after it was compelled to do so did Waymo produce critical emails that confirm the 14,000 files are not valuable trade secrets and that downloads of this nature are not so exceptional. (Dkt. 1433-16 at WAYMO-UBER-00084485, "It was considered low-value enough that we had even considered hosting off of Google infrastructure." . . . "He was a high-level manager, and not doing any direct technical contribution at this level. It's not particularly surprising that he might check things out once . . . . It clearly wasn't part of his routine. Doesn't ring the alarm bells for me.") Waymo also failed to produce documents in a timely manner throughout discovery. Waymo produced *one-third* of its production on the last day of discovery, after all of the key witnesses had been deposed. Waymo also failed to include custodian information in thousands of documents, hindering Uber's deposition preparation.

## II. Evidence of Uber's Claimed Discovery Misconduct Should Not Be Admitted

Waymo's List flows from its claim that it should be able to introduce evidence of wide-ranging claimed discovery misconduct by Uber, if Uber seeks to show at trial that Uber searched for and did not find the 14,000 files through the following three pieces of evidence: Waymo's twelve inspections that uncovered no evidence of the files at Uber, Uber's forensic analysis which shows the same thing, and Uber's termination of Levandowski. (*See* 7/26/17 Hr'g Tr. at 64:1-74:9; Dkt. 978 (Uber's Opposition to Waymo's motion *in limine* no. 4; Waymo sought to prevent Uber from telling the jury that the 14,000 files are not at Uber, and Uber's response explained the three pieces of evidence Uber would introduce to show that the files are not at Uber).)

To begin with, permitting the jury to hear the evidence in Waymo's List is contrary to the Court's tentative ruling granting Uber's third motion *in limine*. (*See* Dkt. 855 at 1-2 (Uber's MIL 3, arguing that "Waymo should not be allowed to argue that Uber engaged in supposed discovery misconduct or obstruction"); Dkt. 874 at 3 (tentatively granting Uber's MIL 3, subject to the identification of specific items at trial).) Waymo's list of two dozen wide-ranging items is

DEFS. UBER TECHS. INC. & OTTOMOTTO LLC'S RESPONSE TO LIST OF DEFS' ALLEGED DISCOVERY MISCONDUCT
CASE NO. 3:17-CV-00939-WHA
sf-3817947

2

not the type of discrete inquiry at trial contemplated by the Court's order concerning Uber's MIL 3.

The proposed evidence in Waymo's List also should not be permitted because it is irrelevant and would be unfairly prejudicial. *See* Fed. R. Civ. P. 402, 403. Waymo seeks to introduce evidence of Uber's claimed misconduct based on a notion that Uber opens the door to such evidence if it seeks to prove at trial what is shown clearly by Waymo's own inspections—Uber does not have the 14,000 files. (*See* 7/26/17 Hr'g Tr. at 64:1-74:9.) Any alleged discovery misconduct by Uber has nothing to do with Uber's evidence that the files are not at Uber. Moreover, the points in Waymo's List are inaccurate or misleading or both.

If Waymo is permitted to admit any item on its List, Uber should be allowed to supplement the three pieces of evidence that Uber intends to rely on to show that the 14,000 files are not at Uber. (Dkt. 978.) And although the Court should not permit any of the evidence that Waymo proposes, if the Court does allow any evidence of claimed discovery misconduct by Uber, Uber should be allowed an equal opportunity to present evidence of Waymo's discovery misconduct.

**III.   Waymo's Claims on Its List are Inaccurate, Misleading, and Not Misconduct.**

1. Five discs: As explained in Docket 883, Order to Show Cause, and summarized above, Uber undertook a massive effort to comply with the Court's March 16, 2017 Order and substantially complied. Uber initially believed that the only information in its possession about the five discs was privileged. When it discovered otherwise, it disclosed the information. Waymo suffered no prejudice as it has deposed all relevant witnesses about the discs, some multiple times.

2. Epiq: Epiq has an exact duplicate of the disclosed and logged materials at Stroz, which were transferred for e-discovery cost savings. Uber has never had possession of the Epiq materials. The copy was transferred with Mr. Levandowski's permission for the sole purpose of his defense of the arbitrations brought by Google. (*See* Dkt. 883 at ¶ 22.) Shortly after the transfer of the data, MoFo stopped representing Mr. Levandowski. (*Id.* at ¶¶ 6, 22.) No MoFo attorney ever accessed any of the materials at Epiq. (Dkt. 1170.) Only one MoFo e-discovery

DEFS. UBER TECHS. INC. & OTTOMOTTO LLC'S RESPONSE TO LIST OF DEFS' ALLEGED DISCOVERY MISCONDUCT
CASE NO. 3:17-CV-00939-WHA
sf-3817947

3

staff person accessed the Epiq database for the purpose of setting it up after the data was transferred. (*Id.*) MoFo cannot provide these files to Waymo without Mr. Levandowski's permission.

3. Certain files at MoFo: As explained in Docket 806, these files are copies of certain materials from the Stroz Relativity database that were provided to the firm during its representation of Mr. Levandowski in the arbitrations. They were provided to the firm directly only because they could not be viewed in an efficient manner in the database. A tiny fraction of the files were reviewed by one MoFo associate for 7 hours before the firm stopped representing Mr. Levandowski and the files were not accessed. These files were never in Uber's possession. MoFo cannot turn these files over to Waymo without Mr. Levandowski's permission.

4. Stroz materials: The material at Stroz is controlled by an agreement with Mr. Levandowski. Uber does not control Mr. Levandowski's material and does not have the power to effect its return. Nonetheless, Uber sent a letter on June 12, 2017 requesting that Stroz return any downloaded material. (Dkt. 676-10.) Uber did not appeal this Court's decision that certain Stroz materials are not privileged and stands ready to produce them should the Federal Circuit so order. Even if the Federal Circuit affirms, Uber's privilege assertion is not misconduct. Judge Corley noted that the Stroz and acquisition-presented complicated issues of first impression. (6/23/17 Hr'g Tr. at 40:11-12.)

5. Devices at Stroz: The devices at Stroz were disclosed in Uber's paragraph 4 accounting: "Stroz retained all personal devices except for Mr. Levandowski's phone." (Dkt. 1170 at 7.) These devices remain under the sole control of Mr. Levandowski.

6. Acquisition documents: Uber has produced over 3,000 acquisition documents, which entailed complicated privilege issues. There was nothing unusual about the nature or timing of Uber's production. Waymo suffered no prejudice from the production timing; it used the documents in depositions of the relevant witnesses. Moreover, Waymo had to be compelled to produce its own acquisition documents, which it did not produce until September 6, 2017, two weeks after the close of fact discovery, and it still has not produced a privilege log.

DEFS. UBER TECHS. INC. & OTTOMOTTO LLC'S RESPONSE TO LIST OF DEFS' ALLEGED DISCOVERY MISCONDUCT
CASE NO. 3:17-CV-00939-WHA
sf-3817947

4

7. **Compliance log**: As discussed above, Uber devoted considerable resources to prepare the LiDAR log. This was a complicated task, particularly because it involved people's memories, if any, of events that took place months (or even years) ago. That a person might remember a conversation during deposition that he or she did not recall when interviewed by Uber for the log is unremarkable. Uber made good faith updates to the log to improve its comprehensiveness and accuracy as its investigation and discovery progressed. (Dkt. 1469.)

8. **Stroz agreements**: Uber promptly produced the unredacted Stroz retainer and side-letter agreements in light of Waymo's belated imputation argument. (*See* Defts' Brief re: Imputation, Dkt. 824 at 9-10; 7/26/17 Hr'g Tr. at 25:1-27:6.)

9. **Stroz report and privilege log.** Uber has a legitimate and good faith basis for asserting privilege over the Stroz report. Uber has provided an extensive and detailed privilege log. Judge Corley has reviewed the Stroz materials in camera, has stated that the volume of logged documents is not unusual for a diligence process and has not found any inadequacies in Uber's log.

10. **Stroz name**: The Stroz name was initially withheld because Mr. Levandowski asserted a Fifth Amendment right to withhold that information. Uber immediately disclosed the name when the Court ordered it, and Waymo suffered no prejudice from the delay.

11. **Accounting**: As discussed above, Uber made a tremendous good faith effort to prepare a complete accounting and supplemented that accounting as it discovered new information. Waymo has not suffered any prejudice resulting from the additions to the accounting. This is no different than Waymo's consistent position that it may supplement its discovery responses and productions as necessary.

12. **March 29, 2017 conversation**: Waymo insisted that this conversation was privileged to have it precluded from evidence, and thus should not be permitted to complain that Uber did not disclose it earlier. The conversation has been precluded from evidence, pending Waymo's challenge to Mr. Levandowski's assertion of a personal privilege in that conversation. (Dkts. 1311, 1355, 1380.) Waymo has suffered no prejudice from the timing of the disclosure of this conversation, which will either be excluded from evidence, or, if the Court finds Mr.

DEFS. UBER TECHS. INC. & OTTOMOTTO LLC'S RESPONSE TO LIST OF DEFS' ALLEGED DISCOVERY MISCONDUCT
CASE NO. 3:17-cv-00939-WHA
sf-3817947

5

Levandowski has no personal privilege in that conversation, Waymo can introduce it at trial and Uber can introduce its own responsive evidence. (Dkt. 1267.)

13. **Disclosure of bonus explanation**: Uber believed that the March 29 conversation was not privileged and thus did not disclose an intent to waive privilege. The March 29 conversation has been excluded, making that conversation a moot issue that has not prejudiced Waymo. Separate from the issue of the March 29 conversation, Uber timely disclosed witnesses concerning the Chauffeur Bonus Program and may rely on these witnesses at trial for bonus-related testimony.

14. **Travis Kalanick texts**: There was no undue delay in the production of Mr. Kalanick's text messages. Uber timely produced his texts on June 6, 2017 after using a standard e-discovery process. (Dkt. 1155-4.) Uber noticed that the production appeared to be missing texts, immediately notified Waymo of the issue and said it would follow up as soon as possible. (*Id.*) Mr. Kalanick, however, was unavailable due to his mother's death and father's hospitalization with serious injuries after an awful boating accident. Mr. Kalanick's counsel conducted a forensic recovery (a slow manual process) and produced all available texts as soon as possible. (Dkt. 1153-3.) There is no indication that Mr. Kalanick proactively deleted any messages. (*Id.*) Moreover, Mr. Levandowski produced text messages with Mr. Kalanick on May 11, 2017 that are largely duplicative of Mr. Kalanick's production.

15. **Tyto ownership**: No one at Uber, including the former Tyto employees, knew who had an ownership interest in Tyto. There is no evidence to the contrary. Uber only knew that Tyto was owned by Sandstone LLC.

16. **Production timing**: Uber timely produced materials throughout discovery, which moved at a blazing pace. Waymo propounded 322 broad requests for production, which it often refused to narrow in a timely manner, leading to lengthy sessions with the Special Master that slowed production. Uber produced over 85,000 documents. Uber rolled productions throughout the discovery period, but it was impossible to complete all production well before the close of discovery. Waymo's complaint rings hollow given that it produced more than one-third of its much smaller production of under 21,000 documents on the last day of discovery.

DEFS. UBER TECHS. INC. & OTTOMOTTO LLC'S RESPONSE TO LIST OF DEFS' ALLEGED DISCOVERY MISCONDUCT
CASE NO. 3:17-CV-00939-WHA
sf-3817947

6

17. Levandowski's refusal to cooperate: Uber properly invoked privilege regarding Mr. Levandowski's refusal to cooperate. Uber produced all non-privileged communications with Mr. Levandowski and his counsel. Indeed, when Uber disclosed what it believed was not a privileged conversation with Mr. Levandowski, it is Waymo who argued that it was privileged.

The supposed discovery misconduct is overblown and permitting the jury to hear such allegations would unfairly prejudice Uber.

Dated: September 12, 2017           MORRISON & FOERSTER LLP

By:  */s/ Arturo J. González*
ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

DEFS. UBER TECHS. INC. & OTTOMOTTO LLC'S RESPONSE TO LIST OF DEFS' ALLEGED DISCOVERY MISCONDUCT
CASE NO. 3:17-CV-00939-WHA
sf-3817947

7