1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Tel:     415.268.7000 / Fax:    415.268.7522
5
    KAREN L. DUNN (*Pro Hac Vice*)
6   kdunn@bsfllp.com
    HAMISH P. M. HUME
7   hhume@bsfllp.com
    BOIES SCHILLER FLEXNER LLP
8   1401 New York Avenue, N.W.
    Washington, D.C.  20005
9   Tel:     202.237.2727 / Fax:    202.237.6131

10  WILLIAM CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
11  SUSMAN GODFREY LLP
    1301 Avenue of the Americas, 32nd Floor
12  New York, NY 10019-6023
    Tel.:     212.336.8330 / Fax.:    212.336.8340
13
14  Attorneys for Defendants
    UBER TECHNOLOGIES, INC. and OTTOMOTTO LLC

15
    NEEL CHATTERJEE (SBN 173985)
16  nchatterjee@goodwinlaw.com
    GOODWIN PROCTER LLP
17  135 Commonwealth Drive
    Menlo Park, California 94025
18  Tel.:     650.752.3100 / Fax.:    650.853.1038

19  Attorneys for Defendant OTTO TRUCKING LLC

20                  UNITED STATES DISTRICT COURT
21                NORTHERN DISTRICT OF CALIFORNIA
                    SAN FRANCISCO DIVISION
22
    WAYMO LLC,                          Case No. 3:17-cv-00939-WHA
23
              Plaintiff,               **DEFENDANTS' OPPOSITION TO**
24                                     **WAYMO'S MOTION *IN LIMINE* NO.**
         v.                            **15 TO EXCLUDE EVIDENCE**
25                                     **REGARDING WAYMO'S**
    UBER TECHNOLOGIES, INC.,           **MOTIVATIONS FOR FILING THIS**
26  OTTOMOTTO LLC; OTTO TRUCKING LLC,  **LAWSUIT**

27            Defendants.              Judge:   The Honorable William Alsup
                                       Trial Date: October 10, 2017
28

1    Waymo wants to tell the jury about an "extraordinary case of misappropriation," 5/3 Hr'g Tr.

2    at 5:3-18 (Verhoeven), the alleged theft of the "crown jewels" of its autonomous technology, 8/16

3    Hr'g Tr. at 71:8 (Bailey), when Levandowski "raid[ed] Waymo's design [SVN] server" and

4    "downloaded 14,000 files, representing approximately 9.7 GB of highly confidential data," Dkt. 23 at

5    3, ¶ 4. However, now that Waymo's case has been whittled down from 121 alleged trade secrets and

6    four patents to barely a handful (some subject to summary judgment), and the evidence shows that

7    Uber never acquired or used Waymo's 14,000 files (or any others), and now that Waymo's grand

8    conspiracy theory has been exposed as false, Waymo wants to prevent the jury from learning that this

9    case was instead motivated by Alphabet executives' concerns about Waymo's main competitor, Uber.

10    Waymo's assertion that there is "no evidence of any motive other than Waymo's claims

11    having merit" (Mot. at 1) is as baseless as the false premise it relies on; the Court long ago rejected the

12    infringement accusations that Waymo made in its PI motion as "meritless" and exposed Waymo's

13    "gamesmanship" and "overreaching" in pursuing some of its 121 purported trade secrets. Dkt. 433 at

14    2, 12-13, 16. And documents Waymo withheld until the last day of discovery (and some for weeks

15    beyond the close of discovery) show that Waymo knew its accusations about Levandowski's

16    downloading were, at best, misleading if not outright false, yet Waymo still made them. The evidence

17    also shows that Waymo's decision to investigate Levandowski and other Otto employees, and

18    ultimately to file this lawsuit against Defendants, were driven in large part by competitive concerns.

19    Waymo's assertion that evidence of its motivation for pursuing its claims against Uber (and

20    not Levandowski) "is irrelevant and lacks any probative value" (Mot. at 2) is also baseless and elides

21    Ninth Circuit authority and other caselaw allowing juries to hear such evidence in trade secret cases.

22    **A.    There Is Evidence Of Motive "Other Than Waymo's Claims Having Merit."**

23    Alphabet's top executives were "extremely concerned" about the competitive impact of

24    Levandowski's departure and Uber's subsequent acquisition of Levandowski's newly-formed startup,

25    Otto. Goodman Decl., Ex. 37 (1/28/16 Email: "Larry [Page] is worried that [Levandowski] will create

26    a competitive venture."); Ex. 42 (8/23/16 Meeting Notes: "Uber is generally considered to be

27    Chauffeur's main competitor," and "[i]f Google were to take actions on preventing the acquisition we

28    need to move as quickly as possible"); Ex. 43 (8/28/16 Email: "There is some management concern

1

1  around" the "Chauffeur/Otto situation"). That concern drove not just one, but two, investigations of

2  Levandowski—the first uncovered no "trade secret compromise" (*id.*, Ex. 39 at -800, 804), and the

3  second found Levandowski had done a full checkout of the "low-value" files from the SVN server,

4  which did not "ring any alarm bells" for the SVN administrator (*id.*, Ex. 44 at -886). In fact, he

5  cautioned Waymo internally—up to the day before Waymo filed its claims—that "we all do full

6  checkouts," so "the number of files and rough filesize"—14K files totaling 9.7 GB, numbers which

7  have served as the sensationalized centerpiece of Waymo's allegations—"aren't really meaningful"

8  and Waymo should not "try[] to ascribe suspicion to it." (*Id.,* Ex. 46 at -936; *see id.* at -890 (the prior

9  SVN administrator also explained that "sync[ing] the entire [SVN] folder [] wouldn't be out of

10  normal operation"). Waymo willfully ignored those shortcomings, seeking injunctive reliefs against

11  Defendants—but not Levandowski—on "meritless" infringement accusations and 121 purported trade

12  secrets, "not all of [which] actually qualify as such, and few have been traced into the accused

13  technology," but rather resulted from Waymo's "gamesmanship" and "overreach[ing] in attempting

14  to claim ownership over general principles and approaches in the field." *See* Dkt. 433 at 2, 12-13, 16.

15      In attempting to brush aside this evidence of a bad faith motive, Waymo points to the fact that

16  one of its own witnesses testified that "Waymo's interest is in maintaining protection over its

17  technology." (Mot. at 1-2.) What he actually said was it "is important that [Waymo] maintain [it]s

18  lead." (Waymo Ex. 1 at 12:6-7.) Waymo also cites an email it produced stating that "there's

19  significant concern that the real value of Uber's acquisition of Otto is the Chauffeur-related

20  information our former employees bring with them." (Mot. at 2.) But that email merely shows a

21  concern that former employees might inevitably disclose "Chauffeur-related information" to Uber,

22  and such concerns cannot form the basis of valid trade secret claims. *See FLIR Sys., Inc. v. Parrish*,

23  174 Cal. App. 4th 1270, 1278 (2009) (affirming finding that trade secret action "was brought in bad

24  faith based on a theory of inevitable disclosure" and trial court's refusal to credit plaintiff's assertion

25  that it acted in good faith because it "suspected that trade secrets would be misappropriated" by a

26  former employer who "downloaded technological data onto a portable hard drive before leaving" his

27  job) (quotations omitted). That same email confirms that Uber's acquisition of Otto led Waymo to

28  "accelerate [its] investigation and ensure we're investigating comprehensively" after discussions with

1    Alphabet executives. (Waymo Ex. 2 at 2; *see also id.* at 1 ("I definitely understand the implications of

2    the case"); Goodman Decl., Ex. 40 ("We learned today that Uber acquired Otto so there is more

3    urgency on this issue."). It also shows that Waymo deliberately decided not "to notify Uber of our

4    concerns or potential concerns" (Waymo Ex. 2 at 2), choosing instead to sue Uber several months

5    later based on accusations about downloaded files that Waymo knew were inaccurate and misleading.

6    **B.      Motive and Cause Evidence Is Relevant and Admissible In Trade Secret Cases.**

7    Waymo argues that its "purported motivations for bringing this lawsuit bears no relevance and

8    offers no probative value at trial." (Mot. at 2.) Waymo's arguments are baseless for several reasons.

9    *First*, Judge Corley already held that evidence of "Defendants' theory as to Waymo's motive

10    for bringing the lawsuit" is relevant. Dkt. 832 at 4. *Second*, the Ninth Circuit already held that motive

11    and cause evidence is relevant to a trade secret plaintiff's putative bad faith in filing or maintaining

12    claims. *Cargill Inc. v. Progressive Dairy Sols., Inc.*, 362 F. App'x 731, 733 (9th Cir. 2010). Under

13    Civil Code § 3426.4, "[i]f a claim of misappropriation is made in bad faith, a motion to terminate an

14    injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court

15    may award reasonable attorney's fees to the prevailing party." Waymo is no stranger to this provision

16    as it is in the complaint, Dkt. at 21, ¶ 88, and Defendants seek fees. Dkts. 703 at 19, 704 at 23. Other

17    courts in this District and Circuit have held that motive evidence is also relevant to witness credibility,

18    unclean hands, and other defenses. *See GSI Tech., Inc. v. United Memories, Inc.*, No. 13-CV-01081-

19    PSG, 2015 WL 12942201, at \*1, 2, 6 (N.D. Cal. Oct. 14, 2015) ("a trade secret plaintiff's litigation

20    tactics"—including "dismissed claims"— and "reasons for filing suit" are relevant to bad faith and

21    defenses of unclean hands and failure to mitigate); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,

22    2010 WL 11505684, at \*25 (C.D. Cal. Jan. 25, 2010) (witness credibility); *Cargill Inc. v. Progressive*

23    *Dairy Sols., Inc.*, 2008 WL 4532436, at \*3 (E.D. Cal. Oct. 8, 2008), *aff'd*, 362 F. App'x 731 (9th Cir.

24    2010) (witness credibility and fees); *see also* Dkt. 703, ¶ 158 (unclean hands), ¶ 162 (failure to

25    mitigate); Dkt. 704, ¶ 188 (failure to mitigate).[1] Waymo placed its motive directly at issue when it

26

_____

27    [1] Motive is also relevant to damages in IP cases. *NXP B.V v. Blackberry, Ltd.*, No. 12-cv-498 YK, Dkt. 253 at 18-19 (M.D. Fl. Mar. 6, 2014) (motive for filing suit is "intimately entangled with the

28    parties' commercial relationship, which is a required factor in determining a reasonable royalty").

DEFENDANTS' OPPOSITION TO WAYMO'S MOTION *IN LIMINE* NO. 15
Case No. 3:17-cv-00939-WHA

1   based its allegations on its investigation of Levandowski, and Waymo's motive in pursuing that

2   investigation when it became clear he and Otto would compete with Waymo (via Uber's acquisition)

3   and waiting several months to seek relief, is highly relevant to challenging the investigation's

4   integrity, impeaching Waymo's witnesses, showing Waymo's bad faith, and proving Uber's defenses.

5       ***Third***, Waymo cites no authority for its contention that motive is only relevant to "unfair

6   competition claims or defenses" (Mot. at 1); there is none, as the cases above explain. While Waymo

7   does cite four district court cases where motive evidence was excluded as irrelevant or prejudicial,

8   none involved trade secret claims. As Judge Grewal explained, where a trade secret plaintiff's motive

9   in pursuing its claims is disputed, such evidence "is clearly relevant." *GSI Tech.*, 2016 WL 3035699,

10  at *3 (N.D. Cal. May 26, 2016).[2] ***Fourth***, "[a]t best, [Waymo] has suggested that there might have

11  been a danger of the Rule 403 risks, but it has not shown that those risks outweighed the probative

12  value of the evidence, let alone substantially outweighed it." *Id.* at *3. Just because the evidence about

13  its motivation "hurts Waymo" is not "a good enough reason to exclude it." 7/26 Hr'g Tr. at 61:12-14.

14      ***Fifth***, a trade secrets plaintiff's state of mind will rarely be susceptible of direct proof and may

15  "be inferred by evidence that [plaintiff] intended to cause unnecessary delay, filed the action to harass

16  [defendants], or harbored an improper motive," by the "timing of the action," and "where the plaintiff

17  proceeds to trial after the action's fatal shortcomings are revealed," *FLIR*, 174 Cal. App. 4th at 1278,

18  or abandons claims, *RBC Bearings Inc. v. Caliber Aero, LLC*, 2016 WL 6562068, at *4 (C.D. Cal.

19  Aug. 1, 2016). Here, such evidence includes Alphabet's and Waymo's competitive concerns

20  underlying its investigations, its decision not to tell Defendants of any concerns and then file suit

21  several months later based on accusations that Waymo knew were inaccurate, its decision not to file

22  misappropriation claims against Levandowski, and its dismissal and abandonment of most of its

23  claims. Waymo can argue to the jury that this evidence is just part of some innocent "desire to

24  exercise and protect its rights" (Mot. at 1), but it cannot preclude Defendants from proving otherwise.

25

26  ---

[2] *See also Wink v. Ott*, 2012 WL 1979461, at *1 (M.D. Pa. 2012) (distinguishing one of Waymo's cases, *Haught*, and holding that unlike a "typical FLSA action," "the circumstances surrounding

27  Plaintiff's termination and his motivations for filing suit against Defendants are relevant to his credibility"); NXP, Dkt. 253 at 19 (distinguishing three of Waymo's cases since none "are patent

28  cases, meaning the parties' prior relationship [] was not relevant to a reasonable royalty claim").

DEFENDANTS' OPPOSITION TO WAYMO'S MOTION *IN LIMINE* NO. 15
Case No. 3:17-cv-00939-WHA

1   Dated: September 13, 2017

2

MORRISON & FOERSTER LLP
BOIES SCHILLER FLEXNER LLP
SUSMAN GODFREY LLP

3

4          By:  _/s/ Karen L. Dunn_____
                    KAREN L. DUNN

5

6          Attorneys for Defendants
           UBER TECHNOLOGIES, INC. and
           OTTOMOTTO LLC

7

8          GOODWIN PROCTER LLP

9          By:  _/s/ Neel Chatterjee_____
                    NEEL CHATTERJEE

10

11         Attorneys for Defendant
           OTTO TRUCKING LLC

12

13

14

15

16                    **ATTESTATION OF E-FILED SIGNATURE**

17         I, Karen L. Dunn, am the ECF User whose ID and password are being used to file this

18   Motion *in Limine*.  In compliance with General Order 45, X.B., I hereby attest that Neel

19   Chatterjee has concurred in this filing.

20

21                         _/s/ Karen L. Dunn_____
                                Karen L. Dunn

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO WAYMO'S MOTION *IN LIMINE* NO. 15
Case No. 3:17-cv-00939-WHA