# EXHIBIT 53

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

```
 1            UNITED STATES DISTRICT COURT
 2          NORTHERN DISTRICT OF CALIFORNIA
 3              SAN FRANCISCO DIVISION
 4
 5   WAYMO LLC,
 6       Plaintiff,
 7          vs.                    Case No.
 8   UBER TECHNOLOGIES, INC.;      17-cv-00939-WHA
 9   OTTOMOTTO, LLC; OTTO
10   TRUCKING LLC,
11       Defendants.
12   _____
13
14     HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
15
16        VIDEOTAPED DEPOSITION OF DAVID DRUMMOND
17                 Palo Alto, California
18                Monday, August 21, 2017
19                       Volume I
20
21   REPORTED BY:
22   REBECCA L. ROMANO, RPR, CSR No. 12546
23   JOB NO. 2677782
24
25   PAGES 1 - 172
```

Page 1

```
 1    A.   I understand that Waymo ███████████     ██████
 2    ████████████████████████████████ yes.
 3    Q.   And when you say --
 4         (Brief interruption.)
 5    Q.   (By Mr. Gonzalez)  Sir, when you say that    01:10:37
 6    ████████████████████████████████
 7    ████████████████████████████████
 8    ██████████████████
 9    A.   Yes, they are -- my understanding is that
10   they are ████████████████████████    █████████
11   ██████████
12    Q.   And -- and wouldn't you agree that ████
13   ████████████████████████████
14   ████████████████████████████████
15   ███████                                            01:11:09
16    A.   I -- I don't know if that's true.
17    Q.   Why do you say that?
18    A.   It -- it -- ████████████████████
19   ███████████████ so I'm not sure it's in
20   direct competition, among other things.            01:11:22
21    Q.   ████████████████████████████
22   ████████████████████████████████
23   ████████████████████████████
24    A.   I don't know.
25    Q.   Do you recall that the issue of Google       01:11:38
```

1  ▮▮▮▮▮) came up during the                01:11:41
2  time that you served on Uber's board?
3      A.   Yes, I recall that that topic came up.
4      Q.   And when it came up, did it cause you
5  concern ▮▮▮▮▮), given that                01:11:55
6  you were the top legal officer for Google and at
7  the same time a board member for Uber?
8      A.   It caused me to -- it caused us to have
9  discussions about it at -- at some point in time,
10 yes.                                       01:12:09
11     Q.   And when you say "discussions,"
12 discussions with who?
13     A.   Principally, with Travis Kalanick.
14     Q.   When did you first inform Mr. Kalanick
15 that ▮▮▮▮▮)  ▮▮▮▮▮)
16 ▮)  ▮▮▮▮▮)
17     A.   I can't recall exactly when the two of us
18 had conversations about it.
19     Q.   Do you recall generally?
20     A.   I know that -- oh, the topic came up   01:12:34
21 sometime around -- there was a conference in
22 Southern California, the Code Conference, I believe
23 it's called -- and the topic of that came up, I
24 think, in -- in connection with remarks that
25 Sergey Brin gave at the con- -- at the conference,   01:12:50

Page 17

| | | |
|---|---|---|
| 1 | and Travis and I had a conversation about that | 01:12:52 |
| 2 | then. | |
| 3 |     Q.   Did you and Mr. Kalanick have | |
| 4 | conversations about Mr. Brin's remarks before or | |
| 5 | after he made his remarks? | 01:13:05 |
| 6 |     A.   I don't -- I don't recall whether there | |
| 7 | was any conversation before.  I do remember there | |
| 8 | was a conversation after, I believe. | |
| 9 |     Q.   And how did it come up? | |
| 10 |     A.   Travis raised the issue with me. | 01:13:15 |
| 11 |     Q.   Mr. Kalanick expressed concern to you | |
| 12 | about what Mr. Brin had said publicly? | |
| 13 |     A.   Yes. | |
| 14 |     Q.   Do you remember where that conference | |
| 15 | was? | 01:13:26 |
| 16 |     A.   It was in Southern California, I believe, | |
| 17 | at the Terranea Resort. | |
| 18 |     Q.   Was that Rancho Palos Verdes? | |
| 19 |     A.   That's -- that's correct. | |
| 20 |     Q.   I even pronounced it right, too. | 01:13:38 |
| 21 |     A.   Impressed. | |
| 22 |     Q.   Okay.  I want to make sure we're talking | |
| 23 | about the same conference. | |
| 24 |         Okay? | |
| 25 |     A.   Sure. | 01:13:44 |

Page 18

| | | |
|---|---|---|
| 1 | Q.   So what was it that Mr. Kalanick said? | 01:13:44 |
| 2 | Did he call you afterwards or did you meet? | |
| 3 | A.   We were both present at the conference so | |
| 4 | we spoke face-to-face. | |
| 5 | Q.   I see. | 01:13:55 |
| 6 | And did you speak immediately after the | |
| 7 | presentation? | |
| 8 | A.   I don't remember. | |
| 9 | Q.   Do you remember where the two of you were | |
| 10 | when you spoke?  Was it in the hallway?  Was in a | 01:14:02 |
| 11 | conference room? | |
| 12 | A.   I don't remember.  We -- we may have been | |
| 13 | walking. | |
| 14 | Q.   All right.  Was anybody else present? | |
| 15 | A.   No, it was just the two of us. | 01:14:14 |
| 16 | Q.   So the two of you had a little private | |
| 17 | conversation? | |
| 18 | A.   That's correct. | |
| 19 | Q.   And -- and what did he say? | |
| 20 | A.   I recall him just expressing concern | 01:14:20 |
| 21 | about the possibility that ███████████████████ | |
| | ███████████████████████████████ | |
| | ███████████████████████████).  And he had | |
| 24 | concerns about that. | |
| 25 | Q.   What did you say in response? | 01:14:42 |

Page 19

| | | |
|---|---|---|
| 1 | A.    Well, I think I told him that we were | 01:14:46 |
| 2 | one -- well, one of the -- that was -- as Sergey -- | |
| 3 | as I believe Sergey's remarks indicated, that that | |
| 4 | was one of the things that we were considering. | |
| 5 | And that, in any event, any competition was likely | 01:14:55 |
| 6 | quite a ways off and that we -- but we -- that we | |
| 7 | should talk about these things as things developed. | |
| 8 | Q.    Is there anything else that was discussed | |
| 9 | during that conversation? | |
| 10 | A.    Not that I recall. | 01:15:18 |
| 11 | Q.    So your best recollection is the first | |
| 12 | time that you had a conversation with anyone from | |
| 13 | Uber about ████████████████████████████████ | |
| | ████████████████████████████ | |
| | ████████████████████████████████   ████ | |
| | ████████████████ | |
| 17 | A.    That's a rec- -- I have that | |
| 18 | recollection, yes. | |
| 19 | Q.    And when did the topic come up again | |
| 20 | after that? | 01:15:39 |
| 21 | A.    I don't recall specifically when the next | |
| 22 | time the topic came up. | |
| 23 | Q.    And do you recall that over time | |
| 24 | Mr. Kalanick continued to express concerns about | |
| 25 | ████████████████████████████████████? | 01:15:50 |

Page 20

| | | |
|---|---|---|
| 1 | A. I remember him expressing concerns after | 01:15:53 |
| 2 | that. | |
| 3 | Q. And what, generally, was your response? | |
| 4 | A. Generally, my response was similar, that | |
| 5 | we were -- we hadn't launched anything. We were | 01:16:01 |
| 6 | still deciding what we were going to do. And in | |
| 7 | the event we did, any competition was a long ways | |
| 8 | off, and we had a good partnership, we should | |
| 9 | continue it. | |
| 10 | Q. What was the good partnership that you | 01:16:17 |
| 11 | had at that time? | |
| 12 | A. Well, we were investors in the company | |
| 13 | and -- through Google Ventures, I should say, which | |
| 14 | is a different entity than Google, although | |
| 15 | owned -- controlled by Google. We had a | 01:16:30 |
| 16 | partnership [redacted]. And those were the main | |
| 17 | partnerships, I believe. | |
| 18 | Q. Let me show a document that we've marked | |
| 19 | as Exhibit 1770. | |
| 20 | (Exhibit 1770 was marked for | 01:16:47 |
| 21 | identification by the court reporter and is | |
| 22 | attached hereto.) | |
| 23 | Q. (By Mr. Gonzalez) Is this an email | |
| 24 | exchange between you and Mr. Kalanick in January | |
| 25 | of 2015? | 01:17:04 |

Page 21

1    A.   That's what it appears to be.                        01:17:10

2    Q.   You'll see that the email string starts

3    at the bottom with Mr. Kalanick writing to you

4    about the Detroit auto show.  And he says ▇▇▇▇)

▇) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇) ▇▇▇▇)

▇) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇) ▇▇▇▇▇▇▇▇▇)

▇) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"

8         Do you see that?

9    A.   Yes, I do.

10   Q.   And then you respond on the 18th.  He              01:17:36

11   writes back to you.  And then you write to him on

12   the 22nd, basically, saying -- agreeing with him

13   that you need to have a talk; is that right?

14   A.   Well, to the extent you're referring

15   to -- yes, I think it's time for a chat, too.            01:17:56

16   That's what the email says.

17   Q.   Let me show you 1771.

18        (Exhibit 1771 was marked for

19   identification by the court reporter and is

20   attached hereto.)                                        01:18:05

21   Q.   (By Mr. Gonzalez)  For the record, 1771

22   is another email exchange between you and

23   Mr. Kalanick; is that right?

24   A.   Yes, that's what it appears to be.

25   Q.   And Mr. Kalanick is forwarding to you, on           01:18:29

Page 22

```
 1   March 7, 2015, an email that he received from          01:18:32
 2   someone saying ████████████████████████████████
 3   ████████████████████████████████████████████████
 4           Is that right?
 5      A.   That's what the email seems to say.            01:18:48
 6      Q.   And he is, once again, requesting a
 7   meeting with Larry to talk about this issue which
 8   is causing him additional concern.
 9           Would that be fair?
10      A.   That's what he seems to be asking about.       01:18:59
11      Q.   And then you write back and say ██
     ████████████████████████████████████████████████
     ████████████████████████████████████████
     ████████
15           Do you see that?                               01:19:12
16      A.   Yes, I do.
17      Q.   And you also said to him, ████████████
     ████████████████████████████████████████████████
     ████████████████████████████
20           So you had already spoken to Mr. Page          01:19:22
21   about the concerns that were being expressed by
22   Mr. Kalanick during this time period; is that
23   right?
24      A.   Well, I don't -- I don't recall when and
25   whether I spoke to Larry during this time period.      01:19:32
```

Page 23

```
 1   I -- I will agree with you that the email says        01:19:36
 2   that -- that I -- I -- I said that in the meeting.
 3        Q.   And so the email at least suggests that
 4   you had already had at least one conversation with
 5   Mr. Page about this.                                   01:19:47
 6             Would that be fair?
 7        A.   Well, again, the email says that -- that
 8   I wrote to Travis saying that I'll speak to Larry
 9   again, yeah.
10        Q.   Do you recall speaking to Mr. Page about    01:19:58
11   the concerns that were being expressed by
12   Mr. Kalanick?
13        A.   I don't -- I don't recall speaking to him
14   in any particular time, certainly during this
15   period.  But I recall having a -- a conversation      01:20:08
16   with him about it.
17        Q.   And what was Mr. Page's message that he
18   asked you to deliver back to Mr. Kalanick?
19        A.   I can't recall that he gave me any
20   message to deliver back.                              01:20:22
21        Q.   What was his response to the concerns
22   being expressed by Mr. Kalanick?
23        A.   ███████████████████████████████████████
     ███████████████████████████████████████████████
     ███████████████████████████████████████d          01:20:39
```

```
 1   ████████████████████████████████████)                      01:20:42
 2       Q.   And what do you mean by ████████████)
███)     ███)?
 4       A.   Well, ████████████████████████████████████)
██)  ████████████████████████████████████)      ████████)
██)  ████████████). So that it was -- these were -- this
 7   is a technology that was still in development.
 8       Q.   Do you recall having a lunch meeting with
 9   Mr. Page and Mr. Kalanick shortly after the date of
10   this email to discuss the concerns being expressed?   01:21:11
11       A.   I remember a meeting with Larry and
12   Travis.  I don't recall when it took place.
13       Q.   (By Mr. Gonzalez)  Let me show you
14   Exhibit 417.
15            This is a meeting invite for a lunch on      01:21:38
16   March 10, 2015, three days after the email exchange
17   I just showed you.
18            Does that sound about right with respect
19   to the date that you would have had this lunch that
20   you're referring to?                                  01:21:49
21       A.   I have no reason to -- to doubt it.
22       Q.   It references the location,
23   1900 Charleston Road, Mountain View.
24            Is that your headquarters?
25       A.   That's on the Google campus, yes.            01:22:00
```

Page 25

```
 1      Q.   And --                                       01:22:03
 2      A.   And that's where I recall the meeting
 3  take place.
 4      Q.   Right.
 5           Now -- now, I don't want to get lawyer       01:22:07
 6  technical, but you're saying meeting.  This is
 7  saying lunch.
 8           Doesn't really matter to me, but was it a
 9  lunch meeting or just a regular meeting?
10      A.   I don't remember if there was food          01:22:14
11  present.
12      Q.   All right.  And --
13      A.   At -- at Google -- at Google, there's
14  always food present.
15      Q.   Yeah.  Fair enough.                         01:22:18
16           So other than you and Mr. Page and
17  Mr. Kalanick, do you recall if anyone else
18  attended?
19           This indicates an Emil Michael was
20  invited.                                             01:22:26
21      A.   I -- I recall Emil being there.  I'm
22  fairly certain he was there.
23      Q.   Other than the four of you, anybody else
24  attend?
25      A.   I don't recall anyone else attending, no.   01:22:34
```

Page 26

| | | |
|---|---|---|
| 1 | know that we talked from time to time. | 01:53:16 |
| 2 | Q.   Was there ever an instance where you | |
| 3 | reached out to him that you can recall where he | |
| 4 | failed to respond? | |
| 5 | A.   I can't think of an -- such an instance. | 01:53:24 |
| 6 | Q.   Why, in this instance, when you have | |
| 7 | someone who allegedly took 14,000 files, why didn't | |
| 8 | you reach out to Mr. Kalanick and just say to him, | |
| 9 | "Hey, Travis, one of our former employees took a | |
| 10 | bunch files.  I'm concerned.  I want to make sure | 01:53:36 |
| 11 | they're not at Uber"? | |
| 12 | MR. VERHOEVEN:  Well, again, to the | |
| 13 | extent this "why" question calls for | |
| 14 | attorney-client privileged communications or work | |
| 15 | product communications, you should exclude those | 01:53:51 |
| 16 | from your answer. | |
| 17 | THE DEPONENT:  Well, I don't -- I -- I | |
| 18 | can't think of an answer why to the -- to your why | |
| 19 | question that would -- that wouldn't involve, | |
| 20 | you know, something that's privileged. | 01:54:01 |
| 21 | Q.   (By Mr. Gonzalez)  Did you -- outside of | |
| 22 | communications with lawyers, did you yourself | |
| 23 | consider the possibility that you might be able to | |
| 24 | just call Travis and tell him, "I understand | |
| 25 | Anthony Levandowski may have taken some files.  I | 01:54:14 |

Page 53

| | | |
|---|---|---|
| 1 | want to make sure they're not at Uber"? | 01:54:15 |
| 2 |     MR. VERHOEVEN:  For the record, | |
| 3 | Mr. Drummond is a lawyer himself -- | |
| 4 |     MR. GONZALEZ:  Understood. | |
| 5 |     MR. VERHOEVEN:  -- so to the extent you | 01:54:25 |
| 6 | can answer that without revealing confidential | |
| 7 | attorney-client privileged information or work | |
| 8 | product information, you can answer. | |
| 9 |     Q.   (By Mr. Gonzalez)  No, no.  To be clear, | |
| 10 | the question is separate and apart from any | 01:54:35 |
| 11 | conversations you may have had with lawyers, did | |
| 12 | you yourself ever consider the possibility of just | |
| 13 | calling Travis to tell him that "Hey, this guy may | |
| 14 | have taken some files and I want to make sure | |
| 15 | they're not at Uber"? | 01:54:47 |
| 16 |     MR. VERHOEVEN:  Same instruction. | |
| 17 |     THE DEPONENT:  I don't believe I | |
| 18 | considered that possibility at the time. | |
| 19 |     Q.   (By Mr. Gonzalez)  Why not? | |
| 20 |     MR. VERHOEVEN:  Same instruction. | 01:54:58 |
| 21 |     THE DEPONENT:  I don't think I can answer | |
| 22 | that without revealing something privileged. | |
| 23 |     Q.   (By Mr. Gonzalez)  If somebody has 14,000 | |
| 24 | of your client's files and you think those are | |
| 25 | important, don't you think, generally speaking, | 01:55:20 |

| | | |
|---|---|---|
| 1 | it's a fair thing to give them notice that "Hey, | 01:55:23 |
| 2 | one of our employees took your files"? | |
| 3 |     MR. VERHOEVEN:  Object to the form. | |
| 4 |     THE DEPONENT:  I don't know that I can | |
| 5 | answer your hypothetical. | 01:55:32 |
| 6 |     Q.   (By Mr. Gonzalez)  In this situation -- | |
| 7 | forget the hypothetical -- regardless of what your | |
| 8 | lawyers may or may not have said -- | |
| 9 |     A.   Uh-huh. | |
| 10 |     Q.   -- I'm not interested in that. | 01:55:41 |
| 11 |     You had a personal relationship with | |
| 12 | Mr. Kalanick.  Didn't you think that it would be | |
| 13 | reasonable to give him notice that the guy you just | |
| 14 | hired has a bunch of our files? | |
| 15 |     MR. VERHOEVEN: Object to form.  Same | 01:55:50 |
| 16 | instruction on privilege and -- | |
| 17 |     THE DEPONENT:  Again, there are a variety | |
| 18 | of responses that you might have.  But our | |
| 19 | response, in this particular situation, I don't | |
| 20 | think I can reveal to you, or how I was thinking | 01:56:03 |
| 21 | about it, without revealing to you privileged | |
| 22 | information. | |
| 23 |     Q.   (By Mr. Gonzalez)  Did you do anything, | |
| 24 | as the chief legal officer for Google, when you | |
| 25 | learned that these files might have downloaded, to | 01:56:13 |

Page 55

```
 1    make sure that somebody gave notice to Uber about        01:56:16
 2    these files?
 3              MR. VERHOEVEN:  Objection.
 4              To the extent that your answer would not
 5    involve attorney-client communications or work           01:56:24
 6    product communications, you may answer.  Otherwise,
 7    you may not.
 8              THE DEPONENT:  I -- I think -- thank you.
 9    Sorry.  Microphone disconnection.
10              I think all of the discussions around          01:56:53
11    finding out about the files involved sort --
12    you know, were -- involved our sort of legal
13    response, something illegal had been done.  So I
14    think as the chief of -- you know, Alph- -- legal
15    officer of Alphabet, which is the owner of Waymo, I      01:57:13
16    think are -- you know, all of those conversations
17    were privileged.
18         Q.   (By Mr. Gonzalez)  All right.  And I'm
19    setting aside all of those conversations.
20         A.   Uh-huh.                                        01:57:25
21         Q.   And I'm simply asking you, you get
22    involved in a lot of business discussions, right?
23         A.   I do get involved in business
24    discussions, yes.
25         Q.   And you have a lot of business                 01:57:31
```

| | | |
|---|---|---|
| 1 | discussions with companies that Google does | 01:57:33 |
| 2 | business with, correct? | |
| 3 |     A.   That's correct. | |
| 4 |     Q.   And I'm just asking you, generally | |
| 5 | speaking, when you found out that these files had | 01:57:38 |
| 6 | been taken, didn't you personally think that it | |
| 7 | would be fair to give notice to Mr. Kalanick that | |
| 8 | Mr. Levandowski may have taken some files? | |
| 9 |         MR. VERHOEVEN:  Object to form. | |
| 10 |         Same instruction on attorney-client | 01:57:49 |
| 11 | privilege and work product doctrine. | |
| 12 |         THE DEPONENT:  I personally did not think | |
| 13 | that.  The reasons I did not think that are | |
| 14 | privileged. | |
| 15 |     Q.   (By Mr. Gonzalez)  Did you take any | 01:58:02 |
| 16 | steps, at that point, to make sure that somebody | |
| 17 | gave notice to Uber so that they wouldn't use these | |
| 18 | files that were taken? | |
| 19 |         MR. VERHOEVEN:  Objection. | |
| 20 |         Same instruction.  Attorney-client | 01:58:14 |
| 21 | privilege.  Work product doctrine. | |
| 22 |         THE DEPONENT:  I took no steps to tell | |
| 23 | anyone to do that, and the reasons for that, again, | |
| 24 | are privileged. | |
| 25 |     Q.   (By Mr. Gonzalez)  By the way, if those | 01:58:33 |

Page 57

```
 1   files are important, why didn't you sue the guy who        01:58:35
 2   took them?
 3           MR. VERHOEVEN:  Objection.
 4           Instruct you not to answer under the
 5   grounds of attorney-client privilege and work               01:58:45
 6   doc- -- work product doctrine.
 7      Q.   (By Mr. Gonzalez)  Did you consider suing
 8   the guy who took the files?
 9           MR. VERHOEVEN:  Same instruction.
10   Instruct you not to answer for the same basis.              01:58:56
11      Q.   (By Mr. Gonzalez)  When did you learn
12   that there were some email that came to your
13   company inadvertently from Gorilla?
14      A.   I don't recall exactly when I -- when I
15   heard about that.  Again, sometime toward the end           01:59:15
16   of 2016, something -- somewhere around that time.
17      Q.   Do you recall that it came to your
18   attention at around the time that the email was
19   received?
20      A.   Yes, I think it was, all right, you know,           01:59:38
21   some -- somewhere around that time.
22      Q.   When you saw that email, did it cause you
23   any concern?
24           MR. VERHOEVEN:  Same instruction.  To the
25   extent that the question -- the response to that            01:59:45
```

Page 58

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    I, Rebecca L. Romano, a Certified Shorthand
2    Reporter of the State of California, do hereby
3    certify:
4    That the foregoing proceedings were taken
5    before me at the time and place herein set forth;
6    that any witnesses in the foregoing proceedings,
7    prior to testifying, were administered an oath;
8    that a record of the proceedings was made by me
9    using machine shorthand which was thereafter
10   transcribed under my direction; that the foregoing
11   transcript is true record of the testimony given.
12   Further, that if the foregoing pertains to the
13   original transcript of a deposition in a Federal
14   Case, before completion of the proceedings, review
15   of the transcript [ ] was [X] was not requested.
16   I further certify I am neither financially
17   interested in the action nor a relative or employee
18   of any attorney or any party to this action.
19   IN WITNESS WHEREOF, I have this date
20   subscribed my name.
21   Dated:  August 22, 2017
22
23   [signature]
24   Rebecca L. Romano, RPR,
25   CSR. No 12546

Page 172