QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S RESPONSE TO DEFENDANTS' RENEWED MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE OF UBER'S OVERRULED PRIVILEGE ASSERTIONS**<br><br>Date:          September 27, 2017<br>Time:          8:00 a.m.<br>Ctrm:          8, 19th Floor<br>Judge:         Honorable William H. Alsup<br>Trial Date:    October 10, 2017 |

Defendants seek to hide from the jury the key fact that they withheld from Waymo key documents relating to Uber's acquisition of Levandowski's newly-founded company for nearly the entirety of the case.  The documents withheld were the Stroz due diligence report; over 1,000 documents on Defendants' privilege log that they say they will produce now that the Federal Circuit ruled in Waymo's favor; and all documents responsive to the subpoena Waymo served on Stroz.[1]  Having been ordered again to produce these documents, Defendants do not want the jury to know that they improperly hid them under the cloak of privilege.  Defendants raised this issue before, and the Court denied the motion as applied to "assertions of privilege that, at the time of trial, have been deemed invalid by a final order of this Court or the Federal Circuit."  (Dkt. 874, 3.)  This Court should not change its ruling.

**I.  Defendants' Renewed Motion Offers Nothing New and Should be Denied.**

Initially, Defendants' renewed motion does not raise anything new that would warrant the Court changing its prior ruling.  This Court and Magistrate Corley overruled Defendants' "remarkable" privilege assertions over the withheld documents on three occasions, and ordered Defendants and Stroz to produce them.  (Dkt. 566, 621, and 685.)  Following this Court's affirmance of Judge Corley's orders, non-party Levandowksi sought a stay of this Court's order from the Federal Circuit.  (Dkt. 838.)  This stay was lifted on September 13 (less than a month before trial) and Defendants ordered to produce the withheld documents.  *Waymo LLC v. Uber Tech.*, No. 17-cv-2235 (Fed. Cir. Sep. 13, 2017).  In the interim, before Levandowski's appeal was resolved, Defendants moved to exclude any mention of their invalid assertion of privilege over the Stroz report and related documents.  (Dkt. 855 at 1; *see* Dkt. 641 at 1-3; Dkt. 650 at 2-4.)  The Court denied the motion.  (Dkt. 874 at 3.)  Defendants refuse to accept that decision.  There is no basis for the Court to change its prior ruling.

---

[1] The Federal Circuit issued its opinion on the morning of the day on which this brief is being filed.  As of the filing of this brief, Defendants produced the Stroz Report to Waymo, but have not yet produced the other documents on their privilege log that they indicated would be produced.

## II. Informing the Jury that the Court Overruled Uber's Privilege Claims is a Permissible Sanction.

Defendants argue that informing the jury that this Court overruled Defendants' privilege claims is an impermissible sanction because Defendants now intend to produce documents as ordered by the Court. This self-serving argument ignores that Defendants vigorously opposed producing the withheld documents, even hiding the identity of Stroz until the Court ordered Defendants to disclose it. Dkt. 202. After this Court upheld Judge Corley's ruling overruling Defendants and Levandowski's objections, Levandowski sought and obtained a stay of the Court's order to appeal to the Federal Circuit. Defendants used that stay obtained by Levandowksi as a further privilege shield and the fact that Levandowski, not Defendants, obtained a stay does not change the fact that Defendants fought tooth and nail against production of these documents.

Allowing the jury to be informed that Defendants withheld documents based on privilege and the privilege claim was overruled is an appropriate sanction in response to Defendants' conduct in this case. This is not the only time Defendants improperly withheld relevant material as privileged. Throughout the litigation, Defendants have consistently used privilege as both a sword and shield, choosing to waive privilege over conversations and documents only when they decide it helps their defense, but obstructing access to those that harm their position. On more than one occasion, Defendants submitted documents that were previously withheld to support Defendants' own arguments. Indeed, even when the privilege was not theirs to waive, Defendants have had no compunction against disclosing what they want when it suits them. (*See e.g,* Dkt. 1356 at 5) (identifying the disclosure of Uber's "bonus theory" stemming from a privileged March 29 conversation between Mr. Levandowski, Mr. Kalinic, and Ms. Padilla).

Defendants renew their argument that disclosing their overruled privilege claim will cause the jury to draw an adverse influence. Defendants argue that because an assertion of privilege might not require an adverse inference in *all* circumstances, an adverse inference is forbidden. (*See* Dkt. 641) (claiming it is "impermissible to draw an adverse inference" from an incorrect assertion of privilege.) This is wrong. Although an incorrect assertion of privilege might not *require* an adverse inference, there are legitimate reasons why a jury should know about a rejected

1  claim. The evidence itself is probative of what Uber knew and when, and Uber's withholding of
2  that evidence is further probative of Uber's guilty knowledge. (Dkt. 650.) Defendants intend to
3  argue that they undertook a "massive effort" to search for the stolen files, and the supposed
4  absence of any evidence indicated their non-culpability. (Dkt. 1534 at 2; *see also* Dkt. 775 at
5  11:5-7 ("Ms. Dunn: [T]here will be witnesses who can testify to their firsthand knowledge of
6  everything that has been done to turn the company upside down and search for these 14,000
7  files."). Information countering that narrative—both the underlying evidence and Defendants'
8  attempt to hide it while crowing about their "massive effort"—is certainly relevant under Rule
9  401. Nor have Defendants offered any persuasive reason why this probative evidence should be
10 excluded when any minimal concern of prejudice can be cured by a clarifying instruction.

11         This is true even now that the Federal Circuit ruled in Waymo's favor and Defendants are
12 ordered (again) to produce the withheld documents. It is less than a month before trial and
13 Waymo only received the Stroz report with its voluminous exhibits this afternoon, and have not
14 received the other withheld documents, and does not know whether the withheld documents
15 (including those withheld by Stroz) reveal where the stolen 14,000 files are. In contrast,
16 Defendants have known all along what these documents say and therefore have prepared their case
17 and trial strategy with knowledge of the content of the withheld documents. As this Court has
18 recognized, "to leave the impression with the jury that [defendants] have opened up the books, and
19 [Waymo has] been able to see everything to find out if anything was transmitted, would leave a
20 false impression with the jury." (Dkt. 775 at 10.) Informing the jury of Defendants' conduct with
21 respect to these documents is an appropriate sanction for the improper withholding.

22 **III.    Because Disclosure of the Non-Privileged Information is Insufficient to Cure the
            Harm to Waymo, the Fair Remedy is to Allow the Jury Access to All the Pertinent
23          Information.**

24         The presumed forthcoming disclosures of the non-privileged documents does not
25 discharge the Court from ensuring the remedy for Defendants' previous overruled assertions of
26 privilege is fair to Waymo. Similar to the inquiry into the remedy for subject matter waiver when
27 a party attempts to use privilege as both sword and shield, the purpose of the traditional remedy is
28 to place the disadvantaged party, here, Waymo, back on equal footing. *Tennenbaum v. Deloitte &*

*Touche*, 77 F.3d 337, 340 (9th Cir. 1996) ("The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness."); *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) ("The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter. The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." (internal citations omitted)).

Even if Defendants now produce the non-privileged documents in full, Waymo remains prejudiced by their late disclosure. The files should have been produced at the outset of the litigation. (Dkt. 61.) Instead, Waymo will receive them weeks after the close of fact discovery, and just a few weeks before trial. While Defendants had access to these documents for the entirety of the case, only now does Waymo finally have the chance to review them and determine what additional discovery is necessary, including depositions previously postponed while the parties waited for the Federal Circuit ruling, and possibly depositions of other witnesses identified in the Stroz report or previously deposed witnesses whose prior testimony is contradicted by the Stroz report. Defendants' conduct with respect to its unreasonable privilege assertions delayed and disrupted Waymo's ability to prepare adequately for trial such that simply producing the materials does not put Waymo on "equal footing." The Court previously recognized that Defendants made sweeping privilege assertions to effect a "relentless concealment of likely probative evidence." (Dkt. 426 at 8.) This has been prejudicial to Waymo's ability to fully develop its case.

As noted above, at this stage of the litigation, the equitable remedy for Defendants' overruled privilege assertion of privilege would be two-fold: access to the thousands of withheld documents (which Waymo will receive at some point pursuant to the Federal Circuit opinion), and to allow Waymo to inform the jury why significant selections of crucial evidence are incomplete. Given disclosure was stalled while Defendants' sheltered under a stay from the Federal Circuit, and even disclosure at this stage will not fully ameliorate the prejudice to Waymo, permitting the jury to understand why there are gaps in the evidence is crucial to a fair trial.

### IV. Waymo's Privilege Waiver is Distinguishable.

Lastly, Defendants contend that if Waymo is permitted to inform the jury that Defendants withheld the due diligence documents, then Defendants should be allowed to inform the jury that Waymo withheld documents relating to its privileged forensic investigation. The two cases are not the same. First, Waymo's investigation *is* privileged and work product. Waymo was nevertheless ordered to produce documents relating to it because Waymo waived its work product protection over that specific investigation. In contrast, the Court found that the Stroz report and related documents are *not* privileged; withholding them on that basis was improper. Further, the same prejudice concerns do not apply. With respect to the Stroz report and related documents, Waymo moved to compel their production early in the case. Dkt. 321. Waymo will receive them on the eve of trial only because Defendants and Levandowski resisted production for the entirety of the case. In contrast, although Defendants were aware that Waymo would rely on its forensic investigation as early as Waymo's Preliminary Injunction briefing, Otto Trucking did not take the position that constituted a further waiver until the last few weeks of discovery.

### V. Conclusion

For the foregoing reasons, the Court should deny Defendants' Renewed Motion in Limine No. 2.

DATED:  September 13, 2017         QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
   Charles K. Verhoeven
   Attorneys for WAYMO LLC