QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>       vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>            Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S MOTION IN LIMINE 13**<br><br><br>Date:         September 27, 2017<br>Time:         8:00 a.m.<br>Ctrm:         8, 19th Floor<br>Judge:        Honorable William H. Alsup<br>Trial Date:   October 10, 2017 |

The Court should preclude Defendants from alleging or asserting at trial that Alphabet Senior Executive David Drummond, a former member of Uber's Board of Directors, acted improperly by failing to tell Uber that Waymo plans to enter the transportation-as-a-service ("TaaS") industry, or by supposedly collecting competitive intelligence about Uber for Waymo. There is absolutely no basis for these allegations, and these allegations have no relevance to Waymo's trade secret misappropriation or patent infringement claims that are actually at issue in this case. This information should be excluded.

**BACKGROUND**

Mr. Drummond, Alphabet's Senior Vice President of Corporate Development and Chief Legal Officer, served on Uber's Board of Directors from August 2013 through August 2016. (Ex. 1, Drummond Tr. at 13:21-22, 38:3-8.) Mr. Drummond testified at his deposition that he ultimately resigned from Uber's Board in August 2016 for several reasons: (1) because Uber "had very aggressively entered the self-driving technology space"; (2) because Waymo was "contemplating ride sharing as part of [its] self-driving efforts"; and (3) because Uber "announced the acquisition of Otto," and Waymo "had some concerns about Anthony's behavior as he left." (*Id.* at 38:9-39:4.) Defendants have not identified or elicited any evidence to contradict this testimony.

Any allegation that Mr. Drummond acted improperly by failing to share its plans to enter the TaaS industry is false, as Uber well knows. Google discussed the possibility of rolling out an autonomous vehicle ridesharing service publicly in January 2015 at the Detroit Auto Show. (Ex. 2.) Soon thereafter, Travis Kalanick confronted Mr. Drummond and asked to speak with Larry Page directly about Waymo's plans. (*Id.*; Ex. 1, Drummond Tr. at 21:18-28.2.) During the ensuing meeting, Mr. Page confirmed for Mr. Kalanick that entering the TaaS market is "one of the possibilities that [Waymo was] considering, in order to monetize, if you will, the self-driving car opportunity." (Ex. 1, Drummond Tr. at 27:23-28:2.) Mr. Drummond remained on Uber's Board for more than a year thereafter. (*Id.* at 38:3-8.)

Any suggestion that Mr. Drummond remained on Uber's board to collect competitive information from Uber for Waymo is also false. It is undisputed that Uber asked Mr. Drummond

1  to recuse himself from Board meetings starting in October 2014 – almost two years before Mr.
2  Drummond ultimately resigned from Uber's Board – because there "was a mutual understanding
3  that he probably shouldn't attend" Uber Board meetings.  (Dkt. 1088-1 at 312:21-313:21.)
4  According to Mr. Kalanick, Uber asked Mr. Drummond to recuse himself because Mr. Drummond
5  told Uber that "Google is intending to compete with Uber in the ridesharing space.  And that the
6  efforts were substantive enough and serious enough that he felt compelled to tell [Uber] that that
7  was happening."  (*Id.* at 314:4-14.)  Uber does not dispute that Mr. Drummond did not have access
8  to Uber confidential information for almost two years before he ultimately resigned from Uber's
9  Board.
10       Although Defendants have not served a witness list or exhibit list yet, Waymo expects
11 Defendants to submit evidence and testimony to attempt to demonstrate that Mr. Drummond
12 somehow acted improperly while serving on Uber's Board.  Even before Mr. Drummond's
13 deposition, Defendants telegraphed their intention to pursue this theory in their opposition to
14 Waymo's discovery brief regarding certain Apex depositions.  Justifying their request to depose
15 Mr. Drummond, Defendants argued, "Mr. Drummond held a position on Uber's Board of
16 Directors from 2013 through 2016.  During that time, Mr. Drummond had access to Uber's
17 business plans and strategy for its self-driving car program."  (Dkt. 811 at 2-3.)  And during Mr.
18 Drummond's deposition, Defendants asked questions about the existence of Mr. Drummond's
19 fiduciary duties to Uber.  (Ex. 1, Drummond Tr. at 14:12-15 ("Q. And would you agree that while
20 you served on Uber's board of directors, you owed a duty of loyalty to Uber?  A. Yes, that's
21 right.")  Defendants also asked questions about Waymo's plans to enter the TaaS market (*id.* at
22 14:16 ("Q. When did Google first begin discussions about the possibility of entering the TaaS
23 market?"), and about whether Waymo's plans to participate in the TaaS market affected Mr.
24 Drummond's fiduciary duties to Uber.  (*Id.* at 16:25-10 ("Q. Do you recall that the issue of Google
25 participating in the TaaS market came up during the time that you served on Uber's board?  A.
26 Yes, I recall that that topic came up.  Q. And when it came up, did it cause you concern that you
27 might have a conflict, given that you were the top legal officer for Google and at the same time a
28 board member for Uber?  A.  It caused me to – it caused us to have discussions about it at – at

some point in time, yes.").)  Given these questions it seems Defendants may argue Mr. Drummond stayed on Uber's Board while Waymo made plans to enter the TaaS market as a play to collect competitive information from Uber via Mr. Drummond.  Defendants' meritless and prejudicial speculation and accusations have no relevance to this case and should be excluded.

## ARGUMENT

Waymo does not seek to exclude the fact that Mr. Drummond sat on Uber's Board, the fact that Mr. Drummond resigned from Uber's Board, or even evidence regarding Mr. Drummond's reasons for resigning from Uber's Board.  What Waymo seeks to exclude is any allegation that Waymo, Alphabet or Mr. Drummond somehow acted improperly while Mr. Drummond was a member of Uber's Board.

Any evidence that Mr. Drummond (or Waymo) acted improperly by virtue of Mr. Drummond being on Uber's board is demonstrably false, as discussed above, and irrelevant.  Mr. Drummond (and Waymo) are not on trial for breach of fiduciary duty.  Uber has never formally alleged that Mr. Drummond breached any ethical obligations to Uber, and Uber should not be allowed to insinuate that he has to the jury.  Uber has also never alleged (or identified or elicited any evidence) that Mr. Drummond passed competitive Uber information to Waymo, and that allegation has no place in Waymo's trade secret misappropriation suit against Uber.  FRE 401, 402; *Nationwide Trans. Finance v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1063 (9th Cir. 2008) (excluding evidence because "a party is not entitled to present evidence on an erroneous or inapplicable legal theory to the jury, even if the evidence might have been relevant in some conceivable manner").  Defendants may argue that information regarding Waymo's plan to enter the TaaS market and compete with Uber is relevant to damages, but Waymo is not seeking to preclude Defendants from introducing evidence of Waymo's plan, or even evidence that Mr. Drummond resigned in part because of Waymo's plan.  Waymo has also never disputed that it will likely compete with Uber directly in the future; Uber does not need to insinuate that Waymo or Mr. Drummond did anything improper to make this point to the jury.  Because this evidence is irrelevant and not "of consequence in determining the action," it should be excluded.  FRE 401(b).

1  Any argument that Mr. Drummond (or Waymo) acted improperly by virtue of Mr.
2 Drummond's existence on the Board is also unfairly prejudicial under FRE 403.  Uber's
3 inflammatory allegations regarding Mr. Drummond, an executive at Waymo's parent company,
4 are untrue and irrelevant to any issue in the case.  Instead, to the extent Uber insists on making
5 these allegations, they would be for the sole purpose of sullying Mr. Drummond, Waymo and
6 Alphabet.  Courts frequently exclude unrelated allegations like this, particularly where they would
7 unfairly prejudice one side, or where they would confuse and mislead the jury.  *MJC America Ltd.*
8 *v. Gree Electric Appliances of Zhuhai*, 2015 WL 12743880, at *7 (C.D. Cal. 2015) (excluding
9 evidence of an unrelated lawsuit under FRE 403 because it would be "unfairly prejudicial, confuse
10 the issues, and waste time"); *Rondor Music Inetern. Inc. v. TVT Records LLC*, 2006 WL 5105272,
11 at *10 (C.D. Cal. 2006) (excluding evidence of a prior, unrelated case under FRE 403 because it
12 could "potentially result in unfair prejudice to plaintiffs or confusion of the issues").  Defendants
13 may argue that evidence of Mr. Drummond's alleged improper conduct is relevant to normalize
14 other aspects of this case, for example because Mr. Levandowski breached certain ethical
15 obligations that he owed to Google or because Mr. Levandowski brought Google competitive
16 intelligence to Uber.  But that relevance argument only highlights the severe prejudice to Waymo
17 of letting this evidence in.  Moreover, even though Mr. Drummond did not have access to Uber
18 confidential information for over a year and a half before he resigned from Uber's Board, forcing
19 Waymo to call Mr. Drummond at trial to explain these issues would be a waste of time, and
20 unnecessarily confusing to the jury.

## **CONCLUSION**

For the foregoing reasons, Waymo's Motion in Limine No. 13 should be granted.

DATED:  September 7, 2017            QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC