1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Tel:   415.268.7000 / Fax:   415.268.7522
5
   KAREN L. DUNN (*Pro Hac Vice*)
6  kdunn@bsfllp.com
   HAMISH P. M. HUME
7  hhume@bsfllp.com
   BOIES SCHILLER FLEXNER LLP
8  1401 New York Avenue, N.W.
   Washington, D.C.  20005
9  Tel:   202.237.2727 / Fax:   202.237.6131

10 WILLIAM CARMODY (*Pro Hac Vice*)
   bcarmody@susmangodfrey.com
11 SUSMAN GODFREY LLP
   1301 Avenue of the Americas, 32nd Floor
12 New York, NY 10019-6023
   Tel.:  212.336.8330 / Fax.:  212.336.8340
13
14 Attorneys for Defendants
   UBER TECHNOLOGIES, INC. and OTTOMOTTO LLC
15
   NEEL CHATTERJEE (SBN 173985)
16 nchatterjee@goodwinlaw.com
   GOODWIN PROCTER LLP
17 135 Commonwealth Drive
   Menlo Park, California 94025
18 Tel.:  650.752.3100 / Fax.:  650.853.1038

19 Attorneys for Defendant OTTO TRUCKING LLC

20                          UNITED STATES DISTRICT COURT
21                         NORTHERN DISTRICT OF CALIFORNIA
                              SAN FRANCISCO DIVISION
22

| | |
|---|---|
| WAYMO LLC, | Case No. 3:17-cv-00939-WHA |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO WAYMO'S MOTION *IN LIMINE* NO. 13 TO EXCLUDE ALLEGATIONS THAT DAVID DRUMMOND ACTED IMPROPERLY** |
| v. | |
| UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
| Defendants. | Judge:   The Honorable William Alsup<br>Trial Date: October 10, 2017 |

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Waymo does not challenge the admissibility of evidence that (1) Google joined Uber's Board of Directors without informing Uber that it had already decided to enter the transportation as-a-service ("TaaS") market; (2) Uber learned of Google's advancements in TaaS from public sources rather than Google; and (3) each time Uber asked about Google's plans to compete with Uber, Google failed to give a straight answer, deferring on the grounds that "competition is a long way off" and the companies should "continue to work on [their] partnership." Goodman Decl., Ex. 53 (Drummond Dep.) at 24:23-25:7.) All the while Google knew that it did not plan to partner with Uber and was already strategizing about ███████████████████████
███

Instead of challenging the admissibility of this evidence, Waymo only seeks to preclude Uber from suggesting that Google acted improperly. (Mot. at 1.) There is ample evidence for Uber to argue to the jury, and for the jury to conclude, that Waymo acted in bad faith by misleading Uber about its plans, including when directly asked by Uber, and that its motives for doing so were to gain a competitive advantage over a company it secretly viewed as its main rival. This evidence is relevant to Waymo's motives for bringing this case and thus relevant to both Waymo's claims and Uber's defenses. (*See* Defendants' Opp. to Mot. *In Limine* 15; Defendants' Opp. to Waymo's Mot. for Partial Summary Judgment.)

**ARGUMENT**

No later than February 2013, Google decided that the best way to commercialize its autonomous vehicle program was to enter the TaaS market. Goodman Decl., Ex. 54 (Epstein Dep.) at 31:15-36:3.) But Google did not disclose this strategy to Uber when it made a substantial investment in Uber in 2013, nor when, as a result of that investment, it placed its Chief Legal Officer, David Drummond, on Uber's Board of Directors. Instead, Uber first learned about Google's plans when Google co-founder Sergey Brin publicly suggested the possibility in May 2014 at a tech conference. (*Id.*, Ex. 53 at 17:14-20:7.) When confronted by Uber's then-CEO Travis Kalanick, Drummond told him not to worry, that "we were still deciding what we were going to do" and "any competition was a long ways off, and we had a good partnership, we should continue it." *Id.*

1          Despite Drummond's assurances to the contrary, Google continued making advances
2   toward launching a competing TaaS platform.  For example, on January 15, 2015, Kalanick
3   emailed Drummond after learning that the head of Google's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at the Detroit Auto
5   Show.  (Goodman Decl., Ex. 45.)  A few months later, Kalanick learned, again from third parties,
6   that Google was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*,
7   Ex. 33.)  Again, Drummond assured Kalanick that "competition would be a long ways off and we
8   should continue to work on our partnership."  (*Id.*, Ex. 53 at 22:2-24:7.)  By this time, however,
9   Google had already decided internally *not* to partner with Uber and instead compete with it.  (*Id.*,
10  Ex. 31, Ex. 32.)  In fact, at the same time these statements were made, Google was performing an
11  internal analysis of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*,
12  Ex. 47.)
13         Even when Drummond eventually resigned from Uber's Board, he was not fully candid.
14  He never told Uber about Google's concerns about potential misconduct on the part of
15  Levandowski and other Otto employees even though he was simultaneously ordering Google's
16  investigative team to redouble their investigative efforts, wholly motivated by the merger between
17  Otto and Uber.  (*Id.*, Ex. 41, Ex. 53 at 54:9-57:24.)
18         In trade secret cases, a plaintiff's motivation for filing suit is relevant and admissible to
19  witness credibility, a plaintiff's bad faith, damages, and several defenses.  *See* Defendants' Opp.
20  to Mot. *In Limine* 15 (citing caselaw).  And Judge Corley already held Waymo's motives are
21  relevant.  Dkt. 832 at 4.  Google's course of conduct while occupying a seat on Uber's Board, and
22  its deliberate withholding of information from Uber in particular, is relevant to the jury's
23  evaluation of Google's motivation for filing suit and the credibility of its witnesses.  Waymo's
24  motion entirely fails to address this aspect of its relevance, which courts in the Ninth Circuit have
25  held outweighs any prejudice that might accompany such evidence in trade secrets cases.
26  (Defendants' Opp. to Mot. *In Limine* No. 15.)  Google's conduct is also relevant to Defendants'
27  failure to mitigate damages defenses, which are premised in part on the failure to timely inform
28  Uber of Google's concerns about Levandowski's conduct or seek judicial intervention.

2
DEFENDANTS' OPPOSITION TO WAYMO'S MOTION *IN LIMINE* NO. 13
Case No. 3:17-cv-00939-WHA

(Defendants' Opp. to Waymo's Mot. for Partial Summ. J. at 15-17.)  Google's conduct towards Uber during Drummond's Board tenure is relevant to the credibility of Waymo's *ex post* justifications for both its failure to inform Uber and its delay in filing suit.

Waymo's arguments under Rule 403 are also wrong.  For example, Waymo's first Rule 403 argument is that whether Google acted "improperly" is "irrelevant" and "untrue."  The relevance and supporting evidence is discussed at length above and Google is free to challenge Uber's evidence and argument with its own witnesses and evidence.  When it comes to prejudice, Waymo claims that such evidence and argument would "sully[] Mr. Drummond, Waymo, and Alphabet."  (Mot. at 4.)  As to "sullying," all evidence that is unfavorable for a party tends to prejudice it to some extent.  *E.g.*, *U.S. v. Blitz*, 151 F.3d 1002, 1008 (9th Cir. 1998).  To be excluded under Rule 403, however, the prejudice must both be "unfair" and substantially outweigh its probative value.  Waymo has not demonstrated how evidence that Google withheld information from Uber while occupying a seat on its Board is "unfairly prejudicial."  Just because evidence "hurts Waymo" is not "a good enough reason to exclude it." 7/26 Hr'g Tr. at 61:12-14.

Waymo also suggests that argument about Drummond's Board tenure would "confuse" the jury, citing *Nationwide Trans. Finance v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1063 (9th Cir. 2008).  But in *Nationwide*, the Ninth Circuit affirmed a district court ruling that a party cannot present evidence about an agency theory of liability where the district court held that no agency relationship existed.  Presenting the jury with an invalid theory of liability could have confused the jury about the bases on which it could find liability.  *Id.*  Here, Uber has asserted no claims and it will not argue that Drummond or Google has any type of liability to Uber.  The jury will not be confused that this evidence relates to some undisclosed claim against Drummond.  To the contrary, they will wonder, like any other objective observer, why Drummond, then an Uber Board member, did not pick up the phone and call Kalanick to warn him that Uber had just entered into a merger agreement with a company whose employees Google was investigating for possible employment agreement breaches and trade secret misappropriation.  These deficiencies in Waymo's story are directly relevant to its claims and Uber's defenses.

**CONCLUSION**

For the foregoing reasons, Waymo's Motion *In Limine* 13 should be denied.

Dated: September 13, 2017

MORRISON & FOERSTER LLP
BOIES SCHILLER FLEXNER LLP
SUSMAN GODFREY LLP

By:  */s/ Karen L. Dunn*
          KAREN L. DUNN

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC

GOODWIN PROCTER LLP

By:  */s/ Neel Chatterjee*
          NEEL CHATTERJEE

Attorneys for Defendant
OTTO TRUCKING LLC

**ATTESTATION OF E-FILED SIGNATURE**

I, Karen L. Dunn, am the ECF User whose ID and password are being used to file this Motion *in Limine*. In compliance with General Order 45, X.B., I hereby attest that Neel Chatterjee has concurred in this filing.

          */s/ Katen L. Dunn*
              Karen L. Dunn