# EXHIBIT 13

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1              UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                 SAN FRANCISCO DIVISION

4                      --oOo--

5    WAYMO LLC,

6                   Plaintiff,

                                      Case

7    vs.                        No. 3:17-cv-00939-WHA

8    UBER TECHNOLOGIES, INC.;

     OTTOMOTTO LLC; OTTO TRUCKING LLC,

9

                    Defendants.

10   _____/

11

12

13

14      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

15

16    VIDEOTAPED DEPOSITION OF JOHN WILLIAM GURLEY

17            THURSDAY, AUGUST 24, 2017

18

19

20

21   Reported by:

22   Anrae Wimberley

23   CSR No. 7778

24   Job No.  2687934

25   PAGES 1 - 182

                                        Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3               SAN FRANCISCO DIVISION

4                    --oOo--

5   WAYMO LLC,

6             Plaintiff,

                                  Case

7   vs.                    No.  3:17-cv-00939-WHA

8   UBER TECHNOLOGIES, INC.;

    OTTOMOTTO LLC; OTTO TRUCKING LLC,

9

              Defendants.

10  _____/

11

12

13      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

14

15          Transcript of video-recorded deposition of

16  JOHN WILLIAM GURLEY taken at Morrison & Foerster LLP,

17  425 Market Street, 33rd Floor, San Francisco,

18  California, beginning at 8:37 a.m. and ending at 1:09

19  p.m. on Thursday, August 24, 2017, before Anrae

20  Wimberley, Certified Shorthand Reporter No. 7778.

21

22

23

24

25

                                        Page  2

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | know where that technology was evolving relative to | 08:58:16 |
| 2 | our service. | 08:58:17 |
| 3 | Q.   And how often did this come up with the | 08:58:21 |
| 4 | board? | 08:58:22 |
| 5 | A.   I would say only -- around Carnegie Mellon | 08:58:39 |
| 6 | and Otto were the only two times where it was | 08:58:43 |
| 7 | discussed in depth.  I don't think it was a frequent | 08:58:50 |
| 8 | topic of every board meeting. | 08:58:52 |
| 9 | Q.   Are you still with -- on the board at Uber? | 08:59:05 |
| 10 | A.   I am not. | 08:59:06 |
| 11 | Q.   When did you cease being on the board? | 08:59:08 |
| 12 | A.   I believe it was mid to late June of this | 08:59:17 |
| 13 | year. | 08:59:17 |
| 14 | Q.   And I may have asked this and, if I did, I | 08:59:22 |
| 15 | apologize. | 08:59:22 |
| 16 | But when did you first become a board member? | 08:59:25 |
| 17 | A.   In January of 2011. | 08:59:27 |
| 18 | Q.   When you were a member of the board, is it a | 08:59:33 |
| 19 | fair statement to say that you were very engaged with | 08:59:37 |
| 20 | the company? | 08:59:41 |
| 21 | MR. FLUMENBAUM:  Objection as to form. | 08:59:51 |
| 22 | THE WITNESS:  I'll answer yes.  There's a question | 08:59:54 |
| 23 | as to whether -- like relative to what, you know. | 08:59:58 |
| 24 | BY MR. VERHOEVEN: | 08:59:58 |
| 25 | Q.   Is it fair to say that you were the most | 09:00:00 |

Page 26

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
                                                          09:12:26




 8       MR. FLUMENBAUM:  Objection as to form.          09:12:43




14    BY MR. VERHOEVEN:                                   09:13:00










25          Do you see that?                              09:13:43
```

Page 35

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1      A.   I don't recall any.                   10:32:33

 2      Q.   Who comprised the executive team at that   10:32:38

 3   time?                                          10:32:38

 4      A.   I don't know if I'll get them all. ███  ███

     ██████████████████████████████████  ███  ███

     ██  ████████  ████████  ████████  ███

     ██  ██████████  ████████  ████████  ███

     ██  ████████████████████  I'm         10:33:26

 9   probably leaving somebody out.                 10:33:28

10      Q.   Was Travis on the team?                10:33:30

11      A.   Yeah, I mean, he's CEO, so, yeah. ████  10:33:37

12   may have left by then.                         10:33:39

13      Q.   Did Mr. Kalanick agree, when you expressed   10:33:45

14   this to the executive team, that Mr. Levandowski   10:33:48

15   should be terminated?                          10:33:52

16      A.   I don't recall if I had a direct discussion   10:33:55

17   with him, although probably at a board level, it was   10:33:58

18   the general understanding of the team that he did not   10:34:04

19   want to terminate Anthony.                     10:34:06

20      Q.   Do you recall what the reasons -- that he   10:34:17

21   stated for why he did not --                   10:34:19

22      A.   Yeah, the statement I remember is that he   10:34:21

23   didn't do anything wrong, so why should we terminate   10:34:24

24   him?                                           10:34:25

25      Q.   And what was said in response to that?  And   10:34:32
```

Page 83

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | if you can recall, who said it?  For example, did | 10:34:42 |
| 2 | someone say, then why is he taking the Fifth? | 10:34:45 |
| 3 | MR. BRILLE:  Object to form. | 10:34:47 |
| 4 | THE WITNESS:  I can certainly say that my opinion | 10:34:53 |
| 5 | at that moment in time was that his taking the Fifth | 10:34:56 |
| 6 | should result in his termination, based on my best | 10:35:02 |
| 7 | knowledge of how that situation should be dealt with. | 10:35:06 |
| 8 | BY MR. VERHOEVEN: | 10:35:06 |
| 9 | Q.   And did -- you referenced conversations with | 10:35:10 |
| 10 | the board on this subject? | 10:35:12 |
| 11 | A.   Yes. | 10:35:12 |
| 12 | Q.   How many such conversations were there? | 10:35:16 |
| 13 | A.   I can't remember specifically, but my general | 10:35:21 |
| 14 | recollection is that it spanned multiple board | 10:35:24 |
| 15 | meetings. | 10:35:31 |
| 16 | Q.   And your position to the board was that he | 10:35:34 |
| 17 | should be terminated? | 10:35:35 |
| 18 | A.   Yes. | 10:35:35 |
| 19 | Q.   And you made that clear on the first of these | 10:35:41 |
| 20 | multiple board meetings? | 10:35:43 |
| 21 | A.   Once I'd gotten up to speed and had proper | 10:35:48 |
| 22 | knowledge of what I thought was the best to do, | 10:35:55 |
| 23 | which -- as I said earlier, there was a time window | 10:35:58 |
| 24 | where that happened.  So it wasn't -- my voicing of | 10:36:06 |
| 25 | this opinion wasn't immediate, like right after he | 10:36:09 |

Page 84

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | him and terminate, for the reasons that I've | 10:46:50 |
| 2 | discussed. | 10:46:51 |
| 3 | Q.   Right. | 10:46:51 |
| 4 | So -- but I'm asking you specifically, at the | 10:46:54 |
| 5 | board meeting, Kalanick repeated his view -- | 10:46:59 |
| 6 | A.   Right. | |
| 7 | Q.   -- that Levandowski didn't do anything | 10:47:02 |
| 8 | wrong -- | 10:47:03 |
| 9 | A.   I think I understand your question? | |
| 10 | I don't remember if there were specific | 10:47:06 |
| 11 | conversations that said, well, if he didn't do | 10:47:08 |
| 12 | anything wrong, why would he plead the Fifth?  I don't | 10:47:10 |
| 13 | remember if that happened.  It might have. | 10:47:13 |
| 14 | Q.   Well, do you remember -- was there response | 10:47:15 |
| 15 | to Mr. Kalanick at the meeting, after he made that | 10:47:19 |
| 16 | statement, just generally?  There was a discussion; | 10:47:25 |
| 17 | right? | 10:47:26 |
| 18 | A.   Yeah, I think there was a discussion and I | 10:47:28 |
| 19 | think -- and I don't recall exactly who chimed in, but | 10:47:32 |
| 20 | there was others, like me, that felt that taking the | 10:47:38 |
| 21 | Fifth should be dealt with. | 10:47:40 |
| 22 | Q.   And who were those people? | 10:47:42 |
| 23 | A.   I just said I don't recall exactly who was on | 10:47:45 |
| 24 | that point of view. | 10:47:46 |
| 25 | Q.   Do you remember anyone on the board that you | 10:47:49 |

Page 94

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | order that was public? | 10:59:58 |
| 2 | A.   I didn't have any perspectives that were | 11:00:08 |
| 3 | outside of a discussion from counsel on that topic. | 11:00:13 |
| 4 | Q.   Why didn't Uber fire Mr. Levandowski upon the | 11:00:20 |
| 5 | issuance of the preliminary injunction? | 11:00:23 |
| 6 | A.   I can't speak to that because I wasn't in a | 11:00:32 |
| 7 | position to have authority to make that decision. | 11:00:35 |
| 8 | Q.   Who was? | 11:00:36 |
| 9 | A.   Presumably Travis, the CEO. | 11:00:39 |
| 10 | Q.   So the board didn't have authority to direct | 11:00:42 |
| 11 | that -- I thought you -- withdrawn. | 11:00:46 |
| 12 | I thought you previously mentioned that you | 11:00:48 |
| 13 | had recommended that he be terminated -- | 11:00:50 |
| 14 | A.   I had.  I had. | 11:00:52 |
| 15 | Q.   -- at a board meeting. | 11:00:53 |
| 16 | A.   Yeah. | 11:00:54 |
| 17 | Q.   But the board didn't have authority to order | 11:00:56 |
| 18 | that? | 11:00:57 |
| 19 | A.   The board did not order that, if that's your | 11:01:00 |
| 20 | question. | 11:01:00 |
| 21 | Q.   But they had the authority to? | 11:01:03 |
| 22 | A.   I suppose they could have made a motion and | 11:01:06 |
| 23 | voted to do that. | 11:01:08 |
| 24 | Q.   And you encouraged the board to do that? | 11:01:11 |
| 25 | A.   I encouraged the board to terminate once I | 11:01:13 |

Page 102

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    had an understanding of what my interpretation was of       11:01:18

2    him pleading the Fifth. ███████████████████    ███████████    11:01:24

    ██  ████████████████████████████████████████████████    ████████████

    ██  ██████████████████    ████████████

5        Q.   After the issuance of the preliminary              11:01:36

6    injunction order, did you have any discussions with         11:01:39

7    Mr. Kalanick about terminating Mr. Levandowski?             11:01:42

8        A.   Not specifically related to that event.            11:01:47

9        Q.   Okay.  So it didn't cause you to have any          11:01:50

10   more conversations with Mr. Kalanick?                       11:01:54

11       A.   No.  But I had already determined that I           11:01:56

12   thought the best course of action was termination.  So     11:01:58

13   like I was not more compelled; I was already               11:02:02

14   compelled.                                                 11:02:04

15       Q.   Did you discuss the preliminary injunction        11:02:05

16   order with Mr. Kalanick and repeat your                    11:02:09

17   recommendation?                                            11:02:10

18       A.   Not outside of a privileged conversation, no.     11:02:14

19       Q.   Was there a board meeting about the               11:02:19

20   preliminary injunction?                                    11:02:20

21       A.   I don't remember if there was one called.  I      11:02:23

22   don't think so.  There were lots of board meetings at      11:02:27

23   this moment in time.                                       11:02:29

24       Q.   Do you recall receiving -- withdrawn.             11:02:34

25           Did you ask to see the due diligence report        11:02:39

                                                    Page 103

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   And it's possible you communicated that to | 11:41:22 |
| 2 | Mr. Levandowski -- or to Mr. Kalanick? | 11:41:25 |
| 3 | A.   It's possible, but I don't have -- | 11:41:26 |
| 4 | MR. FLUMENBAUM:  Not Levandowski. | 11:41:27 |
| 5 | THE WITNESS:  Right. | 11:41:28 |
| 6 | I don't have specific recollection of having | 11:41:31 |
| 7 | done that, but it's possible. | 11:41:33 |
| 8 | BY MR. VERHOEVEN: | 11:41:33 |
| 9 | Q.   It's more than likely; right? | 11:41:35 |
| 10 | A.   I don't know. | 11:41:37 |
| 11 | MR. FLUMENBAUM:  Objection.  Objection. | 11:41:38 |
| 12 | MR. VERHOEVEN:  Do you want to take a break? | 11:41:42 |
| 13 | MR. FLUMENBAUM:  Sure.  Let's take a short break. | 11:41:44 |
| 14 | THE VIDEOGRAPHER:  This marks the end of DVD No. 2 | 11:41:47 |
| 15 | in the deposition of William Gurley.  We're off the | 11:41:49 |
| 16 | record at 11:41 a.m. | 11:41:51 |
| 17 | (Recess taken.) | 11:41:51 |
| 18 | (Plaintiff's Exhibit 915 was marked.) | 11:52:45 |
| 19 | THE VIDEOGRAPHER:  Back on the record. | 11:52:53 |
| 20 | This the beginning of DVD No. 3, and the time | 11:52:56 |
| 21 | is 11:52 a.m. | 11:52:58 |
| 22 | BY MR. VERHOEVEN: | 11:52:58 |
| 23 | Q.   By May of 2017, were you aware that some | 11:53:07 |
| 24 | investors of Uber wanted Mr. Kalanick to resign as | 11:53:13 |
| 25 | CEO? | 11:53:14 |

Page 132

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



3       MR. BRILLE:  I'm going to note my objection to      12:07:59

4   this exhibit, to the extent it is unsigned.  And it is   12:08:03

5   unclear to me, at least, what this document is.          12:08:06

6       THE WITNESS:  Okay.                                  12:08:09

7   BY MR. VERHOEVEN:                                        12:08:09

Page 144



Page 145

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 152

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1              Do you see that?                      12:30:24

2         A.   Yes.                                  12:30:25

3         Q.   And this refers, in part, to your prior   12:30:30

4   testimony that if Benchmark had known about the   12:30:35

5   information contained in the Stroz report, it would  12:30:37

6   never have agreed to this amendment, right?      12:30:45

7         MR. BRILLE:  Object to the form.           12:30:46

8         MR. FLUMENBAUM:  Object to the form.       12:30:47

9              You can answer.

10  BY MR. VERHOEVEN:

11        Q.   Well, you're correct.  Let me rephrase.   12:30:51

12             This refers to your prior testimony that  12:30:54

13  Benchmark never would have approved the transaction  12:30:56

14  had it been aware of the Stroz report, correct?  12:31:02

15        MR. BRILLE:  Same objection.               12:31:03

16        MR. FLUMENBAUM:  Objection as to form, but you  12:31:05

17  may --                                           12:31:06

18        THE WITNESS:  The only clarification I would make  12:31:08

19  is that there are many other matters, also.      12:31:10

20  BY MR. VERHOEVEN:

21        Q.   Yeah.

22        A.   But this is one of those.  Yes, correct.   12:31:14

23        Q.   But it's your contention that Benchmark would  12:31:18

24  not have approved the amended certificate of     12:31:18

25  incorporation referenced here, or the voting     12:31:22
```

Page 160

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | With respect to the Otto acquisition, there's | 12:33:57 |
| 2 | actually more detail later in the complaint.  But it's | 12:34:00 |
| 3 | become public knowledge, not involving the Stroz | 12:34:05 |
| 4 | report, that at the time the board was asked to | 12:34:09 |
| 5 | approve this, that -- that Travis and other members of | 12:34:13 |
| 6 | the management team had knowledge that there were five | 12:34:16 |
| 7 | disks that were in Anthony's possession, and that he | 12:34:23 |
| 8 | said there was Google information on those disks.  So | 12:34:25 |
| 9 | that's now in the public record. | 12:34:29 |
| 10 | When you look at the -- we've already been | 12:34:32 |
| 11 | through it.  But you look at the deal, and the fact | 12:34:35 |
| 12 | that so much of it weighed on him and the fact that | 12:34:39 |
| 13 | there were large indemnity provisions put aside | 12:34:45 |
| 14 | specifically for him, I don't know of a way you could | 12:34:50 |
| 15 | possibly present that to a board ▬▬▬▬▬ ▬▬▬▬ | 12:35:02 |
| ▬ | ▬▬▬▬▬▬▬▬e and -- and that be okay.  Like, I -- I | |
| 17 | can't fathom that. | 12:35:05 |
| 18 | BY MR. VERHOEVEN: | |
| 19 | Q.   When you referred to "him," you're referring | 12:35:08 |
| 20 | to Mr. Levandowski, right, in that answer? | 12:35:10 |
| 21 | MR. BRILLE:  Object to form. | 12:35:13 |
| 22 | THE WITNESS:  It's in the public record that -- | 12:35:15 |
| 23 | that the Uber executives were aware -- I'll -- I'll | 12:35:17 |
| 24 | try not to use pronouns -- were aware that Anthony | 12:35:21 |
| 25 | Levandowski had the five disks. | 12:35:24 |

Page 163

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        A.   Yes, this section.  That's fair.  Correct.     12:38:46

 2        Q.   You've referenced there's a -- I'm sorry.      12:39:07

 3   The complaint references:                                12:39:12

 4             "Kalanick praised Levandowski as one of the    12:39:15

 5   world's leading autonomous engineers and an             12:39:20

 6   entrepreneur with a real sense of urgency.              12:39:24

 7             "Kalanick further described Levandowski as     12:39:26

 8   his brother from another mother."                       12:39:30

 9             The allegation is -- and your belief is --     12:39:34

10   that he was saying all that, but withholding the        12:39:37

11   information he had from the Stroz investigation;        12:39:41

12   right?                                                  12:39:41

13        MR. BRILLE:  Object to form.                       12:39:44

14        MR. FLUMENBAUM:  Object to form.  You can try to   12:39:46

15   answer that.                                            12:39:49

16        THE WITNESS:  These are -- these are taken from --  12:39:50

17   from -- as you can see, from public statements that he   12:39:53

18   made.                                                   12:39:54

19             His praise for Anthony in these public venues  12:39:59

20   is consistent with what he presented at the board       12:40:03

21   level, and so there's no inconsistency here.            12:40:06

22             I -- and as you -- as you assert, he did not   12:40:12

23   disclose these other details, you know.  And I -- and   12:40:17

24   I had mentioned, and they're later in here in the       12:40:20

25   complaint, that some of that is now public with regard  12:40:23
```

Page 166

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | to the five-disk matter. | 12:40:26 |
| 2 | BY MR. VERHOEVEN: | 12:40:26 |
| 3 | Q.   The last sentence of this paragraph says: | 12:40:29 |
| 4 | "In discussing the Otto transaction in 2016, | 12:40:32 |
| 5 | Kalanick repeatedly emphasized to Gurley and other | 12:40:36 |
| 6 | board members that Uber's acquisition of Otto, | 12:40:39 |
| 7 | employment of Anthony Levandowski, would be | 12:40:41 |
| 8 | transformative for Uber's business." | 12:40:44 |
| 9 | Do you see that? | 12:40:45 |
| 10 | A.   I do. | 12:40:46 |
| 11 | Q.   What is that referring to? | 12:40:48 |
| 12 | A.   Once again, consistent with what we discussed | 12:40:53 |
| 13 | earlier, there was a -- a big part of the argument for | 12:40:57 |
| 14 | why we needed to do this transaction was to employ | 12:41:01 |
| 15 | Anthony Levandowski, who -- who Mr. Kalanick believed | 12:41:04 |
| 16 | was one of the leading experts on autonomous vehicles | 12:41:07 |
| 17 | in -- in the -- in the world. | 12:41:10 |
| 18 | Q.   Was employing Anthony Levandowski worth | 12:41:14 |
| 19 | $680 million? | 12:41:17 |
| 20 | MR. BRILLE:  Object to form. | 12:41:17 |
| 21 | MR. FLUMENBAUM:  Object to form.  We've sort of | 12:41:19 |
| 22 | been over this. | 12:41:20 |
| 23 | You can answer it again. | 12:41:22 |
| 24 | THE WITNESS:  Yeah, I don't -- I don't mind going | 12:41:24 |
| 25 | over it again. | 12:41:25 |

Page 167

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Do you see it's sprinkled through the | 12:54:57 |
| 2 | paragraph there? | 12:54:58 |
| 3 | A.   Yes. | 12:54:58 |
| 4 | Q.   When we testified earlier about this -- I | 12:55:02 |
| 5 | don't want to go over it again -- I think you just | 12:55:05 |
| 6 | said -- you and I just said "the Stroz report." | 12:55:09 |
| 7 | But were you referencing, specifically in | 12:55:11 |
| 8 | this time period, the interim findings of the Stroz | 12:55:14 |
| 9 | investigation? | 12:55:16 |
| 10 | MR. FLUMENBAUM:   Objection as to form. | 12:55:19 |
| 11 | BY MR. VERHOEVEN: | 12:55:19 |
| 12 | Q.   When you testified about if something had | 12:55:22 |
| 13 | been disclosed, if the Stroz report had been | 12:55:25 |
| 14 | disclosed, more accurately what you meant is if the | 12:55:28 |
| 15 | interim findings of the Stroz report -- of the Stroz | 12:55:30 |
| 16 | investigation had been disclosed; is that right? | 12:55:33 |
| 17 | A.   This particular complaint was based on all | 12:55:44 |
| 18 | that information that was in the public record. | 12:55:46 |
| 19 | There are documents related to this lawsuit | 12:55:50 |
| 20 | that highlight that, as of this date, there were these | 12:55:54 |
| 21 | interim findings available. | 12:55:55 |
| 22 | Q.   Right. | 12:55:59 |
| 23 | A.   And we're merely highlighting that those were | 12:55:59 |
| 24 | never disclosed to the board. | 12:56:01 |
| 25 | Q.   Okay.   I direct your attention to paragraph | 12:56:12 |

Page 171

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.    Nina Qi and Cameron. | 12:59:24 |
| 2 | Q.    So with respect to the Waymo dispute or | 12:59:29 |
| 3 | the -- withdrawn. | 12:59:30 |
| 4 | With respect to the Otto acquisition, this | 12:59:35 |
| 5 | phrase you interpret to reference those two | 12:59:37 |
| 6 | individuals? | 12:59:38 |
| 7 | A.    Yes. | 12:59:38 |
| 8 | Q.    Has either of those two individuals been | 12:59:47 |
| 9 | terminated, to your knowledge? | 12:59:49 |
| 10 | A.    No. | 12:59:49 |
| 11 | Q.    All right. | |
| 12 | MR. FLUMENBAUM:  Can I have a -- all right. | 13:00:05 |
| 13 | Forget it.  Go ahead. | 13:00:07 |
| 14 | MR. VERHOEVEN:  So what did you want to talk to | 13:00:10 |
| 15 | him about? | 13:00:10 |
| 16 | MR. FLUMENBAUM:  No, just go ahead. | 13:00:13 |
| 17 | MR. VERHOEVEN:  Okay. | 13:00:13 |
| 18 | BY MR. VERHOEVEN: | |
| 19 | Q.    There came a time in which you resigned from | 13:00:16 |
| 20 | the board of Uber? | 13:00:17 |
| 21 | A.    Correct. | 13:00:17 |
| 22 | Q.    When was that, roughly? | 13:00:19 |
| 23 | A.    I think it was a couple of days after Travis | 13:00:27 |
| 24 | signed the resignation letter we've already looked at. | 13:00:32 |
| 25 | Q.    Why did you resign? | 13:00:45 |

Page 174

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.    The members of -- of our partnership and I | 13:00:49 |
| 2 | had a lengthy discussion about trying to -- whether or | 13:00:56 |
| 3 | not it made sense to swap out the board member that | 13:01:00 |
| 4 | represented Benchmark with Uber, in an effort to try | 13:01:04 |
| 5 | and move things forward in a positive direction. | 13:01:08 |
| 6 | The -- the conversations and back and forth | 13:01:13 |
| 7 | and events that led to the meeting in Chicago, I think | 13:01:16 |
| 8 | it's safe to say, had a strain on the relationship | 13:01:21 |
| 9 | between myself and -- and Mr. Kalanick.  And it was | 13:01:29 |
| 10 | merely a decision from our firm to try and put a new | 13:01:35 |
| 11 | foot forward to try and create kind of a new day and | 13:01:39 |
| 12 | new relationship with the board. | 13:01:41 |
| 13 | Q.    Did you have any discussions with anyone at | 13:01:45 |
| 14 | Uber about your resignation before you resigned? | 13:01:48 |
| 15 | A.    I did not. | 13:01:49 |
| 16 | Q.    What about with other board members? | 13:01:51 |
| 17 | A.    I did not. | 13:01:53 |
| 18 | Q.    Have you had any conversations with anybody | 13:02:01 |
| 19 | at Uber since you've resigned from the board? | 13:02:04 |
| 20 | A.    Yeah.  There were -- there were numerous | 13:02:04 |
| 21 | conversations, as part of the handoff process I was | 13:02:13 |
| 22 | involved in, all of those committees.  I wanted to | 13:02:16 |
| 23 | make sure that -- that my partner got the benefit of | 13:02:19 |
| 24 | the -- you know, the transfer of information, that | 13:02:23 |
| 25 | kind of thing.  We had a lot of meetings to make sure | 13:02:26 |

Page 175

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1          FEDERAL CERTIFICATE OF DEPOSITION OFFICER

2          I, ANRAE WIMBERLEY, CSR NO. 7778, do hereby
declare:

3          That, prior to being examined, the witness named
in the foregoing deposition was by me duly sworn

4     pursuant to Section 30(f)(1) of the Federal Rules of
Civil Procedure and the deposition is a true record of

5     the testimony given by the witness;

6          That said deposition was taken down by me in
shorthand at the time and place therein named and

7     thereafter reduced to text under my direction;

8          --X---    That the witness was requested to
review the transcript and make any changes to the

9     transcript as a result of that review pursuant to
Section 30(e) of the Federal Rules of Civil Procedure;

10         -----    No changes have been provided by the
witness during the period allowed;

11         -----    The changes made by the witness are

12    appended to the transcript;

13         -----    No request was made that the transcript
be reviewed pursuant to Section 30(e) of the Federal

14    Rules of Civil Procedure.

15         I further declare that I have no interest in the
event of the action.

16         I declare under penalty of perjury under the laws

17    of the United States of America that the foregoing is
true and correct.

18         WITNESS my hand this 25th day of August, 2017.

19

20

21

22

23

24

25         ANRAE WIMBERLEY, CSR NO. 7778

                                        Page 182