QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>        Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S<br>OPPOSITION TO DEFENDANTS'<br>MOTION IN LIMINE 22**<br><br><br>Date:        September 27, 2017<br>Time:       8:00 a.m.<br>Ctrm:      8, 19th Floor<br>Judge:     Honorable William H. Alsup<br>Trial Date:  October 10, 2017 |

1    Uber's MIL attempts to block highly relevant testimony about prior acts under the cloak of the

2    later-filed Benchmark complaint.  Contrary to Uber's representations that he has no personal

3    knowledge, Bill Gurley was a Director of Uber from January 2011 until June 2017.  He attended the

4    April 11, 2016 meeting where Uber's Board unanimously approved the Otto deal based on a

5    presentation made by then-CEO Travis Kalanick where Kalanick represented to the Board that the

6    Stroz investigation had come up "███████".  Gurley later obtained access to the diligence report and was

7    surprised and angry that Kalanick had misrepresented the results of the investigation.  He testified that

8    had he known the true facts at the time, he would not have approved the Otto deal.  He also testified as

9    to several Board meetings he personally attended where he advocated that Levandowski should be

10   terminated, but that Kalanick refused.  The list of highly relevant percipient testimony goes on and

11   on.  Uber's contention that Gurley's testimony is based on his reading of that complaint, public filings

12   in this litigation, or articles in the press is simply false.  And Uber's contention that Waymo is trying

13   to insert Uber's other fiascos into this case is deliberately misleading -- Gurley's questioning was

14   limited solely to the fiasco that resulted in the present case.  Gurley's testimony about pre-Benchmark

15   complaint events should be admitted.  The complaint filed by Benchmark asserting that Kalanick

16   improperly hid evidence of stolen Google files to obtain approval of the Otto acquisition, also is

17   highly relevant and should be admitted in redacted form.

18                                          **BACKGROUND**

19   Waymo noticed Gurley's deposition on June 28.  (Ex. 1.)  On July 18, Uber moved for a

20   protective order to avoid having to produce Gurley for deposition.  (Dkt. 953.)  The Court rejected that

21   motion on July 20 and permitted Waymo to proceed with Gurley's deposition.  (Dkt. 1012 at 5:13-

22   6:14.)  After repeated requests for a deposition, on July 25 Uber tactically offered Gurley's deposition

23   on August 24 – the final day of fact discovery.  (Ex. 2.)  Uber refused to provide an earlier date for

24   Gurley's deposition.  (*See* Dkt. 1150-4 at 1.)  On August 10 – almost six weeks after Waymo noticed

25   Gurley's deposition, and three weeks after the Court ordered Uber to make him available for

26   deposition – Gurley's firm, Benchmark, filed a complaint against Kalanick in Delaware Chancery

27

28

1   Court.   (Uber Ex. 7.)   The complaint alleged fraud, and breach of duties based on, among other

2   things, Kalanick's misconduct in connection with the Otto acquisition.[1]   (*Id*. ¶¶ 31-40; 63-85**.)**

3      At Gurley's August 24 deposition,[2] counsel for Uber repeatedly permitted Gurley to testify

4   that Kalanick told the Board at the April 11 meeting approving the Otto deal that the interim Stroz due

5   diligence report had come back "██████."[3]   However, Uber instructed Gurley not to answer on grounds

6   of privilege any questions probing what exactly Kalanick told the board about this "█████" interim

7   diligence report or what the truth about the diligence process really was once Gurley had an

8   opportunity to read the Stroz Report.[4]   In spite of Uber's obstructionism, however, Gurley testified

9   that upon reading the Stroz Report, he was "upset" and "angry" that it was not disclosed to the Board

10  before the April 11 vote and that he would have objected to moving forward with the Otto transaction

11  if he had known about it at the time.   (Ex. 1 at 130:7-131:25; 129:6-130:5.)   Gurley also testified,

12  based on his involvement at the time, that Kalanick's statement "to the board ███████████████████

13  ████████████████████████████████████████████████████████████████████████████

14  ███████████████████████████████" failed to meet Kalanick's duties to Uber (*id*. at 168:23-15.)

15  and constituted a misrepresentation to the Board of Directors."[5]   (*Id*. at 150:23-151:7.)

16  **I.   GURLEY'S TESTIMONY IS RELEVANT AND ADMISSIBLE**

17     Gurley has highly relevant testimony about key issues (such as what Uber knew and when

18  Uber knew it) and the credibility of key witnesses (such as Kalanick).   The jury should hear this

19  testimony from a former Uber Board member in evaluating the evidence of Uber's trade secret

20  misappropriation and the credibility of Uber's former CEO.   Although claiming he has no relevant

21  personal knowledge, Uber admits to "his role as an Uber board member prior to his June 2017

22  resignation."   (MIL 22 at 3.)   These are exactly the areas on which Waymo examined Gurley – Board

23  ───────────────────

24  1   Uber tries to shoe-horn into its MIL references to different Quinn Emanuel attorneys' limited
    appearance in that suit on behalf of a different investor client (Sofreh LP and Stephen Russel), but
    that motion has no relevance to Uber's MIL 22 and Uber presents no actual argument it is.

25  2   Uber selectively provided only 20 pages of Gurley's deposition.   In order to provide the Court with
    a complete picture of Gurley's testimony, Waymo provides the entire transcript (Ex. 1.).

26  3   *See, e.g.*, Ex. 1 at 45:23-46:3; 56:8-13; 62:12-14); 67:2-6; 163:10-17; 164:1-7; 168:25-169:7.

27  4   *See, e.g.*, Ex. 1 at 47:5-24; 49:10-50:9; 87:20-92:11.

28  5    As indicated at the deposition (Ex. 1 at 63:7-8), now that the Federal Circuit has affirmed the
    Court's orders overruling Uber's objections, Waymo will be seeking a second deposition of Gurley.

1  meetings he attended, conversations he had with Uber Directors and executives as a Board member,

2  and interactions he had related to Uber's governance and the investor demand (made while Mr. Gurley

3  was still a Director) that Kalanick resign for misconduct connected to the Otto deal (among other

4  things). (*See generally* Ex. 1.) Uber offers no justification at all for excluding the vast majority of

5  Gurley's testimony. (*See*, *e.g.*, *id.* at 12:22-74:14.) Even for the specific events that Uber does

6  address, its arguments fail. Uber's months-long delay in firing Levandowski is highly relevant to

7  Uber's ratification of his conduct, and therefore the jury should hear Gurley's testimony that he

8  recommended firing Levandowski sooner but that Kalanick resisted (*id.* at 83:13-15) – and that the

9  Board left the ultimate decision to Kalanick even though they had the authority to order

10  Levandowski's termination and "could have made a motion and voted to do that." (*Id.* at 102:12-23.)

11  The investor letter asking Kalanick to resign based – in part – on his misconduct in connection with

12  the Otto deal is relevant to rebut Uber's theory of the case that there was nothing unusual or

13  suspicious about the acquisition, and is not hearsay or lacking foundation because Gurley was one of

14  its authors. (*Id.* at 143:22-144:2.) To be sure, this testimony is harmful to Uber, but Rule 403

15  obviously does not preclude all harmful evidence, only evidence whose probative value is

16  substantially outweighed by "unfair prejudice." Gurley's testimony is not unfair, as the evidence is

17  highly relevant and any harm is a problem created by the conduct of Uber's own executives.

18      Nor is there any basis to exclude Gurley's testimony that, for example, he would have objected

19  to the Otto transaction if he had known the truth about the Stroz Report. (Ex. 1 at 129:6-130:5.)

20  Gurley attended the April 11 Board meeting where Kalanick explained the deal's financial terms and

21  indemnity provisions and provided a report on the interim due diligence results. (Dkt. 1096-5.)

22  Gurley has also later read the Stroz Report. Therefore there is nothing speculative about his testimony

23  about what happened at the meeting and his reaction upon reading what the report actually said. Nor

24  is it inappropriate for Gurley – the sole person who knows what he saw and heard versus what is in the

25  report – to say that if he had known the truth, he would not have approved the deal. His testimony

26  regarding what his reaction would have been on April 11 if he had known the true facts is plainly

27  admissible testimony. Gurley's testimony on this issue – including whether Kalanick concealed

28  "remarkably critical" information from the Board – is highly relevant to multiple issues in this case.

1    **II.      THERE IS NO REASON TO EXCLUDE THE BENCHMARK LAWSUIT**

2           Uber argues that the Benchmark complaint covers several prejudicial issues not relevant to this

3    case, which would result in distracting "mini-trials".  While it is true that the Benchmark complaint

4    references various Uber scandals (which the Court has ruled should be excluded from trial "unless

5    Uber opens the door by saying that it's a good corporate citizen" (Dkt. 775 at 4:8-22)), it is clear from

6    Gurley's deposition transcript that Waymo's examination is limited to the issues in this case.[6]

7    Counsel asked no questions about, and deliberately avoided, the other fiascos listed in the complaint.

8    Uber therefore attacks a straw man.  There will be no "mini-trials"; the only aspects of the complaint

9    at issue are those that are the center of the "big" trial.

10          Uber also argues that Gurley's testimony about the Benchmark complaint allegations are not

11   based on his personal knowledge, but rather on "public filings in this case." (MIL 22 at 4.)  However,

12   Uber is quoting Gurley out of context – as is clear from the complete transcript, Gurley referenced

13   items that were "in the public record" not because he lacked personal knowledge of those facts, but in

14   order to get around Uber's relentless privilege objections that tried to impede examination about the

15   Stroz investigation. (*See*, *e.g.*, Ex. 1 at 162:14-164:7; 171:12-24.)  And Gurley confirmed that that he

16   had personal knowledge of the allegations in the complaint that Waymo questioned him about – nor

17   has Uber identified any allegations that Gurley purportedly lacks personal knowledge about.

18          Waymo agrees that allegations in the complaint unrelated to the facts surrounding the Otto

19   acquisition and Stroz report should be redacted.  But the relevant portions of the complaint – for

20   example, that Travis Kalanick withheld critical  information about the Stroz investigation from the

21   Board at the April 11 meeting – are plainly relevant to multiple issues in this case, including that the

22   CEO of Uber knew about Levandowski's misappropriation, hid the facts from the Board, and agreed

23   to Levandowski's demand to be indemnified  in order to get Waymo's trade secrets.

                                         **CONCLUSION**

25          For the foregoing reasons, Defendants' MIL 22 should be denied.

26   ---
[6] Uber references the Benchmark complaint over ten times in its brief, suggesting that this was the main topic of the deposition.  In fact, the Complaint was one exhibit (of nine total exhibits) and Waymo's examination on it lasted slightly over 30 minutes (out of four hours total), limited to facts alleged in the complaint relating to the Otto acquisition.  (See Ex. 1 at 157:1-174:11.)

DATED:  September 13, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
    Charles K. Verhoeven
    Attorneys for WAYMO LLC