# EXHIBIT 1
# REDACTED

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1                  UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF CALIFORNIA

 3                    SAN FRANCISCO DIVISION

 4                          --oOo--

 5   WAYMO LLC,

 6                  Plaintiff,

                                      Case

 7   vs.                         No. 3:17-cv-00939-WHA

 8   UBER TECHNOLOGIES, INC.;

     OTTOMOTTO LLC; OTTO TRUCKING LLC,

 9

                    Defendants.

10   _____/

11

12

13

14       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

15

16      VIDEOTAPED DEPOSITION OF JOHN WILLIAM GURLEY

17               THURSDAY, AUGUST 24, 2017

18

19

20

21   Reported by:

22   Anrae Wimberley

23   CSR No. 7778

24   Job No.  2687934

25   PAGES 1 - 182
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                SAN FRANCISCO DIVISION

 4                     --oOo--

 5   WAYMO LLC,

 6              Plaintiff,

                                    Case

 7   vs.                    No.  3:17-cv-00939-WHA

 8   UBER TECHNOLOGIES, INC.;

     OTTOMOTTO LLC; OTTO TRUCKING LLC,

 9

              Defendants.

10   _____/

11

12

13       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

14

15          Transcript of video-recorded deposition of

16   JOHN WILLIAM GURLEY taken at Morrison & Foerster LLP,

17   425 Market Street, 33rd Floor, San Francisco,

18   California, beginning at 8:37 a.m. and ending at 1:09

19   p.m. on Thursday, August 24, 2017, before Anrae

20   Wimberley, Certified Shorthand Reporter No. 7778.

21

22

23

24

25

                                           Page  2
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | |
|---|---|
| 1 | APPEARANCES: |
| 2 | For Plaintiff Waymo LLC: |
| 3 | QUINN EMANUEL URQUHART & SULLIVAN LLP |
| 4 | BY:  CHARLES K. VERHOEVEN, ESQ. |
| 5 | JAMES JUDAH, ESQ. |
| 6 | 50 California Street, 22nd Floor |
| 7 | San Francisco, CA 94111 |
| 8 | (415) 875-6600 |
| 9 | charlesverhoeven@quinnemanuel.com |
| 10 | jamesjudah@quinnemanuel.com |
| 11 | |
| 12 | For Defendants Uber Technologies, Inc.; Ottomotto LLC: |
| 13 | BOIES SCHILLER FLEXNER LLP |
| 14 | BY:  MICHAEL A. BRILLE, ESQ. |
| 15 | EDWARD H. TAKASHIMA, ESQ. |
| 16 | 1401 New York Avenue NW |
| 17 | Washington, DC 20005 |
| 18 | (202) 237-9608 |
| 19 | mbrille@bsfllp.com |
| 20 | -and- |
| 21 | MORRISON & FOERSTER LLP |
| 22 | BY: MICHAEL A. JACOBS, ESQ. |
| 23 | 425 Market Street, 33rd Floor |
| 24 | San Francisco, California 94105-2482 |
| 25 | (415) 268-7455 mjacobs@mofo.com |

Page  3

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    APPEARANCES:

 2    For Defendant Otto Trucking LLC:

 3              GOODWIN PROCTER LLP

 4              BY:  TODD A. BOOCK, ESQ.

 5              601 South Figueroa Street, 41st Floor

 6              Los Angeles, California 90017

 7              (213) 426-2560

 8              tboock@goodwinlaw.com

 9

10    For the Deponent:

11              PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

12              BY:  MARTIN FLUMENBAUM, ESQ.

13              CHRISTINA A. BUNTING, ESQ.

14              1285 Avenue of the Americas

15              New York, New York 10019-6064

16              (212) 373-3191

17              mflumenbaum@paulweiss.com

18

19    Also Present:

20              VERITEXT LEGAL SOLUTIONS

21              WARREN NGUYEN, VIDEOGRAPHER

22              (415) 274-9977

23              SFDepo@veritext.com

24

25              AARON BERGSTROM, Seniro Counsel for Uber
```

Page  4

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1                      I N D E X

 2

 3     EXAMINATION BY:                              PAGE

 4     MR. VERHOEVEN                                  10

 5

 6                      --oOo--

 7

 8

 9                    E X H I B I T S

10     EXHIBIT        DESCRIPTION                   PAGE

11     Exhibit 910    Presentation documents entitled,   33

12                    "Project Zing Review"; Bates Nos.

13                    UBER00109871 through  877

14

15     Exhibit 911    Minutes of Special Meeting, Board   73

16                    of Directors, 4/11/16; Bates Nos.

17                    UBER00101482 through 498

18

19     Exhibit 912    Minutes of Meeting, Board of        98

20                    Directors, 4/10/17; Bates Nos.

21                    UBER00101479 through 481

22

23     Exhibit 913    Minutes of Meeting, Board of       108

24                    Directors, 5/15/17; Bates Nos.

25                    UBER00101499 through 500
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              E X H I B I T S   (Cont'd)

 2    EXHIBIT          DESCRIPTION                   PAGE

 3    Exhibit 914      Minutes of Meeting, Board of    117

 4                     Directors, 5/22/17; Bates Nos.

 5                     UBER00101501 through 504

 6

 7    Exhibit 915      Minutes of Meeting, Board of    132

 8                     Directors, 5/25/17; Bates Nos.

 9                     UBER00101505 through 506

10

11    Exhibit 916      Letter dated 6/20/17 to Kalanick;  139

12                     Bates Nos. BENCHMARK-WAYMO_

13                     00000168 through 169

14

15    Exhibit 917      Compilation of documents in re    153

16                     public filing in Delaware; Bates

17                     Nos. BENCHMARK-WAYMO_00000039

18                     through 105

19

20    Exhibit 918      Verified Complaint; 38 pages      157

21                          --oOo--

22

23

24

25
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:

 2                        PAGE  LINE

 3                         47      5

 4                         48     22

 5                         49      6

 6                         49     12

 7                         49     17

 8                         51      8

 9                         63      2

10                         87     20

11                         88      7

12                         89      3

13                         90      5

14                         90     22

15                         92      3

16                        107     15

17                        125     23

18                        126     12

19                        127     12

20                        127     16

21                        127     22

22                        128      2

23

24

25
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    THURSDAY, AUGUST 24, 2017; SAN FRANCISCO, CALIFORNIA;

 2                      8:37 A.M.

 3                      - - -

 4    THE VIDEOGRAPHER:  We're on the record at 8:37 on    08:37:51

 5    August 24th, 2017.                                   08:37:53

 6         Please note that microphones are sensitive      08:37:56

 7    and may pick up whispering, private conversation and 08:37:59

 8    cellular interference.  Please turn off all cell     08:38:03

 9    phones or place them away from the microphones, as   08:38:06

10    they can interfere with the deposition audio.        08:38:10

11         Audio and video recording will be taking        08:38:12

12    place unless all parties agree to go off the record. 08:38:16

13         This is Media Unit 1 of the video-recorded      08:38:18

14    deposition of William Gurley, taken by the counsel of 08:38:22

15    the plaintiff in the matter Waymo LLC versus Uber    08:38:27

16    Technologies, Inc., et al., filed in the United States 08:38:30

17    District Court, Northern District of California,      08:38:33

18    San Francisco Division, Case No. 17-cv-00939.        08:38:41

19         My name is Warren Nguyen from the firm of       08:38:46

20    Veritext Legal Solutions, and I'm the videographer.  08:38:49

21         The court reporter is Anrae Wimberley with      08:38:52

22    Veritext Legal Solutions.                            08:38:53

23         I'm not related to any party in this action,    08:38:57

24    nor am I financially interested in the outcome in any 08:39:00

25    way.                                                 08:39:00
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | If there are any objections to the | 08:39:02 |
| 2 | proceeding, please state them at the time of your | 08:39:04 |
| 3 | appearance, beginning with the noticing attorney. | 08:39:07 |
| 4 | Will counsel please state your appearances. | 08:39:10 |
| 5 | MR. VERHOEVEN:  Charles Verhoeven, Quinn Emanuel, | |
| 6 | on behalf of Waymo. | 08:39:13 |
| 7 | MR. JUDAH:  James Judah, Quinn Emanuel, on behalf | 08:39:14 |
| 8 | of Waymo. | 08:39:17 |
| 9 | MR. FLUMENBAUM:  Martin Flumenbaum, Paul Weiss | 08:39:17 |
| 10 | Rifkind Wharton & Garrison, on behalf of Mr. Gurley. | 08:39:22 |
| 11 | MS. BUNTING:  Kristina Bunting, Paul Weiss Rifkind | 08:39:22 |
| 12 | Wharton & Garrison, on behalf of Mr. Gurley. | 08:39:28 |
| 13 | MR. BRILLE:  Mike Brille, Boies Schiller & | 08:39:29 |
| 14 | Flexner, on behalf of Uber. | 08:39:31 |
| 15 | MR. TAKASHIMA:  Ed Taskahima, Boies Schiller & | 08:39:31 |
| 16 | Flexner, for Uber and Ottomotto. | 08:39:34 |
| 17 | MR. BERGSTROM:  Aaron Bergstrom, in-house counsel | 08:39:35 |
| 18 | for Uber. | |
| 19 | MR. JACOBS:  Michael Jacobs, Morrison & Foerster, | 08:39:37 |
| 20 | for Uber and Ottomotto. | 08:39:39 |
| 21 | MR. BOOCK:  Todd Boock from Goodwin & Procter on | 08:39:42 |
| 22 | behalf of Otto Trucking LLC. | 08:39:43 |
| 23 | THE VIDEOGRAPHER:  Will the court reporter please | 08:39:47 |
| 24 | swear in the witness. | 08:39:48 |
| 25 | // | 08:39:48 |

Page 9

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | JOHN WILLIAM GURLEY, | |
| 2 | sworn as a witness by the Certified | |
| 3 | Shorthand Reporter, testified as follows: | |
| 4 | EXAMINATION | |
| 5 | BY MR. VERHOEVEN: | 08:39:48 |
| 6 | Q.   Good morning, Mr. Gurley. | 08:40:02 |
| 7 | A.   Good morning. | 08:40:03 |
| 8 | Q.   Could you just state your full name for the | 08:40:05 |
| 9 | record. | 08:40:06 |
| 10 | A.   John William Gurley. | 08:40:08 |
| 11 | Q.   By whom are you currently employed? | 08:40:11 |
| 12 | A.   Benchmark Capital. | 08:40:12 |
| 13 | Q.   And what is your position? | 08:40:13 |
| 14 | A.   I'm a general partner. | 08:40:15 |
| 15 | Q.   Can you -- how long have you been a general | 08:40:18 |
| 16 | partner at Benchmark? | 08:40:20 |
| 17 | A.   Since '99. | 08:40:22 |
| 18 | Q.   Do you have any knowledge about the Benchmark | 08:40:27 |
| 19 | initial investment into Uber? | 08:40:30 |
| 20 | A.   Yes. | 08:40:30 |
| 21 | Q.   What was your relationship to that? | 08:40:33 |
| 22 | A.   I was the lead partner on effecting the | 08:40:36 |
| 23 | investment in January of 2011. | 08:40:40 |
| 24 | Q.   So just to clarify, the investment became | 08:40:45 |
| 25 | effective in January of 2011? | 08:40:47 |

Page 10

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   Yes. | 08:40:47 |
| 2 | Q.   What was the nature of Uber's business at | 08:40:54 |
| 3 | that time? | 08:40:54 |
| 4 | A.   To the best of my recollection, the company | 08:41:01 |
| 5 | was operating a service that allowed you to book a | 08:41:06 |
| 6 | black car.  I think we're only operating in | 08:41:09 |
| 7 | San Francisco at the time. | 08:41:10 |
| 8 | Q.   Did there come a time when you became aware | 08:41:15 |
| 9 | of the subject of AV technology? | 08:41:20 |
| 10 | MR. FLUMENBAUM:  Just so the record is clear -- | 08:41:25 |
| 11 | BY MR. VERHOEVEN: | 08:41:25 |
| 12 | Q.   Automatic vehicle, autonomous vehicle? | 08:41:28 |
| 13 | MR. BRILLE:  Objection; form. | 08:41:32 |
| 14 | MR. BOOCK:  Same objection. | 08:41:34 |
| 15 | BY MR. VERHOEVEN: | |
| 16 | Q.   Did there come a time when you became aware | 08:41:35 |
| 17 | of autonomous vehicle technology? | 08:41:37 |
| 18 | MR. FLUMENBAUM:  Can one objection as to form | 08:41:39 |
| 19 | stand for everybody?  Is that the rule here? | 08:41:42 |
| 20 | MR. BRILLE:  Yes, that would be okay with me. | 08:41:45 |
| 21 | MR. FLUMENBAUM:  Is that okay? | 08:41:46 |
| 22 | MR. BOOCK:  That's fine for us. | 08:41:48 |
| 23 | MR. VERHOEVEN:  Yes. | 08:41:49 |
| 24 | MR. FLUMENBAUM:  I don't want to have to chime in | 08:41:50 |
| 25 | after somebody else does it. | 08:41:53 |

Page 11

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    BY MR. VERHOEVEN:                                      08:41:53

 2        Q.   Do you have the question in might?           08:41:56

 3        MR. FLUMENBAUM:   You can ask for it to be         08:41:58

 4    repeated.                                              08:41:58

 5        THE WITNESS:   No.  No.  I'm fine.                 08:42:01

 6            Yes.

 7    BY MR. VERHOEVEN:

 8        Q.   When was that?                                08:42:02

 9        A.   I don't have a specific recollection of that  08:42:04

10    date in -- the window.                                 08:42:05

11        Q.   Was it after you -- excuse me.                08:42:07

12            Was it after Benchmark had invested in Uber?   08:42:12

13        A.   Yes.                                          08:42:12

14        Q.   Given that you don't have a specific window,  08:42:16

15    can you ballpark it for me, what year it was?          08:42:26

16        MR. FLUMENBAUM:   Objection as to form.            08:42:32

17        THE WITNESS:   My best recollection would be that  08:42:35

18    it -- around the time that it became part of the       08:42:37

19    public lexicon, you know, or slightly before, but I    08:42:41

20    don't recall exactly when that was.                    08:42:43

21    BY MR. VERHOEVEN:                                      08:42:43

22        Q.   When did you first discuss this subject with  08:42:48

23    Mr. Kalanick?                                          08:42:51

24        MR. FLUMENBAUM:   Objection as to form.            08:42:51

25            You may answer.                                08:42:54
```

Page 12

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | THE WITNESS:  I don't have a specific recollection | 08:42:55 |
| 2 | of the first time. | 08:42:57 |
| 3 | BY MR. VERHOEVEN: | 08:42:57 |
| 4 | Q.   Do you have a recollection of discussing this | 08:43:00 |
| 5 | technology with Mr. Kalanick? | 08:43:03 |
| 6 | A.   I'm certain that it was discussed at some | 08:43:05 |
| 7 | point, yes. | 08:43:06 |
| 8 | Q.   What's your best estimate of what that point | 08:43:09 |
| 9 | was? | 08:43:09 |
| 10 | A.   My best guess would be probably 2015, | 08:43:16 |
| 11 | beginning of 2015, something like that. | 08:43:18 |
| 12 | Q.   Okay.  Could you tell me what Mr. Kalanick | 08:43:23 |
| 13 | said to you? | 08:43:26 |
| 14 | A.   I don't have specific recollection of | 08:43:28 |
| 15 | specific language. | 08:43:30 |
| 16 | Q.   Generally? | 08:43:32 |
| 17 | A.   Mr. Kalanick had a -- has a strong belief, | 08:43:50 |
| 18 | that I think is mirrored in his comments in the public | 08:43:53 |
| 19 | record, that this was an important technology related | 08:43:56 |
| 20 | to Uber. | 08:43:58 |
| 21 | Q.   Related to what? | 08:44:07 |
| 22 | MR. FLUMENBAUM:  "Related to Uber." | 08:44:09 |
| 23 | THE WITNESS:  Sorry. | 08:44:10 |
| 24 | BY MR. VERHOEVEN: | 08:44:10 |
| 25 | Q.   Sorry. | 08:44:10 |

Page 13

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   That's okay. | 08:44:11 |
| 2 | Q.   And why did he say it was related to Uber? | 08:44:16 |
| 3 | A.   I think there's also a lot of public | 08:44:23 |
| 4 | discourse about this notion, but there's -- obviously, | 08:44:29 |
| 5 | because the service is reliant on vehicles, to the | 08:44:32 |
| 6 | extent the vehicles became automated, it had the | 08:44:35 |
| 7 | potential to impact the business and its relationship | 08:44:39 |
| 8 | with drivers and all those things. | 08:44:42 |
| 9 | Q.   He told you it was really important to Uber's | 08:44:45 |
| 10 | business; right? | 08:44:47 |
| 11 | MR. BRILLE:  Objection; form. | 08:44:49 |
| 12 | MR. FLUMENBAUM:  You may answer. | 08:44:50 |
| 13 | THE WITNESS:  I think it's a fair statement. | 08:44:52 |
| 14 | BY MR. VERHOEVEN: | 08:44:52 |
| 15 | Q.   Okay.  Did he tell you it was an existential | 08:44:54 |
| 16 | threat? | 08:44:56 |
| 17 | A.   He was quoted publicly as saying that.  I | 08:44:59 |
| 18 | don't recall him telling me specifically that. | 08:45:01 |
| 19 | Q.   Did you agree with him? | 08:45:03 |
| 20 | A.   I don't agree with that assertion. | 08:45:05 |
| 21 | Q.   Okay.  Do you think that autonomous vehicle | 08:45:09 |
| 22 | technology is important to Uber? | 08:45:12 |
| 23 | A.   It could be important. | 08:45:13 |
| 24 | Q.   When would it not be important? | 08:45:16 |
| 25 | A.   Well, there's an argument that the technology | 08:45:19 |

Page 14

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | threatens the service provider.  I don't think, from | 08:45:23 |
| 2 | my own point of view, that anything Boeing builds | 08:45:28 |
| 3 | threatens United or Delta's business, from my point of | 08:45:31 |
| 4 | view.  I have a different point of view on that topic | 08:45:37 |
| 5 | than he does. | 08:45:38 |
| 6 | Q.   Okay.  In what instances would it be a | 08:45:40 |
| 7 | threat? | 08:45:41 |
| 8 | MR. FLUMENBAUM:  Objection as to form. | 08:45:45 |
| 9 | Could you be a little more clear, given his | 08:45:47 |
| 10 | prior answer? | 08:45:48 |
| 11 | BY MR. VERHOEVEN: | 08:45:48 |
| 12 | Q.   Okay.  I asked you, quote, "Do you think that | 08:46:10 |
| 13 | autonomous vehicle" -- the whole question isn't in | 08:46:17 |
| 14 | there. | 08:46:17 |
| 15 | I asked you whether you thought autonomous | 08:46:20 |
| 16 | vehicle technology would be important to Uber, and you | 08:46:23 |
| 17 | said, "It could be important." | 08:46:24 |
| 18 | Do you remember that? | 08:46:25 |
| 19 | A.   Yes. | 08:46:25 |
| 20 | Q.   Okay.  Why could it be important? | 08:46:29 |
| 21 | A.   There are cars that underline the operations | 08:46:34 |
| 22 | of the service.  There are drivers that are in those | 08:46:37 |
| 23 | cars.  There's the relationships between the drivers | 08:46:40 |
| 24 | and the -- that are important to the company.  And so | 08:46:43 |
| 25 | if this new technology came along that displaced | 08:46:47 |

Page 15

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | them -- this is well documented in the public | 08:46:50 |
| 2 | discourse -- that would cause relationship issues for | 08:46:52 |
| 3 | the company with its drivers. | 08:46:54 |
| 4 | Q.   You have competitors to Uber? | 08:46:59 |
| 5 | A.   Yes. | 08:46:59 |
| 6 | Q.   Can you name some? | 08:47:01 |
| 7 | A.   In different -- in Asia, there's Grab.  In | 08:47:10 |
| 8 | India, there's Ola.  In the U.S., there's Lyft.  In | 08:47:15 |
| 9 | Latin America there's 99Taxi.  There's Careem. | 08:47:21 |
| 10 | Q.   So -- | |
| 11 | MR. FLUMENBAUM:  Hold on. | 08:47:23 |
| 12 | Are you finished with your answer? | 08:47:27 |
| 13 | THE WITNESS:  I didn't know how exhaustive he | 08:47:29 |
| 14 | wanted me to be. | 08:47:30 |
| 15 | BY MR. VERHOEVEN: | 08:47:30 |
| 16 | Q.   In the United States. | 08:47:33 |
| 17 | A.   In the United States.  Lyft.  There were | 08:47:33 |
| 18 | others.  I don't know if they're still operational. | 08:47:37 |
| 19 | Q.   So if Lyft had the autonomous vehicle | 08:47:42 |
| 20 | technology that worked and passed through the | 08:47:45 |
| 21 | regulatory hurdles before Uber, would that be a threat | 08:47:49 |
| 22 | to Uber? | 08:47:50 |
| 23 | MR. FLUMENBAUM:  Objection as to form. | 08:47:52 |
| 24 | You may answer. | 08:47:53 |
| 25 | THE WITNESS:  And no one else had; is that the | 08:47:56 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | implication? | 08:47:57 |
| 2 | BY MR. VERHOEVEN: | 08:47:57 |
| 3 |    Q.   Yes. | 08:47:58 |
| 4 |    A.   Sure.  Yes.  Theoretically.  Actually, let me | 08:48:02 |
| 5 | step back. | 08:48:03 |
| 6 |       That would be heavily dependent on the cost | 08:48:05 |
| 7 | of the vehicle.  Because if the vehicle cost 5X more | 08:48:09 |
| 8 | than a traditional vehicle, it would more than offset | 08:48:13 |
| 9 | the cost of the driver, in which case I don't think it | 08:48:16 |
| 10 | would have an impact at all. | 08:48:17 |
| 11 |    Q.  What is the cost to Uber for the human driver | 08:48:20 |
| 12 | expressed as a percentage of dollar revenue, if you | 08:48:28 |
| 13 | know? | 08:48:28 |
| 14 |    A.  What percentage of the revenue goes to the | 08:48:32 |
| 15 | driver? | 08:48:33 |
| 16 |    Q.   Yes. | 08:48:34 |
| 17 |    A.   I don't know if that's privileged or not.  I | 08:48:37 |
| 18 | just don't know. | 08:48:39 |
| 19 |   MR. BRILLE:  So we have a protective order in the | 08:48:42 |
| 20 | case.  And it is definitely highly confidential.  And | 08:48:45 |
| 21 | we will designate anything that is business | 08:48:47 |
| 22 | confidential -- | 08:48:48 |
| 23 |   THE WITNESS:  Okay. | |
| 24 |   MR. FLUMENBAUM:  Is it -- do I have to invoke the | 08:48:52 |
| 25 | protective order for purposes of this deposition? | 08:48:54 |

Page 17

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. BRILLE:  You do not.  We have an agreement | 08:48:56 |
| 2 | with the other side that we designate transcripts | 08:48:59 |
| 3 | after they come out, and we will take care of | 08:49:01 |
| 4 | something like that. | 08:49:02 |
| 5 | MR. FLUMENBAUM:  So as far as I'm concerned, this | 08:49:04 |
| 6 | is -- so any business confidential information -- | 08:49:06 |
| 7 | MR. BRILLE:  Correct. | 08:49:07 |
| 8 | MR. FLUMENBAUM:  -- he can testify to? | 08:49:08 |
| 9 | MR. BRILLE:  Yes, that is correct. | 08:49:09 |
| 10 | MR. FLUMENBAUM:  Okay.  And I don't have to -- do | 08:49:09 |
| 11 | I get to review the transcript as well? | 08:49:13 |
| 12 | MR. BRILLE:  Yes.  Absolutely. | 08:49:14 |
| 13 | MR. FLUMENBAUM:  Okay.  So I just want to make | 08:49:15 |
| 14 | sure that I have that opportunity as well. | 08:49:18 |
| 15 | MR. BRILLE:  Yeah. | 08:49:19 |
| 16 | MR. FLUMENBAUM:  And in the meantime, who can | 08:49:21 |
| 17 | share this deposition? | 08:49:23 |
| 18 | MR. BRILLE:  In -- | 08:49:27 |
| 19 | MR. FLUMENBAUM:  Until we review this stuff? | 08:49:29 |
| 20 | MR. VERHOEVEN:  Should we go off the record for | 08:49:30 |
| 21 | this. | 08:49:33 |
| 22 | MR. BRILLE:  Let's go off the record, yes. | 08:49:33 |
| 23 | THE VIDEOGRAPHER:  Off the record at 8:49 a.m. | 08:49:36 |
| 24 | (Discussion off the record.) | 08:49:55 |
| 25 | THE VIDEOGRAPHER:  Back on the record at 8:49 a.m. | 08:49:58 |

Page 18

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    BY MR. VERHOEVEN:                                    08:49:58

 2        Q.   I think you're allowed to answer the       08:50:02

 3    question.                                            08:50:02

 4        A.   I honestly don't have the documents right in 08:50:04

 5    front of me, so --                                   08:50:05

 6        Q.   Of course.                                  08:50:06

 7        A.   And I would also say different services have 08:50:08

 8    different answers on this, so there's no specifics.  08:50:11

 9    But somewhere between, you know, ████████████████    08:50:15

10    typically, of the revenue goes to the driver.        08:50:19

11        Q.   And so if you didn't have to pay drivers and 08:50:23

12    you could use an autonomous vehicle for your service, 08:50:26

13    that would be a huge competitive advantage, assuming 08:50:29

14    others couldn't do that?                             08:50:32

15        A.   Depends on the depreciation cost of the car. 08:50:36

16    If the vehicle costs five times more than a standard 08:50:40

17    car, you have to eat that depreciation cost to deliver 08:50:40

18    that service.                                        08:50:42

19        Q.   But if the vehicle is roughly similarly     08:50:43

20    priced as a regular car, there would be a huge       08:50:46

21    advantage for the first mover in that technology;    08:50:50

22    right?                                               08:50:50

23        MR. FLUMENBAUM:  Objection as to form.           08:50:52

24            You're speculating.                          08:50:54

25        MR. VERHOEVEN:  Counsel, I don't know if you're  08:50:56
```

Page 19

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | familiar with Judge Alsup's rules, but he does not | 08:50:59 |
| 2 | allow anything -- you're not allowed to say anything | 08:51:03 |
| 3 | more than "object to form." | 08:51:04 |
| 4 | MR. FLUMENBAUM:  Okay.  Objection as to form. | 08:51:06 |
| 5 | BY MR. VERHOEVEN: | 08:51:06 |
| 6 | Q.   Do you have the question in mind? | 08:51:08 |
| 7 | A.   No one has delivered a fully autonomous | 08:51:10 |
| 8 | vehicle that could operate in a massive service at | 08:51:14 |
| 9 | scale.  So knowing -- presuming that you know the cost | 08:51:17 |
| 10 | of that would be speculative, from my point of view. | 08:51:21 |
| 11 | So, yes, if you could do it, then, yes, that would be | 08:51:25 |
| 12 | true. | 08:51:25 |
| 13 | Q.   If you could -- if you were a first mover | 08:51:27 |
| 14 | with working, approved autonomous vehicles in your | 08:51:33 |
| 15 | business model, that entity would have a huge | 08:51:37 |
| 16 | advantage competitively? | 08:51:39 |
| 17 | MR. FLUMENBAUM:  Objection; form. | 08:51:40 |
| 18 | THE WITNESS:  If you could move millions of units | 08:51:43 |
| 19 | at scale at a price that's equivalent to a normal car, | 08:51:47 |
| 20 | which, I would argue, is very hard to prove someone | 08:51:50 |
| 21 | could do at this moment in time.  But, yes. | 08:51:53 |
| 22 | BY MR. VERHOEVEN: | 08:51:53 |
| 23 | Q.   Okay.  And that's why Mr. Kalanick was really | 08:51:57 |
| 24 | interested in developing autonomous vehicle | 08:51:59 |
| 25 | technology; right? | 08:52:01 |

Page 20

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        MR. FLUMENBAUM:  Objection as to form.          08:52:06

 2        THE WITNESS:  I think that's fair.              08:52:08

 3   BY MR. VERHOEVEN:                                    08:52:08

 4        Q.   Did you -- in this conversation we're talking  08:52:16

 5   about with Mr. Kalanick, did you express to him your    08:52:22

 6   view on whether Uber should move forward with this      08:52:27

 7   technology?                                         08:52:29

 8        MR. BRILLE:  Objection; form.                  08:52:33

 9        THE WITNESS:  Keep going?                      08:52:34

10   BY MR. VERHOEVEN:                                    08:52:34

11        Q.   Every time there's an objection to form, you  08:52:38

12   still have to answer.                               08:52:39

13        MR. FLUMENBAUM:  You have to answer.  I'm not

14   going to tell you not to.

15        THE WITNESS:  Okay, great.

16
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

3    BY MR. VERHOEVEN:                                    08:53:22

4        Q.   Mr. Kalanick wanted to be the first with a  08:53:25

5    vehicle that had this technology in the marketplace,  08:53:27

6    didn't he?                                            08:53:28

7        MR. FLUMENBAUM:   Objection as to form.           08:53:31

8        THE WITNESS:   I don't have specific recollection 08:53:32

9    that he said, I definitely want to be first in this   08:53:36

10   technology.  But that's different from whether or not 08:53:41

11   he did want to be first.  I just don't have a specific 08:53:43

12   recollection.                                         08:53:44

13   BY MR. VERHOEVEN:                                     08:53:44

14       Q.   So he never told you that he wanted to be the 08:53:47

15   first mover with this technology?                     08:53:50

16       A.   I don't have a recollection of that specific 08:53:52

17   statement.                                            08:53:53

18       Q.   He never told you that it would be a huge     08:53:55

19   advantage if you were the first company out there in  08:53:59

20   the market with this technology?                      08:54:02

21       A.   I don't recall that specific statement, but I 08:54:04

22   also recall conversations where --                    08:54:04

Page  22

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

08:54:38

7     Q.    Okay.  Did there come a time when Uber          08:54:46

8     started investing its money into this technology, this  08:54:52

9     autonomous vehicle technology?                         08:54:54

10    A.    Yes.                                             08:54:54

11    Q.    When was that?                                   08:54:55

12    A.    My first recollection of a substantial effort    08:54:59

13    related to the Carnegie Mellon transaction.           08:55:05

14    Q.    And what do you mean when you say "the          08:55:07

15    Carnegie Mellon transaction"?                          08:55:08

16    A.    Once again, I think this is public record, so    08:55:14

17    you could find it with a Google search, but there was  08:55:17

18    a large transaction that involved some of the          08:55:20

19    employees of Carnegie Mellon coming on board -- or     08:55:24

20    some of the people associated with Carnegie Mellon     08:55:26

21    coming on board.  And we set up a research             08:55:30

22    headquarters for autonomous in Pittsburgh.             08:55:33

23    Q.    So was that a transaction with the group that    08:55:37

24    came over?  You said there was a large transaction.    08:55:44

25    MR. BRILLE:  Objection; form.                          08:55:45

Page 23

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | THE WITNESS:  I don't understand the question. | 08:55:48 |
| 2 | BY MR. VERHOEVEN: | 08:55:48 |
| 3 | Q.   Well, you said there's a large transaction in | 08:55:50 |
| 4 | which a number of Carnegie Mellon folks came over. | 08:55:54 |
| 5 | A.   Correct. | 08:55:54 |
| 6 | Q.   And you set up a lab, or whatever you want to | 08:55:58 |
| 7 | call it, in Pittsburgh; right? | 08:55:59 |
| 8 | A.   Right. | 08:55:59 |
| 9 | Q.   And so my question was, when you say "a large | 08:56:03 |
| 10 | transaction," are you referring to like a single | 08:56:05 |
| 11 | transaction where the whole group came over -- | 08:56:08 |
| 12 | A.   I don't remember exactly if there were | 08:56:10 |
| 13 | multiple pieces in that.  I'm just referring to it as | 08:56:13 |
| 14 | a single event. | 08:56:15 |
| 15 | Q.   Did the board review and approve that? | 08:56:18 |
| 16 | A.   I believe so. | 08:56:19 |
| 17 | Q.   Okay.  And what did Mr. -- who presented | 08:56:26 |
| 18 | the -- who recommended it to the board? | 08:56:29 |
| 19 | A.   I don't have specific recollection of like | 08:56:36 |
| 20 | who presented it, but I -- my best guess would be that | 08:56:42 |
| 21 | it was Mr. Kalanick. | 08:56:43 |
| 22 | Q.   But you don't remember what he said in | 08:56:45 |
| 23 | connection with that? | 08:56:47 |
| 24 | A.   I don't, not at this moment in time. | 08:56:50 |
| 25 | Q.   Do you remember any discussions by the board | 08:56:59 |

Page 24

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | about the importance of this technology, autonomous | 08:57:05 |
| 2 | vehicle technology? | 08:57:07 |
| 3 | MR. FLUMENBAUM:  At around the time of the | 08:57:08 |
| 4 | Carnegie Mellon issue? | 08:57:10 |
| 5 | MR. VERHOEVEN:  I asked my question; you can't | 08:57:12 |
| 6 | edit it. | 08:57:15 |
| 7 | BY MR. VERHOEVEN: | 08:57:15 |
| 8 | Q.  Go ahead. | |
| 9 | MR. BRILLE:  But he can ask for clarification. | 08:57:17 |
| 10 | MR. VERHOEVEN:  There's no -- you can object to | 08:57:19 |
| 11 | form or you can object on privilege grounds, nothing | 08:57:22 |
| 12 | else. | 08:57:23 |
| 13 | MR. FLUMENBAUM:  Objection as to form. | 08:57:27 |
| 14 | BY MR. VERHOEVEN: | 08:57:27 |
| 15 | Q.  Okay.  Do you recall any discussions at the | 08:57:29 |
| 16 | board level about the importance of this technology? | 08:57:33 |
| 17 | A.  Only -- yes, but only in a general sense.  I | 08:57:36 |
| 18 | don't recall any specific one-on-one conversation. | 08:57:41 |
| 19 | Q.  So when you say "in a general sense," you | 08:57:44 |
| 20 | mean in the sense of a presentation being made to the | 08:57:47 |
| 21 | group? | 08:57:48 |
| 22 | A.  No, I just mean in the sense that it was | 08:57:54 |
| 23 | discussed more than once that autonomous technology | 08:58:02 |
| 24 | was important to ridesharing and that we needed to | 08:58:07 |
| 25 | have an understanding of that, an effort in that, and | 08:58:13 |

Page 25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | know where that technology was evolving relative to | 08:58:16 |
| 2 | our service. | 08:58:17 |
| 3 | Q.   And how often did this come up with the | 08:58:21 |
| 4 | board? | 08:58:22 |
| 5 | A.   I would say only -- around Carnegie Mellon | 08:58:39 |
| 6 | and Otto were the only two times where it was | 08:58:43 |
| 7 | discussed in depth.  I don't think it was a frequent | 08:58:50 |
| 8 | topic of every board meeting. | 08:58:52 |
| 9 | Q.   Are you still with -- on the board at Uber? | 08:59:05 |
| 10 | A.   I am not. | 08:59:06 |
| 11 | Q.   When did you cease being on the board? | 08:59:08 |
| 12 | A.   I believe it was mid to late June of this | 08:59:17 |
| 13 | year. | 08:59:17 |
| 14 | Q.   And I may have asked this and, if I did, I | 08:59:22 |
| 15 | apologize. | 08:59:22 |
| 16 | But when did you first become a board member? | 08:59:25 |
| 17 | A.   In January of 2011. | 08:59:27 |
| 18 | Q.   When you were a member of the board, is it a | 08:59:33 |
| 19 | fair statement to say that you were very engaged with | 08:59:37 |
| 20 | the company? | 08:59:41 |
| 21 | MR. FLUMENBAUM:  Objection as to form. | 08:59:51 |
| 22 | THE WITNESS:  I'll answer yes.  There's a question | 08:59:54 |
| 23 | as to whether -- like relative to what, you know. | 08:59:58 |
| 24 | BY MR. VERHOEVEN: | 08:59:58 |
| 25 | Q.   Is it fair to say that you were the most | 09:00:00 |

Page 26

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | engaged board member with respect to Uber? | 09:00:03 |
| 2 | MR. FLUMENBAUM:  Objection as to form. | 09:00:14 |
| 3 | THE WITNESS:  It's possible.  It would be | 09:00:15 |
| 4 | conjecture from my point solely because I don't know | 09:00:19 |
| 5 | of all the other meetings that the other board members | 09:00:22 |
| 6 | may or may not have been having. | 09:00:24 |
| 7 | BY MR. VERHOEVEN: | 09:00:24 |
| 8 | Q.  Do you feel as though you were the most | 09:00:26 |
| 9 | engaged board member? | 09:00:28 |
| 10 | MR. BRILLE:  Objection; form. | 09:00:29 |
| 11 | MR. FLUMENBAUM:  Objection as to form. | 09:00:29 |
| 12 | THE WITNESS:  It's possible. | 09:00:32 |
| 13 | BY MR. VERHOEVEN: | 09:00:32 |
| 14 | Q.  Can you think of anyone else on the board who | 09:00:35 |
| 15 | was more engaged than you? | 09:00:38 |
| 16 | A.  No. | 09:00:41 |
| 17 | Q.  You were also -- in addition to being a | 09:00:45 |
| 18 | member of the board of directors, you were also on the | 09:00:48 |
| 19 | compensation committee; is that right? | 09:00:50 |
| 20 | A.  That is correct. | 09:00:51 |
| 21 | Q.  And what was your role on the compensation | 09:00:55 |
| 22 | committee? | 09:00:58 |
| 23 | A.  Compensation committee would look over all | 09:01:02 |
| 24 | material compensation requests for new hires.  We'd | 09:01:11 |
| 25 | get involved in review process, bonus determination. | 09:01:20 |

Page 27

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.    Okay.  Anything else, generally? | 09:01:24 |
| 2 | A.    Look after the long-term compensation | 09:01:30 |
| 3 | structure of the company and how those programs work | 09:01:34 |
| 4 | and are set up, how they scale. | 09:01:37 |
| 5 | Q.    Were you on any other committees at Uber | 09:01:41 |
| 6 | besides the compensation committee? | 09:01:43 |
| 7 | A.    I joined the audit committee in, I believe, | 09:01:48 |
| 8 | March.  It might have been February.  Sometime in | 09:01:53 |
| 9 | the -- early 2017. | 09:01:55 |
| 10 | Q.    You said the audit committee? | 09:01:59 |
| 11 | A.    Yes. | 09:01:59 |
| 12 | Q.    And what were your responsibilities on the | 09:02:02 |
| 13 | audit committee? | 09:02:04 |
| 14 | A.    To interface with PwC, our lead auditor, to | 09:02:10 |
| 15 | review the status of the audits.  To interface with | 09:02:21 |
| 16 | the internal audit function.  To interface with the | 09:02:25 |
| 17 | compliance function.  To work with the other members | 09:02:28 |
| 18 | of the committee on all those topics. | 09:02:30 |
| 19 | Q.    What is the compliance function? | 09:02:35 |
| 20 | A.    Like many other companies, Uber has a chief | 09:02:41 |
| 21 | compliance officer that looks after internal | 09:02:47 |
| 22 | investigation, whistle-blower claims, those kind of | 09:02:51 |
| 23 | things. | 09:02:52 |
| 24 | Q.    Were you on any other committees when you | 09:02:55 |
| 25 | were working at Uber? | 09:02:56 |

Page 28

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        A.   Yes.                                    09:02:58

2        MR. FLUMENBAUM:  Objection; form.            09:02:59

3   BY MR. VERHOEVEN:                                 09:02:59
```

```
13       Q.   Are you familiar with the fact that the court   09:03:45

14   in the Waymo litigation in the Northern District of     09:03:49

15   California issued a preliminary injunction?             09:03:51

16       MR. FLUMENBAUM:  Um --                              09:03:55

17       MR. VERHOEVEN:  Just asking if he knows about it.   09:03:58

18       MR. FLUMENBAUM:  Right.                             09:03:58

19            If your knowledge is solely based on           09:04:00

20   conversations with counsel, then I don't believe you    09:04:04

21   can answer that question.                               09:04:06

22            We are -- I'm under instructions to            09:04:09

23   preserve -- by the company that Mr. Gurley is to        09:04:14

24   preserve all privileges that the company has.  And I    09:04:17

25   received a letter to that effect, and I'm going to      09:04:20
```

Page 29

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | follow that instruction. | 09:04:26 |
| 2 | But -- so to the extent that you know about | 09:04:29 |
| 3 | the preliminary injunction from other sources other | 09:04:32 |
| 4 | than counsel, and that could include public -- | 09:04:38 |
| 5 | THE WITNESS:  Yeah, it was in the media, so I'm | 09:04:40 |
| 6 | aware of it from that. | 09:04:43 |
| 7 | MR. FLUMENBAUM:  Okay. | 09:04:43 |
| 8 | BY MR. VERHOEVEN: |  |

████  ██  ██████████████████████████████   ████████
██    ███████████████████████                ████████
██    ██  ████████████████████████           ████████
██    ██  ██████████████████                 ████████
██    ██  ██████████████████████████████     ████████
██    ████████████                           ████████

| | | |
|---|---|---|
| 15 | Q.   All right.  Have you exhausted the list of | 09:05:16 |
| 16 | committees that you can recall being on? | 09:05:19 |
| 17 | A.   Yes. | 09:05:20 |
| 18 | Q.   Is it a fair statement to say that in the | 09:05:44 |
| 19 | years 2016, '15 and until you left the board in '17, | 09:05:52 |
| 20 | that you were in regular contact with Mr. Kalanick | 09:05:56 |
| 21 | about Uber? | 09:05:59 |
| 22 | MR. FLUMENBAUM:  Objection as to form. | 09:06:00 |
| 23 | You may answer. | 09:06:02 |
| 24 | THE WITNESS:  So certainly he -- we were both | 09:06:09 |
| 25 | present at most board meetings, so we had contact | 09:06:13 |

Page 30

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | through that.  In terms of one-on-one contact, there | 09:06:17 |
| 2 | would be periods where there would be lots of it, | 09:06:20 |
| 3 | typically around recruiting, that kind of thing, and | 09:06:23 |
| 4 | then there would be periods where there wouldn't be | 09:06:26 |
| 5 | much.  So it wasn't consistent through that time | 09:06:29 |
| 6 | frame. | 09:06:30 |
| 7 | BY MR. VERHOEVEN: | 09:06:30 |
| 8 | Q.   Around May 2016, is it fair to say that you | 09:06:35 |
| 9 | were in regular contact with Mr. Kalanick concerning | 09:06:38 |
| 10 | his management of Uber? | 09:06:41 |
| 11 | A.   I just want to be careful with the definition | 09:06:52 |
| 12 | of "regular."  I'd say consistent amount of contact | 09:06:56 |
| 13 | that we have with all the types of companies that we | 09:07:00 |
| 14 | invest in.  It wasn't abnormally high or low. | 09:07:07 |
| 15 | Q.   When did you first -- you | 09:07:13 |
| 16 | referenced -- withdrawn. | 09:07:16 |
| 17 | You referenced the Otto transaction earlier | 09:07:20 |
| 18 | in your testimony. | 09:07:21 |
| 19 | A.   Um-hum. | 09:07:22 |
| 20 | Q.   When did you first learn about the | 09:07:24 |
| 21 | possibility of that transaction? | 09:07:26 |
| 22 | A.   Shortly before the board approved it. | 09:07:30 |
| 23 | Q.   When did the board approve it? | 09:07:34 |
| 24 | A.   I don't have the date in front of me. | 09:07:37 |
| 25 | Q.   Who told you about it before the board | 09:07:45 |

Page 31

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1    approved it?  How did you learn about it?            09:07:47

 2         A.    I don't have a specific recollection.  ▬▬  ▬▬▬

                 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  ▬▬▬

                 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  ▬▬▬

                 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  ▬▬▬

                 ▬▬▬▬▬▬▬   And that may have happened in that   09:08:06

 7    case.  I don't have a specific recollection,  ▬▬▬  ▬▬▬

                 ▬▬▬▬▬▬▬▬▬▬▬                        09:08:11

                   ▬  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  ▬▬▬

                   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  ▬▬▬

                   ▬  ▬▬                            ▬▬▬

                   ▬  ▬▬▬▬                          ▬▬▬

                   ▬  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬  ▬▬▬

                 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  ▬▬▬

                 ▬▬▬▬▬▬▬▬▬                          ▬▬▬

                   ▬  ▬▬▬▬▬▬▬▬▬▬▬▬▬  ▬▬▬

                 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  ▬▬▬

                 ▬▬▬▬▬                              ▬▬▬

                   ▬  ▬▬▬▬  ▬▬▬▬                    ▬▬▬

20         MR. VERHOEVEN:  Let's get out the board . . . this   09:08:51

21    been previously marked?                        09:08:53

22         MR. JUDAH:  It has been.                   09:08:57

23         MR. VERHOEVEN:  Can we mark another one?   09:09:00

24         MR. JUDAH:  Yes.                           09:09:01

25         MR. VERHOEVEN:  Can you mark this as Exhibit 910.   09:09:06

                                              Page 32
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              (Plaintiff's Exhibit 910 was marked.)        09:09:35

 2      BY MR. VERHOEVEN:

 3          Q.   Mr. Gurley, take a look at Exhibit 910.     09:09:38

 4               And my first question will be, do you       09:09:41

 5      recognize this document?                             09:09:44

 6               (Witness reviews document.)                 09:10:13

 7          A.   Yes, I believe these are the slides that were 09:10:15

 8      presented to the board in that meeting that we were  09:10:18

 9      just discussing.                                     09:10:19

10          Q.   The meeting in which the Otto transaction was 09:10:22

11      approved?                                            09:10:23

12          A.   Yes.                                        09:10:23

13          Q.   It says, ███████████████████████           09:10:27

14               What does ████████ refer to?               09:10:29

15          A.   I don't have any data on that topic.       09:10:31

16          Q.   Would it be fair to conclude that it refers 09:10:34

17      to the Otto transaction?                             09:10:36

18          A.   Yes.                                        09:10:36

19          Q.   And it's dated April 11th, 2016.           09:10:40

20               Do you see that?                            09:10:41

21          A.   Yes.                                        09:10:41

22          Q.   Is that the day in which the board approved 09:10:45

23      the Otto transaction?                                09:10:46

24          A.   I would presume so.                         09:10:54

25          Q.   The second page -- direct your attention to 09:10:57
```

Page 33

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1   the second page where it says, ███████████     And    09:11:01

 2   in particular, under the row that says, ████████       09:11:06

 3   and the column that says, ████████████  I want to     09:11:10

 4   ask you a couple questions.                           09:11:12

 5        Do you see it says, ██████████████████   ███████ 09:11:16
```

```
15   MR. FLUMENBAUM:  Objection as to form.                09:11:51

16        You may answer.                                  09:11:54
```

```
22   BY MR. VERHOEVEN:                                     09:12:13
```

Page 34

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
                                                      09:12:26




 8        MR. FLUMENBAUM:  Objection as to form.      09:12:43




14    BY MR. VERHOEVEN:                                09:13:00










25        Do you see that?                            09:13:43
```

Page 35



```
 1      A.   Yes.                                        09:13:43

 2      MR. FLUMENBAUM:  ██████████                      09:13:47

 3  BY MR. VERHOEVEN:

 4      Q.   ████████████                                09:13:48

 5      Do you see that?                                 09:13:49

 6      A.   Yes, I do.                                  09:13:50
```

Page 36

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 2       Q.    You understood at the time that Uber was        09:15:03

 3   formed by former employees of Waymo/Google?               09:15:08

 4       MR. BRILLE:   Objection; form.                        09:15:08

 5            You said, "Uber."                                09:15:10

 6       MR. VERHOEVEN:   Thank you for catching that.         09:15:14

 7   BY MR. VERHOEVEN:                                         09:15:14



10       MR. FLUMENBAUM:   Objection as to form.               09:15:25

11            You may --                                       09:15:25



14   BY MR. VERHOEVEN:                                         09:15:34
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



1      MR. BRILLE:  Objection; form.      09:16:14

6  BY MR. VERHOEVEN:      09:16:28

25     MR. FLUMENBAUM:  Objection as to form.     09:17:35

Page 38



1        MR. BRILLE:  Same objection.                    09:17:39

                                                          09:18:06

9   BY MR. VERHOEVEN:                                     09:18:06

Page 39

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
21        MR. BRILLE:  Objection; form.                    09:20:09
```

Page 40

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 3    BY MR. VERHOEVEN:                              09:20:27



 6        MR. FLUMENBAUM:  Objection as to form.     09:20:43




11    BY MR. VERHOEVEN:                              09:20:52




15        MR. BRILLE:  Objection; form.              09:21:19




19    BY MR. VERHOEVEN:                              09:21:25
```

Page 41



Page 42

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
6        MR. FLUMENBAUM:  Objection; form.                09:23:19

8     BY MR. VERHOEVEN:                                    09:23:22

13       MR. FLUMENBAUM:  You're misreading it.

14       MR. BRILLE:  Objection; form.                     09:23:43

15       MR. FLUMENBAUM:  You misread it.                  09:23:46

16    BY MR. VERHOEVEN:                                    09:23:46

18       MR. VERHOEVEN:  Thank you again.

19    BY MR. VERHOEVEN::
```

Page 43



1     MR. FLUMENBAUM:  Objection as to form.    09:24:03

2     MR. BRILLE:  Same objection.    09:24:05

6  BY MR. VERHOEVEN:    09:24:12

10     MR. FLUMENBAUM:  Objection as to form.    09:24:29

16  BY MR. VERHOEVEN:    09:24:52

Page 44

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
14      MR. FLUMENBAUM:  Object to form.                09:26:19

15      MR. BRILLE:  Object to form.                    09:26:20
```

```
19    BY MR. VERHOEVEN:                                 09:26:28
```

Page 45

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 6        MR. BRILLE:  Objection.                      09:27:13

 7            I'm just going to instruct the witness,   09:27:16

 8   Mr. Gurley, to the extent that it would require you to  09:27:18

 9   disclose conversations that you had with lawyers about  09:27:21

10   that issue, I would instruct you not to answer.  If    09:27:24

11   you can answer the question without disclosing such     09:27:27

12   communications, you may answer the question.           09:27:29

13        MR. FLUMENBAUM:  We're talking specifically about  09:27:30

14   the board meeting.                                      09:27:31

15        MR. BRILLE:  It is, correct.                       09:27:33

16        MR. FLUMENBAUM:  So --                             09:27:33

17        MR. BRILLE:  So just so you have that --           09:27:36

18        MR. FLUMENBAUM:  We're just focused on the board   09:27:39

19   meeting.                                                09:27:39
```

Page 46

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

 4    BY MR. VERHOEVEN:                                09:28:23

10    MR. BRILLE:  I'm going to interrupt here.        09:28:44

11    THE WITNESS:  Okay.

12    MR. BRILLE:  And I'm going to instruct the witness  09:28:46

13    not to answer the question.                      09:28:48

14         The due diligence effort, as you know,      09:28:49

15    Charlie, has -- privilege has been asserted over that.  09:28:53

16    Whether --

17    MR. VERHOEVEN:  You don't need to make a speech.  09:28:55

18    You can either instruct or whatnot.  I don't need a  09:28:56

19    speech to coach the witness.                     09:29:00

20    MR. BOOCK:  Can the privilege objections be mutual  09:29:03

21    for all parties as well --                       09:29:04

22    MR. VERHOEVEN:  Sure, if you all want to take a   09:29:05

23    privilege on a meeting we've been talking about for  09:29:06

24    half an hour.                                    09:29:08

25    MR. BRILLE:  First of all, there's no coaching   09:29:10

                                              Page 47

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    going on, so don't accuse me of that.              09:29:14

 2        MR. VERHOEVEN:  Well, then don't do it.        09:29:16

 3        MR. BRILLE:  Don't accuse me of that, Charlie.  09:29:16

 4    Okay.  I'm lodging a privilege objection and I'm going  09:29:19

 5    to instruct the witness not to answer the question.    09:29:21

 6    Don't throw around false accusations in depositions.   09:29:25

 7        MR. VERHOEVEN:  Then just either instruct or    09:29:26

 8    don't.  You don't need to explain your reasons.       09:29:30

 9    BY MR. VERHOEVEN:                                     09:29:30

10        Q.   So are you going to follow the instruction  09:29:35

11    not to answer that question?                          09:29:37

12        MR. FLUMENBAUM:  I think we have to until the    09:29:38

13    judge clarifies it.                                   09:29:40
```

19        MR. VERHOEVEN:  Well, we'll see.              09:29:56

20        MR. FLUMENBAUM:  All right.                   09:29:57

21    BY MR. VERHOEVEN:                                 09:29:57

22        Q.   So what did Mr. Kalanick say about the due  09:30:05

23    diligence effort at the meeting?                  09:30:06

24        MR. BRILLE:  Same instruction.               09:30:07

25    BY MR. VERHOEVEN:                                 09:30:07

Page 48

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
6       Q.   What was the third party looking for?      09:30:27

7       MR. BRILLE:  Same instruction.                  09:30:28

8            Do not answer.                             09:30:29

9  BY MR. VERHOEVEN:                                    09:30:29

10      Q.   Was the subject of the due diligence whether  09:30:32

11 or not there had been a violation of -- withdrawn.    09:30:37

12           Was the substance of the due diligence      09:30:39

13 whether or not these key employees had taken IP from  09:30:47

14 their former employer?                                09:30:48

15      MR. BRILLE:  Same instruction.                  09:31:01

16 BY MR. VERHOEVEN:                                    09:31:01

17      Q.   Did you say anything about the subject of   09:31:03

18 indemnification at the meeting?                       09:31:11

19      MR. BRILLE:  Same instruction.  It's the same    09:31:16

20 instruction.                                         09:31:17

21           To the extent he's talking about it with his  09:31:19

22 lawyers --                                           09:31:20

23      MR. VERHOEVEN:  Do you want to confer with him?  09:31:23

24 I'll go off the record if you want to.               09:31:25

25      MR. FLUMENBAUM:  He's not talking about          09:31:26
```

Page 49

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | communications with lawyers or not. | 09:31:28 |
| 2 | MR. BRILLE:  I don't know if he is or not.  If | 09:31:30 |
| 3 | he's -- | |
| 4 | MR. VERHOEVEN:  Let's go off the record. | 09:31:31 |
| 5 | MR. FLUMENBAUM:  There's no reason to go off the | 09:31:33 |
| 6 | record. | 09:31:33 |
| 7 | MR. BRILLE:  I'm going to instruct.  The | 09:31:35 |
| 8 | instruction stands. | 09:31:39 |
| 9 | MR. FLUMENBAUM:  To the extent that you recall | 09:31:44 |
| 10 | saying something to the board as a whole which is not | 09:31:47 |
| 11 | based on conversations with counsel, you can answer | 09:31:50 |
| 12 | that question.  I don't believe that -- | 09:31:53 |
| 13 | MR. BRILLE:  If it's not based -- I'm still | 09:31:55 |
| 14 | concerned about the disclosure of the privileged | 09:31:58 |
| 15 | discussions in this context. | 09:31:59 |
| 16 | MR. FLUMENBAUM:  I've already said that we're | 09:32:01 |
| 17 | going to follow your instruction on that. | 09:32:04 |
| 18 | MR. BRILLE:  Yeah, the whole -- in this case, the | 09:32:06 |
| 19 | whole substance of the disclosure report, privilege | 09:32:09 |
| 20 | has been asserted.  We're going to maintain that | 09:32:11 |
| 21 | privilege.  I'm instructing the witness not to answer | 09:32:13 |
| 22 | the question. | 09:32:14 |
| 23 | MR. BOOCK:  We join in all of that. | 09:32:19 |
| 24 | MR. VERHOEVEN:  So you will instruct on any | 09:32:20 |
| 25 | question I ask this witness about -- going forward | 09:32:24 |

Page 50

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    about this bullet in row that says, █████ and column    09:32:30

2    that says, █████████████████████        ████████    09:32:35

█ █████████████                                            09:32:35

4        MR. BRILLE:  I will instruct based on the specific   09:32:38

5    questions you ask, Charlie.  And I don't need your    09:32:43

6    colloquy on the record.                                09:32:45

7    BY MR. VERHOEVEN:                                       09:32:45

8        Q.   What did you say about the indemnification?    09:32:47

9        MR. BRILLE:  Same instructions.                     09:32:48

10   BY MR. VERHOEVEN:

11       Q.   Do you recall anyone -- you already said       09:32:53

12   that.                                                   09:32:53

Page 51

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 5      Q.   Okay.  Direct your attention to -- there's      09:34:05

 6   little control numbers on the bottom right.             09:34:08

 7           Do you see those?                               09:34:09

 8      A.   Yes.                                            09:34:09

 9      Q.   Direct your attention to the page that ends     09:34:11

10   in 874.                                                 09:34:
```

Page 52

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
  6        MR. BRILLE:  Objection as to form.              09:35:48

 10   BY MR. VERHOEVEN:                                     09:35:58

                                                              :00
 12        MR. BRILLE:  Same objection.                    09:36:05

 13        MR. FLUMENBAUM:  He just objected as to form.  You  09:36:07

 14   may answer.                                          09:36:08

 20   BY MR. VERHOEVEN:                                     09:36:28

 24        MR. BRILLE:  Objection; form.                   09:36:42
```

Page 53

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 4      BY MR. VERHOEVEN:                                09:36:56




11          MR. FLUMENBAUM:  Objection as to form.       09:37:26




15      BY MR. VERHOEVEN:                                09:37:33
```

Page 54

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 55



7        (Witness reviews document.)                    09:40:51

24      MR. BRILLE:  Objection; form.                    09:42:02

Page 56

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 8    BY MR. VERHOEVEN:                              09:42:40




21        MR. FLUMENBAUM:   Objection as to form.    09:43:30
22            You may answer.                         09:43:32
```

Page 57

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

5    BY MR. VERHOEVEN:

6        Q.   I'm just asking --                                    09:43:57

7        MR. FLUMENBAUM:   You're interrupting.  I don't            09:43:58

8    believe Judge Alsup would approve of that.                     09:44:08

9            Finish your answer, please.

12   BY MR. VERHOEVEN:                                              09:44:11

15       MR. FLUMENBAUM:   Asked and answered.                      09:44:15

22   BY MR. VERHOEVEN:                                              09:44:34

Page 58

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

52

2       MR. FLUMENBAUM:  Objection as to form.                09:44:56

9   BY MR. VERHOEVEN:                                          09:45:14

18      Q.   On its face, that doesn't make sense, does        09:45:40

19  it?                                                        09:45:40

20      MR. FLUMENBAUM:  Objection as to form.                 09:45:41

21      MR. BRILLE:  Yeah.                                     09:45:42

22      MR. FLUMENBAUM:  Please reword that question.          09:45:44

23  BY MR. VERHOEVEN:                                          09:45:44

24      Q.   On its face, that doesn't make sense, does        09:45:47

25  it?                                                        09:45:47

Page 59

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        MR. FLUMENBAUM:  Objection as to form.          09:45:48

2        MR. BRILLE:  Same.                              09:45:51

3        THE WITNESS:  If -- I can answer, but I'm just  09:45:55

4   going to be --                                       09:45:56

5        MR. FLUMENBAUM:  Repeat it again.               09:45:58
```

14   BY MR. VERHOEVEN:                                    09:46:26

Veritext Legal Solutions
866 299-5127



1   MR. FLUMENBAUM:  Objection; form.   09:47:06

4 BY MR. VERHOEVEN:   09:47:11

8   MR. BRILLE:  Objection; form.   09:47:31

11 BY MR. VERHOEVEN:   09:47:34

18   MR. FLUMENBAUM:  Objection as to form.   09:47:49

22 BY MR. VERHOEVEN:   09:47:58

Page 61

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

3       MR. BRILLE:  Let me just interject here.         09:48:13

4            Mr. Gurley, in answering that question, I   09:48:16

5    would ask you not to disclose the content or the    09:48:19

6    substance of the due diligence, the results of it or 09:48:22

7    anything else.  I will instruct you not to answer    09:48:25

8    that.                                                09:48:26

9       MR. FLUMENBAUM:  If you can answer -- I think     09:48:33

10   you've already said --                               09:48:35

15   BY MR. VERHOEVEN:                                    09:48:49

23      MR. FLUMENBAUM:  Objection; form.                 09:49:11

Page 62

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   BY MR. VERHOEVEN:                               09:49:15

 ▌     ▌   ▬▬▬   ▬▬▬▬▬▬▬▬▬▬                          ▬▬▬▬

 ▌     ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬                               ▬▬▬▬

 4       MR. BRILLE:  Objection.  Instruct not to answer.   09:49:20

 5           How many times are you going to ask this and   09:49:23

 6   make us instruct?                                09:49:24

 7       MR. VERHOEVEN:  We'll move.  Mr. Gurley will have   09:49:36

 8   to come back.                                    09:49:38

 9   BY MR. VERHOEVEN:                                09:49:38
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



23        MR. BRILLE:  Objection to form.                    09:52:28

Page 64

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



2    BY MR. VERHOEVEN:                                      09:52:41

10        MR. FLUMENBAUM:  Just limit your answer to what   09:53:02

11   was done at the board meeting and not what you may     09:53:06

12   have heard from counsel afterwards.                    09:53:08

15   BY MR. VERHOEVEN:                                      09:53:16

Page 65

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
11        MR. BRILLE:  Objection to form.              09:54:19
12        THE WITNESS:  Ask that again.  I'm not sure I  09:54:25
13   understand the question.                           09:54:26
14   BY MR. VERHOEVEN:                                  09:54:26



19        MR. BRILLE:  Object to form.                  09:54:43
20        MR. FLUMENBAUM:  Object to form as well.      09:54:44


23   BY MR. VERHOEVEN:                                  09:54:53
```

Page 66

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
12        MR. BRILLE:  Object to form.                    09:55:34

13        MR. FLUMENBAUM:  Object to form.                09:55:38

14        MR. VERHOEVEN:  You can only -- we've already   09:55:40

15   agreed --                                            09:55:41

16        MR. FLUMENBAUM:  We were talking at the same time.  09:55:43

17        MR. BRILLE:  We're trying our best.             09:55:45

18        THE WITNESS:  Yeah, I'm not sure of the exact   09:55:49

19   wordsmith -- I'm not sure what you're trying to get at  09:55:52

20   that I'm not answering, but I'm open to try it again.  09:55:57

21        MR. FLUMENBAUM:  Can I suggest something to you,  09:56:02

22   Mr. --                                               09:56:02

23        MR. VERHOEVEN:  Let's just move on.             09:56:04

24        MR. FLUMENBAUM:  Okay.                          09:56:04

25   BY MR. VERHOEVEN:                                    09:56:04
```

Page 67

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 9      MR. BRILLE:  Objection, you read that incorrectly.   09:57:05

10   BY MR. VERHOEVEN:                                        09:57:05
```

Page 68

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
12      MR. FLUMENBAUM:  Again, focused on the board      09:58:31

13   meeting.                                             09:58:33



16   BY MR. VERHOEVEN:                                    09:58:40


18      MR. FLUMENBAUM:  Objection as to form.            09:58:53
```

Page 69



    3    BY MR. VERHOEVEN:                                    09:59:28



Page 71

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page  72

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

15    MR. VERHOEVEN:  I'm going to mark as Exhibit 911        10:06:02

16   some highly redacted minutes of special meeting of       10:06:06

17   board of directors, Uber Technologies, Inc., dated        10:06:11

18   April 11th, 2016.                                         10:06:13

19         (Plaintiff's Exhibit 911 was marked.)              10:06:23

20    MR. BOOCK:  Counsel, during a break -- during a         10:06:29

21   break, could you have a copy for Otto Trucking made of    10:06:33

22   the prior exhibit?  You're not passing any exhibits       10:06:38

23   down.                                                     10:06:38

24    MR. VERHOEVEN:  I'm sorry.  I didn't know there          10:06:39

25   were going to be however many people are here.  This      10:06:39

                                                     Page 73

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | is MoFo's offices.  I think maybe they could make a | 10:06:44 |
| 2 | copy for you. | 10:06:46 |
| 3 | BY MR. VERHOEVEN: | 10:06:46 |
| 4 | Q.   Do you recognize this document? | 10:06:49 |
| 5 | First of all, I'll represent to you that | 10:06:52 |
| 6 | these big blank spaces that say "redacted" were | 10:06:57 |
| 7 | blocked out by counsel for Uber -- | 10:07:01 |
| 8 | A.   Okay. | 10:07:03 |
| 9 | Q.   -- not by us. | 10:07:05 |
| 10 | A.   Okay.  Thank you. | 10:07:07 |
| 11 | Q.   So do you recognize this document? | 10:07:09 |
| 12 | A.   Yes. | 10:07:10 |
| 13 | Q.   What is it? | 10:07:11 |
| 14 | A.   It's minutes for the board meeting that we | 10:07:15 |
| 15 | just discussed. | 10:07:16 |
| 16 | MR. VERHOEVEN:  All right.  That's all I have on | 10:07:35 |
| 17 | that. | 10:07:35 |
| 18 | How long have we been going?  Does anyone | 10:07:42 |
| 19 | need a break? | 10:07:43 |
| 20 | MR. FLUMENBAUM:  Do you want to take a short | 10:07:45 |
| 21 | break?  We can take a short break. | 10:07:47 |
| 22 | MR. VERHOEVEN:  I'm switching subjects. | 10:07:49 |
| 23 | MR. FLUMENBAUM:  Let's take a five-minute break. | 10:07:53 |
| 24 | THE VIDEOGRAPHER:  This marks the end of DVD No. 1 | 10:07:56 |
| 25 | in the deposition of William Gurley.  We're off the | 10:07:59 |

Page 74

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | record at 10:07 a.m. | 10:08:04 |
| 2 | (Recess taken.) | 10:08:04 |
| 3 | THE VIDEOGRAPHER:  Back on the record.  This is | 10:21:54 |
| 4 | the beginning of DVD No. 2, and the time is 10:21 a.m. | 10:21:59 |
| 5 | BY MR. VERHOEVEN: | 10:21:59 |
| 6 | Q.   Mr. Gurley, when did you learn of the | 10:22:03 |
| 7 | allegations in the complaint filed by Waymo in | 10:22:07 |
| 8 | District Court in California? | 10:22:08 |
| 9 | A.   I don't have any recollection of knowing | 10:22:16 |
| 10 | about it prior to it being a public event. | 10:22:21 |
| 11 | Q.   So you learned about it from the press? | 10:22:24 |
| 12 | A.   It's my recollection.  There's a chance we | 10:22:27 |
| 13 | were notified as a board earlier, but I don't have | 10:22:30 |
| 14 | recollection of that. | 10:22:31 |
| 15 | Q.   Did you know that this might happen? | 10:22:35 |
| 16 | A.   I suppose.  I mean, anybody can sue anybody, | 10:22:49 |
| 17 | so I guess there's a knowledge that it could happen, | 10:22:52 |
| 18 | but I wasn't anticipating it happening. | 10:22:55 |
| 19 | Q.   Did you read the complaint? | 10:23:03 |
| 20 | A.   I don't think I read the detailed complaint. | 10:23:07 |
| 21 | Q.   Did you learn what the allegations were? | 10:23:10 |
| 22 | MR. FLUMENBAUM:  Objection. | 10:23:11 |
| 23 | And if you learned it from talking to | 10:23:14 |
| 24 | counsel -- | 10:23:16 |
| 25 | THE WITNESS:  Right. | 10:23:18 |

Page 75

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. FLUMENBAUM:  -- just say that you can't answer | 10:23:20 |
| 2 | that question. | 10:23:21 |
| 3 | MR. VERHOEVEN:  Can we have a yes or no and then | 10:23:23 |
| 4 | he can answer if he learned it from counsel, so I know | 10:23:26 |
| 5 | if he learned about it in the first place? | 10:23:29 |
| 6 | MR. BRILLE:  Yes. | 10:23:31 |
| 7 | BY MR. VERHOEVEN: | 10:23:31 |
| 8 | Q.   Did you learn about the allegations of the | 10:23:34 |
| 9 | complaint? | 10:23:35 |
| 10 | A.   Yes. | 10:23:35 |
| 11 | Q.   And when was that? | 10:23:36 |
| 12 | A.   To the best of my recollection, around the | 10:23:39 |
| 13 | time that it was filed and went public. | 10:23:42 |
| 14 | Q.   And what was your understanding of those | 10:23:44 |
| 15 | allegations? | 10:23:45 |
| 16 | MR. FLUMENBAUM:  Do you have any understanding | 10:23:46 |
| 17 | other than through counsel? | 10:23:47 |
| 18 | THE WITNESS:  From what I've read in the press. | 10:23:50 |
| 19 | MR. FLUMENBAUM:  You want him to answer based on | 10:23:55 |
| 20 | his knowledge through the press? | 10:23:57 |
| 21 | MR. VERHOEVEN:  I want him to answer the question, | 10:24:00 |
| 22 | if he can. | 10:24:01 |
| 23 | THE WITNESS:  Based on my knowledge from reading | 10:24:02 |
| 24 | articles in the press, there were claims of trade | 10:24:07 |
| 25 | secret theft and solicitation of employees and | 10:24:14 |

Page 76

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | specific accusations related to the downloading of the | 10:24:20 |
| 2 | 14,000 or so files. | 10:24:23 |
| 3 | BY MR. VERHOEVEN: | 10:24:23 |
| 4 | Q.   Did you speak with anyone at Uber about the | 10:24:27 |
| 5 | veracity of that allegation about the 14,000 files | 10:24:30 |
| 6 | being downloaded? | 10:24:32 |
| 7 | MR. FLUMENBAUM:  Can he answer yes? | 10:24:35 |
| 8 | MR. BRILLE:  He can answer yes, and then we'll | 10:24:37 |
| 9 | take it a step at a time.  Or no, as the case may be. | 10:24:45 |
| 10 | THE WITNESS:  When the company the size of Google | 10:24:49 |
| 11 | sues one of the companies you're on the board of, I'm | 10:24:52 |
| 12 | 100 percent certain that discussions ensued.  I don't | 10:24:55 |
| 13 | have specific recollection of -- a detailed | 10:24:59 |
| 14 | recollection of a specific discussion.  I'm sure there | 10:25:05 |
| 15 | were many. | 10:25:06 |
| 16 | BY MR. VERHOEVEN: | 10:25:06 |
| 17 | Q.   Did you discuss it with any nonlawyers, such | 10:25:08 |
| 18 | as perhaps, Mr. Kalanick? | 10:25:11 |
| 19 | A.   I don't recall having a specific one-on-one | 10:25:14 |
| 20 | conversation with Travis about this topic. | 10:25:20 |
| 21 | Q.   Do you remember any discussions you had where | 10:25:22 |
| 22 | there weren't lawyers in the room? | 10:25:25 |
| 23 | A.   Not specifically. | 10:25:26 |
| 24 | Q.   So you can't say one way or another whether | 10:25:31 |
| 25 | you had any conversations with -- | 10:25:33 |

Page  77

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   I think it's highly likely.   I just don't | 10:25:36 |
| 2 | recall the details of any specific conversation. | 10:25:39 |
| 3 | Q.   Tell me about what you recall about these | 10:25:41 |
| 4 | conversations. | 10:25:42 |
| 5 | MR. FLUMENBAUM:   Again, exclude anything that -- | 10:25:47 |
| 6 | THE WITNESS:   With a lawyer. | 10:25:49 |
| 7 | MR. FLUMENBAUM:   -- you had with counsel. | 10:25:50 |
| 8 | BY MR. VERHOEVEN: | 10:25:50 |
| 9 | Q.   So the question is:   Did you ask Travis or | 10:25:54 |
| 10 | anybody else at Uber about the veracity of the | 10:25:58 |
| 11 | allegations concerning Levandowski's downloading of | 10:26:03 |
| 12 | the 14,000 files? | 10:26:04 |
| 13 | A.   There were numerous discussions that involved | 10:26:07 |
| 14 | company counsel, external counsel that I presume are | 10:26:12 |
| 15 | privileged, numerous.   What I'm struggling to | 10:26:16 |
| 16 | recollect is if I had conversations with nonattorneys | 10:26:20 |
| 17 | about what you're asking, and I don't have specific | 10:26:25 |
| 18 | recollection. | 10:26:26 |
| 19 | Q.   Well, did you have any conversations -- | 10:26:31 |
| 20 | A.   Highly likely. | 10:26:32 |
| 21 | Q.   Well, what do you remember saying in those | 10:26:35 |
| 22 | circumstances? | 10:26:37 |
| 23 | MR. FLUMENBAUM:   Again, limit your answer to | 10:26:39 |
| 24 | conversations where counsel was not present, to the | 10:26:42 |
| 25 | extent you can remember those. | 10:26:44 |

Page 78

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | THE WITNESS:  I'd be reaching.  I don't have | 10:26:48 |
| 2 | specific recollection of -- it's highly likely it | 10:26:54 |
| 3 | happened because it's such a critical and meaningful | 10:26:57 |
| 4 | event.  The substantive conversations are much more | 10:27:01 |
| 5 | likely to have been with the attorneys because of the | 10:27:04 |
| 6 | nature of the event. | 10:27:05 |
| 7 | BY MR. VERHOEVEN: | 10:27:05 |
| 8 | Q.   So you're saying the only conversations you | 10:27:07 |
| 9 | can recall are with attorneys? | 10:27:09 |
| 10 | A.   Yes. | 10:27:09 |
| 11 | Q.   But you would agree that the filing of the | 10:27:25 |
| 12 | complaint was a highly critical event; right? | 10:27:35 |
| 13 | A.   Yes. | 10:27:35 |
| 14 | Q.   When did you learn -- let me back up. | 10:27:47 |
| 15 | Did there come a point when you learned that | 10:27:52 |
| 16 | Mr. Levandowski was asserting the Fifth Amendment? | 10:27:55 |
| 17 | A.   Yes. | 10:27:55 |
| 18 | Q.   And when did you learn that? | 10:27:59 |
| 19 | A.   I don't have any recollection of knowing that | 10:28:07 |
| 20 | ahead of it being general public knowledge. | 10:28:10 |
| 21 | Q.   Did you learn it from the press then? | 10:28:13 |
| 22 | A.   It's possible. | 10:28:14 |
| 23 | Q.   What was your reaction to that? | 10:28:18 |
| 24 | A.   It -- it's not a topic that I had much | 10:28:28 |
| 25 | familiarity with, so my reaction was to try to find | 10:28:32 |

Page 79

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | out whether it was common or not and why it was | 10:28:34 |
| 2 | happening and, you know, what the company's response | 10:28:39 |
| 3 | should be. | 10:28:40 |
| 4 | Q.   So you weren't concerned when you read it? | 10:28:43 |
| 5 | A.   I didn't say that. | 10:28:44 |
| 6 | Q.   Were you concerned when you read it? | 10:28:47 |
| 7 | A.   I was unaware of how to react to it, and so I | 10:28:53 |
| 8 | sought knowledge to have a broader understanding of | 10:28:56 |
| 9 | it. | 10:28:57 |
| 10 | Q.   You know generally what taking the Fifth is; | 10:29:01 |
| 11 | right? | 10:29:01 |
| 12 | A.   Yeah, but I didn't have a prior knowledge as | 10:29:05 |
| 13 | to what it meant in this situation.  But then I sought | 10:29:10 |
| 14 | that out. | 10:29:11 |
| 15 | Q.   Well, you knew when you take the Fifth, | 10:29:13 |
| 16 | you're refusing to answer questions -- | 10:29:15 |
| 17 | A.   I understand. | 10:29:16 |
| 18 | Q.   -- on the ground that you might incriminate | 10:29:19 |
| 19 | yourself; right? | 10:29:21 |
| 20 | A.   I understand. | 10:29:22 |
| 21 | Q.   And you knew that at the time? | 10:29:23 |
| 22 | A.   I did.  I didn't have a -- I didn't have a | 10:29:27 |
| 23 | full understanding of the -- how unusual -- I didn't | 10:29:34 |
| 24 | have an understanding in that context, but then I did | 10:29:37 |
| 25 | shortly thereafter. | 10:29:38 |

Page 80

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.    And were you concerned about it? | 10:29:40 |
| 2 | A.    Yes. | 10:29:40 |
| 3 | Q.    Did you do anything about it? | 10:29:45 |
| 4 | A.    I asked a lot of questions about him doing | 10:29:51 |
| 5 | that and what the proper response from the company | 10:29:54 |
| 6 | should be. | 10:29:56 |
| 7 | Q.    And what response did you get from the | 10:29:58 |
| 8 | company? | 10:29:59 |
| 9 | MR. BRILLE:  Objection. | 10:29:59 |
| 10 | I'm going to instruct the witness that to the | 10:30:02 |
| 11 | extent it would call for you to disclose | 10:30:05 |
| 12 | attorney-client privilege communications, that you | 10:30:07 |
| 13 | exclude those from your answer. | 10:30:09 |
| 14 | MR. BOOCK:  And I would agree that Otto Trucking | 10:30:09 |
| 15 | joins in all of Uber and Otto's objections. | 10:30:15 |
| 16 | MR. FLUMENBAUM:  Can you answer that question | 10:30:19 |
| 17 | without divulging conversations that you had with | 10:30:22 |
| 18 | counsel for Uber? | 10:30:25 |
| 19 | THE WITNESS:  So as I attempted to understand the | 10:30:33 |
| 20 | situation more broadly and talked to our own | 10:30:40 |
| 21 | counsel -- | 10:30:43 |
| 22 | MR. FLUMENBAUM:  You can't talk about your own | 10:30:45 |
| 23 | counsel, conversations with your own counsel. | 10:30:48 |
| 24 | THE WITNESS:  At any rate, I came to believe that | 10:30:51 |
| 25 | the appropriate action in a situation like this would | 10:30:54 |

Page 81

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | be for the company to terminate based on taking the | 10:30:57 |
| 2 | Fifth. | 10:30:59 |
| 3 | BY MR. VERHOEVEN: | 10:30:59 |
| 4 | Q.   Okay.  And what was the time -- what was the | 10:31:03 |
| 5 | span of time from when you first read about it in the | 10:31:08 |
| 6 | press to when you came to that conclusion? | 10:31:10 |
| 7 | A.   To the best of my recollection, a couple | 10:31:17 |
| 8 | weeks. | 10:31:18 |
| 9 | Q.   And did you express that view? | 10:31:26 |
| 10 | A.   Yes. | 10:31:26 |
| 11 | Q.   To whom? | 10:31:30 |
| 12 | A.   There were some conversations with members of | 10:31:33 |
| 13 | the executive team.  I don't remember exactly who or | 10:31:36 |
| 14 | when.  There's some conversations with legal that are | 10:31:40 |
| 15 | privileged.  But I also expressed it to the board. | 10:31:45 |
| 16 | Q.   What do you remember about any discussions | 10:31:50 |
| 17 | with the executive team on this subject? | 10:31:53 |
| 18 | A.   There were members of the executive team that | 10:32:02 |
| 19 | also agreed that termination was the right course of | 10:32:06 |
| 20 | action. | 10:32:06 |
| 21 | Q.   And who were those members? | 10:32:08 |
| 22 | A.   I don't recall specifically.  I talked to a | 10:32:11 |
| 23 | lot of executive team members. | 10:32:13 |
| 24 | Q.   Were there members who did not think that | 10:32:16 |
| 25 | that was the right course of action? | 10:32:18 |

Page 82

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        A.   I don't recall any.                        10:32:33

2        Q.   Who comprised the executive team at that   10:32:38

3    time?                                               10:32:38

4        A.   I don't know if I'll get them all.  ████   ████

     █  ██████████████████████████  ██████            ████

     █  ██████  ██████████████  ████████  ██████       ████

     █  ████████████████████  ████████  ██████         ████

     █  ████████████████████████████  I'm              10:33:26

9    probably leaving somebody out.                     10:33:28

10       Q.   Was Travis on the team?                    10:33:30

11       A.   Yeah, I mean, he's CEO, so, yeah.  ██████  10:33:37

12   may have left by then.                              10:33:39

13       Q.   Did Mr. Kalanick agree, when you expressed 10:33:45

14   this to the executive team, that Mr. Levandowski    10:33:48

15   should be terminated?                               10:33:52

16       A.   I don't recall if I had a direct discussion 10:33:55

17   with him, although probably at a board level, it was 10:33:58

18   the general understanding of the team that he did not 10:34:04

19   want to terminate Anthony.                          10:34:06

20       Q.   Do you recall what the reasons -- that he  10:34:17

21   stated for why he did not --                        10:34:19

22       A.   Yeah, the statement I remember is that he  10:34:21

23   didn't do anything wrong, so why should we terminate 10:34:24

24   him?                                                10:34:25

25       Q.   And what was said in response to that?  And 10:34:32
```

Page 83

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | if you can recall, who said it?  For example, did | 10:34:42 |
| 2 | someone say, then why is he taking the Fifth? | 10:34:45 |
| 3 | MR. BRILLE:  Object to form. | 10:34:47 |
| 4 | THE WITNESS:  I can certainly say that my opinion | 10:34:53 |
| 5 | at that moment in time was that his taking the Fifth | 10:34:56 |
| 6 | should result in his termination, based on my best | 10:35:02 |
| 7 | knowledge of how that situation should be dealt with. | 10:35:06 |
| 8 | BY MR. VERHOEVEN: | 10:35:06 |
| 9 | Q.   And did -- you referenced conversations with | 10:35:10 |
| 10 | the board on this subject? | 10:35:12 |
| 11 | A.   Yes. | 10:35:12 |
| 12 | Q.   How many such conversations were there? | 10:35:16 |
| 13 | A.   I can't remember specifically, but my general | 10:35:21 |
| 14 | recollection is that it spanned multiple board | 10:35:24 |
| 15 | meetings. | 10:35:31 |
| 16 | Q.   And your position to the board was that he | 10:35:34 |
| 17 | should be terminated? | 10:35:35 |
| 18 | A.   Yes. | 10:35:35 |
| 19 | Q.   And you made that clear on the first of these | 10:35:41 |
| 20 | multiple board meetings? | 10:35:43 |
| 21 | A.   Once I'd gotten up to speed and had proper | 10:35:48 |
| 22 | knowledge of what I thought was the best to do, | 10:35:55 |
| 23 | which -- as I said earlier, there was a time window | 10:35:58 |
| 24 | where that happened.  So it wasn't -- my voicing of | 10:36:06 |
| 25 | this opinion wasn't immediate, like right after he | 10:36:09 |

Page 84

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | pled the Fifth.  It took me a while to ascertain the | 10:36:14 |
| 2 | right answer for this situation. | 10:36:16 |
| 3 | Q.   Did you explain to the board why you thought | 10:36:18 |
| 4 | he should be terminated? | 10:36:19 |
| 5 | A.   Yes. | 10:36:19 |
| 6 | Q.   What did you say? | 10:36:21 |
| 7 | A.   I said, based on all the research I've done, | 10:36:25 |
| 8 | that that's the appropriate action for a company at | 10:36:29 |
| 9 | this moment in time, when someone pleads the Fifth. | 10:36:32 |
| 10 | Q.   And when you say "research" that you've done, | 10:36:34 |
| 11 | can you summarize what you did? | 10:36:36 |
| 12 | A.   Well, I want to be careful.  Some of those | 10:36:38 |
| 13 | conversations were me reaching out to people who were | 10:36:41 |
| 14 | experienced on those matters, which would inherently | 10:36:45 |
| 15 | go to lawyers. | 10:36:46 |
| 16 | Q.   Can you identify the lawyers that you | 10:36:48 |
| 17 | consulted? | 10:36:49 |
| 18 | A.   Certainly Steve Spurlock, who is a lawyer | 10:36:54 |
| 19 | that works for Benchmark. | 10:36:57 |
| 20 | Q.   Any outside counsel? | 10:37:01 |
| 21 | A.   He may have reached out.  I don't know | 10:37:06 |
| 22 | specifically who he talked to. | 10:37:09 |
| 23 | MR. VERHOEVEN:  And I assume, Counsel, you'll | 10:37:12 |
| 24 | instruct if I ask about the substance of his | 10:37:15 |
| 25 | conversation? | 10:37:16 |

Page 85

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. FLUMENBAUM:   Correct. | 10:37:18 |
| 2 | BY MR. VERHOEVEN: | 10:37:18 |
| 3 | Q.   Any other things you did to research besides | 10:37:25 |
| 4 | talk to Steve Spurlock? | 10:37:33 |
| 5 | A.   Not that I have specific recollection of, but | 10:37:35 |
| 6 | I'm sure I -- I did as much work as I did to come up | 10:37:42 |
| 7 | to that point of view.  I just don't remember exactly | 10:37:45 |
| 8 | who I talked to. | 10:37:46 |
| 9 | Q.   Did you read the complaint? | 10:37:48 |
| 10 | A.   I don't have -- I don't have memory of | 10:37:51 |
| 11 | reading the exact complaint.  I may have, but I don't | 10:37:55 |
| 12 | remember. | 10:37:55 |
| 13 | Q.   Did you read the motion for preliminary | 10:37:57 |
| 14 | injunction? | 10:37:58 |
| 15 | A.   It's possible, but I don't recall precisely. | 10:38:03 |
| 16 | Q.   Do you remember reading any legal pleadings | 10:38:07 |
| 17 | that were filed in around the time you were doing your | 10:38:10 |
| 18 | research? | 10:38:11 |
| 19 | A.   I certainly made myself aware of the issues. | 10:38:23 |
| 20 | I just don't know if it was precisely by reading the | 10:38:27 |
| 21 | complaint. | 10:38:28 |
| 22 | Q.   Did you have an understanding as to why, when | 10:38:31 |
| 23 | someone asserts the Fifth Amendment, you thought they | 10:38:34 |
| 24 | should be terminated? | 10:38:36 |
| 25 | MR. FLUMENBAUM:  Objection as to form. | 10:38:42 |

Page 86

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | BY MR. VERHOEVEN: | 10:38:42 |
| 2 | Q.   Let me withdraw that. | 10:38:44 |
| 3 | Did you have an understanding as to the | 10:38:45 |
| 4 | reasons why, in these circumstances here, when | 10:38:48 |
| 5 | Mr. Levandowski asserted the Fifth Amendment, that he | 10:38:52 |
| 6 | should be terminated? | 10:38:53 |
| 7 | A.   Yeah, as I understood a couple of things, | 10:38:56 |
| 8 | one, that that was generally considered to be best | 10:39:00 |
| 9 | practice and so that's a reason in and of itself.  I | 10:39:04 |
| 10 | believe that he is required to be cooperative as part | 10:39:09 |
| 11 | of indemnity claims and that kind of thing, so this | 10:39:16 |
| 12 | is, by definition, being noncooperative. | 10:39:19 |
| 13 | And there was also -- as I'm sure you're | 10:39:34 |
| 14 | aware, there were assertions by the judge in the case | 10:39:37 |
| 15 | that suggested that he had a strong bias for that | 10:39:42 |
| 16 | action. | 10:39:43 |
| 17 | Q.   For what action? | 10:39:44 |
| 18 | A.   For terminating.  That's my interpretation of | 10:39:48 |
| 19 | it. | 10:40:04 |
| 20 | Q.   Did there come a time when you learned that | 10:40:06 |
| 21 | Mr. Levandowski did, indeed, download the 14,000 | 10:40:11 |
| 22 | files? | 10:40:12 |
| 23 | MR. BRILLE:  Object to the form. | 10:40:23 |
| 24 | THE WITNESS:  I don't have any knowledge of that | 10:40:25 |
| 25 | that wouldn't qualify for privileged conversation. | 10:40:30 |

Page 87

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | BY MR. VERHOEVEN: | 10:40:30 |
| 2 | Q.   Well, yes or no? | 10:40:32 |
| 3 | MR. FLUMENBAUM:  He's answered your question.  I'm | 10:40:36 |
| 4 | going to tell him -- instruct him not to answer on the | 10:40:40 |
| 5 | basis of privilege. | 10:40:41 |
| 6 | BY MR. VERHOEVEN: | 10:40:41 |
| 7 | Q.   You had -- you learned something along those | 10:40:45 |
| 8 | lines from counsel; is that what you're saying? | 10:40:48 |
| 9 | MR. FLUMENBAUM:  Objection as to form.  And I'm | 10:40:50 |
| 10 | going to instruct him not to answer that question on | 10:40:53 |
| 11 | privilege grounds. | 10:40:55 |
| 12 | MR. BRILLE:  Same instruction. | 10:40:58 |
| 13 | MR. VERHOEVEN:  Just asking him about his state of | 10:41:01 |
| 14 | mind. | 10:41:02 |
| 15 | MR. FLUMENBAUM:  Well, you're not doing it | 10:41:04 |
| 16 | appropriately. | 10:41:04 |
| 17 | MR. VERHOEVEN:  Okay.  Tell me how to do it | 10:41:06 |
| 18 | appropriately. | 10:41:07 |
| 19 | MR. FLUMENBAUM:  First of all, you don't have a | 10:41:09 |
| 20 | time frame.  You have not excluded conversations with | 10:41:12 |
| 21 | counsel.  You have not excluded events that have | 10:41:15 |
| 22 | occurred subsequent, so -- you know. | 10:41:19 |
| 23 | MR. VERHOEVEN:  I asked him if there came a time | 10:41:21 |
| 24 | when he learned -- | 10:41:23 |
| 25 | MR. FLUMENBAUM:  Ask your question. | 10:41:24 |

Page 88

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. VERHOEVEN:  Okay.  I'll repeat it. | 10:41:26 |
| 2 | BY MR. VERHOEVEN: | 10:41:26 |
| 3 | Q.   Did there come a time, Mr. Gurley, when you | 10:41:29 |
| 4 | learned that Mr. Levandowski, in fact, did download | 10:41:33 |
| 5 | the 14,000 files? | 10:41:35 |
| 6 | MR. BRILLE:  Mr. Gurley, in answering that | 10:41:37 |
| 7 | question, I'm going to instruct you not to answer the | 10:41:39 |
| 8 | question if the only way you can answer the question | 10:41:42 |
| 9 | is to divulge the content of attorney-client | 10:41:46 |
| 10 | communications. | 10:41:47 |
| 11 | THE WITNESS:  Okay. | 10:41:49 |
| 12 | MR. FLUMENBAUM:  Instruction stands. | 10:41:51 |
| 13 | MR. VERHOEVEN:  All right.  It will go on our | 10:41:53 |
| 14 | motion.  Can I ask him what time he learned it? | 10:41:57 |
| 15 | MR. FLUMENBAUM:  If he learned it. | 10:41:59 |
| 16 | BY MR. VERHOEVEN: | 10:41:59 |
| 17 | Q.   Okay.  If you learned it, can you tell me | 10:42:02 |
| 18 | approximately when you learned it? | 10:42:04 |
| 19 | MR. BRILLE:  I'm going to object to the form. | 10:42:07 |
| 20 | Same objection -- I'm going to instruct.  The question | 10:42:10 |
| 21 | is improper and seeks to elicit attorney-client | 10:42:13 |
| 22 | privileged discussions.  The way you're phrasing it is | 10:42:16 |
| 23 | the way it seeks to elicit that type of information. | 10:42:19 |
| 24 | MR. VERHOEVEN:  His counsel just suggested that. | 10:42:22 |
| 25 | MR. BRILLE:  No, he did not. | 10:42:28 |

Page 89

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. VERHOEVEN:  I thought you said that if he | 10:42:29 |
| 2 | learned it -- | 10:42:30 |
| 3 | MR. FLUMENBAUM:  Why don't you start over and -- | 10:42:33 |
| 4 | BY MR. VERHOEVEN: | |
| 5 | Q.  If you learned that Mr. Levandowski did, | 10:42:37 |
| 6 | indeed, download the 14,000 files, when did you learn | 10:42:41 |
| 7 | it? | 10:42:41 |
| 8 | MR. BRILLE:  Object to the form of the question | 10:42:43 |
| 9 | instruct the witness not to answer.  As phrased, it is | 10:42:45 |
| 10 | designed to elicit attorney-client privileged | 10:42:48 |
| 11 | information. | 10:42:49 |
| 12 | MR. FLUMENBAUM:  Correct, I agree with that. | 10:42:52 |
| 13 | MR. VERHOEVEN:  The fact of when the board learned | 10:42:54 |
| 14 | about something? | 10:42:54 |
| 15 | MR. BRILLE:  As phrased, you are seeking to -- | 10:42:58 |
| 16 | MR. FLUMENBAUM:  You are asking questions -- now | 10:43:00 |
| 17 | you're saying the board.  That's not part of your | 10:43:03 |
| 18 | question. | 10:43:04 |
| 19 | MR. VERHOEVEN:  Okay. | 10:43:05 |
| 20 | MR. FLUMENBAUM:  Please start again. | 10:43:07 |
| 21 | BY MR. VERHOEVEN: | 10:43:07 |
| 22 | Q.  Did there come a time when the board learned | 10:43:10 |
| 23 | that Mr. Levandowski did, in fact, download the 14,000 | 10:43:13 |
| 24 | files? | 10:43:14 |
| 25 | MR. BRILLE:  Mr. Gurley, I'm going to give you the | 10:43:16 |

Page 90

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | same instruction.  To the extent you can answer that | 10:43:18 |
| 2 | question without revealing the content of | 10:43:20 |
| 3 | attorney-client privileged communications, you may do | 10:43:23 |
| 4 | so; otherwise, I will instruct you not to answer. | 10:43:26 |
| 5 | BY MR. VERHOEVEN: | 10:43:26 |
| 6 | Q.   It's a yes-or-no question? | 10:43:31 |
| 7 | MR. FLUMENBAUM:  He can't answer that question as | 10:43:32 |
| 8 | worded, based on the instruction from Uber's counsel. | 10:43:37 |
| 9 | MR. VERHOEVEN:  Are you instructing him now? | 10:43:39 |
| 10 | MR. FLUMENBAUM:  Correct. | 10:43:40 |
| 11 | MR. VERHOEVEN:  Even if there's not -- he learned | 10:43:42 |
| 12 | it through a non-attorney communication? | 10:43:44 |
| 13 | MR. BRILLE:  That wasn't the instruction. | 10:43:46 |
| 14 | MR. VERHOEVEN:  So that's what I understood the | 10:43:48 |
| 15 | instruction to be, that he could answer if -- | 10:43:51 |
| 16 | MR. FLUMENBAUM:  From a non -- from -- | 10:43:56 |
| 17 | MR. VERHOEVEN:  Let me ask the question again. | 10:43:58 |
| 18 | BY MR. VERHOEVEN: | 10:43:58 |
| 19 | Q.   Did there come a time when the board learned | 10:44:01 |
| 20 | in a board meeting that Mr. Levandowski, in fact, did | 10:44:05 |
| 21 | download the 14,000 files? | 10:44:09 |
| 22 | MR. BRILLE:  Same instruction.  To the extent that | 10:44:12 |
| 23 | you can answer that question without revealing the | 10:44:14 |
| 24 | content of attorney-client privilege -- | 10:44:16 |
| 25 | THE WITNESS:  I'm not aware of a non-privileged | 10:44:19 |

Page 91

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | discussion where the board shared that knowledge. | 10:44:24 |
| 2 | BY MR. VERHOEVEN: | 10:44:24 |
| 3 | Q.   Was there a privileged instance that you | 10:44:26 |
| 4 | can't talk about that exists that's responsive to my | 10:44:32 |
| 5 | question; yes or no? | 10:44:34 |
| 6 | MR. BRILLE:  As phrased, it calls for the | 10:44:35 |
| 7 | disclosure of attorney-client privileged information. | 10:44:37 |
| 8 | I instruct you not to answer at all. | 10:44:40 |
| 9 | THE WITNESS:  Understood. | 10:44:41 |
| 10 | MR. VERHOEVEN:  I'll move on.  We've got a good | 10:44:45 |
| 11 | enough record for our motion. | 10:44:46 |
| 12 | BY MR. VERHOEVEN: | 10:44:46 |
| 13 | Q.   Let's go back to discussions that we were | 10:44:52 |
| 14 | talking about at the board meeting about the Fifth | 10:44:56 |
| 15 | Amendment. | 10:44:56 |
| 16 | Do you remember that? | 10:44:58 |
| 17 | A.   Um-hum.  Yes. | 10:44:59 |
| 18 | Q.   You had described for me the statements that | 10:45:06 |
| 19 | you made generally at that meeting, or at least that | 10:45:09 |
| 20 | you can recall. | 10:45:10 |
| 21 | A.   Right. | 10:45:11 |
| 22 | Q.   What did Mr. Kalanick say in response at that | 10:45:15 |
| 23 | meeting? | 10:45:17 |
| 24 | A.   To the best of my knowledge, what he said, as | 10:45:19 |
| 25 | I've already stated to you, is that he felt that | 10:45:23 |

Page 92

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Anthony hadn't done anything wrong and, therefore, it | 10:45:27 |
| 2 | would be unfair to terminate him for pleading the | 10:45:30 |
| 3 | Fifth. | 10:45:31 |
| 4 | Q.   Okay.   That was the answer you gave when I | 10:45:34 |
| 5 | asked about conversations with the executive team.   So | 10:45:36 |
| 6 | he said the same thing at the board meetings? | 10:45:39 |
| 7 | A.   Yes. | 10:45:39 |
| 8 | Q.   And did anyone at the board meeting ask the | 10:45:43 |
| 9 | question, then why is he asserting the Fifth Amendment | 10:45:46 |
| 10 | if he didn't do anything wrong? | 10:45:49 |
| 11 | A.   I don't know if that question was | 10:45:56 |
| 12 | specifically asked, but I wouldn't be surprised if it | 10:45:59 |
| 13 | was. | 10:45:59 |
| 14 | Q.   What discussion do you remember concerning | 10:46:04 |
| 15 | this statement that Mr. Kalanick said about him not | 10:46:08 |
| 16 | doing anything wrong? | 10:46:10 |
| 17 | A.   Nothing other than the simple statement. | 10:46:21 |
| 18 | Q.   But what do you remember, how the board | 10:46:22 |
| 19 | reacted?   Did they say -- he said he didn't do | 10:46:26 |
| 20 | anything wrong.   What did the board say in response to | 10:46:29 |
| 21 | that? | 10:46:30 |
| 22 | A.   Just because I had better recollection | 10:46:33 |
| 23 | because it was on my mind at the time, my belief was | 10:46:39 |
| 24 | that if he felt compelled to do this, that the board | 10:46:43 |
| 25 | should -- or the company should take action against | 10:46:48 |

Page 93

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | him and terminate, for the reasons that I've | 10:46:50 |
| 2 | discussed. | 10:46:51 |
| 3 | Q.   Right. | 10:46:51 |
| 4 | So -- but I'm asking you specifically, at the | 10:46:54 |
| 5 | board meeting, Kalanick repeated his view -- | 10:46:59 |
| 6 | A.   Right. | |
| 7 | Q.   -- that Levandowski didn't do anything | 10:47:02 |
| 8 | wrong -- | 10:47:03 |
| 9 | A.   I think I understand your question? | |
| 10 | I don't remember if there were specific | 10:47:06 |
| 11 | conversations that said, well, if he didn't do | 10:47:08 |
| 12 | anything wrong, why would he plead the Fifth?  I don't | 10:47:10 |
| 13 | remember if that happened.  It might have. | 10:47:13 |
| 14 | Q.   Well, do you remember -- was there response | 10:47:15 |
| 15 | to Mr. Kalanick at the meeting, after he made that | 10:47:19 |
| 16 | statement, just generally?  There was a discussion; | 10:47:25 |
| 17 | right? | 10:47:26 |
| 18 | A.   Yeah, I think there was a discussion and I | 10:47:28 |
| 19 | think -- and I don't recall exactly who chimed in, but | 10:47:32 |
| 20 | there was others, like me, that felt that taking the | 10:47:38 |
| 21 | Fifth should be dealt with. | 10:47:40 |
| 22 | Q.   And who were those people? | 10:47:42 |
| 23 | A.   I just said I don't recall exactly who was on | 10:47:45 |
| 24 | that point of view. | 10:47:46 |
| 25 | Q.   Do you remember anyone on the board that you | 10:47:49 |

Page 94

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | can identify? | 10:47:50 |
| 2 | A.   I'd be speculating. | 10:47:56 |
| 3 | Q.   So as a result -- as a result of the first | 10:47:59 |
| 4 | meeting of the board on this subject, was anything | 10:48:05 |
| 5 | done to Mr. Levandowski? | 10:48:09 |
| 6 | A.   Not immediately. | 10:48:12 |
| 7 | Q.   Do you remember anything else that was | 10:48:20 |
| 8 | discussed about the Waymo case or Mr. Levandowski | 10:48:24 |
| 9 | during this initial meeting? | 10:48:43 |
| 10 | A.   There were generic discussions about how we | 10:48:46 |
| 11 | would respond and who would be representing that kind | 10:48:50 |
| 12 | of thing.  There were other discussions that were | 10:48:53 |
| 13 | privileged with those representatives. | 10:48:56 |
| 14 | Q.   Anything that wasn't the subject of attorney | 10:49:00 |
| 15 | advice? | 10:49:01 |

Page 95

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 96

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



3      MR. FLUMENBAUM:  Objection as to form.                    10:51:29

13     BY MR. VERHOEVEN:

Page  97

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

13      MR. FLUMENBAUM:  Objection as to form.          10:53:35

16      MR. VERHOEVEN:  Do you have the board . . .      10:53:59

17  BY MR. VERHOEVEN:

18      Q.   Just for authentication purposes, I'm going  10:54:35

19  to show you a document marked as 912.               10:54:38

20          (Plaintiff's Exhibit 912 was marked.)        10:54:50

21      MR. FLUMENBAUM:  Can I have a copy?              10:54:51

22      MR. VERHOEVEN:  Yes.                            10:54:52

23  BY MR. VERHOEVEN:                                   10:54:52

24      Q.   Again, the heavy redactions on this document  10:54:59

25  that block out the document were created by counsel   10:55:07

Page 98

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | for Uber, so I apologize for that. | 10:55:12 |
| 2 | Can you identify this document, to the extent | 10:55:21 |
| 3 | that it's disclosed? | 10:55:22 |
| 4 | A.   It appears to be the minutes from an April | 10:55:27 |
| 5 | 10th board meeting. | 10:55:28 |
| 6 | Q.   Would you have -- to the extent you can | 10:55:36 |
| 7 | recall -- we're talking about this whole conversation | 10:55:40 |
| 8 | about the Fifth Amendment and whatnot.  Would that | 10:55:44 |
| 9 | have been started at least by this April 10th, 2017 | 10:55:51 |
| 10 | meeting? | 10:55:52 |
| 11 | A.   I don't know.  I don't think so. | 10:55:59 |
| 12 | Q.   Well, I'll represent that it was public that | 10:56:03 |
| 13 | Mr. Levandowski had taken the Fifth before this time. | 10:56:07 |
| 14 | A.   Okay. | 10:56:07 |
| 15 | Q.   Does that change your answer? | 10:56:09 |
| 16 | A.   No, because I had already mentioned to you | 10:56:12 |
| 17 | that there was -- it took me a while -- my experience | 10:56:17 |
| 18 | set of being involved in companies in this particular | 10:56:21 |
| 19 | situation is low, so it took me a while to get an | 10:56:25 |
| 20 | understanding of what I felt was the right course of | 10:56:28 |
| 21 | action. | 10:56:30 |
| 22 | Q.   Do you remember any discussion about the | 10:56:35 |
| 23 | Waymo litigation on April 10th, 2017 board meeting? | 10:56:40 |
| 24 | A.   I do not. | 10:56:41 |
| 25 | Q.   Okay.  There came a time when Uber made a | 10:56:57 |

Page 99

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | decision to remove Mr. Levandowski from working in the | 10:57:03 |
| 2 | area of LiDAR. | 10:57:06 |
| 3 | Are you familiar with that? | 10:57:07 |
| 4 | A.   Um-hum. | 10:57:08 |
| 5 | Q.   "Yes"? | |
| 6 | A.   Yes. | 10:57:09 |
| 7 | Q.   Were you involved in that decision? | 10:57:14 |
| 8 | A.   The board was informed of that decision.  I | 10:57:23 |
| 9 | wouldn't say that the board was involved in that | 10:57:26 |
| 10 | decision.  I think it was a response to many of the | 10:57:36 |
| 11 | conversations that were being had about what is the | 10:57:39 |
| 12 | appropriate course of action in light of everything | 10:57:42 |
| 13 | that's happened. | 10:57:43 |
| 14 | Q.   Do you remember when that decision was made? | 10:57:46 |
| 15 | A.   I do not. | 10:57:47 |
| 16 | Q.   When the board was apprised of the decision, | 10:57:51 |
| 17 | had the decision been communicated to Levandowski yet? | 10:57:57 |
| 18 | A.   I don't know. | 10:57:58 |
| 19 | Q.   Did the board approve it or were they just | 10:58:00 |
| 20 | apprised of it after the fact? | 10:58:03 |
| 21 | A.   I don't have specific recollection.  I don't | 10:58:10 |
| 22 | think that was something that there was a -- like a | 10:58:15 |
| 23 | board vote and approval of. | 10:58:17 |
| 24 | Q.   Did you read the preliminary injunction order | 10:58:24 |
| 25 | in this case? | 10:58:25 |

Page 100

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   Not that I recall. | 10:58:29 |
| 2 | Q.   You became aware that there was a preliminary | 10:58:33 |
| 3 | injunction; right? | 10:58:34 |
| 4 | A.   Um-hum. | 10:58:35 |
| 5 | Q.   "Yes"? | |
| 6 | A.   Yes. | 10:58:36 |
| 7 | Q.   When did you become aware of that? | 10:58:39 |
| 8 | A.   I don't remember the specific date. | 10:58:40 |
| 9 | Q.   How did you learn about it? | 10:58:45 |
| 10 | A.   I don't know if it was through a process like | 10:58:48 |
| 11 | this or in the press.  I don't know.  I'm sure it was | 10:58:53 |
| 12 | discussed at some point in the board meeting, but with | 10:58:57 |
| 13 | lawyers present. | 10:58:59 |
| 14 | Q.   What was your reaction when you learned of | 10:59:01 |
| 15 | it? | 10:59:02 |
| 16 | A.   Just an interpretation of what Google was | 10:59:22 |
| 17 | trying to signal by making that decision, to seek an | 10:59:27 |
| 18 | injunction. | 10:59:28 |
| 19 | Q.   Did you -- were you informed of or learned of | 10:59:34 |
| 20 | the reasoning behind the decision in the public | 10:59:39 |
| 21 | opinion issued by the judge? | 10:59:41 |
| 22 | A.   State the question again. | 10:59:45 |
| 23 | Q.   Did you become aware of the reasoning | 10:59:48 |
| 24 | underlying the decision by the judge to issue a | 10:59:53 |
| 25 | preliminary injunction, which was stated in the actual | 10:59:57 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | order that was public? | 10:59:58 |
| 2 | A.   I didn't have any perspectives that were | 11:00:08 |
| 3 | outside of a discussion from counsel on that topic. | 11:00:13 |
| 4 | Q.   Why didn't Uber fire Mr. Levandowski upon the | 11:00:20 |
| 5 | issuance of the preliminary injunction? | 11:00:23 |
| 6 | A.   I can't speak to that because I wasn't in a | 11:00:32 |
| 7 | position to have authority to make that decision. | 11:00:35 |
| 8 | Q.   Who was? | 11:00:36 |
| 9 | A.   Presumably Travis, the CEO. | 11:00:39 |
| 10 | Q.   So the board didn't have authority to direct | 11:00:42 |
| 11 | that -- I thought you -- withdrawn. | 11:00:46 |
| 12 | I thought you previously mentioned that you | 11:00:48 |
| 13 | had recommended that he be terminated -- | 11:00:50 |
| 14 | A.   I had.  I had. | 11:00:52 |
| 15 | Q.   -- at a board meeting. | 11:00:53 |
| 16 | A.   Yeah. | 11:00:54 |
| 17 | Q.   But the board didn't have authority to order | 11:00:56 |
| 18 | that? | 11:00:57 |
| 19 | A.   The board did not order that, if that's your | 11:01:00 |
| 20 | question. | 11:01:00 |
| 21 | Q.   But they had the authority to? | 11:01:03 |
| 22 | A.   I suppose they could have made a motion and | 11:01:06 |
| 23 | voted to do that. | 11:01:08 |
| 24 | Q.   And you encouraged the board to do that? | 11:01:11 |
| 25 | A.   I encouraged the board to terminate once I | 11:01:13 |

Page 102

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    had an understanding of what my interpretation was of      11:01:18

2    him pleading the Fifth. ███████████████        ██████████    11:01:18

███████████████████████████████████████        ██████████

███████████████████        ██████████

5        Q.   After the issuance of the preliminary            11:01:36

6    injunction order, did you have any discussions with        11:01:39

7    Mr. Kalanick about terminating Mr. Levandowski?           11:01:42

8        A.   Not specifically related to that event.          11:01:47

9        Q.   Okay.  So it didn't cause you to have any         11:01:50

10   more conversations with Mr. Kalanick?                     11:01:54

11       A.   No.  But I had already determined that I         11:01:56

12   thought the best course of action was termination.  So    11:01:58

13   like I was not more compelled; I was already              11:02:02

14   compelled.                                                11:02:04

15       Q.   Did you discuss the preliminary injunction        11:02:05

16   order with Mr. Kalanick and repeat your                   11:02:09

17   recommendation?                                           11:02:10

18       A.   Not outside of a privileged conversation, no.    11:02:14

19       Q.   Was there a board meeting about the              11:02:19

20   preliminary injunction?                                   11:02:20

21       A.   I don't remember if there was one called.  I     11:02:23

22   don't think so.  There were lots of board meetings at     11:02:27

23   this moment in time.                                      11:02:29

24       Q.   Do you recall receiving -- withdrawn.            11:02:34

25            Did you ask to see the due diligence report      11:02:39

                                                   Page 103

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    that was referenced in the board            11:02:42

 2    meeting -- board -- withdrawn.              11:02:46

 3    ████████████████████████████  ████████

 4    ███████████████████████████████  ████████

 5    ████████████████████████████  ████████

 6         MR. FLUMENBAUM:  I'll let him answer yes or no to   11:03:00

 7    that, but I don't want that to be a waiver.  11:03:02

 8              Will you agree to that?            11:03:04

 9         MR. VERHOEVEN:  Agreed.                 11:03:05

10         MR. FLUMENBAUM:  You can answer that yes or no.  11:03:06

11         THE WITNESS:  Yes.                      11:03:08

12    BY MR. VERHOEVEN:                            11:03:08

13         Q.  Did you ask for it?                 11:03:10

14         MR. FLUMENBAUM:  Same rule?             11:03:11

15         MR. VERHOEVEN:  Yes.                    11:03:14

16    BY MR. VERHOEVEN:                            11:03:14

17         Q.  Yes or no?                          11:03:16

18         A.  Yes.                                11:03:16

19         Q.  Did you read it?                    11:03:18

20         MR. FLUMENBAUM:  Again, same rule?      11:03:20

21         MR. VERHOEVEN:  Yes.                    11:03:21

22         MR. FLUMENBAUM:  You can answer that yes or no.  11:03:24

23         THE WITNESS:  Yes.                      11:03:26

24    BY MR. VERHOEVEN:                            11:03:26

25         Q.  And that was around May 12th of this year?  11:03:30
```

                                         Page 104

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. FLUMENBAUM:  You can answer that yes or no. | 11:03:34 |
| 2 | THE WITNESS:  I don't have any notes in front of | 11:03:36 |
| 3 | me.  That sounds like it would be in the general time | 11:03:38 |
| 4 | frame, but I . . . it could be off, you know, by a | 11:03:45 |
| 5 | week or two.  I don't have the specific date. | 11:03:48 |
| 6 | BY MR. VERHOEVEN: | 11:03:48 |
| 7 | Q.   In that range? | 11:03:49 |
| 8 | A.   In that range. | 11:03:50 |
| 9 | Q.   Why did you ask for it? | 11:03:52 |
| 10 | MR. FLUMENBAUM:  Again, I'll let you answer that | 11:03:57 |
| 11 | question, but don't talk about any conversations that | 11:04:06 |
| 12 | you had with either Uber's counsel or your personal | 11:04:10 |
| 13 | counsel at this point. | 11:04:14 |
| 14 | THE WITNESS:  As I already referenced, I felt that | 11:04:22 |
| 15 | this litigation, the one we're involved in today, was | 11:04:26 |
| 16 | critical and important to the company.  Once I had | 11:04:30 |
| 17 | gotten up to speed on Anthony's decision to plead the | 11:04:35 |
| 18 | Fifth and the fact that we should be terminating, I | 11:04:39 |
| 19 | felt that it was my duty as a board member to try and | 11:04:42 |
| 20 | know as much as possible about this situation so I | 11:04:45 |
| 21 | could advise the company in the best possible way. | 11:04:54 |
| 22 | BY MR. VERHOEVEN: | 11:04:54 |
| 23 | Q.   After you read the diligence report, did you | 11:04:59 |
| 24 | take any action based on reading it?  Yes or no? | 11:05:06 |
| 25 | MR. FLUMENBAUM:  Again, no waiver; correct? | 11:05:08 |

Page 105

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        MR. VERHOEVEN:  Correct.                    11:05:10

 2        MR. FLUMENBAUM:  You can answer that.       11:05:15

 3        THE WITNESS:  I did not take any immediate  11:05:30

 4   specific action related to that.                11:05:35

 5   BY MR. VERHOEVEN:                                11:05:35

 6        Q.   What about non-immediate specific action?  11:05:39

 7        MR. FLUMENBAUM:  Again, I don't want to have to  11:05:54

 8   say this.  Do we have -- this whole line of      11:05:56

 9   questioning, not going to be any argument of the  11:05:59

10   waiver --                                        11:05:59

11        MR. VERHOEVEN:  Agreed.  Agreed.            11:06:01

12        MR. FLUMENBAUM:  Because I have to obey the waiver  11:06:03

13   rules here.                                      11:06:04

14        MR. VERHOEVEN:  Agreed.                     11:06:05

15        MR. FLUMENBAUM:  Okay.                      11:06:05

16        THE WITNESS:  I'm not aware of anything that  11:06:29

17   specifically ties to that investigation in terms of my  11:06:35

18   action.                                          11:06:36

19   BY MR. VERHOEVEN:                                11:06:36

20        Q.   You gave a copy of the diligence report to  11:06:39

21   your personal counsel at Paul Weiss; right?     11:06:43

22        MR. FLUMENBAUM:  Again?                     11:06:45

23        MR. VERHOEVEN:  I have a continuing agreement with  11:06:47

24   you.                                             11:06:48

25        MR. FLUMENBAUM:  All right.                 11:06:48
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | THE WITNESS:  Yes. | 11:06:51 |
| 2 | BY MR. VERHOEVEN: | 11:06:51 |
| 3 | Q.   Why did you do that? | 11:06:52 |
| 4 | A.   I think it's consistent with what I said | 11:06:55 |
| 5 | before.  I was trying to understand the details of the | 11:07:02 |
| 6 | litigation and the situation and make sure that I was | 11:07:07 |
| 7 | as informed as I possibly could be. | 11:07:11 |
| 8 | Q.   Were you concerned -- withdrawn. | 11:07:14 |
| 9 | Did you send it to your personal lawyer to | 11:07:16 |
| 10 | make sure that you did the right things with respect | 11:07:19 |
| 11 | to this lawsuit? | 11:07:22 |
| 12 | MR. BRILLE:  Object to form. | 11:07:28 |
| 13 | THE WITNESS:  Yes. | 11:07:29 |
| 14 | BY MR. VERHOEVEN: | 11:07:29 |
| 15 | Q.   Did you send it to him to ensure that you | 11:07:33 |
| 16 | were protected from liability? | 11:07:34 |
| 17 | MR. FLUMENBAUM:  Objection.  I'm going to instruct | 11:07:35 |
| 18 | him not to answer that. | 11:07:40 |
| 19 | BY MR. VERHOEVEN: | 11:07:40 |
| 20 | Q.   Was there any other reason that you sent a | 11:07:43 |
| 21 | copy of this specific report to your personal lawyer? | 11:07:47 |
| 22 | MR. FLUMENBAUM:  Other than what he's answered? | 11:07:49 |
| 23 | MR. VERHOEVEN:  Yes. | 11:07:50 |
| 24 | THE WITNESS:  And just -- you keep saying | 11:07:56 |
| 25 | "personal."  Paul Weiss represents Benchmark, our | 11:07:59 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   firm.  He's not my personal lawyer.            11:08:01
 2   BY MR. VERHOEVEN:                              11:08:01
 3       Q.   So he wasn't your personal lawyer?    11:08:04
 4       A.   Yeah.                                 11:08:05
 5       Q.   Okay.  Thanks for clarifying that.    11:08:08
 6            The question is outstanding.          11:08:11
 7            Was there any other reason other than what  11:08:14
 8   you testified to --                            11:08:15
 9       A.   No.                                   11:08:16
10       Q.   And then you gave a copy to           11:08:21
11   Shearman & Sterling; is that right?            11:08:23
12       A.   It's possible.                        11:08:30
13       Q.   Why would you give a copy to          11:08:33
14   Shearman & Sterling?                           11:08:34
15   ████  ████  ██████████████████████████████   ████████
16   ████  █████████████████████████████████████  ████████
17       Q.   I see.                                11:08:40
18       MR. VERHOEVEN:  Can I get . . . .          11:09:05
19            Let's mark as Exhibit 913 a copy of board  11:09:24
20   minutes dated May 15th, 2017.                  11:09:28
21            (Plaintiff's Exhibit 913 was marked.) 11:09:47
22   BY MR. VERHOEVEN:                              11:09:47
23       Q.   Can you identify this, again,         11:09:49
24   redacted-by-Uber document?                     11:09:52
25            (Witness reviews document.)           11:10:16
```

Page 108

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1      A.   Okay.                                    11:10:16

2      Q.   Can you identify that for me.            11:10:18

3      A.   It's the minutes from a May 15th board   11:10:21

4  meeting of Uber.                                  11:10:23

5      Q.   And you attended that meeting; right?    11:10:25

6      A.   Yes.                                      11:10:25

10     MR. VERHOEVEN:  And I assume, Counsel, that if I  11:10:39

11  ask any questions about the substance of that report,  11:10:41

12  you'll instruct the witness not to answer?        11:10:43

13     MR. FLUMENBAUM:  That's correct.  Based on Uber  11:10:48

14  taking the Fifth on that.                         11:10:49

15     MR. VERHOEVEN:  Oh, it's their fault.         11:10:52

16     MR. FLUMENBAUM:  It's no one's fault.  It's either  11:10:54

17  privileged or it's not privileged.               11:10:57

18  BY MR. VERHOEVEN:                                11:10:57

19     Q.   If you turn to the second page, Mr. Gurley.  11:10:59

20     A.   Yes.                                      11:11:01
```

Page 109

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 6        Q.   Did termination occur after this meeting?    11:11:42
 7   I'm sorry.                                              11:11:43
 8             Did termination occur as a result of this    11:11:46
 9   meeting?                                               11:11:47
10        A.   I don't think so.                            11:11:48
11        Q.   Why not?                                     11:11:49
```

```
15        Q.   Okay.                                        11:12:06
```

```
18        Q.   Is it fair to say that, at this point in     11:12:15
19   time, Mr. Kalanick was aggressively trying to block    11:12:19
20   efforts to terminate Mr. Levandowski?                  11:12:22
21        MR. BRILLE:  Object to form.                      11:12:25
22        THE WITNESS:  I can't assert -- I can't qualify   11:12:30
23   the aggressive part, but it is my interpretation that  11:12:34
24   he was not in favor of termination.                    11:12:38
25   BY MR. VERHOEVEN:                                      11:12:38
```

Page 110

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   Was he trying to block it? | 11:12:41 |
| 2 | A.   I would say he was arguing that we should | 11:12:47 |
| 3 | not. | 11:12:48 |
| 4 | Q.   He was the lead person arguing that; right? | 11:12:51 |
| 5 | A.   From my perspective, correct. | 11:12:54 |
| 6 | Q.   Was there anyone else on the board arguing | 11:12:56 |
| 7 | that at this point in time? | 11:12:58 |
| 8 | A.   I do not recall anyone else having a strong | 11:13:02 |
| 9 | opinion of that on that side of the argument. | 11:13:05 |
| 10 | Q.   What about prior board meetings?  Did anyone | 11:13:09 |
| 11 | other than Mr. Levandowski [sic] argue that | 11:13:13 |
| 12 | termination was inappropriate -- | 11:13:15 |
| 13 | MR. FLUMENBAUM:  Objection as to form. | 11:13:17 |
| 14 | BY MR. VERHOEVEN: | 11:13:17 |
| 15 | Q.   -- at the board meetings? | 11:13:19 |
| 16 | MR. FLUMENBAUM:  Objection as to form. | 11:13:21 |
| 17 | I think you misspoke. | 11:13:22 |
| 18 | BY MR. VERHOEVEN: | 11:13:22 |
| 19 | Q.   Oh.  Thank you. | 11:13:25 |
| 20 | What about other prior board meetings?  Did | 11:13:27 |
| 21 | anyone other than Mr. Kalanick argue that termination | 11:13:30 |
| 22 | was inappropriate? | 11:13:32 |
| 23 | A.   Not that I'm aware of. | 11:13:34 |
| 24 | Q.   At this point in time, of this board meeting, | 11:13:44 |
| 25 | Mr. Levandowski was refusing to cooperate with Uber; | 11:13:49 |

Page 111

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | right? | 11:13:49 |
| 2 | A.    That is my interpretation of the pleading the | 11:13:54 |
| 3 | Fifth. | 11:13:56 |
| 4 | Q.    So yes? | 11:13:57 |
| 5 | A.    Yes. | 11:13:57 |
| 6 | Q.    And he had been refusing to cooperate from | 11:14:01 |
| 7 | the beginning of the complaint all the way through | 11:14:04 |
| 8 | this point; right? | 11:14:05 |
| 9 | MR. FLUMENBAUM:  Objection as to form. | 11:14:12 |
| 10 | THE WITNESS:  I didn't have specific conversations | 11:14:15 |
| 11 | with him.  I don't even know if I ever have.  And so | 11:14:19 |
| 12 | my interpretation of the noncooperation started with | 11:14:23 |
| 13 | the pleading of the Fifth. | 11:14:25 |
| 14 | BY MR. VERHOEVEN: | 11:14:25 |
| 15 | Q.    Okay. | 11:14:26 |
| 16 | A.    That's the only knowledge I have. | 11:14:28 |

Page 112

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 113

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



14      A.    Right.                                      11:17:22

15      Q.    What impact was discussed that             11:17:28

16   would -- withdrawn.                                  11:17:30

Page 114

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 6      MR. FLUMENBAUM:   I don't want you to discuss      11:18:18

 7    anything legally --                                  11:18:21


11    BY MR. VERHOEVEN:                                    11:18:27
```

115

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



13      MR. FLUMENBAUM:  Objection as to form.                11:19:29

18   BY MR. VERHOEVEN:                                         11:19:41

23      Q.   The end result of this meeting was that the      11:19:57

24   board decided that -- to not terminate him at that       11:20:01

25   point in time; right?                                    11:20:02

                                              Page 116

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        A.   I believe that's correct.  I don't        11:20:04

 2   have -- there were several board meetings around this  11:20:07

 3   moment in time.  And eventually one of them, there was  11:20:09

 4   termination, not far from this date.  █████████        11:20:12   ████████
```

```
     ████ ████████████████████████████████████            ████████

     ████ ████████████████████████████████████            ████████

     ████ ████████  ██████████████████████████████████     ████████

     ████ ███████████████████████████████                 ████████

     ████ ████████████████████                            ████████

     █████  ████  ███████████████████████████████         ████████

     █████  ████  ████████                                11:20:37
```

```
12        Q.   Okay.                                     11:20:38

13        MR. VERHOEVEN:  Let's mark as Exhibit 914 minutes  11:20:49

14   of a meeting of board of directors of Uber dated May   11:20:53

15   22nd, 2017.                                            11:20:55

16        (Plaintiff's Exhibit 914 was marked.)            11:21:14

17   BY MR. VERHOEVEN:                                      11:21:14

18        Q.   Take a second and look at that.             11:21:16

19        My first question will be, can you identify       11:21:19

20   this document?                                         11:21:19

21        A.   This is the minutes of the May 22nd meeting  11:21:25

22   of Uber Technologies.                                  11:21:29

23        Q.   Before we get into the document, let me just  11:21:32

24   ask you:  Typically how often does the board meet for  11:21:38

25   Uber, the Uber board meet?                             11:21:41
```

Page 117

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1       A.   Prior to 2017, the Uber board met        11:21:50

 2   predominantly quarterly.                          11:21:53

 3       Q.   Once a quarter?                           11:21:54

 4       A.   Yes.                                      11:21:54

 5       Q.   And did that change in 2017?             11:21:57

 6       A.   Yes.                                      11:21:57

 7       Q.   Why?                                      11:21:59

 8       A.   There were numerous issues that were of  11:22:04

 9   importance that were impacting the company that    11:22:07

10   resulted in the board taking more frequent board   11:22:11

11   meetings, including the Waymo litigation.          11:22:14

12       Q.   Okay.  So this is -- this reflects the    11:22:18

13   minutes of a May 22 board meeting; right?          11:22:21

14       A.   Correct.                                  11:22:21
```

Page 118

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 119



15     MR. FLUMENBAUM:  Can I guide him to where it says?   11:25:11

16     MR. VERHOEVEN:  Yes.                                  11:25:13

19  BY MR. VERHOEVEN:                                        11:25:18

Page 120

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 121

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



10      MR. VERHOEVEN:  Our thing went down.  How long        11:27:52

11   have we been going?                                       11:27:54

12      THE VIDEOGRAPHER:  An hour and six minutes.            11:27:56

13      MR. VERHOEVEN:  Well, let's just keep going then.      11:28:01

14   BY MR. VERHOEVEN:                                         11:28:01

15      Q.   You said Travis made that recommendation in       11:28:03

16   your last answer.  I'm just not clear what you meant      11:28:06

17   by that.                                                  11:28:07

18      A.   At the next board meeting after this, at the      11:28:10

19   beginning of the meeting, Travis started by               11:28:12

20   recommending the termination of Anthony, ████████  ████████

21   ████████████████████████████                              ████████

22      Q.   I see.                                            11:28:18

23         So it's your belief that the board -- or            11:28:21

24   excuse me.                                                11:28:22

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 123

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
18        Q.   You see -- if you would turn to page with the    11:31:19
19   503 on the back of the control number.                     11:31:25
```

Page 124

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 125

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. FLUMENBAUM:  Objection. | 11:33:29 |
| 2 | MR. BRILLE:  Objection. | 11:33:29 |
| 3 | MR. FLUMENBAUM:  You want to exclude counsel from | 11:33:31 |
| 4 | any discussions with the board?  I can't let him | 11:33:39 |
| 5 | answer that question as worded. | 11:33:43 |
| 6 | MR. VERHOEVEN:  So you're instructing him on just | 11:33:45 |
| 7 | general statements -- | 11:33:47 |
| 8 | MR. FLUMENBAUM:  No, on privilege. | 11:33:49 |
| 9 | BY MR. VERHOEVEN: | 11:33:49 |
| 10 | Q.  As of May 22, had the board received -- this | 11:34:08 |
| 11 | is a yes or no. | 11:34:08 |
| 12 | As of May 22, had the board received any | 11:34:13 |
| 13 | report on the veracity of the allegation that | 11:34:16 |
| 14 | Mr. Levandowski had downloaded 14,000 files? | 11:34:25 |
| 15 | MR. FLUMENBAUM:  I'm going to instruct him not to | 11:34:27 |
| 16 | answer that question as worded, based on privilege. | 11:34:33 |
| 17 | MR. VERHOEVEN:  Is there a way I could word it | 11:34:36 |
| 18 | that you would say is not privileged? | 11:34:38 |
| 19 | MR. FLUMENBAUM:  Other than either documents | 11:34:44 |
| 20 | received that are still claimed to be privileged in | 11:34:48 |
| 21 | this situation, did the board receive any reports from | 11:34:54 |
| 22 | anyone other than counsel, and then your . . . | 11:34:58 |
| 23 | MR. VERHOEVEN:  Okay. | 11:34:59 |
| 24 | BY MR. VERHOEVEN: | |
| 25 | Q.  Can you answer that question? | 11:35:00 |

Page 126

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. FLUMENBAUM:  I think you have to rephrase it. | 11:35:03 |
| 2 | MR. VERHOEVEN:  I don't want to make a mistake. | 11:35:05 |
| 3 | Let me reread what you said then. | 11:35:07 |
| 4 | BY MR. VERHOEVEN: | 11:35:07 |
| 5 | Q.   Other than either documents received that are | 11:35:14 |
| 6 | still claimed to be privileged in this situation, did | 11:35:17 |
| 7 | the board receive any reports from anyone other than | 11:35:20 |
| 8 | counsel with respect to the download of the 14,000 | 11:35:25 |
| 9 | files? | 11:35:26 |
| 10 | A.   No. | 11:35:27 |
| 11 | Q.   And this is a yes or no. | 11:35:33 |
| 12 | Did the board receive a report from counsel | 11:35:36 |
| 13 | on that subject matter? | 11:35:38 |
| 14 | MR. FLUMENBAUM:  Instruction not to answer. | 11:35:41 |
| 15 | BY MR. VERHOEVEN: | 11:35:41 |
| 16 | Q.   As of May 22, did the board have any | 11:35:48 |
| 17 | information, any factual information, not legal | 11:35:52 |
| 18 | advice, but factual information about the allegation | 11:35:57 |
| 19 | that Mr. Levandowski had downloaded 14,000 files? | 11:36:01 |
| 20 | MR. FLUMENBAUM:  Instruction not to answer. | 11:36:03 |
| 21 | BY MR. VERHOEVEN: | 11:36:03 |
| 22 | Q.   As of this date, did the board know one way | 11:36:15 |
| 23 | or the other whether Stroz had documents that | 11:36:24 |
| 24 | Mr. Levandowski had taken from Google? | 11:36:27 |
| 25 | MR. FLUMENBAUM:  Instruction not to answer. | 11:36:29 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    BY MR. VERHOEVEN:                                    11:36:29

 2        Q.   Did you know one way or the other?         11:36:31

 3        MR. FLUMENBAUM:  Instruction not to answer.     11:36:53

 4    BY MR. VERHOEVEN:                                    11:36:53

 5        Q.   If you had known that it was true that     11:36:55

 6    Mr. Levandowski downloaded 14,000 Google files and  11:37:01

 7    then went to Otto and was purchased by Uber, would you 11:37:06

 8    have done anything about that?                      11:37:08

 9        MR. BRILLE:  Object to form.                    11:37:09

10        MR. FLUMENBAUM:  You may answer that question as 11:37:11

11    worded.                                             11:37:12

12        THE WITNESS:  When would I have known that?     11:37:16

13    BY MR. VERHOEVEN:

14        Q.   I'm saying, if you would've known that --

15        A.   At what point in time would I have known   11:37:18

16    that?                                               11:37:19

17        Q.   Any point in time.                         11:37:21

18        A.   Well, if I had known that, I would have    11:37:24

19    objected to the transaction, if I had known that at 11:37:29

20    the date of that transaction.                       11:37:31

21        Q.   Okay.  So if you had known that -- if you had 11:37:33

22    known the results of the due diligence report, would 11:37:37

23    you have objected to the transaction?               11:37:39

24        MR. BRILLE:  Object to form.                    11:37:47

25        MR. FLUMENBAUM:  We're making assumptions as to 11:37:55
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | what's in the due diligence report, so -- is there a | 11:37:58 |
| 2 | way you can rephrase that question? | 11:38:02 |
| 3 | MR. VERHOEVEN:  I don't think so.  I'm asking the | 11:38:06 |
| 4 | witness -- I'll ask it again. | 11:38:08 |
| 5 | BY MR. VERHOEVEN: | 11:38:08 |
| 6 | Q.   Without revealing the substance of the | 11:38:11 |
| 7 | diligence report, if you had known about it at the | 11:38:16 |
| 8 | time of the transaction, would you have objected to | 11:38:19 |
| 9 | moving forward with the transaction? | 11:38:22 |
| 10 | MR. BRILLE:  Object to form. | 11:38:23 |
| 11 | MR. FLUMENBAUM:  Would you agree that follows our | 11:38:25 |
| 12 | non-waiver -- | 11:38:26 |
| 13 | MR. VERHOEVEN:  Yes. | 11:38:28 |
| 14 | THE WITNESS:  Yes. | 11:38:32 |
| 15 | MR. VERHOEVEN:  And if I ask why, I assume I'll | 11:38:40 |
| 16 | get an instruction? | 11:38:41 |
| 17 | MR. FLUMENBAUM:  You will until that report is | 11:38:42 |
| 18 | released. | 11:38:44 |
| 19 | MR. VERHOEVEN:  Okay. | 11:38:44 |
| 20 | BY MR. VERHOEVEN: | |
| 21 | Q.   Was that -- withdrawn. | 11:38:48 |
| 22 | Would you have considered that to be material | 11:38:52 |
| 23 | information with respect to whether to approve the | 11:38:57 |
| 24 | transaction or not? | 11:38:59 |
| 25 | MR. FLUMENBAUM:  Same -- not going to argue | 11:39:03 |

Page 129

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | waiver? | 11:39:03 |
| 2 | MR. VERHOEVEN:  Correct. | 11:39:04 |
| 3 | MR. BRILLE:  Object to form. | 11:39:05 |
| 4 | MR. FLUMENBAUM:  You can answer yes or no. | 11:39:07 |
| 5 | THE WITNESS:  Yes. | 11:39:08 |
| 6 | BY MR. VERHOEVEN: | 11:39:08 |
| 7 | Q.   What was your reaction when you saw -- when | 11:39:32 |
| 8 | you read the Stroz report with respect to the fact | 11:39:37 |
| 9 | that it was not disclosed to the board at the time of | 11:39:39 |
| 10 | the acquisition?  Were you upset? | 11:39:43 |
| 11 | MR. BRILLE:  I'll object to form. | 11:39:46 |
| 12 | MR. FLUMENBAUM:  I'll object to the form also. | 11:39:49 |
| 13 | Again I'll let him answer that without claim of | 11:39:55 |
| 14 | waiver. | 11:39:56 |
| 15 | MR. VERHOEVEN:  Yes. | 11:39:56 |
| 16 | THE WITNESS:  Yes. | 11:39:58 |
| 17 | BY MR. VERHOEVEN: | 11:39:58 |
| 18 | Q.   Why? | 11:40:00 |
| 19 | MR. BRILLE:  Same objections. | 11:40:01 |
| 20 | MR. VERHOEVEN:  I'm asking for his reaction. | 11:40:03 |
| 21 | MR. FLUMENBAUM:  So you got -- you got his answer. | 11:40:06 |
| 22 | He can't answer more than that without going into | 11:40:09 |
| 23 | substance. | 11:40:10 |
| 24 | BY MR. VERHOEVEN: | 11:40:10 |
| 25 | Q.   Did you call up Mr. Levandowski after reading | 11:40:13 |

Page 130

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | it and accost him about it? | 11:40:15 |
| 2 | I'm sorry.  Let me withdraw that. | 11:40:16 |
| 3 | Did you call him -- | 11:40:18 |
| 4 | MR. FLUMENBAUM:  Maybe we should take a break. | 11:40:20 |
| 5 | MR. VERHOEVEN:  Just one more. | 11:40:22 |
| 6 | BY MR. VERHOEVEN: | 11:40:22 |
| 7 | Q.   Did you call up Mr. Kalanick or e-mail him or | 11:40:25 |
| 8 | something, in any way communicate with him, to accost | 11:40:29 |
| 9 | him about the fact that this was not disclosed prior | 11:40:32 |
| 10 | to the board making the decision to acquire? | 11:40:37 |
| 11 | MR. BRILLE:  Object to form. | 11:40:38 |
| 12 | THE WITNESS:  I don't know if there was -- I don't | 11:40:40 |
| 13 | know if I called him directly or specifically. | 11:40:43 |
| 14 | BY MR. VERHOEVEN: | 11:40:43 |
| 15 | Q.   Did you have a conversation? | 11:40:45 |
| 16 | A.   With anybody? | 11:40:47 |
| 17 | Q.   With Mr. Kalanick. | 11:40:50 |
| 18 | A.   Yeah, I don't know -- I don't know if I had a | 11:40:53 |
| 19 | direct . . . I just don't remember. | 11:40:56 |
| 20 | Q.   You don't remember expressing any anger to | 11:41:00 |
| 21 | him about it? | 11:41:04 |
| 22 | A.   It's possible.  There's a lot going on at the | 11:41:16 |
| 23 | time. | 11:41:16 |
| 24 | Q.   You were angry about it, weren't you? | 11:41:19 |
| 25 | A.   I was. | 11:41:20 |

Page 131

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        Q.   And it's possible you communicated that to    11:41:22

2   Mr. Levandowski -- or to Mr. Kalanick?                   11:41:25

3        A.   It's possible, but I don't have --            11:41:26

4        MR. FLUMENBAUM:  Not Levandowski.                   11:41:27

5        THE WITNESS:  Right.                                11:41:28

6             I don't have specific recollection of having   11:41:31

7   done that, but it's possible.                            11:41:33

8   BY MR. VERHOEVEN:                                        11:41:33

9        Q.   It's more than likely; right?                  11:41:35

10       A.   I don't know.                                  11:41:37

11       MR. FLUMENBAUM:  Objection.  Objection.             11:41:38

12       MR. VERHOEVEN:  Do you want to take a break?        11:41:42

13       MR. FLUMENBAUM:  Sure.  Let's take a short break.   11:41:44

14       THE VIDEOGRAPHER:  This marks the end of DVD No. 2  11:41:47

15   in the deposition of William Gurley.  We're off the     11:41:49

16   record at 11:41 a.m.                                    11:41:51

17            (Recess taken.)                                11:41:51

18            (Plaintiff's Exhibit 915 was marked.)          11:52:45

19       THE VIDEOGRAPHER:  Back on the record.              11:52:53

20            This the beginning of DVD No. 3, and the time  11:52:56

21   is 11:52 a.m.                                           11:52:58

22   BY MR. VERHOEVEN:                                       11:52:58

23       Q.   By May of 2017, were you aware that some       11:53:07

24   investors of Uber wanted Mr. Kalanick to resign as      11:53:13

25   CEO?                                                    11:53:14
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   By May . . . | 11:53:27 |
| 2 | Q.   That's three months ago. | 11:53:30 |
| 3 | A.   Yeah.  I'm just trying to remember when some | 11:53:33 |
| 4 | of those conversations first started. | 11:53:36 |
| 5 | I can't -- I can't be specific about whether | 11:53:40 |
| 6 | by May.  Certainly around that time frame people had | 11:53:46 |
| 7 | started to ask that question. | 11:53:48 |
| 8 | Q.   And who are those people? | 11:53:56 |
| 9 | A.   Well, a lot of -- I think many journalists | 11:53:59 |
| 10 | had begun to ask that question.  So you'd see | 11:54:02 |
| 11 | editorials in the Financial Times, New York Times, | 11:54:08 |
| 12 | like there's a lot of -- I don't know exactly when | 11:54:10 |
| 13 | they ran.  I think they were around that time frame. | 11:54:12 |
| 14 | But I don't -- I don't recall a specific May | 11:54:20 |
| 15 | conversation with a specific investor about it. | 11:54:24 |
| 16 | Q.   Well, do you recall that you -- at around | 11:54:27 |
| 17 | that time, not specific date or anything -- that you | 11:54:31 |
| 18 | had conversations with investors on that topic? | 11:54:34 |
| 19 | A.   It's possible.  I mean, I -- it may even be | 11:54:40 |
| 20 | probable.  I just don't -- I don't -- I don't know | 11:54:41 |
| 21 | about at that moment in time who I -- exactly who I | 11:54:44 |
| 22 | talked to about that topic. | 11:54:46 |
| 23 | Q.   What do you remember about first -- to the | 11:54:49 |
| 24 | extent that you can make it chronological, can you | 11:54:54 |
| 25 | tell me what you remember first about that topic? | 11:54:58 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        A.   Well, there are a number of instances that      11:55:00

 2   had happened in the company in 2017, and that had led     11:55:05

 3   to a general perception in the public that that might     11:55:09

 4   be the right answer, which --                             11:55:11

 5        Q.   Okay.

 6        A.   -- which, as I mentioned, was discussed in      11:55:16

 7   some of the leading financial publications around the     11:55:19

 8   globe.                                                    11:55:20

 9             And naturally that's going to cause -- you      11:55:23

10   know when something has that much open discussion,        11:55:27

11   it's going to lead to other people discussing what the    11:55:31

12   right action is one way or another in terms of            11:55:34

13   ensuring the long-term health and success of the         11:55:39

14   organization.                                             11:55:40
```

Page 134

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
14        MR. FLUMENBAUM:  If it's a nonprivileged          11:57:16

15   conversation.  We'll -- we'll invoke whatever the      11:57:20

16   confidentiality is in terms of the release of the      11:57:25

17   transcript.                                            11:57:25

18            But if it's nonprivileged, I believe you have 11:57:28

19   to respond to that.                                    11:57:31
```

Page 135

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 136

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 137

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

10    BY MR. VERHOEVEN:                                    12:01:08

11        Q.   You felt that the way that the acquisition   12:01:18

12    was handled was an example of company mismanagement,  12:01:23

13    right?                                               12:01:24

14        MR. BRILLE:   Object to form.                    12:01:31

15        MR. FLUMENBAUM:   You've -- this is in -- you've  12:01:31

16    already -- we already covered this area before.   I   12:01:36

17    mean . . .                                           12:01:37

18        MR. VERHOEVEN:   Are you instructing him?        12:01:37

19        MR. FLUMENBAUM:   I -- I'm not -- I'm not -- are  12:01:39

20    you trying to get privileged communications?   I'm    12:01:42

21    not . . .                                            12:01:45

22        MR. VERHOEVEN:   No.   Can he answer?            12:01:45

23        MR. FLUMENBAUM:   You can answer it if you . . .  12:01:47

24        THE WITNESS:   Yes.   I -- I believe it had       12:01:49

25    the -- had there been more disclosures around the     12:01:55

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | acquisition, that we may not have done the | 12:01:58 |
| 2 | acquisition.  And I believe that had we terminated | 12:02:01 |
| 3 | Anthony, upon him pleading the Fifth, that that would | 12:02:05 |
| 4 | have been a much better interest for the company as a | 12:02:08 |
| 5 | whole. | 12:02:09 |
| 6 | BY MR. VERHOEVEN: | 12:02:09 |
| 7 | Q.   Did other investors share that view? | 12:02:13 |
| 8 | A.   I don't recall having that specific | 12:02:17 |
| 9 | conversation about that specific topic with people | 12:02:20 |
| 10 | outside of the group. | 12:02:22 |
| | ███  ███  ████████ | ███ |
| | ███  ███  ████████ ███ | ███ |
| | ████████████████████ | ███ |
| | ███████████████ | ███ |
| | ███ ███ | ███ |
| 16 | MR. VERHOEVEN:  Let's get the June 20 letter. | 12:02:41 |
| 17 | (Plaintiff's Exhibit 916 was marked.) | 12:03:08 |
| 18 | THE REPORTER:  This is marked Exhibit 916.  There | 12:03:08 |
| 19 | was a prior exhibit marked before we went back on the | |
| 20 | record. | |
| 21 | MR. VERHOEVEN:  Yeah.  Let's do 915 before we go | 12:03:11 |
| 22 | to this.  I forgot about that one. | 12:03:12 |
| 23 | BY MR. VERHOEVEN: | |
| 24 | Q.   So put that aside, Mr. Gurley. | 12:03:15 |
| 25 | A.   Oh, put that aside? | 12:03:18 |

Page 139

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        MR. FLUMENBAUM:  This is 916?              12:03:20

2    BY MR. VERHOEVEN:                              12:03:20

3        Q.   Yes.  But just one housekeeping matter here.

4             Take a look at 915.                   12:03:34

5             I didn't hand it out, did I?          12:03:37

6        A.   No, sir.

7        Q.   Can you identify Exhibit 915?         12:03:50

8        A.   915, board minutes from May 25th of Uber   12:03:55

9    Technologies.                                  12:03:55

10       Q.   And you attended this meeting?        12:03:57

11       A.   Yes.                                   12:04:00

12       Q.   What happened at this meeting?        12:04:04

13       A.   My --                                  12:04:14

14       Q.   The last meeting, just for your information,   12:04:16

15   was May 22?                                     12:04:18

16       A.   Yeah.  My -- my -- my best recollection is   12:04:20

17   this is the meeting that Travis recommended    12:04:21

18   terminating Anthony Levandowski.               12:04:24

19       Q.   Under Item 1, the only thing that's not   12:04:33

20   redacted by counsel for Waymo says:            12:04:37
```

██        ████████████████████████████████        ████████

██     ████████████████████████████████████       ████████

██     ████████████████████                        ████████

```
24            Do you see that?                       12:04:44

25       A.   Did you mean counsel of Uber?          12:04:46
```

                                                    Page 140

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1      Q.    Yeah.   What did I say?  Counsel for Uber.    12:04:50

 2      A.    Okay.   What's the question?                  12:04:52
```

11      MR. FLUMENBAUM:  Again, to the extent that your    12:05:09

12  testimony would involve privileged communications --   12:05:12

13      THE WITNESS:  Right.

14      MR. FLUMENBAUM:  -- you're not at liberty to       12:05:14

15  discuss that.                                           12:05:15

16      THE WITNESS:  I would say this specifically        12:05:19

17  related to legal discussions that was privileged.       12:05:24

18      MR. VERHOEVEN:  Uber's counsel didn't redact this  12:05:26

19  sentence.                                               12:05:27

20      MR. BRILLE:  That's because the sentence itself is 12:05:32

21  not privileged.  But perhaps conversations that relate  12:05:33

22  to these topics may be privileged.                      12:05:36

23  BY MR. VERHOEVEN:                                       12:05:36

Page 141



```
 5        MR. BRILLE:  And I would just say, Mr. Gurley, to    12:06:04

 6   the extent that they don't include legal advice.          12:06:12
```

```
13   BY MR. VERHOEVEN:                                          12:06:31
```

Page 142

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



16    Q.   Okay.  All right.                      12:07:27

17         Now, let's go to 915.                  12:07:29

18    MR. FLUMENBAUM:  916?                        12:07:31

19    MR. VERHOEVEN:  916.                         12:07:33

20    THE WITNESS:  Yeah.                          12:07:34

21  BY MR. VERHOEVEN:                              12:07:34

22    Q.   Can you identify this document?         12:07:37

Page 143

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 3        MR. BRILLE:  I'm going to note my objection to      12:07:59

 4   this exhibit, to the extent it is unsigned.  And it is   12:08:03

 5   unclear to me, at least, what this document is.          12:08:06

 6        THE WITNESS:  Okay.                                 12:08:09

 7   BY MR. VERHOEVEN:                                        12:08:09
```

Page 144

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 145

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



20   BY MR. VERHOEVEN:                                      12:11:24

21      Q.   In addition --                                12:11:25

22      MR. BRILLE:  Wait, wait.                            12:11:26

23      MR. FLUMENBAUM:  Hold it.  Let him finish, please.  12:11:27

24   You interrupted him.                                   12:11:29

25         Go ahead, Bill.                                  12:11:30

                                              Page 146

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 147



Page 148

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



Page 149

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



21   BY MR. VERHOEVEN:                                          12:16:24

22        Q.   You believe that Mr. Kalanick committed fraud   12:16:26

23   on the board of directors by failing to disclose the      12:16:30

24   facts underlying the Otto acquisition, right?             12:16:34

25        A.   Yes.                                             12:16:35

                                                       Page 150

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1       MR. BRILLE:  Object to form.                    12:16:36

2       THE WITNESS:  Yes.                              12:16:37

3    BY MR. VERHOEVEN:                                  12:16:37

4       Q.   And you would agree that that would not be  12:16:39

5    ethical or moral, to commit such a fraud?          12:16:42

6       MR. BRILLE:  Same objection.                    12:16:44

7       THE WITNESS:  I think that's a fair statement.  12:16:45

8    ████████████████████████████████████████████   ████████

9    ████████████████████████████████████████████   ████████

10   ██████████████████████████████████████████████  ████████

11   ████████                                         ████████

12      THE REPORTER:  You have microphones on, gentlemen.  12:17:28

13   I just wanted to let you know.

14      MR. VERHOEVEN:  I was just asking if there was

15   anything else in the letter.

16   BY MR. VERHOEVEN:                                  12:17:28

17      Q.   You agree with the statements in this letter;  12:17:32

18   right?                                             12:17:32

19      A.   I do.                                      12:17:33

20   ████    ████   ███████████████████████████████   ████████

21   ████   ████████████████████████████████████      ████████

22   ████   ██████████████████                         ████████

23   ████    ████   █████████████████████   ████████   ████████

24   ████   █████████████████████                      ████████

25   ████    ████   ████████████████████               ████████

                                            Page 151



Page 152

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

10          (Discussion off the record.)                    12:20:22

11   BY MR. VERHOEVEN:                                       12:20:22

12       Q.   All right.  I'm going to mark as Exhibit 917  12:20:25

13   a Benchmark document from your firm that we just       12:20:30

14   received this morning.                                 12:20:31

15       A.   Okay.                                         12:20:32

16       Q.   For the record, it's Benchmark-Waymo-39       12:20:35

17   through 105.                                           12:20:43

18          (Plaintiff's Exhibit 917 was marked.)           12:21:01

19   BY MR. VERHOEVEN:                                       12:21:01

20       Q.   It's a compilation of documents, it appears,  12:21:04

21   and it's got a -- on the front page, if you look at    12:21:10

22   the top right --                                       12:21:11

23       MR. FLUMENBAUM:  May I have a copy, please?        12:21:14

24       MR. VERHOEVEN:  Do we have copies?                 12:21:16

25       MR. FLUMENBAUM:  Thank you.                        12:21:18

Page 153

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. VERHOEVEN:  I think that's all we have. | 12:21:20 |
| 2 | Hey, we got them by e-mail this morning.  If | 12:21:28 |
| 3 | you have a com- -- if you have a complaint you should | 12:21:28 |
| 4 | talk to the person who produced it. | 12:21:32 |
| 5 | MR. FLUMENBAUM:  Well, just so the record is | 12:21:35 |
| 6 | clear, we produced it by e-mail at the request of | 12:21:39 |
| 7 | Waymo and -- | 12:21:42 |
| 8 | MR. VERHOEVEN:  While we're here in | 12:21:44 |
| 9 | Morrison & Foerster. | 12:21:45 |
| 10 | MR. FLUMENBAUM:  The subpoena was returnable today | 12:21:48 |
| 11 | at -- it was returnable today at your -- at your | 12:21:51 |
| 12 | offices. | 12:21:52 |
| 13 | We produced it by e-mail at your request in a | 12:21:56 |
| 14 | timely fashion, and these documents are part of, I | 12:22:02 |
| 15 | believe, Exhibit A.  It's all part of the public | 12:22:04 |
| 16 | filing in Delaware, so it's not something that you | 12:22:09 |
| 17 | didn't have before. | 12:22:12 |
| 18 | MR. VERHOEVEN:  Okay.  So you'll represent this is | 12:22:13 |
| 19 | part of a public filing in Delaware? | 12:22:16 |
| 20 | MR. FLUMENBAUM:  I believe it was.  I have to take | 12:22:18 |
| 21 | a look at it, but I believe it was.  I didn't check on | 12:22:22 |
| 22 | this particular one, but it's my understanding. | 12:22:26 |
| 23 | BY MR. VERHOEVEN: | 12:22:26 |
| 24 | Q.   Mr. Gurley, do you have an understanding of | 12:22:30 |
| 25 | what your counsel referenced to with respect to this | 12:22:33 |

Page 154

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | public filing in Delaware? | 12:22:37 |
| 2 | What's he talking about? | 12:22:38 |
| 3 | A.   I presume he's talking about the lawsuit that | 12:22:43 |
| 4 | was filed between Benchmark and Mr. Kalanick. | 12:22:47 |
| 5 | Q.   Okay.  So with the understanding that these | 12:22:49 |
| 6 | are exhibits in connection with that suit? | 12:22:53 |
| 7 | A.   I -- | |
| 8 | Q.   That's what counsel is representing; right? | 12:22:56 |
| 9 | A.   Okay. | 12:22:58 |
| 10 | MR. VERHOEVEN:  Are you representing that, | 12:23:00 |
| 11 | Counsel? | 12:23:01 |
| 12 | MR. FLUMENBAUM:  I believe that that's what this | 12:23:03 |
| 13 | reflects. | 12:23:04 |
| 14 | BY MR. VERHOEVEN: | 12:23:04 |
| 15 | Q.   Okay.  Let's turn to Exhibit A. | 12:23:06 |
| 16 | A.   Okay. | |
| 17 | Q.   And my first question is:  Can you identify | 12:23:13 |
| 18 | this document? | 12:23:14 |
| 19 | A.   I believe this is the letter that was signed | 12:23:19 |
| 20 | with -- by Travis at the end of the day of that | 12:23:22 |
| 21 | meeting. | 12:23:23 |
| 22 | Q.   Okay.  So you had some negotiation back and | 12:23:29 |
| 23 | forth and then this got signed? | 12:23:31 |
| 24 | A.   Correct. | 12:23:31 |
| 25 | Q.   So does that refresh your recollection that | 12:23:34 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | he resigned on the same day as the meeting? | 12:23:40 |
| 2 | A.    Yeah, yeah.  I -- I wasn't trying to say he | 12:23:42 |
| 3 | didn't.  You -- you had said in the first meeting, and | 12:23:45 |
| 4 | they met and broke, just like we've been doing, met | 12:23:49 |
| 5 | and broke.  So I was just -- it was just a question of | 12:23:51 |
| 6 | the definition of "first." | 12:23:52 |
| 7 | So it did happen all in one day. | 12:23:55 |
| 8 | Q.    Okay. | |
| 9 | A.    It was over a series of long -- many hours, I | 12:23:59 |
| 10 | think. | 12:23:59 |
| 11 | Q.    Okay.  And here he says, second-to-the-last | 12:24:00 |
| 12 | paragraph: | 12:24:02 |
| 13 | "I will make a public announcement of the | 12:24:04 |
| 14 | foregoing no later than 5:00 p.m. PDT Thursday, June | 12:24:08 |
| 15 | 22, 2017." | |
| 16 | Does that refresh your recollection as to | 12:24:13 |
| 17 | when it was announced? | 12:24:15 |
| 18 | A.    Well, this was his commitment to announce.  I | 12:24:18 |
| 19 | don't know exactly when it was announced, which was | 12:24:21 |
| 20 | your question. | |
| 21 | Q.    You don't have any reason to believe it | 12:24:24 |
| 22 | wasn't announced, do you? | 12:24:25 |
| 23 | A.    It was clearly announced. | 12:24:28 |
| 24 | MR. VERHOEVEN:  What number was that? | 12:24:40 |
| 25 | THE REPORTER:  That one was 17, 917. | 12:24:43 |

Page 156

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | MR. VERHOEVEN:  All right.  Coming up to the end | 12:25:04 |
| 2 | here right on schedule. | 12:25:12 |
| 3 | Let's mark as 917 -- | 12:25:15 |
| 4 | MR. FLUMENBAUM:  918. | 12:25:16 |
| 5 | MR. VERHOEVEN:  -- 918 a draft of a verified | 12:25:23 |
| 6 | complaint, Benchmark Capital Partners versus Travis | 12:25:31 |
| 7 | Kalanick and Uber Technologies. | 12:25:34 |
| 8 | (Plaintiff's Exhibit 918 was marked.) | 12:25:43 |
| 9 | MR. FLUMENBAUM:  I believe you said draft, as | 12:25:45 |
| 10 | opposed to a verified complaint. | 12:25:49 |
| 11 | MR. VERHOEVEN:  Let's see.  Was it signed?  It has | 12:25:56 |
| 12 | E-signatures on it.  So you'll represent this was | 12:26:00 |
| 13 | filed? | 12:26:00 |
| 14 | MR. FLUMENBAUM:  I believe it was.  That's my | 12:26:03 |
| 15 | understanding of what was produced. | 12:26:04 |
| 16 | MR. VERHOEVEN:  Okay.  So with that clarification, | 12:26:06 |
| 17 | can you identify Exhibit 918? | 12:26:09 |
| 18 | MR. FLUMENBAUM:  Can I have a copy, please? | 12:26:11 |
| 19 | Thank you. | 12:26:13 |
| 20 | THE WITNESS:  I believe this is the lawsuit we | 12:26:24 |
| 21 | just discussed. | 12:26:26 |
| 22 | BY MR. VERHOEVEN: | 12:26:26 |
| 23 | Q.   Did you approve the filing of this lawsuit? | 12:26:28 |
| 24 | A.   I did. | 12:26:29 |
| 25 | Q.   Did you review the complaint before it was | 12:26:30 |

Page 157

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   filed?                                        12:26:31

 2        A.   Yes.                                12:26:31

 3        Q.   Do you agree with what the statements are in  12:26:34

 4   the complaint?                                12:26:35

 5        A.   I do.                               12:26:35

 6        Q.   I'd direct your attention to page 5 of -- I'm  12:26:55

 7   sorry -- to paragraph 5 of the complaint.     12:27:01

 8             Do you see it says:                 12:27:21

 9             "Kalanick intentionally concealed and failed  12:27:29

10   to disclose his gross mismanagement and other  12:27:32

11   misconduct at Uber."                          12:27:34

12             Do you see that?                    12:27:38

13        A.   Yes.                                12:27:40

14        Q.   And then it continues:              12:27:41

15             "These matters included, among others,  12:27:45

16   Kalanick's personal involvement in causing Uber to  12:27:49

17   acquire a self-driving vehicle start-up that,  12:27:53

18   according to a confidential report, not disclosed to  12:27:56

19   Benchmark at the time (the 'Stroz report'), allegedly  12:28:04

20   harbored trade secrets stolen from a competitor."  12:28:08

21             Do you see that?                    12:28:09

22        A.   Yes.                                12:28:09

23        Q.   And that's a reference to the Waymo  12:28:12

24   litigation and the facts that -- let me rephrase.  12:28:22

25             That's referring to the Otto acquisition?  12:28:27
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   Correct. | 12:28:27 |
| 2 | MR. FLUMENBAUM:  Objection as to form. | 12:28:30 |
| 3 | MR. BRILLE:  Objection as to form. | 12:28:31 |
| 4 | THE WITNESS:  Sorry. | 12:28:31 |
| 5 | MR. FLUMENBAUM:  You can answer. | 12:28:32 |
| 6 | BY MR. VERHOEVEN: | 12:28:32 |
| 7 | Q.   And Mr. Kalanick's personal conduct, with | 12:28:38 |
| 8 | respect to the Otto acquisition, constituted gross | 12:28:44 |
| 9 | mismanagement and misconduct. | 12:28:45 |
| 10 | That's what you're saying here; right? | 12:28:47 |
| 11 | A.   Yes. | 12:28:47 |
| 12 | Q.   And the specific actions that this is | 12:28:56 |
| 13 | referencing to that Mr. Kalanick undertook, are those | 12:29:01 |
| 14 | the actions you've already testified to or is there | 12:29:03 |
| 15 | anything in addition to that? | 12:29:05 |
| 16 | A.   I think we've already discussed it. | 12:29:09 |
| 17 | Q.   Okay.  I direct your attention to paragraph | 12:29:31 |
| 18 | 6. | 12:29:45 |
| 19 | And the second -- take a second and review | 12:29:56 |
| 20 | that. | 12:29:57 |
| 21 | A.   (Witness reviews document.) | |
| 22 | Q.   Do you see at the start it says: | 12:30:12 |
| 23 | "Kalanick knew Benchmark never would have | 12:30:14 |
| 24 | approved," and then it goes on, "if Benchmark had | 12:30:20 |
| 25 | known the truth about Kalanick's prior conduct." | 12:30:24 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Do you see that? | 12:30:24 |
| 2 | A.   Yes. | 12:30:25 |
| 3 | Q.   And this refers, in part, to your prior | 12:30:30 |
| 4 | testimony that if Benchmark had known about the | 12:30:35 |
| 5 | information contained in the Stroz report, it would | 12:30:37 |
| 6 | never have agreed to this amendment, right? | 12:30:45 |
| 7 | MR. BRILLE:  Object to the form. | 12:30:46 |
| 8 | MR. FLUMENBAUM:  Object to the form. | 12:30:47 |
| 9 | You can answer. | |
| 10 | BY MR. VERHOEVEN: | |
| 11 | Q.   Well, you're correct.  Let me rephrase. | 12:30:51 |
| 12 | This refers to your prior testimony that | 12:30:54 |
| 13 | Benchmark never would have approved the transaction | 12:30:56 |
| 14 | had it been aware of the Stroz report, correct? | 12:31:02 |
| 15 | MR. BRILLE:  Same objection. | 12:31:03 |
| 16 | MR. FLUMENBAUM:  Objection as to form, but you | 12:31:05 |
| 17 | may -- | 12:31:06 |
| 18 | THE WITNESS:  The only clarification I would make | 12:31:08 |
| 19 | is that there are many other matters, also. | 12:31:10 |
| 20 | BY MR. VERHOEVEN: | |
| 21 | Q.   Yeah. | |
| 22 | A.   But this is one of those.  Yes, correct. | 12:31:14 |
| 23 | Q.   But it's your contention that Benchmark would | 12:31:18 |
| 24 | not have approved the amended certificate of | 12:31:18 |
| 25 | incorporation referenced here, or the voting | 12:31:22 |

Page 160

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | agreement, if it had known the real facts behind the | 12:31:25 |
| 2 | Otto acquisition, isn't it? | 12:31:28 |
| 3 | MR. BRILLE:  Object to form. | 12:31:29 |
| 4 | MR. FLUMENBAUM:  You may answer. | 12:31:30 |
| 5 | THE WITNESS:  Along with other things.  But, yes. | 12:31:32 |
| 6 | That was one of -- of many other things. | 12:31:36 |
| 7 | BY MR. VERHOEVEN: | 12:31:36 |
| 8 | Q.   The next sentence says: | 12:31:46 |
| 9 | "Kalanick also understood that these matters, | 12:31:49 |
| 10 | once revealed, would likely force him to resign as | 12:31:53 |
| 11 | Uber's CEO." | 12:31:54 |
| 12 | Do you see that? | 12:31:55 |
| 13 | A.   I do. | 12:31:56 |
| 14 | Q.   And one of those matters is the facts | 12:32:00 |
| 15 | underlying the Otto acquisition, correct? | 12:32:02 |
| 16 | MR. BRILLE:  Object to form. | 12:32:04 |
| 17 | MR. FLUMENBAUM:  You may answer. | 12:32:05 |
| 18 | THE WITNESS:  Yes, one of those facts. | 12:32:08 |
| 19 | BY MR. VERHOEVEN: | 12:32:08 |
| 20 | Q.   And throughout this sentence, if it refers to | 12:32:21 |
| 21 | these matters, your answer would be the same, that | 12:32:24 |
| 22 | included in the matters would be the Otto transaction? | 12:32:28 |
| 23 | MR. FLUMENBAUM:  Objection as to form.  But . . . | 12:32:32 |
| 24 | BY MR. VERHOEVEN: | |
| 25 | Q.   I mean, you can see the next -- okay.  I was | |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | trying to shorten it. | 12:32:35 |
| 2 | The next sentence says: | 12:32:36 |
| 3 | "Kalanick, therefore, knowingly concealed | 12:32:38 |
| 4 | these matters from Benchmark and Uber's board to | 12:32:43 |
| 5 | obtain, for his personal benefit . . ." | 12:32:47 |
| 6 | And then it goes on.  Do you see that? | 12:32:49 |
| 7 | A.   Yes. | 12:32:51 |
| 8 | Q.   "These matters" reference, in part, the Otto | 12:32:55 |
| 9 | acquisition? | 12:32:56 |
| 10 | A.   In part. | 12:32:57 |
| 11 | Q.   And the testimony you gave about it earlier | 12:32:59 |
| 12 | today? | 12:33:00 |
| 13 | A.   That is correct. | 12:33:00 |
| 14 | Q.   Okay.  Why would the -- in your view, why | 12:33:12 |
| 15 | would the facts underlying the Otto acquisition, if | 12:33:16 |
| 16 | known by Benchmark and the board, likely have forced | 12:33:21 |
| 17 | Travis Kalanick to resign? | 12:33:24 |
| 18 | MR. BRILLE:  Object to form. | 12:33:27 |
| 19 | MR. FLUMENBAUM:  Objection to form.  But again, | 12:33:28 |
| 20 | you can't disclose any of the specifics that are in | 12:33:32 |
| 21 | the Stroz report. | 12:33:34 |
| 22 | THE WITNESS:  Understood. | 12:33:39 |
| 23 | So one, just reiterating, like, there were | 12:33:46 |
| 24 | multiple incidents that led us to this conclusion and | 12:33:50 |
| 25 | assess this belief in this lawsuit. | 12:33:54 |

Page 162

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        With respect to the Otto acquisition, there's    12:33:57
2    actually more detail later in the complaint.  But it's   12:34:00
3    become public knowledge, not involving the Stroz         12:34:05
4    report, that at the time the board was asked to          12:34:09
5    approve this, that -- that Travis and other members of   12:34:13
6    the management team had knowledge that there were five   12:34:16
7    disks that were in Anthony's possession, and that he     12:34:23
8    said there was Google information on those disks.  So     12:34:25
9    that's now in the public record.                         12:34:29
10        When you look at the -- we've already been          12:34:32
11   through it.  But you look at the deal, and the fact      12:34:35
12   that so much of it weighed on him and the fact that      12:34:39
13   there were large indemnity provisions put aside          12:34:45
14   specifically for him, I don't know of a way you could    12:34:50
15   possibly present that to a board ████████████ ████████   12:35:02
16   ██ ████████████████ and -- and that be okay.  Like, I -- I  12:35:02
17   can't fathom that.                                       12:35:05
18   BY MR. VERHOEVEN:
19       Q.   When you referred to "him," you're referring   12:35:08
20   to Mr. Levandowski, right, in that answer?              12:35:10
21       MR. BRILLE:  Object to form.                        12:35:13
22       THE WITNESS:  It's in the public record that --     12:35:15
23   that the Uber executives were aware -- I'll -- I'll      12:35:17
24   try not to use pronouns -- were aware that Anthony       12:35:21
25   Levandowski had the five disks.                          12:35:24
```

Page 163

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | When -- when I was talking about -- you know, | 12:35:26 |
| 2 | this is the largest recipient of the proceeds from the | 12:35:32 |
| 3 | acquisition and the leader of the group and the one | 12:35:38 |
| 4 | that stands to benefit the most from the | 12:35:40 |
| 5 | indemnification.  So ███████████████████, when | 12:35:45 |
| 6 | you have this fact, is a -- is misrepresentation, you | 12:35:53 |
| 7 | know, from my point of view. | 12:35:57 |
| 8 | BY MR. VERHOEVEN: | 12:35:57 |
| 9 | Q.   Okay.  Thank you. | 12:35:58 |
| 10 | And why do you think Mr. Kalanick knowingly | 12:36:16 |
| 11 | concealed those issues? | 12:36:18 |
| 12 | MR. FLUMENBAUM:  Objection to form. | 12:36:22 |
| 13 | MR. BRILLE:  Objection to form. | 12:36:24 |
| 14 | BY MR. VERHOEVEN: | 12:36:24 |
| 15 | Q.   Well, let me read the complaint.  Paragraph | 12:36:25 |
| 16 | 6: | |
| 17 | "Kalanick, therefore, knowingly concealed | 12:36:30 |
| 18 | these matters from Benchmark and Uber's board." | 12:36:34 |
| 19 | And then it goes on.  Do you see that? | 12:36:34 |
| 20 | A.   I do. | 12:36:35 |
| 21 | Q.   Why do you think he did? | 12:36:36 |
| 22 | A.   I'd be speculating as to his intent.  I don't | 12:36:40 |
| 23 | know. | 12:36:40 |
| 24 | Q.   Well, it says here: | 12:36:40 |
| 25 | "For his personal benefit, the unilateral | 12:36:47 |

Page 164

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | right to pack the board with three additional | 12:36:50 |
| 2 | directors of his choosing." | |
| 3 | You stand by that statement; right? | 12:36:52 |
| 4 | A.   I do. | 12:36:53 |
| 5 | Q.   Any other reasons? | 12:36:55 |
| 6 | A.   I -- I -- I'd be guessing that -- what his | 12:37:02 |
| 7 | intentions were. | 12:37:03 |
| 8 | Q.   Did you ever talk to Mr. Kalanick about why | 12:37:05 |
| 9 | he concealed the facts underlying the Otto | 12:37:08 |
| 10 | transaction? | 12:37:09 |
| 11 | A.   I have not. | 12:37:10 |
| 12 | Q.   What about with other executive management at | 12:37:14 |
| 13 | Uber? | 12:37:30 |
| 14 | A.   Well, not outside of conversations that were | 12:37:34 |
| 15 | privileged with the -- with the legal team. | 12:37:36 |
| 16 | Q.   I direct your attention to paragraph 33. | 12:38:05 |
| 17 | It's on page 15 of Exhibit 918. | 12:38:08 |
| 18 | MR. FLUMENBAUM:  I'm sorry.  Hold on. | 12:38:10 |
| 19 | Thank you. | 12:38:11 |
| 20 | BY MR. VERHOEVEN: | 12:38:11 |
| 21 | Q.   Are you ready for questions? | 12:38:27 |
| 22 | A.   Yes. | 12:38:27 |
| 23 | Q.   Is this the place where you testified earlier | 12:38:30 |
| 24 | the deal -- the details of the Otto transaction were | 12:38:35 |
| 25 | set forth in more detail, this section entitled -- | 12:38:44 |

Page 165

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        A.   Yes, this section.  That's fair.  Correct.     12:38:46

 2        Q.   You've referenced there's a -- I'm sorry.      12:39:07

 3   The complaint references:                                12:39:12

 4        "Kalanick praised Levandowski as one of the         12:39:15

 5   world's leading autonomous engineers and an              12:39:20

 6   entrepreneur with a real sense of urgency.               12:39:24

 7        "Kalanick further described Levandowski as           12:39:26

 8   his brother from another mother."                        12:39:30

 9        The allegation is -- and your belief is --           12:39:34

10   that he was saying all that, but withholding the          12:39:37

11   information he had from the Stroz investigation;          12:39:41

12   right?                                                   12:39:41

13     MR. BRILLE:  Object to form.                           12:39:44

14     MR. FLUMENBAUM:  Object to form.  You can try to       12:39:46

15   answer that.                                             12:39:49

16     THE WITNESS:  These are -- these are taken from --     12:39:50

17   from -- as you can see, from public statements that he   12:39:53

18   made.                                                    12:39:54

19        His praise for Anthony in these public venues       12:39:59

20   is consistent with what he presented at the board        12:40:03

21   level, and so there's no inconsistency here.             12:40:06

22        I -- and as you -- as you assert, he did not         12:40:12

23   disclose these other details, you know.  And I -- and    12:40:17

24   I had mentioned, and they're later in here in the        12:40:20

25   complaint, that some of that is now public with regard   12:40:23
```

Page 166

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | to the five-disk matter. | 12:40:26 |
| 2 | BY MR. VERHOEVEN: | 12:40:26 |
| 3 | Q.   The last sentence of this paragraph says: | 12:40:29 |
| 4 | "In discussing the Otto transaction in 2016, | 12:40:32 |
| 5 | Kalanick repeatedly emphasized to Gurley and other | 12:40:36 |
| 6 | board members that Uber's acquisition of Otto, | 12:40:39 |
| 7 | employment of Anthony Levandowski, would be | 12:40:41 |
| 8 | transformative for Uber's business." | 12:40:44 |
| 9 | Do you see that? | 12:40:45 |
| 10 | A.   I do. | 12:40:46 |
| 11 | Q.   What is that referring to? | 12:40:48 |
| 12 | A.   Once again, consistent with what we discussed | 12:40:53 |
| 13 | earlier, there was a -- a big part of the argument for | 12:40:57 |
| 14 | why we needed to do this transaction was to employ | 12:41:01 |
| 15 | Anthony Levandowski, who -- who Mr. Kalanick believed | 12:41:04 |
| 16 | was one of the leading experts on autonomous vehicles | 12:41:07 |
| 17 | in -- in the -- in the world. | 12:41:10 |
| 18 | Q.   Was employing Anthony Levandowski worth | 12:41:14 |
| 19 | $680 million? | 12:41:17 |
| 20 | MR. BRILLE:  Object to form. | 12:41:17 |
| 21 | MR. FLUMENBAUM:  Object to form.  We've sort of | 12:41:19 |
| 22 | been over this. | 12:41:20 |
| 23 | You can answer it again. | 12:41:22 |
| 24 | THE WITNESS:  Yeah, I don't -- I don't mind going | 12:41:24 |
| 25 | over it again. | 12:41:25 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

7    BY MR. VERHOEVEN:                                    12:41:42

8        Q.   I direct your attention to paragraph 67.    12:42:14

9        A.   Oh, wow.                                     12:42:15

10       Q.   Page 30.  All right.  Take a second and read  12:42:31

11   it and tell me when you're ready to answer questions.  12:42:32

12       MR. FLUMENBAUM:   Paragraph 67?                    12:42:36

13       MR. VERHOEVEN:  Paragraph 67.                      12:42:38

14           (Witness reviews document.)                    12:42:49

15       THE WITNESS:  Okay.                                12:42:50

16   BY MR. VERHOEVEN:                                      12:42:50

17       Q.   And this -- this references:                 12:42:51

18           "Kalanick's fraudulent statements and         12:42:54

19   omissions breached his fiduciary duties, including,"  12:42:57

20   and then it gets more specific.                        12:42:59

21           Do you see that?                               12:43:00

22       A.   Um-hum.                                       12:43:01

23       Q.   Which of Mr. Kalanick's statements related to  12:43:08

24   the Otto transaction breached his fiduciary duties?   12:43:13

25       A.   It would seem obvious that this statement    12:43:22

                                              Page 168

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    that was made to the board ████████████████  ████████

█  ████████████████████████████████████████████  ████████

█  ████████████████████████████████████████      ████████

█  ████████████████████████████████ left me --    12:43:37

5    and I can't speak for the other board members -- with   12:43:40

6    an impression that is remarkably different from that    12:43:44

7    that I hold today.                                       12:43:46

8        Q.   And I take it it's your belief that his        12:43:55

9    omission of that critical information during his         12:44:00

10   presentation also constituted fraud and a breach of      12:44:09

11   his fiduciary duties?                                    12:44:11

12       MR. BRILLE:  Object to form.                         12:44:12

13       THE WITNESS:  That is correct.  Once again, this     12:44:14

14   statement refers to other issues also.  But with         12:44:20

15   regard to that specific issue, you are correct.          12:44:24

16   BY MR. VERHOEVEN:                                        12:44:24

17       Q.   Does anything else come to mind, still on       12:44:47

18   paragraph 67 -- understanding it's a general             12:44:52

19   statement, but focusing specifically on the Otto         12:44:55

20   acquisition portion of it.                               12:44:57

21       A.   Um-hum.                                         12:44:59

22       Q.   Does anything else come to mind, in addition    12:45:02

23   to what you've already testified to, that was either a   12:45:09

24   statement or omission by Mr. Kalanick that breached      12:45:13

25   his fiduciary duties or constituted fraud?              12:45:17

Page 169

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   Related to that particular transaction? | 12:45:25 |
| 2 | Q.   Right.  Or related to Otto, related to | 12:45:28 |
| 3 | Mr. Levandowski. | 12:45:29 |
| 4 | A.   Yeah.  Yeah. | 12:45:31 |
| 5 | No, not that we haven't previously discussed. | 12:45:34 |
| 6 | MR. VERHOEVEN:  Perhaps we should take a short | 12:46:02 |
| 7 | break, and I'll just review -- I may have another five | 12:46:06 |
| 8 | minutes of questions -- | 12:46:07 |
| 9 | MR. FLUMENBAUM:  Okay.  Great. | 12:46:08 |
| 10 | MR. VERHOEVEN:  -- but I'm coming up to the end. | 12:46:10 |
| 11 | MR. FLUMENBAUM:  Great. | 12:46:12 |
| 12 | THE VIDEOGRAPHER:  Off the record at 12:46 p.m. | 12:46:14 |
| 13 | (Recess taken.) | 12:46:15 |
| 14 | THE VIDEOGRAPHER:  Back on the record at 12:54 | 12:54:08 |
| 15 | p.m. | 12:54:08 |
| 16 | BY MR. VERHOEVEN: | 12:54:08 |
| 17 | Q.   I direct your attention to paragraph 37 of | 12:54:17 |
| 18 | Exhibit 918, the Benchmark complaint. | 12:54:22 |
| 19 | A.   Um-hum. | 12:54:23 |
| 20 | Q.   And read 37 to yourself and tell me when | 12:54:27 |
| 21 | you're ready to answer questions. | 12:54:29 |
| 22 | (Witness reviews document.) | 12:54:48 |
| 23 | A.   Okay. | 12:54:49 |
| 24 | Q.   So earlier -- well, I direct your attention | 12:54:52 |
| 25 | to the phrase "interim findings." | 12:54:54 |

Page 170

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1          Do you see it's sprinkled through the        12:54:57

2    paragraph there?                                    12:54:58

3       A.   Yes.                                        12:54:58

4       Q.   When we testified earlier about this -- I   12:55:02

5    don't want to go over it again -- I think you just  12:55:05

6    said -- you and I just said "the Stroz report."     12:55:09

7          But were you referencing, specifically in     12:55:11

8    this time period, the interim findings of the Stroz 12:55:14

9    investigation?                                      12:55:16

10      MR. FLUMENBAUM:  Objection as to form.           12:55:19

11   BY MR. VERHOEVEN:                                   12:55:19

12      Q.   When you testified about if something had   12:55:22

13   been disclosed, if the Stroz report had been        12:55:25

14   disclosed, more accurately what you meant is if the 12:55:28

15   interim findings of the Stroz report -- of the Stroz 12:55:30

16   investigation had been disclosed; is that right?    12:55:33

17      A.   This particular complaint was based on all  12:55:44

18   that information that was in the public record.      12:55:46

19          There are documents related to this lawsuit  12:55:50

20   that highlight that, as of this date, there were these 12:55:54

21   interim findings available.                          12:55:55

22      Q.   Right.                                       12:55:59

23      A.   And we're merely highlighting that those were 12:55:59

24   never disclosed to the board.                        12:56:01

25      Q.   Okay.  I direct your attention to paragraph  12:56:12
```

Page 171

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | 77 of the complaint, Exhibit 918. | 12:56:16 |
| 2 | There's a sentence in here that says: | 12:56:33 |
| 3 | "At the time, Benchmark could not have known | 12:56:38 |
| 4 | of the matters Kalanick intentionally concealed, many | 12:56:42 |
| 5 | of which were within Kalanick's exclusive knowledge or | 12:56:46 |
| 6 | only known to Kalanick and an 'inner circle' of Uber | 12:56:53 |
| 7 | executives loyal to him (many of whom have since been | 12:56:57 |
| 8 | terminated or forced to resign due to the misconduct | 12:57:01 |
| 9 | described above)." | 12:57:06 |
| 10 | Do you see that sentence? | 12:57:08 |
| 11 | A.   Um-hum. | 12:57:10 |
| 12 | Q.   Who was in Kalanick's inner circle, as | 12:57:13 |
| 13 | referenced in this paragraph, to the extent you have | 12:57:19 |
| 14 | knowledge? | 12:57:19 |
| 15 | A.   Sure.  The -- once again, I would reiterate | 12:57:24 |
| 16 | that this complaint and this paragraph reference many | 12:57:29 |
| 17 | issues, not just those related to -- to the Otto | 12:57:33 |
| 18 | acquisition.  And so that phrase may or may not have | 12:57:38 |
| 19 | applicability to what we're discussing today. | 12:57:41 |
| 20 | You know, when you look at the parenthetical | 12:57:44 |
| 21 | phrase about -- | 12:57:49 |
| 22 | Q.   I'm just asking about who the -- who the | 12:57:51 |
| 23 | inner circle is. | 12:57:53 |
| 24 | A.   I -- I was getting to that. | 12:57:55 |
| 25 | Q.   Okay. | |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   So when you look at the phrase about | 12:57:59 |
| 2 | termination or forced to resign -- | 12:58:02 |
| 3 | THE WITNESS:  Is this part confidential also? | 12:58:04 |
| 4 | Because I -- I . . . | 12:58:07 |
| 5 | MR. FLUMENBAUM:  I think the resignations are all | 12:58:10 |
| 6 | public, aren't they? | 12:58:11 |
| 7 | MR. BRILLE:  The fact of a resignation is | 12:58:14 |
| 8 | probably -- is not privileged, the fact of a | 12:58:18 |
| 9 | resignation.  To the extent that you -- | 12:58:22 |
| 10 | THE WITNESS:  I just don't want to get to -- you | 12:58:25 |
| 11 | know. | 12:58:25 |
| 12 | BY MR. VERHOEVEN: | 12:58:25 |
| 13 | Q.   Okay.  I'm not asking you about the | 12:58:36 |
| 14 | parenthetical.  I'm just asking the words "inner | 12:58:39 |
| 15 | circle." | 12:58:40 |
| 16 | A.   Yeah, I know.  It informs it though. | 12:58:43 |
| 17 | Well, let me just state this. | 12:58:50 |
| 18 | With regard to the specific Otto acquisition, | 12:58:55 |
| 19 | you know, as noted in 38, there were -- I think it's | 12:59:02 |
| 20 | 38.  Yeah.  There were -- you know, you have two other | 12:59:06 |
| 21 | parties there that were aware of this fact about the | 12:59:09 |
| 22 | five disks that weren't -- that wasn't disclosed to | 12:59:15 |
| 23 | the board, so there's -- there's two names right | 12:59:18 |
| 24 | there. | 12:59:18 |
| 25 | Q.   What are the two names, for the record? | 12:59:18 |

Page 173

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   Nina Qi and Cameron. | 12:59:24 |
| 2 | Q.   So with respect to the Waymo dispute or | 12:59:29 |
| 3 | the -- withdrawn. | 12:59:30 |
| 4 | With respect to the Otto acquisition, this | 12:59:35 |
| 5 | phrase you interpret to reference those two | 12:59:37 |
| 6 | individuals? | 12:59:38 |
| 7 | A.   Yes. | 12:59:38 |
| 8 | Q.   Has either of those two individuals been | 12:59:47 |
| 9 | terminated, to your knowledge? | 12:59:49 |
| 10 | A.   No. | 12:59:49 |
| 11 | Q.   All right. | |
| 12 | MR. FLUMENBAUM:  Can I have a -- all right. | 13:00:05 |
| 13 | Forget it.  Go ahead. | 13:00:07 |
| 14 | MR. VERHOEVEN:  So what did you want to talk to | 13:00:10 |
| 15 | him about? | 13:00:10 |
| 16 | MR. FLUMENBAUM:  No, just go ahead. | 13:00:13 |
| 17 | MR. VERHOEVEN:  Okay. | 13:00:13 |
| 18 | BY MR. VERHOEVEN: | |
| 19 | Q.   There came a time in which you resigned from | 13:00:16 |
| 20 | the board of Uber? | 13:00:17 |
| 21 | A.   Correct. | 13:00:17 |
| 22 | Q.   When was that, roughly? | 13:00:19 |
| 23 | A.   I think it was a couple of days after Travis | 13:00:27 |
| 24 | signed the resignation letter we've already looked at. | 13:00:32 |
| 25 | Q.   Why did you resign? | 13:00:45 |

Page 174

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        A.    The members of -- of our partnership and I      13:00:49

 2    had a lengthy discussion about trying to -- whether or     13:00:56

 3    not it made sense to swap out the board member that        13:01:00

 4    represented Benchmark with Uber, in an effort to try       13:01:04

 5    and move things forward in a positive direction.           13:01:08

 6            The -- the conversations and back and forth        13:01:13

 7    and events that led to the meeting in Chicago, I think     13:01:16

 8    it's safe to say, had a strain on the relationship         13:01:21

 9    between myself and -- and Mr. Kalanick.  And it was        13:01:29

10    merely a decision from our firm to try and put a new       13:01:35

11    foot forward to try and create kind of a new day and       13:01:39

12    new relationship with the board.                           13:01:41

13        Q.    Did you have any discussions with anyone at      13:01:45

14    Uber about your resignation before you resigned?           13:01:48

15        A.    I did not.                                       13:01:49

16        Q.    What about with other board members?             13:01:51

17        A.    I did not.                                       13:01:53

18        Q.    Have you had any conversations with anybody      13:02:01

19    at Uber since you've resigned from the board?              13:02:04

20        A.    Yeah.  There were -- there were numerous         13:02:04

21    conversations, as part of the handoff process I was        13:02:13

22    involved in, all of those committees.  I wanted to         13:02:16

23    make sure that -- that my partner got the benefit of       13:02:19

24    the -- you know, the transfer of information, that         13:02:23

25    kind of thing.  We had a lot of meetings to make sure      13:02:26
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    that that was so . . .                           13:02:27

 2         Q.   Did your partner assume all the positions    13:02:29

 3    that you had?                                     13:02:31
```



```
22         Q.   Okay.  Did you have any conversations with    13:03:43

23    Arianna Huffington about the Uber acquisition of Otto?  13:04:01

24         A.   I don't recall any conversations with Arianna  13:04:06

25    specifically about the acquisition, no.          13:04:08
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    Q.   Did Ms. Huffington participate and contribute          13:04:13

2    to these board meetings we went through on this             13:04:16

3    subject?                                                    13:04:17

4    A.   I don't recall any specific commentary                 13:04:21

5    related to the board meeting -- that she made related       13:04:24

6    to the board meeting around the Otto acquisition.           13:04:29

11          So I have recollection of those conversations        13:04:47

12   but not -- I don't remember her opining directly on         13:04:51

13   the Otto acquisition.                                       13:04:53

14   Q.   Do you believe she did?                                13:04:56

15   A.   I -- I don't -- I don't recall.                        13:04:58

16   Q.   Do you recall sending Ms. Huffington a copy            13:05:05

17   of the Stroz report?                                        13:05:07

18   A.   I don't recall doing that.                             13:05:11

19   Q.   Why would you have done that, if you did?              13:05:16

20   MR. BRILLE:   Object to form.                               13:05:17

21   BY MR. VERHOEVEN:                                           13:05:17

22   Q.   Okay.  I'll represent that you did.                    13:05:19

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | 13:05:33 |

2     Q.   Did you have a discussion with her about the          13:05:34

3   report?                                                       13:05:35

4     MR. FLUMENBAUM:  You can answer -- you can answer           13:05:38

5   that yes or no, if you recall.                                13:05:40

6     THE WITNESS:  I -- I -- I just don't recall.                13:05:46

7   BY MR. VERHOEVEN:                                             13:05:46

8     Q.   Do you think you would have?                           13:05:49

9     MR. FLUMENBAUM:  Objection as to form.                      13:05:51

10    THE WITNESS:  It's possible.                                13:05:52

11  BY MR. VERHOEVEN:                                             13:05:52

12    Q.   I mean, you sent it to her?                            13:05:55

13    A.   Okay.  If I did, then, it's likely that I              13:05:58

14  did.                                                          13:05:58

15    Q.   Have a conversation?                                   13:05:59

16    A.   Yeah.                                                  13:06:00

17    Q.   You can't remember the substance of any               13:06:02

18  conversation?                                                 13:06:04

19    MR. FLUMENBAUM:  Asked and answered.                        13:06:08

20    THE WITNESS:  I -- I don't recall any specifics.            13:06:11

21    MR. VERHOEVEN:  You're supposed to only object to           13:06:12

22  form.                                                         13:06:13

23  BY MR. VERHOEVEN:                                             13:06:13

24    Q.   What about Mr. Bonderman?  Did you send a              13:06:19

25  copy of the report to him?                                    13:06:21

Page 178

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    A.   I don't recall.                                13:06:22

2    Q.   Do you remember any conversations you had     13:06:26

3  with Mr. Bonderman about the report or the Otto       13:06:31

4  acquisition?                                          13:06:32

19   A.   I don't remember any specific conversations.   13:07:32

20  I would say that it's my opinion that he was also of 13:07:40

21  the belief that Anthony should have been terminated as 13:07:43

22  soon as he pled the Fifth.                           13:07:45

23   Q.   Is that based on conversations with him        13:07:47

24  generally?                                           13:07:49

25   A.   Yes.                                           13:07:49

Page 179

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   And you -- can you recall the specifics of | 13:07:51 |
| 2 | any of those conversations? | 13:07:52 |
| 3 | A.   I don't remember any of the specifics. | 13:07:55 |
| 4 | Q.   Did he contribute during board meetings on | 13:07:57 |
| 5 | this subject? | 13:07:59 |
| 6 | A.   Yes. | 13:07:59 |
| 7 | Q.   Can you remember what he said in any of those | 13:08:01 |
| 8 | meetings? | 13:08:02 |
| 9 | A.   I -- I don't.  I just know that his -- I know | 13:08:04 |
| 10 | that that was his point of view. | 13:08:06 |
| 11 | MR. VERHOEVEN:  Thank you very much, Mr. Gurley. | 13:08:28 |
| 12 | I have no further questions at this time. | 13:08:31 |
| 13 | We have, as you've noticed, several privilege | 13:08:34 |
| 14 | instructions which are currently in dispute.  And if | 13:08:39 |
| 15 | there's a ruling that certain documents have to be | 13:08:43 |
| 16 | produced, we -- just so you know, we may take the | 13:08:47 |
| 17 | position that you have to come back and answer some | 13:08:49 |
| 18 | questions about that. | 13:08:50 |
| 19 | THE WITNESS:  Okay. | 13:08:50 |
| 20 | MR. VERHOEVEN:  Thank you very much for your time. | 13:08:53 |
| 21 | THE WITNESS:  Thank you. | |
| 22 | MR. FLUMENBAUM:  Anybody else? | 13:08:54 |
| 23 | MR. BRILLE:  Not here, no. | 13:08:56 |
| 24 | MR. FLUMENBAUM:  Thank you.  Thank you all. | 13:08:58 |
| 25 | THE VIDEOGRAPHER:  This concludes today's | 13:09:01 |

Page 180

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    deposition of William Gurley, consisting of three        13:09:04

2    DVDs.                                                     13:09:05

3            We're off the record at 1:09 p.m.                 13:09:09

4            (Whereupon, the deposition was adjorned at

5            1:09 p.m.)

6

7

8

9

10

11

12

13

14            _____

15                    JOHN WILLIAM GURLEY

16

17

18

19

20

21

22

23

24

25

Page 181

1     FEDERAL CERTIFICATE OF DEPOSITION OFFICER

2     I, ANRAE WIMBERLEY, CSR NO. 7778, do hereby declare:

3     That, prior to being examined, the witness named in the foregoing deposition was by me duly sworn

4    pursuant to Section 30(f)(1) of the Federal Rules of Civil Procedure and the deposition is a true record of

5    the testimony given by the witness;

6     That said deposition was taken down by me in shorthand at the time and place therein named and

7    thereafter reduced to text under my direction;

8    --X---    That the witness was requested to review the transcript and make any changes to the

9    transcript as a result of that review pursuant to Section 30(e) of the Federal Rules of Civil Procedure;

10    -----    No changes have been provided by the witness during the period allowed;

11    -----    The changes made by the witness are

12    appended to the transcript;

13    -----    No request was made that the transcript be reviewed pursuant to Section 30(e) of the Federal

14    Rules of Civil Procedure.

15    I further declare that I have no interest in the event of the action.

16    I declare under penalty of perjury under the laws

17    of the United States of America that the foregoing is true and correct.

18    WITNESS my hand this 25th day of August, 2017.

19

20

21

22

23

24

25    ANRAE WIMBERLEY, CSR NO. 7778

Veritext Legal Solutions
866 299-5127