QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S MOTION IN LIMINE 14**<br><br>Date:　　　　September 27, 2017<br>Time:　　　　8:00 a.m.<br>Ctrm:　　　　8, 19th Floor<br>Judge:　　　　Honorable William H. Alsup<br>Trial Date:　　October 10, 2017 |

01980-00104/9533592.2

The Court should preclude Defendants from arguing that Anthony Levandowski has not "cooperated" with their investigation and defense efforts in this case. Mr. Levandowski clearly has cooperated with Defendants in this case, although only when it serves him to do so. Nevertheless, both Defendants and Mr. Levandowski have precluded Waymo from taking discovery into the degree of cooperation under the guise of privilege. Once again, however, Defendants should not be allowed to use privilege as a sword and a shield. Such evidence should be excluded.

## BACKGROUND

Throughout this case, Uber has indicated that it plans to tell the jury that Mr. Levandowski has refused to cooperate with their investigation, presumably as an excuse for not completing it. (*See, e.g.*, Dkt. 821 ("After learning Levandowski's explanations for Waymo's allegations, Uber has repeatedly urged him to testify, cooperate, and clear Uber's name."); Dkt. 1088-1 at 78:15-19 (Travis Kalanick testifying, "My feeling is, he should -- he should testify. That -- that he should say what happened, why, how, and he should cooperate with the company and the Court in getting to the facts of the matter. And I felt pretty passionately about it."). During Mr. Levandowski's August 22 deposition, counsel for Uber asked Mr. Levandowski questions purporting to demonstrate his refusal to cooperate. (*E.g.*, Ex. 1 at 271:13-272:18 ("MS. DUNN: Q. But you would not cooperate with Uber's investigation in this case, right?" A: [invocation of the Fifth Amendment].). But when Waymo asked questions to inquire about the purported non-cooperation (*e,g.*, "Q Was -- what specifically did you tell Uber you would not do in relation to Uber's investigation in relation to this litigation?"; "what specifically did Uber's lawyers tell you to do in relation to Uber's investigation, in relation to this litigation, that you refused to do?"), Uber and Otto Trucking instructed Mr. Levandowski not to answer on grounds of attorney-client privilege. (*Id.* at 296:11-299:10.) Mr. Levandowski has also asserted the attorney-client and common interest privileges over communications with Uber attorneys regarding the pending litigation. (Dkt. 1380.)

Moreover, Mr. Levandowski clearly *has* cooperated with Defendants in this case. For example, during the August 22 deposition of Waymo LiDAR engineer Pierre-Yves Droz, counsel

for Otto Trucking introduced a set of earrings (derived from PCBs in an early version of GBr2) that had never been produced in discovery. (Ex. 2 at 33:17-41:39:4.) Mr. Levandowski purportedly gave these earrings as a farewell gift to Seval Oz (a former Waymo employee) when she left Waymo. (*Id.*) When asked about how Otto Trucking had come into possession of these earrings – let alone learned of their existence – counsel for Otto Trucking refused to answer on grounds of attorney-client privilege and work product. (*Id.* at 88:8-90:3.) However, on the last day of fact discovery, Mr. Levandowski produced a set of text messages revealing that *he* is the one who collected the earrings from Ms. Oz, evidently for the purposes of assisting Defendants in this case. (Dkt. 1266-6.) To date, Otto Trucking has refused to answer any questions about the circumstances under which it obtained the earrings or about its communications with Mr. Levandowski about the earrings, on grounds of privilege and/or work product protection.

Mr. Levandowski has also been cooperating with Uber. For example, calendar invitations produced by Uber show that Mr. Levandowski was participating in meetings with Uber executives and attorneys – including Salle Yoo, Angela Padilla, Arturo Gonzalez, Karen Dunn, Nicole Bartow, and Aaron Bergstrom – to discuss litigation strategy as late as May 3, 2017 – more than a month *after* he pled the Fifth Amendment and purportedly refused to cooperate with Uber's investigation. (*See*, *e.g.*, Ex. 3 ███████████████████████████████████████████████████████████████ ███████████████████).) Yet while Uber has claimed that Mr. Levandowski has been refusing to cooperate with its defense of the litigation, Uber has also maintained that all of its communications with Mr. Levandowski are protected from discovery by the common interest and/or attorney-client privilege.

## ARGUMENT

The Court should preclude Defendants from arguing that Mr. Levandowski has not cooperated in their investigation because allowing them to make that argument would sanction Uber's use of the attorney-client, work product, common interest and Fifth Amendment privileges as both a sword and a shield. The Court already decided that Defendants cannot selectively waive privilege under these circumstances. (Dkt. 1172 (holding that Defendants cannot selectively waive privilege with respect to Mr. Levandowski's reasons for pleading the Fifth Amendment, and

1  noting that "Under Uber's theory all a party would have to do is cherry pick the communications
2  they want the opposing party to see and identify those as not privileged, all the while being able to
3  shield other not so favorable communications from disclosure even if they are about the very same
4  topic by claiming those communications privileged. The law of privilege is not that unfair.").)
5  Other courts similarly preclude parties from using privilege as a sword and shield at the *in limine*
6  stage. *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d
7  1186, 1196 (9th Cir. 2001) (affirming district court's *in limine* ruling prohibiting defendant from
8  using attorney-client communications as both a sword and a shield); *Gutierrez-Rodriguez v.*
9  *Cartagena*, 882 F.2d 553, 576 (1st Cir. 1989) (affirming district court's decision to bar defendant
10 from testifying at trial due to his previous refusal to testify during discovery on Fifth Amendment
11 grounds); *Galaxy Comp. Serv'cs, Inc. v. Baker*, 325 B.R. 544, 559 (E.D.Va. 2005) (granting
12 motion *in limine* to prevent witness from testifying about issues she refused to answer during her
13 deposition on attorney-client privilege grounds); *Engineered Prods. Co. v. Donaldson Co.,*
14 *Inc.,* 313 F.Supp. 2d 951, 1022–23 (N.D. Iowa 2004) (barring plaintiff from introducing testimony
15 at trial on issues it prevented defendant from exploring during deposition by invoking the
16 attorney-client privilege).  Defendants cannot have it both ways, picking and choosing when their
17 communications with Mr. Levandowski are protected by attorney-client, work product, common
18 interest and Fifth Amendment privileges, and when those communications can be relied upon in
19 discovery.   This information should be excluded.
20       Allowing Defendants to tell the jury that Mr. Levandowski has not cooperated with their
21 investigation would also prejudice Waymo.  Under FRE 403, evidence should be excluded if its
22 probative value is substantially outweighed by a danger of "confusing the issues," "misleading the
23 jury" or "wasting time," which is the case here.  If admitted, the jury could be left with the
24 misimpression that Mr. Levandowski *has not* cooperated (which is not true), or Waymo would
25 have to spend time at trial explaining why this is not true.  This explanation would be confusing
26 and time-consuming; it would force Waymo to explain how Defendants have repeatedly blocked
27 discovery on privilege grounds, including specifically during the depositions of Mr. Levandowski
28

and Mr. Droz; how Mr. Levandowski himself is the one who coordinated retrieval of the earrings from Ms. Oz; and how Mr. Levandowski cooperated with Uber to respond to certain Court orders.

## CONCLUSION

For the foregoing reasons, Waymo's Motion in Limine No. 14 should be granted.

DATED:  September 7, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
 Charles K. Verhoeven
 Attorneys for WAYMO LLC