MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel:    415.268.7000 / Fax:    415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P. M. HUME
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Tel:    202.237.2727 / Fax:    202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel.:   212.336.8330 / Fax.:   212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                Plaintiff,<br><br>         v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>                Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**UBER'S OPPOSITION TO WAYMO'S MOTION *IN LIMINE* NO. 14 TO EXCLUDE EVIDENCE OF LEVANDOWSKI'S FAILURE TO COOPERATE**<br><br>Judge:  The Honorable William Alsup<br>Trial Date: October 10, 2017 |

1    Waymo has known since at least July 10, 2017 that Uber plans to introduce evidence that
2 Anthony Levandowski refused to cooperate with its efforts to respond to Waymo's allegations.
3 (Dkt. 854 at 11 (stating that Uber intends to introduce post-complaint facts that "[i]n Spring 2017,
4 Uber made formal demands of Levandowski, including specifically that he cooperate in Uber's
5 investigation, fact gathering, and defense of this lawsuit," and when "Levandowski failed to
6 cooperate as directed, Uber terminated his employment").) The Court ordered the parties to
7 supplement their proposals for early motions *in limine* in response to this and other post-
8 complaint evidence. (Dkt. 874.) Waymo did not supplement to exclude this evidence. (Dkt. 914.)

Waymo now belatedly argues that allowing Uber to introduce this evidence would "sanction Uber's use of . . . privileges as both a sword and a shield" and "prejudice Waymo" by confusing the issues, misleading the jury, and wasting time. (Mot. at 2, 3.) But the Court has already rejected these arguments, and it should reject Waymo's attempt to resurrect them. On September 11, Judge Corley rejected Waymo's argument that it was "entitled to all privileged communications regarding Uber's efforts to get Mr. Levandowski to return Waymo's files" as meritless. (Dkt. 1506 at 2.) Further, as the Court explained during the July 26 hearing on this issue, Uber "ought to be allowed to prove that . . . they [asked Levandowski to cooperate] and he said no, and then they fired him as a result." (7/26 Hr'g 71:17-21.) Rather than exclude such evidence as prejudicial, the Court stated that it would "be as fair as [it] can" in allowing both sides to "put this basic story in front of the jury." (*Id.* 72:6-8.) Waymo's new assertion that allowing Uber to tell this basic story "would force Waymo to explain how Defendants have repeatedly blocked discovery on privilege grounds, including specifically during the depositions of Mr. Levandowski and Mr. Droz" (Mot. at 3-4), is baseless. While Waymo can introduce non-privileged, admissible evidence to tell its "side of that story" (7/26 Hr'g 71:22–72:3), it cannot do so by relying on inadmissible evidence of privilege assertions. (*See* Dkt. 874 at 3 (tentatively granting Uber's motion to exclude evidence of Uber's privilege assertions as to valid assertions.))

**A. Uber Has Not Disclosed Privileged Communications About Levandowski's Failure To Cooperate.**

Waymo argues that Uber is trying to use privilege as both "a sword and a shield" by

1  attempting to "selectively waive privilege" over Levandowski's failure to cooperate in its
2  investigation into or defense of Waymo's allegations. (Mot. at 2.) That is a discovery issue. And
3  when Waymo made these arguments to Judge Corley, she rejected its "insistence that it is entitled
4  to all privileged communications regarding Uber's efforts to get Mr. Levandowski to return
5  Waymo's files [a]s unpersuasive and unsupported by citation to any authority." (Dkt. 1506 at 2.)

6  Waymo points to two privilege assertions by Defendants' counsel during Levandowski's
7  August 22nd deposition to argue that Uber is trying to "have it both ways, picking and choosing
8  when their communications with Mr. Levandowski are protected." (Mot. at 3.) Specifically,
9  Waymo complains that Levandowski invoked the Fifth Amendment in response to a question by
10 Uber's counsel about his failure to cooperate, while receiving instructions not to answer
11 Waymo's supposedly similar questions on the basis of the attorney-client privilege. (Mot. at 1, 3.)
12 But the deposition excerpts Waymo cites make clear there was nothing selective or improper
13 about these instructions—Uber's question to Levandowski sought to elicit *non-privileged facts*,
14 while Waymo's questions improperly sought to elicit testimony about *privileged communications*.

15 The attorney-client privilege protects "confidential disclosures made by a client to an
16 attorney in order to obtain legal advice . . . as well as an attorney's advice in response to such
17 disclosures." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citations and quotation
18 marks omitted). But the privilege "only protects disclosure of *communications*; it does not protect
19 disclosure of the *underlying facts*," as "a fact is one thing and a communication concerning that
20 fact is an entirely different thing." *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)
21 (emphasis added). Thus, while a "client cannot be compelled to answer the question, '*What did
22 you say or write* to the attorney?' [he] may not refuse to disclose any relevant fact within his
23 knowledge merely because he incorporated a statement of such fact into his communication to his
24 attorney." *Id.* at 396 (emphasis added). So "the adverse party could discover the information
25 contained in the responses by deposing the employees." *Admiral Ins. Co. v. U.S. Dist. Court for*
26 *Dist. of Arizona*, 881 F.2d 1486, 1493 (9th Cir. 1989). That a "plaintiffs' ability to discover the
27 underlying facts may be impeded by [a] personal claim of the privilege against self-
28 incrimination" does not change the propriety of invoking attorney-client privilege, because "[a]ny

1  inequity in terms of access to information is the price the system pays to maintain the integrity of
2  the privilege." *Id.* at 1493-94.

3        Levandowski invoked the Fifth Amendment in response to the following question from
4  Uber's counsel seeking a non-privileged fact: "But you would not cooperate with Uber's
5  investigation in this case, right?" (Goodman Decl., Ex. 56 (Levandowski Dep.) at 271:13-
6  272:18.) Levandowski was later properly given an attorney-client privilege instruction in
7  response to the following questions: "*what specifically did you tell Uber* you would not do in
8  relation to Uber's investigation in relation to this litigation?" and "*what specifically did Uber's*
9  *lawyers tell you to do* in relation to Uber's investigation, in relation to this litigation, that you
10 refused to do?." (*Id*. 296:25-297:19, 298:24-299:2 (emphasis added).) Contrary to Waymo's
11 assertion that Levandowski was instructed "not to answer" at all (Mot. at 1), Uber's counsel said:
12 "to the extent that they're *privileged* communications, to not reveal the content." (*Id.* at 297:14-
13 16, 299:2 (emphasis added).)

14       Waymo provides no support for its baseless claim that Uber has "maintained that all of its
15 communications with Mr. Levandowski are protected from discovery by the common interest
16 and/or attorney-client privilege." Uber has done no such thing, and in fact has produced non-
17 privileged communications with Levandowski. (*E.g.*, Dkt. 1228-3 (3/28/17 email from
18 Levandowski stating that he is "prepared to answer the Tempe collision question, and will let
19 Angela [Padilla, Uber in-house counsel] answer any waymo [*sic*] questions that might pop up" at
20 the all-hands meeting).) Waymo again overreaches in arguing that, because Levandowski has
21 asserted privilege "over communications with Uber attorneys regarding the pending litigation,"
22 Uber cannot put on non-privileged evidence of Levandowski's lack of cooperation. (Mot. at 1.)
23 Levandowski's assertion of privilege was about communications occurring on March 29
24 regarding his Fifth Amendment invocation in this litigation. (Dkt 1249-1.) The subjects within his
25 assertion have never been broader than that. (Dkt. 1380.) Waymo cites nothing to support the
26 claim that Levandowski asserts a privilege over every conversation he has had with Uber
27 attorneys about this litigation, as Levandowski has never made such a blanket assertion.
28       Furthermore, the fact that Levandowski was sent a calendar invite to attend a meeting with

Uber attorneys and others on May 3 (Mot. at 2) is not privileged, and Waymo's rank speculation that it shows he was cooperating with Uber is inadmissible. Seval Oz's earrings, introduced at the deposition of Pierre-Yvez Droz, are likewise not privileged; rather, they were a gift from one Waymo non-attorney to another. Had Waymo's counsel asked any percipient witnesses factual questions about the earrings, instead of asking Otto Trucking's counsel about the circumstances under which he obtained the earrings, no privilege issues would be implicated.

### B. Evidence Of Levandowski's Failure to Cooperate Is Relevant and Not Unduly Prejudicial.

In response to Waymo's motion *in limine* to exclude evidence regarding Uber's efforts to locate the downloaded materials (Dkt. 851), Uber explained that the facts that it "asked Anthony Levandowksi to return any 'downloaded materials' he might have," and that Levandowski was fired when he failed to do so, are "straightforward" and "essentially undisputed" facts that are admissible and probative. (Dkt. 978.) The Court agreed: "on the termination of Mr. Levandowski, it does seem to me that they ought to be allowed to prove that . . . they [asked him to cooperate] and he said no, and then they fired him as a result." (7/26 Hr'g Tr. at 71:17-21.) Waymo's belated argument that allowing Uber to tell the jury about this failure to cooperate would confuse and mislead the jury (Mot. at 3), ignores that such evidence is necessary to respond to Waymo's allegations and remedy the confusion from Waymo's attempts to impute Levandowski's alleged misconduct to Uber.

This is particularly true given that there is no evidence that the downloaded files ever made their way to Uber or that there was any conspiracy by Uber and Levandowski to misappropriate Waymo's purported trade secrets. Still, Waymo wants to tell the jury that Uber hired Levandowski in a coordinated effort to steal Waymo's trade secrets, while precluding Uber from telling the jury it fired Levandowksi when he refused to cooperate with Uber's efforts to respond to these very accusations. As with its previous attempts to do so, "Waymo wants to exclude that evidence, because it hurts Waymo." (7/26 Hr'g Tr. at 61:8-14.) But that is not "a good enough reason to exclude it." (*Id.*) Accordingly, Waymo's motion *in limine* should be denied.

| | | |
|---|---|---|
| 1 | Dated: September 13, 2017 | MORRISON & FOERSTER LLP<br>BOIES SCHILLER FLEXNER LLP<br>SUSMAN GODFREY LLP |

By:  */s/ Karen L. Dunn*
         KAREN L. DUNN

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC