QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>      vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 23 TO EXCLUDE THE PARAGRAPH 5 COMMUNICATIONS LOG**<br><br>Date:         September 27, 2017<br>Time:        8:00 a.m.<br>Ctrm:        8, 19th Floor<br>Judge:       Honorable William H. Alsup<br>Trial Date:  October 10, 2017 |

Defendants seek to preclude Waymo from referencing Paragraph 5 of the Court's Order on Preliminary Relief ("PI Order") and from referencing the LiDAR communications log ordered in Paragraph 5 of the PI Order. This Court should deny Defendants' motion.

## I.   BACKGROUND

On May 11, 2017, this Court granted in part Waymo's motion for provisional relief. (Dkt. 433.) As part of the relief granted to Waymo, the Court ordered Defendants to provide

> by June 23 at noon . . . Waymo's counsel and the Court with a complete and chronologically organized log of all oral and written communications—including, without limitation, conferences, meetings, phone calls, one-on-one conversations, texts, emails, letters, memos, and voicemails—wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier, or consultant of defendants. The log shall identify for each such communication the time, place (if applicable), mode, all persons involved, and subjects discussed, as well as any and all notes or records referencing the communication.

(Dkt. 433, ¶ 5) ("LiDAR log"). Uber served an incomplete LiDAR log on June 23. (Dkt. 712.) That first log had 661 entries. (*Id.*) Uber supplemented on June 27, June 30, July 3, July 19, August 18 (by Otto Trucking), and September 5. (Dkt. 1501-4.) The size of Defendants' LiDAR log nearly doubled after the Court's June 23 deadline for a "complete" log, and it was not provided until 12 days after the close of fact discovery. (*See e.g.*, Dkt. 1501-4.)

## II.   ARGUMENT

### A.   Reference to Paragraph 5 of the PI Order Should Be Treated in Accordance with the Court's Ruling on Defendants' MIL No. 13.

One piece of the relief Defendants seek is to preclude references to Paragraph 5 of the PI Order. Defendants previously requested that the Court consider before the Pretrial Conference MIL No. 13 to exclude Court orders offered for their truth or other impermissible purpose. (Dkt. 916.) The Court addressed that MIL at the July 26 hearing, saying: "I could foresee several instances where the Court will give an instruction to the jury explaining that there was a Court ruling requiring the inspections or a Court ruling requiring whatever, and that pursuant thereto the inspections were allowed." (Dkt. 1050, 106:1-7.) The Court should treat references to Paragraph 5 in the same way as was discussed at that hearing. If Defendants try to argue they were "good citizens" to prepare a consolidated list of LiDAR communications, then Waymo should be permitted to explain (or have the Court explain) that Defendants were ordered to do so. Thus,

1 consistent with the Court's prior ruling, if Defendants do not try to "spin" the creation of the
2 LiDAR log, then Waymo agrees it will not reference Paragraph 5 of the PI Order.

### B. The LiDAR Log Is Probative and Should Be Admitted.

Defendants also ask the Court to exclude references to the LiDAR log. This issue should not rise and fall with the references to Paragraph 5. The LiDAR log is highly probative to the issues in the case. Moreover, its probative value outweighs any risk of prejudice or delay.

The LiDAR log is probative to show the extent of Levandowski's LiDAR communications and when they occurred. As this Court is aware, Waymo alleges that Levandowski stole Waymo trade secrets on LiDAR technology, took them to Uber, and Uber used them to develop its own LiDAR technology. (Dkt. 433.) Levandowski was the head of Uber's autonomous vehicle program for nearly a year. In that role, he had ample opportunity to disclose Waymo's trade secrets to his team there. As the Court previously recognized, Defendants have told a story that Uber independently developed LiDAR technology without Levandowski's help:

> [t]hat narrative, however, studiously omitted any inquiry into Levandowski's work, essentially erasing him from the history of Uber's self-driving car development. Put differently, the record shows Uber bought Levandowski's services for a tremendous amount of money and positioned him at the forefront of its self-driving car efforts but is barren on how Levandowski has been earning that money at title.

(*Id.*, at 7.) The Court-ordered LiDAR log reveals the sheer volume of times in which Levandowski had the opportunity to steer Uber's LiDAR development and undermines Defendants' efforts to make it seem like he did not contribute. This, coupled with Waymo's evidence of use, is probative to show misappropriation of Waymo trade secrets.

The LiDAR log further shows *when* the communications about LiDAR took place. There are 73 entries dated before Levandowski left Google, and 407 entries dated before Uber acquired Otto. This is relevant to several issues including, but not limited to, the fact that Uber and Levandowski were discussing technology before Levandowski left Google, that Uber's prior public accounts of when it began negotiations with Levandowski are false, and that Uber did not take steps to protect Waymo trade secrets. On the last point, Uber contends it took steps to prevent Levandowski from bringing Waymo trade secrets to Uber by having him sign a written attestation and employment agreement. (Ex. A, 108:13-109:4, 122:9-123:6, 124:2-12, 125:1-23.)

Uber, however, withheld the supposed written attestation as privileged.  (Ex. B.)  Levandowski's employment agreement is dated August 17, 2016, and the accompanying Confidential Information and Invention Assignment Agreement (CIIAA) is dated August 23, 2016.  (Exs. C, D.)  The LiDAR log shows over 400 entries for LiDAR communications before there was a written requirement from Uber that Levandowski not bring Waymo trade secrets.[1]  Thus, the LiDAR log is probative to show the volume and timing of Levandowski's LiDAR communications.

None of Defendants' arguments show otherwise.  For example, Defendants claim the LiDAR log was "presumably" for discovery purposes.  (Mot., 1.)  But the PI Order does not say that.  (Dkt. 433.)  Rather, the Court granted Waymo expedited discovery in Paragraph 6 of the PI Order and did not include the LiDAR log in that paragraph.  The LiDAR log was ordered in Paragraph 5, suggesting the Court viewed it as distinct from the discovery ordered in Paragraph 6.  Further, since Defendants did not provide a complete log by June 23 and continued to supplement it after the close of fact discovery, its use cannot be limited to discovery.  (Dkt. 1501-4.)

Defendants next argue that the LiDAR log is not probative because they included more communications on the log than were required.  (Mot., 2) (pointing to duplicative entries, calendar invitations, and declined invitations.)  Put another way, Defendants contend that the log is not probative because it does not comply with the PI Order.  Defendants also contend that they were "overbroad" to comply with "Waymo's requests" in addition to the PI Order.  (Mot., 4.)  Defendants do not cite any evidence to support this point; Waymo simply requested a log that complied with the PI Order.  (Ex. E.)  Defendants note that it would be "impractical" to determine all meetings or conversations in which LiDAR was discussed.  But, the Court did not order Defendants to only do what was "practical."  Nor did Defendants seek any relief from the Court's Order on this basis.  That Defendants did a sub-par job in preparing the log and did not include "all oral and written communications . . . wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier, or consultant of defendants" should not be held against Waymo.  Defendants were required to provide a compliant log.  That it is purportedly

---

[1] Waymo is not aware of any such written requirements from Ottomotto or Otto Trucking.

1  "impractical" for Defendants to do so shows that Levandowski's discussions about LiDAR are so
2  voluminous Defendants cannot account for them all.  Put another way, these purported
3  "impracticalities" further prove Levandowski was completely intertwined with Uber's
4  autonomous vehicle program and had many opportunities to disclose Waymo's trade secrets.

     **C.**     **Rule 403 Does Not Require Exclusion of the LiDAR Log.**

6       Uber also argues that the LiDAR log should be precluded on Rule 403 grounds.
7  Defendants contend that the Court should consider "evidentiary alternatives" and require Waymo
8  to offer evidence of Levandowski's LiDAR work using documents, witnesses, and depositions.
9  (Mot., 3.)  There are not adequate "evidentiary alternatives" to the LiDAR log.  Levandowski
10  would be a key witness on this issue, but he refuses to testify.  Other witnesses do not recall the
11  details of all LiDAR communications.  (*See e.g.*, Ex. F, 136:6-141:6; Ex. G, 270:4-277:24; Ex. H,
12  364:5-372:14.)  Further, the log summarizes over 1,000 communications.  The written
13  communications therein cannot be conveniently examined in court; the log is an appropriate Rule
14  1006 summary exhibit.  Fed. R. Evid. 1006.  To be sure, Waymo will introduce many individual
15  documents referenced on the LiDAR log, but there is not an "evidentiary alternative" to the log
16  that similarly shows the volume and chronology of Levandowski's LiDAR communications.

17       Finally, Uber argues that introduction of the LiDAR log and the circumstances under
18  which it was created will unfairly prejudice Uber and cause delay.  (Mot., 4.)  Uber contends that
19  it will prejudice the jury if the jury knows that the Court ordered the LiDAR log.  As noted above,
20  reference to the PI Order should comply with the Court's July 26 Order, which will alleviate the
21  concern as to prejudice.  As for delay, Waymo disagrees with Uber's concern.  Many of the
22  witnesses on the log were deposed and are likely to be trial witnesses regardless of whether the
23  LiDAR log is referenced.  Thus, Waymo will question them about their communications with
24  Levandowski.  The LiDAR log is a chronological summary of those communications.  As for the
25  concern that Uber will need to put an attorney on the stand to describe how the log was prepared,
26  that would open the door to telling the jury that the Court ordered the log.  That Uber did not
27  comply with the PI Order and needs an attorney to explain why should not be held against Waymo
28  and is not a basis for excluding probative evidence.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: September 13, 2017 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 3 | | |
| 4 | | By  */s/ Charles K. Verhoeven* |
| 5 | | Charles K. Verhoeven<br>Attorneys for WAYMO LLC |

01980-00104/9544996.4

-5-

WAYMO'S RESPONSE TO DEFENDANTS' MIL NO. 23