# *EXHIBIT 5*

## *REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

# *EXHIBIT 5*

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1            UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SAN FRANCISCO DIVISION

4

5   WAYMO LLC,                    )

6           Plaintiff            )

7           vs.                  ) Case No.

8   UBER TECHNOLOGIES, INC.;      ) 3:17-cv-00939-WHA

9   OTTOMOTTO LLC; OTTO TRUCKING  )

10  INC.                         )

11          Defendants           )

    _____)

12

13      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

14

15     VIDEOTAPED DEPOSITION OF MICHAEL YU XING

16                 (30)(b)(6)

17              Palo Alto, California

18            Thursday, August 17, 2017

19

20  Reported by:

21  JOANNE M. FARRELL, RPR, CRR

22  CSR Nos. 4838(CA)  506(HI)  507(NM)

23  JOB No. 2681960A

24

25  PAGES 1 - 47

                                        Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1         Q.  Okay.  And do you know who contributed to     9:09:50AM

 2   drafting this document?

 3         A.  Not specifically.

 4         Q.  Would it be the same people you named:

 5   David Lawee, Eric Schaffer, Sebastian Thrun?          9:09:56AM

 6         A.  They would have participated, but there may

 7   have been others, as well.

 8         Q.  Okay.  We might come back to these from

 9   time to time, so you can keep those --

10         A.  Sure.                                        9:10:07AM

11         Q.  -- in front of you.  The other one you can

12   set aside.

13             And most other exhibits I hand you you can

14   set aside as soon as we are finished talking about

15   them.                                                 9:10:13AM

16         A.  Sure.

17         Q.  Okay.  So speaking about the Project

18   Chauffeur Bonus Plan as represented in Exhibit 1602,

19   have there been any payments made under that plan to

20   date?                                                 9:10:23AM

21         A.  Yes.

22         Q.  When were the first payments made?

23         A.  The first payments were made to individuals

24   who left the plan.  ████████████████████████████

     ██████████████████████████████████████             9:10:36AM
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY



```
 1        Q.  What were their names?                     9:10:38AM

 2        A.  ████████████████████████

 3             THE COURT REPORTER:  I'm sorry.  What was

 4   that -- the names?

 5             THE WITNESS: ███████████████████████       9:10:45AM

 6             THE COURT REPORTER:  How do you spell it?

 7             THE WITNESS: ████████████████

 8   ██████████████████

 9             ██████████████████  ████████████████████

10             █████████████  ████████████             9:10:51AM

11             THE COURT REPORTER:  Okay.  Thanks.

12   BY MS. TAPERNOUX:

13        Q.  And were there any other payments made to

14   early terminations?

15             MS. ROBERTS:  Object to the form.          9:11:03AM

16   BY MS. TAPERNOUX:

17        Q.  In that first group you were talking about.

18             I think I cut you off, I'm sorry.

19        A.  Yeah.  What -- what do you mean by "early

20   terminations"?                                       9:11:11AM

21        Q.  So you said something to the effect of the

22   first payments were made to ███████████████████

23   ████  ██████  ███████████████████

24             Were there any others who ██████████████

25   ████  ████████████████████████████       ██11:21AM
```

Page 15

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        A.   No.                                    9:11:25AM

 2        Q.   And when were the termination payments paid

 3   out in relation to when those individuals left the

 4   company?

 5        A.   They were --                           9:11:35AM

 6             MS. ROBERTS:  Objection.  Form.

 7             THE WITNESS:  They were paid out roughly

 8   ███████████  after their termination.

 9   BY MS. TAPERNOUX:

10        Q.   Okay.  And what was the reason for that  9:11:46AM

11   time period?

12        A.   That is the period specified in the plan --

13        Q.   Uh-huh.

14        A.   -- that must be observed before the

15   payments can be made.                           9:11:56AM

16        Q.   And what process was followed in order to

17   go from the date that those individual -- well,

18   let's start with █████████████████████

██   ████████████████████

██        ██   █████          ████████████

██        ██   ██████████████████

22             █████████████████████████████

██   █████████████████████████████████

██        ████████████████████████

25             MS. ROBERTS:  Objection.  Form.        9:12:20AM
```

Page 16

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1          THE WITNESS:  A reminder was established on    9:12:23AM

2     the calendar and --

3     BY MS. TAPERNOUX:

4          Q.  On the comp team calendar?

5          A.  On my calendar?                            9:12:30AM

6          Q.  Yeah.

7          A.  On someone's calendar.  I can't recall who

8     exactly was processing it.

9          And when that reminder was triggered, then

10    the bonus was processed at the -- at the correct    9:12:38AM

11    time after that reminder.

12         Q.  Who processed the bonus?

13         A.  I don't remember.

14         Q.  Okay.  Was there any approval process

15    required?                                           9:12:48AM

16         A.  No.

17         Q.  Okay.  And you said roughly ██████████

18    pursuant to the time frame laid out in the bonus

19    plan?

20         A.  Uh-huh.                                    9:12:58AM

21         Q.  Was that time frame more specific than

22    that?

23         A.  The bonus plan requires a waiting period of

24    ███████████████████████████

25         Q.  Okay.                                      9:13:08AM

                                              Page 17

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        A.  -- at a minimum.                        9:13:08AM

2        Q.  Uh-huh.

3        A.  So after that, I don't think there is any

4    specificity --

5        Q.  Okay.                                    9:13:15AM

6        A.  -- towards payment date.

7        Q.  So the bonus plan requires at least  █████

█    ██████████████████████  but it doesn't specify a maximum

9    time period until the bonus can be paid?

10        MS. ROBERTS:  Objection.  Form.             9:13:26AM

11   BY MS. TAPERNOUX:

12        Q.  I can rephrase that.

13            Is there a time period set forth in the

14   bonus plan by which time the bonus must be

15   disbursed.                                       9:13:34AM

16        A.  My understanding is it must be done just as

17   quickly as administratively feasible.

18        Q.  Okay.  Thank you.

19            And was the same process followed for the

20   ████████████████████████████████████████      ███████████

█     ███   ████████████████████████

22        Q.  And after those two termination bonuses

23   were paid, when was the next bonus paid pursuant to

24   the Chauffeur Bonus Plan?

25        A.  I believe that would have been the       9:13:58AM
```

                                                      Page 18

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1 ███████████████████████████████████   ████████████

2 ███ ██████████████████████████

3     Q.  Great.

4     A.  -- under the plan.

5     Q.  And for those payments, what was the          9:14:10AM

6 process from when the bonus amounts were decided to

7 when they were paid out to the individuals?

8         MS. ROBERTS:  Objection.  Form.  Beyond the

9 scope.

10        THE WITNESS:  After the bonus amounts were     9:14:29AM

11 finalized, I -- well -- so I calculated the bonus

12 amounts, and after that they were finalized.

13        Following that, the bonus amounts had to be

14 communicated to the participants, so letters were

15 created and distributed to participants to inform      9:14:47AM

16 them of their bonus amount.

17        After those letters were distributed, then

18 the bonuses were submitted for payment and

19 processing.

20 BY MS. TAPERNOUX:                                      9:14:59AM

21     Q.  Okay.  Now, you said you calculated the

22 bonuses?

23     A.  I did.

24     Q.  How did you calculate them?

25     A.  Each individual has a running percentage       9:15:06AM

Page 19

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | allocation in the plan -- | 9:15:09AM |
| 2 | Q.  Uh-huh. | |
| 3 | A.  -- that we have been tracking over time. | |
| 4 | After the evaluation, project evaluation was | |
| 5 | finalized for the purpose of the plan, the bonuses | 9:15:18AM |
| 6 | were calculated as their percentage allocation and | |
| 7 | multiplied by the project valuation. | |
| 8 | Q.  And were you involved with either the | |
| 9 | allocations or the valuation that were involved in | |
| 10 | that calculation? | 9:15:31AM |
| 11 | MS. ROBERTS:  Objection to form. | |
| 12 | THE WITNESS:  Can you specify what you mean | |
| 13 | by "involved"? | |
| 14 | BY MS. TAPERNOUX: | |
| 15 | Q.  Did you participate in determining the | 9:15:36AM |
| 16 | allocation amounts that you just referred to? | |
| 17 | A.  No. | |
| 18 | Q.  Did you participate in determining the | |
| 19 | valuation that was used to calculate the bonuses? | |
| 20 | A.  No. | 9:15:45AM |
| 21 | Q.  How was the date of December 31st, 2015 | |
| 22 | selected for the payouts? | |
| 23 | A.  The valuation was finalized towards the end | |
| 24 | of November, early December of 2015.  I proposed | |
| 25 | that the bonuses be paid out on December 31st to | 9:16:04AM |

Page 20

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    allow enough time for the processes I described          9:16:08AM

2    earlier.

3         Q.  Great.

4             And had there been a schedule or a plan in

5    place of when Waymo hoped to have the valuation done     9:16:14AM

6    by?

7             MS. ROBERTS:  Objection to form.  Beyond

8    the scope.

9             THE WITNESS:  I'm not sure.

10   BY MS. TAPERNOUX:                                         9:16:24AM
```



```
24        A.  Correct.

25        Q.  We will probably talk about those more           9:17:00AM
```

Page 21

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    specifically later, but for now we will just move        9:17:01AM
 2    forward a little bit.
 3    ███████████████████████████████████
      ███████████████████████████████████
      ███████████████████████████████████        ███████████
      ███████████████
      ██████    ██████
 8            MS. ROBERTS:   Objection to form.  Beyond
 9    the scope.
10    BY MS. TAPERNOUX:                                         9:17:17AM
11        Q.  And what were those?
12    ██████    ██████████████████████████████████
      ████████████████████████████████████████████
      ███████████
15        Q.  Okay.  And were those paid to all              9:17:31AM
16    participants in the plan that were employed at that
17    time?
18        A.  Correct.
19        Q.  Okay.  I'll probably also return to that in
20    a little bit.                                            9:17:43AM
21            So speaking of all the bonus that have been
22    paid out under the plan, have they all been
23    calculated pursuant to the formula set forth in the
24    Chauffeur Bonus Plan?
25        A.  Which formula are you referring to?            9:18:00AM
```

Page 22

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1        Q.  The formula you described when I asked how        9:18:03AM

2    they were calculated, the allocation times the

3    valuation.

4        A.  Got you.  Yes.

5        Q.  Has Google ever made any adjustments to        9:18:09AM

6    that calculation for any individual bonus?

7        A.  No.

8        Q.  Has Google ever considered making any

9    adjustments to that calculation?

10           MS. ROBERTS:  Objection.  Form.  Beyond the        9:18:19AM

11    scope.

12           THE WITNESS:  I'm not sure.

13    BY MS. TAPERNOUX:

14        Q.  Speaking about the allocations themselves,

15    has Google ever revised the allocations, that you're        9:18:26AM

16    aware of?

17           MS. ROBERTS:  Objection.  Form.  Beyond the

18    scope.

19           THE WITNESS:  Sorry.  You said has Google

20    ever revised the allocations?        9:18:38AM

21    BY MS. TAPERNOUX:

22        Q.  Uh-huh.

23        A.  No.

24        Q.  Do you ever field questions from the plan

25    participants about their bonuses?        9:18:52AM

                                                    Page 23

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.  Occasionally. | 9:18:56AM |
| 2 | Q.  Occasionally? | |
| 3 | Do you recall any specific questions that | |
| 4 | you've been asked or answered? | |
| 5 | MS. ROBERTS:  Objection.  Form.  Beyond the | 9:19:03AM |
| 6 | scope. | |
| 7 | THE WITNESS:  Mostly questions around | |
| 8 | mechanics. | |
| 9 | BY MS. TAPERNOUX: | |
| 10 | Q.  So when they will be paid? | 9:19:09AM |
| 11 | MS. ROBERTS:  Objection.  Form. | |
| 12 | THE WITNESS:  Timing, yes, and also, you | |
| 13 | know, how calculations -- the calculations were | |
| 14 | actually being done. | |
| 15 | BY MS. TAPERNOUX: | 9:19:25AM |
| 16 | Q.  Has Google ever withheld any payments under | |
| 17 | the bonus plan? | |
| 18 | A.  No. | |
| 19 | Q.  Has Google ever considered withholding | |
| 20 | payments, that you're aware of? | 9:19:42AM |
| 21 | A.  Not that I'm aware of. | |
| 22 | Q.  Are you aware of any discussions about the | |
| 23 | idea that Google had the discretion over whether to | |
| 24 | pay the amounts due under the bonus plan? | |
| 25 | MS. ROBERTS:  Objection.  Form.  Beyond the | 9:19:53AM |

Page 24

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1    scope.                                          9:19:55AM

2          THE WITNESS:  No, not to my awareness.

3    BY MS. TAPERNOUX:

4       Q.  Are you aware that Google has that

5    discretion?                                     9:20:00AM

6          MS. ROBERTS:  Objection.  Beyond the scope.

7          THE WITNESS:  Not to my awareness.

8    BY MS. TAPERNOUX:

9       Q.  Thank you.

10         Have there been any bonus plan payments     9:20:05AM

11   made to employees that were not listed in the

12   original 2010 list of participants?

13         MS. ROBERTS:  Objection.  Form.

14         THE WITNESS:  And -- sorry.  Bonus plans

15   made to nonparticipants?                        9:20:19AM

16   BY MS. TAPERNOUX:

17      Q.  Yes.

18      A.  Under the plan?

19   ▇  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇    ▇▇▇▇▇▇▇▇                                        9:20:25AM

21      A.  No.

22         (Exhibit 1603 was marked for identification

23          by the court reporter and is attached

24          hereto.)

25
```

Page 25

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    BY MS. TAPERNOUX:                                    9:21:10AM

 2        Q.  I have just handed you a document 1603.

 3            Do you recognize this email?

 4        A.  I do.

 5        Q.  If you can look at the very top:  "Payments   9:21:22AM

 6    for resigned Chauffeur plan members have been

 7    processed for the individuals listed below and

 8    scheduled to pay out on (not before) the date

 9    listed."

10    ████████████████████████████████████    ██████████

      ██████████████████████████

      ████    ██████

      ████    ███████████████████████████████████

      ██████████    █████████████████████████

      ████    ██████    ██████                       9:21:43AM

16        Q.  Great.

17            And looking at -- let's start with ██████

      ████████  -- has the payout date as ████████████

19            Do you know if that is the date that he

20    received his bonus?                                9:21:54AM

21        A.  I don't think -- it was the date -- the

22    effective date of the bonus, not the date he

23    received it.

24        Q.  Okay.  And can you explain to me the

25    difference between the effective date and when the  9:22:04AM
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | recipient receives the bonus? | 9:22:06AM |
| 2 | A.  Yeah.  So the effective date is the date | |
| 3 | with -- the effective date defines what date period | |
| 4 | or pay period the bonus would fall in. | |
| 5 | Q.  Okay. | 9:22:18AM |
| 6 | A.  But the payout itself occur -- for that pay | |
| 7 | period can occur at a later date. | |
| 8 | Q.  Once the effective date is set, does that | |
| 9 | trigger a definite payment of the bonus following a | |
| 10 | certain time period or does something else have to | 9:22:29AM |
| 11 | happen before the bonus becomes deposited? | |
| 12 | A.  As far as I know, that is the trigger. | |
| 13 | Q.  Looking at the ████████████ line, | |
| 14 | the third bullet point on that list -- | |
| 15 | A.  Yes. | 9:22:44AM |
| 16 | Q.  -- were you involved in the disbursement of | |
| 17 | that bonus? | |
| 18 | A.  Yes. | |
| 19 | Q.  Do you know if there is any approval | |
| 20 | process in place before that bonus was paid? | 9:22:50AM |
| 21 | MS. ROBERTS:  Objection.  Form. | |
| 22 | THE WITNESS:  No. | |
| 23 | MS. ROBERTS:  Beyond the scope. | |
| 24 | BY MS. TAPERNOUX: | |
| 25 | Q.  Do you know how the payout date was -- the | 9:23:00AM |

Page 27

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    effective date of ███████████ was determined?            9:23:05AM

2         A.  Yes.  This -- that date was ████████████

     ████████████ -- following Anthony's termination.

4         Q.  And do you know how long after the

5    effective date Anthony received his bonus?              9:23:15AM

6         A.  No, not specifically.

7         Q.  And do you recall after the effective

8    date --

9              When the effective date is established,

10   what happens in Google systems?                          9:23:26AM

11        A.  So --

12             MS. ROBERTS:  Objection.  Form.

13             THE WITNESS:  I'm not sure.  I'm not a

14   payroll expert.

15   BY MS. TAPERNOUX:                                         9:23:36AM

16        Q.  Did you have any communications with

17   Anthony about this bonus?

18        A.  No.

19        Q.  Did you have any communications with

20   Anthony while he was at Project Chauffeur at Waymo?     9:23:41AM

21        A.  No.

22        Q.  Did you have any conversations about

23   Anthony?

24        A.  Yes.

25             MS. ROBERTS:  Objection.  Form.  Beyond the   9:23:51AM

                                               Page 28

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | scope. | 9:23:52AM |
| 2 | BY MS. TAPERNOUX: | |
| 3 | Q.  Were they all about this bonus? | |
| 4 | A.  No. | |
| 5 | Q.  Other than this bonus, what were the topics | 9:23:58AM |
| 6 | of the conversation you had with Anthony? | |
| 7 | MS. ROBERTS:  Objection.  Beyond the scope. | |
| 8 | THE WITNESS:  Largely to assist Chris | |
| 9 | Urmson and Sebastian Thrun before him, as the | |
| 10 | project leads at the time, with compensation | 9:24:11AM |
| 11 | planning, as I normally do for my clients. | |
| 12 | BY MS. TAPERNOUX: | |
| 13 | Q.  Okay.  I think we will get more into that | |
| 14 | after the 30(b)(6) portion has been concluded. | |
| 15 | (Exhibit 1604 was marked for identification | 9:24:22AM |
| 16 | by the court reporter and is attached | |
| 17 | hereto.) | |
| 18 | BY MS. TAPERNOUX: | |
| 19 | Q.  If you can turn to the second page of 1604, | |
| 20 | do you recognize this document? | 9:24:53AM |
| 21 | A.  I do. | |
| 22 | Q.  Okay.  I'm just going to ask you to walk me | |
| 23 | through this document. | |
| 24 | So I assume PID is a personal ID number? | |
| 25 | A.  Correct. | 9:25:02AM |

Page 29

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        Q.   Great.                                    9:25:02AM

 2             And are these all of the original Project

 3    Chauffeur bonus plan participants?

 4        A.   They are.

 5        Q.   Great.                                    9:25:11AM

 6             And is there anyone who has participated in

 7    the Project Chauffeur Bonus Plan that is not on this

 8    list?

 9        A.   No.

10             MS. ROBERTS:  Objection.  Form.  Beyond the  9:25:22AM

11    scope.

12    BY MS. TAPERNOUX:

13        Q.   Okay.  So starting with the very bottom

14    section termed "Pre-Pool 1 Payout" --

15        A.   Yes.                                      9:25:29AM

16        Q.   -- can you explain your understanding of

17    that heading to me?

18        A.   Yes.   ███████████████████████████████

      ████████████████████████████████████████████

20        Q.   And that was ████████████████████         9:25:40AM

21        A.   Correct.

22        Q.   Okay.  And did you calculate the bonuses

23    for these ████████████

24        A.   I did.

25        Q.   Okay.  And so for the very bottom person on  9:25:47AM
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    the list, ███████████  there is a bonus award of      9:25:51AM

 2    $0; is that correct?

 3         A.  That is correct.

 4         Q.  ███████████████████████

      ██ ██ ███████████████████████████████████  ███████████████

      ██ █████████████████████ .

 7         Q.  I see.  When -- did most people in the plan

 8    receive allocations at the time that the plan was

 9    put into place in ██████████

10              MS. ROBERTS:  Objection.  Beyond the scope.   9:26:18AM

11              THE WITNESS:  ██████████

12    BY MS. TAPERNOUX:

13         Q.  Okay.  Did anyone besides Mr. Kal --

14         A.  Yes.

15         Q.  -- not receive an initial allocation?        9:26:23AM

16              MS. ROBERTS:  Objection.  Beyond the scope.

17              THE WITNESS:  I believe so, but I don't

18    recall with certainty.

19    BY MS. TAPERNOUX:

20         Q.  You don't know who else it would have been?   9:26:32AM

21         A.  I don't know who else it would have been.

22         Q.  Do you know who we would ask to find out?

23         A.  I believe the schedule of initial awards is

24    listed in the term sheet.

25         Q.  Great.                                        9:26:43AM

                                                             Page 31
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1           So do you know -- so the term sheet, in my     9:26:43AM

 2   understanding, is a nonfinal version of the Project

 3   Chauffeur Bonus Plan; is that correct?

 4       A.  Correct.

 5       Q.  Do you know if the allocations in the term     9:26:51AM

 6   sheet changed between the term sheet and the final

 7   allocations?

 8           MS. ROBERTS:  Objection.  Beyond the scope.

 9           THE WITNESS:  I'm not sure.

10   BY MS. TAPERNOUX:                                      9:26:58AM

11       Q.  And one line up, ███████ received a

12   termination bonus listed under the "Term Payouts"

13   column; is that correct?

14       A.  That's right.

15       Q.  And same for ████████                          9:27:09AM

16       A.  Correct.

17       Q.  Can you tell me how those were calculated?

18           MS. ROBERTS:  Objection.  Form.

19           THE WITNESS:  They were calculated based on

20   their allocation percentage in the plan multiplied    9:27:19AM

21   by the then-current project valuation.

22   BY MS. TAPERNOUX:

23       Q.  Did you speak with ██████████████

24   about the calculation of those bonuses?

25       A.  No.                                            9:27:34AM
```

                                                 Page 32

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    Q.   Did they ever express any concern to anyone          9:27:35AM

2    at Waymo about the calculation or the payment of

3    those bonuses?

4    A.   No.

5    Q.   So going to the next section up, termed          9:27:42AM

6    "Pre-2016 Refresh," can you explain that section to

7    me?

8    A.   Sure.  These are individuals who resigned

9    from the project prior to the midyear refresh cycle

10   that occurred in 2016.                                    9:27:58AM

11   Q.   And what is the midyear refresh cycle?

12   ████   ████████████████████████████████

███   ███████████████████████████████████

███   █████████████████████████████████████

███   █████████████████                                       9:28:13AM

16   Q.   And is this pursuant to the Project

17   Chauffeur Bonus Plan or the regular Google

18   Compensation Plan?

19        MS. ROBERTS:  Objection to the form.

20        THE WITNESS:  Regular Google Compensation          9:28:21AM

21   Plan.

22   BY MS. TAPERNOUX:

23   Q.   Okay.  And so how did this refresh affect

24   the awards under the Chauffeur Bonus Plan?

25   A.   These refresh awards -- ██████████████          9:28:33AM

Page 33

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby

3   certify:

4        That the foregoing proceedings were taken

5   before me at the time and place herein set forth;

6   that any witnesses in the foregoing proceedings,

7   prior to testifying, were administered an oath; that

8   a record of the proceedings was made by me using

9   machine shorthand which was thereafter transcribed

10   under my direction; that the foregoing transcript is

11   a true record of the testimony given.

12        Further, that if the foregoing pertains to the

13   original transcript of a deposition in a Federal

14   Case, before completion of the proceedings review of

15   the transcript { } was {X} was not requested.

16        I further certify I am neither financially

17   interested in the action nor a relative or employee

18   of any attorney or any party to this action.

19        IN WITNESS WHEREOF, I have this date

20   subscribed my name.

21        Dated:  August 18, 2017

22

23

24   *Joanne M. Farrell*

25        Joanne M. Farrell, CSR No. 4838

Page 47