MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Tel:     415.268.7000 / Fax:    415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P. M. HUME
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C.  20005
Tel:     202.237.2727 / Fax:    202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel.:    212.336.8330 / Fax.:   212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and OTTOMOTTO LLC

NEEL CHATTERJEE (SBN 173985)
nchatterjee@goodwinlaw.com
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, California 94025
Tel.:    650.752.3100 / Fax.:   650.853.1038

Attorneys for Defendant OTTO TRUCKING LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　　　Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS' MOTION *IN LIMINE* NO. 24 TO EXCLUDE IRRELEVANT AND PREJUDICIAL FINANCIAL INFORMATION**<br><br>Judge:　The Honorable William Alsup<br>Trial Date: October 10, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

As this case has progressed, Waymo's asserted patents and trade secrets have drastically shrunk in scope. But that has not stopped Waymo from propounding an over-the-top, ███████ damages theory. Given the entirely speculative nature of Waymo's damages models, it has become clear that Waymo will try to impermissibly "skew the damages horizon" by introducing irrelevant and prejudicial financial information. Defendants now move *in limine* to preclude Waymo from offering evidence or argument outside the parameters of its actual disclosed damages models about the purported costs incurred in developing its trade secrets, its speculative business forecasts, and Uber's financial condition or resources.

## I.      Legal Standard

The Federal Circuit has expressed serious concern that permitting parties to introduce large dollar figures with little or no relationship to a properly disclosed and valid damages model will "skew the damages horizon for the jury" and, ultimately, the verdict. *Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014); *accord LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011). Because of the same risk, courts frequently exclude any arguments about a party's wealth, size, and corporate status. *See Draiper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978); *HTC Corp. v. Technology Properties, Ltd.*, 2013 WL 4782598, at *6 (N.D. Cal. Sept. 6, 2013).

## II.     Argument

Waymo's damages expert, Michael Wagner, asserts: (1) two deeply flawed unjust enrichment models ███████████████████████████████████████ ████████████████████████████████; and (2) a "reasonable royalty" that consists of Wagner starting with his unjust enrichment number, reciting the factors outlined in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), and summarily concluding that a reasonable royalty would be his unjust enrichment figure ██████. The validity of this approach will be subject to a separate *Daubert* challenge. For now, Waymo should be precluded from attempting to skew the jury's verdict by introducing other "big numbers" that have little or nothing to do with these theories.

1

### A. Waymo's Expenditures on Trade Secrets

Waymo has neither proffered a theory of damages based on, nor provided accurate calculations of, its expenditures in developing the trade secrets at issue. In interrogatory responses, however, Waymo provided conclusory estimates for how much it spent developing them. Waymo "estimates" that it spent ▮▮▮▮▮ developing trade secrets ▮▮▮▮▮ ▮▮▮▮▮ developing trade secrets ▮▮▮▮▮ developing trade secret 111. *See* Goodman Decl., Ex. 8 (Plaintiff's Amended Fourth Supplemental Objections and Responses to Uber's Interrog. Nos. 1-11) at Interrog. 6. To arrive at the ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ *See* Ex. 11 (Bananzadeh 30(b)(6) Dep.) at 103:9-22; 105:4-17; 109:1-12; 146:20-147:6. These "estimated" costs form no part of the damages theory disclosed by Waymo's expert.[1] They also are likely to "skew the damages horizon" and should therefore be excluded. *E.g.*, *Virnetx*, 767 F.3d at 1333.

### B. Waymo's Revenue Forecasts and Lost Profits

Waymo does not seek damages under a lost profits theory because there is no legal basis to do so. Waymo should not be permitted to introduce the jury to the same speculative evidence about its future revenues and lost profits by claiming it is somehow relevant to its expert's unjust enrichment or reasonable royalty analyses. For example, the Wagner Report recites that in 2015, ▮▮▮▮▮ ▮▮▮▮▮ Ex. 13 (Wagner Report) ¶ 414. The Wagner Report also cites a sensitivity analysis performed by Waymo about the assumptions underlying these forecasts for the proposition that ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮

The Wagner Report claims these figures are relevant to analyzing *Georgia-Pacific*'s eighth factor. But *Georgia-Pacific* does not contemplate the impact of speculative future

---

[1] These figures are recited in the Wagner Report (¶ 79) but play no role in the damages analysis.

1  forecasts for products that do not exist. The eighth factor considers only "[t]he established
2  profitability of the product made under the patent; its commercial success; and its current
3  popularity." 318 F. Supp. at 1120. This factor is intended to capture the fact that a higher royalty
4  can be demanded where a product has established commercial success and its future is not
5  speculative; it is not a way to shoehorn an impermissible lost profits analysis into the *Georgia-*
6  *Pacific* framework or introduce the jury to speculative revenue forecasts.

7  Even if the revenue forecasts were theoretically relevant to one of the fifteen prongs under
8  *Georgia-Pacific*, in practice the admission of such large numbers incurably threatens to "skew the
9  damages horizon for the jury," *Virnetx*, 767 F.3d at 1333, and should therefore be excluded under
10  Rule 403, *Multimedia Patent Trust v. Apple Inc.*, 2012 WL 5873711, at *6 (S.D. Cal. Nov. 20,
11  2012). While the Federal Circuit's decisions in *Virnetx*, *LaserDynamics*, and *Uniloc* concerned
12  the misuse of the entire market value rule, the analogy to this case is apt. In *Uniloc*, for example,
13  the plaintiff argued that its expert permissibly used a tiny royalty rate on the overall sales of the
14  infringing product as a "check" on his separate analysis of a hypothetical negotiation. 632 F.3d at
15  1311, 1319-21. The Federal Circuit rejected that argument, holding that "disclosure that a
16  company has made $19 billion dollars in revenue from an infringing product cannot help but
17  skew the damages horizon for the jury, regardless of the contribution of the patented component
18  to this revenue." *Id.* at 1320. The same is true here. Waymo's forecasted revenue and potential
19  lost profits for a product that has not been commercialized have no legal bearing on the
20  determination of a reasonable royalty for the alleged use of the trade secrets at issue, and the ▮
21  ▮ "cat" cannot be "put back in the bag" once Waymo introduces it. *Id.*

22  Wagner's use of the revenue projections is a far cry from those used in reasonable-royalty
23  calculations permitted by the Federal Circuit. For example, in *Interactive Pictures Corp. v.*
24  *Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001), the Court upheld a reasonably royalty rate
25  that was calculated a percentage of the *accused* product's revenue forecast made at market entry.
26  *Id.* at 1384-85. Here, on the other hand, Wagner seeks to import into the *Georgia-Pacific*
27  analysis a highly speculative forecast of the *accuser's* revenue *and potential lost profits*, that have
28  no direct relationship with the proposed royalty.

1   Moreover, if the issue of the effect of competition were relevant to the determining a reasonable royalty, Wagner can make the point simply without citing forecasts. If the jury were to accept Waymo's premise about the importance of the trade secrets at issue and the alleged head start Uber supposedly obtained, the jury would have no trouble grasping the potential financial impact to Waymo and any other company in the self-driving car business without reference to any specific forecasts or figures. *See Digital Reg of Texas LLC v. Adobe Systems, Inc.*, 2014 WL 4090550, at *4-5 (N.D. Cal. Aug. 19, 2014) (permitting introduction of "circumstances of" patent license but "not the actual amount" where it could skew the damages horizon).

Wagner also relies on Waymo's revenue forecasts and similar evidence in support of his opinion that Waymo will be irreparably harmed as a result of the alleged trade secret misappropriation. Ex. 13 (Wagner Report) ¶¶ 333, 338-341, 354, 367, 368. But Wagner's opinion and the facts on which it relies solely for the equitable portion of the case should not be presented to the jury where they pose a risk of skewing the jury's damages analysis. *See Pioneer Hi-Bred Int'l Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 145 (N.D. Iowa 2003); *see also* Fed. Judicial Ctr., Patent Case Mgmt. at 8-4 (3d ed. 2016) ("Separate trials are particularly appropriate where the equitable issues involve facts that are irrelevant or only marginally relevant to the liability issues to be decided by the jury, or which may prejudice a party's case.").

### C.  Uber's Financial Condition or Resources

Finally, Waymo should be precluded from offering any evidence about Uber's current revenues, profitability, or other financial resources because such information is irrelevant and poses a risk of biasing the jury's award. *See, e.g.*, *HTC Corp*, 2013 WL 4782598, at *6.

### III.  Conclusion

For the foregoing reasons, Defendants respectfully seek an order precluding Waymo from offering evidence of or soliciting testimony about irrelevant financial information including (i) Waymo's investments in self-driving technology generally or the trade secrets at issue specifically; (ii) Waymo's revenue forecasts or any estimated impact on them by competition from Uber; and (iii) Uber's financial condition or resources.

Dated: September 7, 2017

MORRISON & FOERSTER LLP
BOIES SCHILLER FLEXNER LLP
SUSMAN GODFREY LLP


By: */s/ Karen L. Dunn*
      KAREN L. DUNN

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC


By: */s/ Neel Chatterje*
      NEEL CHATTERJEE

Attorneys for Defendant
OTTO TRUCKING LLC


**ATTESTATION OF E-FILED SIGNATURE**

I, Karen L. Dunn, am the ECF User whose ID and password are being used to file this Motion *in Limine*. In compliance with General Order 45, X.B., I hereby attest that Neel Chatterjee has concurred in this filing.


      */s/ Karen L. Dunn*
      Karen L. Dunn