1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Tel:     415.268.7000 / Fax:   415.268.7522
5
   KAREN L. DUNN (*Pro Hac Vice*)
6  kdunn@bsfllp.com
   HAMISH P. M. HUME
7  hhume@bsfllp.com
   BOIES SCHILLER FLEXNER LLP
8  1401 New York Avenue, N.W.
   Washington, D.C.  20005
9  Tel:     202.237.2727 / Fax:   202.237.6131

10 WILLIAM CARMODY (*Pro Hac Vice*)
   bcarmody@susmangodfrey.com
11 SUSMAN GODFREY LLP
   1301 Avenue of the Americas, 32nd Floor
12 New York, NY 10019-6023
   Tel.:     212.336.8330 / Fax.:   212.336.8340
13
   Attorneys for Defendants
14 UBER TECHNOLOGIES, INC. and OTTOMOTTO LLC

15 NEEL CHATTERJEE (SBN 173985)
   nchatterjee@goodwinlaw.com
16 GOODWIN PROCTER LLP
   135 Commonwealth Drive
17 Menlo Park, California 94025
   Tel.:     650.752.3100 / Fax.:   650.853.1038
18
19 Attorneys for Defendant OTTO TRUCKING LLC

20                          UNITED STATES DISTRICT COURT
21                      NORTHERN DISTRICT OF CALIFORNIA
                             SAN FRANCISCO DIVISION
22

| | |
|---|---|
| WAYMO LLC, | Case No. 3:17-cv-00939-WHA |
| Plaintiff, | **DEFENDANTS' MOTION *IN LIMINE* NO. 24 TO EXCLUDE IRRELEVANT AND PREJUDICIAL FINANCIAL INFORMATION** |
| v. | |
| UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
| Defendants. | Judge:   The Honorable William Alsup Trial Date: October 10, 2017 |

28           REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    As this case has progressed, Waymo's asserted patents and trade secrets have drastically

2    shrink in scope.    But that has not stopped Waymo from propounding an over-the-top,

3    ███████████████ damages theory.  Given the entirely speculative nature of Waymo's damages

4    models, it has become clear that Waymo will try to impermissibly "skew the damages horizon"

5    by introducing irrelevant and prejudicial financial information.  Defendants now move *in limine*

6    to preclude Waymo from offering evidence or argument outside the parameters of its actual

7    disclosed damages models about the purported costs incurred in developing its trade secrets, its

8    speculative business forecasts, and Uber's financial condition or resources.

9    **I.      Legal Standard**

10   The Federal Circuit has expressed serious concern that permitting parties to introduce

11   large dollar figures with little or no relationship to a properly disclosed and valid damages model

12   will "skew the damages horizon for the jury" and, ultimately, the verdict.  *Virnetx, Inc. v. Cisco*

13   *Systems, Inc.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014); *accord LaserDynamics, Inc. v. Quanta*

14   *Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d

15   1292, 1320 (Fed. Cir. 2011).  Because of the same risk, courts frequently exclude any arguments

16   about a party's wealth, size, and corporate status. *See Draiper v. Airco, Inc.*, 580 F.2d 91, 95 (3d

17   Cir. 1978); *HTC Corp. v. Technology Properties, Ltd.*, 2013 WL 4782598, at *6 (N.D. Cal. Sept.

18   6, 2013).

19   **II.     Argument**

20   Waymo's damages expert, Michael Wagner, asserts: (1) two deeply flawed unjust

21   enrichment models ███████████████████████████████████████████████

22   ████████████████████████████████; and (2) a "reasonable royalty" that consists of

23   Wagner starting with his unjust enrichment number, reciting the factors outlined in *Georgia-*

24   *Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), and summarily

25   concluding that a reasonable royalty would be his unjust enrichment figure ██████.   The

26   validity of this approach will be subject to a separate *Daubert* challenge.  For now, Waymo

27   should be precluded from attempting to skew the jury's verdict by introducing other "big

28   numbers" that have little or nothing to do with these theories.

1

1

### A.      Waymo's Expenditures on Trade Secrets

2      Waymo has neither proffered a theory of damages based on, nor provided accurate

3  calculations of, its expenditures in developing the trade secrets at issue.   In interrogatory

4  responses, however, Waymo provided conclusory estimates for how much it spent developing

5  them.  Waymo "estimates" that it spent ███████████ developing trade secrets ████████████

6  ███████████ developing trade secrets ████████████████████ developing trade secret

7  111.  *See* Goodman Decl., Ex. 8 (Plaintiff's Amended Fourth Supplemental Objections and

8  Responses to Uber's Interrog. Nos. 1-11) at Interrog. 6.  To arrive at the ████████████████

9  ██████████████████████████████████████████████████████████████████████████████

10 ████████████████████████ *See* Ex. 11 (Bananzadeh 30(b)(6) Dep.) at 103:9-22; 105:4-

11 17; 109:1-12; 146:20-147:6. These "estimated" costs form no part of the damages theory

12 disclosed by Waymo's expert.[1]  They also are likely to "skew the damages horizon" and should

13 therefore be excluded.  *E.g.*, *Virnetx*, 767 F.3d at 1333.

14

### B.  Waymo's Revenue Forecasts and Lost Profits

15      Waymo does not seek damages under a lost profits theory because there is no legal basis

16 to do so.   Waymo should not be permitted to introduce the jury to the same speculative evidence

17 about its future revenues and lost profits by claiming it is somehow relevant to its expert's unjust

18 enrichment or reasonable royalty analyses.  For example, the Wagner Report recites that in 2015,

19 ██████████████████████████████████████████████████████████████████████████████

20 ████████████████████████████████ Ex. 13 (Wagner Report) ¶ 414.  The Wagner Report also

21 cites a sensitivity analysis performed by Waymo about the assumptions underlying these forecasts

22 for the proposition that ███████████████████████████████████████████████████████

23 ██████████████████████████████████████████████████████████████████████████████

24 ████████████████████████████████████████████

25      The Wagner Report claims these figures are relevant to analyzing *Georgia-Pacific*'s

26 eighth factor.   But *Georgia-Pacific* does not contemplate the impact of speculative future

27

---

[1] These figures are recited in the Wagner Report (¶ 79) but play no role in the damages analysis.

28

1   forecasts for products that do not exist.  The eighth factor considers only "[t]he established

2   profitability of the product made under the patent; its commercial success; and its current

3   popularity."  318 F. Supp. at 1120.  This factor is intended to capture the fact that a higher royalty

4   can be demanded where a product has established commercial success and its future is not

5   speculative; it is not a way to shoehorn an impermissible lost profits analysis into the *Georgia-*

6   *Pacific* framework or introduce the jury to speculative revenue forecasts.

7       Even if the revenue forecasts were theoretically relevant to one of the fifteen prongs under

8   *Georgia-Pacific*, in practice the admission of such large numbers incurably threatens to "skew the

9   damages horizon for the jury," *Virnetx*, 767 F.3d at 1333, and should therefore be excluded under

10  Rule 403, *Multimedia Patent Trust v. Apple Inc.*, 2012 WL 5873711, at *6 (S.D. Cal. Nov. 20,

11  2012).  While the Federal Circuit's decisions in *Virnetx*, *LaserDynamics*, and *Uniloc* concerned

12  the misuse of the entire market value rule, the analogy to this case is apt.  In *Uniloc*, for example,

13  the plaintiff argued that its expert permissibly used a tiny royalty rate on the overall sales of the

14  infringing product as a "check" on his separate analysis of a hypothetical negotiation.  632 F.3d at

15  1311, 1319-21.  The Federal Circuit rejected that argument, holding that "disclosure that a

16  company has made $19 billion dollars in revenue from an infringing product cannot help but

17  skew the damages horizon for the jury, regardless of the contribution of the patented component

18  to this revenue."  *Id.* at 1320.  The same is true here.  Waymo's forecasted revenue and potential

19  lost profits for a product that has not been commercialized have no legal bearing on the

20  determination of a reasonable royalty for the alleged use of the trade secrets at issue, and the ▓▓

21  ▓▓▓ "cat" cannot be "put back in the bag" once Waymo introduces it.  *Id.*

22       Wagner's use of the revenue projections is a far cry from those used in reasonable-royalty

23  calculations permitted by the Federal Circuit.  For example, in *Interactive Pictures Corp. v.*

24  *Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001), the Court upheld a reasonably royalty rate

25  that was calculated a percentage of the *accused* product's revenue forecast made at market entry.

26  *Id.* at 1384-85.  Here, on the other hand, Wagner seeks to import into the *Georgia-Pacific*

27  analysis a highly speculative forecast of the *accuser's* revenue *and potential lost profits*, that have

28  no direct relationship with the proposed royalty.

1    Moreover, if the issue of the effect of competition were relevant to the determining a

2 reasonable royalty, Wagner can make the point simply without citing forecasts.  If the jury were

3 to accept Waymo's premise about the importance of the trade secrets at issue and the alleged head

4 start Uber supposedly obtained, the jury would have no trouble grasping the potential financial

5 impact to Waymo and any other company in the self-driving car business without reference to any

6 specific forecasts or figures.  *See Digital Reg of Texas LLC v. Adobe Systems, Inc.*, 2014 WL

7 4090550, at *4-5 (N.D. Cal. Aug. 19, 2014) (permitting introduction of "circumstances of" patent

8 license but "not the actual amount" where it could skew the damages horizon).

9    Wagner also relies on Waymo's revenue forecasts and similar evidence in support of his

10 opinion that Waymo will be irreparably harmed as a result of the alleged trade secret

11 misappropriation.  Ex. 13 (Wagner Report) ¶¶ 333, 338-341, 354, 367, 368.  But Wagner's

12 opinion and the facts on which it relies solely for the equitable portion of the case should not be

13 presented to the jury where they pose a risk of skewing the jury's damages analysis.  *See Pioneer

14 Hi-Bred Int'l Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 145 (N.D. Iowa 2003); *see also*

15 Fed. Judicial Ctr., Patent Case Mgmt. at 8-4 (3d ed. 2016) ("Separate trials are particularly

16 appropriate where the equitable issues involve facts that are irrelevant or only marginally relevant

17 to the liability issues to be decided by the jury, or which may prejudice a party's case.").

18    **C.    Uber's Financial Condition or Resources**

19    Finally, Waymo should be precluded from offering any evidence about Uber's current

20 revenues, profitability, or other financial resources because such information is irrelevant and

21 poses a risk of biasing the jury's award.  *See, e.g.*, *HTC Corp*, 2013 WL 4782598, at *6.

22 **III.    Conclusion**

23    For the foregoing reasons, Defendants respectfully seek an order precluding Waymo from

24 offering evidence of or soliciting testimony about irrelevant financial information including (i)

25 Waymo's investments in self-driving technology generally or the trade secrets at issue

26 specifically; (ii) Waymo's revenue forecasts or any estimated impact on them by competition

27 from Uber; and (iii) Uber's financial condition or resources.

28

DEFENDANTS' MOTION *IN LIMINE* NO. 24
Case No. 3:17-cv-00939-WHA

1    Dated:  September 7, 2017                MORRISON & FOERSTER LLP
                                             BOIES SCHILLER FLEXNER LLP
2                                            SUSMAN GODFREY LLP

3

4                                            By:  */s/ Karen L. Dunn*
                                                  KAREN L. DUNN
5
                                             Attorneys for Defendants
6                                            UBER TECHNOLOGIES, INC. and
                                             OTTOMOTTO LLC
7

8
                                             By:  */s/ Neel Chatterje*
9                                                 NEEL CHATTERJEE

10                                           Attorneys for Defendant
                                             OTTO TRUCKING LLC
11

12

13

14                    **ATTESTATION OF E-FILED SIGNATURE**

15         I, Karen L. Dunn, am the ECF User whose ID and password are being used to file this

16   Motion *in Limine*.  In compliance with General Order 45, X.B., I hereby attest that Neel

17   Chatterjee has concurred in this filing.

18
                                             */s/ Karen L. Dunn*
19                                              Karen L. Dunn

20

21

22

23

24

25

26

27

28