QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>      vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S MOTION IN LIMINE 17**<br><br>Date:       September 27, 2017<br>Time:       8:00 a.m.<br>Ctrm:       8, 19th Floor<br>Judge:      Honorable William H. Alsup<br>Trial Date: October 10, 2017 |

**INTRODUCTION**

The Court should preclude Uber from presenting evidence and argument that steps have been undertaken to modify certain designs in its LiDAR systems in an effort to avoid Waymo's trade secrets. Evidence or argument about Uber's attempted redesigns is irrelevant, and should be excluded, because Uber's purported design arounds are nothing of the sort. First, rather than start from scratch to create a system which does not use Waymo's trade secrets as its foundation, Uber instead has elected to take a "straight path" from the current Fuji system – *i.e.* the system derived from Waymo's trade secrets – to its purported "design around" approach. In electing to take yet another shortcut in creating a custom LiDAR solution, Uber continues to derive its designs from Waymo's trade secrets and has not actually designed around anything. Second, Uber's lead LiDAR engineer testified that for certain purported design changes, Uber ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, or has only investigated "generic" changes not tied to its actual designs. And, as with many issues in this case, Uber has shielded portions of this design around investigation directed by its lawyers under claims of privilege, while affirmatively relying on other portions to its benefit. Thus, any evidence or argument that Defendants are modifying the design of their LiDAR system should be excluded from trial because it is irrelevant, unduly prejudicial, and likely to lead to jury confusion.

**ARGUMENT**

In response to Waymo's Common Interrogatory No. 4 seeking Uber's contentions for why it is not misappropriating Waymo's trade secrets, Uber asserted on the last day of discovery that it is altering its designs related to Waymo's trade secret numbers 2, 7, 9, 13, 14, and 96.[1] Ex. 1 at 30-44. Up until the last day of discovery, however, Uber did not contend that it was actively redesigning any elements beyond modifying the transmit board in *Fuji* "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" in order to avoid Waymo trade secret number 7. *Id.* at 16. Uber's eleventh hour claim that it is invoking wholesale changes to its LiDAR

---

[1] Uber had previously provided theoretical "estimate[s] of the time and cost" to modify its designs to avoid Waymo trade secret numbers 2, 7, 9, 13, and 14, but aside from a specific reference to its redesign of its overhanging diodes, never contended in response to Waymo's interrogatories that it was actively considering any further redesign until the last day of discovery. Ex. 2 at 12.

designs in order to avoid Waymo's trade secrets ignores a threshold issue: the redesigns continue to be derived from, and thus continue to misappropriate, Waymo's trade secrets. James Haslim, Uber's lead LiDAR engineer, testified that any redesign would include providing Uber's engineers with "enough direction to make a straight path design" from Uber's current Fuji design that would not entail "research and development or investigation" or "multiple iterations in the design time." Ex. 3, 700:4-17. Thus, Uber's "straight path" approach – using the current Fuji design that is loaded with Waymo's trade secrets as the foundation for its purported redesigns – amounts to nothing more than continued ongoing use of Waymo's trade secret designs.

Moreover, with respect to Uber's purported redesigns of its transmit block PCBs and its FAC lenses, Uber's eleventh hour discovery response indicates that it ██████████████ ████████████████████████████████████████████. Ex. 1 at 41. Indeed, Mr. Haslim testified two weeks before Uber served its supplemental interrogatory response that for the purported redesign of ████████████████████, "████████████████████████████████████████." Ex. 3 429:1-3. Mr. Haslim also testified that the resulting loss of performance from ████████████████ ██████████████ would require performing "optical simulations" to quantify the degradation in performance, but that he had no plans to do that quantification before trial. Ex. 3 430:10-431:7. With respect to the redesign of the ████████, Mr. Haslim testified that he only performed "an investigation to determine time and cost associated with a generic change to the ████████." Ex. 3 435:1-3. Similar to the design changes related to the transmit block, Mr. Haslim testified that he had not done any analysis of the performance of any redesigned ████████, and had no current plans to do so in the future. Ex. 3 440:5-13. ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████.[2] Ex. 3 441:19-442:1. Mr. Haslim's testimony confirms what is inherent in Uber's

---

[2] During his deposition, Mr. Haslim made no mention of the additional Fuji redesign that Uber identified on the final day of discovery to eliminate the use of ████████████████████ ████████, and testified that he had conducted no testing or analysis of potential performance

1  discovery response—████████████████████████████████████████████
2  ██████████████████████████████.
3  Because ████████████████████ test these redesigns, any evidence or argument
4  related to the design changes fails the threshold test of relevance under FRE 402.  In addition, if
5  admitted the jury could be left with the misimpression that Waymo's trade secrets are no longer in
6  use, or that Uber is no longer liable for its misappropriation of Waymo's trade secrets.  Allowing Uber
7  to submit evidence or argument that it is redesigning its transmit boards and FAC lenses, ████████
8  ████████████████ or testing are actually underway, would therefore also violate FRE 403 by
9  confusing the issues, misleading the jury, and prejudicing Waymo.
10 For the only design change that Uber has indicated it has current plans to implement—the
11 modification of the ████████████████████████████████████████████████████████
12 ████████████████████████████████████████████—Mr. Haslim stated that he could not
13 testify why the design change was being made because he was directed to do so as part of an attorney-
14 client privileged communication.  Ex. 3 663:11-20.  Moreover, while Mr. Haslim originally
15 considered an additional change to the ████████ on the transmit PCBs—which correspond to
16 Waymo's trade secret number 8 that was no longer being asserted at the time of Mr. Haslim's
17 deposition following Waymo's court-ordered narrowing of its trade secrets for trial—under a caution
18 to not reveal privileged information Mr. Haslim stated that he could only "simply say that I lack a
19 reason to make that change."  Ex. 3 663:22-664:10.  Mr. Haslim also could not reveal his reasoning
20 for asking his colleague, Will Treichler, to investigate these changes because it was pursuant to an
21 attorney-client privileged conversation.  Ex. 3 662:7-20, 664:12-16.  What is clear from the direction
22 Mr. Haslim was given, however, was that he was instructed to focus on ████████████████
23 ████████████████████████████████████████████, for the sole purpose of avoiding only
24 Waymo's trade secret number 7.  Ex. 3 666:7-12 ("As long as we can maintain the same quality of
25 boards that we receive ████████████████, I see no disadvantage.")
26
27 ─────────────────────────
   degradation or design tolerances in ████████████████████████████████████████.
28 *See* Ex. 1 at 34-35; Ex. 3 424:21-426:1; 704:5-8; 706:15-19.

As with all other instances of Uber's use of privilege as both a sword and a shield, here too it should be precluded from asserting that it has designed around Waymo's trade secrets while refusing to disclose the directions its engineers were given in order to do so. *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (affirming district court's in limine ruling prohibiting defendant from using attorney-client communications as both a sword and a shield); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 576 (1st Cir. 1989) (affirming district court's decision to bar defendant from testifying at trial due to his previous refusal to testify during discovery on Fifth Amendment grounds); *Galaxy Comp. Serv'cs, Inc. v. Baker*, 325 B.R. 544, 559 (E.D.Va. 2005) (granting motion in limine to prevent witness from testifying about issues she refused to answer during her deposition on attorney-client privilege grounds); *Engineered Prods. Co. v. Donaldson Co., Inc.,* 313 F.Supp. 2d 951, 1022–23 (N.D. Iowa 2004) (barring plaintiff from introducing testimony at trial on issues it prevented defendant from exploring during deposition by invoking attorney-client privilege).

## **CONCLUSION**

For the foregoing reasons, Uber's purported redesigns are irrelevant to Waymo's claims of Uber's misappropriation and ongoing use of Waymo's trade secrets, and are likely to cause unfair prejudice and confusion if permitted to be presented to the jury. Waymo's Motion in Limine No. 17 should be granted.

DATED: August 7, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC