MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel:    415.268.7000 / Fax:    415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P. M. HUME
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Tel:    202.237.2727 / Fax:    202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel.:    212.336.8330 / Fax.:    212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and OTTOMOTTO LLC

NEEL CHATTERJEE (SBN 173985)
nchatterjee@goodwinlaw.com
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, California 94025
Tel.:    650.752.3100 / Fax.:    650.853.1038

Attorneys for Defendant OTTO TRUCKING LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                  Plaintiff,<br><br>         v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>                  Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS' OPPOSITION TO WAYMO'S MOTION IN LIMINE NO. 17**<br><br>Judge:   The Honorable William Alsup<br>Trial Date: October 10, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## INTRODUCTION

Waymo's attempt to buck well-established law and question the relevance of Uber's redesign efforts falls short. Waymo fails to cite any authority holding that evidence of redesign is not relevant. The bottom line is that Uber disclosed its plans to design around the asserted trade secrets before the close of discovery and Waymo deposed Uber personnel regarding the proposed redesigns—including the nature of the redesigns and the current status thereof. Uber then promptly confirmed that it was implementing its proposed design changes. Waymo's claim that such evidence is irrelevant is disingenuous and the Court should therefore deny Waymo's Motion in Limine 17.

## ARGUMENT

Evidence of a defendant's attempt to design around a trade secret is unquestionably relevant in a misappropriation case. At a minimum, evidence of redesigns is relevant to determining the measure of damages or whether an injunction is appropriate. *See, e.g.*, *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2013 WL 557102, at *7-9 (N.D. Cal. Feb. 12, 2013) (referring to defendants' redesign with regard to injunctive relief); *Airborne Athletics, Inc. v. Shoot-A-Way, Inc.*, 2012 WL 3612035, at *4-6 (D. Minn. Aug. 21, 2012) (denying plaintiff's motion in limine seeking to exclude evidence of redesigned product); 2-9H Milgrim on Trade Secrets II (2017) (stating redesigns may be considered in determining a reasonable royalty rate). Waymo does not point to any case law stating otherwise.

The crux of Waymo's argument—that Uber waited until the last day of discovery to disclose it was altering its designs—is false. Uber provided ample notice of its intent to design around trade secrets 2, 7, 9, 13, 14, and 96. On July 28, 2017, Uber timely responded to Waymo's Common Interrogatory No. 1 regarding redesign efforts. *See* Goodman Decl. Ex. 50 at 3-11. Not only did Uber provide estimates of the time and cost to modify its designs, but it stated the specific redesigns it was contemplating at the time:

- For trade secret 2, ███████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████████████████ ;

1

- For trade secret 7, ███████████████ ██████ ;
- For trade secret 9, █████████████
- For trade secrets 13 and 14, ████████████ ████████████████████████████ ██████ and
- For trade secret 96, ████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████

*Id.* Waymo subsequently deposed James Haslim, Uber's engineer most familiar with the redesigns, and questioned him on each of the proposed redesigns. Thus, Waymo cannot claim that it has been prejudiced from a lack of discovery regarding Uber's redesigns.

The only new information in Uber's discovery responses served on August 24, 2017 was that Uber was moving forward to implement the redesigns that were already disclosed to Waymo. Given that Uber was not aware of which trade secrets Waymo would assert at trial until August 1, 2017, it could not decide whether to commit the resources necessary to implement any redesigns until after receiving Waymo's narrowed list of trade secrets. Soon after, Uber disclosed that it was implementing the redesign for Trade Secret 7 by ████████████████████ ████████████████████████ . *See* Goodman Decl. Ex. 52 at 17. This redesign was relatively easy to implement and required few resources, so a decision to execute the redesign was quickly made. The other proposed redesigns, however, were more significant in both time and cost required to implement. *See* Goodman Decl. Ex. 50 at 3-11. As a result, the decision to move forward with those took longer and was promptly disclosed as soon as it was made. Given that Waymo already knew the modifications Uber was contemplating and had an opportunity to depose witnesses about them, Waymo cannot now claim that a decision to implement these modifications somehow makes them irrelevant.

Waymo claims that Uber does not plan to implement the proposed redesigns, but the very

1  discovery responses Waymo points to show that is not the case.  The discovery responses state
2  that Uber *is* moving forward with implementing the redesigns.  Waymo's reliance on James
3  Haslim's deposition to the contrary is both misplaced and misleading.  Mr. Haslim's deposition
4  occurred on August 9, more than two weeks before the close of discovery and before Uber made
5  any final decisions to move forward with most of the proposed redesigns.[1]  Furthermore, Mr.
6  Haslim's testimony states that Uber was still contemplating whether to implement the redesigns at
7  that time.  *See, e.g.*, Ex. 3 to Plaintiff's MIL No. 17 at 429:1-3 (stating ███████████████
8  ███████████████████████████████████████████");  440:19-21 (stating Mr.
9  Haslim ████████████████████████████████████████ . It should,
10 therefore, not have come as a surprise when Uber disclosed it was implementing the redesigns.
11 Because Uber is implementing these redesigns, they are undoubtedly relevant.
12       Waymo's motion raises two other points that have no bearing on the relevance of Uber's
13 redesigns.  First, Waymo contends that Uber's redesigns are derived from, and continue to
14 misappropriate, its trade secrets.  Waymo does not point to any specific evidence that the
15 redesigns are derived from their trade secrets.  Instead, Waymo cites a portion of James Haslim's
16 deposition testimony where he states that his estimates of redesign time are based on the
17 assumption that engineers would have "enough direction to make a straight path design" to come
18 up with an appropriate redesign.  *See* Ex. 3 to Plaintiff's MIL No. 17 at 700:5.  This makes sense
19 as designing around the asserted trade secrets— ████████████████████
20 ████—does not require redesigning the entire LiDAR system.  An engineer implementing a
21 redesign would need to know, for example, that their task was to derive a new design for the
22 ████████ as opposed to some other component.  In any event, whether Uber's redesigns
23 continue to misappropriate the asserted trade secrets is an issue for trial and has no bearing on
24 whether or not they are relevant in the first instance.
25       Second, Waymo contends Uber improperly asserted privilege when Mr. Haslim was asked

---

[1] As mentioned above, Uber had already disclosed prior to Mr. Haslim's deposition that it was moving forward with the redesign for Trade Secret 7.

1  about his reasons for asking a colleague, Will Treichler, about a proposed redesign.  Mr. Haslim
2  answered numerous questions regarding the nature of the design changes at issue in the
3  conversation with Mr. Treichler and how the information provided by Mr. Treichler informed the
4  decision-making for those design changes.  *See generally* Ex. 3 to Plaintiff's MIL No. 17 at
5  662:3-671:2.  To the extent Mr. Haslim's *reasons* for asking Mr. Treichler about the design
6  changes were due to a conversation with an attorney, however, those conversations are privileged.
7  Waymo cannot simply claim that Uber is using the privilege as a "sword and a shield" merely
8  because it is a convenient argument for them to make, especially when Mr. Haslim testified
9  extensively regarding the conversation with Mr. Treichler and the design changes discussed in
10 that conversation.  Nor did Waymo move to compel a response to its questions if it believed the
11 assertion of privilege was improper.  Lastly, Waymo makes no showing that the assertion of
12 privilege has anything to do with the basis of their motion—the relevance of the redesigns.

## CONCLUSION

For the foregoing reasons, Uber's evidence of its efforts to design around the asserted trade secrets is relevant and should be permitted at trial.  As a result, Waymo's Motion in Limine 17 should be denied.

Dated: September 13, 2017

MORRISON & FOERSTER LLP
BOIES SCHILLER FLEXNER LLP
SUSMAN GODFREY LLP

By: */s Karen L. Dunn*
KAREN L. DUNN

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC

GOODWIN PROCTER LLP

By:  */s/ Neel Chatterjee*
NEEL CHATTERJEE

Attorneys for Defendant
OTTO TRUCKING LLC