1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Tel:   415.268.7000 / Fax:   415.268.7522
5
   KAREN L. DUNN (*Pro Hac Vice*)
6  kdunn@bsfllp.com
   HAMISH P. M. HUME
7  hhume@bsfllp.com
   BOIES SCHILLER FLEXNER LLP
8  1401 New York Avenue, N.W.
   Washington, D.C.  20005
9  Tel:   202.237.2727 / Fax:   202.237.6131

10 WILLIAM CARMODY (*Pro Hac Vice*)
   bcarmody@susmangodfrey.com
11 SUSMAN GODFREY LLP
   1301 Avenue of the Americas, 32nd Floor
12 New York, NY 10019-6023
   Tel.:   212.336.8330 / Fax.:   212.336.8340
13
   Attorneys for Defendants
14 UBER TECHNOLOGIES, INC. and OTTOMOTTO LLC

15 NEEL CHATTERJEE (SBN 173985)
   nchatterjee@goodwinlaw.com
16 GOODWIN PROCTER LLP
   135 Commonwealth Drive
17 Menlo Park, California 94025
   Tel.:   650.752.3100 / Fax.:   650.853.1038
18
19 Attorneys for Defendant OTTO TRUCKING LLC

20                          UNITED STATES DISTRICT COURT
21                         NORTHERN DISTRICT OF CALIFORNIA
                                SAN FRANCISCO DIVISION
22

| WAYMO LLC, | Case No. 3:17-cv-00939-WHA |
|---|---|
| Plaintiff, | **DEFENDANTS' MOTION *IN LIMINE* NO. 25 TO EXCLUDE REFERENCE TO THE 14,000 DOWNLOADED FILES OR, IN THE ALTERNATIVE, FOR A RULE 104 HEARING AND/OR RULE 105 INSTRUCTION** |
| v. | |
| UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
| Defendants. | Judge:   The Honorable William Alsup<br>Trial Date: October 10, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  Defendants move to exclude evidence of the alleged downloading of 14,000 files by Mr.
2  Levandowski under Rules 402 and 403 or, alternatively, for a Rule 104 hearing to determine the
3  admissibility of such evidence and/or whether a Rule 105 limiting instruction is required.

**I.  Introduction**

The centerpiece of Waymo's case is that on December 11, 2015, Levandowski downloaded 14,000 files from the SVN server. Waymo says these files are highly confidential trade secrets that Levandowski took to Uber, and that Uber then used. This has been a powerful story for Waymo to tell, and it wants to tell that story to the jury. But the evidence now shows it is a highly prejudicial and misleading tale that is irrelevant to issues the jury will decide.

Contrary to Waymo's assertions since this case began, the downloaded files are demonstrably not the source of any trade secret allegedly misappropriated. Of the nine alleged trade secrets that will be the subject of this trial, six do not exist in the 14,000 downloaded files; of the remaining three, one (TS 96) is so vague that it is the subject of a motion to strike and a motion for summary judgment, and the remaining two (TS 2 and TS 7) are classic examples of alleged trade secrets that were "in the heads" of the former Waymo employees who came to Uber, and for which downloaded files are completely irrelevant. TS 7 claims a trade secret over ▇ ▇ the engineer who developed that at Google was Gaetan Pennecot, who then also developed the ▇ at Uber. The downloading of files has nothing to do with what Mr. Pennecot did, and is irrelevant to whether or not the ▇ ▇ constitutes trade secret misappropriation. The files are also irrelevant to TS 2. It claims the ▇ is a trade secret. It is publicly known that 64 diodes is common; and the former Google engineers who came to Uber knew ▇ ▇ . No one would need "downloaded files" for that information. Thus, the files are irrelevant to whether Uber's ▇ somehow constitutes trade secret misappropriation.

Moreover, documents produced on the last day of discovery show the 14,000 downloaded files are not the exceptionally valuable trade secrets Waymo has represented to the Court, and also show that the "downloading" of the entire SVN server occurs automatically when the server is accessed. The Google employee who was initially asked to look into the alleged downloading,

1  Sasha Zbrozek, reported to his colleagues that the files on the SVN server were "considered low-
2  value enough that we had even considered hosting it off of Google infrastructure." Goodman
3  Decl., Ex. 3 at -00086886. He also explained that the SVN server "syncs files locally for work,
4  so even if someone sync'd the entire folder that wouldn't be out of normal operation." *Id.* at -
5  00086890. In deposition, he explained that when SVN login instructions were followed, "the
6  present representation of the file system is downloaded in its entirety." Ex. 20 at 197:4-7. Mr.
7  Zbrozek told his colleagues that Levandowski's alleged downloading "Doesn't ring the alarm
8  bells for me." Ex. 3 at -00086886.

9  There is, of course, evidence that Levandowski appears to have downloaded files from the
10 SVN server, and Levandowski has taken the 5th. But while that may provide grounds to infer
11 that Levandowski may have engaged in some kind of misguided wrongdoing, Levandowski is not
12 a party. And whatever Levandowski may have done (or thought he was doing), the evidence
13 shows not only that Uber never acquired the downloaded files, but also that the downloaded files
14 are irrelevant to the trade secrets Waymo claims Uber misappropriated.

15 **II.    Argument**

16 In seeking a preliminary injunction, Waymo filed an exhibit listing 121 claimed Trade
17 Secrets. Dkt. 25-7 ("TS List"). That was to comply with § 2019.210 of the California Code,
18 which required Waymo to identify each allegedly misappropriated trade secret "with reasonable
19 particularity." Waymo filed that exhibit on March 10, 2017—approximately five months after it
20 supposedly "discovered" the downloading of the 14,000 files from the SVN server that it
21 presented as the centerpiece of its case. It was obviously in Waymo's interest to connect each
22 alleged trade secret to specific "downloaded files" wherever possible. And it did so—but only for
23 15 of them—the ones that vaguely claimed that certain "design schematics" constituted trade
24 secrets. Dkt. 25-7 at TS 94-108. For the rest, Waymo was unable to cross reference any specific
25 file. *Cf. id.* at TS 1-8, 20, 109 (generically referencing the SVN server but not specific files).

26 Since filing its TS List, Waymo has conducted 12 detailed inspections of Uber's facilities,
27 LiDAR designs, source code, LiDAR sensors, hundreds of thousands of documents and emails,
28 and engineers' computers, spanning over 60 hours; reviewed tens of thousands of Uber

1  documents; and taken more than 45 depositions of Uber's engineers and executives. After all
2  that, Waymo has identified nine alleged trade secrets it claims Uber misappropriated. Of these,
3  only one (TS 96) had a cross reference in the TS List to any downloaded files. Uber has moved
4  to strike TS 96 as too vague to be a trade secret, and the Court has also permitted a motion for
5  summary judgment on any narrowed version of TS 96. Dkt. 1107-04.

6  Waymo cannot show that the downloaded files are relevant to the eight remaining trade
7  secrets it claims were misappropriated. Six are demonstrably not in the files; the other two are
8  based on information that was in the heads of the former Waymo employees who came to Uber,
9  making the files irrelevant.

### A.   The Downloaded Files Do Not Contain TS 9, 13, 14, 25, 90, and 111.

In response to an interrogatory requiring Waymo to "identify any and all Allegedly Misappropriated Files that [it] contend[s] disclose [each] trade secret and describe how those files disclose the trade secret," Waymo did not identify any misappropriated files that disclose TS 9, 13, 25, and 111. Ex. 19 at 13-14. For TS 90, Waymo identified two documents, neither of which is part of the 14,000 downloaded files. One is WAYMO-UBER-00061869; Waymo makes no allegation this was downloaded by Levandowski at all. The other is the "█████████ █████████" (WAYMO-UBER-00003249), which Waymo alleges was downloaded in November 2015, Dkt. 25-7 at ¶ 90, and thus was not part of the December 11, 2015 downloading of 14,000 files. As to any November download: Waymo's forensics investigator testified he was not opining on, and would not testify at trail about, any downloading other than in December 2015 and January 2016. Ex. 22 at 25:7-26:10.

As for TS 14, the TS List did not reference any downloaded files. Waymo now claims TS 14 is "reflected in part within the 14,000 files…" Dkt. 1357-3 at 12 (emphasis added). But, Waymo does not identify which "part" is reflected in the files, and which is not. And Waymo's expert makes no effort to show that TS 14 is in the 14,000 files. Ex. 11 at ¶¶ 345-355. Uber's expert has analyzed the 14,000 files and found that they do not show the detailed features of alleged TS 14. Ex. 21 at ¶ 374. TS 14 is described as "█████████████████ ████████████████████████

1  ██████████████████████████████████████████████████████████████████
2  ██████████████████████████████████████████████" Dkt. 25-7 at ¶ 14.
3  While the ████████ in the downloaded files may suggest that █████████
4  ██████████████████ that would not be a trade secret, and is not what Waymo claims as
5  TS 14.  TS 14 claims the ███████████████████████████████████████████
6  ██████████████████" Dkt. 25-7 at ¶ 14.  The downloaded files disclose nothing about
7  ████████████████████████████████ Ex. 21 at ¶ 374.

**B.    The Downloaded Files Are Also Irrelevant To TS 2 And TS 7.**

The only thing claimed in TS 2 that could arguably constitute a trade secret is ████ ████.  It is publicly known that using 64 diodes is standard.  Ex. 21 at ¶¶ 66-67; Exs. 25, 26. Once a decision is made to ██████████ one obvious option is for ██████████████ ████████████████ Google's ████████████████████████████████ was known to former Google employees who came to Uber.  Ex. 18 at 226:11-21; Ex. 17 at 63:10-13.  The downloaded files are irrelevant to this.  Likewise, the downloaded files are irrelevant to the alleged misappropriation of TS 7, which is based on something Gaetan Pennecot developed at Google, and then did at Uber.  Ex. 27 at 407:5-412:17.

The issues to be tried on TS 2 and TS 7 are (a) whether the alleged trade secrets are actually trade secrets or instead are publicly known or are obvious to those skilled in this field, and (b) whether Uber is even doing what Waymo claims to be a trade secret.  The alleged downloading of files has nothing to do with either of these issues.

**III.   Conclusion**

Levandowski's alleged downloading of 14,000 files is irrelevant to the trade secret claims against Uber and should be excluded.  Any conceivable relevance such downloading may have is tangential and outweighed by the obvious and substantial prejudice of falsely suggesting to the jury that Levandowski downloaded 14,000 files to take to Uber, and that is how Uber "stole" the alleged trade secrets.  Alternatively, Uber requests a Rule 104 hearing to determine what if any evidence of alleged downloading is admissible, and/or to determine an appropriate limiting instruction under Rule 105.

Dated: September 7, 2017

MORRISON & FOERSTER LLP
BOIES SCHILLER FLEXNER LLP
SUSMAN GODFREY LLP

By: */s/ Karen L. Dunn*
     KAREN L. DUNN

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC

GOODWIN PROCTER LLP

By: */s/ Neel Chatterjee*
     NEEL CHATTERJEE

Attorneys for Defendant
OTTO TRUCKING LLC

**ATTESTATION OF E-FILED SIGNATURE**

I, Karen L. Dunn, am the ECF User whose ID and password are being used to file this Motion *in Limine*. In compliance with General Order 45, X.B., I hereby attest that Neel Chatterjee has concurred in this filing.

    */s/ Karen L. Dunn*
    Karen L. Dunn