1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Charles K. Verhoeven (Bar No. 170151)
2   charlesverhoeven@quinnemanuel.com
    David A. Perlson (Bar No. 209502)
3   davidperlson@quinnemanuel.com
    Melissa Baily (Bar No. 237649)
4   melissabaily@quinnemanuel.com
    John Neukom (Bar No. 275887)
5   johnneukom@quinnemanuel.com
    Jordan Jaffe (Bar No. 254886)
6   jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:    (415) 875-6600
8  Facsimile:    (415) 875-6700

9  Attorneys for WAYMO LLC

10                       UNITED STATES DISTRICT COURT

11                      NORTHERN DISTRICT OF CALIFORNIA

12                            SAN FRANCISCO DIVISION

13  WAYMO LLC,                                CASE NO. 3:17-cv-00939

14          Plaintiff,                        **PLAINTIFF WAYMO LLC'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE NO. 25 TO EXCLUDE REFERENCE TO THE 14,000 DOWNLOADED FILES OR, IN THE ALTERNATIVE, FOR A RULE 104 HEARING AND/OR RULE 105 INSTRUCTION**

15       vs.

16  UBER TECHNOLOGIES, INC.;
    OTTOMOTTO LLC; OTTO TRUCKING
17  LLC,

18          Defendants.                       **REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL**

19

20                                            Date:        September 27, 2017
                                              Time:        8:00 a.m.
21                                            Ctrm:        8, 19th Floor
                                              Judge:       Honorable William H. Alsup
22                                            Trial Date:  October 10, 2017

Defendants seek to exclude from the jury admittedly "powerful" evidence concerning Anthony Levandowski's download of 14,000 files while Levandowski was employed at Waymo and shortly before Uber entered a term sheet to purchase his new company Ottomotto for hundreds of millions of dollars and place him in charge of Uber's self-driving development efforts. Defendants concede that that "there is, of course, evidence that Levandowski appears to have downloaded" these files. (Br., 2.) And Uber previously told the Court, in response to the Court's request to lay out its "affirmative evidentiary case," that Uber planned to enter evidence that Levandowski downloaded the 14,000 files to ensure his expected bonus payout. (Dkt. 755, 13.) Now that the Court has precluded Uber from framing the evidence the way that it wanted to (Dkts. 1267, 1311), Defendants argue that this download should not be admissible at all because, according to them, the download of 14,000 files is somehow "irrelevant." Defendants contend that the 14,000 files do not disclose six of the nine trade secrets at issue and that although the files do disclose others, Uber developed them without using the 14,000 files. Waymo will present evidence how several of the asserted trade secrets, at least Trade Secrets 2, 7, 14, and 96, are found in files among the 14,000 downloaded files. (Dkt. 1357, Offer of Proof at 5, 7, 12, 25.) Waymo will also show that Levandowski's download goes to his intent and motive, and that both Levandowski and Uber recognized the value of the contents within these stolen documents. These are the factual issues for the jury to resolve. While this evidence may be harmful to Defendants, that is no basis to exclude it.

## ARGUMENT

### I. LEVANDOWSKI'S DOWNLOAD OF 14,000 WAYMO FILES IS RELEVANT TO SEVERAL ISSUES IN THIS CASE.

Discovery has revealed that contemporaneously with his (essentially admitted) download of the 14,000 files in December 2015, Levandowski and others were taking clandestine meetings with Uber concerning a deal engineered to boost Uber's flailing self-driving efforts. Discovery has further shown that after resigning from Waymo, Levandowski met with and provided constant guidance to Uber's executives and engineers concerning Uber's development of self-driving technology. (*See generally* Offer of Proof.) Throughout these meetings, Levandowski had

unfettered access to his own personal laptop and other media storage devices, which Uber made no attempt to scan for Waymo's confidential information. Indeed, the vendor hired by Uber in the litigation to search for evidence of the 14,000 files admits that it "couldn't search" Levandowski's personal laptop. (Ex. 01, Faulkner Dep. at 11:10-12:6.) The ongoing availability of the 14,000 files during Levandowski's extensive guidance at Uber is a key fact in this case, and the download itself is an indispensable antecedent to that fact. Even Defendants concede that Levandowski's download "may provide grounds to infer that Levandowski may have engaged in some kind of misguided wrongdoing." (Br. 2.)

Evidence of the download is relevant not just to show explicit source material for the trade secrets embodied by the files and copied by Uber, but as part of the complete set of facts that the jury needs to hear to determine whether Uber paid Levandowski hundreds of millions of dollars as part of a quid pro quo for Waymo's talent and technology. Evidence is relevant if it tends to make a fact of consequence more or less probable, Fed. R. Evid. 401, and a reasonable juror might well find that the fact that Levandowski downloaded Waymo's entire SVN repository and plugged in a memory card long enough to transfer the files before erasing the computer used for the download, particularly coupled with evidence that Levandowski was meeting with Uber the same day of the download, makes it more probable that Levandowski used the 14,000 files as well as other misappropriated material to guide Uber's development. Indeed the Court has previously stated: "You take 14,000 files, you wipe the computer clean, and then you leave the company. Doesn't that sound suspicious to you?" (Dkt. 160, 4/5 Tr. at 13:12-14.)

Nevertheless, Defendants argue that "whatever Levandowski may have done (or thought he was doing)" that "Uber never acquired the downloaded files." (*Id.*) Initially, as the Court has already observed, Otto Trucking is "soaked with" Levandowski's actions; "All guilty knowledge attributable to Levandowski is attributable to Otto Trucking." (Dkt. 775, 6/29 Tr. at 65:18-21.) Otto Trucking does not contest Levandowski's ownership interest. Moreover, Uber acquired Levandowski's company, defendant Ottomotto. So Uber is "soaked" with Levandowski's actions too through its acquisition through improper means. *See* 28 U.S.C. §§ 1836, 1839; Cal. Civ. Code § 3426 et seq.

1    Defendants point to an email from engineer Sasha Zbrozek, written without knowledge of
2 the investigation into Levandowski, that refers to the 14,000 files as "low-value." (Br. 1-2.) But
3 the value is contested, including by Mr. Zbrozek himself, who clarified the comment as meaning
4 only that the SVN server holds data of lesser value than personal user data and core Google source
5 code. (Ex. 02, Zbrozek Dep. at 208:18-209:11.) Defendants claim that in the same email, Mr.
6 Zbrozek states that bulk SVN downloads "wouldn't be out of normal operation." (Br. 2;
7 Goodman Dec. Ex. 3 at -886.) In fact that passage refers to a different repository; as to the SVN
8 the email said a bulk download by Levandowski "clearly wasn't part of his routine." (Goodman
9 Dec. Ex. 3 at -886.) Defendants also revive old allegations of delay to suggest that Waymo did
10 not value the stolen files, but the Court ruled long ago that "Waymo reasonably refrained from
11 bringing suit until it discovered evidence indicating use, and that nothing about this course of
12 action suggests a lack of urgency belying likelihood of irreparable harm." (Dkt. 433, 20.)

**II.  DEFENDANTS FAIL TO SHOW ANY BASIS TO EXCLUDE EVIDENCE OF THE DOWNLOAD OF THE 14,000 FILES BASED ON THEIR SUPPOSED IRRELEVANCE TO THE ASSERTED TRADE SECRETS.**

15    Initially, Defendants do not dispute that Trade Secret 14 (███████████████
16 ███) was present-in-part in the 14,000 files Levandowski downloaded. This alone shows their
17 relevance. Nor do Defendants dispute that Trade Secret 96 is manifested in the 14,000 files other
18 than to state that that Trade Secret is subject to a motion for summary judgment.

19    Defendants also do not dispute Trade Secrets 2 and 7 are disclosed among the 14,000 files
20 Levandowski downloaded. Further, Defendants admit that Uber uses Trade Secret 7 and do not
21 claim independent development. (Dkt. 503, 5/3 p.m. Tr. at 29:9-20). And besides elusive
22 testimony from obviously-coached deponents (Ex. 03, Treichler Dep. at 154:11-24), Defendants
23 provide no legitimate denial of their use of Trade Secret 2. Still, Defendants argue that the
24 downloaded files are "irrelevant" to these trade secrets because Uber supposedly developed these
25 trade secrets without reference to the 14,000 files. (Br. 4.) Defendants may of course argue at
26 trial that Uber developed LiDAR embodying Trade Secret 2 and 7 without wrongdoing, including
27 without reference to the 14,000 files. Waymo will present its evidence otherwise. (Offer of Proof
28 at 4-8.) But just because Defendants claim they did not commit wrongdoing provides no basis to

take this factual question away from the jury.  The jury should hear evidence (if any) of Uber's development and weigh that evidence against the facts of Levandowski's download of files containing those very design concepts, coupled with evidence of his early meetings with Uber, sale of Otto, ongoing involvement in Uber's LiDAR development, and more.

Moreover, evidence of the 14,000 file download is relevant to Waymo's allegations concerning trade secrets (9, 13, 25, 90, 111) not specifically embodied by the 14,000 files. Defendants' discussion of these trade secrets (Br. 3-4) makes no argument for exclusion of the 14,000 files other than to state that the 14,000 files do not contain these trade secrets.  Defendants thus implicitly urge that in a trade secret case, evidence is admissible only if the evidence expressly discloses not just some, but *all* of the trade secrets at issue.  Such a ruling would be extraordinary, and improper, and Defendants do not expressly state it much less make any attempt to defend it.  Evidence that Uber permitted Levandowski to use the 14,000 files to drive development of some accused Uber technology bears on whether Uber permitted Levandowski to use other improper means to develop other accused Uber technology.

### III. DEFENDANTS PROVIDE NO BASIS FOR A RULE 104 HEARING OR RULE 105 INSTRUCTION.

A Rule 104 hearing to determine admissibility of evidence is appropriate when admissibility turns upon "the existence of [a] condition" upon which a rule of evidence depends. Fed. R. Evid. 104, Committee Note (1974).   Defendants have identified no such condition nor do they explain any basis for a Rule 105 instruction.  Instead, Defendants just assert in their Conclusion, with no support, that a Rule 104 hearing is appropriate to determine the admissibility of the download of the 14,000 files or a Rule 105 instruction.

### IV. DEFENDANTS PROVIDE NO BASIS FOR EXCLUDING EVIDENCE OF THE LEVANDOWSKI'S DOWNLOAD UNDER RULE 403.

While Defendants refer to Rule 403 and the supposedly "prejudicial" nature of evidence of Levandowski's download of 14,000 files, the fact that the evidence is harmful to Defendants, which is all Defendants say, is no basis to exclude it.

### CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion in Limine No. 25.

DATED: September 13, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Charles K. Verhoeven
　　Charles K. Verhoeven
　　Attorneys for WAYMO LLC