MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Tel:     415.268.7000 / Fax:   415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P. M. HUME
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C.  20005
Tel:     202.237.2727 / Fax:   202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel.:     212.336.8330 / Fax.:   212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and OTTOMOTTO LLC

NEEL CHATTERJEE (SBN 173985)
nchatterjee@goodwinlaw.com
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, California 94025
Tel.:     650.752.3100 / Fax.:   650.853.1038

Attorneys for Defendant OTTO TRUCKING LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, | Case No. 3:17-cv-00939-WHA |
| Plaintiff, | **DEFENDANTS' MOTION *IN LIMINE* NO. 25 TO EXCLUDE REFERENCE TO THE 14,000 DOWNLOADED FILES OR, IN THE ALTERNATIVE, FOR A RULE 104 HEARING AND/OR RULE 105 INSTRUCTION** |
| v. | |
| UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
| Defendants. | Judge:   The Honorable William Alsup |
| | Trial Date: October 10, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1    Defendants move to exclude evidence of the alleged downloading of 14,000 files by Mr.

2    Levandowski under Rules 402 and 403 or, alternatively, for a Rule 104 hearing to determine the

3    admissibility of such evidence and/or whether a Rule 105 limiting instruction is required.

4    **I.       Introduction**

5         The centerpiece of Waymo's case is that on December 11, 2015, Levandowski

6    downloaded 14,000 files from the SVN server.  Waymo says these files are highly confidential

7    trade secrets that Levandowski took to Uber, and that Uber then used.  This has been a powerful

8    story for Waymo to tell, and it wants to tell that story to the jury.  But the evidence now shows it

9    is a highly prejudicial and misleading tale that is irrelevant to issues the jury will decide.

10        Contrary to Waymo's assertions since this case began, the downloaded files are

11   demonstrably not the source of any trade secret allegedly misappropriated.  Of the nine alleged

12   trade secrets that will be the subject of this trial, six do not exist in the 14,000 downloaded files;

13   of the remaining three, one (TS 96) is so vague that it is the subject of a motion to strike and a

14   motion for summary judgment, and the remaining two (TS 2 and TS 7) are classic examples of

15   alleged trade secrets that were "in the heads" of the former Waymo employees who came to Uber,

16   and for which downloaded files are completely irrelevant.  TS 7 claims a trade secret over ▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the engineer who developed that at

18   Google was Gaetan Pennecot, who then also developed the ▮▮▮▮▮ at Uber.  The downloading

19   of files has nothing to do with what Mr. Pennecot did, and is irrelevant to whether or not the ▮▮

20   ▮▮▮▮▮▮▮ constitutes trade secret misappropriation.  The files are also irrelevant to TS 2.  It

21   claims the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is a trade secret.  It is publicly known that 64 diodes

22   is common; and the former Google engineers who came to Uber knew ▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮.  No one would need "downloaded files" for that information.  Thus, the files are

24   irrelevant to whether Uber's ▮▮▮▮▮▮ somehow constitutes trade secret misappropriation.

25        Moreover, documents produced on the last day of discovery show the 14,000 downloaded

26   files are not the exceptionally valuable trade secrets Waymo has represented to the Court, and

27   also show that the "downloading" of the entire SVN server occurs automatically when the server

28   is accessed.  The Google employee who was initially asked to look into the alleged downloading,

1

1    Sasha Zbrozek, reported to his colleagues that the files on the SVN server were "considered low-

2    value enough that we had even considered hosting it off of Google infrastructure."  Goodman

3    Decl., Ex. 3 at -00086886.  He also explained that the SVN server "syncs files locally for work,

4    so even if someone sync'd the entire folder that wouldn't be out of normal operation."  *Id.* at -

5    00086890.  In deposition, he explained that when SVN login instructions were followed, "the

6    present representation of the file system is downloaded in its entirety."  Ex. 20 at 197:4-7.  Mr.

7    Zbrozek told his colleagues that Levandowski's alleged downloading "Doesn't ring the alarm

8    bells for me."  Ex. 3 at -00086886.

9         There is, of course, evidence that Levandowski appears to have downloaded files from the

10   SVN server, and Levandowski has taken the 5th.  But while that may provide grounds to infer

11   that Levandowski may have engaged in some kind of misguided wrongdoing, Levandowski is not

12   a party.  And whatever Levandowski may have done (or thought he was doing), the evidence

13   shows not only that Uber never acquired the downloaded files, but also that the downloaded files

14   are irrelevant to the trade secrets Waymo claims Uber misappropriated.

15   **II.     Argument**

16        In seeking a preliminary injunction, Waymo filed an exhibit listing 121 claimed Trade

17   Secrets.  Dkt. 25-7 ("TS List").  That was to comply with § 2019.210 of the California Code,

18   which required Waymo to identify each allegedly misappropriated trade secret "with reasonable

19   particularity."  Waymo filed that exhibit on March 10, 2017—approximately five months after it

20   supposedly "discovered" the downloading of the 14,000 files from the SVN server that it

21   presented as the centerpiece of its case.  It was obviously in Waymo's interest to connect each

22   alleged trade secret to specific "downloaded files" wherever possible.  And it did so—but only for

23   15 of them—the ones that vaguely claimed that certain "design schematics" constituted trade

24   secrets.  Dkt. 25-7 at TS 94-108.  For the rest, Waymo was unable to cross reference any specific

25   file.  *Cf. id.* at TS 1-8, 20, 109 (generically referencing the SVN server but not specific files).

26        Since filing its TS List, Waymo has conducted 12 detailed inspections of Uber's facilities,

27   LiDAR designs, source code, LiDAR sensors, hundreds of thousands of documents and emails,

28   and engineers' computers, spanning over 60 hours; reviewed tens of thousands of Uber

1    documents; and taken more than 45 depositions of Uber's engineers and executives.  After all

2    that, Waymo has identified nine alleged trade secrets it claims Uber misappropriated.  Of these,

3    only one (TS 96) had a cross reference in the TS List to any downloaded files.  Uber has moved

4    to strike TS 96 as too vague to be a trade secret, and the Court has also permitted a motion for

5    summary judgment on any narrowed version of TS 96.  Dkt. 1107-04.

6        Waymo cannot show that the downloaded files are relevant to the eight remaining trade

7    secrets it claims were misappropriated.  Six are demonstrably not in the files; the other two are

8    based on information that was in the heads of the former Waymo employees who came to Uber,

9    making the files irrelevant.

10       **A.    The Downloaded Files Do Not Contain TS 9, 13, 14, 25, 90, and 111.**

11       In response to an interrogatory requiring Waymo to "identify any and all Allegedly

12   Misappropriated Files that [it] contend[s] disclose [each] trade secret and describe how those files

13   disclose the trade secret," Waymo did not identify any misappropriated files that disclose TS 9,

14   13, 25, and 111.  Ex. 19 at 13-14.  For TS 90, Waymo identified two documents, neither of which

15   is part of the 14,000 downloaded files.  One is WAYMO-UBER-00061869; Waymo makes no

16   allegation this was downloaded by Levandowski at all.  The other is the "▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮" (WAYMO-UBER-00003249), which Waymo alleges was downloaded in

18   November 2015, Dkt. 25-7 at ¶ 90, and thus was not part of the December 11, 2015 downloading

19   of 14,000 files.  As to any November download:  Waymo's forensics investigator testified he was

20   not opining on, and would not testify at trail about, any downloading other than in December

21   2015 and January 2016.  Ex. 22 at 25:7-26:10.

22       As for TS 14, the TS List did not reference any downloaded files.  Waymo now claims TS

23   14 is "reflected in part within the 14,000 files…"  Dkt. 1357-3 at 12 (emphasis added).  But,

24   Waymo does not identify which "part" is reflected in the files, and which is not.  And Waymo's

25   expert makes no effort to show that TS 14 is in the 14,000 files.  Ex. 11 at ¶¶ 345-355.  Uber's

26   expert has analyzed the 14,000 files and found that they do not show the detailed features of

27   alleged TS 14.  Ex. 21 at ¶ 374.  TS 14 is described as "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1   [REDACTED]

2   [REDACTED] " Dkt. 25-7 at ¶ 14.

3   While the [REDACTED] in the downloaded files may suggest that [REDACTED]

4   [REDACTED] that would not be a trade secret, and is not what Waymo claims as

5   TS 14.  TS 14 claims the [REDACTED]

6   [REDACTED] "  Dkt. 25-7 at ¶ 14.  The downloaded files disclose nothing about

7   [REDACTED] Ex. 21 at ¶ 374.

8   **B.**   **The Downloaded Files Are Also Irrelevant To TS 2 And TS 7.**

9   The only thing claimed in TS 2 that could arguably constitute a trade secret is [REDACTED]

10   [REDACTED].  It is publicly known that using 64 diodes is standard.  Ex. 21 at ¶¶ 66-67; Exs. 25, 26.

11   Once a decision is made to [REDACTED] one obvious option is for [REDACTED]

12   [REDACTED] Google's [REDACTED] was known to

13   former Google employees who came to Uber.  Ex. 18 at 226:11-21; Ex. 17 at 63:10-13.  The

14   downloaded files are irrelevant to this.  Likewise, the downloaded files are irrelevant to the

15   alleged misappropriation of TS 7, which is based on something Gaetan Pennecot developed at

16   Google, and then did at Uber.  Ex. 27 at 407:5-412:17.

17   The issues to be tried on TS 2 and TS 7 are (a) whether the alleged trade secrets are

18   actually trade secrets or instead are publicly known or are obvious to those skilled in this field,

19   and (b) whether Uber is even doing what Waymo claims to be a trade secret.  The alleged

20   downloading of files has nothing to do with either of these issues.

21   **III.**   **Conclusion**

22   Levandowski's alleged downloading of 14,000 files is irrelevant to the trade secret claims

23   against Uber and should be excluded.  Any conceivable relevance such downloading may have is

24   tangential and outweighed by the obvious and substantial prejudice of falsely suggesting to the

25   jury that Levandowski downloaded 14,000 files to take to Uber, and that is how Uber "stole" the

26   alleged trade secrets.  Alternatively, Uber requests a Rule 104 hearing to determine what if any

27   evidence of alleged downloading is admissible, and/or to determine an appropriate limiting

28   instruction under Rule 105.

4

1    Dated:  September 7, 2017              MORRISON & FOERSTER LLP
                                           BOIES SCHILLER FLEXNER LLP
2                                          SUSMAN GODFREY LLP

3

4                                          By: */s/ Karen L. Dunn*
                                               KAREN L. DUNN
5
                                           Attorneys for Defendants
6                                          UBER TECHNOLOGIES, INC. and
                                           OTTOMOTTO LLC
7

8                                          GOODWIN PROCTER LLP

9                                          By: */s/ Neel Chatterjee*
                                               NEEL CHATTERJEE
10
                                           Attorneys for Defendant
11                                         OTTO TRUCKING LLC

12

13

14

15

16                      **ATTESTATION OF E-FILED SIGNATURE**

17          I, Karen L. Dunn, am the ECF User whose ID and password are being used to file this

18   Motion *in Limine*.  In compliance with General Order 45, X.B., I hereby attest that Neel

19   Chatterjee has concurred in this filing.

20

21                                             */s/ Karen L. Dunn*
                                                  Karen L. Dunn
22

23

24

25

26

27

28

                                          5