# EXHIBIT 55

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3                   SAN FRANCISCO DIVISION

 4

 5   WAYMO LLC,

 6        Plaintiff,

 7   vs.                             Case No.

 8   UBER TECHNOLOGIES, INC.;        3:17-cv-00939-WHA

 9   OTTOMOTTO LLC; OTTO TRUCKING,

10   INC.,

11        Defendants.

12   _____/

13

14       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

15

16        VIDEOTAPED DEPOSITION OF JOLIE SORGE

17                SAN FRANCISCO, CALIFORNIA

18                 MONDAY, AUGUST 21, 2017

19

20

21   BY:  ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~

22   CSR LICENSE NO. 9830

23   JOB NO. 2681037

24

25   PAGES 1 - 286
```

Page 1

```
 1    that we're doing this in (███████████████), that      13:13
 2    sounds reasonable.                                    13:13
 3            MS. DEARBORN:  Okay.                          13:13
 7            MS. ROBERTS:  Objection; form.                13:13
 8            THE WITNESS:  I haven't read the entire       13:13
 9    contract, but that's what that implies.               13:13
10            MS. DEARBORN:  Okay.                          13:13
11       Q    And then, in the next paragraph that says --  13:13
12    there's a paragraph -- sorry.                         13:13
13            Looking back at the page that ends -- where   13:13
14    the Bates number ends '14054.                         13:13
15       A    (Witness complies.)                           13:13
16       Q    There's a paragraph that says:                13:13
20            Do you see that paragraph?                    13:14
21       A    I do.                                         13:14
22       Q    And it states that:                           13:14
```

Page 123

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
11          Do you see that?                              13:14
12     A    Uh-huh, yes.                                  13:14
```

```
18          MS. ROBERTS:  Objection; form.                13:15
19          THE WITNESS:  If we're sort of asking my      13:15
20   interpretation of this document, I mean, it can be   13:15
21   perceived that way, yes.                             13:15
22          MS. DEARBORN:  Okay.                          13:15
```

| | | |
|---|---|---|
| 1 | MS. ROBERTS:  Objection; form. | 13:15 |
| 2 | THE WITNESS:  As you alluded to earlier, | 13:15 |
| 3 | legal documents are not always the easiest to | 13:15 |
| 4 | interpret.  I guess that's one way of -- of | 13:15 |
| 5 | understanding the way this is written. | 13:15 |
| 6 | MS. DEARBORN:  Q.  Are you aware of another | 13:15 |
| 7 | way of understanding the way this is written? | 13:15 |
| 8 | A    No. | 13:15 |
| 9 | Q    Okay.  Now, would you agree that this plan is | 13:15 |
| 10 | poorly constructed? | 13:16 |
| 11 | MS. ROBERTS:  Objection; form. | 13:16 |
| 12 | THE WITNESS:  I -- this is a lengthy | 13:16 |
| 13 | document.  I understand it's a quite complex plan.  My | 13:16 |
| 14 | opinion is that it may not have been the best plan | 13:16 |
| 15 | that we've put in place. | 13:16 |
| 16 | MS. DEARBORN:  Okay. | 13:16 |
| 17 | Q    And why not? | 13:16 |
| 18 | A    Well, for one, it's quite lucrative, which is | 13:16 |
| 19 | great for the employee.  I don't know.  I can't -- I | 13:16 |
| 20 | can't comment in great detail.  This is -- looks like | 13:16 |
| 21 | a 40- or 50-page document, so I'd have to read it | 13:16 |
| 22 | to -- to give you a real informed opinion. | 13:16 |
| 23 | Q    Understand. | 13:17 |
| 24 | You -- you testified that your opinion is | 13:17 |
| 25 | that it may not have been the best plan that we've put | 13:17 |

```
1    in place?                                              13:17
2         A    Yes.                                         13:17
3         Q    So I'm trying to understand why you say that. 13:17
4         A    Yeah.  Well, I -- for one, I -- when I was   13:17
5    perusing it, I saw that there was only a certain       13:17
6    number of employees on this plan.  That's not to say   13:17
7    that there are more -- there weren't more employees    13:17
8    working at Chauffeur at the time.                      13:17
```
[lines 9–12 redacted]
```
13        Q    Why would that be a problem if ▉▉▉▉▉
```
[line 14 redacted]
```
15             MS. ROBERTS:  Objection; form.               13:17
```
[lines 16–18 redacted]
```
19             MS. DEARBORN:  Q.  So why -- why would it not 13:17
20   be appropriate if there are ▉▉▉▉▉
```
[lines 21–22 redacted]                                      13:18
```
23        A    I think you should all be working towards the 13:18
24   same objective and be compensated --                   13:18
25        Q    Okay.                                        13:18
```

Page 126

| | | | |
|---|---|---|---|
| 1 | A | -- fairly. | 13:18 |
| 2 | Q | So -- | 13:18 |
| 3 | A | Equitably, rather. | 13:18 |
| 4 | Q | So, is the implication that ▬▬▬▬) ▬▬) | 13:18 |

▬) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬) ▬▬)
▬) ▬▬▬▬▬▬▬) ▬▬)
▬) ▬) ▬▬▬▬▬▬▬▬▬▬▬▬) ▬▬)
▬) ▬▬▬▬▬▬▬▬▬▬▬) ▬) ▬▬)
▬) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬) ▬▬)
▬) ▬▬▬▬▬▬▬▬▬▬▬) ▬▬)
▬) ▬▬▬▬▬) ▬▬)

| 12 | Q | Okay. Yep. | 13:18 |
| 13 | | MS. DEARBORN: So the court reporter -- I'm | 13:18 |
| 14 | | sorry -- the videographer has marked as Exhibit -- | 13:18 |
| 15 | | THE VIDEOGRAPHER: 1737. | 13:18 |
| 16 | | MS. DEARBORN: -- 1737, a document bearing | 13:18 |
| 17 | | Bates -- beginning Bates No. WAYMO-UBER-00047062. | 13:18 |
| 18 | | (Document marked Exhibit 1737 | 13:18 |
| 19 | | for identification.) | 13:19 |
| 20 | | MS. DEARBORN: Q. Ms. Sorge, do you | 13:19 |
| 21 | | recognize this document? | 13:19 |
| 22 | A | Not immediately. | 13:19 |
| 23 | Q | Do you need a minute to read it? | 13:19 |
| 24 | A | Yes, please. | 13:19 |
| 25 | Q | No problem. | 13:19 |

Page 127

| | | |
|---|---|---|
| 1 | A   (Witness reading document.) | 13:19 |
| 2 | Okay. | 13:22 |
| 3 | Q   So Ms. Sorge, do you recognize this document? | 13:22 |
| 4 | A   It has refreshed my memory, yes. | 13:22 |
| 5 | Q   What is it? | 13:22 |
| 6 | A   It's an exchange between myself, Chelsea, and | 13:22 |
| 7 | Stacy, who are all in HR. | 13:22 |
| 8 | Q   Okay.  And did all three of you at this time | 13:22 |
| 9 | have some responsibility for the Chauffeur team? | 13:22 |
| 10 | MS. ROBERTS:  Objection; form. | 13:22 |
| 11 | THE WITNESS:  My -- I was likely covering for | 13:22 |
| 12 | Chelsea while she was out, because she was the core | 13:22 |
| 13 | HRBP at this time for Chauffeur. | 13:22 |
| 14 | MS. DEARBORN:  Q.  So, in the e-mail that's | 13:22 |
| 15 | dated January 4th, 2016, at 5:25 p.m., that is -- | 13:22 |
| 16 | appears on the page where the Bates number ends | 13:23 |
| 17 | '47062. | 13:23 |
| 18 | A   (Witness complies.) | 13:23 |
| 19 | Yes. | 13:23 |
| 20 | Q   Do you see that? | 13:23 |
| 21 | A   Yes. | 13:23 |
| 22 | Q   You -- you write: | 13:23 |
| 23 | "Hey, Chelsea, below are some notes from my | 13:23 |
| 24 | meetings with ▓▓▓ and ▓▓▓▓▓▓ | 13:23 |
| 25 | Do you see that? | 13:23 |

Page 128

| | | |
|---|---|---|
| 1 | A    I do. | 13:23 |
| 2 | Q    So you met with █████████ prior to him -- | 13:23 |
| 3 | or ████████ on or about January 4th, 2016? | 13:23 |
| 4 | A    Yes, that looks to be true. | 13:23 |
| 5 | Q    And your meeting related to ████████ | 13:23 |
| 6 | decision to leave the project -- or leave Project | 13:23 |
| 7 | Chauffeur? | 13:23 |
| 8 | A    That -- that looks to be true.  I don't | 13:23 |
| 9 | recall the specific meeting with ████ but it looks | 13:23 |
| 10 | like I met him. | 13:23 |
| 11 | Q    And under -- well, first of all, who is ████ | 13:23 |
| 12 | ██████ ) | 13:23 |
| 13 | A    ████ was -- he was in operations for | 13:23 |
| 14 | Chauffeur. | 13:23 |
| 15 | Q    And under -- there's -- there's two headers | 13:23 |
| 16 | that come next.  The first is: | 13:24 |
| 17 | ████████████ | 13:24 |
| 18 | Do you see that? | 13:24 |
| 19 | A    Yes. | 13:24 |
| 20 | Q    And then it says: | 13:24 |
| 21 | "Reason for leaving." | 13:24 |
| 22 | Do you see that? | 13:24 |
| 23 | A    Yes. | 13:24 |
| 24 | Q    And the first bullet point is: | 13:24 |
| 25 | ████████████████ ████████████████ | 13:24 |

Page 129

| | | | |
|---|---|---|---|
| 1 | ████████████████████████████████ | ██ | |
| 2 | ████████████████████████████████ | ██ | |
| 3 | Do you see that? | 13:24 | |
| 4 | A   I do see that. | 13:24 | |
| 5 | Q   Do you recall a conversation with | 13:24 | |
| 6 | ████████) about this topic? | 13:24 | |
| 7 | A   I don't recall -- I don't recall our specific | 13:24 | |
| 8 | conversation. But I do have some recollection of this | 13:24 | |
| 9 | now, ████████████████████████████) ██ | 13:24 | |
| 10 | ████████████████████████████ | | |
| 11 | ████████████████████████████ | | |
| 12 | But I don't remember anything beyond that. | 13:24 | |
| 13 | Q   You don't recall what ████████) told you | 13:24 | |
| 14 | about this? | 13:24 | |
| 15 | A   I only recall what is written here, which was | 13:24 | |
| 16 | he felt like he would benefit from actually resigning. | 13:24 | |
| 17 | Q   And you see the third bullet point says he | 13:25 | |
| 18 | would -- it says: | 13:25 | |
| 19 | ████████████████████████) ██ | | |
| 20 | ████████████████████████) | 13:25 | |
| 21 | Do you see that? | 13:25 | |
| 22 | A   Yes. | 13:25 | |
| 23 | Q   Do you recall ████████) saying this to | 13:25 | |
| 24 | you? | 13:25 | |
| 25 | A   I don't recall that part specifically. | 13:25 | |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | Q   Do you have any doubt that he did say this, | 13:25 |
| 2 | based -- based on this document? | 13:25 |
| 3 | A   Yeah, I have no doubt that he said that. | 13:25 |
| 4 | Q   Okay.  And you said you recall thinking that | 13:25 |
| 5 | ███████████████████████████████████████ | 13:25 |
| 6 | ███████████████████████████████████ | 13:25 |
| 7 | █████) | 13:25 |
| 8 | A   (Witness nods head.) | 13:25 |
| 9 | Q   Yeah. | 13:25 |
| 10 | ████████████████████████████████ | 13:25 |
| 11 | ████████████████) | 13:25 |
| 12 | MS. ROBERTS:  Objection; form. | 13:25 |
| 13 | ████████████  ███████████████ | 13:25 |
| 14 | ██████████████████████ | 13:25 |
| 15 | MS. DEARBORN:  Q.  Why not? | 13:25 |
| 16 | █) ████████████████████████████ | 13:25 |
| 17 | ██████████████████████████ | 13:25 |
| 18 | ██████████████████████████ | 13:25 |
| 19 | █████████████████████████ | 13:25 |
| 20 | Q   Because Google has an interest in encouraging | 13:26 |
| 21 | people to stay with Google; right? | 13:26 |
| 22 | A   That's right. | 13:26 |
| 23 | Q   And if you look above that e-mail, there's | 13:26 |
| 24 | another e-mail that you wrote on Monday, January 14th, | 13:26 |
| 25 | 2016, at 5:38 p.m. | 13:26 |

| | | |
|---|---|---|
| 1 | Do you see that? | 13:26 |
| 2 | MS. ROBERTS:  January 4th? | 13:26 |
| 3 | MS. DEARBORN:  Thank you.  I'm sorry.  I | 13:26 |
| 4 | misspoke. | 13:26 |
| 5 | Q   January 4th, 2016, at 5:38 p.m. | 13:26 |
| 6 | A   Yes. | 13:26 |
| 7 | Q   Do you see that? | 13:26 |
| 8 | A   I do. | 13:26 |
| 9 | Q   And the second paragraph in that e-mail | 13:26 |
| 10 | reads: | 13:26 |
| 14 | Do you see that? | 13:26 |
| 15 | A   Yes. | 13:26 |
| 16 | Q   And this is the -- the Chauffeur plan that | 13:26 |
| 17 | we've been discussing that was ▓▓▓▓ | 13:26 |
| 18 | A   Yes.  Those allegedly were his words in this | 13:26 |
| 19 | e-mail, but yes. | 13:26 |
| 20 | Q   Okay.  His words were that the plan was | 13:26 |
| 21 | ▓▓▓▓ | 13:26 |
| 22 | A   Well, the way this reads is that his reason | 13:26 |
| 23 | for leaving is implying that ▓▓▓▓ | 13:26 |
| | ▓▓▓▓ | 13:26 |
| 25 | Q   Did you agree that the plan was ▓▓▓▓ | 13:27 |

Page 132

```
 1      ████████████
 2         █  ████████████████████████████████
 3      ████████████████████████████████████████
 4      ██████████████████████
 5      Q    Okay.  You see the next sentence says:                 13:27
 6         ██████████████████████████████████████
 7         ████████████████████████████
 8           █  ██████████
 9           █  ████████  █████████████
10      A    That's what I believe I meant by that, yes.            13:27
11         █  █████████████████████████████████████
12      ██████████████████████████████████████
13      █████████████████████████
14           MS. ROBERTS:  Objection; form.                         13:27
15           THE WITNESS:  Based on the e-mail pre- --              13:27
16      preceding or -- I can't tell, actually -- yes, that         13:27
17      was the implication.                                        13:27
18           MS. DEARBORN:  Okay.                                   13:27
19      Q    So, returning to the e-mail that you wrote             13:27
20      dated January 4th, 2016, at 5:25 p.m., there's -- the      13:27
21      second bullet point under ████████████ reason for           13:27
22      leaving is:                                                 13:27
23         ██████████████████████████████████████
24         ███████████████
25      A    Yes.                                                   13:28
```

Veritext Legal Solutions
866 299-5127

| | | | |
|---|---|---|---|
| 1 | Q | Are "L and S" Larry and Sergey? | 13:28 |
| 2 | A | Yes. | 13:28 |
| 3 | Q | And that would be Larry Page and Sergey Brin? | 13:28 |
| 4 | A | Yes. | 13:28 |
| 5 | Q | And John, is that John Krafcik? | 13:28 |
| 6 | A | Yes. | 13:28 |
| 7 | Q | And Chris, is that Chris Urmson? | 13:28 |
| 8 | A | Yes. | 13:28 |
| | | ■■■■■■■■■■■ | |
| | | ■■■■■■■■■■■■■■■ | |
| | | ■■■■■■■■■■■■■■■ | 13:28 |
| | | ■■■■■■■■■■■■■■■ | |
| | | ■■■■■■■■■■■■■■■ | |
| | | ■■■■■■■■■■■■■■■ | |
| | | ■■■■■■■■■■■■■■■ | |
| 16 | A | I don't. | 13:28 |
| | | ■■■■■■■■■■■■■■■ | |
| | | ■■■■■■■■■■■■■■■ | |
| | | ■■■■■■■■■■■■■■■ | |
| 20 | | Do you see that? | 13:28 |
| 21 | A | Yes. | 13:28 |
| | | ■■■■■■■■■■■■■■■ | |
| | | ■■■■■■■■■■■■■■■ | |
| 24 | A | I don't. | 13:29 |
| 25 | Q | What was the product of Project Chauffeur at | 13:29 |

Page 134

1                CERTIFICATE OF REPORTER

2

3           I, ANDREA M. IGNACIO, hereby certify that the

4   witness in the foregoing deposition was by me duly

5   sworn to tell the truth, the whole truth, and nothing

6   but the truth in the within-entitled cause;

7           That said deposition was taken in shorthand

8   by me, a disinterested person, at the time and place

9   therein stated, and that the testimony of the said

10  witness was thereafter reduced to typewriting, by

11  computer, under my direction and supervision;

12          That before completion of the deposition,

13  review of the transcript [x] was [ ] was not

14  requested.  If requested, any changes made by the

15  deponent (and provided to the reporter) during the

16  period allowed are appended hereto.

17          I further certify that I am not of counsel or

18  attorney for either or any of the parties to the said

19  deposition, nor in any way interested in the event of

20  this cause, and that I am not related to any of the

21  parties thereto.

22          Dated: 8/22/2017

23          _____

24          ANDREA M. IGNACIO,

25          RPR, CRR, CCRR, CLR, CSR No. 9830

Page 286