QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　　Plaintiff,<br><br>　　　vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　　Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S RENEWED MOTION IN LIMINE 1**<br><br>Date:　　　　September 27, 2017<br>Time:　　　　8:00 a.m.<br>Ctrm:　　　　8, 19th Floor<br>Judge:　　　Honorable William H. Alsup<br>Trial Date:　October 10, 2017 |

Waymo hereby renews its motion *in limine* to preclude Defendants from presenting any evidence or argument that Anthony Levandowski downloaded Waymo trade secrets to ensure he would receive his bonus (the "bonus theory") ("MIL 1"). The Court previously tentatively denied Waymo's MIL 1 without prejudice (Dkt. 874), contemplating renewal at trial. However, as detailed below, discovery and Orders precluding evidence relating to this theory make this MIL ripe now.

**I.    WAYMO HAS BEEN DENIED DISCOVERY INTO THE BONUS THEORY.**

Uber intends to contend that Levandowski downloaded the misappropriated materials to ensure that Google would pay his full bonus. (Ex. A.) Uber based this theory on Levandowski's alleged explanation to former Uber CEO Travis Kalanick and Uber attorney Angela Padilla during a March 29 meeting. (*Id.*) The Court, however, held this conversation was privileged and the June 1 deadline to waive privilege passed so Uber is precluded from introducing evidence of that meeting at trial. (Dkt. 1267.) Judge Corley further held that Uber could not waive Levandowski's attorney-client privilege over the March 29 conversation, such that Waymo could not take any discovery into the March 29 conversations or other privileged conversations on the same subject matter. (Dkt. 1311; Dkt. 1414, 8/28/17 Hearing Tr., 43:3-4.) Because Uber's entire bonus theory arose from this privileged conversation that Uber is precluded from relying upon and Waymo has not been allowed to pursue discovery into it, Uber should not be permitted to advance the bonus theory. Uber may still try to present this theory using supposed circumstantial evidence. (Ex. A.) Permitting Uber to do so would allow Uber to reap the benefits of its tardy attempt to waive privilege, while Waymo still is precluded from taking full discovery as to Uber's theory.[1] As a sanction for Uber's "slick practice of including its lawyers in meetings and communications and deciding after the fact if a lawyer was actually included for the purpose of providing legal advice, all in accordance with what happens to be convenient for Uber's case" (Dkt. 1267), Uber should not be allowed to advance the theory that is the fruit of that "slick practice."

---

[1] The Court also ordered that Waymo must take care to not "open the door" to the March 29 conversation. (Dkt. 1267.) If Waymo must rebut the bonus theory, Uber will undoubtedly argue that Waymo has opened the door in one way or the other, putting Waymo at a disadvantage at trial and waste Court time and resources on this baseless and excluded theory.

## II. THE BONUS THEORY SHOULD BE EXCLUDED BECAUSE UBER DID NOT PROPERLY DISCLOSE IT DURING DISCOVERY.

Uber additionally should not be allowed to advance the bonus theory because Uber failed to properly disclose it in discovery. Fed. R. Civ. P. 37(c)(1). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." *Id.* Uber had multiple opportunities to disclose the bonus theory and supporting facts, but failed to do so. For example, on March 16, this Court ordered that by March 31, 2017, "defendants shall produce for inspection all files and documents downloaded by Anthony Levandowski . . . ***If any part of said downloaded material has been deleted, destroyed, or modified, then defendants shall state the extent thereof and produce all documents bearing on said deletion, destruction, or modification***." (Dkt. 61) (emphasis added.) Uber did not disclose to the Court on March 31 that Levandowski downloaded the materials at issue or that he purportedly deleted them. (Dkt. 1082-1.) Expedited Interrogatory No. 1 asked Uber to "IDENTIFY the locations and custody of all known copies of THE DOWNLOADED MATERIALS" and "If any of the copies have [*sic*] no longer exist, explain DEFENDANTS' full knowledge as to the destruction." (Ex. B.) Uber responded on June 5 and did not disclose that Levandowski downloaded the files and later deleted them. (Dkt. 1082-1; Ex. B.) And despite the Court's deadline for "[a]ll initial disclosures under FRCP 26" to be "completed by June 21, 2017, on pain of preclusion" (Dkt. 562), Uber's June 21 Supplemental Initial Disclosures do not mention the bonus theory. (Ex. C.) Uber did not supplement its Initial Disclosures again until August 31—one week after the close of fact discovery and without leave of Court—to disclose that Padilla had knowledge of this issue. (Ex. D.)

Uber's failure to disclose the bonus theory and the facts underlying it was not substantially justified, but was part of Uber's "slick practice" of asserting privilege until Uber decided that it may be advantageous to rely on privileged material. (Dkt. 1267.) Nor is Uber's failure to properly disclose the facts underlying its theory harmless because Uber seeks to benefit from the late-disclosed, privileged conversation while Waymo is denied the opportunity to take discovery

on all communications regarding the subject matter of the March 29 conversation. Given that Uber's discovery violations are neither substantially justified nor harmless, Uber should be precluded from presenting the bonus theory at trial.[2]

### III. STATEMENTS AS TO WHY LEVANDOWSKI SAID HE STOLE WAYMO TRADE SECRETS ARE INADMISSIBLE HEARSAY.

The only witness that can competently testify as to the reason *why* the files were downloaded is Levandowski, but he refuses to testify on this issue. Testimony from other witnesses regarding what Levandowski allegedly told them is inadmissible hearsay. Even if the March 29 conversation were not already precluded, testimony about Levandowski's statements during that conversation would be inadmissible hearsay. Fed. R. Evid. 601. Uber also intends to rely on statements that Levandowski allegedly made to others regarding his bonus, pointing to ▓▓▓▓, Brian McClendon, and Daniel Gruver. (Ex. A.) Introducing testimony from other witnesses that Levandowski told them he was worried about his bonus to prove that Levandowski was worried about his bonus is inadmissible hearsay. Fed. R. Evid. 601.

### IV. THE BONUS THEORY SHOULD BE PRECLUDED ON RULE 403 GROUNDS.

Lastly, Uber's bonus theory should be excluded pursuant to Federal Rule of Evidence 403. The minimal (at best) probative value of unreliable theories as to why Levandowski did what he did is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time." Fed. R. Evid. 403. It is unfairly prejudicial to Waymo because Uber had or has access to Levandowski, but Waymo cannot cross-examine Levandowski and was denied the chance to take discovery on the subject matter discussed at the March 29 meeting.

Permitting Uber to argue the bonus theory also risks undue delay and wasting time because it will require the parties to present evidence regarding Waymo's bonus program, which is otherwise irrelevant. Uber laid out the evidence it intends to rely upon in an interrogatory response, and Uber is limited to the disclosed evidence. (Ex. A.) The testimony and documents that Uber intends to rely

---

[2] If, despite the arguments herein, the Court permits Uber to present the bonus theory, Waymo will request leave to call witnesses that were not on Waymo's June 21 Supplemental Initial Disclosures or June 22 Corrected Supplemental Initial Disclosures. Defendants already deposed each of the witnesses at issue, so there would be no prejudice to Defendants.

upon is not otherwise relevant to the issues in the case. Moreover, Uber's purported evidence supporting the bonus theory is not compelling. (Ex. A.) The cited documents do not show that Levandowski was worried about his bonus when he downloaded misappropriated materials, or say that is why he stole Waymo trade secrets. The cited evidence consists of hearsay statements, copies of the Chauffeur Bonus Plan ("CBP") and related documents, and testimony about the Plan. The "strongest" evidence Uber has is that ████ testified that he thought he received his termination payout late, and Levandowski texted his HR Business Partner at Google in August 2016 to ask when he could expect his termination payout. (Exs. E, H-S).

Although weak, Waymo would be forced to rebut that evidence. Among other things, Waymo will show that: under the CBP, the first bonus amount was to be determined by calculating the product of the participant's first bonus allocation percentage on the first exchange date, and the applicable project valuation (Ex. E); on December 5 (before Levandowski's first download), Levandowski was told the bonus payments would be made on December 31 (Ex. F, T, W); Levandowski received his first bonus payment on December 31 (before his second download) (Ex. G, U); Levandowski received his post-termination bonus payout on time (Ex. G, V); Levandowski did not complain to Google about the amount or timing of his first bonus payment; there is no evidence he deleted the downloaded files after receiving his bonus; and he still has the misappropriated materials. (Dkt. 802) (holding documents withheld by Levandowski are incriminating).[3] Introducing this evidence and testimony from multiple witnesses (some of whom may not otherwise testify) will cause undue delay and waste time. Allowing Uber to advance the bonus theory presents a danger of confusing the issues and misleading the jury. If Uber presents evidence or argument focusing on the CBP, the jury may get confused or misled into thinking that if Levandowski had "legitimate" reasons to download that would somehow excuse Defendants' unlawful conduct. Thus, there are multiple Rule 403 grounds in favor of excluding the bonus theory.

For these reasons, the Court should grant preclude Uber from arguing the "bonus" theory, which is the only theory Uber disclosed as to why Levandowski downloaded Waymo's trade secrets.

---

[3] As noted above, presenting these latter arguments may be considered "opening the door" to testimony or argument about the March 29 meeting.

| | | |
|---|---|---|
| 1 | DATED: September 7, 2017 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | | |
| 3 | | By /s/ *Charles K. Verhoeven* |
| 4 | | Charles K. Verhoeven<br>Attorneys for WAYMO LLC |