1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Tel:   415.268.7000 / Fax:   415.268.7522
5
   KAREN L. DUNN (*Pro Hac Vice*)
6  kdunn@bsfllp.com
   HAMISH P. M. HUME
7  hhume@bsfllp.com
   BOIES SCHILLER FLEXNER LLP
8  1401 New York Avenue, N.W.
   Washington, D.C.  20005
9  Tel:   202.237.2727 / Fax:   202.237.6131

10 WILLIAM CARMODY (*Pro Hac Vice*)
   bcarmody@susmangodfrey.com
11 SUSMAN GODFREY LLP
   1301 Avenue of the Americas, 32nd Floor
12 New York, NY 10019-6023
   Tel.:   212.336.8330 / Fax.:   212.336.8340
13

14 Attorneys for Defendants
   UBER TECHNOLOGIES, INC. and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>  Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S AND OTTOMOTTO, LLC'S OPPOSITION TO PLAINTIFF WAYMO LLC'S RENEWED MOTION IN LIMINE 1**<br><br>Judge:   The Honorable William Alsup<br>Trial Date: October 10, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Waymo, through renewed motion *in limine* No. 1 ("MIL 1") revives a motion it tentatively lost, and that it should lose again.[1] Waymo's untenable premise is that it should have free rein to tell the jury its own preferred theory as to *why* Levandowksi allegedly downloaded around 14,000 files in December 2015—but that Uber should be precluded from offering a competing explanation. There is no reason for this uneven result. MIL 1 should be denied again.

## I.   WHAT IS AT STAKE

Waymo's theory of the case is that Levandowski downloaded approximately 14,000 files *because* he intended to steal those files and use them at Uber. (*E.g.*, 5/3/2017 Hr'g Tr. 6:1–3 ("It is now clear, your Honor, that at the time of the download, Uber and Mr. Levandowski were planning to build a replica LiDAR system for Uber.").) In service of this theory, Waymo has leveraged circumstantial evidence, including the timing of the downloads vis-à-vis meetings with Uber employees. (*E.g.*, Dkt. 23 ¶ 48; 5/3/2017 Public Hr'g Tr. 34:21–22 ("the circumstantial evidence here clearly shows there's bad intent"); 6/29/2017 Hr'g Tr. 89:22–90:1; Dkt. 756 at 8–13; Dkt. 1405 at 3, 15.) Waymo's conspiracy theory is not true. But Uber, like Waymo, has been hamstrung in cross-examining Levandowski to prove *why* he did what he did because of his Fifth Amendment invocation. Thus, Uber, like Waymo, is left with inferences to be drawn from circumstantial evidence to rebut Waymo's theory and posit alternative reasons for the jury.

Moreover, Waymo no doubt intends to argue that Uber waited too long to fire Levandowski. (*E.g.*, 7/26/2017 Hr'g Tr. 71:17–72:4.) There are reasons for that: among other things, Uber reasonably believed that Levandowski's downloads had nothing to do with Uber and everything to do with his disintegrating relationship with his then-employer, Google. The bonus explanation helps explain Uber's actions after the filing of this Complaint, and sheds light on the state of mind of Uber's employees, Board, executives, and former executives.

//

---

[1] Waymo's motion was denied without prejudice, and that the Court's July 11 tentative order was not a final ruling in limine. (Dkt. 874, p. 3, ¶ 10.) However, the motion was denied subject "to ***renewal via targeted objections raised against specific items of evidence at trial***." (Dkt. 874, p. 3, ¶ 8.) This sweeping pretrial motion is not an objection made "at trial;" neither is it a "targeted objection raised against specific items of evidence".

II.   **UBER HAS SUBSTANTIAL, ADMISSIBLE, CIRCUMSTANTIAL EVIDENCE THAT LEVANDOWSKI'S DOWNLOADS RELATED TO HIS BONUS**

Uber acknowledges that the Court has excluded, on privilege grounds, the clearest evidence that Levandowski downloaded the files at issue in relation to his Google bonus: the fact that Levandowksi said so. (Dkt. 1267.) But Waymo is wrong that Uber's "entire bonus theory" arose from this conversation. (MIL 1 at 1.) As Waymo acknowledges, Uber has substantial circumstantial evidence of this explanation. Google's Project Chauffeur Bonus Plan was ██████ ██████ (Ex. 36, WAYMO-UBER-00047062; *see also* Ex. 55, 8/21/2017 J. Sorge Dep. Tr. 124:13–127:12, 130:5–133:4.) Moreover, ██████ ██████ ██████ (*See* Dkt. 1089-6.) In the face of these misaligned incentives, ██████ ██████ (Ex. 48, 4/20/2017 G. Pennecot Dep. Tr. 26:13–21), and ██████ ██████ ██████. (Ex. 57, 8/24/2017 C. Urmson Dep. Tr. 88:25–89:4, 100:13–101:17.) Levandowski repeatedly expressed his nervousness about whether he would be paid and how much—an anxiety shared by others on the Chauffeur team. (*See, e.g.*, Ex. 28, UBER00060504; Ex. 49, 6/16/2017 G. Pennecot Dep. Tr. 615:11–23; Ex. 51, 8/4/2017 D. Gruver Depo Tr. 208:16–209:9, 407:23–409:9; Ex. 57, 8/24/2017 C. Urmson Dep. Tr. 132:22–135:2.) Even after the valuation was purportedly set, ██████ ██████ (Ex. 34, WAYMO-UBER-00033705.) First round bonuses were not paid until December 31, 2015—██████ ██████ And termination bonuses in August 2016 were likewise late; Levandowski expressed on August 12, 2016 that he was "expecting to be paid weeks ago." (Ex. 35, UBER00301332–39.) In the midst of this, Levandowksi may well have taken the misguided step of downloading the entire contents of the SVN server in order to demonstrate the progress of the project, or for some other reason.

1    Waymo is also wrong that statements that Levandowski made to others about why he
2    downloaded the materials are inadmissible hearsay. (MIL 1 at 3.) First, statements made by
3    Levandowski when he was a Google employee are nonhearsay Google party admissions under
4    Federal Rule of Evidence 801(d)(2)(A) and (D). Second, Levandowski's contemporaneous
5    statements about his then-existing state of mind (such as his motive, intent, or plan) are exempted
6    from the hearsay rule under Federal Rule of Evidence 803(3). Finally, Levandowski's statements
7    to Uber employees on this topic would be offered not for the truth, but to show effect on the
8    listener: they explain why Uber did not fire Levandowski immediately. Fed. R. Evid. 801(c);
9    *Orsini v. O/S SEABROOKE O.N.*, 247 F.3d 953, 965 n.4 (9th Cir. 2001) (statements not hearsay
10   when relevant to listener's "state of mind and the effects those statements had on him".)

11   Waymo may think this evidence is "weak" (MIL 1 at 4), but the "court may not exclude
12   relevant evidence—or, in this case, assign it no probative value—on the ground that it does not
13   find the evidence to be credible." *United States v. Evans*, 728 F.3d 953, 963 (9th Cir. 2013). And
14   there is no substantial danger of unfair prejudice, confusing the issues, misleading the jury, undue
15   delay or wasting time. Fed. R. Evid. 403. Waymo has not identified any prejudice to Waymo that
16   does not also affect Uber. (MIL 1 at 3.) Far from being "irrelevant," the uncertainty surrounding
17   the Project Chauffeur Bonus Plan explains *why* Levandowski downloaded the files. The Plan
18   ████████████████████████████████████████████████████████████████
19   ████████████████████████████████████████ (Ex. 38, WAYMO-UBER-
20   00041064.) Waymo no doubt seeks to make a trial theme of the number of ex-Googlers who
21   joined Uber. Uber is entitled to explain that this exodus was a problem of Google's own making.

22   Finally, there is no danger of confusing or misleading the jury. Uber has never argued and
23   would not claim before the jury that the bonus explanation is a "legitimate" reason for
24   downloading. (MIL 1 at 4.) It may not exonerate Levandowski—but it does exonerate Uber.

25   **III.   WAYMO HAS NOT BEEN PRECLUDED FROM DISCOVERY AND UBER HAS COMMITTED NO MISCONDUCT**
26

27   Waymo has not been "denied" discovery into the bonus explanation. (MIL 1 at 1.) Uber
28   briefed the issue as early as June 28 (Dkt. 755 at 12), when discovery was in full swing, and the

parties discussed the issue in court on June 29. (6/29/2017 Hr'g Tr. at 89:20–90:6.) Waymo has questioned witnesses about this issue, including Levandowski himself (Ex. 51, 8/4/2017 D. Gruver Dep Tr. 208:3–213:23; Ex. 56, 8/22/2017 A. Levandowski Depo Tr. 165:9–168:2); and asked Uber to produce documents about it (RFP No. 153), which Uber has done. Waymo had the benefit of an extensive brief in which Uber laid out its inferences in detail (Dkt. 829-4) and admits *in this motion* that Uber listed the evidence then available to it in response to Waymo's Interrogatory No. 9, which asks for Levandowski's "reasons for downloading." (MIL 1 at 3 & Ex. A.)[2] Judge Corley has excluded from evidence and further discovery Levandowski's conversation with Travis Kalanick on March 29, 2017, and Uber will not offer any evidence of this conversation at trial. On facts *other* than this conversation, Waymo has had full discovery.

Permitting Uber to put on this additional evidence would not "allow Uber to reap the benefits" of the March 29 conversation. (MIL 1 at 1.) The existence of some privileged facts on a topic does not render the entire topic off-limits. *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981) ("A fact is one thing and a communication of that fact is an entirely different thing."). If it were, the routine practice of producing partially redacted documents would not exist. Indeed, Waymo itself has asserted privilege over some communications related to topics it intends to present at trial, such as the Levandowksi investigation. (8/31/2017 Hr'g Tr. 20:8–21:11.)

Nor has Uber improperly failed to disclose the bonus explanation in response to Waymo or court-ordered discovery. Waymo cites court orders and interrogatories asking about the ***destruction*** of files—which ask nothing about why Levandowski may have ***downloaded the files in the first place.*** (MIL 1, p. 2.) As Waymo admits, when Waymo requested that Uber list all of Levandowksi's "reasons for downloading"—Uber timely responded. (MIL 1, p. 3, Ex. A.)

Uber's initial disclosures, too, were fulsome; on June 21, Uber identified eleven witnesses having "knowledge of the Project Chauffeur bonus program." These disclosures were sufficiently specific, especially in light of the level of generality in Waymo's own disclosures.

---

[2] That interrogatory was served on July 14. Uber responded timely on August 14 and 24.

| | | |
|---|---|---|
| 1 | Dated: September 13, 2017 | MORRISON & FOERSTER LLP |
| 2 | | BOIES SCHILLER FLEXNER LLP |
| | | SUSMAN GODFREY LLP |

By:  */s/ Karen L. Dunn*
    KAREN L. DUNN

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC