MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone:  202.237.2727
Facsimile:  202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@SusmanGodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019-6023
Telephone:  212.336.8330
Facsimile:  202.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　　　Defendants. | Case No.    3:17-cv-00939-WHA<br><br>**DECLARATION OF ARTURO J. GONZÁLEZ IN RESPONSE TO COURT'S ORDER REQUIRING DECLARATIONS (DKT. 1536)**<br><br>Judge:  Honorable William Alsup<br>Trial Date: October 10, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1    I, Arturo J. González, declare as follows:

2    1.    I am a partner with the law firm of Morrison & Foerster LLP, counsel of record for Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively "Uber") in this action. I am a member in good standing of the Bar of the State of California. I make this declaration in response to this Court's Order Requiring Declarations. (Dkt. 1536.) I have personal knowledge of the facts contained in this declaration and, if called as a witness, could and would testify competently thereto.

**THE 14,000 FILES**

2.    In its Complaint in this case, Waymo alleged that Anthony Levandowski misappropriated "14,000 highly confidential and proprietary files." (Dkt. 1 at 3:12.) Waymo used that allegation in support of its successful effort to obtain preliminary injunctive relief and an expedited discovery and trial schedule.

**DOCUMENTS PRODUCED LAST DAY OF DISCOVERY**

3.    On the last day of discovery, August 24, 2017, Waymo produced approximately 7,350 documents, which represents roughly 33% of its total document production to date of approximately 22,572 documents. Since the close of fact discovery, Waymo has produced approximately 1,679 documents. These document totals are based on the documents from Waymo's productions uploaded by Uber's discovery vendor.

**SASHA ZBROZEK: "DOESN'T RING ALARM BELLS"**

4.    In its August 24, 2017 production, Waymo produced documents that it had previously withheld as privileged. Those documents include emails between Google engineers who were asked to assist in the investigation regarding Mr. Levandowski, and lawyers for Google (both in house lawyers and lawyers from Keker, Van Nest, & Peters). In one of the email chains, a Google engineer (Sasha Zbrozek) advises one of the Google lawyers from the Keker firm that the 14,000 files that were accessed by Mr. Levandowski are "low-value" files. (WAYMO-UBER-00086885 at 86.) He goes on to say that it was not "particularly surprising" that Mr. Levandowski may have accessed those files and summarized his views by saying: "Doesn't ring the alarm bells for me." (*Id.*) A true and correct copy of this email chain is attached hereto as

GONZALEZ DECLARATION IN RESPONSE TO COURT'S ORDER REQUIRING DECLARATIONS (DKT. 1536)
Case No. 3:17-cv-00939-WHA
pa-1802028

1

Exhibit 1 at WAYMO-UBER-00086885. We applied redactions to be in compliance with Magistrate Judge Corley's Order denying in part Waymo's sealing motion. (Dkt. 1444.)

5.     The email chain also shows that Google investigated eight former employees who had joined Uber, and that six of them had never accessed the repository where the 14,000 files were allegedly downloaded. (*See* Ex. 1 at 86888.)

6.     A second Google engineer on the email chain stated that it "wouldn't be out of normal operation" for the entire folder to be "sync'd" if someone accessed the repository to sync files "locally for work." (Ex. 1 at 86890.)

## ZBROZEK'S EMAIL TO GOOGLE'S IN-HOUSE COUNSEL

7.     There is a related email chain that was produced *after* the close of discovery, on September 2, 2017. A true and correct copy of this email chain, which Google has marked Attorneys' Eyes Only but has been redacted in order to allow for public filing, is attached hereto as Exhibit 2 at WAYMO-UBER-00086932. That email was written on February 22, 2017, the day before this lawsuit was filed. In that email, Mr. Zbrozek writes to Shana Stanton, an in-house Google lawyer:

> Well, Anthony's log speaks to the number of files. It also expresses the (rough) filesize for each transaction. Figuring out the totals for both can be done by parsing the log snippet. Do you need assistance with that? I'm a little leery because **both of those numbers aren't really meaningful to any narrative**. It also has a chilling effect on being a hardware engineer - *we all do full checkouts*, and **it makes me uncomfortable to think that lawyers are trying to ascribe suspicion to it**.

(Exhibit 2 at 86936 (emphasis added).)

8.     In response to Mr. Zbrozek's reservations and concerns about what the lawyers were saying, and his statement that the files that were downloaded by Anthony Levandowski were "low value," one of the Google in-house lawyers wrote to him and said: "Sasha, **we want to also be able to say that SVN contains only internal confidential stuff**, which I understand from Pierre is the case." (Ex. 2 at 86932 (emphasis added).) SVN is the repository that contained the 14,000 files that were allegedly misappropriated. It was only after this prodding from Google's lawyer that Mr. Zbrozek modified his position: "Mostly. There's a bit of boilerplate

1  and low-value stuff." (*Id.*)  Having circled the wagons, Google filed this lawsuit the next day.

2        9.    After these documents were produced, I took Mr. Zbrozek's deposition.  He had

3  been deposed previously, but at his first deposition, he made no mention of these emails, or of his

4  strong concerns pertaining to Google's investigation.  In his second deposition, I asked him about

5  the statement in his email that "we all do full checkouts." (Ex. 2 at 86936.)  He testified that he

6  [redacted]

7  [redacted]

8  [redacted]

9  [redacted]

10  [redacted]

11  [redacted]

12  [redacted]

13  [redacted]

14  A true and correct copy of Sasha Zbrozek's deposition testimony from September 6, 2017, which

15  Google has designated Attorneys' Eyes Only, is attached hereto as Exhibit 3.  (*See* Ex. 3 at

16  Zbrozek Dep. 235:2-9.)  Mr. Zbrozek [redacted]

17  [redacted] (*Id.* at 196:18-21.)

18        10.    Mr. Zbrozek confirmed that [redacted]

19  [redacted]

20  [redacted]

21  [redacted]

22  [redacted]

23  [redacted]

24  [redacted]

25  [redacted]

26  (*Id.* at 236:3-11.)

27        11.    Finally, Mr. Zbrozek confirmed that [redacted]

28  [redacted]

█████████████████████████████████████████. (*Id.* at 253:5-7, 255:22-256:6.) That explains why he was so adamant the day before this lawsuit was filed about "lawyers . . . trying to ascribe suspicion" to what Mr. Levandowski had done. (Ex. 2 at 86936.)

### THE DOCUMENT DUMP

12. On September 9, over two weeks after fact discovery closed, Waymo produced 1,257 documents, subsequently explaining: "We produced additional M&A-related documents on Saturday via PROD061 and PROD063." After an inquiry from Uber's counsel, Waymo also stated: "PROD062 is also M&A related." Attached as Exhibits 4 and 5 are true and correct copies of Waymo counsel's emails with a link to these productions and responses that they contained additional M&A-related documents.

13. Uber has conducted a preliminary review of the 1,257 documents Waymo produced on September 9, and it appears that the majority of these documents—more than 800—are not M&A-related or responsive to any Order requiring production after the close of discovery. Instead, Waymo's September 9 productions include hundreds of documents and communications relating to LiDAR and Waymo's purported trade secrets, including communications to and from Anthony Levandowski and other witnesses deposed in this litigation. These documents appear to be responsive to numerous document requests. (*E.g.*, Attached as Exhibit 6 is a true and correct copy of Defendant Uber and Ottomotto's First Set of Requests for Production of Documents Nos. 21, 23, 98-104, 114, dated May 12, 2017.) Attached as Exhibit 7 is a true and correct copy of an email from Uber counsel to Waymo counsel on September 13, 2017 inquiring why Waymo had produced these documents several weeks after the close of fact discovery and after the parties had exchanged motions *in limine*. Thus far, we have not received a response.

### CUSTODIAN INFORMATION

14. Of the documents produced by Waymo in this case, over 2,200 did not properly identify a custodian. Of these, about 600 identified no custodian at all, and the rest merely referred to "Google" as the custodian.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 15th day of September, 2017 at San Francisco, California.

*/s/   Arturo J. González*
Arturo J. González