# EXHIBIT 6

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  ERIC A. TATE (CA SBN 178719)
   ETate@mofo.com
4  RUDY Y. KIM (CA SBN 199426)
   RKim@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California  94105-2482
   Telephone:     415.268.7000
7  Facsimile:     415.268.7522

8  KAREN L. DUNN (*Pro Hac Vice*)
   kdunn@bsfllp.com
9  HAMISH P.M. HUME (*Pro Hac Vice*)
   hhume@bsfllp.com
10 BOIES SCHILLER FLEXNER LLP
   1401 New York Avenue, N.W.
11 Washington DC  20005
   Telephone:     202.237.2727
12 Facsimile:     202.237.6131

13 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.
14 and OTTOMOTTO LLC

15            UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17            SAN FRANCISCO DIVISION

18 WAYMO LLC,                          Case No.       3:17-cv-00939-WHA

19            Plaintiff,               **DEFENDANTS UBER
                                       TECHNOLOGIES, INC. AND
20      v.                             OTTOMOTTO LLC'S FIRST SET OF
                                       REQUESTS FOR PRODUCTION OF
21 UBER TECHNOLOGIES, INC.,            DOCUMENTS (NOS. 1-146)**
   OTTOMOTTO LLC; OTTO TRUCKING LLC,
22                                     Trial Date: October 2, 2017
            Defendants.
23

24

25

26

27

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively "Defendants") request that Plaintiff Waymo LLC ("Waymo") respond to Defendants' First Set of Requests for Production of Documents (the "Requests"). Defendants request that Waymo produce for inspection and copying the documents and things set forth below at the offices of Morrison & Foerster LLP, 425 Market Street, San Francisco, CA 94105-2482, within thirty (30) days, or such other time as the parties agree or the Court orders.

## **DEFINITIONS**

The words and phrases used in these Requests shall have the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of California. In addition, the following terms shall have the meanings set forth below whenever used in any Request.

The following definitions apply to the instructions and requests below, regardless of whether upper or lower case letters are used for the defined terms, and are incorporated into each instruction and request as if fully set forth therein:

1.    "Action" and "this Action" shall mean *Waymo LLC vs. Uber Technologies, Inc., Ottomotto LLC, and Otto Trucking LLC*, Case No. 3:17-cv-00939-WHA, pending in the United States District Court for the Northern District of California.

2.    "Alleged Waymo Trade Secret(s)" shall mean the last bullet point paragraph (beginning with the text: "The trade secret claimed is . . . .") in each numbered section of Plaintiff's List of Asserted Trade Secrets Pursuant to Cal. Code Civ. Proc. Section 2019.210 (ECF No. 25-7, Exhibit 1 to the Declaration of Jordan Jaffe).

3.    "LiDAR" shall mean light detection and ranging technologies, also known as ladar or laser radar.

4.    "PCB" shall mean printed circuit board.

5.    "The '922 patent" shall mean United States Patent No. 8,836,922, entitled "Devices and Methods for a Rotating LiDAR Platform with a Shared Transmit/Receive Path."

6.    "The '464 patent" shall mean United States Patent No. 9,285,464, entitled

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

"Devices and Methods for a Rotating LiDAR Platform with a Shared Transmit/Receive Path."

7.     "The '273 patent" shall mean United States Patent No. 9,086,273, entitled "Microrod Compression of Laser Beam in Combination with Transmit Lens."

8.     "The '936 patent" shall mean United States Patent No. 9,368,936, entitled "Laser Diode Firing System."

9.     "Asserted Patents" shall mean the '922 patent, '464 patent, '273 patent, and '936 patents, individually and collectively.

10.     "Communication" shall mean any transmission of information by any means, including without limitation: (a) any written letter, memorandum, or other Document of any kind by mail, courier, other delivery services, telecopy, facsimile, telegraph, electronic mail, voicemail, or any other means; (b) any telephone call, whether or not such call was by chance or prearranged, formal or informal; and (c) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal.

11.     "Concerning, "Concern," "Relating to," "Relate to," and "Related to," and any variation of these terms, shall mean concerning, relating to, involving, discussing, regarding, pertaining to, mentioning, commenting on, connected with, describing, depicting, demonstrating, analyzing, explaining, summarizing, showing, evidencing, reflecting, identifying, setting forth, dealing with, embodying, comprising, consisting of, containing, constituting, supporting, refuting, contradicting, resulting from, recording, or in any way relevant to a particular subject, directly or indirectly, in whole or in part.

12.     "Document" or "Documents" shall have the broadest meaning possible under Rules 26 and 34 of the Federal Rules and shall include without limitation:  documents; ESI; Communications in written, electronic, and recorded form; and tangible things.

13.     "ESI" shall mean electronically stored information as defined by and used in the Federal Rules.

14.     "Include" and "Including" shall mean including without limitation.

15.     "Person" shall mean any natural person or any corporation, partnership, or other business, legal, or governmental entity or association, as well as its officers, directors, employees,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   agents, representatives, consultants, and attorneys.

2       16.    "Related Patent" shall mean: (a) any of the applications for the Asserted Patents or

3   any United States or non-United States patent application to or through which any of the Asserted

4   Patents claims priority; any predecessor, provisional, international, continuation, continuation-in-

5   part, divisional, or reissue application of the foregoing patent application (including any rejected,

6   abandoned, or pending application); any publication of the foregoing applications; any United

7   States or non-United States patent that issues or has issued on any of the foregoing applications;

8   or any patent issuing from any interference, reexamination, review, or opposition relating to any

9   of the foregoing patents or patent applications; or (b) any United States or non-United States

10  patent application that claims priority to or through any of the Asserted Patents; any predecessor,

11  provisional, international, continuation, continuation-in-part, divisional, or reissue application of

12  the foregoing patent application (including any rejected, abandoned, or pending application); any

13  publication of the foregoing applications; any United States or non-United States patent that

14  issues or has issued on any of the foregoing applications; or any patent issuing from any

15  interference, reexamination, review, or opposition relating to any of the foregoing patents or

16  patent applications.

17      17.    "Waymo," "Plaintiff," "You," and "Your" shall mean collectively and

18  individually: Waymo LLC (previously Project Chauffeur), Google Inc., and Alphabet Inc.; their

19  parents, predecessors, successors, assigns, affiliates, direct and indirect subsidiaries, and partners;

20  any joint venture in which Waymo LLC, Google Inc., and/or Alphabet Inc. hold an interest;

21  persons owned or controlled by the foregoing in whole or in part; and their officers, directors,

22  employees, agents, representatives, accountants, financial advisors, consultants, and attorneys.

23      18.    "Uber" shall mean Uber Technologies, Inc., and any predecessor or successor

24  entities, any parents, subsidiaries, or affiliates, and any joint ventures in which Uber

25  Technologies, Inc. holds an interest; persons owned or controlled by the foregoing in whole or in

26  part; and their officers, directors, employees, agents, representatives, accountants, financial

27  advisors, consultants, and attorneys.

28      19.    "Ottomotto" shall mean Ottomotto LLC, and any predecessor or successor entities,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

any parents, subsidiaries, or affiliates, and any joint ventures in which Ottomotto LLC holds an interest; persons owned or controlled by the foregoing in whole or in part; and their officers, directors, employees, agents, representatives, accountants, financial advisors, consultants, and attorneys.

20.   "Otto Trucking" shall mean Otto Trucking LLC, and any predecessor entities, any parents, subsidiaries, or affiliates, and any joint ventures in which Otto Trucking LLC holds an interest; persons owned or controlled by the foregoing in whole or in part; and their officers, directors, employees, agents, representatives, accountants, financial advisors, consultants, and attorneys.

21.   "Defendants" shall mean Uber Technologies, Inc. ("Uber") and Ottomotto LLC ("Otto") and Otto Trucking LLC.

22.   "Velodyne" shall mean Velodyne LiDAR, Inc., Velodyne Acoustics, Inc., and any predecessor entities, any parents, subsidiaries, or affiliates, and any joint ventures in which Velodyne LiDAR holds an interest; persons owned or controlled by the foregoing in whole or in part; and their officers, directors, employees, agents, representatives, accountants, financial advisors, consultants, and attorneys.

23.   "Waymo Complaint" or "Complaint" shall mean the First Amended Complaint filed by Waymo against Defendants in this action on March 10, 2017, and any further amended complaint filed by Waymo in this action.

24.   "Waymo PI Motion" shall mean the Motion for a Preliminary Injunction filed by Waymo against Defendants in this action on March 10, 2017.

25.   "Uber PI Opposition" shall mean the Opposition to Waymo PI Motion filed by Defendants in this action on April 7, 2017.

26.   "Waymo PI Reply" shall mean the Reply in Support of the Waymo PI Motion filed by Waymo in this action on April 21, 2017.

27.   "Uber PI Sur-Reply" shall mean the Sur-Reply to Waymo PI Motion filed by Defendants in this action on April 28, 2017.

28.   "Waymo Side Project(s)"/"Side Project(s)" or "Waymo Side Business(es)"/"Side

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Business(es)" shall mean personal side project(s) or business(es) in which a Waymo employee participates while employed at Waymo LLC or Project Chauffeur.

29.     "Alphabet Side Project(s)"/"Side Project(s)" or "Alphabet Side Business(es)"/"Side Business(es)" shall mean personal side project(s) or business(es) in which a Google Inc. or Alphabet Inc. employee participates while employed at Google or Alphabet, including but not limited to Zee.Aero, Kitty Hawk, and Tiramisu.

## **INSTRUCTIONS**

1.     You must respond to these requests for Documents in accordance and compliance with the Federal Rules, the Local Rules, any relevant order entered in this Action, and the Default Standard for Discovery in this judicial district or other superseding agreements between the parties related to discovery.

2.     In accordance with the applicable Federal Rules, the requests below seek the production of all responsive Documents in Your possession, custody, or control.

3.     All documents shall be produced in the following form:

(i).     Single-page group IV TIFFs in at least 300 dpi for black and white images, or .JPG for images produced in color;

(ii).     Searchable text files at the document level (one text file for each document, rather than one text file for each page of a document) for each document bearing the name of the beginning production number for each document (text of native files to be extracted directly from native files where possible; OCR for paper documents);

(iii).     Database load files and cross reference files, e.g., Concordance default delimited file (metadata) and an Opticon-delimited file (image reference files), and including the following fields (to the extent the metadata is available):  Beg Bates No., End Bates No., Bates Range, Bates Parentid, Attach Begin, Attach End, Page Count, From/Author, To/Recipient(s), CC, Bcc, Email Date Sent, Email Time Sent, Email Date Received, Email Time Received, Email Subject, Custodian, File Name, Document Created Date, Document Last Modified Date,

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Document Last Accessed Date, File Type, Location/Source, Text Link (path to text), Native Link (path to native file); and

(iv).    MS Excel, MS Powerpoint, MS Access, and comparable spreadsheet, presentation, and database files, and audio and video files, shall be produced in native format to the extent they do not include privileged redactions.  A party may make a reasonable request to receive additional document in its native format, and upon receiving such a request, the producing party shall produce the document in its native format.

4.    All Documents are to be produced as kept in the usual course of business, or as organized and labeled to correspond to the specific requests set forth below, or as otherwise agreed in writing between You and Defendants.

5.    All drafts of a responsive Document must be produced, as well as all non-identical copies of the Document.  Any comment, notation, or other marking shall be sufficient to distinguish Documents that are otherwise similar in appearance and to make them separate Documents for purposes of Your response.  Any preliminary form, intermediate form, superseded version, or amendment of any Document is to be considered a separate Document.

6.    The file folder or other container in which a Document is kept is deemed to be an integral part of the Document and shall be produced with the Document.

7.    Each paragraph and subparagraph of these instructions and the requests for production, as well as the definitions herein, shall be construed independently, and no paragraph or subparagraph or definition shall limit the scope of any other.

8.    If You object to any Document request or any part of a Document request, identify the part to which You object, state the objection(s) with specificity, and provide a response to the remaining unobjectionable part.

9.    If You object to all or any part of a Document request, the objection must state whether any responsive Documents are being withheld on the basis of that objection.

10.    If You withhold any Document based on a claim of privilege, immunity, or protection from disclosure, You must provide a statement of the claim in accordance with Rule 26(b)(5) of the Federal Rules, and as required by Provision 1(d) of the Default Standard for

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Discovery in this judicial district or as otherwise agreed by the parties.  Such statement should explain and substantiate the claim so as to permit adjudication of the claim's propriety.

11.     If a Document is in a language other than English, and an English translation exists, provide both the original and the English translation.

12.     If You have no Documents in Your possession, custody, or control that are responsive to a particular Document request, please so state.

13.     The requests, definitions, and instructions herein are propounded for the purpose of discovery and are not to be taken as a waiver of or prejudice to any objections that may be made at any hearing or trial in this Action to the introduction of any evidence relating to Documents responsive to these requests or as an admission of the authenticity, relevance, or materiality of Documents responsive to these requests.

14.     These requests shall be deemed to be continuing in accordance with Rule 26(e) of the Federal Rules, so that You are required to supplement Your response and production if You come into the possession, custody, or control of additional responsive Documents between the time of initial production and the time of trial.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Documents sufficient to show Waymo's knowledge of Defendants' autonomous vehicle program, including Defendants' design and development of LiDAR sensors (including LiDAR sensors from entities acquired by Defendants, such as Tyto LIDAR, LLC), Defendants' testing of autonomous vehicles, and Defendants' attempts to commercialize autonomous vehicle technology.

**REQUEST FOR PRODUCTION NO. 2:**

All documents supporting Waymo's contention that "Waymo's LiDAR technology is subject to robust measures to protect its secrecy," including documents that show any steps taken by Waymo to ensure the security and confidentiality of every Alleged Waymo Trade Secret that was allegedly misappropriated by Defendants.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**REQUEST FOR PRODUCTION NO. 3:**

Documents sufficient to show how often Waymo engineers download documents onto laptops or personal devices, including flash drives.

**REQUEST FOR PRODUCTION NO. 4:**

Documents sufficient to show the number of times that Waymo employees downloaded more than 10,000 files in one instance or at one time.

**REQUEST FOR PRODUCTION NO. 5:**

All documents relating to any Alleged Waymo Trade Secret that was allegedly misappropriated by Defendants but was not endorsed or otherwise marked with a visible legend designating the document as confidential and proprietary information.

**REQUEST FOR PRODUCTION NO. 6:**

Documents sufficient to identify all Waymo's vendors or suppliers for LiDAR systems or components, including documents sufficient to identify the specific components that each supplier provides to Waymo, up through the filing of the Complaint.

**REQUEST FOR PRODUCTION NO. 7:**

All documents relating to any public information about Waymo's vendors and suppliers of LiDAR systems or components.

**REQUEST FOR PRODUCTION NO. 8:**

All documents relating to the reasons that Waymo chose the position, orientation, and number of laser diodes and photodetectors mounted on the PCBs of Waymo's current-generation LiDAR systems, including any memoranda or documents that discuss or explain these choices or parameters, requirements, testing scenarios, or third party component specifications relating to these choices.

**REQUEST FOR PRODUCTION NO. 9:**

Documents sufficient to show the amount by which the laser diodes in the GBr3 system

**REQUEST FOR PRODUCTION NO. 10:**

All documents relating to the reasons that Waymo chose to position the laser diodes in the

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1     GBr3 system to ███████████████████████████████, including documents

2     relating to any benefits of a ███████████.

3     **REQUEST FOR PRODUCTION NO. 11:**

4        All documents relating to the reasons that Waymo chose the number of PCBs (transmit

5     and receive) in Waymo's current-generation LiDAR systems, including any memoranda or

6     documents that discuss or explain these choices or parameters, requirements, testing scenarios, or

7     third-party component specifications relating to these choices..

8     **REQUEST FOR PRODUCTION NO. 12:**

9        All documents relating to the reasons that Waymo chose to use ██████████████

10    ███████████████████████████████████████████████████,

11     including documents relating to any benefits of that configuration.

12     **REQUEST FOR PRODUCTION NO. 13:**

13        All documents relating to the reasons that Waymo chose to position the ████████████

14    ███████████████████████████████████████

15    ██████████████████████████h, including documents relating to any benefits of that

16     configuration.

17     **REQUEST FOR PRODUCTION NO. 14:**

18        All documents relating to the reasons that Waymo chose the methods for aligning the

19     PCBs in Waymo's current-generation LiDAR systems, including any memoranda or documents

20     that discuss or explain these choices or parameters, requirements, testing scenarios, or third party

21     component specifications relating to these choices.

22     **REQUEST FOR PRODUCTION NO. 15:**

23        All documents relating to the reasons that Waymo chose the selection, materials, size,

24     position, number, and orientation of optical elements that are used to manipulate and modify laser

25     beams that are transmitted and detected by Waymo's mid-range LiDAR designs, including any

26     memoranda or documents that discuss or explain these choices or parameters, requirements,

27     testing scenarios, or third party component specifications relating to these choices.

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**REQUEST FOR PRODUCTION NO. 16:**

Documents sufficient to show any alleged advantages or benefits of each of the Alleged Waymo Trade Secrets.

**REQUEST FOR PRODUCTION NO. 17:**

Documents sufficient to show Waymo's use and choice of third-party components in Waymo's current-generation LiDAR design.

**REQUEST FOR PRODUCTION NO. 18:**

All documents relating to any aspect of Waymo's LiDAR design that is public information, including any publicly available source code, demonstrations to members of the public, or documents in any filing, submission, application or certification made to any public entity or regulatory agency.

**REQUEST FOR PRODUCTION NO. 19:**

All documents relating to any efforts by Waymo to reverse engineer any third party's LiDAR technology (e.g., Velodyne's), including all documents concerning the time Waymo took to reverse engineer the third party's LiDAR technology.

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to show Waymo's acquisition or use of any third party's LiDAR technology.

**REQUEST FOR PRODUCTION NO. 21:**

All documents supporting Waymo's contention that Uber is using any Alleged Waymo Trade Secret, including documents sufficient to show Waymo's first notice of any alleged use.

**REQUEST FOR PRODUCTION NO. 22:**

All documents relating to any efforts by Waymo to review, analyze, or reverse engineer Defendants' LiDAR technology, including any review, analyses, or internal correspondence at Waymo concerning the PCB attached to the email in Exhibit 1 to the Grossman Declaration in support of Waymo's preliminary injunction motion.

**REQUEST FOR PRODUCTION NO. 23:**

All documents relating to Waymo's development of each Alleged Waymo Trade Secret.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**REQUEST FOR PRODUCTION NO. 24:**

Documents sufficient to show the length of time Waymo took to develop each Alleged Waymo Trade Secret.

**REQUEST FOR PRODUCTION NO. 25:**

Documents sufficient to show the number of man-hours spent developing each Alleged Waymo Trade Secret.

**REQUEST FOR PRODUCTION NO. 26:**

Documents sufficient to show the expenses associated with the development of each Alleged Waymo Trade Secret.

**REQUEST FOR PRODUCTION NO. 27:**

All documents discussing whether any or all of the Alleged Waymo Trade Secrets constitute trade secrets.

**REQUEST FOR PRODUCTION NO. 28:**

All documents relating to any public information used or discussed by any Waymo employee in developing each Alleged Waymo Trade Secret, including any principles of optics, publicly known laser or circuit board technology, or public literature.

**REQUEST FOR PRODUCTION NO. 29 :**

All communications with Waymo employees regarding whether the technology of each Alleged Waymo Trade Secret is a trade secret.

**REQUEST FOR PRODUCTION NO. 30 :**

All documents relating to any awareness by a Waymo employee that the technology of each Alleged Waymo Trade Secret uses or reflects public information, including any principles of optics, publicly known laser or circuit board technology, or public literature.

**REQUEST FOR PRODUCTION NO. 31:**

All documents submitted by Waymo in any filing, submission, application or certification made to any public entity or regulatory agency pertaining to the use of lasers or LiDAR in autonomous vehicles, including documents shown to and/or discussed with any person employed by a public entity or regulatory agency.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**REQUEST FOR PRODUCTION NO. 32:**

All documents submitted by Waymo in any filing, submission, application, or certification made to any public entity or regulatory agency pertaining to the use of any Alleged Waymo Trade Secret in autonomous vehicles, including documents shown to and/or discussed with any person employed by a public entity or regulatory agency.

**REQUEST FOR PRODUCTION NO. 33:**

Documents sufficient to identify the person or persons who developed each of the Alleged Waymo Trade Secrets and their role in the development.

**REQUEST FOR PRODUCTION NO. 34:**

Documents sufficient to show the date when Waymo claims to have developed each of the Alleged Waymo Trade Secrets.

**REQUEST FOR PRODUCTION NO. 35:**

All documents submitted by Waymo to a public or regulatory agency pertaining to the safety of autonomous vehicles.

**REQUEST FOR PRODUCTION NO. 36:**

Documents sufficient to identify any formal Waymo policy or process, including requirements, for Waymo employees to engage in Waymo Side Projects or Side Businesses.

**REQUEST FOR PRODUCTION NO. 37:**

All documents that relate to Waymo Side Projects or Side Businesses, whether approved or unapproved under policies identified in response to Request No. 33, and Waymo's knowledge of such Side Projects or Side Businesses since April 2007, including but not limited to policies, procedures, guidelines, and communications related to those Waymo Side Projects or Side Businesses.

**REQUEST FOR PRODUCTION NO. 38:**

Documents sufficient to identify every Waymo Side Project or Side Business since April 2007, including but not limited to the nature of the Side Project or Side Business and the name(s) of any Waymo employee(s) involved.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**REQUEST FOR PRODUCTION NO. 39:**

Documents sufficient to identify the time spent by Waymo employees on Waymo Side Projects or Side Businesses since April 2007 and the compensation paid to these employees.

**REQUEST FOR PRODUCTION NO. 40:**

Documents sufficient to identify every approved Waymo Side Project or Side Business since April 2007.

**REQUEST FOR PRODUCTION NO. 41:**

Documents sufficient to identify every known Waymo Side Project or Side Business since April 2007 that did not go through an approval process.

**REQUEST FOR PRODUCTION NO. 42:**

Documents sufficient to show Waymo investments or other contributions of funding in and revenues and profits derived from any Waymo Side Project or Side Business since April 2007.

**REQUEST FOR PRODUCTION NO. 43:**

Documents sufficient to identify every instance where Waymo has objected to or complained about any approved or unapproved Waymo Side Project or Side Business, regardless of whether an employee requested approval of a Side Project or Side Business.

**REQUEST FOR PRODUCTION NO. 44:**

All documents relating to the departure of Anthony Levandowski, Sameer Kshirsagar, and Radu Raduta from Waymo, including but not limited to any transition memoranda and transition documents created or collected by Messrs. Levandowski, Kshirsagar, and Raduta.

**REQUEST FOR PRODUCTION NO. 45:**

All documents relating to Waymo's knowledge of Messrs. Anthony Levandowski, Sameer Kshirsagar, and Radu Raduta's plans or efforts to seek employment outside of Waymo.

**REQUEST FOR PRODUCTION NO. 46:**

Documents sufficient to show to any collection, analysis, review, or findings related to Waymo computers, email, or other devices of current Waymo employees and/or Waymo devices of former employees upon their departure from Waymo LLC or Project Chauffeur since January

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

2009.

**REQUEST FOR PRODUCTION NO. 47:**

All documents relating to communications within and outside Waymo about the possibility of pursuing a legal action against Anthony Levandowski.

**REQUEST FOR PRODUCTION NO. 48:**

All documents relating to communications about the possibility of pursuing a legal action against Uber.

**REQUEST FOR PRODUCTION NO. 49:**

All documents relating to communications about the possibility of pursuing a legal action against Ottomotto.

**REQUEST FOR PRODUCTION NO. 50:**

All documents relating to communications about the possibility of pursuing a legal action against Otto Trucking.

**REQUEST FOR PRODUCTION NO. 51:**

All documents relating to communications about the business consequences to Waymo and/or Defendants of pursuing a legal action against Anthony Levandowski or Defendants.

**REQUEST FOR PRODUCTION NO. 52:**

Documents sufficient to show the earliest date Waymo became aware of Anthony Levandowski's "new, self-driving vehicle company" as described in Paragraph 5 of the Waymo Complaint.

**REQUEST FOR PRODUCTION NO. 53:**

All documents relating to when Waymo began investigating the possibility of Anthony Levandowski's retention of Waymo files after his departure from Waymo as alleged in the Waymo Complaint.

**REQUEST FOR PRODUCTION NO. 54:**

All versions of any employment agreements, confidentiality agreements, assignment agreements, non-compete agreements, or other agreements that Waymo requires or has required

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

employees to execute as a condition of employment since 2009, including the dates during which Waymo required each version to be executed.

**REQUEST FOR PRODUCTION NO. 55:**

All agreements between Waymo and Anthony Levandowski, including written, oral, executed, draft, or informal agreements.

**REQUEST FOR PRODUCTION NO. 56:**

All agreements between Waymo and Sameer Kshirsagar, including written, oral, executed, draft, or informal agreements.

**REQUEST FOR PRODUCTION NO. 57:**

All agreements between Waymo and Radu Raduta, including written, oral, executed, draft, or informal agreements.

**REQUEST FOR PRODUCTION NO. 58:**

All documents relating to communications regarding agreements between Waymo and Anthony Levandowski.

**REQUEST FOR PRODUCTION NO. 59:**

All documents relating to communications regarding agreements between Waymo and Sameer Kshirsagar.

**REQUEST FOR PRODUCTION NO. 60:**

All documents relating to communications regarding agreements between Waymo and Radu Raduta.

**REQUEST FOR PRODUCTION NO. 61:**

Documents relating to Waymo's financial viability, including but not limited to internal business plans, estimates, and future projections at Waymo or Project Chauffeur.

**REQUEST FOR PRODUCTION NO. 62:**

Documents relating to Waymo's performance, including but not limited to the development of and progress assessment for any schedules and milestones at Waymo LLC or Project Chauffeur.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**REQUEST FOR PRODUCTION NO. 63:**

Documents relating to complaints by or dissatisfaction from Waymo employees regarding Waymo's performance, including but not limited to the development of and progress assessment for any schedules and milestones at Waymo LLC or Project Chauffeur.

**REQUEST FOR PRODUCTION NO. 64:**

Documents relating to the hiring of John Krafcik, including documents before and after his hiring.

**REQUEST FOR PRODUCTION NO. 65:**

All documents relating to communications to or from Waymo employees reacting to the hiring of John Krafcik, including but not limited to employee complaints, notes from exit interviews, internal emails summarizing information learned from departing employees, and/or administrative or disciplinary action against John Krafcik relating to employee complaints.

**REQUEST FOR PRODUCTION NO. 66:**

All documents relating to the reason(s) for departure of any Waymo employee who thereafter became an employee of Defendants.

**REQUEST FOR PRODUCTION NO. 67:**

Documents relating to Waymo's efforts to comply with the Department of Justice's March 18, 2011 Consent Decree eliminating no solicitation agreements for employees, including any complaints from Waymo employees that it has not complied with the Consent Decree.

**REQUEST FOR PRODUCTION NO. 68:**

Documents sufficient to show any changes made by Waymo to its restrictive covenants with employees or hiring practices since the Department of Justice's March 18, 2011 Consent Decree.

**REQUEST FOR PRODUCTION NO. 69:**

Documents sufficient to show any bonus program for Waymo LLC or Project Chauffeur employees, including but not limited to specific bonuses paid out over time and to whom; related policies; practices and/or procedures; the determination, calculation, changes to, and timing of any valuations; and inquiries from participants of the plan.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**REQUEST FOR PRODUCTION NO. 70:**

All documents relating to Waymo's evaluation of Anthony Levandowski's performance, including any praise or criticism of his performance and any assessment of his value to Waymo.

**REQUEST FOR PRODUCTION NO. 71:**

Documents sufficient to show to the reason(s) for the establishment, creation, or formation of Waymo LLC.

**REQUEST FOR PRODUCTION NO. 72:**

Documents sufficient to show Google Inc.'s involvement in the operations, management, governance, and/or finances of Waymo LLC.

**REQUEST FOR PRODUCTION NO. 73:**

Documents sufficient to identify by name all former and current employees who have worked on Waymo, from 2009 to the present.

**REQUEST FOR PRODUCTION NO. 74:**

Documents sufficient to identify the dates of employment for all former and current Waymo employees from 2009 to the present.

**REQUEST FOR PRODUCTION NO. 75:**

Documents sufficient to show any joint interest or joint defense agreement that Waymo has entered into during the past three years.

**REQUEST FOR PRODUCTION NO. 76:**

Any brief or declaration provided to any court in support of a joint interest or joint defense privilege asserted by Waymo.

**REQUEST FOR PRODUCTION NO. 77:**

All documents relating to the purported value of each Alleged Waymo Trade Secret.

**REQUEST FOR PRODUCTION NO. 78:**

All documents relating to any valuation of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 79:**

All documents relating to any investments or expenditures made in order to develop each Alleged Waymo Trade Secret.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**REQUEST FOR PRODUCTION NO. 80:**

All documents relating to any investments or expenditures made in order to develop the invention(s) claimed in the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 81:**

All documents relating to secondary considerations of nonobviousness of the Asserted Patents, including the commercial success of any devices that embody the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 82:**

All documents relating to Waymo's knowledge of Ottomotto (or 280 Systems) prior to its formation, including the knowledge of or involvement in Ottomotto (or 280 Systems) of Pierre-Yves Droz or Brian Salesky, beginning at least in or around "the summer of 2015" and continuing through at least in or around January 2016.

**REQUEST FOR PRODUCTION NO. 83:**

All documents relating to Waymo's view of or reaction to the formation of Ottomotto, including but not limited to John Krafcik's August 2016 communication(s) with Uber.

**REQUEST FOR PRODUCTION NO. 84:**

All documents relating to 510 Systems' acquisition by Google, including any documents concerning technology brought by 510 Systems to Google.

**REQUEST FOR PRODUCTION NO. 85:**

All documents relating to 510 Systems' existence as a separate entity prior to its acquisition by Google, including any agreement between Google and Anthony Levandowski allowing Mr. Levandowski to create 510 Systems as a side business.

**REQUEST FOR PRODUCTION NO. 86:**

All documents supporting Waymo's contention that it is entitled to any damages for any Causes of Action in its Complaint.

**REQUEST FOR PRODUCTION NO. 87:**

All documents supporting Waymo's contention that it is entitled to treble or enhanced damages for any Causes of Action in its Complaint.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**REQUEST FOR PRODUCTION NO. 88:**

All documents supporting Waymo's contention that it is entitled to attorneys' fees or costs for any Causes of Action in its Complaint.

**REQUEST FOR PRODUCTION NO. 89:**

All documents supporting Waymo's contention that it will suffer irreparable harm in the absence of a permanent injunction against Defendants for any Causes of Action in its Complaint.

**REQUEST FOR PRODUCTION NO. 90:**

Documents relating Waymo's estimates of the size of the ride-sharing market in the United States for each of the last six years.

**REQUEST FOR PRODUCTION NO. 91:**

Documents relating to Waymo's forecasts of the size of the ride-sharing market in the United States for each of the next six years.

**REQUEST FOR PRODUCTION NO. 92:**

Documents relating to Waymo's forecasts regarding the number of Waymo's ride-sharing vehicles in the United States, for each of the next six years—broken out by U.S. city and on a quarterly basis.

**REQUEST FOR PRODUCTION NO. 93:**

Documents relating to Waymo's business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and investment plans for its ride-sharing business, including projections for revenue generation and profitability.

**REQUEST FOR PRODUCTION NO. 94:**

All documents relating to Waymo's analysis of any barriers to entry in the ride-sharing market and the status of any attempts by Waymo to overcome any such barriers, including investments and infrastructure needed.

**REQUEST FOR PRODUCTION NO. 95:**

Documents relating to Waymo's financial analysis and projections of the Waze acquisition as related to Waymo's ride-sharing business, including documents relating to Waymo's pre- and post-acquisition business plans for Waze, and any retrospective analysis of the

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

acquisition.

**REQUEST FOR PRODUCTION NO. 96:**

All documents relating to Waymo's discussion of Uber or its business.

**REQUEST FOR PRODUCTION NO. 97:**

All documents relating to Waymo's analysis of Uber's ride-sharing business.

**REQUEST FOR PRODUCTION NO. 98:**

Documents relating to the development of the placement and positions of laser diodes in Waymo's LiDAR systems.

**REQUEST FOR PRODUCTION NO. 99:**

Documents relating to the development of optical layouts in Waymo's LiDAR systems.

**REQUEST FOR PRODUCTION NO. 100:**

Documents relating to the development of transmit boards PCBs in Waymo's LiDAR systems.

**REQUEST FOR PRODUCTION NO. 101:**

Documents relating to the development of receive PCBs in Waymo's LiDAR systems.

**REQUEST FOR PRODUCTION NO. 102:**

Documents relating to the development of the design and placement of optical components for collimating light in Waymo's LiDAR systems.

**REQUEST FOR PRODUCTION NO. 103:**

Documents relating to the development of the firing circuit for light sources in Waymo's LiDAR systems, including any circuit that connects the light sources and voltage source.

**REQUEST FOR PRODUCTION NO. 104:**

Documents relating to the development of the design and use of a fiber laser in Waymo's LiDAR systems.

**REQUEST FOR PRODUCTION NO. 105:**

All documents sufficient to show the conception and reduction to practice of any invention claimed in the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 106:**

All documents supporting Waymo's contentions that Defendants infringe any asserted claim of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 107:**

All documents relating to the invalidity or validity of the Asserted Patents, including any documents supporting Waymo's contention that any asserted claim of the Asserted Patents is valid.

**REQUEST FOR PRODUCTION NO. 108:**

All documents relating to the unenforceability or enforceability of the Asserted Patents, including any documents supporting Waymo's contention that any asserted claim of the Asserted Patents is enforceable.

**REQUEST FOR PRODUCTION NO. 109:**

All documents of which Waymo is aware that constitute, comprise, or embody any prior art to the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 110:**

All documents relating to any study, analysis, review, or opinion (including opinions of counsel), conclusions, or contentions regarding the validity or invalidity of any of the claims of the Asserted Patents or any related patents, including but not limited to any studies, reports, or competitive comparisons.

**REQUEST FOR PRODUCTION NO. 111:**

All documents relating to any study, analysis, review, or opinion (including opinions of counsel), conclusions, or contentions regarding the infringement or non-infringement of any of the claims of the Asserted Patents or any related patents, including but not limited to any studies, reports, or competitive comparisons.

**REQUEST FOR PRODUCTION NO. 112:**

All documents relating to any study, analysis, review, or opinion (including opinions of counsel), conclusions, or contentions regarding the interpretation or scope of any of the claims of the Asserted Patents or any related patents, including but not limited to any studies, reports, or

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    competitive comparisons.

2    **REQUEST FOR PRODUCTION NO. 113:**

3    　　　All documents relating to any study, analysis, review, or opinion (including opinions of

4    counsel), conclusions, or contentions regarding the enforceability or unenforceability of any of

5    the claims of the Asserted Patents or any related patents, including but not limited to any studies,

6    reports, or competitive comparisons.

7    **REQUEST FOR PRODUCTION NO. 114:**

8    　　　All communications between Waymo and any third party regarding any of the Alleged

9    Waymo Trade Secrets.

10   **REQUEST FOR PRODUCTION NO. 115:**

11   　　　Documents sufficient to show any Waymo policy, procedure, or guideline, including but

12   not limited to any training, regarding the use of computers, email, or other devices for work on

13   behalf of Waymo.

14   **REQUEST FOR PRODUCTION NO. 116:**

15   　　　Documents sufficient to show any Waymo policy, procedure, or guideline, including but

16   not limited to any training, regarding access to Waymo documents, data, or information by

17   Waymo employees.

18   **REQUEST FOR PRODUCTION NO. 117:**

19   　　　Documents sufficient to show any Waymo policy, procedure, or guideline against deleting

20   documents, data, or information from Waymo computers, email, or other devices.

21   **REQUEST FOR PRODUCTION NO. 118:**

22   　　　Any versions of an employee handbook applicable to Waymo employees, from 2009 to

23   the present.

24   **REQUEST FOR PRODUCTION NO. 119:**

25   　　　Documents sufficient to show all confidentiality and/or non-disclosure agreements

26   Waymo has or has had with its vendors, suppliers, and customers, from 2009 to the present.

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1 **REQUEST FOR PRODUCTION NO. 120:**

2 Documents sufficient to show the serial number for every device issued to any Waymo
3 employee whom Waymo has alleged misappropriated Waymo confidential information, as
4 described in the Waymo Complaint.

5 **REQUEST FOR PRODUCTION NO. 121:**

6 Documents relating to, referring to, disclosing, analyzing, or summarizing Waymo's loss
7 of employees who voluntarily resigned from 2009 to the present, including but not limited to
8 communications about the reasons employees left Waymo, aggregation of data gathered in exit
9 interviews, and data about the number of employees who resigned from Waymo.

10 **REQUEST FOR PRODUCTION NO. 122:**

11 A copy of the personnel files for each of the former Waymo employees who were
12 subsequently employed by Defendants.

13 **REQUEST FOR PRODUCTION NO. 123:**

14 All documents relating to any work performed by a Waymo employee, while employed at
15 Waymo, for Anthony Levandowski's "new, self-driving vehicle company" as described in
16 Paragraph 5 of the Waymo Complaint.

17 **REQUEST FOR PRODUCTION NO. 124:**

18 All documents relating to any response by Waymo to work performed by a Waymo
19 employee, while employed at Waymo, for Anthony Levandowski's "new, self-driving vehicle
20 company" as described in Paragraph 5 of the Waymo Complaint.

21 **REQUEST FOR PRODUCTION NO. 125:**

22 Documents sufficient to show any work performed by a Waymo employee, while
23 employed at Waymo, for any Waymo Side Project or Side Business.

24 **REQUEST FOR PRODUCTION NO. 126:**

25 Documents sufficient to show any response by Waymo to work performed by a Waymo
26 employee, while employed at Waymo, for any Waymo Side Project or Side Business.

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**REQUEST FOR PRODUCTION NO. 127:**

Documents sufficient to show any work performed by a Google Inc. or Alphabet Inc. employee, while employed at Google Inc. or Alphabet Inc., for any Alphabet Side Project or Side Business.

**REQUEST FOR PRODUCTION NO. 128:**

Documents sufficient to show any response by Google Inc. or Alphabet Inc. to work performed by a Google Inc. or Alphabet Inc. employee, while employed at Google Inc. or Alphabet Inc., for any Alphabet Side Project or Side Business.

**REQUEST FOR PRODUCTION NO. 129:**

Documents sufficient to show the cost for Waymo to recruit and train any employee hired to replace one of the former Waymo employees who were subsequently employed by Defendants.

**REQUEST FOR PRODUCTION NO. 130:**

Documents sufficient to show the steps taken by Waymo to recruit and train any employee hired to replace one of the former Waymo employees who were subsequently employed by Defendants.

**REQUEST FOR PRODUCTION NO. 131:**

All documents relating to Tyto LiDAR, LLC, including but not limited to any due diligence, internal technical evaluations, or performance testing by Waymo of Tyto LiDAR, LLC.

**REQUEST FOR PRODUCTION NO. 132:**

All documents relating to Waymo's knowledge of Defendants' alleged involvement with Tyto LiDAR, LLC

**REQUEST FOR PRODUCTION NO. 133:**

All documents relating to any business relationship or rejection of any business relationship by Waymo with Tyto LiDAR, LLC.

**REQUEST FOR PRODUCTION NO. 134:**

All documents relating to the resignation of David Drummond from Uber's Board of Directors.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**REQUEST FOR PRODUCTION NO. 135:**

All documents relating to communications between Anthony Levandowski and Larry Page relating to the acquisition of 510 systems, the formation of 280 Systems or Ottomotto, and Mr. Levandowski's departure from Waymo.

**REQUEST FOR PRODUCTION NO. 136:**

All documents relating to communications between Anthony Levandowski and Sergey Brin relating to the acquisition of 510 systems, the formation of 280 Systems or Ottomotto, and Mr. Levandowski's departure from Waymo.

**REQUEST FOR PRODUCTION NO. 137:**

All documents relating to communications between Anthony Levandowski and Eric Schmidt relating to the acquisition of 510 systems, the formation of 280 Systems or Ottomotto, and Mr. Levandowski's departure from Waymo.

**REQUEST FOR PRODUCTION NO. 138:**

All documents relating to communications between Anthony Levandowski and John Krafcik relating to the acquisition of 510 systems, the formation of 280 Systems or Ottomotto, and Mr. Levandowski's departure from Waymo.

**REQUEST FOR PRODUCTION NO. 139:**

All documents relating to communications between Anthony Levandowski and Bryan Salesky relating to the acquisition of 510 systems, the formation of 280 Systems or Ottomotto, and Mr. Levandowski's departure from Waymo.

**REQUEST FOR PRODUCTION NO. 140:**

All documents relating to communications between Anthony Levandowski and Pierre-Yves Droz relating to the acquisition of 510 systems, the formation of 280 Systems or Ottomotto, and Mr. Levandowski's departure from Waymo.

**REQUEST FOR PRODUCTION NO. 141:**

All documents relating to communications between Anthony Levandowski and Waymo, including but not limited to communications with human resources personnel and communications regarding agreements and obligations between Waymo and Mr. Levandowski.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**REQUEST FOR PRODUCTION NO. 142 :**

All communications with any third parties regarding this lawsuit, including any government entities and any actual or potential customers, suppliers or investors.

**REQUEST FOR PRODUCTION NO. 143 :**

Documents sufficient to show the dates of the communications between Quinn Emanuel Urquhart & Sullivan, LLP and Waymo regarding Anthony Levandowski prior to the filing of the arbitration lawsuits in October 2016 against Mr. Levandowski.

**REQUEST FOR PRODUCTION NO. 144 :**

Documents sufficient to show the dates of the communications between Quinn Emanuel Urquhart & Sullivan, LLP and Waymo regarding Uber prior to the filing of the arbitration lawsuits in October 2016 against Mr. Levandowski.

**REQUEST FOR PRODUCTION NO. 145 :**

Documents sufficient to show the dates of the communications between any law firm and Waymo regarding Anthony Levandowski prior to the filing of the arbitration lawsuits in October 2016 against Mr. Levandowski.

**REQUEST FOR PRODUCTION NO. 146 :**

Documents sufficient to show the dates of the communications between any law firm and Waymo regarding Uber prior to the filing of the arbitration lawsuits in October 2016 against Mr. Levandowski.

Dated: May 12, 2017                          MORRISON & FOERSTER LLP


                                             By:  /s/ Arturo J. González
                                                    ARTURO J. GONZÁLEZ

                                             Attorneys for Defendants
                                             UBER TECHNOLOGIES, INC.
                                             and OTTOMOTTO LLC