Neel Chatterjee (SBN 173985)
nchatterjee@goodwinlaw.com
James Lin (SBN 310440)
jlin@goodwinlaw.com
**GOODWIN PROCTER** LLP
135 Commonwealth Drive
Menlo Park, California 94025
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

Brett Schuman (SBN 189247)
bschuman@goodwinlaw.com
Shane Brun (SBN 179079)
sbrun@goodwinlaw.com
Rachel M. Walsh (SBN 250568)
rwalsh@goodwinlaw.com
Hayes P. Hyde (SBN 308031)
hhyde@goodwinlaw.com
**GOODWIN PROCTER** LLP
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

Hong-An Vu (SBN 266268)
hvu@goodwinlaw.com
**GOODWIN PROCTER** LLP
601 S. Figueroa Street, 41st Floor
Los Angeles, California  90017
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673

*Attorneys for Defendant:  Otto Trucking LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>             Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANT OTTO TRUCKING LLC'S RESPONSE TO PLAINTIFF WAYMO LLC'S CORRECTED SUPPLEMENTAL BRIEF (DKT NO. 1501) IN SUPPORT OF ITS MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT**<br><br>Courtroom:   8 (19th Floor)<br>Judge:       The Honorable William Alsup<br>Trial:         October 10, 2017<br><br>[Redacted Version of document Sought to Be Sealed] |

Defendant Otto Trucking LLC ("Otto Trucking") hereby responds to Plaintiff Waymo LLC's ("Waymo") Corrected Supplemental Brief in Support of its Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt of the Preliminary Injunction Order (Dkt. 426) and Expedited Discovery Order (Dkt. 61) and proposed Jury Instruction, pursuant to the Court's Order dated September 11, 2017 (Dkt. 1515).  Otto Trucking also responds to the Court's Order Requiring Declarations dated September 13, 2017 (Dkt. 1536).

Waymo has provided no basis for an adverse inference against Otto Trucking despite trying several theories.  This is Waymo's third attempt to rehash issues already presented to the Court and rejected for the same reasons the Court has rejected Waymo's arguments before.  In its first attempt, Waymo argued that the defendants had failed to take all necessary steps for the return of downloaded materials.  In its second attempt, Waymo argued that Otto Trucking had failed to provide information required under the preliminary injunction order.  Otto Trucking supplemented its responses under the preliminary injunction order.  In their third try, Waymo relies on unspecified discovery violations to support its request for an adverse inference against Otto Trucking.

None of these theories support Waymo's request for an adverse inference.  *See In re Oracle Corp. Secur. Litig.*, 627 F.3d 376, 386-87 (9th Cir. 2010) ("A district court's adverse inference sanction should be carefully fashioned to deny the wrongdoer the fruits of its misconduct yet not interfere with that party's right to produce other relevant evidence.") (citation omitted); *Apple Inc. v. Samsung Elecs. Co. Ltd.*, 888 F. Supp. 2d 976, 955 (N.D. Cal. 2012) (denying request for adverse inference instruction where conduct did not significantly hamper the ability to go to trial).  Even if Waymo had shown that any conduct by Otto Trucking warranted an adverse inference, the jury instruction it now presents is not consistent with its theories.

The new facts that have come to light are Waymo's discovery misconduct, which are reason enough to deny its request for an adverse inference and a jury instruction.  From the beginning, the centerpiece of Waymo's trade secret allegations has been Anthony Levandowski's alleged improper downloading of 14,000 files from Waymo's SVN server.  *See* Complaint, at ¶¶ 4, 44.  Waymo has repeated this allegation in the majority of its papers and representations before the

1

1   Court, and it has called them the "crown jewels of the kind of technology that we are talking about

2   [autonomous driving]."  Declaration of Hong-An Vu ("Vu Decl."), Ex. 1, 8/16/17 Hr'g at 71:1-12.

3   The record now, however, shows that this was a lie.  Waymo engaged in a pattern of coverups and

4   stonewalling to prop up the central allegation in its case.  Waymo tried to hide the fact that it knew

5   its own allegations were wrong.  Because of its conduct, at the very least, no instruction is

6   appropriate as to defendants in view of Waymo's conduct.  *See* Ex. 31, 6/29/2017 Hearing Tr. at

7   87:7-16 ("Well, I want Mr. Verhoeven to know he will be in big trouble.  And if – even if I were

8   to allow you to put on some kind of stonewalling testimony, if you stonewalled, at least they're

9   going to get to reply with that kind of stonewalling evidence before the jury.  And the – poof! – up

10  going all of your theory. . . .  You can't have it both ways.  This is America.  You don't get it both

11  ways.").

12  **I.      OTTO TRUCKING HAS COMPLIED WITH THE COURT'S ORDERS.**

13          To the extent that Waymo still contends that Otto Trucking has failed to comply

14  Paragraphs 4 and 5 of the Court's Preliminary Injunction Order (Dkt. 426), Otto Trucking

15  incorporates by reference in its entirety Defendant Otto Trucking's Opposition to Plaintiff's List

16  of Defendants' Alleged Discovery Misconduct (Dkt. 1370), filed on August 25, 2017.  Otto

17  Trucking has complied with the Court's preliminary injunction order and has provided additional

18  information in response to issues and questions raised by Waymo.

19          Waymo appears to be contending that the production of Seval Oz' earrings somehow

20  amounts to discovery misconduct.  Otto Trucking responded to Waymo's accusations that it has

21  "improperly and selectively" using Mr. Levandowski's assertion of the Fifth Amendment and the

22  common interest privilege in its Opposition to Plaintiff's List of Defendants' Alleged Discovery

23  Misconduct (Dkt. 1370), and in its Opposition to Plaintiff Waymo LLC's Motion *In Limine* No.

24  16 regarding the testimony of Ms. Seval Oz and earrings made from printed circuit boards used in

25  LiDAR systems (Dkt. 1556-10).  Otto Trucking incorporates its opposition by reference.

26          At the heart of Waymo's assertion is that Mr. Levandowski produced text messages where

27  he asks Ms. Oz' about her earrings and alleges that Mr. Levandowski provided the earrings to aid

28

2

1 in the defense of Otto Trucking and Uber.  The problem with Waymo's allegation is that it

2 identifies no misconduct.  As Waymo knows, Mr. Levandowski has produced documents pursuant

3 to subpoena, including in response to a request regarding Ms. Oz's earrings.  In other

4 circumstances, he has asserted his Fifth Amendment privileges.  There is absolutely nothing

5 wrong with Mr. Levandowski asserting his Fifth Amendment rights on a question by question

6 basis.  In fact, the law requires that he do so.

7    The law is clear that a witness may "pick the point beyond which he will not go" and

8 refuse to answer questions about matters already discussed.  *See Shendal v. U.S.*, 312 F.2d 564,

9 566 (9th Cir. 1963); *In re Master Key Litig.*, 507 F.2d 292, 293-94 (9th Cir. 1974) ("The proper

10 inquiry in this case . . . is not whether [the witness] waived his privilege simply by giving

11 incriminating testimony as to certain company practices, but whether, in light of his prior

12 disclosures, the testimony sought could possibly incriminate him further.").  Waymo had the

13 opportunity to ask Mr. Levandowski about public disclosures and disclosures to third-parties of

14 Waymo's alleged trade secrets, but it chose not to do so, either through a subpoena or at a

15 deposition.  Waymo cannot now use any purported involvement by Mr. Levandowski as a basis

16 for excluding this evidence.

## II. WAYMO'S CENTRAL ALLEGATION OF DOWNLOADING FILES RESTS ON ITS DISCOVERY MISCONDUCT.

### A. Waymo Investigates Mr. Levandowski's Activities and Finds No Misconduct.

20    Google began investigating Anthony Levandowski immediately after his departure from

21 Google, with his boss, Chris Urmson, ordering an investigation by Human Resources into any

22 possible misconduct by Mr. Levandowski, including into whether "he would have looked at files

23 or downloaded things that were inappropriate for him to download."  Vu Decl., at Ex. 22.  Google

24 initiated the investigation on February 3, 2016, which included investigating whether Google's

25 trade secrets had been compromised.  *See id*. at Ex. 10; Ex. 11 at 86805.

26    Google's forensic team, Gary Brown and Kristin Gudjonsson, imaged two laptops used by

27 Mr. Levandowski at the time of his departure and analyzed them.  *See id.* at Ex. 22, Gudjonsson

28 Vol. I 198:22-199:9.  A third desktop was not preserved and Google has not offered an

3

explanation for its spoliation.  *See id.*  Mr. Brown and Mr. Gudjonsson also reviewed certain log

information regarding Mr. Levandowski's activities on the Google network. *See id.* at 172:4-

178:10.  Mr. Brown, who conducted the analysis, testified that he did not find any evidence

misappropriation of trade secrets.  *See id.* at Ex. 26, Brown PI Tr. 31:17-24; *see also* Ex. 11.

Consistent with Mr. Brown's testimony, Mr. Urmson also testified that while the investigation

identified documents Mr. Levandowski had accessed, "None of them seemed out of the ordinary."

*Id.* at Ex. 21, Urmson Tr. 182:12-16. (emphasis added).

**B.     After Learning about Uber's Acquisition of Ottomotto, Waymo Accelerates
        the Investigation with the Help of Keker Van Nest & Peters.**

In late July 2016, after a number of employees departed Google for Mr. Levandowski's

new company, Ottomotto LLC, Google renewed its investigation.  *Id.* at Ex. 9.  On or about

August 4, 2016, Keker Van Nest & Peters LLP ("Keker") began running the investigation to

determine whether any of the employees who left Google to join Otto "█████████████

███████████████████████████████████████████  *Id.* Ex. 12 at 86812

(Chauffeur Forensic Investigation Memorandum).

Waymo accelerated the investigation after Uber announced on August 18, 2016 that it was

going to acquire Ottomotto.  *See id.* at Ex. 13, Ex. 14.  Uber was ████████████████

██████████████████" and Mr. Urmson had previously written to Larry Page and Sergey

Brin, the founders of Google, that ████████████████████████████████████

████████████████████████.  *Id.*; *see also id.* at Ex. 15.

**C.     Waymo's SVN Administrator Informs Litigation Counsel that Mr.
        Levandowski's SVN Conduct is Not Suspicious.**

On September 19, 2016, Tom Gorman, an attorney at Keker, contacted Sasha Zbrozek, the

engineer who set up the SVN server to inquire about downloads from the SVN server.[1]  Mr.

Gorman also contacted Nick Vines, an engineer on Chauffeur, to inquire about downloading

activity on Google's ████████████████████████████████ervice. *Id.* at Ex. 2.  Both

---

[1] At this point, it is unknown how Mr. Gorman learned of the downloads.

4

1    responded that large downloads of data off of these repositories was normal practice and nothing

2    out of the ordinary.  *Id.*

3            On October 5, 2016, Mr. Gorman received a log of Mr. Levandowski's activities on the

4    SVN.  *Id.*  After analyzing it, he concluded that Mr. Levandowski accessed the SVN server on

5    December 11, 2015 and downloaded a large amount of data from the server, which he believed

6    was anomalous and suspicious.  *See id.*  Mr. Zbrozek repeatedly rejected Mr. Gorman's

7    interpretation, and indeed, as far back as March of 2015, when setting up the database, Mr.

8    Zbrozek characterized the SVN data as ███████████  *Id.* at Ex. 30.  For example:

9        • Mr. Gorman asked Mr. Zbrozek, "[Mr. Levandowski] only accessed the SVN the one

10           time on 12/11/2015? That's a little strange isn't it?"  Mr. Zbrozek responded, "It's not

11           particularly surprising that he might check things out once . . . It clearly wasn't part of

12           his routine.  **Doesn't ring alarm bells for me**."  *Id.* (emphasis added).

13       • Mr. Gorman asked whether the one access that Google had on record was "truly out of

14           character" or "whether we only have a short window of logs (and therefor no idea what

15           his normal work pattern was.)."  *Id.*at Ex. 2.  Mr. Zbrozek responded that the logs only

16           dated back to September or October 2015— representing just **four months**of activity

17           relating to Mr. Levandowski.  *See id.* (emphasis added).

18       • Mr. Gorman also asked what materials were contained on the SVN server, to which

19           Mr. Zbrozek responded, "It's all electronics designs – schematics and PCB layouts, and

20           the component library for their creation. It was considered **low-value** enough that we

21           even considered hosting it **off of Google infrastructure"** and indeed was hosted off

22           Google security infrastructures.  *See id.* at Ex. 2 (emphasis added); *see also* Ex. 24,

23           Janosko 8/25/17 Tr. 19:3-10 ███████████████████████████

24           ████████████████); 27:1-10).

25       • Mr. Gorman then asked, "If these schematics are considered low-value, then where is

26           the high-value stuff stored?  Sensor designs, etc."  Mr. Zbrozek responded that

27           historically, "high-value has been algorithms and software.  The hardware (at all levels)

28           was a second class citizen."  *Id.* at Ex. 2.

Based on his discussions with Mr. Zbrozek, Mr. Gorman acknowledged on October 5, 2016 that the materials allegedly downloaded by Mr. Levandowski and that are the basis of Waymo's claims in this case, "███████████████." *Id.* at Ex. 3 at 86898.

**D.      Litigation Counsel Influences the Investigation to Find Misconduct by Mr. Levandowski.**

Mr. Gorman ignored  Mr. Vines and Mr. Zbrozek's comments.  He emailed the investigators, Gary Brown, Kristinn Gudjonsson, and others telling them that ████ ██████████████████████████████████████████████████████ ████████████████████████████." *Id.*  Mr. Brown and Mr. Gudjonsson had no personal knowledge of the SVN server.  Mr. Gorman repeated this theory again in the same communication, ██████████████████████████████████████████████████ ████████████████████████████████████████████. *See id*. ████████████████ he concluded. *Id.*

When asked for the source supporting his conclusions, Mr. Gorman provided Mr. Brown the SVN log created by Mr. Zbrozek.  *Id.*  Mr. Brown testified that he then worked to "confirm" Mr. Gorman's conclusions, but he admittedly disregarded information that was "not explicitly relevant for what [they] were **trying to prove**" such as the limited data preserved related to Mr. Levandowski's SVN activities.  *Id.* at Ex. 26 Brown PI Tr. at 36:9-24; Ex. 27 Brown 30(b)(6) Tr. 229:3-231:8 (emphasis added).  Similarly, Mr. Gudjonsson accepted Mr. Gorman's accusation that Mr. Levandowski ████████████████████████████████████████████████ █████████████████████████████████ *Id.* at Ex. 3.  To reach this conclusion, Mr. Gudjonsson did not take into account the limited data available for SVN activity, and either did not investigate or ignored that Mr. Levandowski had been given two SVN passwords by Mr. Zbrozek in March 2015.  *See id*.; *see also id.* at Ex. 25, Zbrozek 9/6/17 Tr. 287:23-289:18.  This was not the first time Mr. Gudjonsson had simply accepted an allegation of wrongdoing by Mr. Levandowski that later turned out to be wrong.  *See id.* at Ex. 23, Gudjonsson Tr. 9/8/17, at 460:4-19; *see also id.* at Ex. 18 at 84575.

As the investigation progressed, Mr. Brown and Waymo's counsel knew of discrepancies and inconsistencies in the log data resulting from their internal searches.  Mr. Brown stated that ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *Id*. at Ex. 17.  Google investigators also failed to review log information from Mr. Levandowski's G Laptop or his work station computer, or to log information relating to prior downloading activity by Mr. Levandowski that may have provided exculpating theories for Mr. Levandowski's December 11, 2015 alleged downloading.  *See also id*. at Ex. 22, Gudjonsson Vol. I 198:22-199:5; *id*. at Ex. 27, Brown 30(b)(6) Tr. 58:3-16; 247:19-4; 98:3-101:19.  The analysis of log data used by Mr. Brown and Mr. Gudjonsson is also less than reliable by Mr. Brown's own admission.  *See* Ex. 17.

**E.      Waymo Hides The Identities of Key Witnesses from Discovery.**

On February 22, 2017, counsel for Google emailed Mr. Zbrozek asking for information regarding the number and size of the files Mr. Levandowski allegedly downloaded to be used as part of the Complaint.  *Id*. at Ex. 4 at 86940.  In response, in an email copying attorneys from Quinn Emanuel, Mr. Zbrozek expressed his concerns regarding Waymo's theories:

████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

*Id.* That same day, he sent counsel the SVN instructions that ████████████████████████ ████████████      *Id.* Mr. Zbrozek's concerns went unheeded by Waymo and its counsel.

Waymo filed its complaint the following day alleging that Defendants misappropriated its trade secrets based on Mr. Levandowski's alleged downloading of 14,000 files from the SVN server, the very documents that Mr. Zbrozek had said were "low-value" and that Mr. Gorman had concluded were ████████████████████."  *See* Dkt. 1.  Waymo presented a tale of suspicious activity in downloading such a large volume, when Mr. Zbrozek had made clear that this kind of downloading was simply the way the SVN system worked.  *See* Vu Decl., Ex. 2, 4.  At his deposition after the February 22 communication was produced, Mr. Zbrozek confirmed his

7

1  concerns that "█████████████████████████████████
2  ██████████████████████████████████████████████
3  ███████████ *Id.*at Ex. 25, Zbrozek 9/6 Tr. 239:17-25; 261:3-18.

4       In moving for a preliminary injunction, Waymo did not submit a declaration from Mr.
5  Zbrozek.  Instead, Waymo submitted declarations from Gary Brown and Michael Janosko—both
6  of whom lacked knowledge of how the SVN and its security systems worked.  *Id.* at Ex. 27,
7  Brown 30(b)(6) Tr. at 48:9-49:19; Ex. 24, Janosko 8/25/17 Tr. 60:19-23.  In his first deposition,
8  Mr. Brown demonstrated that he had little knowledge of the SVN server's contents and was
9  instead provided logs by Mr. Gorman to analyze and to corroborate Mr. Gorman's conclusions.
10  *Id.* at Ex. 27, Brown 30(b)(6) Tr. at 48:9-49:19; 229:3-231:8; Ex. 26, Brown PI Tr. at 36:9-24.

11       Mr. Janosko's declaration describes the advanced Google security infrastructure in an
12  effort to convince the Court that Waymo had protected its trade secrets, when in fact, the SVN
13  server is outside Google's security network.  *See* Vu Decl., Ex. 19, Janosko Dec. at ¶ 25;



19  *Id.* at Ex. 24, Janosko 8/25/17 Tr. 28:1-10.
25  ██████████████████ or attempt to access the SVN server.  However, there
26  were no security protections in place preventing him from doing so.

27       Waymo also failed to identify Mr. Zbrozek in its initial disclosures, first served on April 3,
28  2017, and amended twice by June 22, 2017.  *Id.* at Exs. 5-7.  Waymo also did not disclose Nick

8

1   Vines who had explained to Waymo's counsel how downloading the entire SVN repository was

2   normal operation.  *See id.*  Nor did Waymo disclose Tom Gorman who was heavily involved in

3   the investigation.  *See id.*  Waymo also did not include Mr. Zbrozek, Mr. Vines, or Mr. Gorman as

4   custodians for applying agreed-to search terms and did not collect or produce Mr. Gorman's or

5   Mr. Vines' documents.  *Id.* at ¶ 30.  With the exception of two documents that were simply

6   groupwide "blasts," the only documents produced from Mr. Zbrozek were produced at 8:32 p.m.

7   on the final day of discovery.  Even then, Waymo withheld numerous documents on the grounds

8   of privilege.

9        F.     **Waymo Selectively Waives Privilege to Withhold Damaging Communications**
                **that Undermine its Conclusions and Violates The Court's Orders.**
10

11       Waymo also used the attorney-client privilege as a sword and shield to disclose self-

12   serving aspects of its forensic investigation, while hiding damaging communications, like those

13   with Mr. Zbrozek and Mr. Gorman, from discovery.  *See* Dkt. 1272.  Defendants did not receive

14   unredacted versions of many critical documents regarding Waymo's investigation until September

15   2, 2017 (*i.e.* Vu Decl. Exhibits 2-4), after the fact discovery and motion to compel cut-off, after

16   key depositions had been taken, and after several rounds of motion practice.  *Id.* at ¶ 40.  After

17   Judge Corley found Waymo had waived this privilege on August 18, 2017, Otto Trucking has had

18   to request the Court's assistance in forcing Waymo to comply with the Court's order four

19   additional times, the most recent on September 6, when Waymo improperly continued to shield

20   communications that were part of its privilege waiver.  Dkt. 1479.

21       After the Court's August 18 waiver order, Waymo produced additional documents that

22   were subject to the waiver on August 24 at 8:54 p.m., about three hours before the close of fact

23   discovery.  Vu Decl. at ¶ 32.  Waymo continued to withhold information subject to the waiver

24   through redactions, which forced Otto Trucking to address the issue at an August 28 hearing

25   before Judge Corley.  On August 30, Otto Trucking again appeared before Judge Corley to address

26   Waymo's privilege logs, which included documents that were subject to the waiver.  Judge Corley

27   ordered the parties to return the next day for an in camera review of the redacted documents.  *Id.* at

28   ¶ 36; Dkt. 1412.  At that hearing on August 31, Judge Corley reviewed the redactions on the

9

1  documents that were produced post-waiver, as well as the privilege logs, and ordered additional

2  documents produced.  Vu Decl. at ¶ 37.  On September 1, 2017, however, *the day after Judge*

3  *Corley reviewed Waymo's privilege* logs, Waymo produced an extensive and additional privilege

4  log referencing more than 1,300 documents, some of which related to the forensic investigation.

5  *Id.* at ¶ 38.  On September 8, 2017, Otto Trucking sought a meet and confer and potentially court

6  intervention regarding Waymo's September 1 privilege log, but Waymo produced two additional

7  documents that same day.  *Id.* at ¶ 42.

8          In short, every time that Otto Trucking has asked the Court to intervene and order the

9  production of more documents subject to the waiver order, the Court has ordered more documents

10  produced.  Each time Waymo has made another production, the documents have revealed more

11  important information that has weakened its claims against Defendants.  *Id.* at ¶ 43.  Waymo has

12  not voluntarily complied with the Court's orders, producing documents only when repeatedly

13  compelled by the Court.

14          The disputes and Waymo's stone walling continue.   On the last day of fact discovery,

15  Waymo produced over 7200 documents, which accounts for nearly a third of their total

16  production.  Vu Decl. at ¶ 48.  And since discovery closed, Waymo has produced over 1,600

17  additional documents, some of which relate to Waymo's investigation and other discovery issues

18  the parties have been discussing.  Vu Decl. at ¶ 44.

19          Though the Court should not permit any of the evidence or inferences that Waymo

20  proposes, if the Court does allow any evidence of claimed discovery misconduct by Defendants,

21  Defendants should be allowed to respond in kind to present evidence of Waymo's discovery

22  misconduct.

23  **III.     CONCLUSION**

24

25          Waymo has failed to show that Otto Trucking has violated the Court's orders or that it is

26  entitled to a jury instruction or an adverse inference.  If anything, Waymo's discovery violations

27  and continual hiding the ball with respect to its investigation of its central allegations in this case –

28  the downloading of the 14,000 files from Google – counsel adverse inferences against Waymo.

1

Dated:  September 15, 2017

2

3

4

5

6

7

8

9

10

11

Respectfully submitted,

By:     */s/   Neel Chatterjee*
    Neel Chatterjee
    *nchatterjee@goodwinlaw.com*
    Brett Schuman
    *bschuman@goodwinlaw.com*
    Shane Brun
    *sbrun@goodwinlaw.com*
    Rachel M. Walsh
    *rwalsh@goodwinlaw.com*
    Hong-An Vu
    *hvu@goodwinlaw.com*
    Hayes P. Hyde
    *hhyde@goodwinlaw.com*
    James Lin
    *jlin@goodwinlaw.com*
    **GOODWIN PROCTER** LLP

*Attorneys for Defendant:* Otto Trucking LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

11

1

## CERTIFICATE OF SERVICE

2      I hereby certify that I electronically filed the foregoing  document including all of its

3 attachments with the Clerk of the Court for the United States District Court for the Northern

4 District of California by using the CM/ECF system on **September 15, 2017**.  I further certify

5 that all participants in the case are registered CM/ECF users and that service of the publicly filed

6 documents will be accomplished by the CM/ECF system.

7      I certify under penalty of perjury that the foregoing is true and correct.  Executed on

8 **September 15, 2017**.

9                                   /s/            *Neel Chatterjee*
                                          NEEL CHATTERJEE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1