MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:    415.268.7000
Facsimile:     415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Telephone:    202.237.2727
Facsimile:     202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@SusmanGodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019-6023

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>                    Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S RESPONSE TO WAYMO LLC'S SUPPLEMENTAL BRIEF FOR MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT OF THE PRELIMINARY INJUNCTION ORDER (DKT. 426) AND EXPEDITED DISCOVERY ORDER (DKT. 61)**<br><br>**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**I.      INTRODUCTION**

Nothing in Waymo's supplemental briefing warrants an adverse jury instruction against Uber. Uber has worked diligently and in good faith to comply with the Court's Orders and Uber's discovery obligations. As explained below, Waymo's complaints are without merit.

**II.     UBER DISCLOSED THE DEVICES AT STROZ**

Waymo seeks sanctions for Uber's alleged failure to disclose the existence of devices in the possession of Stroz whose identity has not been disclosed to Uber by Stroz, Waymo, or anyone else. Uber was not copied on the August 22 Stroz email that prompted Waymo's complaint, and as a result of Mr. Levandowski's "clawback," Waymo has not provided Uber with a copy of the email at issue, an unredacted copy of Waymo's brief citing the email at issue, or Waymo's proposed jury instruction. (*See* Dkt. 1501-4 at 2 fn.1.) Uber therefore cannot assess the specifics of Waymo's claimed basis for contempt. Nonetheless, any complaint is unfounded. All devices at Stroz that might contain "downloaded materials" were disclosed in Uber's paragraph 4 accounting: "Stroz retained all personal devices except for Mr. Levandowski's phone." (Dkt. 1170 at 7.) These devices remain under the sole control of Mr. Levandowski.

Now that the Federal Circuit has ruled that no common interest privilege applies before April 11, 2016 and the Stroz report has been produced, Uber also can confirm that Waymo's previous complaints about Uber's compliance have been without merit. With respect to the files (comprising a subset of the Stroz database) that were located at MoFo, they are almost all photos and videos; they do not include the 14,000 files. (Balassone Decl. ¶ 2.) Those files were made available to Waymo for inspection on September 14. (*Id.* ¶ 3.)

Waymo has not suffered any prejudice as a result of any alleged failure to disclose by Uber. It will receive material from Stroz imminently now that the Federal Circuit has ruled, and it has reserved and left open numerous depositions in order to question witnesses about the Stroz material. Opinion, *Waymo LLC v. Uber Techs., Inc.*, Case No. 17-2235, (Fed. Cir. Sept. 13, 2017) (ECF No. 62-2). Indeed, the August 22 Stroz email appears to have been part of efforts by Stroz to prepare to produce promptly upon the Federal Circuit's ruling.

### III.     UBER COMPLIED WITH PARAGRAPH 5 OF THE MAY 11 ORDER

Waymo's complaints about Uber's compliance with Paragraph 5 of the Court's May 11 Order are meritless. (Dkt. 426.) Uber conducted over 170 interviews, reviewed over 25,000 documents and spent over 700 hours preparing the "LiDAR log" concerning communications with Mr. Levandowski required by Paragraph 5. Although the Court's Order required only a log of communications "wherein Anthony Levandowski mentioned LiDAR," Uber erred on the side of caution and included references not just to LiDAR but to lasers, lenses, and point clouds, as well as communications where others *may* have mentioned LiDAR and related concepts to Mr. Levandowski. (Dkt. 712.) Most individuals, unsurprisingly, could not recall communications without the assistance of documents. Uber searched for relevant documents and reviewed them with interviewees. Uber, however, was in the midst of massive ongoing discovery. Since June 23, Uber has collected and reviewed hundreds of thousands of additional documents. During the course of that discovery, it identified additional information and supplemented the log as appropriate. (Dkts. 956, 1469.)

Waymo now seeks—unfairly—to turn the inclusiveness of Uber's log (upon which Waymo insisted) against Uber. But none of the allegedly delinquent messages Waymo identifies mentions LiDAR. With respect to many of the communications, it would not be clear to a reviewer that they relate to LiDAR or lasers—*e.g.* "We want to keep the 64 so we can do a-b testing." And "Let's do 1x 16 on top of the 64."). (Dkt. 1501-25 at UBER00301110, UBER00301126.) For many of Waymo's identified messages, *others* mention lasers or other laser-related concepts *to* Mr. Levandowski—*e.g.* messages from S. Boehmke: "Laser Anthony . . . I am at ATC in room 6," and "Thanks for the chat yesterday . . . Looking forward to having you out in California next week." (Dkt. 1501-23 at UBER00115396, UBER00115431; Dkt. 1501-4 at 8:19-27); messages from D. Gruver: "Yup I want to dive deeper on laser today." and "I assume we're not going to the laser dudes in ▬▬▬▬▬" (Dkt. 1501-22 at UBER00177240, UBER00177259; Dkt. 1501-4 at 8:10-13.)

Waymo also complains about the January 3, 2016 white-board session. Mr. Kalanick and Mr. Holden did not remember this meeting and they did not have calendar entries that could have

1  been used to refresh their memories.  (Balassone Decl. ¶ 4.)  The notes were not identified by
2  Uber's searches because the parties' agreed-upon search scope did not include Google Docs from
3  Messrs. Kalanick or Holden.  (*Id*. ¶ 5.)  Waymo requested the notes at 10:07 p.m. on August 23,
4  based on a link to the document in an email, (Balassone Decl. Ex. 1) and Uber promptly produced
5  them the next day.

6  There also was nothing nefarious about the timing of Uber's other productions.  Under the
7  blazingly fast discovery schedule in this case, Uber prioritized document production according to
8  the deposition schedule, striving to produce documents in advance of each deposition, which it
9  did for the most part.[1]  Waymo took the same approach, but was less effective than Uber with a
10 much smaller volume of documents.  For example, *after* their depositions, Waymo produced
11 1,624 documents for Sam Lenius, 755 documents for Pierre-Yves Droz, and 520 documents for
12 Zachary Morriss.  Waymo also produced hundreds of documents one or two days before several
13 key depositions, including those of Dmitri Dolgov, David Drummond, and John Krafcik.  Waymo
14 produced over 7,350 documents, one-third of its entire production, on the last day of discovery.
15 (González Decl. in Response to Court's Order Requiring Declarations, Dkt. 1586 at ¶ 3.)

16 Waymo has not been prejudiced by the timing of Uber's productions or Uber's good faith
17 supplementations of its log.  With respect to every cited example, Waymo has had the opportunity
18 or will have the opportunity to examine witnesses about the documents.

19 **IV.    UBER HAD NO KNOWLEDGE OF TYTO'S OWNERSHIP**
20 [REDACTED]
21 [REDACTED]
22 [REDACTED]
23 [REDACTED]
24 [REDACTED]

---

[1] Don Burnette is one of eight additional custodians Waymo requested late in discovery. The parties reached agreement on searching Mr. Burnette's emails on July 27.  Although Waymo did not request Mr. Burnette's texts, Uber obtained them from his personal phone and searched them.  These texts were not produced in time for Mr. Burnette's first deposition, but Waymo has reserved four hours for a second deposition with Mr. Burnette.

DEFS' RESPONSE TO PLF'S SUPPL. BR. FOR MOT. FOR ORDER TO SHOW CAUSE
Case No. 3:17-cv-00939-WHA
la- 1360251

1  ███████████████████████████████████████████████████████████

2  ████████████████ (Balassone Decl. Ex. 2.)

### V.  UBER HAS NOT USED MR. LEVANDOWSKI'S ASSERTION OF THE FIFTH AMENDMENT PRIVILEGE AS A SWORD AND A SHIELD

Waymo's argument that Uber is using Mr. Levandowski's assertion of the Fifth Amendment as a sword and a shield ignores the relevant chronology and confuses Mr. Levandowski's invocation of the Fifth Amendment privilege with Uber's invocation of attorney-client privilege.

At the time of the documents cited by Waymo, in early May, Uber expected that Mr. Levandowski would cooperate; he was still a company executive, and was included in meetings about the case. But the fact that he was sent a calendar invite is not evidence of cooperation. And when he failed to cooperate with the Uber's investigation, he was terminated, and he was no longer included in legal meetings about the case. (Termination Letter, Dkt. 519-2 ("First, you have not complied with the requests set forth in Uber's letter to you dated May 15, 2017 (the "Letter"). That letter requested your full cooperation in complying with the Order issued on May 11, 2017 . . . . As of today, you have not complied with these requirements.").) Uber disclosed these communications, just like it disclosed every other non-privileged communication involving Mr. Levandowski's failure to cooperate. (*See* Dkt. 978 at 3.) Waymo's assertion that Uber is "rely[ing] on privilege assertions to avoid revealing discovery into the nature or scope of [Levandowski's] cooperation" (Dkt. 1501-4 at 13) is specious. (*See* Dkt. 1506 at 2 (rejecting Waymo's "insistence that it is entitled to all privileged communications regarding Uber's efforts to get Mr. Levandowski to return Waymo's files [a]s unpersuasive and unsupported by citation to any authority"); Dkt. 874 at 3 (tentatively granting Uber's motion to exclude evidence of Uber's privilege assertions as to assertions that have not been overruled).)

The deposition testimony that Waymo cites also doesn't demonstrate that Uber is using the privilege as a sword and a shield. Mr. Levandowski invoked the Fifth Amendment in response to the following question from Uber's counsel seeking a *non-privileged* fact: "But you would not cooperate with Uber's investigation in this case, right?" (Dkt. 1493-11 at 271:13-

272:18.) In contrast, Uber's counsel gave an attorney-client privilege instruction when Waymo's counsel asked Mr. Levandowski the following questions: "*what specifically did you tell Uber* you would not do in relation to Uber's investigation in relation to this litigation?" and "*what specifically did Uber's lawyers tell you to do* in relation to Uber's investigation, in relation to this litigation, that you refused to do?." (*Id*. at 296:25-297:19, 298:24-299:2 (emphasis added).) Those questions sought information that may have been protected by the attorney-client privilege. (*See* Dkt. 1506 at 2; Dkt. 874 at 3.) And contrary to Waymo's assertion that Mr. Levandowski was instructed "not to answer on grounds of attorney-client privilege" at all (Dkt. 1501-4 at 13), Uber's counsel instructed Mr. Levandowski not to answer "*to the extent* that they're privileged communications, to not reveal the content." (Dkt. 1493-11 at 297:14-16, 299:2 (emphasis added).)

Lastly, only Otto Trucking—not Uber—was involved in the production of Ms. Oz's earrings. These facts cannot be used to support any allegations against Uber. In any event, Ms. Oz's earrings are not privileged; rather, they were a gift from one Waymo non-attorney to another. They have no bearing on any sword/shield argument. Had Waymo's counsel asked any percipient witnesses about the earrings, instead of asking Otto Trucking's counsel about the circumstances under which he obtained the earrings, no privilege issues would be implicated.

### VI. ADVERSE INFERENCE AND REMEDIAL JURY INSTRUCTIONS ARE IMPROPER

The adverse inference and remedial jury instructions requested by Waymo are improper. First, with respect to Mr. Levandowski's Fifth Amendment invocation, Uber has not "reversed" its theory of the case. Even if Uber had, that would not mean an adverse inference should run against Uber. Since at least June, Uber has repeatedly alerted Waymo that it would seek its own adverse inference against Mr. Levandowski, establishing, among other things, that he any reason he may be invoking the Fifth has nothing to do with Uber. That Uber's interests and Mr. Levandowski's interests are not aligned in his invocation of the Fifth Amendment counsels against applying an adverse inference against Uber, not for it. *See LiButti v. United States*, 107 F.3d 110, 123 (2d Cir. 1997); *Fujisawa Pharm. Co. v. Kapoor*, No. 92 C 5508, 1999 WL 543166,

at *9 (N.D. Ill. July 21, 1999) (citing cases for the proposition that "identity of interests is important element in trustworthiness of inference") (citations omitted); *Cotton v. City of Eureka*, No. C-08-04386 SBA (EDL), 2010 WL 2889498, at *4 (N.D. Cal. July 22, 2010) (rejecting adverse inference where there was "no assertion that the invocation of the privilege advances the interests of both Plaintiffs and Mr. Healy in the outcome of this litigation"); *see also* Dkt. 821 (citing case law).

Second, with respect to Ms. Oz's earrings, Waymo requests an adverse inference against Uber based solely on actions allegedly taken by Otto Trucking. Waymo cites no case for the proposition that an adverse inference can run from one defendant to another based on the first defendant's interactions with an invoking non-party, and Uber is aware of none. Moreover, Waymo is conflating the issues of Mr. Levandowski's Fifth Amendment invocation and attorney-client privilege issues, and essentially asking for an adverse inference due to an invocation of attorney-client privilege (between Otto Trucking and Mr. Levandowski) that has never been ruled invalid. The Court already rejected this argument when it refused to give an adverse inference instruction about the valid exercise of attorney client privilege. (7/26/17 Hr'g Tr. at 98:24-100:8.)

Finally, Waymo yet again confuses the Fifth Amendment privilege and the attorney-client privilege. As Uber has repeatedly noted and the Court has held, "no adverse inference shall arise from invocation of the attorney-client privilege and/or work product privilege." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004). This is true even for privilege claims that have been overruled in that case, the remedy is disclosure of the underlying information. *See Prime Media Grp., LLC v. Acer Am. Corp.*, No. 12-cv-05020-BLF, 2015 WL 527836, at *4 (N.D. Cal. Feb. 6, 2015) (where "a purported invocation of privilege is invalid, the court has the authority to compel a response, thus ensuring that the jury is not deprived of relevant evidence"); *see also* Fed. R. Civ. P. 37(a)(3)(B)(iv), (a)(5)(A)(ii) (authorizing motions to compel production of documents and prohibiting monetary sanctions if a party's nondisclosure was substantially justified); Dkt. 1546 (citing case law). Informing the jury that a party's claim was overruled is an impermissible sanction where the party has not refused to

obey the court-ordered production. (Dkt. 1546 at 2-3.) Even then, courts only inform the jury of such disobedience in "rare" cases when other sanctions have been imposed but to no avail. (*Id.*) Such a sanction is also unduly prejudicial because there is no probative value in telling the jury about an overruled privilege assertion, but only risk that the jury will improperly speculate about the motives of the party that asserted privilege. (*Id.* at 2-3.) There is no permissible inference the jury could draw from such speculation. (*See id.*)

## VII.   CONCLUSION

For the foregoing reasons, Waymo's request for adverse inference and remedial jury instructions should be rejected.

Dated: September 15, 2017          MORRISON & FOERSTER LLP


By:   */s/ Arturo J. González*
ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC