1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   425 Market Street
    San Francisco, California  94105-2482
4   Telephone:     415.268.7000
    Facsimile:     415.268.7522
5
    KAREN L. DUNN (*Pro Hac Vice*)
6   kdunn@bsfllp.com
    HAMISH P.M. HUME (*Pro Hac Vice*)
7   hhume@bsfllp.com
    BOIES SCHILLER FLEXNER LLP
8   1401 New York Avenue, N.W.
    Washington DC  20005
9   Telephone:     202.237.2727
    Facsimile:     202.237.6131
10
    WILLIAM CARMODY (*Pro Hac Vice*)
11  bcarmody@susmangodfrey.com
    SHAWN RABIN (*Pro Hac Vice*)
12  srabin@SusmanGodfrey.com
    SUSMAN GODFREY LLP
13  1301 Avenue of the Americas, 32nd Floor
    New York, NY 10019-6023
14
    Attorneys for Defendants
15  UBER TECHNOLOGIES, INC.
    and OTTOMOTTO LLC
16
                    UNITED STATES DISTRICT COURT
17
                  NORTHERN DISTRICT OF CALIFORNIA
18
                       SAN FRANCISCO DIVISION
19

20  WAYMO LLC,                          | Case No.      3:17-cv-00939-WHA

21              Plaintiff,              | **DEFENDANTS UBER
                                        | TECHNOLOGIES, INC. AND
22      v.                              | OTTOMOTTO, LLC'S MOTION FOR
                                        | SUMMARY JUDGMENT, MOTION
23  UBER TECHNOLOGIES, INC.,            | TO STRIKE TS 96, AND DAUBERT
    OTTOMOTTO LLC; OTTO TRUCKING LLC,   | MOTION
24
                Defendant.              | Date:     September 20, 2017
25                                      | Time:     8:00 a.m.
                                        | Courtroom:  8, 19th Floor
26                                      | Judge:  The Honorable William Alsup
                                        | Trial Date: October 10, 2017
27
                **UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**
28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................ 2

    A. Summary Judgment Should Be Granted on TS 96 ............................................... 2

        1. Uber does not use TS 96 as defined in Waymo's 2019.210 Statement ..................................................................................... 2

        2. Waymo should not be allowed to assert general diode positioning and beam spacing concepts through TS 96 ................................. 6

    B. TS 96 Should Be Stricken ................................................................................... 8

        1. TS 96 is not a properly identified trade secret ........................................... 8

        2. The sufficiency of Waymo's TS 96 identification is a question for the Court, not the jury ................................................... 10

    C. Dr. Hesselink's Opinion on TS 96 Should Be Excluded ................................... 10

        1. Dr. Hesselink disregards the possibility that any similarity between GBr3 and Fuji arises from general principles of optics ........................... 11

        2. Dr. Hesselink's comparison of the GBr3 curve and the Fuji curve, rather than actual diode positions, is methodologically unsound ............. 13

III. CONCLUSION ............................................................................................................ 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agency Solutions.Com, LLC v. Trizetto Grp. Inc.*,
  819 F. Supp. 2d 1001 (E.D. Cal. 2011)......................................................................................10

*Fortinet, Inc. v. Sophos, Inc.*,
  No. 13-cv-05831-EMC, 2015 WL 5971585 (N.D. Cal. Oct. 15, 2015) ..................................10

*Fortinet, Inc. v. Sophos, Inc.*,
  No. C 13-5831 EMC (N.D. Cal. Dec. 16, 2014), Dkt. 110......................................................10

*Imax Corp. v. Cinema Techs., Inc.*,
  152 F.3d 1161 (9th Cir. 1998)...................................................................................................8

*Lilith Games (Shanghai) Co. v. uCool, Inc.*,
  No. 15-CV-01267-SC, 2015 WL 4149066 (N.D. Cal. July 9, 2015)........................................10

*Metabyte, Inc. v. Canal+Techs.*,
  S.A., No. C-02-05509 RMW, 2005 WL 6032845 (N.D. Cal. June 17, 2005)..........................11

*Princess Cruises, Inc. v. Amrigon Enters., Inc.*,
  51 F. App'x. 626 (9th Cir. 2002) ..............................................................................................8

*U.S. v. Rincon*,
  28 F.3d 921 (9th Cir. 1994).......................................................................................................14

*VasoNova Inc. v. Grunwald*,
  No. C 12-02422 WHA, 2012 WL 4119970 (N.D. Cal. Sept. 18, 2012)....................................9

## I.   INTRODUCTION

Waymo began this case with broad accusations about the alleged theft of 14,000 files.  But as the Court has now seen, Waymo is reduced to peddling rumors and innuendo about a conspiracy, while ignoring the undisputed differences between its LiDAR and Uber's design:

> THE COURT: [Y]ou painted this as a gigantic conspiracy.  Well, we come to find out ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(9/6/17 Sealed Hr'g Tr. at 77:17-25.)  Because of these fundamental differences between Uber's and Waymo's designs, TS 96 should not go to the jury.  Waymo presents no evidence that the GBr3 ▮▮▮▮▮ files were in Uber's possession or were used by anyone to design the Fuji boards. The undisputed differences in the GBr3 and Fuji boards affirm that no such misappropriation occurred.  The analysis of Waymo's own expert, Dr. Hesselink, confirms that Uber does not use the specific implementation of Waymo's GBr3 ▮▮▮▮▮.  Dr. Hesselink's calculations and illustrations show that the diode positioning does not match up, even when the differing focal lengths are factored out.  Dr. Hesselink also acknowledges that the diode positioning is driven by the beam spacing, which he admits is completely different.  Accordingly, summary judgment in favor of Uber on TS 96 is appropriate.

In addition, Waymo's repeated reframing of the scope of TS 96 confirms that it is not properly identified.  As explained in Uber's prior briefing, Waymo's description of the "design schematics and layouts" in the TS 96 files does not properly identify specific alleged trade secret information from the hundreds of components and parameters in those files.  Furthermore, Waymo is not even asserting misappropriation of the specific parameters in the files, but focusing instead on a general diode positioning concept that Waymo argues is "reflected" in the TS 96 files.  (9/6/17 Sealed Hr'g Tr. at 54:18-55:24.)  Having defined TS 96 as a specific implementation of a specific board, Waymo should not be allowed now to backdoor a general

1    diode positioning concept that is not spelled out in TS 96 and is found only in other alleged trade

2    secrets that Waymo has waived.

3         Finally, Dr. Hesselink's analysis for comparing Waymo's GBr3 ███ and Uber's Fuji

4    ███ is methodologically unsound, and should be excluded under the Court's gatekeeping

5    function.

6    **II.    ARGUMENT**

7         **A.    Summary Judgment Should Be Granted on TS 96**

8              **1.    Uber does not use TS 96 as defined in Waymo's 2019.210 Statement**

9    Uber does not use the specific implementation of Waymo's ████████ claimed by

10   Waymo in TS 96.  Waymo's 2019.210 Statement identifies TS 96 as covering specific "design

11   schematics and layouts":



23   (Dkt. 25-7 at 55.)  As the Court has noted, "Waymo insists that asserted trade secret number 96

24   was adequately disclosed because it remains 'directed to *specific implementations* of Waymo's

25   trade secret LiDAR designs' as opposed to general concepts."  (9/6/17 Order, Dkt. 1485 at 1

26   (quoting Waymo Opp'n, Dkt. 1160 at 6 (emphasis in original).)  To escape Defendants' motion to

27   strike, Waymo has repeatedly insisted that TS 96 is limited to a single schematic:

28

Defs.' Mot. for Summary Judgment, Motion to Strike TS 96, and Daubert Motion
Case No. 3:17-cv-00939-WHA
dc-898735

2

We disclosed a specific schematic. This one PCB. Okay? Out of 14,000 files, we narrowed it to this one schematic. (8/23/17 Public Hr'g Tr. at 24:11-12.)

TS 96 claims one specific PCB that includes ██████████ ████████████████████ Waymo's trade secret list (served before discovery began) identified this exact PCB schematic, and identified for Defendants that one unique aspect of the schematic reflected ████████████████████████ ███████████ Dkt. 25-7 at 55. There can be little debate that the ██████████████████ as implemented by Waymo is identified in TS 96 for purposes of Section 2019. (Waymo Resp. to Suppl. Br., Dkt. 1449-4 at 4 (emphasis added).)

(*See also* 8/23/17 Sealed Hr'g Tr. at 47:8-10 ("We hear you. So what we're going to do is we're going to talk about our specific implementation of this design.").) As the Court observed during inspection of the files in question, the layouts claimed by Waymo comprise "every single box, circle, and line on that thing is the layout – selection and layout, and the required manufacturer." (8/23/17 Public Hr'g Tr. 28:8-12.) But Waymo does not point to Uber's use of any specific layout, diode position, angle, or any other specification from the GBr3 █████████ Instead, Waymo's expert, Dr. Hesselink, says only that the laser diodes ███████████████████████████ ███████████ (Chang Decl. Ex. 1, Hesselink Rpt. ¶ 432.)

Even according to Waymo's own expert, Uber did not use Waymo's specific implementation for TS 96. As purported "objective evidence of the similarity" between Waymo and Uber's designs, Dr. Hesselink plotted the laser diode positions for Waymo's GBr3 ███████ and Uber's Fuji ███████ on separate curves and overlaid them (after scaling) for comparison. (Dkt. 1357-3 at 24.) Even assuming that Dr. Hesselink's method of scaling the Fuji curve was methodologically sound (it is not), the laser diode positions do not match. (*Id.* (overlay below).)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Waymo cannot dispute that, when comparing the actual delta Y of the diodes, Fuji's diodes at the bottom of ■■■■ are spaced ■■■ farther apart than GBr3's, while its other diodes are spaced between ■■■■ farther apart than GBr3's, demonstrating that the Fuji board is not a scaled-up copy of the GBr3 board as Waymo had suggested.  (Uber Suppl. Br., Dkt. 1399-4 at 4-5 (containing chart).)

    Dr. Hesselink's second attempt in Waymo's September 5 submission, where he provided a new analysis that was not in his expert report (and therefore should not even be considered), fares no better.  In an effort to make the diode positions appear similar, Dr. Hesselink adjusts the curves of the GBr3 and Fuji diodes to remove the effect of the different focal lengths (as explained below in Section B, this is an improper adjustment).  Notwithstanding Dr. Hesselink's adjustments, the illustration still clearly shows that the diode positions *do not match*.  (*Id.* at 11.)

1
2
3
4
5
6
7
8
9
10



11   That the diode positions do not match is unsurprising.  Dr. Hesselink acknowledges that

12   diode positions on the boards are directly driven by the elevation angles chosen for the laser

13   beams.  (Hesselink Decl., Dkt. 1456-3 at ¶ 10 (

14

15   ).  Dr. Hesselink admits the elevation angles in Fuji are completely

16   different from the angles in GBr3.  (*See id.*, ¶¶ 30-31; *see also* Chang Decl. Ex. 1, Hesselink Rpt.

17   ¶ 433.)  He also admits that GBr3 and Fuji are designed to see different vertical fields of view:

18   the vertical field of view "spans from -22 degrees to approximately +8 degrees for Fuji but spans

19   only                                    ."  (Hesselink Decl. at 20.)  The differing elevation

20   angles of GBr3 and Fuji are depicted below (comparing the full 64 beams on the left; comparing

21   just the            beams on the right):

22
23
24
25
26
27
28



1    As can be seen, the GBr3 and Fuji beam spacing patterns are very different in terms of fields of

2    view, elevation angles of the beams, density of the beam spacing, and interrogation points of the

3    beams on the roadway.  Dr. Hesselink's own comparison shows that the GBr3 and Fuji designs

4    do not result in the same roadway interrogation points.  (*Id.* at 16-17.)

5    ████████████████████████, and only ██████████████████████████████████████."

6    (*Id.* at 14.)  The undisputed differences in the beam spacing patterns necessarily mean that the

7    diode positioning will be different, as evidenced by the differences reflected in Dr. Hesselink's

8    analysis.

9         In addition, Uber has pointed out many other differences between the GBr3 ████ and

10   Fuji ████ that Waymo cannot dispute  (e.g., ██████████████████████████████████

11   ██████████████████████████████████████████████████████████

12   ████████████).  (Dkt. 1461-3 at 4.)  Between Dr. Hesselink's admissions and these

13   unchallengeable differences, there can be no genuine dispute that Uber does not use Waymo's

14   GBr3 ████ implementation.

        **2.    Waymo should not be allowed to assert general diode positioning and
               beam spacing concepts through TS 96**

17        Waymo should not be allowed to manufacture a dispute about TS 96 by alleging

18   misappropriation of Waymo's general diode positioning and beam spacing strategy, which is not

19   a trade secret that Waymo chose to assert.  This attempted misdirection is clear in Waymo's Offer

20   of Proof, where Waymo contends that it spent years to figure out that ████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████ which was "reflected" in GBr3 ████.  (Offer of Proof, Dkt.

23   1357-3 at 18.)  Recognizing that Dr. Hesselink's own overlay of "scaled" GBr3 and Fuji curves

24   indisputably show that the actual diode positions do not match, Waymo now argues instead that

25   "[t]his overlay shows a strikingly similar positioning of the individual diodes . . . as well as the

26   same ████████████████████████████ provided by Anthony

27   Levandowski to Uber/Otto."  (*Id.* at 24-25 (emphasis added).)  In  a transparent attempt to shift

28   the Court's attention back to their "gigantic conspiracy" about Anthony Levandowski, Waymo

1    tries to resurrect its alleged "█████████████████" concept, despite Waymo's decision

2    not to include TS 1 (covering █████████████████) in its narrowed list of trade secrets

3    for trial.  (*Id.* at 25.)

4            Tellingly, Waymo's Offer of Proof cites communications purportedly showing that

5    Levandowski "played an active role in the development of ***'beam spacing' concepts*** for Uber

6    LiDAR," but no communications containing a single specific diode position or angle of the GBr3

7    ██████.  (*Id.* at 20-21 (emphasis added).)  In particular, Waymo makes much of an email

8    reporting that Levandowski said ████████████████████████████████" (*Id.* at 21.)  But even

9    if the concept of a beam spacing that "████████████████████ were a Waymo trade

10   secret, Waymo chose not to assert it:

11        MR. JAFFE:  [I]nstead, we see that they [Uber] adopt Waymo's
          approach, which if you remember Mr. Droz, who is not an expert –
12        he is a Waymo engineering [sic] – he explained this approach
          where Waymo figured out ████████████████████████████████
13        ████████████████████████████████████████████████████████████
          ████████████████████████████████████████████████████████████
14        ████████████████████████████████████████████████████████████
          ████████████████████████████████████████

15
          THE COURT: Was that designated as a trade secret?
16
          MR. JAFFE: That idea, yes, it was.
17
          THE COURT: In this case?  You designated that in your 2019?
18
          MR. JAFFE: That is the general idea of ████████████████████
19        that I'm paraphrasing right now and that is a trade secret on our
          trade secret list.
20
          THE COURT: Which number?  Is that being asserted in this trial?
21
          MR. JAFFE: No, it's not, Your Honor.
22

23   (9/6/17 Sealed Hr'g Tr. at 49:23-50:16.)  Waymo accuses Uber of "adopt[ing] Waymo's

24   approach" as described by the May 17 Droz Declaration, which Dr. Hesselink refers to as "the

25   ████████████ for [Waymo's] new version of a 64-beam GBr."  (*See id.*, Dkt. 453-3 at 2-3

26   (Droz description); Dkt. 1456-3 at 3.)  But Waymo made the strategic decision to assert TS 96,

27   and not others.  Waymo has asserted the specific implementation of its GBr3 ██████ and it

28

should not be allowed to assert general diode positioning or beam spacing concepts not disclosed

in TS 96.

**B.      TS 96 Should Be Stricken**

       **1.      TS 96 is not a properly identified trade secret**

Waymo's position that TS 96 covers "Waymo's ███████████" or strategy confirms that

TS 96 is not properly delineated.  Waymo has contended that "TS 96 claims one specific PCB

board that includes ████████████████████████████████████."  (Waymo Resp. to

Suppl. Br., Dkt. 1449-4 at 4.)   But for its misappropriation theory, Waymo is focusing on its

general beam spacing design, arguing that "its ███████ design included in TS 96 is unique

and different from Uber's prior designs and those known in the industry" and "the ██████

strategy embodied in TS 96" includes ██████████████████████████████████

████████████████████████ (*Id.* at 5.)  At the September 6 hearing, Waymo

admitted to the Court that the "█████████████████████████" is a *different* trade

secret that is not being asserted at trial.  (9/6/17 Sealed Hr'g Tr. at 49:10-50:16.).

Trade secret plaintiffs must "describe the subject matter of the trade secret with *sufficient*

*particularity* to separate it from matters of general knowledge in the trade or of special knowledge

of those persons . . . skilled in the trade."  *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161,

1164-1165 (9th Cir. 1998) (citation omitted; emphasis in original); *see also Princess Cruises, Inc.*

*v. Amrigon Enters., Inc.*, 51 F. App'x. 626, 628 (9th Cir. 2002) (granting summary judgment on

trade secret counterclaim where plaintiff's "generalizations concerning its database components

are insufficient to establish the necessary distinctions between its work and general knowledge in

the trade.")  Here, Waymo's Section 2019.210 statement for TS 96 contains no identification of a

███████████ strategy.  Waymo argues that its identification of ████████████████████

██████████████ is sufficient disclosure of its ███████ design."  (Waymo Resp. to Suppl.

Br., Dkt. 1449-4 at 4.)  But in *Imax*, the Ninth Circuit rejected the plaintiff's "use of the catchall

phrase 'including every dimension and tolerance that defines or reflects that design'" as

insufficiently specific.  *Imax*, 152 F.3d at 1167.  For TS 96, Waymo likewise improperly uses

1  catchall language.  (*See* Dkt. 27-5 at 55 ("For example, these details include unique and unknown

2  design characteristics such as the ███████████████████████ . . . .").)  If TS

3  96 can be interpreted to mean both "██████████████████████" and a general

4  "████████████," it should be stricken for failure to identify the trade secret with

5  sufficient particularity.

6        Moreover, as Uber has explained in its prior submissions, even limited to the specific

7  parameters defined in the TS 96 files, TS 96 is still not a properly identified trade secret because

8  it contains too many components and values without indicating which are purportedly trade

9  secrets.  TS 96 claims ██████████████████████████████

10 ████████████████████ (Dkt. 25-7 at 55.)   As the Court saw at the

11 inspection, there are ten files in this specific folder with information for each of four layers of the

12 board, including layouts of hundreds of components, the required manufacturer, and

13 manufacturing tolerances.  (8/23/17 Public Hr'g Tr. at 4:23-5:4, 18:6-17, 28:8-12, 30:13-23.)  The

14 schematics include the laser diode firing circuit that is claimed in Waymo's asserted '936 patent,

15 which clearly cannot be a trade secret.  (*Id.* at 25:17-26:22.)  Waymo's own Rule 30(b)(6) witness

16 on TS 96 testified that the files cover a "very long" list of things that have nothing to do with

17 diode positions (Chang Decl. Ex. 2, 8/3/17 Droz 30(b)(6) Dep.  288:19-290:22), and which

18 Waymo does not allege that Uber copied.

19       Instead of identifying any specific features in the "very long" list of components and

20 values that are included in the schematics, Waymo's Section 2019.210 Statement expressly uses

21 vague and non-limiting language to claim unspecified "unique and unknown design

22 characteristics."  (Dkt. 25-7 at 55 ("For example, these details include unique and unknown

23 design characteristics such as the █████████████████████ . . . .").)  This

24 is not "enough detail so that the defendant is able to learn the boundaries of the alleged trade

25 secret in order to investigate defenses."  *VasoNova Inc. v. Grunwald*, No. C 12-02422 WHA,

26 2012 WL 4119970, at *2 (N.D. Cal. Sept. 18, 2012).  As drawn in Waymo's Section 2019.210

27 Statement, TS 96 should be stricken for vagueness.

28

1

2

**2.     The sufficiency of Waymo's TS 96 identification is a question for the Court, not the jury**

3      Waymo's argument that disputes over the identification of TS 96 are solely questions of

4   fact for the jury ignores decisions to the contrary.  (*See, e.g.*, Waymo Resp. to Suppl. Br., Dkt.

5   1449-4 at 5-6, 8-9.)  In *Agency Solutions*, the district judge explained that "a particularized

6   description of an alleged trade secret is a ***duty owed to the court***" such that the court can "reject a

7   claim that information is a trade secret *sua sponte* if the information is not identified . . . with

8   sufficient particularity to allow the court to determine what the information is." *Agency*

9   *Solutions.Com, LLC v. Trizetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011).  In

10   *Fortinet*, even after defendant "accepted [plaintiff's] trade secret disclosure for discovery

11   purposes," the "primary question for the Court [was] whether the trade secret disclosure is

12   sufficiently specific such that [defendant] can adequately defend itself." *Fortinet, Inc. v. Sophos,*

13   *Inc.*, No. 13-cv-05831-EMC, 2015 WL 5971585, at *2 (N.D. Cal. Oct. 15, 2015).  The *Fortinet*

14   court conducted this assessment after the close of discovery, but three months before trial.  *Id.* at

15   *2-3; *see* Case Management & Pretrial Order for Jury, *Fortinet, Inc. v. Sophos, Inc.*, No. C 13-

16   5831 EMC, (N.D. Cal. Dec. 16, 2014), Dkt. 110.  Waymo's September 1 response relies on *Lilith*

17   *Games,* but that case confirms that Section 2019.210 is not only about constraining discovery;

18   rather, Section 2019.210 "enables defendants to form complete and well-reasoned defenses,

19   ensuring that they need not wait until the eve of trial to effectively defend against charges of trade

20   secret misappropriation." *Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC,

21   2015 WL 4149066, at *4 (N.D. Cal. July 9, 2015).

22      Under the weight of the authority, whether Waymo identified TS 96 with sufficient

23   particularity is a question for the Court.  On the facts here, where Waymo is trying to shoehorn all

24   manner of supposed trade secrets into the rubric of a specific folder of files, it is especially

25   important that the Court exercise its authority and strike the claimed trade secret.

26      **C.     Dr. Hesselink's Opinion on TS 96 Should Be Excluded**

27      Dr. Hesselink's opinion on TS 96 should be excluded under the Court's gate-keeping

28   function, in order to avoid mischief and confusion of the jury.  First, he disregards alternative

1  explanations for similarities between the two boards—i.e., that two different beam spacing

2  patterns designed to illuminate points farther and farther down a road will have laser diodes

3  positioned ███████████████. Second, his comparison of the GBr3 and Fuji curves is

4  methodologically unsound. "[A]ny step that renders [an expert's] analysis unreliable . . . renders

5  the expert's testimony inadmissible. That is true whether the step completely changes a reliable

6  methodology or merely misapplies that methodology." *Metabyte, Inc. v. Canal+Techs.*, S.A., No.

7  C-02-05509 RMW, 2005 WL 6032845, at *2 (N.D. Cal. June 17, 2005) (granting motion to

8  exclude testimony because expert's "direct ratio" analysis for valuing equity was flawed and

9  lacked external support). Waymo cannot meet its burden of demonstrating the admissibility of

10  Dr. Hesselink's TS 96 opinion, and any probative value of this opinion is outweighed by the

11  danger of unfair prejudice and misleading the jury.[1]

### 1. Dr. Hesselink disregards the possibility that any similarity between GBr3 and Fuji arises from general principles of optics

14  Even if one were to accept Dr. Hesselink's analysis that GBr3 and Fuji boards appear

15  similar because the ████████████████████████████████████████

16  ███████████████ Dr. Hesselink disregards an alternative explanation for this alleged similarity –

17  namely, that any beam spacing pattern designed to maintain an adequate vertical resolution in the

18  far field vs. the near field will have beams (and therefore diodes) spaced more ████████ for

19  the far field than the near field.

20  Dr. Hesselink agrees with Uber that the relationship between the beam angle and a point

21  on a flat road is a simple trigonometric function:

22  Tangent(beam angle from horizontal) = sensor height / downrange
23  distance.

---

[1] Dr. Hesselink also fails to apply the Section 2019.210 statement's definition of TS 96 as the specific implementation in the cited files. (Dkt. 25-7 at 55.) In his report, he does not cite evidence showing that Uber used the actual GBr3 transmit ███████ schematics and layouts from the folder. He does not cite any evidence that Uber ever possessed these files or that any engineers at Uber made use of them to design Fuji. Furthermore, he admits that the laser diode positions and angles are "different reflecting a number of difference in design choices" (e.g., height of LiDAR from ground, desired vertical resolution, downward tilt angle of cavity, and lens parameters). (Chang Decl. Ex. 1, Hesselink Rpt. ¶ 433.)

(*See* Uber Resp. to Court Questions, Dkt 337-3 at 2; Hesselink Decl., Dkt. 1456-3 at 30.)  As a matter of trigonometry, the beam angles required for illuminating evenly-spaced points on a road farther and farther from the lens will progressively become ███████ spaced.  (*See* Uber Resp. to Court Questions, Dkt 337-3 at 2-3.)  Likewise, the vertical spacing of the corresponding diodes for sampling points in the far field would become ████████████████████.  The Court has referred to this as Optics 101.  (5/11/17 PI Order, Dkt. 426 at 17.)

Gbr3 and Fuji have different beam spacing designs (i.e., different elevation angles, different VFOVs), but they are both designed to have ████████████ for the far field (laser beams aimed more towards the horizon) than for the near field (laser beams aimed more downward).  While they are not designed to have beams landing at evenly-spaced points on the ground, the landing points will be ████████████ in the near field than in the far field, due to the trigonometry described above.  This is also true for the pioneering Velodyne HDL-64, which has a ████████████ for the far field than the near field.  The illustration on the left below depicts the HDL-64 beam spacing (in blue).  As can be seen, the manner in which the beams interrogate the ground is similar to the GBr3 pattern (on the right in red), with beams hitting ████████████ in the near field and farther apart in the far field.  As can be seen in the illustrations of the Fuji pattern earlier in this brief, Fuji also has that general ground pattern.



Dr. Hesselink failed to consider whether any similarity in the ████████████ spacing of diodes between GBr3 and Fuji simply reflects the similar goals of maintaining adequate vertical resolution in the far field embraced by Velodyne, Waymo, and Uber, which results in some general similarities in the beam patterns of all three LiDARs in accordance with

Defs.' Mot. for Summary Judgment, Motion to Strike TS 96, and Daubert Motion
Case No. 3:17-cv-00939-WHA
dc-898735

12

1   the general principles of optics.  Although Dr. Hesselink purports to justify his conclusion that

2   Fuji ██████ is derived from GBr3 ██████ based on such ████████████████ spacing, he

3   disregards this alternative explanation.  This unsupported opinion should therefore be excluded.

              **2.**      **Dr. Hesselink's comparison of the GBr3 curve and the Fuji curve, rather than actual diode positions, is methodologically unsound**

6         Dr. Hesselink's comparison of the GBr3 curve and the Fuji curve, rather than the actual

7   diode positions (which do not match), is methodologically unsound and should be kept away from

8   the jury.  As the Ninth Circuit has noted, courts must exercise their *Daubert* gatekeeper function

9   because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in

10  evaluating it."  *U.S. v. Rincon*, 28 F.3d 921, 925 (9th Cir. 1994).  Here, Dr. Hesselink intends to

11  rely on the overlay of a scaled Fuji curve and a GBr3 curve to opine that the "shape of the two

12  curves are strikingly similar," notwithstanding the different positions of the diodes even in the

13  scaled overlay.  (Dkt. 1357-3 at 24.)

14        This is a bogus comparison.  TS 96 claims the specific "schematics and layouts" of GBr3

15  ████████, but Dr. Hesselink ignores the actual diode positions in the schematics in favor of

16  imaginary curves drawn to fit the ████████████ of the diodes.  Such curves are simply

17  approximations of the Petzval curves of each transmit lens.  Dr. Hesselink admits that the Petzval

18  curve is defined by the focal length, refractive index (based on lens material), and lens shape of

19  each lens.  (Hesselink Decl. ¶ 12.)  In both GBr3 and Fuji, ████████████████████████

20  ████████████████████ (Chang Decl. Ex. 1, Hesselink Rpt. ¶ 387; Hesselink Decl. ¶ 14-

21  15.)  The difference in focal length necessarily means that the Petzval curvatures are different,

22  which is one reason why the positioning of diodes are different (the other reason is that the beam

23  angles to which the diode positioning corresponds are different).  Dr. Hesselink's analysis

24  removes this difference by factoring out the focal length, ostensibly to compare the curves to see

25  if one is a scaled version of the other.  By comparing the curves with the focal lengths factored

26  out, Dr. Hesselink is merely showing that Petzval curves of the same focal length will be the

27  same.  This artificial comparison of *curves* does not establish that the *diode positioning* is the

28  same.  It is undisputed that the laser diodes do not match even in these scaled curves.

1    For these reasons, Dr. Hesselink's overlay of scaled *curves*, rather than just diode

2    positions, has no probative value.  Allowing Dr. Hesselink to present his overlay of the curves

3    would only mislead the jury into thinking the *curves* were copied from TS 96's claimed

4    schematics, when it is the actual diode positions that are in dispute.  Dr. Hesselink's comparison

5    of the curves should be excluded from presentation to the jury.

6    ## III.    CONCLUSION

7    Waymo can try to have it one way: assert a broadly-claimed trade secret that is harder to

8    defend as a trade secret but for which it may be easier to show Uber's use.  And it can try to have

9    it the other way: assert a narrowly-drawn trade secret – such as to an exact specification – that

10   may be easier to defend as a trade secret but for which it would be harder to show actual use.  But

11   Waymo can't have it both ways – assert that an exact specification constitutes its trade secret for

12   purposes of defending its trade-secret status, yet claim that it can prove use of that trade secret

13   merely if general concepts reflected in that specifications are utilized.

14   Having it both ways, however, is precisely what Waymo is attempting here.  This Court

15   expressed doubts about the validity of Waymo's original, broadly-worded ███████ trade

16   secret, TS 1.  Waymo thus retreated to TS 96 and claimed that the exact diode placement in the

17   TS 96 specification constituted its trade secret.  Yet Waymo cannot maintain, with any credibility,

18   that Uber utilizes the same diode placement as in TS 96.  So now Waymo claims that Uber's

19   diode placement generally reflects the concepts of its trade secret – which is the broad idea of TS

20   1 from which Waymo fled.   So long as this Court does not permit Waymo to assert two

21   inconsistent trade secrets (one broad and one specific) at the same time, then the summary

22   judgment issue here is easy.  TS 96 claims a specific diode placement.  Indisputably, Uber does

23   not use that specific diode placement.  Summary judgment must follow.

24   Furthermore, TS 96 is an improperly identified trade secret that should be stricken, and

25   the Court should exercise its gatekeeper role to exclude Dr. Hesselink's opinions on TS 96.

26

27

28

Defs.' Mot. for Summary Judgment, Motion to Strike TS 96, and Daubert Motion
Case No. 3:17-cv-00939-WHA
dc-898735

14

Dated: September 11, 2017                     MORRISON & FOERSTER LLP


                                       By:    /s/ Michael A. Jacobs
                                              MICHAEL A. JACOBS

                                              Attorneys for Defendants
                                              UBER TECHNOLOGIES, INC.
                                              and OTTOMOTTO LLC