# EXHIBIT 6

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

```
           UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF CALIFORNIA
              SAN FRANCISCO DIVISION


_____
                                   )
WAYMO LLC,                         )
                                   )
              Plaintiff,           )
                                   )
       vs.                         )  Case No.
                                   )  3:17-cv-00939-WHA
UBER TECHNOLOGIES, INC.,           )
OTTOMOTTO LLC; Otto                )
Trucking LLC,                      )
                                   )
              Defendants.          )
_____)




    HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

      VIDEOTAPED DEPOSITION OF NINGJUN QI

           San Francisco, California

           Thursday, April 21, 2017

                   Volume I




Reported by:   SUZANNE F. GUDELJ
CSR No. 5111

Job No. 2644340

PAGES 1 - 320
```

1  approach to how to quantify that?

2     A    Yes, or anything on this page.

3     Q    Did they -- what -- after getting their
4  feedback, how did you change your approach?

5          Or let me -- after getting feedback, did    03:01:51
6  you change your approach?

7     A    I tried to.

8     Q    And how did you do that?

9     A    We looked -- I tried to quantify the value
10 of an AV acceleration.  So call it in one to two     03:02:05
11 years, what would that look like for Uber business
12 model without that and with that.

13    Q    And what was the result of that?

14    A    There was value in accelerating the AV
15 development, but ultimately, no one reviewed those   03:02:30
16 slides.  And after I completed the exercise, it was
17 never talked about again.

18    Q    Are you aware of whether Uber relied on any
19 of your valuations in assessing whether to acquire
20 Otto?                                                03:02:54

21         MR. JACOBS:  Objection.  Form.  Vague as to
22 "valuations."

23         THE WITNESS:  What specific?

24 BY MS. ROBERTS:

25    Q    Well, you just mentioned that you revised   03:03:02

Page 218

1  the slides but no one ever reviewed those slides.
2  Did you create any other slides to reflect the value
3  to Uber of acquiring Otto?
4       A    Yes.
5       Q    And who were those slides presented to?        03:03:20
6       A    One version was presented to Travis and
7  Emil, and I believe Cam was also in the room.
8       Q    The -- the -- the slide that's Exhibit 297,
9  that was not presented to anybody other than John
10 and Brian?                                               03:03:49
11      A    Yes, that is correct.  And it was not a
12 presentation.  I just wanted them to review it.
13      Q    Okay.
14           MS. ROBERTS:  We're going to mark as
15 Exhibits 298 and 299.  Exhibit 298 begins with Bates     03:04:21
16 No. UBER00069029.  Exhibit 299 begins with Bates
17 number UBER00069030.
18           (Deposition Exhibit 298 marked by the court
19           reporter.)
20           (Deposition Exhibit 299 marked by the court
21           reporter.)
22           MS. ROBERTS:  Okay to keep going?
23           MR. JACOBS:  Can we -- it's at the hour.
24           MS. ROBERTS:  Oh, okay.
25           VIDEO OPERATOR:  Break?  Take a break?         03:05:23

```
 1      Q    And overall, under all of these scenarios,
 2   did Uber expect that acquiring Mr. Levandowski's
 3   company that he was going to found would accelerate
 4   Uber's autonomous vehicle development?
 5      A    Yes.  This is my assessment that yes, he        03:18:27
 6   would.  So this is -- it's different.  So this
 7   assessment is not to prove that he would accelerate
 8   AV development.  This assessment shows what happens
 9   or attempts to quantify the value of what would it
10   look like if AV development was accelerated by one     03:18:50
11   to two years.
12      Q    Okay.  And if you look at the cover email
13   that's Exhibit 298, you -- in that first paragraph,
14   last sentence, you say that "the numbers are very
15   compelling."  Was that referring to the numbers on     03:19:05
16   that last page of Exhibit 299?
17      A    Yes.
18      Q    And what is it about these numbers that is
19   very compelling?
20      A    At that time, we had an idea of how much we    03:19:21
21   think we needed to pay for the NewCo business, and
22   it looked like the benefit of paying for that, due
23   to our assumption that it could help accelerate AV
24   development by one to two years, outweighed the cost
25   it would take for us to acquire the company.          03:19:49
```

```
 1     Q    So your assessment was the value of
 2   acquiring NewCo exceeded the cost for doing so?
 3     A    If it was able to help us shorten our AV
 4   timeline by one to two years.  Again, this is my own
 5   assessment and ultimately was not used in any forum.    03:20:13
 6     Q    If you turn to the page that ends in 69032
 7   of Exhibit 299, what is this slide supposed to
 8   reflect?
 9     A    This reflects what the market is willing to
10   pay for LiDAR-related companies.                         03:20:56
11     Q    And you testified earlier that the -- next
12   to Google, the valuation of ▮▮▮▮▮▮▮▮ that's
13   information that you obtained from Mr. Levandowski?
14     A    Yes, that's correct.
15     Q    How did you know the number of employees in   03:21:14
16   Google's self-driving car unit?
17     A    It likely came from Anthony as well.
18     Q    How did you know the average payout for the
19   employees in Google's self-driving car unit?
20     A    I think I just did the math.  Maybe not.       03:21:44
21   It was either just doing division, or it was
22   maybe -- it was something that Anthony told us.
23     Q    If you turn to the slide that ends in 031
24   of Exhibit 299 --
25     A    Mm-hmm.                                         03:22:12
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  　　　　　I, the undersigned, a Certified Shorthand
2  Reporter of the State of California, do hereby
3  certify:
4  　　　　　That the foregoing proceedings were taken
5  before me at the time and place herein set forth;
6  that any witnesses in the foregoing proceedings,
7  prior to testifying, were duly sworn; that a record
8  of the proceedings was made by me using machine
9  shorthand which was thereafter transcribed under my
10 direction; that the foregoing transcript is a true
11 record of the testimony given.
12 　　　　　Further, that if the foregoing pertains to
13 the original transcript of a deposition in a Federal
14 Case, before completion of the proceedings, review
15 of the transcript [X] was [ ] was not requested.
16 　　　　　I further certify I am neither financially
17 interested in the action nor a relative or employee
18 of any attorney or party to this action.
19 　　　　　IN WITNESS WHEREOF, I have this date
20 subscribed my name.
21 Dated: 6/23/2017
22
23 　　　　_Suzanne F. Gudelj_
24 　　　　SUZANNE F. GUDELJ
25 　　　　CSR No. 5111

Page 320