# EXHIBIT 14

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# EXHIBIT 14

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1                 UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                   SAN FRANCISCO DIVISION

4

5     WAYMO LLC,                      )

6               Plaintiff,           )

7          vs.                        ) Case No.

8     UBER TECHNOLOGIES, INC.;        ) 3:17-cv-000939-WHA

9     OTTOMOTTO LLC; OTTO TRUCKING,  )

10    INC.,                          )

11               Defendants.         )

12    _____)

13        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

14

15      VIDEOTAPED DEPOSITION OF KRISTINN GUDJONSSON

16                 Palo Alto, California

17                Friday, July 28, 2017

18                      Volume I

19

20    Reported by:

21    CARLA SOARES

22    CSR No. 5908

23    JOB No. 2665814

24

25    PAGES 1 - 242

                                          Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q   Did you check the work described in | 15:11:20 |
| 2 | paragraph 17? | |
| 3 | A   Yes. | |
| 4 | Q   Do you recall when? | |
| 5 | A   No. | 15:11:28 |
| 6 | Q   Did you check the work described in | |
| 7 | paragraph 18? | |
| 8 | A   Yes. | |
| 9 | Q   Do you recall when? | |
| 10 | A   No. | 15:11:34 |
| 11 | Q   Did you check the work described in | |
| 12 | paragraph 19? | |
| 13 | A   Yes. | |
| 14 | Q   When? | |
| 15 | A   Not sure. | 15:11:43 |
| 16 | Q   Did you check the work described in | |
| 17 | paragraph 20? | |
| 18 | A   Yes. | |
| 19 | Q   When? | |
| 20 | A   Not sure. | 15:11:54 |
| 21 | Q   In any of your checks for that work, did | |
| 22 | you disagree with Mr. Brown? | |
| 23 | A   No. | |
| 24 | Q   In your experience, is it unusual for a | |
| 25 | Google engineer to download 14,000 files from an SVN | 15:12:27 |

Page 184

```
 1    repository?                                        15:12:32

 2          MR. BAKER:  Objection to form.

 3          THE WITNESS:  I wouldn't know.

 4    BY MR. TAKASHIMA:

 5       Q   When you connect for the first time to an   15:12:37

 6    SVN repository, does that download all the files in

 7    that repository?

 8       A   Depending on how you do it, you might

 9    track a particular directory or the whole project.

10       Q   Does Google have any systems that raise an   15:12:55

11    alert when a large number of files are downloaded by

12    a Google employee?

13       A   ████████████████████████████

      ███

      █    ███████████████████████    ████████

      █    ████████████████████

      █    ████████████████████████████

      █    ████████████████████████

      ██████████████████████

      █    ████████████████████████    ████████

      ███████████████████████

      █    ████████████████████████

      ████████████████████████████

      ████████████████████████    ██████████

      ███████████    ████████████          15:13:57

                                          Page 185
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    today, you are not aware of any evidence that                15:29:57

2    Mr. Levandowski copied files off the computer before

3    it was reimaged?

4           MR. BAKER:  Objection to form.

5           THE WITNESS:  I can only tell you what's          15:30:06

6    in the declaration here, what we see here.

7    BY MR. TAKASHIMA:

8        Q   To your knowledge, has there been any

9    investigation of Mr. Levandowski's e-mail account at

10   Google?                                                  15:30:53

11       A   I'm not sure.

12       Q   To your knowledge, has anybody connected

13   with an investigation reviewed the contents of

14   Mr. Levandowski's e-mail account at Google?

15       A   I'm not sure.                                    15:31:05

16       Q   Who would know?

17       A   Lawyers.

18       Q   Would anybody else in digital forensics

19   know?

20       A   Potentially, but probably not.  It             15:31:22

21   probably would have been me if that check was made.

22       Q   Have you conducted -- been involved in any

23   review of Mr. Levandowski's workstation from Google?

24       A   The workstation, no.

25       Q   Has anybody else from digital forensics        15:31:42

                                                             Page 198

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    conducted that investigation?                        15:31:44

 2         A    No.

 3         Q    Has anybody looked at Mr. Levandowski's

 4    workstation?

 5         A    Not to my knowledge.                        15:31:49

 6         Q    Has the workstation been preserved?

 7         A    Not to my knowledge.

 8         Q    Okay.  Has it been deleted?

 9         A    I'm not sure.  I would have to go check.

10         Q    Did you ever discuss with anybody          15:32:07

11    investigating Mr. Levandowski's workstation?

12              MR. BAKER:  Again, I just want to caution

13    the witness not to disclose any communications that

14    he's had with attorneys.

15              If you have a question, we can go outside.  15:32:22

16              MR. TAKASHIMA:  Do you want to take a

17    break?

18              THE WITNESS:  Yes.  Let's do that.

19              THE VIDEO OPERATOR:  We are now going off

20    the record, and the time is 3:32.                    15:32:31

21              (Recess, 3:32 p.m. - 3:39 p.m.)

22              THE VIDEO OPERATOR:  We're now going back

23    on the record, and the time is 3:39.

24    BY MR. TAKASHIMA:

25         Q    Did you ever discuss with anybody whether   15:39:05
```

Page 199

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    whether or not, because we didn't have the logs that        15:42:40

2    would be pointing us towards that.

3         Q   Did Mr. Brown have any inclination one way

4    or the other as to --

5         A   You would have to ask him.                          15:42:50

6         Q   Did he have any -- did Mr. Brown express

7    to you whether he thought it would be a good idea to

8    investigate Mr. Levandowski's workstation?

9         A   I don't remember.

10        Q   Did you discuss with Ms. Bailey whether to          15:43:04

11   investigate Mr. Levandowski's workstation?

12        A   I do think so, yes.

13        Q   Okay.  What did you say?

14        A   "Should we look at his workstation?"

15   (Question not answered per instruction of counsel):          15:43:17

16        Q   Okay.  What did she say?

17            MR. BAKER:  Objection.  I'm going to

18   object as attorney-client privileged and instruct

19   the witness not to answer.

20   BY MR. TAKASHIMA:                                             15:43:24

21        Q   Is Ms. Bailey an attorney?

22        A   Not to my knowledge, but I do believe

23   there was an attorney present at the time as well.

24   (Question not answered per instruction of counsel):

25        Q   Okay.  Did Ms. Bailey express an opinion            15:43:32
```

Page 203

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    as to whether Mr. Levandowski's workstation should      15:43:44

 2    be investigated?

 3             MR. BAKER:  Same objection.

 4             Counsel, my understanding is that these

 5    conversations were -- were -- an attorney was            15:43:51

 6    present for these conversations, so I'm going to

 7    object as attorney-client privileged and work

 8    product and instruct the witness not to answer.

 9             MR. TAKASHIMA:  Okay.  You're not going to

10    allow him to say yes or no?                              15:44:04

11             MR. BAKER:  I'm sorry?

12             MR. TAKASHIMA:  You're not going to allow

13    him to say yes or no; is that correct?

14             MR. BAKER:  What was the question again?

15             MR. TAKASHIMA:  The question is --            15:44:10

16             MR. BAKER:  Did Ms. Bailey express an

17    opinion as to whether Mr. Levandowski's work --

18    yeah, I'm not going to allow him to answer that

19    question.

20             MR. TAKASHIMA:  Okay.                         15:44:18

21        Q    If you and Mr. Brown had not received any

22    input from counsel or Ms. Bailey, would you have

23    investigated Mr. Levandowski's workstation?

24             MR. BAKER:  Hold on one second, Kris.

25             Objection to form.  I'll allow you to         15:45:11
```

Page 204

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        A   Yes.                                    15:50:07

 2        Q   What devices were there?

 3        A   That is logged in our machine records.

 4        Q   Okay.  Did the ████████ data identify that

 5   he had a workstation?                            15:50:18

 6        A   Yes.

 7        Q   And did it identify that he had a -- the W

 8   machine?

 9        A   Yes.

10        Q   And the G machine?                      15:50:26

11        A   Yes.

12        Q   Anything else?

13        A   I don't remember.

14        Q   But that would be in the machine record?

15        A   Yes.                                    15:50:36

16        Q   TortoiseSVN was installed on the W machine

17   sometime in December 2015, correct?

18        A   If that's the date that's in the

19   declaration, then yes.

20        Q   There we go.  Paragraph 16.             15:51:20

21        A   Yes.  December 11th.  Yes.

22        Q   Did you check any records to determine if

23   TortoiseSVN had previously been installed prior to

24   that date?

25        A   That's something that Gary did.          15:51:38
```

Page 209

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1          Q    So you did not?                        15:51:42

 2          A    No.  Gary would have done that.

 3          Q    Did you check any logs for the Waymo SVN

 4     repository to determine whether Mr. Levandowski had

 5     accessed that repository prior to December 2015?    15:52:00

 6          A    I did not.

 7          Q    Mr. Brown did that analysis?

 8          A    Yes.

 9          Q    Did Mr. Brown have TortoiseSVN installed

10     on his workstation?                               15:52:17

11          A    Sorry?

12          Q    I'm sorry.  I apologize for that

13     question.

14               Did Mr. Levandowski have TortoiseSVN

15     installed on his workstation?                     15:52:23

16          A    Not to my knowledge.

17          Q    Did you check?

18          A    I'm not sure.

19          Q    Have you ever conducted any kind of check

20     on his workstation?                               15:52:35

21          A    I might have, but not to my recollection.

22     But that would probably have been Gary that did

23     that.

24          Q    That checked his workstation?

25          A    Yes.                                    15:52:49
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        Q    What else did Mr. Brown do with        15:52:49

 2   Mr. Levandowski's workstation?

 3        A    You would have to ask him.

 4        Q    Was Mr. Levandowski's workstation imaged?

 5        A    No.                                     15:52:59

 6        Q    Why not?

 7             MR. BAKER:  Objection.  Why don't we step

 8   outside.

 9             THE WITNESS:  Okay.

10             THE VIDEO OPERATOR:  Going off the record,   15:53:11

11   and the time is 3:53.

12             (Recess, 3:53 p.m. - 3:55 p.m.)

13             THE VIDEO OPERATOR:  We're now going back

14   on the record, and the time is 3:55.

15   BY MR. TAKASHIMA:                                15:55:26

16        Q    We were discussing Mr. Levandowski's

17   workstation, right?

18        A    Yes.

19        Q    And you explained that Mr. Levandowski's

20   workstation was not imaged, correct?             15:55:31

21        A    Not to my knowledge.

22        Q    Why not?

23             MR. BAKER:  Objection to form.

24             THE WITNESS:  I wouldn't know why not.

25   (Question not answered per instruction of counsel):   15:55:41
```

Page 211

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    BY MR. TAKASHIMA:                                    15:55:42

 2         Q   Did you ever discuss with anybody whether

 3    to make an image of the workstation?

 4         A   Again, it goes back to discussions with

 5    lawyers.                                             15:55:49

 6              MR. BAKER:  I'll instruct the witness not

 7    to answer.

 8    BY MR. TAKASHIMA:

 9         Q   Okay.  Are there any playbooks within

10    digital forensics that address ███████████   ███████

██    ████████████████████████████████████████

██    ██████████

13         A   Sorry.  Can you clarify more what you mean

14    by that?

15         Q   Sure.                                       15:56:27

16              Earlier today, we discussed playbooks.

17         A   Yes.

18         Q   You have that in mind?

19         A   Yes.

20         Q   Okay.  Are there any playbooks that        15:56:31

21    address ██████████████████████████████████

██    ████████████████████████████████████

██    ████████████████

██           █  ██████████████

██           █  ████████████████████           15:56:45
```

Page 212

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    people with proper credentials are downloading?        16:23:23

 2        A    What documents?

 3        Q    Any documents that Google maintains in a

 4    repository.

 5             MR. BAKER:  Objection to form.              16:23:31

 6             THE WITNESS:  Are you talking about code?

 7    Are you talking about Word documents or Google Docs?

 8    BY MS. HYDE:

 9        Q    Sorry.  Let me be more clear.

10             When an employee wants to, say, download a    16:23:41

11    document that they're working on from the SVN

12    server --

13        A    So you're talking about code?

14        Q    Yes -- what are the permissions for doing

15    that?                                                 16:23:52

16        A    The SVN server is maintained by Waymo, so

17    you would have to ask somebody that maintains that.

18    I would not know.

19        Q    You would not know?

20        A    No.                                          16:24:00

21        Q    What about one that's stored in the Google

22    Drive?

23        A    Like a document within Google Drive?

24        Q    Yes.

25        A    What sort of -- what restrictions?  What     16:24:08
```

Page 219

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              I, the undersigned, a Certified Shorthand

 2    Reporter of the State of California, do hereby

 3    certify:

 4              That the foregoing proceedings were taken

 5    before me at the time and place herein set forth;

 6    that any witnesses in the foregoing proceedings,

 7    prior to testifying, were administered an oath; that

 8    a record of the proceedings was made by me using

 9    machine shorthand which was thereafter transcribed

10    under my direction; that the foregoing transcript is

11    a true record of the testimony given.

12              Further, that if the foregoing pertains to

13    the original transcript of a deposition in a Federal

14    Case, before completion of the proceedings, review

15    of the transcript [ ] was [X] was not requested.

16              I further certify I am neither financially

17    interested in the action nor a relative or employee

18    of any attorney or any party to this action.

19              IN WITNESS WHEREOF, I have this date

20    subscribed my name.

21              Dated: 7/29/2017

22

23

              Carla Soares

24              CARLA SOARES

25              CSR No. 5908
```

Page 242