# EXHIBIT 6

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

```
            UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF CALIFORNIA
              SAN FRANCISCO DIVISION


_____
                                   )
WAYMO LLC,                         )
                                   )
            Plaintiff,             )
                                   )
       vs.                         )  Case No.
                                   )  3:17-cv-00939-WHA
UBER TECHNOLOGIES, INC.,           )
OTTOMOTTO LLC; Otto                )
Trucking LLC,                      )
                                   )
            Defendants.            )
_____)
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF NINGJUN QI

San Francisco, California

Thursday, April 21, 2017

Volume I

Reported by:   SUZANNE F. GUDELJ
CSR No. 5111

Job No. 2644340

PAGES 1 - 320

1    approach to how to quantify that?

2         A    Yes, or anything on this page.

3         Q    Did they -- what -- after getting their
4    feedback, how did you change your approach?

5              Or let me -- after getting feedback, did          03:01:51
6    you change your approach?

7         A    I tried to.

8         Q    And how did you do that?

9         A    We looked -- I tried to quantify the value
10   of an AV acceleration.  So call it in one to two            03:02:05
11   years, what would that look like for Uber business
12   model without that and with that.

13        Q    And what was the result of that?

14        A    There was value in accelerating the AV
15   development, but ultimately, no one reviewed those          03:02:30
16   slides.  And after I completed the exercise, it was
17   never talked about again.

18        Q    Are you aware of whether Uber relied on any
19   of your valuations in assessing whether to acquire
20   Otto?                                                       03:02:54

21             MR. JACOBS:  Objection.  Form.  Vague as to
22   "valuations."

23             THE WITNESS:  What specific?

24   BY MS. ROBERTS:

25        Q    Well, you just mentioned that you revised         03:03:02

1    the slides but no one ever reviewed those slides.
2    Did you create any other slides to reflect the value
3    to Uber of acquiring Otto?
4         A    Yes.
5         Q    And who were those slides presented to?           03:03:20
6         A    One version was presented to Travis and
7    Emil, and I believe Cam was also in the room.
8         Q    The -- the -- the slide that's Exhibit 297,
9    that was not presented to anybody other than John
10   and Brian?                                                  03:03:49
11        A    Yes, that is correct.  And it was not a
12   presentation.  I just wanted them to review it.
13        Q    Okay.
14             MS. ROBERTS:  We're going to mark as
15   Exhibits 298 and 299.  Exhibit 298 begins with Bates        03:04:21
16   No. UBER00069029.  Exhibit 299 begins with Bates
17   number UBER00069030.
18             (Deposition Exhibit 298 marked by the court
19             reporter.)
20             (Deposition Exhibit 299 marked by the court
21             reporter.)
22             MS. ROBERTS:  Okay to keep going?
23             MR. JACOBS:  Can we -- it's at the hour.
24             MS. ROBERTS:  Oh, okay.
25             VIDEO OPERATOR:  Break?  Take a break?            03:05:23

1    Q    And overall, under all of these scenarios,
2    did Uber expect that acquiring Mr. Levandowski's
3    company that he was going to found would accelerate
4    Uber's autonomous vehicle development?
5    A    Yes.  This is my assessment that yes, he        03:18:27
6    would.  So this is -- it's different.  So this
7    assessment is not to prove that he would accelerate
8    AV development.  This assessment shows what happens
9    or attempts to quantify the value of what would it
10   look like if AV development was accelerated by one   03:18:50
11   to two years.
12   Q    Okay.  And if you look at the cover email
13   that's Exhibit 298, you -- in that first paragraph,
14   last sentence, you say that "the numbers are very
15   compelling."  Was that referring to the numbers on   03:19:05
16   that last page of Exhibit 299?
17   A    Yes.
18   Q    And what is it about these numbers that is
19   very compelling?
20   A    At that time, we had an idea of how much we     03:19:21
21   think we needed to pay for the NewCo business, and
22   it looked like the benefit of paying for that, due
23   to our assumption that it could help accelerate AV
24   development by one to two years, outweighed the cost
25   it would take for us to acquire the company.         03:19:49

1    Q    So your assessment was the value of
2    acquiring NewCo exceeded the cost for doing so?
3    A    If it was able to help us shorten our AV
4    timeline by one to two years.  Again, this is my own
5    assessment and ultimately was not used in any forum.   03:20:13
6    Q    If you turn to the page that ends in 69032
7    of Exhibit 299, what is this slide supposed to
8    reflect?
9    A    This reflects what the market is willing to
10   pay for LiDAR-related companies.                       03:20:56
11   Q    And you testified earlier that the -- next
12   to Google, the valuation of ████████ that's
13   information that you obtained from Mr. Levandowski?
14   A    Yes, that's correct.
15   Q    How did you know the number of employees in  03:21:14
16   Google's self-driving car unit?
17   A    It likely came from Anthony as well.
18   Q    How did you know the average payout for the
19   employees in Google's self-driving car unit?
20   A    I think I just did the math.  Maybe not.     03:21:44
21   It was either just doing division, or it was
22   maybe -- it was something that Anthony told us.
23   Q    If you turn to the slide that ends in 031
24   of Exhibit 299 --
25   A    Mm-hmm.                                        03:22:12

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            I, the undersigned, a Certified Shorthand
 2   Reporter of the State of California, do hereby
 3   certify:
 4            That the foregoing proceedings were taken
 5   before me at the time and place herein set forth;
 6   that any witnesses in the foregoing proceedings,
 7   prior to testifying, were duly sworn; that a record
 8   of the proceedings was made by me using machine
 9   shorthand which was thereafter transcribed under my
10   direction; that the foregoing transcript is a true
11   record of the testimony given.
12            Further, that if the foregoing pertains to
13   the original transcript of a deposition in a Federal
14   Case, before completion of the proceedings, review
15   of the transcript [X] was [ ] was not requested.
16            I further certify I am neither financially
17   interested in the action nor a relative or employee
18   of any attorney or party to this action.
19            IN WITNESS WHEREOF, I have this date
20   subscribed my name.
21   Dated: 6/23/2017
22
23            _____
24            SUZANNE F. GUDELJ
25            CSR No. 5111
```

Page 320