1  Neel Chatterjee (SBN 173985)
   *nchatterjee@goodwinlaw.com*
2  **GOODWIN PROCTER LLP**
   135 Commonwealth Drive
3  Menlo Park, California 94025
   Tel.: +1 650 752 3100
4  Fax.: +1 650 853 1038

5  Brett Schuman (SBN 189247)
   *bschuman@goodwinlaw.com*
6  Shane Brun (SBN 179079)
   *sbrun@goodwinlaw.com*
7  Rachel M. Walsh (SBN 250568)
   *rwalsh@goodwinlaw.com*
8  **GOODWIN PROCTER LLP**
   Three Embarcadero Center
9  San Francisco, California 94111
   Tel.: +1 415 733 6000
10 Fax.: +1 415 677 9041

11 Hong-An Vu (SBN 266268)
   *hvu@goodwinlaw.com*
12 **GOODWIN PROCTER LLP**
   601 S. Figueroa Street, 41st Floor
13 Los Angeles, California  90017
   Tel.: +1 213 426 2500
14 Fax.: +1 213 623 1673

15 *Attorneys for Defendant: Otto Trucking LLC*

**REDACTED VERSION OF
DOCUMENT SOUGHT TO BE SEALED**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

16
17
18

| | |
|---|---|
| Waymo LLC, | Case No. 3:17-cv-00939-WHA |
| 19        Plaintiff, | |
| 20 | **MOTION IN LIMINE TO EXCLUDE TESTIMONY OF GARY BROWN AND KRISTINN GUDJONSSON** |
| 21        v. | |
| 22 Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC, | Date:        September 27, 2017 |
| | Time:        8:00 a.m. |
| | Courtroom:   8 (19th Floor) |
| 23        Defendants. | Judge:       Hon. William Alsup |
| 24 | Filed/Lodged Concurrently with: |
| | 1. Declaration of Hong-An Vu; and |
| 25 | 2. [Proposed] Order |
| 26 | Trial:       October 10, 2017 |

27
28

## TABLE OF CONTENTS

**Page**

I.    WAYMO'S INVESTIGATION CONTAINS NUMEROUS INVESTIGATIVE
      FAILURES. ....................................................................................................................1

      A.    Mr. Brown and Mr. Gudjonsson Did Not Investigate All of Mr.
            Levandowski's Computers.................................................................................2

      B.    Mr. Brown and Mr. Gudjonsson Did Not Determine Mr. Levandowski's
            "Usual" Conduct Before Reaching Their Conclusions........................................2

      C.    Mr. Brown and Mr. Gudjonsson Did Not Investigate the "Usual" Conduct of
            Engineers on the Chauffeur Team. ...................................................................4

      D.    Mr. Brown and Mr. Gudjonsson Lack Knowledge of the SVN Server........................5

      E.    Mr. Brown and Mr. Gudjonsson Based Their Conclusions on Unreliable Log
            Data...................................................................................................................6

      F.    Mr. Brown and Mr. Gudjonsson Only Pursued Theories of Misconduct When
            Prompted By Attorneys.......................................................................................6

II.   THE COURT SHOULD EXCLUDE THE TESTIMONY OF GARY BROWN AND
      KRISTINN GUDJONSSON............................................................................................8

      A.    Mr. Brown and Mr. Gudjonsson Reached their Conclusions Before
            Conducting Their Investigation. ......................................................................9

      B.    The Conclusions of Mr. Brown and Mr. Gudjonsson Are not Based on
            Sufficient Methodology. ................................................................................10

            1.    The investigation into the SVN Server was severely flawed.........................10

            2.    Mr. Brown and Mr. Gudjonsson Did Not Consider Reasonable
                  Alternatives. ........................................................................................11

III.  CONCLUSION............................................................................................................12

MOTION IN LIMINE TO EXCLUDE TESTIMONY
OF GARY BROWN AND KRISTINN GUDJONSSON          Case No. 3:17-cv-00939-WHA

1

### <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Carnegie Mellon Univ. v. Hoffmann–LaRoche, Inc.*,
    55 F. Supp. 2d 1024 (N. D. Cal. 1999) ...............................................................................8, 11

5

*Claar v. Burlington N. R. Co.*,
6    29 F.3d 499 (9th Cir. 1994) ............................................................................................8, 9, 12

7

*Daubert v. Merrell Dow Pharm., Inc*,
    43 F.3d 1311 (9th Cir. 1995) .................................................................................................9, 10

8

*Daubert v. Merrell Dow Pharm., Inc.*,
9    509 U.S. 579 (1993)............................................................................................................8, 9, 10

10

*EEOC v. United Parcel Servs.*,
    149 F. Supp. 2d 1115 (N. D. Cal. 2000) ..........................................................................10

11

*Gen. Elec. Co. v. Joiner*,
12    522 U.S. 136 (1997)..............................................................................................................11

13

*Jinro Am. Inc. v. Sec. Invest., Inc.*,
    266 F.3d 993 (9th Cir. 2001) .................................................................................................12

14

*Kumho Tire Co., Ltd. v. Carmichael*,
15    526 U.S. 137 (1999)..............................................................................................................10

16

*Lewert v. Boiron, Inc.*,
    212 F. Supp. 3d 917, 936 (C.D. Cal. 2016) ................................................................12

17

*Mfg. Admin. and Mgmt. Sys., Inc. v. ICT Group, Inc.*,
18    212 F.R.D. 110 (E.D.N.Y. 2002) .........................................................................................10

19

*Musselman v. Phillips*,
    176 F.R.D. 194 (D. Md. 1997).............................................................................................10

20

*Ollier v. Sweetwater Union High Sch. Dist.*,
21    768 F.3d 843 (9th Cir. 2014) ...........................................................................................8, 9

22

*Pooshs v. Phillip Morris USA, Inc.*,
    287 F.R.D. 543 (N. D. Cal. 2012)..........................................................................................8

23

**Other Authorities**

24

Fed. R. Evid. 702 ........................................................................................................1, 8, 9, 12

25

Lee Mickus, *Discovery of Work Product Disclosed to a Testifying Expert Under the*
26    *1993 Amendments to the Federal Rules of Civil Procedure*, 27 CREIGHTON
    L.REV. 773, 793 n.89 (1994) ...............................................................................................10

27

28

-ii-

MOTION IN LIMINE TO EXCLUDE TESTIMONY
OF GARY BROWN AND KRISTINN GUDJONSSON          Case No. 3:17-cv-00939-WHA

1    The Court should exclude the testimony of Gary Brown and Kristinn Gudjonsson as

2    unreliable under Federal Rule of Evidence 702 because they are not based on sufficient facts or

3    sound methodology.  Mr. Brown and Mr. Gudjonsson should not be permitted to offer opinion

4    testimony about (a) whether behavior was unusual or suspicious and (b) the SVN server and its data.

5    Mr. Brown and Mr. Gudjonsson concluded that the activities of Mr. Levandowski were

6    unusual or suspicious.  They failed, however, to conduct an objective and reliable investigation.  In

7    fact, they did no investigation to determine what qualifies as normal activity, even though a

8    considerable amount of information was available to them.  Also, neither Mr. Brown nor Mr.

9    Gudjonsson have experience with the SVN server that would enable them to opine on that server and

10   the actions of individuals using that server in the ordinary course of business.  As such their

11   conclusions are unsupported, and as the record shows, were unduly biased by accusations made by

12   Waymo's litigation counsel.

13   Waymo previously identified Gary Brown and Kristinn Gudjonsson—the individuals who

14   conducted the forensic investigation into Anthony Levandowski—as experts (*see* Vu Decl. Ex. 21).

15   Waymo nrecently has stated that it does not intend to offer "opinion testimony" by these witnesses.

16   Vu Decl. at Exs. 1-4.  Instead of providing a report, Waymo has provided statements from these

17   witnesses about the subject matter of their testimony, including the forensic investigation they

18   conducted and the conclusions they reached "in an abundance of caution" should the Court find

19   these individuals to be experts.  *See id.*  Waymo should not be allowed to offer an expert witness in

20   fact witness clothing.  These witnesses are not qualified and did not engage in an objective or sound

21   methodology.  Their opinions should be excluded.

22   **I.    WAYMO'S INVESTIGATION CONTAINS INVESTIGATIVE FAILURES.**

23   Waymo has disclosed that Mr. Brown and Mr. Gudjonsson will testify about the conclusions

24   of their investigation, including that Mr. Levandowski's alleged download of 14,000 files from the

25   SVN server—a repository used to store electrical designs for Project Chauffeur—was "unusual and

26   suspicious."  In reaching this conclusion, Waymo failed to first establish what is considered to be

27   "usual" conduct for Anthony Levandowski and others on the Chauffeur team before concluding that

28   their behavior was "unusual."  In addition, although Mr. Brown and Mr. Gudjonsson intend to opine

-1-

MOTION IN LIMINE TO EXCLUDE TESTIMONY
OF GARY BROWN AND KRISTINN GUDJONSSON                     Case No. 3:17-cv-00939-WHA

1    on the SVN server, neither has personal knowledge of this server and neither performed any

2    investigation of the server that provides them with sufficient basis to opine on it and its use.

3        A.    MR. BROWN AND MR. GUDJONSSON DID NOT INVESTIGATE ALL OF MR.

4            LEVANDOWSKI'S COMPUTERS.

5        After Anthony Levandowski left Google on January 27, 2016, Google initiated an

6    investigation overseen by Gary Brown and Kristinn Gudjonsson.  At the time of his departure, Mr.

7    Levandowski was using three computers—a W laptop (identified as 710739 in the Brown

8    Declaration), a G Laptop, and an HP Workstation.  Vu Decl. at Ex. 6.  Mr. Gudjonsson imaged the

9    two laptops, and though he requested to image the HP Workstation, he was directed not to analyze it.

10   *Id.* at Ex. 14, 211:4-212:5; Ex. 13, 97:14-98:9; 103:15-104:6.   Thus, the investigators never

11   investigated that computer, and by the end of February 2016, had been reimaged and reassigned to

12   another user.  *Id.* at Ex. 6; 12 at 468:14-469:24.  Waymo failed  preserve an image of the HP

13   Workstation  and it has provided no explanation for its decision to not analyze the HP Workstation

14   or for its spoliation of evidence.  *Id*. at Ex. 13 at 104.

15       B.    MR. BROWN AND MR. GUDJONSSON DID NOT DETERMINE MR. LEVANDOWSKI'S

16           "USUAL" CONDUCT BEFORE REACHING THEIR CONCLUSIONS.

17       Mr. Brown and Mr. Gudjonsson's lay belief in unusual behavior is unreliable because they

18   did not consider (a) the SVN server instructions instruct a user to download the entire repository, (b)

19   they concluded Mr. Levandowski only used the SVN repository once even though he had passwords

20   dating back over a year that were issued as part of a restricted "need to access" list, (c) they did not

21   conside the fact that the downloading activity was considered by a user to be typical and not

22   suspicious, and (d) they did not consider data from the other devices that Mr. Levandowski used.

23       Mr. Brown and Mr. Gudjonsson's conclusion that Levandowski's access to the SVN server

24   and download of the entire repository consisting of 14,000 files or 9.7 Gigabytes was unusual and

25   suspicious was actually based on only four months of data relating to Mr. Levandowski and that data

26   was limited to just the single W laptop and not the other devices Mr. Levandowski used.  When

27   Waymo began its investigation of Mr. Levandowski, it did not suspend the SVN server's policy that

28   destroys activity logs older than 52 weeks.  *Id.* at Ex.12 at 323:14-324:16.  As such, when Mr.

-2-

MOTION IN LIMINE TO EXCLUDE TESTIMONY
OF GARY BROWN AND KRISTINN GUDJONSSON            Case No. 3:17-cv-00939-WHA

1   Brown viewed the SVN log in October 2016, the log only contained information relating to Mr.

2   Levandowski between September 19, 2015 and January 27, 2016.  *Id.*

3        Mr. Brown and Mr. Gudjonsson ignored that Mr. Zbrozek, the engineer who set up and

4   administrated the SVN server, had provided Mr. Levandowski with credentials to access the SVN

5   server sometime in March 2015.  *Id*. at Ex. 16 at 287:23-289:18.  These credentials were given

6   because Mr. Levandowski had access to the previous server that housed the same type of

7   information.  *Id*.  In fact, Mr. Zbrozek issued Mr. Levandowski a second password because the first

8   password did not work.  Mr. Brown and Gudjonsson never investigated any of these issues.

9        When asked by Waymo's outside counsel, Tom Gorman, whether Mr. Levandowski's only

10  access to the SVN that they had in the logs was "a ████," Mr. Zbrozek, responded, "It's not

11  particularly surprising that he might check things out once . . . It clearly wasn't part of his routine.

12  Doesn't ring alarm bells for me." *Id.* at Ex. 9.  Mr. Gorman did not include Mr. Brown or Mr.

13  Gudjonsson in this email.  However, as Waymo was preparing to file its complaint based on Mr.

14  Levandowski's alleged downloading of all the documents from the SVN server, Mr. Zbrozek

15  informed Waymo's counsel and Mr. Brown and Mr. Gudjonsson that he was uncomfortable with

16  their narrative:

17      "I'm a little leery because both of those numbers [14,000 files or 9.7 GBs] aren't really
18  meaningful in any narrative.  It also has a chilling effect on being a hardware engineer—we
    do full checkouts and it makes me uncomfortable to think that lawyers are trying to ascribe
19      suspicion to it."

20  Vu Decl., Ex. 10.  In that same email chain, Mr. Zbrozek included a copy of the instructions for how

21  to download from the SVN, which directs the user to download the entire repository.  *See id*.  Mr.

22  Brown and Mr. Gudjonsson did not appear to consider Mr. Zbrozek's statements and these download

23  instructions in reaching their faulty conclusions. *Id.* atEx. 12 at 414:8-19.

24      Finally, although Mr. Brown and Mr. Gudjonsson's conclusions are based on various types

25  of log data associated with the "W Laptop,"  they did not review or consider *any* log data associated

26  with Mr. Levandowski's activities using the G Laptop or the HP Workstation.   Dkt 24-2

27  (Declaration of Gary Brown only attesting to the W laptop); Vu Decl. at Ex. 12 at 437:15-24

28  (reviewing other log data only after he was deposed in August 2017).  Mr. Brown's declaration only

-3-

1 discusses the log data for the W Laptop and Waymo has refused to provide log data related to the G

2 Laptop or the HP Work station because it was only willing to produce "log data underlying the

3 declaration" of Gary Brown. *See id.*; *see also* Dkt. 1367.   As such, the conclusions regarding Mr.

4 Levandowski's behavior were based on his activities on only one of the three laptops he was using at

5 the time of his departure.

### C.     MR. BROWN AND MR. GUDJONSSON DID NOT INVESTIGATE THE "USUAL" CONDUCT OF ENGINEERS ON THE CHAUFFEUR TEAM.

8 Michael Janosko, one of Waymo's security engineers, testified on how to determine

9 anomalous conduct when investigating breaches of Google's security system:



15 Vu Decl. at Ex. 17 at 38:25-39:13.  Mr. Brown agreed that in conducting an investigation, "all

16 feasible rocks should be turned over" and "the more information, the better."  *Id.* at Ex. 13 at 99:11-

17 100:7.  And yet, Mr. Brown and Mr. Gudjonsson failed to even review the information available

18 regarding the ordinary practices of Chauffeur engineers to first establish a baseline for normal

19 activity before determining that Mr. Levandowski's conduct was suspicious and unusual.

20 Mr. Brown and Mr. Gudjonsson did not review or even consider the activities of other

21 engineers on the Chauffeur team to determine whether downloading large amounts of data was

22 common practice.  *Id.* at Ex. 12 at 414:8-19.  Indeed, although requested, Waymo has refused to

23 provide similar log data that Mr. Brown and Mr. Gudjonsson reviewed for Mr. Levandowski for a

24 sampling of other individuals because those logs were apparently not relevant and according to

25 Waymo, too burdensome to produce.  *See* Dkt. 1367.

26 Based on the SVN data produced in this case for other engineers on Chauffeur (from after

27 May 2016, because no earlier data was preserved), had Mr. Brown and Mr. Gudjonsson looked, they

28 would have discovered that many of the Chauffeur engineers have downloaded over 9 Gigabytes of

-4-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

data in one sitting.

Mass Single Session Downloads Over 9GB From Sample Data



#### D.   MR. BROWN AND MR. GUDJONSSON LACK KNOWLEDGE OF THE SVN SERVER.

As testimony reveals, Mr. Brown and Mr. Gudjonsson did not have any personal knowledge about the SVN server let alone how the server works.  When asked about downloading documents from the SVN server, Mr. Gudjonsson explains that the server was "████████████████ ████████████████████████████████."  Ex. 14 at 219:10-20.  In response to a question about whether it was unusual for a Google engineer to download 14,000 files from an SVN repository, Mr. Gudjonsson responds: "I wouldn't know."  *Id.* at 184:24-185:3.  Mr. Gudjonsson admits that he simply had no personal knowledge, and that "Gary Brown completely took care of that himself."  *Id.* at 413:19-413:25.

Mr. Brownwas equally clueless.  When asked whether he worked with the SVN repository before, Mr. Brown simply responded "no."  Ex. 13 at 281:16-18.  In fact, Mr. Brown admits that he never received special certification training about the SVN server and never set one up, reviewed SVN log files, or even had access to the SVN website himself prior to this case.  *See id*. at 281:19-283:17; 287:6-10.  He went so far as to explain that never had "a business need to access those files."  *Id.* When asked about retention of the SVN log data provided by Waymo's attorneys, which Mr. Brown had been ordered to be prepared to testify about, he again re-affirmed his lack of experience with the SVN server, "████████████████████

-5-

MOTION IN LIMINE TO EXCLUDE TESTIMONY
OF GARY BROWN AND KRISTINN GUDJONSSON                    Case No. 3:17-cv-00939-WHA

1 ████████████████████████████████████████████████

2 ██████████████████████████████████████ *d.* Ex. 12, 532:4-11.

3     **E.**    **MR. BROWN AND MR. GUDJONSSON RELIED ON UNRELIABLE LOG DATA.**

4        Mr. Brown admits that there are discrepancies in the log data that he reviewed that call into

5 question the reliability of his conclusions.  In emails with the forensic investigation team about

6 discrepancies in the ███████████, Mr. Brown said that he had received different results 1/3

7 times for one search and errors 3/8 times in other queries he had conducted.  Vu Decl. at Ex. 7.  Mr.

8 Brown stated that "████████████████████████████████████

9 ████████████████████████████████████████████

10 ██" *Id.*  Mr. Brown also emailed about ████ one of the types of logs he and Mr. Gudjonsson

11 reviewed, stating, "████████████████" because there were discrepancies in time stamps for

12 events based on this log.  *Id.* at Ex. 8.  In another update email to Mr. Gorman and Mr. Gudjonsson

13 about access logs, Mr. Brown states that the server access data found from ████████ was "█

14 ████████████████ and was "███████████████ Ex. 18.  This data

15 apparently dated back to only "August of 2015."  *Id.*

16        In addition, Waymo produced a ████ data log allegedly pertaining to Anthony Levandowski's

17 activities in Excel format.  When Mr. Brown saw this data, he had a visceral reaction, stating  "I

18 should note, I absolutely positively distrust all Excel formatting."  *Id.* at Ex. 13 at 252:1-253:11.

19     **F.**    **MR. BROWN AND MR. GUDJONSSON ONLY PURSUED THEORIES OF MISCONDUCT**

20           **WHEN PROMPTED BY ATTORNEYS.**

21        Although Mr. Brown and Mr. Gudjonsson investigated Mr. Levandowski's activities in

22 February to March 2016, including reviewing his computer and log data, they did not find any trade

23 secret compromise at that time.  *See* Vu Decl. at Ex. 11 at 31:17-24; Ex. 13 at232:17-19; 235:17-20;

24 Ex. 14 at 198:22-199:9; 203:15-204:9; 209:23-210:9; Ex. 20, 22.  They only found misconduct after an

25 attorney from Keker directed them to reach those conclusions.

26        On September 19, 2016, Tom Gorman, an attorney at Keker, told Mr. Brown, Mr.

27 Gudjonsson that Mr. Levandowski syncing his computer to the SVN server to download the entire

28 repository a week before reformatting his computer was "fishy."  *Id.* at Ex. 23  As demonstrated

-6-

MOTION IN LIMINE TO EXCLUDE TESTIMONY
OF GARY BROWN AND KRISTINN GUDJONSSON      Case No. 3:17-cv-00939-WHA

1   above, however, Mr. Brown and Mr. Gudjonsson had no personal knowledge of the SVN server.

2   Mr. Gorman repeated this theory again in the same communication, this time adding that he found it

3   unusual that Mr. Levandowski would reformat to install a Linux operating system when he had

4   another laptop running Linux.  *See id.*  "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮?," he concluded.  *Id.*

5         When asked for the source supporting his conclusions, Mr. Gorman provided Mr. Brown an

6   SVN log.  *Id.*  Mr. Brown testified that he then worked to "confirm" Mr. Gorman's conclusions, but

7   he admittedly disregarded information that was "not explicitly relevant for what [they] were **trying**

8   **to prove**."  *Id.* at Ex. 11 at 36:9-24; Ex. 12 at Tr. 229:3-231:8 (emphasis added).  When asked

9   whether anyone had told him that Mr. Levandowski downloaded 14,000 files on December 11, 2015,

10  Mr. Brown answered in the affirmative and identified "Tom Gorman."  *Id.* Ex. 12 at 132:4-11.

11  Similarly, Mr. Gudjonsson, concluded that Mr. Levandowski "hadn't visited the SVN site before,

12  and this [the December 11 activity] was the first sync as you [Tom Gorman] suggested from looking

13  at the SVN log."  *Id.* at Ex. 23.

14        With the seed of misconduct planted by Mr. Gorman, the investigators focused significant

15  energy to enforce this crafted theory.  Mr. Gudjonsson testified that on two separate occasions he

16  had mistakenly developed theories that Mr. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *Id.* at Ex.15, 460:12-461:6; *see also id.* at Ex. 19 at

19  84575 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").  Both of

21  these unreasonable theories were  proven wrong.  *Id., see also* 460:12-461:6.

22        However, there is no evidence that Mr. Brown or Mr. Gudjonsson ever looked to see whether

23  Mr. Levandowski's conduct was *not* suspicious.  They determined that Mr. Levandowski

24  downloading the SVN repository was suspicious because they apparently did not have a record of

25  him accessing the SVN repository at any other time in Google's narrow set of preserved data .  In so

26  doing, they disregarded alternative explanations.  For example, since Google instructed users to

27  download the entire SVN repository upon installation, it is equally likely that Mr. Levandowski did

28  not need to access the SVN server prior to December 11, 2015 because he already had the files he

-7-

MOTION IN LIMINE TO EXCLUDE TESTIMONY
OF GARY BROWN AND KRISTINN GUDJONSSON                    Case No. 3:17-cv-00939-WHA

1   needed before he reformatted his computer on November 26, 2015.  Based on the facts revealed in

2   this case, it is plausible that Mr. Levandowski simply he needed to download the repository again

3   because of that reformatting.  Vu decl. at 5.

4   **II.     THE COURT SHOULD EXCLUDE THE TESTIMONY OF GARY BROWN AND**

5   **KRISTINN GUDJONSSON.**

6          In their statements regarding the testimony of Mr. Brown and Mr. Gudjonsson, Waymo

7   acknowledges that neither witness is providing opinion testimony.  *See* Vu Decl. Exs. 1-4. However,

8   Waymo also appears to avoid outright designating these witnesses as experts.  This is because the

9   investigations conducted by Mr. Brown and Mr. Gudjonsson cannot meet the *Daubert* standard for a

10  litany of reasons: their investigation was not based on a sufficient methodology, they did not

11  consider any reasonable alternative and disregarded relevant facts, and signed onto conclusions

12  provided to them by an attorney before they reviewed the underlying data.  Waymo cannot have it

13  both ways, Mr. Brown and Mr. Gudjonsson are either testifying to specialized knowledge and

14  subject to Rule 702, or their opinion testimony is inadmissible.  *See Ollier v. Sweetwater Union High*

15  *Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) ("personal opinion testimony is inadmissible as a

16  matter of law under Rule 702 . . . and speculative testimony is inherently unreliable").

17         The Court should exclude Mr. Brown and Mr. Gudjonsson's testimony under *Daubert* and

18  Rule 702, which requires district courts to act as a gatekeeper to "ensure that any and all scientific

19  testimony or evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharm.,*

20  *Inc.*, 509 U.S. 579, 589 (1993).  Courts must assess "whether the reasoning or methodology

21  underlying the testimony is scientifically valid and of whether that reasoning or methodology

22  properly can be applied to the facts in issue."  *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 501 (9th

23  Cir. 1994) (emphasis in original), citing *Daubert* at 592-93.  Importantly, courts must "ensure the

24  expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice

25  of an expert in the relevant field.'"  *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 547 (N. D.

26  Cal. 2012), citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  Furthermore, a

27  methodology may not be reliable if an expert "fail[s] to address and exclude alternative explanations

28  for the data on which he bases his findings."  *Carnegie Mellon Univ. v. Hoffmann–LaRoche, Inc.,* 55

-8-

1    F. Supp. 2d 1024, 1034-35 (N. D. Cal. 1999); *see also Claar* at 502 (expert must adequately account

2    for obvious alternative explanations).

3          A.      **MR. BROWN AND MR. GUDJONSSON REACHED THEIR CONCLUSIONS BEFORE**

4                  **CONDUCTING THEIR INVESTIGATION.**

5          Rule 702 is unambiguous:  expert testimony may only be admitted if it "is based upon

6    sufficient facts or data" and "is the product of reliable principles and methods."  *See also Daubert*,

7    509 U.S. at 596.  Neither Mr. Brown's nor Mr. Gudjonsson's testimony pass muster.

8          Mr. Brown and Mr. Gudjonsson's testimonies are not reliable because they were fed a

9    conclusion by Keker attorney Tom Gorman—that Mr. Levandowski's download of 14,000 files was

10   anomalous—*before* they conducted any investigation.  "Coming to a firm conclusion first and then

11   doing research to support it is the antithesis of [the scientific] method."  *Claar*, 29 F.3d at 502

12   (citations removed); *see also Daubert*, 509 U.S. at 590 ("in order to qualify as 'scientific

13   knowledge,' an inference or assertion must be derived by the scientific method.").  Indeed, both

14   witnesses testified that because they had no experience working with the SVN server and never

15   performed an independent investigation of the SVN server prior to the case, they did not understand

16   the nature of Mr. Levandowski's actions on the SVN server prior receiving Mr. Gorman's

17   conclusions.  *Claar* is on point.  Like the investigators here, the expert witness in *Claar* provided an

18   opinion about the causation of the harm at issue before reviewing the relevant materials.  The Ninth

19   Circuit's admonishing is clear:"[S]cientists whose conviction about the ultimate conclusion of their

20   research is so firm that they are willing to aver under oath that it is correct prior to performing the

21   necessary validating tests could properly be viewed by the district court as lacking the objectivity

22   that is the hallmark of the scientific method."  *Claar*, 29 F.3d at 502-3; *see also Daubert v. Merrell*

23   *Dow Pharm., Inc*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert II*") ("That an expert testifies based

24   on research he has conducted independent of the litigation provides important, objective proof that

25   the research comports with the dictates of good science."), *Ollier*, 768 F.3d at 860 (affirming the

26   exclusion of the testimony of an expert who submitted a report prior to an "in-person investigation").

27         Courts have cautioned litigants on risks inherent in the attorney-expert relationship, and have

28   excluded experts where attorneys have improperly influenced the conclusions of such experts.  *See*

-9-

1    *EEOC v. United Parcel Servs.*, 149 F. Supp. 2d 1115, 1139 (N. D. Cal. 2000), aff'd in part, rev'd in

2    part on other grounds, 306 F.3d 794 (9th Cir. 2002) ("In context, it seems clear that [the expert] lost

3    his independence and objectivity. He simply became part of the UPS advocacy team"); *Mfg. Admin.*

4    *and Mgmt. Sys., Inc. v. ICT Group, Inc.*, 212 F.R.D. 110, 116 (E.D.N.Y. 2002) (stating that "[t]he

5    modern attorney-expert relationship provides fertile ground for improper influence"); *Musselman v.*

6    *Phillips*, 176 F.R.D. 194, 200 (D. Md. 1997) (finding it "essential" to discover the manner in which

7    experts arrived at opinions and whether "done as a result of an objective consideration of the facts,

8    or directed by an attorney advocating a particular position"); Lee Mickus, *Discovery of Work*

9    *Product Disclosed to a Testifying Expert Under the 1993 Amendments to the Federal Rules of Civil*

10   *Procedure*, 27 CREIGHTON L.REV. 773, 793 n.89 (1994) (stating that a "showing that counsel

11   manipulated the expert's analysis and ultimate findings pushes the expert's testimony from the realm

12   of sloppy science into that of biased science").  The conduct of Tom Gorman in directing the

13   conclusions of Mr. Brown and Mr. Gudjonsson on what to "prove" impacted their ability to perform

14   an unbiased and methodologically sound investigation.  The Court should exclude their testimony.

15        **B.       THE CONCLUSIONS OF MR. BROWN AND MR. GUDJONSSON ARE NOT BASED ON**

16                   **SOUND METHODOLOGY.**

17        The Ninth Circuit holds that litigant's experts whose testimony is not based on pre-suit

18   research or investigation on specialized issues must submit affirmative proof of "objective, verifiable

19   evidence" that the testimony is based on valid scientific principles.  *Daubert II*, 43 F.3d at 1317.

20   Waymo, however, cannot provide such proof.

21                   **1.       The investigation into the SVN Server was severely flawed.**

22        The investigation into Mr. Levandowski's access was littered with methodological errors that

23   cannot meet the level of "intellectual rigor" contemplated in *Daubert*, *Kumho* and their progeny.  For

24   example, Mr. Brown and Mr. Gudjonsson's failure to investigate all of Mr. Levandowski's

25   computers disqualified their investigation from the outset.  Not only did the investigators have an

26   incomplete set of Mr. Levandowski's computers, but a large chunk of SVN log data was also not

27   preserved, despite the fact that Waymo had initiated an investigation and had a duty to preserve

28   relevant evidence.  The log data that both investigators used only contained information relating to

-10-

1   Mr. Levandowski between September 19, 2015 and January 27, 2016, a small fraction of Mr.

2   Levandowski's employment on the Chauffeur team.  Furthermore, no investigator bothered to even

3   look at Mr. Levandowski's activities on his G Laptop or his HP Workstation.  Worse, Mr. Brown

4   and Mr. Gudjonsson did not investigate or even consider the activities of everyone else on the

5   Chauffeur team to determine whether downloading significant amounts of data was standard

6   practice.  Indeed, Waymo went to great lengths to shield such information from discovery under the

7   guise of irrelevance and production burden.  [cite Dkt].  Thus, Mr. Brown and Mr. Gudjonsson's

8   conclusions that Mr. Levandowski's conduct was unusual or suspicious are unsupported as they do

9   not even know what normal or non-suspicious behavior is in this context.  Collectively, Waymo and

10   the investigators have embarked on a type of selective examination that clearly "departs from

11   scientific standards." *Carnegie*, 55 F. Supp.at 1034.

12        Furthermore, Mr. Brown admits to serious flaws with the underlying log data that formed

13   both his and Mr. Gudjonsson's conclusions. These are the sorts of flaws that courts have routinely

14   cited to as grounds for excluding expert testimony.  *See Id.* at 1040 (finding an expert's conclusions

15   to be unreliable due to errors and manipulations in the data underlying his research), *Gen. Elec. Co.*

16   *v. Joiner,* 522 U.S. 136 (1997) (finding that an expert who reinterpreted data that was not his own to

17   be unreliable).  Mr. Brown states on multiple occasions that there are errors in the various SVN logs

18   they reviewed, and that such errors were simply not sufficiently authoritative.

19        Finally, Mr. Janosko and Mr. Brown's testimony on what they consider to be the proper way

20   to investigate breaches of Google's security system exacerbate the flaws cited above.  Mr. Janosko

21   testified that to find anomalous conduct, you would need to collect a large amount of data in order to

22   measure and decide what access was appropriate.  Mr. Brown agreed and unequivocally stated that

23   "█████████████████████████████████████████████████."  Vu Decl., Ex. XX

24   at 99:11-100:7.  As Mr. Brown and Mr. Gudjonsson have proved, they failed to review a host of

25   relevant data and by Waymo's admission, their investigation was lacking.

26        **2.      The Investigators Did Not Consider Reasonable Alternatives.**

27        Moreover, neither expert made any effort to "adequately account[] for obvious alternative

28   explanations" by looking to see whether Mr. Levandowski's conduct was in fact innocent.  *See*

-11-

1   *Claar*, 29 F.3d at 502 (expert testimony was not admitted in part because they did not make an effort

2   to rule out other possible causes for plaintiffs' injuries "even though they admitted that this step

3   would be standard procedure").  Like in *Claar*, Mr. Brown testified that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *d*. at Ex. 13 at 99:11-100:7.  But instead, both

5   witnesses pre-determined that Mr. Levandowski downloading the SVN repository was suspicious

6   based on the comments of Mr. Gorman, while completely disregarding any alternative explanations.

7   One explanation is equally plausible under these facts: Mr. Levandowski may have downloaded the

8   same files prior to reformatting his computer on November 26, 2015, and he may have needed to

9   download the repository again because of that reformatting.  Google never bothered to keep

10  complete records of the SVN access logs and even failed to image some of his computers.

11          Without a full picture of all of Mr. Levandowski's habits and practices as an engineer at

12  Google, as well as the habits and practices of his peers at Chauffeur, any conclusion that Mr.

13  Levandowski's December 2015 download from the SVN server was anomalous is speculative at best

14  and certainly prejudicial.  There is now clear proof that downloads of 9GB of data or more from the

15  SVN server were and continued to be common at Google and Waymo.

16          **C.      MR. BROWN AND MR. GUDJONSSON DO NOT HAVE THE REQUISITE EXPERTISE**

17                  **REGARDING THE SVN SERVER TO TESTIFY AS EXPERTS.**

18          Finally, Mr. Brown and Mr. Gudjonsson are not qualified to testify as experts as neither have

19  used the SVN and were unable to answer basic questions about the SVN server.  Nothing in their

20  background evidences sufficient experience or training to testify about this system.  Indeed, they

21  admit their lack of knowledge.  Accordingly, the Court should exclude their testimony as

22  inadmissible personal opinion testimony as they do not qualify as experts. Fed.R. Evid. 702; *Jinro*

23  *Am. Inc. v. Sec. Invest., Inc*., 266 F.3d 993, 1006 (9th Cir. 2001) (excluding unqualified investigator

24  as expertwitness); *Lewert v. Boiron, Inc*., 212 F. Supp. 3d 917, 936 (C.D. Cal. 2016) (excluding

25  expert testimony where witness admitted to having no expertise or experience on subject matter).

26  **III.    CONCLUSION**

27          For the foregoing reasons, Otto Trucking respectfully requests that the Court grant its motion

28  to exclude the testimony of Gary Brown and Kristinn Gudjonsson.

-12-

1

2

Dated:   September 16, 2017                    Respectfully submitted,

3                                                              By:       */s/   Neel Chatterjee*
                                                                       Neel Chatterjee
                                                                       *nchatterjee@goodwinlaw.com*
4                                                                      Brett Schuman
                                                                       *bschuman@goodwinlaw.com*
5                                                                      Shane Brun
                                                                       *sbrun@goodwinlaw.com*
6                                                                      Rachel M. Walsh
                                                                       *rwalsh@goodwinlaw.com*
7                                                                      Hong-An Vu
                                                                       *hvu@goodwinlaw.com*
8                                                                      Hayes P. Hyde
                                                                       *hhyde@goodwinlaw.com*
9                                                                      James Lin
                                                                       *jlin@goodwinlaw.com*
10                                                                     **GOODWIN PROCTER LLP**

11                                                             *Attorneys for Defendant: Otto Trucking LLC*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-

MOTION IN LIMINE TO EXCLUDE TESTIMONY
OF GARY BROWN AND KRISTINN GUDJONSSON                    Case No. 3:17-cv-00939-WHA

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that I electronically filed the foregoing document including all of its

3

attachments with the Clerk of the Court for the United States District Court for the Northern

4

District of California by using the CM/ECF system on **September 16, 2017**.  I further certify that

5

all participants in the case are registered CM/ECF users and that service of the publicly filed

6

documents will be accomplished by the CM/ECF system.

7

I certify under penalty of perjury that the foregoing is true and correct.  Executed on

8

**September 16, 2017**.

9

　　　　　　　　　　　　　　　　　　　　　　　　/s/   Neel Chatterjee
　　　　　　　　　　　　　　　　　　　　　　　　　NEEL CHATTERJEE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-14-

MOTION IN LIMINE TO EXCLUDE TESTIMONY
OF GARY BROWN AND KRISTINN GUDJONSSON                    Case No. 3:17-cv-00939-WHA