# Exhibit 1

**Lin, James**
___

| | |
|---|---|
| **From:** | James Baker <jamesbaker@quinnemanuel.com> |
| **Sent:** | Sunday, August 06, 2017 5:39 PM |
| **To:** | Vu, Hong-An; Jeff Nardinelli |
| **Cc:** | 'John Cooper'; Brun, Shane; 'Gonzalez, Arturo J.'; 'Yang, Michelle C.Y.'; QE-Waymo; 'BSF_EXTERNAL_UberWaymoLit@bsfllp.com'; 'UberWaymoMoFoAttorneys'; Chatterjee, Neel; Schuman, Brett; Walsh, Rachel M.; 'Matthew Cate'; 'nbartow@uber.com'; 'Aaron Bergstrom (abergstrom@uber.com)'; DG-GP Otto Trucking Waymo |
| **Subject:** | RE: Waymo v. Uber - Defendants Uber and Ottomotto's Second Set of RFPs - meet and confer requested |

Hong-An,

Thank you for meeting and conferring today regarding Otto Trucking's requests for additional documents allegedly discussed at Mr. Gundjonsson's deposition. This email summarizes our discussion.

As an initial matter, most of the testimony cited in your table has nothing to do with any specific documents, but rather reflects only a general discussion of the steps performed by Mr. Gundjonsson and/or Mr. Brown during their investigation of the Levandowski devices. Nevertheless, we have made a good faith attempt to address all **35** rows of your table.

As discussed on our meet and confer with the Special Master on Friday, on our call today, and during Mr. Gundjonsson's deposition, the documents and information cited in rows 1, 6 and 8 of your table are privileged/work product. The documents cited in rows 12, 23, 24, 27 and 32-35 have already been produced.

Rows 2-5 and 20 of your table reference testimony referring to various guidelines and/or playbooks sometimes used by Mr. Gundjonsson and/or the forensics team. During our call today, you indicated that you wanted us to produce any guidelines and/or playbooks having to do with security issues, regardless of whether or not they were used as part of the investigation of Mr. Levandowski's laptops. You also indicated that the playbook concerning "how to locate a lost Googler" would be interesting to see. During his deposition, Mr. Gundjonsson confirmed that he did not consult any playbooks or guidelines with respect to the "G" machine (Tr. at 128:24-129:4), and that he may have consulted the LUKS decryption for the "W" machine. We are considering your request for the LUKS decryption.

As we discussed, row 7 is an error in your table. This testimony refers to the write blocker used by Mr. Gundjonsson, not a "DCFLDD activity log." You stated that you would get back to us.

We are searching for the document referenced in row 9 of your table.

Rows 10 and 11 do not reference specific documents but rather general log data that may have indicated an error in the escrow key system. We are considering your request for this information.

Rows 13-19 do not cite any specific documents but rather certain tools that may have been used during the investigation of Mr. Levandowski's laptops. In your table, you state that "[a] text-based output file was generated and reviewed as part of the forensic investigation," but during our call today you confirmed that you could not identify where Mr. Gundjonsson testified that this was the case. Rather, you stated that it was your understanding that these tools generated output files based on discussion with your expert. We are considering your request.

1

Row 21 does not reference a specific document but rather a generic imaging script used by Mr. Gundjonsson during his inspection of the Levandowski laptops.  I asked whether you really need to review this script.  You stated that you would check with your expert and get back to us.

Rows 22, 25, 26 and 28-30 cite testimony during which Mr. Gundjonsson was asked improper questions about the work conducted by Gary Brown, not Mr. Gundjonsson.  Further, the testimony cited in these rows does not concern any specific documents but rather certain generic log data.  Waymo has already produced all materials relevant to Mr. Brown's investigation, and, as you know, Otto Trucking will be deposing Mr. Brown on Tuesday and will be free to ask him follow-up questions concerning any relevant, non-privileged documents that you believe may not have been produced.  You specifically asked me to check on the Uberproxy logs.  I will do so.

With respect to row 31, as you note in your table, Mr. Gundjonsson was unsure if there were any emails.  Nevertheless, we will confirm that all relevant, non-privileged emails have been produced.

Thanks,
Jim