Neel Chatterjee (SBN 173985)
nchatterjee@goodwinlaw.com
James Lin (SBN 310440)
jlin@goodwinlaw.com
**GOODWIN PROCTER** LLP
135 Commonwealth Drive
Menlo Park, California 94025
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

Brett Schuman (SBN 189247)
bschuman@goodwinlaw.com
Shane Brun (SBN 179079)
sbrun@goodwinlaw.com
Rachel M. Walsh (SBN 250568)
rwalsh@goodwinlaw.com
Hayes P. Hyde (SBN 308031)
hhyde@goodwinlaw.com
**GOODWIN PROCTER** LLP
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

Hong-An Vu (SBN 266268)
hvu@goodwinlaw.com
Todd A. Boock (SBN 181933)
tboock@goodwinlaw.com
**GOODWIN PROCTER** LLP
601 S Figueroa Street, 41st Floor
Los Angeles, California 90017
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673

*Attorneys for Defendant*
Otto Trucking LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>            Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANT OTTO TRUCKING LLC'S**<br>**RESPONSE PURSUANT TO ORDER**<br>**REQUIRING RESPONSE**<br>**DECLARATIONS (DKT NO. 1601)**<br><br>Filed/Lodged Concurrently with:<br>  1. Under Seal Motion<br>  2. Redacted/Unredacted Versions<br>  3. Proof of Service |

1    I, Neel Chatterjee, declare as follows:

2    1.    I am a Partner of the law firm of Goodwin Procter LLP, counsel of record for

3    Defendant Otto Trucking LLC ("Otto Trucking") and am a member in good standing of the Bar of

4    the State of California.  As to items pertaining to Otto Trucking, I make this declaration based

5    upon matters within my own personal knowledge or based upon information collected by my team

6    on this matter after a thorough investigation.  If called as a witness, I could and would competently

7    testify to the matters set forth herein.  As to items pertaining to other parties, including defendants

8    Uber Technologies, Inc. ("Uber") and Ottomotto LLC ("Otto"), I make this declaration based

9    upon information and belief in reliance on Uber and Otto, and I am informed and believe those

10   items to be true.  I make this declaration pursuant to the Court's Order Requiring Response

11   Declarations.  Dkt No. 1601.  Otto Trucking hereby provides the following "sentence-by-

12   sentence" response to the Declaration of Jeff Nardinelli (the "Nardinelli Declaration").  Dkt. No.

13   1589.  Quoted portions of the Nardinelli Declaration are italicized; Otto Trucking's responses are

14   interlineated in bold.

15   2.    Response to Waymo Paragraph 1:  "*I am a member of the bar of the State of*

16   *California and an attorney with Quinn Emanuel Urquhart & Sullivan, LLP, counsel for Plaintiff*

17   *Waymo LLC ("Waymo").*"  **Agreed.**

18   3.    Response to Waymo Paragraph 1:  "*I make this declaration of personal, firsthand*

19   *knowledge, and if called and sworn as a witness, I could and would testify competently as*

20   *follows.*"  **Mr. Nardinelli's declaration contains statements that are not his personal firsthand**

21   **knowledge, including but not limited to, statements regarding the state of mind of others**

22   **such as those for witnesses in this action, hearsay, speculation, and argument.  Otto**

23   **Trucking addresses those statements individually below.**

24   4.    Response to Waymo Paragraph 2:  "*On July 17, 2017, Waymo filed a motion in*

25   *limine to preclude any argument, testimony, or evidence about Defendants' efforts taken in*

26   *response to the Court's Preliminary Injunction Order, including to preclude any reference to the*

27   *questionnaires and witness interviews Defendants did during the litigation.  (Dkt. 913.)*"  **Agreed**

28   **that Waymo filed a motion in limine on July 17, 2017 at Dkt. No. 913.**

1

DEFENDANT OTTO TRUCKING'S RESPONSE TO THE DECLARATION OF JEFF NARDINELLI
                                            CASE NO. 3:17-CV-00939-WHA

5.      Response to Waymo Paragraph 3:  "*On July 26, 2017, the Court heard argument on the motion.  (Dkt. 1050.)*"   **Agreed.**

6.      Response to Waymo Paragraph 3:  "*Counsel for Waymo argued that if the Court allowed Uber to offer evidence that it had searched its servers for the 14,000 files during discovery, Waymo should be permitted to explain what Uber didn't do during discovery.  (Id. at 61-62.)*"   **Otto Trucking agrees that counsel for Waymo presented that argument at the hearing on its motion in limine.**

7.      Response to Waymo Paragraph 3:  "*The Court ruled that Uber may present the three examples of "good citizenship" outlined in Uber's opposition to Waymo's motion (Dkt. 978 at 2):  (i) searching Uber's servers for the downloaded files; (ii) asking Levandowski to return downloaded materials and firing him when he did not; (iii) allowing Waymo and its attorneys to inspect Uber's premises.  (Dkt. 1050 at 72.)*"   **Agreed that Uber was permitted to present the three enumerated items.  Uber was also permitted to seek Court permission for additional items.  (Dkt. No. 1050 at 72-73.)**

8.      Response to Waymo Paragraph 3:  "*The Court invited Waymo to present two dozen examples of Defendants' discovery misconduct "to balance the picture."  (Id. at 70-72.)*"   **This statement is inaccurate.   The Court stated, "I'm going to say August 24th you've got to give us a list of the two dozen acts that you want to put forward before the jury so that we can vet that before—before we get to the trial."   The Court also made references to "balancing the picture."   In addition, at the June 29, 2017 hearing, the Court also stated that if Waymo is to complain about discovery acts by Defendants, it must not commit discovery misconduct itself:**

> **THE COURT: Well, I want Mr. Verhoeven to know he will be in big trouble. And if -- even if I were to allow you to put on some kind of stonewalling testimony, if you stonewalled, at least they're going to get to reply with that kind of stonewalling evidence before the jury. And then -- poof! -- up goes all of your theory.**

MR. VERHOEVEN: And by the same token—

THE COURT: You can't have it both ways. This is America.
You don't get it both ways.

6/29/17 Hr'g. at 87:7-16.

9.      Response to Waymo Paragraph 4:  "*Waymo submitted its list of 23 items on August 25. (Dkt. 1356.)*"  **Agreed that Waymo submitted its list of alleged acts by Defendants one day after the Court's deadline of August 24, 2017.  Waymo did not identify any items with respect to Otto Trucking.**

10.     Response to Waymo Paragraph 4:  "*The Court has not yet ruled on Waymo's request to present evidence to "balance the picture" in light of the Court's directive permitting Uber to rely on its post-complaint discovery and other conduct.*"  **Agreed that the Court has not ruled on Waymo's request.  However, as stated in paragraph 8 above, Waymo's characterization is inaccurate.**

11.     Response to Waymo Paragraph 4:  "*Waymo renews its request that, if Uber is permitted to rely on post-complaint Uber conduct it believes supports its case, then in fairness Waymo must be permitted to counter that with post-complaint evidence that shows obfuscation and improper withholding of important information.*"  **Agreed that Waymo renewed its previous request.**

12.     Response to Waymo Paragraph 5:  "*The Court did not ask for a response from Uber or a counter-list of alleged misconduct in response to the Court's requested list from Waymo.*"  **This comment is misleading.  The Court has repeatedly made comments about Waymo's discovery activities and made clear that stonewalling could present a problem.  At times, the Court has requested information from parties about Waymo's conduct.   For example, at the July 26 hearing, the Court also expressed its concern about Waymo's stonewalling.  *See* 7/26/17 Hr'g at 82-83 ("It offends me, with all the pain and suffering that you have inflicted on the court system, not you, but your client, Waymo, that when it comes time for Waymo to come across with some documents and witnesses, that they're too busy and important.").  In addition, on September 11, 2017, the Court issued an order (Dkt. No.**

3

1515) permitting defendants to respond to Waymo's Supplemental Brief In Support of its Motion for an Order to Show Cause Why Defendants Should Not Be Held in Contempt of the Preliminary Injunction Order (Dkt. No. 426) and Expedited Discovery Order (Dkt. No. 61); and on September 13, 2017, the Court ordered (Dkt. No. 1536) defendants Uber and Ottomotto to provide declarations supporting the alleged discovery misconduct of Waymo.

13.     Response to Waymo Paragraph 5:  "*That likely is because the issue before the Court concerned what post-complaint evidence Waymo was permitted to use  to "balance the picture," given Uber's intent to rely on post-complaint conduct before the jury.*"  **Mr. Nardinelli's statement is speculation regarding the Court's motivation.  In addition, at the time of the July 27 hearing, the Court nor the parties was fully aware of the extent of Waymo's discovery misconduct, some of which was yet to occur.**

14.     Response to Waymo Paragraph 5:  "*Nevertheless, on September 12, Uber unilaterally filed a "response" in which it self-helped itself to making additional arguments on the merits concerning trade secret "value" and accusations of "stonewalling and gamesmanship" in discovery. (Dkt. 1534 at 1:23 to 2:13.)*"  **Agreed that Uber filed a response to Waymo's list of alleged misconduct on September 12, in which it also enumerated Waymo's stonewalling and gamesmanship in discovery.   Otto Trucking filed its initial response on August 25, correcting misstatements and inaccuracies made by Waymo related to discovery misconduct by them.  (Dkt. No. 1370.)  The Court did not strike either response and invited declarations in support of the discovery misconduct of Waymo.  (Dkt. No. 1536.)**

15.     Response to Waymo Paragraph 6:  "*Initially, Uber's counter-allegations concerning discovery and the trade secret merits are irrelevant to Waymo's motion in limine and the requested list of Uber misconduct.  Waymo's motion seeks to preclude Uber from claiming "good citizenship" to the jury, or in the alternative to be allowed to counter Uber's evidence with evidence of Uber's misconduct.  Waymo has no intention of presenting or relying on evidence of Waymo's conduct during discovery, and so Waymo has not placed its own discovery conduct at issue to open the door for Uber to present counter-evidence on Waymo's conduct.  The issue raised was what Waymo is permitted to present to the jury in light of Uber's representation that it will*

---

4

1   *introduce evidence of its server search, firing of Levandowski, and allowance of on-site*

2   *inspections.*  **Denied that Uber's counter-allegations concerning discovery and the trade**

3   **secret merits are irrelevant.  As the Court noted, Uber and Otto Trucking will be allowed to**

4   **present evidence of Waymo's discovery misconduct:  "even if I were to allow you to put on**

5   **some kind of stonewalling testimony, if you stonewalled, at least they're going to get to reply**

6   **with that kind of stonewalling evidence before the jury." 6/29/17 Hr'g. at 87:7-16.**

7   **Defendants' showings of Waymo's stonewalling, delay and gamesmanship goes directly to**

8   **the issue raised by the Court, specifically that defendants will be allowed to reply to**

9   **Waymo's allegations of misconduct.  In addition, Otto Trucking contends that pre-filing**

10  **misconduct is relevant to this matter to show Waymo's flawed narrative and unclean hands.**

11  **Specifically, Waymo's complaint and preliminary injunction papers relied on false premises,**

12  **not based on the facts, which were contradicted by Waymo's own internal personnel.  For**

13  **example, although Waymo told this Court that the files that Mr. Levandowski allegedly**

14  **downloaded from the SVN server were the "crown jewels," its SVN administrator told**

15  **Waymo the opposite.  Moreover, Waymo obfuscated the witness whose factual averments it**

16  **sought to contradict in its pleadings.  *See, e.g.,* Dkt. No. 1524-3 at 1:6 – 2:11.  While Waymo**

17  **may only want to present evidence that shows the other parties in a bad light, and Waymo**

18  **understandably "has no intention of presenting or relying on evidence of Waymo's conduct**

19  **during discovery," defendants should be allowed to "balance the picture" and show**

20  **Waymo's unclean hands.**

21         16.      Response to Waymo Paragraph 7:  "*In that regard, Waymo notes that on September*

22  *13, 2017, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") affirmed*

23  *this Court's denial of Defendants' motions for relief from Judge Corley's orders compelling*

24  *Defendants to produce the report of Stroz Friedberg ("Stroz") and related materials and denying*

25  *Defendants' and Levandowski's motions to quash the Stroz subpoena.  Counsel for Defendants,*

26  *Levandowski and Stroz have informed counsel for Waymo that in light of the Federal Circuit's*

27  *ruling, they will be producing thousands of additional documents and materials.  Based on its*

28  *initial review of the Stroz report and exhibits, which* ████████████████████

5

1   ████████████████████████████████████████████████████████████████,

2   *Waymo expects to seek to supplement or amend its list of 23 items of discovery misconduct.*"

3   **Agreed that, on September 13, 2017, the United States Court of Appeals for the Federal**

4   **Circuit affirmed this Court's denial of defendants' motions for relief from Judge Corley's**

5   **orders compelling defendants to produce the report of Stroz Friedberg and related materials**

6   **and denying defendants' and Levandowski's motions to quash the Stroz subpoena.  Agreed**

7   **that counsel for Otto Trucking informed counsel for Waymo during a conference call**

8   **scheduled at 8:30AM PST the next day, September 14, that Otto Trucking would be**

9   **producing additional documents.  On September 14, 2017, Otto Trucking also complied with**

10  **the Court's order, producing about 1,000 documents relating to communications between**

11  **counsel for Ottomotto or Otto Trucking on the one hand, and counsel for Uber on the other**

12  **before the Joint Defense Agreement was signed on April 11, 2017.  These documents were**

13  **provided to Otto Trucking by its transaction counsel, O'Melveny & Myers, contain no**

14  **redactions, primarily concern Ottomotto, and have little to do with Otto Trucking.  Other**

15  **than ten documents that are password protected that Otto Trucking is working on accessing**

16  **and producing, Otto Trucking's production is complete.  Otto Trucking does not have**

17  **sufficient knowledge to agree with or deny the remainder of this paragraph, as it did not**

18  **possess the Stroz report or its exhibits, and cannot speculate on Uber's knowledge, what**

19  **Waymo saw for the first time or what Waymo intends to do.  Otto Trucking denies that it has**

20  **engaged in any discovery misconduct.**

21        17.     Response to Waymo Paragraph 8:  "*Pursuant to this Court's Order (Dkt. 1536),*

22  *Waymo specifically addresses below each of Defendants' accusations set forth at pages 1:23 to*

23  *2:13 of Defendants' response brief filed September 12 (Dkt. 1534) and statement on page 4 of that*

24  *brief concerning Waymo's privilege log.*"  **Agreed that Waymo attempts to address each of**

25  **Defendants' accusations, but denied that its responses are accurate.**

26        18.     Response to Waymo Paragraph 9:  "(a)  "*Selective waiver of privilege*" (1:24-25.)

27  *In support of its motion for a preliminary injunction, Waymo submitted the declaration of Gary*

28  *Brown, one of the Security Engineers at Google who worked on the forensic investigation into*

DEFENDANT OTTO TRUCKING'S RESPONSE TO THE DECLARATION OF JEFF NARDINELLI
CASE NO. 3:17-CV-00939-WHA

*Anthony Levandowski, Radu Raduta and Sameer Kshirsagar.*"  **Agreed.**

19.     Response to Waymo Paragraph 9:  "*That investigation – and all such investigations at Google and Waymo – was conducted at the direction of legal counsel and therefore protected as privileged and work product.  (Dkt. 25-29.)*"  **Denied that Waymo's forensic investigation is protected as privilege and work product.  Waymo's intentional disclosure of work product regarding the investigation and inconsistent application of the attorney-client privilege— allowing privileged discussions about "technical" parts of the investigation to be disclosed— waived privilege as to the entire investigation.  On August 18, Magistrate Judge Corley ordered that privilege waived, "as to counsel communications with Mr. Brown and anyone else involved in the investigations at issue as in fairness such communications should be disclosed."  (Dkt. No. 1272.)**

20.     Response to Waymo Paragraph 9:  "*Waymo, in good faith, made the strategic decision to waive work product with respect to the factual information disclosed by Mr. Brown in his declaration as part of its preliminary injunction motion.*"  **This statement is false.  Otto Trucking's first records of a statement by Waymo that it was waiving work product was from August 9 or 10 of this year, after the depositions of Mr. Brown and Gudjonsson.  Since the beginning of this case, Mr. Brown was identified as a fact witness. Waymo has resisted any finding of waiver throughout this case, requiring Otto Trucking to repeatedly seek Court relief.  Otto Trucking cannot agree with or deny Waymo's good faith or lack thereof, but Waymo's subsequent conduct, including its refusal to produce documents and information related to the forensic investigation, forcing Otto Trucking to move to compel, does not suggest good faith.  The fact that Waymo did not waive work product privilege until August 9 or 10 (after the depositions of Messrs. Brown and Gudjonsson) and opposed all aspects of Otto Trucking's motion to compel regarding attorney-client privileged communications as to the forensic investigation makes it unlikely that Waymo made an intentional, "strategic" decision to waive work-product immunity.  In fact, Waymo refused to waive work product until months after they claim to have done so in Mr. Nardinelli's declaration.  Attached hereto as Exhibit "1" is a true and correct copy of an August 6, 2017**

7

1    e-mail from Waymo's counsel, James Baker, refusing to produce documents on the grounds

2    of work product and attorney-client privilege ("the documents and information cited in rows

3    1, 6 and 8 of your table are privileged/work product").  Mr. Baker also repeatedly objected

4    and instructed Mr. Brown not to answer during his August 8, 2017 deposition.  *See*

5    Transcript of Deposition of Gary Brown, 8/8/17 at 136:7-137:14:

6              MS. GOODMAN: Well, I object to your clawback of that
               document and of whatever you're going to redact because you
7              allowed the witness to testify to the contents of the document,
               so that is a subject matter waiver and that's our position and
8              we will just leave it at that.
               MR. BAKER: Okay, we obviously disagree and we have
9              determined during the break that there is information on those
               pages that is privileged and work product and so we'll be
10             clawing those back.
               MS. GOODMAN: Okay; you have waived privilege, that's our
11             position, and I will leave it at that.  You stated your position
12             twice, I stated my position twice and we're done.
               MR. BAKER: I will just say I disagree.
13

14   *See also* 302:14-23.

15          It was not until a subsequent oral meet and confer on August 9 or 10 (after the

16   depositions of Mr. Gudjonsson and Mr. Brown) that Waymo ultimately indicated that it was

17   waiving work product as to the forensic investigation of certain employees.  However,

18   Waymo did not agree to waive attorney-client privilege, and the Court ultimately ordered a

19   subject matter waiver after Otto Trucking filed its Motion to Compel on August 11.

20          21.    Response to Waymo Paragraph 9:  "*Waymo took the position, however, that it had*

21   *not waived the attorney-client privilege covering Mr. Brown's direct communications with counsel,*

22   *or work product associated with  other aspects of the investigation not disclosed in the Brown*

23   *Declaration, such as the investigation into individuals other than Levandowski, Raduta and*

24   *Kshirsagar.*"  **Otto Trucking agrees that Waymo opposed Otto Trucking's motion to compel,**

25   **but Otto Trucking and the Court disagreed, as it also did with respect to communications**

26   **with Gudjonsson and Zbrozek.  Moreover, the Court ruled that Waymo's "strategic**

27   **decision" resulted in a subject matter waiver as to the forensic investigation.  (Dkt. No. 1272).**

28          22.    Response to Waymo Paragraph 10:  "*Defendants were on notice of Waymo's*

8

DEFENDANT OTTO TRUCKING'S RESPONSE TO THE DECLARATION OF JEFF NARDINELLI
CASE NO. 3:17-CV-00939-WHA

*position concerning waiver as early as March 23 when counsel for Waymo served a privilege log identifying numerous communications between Mr. Brown and outside counsel.*" **This statement is inaccurate. Otto Trucking was not "on notice" of Waymo's position concerning waiver as early as March 23.  In fact, Waymo refused to waive work product until August 9 or 10, 2017, after the depositions of Messrs. Brown and Gudjonsson, as discussed above.  Waymo served a privilege log on March 23 that identified a number of communications between Gary Brown and others, including outside counsel. The subject matter description was extremely generic. Only one document from that privilege log was ultimately produced.  The vast majority of documents did not show up on a privilege log until the close of discovery, including many relevant emails from Sasha Zbrozek.  It was only after depositions of Waymo witnesses occurred in July and August that Otto Trucking was aware of the level of involvement of the law firm Keker, Van Nest & Peters LLP ("KVN") in Waymo's investigation, as well as Waymo's efforts to corroborate KVN's predetermined outcome of that investigation.  OT moved to compel documents and testimony resulting from Waymo's waiver on August 11.  (Dkt. No. 1163.)  Judge Corley agreed, granted in part the motion to compel and ordered that a subject matter waiver as to the forensic investigation had occurred.  Magistrate Judge Corley ultimately determined that Waymo's attempt at "line drawing in Rule 502" would allow it to use its selective waiver of privilege as a shield and a sword.  (Dkt. No. 1272.)**

23.      Response to Waymo Paragraph 10:  "*Counsel for Waymo and Defendants also discussed the waiver issue the next day (March 24) during Mr. Brown's deposition after counsel for Waymo instructed him not to answer several questions that he deemed outside the scope of the waiver on the basis of attorney-client privilege and work product.*"  **On information and belief, as neither I nor my firm were involved in this matter at the time, denied to the extent that the deposition transcript does not reflect a substantive discussion regarding the waiver issue. The transcript does reflect Waymo's counsel repeatedly instructing Mr. Brown not to answer questions pertaining to the investigation on the grounds of privilege.  When then-counsel for Otto Trucking, Arturo Gonzalez of Morrison & Foerster LLP, challenged**

9

Waymo's counsel on the issue, stating, among other things, "You can't use privilege as a sword and a shield," Waymo's counsel withdrew the instruction and let the witness answer. Transcript of Deposition of Gary Brown, 3/24/17 at 40:10 – 41:13.

24.     Response to Waymo Paragraph 10:  "*Counsel for Waymo explained their position again on an April 10 meet and confer and subsequent April 10 and April 12 emails.  For example, the April 10 email states:*

> *Per and consistent with our discussion this morning, I have attached notes from Mr. Brown as Uber has requested. The production of the notes concerns and is limited to the disclosures in his declaration regarding the investigations addressed therein. This production is without waiver of and without prejudice to any other work product protection/privilege. To the extent his notes reflect any other investigation beyond the scope of his declaration, that material has been redacted/withheld as work product.  (Ex. 1, April 10 email.)*

Otto Trucking agrees that Exhibit 1 of Mr. Nardinelli's declaration is a true and correct copy of an April 10 email between counsel.

25.     Response to Waymo Paragraph 11:  "*Despite being on notice of Waymo's position with respect to its limited waiver as early as March 23, Defendants did not challenge the scope of Waymo's waiver claim until filing a motion to compel on August 11.  (Dkt. 1163.)*"  **Otto Trucking agrees that it filed a motion to compel on August 11 (Dkt. No. 1163).  Otto Trucking denies that it was on notice of Waymo's position with respect to its limited waiver as early as March 23 for the reasons stated above with respect to Paragraph 10.  Waymo did not say it was waiving privilege.  In fact, in the April 10 e-mail Waymo's counsel wrote, "This production is without waiver of and without any prejudice to any other work product protection/privilege."  Otto Trucking was also not "on notice" on March 23 for the reasons described above.**

26.     Response to Waymo Paragraph 11:  "*Waymo opposed the motion, and Judge Corley granted and denied it in part.  (Dkt. 1272).*"  **Agreed.**

27.     Response to Waymo Paragraph 11:  "*Specifically, in her August 18 Order, Judge Corley ruled that "Otto Trucking has not made any showing as to why communications regarding*

DEFENDANT OTTO TRUCKING'S RESPONSE TO THE DECLARATION OF JEFF NARDINELLI
CASE NO. 3:17-CV-00939-WHA

*investigations of other employees have been waived and thus the motion is denied to the extent I*

*seeks such relief." (Id.) Judge Corley also held however that "[w]hile the waiver of work*

*product does not necessarily waive attorney-client privileged communications, here the waiver of*

*work product over the investigation did waive the attorney-client privilege as to counsel*

*communications with Mr. Brown and anyone else involved in the investigations at issue as in*

*fairness such communications should be disclosed." (Id. at 2.) On this basis, Judge Corley*

*ordered Waymo to produce "communications regarding the investigation of the Former*

*Employees [Levandowski, Raduta and Kshirsagar]." (Id.)"* **Agreed that Waymo quotes a**

**portion of the August 18 Order, with the exception that the names of the Former Employees**

**were not included in that Order. (Dkt. No. 1272.) Denied that the August 18 Order**

**explicitly identified Messrs. Levandowski, Raduta and Kshirsagar. The August 18 Order**

**called for a subject matter waiver as to the forensic investigation.** *Id***. Judge Corley clarified**

**her Order to reflect those names as part of an Order from the bench on August 28. (Dkt.**

**No. 1391.) This August 28 Order is currently the subject of Otto Trucking's Motion for**

**Relief from Non-Dispositive Pretrial Order. (Dkt. No. 1522.)**

28.     Response to Waymo Paragraph 12: "*Waymo did not seek relief from Judge*

*Corley's order.*" **Agreed.**

29.     Response to Waymo Paragraph 12: "*Instead, Waymo collected the documents*

*referenced by Judge Corley in her Order and produced them on August 24.*" **Waymo did not**

**produce all documents called for by the August 18 Order. Waymo produced certain**

**documents referenced by Judge Corley in her Order at 8:54 p.m. pacific on August 24, the**

**last day of fact discovery. Waymo turned these documents over only after Otto Trucking**

**was forced to file a motion to compel and obtain an Order. Otto Trucking then had to seek**

**Court relief on four occasions to obtain additional documents and force Waymo to remove**

**inappropriate redactions, and all documents called for by the August 18 Order still have not**

**been produced. (***See* **Dkt. Nos. 1391, 1412, 1429 and 1479.) Each time Otto Trucking sought**

**relief from the Court, Waymo was ordered to produce more documents or allow additional**

**testimony.**

30.     Response to Waymo Paragraph 12:  "*On that day, Waymo also produced unredacted versions of previously redacted documents in compliance with Judge Corley's Order.*"  **Denied that Waymo produced all documents in compliance with Judge Corley's Order. Agreed that Waymo produced a total of 80 documents that related to its waiver of the attorney-client privilege.  Of these 80 documents, 29 of them were <u>heavily</u> redacted.  As noted above, Otto Trucking had to seek further relief from the Court on August 28, 30 and 31, among several meet and confers, to require Waymo to remove its improper redactions. As of Friday, September 15, responsive documents remain outstanding, as reflected in meet and confer correspondence sent by James Lin to Mr. Nardinelli on that date.  As of this writing, Otto Trucking has not received a response from Waymo.**

31.     Response to Waymo Paragraph 13:  "*On August 28, Judge Corley conducted a hearing at which several outstanding discovery issues were discussed, including the exact scope of the waiver intended by Judge Corley in her August 18 Order.*"  **Agreed that "outstanding discovery issues were discussed, including the exact scope of the waiver."  However, included within the "outstanding discovery issues" were Waymo's improper redactions that should not have been included due to the waiver.  Judge Corley held that Waymo should "weigh in favor of disclosure rather than non-disclosure."  (Dkt. No. 1414, August 28 Hr'g Tr. at 13:6-7.).  After waiting several days, Waymo's production was virtually unchanged.  Waymo only removed a handful of redactions on 8 pages.  Once again, Otto Trucking was forced to seek Court relief.**

32.     Response to Waymo Paragraph 13:  "*During the hearing, Judge Corley explained that the waiver only covered communications between counsel and the Waymo forensics team about the investigation of Levandowski, Raduta and Kshirsagar, not communications concerning other aspects of the broader investigation or internal work product that never even involved the forensics team.  (Dkt. 1414, August 28 Hr'g Tr. at 6-11.)*"  **This description of the scope of the waiver is incomplete.  Judge Corley further explained that Waymo's redactions cannot "slice and dice" between the forensic investigation, and elements of the investigation that were inextricably intertwined with the forensic investigation.  The Court again ordered Waymo to**

12

1    "err on the side of disclosure." (*Id*. at 15:8.)

2         33.    Response to Waymo Paragraph 13: "*Counsel for Waymo explained that Judge*

3    *Corley's description of the scope of the waiver was exactly how Waymo had interpreted the*

4    *Court's August 18 Order vis a vis its collection and production of documents on August 24. (Id. at*

5    *10-11.)*" **Otto Trucking agrees that counsel for Waymo discussed its interpretation of the**

6    **Court's August 18 Order at pages 10-11 of the hearing transcript. The scope of the waiver**

7    **was hotly contested. Waymo was later ordered to produce additional items from its**

8    **privilege logs that related to the forensic investigation, calling into question Waymo's**

9    **assertion that the scope of the waiver was "exactly how Waymo had interpreted the Court's**

10   **August 18 Order."**

11        34.    Response to Waymo Paragraph 14: "*During the August 28 hearing, counsel for*

12   *Defendants stated that they believed Waymo was still withholding and/or redacting certain*

13   *documents falling within the scope of the waiver as articulated by Judge Corley.*" **Agreed.**

14        35.    Response to Waymo Paragraph 14: "*In response, Judge Corley generously offered*

15   *to review the disputed documents in camera, rather than waste time on motion practice, if the*

16   *parties were not able to resolve the remaining issues during subsequent meet and confers. (Id. at*

17   *16 ('And what we could do, because I know we're on a tight timeline here, is rather than briefing,*

18   *we could just set a hearing and you can bring the documents here and we can sit here and talk*

19   *about them and do it in realtime that way.').)*" **Agreed.**

20        36.    Response to Waymo Paragraph 15: "*Over the next two days, counsel for the parties*

21   *conducted several meet and confers with the Special Master but could not resolve the outstanding*

22   *issues.*" **Otto Trucking agrees that counsel for the parties conducted several meet and**

23   **confers with the Special Master in the days following the hearing on August 28. On the meet**

24   **and confer between counsel on Wednesday, August 30, Defendants requested a conference**

25   **call with Judge Corley and wanted to take the Court up on its offer of in-camera review.**

26   **Waymo's counsel, James Baker was opposed to contacting the Court, and stated that he**

27   **instead wanted the subject to be briefed. Otto Trucking's position was that the matter had**

28   **been fully briefed in the motion to compel, no further briefing was required, and Waymo**

13

1   was causing further delay by not complying with the August 18 Order compelling

2   production.  Mr. Nardinelli's declaration omits that Waymo's counsel adamantly opposed

3   in-camera review.  Waymo's counsel also stated that Waymo was not obligated to produce

4   documents that were created after the forensic investigation was "complete," even though

5   there was no evidence of a bright line cutoff.

6          37.     Response to Waymo Paragraph 16:  "*On August 30, Judge Corley held a short*

7   *teleconference and ordered Waymo to bring the documents to Court the next day for an in camera*

8   *inspection.*"  **Otto Trucking agrees that on August 30, Judge Corley held a short**

9   teleconference and ordered Waymo to bring the documents to the Court the next day for an

10  in-camera inspection.  The teleconference with Judge Corley on August 30 was a result of

11  parties meet-and-confer on the same day, and was over Waymo's objection as described

12  above.  Otto Trucking's counsel presented its concerns regarding Waymo's stonewalling

13  with respect to the forensic investigation, including Waymo's artificial temporal limitation

14  on production.  Although Waymo's counsel first told Judge Corley that Waymo was not

15  taking such a position, his subsequent explanation made clear that Waymo was, in fact,

16  using a temporal limitation to withhold documents.  (Dkt. No. 1442, August 30 Hr'g Tr. at

17  13:20-14:4.)  Judge Corley disagreed and stated:

18                 Whatever date you claim the investigation ended -- and, by the
                   way, I mean, from the emails now that were only disclosed
19                 after my order on the motion to compel, it's clear that a lot of
                   this was happening just before the lawsuit was filed. So I don't
20                 know how you draw the line in terms of when -- you know,
                   when investigation ended, didn't end. It's sort of ongoing in
21                 that sense.

22   (Dkt. No. 1442, August 30 Hr'g Tr. at 14:5-9 and 14-20.)  Judge Corley set a hearing for the

23   next day and ordered Waymo to re-produce the 29 heavily redacted documents with fewer

24   redactions so that Defendants could review them in advance of the next day's hearing.

25   Judge Corley also ordered Waymo to bring all of its privilege logs for the Court's review.

26   Waymo produced the less-redacted documents at 5:37 p.m. that day.  Only portions of 8

27   pages of redactions were changed out of over 100 pages of redactions from Waymo's original

28

1  **production on August 24.  Counsel for Otto Trucking also identified the documents from**

2  **Waymo's privilege logs that it contended should be produced at approximately 8:48 p.m.**

3      38.    Response to Waymo Paragraph 16:  "*On August 31, counsel for Waymo brought the*

4  *documents in question to Court, and Judge Corley and counsel for the parties meticulously*

5  *reviewed every disputed document and redaction to determine what fell within or outside the*

6  *scope of the waiver.*"  **Otto Trucking agrees that counsel for Waymo brought the documents**

7  **in question to the hearing, and that the Court and the parties reviewed the disputed**

8  **documents and redactions.  However, the Court had asked the parties to engage Mr. Cooper**

9  **in the process.  Waymo's counsel then spent several hours organizing and reviewing the**

10 **documents.  When the parties began working with Mr. Cooper, Waymo stated it believed**

11 **that any production was subject to Federal Rule of Evidence 502, an issue which had been**

12 **discussed earlier in Court and which Otto Trucking had expressly rejected.  Because**

13 **Waymo was only willing to proceed with Mr. Cooper if F.R.E. 502 applied, the hours of**

14 **work were wasted and the parties returned to Judge Corley.  Judge Corley then reviewed**

15 **the disputed privilege log entries, accounting for 288 documents, and identified those items**

16 **that should be produced.**

17     39.    Response to Waymo Paragraph 16:  "*Judge Corley ruled on every document, and*

18 *for those that needed to be produced or unredacted ordered Waymo to do so by Saturday,*

19 *September 2.*"  **This description of Judge Corley's ruling is misleading because Waymo was**

20 **ordered to remove the majority of its redactions.  The Court ordered Waymo to remove**

21 **redactions on all 29 documents, and permitted only portions of some redactions in 2 of the 29**

22 **documents to remain.  Even as to these 2 documents, Waymo was ordered to remove**

23 **redactions in part.  Waymo was also ordered to produce certain additional documents listed**

24 **omits privilege logs.**

25     40.    Response to Waymo Paragraph 16:  "*Further, during the August 31 hearing, the*

26 *Court repeatedly made clear that Waymo's position was reasonable:  "I'm not faulting you, at*

27 *all." (Dkt. 1441, August 31 Hr'g Tr. at 40:16-17.)*"  **Otto Trucking denies that the Court**

28 **"repeatedly made clear" that Waymo's position was reasonable.  However, as to certain**

1   documents, the Court did make the comments identified above.  Waymo was ordered to

2   remove the majority of its redactions, and was ordered to remove redactions from every one

3   of the 29 documents, thus indicating that its positions on the waiver of privilege were neither

4   reasonable nor proper.  The Court repeatedly asked Waymo's counsel why certain portions

5   of the documents were redacted and recognized that the redactions were facially improper.

6   (Dkt. No. 1441.)

7        41.    Response to Waymo Paragraph 16:  *The Court stated that "I don't fault you at all*

8   *for the line that we're drawing," recognizing that "it's just very hard to do" and that Waymo was*

9   *not "trying to hide super-material information."  (Id. at 9:10-16, 71:13-14.)*"  **Otto Trucking**

10  **agrees that these quotes are correct, however, they are incomplete.  Again, 27 of the 29**

11  **documents had all redactions removed, and of those two remaining documents, redactions**

12  **were removed in them as well.  The court clarifies, for instance:  "-- produce this document**

13  **in unredacted form.  We can't -- this is what I said the other day.  You cannot slice it and**

14  **dice it that way.  It's all – Look.  When you choose to waive work product, that's a serious**

15  **decision; but it waives it as to the subject matter.  He's now saying this Roman Numeral II is**

16  **going to be within the prior scope of my work."  (Dkt. No. 1441, August 31 Hr'g Tr. at 36:17-**

17  **–24.)**

18  Response to Waymo Paragraph 17:  "*Pursuant to Judge Corley's order at the August 31 hearing,*

19  *Waymo produced the documents in question on September 2.*"  **Agreed as to the specific**

20  **documents, but certain other documents referenced in various email correspondence and**

21  **investigation documents have not been produced.  On September 1, the day after the August**

22  **31 hearing, and the day after the motion to compel cutoff, Waymo provided a new privilege**

23  **log with more than 1,300 previously undisclosed documents on it.  This was also the day *after***

24  **Waymo was ordered to appear at a hearing, during which the Court would review all of its**

25  **redactions and privilege logs, yet Waymo did not advise the Court that it had not provided a**

26  **privilege log with more than 4 times the amount of documents on previous logs (all of**

27  **Waymo's prior logs combined included 288 documents).  Waymo knew the logs were central**

28  **and at issue, was one of 2 items we were going to court about, never disclosed to us or the**

1  **Judge their intention to serve additional privilege logs, and in fact served a 1,300 entry**

2  **privilege log the very next day following our court hearings on exactly this issue.  On**

3  **September 7, Otto Trucking subsequently met and conferred again to get two additional**

4  **documents that were on that new log that had not been previously produced and appeared to**

5  **be subject to the waiver.  Waymo produced these documents on September 8, three weeks**

6  **after the Court's August 18 order compelling production.**

7  42.  Response to Waymo Paragraph 17:  "*In addition, Waymo made three witnesses*

8  *from the forensics team (Gary Brown, Kristin Gudjonsson and Sasha Zbrozek) available for a*

9  *second round of depositions on September 6 and 8.*"  **Denied to the extent this statement implies**

10  **that Waymo voluntarily made these witnesses available.  Waymo was ordered by the Court**

11  **to make Messrs. Brown, Gudjonsson, and Zbrozek available for a second round of**

12  **depositions on September 6 and 8.  Waymo resisted making Zbrozek available to Uber and**

13  **asserted Uber was not allowed to ask Zbrozek any questions.**

14  Response to Waymo Paragraph 18:  "*None of the conduct described above constitutes*

15  *"stonewalling" or "gamesmanship" on the part of Waymo or its counsel, as stated in Uber's*

16  *September 12 response brief. (Dkt. 1534.)*"  **Denied.  The complete picture of Waymo's conduct**

17  **described above, in Uber's responsive declaration and September 12 response brief (Dkt. No.**

18  **1534), constitutes "stonewalling" and "gamesmanship" on the part of Waymo and its**

19  **counsel.  In addition, <u>on September 17, 2017, at 9:54 p.m., Waymo made an additional</u>**

20  **<u>production of 3,397 documents, constituting 42,912 pages</u>.  Waymo sent a privilege log**

21  **regarding this production on September 18, 2017 at 9:32 a.m., the date of this declaration.**

22  **Due to the amount of documents and size of the production, Otto Trucking has been unable**

23  **to fully analyze the contents of the production, which appears to be related to Waymo's**

24  **alleged damages.  Otto Trucking is not aware of any basis for Waymo to have withheld such**

25  **a large volume of documents until three weeks after the discovery cutoff.**

26  43.  Response to Waymo Paragraph 18:  "*Waymo disclosed its understanding of the*

27  *scope of the waiver as early as March 2017.*"  **Denied.  The complete picture of Waymo's**

28  **conduct described above constitutes "stonewalling" and "gamesmanship" on the part of**

17

1  Waymo and its counsel.  Otto Trucking was not put on notice of the scope of Waymo's

2  waiver, nor did Waymo apparently understand the scope of its waiver, as described above.

3      44.    Response to Waymo Paragraph 18:  "*Ultimately, Judge Corley ruled that the*

4  *waiver encompassed not only work product but also attorney-client privileged communications*

5  *between counsel and the Waymo forensics team concerning the forensic investigation of*

6  *Levandowski, Raduta and Kshirsagar.*"  **Agreed in part.  The Court also found that privileged**

7  **activities with respect to investigation of other people are also waived to the extent the**

8  **investigation is intertwined with the investigation of Levandowski, Raduta, and Kshirsagar.**

9      45.    Response to Waymo Paragraph 18:  "*Following the Court's order on August 18 and*

10  *rulings at the August 28 and 31 hearings, Waymo completely and timely complied.*"  **Denied.  The**

11  **Court issued an order on Waymo's assertion of privilege over the forensic investigation on**

12  **August 18.  Waymo should have complied the next day, as Otto Trucking complied with the**

13  **Federal Circuit's decision on the Stroz order by producing all relevant documents the next**

14  **day (with the exception of 10 password-protected documents for which Otto Trucking is**

15  **attempting to open).  Instead, Waymo effectively withheld these documents through its**

16  **numerous improper redactions and delays in production.  Moreover, Waymo produced only**

17  **80 documents it said were responsive to the Court's August 18 Order.  These 80 documents**

18  **are purportedly the only results of a months-long investigation into numerous Google**

19  **employees – an investigation that the Court has identified as the "centerpiece" of its case.**

20  **(Dkt. No. 1414, August 28 Hr'g Tr. at 15.)  The small number of documents produced by**

21  **Waymo raises substantial concerns that Waymo's production remains incomplete.  Now**

22  **nearly a month after the Court's August 18 Order, Waymo still has not complied with the**

23  **Order, even after the Defendants have had to seek the Court's assistance four additional**

24  **times on this matter.  As noted above, Waymo is still producing documents as of today's**

25  **date.**

26      46.    Response to Waymo Paragraph 18:  "*As noted by Judge Corley at the August 28*

27  *hearing, the only reason for any delay concerning the scope of the waiver was because*

28  *Defendants waited until August 11 to bring their motion. (Dkt. 1414, August 28 Hr'g Tr. at 13-14*

1  *("the reason we are [at the close of discovery] is because you [counsel for Otto Trucking] didn't*

2  *bring this motion to my attention until later, so that I don't want to hear.").)*"  **This quote is taken**

3  **out of context.  As noted by Otto Trucking's counsel at the hearing, Otto Trucking filed its**

4  **motion regarding the scope of the privilege waiver on August 11—three days after deposing**

5  **Mr. Brown on August 8.  It was at Mr. Brown's deposition that Waymo asserted privilege**

6  **over attorney-client discussions with Mr. Brown regarding the scope of the forensic**

7  **investigation.  Upon learning this, Judge Corley responded "Okay.  All right.  Well, you need**

8  **to go back and look at this and look at your redactions.  As I said, you need to waive in favor**

9  **of disclosure."  (Dkt. No. 1414, August 28 Hr'g Tr. at 14:20-24.)  In addition, counsel for Otto**

10  **Trucking raised the issue of timing, because none of the information regarding the extent of**

11  **Waymo's investigation into departing employees could have been known to Defendants until**

12  **Waymo produced documents on August 24.  Only once Defendants had those documents**

13  **could they understand who was involved in the investigation, what the scope of the**

14  **investigation should have been, what Messrs. Brown and Gudjonsson had been told by**

15  **Waymo and Google's attorneys to do regarding the investigation.**

16      47.     Response to Waymo Paragraph 18:  "*Response to Waymo Paragraph 18:  "On this*

17  *record, Defendants should not be heard to accuse Waymo or its counsel of "stonewalling" or*

18  *gamesmanship.*"  **Denied on the basis of argument, based on the above discussion and on**

19  **Uber's enumeration of Waymo's conduct in its September 12 response brief.  (Dkt. No.**

20  **1534.)  Otto Trucking also refers to its summary judgment opposition (Dkt. No. 1525),**

21  **Motion in Limine 26 (Dkt. No. 1541) and motions to exclude the testimony of Messrs. Brown,**

22  **Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).  Otto Trucking also refers to Uber's**

23  **response to this Paragraph.**

24      48.     Response to Waymo Paragraph 19:  "'*Did not reach his conclusion independently.'*

25  *(1:26-2:1.)  Uber's charge that Waymo forensics investigator Gary Brown "did not reach his*

26  *conclusion independently," but rather "concluded that Mr. Levandowski did not improperly*

27  *download any files" and then changed his mind after being so instructed by litigation counsel, is*

28  *entirely false.*"  **Denied.  Waymo did not find any trade secret compromise at first, even**

19

1  though it retained Mr. Levandowski's computers and had reviewed log files.  Mr. Brown

2  and Waymo only came to their conclusions regarding the SVN server after the Mr. Gorman

3  sent his e-mails.  Mr. Brown stated under oath that he first investigated Mr. Levandowski

4  ████████████████████" shortly after Mr. Levandowski's departure from Google.  (Brown

5  Tr., March 24, 2017 at 11:2-4.)  However, Mr. Brown did not find any evidence of the alleged

6  download of the 14,000 files at that time.  *See id.* at 30:11-14 (████████████████████

7  ████████████████████████████████████████████)  After

8  Google learned of Uber's acquisition of Otto in July/August 2016, it renewed its investigation

9  into Mr. Levandowski.  Outside litigation counsel directed Google's forensic investigators to

10  find evidence of wrongdoing.  Specifically, Mr. Brown was instructed to corroborate the

11  attorney's conclusion that Mr.  Levandowski had taken the 14,000 files.  *See id.* at 36:9-16

12  (Q. Who told you that Mr. Levandowski had access to the server and downloaded 14,000

13  files? A. A lawyer. Q. Which lawyer? A. Tom Gorman. Q. And did you then seek to confirm

14  that by your analysis? A. Yes.)  Otto Trucking refers to its summary judgment opposition

15  (Dkt. No. 1525), Motion in Limine 26 (Dkt. No. 1541) and motions to exclude the testimony

16  of Messrs. Brown, Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).  Otto Trucking also

17  refers to Uber's response to this Paragraph.

18      49.      Response to Waymo Paragraph 19:  "*The only purported support that Defendants

19  cite for this proposition is their own brief, namely Otto Trucking's August 11 motion to compel

20  referenced above.*"  Otto Trucking does not have sufficient information to agree with or deny,

21  as it does not have firsthand knowledge of what Uber cites to in its declaration.  However,

22  Otto Trucking cited to sufficient evidence to support this point in its August 11 motion to

23  compel (Dkt. No. 1161), as well as its summary judgment opposition (Dkt. No. 1525), Motion

24  in Limine 26 (Dkt. No. 1541) and motions to exclude the testimony of Messrs. Brown,

25  Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).  Otto Trucking also refers to Uber's

26  response to this Paragraph.

27      50.      Response to Waymo Paragraph 19:  "*In that brief (Dkt. 1161-3 at 2), Otto Trucking*

28  *argues that "in March 2016, Mr. Brown performed a forensic review of log data associated with*

20

1  *Mr. Levandowski"* and that *"[a]t that time, Mr. Brown did not discover that Mr. Levandowski*

2  *improperly downloaded any files."*  **Otto Trucking agrees that it made this argument in its**

3  **August 11 motion to compel.   Otto Trucking cited to sufficient evidence to support this point**

4  **in its August 11 motion to compel (Dkt. No. 1161), as well as its summary judgment**

5  **opposition (Dkt. No. 1525), Motion in Limine 26 (Dkt. No. 1541) and motions to exclude the**

6  **testimony of Messrs. Brown, Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).   Otto**

7  **Trucking also refers to Uber's response to this Paragraph.**

8      51.     Response to Waymo Paragraph 19:  *"As Defendants have known since they took his*

9  *deposition six months ago, Mr. Brown did not review any log data in March 2016, and thus could*

10 *not possibly have concluded that there had been no download.  (Ex. 2, Brown PI Dep. at 22:15-19*

11 *["Q Approximately how many hours did you spend in March of 2016 working on this event*

12 *pertaining to Mr. Levandowski. A Zero hours."].)"*  **Denied.  The evidence supports that Mr.**

13 **Brown and Mr. Gudjonsson reviewed log data and concluded that there had been no**

14 **download.  Brown Tr., August 8, 2017 at 235:17-20 ("** ███████████████████████

15 ███████████████████████████████████**");** *see also* **232:17-19; Gudjonsson**

16 **Tr., July 28, 2017 at 202:18-21 ("** ███████████████████████████████████████

17 ███████████████████████████████████████████████████

18 ███████████████████████████**");** *see also* **209:4-6; Gudjonsson Tr., September 8, 2017**

19 **at 256:22-24, 261:21-25, 411:13-25; and Otto Trucking's summary judgment opposition**

20 **(Dkt. No. 1525), Motion in Limine 26 (Dkt. No. 1541) and motions to exclude the testimony**

21 **of Messrs. Brown, Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).  Otto Trucking also**

22 **refers to Uber's response to this Paragraph.**

23      52.     Response to Waymo Paragraph 19:  *"In fact, Mr. Brown did not learn of*

24 *Levandowski's download until October 2016, when attorney Tom Gorman emailed Mr. Brown*

25 *and others explaining what he had recently learned from Sasha Zbrozek (the Google engineer who*

26 *provided the log data from the SVN server showing Levandowski's download) and asking for*

27 *additional help investigating:*

28

DEFENDANT OTTO TRUCKING'S RESPONSE TO THE DECLARATION OF JEFF NARDINELLI
CASE NO. 3:17-CV-00939-WHA

1

*The goal, ultimately, is to figure out why he was doing whatever he*
*was doing in December 2015 and January 2016.*

2

3

*Specifically, we recently learned that on 12/11/2015, anthonyl used a*
*Windows machine (@ 216.239.45.222) to sync all of Chauffeur's*
*schematics for electronics and printed-circuit boards from a*
*Chauffeur system. We don't have a host name for that machine, but If*
*I'm understanding your emails, the only Windows machine assigned*
*to Anthony on 12/11 was anthonyl0-w. Ten days later, Anthony wiped*
*that machine and reformatted with the Goobuntu OS, which doesn't*
*make a ton of sense because Anthony already had a Goobuntu*
*workstation and a Goobuntu laptop. He never used anthonyl0-w*
*again. And then the day before he quit, he wiped his other Goobuntu*
*laptop.*

4

5

6

7

8

9

*That's pretty suspicious, right?*

10

11

(Dkt. 1433-13, at 5.) . . ."

12

**Otto Trucking agrees that it has repeatedly contended that Mr. Gorman and KVN directed**

13

**the conclusion of the investigation to Mr. Brown, including that Mr. Levandowski**

14

**purportedly downloaded files.  Otto Trucking discussed this issue in detail in its summary**

15

**judgment opposition (Dkt. No. 1525), Motion in Limine 26 (Dkt. No. 1541) and motions to**

16

**exclude the testimony of Messrs. Brown, Gudjonsson and Hesselink (Dkt. Nos. 1620 and**

17

**1610).  Otto Trucking also refers to Uber's response to this Paragraph.**

18

53.     Response to Waymo Paragraph 20:  "*Contrary to Defendants' suggestion, Mr.*

19

*Brown did not follow any "instruction" from Mr. Gorman other than to take up Mr. Gorman's*

20

*invitation to help figure out what Levandowski had been doing.*"  **Deny.  Mr. Gorman asked Mr.**

21

**Brown and his manager, Mr. Gudjonsson, to search in specific areas and to investigate**

22

**specific theories of liability, at the exclusion of other equally plausible or more plausible**

23

**explanations.  Mr. Gorman did not conduct an investigation into other of Anthony's devices,**

24

**did not corroborate whether the downloading was abnormal as compared to other**

25

**employees at Chauffeur.  In fact, Mr. Zbrozek said this type of bulk downloading of the SVN**

26

**server was *not* abnormal (and the e-mail in which he makes this statement was not shared**

27

**with Mr. Brown).  Otto Trucking discussed this issue in detail in its summary judgment**

28

**opposition (Dkt. No. 1525), Motion in Limine 26 (Dkt. No. 1541) and motions to exclude the**

DEFENDANT OTTO TRUCKING'S RESPONSE TO THE DECLARATION OF JEFF NARDINELLI
CASE NO. 3:17-CV-00939-WHA

1    testimony of Messrs. Brown, Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).  Otto

2    Trucking also refers to Uber's response to this Paragraph. As Waymo has resisted any effort

3    to take Mr. Gorman's deposition, it continues to stonewall on this factual assertion by Mr.

4    Nardinelli.

5          54.      Response to Waymo Paragraph 20:  "*Specifically, Mr. Brown asked Mr. Gorman –*

6    *not the other way around – for additional information concerning Levandowski's download, such*

7    *as how Mr. Gorman had learned of the download and the IP address that Levandowski used and*

8    *the domain address of the SVN server.  (Id.)*"  **Agreed that Mr. Brown asked Mr. Gorman**

9    **about the SVN server.  This is because Brown, a security engineer, has no familiarity with**

10    **the SVN server or its contents.  Otto Trucking disagrees with Waymo's assertion that Mr.**

11    **Gorman did not ask Mr. Brown for information for at least the reasons noted above in its**

12    **response to this paragraph.  Mr. Brown testified under oath that Mr. Gorman directed the**

13    **investigation, as Mr. Gorman "**▓▓▓▓▓▓▓▓▓▓**" and Mr. Brown "**▓▓▓▓▓▓▓▓

14    ▓▓▓▓▓▓▓**"  Brown Tr., September 6, 2017 at 357:9-19.  Otto Trucking**

15    **discussed this issue in detail in its summary judgment opposition (Dkt. No. 1525), Motion in**

16    **Limine 26 (Dkt. No. 1541) and motions to exclude the testimony of Messrs. Brown,**

17    **Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).  Otto Trucking also refers to Uber's**

18    **response to this Paragraph.**

19          55.      Response to Waymo Paragraph 20:  "*After Mr. Gorman provided that information,*

20    *Mr. Brown independently conducted additional research, and determined (using multiple,*

21    *corroborating data sources) that a computer registered to Levandowski accessed the SVN from a*

22    *WiFi connection inside a Waymo building on December 11, just minutes after downloading*

23    *TortoiseSVN software.  (Id.)*"  **Deny.  Otto Trucking discussed this issue above and in its**

24    **summary judgment opposition (Dkt. No. 1525), Motion in Limine 26 (Dkt. No. 1541) and**

25    **motions to exclude the testimony of Messrs. Brown, Gudjonsson and Hesselink (Dkt. Nos.**

26    **1620 and 1610).  Otto Trucking also refers to Uber's response to this Paragraph.**

27          56.      Response to Waymo Paragraph 20:  "*Mr. Brown gathered this information*

28    *independently, and at no prior point had he ever reached a contrary conclusion.*"  **Deny.  Otto**

23

DEFENDANT OTTO TRUCKING'S RESPONSE TO THE DECLARATION OF JEFF NARDINELLI
CASE NO. 3:17-CV-00939-WHA

Trucking discussed this issue above and in its summary judgment opposition (Dkt. No. 1525), Motion in Limine 26 (Dkt. No. 1541) and motions to exclude the testimony of Messrs. Brown, Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).  Otto Trucking also refers to Uber's response to this Paragraph.

57.     Response to Waymo Paragraph 21:  "*'Waymo withheld information…' (2:1-4.)  I understand this passage to be a reiteration of Uber's prior charges concerning Waymo's waiver of privilege, which I have addressed above.*"  **Agreed that Waymo withheld information.  Otto Trucking is without sufficient information to agree with or deny whether Uber reiterated its prior charges.  Otto Trucking also refers to Uber's response to this Paragraph.**

58.     Response to Waymo Paragraph 21:  "*For example, the scope of the investigation, communications with attorneys, and keywords provided by attorneys relating to the search were all subject to good-faith privilege claims and have since been produced.*"  **Deny, as discussed above, that Waymo acted with a good faith basis in waiving privilege – Waymo intended to use privilege as a sword and a shield.**

59.     Response to Waymo Paragraph 21:  *By 'information the employee was told to ignore' I gather Uber is repeating its false charge that Gary Brown analyzed data in March but was told to ignore that analysis.*"  **Agreed that Uber is making this charge, to which Otto Trucking concurs, but deny that it is false.  Otto Trucking discussed this issue above and in its summary judgment opposition (Dkt. No. 1525), Motion in Limine 26 (Dkt. No. 1541) and motions to exclude the testimony of Messrs. Brown, Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).  Otto Trucking also refers to Uber's response to this Paragraph.**

60.     Response to Waymo Paragraph 22:  "*'Only after it was compelled to do so…' (2:4-10.)  I understand this passage to again rehash Uber's charge concerning Waymo's waiver of privilege, but the passage also contains two substantive allegations that I now address.*"  **Agreed that this passage appears to relate to charges regarding the waiver issue, to which Otto Trucking concurs.  Otto Trucking also refers to Uber's response to this Paragraph.**

61.     Response to Waymo Paragraph 23:  "*'Emails that confirm that the 14,000 files are not valuable trade secrets.'  Uber points to an email from Sasha Zbrozek that refers to the content*

1   *of the SVN as 'low-value.'  Waymo did not 'withhold' this email, but timely produced it on August*

2   *24 after Otto Trucking moved to compel privileged documents, and after the Court ordered its*

3   *production, along with other documents that were the subject of the Court's order.  Further, one*

4   *person's out-of-context email excerpt does not itself 'confirm' that all of Waymo's documents and*

5   *testimony proving that the 14,000 files contain valuable trade secrets are false. Mr. Zbrozek has*

6   *confirmed at deposition that he meant only to say that the 14,000 files are considered less critical*

7   *to Google than Google's top-security items, such as personal user data and the source code*

8   *behind Google's search algorithm:*

9           *Q.   And then you say 'it's pretty low value.'  Do you see that?*

10          *A.   I do see that.*

11          *Q.   And that was true, wasn't it?*

12          *THE WITNESS:  What do you mean?*

13          *Q.   Do you want me to define 'true'?*

14          *A.   No.  I am asking you to define 'low value.'*

15          *Q.  Those are your words.*

16          *A.    So I will say that this is a very relative thing.  And Google data*
17          *policies were designed with code and user data in mind and were*
            *perhaps not the greatest fit for the kind of data that we wanted to*
18          *store and that relative to instantly Google ending data breaches,*
            *that the data that was in the Subversion server would be considered*
19          *of lesser value.  But by how much, I don't know; and in absolute*
            *terms, I have no idea."*

20  *Ex. 3, Zbrozek deposition at 208:18-209:11.*

21  **Deny that Waymo timely produced the e-mail at issue, which would have been subject to the**

22  **August 18 order, or that it was fully produced on August 24.   Waymo produced a heavily**

23  **redacted version of this document, and the Court ordered Waymo to remove the redactions.**

24  **(August 31 Hr'g Tr. at 36-37.)  A fully unredacted copy was not produced by Waymo until**

25  **September 2, after three conferences with Judge Corley.  Otto Trucking also refers to Uber's**

26  **response to this Paragraph.**

27       *62.*     Response to Waymo Paragraph 24:  *"'Downloads of this nature are not so*

28  *exceptional.'  Uber again points to Mr. Zbrozek's email, which states that Mr. Levandowski's*

1   *download '[d]oesn't ring the alarm bells for me,' as confirmation that Levandowski's download*

2   *was unexceptional.  The email itself contradicts Uber's reading:  it states that for Levandowski,*

3   *such a download 'clearly wasn't part of his routine.'  And again, Mr. Zbrozek clarified that his*

4   *'alarm bells' statement took no account of the context of Levandowski's actions, but meant only to*

5   *say that a single bulk download, absent any other factors, is not suspicious:*

6

7
   > *Q.   And it didn't ring the alarm bells for you, did it?*

8
   > *A.   I will say that, on its own, as a single action in absence of*
   > *context, pulling the Subversion repository is not suspicious, but that*
9  > *as part of a larger narrative, you know, suspicion may or may not*
   > *come into play, right. You know, if the logs -- if the logs showed you,*
10 > *you know, someone pulling information and putting that information*
   > *somewhere else and then leaving the company, maybe that's*
11 > *suspicious.  Maybe just looking at the log files on their own isn't*
   > *enough to tell that story.  (Ex. 3, Zbrozek Dep. at 230:5-16.)"*

12

13  **Deny that there is only one piece of evidence to show that Waymo did not consider these**

14  **14,000 documents of value.  There are multiple emails that discuss this issue.  *See, e.g.*, Dkt.**

15  **No. 1586-2 at 86936 ("I'm a little leery because both of those numbers aren't really**

16  **meaningful to any narrative. It also has a chilling effect on being a hardware engineer – we**

17  **all do full checkouts, and it makes me uncomfortable to think that lawyers are trying to**

18  **ascribe suspicion to it.")  Otto Trucking agrees that Mr. Zbrozek made these comments at**

19  **his second deposition.  Otto Trucking questions the veracity of Mr. Zbrozek's comments**

20  **when compared to the actual text of the emails.  Specifically, Mr. Zbrozek drafted multiple**

21  **emails that were sent months apart in which he stated these files were of "low-value."  (*See***

22  **Dkt. Nos. 1586-1 and 1586-2.)  He referred to these files as "low value" as far back as**

23  **February 2015.  The primary issue here, however, is not what Mr. Zbrozek said in**

24  **deposition, but instead Waymo's delayed production on what are clearly highly relevant**

25  **documents that call into question Waymo's repeated statements to the Court.  Otto Trucking**

26  **discussed this issue in detail in its summary judgment opposition (Dkt. No. 1525), Motion in**

27  **Limine 26 (Dkt. No. 1541) and motions to exclude the testimony of Messrs. Brown,**

28  **Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).  Otto Trucking also refers to Uber's**

DEFENDANT OTTO TRUCKING'S RESPONSE TO THE DECLARATION OF JEFF NARDINELLI
CASE NO. 3:17-CV-00939-WHA

response to this Paragraph.

63.    Response to Waymo Paragraph 25:  "*In a separate email thread, Mr. Zbrozek stated that it 'makes me uncomfortable to think that lawyers are trying to ascribe suspicion' to Levandowski's bulk download.  Again, Mr. Zbrozek clarified at his deposition that he lacked the context surrounding the download, and was concerned only 'about setting a precedent for that one action in isolation being in and of itself a marker of suspicion.' (Ex. 3, Zbrozek Dep. at 238:12-239:25.)*"  **Otto Trucking agrees that Mr. Zbrozek testified to this during his deposition. However, his attempts to backtrack are not credible and are inconsistent with his internal communications at Waymo before litigation was filed.  Otto Trucking discussed this issue in detail in its summary judgment opposition (Dkt. No. 1525), Motion in Limine 26 (Dkt. No. 1541) and motions to exclude the testimony of Messrs. Brown, Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).  Otto Trucking also refers to Uber's response to this Paragraph.**

64.    Response to Waymo Paragraph 26:  "*Further, Levandowski's SVN log showed that only once between September 2015 and January 2016 did Levandowski access the SVN, and there is ample testimony in this case that Levandowski did not know how to use Altium, which is the software required to work with files stored on the SVN.*"  **Altium is not required to use the SVN server.  The Tortoise SVN website specifically says that it can be used with "whatever development tools you like, and with any type of file."  See Tortoise SVN Website at: https://tortoisesvn.net/about.html.  Waymo erased SVN log data older than 52 weeks as a matter of corporate policy.  See Dkt. No. 1317-3.  The log searches Mr. Nardinelli references here were run by Waymo on September 19, 2016, which went back 52 weeks to September 19, 2015.  Id.  Mr. Levandowski left Google on January 27, 2016.  As a result, Waymo only had approximately 4 months' worth of SVN log data pertaining to Mr. Levandowski.  To the extent that Waymo implies Mr. Levandowski's SVN activity was abnormal because he accessed the SVN server "only once," such an assertion is unsupported and rejected. Waymo made no further inquiry into Mr. Levandowski's SVN accesses beyond September 19, 2015.  Id.  As Mr. Nardinelli explained, "Waymo did not preserve other SVN log data at that time."  Id.  In addition, Mr. Levandowski was issued two passwords to the SVN server**

27

1  that were created because he was put on an Access Control List for the SVN server.  The

2  Access Control List, according to Waymo, was limited to those people who needed to access

3  the SVN server.  Mr. Zbrozek also testified that Mr. Levandowski had been granted access

4  rights because he also had access rights to the system housing the same information before

5  the SVN server was launched.  Otto Trucking discussed this issue in detail in its summary

6  judgment opposition (Dkt. No. 1525), Motion in Limine 26 (Dkt. No. 1541) and motions to

7  exclude the testimony of Messrs. Brown, Gudjonsson and Hesselink (Dkt. Nos. 1620 and

8  1610).  Otto Trucking also refers to Uber's response to this Paragraph.

9       65.     Response to Waymo Paragraph 26:  "*It is true that other engineers at Waymo*

10  *download files from the SVN, including bulk downloads.  That is their job.*"  **Downloading all**

11  **files is not the job of an engineer at Waymo, but it is a typical practice according to the**

12  **evidence.  Not all Chauffeur employees had credentials to access the SVN server.**

13  **Credentials had to be expressly granted by the SVN administrator.  Engineers at Waymo,**

14  **including Mr. Levandowski, were granted SVN server access credentials.  Moreover, the**

15  **SVN administrator distributed downloading instructions for engineers to conduct bulk**

16  **downloads of the SVN server contents.  When those instructions were followed, the**

17  **download would be of the entire contents of the SVN server.  Indeed, engineers at**

18  **Chauffeur, including Mr. Zbrozek, have downloaded the entire contents of the SVN server**

19  **in this manner.  Otto Trucking discussed this issue in detail in its summary judgment**

20  **opposition (Dkt. No. 1525), Motion in Limine 26 (Dkt. No. 1541) and motions to exclude the**

21  **testimony of Messrs. Brown, Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).  Otto**

22  **Trucking also refers to Uber's response to this Paragraph.**

23       66.     Response to Waymo Paragraph 26:  "*That is the reason that the SVN contents are*

24  *so valuable—because it is the confidential work product of Waymo's engineers and the repository*

25  *of Waymo's proprietary, industry-leading designs.*"  **Denied on the basis of argument.  As**

26  **already explained, Mr. Zbrozek does not describe the SVN contents the way Mr. Nardinelli**

27  **characterizes here.  Mr. Zbrozek is an engineer who designs materials placed into the SVN**

28  **repository and is also the original SVN administrator.  Rather, Mr. Zbrozek repeatedly**

explained these contents were "low-value," such that Google had considered hosting the data off of internal Google servers.  In fact, the SVN server can be accessed outside of Google's network and uses different passwords than the Google system.  The poor measures to protect this information are fully outlined in Otto Trucking's expert report of Eric Laykin.  Otto Trucking discussed this issue in detail in its summary judgment opposition (Dkt. No. 1525), Motion in Limine 26 (Dkt. No. 1541) and motions to exclude the testimony of Messrs. Brown, Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).  Otto Trucking also refers to Uber's response to this Paragraph.

67.     Response to Waymo Paragraph 26:  "*The fact that others access the SVN for valid reasons does not mean Levandowski's access was valid.*"  **As explained in Paragraph 66, Google's log retention policy erased anything older than 52 weeks.  As such, Google had only 4 months of log data pertaining to Mr. Levandowski.  It did not further analyze whether Mr. Levandowski's activity pertaining to the SVN server was abnormal, much less "invalid." Otto Trucking discussed this issue in detail in its summary judgment opposition (Dkt. No. 1525), Motion in Limine 26 (Dkt. No. 1541) and motions to exclude the testimony of Messrs. Brown, Gudjonsson and Hesselink (Dkt. Nos. 1620 and 1610).  Otto Trucking also refers to Uber's response to this Paragraph.**

68.     Response to Waymo Paragraph 27:  "'*Waymo also failed to produce...' (2:10-13.) Uber charges that Waymo produced one third of its production on the last day of discovery.*" **Agreed.**

69.     Response to Waymo Paragraph 27:  "*This accusation is highly misleading.*" **Denied on the basis of argument and for the reasons explained in Paragraphs 70–71.**

70.     Response to Waymo Paragraph 27:  "*Much of Waymo's August 24 production came in timely response to 34 RFPs that were not served by Defendants until July 25.*"  **Denied; As Waymo is well aware given the expedited discovery schedule it has requested from the Court and the parties in this case, the 1-month period of time between Defendants' document request and Waymo's production is not timely.**

71.     Response to Waymo Paragraph 27:  "*Through one of those RFPs, Otto Trucking*

29

1    *sought "all communications" between Waymo (defined as Waymo, Google, and Alphabet) and*

2    *five outside vendors, not limited in time, subject matter, or along any other line.  Waymo's*

3    *production in response to this RFP alone numbered nearly 4,000 documents.  The production may*

4    *not have been particularly useful, and likely had nothing to do with any of the witnesses who had*

5    *already been deposed, but it was exactly what Otto Trucking asked for in its broad RFP."* **Denied**

6    **on the basis of argument.  Upon information and belief, Waymo responded to the above**

7    **referenced request and represented that the production would include "otherwise-relevant**

8    **communications."  Mr. Nardinelli's statement does not address and whether it was produced**

9    **consistent with Waymo's representation.  Moreover, these documents contain specifications,**

10   **designs, and other technical information of LiDAR systems and componentry provided to**

11   **Waymo by third parties and are highly relevant to Waymo's claims of trade secret**

12   **misappropriation in this case.**

13         **72.**    Response to Waymo Paragraph 28:  "*Further, Uber's allegation does not identify a*

14   *single witness for whom Waymo failed to timely produce relevant documents.*"  **Upon**

15   **information and belief, the following is a non-exhaustive list of deponents for whom Waymo**

16   **failed to timely produce relevant documents:**

17              a.   **Larry Page:  deposed 7/17 (Monday); relevant documents produced 3:42 pm**

18                    **on Saturday, 7/15;**

19              b.   **Jennifer Haroon:  deposed 7/26; relevant documents produced 12:00 am on**

20                    **7/25;**

21              c.   **Chelsea Bailey:  deposed on 8/1; relevant documents produced 7:56pm on 7/31;**

22              d.   **John Krafcik:  deposed on 8/2; relevant documents produced 7:56pm on 7/31;**

23              e.   **Pierre Droz:  deposed 8/3; relevant documents produced 5:50 PM on 8/2;**

24              f.   **Meiling Tan:  deposed on 8/4; relevant documents produced 8:51pm on 8/3;**

25              g.   **Jai Krishnan:  deposed on 8/9; relevant documents produced 3:04 pm on 8/8;**

26              h.   **Gary Brown:  deposed on 8/8; relevant documents produced 6:58 pm on 8/7,**

27                    **and additional custodial documents were produced 3:04pm on 8/8;**

28              i.   **Dmitri Dolgov:  deposed on 8/8; relevant documents produced 6:58 pm on 8/7,**

1        **and additional custodial documents were produced 3:04pm in 8/8;**

2           **j.   Don Harrison:  deposed on 8/17; relevant documents produced 3:33 pm on**

3               **8/16;**

4           **k.   Gerard Dwyer:  deposed on 8/9; relevant documents produced 6:58pm on 8/7;**

5        73.        Response to Waymo Paragraph 28:  *"This is likely because Waymo took*

6    *extraordinary efforts to produce documents prior to depositions, including hiring an offsite team*

7    *of dozens of reviewers specifically to review documents in order to produce them in advance of*

8    *depositions."*  **The list of untimely productions enumerated in Paragraph 74 belies this**

9    **statement.  Otto Trucking can neither confirm nor deny Waymo's internal discovery activity**

10   **or lack thereof.**

11       74.        Response to Waymo Paragraph 28:  *"The result was continuous document*

12   *production for several weeks leading up to the end of fact discovery: [table on pgs. 11–13 of the*

13   *Nardinelli Declaration omitted]"*  **Otto Trucking can neither confirm nor deny Waymo's**

14   **internal discovery activity or lack thereof.**

15       75.        Response to Waymo Paragraph 29:  *"'Waymo also failed to include custodian*

16   *information in thousands…' (2:12-13.)  This charge is also false."*  **Deny; Waymo produced**

17   **over 3,900 documents that did not properly identify a custodian.  Otto Trucking makes**

18   **reference to Uber's Response in Paragraph 29 in which Waymo counsel represented to Uber**

19   **counsel on August 29, 2017 stating that it has used "Google" as a placeholder for documents**

20   **collected through "noncustodial means" including through manual collection.  It has also**

21   **claimed that to determine custodian information for these documents would be a "burden"**

22   **and that they "cannot do it" for all documents in their production that list "Google" as a**

23   **custodian.**

24       76.        Response to Waymo Paragraph 29:  *"To date Waymo has produced 22,352*

25   *documents."*  **Agreed as of the date of the Nardinelli declaration.  Waymo made a production**

26   **of an additional 3,400 documents the night before this response is due, on September 17,**

27   **2017, several weeks after the August 24, 2017 fact discovery cut-off.**

28       77.        Response to Waymo Paragraph 29:  *"For every one of these documents, Waymo*

31

1   *provided Defendants with one or more associated custodians.*"  **Denied for the reasons**

2   **explained in Paragraph 75.**

3       78.      Response to Waymo Paragraph 29:  "*The highest-volume individual custodian is*

4   *Waymo lead hardware engineer and 30(b)(6) witness Pierre Droz, with 3,344 documents.*"

5   **Agreed.**

6       79.      Response to Waymo Paragraph 30:  "*For 4,053 documents, the listed custodian is*

7   *'Google.'*"  **Agreed.**

8       80.      Response to Waymo Paragraph 30:  "*This is because many documents are not*

9   *associated with an individual custodian, such as Google policy documents or documents*

10  *maintained in central Google repositories rather than individual accounts.*"  **The representations**

11  **made by counsel for Waymo belie this statement.  Otto Trucking references Uber's**

12  **Response at Paragraph 30(a) as an email correspondence dated August 29, 2017 from**

13  **Waymo counsel to Uber counsel stating that for certain documents Waymo listed Google as**

14  **the custodian "where the document was collected manually by someone not necessarily**

15  **affiliated with the document itself" and that "in order to collect additional document**

16  **metadata we would need to manually trace the documents to its owner."**

17      81.      Response to Waymo Paragraph 30:  "*On the very infrequent occasions Defendants*

18  *have asked Waymo to provide additional metadata, Waymo has manually examined the documents*

19  *to provide it.*"  **Denied; upon Otto Trucking's information and belief, Uber had requested,**

20  **and Waymo had refused, to provide metadata for 3,807 documents that listed "Google" as a**

21  **custodian.**

22      82.      Response to Waymo Paragraph 30:  "*Uber does not identify any specific deposition*

23  *preparation that was hindered.*"  **Denied; Otto Trucking respectfully directs the Court's**

24  **attention to its response at Paragraph 72.**

25      83.      Response to Waymo Paragraph 31:  "'*Still has not produced a privilege log...*'

26  *(4:26-27.)  This allegation is false.  On September 7 and 8, Waymo produced four sets of*

27  *documents responsive to the acquisitions covered by the Court's order (volumes 60-63).*"  **Upon**

28  **information and belief, Otto Trucking does not believe these documents are all "responsive**

to the acquisitions," as many pertain to requests for production that were made far in advance of Waymo's September production.

84.     Response to Waymo Paragraph 31: "Waymo served its privilege log covering those sets on September 11, the day before Defendants filed its brief accusing Waymo of failing to provide one." **Agreed.**

85.     Response to Waymo Paragraph 31: "*Since the original filing of that brief, Defendants have filed an "errata" admitting that in fact their charge was false.  (Dkt. 1580.).*" **Agreed to the extent the "charge" refers to Uber's initial belief that Waymo did not file said privilege log.**

86.     Response to Waymo Paragraph 32: "*In summary, Uber's 'response' brief is irrelevant to Waymo's MIL and the list of Defendants' post-complaint misconduct requested by the Court. Uber should not be allowed to transform the issue of Waymo's MIL into a he-said-she-said argument before the jury concerning Waymo's discovery conduct.  The proper issue before the court is what post-complaint conduct by Defendants Waymo is permitted to put before the jury to 'balance the picture' in light of the Court's ruling that Uber may rely on certain post-complaint discovery conduct.  Moreover, the accusations and merits-based arguments contained in Uber's "response" brief are wholly without support.*" **Denied as to the allegations contained therein. To the extent Waymo Paragraph 32 raises argument, Otto Trucking states that it is a response unsuited for briefing in this declaration.**

I declare under penalty of perjury under the laws of the United States that  the foregoing is true and correct. Executed this 18th day of September, 2017 in Menlo Park, California.

/s/ Neel Chatterjee
Neel Chatterjee

DEFENDANT OTTO TRUCKING'S RESPONSE TO THE DECLARATION OF JEFF NARDINELLI
CASE NO. 3:17-CV-00939-WHA

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on September 18, 2017. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.  Executed this 18th day of September 2017.

/s/ <em>Neel Chatterjee</em>
Neel Chatterjee

DEFENDANT OTTO TRUCKING'S RESPONSE TO THE DECLARATION OF JEFF NARDINELLI
CASE NO. 3:17-CV-00939-WHA