MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:     415.268.7000
Facsimile:     415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Telephone:     202.237.2727
Facsimile:     202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

NEEL CHATTERJEE (SBN 173985)
nchatterjee@goodwinlaw.com
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, California 94025
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

Attorneys for Defendant
OTTO TRUCKING LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, <br><br> Plaintiff, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, <br><br> Defendants. | Case No.     3:17-cv-00939-WHA <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Date:     September 20, 2017 <br> Time:     8:00 a.m. <br> Ctrm:     8, 19th Floor <br> Judge:     The Honorable William Alsup <br> Trial Date: October 10, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

Page

UBER'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT .......................... 1

I. INTRODUCTION ............................................................................................................... 1

II. ARGUMENT ....................................................................................................................... 1

    A. There is No Genuine Dispute that ███████████████████ ███████ Is a Fundamental Principle of Optics ............................................. 1

    B. The Remaining Elements of Trade Secret 9 Are Publicly Known And Are Not Secret ................................................................................................................ 4

III. CONCLUSION .................................................................................................................... 6

OTTO TRUCKING'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ................................................................................................................................ 6

I. INTRODUCTION ............................................................................................................... 6

II. WAYMO DOES NOT DISPUTE THAT OTTO TRUCKING DOES NOT USE THE PRODUCTS AT ISSUE ............................................................................................. 8

III. WAYMO CANNOT PROVE INDIRECT LIABILITY ..................................................... 8

    A. Vicarious Liability Does Not Apply for Pre-Formation Actions of Mr. Levandowski ....................................................................................................... 8

    B. Vicarious Liability Does Not Apply for Post-Formation Actions of Mr. Levandowski ....................................................................................................... 9

        1. Waymo cannot show Otto Trucking participated in, ratified, or benefitted after it was formed ................................................................. 9

        2. Waymo's cases are inapplicable here ....................................................... 10

IV. OTTO TRUCKING CANNOT BE HELD LIABLE THROUGH REVERSE VEIL PIERCING ......................................................................................................................... 12

V. OTTO TRUCKING CANNOT BE JOINTLY AND SEVERALLY LIABLE FOR TRADE SECRET MISAPPROPRIATION ...................................................................... 13

VI. WAYMO MISSTATES THE RECORD .......................................................................... 14

VII. THE COURT CAN FASHION THE APPROPRIATE EQUITABLE REMEDIES WITHOUT OTTO TRUCKING ....................................................................................... 14

VIII. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*,
    213 F.3d 474 (9th Cir.2000) ............................................................................................. 9

*Competitive Technologies v. Fujitsu Ltd.*,
    286 F.Supp.2d 1118 (2003) ..................................................................................... 11, 12

*Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.*,
    545 F. App'x 647 (9th Cir. 2013) ..................................................................................... 9

*Droeger v. Welsh Sporting Goods Corp.*,
    541 F.2d 790 (9th Cir. 1976) .......................................................................................... 14

*Extreme Reach, Inc. v. SpotGenie Partners*,
    LLC, No. CV 13-07563-DMG, 2013 WL 12081182 (C.D. Cal. 2013) .................... 10, 11

*He Nam You v. Japan*,
    150 F.Supp.3d 1140 (N.D. Cal. 2015) ........................................................................... 12

*Language Line Servs., Inc. v. Language Servs. Associates, LLC*,
    No. C-10-02605 JW, 2010 WL 2764714 (N.D. Cal. 2010) ........................................... 11

*Mayhugh v. County of Orange*,
    190 Cal. Rptr. 537 (Cal. App. 4th Dist. 1983) ............................................................... 13

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ....................................................................................................... 10

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    420 F. Supp. 2d 1070 (N.D.Cal. 2006) ............................................................................ 6

*Postal Instant Press, Inc. v. Kaswa Corp.*,
    162 Cal.App.4th 1510 (2008) ......................................................................................... 12

*S.E.C. v. Wencke*,
    622 F.2d 1363 (9th Cir. 1980) ........................................................................................ 15

*SkinMedica, Inc. v. Histogen Inc.*,
    869 F. Supp. 2d 1176 (S.D. Cal. 2012) ........................................................................ 5, 6

*Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Group*,
    SACV150246DOCDFMX, 2017 WL 514324 (C.D. Cal. Jan. 23, 2017) ...................... 14

*Winston Res. Corp. v. Minn. Min. & Mfg. Co.*,
    350 F.2d 134 (9th Cir. 1965) ............................................................................................ 3

**UBER'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Waymo should not be allowed to claim a fundamental principle of optics — ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ — as a trade secret.  Waymo admits that its own '922 patent discloses all of the other claimed elements of TS 9 — ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  As conceded by Waymo's own engineers, the remaining element — ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ — is a well-known concept in optics, which is disclosed in public literature and has been used in commercially available LiDARs for years.

Waymo now seeks to bar former Waymo engineer (and '922 patent co-inventor) Gaetan Pennecot, now at Uber, from using this basic concept of ▓▓▓▓▓▓▓▓, which is not disclosed in any misappropriated document, but just something that he remembered "in [his] head."  Waymo demands, in effect, that any engineer who uses the general concept of ▓▓▓▓▓▓▓▓▓▓ in Waymo's LiDARs be barred from using this same optics principle ever again.  This attempt to deprive former employees of their ability to apply general engineering principles is contrary to law, and summary judgment should be granted.

**II.     ARGUMENT**

    **A.     There is No Genuine Dispute that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Is a Fundamental Principle of Optics**

Waymo's opposition brief confirms that moving ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is a fundamental principle of optics.  Waymo own witnesses testified that ▓▓▓▓▓▓▓▓ is "something that's known in optics" (Droz) and that "moving an optical element around moves light" is based on "the fundamentals of optics" (McCann).  (*See* Defs. Mot. at 12.)  Waymo offers no contradictory evidence.  Nor does Waymo credibly address the  public disclosures, such as the '107 patent, that illustrate positioning an ▓▓▓▓▓▓▓▓▓▓ "the trajectory of the output beams 311 going through the collimation optic" when "the laser elements and collimation optic are slightly offset from each other." (Dkt. 1426-16 at 15:53-55, 15:65-66; *see* Figure 3 (row 2 output beams

1  in red in column A (3-D view) and column D (side view).)  Waymo does not dispute that the '107

2  patent shows these altered beams. (*Compare* Defs. Mot. at 12-14, *with* Opp'n at 14-19.)



3  In response to this undisputed evidence of public knowledge, Waymo insists that the

4  fundamental concept of ▇▇▇▇▇▇▇▇▇▇ is somehow transformed into a trade secret

5  when applied in LiDAR. (Opp'n at 14-16, 18.) Waymo contends that the public references cited

6  by Uber fail to disclose "LiDAR systems with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇."

7  (Opp'n at 14.) Waymo ascribes importance to this distinction because it argues that "there is no

8  reason" to use ▇▇▇▇ to ▇▇▇▇ outside of Waymo's ▇▇▇▇▇▇▇▇▇

9  ▇▇▇▇▇," where ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

10 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id*. at 10, 14.)

11  But this is sleight of hand. Waymo admits that a LiDAR with ▇▇▇▇▇▇▇▇▇

12 ▇▇▇▇▇▇▇▇▇▇▇▇ is publicly disclosed in its '922 patent. (Opp'n at 14.) Yet

13  Waymo contends that its alleged trade secret of ▇▇▇▇▇ to ▇▇▇▇▇▇

14  follows from the known design choice to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*Id.* at 10; *see*

15  *also id.* at 14.) In other words, Waymo acknowledges that it cannot bar its former engineers from

16  using ▇▇▇▇▇▇▇▇▇▇▇▇, but it seeks to bar them from including in such a design

17  the basic optical concept of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to adjust the beams — which

18  Waymo concedes is driven by ▇▇▇▇▇▇▇▇▇▇▇▇. Having made its ▇▇▇

19 ▇▇▇▇ public, however, Waymo should not be permitted, through a back door, to protect

20  that design by prohibiting its former engineers from using a basic technique to implement it.

21  Waymo's reliance on former employee and '922 patent co-inventor Gaetan Pennecot's

22  testimony that knowledge of ▇▇▇▇ was "in my head" and that he was "impacted by [his]

previous experience" underscores the over-reaching nature of its claim.  (Opp'n at 13; *see also* Defs. Mot. at 15.)  Waymo's  claim targeting Mr. Pennecot's ability to use the same fundamental concept that he once applied at Waymo is contrary to case authority that trade secrets cannot cover "general engineering principles in the public domain" that are "part of the intellectual equipment of technical employees."  *See Winston Res. Corp. v. Minn. Min. & Mfg. Co.*, 350 F.2d 134, 139 (9th Cir. 1965); *see also id.* at 144 (injunction provisions were unenforceably broad because former employees were "free to utilize" the general approach and "basic mechanical elements incorporated in that machine" that were not trade secrets).

Waymo misrepresents the testimony of Velodyne's witness to obscure evidence that ▮▮▮ in a LiDAR system is part of the generalized knowledge and skill of LiDAR engineers.  (Opp'n at 16-17.)  While Waymo points to Velodyne's ▮▮▮ it dismisses Velodyne's testimony that ▮▮▮ to ▮▮▮.  (*Compare* Defs. Mot. at 13, *with* Opp'n at 7-8, 17-18.)  But that testimony cannot be dismissed:  Velodyne's corporate witness testified that Velodyne engineers use the ▮▮▮ which is very similar to how both Waymo and Uber use FACs to ▮▮▮

▮▮▮

▮▮▮

(Dkt. 1421-12 at 68:5-69:6.)  This mirrors Mr. Droz's testimony that Waymo wanted ▮ ▮▮▮ on the transmit lens and to achieve the ▮▮ with ▮▮▮ (Dkt. 1526-10 at 229:5-6, 12-14.)  Velodyne testimony about its HDL-64E ▮▮▮ confirms that TS 9's definition of a LiDAR where ▮▮▮ is a general concept that is known in the LiDAR field.[1]  Contrary to Waymo's contention, the point is not whether Velodyne's ▮▮ is public or confidential[2] — the point is that the general concept of ▮ ▮▮ is known in the LiDAR field, and follows fundamental principles of optics.  (*See* Defs. Mot. at 15.)

It bears repeating that TS 9 is not about any allegedly downloaded files, nor about any specific lens shape or dimension.  (*See* Defs. Mot. at 10, 13, and n.2.)  The issue is whether former Waymo engineers can be precluded from using a concept that Waymo witnesses admit to be known in optics.

### B. The Remaining Elements of Trade Secret 9 Are Publicly Known And Are Not Secret

Waymo admits all of the other claimed elements of TS 9 are publicly known based on its own '922 patent.  Waymo's Section 2019.210 Statement defines the boundaries of TS 9:

▮▮▮

---

[1] It should be noted that TS 9 is defined as ▮▮▮ and Waymo concedes that the Velodyne HDL-64E meets that definition.  (Opp'n at 6 n.4, 7.)  TS 9 is not defined as comprising ▮▮▮.

[2] In response to the attachment of Velodyne's internal specification and deposition testimony to Defendants' summary judgment motion, Velodyne filed a declaration to support sealing of these materials.  (Dkt. 1455.)  Waymo cites this sealing declaration as evidence that Velodyne's specific design is a trade secret (Opp'n at 17), but the declaration is not dispositive of whether the concept of ▮▮▮ is a trade secret.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

(Dkt. 25-7 at 8.)  In its opposition brief, Waymo concedes that the '922 patent discloses ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Opp'n at 14.)  Waymo's own 30(b)(6) witness Pierre Yves-Droz further conceded that the '922 patent discloses ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬:

> Q. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ that's known in the public; isn't it?
>
> THE WITNESS: So that specific application of this specific patents ['922 patent], which is public, seems to be describing an example, you know, that could use that, yes.

(Dkt. 1421-7 at 237:19-238:2; *see* Defs. Mot. at 11.)  Accordingly, Waymo has already placed the rest of alleged TS 9 in the public domain through its '922 patent.

Waymo's opposition brief attempts misdirection by focusing on the specific ▬▬▬ ▬▬ purportedly "embodied in Trade Secret No. 9," but its trade secret definition does not claim any specific design.  (Opp'n at 10; *see id.* at 14 (the '922 patent "does not describe the *specifics* of Waymo's ▬▬▬") (emphasis added).)  Earlier in this case, Waymo touted that its Section 2019.210 Statement met this Court's *Jobscience* requirements of listing "the specific elements for each [trade secret], as claims would appear at the end of a patent."  (Dkt. 387-4 at 4.)  As Waymo defined it, TS 9 broadly claims *any* ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬  It says nothing about any specific ▬▬▬▬▬, shape, or dimensions.  Having made the strategic choice to assert a broadly-claimed trade secret, Waymo cannot defend its alleged trade secret by pointing to a specific implementation.

Waymo's cited cases on trade secret combinations are inapposite here, where Waymo otherwise disclosed TS 9 in its own patent but seeks to bar former employees from using the fundamental concept of ▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  In *SkinMedica*, the "fact-intensive" question was whether the combination was generally known, because "'implementation details and techniques' or other elements of the trade secret [could] go beyond" public disclosures.

*SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1195 (S.D. Cal. 2012).  In *O2 Micro,* the issue was whether public disclosures revealed a combination of specific characteristics ("number of bays filled, wire size, turns ratio, and number of turns").  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089 (N.D.Cal. 2006).  Waymo also cites cases for the proposition that compiled customer lists (*Contemporary Services*, *Abba Rubber*) and cost and pricing data (*Whyte*) can be trade secrets.  (Opp'n at 18-19.)  But the issue here regarding TS 9 is not whether public disclosures reveal combinations of implementation details or characteristics.  There is no dispute that Waymo told the world through the '922 patent about TS 9's claimed use of ███████████████████████████████████████████████████████████.  (*See id.* at 14.)  The issue is whether Waymo can bar a former engineer who applied at Waymo what Waymo's own witnesses have called the "fundamentals of optics" from ever using this general approach again.  Waymo should not be allowed to do so.

## III. CONCLUSION

Waymo decided to broadly define TS 9, but its definition runs headlong into limitations on trade secret law that prevent it from being used broadly to limit competition. Here, basic principles of optics are, and must be, free for all to use.  The Court should grant summary judgment that TS 9 is not a trade secret.

## OTTO TRUCKING'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Otto Trucking LLC ("Otto Trucking") does not belong in this case and summary judgment in favor of Otto Trucking should be granted.[3]  Waymo's misappropriation claims are solely focused on Uber's Spider and Fuji LiDAR systems.  The undisputed facts show that Otto Trucking has never been involved in the development of, and has never used, either the Spider or Fuji system.  Waymo does not dispute these facts and concedes that it has no basis to claim that

---

[3] Waymo has recently withdrawn its patent infringement claim against Defendants, and thus that portion of Otto Trucking's motion is moot.

Otto Trucking has directly misappropriated its trade secrets.

Recognizing it has no basis for a direct liability claim, Waymo states that it is "simply holding Otto Trucking liable . . . under the doctrines of vicarious liability and ratification." Waymo's Opposition to Defendants' Motion for Summary Judgment ("Opp.") at 24. No evidence exists to support Waymo's newly minted legal theories. Otto Trucking did not exist at the time of Mr. Levandowski's alleged misappropriation of Waymo's alleged trade secrets, and an entity cannot be vicariously liable for conduct that happened prior to its existence. Again, Waymo does not deny this fact, and does not even try to explain how Otto Trucking can be responsible for conduct that predated its existence. Rather, Waymo tries to save its vicarious liability claim by arguing that Otto Trucking subsequently ratified the alleged misappropriation by "accepting and retaining benefits" from the alleged misconduct. This "benefit," according to Waymo is an increased valuation of Otto Trucking. This theory was conjured by Waymo in the Eleventh Hour and is unsupported by any evidence. Waymo's own damages expert has made no mention of this argument or provided any damages theory against Otto Trucking whatsoever. In fact, Waymo can point to no evidence that ties any increased valuation to any trade secret. Waymo cannot avoid Otto Trucking's motion by simply making stuff up.

Waymo also tries to salvage its claim by incorrectly arguing that Otto Trucking is a joint tortfeasor with Uber and Ottomotto. To be considered a joint tortfeasor - and thus subject to joint and several liability - Waymo must provide competent evidence that shows a concerted action between Otto Trucking and Uber/Ottomotto in connection with the alleged trade secret misappropriation. *See infra* at V. But again, Waymo does not and cannot identify a shred of evidence suggesting that Otto Trucking was somehow acting in concert with Uber/Ottomotto in the alleged misappropriation. In fact, the concession that Otto Trucking has no involvement with Fuji and/or Spider is fatal to its claim of joint and several liability

Waymo finally claims it cannot obtain complete relief without Otto Trucking because the Court cannot fashion an injunction that covers Otto Trucking in the event of a future acquisition by Uber. If the Court imposes permanent injunctive relief against Uber for trade secret misappropriation, that injunction could certainly – and would normally –cover any current and

future affiliates of Uber. In any event, injunctive relief against Otto Trucking is not appropriate as Waymo has no evidence to support the underlying claim against Otto Trucking.

## II. WAYMO DOES NOT DISPUTE THAT OTTO TRUCKING DOES NOT USE THE PRODUCTS AT ISSUE

Waymo concedes it has no claim that Otto Trucking has directly misappropriated its alleged trade secrets. The undisputed facts show the following. Otto Trucking has no ███████████████████████████████████████████████████████████████████ *See* Declaration of Shane Brun ("Brun Decl."), Ex. 1 (Bentley 30(b)(6) Dep.) at 80:1-15, 86:18-87:9. The undisputed facts show that Otto Trucking has never been involved in the development of, and has never used, either the Spider or Fuji system. And Mr. Levandowski's role is limited to issuance of equity interests and "high level" business issues. *See* Brun Decl., Ex. 1 at 68:1-72:20 ███████████████████████████████████████████████████████████████████████████████████████████████████████████); s*ee also* Brun Decl., Ex. 1 at 76:23-77:7, Ex. 2 (Deposition of Lior Ron) at 232:1-235-17.

Because it has no claim of directly liability, Waymo rests its liability theory on a faulty application of the doctrines of vicarious liability and ratification. Opp. 24. As discussed below, Waymo's vicarious liability and ratification arguments are also without any support and fail as a matter of law.

## III. WAYMO CANNOT PROVE INDIRECT LIABILITY

### A. Vicarious Liability Does Not Apply for Pre-Formation Actions of Mr. Levandowski

As stated in Otto Trucking's motion, Mr. Levandowski's alleged taking of Waymo's trade secrets occurred before Otto Trucking was even formed. As Otto Trucking did not exist at the time, Mr. Levandowski's alleged taking of Waymo's trade secrets could not have been in the scope of Mr. Levandowski's role with Otto Trucking, and thus Otto Trucking cannot be vicariously liable for that conduct. *See* Motion at 20.

Knowing it has no facts to support its claim, Waymo next tries to shift the burden to Otto

1  Trucking to disprove vicarious liability.  Specifically, Waymo argues that "Otto Trucking has
2  failed to come forward with any credible evidence to absolve itself of liability."  Opp. at 19.
3  Waymo bears the burden, not Otto Trucking.  Waymo must provide evidence to prove the
4  claimed agency relationship exists.  *Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.*, 545 F.
5  App'x 647, 648 (9th Cir. 2013)  (quoting *Inglewood Teachers Ass'n v. Pub. Emp't Relations Bd.*,
6  227 Cal.App.3d 767, 780 (1991)(upholding summary judgment because plaintiffs "failed to raise
7  a genuine dispute of material fact relevant to [Defendant] being vicariously liable"); *C.A.R.*
8  *Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir.2000).
9  Waymo has not, however, raised a dispute of material fast as to whether Otto Trucking may be
10 found vicariously liable for Mr. Levandowski's alleged conduct.

### B. Vicarious Liability Does Not Apply for Post-Formation Actions of Mr. Levandowski

#### 1. Waymo cannot show Otto Trucking participated in, ratified, or benefitted after it was formed

14 Waymo also suggests that liability can attach based upon an allegation that
15 Mr. Levandowski possessed trade secrets post-formation of Otto Trucking. (Opp. at 22)
16 ("Mr. Levandowski ***continued and continues*** to possess these trade secrets during the time when
17 he is an Otto Trucking executive") (emphasis in original).  But vicarious liability attaches only
18 when the alleged wrongful conduct is within the authority of the agent/employee.  Mot. at 20;
19 *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792–93 (9th Cir. 1976).  But Waymo
20 offers no evidence that Mr. Levandowski's alleged possession is within the scope of Mr.
21 Levandowski's limited role as a Managing Member or within the scope of Otto Trucking's
22 business, which is to own trucks.  Waymo tries to save its vicarious liability argument by
23 incorrectly claiming that Otto Trucking subsequently ratified Mr. Levandowski's alleged conduct
24 by accepting and retaining some benefit from the alleged misappropriation.  The undisputed facts
25 show that Otto Trucking never used any of the alleged trade secrets, and no evidence suggests
26 that Otto Trucking has otherwise accepted, or retained any benefit from, Waymo's allegedly
27 stolen trade secrets.
28 Waymo's ratification theory is to assert that the alleged continued possession of Waymo's

trade secrets by Mr. Levandowski, "as an Otto Trucking executive . . . effectively increases the value that Otto Trucking would have as an acquisition target to Uber" and identifies this supposed increase in value as an "accepted and retained benefit by Otto Trucking." Opp. at 23. This argument was fashioned from whole cloth by Waymo just to try to avoid this motion. Waymo has offered no facts to demonstrate an increase in value tied to the so-called trade secrets and has offered no expert testimony to support this errant theory. Waymo's ratification argument is without any evidentiary support whatsoever, and the Court should give it absolutely no weight.[4]

Waymo next claims that "Otto Trucking has ratified [the alleged] misappropriation by failing to take any adverse action against Levandowski . . ." Opp. at 22. This argument is legally flawed. As has been discussed and revisited many times in this case, as Mr. Levandowski is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Brun Decl., Ex. 2 at 282:19-283:10; Ex. 1 at 72:5-11  In any event, an inability to take adverse action for activities outside the business of Otto Trucking is not ratification as a matter of law for the reasons explained above.

### 2. Waymo's cases are inapplicable here

Waymo relies upon three District Court opinions to support its vicarious liability theories. All three are inapplicable. Each case involves situations where the employer / principal clearly participated in and benefitted from the alleged misconduct of its employee. In *Extreme Reach*, for example, the Court found that "evidence also exists that SpotGenie's CEO had some involvement in misappropriation of the Customer List" and the Extreme Reach has raised question regarding SpotGenie's direct liability for misappropriation. *Extreme Reach, Inc. v.*

---

[4] Waymo's discussion of privilege issues surrounding the Stroz report is also a red herring. Opp. at 14-23. As with most of its opposition, Waymo does not explain how these discussions of privilege relate to, or raise any disputed material fact supporting, its opposition. In fact, Waymo successfully argued that Otto Trucking was not a party to the Stroz investigation and had no interest to protect. It is now judicially estopped from arguing a contrary position. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.")

1  *SpotGenie Partners,* LLC, No. CV 13-07563-DMG (JCGx), 2013 WL 12081182 at *6 (C.D. Cal.
2  2013).  In holding that SpotGenie could also possibly be vicariously liable for the alleged
3  misappropriation, the Court further held  that "SpotGenie knew that the Sales Managers might
4  misappropriate Extreme Reach's Customer List — indeed, SpotGenie hired them with the
5  expectation that they would bring Extreme Reach's book of business with them — and therefore
6  their misappropriation was foreseeable."  SpotGenie's involvement and direct benefit from the
7  alleged misappropriation in *Extreme Reach* is not comparable to Otto Trucking's position in this
8  case.

9  As noted above, Otto Trucking did not even *exist* at the time of the alleged
10 misappropriation, and thus could not have approved or otherwise been involved in the alleged
11 misappropriation.  Further, contrary to *Extreme Reach*, which is a preliminary injunction
12 decision, discovery in this case is now complete, and Waymo cannot point to a *single* fact
13 suggesting that Otto Trucking participated in, ratified, or was otherwise involved in any way in,
14 Mr. Levandowski's alleged misappropriation.

15 Like *Extreme Reach*, *Language Line Servs., Inc. v. Language Servs. Associates, LLC*,  No.
16 C-10-02605 JW, 2010 WL 2764714 (N.D. Cal. 2010) involved evidence of the defendant
17 employer's use and benefit from the allegedly stolen trade secret.  The defendant employer had
18 *conceded* that its employees "impermissibly used Plaintiff's customer information" in connection
19 with the employer's business. *Id.* at *2.  Here, Otto Trucking was not in existence at the time of
20 the alleged misappropriation, and the indisputable facts are that Otto Trucking did not participate
21 in, ratify, or otherwise become involved in any way in, Mr. Levandowski's alleged taking of
22 Waymo's trade secrets.  And as discussed above, Waymo has not presented  any evidence to
23 suggest that the alleged misconduct by Mr. Levandowski was somehow within the scope of Otto
24 Trucking's business, which is simply to hold trucks.

25 Finally,  in *Fujitsu*, a ruling on a motion to dismiss, the court simply stated that plaintiffs
26 had stated a claim with the conclusory allegation that the counter-defendant was "acting with and
27 for UI."  *Competitive Technologies v. Fujitsu Ltd.*, 286 F.Supp.2d 1118, 1148 (2003).  The Court
28 also noted "Fujitsu has not cited to any authority establishing that a principal may be held liable

for misappropriation of trade secrets even where it is unaware that information constitutes a trade secret and does not itself disclose the trade secret." *Id.*  Here, Waymo has shown no evidence that Otto Trucking knew what the trade secret was and it is undisputed that Otto Trucking did not disclose any trade secrets.

### IV.   OTTO TRUCKING CANNOT BE HELD LIABLE THROUGH REVERSE VEIL PIERCING

With no viable claim of indirect liability, Waymo is simply attempting to pierce the corporate veil in reverse to hold Otto Trucking liable based solely on the fact that Mr. Levandowski owns a substantial number of shares in Otto Trucking.  The Court should not allow it.  As an initial matter, it appears that reverse veil piercing is prohibited as a matter of law in California and multiple other jurisdictions as it would be "a complete distortion of" and a "radical and problematic change" in the alter ego doctrine. *Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal.App.4th 1510 (2008); *see also He Nam You v. Japan*, 150 F.Supp.3d 1140, 1150 (N.D. Cal. 2015).  This alone should be sufficient to negate Waymo's claims. Second, even if reverse veil piercing were allowed, a plaintiff must first show that (1) it has no alternative adequate remedies and (2) no innocent shareholders would be harmed by the piercing. *Postal Instant Press* at 1524.[5] Waymo does not attempt to make either showing, and it couldn't even if it tried.  As discussed in its Motion, Otto Trucking has over ▓▓▓▓▓▓▓▓▓▓ that would potentially be directly and unjustly harmed if the Court were to allow Waymo to hold it liable for Mr. Levandowski's alleged conduct.  And Waymo plainly has adequate remedies in this case without Otto Trucking.  Waymo's claims of misappropriation in this case have been solely directed at Uber and Ottomotto.  If Waymo is able to prove its claims, it clearly will be able to recover fully from Uber.

---

[5] Contrary to Waymo's argument, to the extent reverse piercing is allowed, it is not necessarily limited to the circumstances of a third party seeking to reach the assets of a company to satisfy a judgment against a shareholder. *See Postal Instant Press*, 162 Cal.App.4th at 1518. ("a corporation may be held liable for the debts or conduct of a shareholder.")

1  V.   **OTTO TRUCKING CANNOT BE JOINTLY AND SEVERALLY LIABLE FOR TRADE SECRET MISAPPROPRIATION**

Joint tortfeasors may be held jointly and severally liable for trade secret misappropriation. However, for joint and several liability to attach, each tortfeasor must have involvement in the misappropriation. Waymo has offered no competent evidence to demonstrate any involvement by Otto Trucking, and thus cannot be jointly and severally liable for Uber and Ottomotto's alleged torts. Mot. at 20; *see also Mayhugh v. County of Orange,* 190 Cal. Rptr. 537, 540 (Cal. App. 4th Dist. 1983)(dissent) ("[T]o constitute "joint tortfeasors," the following three elements must be present: (1) a concert of action; (2) a unity of purpose or design; (3) two or more defendants working separately but to a common purpose and each acting with the knowledge and consent of the others."). Waymo falsely claims "that Otto Trucking is collaborating on the ████████ ████████████████████████████████████████ Opp. at 19, Ex.29. Waymo cites Otto Trucking's 30(b)(6) witness to support its errant position. This testimony supports Otto Trucking, not Waymo. The cited deposition testimony is clear that this work is being performed ████████████████████, not Otto Trucking, and that ████████████████████████. Moreover, under the Framework Agreement, ████████████████████████████████ ████████████████████████. *See* Brun Decl., Ex. 3..

Waymo otherwise does not attempt to explain or provide any authority to demonstrate how Otto Trucking can be considered a joint tortfeasor with Uber and Ottomotto in connection with Waymo's trade secret claims. Waymo does not and cannot identify a single fact suggesting any concert of action and cooperation between Otto Trucking and Uber/Ottomotto in connection with alleged misappropriation of Waymo's trade secrets. Indeed, the undisputed facts are that Otto Trucking has never obtained, used, or disclosed any Waymo alleged trade secrets; and Waymo has never even alleged any specific involvement by Otto Trucking in the alleged misappropriation.

Because Otto Trucking plainly cannot be considered a joint tortfeasor in this case, it cannot be held jointly and severally liable with Uber and Ottomotto on those claims.

## VI. WAYMO MISSTATES THE RECORD

Waymo claims that the Court has already determined that "Otto Trucking is 'soaked' with liability," and relies upon statements made earlier in Court proceedings. Opp. at 19 (citing Dkt. 775 at 65:18-24). Here again, Waymo is misleading. The cited exchange between the Court and counsel related to Otto Trucking's connection to the Stroz report as it came up in Court-issued questions to Uber. In response to Otto Trucking's counsel statement that Uber's counsel did not represent Otto Trucking in connection with the Stroz report, the Court *asked* "so doesn't Otto Trucking — isn't Otto Trucking soaked . . . with. All guilty knowledge attributable to Levandowski is attributable to Otto trucking." But at the end of the discussion, the Court acknowledged counsel's point "that as to [the facts at issue], they don't pertain to Otto Trucking": "All right. That part is a fair point." Dkt. 775 at 66:15-18. While the "soaked" comment may be a fun soundbite for Waymo, and regardless of exactly what the Court meant in its cited comments, the Court did not predetermine at that hearing that Otto Trucking is vicariously liable for Mr. Levandowski's alleged conduct as Waymo claims. Indeed, "it is generally not appropriate to . . . impute an agent's knowledge of a secret to the principal . . . when the trade secret was not actually communicated to or used by the principal. The plaintiff is not entitled to a windfall when in fact there has been no invasion of those interests which trade-secret law seeks to protect." *Droeger,* 541 F.2d at 793 (9th Cir. 1976).

## VII. THE COURT CAN FASHION THE APPROPRIATE EQUITABLE REMEDIES WITHOUT OTTO TRUCKING

Waymo argues that without Otto Trucking, the court will be unable to fashion an appropriate remedy if Waymo prevails against Uber and Ottomotto. Not only is Waymo putting the cart before the horse here as it must establish liability before seeking injunctive relief, its characterization of the scope of injunctive relief is false as a matter of law. *See, e.g., Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Group*, SACV150246DOCDFMX, 2017 WL 514324, at *3 (C.D. Cal. Jan. 23, 2017) (holding that corporate affiliates and parents were bound by an injunction entered into by a subsidiary.) Pursuant to Fed. R. Civ. P. 65, an injunctive order is binding upon "the parties to the action, their officers, agents, servants, employees, and attorneys, and upon

those persons in active concert or participation with them who receive actual notice of the order." *S.E.C. v. Wencke*, 622 F.2d 1363, 1368 (9th Cir. 1980). In the event Uber exercises its option to purchase Otto Trucking, any injunctive relief granted against Uber would obviously apply to Otto Trucking. In fact, regardless of a potential Uber acquisition, any injunction exercised upon Uber would immediately impact Otto Trucking, as ███████████████████████████████████████████████████████████████████████████████████████████████████. Contrary to Waymo's professed concern, Uber's potential acquisition of Otto Trucking and the Court's ability to fashion the right relief, is simply not an independent reason to keep Otto Trucking in this case. Indeed, as with the bulk of its opposition, Waymo cites zero authority for this proposition. Waymo's irrelevant concern must not keep Otto Trucking in a case where it does not belong.

### VIII. CONCLUSION

For the foregoing reasons, the Court should grant Otto Trucking's motion for summary judgment that it has not misappropriated any Waymo trade secret.

Dated: September 18, 2017          MORRISON & FOERSTER LLP

                                   By:    */s/ Michael A. Jacobs*
                                          MICHAEL A. JACOBS

                                   Attorneys for Defendants UBER TECHNOLOGIES, INC. and OTTOMOTTO LLC

Dated: September 18, 2017          GOODWIN PROCTER LLP

                                   By:    */s/ Neel Chatterjee*
                                          NEEL CHATTERJEE

                                   Attorneys for Defendant OTTO TRUCKING LLC

**ATTESTATION OF E-FILED SIGNATURE**

I, Michael A. Jacobs, am the ECF User whose ID and password are being used to file Defendants' Reply in Support of Motion for Summary Judgment.  In compliance with General Order 45, X.B., I hereby attest that Neel Chatterjee has concurred in this filing.

Dated:  September 18, 2017

*/s/ Michael A. Jacobs*
MICHAEL A. JACOBS