# *E*XHIBIT *2*

## *REDACTED VERSION*
## *OF DOCUMENT*
## *SOUGHT TO BE SEALED*

## *E*XHIBIT *2*

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                  UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
                     SAN FRANCISCO DIVISION


    _____
    WAYMO LLC,                            )
                                          )
               Plaintiff,                 )
                                          )
         vs.                              )  Case No.
                                          )  3:17-cv-00939-WHA
    UBER TECHNOLOGIES, INC.,              )
    OTTOMOTTO LLC; OTTO                   )
    TRUCKING LLC,                         )
                                          )
               Defendants.                )
    _____)


       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

           VIDEOTAPED DEPOSITION OF LIOR RON
                San Francisco, California
                 Monday, June 19, 2017
                        Volume I



    Reported by:
    SUZANNE F. GUDELJ
    CSR No. 5111
    Job No. 2641996


    PAGES 1 - 311
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | Q | Have you talked -- spoken with Mr. |
| 2 | Levandowski regarding Otto Trucking's business since | |
| 3 | he was terminated by Uber? | |
| 4 | A | Probably at -- at the high level, we have. |
| 5 | Q | About what?  05:30:11 |
| 6 | A | Well, I mean, some of those -- or, I guess, |
| 7 | most of those are privileged, because the Otto | |
| 8 | Trucking -- this was part of the conversation with | |
| 9 | Otto Trucking lawyers. | |
| 10 | Q | Okay. Outside of discussions with Otto  05:30:34 |
| 11 | Trucking lawyers, have you had any discussions | |
| 12 | concerning Otto Trucking business since Mr. | |
| 13 | Levandowski was fired? | |
| 14 | A | Well, I do remember I mentioned some of the |
| 15 | concerns by the employees.  05:31:00 | |
| 16 | Q | Oh. Fair enough. That was a poor |
| 17 | question. | |
| 18 | | Outside of discussions with Otto Trucking |
| 19 | lawyers, have you had any discussions with Mr. | |
| 20 | Levandowski concerning Otto Trucking since Mr.  05:31:22 | |
| 21 | Levandowski was fired? | |
| 22 | A | I do think I had at least one discussion on |
| 23 | Otto Trucking. | |
| 24 | Q | Okay. When was that? |
| 25 | A | Probably about a week to two ago.  05:31:42 |

Page 232

| | | |
|---|---|---|
| 1 | Q      Okay.  And what was that about? | |
| 2 | A      That was on -- mostly, I think, around the | |
| 3 | communication by Uber about Otto Trucking. | |
| 4 | Q      And what did -- what did you say to him and | |
| 5 | what did he say to you? | 05:32:07 |
| 6 | A      Well, I've shared what Uber communicated to | |
| 7 | me on Otto Trucking.  And he -- he listened.  I'm | |
| 8 | trying to think what did he respond.  I don't recall | |
| 9 | the exact response. | |
| 10 | Q      Okay.  Well, what -- what did you tell him | 05:32:47 |
| 11 | that Uber had communicated to you regarding Otto | |
| 12 | Trucking? | |
| 13 | MR. HUME:  I'm just going to object only if | |
| 14 | you were conveying what Uber's lawyers conveyed to | |
| 15 | you in a privileged conversation.  Otherwise, you | 05:33:02 |
| 16 | can answer. | |
| 17 | THE WITNESS:  I'm sorry, can you repeat | |
| 18 | that? | |
| 19 | MR. PERLSON:  Well, he's already said that | |
| 20 | he communicated it to Levandowski after he was | 05:33:10 |
| 21 | fired, so, I mean, are you really going to say that | |
| 22 | the privilege -- any privilege that he -- that he | |
| 23 | said was maintained? | |
| 24 | MR. HUME:  Okay.  I'll withdraw the | |
| 25 | objection. | 05:33:24 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1    THE WITNESS: So -- so can you repeat the
2    question?
3    BY MR. PERLSON:
4    Q   What did you tell Mr. Levandowski that Uber
5    had communicated to you regarding Otto Trucking?    05:33:30
6    A   Well, I shared with him that Uber
7    communicated to me that potentially because of his
8    termination there will be some affect to the future
9    profit of Otto Trucking.
10   Q   Okay. And that's it?    05:33:47
11   A   Mm-hmm. That was mostly, yes, what I
12   shared --
13   Q   Okay. You don't remember --
14   A   -- that content.
15   Q   -- anything else that was shared in that    05:33:55
16   regard?
17   A   No, not that I recall. I shared both the
18   employee concerns about, you know, the future deal,
19   and then I've shared what Uber communicated to me
20   about the potential reduction in the profit in the    05:34:17
21   future.
22   Q   And what was his response?
23   A   I don't recall the specifics. He was -- he
24   was interesting in hearing that employees were
25   concerned about that.    05:34:54

Page 234

1  Q   Was he concerned about that?
2  A   That was actually -- I mean, to some
3  degree, but I think actually he was more just
4  sharing his discomfort from the situation.
5  Q   How did he express his discomfort with the        05:35:22
6  situation?
7  A   He just felt, I think, bad for some of
8  the -- just the employees, and sort of a bit maybe
9  apologetic for sort of that to even, you know, be an
10 issue for the employees.                              05:35:40
11 Q   And what would he be apologetic for?
12     MR. PATCHEN:  Object to the form.
13     THE WITNESS:  He was just sort of showing,
14 I think, what I -- what I got is some sincere
15 concern for the employees and their concerns.  We     05:35:54
16 did not discuss any specific matter or sort of any
17 of the history that that assumes.
18 BY MR. PERLSON:
19 Q   So who was it at Uber who had communicated
20 to you that the -- the profit sharing at -- for Otto  05:36:11
21 Trucking could be affected by Mr. Levandowski's
22 termination?
23 A   I believe that was ███████.
24 Q   Okay.
25 A   And ███████.                                      05:36:39

| | | |
|---|---|---|
| 1 | documents to Google? | |
| 2 |     A   I mean, again, I'm not aware of any | |
| 3 | documents that he possess, and I'm definitely not in | |
| 4 | a position to know what he might or might not do | |
| 5 | with those if he possesses them. | 06:58:47 |
| 6 |     Q   Okay. My question is: Are you aware of | |
| 7 | anything that would prevent Mr. Levandowski from, as | |
| 8 | the majority shareholder of Otto Trucking, deciding | |
| 9 | to return documents that he stole from Google if, in | |
| 10 | fact, he possessed them? | 06:59:02 |
| 11 |        MR. PATCHEN:  Objection as to form. | |
| 12 |        THE WITNESS:  It's hard for me to know that | |
| 13 | possibility. Like I'm not -- | |
| 14 | BY MR. PERLSON: | |
| 15 |     Q   So you don't know? Just say "I don't know" | 06:59:15 |
| 16 | if you don't know. | |
| 17 |     A   Well, it's not that I don't know. It's | |
| 18 | hard for me to think through that scenario and | |
| 19 | understand what you're actually asking me about him. | |
| 20 | I'm sorry. | 06:59:26 |
| 21 |     Q   Well, you were able to ask [sic] Uber's | |
| 22 | counsel's questions as to what Otto Trucking could | |
| 23 | or could not do, and so I want you to answer my | |
| 24 | questions as to what Otto Trucking could or could | |
| 25 | not do. | 06:59:37 |

Page 282

```
 1          Could Mr. Levandowski, as the majority
 2  shareholder of Otto Trucking, decide on his own to
 3  return documents to Google that he stole from Google
 4  if he wanted to?
 5          MR. PATCHEN:  Objection as to form.              06:59:47
 6          THE WITNESS:  From a -- maybe I'm missing
 7  some of the distinctions, so my apologies, but as
 8  a -- on a personal perspective, if that eventual --
 9  if that scenario has any resemblance in reality, he
10  might or might not on a personal level.  I'm just    07:00:07
11  not sure what's the connection to Otto Trucking and
12  any actions Otto Trucking can take as an entity.
13  BY MR. PERLSON:
14      Q   Your job here is not to interpret why I'm
15  asking questions.                                     07:00:22
16      A   Yes.
17      Q   Your job is to answer my questions.
18      A   Okay.
19      Q   And I have now asked you several times to
20  answer a question in relation to a question that you 07:00:27
21  were able to very easily answer by Uber's counsel.
22  So I'll ask you again:  Is there any reason why Mr.
23  Levandowski, acting as the majority shareholder in
24  Otto Trucking, could not return documents that he
25  stole from Google if he has them?                     07:00:41
```

```
 1          I, the undersigned, a Certified Shorthand
 2   Reporter of the State of California, do hereby
 3   certify:
 4          That the foregoing proceedings were taken
 5   before me at the time and place herein set forth;
 6   that any witnesses in the foregoing proceedings,
 7   prior to testifying, were duly sworn; that a record
     of the proceedings was made by me using machine
 8   shorthand which was thereafter transcribed under my
 9   direction; that the foregoing transcript is a true
10   record of the testimony given.
11          Further, that if the foregoing pertains to
12   the original transcript of a deposition in a Federal
     Case, before completion of the proceedings, review
13   of the transcript [X] was [ ] was not requested.
14          I further, certify I am neither financially
15   interested in the action nor a relative or employee
16   of any attorney or party to this action.
17          IN WITNESS WHEREOF, I have this date
18   subscribed my name.
19   Dated: June 20, 2019
20
21
22
23            [signature: Suzanne F. Gudelj]
24            SUZANNE F. GUDELJ
25            CSR No. 5111
```

Page 311