1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone:    415.268.7000
5   Facsimile:    415.268.7522

6   KAREN L. DUNN (*Pro Hac Vice*)
    kdunn@bsfllp.com
7   HAMISH P.M. HUME (*Pro Hac Vice*)
    hhume@bsfllp.com
8   BOIES SCHILLER FLEXNER LLP
    1401 New York Avenue, N.W.
9   Washington DC  20005
    Telephone:    202.237.2727
10  Facsimile:    202.237.6131

11  WILLIAM CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
12  SHAWN RABIN (*Pro Hac Vice*)
    srabin@SusmanGodfrey.com
13  SUSMAN GODFREY LLP
    1301 Avenue of the Americas, 32nd Floor
14  New York, NY  10019-6023
    Telephone:    212.336.8330
15  Facsimile:    202.336.8340

16  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
17  and OTTOMOTTO LLC

18              UNITED STATES DISTRICT COURT

19             NORTHERN DISTRICT OF CALIFORNIA

20                 SAN FRANCISCO DIVISION

21  WAYMO LLC,                          Case No.      3:17-cv-00939-WHA

22              Plaintiff,              **DECLARATION OF ARTURO J.**
                                        **GONZÁLEZ IN RESPONSE TO**
23          v.                          **DECLARATION OF**
                                        **JEFF NARDINELL**i
24  UBER TECHNOLOGIES, INC.,
    OTTOMOTTO LLC; OTTO TRUCKING LLC,   Judge:  Honorable William Alsup
25                                      Trial Date: October 10, 2017
                Defendants.
26

27        **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

28

I, Arturo J. González, declare as follows:

1.      I am a partner with the law firm of Morrison & Foerster LLP, counsel of record for Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively "Uber") in this action.  I am a member in good standing of the Bar of the State of California.  I make this declaration in response to this Court's Order Requiring Response Declarations.  (Dkt. 1601.)  I have personal knowledge of the facts contained in this declaration and, if called as a witness, could and would testify competently thereto.

2.      Response to Waymo Paragraph 2 "*On July 17, 2017, Waymo filed a motion in limine to preclude any argument, testimony, or evidence about Defendants' efforts taken in response to the Court's Preliminary Injunction Order, including to preclude any reference to the questionnaires and witness interviews Defendants did during the litigation.  (Dkt. 913.)* "  Agreed.

3.      Response to Waymo Paragraph 3 "*On July 26, 2017, the Court heard argument on the motion. (Dkt. 1050.)*" Agreed.

    a.  "*Counsel for Waymo argued that if the Court allowed Uber to offer evidence that it had searched its servers for the 14,000 files during discovery, Waymo should be permitted to explain what Uber didn't do during discovery. (Id. at 61-6.2.)*"  Uber disagrees with this characterization.  The issue at the hearing was whether Waymo would be able to introduce evidence to counter Uber's evidence regarding searching for the 14,000 files—not general evidence of unrelated discovery misconduct.  (*E.g.* 7/26/17 Hr'g. Tr. at 61:8-17.)

    b.  "*The Court ruled that Uber may present the three examples of "good citizenship" outlined in Uber's opposition to Waymo's motion (Dkt. 978 at 2):  (i) searching Uber's servers for the downloaded files; (ii) asking Levandowski to return downloaded materials and firing him when he did not; (iii) allowing Waymo and its attorneys to inspect Uber's premises. (Dkt. 1050 at 72.)*"  The three listed examples paraphrase what Uber discussed in its opposition to Waymo's motion in *limine* #4 and miss some

parts of the request, but generally are correct.   For example, Uber's

forensic expert will testify about his extensive search of Uber's servers and

computers and cloud-based repositories using search terms that included

suggestions from Waymo. (Dkt. 978 at 2.) As another example, Uber plans

to show not only that it "allow[ed] Waymo and its attorneys to inspect

Uber's premises," but also that Waymo, its attorneys, and its experts spent

dozens of hours on 12 occasions inspecting Uber's premises in San

Francisco and Pittsburgh, engineering repositories, source code, emails,

and custodian computers.  To the extent that these are just paraphrases and

are not meant to be exact, Uber does not dispute this statement.

c.      *"The Court invited Waymo to present two dozen examples of
Defendants' discovery misconduct "to balance the picture." (Id. at 70-72.)"*

Uber believes this quote is misleading. What the Court said was:

> So all I can promise you is I've got to be as fair as I can in letting
> both of you put this basic story in front of the jury. You want to
> show stonewalling, and Arturo Gonzalez wants to show that they
> did a diligent search and nothing could be found that shows
> infringement.  All right. So you need to do that. I'm going to say
> August 24th you've got to give us a list of the two dozen acts that
> you want to put forward before the jury so that we can vet that
> before -- before we get to the trial.

(7/26/17 Hr'g Tr. at 72:6-14.)

4.      Response to Waymo's Paragraph 4 *"Waymo submitted its list of 23 items on
August 25. (Dkt. 1356.)"*  Agreed.

a.   *"The Court has not yet ruled on Waymo's request to present evidence to
"balance the picture" in light of the Court's directive permitting Uber to
rely on its post-complaint discovery and other conduct."*  Uber agrees that
the Court has not yet ruled on Waymo's request.

b.   Response to Waymo's Paragraph 4 *"Waymo renews its request that, if
Uber is permitted to rely on post-complaint Uber conduct it believes*

1            *supports its case, then in fairness Waymo must be permitted to counter that*

2            *with post-complaint evidence that shows obfuscation and improper*

3            *withholding of important information."* Uber agrees that this is Waymo's

4            request, but disagrees that the request is proper. Any counter should be

5            limited to the search for the 14,000 files, not unrelated alleged discovery

6            misconduct.

7      5.      Response to Waymo's Paragraph 5 *"The Court did not ask for a response from*

8 *Uber or a counter-list of alleged misconduct in response to the Court's requested list from*

9 *Waymo."* Uber does not dispute this. Uber filed a narrow response to inaccurate and misleading

10 accusations of serious misconduct. Uber provided evidence of Waymo's misconduct in response

11 to Waymo's unsolicited proffer of alleged misconduct unrelated to the search for the 14,000 files.

12 Uber does not believe that any instruction on discovery "misconduct" is appropriate, but if the

13 Court is inclined to grant such an instruction, it must be applied both ways.

14         a.      *"That likely is because the issue before the Court concerned what post-*

15            *complaint evidence Waymo was permitted to use to "balance the picture,"*

16            *given Uber's intent to rely on post-complaint conduct before the jury."*

17            This is argument.

18         b.      *"Nevertheless, on September 12, Uber unilaterally filed a "response" in*

19            *which it self-helped itself to making additional arguments on the merits*

20            *concerning trade secret "value" and accusations of "stonewalling and*

21            *gamesmanship" in discovery. (Dkt. 1534 at 1:23 to 2:13.)"* Uber

22            responded to Waymo's misleading accusations and, as noted above,

23            believes that is the Court is inclined to instruct the jury on discovery

24            misconduct, any such instruction must apply to Waymo as well.

25      6.      Response to Waymo's Paragraph 6 *"Initially, Uber's counter-allegations*

26 *concerning discovery and the trade secret merits are irrelevant to Waymo's motion in limine and*

27 *the requested list of Uber misconduct."* Uber's counter-allegations are relevant to Waymo's

28 "requested list of Uber misconduct," because they respond to Waymo's allegations.

Gonzalez Declaration in Response to Declaration of Jeff Nardinelli
Case No. 3:17-cv-00939-WHA
pa-1802495        3

1    a.   *"Waymo's motion seeks to preclude Uber from claiming "good*

2         *citizenship" to the jury, or in the alternative to be allowed to counter*

3         *Uber's evidence with evidence of Uber's misconduct."*  Uber agrees that

4         this is Waymo's characterization of its motion, which Uber opposes.

5    b.   *"Waymo has no intention of presenting or relying on evidence of Waymo's*

6         *conduct during discovery, and so Waymo has not placed its own discovery*

7         *conduct at issue to open the door for Uber to present counter-evidence on*

8         *Waymo's conduct."*  Uber agrees that this is Waymo's statement of its

9         position.  Uber disagrees that Waymo has not placed its conduct at issue.

10   c.   *"The issue raised was what Waymo is permitted to present to the jury in*

11        *light of Uber's representation that it will introduce evidence of its server*

12        *search, firing of Levandowski, and allowance of on-site inspections."*

13        Uber agrees that the Court invited Waymo to file a list of Uber's acts that

14        Waymo wants to present to the jury, but asserts that this list was meant to

15        be limited to complaints about the investigation into the downloaded

16        materials.

17   7.   Response to Waymo's Paragraph 7 "▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"

22   Uber agrees that on September 13, 2017 the Federal Circuit denied Mr. Levandowski's appeal.

23   a.   "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Uber is not

26        aware of all of Levandowski's and Stroz's communications with Waymo

27        counsel.  Uber, however, agrees that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

b. ███████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

████████ *″* This is argument.  Uber disagrees with Waymo's

characterization, especially given the fact that the 14,000 documents have

been characterized as "low value" by Google's investigator and were

apparently ████████████████████████████

████████ for logging onto the site in question.

      8.      Response to Waymo Paragraph 8  *"Pursuant to this Court's Order (Dkt. 1536),*
*Waymo specifically addresses below each of Defendants' accusations set forth at pages 1:23 to*
*2:13 of Defendants' response brief filed September 12 (Dkt. 1534) and statement on page 4 of*
*that brief concerning Waymo's privilege log."*  Agreed.

      9.      Response to Waymo Paragraph 9  *"'Selective waiver of privilege' (1:24-25.) In*
*support of its motion for a preliminary injunction, Waymo submitted the declaration of*
*Gary Brown, one of the Security Engineers at Google who worked on the forensic investigation*
*into Anthony Levandowski, Radu Raduta and Sameer Kshirsagar."*  Agreed.

      a.   "*That investigation – and all such investigations at Google and Waymo –*
*was conducted at the direction of legal counsel and therefore protected as*
*privileged and work product. (Dkt. 25-29.)"*  Uber disagrees that this
investigation was conducted at the direction of legal counsel.  Mr. Brown
stated under oath that he first investigated Mr. Levandowski "[a]round
March 2016."  (Ex. 1, 3/24/17 Brown Dep. at 11:2-4.)  Mr. Brown also
admitted that he had not spoken to an attorney regarding the investigation
into Mr. Levandowski until "July or August of 2016."  (*Id.* at 14:14-
22.)  Uber also notes that on August 18, Judge Corley determined that
Waymo's waiver of work product "did waive the attorney-client privilege
as to counsel communications with Mr. Brown and anyone else involved in

1   the investigations at issue as in fairness such communications should be

2   disclosed." (Dkt. 1272 at 2.)  As such, Uber disagrees that the

3   investigation was protected as privileged and work product.  Uber also

4   does not know if "all such" investigations at Google or Waymo were

5   conducted at the direction of legal counsel and therefore protected as

6   privileged and work product.

7       b.  *"Waymo, in good faith, made the strategic decision to waive work product*

8           *with respect to the factual information disclosed by Mr. Brown in his*

9           *declaration as part of its preliminary injunction motion."*  Uber agrees that

10          Waymo waived work product privilege with respect to the factual

11          information disclosed by Mr. Brown in his declaration as part of its

12          preliminary injunction motion.  Uber denies that Waymo made this

13          decision "in good faith."  Instead, Uber believes this decision was made in

14          an attempt to mislead Uber and the Court by hiding the strong reservations

15          that Waymo's engineer expressed about how the Waymo lawyers were

16          characterizing the downloading of the 14,000 files.  Waymo opposed a

17          motion to compel communications regarding Waymo's forensic

18          investigation of Messrs. Levandowski, Raduta, and Kshirsagar.  (*See* Dkt.

19          1227.)  Magistrate Judge Corley ultimately determined that Waymo's

20          attempt at "line drawing in Rule 502" would allow it to use its selective

21          waiver of privilege as a shield and a sword.  (*See* Dkt. 1272 at 2.)

22      c.  *"Waymo took the position, however, that it had not waived the attorney-*

23          *client privilege covering Mr. Brown's direct communications with counsel,*

24          *or work product associated with other aspects of the investigation not*

25          *disclosed in the Brown Declaration, such as the investigation into*

26          *individuals other than Levandowski, Raduta and Kshirsagar."*  Agreed.

27      10.    Response to Waymo Paragraph 10 *"Defendants were on notice of Waymo's*

28  *position concerning waiver as early as March 23 when counsel for Waymo served a privilege log*

1   *identifying numerous communications between Mr. Brown and outside counsel.*  Uber agrees that

2   Waymo served a privilege log on March 23 that identified a number of communications between

3   Gary Brown and others, including outside counsel.  However, the first deposition of Mr. Brown

4   was limited to the declaration he filed in support of his summary judgment motion.  Waymo did

5   not disclose the full extent of its claim of privilege until Mr. Brown was deposed a second time in

6   August.  And at no point prior to the close of discovery did Waymo disclose the emails written by

7   Sasha Zbrozek to Waymo's legal counsel expressing strong reservations about how Waymo was

8   characterizing the alleged downloading of the 14,000 files.

9       a.  *"Counsel for Waymo and Defendants also discussed the waiver issue the*

10          *next day (March 24) during Mr. Brown's deposition after counsel for*

11          *Waymo instructed him not to answer several questions that he deemed*

12          *outside the scope of the waiver on the basis of attorney-client privilege and*

13          *work product. Counsel for Waymo explained their position again on an*

14          *April 10 meet and confer and subsequent April 10 and April 12 emails. For*

15          *example, the April 10 email states:*

16

17          *Per and consistent with our discussion this morning, I have*
            *attached notes from Mr. Brown as Uber has requested. The*

18          *production of the notes concerns and is limited to the disclosures in*
            *his declaration regarding the investigations addressed therein. This*

19          *production is without waiver of and without prejudice to any other*
            *work product protection/privilege. To the extent his notes reflect*

20          *any other investigation beyond the scope of his declaration, that*
            *material has been redacted/withheld as work product. (Ex. 1, April*

21          *10 email.)*

22      Uber agrees that it conferred with Waymo about certain documents that were

23      referenced in Mr. Brown's initial deposition and that Waymo's counsel sent this

24      April 10 email.

25      11.  *"Despite being on notice of Waymo's position with respect to its limited waiver as*

26  *early as March 23, Defendants did not challenge the scope of Waymo's waiver claim until filing a*

27  *motion to compel on August 11. (Dkt. 1163.)"* Uber disagrees that it was on notice as early as

28

March 23 about the scope of Waymo's claim of privilege, but agrees that Otto Trucking submitted a letter brief to compel discovery from Waymo regarding its forensic investigation of Messrs. Levandowski, Raduta, and Kshirsagar on August 11.  (Dkt. 1163.)

    a.  *"Waymo opposed the motion, and Judge Corley granted and denied it in part. (Dkt. 1272)."*  Agreed.

    b.  *"Specifically, in her August 18 Order, Judge Corley ruled that 'Otto Trucking has not made any showing as to why communications regarding investigations of other employees have been waived and thus the motion is denied to the extent it seeks such relief.'  (Id.)"* Agreed.

    c.  *Judge Corley also held however that '[w]hile the waiver of work product does not necessarily waive attorney-client privileged communications, here the waiver of work product over the investigation did waive the attorney-client privilege as to counsel communications with Mr. Brown and anyone else involved in the investigations at issue as in fairness such communications should be disclosed.' (Id. at 2.)"*  Agreed.

    d.  *"On this basis, Judge Corley ordered Waymo to produce 'communications regarding the investigation of the Former Employees [Levandowski, Raduta and Kshirsagar].' (Id.)"* Agreed.

    12.    Response to Waymo Paragraph 12 *"Waymo did not seek relief from Judge Corley's order."* Agreed.

    a.  *"Instead, Waymo collected the documents referenced by Judge Corley in her Order and produced them on August 24."* Uber agrees that Waymo produced the documents referenced by Judge Corley on August 24, the last day of fact discovery.

    b.  *"On that day, Waymo also produced unredacted versions of previously redacted documents in compliance with Judge Corley's Order."*  Uber agrees that Waymo produced certain unredacted versions of previously redacted documents, but disagrees that this was done in compliance with

1    Judge Corley's order.  Waymo produced about eighty documents, twenty-

2    nine of which were heavily redacted.  This necessitated a hearing in which

3    Judge Corley ordered Waymo to make modifications to all twenty-nine

4    heavily redacted documents.  (8/31/17 Hr'g Tr.)

5         13.    Response to Waymo Paragraph 13 *"On August 28, Judge Corley conducted a*

6    *hearing at which several outstanding discovery issues were discussed, including the exact scope*

7    *of the waiver intended by Judge Corley in her August 18 Order."*  Agreed.

8              a.    *"During the hearing, Judge Corley explained that the waiver only covered*

9                   *communications between counsel and the Waymo forensics team about the*

10                  *investigation of Levandowski, Raduta and Kshirsagar, not communications*

11                  *concerning other aspects of the broader investigation or internal work*

12                  *product that never even involved the forensics team. (Dkt. 1414, August 28*

13                  *Hr'g Tr. at 6-11.)"*  Uber disagrees with Waymo's characterization of

14                  Judge Corley's explanation of the waiver. Judge Corley specifically noted

15                  that Waymo could not selectively apply redactions in such a way to "slice

16                  and dice" parts of the investigation that were inextricably entwined with

17                  the forensic investigation, stating:

18                       So your slicing has to weigh in favor of disclosure rather than
19                       nondisclosure.  It wouldn't necessarily be a waiver of anything else.  In
                         other words, you may have to disclose some things relevant to the
20                       investigation of the other employees to the extent it was wrapped up
                         within the investigation of the former employees.

21                  (Dkt. 1414, 8/28 Hr'g Tr. at 12:23-13:11.)  Judge Corley noted that

22                  Waymo's "waiver needs to encompass all the communications to

23                  Mr. Brown" and that Waymo should "err on the side of disclosure."  (*Id.* at

24                  15:3-9.)

25              b.    *"Counsel for Waymo explained that Judge Corley's description of the*

26                   *scope of the waiver was exactly how Waymo had interpreted the Court's*

27                   *August 18 Order vis a vis its collection and production of documents on*

28

1                                     *August 24. (Id. at 10-11.)"* Uber agrees that counsel for Waymo asserted

2                                     that Waymo had interpreted the Court's August 18 Order (Dkt. 1267) in

3                                     accordance with Judge Corley's description of the scope of the waiver, but

4                                     disagrees that Waymo in fact interpreted the Order correctly.  Judge Corley

5                                     later ordered production of items from Waymo's privilege logs, at least

6                                     suggesting that Waymo had not interpreted Judge Corley's August 18

7                                     Order correctly.  (*E.g.,* 8/31/17 Hr'g Tr. at 36:13-37:22.)

8           14.         *"During the August 28 hearing, counsel for Defendants stated that they believed*

9 *Waymo was still withholding and/or redacting certain documents falling within the scope of the*

10 *waiver as articulated by Judge Corley."*  Agreed.

11                    a.       *"In response, Judge Corley generously offered to review the disputed*

12                           *documents in camera, rather than waste time on motion practice, if the*

13                           *parties were not able to resolve the remaining issues during subsequent*

14                           *meet and confers. (Id. at 16 ('And what we could do, because I know we're*

15                           *on a tight timeline here, is rather than briefing, we could just set a hearing*

16                           *and you can bring the documents here and we can sit here and talk about*

17                           *them and do it in realtime that way.').)"*  Agreed.

18           15.         *"Over the next two days, counsel for the parties conducted several meet and*

19 *confers with the Special Master but could not resolve the outstanding issues."*  Uber agrees that on

20 August 30 and August 31, counsel for the parties conducted several meet and confers but could

21 not resolve the outstanding issues.  On the meet and confer on August 30, Defendants requested a

22 conference call with Judge Corley and to take up the Court's offer of an *in camera* review.

23 Counsel for Waymo, Jim Baker, opposed contacting the Court, saying he wanted the subject to

24 instead be briefed.

25                    a.       *"On August 30, Judge Corley held a short teleconference and ordered*

26                           *Waymo to bring the documents to Court the next day for an in camera*

27                           *inspection."*  Uber agrees that Judge Corley held a short teleconference on

28                           August 30 in which she made this order.  Uber notes that Judge Corley

1    further ordered Waymo to produce that same day the 29 documents that

2    were heavily redacted by Waymo with lesser redactions to allow

3    Defendants time to review in preparation for the hearing the next day.

4    (8/30/17 Hr'g Tr. at 11:10-19.)

5    16.    Response to Waymo Paragraph 16 *"On August 31, counsel for Waymo brought the*

6    *documents in question to Court, and Judge Corley and counsel for the parties meticulously*

7    *reviewed every disputed document and redaction to determine what fell within or outside the*

8    *scope of the waiver."* Agreed.

9    a.    *"Judge Corley ruled on every document, and for those that needed to be*

10    *produced or unredacted ordered Waymo to do so by Saturday,*

11    *September 2."* Uber agrees that Judge Corley ruled on every document and

12    ordered Waymo to produce documents by Saturday, September 2. Of the

13    29 heavily redacted documents ruled on, 27 were ordered to be produced

14    without redactions and Waymo was ordered to unredacted portions of the

15    remaining two documents by September 2. (8/31/17 Hr'g Tr.)

16    b.    *"Further, during the August 31 hearing, the Court repeatedly made clear*

17    *that Waymo's position was reasonable: 'I'm not faulting you, at all.'*

18    *(Dkt. 1441, August 31 Hr'g Tr. at 40:16-17.)"* Uber agrees that the Court

19    made this statement, but the Court ordered modifications as to every one of

20    the 29 documents that Waymo had initially redacted.

21    c.    *"The Court stated that 'I don't fault you at all for the line that we're*

22    *drawing,' recognizing that 'it's just very hard to do' and that Waymo was*

23    *not 'trying to hide super-material information.'"* Agreed.

24    17.    Response to Waymo Paragraph 17 *"Pursuant to Judge Corley's order at the*

25    *August 31 hearing, Waymo produced the documents in question on September 2."* Agreed.

26    a.    *"In addition, Waymo made three witnesses from the forensics team*

27    *(Gary Brown, Kristin Gudjonsson and Sasha Zbrozek) available for a*

28    *second round of depositions on September 6 and 8."* Agreed, upon strong

1    prompting from Magistrate Corley.

2        18.    Response to Waymo Paragraph 18 *"None of the conduct described above*

3    *constitutes "stonewalling" or "gamesmanship" on the part of Waymo or its counsel, as stated in*

4    *Uber's September 12 response brief. (Dkt. 1534.)* Uber disagrees, for the reasons outlined in its

5    September 12 response brief.  (Dkt. 1534.)  Waymo was prepared to go to trial without telling

6    Uber or this Court that its investigating engineer told Google's lawyers that the files were "low

7    priority" and ███████████████████████.

8            a.    *"Waymo disclosed its understanding of the scope of the waiver as early as*

9                  *March 2017."*  Uber agrees that Waymo provided a privilege log in

10                 March 2017, but disagrees that Waymo fully disclosed its understanding of

11                 the scope of its waiver at that time.

12           b.    *"Ultimately, Judge Corley ruled that the waiver encompassed not only work*

13                 *product but also attorney-client privileged communications between*

14                 *counsel and the Waymo forensics team concerning the forensic*

15                 *investigation of Levandowski, Raduta and Kshirsagar."* Agreed.

16           c.    *"Following the Court's order on August 18 and rulings at the August 28*

17                 *and 31 hearings, Waymo completely and timely complied."* Defendants

18                 disagree that Waymo "completely and timely complied."  After the Court

19                 ordered the forensics privilege waiver on August 18, Waymo produced only

20                 eighty documents responsive to this order nearly a week later on August 24.

21                 These eighty documents are supposedly the culmination of Waymo's

22                 months-long forensic investigation into the three former Google employees,

23                 which the Court has referred to as the "centerpiece" of Waymo's case.

24                 (Dkt. 1414, 8/28/17 Hr'g Tr. at 14:22-15:2.)  That Waymo only produced

25                 80 documents about this central issue raises substantial concerns about its

26                 production.  This was confirmed when twenty-nine of the documents

27                 remained heavily redacted and nearly unintelligible given the extent of the

28                 redactions.  Defendants have had to seek the Court's assistance multiple

1    times in relation to this issue.  It is a month after the Court's August 18

2    Order, and it is unclear whether Waymo has completed its production of

3    documents relating to the investigation even based on its narrow

4    interpretation of its subject matter waiver over the investigation.  (*See e.g.*

5    Ex. 2, which is a true and correct copy of a September 11 email from

6    Waymo counsel to Uber counsel ("We are reviewing a final set of

7    responsive documents and will produce them as soon as we are ready.").)

8    d.   *"As noted by Judge Corley at the August 28 hearing, the only reason for*

9    *any delay concerning the scope of the waiver was because Defendants*

10   *waited until August 11 to bring their motion. (Dkt. 1414, August 28 Hr'g Tr.*

11   *at 13-14 ("the reason we are [at the close of discovery] is because you*

12   *[counsel for Otto Trucking] didn't bring this motion to my attention until*

13   *later, so that I don't want to hear.").)*  Uber agrees that Judge Corley made

14   this statement at the August 28 hearing, but disagrees that Defendants are

15   the cause of the delay.  As noted by Mr. Chatterjee at the hearing, Otto

16   Trucking filed its motion regarding the scope of the privilege waiver on

17   August 11—three days after deposing Mr. Brown on August 8.  It was at

18   Mr. Brown's deposition that Waymo asserted privilege over attorney-client

19   discussions with Mr. Brown regarding the scope of the forensic

20   investigation.  Upon hearing this fact, Judge Corley responded "Okay.  All

21   right."

22   e.   *"On this record, Defendants should not be heard to accuse Waymo or its*

23   *counsel of "stonewalling" or gamesmanship."*  Uber disagrees for reasons

24   including those outlined in its September 12 response brief and in this

25   document.  (Dkt. 1534.)

26   19.   Response to Waymo Paragraph 19 *"Did not reach his conclusion independently."*

27   *(1:26-2:1.)* Uber's charge that Waymo forensics investigator Gary Brown 'did not reach his

28   *conclusion independently,' but rather 'concluded that Mr. Levandowski did not improperly*

1  *download any files' and then changed his mind after being so instructed by litigation counsel, is*

2  *entirely false."* Uber disagrees.  Mr. Brown stated under oath that he first investigated

3  Mr. Levandowski "[a]round March 2016," shortly after Mr. Levandowski's departure from

4  Google.  (Ex.1, 3/24/17 Brown Dep. at 11:2-4.)  However, Mr. Brown did not find any evidence

5  of the alleged download of the 14,000 files at that time.  (*See id.* at 30:11-14 (Q. When did you --

6  are you the person who discovered that there were 14,000 files allegedly Downloaded? A. No.).)

7  After Google learned of Uber's acquisition of Otto in July/August 2016, it renewed its

8  investigation into Mr. Levandowski.  Mr. Brown was instructed to corroborate an attorney's

9  conclusion that Mr.  Levandowski had taken the 14,000 files.  (*See id.* at 36:9-16 (Q. Who told

10  you that Mr. Levandowski had access to the server and downloaded 14,000 files? A. A lawyer.

11  Q. Which lawyer? A. Tom Gorman. Q. And did you then seek to confirm that by your analysis?

12  A. Yes.).)

13          a.  *"The only purported support that Defendants cite for this proposition is*

14              *their own brief, namely Otto Trucking's August 11 motion to compel*

15              *referenced above."*  Uber agrees that it cited to Otto Trucking's August 11

16              motion to compel.

17          b.  *"In that brief (Dkt. 1161-3 at 2), Otto Trucking argues that 'in*

18              *March 2016, Mr. Brown performed a forensic review of log data*

19              *associated with Mr. Levandowski' and that '[a]t that time, Mr. Brown did*

20              *not discover that Mr. Levandowski improperly downloaded any files.'"*

21              Uber agrees that Otto Trucking made this argument.

22          c.  *"As Defendants have known since they took his deposition six months ago,*

23              *Mr. Brown did not review any log data in March 2016, and thus could not*

24              *possibly have concluded that there had been no download. (Ex. 2, Brown*

25              *PI Dep. at 22:15-19 ["Q Approximately how many hours did you spend in*

26              *March of 2016 working on this event pertaining to Mr. Levandowski. A*

27              *Zero hours."].)*  Uber disagrees.

28

1   ███ (Ex. 3, 9/8/17 Gudjonsson Dep. at 256:22-24; 261:21-25.)

2   Mr. Gudjonsson testified at his deposition that ██████████. (*Id.*

3   at 413:19-25.)

4       d. *"In fact, Mr. Brown did not learn of Levandowski's download until*

5   *October 2016, when attorney Tom Gorman emailed Mr. Brown and others*

6   *explaining what he had recently learned from Sasha Zbrozek (the Google*

7   *engineer who provided the log data from the SVN server showing*

8   *Levandowski's download) and asking for additional help investigating:*

9

10   *The goal, ultimately, is to figure out why he was doing whatever he was doing in December 2015 and January 2016.*

11

12   *Specifically, we recently learned that on 12/11/2015, anthonyl used a Windows machine (@██████) to sync all of Chauffeur's schematics for electronics and printed-circuit boards from a*

13   *Chauffeur system. We don't have a host name for that machine, but*

14   *If I'm understanding your emails, the only Windows machine assigned to Anthony on 12/11 was anthonyl0-w. Ten days later,*

15   *Anthony wiped that machine and reformatted with the Goobuntu OS, which doesn't make a ton of sense because Anthony already had a*

16   *Goobuntu workstation and a Goobuntu laptop. He never used anthonyl0-w again. And then the day before he quit, he wiped his*

17   *other Goobuntu laptop.*

18   *That's pretty suspicious, right?*

19   *(Dkt. 1433-13, at 5.)*

20   As discussed above in response to Waymo paragraph 19, Uber agrees that

21   Mr. Brown learned of Mr. Levandowski's alleged download from

22   Mr. Gorman, an attorney for Waymo.

23      20.   Response to Waymo Paragraph 20 *"Contrary to Defendants' suggestion,*

24   *Mr. Brown did not follow any "instruction" from Mr. Gorman other than to take up*

25   *Mr. Gorman's invitation to help figure out what Levandowski had been doing."* Uber disagrees.

26   A true and correct copy of excerpts from Mr. Brown's 30(b)(6) deposition testimony from

27   August 8 is attached as Exhibit 4.  At his deposition, Mr. Brown testified that Mr. Gorman

28

1   notified him of the SVN log data that supposedly demonstrates that Mr. Levandowski's
2   downloaded the 14,000 files. (*See* Ex. 4, 8/8/17 Brown Dep. at 48:25-49:19; Ex. 1, 3/24/17
3   Brown Dep. at 36:9-16.) Further, Mr. Brown also testifies that he did not consider anything that
4   was not relevant to what he was "trying to prove." (*See* Ex. 4, 8/8/17 Brown Dep. at 229:13-24)
5   (A. Also, as a professional log diver, I'll call myself, when we're doing investigations, we don't
6   keep things that are not deemed explicitly relevant for what we are trying to prove. It is bad data
7   stewardship, it takes up space, and it makes noise.)

    a.   *"Specifically, Mr. Brown asked Mr. Gorman – not the other way around –*
        *for additional information concerning Levandowski's download, such as*
        *how Mr. Gorman had learned of the download and the IP address that*
        *Levandowski used and the domain address of the SVN server. (Id.)"* Uber
        agrees that Mr. Brown did ask questions of Mr. Gorman, but disagrees with
        Waymo's assertion that Mr. Gorman did not ask Mr. Brown for
        information for at least the reasons noted above in its response to this
        paragraph. Mr. Brown testified under oath that ███████████████

        ████████████████████████████████

        ███████████████████ (*See* Ex. 5, which is a true and
        correct copy of Mr. Brown's 9/6/17 deposition testimony, at 357:4-19.)

    b.   *"After Mr. Gorman provided that information, Mr. Brown independently*
        *conducted additional research, and determined (using multiple,*
        *corroborating data sources) that a computer registered to Levandowski*
        *accessed the SVN from a WiFi connection inside a Waymo building on*
        *December 11, just minutes after downloading TortoiseSVN software. (Id.)"*
        For the reasons noted above in response to this paragraph, Uber disagrees
        that Mr. Brown's investigation was "independent."

    c.   *"Mr. Brown gathered this information independently, and at no prior point*
        *had he ever reached a contrary conclusion."* Uber disagrees for at the
        reasons noted above in response to Waymo paragraph 19.

21.     Response to Waymo Paragraph 21 *"'Waymo withheld information…" (2:1-4.) I understand this passage to be a reiteration of Uber's prior charges concerning Waymo's waiver of privilege, which I have addressed above."* Agreed.

a.   *"For example, the scope of the investigation, communications with attorneys, and keywords provided by attorneys relating to the search were all subject to good-faith privilege claims and have since been produced."* As discussed above in response to Waymo paragraph 9, Uber disagrees that Waymo's selective waiver of privilege was done on a "good-faith" basis. Rather, Uber believes that Waymo was attempting to use privilege as a sword and a shield and to hide the reservations expressed by Mr. Zbrozek..

b.   *"By "information the employee was told to ignore" I gather Uber is repeating its false charge that Gary Brown analyzed data in March but was told to ignore that analysis."* As discussed above in relation to Waymo paragraphs 19 and 20, Uber disagrees that this charge is false.

22.     Response to Waymo Paragraph 22 *"'Only after it was compelled to do so…' (2:4-10.) I understand this passage to again rehash Uber's charge concerning Waymo's waiver of privilege, but the passage also contains two substantive allegations that I now address."* Uber cannot comment on Mr. Nardinelli's understanding of Uber's brief.

23.     Response to Waymo Paragraph 23 *"'Emails that confirm that the 14,000 files are not valuable trade secrets.' Uber points to an email from Sasha Zbrozek that refers to the content of the SVN as 'low-value.'"* Agreed.

a.   *"Waymo did not 'withhold' this email, but timely produced it on August 24 after Otto Trucking moved to compel privileged documents, and after the Court ordered its production, along with other documents that were the subject of the Court's order."* Uber disagrees that Waymo "timely produced" this document on August 24.  Waymo produced a heavily redacted version of this document, and the Court ordered Waymo to remove the redactions.  (8/31/17 Hr'g Tr. at 36:11-37:7.)  A fully

1    unredacted copy was not produced by Waymo until September 2.

2    b.  *"Further, one person's out-of-context email excerpt does not itself*

3    *'confirm' that all of Waymo's documents and testimony proving that the*

4    *14,000 files contain valuable trade secrets are false."*  This is argument.

5    And Waymo misses the point.  It has argued for months and has led this

6    Court and the public to believe that Anthony Levandowski selected 14,000

7    highly proprietary documents to intentionally download and steal.  There

8    are multiple emails that cast extreme doubt on the veracity of those

9    representations, including the "low value" email that Waymo now says is

10   "out-of-context."  (*See e.g.* Dkt. 1586-2 at 86936 ("I'm a little leery

11   because both of those numbers aren't really meaningful to any narrative. It

12   also has a chilling effect on being a hardware engineer – **we all do full**

13   **checkouts, and it makes me uncomfortable to think that lawyers are**

14   **trying to ascribe suspicion to it.**" (emphasis added)).)

15   c.  *"Mr. Zbrozek has confirmed at deposition that he meant only to say that*

16   *the 14,000 files are considered less critical to Google than Google's top-*

17   *security items, such as personal user data and the source code behind*

18   *Google's search algorithm:*

19   > *Q.  And then you say "it's pretty low value."  Do you see that?*
20   > *A.  I do see that.*
     > *Q.  And that was true, wasn't it?*
21   > *THE WITNESS:  What do you mean?*
     > *Q.  Do you want me to define "true"?*
22   > *A.  No.  I am asking you to define "low value."*
     > *Q.  Those are your words.*
23   > *A.   So I will say that this is a very relative thing.  And Google data*
24   > *policies were designed with code and user data in mind and were*
     > *perhaps not the greatest fit for the kind of data that we wanted to*
25   > *store and that relative to instantly Google ending data breaches,*
     > *that the data that was in the Subversion server would be considered*
26   > *of lesser value.  But by how much, I don't know; and in absolute*
     > *terms, I have no idea.*
27   > *(Ex. 3, Zbrozek deposition at 208:18-209:11.)"*

28

1    Uber agrees that Mr. Zbrozek made these comments at his second

2    deposition after meeting with legal counsel, but disagrees that this is what

3    he "meant" to say in his earlier emails.  Mr. Zbrozek drafted multiple

4    emails that were sent months apart in which he stated these files were of

5    "low-value."  (*See* Dkts. 1586-1 and 1586-2.)

6    24.    Response to Waymo Paragraph 24 "'*Downloads of this nature are not so*

7    *exceptional.' Uber again points to Mr. Zbrozek's email, which states that Mr. Levandowski's*

8    *download '[d]oesn't ring the alarm bells for me,' as confirmation that Levandowski's download*

9    *was unexceptional.*"  Uber agrees that this statement by Mr. Zbrozek, the engineer chosen to

10   perform the task of reviewing server logs, is evidence that Mr. Levandowski's alleged download

11   is not exceptional.

12   a.    *"The email itself contradicts Uber's reading:  it states that for*

13   *Levandowski, such a download 'clearly wasn't part of his routine.'"* Uber

14   agrees that the email makes that statement, but disagrees that this single

15   statement contradicts the rest of the statements Mr. Zbrozek made in that

16   email exchange which indicate that this alleged download was

17   unexceptional.

18   b.    *"And again, Mr. Zbrozek clarified that his "alarm bells" statement took no*

19   *account of the context of Levandowski's actions, but meant only to say that*

20   *a single bulk download, absent any other factors, is not suspicious:*

21   *Q.  And it didn't ring the alarm bells for you, did it?*
22   *A.  I will say that, on its own, as a single action in absence of context,*
     *pulling the Subversion repository is not suspicious, but that as part of a*
23   *larger narrative, you know, suspicion may or may not come into play,*
     *right. You know, if the logs -- if the logs showed, you know, someone*
24   *pulling information and putting that information somewhere else and*
     *then leaving the company, maybe that's suspicious.  Maybe just looking*
25   *at the log files on their own isn't enough to tell that story.  (Ex. 3,*
     *Zbrozek Dep. at 230:5-16.)"*
26

27   Uber agrees that Mr. Zbrozek made these statements at his deposition after a

28   meeting with Waymo's legal counsel.

1    25.    Response to Waymo Paragraph 25 *"In a separate email thread, Mr. Zbrozek*

2    *stated that it "makes me uncomfortable to think that lawyers are trying to ascribe suspicion" to*

3    *Levandowski's bulk download."* Agreed.

4              a.    *"Again, Mr. Zbrozek clarified at his deposition that he lacked the context*

5                   *surrounding the download, and was concerned only "about setting a*

6                   *precedent for that one action in isolation being in and of itself a marker of*

7                   *suspicion." (Ex. 3, Zbrozek Dep. at 238:12-239:25.)"* Uber agrees that

8                   Mr. Zbrozek made this statement at his deposition after meeting with

9                   Waymo's legal counsel.

10   26.    Response to Waymo Paragraph 26 *"Further, Levandowski's SVN log showed that*

11   *only once between September 2015 and January 2016 did Levandowski access the SVN, and there*

12   *is ample testimony in this case that Levandowski did not know how to use Altium, which is the*

13   *software required to work with files stored on the SVN."* Uber agrees that Mr. Levandowski's

14   SVN log showed that he only once accessed the SVN, but disagrees that there is "ample

15   testimony" that Mr. Levandowski does not know how to use Altium.

16             a.    *"It is true that other engineers at Waymo download files from the SVN,*

17                   *including bulk downloads."* Agreed.

18             b.    *"That is their job."* Agreed.

19             c.    *"That is the reason that the SVN contents are so valuable – because it is*

20                   *the confidential work product of Waymo's engineers and the repository of*

21                   *Waymo's proprietary, industry-leading designs."* Uber disagrees as to the

22                   Waymo's characterization of the value of the SVN contents.

23             d.    *"The fact that others access the SVN for valid reasons does not mean*

24                   *Levandowski's access was valid."* This is argument and Uber disagrees.

25                   Mr. Zbrozek has provided other reasons for which Mr. Levandowski may

26                   have accessed the SVN, including for the purpose of making an "individual

27                   contribution or maybe taking a look at the progress of a widget." (*See e.g.*

28                   Dkt. 1586-1 at 86886.)

1    27.   Response to Waymo Paragraph 27 *"Waymo also failed to produce…" (2:10-13.)*

2    *Uber charges that Waymo produced one third of its production on the last day of discovery."*

3    Agreed.

4           a.   *"This accusation is highly misleading."* This is argument.

5           b.   *"Much of Waymo's August 24 production came in timely response to 34*

6                *RFPs that were not served by Defendants until July 25."* Uber has not been

7                able to assess whether or not "much" of the documents were in response to

8                the RFPs served on July 25 or not.

9           c.   *"Through one of those RFPs, Otto Trucking sought "all communications"*

10               *between Waymo (defined as Waymo, Google, and Alphabet) and five*

11               *outside vendors, not limited in time, subject matter, or along any other line."*

12               Uber agrees that the RFP sought "[a]ll communications" between Waymo

13               and outside vendors, but notes that in its response, Waymo stated it would

14               limit its production to "otherwise-relevant communications" with such

15               vendors.

16          d.   *"Waymo's production in response to this RFP alone numbered nearly*

17               *4,000 documents."* Uber has not been able to assess how many documents

18               Waymo produced in response to this RFP.

19          e.   *"The production may not have been particularly useful, and likely had*

20               *nothing to do with any of the witnesses who had already been deposed, but*

21               *it was exactly what Otto Trucking asked for in its broad RFP."* This is

22               argument.

23   28.   Response to Waymo Paragraph 28 *"Further, Uber's allegation does not identify a*

24   *single witness for whom Waymo failed to timely produce relevant documents."*  Uber agrees that,

25   for the purposes of brevity, it did not name a specific witness in its response to Waymo's list of

26   defendants' alleged discovery misconduct.  (Dkt. 1534.)

27          a.   *"This is likely because Waymo took extraordinary efforts to produce*

28               *documents prior to depositions, including hiring an offsite team of dozens*

1
2
3
4
5
6
7
8
9

*of reviewers specifically to review documents in order to produce them in advance of depositions."* This is argument. Uber disagrees that Waymo produced all documents relevant to a custodian's deposition prior to such deposition. For example, Waymo produced documents at 9:54 pm on September 17 that included a number of custodians that had already been deposed, including Sergey Brin, Gary Brown, and Sasha Zbrozek. Uber has not yet been able to review these documents. Attached hereto as Exhibit 11 is a true and correct copy of an email from Waymo's counsel to Uber's counsel on Sept. 17, 2017 serving PROD065.

10
11
12
13
14
15
16
17
18
19

b.   *"The result was continuous document production for several weeks leading up to the end of fact."* Uber agrees that Waymo has provided continuous document production leading up to the end of fact discovery. However, Waymo produced approximately 7,350 documents, roughly 33% of its total document production to date, on the very last day of fact discovery. A true and correct chart summarizing the number of documents in each of Waymo's productions is attached as Exhibit 6. Uber also notes that there is a discrepancy with the chart produced by Mr. Nardinelli on pages 11-13 of his declaration. Specifically, Waymo's PROD051 was produced on August 24. (Ex. 7, 8/24/17 Production transmittal letter.)

20     29.     Response to Waymo Paragraph 29 *"Waymo also failed to include custodian*
21 *information in thousands…" (2:12-13.) This charge is also false."* This charge is
22 not false. Uber's discovery vendor has recently provided information that indicates Waymo
23 produced over 3,900 documents that did not properly identify a custodian. Additionally, attached
24 as Exhibit 9 is a true and correct copy of an email from Waymo counsel to Uber counsel on
25 August 29, 2017 stating that it has used "Google" as a placeholder for documents collected
26 through "noncustodial means" including through manual collection. It has also claimed that to
27 determine custodian information for these documents would be a "burden" and that they "cannot
28 do it" for all documents in their production that list "Google" as a custodian.

a.  *"To date Waymo has produced 22,352 documents."*  Uber believes that

Waymo has produced approximately 22,572 documents.

b.  *"For every one of these documents, Waymo provided Defendants with one*

*or more associated custodians."*  As outlined above, Uber disagrees.

Further, our vendor reports that approximately 600 documents produced by

Waymo fail to list any custodial information at all.

c.  *"The highest-volume individual custodian is Waymo lead hardware*

*engineer and 30(b)(6) witness Pierre Droz, with 3,344 documents."*

Agreed.

30.  Response to Waymo's Paragraph 30 *"For 4,053 documents, the listed custodian is*

*"Google.""*  Uber's discovery vendor provided information to Uber indicating that there are

3,908 documents that list the custodian as "Google" and about 600 Waymo documents that have

no custodian listed at all.

a.  *"This is because many documents are not associated with an individual*

*custodian, such as Google policy documents or documents maintained in*

*central Google repositories rather than individual accounts."*  It is difficult

for Uber to respond to a statement that "many" documents are not

associated with an individual custodian when Waymo is the one with the

information about how it collected these documents, but Uber notes that

Waymo did not identify how many of the 4,053 documents fall into that

category.  Additionally, assuming this statement is true, Waymo does not

explain why it did not provide a proper custodian for the documents that do

not fall into the category of being "Google policy documents or documents

maintained in central Google repositories."  In fact, Waymo's counsel's

own emails show that this assertion is inaccurate: in a request from Uber

counsel to Waymo counsel to identify custodians for documents that only

list "Google" as the custodian or that are blank, Waymo's counsel did not

respond that such information didn't exist. Instead, she responded that such

1    information would need to be collected manually. Attached hereto as

2    Exhibit 9 is a true and correct copy of an 8/29/2017 email from Waymo

3    counsel to Uber counsel stating that for certain documents Waymo listed

4    Google as the custodian "where the document was collected manually by

5    someone not necessarily affiliated with the document itself" and that "in

6    order to collect additional document metadata we would need to manually

7    trace the documents to its owner.") This e-mail suggests that Waymo's

8    statement is not completely accurate, as Waymo could have "manually

9    trace(d) the documents to its owner."

10      b.  *"On the very infrequent occasions Defendants have asked Waymo to*

11   *provide additional metadata, Waymo has manually examined the*

12   *documents to provide it."*  This statement is incorrect. While Waymo has

13   provided some additional metadata when Uber identified documents that

14   Waymo produced without the associated metadata, *see, e.g.*, Ex. 8 (8/17 J.

15   Nardinelli Email (agreeing more than two weeks after Uber's request to

16   produce metadata for eight documents that Waymo had merged into a

17   single PDF and produced without the associated metadata for each

18   document)), Uber requested and Waymo failed to provide metadata for

19   3,807 documents that listed "Google" as a custodian, *see* Ex. 9 (8/29 L.

20   Cooper Email (acknowledging that Waymo did not collect metadata for

21   some documents when it initially collected them, but refusing to produce

22   metadata "for all 3,807 documents in our production that list 'Google' as a

23   custodian"). Rather, Waymo agreed to investigate only "a limited set of

24   specific documents" and only if Uber identified them. (*Id.*) After Uber then

25   initially identified 10 documents with "Google" as a custodian, Waymo

26   told Uber that all 10 had custodial information. (*See* Ex. 10 (9/8 L. Cooper

27   Email at 9/6 Email).)

28      c.  *"Uber does not identify any specific deposition preparation that was*

*hindered."* Uber agrees that it did not identify specific deposition preparation that was hindered, but does not agree that deposition preparation was not hindered due to the lack of custodial information for many documents.

31.     Response to Waymo's Paragraph 31 *"This allegation is false."* Uber agrees that Waymo did produce a privilege log the day before this filing, and it filed an Errata correcting this. (Dkt. 1580.)

a.   *"On September 7 and 8, Waymo produced four sets of documents responsive to the acquisitions covered by the Court's order (volumes 60-63)."* This is incorrect. Waymo actually served volumes 61-63 on September 9. (Dkt. 1586 at exhibits 4 and 5 (e-mails from Waymo counsel).) In addition, Uber does not believe that these documents are all "responsive to the acquisitions." In fact, Uber's counsel sent an e-mail to Waymo's counsel noting hundreds of documents produced in these sets that it believes should have been produced a long time ago, as they appear to relate to LiDAR and Waymo's purported trade secrets, and e-mailed Waymo counsel asking about this. (Dkt. 1586 at exhibit 7 (email from Uber counsel to Waymo counsel inquiring about the emails).) Waymo counsel still has not responded to this email, despite Uber raising this lack of response in its declaration. (Dkt. 1586 at 4.)

b.   *"Waymo served its privilege log covering those sets on September 11, the day before Defendants filed its brief accusing Waymo of failing to provide one."* Uber agrees. Uber already filed an errata acknowledging this. (Dkt. 1580.)

c.   *"Since the original filing of that brief, Defendants have filed an "errata" admitting that in fact their charge was false. (Dkt. 1580.)"* Uber agrees that it filed an errata.

32.     Response to Waymo's Paragraph 32 *"In summary, Uber's "response" brief is*

1   *irrelevant to Waymo's MIL and the list of Defendants' post-complaint misconduct requested by*

2   *the Court. Uber should not be allowed to transform the issue of Waymo's MIL into a he-said-she-*

3   *said argument before the jury concerning Waymo's discovery conduct. The proper issue before*

4   *the court is what post-complaint conduct by Defendants Waymo is permitted to put before the jury*

5   *to "balance the picture" in light of the Court's ruling that Uber may rely on certain post-*

6   *complaint discovery conduct. Moreover, the accusations and merits-based arguments contained*

7   *in Uber's "response" brief are wholly without support."* This is argument.  As a concession to

8   the shortness of life, we will not respond further to this argument.

9       I declare under the penalty of perjury that the foregoing is true and correct.  Executed this

10  18th day of September, 2017 at San Francisco, California.

11

12                                          */s/  Arturo J. González*
                                           Arturo J. González

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28