JONATHAN A. PATCHEN (SBN 237346)
TAYLOR & PATCHEN, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
E-mail: jpatchen@taylorpatchen.com

Attorneys for Non-Party LIOR RON

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| WAYMO, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC; OTTOMOTTO LLC; and OTTO TRUCKING LLC, <br><br> Defendants. | Case No.: 3:17-CV-00939 (WHA) <br><br> **DECLARATION OF JONATHAN PATCHEN IN SUPPORT OF NON-PARTY LIOR RON'S MOTION TO INTERVENE AND MOTION FOR A PROTECTIVE ORDER** <br><br> Honorable William Alsup |

TAYLOR & PATCHEN, LLP

1.
DECLARATION OF JONATHAN PATCHEN IN SUPPORT OF NON-PARTY LIOR RON'S
MOTION TO INTERVENE AND MOTION FOR PROTECTIVE ORDER: CASE NO. 3:17-CV-00939 (WHA)

I, JONATHAN PATCHEN, declare as follows:

1. I am a partner in the law offices of Taylor & Patchen, LLP, a member in good standing of the bar of the State of California, and am admitted to practice before the United States District Court for the Northern District of California. I have personal knowledge of the matters set forth in this declaration, except as to those matters that are stated on information and belief and, as to those matters, I believe them to be true. If called upon to testify as a witness in this case, I could and would testify competently under oath to all of the matters set forth in this declaration. This declaration is submitted in support of Non-Party Lior Ron's Motion to Intervene and Motion for Protective Order filed concurrently herewith.

2. Attached hereto as Exhibit A is a true and correct copy of an excerpted transcript from the September 14, 2017 hearing before Judge Corley.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing in true and correct. Executed this 19th day of September, 2017, at San Francisco, California.

                                                  */s/ Jonathan A. Patchen*
                                                  JONATHAN A. PATCHEN

TAYLOR & PATCHEN, LLP

2.

DECLARATION OF JONATHAN PATCHEN IN SUPPORT OF NON-PARTY LIOR RON'S
MOTION TO INTERVENE AND MOTION FOR PROTECTIVE ORDER: CASE NO. 3:17-CV-00939 (WHA)

# EXHIBIT A

```
                                                      Pages 1 - 67

                  UNITED STATES DISTRICT COURT

               NORTHERN DISTRICT OF CALIFORNIA

  BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE JUDGE

WAYMO, LLC,                       )
                                  )
         Plaintiff,               )
                                  )
  VS.                             )  No. C 17-00939 WHA
                                  )
UBER TECHNOLOGIES, INC.,          )
et al.,                           )
                                  )
         Defendants.              )
                                  )  San Francisco, California
                                     Thursday, September 14, 2017

                     TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:
                     QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                     50 California Street
                     22nd Floor
                     San Francisco, California  94111
                BY:  JAMES D. JUDAH, ESQ.
                     DAVID A. PERLSON, ESQ.

For Defendants:
                     MORRISON & FOERSTER, LLP
                     425 Market Street
                     San Francisco, California  94105
                BY:  ARTURO J. GONZÁLEZ, ESQ.




Reported By:  BELLE BALL, CSR 8785, CRR, RDR
              Official Reporter, U.S. District Court


(Appearances continued, next page)
```

1   **MR. GONZÁLEZ:**  Your Honor, as long as we have a stipulation
2   that we're not waiving any privilege of any kind, then we'll be
3   happy to give to them.
4   **MR. JUDAH:**  Your Honor, this has all been compelled.  And
5   we're entitled to it.  And they're -- they have a document that
6   they are withholding from us that they think is useful for them,
7   and it's because they don't want us to inspect.
8   **THE COURT:**  That is not -- that is not true.  We're not
9   going to do that, okay?  Let's put that aside, because that, I
10  think, actually is the least -- let's go to the Stroz.
11      So we have taken care of MoFo, right, Mr. González?
12  **MR. GONZÁLEZ:**  Oh, yeah.
13  **THE COURT:**  You're going to get everything by tonight from
14  MoFo that MoFo has.  Okay?
15  **MR. JUDAH:**  Okay.
16  **THE COURT:**  All right.
17  **MR. JUDAH:**  So, Your Honor, there are a number of different
18  issues, as you know.
19  **THE COURT:**  Yes.  So now I want to go to the Stroz
20  documents.
21  **MR. JUDAH:**  I'm sorry.
22  **THE COURT:**  That's the next biggest one.
23  **MR. JUDAH:**  Well, I think the next biggest one is actually
24  the Stroz report, itself.  Not only was it produced over four
25  hours after the Federal Circuit ruled, and we had to send, I

1  think, three separate emails, we had -- first they wanted to
2  get -- needed Anthony Levandowski's permission to produce it.
3  Then they said we had to agree it was confidential.
4      **THE COURT:**  Yeah, I'm going to stop you for a second.  I'm
5  going to be like a doctor.  We're going to figure this out like
6  what is -- what changed.  So all you're going to tell me, what
7  are you going to ask me to do?
8      **MR. JUDAH:**  Rule that it is not -- you've seen it.  They say
9  it contains -- the whole thing is Uber confidential information.
10 Which it obviously doesn't.
11     Some of those documents -- I mean, I don't know if I'm
12 allowed to talk about it in open court because they say the
13 whole thing is confidential.
14     **MR. EHRLICH:**  I would object to any disclosure of the
15 substance of the Stroz report in open court.
16     **THE COURT:**  So the Federal Circuit, you read the opinion.
17     **MR. JUDAH:**  Yes.
18     **THE COURT:**  And it did allude to the fact that the Court may
19 have it, subject to a protective order.  Did you not?
20     **MR. JUDAH:**  I did see that.
21     **THE COURT:**  Okay.  So we are going to have to have a
22 proceeding about that.  I'm not going to do it sitting here
23 without anything in front of me, especially when that was made
24 very clear in the Federal Circuit's report.
25     To be candid, I frankly didn't know what they were talking

1   about, or why, but we don't have to decide that today.  We'll
2   address that.  That is something that has to be addressed.  It's
3   not critical.
4       What's critical is that you have the information.  That it
5   be public at this very moment is not critical.  Because we are
6   not playing a PR game.  This is about getting you the
7   information that you need.  Before trial, it needs to be
8   addressed.  Because that's going to be very important.
9       **MR. JUDAH:**  One thing I'll note, Your Honor, is that there
10  -- there's Waymo information, we can't share it with people who
11  need to see it, our client.
12      **THE COURT:**  It's not AEO.
13      **MR. GONZÁLEZ:**  No it's not.  Exactly.  You can share it with
14  your client.  I'll stipulate right now.
15      **THE COURT:**  Not AEO.
16      **MR. JUDAH:**  Well, certainly with the client, but there is
17  limitations.  They have to sign the PO. I mean, I don't know
18  what I can say about it in open court, but there's clearly parts
19  of it that --
20      **MR. GONZÁLEZ:**  Just tell us who you want to share it with.
21  And I'll say yes, right now.
22      **THE COURT:**  Well, you tell me.  The -- you read the Federal
23  Circuit opinion.
24      **MR. PERLSON:**  Your Honor, I think that what we should have
25  is a procedure in place for -- that they need to make a motion,

1  a motion for protective order, and have it dealed.  Because
2  there is not anything in your confidential.  And it's clear --
3     **MR. JUDAH:**  To Uber.
4     **MR. PERLSON:**  It's clear to Uber that they don't like it
5  because of the content that's in here.  That's why they want it
6  confidential.  And having --
7     **THE COURT:**  No, Mr. Perlson, we are not -- I am not going to
8  let this hearing be a PR game.  We're going to stop with that.
9  That's not what this hearing is about, right now.  So no
10 inferences should be drawn one way or the other about what is in
11 that due diligence report.  That is not an appropriate use of
12 this hearing.
13    Now, as I read the opinion, it seemed to me they were
14 suggesting that it was Mr. Levandowski who had the
15 confidentiality, not Uber.  That Uber, by the way, wasn't even a
16 party to that appeal; that it was Mr. Levandowski.
17    We can set a briefing schedule on that.
18    **MR. PERLSON:**  Thank you.
19    **THE COURT:**  And have it done.  In the meantime, though, that
20 is what they indicated.  The Federal Circuit did.  It's in the
21 opinion.  Right?  It's there.  He's not making this up out of
22 whole cloth.  The Federal Circuit put it in the opinion.
23    **MR. EHRLICH:**  And it is tethered -- I mean, the pages of the
24 opinion are Page 6, Page 10, Page 20.  And the Federal Circuit's
25 reasoning is apparently that it needs to be produced now, for

1  purposes of the civil proceeding.
2      But to the extent there are still Fifth Amendment concerns
3  at play, the Court can craft a protective order, to protect from
4  disclosure and use beyond these civil proceedings.
5      And so --
6      **THE COURT:** To protect from use beyond these civil
7  proceedings.
8      **MR. GONZÁLEZ:** Uh-huh.
9      **MR. EHRLICH:** We are going to try to make sense of it,
10 Your Honor.  But let me just say, it is what the Federal Circuit
11 ordered.
12     **THE COURT:** No, no, no.
13     **MR. EHRLICH:** And I think the logic is because this was
14 mandamus, the appeal was based on mandamus, which is a very high
15 standard.  It's not --
16     **THE COURT:** I understand.  They did go quite deeply into the
17 merits.
18     **MR. EHRLICH:** You should feel very vindicated.
19     **THE COURT:** I just do my best, that's all.
20     **MR. EHRLICH:** But we don't have -- we don't have a final
21 ruling, which means we don't have a final determination as to
22 whether the Fifth Amendment argument or the -- his
23 Fifth-Amendment privilege is valid or not.
24     Until that time, I think the Federal Circuit is saying it
25 would be wise to make sure that this not be used potentially in