Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE MAGISTRATE JACQUELINE SCOTT CORLEY

WAYMO, LLC,                          )
                                     )
            Plaintiff,               )
                                     )
   vs.                               ) No. C 17-00939 WHA (JSC)
                                     )
UBER TECHNOLOGIES, LLC., OTTO        )
TRUCKING, LLC, and OTTOMOTTO, LLC,   )
                                     ) San Francisco, California
            Defendants.              ) Monday
                                     ) September 18, 2017
_____      ) 1:00 p.m.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          QUINN, EMANUEL, URQUHART, OLIVER
                             & Sullivan, LLP
                            50 California Street
                            22nd Floor
                            San Francisco, California 94111
                    BY:  **DAVID ANDREW PERLSON, ESQ.**
                         **CHARLES KRAMER VERHOEVEN, ESQ.**
                         **JORDAN R. JAFFE, ESQ.**
                         **MELISSA J. BAILY, ESQ.**
                         **JEFFREY WILLIAM NARDINELLI, ESQ.**



**For Defendants**          MORRISON & FOERSTER, LLP
**Uber and Ottomotto:**     425 Market Street
                            San Francisco, California 94105
                    BY:  **ARTURO J. GONZALEZ, ESQ.**


        (APPEARANCES CONTINUED ON FOLLOWING PAGE)


*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                *Official Reporter - US District Court*
                *Computerized Transcription By Eclipse*

```
 1   APPEARANCES:   (CONTINUED)

 2   For Defendants            BOIES, SCHILLER AND FLEXNER, LLP
     Uber and Ottomotto:       5301 Wisconsin Avenue, NW
 3                             Washington, DC 20015
                         BY:  KAREN LEAH DUNN, ESQ.
 4

 5
                               BOIES, SCHILLER AND FLEXNER, LLP
 6                             435 Tasso Street
                               Suite 205
 7                             Palo Alto, California 94301
                         BY:  KATHLEEN R. HARTNETT, ESQ.
 8

 9
                               SUSMAN, GODFREY, LLP
10                             560 Lexington Avenue
                               15th Floor
11                             New York, New York 10022
                         BY:  SHAWN JONATHAN RABIN, ESQ.
12

13
                               SUSMAN, GODFREY, LLP
14                             1301 Avenue of the Americas
                               32nd Floor
15                             New York, New York 10019
                         BY:  WILLIAM CHRISTOPHER CARMODY, ESQ.
16

17

18   For Defendant             GOODWIN PROCTER, LLP
     Otto Trucking:            Three Embarcadero Center
19                             San Francisco, California 94111
                         BY:  HAYES PHILLIPS HYDE, ESQ.
20

21

22

23           (APPEARANCES CONTINUED ON FOLLOWING PAGE)

24

25
```

```
 1   APPEARANCES:  (CONTINUED)

 2

     For Intervenor Defendant
 3   Anthony Levandowski:      RAMSEY & EHRLICH, LLP
                               803 Hearst Avenue
 4                             Berkeley, California 94710
                          BY: MILES F. EHRLICH, ESQ.
 5

 6

 7   For Respondent           LATHAM & WATKINS, LLP
     Stroz Friedberg:         505 Montgomery Street
 8                            Suite 2000
                              San Francisco, California 94111
 9                        BY: MELANIE MARILYN BLUNSCHI, ESQ.

10

11   For Colin Sebern:        FARMER BROWNSTEIN JAEGER, LLP
                              235 Montgomery Street
12                            Suite 835
                              San Francisco, California 94104
13                        BY: DAVID C. BROWNSTEIN, ESQ.

14

15   For Intervenor           TAYLOR & PATCHEN, LLP
     Lior Ron:                One Ferry Building
16                            Suite 355
                              San Francisco, California 94111
17                        BY: JONATHAN ALAN PATCHEN, ESQ.

18

19   For Don Burnette:        MAURIEL KAPOUYTIAN WOODS, LLP
                              275 Battery Street
20                            Suite 480
                              San Francisco, California 94111
21                        BY: JASON R. BARTLETT, ESQ.

22

23   Special Master:          FARELLA BRAUN & MARTEL, LLP
                              Russ Building, 30th Floor
24                            235 Montgomery Street
                              San Francisco, California 94104
25                        BY: MATTHEW CATE, ESQ.
```

```
 1                   P R O C E E D I N G S
 2   SEPTEMBER 18, 2017                              1:32 P.M.
 3                       ---o0o---
 4            THE COURT:  Appearances, please.
 5            MR. PERLSON:  Hi.  David Perlson from Quinn Emanuel.
 6   Here is Charlie Verhoeven, Jeff Nardinelli, Jordan Jaffe and
 7   Melissa Baily.
 8            THE COURT:  Good afternoon.
 9            MR. GONZALEZ:  Good afternoon, your Honor.  Arturo
10   Gonzalez, Karen Dunn.
11       I want to introduce you to Mr. Carmody from Susman Godrey
12   here for Uber.
13            MR. CARMODY:  Good afternoon, your Honor.
14            THE COURT:  Welcome.
15            MR. PATCHEN:  Good afternoon, your Honor.  Jonathan
16   Patchen on behalf of non-party Mr. Ron.
17            THE COURT:  Good afternoon.
18            MS. HYDE:  Good afternoon, your Honor.  Haynes Hyde
19   on behalf of co-defendant, Otto Trucking.
20            MR. BROWNSTEIN:  David Brownstein on behalf of Colin
21   Sebern, your Honor.
22            MR. BARTLETT:  Jason Bartlett on behalf of non-party
23   Don Burnette.
24            MR. CATE:  Matthew Cate on behalf of the Special
25   Master.
```

 1          **MR. EHRLICH:**  Good afternoon.  Miles Ehrlich on

 2    behalf of Mr. Levandowski.

 3          **THE COURT:**  Okay.  Good afternoon.

 4       So I'm unavailable starting tomorrow, so I wanted to get

 5    all our ducks in a row.

 6       So let's start what's happening and then you can tell me,

 7    Mr. Perlson, what's happening for the rest of the week.

 8          **MR. PERLSON:**  Well, your Honor, as you may have seen,

 9    we filed a motion to continue the trial date, which the judge

10    has set for hearing on Wednesday morning.

11          **THE COURT:**  But we're assuming today that the trial

12    is going forward.

13          **MR. PERLSON:**  I understand.

14          **THE COURT:**  Yes.

15          **MR. PERLSON:**  This morning I went and I looked at the

16    documents from Stroz that have been made available for the

17    first time today.  There are 425,000 documents from

18    Levandowski.  Burnette is about 487,000.  Lior Ron, 228,000.

19    Soren Juelsgaard 282,000.  And Mr. Sebern has -- those weren't

20    made available yet.  Apparently, there was some snafu with the

21    search term, but I'm told there are about 55,000 of those.  And

22    there are several thousand other documents that have been

23    produced in the last few days.

24       You know, in the next couple days what we need to be doing

25    is reviewing these documents so that we can take depositions

1   that will actually be useful and be informed by them.  I would

2   suggest that, you know, to the extent that we're going to be --

3   start talking about depositions now, with the directive that

4   you just gave, that it's really not practical for any of those

5   fact depositions to take place next week.

6           THE COURT:  What about the MoFo depositions?

7           MR. PERLSON:  These are the same materials, your

8   Honor, and we need to know --

9           THE COURT:  How?

10          MR. PERLSON:  Well, because -- well, I don't know how

11  much I can say.

12          THE COURT:  Well, you have the due diligence report

13  and you now have Uber's privilege log.  I mean, you have the

14  documents that were withheld and now produced, right?  Those

15  were produced on Friday?

16          MR. GONZALEZ:  Yes.

17          MR. PERLSON:  Well, your Honor, we have got about

18  5,000 documents from Stroz.  We've got to go through those.

19  Those have been communications between MoFo attorneys regarding

20  the facts underlying the due diligence report and what they

21  knew and what they didn't know about what was in these hundreds

22  of thousands of files that I've seen.

23      So in order to properly examine the witnesses from MoFo,

24  who were aware of the contents of these materials and they have

25  been for now, you know, months and months and months that we

1   just found out about today, we need to be able to know what's

2   in there.

3            THE COURT:  Which materials?

4            MR. PERLSON:  The over 1.5 million pages of documents

5   that Stroz just gave to us that were the subject of the report

6   that MoFo and everyone else on defendants has had for months

7   and months, which we're now just getting.

8       So we need to understand the full scope of everything

9   that's in there to properly examine these witnesses.

10           THE COURT:  I think what we need to do is we

11  actually -- the MoFo ones, I think, we need to schedule and we

12  need to schedule them for next week.

13      If you find something later on  -- because it seems to me

14  the most yield is what was on the privilege log that's now been

15  produced and the report itself and all the exhibits which you

16  have, right?

17           MR. PERLSON:  Well, no.  I mean, there's hundreds of

18  pages of the documents that they have provided in their

19  privilege that are redacted.  So I don't even know what's in

20  all of that stuff.

21           THE COURT:  Well, that was on their log before.  They

22  said partially produced or not produced, all of that.  I

23  understand that.  I'm not deciding the motion to continue.

24           MR. PERLSON:  I understand.

25           THE COURT:  So if someone needs to be deposed and

```
 1   then as other stuff is -- they have to be redeposed, I assume
 2   you're willing to put them up again upon a showing.
 3             MR. GONZALEZ:  Upon a significant showing, your
 4   Honor.
 5             THE COURT:  Well, I understand that.  So I think what
 6   I want you to do is I want you to schedule -- and MoFo, are
 7   these people that you gave dates for?
 8             MR. GONZALEZ:  We did.
 9             THE COURT:  Okay.
10             MR. GONZALEZ:  We've given them dates and they have
11   rejected them.
12             THE COURT:  Okay.  I want those scheduled for next
13   week, the week of the 25th.
14             MR. GONZALEZ:  That's fine.  We'll give them dates.
15   And if there is a date -- we'll give them dates for next week.
16             MR. PERLSON:  Your Honor, another thing.  I was
17   reminded -- thank you -- that one of the key issues here is
18   that MoFo itself has possessed, and we only briefly were able
19   to review it last week, 69,000 pages -- I'm sorry, 69,000
20   documents, many of which are -- well, I don't know if I can say
21   the substance of it, but highly relevant to the key fact of
22   what Uber knew and what -- and when they knew it and -- and
23   then, also, in relation to the issues of what MoFo knew and
24   when they knew it, contrary to allegations that -- or
25   representations that they had made in the case.  And in order
```

1    to go through all of those things, it's going to take a

2    tremendous period of time.

3       So I think it's -- if we are going to go -- I understand

4    the directive to do it next week.

5       **THE COURT:** You have your hearing before Judge Alsup

6    on Wednesday, but in the meantime get it scheduled.

7       **MR. PERLSON:** I understand. I just want to say that

8    I think there is a high likelihood that they will need to be

9    taken again because of all these materials that need to be

10   reviewed.

11      **MR. GONZALEZ:** Just a couple of things briefly.

12      We made the MoFo materials available last Thursday after

13   we left this room. They sent one lawyer over, who spent a

14   couple hours reviewing and then said: I'll come back tomorrow.

15   He never came back. Nobody has come back to this moment. The

16   documents were there for them to look at.

17      If they are going to take my partner's deposition next

18   week, whatever they want to ask about those documents, they've

19   got to ask then. They can't take my partner's deposition next

20   week and then say: Oh, now we've got to take him again because

21   of these documents that they have had access to since Thursday.

22      **THE COURT:** Well, just keep track. Just keep track

23   of the time.

24      **MR. GONZALEZ:** Oh, I am.

25      **THE COURT:** All right? Everybody. Do whatever you

1    want to do.  Make whatever record, but...

2              MR. PERLSON:  And if you remember, your Honor, the

3    person he's talking about was Mr. Judah, who was going to his

4    wedding this weekend and so --

5              THE COURT:  Hopefully, he got married.

6              MR. PERLSON:  I'm not sure that -- you know, if he

7    represented that he was going to be there all day, they sure

8    knew that he wasn't going to be there all day.

9         But, you know, there is hundreds of thousands of documents

10   and, your Honor, we're going to work as hard as we can.

11             THE COURT:  And hundreds of Quinn attorneys.  I know

12   because I see the pro hac vices that are coming through left

13   and right.

14        In any event, okay.  Just get those scheduled, MoFo, for

15   next week.  All right?

16             MR. GONZALEZ:  We'll do that.

17             THE COURT:  It will be what it is.  You'll have done

18   whatever you've done and everybody will -- it will be what it

19   will be and we'll see what will happen.

20             MR. PERLSON:  Understood, your Honor.

21             THE COURT:  All right.  What else then?

22             MR. GONZALEZ:  I have one other matter, your Honor,

23   because you're going to be gone for a week, just briefly.

24        Last week, a week ago today, document 1504, you granted a

25   Motion to Compel.  We wanted a further response to Request For

```
 1   Admission 43 and Interrogatory 29.  That was the request that
 2   asked them to admit that out of all these on-site inspections,
 3   they found no evidence of misappropriation.  And they denied
 4   that and you ordered them to further respond.
 5        It's been a week.  They haven't responded and they haven't
 6   given us a date when they are going to respond.  I'm going to
 7   ask that they respond by the end of day tomorrow, your Honor.
 8             THE COURT:  Do you have a date?
 9             MR. PERLSON:  We can do that.
10             THE COURT:  Okay.
11             MR. GONZALEZ:  Thank you.
12             THE COURT:  Your wish is my command.
13             MR. GONZALEZ:  Let me think of some other things
14   while we're at it, your Honor.
15        (Laughter.)
16             THE COURT:  All right.  Does anyone have an update on
17   how the review of the relativity database is going?
18             MR. GONZALEZ:  I actually do want to make a comment
19   on that, because I think it's relevant.
20        If you recall, you ordered that it be ready for review by
21   9:00 a.m.  Now, to their credit, the folks at Stroz and their
22   counsel worked all weekend to get it ready at 9:00 a.m. and we
23   were told that the plaintiffs were going to have six lawyers
24   there.  So we had computers set up at 9:00 a.m. for six
25   lawyers.  9:00 a.m. came and they didn't show up.  9:30, they
```

1    didn't show up.  10:00 o'clock, and they didn't show up.  The

2    defense lawyers were there to observe, but they weren't.

3        Judge Alsup issued his order at 10:23 saying:  Folks,

4    don't assume this case is being continued and half an hour

5    later Mr. Perlson, by himself, shows up.

6        So they may now be reviewing these things, I don't know.

7    But I just want you to know that we busted our tails to do

8    exactly what you asked us to do and the six monitors were there

9    empty.  We even have photos, which we can show you later.

10            **THE COURT:**  I don't need them.  Thank you.

11            **MR. GONZALEZ:**  I know you don't.  But I just wanted

12   to make that representation to you so you will know what's

13   going on here.

14            **MR. PERLSON:**  Your Honor, we've had, perhaps, what we

15   just heard in the other courtroom about half-truths.

16        Well, let's talk about some of the other things that

17   happened.  I showed up.  I had planned to go there.  I dropped

18   my kids off this morning and I -- and we got the order and I

19   tried to do some work and then I went over there, as I had

20   planned to do from the beginning.  The suggestion that I went

21   over there because of his order is -- is a misrepresentation

22   that -- and I resent that.

23        Second of all, I got there, it took me a half an hour to

24   get on.  They didn't have my name.  They didn't -- there was no

25   registration for me at all.  I had to sign in on Mr. Judah's

```
 1   name --
 2          THE COURT:  Just tell me now.  Are there six
 3   people now --
 4          MR. PERLSON:  First of all, we never said there was
 5   going to be six people at all particular times.
 6          THE COURT:  You asked for six terminals.
 7          MR. PERLSON:  Yeah.  We said that that would be how
 8   many available.  When I left, there were four and I think there
 9   were two more coming.  Another thing that Mr. Gonzalez didn't
10   say.
11         So, you know, let's get these allegations correct and not
12   make allegations against me and our team personally when we
13   were working as hard as we possibly can for the hundreds of
14   thousands of documents that they had withheld for months and
15   months and months --
16         THE COURT:  Okay.  I think we're just going to stop.
17   I just don't want this to be for the press.  It's fine.  I just
18   want to see.
19         All right.  So it's there for you to review now and you
20   have lawyers reviewing.
21         MR. PERLSON:  Yes, your Honor.
22         THE COURT:  That's my question.  Okay.  All right.
23         THE REPORTER:  Counsel, your name please?
24         MS. BLUNSCHI:  Melanie Blunschi, B-L-U-N-S-C-H-I, of
25   Latham for Stroz Friedberg.
```

```
 1        I just wanted to clarify that we had everything up and
 2   running.  We had six accounts ready to go.  There was a typo in
 3   David Perlson's name.  The other five worked.  It took 15 to 20
 4   minutes to get his working.
 5        We actually asked repeatedly for who they were going to
 6   send so we could get the accounts set up and did not get that
 7   until last night.
 8        So Mr. Perlson was online within a few minutes.  He could
 9   have been online instantaneously with another account.  We're
10   very sorry for that inconvenience, but given the lengths that
11   we went through to get everything set up and screened and ready
12   to go, as a non-party at that, I resent the implication that
13   when he showed up two hours late and had an inconvenience
14   logging on, that that implies that Stroz was not diligent.
15             MR. PERLSON:  That's not what I was saying at all.
16             THE COURT:  There is no implication.  There is no
17   inference whatsoever.  It's great it was up and running.  How
18   is that?
19             MS. BLUNSCHI:  Thank you.
20             THE COURT:  It's great that the lawyers are there
21   reviewing.  So that's what I want to make sure.
22        Now, let's ask about -- so is there anything else with
23   respect to the relativity then?  As far as you know, it's going
24   well?  It's going.
25             MS. BLUNSCHI:  We --
```

1            MR. PERLSON:  It works --

2            THE COURT:  Okay.

3            MR. PERLSON:  -- to a degree, yes.

4            THE COURT:  Okay.  All right.

5            MR. PERLSON:  You know, there will be issues, but

6    we'll deal with those as they come.

7            THE COURT:  Okay.

8            MR. PERLSON:  I don't know that we've had -- what's

9    the other one?  Equip?  I don't know that that's been made

10   available to us yet.

11           THE COURT:  The Epic.

12           MR. PERLSON:  Yeah.

13           MS. BLUNSCHI:  Epic, that's through MoFo, not Stroz.

14           MR. PERLSON:  No one has gotten -- as far as I know,

15   no one has made that available to us.

16           THE COURT:  I understand.  Okay.  All right.

17      What about the Stroz depositions then, because we had

18   always talked about it being in two steps in any event.  Why

19   shouldn't we get that first one taken of Mr. Friedberg?

20           MR. PERLSON:  Well, I suppose we should set it up the

21   same way.  We could take a deposition next week with the same

22   caveats that, you know, there is -- that there is hundreds of

23   thousands of documents that his people have looked through and

24   characterized in certain ways that, you know, we need to

25   evaluate.

1        **THE COURT:**  All right.  But that was my point; is

2   that it might help your evaluation to actually take his

3   deposition, since he's the one that governed the review in any

4   event.

5        And we had talked about it and I thought there was an

6   understanding that he would have to sit more than once.  I

7   believe there was an objection that was made and I said:  Take

8   it at MoFo.

9        **MS. BLUNSCHI:**  Stroz would -- would object to

10  Mr. Friedberg's sitting twice.

11       We have talked to Quinn about whether there are particular

12  issues that would sort of expedite their review of the

13  documents that we could answer informally or if they could give

14  us guidance as to what the issues for a separate deposition

15  would be so that we could try to either avoid a double

16  deposition or --

17       **THE COURT:**  I have to tell you, I'm just not that

18  concerned about Mr. Friedberg sitting for two depositions.  I

19  think the burden -- given the burden that's been to the

20  company, given that his company's involvement in this whole

21  case is just not that great.  So I understand that, but that's

22  just too bad.  I think that just has to happen.

23       So I want you to take it early next week.  Frankly, I

24  would take it this week because I think -- I'm not limiting you

25  to one and that it will help.

```
 1          No one should bank on there being a continuance.  So what

 2    I'm trying to do at this moment is get you to prioritize and

 3    make sure.  And it seems to me, it's your case, that to take

 4    his deposition sooner rather than later will help you figure

 5    out of all those millions of documents out there, where you

 6    want to spend your initial energy in any event.

 7          So that would be my recommendation.  It's the order of the

 8    Court that he sit twice, if need be, and I'm assuming that

 9    there very well may be a need.

10          MS. BLUNSCHI:  And they would have to make some

11    showing to get the second one?

12          THE COURT:  Yeah.  It won't be that hard.  It will be

13    like:  Well, here are some documents that we didn't have or

14    review that we need to ask about.  But maybe there won't be, I

15    don't know.

16          MS. BLUNSCHI:  We have offered two dates for

17    Mr. Friedberg next week.  He's -- he has a difficult travel

18    schedule this week, but we did offer two dates for next week.

19          THE COURT:  Okay.  So take one of them.

20          MR. PERLSON:  Understood, your Honor.

21          THE COURT:  Okay.  All right.

22          And I think some of the other depos, that you wanted to

23    re-take those, I could see that we can wait and address when I

24    return.  That seems -- that makes sense.  We don't want to do

25    him a third time.
```

1          Is everyone in agreement with that?

2               **MR. GONZALEZ:**  That's fine, your Honor.

3               **THE COURT:**  Okay.  All right.

4          Is there anything else then we should discuss?

5               **MR. GONZALEZ:**  Have a safe trip.

6               **THE COURT:**  Thank you.

7               **MS. BLUNSCHI:**  I guess the only -- we have the review

8     of the native devices on hold.

9               **THE COURT:**  Oh, yes.  Right.  So what do you want to

10    do with that?  The review of the native?

11              **MR. PERLSON:**  We'll get our people in there to look

12    at them and take them.

13              **THE COURT:**  But when?  So you already have -- you

14    have the documents at Uber.

15              **MR. PERLSON:**  Right.

16              **THE COURT:**  I mean, at MoFo, that no one is there

17    looking at, right?

18              **MR. PERLSON:**  They are there looking.

19              **THE COURT:**  I thought they were at Stroz.

20              **MR. GONZALEZ:**  No.

21              **THE COURT:**  What about the documents Mr. Gonzalez was

22    talking about that Mr. Judah looked at, right?

23              **MR. PERLSON:**  Oh, those documents.  Understood.

24              **THE COURT:**  So I --

25              **MR. PERLSON:**  Those aren't the native devices.

1        **THE COURT:**  No, no, no.  I understand.  I'm just

2   trying to figure out.  The issue with the native devices was

3   the privacy, right?

4        **MS. BLUNSCHI:**  Yes.

5        **THE COURT:**  This is what I want you to do.  I want

6   you to review the relativity first.  I want you to review that.

7        I want you to take Mr. Friedberg's deposition, and then I

8   want you to give me a -- and it may not be hard to do, but some

9   inkling why you have reason to believe what's on those native

10  is different from there.  That's all.  Just something.  And I

11  just don't think you can do that until you've done these other

12  things first.

13       **MR. PERLSON:**  Understood, your Honor.

14       **THE COURT:**  All right.  But they are there and they

15  are ready to go.

16       **MS. BLUNSCHI:**  It will probably take about 24 hours

17  to get that set up in the review room, to have the native

18  devices, you know, brought in, plugged in, things like that,

19  but that can obviously be done.

20       **THE COURT:**  All right.

21     Mr. Ehrlich?

22       **MR. EHRLICH:**  Just on the issue of the native

23  devices.  It's not just a privacy issue.  It has all the

24  privileged documents.

25       **THE COURT:**  I know.  And part of that is just going

```
 1   to be why it's happening now with the relativity and some stuff
 2   is just going to have to be clawed back.  It just -- it is what
 3   it is.
 4            MR. EHRLICH:  Understood.
 5            THE COURT:  All right.  And those other devices are
 6   being imaged now, correct?
 7            MS. BLUNSCHI:  The additional hundred that were not
 8   part of the review are being imaged.
 9            THE COURT:  Okay.
10            MS. BLUNSCHI:  We would presume that those would
11   probably follow, obviously, the native devices that are ready.
12            MR. EHRLICH:  And to the extent they weren't part of
13   the Stroz review, it is hard to understand how in this case
14   it's relevant to claims of what MoFo or Uber --
15            THE COURT:  That Uber, maybe.  But Otto Trucking is
16   also a defendant, right?
17            MR. EHRLICH:  Yes.  So --
18            THE COURT:  And Otto Trucking is essentially
19   Mr. Levandowski.
20            MR. EHRLICH:  Well, I'll let their counsel speak to
21   that, but he's certainly an important part of it.
22        But perhaps if they can make a showing of relevance there,
23   it would justify the extraordinary amount of time that it would
24   take to review 100 native devices, particularly if we have to
25   be there to monitor --
```

1           **THE COURT:**  You don't have to.  You choose to.

2           **MR. EHRLICH:**  Correct.

3           **THE COURT:**  You choose to.  It's not an order.

4           **MR. EHRLICH:**  Not an order.  Understood.

5           **THE COURT:**  Well, you know, I've also talked to Judge

6    Alsup about this as well, so that's where I'm speaking from in

7    part.

8        So I think should Waymo decide that's where they want to

9    spend their time, and they'll have -- may have to make some

10   decisions, then we'll -- you know, that may be how we address

11   it, is that you are there.

12          **MR. EHRLICH:**  Okay.

13          **MR. PERLSON:**  And in terms of the privilege, as we

14   talked about before, that's -- you know, we're going to see the

15   log and look at it and there may be further issues on that.

16          **THE COURT:**  Well, you've seen the log.  You got the

17   log on Thursday, correct?

18          **MR. PERLSON:**  Yeah.

19          **THE COURT:**  Yeah.  So --

20          **MR. EHRLICH:**  And an electronic version was sent

21   afterwards.

22          **THE COURT:**  So have somebody else looking at that and

23   meeting and conferring with Mr. Ehrlich now as to why if there

24   is something that you think -- maybe if there is a more general

25   objection -- well, maybe we should tee this up now.

```
 1          If Waymo is going to take the position that they've

 2    waived -- thank you for bringing it up.

 3          MR. PERLSON:  That's what I meant.

 4          THE COURT:  ...that they have waived the privilege by

 5    having disclosed it to Stroz, then let's set a briefing -- then

 6    I want -- let's have that briefed and ready, fully briefed by

 7    Tuesday.  Not tomorrow.

 8          MR. EHRLICH:  Okay.

 9          MR. PERLSON:  That's fine.  Yeah.  We will definitely

10    put a brief in that timeframe.

11          THE COURT:  Work with Mr. Cooper, who is returning

12    later today.

13          MR. PERLSON:  You want that fully briefed by then.

14    That's perfect.

15          THE COURT:  Fully briefed.

16          MR. EHRLICH:  Which is when you are returning?

17          THE COURT:  I'm returning on Tuesday.  Something to

18    look forward to.

19          MR. EHRLICH:  We will make it worth it.

20          THE COURT:  So work with Mr. Cooper, or his colleague

21    here, to have that fully briefed in whatever form the parties

22    agree to on Tuesday.

23          And, of course, I will give Mr. Burnette and Mr. Segren?

24          MS. BLUNSCHI:  Sebern.

25          THE COURT:  Sebern, Mr. Ron, along with
```

```
 1    Mr. Levandowski, because I assume -- did they all turn

 2    privilege logs in to you as well?

 3            MR. PERLSON:  We have logs for most of them.  I don't

 4    think we have them for all of them.

 5            THE COURT:  Okay.  Well, whoever has asserted

 6    privilege as to some things, I'll let you be heard on that

 7    motion as well.  Okay, good.  Thank you for bringing that up.

 8        Anything else we should we should set up?

 9            THE REPORTER:  Counsel, your name, please.

10            MR. PATCHEN:  Jonathan Patchen on behalf of Mr. Ron.

11        Your Honor had ordered that Mr. Ron's deposition also take

12    place after the Federal Circuit's ruling.  And I just didn't

13    know when your Honor wanted --

14            THE COURT:  No.  So that's -- but he's already been

15    deposed.

16            MR. PATCHEN:  He has been deposed once.

17            THE COURT:  Let's wait and address that when we get

18    back because I want to avoid, if we can, three depositions.

19            MR. PATCHEN:  I would as well, your Honor.  I just

20    wanted to make sure we had guidance.  Thank you.

21            THE COURT:  That order is vacated.

22        All right.  Great.  Thank you.

23        (Proceedings adjourned.)

24

25
```

<u>**CERTIFICATE OF OFFICIAL REPORTER**</u>

        I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Monday, September 18, 2017