1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   David A. Perlson (Bar No. 209502)
3  davidperlson@quinnemanuel.com
   Melissa Baily (Bar No. 237649)
4  melissabaily@quinnemanuel.com
   John Neukom (Bar No. 275887)
5  johnneukom@quinnemanuel.com
   Jordan Jaffe (Bar No. 254886)
6  jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:    (415) 875-6600
8  Facsimile:    (415) 875-6700

9  Attorneys for WAYMO LLC

10                UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13 | WAYMO LLC,                              | CASE NO. 3:17-cv-00939
14 |        Plaintiff,                       | **PLAINTIFF WAYMO LLC'S REPLY IN SUPPORT OF MOTION FOR CONTINUANCE OF TRIAL DATE**
15 |        vs.                              |
16 | UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, |
17 |                                         |
18 |        Defendants.                      |

01980-00104/9558758.2

# TABLE OF CONTENTS

**Page**

I.  DEFENDANTS DO NOT DISPUTE THE AMOUNT OF DISCOVERY AND OTHER TASKS THAT ARE NECESSARY IN LIGHT OF THE FEDERAL CIRCUIT'S ORDER ................................................................................................ 2

II. DEFENDANTS DO NOT DISPUTE THAT WAYMO IS ENTITLED TO PROTECT ITS TRADE SECRETS BEYOND THE NINE TRADE SECRETS WAYMO IS LIMITED TO LITIGATING AT TRIAL AS A MATTER OF LAW ............. 6

III. DEFENDANTS MISREPRESENT THE FINDINGS OF THE STROZ REPORT IN ORDER TO DEFLECT FROM THE STRAIGHTFORWARD AND UNDISPUTED ISSUES CONCERNING THE NECESSITY FOR A CONTINUANCE ................................................................................................................ 8

IV. DEFENDANTS' SUBSTANTIVE CHALLENGES TO WAYMO'S CLAIMS ARE IRRELEVANT IN DECIDING WHETHER A CONTINUANCE IS WARRANTED .................................................................................................................. 11

V.  THE COURT SHOULD NOT APPOINT AN EXPERT PURSUANT TO FEDERAL RULE OF EVIDENCE 706 ............................................................................. 14

Defendants' opposition fails to address, let alone dispute, Waymo's primary point from its Motion for Continuance ("Motion"): a continuance is necessary because the multitude of additional tasks that are required in view of the newly disclosed Stroz Report and related documents. Those tasks, of which Waymo only became aware on September 13, cannot be completed in parallel with the outstanding expedited pre-trial work necessary before the October 10 trial date – at least not without severe prejudice to Waymo's ability to obtain discovery and marshal that evidence into its claims, expert reports and preparation for trial. Waymo identified the tasks that must be done weeks after fact discovery closed, including reviewing *hundreds of thousands* of documents only recently made available or produced, conducting over a dozen depositions, performing expert analysis of the new documents, and briefing various issues (including spoliation and Defendants' continued stonewalling in producing relevant documents). In their Opposition, Defendants do not respond. Waymo explained why no schedule could squeeze in all of those tasks before trial, and the extreme prejudice and difficulty in doing this before October 10, much less while Waymo is doing work preparing for and briefing MSJs, MILs, Daubert briefing and expert discovery, exchange of exhibit lists, witness lists, jury instructions, PTC statement, and trial preparation. Again, Defendants provide no response. Because it is undisputed on this record that the necessary tasks for a full airing of the facts cannot occur in the three weeks before the current trial date, this Court should grant Waymo's Motion.

Rather than addressing the issue of timing that is the basis for the Motion, Defendants resort to a mischaracterization of Waymo's motives and believes in the case, and to litigating the merits of Waymo's trade secret, damages and other claims their opposition. While irrelevant to Waymo's Motion, Defendants' merits arguments conveniently ignore the numerous facts that undermine their case and that demonstrate the importance of the Stroz materials:

1  ▬
2  ▬ Even the limited information obtained since the Federal Circuit
3  ruling ▬
4  ▬
5  ▬
6  ▬

7       Regardless, *none* of Defendants' merits arguments refute—or even attempt to refute—that
8  Waymo is entitled to discovery to test Defendants' theories, and that such discovery will require
9  review of hundreds of thousands of documents and numerous other tasks that simply cannot be
10 performed before October 10.  Indeed, the need for discovery here is especially clear given the
11 conclusions in the Stroz Report—undisputed by Defendants—that ▬
12 ▬

13      Furthermore, a continuance is necessary because this Court should not—and as a matter of law
14 cannot—force Waymo to waive trade secret claims other than the nine designated for trial.
15 Defendants do not even address Waymo's arguments that such a forced waiver has no legal basis in
16 the Federal Rules of Civil Procedure and would violate Waymo's due process and Seventh
17 Amendment rights.  Nor do Defendants attempt to explain why it would be fair or reasonable to force
18 such a waiver given the ▬ new disclosures in the due diligence report and related materials.
19 Waymo should not be penalized for Defendants' persistent and ultimately failed attempt to shield the
20 Stroz materials from discovery.

21 **I.  DEFENDANTS DO NOT DISPUTE THE AMOUNT OF DISCOVERY AND OTHER TASKS THAT ARE NECESSARY IN LIGHT OF THE FEDERAL CIRCUIT'S ORDER**
22

23      Defendants offer no response to Waymo's explanation (Dkt. 1603-4 at 4-15) that a
24 continuance is necessary given the volume of material Defendants and third parties withheld, and
25 Waymo's need to review, address, and take discovery into this critical material.  While Defendants
26 inexplicably insist that the Stroz materials exonerates them, they want this Court to enforce a trial
27 date that will help them avoid uncovering the extent of their misconduct.
28

1    Defendants continue to rest on their theory that no files reached Uber, Ottomotto, or Otto
2 Trucking, but Defendants do not even attempt to dispute that Waymo is entitled to discovery to test
3 this theory. As an initial matter, Defendants' contention that the Otto entities were not in possession
4 of any of this information ███████████████████████████████████
5 ███████████████████████████████ Ex. 2.

6    The incoming productions highlight the additional point that Waymo needs additional time to
7 review, and digest, the technical documents and other materials collected by Stroz. Waymo had five
8 months to conduct discovery, collect technical documents, question technical deponents, and evaluate
9 its trade secret misappropriation claims prior to obtaining the Stroz Report, which as detailed reveals
10 an enormity of additional materials that were sequestered from Waymo's review. Now, following the
11 Federal Circuit's ruling, Waymo has but three weeks to sift through what is quickly becoming
12 apparent to be an exponentially higher number of documents, and question at least fifteen witnesses
13 about those documents, all while simultaneously preparing its case for trial.

14    Moreover, despite counsel for Defendants' misrepresentations that Waymo is delaying
15 inspection of the files located at the respective offices of counsel for Uber and Stroz, the ongoing
16 inspections of voluminous amounts of data referenced below and counsel's very argument actually
17 demonstrates the prejudice to Waymo. Discovery is closed and Waymo's entire team is currently
18 devoted to summary judgment motions, motions *in limine*, hearing preparation, *Daubert* briefing and
19 expert discovery, exchange of exhibit lists, witness lists, jury instructions, pretrial statements and trial
20 preparation. It is demonstrably unfair that Waymo, through no fault of its own, should be forced to do
21 all these tasks to address and obtain all these critical documents, materials, information and testimony
22 and digest the information while also preparing for trial, given that Waymo should have had an
23 opportunity to do months ago.

24    This discovery is enormously important in light of the Stroz Report, which shows that there
25 was ███████████████████████████████████████████
26 ███████████████████████████████████████████████
27 ███████████████████ Thus, to the extent Defendants' theory is simply that they kept the
28 files off of their own servers, the discovery is crucial in showing that Defendants *knew* that

Levandowski could and did access Google's proprietary files while working for Defendants by keeping those files on his own disks and devices *regardless* of whether the files physically were located on Defendants' servers. Moreover, even taken at its word its repeated assertion that Uber never found any evidence of the "14,000" files on its systems, Uber has never even looked for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ made available for the first time yesterday. Ex. 4

Defendants do not dispute Waymo's list of the tasks that must be performed for trial or provide a schedule for how those tasks could possibly be performed before October 10. This list includes:

- Review hundreds of thousands of documents identified by Stroz. (Mot. 9-10). For example, Stroz made available on September 18, over 1.4 million documents identified as part of the investigation process, including 425,317 documents for Mr. Levandowski; 228,256 documents for Mr. Ron; 487,461 documents for Mr. Burnette; 282,329 documents for Mr. Juelsgaard; and 55,743 documents for Mr. Sebern. (Ex. 4). It is thus no surprise that during the course of Stroz's review, Eric Friedberg indicated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 5)

- Resolve disputes over limitations on the Stroz productions. For example, at a July 18 hearing, Judge Corley has ordered further briefing on whether privilege claims over certain documents shared with Stroz were waived. Stroz has provided initial counts totaling over 22,000 documents subject to continuing privilege claims. (Ex. 4.) Further, each of the diligenced employees—Levandowski, Ron, Burnette, Sebern, and Juelsgaard—provided a list of terms for a screen for "private" documents and a log of supposedly privileged documents, that Waymo has provisionally challenged as improper. As shown in the Motion (at 11-13), Waymo's initial review showed the privacy screen seeks to exclude Waymo from reviewing obviously relevant materials. Stroz's initial count of documents subject to privacy screens totals over 83,000 documents. (Ex. 4)

- Inspect approximately 150 devices from Stroz. On September 18, Judge Corley instructed that Waymo review the materials on the Stroz database before this inspection. (Dkt. 1645.)
- Conduct at least 12 delayed depositions and further depositions of several others based on gaps in their testimony revealed by the Stroz Report.
- Perform further expert analysis and supplement expert reports, with experts reviewing and analyzing hundreds of thousands of new technical documents now available, ███████████████████.
- Review documents and conduct briefing on the detailed record of ███████████████ by Uber, Ottomotto, and Levandowski reflected in the report.
- Revise or supplement motions in limine, summary judgment briefing, and trial strategy.
- Compel production of thousands of emails and documents from Uber and Ottomotto's revised privilege logs.
- Potential further supplementation of Waymo's Motion for an Order to Show Cause.

The only thing Defendants mention in response to this list is that Waymo has rejected Uber's proposed dates for the depositions of Eric Tate (September 19), Rudy Kim (September 19), Travis Kalanick (September 19), Angela Padilla (September 20), and Lior Ron (September 21). (Dkt. 1623-4 at 7; *see* Ex. 3) What Defendants failed to include in their Opposition was Waymo's actual response to Defendants' offer, which explained that the proposed schedule was not workable because it did not provide enough time to review and take into account the materials that continue to roll in following the Federal Circuit's ruling. (Ex. 3.) Judge Corley has also now recognized that given the volume of the materials to be produced the parties should not "worry about that week deadline" that was previously set for completing these depositions. (Dkt. 1414, (8/28/17 Hearing Tr.) at 65:9-10.) While Defendants apparently suggest that Waymo rejected the proposed dates this week in bad faith, Defendants failed to explain how the depositions could reasonably go forward this week before Waymo receives (let alone reviews) all of the newly available evidence. Pursuant to Judge Corley's instructions at the hearing yesterday, some of these depositions will now take place next week. But

1  even if all depositions could somehow be completed by the end of next week, that would be only 10
2  days before trial is set to begin, leaving no reasonable amount of time for further discovery that is
3  likely to arise from the information gained in the depositions, much less to use them and integrate the
4  evidence into Waymo's trial strategy.  Of course, Defendants do not have this same problem as they
5  have known or had access to these withheld facts all along.

6  In sum, Defendants does not even address, much less dispute, the obvious conclusion that there
7  is no schedule that will make it possible to complete the many necessary tasks prior to the current trial
8  date of October 10.  Defendants also do not dispute that Waymo is not to blame for this late
9  production of material evidence.  Indeed, Waymo vigorously pursued the Stroz Report and associated
10 documentation from the outset, obtaining the first order related to these files at the beginning of June,
11 and twice litigating the issues surrounding the Stroz materials all the way up to the Federal Circuit.
12 Waymo is entitled to adequate time to prepare for trial with newly available evidence, and it should
13 not be penalized by Defendants', Levandowski's, and other third parties' delay in providing the
14 material at issue.

## II. DEFENDANTS DO NOT DISPUTE THAT WAYMO IS ENTITLED TO PROTECT ITS TRADE SECRETS BEYOND THE NINE TRADE SECRETS WAYMO IS LIMITED TO LITIGATING AT TRIAL AS A MATTER OF LAW

17 Defendants do not offer any substantive rebuttal to Waymo's assertion that it should not and
18 cannot be forced to waive claims for misappropriation of trade secrets in addition to the nine trade
19 secrets Waymo has designated for trial as a matter of law.  Under the circumstances described in
20 Waymo's motion, [REDACTED]
21 [REDACTED], Waymo's decision not to waive claims for misappropriation of
22 trade secrets is more than reasonable, and there is no legal or logical basis for the Court to force such a
23 waiver.

24 Defendants offer no response to the fact that Waymo was required to list nine trade secrets for
25 trial *before* it had all of the necessary information about which trade secrets presented the strongest
26 basis for claims of misappropriation.  Indeed, [REDACTED]
27 [REDACTED]
28 [REDACTED]

1  ▮▮▮▮▮▮▮▮.  The further discovery yet to come from and related to ▮▮▮▮▮▮▮
2  ▮▮▮▮ Stroz identified will likely shed even more light on the nature and scope of the
3  misappropriation.  Defendants provide no argument as to why it would be fair or reasonable to limit
4  Waymo to the nine trade secrets given the evidence that was made available to Waymo after the fact.
5  Defendants similarly fail to respond to Waymo's assertions that there is no legal basis in the Federal
6  Rules of Civil Procedure for this Court to require Waymo to waive trade-secret claims.  And, again,
7  Defendants offer no response to Waymo's argument that that requiring Waymo to waive trade-secret
8  claims would violate Waymo's due process rights and Seventh Amendment right to a jury trial.

To the extent Defendants suggest that Waymo should have raised this issue earlier, the reality is that Waymo diligently sought the Stroz materials from the outset; it was Defendants who resisted that discovery.  And it was Uber's counsel who claimed that "[t]here's no 'there' there."  Dkt. 1261 (Aug. 16, 2017 Tr.) at 29:14-17.  Now, having finally received some (but not even close to all) of the documents, it is clear that the Stroz materials are extraordinarily important and will likely have a direct impact on which trade secrets should be tried in this case.  Defendants should not benefit from their failed assertion of privilege by preventing Waymo from having adequate time to review and analyze the enormous and crucial trove of documents Defendants refused to disclose and misrepresented as nothing important.  That is especially true given ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ at a time when Defendants were supposedly contemplating litigation with Waymo.  Simply put, it is unfair for a party to know about destruction of evidence, make a baseless claim of privilege, and then force the other side to deal with the impact of hundreds of thousands of new documents on the eve of trial.

Finally, Defendants suggest that a trial with 121 trade secrets would be impractical, but Waymo has never suggested that all 121 trade secrets would go to trial.  Perlson Dec. ¶ 11.  Rather, Waymo would narrow the case after having adequate opportunity to review the newly available evidence, fairly assess the degree to which its trade secrets were available to Defendants, and analyze Defendants' LiDAR development work for additional evidence of use.

1  **III. DEFENDANTS MISREPRESENT THE FINDINGS OF THE STROZ REPORT IN ORDER TO DEFLECT FROM THE STRAIGHTFORWARD AND UNDISPUTED**
2  **ISSUES CONCERNING THE NECESSITY FOR A CONTINUANCE**

3   The Stroz Report shows that ▮▮▮

4   ▮▮▮

5   ▮▮▮.

6   Dkt. 1603-5 (stating that Levandowski ▮▮▮

7   ▮▮▮

8   ▮▮▮) (emphasis added). The report further establishes ▮▮▮

9   ▮▮▮ *Id.* at 7-17. And ▮▮▮

10  ▮▮▮, Uber permitted Levandowski to have ongoing access and input on product

11  development. And Uber provides no explanation for why it would go forward with purchasing

12  Levandowski's company and putting him in charge of its entire self-driving car program given the

13  report's conclusions that he ▮▮▮

14  ▮▮▮

15   The Stroz Report shows further a plan for ▮▮▮

16  ▮▮▮ Uber and Ottomotto claim to have been anticipating litigation with Google

17  after Levandowski left Google on January 28, 2016. Dkt. 1603-5 at 10, 12-13, and 19. Uber does not

18  dispute this ▮▮▮

19  ▮▮▮. But this argument simply ignores all of the statements

20  in the Stroz Report to the contrary. Uber ignores entirely the report's conclusion ▮▮▮

21  ▮▮▮

22  ▮▮▮. The Stroz Report also reveals ▮▮▮

23  ▮▮▮

24  ▮▮▮

25  ▮▮▮ The Stroz Report identifies ▮▮▮

26  ▮▮▮

27  ▮▮▮

28  ▮▮▮

01980-00104/9558758.2
-8-
WAYMO'S REPLY IN SUPPORT OF MOTION FOR CONTINUANCE

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The

3 list goes on and on. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 10-11. The substantial fact discovery, expert

7 discovery, and motion practice that must be conducted before trial cannot plausibly be completed in

8 time for a trial on October 10, much less allow Waymo an ability to prepare for a trial with this trove

9 of new evidence at the same time it is conducting (and likely still moving to compel) the discovery it

10 was entitled to from the outset of this case.

11       In addition, Defendants offer no substantive rebuttal to the evidence produced thus far which

12 Waymo showed in its motion demonstrates that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 1603-7 at 7 (stating that Stroz ▮▮▮▮▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *see also* Dkt. 1603-8 (Apr. 1, 2016 email

19 from Eric Tate at MoFo, quoting Stroz statement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Dkt. 1603-9 (email from Levandowski's attorney complaining

22 that Morrison & Foerster ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25 ▮▮). The report itself repeatedly notes that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt.

27 1603-5 at 17, 24, 27, 30, 32. Yet, Uber's Opposition fails to respond to this evidence and provides no

28 affirmative evidence that any of the recommended follow-up work was performed.



1  The sham nature of the "due diligence" is further shown by the fact that ▮
2  ▮
3  ▮
4  ▮. Dkt. 1603-5 at 11. In particular, ▮
5  ▮.
6  *Id.*; *see also id.* at 8. As Stroz found: ▮
7  ▮ *Id.* at 11. ▮
8  ▮ *Id.* at
9  11.

10  Defendants' attempt to address the inconsistencies between the Stroz Report and the testimony
11  of its witnesses is telling. Defendants do not substantively respond to the inconsistencies between Mr.
12  Poetzcher's testimony, in which he testified that he told Levandowski to get rid of any material from
13  Google, and the Stroz Report's findings, which state t▮
14  ▮. Dkt. 1603-5 at 10, Dkt. 1604-9 at 254-55. Uber's claim that Waymo
15  "selectively omitted" a portion of Mr. Kalanick's original instructions to Levandowski similarly does
16  not refute that, ▮, Kalanick attempted to paint himself in a better
17  light during deposition in this case by testifying that he told Levandowski to talk to his attorneys to
18  determine what to do with the Google material he possessed. Dkt. 1604-8 at 23. Uber's citation to
19  additional examples of Rhian Morgan's testimony where she offers only a vague recollection of her
20  involvement in the Stroz process similarly does not refute, and in actuality confirms, that ▮
21  ▮
22  ▮
23  ▮ Dkt. 1603-5 at 13; Perlson Decl. ¶ 8. Moreover,
24  Defendants cannot refute that Ms. Morgan did initially deny involvement with the due diligence
25  investigation (Dkt. 1604-10 at 17:5-7), and Ms. Morgan later unequivocally confirmed that she
26  "wasn't involved in the due diligence process." (*Id.* at 18:15-16.) In a sworn declaration to the Court,
27  Ms. Morgan also declared that she has "never heard of the 14,000 files allegedly downloaded by
28  Anthony Levandowski," and has "never seen any evidence of any use of Google or Waymo

information during my tenure at Otto and Uber." (Dkt. 177-1 at 4.) In light of the revelations in the Stroz report, this seems hard to believe.

The inescapable conclusion to be drawn is that the Stroz Report goes to the heart of this case. It establishes ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████ Notwithstanding ████████████████████████████ ██████████████████████████████████ Uber went forward with the purchase of Levandowski's company and, incredibly, put Levandowski in charge of its entire self-driving car program. Uber's decision to move forward with the acquisition in spite of ████████████ ███████████████████████████████████████████████ ███████████████████████████████████████ All of these facts are critical to the disputes that will be tried before the jury. Levandowski's decision to invoke his Fifth Amendment rights rather than testify further heightens the importance of these materials.

## IV.  DEFENDANTS' SUBSTANTIVE CHALLENGES TO WAYMO'S CLAIMS ARE IRRELEVANT IN DECIDING WHETHER A CONTINUANCE IS WARRANTED

Defendants' only substantive rebuttal to the undeniable fact that a continuance is necessary, in view of the facts disclosed in the Stroz Report and attendant discovery that is now necessary, is that Waymo's present case is "shaky" and thus the Court should proceed to trial now. (Opp at 9-15.) Waymo wholly disputes Defendants' characterization of Waymo's evidence that Defendants are using Waymo's trade secrets. Indeed, Defendants assertions make clear that Defendants largely do not dispute their use of Waymo's trade secrets, and that their primary defense to Waymo's claims is that they are taking steps to redesign their LiDAR systems in an attempt to avoid Waymo's trade secrets. Moreover, these merits-based arguments are completely divorced from the issues of whether a continuance is warranted based on the Federal Circuit's rulings and Waymo's position that it should not waive the remainder of its trade secrets without additional discovery. Aside from being completely irrelevant, Waymo has, or will shortly, address the substance of Defendants' arguments in

its briefs in opposition to Defendants' motions for summary judgment and motions in limine from which these arguments are largely based.

### A.   Trade Secret Challenges Are Meritless and Irrelevant

Waymo has previously provided sufficient evidence of trade secret misappropriation for this Court to grant provisional relief, based on review of voluminous evidence provided by Waymo. Dkt. 426. Over the course of the discovery period that followed the Court's provisional relief Order (which, as stated above is currently ongoing in light of the Federal Circuit's ruling) Waymo has developed evidence of Uber's misappropriation and use of all nine trade secrets in its final election. (*See* Dkt. 1371-4). Defendants largely do not dispute Waymo's evidence that its trade secrets have been used, but instead resort to challenging the trade secret status of this information and arguing ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ should absolve Defendants of any liability. (Dkt. 1623-4 at 7-10.) Not true. Setting aside that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ are improper because they are continue to use Waymo's trade secrets as their foundation (*see* Dkt. 1560), the mere fact that Uber ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that Uber's present LiDAR designs misappropriate Waymo's trade secrets. Moreover, Defendants have yet to produce any evidence that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and their lead LiDAR engineer has admitted that Uber ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.*

Defendants also resort to their tactic du jour of taking shots at Waymo's forensic investigation, and Mr. Zbrozek's out-of-context characterization of the SVN repository, to suggest that Waymo does not maintain its LiDAR design information as trade secret. As Waymo has shown repeatedly though, Defendants continuously rely on incomplete and mischaracterized evidence in support of these assertions. Perlson Decl. ¶ 3; *see also* Dkt. 1540-24, Dkt. 1572, Dkt. 1589, Dkt. 1630. The Court should put a stop once and for all to Defendants' attempts to force this evidence into the discussion despite its irrelevance to any of the issues.

### B.   Attacks on Waymo's Damages Model Are Subject To Separate Briefing And Have No Bearing On The Present Continuance Request

Contrary to Defendants' argument that Waymo's damages theories are "over-the-top" and "wildly speculative" (Mot. at 1), all three of Waymo's damages theories are based on Uber's *own*

1  estimates of how acquiring Otto (and thus, Waymo's trade secrets) would ███████
2  ███████. As it was considering whether to acquire Otto, Uber estimated that acquiring
3  Otto could ███████ (Dkt. 1606-5.) Putting a dollar figure on ███
4  ████████████████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████████████
6  ███████. (*Id.*) Uber also acknowledged that ████████████████████████████
7  ████████████████████████████████████████████████████████████████████████."

Using Uber's own ███████ as a starting point for his unjust enrichment analysis, Waymo's damages expert Michael Wagner apportioned to a trade secret level based on: (1) how long Uber said it would take to design around Waymo's trade secrets (for Trade Secret Nos. 2, 7, 9, 13, 14 and 96), (2) how long it took Waymo to develop the trade secrets (for Trade Secret Nos. 25 and 111), or (3) how much Uber paid to acquire the trade secrets from Tyto (a Levandowski company) (for Trade Secret 90). Mr. Wagner similarly used Uber's ███████ as a starting point for his reasonable royalty analysis, from which he proceeded to evaluate a hypothetical negotiation between the parties using the *Georgia-Pacific* factors.

Without citation to any supporting case law, Defendants request that the Court hold a bench trial on a narrowed list of trade secrets in part due to alleged deficiencies in Waymo's expert Michael Wagner's testimony on damages. (Dkt. 1623-4). Defendants contend that Mr. Wagner's damages testimony should be excluded, and as a result, Defendants argue that "because Waymo has no other disclosed evidence of monetary damages" (Dkt. 1623-4 at 14), Waymo would only be left with a claim for injunctive relief that should be resolved through an equitable bench trial. (Dkt. 1623-4). Setting aside that Defendants have failed to provide a valid basis for excluding Mr. Wagner's opinions, which will be dealt with in substance in response to Defendant's Motion to Exclude, there is extensive record evidence of Waymo's monetary damages both from Waymo and from Uber. (*See* Dkt. 933-3; Dkt. 933-6.) Even if Mr. Wagner's expert opinion on damages were to be excluded, the scope of monetary damages caused as a result of Defendants' malfeasance should be evaluated by a jury through documentary evidence and testimony from lay witnesses. *See, e.g.*, *Pet Food Exp. Ltd. V. Royal Canin USA, Inc.*, 2011 WL 6140874 (N.D. Cal. Dec. 8, 2011); *U.S. ex rel. Technica, LLC v.*

*Carolina Cas. Ins. Co.*, 2012 WL 1229885 (S.D. Cal. April 12, 2012); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1161 (3d Cir. 1993); *Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1305 (2010); Fed. R. Evid. 701.

For the aforementioned reasons, the Court should deny Defendants' request for an equitable bench trial, even if it should ultimately choose to grant Defendants' separate pending motion to exclude Mr. Wagner's opinions.

## V. THE COURT SHOULD NOT APPOINT AN EXPERT PURSUANT TO FEDERAL RULE OF EVIDENCE 706

Defendants fail to refute that a court-appointed expert is not necessary or appropriate in this case and would instead be highly prejudicial to the parties' ability to present their case to the jury because this case does not present the "rare and compelling circumstances" justifying the appointment of a court-appointed expert. *Monolithic Power Systems, Inc. v. O2 Micro Intern. Ltd.*, 558 F.3d 1341, 1348 (2009); *see also Womack v. GEO Grp., Inc.*, No. CV-12-1524-PHX-SRB, 2013 WL 2422691, at *2 (D. Ariz. June 3, 2013) ("District courts do not commonly appoint an expert pursuant to Rule 706 and usually do so only in exceptional cases."). Instead of Waymo and Defendants putting on their competing cases, with the jury deciding which party is correct, the parties' experts will be diminished as "partisan" and the jury will naturally go with the "independent" court appointed expert every time. It is for this reason that Rule 706 is very rarely invoked and, under the circumstances of this case, will result in the denial of Waymo's Seventh Amendment right to a jury trial. *See Kian v. Mirro Aluminum Co.*, 88 F.R.D. 351, 356 (E.D. Mich. 1980) ("The presence of a court-sponsored witness, who would most certainly create a strong, if not overwhelming, impression of 'impartiality' and 'objectivity,' could potentially transform a trial by jury into a trial by witness. Under the circumstances of the present case, where the issues are within the grasp of the jury, appointment of an expert should and can be avoided.") Defendants also do not dispute that given that autonomous vehicle technology is very new and there are only a small number of companies working on developing the technology that it will likely be extremely difficult, if not impossible, to identify an individual with the correct background and expertise who does not have a prior association with one

of the parties in this case, while having the time and ability to absorb the already voluminous record in this matter.

***

For the foregoing reasons, Waymo respectfully requests that the Court grant Waymo's motion for a continuance of the October 10 trial date. In addition, Waymo submits that the Court should not appoint an expert pursuant to Federal Rule of Evidence 706.

DATED: September 19, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
   Charles K. Verhoeven
   Attorneys for WAYMO LLC