UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　Defendants. | CASE NO. 3:17-cv-00939<br><br>**JOINT PROPOSED PRETRIAL ORDER**<br><br><br>**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** |

**TABLE OF CONTENTS**

I. CLAIMS AND DEFENSES THAT REMAIN TO BE DECIDED ................................... 1

II. RELIEF SOUGHT .................................................................................................... 11

III. STIPULATED FACTS .............................................................................................. 12

IV. FACTUAL ISSUES THAT REMAIN TO BE TRIED ............................................... 13

V. EXHIBIT AND WITNESS LISTS ............................................................................ 16

VI. OPENING STATEMENTS ....................................................................................... 16

# JOINT PROPOSED PRETRIAL ORDER

Pursuant to the Court's Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases, the parties submit the following Joint Proposed Pretrial Order.

## I.     CLAIMS AND DEFENSES THAT REMAIN TO BE DECIDED

### A.     Waymo's Submission

Two of Waymo's claims for relief remain to be decided.  First, Waymo asserts a violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1)..  (FAC Claim 1.)  Waymo claims that Uber, Ottomotto, and Otto Trucking improperly acquired, used, or disclosed Waymo-owned information relating to its self driving car technology, including custom LIDAR systems that are used to enable the operation of fully self-driving vehicles.  This information comprises one or more of the identified Waymo-owned trade secrets, including Waymo LiDAR designs, and one or more of these Waymo-owned trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce.  Waymo has taken reasonable measures to keep such information secret and confidential.  Waymo has at all times maintained stringent security measures to preserve the secrecy of its trade secrets, and Waymo's trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.  Defendants' misappropriation of Waymo's trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.  Defendants have attempted and continue to attempt to conceal their misappropriation.

Second, Waymo asserts a claim of violation of California Uniform Trade Secret Act, Cal. Civ. Code § 3426 *et seq*.  (FAC Claim 2.)  Waymo claims that Uber, Ottomotto, and Otto Trucking improperly acquired, used, or disclosed Waymo-owned information relating to its self driving car technology, including custom LIDAR systems that are used to enable the operation of fully self-driving vehicles.  This information comprises one or more of the identified Waymo-owned trade secrets, including Waymo LiDAR designs, and one or more of these Waymo-owned trade secrets were trade secrets at the time of the misappropriation.  Waymo has undertaken efforts that are reasonable under the circumstances to maintain the secrecy of the trade secrets at

issue.  Defendants knew or should have known under the circumstances that the information misappropriated by Defendants were trade secrets.  Defendants misappropriated and threaten to further misappropriate trade secrets at least by acquiring trade secrets with knowledge of or reason to know that the trade secrets were acquired by improper means, and Defendants are using and threatening to use the trade secrets acquired by improper means without Waymo's knowledge or consent.  The aforementioned acts of Defendants were willful, malicious and fraudulent.[1]

Pursuant to this Court's Order (Dkt. 563), on August 1, Waymo elected nine trade secrets it would present at an October 10 trial.  They are described in Waymo's trade secret list, provided before discovery began in this matter (Dkt. 25-7), including:

a. **Waymo's Trade Secret No. 2** is

b. **Waymo's Trade Secret No. 7** is

[2]".

c. **Waymo's Trade Secret No. 9** is



---

[1]  No other Waymo claims currently remain for trial.  Waymo's patent infringement claims (FAC 3, 4, 5, 6) were dismissed by stipulation. (Dkt. 449, 1550.)  Waymo's unfair competition claim (FAC 7) was dismissed by order of the Court.  (Dkt. 576.)

[2]  As described with more particularity in Dkt. 335-4.



    d. **Waymo's Trade Secret No. 13** is [REDACTED]

    e. **Waymo's Trade Secret No. 14** is [REDACTED]

    f. **Waymo's Trade Secret No. 25** is [REDACTED]

    g. **Waymo's Trade Secret No. 90** is [REDACTED]

    h. **Waymo's Trade Secret No. 96** is [REDACTED]

    i. **Waymo's Trade Secret No. 111** is [REDACTED]

As set forth in Waymo's Motion for a Continuance (Dkt. 1604), Waymo reserves the right to pursue additional trade secrets, including based upon information discovered as a result of Defendants' late disclosure of the Stroz due diligence report and associated documents.

**B.     Uber's Submission**

Uber Technologies, Inc., and Ottomotto LLC (together, "Uber") deny Waymo's claims. Uber independently developed all of the technology and know-how it uses, and thus has a complete defense to Waymo's claims. In addition, the alleged trade secrets are not protectable trade secrets under either the DTSA or CUTSA. Waymo has not taken reasonable measures to protect the alleged trade secrets, and they do not derive independent economic value from not being generally known or readily ascertainable. Uber has not misappropriated any of the alleged trade secrets. Uber did not acquire the alleged trade secrets by improper means. Waymo did not plead a claim based on disclosure of the alleged trade secrets and should not be permitted to advance such a claim at trial. Waymo likewise never pleaded theories of liability based on ratification or agency, or any theory of vicarious liability. Waymo should not be permitted to argue such unpled theories at trial, but Uber also denies that it is vicariously liable for any misappropriation by any other person or entity, or liable under principles of agency or ratification under trade secret law.

Even if Uber is found to have misappropriated Waymo trade secrets (which it has not), Waymo has not suffered any damages as a result of Uber's conduct. Neither Uber nor Waymo has commercialized their autonomous vehicle technologies. For that reason, Waymo admits that it has not lost any profits. For the same reason, Uber has not gained any profits, and thus cannot have been unjustly enriched. Indeed, the Uber technologies Waymo claims constitute trade secret misappropriation have never even been deployed on a vehicle. There is zero revenue associated with any of that technology. Moreover, Waymo's alleged damages are speculative and based on unreliable expert testimony and thus not recoverable. In addition, even if Waymo were able to show that any trade secrets had been misappropriated, it would be fully protected by the injunction it seeks, and a damage award would be nothing more than a windfall. Waymo is not entitled to a jury trial if the Court strikes its damages expert because Waymo's only remaining claims would be equitable claims for the Court. Even if the Court were to have a jury decide the case, Waymo is not entitled to present any reasonable royalty evidence to the jury because a reasonable royalty, if any, should be determined by the Court. Waymo's alleged damages further

are not recoverable to the extent that Waymo failed to mitigate them by failing to act timely to protect any of the alleged trade secrets despite first investigating potential trade secret compromise by Anthony Levandowski and others over a year before filing this lawsuit. Waymo's decision not to include its damages theories—much less the required computation of damages—in its initial disclosures also precludes it from offering any evidence of damages.

Alternatively, if the Court permits Waymo to pursue damages, then Waymo should not be entitled to injunctive relief. Any injury to Waymo is not immediate or irreparable, Waymo has an adequate remedy at law, and both the balance of hardships and the public interest favor no injunction. Moreover, the monetary relief Waymo seeks, if granted, would preclude the grant of any injunction (and likewise, as explained above, the injunctive relief Waymo seeks, if granted, would preclude any damages). In no circumstances should Waymo be permitted to seek a windfall award of (supposed future) damages while also enjoining the conduct alleged to cause those future damages.

Uber also notes that Waymo may not bring any claim under DTSA for acts of misappropriation that occurred before DTSA's enactment on May 11, 2016. As a result, Waymo's theories of liability based on acquisition—all of which relate to events before May 2016—cannot proceed under DTSA.

Uber makes the following statement about each alleged trade secret ("TS"):

Uber denies that it misappropriated TS 2, and specifically denies that it has unlawfully acquired or used TS 2.[3] Uber independently developed the designs that Waymo accuses of using TS 2. TS 2 is not a trade secret, including because Waymo has not taken reasonable measures to keep TS 2 secret and because TS 2 does not derive independent economic value from not being generally known or ascertainable by the public or others who could make economic use of it. To

---

[3] Uber disagrees that Waymo is entitled to trial of its claims to the extent they are predicated on disclosure of the alleged trade secrets or to trial of its theories of liability to the extent they are predicated on ratification or agency, because Waymo did not plead those issues in its Amended Complaint. *See generally* Dkt. 23. Out an abundance of caution, however, Uber also denies that it unlawfully disclosed TS 2, or any other alleged trade secret, and denies that it unlawfully acquired, used or disclosed TS 2, or any other alleged trade secret, by ratification or through its agents.

the contrary, TS 2 is readily ascertainable through proper means. No remedy is proper, because (i) Uber did not misappropriate TS 2; (ii) Uber has implemented a design-around that even more clearly avoids use of TS 2; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

Uber denies that it misappropriated TS 7, and specifically denies that it has unlawfully acquired or used TS 7.[4] Uber independently developed the designs that Waymo accuses of using TS 7. TS 7 is not a trade secret, including because Waymo has not taken reasonable measures to keep TS 7 secret and because TS 7 does not derive independent economic value from not being generally known or ascertainable by the public or others who could make economic use of it. To the contrary, TS 7 is generally known or readily ascertainable through proper means. No remedy is proper, because (i) Uber did not misappropriate TS 7; (ii) Uber has implemented a design-around that avoids use of TS 7; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

Uber denies that it misappropriated TS 9, and specifically denies that it has unlawfully acquired or used TS 9.[5] Uber independently developed the designs that Waymo accuses of using TS 9. TS 9 is not a trade secret, including because Waymo has not taken reasonable measures to keep TS 9 secret and because TS 9 does not derive independent economic value from not being generally known or ascertainable by the public or others who could make economic use of it. To the contrary, TS 9 is generally known or readily ascertainable through proper means. No remedy is proper, because (i) Uber did not misappropriate TS 9; (ii) Uber has contracted a third-party firm to independently develop a substitute for the component alleged to use TS 9; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

---

[4] *See* note 3 *supra*.

[5] *See* note 3 *supra*.

Uber denies that it misappropriated TS 13, and specifically denies that it has unlawfully acquired or used TS 13.[6] Uber independently developed the designs that Waymo accuses of using TS 13. TS 13 is not a trade secret, including because Waymo has not taken reasonable measures to keep TS 13 secret and because TS 13 does not derive independent economic value from not being generally known or ascertainable by the public or others who could make economic use of it. To the contrary, TS 13 is generally known or readily ascertainable through proper means. No remedy is proper, because (i) Uber did not misappropriate TS 13; (ii) Uber is implementing a design-around that avoids use of TS 13; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

Uber denies that it misappropriated TS 14, and specifically denies that it has unlawfully acquired or used TS 14.[7] Uber independently developed the designs that Waymo accuses of using TS 14. Moreover, TS 14 is not a trade secret, including because Waymo has not taken reasonable measures to keep TS 14 secret and because TS 14 does not derive independent economic value from not being generally known or ascertainable by the public or others who could make economic use of it. To the contrary, TS 14 is generally known or readily ascertainable through proper means. No remedy is proper, because (i) Uber did not misappropriate TS 14; (ii) Uber is implementing a design-around that even more clearly avoids use of TS 14; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

Uber denies that it misappropriated TS 25, and specifically denies that it has unlawfully acquired or used TS 25.[8] Uber independently developed its own test scenarios and LiDAR requirements. Moreover, TS 25 is not identified with adequate specificity to qualify as a trade secret. No remedy is proper, because (i) Uber did not misappropriate TS 25; (ii) Uber has never

---

[6] *See* note 3 *supra*.

[7] *See* note 3 *supra*.

[8] *See* note 3 *supra*.

acquired or used TS 25; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

Uber denies that it misappropriated TS 90, and specifically denies that it has unlawfully acquired or used TS 90.[9] Uber independently developed the designs that Waymo accuses of using TS 90. Moreover, TS 14 is not a trade secret, including because Waymo has not taken reasonable measures to keep TS 14 secret and because TS 14 does not derive independent economic value from not being generally known or ascertainable by the public or others who could make economic use of it. To the contrary, TS 90 is generally known or readily ascertainable through proper means. Uber also argues that TS 90 is not identified with adequate specificity to qualify as a trade secret. No remedy is proper, because (i) Uber did not misappropriate TS 90; (ii) Uber has not been unjustly enriched; (iii) no reasonable royalty is appropriate; and (iv) Waymo cannot meet the prerequisites for injunctive relief.

Uber denies that it misappropriated TS 96, and specifically denies that it has unlawfully acquired or used TS 96.[10] Uber independently developed the designs that Waymo accuses of using TS 96. Moreover, TS 96 is not a trade secret, including because Waymo has not taken reasonable measures to keep TS 96 secret and because TS 96 does not derive independent economic value from not being generally known or ascertainable by the public or others who could make economic use of it. To the contrary, TS 96 is generally known or readily ascertainable through proper means. No remedy is proper, because (i) Uber did not misappropriate TS 96; (ii) Uber has never acquired or used TS 96, and is implementing a design-around that even more clearly avoids use of TS 96; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

Uber denies that it misappropriated TS 111, and specifically denies that it has unlawfully acquired or used TS 111.[11] Uber independently decided not to develop a system of the sort

---

[9] *See* note 3 *supra*.

[10] *See* note 3 *supra*.

[11] *See* note 3 *supra*.

referenced in TS 111. Moreover, TS 111 is not a trade secret, including because Waymo has not taken reasonable measures to keep TS 111 secret and because TS 111 does not derive independent economic value from not being generally known or ascertainable by the public or others who could make economic use of it. No remedy is proper, because (i) Uber did not misappropriate TS 111; (ii) Uber has never acquired or used TS 111; (iii) Uber has not been unjustly enriched; (iv) no reasonable royalty is appropriate; and (v) Waymo cannot meet the prerequisites for injunctive relief.

### C. Otto Trucking, LLC's Submission

Otto Trucking denies all of Waymo's claims. Otto Trucking is a limited liability company that is separate from co-defendants Uber Technologies, Inc. ("Uber") and Ottomotto LLC ("Ottomotto"). Neither Uber nor Ottomotto have any ownership interest in Otto Trucking. Nearly one hundred individuals and investment companies are members of Otto Trucking, including, but not limited to, Lior Ron and Anthony Levandowski.

As it has become clear as this case has progressed, Waymo's allegations center on the development of the Spider and Fuji LiDAR systems. For example, Waymo identified Uber's Spider and Fuji LiDAR systems as infringing its now dismissed patent claims. *See* Plaintiff's Infringement Contentions Pursuant to Patent L.R. 3-1. When asked what instrumentalities use Waymo's alleged trade secrets, Waymo identified only the Spider and Fuji LiDAR systems. *See* Plaintiff's Objections and Responses to Uber's First set of Interrogatories, at Nos. 1 and 2. Otto Trucking has had no involvement in research and development for the Spider or Fuji LiDAR systems. Otto Trucking has no employees or operations, and has never been involved in the development of LiDAR, the technology for self-driving vehicles at issue in this case.

Otto Trucking and its wholly-owned subsidiary, Otto Transport LLC, own a small number of tractor-trailers. Some of these have used LiDAR provided by third parties such as Velodyne. Otto Trucking does not develop its own LiDAR, nor does it use LiDAR systems developed by Uber or Ottomotto. Waymo is attempting to hold Otto Trucking liable for Uber's alleged trade secret misappropriation under a joint and several liability theory. However, this claim fails because the root of Waymo's claims is the alleged misuse of Waymo's patents and trade secrets

in the Fuji and Spider systems, and Otto Trucking did not participate in the research or development of these systems. Thus, Otto Trucking could not be a joint tortfeasor or have contributed to any possible Waymo injury for the purpose of joint and several liability.

To the extent that Waymo seeks to hold Otto Trucking for the actions of Anthony Levandowski, such position is unsupported by evidence or by applicable law. Waymo could have, but did not, assert claims against Anthony Levandowski for alleged trade secret misappropriation. Even assuming, for purposes of argument, that Waymo could establish liability against Otto Trucking, any recovery from Otto Trucking should be denied for at least the following reasons. First, Waymo has no viable damages theory against Otto Trucking. Waymo's unjust enrichment-based theory against Uber is premised on Uber's supposedly accelerated development of LiDAR. Indeed, Waymo's damages expert, Mr. Wagner, has no theory of direct liability against Otto Trucing. However, Otto Trucking does not develop LiDAR and has not been enriched at all by any allegedly accelerated development by Uber.

Second, Otto Trucking's affirmative defenses, including unclean hands and failure to mitigate damages defenses, preclude any recovery by Waymo from Otto Trucking. Waymo has engaged in litigation misconduct by premising its case on Mr. Levandwoski's downloading of "suspicious" and "improper" downloading of 14,000 files from the SVN server—a repository for storing electrical designs for Chauffeur. The SVN administrator, Sasha Zbrozek, who set up the SVN repository, had repeatedly informed counsel for Waymo that the downloading of the entire SVN repository (at that time 14,000 files), was normal practice for engineers and that Mr. Levandowski's downloading of the files was not suspicious. He also informed counsel that the SVN materials were "low value" and "second class citizens." The "low value" of these materials factored into Mr. Zbrozek's suggestion of hosting the SVN server outside Google's normal security infrastructure. This decision led to the SVN server not being protected by many of Google's security protections. Waymo also failed to mitigate damages by waiting six months to sue Otto Trucking after Waymo was aware of the downloading of its alleged trade secrets. Waymo also knew since as early as January 2016 that Mr. Levandowski was doing a startup focused on development of self-driving trucks after he left Google. Google allowed Mr.

Levandowski to pursue this business and was offered numerous opportunities during the first half of 2016 to inspect the self-driving truck that the company was developing.

Otto Trucking incorporates the submission of Uber in Sec. I.B.

## II.    RELIEF SOUGHT

### A.    Waymo's Submission

Waymo seeks the following relief:

1. That the Court award judgment in Waymo's favor and against Defendants on all causes of action.
2. That the Court award Waymo damages in an amount to be further proven at trial.
3. That the Court permanently enjoin Uber, Ottomotto LLC, and/or Otto Trucking LLC, its agents, servants, employees, attorneys, and all others in active concert or participation with the Defendants, from misappropriating Waymo's trade secrets.
4. That the Court award Waymo exemplary damages.
5. That the Court award Waymo attorneys' fees and costs.
6. That the Court award Waymo such other and further relief as this Court may deem to be just and proper.

### B.    Uber's Submission

1. Judgment in favor of Uber and against Waymo on all claims.
2. Judgment that Waymo shall recover nothing from Uber;
3. Judgment that no injunction shall run against Uber;
4. Judgment dismissing Waymo's claims against Uber with prejudice;
5. An award of attorneys' fees under Cal. Civ. Code § 3426.4 or 18 U.S.C. § 1836(b)(3)(D);
6. An award of costs;
7. An award of damages for wrongful enjoinment, and execution of Waymo's preliminary injunction bond; and
8. Such other and further relief to Uber as the Court may deem just and proper.

**C.  Otto Trucking, LLC's Submission**

1. A separate trial from co-defendants Uber and Ottomotto.
2. Judgment in favor of Otto Trucking and against Waymo on all claims.
3. Judgment that Waymo shall recover nothing from Otto Trucking;
4. Judgment that no injunction shall run against Otto Trucking;
5. Judgment dismissing Waymo's claims against Otto Trucking with prejudice;
6. An award of attorneys' fees under Cal. Civ. Code § 3426.4 or 18 U.S.C. § 1836(b)(3)(D);
7. An award of costs; and
8. Such other and further relief to Otto Trucking as the Court may deem just and proper.

## III.  STIPULATED FACTS

The parties jointly stipulate as follows:

1. Plaintiff Waymo LLC is a subsidiary of Alphabet Inc. with its principal place of business located in Mountain View, California 94043.
2. Defendant Uber Technologies, Inc. is a Delaware company with its principal place of business at 1455 Market Street, San Francisco, California.
3. Defendant Ottomotto LLC (f/k/a 280 Systems Inc.) is a Delaware limited liability company with its principal place of business located at 737 Harrison Street, San Francisco, California.
4. Defendant Otto Trucking LLC (f/k/a 280 Systems LLC) is a limited liability company with its principal place of business located at 737 Harrison Street, San Francisco, California.
5. Anthony Levandowski is a former employee of Google who worked on its self-driving car program.
6. Anthony Levandowski was Uber's Vice President of Engineering for approximately nine months and was in charge of Uber's self-driving vehicle program during that time.

7. Anthony Levandowski is Executive Chairman and a Managing Member of Otto Trucking LLC.

8. Anthony Levandowski was CEO and a founder of Ottomotto LLC.

9. Levandowski left Waymo on January 27, 2016.

10. 280 Systems LLC was formed on February 1, 2016.

11. As of August 2016, Uber had not deployed a LiDAR that was designed in-house.

12. Uber fired Anthony Levandowski on May 26, 2017.

## IV. FACTUAL ISSUES THAT REMAIN TO BE TRIED

The parties continue to dispute the following issues. Where fewer than all parties agree that a factual issues remains to be tried, the propounding party is indicated in brackets.

*Waymo's Reasonable Measures to Keep Its Alleged Trade Secrets Secret*:

1. Whether Waymo takes reasonable measures to protect its trade secrets.

*Waymo's Alleged Trade Secrets Are Not Generally Known or Readily Ascertainable*:

2. Whether any of Waymo's asserted trade secrets are generally known in the relevant field, or are readily ascertainable.

3. Whether any of Waymo's asserted trade secrets derive independent economic value from their secrecy.

*Misappropriation of Waymo's Alleged Trade Secrets*:

4. Whether Uber misappropriated any of the alleged trade secrets by improperly acquiring, disclosing,[12] or using any of the alleged trade secrets in violation of the DTSA or CUTSA.

    a. [Uber] Whether Uber intended to secure dominion over any of the alleged trade secrets, as opposed to passively or inadvertently coming into possession of any alleged trade secret.

---

[12] Uber disagrees that Waymo is entitled to trial on a disclosure theory. *See* note 3 *supra*.

5. Whether Otto Trucking misappropriated any of the alleged trade secrets by improperly acquiring, any of the alleged trade secrets in violation of the DTSA or CUTSA.

6. [Waymo] Whether Otto Trucking misappropriated any of the alleged trade secrets by improperly disclosing or using any of the alleged trade secrets in violation of the DTSA or CUTSA.

7. Whether Uber or Otto Trucking acquired any of the alleged trade secrets while knowing or having reason to know that Uber or Otto Trucking, or the person from whom Uber or Otto Trucking acquired the alleged trade secret, used improper means to acquire it.

8. Whether any of the attendant circumstances required for misappropriation by use existed, including, at the time of any use:

   a. Whether Uber or Otto Trucking acquired knowledge of an alleged trade secret by improper means;

   b. Whether Uber or Otto Trucking knew or had reason to know that its knowledge of an alleged trade secret came from or through a person who had acquired the alleged trade secret through improper means; or

   c. Whether Uber or Otto Trucking knew or had reason to know that its knowledge of an alleged trade secret came from or through a person who had a duty to keep secret the alleged trade secret.

9. Whether Uber or Otto Trucking used any of the alleged trade secrets under circumstances that constitute misappropriation by use.

10. Whether Uber independently developed any of the designs or know-how accused of using the alleged trade secrets.

11. Whether any misappropriation of the alleged trade secrets is ongoing.

*Joint and Several/Vicarious Liability*

12. [Waymo] Whether Uber and/or Ottomotto are liable for trade secret misappropriation based on the actions of Anthony Levandowski, Stroz Friedberg, and/or Morrison & Foerster.

13. Whether Otto Trucking is liable for trade secret misappropriation based on the actions of Anthony Levandowski.

14. [Waymo] Whether Otto Trucking is liable for trade secret misappropriation based on the actions of O'Melveny & Myers.

*Willful and Malicious Trade Secret Misappropriation*

15. Whether any misappropriation of Waymo's trade secrets by Uber, Ottomotto, and/or Otto Trucking was willful and malicious.

*Damages*

16. Whether Uber or Otto Trucking was unjustly enriched by any misappropriation of the alleged trade secrets by Uber or Otto Trucking, and if so, the amount of that unjust enrichment.

17. [Waymo] What amount of damages for a reasonable royalty Waymo is entitled to as a result of any misappropriation of Waymo's trade secrets by Uber or Otto Trucking.

18. Whether Uber or Otto Trucking acted willfully and maliciously in any misappropriation of the alleged trade secrets by Uber or Otto Trucking, respectively.

*Affirmative Defenses*

19. Whether Waymo's claims are barred in whole or in part by the doctrine of unclean hands.

20. Whether Waymo failed to mitigate any of its damages from any misappropriation of an alleged trade secret.

21. [Uber] Whether Waymo made any claim of misappropriation of any of its 121 alleged trade secrets in bad faith.

*Issues to be Tried to the Court*

22. [Uber] If the Court strikes Plaintiff's damages expert, any remaining claims would be equitable and for the Court.

23. [Uber] Whether Waymo is entitled to a reasonable royalty for any misappropriation of the alleged trade secrets, and if so, the amount of that royalty.

24. [Uber] The amount of any of reasonable attorney's fees awarded to any party.

25. Whether Waymo would be irreparably harmed absent an injunction.

26. Whether Waymo has an adequate remedy at law.

27. Whether the balance of hardships favors granting or denying an injunction.

28. Whether the public interest favors granting or denying an injunction.

## V. EXHIBIT AND WITNESS LISTS

The parties attach their Joint Exhibit List as Appendix A. Waymo's Witness List for its case-in-chief witnesses is attached as Appendix B. Defendants' Objections to Waymo's Witness List is attached as Appendix C. Uber and Ottomotto's Witness List for its case-in-chief witnesses is attached as Appendix D. Otto Trucking, LLC's Witness List for its case-in-chief witnesses is attached as Appendix E. Waymo's Objections to Defendants' Witness lists is attached as Appendix F.

Waymo reserves the right to amend or supplement the Joint Proposed Pretrial Order and Joint Exhibit List and its Witness List based upon newly produced evidence, including the Stroz due diligence report and related documents, and discovery that has not yet been taken.

Uber and Ottomotto also reserve the right to amend or supplement the Joint Proposed Pretrial Order and Joint Exhibit List and its Witness List based upon newly produced evidence, including the Stroz due diligence databases, and discovery that has not yet been taken.

Otto Trucking also reserves the right to amend or supplement the Joint Proposed Pretrial Order and Joint Exhibit List and its Witness List based upon newly produced evidence, including the Stroz due diligence databases, and discovery that has not yet been taken.

## VI. OPENING STATEMENTS

Defendants contend that each separately-represented defendant may give an opening statement. They further contend that each defendant's opening statement may be after the plaintiff's opening statement or before they begin their case. Waymo does not object to separate opening statements so long as Waymo is allocated as much time for its opening statement as all defendants combined for theirs. Waymo contends that any opening statement from defendants must be after plaintiff's opening statement. This matter will need to be decided by the Court.

| | |
|---|---|
| Dated:  September 21, 2017 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By */s/ Charles K. Verhoeven*<br>Charles K. Verhoeven<br>Attorneys for WAYMO LLC |
| Dated:  September 21, 2017 | MORRISON & FOERSTER LLP |
| | By:  */s/ Arturo J. González*<br>ARTURO J. GONZÁLEZ<br><br>Attorneys for Defendants<br>UBER TECHNOLOGIES, INC.<br>and OTTOMOTTO LLC |
| Dated:  September 21, 2017 | GOODWIN PROCTER LLP |
| | By:  */s/ Neel Chatterjee*<br>NEEL CHATTERJEE<br><br>Attorneys for Defendant<br>OTTO TRUCKING, LLC |

**ATTESTATION OF E-FILED SIGNATURE**

I, Charles K. Verhoeven, am the ECF User whose ID and password are being used to file this Joint Submission of Proposed *Voir Dire* Questions.  In compliance with General Order 45, X.B., I hereby attest that Arturo J. González and Neel Chatterjee have concurred in this filing.

| | |
|---|---|
| Dated:  September 20, 2017 | */s/ Charles K. Verhoeven*<br>Charles K. Verhoeven |