QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                Plaintiff,<br><br>        vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>                Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS PROPOSED JURY INSTRUCTIONS** |

1    Plaintiff Waymo LLC ("Waymo") submits this memorandum of law in support of its proposed

2    jury instructions.

3    **I.    INTRODUCTION**

4    Despite the large number of disputed instructions, the parties' disputes are generally limited to

5    several critical disputes that run across many of the instructions.  *First*, and most critically, Defendants

6    Uber, Ottomotto, and Otto Trucking have taken the position that the jury should not be instructed with

7    respect to Waymo's Federal Defend Trade Secrets Act ("DTSA") claims.  Defendants' contention is

8    unsupported by the law and would amount to a grant of summary judgment on an independent claim.

9    *Second*, Uber and Ottomotto have objected to the inclusion of any vicarious liability instructions, and

10   Otto Trucking has limited its vicarious liability instructions only to misconduct by Anthony

11   Levandowski.  Waymo has consistently alleged that all of the Defendants are vicariously liable for

12   Mr. Levandowski's actions, and that each of the Defendants engaged in misappropriation via agents in

13   addition to Mr. Levandowski.  Failing to instruct the jury on these theories would be improper.

14   **II.   ARGUMENT**

15          **A.    Coexisting DTSA and CUTSA Claims**

16                  **1.    The Court Should Instruct the Jury on Waymo's DTSA and CUTSA**
                            **Trade Secret  Misappropriation Claims (Disputed Instructions No. 11-**
17                          **25, 27-31, and 45-51)**

18   In its First Amended Complaint, Waymo asserts claims for trade secret misappropriation under

19   both the Federal Defend Trade Secrets Act (**"DTSA"**) and the California Uniform Trade Secrets Act

20   ("CUTSA").  (*See*  Dkt. 23 at ¶¶ 66-88.)  Citing no authority to support their position, Defendants

21   nonetheless argue that the Court should only instruct the jury on Waymo's CUTSA claim.  Defendants

22   are wrong.

23          The Court should instruct the jury on both Waymo's DTSA and CUTSA claims because:

24   (1) Defendants' objections are an improper attempt to bring an untimely and unauthorized motion to

25   dismiss or motion for summary judgment; (2) courts permit plaintiffs to assert trade secret

26   misappropriation claims under both the DTSA and state trade secret laws in the same case; and

27   (3) because there are substantive distinctions between the DTSA and CUTSA, Waymo must be

28   permitted to assert both of its claims before the jury.

## 2.    Defendants' Objections to Waymo's DTSA Instructions Constitute an Improper, Untimely and Unauthorized Attempt to Bring a Dispositive Motion

If Defendants believe that, as a matter of law, Waymo is not entitled to assert trade secret misappropriation claims under both the DTSA and CUTSA, Defendants should have sought leave to file a motion to dismiss or motion for summary judgment as required by the Court's Case Management Order.  (*See* Dkt. 563 at ¶ 9.)  Defendants never did so.  Defendants should not be permitted to bring such an untimely motion now under the guise of jury instruction objections.  The Court, therefore, should overrule Defendants' objections to Waymo's DTSA jury instructions on that ground alone.

## 3.    Courts Permit Plaintiffs to Assert Trade Secret Misappropriation Claims Under the DTSA and State Law

During the parties' meet and confer, Defendants did not cite to a single decision in which a court held that a plaintiff is not entitled to assert trade secret misappropriation under both the DTSA and state law in the same case.  To the contrary, courts do let plaintiffs assert those claims together in the same case.

As the Court is aware, the DTSA is the first federal law to create a private right of action for the misappropriation of trade secrets.   The DTSA was formally enacted on May 11, 2016.  *See* Defend Trade Secrets Act of 2016, Pub. L. No. 114–153, § 2, 130 Stat. 376 (2016) (codified as amended at 18 U.S.C. § 1831 *et seq.*).  According to Congress, "[t]he [DTSA]'s definition of misappropriation is modeled on the [Uniform Trade Secrets Act ("UTSA")], versions of which have been adopted by 48 states."  H.R. REP. 114-529 House Report No. 114-529, at 5, DEFEND TRADE SECRETS ACT OF 2016, April 26, 2016.  Congress went out of its way to make clear that the DTSA ***does not preempt*** state trade secret laws.  *Id*. Rather, the DTSA merely provides "a complementary Federal remedy if the jurisdictional threshold for Federal jurisdiction is satisfied."  *Id*. The reason for creating such federal jurisdiction is that the states' trade secrets laws "contain built-in limitations that make them not wholly effective in a national and global economy."  *Id*. at 4.

Federal Courts, including the Northern District of California, allow federal trade secret claims under the DTSA to be asserted alongside state law trade secret claims in the same case.  *See*, *e.g.*,

*Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (granting plaintiff's application for TRO where plaintiff claimed violations of both the DTSA and the CUTSA) (Tigar, J.); *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920 (N.D. Ill. 2016) (denying defendants' motions to dismiss plaintiff's parallel claims under the DTSA and Illinois state trade secret law on basis of adequate pleadings under both causes of action); *Agilysys, Inc. v. Hall*, No. 1:16-CV-3557-ELR, 2017 WL 2903364, at *8 (N.D. Ga. May 25, 2017) (denying defendant's motion to dismiss trade secret claims pursuant to both the DTSA and the Georgia Trade Secrets Act where plaintiff stated plausible claims under each cause of action); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. 15CV211LGSRLE, 2016 WL 5338550, at *6 (S.D.N.Y. 2016) (allowing addition of DTSA claim to plaintiff's preexisting trade secret misappropriation claim under New York State law).   Indeed, in the only case that has been tried to date under the DTSA, the jury was instructed and reached a verdict on plaintiffs' DTSA and Pennsylvania state law trade secret misappropriation claims. *See Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc.*, No. CV 16-2767 (E.D. Pa. 2017) (Dkt. 321, Order Entering Judgment on the Verdict).

       Under these authorities, Waymo is entitled to assert both its DTSA and CUTSA claims at trial and, therefore, the jury should be instructed on both claims.

### 4.   The Jury Must Be Instructed on Both the DTSA and CUTSA Claims Because There Are Substantive Differences Between the Two Statutes

       The jury should be instructed on both Waymo's DTSA and CUTSA claims for the additional reason that there are important substantive differences between trade secret misappropriation claims brought under the DTSA and CUTSA.  One such important difference is in the remedies available under the DTSA and the CUTSA.[1]  Specifically, the DTSA expressly permits a plaintiff to recover actual damages or reasonable royalty damages; whereas, under CUTSA, a plaintiff may only recover reasonable royalty damages if "neither damages nor unjust enrichment caused by misappropriation are provable."  Cal. Civ. Code § 3426.3(b).

---

[1]  As another example, unlike under the CUTSA, a plaintiff asserting a claim under the DTSA must prove that its asserted trade secrets are "related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).

The DTSA expressly permits a plaintiff to seek recovery of actual damages, unjust enrichment or reasonable royalty damages:

> **(b) Private Civil Actions.—**
> **(3) Remedies.—**In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may—
> **(B)** award—
> **(i)**
> **(I)** damages for actual loss caused by the misappropriation of the trade secret; and
> **(II)** damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or
> **(ii)** in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret . . .

18 U.S.C. § 1836(b)(3).  In contrast, CUTSA only permits a plaintiff to recover reasonable royalty damages if neither actual damages or unjust enrichment damages are provable:

> (a) A complainant may recover damages for the actual loss caused by misappropriation.   A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.
> (b) If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

Cal. Civ. Code § 3426.3; *Ajax, Inc. v. E*Trade Financial Corp.,* 187 Cal. App. 4th 1295, 1310 (2010) (finding CUTSA only permits a plaintiff to recover reasonable royalty damages "where the defendant has made no actual profits and the plaintiff is unable to prove a specific loss").  Accordingly, under the CUTSA, reasonable royalties are available only if actual damages or unjust enrichment "could not be proved." *See Atlantic Inertial Systems, Inc. v. Condor Pacific Industries*, 2015 WL 3825318, at *4 (C.D. Cal. 2015).

Because the remedy provisions in the DTSA are broader than those in the CUTSA, Defendants' proposal—that the Court only instruct the jury on Waymo's CUTSA claim—would improperly deprive Waymo of the ability to pursue all of its available remedies.  The Court, therefore, should reject Defendants' position and instruct the jury under both the DTSA and CUTSA.

### B.      Vicarious Liability

Defendants object to Waymo's Proposed Instructions that refer to agency theories of liability. (Proposed Instructions No. 6, 8, 19, 32, 35, 38, 39)  However, as Waymo has repeatedly demonstrated in its pleadings, Uber, Ottomotto, and Otto Trucking misappropriated trade secrets from Waymo via Anthony Levandowski. (Dkt. Nos. 783, 784, 894, 1603).

Waymo further contends that the firms acting as agents for Uber (Morrison Foerster, Stroz Friedberg, and O'Melveny and Myers) committed misappropriation by acquisition as they knew or had reason to know that Levandowski, Ottomotto, and Otto Trucking used improper means to acquire proprietary, trade secret information, as well as other proprietary documents describing Waymo's confidential trade secrets.  *See* Declaration of Gary Brown ("Brown Decl."); Deposition Transcript of Anthony Levandowski ("Levandowski Dep.") at 20:9-24, 100:9-101:15, 115:3-16; Dkt. No. 883 at ¶¶ 6-7.).

Defendants' objections to inclusion of agency liability in the jury instructions are tantamount to an improper, untimely dispositive motion.  Disposition of an entire cause of action should be sought pursuant to Rule 12 or Rule 56 of the Federal Rules of Civil Procedure, and not left to the jury instruction stage of pretrial.  Moreover, questions of fact with regard to agency liability as between these Defendants should be left to the trier of fact where, as here, facts are in dispute.

In short, the Court should overrule Defendants' objections to Proposed Instructions that include agency theories of liability.

### 1.      Anthony Levandowski Was Ottomotto's/Otto Trucking's Agent, and Ottomotto/Otto Trucking Were Levandowski's Agent in Transmitting Confidential Trade Secrets to Uber

A principal is liable to third parties for the frauds or other wrongful acts committed by its agent in and as a part of the transaction of the business of the agency.  *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1171–1172 (2016).  Agency is the relation that results from the act of the principal, who authorizes the agent, to conduct one or more transactions with a third party or parties in effecting the purpose of the principal.  *L. Byron Culver & Associates v. Jaoudi Industrial & Trading Corp*, 1 Cal. App. 4th 300, 304 (1991).  Applying vicarious responsibility, Anthony Levandowski was Ottomotto's and Otto Trucking's agent, and Ottomotto and Otto Trucking

1   were Levandowski's agent in transmitting confidential trade secrets that Levandowski stole from

2   Waymo.  Likewise, bad actions by Levandowski, Ottomotto, and Otto Trucking in retaining and

3   transmitting confidential, proprietary trade secret information are imputed to Uber via agency theory,

4   as each was an agent of Uber as of the time they were acquired, and Uber knew or should have known

5   that its agent or agents were misappropriating trade secrets from Waymo.  *See Droeger v. Welsh*

6   *Sporting Goods Corp.*, 541 F.2d 790, 792 (9th Cir. 1976).

7           Simply put, an employee has a duty not to use or disclose trade secrets the employee acquired

8   during the course of his employment. *Blackbird Tecnhologies, Inc. v. Joshi*, No. 5:15-CV-04272-EJD,

9   2015 WL 5818067, at *1 (N.D. Cal. Oct. 6, 2015), *appeal dismissed* (Nov. 23, 2015).  In breach of

10  those duties, Levandowski and other former Waymo employees, on behalf of Uber and in

11  coordination with other Uber employees, used stolen files to design and build LiDAR designs and

12  systems that include information contained in and derived from Waymo's trade secrets. *See*

13  Levandowski Dep. at 20:9-24, 100:9-101:15, 115:3-16; *see also* Uber's Response to Court Ordered

14  Interrogatory No. 1, Dkt. No. 265-1.

15          Moreover, there is no disputing that Levandowski acted as the principal of Ottomotto and Otto

16  Trucking, and benefitted from their sale to Defendants, and thus the acts of misappropriation taken by

17  those entities are imputed to him.  *See* Levandowski Dep. at 20:9-24, 100:9-101:15, 115:3-16; *see also*

18  Uber's Response to Court Ordered Interrogatory No. 1, Dkt. No. 265-1. Likewise, Levandowski's

19  actions and acts of misappropriation engaged in as principal for Ottomotto and Otto Trucking are

20  imputed to those entities, because they benefitted from Mr. Levandowski's malfeasance.  Finally,

21  because Mr. Levandowski acted on behalf of Uber and in coordination with other Uber employees,

22  Uber is liable because Levandowski acted within the scope of his agency in misappropriating

23  Waymo's trade secrets on behalf of Uber.

24          As the evidence will show, Uber was both the intended and actual beneficiary of

25  Levandowski's, Ottomotto's and Otto Trucking's misappropriation; thus, Uber must bear equal

26  responsibility for their misappropriation.  Respondeat superior ensures that the victim's losses will be

27  equitably borne by those who benefit from the enterprise that gave rise to the injury. *Mary M. v. City*

28  *of Los Angeles*, 54 Cal. 3d 202, 209 (1991).  In addition, by acquiring Ottomotto and hiring

Levandowski despite knowledge of the misappropriation, Uber ratified those acts and is responsible for their consequences.  Ratification is the voluntary election by an entity to adopt in some manner as its own an act which was purportedly done on its behalf by a person or other entity, the effect of which, is to treat the act as if originally authorized.  *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972).

Therefore, all Defendants' objections to Waymo's proposed agency theory jury instructions should be overruled as to liabilities imputed as between Ottomotto, Otto Trucking, Uber and Levandowski.

### 2. MoFo's, Stroz's, and O'Melveny's Actions of Obtaining and Viewing Stolen Files and Documents Are Imputable to Defendants

A principal is liable to third parties for wrongful acts committed by its agent in and as a part of the transaction of the business of the agency.  *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1171−1172 (2016).

As outlined in prior submissions, there is compelling evidence that both MoFo and Stroz acquired the 14,000 files that Anthony Levandowski stole from Waymo, in their capacity as agents for Defendants.  (*See, e.g.,* Dkt. No. 894; Dkt. No. 566 at 2-3.)  Similarly, O'Melveny and Myers in its representation of Otto Trucking, knew or should have known that Otto Trucking used improper means to acquire proprietary information, as well as other proprietary documents describing Waymo's confidential trade secrets.  Indeed, MoFo's response to the Court's Order to Show Cause expressly admits that MoFo received a copy of proprietary materials from Stroz. (Dkt. No. 883 at ¶¶ 6-7.) MoFo's very involvement in the diligence performed by Stroz, and its acquisition of materials related to that diligence (Dkt. No. 715 at 2-3; Dkt. No. 885 at 2) is direct evidence that either stolen materials or descriptions of those materials are or were in MoFo's possession. (*See* Dkt. No. 894.)

As set forth in Waymo's Response to Interrogatories, the head of Defendants' self-driving car program, Anthony Levandowski took from Waymo over 14,000 design files containing Waymo's proprietary information, as well as other proprietary documents describing Waymo's confidential trade secrets. *See* Declaration of Gary Brown ("Brown Decl."); Deposition Transcript of Anthony Levandowski ("Levandowski Dep.") at 20:9-24, 100:9-101:15, 115:3-16. The stolen files describe and

contain certain of Waymo's asserted trade secrets including Trade Secret Nos. 1-8, 14-17, 19, 20, 38, 39, 42, 43, 46, 48, 49, 62, 63, and 75-109 from Waymo's List of Asserted Trade Secrets. *See* Dkt. No. 25-7.

Here, there can be no dispute that Stroz, MoFo and O'Melveny were acting within the scope of their agency (as agents for Defendants) when they obtained and viewed the files that Levandowski stole from Waymo.  Indeed, viewing these files was a central purpose of the "Due Diligence" process for which Stroz and MoFo were specifically retained, and the process by which O'Melveny and Myers acted on behalf of Otto Trucking. There also is an overwhelming inference that Defendants knew these files contained Waymo's trade secrets.  As Magistrate Judge Corley has explained, Stroz was specifically retained to investigate Levandowski's "Bad Acts," including "misappropriation of Waymo's . . . trade secrets." (Dkt. No. 566 at 2-3.)

As this Court has explained, "[t]he bottom line is the evidence indicates that Uber hired Levandowski even though it knew or should have known that he possessed over 14,000 confidential Waymo files likely containing Waymo's intellectual property . . . . and that at least some of said information likely qualifies for trade secret protection." (PI Order at 17:24-18:1.) Therefore, Defendants authorized Stroz, MoFo, and O'Melveny — as Defendants' agents — to commit the tort of trade secret misappropriation by acquiring Waymo's trade secrets embodied in the stolen files.

Therefore, Defendants' objections to agency theory jury instructions should be overruled as to liabilities imputed between these entities.

### C.   Specific Instructions

#### 1.   Disputed Instruction No. 1 Re. CLAIMS AND DEFENSES

The parties' dispute here centers on the inclusion of mention that Waymo has brought claims under both California and Federal law and the impact those separate claims will have on the requirements for and recovery of damages.  Specifically, requiring proof of unjust enrichment conflicts with the remedies portion of the DTSA, and omission of the availability of a reasonable royalty is similarly out of line with the statute.  Waymo expects, however, that resolution of this dispute will flow from the Court's determination of Defendants' efforts to exclude Waymo's DTSA cause of action.

Moreover, Waymo believes it important to inform the jury at this point that Waymo is the owner of information relating to its self-driving car technology, including its custom LiDAR systems that are used to enable the operation of fully self-driving vehicles.  Waymo's description of the general technology at issue should not be controversial and would aid the jury's understanding of the following instructions.

## 2.    Disputed Instruction No. 2 Re. NUMBER OF WITNESSES

Defendants have disagreed with this instruction as unnecessary, but have provided no substantive reason for its exclusion.  As this Court instructed in *Oracle v. Google*, such an instruction is entirely proper.  Case No. 3:10-cv-03561-WHA, Document 1928 at ¶¶ 5, 6 (*Oracle v. Google* Final Instructions).  *See also* MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT §1.14.

## 3.    Disputed Instruction No. 3 Re. FAILURE TO EXPLAIN OR DENY EVIDENCE

Defendants have disagreed with this instruction as unnecessary, but have provided no substantive reason for its exclusion.  As this Court instructed in *Oracle v. Google*, such an instruction is entirely proper.  Case No 3:10-cv-03561-WHA Document 1928 at ¶ 9 (*Oracle v. Google* Final Instructions).

## 4.    Disputed Instruction No. 4 Re. COMPLIANCE WITH DISCOVERY ORDERS

Waymo's proposed instruction here is taken from its briefing on its Motion for and Order to Show Cause (Dkt. No 1502).  The Court ordered Defendants to respond to Waymo's motion (Dkt. No. 1515) and Defendants objected to Waymo's proposed instruction on September 15, 2017 (Dkt. No. 1586).  Waymo incorporates its prior arguments by reference and expects this instruction to be resolved in connection with that motion practice.

## 5.    Disputed Instruction No. 5 Re. ADVERSE INFERENCES

Waymo's proposed instruction modifies the Court's ruling after the July 26, 2017 hearing.  *See* Dkt. 1535 (modified) ("As the undersigned judge explained during a hearing on July 26 (*see* Dkt. No. 1050 at 99:1–13), the jury will be instructed, if the Fifth Amendment is invoked, that it may, but is not required to, draw inferences adverse to *Levandowski* based on his assertion of his Fifth Amendment

privilege. If any such adverse inference is drawn against Levandowski, then it will remain up to the jury to decide, as a separate question and based on all the other evidence in the case, whether the fact inferred is also adverse to one or more parties herein."). Waymo disagrees with the specification of additional evidence and questions that the jury must consider and decide. Neither party has proposed instructions that would poll the jury as to this inquiry, and creating such a separate question would only create confusion. As there is no dispute that the jury may expand its adverse inference to encompass more than just Mr. Levandowski, Waymo submits that the more general instruction is appropriate.

Waymo additionally objects to Defendants' instruction as incorporating elements unsupported by this Court's order. No characterization of why Mr. Levandowski invoked the Fifth Amendment is necessary, nor is any characterization about what topics he refused to testify about. Finally, Defendants' instruction fails to recognize the Court's clear ruling that any adverse inference may also be applied against one or more parties.

## 6. Disputed Instruction No. 6 Re. CORPORATE LIABILITY

Waymo's proposed instruction comes directly from Ninth Circuit's Model Instructions, as adopted by this Court in the *Oracle v. Google* matter. *See* MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT §4.2; Case No. 3:10-cv-03561-WHA, Document 1928 at ¶ 15 (*Oracle v. Google* Final Instructions).

Defendants dispute this instruction, but have provided no explanation other than their belief that it is unnecessary. Given the nature of the dispute, and the form of all parties, it is critical that the jury understand the way in which corporate entities take action. Moreover, Mr. Levandowski's role within each of the Defendants, as well as evidence the jury will hear about principals at Uber necessitates an instruction that such corporate entities only act through their employees, agents, directors, or officers.

## 7. Disputed Instruction No. 7 Re. TWO OR MORE PARTIES— DIFFERENT LEGAL RIGHTS

The parties' disagreement here focuses only on how the Defendants will be described to the jury. Given Mr. Levandowski's likely role at trial, and reference to him throughout these instructions,

Waymo believes it necessary to provide additional context surrounding Mr. Levandowski's role at the various companies.  Defendants have expressed no issue objection that Waymo's characterization is incorrect in any way, only that it is unnecessary.

In addition, Waymo objects to the statement that "Uber did not acquire Otto Trucking."  While Waymo understands this to be factually accurate as of the date of this filing, it ignores the option that Uber has to purchase Otto Trucking and the interrelationship between the two.  Rather than include such additional information that would be needed to provide a complete picture to the jury, but which would also potentially be confusing, Waymo submits that the more appropriate course is to remain silent on this relationship.

## 8.   Disputed Instruction No. 8 Re. INTRODUCTION TO VICARIOUS RESPONSIBILITY

Waymo and Otto Trucking have agreed as to the inclusion of this instruction while Uber has objected.  As set forth above, Waymo has alleged that all three Defendants are vicariously liable for their respective agents.  Instructing the jury on this critical point, and correct statement of the law, is necessary for Waymo to fairly proceed on its claims.

## 9.   Disputed Instruction No. 9 Re. PARTY HAVING POWER TO PRODUCE BETTER EVIDENCE

Waymo's proposed instruction comes directly from CACI 203 and should be an uncontroversial instruction.  Defendants have offered no explanation other than disagreement as to the necessity of the instruction.

Contrary to Defendants' undeveloped claim during the meet and confer process, the ability of each party to provide evidence, as measured against what evidence was actually provided, is likely to be a central issue of the trial.

## 10.   Disputed Instruction No. 10 Re. OUTLINE OF TRIAL

The parties have agreed to withdraw this proposed instruction at this stage.

### 11.   Disputed Instruction No. 11 Re. MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION

The parties' disagree on two primary issues.  *First*, as discussed above, the parties disagree as to the inclusion of instructions regarding Waymo's Federal DTSA claims.  This impacts not only the actual statement of Waymo's claims, but also the statements in Defendants' instructions regarding unjust enrichment.  Because Waymo can recover reasonable royalty damages under DTSA, inclusion of a statement here regarding only unjust enrichment, as Defendants propose, would only confuse the jury and would present an incorrect statement of law to the extent it suggests that unjust enrichment is a required element of each of Waymo's trade secret misappropriation claims.

*Second*, the parties disagree as to how the instructions should refer to Waymo's trade secrets.  Waymo proposes the more general characterization "information relating to its self-driving technology, including custom LiDAR systems that are used to enable the operation of fully self-driving vehicles," with "trade secrets" or "information" as a shorthand.  Defendants' proposal of Alleged Trade Secrets is not found in the model instructions and unfairly prejudices Waymo.

### 12.   Disputed Instruction No. 12 Re. MISAPPROPRIATION OF TRADE SECRETS—ESSENTIAL FACTUAL ELEMENTS – CALIFORNIA LAW

As with Disputed Instruction No. 11, the parties' dispute flows from Defendants' claims of preemption of the DTSA by the CUTSA.  Both parties have proposed instructions stemming from CACI 4401, but Waymo submits that the inclusion of elements 4 and 5, relating to unjust enrichment are more appropriately addressed in the context of damages.

Second, Waymo objects to the use of "Alleged Trade Secrets" in the place of "trade secrets" or "information" as set forth *infra*.

Third, to the extent that the Court would prefer to address elements 4 and 5 in this instruction, Defendants' proposed instruction should be revised to reflect reasonable royalty damages, as well as unjust enrichment, consistent with the "harm" language of CACI 4401 and should be revised to include acquisition or use in element 5.

### 13.   Disputed Instruction No. 13 Re. "TRADE SECRET" DEFINED – CALIFORNIA LAW

The parties here only dispute the inclusion of the language "Under California law" and the description of Waymo's information as "Alleged Trade Secrets."

The phrase "Under California law" is necessary to differentiate these instructions from those relating to the DTSA.  As discussed above, using the phrase "Alleged Trade Secrets" to refer to Waymo's trade secrets unfairly prejudices Waymo.

### 14.   Disputed Instruction No. 14 Re. GENERALIZED KNOWLEDGE

Defendants' proposed instructions that "[g]eneralized knowledge and skill that an employee learned on the job is not a trade secret" and "[m]atters of general knowledge in a trade or special knowledge of persons who are skilled in a trade are also not trade secrets" do not fit the facts of this case and are unnecessary and confusing.  While Defendants may endeavor to prove that Waymo's trade secrets are not actually trade secrets, the allegations central to this case are focused on the deliberate theft and misappropriation of Waymo's trade secrets by Levandowski.  Defendants' proposed instruction inappropriately implies that the jury could ignore that theft in in light of what Levandowski learned as a Waymo employee.  This proposed instruction would give undue weight to what is already at best a specious argument in light of the facts of this case and would unduly prejudice Waymo.

### 15.   Disputed Instruction No. 15 Re. SECRECY REQUIREMENT – CALIFORNIA LAW

The parties have stipulated as to this instruction.

### 16.   Disputed Instruction No. 16 Re. "INDEPENDENT ECONOMIC VALUE" EXPLAINED – CALIFORNIA LAW

The parties have stipulated as to this instruction.

### 17.   Disputed Instruction No. 17 Re. REASONABLE EFFORTS TO PROTECT SECRECY – CALIFORNIA LAW

The parties have stipulated as to this instruction.

### 18.   Disputed Instruction No. 18 Re. DECLARING TRADE SECRETS

Defendants' proposed instruction is not part of the CACI model instructions and is not justified by the cases Defendants cited.  In *Louisiana Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, the Court

-13-

evaluated a very unusual and specific set of facts, and defined trade secret as: "(1) derived from  independent economic value from not being generally known to the public, and (2) is the subject of efforts to maintain its secrecy," which essentially tracks state statutory definitions.  *See* 18 U.S.C. § 1839(3); Cal. Civ.Code § 3426.1(d). *Louisiana Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, No. C-12-3433 SC, 2013 WL 3483618, at *2 (N.D. Cal. July 8, 2013).  The particularized facts of *Louisiana Pac.*, involving a particular "inadvertent advertising campaign" and the results of that campaign as trade secrets is simply too narrow and idiosyncratic to be useful, and there is sufficient definition of trade secret similarly distilled from statutory language throughout the instructions already.

Defendants further cite to *EarthCam, Inc. v. Oxblue Corp.*, in support of this instruction, but this case just verbatim quotes the Georgia Trade Secrets Act, which itself simply codified the UTSA. Ga. Code Ann. § 10-1-761 (West 2017); *EarthCam, Inc. v. Oxblue Corp.*, No. 15-11893, 2017 WL 3188453, at *8 (11th Cir. July 27, 2017). Similarly, Defendants cite to *Pollara v. Radiant Logistics Inc.* in support of this instruction, but that California case discusses client lists, which are not germane to the facts of this matter, and the case's trade secret definition merely tracks the definition of trade secret from the CUTSA.  *Pollara v. Radiant Logistics Inc.*, No. CV 12-344 GAF (JEMX), 2014 WL 12585781, at *1 (C.D. Cal. June 6, 2014) (citing *Thompson v. Impaxx*, 113 Cal. App. 4th 1425, 1430 (2003)).  Defendants also cite to *PSC Indus. Outsourcing, LP v. Kodysz*, which similarly tracks the CUTSA identically in language defining a trade secret, and also concerned client lists. *PSC Indus. Outsourcing, LP v. Kodysz*, No. 1:13-CV-0964, 2013 WL 3354452, at *3 (E.D. Cal. July 3, 2013). *PSC Indus. Outsourcing* also concludes that  "what is or is not a 'trade secret' is question of fact, not merely a matter of labeling", but does not offer any clear guide post as to how to evaluate that "question of fact."  Finally, Defendants' citation to *Hertz v. Luzenac Am.* is unavailing, as the only distinction the case adds is that "merely refraining from publishing the purported secret is not enough" to constitute a trade secret. *Hertz v. Luzenac Am., Inc.*, No. CIV. 04CV01961LTBCBS, 2006 WL 1794736, at *2 (D. Colo. June 27, 2006).  Accordingly, this instruction is unnecessary and should not be given.

### 19.     Disputed Instruction 19. Re. MISAPPROPRIATION BY ACQUISITION – CALIFORNIA LAW

The parties here only dispute the inclusion of the language "Under California law" and the description of Waymo's information as "Alleged Trade Secrets."

The phrase "Under California law" is necessary to differentiate these instructions from those relating to the DTSA.  As discussed above, using the phrase "Alleged Trade Secrets" to refer to Waymo's trade secrets unfairly prejudices Waymo.

### 20.     Disputed Instruction No. 20 Re. PASSIVE OR INADVERTENT RECEIPT

Waymo disagrees with the inclusion of this instruction as it is unnecessary and improper in light of the clear definitions of misappropriation as set forth in the model instructions and statute.  While Defendants may argue that possession of the stolen materials does not satisfy the statutory acquisition, use, or disclosure elements of trade secret misappropriation, an affirmative instruction as to one possible fact pattern that would not meet the statute is prejudicial.  The issue here is that by including a set facts as definitively not misappropriation, without standards or rule language that can be used to consider or weigh the evidence or the facts of this case.

Defendants cite *Silvaco Data Sys. v. Intel Corp* for the premise that "one who passively receives a trade secret, but neither discloses nor uses it, would not be guilty of misappropriation." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 222 (2010), *as modified on denial of reh'g* (May 27, 2010) *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011).  The basis of this definition in this case stems from the Oxford English Distinction's definition of acquiring a thing, which according to the dictionary requires "exertion to secure dominion." *Silvaco Data Sys.*, 184 Cal. App. 4th at 222, *citing* 1 Oxford English Dict. at 115 (2d ed. 1989).  A jury should be spared rule language based on semiotic interpretation of the word "acquire," and instead, work with a definition which is based on more practical distinctions.

Because this instruction relies upon an unnecessarily vague dictionary definition, and is unnecessary and improper in light of the clear definitions of misappropriation as set forth in the model instructions and statute, it should not be given.

1

2

### 21.     Disputed Instruction No. 21. Re. MISAPPROPRIATION BY USE – CALIFORNIA LAW

The parties dispute Otto Trucking should be included in this instruction.  Notwithstanding Otto Trucking's claims to the contrary, Waymo has alleged and continues to allege trade secret misappropriation by use against Otto Trucking.  At a minimum, Otto Trucking is vicariously liable for Anthony Levandowski's use of Waymo's trade secrets, as described above.  Including an instruction that excludes Otto Trucking with respect to use would be legally incorrect as to Waymo's theories and highly confusing for the jury.  Moreover, given Levandowski's status as Otto Trucking's managing member, it is virtually impossible to separate his actions in this area from those of Otto Trucking.

Moreover, Defendants' instruction inappropriately limits the universe of third parties involved in the misappropriation to Mr. Levandowski.

### 22.     Disputed Instruction No. 22. Re. DIFFERING PRODUCTS

Defendants do not dispute that Waymo's instruction is a correct statement of law, they merely contend that no such instruction is necessary.  Defendants are wrong.  This instruction is necessary because Defendants repeatedly wrongly claim that, because their products differ in some respects from Waymo's trade secrets, Waymo cannot show trade secret misappropriation.  *See* Dkt. 330-3 at 3-4.  Waymo has every expectation that Defendants will continue this line of attack throughout trial and the jury must understand that "use" encompasses more than using an exact copy of Waymo's trade secret information.

Waymo cites instructive case law on the necessity of instructing on similar products, as the law is clear that "finding misappropriation by use even though technology used in the offending new products was different" is appropriate where technical and functional aspects remain the same.  *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 2015 WL 13357646 (C.D. Cal. May 6, 2015).  Moreover, *PMC, Inc. v. Kadisha* stands for the premise that employing the confidential information in manufacturing, production, research, development, or marketing goods that embody the trade secret, or soliciting customers through the use of trade secret information, all constitute misappropriation by use, and therefore, a product need not be exactly the same to misappropriate so long as the methods borrowed have been employed going forward. 78 Cal. App. 4th 1368 (2000).  In addition, in *Speech

*Tech. Assocs. v. Adaptive Commc'n Sys., Inc.*, the court found misappropriation even where the offending product had been redesigned, but retained many of the same functional aspects. *ISpeech Tech. Assocs. v. Adaptive Commc'n Sys., Inc.,* 1994 WL 449032 (N.D. Cal. Aug. 16, 1994). In *Verigy US, Inc. v. Mayder*, the court found that an obvious evolution of a product based on trade secrets may nevertheless be the product of trade secret misappropriation. *Verigy US, Inc. v. Mayder*, 2008 WL 564634 (N.D. Cal. Feb. 29, 2008).

This instruction should be included because Defendants persistently attempt to argue a differing end product or technology cannot be an infringing product, and the case law is clear that a modified end product can be infringing when it retains the same basic features as the original. Therefore, Defendants' objection to this claim should be overruled.

### 23.    Disputed Instruction No. 23. Re. INEVITABLE DISCLOSURE

Defendants' proposed instruction is inapplicable to the facts to be tried to the jury here and would only serve to confuse the jury.  As an initial matter, the language that "[i]t is not enough for Waymo to show that their employees would inevitably use the claimed trade secret in their work for Uber" inaccurately implies that no trade secret misappropriation would take place even were Waymo to prove that Levandowski stole Waymo's trade secret information and used it in connection with his work at Uber.  According to Defendants, if they can show that his work at Uber "inevitably" required the use of those trade secrets, that would operate as a defense to Waymo's claims.  That is not the law. Moreover, the language that "Waymo must show that Uber, Ottomotto, and Otto Trucking directly exploited Waymo's claimed trade secret for their own advantage" would add additional elements to a trade secret misappropriation claim that are not found in the statute.  While "exploitation" and "advantage" may have similar meaning to words actually set forth in the statute, their presence in the jury instructions creates a new and unsupported element of misappropriation.

Defendants cite *Whyte v. Schlage Lock Co*., 101 Cal. App. 4th 1443, 1458, 1463–64 (2002), for the premise that the inevitable disclosure doctrine is no longer valid law, but that does not mean that an instruction on that issue is necessary.  Waymo does not argue that Defendants have misappropriated its trade secrets because Levandowski  and other former Waymo employees would

inevitably use the trade secrets they learned in their work at Waymo in their work at Uber. Accordingly, such an instruction would only confuse the jury and should not be given.

### 24. Disputed Instruction No. 24 Re. MISAPPROPRIATION BY DISCLOSURE – CALIFORNIA LAW

Defendants have no basis to exclude this instruction from the jury.  Waymo has accurately adapted CACI 4406, and Waymo intends to put forth evidence at trial that the Defendants are liable for trade secret misappropriation by disclosure.

By way of example only, Ottomotto and Otto Trucking are both accused of disclosing Waymo's trade secrets to Uber by way of Levandowski's actions.  Each entity knew or had reason to know that Waymo's trade secrets were acquired improperly.  This alone supports instructing the jury on this portion of the statute.

### 25. Disputed Instruction No. 25 Re. IMPROPER MEANS OF ACQUIRING TRADE SECRET – CALIFORNIA LAW

The parties have stipulated as to this instruction.

### 26. Disputed Instruction No. 26. Re. CHANGING EMPLOYERS

Defendants' proposed instruction, which is not in any of the model jury instructions, is unnecessary and duplicative on its face.  Each of the DTSA and CUTSA defines those activities that give rise to liability for trade secret misappropriation.  At best, this instruction merely reminds the jury that a former employee may not misappropriate trade secrets.  But the far more likely scenario is that the jury will be confused as to what behavior is permissible and what is not.

Defendants' citation to *Whyte v. Schlage Lock Co.* in support of this premise is not accurate, as the focus of the *Whyte* case is on the question of inevitable disclosure, not whether people are free to change jobs, which is redundant and tautological.  Defendants also point to statutory support for this claim, but Cal. Bus. & Prof. Code Section 16600 talks specifically about restraint of trade, and does not elaborate as this instruction does. This instruction should be struck for vagueness as well.

### 27. Disputed Instruction No. 27 Re. MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION TO FEDERAL LAW

As set forth above, the parties disagree as to the appropriateness of separate instructions on Waymo's Federal and California law trade secret misappropriation claims.  Upon rejection of

Defendants' meritless position regarding preemption, Waymo respectfully submits that the jury be charged on both causes of action.

Defendants last minute addition of an instruction that relates only to element of interstate commerce, fails to remedy the issue.  Nor is there any support for porting a definition from the *Federal Employers' Liability Act* into the DTSA.  Interstate commerce is readily understood from the face of the statute.

### 28. Disputed Instruction No. 28 Re. TRADE SECRET DEFINED – FEDERAL LAW

As set forth above, the parties disagree as to the appropriateness of separate instructions on Waymo's Federal and California law trade secret misappropriation claims.  Upon rejection of Defendants' meritless position regarding preemption, Waymo respectfully submits that the jury be charged on both causes of action.

### 29. Disputed Instruction No. 29 Re. OWNERSHIP DEFINED – FEDERAL LAW

As set forth above, the parties disagree as to the appropriateness of separate instructions on Waymo's Federal and California law trade secret misappropriation claims.  Upon rejection of Defendants' meritless position regarding preemption, Waymo respectfully submits that the jury be charged on both causes of action.

### 30. Disputed Instruction No. 30 Re. MISAPPROPRIATION DEFINED – FEDERAL LAW

As set forth above, the parties disagree as to the appropriateness of separate instructions on Waymo's Federal and California law trade secret misappropriation claims.  Upon rejection of Defendants' meritless position regarding preemption, Waymo respectfully submits that the jury be charged on both causes of action.

### 31. Disputed Instruction No. 31 Re. IMPROPER MEANS DEFINED – FEDERAL LAW

As set forth above, the parties disagree as to the appropriateness of separate instructions on Waymo's Federal and California law trade secret misappropriation claims.  Upon rejection of Defendants' meritless position regarding preemption, Waymo respectfully submits that the jury be charged on both causes of action.

**32.     Disputed Instruction No. 32 Re. DUTY TO EMPLOYER**

Defendants dispute this instruction, but it is a straight-forward and equitable instruction based soundly in common law tradition. Simply put, an employee has a duty not to use or disclose trade secrets the employee acquired during the course of his employment.  For example, *Blackbird Technologies, Inc. v. Joshi,* established an employee's fiduciary duty to his employer and issued a preliminary injunction against the use of stolen technology where it was taken in a breach of that duty. *Blackbird Technologies, Inc. v. Joshi, No. 5:15-CV-04272-EJD, 2015 WL 5818067, at *4 (N.D. Cal. Oct. 6, 2015), appeal dismissed (Nov. 23, 2015).*  In light of this case law support and principles of equity, this instruction should be included.

**33.     Disputed Instruction No. 33 Re. COMBINATIONS AS TRADE SECRETS**

Defendants did not contend to Waymo that instruction 33 is an inaccurate statement of law; rather, Defendants' position is that this body of case law only applies to those trade secrets which are comprised entirely of public elements organized in a secret way.  This is an incorrect understanding of the law.  On their face, each of the cases cited by Waymo as support for this instruction involve both public and non-public information as part of a trade secret.  *See 02 Micro Int'l Ltd. v. Monolithic Power Sys.*, Inc., 399 F. Supp. 2d 1064, 1074 (N.D. Cal. 2005); *Leatt Corp. v. Innovative Safety Tech., LLC*, 2010 WL 1526382 at *6 (S.D. Cal. Apr. 15, 2010); *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1194 (S.D. Cal. 2012); *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016); *Verigy US, Inc. v. Mayder*, 2008 WL 564634 at *5-6 (N.D. Cal. Feb. 29, 2008).

Given that Defendants have argued that Waymo's trade secrets are not entitled to protection as a result of certain aspects allegedly being available to the public, this instruction is critical to protect Waymo's rights under both the DTSA and CUTSA.

**34.     Disputed Instruction No. 34 Re. WILLFUL AND MALICIOUS MISAPPROPRIATION OF TRADE SECRETS**

The parties' dispute here centers on the inclusion of mention that Waymo has brought claims under both California and Federal law and the impact those separate claims will have on the requirements for and recovery of damages.  Specifically, requiring proof of unjust enrichment conflicts with the remedies portion of the DTSA, and omission of the availability of a reasonable

royalty to be decided by the jury is similarly out of line with the statute.  Waymo expects, however, that resolution of this dispute will flow from the Court's determination of Defendants' efforts to exclude Waymo's DTSA cause of action.

### 35. Disputed Instruction No. 35 Re. TORT LIABILITY ASSERTED AGAINST PRINCIPAL—ESSENTIAL FACTUAL ELEMENTS

The parties dispute two aspects of this instruction.  *First*, Otto Trucking has limited its vicarious liability instructions only to misconduct by Anthony Levandowski.  *Second*, Uber and Ottomotto have objected to the inclusion of any vicarious liability instructions.  As set forth above, Waymo has consistently alleged that all of the Defendants are vicariously liable for Levandowski's actions, and that each of the Defendants engaged in misappropriation via agents other than Levandowski.  Failing to instruct the jury on these theories would be improper.

### 36. Disputed Instruction No. 36 Re. EXISTENCE OF "AGENCY" RELATIONSHIP DISPUTED

The parties dispute two aspects of this instruction.  *First*, Otto Trucking has limited its vicarious liability instructions only to misconduct by Anthony Levandowski.  *Second*, Uber and Ottomotto have objected to the inclusion of any vicarious liability instructions.  As set forth above, Waymo has consistently alleged that all of the Defendants are vicariously liable for Levandowski's actions, and that each of the Defendants engaged in misappropriation via agents other than Levandowski.  Failing to instruct the jury on these theories would be improper.

### 37. Disputed Instruction No. 37 Re. SCOPE OF EMPLOYMENT

Both Waymo and Uber object to the inclusion of this instruction.  In particular, Waymo submits that this instruction is duplicative of more general liability instructions, including instruction No. 8.  Inclusion of such an instruction only serves to unnecessarily lengthen the instructions at the risk of confusion to the jury.

Moreover, as set forth above, Otto Trucking's instruction proposes that an agent need only act within the scope of his ***employment***.  Such a description of Levandowski is inappropriately limited.  And, as set forth above, Waymo's vicarious liability theories include agents other than Mr. Levandowski.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**38.     Disputed Instruction No. 38 Re. DUTY TO INFORM**

Waymo's proposed instruction is drawn directly from the portions of the instruction approved in *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792 (9th Cir. 1976).  Where, as here, Defendants have attempted to turn a blind eye to, and bury, Mr. Levandowski's theft, an instruction informing the jury as to what knowledge may be imputed to a party by virtue of an agent is particularly critical.

**39.     Disputed Instruction 39 Re. RATIFICATION**

The parties dispute two aspects of this instruction.  *First*, Otto Trucking has limited its vicarious liability instructions only to misconduct by Anthony Levandowski.  *Second*, Uber and Ottomotto have objected to the inclusion of any vicarious liability instructions.  As set forth above, Waymo has consistently alleged that all of the Defendants are vicariously liable for Levandowski's actions, and that each of the Defendants engaged in misappropriation via agents other than Levandowski.  Failing to instruct the jury on these theories would be improper.

**40.     Disputed Instruction No. 40 Re. CAUSATION:  SUBSTANTIAL FACTOR**

This instruction should not be included as it will only confuse the jury, and is not sufficiently precise to be useful in determining whether a misappropriator's actions were a "substantial factor" in causing harm.  The test for a substantial factor in causation is that the link in causation must be based upon more than "conjecture and surmise."  *Simpson v. United States*, 224 F. Supp. 3d 180, 182 (D. Conn. 2016).  This would not be helpful to any jury, as the test is too vague.

**41.     Disputed Instruction No. 41 Re. BAD FAITH**

Defendants' instruction is inappropriate in the case at bar.  Defendants have not affirmatively pled bad faith, nor did they pursue counterclaims that would permit them to recover in this action. Instructing the jury on such a theory that could not survive post-trial motions or appeal would unfairly prejudice Waymo.

**42.     Stipulated Instruction No. 42 Re. AFFIRMATIVE DEFENSE— INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS**

The parties have stipulated as to this instruction.

### 43.   Disputed Instruction No. 43 Re. AFFIRMATIVE DEFENSE -- MITIGATION OF DAMAGES

Defendants' instruction is inappropriate in the case at bar.  Defendants have put forward no evidence that would support this theory and instructing the jury on this defense would only create confusion.

### 44.   Disputed Instruction No. 44 Re. OUTSIDE REVERSE VEIL PIERCING

As set forth in Waymo's opposition to Otto Trucking's Motion for Summary Judgment, Otto Trucking's insistence on relying on reverse-veil-piercing case law is wholly inapplicable to this case. (Dkt. No. 1526-3.)  The outside reverse veil-piercing doctrine applies "when a third party outsider seeks to reach corporate assets to satisfy claims against an individual shareholder."  *Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510, 1518 (2008); *see also id.* at 1523 ("the issue addressed by outside reverse piercing is the shareholder's transfer of personal assets to the corporation to shield the assets from collection by a creditor of the shareholder.  In other words, outside reverse piercing seeks to protect the judgment creditor from the shareholder's fraudulent transfer of assets to the corporation.").  Here, Waymo is not seeking to seize Otto Trucking assets to satisfy a judgment against Levandowski.  Instead, Waymo is simply holding Otto Trucking liable for Levandowski's misappropriation in the first instance, under the doctrines of vicarious liability and ratification. Accordingly, no instruction regarding outside reverse-veil-piercing should be given.

### 45.   Disputed Instruction No. 45 Re. DAMAGES UNDER CALIFORNIA AND FEDERAL LAW

As set forth above, Waymo has separate claims under the DTSA and CUTSA which afford Waymo separate remedies.  Waymo submits that Instruction No. 45 is necessary to clarify for the jury that they must answer all damages questions, but that Waymo will not recover duplicative damages.

### 46.   Disputed Instruction No. 46 Re. REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET

The substantive difference between the parties instructions relates to the inclusion of the following paragraph:  "If there was misappropriation but it did not cause Uber, Ottomotto, or Otto Trucking to be unjustly enriched, Waymo may still be entitled to a reasonable royalty for no longer

than the period of time the use could have been prohibited.  However, I will calculate the amount of any royalty."

As set forth above, this is an incorrect statement of law as it relates to Waymo's DTSA causes of action.  Under the DTSA, Waymo is entitled to select its remedy from *either* a reasonable royalty or unjust enrichment.  And Waymo is entitled to have the jury set that reasonable royalty.  Defendants do not dispute this other than to argue "preemption."

### 47.   Disputed Instruction No. 47 Re. UNJUST ENRICHMENT

Waymo disputes the inclusion of the language:  "Then subtract from that amount the defendants' reasonable expenses, including the value of their own research and development."  At no point have any of the Defendants offered any evidence or testimony that would support an accounting of reasonable expenses.  And none of Defendants' experts include such reasonable expenses in their damages calculation.  To instruct the jury on a theory wholly unsupported by Defendants' experts and evidence would invite error.

### 48.   Disputed Instruction No. 48 Re. REASONABLE ROYALTY – ENTITLEMENT

The parties' dispute appears to center over whether the Court or the jury determines the amount of the reasonable royalty.  As set forth above in connection with Waymo's response to Defendants' "preemption" arguments, the provision of a reasonable royalty as determined by the jury is a critical distinction between the DTSA and CUTSA.  The Seventh Amendment governs cases in federal court and provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII; *see* Fed. R. Civ. P. 38 ("The right of trial by jury as declared by the Seventh Amendment to the Constitution . . . is preserved inviolate.").  Unlike the CUTSA which reserves the determination of reasonable royalties for the Court by statute, there is a jury trial right for all remedies under the DTSA, including reasonable royalties. *See, e.g., VIA Technologies, Inc. v. ASUS Computer Int'l, et al.*, Case No. 14-cv-03586-BLF, 2017 WL 491172, at *2 (N.D. Cal. Feb. 7, 2017) (noting the "DTSA allows a jury to determine the monetary claims, where CUTSA reserves the determination of reasonable royalties for the judge").  In the only case that has been tried to date under the DTSA, the jury was instructed and

reached a verdict on plaintiffs' DTSA and Pennsylvania state law trade secret misappropriation claims. *See Dalmatia Imp. Grp., Inc. v. Foodmatch, Inc.*, No. CV 16-2767 (E.D. Pa. 2017) (Dkt. 321, Order Entering Judgment on the Verdict).

Notably, despite the language of the CUTSA, at least one federal court has found that "the Seventh Amendment to the Constitution guarantees [the plaintiff] the right to a jury determination of reasonable royalties under the CUTSA" where the case is pending in federal court pursuant to diversity jurisdiction. *De Lage Landen Operational Services, LLC v. Third Pillar Systems, LLC*, Case No. 09-2439, 2011 WL 1627899, at *3 (E.D. Pa. Apr., 28, 2011). And, even if the issue of reasonable royalty damages under CUTSA were not triable as of right to the jury, the court may submit the issue of reasonable royalty damages to the jury for an advisory verdict. *See* Fed. R. Civ. P. 39(c); *De Lage*, 2011 WL 1627899, at *3, n3.

### 49.     Disputed Instruction No. 49 Re. REASONABLE ROYALTY – DEFINITION

Waymo's proposed instructions on the definition of a reasonable royalty parallel those from the Model Patent Jury Instructions, and therefore, are straightforward and easy to calculate. This uncontroversial range of methods of calculating royalties is similar to the established history of calculating royalties frequently used in the Federal Circuit. *See*, e.g., *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314–15 (Fed. Cir. 2007). The idea of arriving at a standardized calculation of royalties should be desirable to both parties, as they question here is not whether to award a royalty, but rather, if one is to be awarded, how to do so.

### 50.     Disputed Instruction No. 50 Re. GEORGIA PACIFIC FACTORS

Just as discussed with regard to Instruction No. 49, the idea of arriving at a standardized calculation of royalties should be desirable to both parties, as they question here is not whether to award a royalty, but rather, if one is to be awarded, how to do so. Use of a reasonable royalty determination, or the *Georgia Pacific* factors both offer sufficient flexibility to calculate royalties, as the question here is not whether to award a royalty, but rather, if one is to be awarded, how to do so. Both Instruction Nos. 49 and 50 offer well-accepted methods of calculating a reasonable royalty.

*See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

### 51.   Disputed Instruction No. 51 Re. EXEMPLARY DAMAGES FOR WILLFUL AND MALICIOUS MISAPPROPRIATION

As set forth above, Waymo has separate claims under the DTSA and CUTSA which afford Waymo separate remedies.  To the extent Defendants contend that the  Court should award exemplary damages under the DTSA, that is clearly in error.  The "remedies" provision of the DTSA provides:

(3) In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may:

(B) award—

(i)(I) damages for actual loss caused by the mis- appropriation of the trade secret; and

(II) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or

(III) in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret. . . .

(C) if the trade secret is willfully and maliciously misappropriated, award exemplary damages in an amount not more than 2 times the amount of the damages awarded under subparagraph (B).  18 U.S.C. § 1836(b)(3)

The structure "a court may award" is identical for lost profits and unjust enrichment damages and for exemplary damages.  There should be no dispute that lost profits and unjust enrichment damages are for the jury, and there is no basis to draw a distinction for exemplary damages under the Defend Trade Secrets Act.

### 52.   Disputed Instruction No. 52 Re. DAMAGES FROM MULTIPLE DEFENDANTS

Defendants' contention that comparative fault should be apportioned among the Defendants is wholly unsupported by any evidence or expert testimony.  Instruction on this issue would only confuse the jury as to the damages to award to Waymo and lead to error.

53. **Disputed Instruction No. 53 Re. AFFIRMATIVE DEFENSE—UNCLEAN HANDS**

Waymo filed a Motion for Summary Judgment on Defendants' unclean hands affirmative defense. (Dkt. 1418.)  As set forth in Waymo's briefing and at argument, there are no factual issues in dispute and this defense should be resolved on summary judgment.  *See* Waymo's Reply (Dkt. 1630) to Defendant's Response (Dkt. 1525) to Waymo's Motion for Summary Judgment (Dkt. 1418.  Furthermore, as this Court observed at the September 20, 2017 Hearing on Waymo's motion, even if the Court does not dismiss the defense on summary judgment, the affirmative defense of unclean hands is an equitable remedy decided by the Judge.  (9/20/17 Tr. at 49.)  Thus, this instruction is unnecessary and should not be given.

DATED:  September 21, 2017                       QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Charles K. Verhoeven*
    Charles K. Verhoeven
    Attorneys for WAYMO LLC