Case 3:17-cv-00939-WHA    Document 1733    Filed 09/13/17    Page 1 of 25

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

_____

**WAYMO LLC,**
*Plaintiff-Appellee*

**v.**

**UBER TECHNOLOGIES, INC., OTTOMOTTO LLC, OTTO TRUCKING LLC,**
*Defendants*

**ANTHONY LEVANDOWSKI,**
*Intervenor-Appellant*

**STROZ FRIEDBERG, LLC, LYFT, INC., LIOR RON,**
*Movants*

_____

2017-2235, 2017-2253

_____

Appeals from the United States District Court for the Northern District of California in No. 3:17-cv-00939-WHA, Judge William H. Alsup.

_____

Decided: September 13, 2017

_____

CHARLES KRAMER VERHOEVEN, Quinn Emanuel Urquhart & Sullivan, LLP, San Francisco, CA, argued for plaintiff-appellee. Also represented by DAVID ANDREW PERLSON; DAVID MICHAEL COOPER, New York, NY.

2                              WAYMO LLC v. UBER TECHS., INC.

MILES EHRLICH, Ramsey & Ehrlich LLP, Berkeley, CA, argued for intervenor-appellant. Also represented by ISMAIL RAMSEY, AMY CRAIG.

————————————————

Before NEWMAN, WALLACH, and STOLL, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Appellant Anthony Levandowski, an intervenor, seeks to prevent discovery sought by Appellee Waymo LLC ("Waymo").[1] Waymo sued Uber Technologies, Inc. ("Uber"), Ottomotto LLC, and Otto Trucking LLC (together, "Ottomotto") in the U.S. District Court for the Northern District of California ("District Court") alleging, inter alia, claims of patent infringement and violations of federal and state trade secret laws. Specifically, Waymo alleges that its former employee, Mr. Levandowski, improperly downloaded thousands of documents related to Waymo's driverless vehicle technology and then left Waymo to found Ottomotto, which Uber subsequently acquired. Before the acquisition closed, counsel for Ottomotto and Uber (but not counsel for Mr. Levandowski) jointly retained Stroz Friedberg, LLC ("Stroz") to investigate Ottomotto employees previously employed by Waymo, including Mr. Levandowski. The resulting report ("the Stroz Report") is the subject of the discovery dispute at issue on this appeal.

During discovery, Waymo sought to obtain the Stroz Report using two separate mechanisms. First, Waymo filed a motion to compel Uber and Ottomotto to produce the Stroz Report. Appellant's App. 62. Magistrate Judge Jacqueline Scott Corley granted Waymo's Motion to

————————————————

[1] Waymo spun off from Google Inc.'s ("Google") self-driving car project in 2016. For ease of reference, we use "Waymo" when referring to either Google or Waymo.

WAYMO LLC v. UBER TECHS., INC.　　　　　　　3

Compel. *See Waymo LLC v. Uber Techs., Inc.* (*Waymo I*), No. 17-cv-00939-WHA (JSC), 2017 WL 2485382, at *1 (N.D. Cal. June 8, 2017). Second, Waymo subpoenaed Stroz to obtain the Stroz Report along with the communications, documents, and devices provided to Stroz. Appellant's App. 141–42. When Mr. Levandowski, Ottomotto, and Uber moved to quash the subpoena by arguing that the Stroz Report is subject to attorney-client privilege or attorney work-product protection, the Magistrate Judge denied the motion to quash. *See Waymo LLC v. Uber Techs., Inc.* (*Waymo II*), No. 17-cv-00939-WHA (JSC), 2017 WL 2676424, at *1, *7 (N.D. Cal. June 21, 2017). Mr. Levandowski, Ottomotto, and Uber then filed motions for relief from the Magistrate Judge's orders in *Waymo I* and *Waymo II*, which the District Court denied. *See Waymo LLC v. Uber Techs., Inc.* (*Waymo III*), No. C 17-00939 WHA, 2017 WL 2694191, at *1 (N.D. Cal. June 21, 2017) (denying relief from the Magistrate Judge's order in *Waymo I*); *Waymo LLC v. Uber Techs., Inc.* (*Waymo IV*), No. C 17-00939 WHA (N.D. Cal. June 27, 2017) (Appellant's App. 15–20) (denying relief from the Magistrate Judge's order in *Waymo II*).[2]

---

[2] The Magistrate Judge's and District Court's factual findings and analyses in *Waymo II* and *Waymo IV* do not differ substantively from their factual findings and analyses in *Waymo I* and *Waymo III*. *See* Appellant's App. 16 (stating that, "insofar as the instant motions merely repeat arguments" from *Waymo III*, "those arguments fail for the same reasons previously stated"); *Waymo II*, 2017 WL 2676424, at *1 ("Much of the parties' arguments are addressed in [*Waymo I*]."). For ease of reference, we thus refer to *Waymo I* and *Waymo III*, unless otherwise noted.

Mr. Levandowski appeals the District Court's denial of relief from the Magistrate Judge's orders. Because Mr. Levandowski has failed to satisfy his burden to demonstrate entitlement to a writ of mandamus, we dismiss.

JURISDICTION

Before addressing the merits of the appeal, we must satisfy ourselves of our jurisdiction to receive and decide this petition for mandamus. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). We have jurisdiction over "appeal[s] from . . . final decision[s] of . . . district court[s] of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1) (2012). In accordance with the final-judgment rule, "a party may not take an appeal [pursuant to § 1295(a)(1)] until there has been a decision by the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1308 (Fed. Cir. 2013) (en banc) (internal quotation marks and citation omitted).[3] We also have jurisdiction

---

[3]  The collateral order doctrine provides a narrow exception to the final-judgment rule and grants appellate courts jurisdiction over certain orders of district courts. *See Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1707, 1708 n.3 (2017). "To come within the 'small class' of decisions excepted from the final-judgment rule by [the collateral order doctrine], the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) (footnote and citations omitted); *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (discussing the "small class" of decisions "which finally determine claims

over three categories of interlocutory orders from district courts: (1) those involving injunctions, receiverships, or admiralty, 28 U.S.C. § 1292(a), (c)(1); (2) those certified for immediate appeal by the district court, *id.* § 1292(b), (c)(1); and (3) those involving patent infringement judgments that are final except for an accounting,[4] *id.* § 1292(c)(2).

Mr. Levandowski acknowledges that the District Court's orders in *Waymo III* and *Waymo IV* are not appealable final judgments pursuant to § 1295(a)(1). Oral Arg. at 9:05–10, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2017-2235.mp3 ("Under the doctrine as I understand it, I don't think [the orders] are final."). He also acknowledges that those orders do not qualify as

---

of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated"). Mr. Levandowski does not contend that the collateral order doctrine applies here, *see generally* Appellant's Br.; however, even if he had, our analysis would apply with equal force, *see infra* Section I.A–B (holding that Mr. Levandowski has failed to establish that he lacks alternative means to attain relief from the discovery orders and that Mr. Levandowski is not entitled to attorney-client privilege or work-product protection); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 114 (2009) ("[W]e conclude that the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege.").

[4]    "An 'accounting' in the context of § 1292(c)(2) includes . . . . both the calculation of an infringer's profits and a patentee's damages." *Robert Bosch*, 719 F.3d at 1313.

6                          WAYMO LLC v. UBER TECHS., INC.

routinely appealable interlocutory orders. *Id.* at 9:22–55
(acknowledging that the District Court did not certify the
orders pursuant to § 1292(b) and that the orders do not
fall within the categories enumerated in § 1292(a)(1)–(3),
(c)(2)).  Instead, Mr. Levandowski presents two theories of
jurisdiction.   First, Mr. Levandowski requests that we
treat his appeals from the District Court's orders in
*Waymo III* and *Waymo IV* as petitions for writ of manda-
mus pursuant to 28 U.S.C. § 1651(a), asserting that the
discovery orders from which he appeals will violate his
Fifth Amendment right against self-incrimination, and
that the constitutional aspect, relating to an issue already
under criminal investigation, warrants immediate review.
*See* Appellant's Br. 3.   Second, Mr. Levandowski argues
that he has an immediate right to appeal the District
Court's order in *Waymo IV* because the "*Perlman* doc-
trine," as set forth in *Perlman v. United States*, 247 U.S. 7
(1918), purportedly provides that "a third-party privilege
holder may immediately appeal an order compelling a
disinterested third party to produce privileged materials."
Appellant's Br. 2.   We address these arguments in turn.

I. Mr. Levandowski Has Not Established His Entitlement
to a Writ of Mandamus, Although a Continuing Confiden-
tiality Order May Be Supported

   The common law writ of mandamus is codified at 28
U.S.C. § 1651(a), which provides that "all courts estab-
lished by [an] Act of Congress may issue all writs neces-
sary or appropriate in aid of their respective jurisdictions
and agreeable to the usages and principles of law."  "[T]he
writ of mandamus is an extraordinary remedy[] to be
reserved for extraordinary situations."  *Gulfstream Aero-
space Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289
(1988).  "The traditional use of the writ in aid of appellate
jurisdiction both at common law and in the federal courts
has been to confine the court against which mandamus is
sought to a lawful exercise of its prescribed jurisdiction."
*Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380

Case 3:17-cv-00939-WHA   Document 1732   Filed 09/14/17   Page 7 of 25

(2004) (internal quotation marks, brackets, and citation omitted).

The petitioner bears the burden of showing entitlement to a writ of mandamus. *Gulfstream*, 485 U.S. at 289. To meet its burden, a petitioner must satisfy each of the following "prerequisites":

> First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable. Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*Cheney*, 542 U.S. at 380–81 (internal quotation marks, brackets, and citations omitted). Failure to establish any of these three prerequisites may suffice to deny a petition. *See Amgen Inc. v. Hospira, Inc.*, No. 2016-2179, 2017 WL 3427716, at *6 (Fed. Cir. Aug. 10, 2017) (denying a petition for writ of mandamus for failure to satisfy the second *Cheney* prerequisite without addressing the first and third prerequisites). We address the *Cheney* prerequisites in turn.

### A. Mr. Levandowski Fails to Satisfy *Cheney*'s First Prerequisite

Under *Cheney*'s first prerequisite, "the party seeking issuance of the writ must have no other adequate means to attain the relief he desires." 542 U.S. at 380 (internal quotation marks, brackets, and citation omitted). Mr. Levandowski contends that he lacks such alternative means of relief because "an appeal after disclosure of the privileged communication is an inadequate remedy."

Appellant's Br. 56 (internal quotation marks and citation omitted). We disagree.

Appellate courts "generally den[y] review of pretrial discovery orders," *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981), because "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege . . . by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence," *Mohawk*, 558 U.S. at 109. Although Mr. Levandowski is an intervenor, he is not precluded from appealing a final judgment even if the parties decline to do so. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 375–76 (1987) ("An intervenor, whether by right or by permission, normally has the right to appeal an adverse final judgment by a trial court."). While Mr. Levandowski contends that "disclosure of privileged information would irreparably taint the adversary process" because "[c]ourts cannot force litigants to unlearn information," Appellant's Br. 56, he has not specified why that general argument applies with greater force here than in any other case, *see id.* at 55–58. Therefore, we conclude that a post-judgment appeal by either Uber or Mr. Levandowski would "suffice to protect the rights of [Mr. Levandowski] and ensure the vitality of attorney-client privilege," *Mohawk*, 558 U.S. at 109; *see Stringfellow*, 480 U.S. at 375–76, as to this civil action.

Mr. Levandowski contends that disclosure of the Stroz Report would be "particularly injurious or novel." Appellant's Br. 56 (quoting *Mohawk*, 558 U.S. at 110); *see Mohawk*, 558 U.S. at 110 (discussing the "appellate options," including petitioning for writ of mandamus, available to "litigants confronted with a particularly injurious or novel privilege ruling"). His arguments are unpersuasive, for it is apparent that Mr. Levandowski cannot invoke attorney-client privilege or work-product protection.

Regarding injury, Mr. Levandowski fails to articulate any persuasive reasons *why* disclosure of the Stroz Report should be barred in this civil litigation, for the possibility of admissions against his interest is a valid function of civil discovery. *See* Appellant's Br. 55–58. While Mr. Levandowski claims that the District Court would be unable to "cleanse the trial of all taint from the improper disclosure," *id.* at 57, such an unsupported assertion is insufficient, *see, e.g.*, *Birdsong v. Apple Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) ("We review only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . . ." (internal quotation marks, alteration, and citation omitted)). Moreover, we take note that the District Court, reviewing the Stroz Report in camera, declined to exclude it, *Waymo I*, 2017 WL 2485382, at *1, and as explained above, the Supreme Court has indicated that appellate courts can remedy an improper disclosure of privileged information by vacating an adverse judgment and remanding for a new trial, *Mohawk*, 558 U.S. at 109.

Regarding novelty, Mr. Levandowski mischaracterizes the District Court's orders in *Waymo III* and *Waymo IV* as categorical and novel holdings that "parties in ongoing transactional negotiations cannot invoke the common-interest doctrine even when they are preparing for joint, post-transaction litigation." Appellant's Br. 57. To the contrary, the District Court clearly limited its holdings to the facts at issue, *see, e.g.*, *Waymo III*, 2017 WL 2694191, at *6 (rejecting Uber's arguments "[u]nder the facts of our case" and referring to the Magistrate Judge's "extensive factual findings in reaching her conclusion that, under the circumstances of our case, [Uber and Mr.] Levandowski . . . had adverse rather than common interests" in obtaining the Stroz Report).

Moreover, even if a privilege ruling is particularly injurious or novel, a petition for writ of mandamus is one of

10  WAYMO LLC v. UBER TECHS., INC.

"several potential avenues of review," including "ask[ing] the district court to certify, and the court of appeals to accept, an interlocutory appeal." *Mohawk*, 558 U.S. at 110. Along with an appeal from a final judgment, these avenues of immediate review may have been available to Mr. Levandowski. *See* 15B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3914.18 (updated Apr. 2017) ("[An] intervenor, once allowed to become a party, is treated in the same way as any other party."); *id.* § 3902.1 (stating that "[p]ersons granted intervention in the trial court become parties, and ordinarily have standing to appeal according to the rules that govern any over party" and that "[t]he only limit should be that standing is denied if the intervenor lacks standing under the rules that govern appeal by any party"); *cf. Stringfellow*, 480 U.S. at 375–76.

Therefore, we deny Mr. Levandowski's petition for writ of mandamus, *see Amgen*, 2017 WL 3427716, at *6, taking note that he may be entitled to confidentiality of the Stroz Report with respect to disclosure beyond the District Court's proceedings. We address the remaining two *Cheney* prerequisites for completeness.

## B. Mr. Levandowski Fails to Satisfy *Cheney*'s Second Prerequisite

Under the second *Cheney* prerequisite, "the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable." 542 U.S. at 381 (internal quotation marks, brackets, and citation omitted). Mr. Levandowski cannot establish a "clear and indisputable" right to mandamus relief solely by identifying ordinary error at the District Court. *Id.* (internal quotation marks and citation omitted); *see In re United States*, 791 F.3d 945, 955 (9th Cir. 2015) (requiring "clear error" such that "the reviewing court is left with a definite and firm conviction that a mistake has been committed" (internal quotation marks and citation omitted)). Instead,

something more is required to grant a petition for writ of mandamus because "only exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion, will justify the invocation of this extraordinary remedy." *Cheney*, 542 U.S. at 380 (internal quotation marks and citations omitted); *see Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (finding that mandamus was warranted because "the district court clearly erred in finding a blanket waiver of the attorney-client and work product privileges as to the entire case"). We apply Ninth Circuit law to determine whether the District Court erred in its privilege determination. *Promega Corp. v. Life Techs. Corp.*, 674 F.3d 1352, 1355–56 (Fed. Cir. 2012).

Mr. Levandowski avers that he satisfies this prerequisite because "the [D]istrict [C]ourt's rulings constitute a clear abuse of discretion." Appellant's Br. 55 (internal quotation marks and citation omitted). Specifically, Mr. Levandowski argues that the District Court erred by: (1) determining that the common interest doctrine did not apply, *see id.* at 23–47; (2) finding that Mr. Levandowski waived work-product protection, *see id.* at 47–49; and (3) rejecting Mr. Levandowski's claim of Fifth Amendment privilege, *see id.* at 49–55. None of Mr. Levandowski's arguments are persuasive.

### 1. The District Court Properly Determined That the Common Interest Doctrine Did Not Apply

"Rather than a separate privilege, the common interest or joint defense rule is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) (internal quotation marks omitted). It is insufficient "to justify a claim of privilege simply by demonstrating that a confidential communication took place between parties who purportedly share a common

12                              WAYMO LLC v. UBER TECHS., INC.

interest." *OXY Res. Cal. LLC v. Superior Court*, 9 Cal.
Rptr. 3d 621, 635 (Cal. Ct. App. 2004). Instead, "the party
seeking to invoke the doctrine must first establish that
the communicated information would otherwise be pro-
tected from disclosure by a claim of privilege." *Id.* There-
fore, to invoke the common interest doctrine, a party first
must demonstrate the elements of privilege and then
must demonstrate that the communication was made in
pursuit of common legal claims including common defens-
es. *Cf. Pac. Pictures*, 679 F.3d at 1129; *OXY*, 9 Cal. Rptr.
3d at 635.

The Magistrate Judge determined that Mr. Levan-
dowski failed to satisfy his burden as to both require-
ments of the common interest doctrine. *See Waymo I*,
2017 WL 2485382, at *4–8 (finding that Mr. Levan-
dowski's communications with Stroz were not protected
by attorney-client privilege and that the common interest
doctrine did not create attorney-client privilege on his
behalf), *9–13 (finding that Uber and Mr. Levandowski
did not share a common interest because they were ad-
versaries in the situation studied by Stroz). The District
Court agreed, holding that the common interest doctrine
was inapplicable because "[Mr.] Levandowski's interview
with and disclosures to Stroz . . . did not qualify for attor-
ney-client privilege in the first place," and "his interview
and disclosures did not become privileged merely by
virtue of his participation in a purported 'common inter-
est' or 'joint defense' arrangement." *Waymo III*, 2017 WL
2694191, at *5. We agree with the District Court.

As to the first requirement of the common interest
doctrine, Mr. Levandowski does not take the position that
his communications with Stroz were "privilege[d] in the
first place." *Id. See generally* Appellant's Br. Instead, he
asserts that the doctrine creates a separate, standalone
form of privilege that does not require such a showing.
Oral Arg. at 11:38–47, http://oralarguments.cafc.
uscourts.gov/default.aspx?fl=2017-2235.mp3 ("There is no

requirement that there first be a document or a communi-
cation that is privileged and then only later shared with
the common interest group."); *see* Appellant's Br. 23–47.
Ninth Circuit precedent is contrary to Mr. Levandowski's
assertion. *See Pac. Pictures*, 679 F.3d at 1129. Because
both the Magistrate Judge and the District Court made
extensive, record-supported factual findings as to privi-
lege, *see Waymo III*, 2017 WL 2694191, at *2–5; *Waymo I*,
2017 WL 2485382, at *4–6, and Mr. Levandowski fails to
negate or challenge these findings on appeal, *see* Appel-
lant's Br. 23–47, we need not reconsider the District
Court's determination that Mr. Levandowski's communi-
cations with Stroz were not privileged, *see Nan Ya Plas-
tics Corp. v. United States*, 810 F.3d 1333, 1347 (Fed. Cir.
2016) (holding that failure to present arguments under
the operative legal framework "typically warrants a
finding of waiver").[5]

─────────────

[5]  We note that neither Stroz, nor Uber's counsel,
nor Ottomotto's counsel represent Mr. Levandowski.
Appellant's App. 64–65, 114, 135. "What is vital to the
privilege is that the communication be made *in confidence*
for the purpose of obtaining *legal advice from the lawyer*."
*United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir.
1973) (internal quotation marks and citations omitted).
Mr. Levandowski could not show that he was seeking and
obtained "*legal* advice *from the lawyer*" when communi-
cating with Stroz. *Id.*  Therefore, we share the District
Court's concern that Mr. Levandowski advances "the
remarkable proposition that information communicated in
confidence by *anyone* to Stroz . . . for the purpose of ena-
bling *Uber and Ottomotto* to obtain legal advice from
[their respective counsels] should be covered by the attor-
ney-client privilege" invoked by the provider of infor-

As to the second requirement of the common interest doctrine, the record contradicts Mr. Levandowski's assertions that the District Court committed both legal and factual error. Mr. Levandowski argues that the District Court committed legal error by "adopt[ing] a blanket rule that parties with 'separate counsel on opposite sides of a proposed transaction' do not share a common legal interest sufficient to protect against waiver of the attorney-client privilege." Appellant's Br. 26 (quoting *Waymo I*, 2017 WL 2485382, at *6); *see id.* at 26–32, 36–39. However, Mr. Levandowski supports his argument by selectively quoting a small portion of one sentence in the midst of thorough findings that properly were limited to the facts of the case at hand. *See Waymo I*, 2017 WL 2485382, at *4–13; *see also Waymo III*, 2017 WL 2694191, at *6 (limiting its holdings to "the facts of our case" and "the circumstances of our case"). "We will not find legal error based upon an isolated statement stripped from its context." *VirnetX Inc. v. Apple Inc.*, 665 F. App'x 880, 886 (Fed. Cir. 2016).

Mr. Levandowski next argues that the District Court committed factual error because "the record evidence—including numerous sworn, uncontradicted declarations—established the existence of a common interest agreement prior to Stroz's engagement and established that [Mr.] Levandowski's communications with Stroz were made in furtherance of the . . . joint legal effort" of Mr. Levandowski and Uber to prepare for litigation with Waymo. Appellant's Br. 47; *see id.* at 39–47 (discussing purportedly supportive evidence). While Mr. Levandowski asserts that "[t]here is not a single piece of contrary testimony in the record," *id.* at 41, the Magistrate Judge expressly

---

mation to Stroz, which "has no basis in the law." *Waymo III*, 2017 WL 2694191, at *3.

WAYMO LLC v. UBER TECHS., INC.                                      15

considered this proffered evidence and found it unpersua-
sive as to Mr. Levandowski's claim of privilege, *see Way-
mo I*, 2017 WL 2485382, at *11–12.   Instead, the
Magistrate Judge found persuasive the term sheet be-
tween Uber and Ottomotto and the Stroz Report, *see id.* at
*9–10, and determined that these documents demonstrat-
ed that Uber's interests "were not aligned" with those of
Mr. Levandowski, *id.* at *10; *see id.* at *13.   We do not
discern reversible error in the District Court's ruling.

The Magistrate Judge's and the District Court's fac-
tual findings are well-supported by the record.   For exam-
ple, the following facts are undisputed:   (1) Ottomotto and
Uber signed a term sheet regarding Uber's potential
acquisition of Ottomotto, but that term sheet did not bind
the parties to the proposed acquisition, *see* Appellant's
App. 126; Appellant's Br. 4; (2) Uber and Ottomotto, but
not Mr. Levandowski, hired Stroz to investigate various
issues, including whether Mr. Levandowski improperly
retained confidential information from Waymo, *see* Appel-
lant's App. 135; Appellant's Br. 4; (3) Mr. Levandowski
did not hire or enter into any other formal arrangement
with     Stroz,     Oral     Arg.     at     10:13–24,
http://oralarguments.cafc.uscourts.gov/default.aspx?fl
=2017-2235.mp3 (Q: "Was [Stroz] hired by Levandowski
or his attorney?"  A: "[Stroz] was not engaged specifically
by Mr. Levandowksi's attorney."); *see* Appellant's App.
135; (4) "[t]he purpose of the [Stroz] investigation was to
aid [Uber's counsel] and [Ottomotto's counsel] in provid-
ing legal advice to their respective clients about litigation
risks and potential claims that could be brought by
[Waymo] in connection with Uber's acquisition of Ot-
to[motto]," Appellant's App. 65; *see id.* at 135; and (5) Mr.
Levandowski could have lost a large sum of money if Uber
did not acquire Ottomotto and could have been required
to reimburse Uber's indemnification expenses if he was
not truthful with Stroz, Oral Arg. at 5:46–7:01,
http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20

17-2235.mp3 (discussing indemnification and the risk that the deal might not go forward absent full disclosure); *see* Appellant's App. 129–33. These facts support the District Court's conclusion that Uber's interests were adverse to Mr. Levandowski's because he was the subject of an investigation ordered by two parties on opposite sides of a proposed transaction. These undisputed facts are sufficient to uphold the District Court's conclusion that Mr. Levandowski did not share a common interest with Uber. We thus decline to find error in the District Court's factual findings or legal conclusions.

### 2. The District Court Properly Determined That Work-Product Protection Did Not Apply

The work-product doctrine protects from discovery documents, tangible things, or compilations of materials that were prepared in anticipation of litigation by a party or its representative. *See United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011). Documents that "w[ere] not prepared exclusively for litigation," known as "[d]ual purpose documents," may be entitled to work-product protection if they were prepared "because of" litigation, meaning "the document[s] can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id.* at 568 (internal quotation marks and citation omitted). Even if a party has demonstrated that documents are entitled to work-product protection, that protection may be waived through disclosure to a third person. *See Hernandez*, 604 F.3d at 1100. The common interest doctrine, however, may serve as "an exception" to a waiver of privilege, including work-product protection, that "allow[s] attorneys for different clients pursuing a common legal strategy to communicate with each other." *Pac. Pictures*, 679 F.3d at 1129; *see Pecover v. Elec. Arts Inc.*, No. C08-2820 CW (BZ), 2011 WL 6020412, at *2 (N.D. Cal. Dec. 2, 2011) (stating that the common interest doctrine "is a narrow exception to the rule of waiver" of work-product protection).

The Magistrate Judge explained that, "[o]nce a party has disclosed work product to one adversary, it waives work-product protection as to all other adversaries. As Uber disclosed its Stroz [Report] work product to its adversaries Otto[motto and Mr.] Levandowski . . . , it must disclose the same work product to Waymo." *Waymo I*, 2017 WL 2485382, at *13 (citation omitted). The District Court agreed. *Waymo III*, 2017 WL 2694191, at *6 ("[U]nder the circumstances of our case, [Uber and Mr.] Levandowski . . . had adverse rather than common interests . . . and . . . Uber therefore waived any work-product [protection] it may have had over the [Stroz R]eport by disclosing the contents of that report to adversaries."). Mr. Levandowski argues that the District Court erred because "waiver of work-product protection requires that the information be disclosed . . . to an *adversary*," and "[s]haring work product among the members of a common interest group is the antithesis of sharing it with an adversary." Appellant's Br. 48, 49 (citation omitted). This argument fails for three reasons.

First, Mr. Levandowski has not established that he is entitled to assert work-product protection over the Stroz Report. Both the Magistrate Judge and the District Court "assum[ed] the Stroz [Report] qualifies as *Uber's* attorney work[ ]product" and did not discuss the protection as applied to Mr. Levandowski. *Waymo I*, 2017 WL 2485382, at *8 (emphasis added); *see Waymo III*, 2017 WL 2694191, at *6 (stating that "*Uber* therefore waived any work-product [protection] it *may* have had" (emphases added)). However, whether Uber can assert work-product protection over the Stroz Report does not benefit Mr. Levandowski. Work-product protection covers documents prepared by a party or its representative, *Richey*, 632 F.3d at 567, and Mr. Levandowski concedes that he did not hire Stroz as his representative, Oral Arg. at 10:13–24, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2017-2235.mp3. Instead, Stroz was hired by Uber's

counsel and Ottomotto's counsel, neither of whom represents Mr. Levandowski. Appellant's App. 64, 135. Therefore, even if the Stroz Report was prepared "because of" litigation, *Richey*, 632 F.3d at 567, it was prepared by *Uber's* and *Ottomotto's* representative rather than *Mr. Levandowski's* representative.

Second, even if Mr. Levandowski were entitled to assert work-product protection, he waived that protection by disclosing the information for the benefit of adverse third parties. While the common interest doctrine potentially could provide "an exception to ordinary waiver rules" and allow representatives of Uber and Mr. Levandowski to communicate in "pursui[t of] a common legal strategy," *Pac. Pictures*, 679 F.3d at 1129, we agree with the District Court's finding that Uber and Mr. Levandowski had adverse rather than common interests in connection with the Stroz Report. The common interest doctrine does not apply and, therefore, cannot save Mr. Levandowski's waiver of the work-product protection.

Third, both the Magistrate Judge and District Court applied the very standard that Mr. Levandowski argues for on appeal. Although Mr. Levandowski argues that "waiver of work[-]product [protection] requires that the information be disclosed . . . to an *adversary*," Appellant's Br. 48 (citation omitted), this is exactly what both the Magistrate Judge and the District Court determined had occurred, *see Waymo III*, 2017 WL 2694191, at *6; *Waymo I*, 2017 WL 2485382, at *13. Therefore, Mr. Levandowski's argument regarding the appropriate legal standard is unavailing.

### 3. The District Court Properly Determined That the Fifth Amendment Was Not Implicated

The Fifth Amendment provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "[T]he Fifth Amendment privilege is a personal privilege:

it adheres basically to the person, not to information that may incriminate him." *Couch v. United States*, 409 U.S. 322, 328 (1973).   The District Court determined that compelling Uber or Stroz to produce the Stroz Report would not violate Mr. Levandowski's Fifth Amendment privilege, because he had not met his burden of showing that he retained any privilege over the Stroz Report.  *See Waymo II*, 2017 WL 2676424, at *3; *see also* Appellant's App. 19.   We agree that Mr. Levandowski is not entitled to Fifth Amendment privilege with respect to disclosure in this civil case.[6]

Mr. Levandowski argues that he is entitled to assert Fifth Amendment privilege because Waymo's complaint "plainly conjures the threat of criminal sanction" and the District Court "formally referred this case to the [U.S.] Attorney's Office for investigation of possible theft of trade secrets."   Appellant's Br. 50 (internal quotation marks, footnote, and citation omitted); *see* Appellant's App. 171.  Mr. Levandowski states that the disclosure of information contained in the Stroz Report would violate

---

[6]    Mr. Levandowski was accepted as an intervenor under Federal Rule of Civil Procedure 24(b) "for the limited purpose of opposing Waymo's motion to compel the Stroz Report," *Waymo I*, 2017 WL 2485382, at *7, and "for the limited purpose of objecting to the Stroz subpoena," *Waymo II*, 2017 WL 2676424, at *2.  Therefore, Mr. Levandowski can challenge the District Court's holdings as to Fifth Amendment privilege on appeal.  *See* Wright & Miller § 3914.18 ("Orders granting intervention, or granting intervention but limiting the intervenor's role in the action, are treated in the same way as other orders with respect to party joinder."); *id.* ("[T]he intervenor, once allowed to become a party, is treated in the same way as any other party.").

his Fifth Amendment rights, since "the Constitution protects an individual like [Mr.] Levandowski from being compelled to testify against himself through the production of records." Appellant's Br. 51; *see* U.S. Const. amend. V; *see also McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924) (holding that the Fifth Amendment "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it"). However, "the Fifth Amendment privilege is a *personal* privilege," *Couch*, 409 U.S. at 328 (emphasis added), and Mr. Levandowski has not been compelled *personally* to produce the Stroz Report.

Whether the information Mr. Levandowski provided for the Stroz Report is relevant to and admissible in any criminal action is not before us. Nor is it before us to decide whether the District Court may choose to preserve the Stroz Report's confidentiality until its status in any criminal proceeding is resolved. However, with respect to the pending civil action, the District Court's orders compel *Uber* and *Stroz* to produce the Stroz Report. Appellant's App. 20; *see Waymo III*, 2017 WL 2694191, at *8. Mr. Levandowski cannot prevent Uber and Stroz from producing the Stroz Report for consideration in this civil action solely because it "may incriminate him." *Couch*, 409 U.S. at 328. We conclude, from the District Court's and Magistrate Judge's denial of his requests to prevent production of the Stroz Report, that they deem it relevant to this civil action; it is inappropriate to withhold relevant material in the civil action. However, the District Court has authority to ensure that any appropriate protective order is applied.

Mr. Levandowski's counterarguments are unpersuasive. First, Mr. Levandowski argues that he maintains constructive possession over the Stroz Report. Appellant's Br. 50−52. Although the Supreme Court has acknowledged that "situations may well arise where constructive possession is so clear or the relinquishment of possession

is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact . . . , this is not the case before us." *Couch*, 409 U.S. at 333–34 (footnote omitted). "Constructive possession is established when a person, though lacking such physical custody, still has the power and intent to exercise control over the object." *Henderson v. United States*, 135 S. Ct. 1780, 1784 (2015). Mr. Levandowski cannot demonstrate the requisite control because, as the Magistrate Judge explained, he "provided the statements and documents to an unrelated party on the other side of a proposed acquisition to enable the unrelated party to decide whether to agree to the acquisition and to create an evidentiary record to govern indemnification rights if a certain agreement is executed." *Waymo II*, 2017 WL 2676424, at *3; *see, e.g.*, Appellant's App. 64–65, 135. While Mr. Levandowski argues that his attorney insisted by letter that Stroz "agree[] to (a) 'promptly return or destroy' the materials upon request, and (b) hold in strict confidence all information derived from materials," Appellant's Br. 52 (quoting Appellant's App. 136), this very same letter "provide[s] that Stroz may keep one archival copy" of the materials, and the accompanying protocol for Stroz's investigation provides direction for "non-privileged, relevant documents or communications . . . [to] be shared with [Ottomotto's counsel] and [Uber's counsel]," Appellant's App. 136, 137–38 (footnote omitted). Moreover, the letter fails to temporally limit Stroz's possession of the documents. *See id.* at 135–39. Under these circumstances, we agree with the District Court that neither is Mr. Levandowski's possession "so clear" nor is his relinquishment of possession "so temporary" as to establish constructive possession. *Couch*, 409 U.S. at 333 (footnote omitted).

Second, Mr. Levandowski argues that, at minimum, we must vacate and remand the District Court's determinations as to the Fifth Amendment privilege because the

District Court improperly deferred to the Magistrate Judge rather than reviewing Mr. Levandowski's contentions de novo. Appellant's Br. 53–55.[7] Although it is true that "Article III judges are the ultimate decision makers on matters involving substantial constitutional questions," *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1071 (9th Cir. 2004); *see id.* (explaining that, "[h]ad the district court applied de novo review to the magistrate judge's order, we would have no need to remand the case"), the District Court was only peripherally presented with a constitutional issue. Both before the District Court and on appeal, Mr. Levandowski conditioned his Fifth Amendment argument upon his claim of attorney-client privilege or common interest privilege. Oral Arg. at 33:50–35:15, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2017-2235.mp3 ("*If this is a valid common interest privilege*, . . . then a client giving an attorney documents . . . *as part of a privileged relationship*, . . . they're the agent of counsel for the common interest group. Under the Fifth Amendment, a client has a right . . . to block production of those records from their counsel. . . . *It turns on the validity of the privilege*. . . . If there is a violation of the attorney-client privilege here that *leads to a determination that the Fifth Amendment violation occurred*, this will inevitably taint the record." (emphases added)); *see, e.g.*, Appellant's Br. 54 ("[Mr.] Levandowski asserted in the [D]istrict [C]ourt that . . . any records he may have transferred to Stroz *as part of a common interest privileged communication* remained subject to Fifth Amendment privilege." (em-

---

[7]    During oral argument, counsel for Mr. Levandowski acknowledged "that it is a little bit murky" whether "de novo review should occur" in this case. Oral Arg. at 36:54–37:00, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2017-2235.mp3.

phasis added) (citations omitted)); Appellant's Emergency Mot. to Stay at 16, *Waymo LLC v. Uber Techs., Inc.*, No. 17-2253 (Fed. Cir. June 30, 2017), ECF No. 3 ("[S]*ince* any records he may have transferred to Stroz were part of a privileged joint-defense communication, . . . such records would remain privileged even if they are in the possession of Stroz." (emphasis added) (citations omitted)).    The District Court rejected Mr. Levandowski's arguments as to the common interest privilege.

## C. Mr. Levandowski Fails to Satisfy *Cheney*'s Third Prerequisite

Under *Cheney*'s third prerequisite, "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances."    *Cheney*, 542 U.S. at 381 (citation omitted).    As explained above, Mr. Levandowski has not satisfied his burden as to the first two *Cheney* prerequisites, and he has not persuaded us to exercise our discretion here and overrule the District Court.    We thus decline to do so.

Because Mr. Levandowski has not satisfied any of the *Cheney* prerequisites, his petitions for writ of mandamus with respect to the District Court's orders in *Waymo III* and *Waymo IV* are denied.    Mr. Levandowski proffers no other grounds for this court to reverse the District Court's order in *Waymo III*.    Uber must comply with the District Court's order in *Waymo III* upon denial of Mr. Levandowski's petition for writ of mandamus, subject to any protection the District Court might impose on Fifth Amendment consideration.

## II. The *Perlman* Doctrine Does Not Apply

As an alternative basis for reversal of the discovery order in *Waymo IV*, Mr. Levandowski argues that he is entitled to such action pursuant to the *Perlman* doctrine.    Appellant's Br. 2–3.    The *Perlman* doctrine provides that

"a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 18 n.11 (1992) (citation omitted). For several reasons, we conclude that the doctrine is not implicated here.

First, grand jury subpoenas are "by far the most common area of application" of the *Perlman* doctrine. Wright & Miller § 3914.23; *see In re Nat'l Mortg. Equity Corp. Pool Certificates Litig.*, 857 F.2d 1238, 1239 (9th Cir. 1988) ("We conclude that *Perlman* does not apply in the context of ongoing civil litigation." (footnote omitted)). Although the Ninth Circuit has applied the *Perlman* doctrine in at least two civil cases of which we are aware, those cases did not provide any reasoning for applying the doctrine in the civil context. *See In re Optical Disk Drive Antitrust Litig.*, 801 F.3d 1072, 1076 (9th Cir. 2015); *Sec. & Exch. Comm'n v. CMKM Diamonds, Inc.*, 656 F.3d 829, 830–31 (9th Cir. 2011).

Second, the *Perlman* doctrine applies "[o]nly in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims." *United States v. Ryan*, 402 U.S. 530, 533 (1971); *see, e.g., id.* at 533–34 ("In the present case . . . , respondent is free to refuse compliance and, . . . in such event[,] he may obtain full review of his claims before undertaking any burden of compliance with the subpoena. *Perlman*, therefore, has no application in the situation before us."). As we explained above, Mr. Levandowski may be able to appeal following final judgment. *See supra* Section I.A.

Third, the *Perlman* doctrine may be invoked by "disinterested third parties," *Church of Scientology*, 506 U.S. at 18 n.11, but Mr. Levandowski is closely affiliated with

WAYMO LLC v. UBER TECHS., INC.                                    25

all parties to this litigation.  It is undisputed that Mr.
Levandowski has been employed by each party to this
litigation and that his actions are central to Waymo's
claims.  *See* Appellant's Br. 9–14; Appellee's Br. 7–9.
Therefore, "it seems clear that [Uber] is no 'disinterested'
third party." *Knoll Pharm. Co. v. Teva Pharm. USA, Inc.*,
138 F. App'x 302, 303 (Fed. Cir. 2005) (citation omitted).

Fourth, we have previously rejected Mr. Levan-
dowski's arguments under the *Perlman* doctrine in a
substantively similar appeal.  *See* Appellant's Emergency
Mot. to Stay at 9, *Waymo LLC v. Uber Techs., Inc.*, No. 17-
1904 (Fed. Cir. Apr. 13, 2017), ECF No. 2 (discussing
*Perlman* doctrine); Order at 2–3, *Waymo LLC v. Uber
Techs., Inc.*, No. 17-1904 (Fed. Cir. Apr. 25, 2017), ECF
No. 9 (treating appeal as petition for writ of mandamus
and dismissing).  Mr. Levandowski has not provided any
reasons why we should depart from that practice here, *see*
Appellant's Br. 2–3, and we see none.  Because the *Perl-
man* doctrine is not implicated, Stroz must comply with
the District Court's order in *Waymo IV*.

CONCLUSION

We have considered Mr. Levandowski's remaining ar-
guments and find them unpersuasive.  Accordingly, Mr.
Levandowski's appeal is

**DISMISSED AND THE PETITIONS FOR WRIT OF
MANDAMUS ARE DENIED**

COSTS

Costs to Waymo.