# United States Court of Appeals for the Federal Circuit

_____

**WAYMO LLC,**
*Plaintiff-Appellee*

v.

**UBER TECHNOLOGIES, INC., OTTOMOTTO LLC,**
*Defendants-Appellants*

**OTTO TRUCKING LLC,**
*Defendant*

**ANTHONY LEVANDOWSKI,**
*Intervenor*

_____

2017-2130
_____

Appeal from the United States District Court for the Northern District of California in No. 3:17-cv-00939-WHA, Judge William H. Alsup.

_____

Decided: September 13, 2017
_____

CHARLES KRAMER VERHOEVEN, Quinn Emanuel Urquhart & Sullivan, LLP, San Francisco, CA, argued for plaintiff-appellee. Also represented by JOHN WILLIAM MCCAULEY, IV, DAVID ANDREW PERLSON; DAVID MICHAEL COOPER, New York, NY.

HAMISH HUME, Boies Schiller & Flexner LLP, Washington, DC, argued for defendants-appellants. Also represented by KAREN L. DUNN; SHIRA LIU, DAVID LAURENCE ZIFKIN, Santa Monica, CA; MICHAEL ALLEN JACOBS, Morrison & Foerster LLP, San Francisco, CA.

_____

Before NEWMAN, WALLACH, and STOLL, *Circuit Judges*.

NEWMAN, *Circuit Judge*.

This appeal is from the Order of the United States District Court for the Northern District of California, denying the Defendants' motion to compel arbitration of their pending litigation with Waymo LLC.[1] The Defendants are Uber Technologies, Inc., Ottomotto LLC, and Otto Trucking LLC. The Appellants are Uber Technologies, Inc. and Ottomotto LLC (collectively "Uber" or "Appellants"). Anthony Levandowski is an Intervenor in this case.

The Appellants do not assert that an arbitration agreement exists between any of the Defendants and Waymo. The Appellants instead argue that Waymo should be compelled to arbitrate its dispute with the Defendants because of the arbitration agreement between Waymo and Intervenor Levandowski. The district court received Waymo's representation that it "expressly forswore reliance on its 2009 and 2012 agreements with Levandowski to prove up its claims," Dist. Ct. Order at *4, unless the agreements are raised by the Defendants, and the court ruled that compulsory arbitration is not appro-

_____

[1] *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 1957010 (N.D. Cal. May 11, 2017) ("Dist. Ct. Order").

priate. On review of the principles and precedent, we affirm the district court's holding.

BACKGROUND

Waymo's complaint against the Defendants includes counts of violation of the California Uniform Trade Secrets Act, the Federal Defend Trade Secrets Act, the California Business and Professional Code, and the patent statute. Relevant background is set forth in the district court's Order, and is repeated only to explain our affirmance of the denial of arbitration.

The two employment agreements between Waymo and its then-employee Levandowski, entered in 2009 and 2012, each contain a similar arbitration clause. The 2012 agreement includes the following clause:

> In consideration of my employment with the Company, its promise to arbitrate all employment-related disputes, and my receipt of the Compensation, pay raises and other benefits paid to me by the Company, at present and in the future, I agree that any and all controversies, claims, or disputes with anyone (including the Company and any employee, officer, director, shareholder or benefit plan of the Company in their capacity as such or otherwise), whether brought on an individual, group, or class basis, arising out of, relating to, or resulting from my employment with the Company or the termination of my employment with the Company, including any breach of this Agreement, shall be subject to binding arbitration under the arbitration rules set forth in California Code of Civil Procedure Section 1280 through 1294.2, including Section 1283.05 (the "Rules") and pursuant to California law. Disputes which I agree to arbitrate, and thereby agree to waive any right to a trial by jury, include any statutory claims under State or Federal law,

including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the Sarbanes-Oxley Act, the Worker Adjustment and Retraining Notification Act, the California Fair Employment and Housing Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the California Family Rights Act, the California Labor Code, claims of harassment, discrimination, wrongful termination and any other contractual, tort or statutory claims under Federal, California and local laws, to the extent allowed by law. I further understand that this agreement to arbitrate also applies to any disputes that the Company may have with me.

J.A. 319–20. The briefs state that arbitration between Waymo and Levandowski is ongoing.

In the district court, the Defendants argued, inter alia, that equitable estoppel applies to compel arbitration between them and Waymo because Waymo contended that "Levandowski was able to misappropriate Waymo's information by virtue of his job at Waymo," and that Levandowski downloaded 14,000 Waymo documents and used this information for the benefit of Uber. J.A. 264. At a hearing on this aspect, the district court asked Waymo if it would forgo "any reliance in this case on any employment or other agreement with Levandowski containing an arbitration clause," and "forgo any claims in any forum against Levandowski similar to those asserted herein that rely on any agreement containing an arbitration clause." J.A. 5737–4. Waymo agreed, "provided that Uber does not open the door by reference to these agreements or lack thereof of those agreements, which is something that we would just have to address down the road." J.A. 579.

The district court, discussing California law and precedent, explained its denial of the motions to compel arbitration:

> At bottom, defendants have not shown that Waymo relies on the 2009 or 2012 agreements to assert its claims against defendants while simultaneously seeking to avoid the arbitration clauses of those agreements. The inequities that equitable estoppel is designed to address are simply not present. Accordingly, equitable estoppel does not apply.

Dist. Ct. Order at *3.

## DISCUSSION

On appellate review, we apply the applicable law of California and the Ninth Circuit, since "the issues of arbitrability are not intimately involved in the substance of enforcement of a patent right." *Promega Corp. v. Life Techs. Corp.*, 674 F.3d 1352, 1356 (Fed. Cir. 2012).

California law governs the question of whether Waymo should be compelled to arbitrate its claims against the Defendants in view of the arbitration agreements with Levandowski, which specify that California law applies. The Ninth Circuit generally reviews a district court's order granting or denying a motion to compel arbitration *de novo*. *See, e.g.*, *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1224 (9th Cir. 2013); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013); *Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1152 (9th Cir. 2004). The Ninth Circuit has also applied the abuse of discretion standard when considering a party's contention that "the district court erroneously rejected its argument that [the other party] should be equitably estopped from avoiding arbitration," *Ngyuen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th. Cir. 2014), even though it "review[ed] the denial of the motion to compel arbitration de novo," *id.* at

1175 (internal quotation marks and citation omitted). Whether on the basis of *de novo* review or for abuse of discretion, we affirm the district court's holding that arbitration should not be compelled in this case.

## A

### *Agreements to arbitrate are subject to contract law*

Contract law principles hold that non-parties to a contract are generally not bound by the contract. A contract to arbitrate is not an exception. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit."). In turn, when parties have contracted to arbitrate, the courts have enforced such agreements. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 678 (Cal. 2000) ("California law, like federal law, favors enforcement of valid arbitration agreements."), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011); *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 673 P.2d 251, 257 (Cal. 1983) (noting the "state's strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution").

The issue in this case is whether the circumstances are such that Waymo can be compelled to arbitrate on equitable grounds, in Waymo's suit against Uber, Ottomotto, and Otto Trucking, where there is no agreement to arbitrate. The California courts have, in a few situations, compelled arbitration against an entity that was not a party to an arbitration agreement. The district court explored this precedent, and concluded that the present case did not warrant compulsion to arbitrate.

B

*Equitable estoppel to compel arbitration has been limited to narrow situations*

Courts have applied equitable estoppel to compel arbitration when necessary "to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a non-signatory, while at the same time refusing to arbitrate with the non-signatory under another clause of that same agreement." *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 543–44 (Cal. Ct. App. 2009); *see also Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." (internal quotation marks and citation omitted)). A non-signatory may compel arbitration where the "relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).

California law establishes that reliance on the contract bearing the arbitration clause is fundamental to compulsion by a non-party to arbitrate. In *Kramer,* cited *supra,* the Ninth Circuit set forth a two-prong test derived from California law, which the district court relied on here. A class of car owners sued Toyota for brake failures, and Toyota sought to compel arbitration based on the agreements between the car owners and their dealerships, where arbitration of disputes was required. The car owners objected to arbitration, and the court held that equitable estoppel did not apply to compel arbitration, stating:

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or

Case 3:17-cv-00939-WHA Document 1734 Filed 09/13/17 Page 8 of 15

> the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.

705 F.3d at 1128–29 (citing *Goldman,* 92 Cal. Rptr. 3d at 541–43) (internal quotation marks and citations omitted); *see also Murphy*, 724 F.3d at 1229 (referring to the two-part framework articulated in *Kramer* "as a controlling statement of California law [on] the equitable estoppel rule set forth in *Goldman*"). These principles are embodied in the district court's analysis.

    The *Kramer* court relied on *Goldman*, where the California Court of Appeal explained that reliance on a contract containing an arbitration requirement is the key element in the equitable estoppel inquiry. In *Goldman*, the plaintiffs sought to sue their accountants who had allegedly set up fraudulent tax shelters, and the accountants had advised on the formation of limited liability companies, whose operating agreements specified arbitration. The court denied the accountants' motion to compel arbitration, stating that the plaintiffs' claims "do not rely or depend on, and are not founded in or inextricably bound up with, the terms of the operating agreements." *Goldman*, 92 Cal. Rptr. 3d at 555. The court explained that, in prior cases, equitable estoppel had been applied only "when the signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory, and when the signatory raises allegations of substantially interdependent and concerted misconduct by the nonsignatory and a signatory." *Id.* at 544 (footnote omitted).

The court in *Goldman* stressed that the basis for equitable estoppel is reliance on the contract containing the arbitration provision. The court stated that reliance "is the only basis upon which [a party to the agreement] may be equitably estopped from refusing to arbitrate [with a non-signatory] when they have not agreed to do so." *Id.* at 553. The *Goldman* court found that the plaintiffs' complaint did not rely on the limited liability companies' operating agreements, and ruled that the arbitration provisions of those agreements did not invoke equitable estoppel. *See id.* at 555.

## C

### *The first* Kramer/Goldman *circumstance is not satisfied*

Uber argues that Waymo should be compelled to arbitrate this dispute because Waymo's trade secret claims against the Defendants relate to actions by Levandowski in purported violation of his employment agreements with Waymo. Thus Uber argues that the arbitration clauses of the employment agreements between Waymo and Levandowski should also apply to Waymo's suit against Uber. Waymo again states that it is not relying on the Levandowski employment agreements in this suit.

We start the analysis with the complaint. *See Goldman*, 92 Cal. Rptr. 3d at 550 (stating that, when considering reliance, "we examine the facts alleged in the complaint[]"); *see also Murphy*, 724 F.3d at 1229 (stating that the first *Goldman* circumstance applies "when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory, or the claims are intimately founded in and intertwined with the underlying contract" (internal quotation marks and citation omitted)); *Goldman*, 92 Cal. Rptr. 3d at 546 ("It is the relationship of the claims . . . that is key."). Although Waymo's complaint states that Levandowski "downloaded more than 14,000 highly confidential and proprietary files

shortly before his resignation," J.A. 186, and that Uber then misappropriated and infringed Waymo's technology using this information, *see id.* at 184–88, the complaint neither alleges breach of nor cites to any provision of the Waymo-Levandowski employment agreements, *see id.* 184–207. As in *Goldman*, "[t]he complaint[] do[es] not rely on or use any terms or obligations of the [Waymo-Levandowski employment] agreements as a foundation for [its] claims." 92 Cal. Rptr. 3d at 540.

First, Uber argues that the use of "or" in the first *Kramer*/*Goldman* circumstance creates a separate standard, such that Uber need not show that Waymo must rely on the Waymo-Levandowski employment agreements. *See* Appellants' Br. 30–35. However, California courts define reliance on an agreement as raising claims that are intimately founded in or intertwined with that agreement. *See Kramer*, 705 F.3d at 1129 ("To determine whether the plaintiffs' claims relied on the agreement, the *Goldman* court looked to whether the claims that the nonsignatory sought to arbitrate were intimately founded in and intertwined with the underlying contract obligations." (internal quotation marks and citation omitted)). *Goldman* held that "the necessary central core of the [equitable estoppel] standard" is that "the plaintiff's allegations must rely on or depend upon the terms of the written agreement." 92 Cal. Rptr. 3d at 551 (internal quotation marks and citation omitted); *see id.* ("[T]he underlying principle, stated in all cases" is "actual reliance on the terms of the agreement to impose liability on the nonsignatory."). The district court herein did not conflate two distinct bases for compelling arbitration as Uber charges; the court applied the governing legal standard and determined that the Defendants had not satisfied it.

Second, Uber argues that Waymo must necessarily rely on its agreements with Levandowski in order to make out its trade secret claims against the Defendants. How-

Case 3:17-cv-00939-WHA   Document 1734   Filed 09/13/17   Page 11 of 15
Case: 17-2130    Document: 54-2    Page: 11    Filed: 09/13/2017

WAYMO LLC v. UBER TECHS., INC.                                11

ever, Waymo stresses that its complaint does not rely on Levandowski's employment agreements, stating that the references to the employment agreements are presented to show that Waymo has taken reasonable measures to safeguard its trade secrets. Uber argues that these references should be construed as reliance on the agreements sufficient to compel Waymo to arbitrate this dispute with the Defendants. However, this is not how California courts have viewed reliance in the context of compelling arbitration by non-parties to an arbitration agreement. As the *Kramer* court stated, "Plaintiffs' claims themselves must intimately rely on the existence of the Purchase Agreements, not merely reference them." *Kramer*, 705 F.3d at 1132.

The district court accepted Waymo's position, stating, "Waymo need not *rely* on the terms of its written agreements merely because it makes *reference* to such agreements . . . . Waymo has alleged and provided a sworn record of how it takes reasonable measures to maintain secrecy." Dist. Ct. Order at *4; *see id.* (stating that "the difference between reference . . . and reliance is significant"). The District Court's analysis is correct.

Third, Uber states that the district court erred by relying on Waymo's disclaimer of reliance on the Waymo-Levandowski employment agreements because Waymo conditioned its disclaimer, stating that it would not rely upon the agreements, "provided that Uber does not open the door by reference to these agreements or the lack thereof of those agreements, which is something that we would just have to address down the road if they tried to inject them into the case, somehow." J.A. 579. Such a conditional representation does not demonstrate reliance on the employment agreements. The district court did not err in discounting this argument.

Uber offered a further theory at the oral argument of this appeal, stating that Waymo's litigation claims involve

the employment agreements because a Levandowski exhibit to those agreements, in which he lists his previously-existing patents, sets limits to Waymo's trade secrets. Counsel for Uber stated, "In order to know whether Mr. Levandowski breached a common law duty, or breached a statutory trade secret law, you have to look at whether or not the contract prohibited him from doing this because it governs which inventions he owned and which inventions Google owned." Oral Arg. at 13:43–14:03, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2017-2130.mp3. This argument does not change the applicability of precedent, as discussed by the district court.

### D

### *The second* Kramer/Goldman *circumstance is not satisfied*

Applying precedent, Uber's contentions as to the second *Kramer/Goldman* circumstance, concerted misconduct, are subject to the same deficiencies we have discussed. As stated in *Murphy*, "allegations of collusive behavior by signatories and non-signatories, with no relationship to the terms of the underlying contract, [do] not justify application of equitable estoppel to compel arbitration." 724 F.3d at 1232 (citing *Goldman*, 92 Cal. Rptr. 3d at 549 (internal quotation marks omitted)).

The inquiry under *Kramer* includes consideration of the relationship between the underlying agreement and the issues in dispute, in addition to the relationship between the signatory and non-signatory to the arbitration agreement. The *Kramer* court explained that arbitration against a non-party to the arbitration agreement cannot be compelled where "the allegations of collusion are not inextricably bound up with the obligations imposed by the agreement containing the arbitration clause." *Id.* at 1133.

Waymo states that it is not asserting, in its suit against the Defendants, that Uber Technologies conspired with Levandowski to breach his employment agreements with Waymo. We agree with the district court that absent a relationship between Waymo's claims and any concerted misconduct between Uber Technologies and Levandowski involving the employment agreements, Waymo cannot be compelled to arbitrate the dispute.

## E

### *The remaining cases cited by Appellants do not compel a different result*

Uber directs us to *Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172 (N.D. Cal. 2013), as showing parties that were compelled to arbitrate with a non-signatory. The facts in that case are distinguished from the Waymo situation. Uptown Drug and CVS Caremark had a provider agreement that contained an arbitration clause, and Uptown Drug sued CVS Caremark and related entities for trade secret misappropriation. The court found that the suit was predicated on the provider agreement and compelled arbitration of the relevant claims. This was simply enforcement of an arbitration clause between contracting parties; it has no relevance to the facts herein.

Uber also directs us to *Metalclad Corp. v. Ventana Environmental Organizational Partnership*, 1 Cal. Rptr. 3d 328 (2003). In that case, a subsidiary of Ventana acquired Econsa, a subsidiary of Metalclad; the acquisition agreement had an arbitration clause. Econsa was subsequently transferred to another company, and the court held that the former owner was equitably estopped from avoiding the arbitration provision, stating, "Estoppel prevents Metalclad from avoiding arbitration by suing only the parent corporation in these circumstances." *Id.* at 1718. This case bears no resemblance to the facts before us.

Case: 17-2130    Document: 54-2    Page: 14    Filed: 09/13/2017
Case 3:17-cv-00939-WHA   Document 1734   Filed 09/13/17   Page 14 of 15

14                                WAYMO LLC v. UBER TECHS., INC.

Uber also cites *Turtle Ridge Media Group, Inc. v. Pacific Bell Directory*, 44 Cal. Rptr. 3d 817 (2006), where the court required the plaintiff subcontractor, Turtle Ridge, to arbitrate with the defendant, based on an arbitration agreement between the defendant and the prime contractor, where the arbitration agreement was expressly incorporated into the subcontract between the prime contractor and Turtle Ridge. There is no similar situation here, where there is no alleged contractual relation between Uber Technologies and Waymo.

A close analogy appears in *Torbit v Datanyze, Inc.*, No. 5:12–CV–05889–EJD, 2013 WL 572613 (N.D. Cal. Feb. 13, 2013), where an employee left his employer, Torbit, to work at Datanyze. Datanyze sought arbitration of trade secret issues based on the employee's contract with Torbit, and the court compelled arbitration, stating that the asserted employee misconduct "touch[ed] matters" covered by the employment agreement. *Id.* at *4. The district court herein stated that this case did not consider the Ninth Circuit's holding in *Kramer*, which had issued approximately two weeks prior to *Torbit*, or California rulings such as *Goldman*. Instead, the case relied on less relevant federal case law, particularly *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999), which did not involve equitable estoppel or the compulsion of a non-signatory to arbitrate.

To similar effect is *CardioNet, LLC v. InfoBionic, Inc.*, No. 1:15-cv-11803-IT, 2017 WL 1115153 (D. Mass. Mar. 24, 2017) (applying California law), where the plaintiff relied on an employee's employment agreement to support a claim against a new employer for trade secret misappropriation. The court remarked: "Importantly, CardioNet does not allege that InfoBionic obtained the trade secrets through any means other than Kuppuraj's breach of his contractual agreements." *Id.* at *3. In contrast, Waymo has disavowed reliance on the Waymo-Levandowski employment agreements. *See* J.A. 579.

Case 3:17-cv-00939-WHA Document 1734 Filed 09/13/17 Page 15 of 15
Case: 17-2130    Document: 54-2    Page: 15    Filed: 09/13/2017

WAYMO LLC v. UBER TECHS., INC.                                    15

The district court herein did not err in its balance of precedent, and in giving controlling weight to *Kramer* and *Goldman*. We agree with the district court that precedent does not compel arbitration of the case based on the Waymo-Levandowski employment agreements.

CONCLUSION

The question before us is not whether Defendants or Waymo will ultimately prevail in their dispute. The question is whether Waymo should be compelled to arbitrate this dispute in view of the arbitration provision of the employment agreements between Waymo and Levandowski. The district court correctly concluded that arbitration should not be compelled.

The general rule is that a contract applies only to the parties to the contract. While equitable doctrines permit departure from this principle when necessary to avoid inequity, California precedent guides that unless the issues of the complaint are intimately intertwined with the non-party agreement containing an arbitration clause, compulsion to arbitrate is inappropriate.

We have considered all of the Appellants' arguments, and affirm the district court's holding.

**AFFIRMED**