1    [COUNSEL LISTED ON SIGNATURE PAGE]

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11

12   WAYMO LLC,                          Case No. 3:17-cv-00939-WHA

13              Plaintiff,               **DEFENDANTS' MEMORANDA OF**
                                         **LAW IN SUPPORT OF DISPUTED**
14        v.                             **JURY INSTRUCTIONS**

15   UBER TECHNOLOGIES, INC.,            Trial Date: October 10, 2017
     OTTOMOTTO LLC; OTTO TRUCKING
16   LLC,

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

1     Where Uber/Ottomotto ("Uber") differ from Otto Trucking in their responses, this

2   difference is annotated in parentheses. Otherwise, all responses are on behalf of all Defendants.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 1. CLAIMS AND DEFENSES/SUMMARY OF CONTENTIONS

Defendants and Waymo both propose a short summary of the parties' claims and defenses to assist the jury in following the evidence at trial. While Defendants' proposal is accurate and neutral, Waymo's is argumentative and contains several errors.

First, Waymo's proposed instruction inaccurately describes the scope of the alleged trade-secret information at issue. Waymo claims that this is an action "relating to Waymo LLC's self-driving car technology"; proclaims that it is the "owner of information relating to its self-driving car technology, including its custom LIDAR systems that are used to enable the operation of fully self-driving vehicles"; and states that this information "includes" nine separate trade secrets. Waymo's general "information" is not at issue—only the nine specifically asserted trade secrets are.  By telling the jury that it owns other, non-specified information, Waymo gives the impression that the jury should consider this in deciding the case, which it must not. Thus, inclusion of this other information is irrelevant and confusing. Moreover, Defendants object to any instruction that Waymo asserts it is the "owner" of "custom LiDAR systems that are used to enable the operation of fully self-driving vehicles." Some aspects of those systems are undeniably not trade secrets—instead, they may be "general engineering principles in the public domain and part of the intellectual equipment of technical employees." *Winston Research Corp. v. Minn. Mining & Mfg. Co*., 350 F.2d 134, 139 (9th Cir. 1965).

Second, as Defendants have briefed in relation to other instructions herein, a reasonable royalty is not for the jury to decide, and should not be included in the jury instructions.  As Defendants have separately briefed herein, the jury need not be instructed regarding disclosure as a theory of liability, as Waymo has not alleged that Defendants improperly disclosed Waymo's trade secrets.

Third, Defendants propose, in the spirit of balance, that the jury be informed not only that Defendants deny that they have misappropriated any trade secrets, but also that Defendants contest whether any of Waymo's proposed secrets in fact qualify as such.

Finally, Defendants propose that the jury be introduced to the parties in the case, and told that Anthony Levandowski, while a witness, is not a party.  This simple, true statement is

1   essential to prevent inevitable jury confusion, particularly given Levandowski's Fifth Amendment

2   invocation and the fact that he is a former employee of both Google and Uber.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## 2. NUMBER OF WITNESSES

2          Defendants object to the inclusion of this general instruction as improper under the

3   Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases Before The Honorable

4   William Alsup.  Paragraph 2(b) of the Guidelines limits the joint set of proposed instructions to

5   "instructions on *substantive* issues of law," and excludes preliminary, general, and concluding

6   instructions.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### 3. FAILURE TO EXPLAIN OR DENY EVIDENCE

2        Defendants object to the inclusion of this general instruction as improper under the

3   Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases Before The Honorable

4   William Alsup.  Paragraph 2(b) of the Guidelines limits the joint set of proposed instructions to

5   "instructions on *substantive* issues of law," and excludes preliminary, general, and concluding

6   instructions.

7        In addition, this instruction is confusing in light of Anthony Levandowski's Fifth

8   Amendment invocation.  Defendants respectfully submit that the Court should give its Fifth

9   Amendment instruction (Defendants' version of Disputed Jury Instruction #5).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# 4. COMPLIANCE WITH DISCOVERY ORDERS

Defendants complied with the Court's March 31, April 6 and July 3 Orders. (Dkts. 883, 885, 1534, 1591.) Uber has never had in its control any downloaded materials. Uber forensically searched millions of files, documents and emails from every LiDAR server and more than 70 employees. (Dkt. 1534.) Uber allowed Waymo to inspect its entire repository of LiDAR-related design files, source code files, over 380,000 emails and documents, four buildings, and the Uber-issued computers belonging to seven engineers over the course of over 60 hours on twelve separate inspection visits. (*Id.*) Everything Waymo cites in support of its instruction is material related to the Stroz diligence (including the material at Morrison & Foerster), which Uber could not disclose until the Federal Circuit issued its order due to Mr. Levandowski's privilege assertion. Once the Federal Circuit ruled, Uber promptly produced Stroz diligence-related material. (Dkt. 1584-4.) Moreover, the Stroz exhibits were never shared with Uber. (Dkt. 370 ¶ 22.)

Uber also complied with the May 11 Order regarding the LiDAR log concerning communications with Mr. Levandowski. Uber conducted over 170 interviews, reviewed over 25,000 documents and spent over 700 hours preparing the LiDAR log. Although the May 11 Order required only a log of communications "wherein Anthony Levandowski mentioned LiDAR," Uber erred on the side of caution and included references not just to LiDAR but to lasers, lenses, and point clouds, as well as communications where others may have mentioned LiDAR and related concepts to Mr. Levandowski. (Dkt. 712.) Most individuals could not recall communications without the assistance of documents. Uber searched for relevant documents and reviewed them with interviewees. Uber, however, was in the midst of massive ongoing discovery. During the course of that discovery, it identified additional information and supplemented the log as appropriate. (Dkts. 956, 1469.)

In any event, Defendants believe that it would be inappropriate to instruct the jury on issues relating to discovery. The jury will not have the necessary information and background to put discovery issues in the proper context, nor is that relevant to the jury's duties. The proposed

1  instruction would inevitably cause the jury to focus on collateral issues and cause confusion about

2  the real issues in the case.

3        Finally, the conduct described in the instruction does not involve Otto Trucking, so it

4  should not be included at all.

# 5. FIFTH AMENDMENT/ADVERSE INFERENCES

Waymo's proposed instruction attempts to re-litigate an issue that the Court has already decided, and provides inadequate guidance to the Jury on a complicated constitutional question. Defendants respectfully submit that the Court should instead give Defendants' proposed instruction, titled "Fifth Amendment."

After extensive briefing (*e.g.*, Dkts. 819, 821, 822, 897, 898, 900) and a hearing on July 26, 2017, the Court held:

> [W]hat I'm going to tell the jury is that they may—they need not, but they are free to draw an adverse inference that would be adverse to Levandowski. And it's a separate question whether or not it's adverse to any parties in the case, and that's up for them to decide based on all the other evidence in the case.

(7/26/2017 Hr'g Tr. 98:8–99:13.) The Court later continued:

> But I want to be clear, the adverse inference is adverse to him [Levandowski]. It's a separate conceptual issue whether or not it's adverse to Uber. And I think I'm just going to leave that to the good lawyers to argue in your closing arguments. All right. I don't want to reargue any of that, so please don't ask for clarifications.

(7/26/2017 Hr'g Tr. 100:3–8; *see also* Dkt. 1535 at 2 ("the jury will be instructed, if the Fifth Amendment is invoked, that it may, but is not required to, draw inferences adverse to *Levandowski* based on his assertion of his Fifth Amendment privilege. If any such adverse inference is drawn against Levandowski, then it will remain up to the jury to decide, as a separate question and based on all the other evidence in the case, whether the fact inferred is also adverse to one or more parties herein." (emphasis in original).)

This was a carefully considered holding. As Defendants have repeatedly emphasized, it is critical to distinguish between an inference against Uber or Defendants and one against Levandowski himself. (*E.g.*, Dkt. 821; Dkt. 900; 7/26/2017 Hr'g Tr. 80:2–6, 88:11–17, 98:2–20).) This is because it is not fair, under all the circumstances, to conclude that Mr. Levandowski's answers to any particular question would be adverse to Defendants. *E.g.*, *LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997) ("the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the

search for the truth").  In the interest of brevity, Defendants incorporate their prior briefing and authorities cited therein by reference here.  (Dkt. 821, Dkt. 900.)  The Court's order has precedent: Courts have expressly distinguished between an inference adverse to the witness and one adverse to a party, and instructed the jury that they may assume a witnesses' testimony is adverse *to him* in a manner deemed reasonable and supported by the evidence.  *E.g.*, *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 555 (S.D.N.Y. 2011) (drawing an adverse inference against the witnesses but not against the plaintiff); *see also* The Court's Jury Instructions, *Coquina Invs. v. Rothstein & TD Bank, N.A.*, No. 10-60786-Civ-Cooke/Bandstra (S.D. Fla. Jan. 19, 2012), Dkt. 745 at 19–20 (jury instruction distinguishing between adverse inferences to be drawn against various witnesses); Court's Instructions to the Jury, *Sanchez v. Brokop*, No. 04-cv-0134 LCS/RLP (D.N.M. July 22, 2005), Dkt. 158 at 15 (jury instruction stating "you are permitted to assume that his testimony would be unfavorable to him in any manner that you deem reasonable and supported by the evidence").

Waymo's vague instruction undoes the Court's holding by proposing to instruct the jury that they "may, but are not required to, draw adverse inferences based on" Levandowski's "assertion of his Fifth Amendment privileges."  Jury instructions must not be "inadequate to guide the jury's determination," *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983), and Waymo's surely is:  it does not explain what an adverse inference is, who Levandowski is, what the Fifth Amendment is, or—most importantly—who the inference is adverse *to*.  Defendants respectfully submit that the Court should adhere to its order and instruct the jury that it "may, but is not required to, draw inferences adverse to *Levandowski* based on his assertion of his Fifth Amendment privilege," (Dkt. 1535 at 2 (emphasis in original)), an order that Defendants' proposed instruction tracks.  As the Court held, if Uber wishes to argue that the inference should also be adverse to Waymo, or if Waymo wishes to argue that the inference should also be adverse to Uber, the parties are free to do so in closing argument without the thumb on the scale that a jury instruction would provide.  (*See* 7/26/2017 Hr'g Tr. 100:3–8.)

Waymo's proposed instruction also omits key and correct statements of law and fact that will assist the jury in determining what weight, if any, to place on Levandowski's invocation, and

1    to understand what that invocation means—omissions that Defendants' proposed jury instruction

2    corrects.

3           First, Defendants propose to clarify for the jury that Levandowski is "not a party to this

4    case," which will further eliminate the potential for confusion between Levandowski, Waymo,

5    and Uber.  (Joint Proposed Jury Instruction at 11.)  Levandowski has ties to both parties, and thus

6    this simple and nonargumentative statement helps to clear up any confusion about Levandowski's

7    status.

8           Second, as Defendants' proposed instruction states, "Every citizen has a right under our

9    Constitution to assert the Fifth Amendment privilege to avoid furnishing evidence that might be

10   used against him in a later criminal prosecution."  (*Id.*)  This is a correct statement of law: "The

11   Amendment not only protects the individual against being involuntarily called as a witness

12   against himself in a criminal prosecution but also privileges him not to answer official questions

13   put to him in any other proceeding, civil or criminal, formal or informal, where the answers might

14   incriminate him in future criminal proceedings."  *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).

15   This preface also helpfully puts Levandowski's invocation in context as the exercise of a

16   Constitutional right.  Many other courts have similarly instructed the jury of this context.  *E.g.*,

17   *Coquina Invs.*, Dkt. 745 at 19 ("A witness has a constitutional right to decline to answer on the

18   grounds that it may tend to incriminate him."); *Sanchez v. Brokop*, Dkt. 158 at 15 ("Every citizen

19   has a right under our Constitution to assert the Fifth Amendment privilege to avoid furnishing

20   evidence that might be used against him in a later criminal prosecution.").

21          Similarly, Defendants' proposed instruction clarifies that even innocent witnesses may

22   take the Fifth: "There are sometimes reasons that a person who is not guilty of a crime may

23   invoke the Fifth Amendment, and therefore the mere fact that the person invokes the right does

24   not necessarily mean the person is guilty of a crime."  Again, this is a correct statement of law.

25   "The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous

26   circumstances."  *Slochower v. Bd. of Higher Ed. of City of N.Y.*, 350 U.S. 551, 557–58, (1956).

27   "[O]ne of the basic functions of the privilege is to protect innocent men."  *Grunewald v. United*

28   *States*, 353 U.S. 391, 421–22 (1957); *see also Ohio v. Reiner*, 532 U.S. 17, 21 (1991) (same).

1    Instructing the jury that the Amendment protects both the innocent and the guilty is necessary

2    because "Too many, even those who should be better advised, view this privilege as a shelter for

3    wrongdoers. They too readily assume that those who invoke it are either guilty of crime or

4    commit perjury in claiming the privilege." *Ullmann v. United States*, 350 U.S. 422, 426–27

5    (1956).  Defendants' proposal assists the jury by dispelling this common misconception.

6          Defendants also correctly proposes to instruct the jury that Levandowski is refusing to

7    testify "about anything that occurred from the time he started working for Google in 2007 to the

8    present."  (Joint Proposed Jury Instruction at 11.)  This is undeniably correct.  (4/14/2017 A.

9    Levandowski Dep. 85:8–12 ("I'm going to instruct you not to answer in any way about matters

10   that occurred after the date you began employment with Google."); 85:17–86:6 (same

11   instruction); 8/22/2017 A. Levandowski Dep. 193:9–195:10 ("Mr. Levandowski, based on

12   reading your earlier deposition transcript, my understanding is that you plan to invoke your Fifth

13   Amendment rights to virtually every question asked about what happened after you became a

14   Google employee; is that correct? A Yep. … Q So, if I ask you about what you had for breakfast

15   at Google, you're going to invoke your rights? A Yes, that's correct.").)  It also assists the jury in

16   weighing the probative value of Levandowski's invocation, because the fact that he took the Fifth

17   in response to questions about his employment <u>both</u> at Google <u>and</u> at Uber throws into starker

18   relief that the Court may not know what "criminal anxiety" Levandowski is "bringing to bear."

19   Pretrial Conf. Hr'g Tr., *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D.

20   Cal. Apr. 25, 2015), Dkt. No. 5536 at 88:9–19 (Illston, J.); *see also Lionti v. Lloyd's Ins. Co.*, 709

21   F.2d 237, 245 (3d Cir. 1983) (Stern, J., dissenting) (noting that the invocation is without

22   evidential content).

23         Finally, Defendants' proposed instruction cautions the jury that the inference must be

24   "reasonable and supported by the evidence."  Courts require specific corroborating probative

25   evidence of each and every fact on which an inference is sought.  *Baxter v. Palmigiano*, 425 U.S.

26   308, 318 (1976).  As the Ninth Circuit explained, "an adverse inference can be drawn when

27   silence is countered by ***independent evidence*** of the fact being questioned." *Doe ex rel. Rudy-*

28   *Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (emphasis in original); *Sun*

*Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 622 F. Supp. 2d 890, 907 (N.D. Cal. 2009) (adverse inference "cannot be drawn when, for example, silence is the answer to an allegation contained in a complaint").  Numerous other courts have similarly instructed the jury.  *E.g.*, *Coquina Invs.*, Dkt. 745 at 20 ("You can make this inference only if that inference is warranted by the facts surrounding the case, and there is independent, corroborating evidence for the inference."); *Sanchez*, Dkt. 158 at 15 ("you are permitted to assume that his testimony would be unfavorable to him in any manner that you' deem reasonable and supported by the evidence."). Defendants also reserves their  right to object to any particular question as unsupported by corroborating evidence under the procedure that the Court set.  (Dkt. 1535.)

1

## 6. CORPORATE LIABILITY

2       Waymo's proposed Corporate Liability instruction is a non-substantive issue of law that is

3   not appropriate for submission at this stage.  *See* Guidelines for Trial and Final Pretrial

4   Conference in Civil Jury Cases Before the Honorable William Alsup ¶ 2(b).

5       Further, this instruction should only be used when the "scope of authority" is "not in

6   issue."  Ninth Cir. Model Jury Instrs. § 4.2.  The Model Jury Instruction's title—which Waymo

7   modified— makes this limitation clear: "Liability of Corporations—Scope of Authority Not In

8   Issue."  To the extent that Waymo proposes this instruction with an eye to arguing that Anthony

9   Levandowski acted as an agent of Defendants at any time before he became an Uber employee,

10   the scope of authority will very much be at issue in this case.  Thus, the instruction will be

11   inappropriate, as it will confuse the jury to tell them that a corporation is "responsible for the acts

12   of its employees … performed within the scope of authority."  (*Id.*)

13       This instruction is also improper because ordinary principles of agency do not apply in the

14   trade secret context.  As the Ninth Circuit explained in *Droeger v. Welsh Sporting Goods Corp.*,

15   "[l]egal principles"—there, agency principles in the trade secret context—"ought not be applied

16   in a mechanistic manner."  541 F.2d 790, 792 (9th Cir. 1976).  Thus, while a principal generally

17   "is chargeable with knowledge acquired by its agent while that agent was acting within the scope

18   of his authority," that concept does not apply where "the theory of liability requires actual

19   knowledge on the part of the principal," like misappropriation of trade secrets.  *Id.*; *see Silvaco*

20   *Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 229, *as modified on denial of reh'g* (May 27,

21   2010) ("Liability under CUTSA is not dependent on the defendant's 'comprehension' of the trade

22   secret but does require 'knowledge' of it."), *disapproved of on other grounds by Kwikset Corp. v.*

23   *Super. Ct.*, 51 Cal. 4th 310 (2011).  Thus, it was reversible error for the trial court in *Droeger* to

24   instruct the jury that it was "no defense" for a corporation that its agent did not pass along

25   information that he received.  541 F.2d at 792-93.

26       Further, even if this instruction were proper (it is not), the Court would also need to give

27   the jury Model Jury Instructions 4.4 (Agent and Principal—Definition); 4.5 (Agent—Scope of

28

1    Authority Defined); and 4.12 (Principal Sued but Not Agent—Agency or Authority Denied) and

2    4.13 (Adverse Interest Exception).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## 7. TWO OR MORE PARTIES – DIFFERENT LEGAL RIGHTS

2

3          Defendants and Waymo agree on the first paragraph of this instruction, but disagree as to

4   what follows.

5          Defendants object  to Waymo's unnecessary and argumentative second paragraph, which

6   would tell the jury that "Both Ottomotto and Otto Trucking were founded by Anthony

7   Levandowski, who is a former Waymo employee.  Uber has acquired Ottomotto and Mr.

8   Levandowski is currently the managing member of Otto Trucking."  Waymo's proposal adds

9   information about Anthony Levandowski to the model instruction that should be excluded

10  because it is confusing and misleading.  Mr. Levandowski is not a party to this case.  He also is

11  not the only founder of Ottomotto or Otto Trucking.  Waymo's addition incorrectly implies that

12  Ottomotto and Otto Trucking may be alter egos of Mr. Levandowski, which they are not.

13         Defendants propose a simpler and more neutral second paragraph: "Uber acquired

14  Ottomotto.  Uber did not acquire Otto Trucking."  This statement is true, and helps the jury

15  understand the relationship between the three defendants without attempting to influence them.

16

17

18

19

20

21

22

23

24

25

26

27

28

## 8. INTRODUCTION TO VICARIOUS RESPONSIBILITY (UBER)

Waymo's proposed introductory instruction on vicarious liability—which defines the principal/agent relationship, and states that a principal is "responsible for harm caused by the wrongful conduct of its agents while acting within the scope of their authority"— is inappropriate in this case for two reasons.  ***First***, on the facts alleged, Waymo has no theory of vicarious liability as a matter of law.  And ***second***, Waymo has no theory of vicarious liability that would result in any damages case against Defendants, making such a theory doubly inappropriate to present to the jury.

Waymo has never claimed that Defendants' agents used or disclosed the trade secrets that are at issue in this case.  Levandowski was not an agent of Defendants at the time Waymo claims he downloaded the 14,000 files, and there is no evidence that he used or disclosed Waymo trade secret information while acting within the scope of authority granted to him by Defendants. Recognizing this, Waymo belatedly posited that Uber could be liable for trade secret misappropriation if Uber's law firm, Morrison & Foerster, and/or a forensic firm, Stroz Friedberg, came to possess Google trade secret information during the due diligence process related to Uber's acquisition of Ottomotto.  This theory of liability was not pled in the Amended Complaint, and cannot be submitted to the jury because it fails as a matter of law and public policy, as Defendants described in detail in prior briefing and incorporates by reference here.  (*See* Dkt. 824 at 7–8.)

Waymo has identified no case supporting this type of "imputation" liability.  To the contrary, the Ninth Circuit rejects liability where, as here, "the trade secret was not actually communicated to or used by the principal."  *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792-93 (9th Cir. 1976).  There is no evidence in this case that Morrison & Foerster or Stroz Friedberg actually communicated Waymo trade secret information to the Defendants (let alone that Uber exercised pointed conduct intended to secure dominion over any trade secret as required under trade secret law, *see infra*); indeed, all evidence is to the contrary.  More broadly, Waymo's novel "imputation" theory would undermine due diligence processes that are designed to ***prevent*** trade secret misappropriation, and would impede employee mobility by exposing companies to

1   misappropriation liability for taking preventative measures when hiring employees of

2   competitors.

3          Waymo also belatedly posits—for the first time in its proposed joint pretrial order and

4   reply to its motion for continuance—that Uber could be liable for trade secret misappropriation

5   because it acquired Ottomotto and some Ottomotto employees, including Levandowski, still had

6   Google files from when they worked at Google.  This theory of liability was not pled in the

7   Amended Complaint, and for good reason; as a result of the due diligence process, Stroz

8   Friedberg quarantined those files, and thus Uber never acquired or used any of them.  And

9   controlling caselaw, including *Droeger* and *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App.

10  4th 210, 225 (2010), *as modified on denial of reh'g* (May 27, 2010), *disapproved of on other*

11  *grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011), reject the notion that a

12  principal could be liable for trade secret misappropriation by acquisition simply because an agent

13  or employee possessed another company's trade secrets.  *See Silvaco*, 184 Cal. App. 4th at 222-23

14  (distinguishing "acquisition" from "possession" and "receiv[ing]," and holding that liability for

15  trade secret misappropriation by acquisition is not available unless the defendant obtains the trade

16  secret through "pointed conduct intended to secure dominion over the thing"); *Droeger*, 541 F.2d

17  at 792-93 (case law and Restatement authority that a principal generally is chargeable with

18  knowledge acquired by its agent acting in the scope of authority does not apply in the trade secret

19  context; holding it was reversible error for the trial court to instruct the jury that it was "no

20  defense" for a corporation that an agent did not pass along information that he received).

21         Further, "the mere acquisition of a trade secret, as distinguished from a related disclosure

22  or use, will not result in damages and will only be relevant to injunctive relief."  CACI No. 4405

23  Misappropriation by Acquisition, Directions for Use.  And "the jury should only be instructed on

24  matters relevant to damage claims."  *Id.*  The only theory of vicarious responsibility that Waymo

25  has asserted cannot possibly give rise to damages.  When asked "What possible damages could

26  Waymo claim" under this theory of liability, Plaintiff had no answer.  (*See* 7/26/17 Hearing Tr. at

27  39:22-42:9.)

28

1    The Court's recognition that no damages would flow from Waymo's claimed

2  "imputation" liability aligns directly with the Ninth Circuit's observation that "it is the wrongful

3  *use* of the secret that gives rise to the damage." *Droeger*, 541 F.2d at 793 (emphasis added).

4  Absent any allegation or evidence that Defendants' agents used Plaintiff's trade secrets, there is

5  no ground for submitting the issue of Vicarious Responsibility to the jury.

6    Moreover, even if this instruction were proper under the law and the pleadings and facts

7  of this case, Waymo omits instructions required by CACI: "This instruction should be followed

8  by either CACI No. 3703, Legal Relationship Not Disputed, CACI No. 3704, Existence of

9  'Employee' Status Disputed, or CACI No. 3705, Existence of 'Agency' Relationship Disputed."

10 CACI No. 3700.

1

**9. PARTY HAVING POWER TO PRODUCE BETTER EVIDENCE**

2       Defendants object to the inclusion of this general instruction as improper under the

3   Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases Before The Honorable

4   William Alsup.  Paragraph 2(b) of the Guidelines limits the joint set of proposed instructions to

5   "instructions on *substantive* issues of law," and excludes preliminary, general, and concluding

6   instructions.

7       In addition, this instruction is confusing in light of Anthony Levandowski's Fifth

8   Amendment invocation. Defendants respectfully submit that the Court should give their Fifth

9   Amendment instruction ((Defendants' version of Disputed Jury Instruction #5).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 11. MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION

Defendants do not oppose the Court giving CACI No. 4400, and Defendants' proposed version of CACI No. 4400 faithfully tracks the language of the model jury instruction. Waymo's proposed revision to CACI, by contrast, deviates significantly from the model language, and—as its "Claims and Defenses" instruction does—introduces error.

First, Waymo again improperly attempts to instruct the jury that it owns technology that is broader than the claims the jury will have to decide, and thus irrelevant and confusing. For the same reasons Defendants provided in relation to Waymo's proposed "Claims and Defenses" instruction (#1), this unwarranted modification to CACI should not be given. Waymo once again claims that this is an action "relating to Waymo LLC's self-driving car technology," states that it is the "owner of information relating to its self-driving car technology, including its custom LIDAR systems that are used to enable the operation of fully self-driving vehicles"; and claims that this information "includes" nine separate trade secrets. Again, this instruction is bound to confuse the jury, because Waymo's general "information" is not at issue—only the nine specifically asserted trade secrets are. For the same reason, Defendants propose calling the nine asserted trade secrets in this case the "Alleged Trade Secrets," while Waymo proposes simply calling it the "information." Defendants' proposal is less confusing and more precise.

Second, as Defendants noted in relation to the "Claims and Defenses" instruction and elsewhere, Waymo has never claimed "disclosure" as a theory of liability for the jury to decide. CACI specifically identifies the three theories—acquisition, use, and disclosure—as optional, signifying that their inclusion should depend on the needs of the case, and provides the following guidance in 4400's Directions for Use: "To avoid confusion, instruct the jury only on the particular theory of misappropriation applicable under the facts of the case." CACI No. 4400, Directions for Use. Here, only use is truly at issue. Waymo has not alleged that Defendants improperly disclosed Waymo's trade secrets, and as noted elsewhere, has no claims relating to acquisition.

Third, Waymo claims that it seeks "damages," but that is not what the model provides: Waymo should state that Defendants' actions caused it harm or caused Defendants "to be unjustly

1  enriched."  In consideration of Waymo's damages theories, unjust enrichment is not only dictated

2  by the model: it is more accurate in identifying for the jury what it is charged with deciding.

3       Finally, Defendants believe that it is more accurate to refer to "Alleged Trade Secrets"

4  than to refer more generally to just "information."  To do otherwise could invite the jury to

5  overlook the statutory requirements that must be met for information to qualify as a trade secret.

6  As noted in *Silvaco*, "The sine qua non of a trade secret, then, is the plaintiff's possession of

7  information of a type that can, at the possessor's option, be made known to others, or withheld

8  from them, *i.e.*, kept secret.  This is the fundamental difference between a trade secret and a

9  patent. A patent protects an *idea*, i.e., an invention, against appropriation by others.  Trade secret

10  law does not protect ideas as such."  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220

11  (2010), *as modified on denial of reh'g* (May 27, 2010), *disapproved of on other grounds by*

12  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 12. MISAPPROPRIATION OF TRADE SECRETS – ESSENTIAL FACTUAL ELEMENTS

In Waymo's proposed instructions purporting to reflect CACI No. 4401—"the misappropriation of trade secrets—essential factual elements" (emphasis added)—Waymo excludes the last two elements of a California trade secrets claim: causation and remedy.  CACI specifically states that this is improper.  *Even where an element is not contested*, "the instruction should set forth all of the elements and indicate those that are deemed to have been proven by stipulation of the parties.  Omitting uncontested elements may leave the jury with an incomplete understanding of the cause of action and the plaintiff's full burden of proof.  It is better to include all the elements and then indicate the parties have agreed that one or more of them has been established and need not be decided by the jury."  CACI, *Guide for Using Judicial Council of California Civil Jury Instructions*, at p. 2.

Here, of course, those elements *are* contested, making their deletion even less proper.  Defendants contest that Waymo has shown or can show either causation or remedy, as illustrated, for example, in Uber's recent *Daubert* motion to exclude the testimony of Waymo's damages expert.  Moreover, both are essential elements of Waymo's claims.  Under the CUTSA, the jury is required to calculate the amount of harm a plaintiff has suffered or the amount of unjust enrichment had by the defendant.  If there is no proof of either, then the judge is required to calculate a reasonable royalty.  Cal. Civ. Code § 3426.2(b).  These amounts are limited to the unjust enrichment caused by the misappropriation.  *See id.* at § 3426.2(a).  It is fundamentally improper to exclude these essential elements from an instruction on essential elements.  Additionally, the terms "disclosed" and "acquisition" should be deleted from Waymo's proposed jury instructions under CACI No. 4401.  There has been no proof that any defendant received Waymo's alleged trade secrets and then disclosed the same or that Waymo was damaged by acquisition alone.  *See also* defendants' memoranda to no. 19.

1

### 13. "TRADE SECRET" DEFINED – CALIFORNIA LAW

2      There are only a few differences between the parties' proposed versions of CACI No.

3  4402.

4      Waymo again states that "Waymo's information" is at issue, rather than the "Alleged

5  Trade Secrets on its trade secret list" or "claimed trade secrets" as Defendants propose.

6  Defendants believe that it is more accurate to refer to "Alleged Trade Secrets" than to refer more

7  generally to just "information."  To do otherwise could invite the jury to overlook the statutory

8  requirements that must be met for information to qualify as a trade secret.  As noted in *Silvaco*,

9  "The sine qua non of a trade secret, then, is the plaintiff's possession of information of a type that

10  can, at the possessor's option, be made known to others, or withheld from them, i.e., kept secret.

11  This is the fundamental difference between a trade secret and a patent. A patent protects an *idea*,

12  i.e., an invention, against appropriation by others.  Trade secret law does not protect ideas as

13  such." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (2010), *as modified on denial*

14  *of reh'g* (May 27, 2010), *disapproved of on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal.

15  4th 310 (2011).

16      Moreover, Waymo proposes instructing the jury that it may consider whether its trade

17  secrets "were/are" trade secrets.  This is awkward and unnecessary.

18

19

20

21

22

23

24

25

26

27

28

## 14. "TRADE SECRET" DEFINED – GENERALIZED KNOWLEDGE

Defendants' proposed instruction No. 14 is a logical addition to the definition of "Trade Secret" in CACI No. 4402, and is based in large part on the authorities cited in the Sources and Authority listed in CACI No. 4402. The instruction provides that "Generalized knowledge and skill that an employee learned on the job is not a trade secret. Matters of general knowledge in a trade or special knowledge of persons who are skilled in a trade are also not trade secrets." This faithfully states California's public policy favoring employee mobility, as stated in Business & Professions Code section 16600 and case law. *See, e.g.*, *DVD Copy Control Ass'n v. Bunner*, 116 Cal. App. 4th 241, 251 (2002) ("in order to qualify as a trade secret, the information 'must be secret, and must not be of public knowledge or of a general knowledge in the trade or business.'") (citation omitted); *Winston Research Corp. v. Minn.Mining & Mfg. Co.*, 350 F.2d 134, 139 (9th Cir. 1965) ("There was expert testimony that if a technician in the field were asked to design a machine having the time-displacement error achieved by the Mincom machine he would adopt the general approach of reducing the inertia of rotating parts and utilizing a wide band servo system—that this approach was dictated by well known principles of physics. It was therefore not protectible under accepted trade secret doctrine. It was not 'secret,' for it consisted essentially of general engineering principles in the public domain and part of the intellectual equipment of technical employees. Its disclosure could not be treated as betrayal of a confidence placed by Mincom in its technical employees."); *Diodes, Inc. v. Franzen,* 260 Cal. App. 2d 244, 253 (2nd Dist. 1968) (emphasis added ("the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.").

Moreover, as the Court has pointed out,

> You have to prove that those were trade secrets. It's not enough just to prove that they were smart people who all came over, and saved them a year's worth of -- That's going to prove zero -- zero, z-e-r-o, zero --because you have got to prove individual trade secrets were stolen, and then used or acquired; and what the value of those trade secrets were.

1

2

> If something else is, quote, "proprietary information," you lose on that.  So it's not enough for you to just try to say, They saved a year; therefore, we get one year of their development budget.

3

4

(6/29/2017 Hr'g Tr. 98:18–99:14.)  This explanation therefore helps elucidate the contours of

5

what constitutes a trade secret, consistent with the Court's correct comments and case law.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **18. REASONABLE EFFORTS TO PROTECT SECRECY – DECLARING SOMETHING**
2   **AS TRADE SECRET**

3   Defendants propose a short special instruction that provides a necessary supplement to

4   CACI No. 4404 in this case: "Merely declaring that something is confidential or a trade secret is

5   not evidence that the information is the subject of efforts that are reasonable under the

6   circumstances to maintain its secrecy." This short modification to the model instruction will help

7   to draw the boundaries for the jury on what constitutes reasonable measures.

8   Defendants' proposal is a correct statement of law. "Merely declaring that something is

9   a trade secret does not make it so." *Louisiana Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, No.

10  C-12-3433 SC, 2013 WL 3483618, at *2 (N.D. Cal. July 8, 2013). If a party simply recites a

11  "usual incantation" that information is "not publicly available," that simple declaration is

12  insufficient to raise an issue for the jury on reasonable efforts to preserve information's secrecy:

13  "Declaring that something is confidential and a trade secret is not the same thing as providing

14  evidence that the information (a) "is not commonly known by or available to the public," (b)

15  "[d]erives economic value ... from not being generally known," and (c) "[i]s the subject of efforts

16  that are reasonable under the circumstances to maintain its secrecy." *EarthCam, Inc. v. Oxblue*

17  *Corp.*, No. 15-11893, 2017 WL 3188453, at *8 (11th Cir. July 27, 2017) (citing statute).

18  Similarly, a purported trade secret owner cannot meet its burden merely by showing that

19  the alleged proprietary information was "labeled 'secret' or 'confidential' because such labels,

20  without more, 'do not establish anything.'" *Pollara v. Radiant Logistics Inc.*, No. CV 12-344

21  GAF (JEMX), 2014 WL 12585781, at *1 (C.D. Cal. June 6, 2014) (citing *Thompson v. Impaxx*,

22  113 Cal. App. 4th 1425, 1430 (2003)); *see also PSC Indus. Outsourcing, LP v. Kodysz*, No. 1:13-

23  CV-0964, 2013 WL 3354452, at *3 (E.D. Cal. July 3, 2013) ("what is or is not a 'trade secret' is

24  question of fact, not merely a matter of labeling"). Taking "ceremonial measures" by instructing

25  employees to keep "everything" confidential is insufficient to establish that Waymo took

26  reasonable measures to preserve its alleged material's secrecy. *Hertz v. Luzenac Am., Inc.*, No.

27  CIV. 04CV01961LTBCBS, 2006 WL 1794736, at *2 (D. Colo. June 27, 2006).

28

1

## 19. MISAPPROPRIATION BY ACQUISITION – CALIFORNIA LAW

2          The Court should not instruct the jury on misappropriation by acquisition.  Waymo has

3  not presented a viable theory of damages relevant to the Defendants' alleged acquisition of its

4  trade secrets.  When a plaintiff has not provided evidence of damages tied specifically to

5  acquisition, the Court should not instruct the jury on this form of misappropriation:

6          Civil Code section 3426.1(b)(1) defines "misappropriation" as improper
           "[a]cquisition" of a trade secret, and subsection (b)(2) defines it as improper
7          "[d]isclosure or use" of a trade secret.  In some cases, the mere acquisition of a
           trade secret, as distinguished from a related disclosure or use, will not result in
8          damages and will only be relevant to injunctive relief.  **Because generally the
           jury should only be instructed on matters relevant to damage claims, this**
9          **instruction should not be given unless there is evidence that the acquisition**
           **resulted in damages, other than damages from related disclosure or use.**
10

11  CACI No. 4405 Misappropriation by Acquisition, Directions for Use (emphasis added).  The

12  directions for use from CACI align with the Ninth Circuit's observation that "it is the wrongful

13  *use* of the secret that gives rise to the damage."  *Droeger v. Welsh Sporting Goods Corp.*, 541

14  F.2d 790, 793 (9th Cir. 1976).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 20. PASSIVE OR INADVERTENT RECEIPT

If the Court is inclined to instruct on acquisition, Defendants propose modifying CACI No. 4405 to instruct the jury that as a matter of law a defendant cannot be liable for misappropriation by acquisition for passively or inadvertently receiving or coming into possession of a trade secret.  Rather, the defendant must engage in pointed conduct intended to secure dominion over the trade secret.  This language comes directly from *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 222-23 (2010), *as modified on denial of reh'g* (May 27, 2010), *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) (citations omitted):

> To acquire a thing is, most broadly, to "receive" or "come into possession of" it. But the term implies more than passive reception; it implies ***pointed conduct intended to secure dominion over the thing***, i.e., "[t]o gain, obtain, or get as one's own, to gain the ownership of (by one's own exertions or qualities)."
> One does not ordinarily "acquire" a thing inadvertently; the term implies conduct directed to that objective. The choice of that term over "receive" suggests that ***inadvertently coming into possession*** of a trade secret will not constitute acquisition. Thus one who ***passively receives*** a trade secret, but neither discloses nor uses it, would ***not*** be guilty of misappropriation.

*Silvaco* is binding and, indeed, CACI No. 4405 relies on *Silvaco* as authority for the instruction, expressly quoting *Silvaco* for the proposition that a defendant cannot be liable for passively or inadvertently receiving or coming into possession of a trade secret as a matter of law.  *See also* CACI No. 4405, *Sources and Authority* (citing and quoting *Silvaco*).  Defendants' proposed language is necessary to ensure that the jury does not base any finding of liability on grounds that are not available as a matter of law now that it has become clear that Waymo intends to proceed to trial on its shifting theories of liability based on imputation and *respondeat superior,* and argue to the jury that Defendants should be liable not because they actually used or disclosed but because their agents merely received or came into possession of purported trade secrets in the due diligence process.

1

## 21. MISAPPROPRIATION BY USE

2          Uber does not oppose giving a version of CACI No. 4407, and has proposed its own

3   version that closely tracks the model instruction.  Uber objects to Waymo's proposed instruction,

4   however, which states that Uber misappropriated trade secret if it "knew or had reason to know

5   that its knowledge of Waymo's trade secrets came from or through a <u>third party or other</u>

6   <u>defendant,</u> and that <u>the third party or other defendant</u> had previously acquired the trade secrets by

7   improper means."  (emphasis added)  As reflected in Uber's proposed version, this vague phrase

8   should be replaced with "Anthony Levandowski."  Waymo is proceeding to trial on the theory

9   that Mr. Levandowski provided trade secrets to defendants through files that he

10  downloaded.  (While Waymo originally accused two additional Uber employees in its Complaint,

11  it waived its claims regarding those two individuals.  (6/7/17 Hr'g Tr. at 14:13–19).)  Waymo

12  does not allege that any other former Waymo employees downloaded or stole materials from

13  Waymo.  Uber likewise objects to the inclusion of the optional #3 and #4 in Waymo's proposed

14  instruction, which do not state theories that Waymo has pursued thus far in this case.  The jury

15  instructions should conform to the proof, and Waymo should not be permitted to introduce new,

16  unpleaded, unpursued theories of liability at trial.

17          In addition, Otto Trucking should not be included in this instruction, because Waymo does

18  not contend that Otto Trucking directly used Waymo's trade secrets without Waymo's

19  consent.  Waymo's only theory of liability as to Otto Trucking is indirect liability, as Waymo has

20  no evidence of use.  *See* Waymo's Opposition to Defendants' Motion for Summary Judgment,

21  Dkt. 1526-4 at 19-25.

22

23

24

25

26

27

28

1

## 22. DIFFERING PRODUCTS

2   Waymo's proposed instruction is unnecessary and likely to lead to confusion.  The other

3 instructions thoroughly and accurately describe misappropriation.  This proposed instruction

4 would introduce a new, undefined term – "product" – that is not properly part of the analysis.

5 The instruction does not come from CACI or any other jury instruction form.  Further, none of the

6 cases cited as support are 1) not binding authority, or 2) suggest that this definition should be

7 submitted to a jury.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## 23. INEVITABLE DISCLOSURE

2

Defendants' proposed instruction No. 23 accurately states California's emphatic rejection

3

of the doctrine of inevitable disclosure: "The doctrine of inevitable disclosure is not the law in

4

California." *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1277 (2009); *Whyte v. Schlage*

5

*Lock Co.*, 101 Cal. App. 4th 1443, 1463 (2002) ("Lest there be any doubt about our holding, our

6

rejection of the inevitable disclosure doctrine is complete."). The DTSA has also rejected the

7

doctrine of inevitable disclose. *See* 18 U.S.C. § 1836(b)(3)(A)(i) (barring an injunction under the

8

DTSA on an inevitable disclosure theory).

9

Defendants' proposed instruction first states: "To find misappropriation by use you must

10

find that Uber, Ottomotto, and Otto Trucking actually used the claimed trade secret." That is the

11

law: "A trade secrets plaintiff must show an ***actual use*** or an actual threat" of "imminent misuse"

12

of trade secrets. *FLIR Sys.*, 174 Cal. App. 4th at 1277, 1279; *accord Bayer Corp. v. Roche*

13

*Molecular Sys., Inc.*, 72 F. Supp. 2d 1111, 1112 (N.D. Cal. 1999) (Alsup, J.) ("The theory of

14

'inevitable disclosure' is not the law in California and, at trial, plaintiff will have to demonstrate

15

actual use or disclosure, or actual threat thereof."). And it is why "one who passively receives a

16

trade secret, but neither discloses nor uses it, would not be guilty of misappropriation." *Silvaco*

17

*Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 222-23 (2010), *as modified on denial of reh'g*

18

(May 27, 2010) *disapproved of on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310

19

(2011).

20

Defendants' proposed instruction next states: "It is not enough for Waymo to show that

21

their employees would inevitably use the claimed trade secret in their work for Uber." That too is

22

the law: Neither "[m]ere possession of trade secrets by a departing employee," nor "speculation

23

that a departing employee may misappropriate and use a trade secret in a startup business" can

24

establish misappropriation or actual damages. *FLIR Sys.*, 174 Cal. App. 4th at 1277, 1279.

25

Indeed, filing or pursuing trade secret claims based on inevitable disclosure arguments amounts to

26

subjective bad faith. *Id.* at 1278 ("Appellants suspected that trade secrets would be

27

misappropriated and claim that a reasonable suspicion is evidence of good faith. The trial court

28

1   did not credit this theory, instead finding that appellants' reasons for bringing and maintaining the

2   action were 'inevitable disclosure' arguments.").

3         The final sentence in Defendants' proposed instruction—"Waymo must show that Uber,

4   Ottomotto, and Otto Trucking directly exploited Waymo's claimed trade secret for their own

5   advantage"—is likewise the law in California.  Under *Silvaco*, a defendant cannot be liable for

6   trade secret misappropriation unless the defendant "directly exploits it for his own advantage" or

7   engages in "pointed conduct intended to secure dominion over the thing."  184 Cal. App. 4th at

8   223-24.  Thus, even under an acquisition theory of trade secret misappropriation liability, a

9   defendant "who passively receives a trade secret, but neither discloses nor uses it," can be liable

10  for misappropriation.  *Id.* at 223.

11        Defendants' proposed instruction on inevitable disclosure is necessary as a result of

12  Waymo's shifting theories of trade secret liability, particularly now that it has become clear that

13  Waymo intends to ask the jury to impute third parties' acquisition of Waymo's putative trade

14  secrets, including by former employees while working at Google, to Defendants.  Permitting

15  Waymo to argue this theory of trade secret liability—and the jury to impose liability in this

16  context—would erroneously create an end-run around CUTSA's and DTSA's rejection of the

17  inevitable disclosure doctrine.

18

19

20

21

22

23

24

25

26

27

28

1

## 24. MISAPPROPRIATION BY DISCLOSURE – CALIFORNIA LAW

2         This instruction is improper because misappropriation by disclosure is not an allegation in

3   this case.  When a plaintiff has not provided evidence of damages tied specifically to disclosure,

4   the Court should not instruct the jury on this form of misappropriation:

5         Civil Code section 3426.1(b)(1) defines "misappropriation" as improper

6         "[a]cquisition" of a trade secret, and subsection (b)(2) defines it as improper
      "[d]isclosure or use" of a trade secret.  In some cases, the mere acquisition of a

7         trade secret, as distinguished from a related disclosure or use, will not result in
      damages and will only be relevant to injunctive relief.  **Because generally the**

8         **jury should only be instructed on matters relevant to damage claims, this**
      **instruction should not be given unless there is evidence that the acquisition**

9         **resulted in damages, other than damages from related disclosure or use.**

10

11  CACI No. 4405 Misappropriation by Acquisition, Directions for Use (emphasis added).  The jury

12  instructions should conform to the proof, and Waymo should not be permitted to introduce new,

13  unpleaded, unpursued theories of liability at trial.

14        Finally, should the Court be inclined to give a version of this instruction, it should strike

15  the options in the model that do not conform to the proof.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## 26. EMPLOYEE MOBILITY

2          Defendants' proposed instruction accurately states California's well known public policy

3 favoring employee mobility, as stated in Business & Professions Code Section 16600 and related

4 case law.  This Court has addressed this very issue in *Bayer Corp. v. Roche Molecular Sys.*, 72 F.

5 Supp. 2d 1111, 1119 (N.D. Cal. 1999) ("California public policy favors employee mobility and

6 freedom."); *id.* at 1120 ("In sum, the Court holds that California trade-secrets law does not

7 recognize the theory of inevitable disclosure; indeed, such a rule would run counter to the strong

8 public policy in California favoring employee mobility.")  The landmark case of *Whyte v. Schlage*

9 *Lock Co.* also discussed this issue at length, explaining:

10
> "Business and Professions Code section 16600 generally prohibits covenants not
11 to compete, and California public policy strongly favors employee mobility.
> (*Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 900,
12 [72 Cal.Rptr.2d 73].) Business and Professions Code section 16600 protects a
> person's right to "follow any of the common occupations of life" (*Continental Car-*
13 *Na-Var Corp. v. Moseley* (1944) 24 Cal.2d 104, 110, 148 P.2d 9) and to pursue the
> "business or profession he may choose'" (*American Credit Indemnity Co. v. Sacks*
14 (1989) 213 Cal.App.3d 622, 633, [262 Cal.Rptr. 92], italics omitted)."

15
16 101 Cal. App. 4th 1443, 1462 (2002).

17          The jury should be instructed on this fundamental aspect of California law to ensure that

18 the jury takes it into account in deliberations.

19
20
21
22
23
24
25
26
27
28

1
2

**27. MISAPPROPRIATION OF TRADE SECRETS—INTRODUCTION TO FEDERAL LAW**

3       This Instruction and Instructions 28, 29, 30, and 31 are not necessary and could confuse

4   the jury.  Including instructions that are different for state and federal law is misleading in

5   suggesting that the two causes of action have different elements.  In truth, the federal and state

6   statutes are nearly identical.  The only meaningful differences are the federal requirement of a

7   jurisdictional hook and the date of enactment.

8       DTSA and CUTSA are nearly identical.  *See Waymo LLC v. Uber Techs., Inc.*, No. C 17-

9   00939 WHA, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017) ("Waymo brings

10  misappropriation claims under the California Uniform Trade Secrets Act and the federal Defend

11  Trade Secrets Act, both of which offer essentially the same definitions for our purposes.");

12  *Veronica Foods Co. v. Ecklin*, No. 16-cv-07223, 2017 WL 2806706, at *13 (N.D. Cal. June 29,

13  2017) ("Due to the overlap between the statutes, several courts have addressed the DTSA claims

14  in conjunction with claims under the CUTSA and other states' versions of the Uniform Trade

15  Secrets Act."); *Kuryakyn Holdings, LLC v. Ciro, LLC*, 242 F. Supp. 3d 789 (W.D. Wis. 2017)

16  ("DTSA gives rise to a federal cause of action, but the parties agree that substantively the UTSA

17  and DTSA are 'essentially the same,'…and that courts may look to the state UTSA when

18  interpreting the DTSA"); *Source Prod. & Equip. Co. v. Schehr*, No. CV 16-17528, 2017 WL

19  3721543, at *2 (E.D. La. Aug. 29, 2017) ("Moreover, both the House and Senate committee

20  reports suggest that the DTSA largely conforms with state trade secrets law.").  Both houses of

21  Congress expressly indicated that they sought to track the UTSA when defining the elements of

22  trade secret theft:

23          First, ''misappropriation'' is defined identically in all relevant respects to the
            definition of misappropriation in § 1(2) of the UTSA. The Committee intentionally
            used this established definition to make clear that this Act is not intended to alter
24          the balance of current trade secret law or alter specific court decisions.

25          Second, the subsection defines ''improper means.'' The definition contained in
            subparagraph (A) is identical to the definition in § 1(1) of the UTSA and includes
26          theft, bribery, misrepresentation, breach, or inducement of a breach of a duty to
            maintain secrecy, or espionage though electronic or other means. Subparagraph
27          (B) serves to clarify that reverse engineering and independent derivation of the
            trade secret do not constitute improper means.

28

1   H.R. Rep. No. 114-529 at 14 (2106); S. Rep. 114-220 at 10 (2106).

2       Furthermore, the DTSA is clear that it does not preempt or displace CUTSA. 18 U.S.C. §

3   1838 ("Except as provided in section 1833(b), this chapter shall not be construed to preempt or

4   displace any other remedies, whether civil or criminal, provided by United States Federal, State,

5   commonwealth, possession, or territory law for the misappropriation of a trade secret, or to affect

6   the otherwise lawful disclosure of information by any Government employee under section 552 of

7   title 5 (commonly known as the Freedom of Information Act).")  Accordingly, charging the jury

8   on the elements of misappropriation can only lead to confusion and conflicting decisions.

9       One provision where Federal law does add an additional requirement is jurisdiction.  The

10  DTSA only applies "if the trade secret is related to a product or service used in, or intended for

11  use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).  The Court should instruct the

12  jury on this added element and define "interstate commerce" consistent with the definition

13  already provided by CACI: "'Interstate commerce' is commercial activity that crosses more than

14  one country or state, such as the movement of goods from one state to another." *See* CACI No.

15  2900, FELA – Essential Factual Elements.

16      The second area where the DTSA diverges is its start date.  The statute applies only to

17  claims for acts of misappropriation that occurred after its date of enactment, May 11, 2016. *See*

18  *Avago Techs. U.S. Inc. v. Nanoprecision Prods., Inc.*, No. 16-cv-03737-JCS, 2017 WL 412524, at

19  *8 (N.D. Cal. Jan. 31, 2017)("The DTSA applies to 'any misappropriation of a trade secret ... for

20  which any act occurs on or after the date of the  enactment of [the] Act." (quoting Defend Trade

21  Secrets Act of 2016, PL 114-153, May 11, 2016, 130 Stat. 376.  The date of enactment was May

22  11, 2016.)).  Defendants' proposed instruction accurately states this point of law.

23      Waymo's proposed instruction and subsequent instructions that re-instruct the jury on all

24  the identical elements of the federal claim are confusing and could lead to an inconsistent

25  verdict.  Given DTSA's clear mandate not to preempt or displace state remedies, and Congress's

26  clear guidance that it sought to parallel and not displace state law, the Court should only instruct

27  the jury on the CUTSA cause of action other than the necessary federal jurisdictional element. It

28

1    also fails to instruct the jury that to find liability on the federal claim, acts of misappropriation

2    must have occurred, as to each trade secret for which liability is found, after May 11, 2016.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**28. TRADE SECRET DEFINED – FEDERAL LAW**

2      This instruction is not necessary and could confuse the jury.  Including instructions that

3   are different for state and federal law is misleading in suggesting that the two causes of action are

4   distinct and each could be the basis for damages, when that is not the case.

5      DTSA and CUTSA are substantively identical in all respects.  The DTSA is clear that it

6   does not preempt or displace CUTSA.  18 U.S.C. § 1838 ("Except as provided in section 1833(b),

7   this chapter shall not be construed to preempt or displace any other remedies, whether civil or

8   criminal, provided by United States Federal, State, commonwealth, possession, or territory law

9   for the misappropriation of a trade secret, or to affect the otherwise lawful disclosure of

10   information by any Government employee under section 552 of title 5 (commonly known as the

11   Freedom of Information Act).")

12      Waymo's proposed instruction is confusing and could lead to an inconsistent verdict.

13   Given DTSA's clear mandate not to preempt or displace state remedies and the confusion that an

14   instruction that implicitly displaces California law likely will cause, the Court should only

15   instruct the jury on the CUTSA cause of action.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## 29. OWNERSHIP DEFINED – FEDERAL LAW

2

3        This instruction is not necessary and could confuse the jury.  Including instructions that

4   are different for state and federal law is misleading in suggesting that the two causes of action are

5   distinct and each could be the basis for damages, when that is not the case.

6        DTSA and CUTSA are substantively identical in all respects.  The DTSA is clear that it

7   does not preempt or displace CUTSA.  18 U.S.C. § 1838 ("Except as provided in section 1833(b),

8   this chapter shall not be construed to preempt or displace any other remedies, whether civil or

9   criminal, provided by United States Federal, State, commonwealth, possession, or territory law

10   for the misappropriation of a trade secret, or to affect the otherwise lawful disclosure of

11   information by any Government employee under section 552 of title 5 (commonly known as the

12   Freedom of Information Act).")

13        Waymo's proposed instruction is confusing and could lead to an inconsistent verdict.

14   Given DTSA's clear mandate not to preempt or displace state remedies and the confusion that an

15   instruction that implicitly displaces California law likely will cause, the Court should only

16   instruct the jury on the CUTSA cause of action.

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## 30. MISAPPROPRIATION DEFINED – FEDERAL LAW

3

      This instruction is not necessary and could confuse the jury.  Including instructions that

4

are different for state and federal law is misleading in suggesting that the two causes of action are

5

distinct and each could be the basis for damages, when that is not the case.

6

      DTSA and CUTSA are substantively identical in all respects.  In this particular instance,

7

however, there is a potential conflict with respect to the different definition of misappropriation.

8

The DTSA is clear that it does not preempt or displace CUTSA.  18 U.S.C. § 1838 ("Except as

9

provided in section 1833(b), this chapter shall not be construed to preempt or displace any other

10

remedies, whether civil or criminal, provided by United States Federal, State, commonwealth,

11

possession, or territory law for the misappropriation of a trade secret, or to affect the otherwise

12

lawful disclosure of information by any Government employee under section 552 of title 5

13

(commonly known as the Freedom of Information Act).")

14

      Waymo's  proposed instruction is confusing and could lead to an inconsistent verdict.

15

Given DTSA's clear mandate not to preempt or displace state remedies and the confusion that an

16

instruction that implicitly displaces California law likely will cause, the Court should only

17

instruct the jury on the CUTSA cause of action.

18

19

20

21

22

23

24

25

26

27

28

1

## 31. IMPROPER MEANS DEFINED – FEDERAL LAW

2      This instruction is not necessary and could confuse the jury.  Including instructions that

3  are different for state and federal law is misleading in suggesting that the two causes of action are

4  distinct and each could be the basis for damages, when that is not the case.

5      DTSA and CUTSA are substantively identical in all respects.  In this particular instance,

6  however, there is a potential conflict with respect to the differing definition of "improper means."

7  The DTSA is clear that it does not preempt or displace CUTSA.  18 U.S.C. § 1838 ("Except as

8  provided in section 1833(b), this chapter shall not be construed to preempt or displace any other

9  remedies, whether civil or criminal, provided by United States Federal, State, commonwealth,

10 possession, or territory law for the misappropriation of a trade secret, or to affect the otherwise

11 lawful disclosure of information by any Government employee under section 552 of title 5

12 (commonly known as the Freedom of Information Act).")

13     Waymo's  proposed instruction is confusing and could lead to an inconsistent verdict.

14 Given DTSA's clear mandate not to preempt or displace state remedies and the confusion that an

15 instruction that implicitly displaces California law likely will cause, the Court should only

16 instruct the jury on the CUTSA cause of action.

17

18

19

20

21

22

23

24

25

26

27

28

1

## 32. DUTY TO EMPLOYER

2     Waymo's proposed instruction is unnecessary, lacks support, and is an improper attempt

3 to get around the fact that Waymo waived reliance on Anthony Levandowski's employment

4 agreements in this case. (4/27/2017 Hr'g Tr. 5:4–24.)  The proposed instruction is unnecessary

5 because it is irrelevant.  An employee's duty, if any, to an employer is not the basis for a trade

6 secret claim—particularly when the former employee is not a party to this suit.  The fact that the

7 instruction is not derived from any set of model jury instructions further demonstrates the

8 instruction is unnecessary.

9     The proposed instruction lacks legal support because the cited case did not involve a claim

10 for trade secret misappropriation.  Instead, the plaintiff in *Blackbird Technologies* sought a

11 preliminary injunction on its breach of duty of loyalty and breach of contract claims.  *See*

12 *Blackbird Techs., Inc. v. Joshi*, No. 5:15-cv-04272-EJD, 2015 WL 5818067, at *4 (N.D. Cal. Oct.

13 6, 2015).  Furthermore, nothing in the case states that an employee has a duty not to use or

14 disclose trade secrets acquired during the course of his or her employment that survives the

15 termination of the employment relationship.  This case, the only cited legal authority provided by

16 Waymo, is irrelevant to the issues in this case.

17     Lastly, to avoid arbitration, Waymo waived any reliance on Anthony Levandowski's

18 employment agreements in this case.  (4/27/2017 Hr'g Tr. 5:4–24.)  It is apparent, though, that

19 Waymo intends to use this instruction to get around that waiver and argue that Anthony

20 Levandowski owed it a duty of loyalty.  The Court should not permit Waymo to use irrelevant

21 case law to provide an unnecessary jury instruction so it can get around its previous waiver

22 regarding Levandowski's employment agreements.

23

24

25

26

27

28

1

## 33. COMBINATIONS AS TRADE SECRETS

2          This instruction is unnecessary.  It is not based on a model instruction and trade secrets are

3   already defined in prior instructions.  Additionally, the cases that Plaintiff cites do not support

4   these broad and vague statements that would only serve to confuse the issues.  For example,

5   *Verigy* was in the context of a preliminary injunction.  Additionally, the discussion of the

6   combination trade secret is so heavily redacted as to make an understanding or analysis of it very

7   difficult.  *Verigy US, Inc. v. Mayder*, No. C-07-04330 RMW, 2008 WL 564634, at *6 (N.D. Cal.

8   Feb. 29, 2008) ("Here, Verigy has shown for purposes of a preliminary injunction, that the

9   combination of technical items comprising [Redacted] on a single chip was not generally known,

10  The [Redacted] did not disclose these items in combination in sufficient detail to produce the

11  [Redacted]" (alterations in original).), *subsequent determination* 2008 WL 2128145 (N.D. Cal

12  May 20, 2008)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 34. WILLFUL AND MALICIOUS MISAPPROPRIATION OF TRADE SECRETS

CACI No. 4411 is very clear about the practical application and purpose of punitive damages. Waymo's version of CACI No. 4411, however, is not. Indeed, Waymo's version avoids any reference to punitive damages at all. Specifically, 1) Waymo redrafted the first sentence of CACI No. 4411 by removing the concept of causation and bootstrapping federal law into the instruction; 2) Waymo deleted the instruction which explains the purpose of punitive damages; and 3) Waymo left out the fact that the judge—not the jury—determines the amount of any punitive damages in California. These revisions fundamentally alter the jury's understanding of the law and what they are being asked to do.

Waymo was forced to remove any language referencing who decides the amount of punitive damages because Waymo wants to comingle federal and state law into a single instruction. That approach does a disservice to both laws. California law requires the court to determine the amount of any punitive damages awarded. But, under federal law, the jury may award punitive damages not to exceed twice the amount of compensatory damages. This important distinction is absent from Waymo's proposal.

As with many of Waymo's proposals that ignore the differences between state and federal law, this instruction does not assist the jury or the court. Defendants propose that the jury be charged with CACI No. 4411 as it is written.

**35. TORT LIABILITY ASSERTED AGAINST PRINCIPAL—ESSENTIAL FACTUAL ELEMENTS (UBER)**

Waymo's proposed instruction on agent-based liability should be rejected for much the same reasons as its proposed introductory instruction on vicarious liability should be rejected: Waymo has no theory of vicarious liability as a matter of law, and no damages from any vicarious liability theory even if one existed. Uber incorporates those objections by reference. (*See supra,* Uber's objections to Introduction to Vicarious Responsibility.)

As noted above, "the jury should only be instructed on matters relevant to damage claims." CACI No. 4405 Misappropriation by Acquisition, Directions for Use. The Ninth Circuit has made clear that "it is the wrongful ***use*** of the secret that gives rise to the damage." *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 793 (9th Cir. 1976) (emphasis added).

The only theory Waymo has advanced regarding Defendants' agents is one of imputed acquisition. As discussed at length in prior briefing, and in relation to other proposed jury instructions here, this theory has no basis in law. (*See* Dkt. 824.) In the trade secret context, there is no presumption that an agent's knowledge or acquisition can be imputed to a principal; rather, there must be a showing of actual communication of the trade secret information to the principal. *See Droeger*, 541 F.2d at 792–93 (9th Cir. 1976); *see also Joshua David Mellberg, LLC v. Will*, No. CV-1402025 TUC CKJ (CRP), 2016 WL 4592181, at *13 n.2 (D. Ariz. Jan. 22, 2016) (citing *Droeger* and declining to impute knowledge of improper acquisition under Arizona's Uniform Trade Secret Act, which defines misappropriation by acquisition the same as CUTSA), *report and recommendation adopted,* 2016 WL 944958 (D. Ariz. Mar. 14, 2016).

There also would be no basis for awarding damages under Waymo's novel imputation theory, because Waymo has no damages flowing from any alleged acquisition of trade secrets by Defendants' agents. (*See* 7/26/17 Hearing Tr. at 39:22-42:9.) As Uber noted in relation to other jury instructions, because liability could not give rise to damages, the requested jury instruction is inappropriate and this issue should not be submitted to the jury. *See* CACI No. 4405 Misappropriation by Acquisition, Directions for Use.

1

2

### 35. TORT LIABILITY ASSERTED AGAINST PRINCIPAL—ESSENTIAL FACTUAL ELEMENTS (OTTO TRUCKING)

3   Otto Trucking's proposed instruction tracks the language of the CACI jury instruction for

4   tort liability asserted against a principal.  This instruction should be given as to Otto Trucking

5   because Waymo alleges that Otto Trucking is vicariously liable for Mr. Levandowski's alleged

6   theft of trade secrets.  To prevail, Waymo must show that Mr. Levandowski was Otto Trucking's

7   agent during the time of the alleged misappropriation.  *See NetApp v. Nimble*, 41 F.Supp.3d 816,

8   835 (N.D. Cal. 2014).  It must also show that Mr. Levandowski's actions were within the scope of

9   his agency as Executive Chairman and Managing Member of Otto Trucking; it cannot simply

10   state that Otto Trucking can be liable for Mr. Levandowski's conduct without explaining the

11   elements it must show in order to do so.  Otto Trucking's instruction is also limited to Mr.

12   Levandowski and no other potential agents or individuals as Waymo's allegations regarding Otto

13   Trucking's liability are based only on the conduct of Mr. Levandowski.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**36.  EXISTENCE OF "AGENCY" RELATIONSHIP DISPUTED (OTTO TRUCKING)**

The proposed instruction tracks the language of CACI jury instructions explain the elements that Waymo must show requirements to establish that Mr. Levandowski was Waymo's agent. Waymo alleges that Otto Trucking is vicariously liable for the conduct of Mr. Levandowski, however, these acts occurred before Otto Trucking existed Defendant Otto Trucking's Motion for Summary Judgment at 20; Defendant Otto Trucking's Reply in Support of Motion for Summary Judgment at 8-9.  This instruction seeks to clarify that to be Otto Trucking's agent, Otto Trucking must have given Mr. Levandowski authority to act on its behalf at the time the acts took place.  *He Nam You v. Japan*, 150 F.Supp.3d 1140, 1150 (N.D. Cal. 2015) (corporate entities not liable in a reverse veil piercing case, noting and taking judicial notice that the corporations did not even exist at the time of the misconduct).  In addition, *Boling v. Pub. Employment Relations Bd.*, 10 Cal. App. 5th 853, 887, 216 Cal. Rptr. 3d 757, 787 (Ct. App. 2017), reh'g denied (May 1, 2017) held that ""Actual" authority is (1) the authority the principal intentionally gives the agent, or (2) the authority the principal intentionally or negligently allows the agent to believe he possesses."  Otto Trucking's instruction is also limited to Mr. Levandowski and no other potential agents or individuals as Waymo's allegations regarding Otto Trucking's liability are based only on the conduct of Mr. Levandowski.

1

## 37. SCOPE OF EMPLOYMENT (UBER)

2      For the reasons explained in relation to Disputed Jury Instructions # 6, 8, 35, 36, and 38,

3  Uber believes scope of employment is outside the scope of the trial.  Specifically, Waymo's only

4  theory of misappropriation that includes damages, and therefore only theory that should go to the

5  jury, is misappropriation by use by Uber/Ottomotto.  See supra, Instructions 19 and 21.  The

6  Instruction under misappropriation by use (Instruction # 21), does not turn on whether anyone

7  was acting within the scope of their employment.  The question is whether at the time of use,

8  Uber/Ottomotto had either improperly acquired the alleged trade secrets or knew or had reason to

9  know that it obtained them from Anthony Levandowski, who it knew had improperly acquired

10  them.   Whether that third party was acting as their employee is simply irrelevant to the

11  inquiry.  However, should the Court instruct on agency, Uber does not object to the inclusion of

12  this instruction for completeness.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 37. SCOPE OF EMPLOYMENT (OTTO TRUCKING)

These are the CACI instructions that explain the elements of scope of employment. Waymo alleges that the "continuing harm" of the alleged misappropriation makes Otto Trucking vicariously liable after Otto Trucking came into existence.  Plaintiff's Opposition to Defendants' Motion for Summary Judgment at 22.  Waymo must show that the alleged misappropriation of trade secrets was reasonably related to the kinds of tasks Mr. Levandowski would have performed as an executive chairman and Managing Member and that the alleged misappropriation was foreseeable in light of Otto Trucking's business as a holding company to own trucks. *Halliburton Energy Services, Inc. v. Department of Transportation*, 220 Cal.App.4th 87, 94 (2013)(this was taken from the CACI Sources and Authority);*Language Line Servs., Inc. v. Language Servs. Associates*, LLC, No. C-10-02605 JW, 2010 WL 2764714 at * 3 (N. D. cal. 2010) (quoting *Yamaguchi v. Harnsmut*, 106 Cal.App.4th 472, 481 (2003).  Otto Trucking's instruction is also limited to Mr. Levandowski and no other potential agents or individuals as Waymo's allegations regarding Otto Trucking's liability are based only on the conduct of Mr. Levandowski.

1

### 38. DUTY TO INFORM

2        Defendants object to Waymo's proposed Duty to Inform instruction, which incorrectly

3   states that principals are presumed to have their agents' knowledge of misappropriation and that

4   agents have a duty to inform their principals about misappropriated trade secrets.

5        This "presumed knowledge" part of this proposed instruction is directly contrary to the

6   Ninth Circuit's opinion in *Droeger*, which holds that "it is generally not appropriate to direct a

7   jury to impute an agent's knowledge of a secret to the principal.  Such an instruction would permit

8   recovery even when the trade secret was not actually communicated to or used by the principal."

9   *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792–93 (9th Cir. 1976).  In the trade

10  secret context, there is no presumption that a principal knows "all that[ its agent or agents knew]

11  concerning the transaction."  *See id.*; *see also Joshua David Mellberg, LLC v. Will*, No. CV-

12  1402025 TUC CKJ (CRP), 2016 WL 4592181, at *13 n.2 (D. Ariz. Jan. 22, 2016) (citing

13  *Droeger* and declining to impute knowledge of improper acquisition under Arizona's Uniform

14  Trade Secret Act, which defines misappropriation by acquisition the same as CUTSA), *report and*

15  *recommendation adopted,*  2016 WL 944958 (D. Ariz. Mar. 14, 2016).

16       The "duty to inform" part of this instruction is directly contrary to California law and the

17  Restatement, both of which provide that where, as here, an agent is under a duty ***not*** to disclose

18  information to a principal, no "duty to inform" can give rise to a principal's liability.  Under the

19  Restatement of Agency, "[n]otice of facts known by an agent is not imputed to the principal

20  unless the agent has a duty to furnish them to the principal."  Restatement (Third) of Agency §

21  5.03 cmt. B (2006).  Likewise, under California law, an agent only has "such authority as the

22  principal, actually or ostensibly, confers upon him."  Cal. Civ. Code § 2315.

23       As Defendants have briefed previously, none of Defendants' agents (specifically,

24  Morrison & Foerster and Stroz Friedberg) had a duty to inform Defendants about Waymo trade

25  secrets.  (*See* Dkt. 824 at 6–7.)  In fact, they had the ***opposite*** duty:  ***not*** to provide Defendants

26  with any Waymo confidential or proprietary information.  The agreements and protocols

27  governing the due diligence process expressly provided that Stroz Friedberg (an agent) was

28  required *not* to disclose Waymo information "to any third party whatsoever, including without

1   limitation its Clients" except as provided in the Examination Protocol.  (Dkt. 806-4 at 2.)  In turn,

2   the Examination Protocol was at all times subject to the AEO restriction in the Stroz Engagement

3   Letter, which prevented Defendants from receiving any Waymo confidential or proprietary

4   information.  (Dkt. 370-3 at 3.)  In short, as a matter of the parties' binding agreements, no agent

5   for Uber, Ottomotto, and/or Otto Trucking was ever under a duty to inform Defendants of

6   Waymo's trade secrets; rather, at all relevant times, Defendants' agents were under an express

7   duty *not* to inform Defendants of such information.  As a result, this issue cannot be submitted to

8   the jury.

9           In addition, no "duty to inform" instruction should be given because this basis for liability

10   could not possibly yield any damages.  In a trade secret case, "it is the wrongful ***use*** of the secret

11   that gives rise to the damage."  *Droeger*, 541 F.2d at 793 (emphasis added).  Because no

12   quantifiable harm would flow from a principle's mere ***knowledge*** of misappropriation or from an

13   agent's mere ***acquisition*** of trade secret information, Waymo cannot recover damages under this

14   theory and a jury instruction is therefore inappropriate.  CACI No. 4405 Misappropriation by

15   Acquisition, Directions for Use.

16

17

18

19

20

21

22

23

24

25

26

27

28

### 39. RATIFICATION (UBER)

Waymo's proposed Ratification instruction ignores that in order to be held liable under a theory of ratification, Defendants must have derived a "benefit" from the third party's conduct. Because there is no evidence of benefit here, there is no basis for this instruction.

The benefit requirement is reflected in the model jury instruction that Waymo cites (CACI No. 3710), but Waymo omits that requirement from its proposed instruction.  The same requirement is also codified under California law, which provides that ratification "can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or where an oral authorization would suffice, *by accepting or retaining the benefit of the act, with notice thereof*."  Cal. Civ. Code § 2310 (emphasis added).

As detailed in prior briefing (Dkt. 514 at 2-3), a ratification theory would require evidence of Defendants actually "accepting or retaining the benefit of" the 14,000 files (or others) that Waymo alleges Levandowski improperly downloaded.  *Meyer v. Glenmoor Homes, Inc.*, 246 Cal. App. 2d 242, 256-57 & n.3 (1966) (ratification instruction against corporation was not warranted where "there was no evidence to show any corporate act retroactively authorizing" an agent's actions and "there were no benefits bargained for and received by the corporation"); *Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of N.Y.*, No. 3:06-CV-1164 (TJM/DEP), 2010 WL 3907489, at *19 (N.D.N.Y. Sept. 30, 2010) (dismissing allegations of trade- secret theft against a competitor, even where former business partner may have misappropriated trade secrets, where plaintiff failed to establish that competitor, "knowing of a tort committed for its benefit, ratifie[d] it").  Waymo has failed to offer any such evidence, which could only be established through a showing of actual *use* by the Defendants.

In addition, the only third party conduct that Waymo has complained of involves the alleged acquisition of trade secret information by Morrison & Foerster and Stroz Friedberg. As Uber has briefed previously (Dkt. 874) and in relation to other jury instructions herein, there is no allegation that these third parties *used* Waymo's trade secret information in a manner that was subsequently approved of or adopted by the Defendants.   In a trade secret case, "it is the wrongful *use* of the secret that gives rise to the damage." *Droeger v. Welsh Sporting Goods*

1   *Corp.*, 541 F.2d 790, 793 (9th Cir. 1976) (emphasis added).  Because Waymo has never argued,

2   and has no evidence to suggest, that Defendants ratified a third party's wrongful ***use*** of Waymo

3   information, Waymo's ratification theory cannot give rise to damages, and therefore should not

4   be submitted to the jury.  CACI No. 4405 Misappropriation by Acquisition, Directions for Use.

5         Finally, to the extent that Waymo now asserts a ratification theory against Uber and

6   Ottomotto based on Levandowski's alleged trade secret theft, an employee's independent theft of

7   a trade secret does not amount to misappropriation by an employer where the employer never

8   acquired, disclosed, or used the trade secret he allegedly stole.  *Central Valley Gen. Hosp. v.*

9   *Smith*, 162 Cal. App. 4th 501, 528 (2008) (defendant's mere possession of trade secret, without

10  more, does not provide a basis for a preliminary injunction for claim of actual or threatened

11  misappropriation); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 230 (2010), *as*

12  *modified on denial of reh'g* (May 27, 2010) *disapproved of on other grounds by Kwikset Corp. v.*

13  *Superior Court*, 51 Cal. 4th 310 (2011) (denying plaintiff's motion for summary judgment where

14  defendant "never had the trade secret whose theft is the subject matter of this action").  Further,

15  the same inability to prove *use* by MoFo or Stroz, as would be required in order to give rise to a

16  claim for damages, undermines any ratification theory based on the actions of Defendants'

17  employees.  *See Droeger*, 541 F.2d at 793.  Because no quantifiable harm would flow from a

18  principle's mere ***knowledge*** of misappropriation or from an agent's or employee's mere

19  ***acquisition*** of trade secret information, Waymo cannot recover damages under this theory and a

20  jury instruction is thus inappropriate.  CACI No. 4405 Misappropriation by Acquisition,

21  Directions for Use.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**39. RATIFICATION (OTTO TRUCKING)**

This instruction tracks the CACI instructions for establishing liability through ratification. In response to Otto Trucking's statement that it did not exist at the time of the alleged misappropriation, Waymo has alleged that Otto Trucking subsequently ratified Mr. Levandowski's conduct by, among other things, failing to take adverse action against him. *See* Dkt. 1526-4 (Plaintiff's Opposition to Defendants' Motion for Summary Judgment at 24). This instruction should be given, because Waymo must be required to show that Otto Trucking approved of Mr. Levandowski's conduct, and it must show which benefit Otto Trucking retained. Cal. Civ. Code § 2310. Otto Trucking's instruction is also limited to Mr. Levandowski and no other potential agents or individuals as Waymo's allegations regarding Otto Trucking's liability are based only on the conduct of Mr. Levandowski.

**40. CAUSATION: SUBSTANTIAL FACTOR**

CACI 4401, in Element 5, provides that acquisition, use, or disclosure must be a "substantial factor" in causing harm.  CACI 4409 also references "substantial factor." CACI's Guide for Use instructs that, in this situation, CACI 430 should also be given.  Specifically, the Guide for Use states: "The instructions frequently use the term 'substantial factor' to state the element of causation, rather than referring to 'cause' and then defining that term in a separate instruction as a 'substantial factor.' An instruction that defines 'substantial factor' is located in the Negligence series. The use of the instruction is not intended to be limited to cases involving negligence."  CACI, *Guide for Using Judicial Council of California Civil Jury Instructions*, at p. 2.  That Negligence instruction is CACI 430.  Defendants' instruction tracks CACI 430 to the letter.

## 41. BAD FAITH

Defendants reasonably propose a jury instruction in order to guide the jury's determination on an issue that they will have to decide: whether Waymo's lawsuit was brought in bad faith.  (*See* Uber's Opp. to Waymo's MIL #15 (Dkt. 1543-4).)

Section 3426.4 of the California Uniform Trade Secrets Act provides: "If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees and costs to the prevailing party."  Cal. Civ. Code § 3426.4.  The issue of bad faith may be tried to the jury.  *GSI Tech., Inc. v. United Memories, Inc.*, No. 5:13-cv-01081-PSG, 2016 WL 3035699, at *2 (N.D. Cal. May 26, 2016) (rejecting plaintiff's arguments "that the court committed prejudicial error by not trying bad faith separately"; court "ruled that the bad faith contention [under § 3426.4] would be presented to the jury"); *Cargill Inc. v. Progressive Dairy Solutions, Inc.*, No. CV-F-070349-LJO-SMS, 2008 WL 4532436, at *3-*5 (E.D. Cal. Oct. 8, 2008) ("A court may submit this issue [bad faith under § 3426.4] to the jury."), *aff'd*, 362 F. App'x 731, 734 (9th Cir. 2010) ("The final issue is whether the district court committed reversible error in submitting the bad faith question to the jury at the same time it asked the jury to consider Cargill's claims—including its misappropriation claim—on their merits. We hold that the district court did not abuse its discretion with respect to this issue.  Although the district court's decision created some risk that the jury would be prejudiced, unduly influenced, or confused in considering Cargill's misappropriation claim, the district court's special verdict sheets were clear and explicit in directing the jury to consider first the merits of Cargill's misappropriation claim and second—and only if the jury rejected the misappropriation claim on its merits—Cargill's putative bad faith in bringing this claim.") (citation omitted).

Defendants' proposed instruction is a correct statement of law. First, Defendants correctly state both elements of a determination of bad faith. California courts "have developed a two-prong standard" to determine "bad faith": "(1) objective speciousness of the claim, and (2) subjective bad faith in bringing or maintaining the action, i.e., for an improper purpose." *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1275 (2009).  "Objective speciousness exists where

the action superficially appears to have merit but there is a complete lack of evidence to support the claim." *Id.* at 1276 (distinguishing "objective speciousness" from "frivolousness"; holding the evidence supported the finding that plaintiffs "filed a specious action as a preemptive strike and for an anticompetitive purpose"); *SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 848-49 (2012) ("[U]nder the 'objectively specious' standard, it was enough for defendants to point to the absence of evidence of misappropriation in the record. . . . Speculation that the individual employees must have taken trade secrets from SASCO based on their decision to change employers does not constitute evidence of misappropriation.").

Defendants also correctly state the basis on which the jury could infer subjective bad faith. "Subjective bad faith may be inferred by evidence that appellants intended to cause unnecessary delay, filed the action to harass respondents, or harbored an improper motive. The timing of the action may raise an inference of bad faith. Similar inferences may be made where the plaintiff proceeds to trial after the action's fatal shortcomings are revealed by opposing counsel." *FLIR Sys.*, 174 Cal. App. 4th at 1278 (citations omitted) (trial court rejected plaintiffs' claim that reasonable suspicion that its trade secrets would be misappropriated was evidence of good faith, "instead finding that [plaintiffs'] reasons for bringing and maintaining the action were 'inevitable disclosure' arguments"). Subjective bad faith may also be inferred if the plaintiff filed or maintained trade secret claims "to thwart competition." *SASCO*, 207 Cal. App. 4th at 847. Bad faith may also be inferred where the plaintiff "dismissed or narrowed," or "abandoned," trade secret claims. *GSI Tech.*, 2016 WL 3035699, at *3 ("evidence of the dismissed and narrowed claims" was relevant); *RBC Bearings Inc. v. Caliber Aero, LLC*, No. SA CV 12 1442 FMO (PLAx), 2016 WL 6562068, at *4 (C.D. Cal. Aug. 1, 2016) (finding bad faith in case where plaintiff "abandoned its claims of misappropriation of Trade Secrets Nos. 1 and 4-7" by failing to put forth evidence).

1

## 43. AFFIRMATIVE DEFENSE – MITIGATION OF DAMAGES (UBER)

2          This instruction tracks CACI 358 as modified by the Handbook of Intellectual Property

3   Claims & Remedies § 5.03 (2017 Supp.), which was cited to by Plaintiff in its Precis requesting

4   leave to file summary judgment against Defendants (Dkt 1301).  Defendants intend to present

5   evidence that Waymo failed to mitigate its damages by allowing its damages to accrue after it

6   knew or should have known of its claims.  Indeed, the law indicates that a trade-secret plaintiff

7   has a duty to seek a preliminary injunction, as opposed to letting damages accrue on a trade-secret

8   claim.  See Handbook of Intell. Prop. Claims & Remedies § 5.03 (2017 Supp.).  Defendants will

9   present evidence that Waymo unreasonably delayed in bringing its trade secret claims and

10  seeking a preliminary injunction, thereby making its alleged damages larger than they otherwise

11  would have been had it not delayed in filing its claims.  (See Dkt. 1525 at 15–17.) Defendants

12  should be permitted to present this instruction to the jury.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**43. AFFIRMATIVE DEFENSE – MITIGATION OF DAMAGES (OTTO TRUCKING)**

This instruction tracks CACI 358.  Defendants intend to present evidence that Waymo failed to mitigate its damages by allowing its damages to accrue after it knew or should have known of its claims.  Indeed, the law indicates that a trade-secret plaintiff has a duty to seek a preliminary injunction, as opposed to letting damages accrue on a trade-secret claim.  See Handbook of Intell. Prop. Claims & Remedies § 5.03 (2017 Supp.); cited by Plaintiffs in Dkt 1301.  Defendants will present evidence that Waymo unreasonably delayed in bringing its trade secret claims and seeking a preliminary injunction, thereby making its alleged damages larger than they otherwise would have been had it not delayed in filing its claims.  Defendants should be permitted to present this instruction to the jury.

1

## 44. OUTSIDE REVERSE VEIL PIERCING (UBER)

2      Otto Trucking's instruction on corporate veil piercing will confuse the jury for two

3 reasons.  First, the proposed instruction includes a summary of facts as to Otto Trucking and Mr.

4 Levandowski's relationship and the corporate veil enjoyed by Otto Trucking.  Because the

5 instruction is silent on Mr. Levandowski and Uber's relations, the jury is likely to infer that Uber

6 has no similar shield and should be liable for any bad acts of Mr. Levandowski.  That would be an

7 incorrect inference.  Second, none of the terms in the instruction are defined, such as "alternative

8 adequate remedies" or "innocent shareholders."  This instruction, as proposed, is confusing and

9 should not be charged to the jury.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### 44. OUTSIDE REVERSE VEIL PIERCING (OTTO TRUCKING)

2

Waymo seeks to hold Otto Trucking liable for the conduct of Mr. Levandowski, a

3

shareholder and officer of the LLC.  Waymo seeks the application of outside reverse veil piercing

4

in order to receive damages from Otto Trucking for the conduct of Otto Trucking's shareholder.

5

California law prohibits the application of outside reverse veil piercing.  *Postal Instant Press, Inc.*

6

*v. Kaswa Corp.*, 162 Cal.App.4th 1510, 1523-24 (2008).  Where outside reverse veil piercing is

7

permitted, parties must show that the only recourse a plaintiff has would be through this piercing,

8

and that the offending individual would be the only one impacted by the piercing. Waymo must

9

first be categorically prohibited from reverse piercing the corporate veil. In the event the court

10

finds reverse veil piercing applicable, Waymo must be required to make a showing that it has no

11

other recourse and that no other shareholders would be harmed by this piercing.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## 45. DAMAGES UNDER CALIFORNIA AND FEDERAL LAW

2      This instruction is not necessary and could confuse the jury. Including instructions that are

3  different for state and federal law is misleading in suggesting that the two causes of action are

4  distinct and each could be the basis for damages, when that is not the case.

5      DTSA and CUTSA are substantively identical in all respects, including that the awarding

6  of a reasonable royalty is a remedy of "last resort" and that it should be decided by the Court.

7  This is more fully explained below in disputed instruction 48, Reasonable Royalty.

8      Even if there were ambiguity, the DTSA is clear that it does not preempt or displace

9  CUTSA. 18 U.S.C. § 1838 ("Except as provided in section 1833(b), this chapter shall not be

10  construed to preempt or displace any other remedies, whether civil or criminal, provided by

11  United States Federal, State, commonwealth, possession, or territory law for the misappropriation

12  of a trade secret, or to affect the otherwise lawful disclosure of information by any Government

13  employee under section 552 of title 5 (commonly known as the Freedom of Information Act).")

14      Waymo's proposed instruction is confusing and could lead to an inconsistent verdict

15  because it implicitly displaces California law by allowing the jury to award reasonable royalty

16  under DTSA while under CUTSA only the judge can award reasonable royalty, and only if unjust

17  enrichment and damages cannot be proven. This is a substantive difference in the law.

18  Given DTSA's clear mandate not to preempt or displace state remedies and the confusion that an

19  instruction that implicitly displaces California law likely will cause, the Court should only

20  instruct the jury on the CUTSA cause of action.

21

22

23

24

25

26

27

28

1

## 46. REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET

2

Waymo's instruction omits the second paragraph of the CACI instruction, which informs

3 the jury that a reasonable royalty may be awarded by the Court if Waymo cannot prove it is

4 entitled to unjust enrichment damages.  The Defendants' proposed instruction includes the

5 omitted portion of the CACI instruction.  As explained below with regard to the proposed

6 instruction on reasonable royalty, that remedy is decided by the Court; it is not an issue for the

7 jury.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## 47. UNJUST ENRICHMENT

2      Waymo's proposed instruction omits a critical part of calculating unjust enrichment.  As

3  explained in CACI No. 4410, unjust enrichment is calculated by determining the benefit of the

4  misappropriation ***and then subtracting*** a defendant's expenses.  *See* CACI No. 4410; *see also*

5  *Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1310-11 (2010) (stating unjust

6  enrichment is measured by a defendant's profits rather than just the benefit).  The Defendants'

7  proposed instruction includes the remainder of the model instruction.  Furthermore, the

8  Defendants' proposed instruction includes a statement that unjust enrichment damages cannot be

9  based on speculation.  *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d

10  1064, 1076-77 (N.D. Cal. 2005) (stating "jury's award of unjust enrichment damages was based

11  on speculation and guesswork); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, No. C 00-

12  4071 CW, 2000 WL 35634755 (N.D. Cal. 2000) (instructions to jury); *Ajaxo*, 187 Cal. App. 4th

13  at 1310-11; *Vt. Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 450 (2d Cir. 1998) (affirming

14  magistrate judge's opinion that unjust enrichment damages were "too imprecise and

15  speculative").

16

17

18

19

20

21

22

23

24

25

26

27

28

### 48. REASONABLE ROYALTY -- ENTITLEMENT

The determination of a reasonable royalty is a question decided by the Court.  Under CUTSA, "[i]f neither damages nor unjust enrichment caused by misappropriation are provable, *the Court* may order payment of a reasonable royalty . . . ."  Cal. Civ. Code § 3426.3(b) (emphasis added); *see also FAS Techs., Ltd. v. Dainippon Screene Mfg., Co.*, No. C 00-01879-CRB, 2001 WL 1159776, at *3 (N.D. Cal. Sept. 21, 2001) ("[B]ased on the plain language of the statute, the Court—not the jury—determines if and in what amount a royalty should be awarded."); CACI No. 4409 ("Both the statute and case law indicate that the question of a reasonable royalty should not be presented to the jury.").  Likewise, the federal DTSA places the question of reasonable royalty in the hands of the Court.  *See* 18 U.S.C. § 1836(b)(3) ("In a civil action brought under this subsection with respect to the misappropriation of a trade secret, *a court may*—") (emphasis added).

Furthermore, both the California and federal statutes make reasonable royalty a remedy of last resort.  *See* Cal. Civ. Code § 3426.3(b) ("If *neither* damages nor unjust enrichment caused by misappropriation are *provable*, the court *may* order payment of a reasonable royalty . . . .") (emphasis added); 18 U.S.C. § 1836(b)(3)(B)(ii) ("*in lieu of damages measured by any other methods*, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty . . . .") (emphasis added).  Congress was very clear that it did not intend to upset the current practice of only turning to royalties as a last resort:

> [The DTSA] authorizes an award of damages for the actual loss and any unjust enrichment caused by the misappropriation of the trade secret, or, in lieu of damages measured by any other method, an award of a reasonable royalty. It is not the Committee's intent to encourage the use of reasonable royalties to resolve trade secret misappropriation. Rather, the Committee prefers other remedies that, first, halt the misappropriator's use and dissemination of the misappropriated trade secret and, second, make available appropriate damages.

H.R. Rep. No. 114-529, at 13 (2016); S. Rep. No. 114-220, at 9 (2016) (same).  In fact Committees in both houses even recorded that "[t]he Committee notes that courts interpreting the UTSA's analogous provision have held that the award of reasonable royalties is a remedy of last

1   resort." H.R. Rep. No. 114-529, at 13 n.13; *see also* S.R. Rep. No. 114-220, at 9 n.3

2   (same).  Thus, Waymo is only entitled to a reasonable royalty remedy only to the extent it

3   provides a theory for a reasonable royalty distinct from its unjust enrichment theory.  Waymo's

4   reasonable royalty theory, however, is premised entirely on the same accelerated development

5   model underlying its meritless unjust enrichment theory.  (*See* Dkt. 1614-4.)  If the Court or a

6   jury determines that Waymo has failed to prove the amount by which defendants were unjustly

7   enriched—a necessary conclusion to reach the reasonably royalty question—it will have already

8   concluded that the only reasonably royalty proposed by Waymo's expert is invalid because it too

9   is built on the same unstable foundation.  Accordingly, there are no circumstances under which

10  the instruction would be given.

11          Nevertheless, if the Court decides to provide an instruction with regard to reasonable

12  royalties, the Court should not instruct the jury to calculate, as Waymo suggests, both unjust

13  enrichment *and* a reasonable royalty.  As stated above, reasonable royalty is a remedy of last

14  resort.  Asking the jury to calculate both unjust enrichment damages and reasonable royalty may

15  therefore lead to confusing the jury.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**49. REASONABLE ROYALTY – DEFINITION**

2

As discussed above, the determination of a reasonable royalty is an issue for the Court.

3

As a result, the jury should not be instructed on this issue.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## 50. GEORGIA PACIFIC FACTORS

2          As discussed above, the determination of a reasonable royalty is an issue for the Court.

3   As a result, the jury should not be instructed on this issue.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

## 51. EXEMPLARY DAMAGES FOR WILLFUL AND MALICIOUS
## MISAPPROPRIATION

3       Under both the CUTSA and DTSA, the court—not the jury—decides the amount of

4   exemplary damages to award, if any.  With respect to the CUTSA, the comments to the UTSA

5   expressly indicate that the judge decides the question of awarding enhanced damages:  "If willful

6   and malicious misappropriation is found to exist, Section 3(b) authorizes the court to award a

7   complainant exemplary damages in addition to the actual recovery under Section 3(a) an amount

8   not exceeding twice that recovery.  This provision follows federal patent law in leaving

9   discretionary trebling to the judge even though there may be a jury, *compare* 35 U.S.C. Section

10   284 (1976)."  Unif. Trade Secrets Act § 3 (cmt).  California federal courts have followed that

11   process.  *See, e.g., 02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1080

12   (N.D. Cal. 2005) (noting that the court determines enhancement of damages if a jury finds

13   willfulness and maliciousness).  Although courts have not yet addressed the issue under the

14   DTSA given that it was only recently enacted, the analysis under the DTSA should be the same

15   because the language of the DTSA concerning enhanced damages was "drawn directly from § 3

16   of the UTSA."  *See* S. Rep. No. 114-220, at 9 (2016).

17       Waymo's proposed instruction also omits instructions regarding the definitions of

18   "willfully" and "maliciously", necessary elements to awarding exemplary damages under both

19   California and federal law and as written in CACI No. 4411.

20
21
22
23
24
25
26
27
28

1

**52. DAMAGES FROM MULTIPLE DEFENDANTS (UBER)**

2    This instruction tracks the CACI instruction essentially verbatim.  In this case, there are

3  multiple defendants, and Waymo seeks damages from each. This instruction will help to explain

4  the verdict form, which all parties agree will contain separate lines for each defendant on liability,

5  and prevent a confusing or inconsistent verdict.  Moreover, each defendant may present different

6  facts and theories, and this instruction helps the jury understand what to do with those differing

7  proofs.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**52. DAMAGES FROM MULTIPLE DEFENDANTS (OTTO TRUCKING)**

2     This instruction tracks the CACI instructions for joint and several liability, a damages

3   theory alleged by Waymo.  Because Otto Trucking did not directly misappropriate the alleged

4   trade secrets and was not acquired by Uber or Ottomotto, Waymo argues and will likely attempt

5   to present evidence that Otto Trucking must be held jointly and severally liable for the alleged

6   misappropriation by Uber and Ottomotto.  Failure to give this instruction may result in prejudice

7   to Otto Trucking.  *See McGee v. Cessna*, 82 Cal. App. 3d 1005, 1019; *see also Vine v. Bear*

8   *Valley Ski Company*, 188 Cal. App. 4th 577, 600 (2004).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## 53. AFFIRMATIVE DEFENSE – UNCLEAN HANDS (OTTO TRUCKING)

2         This instruction is taken from an instruction regarding unclean hands given in *GSI*

3   *Technologies Inc. v. United Memories Inc., et al*., Case No. 5:13-cv-01081-PSG, Dkt. No. 1039,

4   at 54.  This instruction should be given, because Defendants intend to present evidence of

5   Waymo's unclean hands in bringing its claims for trade secret misappropriation.  The centerpiece

6   of Waymo's claims has long been the alleged downloading and theft of 14,000 files from

7   Waymo's SVN server.  Defendants will present evidence that shows that Waymo and its

8   attorneys knew that the information allegedly downloaded from the SVN server was of low value

9   and was not protected using Google's normal security infrastructure; and that Mr. Levandowski's

10  alleged download was not unusual, nor did it raise "alarm bells."  *See* Dkt. No. 1524-3, at pp. 3-

11  10 (Defendants' Opposition to Waymo's Motion for Summary Judgment); Dkt. No. 1641

12  (Declaration of Arturo Gonzalez in Response to Declaration of Jeff Nardinelli); Dkt. No. 1633

13  (Defendant Otto Trucking's Response to Order Requiring Declarations).  Despite knowing this

14  information, Waymo filed its claims in bad faith against Defendants.  Moreover, this defense

15  should be submitted to the jury, as it is presented as an affirmative defense and is inextricably

16  intertwined with Waymo's trade secret claims.  *See Unilogic Inc. v. Burroughs Corp.*, 10 Cal.

17  App. 4th 612, 622-23 (1992).  The heart of Waymo's trade secret allegations has long been the

18  alleged downloading of the 14,000 files, which Defendants' evidence on its unclean hands

19  defense will rebut.

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 54. APPORTIONMENT OF DAMAGES

The first paragraph of this instruction is CACI 4410 with no modifications.

The second paragraph of this instruction tracks the holdings of the Northern District of California in *02 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*, 399 F.Supp.2d 1064, 1076-77 (N.D. Cal. November 10, 2005); and other courts in the 9th Circuit, including *W.L. Gore & Associates, Inc. v. GI Dynamics, Inc.*, 872 F.Supp.2d 883, 892-93 (D. Az. May 30, 2012). Specific findings on damages relating to each trade secret are necessary to ensure that a damages award (if there is one) is consistent with a liability finding if the jury finds misappropriation of fewer than all of the asserted trade secrets. Similarly, this Court or an appellate court could set aside part of a verdict relating to specific trade secrets, necessitating a retrial where that might otherwise be unnecessary. *See e.g., Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1309–10 (Fed. Cir. 2007) ("In light of our holding that a new trial is required on the issue of infringement of the ′880 patent, we also vacate the determination that Verizon is entitled to a damages award of $58,000,000 and a royalty rate of 5.5%, since the jury's verdict gives no indication what portion of such damages were allocated to the infringement of the ′880 patent. In a situation—such as this one—where the jury rendered a single verdict on damages, without breaking down the damages attributable to each patent, the normal rule would require a new trial as to damages.") (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 312 (1986) ("When damages instructions are faulty and the verdict does not reveal the means by which the jury calculated damages, the error in the charge is difficult, if not impossible, to correct without retrial, in light of the jury's general verdict.") (internal quotation marks omitted).

1    Dated: September 21, 2017                 MORRISON & FOERSTER LLP

2

3                                              By:  _____/s/ Arturo J. González_____
                                                          ARTURO J. GONZÁLEZ
4

5                                              MICHAEL A. JACOBS (CA SBN 111664)
                                               MJacobs@mofo.com
6                                              ARTURO J. GONZÁLEZ (CA SBN 121490)
                                               AGonzalez@mofo.com
7                                              MORRISON & FOERSTER LLP
                                               425 Market Street
8                                              San Francisco, California  94105-2482
                                               Telephone:    415.268.7000
9                                              Facsimile:    415.268.7522

10                                             KAREN L. DUNN (*Pro Hac Vice*)
                                               kdunn@bsfllp.com
11                                             HAMISH P.M. HUME (*Pro Hac Vice*)
                                               hhume@bsfllp.com
12                                             BOIES SCHILLER FLEXNER LLP
                                               1401 New York Avenue, N.W.
13                                             Washington DC  20005
                                               Telephone:    202.237.2727
14                                             Facsimile:    202.237.6131

15                                             WILLIAM CARMODY (*Pro Hac Vice*)
                                               bcarmody@susmangodfrey.com
16                                             SHAWN RABIN (*Pro Hac Vice*)
                                               srabin@SusmanGodfrey.com
17                                             SUSMAN GODFREY LLP
                                               1301 Avenue of the Americas, 32nd Floor
18                                             New York, NY  10019-6023
                                               Telephone:    212.336.8330
19                                             Facsimile:    202.336.8340

20                                             Attorneys for Defendants
                                               UBER TECHNOLOGIES, INC.
21                                             and OTTOMOTTO LLC

22

23

24

25

26

27

28

1    Dated: September 21, 2017          GOODWIN PROCTER LLP

2

3                                       By  /s/ Neel Chatterjee
                                              NEEL CHATTERJEE
4

5                                       Neel Chatterjee (SBN 173985)
                                        nchatterjee@goodwinlaw.com
6                                       Brett Schuman (SBN 189247)
                                        bschuman@goodwinlaw.com
7                                       Shane Brun (SBN 179079)
                                        sbrun@goodwinlaw.com
8                                       Rachel M. Walsh (SBN 250568)
                                        rwalsh@goodwinlaw.com
9                                       Hayes P. Hyde (SBN 308031)
                                        Hong-An Vu (SBN 266268)
10                                      hvu@goodwinlaw.com
                                        GOODWIN PROCTER LLP
11                                      135 Commonwealth Drive
                                        Menlo Park, California 94025
12                                      Tel.: +1 650 752 3100
                                        Fax.: +1 650 853 1038
13
                                        Attorneys for Defendant
14                                      OTTO TRUCKING LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTESTATION OF E-FILED SIGNATURE**

2

I, Arturo J. González, am the ECF User whose ID and password are being used to file this

3

Defendants' Memoranda of Law in Support of Disputed Jury Instructions.  In compliance with

4

Civil L.R. 5-1(i)(3), I hereby attest that Neel Chatterjee has concurred in this filing.

5

6

Dated:  September 21, 2017

_____
*/s/  Arturo J. González*
ARTURO J. GONZÁLEZ

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28