September 21, 2017

**VIA ECF**

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:     *Waymo LLC v. Uber Technologies, Inc., et al*., N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Pursuant to Dkt. 1688 (9/18/2017 Hearing Tr. at 21:22-23:7), Plaintiff Waymo LLC ("Waymo") submits this brief on the Diligenced Employees' waiver of attorney-client privilege for materials provided to third party Stroz Friedberg ("Stroz").

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

This is not a complicated motion.  The Diligenced Employees bear the burden of showing that they have not waived the attorney-client privilege over the materials they handed over to Stroz.  They cannot meet that burden.

**First**, the issue of waiver has already been decisively resolved by this Court, the District Court, and the Federal Circuit.  It is black letter law that the voluntary disclosure of privileged attorney-client communications to a third party waives the privilege.  *United States v. Palache*, 913 F.2d 1375, 1379 (9th Cir. 1990).  It is undisputed that the Diligenced Employees voluntarily disclosed to Stroz the contents of their computers, phones, cloud storage, and emails.  And it is the law of the case that Stroz was a third party at the time of that disclosure.  Any privilege that may have attached to Diligenced Employees' documents or communications before March 2016 was waived at the time of that voluntary disclosure to Stroz.

**Second**, even assuming that any privilege was not waived in March 2016 (which it was), it was subsequently waived by the Diligenced Employees' untimely assertion of that privilege.  Waymo subpoenaed the Stroz materials on May 10, with a return date of May 25.  Under the Court's ground rules, a claim of privilege by the Diligenced Employees over any of the subpoenaed materials needed to be "promptly provided" and "sufficiently detailed and information to justify the privilege" – on pain of waiver.  Yet Mr. Levandowski and Mr. Ron waited almost four months – after the return date of the subpoena, after motion practice briefing was completed, after this Court's Order compelling the materials, after the District Court's Order affirming that Order, and even after the close of fact discovery – to belatedly provide privilege logs.  The other three Diligenced Employees have not provided any privilege logs at all.  This too effects a waiver.

**The Diligenced Employees' Disclosure of Privileged Communications to Third Party Stroz Effects a Waiver**

The Court is familiar with the factual background behind the Otto acquisition and due diligence process.  As the Court has previously ruled in compelling the Stroz subpoena, "Stroz was the agent of Otto and Uber, not Levandowski," and therefore when the Diligenced Employees turned over their devices and emails to Stroz, they "voluntarily disclosed the information to an unrelated third party." (Dkt. 670 at 2.)  Mr. Levandowski was the only Diligenced Employee who moved to quash the subpoena[1] (including on grounds that materials provided to Stroz contained underlying privileges)[2].  In denying that motion, the Court explained:

> As the Term Sheet demonstrates, Levandowski disclosed his devices and gave the Stroz interview to enable Uber to decide whether it wanted to pay Otto and Levandowski millions of dollars.  The Stroz investigation also created an

---

[1]  Mr. Ron did not move to quash the Stroz subpoena, despite the fact that at the time the subpoena was served, Mr. Ron's personal counsel in the Google arbitration (MoFo) was also counsel for Defendants Uber and Ottomotto in this case.

[2]  *See* Dkt. 583 at 8 ("While such devices, if they exist, could conceivably contain relevant materials, they would likely also contain all manner of other materials to which Waymo has no right—and over which Mr. Levandowski might have other personal privileges and significant privacy interests, such as personal photographs, confidential financial information, intimate correspondence, medical information, social-security numbers, **attorney-client confidential communications and attorney work-product**, not to mention proprietary and confidential business information unrelated to this litigation.") (emphasis added).

1

> evidentiary record that would determine whether Uber is required to indemnify Levandowski should Uber, following its pre-signing due diligence, decide to sign the Put Call Agreement. This indemnification right is likewise worth millions of dollars. To hold that Levandowski did not waive the attorney-client privilege when it provided this information to Uber "does little, if anything, to serve the public good underpinning the attorney-client privilege." *Id.* at 1127. Extending non-waiver to these circumstances "does not serve the purpose of encouraging full disclosure to one's attorney in order to obtain informed legal assistance; it merely encourages voluntary disclosure" to parties on the other side of a proposed acquisition, "thereby extending the privilege beyond its intended purpose." *Id.* Levandowski's motion to quash is denied.

(*Id.* at 6.)

Mr. Levandowski (and Defendants) brought objections to the Court's Order and its finding of waiver (Dkt. 726); these objections were overruled by the District Court. (Dkt. 745.) Mr. Levandowski then appealed those Orders to the Federal Circuit, which dismissed the appeal and held that:

> **The Magistrate Judge's and the District Court's factual findings are well-supported by the record. For example, the following facts are undisputed**: (1) Ottomotto and Uber signed a term sheet regarding Uber's potential acquisition of Ottomotto, but that term sheet did not bind the parties to the proposed acquisition, *see* Appellant's App. 126; Appellant's Br. 4; **(2) Uber and Ottomotto, but not Mr. Levandowski, hired Stroz to investigate various issues**, including whether Mr. Levandowski improperly retained confidential information from Waymo, *see* Appellant's App. 135; Appellant's Br. 4; (3) **Mr. Levandowski did not hire or enter into any other formal arrangement with Stroz**, Oral Arg. at 10:13–24, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2017-2235.mp3 (Q: "Was [Stroz] hired by Levandowski or his attorney?" A: "[Stroz] was not engaged specifically by Mr. Levandowksi's attorney."); *see* Appellant's App. 135; (4) "[t]he purpose of the [Stroz] investigation was to aid [Uber's counsel] and [Ottomotto's counsel] in providing legal advice to their respective clients about litigation risks and potential claims that could be brought by [Waymo] in connection with Uber's acquisition of Otto[motto]," Appellant's App. 65; *see id.* at 135; and (5) Mr. Levandowski could have lost a large sum of money if Uber did not acquire Ottomotto and could have been required to reimburse Uber's indemnification expenses if he was not truthful with Stroz, Oral Arg. at 5:46–7:01, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2017-2235.mp3 (discussing indemnification and the risk that the deal might not go forward absent full disclosure); *see* Appellant's App. 129–33. These facts support the District Court's conclusion that Uber's interests were adverse to Mr. Levandowski's because he was the subject of an investigation ordered by two parties on opposite sides of a proposed transaction. These undisputed facts are sufficient to uphold the District Court's conclusion that Mr. Levandowski did not share a common interest with Uber. We thus decline to find error in the District Court's factual findings or legal conclusions.

*Waymo LLC v. Uber Technologies, Inc.*, --- F.3d ---, 2017 WL 4018406, at *6 (Fed. Cir. Sept. 13, 2017) (emphases added).

2

These prior Orders resolve the question of whether the Diligenced Employees have waived any attorney-client privilege over the materials they provided to Stroz. As recognized by every Court that has addressed the issue, Stroz was a third party to Mr. Levandowski and the other Diligenced Employees at the time they provided their devices and emails in March 2016. That voluntary disclosure effects a waiver of any attorney-client privilege. As held in the Order compelling the Stroz subpoena and denying Mr. Levandowski's motion to quash:

> Levandowski contends that the attorney-client privilege protects documents and other information he personally produced to Stroz. "[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege." *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012). The reason for this rule is "[i]f clients themselves divulge such information to third parties, chances are that they would also have divulged it to their attorneys, even without the protection of the [attorney-client] privilege." *Id.* at 1127 (internal quotation marks and citation omitted). Under these circumstances there is no reason to "recognize the privilege in order to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Id.* at 1126 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The Court previously found that Stroz was the agent of Otto and Uber, not Levandowski, and therefore Levandowski had voluntarily disclosed the information to an unrelated third party. (Dkt. No. 566 at 7-8.) Levandowski does not challenge this finding; instead, he argues that at the time of his communications with Stroz, he, Ron, Uber and Otto were part of a "joint defense group" and therefore his communications with Stroz—Uber's agent—are protected by the same attorney-client privilege that would protect Uber's communications with Stroz. (Dkt. No. 583 at 4.) Once again this argument fails.

(Dkt. 670 at 2.)

Documents previously withheld under a claim of privilege, but produced pursuant to the Federal Circuit ruling, only reinforce the prior rulings. For example, on April 10, 2016, Mr. Levandowski's attorney, John Gardner, ▇▇▇▇▇▇▇▇▇▇▇▇ and re-affirmed Mr. Levandowski's (and the other Diligenced Employees') status as ▇▇▇▇▇▇ of Stroz's third-party investigation:



3

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████
██████████████████████████████
██████████████████████████████████

(Ex. 1 [UBER00315259]).  *See also* Dkt. 1603-9 [UBER00314130] ████████████
████████████████████████████████████████
████████████████████████████

Nothing in any of the letters (backdated or otherwise) that Mr. Levandowski and Mr. Ron's attorneys sent to Stroz alter the undisputed fact that Stroz was a third party at the time the Diligenced Employees disclosed the communications at issue in March 2016, or the inescapable legal conclusion that this disclosure effected a waiver of any privilege that otherwise attached to those communications.  It is likely for that reason that Mr. Levandowski did not even attempt to argue that any of these letters were relevant to either the motion to compel the Stroz Report or the motion practice over the Stroz subpoena.[3]  The March 21 letter (Exhibit 3 to the Stroz Report) from Mr. Gardner expressly acknowledges that Stroz would have access to Mr. Levandowski's privileged communications, and simply purported to set forth a protocol regarding Stroz's subsequent disclosure of those communications to **MoFo and Uber**.[4]  Similarly, the March 4 letters from counsel for Mr. Levandowski and Mr. Ron to Eric Friedberg (which are not exhibits to the Stroz Report, or even acknowledged therein) purport to preserve privilege as to materials provided in connection with the "Stroz Examination" described in the Stroz engagement letter (Ex. 3 [UBER00086472]), but the protocol described in the March 4 Stroz engagement letter recognizes that Stroz would have access to privileged communications, and only provides for restrictions on Stroz's ability to disclose to them **MoFo and Uber**.[5]

---

[3]  Nor has Mr. Levandowski ever produced these letters, which were withheld by Defendants on grounds of privilege until after the Court's July 1 deadline to waive privilege on pain of preclusion.

[4]  *See, e.g.*, Ex. 2 [UBER00312494] at 4 ████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████ and 5 ██████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████ (emphases added).

[5]  *See, e.g.*, Ex. 4 [UBER00086466] at 3 ████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

Even if any of these letters had the effect of actually restricting Stroz from disclosing privilege communications to Uber or MoFo (which they apparently did not – *see*, *e.g.*, Ex. 5 [9/20/2017 A. Gonzalez email]), the disclosure to third party Stroz alone results in a waiver as to all other third parties. *See*, *e.g.*, *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1426-27 (3d Cir. 1991) ("We reject Westinghouse's argument that it did not waive the privilege because it reasonably expected that the SEC and the DOJ would maintain the confidentiality of the information that it disclosed to them. Even though the DOJ apparently agreed not to disclose the information, under traditional waiver doctrine a voluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else."); *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 686 (1st Cir. 1997) ("Anyone who chooses to disclose a privileged document to a third party, or does so pursuant to a prior agreement or understanding, has an incentive to do so, whether for gain or to avoid disadvantage. It would be perfectly possible to carve out some of those disclosures and say that, although the disclosure itself is not necessary to foster attorney-client communications, neither does it forfeit the privilege. With rare exceptions, courts have been unwilling to start down this path—which has no logical terminus—and we join in this reluctance."); *In re Steinhardt Partners, L.P.*, 9 F.3d at 230, 235-36 (2d Cir. 1993) (finding waiver of work product protection where a trader voluntary submitted legal memorandum to the Securities and Exchange Commission because "selective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage."); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 302-03 (6th Cir. 2002)("Once the privacy for the sake of which the privilege was created [is] gone by the [client's] own consent, . . . the privilege does not remain in such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice.") (internal quotation marks and citations omitted); *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981) ("The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit. … In the present case, Occidental has been willing to sacrifice confidentiality in order to expedite approval of the exchange offer, and now asserts that the secrecy of the attorney-client relationship precludes disclosure of the same documents in other administrative litigation. The attorney-client privilege is not designed for such tactical employment.").

**The Diligenced Employees' Untimely Assertion of Privilege Effects a Waiver**

Judge Alsup's standing order requires, at risk of waiver, that privilege assertions be made promptly and with sufficient detail. The District Court expressly recognized the application of this rule to privilege assertions over the Stroz materials in the Order affirming this Court's compelling of the Stroz subpoena. (Dkt. 745 at 3 ("Moreover, per the undersigned judge's standing order, a party asserting privilege must provide a privilege log 'at the time of assertion.' *See* Judge Alsup's Supplemental Order to Order Setting Initial CMC in Civil Cases (effective Mar. 17, 2016), http://www.cand.uscourts.gov/whaorders.  Thus, insofar as Uber has asserted any privilege beyond the scope of its initial privilege log (provided pursuant to the expedited discovery order dated March 16 (Dkt. No. 61)) during the course of this litigation, it should have already supplemented that privilege log accordingly.").) Yet none of the Diligenced Employees provided privilege logs at the time of the response date of the Stroz subpoena (in May), during the motion practice over that subpoena (such on June 9, when Mr. Levandowski's moved to quash on

███████████████████████████████████████ (emphasis added).

5

grounds of attorney client privilege (Dkt. 583 at 8)), or even after Judge Alsup's June 27 Order that rejected Uber's generalized and vague privilege assertions. Rather, Mr. Levandowski and Mr. Ron waited until September 14 and 15 (respectively) to provide privilege logs that even attempted to justify the privilege as to any materials they provided to Stroz. (*See* Ex. 6 and Ex. 7.) And the other Diligenced Employees have to date failed to provide any privilege logs at all. Under the Court's ground rules, this untimely assertion of privilege effects a waiver of any privilege results in a waiver of any privilege otherwise attached to communications disclosed to Stroz. (Judge Alsup's Supplemental Order ¶ 16 ("Failure to furnish this information at the time of the assertion will be deemed a waiver of the privilege or protection.").)

Respectfully,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
cc:     All counsel of record; Special Master John Cooper

01980-00104/9570200.1