1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| WAYMO LLC,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>Defendants. | CASE NO. 3:17-cv-00939<br><br>**JOINT PROPOSED JURY<br>INSTRUCTIONS** |
|---|---|

**Disputed Instruction No. 1 Re. SUMMARY OF CONTENTIONS[1] Offered by Waymo**

To help you follow the evidence, I will give you a brief summary of the positions of the parties. This is an action for trade secret misappropriation relating to Waymo LLC's self-driving car technology.

Waymo asserts that it is the owner of information relating to its self-driving car technology, including its custom LIDAR systems that are used to enable the operation of fully self-driving vehicles.

Waymo claims that this information includes nine separate trade secrets and that Defendants Uber Technologies, Inc., Ottomotto LLC, and Otto Trucking LLC misappropriated those trade secrets. "Misappropriation" means the improper acquisition, disclosure or use of the trade secrets.

Waymo has alleged trade secret misappropriation under California law and Federal law.

Waymo claims that Uber, Ottomotto, and Otto Trucking's misappropriation caused Uber, Ottomotto, and Otto Trucking to be unjustly enriched.

Waymo also claims that it is entitled to a reasonable royalty for Uber, Ottomotto, and Otto Trucking's use of Waymo's trade secrets.

Waymo has the burden of proving these claims.

Uber, Ottomotto, and Otto Trucking deny Waymo's claims.

---

[1]   MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT §1.5.

**Disputed Instruction No. 1 Re. SUMMARY OF CONTENTIONS[2] Offered By Defendants**

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

The parties in the case are Waymo, Uber, Ottomotto, and Otto Trucking. Waymo is the plaintiff, which means Waymo filed the case. Uber, Ottomotto, and Otto Trucking are the defendants.

You will hear about Anthony Levandowski during this trial. He is not a party in this case.

Waymo claims that Uber, Ottomotto, and Otto Trucking have misappropriated nine of Waymo's trade secrets. I will provide you with a list of the claimed trade secrets in a few minutes.

Waymo claims that Uber, Ottomotto, and Otto Trucking's misappropriation caused Uber, Ottomotto, and Otto Trucking to be unjustly enriched. Waymo has the burden of proving these claims.

Uber, Ottomotto, and Otto Trucking deny that Waymo has identified any trade secrets, or that they have misappropriated any trade secrets.

---

[2]   MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT §1.5.

**To help you follow the evidence, I will give you a brief summary of the positions of the parties:**

**The plaintiff asserts that [plaintiff's claims]. The plaintiff has the burden of proving these claims.**

**The defendant denies those claims [and also contends that [defendant's counterclaims and/or affirmative defenses]]. [The defendant has the burden of proof on these [counterclaims and/or affirmative defenses.]]**

**[The plaintiff denies [defendant's counterclaims and/or affirmative defenses].]**

**Disputed Instruction No. 2 Re. NUMBER OF WITNESSES[3] Offered By Waymo**

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. Nor does it depend on which side called witnesses or produced evidence. You should base your decision on all of the evidence regardless of which party presented it.

You are not required to decide any issue according to the testimony of a number of witnesses, which does not convince you, as against the testimony of a smaller number or other evidence, which is more convincing to you.  The testimony of one witness worthy of belief is sufficient to prove any fact.  This does not mean that you are free to disregard the testimony of any witness merely from caprice or prejudice, or from a desire to favor either side.  It does mean that you must not decide anything by simply counting the number of witnesses who have testified on the opposing sides.  The test is not the number of witnesses but the convincing force of the evidence.

---

[3]   MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT §1.14; Modified by Case 3:10-cv-03561-WHA Document 1928 at ¶¶5, 6 (Oracle v. Google Final Instructions).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Disputed Instruction No. 2 Re. NUMBER OF WITNESSES Offered By Defendants**

Uber objects to the inclusion of this general instruction as improper under the Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases Before The Honorable William Alsup. Paragraph 2(b) of the Guidelines limits the joint set of proposed instructions to "instructions on *substantive* issues of law," and excludes preliminary, general, and concluding instructions.

1

**Disputed Instruction No. 3 Re. FAILURE TO EXPLAIN OR DENY EVIDENCE[4] Offered**

2

**By Waymo**

3

4

       In determining what inferences to draw from evidence you may consider, among other

5

things, a party's failure to explain or deny such evidence.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

---

[4]   Case 3:10-cv-03561-WHA Document 1928 at ¶9 (Oracle v. Google Final Instructions).

27

28

**Disputed Instruction No. 3 Re. FAILURE TO EXPLAIN OR DENY EVIDENCE Offered**

**By Defendants**

Uber objects to the inclusion of this general instruction as improper under the Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases Before The Honorable William Alsup. Paragraph 2(b) of the Guidelines limits the joint set of proposed instructions to "instructions on substantive issues of law," and excludes preliminary, general, and concluding instructions.  Uber also objects to this instruction as reflected in the accompanying Memorandum of Law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Disputed Instruction No. 4 Re. COMPLIANCE WITH DISCOVERY ORDERS[5]**

**Offered By Waymo**

This Court issued an Order requiring Defendants Uber, Ottomotto, and Otto Trucking to return to Waymo, by no later than March 31, 2017, all documents relating to any Waymo files taken by Anthony Levandowski from Waymo.  The Court's Order also required Defendants to disclose whether any of those documents had been destroyed. Defendants disobeyed that Order.

Uber and Ottomotto had in their control documents relating to the Waymo files taken by Anthony Levandowski from Waymo, but did not disclose to Waymo or the Court that these documents existed.  All three Defendants also knew that other documents relating to the taken Waymo files had been destroyed, but did not disclose that to Waymo or the Court.

This Court issued a second Order requiring Defendants to return to Waymo, by no later than May 31, all documents relating to any Waymo files taken by Anthony Levandowski from Waymo. Uber and Ottomotto disobeyed that Order as well.  As of the May 31 deadline, Uber and Ottomotto had in their control documents relating to files taken by Anthony Levandowski from Waymo, but did not disclose to either Waymo or the Court that these files existed.

On July 3, 2017, this Court issued a third Order, this time requiring Uber and Ottomotto's agents at the law firm of Morisson & Foerster and their consulting firm Stroz Friedberg to show "why they are not in violation of orders herein" requiring production of documents relating to Waymo files taken by Mr. Levandowski from Waymo.  In response to that Order, for the first time Uber and Ottomotto's agent Morrison & Foerster revealed that it had possessed since March 2017, before the deadline of the Court's first Order, documents relating to Waymo files taken by Anthony Levandowski from Waymo. Morrison & Foerster said that it had received these documents from Uber and Ottomotto's other agent, Stroz Friedberg, which had been in possession of them since

---

[5]  Dkt. No. 1502.

March 2016. Morrison & Foerster's possession of those documents should have been disclosed in response to the Court's prior Orders, and Defendants disobeyed those Orders by failing to do so.

In addition, as part of its first Order, this Court also required Defendants Uber, Ottomotto, and Otto Trucking to provide to Waymo and the Court, by no later than June 23, a complete and chronologically organized log of all oral and written communications – including meetings, phone calls, emails, and text messages – in which Anthony Levandowski discussed LiDAR with any of Defendants' employees. Defendants disobeyed that Order too.   As of the June 23 deadline, Defendants failed to disclose the existence of hundreds of communications between Defendants and Mr. Levandowski relating to LiDAR that Defendants knew or should have known existed.

Finally, on August 22, 2017, Uber and Ottomotto's agent Stroz Friedberg revealed for the first time that it was storing ███████████████████████████ from Mr. Levandowski that should have been disclosed much earlier.  This late disclosure violated the Court's prior Orders and the information should have been disclosed in response to the Court's July 3, 2017 Order.

In determining the trustworthiness of Defendants' witnesses, attorneys, and agents, you may, but are not required to, consider the fact that Defendants and their agents disobeyed these Court Orders to disclose the existence and destruction of documents relating to Waymo files that Anthony Levandowski took from Waymo and to disclose the existence of communications between Mr. Levandowski and Defendants' employees relating to LiDAR.

**Disputed Instruction No. 4 Re. COMPLIANCE WITH DISCOVERY ORDERS Offered By**

**Defendants**

Defendants contend that no such instruction should be given (see corresponding memorandum of law).

1

2

**Disputed Instruction No. 5 Re. FIFTH AMENDMENT[6] Offered By Waymo**

3

4      During the testimony of Mr. Levandowski, you heard him invoke his Fifth Amendment

privileges.

5

6      You may, but are not required to, draw adverse inferences based on his assertion of his

Fifth Amendment privilege.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

---

24   [6]   Dkt. 1535 (modified) ("As the undersigned judge explained during a hearing on July 26 (*see* Dkt. No. 1050 at 99:1–13), the jury will be instructed, if the Fifth Amendment is invoked, that it may, but is not required to, draw inferences adverse to *Levandowski* based on his assertion of his Fifth Amendment privilege. If any such adverse inference is drawn against Levandowski, then it will remain up to the jury to decide, as a separate question and based on all the other evidence in the case, whether the fact inferred is also adverse to one or more parties herein.")

25

26

27

28

**Disputed Instruction No. 5 Re. FIFTH AMENDMENT[7] Offered By Uber/Ottomotto**

Every citizen has a right under our Constitution to assert the Fifth Amendment privilege to avoid furnishing evidence that might be used against him in a later criminal prosecution. There are sometimes reasons that a person who is not guilty of a crime may invoke the Fifth Amendment, and therefore the mere fact that the person invokes the right does not necessarily mean the person is guilty of a crime.

You have heard evidence that Anthony Levandowski invoked his Fifth Amendment right against self-incrimination as a basis for refusing to testify about anything that occurred from the time he started working for Google in 2007 to the present.  Mr. Levandowski is not a party to this case, but he is a witness in this case.  So long as it is reasonable and supported by the evidence, you are permitted to assume, but are not required to assume, that if Mr. Levandowski testified, his testimony would have been unfavorable to Mr. Levandowski.

---

[7] 7/26/2017 Hr'g Tr. 98:24–100:8, Dkt. 1050; Dkt. 1535; *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000); *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973); *Slochower v. Bd. of Higher Ed.*, 350 U.S. 551, 557–58, (1956); *Grunewald v. United States*, 353 U.S. 391, 421–22 (1957); *Ohio v. Reiner*, 532 U.S. 17, 20 (2001); *Ullmann v. United States*, 350 U.S. 422, 426–27 (1956); *Lionti v. Lloyd's Ins. Co.*, 709 F.2d 237, 244–45 (3d Cir. 1983) (Stern, J., dissenting); *LiButti v. United States*, 107 F.3d 110, 120–21 (2d Cir. 1997); *Brink's Inc. v. City of N.Y.*, 717 F.2d 700, 715 (2d Cir. 1983) (Winter, J., dissenting); *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1465 (5th Cir. 1992); *Veranda Beach Club v. W. Sur. Co.*, 936 F.2d 1364, 1374 (1st Cir. 1991); *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, Case No. 07-md-01827, Dkt. No. 5536, at 88:9-19 (N.D. Cal. Apr. 25, 2012); *In re Urethane Antitrust Litig.*, No. 04–1616–JWL, 2013 WL 100250, at *3 (D. Kan. Jan. 8, 2013); *Cotton v. City of Eureka*, No. C–08–04386 SBA (EDL), 2010 WL 2889498, at *4 (N.D. Cal. July 22, 2010); *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, 622 F. Supp. 2d 890, 907 (N.D. Cal. 2009); *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 555 (S.D.N.Y. 2011); The Court's Jury Instructions, *Coquina Invs. v. Rothstein & TD Bank, N.A.*, No. 10-60786-Civ-Cooke/Bandstra (S.D. Fla. Jan. 19, 2012), Dkt. 745 at 19–20; Court's Instructions to the Jury, *Sanchez v. Brokop*, No. 04-cv-0134 LCS/RLP (D.N.M. July 22, 2005), Dkt. 158 at 15; 4/14/2017 A. Levandowski  Dep. Tr. 85:8–12, 85:17–88:6; 8/22/2017 A. Levandowski Dep. 193:9–195:10.

1

**Disputed Instruction No. 6 Re. CORPORATE LIABILITY[8] Offered By Waymo**

2

3       Under the law, corporations and limited liability companies are considered to be persons.

4  They can only act through its employees, agents, directors, or officers.  Therefore, a corporation

5  or limited liability company is responsible for the acts of its employees, agents, directors, or

6  officers performed within the scope of authority.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  _____

25  [8]   MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF
26  THE NINTH CIRCUIT §4.2; Case 3:10-cv-03561-WHA Document 1928 at ¶15 (Oracle v.
    Google Final Instructions).
27

28

**Disputed Instruction No. 6 Re. CORPORATE LIABILITY Offered By Defendants**

     Defendants contend that no such instruction should be given (see corresponding memorandum of law).

1

**Disputed Instruction No. 7 Re. TWO OR MORE PARTIES—DIFFERENT LEGAL**

2

**RIGHTS[9] Offered By Waymo**

3

4
     There are three defendants in this trial, Uber Technologies, Inc., Ottomotto LLC, and Otto

5
Trucking LLC.  You should decide the case against each defendant separately.  Unless otherwise

6
stated, the instructions apply to all parties.

7
     Both Ottomotto and Otto Trucking were founded by Anthony Levandowski, who is a

8
former Waymo employee.  Uber has acquired Ottomotto and Mr. Levandowski is currently the

9
managing member of Otto Trucking.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
[9]   MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF
THE NINTH CIRCUIT §1.8.

27

28

## Disputed Instruction No. 7 Re. TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS[10] Offered By Defendants

There are three defendants in this trial, Uber Technologies, Inc., Ottomotto LLC, and Otto Trucking LLC.  You should decide the case against each defendant separately.  Unless otherwise stated, the instructions apply to all parties.

Uber acquired Ottomotto.  Uber did not acquire Otto Trucking.

---

[10]   MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT §1.8.

**Disputed Instruction No. 8 Re. INTRODUCTION TO VICARIOUS RESPONSIBILITY[11]**

**Offered By Waymo and Otto Trucking**

One may authorize another to act on his or her behalf in transactions with third persons. This relationship is called "agency."  The person giving the authority is called the "principal"; the person to whom authority is given is called the "agent."

A principal is responsible for harm caused by the wrongful conduct of its agents while acting within the scope of their authority.

An agent is always responsible for the harm caused by his own wrongful conduct, whether or not the principal is also liable.

---

[11]   CACI 3700.

**[One may authorize another to act on his or her behalf in transactions with third persons. This relationship is called "agency." The person giving the authority is called the "principal"; the person to whom authority is given is called the "agent."]**

**[An employer/A principal] is responsible for harm caused by the wrongful conduct of [his/her/its] [employees/agents] while acting within the scope of their [employment/authority].**

**[An [employee/agent] is always responsible for harm caused by [his/her/ its] own wrongful conduct, whether or not the [employer/principal] is also liable.]**

1

2

**Disputed Instruction No. 8 Re. INTRODUCTION TO VICARIOUS RESPONSIBILITY**

**Offered By Uber/Ottomotto**

3

4

5

Uber and Ottomotto contend that no such instruction should be given (see corresponding

6

memorandum of law).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 9 Re. PARTY HAVING POWER TO PRODUCE BETTER EVIDENCE[12] Offered By Waymo**

You may consider the ability of each party to provide evidence.  If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence.

_____

[12]   CACI 203

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 9 Re. PARTY HAVING POWER TO PRODUCE BETTER**

**EVIDENCE Offered By Defendants**

Defendants contend that no such instruction should be given (see corresponding memorandum of law).

1

**<u>Disputed Instruction No. 10 Re. OUTLINE OF TRIAL[13] Offered By Waymo</u>**

2

3

WITHDRAWN

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

---

[13]   MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT §1.21.

27

28

**Disputed Instruction No. 10 Re. OUTLINE OF TRIAL Offered By Defendants**

WITHDRAWN

**Dispute Instruction No. 11 Re. MISAPPROPRIATION OF TRADE SECRETS—**

**INTRODUCTION[14] Offered By Waymo**

This is an action for trade secret misappropriation relating to Waymo's self-driving car technology.

Waymo is alleging claims for trade secret misappropriation against Uber, Ottomotto, and Otto Trucking under both California law and Federal law.  Trial Exhibit __ is a list of what Waymo claims as its trade secrets.

In support of its claims, Waymo asserts that it is the owner of information relating to its self-driving technology, including custom LIDAR systems that are used to enable the operation of fully self-driving vehicles.

Waymo claims that this information includes nine separate trade secrets and that Uber, Ottomotto, and Otto Trucking misappropriated those trade secrets.  "Misappropriation" means the improper acquisition, use, or disclosure of the trade secrets.

Waymo seeks damages as a result of Uber, Ottomotto, and Otto Trucking's trade secret

---

[14]   CACI 4400.

[*Name of plaintiff*] **claims that [he/she/it] [is/was] the [owner/licensee] of** [*insert general description of alleged trade secret[s]*]**.**

[*Name of plaintiff*] **claims that [this/these]** [*select short term to describe, e.g., information*] **[is/are] [a] trade secret[s] and that** [*name of defendant*] **misappropriated [it/them].  "Misappropriation" means the improper [acquisition/use/ [or] disclosure] of the trade secret[s].**

[*Name of plaintiff*] **also claims that** [*name of defendant*]**'s misappropriation caused [[him/her/it] harm/ [or]** [*name of defendant*] **to be unjustly enriched].**

[*Name of defendant*] **denies [***insert denial of any of the above claims***].**

[[*Name of defendant*] **also claims [***insert affirmative defenses***].]**

misappropriation.

Uber, Ottomotto, and Otto Trucking deny Waymo's claims. Uber, Ottomotto, and Otto Trucking deny that any of the Alleged Trade Secrets is a trade secret, and deny that they misappropriated any of the Alleged Trade Secrets.

Uber, Ottomotto, and Otto Trucking also claim that they have independently developed the technology at issue.

Otto Trucking claims that has not ratified any actions of Anthony Levandowski and that it is not vicariously liable for his alleged actions.

Otto Trucking also claims that it has had no involvement in the development of Uber's LiDAR systems, uses commercially available LiDAR systems instead, and therefore cannot be jointly and severally liable.

**Dispute Instruction No. 11 Re. MISAPPROPRIATION OF TRADE SECRETS—**

**INTRODUCTION[15] Offered By Defendants**

Waymo claims that it is the owner of trade secrets relating to the use of LiDAR in self-driving cars.  Trial Exhibit ___ is a list of what Waymo claims as its trade secrets.  We will refer to this is as "the Alleged Trade Secrets."

Waymo claims that Uber, Ottomotto, and Otto Trucking misappropriated the Alleged Trade Secrets.  "Misappropriation" means the improper use of the Alleged Trade Secrets. [16]

Waymo also claims that Uber, Ottomotto, and Otto Trucking's misappropriation caused them to be unjustly enriched.

Uber, Ottomotto, and Otto Trucking deny Waymo's claims. Uber, Ottomotto, and Otto Trucking deny that any of the Alleged Trade Secrets is a trade secret, and deny that they misappropriated any of the Alleged Trade Secrets.

---

[15]   CACI 4400.

[Name of plaintiff] claims that [he/she/it] [is/was] the [owner/licensee] of [insert general description of alleged trade secret[s]].

[Name of plaintiff] claims that [this/these] [select short term to describe, e.g., information] [is/are] [a] trade secret[s] and that [name of defendant] misappropriated [it/them]. "Misappropriation" means the improper [acquisition/use/ [or] disclosure] of the trade secret[s].

[Name of plaintiff] also claims that [name of defendant]'s misappropriation caused [[him/her/it] harm/ [or] [name of defendant] to be unjustly enriched].

[Name of defendant] denies [insert denial of any of the above claims].

[[Name of defendant] also claims [insert affirmative defenses].]

[16] CACI 4400, Directions for Use ("To avoid confusion, instruct the jury only on the particular theory of misappropriation applicable under the facts of the case.").

1    Uber, Ottomotto, and Otto Trucking also claim that they have independently developed
2  the technology at issue.

3    Otto Trucking claims that it has not ratified any actions of Anthony Levandowski and
4  that it is not vicariously liable for his alleged actions.

5    Otto Trucking also claims that it has had no involvement in the development of Uber's
6  LiDAR systems, uses commercially available LiDAR systems instead, and therefore cannot be
7  jointly and severally liable.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Disputed Instruction No. 12 Re. MISAPPROPRIATION OF TRADE SECRETS—**
**ESSENTIAL FACTUAL ELEMENTS – CALIFORNIA LAW[17] Offered By Waymo**

Waymo claims that Uber, Ottomotto, and Otto Trucking misappropriated trade secrets in violation of California Law.

To succeed on this claim, Waymo must prove all of the following:

1. That Waymo owns one or more of the nine items identified as trade secrets by Waymo.

2. That one or more of the listed items were trade secrets at the time of the misappropriation;

3. That Uber, Ottomotto, and/or Otto Trucking improperly acquired, used, or disclosed one or more of the trade secrets.

I will address the damages available to Waymo in a separate instruction.

_____

[17]   CACI 4401.

[*Name of plaintiff*] **claims that** [*name of defendant*] **has misappropriated a trade secret. To succeed on this claim,** [*name of plaintiff*] **must prove all of the following:**

**1. That** [*name of plaintiff*] **[owned/was a licensee of] [the following:]**[*describe each item claimed to be a trade secret that is subject to the misappropriation claim*]**;**

**2. That [this/these]** [*select short term to describe, e.g., information*] **[was/were] [a] trade secret[s] at the time of the misappropriation;**

**3. That** [*name of defendant*] **improperly [acquired/used/ [or] disclosed] the trade secret[s];**

**4. That [[**name of plaintiff**] was harmed/ [or] [**name of defendant**] was unjustly enriched]; and**

**5. That** [*name of defendant*]**'s [acquisition/use/ [or] disclosure] was a substantial factor in causing [[**name of plaintiff**]'s harm/ [or] [**name of defendant**] to be unjustly enriched].**

**Dispute Instruction No. 12 Re. MISAPPROPRIATION OF TRADE SECRETS—**

**ESSENTIAL FACTUAL ELEMENTS – CALIFORNIA LAW[18] Offered By Defendants**

To succeed on its claim that Uber, Ottomotto, and Otto Trucking misappropriated the Alleged Trade Secrets, Waymo must prove all of the following:

1.      That Waymo owned each claimed trade secret;

2.      That the claimed trade secrets were secret at the time Waymo claims they were misappropriated;

3.      That Uber, Ottomotto, or Otto Trucking improperly acquired or improperly used the trade secrets;

4.      That Uber, Ottomotto, or Otto Trucking were unjustly enriched; and

5.      That Uber's, Ottomotto's, or Otto Trucking's use of the trade secrets was a substantial factor in causing Uber, Ottomotto, or Otto Trucking to be unjustly enriched. [19]

---

[18]   CACI 4401.

[*Name of plaintiff*] **claims that** [*name of defendant*] **has misappropriated a trade secret. To succeed on this claim,** [*name of plaintiff*] **must prove all of the following:**

**1. That** [*name of plaintiff*] **[owned/was a licensee of]** **[the following:]**[*describe each item claimed to be a trade secret that is subject to the misappropriation claim*]**;**

**2. That [this/these]** [*select short term to describe, e.g., information*] **[was/were] [a] trade secret[s] at the time of the misappropriation;**

**3. That** [*name of defendant*] **improperly [acquired/used/ [or] disclosed] the trade secret[s];**

**4. That [[**name of plaintiff**] was harmed/ [or]** [*name of defendant*] **was unjustly enriched]; and**

**5. That** [*name of defendant*]**'s [acquisition/use/ [or] disclosure] was a substantial factor in causing [[**name of plaintiff**]'s harm/ [or]** [*name of defendant*] **to be unjustly enriched].**

[19] CACI 4401, Directions for Use ("To avoid confusion, instruct the jury only on the particular theory of misappropriation applicable under the facts of the case.").

**Disputed Instruction No. 13 Re. TRADE SECRET" DEFINED – CALIFORNIA LAW[20]**

**Offered By Waymo**

Under California law, to prove that Waymo's information were/are trade secrets, Waymo must prove all of the following:

1. That the information was secret;
2. That the information had actual or potential independent economic value because it was secret; and
3. That Waymo made reasonable efforts to keep the information secret.

---

[20]   CACI 4402.

To prove that the [*select short term to describe, e.g., information*] [*was/ were*] [a] trade secret[s], [*name of plaintiff*] must prove all of the following:

1. That the [*e.g., information*] [*was/were*] secret;

2. That the [*e.g., information*] had actual or potential independent economic value because [it was/they were] secret; and

3. That [*name of plaintiff*] made reasonable efforts to keep the [*e.g., information*] secret.

**Disputed Instruction No. 13 Re. "TRADE SECRET" DEFINED – CALIFORNIA LAW[21]**

**Offered By Defendants**

      To prove that the Alleged Trade Secrets on its trade secret list is trade secret, Waymo must prove all of the following:

      1.      That the Alleged Trade Secret is secret;

      2.      That the Alleged Trade Secret had actual or potential independent economic value because it was secret; and

      3.      That Waymo made reasonable efforts to keep the Alleged Trade Secret secret.

---

[21]   CACI 4402.

**To prove that the [*select short term to describe, e.g., information*] [*was/ were*] [a] trade secret[s], [*name of plaintiff*] must prove all of the following:**

**1. That the [*e.g., information*] [*was/were*] secret;**

**2. That the [*e.g., information*] had actual or potential independent economic value because [*it was/they were*] secret; and**

**3. That [*name of plaintiff*] made reasonable efforts to keep the [*e.g., information*] secret.**

1

**Disputed Instruction No. 14 Re. GENERALIZED KNOWLEDGE Offered By Waymo**

2

3

     Waymo contends that no such instruction should be given (see corresponding

4

memorandum of law).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Disputed Instruction No. 14 Re. GENERALIZED KNOWLEDGE[22] Offered By Defendants**

2

3

Generalized knowledge and skill that an employee learned on the job is not a trade secret.

4

Matters of general knowledge in a trade or special knowledge of persons who are skilled in a trade

5

are also not trade secrets.

6

7

8

9

10

11

12

13

14

15

16

17
[22] *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443 (2002) (rejecting doctrine of inevitable disclosure); *DVD Copy Control Ass'n., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004) ("[I]n

18
short, the test for a trade secret is whether the matter sought to be protected is information (1) that is valuable because it is unknown to others and (2) that the owner has attempted to keep

19
secret. The first element is the crucial one here: in order to qualify as a trade secret, the information 'must be secret, and must not be of public knowledge or of a general knowledge in

20
the trade or business.'") (citations omitted); *Winston Research Corp. v. 3M*, 350 F.2d 134, 139 (9th Cir. 1965) ("There was expert testimony that if a technician in the field were asked to design

21
a machine having the time-displacement error achieved by the Mincom machine he would adopt the general approach of reducing the inertia of rotating parts and utilizing a wide band servo

22
system — that this approach was dictated by well known principles of physics. It was therefore not protectible under accepted trade secret doctrine. It was not 'secret,' for it consisted

23
essentially of general engineering principles in the public domain and part of the intellectual equipment of technical employees. Its disclosure could not be treated as betrayal of a confidence

24
placed by Mincom in its technical employees."); *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968) ("the complainant should describe the subject matter of the trade secret with

25
sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain

26
at least the boundaries within which the secret lies.").

27

28

## Stipulated Instruction No. 15 Re. SECRECY REQUIREMENT – CALIFORNIA LAW[23]

Under California law, the secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information.  It may be disclosed to employees involved in Waymo's use of the trade secret as long as they are instructed to keep the information secret.  It may also be disclosed to nonemployees if they are obligated to keep the information secret.  However, it must not have been generally known to the public or to people who could obtain value from knowing it.

---

[23]   CACI 4403.

**The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in [*name of plaintiff*]'s use of the trade secret as long as they are instructed to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.**

**Stipulated Instruction No. 16 Re. "INDEPENDENT ECONOMIC VALUE" EXPLAINED – CALIFORNIA LAW[24]**

Under California law, each claimed trade secret has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

In determining whether information had actual or potential independent economic value because it was secret, you may consider the following:

      a) The extent to which Waymo obtained or could obtain economic value from the information in keeping it secret;

      b) The extent to which others could obtain economic value from the information

---

[24]   CACI 4412.

**[*Select short term to describe, e.g., Information*] has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the [*e.g., information*] and who could obtain economic value from its disclosure or use.**

**In determining whether [*e.g., information*] had actual or potential independent economic value because it was secret, you may consider the following:**

**(a) The extent to which [*name of plaintiff*] obtained or could obtain economic value from the [*e.g., information*] in keeping [it/them] secret;**

**(b) The extent to which others could obtain economic value from the [*e.g., information*] if [it were/they were] not secret;**

**(c) The amount of time, money, or labor that [*name of plaintiff*] expended in developing the [*e.g., information*];**

**(d) The amount of time, money, or labor that [would be/was] saved by a competitor who used the [*e.g., information*];**

**[(e) [*Insert other applicable factors*].]**

**The presence or absence of any one or more of these factors is not necessarily determinative.**

1     if it were not secret;

2   c) The amount of time, money, or labor that Waymo expended in developing the

3     information;

4   d) The amount of time, money, or labor that Uber, Ottomotto and/or Otto Trucking

5     would be or was by using the information;

6 The presence or absence of any one or more of these factors is not necessarily

7 determinative.

**Stipulated Instruction No. 17 Re. REASONABLE EFFORTS TO PROTECT SECRECY –
CALIFORNIA LAW[25]**

---

[25]   CACI 4404.

**To establish that the [***select short term to describe, e.g., information***] [is/ are] [a] trade secret[s], [*name of plaintiff*] must prove that [he/she/it] made reasonable efforts under the circumstances to keep it secret.**

**"Reasonable efforts" are the efforts that would be made by a reasonable [person/business] in the same situation and having the same knowledge and resources as [*name of plaintiff*], exercising due care to protect important information of the same kind. [This requirement applies separately to each item that [*name of plaintiff*] claims to be a trade secret.]**

**In determining whether or not [*name of plaintiff*] made reasonable efforts to keep the [*e.g., information*] secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:**

**[a. Whether documents or computer files containing the [*e.g., information*] were marked with confidentiality warnings;]**

**[b. Whether [*name of plaintiff*] instructed [his/her/its] employees to treat the [*e.g., information*] as confidential;]**

**[c. Whether [*name of plaintiff*] restricted access to the [*e.g., information*] to persons who had a business reason to know the information;]**

**[d. Whether [*name of plaintiff*] kept the [*e.g., information*] in a restricted or secured area;]**

**[e. Whether [*name of plaintiff*] required employees or others with access to the [*e.g., information*] to sign confidentiality or nondisclosure agreements;]**

**[f. Whether [*name of plaintiff*] took any action to protect the specific [*e.g., information*], or whether it relied on general measures taken to protect its business information or assets;]**

**[g. The extent to which any general measures taken by [*name of plaintiff*] would prevent the unauthorized disclosure of the [*e.g., information*];]**

**[h. Whether there were other reasonable measures available to [*name of plaintiff*] that [he/she/it] did not take;]**

**[i. *Specify other factor(s).*]**

Under California law, to establish that Waymo's information are trade secrets, Waymo must prove that it made reasonable efforts under the circumstances to keep the information secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Waymo, exercising due care to protect important information of the same kind. This requirement applies separately to each item that Waymo claims to be a trade secret.

In determining whether or not Waymo made reasonable efforts to keep the information secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

a. Whether products, hardware, documents or computer files containing the information were marked with confidentiality warnings;

b. Whether Waymo instructed its employees to treat the information as confidential;

c. Whether Waymo restricted access to the information to persons who had a business reason to know the information;

d. Whether Waymo kept the information in a restricted or secured area;

e. Whether Waymo required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

f. Whether Waymo took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;

g. The extent to which any general measures taken by Waymo would prevent the unauthorized disclosure of the information;

h. Whether there were other reasonable measures available to Waymo that it did not take;

---

**The presence or absence of any one or more of these factors is not necessarily determinative.**

The presence or absence of any one or more of these factors is not necessarily determinative.

1  **Disputed Instruction No. 18 Re. DECLARING TRADE SECRETS Offered By Waymo**

2

3       Waymo contends that no such instruction should be given (see corresponding

4  memorandum of law).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Disputed Instruction No. 18 Re. DECLARING TRADE SECRETS[26] Offered By**

2

**Defendants**

3

4

Merely declaring that something is confidential or a trade secret is not evidence that the

5

information is the subject of efforts that are reasonable under the circumstances to maintain its

6

secrecy.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[26]  *Louisiana Pac. Corp. v. James Hardie Bldg. Prods., Inc.*, No. C-12-3433 SC, 2013 WL 3483618, at *2 (N.D. Cal. July 8, 2013); *EarthCam, Inc. v. Oxblue Corp.*, No. 15-11893, 2017 WL 3188453, at *8 (11th Cir. July 27, 2017) (citing statute); *Pollara v. Radiant Logistics Inc.*, No. CV 12-344 GAF (JEMx), 2014 WL 12585781, at *1 (C.D. Cal. June 6, 2014) (citing *Thompson v. Impaxx*, 113 Cal. App. 4th 1425, 1430 (2003)); *PSC Indus. Outsourcing, LP v. Kodysz*, No. 1:13-CV-0964, 2013 WL 3354452, at *3 (E.D. Cal. July 3, 2013) ("what is or is not a 'trade secret' is question of fact, not merely a matter of labeling"); *Hertz v. Luzenac Am., Inc*., No. 04-CV-01961-LTB-CBS, 2006 WL 1794736, at *2 (D. Colo. June 27, 2006).

1

**Disputed Instruction 19. Re. MISAPPROPRIATION BY ACQUISITION – CALIFORNIA**

2

**LAW[27] Offered By Waymo**

3

4

     Under California law, Uber, Ottomotto, and/or Otto Trucking misappropriated Waymo's

5

trade secrets by acquisition if Uber, Ottomotto, and/or Otto Trucking acquired the trade secrets

6

and knew or had reason to know that any person used improper means to acquire them.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

———————————

24

[27]   CACI 4405.

25

**[*Name of defendant*] misappropriated [*name of plaintiff*]'s trade secret[s] by acquisition if**

26

**[*name of defendant*] acquired the trade secret[s] and knew or had reason to know that**

**[he/she/it/[*name of third party*]] used improper means to acquire [it/them].**

27

28

**Disputed Instruction 19. Re. MISAPPROPRIATION BY ACQUISITION – CALIFORNIA LAW[28] Offered By Defendants**

Defendants contend that no such instruction should be given (see corresponding memorandum of law).

---

[28]   CACI 4405.

**[*Name of defendant*] misappropriated [*name of plaintiff*]'s trade secret[s] by acquisition if [*name of defendant*] acquired the trade secret[s] and knew or had reason to know that [he/she/it/[*name of third party*]] used improper means to acquire [it/them].**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Disputed Instruction No. 20 Re. PASSIVE OR INADVERTENT RECEIPT Offered By Waymo

Waymo contends that no such instruction should be given (see corresponding memorandum of law).

**Disputed Instruction No. 20 Re. PASSIVE OR INADVERTENT RECEIPT[29] Offered By Defendants**

Passively or inadvertently receiving Waymo's trade secrets is not evidence that Uber, Ottomotto, or Otto Trucking misappropriated Waymo's trade secrets. Instead, you may only find that Uber, Ottomotto, or Otto Trucking misappropriated Waymo's trade secrets if Waymo proves by a preponderance of the evidence that Uber, Ottomotto, or Otto Trucking undertook pointed conduct intended to secure dominion over Waymo's trade secrets.

---

[29] *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 222 (2010), *as modified on denial of reh'g* (May 27, 2010), *overruled in part on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ("To acquire a thing is, most broadly, to 'receive' or 'come into possession of' it. (1 Oxford English Dict. (2d ed. 1989), p. 115.) But the term implies more than passive reception; it implies pointed conduct intended to secure dominion over the thing, i.e., '[t]o gain, obtain, or get as one's own, to gain the ownership of (by one's own exertions or qualities).'' (*See* id. at p. 115 ['acquisition' as '[t]he action of obtaining or getting for oneself, or by one's own exertion'].) One does not ordinarily 'acquire' a thing inadvertently; the term implies conduct directed to that objective. The choice of that term over 'receive' suggests that inadvertently coming into possession of a trade secret will not constitute acquisition. Thus one who passively receives a trade secret, but neither discloses nor uses it, would not be guilty of misappropriation."); *see also* CACI 4405 (citing to *Silvaco*).

**Disputed Instruction No. 21. Re. MISAPPROPRIATION BY USE – CALIFORNIA LAW**[30]

**Offered By Waymo**

Under California law, Uber, Ottomotto, and/or Otto Trucking misappropriated Waymo's trade secrets by use if Uber, Ottomotto, and/or Otto Trucking used them without Waymo's consent and did any of the following:

1.  Acquired knowledge of the trade secrets by improper means; or

2.  At the time of use, knew or had reason to know that its knowledge of Waymo's trade secrets

---

[30]   CACI 4407.

[*Name of defendant*] **misappropriated** [*name of plaintiff*]**'s trade secret[s] by use if** [*name of defendant*]

**1. used [it/them] without** [*name of plaintiff*]**'s consent; and**

**2. [did any of the following:]**

**2. [*insert one or more of the following:*]**

**2. [acquired knowledge of the trade secret[s] by improper means][./ ; or]**

**2. [at the time of use, knew or had reason to know that [his/her/its] knowledge of** [*name of plaintiff*]**'s trade secret[s] came from or through** [*name of third party*]**, and that** [*name of third party*] **had previously acquired the trade secret[s] by improper means][./; or]**

**2. [at the time of use, knew or had reason to know that [his/her/its] knowledge of** [*name of plaintiff*]**'s trade secret[s] was acquired under circumstances creating a legal obligation to limit use of the** [*select short term to describe, e.g., information*]**]][./; or]**

**2. [at the time of use, knew or had reason to know that [his/her/its] knowledge of** [*name of plaintiff*]**'s trade secret[s] came from or through** [*name of third party*]**, and that** [*name of third party*] **had a duty to** [*name of plaintiff*] **to limit use of the** [*e.g., information*]**]][./; or]**

**2. [Before a material change of [his/her/its] position, knew or had reason to know that [it was/they were] [a] trade secret[s] and that knowledge of [it/them] had been acquired by accident or mistake.]**

came from or through a third party or other defendant, and that the third party or other defendant had previously acquired the trade secrets by improper means; or

3. At the time of use, knew or had reason to know that its knowledge of Waymo's trade secrets was acquired under circumstances creating a legal obligation to limit use of the information; or

4. At the time of use, knew or had reason to know that its knowledge of Waymo's trade secrets came from or through a third party, and that third party had a duty to Waymo to limit use of the information.

**Disputed Instruction No. 21. Re. MISAPPROPRIATION BY USE – CALIFORNIA LAW[31]**

**Offered By Defendants**

Uber and/or Ottomotto misappropriated Waymo's claimed trade secrets by use if they used them without Waymo's consent and did any of the following:

1. Acquired knowledge of the trade secrets by improper means; or

2. At the time of use, knew or had reason to know that its knowledge of Waymo's trade secrets came from or through Anthony Levandowski, and that Anthony Levandowski had previously

---

[31]   CACI 4407.

**[*Name of defendant*] misappropriated [*name of plaintiff*]'s trade secret[s] by use if [*name of defendant*]**

**1. used [it/them] without [*name of plaintiff*]'s consent; and**

**2. [did any of the following:]**

   **[*insert one or more of the following:*]**

      **[acquired knowledge of the trade secret[s] by improper means][./ ; or]**

      **[at the time of use, knew or had reason to know that [his/her/its] knowledge of [*name of plaintiff*]'s trade secret[s] came from or through [*name of third party*], and that [*name of third party*] had previously acquired the trade secret[s] by improper means][./; or]**

      **[at the time of use, knew or had reason to know that [his/her/its] knowledge of [*name of plaintiff*]'s trade secret[s] was acquired under circumstances creating a legal obligation to limit use of the [*select short term to describe, e.g., information*]][./; or]**

      **[at the time of use, knew or had reason to know that [his/her/its] knowledge of [*name of plaintiff*]'s trade secret[s] came from or through [*name of third party*], and that [*name of third party*] had a duty to [*name of plaintiff*] to limit use of the [*e.g., information*]][./; or]**

      **[Before a material change of [his/her/its] position, knew or had reason to know that [it was/they were] [a] trade secret[s] and that knowledge of [it/them] had been acquired by accident or mistake.]**

1    acquired the trade secrets by improper means.

1

**Disputed Instruction No. 22. Re. DIFFERING PRODUCTS[32] Offered By Waymo**

2

3

     Misappropriation by use of trade secrets occurs even if the defendants' product differs in

4

some respects from the trade secret.

5

6

7

8

9

10

11

12

13

14

15

16

_____

17   [32] *Speech Tech. Assocs. v. Adaptive Commc'n Sys., Inc.,* 1994 WL 449032, at *10 (N.D. Cal.

18   Aug. 16, 1994) (holding defendants liable on trade secrets misappropriation, "some of the
technology used in the new products was different, many of the technical aspects, and most of

19   the functional aspects of Prototype # 1 were incorporated into the revised Alltalks.  The
incidental differences between Prototype # 1 and the redesigned Alltalks do not absolve

20   defendants from liability for misappropriation of trade secrets."); *see also InfoSpan, Inc. v.*
*Emirates NBD Bank PJSC*, 2015 WL 13357646, at *5 (C.D. Cal. May 6, 2015) ("[T]he Bank

21   cannot avoid liability for misappropriation by allegedly taking a bundle of trade secrets and not

22   using the entire bundle, but then selectively choosing which ones it would use. . . .  InfoSpan
does not argue that the Bank used its SpanCash trade secrets to create a product with all the

23   claimed unique features of SpanCash.  Instead, InfoSpan contends that it has presented sufficient
evidence to show a genuine dispute as to whether the Bank used InfoSpan's trade secrets to

24   research, develop, and/or modify four specific Bank products: . . . The Court agrees . . . .");

25   *Verigy US, Inc. v. Mayder*, 2008 WL 564634, at *7 (N.D. Cal. Feb. 29, 2008) (granting
preliminary injunction on trade secrets misappropriation claim, "[u]nder California law, minor

26   variations in a product do not negate a claim for misappropriation of trade secrets.").

27

28

1

**<u>Disputed Instruction No. 22. Re. DIFFERING PRODUCTS Offered By Defendants</u>**

2

3

     Defendants contend that no such instruction should be given (see corresponding

4

memorandum of law).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>Disputed Instruction No. 23. Re. INEVITABLE DISCLOSURE Offered By Waymo</u>**

2

3

    Waymo contends that no such instruction should be given (see corresponding

4

memorandum of law).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 23. Re. INEVITABLE DISCLOSURE[33] Offered By Defendants**

       To find misappropriation by use you must find that Uber, Ottomotto, and Otto Trucking actually used the claimed trade secret.  It is not enough for Waymo to show that their employees would inevitably use the claimed trade secret in their work for Uber.  Waymo must show that Uber, Ottomotto, and Otto Trucking directly exploited Waymo's claimed trade secret for their own advantage.

---

[33] *Whyte v. Schlage Lock Co*., 101 Cal. App. 4th 1443, 1458, 1463–64 (2002) ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete."); Cal. Bus. & Prof. Code Section 16600.

**<u>Disputed Instruction No. 24 Re. MISAPPROPRIATION BY DISCLOSURE –</u>**

**<u>CALIFORNIA LAW[34] Offered By Waymo</u>**

Under California law, Uber, Ottomotto, and/or Otto Trucking misappropriated Waymo's trade secrets by disclosure if Uber, Ottomotto, and/or Otto Trucking disclosed any trade secret without Waymo's consent and did any of the following:

　　1.   Acquired knowledge of the trade secrets by improper means; or

　　2.   At the time of disclosure, knew or had reason to know that its knowledge of

---

[34]   CACI 4406.

[*Name of defendant*] **misappropriated** [*name of plaintiff*]**'s trade secret[s] by disclosure if** [*name of defendant*] **1. disclosed [it/them] without** [*name of plaintiff*]**'s consent; and**

**2. [did any of the following:]**

**2. [*insert one or more of the following:*]**

**2. [acquired knowledge of the trade secret[s] by improper means][./; or]**

**2. [at the time of disclosure, knew or had reason to know that [his/her/its] knowledge of** [*name of plaintiff*]**'s trade secret[s] came from or through** [*name of third party*]**, and that** [*name of third party*] **had previously acquired the trade secret[s] by improper means][./; or]**

**2. [at the time of disclosure, knew or had reason to know that [his/her/its] knowledge of** [*name of plaintiff*]**'s trade secret[s] was acquired [*insert circumstances giving rise to duty to maintain secrecy*], which created a duty to keep the [*select short term to describe, e.g., information*] secret][./; or]**

**2. [at the time of disclosure, knew or had reason to know that [his/her/its] knowledge of** [*name of plaintiff*]**'s trade secret[s] came from or through** [*name of third party*]**, and that** [*name of third party*] **had a duty to** [*name of plaintiff*] **to keep the [*e.g., information*] secret][./; or]**

**2. [Before a material change of [his/her/its] position, knew or had reason to know that [it was/they were] [a] trade secret[s] and that knowledge of [it/them] had been acquired by accident or mistake.]**

Waymo's trade secrets came from or through a third party or other defendant, and that the third party or other defendant had previously acquired the trade secrets by improper means; or

3. At the time of disclosure, knew or had reason to know that its knowledge of Waymo's trade secrets was acquired by virtue of a third parties' employment with Waymo, which created a duty to keep the information secret; or

4. At the time of disclosure, knew or had reason to know that its knowledge of Waymo's trade secrets came from or through a third party and that third party had a duty to Waymo to keep the information secret.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 24 Re. MISAPPROPRIATION BY DISCLOSURE –**

**CALIFORNIA LAW Offered By Defendants**


Defendants   contend   that   no   such   instruction   should   be   given   (see   corresponding
memorandum of law).

**Stipulated Instruction No. 25 Re. IMPROPER MEANS OF ACQUIRING TRADE SECRET – CALIFORNIA LAW**[35]

Under California law, improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, misrepresentation, breach or inducing a breach of a duty to maintain secrecy.

However, it is not improper to acquire a trade secret or knowledge of the trade secret by any of the following:

1.      Independent efforts to invent or discover the information;

2.      Reverse engineering; that is, examining or testing a product to determine how it works, by a person who has a right to possess the product;

3.      Observing the information in public use or on public display; or

---

[35]   CACI 4408.

**Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, [theft/bribery/misrepresentation/ breach or inducing a breach of a duty to maintain secrecy/ [or] wiretapping, electronic eavesdropping, [or] [*insert other means of espionage*]].**

**[However, it is not improper to acquire a trade secret or knowledge of the trade secret by [any of the following]:**

**[1. Independent efforts to invent or discover the information;]**

**[2. Reverse engineering; that is, examining or testing a product to determine how it works, by a person who has a right to possess the product;]**

**[3. Obtaining the information as a result of a license agreement with the owner of the information;]**

**[4. Observing the information in public use or on public display;] [or]**

**[5. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.]]**

1    4.    Obtaining the information from published literature, such as trade journals,

2 reference books, the Internet, or other publicly available sources.

**Disputed Instruction No. 26. Re. CHANGING EMPLOYERS Offered By Waymo**

Waymo contends that no such instruction should be given (see corresponding memorandum of law).

**Disputed Instruction No. 26. Re. CHANGING EMPLOYERS[36] Offered By Defendants**

      You have heard testimony that employees of Uber, Ottomotto, and Otto Trucking used to work for Google and/or Waymo. The mere fact that employees left Google or Waymo to work for one of these companies does not mean that they used Waymo's trade secrets after they left Google or Waymo.  Employees are allowed to change employers, and to apply their talents and skill sets in their new jobs.  However, they may not use trade secrets that belong to their former employer.

---

[36]  *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1458, 1463–64 (2002) ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete."); Cal. Bus. & Prof. Code Section 16600.

**Disputed Instruction No. 27 Re. MISAPPROPRIATION OF TRADE SECRETS—**

**INTRODUCTION TO FEDERAL LAW[37] Offered By Waymo**

Waymo has also brought a claim for misappropriation of trade secrets under Federal law.

An owner of a trade secret that is misappropriated may also bring a civil action under Federal Law if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.

To succeed on this claim, Waymo must prove all of the following:

1. That Waymo owns one or more of the nine items identified as trade secrets by Waymo;

2. That one or more of the listed items were trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce; and

3. That Uber, Ottomotto, and/or Otto Trucking improperly acquired, used, or disclosed one or more of the trade secrets;

I will address the damages available to Waymo in a separate instruction.

---

[37]  18 U.S.C. § 1836(b)(1).

**(1) In general.--An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 27 Re. MISAPPROPRIATION OF TRADE SECRETS—**

**INTRODUCTION TO FEDERAL LAW Offered By Defendants**

Waymo has also brought a claim for misappropriation of trade secrets under a federal statute called the Defend Trade Secrets Act of 2016.  If you find that Waymo has established by a preponderance of the evidence that Uber, Ottomotto, or Otto Trucking misappropriated any of Waymo's nine trade secrets under state law, you should then consider whether Waymo has established by a preponderance of the evidence that "the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."[38]

If you find that Uber, Ottomotto, and Otto Trucking misappropriated any of Waymo's claimed trade secrets based solely upon acts of misappropriation taking place before May 11, 2016, you may not find that Uber, Ottomotto, or Otto Trucking misappropriated that trade secret under federal law.[39]

"Interstate commerce" is commercial activity that crosses more than one country or state, such as the movement of goods from one state to another.[40]

---

[38] 18 U.S.C.  1836(b)(1) ("An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.").

[39] *Avago Techs. U.S. Inc. v. Nanoprecision Prods., Inc.*, No. 16-cv-03737-JCS, 2017 WL 412524, at *8 (N.D. Cal. Jan. 31, 2017)("The DTSA applies to 'any misappropriation of a trade secret ... for which any act occurs on or after the date of the  enactment of [the] Act." (quoting Defend Trade Secrets Act of 2016, PL 114-153, May 11, 2016, 130 Stat. 376.  The date of enactment was May 11, 2016.)).

[40] CACI 2900, FELA – Essential Factual Elements (["'Interstate commerce' is commercial activity that crosses more than one country or state, such as the movement of goods from one state to another."]).

## Disputed Instruction No. 28 Re. TRADE SECRET DEFINED – FEDERAL LAW[41] Offered By Waymo

Under Federal law, the term "trade secret" includes all forms and types of scientific, technical, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if the owner thereof has taken reasonable measures to keep such information secret; and the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

---

[41]   18 U.S.C.A. § 1839.

**(3) the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--**

**(A) the owner thereof has taken reasonable measures to keep such information secret; and**

**(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;**

1  **Disputed Instruction No. 28 Re. TRADE SECRET DEFINED – FEDERAL LAW Offered**
2  **By Defendants**
3
4       Defendants contend that no such instruction should be given (see corresponding
5  memorandum of law).
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Disputed Instruction No. 29 Re. OWNERSHIP DEFINED – FEDERAL LAW[42] Offered By**

**Waymo**

Under Federal law, the term "owner", with respect to a trade secret, means the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed.

---

[42]   18 U.S.C.A. § 1839.

**(4) the term "owner", with respect to a trade secret, means the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed;**

**Disputed Instruction No. 29 Re. OWNERSHIP DEFINED – FEDERAL LAW Offered By Defendants**

Defendants contend that no such instruction should be given (see corresponding memorandum of law).

**Disputed Instruction No. 30 Re. MISAPPROPRIATION DEFINED – FEDERAL LAW[43]**

**Offered By Waymo**

Under Federal law, the term "misappropriation" means acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

Misappropriation also includes disclosure or use of a trade secret of another without

---

[43]   18 U.S.C.A. § 1839.

**(5) the term "misappropriation" means--**

**(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or**

**(B) disclosure or use of a trade secret of another without express or implied consent by a person who--**

**(i) used improper means to acquire knowledge of the trade secret;**

**(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--**

**(I) derived from or through a person who had used improper means to acquire the trade secret;**

**(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or**

**(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or**

**(iii) before a material change of the position of the person, knew or had reason to know that--**

**(I) the trade secret was a trade secret; and**

**(II) knowledge of the trade secret had been acquired by accident or mistake;**

express or implied consent by a person who used improper means to acquire knowledge of the trade secret or at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived from or through a person who had used improper means to acquire the trade secret; acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 30 Re. MISAPPROPRIATION DEFINED – FEDERAL LAW**

**Offered By Defendants**


Defendants contend that no such instruction should be given (see corresponding memorandum of law).

**<u>Disputed Instruction No. 31 Re. IMPROPER MEANS DEFINED – FEDERAL LAW</u>[44]**

**<u>Offered By Waymo</u>**

Under Federal law, the term "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.  Improper means does not include reverse engineering, independent derivation, or any other lawful means of acquisition.

---

[44]   18 U.S.C.A. § 1839.

**(6) the term "improper means"--**

**(A) includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and**

**(B) does not include reverse engineering, independent derivation, or any other lawful means of acquisition; and**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 31 Re. IMPROPER MEANS DEFINED – FEDERAL LAW**

**Offered By Defendants**

Defendants contend that no such instruction should be given (see corresponding memorandum of law).

1

**Disputed Instruction No. 32 Re. DUTY TO EMPLOYER[45] Offered By Waymo**

2

3

4

5

    Under both Federal and California law, an employee has a duty not to use or disclose trade secrets that the employee acquired during the course of his or her employment.  This duty survives the termination of the employment relationship.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---

26
[45]   *Blackbird Tecnhologies, Inc. v. Joshi,* No. 5:15-CV-04272-EJD, 2015 WL 5818067, at *4
(N.D. Cal. Oct. 6, 2015), *appeal dismissed* (Nov. 23, 2015)

27

28

1

**<u>Disputed Instruction No. 32 Re. DUTY TO EMPLOYER Offered By Waymo</u>**

2

3

    Defendants contend that no such instruction should be given (see corresponding

4

memorandum of law).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 33 Re. COMBINATIONS AS TRADE SECRETS[46] Offered By Waymo**

Under both Federal and California law, combinations of public information from a variety of different sources when combined in a novel way can be a trade secret. It does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, as long as the combination of all such information is not generally known.

---

[46]   *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 399 F. Supp. 2d 1064 (N.D. Cal. 2005); Leatt Corp. v. Innovative Safety Tech., LLC, 2010 WL 1526382 (S.D. Cal. Apr. 15, 2010); SkinMedica, Inc. v. Histogen Inc., 869 F. Supp. 2d 1176 (S.D. Cal. 2012); United States v. Nosal, 844 F.3d 1024 (9th Cir. 2016); Verigy US, Inc. v. Mayder, 2008 WL 564634 (N.D. Cal. Feb. 29, 2008).*

## **Disputed Instruction No. 33 Re. COMBINATIONS AS TRADE SECRETS Offered By Defendants**

Defendants contend that no such instruction should be given (see corresponding memorandum of law).

**<u>Disputed Instruction No. 34 Re. WILLFUL AND MALICIOUS MISAPPROPRIATION</u>**

**<u>OF TRADE SECRETS[47] Offered By Waymo</u>**

If you decide that Uber, Ottomotto, and/or Otto Trucking have misappropriated a trade secret of Waymo under either California or Federal law, you will be asked on your verdict form to indicate whether such misappropriation was willful and malicious. Waymo must prove that Uber, Ottomotto, and/or Otto Trucking acted willfully and maliciously by clear and convincing evidence.

"Willfully" means that Uber, Ottomotto, and/or Otto Trucking acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that Uber, Ottomotto, and/or Otto Trucking acted with an intent to

---

[47]  18 U.S.C.A. § 1836; CACI 4411.

**If you decide that [*name of defendant*]'s misappropriation caused [*name of plaintiff*] harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed [*name of plaintiff*] and to discourage similar conduct in the future.**

**In order to recover punitive damages, [*name of plaintiff*] must prove [by clear and convincing evidence] that [*name of defendant*] acted willfully and maliciously. You must determine whether [*name of defendant*] acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.**

**"Willfully" means that [*name of defendant*] acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.**

**"Maliciously" means that [*name of defendant*] acted with an intent to cause injury, or that [*name of defendant*]'s conduct was despicable and was done with a willful and knowing disregard for the rights of others.**

**"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. [*Name of defendant*] acted with knowing disregard if [he/she/it] was aware of the probable consequences of [his/her/its] conduct and deliberately failed to avoid those consequences.**

cause injury, or that Uber and/or Otto Trucking's conduct was despicable and was done with a willful and knowing disregard for the rights of others.

"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people.  Uber, Ottomotto, and/or Otto Trucking acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

**<u>Disputed Instruction No. 34 Re. WILLFUL AND MALICIOUS MISAPPROPRIATION</u>**

**<u>OF TRADE SECRETS[48] Offered By Defendants</u>**

If you decide that Uber, Ottomotto, or Otto Trucking misappropriated the alleged trade secrets and caused Waymo harm, you must decide whether that conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed Waymo and to discourage similar conduct in the future.

In order to recover punitive damages, Waymo must prove by clear and convincing evidence that Uber, Ottomotto, or Otto Trucking acted willfully and maliciously.  You must determine whether Uber, Ottomotto, or Otto Trucking acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages.  I will calculate the amount later.

---

[48]   CACI 4411.

**If you decide that** [*name of defendant*]**'s misappropriation caused** [*name of plaintiff*] **harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed** [*name of plaintiff*] **and to discourage similar conduct in the future.**

**In order to recover punitive damages,** [*name of plaintiff*] **must prove [by clear and convincing evidence] that** [*name of defendant*] **acted willfully and maliciously. You must determine whether** [*name of defendant*] **acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.**

**"Willfully" means that** [*name of defendant*] **acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.**

**"Maliciously" means that** [*name of defendant*] **acted with an intent to cause injury, or that** [*name of defendant*]**'s conduct was despicable and was done with a willful and knowing disregard for the rights of others.**

**"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. [***Name of defendant***] acted with knowing disregard if [he/she/it] was aware of the probable consequences of [his/her/its] conduct and deliberately failed to avoid those consequences.**

"Willfully" means that the party acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that the party acted with an intent to cause injury, or that Uber's, Ottomotto's, or Otto Trucking's conduct was despicable and was done with a willful and knowing disregard for the rights of others.  "Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people.  Uber, Ottomotto, or Otto Trucking acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

**Disputed Instruction No. 35 Re. TORT LIABILITY ASSERTED AGAINST PRINCIPAL—ESSENTIAL FACTUAL ELEMENTS[49] Offered By Waymo**

Waymo claims that it was harmed by the misappropriation of one or more of defendants' agents.

Waymo also claims that Uber, Ottomotto, and/or Otto Trucking is responsible for the harm caused by the trade secret misappropriation because a third party was acting as its agent in connection with the trade secret misappropriation.

If you find that the trade secret misappropriation harmed Waymo, then you must decide whether Uber, Ottomotto, and/or Otto Trucking is responsible for the harm.

Uber, Ottomotto, and/or Otto Trucking is responsible if Waymo proves both of the following:

1.   That a third party was Uber, Ottomotto, and/or Otto Trucking's agent; and

2.   That the third party was acting within the scope of their agency within the scope of its agency when it harmed Waymo.

---

[49]   CACI 3701.

**[*Name of plaintiff*] claims that [he/she] was harmed by [*name of agent*]'s [*insert tort theory, e.g., "negligence"*].**

**[*Name of plaintiff*] also claims that [*name of defendant*] is responsible for the harm because [*name of agent*] was acting as [his/her/its] [agent/employee/[*insert other relationship, e.g., "partner"*]] when the incident occurred.**

**If you find that [*name of agent*]'s [*insert tort theory*] harmed [*name of plaintiff*], then you must decide whether [*name of defendant*] is responsible for the harm. [*Name of defendant*] is responsible if [*name of plaintiff*] proves both of the following:**

**1. That [*name of agent*] was [*name of defendant*]'s [agent/employee/ [*insert other relationship*]]; and**

**2. That [*name of agent*] was acting within the scope of [his/her] [agency/employment/[*insert other relationship*]] when [he/she] harmed [*name of plaintiff*].**

**Disputed Instruction No. 35 Re. TORT LIABILITY ASSERTED AGAINST PRINCIPAL—ESSENTIAL FACTUAL ELEMENTS[50] Offered By Otto Trucking**

Waymo claims that it was harmed by Mr. Levandowski's misappropriation of trade secrets.

Waymo also claims that Otto Trucking is responsible that harm because Mr. Levandowski was acting as its agent when the misappropriation of trade secrets occurred.

If you find that the trade secret misappropriation harmed Waymo, then you must decide whether Otto Trucking is responsible for the harm if Waymo proves both the following.

1.      That Mr. Levandowski was Otto Trucking's agent; and

2.      That Mr. Levandowski was acting within the scope of his agency when he harmed Waymo.

---

[50]   CACI 3701.

[*Name of plaintiff*] claims that [he/she] was harmed by [*name of agent*]'s [*insert tort theory, e.g., "negligence"*].

[*Name of plaintiff*] also claims that [*name of defendant*] is responsible for the harm because [*name of agent*] was acting as [his/her/its] [agent/employee/[*insert other relationship, e.g., "partner"*]] when the incident occurred.

If you find that [*name of agent*]'s [*insert tort theory*] harmed [*name of plaintiff*], then you must decide whether [*name of defendant*] is responsible for the harm. [*Name of defendant*] is responsible if [*name of plaintiff*] proves both of the following:

1. That [*name of agent*] was [*name of defendant*]'s [agent/employee/ [*insert other relationship*]]; and

2. That [*name of agent*] was acting within the scope of [his/her] [agency/employment/[*insert other relationship*]] when [he/she] harmed [*name of plaintiff*].

1

2

**Disputed Instruction No. 35 Re. TORT LIABILITY ASSERTED AGAINST**

**PRINCIPAL—ESSENTIAL FACTUAL ELEMENTS Offered By Uber/Ottomotto**

3

4

Uber and Ottomotto contend that no such instruction should be given (see corresponding memorandum of law).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

### Disputed Instruction No. 36 Re. EXISTENCE OF "AGENCY" RELATIONSHIP DISPUTED[51] Offered By Waymo

3

4

Waymo claims that one or more third parties were Uber, Ottomotto, and/or Otto

5

Trucking's agent and that Uber, Ottomotto, and/or Otto Trucking is therefore responsible for the

6

agent's conduct.

7

If Waymo proves that Uber, Ottomotto, and/or Otto Trucking gave one or more third

8

parties authority to act on its behalf, then that third party was Uber, Ottomotto, and/or Otto

9

Trucking's agent.  This authority may be shown by words or may be implied by the parties'

10

conduct.  This authority cannot be shown by the words of the third party alone.

11

12

13

14

15

16

17

18

19

20

21

22

23

---

[51] CACI 3705

24

**[Name of plaintiff] claims that [name of agent] was [name of defendant]'s agent and that**

25

**[name of defendant] is therefore responsible for [name of agent]'s conduct.**

**If [name of plaintiff] proves that [name of defendant] gave [name of agent] authority to act**

26

**on [his/her/its] behalf, then [name of agent] was [name of defendant]'s agent. This**

27

**authority may be shown by words or may be implied by the parties' conduct. This**

**authority cannot be shown by the words of [name of agent] alone.**

28

**Disputed Instruction No. 36 Re. EXISTENCE OF "AGENCY" RELATIONSHIP**

**DISPUTED[52] Offered By Otto Trucking**

Waymo claims that Mr. Levandowski was Otto Trucking's agent and that Mr. Levandowski is therefore responsible for Mr. Levandowski's conduct.

If Waymo proves that Otto Trucking gave Mr. Levandowski authority to act on its behalf, then Mr. Levandowski was Otto Trucking's agent. This authority may be shown by words or may be implied by the parties' conduct. This authority cannot be shown by the words of Mr. Levandowski alone.

---

[52] CACI 3705
**[Name of plaintiff] claims that [name of agent] was [name of defendant]'s agent and that [name of defendant] is therefore responsible for [name of agent]'s conduct.**
**If [name of plaintiff] proves that [name of defendant] gave [name of agent] authority to act on [his/her/its] behalf, then [name of agent] was [name of defendant]'s agent. This authority may be shown by words or may be implied by the parties' conduct. This authority cannot be shown by the words of [name of agent] alone.**

1  **Disputed Instruction No. 36 Re. EXISTENCE OF "AGENCY" RELATIONSHIP**

2  **DISPUTED Offered By Uber/Ottomotto**

3  Uber and Ottomotto contend that no such instruction should be given (see corresponding

4  memorandum of law).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Disputed Instruction No. 37 Re. SCOPE OF EMPLOYMENT Offered By Waymo and</u>**

**<u>Uber</u>**

Waymo and Uber contend that no such instruction should be given (see corresponding memorandum of law).

**Disputed Instruction No. 37 Re. SCOPE OF EMPLOYMENT[53] Offered By Otto Trucking**

      Waymo must prove that Mr. Levandowski was acting within the scope of his authorization when Waymo was harmed.

      Conduct is within the scope of authorization if:

    (a) It was reasonably related to the kinds of tasks that the agent was employed to perform; or

    (b) It is reasonably foreseeable in light of the principal's business or the agent's responsibilities.

---

[53] CACI 3720

**[Name of plaintiff] must prove that [name of agent] was acting within the scope of [his/her] [employment/authorization] when [name of plaintiff] was harmed.**

**Conduct is within the scope of [employment/authorization] if:**

**(a) It is reasonably related to the kinds of tasks that the [employee/ agent] was employed to perform; or**

**(b) It is reasonably foreseeable in light of the employer's business or the [agent's/employee's job] responsibilities.**

**Disputed Instruction No. 38 Re. DUTY TO INFORM[54] Offered By Waymo**


      If you find that a third party was an agent for Uber, Ottomotto, and/or Otto Trucking, each agent is under a duty to inform that defendant as to all those matters which each would want to know about any trade secrets misappropriated from Waymo.  Uber, Ottomotto, and/or Otto Trucking are presumed to know all that its agent or agents knew concerning the misappropriation, whether that agent actually told Uber, Ottomotto, and/or Otto Trucking or not."

---

[54] *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792 (9th Cir. 1976).

1

2

## **Disputed Instruction No. 38 Re. DUTY TO INFORM Offered By Defendants**

3

4

Defendants contend that no such instruction should be given (see corresponding memorandum of law).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction 39 Re. RATIFICATION[55] Offered By Waymo**

Waymo also claims that Uber, Ottomotto, and/or Otto Trucking is responsible for the harm caused by a third party's conduct because Uber, Ottomotto, and/or Otto Trucking approved of that conduct after it occurred.  If you find that a third party harmed Waymo, you must decide whether Uber, Ottomotto, and/or Otto Trucking approved that conduct.

To establish its claim, Waymo must prove all of the following:

1. That a third party, although not authorized to do so, purported to act on behalf of Uber, Ottomotto, and/or Otto Trucking;

2. That Uber, Ottomotto, and/or Otto Trucking learned of that third party's unauthorized conduct, and all of the material facts involved in the misappropriation, after it occurred; and

3. That Uber, Ottomotto, and/or Otto Trucking then approved that third party's conduct.

Approval can be shown through words, or it can be inferred from a person's conduct.

---

[55]   CACI 3710.

**[*Name of plaintiff*] claims that [*name of defendant*] is responsible for the harm caused by [*name of agent*]'s conduct because [*name of defendant*] approved that conduct after it occurred. If you find that [*name of agent*] harmed [*name of plaintiff*], you must decide whether [*name of defendant*] approved that conduct. To establish [his/her] claim, [*name of plaintiff*] must prove all of the following:**

**1. That [*name of agent*], although not authorized to do so, purported to act on behalf of [*name of defendant*];**

**2. That [*name of defendant*] learned of [*name of agent*]'s unauthorized conduct, and all of the material facts involved in the unauthorized transaction, after it occurred; and**

**3. That [*name of defendant*] then approved [*name of agent*]'s conduct.**

**Approval can be shown through words, or it can be inferred from a person's conduct. [Approval can be inferred if [*name of defendant*] voluntarily keeps the benefits of [*name of agent*]'s unauthorized conduct after [he/she/it] learns of it.]**

Approval can be inferred if Uber, Ottomotto, and/or Otto Trucking voluntarily kept the benefit of the third party's misappropriation after they learned of it.

1

2

**Disputed Instruction 39 Re. RATIFICATION[56] Offered By Otto Trucking**

3

4

Waymo also claims that Otto Trucking is responsible for the harm caused by Mr.

5

Levandowski's conduct because Otto Trucking approved of that conduct after it occurred.  If you

6

find that a third party harmed Waymo, you must decide whether Otto Trucking approved that

7

conduct.

To establish its claim, Waymo must prove all of the following:

8

9

1.  That Mr. Levandowski, although not authorized to do so, purported to act on behalf of Otto

Trucking;

10

2.  That Otto Trucking learned Mr. Levandwoski's unauthorized conduct after it occurred; and

11

12

3.  That Otto Trucking then approved Mr. Levandowski's conduct.

Approval can be shown through words, or it can be inferred from a person's conduct.

13

14

Approval can be inferred if Otto Trucking voluntarily kept the benefit of Mr. Levandowski's

unauthorized misconduct  after it learned of it.

15

16

[56] CACI 3710.

17

18

**[*Name of plaintiff*] claims that [*name of defendant*] is responsible for the harm caused by [*name of agent*]'s conduct because [*name of defendant*] approved that conduct after it occurred. If you find that [*name of agent*] harmed [*name of plaintiff*], you must decide whether [*name of defendant*] approved that conduct. To establish [his/her] claim, [*name of plaintiff*] must prove all of the following:**

19

20

21

**1. That [*name of agent*], although not authorized to do so, purported to act on behalf of [*name of defendant*];**

22

23

**2. That [*name of defendant*] learned of [*name of agent*]'s unauthorized conduct, and all of the material facts involved in the unauthorized transaction, after it occurred; and**

24

**3. That [*name of defendant*] then approved [*name of agent*]'s conduct.**

25

26

**Approval can be shown through words, or it can be inferred from a person's conduct. [Approval can be inferred if [*name of defendant*] voluntarily keeps the benefits of [*name of agent*]'s unauthorized conduct after [he/she/it] learns of it.]**

27

28

01980-00104/9563663.5

1

**Disputed Instruction 39 Re. RATIFICATION Offered By Uber/Ottomotto**

2

3

Uber and Ottomotto contend that no such instruction should be given (see corresponding

memorandum of law).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 40 Re. CAUSATION:  SUBSTANTIAL FACTOR Offered By Waymo**

Waymo contends that no such instruction should be given (see corresponding memorandum of law).

**Disputed Instruction No. 40 Re. CAUSATION:  SUBSTANTIAL FACTOR[57] Offered By Defendants**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

---

[57] CACI, *Guide for Using Judicial Council of California Civil Jury Instructions*, at p. 2 ("Substantial Factor: The instructions frequently use the term 'substantial factor' to state the element of causation, rather than referring to 'cause' and then defining that term in a separate instruction as a 'substantial factor.' An instruction that defines 'substantial factor' is located in the Negligence series. The use of the instruction is not intended to be limited to cases involving negligence."; CACI 430:

**A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.**

**[Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.]**

1

**<u>Disputed Instruction No. 41 Re. BAD FAITH Offered By Waymo</u>**

2

3

Waymo contends that no such instruction should be given (see corresponding

4

memorandum of law).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**Disputed Instruction No. 41 Re. BAD FAITH[58] Offered By Defendants**

3

4      If you decide that Uber, Ottomotto, or Otto Trucking did not misappropriate any of

5 Waymo's asserted trade secrets, you must then decide whether Waymo made or pursued any

claims in bad faith.

6

7      "Bad faith" means that a claim of misappropriation superficially appears to have merit but

there is no evidence to support the claim, and Waymo possessed "subjective bad faith."  There is

8 rarely direct evidence of subjective bad faith.  Instead, you may infer that Waymo possessed

9 subjective bad faith if the shortcomings of a claim were identified prior to or during the course of

10 the case and Waymo decided to go forward with the claim despite being unable to respond to the

11 shortcomings; if Waymo abandoned a claim; or if Waymo intended to cause unnecessary delay,

12 made or pursued a claim to harass, or harbored other improper motives in making or pursing a

13 claim.  You may also infer Waymo possessed subjective bad faith as a result of its conduct in the

14 case.

15      In deciding whether Waymo made or pursued a claim of misappropriation in bad faith, you

16 may not consider whether Waymo's mere suspicion that Uber, Ottomotto, or Otto Trucking

17 misused or might misuse information that Waymo alleged was a trade secret in its Amended

18 Complaint.

19

20

21

22

23

24 ───────────────

[58] Cal. Civ. Code § 3426.4 ("If a claim of misappropriation is made in bad faith, … or willful and
25 malicious misappropriation exists, the court may award reasonable attorney's fees and costs to
the prevailing party."); *see also GSI Tech., Inc. v. United Memories, Inc.*, No. 5:13-cv-01081-
26 PSG, 2016 WL 3035699, at *2 (N.D. Cal. May 26, 2016) (rejecting plaintiff's arguments "that
the court committed prejudicial error by not trying bad faith separately"; court "ruled that the bad
27 faith contention [under § 3426.4] would be presented to the jury")

28

**Stipulated Instruction No. 42 Re. AFFIRMATIVE DEFENSE—INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS**[59]

Uber did not misappropriate Waymo's trade secrets if Uber, Ottomotto, or Otto Trucking proves that the information was readily ascertainable by proper means at the time of the alleged acquisition or use.

There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense.  For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials.  On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

---

[59]   **CACI 4420:**

**[*Name of defendant*] did not misappropriate [*name of plaintiff*]'s trade secret[s] if [name of defendant] proves that the [*select short term to describe, e.g., information*] [was/were] readily ascertainable by proper means at the time of the alleged [acquisition/use/ [or] disclosure].**

**There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Disputed Instruction No. 43 Re. AFFIRMATIVE DEFENSE -- MITIGATION OF DAMAGES  Offered By Waymo**

Waymo contends that no such instruction should be given (see corresponding memorandum of law).

1

**Disputed Instruction No. 43 Re. AFFIRMATIVE DEFENSE -- MITIGATION OF**

2

**DAMAGES[60] Offered By Defendants**

3

4
     If Uber, Ottomotto, or Otto Trucking misappropriated trade secrets and the

5
misappropriation caused harm, Waymo is not entitled to recover damages for harm that Uber

6
proves Waymo could have avoided the harm with reasonable efforts or expenditures.  You may

7
consider the timing of the lawsuit in connection with deciding whether Waymo mitigated its

8
damages.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
[60]   CACI 358

28

1

**Disputed Instruction No. 44 Re. OUTSIDE REVERSE VEIL PIERCING Offered By**

**Waymo and Uber**

Waymo and Uber contend that no such instruction should be given (see corresponding memorandum of law).

**Disputed Instruction No. 44 Re. OUTSIDE REVERSE VEIL PIERCING**[61] **Offered By**

**Otto Trucking**

Waymo has filed a lawsuit against Otto Trucking.  Under California law, a business entity is usually not held liable for the conduct of its members, managers, officers, beneficial owners, trustees, or other related business entities.  However, under the doctrine of "reverse veil piercing", a business entity may be held liable for the conduct of its members, managers, officers, beneficial owners, trustees, or other related entities.

To hold Otto Trucking liable for Mr. Levandowski's conduct, you must prove both of the following:

1. Waymo has no alternative adequate remedies; and

2. No innocent shareholders would be harmed by the piercing

---

[61] *Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal.App.4th 1510 (2008)

**Disputed Instruction No. 45 Re. DAMAGES UNDER CALIFORNIA AND FEDERAL LAW Offered By Waymo**

As I have described, Waymo has brought claims for trade secret misappropriation under both California and Federal law.

Waymo is entitled to damages under either California or Federal law but will not recover damages under both theories.

**Disputed Instruction No. 45 Re. DAMAGES UNDER CALIFORNIA AND FEDERAL LAW Offered By Defendants**

Defendants contend that no such instruction should be given (see corresponding memorandum of law).

### Disputed Instruction No. 46 Re. REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET[62] Offered By Waymo

If Waymo proves that Uber, Ottomotto, and/or Otto Trucking misappropriated any of its trade secrets under either California or Federal law, then Waymo is entitled to recover damages if the misappropriation caused Uber, Ottomotto, and/or Otto Trucking to be unjustly enriched.

---

[62]   CACI 4409.

**If [*name of plaintiff*] proves that [*name of defendant*] misappropriated [*his/her/its*] trade secret[s], then [*name of plaintiff*] is entitled to recover damages if the misappropriation caused [[*name of plaintiff*] to suffer an actual loss/ [or] [*name of defendant*] to be unjustly enriched]. [If [*name of defendant*]'s misappropriation did not cause [[*name of plaintiff*] to suffer an actual loss/ [or] [*name of defendant*] to be unjustly enriched], [*name of plaintiff*] may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited. However, I will calculate the amount of any royalty.]**

18 U.S.C.A. § 1836.

**(B) award--**

**(i)(I) damages for actual loss caused by the misappropriation of the trade secret; and**

**(II) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or**

**(ii) in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret;**

**<u>Disputed Instruction No. 46 Re. REMEDIES FOR MISAPPROPRIATION OF TRADE</u>**

**<u>SECRET[63] Offered By Defendants</u>**

If Waymo proves that Uber, Ottomotto, or Otto Trucking misappropriated its trade secrets, then Waymo is entitled to recover damages if the misappropriation was a substantial factor in causing Uber, Ottomotto, or Otto Trucking to be unjustly enriched.  In this case the type of damages that Waymo is seeking is called unjust enrichment.

If there was misappropriation but it did not cause Uber, Ottomotto, or Otto Trucking to be unjustly enriched, Waymo may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited.  However, I will calculate the amount of any royalty.

---

[63]   CACI 4409.

**If** [*name of plaintiff*] **proves that** [*name of defendant*] **misappropriated** [his/her/its] **trade secret[s], then** [*name of plaintiff*] **is entitled to recover damages if the misappropriation caused** [[*name of plaintiff*] **to suffer an actual loss/ [or]** [*name of defendant*] **to be unjustly enriched].**

**[If** [*name of defendant*]**'s misappropriation did not cause** [[*name of plaintiff*] **to suffer an actual loss/ [or]** [*name of defendant*] **to be unjustly enriched],** [*name of plaintiff*] **may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited. However, I will calculate the amount of any royalty.]**

1

**Disputed Instruction No. 47 Re. UNJUST ENRICHMENT[64] Offered By Waymo**

2

3

Uber, Ottomotto, and/or Otto Trucking were unjustly enriched if its misappropriation of

4

Waymo's trade secrets caused Uber, Ottomotto, and/or Otto Trucking to receive a benefit that they

5

otherwise would not have achieved.

6

To decide the amount of any unjust enrichment, you must determine the value of Uber,

7

Ottomotto, and/or Otto Trucking's benefit that would not have been achieved except for its

8

misappropriation.

9

Your award must be based upon evidence, and not upon speculation, guesswork or

10

conjecture.[65]

11

12

13

14

15

---

16

[64]   CACI 4410.

17

18

[*Name of defendant*] was unjustly enriched if [his/her/its] misappropriation of [*name of plaintiff*]'s trade secret[s] caused [*name of defendant*] to receive a benefit that [he/she/it] otherwise would not have achieved.

19

20

To decide the amount of any unjust enrichment, first determine the value of [*name of defendant*]'s benefit that would not have been achieved except for [his/her/its] misappropriation. Then subtract from that amount [*name of defendant*]'s reasonable expenses[, including the value of the [*specify categories of expenses in evidence, such as labor, materials, rents, interest on invested capital*]]. [In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for [*name of plaintiff*]'s actual loss.]

21

22

23

24

25

26

[65] Instruction in *O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*, 2000 WL 35634755 (N.D. Cal. 2000); MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT §5.1.

27

28

**Disputed Instruction No. 47 Re. UNJUST ENRICHMENT[66] Offered By Defendants**

If you decide there was misappropriation, Uber, Ottomotto, and Otto Trucking were unjustly enriched if their misappropriation of Waymo's trade secrets caused them to receive a benefit that they otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of the defendants' benefit that would not have been achieved except for its misappropriation.  Then subtract from that amount the defendants' reasonable expenses, including the value of their own research and development.

Your award must be based upon evidence, and not upon speculation, guesswork or conjecture.[67]

---

[66]   CACI 4410.

**[Name of defendant] was unjustly enriched if [his/her/its] misappropriation of [name of plaintiff]'s trade secret[s] caused [name of defendant] to receive a benefit that [he/she/it] otherwise would not have achieved.**

**To decide the amount of any unjust enrichment, first determine the value of [name of defendant]'s benefit that would not have been achieved except for [his/her/its] misappropriation. Then subtract from that amount [name of defendant]'s reasonable expenses[, including the value of the [specify categories of expenses in evidence, such as labor, materials, rents, interest on invested capital]]. [In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for [name of plaintiff]'s actual loss.]**

[67] Instruction in *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, No. C 00-4071 CW, 2000 WL 35634755 (N.D. Cal. 2000); MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT § 5.1.

**Disputed Instruction No. 48 Re. REASONABLE ROYALTY – ENTITLEMENT[68] Offered**

**By Waymo**

Under California and Federal law, Waymo may recover the damages caused by the misappropriation measured by imposition of  a reasonable royalty for the misappropriator's unauthorized acquisition or use of the trade secret.

Waymo will not recover damages for both unjust enrichment and a reasonable royalty. However, if you find Uber, Ottomotto, and/or Otto Trucking liable for trade secret misappropriation, you should determine reasonable royalty damages in addition to your determination of unjust enrichment damages.

---

[68]   Model Patent Jury Instructions for the Northern District of California 5.6

**If [patent holder] has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then [patent holder] should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.**

18 U.S.C.A. § 1836.

**(B) award--**

**(i)(I) damages for actual loss caused by the misappropriation of the trade secret; and**

**(II) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or**

**(ii) in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret;**

## Disputed Instruction No. 48 Re. REASONABLE ROYALTY – ENTITLEMENT Offered

## By Defendants[69]

Defendants contend that no such instruction should be given (see corresponding memorandum of law).

---

[69] Model Patent Jury Instructions for the Northern District of California 5.6

**If [patent holder] has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then [patent holder] should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.**

18 U.S.C. § 1836.

**(b)(3) Remedies.—In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may--**

**(B) award--**

**(i)(I) damages for actual loss caused by the misappropriation of the trade secret; and**

**(II) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or**

**(ii) in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret;**

CACI 4409, Directions For Use –Stating that under California Uniform Trade Secret Act, "**[b]oth the statute and case law indicate that the question of a reasonable royalty should not be presented to the jury.**"

**Disputed Instruction No. 49 Re. REASONABLE ROYALTY – DEFINITION[70] Offered By Waymo**

---

[70]    Model Patent Jury Instructions for the Northern District of California 5.7

**A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.**

**A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard.  One way to calculate a royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.  For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be $200.   If the rate you find would have resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200.  By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200.  These numbers are only examples, and are not intended to suggest the appropriate royalty rate.**

**Instead of a percentage royalty, you may decide that the appropriate royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold.  If you do, the royalty would be that fixed number of dollars times the number of units sold.**

A royalty is a payment made in exchange for the right to use the claimed trade secrets. This right is called a "license." A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the owner of the trade secret and the

---

**If the patent covers only part of the product that the infringer sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5.**

**[However, in a circumstance in which the patented feature is the reason customers buy the whole product, the base revenue may be the value of the whole product.][70]**

**[In this case the [ ] patent covers only one component of the product that [alleged infringer] uses or sells. It is [patent holder]'s burden to demonstrate what value that component has added to the desirability of the product as a whole and to separate the value of the patented contribution from the value of other parts of the product that are not attributable to the patented invention.]**

**[In this case, [patent holder] [accused infringer] has introduced evidence of licenses between [licensees] and [licensors]. The royalty rate in one or more of those licenses may be considered if it helps to establish the value that is attributable to the patented invention as distinct from the value of other features of [alleged infringer's] product.][70]**

**The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.**

**Another way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product, both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.**

**It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case for the life of the patent.**

misappropriator taking place at the time when the misappropriation first began. In considering the nature of this negotiation, you must assume that the trade secret owner and the misappropriator would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the trade secret owner to be in possession of valid trade secrets. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

Waymo and Uber have both proposed a one-time lump sum payment that the misappropriator would have paid at the time of the hypothetical negotiation for a license covering all use of the claimed trade secrets, both past and future. When a one-time lump sum is paid, the misappropriator pays a single price for a license covering both past and future infringing use.

**Disputed Instruction No. 49 Re. REASONABLE ROYALTY – DEFINITION Offered By Defendants**

Defendants contend that no such instruction should be given (see corresponding memorandum of law).

**Disputed Instruction No. 50 Re. GEORGIA PACIFIC FACTORS[71] Offered By Waymo**

---

[71]   AIPLA's Model Patent Jury Instructions 11.15

**In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:**

1. **Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.**
2. **The rates paid by [the Defendant] to license other patents comparable to the [abbreviated patent number] patent.**
3. **The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.**
4. **The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.**
5. **The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.**
6. **The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.**
7. **The duration of the [abbreviated patent number] patent and the term of the license.**
8. **The established profitability of the product made under the [abbreviated patent number] patent; its commercial success; and its current popularity.**
9. **The utility and advantages of the patented invention over the old modes or devices, if any that had been used for achieving similar results.**
10. **The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.**
11. **The extent to which [the Defendant] has made use of the invention; and any evidence that shows the value of that use.**
12. **The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.**
13. **The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.**

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the claimed trade secrets:

1. Any royalties received by the licensor for the licensing of the claimed trade secrets, proving or tending to prove an established royalty.

2. The rates paid by the Defendants to license other trade secrets comparable to the claimed trade secrets.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the claimed trade secrets by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

---

14. **The opinion testimony of qualified experts.**
15. **The amount that a licensor and a licensee (such as [the Defendant]) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.**
16. **Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.**

6. The effect of selling products using claimed trade secrets in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-trade secret items; and the extent of such collateral sales.

7. The duration of the claimed trade secrets and the term of the license.

8. The established profitability of the product made under claimed trade secrets; its commercial success; and its current popularity.

9. The utility and advantages of the claimed trade secrets over the old modes or devices, if any that had been used for achieving similar results.

10. The nature of the claimed trade secrets; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the claimed trade secrets.

11. The extent to which the Defendants have made use of the claimed trade secrets; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the claimed trade secrets or analogous trade secrets.

13. The portion of the profit that arises from the claimed trade secrets themselves as opposed to profit arising from non-trade secret features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee (such as the Defendants) would have agreed upon (at the time the use of the claimed trade secrets began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented

invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a licensor who was willing to grant a license.

Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**Disputed Instruction No. 50 Re. GEORGIA PACIFIC FACTORS Offered By Defendants**

Defendants contend that no such instruction should be given (see corresponding memorandum of law).

### Disputed Instruction No. 51 Re. EXEMPLARY DAMAGES FOR WILLFUL  AND MALICIOUS MISAPPROPRIATION[72] Offered By Waymo

If you find that Uber, Ottomotto, and/or Otto Trucking misappropriated Waymo's trade secrets under either California or Federal law and that their conduct was willful and malicious, you

_____

[72]   CACI 4411

**If you decide that [*name of defendant*]'s misappropriation caused [*name of plaintiff*] harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed [*name of plaintiff*] and to discourage similar conduct in the future.**

**In order to recover punitive damages, [*name of plaintiff*] must prove [by clear and convincing evidence] that [*name of defendant*] acted willfully and maliciously. You must determine whether [*name of defendant*] acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.**

**"Willfully" means that [*name of defendant*] acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.**

**"Maliciously" means that [*name of defendant*] acted with an intent to cause injury, or that [*name of defendant*]'s conduct was despicable and was done with a willful and knowing disregard for the rights of others.**

**"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. [*Name of defendant*] acted with knowing disregard if [he/she/it] was aware of the probable consequences of [his/her/its] conduct and deliberately failed to avoid those consequences.**

18 U.S.C.A. § 1836.

**(C) if the trade secret is willfully and maliciously misappropriated, award exemplary damages in an amount not more than 2 times the amount of the damages awarded under subparagraph (B); and**

must determine what amount of exemplary damages Waymo is entitled to recover.  Exemplary damages are intended to punish the defendant and deter misappropriation of trade secrets.  You may determine an amount of exemplary damages up to two times the amount awarded as actual damages for misappropriation of trade secrets.

**Disputed Instruction No. 51 Re. EXEMPLARY DAMAGES FOR WILLFUL AND MALICIOUS MISAPPROPRIATION[73] Offered By Defendants**

Defendants contend that no such instruction should be given (see corresponding memorandum of law) but offer this alternative formulation should the Court rule otherwise.

If you decide that Uber, Ottomotto, and/or Otto Trucking's misappropriation caused Waymo harm, you must decide whether that conduct justifies an award of punitive damages.

---

[73] CACI 4411

**If you decide that [*name of defendant*]'s misappropriation caused [*name of plaintiff*] harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed [*name of plaintiff*] and to discourage similar conduct in the future.**

**In order to recover punitive damages, [*name of plaintiff*] must prove [by clear and convincing evidence] that [*name of defendant*] acted willfully and maliciously. You must determine whether [*name of defendant*] acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.**

**"Willfully" means that [*name of defendant*] acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.**

**"Maliciously" means that [*name of defendant*] acted with an intent to cause injury, or that [*name of defendant*]'s conduct was despicable and was done with a willful and knowing disregard for the rights of others.**

**"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. [*Name of defendant*] acted with knowing disregard if [he/she/it] was aware of the probable consequences of [his/her/its] conduct and deliberately failed to avoid those consequences.**

18 U.S.C. § 1836.

**(b)(3)(C) if the trade secret is willfully and maliciously misappropriated, award exemplary damages in an amount not more than 2 times the amount of the damages awarded under subparagraph (B); and**

The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed Waymo and to discourage similar conduct in the future.

In order to recover punitive damages, Waymo must prove by clear and convincing evidence that Uber, Ottomotto, and/or Otto Trucking acted willfully and maliciously.  You must determine whether Uber, Ottomotto, and/or Otto Trucking acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages.  I will calculate that amount later.

"Willfully" means that Uber, Ottomotto, and/or Otto Trucking acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that Uber, Ottomotto, and/or Otto Trucking acted with an intent to cause injury, or that Uber, Ottomotto, and/or Otto Trucking's conduct was despicable and was done with a willing and knowing disregard for the rights of others.  "Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people.  Uber, Ottomotto, and/or Otto Trucking acted with knowing disregard if they were aware of the probable consequences of their conduct and deliberately failed to avoid those consequences.

1

**Disputed Instruction No. 52 Re. DAMAGES FROM MULTIPLE DEFENDANTS Offered**

2

**By Waymo**

3

4

      Waymo contends that no such instruction should be given (see corresponding

5

memorandum of law).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Disputed Instruction No. 52 Re. DAMAGES FROM MULTIPLE DEFENDANTS[74]

## Offered By Defendants

In this case, Waymo seeks damages from more than one defendant. You must determine the liability of each defendant to Waymo separately.

If you determine that more than one defendant is liable to Waymo for damages, you will be asked to find Waymo's total damages and the comparative fault of each defendant.

In deciding on the amount of damages, consider only Waymo's claimed losses. Do not attempt to divide the damages among the defendants. The allocation of responsibility for payment of damages among multiple defendants is to be done by the court after you reach your verdict.

---

[74] CACI 3933

**In this case, [name of plaintiff] seeks damages from more than one defendant. You must determine the liability of each defendant to [name of plaintiff] separately.**

**If you determine that more than one defendant is liable to [name of plaintiff] for damages, you will be asked to fin [name of plaintiff]'s total damages [and the comparative fault of [[name of plaintiff]/each defendant/ [and] other nonparties]].**

**In deciding on the amount of damages, consider only [name of plaintiff]'s claimed losses. Do not attempt to divide the damages [between/among] the defendants. The allocation of responsibility for payment of damages among multiple defendants is to be done by the court after you reach your verdict.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 53 Re. AFFIRMATIVE DEFENSE—UNCLEAN HANDS**

**Offered By Waymo**

Waymo contends that no such instruction should be given (see corresponding memorandum of law).

**Disputed Instruction No. 53 Re. AFFIRMATIVE DEFENSE—UNCLEAN HANDS[75]**

**Offered By Otto Trucking**

Otto Trucking claims as a defense that Waymo's misconduct precludes its enforcement of Waymo's claims.  To establish this defense, Otto Trucking must prove that Waymo's conduct was unconscionable and resulted in prejudice to Otto Trucking.

Waymo's misconduct must be intimately connected with Waymo's claims and of such a prejudicial nature that it would unfair to allow Waymo to rely on its claim.

---

[75] Final Jury Instructions, *GSI Techs. Inc. v. United Memories Inc., et al.*, No. 5:13-cv-01081-PSG (N.D. Cal. Nov. 22, 2015), Dkt. No. 1039 at 54.

1  **Disputed Instruction No. 54 Re. APPORTIONMENT OF DAMAGES Offered By Waymo**

2

3       Waymo contends that no such instruction should be given (see corresponding

4  memorandum of law).

## Disputed Instruction No. 54 Re. APPORTIONMENT OF DAMAGES[76] Offered By Defendants

Uber, Ottomotto, and Otto Trucking were unjustly enriched if their misappropriation of Waymo's trade secrets caused them to receive a benefit that they otherwise would not have achieved.  To decide the amount of any unjust enrichment, first determine the value of the defendants' benefit that would not have been achieved except for its misappropriation.  Then subtract from that amount the defendants' reasonable expenses, including the value of their own research and development.[77]

An important and related concept is apportionment. In determining the amount of unjust enrichment, you must only award the amount of the benefit attributable to the specific trade secret(s), if any, that you find was misappropriated.  A benefit to a defendant that is attributable to a trade secret that you have found was not misappropriated, for example, must be excluded from your calculation of unjust enrichment.  The owner of the trade secrets has the burden to persuade you of the amount of its damages. You should award only those damages that the owner more likely than not suffered.  While a trade secret owner is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  A trade

---

[76] *02 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*, 399 F.Supp.2d 1064, 1076-77 (N.D. Cal. November 10, 2005); *W.L. Gore & Associates, Inc. v. GI Dynamics, Inc.*, 872 F.Supp.2d 883, 892-93 (D. Az. May 30, 2012)

[77]   CACI 4410

[*Name of defendant*] **was unjustly enriched if [his/her/its] misappropriation of** [*name of plaintiff*]'s **trade secret[s] caused** [*name of defendant*] **to receive a benefit that [he/she/it] otherwise would not have achieved.**

**To decide the amount of any unjust enrichment, first determine the value of** [*name of defendant*]**'s benefit that would not have been achieved except for [his/her/its] misappropriation. Then subtract from that amount** [*name of defendant*]**'s reasonable expenses[, including the value of the** [*specify categories of expenses in evidence, such as labor, materials, rents, interest on invested capital*]**]. [In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for** [*name of plaintiff*]**'s actual loss.]**

1   secret owner is not entitled to damages that are remote or speculative.  The damages award

2   should be based on sound economic proof.