# E<span style="font-variant:small-caps">xhibit</span> A

```
                                           Pages 1 - 94

                   UNITED STATES DISTRICT COURT

                 NORTHERN DISTRICT OF CALIFORNIA

      Before the Honorable William H. Alsup, Judge

      WAYMO LLC,                        )
                                        )   No. C 17-0939 WHA
                   Plaintiff,           )
                                        )
        VS.                             )       BOUND SEPARATELY
                                        )   PAGES 95 - 145 (UNDER SEAL)
                                        )
      UBER TECHNOLOGIES, INC.;          )
      OTTOMOTTO LLC; OTTO TRUCKING      )
                                        )
                   Defendants.          )
      _____)       San Francisco, California
                                             Wednesday, September 20, 2017

                       TRANSCRIPT OF PROCEEDINGS

      APPEARANCES:

      For Plaintiff:
                          QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                          50 California Street, 22nd Floor
                          San Francisco, California  94111
                    BY:   CHARLES K. VERHOEVEN, ATTORNEY AT LAW
                          JORDAN R. JAFFE, ATTORNEY AT LAW
                          MELISSA J. BAILY, ATTORNEY AT LAW
                          DAVID ANDREW PERLSON, ATTORNEY AT LAW
                          JEFFREY W. NARDINELLI, ATTORNEY AT LAW
                          FELIPE CORREDOR, ATTORNEY AT LAW

                          QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                          51 Madison Avenue
                          New York, New York 10010
                    BY:   JAMES E. BAKER, ATTORNEY AT LAW

       (Appearances continued on next page)



      Reported By:   Katherine Powell Sullivan, CSR No. 5812, RMR, CRR
                     Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                     Official Reporters
```

1           And I don't mean to sound technical, but this is very
2   important.  There is no evidence that he actually downloaded
3   anything onto that device.  It's very important.
4           All they've been able to prove is that some device was
5   plugged into his computer.  That's the distinction that I'm
6   trying to draw.  So I don't want to make a concession here
7   that's inaccurate.
8           If you want to talk about inferences, we can talk about
9   inferences.  But they have not been able to prove that anything
10  was actually downloaded onto that device.
11          And that's why I'm saying to you, it would have been
12  important for you, as the judge, to know at the preliminary
13  injunction stage that actually downloading Tortoise is not
14  suspicious at all.  It's instruction number one of the document
15  that I just showed you.
16          And downloading 14,000 files, which they pointed out to
17  you how many gigabytes that was, it would have been
18  appropriate, I think, for them to tell you, and, by the way, if
19  you follow instruction number three on the paper I just handed
20  you, that is precisely what would happen.  And --
21          **MR. VERHOEVEN:**  May I respond?
22          **THE COURT:**  Does the A team come forward?
23          **MR. VERHOEVEN:**  No, no.  This is transitioning from
24  the technical to whether this means anything.  And I'd like --
25          **THE COURT:**  What do you say in response to what I just

```
 1   heard?
 2          MR. VERHOEVEN:  Well, we, last Thursday, received the
 3   Stroz report.  And at page 12 it talks about evidence on
 4   Levandowski's personal laptop, of 24,000 files in a folder
 5   called "Chauffeur SVN."
 6          And just --
 7          MR. GONZÁLEZ:  Your Honor --
 8          MR. VERHOEVEN:  This is something they have designated
 9   confidential, Your Honor.
10          MR. GONZÁLEZ:  I would be happy to respond, but I
11   believe there's an issue and motions for protective order
12   pending, that have been filed by other defendants, with respect
13   to the substance of the report.
14          I will say one thing --
15          THE COURT:  I have said in an order, I thought, -- has
16   that order gone out? -- that we can't go through life in this
17   case on saying that anything that's in the due diligence report
18   is confidential.  So when we have the trial, it's going to be
19   public.  Period.
20          Now, I am going to say that you ought to keep it, quote,
21   at the low-level confidential, among yourselves, and not give
22   it to the *New York Times* and everybody else, at that low level.
23          But when we come to court, we're going to talk openly.
24   This court belongs to the public.  It does not belong to you
25   lawyers or you parties.  And there's nothing in that due
```

1  diligence report, in my view, that is any worse than the stuff
2  that's already come out.
3         So I'm going to just say you can -- I think I know what
4  you were about to say.  And you go ahead and say it.
5         **MR. VERHOEVEN:**  So this is actually information we
6  learned and put together last night.
7         So -- but on last Thursday, we saw the Stroz report.  On
8  page 12 it said that there were 24,000 files in
9  Mr. Levandowski's personal device.  It also said that they were
10 deleted on December 14th.
11        Now, Your Honor, probably doesn't recall the specifics,
12 but if you match that up against Google's -- or Waymo's
13 analysis of what happened with Levandowski's Google laptop, the
14 evidence shows he downloaded 14,000 files from the SVN server
15 on December 11th.  And on December 14th, same day as these
16 24,000 files were deleted, he put in the card reader, for eight
17 hours, in his Google Waymo laptop and then, we think, copied
18 all of those files.
19        The very same day we have here a statement by Stroz that
20 24,000 files from the same SVN server were deleted off his
21 personal computer.
22        Well, last night we finally got an identification of what
23 those 24,000 files were.  And there's a chunk that's nonsense.
24 But of the 14,000 files that we identified at the beginning of
25 this case, all but seven are in that 24,000 that were deleted.

```
 1          THE COURT:  If they were deleted, how do you know what
 2   they were?
 3          MR. VERHOEVEN:  Because Stroz can give us the
 4   identification of the file names.  And that's what we got.
 5       So through forensic analysis, we know now that there's an
 6   overlap of all but seven files between what Levandowski copied
 7   off his card reader on the 14th of December, put onto his
 8   personal laptop on the 14th of December, and then deleted off
 9   of his personal laptop.
10       Your Honor, this is one example of why we need a
11   continuance.  We need to follow this trail.
12          THE COURT:  No.  Stop on that right now.  See, you're
13   sliding off on to something else.
14          MR. VERHOEVEN:  Sorry.
15          THE COURT:  I'm trying to understand the download
16   point first.
17          MR. VERHOEVEN:  Just to finish off, we haven't had the
18   opportunity yet to -- although we'll get to it soon -- to
19   examine forensically this laptop on which the 14,000 files were
20   deleted.
21       There could very well be evidence that he copied those --
22          THE COURT:  Well, where is that laptop now?
23          MR. VERHOEVEN:  It's at Stroz.
24          THE COURT:  You mean the Levandowski personal laptop
25   is at Stroz?
```