1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Charles K. Verhoeven (Bar No. 170151)
2    charlesverhoeven@quinnemanuel.com
     David A. Perlson (Bar No. 209502)
3    davidperlson@quinnemanuel.com
     Melissa Baily (Bar No. 237649)
4    melissabaily@quinnemanuel.com
     John Neukom (Bar No. 275887)
5    johnneukom@quinnemanuel.com
     Jordan Jaffe (Bar No. 254886)
6    jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:     (415) 875-6600
8  Facsimile:     (415) 875-6700

9  Attorneys for WAYMO LLC

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                         SAN FRANCISCO DIVISION

13  WAYMO LLC,                              CASE NO. 3:17-cv-00939

14              Plaintiff,                  **PLAINTIFF WAYMO LLC'S
                                            OPPOSITION TO DEFENDANTS'
15       vs.                                MOTION IN LIMINE TO EXCLUDE
                                            TESTIMONY OF KRISTINN
16  UBER TECHNOLOGIES, INC.;                GUDJONSSON**
    OTTOMOTTO LLC; OTTO TRUCKING LLC,
17                                          Date: September 27, 2017
                Defendants.                 Time: 8:00 a.m.
18                                          Courtroom: 8 (19th Floor)
                                            Judge: The Honorable William Alsup
19
                                            Trial Date: October 10, 2017
20

21

22

23

24

25

26

27

28

WAYMO'S RESPONSE TO OTTO TRUCKING'S MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER DKT. 1391

Gary Brown and Kristinn Gudjonsson are both experienced investigators for Google's Digital Forensics Team (formerly the "Incident Response" team). Before Waymo filed its complaint in this action, Mr. Brown and Mr. Gudjonsson conducted a forensic investigation into Anthony Levandowski that revealed at least the following facts: that Mr. Levandowski searched for instructions on accessing the SVN on December 3; that he downloaded software called TortoiseSVN on December 11, 2015; that minutes later, Mr. Levandowski used that software to access Waymo's SVN repository; that Mr. Levandowski then downloaded approximately 14,000 files (the entire repository) from the SVN to his work laptop; that three days later, Mr. Levandowski plugged an SD card reader into that same laptop for approximately eight hours; that four days after that, Mr. Levandowski reformatted that laptop to a Linux system, even though he already had another laptop running Linux; and that Mr. Levandowski's reformatting wiped the contents of his laptop, including any evidence that would have shown the file transfer from the laptop to the SD card reader. Waymo intends to call both Mr. Brown and Mr. Gudjonsson to testify about the facts of and conclusions drawn from their investigation. Waymo does not intend to offer Mr. Brown or Mr. Gudjonsson as expert witnesses or otherwise elicit opinion testimony from them. As Waymo has repeatedly explained, Waymo designated both witnesses as non-reporting experts under Rule 26(a)(2)(C) in an abundance of caution.

To be clear, Otto Trucking's ("OT") motion does not seek to exclude any testimony about any of the foregoing facts or conclusions. Instead, OT moves to exclude the investigators' testimony about "whether behavior was unusual or suspicious" or about "the SVN server and its data." (Br. 1.) OT points to various alleged shortcomings in the investigative methodology, but each is either factually untrue or irrelevant. In the end, Mr. Brown and Mr. Gudjonsson conducted a thorough forensic examination – based on their extensive experience as investigators – and uncovered facts and reached conclusions that, as stated above, are undisputed. Their testimony on these facts and conclusions should be permitted.

## I. BACKGROUND

### A. Mr. Gudjonsson Performed the Initial Investigation Of Levandowski's Laptops in February 2016

Anthony Levandowski, having secretly formed Ottomotto LLC ten days earlier, resigned from Waymo on January 27, 2016. Due to suspicions that Levandowski had approached other Waymo employees to join him at his new venture, Waymo collected two work laptops belonging to Mr. Levandowski and sent them to Mr. Gudjonsson, an experience forensic analyst, on February 25. The laptops were designated by their assigned names anthonyl-glaptop (the "G laptop") and anthonyl0-w (the "W laptop"). Because of actions taken by Mr. Levandowski, Mr. Gudjonsson could not extract much information from these machines, but he did uncover some interesting facts. As to the G Laptop, Mr. Gudjonsson determined that it had been reformatted to an encrypted Goobuntu machine (it was previously a Linux machine) that was not enrolled in Google's key escrow system, and therefore could not be decrypted. (Ex. 1.) As to the W Laptop, Mr. Gudjonsson found that it had also been reformatted as a Goobuntu machine, but then had very minimal use. (*Id.*) A desktop computer that had been assigned to Mr. Levandowski was reimaged and reassigned before the laptops were sent to Mr. Gudjonsson and his team, and therefore was not investigated. Mr. Gudjonsson reported his findings to the HR department and waited for further instructions.[1]

### B. Later, Mr. Brown Discovered That Levandowski Downloaded 14,000 Files to the W Laptop, Plugged In A Card Reader, then Erased the Laptop Shortly Before Resigning From Waymo

During the summer of 2016, the Digital Forensics Team continued its investigation into Mr. Levandowski by analyzing various sources of log data detailing his activity on the Google network, including whether he had attempted to make any bulk file transfers or downloads. On September 19, 2016, Sasha Zbrozek, a Waymo radar engineer who had set up the SVN repository holding the 14,000 files, gathered all available log data for Mr. Levandowski's activity on that server (going back 52

---

[1] OT's brief states that Mr. Brown and Mr. Gudjonsson reviewed Mr. Levandowski's log data in February to March 2016. (Br. 6.) This is false. The log data was not even pulled until September 19, 2016. (Ex. 5)

1  weeks) and provided it to Tom Gorman, an attorney from Google's outside counsel Keker, Van Nest
2  & Peters.  The SVN log data showed that Mr. Levandowski had downloaded the entire contents of the
3  SVN server onto the W laptop on December 11, 2016.  Having also reviewed the findings of Mr.
4  Gudjonsson, Mr. Gorman emailed members of the Digital Forensics Team and asked about the
5  significance of Mr. Levandowski's various activities, stating:  "He synced a bunch of Chauffeur
6  hardware designs to a windows machine on 12/11/2015.  If he didn't have a desktop, then that's [the
7  W Laptop], which he wipes 10 days later.  That's weird, right?"  (Ex. 1.)

8        In response to the new information about the download, Mr. Brown asked Mr. Gorman for the
9  source of the log data showing the 14,000 file download, and for the web URL of the SVN server.  In
10 response, Mr. Gorman provided the SVN log data he had obtained from Mr. Zbrozek, and the domain
11 "████████."  Armed with this information, the security team examined a number of log sources,
12 including:   DNS requests to ████████ on December 11; the SVN log data for
13 anthonyl@google.com; logs showing that on December 11, Mr. Levandowski's W Laptop logged
14 onto a WiFI IP address inside a Waymo building; and DHCP logs corroborating the association
15 between the IP address used to access the SVN and the W laptop.  In sum, Mr. Gudjonsson concluded:
16 "So yes, this was clearly Anthony from his Windows laptop that got later reformatted to a Goobuntu
17 machine prior to being returned."  (Ex. 1.)  In examining the log data, Mr. Gudjonsson also noted that
18 Mr. Levandowski had downloaded TortoiseSVN software just before he downloaded the 14,000 files.
19 Mr. Brown later verified this analysis, as disclosed in his declaration in support of Waymo's PI
20 motion.

21       In the days before filing its complaint in this action, Mr. Brown reviewed additional log data
22 (from a source called bit9) and discovered that Mr. Levandowski had plugged an SD card reader into
23 the laptop used to download the 14,000 files for approximately eight hours on December 14, three
24 days after the download and four days before Mr. Levandowski erased that laptop.

25       **C.**    **Waymo Discloses Messrs. Brown and Gudjonsson As Expert Witnesses**
26       As Waymo stated in its 26(a)(2)(C) disclosures of Messrs. Brown and Gudjonsson,
27 Waymo does not expect either investigator to offer opinion testimony, but only testimony related
28 to the facts of their forensic investigation, and the conclusions drawn from that investigation, as

disclosed in Mr. Brown's March 9, 2017 Declaration in Support of Waymo's Motion for Preliminary Injunction.  (Dkt. 25-29.)  Waymo disclosed these investigators as non-reporting expert witnesses out of an abundance of caution pursuant to the Court's prior orders.  Specifically, on June 21, the Court issued an Order (Dkt. 669) requiring each party to provide a "list of all trial witnesses, both retained and non-retained, who are expected to give **any opinion testimony** in that party's case-in-chief at trial (including those who will also give fact testimony)."  On June 22, the Court issued another Order (Dkt. 697) clarifying that the list "should include witnesses expected to give any testimony that depends on their 'scientific, technical, or other specialized knowledge' within the meaning of Federal Rule of Evidence 702."  The Court also specifically stated that "the lists should include Google Inc.'s security engineer, Gary Brown, if he is expected to give any testimony that depends on his knowledge of forensics."

On June 29, in accordance with the Court's Orders, Waymo listed Gary Brown, Pierre-Yves Droz, Michael Janosko and Dmitri Dolgov on its List of Opinions and Testimony Depending on Specialized Knowledge for Cases-in-Chief at Trial.  (Dkt. 770).  For each of these witnesses, however, Waymo included a statement that **"Waymo does not expect [the witness] to offer opinion testimony at this time."**  On August 3, again in an abundance of caution and consistent with its prior understanding of the Court's Orders, Waymo included both Messrs. Brown and Gudjonsson on its "List of Issues on Which a Party Will Offer Any Expert Testimony."  (Ex. 4.)

On August 24 and September 8, respectively, Waymo submitted Non-Reporting Expert Statements and Reply Statements for Mssrs. Brown and Gudjonsson.  (Br. Exs. 1-4.)  And again, consistent with its prior disclosures, Waymo explained that it did not expect these individuals to offer opinion testimony, but rather only testimony concerning the facts of and conclusions drawn from the forensic investigation of Mr. Levandowski.

## II. MR. BROWN AND MR. GUDJONSSON SHOULD BE ALLOWED TO TESTIFY CONCERNING THE FACTS OF THE INVESTIGATION AND CONCLUSIONS DRAWN THEREFROM

### A. The Investigation Was Neither Biased Nor Predetermined

OT's motion falsely paints Messrs. Brown and Gudjonsson as biased sycophants of Mr. Gorman, implying that Mr. Gorman cajoled them into forming unsupported conclusions about Mr.

Levandowski's actions. (Br. at 7 ("With the seed of misconduct planted by Mr. Gorman, the investigators focused significant energy to enforce this crafted theory.").) In so doing, OT wrongly seeks to transform two common-sense, off-the-cuff remarks by Mr. Gorman (in the context of trying to find the truth, not directing towards a particular conclusion) into improper directives compelling the investigators to disregard any evidence tending to prove Mr. Levandowski's alleged innocence. Specifically, OT relies on the following two statements:

> [I]t sounds like AL came back from Thanksgiving break, obtained a Windows laptop, and then three weeks later he reformatted it to Goobuntu and never used it again. On Dec. 11—in the middle of that three-week window—an unidentified Windows machine at 216.239.45.222 (which is registered to Google) used AL's login to sync all of Chauffeur's electronic schematics and PCB layouts. Those aren't the crown jewels, but assuming AL used this laptop to sync those files, I think the sequence is fishy.

(Ex. 1.)

> The goal, ultimately, is to figure out why he was doing whatever he was doing in December 2015 and January 2016.
>
> Specifically, we recently learned that on 12/11/2015, anthonyl used a Windows machine (@ 216.239.45.222) to sync all of Chauffeur's schematics for electronics and printed-circuit boards from a Chauffeur system. We don't have a host name for that machine, but If I'm understanding your emails, the only Windows machine assigned to Anthony on 12/11 was anthonyl0-w. Ten days later, Anthony wiped that machine and reformatted with the Goobuntu OS, which doesn't make a ton of sense because Anthony already had a Goobuntu workstation and a Goobuntu laptop. He never usedanthonyl0-w again. And then the day before he quit, he wiped his other Goobuntu laptop.
>
> That's pretty suspicious, right?

(*Id.*)

Although repeatedly mischaracterized as such by OT over the last several weeks, these statements are hardly objectivity-wrecking injections of bias into the forensic investigation of the Google Digital Forensics Team. The Court itself has had the same reasonable, common-sense reaction to the same set of facts: "You take 14,000 files, you wipe the computer clean, and then you leave the company. Doesn't that sound suspicious to you?" (Dkt. 160, 4/5 Hr'g Tr. at 13:12-

-5-
WAYMO'S RESPONSE TO OTTO TRUCKING'S MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER DKT. 1391

14.)[2]  Further, OT points to no legitimate evidence that the investigators were improperly influenced by Mr. Gorman's statements.  OT writes that Mr. Brown sought to confirm that Mr. Levandowski had downloaded the 14,000 files (Br. 7), but fails to note that the investigators consulted multiple, independent, corroborating sources to do so.  OT writes that Mr. Brown testified that he disregards information "not deemed explicitly relevant for what we are trying to prove," but that testimony referred to retention of data, not anything said by Mr. Gorman.

In addition, OT's all-out assault on Messrs. Brown and Gudjonsson must fail for the simple reason that it completely ignores the context of Mr. Levandowski's actions that informs the meaning of the download.  OT argues that the investigators failed to check that according to instructions, first-time SVN users download the entire repository (Br. 2), that Levandowski had permission to access the SVN (Br. 2-3), failed to look to Mr. Levandowski's typical usage patterns (Br. 2-3), did not consider the SVN download patterns of other engineers (Br. 4-5, 11), lack knowledge of the SVN (Br. 5-6), and reviewed incomplete SVN log data (Br. 2, 10-12).  But all of these arguments rest on the false premise that the investigators concluded that the download in and of itself was suspicious.  In fact, Mr. Brown testified to the opposite.  Specifically, he explained that the download itself was only "[p]otentially" suspicious.  (Ex. 2, Brown 3/24 deposition at 32:5-33:4.)  It was not the download itself, but "other factors around it," that render the download suspicious: "Such as the searching for instructions on how to access that server; such as the appearance of a USB device in the device the files were downloaded to followed by the obliteration of that device and its reformat into a completely unexpected operating system." (*Id.*)  None of these suspicion-inducing factors are altered by the factors identified by OT, such as the download patterns of Mr. Levandowski and others or the extent of SVN log data available.

---

[2]  Further, far more incriminating facts were not known to Mr. Gorman or to anyone involved in the investigation at that time.  These facts include that Mr. Levandowski, on the day he downloaded the files, was meeting with Uber to discuss the formation and sale of Ottomotto, and that Mr. Levandowski, prior to the download, had told fellow engineer Pierre Droz that Mr. Levandowski "planned to replicate" Waymo's technology at another company.

OT further points to statements made by Mr. Zbrozek that Mr. Levandowski's download, in and of itself, did not "ring alarm bells" to Mr. Zbrozek, and that Mr. Zbrozek later stated that "it makes me uncomfortable to think that lawyers are trying to ascribe suspicion" to a full checkout of the SVN repository.  (Br. 3.)  OT faults the investigators for failing to consider these comments from Mr. Zbrozek, but this challenge also fails.  On the one hand, OT nowhere states that it is an investigator's responsibility to consider the conclusions of others, rather than to analyze facts and come to an independent conclusion.  Moreover, Mr. Zbrozek shares the same belief as the investigators:  that while a full download in and of itself may not be suspicious, a download surrounded by other facts may indeed be suspicious.  As to his "uncomfortable" comment, Mr. Zbrozek testified that "I was concerned about setting a precedent for that one action in isolation being in and of itself a marker of suspicion," not that Mr. Levandowski's download, given the additional context, was not suspicious.  (Dkt. 1589-3, Zbrozek deposition at 238-39.)  As to his "alarm bells" comment, Mr. Zbrozek has testified that "on its own, as a single action in absence of context, pulling the Subversion repository is not suspicious, but that as part of a larger narrative, you know, suspicion may or may not come into play. . . . [I]f the logs showed, you know, someone pulling information and putting that information somewhere else and then leaving the company, maybe that's suspicious."  (Dkt. 1589-3.)

Finally, OT suggests that the investigators failed to take into account reasonable alternatives for Mr. Levandowski's download.  OT provides only one alternative, albeit in two different places in its brief (Br. 7-8, 11-12), which is that because Levandowski had reformatted his laptop in November 2015, he may have had to re-download files that had been erased in November.  There is no evidence of this.  Further, this suggested alternative fails to note that Mr. Levandowski did not access the SVN between September and November 2015.  And again, OT's "reasonable alternative" fails to account for all of the other factors that make the download suspicious.  For example, it is hardly reasonable to suggest that Mr. Levandowski downloaded the

SVN for valid work purposes given that he wiped the computer used to download the files a week after the download.[3]

### B.     Mr. Brown Used Reliable Log Data

OT also argues that the investigators "relied on unreliable log data." (Br. 6.) This argument is based on selective, deliberately-misleading quotations and fails for several reasons.

First, OT points to an email from Mr. Brown stating that "[f]lakiness and errors in this kind of log diving is very common." (Br. 6.) That testimony referred to Mr. Brown's log data showing that Mr. Levandowski had queried Google's internal MOMA server for instructions on how to access the Waymo SVN. OT fails to mention, however, Mr. Brown's deposition testimony stating that precisely because MOMA search log queries can be unreliable, he ran these particular searches **multiple times** to satisfy himself that the results were proper. (Ex. 3, Brown Dep. at 462:11-463:16.)

Second, OT points to an email in which Mr. Brown says "I greatly distrust Armada," but again fails to cite to Mr. Brown's testimony on the subject showing Armada to be extremely reliable for the purposes for which Mr. Brown relied on it. Specifically, Mr. Brown testified that Armada had only expressed distrust in a particular Armada log entry concerning escrow keys because Clipper, not Armada, is the canonical source for escrow keys. Mr. Brown went on to testify that Armada is wholly reliable and verified for all other purposes:

> Q. So your comment that you greatly distrust Armada was an offhanded thing?
>
> A. Yes.
>
> Q. Has Armada disagreed with any other source of data that you looked at in the course of your investigation of Mr. Levandowski?
>
> THE WITNESS: I have not seen it disagree. I cannot recall any other conflict in combining all the other sources that we have. If anything, Armada agrees on every other facet.

---

[3] The Stroz report, unavailable to the investigators, had subsequently proven that Mr. Levandowski transferred the downloaded files to the SD card reader and then to his personal laptop.

(Ex. 3, Brown Dep. at 472-73.)

OT's third challenge is to the way that certain log data can be mis-rendered in Microsoft Excel, but OT does not challenge the actual log data, or Mr. Brown's interpretation of it.[4]

### C. Mr. Brown And Mr. Gudjonsson Are Proper Testifying Experts[5]

OT relies primarily on *Claar v. Burlington N. R. Co.*, 29 F.3d 499 (9th Cir. 1994) to argue that the investigators' opinions should be excluded, but the facts in *Claar* are not similar. In *Claar*, expert physicians hired by plaintiffs testified that plaintiffs' injuries had been caused by workplace exposure to various chemicals. *Id.* at 500. One expert opined that a plaintiff suffered from arithmetical and grammatical defects as a result of exposure, but the expert had failed to check the plaintiff's school records, which revealed an obvious alternative explanation: that the plaintiff had always been poor in these areas. *Id.* at 502. Two experts admitted that although they lacked familiarity to diagnose injuries without reading certain literature, they had not read that literature. *Id.* The Court thus agreed with the district court's finding that these experts' conclusions were based on "subjective belief and unsupported speculation," and upheld the district court's exclusion of their testimony.

Unlike in *Claar*, neither Mr. Brown nor Mr. Gudjonsson are paid experts, but rather are in-house security investigators at Google. Their testimony goes to their investigation, which substantially concluded before Waymo filed its complaint in this action. Their conclusions concerning Mr. Levandowski were not "unsupported speculation," but rather grounded in multiple

---

[4] In a later section of the brief, OT states that "Mr. Brown states on multiple occasions that there are errors in the various SVN logs they reviewed." (Br. 11.) Mr. Brown reviewed only a single SVN log, that of Levandowski, and never claimed that it contained errors. OT's statement, which lacks any citation, is groundless.

[5] OT claims that "Waymo also appears to avoid outright designating these witnesses as experts." (Br. 8.) As shown in Exhibits 1-4 to OT's motion, Waymo designated both Brown and Gudjonsson as experts under Rule 26(a)(2)(C).

independent and corroborating log sources showing the one-time access and download of the entire SVN, followed by installation of an SD card reader and erasure of the computer used to make the download, performed by an individual who, one month later, resigned from Waymo and formed (and sold) a competing company.

### III. MR. BROWN AND MR. GUDJONSSON MAY PROVIDE LIMITED TESTIMONY CONCERNING THE SVN

OT devotes only eight lines of its brief to its argument that Mr. Brown and Mr. Gudjonsson may not testify concerning the SVN server.  (Br. 12:18-25.)  Neither Mr. Brown nor Mr. Gudjonsson will provide any expert opinion testimony concerning the detailed operation or setup of the SVN server.  They will testify at most to their forensic investigation to the extent that it touches on the SVN server, such as:  review of logs from the SVN repository, review of log data showing the connection between Mr. Levandowski's laptop and the SVN domain hosted at ▬▬▬▬▬, and log data showing that Mr. Levandowski downloaded software called TortoiseSVN, which can access the SVN repository.  Mr. Brown and Mr. Gudjonsson are both experienced forensics investigators and well-equipped to review this kind of data.

### IV. CONCLUSION

For the foregoing reasons, the Court should deny Defendant OT's Motion in Limine To Exclude Testimony Of Gary Brown and Kristinn Gudjonsson.

DATED:  September 22, 2017              QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                        By */s/ Charles K. Verhoeven*
                                           Charles K. Verhoeven
                                           Attorneys for WAYMO LLC