QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>           Plaintiff,<br><br>   vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>           Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE TESTIMONY OF DR. HESSELINK REGARDING PROTECTIONS OF WAYMO'S ALLEGED TRADE SECRETS**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>Date:         September 27, 2017<br>Time:         8:00 a.m.<br>Ctrm:         8, 19th Floor<br>Judge:        Honorable William H. Alsup<br>Trial Date:   October 10, 2017 |

01980-00104/9570124.2

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ....................................................................................................................2

III. LEGAL STANDARD .............................................................................................................4

IV. ARGUMENT ..........................................................................................................................5

    A. Dr. Hesselink Is Qualified to Offer Opinions Regarding Reasonable Measures ......................................................................................................................5

    B. Dr. Hesselink's Methodology Is Reliable and Grounded In Legal Precedent ...........5

        1. It Was Appropriate for Dr. Hesselink to Rely on Testimony from Waymo and Google Engineers ....................................................................5

        2. Mr. Droz and Mr. Janosko Have Firsthand Knowledge About Waymo's SVN Repository ................................................................................7

        3. Dr. Hesselink's Opinion's Concerning Network, Client Device, and Facility Security Measures are Relevant .......................................................9

    C. Dr. Hesselink's Opinions Are Not Merely a "Recital of Information Found in Declarations" .......................................................................................................10

V. CONCLUSION .....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Motorola, Inc.,*
 757 F.3d 1286 (Fed. Cir. 2014) .................................................................................................. 4

*Butler v. Home Depot, Inc.,*
 984 F. Supp. 1257 (N.D. Cal. 1997) ........................................................................................... 6

*Claar v. Burlington Northern R. Co.,*
 29 F.3d 499 (9th Cir. 1994) ........................................................................................................ 6

*Daubert v. Merrell Dow Pharms.,*
 509 U.S. 579 (1993) ................................................................................................................... 4

*Fed. Trade Comm. v. Wellness Support Network, Inc.,*
 No. 10-cv-04879-JCS, 2014 WL 644749 (N.D. Cal. Feb. 19, 2014) ........................................ 10

*i4i Ltd. P'ship v. Microsoft Corp.,*
 598 F.3d 831 (Fed. Cir. 2010) .................................................................................................... 4

*Ollier v. Sweetwater Union High School District,*
 768 F.3d 843 (9th Cir. 2014) ...................................................................................................... 7

*Pooshs v. Phillip Morris USA, Inc.,*
 287 F.R.D. 543 (2012) ............................................................................................................ 7, 8

*Radware, Ltd. v. F5 Networks, Inc.,*
 No. 13-cv-02024-RMW, 2016 WL 590121 (N.D. Cal. Feb. 13, 2015) ............................. 5, 6, 10

*Therasense, Inc. v. Becton, Dickinson & Co.,*
 No. C 04-02123 WHA, 2008 WL 2323856 (N.D. Cal. May 22, 2008) ............................. *passim*

*Volterra Semiconductor Corp. v. Primarion, Inc.,*
 No. 08-cv-05129, 2013 WL 6905555 (N.D. Cal. Sept. 24, 2013) .............................................. 6

*United States ex rel. Jordan v. Northrop Grumman Corp., No. CV 95-2985 ABC (Ex),*
 2003 WL 27366220 (C.D. Cal. Feb. 24, 2003) ........................................................................ 10

*Wood v. Southwest Airlines Co.,*
 No. 2:14-cv-01421-KJM-CKD, 2016 WL 696599 (E.D. Cal. Feb. 22, 2016) ............................ 9

**Rules and Regulations**

Fed. R. Evid. 702 ........................................................................................................................ 4, 5

## I. INTRODUCTION

Waymo's expert, Dr. Hesselink, submitted qualified, reliable, and relevant expert opinions concerning Waymo's efforts to protect its confidential information and trade secrets. In support of his opinions, Dr. Hesselink relied on sworn declaration testimony from Google and Waymo engineers, including Michael Janosko, a Google Security Engineering Manager who provided a detailed account of Google's network and facility security system and procedures, as well as the SVN repository that maintains electrical design files for Waymo's LiDAR systems. Dr. Hesselink also relied on sworn testimony from Pierre Yves-Droz, a Waymo LiDAR engineer who accesses the SVN repository as part of his day-to-day job responsibilities. In light of this testimony, and based on his own background and expertise, Dr. Hesselink concluded that Waymo takes reasonable measures to protect its trade secrets. This is a "traditional and correct" way for an expert to develop his opinions and present them at trial. *Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2008 WL 2323856 at *2 (N.D. Cal. May 22, 2008) (Alsup, J.) ("The traditional and correct way to proceed is for a foundational witness to testify first-hand at trial to the foundational fact . . . and to be cross-examined. Then the expert can offer his or her opinion on the assumption that the foundational fact is accepted by the jury.").

Otto Trucking's motion does not establish any legitimate basis for excluding Dr. Hesselink's testimony.

*First*, Otto Trucking challenges Dr. Hesselink's opinions concerning one specific aspect of Waymo's system—the SVN repository. Otto Trucking argues that these opinions are unreliable because they are based on testimony from Mr. Janosko who allegedly lacks adequate personal knowledge about the repository. This argument ignores the bulk of Mr. Janosko's declaration testimony, where he provided a firsthand account of the security measures that protect the repository. The argument also ignores Mr. Janosko's deposition testimony, where he explained that he personally verified information provided to him about the repository. Rather than focusing on Mr. Janosko's testimony overall, Otto Trucking nitpicks a few specific details about the repository that Mr. Janosko was unable to provide information about during his deposition, such as the number of days that passwords remain active or the date on which monthly audits take

place.  At best, these details go to the weight of Dr. Hesselink's testimony, not its admissibility.  Otto Trucking is free to cross-examine Dr. Hesselink if it believes these details are relevant, but there is no requirement that an expert account for every specific detail about a given topic in order to render reliable opinions about it.

*Second*, Otto Trucking argues that Dr. Hesselink's opinions about security measures *other than those that protect the SVN repository* are irrelevant.  These security measures relate to Google's network overall, the client devices that Waymo employees use to access the network, and the physical facilities where Waymo develops and maintains its trade secrets.  Notably, Otto Trucking does not dispute that Dr. Hesselink's opinions are ***reliable*** concerning these measures.  Instead, Otto Trucking argues that the opinions are ***irrelevant*** because they do not relate specifically to the SVN repository.  This argument ignores the fact that Waymo's trade secret information is not confined to the SVN repository, but instead resides on Google's network, client devices, and in physical facilities.  The security measures that Google and Waymo use to protect these systems are highly relevant, and so are Dr. Hesselink's opinions about the measures.

*Third*, Otto Trucking argues that Dr. Hesselink's opinions should be excluded because he allegedly "parroted" declaration testimony from Mr. Janosko without performing an independent investigation.  This argument ignores Dr. Hesselink's methodology, which relied on Mr. Janosko's testimony—among other information—as a factual foundation, and then applied his experience and expertise to conclude that the measures that Mr. Janosko testified about were reasonable.  This approach is entirely appropriate under the law, and there is no requirement that an expert perform in independent investigation when foundational fact testimony is available.

## II.   BACKGROUND

Dr. Hesselink addressed three categories of Waymo's security practices.  First, he addressed the measures Waymo takes to ensure that people who are given access to confidential information, including employees and vendors, are subject to confidentiality obligations and non-disclosure agreements.  *Id*. ¶¶ 65-67.  Second, he addressed the measures Waymo takes to ensure its electronic information is secure.  *Id*. ¶¶ 68-72.  For example, he detailed the procedures that Waymo has established for access to its secure SVN repository that maintains Waymo's electrical

1  design files for its LiDAR systems.  *Id*. ¶ 69.  He discussed the Google server and network
2  infrastructure that Waymo leverages, including network access protocols and credentials.  *Id*. ¶ 70.
3  He identified network protection tools that Google employs, including whitelisting, blacklisting,
4  cryptography, and two-factor authentication.  *Id*. ¶ 71.  And he discussed methods that Google
5  employees to monitor unauthorized access to its network, including signaling and logging
6  mechanisms.  *Id*. ¶ 72.  Third, Dr. Hesselink addressed the measures Waymo takes to secure its
7  physical assets and facilities, including ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, locks, cameras, guards, and
8  opaque domes placed over its LiDAR systems when deployed in the field.  *Id*. ¶¶ 73-74.

      In evaluating Waymo's efforts to protect its confidential information and trade secrets, Dr. Hesselink relied on documents and sworn declaration testimony from Google and Waymo engineers, including Mr. Janosko, a Security Engineering Manager who is responsible for managing Google's Client Platform Hardening team and Access Control Infrastructure team, and Mr. Droz, a LiDAR engineer who accesses Waymo's SVN repository as part of his job function.  *Id*. ¶¶ 64-74.  Mr. Janosko's sworn testimony describes Google's investment in secure client platforms, including tools and mitigation techniques that prevent attacks and unauthorized access.  *Id*. ¶¶ 7-10.  He discusses insider risk mitigation, network access procedures, and intrusion detection systems.  *Id*. ¶¶ 11-20.  He details the security systems and procedures that protect Waymo's physical facilities, as well as incident management procedures for potential security events.  *Id*. ¶¶ 17-22. Finally, he details the SVN repository and its security measures, including the following:

> All traffic (both ingress to and egress from) the SVN repository is encrypted.  All traffic is authenticated against a list of authorized users before access to the repository is granted, and users do not share credentials – all accesses are unique to specific users.  Access control lists are audited monthly and stale users are aggressively purged.  The SVN server is password protected and accessible through specialized software (e.g., TortoiseSVN).  At present, approximately ▓ employees and contractors working on projects for Waymo have security permissions to access the SVN server.  *Id*. ¶ 25.

      Mr. Droz's declaration explains that Waymo requires its employees to follow a code of conduct that obligates them to protect the confidentiality of trade secrets and other proprietary information.  Dkt. 25-31 ¶ 30.  He explains that Waymo provides annual information security

training. *Id*. ¶ 31.  He explains that Waymo ensures not to provide full LiDAR specifications to any of its vendors.  *Id*. ¶ 37.  He explains that networks hosting confidential and proprietary information include multiple safeguards, including encryption, passwords and dual-factor authentication.  *Id*. ¶ 33.  And he explains that Waymo's SVN repository stores electrical design information on a secure server, with files distributed on a need-to-know basis.  *Id*. ¶ 32.

Based on his analysis of these materials, Dr. Hesselink concluded that Waymo has taken reasonable efforts to protect its confidential information and trade secrets.  *Id*.  Dr. Hesselink explained that he was qualified to offer these opinions because of his industry experience and understanding of practices and procedures that companies employ to protect the secrecy of their confidential information, including physical and electronic security, non-disclosure and other confidentiality agreements, and document marking and branding.  *Id*. ¶ 64.

### III. LEGAL STANDARD

A qualified expert witness may provide opinion testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.  The Federal Circuit has explained, "When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010).  The Federal Circuit recently reiterated that "the gatekeeping role of the judge is limited to excluding testimony based on unreliable principles and methods," and accordingly cautioned the judiciary "not to overstep its gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another" because "[t]hese tasks are solely reserved for the fact finder." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314-15 (Fed. Cir. 2014).  Where the expert is qualified, the expert's opinion is the result of a reliable methodology, and the expert relies upon facts sufficiently related to the case at hand, the expert's testimony should be admitted and tested by contrary evidence, cross-examination, and careful instruction in the burden of proof.  *Daubert v. Merrell Dow Pharms.*, 509

U.S. 579, 595 (1993); *i4i*, 598 F.3d at 854 ("*Daubert* and Rule 702 are safeguards against unreliable and irrelevant opinions, not guarantees of correctness").

## IV.  ARGUMENT

### A.  Dr. Hesselink Is Qualified to Offer Opinions Regarding Reasonable Measures

There is no dispute that Dr. Hesselink is qualified to offer opinions concerning Waymo's efforts to protect its confidential information and trade secrets.  As Dr. Hesselink explained in his expert report, he is qualified in this area based on his industry experience and understanding of procedures that companies employ to protect the secrecy of their confidential information.  *Id*. ¶ 64.  His industry experience includes serving as the Chief Technology Officer in the branded products division of Western Digital, a company engaged in the design and development of data storage systems.  *Id*.  Otto Trucking does not challenge Dr. Hesselink's qualifications.  Mot. at 6-9.  Accordingly, Dr. Hesselink is "qualified" pursuant to Federal Rule of Evidence 702.

### B.  Dr. Hesselink's Methodology Is Reliable and Grounded In Legal Precedent

#### 1.  It Was Appropriate for Dr. Hesselink to Rely on Testimony from Waymo and Google Engineers

Under the Federal Rules of Evidence, it is traditional and correct for an expert witness to provide opinion testimony based on predicate foundational evidence from knowledgeable fact witnesses. *Therasense*, 2008 WL 2323856 at *2 ("The traditional and correct way to proceed is for a foundational witness to testify first-hand at trial to the foundational fact . . . and to be cross-examined. Then the expert can offer his or her opinion on the assumption that the foundational fact is accepted by the jury."); *Radware, Ltd. v. F5 Networks, Inc.*, No. 13-cv-02024-RMW, 2016 WL 590121, at *18 (N.D. Cal. Feb. 13, 2016).  In *Radware*, for example, the plaintiff filed a motion *in limine* to preclude the defendant's technical expert from offering opinion testimony concerning commercial acceptability of non-infringing alternative designs, arguing that the expert did not provide independent analysis on this issue.  *Id*.  Judge Whyte denied the motion, explaining that the expert had relied on foundational evidence from the defendant's engineers in forming her opinions, and it would be proper for the engineers to provide this foundational evidence at trial and for the expert to provide opinion testimony based on the evidence.  *Id*.  ("Ms.

1  Stamm may rely on factual evidence supplied by Mr. Needham and Mr. Schaller if F5 presents
2  such foundation evidence at trial.").

3  Here, Dr. Hesselink has relied on foundational evidence from Mr. Janosko and Mr. Droz in forming his opinions concerning reasonable measures.  It is proper for Waymo to present this foundational evidence at trial, and for Dr. Hesselink to provide opinion testimony based on the evidence.  A number of cases have reached this same conclusion, finding that depositions, declarations, and interviews are reliable information that an expert may rely on in forming his opinion.  *See, e.g., Radware*, 2016 WL 590121, at *18-19 (defendant's expert was permitted to rely on engineers' fact testimony without conducting an independent investigation into commercial acceptability); *Butler v. Home Depot, Inc.*, 984 F. Supp. 1257, 1261 (N.D. Cal. 1997) (expert's reliance on materials provided by counsel rather than empirical studies went to the weight of the evidence, not its admissibility).  These cases are consistent with the understanding that "[e]xperts generally base their opinions, in part, on review of the relevant documents and testimony in a case and courts generally find that this is an appropriate basis for expert opinion." *Volterra Semiconductor Corp. v. Primarion, Inc.*, No. 08-cv-05129, 2013 WL 6905555, at *25 (N.D. Cal. Sept. 24, 2013).

17  The few cases that Otto Trucking cites in its motion are not to the contrary.  In *Claar*, the experts formed opinions before reading relevant medical literature, but "admitted that they were not sufficiently familiar with the field to diagnose the causes of plaintiffs' injuries without first reviewing that literature."  *Claar v. Burlington Northern R. Co.*, 29 F.3d 499 (9th Cir. 1994).  In this case, there is no evidence—let alone an admission from Dr. Hesselink or Mr. Janosko—that accessing the SVN repository itself is necessary to understanding whether it is secure.  The people who access the repository are LiDAR engineers who use the electrical design files maintained in the repository as part of their day-to-day work.  Dkt. 1609-7 ¶ 23; Dkt. 25-31 ¶ 32.  Security engineering managers like Mr. Janosko are knowledgeable about the security of the repository without having to physically login to it.  *Id*. ¶ 25.  In any event, Mr. Janosko testified during his deposition that he observed Mr. Zbrozek access the repository via a live video demonstration, and thus acquired firsthand knowledge of how the system is accessed.  Dkt. 1609-6 at 18:15-24.

The *Ollier* case is also distinguishable. There, one of the experts whose testimony was excluded did not conduct an in-person investigation of the athletic facilities that were the subject of his testimony. *Ollier v. Sweetwater Union High School District* 768 F.3d 843, 860-61 (9th Cir. 2014). The other expert viewed the facilities, but only from far away. *Id*. Neither expert spoke to anyone about the school's facilities, and one of the experts admitted that her proposed testimony was speculative. *Id.* These facts are distinguishable from the instant case, where Dr. Hesselink specifically reviewed and relied upon sworn declarations from engineers knowledgeable about Google and Waymo's security measures. Dkt. 1609-5 ¶¶ 64-74.

The *Pooshs* case is also distinguishable. First, Otto Trucking's argument that the expert opinion was excluded because it was formed "primarily by pointing to documents that speak for themselves" is misleading because it is based on arguments by the moving party, not the court's holding. *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 552 (2012). Second, although the court did not permit the expert to testify "solely as a summarizer of documents," it did permit him to testify about documents that contained information within his area of expertise. *Id.* at 553. Here, Dr. Hesselink is not simply summarizing the declarations of others, but rather relying on the facts contained in the declarations, as well as his experience and expertise, to form his opinions.

### 2. Mr. Droz and Mr. Janosko Have Firsthand Knowledge About Waymo's SVN Repository

Otto Trucking does not dispute that Mr. Droz's testimony concerning Waymo's security measures and the SVN repository is based on firsthand person knowledge. Mot. at 6-7. Nor does it challenge Dr. Hesselink's opinions based on Mr. Droz's testimony as allegedly unreliable. *Id*. Accordingly, Dr. Hesselink should be free to offer opinion testimony at trial based on foundational evidence elicited through Mr. Droz's testimony.

Regarding Mr. Janosko's testimony, a complete review of his declaration and deposition transcript shows that he has reliable personal knowledge concerning Waymo's SVN repository. Otto Trucking does not dispute Mr. Janosko's personal knowledge about the following facts: (1) that "All traffic (both ingress to and egress from) the SVN repository is encrypted"; (2) that "All traffic is authenticated against a list of authorized users before access to the repository is granted,

and users do not share credentials – all accesses are unique to specific users"; (3) that "Access control lists are audited monthly and stale users are aggressively purged"; and (4) that "The SVN server is password protected and accessible through specialized software (e.g., TortoiseSVN)." Dkt. 1609-7 ¶ 25.  Otto Trucking also does not dispute that Mr. Janosko personally verified the information he received from Mr. Zbrozek about the structure and operation of the repository:

Q. What did you do to verify his information?

A. I looked at change logs for reviewing active users so one of the controls is that they review the user list for appropriateness and I saw that process in action. I also saw the configuration of a client service for Subversion, where you have to enter the user name and password and that actually is encrypted. And I'm also aware that users that don't have authorized access to the service are not permitted to access it.

Dkt. 1609-6 at 17:15-24; Mot. at 2-4.

Instead, Otto Trucking resorts to sweeping generalizations unsupported by the deposition testimony cited in its motion.  For example, Otto Trucking argues that Mr. Janosko "repeatedly testified in his deposition that he had no personal knowledge of the SVN server," but the cited deposition testimony simply shows that Mr. Janosko had not personally accessed the SVN server. Mot. at 2.  Mr. Janosko went on to explain that he observed Mr. Zbrozek access the repository via a videoconference, and thus acquired first hand knowledge of the login and access procedures as discussed above.  Dkt. 1609-5 ¶¶ 23-25; Dkt. 1609-6 at 18:15-24.

Otto Trucking also focuses on highly specific details about the SVN repository that Mr. Janosko did not have information about during his deposition.  Mot. at 3.  These details—such as the definition of a "stale user," the number of days that a password is valid, or the frequency with which access control lists are updated—are at most cross examination points that Otto Trucking is free to pursue if it believes the testimony is relevant to the issue of reasonable measures. *Radware*, 2016 WL 590121, at *18.  Likewise, any argument that Dr. Hesselink failed to consider these details as part of his analysis goes to the weight of his testimony—not its admissibility.[1] *Wood v. Southwest Airlines Co.*, No. 2:14-cv-01421-KJM-CKD, 2016 WL 696599, at *4 (E.D.

---

[1] The same is true for Mr. Zbrozek's and Dr. Laykin's testimony.  Mot. at 3-5.  If Otto Trucking believes that Mr. Zbrozek or Dr. Laykin contradict Dr. Hesselink, it is free to explore those theories on cross-examination.

Cal. Feb. 22, 2016) ("The amount of evidence Dr. Reddy considered affects not the admissibility of his testimony, but the weight to assign it.").

### 3. Dr. Hesselink's Opinion's Concerning Network, Client Device, and Facility Security Measures are Relevant

In addition to discussing the SVN repository, Dr. Hesselink provided opinions about the security measures associated with Google's network more broadly, the client devices that Waymo employees use to access the network, and the physical facilities where Waymo develops and maintains its trade secrets. Dkt. 1609-5 ¶¶ 70-74. Otto Trucking does not dispute that these opinions are *reliable*. Mot. at 8. Nor does Otto Trucking dispute that the fact testimony Dr. Hesselink relies on to support his opinions is based on the personal knowledge of Mr. Janosko and Mr. Droz. *Id*. Instead, Otto Trucking argues that the opinions are not *relevant* because they do not relate to the SVN repository. The Court should reject this argument for the following reasons.

First, Waymo's trade secret information is not confined to the SVN repository. Dkt. 25-31 ¶¶ 30-37. Waymo's trade secrets are described in confidential design documents, presentations, and internal communications—all of which are stored and exchanged outside of the SVN repository and protected by Google's network security measures more broadly. *Id*. Waymo's trade secrets are also embodied in the physical devices it designs and manufactures in its facilities—which are protected by the physical security measures discussed in Mr. Janosko's declaration. *Id*. The network, client, and facility security systems and procedures that Mr. Janosko described are all highly relevant to the issue of whether Waymo takes reasonable measures to protect its trade secrets in addition to the security measures that secure the SVN repository. Dkt. 1609-6 ¶¶ 11-20. Dr. Hesselink's opinion testimony concerning these systems and procedures is likewise highly relevant. Second, Otto Trucking does not provide any evidence to support its argument that security measures outside of the SVN repository are irrelevant. Mot. at 8. This entire section of Otto Trucking's motion is based on attorney argument without citation to a single piece of evidence. *Id*. Third, Otto Trucking's argument ignores overlap between Google's security measures and the SVN repository, such as ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Newton Decl. Ex. 1 at 22:6-23.; Dkt. 1609-7 ¶¶ 7-10.

### C. Dr. Hesselink's Opinions Are Not Merely a "Recital of Information Found in Declarations"

Finally, the Court should reject Otto Trucking's argument that Dr. Hesselink "parroted" Waymo's fact declarations without performing his own independent analysis. Dr. Hesselink's methodology relied on these declarations as a factual foundation, and then applied his experience and expertise to conclude that the measures Google and Waymo employ to protect confidential information and trade secrets are reasonable. This approach is entirely appropriate under the law. *Therasense*, 2008 WL 2323856, at *2; *Radware*, 2016 WL 590121, at *18.

There is no requirement that Dr. Hesselink perform an independent investigation of the SVN repository in order for his opinions to be deemed reliable. Courts have routinely held that experts are not required to conduct this type of investigation, particularly where reliable fact testimony is available. *Fed. Trade Comm. v. Wellness Support Network, Inc.*, No. 10-cv-04879-JCS, 2014 WL 644749, at *9 (N.D. Cal. Feb. 19, 2014) (denying defendants' contention that expert's opinion is unreliable where he did not personally review defendants' website); *United States ex rel. Jordan v. Northrop Grumman Corp.*, No. CV 95-2985 ABC (Ex), 2003 WL 27366220, at *6 (C.D. Cal. Feb. 24, 2003) (expert not required to conduct additional interviews where he relied on deposition testimony). This is the same result reached in *Radware*, where Judge Whyte explained that the defendant's expert was permitted to rely on fact testimony from the defendant's engineers without conducting an independent investigation into commercial acceptability. *Radware*, 2016 WL 590121, at *18.

### V. CONCLUSION

For the foregoing reasons, the Court should deny Otto Trucking's Motion *in limine* to exclude testimony from Dr. Hesselink regarding Waymo's measures to protect its trade secrets.

DATED:  September 22, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC