QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:   (415) 875-6600
Facsimile:   (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S OPPOSITION TO DEFENDANTS UBER TECHNOLOGIES INC.'S AND OTTMOTTO LLC'S MOTION TO EXCLUDE ONE OF THREE OPINIONS PROFFERED BY WAYMO EXPERT JIM TIMMINS**<br><br>Date:         September 27, 2017<br>Time:         8:00 a.m.<br>Ctrm:         8, 19th Floor<br>Judge:        Honorable William H. Alsup<br>Trial Date:   October 10, 2017 |

01980-00104/9572447.2

**INTRODUCTION**

Uber's Motion To Exclude One Of Three Opinions Proffered By Waymo Expert Jim Timmins is based on a faulty premise that an expert with 35 years of experience in investment banking, venture capital, and business consulting, which includes analyzing corporate ownership and control documents, cannot analyze these very same types of documents and provide an opinion as to their import from a business perspective. Specifically, Uber challenges Mr. Timmins's analysis of the document trail related to the ownership and control of Tyto LiDAR LLC[1] ("Tyto"), a LiDAR company that was "acquired" by Ottomotto in May 2016 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. 1611 at 1-2; Dkt. 1611-4 at ¶¶ 66-69.) Uber also challenges Mr. Timmins's opinion that Anthony Levandowski had control over Tyto's assets and its disposition. (Dkt. 1611 at 1-2; *see* Dkt. 1611-4 at ¶¶ 26(c), 69.) Tellingly, Uber does not dispute the substance of any of Mr. Timmins's analysis or conclusions. Instead, knowing that the person most knowledgeable about these facts is asserting the Fifth Amendment, Uber is seeking to prevent this highly relevant and probative evidence from reaching the jury in a coherent manner. This is improper. Mr. Timmins's analysis of the facts, in the form of an opinion as to the undisputed ownership and control structure of Tyto, is not only well within Mr. Timmins's extensive business acumen and expertise but is also proper opinion testimony under Federal Rules of Evidence 702 and 704. Uber's Motion should be denied.

**BACKGROUND**

Waymo obtained evidence early in the case that Mr. Levandowski was funneling proprietary and confidential Waymo LiDAR designs to Tyto employees, including James Haslim—who was an engineer at Tyto, helped develop Defendants' Spider LiDAR design after Tyto was acquired, and is currently the lead hardware engineer for Fuji—even before Ottomotto's May 2016 acquisition of Tyto. As relevant to the nine trade secrets currently set to be tried, Trade Secret No. 90 used in Defendants' Spider design was first disclosed by Mr. Levandowski to Mr. Haslim while Mr. Haslim

---

[1] Tyto LiDAR LLC was originally named "Odin Wave LLC," but the name was changed on February 10, 2014. Waymo refers to the entity as "Tyto" herein regardless of which name it was using at the relevant time.

was at Tyto; it was then incorporated into Tyto's "Owl" LiDAR device before being incorporated into Uber's Spider LiDAR device. (*See*, *e.g.*, Dkt. 387-6 at 17:24-24:24.) Thus, Mr. Timmins's analysis and opinions relate to one way that Ottomotto and Uber acquired Waymo's Trade Secret No. 90.

On May 9, 2016, Ottomotto and Tyto executed a Bill Of Sale And Assignment Assumption Agreement. (McCauley Dec. Ex. 1; *see also* Dkt. 1501-9.) That Bill Of Sale resulted from the Asset Purchase Agreement entered into between Ottomotto and Tyto (with the approval of Uber) on May 5, 2016. *Id.*

Tyto had been formed as a Limited Liability Company (originally named "Odin Wave") on August 9, 2012. (McCauley Dec. Ex. 2.) Tyto's " ████████ is Sandstone Group, LLC ("Sandstone") ██████████████. *Id.* at 1, 5. Sandstone's Articles of Organization ████████████████████████████████████████████████████████████████████████████████. (McCauley Dec. Ex. 3 at 1, Schedule A.) The referenced ████████████████████████████████████████[2] (McCauley Dec. Ex. 4 at 1.)

Levandowski t████████████████████████████████████████████████████████████████ *Id.* ████████████████████████████████████████████████████████████ *Id.* at 15.

In reviewing these documents, Mr. Timmins deduced the chain of ownership as follows: Mr. Levandowski created and funded ████████████████████████████

---

[2] Waymo did not uncover this final link in the chain, which conclusively connects Mr. Levandowski to Tyto, until the final week of discovery, after serving – throughout the discovery period – a series of third-party subpoenas that ultimately revealed the elaborate series of shell companies and trusts that Mr. Levandowski set up to conceal his involvement in Tyto. (Dkt. 1501-4 at 6 n.5).

1  ▮▮▮▮ of Sandstone, which in turn was t▮▮▮▮▮▮▮ of Tyto.  As the ▮▮▮▮▮▮
2  ▮▮▮▮ Levandowski controlled Tyto by virtue of the fact that he ▮▮▮▮▮▮▮▮▮
3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Dkt. 1611-
4  4 at ¶ 66.)  Thus, Mr. Timmins opined that Levandowski, through ▮▮▮▮ and Sandstone,
5  ultimately had control over Tyto and its assets and disposition.  (*Id.* at ¶¶ 26(c), 69.)

6  Multiple witnesses were questioned about the ownership structure of Tyto throughout the
7  course of fact discovery, but none was willing or able to provide details about Levandowski's
8  ownership and control of Tyto.  Beyond confirming his signature on the ▮▮▮▮▮▮▮,
9  Levandowski has pled the Fifth Amendment in response to all questions about these entities and
10 their ownership structures.  (McCauley Dec. Ex. 9 at 138:18-162:1.)  Ognen Stojanovski (Uber
11 ATG's Head of Policy and Government Relations) was the manager of both Tyto and ▮▮▮▮
12 ▮▮▮ Sandstone, yet purported to have no knowledge of ▮▮▮▮ (McCauley Dec. Ex. 5), despite
13 documentary evidence suggesting that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮.  (McCauley Dec. Ex. 6 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").)  Adam Bentley—Ottomotto's in-
18 house counsel—similarly purported to have no knowledge of this ownership chain, despite his direct
19 involvement in the negotiations and acquisition of Tyto by Ottomotto and his (privileged)
20 conversation with Levandowski about the Tyto Asset Purchase Agreement.  (McCauley Dec. Ex. 7
21 at 36:15-21, 40:17-24, 43:6-18, 51:22-52:6, 53:13-54:1, 57:21-58:14, 59:1-21.)  Max
22 Levandowski—Anthony's brother who worked for Tyto, Ottomotto, and now Uber—is listed on the
23 ▮▮▮▮▮▮▮ documents as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (McCauley
25 Dec. Ex. 4 at 7, 16-18), claimed that he had never even heard of ▮▮▮▮ (McCauley Dec. Ex. 8 at
26 168:3-10; *see also id.* at 57:23-58:12.)  Thus, to date no single fact witness has been willing to
27 provide testimony that confirms Mr. Levandowski is indeed at the center of Tyto's "Russian nesting
28 doll" ownership structure.  However, Mr. Timmins was able to review the relevant documents and

provide an informed business opinion as to the ownership of Tyto based on his decades of experience in the field.

## ARGUMENT

### I. MR. TIMMINS'S DECADES OF EXPERIENCE IN CORPORATE TRANSACTIONS ENABLE HIM TO PROVIDE HIS BUSINESS OPINION ON THE ISSUE OF TYTO'S OWNERSHIP AND CONTROL

Mr. Timmins has spent 35 years working with companies as an investment banker, venture capitalist, and expert consultant. (McCauley Dec. Ex. 10[3]; *see also* Dkt. 1611-4.) Mr. Timmins is the Managing Director of Teknos Associates LLC, a business valuation and financial advisory firm whose services include valuation and financial advice for tax compliance, financial reporting, transaction support, and litigation. *Id.* Mr. Timmins's expert consulting experience includes litigation related to "fiduciary duty," "investment banking practice and analysis of merger and acquisition (M&A) transactions," and "venture capital and private equity practice and analysis of investment transactions" among other things. *Id.* His other work experience includes "analysis, structuring, valuation, and due diligence review of all aspects of deals" and "transaction structuring" among other roles. *Id.* Moreover, Mr. Timmins has "extensive experience in transactions, including debt and equity financings, M&A, and spin-offs," has been involved in "terms negotiation, transaction structuring, due diligence review, and closing" of transactions. *Id.*

Using this experience, and his familiarity with "documents for corporate, pass-through, and trust entities and transactions involving them," Mr. Timmins analyzed the corporate document trail related to the ownership and control of assets for Tyto and provided an opinion that Anthony Levandowski ultimately had control over Tyto's assets and its disposition. (Dkt. 1611-4 at ¶¶ 26(c), 69.) Mr. Timmins provided this opinion based on decades of experience reviewing corporate documents, and his opinion was provided from a business perspective, not a legal one. Uber's assertion that a legal expert was required to render this opinion fails. *See, e.g.*, *Cyprus Amax Minerals Co. v. TCI Pac. Commc'ns, Inc.*, No. 11-CV-0252-CVE-PJC, 2014 WL 693328, at *4

---

[3] Although Mr. Timmins provides a significant amount of detail about his skills and background in the first five pages of his report, Uber inexplicably failed to include these pages in Exhibit 1 to its Motion, despite its challenge to his qualifications and ability to provide certain opinions.

(N.D. Okla. Feb. 21, 2014)  (finding it was "not necessary" for an expert to have a law degree to review documents and provide an opinion that is otherwise "well within her expertise" and overruling objections to the expert's qualifications to render an opinion that was not "the ultimate legal conclusion").  As shown above, Mr. Timmins has spent his entire career in investment banking and business consulting.  He is more than qualified to provide the opinion challenged by Uber.

## II.   MR. TIMMINS IS PROVIDING A FACT-BASED OPINION ON BUSINESS ISSUES THAT WILL ASSIST THE JURY

One thing is clear from reviewing the documents described above: Levandowski purposefully organized several different entities in a manner that would hide his involvement in the ownership structure and control of Tyto.  Levandowski was largely successful in doing so, to the point that even witnesses intimately involved in the affairs of his shell companies believe they can plausibly deny knowledge of his involvement.  Mr. Timmins's testimony will therefore assist the jury in navigating this labyrinth, which is what the Federal Rules envision to be one of the main purposes of an expert witness.  *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 529 (9th Cir. 1986) ("The federal rules clearly indicate the desirability of testimony by a qualified expert if it will assist the trier of fact as required by Rule 702.") (citing *Hingson v. Pacific Southwest Airlines,* 743 F.2d 1408, 1412 (9th Cir. 1984)).

Uber asserts that Mr. Timmins's opinion must be excluded as an improper legal conclusion, focusing myopically on his review of the ▮▮▮▮▮▮▮ document to the exclusion of all the other evidence in the chain that Mr. Timmins analyzed.  However, Mr. Timmins's opinion that Tyto's corporate documents are the beginning of a trail that ends at Levandowski's feet is not an improper legal conclusion, but instead constitutes a fact-based opinion that will assist the jury in navigating an otherwise confusing subject matter at trial.  *See Krys v. Aaron*, 112 F. Supp. 3d 181, 192–93 (D.N.J. 2015) ("Indeed, if a witness (especially an expert) provides a solid foundation and explanation on an issue for which the factfinder needs assistance, the factfinder might be left hanging if the witness cannot cap off the testimony with a conclusion about the ultimate issue to which the expert is testifying.") (internal quotation and citation omitted).  Federal Rule of Evidence 704(a) provides that expert testimony that is "otherwise admissible is not objectionable because it

embraces an ultimate issue to be decided by the trier of fact." Indeed, as Uber's own cited case on this point recognizes "[i]t is well-established . . . that expert testimony concerning an ultimate issue is not *per se* improper." *Elsayed Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053 n.10, 1066 (9th Cir. 2002) (citing *Shad,* 799 F.2d at 529); *see also Keytrack, Inc. v. Key Register, LLC*, No. C 03-00870 WHA, 2004 WL 2944043, at *2 (N.D. Cal. Mar. 30, 2004) (Alsup, J.) ("[E]xpert testimony concerning an ultimate issue is not *per se* improper under Rule 704(a).").

The opinion that the center of the Tyto Russian-nesting-doll ownership structure is Levandowski is a proper factual conclusion drawn from examining complex financial records and corporate relationships. *Tindall v. H & S Homes, LLC*, No. 5:10-CV-044 CAR, 2012 WL 3242128, at *6 (M.D. Ga. Aug. 7, 2012) ("Thus, insofar as Mr. Taylor's testimony is grounded only in fact, the Court finds that he is qualified to offer testify about Defendants' corporate structure and finances and that this testimony may be helpful to the jury. Mr. Taylor is, undisputedly, an expert in accounting and finance, and the complex corporate transactions and relationships involved in this case are likely beyond the understanding of the average lay person. At the very least, Mr. Taylor's testimony may assist the jurors in comprehending the financial data and business records in evidence.") (internal citation omitted). Despite Uber's assertions, Mr. Timmins is not offering the same opinion that was excluded in *Cohen*, in which the Court found that it was "difficult to describe [the expert report] as doing anything other than interpreting New York trust law" and "applying principles of New York trust law to the specific trusts at issue in this case."[4] *United States v. Cohen*, No. 08-3282, 2012 WL 289769, at *3 (C.D. Ill. Jan. 31, 2012). Contrary to the expert in *Cohen*, here Mr. Timmins's opinion is based on the documents in question, and an application of his extensive business experience to the same. *Cohen* is therefore inapposite.

---

[4] Uber's citation to *Horner v. Youghiogheny Commc'ns, L.L.C.*, No. CV 05-3800-PHX-NVW, 2006 WL 1328803, at *4 (D. Ariz. May 12, 2006) is also inapposite. In *Horner*, the Court found that a fact witness's affidavit in response to a motion to dismiss concerning whether the individual defendant "maintains sole control" over the corporate defendants because there was nothing factually specific in the plaintiff's affidavit. It contained no analysis about the propriety of an expert opinion at trial.

Moreover, absent from Uber's Motion is any challenge to the merits of the actual opinion provided by Mr. Timmins that Mr. Levandowski controls Tyto's assets and disposition. This is because Uber does not actually dispute the conclusion. Indeed, once Waymo independently confirmed that Mr. Levandowski was Tyto's owner, Uber switched gears and tried to use these facts as a basis to obtain adverse inferences **for Uber** at Mr. Levandowski's August 22 deposition. (*See*, *e.g.*, McCauley Dec. Ex. 9 at 251:24-254:24.) That the witness most knowledgeable about the entire ownership chain is pleading the Fifth Amendment makes Uber's motivations clear—Uber is trying to shield a coherent analysis of the Levandowski-Tyto ownership chain to the jury. This is not a proper basis for a challenge to an expert's opinion and Uber's Motion should be denied. However, should the Court determine that Mr. Timmins cannot testify to this issue, given that Uber does not dispute the ultimate conclusion Waymo requests that the Court instruct the jury that Mr. Levandowski set up a series of trusts and shell companies in 2012 to hide his ownership interests in Tyto.

## CONCLUSION

For the foregoing reasons, the Court should deny Uber and Ottomotto's motion to exclude under Rule 702 and *Daubert* the opinion of Jim Timmins concerning the ownership and control of Tyto. In the alternative, given that the parties do not dispute the underlying facts and the conclusion arising therefrom, Waymo requests that the Court instruct the jury that Mr. Levandowski, through the operation of a series of shell companies and trusts, owned and controlled Tyto.

DATED: September 16, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
　　Charles K. Verhoeven
　　Attorneys for WAYMO LLC