# Exhibit 7

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3               SAN FRANCISCO DIVISION
 4   _____
 5   WAYMO LLC,                           )
 6                                        )
              Plaintiff,                  )
 7      vs.                               )   Case No.
                                          )   17-cv-00939-WHA
 8   UBER TECHNOLOGIES, INC.;             )
     OTTOMOTTO, LLC; OTTO TRUCKING LLC,   )
 9                                        )
              Defendants.                 )
10   _____)
11
12
13      HIGHLY CONFIDENTIAL--OUTSIDE COUNSEL'S EYES ONLY
14
15               VIDEOTAPED  DEPOSITION of
16                  ADAM BENTLEY, ESQ.
17               San Francisco, California
18              Tuesday, August 22, 2017
19                       Volume I
20
21
22   Reported by:
     MARY J. GOFF
23   CSR No. 13427
24   Job No. 2684904C
25   PAGES 1 - 85
```

Page 1

| | | |
|---|---|---|
| 1 | to this decoder ring or -- I don't know how to | 04:56:08 |
| 2 | describe it. | 04:56:15 |
| 3 |     A    Yeah, to the key. | 04:56:15 |
| 4 |     Q    The key, right. Okay. And this key was | 04:56:16 |
| 5 | not provided to Uber at -- along with the | 04:56:20 |
| 6 | disclosures, right, at -- on April 4 -- 11, 2016? | 04:56:23 |
| 7 |     A    That's correct. | 04:56:27 |
| 8 |     MR. JUDAH: Let's take a break. | 04:56:32 |
| 9 |     THE VIDEOGRAPHER: The time is 4:57 p.m. | 04:56:34 |
| 10 | We are off the record. | 04:56:35 |
| 11 |     (A break was taken from 4:57 p.m. to | 04:56:36 |
| 12 | 5:02 p.m.) | 04:56:39 |
| 13 |     THE VIDEOGRAPHER: The time is 5:02 p.m. | 05:02:07 |
| 14 | We're back on the record. | 05:02:09 |
| 15 |     Q    (BY MR. JUDAH) Mr. Bentley, you were | 05:02:16 |
| 16 | involved in negotiations between Ottomotto and Tyto, | 05:02:18 |
| 17 | right? | 05:02:27 |
| 18 |     A    Correct. | 05:02:29 |
| 19 |     Q    Were you involved in those negotiations as | 05:02:30 |
| 20 | a -- as an Ottomotto employee? | 05:02:34 |
| 21 |     A    Yes. | 05:02:38 |
| 22 |     Q    Were you also involved in those | 05:02:40 |
| 23 | negotiations when you were at O'Melveny? | 05:02:42 |
| 24 |     A    When I was at O'Melveny is when the | 05:02:44 |
| 25 | Disclosure Schedule was finalized. The Disclosure | 05:02:49 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | Schedule? | 05:07:38 |
| 2 |     Q   (BY MR. JUDAH) Well, I -- I mean, | 05:07:38 |
| 3 | ultimately my question is: Other than in connection | 05:07:40 |
| 4 | with the Disclosure Schedule and the Uber and | 05:07:43 |
| 5 | Ottomotto negotiations, did you have any involvement | 05:07:47 |
| 6 | prior to becoming an Ottomotto employee in the | 05:07:50 |
| 7 | direct negotiations between Ottomotto and Tyto? | 05:07:54 |
| 8 |     MS. EWINS: Objection, form. | 05:07:58 |
| 9 |     A   No, I did not have any involvement in | 05:08:03 |
| 10 | Ottomotto's discussions with Tyto prior to my | 05:08:06 |
| 11 | becoming an Ottomotto employee. | 05:08:09 |
| 12 |     Q   (BY MR. JUDAH) So -- so you had seen | 05:08:12 |
| 13 | reference to it in connection with the negotiations | 05:08:16 |
| 14 | between Ottomotto and Uber, but you had not talked | 05:08:18 |
| 15 | to anyone from Tyto, for example? | 05:08:23 |
| 16 |     A   Correct. | 05:08:26 |
| 17 |     Q   So focusing now on the time that you had | 05:08:26 |
| 18 | become an Ottomotto employee, what was the first | 05:08:30 |
| 19 | conversation or communication of any kind you had | 05:08:34 |
| 20 | with anyone from Tyto? | 05:08:38 |
| 21 |     A   I recall that in the first week that I was | 05:08:43 |
| 22 | an Ottomotto employee, I had e-mail and telephone | 05:08:46 |
| 23 | correspondence with Tyto regarding the negotiation | 05:08:51 |
| 24 | of the Asset Purchase Agreement. | 05:08:55 |
| 25 |     Q   All right. What do you remember about | 05:08:59 |

Page 40

YELLOW = CONFIDENTIAL

| | | |
|---|---|---|
| 1 | those communications? | 05:09:00 |
| 2 | A    I remember we were beginning the | 05:09:04 |
| 3 | negotiation of the deal and during that first week, | 05:09:09 |
| 4 | negotiating the terms of the Asset Purchase | 05:09:12 |
| 5 | Agreement. | 05:09:14 |
| 6 | Q    What was your understanding of the state | 05:09:17 |
| 7 | of the negotiations prior to the time you got | 05:09:19 |
| 8 | involved? | 05:09:23 |
| 9 | MR. TAKASHIMA:  Objection to the form. | 05:09:25 |
| 10 | I'm going to caution the witness not to divulge | 05:09:26 |
| 11 | anything you learned from privileged communications. | 05:09:29 |
| 12 | A    Without divulging privileged | 05:09:41 |
| 13 | communications, I was generally aware, as was Uber | 05:09:44 |
| 14 | as indicated here, that there was -- had been some | 05:09:47 |
| 15 | degree of discussion between the principals of | 05:09:50 |
| 16 | Ottomotto and Tyto. | 05:09:55 |
| 17 | Q    (BY MR. JUDAH) Who was the principal of | 05:09:56 |
| 18 | Tyto? | 05:09:58 |
| 19 | A    The main business contact who was | 05:10:03 |
| 20 | responsible for negotiating the deal for Tyto was | 05:10:05 |
| 21 | Ognen. | 05:10:10 |
| 22 | Q    Ognen Stojanovski? | 05:10:12 |
| 23 | A    Stojanovski. | 05:10:14 |
| 24 | Q    Do you know of anyone else who was | 05:10:15 |
| 25 | negotiating on the Tyto side of that -- of that | 05:10:17 |

YELLOW  =  CONFIDENTIAL

| | | |
|---|---|---|
| 1 | deal? | 05:10:20 |
| 2 |     A   No. | 05:10:22 |
| 3 |     Q   You never spoke to anyone else from Tyto | 05:10:24 |
| 4 | in connection with those negotiations? | 05:10:27 |
| 5 |     A   No.  I only recall speaking with Ognen in | 05:10:30 |
| 6 | connection with the Tyto transaction. | 05:10:33 |
| 7 |     Q   Prior to speaking with Mr. Stojanovski in | 05:10:35 |
| 8 | connection with the Tyto acquisition, had you ever | 05:10:39 |
| 9 | met Mr. Stojanovski before? | 05:10:42 |
| 10 |     A   No.  The first time I met him was through | 05:10:46 |
| 11 | the -- you know, doing -- discussing and negotiating | 05:10:50 |
| 12 | the transaction. | 05:10:52 |
| 13 |     Q   So that first week you were at Ottomotto | 05:10:54 |
| 14 | when you began participating in the negotiations | 05:10:58 |
| 15 | across the table with Tyto, did -- did you -- were | 05:11:01 |
| 16 | those e-mails?  Were they phone calls?  Were they | 05:11:06 |
| 17 | in-person meetings or were they some combination of | 05:11:09 |
| 18 | those? | 05:11:12 |
| 19 |         MR. TAKASHIMA:  Objection to form. | 05:11:13 |
| 20 |     A   I recall in the first week I was at | 05:11:14 |
| 21 | Ottomotto, I had e-mails and phone calls with Ognen | 05:11:17 |
| 22 | regarding the negotiation of the deal. | 05:11:21 |
| 23 |     Q   (BY MR. JUDAH) During that week of those | 05:11:24 |
| 24 | communications, what do you remember Mr. Stojanovski | 05:11:27 |
| 25 | telling you about the state of the negotiations up | 05:11:29 |

Page 42

YELLOW = CONFIDENTIAL

| | | |
|---|---|---|
| 1 | to that point? | 05:11:34 |
| 2 | A    I don't recall any discussions like that | 05:11:40 |
| 3 | since we were negotiating the terms of a specific | 05:11:41 |
| 4 | Asset Purchase Agreement, which I provided the first | 05:11:45 |
| 5 | draft of to him. | 05:11:47 |
| 6 | Q    So you provided the first draft to | 05:11:50 |
| 7 | Mr. Stojanovski of an actual Asset Purchase | 05:11:52 |
| 8 | Agreement? | 05:11:53 |
| 9 | A    Yes. | 05:11:54 |
| 10 | Q    Did you prepare that from scratch or was | 05:11:57 |
| 11 | there some existing work product that you -- you | 05:12:00 |
| 12 | worked off of? | 05:12:03 |
| 13 | A    Right.  So I used a precedent Asset | 05:12:05 |
| 14 | Purchase Agreement, as you would typically do in | 05:12:07 |
| 15 | corporate practice as opposed to starting from | 05:12:10 |
| 16 | scratch, of course. | 05:12:12 |
| 17 | And I tailored that document to the | 05:12:13 |
| 18 | specifics of the transaction, as I understood it. | 05:12:18 |
| 19 | Q    And your understanding of the specifics of | 05:12:22 |
| 20 | the transaction came from people at Ottomotto at | 05:12:24 |
| 21 | that time? | 05:12:27 |
| 22 | A    And from some of the discussions I was | 05:12:30 |
| 23 | part of when I was an O'Melveny attorney that were | 05:12:32 |
| 24 | across the table with Uber, including the fact | 05:12:37 |
| 25 | reflected in the Disclosure Schedule that the | 05:12:40 |

| | | |
|---|---|---|
| 1 | extent other members of Tyto or e-mails they have | 05:23:28 |
| 2 | sent to suppliers or customers could possibly be of | 05:23:31 |
| 3 | no use them once they have started working for | 05:23:36 |
| 4 | Ottomotto? | 05:23:40 |
| 5 |     MS. EWINS: Objection to form. | 05:23:41 |
| 6 |     MR. TAKASHIMA: Objection, form. | 05:23:41 |
| 7 |   A  I -- I did not have and do not have any | 05:23:43 |
| 8 | knowledge to whether or not they would be useful. | 05:23:45 |
| 9 |   Q  (BY MR. JUDAH) Did -- did Ognen | 05:23:49 |
| 10 | Stojanovski ever tell you that the owners of Tyto | 05:23:50 |
| 11 | wanted to exclude e-mail accounts and e-mail | 05:23:56 |
| 12 | archives in order to -- to destroy evidence of who | 05:24:00 |
| 13 | actually was the owner of Tyto LiDAR? | 05:24:05 |
| 14 |     MR. SCHUMAN: Objection as to form. | 05:24:08 |
| 15 |   A  So as I already said, I don't recall any | 05:24:11 |
| 16 | discussions on the e-mail account or e-mail archives | 05:24:14 |
| 17 | point. | 05:24:18 |
| 18 |   Q  (BY MR. JUDAH) So the answer to my | 05:24:18 |
| 19 | question is no, you don't remember? | 05:24:20 |
| 20 |   A  I don't remember any discussions regarding | 05:24:22 |
| 21 | the Tyto e-mails. | 05:24:24 |
| 22 |   Q  Do you know who the owner of Tyto LiDAR | 05:24:28 |
| 23 | was at that time? | 05:24:30 |
| 24 |     MR. TAKASHIMA: Objection, form. | 05:24:34 |
| 25 |   A  During the course of working on the | 05:24:42 |

Veritext Legal Solutions
866 299-5127

**YELLOW = CONFIDENTIAL**

| | | |
|---|---|---|
| 1 | transaction between Ottomotto and Tyto, Tyto | 05:24:45 |
| 2 | indicated that it was owned by Sandstone. | 05:24:50 |
| 3 |     Q    (BY MR. JUDAH) That's Sandstone | 05:25:02 |
| 4 | Group, LLC, right? | 05:25:02 |
| 5 |     A    That sounds right, but I don't recall the | 05:25:09 |
| 6 | full legal name. | 05:25:10 |
| 7 |     Q    I would like to mark as Exhibit 767, a | 05:25:14 |
| 8 | document bearing Bates stamp UBER0047857. | 05:25:42 |
| 9 | (Exhibit 767 was marked for identification | 05:25:49 |
| 10 | and is attached to the transcript.) | 05:25:49 |
| 11 |     Q    (BY MR. JUDAH) Mr. Bentley, do you | 05:25:49 |
| 12 | recognize this -- this document, Exhibit 767? | 05:26:12 |
| 13 |     A    Yes. | 05:26:18 |
| 14 |     Q    This is the "Operating Agreement of Tyto | 05:26:19 |
| 15 | LiDAR LLC"? | 05:26:22 |
| 16 |     A    Yes. | 05:26:24 |
| 17 |     Q    And it says that the -- the sole member of | 05:26:26 |
| 18 | Tyto LiDAR LLC is something called the Sandstone | 05:26:33 |
| 19 | Group, LLC? | 05:26:35 |
| 20 |     A    Yes. | 05:26:37 |
| 21 |     Q    And that's effectively the owner of Tyto | 05:26:37 |
| 22 | LiDAR LLC? | 05:26:42 |
| 23 |     A    Yes. | 05:26:43 |
| 24 |     Q    Has anyone ever told you that Anthony | 05:26:45 |
| 25 | Levandowksi owns the Sandstone Group? | 05:26:47 |

Veritext Legal Solutions
866 299-5127

YELLOW = CONFIDENTIAL

| | | |
|---|---|---|
| 1 | MR. SCHUMAN: Objection as to form. | 05:26:53 |
| 2 | MR. TAKASHIMA: I join in the objection. | 05:26:55 |
| 3 | And I'm going to caution the witness not to divulge | 05:26:56 |
| 4 | any privileged communications. | 05:26:59 |
| 5 | A   No. | 05:27:02 |
| 6 | Q   (BY MR. JUDAH) Has anyone ever told you | 05:27:02 |
| 7 | that Anthony Levandowksi controlled the Sandstone | 05:27:04 |
| 8 | Group? | 05:27:06 |
| 9 | MR. SCHUMAN: Same objection. | 05:27:07 |
| 10 | MR. TAKASHIMA: Same objection. And | 05:27:08 |
| 11 | again, same caution. | 05:27:08 |
| 12 | A   No. | 05:27:10 |
| 13 | Q   (BY MR. JUDAH) Did you ever ask Anthony | 05:27:10 |
| 14 | Levandowksi if he has any involvement in the | 05:27:11 |
| 15 | Sandstone Group? | 05:27:14 |
| 16 | MR. TAKASHIMA: One second. If you can | 05:27:18 |
| 17 | answer that without divulging any privileged | 05:27:21 |
| 18 | communications, you can. | 05:27:25 |
| 19 | A   No. | 05:27:28 |
| 20 | Q   (BY MR. JUDAH) Do you know who owns the | 05:27:29 |
| 21 | Sandstone Group? | 05:27:32 |
| 22 | MR. TAKASHIMA: You can answer -- | 05:27:35 |
| 23 | objection to the extent it calls for privileged | 05:27:35 |
| 24 | information or privileged communications, unless you | 05:27:40 |
| 25 | can answer that question "Yes" or "No." | 05:27:43 |

Page 53

YELLOW = CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A    No. | 05:27:45 |
| 2 | Q    (BY MR. JUDAH) Are you signed on with the | 05:27:45 |
| 3 | Protective Order in this case? | 05:27:46 |
| 4 | A    I don't believe I have signed a Protective | 05:27:50 |
| 5 | Order. | 05:27:52 |
| | ███████████████████████████████████████ | |
| | ███████████████████████████████████████ | |
| | █ ████████████████████████████     █████ | |
| 9 | MR. TAKASHIMA:  Why don't we go off the | 05:28:07 |
| 10 | record for a moment. | 05:28:08 |
| 11 | MR. JUDAH:  Okay. | 05:28:10 |
| 12 | MS. EWINS:  Yeah. | 05:28:11 |
| 13 | THE VIDEOGRAPHER:  The time is 5:28 p.m. | 05:28:12 |
| 14 | We're off the record. | 05:28:13 |
| 15 | (A break was taken from 5:28 p.m. to | 05:28:14 |
| 16 | 5:36 p.m.) | 05:28:17 |
| 17 | THE VIDEOGRAPHER:  Okay.  The time is now | 05:28:21 |
| 18 | 5:36 p.m.  We are back on the record. | 05:35:40 |
| 19 | Q    (BY MR. JUDAH) So I would like to mark as | 05:35:42 |
| 20 | Exhibit 768, Mr. Bentley's signed undertaking | 05:35:44 |
| 21 | pursuant to the Protective Order. | 05:35:52 |
| 22 | (Exhibit 768 was marked for identification | 05:35:55 |
| 23 | and is attached to the transcript.) | 05:35:55 |
| 24 | Q    (BY MR. JUDAH) And now pursuant to | 05:35:56 |
| 25 | Section 7.2, which provides that for the Disclosure | 05:35:57 |

Page 54

| | | |
|---|---|---|
| 1 | of confidential -- well, actually, let me give | 05:36:01 |
| 2 | everyone a copy of this. | 05:36:03 |
| 3 | So pursuant to Section 7.2, which provides | 05:36:28 |
| 4 | that -- for the "Disclosure of Confidential | 05:36:34 |
| 5 | Information or Items, in 7.2(f), During their | 05:36:37 |
| 6 | depositions, witnesses in the action to whom | 05:36:42 |
| 7 | disclosure is reasonably necessary and who have | 05:36:44 |
| 8 | signed the Acknowledgment and Agreement to be Bound | 05:36:46 |
| 9 | (Exhibit A), unless otherwise agreed by the | 05:36:49 |
| 10 | designating party or order by the court. | 05:36:52 |
| 11 | So I'm going to designate the portion that | 05:36:57 |
| 12 | addresses this as "Confidential Sandstone Group | 05:36:59 |
| 13 | information." | 05:37:03 |
| 14 | And, Mr. Bentley, you can confirm that you | 05:37:03 |
| 15 | have signed the undertaking of the Protective Order? | 05:37:05 |
| 16 | A    I confirm I have. | 05:37:09 |
| 17 | Q    So I'm going to introduce as Exhibit 769, | 05:37:11 |
| 18 | a document bearing Bates stone -- Bates | 05:37:19 |
| 19 | No. SANDSTONE000001. | 05:37:23 |
| 20 | (Exhibit 769 was marked for identification | 05:37:36 |
| 21 | and is attached to the transcript.) | 05:37:36 |
| 22 | Q    (BY MR. JUDAH) Mr. Bentley, I'll ask if | 05:37:37 |
| 23 | you have ever seen this document before.  So take a | 05:37:39 |
| 24 | moment to look at it. | 05:37:43 |
| 25 | A    No, I have not seen this document before. | 05:38:15 |

Veritext Legal Solutions
866 299-5127

|    |   |   |   |
|----|---|---|---|
| 1  | Q | [REDACTED] | [REDACTED] |
| 2  |   | [REDACTED] | [REDACTED] |
| 3  |   | [REDACTED] | [REDACTED] |
| 4  |   | [REDACTED] | [REDACTED] |
| 5  |   | [REDACTED] | [REDACTED] |
| 6  |   | [REDACTED] | [REDACTED] |
| 7  |   | [REDACTED] | [REDACTED] |
| 8  |   | [REDACTED] | [REDACTED] |
| 9  | A | Yes. | 05:38:40 |
| 10 | Q | Do you know who John Gardner is? | 05:38:40 |
| 11 | A | Yes. | 05:38:42 |
| 12 | Q | I think I asked you about him for, right? | 05:38:43 |
| 13 | A | Yes. | 05:38:46 |
| 14 | Q | You -- you're aware that among other | 05:38:46 |
| 15 |   | clients, he -- he has represented Anthony | 05:38:49 |
| 16 |   | Levandowksi? | 05:38:53 |
| 17 | A | Yes. | 05:38:53 |
| 18 | Q | And he represented Anthony Levandowksi in | 05:38:53 |
| 19 |   | connection with the Stroz investigation, right? | 05:38:55 |
| 20 |   | MR. TAKASHIMA:  Objection to the extent | 05:39:01 |
| 21 |   | that it calls for privileged information.  I'm going | 05:39:02 |
| 22 |   | to -- you can answer the question yes or no. | 05:39:06 |
| 23 | A | Yes. | 05:39:11 |
| 24 | Q | (BY MR. JUDAH) So directing your attention | 05:39:13 |
| 25 |   | to -- let me ask you:  Have -- have you ever filed | 05:39:14 |

Page 56

| | | |
|---|---|---|
| 1 | one of these LLC Articles of Incorporation -- | 05:39:18 |
| 2 | Articles -- Articles of Organization before? | 05:39:19 |
| 3 | A    I haven't personally.  But I'm aware of | 05:39:24 |
| 4 | this, and I have worked with others who have made | 05:39:25 |
| 5 | such filings. | 05:39:30 |
| 8 | A    Um-hum. | 05:39:40 |
| 11 | Do you see that? | 05:39:45 |
| 12 | A    Yes. | 05:39:46 |
| 19 | Do you see that? | 05:40:07 |
| 20 | A    Yes. | 05:40:07 |
| 24 | A    Yes. | 05:40:25 |

Page 57



```
 4            Do you see that?                     05:40:49
 5      A     Yes.                                 05:40:49
 8      A     No.                                  05:40:54
11      A     No.                                  05:40:56
14      A     No.                                  05:41:03
21            Do you see that?                     05:41:23
22      A     Yes.                                 05:41:23
25      A     I do not.                            05:41:29
```

Page 58

|   |   |   |
|---|---|---|
| 1 | ▮  ▮ ████████████████████████████ | ██████ |
| 2 | ▮  ██████████████████ | ██████ |
| 3 | A  No. | 05:41:41 |
| 4 | ▮  ▮ ████████████████████████████ | ██████ |
| 5 | ▮  ███████████████████ | ██████ |
| 6 | A  Correct. | 05:41:51 |
| 7 | Q  Did you ever have a conversation with | 05:41:53 |
| 8 | Anthony Levandowksi about this Tyto Asset Purchase | 05:41:54 |
| 9 | Agreement? | 05:41:57 |
| 10 |         MS. EWINS:  Objection. | 05:42:01 |
| 11 |         MR. SCHUMAN:  I'm going to object to the | 05:42:03 |
| 12 | extent it calls for attorney/client privileged | 05:42:03 |
| 13 | communications.  If you can answer without revealing | 05:42:04 |
| 14 | privileged communications, you can do so. | 05:42:07 |
| 15 | A  Yes. | 05:42:10 |
| 16 | Q  (BY MR. JUDAH) What do you remember about | 05:42:15 |
| 17 | those conversations? | 05:42:16 |
| 18 |         MR. SCHUMAN:  Same objection and same | 05:42:18 |
| 19 | instruction. | 05:42:20 |
| 20 | A  So the content of those discussions would | 05:42:23 |
| 21 | be attorney/client privileged. | 05:42:34 |
| 22 | Q  (BY MR. JUDAH) How many different | 05:42:37 |
| 23 | conversations or communications -- let me ask this: | 05:42:38 |
| 24 | How many different communications have you had with | 05:42:39 |
| 25 | Anthony Levandowksi on the subject of Tyto? | 05:42:42 |