September 24, 2017

**VIA ECF**

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Plaintiff Waymo LLC ("Waymo") hereby submits this letter brief in support of Waymo's motion to compel the immediate production for inspection of (i) images of the devices and repositories that were provided by the Diligenced Employees and analyzed by Stroz Friedberg ("Stroz") in connection with its preparation of the Stroz Report, and (ii) all other materials provided by the Diligenced Employees to Stroz, including on any devices that have not yet been imaged, processed, or reviewed by Stroz.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

Waymo is entitled to review all of the native data provided by the Diligenced Employees to Stroz – both the materials previously reviewed by Stroz and the materials that Stroz elected not to review – because this data is not accessible through any other means. Regarding any privilege or privacy interests of the Diligenced Employees, Waymo has proposed a protocol that adequately protects these concerns while balancing the temporal exigencies of the case schedule. With trial scheduled to begin in just over two weeks, that time is of the essence is an understatement. Under its protocol, Waymo should be provided with access to these materials immediately.

I.    **Waymo Should Be Permitted To Access These Native Materials Immediately**

The Federal Circuit has now affirmed this Court's decision compelling production of materials responsive to the Stroz subpoena, including the communications, documents, and devices provided by the Diligenced Employees to Stroz. (*See* Dkt. 570-1 [Subpoena], Request Nos. 9, 13, 30, and 31; Dkt. 670 [Order Granting Motion to Compel], at 9-10.) To date, however, Waymo has been denied access to the native versions of any of these devices, despite the urgency of an October 10 trial date (which is less than three weeks away). Waymo therefore finds itself, through no fault of its own, in the position of needing to review literally millions of files in a matter of days – including, potentially, terabytes worth of data on devices provided by Anthony Levandowski to Stroz that was intentionally excluded from Stroz's due diligence analysis, as well as source code and other files that Waymo cannot access on the Relativity platform that Waymo has been reviewing to date. Under these circumstances, Waymo is entitled to inspect the content of the forensic images of all devices provided to Stroz – both those analyzed and unanalyzed during the diligence period – immediately.

As just one example of the need for a forensic examination of the images of the devices maintained by Stroz, there is no dispute that Mr. Levandowski's download of 14,000 files from Waymo's SVN server on December 11, 2015 is a critical issue in this case. The Stroz Report discusses  on one of Mr. Levandowski's *personal* devices. (Dkt. 1603-5 [Stroz Report], at 12.) Uber and Ottomotto even affirmatively assert that (Dkt. 1623-4 [Uber Opp. Br.], at 4:21-24.) Thus, how these files got onto Mr. Levandowski's personal computer and where they were transferred to is a critical issue in the case. The same is true for the trove of other Waymo confidential materials Stroz uncovered. (*See, e.g.*, Dkt. 1603-4 [Waymo Br.], at 2:17-3:5, 9:17-10:5.) The issue was discussed at the September 20 hearing before the Court and even Defendants' counsel acknowledged these were open questions. (*See* Dkt. 1723 [Sept. 20, 2017 Hrg. Tr.], at 29:1-13 ("THE COURT: … [I]t sounds like a jury could say he -- could accept the Waymo view that this was all sinister and maybe accept your view that it was all a monumental accident; that somehow it got onto his personal computer, somehow it got onto his company computer; and he was stamping out fires left and right trying to delete everything. I don't know. That doesn't seem too plausible to me, but maybe a jury would buy it. And remember, he's taking the Fifth Amendment. MR. GONZÁLEZ: Sure. THE COURT: If this was so innocent, how come he didn't come in here and tell us?").) While Waymo will not be able to do a complete examination of these images before trial even if compelled now, the Court has directed the parties to do whatever is possible in the time remaining.

*First*, Waymo is entitled to review forensic images of devices from the Diligenced Employees that Stroz loaded into Relativity in connection with Stroz's (rushed and truncated) due diligence analysis. Access to these materials is necessary because, as Stroz has previously acknowledged, "not all files were loaded

into the [Relativity] database or would be available for review" in Relativity.  (Ex. 1 [8/15/2017 M. Blunschi Email], at 5.)  For example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Dkt. 1603-5 [Stroz Report], at 5) are inaccessible and **cannot be reviewed at all** by Waymo through the Relativity platform.  (*See* Ex. 1 [8/22/2017 M. Blunschi Email], at 2.)  These source code files are critical to Waymo's continued investigation, because they represent an area of potential trade secret theft.  Indeed, the Stroz Report makes clear that given ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Dkt. 1603-5 [Stroz Report], at 17.)  And, it is clear from the Stroz Report ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See, e.g., id.* at 16.)  Waymo and its experts require immediate access to these source code files so that they can compare the source code to that used by Defendants to assess the extent of potential misappropriation.

The Relativity database is also unable to handle video files on the underlying media, and "to the extent that the parties are interested in videos, pictures, or other documents that cannot have text extracted, search functionality [is] limited…."  (*Id.*; *see also* Dkt. 1603-5 [Stroz Report], at 6 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Waymo is entitled to review these files, and to inspect the native forensic images to independently verify that the materials on the Relativity database are – other than the known excluded file types, such as source code – complete.[1]

*Second*, Waymo is entitled to analyze forensic images of the materials that "were not imaged, processed, or reviewed by anyone at Stroz."  (Ex. 1 [8/23/2017 M. Blunschi Email], at 1.)  Waymo understands this cache to include materials on at least one hundred hard drives, all of which came from Mr. Levandowski.  No party to this dispute has reviewed or analyzed any of these drives' contents to date, and none of the user-generated data has been available to Waymo on Stroz's Relativity database.  Consequently, as Stroz has previously acknowledged, the only way for Waymo to review this material is to access it on the devices directly.  (*See id.* ("there are no forensic images to load, and these materials are not in any Relativity database, but the original devices could theoretically be made available for review if the Federal Circuit affirms").)  Waymo is entitled to access to the devices sufficient to permit its own digital forensic consultant to perform forensic imaging of each device.

Waymo has moved the Court to continue the trial date.  (*See* Dkt. 1604.)  Until that motion is decided, the Court has instructed the parties "to try hard to keep the October 10th date and do whatever you have got to do to get the discovery done."  (*See* Dkt. 1723 [Sept. 20, 2017 Hrg. Tr.], at 69:4-6.)  Because Waymo needs to inspect these materials, and because Waymo needs to complete that inspection as quickly as possible, these forensic images should be made available to Waymo immediately.

The Court has earlier suggested a staggered approach, whereby Waymo begins with the Relativity database and only then move onto the native images.  However, given the severely expedited time frame, the enormous volume of the Relativity data (which includes more than 1.5 million files), and Waymo's inability to review at least hundreds of thousands – and potentially millions – of these files through any other means, sequencing this discovery is not a practical option.  Quite simply, time is running out and

---

[1] Relatedly, Waymo is entitled to the forensic imaging tracking details created at the time Stroz's forensic images were created, and listing, for example, the custodian associated with the device or account, the type of device or account, the method used to perform the imaging, any validation hash values generated, and the date, time, and place of the imaging.

Waymo needs immediate access to the contents of the native files provided by the Diligenced Employees to Stroz.

## II. Waymo's Proposed Review Protocol Adequately Addresses Any Privacy Or Privilege Concerns

Waymo has proposed a protocol for content review of the native files that is more than sufficient to protect any potential privacy or privilege interests of the Diligenced Employees.[2] Specifically, Waymo has proposed that it provide all interested parties, including counsel for the Diligenced Employees, with reasonable notice of its content inspections of native versions of their client's devices, taking into account good faith black-out dates provided in advance. All interested parties will then be invited to attend the inspections and monitor the content being accessed. If any content is accessed that the Diligenced Employees' counsel believe implicates privilege or privacy concerns, counsel will direct the reviewer away from that content, and the reviewer will not access that content any further pending the resolution of disputes (if any) with the Special Master. (*See* Ex. 3 (9/22/2017 J. Judah Email).)

As Waymo has stated before, it has no interest in the Diligenced Employees' private or irrelevant documents. But, as Stroz has recognized, there is no practical way to screen out private or privileged materials from the native images. (*See*, *e.g.*, Dkt. 1414 [Aug. 28, 2017 Hrg. Tr.], at 63:18-21.) The protocol proposed by Waymo provides the most efficient and practical means of conducting the necessary content review of the large volume native files (including source code, videos and images) in the short time frame available. Waymo's proposal therefore provides for real-time inspection and review of documents in preparation for upcoming depositions and trial, while still providing the Diligenced Employees an opportunity to protect any legitimate privacy or privilege interests.

For the foregoing reasons, Waymo respectfully requests that the Court grant its motion for access to the forensic images of all of the Diligenced Employees' devices at Stroz pursuant to the terms of Waymo's proposed protocol.

Respectfully,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven

cc:   All counsel of record; Special Master John Cooper

---

[2]   Waymo is sensitive to the Diligenced Employees concerns, despite the fact that they voluntarily handed over all of this information to a third party (Stroz) last year when doing so was in their financial interests. As explained in Waymo's September 21 letter to the Court (Dkt. 1747-3), the Diligenced Employees have waived any privileges that could have attached to anything in these materials. Moreover, it appears that the Diligenced Employees have been using the privacy screening procedure to date to improperly shield relevant materials from Waymo's Relativity review, including, for example, at least 79 documents hitting on the word "LiDAR," 84 documents hitting on the word "Ottomotto," 13 documents hitting on the word "Tyto," 11 documents hitting on the word "GBR," and 28 documents hitting on the word "Chauffeur." (*See* Ex. 2 (9/23/2017 W. Weber Email).)