September 24, 2017

**VIA ECF**

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc., et al*., N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Plaintiff Waymo LLC ("Waymo") submits this brief to 1) compel the depositions of Max Levandowski, Asheem Linaval, Dan Gruver, Dan Ratner, Salle Yoo, Christian Lymn, and Andrew Glickman; 2) overrule Defendants' objections to the depositions of Eric Amdursky and Alisa Baker, and to compel those depositions to the extent those witnesses are under Defendants' control; 3) compel Uber and Ottomotto to provide a supplemental Rule 30(b)(6) designee for deposition on Waymo's Topic No. 3; and 4) grant Waymo five additional interrogatories and order Defendants to respond to all of Waymo's interrogatories (including supplementation of existing interrogatories) within seven days.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

For over five months, Defendants and their agents successfully concealed from Waymo's view thousands – if not tens of thousands – of highly relevant documents going to the core of Waymo's trade secret claims in this case.  However, even now that the Federal Circuit has decisively rejected Defendants' bogus privilege claims, Defendants continue to impede full and fair discovery into what Uber knew and when Uber knew it about the personnel and technology it was paying over half a billion dollars to acquire.  Defendants' ongoing obstruction of highly relevant discovery is particularly prejudicial to Waymo in light of the Court's instructions that, despite the massive volume of newly produced evidence (in addition to documents and materials responsive to the Federal Circuit Order that have **still** not been produced), Waymo must "try hard to keep the October 10th date and do whatever you have got to do to get the discovery done." (9/20/2017 Hrg. Tr. at 69:4-6.)  Waymo therefore brings the instant motion to compel this discovery.

## I. Defendants Must Make Ottomotto's Purported Medium-Range and Long-Range LiDAR "Inventors" Available for Deposition

As the Court has previously ruled, "Assets on the table during the Otto acquisition are relevant to Waymo's theory that Otto's price tag could not have been justified without misappropriated trade secrets in the bargain" (*see* Dkt. Nos. 682 at 5 and 971 at 2)." (Dkt. 1188.)  Key assets on the table included the medium-range and long-range laser designs that Otto disclosed to Uber as part of the diligence process.  Waymo attempted to obtain discovery on these designs, and Uber's knowledge of them, during the discovery period, but witnesses either pled ignorance, were instructed not to answer on grounds of privilege, or both. (*See*, *e.g.*, Ex. 1 [John Bares Deposition Tr.] at 366:19-374:7.)  Yet the results of that purported IP diligence review was reported to the Board by Travis Kalanick as part of the April 12 presentation that approved the deal. (*See*  Ex. 2 [UBER00109871 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮].)  It was not until just days ago that Defendants finally produced the crucial documents showing the laser concepts disclosed by Ottomotto to Uber during the diligence period.

These highly material documents reveal that, as part of the diligence process, Ottomotto was required to respond to a questionnaire entitled ▮▮▮▮▮▮▮▮▮▮▮▮▮▮" for Ottomotto's mid-range and long-range designs. (*See* Ex. 3 [UBER00323120] and 4 [UBER00323660].)  Questions on the questionnaire, which were sent to Mr. Levandowski on March 10 by Rudy Kim, included:



1

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

(Ex. 5 [OTTOTRUCKING00022712] and Ex. 6 [OTTOTRUCKING00022713].) These were obviously important questions for Uber to understand before committing to hundreds of millions of dollars towards acquisition and indemnification obligations (including for "Bad Acts") for a company that was barely two months old and founded and staffed by former Waymo employees.

The completed questionnaires – which were sent to Uber's lawyers by Mr. Gardner – raise more questions than they answer. For medium-range lasers, Mr. Levandowski provided a four page response that disclosed a product concept purportedly conceived by ██████████ ██████████████████████████████████████████████████████" (Ex. 3 [UBER00323120] at 2-3.) As Uber well knew, Anthony Levanodwski and Mr. Gruver were both Waymo employees at that time. And Asheem Linaval and Max Levandowski were both working (in varying capacities) for Tyto LiDAR in 2014[1] – which Uber has categorically denied knowing was owned and controlled by Anthony Levandowski. Moreover, Mr. Levandowski admitted to Uber in the questionnaire that "████████ ██████████████," but attempted to distinguish the prior art based on the ██████████ ██████████████████████████████████████████████████████ (*Id.* at 2-3.) The purported product concept used ██████████████████████ ██████████ (*id.* at 2) – and significantly, a LiDAR system using ██████████████████ which were not being used by the Velodyne prior art) is one of the 121 trade secrets disclosed by Waymo at the outset of this case. (*See* Dkt. 25-7 at Trade Secret No. 46 (██████████████████ ██████████████████████████████████████████"). Waymo was severely prejudiced in its ability to pursue discovery into Defendants' use of that trade secret, which was not included in Waymo's narrowing for trial, by Defendants' improper concealment of this medium-range LiDAR concept.

Similarly, the long-range laser questionnaire provided to Uber – which is just three pages long – discloses a ██████████████ purportedly invented by ██████████████████████ ██████████████████ that was first conceived in ██████████████████████ (Ex. 4 [UBER00323660].) Mr. Levandowski, Mr. Gruver, and Mr. Ratner were all Google and/or 510 Systems employees at that time. As for Max Levandowski, he was supposedly obtaining an architecture degree in Brussels in February 2010. (Ex. 7 [Max Levandowski Linkedin page] (attending the "Universite catholique" from 2009 to 2011.) Uber witnesses have admitted that in early 2016, long-range laser - unlike medium-range LiDAR that could be supplied by Velodyne – was a "██████████████████ █" (except, of course, Waymo). (Ex. 1 [John Bares Deposition Tr.] at 358:1-25.) The disclosure to Uber that Ottomotto's long-range LiDAR design was purportedly conceived in ██████████████████ ██████████████████████████████████████████ – raises questions that Waymo should have been permitted to explore during the discovery period. Instead, Defendants' "relentless concealment of

---

[1] *See* Ex. 20 [Asheem Linaval Odin Wave Secondment Agreement, dated October 24, 2012] and Ex. 21 [8/15/2017 Asheem Linaval Deposition Tr]. at 139:9-147:15 ("Q. How long did you work for Odin Wave/Tyto LiDAR? A. It's hard to pin down. Q. Why is that? A. Because there wasn't really a – a specific end date."); Dkt. 1773-8 [7/18/2017 Max Levandowski Deposition Tr.] at 71:15-20 (Q: "Going back to the timeline, you moved here in 2014. You actually did a little bit of work for Tyto LiDAR, although you didn't know the name of the company at the time. And then, after that, you started working for Nautilus; is that right? A. That is correct.").

likely probative evidence" (Dkt. 433 at 8) denied Waymo that opportunity, even for those deponents (Max Levandowski, Dan Gruver, and Asheem Linaval) that Waymo deposed, let alone for those they did not even know to depose on this subject matter (Dan Ratner).

And that relentless concealment continues. Mr. Levandowski will obviously plead the Fifth Amendment in response to any questions about these documents. There is no evidence that Waymo is aware of that Uber's lawyers ever interviewed Max Levandowski, Mr. Gruver, Mr. Ratner, or Mr. Linaval in connection with the pre-signing diligence. And Defendants are refusing to offer for deposition **any** of the witnesses who can testify about these LiDAR concepts. Waymo has even offered to limit the time of these depositions – pending further discovery and Waymo's ongoing review of the massive amount of documents that have been dumped by Defendants and their agents in the last 10 days – to two hours. (Ex. 8 [9/24/2017 J. Judah email].) Yet Defendants have stonewalled any depositions. Waymo therefore seeks an order compelling depositions of Max Levandowski, Asheem Linaval, Dan Gruver, and Dan Ratner.[2]

## II. Defendants Must Make Salle Yoo and Other In-House Attorneys Available for Deposition

Documents previously withheld by Defendants, and only produced within the past week, show that Uber's then-General Counsel Salle Yoo was heavily involved in the Stroz due diligence process.[3] For example, she joined a call with John Gardner and Cameron Poetzscher on April 10, 2016 – the day before the Put-Call Agreement was signed based on Mr. Kalanick's report to Uber's Board that the diligence process had come back ▓▓▓▓▓" (Dkt. 1548-10 at 2) – related to an oral interim report on the status of Stroz's investigation, including ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (*See, e.g.*, Ex. 9 [UBER00319786].) The day before, MoFo lawyer Eric Tate forwarded Ms. Yoo an email chain from Mr. Gardner regarding the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓, that Ms. Yoo discussed on a lengthy email chain among Uber's lawyers (that has been redacted from Waymo). (Ex. 10 [UBER00314130].) Other documents produced this week show that Ms. Yoo was a custodian for, and therefore received copies of, the diligence questionnaire (Ex. 11 [UBER00324346] and the draft Levandowski interview memorandum (Exs. 12 [UBER00324350]) – although the format in which Uber produced the documents in Production Uber 154 is missing crucial metadata indicating **when** she received those documents – metadata which has still not been provided.

---

[2] Waymo notes that the relevant knowledge of these witnesses is not limited to these diligence questionnaires. For example, documents discovered to date among the more than 1.5 million files on the Stroz Relativity database first made available just last week reveal that "ASHEEM" was an integral piece of Anthony Levandowski's web of shell companies, trusts, and investments. (Ex. 22 [Stroz_R_000002173].) Similarly, documents produced by third parties after Max Levandowski's July 19 deposition – at which he claimed never to have heard of ▓▓▓▓▓ (the Trust through which his brother Anthony owned and controlled Tyto LiDAR) – demonstrate that Max Levandowski ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Dkt. 1773-3 at 3.) Waymo expects that additional documents extracted from the materials provided by Anthony Levandowski to Stroz will uncover more evidence that Max Levandowski and other Uber employees were very aware of Anthony Levandowski's ownership and control of Tyto.

[3] Waymo notes that after withholding all of these documents for months, and only producing them off of their privilege logs within the past week, Defendants have already clawed back over a dozen of these emails relating to Ms. Yoo, and have failed to date provide any redacted replacement copies. (*See*, *e.g.*, Ex. 14 and 24.)

3

(*See*, *e.g.*, Ex. 13 [9/23/2017 Judah email]; Ex. 8 [9/24/2017 J. Judah email].) This is not surprising, given the importance of the Otto deal and Ms. Yoo's role as Uber's top lawyer.

Other documents improperly withheld by Defendants and only produced in the past few days also justify an opportunity to depose Ms. Yoo. For example, a document that was ordered produced by the Court on September 11 (Dkt. 1506), but not produced until September 22, is an email from Angela Padilla to Anthony Levandowski – cc-ing Ms. Yoo – that shows her participation in communications over Mr. Levandowski's purported non-cooperation with Uber. (Ex. 15 [UBER00324612].) In that email, Ms. Padilla wrote that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*Id.* (emphasis in original).) Mr. Levandowski apparently refused to cooperate with this request, yet remained in full control of Uber' self-driving car program (including LiDAR) for more than a week, was working with Uber's lawyers on litigation strategy for at least another two weeks (*see*, e.g., Dkt. 1501-33 [UBER00065191] (calendar invite to Mr. Levandowski and in-house and outside counsel regarding ▉▉▉▉▉▉▉▉▉▉▉▉)) and was not fired for over a month. In turn, the newly produced April 20 email sheds further light on earlier produced documents, such as the May 15 letter requesting Mr. Levandowski's cooperation with PI Compliance (Dkt. 466-2) and the May 26 letter firing Mr. Levandowski (Dkt. 519-2) – both of which were signed by Ms. Yoo herself.

As for Uber in-house lawyers Andrew Glickman and Christian Lymn, the recently produced trove of withheld Stroz-related documents include literally hundreds of emails that they sent or received, including on highly relevant issues as negotiations over ▉▉▉▉▉▉▉▉▉▉▉▉ (Ex. 16 [UBER00320737]), interim reports on Mr. Levandowski's ▉▉▉▉▉▉▉▉▉ (Ex. 17 [UBER00313654], and the negotiations over ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Ex. 18 [UBER00321884].) Waymo obviously did not know during the discovery period, when all of these documents were being withheld based on spurious privilege claims, any of the revelations contained in the Stroz Report or the logged communications involving the in-house attorneys related to the diligence process. Waymo therefore seeks these depositions now.

### III. Defendants' Objections to the Depositions of Eric Amdursky and Alisa Baker Should Be Overruled

Eric Amdursky of OMM was the lead outside counsel for Ottomotto during the diligence period, and is identified on over 1000 newly produced documents. Similarly, Alisa Baker was Lior Ron's personal counsel during the Stroz investigation and was also involved in hundreds of these previously unseen documents. Given their centrality to the Stroz diligence process – whose true significance was concealed from Waymo until after the close of fact discovery – Waymo seeks their depositions now. Defendants claim they do not control either witness (despite the fact that Alisa Baker submitted a declaration for Defendants when it suited their purposes to resist producing the Stroz Report – *see* Dkt. 375) but have nevertheless objected to their depositions. Waymo will be issuing subpoenas to Mr. Amdursky and Ms. Baker promptly, but request that the Court resolve Defendants' objections in the meantime.

### IV. Defendants Ottomotto and Uber Should Be Ordered to Produce Additional Designees on Rule 30(b)(6) Topic No. 3

Waymo's Rule 30(b)(6) Topic No. 3 asks for a corporate representative to testify about "UBER's or OTTOMOTTO'S efforts to prevent LEVANDOWSKI from using or referring to any

4

MISAPPROPRIATED MATERIALS, including but not limited to efforts to prevent LEVANDOWSKI from using personal devices to access UBER or OTTOMOTTO servers and networks." (Ex. 19 at 6.) Defendants provided a witness on this topic during the discovery period (Eric Meyhofer), but Waymo's examination was severely impeded by the concealment of the Stroz Report's findings, which demonstrate that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Waymo therefore seeks new designees who can provide corporate testimony that is not limited by Defendants' now-overruled privilege objections. (*See*, *e.g.*, Ex. 23 [8/14/2017 Eric Meyhofer Deposition Tr.] at 236:10-243:12.)

### V. Defendants Should Be Ordered to Respond to Additional Interrogatories on an Expedited Basis

In light of the uncertainty regarding the resolution of Defendants' privilege objections over the Stroz due diligence investigation at the time the deadline to serve written discovery, Waymo reserved three interrogatories until after a Federal Circuit ruling. At the time – based in part of Defendants' representations to the Court and the media of what the Stroz Report did and did not show – Waymo could not know ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Waymo therefore seeks an additional five interrogatories, for a total of eight, to obtain discovery specific to the Stroz investigation. The Court previously granted Defendants an additional 10 interrogatories, while denying Waymo's request for additional interrogatories "as it has not identified any that it needs and it is too late for it to come back and do so now." (Dkt. 1173.) Waymo hereby renews that request, although because Waymo is still reviewing the massive number of newly produced documents (as well as those that have not yet been produced, more than 10 days after the Federal Circuit Order), Waymo requires a short amount of additional time to prepare those interrogatories.

Waymo also seeks an expedited response time for any interrogatories it serves. The standard time of thirty days is obviously unworkable given the Court's instructions to prepare for an October 10 trial. Waymo therefore asks the Court to order any responses due within seven days – i.e., if Waymo served interrogatories on September 25, responses are due October 2. Waymo also asks the Court to order Defendants to supplement their existing interrogatory responses as necessary now that any privilege objections have been overruled by the Federal Circuit.

Respectfully,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
cc:   All counsel of record; Special Master John Cooper

01980-00104/9573454.1

5