JONATHAN A. PATCHEN
ATTORNEY
jpatchen@taylorpatchen.com

TAYLOR & PATCHEN, LLP

September 25, 2017

Honorable Jacqueline Scott Corley   **REDACTED VERSION OF**
United States District Court   **DOCUMENT SOUGHT TO**
Northern District of California   **BE SEALED**
450 Golden Gate Avenue
Courtroom F - 15th Floor
San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

This motion raises an issue not previously considered in this case:  whether Mr. Ron waived Otto's corporate attorney-client privilege or his own personal attorney-client privilege in certain documents by making devices containing those documents available to Stroz, an agent for Otto's counsel, in a situation where time did not permit a privilege review.  There was no waiver, for three reasons.  First, the Otto-privileged documents were not disclosed to a third party, but instead were part of a set of documents provided in confidence to an agent for Otto's counsel for the purpose of facilitating the provision of advice.  Second, the documents were made available to Stroz subject to an agreement that was the effective equivalent of a "claw back" provision designed to prevent any waiver, adverse use or disclosure with respect to them.  Finally, Ron's production privilege log was timely: it followed promptly on resolution of the issues which made it necessary, complied with the Court's order, and did not prejudice Waymo.

**I.   FACTUAL BACKGROUND**

Because the issues presented by this motion have not been previously litigated before this Court, we summarize the facts relevant to Mr. Ron.  Waymo has already gained access to some 228,000 of Mr. Ron's documents.  This motion concerns only the 617 documents that Mr. Ron has logged as privileged.  Most of those documents (approximately 533) have been withheld because they are confidential communications between employees of Otto, such as Mr. Ron, and Otto's counsel.  A smaller number (approximately 84) are being withheld on the basis of Mr. Ron's personal attorney-client privilege.

The documents at issue were among those provided by Mr. Ron to Stroz, whom this Court has already found to be Otto's agent.  *See* Dkt. 670 at 2.  Mr. Ron provided Stroz with

TAYLOR & PATCHEN, LLP

Magistrate Judge Jacqueline Scott Corley
September 25, 2017
Page 2

access to all of his digital devices due to the time constraints of the due diligence process and the impracticalities of searching through those documents before providing them. Before providing the documents, however, Mr. Ron's attorney, Alisa Baker, made clear that Stroz was being given access to all documents because, given the situation, his attorney was not ██████████████████████████████████████████████████████████ ██████████████████ Dkt. 1743-7, Waymo's Mtn., Ex. 3 (██████████████).

Mr. Ron allowed Stroz access to the documents at issue subject to the understanding and agreement that Mr. Ron was not waiving any privilege. ████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████ *See id.* A protocol was also enacted to further prevent the disclosure of any privileged material to Uber or Uber's attorneys in the event that Stroz unknowingly reviewed privileged material that it separately deemed relevant to its investigation. *See* Dkt. 824-1, Ex. A at 2–3, Ex. D at 3–4, Ex. E at 8, Ex. F at 3.

Collectively, these efforts established a process to prevent both the review of privileged documents by Stroz and the disclosure of any such documents to Uber and/or its attorneys. *See generally id.* To provide Stroz with the ability to identify and appropriately treat privileged content that it might encounter, Stroz was provided with a list of specific names of firms with whom the diligenced employees may have had privileged communications. *See* Dkt. 824-1, Ex. A at 2–3, Ex. F at 3. These attorneys and firms are the ones who appear on Mr. Ron's privilege log. *Compare* Dkt. 824-1, Ex. A at 3 and Ex. F at 3, *with* Dkt. 1743-11, Wamyo's Mtn., Ex. 7 (Mr. Ron's privilege log).

██████████████████████████████████████████████████████████████ ██████████████ Dkt. 1743-7, Waymo's Mtn., Ex. 3. It also provided Ms. Baker with an opportunity to view any materials it deemed relevant to its investigation in order to identify any accidental inclusion of privileged material. *See* Dkt. 824-1, Ex. E at 8. Ms. Baker would then address those documents through a log that would go to Morrison & Foerster. *See id.* ████████████████████████████. *See* Dkt. 1743-9, Waymo's Mtn., Ex. 5 (████ ████████████████████). Thus, the inference is that none of the privileged documents were implicated by Stroz's review.

The Stroz Engagement letter further contemplates that "under no circumstances will Stroz Friedberg disclose to Uber or Morrison or any of their representatives any attorney-client privileged communications between Ottomotto and/or any of its employees . . . on the one hand, and counsel for Ottomotto or counsel to any of such persons, on the other hand, that

TAYLOR & PATCHEN, LLP

Magistrate Judge Jacqueline Scott Corley
September 25, 2017
Page 3

are disclosed to or discovered by Stroz Friedberg in its performance of the services." *See* Dkt. 824-1, Ex. A at 3, Ex. E at 3.  There is no evidence that any of these documents were in fact provided to Uber.

## II.     THE COURT HAS NOT PREVIOUSLY CONSIDERED THIS ISSUE

Contrary to Waymo's assertions, the question of waiver that is presently before the Court is distinct from the question of privilege that was before the Court with respect to the Stroz report.  First, all of the materials at issue here—unlike those at issue in the earlier motion—were clearly subject to preexisting attorney-client privilege.  Second, none of the materials at issue here were disclosed in any way to Uber, whom this Court has found to be Otto and Mr. Ron's adversary before April 11, 2016.  Rather, they were at most made available only to Stroz, who was an agent for Otto and its attorneys—and hence the agent of a person with whom Mr. Ron clearly had a common interest relationship.  Third, the documents at issue here, unlike those in the earlier motion, were subject to a formal protocol to prevent waiver of the privilege, adopted expressly to deal with the need for speed and economy in the handling of voluminous documents, and that expressly forbade their disclosure to Uber.  For these reasons, as argued further below, the Court should find that Mr. Ron did not waive the privilege in any of the documents to which Stroz was provided access.

## III.    MR. RON DID NOT WAIVE ANY PRIVILEGE BY PROVIDING STROZ WITH LIMITED ACCESS TO THESE DOCUMENTS

The attorney-client privilege in the documents at issue here was not waived, for two reasons.  First, the Otto-privileged documents were turned over to its law firm's agent under an express undertaking of confidentiality and for the purpose of providing legal advice.  Second, all of the documents were turned over pursuant to an agreed-upon protective protocol to prevent the use or disclosure of privileged information, a process that was in fact adhered to.

### A.     The Court Should Not Find Waiver for Any Documents Reflecting Otto's Attorney-Client Communications.

A substantial portion (approximately 533) of the privileged documents at issue here—as evidenced by the log provided by Mr. Ron—are documents containing communications where Mr. Ron was seeking or receiving legal advice on behalf of Otto (or its predecessor, 280 Systems), as an executive of those entities.[1]  Otto holds the privilege in these

---

[1] Mr. Ron has standing to assert the privilege of these non-operational entities as he was an officer at the time of the relevant disclosures.  *See Commodity Futures Trading Com.* (footnote continued)

ONE FERRY BUILDING, SUITE 355, SAN FRANCISCO, CA 94111   T 415.788.8200   F 415.788.8208

Taylor & Patchen, LLP

Magistrate Judge Jacqueline Scott Corley
September 25, 2017
Page 4

documents. And, as Waymo acknowledges, this Court has previously found that Stroz was acting as Otto's agent, so there was no waiver. Dkt. 1747-4, Waymo's Mtn. at 1.

The Ninth Circuit has held that "a communication from the attorney to a third party acting as his agent 'for the purpose of advising and defending his clients' also may be protected." *United States v. Christensen*, 828 F.3d 763, 802 (9th Cir. 2015). "The attorney-client privilege covers communications between the attorney, the client, or their agents, so long as the communications were intended to be confidential and made in rendering legal advice." *Segerstrom v. United States*, No. C 00-0833 SI, 2001 U.S. Dist. LEXIS 2949, at *9 (N.D. Cal. Feb. 6, 2001). Here, agency is conceded, and the other two conditions are also met.

First, as shown above, the process used by Stroz ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ That process clearly shows that both Otto and Mr. Ron intended that those documents be kept confidential. And, in fact, this confidentiality was maintained—none of the documents went to Uber.

Second, the documents were also made available to facilitate the rendition of legal advice. Stroz's role as Otto's agent was to perform a function that was, given the circumstances, highly useful, if not essential: to identify potentially relevant information, including information potentially subject to privilege, and to communicate that information in a form that would allow Otto's attorneys to better advise their client both about the transaction at issue and any decision to waive the privilege. Using a vendor to search and evaluate large amounts of data on an expedited basis is precisely the type of situation where an attorney handing documents over to an agent is <u>not</u> considered a waiver of attorney-client privilege. *See, e.g.*, *In re CV Therapeutics, Inc. Sec. Litig.*, No. C-03-3709 SI (EMC), 2006 U.S. Dist. LEXIS 41568, at *18-19 (N.D. Cal. June 16, 2006) (noting that "'courts have extended the [attorney-client] privilege to the substantive advice and technical assistance' of agents of the attorney."); *Cohen v. Trump*, No. 13-CV-2519-GPC (WVG), 2015 U.S. Dist. LEXIS 74542, at *37 (S.D. Cal. June 9, 2015).

The documents' intended and actual confidentiality and the Otto-Stroz agency relationship distinguish them from those addressed in the Court's prior orders. *See* Dkt. 566, 670. Unlike the privileges asserted there, Otto's privilege in these documents does not rely on a

---

*v. Weintraub*, 471 U.S. 343, 348-49 (1985) ("[F]or solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."); *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (same).

TAYLOR & PATCHEN, LLP

Magistrate Judge Jacqueline Scott Corley
September 25, 2017
Page 5

common interest with Uber, but instead an agency relationship, and the privilege in these documents was never waived because they were never given to Uber. In other words, unlike the Stroz report, the privilege in these documents is covered by the principle articulated in *United States v. Christensen* that communications to an attorney's agent retain their privilege. 828 F.3d at 802.

> **B.   There Is No Waiver For The Remaining Privileged Documents Because Mr. Ron Provided Stroz with Access to His Documents Pursuant to A Clawback Agreement.**

There has also been no waiver of the privilege with respect to documents reflecting Mr. Ron's communications with his personal counsel.[2] As described above, Mr. Ron did not selectively provide privileged documents to a third party for his own benefit and without any regard for that privilege. Instead, given the need for expedition in the due diligence process, and the inability to pre-screen for privilege, Mr. Ron provided Stroz with access to his documents *only* with the understanding that he would not be waiving any privilege.[3]

This arrangement was equivalent to the parties entering into a "clawback agreement," which is commonly used for the purpose of allowing the rapid and efficient disclosure of information without a waiver of privilege. District courts in the Ninth Circuit have found that parties can do just that: enter into agreements that allow them to retain their privilege in the event that privileged documents are inadvertently shared. *See RIFL Corp. v. Google Inc.*, No. 2:12-cv-02050-RSM, 2013 U.S. Dist. LEXIS 179193, at *7 (W.D. Wash. Dec. 17, 2013) ("Parties may, however, enter into clawback agreements that permit a producing party to claw back documents that are subject to privilege protection."). Ms. Baker stated in her letter that providing Stroz with access to Mr. Ron's materials shall not ███████ ████████████████████████████████████████████████████████████ Dkt.

---

[2] The Ninth Circuit has recognized that there are some circumstances in which providing documents protected under the attorney-client privilege to third parties will not destroy the privilege. *See Pac. Pictures Corp. v. United States Dist. Court*, 679 F.3d 1121, 1126-27 (9th Cir. 2012) (stating only that "voluntarily disclosing privileged documents to third parties will *generally* destroy the privilege") (emphasis added). The circumstances identified above indicate that the general rule does not apply here.

[3] Thus, the cases that Waymo cites from other Circuits—almost all of which were decided in a different context before the advent of electronic vendors, involve selective disclosure by a party to a litigation, and do not present a situation where a third party was actually instructed not to view the privileged materials with a clawback mechanism—are inapposite here. *See* Dkt. 1743-4, Waymo's Mtn. at 5.

TAYLOR & PATCHEN, LLP

Magistrate Judge Jacqueline Scott Corley
September 25, 2017
Page 6


1743-7, Waymo's Mtn., Ex. 3.  This language is substantively similar to the language in a protective order Google previously used and that the Western District of Washington found sufficient to effect similar relief: "such production shall in no way prejudice or otherwise constitute a waiver or estoppel as to any such doctrine, right, or immunity."  *RIFL Corp.*, 2013 U.S. Dist. LEXIS 179193, at *8-10.

The protocol in the Stroz engagement letter elaborates on this basic structure, identifying law firms and attorneys for which Stroz should be on the lookout and providing Mr. Ron's and Otto's counsel with the opportunity to review any documents deemed relevant to Stroz's investigation to ensure that no privileged documents had been reviewed.  ████████ ███████████████████████████████████████████ Dkt. 1743-7, Waymo's Mtn., Ex. 3; Dkt. 824-1, Ex. E at 8.  ██████████████████████████████████████ ███████████████████████████  *See* Dkt. 1743-9, Waymo's Mtn., Ex. 5.  It follows that none of Mr. Ron's privileged documents were relevant to the due diligence process.

This type of privilege-protection protocol is currently being used *in this very case* for Waymo's review of the materials the diligenced employees gave to Stroz.  Due to the time constraints in this litigation, Waymo has been given access to hundreds of thousands of Mr. Ron's documents, the vast majority of which have absolutely no bearing on this case.  The Court has made clear that Waymo's access to those documents, which may contain attorney-client privileged communications, does *not* constitute a waiver of attorney-client privilege, whether Waymo actually looks at any such privileged documents or not.  Patchen Decl. ¶ 2, Ex. A (Excerpt of 9/14/2017 Hr'g Tr. at 28:15–29:11).

**IV.   MR. RON TIMELY SERVED HIS PRIVILEGE LOG**

Waymo's claim that Mr. Ron did not timely assert privilege over these documents mischaracterizes the record and the applicable law.  As a non-party, Mr. Ron was not served with the Stroz subpoena.  He initially objected to the subpoena (once he became aware of it) as unnecessary and duplicative of the subpoena that had already been served on him, because the universe of documents in Stroz's possession overlapped completely with the documents in Mr. Ron's possession that he was already searching in order to make objections based on privilege, relevance, and confidentiality.  When that objection failed, Mr. Ron cooperated with Waymo and the Special Master in working to set up a protocol for Waymo's review of the Stroz documents.  Throughout that process, Mr. Ron raised concerns about maintaining privilege and privacy.  Patchen Decl. ¶ 3, Ex. B (E-mail from J. Patchen to Special Master Cooper).  Yet even while those negotiations were ongoing, it was not clear that the Stroz documents would ever be reviewed.

Taylor & Patchen, llp

Magistrate Judge Jacqueline Scott Corley
September 25, 2017
Page 7


While the process of negotiating the protocol was underway, issues relevant to those documents were being litigated in this Court, before the District Court and in the Federal Circuit. *See, e.g.*, Dkt. Nos. 566, 670, 685, 745; *Waymo LLC v. Uber Techs., Inc.*, --- F.3d ---, 2017 WL 4078406 (Fed. Cir. Sept. 13, 2017). Until September 13, no one could be certain that any Stroz documents would be made available to Waymo.

The day after the Federal Circuit's decision, this Court held a hearing and directed Mr. Ron to serve his privilege log by the next day at 10:00 a.m. Patchen Decl. ¶ 2, Ex. A (Excerpt of 9/14/2017 Hr'g Tr. at 35:18–35:25). And Mr. Ron did just that, serving his log *less than 24 hours* from the time the Court ordered it. Patchen Decl. ¶ 4, Ex. C (E-mail reflecting service of Mr. Ron's privilege log).

Waymo argues that Mr. Ron's privilege log was late under the District Court's standing order. Dkt. 1743-4, Waymo Mtn. at 5–6. But Waymo ignores the issue's history—the then-pending motions, appeals, and review-protocol discussions—and thus the context of the case. *See Burlington N. & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (rejecting a per se waiver rule for untimely privilege logs under Rule 34 and instructing district courts to consider the circumstances of the case). In the circumstances of this case, Mr. Ron's privilege log was timely for three reasons: (1) it strictly complied with the Court's order; (2) an earlier log would have made no sense given Mr. Ron's non-party status, the ongoing negotiations concerning a discovery protocol and the legal uncertainties surrounding the Federal Circuit appeal, and (3) Waymo suffered absolutely no prejudice from the timing of the log's production.

A finding of timeliness based on the circumstances is also consistent with this Court's prior rulings. In earlier briefing, Waymo pointed to apparent deficiencies on Uber's privilege log and urged this Court to find that Uber waived all privileges. Dkt. 637 at 5–6. Although the Court found "deficiencies with the current log, the Court d[id] not find them so egregious that Uber should have to produce otherwise protected material, especially given the volume of log entries and the brief period Uber had to reevaluate the privilege log." Dkt. 731 at 6; *see also* Dkt. 949 at 3 (District Court order noting that Waymo's waiver argument relied on its standing order but that the Magistrate Judge "remains in the best position to determine how to handle discovery issues like deficient privilege log entries," and overruling objections to this Court's order).

### V.     CONCLUSION

For the reasons discussed above, Mr. Ron respectfully requests that Waymo's motion to gain access to privileged documents from his devices and accounts be denied.

TAYLOR & PATCHEN, LLP

Magistrate Judge Jacqueline Scott Corley
September 25, 2017
Page 8

Respectfully submitted,

*/s/ Jonathan A. Patchen*

Jonathan A. Patchen

cc:     Counsel of record (via ECF); Special Master John Cooper

ONE FERRY BUILDING, SUITE 355, SAN FRANCISCO, CA 94111   T 415.788.8200   F 415.788.8208