# **E**xhibit **A**

```
                                                        Pages 1 - 67

                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

    BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY, MAGISTRATE JUDGE

WAYMO, LLC,                      )
                                 )
          Plaintiff,             )
                                 )
  VS.                            )    No. C 17-00939 WHA
                                 )
UBER TECHNOLOGIES, INC.,         )
et al.,                          )
                                 )
          Defendants.            )
                                 )    San Francisco, California
                                      Thursday, September 14, 2017

                      TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:
                    QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                    50 California Street
                    22nd Floor
                    San Francisco, California  94111
               BY:  JAMES D. JUDAH, ESQ.
                    DAVID A. PERLSON, ESQ.

For Defendants:
                    MORRISON & FOERSTER, LLP
                    425 Market Street
                    San Francisco, California  94105
               BY:  ARTURO J. GONZÁLEZ, ESQ.




Reported By:   BELLE BALL, CSR 8785, CRR, RDR
               Official Reporter, U.S. District Court


 (Appearances continued, next page)
```

1  native devices ready to go for inspection.  The Relativity
2  database could be available as early as Monday, except that that
3  is the place where we have some complications around the
4  protocol of what's private and what's not.
5      **THE COURT:**  Yeah, we'll get to that.  But just putting that
6  aside --
7      **MS. BLUNSCHI:**  Yes.
8      **THE COURT:**  Putting that aside, that's available for Waymo
9  to come over to your -- not -- is it at --
10     **MS. BLUNSCHI:**  Well, so, we need to know what we're
11 screening out of that database in order to make it available to
12 Waymo.
13     **THE COURT:**  Well, I think the proposal was from Waymo --
14     **MS. BLUNSCHI:**  Uh-huh.
15     **THE COURT:**  -- is that they are going to go over, they're
16 going to look at it, right?
17     And if there is something that you want, you can say:  I
18 want this.
19     And then you can be there or somebody from your office who
20 can say:  No, this is one of those 200 photos, or whatever it
21 was.  It doesn't sound like there's very much there.
22     **MS. BLUNSCHI:**  So the Relativity database is actually a
23 complete duplicate of all of the native devices that Waymo will
24 also be reviewing.
25     And so as soon as we have direction on what goes in it, it

1   will take, you know, about 48 hours to make it --
2       **THE COURT:** Why doesn't everything go in it?
3       **MS. BLUNSCHI:** That --
4       **MR. EHRLICH:** I can address that.
5       **THE COURT:** Yeah.
6       **MR. EHRLICH:** So, I -- and I have a very large objection to the idea that they're just going to get all of the native devices, and then we're going to screen out from the Relativity database, because that would defeat the whole purpose.  On an actual computer you can't screen it out with -- while preserving its integrity.
12      The point about the Stroz database is that they went through the process of harvesting all of the documents so they can be reviewed on the platform, and tagged and marked, et cetera.
15      So I don't think it's appropriate, at least for Mr. Levandowski, for the native devices to be searched, because then the whole point of screening out preexisting privilege or very private matters would be moot.  Because you're just giving the computer over.  Which has everything.
20      **THE COURT:** Which is what he did to Stroz.  He just gave it over.
22      **MR. EHRLICH:** I understand that.
23      **THE COURT:** He just handed over --
24      **MR. EHRLICH:** Not exactly.  With an understanding that there was a screen that was going to be applied, the privileged

1  materials.
2     **THE COURT:** That they could claw it back.
3     **MR. EHRLICH:** Not claw it back; that it would not be shared
4  with Uber.
5     **THE COURT:** Exactly.
6     **MR. EHRLICH:** And Otto.
7     **THE COURT:** So the same thing could apply here under Rule of
8  Evidence 502. There is no waiver or anything like that. If
9  they actually say: I want to print this -- and they can, or you
10 could be standing over their shoulder, right?
11    **MR. JUDAH:** Right.
12    **THE COURT:** You can be standing over their shoulder. That's
13 why I said before when we had their hearing: If there are
14 particular files or areas, identify them now.
15    **MR. EHRLICH:** But we have. And I -- so just to that point,
16 we understood the hearing, the last hearing, for you to be
17 rejecting the idea that they would give us search terms, and
18 then we produce.
19    And so instead, we had to look at all -- we had to basically
20 take a look at all half a million items that -- we didn't have
21 to eyeball each one. And we identified those that are
22 privileged. We have a privilege log ready to hand to them
23 today.
24    These is privileged because these are prior communications
25 between Mr. Levandowski and his family law attorney,

1  Mr. Gardner.  Other attorneys that are not implicated by the
2  Federal Circuit ruling.
3      **THE COURT:**  Well, Mr. Gardner is complicated.
4      **MR. EHRLICH:**  Well, and they can challenge any that they
5  would like to challenge.  It's more than a hundred pages.
6      **THE COURT:**  Well, Mr. Gardner, Mr. Levandowski, Mister --
7  that's right.  We haven't -- I haven't ruled any of those
8  communications as --
9      **MR. EHRLICH:**  No, no.  So we have the privilege log.  And
10 what seems to me to be the most sensible way to go, before I
11 turn to the privacy, is for these documents -- we've been
12 working for weeks with Stroz to identify these documents.  They
13 can very easily be taken out of the universe of millions of
14 documents.  They can start searching.
15     We will provide this privilege log; it can be tested.  If
16 there's anything that needs to be reviewed in camera by the
17 Court or by Mr. Cooper, we can deal with that.  But they won't
18 be running hits and landing on privileged material.  That seems
19 to be appropriate, because it was not disclosed fully.
20     As to the private matters, we have identified
21 Mr. Levandowski's family, his, you know, his former domestic
22 partner, the mother of his children, girlfriends, very close
23 personal relationships.  And we separately have those tagged.
24 My proposal -- there's about 7,000 documents there.  We could
25 make those available for review to -- by Mr. Cooper.  But that

1  to evaluate.  If we need to come back tomorrow, we'll come back
2  tomorrow.
3       **MR. EHRLICH:**  Just for the record, I'm handing him the
4  attorney/client privilege log.
5       (Document tendered)
6       **MR. EHRLICH:**  I'm not handing him the list of private
7  people.  I don't have that with me now.
8       **THE COURT:**  When will you give it to him?
9       **MR. EHRLICH:**  We can give that to him tomorrow.
10      A little bit of my concern is that -- the -- to say that
11 something is -- is completely irrelevant and private, my concern
12 is then giving a list to Waymo --
13      **THE COURT:**  One way --
14      **MR. EHRLICH:**  Yeah, I know.
15      **THE COURT:**  You know what?  He's handed it all over to
16 Stroz; that's just where he finds himself.
17      **MR. EHRLICH:**  So the request is to get a list of the search
18 terms that were used to segregate the private material.
19      **THE COURT:**  Yeah.
20      **MR. EHRLICH:**  Is the way I understand it.
21      **THE COURT:**  But you need to tell them who --
22      **MR. EHRLICH:**  Which names.
23      **THE COURT:**  Which names.
24      **MR. EHRLICH:**  Which individuals.  I understand.
25      **THE COURT:**  Yeah.  I mean --

```
 1        MR. EHRLICH:  I don't have that today, but we can certainly
 2   get that after the hearing.
 3        THE COURT:  Okay.
 4        MR. EHRLICH:  By tomorrow.
 5        THE COURT:  I want that to them by 10:00 a.m. tomorrow.
 6        MR. EHRLICH:  10:00 a.m. tomorrow.
 7        THE COURT:  I'm sorry, but we're just on rocket speed.
 8        MR. JUDAH:  Your Honor, we need an electronic version of the
 9   privilege log as well.
10        MR. EHRLICH:  We can --
11        THE COURT:  That you can have tonight.
12        MR. EHRLICH:  Yes.
13        THE COURT:  That you can have by 5:00 p.m.
14        MR. EHRLICH:  5:00 p.m.
15        THE COURT:  You can just e-mail somebody at your office by
16   5:00 p.m.
17        MR. EHRLICH:  Yes.
18        MR. JUDAH:  And I think Mr. Patchen said that there was
19   similar --
20        MR. PATCHEN:  We haven't created a log.  We will do so, and
21   turn everything over by tomorrow morning.
22        THE COURT:  You're going to have a long night, right?
23   You're going to have that logged in by 10:00 a.m. tomorrow
24   morning.
25        MR. PATCHEN:  We shall do so.
```

1   **MR. BROWNSTEIN:**  Your Honor, David Brownstein for Colin
2   Sebern.
3       We have a log of private materials, some of which are simply
4   his fiancée's files.  And we have that explanatory material.
5   And we're prepared to turn it over this afternoon.
6       I do want to touch on the native devices, because I -- I'm
7   not clear here.  I thought we had gone through this privacy
8   screen, so that in fact those materials wouldn't be reviewed.
9   And now it sounds like there's some debate about whether
10  counsel's going to want to go through that material anyway.
11      **THE COURT:**  Well, originally, last -- you were first going
12  to go through the Relativity, right?  And all that stuff.
13      **MR. JUDAH:**  Well, we also were going to use the natives in
14  order to determine copy history, transfer history, deletion
15  history, and also file structure, which might help us identify
16  documents.  And also to confirm that everything on the
17  Relativity database, actually it is a complete set of everything
18  on the native images.
19      **MS. BLUNSCHI:**  It is not.  So --
20      **MR. JUDAH:**  Yeah, and it isn't.  So that's an issue.  I
21  think, as you said, I think the way to proceed with the forensic
22  images, the natives, is counsel for, you know, Mr. Levandowski
23  can be there.  And it's a 502 situation.  There's no waiver,
24  there's no privilege.  You know, there's no privacy waiver.
25      If we see something and then they say:  Wait a second,