UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYMO LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES INC., et al.,<br><br>    Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DECLARATION OF JOHN GARDNER IN SUPPORT OF REQUEST FOR ORDER HOLDING THAT NON-PARTY ANTHONY LEVANDOWSKI DID NOT WAIVE ATTORNEY CLIENT PRIVILEGE** |

I, John Gardner, declare as follows:

1.    I am a member of the bar of the State of California and a partner with Donahue Fitzgerald LLP.  I submit this declaration in support of nonparty Anthony Levandowski's request for an order holding that he did not waive his attorney-client privilege over communications that resided within digital devices and other electronic data he provided to Stroz Friedberg as part of its due diligence review.  I have personal knowledge of the facts stated herein, and, if called and sworn as a witness, I could and would testify competently as follows.

2.    On or about January 28, 1016, Anthony Levandowski retained Donahue Fitzgerald LLP ("Donahue") to represent him in connection with a proposed transaction between Ottomotto LLC ("Otto") and Uber Technologies, Inc. ("Uber") (the "Transaction").  I was the principal Donahue partner handling the matter.

3.    In connection with the Transaction, O'Melveny & Myers ("O'Melveny") and Morrison and Foerster ("Morrison"), on behalf of their respective clients Otto and Uber, engaged Stroz Friedberg LLC ("Stroz") to conduct a forensic examination of electronic and hard copy data of certain individuals, including Mr. Levandowski.  A true and

correct copy of the Engagement Letter, dated March 4, 2016, is attached hereto as <u>Exhibit A</u>.

4.      As set forth in my previous Declaration (*see* Dkt. 382, and attached hereto as <u>Exhibit B</u>), I believed that the parties recognized from the outset of the potential transaction that there was a tangible risk of litigation by Google against Uber, Otto, Mr. Levandowski and/or Mr. Ron if the transaction was consummated.  On the basis of this risk, I reached an understanding with counsel for Uber, Otto, and Mr. Ron that the parties were proceeding under a common interest agreement to allow the parties and their counsel to share information freely in order to evaluate litigation risk, anticipate defenses, and assess legal strategies without risking any waiver of privilege.  On March 11, 2016, I received a draft Joint Defense, Common Interest, and Confidentiality Agreement for the purpose of confirming our prior discussions and agreement that the parties were working jointly in furtherance of a common interest.  See also Dkt. 381 at ¶¶ 4, 8, and Exhibit B.

5.      Notwithstanding the common interest protections I understood to be operative, and as a further precaution, on or about March 7, 2016, I prepared a letter to Stroz in connection with the proposed delivery of materials and devices by Mr. Levandowski to Stroz.  Attached hereto as <u>Exhibit C</u> is a true and correct copy of the letter to Stroz, dated March 7, 2016 ("Attorney-Client Protective Letter").  Attached hereto as <u>Exhibit D</u> is a true and correct copy of an e-mail from Adam Bentley, dated March 7, 2016 confirming that the Attorney-Client Protective Letter had been delivered to Stroz.  My understanding was that Stroz required direct access to the physical electronic devices in order to review metadata such as file deletion histories, last-access logs, and other forms of system activity in an unaltered form.    Given the nature of electronic examination, and the necessity that electronic devices be delivered in order to perform that examination, Donahue sent the Attorney-Client letter to Stroz in order to prevent the delivery of Mr. Levandowski's electronic devices, hard copy files and other electronic data to Stroz from being deemed a waiver of the attorney-client privilege as to specific attorney-client privileged communications contained in those materials. The Attorney-Client Protective Letter set forth conditions under which Mr.

Page 2

Levandowski would agree to deliver materials to Stroz.  These conditions included specific prohibitions preventing Stroz from reviewing or accessing any attorney-client communications or attorney work product contained in any materials that would be delivered to Stroz, and set forth a process for the segregation and return of such communications to Mr. Levandowski.  Specifically, the Attorney-Client Protective Letter states in part,

> The Accessed Materials are likely to contain Privileged Documents as to which Mr. Levandowski holds the attorney-client privilege from disclosure to third parties, including the Clients [meaning Stroz's clients, Uber and Otto]. In the event Stroz discovers Privileged Documents during the course of the Stroz Examination, *we are instructing Stroz not to review the content of any such Privileged Documents inadvertently includedin the Accessed Materials*. Stroz is further directed to *immediately segregate and return to us any Privileged Documents discovered during the course of the Stroz Examination*. As described in the Stroz engagement letter, *Stroz is not authorized to directly or indirectly disclose any Privileged Documents, nor the content or existence of such materials, to its Clients or to any third party whatsoever*.

Exh. B, p. 1 (emphasis added)

    6.    In or about March, 2016, Stroz requested that Mr. Levandowski provide Stroz access to physical electronic devices, hard copy files, and other electronic data in order to conduct its forensic review.  In order to prevent the delivery of Mr. Levandowski's electronic devices, hard copy files and other electronic data to Stroz from being deemed a waiver of the attorney-client privilege as to specific attorney-client privileged communications contained in those materials, Donahue required Stroz to enter into a letter agreement restricting Stroz's access to and dissemination of materials delivered to Stroz. Attached hereto as <u>Exhibit E</u> is a true and correct copy of the letter (the "Devices Protective Letter"), dated March 21, 2016, which includes a "Protocol for Review of Data and Devices" ("Stroz Examination Protocol").  Stroz signed the letter on March 22, 2016.   Attached hereto as <u>Exhibit F</u> is a true and correct copy of the e-mail transmittal from Stroz, dated March 22, 2016, attaching the Stroz counterpart copy of the Devices Protective Letter.

    7.    In the Devices Protective Letter, Stroz agreed to limit its review of the

electronic data according to the terms set forth in the Stroz Examination Protocol (*see* <u>Exhibit E</u>).  The protocol provided a process by which Stroz would cull out and segregate attorney-client communications into a separate folder and then review the electronic data, including the physical electronic devices, to identify documents relevant to the investigation. The protocol also enabled Donahue, as attorneys for Mr. Levandowski, to monitor, restrict and pre-approve any access by Stroz to privileged information or delivery of material to O'Melveny or to Morrison, or their respective clients.

8.      Under the Stroz Examination Protocol, the term "O'Melveny" is defined to refer jointly to O'Melveny and separate counsel retained by the individual employees subject to due diligence.  The protocol provides in part, "For purposes of this Protocol, the term 'O'Melveny' means O'Melveny & Meyers and if applicable, any separate counsel retained by the Diligenced Employee." *Id.* at p. 4; *see also* p. 3 ("O'Melveny & Myers and . . . any separate counsel retained by the Diligenced Employee (jointly for all purposes under this protocol, "O'Melveny")).  Donahue, as counsel to Mr. Levandowski, was thus included within the definition of "O'Melveny" for purposes of the Stroz Examination Protocol, as were the attorneys for the other Diligenced Employees.

9.      In order to ensure that Stroz would adhere to the Stroz Examination Protocol, I sent a letter to Stroz on March 23, 2016, reiterating that Mr. Levandowski took Stroz's covenants under the Devices Protective Letter seriously, and expected to enforce those obligations separate and apart from Stroz's representation of its clients under the Engagement Letter.  Attached hereto as <u>Exhibit G</u> is a true and correct copy of the letter to Stroz dated March 23, 2016, reiterating Stroz's obligations to Mr. Levandowski.  The letter reiterates that, "The permitted disclosures under the Protocol are subject to the prior approval of Donahue Fitzgerald LLP."  Donahue consistently exercised its right to approve Stroz's access and disclosures during the Stroz Examination.

10.      The Stroz Examination Protocol describes the process by which Stroz would isolate potentially privileged documents contained in the devices and other

H:\Documents\Gardner Declaration re AC Privilege.DOCX

electronic data delivered to Stroz:

> "O'Melveny has included a list of attorney client names, firms, domains, addresses, and telephone numbers for Stroz Friedberg to use in identifying potentially privileged documents and communications. Stroz Friedberg will use this list, its own manual review, and its proprietary privilege-identifying algorithms to identify privileged documents and e-mails that relate to the subject matter of the investigation. Stroz Friedberg will create a folder on Stroz Review that contains such documents and e-mails – whether active, deleted, or fragments – and O'Melveny will create and deliver to Morrison a privilege list relating to those documents."

*Id.* at p. 3, n. 1.

11.     The Stroz Examination Protocol also provides that only non-privileged documents would be included in the Proposed Disclosure Folder, consisting of documents that would potentially be disclosed in connection with its examination, providing in part:

> At the end of its investigation, if Stroz Friedberg believes that **non-privileged**, [footnote 1] relevant documents or communications – whether active, deleted, or fragments -- should be shared with O'Melveny and Morrison, it will first place those documents in a folder (the 'Proposed Disclosure Folder') on Stroz Review for review by O'Melveny, but shall not provide Morrison access to the Proposed Disclosure Folder.

*Id.* at 3-4 (emphasis added).

12.     The Stroz Examination Protocol further provided a "fail-safe" provision in the event privileged communications came to be located in the Proposed Disclosure Folder, providing in part,

> If O'Melveny claims that any of the documents subject to proposed disclosure are subject to the attorney-client privilege, attorney work product privilege, or other restriction on disclosure O'Melveny will produce a privilege log to Morrison regarding such documents, and Stroz Friedberg will, unless and until the documents are cleared for disclosure by O'Melveny, remove the documents from the Proposed Disclosure Folder.

*Id.* at 4.

13.     My understanding based on the Attorney-Client Protective Letter, the Devices Protective Letter, and the Stroz Examination Protocol described above was that Stroz would not review the content of attorney-client communications contained in Mr.

Page 5

Levandowski's electronic devices, but that any such materials would be subject to a privilege log prepared by Donahue.

14.     Following this protocol, Stroz Friedberg contacted attorneys including Donahue (again, included in the defined term "O'Melveny") and requested a list of counsel in order to segregate potentially privileged documents as it prepared to conduct its review. Attached hereto as <u>Exhibit H</u> is a true and correct copy of an email from Stroz dated April 1, 2016, requesting a list of counsel in order for Stroz to segregate potentially privileged documents from its review.  In response to that request, I provided a list of Mr. Levandowski's attorneys and law firms to Stroz for purposes of screening attorney-client privilege and attorney work product materials.  Attached hereto as <u>Exhibit I</u> is a true and correct copy of an email dated April 1, 2016, listing attorney-client search terms.  My understanding of the privilege screening process was that Stroz would run the search terms to segregate privileged documents.   I am informed and believe, based on the Attorney-Client Protective Letter, the Stroz Examination Protocol, and my communications with Stroz, that Stroz followed the process described in the Stroz Examination Protocol and used the attorney and law firm search terms provided by Donahue and O'Melveny to electronically isolate communications to or from those persons or entities and segregate those potentially privileged communications in a privilege folder.  In addition, I am informed and believe that Stroz did not review any of the communications in the Privilege Folder for content and did not provide them to O'Melveny, counsel to Ottomotto, Morrison, counsel to Uber, or any third parties.

15.     Prior to April 11, 2016, the date after which the court has determined that a common interest privilege arose, Stroz did not contact Donahue at any time to request permission to review potentially privileged communications in the privilege folder or regarding potentially privileged communications which might have come to be located in the Proposed Disclosure Folder.

16.     I am informed and believe that Mr. Levandowski delivered

devices to Stroz at various times in March 2016.  After the delivery of the devices to Stroz, Donahue (as part of the defined term "O'Melveny") directed Stroz on behalf of Mr. Levandowski regarding the implementation of the protocol within the limitations of the Stroz Examination Protocol. Stroz consistently sought permission from Donahue prior to running search terms and providing information to the parties.  Donahue diligently required Stroz to adhered to the Protocol, required to Stroz to seek permission before disclosing information and did not disclose any information to O'Melveny & Myers, Morrison or their respective clients except in strict adherence with the Stroz Examination Protocol.  Stroz consistently and repeatedly requested permission for disclosures to O'Melveny & Myers and to Morrison. Attached hereto as Exhibit J are true and correct copies of correspondence with Stroz in which Stroz complied with the restrictive Stroz Examination Protocol as agreed to in the Device Protective Letter.  I am informed and believe, on the basis of my letters, e-mails and other communications with Stroz, that Stroz complied with the requirements of the Examination Protocol.

17.     Throughout the Stroz examination process leading up to April 11, 2016, I consistently expressed to Stroz as well as counsel for Uber that it was Donahue's intent to prevent the disclosure of Mr. Levandowski's privileged attorney-client communications, and Donahue imposed conditions on Mr. Levandowski's delivery of his electronic data and his physical electronic devices to Stroz in order to prevent such disclosure.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.  Executed this 25th day of September, 2017, at Walnut Creek, California.

_____

JOHN F. GARDNER

3:17-cv-00939-WHA
424652.1

H:\Documents\Gardner Declaration re AC Privilege.DOCX