QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO LLC'S OBJECTION TO ORDER RE: GROUND RULES FOR THE TESTIMONY BY ANTHONY LEVANDOWSKI (DKT. 1535)** |

Pursuant to the Court's September 13, 2017 Order (Dkt. 1535), Plaintiff Waymo LLC ("Waymo") hereby asserts these objections to paragraphs 1, 2, and 4 of the Court's "Ground Rules" for the trial testimony of Anthony Levandowski.

The Court should not take special steps to minimize Levandowski's testimony in this case that benefit Defendants. Levandowski's actions are at the heart of this case, and his invocation of the Fifth Amendment is therefore a critical fact for the jury to consider in the overall evidence to be presented at trial. And Uber can hardly complain, given that Uber hired Levandowski and put him in charge of its self-driving program after seeing the Stroz Report, which showed that Levandowski possessed and accessed Waymo's confidential information after leaving Google. (*See generally* Dkt. 1723 (Sept. 20, 2017 Tr.) at 31-41.)

Given Levandowski's importance in this case, and Uber's choice to employ and indemnify him despite the red flags from the Stroz Report, this Court should not constrain Waymo's use of Levandowski's testimony. In particular, Waymo should be permitted to inform the jury of Levandowski's role in the underlying events and his Fifth Amendment assertions in its opening statement. Waymo should also be permitted to call Levandowski in the order it deems appropriate for its overall trial strategy. This will allow Waymo to tell a coherent, understandable narrative of the events, and will prevent the jury from becoming confused as to why Waymo is not calling an undeniably critical witness.

The Court's order directs Waymo to call Levandowski "very close to the end of its case-in-chief so that the Court will be in a position to assess whether or not the trial record before the jury includes corroborating evidence to support the adverse inferences sought." (Dkt. 1535 ¶ 2.) There is no requirement, however, that Waymo must show corroborating evidence simply to elicit Levandowski's *testimony*. Although the Ninth Circuit requires corroborating evidence for an *adverse inference instruction*, it has never required corroborating evidence to merely elicit *the testimony* of a witness who will invoke the Fifth Amendment. See *S.E.C. v. Jasper*, 678 F.3d 1116, 1126 (9th Cir. 2012).

Waymo has no objection to the Court waiting to instruct the jury regarding an adverse inference until the end of its case-in-chief. That way, of course, the Court may assess the full

scope of evidence admitted at trial in making a determination regarding the "corroboration" requirement for an adverse inference instruction. But the timing of that determination/instruction need not be tied temporally to the time at which the evidence, including Levandowski's testimony, is elicited. Waymo should be permitted to refer to that testimony, just as it could refer to other evidence it intends to introduce, in its Opening Statement. Waymo should be permitted to call its witnesses and order its case in the manner it determines will best present its evidence—including the order and timing of Levandowski's testimony. For these reasons, Waymo respectfully requests that the Court modify paragraphs 1 and 2 of its "Ground Rules" to allow Waymo to reference Levandowski's testimony in its opening statement and to permit Waymo to call Levandowski as preferred in its case-in-chief. Again, Waymo does not object to the Court waiting to make its determination regarding an adverse inference instruction until the end of Waymo's case.

In addition, Waymo respectfully requests that the Court revise its adverse inference instruction in paragraph 4 of its Order. There is no admissible evidence of any kind to support giving the jury the choice to treat Levandowski's invocation of the Fifth Amendment as adverse to Waymo. Moreover, the adverse inference instruction should make clear—as courts consistently have done in cases of ex-employees invoking the Fifth Amendment—that the jury may (but not must) apply an adverse inference against the ex-employer.

**1.     Objection To Order Regarding Opening Statement And Order Of Witnesses**

Paragraph 1 of the Court's Ground Rules states:

> 1.     Neither side shall make any reference to Levandowski testifying at trial (or not) in its opening statement.

(Dkt. 1535 ¶ 1.) Paragraph 2 of the Court's Ground Rules state:

> 2.     Plaintiff Waymo LLC shall call Levandowski, if at all, very close to the end of its case-in-chief so that the Court will be in a position to assess whether or not the trial record before the jury includes corroborating evidence to support the adverse inferences sought.

(Dkt. 1535 ¶ 2.) Waymo respectfully objects to both of these Ground Rules to the extent they limit Waymo's ability to present the key evidence in this case in a logical and understandable way to the jury. These limitations are likely to cause juror confusion and prejudice to Waymo.

Levandowski is at the center of many issues in this complex, multi-faceted case.  He was the head of Uber's self-driving program, and his taking and accessing Google's proprietary information after leaving Google is a critical step to Defendants' misappropriation of trade secrets.  His decision to invoke the Fifth Amendment is therefore a critical piece of evidence.  *See, e.g.*, *LiButti v. United States*, 178 F.3d 114, 120 (2d Cir. 1999) ("[S]ilence when one would be expected to speak is a powerful persuader."); Dkt. 1723 (Sept. 20, 2017 Tr.) at 29 ("THE COURT: … [I]t sounds like a jury could say he -- could accept the Waymo view that this was all sinister and maybe accept your view that it was all a monumental accident; that somehow it got onto his personal computer, somehow it got onto his company computer; and he was stamping out fires left and right trying to delete everything.  I don't know.  That doesn't seem too plausible to me, but maybe a jury would buy it.  And remember, he's taking the Fifth Amendment.  MR. GONZÁLEZ: Sure.  THE COURT: If this was so innocent, how come he didn't come in here and tell us?").

Presenting an understandable narrative of the events will require Waymo to educate the jury about Levandowski's role in this case and his testimony during Opening Statement.  *See United States v. Barrerio*, Case No. 13-CR-00636-LHK, 2016 WL 258521, at *2 (N.D. Cal. Jan. 21, 2016) (noting that an opening statement is intended "to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole.") (quoting *United States v. McCabe*, 131 F.3d 149, at *4 (9th Cir. 1997) (unpublished)).  Unless Waymo is permitted to inform the jury of his testimony, the jury will be unaware that Levandowski has taken the Fifth, thereby preventing Waymo from properly portraying his conduct, until all other evidence is presented.  The jury will likely wonder why there is no testimony from Levandowski, and the jury will not know that Levandowski has taken the Fifth Amendment when hearing evidence related to his conduct.  Indeed, the jury may improperly assume that Waymo failed to mention Levandowski's side of the story in opening or at all until the end of its case because Waymo believed that Levandowski's testimony was favorable to Defendants.  *See Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1481 (8th Cir. 1987) (holding that party with burden of proof must be permitted to inform the jury of Fifth Amendment assertions by a key witness to avoid having the jury wrongly assume that the

witness' testimony would have damaged their case); *see also Pac. Gas & Elec. Co. v. Howard P. Foley Co., Inc.*, Case No. 85-2922-SW, 1993 WL 299219, at *10 (N.D. Cal. July 27, 1993). To avoid this prejudice, Waymo should be permitted to inform the jury of Levandowski's role in this case, inform the jury that he will testify, and inform the jury that he is expected to invoke his Fifth Amendment right against self-incrimination.[1]

Further, a coherent and logical trial presentation will also require appropriate ordering of Levandowski's testimony relative to the issues in the case. For example, Waymo should be entitled to present Levandowski's expected Fifth Amendment assertions with the context of the forensic evidence demonstrating the theft of its files so that the jury can appreciate the connection between these pieces of evidence. Also, the evidence relating to the activities of Defendants takes on an entirely different character and significance in light of Levandowski's Fifth Amendment assertions, and Waymo should be allowed to present these events with the appropriate context. By placing Levandowski's testimony at the end (and precluding any mention of it in the Opening Statement), the jury would necessarily be wondering throughout Waymo's case-in-chief why Waymo is asking others about Levandowski's theft rather than hearing from Levandowski directly. This will confuse the jury and prejudice Waymo. The Court's Ground Rules would also play into Defendants' trial strategy of de-emphasizing Levandowski's significance and importance to the critical events.

There is no reason the Court need tie the timing of Levandowski's testimony to its determination regarding an adverse inference instruction. While corroborating evidence is a prerequisite for an *adverse inference instruction*, corroborating evidence is not a prerequisite for merely examining a witness expected to invoke the Fifth Amendment in the presence of the jury, so long as the questioning relates to an issue of relevance in the case. As the Ninth Circuit explained in *S.E.C. v. Jasper*, 678 F.3d 1116 (9th Cir. 2012), there is "no warrant" for treating

---

[1] Opening statements are not evidence, and the jury can be instructed as such. *Alvarado v. Fed. Express Corp.*, Case No. No. C 04-0098 SI, 2008 WL 744819, at *6 (N.D. Cal. Mar. 18, 2008); *see also Frazier v. Cupp*, 394 U.S. 731, 736 (1969) ("Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given.").

every individual question in response to which the Fifth Amendment was asserted as an "instance where the adverse inference was drawn." *Id.* at 1126. In other words, while corroboration is a requirement for the Court to instruct the jury regarding an adverse inference, there is no corroboration requirement merely to elicit Fifth Amendment assertions within the presence of the jury. *Id.* Thus, consistent with *Jasper*, the Court should permit Waymo to call and question Levandowski in the presence of the jury at the time Waymo deems appropriate. The Court can then assess the scope of the proper adverse inference instruction at the close of evidence.

In all events, as demonstrated earlier in this case, Waymo has identified ample corroborating evidence for the subject matter of every question that Waymo will ask of Levandowski at trial already. (Dkt. 834-4.) For all these reasons, the Court should not unfairly constrain Waymo's discretion to control its presentation of the case and the order of its witness at trial.

In contrast, there is no prejudice to Defendants from Waymo simply telling the truth of Levandowski's invocation of the Fifth Amendment and eliciting his testimony at an appropriate time during the trial. Waymo has no intention of mentioning or in any way alluding to a possible adverse inference that the jury may be instructed to draw. Until the Court is able to assess all of the evidence and determine the scope of an appropriate adverse inference, Waymo will say nothing about it. Having tied themselves so closely to Levandowski through their own voluntary actions, Defendants can hardly complain about Waymo simply presenting Levandowski's testimony in Opening Statement and at an appropriate time during its case-in-chief. Dkt. 1050 (July 26, 2017 Tr.) at 59 ("THE COURT: … [H]e's taken the Fifth Amendment. It may be a little -- put you in a slightly awkward position. But, you know, I'm not too sympathetic. Here's Uber. They knew good and well what they were getting into with Mr. Levandowski.").

### 2. Objection To Order Regarding An Appropriate Adverse Inference

Paragraph 4 of the Court's Ground Rules state:

> 4. As the undersigned judge explained during a hearing on July 26 (*see* Dkt. No. 1050 at 99:1-13), the jury will be instructed, if the Fifth Amendment is invoked, that it may, but is not required to, draw inferences adverse to *Levandowski* based on his assertion of his Fifth Amendment privilege. If any such adverse inference is drawn against Levandowski, then it will remain up to

the jury to decide, as a separate question and based on all the other evidence in the case, whether the fact inferred is also adverse to one or more parties herein.

(Dkt. 1535 ¶ 4.) Waymo respectfully objects to this proposed instruction to the extent it would allow the jury to draw an adverse inference against *Waymo* for any purpose. Waymo additionally requests clarification that the Court will explicitly instruct the jury that it may extend the adverse inference against Levandowski to *Defendants* in this case if supported by the evidence.

The Court's originally formulated instruction at the July 26 hearing was based on the competing inferences that the parties argued should be drawn from Levandowski's assertion of the Fifth Amendment. Waymo argued that the Fifth Amendment assertions supported the inference that Levandowski intended to, and in fact did, misappropriate Waymo's trade secrets in his role as the head of Defendants' self-driving car program. (Dkt. 818-3.) Defendants argued that Levandowski's Fifth Amendment assertions supported the inference that he had stolen Waymo's confidential, proprietary, and trade secret files for the purpose of ensuring payment of his bonus. (Dkt. 821.) Since that time, however, the Court has found that the only allegedly corroborating evidence offered by Defendants in support of their "bonus" theory was based on an untimely, "selective waiver" of the attorney-client privilege. (Dkt. 1267 at 3 ("It is far too late for Uber to reap the benefits of that waiver, so it will be precluded from introducing evidence of the March 29 meeting at trial.").). Thus, because Defendants are no longer entitled to rely on any admissible corroborating evidence that could support an adverse inference instruction, it would be prejudicial to allow the jury to extend any adverse inference against Levandowski to Waymo. Indeed, Waymo has moved *in limine* to exclude any argument related to the "bonus" theory on the ground that the sole evidence supporting Defendants' purported "reason" Levandowski stole the documents has been precluded by the Court. (Dkt. 1561-4.) As currently formulated, the Court's proposed instruction is more prejudicial to Waymo than no adverse inference instruction at all. Waymo respectfully requests that the Court clarify that an inference may be drawn against Defendants, but not against Waymo.

Waymo also seeks clarification that the Court will explicitly instruct the jury that it may extend the inference against Levandowski to Defendants. As explained in prior briefing, allowing

the jury to extend the adverse inference to Defendants is consistent with the law which recognizes that a non-party's Fifth Amendment assertions may be held against closely affiliated non-parties under circumstances where the inference is sufficient "trustworthy." (Dkts. 818-3, 896-4.) Additionally, as argued in Waymo's Supplemental Brief in Support of its Motion for an Order to Show Cause, instructing the jury that it may draw an inference against Defendants is an appropriate sanction for Defendants' repeated violation of Court orders and discovery misconduct in this case. (Dkt. 1493-4.)

To be sure, a proper instruction would not *require* the jury to draw an adverse inference against Defendants, but if sufficient corroborating evidence exists at the close of evidence, the Court should make clear to the jury that Levandowski's Fifth Amendment assertions may ultimately be held against Defendants. Indeed, that is exactly the approach taken by courts in cases where a former employee of a party invoked the Fifth Amendment. *See, e.g.*, *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1306 (11th Cir. 2014) (affirming district court "instruct[ing] the jury that it could, but was not required to, draw adverse inferences against TD Bank from Spinosa's silence, and that it could, in conjunction with other evidence that was presented, consider Spinosa's silence in determining TD Bank's liability"); *RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 277 (3d Cir. 1986) ("The district court admonished the jury in a straightforward manner: 'During the trial you also heard evidence by past or present employees of the plaintiff refusing to answer certain questions on the grounds that it may tend to incriminate them. A witness has a constitutional right to decline to answer on the grounds that it may tend to incriminate him. You may, but you need not, infer by such refusal that the answers would have been adverse to the plaintiff's interests.' That instruction contained no error.").

Indeed, there is even *more* reason to instruct regarding an adverse inference here given that Uber employed Levandowski after knowing of the red flags detailed in the Stroz Report, Uber continued to employ Levandowski until after this Court's preliminary injunction ruling (and Uber's failure to comply therewith), Uber and Ottomotto agreed to indemnify Levandowski for his "bad acts," and Levandowski is still a controlling owner and Managing Member of Otto Trucking LLC.

DATED: September 25, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/Charles K. Verhoeven*
 Charles K. Verhoeven
 Attorneys for WAYMO LLC