QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:   (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>              Plaintiff,<br><br>       vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>              Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO LLC'S MOTION TO CLOSE COURTROOM**<br><br>**Hearing:**<br>Date: TBD<br>Time: TBD<br>Place: Courtroom 8, 19th Floor<br>Judge: The Honorable William H. Alsup |

TO DEFENDANTS UBER TECHNOLOGIES, INC., OTTOMOTTO LLC, OTTO TRUCKING LLC, AND THEIR COUNSELS OF RECORD:

PLEASE TAKE NOTICE that at a time and date to be later determined, in the courtroom of the Honorable William H. Alsup at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Waymo LLC ("Waymo") shall and hereby move the Court to close the courtroom during the portions of trial discussing (1) Waymo's technical trade secrets to the extent that the evidence/argument of use would reveal the trade secrets; (2) the terms of Google M&A deals that are unrelated to this case; (3) Waymo's non-public financial information; and (4) confidential information of its employees and former employees.  Waymo also moves the Court to seal all documents and portions of transcripts discussing the sensitive and confidential information listed above, thereby preventing the potential dissemination of such information.

This motion is based on this notice of motion and motion and the following memorandum of points and authorities; the supporting declarations of Anil Patel and Gerard Dwyer; all matters of which the Court may take judicial notice; all pleadings, evidence and documents on file in this action; and other written or oral argument that Waymo may present to the Court.

DATED:  September 26, 2017         QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC

**PRELIMINARY STATEMENT**

Due to the operative protective order in this case, Waymo produced some of its most highly sensitive engineering and finance records without troubling the Court with the concerns Waymo otherwise would have over the dissemination of sensitive, confidential information. However, the protections that have allowed the parties to freely share information amongst themselves during the discovery process cannot protect confidential information from disclosure in an open courtroom. Waymo asks this Court to close the courtroom and seal the record as to four limited categories of extraordinarily sensitive and valuable confidential business information: (1) Waymo's technical trade secrets and the specifics of how Uber uses them (only to the extent that the evidence/argument of use would reveal the trade secrets themselves); (2) the terms of Google M&A deals that are unrelated to this case and Waymo's collaboration with Lyft; (3) Waymo's non-public financial information, projections, and business plans; and (4) confidential information of Waymo's employees and former employees. There are substantial, compelling reasons to close the courtroom during testimony on these subjects. Therefore, Waymo respectfully requests that the Court close the courtroom during such testimony. While Waymo respects the right of public access to judicial proceedings, public dissemination of these limited categories of information would cause considerable harm to Waymo's competitive standing and employee privacy.

The strong public interest in protecting this kind of sensitive commercial information from disclosure outweighs the common law presumption of public access to judicial proceedings. Thus, testimony and documents that would reveal the trade secrets at issue, the terms of Google M&A deals or Waymo's collaboration with Lyft, or Waymo's financial information, projections, and business plans for the nascent self-driving vehicle industry should be shielded from public disclosure. Accordingly, Waymo asks the Court to close the courtroom whenever testimony regarding its sensitive commercial information is offered at trial, and to seal all documents and portions of transcripts discussing Waymo's sensitive commercial information. Similarly, testimony and documents that would reveal bonus payments received and future bonus payments due to

employees and former employees, and confidential information regarding investigations of employees other than Anthony Levandowski, Sameer Kshrisagar, or Radu Raduta, should be sealed. It is particularly important in this case—where information is not disseminated merely to those who attend court in person or go to the trouble of reviewing transcripts at the courthouse, but is broadly disseminated due to media interest—to shield this information from public disclosure.

## RELEVANT FACTS

Waymo provides the following background facts regarding the subject matter it seeks to seal.

**Trade Secrets.** Waymo asserts that Defendants misappropriated Waymo's trade secrets, and at trial will present testimony to prove such misappropriation of nine of its trade secrets. To prove its case, Waymo will introduce evidence that will disclose the substance of its trade secrets. Waymo will further show how Defendants use Waymo's trade secrets, which necessarily requires discussing the specifics of Waymo's technical trade secrets.

**M&A Documents.** Uber sought discovery regarding Waymo's merger and acquisition deals. This included the final agreements themselves reflecting the terms, as well as all due diligence associated with those deals or potential deals. Over Waymo's objection, Waymo was ordered to produce such documents for seven acquisitions or potential acquisitions, all of which were Google acquisitions or potential acquisitions. (Dkt. 1276.) Waymo did so. Defendants included some of those produced documents on the Trial Exhibit List. (TX 3660-3670 and 3677-3679.) These documents reflect negotiations between Google and third party entities on deal terms, as well as Google's internal discussions regarding deal terms, goals, and negotiation strategies. Google considers this information to be highly confidential. (Declaration of Anil Patel, ¶ 4.) Were this information to be made public, it would put Google at a competitive disadvantage in future deal negotiations. (*Id.*)

**Partnership with Lyft.** Uber sought and obtained discovery from Waymo regarding its partnership with Lyft, the terms of which are not public. In ordering that Waymo produce documents relating to the Waymo-Lyft deal, the Court recognized the need to protect non-party Lyft's confidential information. (Dkt. 832.) Defendants included some of the documents Waymo

-3-    CASE NO. 3:17-cv-00939-WHA
WAYMO'S MOTION TO CLOSE COURTROOM

produced on the Trial Exhibit List (TX 2110, 3458, 3550, 4987), and thus Waymo expects that Defendants will seek to introduce testimony regarding those documents and the Waymo-Lyft partnership. These documents reflect the terms of the deal, as well as Waymo's internal analysis of the partnership and negotiations. (*Id.*) Waymo considers this information to be highly confidential. (Declaration of Gerard Dwyer, ¶ 8.) Were this information to be made public, it would put Waymo at a competitive disadvantage in future partnership negotiations. (*Id.*) Further, in moving to quash Uber's subpoena for documents served on Lyft, Lyft also argued that such information is confidential. (Dkt. Dkt. 646-2.)

**Negotiations with Ford.** Waymo produced documents relating negotiations with Ford, including a term sheet Defendants included on the Trial Exhibit List. (*See e.g.*, TX 5033.) Thus, Waymo expects that Defendants will seek to rely on these documents at trial. Waymo considers this information to be highly confidential. (Dwyer Dec., ¶ 8.) Should this information become public, it would put Waymo at a competitive disadvantage in future partnership negotiations. (*Id.*)

**Waymo Financial Data, Projections, and Business Plans.** Waymo produced confidential financial data, projections and business plans, some of which are included on the Trial Exhibit List. (*See e.g.*, TX 1153, 1154, 3479, 3480, 3481, 3482, 3483.) Waymo expects that both Waymo and Defendants, as well as the parties' experts, will rely on some or all of these documents and related testimony. Waymo consider this information to be highly confidential. (Dwyer Dec., ¶ 4.) Were this information to be made public, it would put Waymo and its self-driving car business at a competitive disadvantage in the competitive and nascent self-driving car industry.

**Employment Information.** Waymo produced confidential information regarding bonus payments to participants in the Chauffeur Bonus Plan other than Anthony Levandowski, and that information is included on the Trial Exhibit List. (*See e.g.*, TX 1604.) At Defendants' insistence, this information was produced without redacting the names of the other employees. Waymo also produced documents relating to its forensic investigation of Anthony Levandowski, which reference confidential investigations of other Waymo employees or former employees. Those documents are also included on the Trial Exhibit List. (*See e.g.,* TX 2219.) Thus Waymo expects that Defendants

will rely on these materials at trial. Waymo considers this information to be private information of its employees that should be kept confidential. (Dwyer Dec., ¶¶ 12-13.)

## ARGUMENT

### I. COURTS DENY PUBLIC ACCESS TO JUDICIAL PROCEEDINGS WHEN DISCLOSURE OF CONFIDENTIAL COMMERCIAL INFORMATION COULD HARM A PARTY'S COMPETITIVE STANDING.

While there is a common law right of public access to judicial proceedings, that right is not a constitutional right, and it is "not absolute." *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978); *Hagestad v. Tragesser*, 49 F.3d 1430, 1433-34 (9th Cir. 1995) (quoting *Nixon*); *Woven Electronics Corp. v. The Advance Group, Inc.,* Nos. 89-1580, 89-1588, 1991 U.S. App. LEXIS 6004 at *17-*19 (4th Cir. April 15, 1991) ("It is also uncontested, however, that this right of access is not unlimited."); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 432 (5th Cir. 1981) ("The common law right of access certainly antedates the Constitution's free press guarantee, but it does not rise to that level of importance or merit the same degree of protection"); *In re Iowa Freedom of Information Council,* 724 F.2d 658, 664 (8th Cir. 1983) (holding that a private party's property interests in its trade secrets sufficed to override the media's First Amendment right of access).

In the Ninth Circuit, courts "start with a strong presumption in favor of [public] access to court records." *Foltz v. State Farm Mutual Auto. Insurance Company*, 331 F.3d 1122, 1135 (9th Cir. 2003). However, a party may overcome this presumption where, as here, there are "compelling reasons" as to why the confidential information should be sealed. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) ("[t]hose who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that 'compelling reasons' support secrecy").

Courts frequently deny public access when disclosure of confidential commercial information could "harm a litigant's competitive standing." *See Woven Electronics,* 1991 U.S. App. LEXIS 6004; *Nixon*, 435 U.S. at 598. *See also New York v. Microsoft Corp.*, 2002 WL

1315804 (D.D.C. 2002); *Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, 541 F. Supp. 1273, 1277 (S.D.N.Y. 1982) ("the right to attend judicial proceedings should, in appropriate circumstances, give way to the right to protect one's trade secrets"); *Zenith Radio*, 529 F. Supp. at 901 ("Judicial proceedings and records may be closed in part or in full to the public in order to protect private interests, including proprietary interest in trade secrets and other commercial information").

Because this motion was filed after the parties exchanged pretrial disclosures—which currently includes over 3,200 exhibits—and objections, but before the parties met and conferred about the various disputes and obtained pertinent Court rulings, Waymo does not know what the full scope of evidence will be at trial or what Defendants intend to introduce. Given that, Waymo made an effort to identify examples of the trial exhibits that relate to these topics, but cannot specify at this time the precise evidence that should be shielded from disclosure in open court, or the evidence or testimony that would fall within those categories. Once the parties have met and conferred regarding the parties' disclosures and objections and obtained further rulings from the Court that will define the scope of the evidence that will be presented at trial, Waymo will supplement this motion with a specific and narrowly tailored list of evidence that should not be heard in open court, along with tailored evidence and testimony justifying the request. In light of the above legal principles, Waymo does not intend to cast a wide net across everything that it has produced. Instead, Waymo limits its request to those subject matters that are truly sensitive and confidential.

## II. THERE ARE COMPELLING REASONS TO SEAL THE COURTROOM FOR EVIDENCE ON SENSITIVE AND CONFIDENTIAL SUBJECT MATTER.

### A. There are Compelling Reasons to Seal Waymo's Technical Trade Secrets.

This Court should seal the courtroom during testimony or argument regarding the technical details of Waymo's trade secrets. These trade secrets and their secrecy are at the heart of the case. Requiring the parties to discuss the details of those trade secrets in open court would destroy the secrecy of Waymo's trade secrets, undermining their very status as trade secrets. It

cannot be that the trade secrets of a party seeking to protect them by bringing a trade secret case lose their status as trade secrets. That would effectively leave trade secret owners with no redress for misappropriation of their trade secrets. Thus, there is a compelling reason to close the courtroom when the details of Waymo's trade secrets, including the specifics of how Uber is using them, are discussed. *United States v. Zhang*, 590 F. App'x 663, 667 (9th Cir. 2014) (finding the district court reasonably determined that closure was necessary to protect Marvell's trade secrets while the witness testified about the contents of the very documents that the government alleged to contain trade secrets). Waymo appreciates that this Court sealed the courtroom for hearings at which Waymo's trade secrets were discussed (*see e.g.*, Dkt. 121) and requests that the Court continue with that same approach for trial. Waymo also ask that the Court seal all documents and portions of transcripts related to this evidence.

**B.     There are Compelling Reasons to Seal Details of Google's and Waymo's Agreements and Negotiations with Third Parties.**

Based on the Joint Trial Exhibit List, Waymo believes that Defendants will introduce evidence regarding (1) the specific terms of certain Google and Waymo agreements, discussions of such terms in negotiations with third parties, and internal discussions regarding terms and negotiating strategy; and (2) the specific terms of Waymo's collaboration with Lyft, and internal discussions regarding terms and negotiating strategy. As to (1), Waymo specifically seeks to close the courtroom for discussions of Google acquisitions or potential acquisitions with seven entities: DeepMind, Waze, SCHAFT, Redwood Robotics, Apportable, JustSpotted and Path[1] (Dkt. 1276), as well as Waymo negotiations with Ford. The Court should close the courtroom when this evidence is heard because its public dissemination could harm Google and Waymo's competitive standing and bargaining power. (Patel Dec., ¶¶ 2-6; Dwyer Dec., ¶¶ 7-10).

Courts typically find that a party's interest in maintaining the confidentiality of nonpublic financial information outweighs the common law right to public access. *See e.g. Flexible*

---

[1] Defendants sought and obtained discovery into seven <u>Google</u> acquisitions or potential acquisitions. Waymo is not a party to the agreements and negotiations reflected by these documents.

1  *Benefits Council v. Feldman*, 2008 WL 4924711 (E.D. Va. 2008) (holding that Plaintiff's interest
2  in preserving the confidentiality of financial data normally unavailable to the public outweighs
3  public's interest to access); *In re Electronic Arts, Inc.*, 298 Fed. Appx. 568, 569-570 (9th Cir.
4  2008) ("pricing terms [in a contract]….is also information that plainly falls within the definition
5  of 'trade secrets'…[t]herefore, under *Kamakara* and *Nixon*, the district court erred as a matter of
6  law by concluding that EA failed to meet the 'compelling reasons' standard"); *Saint Alphonsus*
7  *Med. Ctr. - Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, No. 1:12-CV-00560-BLW, 2013 WL
8  5883736, at *1 (D. Idaho Oct. 18, 2013) (reasoning that clearing the courtroom was warranted
9  when the court found that the testimony given during the closed session typically involved some
10 combination of sensitive negotiation strategy, confidential financial projections, or personal
11 compensation information).

12         In this action, Waymo produced and Defendants included on the Trial Exhibit List certain
13 agreements, communications with third parties regarding such agreements, and internal analyses
14 regarding the terms of such agreements. Public dissemination of these agreements would harm
15 Waymo, Google, and the third parties to the negotiations and agreements. (Patel Dec., ¶¶ 2-6;
16 Dwyer Dec., ¶¶ 7-10.) A lack of Court protection of this information would severely harm
17 Waymo and Google because the information could be used by third parties as leverage in
18 negotiating deals with Waymo or Google. Waymo and Google would also suffer competitive
19 harm in having other parties know the terms to which they have agreed in these agreements.
20 This could give competitors insight into Waymo and Google's confidential corporate
21 development strategy and thus an unfair competitive advantage.

22         Further, all or almost all of these agreements contain confidentiality clauses in order to
23 protect the confidential information of Waymo, Google and the third parties with whom they
24 have entered into agreements. Most of these confidentiality clauses require that notice be given
25 to the third party signors prior to any disclosure in litigation, including timeframes during which
26 the signors may object to disclosure. This demonstrates the care the parties exercised in
27 protecting the underlying agreements. Waymo, Google and their counterparts in those
28

negotiations and agreements consider this information to be highly confidential and sensitive, and treat it as such under the confidentiality provisions negotiated and entered into by those parties. Waymo asks the Court to do the same by closing the courtroom when any evidence of the terms of these agreements and negotiations, and Waymo or Google's analyses thereof, is offered at trial; Waymo also ask that the Court seal all documents and portions of transcripts related to this evidence.

### C. There are Compelling Reasons to Seal Discussions of Non-Public Financial Data, Projections, and Business Plans.

Waymo also asks the Court to close the courtroom for any testimony related to their nonpublic financial data, projections, and business plans, and seal related portions of the record. Courts typically find that a party's interest in maintaining the confidentiality of nonpublic financial information outweighs the common law right to public access. *See e.g. Flexible Benefits Council*, 2008 WL 4924711; *Oracle Am., Inc. v. Google Inc.*, No. 10-CV-03561-WHA-DMR, 2015 WL 7775243, at *2 (N.D. Cal. Dec. 3, 2015) (public disclosure of "sensitive, non-public financial data" related to… costs, revenues, and profits, as well as projections thereof… would cause harm to Google and place it at a competitive disadvantage.)

Here, Waymo produced financial data, projections and business plans that are not disclosed to the public. (Dwyer Dec., ¶¶ 3-6.) Such information would be a gold mine to Waymo's competitors, enabling them to evaluate Waymo's plans and strategies for maintaining its spot at the head of the pack in the nascent driverless car industry. Waymo produced all of this information in good faith pursuant to the Court's protective order; it should not now face damaging public access to such materials in order to exercise its right to a trial to protect its trade secrets. Due to the obviously sensitive nature of this information, the Court should close the courtroom when any evidence of Waymo's nonpublic financial information, projections, and business plans, is offered at trial, and seal all documents and portions of transcripts related to this evidence.

**D.      There are Compelling Reasons to Seal Discussions of Employees' Salaries or Bonus Payments and Investigations Into Employees.**

Waymo also asks the Court to close the courtroom for any testimony related to salaries or bonus payments paid or due to participants in the Chauffeur Bonus Plan or other Waymo employees, and the names of employees who were investigated other than Anthony Levandowski, Sameer Kshrisagar, or Radu Raduta.  Courts find such information to be private. *See e.g.*, *Painting Indus. of Hawaii Mkt. Recovery Fund v. U.S. Dep't of Air Force*, 26 F.3d 1479, 1483–84 (9th Cir. 1994) (finding significant privacy interests in particularized information about wages).  The information at issue reflects private, human resources information of Waymo employees.  Specifically, it reflects the precise dollar amounts of bonuses received under the Chauffeur Bonus Plan by each participant.  It also reflects estimates of the amounts that current employees on the Plan will receive on the next payout date, and other compensation or bonuses that may have been received.  Such information is the private financial information of Waymo employees and should not be publicly disclosed.  (Dwyer Dec., ¶¶ 11-12.)

Similarly, documents Waymo produced identify other employees who were investigated.  Those investigations were confidential and the employees may not have even known they were being investigated.  This information should not be publicly disseminated such that those employees, their colleagues, and the public, know that they were under investigation.  Not only would such knowledge be potentially bad for morale within Waymo, but could have negative implications in these employees' lives beyond simply within Waymo.  (Dwyer Dec., ¶¶ 11, 13.)  Indeed, Magistrate Judge Corley agreed that such information should be kept confidential.  (Dkt. 1241, 8/31/17 Hearing Tr., 84:2-85:1 ("I agree we don't want that necessarily to be public, because we don't want to cast aspersions on somebody.")

Due to the obviously sensitive nature of this information, the Court should close the courtroom when any evidence of salary or bonus information paid or due to specific Waymo employees is discussed.  With respect to Waymo's investigations, the Court should either close the courtroom when any evidence is discussed, or instruct counsel and witnesses to present such

testimony in a way that the names of other investigated employees are not disclosed to the public. (Dwyer Dec., ¶¶ 11-13.)

## CONCLUSION

For the foregoing reasons, Waymo respectfully requests that the Court close the courtroom for testimony or argument regarding: (1) Waymo's technical trade secrets and the specifics of how Uber uses them; (2) the terms of unrelated Google M&A deals, Waymo's partnership with Lyft, and Waymo's negotiations with Ford; (3) Waymo's non-public financial information, projections, and business plans; and (4) confidential information of its employees and former employees.

DATED: September 26, 2017           Respectfully submitted,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Attorneys for WAYMO LLC