# RAMSEY | EHRLICH LLP

ATTORNEYS AT LAW

Miles F. Ehrlich, *Partner*
Direct Line: (510) 548-3603
Fax No.: (510) 291-3060
miles@ramsey-ehrlich.com

September 26, 2017

Honorable Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Avenue
Courtroom F - 15th Floor
San Francisco, CA 94102

Re: ***Waymo LLC v. Uber Tech., Inc., et al.*, Case No. 3:17-cv-00939-WHA**
Anthony Levandowski's Letter Brief Re: Waymo's Motion to Compel Inspection of Images (Dkt. 1785)

Dear Judge Corley:

On behalf of our client, Anthony Levandowski, this letter responds to Waymo's Motion to Compel inspection of the images of devices provided to Stroz Friedberg ("Stroz") (Dkt. 1785)

Mr. Levandowski submitted a number of digital devices to Stroz in connection with its due diligence investigation. Some of these devices (the ones deemed pertinent by Stroz) had their contents harvested and imported into a Relativity database, to which Waymo has now had access since September 18, 2017. Other devices were not reviewed by Stroz, or by anyone else, but were instead kept at Stroz in a proverbial "vault" from March 2016 through today. Mr. Levandowski has not had access to these devices, or their contents, since he delivered them to Stroz in late March 2016.

Waymo has now moved to compel inspection of all native devices provided by Mr. Levandowski (along with the other diligenced employees) to (1) obtain forensic information, (2) review content that was not loaded into (or accessible through) the Relativity database, and (3) to review content on the devices that were never examined by Stroz. We address each item in turn.

**Forensic Examination**.  This morning, Waymo's counsel proposed a forensic review protocol for the technical examination of forensic artifacts and metadata on the devices to be performed by Stroz and then provided to their vendor, Discovia.  We are agreed in principle that the proposed forensic examination is acceptable, so long as (1) it does not involve any review of content (which appears to be the intent), and (2) that we be provided with a duplicate set of any data or information extracted from Mr. Levandowski's devices, as well any reports Stroz or Discovia prepare concerning the forensic review of his devices, at the same time that they are provided to Waymo's counsel.

**Content Review of Devices Imported into Relativity**.  Next, Waymo contends that it should be permitted to inspect the *content* of the imaged devices that were already harvested into the Relativity database (1) because source code and video files are not contained within, or accessible through, the Relativity database and (2) because Waymo wants to "independently verify" that the materials on Relativity are "complete."  (Dkt. 1785 at 3).

As to the file types that were not loaded onto Relativity, Mr. Levandowski has no objection to Waymo's inspection of those files under its proposed protocol.  But given that these devices contain attorney-client communications and highly private materials that Mr. Levandowski already worked diligently to screen from review (with second-level review by Special Master Cooper where necessary), this new inspection should not be an opportunity to circumvent the privilege and privacy limitations already imposed.  Thus, as to this set of devices, the inspection protocol should limit any inspection to files that Stroz was unable to extract into Relativity (i.e., the source code files and video files identified by Waymo).

Further, Mr. Levandowski has no problem with Waymo taking steps to "verify" that the Relativity database is "complete," but presumably a manual, document-by-document review of these native devices is not the most effective or efficient path to obtain such verification.  If there is a way to confirm the completeness of the Relativity database that does not involve intruding upon either privilege- or privacy-screened content, Mr. Levandowski has no objection.

**Inspection of Unexamined Native Devices**.  Finally, Waymo seeks permission to review the contents of computers provided by Mr. Levandowski that were "not imaged, processed, or reviewed by anyone at Stroz" Dkt. 1785 at 2.  This apparently involves more than one hundred hard drives.  *Id.*  Since Mr. Levandowski (and his counsel) have not had access to these devices since the lawsuit was filed, we have had no opportunity to conduct any privilege or privacy screening of any sort.  And, as Waymo notes, there is no practical way to apply such screening to native device images.

*Magistrate Judge Jacqueline Scott Corley*
*September 26, 2017*
*Page 3*

Giving the impending trial date, and the time pressures on all parties, Mr. Levandowski has no objection to Waymo's proposed protocol for inspecting the content on these unexamined devices, subject to four important caveats:

> (1) that Mr. Levandowski receive a copy of any data or documents extracted from these unexamined devices at the same time that Discovia provides it to Waymo,

> (2) that Mr. Levandowski be afforded the same "clawback" rights over any privileged or private documents produced to Waymo that has governed the existing review and production from the Stroz Relativity database,

> (3) that Waymo agree to a reasonable, and mutually acceptable, schedule that will enable Mr. Levandowski's counsel to be present for the duration of the inspections, and

> (4) that the inspection (as to Mr. Levandowski) be limited to one computer terminal at a time.

Respectfully submitted,

*/s/ Miles Ehrlich*

Miles Ehrlich

cc:     Counsel of record (via ECF); Special Master John Cooper