JONATHAN A. PATCHEN
ATTORNEY
jpatchen@taylorpatchen.com

TAYLOR & PATCHEN, LLP

September 26, 2017

Honorable Jacqueline Scott Corley    **REDACTED VERSION OF**
United States District Court         **DOCUMENT SOUGHT TO BE**
Northern District of California      **SEALED**
450 Golden Gate Avenue
Courtroom F - 15th Floor
San Francisco, CA 94102

Re:  *Waymo LLC v. Uber Technologies, Inc., et al.*, Case No. 3:17-cv-00939-WHA
     Lior Ron's Letter Brief Re: Waymo's Motion to Compel Inspection of Images
     (Dkt. 1785)

Dear Judge Corley:

We write on behalf of Lior Ron regarding Waymo's Motion to Compel inspection of images of the devices provided to Stroz Friedberg ("Stroz"). (Dkt. 1785).

In connection with the due diligence conducted by Stroz, Mr. Ron (among others) submitted a number of devices to Stroz. Stroz imaged those devices. Most of the files on those images were imported into a Relativity database, which has been made available for Waymo's review. Pursuant to this Court's direction on September 14, 2017, a small number of those documents were removed for privilege and privacy concerns. Waymo has had access to the remainder of the documents in the Relativity database since September 18, 2017.[1]

Waymo now seeks to compel inspection of the underlying documents on the native devices themselves, identifying three categories of inspection: forensic examination of the devices, content examination of the devices extracted to Relativity, and content examination of the devices not extracted to Relativity. We address each in turn.

---

[1] Waymo suggests that Mr. Ron and others were using the privacy screen to "improperly shield" relevant material. (Dkt. 1785, n.2) Not so. ███████████████████████████
████████████████████████████████████████████████ (Dkt. 1785, Ex. 2). And many of the "hits" were false positives. As just one example, the "hits" included escrow documents related to the purchase of a house where one of the people involved had the name "Dennis Otto."

TAYLOR & PATCHEN, LLP

Magistrate Judge Jacqueline Scott Corley
September 26, 2017
Page 2

Forensic Examination.  Although Waymo opens its brief with a focus on forensic examination, (Dkt. 1785 at 1 (arguing that it needs to understand, for example, how "files got onto Mr. Levandowski's personal computer and where they were transferred . . . .")), Waymo circulated its proposal with respect to the forensic examination of the devices at 9:50 AM this morning and Mr. Ron's counsel participated in a conference call at 1:30 PM today to clarify some issues . See Declaration of Jonathan A. Patchen ("Patchen Decl.") ¶ 2, Ex. 1 (9/26/2017 e-mail from L. Brewer to Counsel).  Mr. Ron's counsel is still in the process of reviewing this protocol, but Mr. Ron agrees in principle to the inspection of these devices by Discovia, Waymo's forensic vendor, for the purpose of determining technical information related to the devices, such as file transfer history, information regarding which devices were plugged into the machine, and so on (but not content) subject to the standard clawback and escalation rights the parties have implemented with respect to Waymo's review of the Stroz Relativity database.

Content Inspection of Exported Images.  Waymo argues that it should be permitted to inspect the *content* of the imaged devices from which the Relativity database was extracted (1) because certain file types were not loaded into the Relativity database and (2) Waymo seeks to "independently verify" that the materials on Relativity are "complete."  (Dkt. 1785 at 2).

As to the files types that were not loaded onto Relativity, Mr. Ron has no objection to Waymo's inspection of those files according to its proposed protocol, with one caveat:  the inspection protocol should limit the files to be inspected to files of the type Stroz could not extract to Relativity (i.e., the source code files and video files identified by Waymo).  In other words, the inspection of the imaged devices' contents should not be a backdoor to inspect documents that were screened at the Relativity level for privilege and privacy.  And Waymo fails to justify the need to unravel the protocol that has been implemented to protect the disclosure of these documents by having access to them under a nominally supervised review.

Regarding Waymo's claimed need to "verify" that the Relativity database is "complete," the Court has already ruled on this:  Waymo needs to depose Mr. Friedberg (scheduled for September 28) and, from that deposition, provide the Court with an "inkling" of why Waymo believes the Relativity database is different from the extracted native files.  Patchen Decl. ¶ 3, Ex. 2 (Sept. 18, 2017 Hr'g Tr. At 19:1-13.)  Waymo offers no persuasive reason to depart from this approach.  Nonetheless, Mr. Ron is open to any forensic or mechanical means—which does not depend on the review of the screened content, but rather focuses on metadata relating to the number of files or the like—to verify that the database is "complete."

Taylor & Patchen, llp

Magistrate Judge Jacqueline Scott Corley
September 26, 2017
Page 3

Inspection of the Non-Exported Images.  Mr. Ron understands that the materials not "imaged, processed, or reviewed by anyone at Stroz" are limited to Mr. Levandowski's materials.  As such, Mr. Ron expresses no opinion as to whether and to what extent Waymo's proposed protocol is sufficient in that context.

Mr. Ron respectfully requests the Court consider the foregoing as it determines the proper protocol to be implemented in this matter.

Respectfully submitted,

*/s/ Jonathan A. Patchen*

Jonathan A. Patchen

cc:     Counsel of record (via ECF); Special Master John Cooper