QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>      vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO LLC'S OPPOSITION TO DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER REGARDING SUBPOENAS TO YOO AND GONZÁLEZ** |

**PRELIMINARY STATEMENT**

Uber's Motion puts three separate issues into a single omnibus filing that conflates the applicable standards—none of which Uber satisfies. Uber's Motion should be denied.

First, Defendants' motion for a protective order preventing Ms. Yoo's deposition should be denied. Ms. Yoo possesses information central to Waymo's case—among other things, her top-down view of the diligence conducted by Stroz and the impact on Uber's decision-making process is vital to evaluating the adequacy of that diligence. Her status as an attorney is irrelevant given that in this case, lawyers are fact witnesses with knowledge of the Uber-Otto acquisition and the diligence process. Moreover, lawyers directly involved with formulating Defendants' litigation strategy are already scheduled to be deposed and Defendants affirmatively intend to rely on their testimony at trial. Defendants do not show that deposing Ms. Yoo will create further prejudice. And given that her status as an attorney is irrelevant, Defendants failed to carry their burden in showing why she should not be deposed.

Similarly, Defendants have not met their burden of showing why Ms. Yoo should not testify. Defendants' bare-bones pleading is also premature given that Ms. Yoo has not yet been deposed and they cannot show that her testimony will *not* yield non-duplicative, probative information.

Finally, Waymo will only call Arturo González as a trial witness if Uber puts at issue its litigation conduct or disputes its acquisition of Waymo confidential information through means other than discovery in this case. This testimony was explicitly contemplated by the Court in connection with Waymo's motion for an Order to Show Cause. Waymo has no intention of calling Mr. González for any other purpose.

**ARGUMENT**

**I.   DEFENDANTS' REQUEST FOR A PROTECTIVE ORDER PROHIBITING SALLE YOO'S DEPOSITION SHOULD BE DENIED.**

Defendants request for a protective order prohibiting Waymo from deposing Ms. Yoo is groundless and should be denied.

### A. Defendants Misapply The Standard.

Generally, "those opposing discovery are required to carry a heavy burden of showing why discovery should be denied" and "[a] strong showing is required before a party will be denied entirely the right to take a deposition." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Defendants claim that the so-called "*Shelton* standard" reverses this burden and mechanistically exempts all lawyers—whether trial, non-trial, outside, or in-house—from deposition absent a showing that "(1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case." Mot. at 2 (citing *Fed. Trade Comm'n v. DirectTV, Inc.*, No. 15-CV-01129HSG (MEJ), 2017 WL 1741137 (N.D. Cal. May 3, 2016) (in turn citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)). Defendants are mistaken.

Six years after deciding *Shelton*, the Eighth Circuit clarified that the *Shelton* test "was intended to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002); *see also Shelton*, 805 F.2d at 1327 (parties should not be permitted to short-circuit discovery based on "wits borrowed from the adversary") (citation omitted). "*Pamida* makes clear that the three *Shelton* criteria apply to limit deposition questions of attorneys in *only* two instances: (1) when trial and/or litigation counsel are being deposed, and (2) when such questioning would expose litigation strategy in the pending case." *U.S. v. Philip Morris Inc.*, 209 F.R.D. 13, 17 (D.D.C. 2002) (emphasis added). Thus, "[n]ot all lawyers are automatically considered "opposing counsel" for purposes of the *Shelton* test . . . [t]he "critical factor . . . is the extent of the lawyer's involvement in the pending litigation." *Garza v. New Breed Logistics, Inc.*, No. 4:11-CV-161-Y, 2011 WL 13154074, at *4 (N.D. Tex. Nov. 16, 2011) (citation and quotation marks omitted). If a lawyer "has knowledge of relevant facts related to the subject matter of the litigation, and is merely advising the client with respect to the lawsuit, *Shelton* does not apply." *Murphy v. Adelphia Recovery Trust*, No. 3-09-MC-105-B, 2009 WL 4755368, at *3 (N.D. Tex. Nov. 3, 2009). And "courts have recognized that there

*are* circumstances under which the deposition of a party's attorney will be both necessary and appropriate, for example, where the attorney is a fact witness, such as an 'actor or a viewer,'" or where "an attorney [is] the person with the best information concerning nonprivileged matters relevant to a lawsuit." *Am. Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 588 (S.D. Cal. 1995) (emphasis in original) (collecting cases).[1]

Here, Defendants do not contend that Ms. Yoo is involved, intimately or otherwise, with Defendants' preparation for trial. Ms. Yoo has neither appeared in this case nor separately shown why she should be considered "trial counsel." *See, e.g.*, *Philip Morris Inc.*, 209 F.R.D. at 18 (denying motion to quash depositions of in-house counsel because "unlike *Shelton*, the proposed deponents are not litigation or trial counsel"). Moreover, Defendants' view that deposing any attorney requires overcoming a very high barrier contrasts sharply with their admission in their Initial Disclosures that other lawyers, each more likely than Ms. Yoo to be termed "trial counsel" or have detailed knowledge of Defendants' litigation strategy (including MoFo attorneys Rudy Kim and Eric Tate, and Uber's head of litigation Angela Padilla and legal director Justin Suhr), in fact have discoverable information. *See* Dkt. 1566-4 (Defts' Initial Disclosures) at 14, 16. Indeed, Defendants' own Trial Witness List includes several of these attorneys. (Dkt. 1725-4.) Other than the fact that Ms. Yoo is a lawyer, Defendants do not point to additional concerns arising from deposing her and provide no rationale for why a request to depose her should be judged any differently from Waymo's requests for depositions of Defendants' other lawyers. And permitting Defendants to depose and call only the lawyers they themselves deem necessary while prohibiting discovery of others would undermine the discovery

---

[1] The Ninth Circuit has never adopted *Shelton*. Moreover, then-Judge Sotomayor, writing for the Second Circuit, explicitly rejected *Shelton*'s requirement that the party seeking deposition "must demonstrate that the [proposed] deposition is the only practical means of obtaining the information." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) (Sotomayor, J.). The Second Circuit held that Rule 26 requires a "flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Id.* at 71-72.

process by allowing Defendants to pick and choose exactly what is disclosed for their own benefit. Defendants admit Ms. Yoo had first-hand factual knowledge of, among other things, the "diligence questionnaire, the draft Levandowski memorandum, and status updates on parts of Stroz's investigation." Mot. at 4. As Defendants admit that Ms. Yoo has knowledge of the facts underlying this case, but have made no showing that she is actively involved with litigating it, Defendants retain the heavy burden of showing why deposing her would be improper.[2]

**B.     Waymo Has Met The Standard To Depose Ms. Yoo.**

Regardless of whether *Shelton* actually applies, Waymo has definitively shown that Ms. Yoo's deposition is vital to its case.

1.     *Ms. Yoo Has Access To Crucial Facts*

Documents previously withheld by Defendants, and only produced within the past week, show that Ms. Yoo was heavily involved in the Stroz due diligence process. For example, she joined a call with John Gardner (Levandowski's lawyer) and Cameron Poetzscher (Uber employee central to Otto acquisition) on April 10, 2016—the day before the Put-Call Agreement was signed based on Mr. Kalanick's report to Uber's Board that the diligence process had come back ▮▮▮ (Dkt. 1548-10 at 2)—related to an oral interim report on the status of Stroz's investigation, including regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See*, *e.g.*, Dkt. 1789-8, Ex. 9 [UBER00319786].) The day before, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (that has been redacted from Waymo). (Dkt. 1789-8,

---

[2] Waymo is not to blame for the fact that Defendants' lawyers possess the information on the acquisition at the heart of this case. *See* Dkt. 1566-4 at 14, 16, 31 (listing attorneys Eric Tate, Angela Padilla, Rudy Kim, John Gardner, and Justin Suhr as possessing information regarding the acquisition of Ottomotto and associated diligence). Waymo should not be penalized for this fact any more than Defendants should be rewarded for attempting to cloak their actions in privilege. *See Garza*, 2011 WL 2011 WL 13154074, at *5 n.4 ("If courts allow *Shelton* to apply whenever an attorney merely acts as a legal advisor to a defendant, without requiring more connection to the litigation process itself, defendants could immunize themselves from discovery on key issues . . . .") (citation omitted).

1  Ex. 10 [UBER00314130].)  Other documents produced this week show that ███████████
2  ████████████████████████████████████████████████████████ (Dkt. 1789-8, Ex. 11
3  [UBER00324346]) and ████████████████████████████████████ (Dkt. 1789-8, Ex. 12
4  [UBER00324350])—although these and other documents in Production Uber 154 are missing
5  crucial metadata indicating **when** ██████████████████████—metadata which has still not
6  been provided.  (*See*, *e.g.*, Dkt. 1790-5 [9/23/2017 J. Judah email]; Dkt. 1790-3 [9/24/2017 J.
7  Judah email].)

8         Other documents improperly withheld by Defendants and only produced in the past few
9  days also justify deposing Ms. Yoo.  For example, a document that was ordered produced by the
10 Court on September 11 (Dkt. 1506), but was not produced until September 22, is an email from
11 ████████████████████████████████████████████████████████████████████████
12 ██████████████████████████████████████████████████████████████ (Dkt. 1789-9,
13 Ex. 15 [UBER00324612].)  In that email, Ms. Padilla wrote, ████████████████████████
14 ████████████████████████████████████████████████████████████████
15 ██████████████████████████████████████████████████████████████████████
16 ██████████████████████████████████████████████████████████████████
17 ███████████████████████████████ Mr. Levandowski apparently refused to cooperate
18 with this request, yet remained in full control of Uber's self-driving car program (including
19 LiDAR) for more than a week, worked with Uber's lawyers on litigation strategy for at least
20 another two weeks (*see*, *e.g.*, Dkt. 1501-33 [UBER00065191] ████████████████████
21 ██████████████████████████████████████████████████████████, and
22 was not fired for over a month.  In turn, the newly produced April 20 email sheds further light on
23 earlier produced documents, such as the May 15 letter requesting Mr. Levandowski's
24 cooperation with PI Compliance (Dkt. 466-2) and the May 26 letter firing Mr. Levandowski
25 (Dkt. 519-2)—both of which were signed by Ms. Yoo herself.
26         To be clear, the documents cited above represent what Waymo was able to gather under
27 extreme time pressure.  Based on what Waymo has seen so far in Defendants' previously
28

withheld documents, additional review will reveal additional participation by Ms. Yoo. Were discovery into these withheld documents on a less expedited schedule, Waymo might have been able to first depose more junior lawyers to shore up Ms. Yoo's unique knowledge. But Defendants opposed Waymo's motion to continue the trial date in light of the late-production of the Stroz report and related documents, forcing quick action to complete discovery by October 10. Waymo does not have the luxury of waiting to depose other witnesses before seeking to depose Ms. Yoo. Defendants should not be permitted to game the discovery process by forcing quick depositions before an October 10 trial date, delaying production of information that would support the depositions sought, and then claiming there is no basis for the depositions.

2.    *Defendants' Objections Under the Shelton Standard Do Not Apply*

Defendants claim that they are entitled to a protective order prohibiting Waymo from deposing Ms. Yoo because (1) other means exist for obtaining the same information, (2) Waymo has not identified any non-privileged, unique facts that Ms. Yoo could testify to, and (3) Ms. Yoo's testimony is not crucial to Waymo's case. Mot. at 6. None of these arguments, which ultimately boil down to an assertion that Ms. Yoo's testimony would be duplicative, hold water.

Initially, Defendants' assertion that Ms. Yoo's factual knowledge is privileged is contrary to this Court's order and the Federal Circuit opinion. Waymo is now conducting expedited discovery on the eve of trial because Defendants withheld documents on the basis of privilege which this Court determined *were not privileged.* Waymo seeks Ms. Yoo's testimony regarding that non-privileged information.

Defendants claim that Ms. Yoo should be exempt from being deposed because she was "merely copied" on a certain email, Waymo will shortly depose "every other individual" on other emails, and other deponents will testify regarding the diligence process. Mot. at 4-5. This argument entirely misses the information Waymo seeks by deposing Ms. Yoo. While a 30(b)(6) witness or the senders or recipients of emails may be able to provide *their own views*, they cannot provide *Ms. Yoo's own understanding* of the emails she sent and received, the meetings she attended, and the documents she reviewed. Her understanding is particularly important

1  given her executive position at Uber, and her potential involvement with both the litigation- and
2  transaction-focused aspects of the company's decision-making.  Her testimony not only carries
3  great weight commensurate with her responsibility, but could lead to additional discovery in
4  areas other deponents, such as the head of litigation, could not provide.  Moreover, the presence
5  of multiple individuals on these communications only heightens the need to depose Ms. Yoo, as
6  any disagreement between her version of events and those of other witnesses will be highly
7  relevant to Waymo's case.  Defendants provide no support for their apparent belief that if more
8  than one individual was on a vital email or attended a crucial meeting, than only one may be
9  deposed, and indeed, that is not the law.  Defendants have also taken the exact opposition
10 position when seeking additional depositions from Waymo.  (*See* Dkt. 1438 (Defendants move to
11 compel four depositions based on a single document that four individuals).)

## C. The "Apex Doctrine" Does Not Apply.

13  Defendants' request that the Court prohibit Ms. Yoo's deposition under the "apex
14 doctrine" is groundless as shown by the cases Defendants cite.  *First*, the "apex deponent"
15 doctrine "does not apply to individuals with firsthand knowledge of relevant information" where
16 that knowledge is unique.  *Affinity Labs of Texas v. Apple, Inc.*, No. C 09-4436 CW JL, 2011 WL
17 1753982, at *2 (N.D. Cal. May 9, 2011) (cited in Mot. at 3); *see also Apple Inc. v. Samsung
18 Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) ("When a witness has personal knowledge
19 of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition.")
20 (citation omitted) (cited in Mot. at 3).  The limited information Waymo has been able to review
21 only confirms that Ms. Yoo had first-hand knowledge of the Stroz investigation and Mr.
22 Levandowski's termination and will be able to provide a unique perspective on the same.  *See
23 supra* § I.B.  Similarly, Defendants themselves admit Ms. Yoo had personal knowledge of the
24 "diligence questionnaire, the draft Levandowski memorandum, and status updates on parts of
25 Stroz's investigation."  Mot. at 4.  This knowledge precludes application of the "apex deponent"
26 doctrine.

*Second*, "a party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied [and t]hus, it is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances." *Apple*, 282 F.R.D. at 263 (citations omitted); *see also Affinity Labs*, 2011 WL 1753982, at *2 (similar).  As Defendants have articulated no actual burden from deposing Ms. Yoo, who has personal knowledge of the facts underlying this matter, and whose very job is to supervise Defendants' legal matters, the "apex doctrine" does not apply, or should at most limit the amount of time for Ms. Yoo's deposition. *See, e.g.*, *Apple*, 282 F.R.D. at 263 (granting motion to compel deposition with respect to five of six requested "apex" deponents, but limiting the time granted); *In re Google Litig.*, No. C 08-03172 RMW PSG, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011) (granting three-hour apex deposition of Google's Larry Page) (cited on Mot. at 3).

And *third*, while the "apex doctrine" may limit "the immediate deposition of high-level executives . . . *before* the depositions of lower level employees with more intimate knowledge of the case," *Mehmet v. PayPal, Inc.*, No 5:08 CV 1961, 2009 WL 921637, at *2 (N.D. Cal. Apr. 3, 2009) (emphasis in original) (collecting cases) (cited in Mot. at 3), here Waymo has sought to depose other more junior attorneys.  *See, e.g.*, Mot. at 4 (noting that "Waymo will be deposing Uber's head of litigation . . . and legal director").  But, given the expedited discovery schedule, Waymo does not have the luxury of completing those depositions before it can request Ms. Yoo's deposition.

## II.  DEFENDANTS HAVE FAILED TO MEET THEIR HEAVY BURDEN TO QUASH WAYMO'S TRIAL SUBPOENA TO SALLE YOO.

Defendants' request to quash Ms. Yoo's trial subpoena is unsupported and should be denied.  Defendants cite Rule 45 in claiming that Ms. Yoo's trial subpoena both "requires disclosure of privileged [information]" and subjects Defendants to "undue burden." Mot. at 1, 5.  While they nowhere mention this, Defendants themselves bear a heavy burden in demonstrating their entitlement to relief.  *See Kirschner v. Klemons*, No. 99 CIV. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) ("[T]he party seeking to quash a subpoena bears a

heavy burden of proof.") (quoting *Irons v. Karceski,* 74 F.3d 1262, 1264 (D.C. Cir. 1995)) (cited in Mot. at 6). Defendants cannot make this showing.

Defendants have not and cannot show any actual "burden" accruing to them from Ms. Yoo's testimony. Ms. Yoo will not be forced to travel far to testify and refreshing her memory of recent events will not be onerous. Instead, Defendants claim that Ms. Yoo's testimony is "irrelevant," both because her testimony would be "redundant" and (redundantly) because "there are no non-privileged, non-duplicative facts to which Ms. Yoo could testify." Mot. at 6. As detailed above, based on the late-produced documents reviewed so far, this simply is not true, as no other party or source can provide Ms. Yoo's perspective on the materials and transactions central to this case. In addition, Defendants' motion is premature given their opposition to deposition. Defendants bear the burden of showing that Ms. Yoo's testimony would be improper; a deposition is the mechanism by which Defendants, Waymo, and this Court can evaluate Ms. Yoo's anticipated trial testimony. By seeking to prevent that deposition, Defendants have effectively, and without citing authority, attempted to shift onto Waymo the burden of showing that Ms. Yoo's trial testimony is necessary. But by seeking to prevent Ms. Yoo's deposition, Defendants have also deprived themselves of the means to demonstrate that her testimony is in fact "irrelevant" or "duplicative." Defendants cannot have it both ways; they cannot prevent Ms. Yoo's from being deposed (which might establish that there is no need for her to testify at trial) then claim that the lack of non-redundant testimony justifies quashing her trial subpoena.

### III. DEFENDANTS HAVE FAILED TO MEET THEIR HEAVY BURDEN TO QUASH WAYMO'S TRIAL SUBPOENA TO ARTURO GONZÁLEZ.

Defendants further seek to quash a trial subpoena Waymo served on Arturo González. Waymo subpoenaed Mr. González based on this Court's comments at the August 16 hearing on Waymo's Order to Show Cause: The Court (to Mr. González): [redacted]

1 ████████████████████████████████████████████████████████████████

2 ███████████ (Dkt. 1260, 8/16/17 Hr'g Tr. 29:19-22; 30:6-8.)  Waymo does not intend to call Mr. González as a witness unless Defendants open the door by claiming that they complied with their discovery obligations.  Waymo advised Uber of this earlier today.  (Ex. 1 [9/26/17 D. Perlson email].)  Accordingly, so long as Uber does not tread on the same ground that led this Court to conclude that it may call Mr. González to the stand, Waymo does not plan to call him, and there is no dispute that this Court needs to resolve.

## CONCLUSION

For the foregoing reasons, Waymo respectfully requests that the Court deny the Motion's request to (a) issue a protective order prohibiting the deposition of Ms. Yoo and (b) quash the trial subpoenas to Ms. Yoo and Mr. González.

DATED:  September 26, 2017            Respectfully submitted,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Attorneys for WAYMO LLC