MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

September 26, 2017

Writer's Direct Contact
+1 (415) 268.7020
AGonzalez@mofo.com

The Honorable Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse
Courtroom F - 15th Floor
450 Golden Gate Avenue
San Francisco, CA  94102

Re:   *Waymo LLC v. Uber Technologies, Inc. et al.,* Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Defendants Uber Technologies, Inc. and Ottomotto LLC ("Uber") submit this response to Waymo's motion to 1) compel 10 additional depositions (of Max Levandowski, Asheem Linaval, Dan Gruver, Dan Ratner, Salle Yoo, Christian Lymn, Andrew Glickman, Eric Amdursky, Alisa Baker, and a supplemental Rule 30(b)(6) designee on Waymo's Topic No. 3); and 2) grant Waymo eight additional interrogatories and order Defendants to respond to all of Waymo's interrogatories (including supplementation of existing interrogatories) within seven days.  (Dkt. 1789-4.)

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

sf-3826210

MORRISON | FOERSTER

The Honorable Jacqueline Scott Corley
September 26, 2017
Page Two


Using the Federal Circuit's order regarding the Stroz Report as a pretext, Waymo now seeks to re-open fact discovery, demanding (for the first time) depositions and written discovery it could previously have requested, but never did. Waymo's demands appear to be little more than coordinated harassment, improperly seeking the depositions of three Uber in-house lawyers in addition to the two it will depose (including Uber's Chief Legal Officer) and asking multiple Uber engineers to sit for their *third* deposition on issues having nothing to do with the Stroz Report. Given that *fifteen* Stroz-related depositions are already scheduled, Waymo's motion can only be seen as a tactic to prop up its pending motion to continue the trial date. Waymo's myriad unsupported requests to re-open discovery should be denied.

I.   **Waymo Had Ample Opportunity to Question Ottomotto's LiDAR Engineers on All Relevant Issues, and There is No Basis to Re-Open Any Depositions or Depose an Additional, Previously Disclosed Engineer**

Waymo has not shown good cause to demand the depositions of Asheem Linaval and Dan Gruver (both for the third time), Max Levandowski (for the second time), and Dan Ratner (who has been mentioned in depositions over 20 times).

Waymo's purported basis for seeking these depositions is that recently produced due diligence documents indicate that they were involved in the development of Ottomotto's "laser concepts." But Waymo has questioned Messrs. Linval and Gruver extensively about this precise issue. (*See, e.g.*, Gonzalez Decl. Ex. 1 at 154:6-165:7, in which Mr. Linaval is asked to "trace through the extent to which anything that was developed at Tyto … currently exists at Uber," and provides responsive testimony for ten pages; *id*. Ex. 2 at 16:24-17:18, in which Mr. Gruver testifies that "in the first month or so at 280 Systems," he "spent the majority of [his] time evaluating lidar sensors" because of his "past experience [at Google] evaluating lidar"; *id*. at 27:7-30:21, in which Mr. Gruver testifies about the extent of his knowledge as to whether Spider was derived from Google's LiDAR design, as well as the extent of his knowledge about and involvement in the Stroz due diligence.) Waymo has also elicited deposition testimony from numerous other witnesses regarding Max Levandowski's role in developing Otto's initial LiDAR concepts, and chose not to seek further discovery on his involvement when it had the chance. (*Id*. Ex 2 at 23:5-8, 31:21-32:4; *id*. Ex. 3, Haslim Dep. 28:18-29:15, 98:2-25.)

Similarly, Waymo has long-known about Mr. Ratner's role in Ottomotto's LiDAR development efforts, yet chose not to seek his deposition during fact discovery. Indeed, Mr. Ratner's name came up 37 times during depositions, first at Mr. Haslim's deposition on April 18, and again in 11 more depositions in the following months. For example, Max Levandowski testified that Mr. Ratner gave him "a lot of input on how to design the mechanical" aspects of the Spider LiDAR cavity. (Gonzalez Decl. Ex. 4 at 141:11-16, 142:11-14), and Mr. Gruver testified that he discussed ▓▓▓▓▓▓ for the LiDAR system

MORRISON | FOERSTER

The Honorable Jacqueline Scott Corley
September 26, 2017
Page Three

being developed at 280 Systems with Anthony Levandowski and Mr. Ratner.  (*Id.* Ex. 2 at 251:15-254:1.)  Notably, Mr. Ratner is listed only on a concept document about long-range laser designs.  (Dkt. 1789-7.)  Waymo fails to mention that Uber is not working on any long-range laser product, and any testimony regarding the long-range laser would be irrelevant.

Waymo also resorts to false claims about Mr. Linaval's and Max Levandowski's potential knowledge regarding 
(Gonzalez Decl. Ex. 4 at 168:5-10.)

As a final note, Waymo's brief leads with the argument that the information it seeks from these witnesses is relevant to "Waymo's theory that Otto's price tag could not have been justified without misappropriated trade secrets in the bargain."  (Dkt. 1789-4 at 1.)  Yet this theory crumbled once Waymo learned that Uber paid only              for Ottomotto, and that the remaining consideration depended upon the future achievement of highly demanding milestones, none of which have been met to date.

Waymo does not cite any new information about which it did not previously have the opportunity to question these individuals, and it cannot use Uber's recent productions to baldly claim prejudice in a transparent attempt to re-open discovery.

**II.   Waymo Has No Basis for Seeking the Depositions of Additional Attorneys Waymo Has Known of for Months and Whose Testimony Is Cumulative**

Waymo is already taking 15 fact witness depositions that will include Stroz-related issues, including the depositions of three Uber in-house counsel (one of whom, Adam Bentley, was outside counsel at O'Melveny for Ottomotto and then in-house counsel at Ottomotto during the relevant time period) and two MoFo partners.  Uber has met-and-conferred with Waymo in good faith about its extensive requests, and agreed to provide Waymo with three additional hours of deposition time with Travis Kalanick and Adam Bentley.  Waymo's remaining requests are cumulative, burdensome, and untimely.

sf-3826210

MORRISON | FOERSTER

The Honorable Jacqueline Scott Corley
September 26, 2017
Page Four

### A. Salle Yoo[1]

Waymo's primary reason for seeking testimony from Uber's Chief Legal Officer, Ms. Yoo, is that she was "involved in the Stroz due diligence process." (Dkt. 1789-4 at 3.) Waymo supports this assertion by referencing emails and calls between MoFo attorney Eric Tate, Anthony Levandowski's attorney John Gardner, Uber executive Cameron Poetzscher, and Ms. Yoo. Later this week, Waymo will be deposing every other individual on these emails. Waymo offers no explanation why those depositions will not be sufficient for Waymo to obtain the information it seeks about these emails and the Stroz due diligence.

Waymo also refers to Ms. Yoo's receipt of copies of the diligence questionnaire, draft Levandowski memorandum, and status updates on parts of Stroz's investigation. None of these facts constitute a showing that Waymo cannot obtain the information it seeks about Uber's knowledge of the Stroz investigation from other witnesses. Waymo will be deposing Uber's head of litigation Angela Padilla and Uber legal director Justin Suhr, who both also received these documents and updates. Waymo itself recognizes that the information it seeks from Mr. Suhr is the same as the information it seeks from Ms. Yoo. (Dkt. 1781-4, J. Judah 9/21/17 email ("Suhr- He was obviously quite involved in the due diligence process.").) Indeed, Waymo is deposing Mr. Suhr as Uber's 30(b)(6) witness on "the Stroz due diligence investigation, including its origins and any affect the results of the investigation may have had on Uber's acquisition of Ottomotto" next week. (Gonzalez Decl. Ex. 14 at 7.) Uber offered to make Mr. Suhr available on September 27, but Waymo rejected that date.

Finally, Waymo cites an email from Ms. Padilla to Mr. Levandowski on which Ms. Yoo is merely copied. But Waymo will be deposing the actual author of this email. In sum, Waymo cannot meet the required showings under *Shelton* or the apex doctrine (detailed in Dkt. 1782) to depose Ms. Yoo.

### B. Andrew Glickman and Christian Lymn

Waymo similarly fails to make the showing required to allow the depositions of Mr. Glickman or Mr. Lymn. Courts apply a "strong presumption" against allowing attorney depositions, and the burden is on the party seeking the deposition to show why it should go forward. *Fed. Trade Comm'n*, 2016 WL 1741137, at *2 (N.D. Cal. May 3, 2016). This standard is further detailed in Dkt. 1782.

Waymo fails to point to any unique, non-privileged facts to which Mr. Glickman or Mr. Lymn could testify. Even if it could, Waymo has long been on notice of these attorneys' involvement in the areas it claims to have just discovered: "negotiations over indemnification

---

[1] On September 24, 2017, Uber filed a currently-pending motion for a protective order over Ms. Yoo to prevent her deposition, and to quash Ms. Yoo's trial subpoena. (Dkt. 1782.)

sf-3826210

MORRISON | FOERSTER

The Honorable Jacqueline Scott Corley
September 26, 2017
Page Five

provisions…interim [Stroz] reports …and the negotiations over the Diligenced Employee's attestations." (Dkt. 1789-4 at 4.) Hundreds of documents, privilege log entries, and answers to deposition questions produced throughout fact discovery made Mr. Glickman's and Mr. Lymn's involvement in each of these areas clear to Waymo months ago.

First, Mr. Lymn and Mr. Glickman appear over 500 times on the privilege logs that Defendants produced in April in response to the Court's March 16, 2017 order. (Gonzalez Decl. Ex. 5, stating that these attorneys were involved in emails "concerning legal analysis or advice … regarding acquisition of Ottomotto.").) Moreover, as Waymo and the Court are aware, those privilege logs pertained to the Stroz investigation.

Documents produced as early as May 22 display the full extent of Mr. Glickman's and Mr. Lymn's involvement in negotiating the Ottomotto deal. (*See* Gonzalez Decl. Ex. 6 at UBER00017257-64 (both attorneys send a series of emails providing updates and summaries on numerous aspects of the merger agreement, including the indemnity construct); *id*. Ex. 7 (Eric Tate of MoFo emails both attorneys regarding "Founder Attestation edits"); *id*. Ex. 8 (Mr. Glickman sends and receives a series of emails regarding "Section 5.8 of the Merger Agreement and 5.7(c) and DE Attestation – Current status.").) Moreover, Waymo will be deposing many of the other individuals on these emails, and cannot point to any non-cumulative testimony it could obtain from Mr. Glickman or Mr. Lymn about these issues.

Other documents show that these attorneys were included in updates about the Stroz investigation and in privileged discussions about those updates. (*See, e.g.*, Gonzalez Decl. Ex. 9.) And Mr. Glickman was disclosed in Uber's Amended Initial Disclosures on June 21 as having knowledge regarding "Stroz due diligence…". (*Id.* Ex. 15.)

Finally, Mr. Glickman and Mr. Lymn were mentioned repeatedly in depositions. (*See, e.g.*, Gonzalez Decl. Ex. 10 at 79:8-15 (Ms. Qi is asked the names of "the lawyers who were involved in the negotiations that led to the acquisition," and the first two names she lists are Andrew Glickman and Christian Lymn).) Waymo itself recognized Mr. Glickman's and Mr. Lymn's involvement in a series of questions posed to Mr. Bentley during deposition. (*Id*. Ex. 11 at 57:17-58:5, 59:7-11, 59:17-20, 60:22-61:2, 61:18-22, 64:19-65:16, 66:3-5.)

No information contained in the Stroz report provides new grounds for deposing these individuals or affects the testimony they would give, and any testimony they could give would be cumulative.

### C. Mr. Amdursky and Ms. Baker

Waymo also is not entitled to cumulative testimony from another outside lawyer for Ottomotto (Mr. Amdursky of O'Melveny) and Mr. Ron's counsel (Ms. Baker of Levine & Baker). This is particularly so where Waymo has known about their involvement in the due

sf-3826210

MORRISON | FOERSTER

The Honorable Jacqueline Scott Corley
September 26, 2017
Page Six

diligence investigation since April 2017 and could have accounted for their depositions before fact discovery closed. (*See e.g.* Gonzalez Decl. Ex. 12 (an exemplary page of a privilege log produced on April 10 in which Ms. Baker's name appears 127 times); *id.* Ex. 13, an exemplary page of a privilege log produced on April 28 in which Ms. Baker's name appears 43 times; *id.* Ex. 7 at UBER00322232 in which Mr. Amdursky circulates "a revised version of the Attestation that includes changes that are consistent with our conversation from last week regarding this document.")

In any event, Uber does not control Mr. Amdursky or Ms. Baker and could not produce them for deposition.

### III.   Waymo Has No Basis to Demand an Additional 30(b)(6) Designee on Its Rule 30(b)(6) Topic No. 3

Waymo is not entitled to an additional 30(b)(6) designee on Uber's efforts to prevent Mr. Levandowski's use of allegedly misappropriated materials and Mr. Levandowski's use of personal devices to access Uber's servers. Uber's witness, Eric Meyhofer, already offered complete testimony on this topic. Waymo moved for additional testimony on the topics Mr. Meyhofer testified about, and explicitly chose not to include topic 3. (Dkt. 1353.) The Stroz report does not affect what efforts Uber made, and no further testimony is warranted. Moreover, the Stroz report makes clear that ██████████████████████████████ ████████████████████████████████████████████████████████████████ so Waymo's complaint about files on his devices does not warrant further deposition testimony.

### IV.   Waymo is Not Entitled to Additional, Unspecified Interrogatories Two Weeks Before Trial

Waymo should not get the eight additional expedited interrogatories it seeks. First, this Court never gave Waymo the option of "reserving" interrogatories until after a Federal Circuit ruling, and Waymo's assertion that it "reserved" three interrogatories is wholly unsupported.

Second, Waymo is getting extensive discovery into the Stroz diligence, as described above. If Waymo focuses its inquiry in the fifteen upcoming depositions, it can get what it needs for trial. It would be unduly burdensome to force Uber to answer additional as-yet-unspecified interrogatories within seven days. That Waymo hasn't even identified the interrogatories it seeks to propound underscores Waymo's inability to justify this request.

Waymo pushed for an expedited trial schedule. It understood that there were trade-offs in so doing. Waymo cannot now complain that it needs further expedited written discovery in addition to fifteen depositions.

sf-3826210

MORRISON | FOERSTER

The Honorable Jacqueline Scott Corley
September 26, 2017
Page Seven


Respectfully submitted,

*/s/ Arturo J. González*

Arturo J. González

sf-3826210