September 26, 2017

**VIA ECF**

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F – 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Pursuant to Dkt. 1688 (9/18/2017 Hearing Tr. at 21:22-23:7), Plaintiff Waymo LLC ("Waymo") submits this reply brief on the Diligenced Employees' waiver of attorney-client privilege for materials provided to third-party Stroz Friedberg ("Stroz").

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

The arguments made in response to Waymo's Motion – by Mr. Ron, Mr. Levandowski, and Mr. Sebern – only confirm that any privilege over the materials provided by Stroz has been waived.

<u>The Findings Already Made by the Magistrate Judge, District Court, and Federal Circuit All Demonstrate That Any Privilege Has Been Waived.</u> In an attempt to avoid the legal conclusion of waiver from the Court's prior findings, as detailed in Waymo's Motion, Ron argues that "all of the materials at issue here [are] unlike those at issue in the earlier motion" because they were "clearly subject to preexisting attorney-client privilege." Dkt. 1804 at 3. The Court, however, already considered this argument, which was raised when Mr. Levandowski moved to quash the Stroz subpoena – arguing that the documents contained, *inter alia*, "attorney-client confidential communications and attorney work-product." *See* Dkt. 583 at 8. The Court compelled these documents anyway.

Mr. Ron also argues that because Stroz was an agent for Otto and its attorneys, it was "hence the agent of a person with whom Mr. Ron clearly had a common interest relationship." Dkt. 1804 at 3. But the Court has already ruled that the Diligenced Employees did *not* have a common interest relationship with Stroz or its Clients, and rather were **targets** of the Stroz investigation.[1] *See* Dkt. 670 at 2 ("[Levandowski] argues that at the time of his communications with Stroz, he, Ron, Uber and Otto were part of a 'joint defense group' and therefore his communications with Stroz – Uber's agent – are protected by the same attorney-client privilege that would protect Uber's communications with Stroz. (Dkt. No. 583 at 4.) *Once again this argument fails*.") (emphasis added); *see also* Dkt. 1746, Ex. 1 at 1 ("█████████████████████████ ███████████████████████████████████████████████████████████████████ █████████████").

Additional documents uncovered by Waymo since the filing of Waymo's Opening Brief further show that the Diligenced Employees did not share a common interest with Stroz or its clients. For example, a March 21, 2016 email from Eric Amdursky of O'Melveny & Myers, counsel to Otto, to Eric Friedberg of Stroz, confirmed that █████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████ Ex. 1 [UBER00318539] at -39.

<u>The Court Should Not Apply Any Waiver Exception Under These Circumstances.</u>  Both Mr. Ron and Mr. Levandowski urge this Court to hold that, although there was a clear waiver of the attorney-client privilege here because the documents were disclosed to a third-party, the Court should extend an exception to the waiver under these circumstances. (*See* Dkt. 1805 at 5 n.2 (citing to 9th Circuit case that "voluntarily disclosing privileged documents to third parties will *generally* destroy the privilege" (emphasis in original), but that "[t]he circumstances identified above indicate that the general rule does not apply here."). However, neither Diligenced Employee has cited to a *single* case that would support applying an extension of an exception to the waiver of

---

[1]  Indeed, Mr. Levandowski does not even attempt such an argument in his opposition.

1

privilege under these circumstances. The cases cited by the Diligenced Employees only hold that an exception to the waiver of attorney-client privilege exists in two contexts: litigation[2] and government investigations.[3] There are public policy reasons for these exceptions, which promote cooperation by the subjects of governmental investigations and between parties to a litigation to freely and efficiently produce documents without the fear that privileged material might be disclosed. *See, e.g.*, *Fishoff*, 2016 U.S. Dist. LEXIS 108301, at *10 (no waiver of privilege where defendant "sought to quickly cooperate with the Government"); *Middlesex Cnty. Ret. Sys. V. Semtech Corp.*, No. CV 07-7114 CAS (FMOx), 2010 WL 11515651, at *3 (C.D. Cal. Apr. 1, 2010) (noting defendants' argument that there are "strong public policy considerations served by encouraging companies to cooperate with government investigations").

No such public policy rationale supports extending a waiver exception to a voluntary and private investigation by a consultant. To the contrary, the attorney-client privilege must be strictly construed. *See Weil v. Inv./Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981) ("Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."). Indeed, federal courts have **not** extended the privilege in this way. *See, e.g.*, *Lindell v. City of Mercer Island*, 833 F. Supp. 2d 1276, 1282 (W.D. Wash. 2011) (discussing court's prior finding that disclosure of information to a third party hired to investigate a matter was a waiver of privilege); *In re Oracle Sec. Litig.*, No. C-01-0988 MJJ (JCS), 2005 WL 6768164, at *8 (N.D. Cal. Aug. 5, 2005) (submitting special litigation committee report prepared at the request of defendant's board of directors entitled plaintiffs to obtain underlying attorney interview notes).

Again, Mr. Levandowski and Mr. Ron *chose* to disclose all of their documents to Stroz, and to do so in a speedy manner, so that their company, Otto, can become acquired faster by Uber. There was nothing to prevent the Diligenced Employees from conducting a closer review of the materials before turning them over to Stroz. And no public policy interests are enhanced by the disclosure of privileged information to a "paid consultant" conducting an investigation at the behest of two companies seeking a merger. *See* Ex. 2 [UBER00319551] at -51 ("███████████████ ███████████████████████████████████████").

---

[2]  *See Oakley, Inc. v. Bugaboos Eyewear Corp.*, No. 09-CV-2037-JLS (JMA), 2010 U.S. Dist LEXIS 110337, at *11-12 (S.D. Cal. Oct. 15, 2010) (no waiver of privilege where plaintiff admitted that it relied on advice of counsel in response to a request for admission); *Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 585-86 (C.D. Cal. 2007) (no waiver of privilege where plaintiff did not answer questions at deposition because of attorney-client privilege); *Advertising to Women, Inc. v. Gianni Versace S.p.A.*, No. 98 C 1553, 1999 U.S. Dist. LEXIS 12263, at *16-17 (N.D. Ill. Aug. 4, 1999) (inadvertent production of privileged documents during deposition does not constitute waiver). Indeed, Mr. Ron's argument that a privilege-protection protocol is currently used in this case is likewise misplaced. *See* Dkt. 1804 at 6.

[3]  *See United States v. Fishoff*, No. 15-586 (MAS), 2016 U.S. Dist. LEXIS 108301, at *10 (D. N.J. Aug. 16, 2016) (no waiver of privilege for inadvertent disclosure of privileged information to government pursuant to an investigation); *see also* Fed. R. Evid. 502, *committee note to subd. (b)* ("inadvertent disclosure of protected communications or information *in connection with a federal proceeding or to a federal office or agency* does not constitute a waiver…") (emphasis added).

Further, California federal courts have been reluctant to extend an exception to the waiver of privilege even in the context of government investigations. *See* Oracle, 2005 WL 6768164, at *7 ("District courts in the Northern District of California have rejected the holding in *Diversified* in favor of the conclusion that submission of privileged materials to a federal regulatory agency amounts to a waiver of privilege with respect to a plaintiff in a subsequent civil trial."); *Middlesex*, 2010 WL 11515651, at *3 (refusing to apply exception to privilege waiver with respect to documents that were produced to the SEC and USAO in response to an internal investigation). And, as noted in Waymo's Opening Brief, federal courts across the country have generally been hesitant to allow limited waivers such as those advanced by the Diligenced Employees here. *See* Dkt. 1746, at 5.

<u>Disclosure of Privileged Documents Was Not Inadvertent.</u>  Mr. Levandowski argues that the disclosure of the privileged documents was somehow inadvertent. This makes no sense. In his brief, his counsel concedes that "Mr. Levandowski's physical production of the electronic data and digital devices themselves was not 'inadvertent.'" Dkt. 1805 at 5. As the Court has observed repeatedly, Mr. Levandowski **voluntarily** handed over these materials and the suggestion that he wouldn't know his devices and emails would be disclosed to Stroz is not credible. Such *deliberate* disclosure is not remotely comparable to the authority Mr. Levandowski cites concerning actual "inadvertent" disclosure. Rather, the cases cited by Mr. Levandowski are distinguishable because the documents that were disclosed there were truly disclosed by mistake.[4] That whatever purportedly incorrect expectations Mr. Levandowski had regarding his voluntary disclosure did not end up being true does not make that disclosure "inadvertent," and Mr. Levandowski cites no case that says it does. In fact, as evidenced by communications at the time, the expectations from the protocol that Mr. Levandowski now points to were not always followed.[5] (*See* Ex. 3 [UBER00318843] at -43; *see also* Dkt. 1805, Ex. J at DF00022906 ("

---

[4]  *See United States v. Zolin*, 809 F.2d 1411, 1417 (9th Cir. 1987) (no waiver of privilege where secretary delivered tapes containing privileged information under the mistaken impression that they were blank); *United States v. De La Jara*, 973 F.2d 746, 749 (9th Cir. 1992) (no waiver of privilege where the letter at issue was discovered by the government in the course of executing search warrants); *Gomez v. Vernon*, 255 F.3d 1118, 1133 (9th Cir. 2001) (holding that the unauthorized copying of documents from confidential files kept by inmates was not a waiver of privilege as to those documents); *United States v. Salyer*, No. CR S-10-061 LKK, 2011 U.S. Dist. LEXIS 22072, at *11 (E.D. Cal. Feb. 17, 2011) (no waiver of privilege where prisoner and his attorney did not know that their calls were being monitored); *Resolution Trust Corp. v. Dean*, 813 F. Supp. 1426, 1429-30 (D. Ariz. 1993) (unknown leak of privileged memo into the press, which was prepared and maintained in accordance with secure record keeping procedures, was not waiver of privilege); *In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 468, 469 (S.D. Ohio 1984) (no waiver of privilege where there was no evidence that a diary was voluntarily given to news agency).

[5]  Mr. Ron's understanding that no privileged documents were identified by Stroz is misplaced. Exhibit 5 to Waymo's Opening Brief states that the "original proposal" to set up a "Proposed Disclosure Folder" was "*never implemented*" (emphasis added), not that no documents were identified for inclusion in such folder. *See* Dkt. 1746, Ex. 5. To the contrary, the email shows that, because the proposal was never implemented, privileged documents may well have been produced to Uber's counsel.

3

███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████").

Production of Privilege Log Was Delayed: The Diligenced Employees' argument that they produced privileged logs "promptly," *see* Dkt. 1804 at 1, fails. Indeed, the fact that the Diligenced Employees had to wait to be ordered by the Court to produce privilege logs "by 10:00 a.m. tomorrow," *see* 9/14/2017 Hr'g Tr. At 35:5, shows just how untimely the productions of the privilege logs were. In addition, Mr. Ron's assertion that Waymo "suffered absolutely no prejudice" from the timing of the privilege logs' production is baseless. On account of the late production of the privilege logs, Waymo must review such logs and engage in motion practice on their sufficiency on the eve of trial. That is in addition to the prejudice to Waymo on account of not having access to the documents impermissibly withheld, about which Waymo had no knowledge until it saw the privilege logs. That the Court found that Uber did not waive privilege under different circumstances does not, as Mr. Ron asserts, warrant a finding of no waiver here.

Accordingly, this Court should grant Waymo's motion and hold that there was a waiver of privilege with respect to the documents disclosed by the Diligenced Employees to Stroz.

Respectfully,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
Cc:   All counsel of record; Special Master John Cooper