# Exhibit 2

Pages 1 - 94

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before the Honorable William H. Alsup, Judge

WAYMO LLC,                       )
                                 )
              Plaintiff,         )     **No. C 17-0939 WHA**
                                 )
   VS.                           )     **BOUND SEPARATELY**
                                 )     **PAGES 95 - 145 (UNDER SEAL)**
                                 )
UBER TECHNOLOGIES, INC.;         )
OTTOMOTTO LLC; OTTO TRUCKING     )
                                 )
              Defendants.        )
_____ )     San Francisco, California
                                       Wednesday, September 20, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                    QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                    50 California Street, 22nd Floor
                    San Francisco, California  94111
              BY:   **CHARLES K. VERHOEVEN, ATTORNEY AT LAW**
                    **JORDAN R. JAFFE, ATTORNEY AT LAW**
                    **MELISSA J. BAILY, ATTORNEY AT LAW**
                    **DAVID ANDREW PERLSON, ATTORNEY AT LAW**
                    **JEFFREY W. NARDINELLI, ATTORNEY AT LAW**
                    **FELIPE CORREDOR, ATTORNEY AT LAW**

                    QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                    51 Madison Avenue
                    New York, New York 10010
              BY:   **JAMES E. BAKER, ATTORNEY AT LAW**

 (Appearances continued on next page)

Reported By:  Katherine Powell Sullivan, CSR No. 5812, RMR, CRR
              Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporters

```
 1   APPEARANCES (CONTINUED):

 2   For Defendant Uber Technologies, Inc. and Ottomotto LLC:
                          MORRISON & FOERSTER LLP
 3                        425 Market Street
                          San Francisco, California 94105-2482
 4                    BY: ARTURO J. GONZÁLEZ, ATTORNEY AT LAW
                          MICHAEL A. JACOBS, ATTORNEY AT LAW
 5                        ESTHER K. CHANG, ATTORNEY AT LAW

 6                        MORRISON & FOERSTER LLP
                          2000 Pennsylvania Ave., N.W. Suite 6000
 7                        Washington, D.C. 20006-1888
                      BY: MICHELLE YANG, ATTORNEY AT LAW
 8
                          SUSMAN GODFREY LLP
 9                        1301 Avenue of the Americas, 32nd Floor
                          New York, New York 10019
10                    BY:  WILLIAM C. CARMODY, ATTORNEY AT LAW

11                        BOIES SCHILLER FLEXNER LLP
                          435 Tasso Street, Suite 205
12                        Palo Alto, California  94301
                      BY:  KATHLEEN R. HARTNETT, ATTORNEY AT LAW
13
     For Defendant Otto Trucking LLC:
14                        GOODWIN PROCTER LLP
                          135 Commonwealth Drive
15                        Menlo Park, California 94025
                      BY:  I. NEEL CHATTERJEE, ATTORNEY AT LAW
16
                          GOODWIN PROCTER LLP
17                        Three Embarcadero Center
                          San Francisco, California 94111
18                    BY:  SHANE BRUN, ATTORNEY AT LAW

19   On behalf of nonparty Stroz Friedberg:
                          LATHAM & WATKINS
20                        505 Montgomery Street, Suite 2000
                          San Francisco, California  94111
21                    BY:  MELANIE M. BLUNSCHI, ATTORNEY AT LAW

22   Special Master:      FARELLA, BRAUN & MARTEL LLP
                          Russ Building
23                        235 Montgomery Street
                          San Francisco, California  94104
24                    BY:  JOHN L. COOPER, ATTORNEY AT LAW

25
```

1    Mr. González said --

2              **MR. GONZÁLEZ:**  Go ahead.

3              **THE COURT:**  You get to argue it.  I want to hear from

4    Waymo first.  It's their motion.

5         Go ahead.

6              **MR. BAKER:**  Thank you, Your Honor.

7         So during briefing, defendants waived all of their

8    affirmative defenses except for failure to mitigate and unclean

9    hands.

10         With respect to failure to mitigate, the first point I

11   want to make is that there are no factual disputes here.  In

12   their opposition, they argue that Waymo delayed in bringing

13   suit.  But they don't point to any specific facts that are in

14   dispute.  So this is ripe for summary judgment.

15         Their argument is that Waymo should have brought suit back

16   in July or August of 2016, and that Waymo failed to mitigate

17   its damages by not doing so.

18         At that time, Your Honor, Waymo was in the middle of its

19   investigation, the forensic investigation.  We did not have the

20   full knowledge of everything that was going on here and did not

21   learn until December of 2016, when Waymo received an

22   inadvertent email from Uber's vendor showing the printed

23   circuit board that uses Waymo trade secrets.  That's the first

24   time that we learned of that fact.

25         We quickly put together a complaint.  Completed the

1   investigation, put together a complaint and motion for a

2   preliminary injunction, and filed that within nine weeks of

3   receiving that inadvertent email.  And I would just

4   respectfully submit that that's hardly delay or a failure to

5   mitigate anything.

6        The other point I want to make is that, in their brief,

7   Otto Trucking argues that the email from the vendor in December

8   did not add anything to what Waymo already knew, and that,

9   therefore, we could have sued Otto Trucking earlier.  But

10  that's not true either.

11       Back in July or August of 2016, Waymo of course didn't

12  know what exactly the role of Otto Trucking was or was not.

13       When we received the email in December of 2016, and saw

14  the printed circuit board, of course that implicated Uber.  It

15  also implicated Ottomotto and Otto Trucking, Anthony

16  Levandowski as the CEO of Otto Trucking.

17       So at that point we -- all three entities at that point

18  were our focus, but not until December of 2016.

19            **THE COURT:**  All right.  Mr. Chatterjee.

20            **MR. CHATTERJEE:**  Your Honor, I'll be brief on this,

21  focusing on the issue of the failure to mitigate, which I think

22  was what Your Honor's questions were about.

23       One of the cases that we cited in our papers was

24  *Thrifty-Tel v. Bezenek*.  And in that case, there were -- the

25  California Court of Appeals denied damages when the

1          **MR. BRUN:**  Excuse me, Your Honor.

2          **THE COURT:**  It looks like it's unopposed.

3          **MR. BRUN:**  It should be unopposed.

4          **THE COURT:**  Someone is going to stand up, but you go

5     ahead.

6          **MR. BRUN:**  Thank you, Your Honor.

7     Your Honor, so Waymo's claims in this case have been

8     solely focused on Uber and Ottomotto.  More specifically, they

9     have been focused on the Fuji and the Spider systems.  That's

10    what they claim uses the trade secrets.

11    There's not a single fact to suggest that Otto Trucking

12    uses a trade secret.  There's not -- Otto Trucking, as the

13    facts have shown now that discovery is over, separate company.

14    It's a holding company.  Only holds trucks.  That's all it

15    does.

16         **THE COURT:**  Do these trucks, are they equipped with

17    LiDAR?

18         **MR. BRUN:**  They're equipped with a third-party LiDAR

19    system, Your Honor.  There's not a single fact to suggest --

20    it's undisputed, I don't think they contest the fact that an

21    Otto Trucking truck has never been equipped with either the

22    Fuji or the LiDAR or the Spider system.  And there's no

23    suggestion they have otherwise ever been equipped with any

24    system that uses the trade secrets.

25         **THE COURT:**  All right.  So stay right there and

1   let's -- Ms. Baily; right?

2           **MR. BAILY:**  That's correct, Your Honor.

3           **THE COURT:**  Please tell me what you think is the

4   answer.

5           **MR. BAILY:**  Excuse me.

6       First of all, Your Honor, the emphasis on use is

7   misplaced.  Use is not the only way that you can misappropriate

8   a trade secret.

9       And I do want to point out something that was actually

10  very misleading, I believe, in Otto Trucking's briefing on

11  this.  They basically said, look at Waymo, they're only

12  pointing to Spider and Fuji.  Look at their response to

13  Interrogatory No. 9.

14      They didn't attach what the actual interrogatory asked.

15  They just attached a portion of our answer.  The interrogatory

16  only asked about use.  It did not ask about other theories of

17  misappropriation, including acquisition of the trade secrets.

18      And there is a lot of evidence, including the Stroz

19  report -- and we can talk about that -- that Otto Trucking

20  acquired the trade secrets improperly and knowingly

21  improperly --

22          **THE COURT:**  Well, help me understand what that

23  evidence is.  Give me just one item of evidence that Otto

24  Trucking, as opposed to Levandowski, but Otto Trucking ever

25  acquired any of these trade secrets.

1      **MR. BAILY:**  Well, Your Honor, let me just start -- I

2   do need to tell you a few things in order to make those

3   connections.

4      So let me start at the Stroz report, which we just

5   received.  And we did receive it after we filed our opposition

6   to the motion for summary judgment.

7      So I just heard him say that discovery is closed.

8   Discovery is absolutely not closed.  And it was not closed when

9   they said that in their motion or in their reply.

10      So now we have the Stroz report because discovery was not

11   closed.  And the Stroz report, at the bottom of page 11, talks

12   about a very narrow subset of all of the documents that

13   Levandowski was found to have on his devices.

14      So it talks about a narrow subset of 347 files from his

15   self-identified data.  The paragraph on the bottom of page 11

16   describes those files.  And it describes them as containing

17   proprietary information related to Levandowski's work at Google

18   on the Chauffeur project.  And then it lists some examples,

19   including system files, software files, code, confidential

20   presentations, confidential diagrams.

21      Then there is an analysis, in Exhibit 16 to the Stroz

22   report, of access to those files.  More than a third of those

23   files were accessed after Levandowski left Google.  So they

24   were not accessed for Levandowski's work at Google; they were

25   accessed after that.  February, March.  So after he resigned

1 from Google in January.

2   What was Mr. Levandowski doing at that time?  He was

3 talking to Uber and setting up Otto Trucking and Ottomotto.

4   **THE COURT:**  But wasn't Ottomotto already -- I mean,

5 one of their points is that Otto Trucking got set up -- give me

6 the date again.  What's the date of Otto --

7   **MR. BAILY:**  February 1st.

8   **THE COURT:**  February 1st of 2016?

9   **MR. BAILY:**  That's correct.

10   **THE COURT:**  When Ottomotto set up?  Wasn't that

11 earlier?

12   **MR. BAILY:**  It was a few weeks earlier, I believe.

13   **THE COURT:**  All right.  So take the time period after

14 Otto Trucking was set up.

15   **MR. BAILY:**  Exactly.  Taking that time --

16   **THE COURT:**  What is your point?  What does the Stroz

17 report say?

18   **MR. BAILY:**  After February 1st, when Otto Trucking was

19 set up, more than a third of this narrow subset of documents

20 that are described as containing Google proprietary

21 information, Google software files, Google code, Google system

22 files, more than a third of those were accessed after

23 February 1st.

24   So I went through Exhibit 16 --

25   **THE COURT:**  When you say "accessed," accessed by who?

1          **MR. BAILY:**  Accessed by Mr. Levandowski.

2      What was Mr. Levandowski doing at that time?  He was

3  working on Ottomotto and Otto Trucking.  He was no longer at

4  Google.

5      And he accessed more than a third of just even that narrow

6  subset of files after he left Google, while what he was doing

7  was talking to Uber and setting up these entities.  Which just

8  weeks after he was accessing these files, there's an agreement

9  about -- you know, about Uber acquiring these companies.

10     So there was the agreement about Uber acquiring Ottomotto.

11  And there's also an agreement -- I think I might be straying

12  into confidential material here about, you know, a potential

13  acquisition of Otto Trucking.  I believe that much is public.

14         **THE COURT:**  Can you tell, from what you have, which

15  particular files were accessed?

16         **MR. BAILY:**  So that's exactly the problem.  And this,

17  of course, dovetails with the continuance motion.

18     I can show you the exhibit that we have attached to the

19  Stroz report, which lists out the files.  But it actually

20  doesn't tie together.  We need more discovery.  It lists out

21  the file types, and there's this general description.

22     But we don't have yet the dots to connect -- but we know

23  that we can get them, now, from the materials that are being

24  produced -- to connect the documents listed that are just

25  listed by file type and for which there's this general

1  description that confirms that these are all confidential

2  Google materials to the actual documents and files and source

3  code that they actually are.

4      **THE COURT:**  Well, see, where I'm heading was, can you

5  trace one of those to one of the many trade secrets that you

6  listed?

7      **MR. BAILY:**  And that is what we need to do.  We need

8  to actually draw the dots from -- you know, so we've obviously

9  had some time to process the Stroz report that was produced

10 late last week.  So there's -- I forget how many exhibits.  I

11 think Your Honor has seen it.  There's lots of exhibits.  We've

12 been through those.

13     Exhibit 16 is this analysis of access that proves that

14 Levandowski was accessing what Stroz describes as our

15 confidential materials after he left Google, while he was

16 focused on Ottomotto and Otto Trucking.

17     Exhibit 16 lists these files in a generic way.  And I

18 don't have the file names; right.  We need to get this

19 discovery to map the file names.

20     Well, what exactly was Levandowski looking at?  Which

21 pieces of source code was he looking at?  Which files was he

22 looking at on March 22nd, 2016, while he's talking to Uber

23 about acquiring his Ottomotto and Otto Trucking companies.

24 And, you know, why else is he looking at these files on

25 March 22nd, 2016?

```
1          We need the time to actually connect the dots because

2    they're not connected in the Stroz report themselves.  There's

3    the general description that all of this is confidential to

4    Waymo and that it was accessed on specific dates after

5    February 1st --

6          THE COURT:  All right.

7          MR. BAILY:  -- but we now need to connect the further

8    dots.

9          THE COURT:  Hold that very thought.

10         What's your answer to what I just heard about confidential

11   Waymo information was accessed by Mr. Levandowski after Otto

12   Trucking was formed?

13         MR. BRUN:  Well, with respect to the Stroz report,

14   Your Honor, there's nothing in the Stroz report that changes

15   the facts with respect to Otto Trucking.

16         Otto Trucking is separate from Ottomotto.  Otto Trucking

17   is just a holding company that holds trucks.  Doesn't have any

18   engineers.  Doesn't do any R&D.

19         THE COURT:  Why was Levandowski accessing that

20   information?  Was he doing it for his personal account?  Was he

21   doing it for Otto Trucking?  Was he doing it for Ottomotto?

22   What's the answer to that?

23         MR. BRUN:  Well, he wouldn't be doing it for Otto

24   Trucking, Your Honor.

25         THE COURT:  How do we know that though?
```

1      **MR. BRUN:**  Otto Trucking, all it does --

2      **THE COURT:**  You're using the present tense.  What was

3  it doing back then?  What was its possible plans back then?

4      **MR. BRUN:**  I can't speak as to what Mr. Levandowski

5  was doing as described in the Stroz report.  But, again, it

6  doesn't have any impact at all on our motion with respect to

7  Otto Trucking.

8      **THE COURT:**  Well, but conceivably -- conceivably, he

9  was sitting there wearing his hat as Otto Trucking, thinking

10  that he was going to sell Otto Trucking to Uber, and that he

11  was accessing these files for the purpose of -- maybe he was

12  just doing it for himself, Otto Trucking, Ottomotto.

13      And how do we sort all that out at this point?  I

14  appreciate the way Otto Trucking has developed Velodyne LiDAR

15  Plus trucks has almost nothing to do with this case.  But, on

16  the other hand, back then, when things were still in flux and

17  in play, maybe they did, maybe Otto Trucking did access and

18  acquire these files.

19      **MR. BRUN:**  Again, Your Honor, Otto Trucking -- let's

20  talk about the two companies that Mr. Levandowski formed.

21  Ottomotto, which is an operational company, that was the entity

22  that was going to be developing lasers or LiDAR systems.  That

23  was that aspect of the company.

24      Mr. Levandowski, as you'll recall from throughout this

25  case, he left Google to set up a trucking company, Your Honor.

1    He wanted to focus on trucks.  Otto Trucking itself was set up

2    just as holding company, to hold the assets for that trucking

3    business.

4        It's been established through -- even though the Stroz

5    report just came out and they want to say they need more

6    discovery on the Stroz report, doesn't change that structure of

7    Otto Trucking and what Otto Trucking's business is.  It's just

8    to hold trucks.  And that's all it does.  And they can't

9    dispute that.

10        **THE COURT:**  Why did Levandowski access that material?

11    And how can we be a hundred percent positive he didn't do it

12    for purposes of Otto Trucking?

13        **MR. BRUN:**  Again, if you look at the -- what they're

14    trying to do -- so there's no evidence that any trade secret

15    ever got to Otto Trucking.  There's no claims of direct

16    misappropriation in this case.

17        **THE COURT:**  Well, that's possibly right.  But,

18    nevertheless, if somebody at Otto Trucking is there reading the

19    trade secrets, wearing their hat as Otto Trucking, that's

20    acquisition.

21        **MR. BRUN:**  But the issue isn't he couldn't have been

22    wearing his hat as Otto Trucking, given what Otto Trucking's

23    business is.  If they wanted to hold Otto Trucking vicariously

24    liable for Mr. Levandowski's supposed use of the trade secrets,

25    it has to be within the scope of Otto Trucking's business.

1          THE COURT:  Where does that rule come from?

2          MR. BRUN:  We cite it in several cases, Your Honor.

3          THE COURT:  What if there's a plumber's unit that goes

4     and steals trade secrets, and they're not in the business of

5     that trade secret, but they're being used as a conduit somehow?

6     Maybe that acquisition for that sinister purpose is enough.

7          I don't know.  I question the proposition that you have to

8     be in the business of the trade secret in order to be guilty of

9     stealing trade secrets.

10          MR. BAILY:  Your Honor, if I may, Otto Trucking was in

11     the business of the trade secret, regardless of that question,

12     which I also --

13          THE COURT:  But that's not right because they just

14     hold trucks.

15          MR. BAILY:  But that's not right.  So the evidence

16     that Otto Trucking submitted includes a framework agreement.

17     It was submitted under seal.  I'd like to read from it.

18          THE COURT:  Go ahead.

19          You lawyers put so much stuff under seal and abuse the

20     process.  Go ahead.  Read it.

21          MR. BAILY:  So part of the framework agreement between

22     Uber and Otto Trucking and Uber Freight concerns the trucking

23     AV business.  Trucking --

24          THE COURT:  Say that again.

25          MR. BAILY:  Trucking AV business.

1

2              **CERTIFICATE OF REPORTERS**

3          We certify that the foregoing is a correct transcript

4      from the record of proceedings in the above-entitled matter.

5

6      DATE:   Wednesday, September 20, 2017

7

8

9      _____

10

11     Katherine Powell Sullivan, CSR #5812, RMR, CRR
                  U.S. Court Reporter

12

13

14     _____

15         Jo Ann Bryce, CSR #3321, RMR, CRR
                  U.S. Court Reporter

16

17

18

19

20

21

22

23

24

25