QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                Plaintiff,<br><br>        vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>                Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S NOTICE REGARDING STROZ REPORT DISCOVERY AND TASKS** |

**TABLE OF CONTENTS**

**Page**

I. DOCUMENT DISCOVERY ..................................................................................................3

II. DEPOSITION DISCOVERY ..............................................................................................10

III. EXPERTS..............................................................................................................................11

IV. ADDITIONAL MOTIONS ..................................................................................................11

V. TRIAL ...................................................................................................................................12

At the September 20 hearing on Waymo's Motion for Continuance ("Motion"), the Court instructed the parties "to try hard to keep the October 10th date and do whatever you have got to do to get the discovery done." (Dkt. 1723, at 69:4-6.) Waymo files this notice to update the Court as to its efforts to comply with the Court's directive, while noting the extensive amount of document review, depositions, tasks, and filings that still need to be done as a result of the newly disclosed Stroz Report and related documents.

Waymo has been shocked by the massive volume of contemporaneous documents withheld under the guise of a purported Stroz report privilege. Specifically, until the files were ordered to be produced by the Federal Circuit, Waymo was precluded from obtaining in discovery no fewer than 1.4 million documents and hundreds of terabytes of data on numerous devices, including Waymo confidential material, source code, and even an unknown amount pictures of screen shots of Waymo confidential information taken by Anthony Levandowski. And, while Uber told the Court multiple times that its counsel, Morrison & Foerster ("MoFo"), had no Waymo confidential information, it eventually admitted it did, describing what they had as a "sliver" of information Stroz had. This "sliver" turned out to 69,000 files including many of the photos of the screen shots of Waymo confidential information noted above, file types likely to contain Waymo confidential information as they were presumably taken by photo on a personal device to avoid detection through computer forensics.

Faced with this obstruction, Waymo has nevertheless undertaken a substantial good faith effort to follow the Court's directive to "get the discovery done." Waymo has engaged more than a dozen additional attorneys at Quinn Emanuel. Waymo has also retained approximately 85 contract attorneys and numerous e-discovery consultants, in addition to numerous in-house attorneys and support staff, to assist in its review of 1.4 million documents and hundreds of terabytes of data, some of which has been produced or made available already, but most of which has not. As of September 25, Waymo's reviewers have been able to review less than 100,000 of the over 1.4 million documents in the database made available by Stroz on September 18. This review has already uncovered vital evidence. As one example, Waymo has located, on the personal laptop Levandowski possessed while working for Ottomotto, documents embodying Waymo's Trade Secret no. 25. Waymo has also newly learned

that on March 2, 2016, after he left Waymo, while running Ottomotto, and after signing a term sheet to sell Ottomotto to Uber, Levandowski accessed other documents on his laptop claimed as Waymo Trade Secret nos. 89, 90, and 91.  Waymo, however, has been unable to forensically examine what happened to these documents or how the content of these documents may have been used to benefit Uber because counsel for Levandowski and others have thus far prevented Waymo from accessing a forensic image of the laptop, citing privacy and privilege concerns.  Further, Waymo has discovered that files apparently coming from Levandowski's cell phone – ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – contain detailed schematics embodying Waymo's trade secrets, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Waymo's Trade Secret nos. 7 and 9.  And among the thousands of documents newly produced by Defendants, Stroz, and John Gardner (Levandowski's personal attorney), Waymo has discovered numerous highly relevant communications relating to Uber's knowledge of Mr. Levandowski's "Bad Acts" and dishonesty, and the rushed and incomplete nature of the Stroz investigation.

      An enormous amount remains to be done, however.  There are over 1.3 million documents still to review.  Waymo has had <u>zero</u> access to the roughly 150 native devices which Stroz has, and it has had to move to compel to seek such access.  These devices (or their images) are the only way to obtain access to certain types of files not in the Stroz Database, like source code, which is necessary to review and understand for further evidence of misappropriation.  Waymo also needs to conduct a forensic review of the native devices to determine what happened to all the files on these devices, such as where they were sent and when, or how Waymo's confidential information got on these personal devices in the first place.  This is particularly important given the disclosures in the Stroz Report that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Waymo did not have access until earlier today to the materials in the Epiq database that Uber long ago promised to make available to Waymo once the Federal Circuit ruled.  And Waymo still needs to review, one by one, almost 70,000 unsearchable images in the alleged "sliver" of documents that Mofo belatedly revealed it possessed.  Further, Waymo still needs to review and digest the thousands of documents previously withheld by Defendants, Stroz, Levandowski's personal lawyer, and Lior Ron, and examine the entries for the

thousands of still withheld documents on their privilege logs. And given the above, while Waymo is proceeding with numerous fact depositions over the next week, these depositions are being taken with incomplete information and will likely require many of the witnesses to be deposed again. But even beyond discovery, Waymo's experts will need to digest and evaluate any new evidence of misappropriation, revise its pre-trial filings based on what it has been able to discover in the limited time it has, supplement or file new motions relating to spoliation, OSC, summary judgment and other issues, and attempt to integrate all this material in its trial strategy.

Waymo provides a detailed update of its efforts to date and the extensive amount of work that still needs to be done below.

## I.     DOCUMENT DISCOVERY

### A.     Stroz Materials

**Stroz Relativity Database -** On September 18, Stroz made available for inspection (not production) over 1.4 million documents, images, and other files collected by Stroz as part of its diligence done in relation to the acquisition of Ottomotto. These documents were collected from the five "diligenced" employees: Anthony Levandowski, Lior Ron, Don Burnette, Soren Juelsgaard, and Colin Sebern. Just these materials alone were *13 times* larger than all of Defendants' previous productions combined. As noted above, in an effort to do as much as it can to review this incredibly voluminous set of materials, Waymo has enlisted approximately 85 additional attorneys to help analyze, review and digest, not just the Stroz materials in the database, but all the other sources of data referred to below. Review and production is not a simple exercise. Attorneys have to review and tag documents; Stroz then has to make periodic "sweeps" to identify documents for production, and then Stroz must go through a manual, complex production process. And given the enormous amount of materials on the Stroz database, even assuming Waymo could have obtained consent from all the various parties involved, the database could not simply be copied without extensive copying time that would likely not have been able to have even been accomplished before trial. Accordingly, Waymo's attorneys began reviewing documents on the Relativity database on Monday, September 18. Stroz made its first production of documents from the database on September 21. As of September 25, Waymo's reviewers have been able to review about 100,000 of the over 1.4 million documents in the

database. Because many of these files are "screen shots" of Waymo documents or emails, and therefore not text searchable, Waymo must conduct a manual, document-by-document review.

There have also been delays in review on account of the complex privilege and privacy issues that come with viewing the Diligenced Employee material. As just one example, merely to allow two additional full-time Google attorneys to review documents required written approval from counsel for Uber, Otto Trucking, Mr. Levandowski, Mr. Ron, Mr. Burnette, Mr. Juelsgaard, and Mr. Sebern; Waymo emailed each for permission at 12:50 p.m. on September 25, and as of 8:30 p.m. the next day, still has not received all seven required approvals. Moreover, a continuous discussion with Stroz in an effort to get appropriate access to these materials and proper functionality within the database has been necessary.

Moreover, not all of the documents in the database have been made available to Waymo. For example, the Diligenced Employees have been allowed to pre-screen documents both for privilege and privacy. Stroz has provided initial counts totaling over 22,000 documents subject to continuing privilege claims. At the September 18 hearing, Judge Corley ordered further briefing on whether privilege claims over certain documents shared with Stroz were waived. This motion is now fully briefed, although as recently as September 25, the Diligenced Employees have added additional entries to their privilege logs, presenting Waymo with a moving target of log entries to challenge. Should the Court find that the privilege over materials provided by the Diligenced Employees to Stroz was not waived altogether, more briefing and time will be required to examine and, if necessary, challenge specific entries on Mr. Levandowski's and Mr. Ron's enormous privilege logs.

Further, each of the Diligenced Employees – Mr. Levandowski, Mr. Ron, Mr. Burnette, Mr. Juelsgaard, and Mr. Sebern – provided a list of terms for a screen for "private" documents. Stroz's initial count of documents subject to privacy screens totals over 83,000 documents. Waymo provisionally challenged these screens as improper. As shown in Waymo's Motion to Compel (Dkt. 1690-4, at 4; Dkt. 1691-5), Waymo's initial review showed the privacy screen seeks to exclude Waymo from reviewing certain materials containing terms such as "Lidar," "Laser," "Chauffeur," "Ottomotto," "Otto," "280 Systems," "and "Tyto." Upon reviewing the "private" documents hitting on these search terms, counsel for the Diligenced Employees agreed that the vast majority should

-4-

*never have been screened from Waymo in the first place* and acquiesced to their production. The Special Master is in the process of reviewing the subset over which privacy and/or privilege assertions remain.

Given the timing described above, there will likely be no meaningful way for Waymo to use the vast majority of the Stroz database materials in the ongoing and upcoming depositions occurring this week and early next week. And, even if these materials are obtained before trial, there will be no time to evaluate them and integrate them into Waymo's trial planning and strategy.

**Native Devices Held by Stroz -** Stroz also possesses images of the more than 30 devices from the Diligenced Employees. These, along with email and cloud-based storage accounts, were the source of the 1.4 million document Relativity database discussed in the prior section. But as detailed below, many files from these devices are **not** in that database and have **never** been made available to Waymo. Stroz additionally possesses **118 hard drives** that Levandowski provided to Stroz that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Dkt. 1785-1, at 1). On September 18, Judge Corley instructed Waymo to review the materials on the Stroz Relativity database before the inspection of these devices. (Dkt. 1645.) Given the Court's directive that Waymo do all things possible to prepare for an October 10 trial, however, Waymo cannot wait until it has completed its review of 1.4 million documents before it begins to examine native drive images. As Waymo has been denied access to the native versions of **any** of these devices, despite the urgency of an October 10 trial date, Waymo moved to compel this access on September 24. (Dkt. 1785.) What's more, Stroz has informed Waymo that many of these hard drives are homemade and extremely complicated, thus will take additional time for Stroz to prepare for forensic examination.

Waymo also needs to review forensic images of devices from the Diligenced Employees that Stroz loaded into Relativity in connection with Stroz's (rushed and truncated) due diligence analysis. Waymo has already identified ten documents on Levandowski's laptop that Waymo cited in its trade secret list. Without the native image of that laptop, however, Waymo cannot forensically examine how those documents got onto Levandowski's laptop or what he did with them. Waymo has similar forensic questions concerning, for example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Dkt. 1603-5, at 12.) The same is true for the

trove of other Waymo confidential materials Stroz uncovered. (*See, e.g.*, Dkt. 1603-4.)  Waymo should be able to confirm whether these materials were moved onto external media for further transfer or uploaded to any cloud service for sharing with others (such as the Slack service the Stroz Report mentioned being used at Ottomotto).  Waymo may also be able to examine actions taken on specific documents, such as copying of specific portions to other documents.  But Waymo has not been able to do *any* of this forensic work to date.

Even beyond the need to further investigate the files that Waymo has located so far, Waymo needs access to the native images because, as Stroz has previously acknowledged, ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ in Relativity. (Dkt. 1785-1, at 5.) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬ (*See* Dkt. 1603-5, at 5) which are inaccessible and **cannot be reviewed at all** by Waymo through the Relativity platform. (*See* Dkt. 1785-1, at 2.) These source code files represent a previously unexplored area of potential trade secret theft, especially since the Stroz Report makes clear that given Stroz's "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬." (Dkt. 1603-5, at 17.)  Defendants did not remediate this problem by returning files to Google. Indeed, Waymo is unaware of any remedial action having been taken at all.  The Relativity database is also unable to handle video files on the underlying media, and "to the extent that the parties are interested in videos, pictures, or other documents that cannot have text extracted, search functionality [is] limited…." (Dkt. 1785-1, at 5; *see also* Dkt. 1603-5, at 6 (Where a Relativity-based review was infeasible (e.g. source code, picture files, video files, unallocated space keyword search hits).)

**Stroz Production -** On September 16, Stroz produced over **5,000** previously unproduced documents.  On September 22, Stroz produced an additional 611 documents.  Stroz explained that "These documents were not included in that [prior] production because they were withheld by counsel for Uber Technologies, Inc. ('Uber'), Ottomotto LLC ('Ottomotto') and/or Otto Trucking LLC ('Otto Trucking') on privilege grounds. Uber's counsel has informed us that the withholding of these documents was inadvertent, and that the documents should be produced.  Stroz understands that Uber

will be providing an amended privilege log, which will detail documents that Uber, Ottomotto, and/or Otto Trucking continues to withhold, or has otherwise redacted, based upon their asserted privileges." (Ex. 1.) Stroz made yet another production on September 25 of an additional document that had also been "inadvertently withheld by counsel" for Defendants.

As with the other Stroz materials, given the volume of source code and other files that Waymo has still never even seen, Waymo does not anticipate it will be possible to complete a meaningful review to use these materials in upcoming discovery and trial preparation over the next two weeks.

**B.      Defendants And Other Third Parties' Incomplete Production of Documents**

**Epiq Materials –** As the Court will recall, on June 23, Uber's counsel at MoFo revealed that "Relativity data including potential downloaded materials" was "sent to Epiq Systems, Inc. ('Epiq') at the request of MoFo in its capacity as counsel for Mr. Levandowski in the *Google v. Levandowski and Ron* arbitrations and currently is being stored at Epiq" (such data and materials, the "Epiq materials"). At the August 16 hearing, the Court directed Uber to make these Epiq materials available to Waymo once the Federal Circuit rules. (Dkt 1261, at 12:12-13:20 ("THE COURT: Now, to be clear, the way you pitched that -- let's say there is an affirmance. Even if it's a copy, the Epiq materials are going to be turned over in addition to whatever Stroz and MoFo have, even if they are duplicates. Correct? MR. GONZÁLEZ: Yes. The criteria that we agreed to mutually for reviewing this information will be applied to that, as well.").) When Waymo asked for the Epiq Materials to be produced at the September 14 hearing before Judge Corley, the Court told Waymo to "start with – we have all this, and let's get to Stroz. Let's put aside Epiq for the moment." (Dkt. 1566, at 8:10-10:13.) Since the September 20 hearing, Waymo has renewed – repeatedly – its request that the Epiq materials be made available, but they were withheld until just earlier today. Once again, it is difficult to see how Waymo can complete its review and analysis of these materials in advance of an October 10 trial date.

**"Sliver" of documents at MoFo –** At the August 16 Hearing, counsel for Uber represented that MoFo had "a small sliver" of the Stroz materials in its possession. (Dkt 1261, at 29:1-5 ("There is no reason for us to hide that. We're not trying to – this is not gamesmanship. This is – this is a small sliver.").) On September 14, Uber made available for inspection at MoFo's offices that "small sliver"

– which turned out to be over **69,000** documents that they have identified as coming from the personal devices Mr. Levandowski provided to Stroz. The documents are non-text-searchable files, including video, unknown file types, and (the vast majority) photographs. This includes dozens of photographs of confidential Google emails and presentations related to, among other things, ▓▓▓▓▓▓▓▓▓▓ (*e.g.* Dkt. 1566-16, Dkt. 1566-18) as well as screen captures of relevant text messages and of ▓▓▓▓▓▓▓▓▓▓. In order to expedite Waymo's review of these materials – which, because they are not text searchable, must be a manual document by document review (*see*, e.g., Dkt. 1594), Waymo repeatedly requested that Uber produce the materials so that Waymo attorneys could review them at their own offices, outside of regular business hours, and without the burden of MoFo's inspection protocol (which, among other things, forbids use of phones or computers while inspecting the files). Uber eventually agreed to provide the materials on a thumb drive, which was delivered to Quinn Emanuel's office after 9 PM on Friday night, in a format that Waymo could not open. On Saturday afternoon, Waymo discussed the technical issues with IT personnel at MoFo and resolved the issues. Now, Waymo faces the prospect of having to review almost 70,000 images (which are not searchable and cannot be "filtered" to eliminate false hits) on a one-by-one basis. Waymo's review of these files is ongoing, but given the short time frame and the volume of files, Waymo does not believe it is likely that these materials can be meaningfully digested for use in depositions this week or trial preparation over the next ten days.

**Uber's Production of Previously Logged Documents** – Uber produced the Stroz Report and appendices on the afternoon of September 13. The next tranche of withheld Stroz-related communications, over 500 documents, were produced on Thursday, September 14. Another tranche of over 1,100 documents followed on September 15. Uber produced more withheld Stroz-related documents (23) on September 18. This production volume, however, was missing important metadata such as date and time. (Despite repeated requests, that metadata was not produced until earlier today.) On Thursday, September 21, Uber produced another 24 previously withheld documents. Yet more documents were produced the next day, September 22, all related to the Stroz investigation. On that same day, Friday, September 22, Uber (belatedly) produced amended privilege logs that revealed that

dozens of documents on Uber's privilege log were **still** being withheld, and "will be produced in Uber Production No. 158." (Ex. 2.) Despite repeated inquiries from Waymo and assurances that the documents were being processed for production over the weekend, none of the documents were produced to Waymo until after 10 PM on Monday, September 25 – less than 12 hours before Rudy Kim's deposition, despite the fact that Mr. Kim appears on several of these documents. Fourteen additional documents – purportedly the remaining batch from the privilege logs – were not produced until earlier today.

**Otto Trucking's Production of Previously Logged Documents –** Otto Trucking produced 980 previously withheld documents on September 14. On September 25, Otto Trucking produced an additional ten documents that had previously been withheld. It is unclear what more may be coming.

**Defendants' Amended Privilege Logs** – Defendants agreed on September 14 to provide amended privilege logs that showed which documents from its recent productions corresponded to which log entries. These privilege logs are important both to verify the completeness of Defendants' production and to understand the newly produced documents. Otto Trucking provided an amended privilege log on September 15. Uber, however, did not produce an amended privilege log until September 22.

**Uber Clawbacks** – Within the past few days, Uber has re-asserted privilege over more than a dozen documents produced off of its privilege logs, all or most of which are communications to or from Salle Yoo, Uber's former General Counsel. (Dkt. 1790-6; Dkt. 1790-10.) Waymo immediately requested redacted versions of these clawed back documents, but they were not provided to Waymo until just hours ago.

**Kalanick text messages/billing records** – Waymo has been seeking Mr. Kalanick's text messages with Mr. Levandowski for months. Waymo requested billing records from Mr. Kalanick's cell phone carrier showing the date and time of Levandowski-Kalanick texts. On the August 31 deadline to file motions to compel, and specifically in order to avoid a motion, Uber agreed to produce these records. Yet more than three weeks later, those records remain unproduced, because even though Uber has obtained them from the carrier it says it needs additional time to redact them to remove any text messages or phone calls with anyone other than Mr. Levandowski.

As with others, Waymo has been reviewing these still-incomplete productions as quickly as possible in preparation for upcoming depositions, but delays and ongoing deficiencies has made that task extremely challenging in such a short timeframe.

**Lior Ron documents** – On September 5 (approximately a week before the Federal Circuit Order), Mr. Ron produced over 1,000 documents in response to the subpoena Waymo served in June. On September 22, Mr. Ron produced an additional 177 documents, as well as a privilege log of over 1600 still-withheld documents. Waymo promptly identified a number of deficiencies with this log (Ex. 3), which Mr. Ron's counsel agreed to remedy on September 24. An updated privilege log that removed entries for several improperly withheld documents was provided on September 26, but to date none of these documents has been produced to Waymo.

**John Gardner documents –** On September 22, Mr. Gardner – Mr. Levandowski's personal attorney – produced over 1,800 previously withheld documents. On September 25, Mr. Gardner produced 11 more documents that had been "inadvertently withheld" from the September 22 production. (Ex. 4.)

Waymo has been reviewing these non-party productions as quickly as possible in preparation for upcoming depositions and trial preparation, but delays and ongoing deficiencies in these productions has made that task extremely challenging, and likely impossible.

## II.     DEPOSITION DISCOVERY

Waymo has engaged in an extremely aggressive deposition schedule prior to October 10. Given the massive number of documents yet to be reviewed, rescheduling these depositions or scheduling follow-up sittings appears inevitable. Nevertheless, from September 26 through October 2, Waymo will be taking at least 14 fact depositions: Rudy Kim (9/26), Adam Bentley (9/27), Eric Friedberg (9/28), John Gardner (9/29), John Gurley (9/29), Cameron Poetzscher (9/29), Eric Tate (9/29), Nina Qi (9/30), Don Burnette (10/2), Travis Kalanick (10/2), Anthony Levandowski (10/2), Angela Padilla (10/2), Lior Ron (10/2), and Colin Sebern (10/2), Soren Juelsgaard (10/3), Justin Suhr (10/4), and Rhiann Morgan (10/4). During this timeframe, Waymo will also be taking or defending 10 expert depositions. Waymo has also had to move to compel seven more depositions that Defendants have opposed, including Salle Yoo, Uber's former General Counsel (who newly produced documents

show was directly involved in the Stroz investigation), four Ottomotto employees (who newly produced documents show were disclosed during the diligence investigation as "inventors", along with Anthony Levandowski, of Ottomotto's ██████████████████████ – concepts that were purportedly conceived years earlier when Mr. Levandowski and some of these "inventors" were Waymo employees), and two other in-house attorneys for Uber involved in the pre-signing negotiations over the diligence documents. (Dkt. 1790.) Waymo also requested the depositions of two former Stroz employees, Hanley Chew and Mary Fulginiti, who were key members of the Stroz investigation. It is unclear whether motion practice will be necessary for them. Waymo will likely seek further depositions as it makes its way through the trove of Stroz materials. Waymo expects that these depositions, and those that Waymo is seeking through subpoenas (including of Eric Amdursky of O'Melveny & Myers, Alisa Baker of Levine & Baker, and the Stroz witnesses) will occur later in the week of October 2. Waymo will not have completed its review of the 1.4 million newly-produced documents by then.

## III.   EXPERTS

Waymo's experts are being deposed regarding their existing reports now. Following those depositions, they will need to turn to analyzing the hundreds of thousands of new technical documents now available and "potentially relevant" to assess the further evidence of any trade secret misappropriation. For the source code files identified, even just looking at the files is a massive undertaking – that to date Waymo has not been allowed to commence. The experts will further have to assess the other resulting discovery, including additional depositions, inspections of relevant devices, and forensic images and other documents. Waymo's experts will then need to supplement their expert reports as necessary, including to address any additional misappropriation of trade secret claims that Waymo may seek to assert at trial.

## IV.   ADDITIONAL MOTIONS

Based on the review that Waymo has completed to date, Waymo anticipates additional motion practice resulting from Stroz-related discovery, including but not limited to: 1) briefing on spoliation issues, including by Uber, Ottomotto, and Mr. Levandowski ██████████████████, as well by Ottomotto and Mr. Levandowski through the destruction of the Tyto email archives; 2) revised

and/or supplemental motions in limine; 3) revised and/or supplemental summary judgment motions; 4) supplementation of Waymo's Motion for an Order to Show Cause; and 5) briefing on additional privilege challenges.

**V.    TRIAL**

For the material and testimony that Waymo is able to review in the limited time before trial Waymo will need additional time to: 1) supplement the Joint Pre-Trial Order; 2) serve supplemental trial exhibit lists, and receive objections to those exhibits; 3) serve supplemental trial witness lists, and receive objections to those exhibits; and 4) revise its trial strategy to take into account all new evidence. Given the massive volume of new documents, many of which Waymo has still not had access to, it is unlikely that these tasks can be completed in advance of October 10.

DATED: September 27, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC