# ATTACHMENT 4



Shepard's® report available
As of: September 27, 2017 4:30 PM Z

## *Cybergym Research LLC v. Icon Health & Fitness, Inc.*

United States District Court for the Eastern District of Texas, Marshall Division

October 7, 2007, Decided; October 7, 2007, Filed

CIVIL ACTION NO. 2:05-CV-527-DF

**Reporter**
2007 U.S. Dist. LEXIS 102194 *

CYBERGYM RESEARCH LLC, Plaintiff, v. ICON HEALTH & FITNESS, INC., Defendant.

**Prior History:** *Cybergym Research LLC v. Icon Health & Fitness, Inc., 2007 U.S. Dist. LEXIS 102201 (E.D. Tex., Oct. 7, 2007)*

**Counsel:** **[*1]** For Cybergym Research, LLC, Plaintiff: Carl R Roth, LEAD ATTORNEY, The Roth Law Firm, P.C., Marshall, Tx; Jack Russo, John A D Kelley, Tim C Hale, Russo & Hale, Palo Alto, CA; Michael Charles Smith, Siebman Burg Phillips & Smith, LLP-Marshall, Marshall, TX; William C Milks, III, PRO HAC VICE, Hall Estill Hardwick Gable Golden & Nelson, Palo Alto, CA.

For ICON Health & Fitness, Inc., Defendant: Lawrence Louis Germer, LEAD ATTORNEY, Germer Gertz, Beaumont, TX; David R Wright, Larry R Laycock, PRO HAC VICE, Brett A Hansen, Charles L Roberts, H. Craig Hall, Kirk R Harris, Robert E Aycock, Robert Parrish Freeman, Workman Nydegger, Salt Lake City, UT; Charles W Goehringer, Jr, Germer Gertz, L.L.P., Beaumont, TX.

For Costco Wholesale Corp., The Sports Authority, Inc., Sears Roebuck And Co, Dick's Sporting Goods, Inc., Defendants: Larry R Laycock, LEAD ATTORNEY, PRO HAC VICE, David R Wright, PRO HAC VICE, Brett A Hansen, Charles L Roberts, Kirk R Harris, Robert Parrish Freeman, Workman Nydegger, Salt Lake City, UT; Charles W Goehringer, Jr, Germer Gertz, L.L.P., Beaumont, TX; Lawrence Louis Germer, Germer Gertz, Beaumont, TX.

For ICON Health & Fitness, Inc., Counter Claimant: Lawrence Louis Germer, **[*2]** LEAD ATTORNEY, Germer Gertz, Beaumont, TX; H. Craig Hall, Workman Nydegger, Salt Lake City, UT.

For Cybergym Research, LLC, Counter Defendant: Carl R Roth, The Roth Law Firm, P.C., Marshall, Tx; Michael Charles Smith, Siebman Burg Phillips & Smith, LLP-Marshall, Marshall, TX; Tim C Hale, Russo & Hale, Palo Alto, CA.

For Cybergym Research, LLC, Counter Claimant: Carl R Roth, The Roth Law Firm, P.C., Marshall, Tx; Michael Charles Smith, Siebman Burg Phillips & Smith, LLP-Marshall, Marshall, TX.

For Cybergym Research, LLC, Counter Defendant: Carl R Roth, The Roth Law Firm, P.C., Marshall, Tx; Michael Charles Smith, Siebman Burg Phillips & Smith, LLP-Marshall, Marshall, TX.

For Cybergym Research, LLC, Counter Defendant: Michael Charles Smith, Siebman Burg Phillips & Smith, LLP-Marshall, Marshall, TX.

For Dick's Sporting Goods, Inc., The Sports Authority, Inc., Sears Roebuck And Co, Counter Claimants: Brett A Hansen, Workman Nydegger, Salt Lake City, UT.

For Cybergym Research, LLC, Counter Claimant: Carl R Roth, The Roth Law Firm, P.C., Marshall, Tx; Michael Charles Smith, Siebman Burg Phillips & Smith, LLP-Marshall, Marshall, TX; Tim C Hale, Russo & Hale, Palo Alto, CA.

For Cybergym Research, **[*3]** LLC, Counter Claimant: Carl R Roth, The Roth Law Firm, P.C., Marshall, Tx.

**Judges:** DAVID FOLSOM, UNITED STATES DISTRICT JUDGE.

**Opinion by:** DAVID FOLSOM

# Opinion

## **ORDER**

Before the Court are Defendant's Motion to Exclude the Testimony of Michael Wagner and Strike His Expert Report, Plaintiff's response, Defendant's reply, and Plaintiff's sur-reply. Dkt. Nos. 169, 173, 183 & 188, respectively. Also before the Court are Plaintiff's Cross Motion to Exclude the Testimony of Lance Gunderson and Strike His Expert Report, Defendant's response, and Plaintiff's reply. Dkt. No. 174, 184 & 189, respectively. The Court further considers Defendant's Motion in Limine to Preclude Argument That Accused Machines Need Only Be "Capable Of" Including Claim Limitations In Order To Directly Infringe, Plaintiff's response, Defendant's Motion in Limine to Preclude Testimony By Plaintiff Regarding Direct or Contributory Infringement By Defendant, and Plaintiff's response. Dkt. No. 217, 232, 219 & 234, respectively.

Having considered the briefing, all other relevant papers and pleadings, and the applicable law, the Court finds that Defendant's motion should be **DENIED IN PART** and **GRANTED IN PART** and Plaintiff's cross motion should be **DENIED IN [*4] PART** and **GRANTED IN PART.** The Court also **DENIES** Defendant's Motions in Limine: 1) to Preclude Argument That Accused Machines Need Only Be "Capable Of" Including Claim Limitations In Order to Directly Infringe (Dkt. No. 217); and 2) to Preclude Testimony by Plaintiff Regarding Direct or Contributory Infringement by Defendant (Dkt. No. 219).

## I. BACKGROUND

Plaintiff brings this cause of action alleging infringement of United States Patent Nos. 6,193,631 (the "'631 Patent") and 6,749,537 (the "'537 Patent") (collectively, the "patents-insuit"). Amended Complaint, Dkt. No. 47. The '631 Patent is entitled "Force Script Implementation Over a Wide Area Network" and the '537 Patent is entitled "Method and Apparatus For Remote Interactive Exercise and Health Equipment." Defendant denies infringement, asserts the affirmative defenses of invalidity, unclean hands, waiver, laches, and estoppel, and counterclaims for invalidity and unenforceability.[1] Answer to Amended Complaint, Dkt. No. 57. Plaintiff asserts Claim 6 of the '631 Patent ("Claim 6") and Claims 1 of the '537 Patent ("Claim 1"); Plaintiff no longer asserts Claim 11 of the '631 Patent or Claims 10, 15, and 18 of the '537 Patent. *See* Dkt. **[*5]** No. 141 at 63; Motion Hearing on October 3, 2007.

## II. LEGAL PRINCIPLES

*Federal Rule of Evidence ("Rule") 702* requires that any expert be qualified to testify by "knowledge, skill, experience, training, or education." *Fed. R. Evid. 702*. Specifically, *Rule 702* states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if
> (1) the testimony is based upon sufficient facts or data,
> (2) the testimony is the product of reliable principles and methods, and
> (3) the witness has applied the principles and methods reliably to the facts of the case.

*Id.*

---

[1] Defendant originally asserted a counterclaim for trademark infringement, which has been dismissed. *See* Dkt. No. 135.

Any such testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* When faced with a proffer of expert testimony, it is the trial judge's responsibility to determine, at the outset, whether the expert is proposing to testify to expert knowledge and whether **[*6]** such testimony will assist the trier of fact to understand or determine a fact in issue. *Id.; Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).* In this regard, the trial judge acts as a gatekeeper by requiring a valid connection to the pertinent inquiry and assessing "whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert, 509 U.S. at 592; Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 149, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).*

To constitute expert knowledge that will "assist the trier of fact," the proposed testimony must be both relevant and reliable. *E.I. duPont de Nemours & Co., Inc. v. Robinson, 923 S.W.2d 549, 556 (Tex. 1996).* The trial judge's role is to make the initial determination of whether an expert's opinion is relevant and whether the methods and research upon which it is based are reliable. *Id. at 558.* Relevant testimony is that which is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id. at 556* (quotation omitted). "In addition to being relevant, the underlying scientific technique or principle must be reliable. Scientific evidence which is not grounded 'in the methods **[*7]** and procedures of science' is no more than 'subjective belief or unsupported speculation.'" *Id. at 557* (quoting *Daubert, 509 U.S. at 590*).

A trial court has broad discretion to determine whether expert testimony should be admitted and such decision is reviewed under an "abuse of discretion" standard. *Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); St. Martin v. Mobil Exploration & Producing U.S., Inc., 224 F.3d 402, 405 (5th Cir. 2000).*

## III. THE PARTIES' POSITIONS AND DISCUSSION

### (1) Mr. Wagner's testimony on revenue from subscriptions to the website

Defendant moved to exclude Mr. Wagner's testimony on August 2, 2007. Dkt. No. 169. Defendant claims that Mr. Wagner makes the unreasonable assumption that ICON's iFIT.com website directly infringes the patents-in-suit and calculates the iFIT.com website subscriptions as part of the royalty base. *Id.* at 6. Defendant also argues that the sale of the accused exercise machines are not direct infringement and the damage base should not include the revenue generated from the sale of all accused products. *Id.* at 7.

Plaintiff responds that Mr. Wagner's testimony should not be excluded since as Plaintiff's damages expert, he is not required **[*8]** to provide foundation for an assumption of infringement. Dkt. No. 173 at 2-4. Plaintiff asserts that Claim 1 of the '537 Patent is directly infringed by the iFIT.com-connected exercise equipment and Claim 6 of the '631 Patent is directly infringed by the iFIT.com-compatible fitness equipment. *Id.* at 5-6. As to the iFIT.com website subscriptions, Plaintiff argues that it is allowed to include the revenues from ICON's iFIT.com website subscriptions, since the iFIT.com website is an element of the infringing combination of Claim 1 of the '537 Patent.[2] *Id.* at 5. Plaintiff further argues that the iFit.com website is also an element of other claims that are indirectly infringed. *Id.* at 5-6. As to the accused exercise machines, Plaintiff submits that Defendant reargues its earlier summary judgment motion that there is no direct infringement based on sales of the iFIT.com-compatible fitness equipment. *Id.* at 6.

Defendant replies that Mr. Wagner's assumption is

---

[2] Mr. Wagner testified that he included the subscriptions because "...a product that includes the infringing feature when it's sold is an infringing device of an apparatus claim patent." Wagner Depo. transcript at 19:17-19.

unreasonable **[*9]** because there is no evidence that supports his assumption that the iFIT.com website by itself directly infringes. Dkt. No. 183. at 2-3. Defendant also argues that if Mr. Wagner based his damages calculations on the assumption that the iFIT.com website was an element of the infringing combination, then revenue generated from the sale of accused exercise machines that were never connected to the iFIT.com website and revenue from the website that does not correspond to the streaming of workouts to accused exercise machines should not be included. *Id.* at 3-4.

Plaintiff objects to Defendant's characterization of Mr. Wagner's testimony and expert report, claiming that Mr. Wagner explained the bases for his assumption of direct infringement in previous testimony. Dkt. No. 188 at 1-2. Plaintiff notes that Mr. Wagner previously testified to the effect that the combination of the iFit.com website and iFIT-compatible products is "one act of infringement ... that's not exclusive." *Id.* at 2.

The Court finds it is inappropriate to exclude Mr. Wagner's testimony or expert report based on his assumptions regarding infringement at this time. Similarly, the Court denies Defendant's motions in limine: **[*10]** 1) to preclude argument that accused machines need only be "capable of" including claim limitations in order to directly infringe (Dkt. No. 217); and 2) to preclude testimony by Plaintiff regarding direct or contributory infringement by Defendant (Dkt. No. 219). The Court will consider limitation of damages based on assumptions regarding infringement on post judgment motion if necessary.

### (2) Mr. Wagner's testimony on damages based on retail level revenues

Defendant claims that Mr. Wagner's methodology of including damages for direct and indirect infringement and assessing royalty to the same product multiple times is not based on reliable principles. Dkt. No. 169 at 8. Defendant argues that Plaintiff cannot base liability for both direct infringement and indirect infringement through

inducement on the same act–ICON's sales of the accused products. *Id.* at 8-9. Defendant also argues that Plaintiff may not apply two different royalty rates to the revenue generated from ICON's sales of the accused machines and the revenue generated from the sale of each accused product that was sold by the distributors when Plaintiff already took into account the success of the accused products and profits **[*11]** made by the distributors in calculating the royalty rate for direct infringement through the eighth factor of the Georgia-Pacific test: "the established profitability of the product made under the patent; its commercial success; and its current popularity. *Id.* at 9-12.

Plaintiff responds that Mr. Wagner's methodology "split[s] the calculation between manufacturer/wholesaler and the retailer ... without double counting the unit sales." Dkt. No. 173 at 9. Plaintiff explains that it is "not attempting to extract an additional royalty based on use of the infringing fitness equipment by the retail distributors" but is "simply considering the retail-level revenues ... that would otherwise have been earned by [Defendant] were it selling on a retail basis." *Id.* at 9-10. Plaintiff also claims that the damages calculation breakdown is a "reasonable royalty" issue fit for the jury. *Id.* at 10-12.

Defendant reiterates that Mr. Wagner cannot base theories of direct and indirect infringement on the same sales and that his methodology of accounting for both the retail and wholesale profit margins is flawed since the retail profit margins were already considered in reaching the royalty rate for the wholesale **[*12]** transactions. Dkt. No. 183 at 5.

Plaintiff reemphasizes that Mr. Wagner did not double count the unit sales, but simply split the damages calculation between the manufacturer and retailer. Dkt. No. 188 at 2-3.

"[A] reasonable royalty is not to be separately calculated against each successive infringer. Once full recovery is obtained from one infringer with respect to a particular infringing device, at most nominal additional damages may be awarded

against another with respect to the same device." *Stickle v. Heublein, Inc., 716 F.2d 1550, 1562 (Fed. Cir. 1983)* citing *Aro Manufacturing Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507, 84 S. Ct. 1526, 12 L. Ed. 2d 457, 1964 Dec. Comm'r Pat. 760 (1964)*; *See also Glenayre Elecs. Inc. v. Jackson, 443 F.3d 851, 859 (Fed. Cir. 2006)*. (Holding that the patentee could not recover for indirect infringement for use of the accused products after he had accepted an award of direct infringement for the sales of the same products).

Plaintiff's argument that it simply split the damages between ICON and the retailers indicates that they are arguing that recovery from both the wholesale and retail level is necessary for "full recovery." *See Stickle v. Heublein, Inc., 716 F.2d at 1562*. However, it appears **[*13]** that Plaintiff's expert already included the profits from the retail level in its calculation of the royalty rate for direct infringement by ICON. In *Glenayre*, the Plaintiff argued that it should be allowed to recover for the indirect infringement of the accused products based on the eighth factor of the Georgia-Pacific case. *Glenayre Elecs. Inc. v. Jackson, 443 F.3d at 859-860*. The Court disagreed with Plaintiff, explaining that Plaintiff had already introduced evidence showing the customer's anticipated profits from using the accused products in the first trial where Plaintiff was compensated for direct infringement. *Id.* Conversely, in the present case, Plaintiff is attempting to recover for indirect infringement from ICON for inducing infringement by the retailers, even though revenues at the retail level were already taken into account when calculating the royalty rate for direct infringement. Such "double dipping" cannot be allowed.

Moreover, the Court notes that the Plaintiff's own expert split the calculation between the ICON and the retailers "in the interest of equity"[3] and Plaintiff voluntarily dismissed the retailers from the action

on June 12, 2007 (Dkt. No. 134), "partially **[*14]** in exchange for ICON's dismissal of its trademark infringement counterclaim" (Dkt. No. 207).

Therefore, the Court holds that the portion of Mr. Wagner's expert report applying a royalty rate to the retail level margins for ICON's induced infringement should be excluded, and Mr. Wagner should be precluded from testifying regarding the same.

### (3) Mr. Gunderson's assumptions regarding infringement

Plaintiff also cross-moves to exclude the testimony of Defendant's damages expert, Mr. Gunderson, in the case that Mr. Wagner's testimony is excluded. Dkt. No. 173 & 174. Plaintiff argues that Mr. Gunderson assumed infringement by ICON units identified to him by ICON's attorneys without applying any independent analysis. *Id.* at 13. Defendant responds that Mr. Gunderson's testimony cannot be excluded merely because he assumed infringement when such an assumption is reasonable. Dkt. No. 181 at 8; Dkt. No. 184 at 1-2. Plaintiff replies that Defendant should be estopped from requesting exclusions **[*15]** of Mr. Wagner's testimony since Defendant has also instructed Mr. Gunderson to make assumptions regarding infringement. Dkt. No. 189 at 4.

The Court notes that the Plaintiff moves to exclude the testimony and expert report of Mr. Gunderson, only in the case that the Court excludes Mr. Wagner's testimony and expert report. Since the Court has only partially excluded Mr. Wagner's testimony and expert report and not his assumptions of infringement for the purposes of damage calculations, Plaintiff's motion regarding the assumptions made in Mr. Gunderson's damage calculations[4] is moot.

---

[3] Dkt. No. 173 at 12; Dkt. No. 188 at 4. Also, Mr. Wagner testified that he split the damages between ICON and the retailers because otherwise "it's a little unfair to ICON." Dkt. No. 169, Ex. D at 51:22-52:21.

[4] In this expert report, Mr. Gunderson assumed that Plaintiff may only recover damages on the sales of iFIT compatible fitness machines that were connected to the internet. Dkt. No. 174, Ex. C at 11.

**(4) Timeliness of Plaintiff's** *Daubert* **motion**

Defendant objects to Plaintiff's motion to exclude Mr. Gunderson's testimony and expert report on the basis that it was filed after August 2, 2007, the deadline to file *Daubert* motions. Dkt. No. 181 at 7-8; Dkt. No. 184 at 1. The Court will consider the contents of Plaintiff's cross-motion since Defendant has failed to show prejudice due to the late filing. In addition, **[*16]** the Court finds that this constitutes an objection to exhibits pursuant to *Rule 408 of the Federal Rules of Evidence* ("*Rule 408*") raised under the Final Pre-trial Order.

**(5) Mr. Gunderson's use of offers made in licensing or settlement negotiations**

Plaintiff argues that Mr. Gunderson's damages calculations should be stricken since they were based on a proposal made at a settlement meeting on January 5, 2004. Dkt. No. 173 & 174 at 13-14. Defendant responds that Mr. Gunderson's damage calculations referred to by Plaintiff were not all from the January 5, 2004 meeting and that *Rule 408* only applies to the January 5, 2004 meeting. Dkt. No. 181 at 8-9; Dkt. No. 184 at 2.

"[O]ffers [that] were made after the infringement had begun and litigation was threatened or probable . . . should not be considered evidence of an established royalty, since license fees negotiated in the face of a threat of high litigation costs may be strongly influenced by a desire to avoid full litigation." *Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1078-79 (Fed. Cir. 1983)* (citations and quotations omitted); *See also Rude v. Westcott, 130 U.S. 152, 164, 9 S. Ct. 463, 32 L. Ed. 888, 1889 Dec. Comm'r Pat. 543 (1889)*; See also *Deere & Co. v. International Harvester Co., 710 F.2d 1551, 1556 (Fed. Cir. 1983)* **[*17]** ("An offer to license a patent, which does not result in agreement because considered unacceptably high by the offeree, is an attempt to compromise a disputed claim, at least as to amount, and is also made in compromise negotiations. Hence, such an offer cannot be admissible on the issue of 'established

royalty' or reasonable royalty under *Rule 408, Federal Rules of Evidence.*")

In the present case, it is clear that the "offers" referenced in p. 32 of Mr. Gunderson's expert report, were made when "litigation was threatened." Mr. Hickman states in his letter of January 5, 2004, that "all discussions and materials presented at the meeting were under *Rule 408 of the Federal Rules of Evidence.*" C00794-795. Also, it appears that the possibility of litigation was mentioned at the February 1, 2004 meeting. *See* Dkt. No. 181, Ex. 2 at C00870 ("Damages can go back 6 years from the filing date of a law suit...").

Defendant argues that *Rule 408* only applies to the January 5, 2004 meeting because Mr. Hickman stated his belief that "the only meeting wherein it was agreed that *Rule 408* would apply was on January 5, 2004." C00877, Hickman Letter to Lorimer dated February 11, 2004.[5] However, "[*Rule 408*] **[*18]** does not indicate that there must be a pre-trial understanding or agreement between the parties regarding the nature of the report." *Ramada Dev. Co. v. Rauch, 644 F.2d 1097, 1107 (5th Cir. 1981)*. Evidence is inadmissible under *Rule 408* when it "represents a collection of statements made in the course of an effort to compromise." *Id.* Therefore, all documents that "would not have existed but for" the January 5, 2004 meeting including documents referencing the January 5, 2004 meeting or those that grew out of the same should be excluded. *See Id.* Mr. Gunderson's expert report is excluded to the extent he relied on the offers made in the course of licensing or settlement negotiations during or pursuant to the January 5, 2004 meeting in his calculation of reasonable royalty.

**IV. CONCLUSION**

For all of the foregoing reasons, the Court **DENIES IN PART** and **GRANTS IN PART** Defendant's

---

[5] The Court notes that this statement cannot serve as an understanding of the parties since this letter indicates that Defendant was strongly opposed to this position. See C00877.

2007 U.S. Dist. LEXIS 102194, *18

Motion to Exclude the Testimony of Michael Wagner and Strike His Expert Report (Dkt. No. 169) and **DENIES IN PART** and **GRANTS IN PART** Plaintiff's **[\*19]** Cross Motion to Exclude the Testimony of Lance Gunderson and Strike His Expert Report (Dkt. No. 174). The Court also **DENIES** Defendant's Motions in Limine: 1) to Preclude Argument That Accused Machines Need Only Be "Capable Of" Including Claim Limitations In Order to Directly Infringe (Dkt. No. 217); and 2) to Preclude Testimony by Plaintiff Regarding Direct or Contributory Infringement by Defendant (Dkt. No. 219).

**SIGNED this 7th day of October, 2007.**

/s/ David Folsom

DAVID FOLSOM

UNITED STATES DISTRICT JUDGE