# EXHIBIT 7

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1              UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF CALIFORNIA
3                 SAN FRANCISCO DIVISION
4
5   WAYMO LLC,                          )
                                        )
6              Plaintiff,               )
                                        )  Case No.
7              vs.                      )  3:17-cv-000939-WHA
                                        )
8   UBER TECHNOLOGIES, INC.;            )
    OTTOMOTTO LLC; OTTO TRUCKING,       )
9   INC.,                               )
                                        )
10             Defendants.              )
    _____)
11
12
13    *** HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY ***
14
15         VIDEOTAPED DEPOSITION OF JAMES HASLIM
16                San Francisco, California
17               Wednesday, August 9, 2017
18                      Volume III
19
20
21  Reported by:
22  CARLA SOARES
    CSR No. 5908
23  Job No. 2675900
24
25  Pages 404 - 724
```

Page 404

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1   did to recover this document that you're unable to            11:26:58
2   identify at Uber?
3        A   No.
4        Q   Do you have any understanding as to
5   whether or not this process was done across all               11:27:07
6   files that were potentially damaged that were moved
7   from Otto to Uber?
8        A   No.
9        Q   Were you issued a litigation hold in
10  relation to this case?                                        11:27:23
11       A   Yes.
12       Q   Do you recall when that litigation hold
13  was issued?
14       A   No.
15       Q   Was it before you joined Uber?               11:27:30
16       A   No.
17       Q   So you were issued a litigation hold only
18  after you joined Uber, correct?
19       A   Yes.
20       Q   No litigation hold was issued to Otto,      11:27:42
21  correct?
22       A   Correct, as far as I'm aware.
23       Q   Do you believe that the litigation hold
24  you were issued while you were at Uber was before or
25  after the pivot from Spider to Fuji?                 11:27:59

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A    I believe it was after. | 11:28:04 |
| 2 | Q    And prior to the litigation hold being | |
| 3 | issued, do you believe that there were documents | |
| 4 | that were deleted relating to LiDAR development? | |
| 5 | A    It's possible, but I don't know. | 11:28:22 |
| 6 | Q    You can't say for sure that such documents | |
| 7 | were not deleted, can you? | |
| 8 | MR. KIM:  Objection.  Form. | |
| 9 | THE WITNESS:  I cannot say that files were | |
| 10 | not deleted before that litigation hold. | 11:28:34 |
| 11 | BY MR. SCHMIDT: | |
| 12 | Q    When did you first meet Anthony | |
| 13 | Levandowski? | |
| 14 | A    I don't remember.  I was -- I believe it | |
| 15 | was when I was working with Velodyne, but I don't | 11:28:44 |
| 16 | remember the dates. | |
| 17 | Q    And in what context did you meet | |
| 18 | Mr. Levandowski? | |
| 19 | A    It was within the context of my being an | |
| 20 | engineer for Velodyne and Anthony Levandowski being | 11:28:55 |
| 21 | a customer of Velodyne. | |
| 22 | Q    So you believe that when you first met | |
| 23 | Anthony Levandowski, Mr. Levandowski was affiliated | |
| 24 | with Google; is that correct? | |
| 25 | A    That's my understanding, yes. | 11:29:14 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | Q   And do you have any recollection as to | 11:29:17 |
| 2 | what Mr. Levandowski was seeking from Velodyne in | |
| 3 | relation to these communications? | |
| 4 | A   I don't know what all he was seeking, but | |
| 5 | I recall we had a meeting to discuss potential | 11:29:38 |
| 6 | requirements that Google might like to see on a | |
| 7 | LiDAR sensor. | |
| 8 | Q   Can you identify the time frame that these | |
| 9 | conversations may have occurred? | |
| 10 | A   No. | 11:30:00 |
| 11 | Q   Did you develop a personal relationship | |
| 12 | with Mr. Levandowski at this time? | |
| 13 | MR. KIM:  Objection.  Form. | |
| 14 | THE WITNESS:  I would say it was after. | |
| 15 | BY MR. SCHMIDT: | 11:30:15 |
| 16 | Q   At what time did you develop a personal | |
| 17 | relationship with Mr. Levandowski? | |
| 18 | A   I would say I developed a personal | |
| 19 | relation with Mr. Levandowski after I began working | |
| 20 | for Odin Wave. | 11:30:25 |
| 21 | Q   So your contact with Mr. Levandowski at | |
| 22 | Velodyne did not contribute to your joining Odin | |
| 23 | Wave? | |
| 24 | MR. KIM:  Objection.  Form. | |
| 25 | THE WITNESS:  Could you be specific in | 11:30:44 |

Page 494

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Q   Did it make sense, the way I state it, at | 11:38:21 |
| 2 | the time? | |
| 3 | MR. KIM:  Objection.  Form. | |
| 4 | THE WITNESS:  I'm trying to remember what | |
| 5 | I was thinking at the time, which is -- I don't | 11:38:31 |
| 6 | recall the details, but it seemed if somebody had | |
| 7 | stated a theory that it was regarding this change of | |
| 8 | part.  I didn't understand the need for this change, | |
| 9 | but I don't remember if it made sense at the time or | |
| 10 | not regarding your theory -- | 11:38:49 |
| 11 | BY MR. SCHMIDT: | |
| 12 | Q   But -- | |
| 13 | A   -- to conceal Odin Wave. | |
| 14 | Q   But at least now you would agree with me | |
| 15 | that the name change may have been for purposes of | 11:39:01 |
| 16 | concealing the existence of Tyto LiDAR, correct? | |
| 17 | MR. KIM:  Objection.  Calls for | |
| 18 | speculation. | |
| 19 | THE WITNESS:  Repeat the question, please. | |
| 20 | BY MR. SCHMIDT: | 11:39:22 |
| 21 | Q   My understanding of your testimony is that | |
| 22 | sitting here today, you would agree with me that | |
| 23 | Odin Wave's changing its name to Tyto LiDAR was for | |
| 24 | the purposes of concealing its identity, correct? | |
| 25 | MR. KIM:  Objection.  Calls for | 11:39:37 |

| | | |
|---|---|---|
| 1 | speculation, mischaracterizes testimony. | 11:39:38 |
| 2 | THE WITNESS:  It's possible.  Maybe, yes. | |
| 3 | BY MR. SCHMIDT: | |
| 4 | Q   Who did you hear -- strike that. | |
| 5 | Who told you that Odin Wave had ordered a | 11:39:53 |
| 6 | part that resembled a part supplied to Google? | |
| 7 | A   I'm not sure. | |
| 8 | Q   You can't remember? | |
| 9 | A   I'm not sure. | |
| 10 | Q   When you heard this fact, did it concern | 11:40:08 |
| 11 | you? | |
| 12 | MR. KIM:  Objection.  Assumes facts not in | |
| 13 | evidence. | |
| 14 | THE WITNESS:  No. | |
| 15 | BY MR. SCHMIDT: | 11:40:15 |
| 16 | Q   You knew at this time that Anthony | |
| 17 | Levandowski was an employee of Google, correct? | |
| 18 | A   Yes. | |
| 19 | Q   Did you ever consider that Anthony | |
| 20 | Levandowski might be infecting Odin Wave's | 11:40:26 |
| 21 | technology with Google confidential information? | |
| 22 | MR. KIM:  Objection.  Form. | |
| 23 | THE WITNESS:  No. | |
| 24 | BY MR. SCHMIDT: | |
| 25 | Q   You never considered that possibility? | 11:40:39 |

Page 501

| | | |
|---|---|---|
| 1 | A   No. | 11:40:40 |
| 2 | Q   Even after you heard that a part had been | |
| 3 | ordered for Odin Wave resembling a part that was | |
| 4 | supplied to Google, correct? | |
| 5 | A   Correct. | 11:40:54 |
| 6 | Q   Sitting here today, do you have any | |
| 7 | concerns that the technology developed at Tyto LiDAR | |
| 8 | may have been infected by Anthony Levandowski with | |
| 9 | Google confidential information? | |
| 10 | A   No. | 11:41:18 |
| 11 | Q   You don't believe that occurred? | |
| 12 | A   Correct. | |
| 13 | Q   And what is the basis for that belief? | |
| 14 | A   My basis for that belief is the -- my | |
| 15 | involvement with the development of the technology | 11:41:34 |
| 16 | at Tyto LiDAR and my belief that I did not receive | |
| 17 | any confidential information from Anthony | |
| 18 | Levandowski. | |
| 19 | Q   But Mr. Levandowski provided input to the | |
| 20 | designs at Tyto LiDAR, didn't he? | 11:41:52 |
| 21 |        MR. KIM:  Objection.  Form. | |
| 22 |        THE WITNESS:  Anthony Levandowski did | |
| 23 | provide input of a general concept nature, | |
| 24 | information that I believe would be publicly | |
| 25 | available. | 11:42:09 |

Page 502

```
 1   BY MR. SCHMIDT:                                        11:42:10

 2       Q   How do you know that amongst the input

 3   that Anthony Levandowski was providing to you during

 4   your work at Tyto LiDAR -- strike that.

 5           With regards to the input that              11:42:29

 6   Mr. Levandowski provided to you at Tyto LiDAR, how

 7   do you know that it did not involve Google

 8   confidential information?

 9       A   As I recall the information he provided,

10   for instance, of fiber laser architecture, I was       11:42:53

11   able to find similar information online.

12       Q   Did Mr. Levandowski provide you any

13   information other than fiber laser architecture?

14       A   I'm trying to remember.  It's vague.  He

15   also provided insight into an optical circulator.      11:43:30

16       Q   Anything else?

17       A   I don't recall.

18       Q   You can't recall whether or not Anthony

19   Levandowski provided input into any other LiDAR

20   development concepts other than the ones you've        11:43:55

21   stated here, correct?

22       A   Correct.

23       Q   And yet you're sure that Anthony

24   Levandowski's input could not have infected Tyto

25   LiDAR with Google's confidential information,          11:44:10
```

Page 503

| | | |
|---|---|---|
| 1 | correct? | 11:44:11 |
| 2 |     A   I do not recall anything that he provided | |
| 3 | that I could have considered confidential | |
| 4 | information. | |
| 5 |     Q   You don't have any knowledge of Google's | 11:44:22 |
| 6 | confidential information, do you? | |
| 7 |     A   No. | |
| 8 |     Q   Then how would you know whether or not the | |
| 9 | input he was providing relating to -- related to | |
| 10 | Google's confidential information? | 11:44:33 |
| 11 |     A   I'm basing it on my belief of the | |
| 12 | information relating to publicly available | |
| 13 | information. | |
| 14 |     Q   With respect to the input that Anthony | |
| 15 | Levandowski provided, did you do an analysis to | 11:44:45 |
| 16 | determine whether or not it was in the public domain | |
| 17 | on an input-by-input basis? | |
| 18 |     A   I don't recall if I've done that for | |
| 19 | everything, but I believe it ended up occurring that | |
| 20 | way. | 11:45:05 |
| 21 |     For instance, in my research to make the | |
| 22 | fiber laser, I came across documents showing me | |
| 23 | architectures that were similar, realizing that an | |
| 24 | optical circulator, which I had not previously been | |
| 25 | familiar with, was an off-the-shelf component. | 11:45:20 |

Veritext Legal Solutions
866 299-5127

```
 1            I would say I was able to determine those      11:45:27
 2   are not confidential information.
 3       Q   But you can't sit here today and testify
 4   that everything that Anthony Levandowski told you
 5   while you were at Tyto LiDAR was in the public          11:45:39
 6   domain, can you?
 7       A   No, I can't, other than to say it seemed
 8   like just general concept information.
 9       Q   But you're not sure, are you?
10       A   I have no reason to believe otherwise, but     11:46:01
11   I suppose I can't be more sure than that.
12       Q   You're not sure, are you?
13           MR. KIM:  Objection.  Asked and answered.
14           THE WITNESS:  I guess I am not sure, but I
15   have no reason to believe otherwise.                   11:46:22
16   BY MR. SCHMIDT:
17       Q   This fiber laser architecture, which you
18   stated that you believed was in the public domain,
19   how does that differ from the fiber laser
20   architecture that you testified earlier today that    11:46:36
21   you thought was potentially patentable at Uber?
22       A   The design I was discussing as being
23   potentially patentable at Uber was not a fiber laser
24   but a fiber amplifier, which would be considered a
25   simplification of a part of that architecture.        11:47:01
```

| | | |
|---|---|---|
| 1 | Q    How was the fiber amplifier that you | 11:47:07 |
| 2 | potentially considered patentable at Uber a | |
| 3 | simplification of the architecture that Anthony | |
| 4 | Levandowski suggested to you at Tyto? | |
| 5 | MR. KIM: Objection. Form. | 11:47:22 |
| 6 | THE WITNESS: It's a simplification in | |
| 7 | that it would involve the first handful of | |
| 8 | components and remove the seed component. | |
| 9 | BY MR. SCHMIDT: | |
| 10 | Q    How would the amplifier that you were | 11:47:42 |
| 11 | considering at Uber remove the seed component? | |
| 12 | A    The seed becomes a signal that is | |
| 13 | amplified in a fiber laser. But for a fiber | |
| 14 | amplifier, you would have to eliminate that source | |
| 15 | and replace it with a signal of your own. | 11:48:06 |
| 16 | Q    And you believe that this elimination of | |
| 17 | the source and replacement with a signal of your own | |
| 18 | resulted in a simplification that was potentially | |
| 19 | patentable for Uber, correct? | |
| 20 | MR. KIM: Objection. Form. | 11:48:29 |
| 21 | THE WITNESS: Regarding "potentially | |
| 22 | patentable at Uber," I was only considering the use | |
| 23 | of a fiber amplifier, not that a fiber amplifier is | |
| 24 | a simplification of a fiber laser. | |
| 25 | /// | 11:48:45 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1      I, the undersigned, a Certified Shorthand
2  Reporter of the State of California, do hereby
3  certify:
4      That the foregoing proceedings were taken
   before me at the time and place herein set forth;
5  that any witnesses in the foregoing proceedings,
6  prior to testifying, were administered an oath; that
7  a record of the proceedings was made by me using
8  machine shorthand which was thereafter transcribed
   under my direction; that the foregoing transcript is
9  a true record of the testimony given.
10      Further, that if the foregoing pertains to
11  the original transcript of a deposition in a Federal
12  Case, before completion of the proceedings, review
   of the transcript [X] was [ ] was not requested.
13      I further certify I am neither financially
14  interested in the action nor a relative or employee
15  of any attorney or any party to this action.
       IN WITNESS WHEREOF, I have this date
16  subscribed my name.
17
18  Dated: August 10, 2017
19
20
21
22
23       *Carla Soares* (signature)
24       CARLA SOARES
25       CSR No. 5908

Page 724

Veritext Legal Solutions
866 299-5127