# EXHIBIT 9

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN FRANCISCO DIVISION
 4
     WAYMO LLC,
 5
                  Plaintiff,
 6                                             Case
     vs.                                       No. 3:17-cv-00939-WHA
 7
     UBER TECHNOLOGIES, INC.;
 8   OTTOMOTTO LLC; OTTO TRUCKING LLC,
 9                Defendants,
     _____/
10
11
12
13
14
15       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
16          VIDEOTAPED DEPOSITION OF JAMES HASLIM
17                       VOLUME II
18                 THURSDAY, MAY 4, 2017
19
20
21
22   Reported by:
23   Anrae Wimberley
24   CSR No. 7778
25   Job No.  2610396
```

Page 113

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   Other than Mr. Feldman, who are you aware of | 10:24:20 |
| 2 | that most closely works with Mr. Levandowski on a | 10:24:27 |
| 3 | day-to-day basis? | 10:24:29 |
| 4 | A.   On a day-to-day basis, the only other | 10:24:32 |
| 5 | employee I'm aware of that works closely with him I | 10:24:35 |
| 6 | would say is Eric Meyhofer. | 10:24:44 |
| 7 | Q.   Mr. Meyhofer, how do you know him? | 10:24:50 |
| 8 | A.   Eric is my boss. | 10:24:52 |
| 9 | Q.   How long have yourself and Mr. Meyhofer known | 10:24:59 |
| 10 | each other? | 10:25:00 |
| 11 | A.   I met Eric Meyhofer -- I don't remember when, | 10:25:09 |
| 12 | but I can tell you it was when he visited Tyto LiDAR | 10:25:13 |
| 13 | with Scott Boehmke, and they visited to evaluate our | 10:25:20 |
| 14 | products. | 10:25:21 |
| 15 | Q.   And you said you didn't remember when this | 10:25:26 |
| 16 | meeting was. | 10:25:30 |
| 17 |      Can you give it a year? | 10:25:31 |
| 18 | A.   It was prior to acquisition by Otto, but a | 10:25:40 |
| 19 | significant time went by between our meeting and being | 10:25:46 |
| 20 | acquired by Otto.  So I don't even want to hazard the | 10:25:52 |
| 21 | year, because it could be off. | 10:25:55 |
| 22 | Q.   So there was a meeting between Mr. Meyhofer, | 10:26:03 |
| 23 | Mr. Boehmke and Tyto LiDAR; is that right? | 10:26:08 |
| 24 | A.   That's right. | 10:26:09 |
| 25 | Q.   And it was sometime before the acquisition of | 10:26:12 |

Page 126

| | | |
|---|---|---|
| 1 | Tyto by Otto; correct? | 10:26:15 |
| 2 | A. Correct. | 10:26:15 |
| 3 | Q. Who else was at that meeting? | 10:26:19 |
| 4 | A. That would have included Brent Schwarz.  I'm | 10:26:26 |
| 5 | not certain whether Mike Karasoff would have been at | 10:26:30 |
| 6 | that meeting as well. | 10:26:32 |
| 7 | Q. Anybody else? | 10:26:32 |
| 8 | A. I don't recall. | 10:26:33 |
| 9 | Q. Was Mr. Levandowski at that meeting? | 10:26:37 |
| 10 | A. Not that I recall. | 10:26:38 |
| 11 | Q. You're not sure, though? | 10:26:41 |
| 12 | A. I'm fairly sure that he was not.  That would | 10:26:45 |
| 13 | have been awkward. | 10:26:48 |
| 14 | Q. You said, "That would have been awkward." | 10:26:50 |
| 15 | Why do you say that? | 10:26:52 |
| 16 | A. Well, he wasn't an employee of Tyto. | 10:26:57 |
| 17 | Q. Mr. Levandowski. | 10:26:57 |
| 18 | A. That's what I meant. | 10:26:59 |
| 19 | Q. So you're saying it would have been awkward | 10:27:02 |
| 20 | for Mr. Levandowski to be involved in a meeting | 10:27:06 |
| 21 | between Tyto and Uber because he wasn't involved in | 10:27:10 |
| 22 | Tyto; is that right? | 10:27:12 |
| 23 | A. It would be awkward because he was not an | 10:27:14 |
| 24 | employee, yes. | 10:27:15 |
| 25 | Q. So I see you changed words there a little | 10:27:17 |

Page 127

| | | |
|---|---|---|
| 1 | bit -- | 10:27:17 |
| 2 | A. I did. | 10:27:19 |
| 3 | Q. -- and I just want to clarify that. | 10:27:20 |
| 4 | Why did you change -- my question was about | 10:27:23 |
| 5 | whether he was involved, and you answered about | 10:27:26 |
| 6 | whether he was an employee. | 10:27:27 |
| 7 | Why did you do that? | 10:27:28 |
| 8 | A. Because I would need clarification on the | 10:27:31 |
| 9 | word "involved." We would occasionally have dinner, | 10:27:38 |
| 10 | chat, see how the business was going on a friendly | 10:27:41 |
| 11 | term. | 10:27:42 |
| 12 | Q. What is your understanding as to | 10:27:43 |
| 13 | Mr. Levandowski's involvement in Tyto LiDAR? | 10:27:48 |
| 14 | A. My understanding of his involvement with Tyto | 10:27:53 |
| 15 | LiDAR was he was providing us a place of work when we | 10:27:58 |
| 16 | were still Odin Wave, early -- when we were getting | 10:28:02 |
| 17 | started. He sourced contract employees. He was a | 10:28:11 |
| 18 | friend who would stop by occasionally for chats. | 10:28:15 |
| 19 | Q. Chats about what? | 10:28:16 |
| 20 | A. What we're working on, what would the next | 10:28:21 |
| 21 | product be if we finished the current product. | 10:28:24 |
| 22 | Q. Why were you chatting with Mr. Levandowski | 10:28:26 |
| 23 | about what you were working on at Tyto LiDAR? | 10:28:29 |
| 24 | A. I couldn't tell you -- if your question is | 10:28:34 |
| 25 | why that was appropriate or why that was something | 10:28:41 |

Page 128

| | | |
|---|---|---|
| 1 | that was to discuss, the question came up, he would | 10:28:45 |
| 2 | ask, we would talk. | 10:28:47 |
| 3 | Q.   Was there anyone else that you would have | 10:28:50 |
| 4 | these kind of chats with, that weren't employees, | 10:28:53 |
| 5 | about your work at Tyto? | 10:28:58 |
| 6 | A.   Not that I recall. | 10:29:02 |
| 7 | Q.   Did you ever raise to any of your fellow | 10:29:05 |
| 8 | employees at Tyto LiDAR, hey, why are we talking with | 10:29:10 |
| 9 | Mr. Levandowski about the work that we're doing? | 10:29:14 |
| 10 | A.   No. | 10:29:14 |
| 11 | Q.   Never came up? | 10:29:16 |
| 12 | A.   Not to my recollection. | 10:29:17 |
| 13 | Q.   You never asked anyone? | 10:29:18 |
| 14 | A.   No. | 10:29:18 |
| 15 | Q.   You didn't think it was odd that this person | 10:29:21 |
| 16 | who doesn't work for the company was talking about | 10:29:23 |
| 17 | your work with you? | 10:29:24 |
| 18 | A.   No. | 10:29:25 |
| 19 | Q.   Did you know that Mr. Levandowski was working | 10:29:27 |
| 20 | on LiDAR at Waymo at the time? | 10:29:31 |
| 21 | A.   I knew he was working for Google at the time, | 10:29:35 |
| 22 | and I didn't know the details of what specifically he | 10:29:39 |
| 23 | was working on. | 10:29:41 |
| 24 | Q.   Have you ever spoken with Mr. Levandowski | 10:29:44 |
| 25 | about ████████████████████████████████████ | 10:29:51 |

| | | |
|---|---|---|
| 1 | A. Yes. | 10:29:51 |
| 2 | Q. When? | 10:29:52 |
| 3 | A. This would be some date, I can't recall when, | 10:30:01 |
| 4 | at Tyto LiDAR. | 10:30:05 |
| 5 | Q. And what did you guys talk about? | 10:30:12 |
| 6 | A. We talked about our need to design our own | 10:30:15 |
| 7 | fiber laser in order to eliminate costs and lead time. | 10:30:21 |
| 8 | And he gave me what I would call a tech tutorial on | 10:30:29 |
| 9 | fiber lasers. | 10:30:31 |
| 10 | Q. What did he say? | 10:30:35 |
| 11 | A. I don't remember the words of our | 10:30:37 |
| 12 | conversation. | 10:30:38 |
| 13 | Q. Tell me everything you remember about that | 10:30:40 |
| 14 | conversation, please. | 10:30:41 |
| 15 | A. He -- trying to recall -- described a | 10:30:53 |
| 16 | schematic, a layout, an approach for ▮▮▮▮ ▮▮▮▮ | |
| 17 | ▮▮▮▮ ▮▮▮▮), generally how they work.  Told me | 10:31:03 |
| 18 | to go find a YouTube video from a professor on lasers | 10:31:09 |
| 19 | in general.  I believe he recommended some suppliers. | 10:31:18 |
| 20 | Q. Who are the suppliers? | 10:31:20 |
| 21 | A. I believe he recommended ▮▮▮▮ ▮▮▮▮ | |
| 22 | ▮▮▮▮).  And I believe he recommended ▮▮▮▮). | 10:31:41 |
| 23 | Q. And ▮▮▮▮, that's the same vendor used for | 10:31:47 |
| 24 | the fiber in the Spider design; right? | 10:31:51 |
| 25 | A. Yes. | 10:31:51 |

Page 130

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  CERTIFICATE OF DEPOSITION OFFICER

2  I, ANRAE WIMBERLEY, CSR NO. 7778, duly authorized
3  to administer oaths pursuant to Section 8211 of the
4  California Code of Civil Procedure, hereby certify
5  that the witness in the foregoing deposition was by me
6  sworn to testify to the truth, the whole truth and
7  nothing but the truth in the within-entitled cause;
8  that said deposition was taken at the time and place
9  therein stated; that the testimony of said witness was
10 reported by me and was thereafter transcribed by me or
11 under my direction by means of computer-aided
12 transcription; that the foregoing is a full, complete
13 and true record of said testimony; and that the
14 witness was given an opportunity to read and correct
15 said deposition and to subscribe same.
16 I further certify that I am not of counsel or
17 attorney for either or any of the parties in the
18 foregoing deposition and caption named, nor in any way
19 interested in the outcome of the cause named in said
20 caption.
21 IN WITNESS WHEREOF, I have hereunto subscribed by
22 my hand this 5th day of May, 2017.
23 *[signature: Anrae Wimberley]*
24
   ANRAE WIMBERLEY, CSR NO. 7778
25

Page 403