```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3      Before The Honorable Jacqueline Scott Corley, Judge
 4
 5  WAYMO, LLC,                    )
                                   )
 6            Plaintiff,           )
                                   )
 7  vs.                            )  No. C 17-00939-WHA
                                   )
 8  UBER TECHNOLOGIES, INC.,       )
    et al.,                        )
 9                                 )
              Defendants.          )
10  _____)
11                                    San Francisco, California
                                      Thursday, September 28, 2017
12
13    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                 RECORDING 2:14 - 2:36 = 22 MINUTES
14
    APPEARANCES:
15
    For Plaintiff:
16                                    Quinn, Emanuel, Urquhart
                                        & Sullivan, LLP
17                                    50 California Street
                                      22nd Floor
18                                    San Francisco, California
                                        94111
19                             BY:    DAVID A. PERLSON, ESQ.
                                      JAMES D. JUDAH, ESQ.
20
                                      Quinn, Emanuel, Urquhart
21                                      & Sullivan
                                      51 Madison Avenue
22                                    22nd Floor
                                      New York, New York 10010
23                             BY:    MONICA E. TARAZI, ESQ.
24
25          (APPEARANCES CONTINUED ON NEXT PAGE)
```

*Echo Reporting, Inc.*

```
 1  APPEARANCES:

 2  For Uber and Ottomotto:
                                Boies, Schiller & Flexner, LLP
 3                              1999 Harrison Street
                                Suite 900
 4                              Oakland, California 94612
                        BY:     KAITLYN M. MURPHY, ESQ.
 5
                                Morrison & Foerster, LLP
 6                              1999 Harrison Street
                                Suite 3500
 7                              Los Angeles, California 90013
                        BY:     SYLVIA RIVERA, ESQ.
 8
     For Otto Trucking:
 9                              Goodwin Procter, LLP
                                Three Embarcadero Center
10                              San Francisco, California
                                   94111
11                      BY:     HAYES PHILLIPS HYDE, ESQ.

12
     Transcribed by:            Echo Reporting, Inc.
13                              Contracted Court Reporter/
                                Transcriber
14                              echoreporting@yahoo.com

15

16

17

18

19

20

21

22

23

24

25
```

3

1  Thursday, September 28, 2017                              2:14 p.m.
2                      P-R-O-C-E-E-D-I-N-G-S
3                            --oOo--
4           THE COURT: Good afternoon. This is Judge Corley.
5  Who do I have on the line for Waymo?
6           THE CLERK: We have to wait for --
7           THE COURT: Oh, sorry. Good afternoon. This is
8  Judge Corley. Who do I have on the line for Waymo?
9           MR. JUDAH (telephonic): James Judah, and to the
10 extent I think David Perlson is dialing in now. He got
11 kicked off, and --
12          MS. TARAZI (telephonic): This is Monica Tarazi.
13 I'm on too.
14          MR. JUDAH: Right.
15          THE COURT: Monica, I'm sorry, what was your last
16 name?
17          MS. TARAZI: Forgive me. Tarazi, T-A-R-A-Z-I.
18          THE COURT: Thank you.
19     All right. And do I have someone for Uber? Is anyone
20 on the line for Uber?
21          MS. MURPHY (telephonic): Your Honor, this is
22 Kaitlyn Murphy. I'm under the impression that someone from
23 Morrison and Foerster will also be joining.
24          THE COURT: Okay. We'll wait then.
25     All right. And is Mr. Cooper on the line? No. Is

4

1  there anybody else on the line?
2          MS. HYDE (telephonic):  Your Honor, this is Hayes
3  Hyde for Otto Trucking.
4          THE COURT:  Okay.
5          MR. JUDAH:  I just emailed the group, including
6  Mr. Cooper.
7          THE COURT:  Okay.  Thank you.  Are we expecting
8  counsel for any non-parties?
9          MR. JUDAH:  I do not believe so.
10         THE COURT:  Okay.  So we are recording this, but
11 nobody is in the courtroom, nobody other than court staff.
12         MS. MURPHY:  Your Honor, this is Kaitlyn Murphy.
13 I'm seeing an email from Mr. Cooper that has suggested
14 people try to dial back in at 2:20, the folks who have been
15 kicked off.  So that's why there might be a delay.
16         THE COURT:  Okay.  That's fine.  We're close.
17         MR. PERLSON (telephonic):  Hi.  This is David
18 Perlson.
19         THE COURT:  Hi, Mr. Perlson.
20         MR. PERLSON:  Good afternoon.
21    (Pause.)
22         THE COURT:  Is that you, Mr. Cooper?
23         MS. RIVERA (telephonic):  Your Honor, this is
24 Sylvia Rivera for Uber and Ottomotto.
25         THE COURT:  Okay.  So I have Ms. Murphy on the

1 line as well.  Are you expecting anyone else?
2          MS. RIVERA:  I think that's it, your Honor.
3          THE COURT:  Okay.  All right.  And we're waiting
4 for Mr. Cooper.
5          Is that you, Mr. Cooper?
6          MR. COOPER (telephonic):  Yes, it is.
7          THE COURT:  Great.  Okay.  I think we have
8 everyone on the line then.  All right.
9          MR. COOPER:  Okay.  Thank you.
10          THE COURT:  How many I help you?  Who wants to
11 start?
12          MR. PERLSON:  Your Honor, this is David Perlson.
13 I can briefly start.
14      So last night we got an email late from Uber saying
15 that they had discovered a -- a domain of documents form Mr.
16 Levandowski during the time at which he was Otto -- at
17 Ottomotto, which is the entity that was acquired by Uber,
18 that they had never searched before, and apparently today
19 we're being told that there are 15,000 emails on it and 85
20 gigabytes of other documents.  So I -- that's a large
21 number, but I have no idea how many documents that
22 translates to.
23      So this morning we asked for immediate production of
24 those documents to us in a similar way that the -- you know,
25 you ordered the images yesterday, and an hour or two before

this call, Uber agreed to do that for the emails, but it was unclear whether the documents and then -- and didn't give a specific time.  And so we asked for that time, and then I guess, you know, probably right at 2:00 o'clock, we got an email from Uber saying that they would be providing the -- the documents this evening.  I think Ms. Rivera can probably provide more detail specifically as to what they are planning to do.

So I guess we -- in the interim time since this was set, we've gotten closer to resolution of the issue with -- at least with the immediate concern of getting the materials to us.

We had also requested -- asked some questions about -- you know, to be told in writing, you know, how was this discovered --

THE COURT:  Okay.  So let -- yeah, let's -- I -- I -- so, Mr. Cooper had alerted us to the issue.

So, well, let me hear from Ms. Rivera.  So they'll all be produced tonight, is that correct?

MS. RIVERA:  Yes, your Honor.  The emails are going to be produced in the manner in which the parties have regularly been receiving documents, which is, you know, they've been processed into a relativity database and will be produced in a manner that can be directly loaded up to a database by Waymo.

1   The google drive data is a little bit more unwieldy and
2 takes longer to process and will not be processed by today.
3 So in the interest of getting that over to Waymo, you know,
4 essentially ASAP, we're producing that in its raw
5 unprocessed format, but those are happening -- those are
6 both in process right now.  The google drive data, I can get
7 that over.
8   Mr. Perlson, I can get that over to you via messenger
9 on a hard drive in the next couple of hours.
10          MR. PERLSON:  Great.
11          MS. RIVERA:  The email -- the emails are going to
12 take until tonight, but they will be in a much -- you know,
13 in a perfectly user friendly format.
14          THE COURT:  Okay.  All right.  So then I -- what
15 I'd like you to do, Uber, is by noon tomorrow to file a
16 declaration that details, you know, how these were just
17 found, weren't found before, and the like, where they were
18 found, why they weren't found, how they were found.  Okay?
19          MS. RIVERA:  Understood.
20          THE COURT:  Okay.
21          MS. RIVERA:  Thank you, your Honor.
22          THE COURT:  All right.  Now, was there any other
23 issue I believe?  Maybe those have resolved.
24          MR. PERLSON:  I think there was another issue.
25 Mr. -- Mr. Judah will handle that on --

1              THE COURT:  Okay.
2              MR. PERLSON:  -- on our end.
3              MR. JUDAH:  The other issue, your Honor -- this is
4  James Judah -- is Waymo had an expedited RFP seeking the --
5  the invoices related to the actual Stroz investigation.  We
6  had email confirmation during the discovery period that
7  pending resolution of the Federal Circuit order, the
8  invoices would be produced at least in redacted form, you
9  know, to redact -- if there's any privilege remaining over
10 the descriptions of the work, that could be redacted, but we
11 would get at least the -- you know, the amounts of the money
12 and the dates that the invoices were submitted.
13      We've now learned that Uber intends to withhold any of
14 the invoices after I guess April 11th in their entirety.
15             THE COURT:  Okay.  All right.  Let me hear from
16 Uber, but I think the amount is at issue in this case.  I
17 think it's discoverable, not -- not the work product line.
18 That can go, but the amount is discoverable, unless you want
19 to try to convince me otherwise.  But, particularly, how --
20             MS. RIVERA:  Sure, your Honor.
21             THE COURT:  Yeah, okay.
22             MS. RIVERA:  This -- this is Ms. Rivera again.
23 The -- the request that, frankly, is pending on our end
24 right now as I understand it is just to give them the -- the
25 amount, which I think that we are in agreement with your

1  Honor that we can do that.  I guess the real question is do
2  we have to do it in the sense of, you know, let's say
3  there's a 10-page invoice, you know, redacting 10 pages of
4  invoice to just show the amount at the bottom or can we just
5  tell them what the amount is.
6          THE COURT:  Yeah, what -- and Mr. Friedburg
7  (phonetic) is going deposed today, correct?
8          MR. PERLSON:  Yes, on the east coast.  It's
9  probably almost over.
10         THE COURT:  Well, text them.  Make sure they ask
11 him.
12         MR. PERLSON:  Well, you said, your Honor, also
13 that -- well, we did ask him about payment.  I don't know
14 if, you know, they'll have these materials, but yes.  And,
15 remember, you had indicated that, you know, we could request
16 another deposition as well.
17         THE COURT:  Well, I think --
18         MS. RIVERA:  Your Honor, this is Ms. Rivera --
19         THE COURT:  I think you may be able to.
20         MS. RIVERA:  We --
21         THE COURT:  I think you may be able to.  Ms.
22 Rivera?
23         MR. PERLSON:  I'm not saying you guaranteed.
24         THE COURT:  You don't get it to ask questions that
25 you could have asked the first time.  Okay.

         MR. PERLSON:  Right.  But we don't have the -- but it's one thing to not have the materials to ask it, but, anyway, I think he's asking questions to the extent he can based on what we have.

         THE COURT:  Right.  So but the question is what you're looking for is the amount.  Ms. Rivera says they're willing to give you amount.  Do you need anything more than that?

         MR. JUDAH:  I mean, without seeing what we're actually getting and in what form, it's difficult to say, but we're obviously interested in the total amount.  So --

         THE COURT:  Right.  Okay.

         MR. JUDAH:  -- if that's provided in a verified way, I think that would probably suffice.

         THE COURT:  Perfect.  So provide it in a verified admissible format.  Okay.  Does that make sense, Ms. Rivera?

         MS. RIVERA:  Yes.  So provide it in a verified admissible format.

         THE COURT:  Correct.

         MS. RIVERA:  Understood.

         THE COURT:  Okay.  Any other issues?

         MR. PERLSON:  This is David Perlson again.  I don't know that we need to address it on this call, but I saw this morning that Defendants had indicated --

```
 1            THE COURT:  Oh.
 2            MR. PERLSON:  -- some supplemental brief on the
 3  Leo Ron (phonetic) issue.
 4            THE COURT:  Right.  Right.
 5            MR. PERLSON:  And --
 6            THE COURT:  Thank you for bringing that up.  So
 7  this is -- this is my -- this is my question I guess for Ms.
 8  Murphy or Ms. Rivera.  Are any of those documents that Mr.
 9  Ron erroneously put on his profits log on Uber's privileged
10  log?
11            UNIDENTIFIED SPEAKER:  I struggle with the answer
12  to that question, your Honor, because really the answer is
13  I'm not sure.
14            THE COURT:  Okay.
15            UNIDENTIFIED SPEAKER:  I believe that at least as
16  to some of them the answer is no because they're not
17  documents that Uber had, you know, in its -- in its
18  possession.  For example, if it's an email that was sent
19  between Mr. Ron's, you know, personal gmail account and the
20  lawyers for Ottomotto on the deal, you know, then those may
21  not be emails that we had access to, particularly if they
22  didn't have anything to do with the Stroz diligence.
23            THE COURT:  Okay.  So this is my ruling, that if
24  they're not already logged, it's too late.  Mr. Ron's
25  submission to the Court made it clear -- made it clear, and
```

1  that's what I used to bring it up -- that he was asserting a
2  privilege on behalf of Otto.  Otto then had the opportunity
3  to raise privilege at that time and it did not.  But if it
4  is logged, if the communication is logged, Mr. Ron can't
5  waive it for them.  So then -- then the privilege can stay,
6  but if -- if it's not logged, then it's too late to log it
7  now.
8          UNIDENTIFIED SPEAKER:  And, your Honor, this would
9  apply even as to -- to emails or communications that Uber
10 didn't have access to thus could not --
11         THE COURT:  No.  Uber did have access to it.  When
12 it purchased Ottomotto, could have -- Mr. Ron actually works
13 for Uber, if I'm not correct, or at least did.  Is he
14 still --
15         MR. PERLSON:  That's correct. He still works
16 there.
17         THE COURT:  Yeah.  So Uber, in fact, did have
18 access to those.  And when it purchased Ottomotto, I assumed
19 it knew that Otto was actually -- as Mr. Tatergy (phonetic)
20 has told me, had no server of its own and, therefore, it was
21 doing all its business through its executives' gmail
22 accounts and had every opportunity to acquire those emails.
23 So it did have access to them.  It may not have availed
24 itself of that opportunity, but it did have access to them.
25 So, yes, it does apply to those documents because I believe

13

1  they did have access to them up until now.  Mr. Ron still
2  works for Uber.
3       MR. PERLSON:  And, your Honor, this issue --
4  there's all sorts of documents that are on the Ron log that
5  we just got recently after the Stroz -- after the Federal
6  Circuit's ruling that are also, my guess is, only Ottomotto,
7  that are not on Uber's log, and we think the ruling should
8  apply equally to those.
9       THE COURT:  Well --
10      MS. RIVERA:  Your Honor --
11      THE COURT:  -- what was raised --
12      MS. RIVERA:  -- if I can be heard.
13      THE COURT:  Yeah.  What was raised by Mr.
14 Gonzalez's letter and what has been raised is what was on
15 Mr. Ron's privilege log.  So I'm not going to give you
16 advance.  However, you can make whatever argument to each
17 other you want based on my reasoning.
18      MR. PERLSON:  Well, that's what I'm saying.  There
19 are two logs.  There is -- Mr. Ron had a log in relation to
20 the materials that were on the Stroz database, and then he
21 also provided a log after the Federal Circuit's ruling, you
22 know, much like other parties and third parties did, and
23 there are documents that were on that log that I don't
24 believe are on Uber's log, and the logic should be the same.
25      THE COURT:  That -- okay.  I think Ms. Rivera

wanted to speak.  Maybe it was Ms. Murphy.

        MS. RIVERA:  Yes, and, your Honor, I'm not -- I'm not personally familiar with the other log that Mr. Perlson is referring to.  What I wanted to speak to was sort of the other complicating factor in terms of the communications being on a log for Uber.

    Uber and Waymo negotiated the scope of search in terms of which custodians were going to be searched and using which search term, and the parties reached a negotiated agreement about -- about that scope.

    To the extent that the emails and communications that Mr. Ron has on his privilege log are outside of the scope that Waymo knowingly agreed to with Uber, it seems that, you know, Uber can't be, you know, obligated to put them on a privilege log if Waymo already agreed that they're not within the scope of the appropriate searches the parties ought to be viewing.

        THE COURT:  Okay.  So --

        MR. PERLSON:  But they never even looked -- tried to obtain those documents.

        THE COURT:  Mr. Perlson, here's what my ruling is is that Mr. Ron identified documents on a privileged log, and he filed a submission that was available and Uber should have read.  At that moment, Uber was on notice that these documents were in the Stroz -- Stroz file and if it wanted

```
 1  to claim a privilege, it could have.  It did not.  Even at
 2  the hearing, even when Mr. Perlson stood up and said they
 3  weren't claiming a privilege.  What I'm saying is for those
 4  documents, those would be on the privilege log that was
 5  before the Court on -- yesterday.  Those documents any
 6  privilege is waived or it's too late to assert it.  My
 7  ruling goes no farther than that.
 8           MR. PERLSON:  Your Honor, could we ask to submit a
 9  letter brief on the rest of them applying the --
10           THE COURT:  Yeah, you talk --
11           MR. PERLSON:  -- same logic?
12           THE COURT:  -- talk to Mr. Cooper about whatever
13  other issue is still out there, but my ruling is because on
14  those they had the opportunity to object at the hearing.
15  Anything that wasn't on those privilege log -- I don't --
16  now, you may have some other argument, but it sounds like
17  they may have some other argument as well.  So that I think
18  would need to be submitted to the Court, but I'd like you to
19  work with Mr. Cooper on submitting it.
20           MR. PERLSON:  Understood.
21           MS. RIVERA:  Your Honor, this is Ms. Rivera.  I --
22  I understand your Honor's ruling, and I just want to state
23  this just for the record.
24       I understand -- I wasn't at the hearing yesterday, but
25  I understand that Mr. Gonzalez did not know at the time that
```

1 these were Ottomotto documents that were at issue.  But, in
2 any event, I understand your ruling, your Honor.
3          THE COURT:  I'm sorry.  He did not know what, that
4 they were Ottomotto --
5          MS. RIVERA:  That these were --
6          MR. PERLSON:  That's absurd.
7          THE COURT:  Well --
8          MR. PERLSON:  That's exactly what we were talking
9 about.
10         THE COURT:  Okay.  No, Mr. Perlson, I actually
11 dislike that type of language.  I'm trying to keep
12 everything civil and calm.  It's not helpful to me.  So --
13         MR. PERLSON:  I apologize.
14         THE COURT:  -- I was at the hearing.  What I'm
15 saying is that submission was filed.  If Uber's attorney
16 wasn't aware of the submission that was filed that the
17 hearing was about, that's on Uber.  Okay.
18     All right.  Okay.
19         MR. PERLSON:  Your Honor, can we get these
20 documents by noon tomorrow?
21         THE COURT:  Which documents?
22         MR. PERLSON:  The documents that -- that were --
23 we need a time frame in which the documents that are now
24 being improperly held on Ron's log are to be produced to us.
25         THE COURT:  Well, they -- they're on the

1  relativity database.  They've been frozen by Straws.  So
2  Straws should simply unfreeze those files so that Waymo can
3  do its searching, like it is the rest of the database.
4          MR. PERLSON:  Fantastic.
5          MR. COOPER:  This is John Cooper.  David, I
6  suggest that we talk at 3:00 o'clock regarding any issues
7  you have about briefing this issue.  We're going to have a
8  meet and confer at 3:00.
9          MR. PERLSON:  Sounds good.
10         MR. COOPER:  Okay.
11         THE COURT:  Okay.  Thank you everybody.
12         ALL:  Thank you, your Honor.
13    (Proceedings adjourned at 2:36 p.m.)

```
                                                                    18
 1                      CERTIFICATE OF TRANSCRIBER
 2
 3       I certify that the foregoing is a true and correct
 4  transcript, to the best of my ability, of the above pages of
 5  the official electronic sound recording provided to me by
 6  the U.S. District Court, Northern District of California, of
 7  the proceedings taken on the date and time previously stated
 8  in the above matter.
 9       I further certify that I am neither counsel for,
10  related to, nor employed by any of the parties to the action
11  in which this hearing was taken; and, further, that I am not
12  financially nor otherwise interested in the outcome of the
13  action.
14                       [signature]
15
16              Echo Reporting, Inc., Transcriber
17                 Friday, September 29, 2017
18
19
20
21
22
23
24
25
```