QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>            Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO'S NOTICE OF MOTION AND MOTION FOR SANCTIONS**<br><br>**PUBLIC REDACTED VERSION OF DOCUMENT FILED UNDER SEAL** |

TO DEFENDANTS UBER TECHNOLOGIES, INC., OTTOMOTTO LLC, AND OTTO TRUCKING LLC, AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT**, at 9:00 a.m. on October 3, 2017, or as soon thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley, in Courtroom F of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, 15th floor, San Francisco, California 94102, Plaintiff Waymo LLC will and hereby does move this Court for sanctions to remedy misconduct by Defendants Uber Technologies, Inc., Ottomotto LLC, and Otto Trucking LLC.

This Motion is made on the grounds that Defendants willfully violated this Court's Order Re Access to Under-Seal Material (Dkt. 60) and Order Re Administrative Motion to Seal (Dkt. 1444) by publicly filing material designated by Waymo as "Highly Confidential" and failing to immediately take all necessary steps to remove the filing from the Court's docket. Waymo moves for sanctions to remedy this misconduct pursuant to the Court's inherent authority and Rule 37 of the Federal Rules of Civil Procedure. Waymo respectfully requests that the Court impose all sanctions that it deems appropriate to remedy Defendants' violations of the Court's discovery orders. In particular, Waymo seeks entry of an Order: (1) compelling Defendants to redact the name and address of Waymo's SVN repository from all future filings and precluding any further argument that this information is not confidential; (2) requiring Defendants to take all necessary and appropriate corrective action to remove the improperly disseminated SVN information from the public domain; (3) precluding Defendants from arguing that Waymo does not adequately protect its SVN server; (4) awarding Waymo damages and attorneys' fees; and (5) awarding any and all other relief the Court deems appropriate.

Dated: October 1, 2017

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: _s/Charles Verhoeven_
Charles K. Verhoeven

-1-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Attorneys for Plaintiff Waymo LLC*

-2-
WAYMO'S MOTION FOR SANCTIONS

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1
FACTS .......... 2
A. Defendants Agreed the Domain Name of the SVN Server Should Be Redacted .......... 2
B. Waymo Consistently Marked Confidential Any Deposition Transcripts Containing the Name of the SVN Server .......... 3
C. Defendants Intentionally and Repeatedly Published Waymo's Confidential SVN Address .......... 4
ARGUMENT .......... 7
A. Defendants Knowingly and Intentionally Violated the Protective Order in an Attempt to Prop Up Their Own Defenses .......... 7
B. The Court Should Exercise Its Broad Discretion To Craft Appropriate Relief .......... 9
1. The Court Has Broad Power To Issue Sanctions .......... 9
1. An Order Precluding Defendants From Arguing That Waymo Does Not Adequately Protect the SVN Server .......... 11
2. An Order Compelling Redactions And Precluding Future Argument .......... 11
3. An Order Compelling Corrective Action By Defendants .......... 11
4. Monetary Damages And Attorneys' Fees .......... 11
CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) .................................................................................................. 9, 10

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) ........................................................................................ 9

*Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) .......................................................................................... 9

*FormFactor, Inc v. Micro-Probe, Inc.*,
    2012 WL 1575093 (N.D. Cal. 2012) ............................................................................ 11

*Goodyear Tire & Rubber Co. v. Haeger*,
    137 S. Ct. 1178 (2017) ............................................................................................ 10, 12

*Lawson v. Grubhub, Inc.*,
    2017 WL 3670720 (N.D. Cal. Aug. 25, 2017) ............................................................... 9

*Life Techs. Corp. v. Biosearch Techs., Inc.*,
    2012 WL 1600393 (N.D. Cal. 2012) ............................................................................ 10

*Malone v. U.S. Postal Serv.*,
    833 F.2d 128 (9th Cir. 1987) ........................................................................................ 11

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980) ....................................................................................................... 9

*U.S. v. Nat'l Med. Enterprises, Inc.*,
    792 F.2d 906 (9th Cir. 1986) ........................................................................................ 10

**Rules and Regulations**

Fed. R. Civ. P. 37 ................................................................................................................ 1, 10

Plaintiff Waymo LLC ("Waymo") respectfully submits this memorandum of points and authorities in support of its Motion for Sanctions against Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") and Defendant Otto Trucking LLC ("Otto Trucking").

## **INTRODUCTION**

By this motion, Waymo seeks sanctions against Defendants for their knowing and intentional violation of the Protective Order governing discovery in this case (Dkt. 60) and this Court's specific order requiring redaction of the domain name and address of Waymo's subversion (or "SVN") server (Dkt. 1444) (the "Sealing Order"). Despite the Court and Waymo's instructions otherwise, Defendants have repeatedly included the SVN domain name in unredacted form in numerous public filings, and refused to take down those filings when requested to do so by counsel for Waymo. Incredibly, during the recent deposition of Waymo's cyber security expert, Dr. Bruce Hartley, Defendants even attempted to bolster their defenses by using *their own improper filings* of this domain publicly as supposed evidence that Waymo does not take adequate measures to protect the SVN server. Worse yet, when confronted by counsel for Waymo about this conduct on the record, counsel for Otto Trucking admitted that the filings were not "accidental," and that apparently Defendants had decided on their own that the domain name did not deserve a confidential designation. On this record, harsh sanctions are deserved. Defendants should not be allowed to knowingly violate the Court's Orders and then use those same violations as part of their litigation strategy. That is egregious conduct that should not be tolerated by the Court.

Sanctions for Defendants' misconduct are warranted under both the Court's inherent authority and Rule 37 of the Federal Rules of Civil Procedure ("Rule 37"). Accordingly, Waymo respectfully requests entry of an Order: (1) compelling Defendants to redact the domain name and address of Waymo's SVN repository from all future filings and precluding any further argument that this information is not confidential; (2) requiring Defendants to take all necessary and appropriate corrective action to remove the improperly disseminated SVN information from the public domain; (3) precluding Defendants from arguing that Waymo does not adequately protect its SVN server; (4) awarding Waymo damages and attorneys' fees; and (5) awarding any and all other relief the Court deems appropriate.

# FACTS

**A.     Defendants Agreed the Domain Name of the SVN Server Should Be Redacted**

Discovery in this case is conducted pursuant to the Protective Order.  (*See* Dkt. 60 ("[T]he Patent Local Rule 2-2 Interim Model Protective Order will apply in this case . . . .") and Ex. A[1].)  The Protective Order protects each party's confidential, proprietary and private information, and sets forth the procedures to be followed in order to designate and challenge particular confidentiality designations.  For example, Section 5.2(a) provides in relevant part that any party (or non-party) may designate documents as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" by affixing that designation to the document legend, and the other parties may not publicly file materials so-designated absent permission from the Court.  (Ex. A, § 5.2(a).)

On September 1, pursuant to Section 5.2(a) of the Protective Order, the Court issued the Sealing Order, requiring Defendants to redact certain "technical information" from Exhibit 10 to Otto Trucking's opposition to Waymo's motion to quash the subpoena of non-party Keker, Van Nest & Peters LLP.  (*See* Dkt. 1444.)  As the Court may recall, Exhibit 10 is an internal Waymo email chain discussing the contents of the SVN server, produced and designated "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY" by Waymo.  Within minutes of issuance of the Sealing Order, counsel for Waymo, Uber and Otto Trucking began discussions with respect to what should be considered "technical information" and therefore within the scope of the Court's Sealing Order.  (*See* Ex. B.)  Although the parties disagreed as to whether certain passages from Exhibit 10 were "technical," there was **never any dispute among the parties that the Sealing Order protected the address of Waymo's SVN domain from disclosure**.  In fact, the opposite is true.  At 12:09 PM, counsel for Uber sent counsel for Waymo a copy of Exhibit 10 that he proposed sharing with his client.  (*See* Exs. B and C.)  The address of Waymo's SVN domain was redacted.  (*See* Ex. C.)  At 1:03 PM, counsel for Waymo responded and attached a version of Exhibit 10 that included certain additional redactions highlighted "in green."  (*See* Exs. B and D.)  Again, the address of Waymo's SVN domain was

---

[1] All exhibits are attached to the accompanying Declaration of James Baker unless otherwise stated.

redacted.  (*See* Ex. D.)  In an email sent at 1:25 PM, counsel for Uber agreed that he would "redact[] everything [Quinn Emanuel] put in green," including Waymo's SVN address.  (*See* Exs. B.)  Counsel for Waymo approved the redactions.  (*Id.*)  Finally, at 1:33 PM, counsel for Uber circulated the final redacted version of Exhibit 10 for dissemination to his clients.  (*See* Exs. B and E.)  As it had been in each version of the document exchanged by the parties that day, the domain address of Waymo's SVN was redacted from that final email too.  (*See* Ex. E.)  In all, the parties exchanged twelve emails regarding the redactions to Exhibit 10 on September 1.  Counsel for Uber and Otto Trucking were on all of these emails, and Defendants never expressed any disagreement with Waymo's assertion that the domain name of the SVN server fell within the scope of the Sealing Order and should be redacted. (*See* Ex. B.)

      **B.**      **Waymo Consistently Marked Confidential Any Deposition Transcripts Containing the Name of the SVN Server**

On September 6, Defendants took the depositions of Waymo employees Sasha Zbrozek and Gary Brown.  During those depositions, the witnesses discussed the domain name of the SVN server and other highly confidential information, and counsel for Waymo designated the entire transcript Highly Confidential under the Protective Order.  (*See* Ex. F at 229:1-4; Ex. G at 423:25-424:2.)  By way of background, where confidential information is discussed in a deposition, the Protective Order provides three alternative procedures for designating testimony.  First, the producing party may designate on the record specific portions of the testimony that should be treated as confidential.  (Ex. A at § 5.2(b) ("[T]he Designating Party identif[ies] on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specif[ies] the level of protection being asserted.").)  Second, the producing party may invoke on the record its right to a 21-day period to designate specific portions of the testimony as confidential.  (*Id.* ("When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record . . . a right to have up to 21 days to identify the specific portions of the testimony as to which

-3-

protection is sought and to specify the level of protection being asserted.").)[2]  Third, the producing party may designate the entire transcript confidential, either on the record or up to 21 days later if that period has been properly invoked.  (*Id.* ("Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards if that period is properly invoked, that the entire transcript shall be treated as 'CONFIDENTIAL' or 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY.'").)

At the September 6 depositions of Zbrozek and Brown, counsel for Waymo marked the entire transcripts Highly Confidential according to option three of § 5.2(b) of the Protective Order.  (*See* Ex. F at 229:1-4; Ex. G at 423:25-424:2.)  Consequently, the final transcripts distributed to the parties were marked (and remain) "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY."  (*See* Exs. F and G at 1.)  During the deposition of Mr. Zbrozek, counsel for Uber noted that Uber would object to the confidential designation at a later time.  (*See* Ex. F at 229:3-4 ("We would object to that, but we'll deal with that later.").)  None of the Defendants ever contacted Waymo concerning its designation of the Zbrozek transcript, nor did they object to Waymo's similar designation of the Brown transcript.

In addition to the deposition transcripts, Waymo has redacted the address of its SVN server in all public filings subsequent to the Sealing Order.  (*See, e.g.,* Dkt. 1602-3; Dkt. 1659-1; Dkt. 1661-1; Dkt. 1718-9; Dkt. 1718-19; Dkt. 1719-9; Dkt. 1763-6; and Dkt. 1763-11.)

**C.   Defendants Intentionally and Repeatedly Published Waymo's Confidential SVN Address**

On September 27, Waymo learned for the first time that Defendants had intentionally and repeatedly included the name of Waymo's SVN server in public filings.  During the deposition of Waymo's cyber security expert, Dr. Bruce Hartley, counsel for Otto Trucking attempted to impeach the witness using its own improper filings, and when confronted by counsel for Waymo, admitted that the filings were not an accident:

> Q. Do you believe it would difficult for one to hack -- hack into one of the engineer's -- strike that.  Now, you indicated on page 22 of your report, paragraph 79, that

---

[2]  In light of the expedited discovery schedule in this case, the parties agreed, on August 28, to shorten the notification period to nine days going forward.  (*See* Ex. K.)

[domain name] -- you state that Mr. Laykin learned it from a highly -- learned the highly confidential domain from a document produced in litigation, correct?

A. Yes.

Q. Would your opinion change, in terms of report, paragraph 79, that [domain name] -- you state that Mr. Laykin learned it from a highly -- learned the highly confidential domain from a document produced in litigation, correct?

A. Yes.

Q. Would your opinion change, in terms of the confidential -- confidentiality of [domain name] if you knew it became part of a public filing?

A. Again, unless it's designated as public and -- I mean, I didn't know that [the domain name] existed.

Q. Right, but if it was part of a public filing in this litigation which -- I'm assuming you are aware that this litigation has generated some public interest.

A. Yes.

Q. And if it was part of a public filing, that -- that this -- the [domain name] would no longer be highly confidential?

A. Yeah, I am unaware if that's been made public or not. It's my understanding it has not.

Q. If it has, would it still be considered highly confidential?

A. If it was in the newspapers, it's probably public information at that point in time.

MR. BAKER: And, Counsel, I would just -- can you tell me which filing you are referring to? Because that -- I mean, that would be a breach of the Protective Order, and I would need to address that.

MR. BOOCK: We can talk off the record about that. I -- **I don't think that anybody accidentally disclosed it**. I believe that part of a court order after an administrative to file it under seal, that that was ordered not sealed.

(*See* Ex. H at 311:6-312:25 (emphasis added and objections omitted).)

Upon further investigation, counsel for Waymo learned that, despite the Court's Sealing Order and Waymo's instructions otherwise, Otto Trucking had filed Exhibit 10 publicly without redacting the domain name of the SVN server. Counsel for the parties then had a long exchange both on and off the record during which counsel for Waymo repeatedly requested counsel for Otto Trucking to contact his team and instruct them to take immediate corrective measures. (*See* Ex. H.) Counsel for Otto Trucking refused, agreeing only to "alert" his team of the issue.

After the Hartley deposition, counsel for Waymo contacted counsel for Otto Trucking by email

-5-

and reiterated their concern that Otto Trucking had breached the Protective Order and requested again that Otto Trucking take immediate corrective action. (*See* Ex. I.) Specifically, in an email sent at 6:09 PM on September 27, counsel for Waymo reminded counsel for Otto Trucking that Waymo views its SVN domain address as highly sensitive information covered by the Sealing Order and that the "[p]ublic disclosure of such information will give bad actors seeking to hack Waymo's databases a target to attack." (*Id.*) Counsel for Waymo also requested that Otto Trucking "immediately contact ECF to lock the docket and take all further appropriate action, including filing an administrative motion to remove the improperly-filed document." (*Id.*) Counsel for Otto Trucking refused to take corrective action. (*See id.*) In fact, despite repeated requests from Waymo that it comply with the Court's order and protect Waymo's confidential information from further disclosure and dissemination, Otto Trucking refused to take any action whatsoever for two days. Waymo was forced to request a meet and confer with the Special Master, who then had to contact the Court to ask for guidance on the issue. Not until the Court ordered it to do so on September 29 did counsel for Otto Trucking take corrective measures.

Waymo's investigation into this issue has revealed that Defendants publicly disclosed the domain name of Waymo's SVN server in at least the following filings:



---

[3] Based on Waymo's investigation to date, this appears to be the only filing by Uber, and Waymo has identified other instances where Uber has filed the same or similar document under seal. Nevertheless, Waymo is seeking sanctions against all Defendants, including Uber, because it appears that Uber's current position is in alignment with Otto Trucking's view of the matter. In a September 29 email exchange with the Special Master, in which counsel for Waymo explained that the domain name was confidential, counsel for Uber indicated that it agreed with Otto Trucking's position and did not consider the domain name confidential. (*See* Ex. J (counsel for Uber arguing that "[t]hose highly confidential designations are limited, per agreement of the parties. John, this ship has sailed.").)

-6-



## ARGUMENT

### A. Defendants Knowingly and Intentionally Violated the Protective Order in an Attempt to Prop Up Their Own Defenses

The facts here are not in dispute. The record reflects that Defendants knowingly and intentionally violated the Protective Order. What makes it worse is that this violation was seemingly done to attempt to bolster their own defense that Waymo allegedly does not take adequate measures to protect the contents of its SVN server. As Waymo has argued throughout this case, one of the ways in which Waymo protects the SVN server is by hosting it on a confidential website known only to Waymo engineers who need access to the materials on that server. On September 1, consistent with this position and in response to the Court's Sealing Order, Waymo instructed Defendants to redact the domain name of the SVN server from Exhibit 10. Defendants agreed. Waymo also marked "confidential" on the record the transcripts of all subsequent depositions during which the witnesses revealed the name of the SVN server. Nevertheless, on September 6, Defendants made their own decision that the domain name was not "technical information" and therefore did not have to be redacted pursuant to the Court's Sealing Order, and began filing the domain name publicly without informing the Court or Waymo. This conduct should not be tolerated, and the Court should issue harsh sanctions commensurate with Defendants' knowing and intentional violation of the Protective Order and the damage to Waymo.

Defendants' only argument that these intentional filings should be excused is that Waymo failed to designate as confidential the portions of the September 6 Zbrozek and Brown transcripts disclosing the domain name by September 17, *i.e.* within the nine day designation period (from receipt

of the final transcript on September 8) agreed-upon by the parties with respect to the second option in § 5.2(b) of the Protective Order. This argument fails for several reasons.

First, the nine-day window relied upon by Defendants is completely irrelevant to the analysis here because counsel for Waymo invoked the third option of ¶5.2(b) of the Protective Order by designating the entire Zbrozek and Brown transcripts confidential on the record. If Defendants believed a narrower designation was more proper, they could have (and should have) approached counsel for Waymo and asked for it. Waymo would have been (and still is) willing to consider such a narrower designation. Absent such agreement, however, the Protective Order does not allow Defendants to take matters into their own hands and de-designate Waymo confidential information however they see fit. That is completely contrary to the reason for having a Protective Order in the first place and should not be tolerated by the Court.

Second, as shown in the bullet list above, all of Defendants' improper filings of which Waymo is aware occurred before the expiration of the nine-day window that Defendants now argue was controlling. If Defendants truly believed that their conduct was proper because Waymo waived the protections of ¶5.2(b), then how do they explain the fact that the filings occurred **before** September 17? They cannot, and the fact that Defendants are now trying to argue this was a "waiver" issue is only further evidence of their bad faith. This was not an issue of "waiver" but rather a knowing and intentional violation of the Protective and Sealing Orders. Indeed, at the Hartley deposition, counsel for Otto Trucking did not argue that Waymo had "waived" the protections of the Protective Order by not providing narrowed designations within nine days of the Zbrozek and Brown depositions. Rather, he stated that Defendants had decided that the domain name did not fall within the scope of the Sealing Order and purposefully – not accidentally – filed the information publicly, even though Waymo had clearly instructed Defendants to redact the domain name. In other words, Defendants were not waiting for Waymo to "waive" its rights under ¶5.2(b). Rather, Defendants had already made the decision that they were going to take matters into their own hands and file the domain name publicly, despite the Court's and Waymo's instructions otherwise.

Third, despite repeated requests from Waymo that Defendants take immediate corrective measures during and following the Hartley deposition, Defendants refused for two days until ordered

to do so by the Court. That is additional and compelling evidence that this was a knowing and intentional violation of the Protective and Sealing Orders. If these filings were in any way inadvertent, Defendants had absolutely no basis to refuse to take immediate corrective measures. Defendants refused because they had already decided that they were going to file the information publicly and then litigate the propriety of Waymo's designation, rather than the other way around.

Finally, any argument by Defendants that they acted in good faith and simply did not view the SVN domain name as covered by the Sealing Order would not excuse their misconduct or protect them from sanctions. Even if, *arguendo*, the Sealing Order were not clear, the parties conferred about the scope of appropriate redactions under it and agreed to redact Waymo's SVN address. (*See* Ex. B.) Once the producing party has designated information confidential, the Protective Order does not allow the receiving party to de-designate such information without consulting the Court and/or the producing party. (*See* Ex. A at ¶6 (explaining process for challenging designations).) Given the September 1 email exchange in which counsel for Waymo made absolutely clear – and Defendants did not dispute – that the SVN domain address was confidential, Defendants cannot credibly argue now that they were acting in good faith. Rather, Defendants knowingly violated the Protective Order and Sealing Order in bad faith, and the Court should hold them accountable.

**B.     The Court Should Exercise Its Broad Discretion To Craft Appropriate Relief**

   1.     <u>The Court Has Broad Power To Issue Sanctions</u>

This Court has broad inherent power to sanction Defendants' violations of the discovery orders issued in this case. *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (courts have inherent power to impose sanctions for a "full range of litigation abuses") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991)). Indeed, the Supreme Court has repeatedly "reiterated the federal courts' inherent power to levy sanctions, including attorneys' fees, for 'willful disobedience of a court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)). "A 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Lawson v. Grubhub, Inc.*, 2017 WL 3670720, at *2 (N.D. Cal. Aug. 25,

2017) (quoting *Evon*, 688 F.3d at 1035). Sanctions available under the Court's inherent power are flexible, and can include dismissal of the lawsuit. *See Chambers*, 501 U.S. at 44-45 ("[O]utright dismissal of a lawsuit … is a particularly severe sanction, yet is within the court's discretion."). An award of attorneys' fees incurred as a result of litigation misconduct is also appropriate. *Id. See also Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (sanctioning court may award attorneys' fees incurred because of litigation misconduct).

The Court is also empowered to impose sanctions under Rule 37, which permits a court to impose a wide range of sanctions if a party violates the Court's discovery orders. *See* Fed. R. Civ. P. 37(b)(2)(A). It is well-established that Rule 37 permits the Court to issue sanctions for violation of a protective order. *See, e.g., Life Techs. Corp. v. Biosearch Techs., Inc.*, 2012 WL 1600393, at *8 (N.D. Cal. 2012) (Rule 37 "grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order…."); *U.S. v. Nat'l Med. Enterprises, Inc.*, 792 F.2d 906, 910-11 (9th Cir. 1986) (affirming Rule 37 sanctions for violation of a discovery order).

Defendants' improper dissemination of confidential Waymo information in violation of the Protective Order and the Sealing Order has already caused Waymo to suffer considerable harm. For example, Waymo has been forced to change, and is in the process of changing, the domain and IP address for the entire SVN server repository to a new domain name. Further, Waymo's attorneys have been forced to spend significant resources investigating Defendants' misconduct, including corresponding with Defendants' counsel regarding Defendants' improper disclosures, participating in meet and confers to rehash an issue already decided by this Court (*i.e.* whether the SVN address should be sealed), and researching and preparing papers to seek the remedies for Defendants' discovery violations requested herein. The opportunity cost to Waymo of having to divert valuable business and legal resources away from trial preparation less than two weeks before trial is scheduled to begin, and while Waymo is simultaneously preparing for depositions and reviewing tens of thousands of newly-produced documents, is also enormous. Both the Court's inherent powers and Rule 37 authorize sanctions here.

Waymo therefore requests the following sanctions:

### 1. An Order Precluding Defendants From Arguing That Waymo Does Not Adequately Protect the SVN Server

As explained above, Defendants' violations of the Protective Order and Sealing Order have been numerous, intentional, and part of an apparent litigation strategy to attack the adequacy of the measures taken by Waymo to protect the SVN server. Defendants should not be permitted to create a *fait accompli* as to the SVN's confidentiality by themselves publishing confidential information about the SVN in the public domain.

### 2. An Order Compelling Redactions And Precluding Future Argument

Trial in this action is scheduled to start in ten days, and the parties do not have time to litigate the same issues over and again. That Waymo's SVN address is highly confidential information that should be shielded from public view has already been decided. (*See* Dkt. 1444.) The parties also already agreed to redact that information from their public filings. (*See* Ex. B.) Waymo is prejudiced every time it is forced to divert valuable resources away from trial preparation as a result of Defendants' discovery misconduct. Defendants should comply with the Sealing Order immediately and in any future filings or disclosures. An order precluding Defendants' from making any further arguments as to the confidentiality of Waymo's SVN domain is also warranted.

### 3. An Order Compelling Corrective Action By Defendants

Defendants should be compelled to take corrective action to remove all references to Waymo's confidential information from the public domain, including but not limited to by removing unredacted copies of the document from the docket in this case and by removing any copies of the document aggregated by "scraper sites" (*i.e.* websites that use web scraping technology to mirror and/or archive content posted online) or other repositories of information gleaned from Defendants' improper filings. Defendants should also be compelled to file a declaration with this Court setting forth each step they have taken to remove Waymo's SVN address from the public domain.

### 4. Monetary Damages And Attorneys' Fees

Waymo has already been forced to expend considerable time and money attempting to limit the danger to its security caused by Defendants' misconduct. This Court has inherent power to award attorneys' fees and other costs, expenses, or compensatory damages caused by Defendants' misconduct. *See FormFactor, Inc v. Micro-Probe, Inc.*, 2012 WL 1575093, at *9 (N.D. Cal. 2012)

-11-

("Rule 37(b) requires a disobedient party to pay the reasonable expenses, including attorney fees, caused by the violation of the order."); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987) (prejudice includes "irremediable burdens or costs imposed on the opposing party") (citation omitted); *see also Goodyear*, 137 S. Ct. at 1189 (recognizing that a sanctioning court may award fees incurred because of the misconduct at issue). Such an award is warranted here.

## CONCLUSION

For the foregoing reasons, Waymo respectfully requests that the Court issue an Order sanctioning Defendants for their litigation misconduct, including by: (1) precluding Defendants from arguing that Waymo does not adequately protect its SVN server; (2) compelling Defendants to redact the name and address of Waymo's SVN repository from all future filings and precluding any further argument that this information is not confidential; (3) requiring Defendants to take all necessary and appropriate corrective action to remove the improperly disseminated SVN information from the public domain; (4) awarding Waymo damages and attorneys' fees; and (5) awarding any and all other relief the Court deems appropriate.

DATED: October 1, 2017        QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/* Charles Verhoeven
   Charles K. Verhoeven
   Attorneys for WAYMO LLC