Steven D. Zansberg (No. 177528)
e-mail: zansbergs@ballardspahr.com
BALLARD SPAHR LLP
1225 Seventeenth Street, Suite 2300
Denver, CO  80202-5596
Phone: (303) 376-2409

*Attorneys for Proposed Intervenors Associated Press,*
*Bloomberg L.P., Buzzfeed, Inc.,*
*MediaNews Group, Inc., d/b/a Digital First Media,*
*Dow Jones & Co., The First Amendment Coalition,*
*Gizmodo Media Group, LLC, The Hearst Corporation,*
*The New York Times Company, Reuters America LLC*
*and Vox Media, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| WAYMO LLC,<br><br>         Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO, LLC; OTTO TRUCKING<br>LLC,<br><br>         Defendants. | Case No. 3:17-cv-00939-WMA<br><br>**MEDIA COALITION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF OPPOSING WAYMO'S CLOSURE MOTION AND VINDICATING THE RIGHT OF PUBLIC ACCESS TO THIS PROCEEDING**<br><br>Date:      October 3, 2017<br>Time:     8:00 a.m.<br>Courtroom: 8, 19th Floor<br>Judge:    Hon. William A. Alsup |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

ARGUMENT .........................................................................................................4

I.   THE MEDIA COALITION SHOULD BE PERMITTED TO INTERVENE FOR
     THE LIMITED PURPOSE OF VINDICATING THE RIGHT OF PUBLIC
     ACCESS TO THE TRIAL IN THIS CLOSELY-WATCHED CASE ............................4

II.  THE FIRST AMENDMENT EXTENDS A QUALIFIED RIGHT OF PUBLIC
     ACCESS TO THE TRIAL OF THIS LAWSUIT AND THE RELATED
     RECORDS ......................................................................................................5

III. THE FIRST AMENDMENT IMPOSES A HEAVY BURDEN ON ANY PARTY
     SEEKING TO DENY PUBLIC ACCESS TO A CIVIL TRIAL .......................................7

IV.  WAYMO'S OVERBROAD REQUEST FOR SECRET PROCEEDINGS FAILS
     TO SATISFY THE STRICT CONSTITUTIONAL STANDARDS ..................................8

     A.   Waymo Has Failed to Demonstrate A Substantial Probability Of Harm To A
          Compelling Interest.......................................................................... 9

          1.   Invoking the talismanic term "trade secrets" does not automatically justify
               closure. ...................................................................................... 9

          2.   Waymo's other conclusory and speculative claims of harms are equally
               insufficient, as a matter of law. ...................................................... 11

     B.   Waymo Has Also Failed To Demonstrate That No "Less Restrictive Means" Are
          Available To Protect Any Truly Compelling Interest........................................... 13

V.   BECAUSE ANY CLOSURE ORDER THE COURT MIGHT ENTER MUST BE
     NARROWLY TAILORED, THE COURT SHOULD ORDER THE PROMPT
     RELEASE OF A REDACTED TRANSCRIPT OF ANY CLOSED PORTION
     OF THE TRIAL..............................................................................................15

CONCLUSION.....................................................................................................18

MEDIA COALITION'S MOTION TO INTERVENE                    CASE NO. 3:17-cv-00939-WHA
FOR LIMITED PURPOSES OF OPPOSING PLAINTIFF
WAYMO LLC'S MOTION TO CLOSE COURTROOM

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*ABC, Inc. v. Stewart,*
    360 F.3d 90 (2d Cir. 2004)................................................................8, 16

*Apple, Inc. v. Samsung Electronics Co.,*
    No. 11-CV-01846-LHK, 2012 WL 3283478 (N.D. Cal. Aug. 9, 2012)................................15

*Applications of Nat'l Broad. Co., Inc.,* 828 F.2d 340 (6th Cir. 1987) ...........................................14

*Associated Press v. U.S. District Court,*
    705 F.2d 1143 (9th Cir. 1983) .................................................................8

*Baltimore Sun Co. v. Goetz,*
    886 F.2d 60 (4th Cir. 1989) ...................................................................7

*Barr Laboratories, Inc. v. KOS Pharmaceuticals, Inc.,*
    362 F. Supp. 2d 421 (S.D.N.Y. 2005)..........................................................10, 14

*Brown & Williamson Tobacco Corp. v. FTC,*
    710 F.2d 1165 (6th Cir. 1983) .................................................................6, 12

*California ex rel. Lockyer v. Safeway, Inc.,*
    355 F. Supp. 2d 1111 (C.D. Cal. 2005) ........................................................5

*Courthouse News Service v. Planet,*
    750 F.3d 776 (9th Cir. 2014) ..................................................................6

*Cox Broadcasting Corp. v. Cohn,*
    420 U.S. 469 (1975)..........................................................................6

*Daily Press, Inc. v. Commonwealth of Virginia,*
    739 S.E.2d 636 (Va. 2013)....................................................................17

*Doe v. Public Citizen,*
    749 F.3d 246 (4th Cir. 2014) ..................................................................17

*DVD Copy Control Association Inc. v. Bunner,*
    116 Cal. App. 4th 241 (Cal. App. 2004).......................................................10

*EEOC v. National Children's Center, Inc.,*
    146 F.3d 1042 (D.C. Cir. 1998)...............................................................4

*Gambale v. Deutsche Bank AG,*
    377 F.3d 133 (2d Cir. 2004)..................................................................10

MEDIA COALITION'S MOTION TO INTERVENE          CASE NO. 3:17-cv-00939-WHA
FOR LIMITED PURPOSES OF OPPOSING PLAINTIFF
WAYMO LLC'S MOTION TO CLOSE COURTROOM

ii

*Globe Newspaper Co. v. Superior Court*,
    457 U.S. 596 (1982) ...................................................................................................4, 5

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*,
    2007 WL 922255 (D. Vt. Mar 23, 2007) ...........................................................9, 10

*Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*,
    24 F.3d 893 (7th Cir. 1994) ....................................................................................17

*Hagestad v. Tragesser*,
    49 F.3d 1430 (9th Cir. 1995) .....................................................................................6

*Hill Holiday Connors Cosmopulos, Inc. v. Greenfield*,
    2010 WL 890067 (Mar. 8, 2010) ............................................................................10

*Huminski v. Corsones*,
    396 F.3d 53 (2d Cir. 2005) ........................................................................................9

*In re C.R. Bard, Inc., Pelvic Repair Systems Products Liability Litigation*,
    2013 WL 2156599 (S.D. W. Va. May 17, 2013) ....................................................10

*In re Continental Illinois Securities Litigation*,
    732 F.2d 1302 (7th Cir. 1984) ...................................................................................6

*In re Guantanamo Bay Detainee Litigation*,
    630 F. Supp. 2d 1 (D.D.C. 2009) ..............................................................................5

*In re Iowa Freedom of Information Council*,
    724 F.2d 658 (8th Cir.1983) ....................................................................................10

*In re Knight Publishingg Co.*,
    743 F.2d 231 (4th Cir. 1984) ...................................................................................14

*In re N.Y. Times Co.*,
    834 F.2d 1152 (2d Cir. 1987) ..................................................................................18

*Joy v. North*,
    692 F.2d 880 (2d Cir. 1982) ......................................................................................9

*Kamakana v. City & County of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) .........................................................................4, 12, 13

*Kasza v. Whitman*,
    325 F.3d 1178 (9th Cir. 2003) .................................................................................16

*Main & Associatess, Inc. v. Blue Cross and Blue Shield of Alabama*,
    2010 WL 2025375 (M.D. Ala. May 20, 2010) .......................................................10

MEDIA COALITION'S MOTION TO INTERVENE        CASE NO. 3:17-cv-00939-WHA
FOR LIMITED PURPOSES OF OPPOSING PLAINTIFF
WAYMO LLC'S MOTION TO CLOSE COURTROOM

iii

*Mendez v. City of Gardena*,
　222 F. Supp. 3d 782 (C.D. Cal. 2015) ....................................................................6

*Nebraska Press Association v. Stuart*,
　427 U.S. 539 (1976)................................................................................................17

*Nixon v. Warner Communications, Inc.*,
　435 U.S. 589 (1978)...............................................................................................5, 6

*Oliner v. Kontrabecki*,
　745 F.3d 1024 (9th Cir. 2014) ..............................................................................12

*Oregonian Publishing Co. v. U.S. District Court*,
　920 F.2d 1462 (9th Cir. 1990) .......................................................................4, 7, 13

*Phoenix Newspapers, Inc. v. U.S. District Court*,
　156 F.3d 940 (9th Cir. 1998) ....................................................................4, 5, 7, 13

*Press-Enterprise Co. v. Superior Court*,
　464 U.S. 501 (1984)................................................................................................16

*Press-Enterprise Co. v. Superior Court*,
　478 U.S.1 (1986)................................................................................................8, 13

*Publicker Industries, Inc. v. Cohen*,
　733 F.2d 1059 (3d Cir. 1984)....................................................................6, 12, 14, 16

*Religious Technology Center v. F.A.C.T.NET, Inc.*,
　901 F. Supp. 1519 (D. Colo. 1995)........................................................................10

*Richmond Newspapers, Inc. v. Virginia*,
　448 U.S. 555 (1980)........................................................................................6, 7, 13

*Rushford v. New Yorker Magazine, Inc.*,
　846 F.2d 249 (4th Cir. 1988) ...............................................................................6, 7

*San Jose Mercury News, Inc. v. U.S. District Court*,
　187 F.3d 1096 (9th Cir. 1999) ................................................................................4

*Society of Professional Journalists v. United States Secretary of Labor*,
　616 F. Supp. 569 (D. Utah 1985)...........................................................................16

*U.S. v. Rosen*,
　487 F. Supp. 2d 703 (E.D. Va. 2007) .....................................................................11

*U.S. v. Zhang*,
　590 F. App'x 663 (9th Cir. 2014) ..........................................................................14

MEDIA COALITION'S MOTION TO INTERVENE　　　　　　CASE NO. 3:17-cv-00939-WHA
FOR LIMITED PURPOSES OF OPPOSING PLAINTIFF
WAYMO LLC'S MOTION TO CLOSE COURTROOM

iv

*Union Oil Co. of California v. Leavell*,
  220 F.3d 562 (7th Cir. 2000) ...........................................................................12

*United States v. Antar*,
  38 F.3d 1348 (3d Cir. 1994).............................................................................16

*United States v. Aref*,
  533 F.3d 72 (2d Cir. 2008)...............................................................................15

*United States v. Business of Custer Battlefield Museum & Store Located at Interstate 90,
  Exit 514, South of Billings, Montana*,
  658 F.3d 1188 (9th Cir. 2011) ...........................................................................7

*United States v. Edwards*,
  672 F.2d 1289 (7th Cir. 1982) .........................................................................13

*United States v. General Motors Corp.*,
  99 F.R.D. 610 (D.D.C. 1983)..............................................................................8

*United States v. Pickard*,
  733 F.3d 1297 (10th Cir. 2013) .......................................................................17

*United States v. Wecht*,
  537 F.3d 222 (3d Cir. 2008).............................................................................17

*US Investigations Services, LLC v. Callihan*,
  2011 WL 1157256 (W.D. Pa. Mar. 29, 2011) ...........................................11, 14

*Westmoreland v. Columbia Broadcasting Systems, Inc.*,
  752 F.2d 16 (2d Cir. 1984)................................................................................6

**Rules**

FED. R. CIV. P. 24.................................................................................................5

MEDIA COALITION'S MOTION TO INTERVENE                    CASE NO. 3:17-cv-00939-WHA
FOR LIMITED PURPOSES OF OPPOSING PLAINTIFF
WAYMO LLC'S MOTION TO CLOSE COURTROOM

v

# INTRODUCTION

Through this motion, eleven news organizations (collectively, the "Media Coalition") seek permission to intervene to enforce the public's right of access to judicial proceedings. Specifically, they seek to oppose the motion by Plaintiff Waymo LLC ("Waymo") to close large portions of the trial in this case.  *See* Motion to Close Courtroom ("Mot."), Sept. 26, 2017, Doc. No. 1822.

The Media Coalition is comprised of news organizations that have been covering this hotly-disputed lawsuit.  They have reported on prior hearings conducted in open court and intend to cover the trial, presently scheduled to begin October 10, 2017.  Given the nature of the claims at issue, affecting the future of an industry and technology capable of revolutionizing how humans travel by car, the trial will undoubtedly address issues of significant and legitimate public concern.

As demonstrated below, the First Amendment extends a qualified right of public access to civil trials.  It is well settled that the news media, acting as "surrogates" for the broader public, have standing to be heard in opposition to any motion seeking to limit this public access right.  It is equally well-settled that the constitutional access right can be abridged only on an evidentiary showing that closure is essential to protect a governmental interest "of the highest order" and no "less restrictive means" are available to adequately protect that compelling interest.  When such a showing is made, any closure order must be narrowly tailored and must be effective in protecting the threatened interest.

While sealing could conceivably be justified under these standards for *some limited portion* of the trial in this case, given the allegations of trade secret theft, Waymo's recitation of speculative and largely generic harms falls woefully short of satisfying its burden.  No closure is proper unless and until Waymo demonstrates a substantial probability of harm to a compelling

interest that cannot adequately be protected by anything less than a limited denial of the public's right to attend the trial.

### BACKGROUND

The Media Coalition consists of <u>eleven</u> media organizations that disseminate news over multiple communications platforms to a large and diverse audience within the United States and around the world, including investors keenly interested in the companies involved in this lawsuit.[1]  Members of the Media Coalition have reported extensively on this lawsuit, which pits two Silicon Valley corporate behemoths against each other in a dispute that carries a potential verdict exceeding $2.5 billion.[2]  Beyond the high-profile names and the significant financial interests at stake, this case has been closely monitored because it carries significant implications for the future of driverless car technology, which many expect to transform our society in important ways.[3]

---

[1] Specifically, the Media Coalition is comprised of the following entities:  Associated Press, Bloomberg L.P., Buzzfeed, Inc., NewsMedia Group, Inc. d/b/a Digital First Media, Dow Jones & Company, The First Amendment Coalition, Gizmodo Media Group, LLC, The Hearst Corporation, The New York Times Company, Reuters America LLC and Vox Media, Inc.

[2] Entering the terms "Waymo & Uber &'trade secrets'" into the online search engine Google yields over 92,000 results.  *See, e.g.*, Marissa Kendall, *The $2.6 billion trade secret: Hearing offers peek at what Uber stands to lose in Waymo trial*, THE MERCURY NEWS, (Sept. 20, 2017) http://www.mercurynews.com/2017/09/20/the-2-6-billion-trade-secret-hearing-offers-peek-what-uber-stands-lose-waymo-trial/; Daisuke Wakabayashi, *Waymo Drops 3 Claims in suit Against Uber on Driverless Cars*, N.Y. TIMES, July 8, 2017, at B5; Joel Rosenblatt, *Waymo and Uber Head for a Self-Driving Car Crash in Court*, BLOOMBERG (Sept. 7, 2017, 1:07 PM), https://www.bloomberg.com/news/articles/2017-09-07/waymo-and-uber-head-for-a-self-driving-car-crash-in-court; Tim Higgins and Jack Nicas, *Alphabet's Waymo asks court to halt Uber's self-driving car effort*, MARKETWATCH, (Mar. 10, 2017, 4:37 PM) http://www.marketwatch.com/story/alphabets-waymo-asks-court-to-halt-ubers-self-driving-car-effort-2017-03-10-161033733; Michael Liedtke, *Google-bred company accuses Uber of self-driving car theft*, THE ASSOCIATED PRESS (Feb. 24, 2017), https://apnews.com/5feede63a96945eab413352f0363bb99; Ryan Felton, *The Self-Driving Car Wars Have Begun: Waymo Sues Uber For Stealing Design Of LiDAR System*, JALOPNIK (Feb. 23, 2017, 6:24 PM), https://jalopnik.com/the-self-driving-car-wars-have-begun-waymo-sues-uber-f-1792694851; Mike Isaac, *Allies Turned Rivals in the Race to Build a Better Driverless Car*, N.Y. TIMES, May 17, 2017, at A1.

[3] Dan Neil, *Could Self-Driving Cars Spell the End of Ownership?*, WALL ST. J., (Dec. 1, 20150 https://www.wsj.com/articles/could-self-driving-cars-spell-the-end-of-ownership-

On September 26, 2017, Waymo filed the instant motion, which asks that the courtroom be closed during the trial whenever its "extraordinarily sensitive" or "valuable confidential business information" is discussed. *See* Mot. at 2. Waymo specifically contends that the courtroom should be closed whenever any of the following broad categories of information are discussed: (1) its alleged trade secrets, (2) any non-public information pertaining to its business transactions or partnerships; (3) all of its internal financial data, projections and business plans, and (4) any employment information, including all information relating to executive compensation and bonus payments.

This Court has previously expressed appropriate skepticism at the need for secrecy asserted by the parties (and third parties) to this action. For example, it flatly rejected the notion that Uber's supplier list is a trade secret that cannot be publicly disclosed, Tr. of Mar. 29, 2017 Hrg. at 7:7-10, 17:1-2, Doc. No. 293, *available at* , available at

https://www.documentcloud.org/documents/3533784-Waymo-Uber-3-29-17.html#document/,

and castigated counsel for requesting an *in camera* hearing to discuss Uber's  motion to compel arbitration:

| | |
|---|---|
| MR. GONZÁLEZ: | Well, your Honor, at least [Mr. Levandowsky's deposition testimony is] not in the public where it's going to be on the front page of *The New York Times* the next day. . . . |
| | . . . |
| THE COURT: | [Y]ou shouldn't have asked for *in camera* on this. This [entire hearing] could have all been done in the open. . . . |
| MR. GONZÁLEZ: | Your Honor, the reason why we wanted it in chambers is because of the adverse impact that we think it would have on our client [Uber Technologies]. If there's a headline tomorrow saying this guy [Mr. Levandowski] is asserting the Fifth Amendment – |

1448986572; Kevin Roose, *Cars of Future? Lawmakers (Gasp!) Agree*, N.Y. TIMES, July 22, 2017, at B1; Jim Dalrymple II, *Self-Driving Cars Will Transform Cities, But Could They Make Things Worse?*, BUZZFEED, (May 30, 2014) https://www.buzzfeed.com/jimdalrympleii/self-driving-cars-will-transform-cities-but-they-could-make?utm_term=.fx8nGmDpW#.cvAQK4oPN

1

THE COURT:        Listen, please don't do this to me again. There's going to be a lot of
adverse headlines in this case on both sides. And I can't stop that. . .
. [T]he public has a right -- in fact, this whole transcript, I'm going
to make it public.

2

3

4

*Id.* at 15: 11-24 and 18: 1-14.

5

Last Wednesday, this Court invited the news organizations covering this case and others

6

to respond to Waymo's motion to close trial proceedings, which is scheduled to be heard on

7

October 3, 2017.  This motion to intervene and oppose accepts that invitation.

8

## ARGUMENT

9

10

## I.      THE MEDIA COALITION SHOULD BE PERMITTED TO INTERVENE FOR THE LIMITED PURPOSE OF VINDICATING THE RIGHT OF PUBLIC ACCESS TO THE TRIAL IN THIS CLOSELY-WATCHED CASE

11

12

It is well-established that members of the news media have standing to enforce the right

13

of public access to judicial proceedings, and must therefore be afforded an opportunity to be

14

heard before a proceeding is closed.  *E.g.*, *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609

15

n.25 (1982) (press and public "must be given an opportunity to be heard" on questions relating to

16

access to a criminal proceeding) (citation and internal quotation marks omitted); *Phoenix*

17

*Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 949 (9th Cir. 1998) (press must be afforded an

18

opportunity to object to closure of court proceedings); *Oregonian Publ'g Co. v. U.S. Dist. Ct.*,

19

920 F.2d 1462, 1465 (9th Cir. 1990) (same).  Given this precedent, and the significant public

20

access right at stake, this Court invited news media representatives to submit in writing, at their

21

earliest opportunity, any objection to Waymo's request to conduct in secret significant portions

22

of the trial.

23

Intervention is the appropriate procedural vehicle for journalists to vindicate public

24

access rights.  *See, e.g.*, *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1176 (9th Cir.

25

2006); *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1101 (9th Cir. 1999)

26

(vacating trial court's order denying newspaper's motion to intervene); *accord EEOC v. Nat'l*

27

*Children's Ctr., Inc.*, 146 F.3d 1042, 1045-46 (D.C. Cir. 1998) (allowing intervention "for the

28

MEDIA COALITION'S MOTION TO INTERVENE
FOR LIMITED PURPOSES OF OPPOSING PLAINTIFF
WAYMO LLC'S MOTION TO CLOSE COURTROOM

CASE NO. 3:17-cv-00939-WHA

4

limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order"); *In re Guantanamo Bay Detainee Litig.*, 630 F. Supp. 2d 1, 5 (D.D.C. 2009) (allowing press applicants to intervene to oppose sealing motion). Press participation in motions to close courtrooms is vital because the press serves as "surrogates for the public" when it seeks to protect the public's right to follow the workings of the judicial system. As the court observed in *California ex rel. Lockyer v. Safeway, Inc.*, 355 F. Supp. 2d 1111, 1124 (C.D. Cal. 2005) in unsealing documents at the request of an intervening newspaper, "the press has historically served as a monitor of both the State and the courts, and it plays a vital role in informing the citizenry on the actions of its government institutions." Indeed, in cases where, as here, the First Amendment right of access is at issue, intervention is constitutionally required. *See Globe Newspaper Co.*, 457 U.S. at 609 n.25; *Phoenix Newspapers, Inc.*, 156 F.3d at 949.

Because the Media Coalition's right to attend and report on the civil trial in this case would be materially impaired by a ruling granting Waymo's Motion, and because their interests and the interests of the general public are not necessarily aligned with those of the parties, the Media Coalition's motion for leave to intervene for the limited purpose of vindicating the right of public access to this case should be granted. *See* FED. R. CIV. P. 24(a) and (b).

## II.    THE FIRST AMENDMENT EXTENDS A QUALIFIED RIGHT OF PUBLIC ACCESS TO THE TRIAL OF THIS LAWSUIT AND THE RELATED RECORDS

Waymo's motion to close large swaths of the trial rests on a fundamentally incorrect statement of the law. Waymo wrongly contends that there is no constitutional right of access to civil trial proceedings. *See* Mot. at 5 ("While there is a common law right of public access to judicial proceedings, that right is not a constitutional right").[4] This is patently incorrect.

---

[4] In advancing this erroneous proposition, *Waymo* mischaracterizes *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978) and relies on inapposite cases dealing with access to court records, not to trial proceedings. *Nixon* was decided two years before the Supreme Court articulated the constitutional right in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572-73 (1980), and addressed only the common law "right to inspect and copy *judicial*

MEDIA COALITION'S MOTION TO INTERVENE                                     CASE NO. 3:17-cv-00939-WHA
FOR LIMITED PURPOSES OF OPPOSING PLAINTIFF
WAYMO LLC'S MOTION TO CLOSE COURTROOM

5

In *Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014), the Ninth Circuit squarely held that the First Amendment right of access "extends to civil proceedings and associated records and documents." *Id.* at 786-87. As the Court of Appeals observed, allowing the press to enforce the constitutional access right in civil proceedings "is essential not only to its own free expression, but also to the public's." *Id.* at 786. As it explained, "'[w]ith respect to judicial proceedings in particular'" the press "'bring[s] to bear the beneficial effects of public scrutiny upon the administration of justice.'" *Id.* (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 491–92 (1975)). *See also Mendez v. City of Gardena*, 222 F. Supp. 3d 782, 789-92 (C.D. Cal. 2015) (citing *Courthouse News Service* and granting media intervenor's motion to unseal records in civil lawsuit).

This holding was neither novel or unexpected. Since the Supreme Court first recognized a constitutional access right to attend a criminal trial in *Richmond Newspapers v. Virginia* nearly forty years ago, every Circuit to have addressed the issue has similarly concluded that the First Amendment access right applies to civil trials as well.[5] In *Richmond Newspapers* Chief Justice Burger went out of his way to endorse this very conclusion:

> [W]hether the public has a right to attend trials of civil cases is a question not raised by this case, but we note that historically both civil and criminal trials have been presumptively open.

448 U.S. at 580 n.17; *see also*, *id.* at 599 (constitutional right extends to trials, "civil as well as criminal") (Stewart, J., concurring).

---

*records*,"(emphasis added), finding that right to be "not absolute." 435 U.S. at 598. Waymo's reliance on *Hagestad v. Tragesser*, 49 F.3d 1430, 1433-34 n.6 (9th Cir. 1995) is similarly misplaced, as that case explicitly declined to reach the issue of whether there was a First Amendment right of access.

[5] *See, e.g.*, *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067-71 (3d Cir. 1984); *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178-79 (6th Cir. 1983).

Accordingly, to prevail on its motion to close any portion of this trial, Waymo must satisfy the demanding standards of the constitutional access right, something its motion does not even purport to do.

## III. THE FIRST AMENDMENT IMPOSES A HEAVY BURDEN ON ANY PARTY SEEKING TO DENY PUBLIC ACCESS TO A CIVIL TRIAL

That the public's right of access to this trial is protected by the First Amendment—and not solely the common law—is not merely a matter of semantics.  The First Amendment provides "a *stronger* right of access than the common law."  *United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1197 n.7 (9th Cir. 2011) (emphasis added); s*ee also Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (distinction between rights afforded by the First Amendment and the common law "is significant"); *Rushford*, 846 F.2d at 253 (same).

While the First Amendment right of access is a qualified right, and not an absolute one, any party seeking to abridge the access right must meet a heavy constitutional burden.  To obtain closure of any portion of the trial, Waymo must establish, and the Court must expressly find, that "'(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest.'" *Phoenix Newspapers, Inc.*, 156 F.3d at 949 (citation omitted).

Before granting a motion to limit access, the Court must "make specific factual findings" that "satisfy all three substantive requirements for closure." *Id.* at 950; *see also Oregonian Publ'g Co.*, 920 F.2d at 1466 ("[a]n order of closure should include a discussion of the interests at stake, the applicable constitutional principles and *the reasons* for rejecting alternatives, if any, to closure.") (emphasis added) (citations omitted).  Where such findings are made, moreover, any closure ordered by the court must be narrowly tailored in time and scope, and must be effective in protecting the compelling interest at stake.  *See Press-Enterprise Co. v. Super. Ct.*,

478 U.S.1, 14 (1986)(requiring "on the record findings . . . *demonstrating* that 'closure is . . . narrowly tailored to serve [the compelling] interest,'" and that "that closure *would prevent*" the harm asserted) (emphasis added) (citation omitted); *Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1146 (9th Cir. 1983) ("there must be 'a substantial probability *that closure will be effective* in protecting against the perceived harm'") (emphasis added) (citation omitted).

Although these standards apply to all civil lawsuits, they should be applied with particular care to Waymo's motion.  As noted above, this intensely fought lawsuit is the focus of legitimate and widespread public interest and concern, both throughout the nation and, indeed, internationally. *See supra* nn. 2, 3.  The "greater the public's interest in the case the less acceptable are restraints on the public's access to the proceedings."  *United States v. General Motors Corp.*, 99 F.R.D. 610, 612 (D.D.C. 1983).  As expressed in *ABC, Inc. v. Stewart*, 360 F.3d 90, 102 (2d Cir. 2004), the fact that a suit "has been the subject of intense media coverage" is not itself sufficient to justify closure—"[t]o hold otherwise would render the First Amendment right of access meaningless; the very demand for openness would paradoxically defeat its availability."

## IV.    WAYMO'S OVERBROAD REQUEST FOR SECRET PROCEEDINGS FAILS TO SATISFY THE STRICT CONSTITUTIONAL STANDARDS

In support of its Motion, Waymo has submitted two sworn Declarations from its corporate executives. Waymo's showing does not come close to satisfying its burden of proof under the First Amendment.

### A.    Waymo Has Failed to Demonstrate A Substantial Probability Of Harm To A Compelling Interest

Waymo fails to satisfy the first two prongs of the tri-partite test for closure, which demand a substantial probability of harm to a compelling interest, and does not even attempt to address the third prong, which requires a showing that no "less restrictive means" are available to its proposed closure.

MEDIA COALITION'S MOTION TO INTERVENE                 CASE NO. 3:17-cv-00939-WHA
FOR LIMITED PURPOSES OF OPPOSING PLAINTIFF
WAYMO LLC'S MOTION TO CLOSE COURTROOM

8

1

2

       **1.**    **Invoking the talismanic term "trade secrets" does not automatically justify closure.**

Waymo initially asserts that the courtroom should be closed whenever information it claims to be a trade secret is discussed.  *See* Mot. at 11.  Because the heart of Waymo's case is that defendants misappropriated trade secrets, accepting such a broad and undefined claim could result in the closure of a large portion of the trial, and this concomitantly raises Waymo's burden to justify a limitation of the access right.  *See, e.g.*, *Huminski v. Corsones*, 396 F.3d 53, 86 (2d Cir. 2005) ("The quantum of prejudice that the movant must show increases the more extensive the closure sought would be.") (citations omitted); *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) (rejecting a motion to seal a report containing alleged trade secrets, and observing that because the report was "the basis for the adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny"); *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 2007 WL 922255, at *7 (D. Vt. Mar 23, 2007) (in deciding motion to close courtroom, courts should consider "the extent to which the Plaintiffs intend to prove their case by relying on [information] they seek to withhold from public scrutiny").

While the need to disclose in court the substance of an actual trade secret can, in appropriate circumstances, justify a limited closure, the proponent of such measures must establish both that the information at issue is in fact a true trade secret and that the disclosure of the trade secret in the judicial proceeding is necessary. The former requires that the information

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

truly be secret[6] and that its disclosure provides a competitive advantage; the latter requires a justification as to why the matter cannot fairly be tried without the disclosure.[7]

These evidentiary showings must be made in specific terms. *See Hill Holiday Connors Cosmopulos, Inc. v. Greenfield,* 2010 WL 890067, *4 (Mar. 8, 2010) (denying motion to seal where movant claimed "documents contain[ed] trade secrets, but [] never explain[ed] which specific documents contain what type of trade secrets").  And once the showings are made, the proponent of closure must still satisfy the rigorous standard for closing a courtroom to the public—the existence of trade secret evidence does not *per se* justify a denial of public access. *See, e.g., Crombie*, 2007 WL 922255, at *5 (holding "there is no absolute right to protect trade secrets from disclosure"); *In re Iowa Freedom of Info. Council*, 724 F.2d 658 (8th Cir.1983) (rejecting blanket rule that would require closure of the courtroom in every case involving trade secrets).

Rather, the proponent of closure must demonstrate that the harm that will be suffered from disclosure outweighs the public's significant interest and constitutional right to observe the trial proceedings and that less restrictive alternatives are not available. *See, e.g., Main & Assocs., Inc. v. Blue Cross and Blue Shield of Alabama*, 2010 WL 2025375, at *2 (M.D. Ala. May 20, 2010) (denying motion to seal court filings alleged to contain trade secrets where movant failed

---

[6] It is axiomatic that information that has previously been publicly disclosed does not constitute a "trade secret."  *See DVD Copy Control Ass'n Inc. v. Bunner*, 116 Cal. App. 4th 241, 255 (Cal. App. 2004) (information "in the public domain cannot be removed . . . under the guise of trade secret protection.") (citation omitted); *Religious Tech. Ctr. v. F.A.C.T.NET, Inc.*, 901 F. Supp. 1519, 1526 (D. Colo. 1995) (holding that where claimed trade secrets have been disseminated over the internet, they do not qualify as "trade secrets" any longer).  Nor does the First Amendment allow for closure or sealing of information that has previously been disclosed. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("The genie is out of the bottle . . . . We have not the means to put the genie back.").

[7] *See In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 2013 WL 2156599, at *4 (S.D. W. Va. May 17, 2013) (denying motion to seal where movant "[did] not elaborate and has not provided sufficient justification as to why the identity of its supplier and 'arrangements' it made for obtaining the raw polypropylene resin are trade secrets"); *Barr Labs., Inc. v. KOS Pharms., Inc.*, 362 F.Supp.2d 421, 424 (S.D.N.Y. 2005) (denying motion to close courtroom where it was not apparent that trade secrets would be disclosed).

to demonstrate sufficient good cause for overcoming the First Amendment right of access); *US Investigations Services, LLC v. Callihan*, 2011 WL 1157256, at *1 (W.D. Pa. Mar. 29, 2011) (closure of courtroom during legal proceedings not justified where less restrictive means were available); *cf. U.S. v. Rosen*, 487 F. Supp. 2d 703, 720 (E.D. Va. 2007) (holding that need to present properly classified information, implicating national security, does not absolve court of ensuring the First Amendment standard for closure is satisfied).

### 2. Waymo's other conclusory and speculative claims of harms are equally insufficient, as a matter of law.

Waymo describes in conclusory terms other alleged harms it may "potentially" suffer from the disclosure at trial of non-public financial information, employee compensation information or the terms of various deals, whether consummated or merely contemplated.  These arguments, too, fall far short of demonstrating the substantial probability of harm to a compelling interest that the First Amendment requires.

For example, the Declaration of Gerard Dwyer ("Dwyer Decl."), Sept. 26, 2017, Doc. No. 1822-2, states that disclosure of "bonus payments and other compensation information" has "the *potential* to negatively impact employee morale" and could "*potentially* cause Waymo financial harm" by undercutting "Waymo's bargaining power in compensation negotiations with other employees,"  Dwyer Decl. at 2-3 ¶¶ 11, 12 (emphasis added).  Waymo presents similarly nebulous and speculative claims of harm that it says could conceivably result from the public disclosure of its negotiations and consummated business transactions with third parties.  *See* Declaration of Anil Patel ("Patel Decl.") at 1 ¶¶ 5, 6, Sept. 26, 2017, Doc. No. 1822-1 (asserting the potential use of proprietary information by others in the industry to Google's detriment).  This is entirely insufficient.

As a threshold matter, the potential of a negative impact on "employee morale," on Waymo's bargaining position with employees, its reputation or "standing" in the high-tech

community,[8] and other rationales for secrecy offered up by Waymo are not sufficiently weighty governmental interests to justify a limitation on the public's constitutional right to attend the trial.  As the Seventh Circuit explained in *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000), "Many a litigant would prefer that the subject of the case—how much it agreed to pay for the construction of a pipeline, how many tons of coal its plant uses per day, and so on—be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing."

Or as this Court previously instructed Waymo's counsel, "[t]he public's right to know what goes on in the federal courts is more important than the newspapers beating up on you[r client] in the press."  Tr. of Mar. 29, 2017 at 38:1-3. *See also Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014)  (holding that avoiding embarrassment preventing "an undue burden on his professional endeavors" are not compelling); *Publicker Indus., Inc.*, 733 F.2d at 1074 ("The presumption of openness plus the policy interest in protecting unsuspecting people from investing in Publicker in light of its bad business practices are not overcome by the proprietary interest of present stockholders not losing value or the interest of upper-level management in escaping embarrassment.").

Not only are the claimed harms insufficiently weighty, they are also—by Waymo's own admission—only *potential* harms.  In deciding whether the proponent of courtroom closure has met its First Amendment burden, a court cannot rely upon conclusory assertions, speculation, or conjectural predictions of potential harm.  *See, e.g.*, *Press-Enterprise Co.*, 478 U.S. at 15

---

[8] Reputational concerns, of course, provide no proper justification for closure under any standard.  *See, e.g., Brown & Williamson Tobacco Corp.*, 710 F.2d at 1177-79  ("Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records"); *Id.* at 1180 ("Common sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know."); *Kamakana*, 447 F.3d at 1179 ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records").

(holding that "[t]he First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of [his fair trial] rights"); *Oregonian Publ'g Co.*, 920 F.2d at 1466 ("[t]he court must not base its decision on conclusory assertions alone"); *United States v. Edwards*, 672 F.2d 1289, 1294 (7th Cir. 1982) (court may not deny access "on the basis of hypothesis or conjecture"); *cf. Kamakana*, 447 F.3d at 1182 ("A review of the record points up the inadequacy of the City's declarations, which largely make conclusory statements about the content of the documents—that they are confidential and that, in general, their production would, amongst other things, hinder CIU's future operations with other agencies, endanger informants' lives, and cast HPD officers in a false light. These conclusory offerings do not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents.").

**B.      Waymo Has Also Failed To Demonstrate That No "Less Restrictive Means" Are Available To Protect Any Truly Compelling Interest**

Even assuming that Waymo had met is burden of demonstrating a substantial probability of harm to a compelling interest (which, to date, it has not), it has failed to meet its further burden of demonstrating that any such interest cannot be protected by means less restrictive than the drastic measure of closing the courtroom. *Richmond Newspapers, Inc.*, 448 U.S. at 580-81 (holding that order closing a courtroom violated the First Amendment where "no inquiry was made as to whether alternative solutions would have met the need to ensure fairness"); *Press-Enterprise Co.*, 478 U.S. at 14 (holding that trial court had committed constitutional error because it "failed to consider whether alternatives short of complete closure would have protected the interests of the accused"); *Phoenix Newspapers, Inc.*, 156 F.3d at 949 (proponent of sealing must demonstrate that "there are no alternatives to closure that would adequately protect the compelling interest").

Accordingly, courts must treat closure as a last resort – one they can employ only after engaging in a thorough analysis of reasonable alternatives and concluding that none of those alternatives would be sufficient to protect the compelling interest at stake.  *See, e.g.*, *Applications of Nat'l Broad. Co., Inc.*, 828 F.2d 340, 346 (6th Cir. 1987) (vacating order sealing pleadings and exhibits, and remanding for more adequate findings and consideration of less restrictive alternatives); *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984) (trial court erred in sealing courtroom where it failed to consider less restrictive alternatives); *Publicker Indus., Inc.*, 733 F.2d at 1074 (district court abused discretion where it "failed to consider less restrictive means to keep this information from the public").

This holds true even where a party argues that closure is required to protect its trade secrets.  *See, e.g.*, *Barr Labs., Inc.*, 362 F. Supp. 2d at 424 (denying motion to close courtroom where "issues presented in this hearing may be argued adequately without disclosure of trade secrets"); *US Investigations Servs., LLC*, 2011 WL 1157256, at *1 (closure of courtroom not constitutionally permissible where "it may not be necessary to discuss the detail of each document" alleged to contain trade secrets); *see also U.S. v. Zhang*, 590 F. App'x 663, 667 (9th Cir. 2014) (closure of courtroom to protect trade secrets permissible only where "court had previously adopted alternative measures to protect the trade secrets, including turning the courtroom televisions away from the courtroom audience").

Waymo, for example, does not explain why the examining attorneys cannot structure their questions in a way that would avoid the disclosure of confidential business information or financial data.  Nor does it explain why it would be infeasible to display documents containing true trade secrets to the jury while concealing them from the courtroom audience, or why the parties could not adopt a stipulated nomenclature to refer to certain claimed trade secrets by number or other truncated name, without disclosing the actual alleged trade secret.  These are

offered merely as illustrative examples of the ways in which the parties can protect their asserted interests without trammeling the public's First Amendment right of access.

An example of the ability of sophisticated and accomplished trial counsel, such as those handling this case, to litigate matters that touch on trade secrets claims without depriving the public of their constitutional right to attend judicial proceedings, comes from this very Court. One of the most expensive and high-profile tech industry cases litigated to date, *Apple v. Samsung,* was tried in this courthouse with no portion of the trial closed to the public. *See Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 3283478, at *11 (N.D. Cal. Aug. 9, 2012), *rev'd and remanded on other grounds*, 727 F.3d 1214 (Fed. Cir. 2013).

Waymo's motion, in short, fails to meet its burden with respect to each prong of the constitutional test—it does not articulate sufficiently compelling interests, does not show a substantial probability of harm to the identified interests from open proceedings, and does not establish that no alternatives to closure can adequately avoid the harm.[9]

## V.   BECAUSE ANY CLOSURE ORDER THE COURT MIGHT ENTER MUST BE NARROWLY TAILORED, THE COURT SHOULD ORDER THE PROMPT RELEASE OF A REDACTED TRANSCRIPT OF ANY CLOSED PORTION OF THE TRIAL

To the extent that Waymo could supplement the record to satisfy its heavy burden, any order to limit access that results must necessarily be limited in scope and time.  This means that the courtroom should be closed for only those specific portions of testimony that satisfy the high constitutional standard, and that a redacted transcript should promptly be made available, withholding only the properly protected testimony.  *United States v. Aref*, 533 F.3d 72, 82 (2d Cir. 2008) ("it is the responsibility of the district court to ensure that sealing documents to which the public has a First Amendment right is no broader than necessary"); *cf. Kasza v. Whitman*,

---

[9] Even if binding precedent did not require Waymo to overcome the public's First Amendment right of access to these proceedings, the motion should still be denied because Waymo has also failed to satisfy the more lenient standard under the common law right of access.

MEDIA COALITION'S MOTION TO INTERVENE
FOR LIMITED PURPOSES OF OPPOSING PLAINTIFF
WAYMO LLC'S MOTION TO CLOSE COURTROOM

CASE NO. 3:17-cv-00939-WHA

325 F.3d 1178, 1181 (9th Cir. 2003) (where release of court records poses risk to national

security, "[p]ublic release of redacted material is an appropriate response").

The Supreme Court has held that

> When limited closure [of a trial] is ordered, the constitutional values
> sought to be protected by holding open proceedings may be satisfied later
> *by making a transcript of the closed proceedings available within a*
> *reasonable time*, if the judge determines that disclosure can be
> accomplished while safeguarding [the compelling state] interests [at
> stake].

*Press-Enterprise Co. v. Super. Ct.*, 464 U.S. 501, 512 (1984) (emphasis added).[10]  The First

Amendment right of public access "encompasses equally the live proceedings and *the transcripts*

which document those proceedings."  *Antar*, 38 F.3d at 1359 (emphasis added); *see also Press*

*Enterprise Co.*, 464 U.S. at 513 (holding that trial court's "total suppression of the transcript"

violated the First Amendment).

Moreover, the redacted transcript of any closed portion of the trial must be prepared and

made publicly available *promptly*, so the public (and its surrogates, the press) are not deprived of

their right to observe contemporaneously the judicial proceedings herein.  *See, e.g.*, *Nebraska*

*Press Ass'n v. Stuart*, 427 U.S. 539, 560-61 (1976) (recognizing that "[d]elays imposed by

governmental authority" are inconsistent with the press's "traditional function of bringing news

---

[10] Release of a redacted transcript is a necessary *component* of any order that closes a
judicial proceeding upon entry of the requisite findings.  Release of a transcript, however, is
decidedly *not* a constitutionally acceptable substitute for actual public observation of judicial
proceedings.  *See, e.g.*, *Stewart*, 360 F.3d at 99-100 ("The provision of a transcript, however,
does not somehow allow for a more lenient balancing test [with regards to closing a judicial
proceeding].");  *United States v. Antar*, 38 F.3d 1348, 1360 n.13 (3d Cir. 1994) ("[W]here a right
of access exists, a court may not deny access to a live proceeding solely on the grounds that a
transcript may later be made available.");  *Publicker Indus., Inc.*, 733 F.2d at 1072 (same);  *Soc'y*
*of Prof'l Journalists v. United States Sec'y of Labor*, 616 F. Supp. 569, 578 (D. Utah 1985)
(same).

MEDIA COALITION'S MOTION TO INTERVENE                    CASE NO. 3:17-cv-00939-WHA
FOR LIMITED PURPOSES OF OPPOSING PLAINTIFF
WAYMO LLC'S MOTION TO CLOSE COURTROOM

16

to the public promptly."); *Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) ("public and press generally have a contemporaneous right of access to court documents and proceedings"); *United States v. Wecht*, 537 F.3d 222, 229 (3d Cir. 2008) (the "value of the right of access" is seriously undermined if not contemporaneous); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994)  ("[t]he newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression.").

As the Virginia Supreme Court has explained:

> [T]o work effectively, public access must be contemporaneous—*the public must be able to scrutinize the judicial process as it takes place.* . . . [The press provides] immediate descriptions of events as they unfold. . . . To delay or postpone disclosure undermines the benefits of public scrutiny and *may have the same result as complete suppression.*

*Daily Press, Inc. v. Commonwealth of Virginia*, 739 S.E.2d 636, 640 (Va. 2013) (emphasis added). This Court itself has previously recognized this principle and ordered the prompt release of transcripts of proceedings that were closed to the public.  *See* Tr. of Mar. 29, 2017 at 39:5 - 40:18 (ordering the court reporter to publicly release entire transcript of *in camera* hearing within 24 hours if no objections are received prior to that time).

Any order the Court may enter closing any portion of the trial in this case should include a similar component of contemporaneous public access to a redacted transcript.  The proponent for sealing should be required to demonstrate the need for each of the specific redactions proposed from the public transcript.  *See United States v. Pickard*, 733 F.3d 1297, 1304-05 (10th Cir. 2013) (reversing trial court's blanket sealing order because "the district court did not consider whether selectively redacting just the still sensitive, and previously undisclosed, information from the [records] . . . would adequately serve the government's interest"); *In re N.Y. Times Co.*, 834 F.2d 1152, 1154 (2d Cir. 1987) (approving of requirement "to minimize redaction in view of First Amendment considerations.").

## **CONCLUSION**

For the reasons stated above, the Media Coalition respectfully asks this Court to grant their motion to intervene for the limited purpose of vindicating the public's First Amendment right of access to this proceeding, and to deny Waymo's motion to close portions of the trial unless and until Waymo demonstrates, and the Court finds, that the strict standards imposed by the First Amendment to close a civil trial have been satisfied herein.

Respectfully submitted on October 3, 2017

By:   *s/Steven D. Zansberg*
Steven D. Zansberg (No. 177528)
e-mail: zansbergs@ballardspahr.com

BALLARD SPAHR LLP
1225 Seventeenth Street, Suite 2300
Denver, CO  80202-5535
Phone: (303) 376-2409

*Attorneys for Proposed Intervenors Associated Press, Bloomberg L.P., Buzzfeed, Inc., MediaNews Group, Inc., d/b/a Digital First Media, Dow Jones & Co., The First Amendment Coalition, Gizmodo Media Group, LLC, The Hearst Corporation, The New York Times Company, Reuters America LLC and Vox Media, Inc.*

MEDIA COALITION'S MOTION TO INTERVENE                    CASE NO. 3:17-cv-00939-WHA
FOR LIMITED PURPOSES OF OPPOSING PLAINTIFF
WAYMO LLC'S MOTION TO CLOSE COURTROOM

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have on this 2nd day of October, 2017, served via the Court's electronic filing system, a true and correct copy of the above and foregoing on all counsel of record.

s/   *Steven D. Zansberg*     