QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>       vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**DECLARATION OF ANDY CRAIN IN SUPPORT OF PLAINTIFF WAYMO LLC'S SUPPLEMENTAL MOTION FOR CONTINUANCE AND RESPONSE TO REQUEST FOR INPUT ON PENDING MOTION TO CONTINUE TRIAL DATE** |

I, Andy Crain, hereby declare as follows.

1.     I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently as follows.

2.     In my capacity as Vice President of Forensics and Collections at Discovia, I was retained in this matter to provide additional forensic analysis of the various evidentiary sources that were analyzed in the preparation of the Stroz due diligence report dated August 5, 2016. I have also been asked to provide forensic analysis of an additional approximately 118 hard drives that I am informed and believe were contained in various computers, servers, and storage arrays belonging to Anthony Levandowski. It is my understanding that this latter batch of 118 hard drives was disclosed to Stroz during its due diligence investigation, but was neither imaged nor analyzed by Stroz (until just recently, when Stroz has begun to create forensics images of them in work that remains ongoing, as discussed in greater detail below).

3.     On September 25, 2017, I participated in a teleconference with Linda Brewer and Jeff Miles from Quinn Emanuel; Melanie Blunschi and Whitney Weber from Latham and Watkins for Stroz, and John Shumway and Aditi Tatti from Stroz's team. We discussed the high-level inventory of all these evidentiary devices, the efforts Stroz was currently undertaking to create forensic images of the latter batch of them, and the preliminary logistics and timing that would be required to obtain access to this forensic data; i.e. from both the 56 previously-available devices and accounts, as well as the 118 unreviewed drives.

4.     It should be noted that the latter batch of approximately 118 servers and hard drives is notably distinct and more difficult to image and analyze than ordinary laptops or other devices, because these drives are apparently configured in what are called "arrays" -- essentially multiple hard drives configured to function as one larger drive via the use of either, or both, hardware and software. This technology is also commonly known as "RAID" (redundant array of inexpensive disks).[1] Moreover, it is my understanding from speaking with the Stroz team that a good number of these particular drives and arrays are of a non-typical variety, having presumably been

configured by Mr. Levandowski himself.  In order to perform forensic analysis on hard drives contained in an array, it is necessary to first "reconstruct" or "rebuild" the array such that its file system and substantive contents can be logically read and understood. This can be done by either capturing the forensic image with certain, specific methodologies, or by virtually rebuilding the array using forensic tools after images are captured of the individual RAID member drives.  I can attest based on prior experience that this type of RAID reconstruction can often become very difficult and quite time consuming.

5. On Wednesday, September 27, 2017, Judge Corley ordered Stroz to produce to Discovia all native images of both the 56 previously-reviewed devices and accounts and the 118 previously un-reviewed devices.

6. On Thursday, September 28, 2017, at 12:00 p.m. PST, Discovia received from Stroz Friedberg 7 unique hard drives of data, containing 56 different evidentiary datasets associated with five different custodians.  We understand from Stroz that this is the universe of devices and accounts that were analyzed in the preparation of its due diligence report dated August 5, 2016.

7. On October 1, 2017, I participated in another teleconference with counsel from Quinn, counsel from Latham, and Stroz team member John Shumway. We discussed Stroz's ongoing efforts and progress to capture working forensic images of the additional 118 devices that have not been reviewed (including the significant technical challenge of rebuilding the arrays, as discussed above). Based on that call, I understand from Stroz that we can expect another delivery of device images on Monday, October 2, 2017. We also discussed that it could still be one or more weeks until they are able to provide the balance of these device images to Discovia in a usable format, so that we can then begin our own analysis and review. It is also still possible that one or more of Mr. Levandowski's computers and/or storage arrays may simply not be able to be properly reconstructed. On this call, Stroz clarified that some of Mr. Levandowski's servers that are still being worked on contain between 24 – 32 terabytes of storage, which is a highly unusual type of computer in today's civil litigation and forensic discovery.

8.  Although Quinn Emanuel began on September 23, 2017 attempting to get access to, and begin review on, the 56 previously-reviewed devices and accounts and the 118 previously un-reviewed devices at Stroz, as of October 1, 2017, Discovia has only had the 56 devices and accounts for 72 hours, and have hundreds if not thousands of man-hours to complete the needed forensic analysis in order to formulate conclusions relative to a variety of questions central to this case. For example, as discussed in greater detail below, each of these evidentiary datasets must be catalogued, have reporting generated about their contents, undergo a variety of semi-automated pre-processing by the appropriate forensic tools, and have their various forensic artifacts parsed and analyzed by human eyes, in close consultation with counsel.

9.  Even though Discovia began its work immediately on the devices received from Stroz on September 28, 2017, there remains appreciable lag-time in getting access to the additional approximately 118 drives that apparently sat unexamined at Stroz since 2016.

10. The 56 device images received to date consist of approximately 8.5 terabytes of data, broken down by custodian roughly as follows: Anthony Levandowski (1.49TB); Don Burnett (5TB+); Soren Juelsgaard (617GB); Colin Sebern (567GB); and Ron Lior (859GB). Although comparisons between terabytes of data storage and things like documents or printed pages are by definition only rough measures, it should be stressed that 8.5 terabytes are a huge volume to try and process and analyze. For example, a single terabyte of storage is the mathematical equivalent of nearly 1,500 CD-ROM discs (which store 700MB each), meaning the data received from Stroz on September 28, 2017 would equal approximately 12,700 CD-ROMs full of information.

11. For the 8.5TB of data that was received by Discovia on Thursday, September 28, 2017, we now must complete a host of tasks as part of the needed forensic analysis. A non-exhaustive listing of these types of tasks is below, along with rough estimated timelines:

    (a)  Conduct evidence intake and cataloguing, including chain of custody: **~25 hours of human labor;**

    (b)  Prepare summary listings of the devices' files/folders serving various analysis purposes: **~25 hours of human labor;**

(c) Retrieve files of interest for counsel's review, based on the file/folder listings, e.g. source code: **~10+ hours of human labor;**

(d) Process evidentiary datasets using various forensics tools (as appropriate depending on what the dataset is, e.g. phone, Mac, Windows, etc.) in order to parse operating system artifacts, index the data for searching, and generate reporting: **~50-100 hours of human labor and an estimated 500 hours or more of machine run time;**

(e) Perform detailed manual analysis of parsed artifacts and various reporting, per device, in an effort to answer specific questions requested by counsel: **~300-500 hours or more of human labor.** This specific work step is especially difficult to estimate, as answering a single question on a single device can sometimes require time-consuming research, replication testing, and detailed discussions with counsel.

12. While we can do some of this work in parallel, gaining a degree of efficiency on the machine run time, we are also constrained somewhat by our number of analysis computers and forensic tool licenses, such that a good deal of these tasks must be done sequentially.

13. There will also be a large amount of additional time that will be needed to analyze the data from the additional 118 computing devices that Stroz is currently imaging (i.e. once that batch of data is even received by Discovia). The estimated time required to complete this component is quite difficult to estimate, but could easily require **an additional 300-500 hours or more of human labor**. The devices are not ready for review yet, nor has a definite timeline for production been confirmed.

14. Stroz's counsel Ms. Blunschi has indicated during our conversations that the latter batch of approximately 118 drives was not previously analyzed as part of the preparation of the Stroz due diligence report, and consist of "home-made" servers designed by Anthony Levandowski.

15. Because these servers have not been reviewed by Stroz previously there will be more preliminary work to be done to discover what is held on these servers.

16. In the first 48 hours with access to the data for the 56 devices, Discovia had already made discoveries that were not disclosed in the Stroz Report. For example, as part of our ongoing analysis of the Levandowski MacBook laptop, we discovered there is a Windows XP Virtual Machine (WVM) present there. A WVM is essentially a separate computer that is contained within a large software file, and stored on the Macbook laptop: i.e. a computer within a computer.

17. The Levandowski WVN has outward-facing metadata showing that it was first created in April 2010, and that it was last modified (i.e. used) on March 22, 2016, which is the same day Stroz imaged the MacBook. This indicates that Mr. Levandowski was using the WVM most recently on the same day his computer was imaged. Moreover, this particular type of virtual computer file found on Mr. Levandowski's Macbook is more complex for us to penetrate and analyze – we have that effort underway as well. With sufficient time, Discovia should be able to prepare file/folder listings for this virtual computer, and conduct a variety of other analysis, just like we are doing for the other datasets received from Stroz.

18. Discovia has been processing the devices to provide file-listings from each device and account, which list out all of the files on each device or account, their size, and other basic information about them.

19. We also began extracting source code material on Friday, September 29 which on information and belief was ordered by Judge Corley during the Wednesday, September 27, 2017 hearing on the motion to compel the native image data. The batches of code contained in just the Levandowski file listings alone is voluminous.

20. Similar to the file / folder listings, these batches of code are being extracted on a rolling basis.

21. Moreover, we have various forensic tool processes running now against the Levandowski Macbook image and other evidentiary datasets, so that we can try to answer pertinent questions that were left unanswered in the Stroz report. This pre-processing tool work is a necessary first step to conducting the analysis, as it identifies and parses the various artifacts we use to formulate conclusions to those types of questions. These pre-processing steps can be time consuming, however, sometimes requiring 12-24 hours or more to run (per evidentiary dataset).

22. Discovia is also investigating certain facts that were disclosed, but not fully explained or examined, by the Stroz Due Diligence Report.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: October 2, 2017

/s/ Andy Crain

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Andy Crain.

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven