MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Tel:  415.268.7000 / Fax:  415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Tel:  202.237.2727 / Fax:  202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@SusmanGodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019-6023
Tel:  212.336.8330 / Fax:  212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | Case No.   3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S RESPONSE TO WAYMO'S SUPPLEMENTAL MOTION FOR CONTINUANCE AND RESPONSE TO REQUEST FOR INPUT ON PENDING MOTION TO CONTINUE TRIAL DATE**<br><br>Trial Date: October 10, 2017 |

Waymo has duped us all. When it filed its complaint, Waymo alleged that it had overwhelming evidence that Defendants had infringed four patents and stolen over a hundred trade secrets. Waymo demanded immediate relief. This Court accommodated that demand by setting a schedule that made the "rocket docket" seem like a slow-motion movie. This Court understood, however, that it was not feasible to try over 100 trade secrets on such an expedited schedule so it asked Waymo to select "less than ten" for trial. (Dkt. 563 ¶ 10.) Waymo agreed and chose for trial its nine strongest trade secrets, knowing that it did not then have the Stroz report and might never receive it. What resulted was months of work—for both the Court and the parties—at break-neck speed. Days with triple-tracked depositions—far from being the worst manifestations of the discovery onslaught—were welcome reprieves. Motions were briefed on a super-expedited basis. Experts were prepared and presented with the ink not yet dry on their reports. Waymo asked for all of this and got it.

But apparently the concept of "knowing, informed consent" is lost on Waymo. Now that Waymo has the Stroz report, it wants to use the Stroz report as an excuse to back out of its prior trial commitment. Hoping to rescue its crumbling technical and damages cases, Waymo seeks a complete do-over of the litigation by manufacturing and grossly exaggerating every discovery slight it could imagine, to convince the Court that it needs more time. This Court should not submit to Waymo's thinly veiled shenanigans. *See Monje v. Spin Master Inc.*, No. CV-09-01713-PHX-JJT, 2015 WL 11117076, at *1 (D. Ariz. April 22, 2015) (denying motion to continue trial premised on repeated exaggerated claims of discovery misconduct). Adding insult to injury, Waymo refuses to answer this Court's pointed questions about the scope of the future trial it demands. As Waymo sees it, this Court's calendar is at Waymo's disposal—Waymo can demand, and then back out of, trials at its whim.

This state of affairs is monstrously unfair to all involved. Waymo carefully avoids ever mentioning the bargain it struck with the Court for the October trial date. But a deal is a deal. Waymo demanded an October trial date, and the Court agreed to the accelerated schedule. Waymo should be held to its side of the bargain, and the Court should "find[] that its inherent authority to manage cases effectively requires that [Waymo] be held to its prior representations

and agreement." *Parco Merged Media Corp. v. Multispectral Solutions, Inc.*, No. Civ.A. 2:06CV46, 2006 WL 1117802, at *4 (E.D. Va. Apr. 21, 2006) (striking allegations in amended complaint where plaintiff had sought accelerated schedule for summary judgment briefing and amendment would prevent speedy resolution); *U.S. v. All Purpose Svcs.*, 175 F.R.D. 552, 553 (D. Mont. 1997) (denying motion for continuance where counsel had selected trial date and aware of its discovery needs at time of choosing).

Moreover, equity demands that the trial move forward on the currently scheduled date. Waymo has dragged Uber's name through the mud since it filed its complaint in this action. Uber deserves its day in Court to demonstrate that Waymo's allegations are meritless. Permitting Waymo to change course at the eleventh hour because it lacks the very proof it has so publicly claimed to already possess would be manifestly unfair to Uber.

Should this case not move forward next week, this Court should view Waymo's refusal to proceed as a knowing and express waiver of the currently asserted nine trade secrets. However else it decides to handle Waymo's remaining trade secrets, this Court should find that, in declining to move forward with the trial date it so vigorously demanded, Waymo has relinquished its rights to assert those nine trade secrets.

Here, Uber briefly addresses some of Waymo's arguments in its supplemental motion.

## I. WAYMO HAS NOT SHOWN THAT THE RECENTLY DISCOVERED DOCUMENTS WARRANT A CONTINUANCE

During the course of preparing for expert depositions, Uber learned that there were some documents that had not been migrated to Uber after the Ottomotto acquisition. This was inadvertent, and Uber has submitted four declarations explaining in detail what had happened. (Dkts. 1893-4, 1912, 1913, 1916.) Like Waymo, Uber is frustrated that this happened, but more importantly: Waymo has had these emails since Thursday but does not identify a single email— not one—that is even relevant to this case, much less one that warrants a continuance. Moreover, because the accounts of the other Ottomotto employees were in fact migrated, any emails from Levandowski's account that are responsive and relevant would likely be duplicative of emails already produced in this litigation. (Dkt. 1912 ¶ 7.)

Moreover, Waymo grossly overstates the importance and absolute number of documents that it claims Uber failed to produce. (Mot. at 6-8.) Uber's discovery vendor has searched the 16,000 emails and 85 GB of Drive documents at issue using file names, hash values, and 159 keyword search terms designed specifically to identify data from the 14,000 files allegedly downloaded from Levandowski as well as other Waymo materials. (Declaration of Esther Kim Chang In Support of Defendants' Response to Waymo's Supplemental Motion for Continuance and Response For Input on Pending Motion to Continue Trial Date ("Chang Decl.") ¶ 5.) Out of Levandowski's Ottomotto email and Drive accounts, Uber's vendor has determined that there were two file name hits, zero hash value hits, and around 1,600 keyword hits. (*Id.*) Uber has reviewed these documents and has determined that none of these documents contain Google confidential information. (*Id.*)

Waymo claims there are "over 1.2 million documents" in the 85 GB of data in Levandowski's Google Drive. (Mot. at 8.) Uber's discovery vendor has determined, however, that there are actually 177,770 documents in this 85 GB of data—prior to removal of duplicates or application of search terms. (Chang Decl. ¶ 6.)

Exhibit 17 to the Stroz report (i.e., "Anthony Levandowski Preliminary Forensic Findings") reflects that the a@ot.to.com and a@ottomotto.com email inboxes were collected as of March 22, 2016. (Dkt. 1603-6 at UBER00312645.) Stroz did not find any potentially relevant data in either email address. (*Id.*) Waymo has had access to the full depository of materials collected by Stroz, including the materials collected from the a@ot.to.com and a@ottomotto.com email inboxes since September 18, 2017. (Mot. at 10.) Additionally, as described in Sylvia Rivera's declaration, Uber has also produced approximately 2,500 emails and attachments that were sent to or from the email addresses for the Levandowski Otto Accounts, "a@ot.to" or "a@ottomotto.com." (Dkt. No. 1912 ¶ 4.)

Moreover, none of these newly discovered documents change the fact that Uber fully complied with the Preliminary Injunction Order. As reflected in the declarations of Kevin Faulkner (Dkt. No. 1893-4), Sylvia Rivera (Dkt. No. 1912), Jesse Murray (Dkt. No. 1913), and Mike Schlanser (Dkt. No. 1916), neither Uber nor MoFo was informed, prior to

September 27, 2017, that the migration of a@ot.to/a@ottomotto.com was not successful.

## II. WAYMO'S SUGGESTION THAT IT HAS EVIDENCE OF CONVERSION IS A NON-STARTER

Waymo suggests that it "will seek" to bring a conversion claim.  (Mot. at 22.)  Waymo has asserted, since the inception of this case, that Levandowski allegedly took 14,000 files and that Defendants allegedly used those files.  At this late stage, Waymo cannot establish good cause for adding a conversion claim on the eve of trial when the base facts have been present all along.

Further, any such claim would be based on the same act of alleged misappropriation and would be pre-empted, similar to Waymo's claim under § 17200.  (Dkt. 576.)  Under California's broad preemption law, the California's Uniform Trade Secret Act "preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958–59 (2009) (internal quotation marks omitted).  A plaintiff may not plead alternative causes of action based on the same conduct. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010).  Waymo argues that its conversion claim is based on "confidential Waymo files, including sensitive software files that are wholly distinct from the trade secrets already at issue."  (Mot. at 23.)  But even if that were true (which it is not), these files are still allegedly downloaded files.  There is a common nucleus of facts; therefore, CUTSA demands preemption of any unpled conversion claim by Waymo.

Waymo incorrectly argues that the Ninth Circuit has recently held that "a state law tort claim is not preempted by California's Uniform Trade Secret Act when that tort involves confidential information [that does not] qualify as a trade secret."  (Mot. at 23 (citing *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 704 (9th Cir. 2017).)  This argument is misplaced.  The only case Waymo relies on is an unpublished opinion, *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700,  in which the non-preempted claim was for breach of fiduciary duty against the individual who took the confidential information.  Here, where the only defendants are Uber,

Ottomotto, and Otto Trucking (and not Levandowski), there is no analogous claim.[1]  Moreover, the principle Waymo proffers is inconsistent with California's broad preemption laws.  Thus, Waymo cannot now plead a claim for conversion because any such claim would be preempted.

Finally, even if such a claim were not pre-empted, Waymo cannot possibly demonstrate that it has been harmed by the fact that Stroz quarantined certain Google documents in a vault.

### III.   WAYMO CONTINUES ITS PATTERN OF GIVING THE COURT ONLY PART OF THE FACTS

This Court has cautioned the parties about "half-truths."  (9/20/2017 Hr'g Tr. at 4:3-10; 9/18/2017 Hr'g Tr. at 26:8-17.)  Waymo's brief is littered with them.  Here are just a few examples:

- Waymo complains that "Uber is refusing to supplement its interrogatories."  (Mot. at 15:9.)  Waymo fails to inform the Court, however, that it requested this precise relief from Judge Corley (*see* Dkt. No. 1790 at 1 (requesting that Judge Corley order new interrogatories and require "supplementation of existing interrogatories") and that Judge Corley issued an order on Friday denying Waymo's request.  (Dkt. 1892 at 2:1.)

- Waymo complains that Defendants "attempted to delay" the deposition of Travis Kalanick.  (Mot. at 15 n.5.)  Again, Waymo does not tell the full story.  Mr. Kalanick's personal counsel requested an accommodation due to Mr. Kalanick's schedule.  Waymo objected, the parties had a meet and confer with Special Master Cooper, and Mr. Cooper directed the parties to proceed with the deposition.  Accordingly, Mr. Kalanick appeared for deposition as originally scheduled.

- Waymo complains that it has been told that it does not have "unlimited access" to Ottomotto's software code.  (*Id.* at 16:25.)  Waymo fails to tell the Court that the Ottomotto source code has been available for inspection since August 17 and that

---

[1] Note also the multiple ellipses in Waymo's quotes from the case.

since September 27, Waymo has reviewed Ottomotto source code for more than 45 hours, including on weekend days and some evenings. (Chang Decl. ¶ 2.) Counsel for Uber has twice asked Waymo if it had found any evidence at all that Google source code had been misappropriated. (*Id.* ¶ 3, Ex. A.) In response, there has only been the sound of crickets.

- Waymo references that more than one-third of certain documents were accessed after February 1, 2016, without noting that: (1) Stroz could not determine whether Levandowski had in fact "accessed" those files at all; (2) many dozens of files were "accessed" at the exact same minute; and (3) that these documents include files that are clearly not proprietary or confidential, such as pictures of a screwdriver, a man holding a miniature car in his hand, the Tesla log-in page, a hanging plant, and muffins in a basket. (Dkt. 1928-5, McCauley Decl. Ex. 21 at 3, 5, and 6.)

- Waymo contends that the Special Master is "currently reviewing" certain documents that were objected to on privacy grounds (Mot. at 16), but fails to inform the Court that the Special Master in fact resolved those objections last week. (Chang Decl. Ex. B.)

## CONCLUSION

Waymo brought its complaint, representing to this Court that it had solid evidence that its trade secrets had been misappropriated. It is high time for Waymo to prove that claim.

Dated: October 3, 2017              MORRISON & FOERSTER LLP

                                    By:     */s/ Arturo J. González*
                                            ARTURO J. GONZÁLEZ

                                    Attorneys for Defendants
                                    UBER TECHNOLOGIES, INC.
                                    and OTTOMOTTO LLC