QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa J. Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:   (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for Waymo LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>            Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO'S RESPONSE TO MEDIA COALITION'S MOTION TO INTERVENE FOR LIMITED PURPOSE OF OPPOSING WAYMO'S CLOSURE MOTION**<br><br>**Hearing:**<br>Date:     **November 28, 2017**<br>Time:     **8:00 AM**<br>Place:    **Courtroom 8, 19th Floor**<br>Judge:   **The Honorable William H. Alsup** |

**PRELIMINARY STATEMENT**

While Waymo respects the right of public access to court proceedings, public dissemination of the limited categories of information identified in Waymo's Motion to Seal would cause considerable harm to Waymo's and Google's competitive standing and to employee privacy. Waymo asks this Court to close the courtroom and seal the record when necessary to protect four categories of extraordinarily sensitive and valuable confidential business information: (1) Waymo's technical trade secrets and the specifics of how Uber uses them (only to the extent that the evidence/argument of use would reveal the trade secrets themselves); (2) the terms of Google M&A deals that are unrelated to this case and Waymo's collaboration with Lyft and discussions with Ford; (3) Waymo's non-public financial information, projections, and business plans; and (4) confidential information of Waymo's employees and former employees. There is a compelling interest in closing the courtroom during discussion of these categories of information, and Waymo will narrow its requests further when it has a better idea of the precise evidence that will be presented at trial. Waymo is also willing to work with Defendants to employ alternatives to sealing where possible so that trial is as open to the public as it can be while protecting Waymo's and Google's sensitive and valuable confidential information. And Waymo will discuss with the Media Coalition prompt availability of redacted trial transcripts.

The Media Coalition moved to intervene to oppose Waymo's Motion. Waymo does not oppose the Motion to Intervene. Thus, Waymo only addresses herein the merits of whether the courtroom should be closed for the categories discussed in Waymo's Motion. Although the Media Coalition's lengthy brief cites numerous cases and makes general statements and argument about the importance of the First Amendment and public access to court proceedings, the Media Coalition does not substantively address Waymo's specific arguments as to each of these four categories, let alone dispute Waymo's arguments. Indeed, the Media Coalition does not dispute that the right to public access to court proceedings is qualified and sealing is justified for some limited portions of the trial. That is all that Waymo seeks. Waymo does not seek to seal "large swaths of the case" as the Media Coalition contends; Waymo seeks a public trial and to only seal

the courtroom for the limited portions of the trial in which these discrete categories will be covered. The Court should grant Waymo's Motion.

**ARGUMENT**

**I.    THE RIGHT OF PUBLIC ACCESS IS NOT ABSOLUTE.**

It is undisputed that ***there is no absolute public right of access*** to court proceedings; that right is "qualified." (Dkt. 1919, at 7.) Indeed, the Media Coalition agrees on the very first page of its brief that "sealing could be justified for some limited portion of the trial" (*id.*, at 1), and agrees that a party seeking to seal court records must show a "compelling interest." (*Id.* at 7); *see also Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2005) (a party seeking to seal a judicial record "must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process.") (internal citations and quotation marks omitted). Waymo seeks to seal the courtroom for only a limited portion of the trial and met its burden of showing a "compelling interest" to do so. Mindful of the ***qualified*** right of public access to court proceedings, Waymo will not seek to close the courtroom for "large swaths of the trial" as the Media Coalition suggests. (Dkt. 1919, at 5.) Waymo only seeks to close the courtroom for the limited portion of the trial when evidence or argument is presented on four narrow issues: (1) the details of Waymo's trade secrets (and only to the extent the discussion would reveal the trade secrets themselves); (2) the terms of Google's unrelated M&A deals and Waymo's collaboration with Lyft and discussions with Ford; (3) Waymo's non-public financial information, projections, and business plans; and (4) confidential information relating to Waymo's employees and former employees.

**II.   WAYMO WILL NARROW ITS REQUEST PRIOR TO TRIAL.**

As Waymo indicated in its Motion, Waymo does not know what the full scope of evidence will be at trial or what Defendants intend to introduce. Indeed, since Waymo filed its Motion, the parties took 30 depositions (and three fact depositions remain) and Defendants, Stroz, and Diligenced Employees continued to produce documents implicated by the Federal Circuit order, including the 1.5 million-document Stroz Relativity database. The Court granted Waymo the opportunity to seek leave to amend its trade secret claims, and to submit supplemental expert

1  reports, witness lists, and exhibit lists, and indicated that it may give Defendants the opportunity to
2  take additional discovery on new trade secret claims. (Dkt. 1954; Dkt. 1965 - 10/3/17 Hearing Tr.,
3  42:15-19.) Thus, the evidence that will be presented at trial is still in flux. Accordingly, in its
4  Motion, Waymo made an effort to identify examples of the trial exhibits that relate to these
5  categories, but explained that it cannot specify at this time the precise evidence that should be
6  shielded from disclosure in open court, or the evidence or testimony that would fall within those
7  categories. Once the parties have met and conferred regarding the parties' disclosures and
8  objections and obtained further rulings from the Court that will define the scope of the evidence
9  that will be presented at trial, Waymo will supplement this motion with a specific and narrowly
10 tailored list of evidence that should not be heard in open court. Waymo will only ask to close the
11 courtroom where absolutely necessary.

12    Even in the time since Waymo filed its Motion, the scope of what needs to be sealed
13 narrowed based on Court rulings. Waymo seeks to seal portions of the trial when its employees'
14 specific salaries and bonuses are discussed. Since the Court precluded Uber from introducing the
15 bonus theory (Dkt. 1885), it is less likely that such information will be introduced. If the parties
16 do not introduce it, there will be no need to close the courtroom for such evidence.

### III.  THE COURT SHOULD CLOSE THE COURTROOM DURING DISCUSSIONS OF WAYMO'S TRADE SECRETS AT ISSUE IN THIS CASE.

19    Waymo seeks to close the courtroom when the *details* of the trade secrets at issue are
20 discussed and *only* where the discussion would reveal the trade secrets themselves. This is consistent
21 with the Court's practice for prior hearings during which Waymo's trade secrets were discussed.
22 Discussing Waymo's trade secrets in open court would destroy their secrecy and undermine their very
23 status as trade secrets. This would leave Waymo with no remedy for misappropriation of its trade
24 secrets. Indeed, it is nonsensical that both Federal law and California law would create a civil cause
25 of action for misappropriation of trade secrets, but if a party seeks relief for violation of those statutes,
26 that party loses its trade secrets. Such an outcome would make the laws meaningless. The Media
27 Coalition does not address this argument. Rather, it admits that "the need to disclose in court the
28

substance of an actual trade secret can, in appropriate circumstances, justify a limited closure." (Dkt. 1919, at 9.) That is all that Waymo seeks.

The Media Coalition argues that the trial will "address issues of significant and legitimate public concern" due to the "nature of the claims at issue, affecting the future of an industry and technology capable of revolutionizing how humans travel by car." (Dkt. 1919, at 1.) The Media Coalition, however, does not explain how public access to the trade secrets underlying the technology of autonomous driving relates to the public's interest in how humans travel by car. If anything, giving the public full access to trade secrets in this industry could stifle advancement and discourage investment because industry players' work will not be protected.

The Media Coalition also incorrectly argues that Waymo is "[i]nvoking the talismanic term 'trade secrets'" to justify closing the courtroom any time information Waymo claims to be a trade secret is discussed. (Dtk. 1919, at 9.) The Media Coalition asserts that what Waymo claims to be a trade secret is "broad" and "undefined." (*Id.*) Not so. The portion of Waymo's Motion regarding trade secrets is specifically directed at the trade secrets Waymo accuses Defendants of misappropriating. Those trade secrets were defined at the outset of the case, and those that will be presented at trial were defined in early August. (Dkt. 27-1; Dkt. 647.) Moreover, Waymo does not seek to close the courtroom for all evidence or argument relating to its trade secret misappropriation claim, but only that which discloses the trade secrets themselves. Ninth Circuit authority supports Waymo's request. *See, e.g., United States v. Zhang*, 590 F. App'x 663, 667 (9th Cir. 2014) (finding that closure of courtroom during a witness' testimony about the contents of the very documents that the government alleged to contain trade secrets was necessary to protect Marvell's trade secrets); *see also Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166-67 (3d Cir. 1993) (stating that "[d]ocuments containing trade secrets or other confidential business information may be protected from disclosure" and ordering district court to keep documents containing trade secrets under seal); *Woven Elecs. Corp. v. Advance Grp., Inc.*, Nos. 89-1580, 98-1588, 1991 WL 54118, a t*6 (4th Cir. May 6, 1991) (order closing courtroom where trade secrets were involved would have been proper).

The Media Coalition's cited cases are distinguishable from the present case because no case that it cites on this issue is a trade secret misappropriation case. *Huminski v. Corsones*, 396 F.3d 53,

58 (2d Cir. 2005) (critic of justice system had right of access to court proceedings even though not a party to them); *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 664 (8th Cir. 1983) (District Court was within its discretion in sealing exhibits that were potential trade secrets in contempt proceedings against attorney); *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) (in shareholder derivatives suit, court held that Special Litigation Report should be unsealed because, *inter alia*, it does not contain trade secrets); *Main & Assocs., Inc. v. Blue Cross & Blue Shield of Alabama*, No. 2:10-CV-326-MEF, 2010 WL 2025375, at *2 (M.D. Ala. May 20, 2010 (in case alleging tort with respect to insurance coverage, court ordered party to provide more information regarding why certain exhibits should be filed under seal); *Hill Holiday Connors Cosmopulos, Inc. v. Greenfield*, No. 6:08-cv-03980-GRA, 2010 WL 890067, at *4 (D. S.C. Mar. 8, 2010) (documents at issue were not claimed to be trade secrets, and party failed to articulate a specific need to protect each document); *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, Nos. 2:05-v-302, 2:05-ccv-304, 2007 WL 922255, at *6 (D. Vt. Mar. 23, 2007) (in action seeking to strike down greenhouse gas emissions standards, parties were asked to submit portions of judicial documents that they claimed contained trade secrets, for *in camera* review). Thus, the Media Coalition's cited cases do not address the situation where, as here, a plaintiff asserts trade secret misappropriation and the parties must necessarily discuss the trade secrets to prove their claims or defenses. **Not one** of the Media Coalition's cases holds that in a trade secret misappropriation case, the right to public access to court proceedings requires public disclosure of trade secrets. And again, the Media Coalition agrees that limited closure to protect trade secrets is appropriate. (Dkt. 1919, at 9.) As the court in *Iowa Freedom of Information Council,* cited by the Media Coalition, recognized "[t]rade secrets are a peculiar kind of property. Their only value consists in their being kept private. If they are disclosed or revealed, they are destroyed." 724 F.2d at 662. Denying Waymo's motion would destroy Waymo's trade secrets.

The Media Coalition also notes that the Court previously "expressed skepticism" at the need for secrecy asserted by the parties (and third parties) to this action." (Dkt. 1919, at 3.) But, the Court properly closed the courtroom in many instances and the Media Coalition does not identify any harm caused by the Court's practices in this case. Further, the Media Coalition points to an example of

01980-00104/9621133.2                                -5-                              CASE NO. 3:17-cv-00939-WHA
WAYMO'S RESPONSE TO MEDIA COALITION'S MOTION TO INTERVENE

when **Uber** sought to seal the courtroom, and the Court "expressed skepticism." (*Id.*)  The Court has appropriately closed the courtroom to protect Waymo's trade secrets and should do the same at trial.

The Media Coalition argues that the parties should find alternative ways to discuss the protected trade secrets. (Dkt. 1919, at 14.)  Waymo is willing to work with Defendants and the Court to try to do so.  For example, witness examinations can be done with the portion of testimony that would disclose Waymo's trade secrets handled together, and the courtroom can be open for the remainder of the examination.  Since Waymo only seeks to close the courtroom when absolutely necessary to protect its trade secrets, Waymo will meet and confer with Defendants to ensure that the public has access to as much of the trial as possible.

## IV. THERE IS A COMPELLING INTEREST TO CLOSE THE COURTROOM FOR DISCUSSIONS OF NON-PUBLIC BUSINESS INFORMATION.

Waymo seeks to close the courtroom for discussion of specific terms of Google and Waymo agreements, and internal discussions relating to those terms, and for non-public financial data, projections, and business plans.  As set forth in Waymo's Motion, there is a compelling interest in maintaining the confidentiality of this information, and ample authority supporting closing the courtroom to maintain such confidentiality. *See Elec. Arts, Inc. v, U.S. Dist. Ct.*, 298 Fed. Appx. 568, 569-70 (9th Cir. 2008) (ordering sealing of exhibit containing pricing terms, royalty rates, and guaranteed minimum payment terms in licensing agreement); *Oracle Am., Inc. v. Google Inc.*, No. 10-cv-03561-WHA (DMR), 2015 WL 7775243, at *2 (N.D. Cal. Dec. 3, 2015) (granting motion to seal "sensitive non-public financial data"); *St. Alphonsus Med. Ctr. Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, Nos. 1:12-CV-00560-BLW, 1:13-CV-00116-BLW, 2013 WL 5883736, at *1 (D. Idaho Oct. 18, 2013) (requests for sealing testimony relating to sensitive negotiation strategy, confidential financial projections, and personal compensation information were justified); *Flexible Benefits Council v. Feldman*, No. 1:08cv371 (JCC), 2008 WL 4924711, at *1 (E.D. Va. Nov. 13, 2008) (granting motion to seal party's sensitive financial information, including 15 years of revenue data and historic data on lobbying, promotion, and website expenses because such information is normally unavailable to the public).  Indeed, this Court recognized that at least some of this information is confidential and needs to be protected.  (*See* Dkt. 832, at 3) (allowing production of "commercially sensitive" documents

relating to Lyft deal "on an outside attorneys' eyes only basis" to protect third party confidentiality). Disclosure of Google and Waymo's "sensitive information in [a] highly competitive field… could have a devastating financial impact on [Waymo and Google] if revealed." *St. Alphonsus*, 2013 WL 5883736, at *1 (holding requests to seal testimony relating to sensitive negotiation strategy, confidential financial projections, and personal compensation information were justified).

The Media Coalition does not dispute that there is authority for maintaining the confidentiality of non-public business agreements and financial information. Nor does the Media Coalition address the authority cited by Waymo. And, the cases the Media Coalition cites do not support its position. *See Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501 (1984) (court refused to close courtroom during *voir dire* in criminal rape case), *Oregonian Pub'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462 (9th Cir. 1990) (ordering plea agreement unsealed); *Union Oil Co v. Leavell*, 220 F.3d 562, 567-68 (7th Cir. 2000) (refusing to seal entire record of case pleadings).

The Media Coalition attacks Waymo's request by arguing that it is "conclusory and speculative." (Dkt. 1919, at 12-13.) The Media Coalition complains that the two declarations submitted by Waymo describe only "potential" harms. (*Id.*) The Media Coalition, however, does not cite any authority that establishes that Waymo's declarations are inadequate to support closing the courtroom. Google's Director of Corporate Development Anil Patel and Waymo's Head of Finance and Business Systems Gerard Dwyer testified about the specific risks of public disclosure of these issues. The declarations establish the compelling interest in closing the courtroom for these categories of information. The Court should close the courtroom for argument or evidence regarding the terms of Google M&A deals, Waymo's collaboration with Lyft and negotiations with Ford, and Waymo's non-public financial information, projections, and business plans.

## V. THERE IS A COMPELLING INTEREST IN CLOSING THE COURTROOM FOR DISCUSSION OF EMPLOYEE COMPENSATION AND INVESTIGATIONS.

Lastly, Waymo seeks to close the courtroom when there is discussion of employee compensation and bonus payments other than Anthony Levandowski's, and investigations into employees other than Levandowski. Waymo seeks to protect the privacy interests of its employees and former employees. *Painting Indus. Of Hawaii Mkt. Recovery Fund v. U.S. Dep't of Air Force*, 26

01980-00104/9621133.2
-7-
CASE NO. 3:17-cv-00939-WHA
WAYMO'S RESPONSE TO MEDIA COALITION'S MOTION TO INTERVENE

1  F.3d 1479, 1483-84 (9th Cir. 1994) (finding significant privacy interests in particularized information
2  about wages).  Indeed, Judge Corley previously agreed that identities of Waymo employees who were
3  investigated should not be made public.  (Dkt. 1241, 8/31/17 Hr'g. Tr., at 84:2-85:1.)  Again, the
4  Media Coalition does not address the merits of Waymo's arguments, Waymo's case law, or Judge
5  Corley's prior statements on this issue.

6       The Media Coalition argues that reputational concerns are not justification for closure,
7  implying that Waymo seeks to close the courtroom to protect Waymo from embarrassment.  This is
8  incorrect; Waymo does not claim protecting its own reputation as a basis for closing the courtroom.
9  Rather, disclosing information relating to compensation and bonus information of other employees
10 would breach *the other employees' right of privacy*, have the potential to negatively impact employee
11 morale, and potentially cause Waymo financial harm because it will negatively impact Waymo's
12 bargaining power in compensation negotiations with other employees. (Dkt. 1822-2 - Dwyer Dec., ¶
13 12.)  Further, information relating to internal investigations of employees should not be disclosed
14 because, in many instances, the investigated employees did not know that they were investigated, and
15 disclosure could have a negative impact on employee morale.  (*Id.*, ¶ 13.)

16      As noted above, it is much less likely that employee compensation and bonus information will
17 be introduced since Uber is precluded from introducing the bonus theory.  (Dkt. 1885.)  Waymo
18 expects that the parties can come up with a way to protect other employees' privacy while keeping the
19 courtroom open, and Waymo will meet and confer with Defendants to come up with a way to do so.
20 For example, the parties could redact from exhibits the names of other employees where their names
21 would reveal their compensation or whether they have been investigated.  But, if the parties cannot
22 agree on an alternative procedure for dealing with such evidence or argument, then Waymo will
23 request that the courtroom be closed when other employees' compensation or bonus information is
24 discussed, and when the identities of other employees who have been investigated is discussed.

25 **VI.**    **WAYMO IS NOT OPPOSED TO A PROMPTLY REDACTED PUBLIC
26        TRANSCRIPT.**

27      The Media Coalition asks that, if the courtroom is closed, a redacted trial transcript be
28 promptly made available, withholding only the properly protected testimony.  (Dkt. 1919, at 15.)

1  Waymo is happy to discuss with the Media Coalition and Defendants a procedure for prompt

2  availability of a redacted public version of the trial transcript.

3  **CONCLUSION**

4  For the foregoing reasons, the Court should grant Waymo's Motion to Close the Courtroom.

5  Waymo will supplement its Motion to identify specific, narrowly-tailored evidence and argument

6  within these categories that should be kept under seal.

7

8  DATED:  October 16, 2017         QUINN EMANUEL URQUHART & SULLIVAN, LLP

9

10           By  */s/ Charles K. Verhoeven*
             Charles K. Verhoeven
11           Attorneys for WAYMO LLC