QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:      (415) 875-6600
Facsimile:       (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, <br><br> Plaintiff, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, <br><br> Defendants. | CASE NO. 3:17-cv-00939 <br><br> **PLAINTIFF WAYMO LLC'S MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 2006)** <br><br><br> Judge: The Honorable William Alsup <br><br> Trial Date: December 4, 2017 <br><br> **REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL** |

Uber's current planner software is highly material and affirmation of the Magistrate Judge's order preventing discovery to it, even though it is based on evidence directly attributable to the post-discovery avalanche of documents and software wrongly withheld by Uber and its agents, is reversible error. Based directly on information withheld with the Stroz report, Waymo has now discovered a major theft of key planner software, including an admission from Uber's chief AV software engineer that ███████████████████████████. Based on this new evidence, Waymo will be moving to amend its claims to add this newly discovered misappropriation. Waymo has more than good cause to inspect this portion of ███████████. The whole purpose of the continuance was to permit Waymo time to assess whether there has been additional misappropriation. The Magistrate Judge's refusal to permit Uber to confirm testimony directly attributable to the new evidence, when Uber did not even argue prejudice, is clear error.

### I. THE STROZ REPORT AND ENSUING DISCOVERY REVEALED AN UNANTICIPATED MISAPPROPRIATION OF TRADE SECRETS.

Last Friday, Waymo took the continued deposition of Don Burnette, a former Waymo employee and current technical lead for software autonomy at Uber. (Ex. 1 (Burnette 10/13 Tr.) at 184:23-185:2.). Mr. Burnette's testimony when shown the Stroz report and new documents revealed that his prior testimony about the origins of Otto's motion planning software was untrue and that he had taken key information from Waymo that he *admitted* ████████████████████████████ ███████████████████.

Burnette originally testified that Otto's approach to motion planning software was ████████████████████████████████. (Ex. 2 (Burnette 8/18 Tr.) at 54:24-56:21.) While Burnette described these ideas at high level, only in the last few weeks when it finally received the discovery to which it was entitled was Waymo able to see that the Burnette's *implementation* of this idea at Otto was taken from his Waymo work, and ████████████████████████ ████. Thus, at his renewed deposition, Burnette was shown a self-evaluation he completed while at Waymo, located via Stroz in his personal Gmail account (Ex. 3 (Burnette 1Q 2015 Evaluation)), in which he boasted about ████████████████████████ he had developed (*id.* 3 at 1-2), and cited to Waymo code implementing that idea, (*id.* at 2; *see also* Ex. 10 (Source Code for

1  Burnette's Planner).)  Burnette was also shown another evaluation from six months later in which he
2  claimed that ████████████████████████████████████████████████████████████
3  ████████████████████████████████ (Ex. 4 (Burnette 3Q 2015 Evaluation at 2)), and
4  further, that the innovative use of ████████████████████████████████████████
5  ████████████████████████████████ (*id.*).  While the main planner then in use
6  by Waymo did ████████████████████████████████, Burnette ████████████
7  ████████████████████████████████████████████████████ at Waymo.
8  (Ex. 1 at 316:22-317:25 (admitting same)).
9       Burnette initially testified that Otto arrived at its ████████████████
10 independently, based on substantial work after leaving Waymo: "we pretty much went to the drawing
11 board and said, How should we create this, based on what we've seen in the industry, what people are
12 -- people are working on? What's in the academic research?"  (Ex. 2 at 53:20-23.)  At the renewed
13 deposition last Friday, Burnette was confronted with handwritten notes found on his Otto laptop—but
14 not produced during fact discovery.  Instead, Waymo only gained access to these notes because they
15 were stored at Stroz.  The notes outline ████████████████████████ ████████
16 ████████████████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████████████
20 ████████████████████████████████  The notes—which Waymo had no access to before it began
21 receiving discovery from Stroz—were dated ***February 10***.  (Ex. 5.)  Burnette's last day at Waymo was
22 ***February 9***.  (Ex. 1 at 258:6-9.)  Burnette admitted that he created the notes outlining his
23 ████████████████████████████████████████████████████████████████████████
24 ████████████████████████████████████████████████████████████████████████

1 ▮
2 ▮[1]
3     Burnette was also confronted with two source code files on the forensic image of Burnette's
4 computer at Stroz, (Ex. 1 at 219:22-223:11) which were last modified February 12, *three days* after
5 Mr. Burnette left Waymo, (*id*. at 224:3-9.) Burnette testified that the files ▮
6 ▮
7 ▮ (*id*. at 220:10-223:4) and
8 "▮," (*id*. at 221:19-24.) He had no explanation of where this
9 source code came from or how it got onto his computer. (*Id.* at 223:12-224:2.) While Burnette has
10 now tried to recant that testimony in a declaration filed literally two days after his deposition, relevant
11 here is that included in those files is the ▮
12 ▮—one that that is highly confidential
13 *to Waymo*. Whether they are Burnette's attempted reproduction of Waymo source code or literal
14 copies does not detract from either Burnette's testimony that ▮
15 or their materiality to Waymo's claims.
16     Finally, Mr. Burnette admitted that ▮ the
17 ▮
18 ▮. (*Compare* Ex. 1 at 207:17-208:7, *with* Ex. 4 at
19 1-2 *and* Ex. 5 at 2.) In doing so, he confirmed other evidence recently disclosed to Waymo indicating
20 that ▮
21 ▮. (*See* Ex. 7 (5/10/16 email from an Otto team member to the
22 head of Uber's ATC attaching ▮); Ex. 8 at 3 (6/11/16
23 email from Uber employee indicating that ▮
24 ▮
25 ▮); Ex. 9 at 4 (▮

---

[1] Burnette similarly could provide no explanation of ▮
▮. (*See* Ex. 1 at 340:4-342:1;
*see also* Ex. 6 (Text chain between Burnette and Levandowski) at STROZ_R_000246745-47.)

-3-
WAYMO'S MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 2006)

████████████████████████████████████████

████████████ ").)

While Waymo has received an older version of certain Uber code, it has never received any version, much less a recent one, of Uber's planner source code. By its Motion, Waymo seeks to compel production of Uber's most recent planner source code. To the extent Waymo's previous words were unclear, Waymo now clarifies that this, and this alone, is what it seeks.[2]

## II. THE MAGISTRATE JUDGE'S ORDER FAILED TO PROPERLY BALANCE THE COMPETING INTERESTS.

The Magistrate Judge committed clear error in finding Waymo had failed to show good cause in light of the newly discovered Burnette evidence. The basis of the Court's finding regarding this evidence is clear error. In particular, the Court states that "there is no evidence that the files Waymo questioned Mr. Burnette about contain Waymo's trade secrets" and "Waymo has not shown that the [Burnette] notes contain Waymo's trade secrets." Dkt. 2006 at 3. Rule 26 does not allow courts to ban discovery based on a Magistrate Judge's opinion about the merits. That is not included in the Rule 26 balance of interests governing here. Moreover Waymo filed its update concerning the Burnette evidence one day after his deposition. It is unreasonable to expect Waymo to have taken that evidence and marshalled all the facts for a complete trade secret claim in less than 24 hours. There can be no serious dispute that under Rule 26 the Burnette documents and testimony are material. Uber has not argued, and the Court did not find, that there would be any prejudice to Uber in requiring a one day inspection of its motion planner code.

Moreover, one of the two reasons why this Court continued the case was to provide Waymo an adequate opportunity to review the new evidence withheld under the Stroz objections. And it was clear at the hearing that Waymo might potentially be asserting a new software-based claim given that the Stroz report referenced thousands of software files related to the Diligenced Employees (of which Burnette was one). Waymo's motion was based on exactly the good cause which this Court recognized may occur in setting up the new procedural schedule. In blocking this limited (less than

---

[2] To the extent the Magistrate Judge was relying on statements in Waymo's brief asking for all of Uber's code, that was in the context of updating Uber's current source code production. That is, Waymo was asking for no more than the current version of what Uber already produced; no more.

one day) inspection, Uber will have succeeded in its plan to delay the Stroz evidence as long as possible, and then fight as hard as it can to squeeze Waymo's ability to use that evidence.

In addressing the evidence submitted in Waymo's opening brief (the non-Burnette evidence) the Magistrate Judge found that Waymo's request was way overbroad and its reference to certain "snippets" of code was not sufficient, speculating that the evidence seemed to show the snippets were publicly disclosed. Again, the Court's opinion as to whether certain evidence ultimately is trade secret is improper, especially when the court does not have a full record before it. In any event, Waymo's opening motion concerned many issues in addition to the planner software issue. The motion was premised on the several references to retained source code by the Diligenced Employees, including—according to Stroz itself—***Google*** source code. *See* Mot. at 3 ("*See e.g.*, Stroz Report at 10 ("This information included source code, design files, laser files, engineering documents, and software related to Google self-driving cars.)…."). Waymo specifically raised Exhibit 37 (referenced by the Court) to the Stroz report as ***one example*** of Waymo source code, but the Stroz Report's repeated references to source code retention generally, including Google source code, more than justify Waymo's original request. *Id.* ("For example, Exhibit 37 to the Stroz Report...").

The Magistrate Judge found Waymo's request for all the current software based on the evidence submitted in Waymo's opening brief was not supported. While we disagree, in light of the fact that there remains only one week for discovery, Waymo is not asserting an objection beyond the Court's ruling on the specific motion planner software referenced by Burnette, above. Again, there has been no showing of burden in directing this specific code to be provided for inspection. It is highly material, as Waymo intends to move to amend its claims to add software misappropriation. The jury should have the full truth when assessing this claim.

As stated above, Waymo intends to file a motion to amend on Monday, October 23 to add trade secrets based on the evidence collected to date. This is an important issue, and accordingly, Waymo requests that if the Court is not inclined to grant this Motion, it alternately defer a ruling until is has reviewed Waymo's Motion to Amend and heard oral argument on this Motion.

DATED: October 17, 2017         QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC