

|  |  |
|---|---|
| Neel Chatterjee<br>+1 650 752 3256<br>NChatterjee@goodwinlaw.com | Goodwin Procter LLP<br>135 Commonwealth Drive<br>Menlo Park, CA 94025<br><br>goodwinlaw.com<br>+1 650 752 3100 |

October 17, 2017

**VIA ECF**

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
United States District Court for the Northern District of California
Phillip Burton United States Courthouse
450 Golden Gate Avenue
Courtroom F - 15th Floor
San Francisco, CA 94102

Re:  *Waymo LLC v. Uber Technologies, LLC, et al.* **(Case No. 3:17-cv-00939-WHA)**

Dear Magistrate Judge Corley:

Otto Trucking LLC submits this letter brief in opposition to Waymo's Motion to Compel Discovery, specifically as to "inspection of the two Levandowski laptops referred to in Angela Padilla's April 20, 2017 letter, or in the alternative Rule 30(b)(6) witnesses regarding same."  Dkt. 1994-3.  Otto Trucking will only be responding to Part I of Waymo's Motion, as the remainder pertains to other defendants and not Otto Trucking.

Waymo's request in Part I should be denied with respect to Otto Trucking.  *First*, Waymo's request is untimely and unrelated to Stroz-related discovery.  *Second*, as Otto Trucking has repeatedly told Waymo, it has never had possession of the two laptops in question and it has no information regarding their whereabouts.  *Third*, Waymo's alternative request for a deposition of Goodwin Procter – its opposing counsel in this matter – is way out of bounds.  Waymo's attempt to turn its opposing counsel into litigation witnesses should be rejected out of hand.

Respectfully submitted,

 */s/ Neel Chatterjee*

Neel Chatterjee
GOODWIN PROCTER LLP

*Attorneys for Defendant*
Otto Trucking LLC

cc:  Counsel of Record (via ECF); Special Master Cooper
    **UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1



Neel Chatterjee
+1 650 752 3256
NChatterjee@goodwinlaw.com

Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025

goodwinlaw.com
+1 650 752 3100

The discovery sought in Part I of Waymo's motion has nothing to do with the Stroz report – and, therefore, is untimely. Waymo claims to want more information about two laptops that Anthony Levandowski ███████████████████ Dkt. 1994-4 at p. 1. But, as the Court knows, the Stroz report is concerned exclusively with the period *before* Mr. Levandowski joined Uber. Waymo had ample time to conduct discovery from Uber and from Mr. Levandowski directly regarding Mr. Levandowski's work for Uber. The time for that discovery has passed. Enough is enough.

Waymo's attempt to pursue this untimely discovery from defendant Otto Trucking is doubly improper because, as Otto Trucking has repeatedly told Waymo, it never possessed the laptops in question. It has no discoverable information regarding the laptops, including how Mr. Levandowski may have used them while employed by Uber.

Finally, Waymo's request for a deposition of Goodwin Procter to answer questions about the laptops is simply out of bounds. Waymo wants to put its opposing counsel under oath to answer questions about the searches it ran on Mr. Levandowski's laptops, who ran those searches, communications with Uber about the searches, etc. This request violates multiple rules and principles, as set forth in more detail below, and should be rejected.

I.  **BACKGROUND FACTS**

On September 21, 2017, Uber produced an April 20, 2017 e-mail from Uber in-house counsel Angela Padilla to non-party Anthony Levandowski, stating, in relevant part: ███████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████ Dkt. 1994-5 (emphasis in original).

On October 2, 2017, Waymo took Ms. Padilla's deposition and asked her about the computers referenced in her April 20 e-mail. Ms. Padilla could not recall whether Uber received the computers referenced in her e-mail, but she testified that an accommodation was reached in which the laptops were searched – specifically, "a trusted third person would review the document – the computers, and if anything responsive in this litigation was found on them, that would be provided." (Dkt. 1994-6 at 63:17-65:10.) Waymo admits in its moving papers that Ms. Padilla referred to "Miles, Izzy, Neal [*sic*]" as the best source of information on the issue. (Dkt. 1994-3 at p.2.)

As the Court knows, the cutoff for Stroz-related discovery was October 6 at 5:00 p.m. Dkt. 1964 and 1971. Waymo raised no issue with Otto Trucking prior to that deadline. Waymo's pre-October 6 cutoff correspondence regarding discovery issues purportedly related to Stroz was directed solely at Uber:

> Waymo deposed Angela Padilla on October 2. It is Waymo's understanding from Ms. Padilla's April 20 letter to Mr. Levandowski, that Uber requested that Levandowski return the two laptops he used for work at Uber. It is unclear however from Ms. Padilla's testimony whether Uber

1

>       has those laptops. Waymo asked Uber to clarify whether it has the two
>       requested laptops and if Uber does, to make them available for inspection
>       immediately. If they are not in Uber's possession, Waymo asked for an
>       explanation of who does have possession of those laptops. Waymo has not
>       yet received a response. The contents of laptops in Mr. Levandowski's
>       laptops is of critical importance to this case.

Dkt. 1971 at p. 2.

On October 9, the parties conducted a meet and confer call with Special Master Cooper, regarding the issues identified in Waymo's October 6, 2017 letter. Dkt. 1971. Otto Trucking did not initially participate in the call, because the letter did not indicate there were any issues for Otto Trucking to address. Counsel for Otto Trucking ultimately joined the call at Mr. Cooper's request and, for the first time, was asked about Mr. Levandowski's computers. Declaration of Rachel M. Walsh ("Walsh Decl."), ¶ 2. Otto Trucking's counsel committed to investigate the issue and respond by the following day. Walsh Decl., ¶ 3. Otto Trucking's counsel responded by e-mail the following day, October 10, stating, in relevant part:

>       To answer Waymo's question, **Otto Trucking has never had possession
>       of Anthony Levandowski's laptop computers**. As counsel in the
>       arbitration, Goodwin Procter briefly took possession of a laptop that was
>       issued by Uber to Mr. Levandowski. That laptop was returned to Uber.
>       Any other devices owned by Mr. Levandowski to which he had custody or
>       control at that time are his own property, and are subject to his Fifth
>       Amendment rights, which his individual counsel has asserted broadly
>       throughout this case.[1]

Walsh Decl., ¶ 4, Ex. A (emphasis added).

Since the e-mail on October 10, Otto Trucking has consistently told Waymo that it never had and does not have Mr. Levandowski's laptop computers, nor does it have any knowledge of their whereabouts. Walsh Decl., ¶ 5.

As the Court may know, Goodwin Procter LLP ("Goodwin") represents Mr. Levandowski in pending arbitration proceedings initiated by Google, Inc. against Mr. Levandowski. At Uber's request, Mr. Levandowski provided the two computers to Goodwin for Goodwin to run certain searches provided by Uber. Goodwin ran those searches and provided results to Uber. Goodwin does not have the two computers or possess any images of their hard drives. Walsh Decl., ¶ 6.

In sum, Otto Trucking has no discoverable information about the two computers Mr. Levandowski used for Uber work. It never had possession of them and does not know where they may be today. Goodwin has no discoverable information, either. At Uber's direction, Mr. Levandowski provided those computers

---

[1] Waymo argues in its brief that "Defendants have not said that. . . Defendants cannot provide further information based on Mr. Levandowski's Fifth Amendment assertion." (Dkt. 1994 at p. 2, fn. 2.) This is false, as demonstrated by Mr. Boock's October 10 e-mail. Walsh Decl., Ex. A.

2

to Goodwin, his counsel, so Goodwin could run searches requested by Uber and provide the search results to Uber. Goodwin does not have possession of the laptops or images of their hard drives today.

## II. ARGUMENT

### A. Waymo's Request For More Discovery Regarding Computers That Mr. Levandowski Used For Uber Work Is Untimely.

Fact discovery in this matter closed on August 24. Dkt. 563. Due to the Federal Circuit opinion leading to the release of the Stroz Friedberg due diligence report ("Stroz Report"), the Court subsequently permitted "additional discovery *as a result of the production of the Stroz Report*" until 5:00 p.m. on October 6. Dkt. 1964 (emphasis added). The discovery Waymo now seeks has nothing to do with the Stroz Report. The Stroz Report is exclusively concerned with the work Mr. Levandowski did at Google and Ottomotto, *i.e.*, before he joined Uber. As Waymo admits in its motion, the discovery it is now seeking concerns computers Mr. Levandowski used *while* working at Uber.

Even if Waymo could credibly argue that the present discovery related to the Stroz Report, the deadline for seeking that discovery was October 6 at 5 p.m. Dkt. 1964. It is beyond dispute that Waymo delayed until after that deadline to pursue this discovery from Otto Trucking and Goodwin. Ms. Padilla's deposition was on October 2, and Waymo offers no excuse for delaying raising any issues with Otto Trucking or Goodwin until October 9.

In addition, Waymo knew about the existence of the two computers now at issue since well before September 21. The existence of the computers, and Goodwin's search of them, was disclosed in the report of Uber expert witness Kevin Faulkner, that was served on Waymo on September 7[2]. *See* Walsh Decl, ¶ 7, Ex. B. Waymo did not seek discovery from Uber or Mr. Levandowski regarding the computers following this disclosure. Waymo cannot mask its lack of diligence by claiming that further discovery of these computers is somehow Stroz-related.

### B. Otto Trucking Has No Discoverable Information Regarding The Two Laptops.

Waymo demands in its Motion that "Defendants should provide 30(b)(6) testimony about the laptops' whereabouts and chain of custody, and what was done with them in connection with this litigation." Dkt. 1994-3. Waymo improperly ignores Otto Trucking's repeated representations during meet and confers that it does not possess and never possessed the laptops, nor does it have any knowledge of the whereabouts of the laptops, their contents or any images of their contents. Otto Trucking does not have any witness it can put up for deposition to testify on the topics Waymo seeks.

To the extent this Motion implies that Otto Trucking has knowledge of the laptops because they belonged to Mr. Levandowski, the Court has already rejected this argument. As it noted in its July 12, 2017 Order, "Waymo's complaint that Mr. Levandowski knows where the material he downloaded from Waymo is located, and therefore Otto Trucking must know, is disingenuous. As Waymo is well aware, Mr. Levandowski has refused to cooperate with any discovery in this matter on Fifth Amendment grounds." Dkt. 881 at p. 3. Waymo cannot seek percipient knowledge where none exists, and the Motion should be denied.

---

[2] The Faulkner report is erroneous insofar as it indicated that Goodwin Procter provided search results to Stroz Friedberg. Goodwin only provided the search results to counsel for Uber.

### C. To The Extent Waymo Seeks A Deposition Of Goodwin Procter, The Court Lacks Jurisdiction To Order One Because Waymo Has Not Served Any Subpoena On Goodwin.

In its motion, Waymo does not explicitly ask for a 30(b)(6) deposition of its opposing counsel.  But during the meet and confer process that preceded the filing of Waymo's motion, Waymo explicitly asked for a deposition of Goodwin.  Goodwin is a non-party, and the Court cannot order a deposition of Goodwin for the simple reason that Waymo never subpoenaed Goodwin.

Federal Rule of Civil Procedure Nos. 30 and 45 require that a non-party may only be compelled to attend a deposition by subpoena.  Waymo has not subpoenaed Goodwin for a deposition, and it therefore has no legal basis to compel its deposition.  *See, e.g., Foremost Ins. Co. Grand Rapids, Michigan v. Enriquez*, No. 13CV1604-H (DHB), 2015 WL 11578510, at *3 (S.D. Cal. Mar. 27, 2015) (stating that because the attorney for defendant was a non-party, "[t]he only method to obtain documents or testimony from a non-party is through a Rule 45 subpoena.").  Other courts have denied motions to compel depositions absent a proper notice of deposition.  *See, e.g., Pegoraro v. Marrero*, 281 F.R.D. 122, 128 (S.D.N.Y.2012) ("[T]he Court has no authority to compel witnesses, including the parties, to attend any depositions which were neither noticed nor for which subpoenas were issued."); *Nuskey v. Lambright*, 251 F.R.D. 3, 12 (D.D.C.2008) (denying motion to compel deposition where movant had not served Rule 30(b)(1) notice); *Wolk v. Seminole County*, No. 6:05–cv–1722–Orl18KRS, 2007 WL 328685, at *1 n. 1 (M.D.Fla. Jan.31, 2007) ("Because no deposition had been noticed as of the date of filing of the motion, a motion to compel such a deposition is not ripe for consideration."); *see also Sithon Maritime Co. v. Mansion*, No. CIV. A. 96–2262–EEO, 1998 WL 182785, at *2 (D.Kan. Apr.10, 1998) ("The Federal Rules of Civil Procedure provide necessary boundaries and requirement for formal discovery. Parties must comply with such requirements in order to resort to the provisions of [Rule] 37.")

### D. Waymo's Attempt To Compel The Deposition Of Its Opposing Counsel Should Be Rejected For Other Reasons.

As the Court knows, taking the deposition of opposing counsel in litigation is ***strongly disfavored***.  There are only very limited circumstances where it is permitted, none of which are present here, as "there is a general presumption that lawyers should not be called to testify in cases where their client is a party because doing so compromises the standards of the legal profession."  *Fausto v. Credigy Servs. Corp.*, No. C 07-5658 JW (RS), 2008 WL 4793467, at *1 (N.D. Cal. Nov. 3, 2008), objections overruled, No. C 07-05658JW, 2008 WL 5158915 (N.D. Cal. Dec. 9, 2008) (citing *Hickman v. Taylor*, 329 U.S. 495, 513 (1947).  To obtain the deposition of its opposing counsel, Waymo would need to establish the following: "(1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged and (3) the information is crucial to the preparation of the case." *AWGI, LLC v. Duncan & Elbaz, Inc.,* 2010 WL 4595158 (N.D. Cal. Nov. 3, 2010) (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986).  Waymo's request fails all three *Shelton* requirements.

*First*, Waymo has not attempted to seek this information from other sources, nor has it made any showing that there are no other means of obtaining the information it seeks.  Waymo failed to pursue this discovery from Mr. Levandowski prior to the August 24, 2017 discovery cutoff.  In addition, Waymo failed to follow up on this issue after it was disclosed in the Faulkner report.  Waymo delayed completing its deposition of Angela Padilla, and when it finally did depose her, Waymo's counsel failed to ask appropriate follow-up questions regarding the searches Uber requested and other information it now

4

seeks. *See* Dkt. 1994-6 at 63:17-65:10. For this reason alone, the Court should deny Waymo's request for a 30(b)(6) deposition of Goodwin.

*Second*, the information Waymo demands through the deposition of Goodwin is irrelevant to the limited discovery permitted by the Court's Order regarding the Stroz materials, and it is privileged. Notwithstanding the lack of relevance of Goodwin's searches, any actions taken by Goodwin and any communications related to the laptops would fall under the attorney-client privilege and attorney work product. Waymo has not made any showing that the communications and actions for which it seeks to depose Goodwin would be nonprivileged. *See M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, No. C-08-02658-RMW, 2014 WL 819161, at *1 (N.D. Cal. Feb. 28, 2014) (prohibiting the deposition of Neel Chatterjee because any communications between Atty. Chatterjee and his client would be privileged, "so long as the communications sought legal advice and took place in confidence."); *see also Harris v. Koenig*, 2010 WL 4910261 (D. D.C. Dec. 2, 2010) (quashing the deposition of opposing counsel where the court saw no possible utility in the deposition that would not invade the work product protection). The court in *M.A. Mobile* explained that, even if the communications plaintiff sought through deposition were not privileged, "the court fails to see how any communications between Atty. Chatterjee and [his client] that are not covered by the attorney-client privilege would be relevant to plaintiff's case" and further criticized plaintiff's actions by stating, "[i]f plaintiffs wish to further probe the basis for claiming privilege, the appropriate means is to depose the client, not the attorney." *M.A. Mobile Ltd.*, 2014 WL 819161 at *1.

*Third*, Waymo makes no showing that this information is crucial to the preparation of its case. Waymo has engaged in vast discovery, deposing over 130 individuals, levying nearly 300 requests for production and hundreds of interrogatories over the past four months. Waymo has had ample opportunity to try to discover facts supporting its claim that Mr. Levandowski used Waymo's trade secrets during his work for Uber. The close of fact discovery occurred nearly two months ago and, to the extent discovery is still open, it is expressly limited to the Stroz report and related investigation. Waymo has not put forth a single fact to show that the actions taken by Goodwin in its capacity as counsel for Mr. Levandowski would prevent Waymo from preparing its case. In the few instances where courts have permitted the deposition of opposing litigation counsel, they have made clear that without the information, the party seeking the deposition would be unable to litigate its case after engaging in extensive attempts to recover the information requested. For example, in *AWGI*, the court permitted the limited deposition of opposing counsel on the topic of the location of his client, calling the subpoena of counsel "a last ditch effort…because [plaintiff's] numerous other efforts have all failed" and the subpoena was "not merely an easy-way-out approach to prosecuting the action." *AWGI*, 2010 WL 459158 at *2. The plaintiff in *AWGI* had engaged in extensive other measures to get the location of defendant, including hiring two private investigators, interviewing dozens of people, and enlisting federal law enforcement, all to no avail. *Id*. The court noted that without the location of the defendant, the plaintiffs would be unable to litigate their claim because defendants would not be served the complaint. *Id*. at 1. Waymo has not made any comparable showing here, nor could it possibly do so. Waymo's request to depose Goodwin must be denied.

### E.  The Information Sought by Waymo is Irrelevant and Redundant

Waymo spends most of the time in its moving papers explaining *what* it wants from the Motion and not *why it is relevant*. Pursuant to Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." The issues raised in Waymo's Motion do not comply with Rule 26 and are wholly irrelevant to any issue in

5

dispute in this case. It has already been disclosed that: (1) Otto Trucking never had possession of the laptops and does not now know where they are; (2) Goodwin had temporary possession of the laptops in its capacity as counsel for Mr. Levandowski, ran searches on them as requested by Uber, provided search results to Uber, and Uber produced the results in discovery; and (3) Goodwin no longer has the laptops or any images of them.

Waymo claims that the laptops "are of critical importance to the issue of whether Mr. Levandowski used Waymo trade secrets in his work for Ottomotto and Uber." (Dkt. 1994-3.) Yet the deposition discovery it seeks is not relevant, or it is privileged. For example, among other issues, Waymo seeks testimony on the following: whether Defendants know the whereabouts of the Levandowski laptops (there is no pending discovery on that issue, and Otto Trucking already responded that it did not); if they do, where the laptops are (Otto Trucking does not know); who Goodwin got the laptops from and gave them to (irrelevant); the search terms (provided by Uber); whether Uber directed Goodwin's searches and for what purpose (again, irrelevant, but Waymo knows from the Padilla deposition that Uber wanted the laptops searched for compliance with the Court's Orders); whether Goodwin provided the search results to Uber (again, irrelevant, but this was also disclosed in Ms. Padilla's deposition); whether Uber produced the search results to Waymo (Goodwin cannot testify to that); and whether the laptops contain any downloaded materials responsive to Court Order (Goodwin provided results to Uber).

Waymo does not even attempt to show relevance or justify the scope of its requests, most of which were addressed in prior discovery or by counsel's disclosures during the meet and confer. Waymo has no legal basis to conduct this additional discovery or take the requested 30(b)(6) deposition, and the Motion should be denied.

### F. Goodwin is Obligated to Honor Mr. Levandowski's Fifth Amendment Rights

Waymo's Motion is an attempt to circumvent Mr. Levandowski's Fifth Amendment protections, and should be denied. As already explained above, Goodwin represents Mr. Levandowski as counsel in the separate arbitration matter involving his prior employment at Google.

It is beyond dispute that Mr. Levandowski has the right to assert the Fifth Amendment privilege. *Quinn v. United States*, 349 U.S. 155, 161 (1955) ("The privilege against self-incrimination is a right that was hard[-]earned by our forefathers. The reasons for its inclusion in the Constitution – and the necessities for its preservation – are to be found in the lessons of history."). The Fifth Amendment prohibits state-compelled action that might require Mr. Levandowski to testify or produce documents that incriminate himself as "any compulsory discovery by extorting the party's oath . . . to convict him of crime . . . is contrary to the principles of a free government . . . . It may suit the purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom." *Malloy v. Hogan*, 378 U.S. 1, 9 n.7 (1964); *see also United States v. Bright*, 596 F.3d 683, 692 (9th Cir. 2010) ("The Fifth Amendment grants persons the privilege not to provide the State with [self-incriminatory] evidence of a testimonial or communicative nature." (quotation marks omitted and alteration in original)). Goodwin, as Mr. Levandowski's counsel, would be obligated to protect Mr. Levandowski's Fifth Amendment rights in any deposition. *See, e.g., Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977) (noting that "government cannot penalize assertion of the constitutional privilege against compelled self-incrimination by imposing sanctions to compel testimony which has not been immunized"); *Malloy*, 378 U.S. at 8 (stating that the Fifth Amendment guarantees "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence").

Goodwin is obligated to honor Mr. Levandowski's Fifth Amendment invocation and cannot be compelled to testify in a manner that would violate those rights. When an individual is privileged against production of a record pursuant to the Fifth Amendment and transfers that record to his attorney for the purpose of obtaining legal advice, the attorney or agent possessing it is immune from compelled disclosure of the record. *See United States v. Sideman & Bancroft, LLP*, 704 F.3d 1197, 1201–02 (9th Cir. 2013) (noting that the Fifth Amendment protection against the compelled disclosure of records "extends to prevent an individual's attorney from being compelled to produce documents if that production would violate the individual's Fifth Amendment rights"); *see also Goldsmith v. Superior Court*, 152 Cal. App. 3d 76, 86–89 (1984) (vacating discovery order requiring defendant and attorney to produce incriminating weapon for inspection in response to discovery request); Cal. Bus. & Prof. Code § 6068(e) (stating it is the duty of every lawyer to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client"). "[W]here an individual transfers documents to his or her attorneys to obtain legal assistance . . . , those documents, 'if unobtainable by summons from the client, are unobtainable by summons directed to the attorney by reason of the attorney-client privilege.' Accordingly, [the attorney] does not have to produce the . . . records if doing so violates [the individual]'s Fifth Amendment rights." *Fisher v. United States*, 425 U.S. 391, 405 (1976). As Mr. Levandowski's counsel in the arbitration matter, Goodwin must protect Mr. Levandowski's Fifth Amendment rights and cannot be compelled to violate those rights. *See United States v. Judson*, 322 F.2d 460, 464 (9th Cir. 1963) (an attorney's function is "to raise all the just and meritorious defenses his client has . . . . The attorney and his client are so identical with respect to the function of the evidence and to the proceedings which call for its production that any distinction is mere sophistry.")

## III. CONCLUSION

Part I of Waymo's motion should be denied, at least as to Otto Trucking and Waymo's opposing litigation counsel, Goodwin Procter. Waymo cannot justify seeking further fact discovery on Mr. Levandowski's personal computers nearly two months after the discovery cutoff. Its attempt to shoehorn these issues into "Stroz discovery" is a false pretext being used to justify Waymo's lack of diligence in discovery. Waymo also lacks any legal (or even rational) basis to take the deposition of opposing counsel at Goodwin, falling well short of the high bar required to do so. Otto Trucking has no knowledge of the laptops at issue, and Goodwin does not know where they are. The inquiry should end there.

For these and the foregoing reasons, OT respectfully requests that the Court deny Waymo's Motion to Compel.



Neel Chatterjee
+1 650 752 3256
NChatterjee@goodwinlaw.com

Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025

goodwinlaw.com
+1 650 752 3100

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on October 17, 2017. I further certify that all participants in the case are registered CM/ECF users and that service of the redacted version of this discovery letter brief, including public and redacted attachments will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed this 17th day of October 2017.

                                              /s/ Neel Chatterjee
                                                Neel Chatterjee