# EXHIBIT A

Page 36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

---oOo---

WAYMO LLC,

    Plaintiff,

vs.                                    No. 3:17-cv-00939-WHA

UBER TECHNOLOGIES, INC.;

OTTOMOTTO LLC; OTTO TRUCKING, INC.,

    Defendants.

_____/

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF KEVIN FAULKNER

VOLUME II

SAN FRANCISCO, CALIFORNIA

THURSDAY, SEPTEMBER 28, 2017

REPORTED BY:

ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~

CSR LICENSE NO. 9830

JOB NO. 2714984

PAGES 36 - 235

Page 61

1  devices. But when I say "personal computers," I mean     09:38
2  Uber computers, for the most part.                       09:39
3       Q   I appreciate that.                              09:39
4           So I think -- does the term "Uber-issued        09:39
5  computers" work for us?                                  09:39
6       A   That works.                                     09:39
7       Q   Okay. So work computers issued by Uber,         09:39
8  including desktops and laptops?                          09:39
9       A   Yes.                                            09:39
10      Q   And I'm sorry if I missed it. Did you search    09:39
11 any personal computers, meaning, computers belonging     09:39
12 to the individuals not issued by Uber?                   09:39
13      A   Yes.                                            09:39
14      Q   What computers were those?                      09:39
15      A   The first ones that jump to mind are -- there   09:39
16 were some searches run on the personal computers of      09:39
17 Anthony Levandowski, and the results of that search      09:39
18 performed by his counsel provided to us.                 09:39
19          There was also a CrashPlan, which is a brand    09:39
20 of computer backup, of one of Mr. Levandowski's          09:39
21 personal computers which we identified on Uber's         09:39
22 systems. So we searched that data as well.               09:39
23          I'm trying to remember if there are any other   09:40
24 personal computers for other custodians. I would have    09:40
25 to refer back to my list to be sure. Nothing jumps to    09:40

```
                                                                  Page 198
 1    450K total, 450,000, roughly.                                 13:39
 2         Q    Yeah.                                               13:39
 3         A    So that may be an approximation of what ended       13:39
 4    up in the review platform.                                    13:39
 5         Q    Okay.  So possibly an approximation of how          13:39
 6    much ended up in the review platform is the roughly           13:39
 7    500,000 that we see at Exhibit 7; correct?                    13:39
 8         A    I believe so.                                       13:39
 9         Q    But we're not sure about that?                      13:39
10         A    I'm not completely sure, no.                        13:39
11         Q    Okay.  So regardless of the number, tell me         13:39
12    what happened once the documents went into the review         13:39
13    database.                                                     13:40
14              What were the next steps that your team took?       13:40
15         A    There was a team of contract reviewers.  I          13:40
16    think -- I believe they're from hired counsel, who             13:40
17    went through and reviewed documents in the review             13:40
18    database, looking for anything potentially relevant           13:40
19    and responsive.                                               13:40
20              There -- again, there were a lot of moving          13:40
21    pieces here.  And some of it was produced directly            13:40
22    without review.                                                13:40
23              Some of it was in a separate review database        13:40
24    which I think held e-mail which was made available for        13:40
25    Waymo and their counsel to review, you know, without          13:40
```

```
                                                              Page 199
 1    the -- you know, without the limitation.                  13:40
 2            And then there was the main review database       13:40
 3    we've been talking about which they reviewed.  Some       13:40
 4    files were marked as responsive and produced.  The        13:40
 5    other files that were marked nonresponsive were kept      13:40
 6    in the database and made available for review but not    13:41
 7    actually produced, I believe.                             13:41
 8        Q   What were the contract attorneys told to mark     13:41
 9    as responsive?                                            13:41
10        A   I don't know the -- all the details of the        13:41
11    kind of coding book or, you know, what they -- they       13:41
12    would and wouldn't mark as responsive.                    13:41
13            But either way, the whole set of data was         13:41
14    made available to Waymo and its counsel.                  13:41
15        Q   Do you know whether any of the contract           13:41
16    attorneys had any preexisting knowledge of LiDAR or       13:41
17    self-driving technology?                                  13:41
18        A   I don't.                                          13:41
19        Q   They weren't screened for knowledge of LiDAR      13:41
20    or self-driving technology; correct?                      13:41
21        A   I don't know.                                     13:41
22            But again, ultimately, it wasn't -- it didn't    13:41
23    seem to be a concern to me, for a couple of reasons.      13:41
24            One, anything that looked like LiDAR              13:41
25    technology was produced.  And ultimately, anything        13:42
```

1      CERTIFICATE OF REPORTER

2

3      I, ANDREA M. IGNACIO, hereby certify that the

4  witness in the foregoing deposition was by me duly
   sworn to tell the truth, the whole truth, and nothing
5  but the truth in the within-entitled cause;

6      That said deposition was taken in shorthand

7  by me, a disinterested person, at the time and place

8  therein stated, and that the testimony of the said
   witness was thereafter reduced to typewriting, by
9  computer, under my direction and supervision;

10     That before completion of the deposition,
   review of the transcript [ ] was [x] was not
11 requested.  If requested, any changes made by the

12 deponent (and provided to the reporter) during the

13 period allowed are appended hereto.

14     I further certify that I am not of counsel or

15 attorney for either or any of the parties to the said
   deposition, nor in any way interested in the event of
16 this cause, and that I am not related to any of the

17 parties thereto.

18 Dated:  September 29, 2017

19

20

21

22

23            <%sigature%>

24         ANDREA M. IGNACIO,

25     RPR, CRR, CCRR, CLR, CSR No. 9830