# EXHIBIT I

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4
 5   _____
 6   WAYMO LLC,                              )
 7              Plaintiff,                   )
 8        vs.                                ) Case No.
 9   UBER TECHNOLOGIES, INC.;                ) 17-cv-00939-WHA
10   OTTOMOTTO, LLC; OTTO TRUCKING LLC,      )
11              Defendants.                  )
12   _____)
13
14       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
15
16       VIDEOTAPED DEPOSITION OF ERIC FRIEDBERG
17                  New York, New York
18             Thursday, September 28, 2017
19                     Volume I
20
21   Reported by:
22   DANIELLE GRANT
23   Job No. 2714978
24
25   PAGES 1 - 304
```

Page 1

| | | |
|---|---|---|
| 1 | to know for the purposes of my -- doing my | 11:47:34 |
| 2 | investigation.  So that's why there's not a | 11:47:38 |
| 3 | lot of discussions about these things.  But | 11:47:41 |
| 4 | it appeared that, you know, Uber was trying | 11:47:43 |
| 5 | in my view to conduct a good faith | 11:47:52 |
| 6 | investigation, an independent investigation, | 11:47:56 |
| 7 | and get independent validation that all the | 11:47:58 |
| 8 | diligence employees were not bringing Google | 11:48:05 |
| 9 | confidential information or -- with them. | 11:48:13 |
| 10 | And wanted to get a sense of their litigation | 11:48:16 |
| 11 | exposure with respect to people moving from | 11:48:24 |
| 12 | Google to Ottomotto and then Uber.  And my | 11:48:30 |
| 13 | understanding, or assumption, was that Uber | 11:48:34 |
| 14 | was not going to proceed with the transaction | 11:48:39 |
| 15 | unless the individuals cooperated in the | 11:48:44 |
| 16 | venture, in the investigation. | 11:48:50 |
| 17 |     Q   So your testimony is you | 11:48:56 |
| 18 | believe that the diligence employees | 11:48:58 |
| 19 | cooperated in the process because Uber would | 11:49:02 |
| 20 | not have proceeded with the transaction | 11:49:05 |
| 21 | unless they did so; is that correct? | 11:49:07 |
| 22 |     MS. BLUNSCHI:  Object to the | 11:49:11 |
| 23 |     form.  He already said it's his | 11:49:11 |
| 24 |     speculation. | 11:49:15 |
| 25 |     MR. TAKASHIMA:  Objection. | 11:49:16 |

| | | |
|---|---|---|
| 1 | MR. TAKASHIMA: Objection to | 12:55:58 |
| 2 | form. | 12:56:00 |
| 3 | A    I don't know if I would put it | 12:56:07 |
| 4 | that they were different priorities.  I mean, | 12:56:08 |
| 5 | we had a very large task ahead of us, which | 12:56:11 |
| 6 | was to sort out and sort through the 35,000 | 12:56:15 |
| 7 | or so documents.  And that was very, very | 12:56:20 |
| 8 | labor intensive.  So I think if we had not | 12:56:23 |
| 9 | been asked to do the very deep forensics in | 12:56:28 |
| 10 | certain areas and to focus on, I think it was | 12:56:31 |
| 11 | really sort of the last access analysis, the | 12:56:35 |
| 12 | Shred Works analysis and other things, we | 12:56:39 |
| 13 | would have used that time to do further | 12:56:42 |
| 14 | document review.  But it's not really our | 12:56:47 |
| 15 | priority.  It's really for, you know, they | 12:56:53 |
| 16 | wanted to have some guidance as they were | 12:56:56 |
| 17 | moving towards that April date on the issues | 12:56:59 |
| 18 | subject to the interim reporting, so we | 12:57:02 |
| 19 | responded accordingly. | 12:57:05 |
| 20 | Q    Did you believe that the | 12:57:08 |
| 21 | clients were more interested in minimizing | 12:57:10 |
| 22 | the issues that you had identified than they | 12:57:13 |
| 23 | were in discovering new issues during the | 12:57:18 |
| 24 | pre-acquisition investigation? | 12:57:22 |
| 25 | A    Oh, no, not at all.  It wasn't | 12:57:23 |

| | | |
|---|---|---|
| 1 | that at all.  I think that, you know, the | 12:57:24 |
| 2 | issues that we raised were quite important, | 12:57:26 |
| 3 | and went to the heart of their issue -- the | 12:57:31 |
| 4 | heart of what they were asking us to | 12:57:34 |
| 5 | investigate.  And the things that they asked | 12:57:40 |
| 6 | us to do really helped them and us run to | 12:57:46 |
| 7 | ground, to a more granular level, some of | 12:57:55 |
| 8 | those issues which they thought that were | 12:57:59 |
| 9 | key.  But I would say, by the way, that those | 12:58:01 |
| 10 | things that they focused on were two of the | 12:58:04 |
| 11 | more central issues of the -- that were | 12:58:08 |
| 12 | surfaced by the investigation. | 12:58:10 |
| 13 |     Q    People on your team were | 12:58:13 |
| 14 | concerned that the interim reporting was | 12:58:14 |
| 15 | compromising, quote, integrity of your | 12:58:17 |
| 16 | review, weren't they? | 12:58:21 |
| 17 |         MS. BLUNSCHI:  Objection to | 12:58:23 |
| 18 |    form. | 12:58:23 |
| 19 |         MR. TAKASHIMA:  Objection to | 12:58:24 |
| 20 |    form. | 12:58:24 |
| 21 |     A    I've seen one e-mail regarding | 12:58:25 |
| 22 | that.  I completely disagree with that.  I | 12:58:25 |
| 23 | don't know why that was phrased that way.  I | 12:58:29 |
| 24 | had no concern about that, but I know Mary -- | 12:58:32 |
| 25 | you can see from my response in that e-mail, | 12:58:33 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1   don't know what he meant by that.                       03:57:01
2         Q    Was Mr. Gardner in any way                   03:57:09
3   trying to minimize the findings of this                 03:57:13
4   self-identified report to make it more likely           03:57:17
5   that the acquisition of Ottomotto by Uber               03:57:22
6   would go forward?                                       03:57:30
7              MS. BLUNSCHI:  Object to the                 03:57:32
8         form.                                             03:57:32
9         A    I have no idea what was in his               03:57:33
10  mind.                                                   03:57:35
11        Q    Did you ever -- I'm sorry,                   03:57:37
12  were you done with your response?                       03:57:38
13        A    Yeah.                                        03:57:40
14        Q    Did you ever get the sense                   03:57:40
15  that either Mr. Gardner or outside counsel              03:57:42
16  for Morrison and Foerster and O'Melvney were            03:57:46
17  trying to minimize or isolate things that you           03:57:53
18  were finding so that they wouldn't raise                03:57:58
19  alarms with Uber or Ottomotto?                          03:58:04
20        A    I found the exact opposite                   03:58:10
21  with respect to Uber and Ottomotto, that they           03:58:13
22  were interested in having a robust                      03:58:16
23  independent investigation.  The budget                  03:58:20
24  mushroomed as more and more documents were              03:58:24
25  found, and the documents were hard to handle,           03:58:29
```

Page 230

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | and they supported that investigation without | 03:58:32 |
| 2 | any real serious push-back.  So I didn't find | 03:58:39 |
| 3 | that to be the case.  I found that they were | 03:58:47 |
| 4 | supportive of a robust investigation, we | 03:58:50 |
| 5 | conducted a robust investigation, and I | 03:58:53 |
| 6 | didn't feel like they were looking for | 03:58:55 |
| 7 | predetermined results or answers. | 03:58:59 |
| 8 |     Q    If you go forward to the page | 03:59:10 |
| 9 | ending on Bates 314636. | 03:59:12 |
| 10 |     A    314636? | 03:59:14 |
| 11 |     Q    Correct. | 03:59:22 |
| 12 |     A    Yes. | 03:59:23 |
| 13 |     Q    The bottom of the page, there | 03:59:23 |
| 14 | is an e-mail from Eric Tate? | 03:59:24 |
| 15 |     A    Okay. | 03:59:35 |
| 16 |     Q    I want to look at the third | 03:59:35 |
| 17 | sentence beginning with "specifically."  He | 03:59:38 |
| 18 | says, "Specifically, as there is uncertainty | 03:59:41 |
| 19 | as to whether the last access activity was | 03:59:43 |
| 20 | user- or system-initiated, Stroz should just | 03:59:46 |
| 21 | academic AL if he initiated the access to | 03:59:51 |
| 22 | those files."  Do you see that? | 03:59:53 |
| 23 |     A    Yes. | 03:59:56 |
| 24 |     Q    Do you know if that | 03:59:57 |
| 25 | conversation with Mr. Levandowski ever | 03:59:58 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
                CERTIFICATE
STATE OF NEW YORK )
                  ) ss:
COUNTY OF RICHMOND)
```

I, DANIELLE GRANT, a Certified Shorthand Reporter, and Notary Public within and for the State of New York, do hereby certify:

That ERIC FRIEDBERG, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

In witness whereof, I have hereunto set my hand this 2nd day of October, 2017.

*[Signature: Danielle Grant]*

DANIELLE GRANT