# EXHIBIT 10

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# EXHIBIT 10

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN FRANCISCO DIVISION
 4
 5   WAYMO LLC,
 6        Plaintiff,
 7           vs.                    Case No.
 8   UBER TECHNOLOGIES, INC.;       17-cv-00939-WHA
 9   OTTOMOTTO, LLC; OTTO
10   TRUCKING LLC,
11        Defendants.
     _____
12
13      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15           VIDEOTAPED DEPOSITION OF PAUL FRENCH
16                 San Francisco, California
17                 Tuesday, October 3, 2017
18                        Volume I
19
20
21   REPORTED BY:
22   REBECCA L. ROMANO, RPR, CSR No. 12546
23   JOB NO. 2715705
24
25   PAGES 1 - 276
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MR. BAKER: Object to the form. | 03:31:35 |
| 2 | THE DEPONENT: I'm sorry, say that one |
| 3 | more time. |
| 4 | Q. (By Mr. Boock) Is it your opinion that |
| 5 | at this stage of the investigation, | 03:31:39 |
| 6 | Anthony Levandowski was not a focus of the |
| 7 | investigation? |
| 8 | A. I don't believe he was a focus. |
| 9 | Q. Okay. All right. Turning to |
| 10 | paragraphs 30 through 32 -- well, we'll go to 30, | 03:32:00 |
| 11 | but there it is -- that "On August 23rd, 2016, the |
| 12 | forensics team met with attorneys and other |
| 13 | investigators to discuss the ongoing investigation. |
| 14 | That same day, Mr. Pfyl created a tracking document |
| 15 | to coordinate the investigation entitled "Chauffeur | 03:32:19 |
| 16 | Departures Investigation." |
| 17 | And who were they -- who -- who was Waymo |
| 18 | looking at? What -- what employees were they |
| 19 | looking at at that point in the investigation? |
| 20 | A. I don't recall. | 03:32:41 |
| 21 | Q. Was it employees who were leaving Waymo |
| 22 | for Ottomotto? |
| 23 | A. I don't know. |
| 24 | Q. The next in order was 3008, you said? |
| 25 | MR. BAKER: Yes. | 03:33:15 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



```
 1     ████████████████████████████████        ████
       ████████
       
       ████████████████████████████
       
       ████████████████████████████████████
       
       ████████████████████████████████████      ████
       
       ██████████████████████████████████
       
       █████████████████████████████████
       
       ██████████████████████████  ██████████
       
       ████████████████████████████
       
10              So looking at this, would you agree that          03:35:13

11     investigation ████████████████████████
       ████████████████████████████████
       ████ ?

14        A.   Yes.

15        Q.   Would you agree that the focus of the              03:35:37

16     investigation was on Anthony Levandowski?

17             MR. BAKER:  Objection to form.

18             THE DEPONENT:  Well, to me, this appears

19     the focus was on him ████████████████████
       ████.                                                      03:35:49

21        Q.   (By Mr. Boock)  In terms of the --

22     there's discussion about the technology that

23     Anthony developed and built much of while still an

24     employee of Chauffeur.

25             It doesn't refer to ██████████████              03:35:59
```

Page 196

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | investigations, is it appropriate for outside | 04:37:58 |
| 2 | counsel to be providing facts to Waymo and Waymo | |
| 3 | asking outside counsel what the sources of those | |
| 4 | facts are? | |
| 5 |     A.  Absolutely.  I have seen it done many | 04:38:15 |
| 6 | times. | |
| 7 |     Q.  Well, is it -- does it appear that | |
| 8 | Waymo's conducting investigation or the | |
| 9 | Keker & Van Nest firm is conducting the | |
| 10 | investigation? | 04:38:27 |
| 11 |     A.  Waymo is conducting the investigation. | |
| 12 |     Q.  And when -- when you see that Mr. Gorman | |
| 13 | has undertaken investigative steps such as those | |
| 14 | identified in the email we have been discussing at | |
| 15 | page 86896 and Gary Brown doesn't even know where | 04:38:39 |
| 16 | the source of that information is coming from, you | |
| 17 | don't think that Keker is doing any of the | |
| 18 | investigation on its own? | |
| 19 |     A.  What I believe is Keker is getting access | |
| 20 | to information that Mr. Brown may not have access | 04:38:55 |
| 21 | to or may not even know about, because, you know, | |
| 22 | Mr. Gorman's at a higher-level investigation.  He | |
| 23 | sees the bigger picture of what -- of what Waymo | |
| 24 | needs as far as figuring out the fact pattern, and | |
| 25 | so it's not uncommon for the attorneys and the | 04:39:15 |

Page 221

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    legal folks to get access to documents and logs and    04:39:19
2    pass them down to other parts and other individuals
3    and other divisions.  Especially in a large
4    company, I have seen that on numerous occasions.
5        Q.   Well, then, based on this, would you          04:39:33
6    agree, then, that Mr. Gorman is telling the
7    investigators at Waymo what -- what happened with
8    Mr. Levandowski?
9        A.   No, not at all.  He's providing a log to
10   them and then asking them the question to, you         04:39:45
11   know, inspect this further, see what it means.
12       Q.   Well, and he says "isn't this
13   suspicious," doesn't he?
14       A.   Well, that's a question.  I mean, that's
15   not -- to me, that's not him imparting, like,          04:39:56
16   knowledge on someone.  It's like, you know, hey,
17   did you see that car speeding down the road --
18       Q.   Is it --
19       A.   -- is that suspicious?
20       Q.   Is it your testimony -- I'm sorry.  I'm       04:40:09
21   not -- I'm not reading it inaccurately.
22            Is it your testimony that when someone
23   writes "that's pretty suspicious, right?" that that
24   is not an inference that there might be some
25   suspicion attributed to that activity?                 04:40:20
```

Page 222

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  I, Rebecca L. Romano, a Certified Shorthand
2  Reporter of the State of California, do hereby
3  certify:
4  That the foregoing proceedings were taken
5  before me at the time and place herein set forth;
6  that any witnesses in the foregoing proceedings,
7  prior to testifying, were administered an oath;
8  that a record of the proceedings was made by me
9  using machine shorthand which was thereafter
10 transcribed under my direction; that the foregoing
11 transcript is true record of the testimony given.
12 Further, that if the foregoing pertains to the
13 original transcript of a deposition in a Federal
14 Case, before completion of the proceedings, review
15 of the transcript [ ] was [x] was not requested.
16 I further certify I am neither financially
17 interested in the action nor a relative or employee
18 of any attorney or any party to this action.
19 IN WITNESS WHEREOF, I have this date
20 subscribed my name.
21 Dated: October 4, 2017

_Rebecca L. Romano_

Rebecca L. Romano, RPR,
CSR. No 12546