# EXHIBIT 3

EXHIBIT 3

**Pages 1 - 121**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jacqueline Scott Corley, Judge

| | |
|---|---|
| WAYMO LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | **NO. C 17-00939 WHA(JCS)** |
| ) | |
| UBER TECHNOLOGIES, INC.; OTTO ) | |
| TRUCKING LLC; and OTTOMOTTO ) | |
| LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

San Francisco, California
Thursday, August 31, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

Special Master:
    Farella, Braun & Martel LLP
    235 Montgomery Street, Suite 1700
    San Francisco, CA  94104
    (415) 954-4400
    (415) 954-4480 (fax)
  **BY: JOHN LEE COOPER**

For Plaintiff Waymo LLC:
    Quinn Emanuel Urquhart & Sullivan, LLP
    51 Madison Avenue, 22nd Floor
    New York, NY  10010
    (212) 849-7000
    (212) 849-7100 (fax)
  **BY: JAMES E. BAKER**

Reported By:  Lydia Zinn, CSR No. 9223, FCRR, Official Reporter

1  what do you want me to do right now?
2          **MR. CHATTERJEE:**  I think getting some guidance from
3  you on some documents would be --
4          **THE COURT:**  Okay.  That might be helpful.
5          **MR. CHATTERJEE:**  -- would be helpful.
6          **THE COURT:**  But -- but -- but if Mr. Baker, because
7  he knows what's there, is thinking, *You know what?  This could*
8  *all be obviated, if you would agree not to use my showing you*
9  *this stuff to say that there's been a broader waiver*.
10         **MR. BAKER:**  Well, what I'm hearing is that they are
11 still wanting to challenge the scope of the waiver.  They're
12 saying that these other -- that the documents we produced
13 yesterday show that there was a broader investigation that they
14 want to rely on.
15     And our position -- and I think this was Your Honor's
16 Order -- is that we have not waived with respect to those
17 investigations.  We're not relying on them in this case, and
18 they're not relevant to this case.
19     But I think that's what they're really challenging, and
20 that's why they want to show you some of these documents.
21     But what I would suggest is that we go through the
22 redactions, as you have suggested.  And let's see if there's --
23 you know, on the theory that we're not going to effect a
24 broader waiver.  If there's additional things that we can
25 unredact --

1    But these are separate investigations.  I mean, obviously,
2 we're not investigating people that we didn't think were going
3 with Mr. Levandowski, but that doesn't mean that it not a
4 separate investigation, and outside of the waiver.
5    I mean, everyone that we were investigating, we thought,
6 you know, might have been going over, you know, with him.
7         **THE COURT:**  Right, but here's the rub, I think.  And
8 this is, I think, the difficulty of the line-drawing here.
9 You're investigating Mr. Levandowski to see if he took any
10 trade secrets with him.  And you're investigating, also,
11 because he took a whole bunch of people with him.  So obviously
12 what you're investigating is whether they, too, took trade
13 secrets together; whether they worked together to do that.
14    And maybe that you found that they didn't, but it's all
15 sort of coupled together.
16    You clearly -- of course, if you had found evidence from
17 these other people that pointed to or was relevant to
18 Mr. Levandowski, you would use it.  It's part of the same
19 investigation.
20    In other words, it's not tunnel vision that you're just
21 looking at Mr. Levandowski.
22    You look at who he was interacting with.  Who he, you
23 know -- to get there.  So --
24         **MR. BAKER:**  That's correct, Your Honor.  But the
25 point that I would make is that -- that in -- and I think this

```
 1  in this e-mail?
 2           THE COURT:  But not the first.  Not the one from the
 3  24th.  Well, the 24th at 12:32.  That one's fine.  That's
 4  totally separate.
 5      But the one beginning at 11:17 a.m., forward.
 6           MR. BAKER:  Okay.  I had read those as being
 7  connected.
 8           THE COURT:  Oh, let's see.
 9           MR. BAKER:  You're talking about locking down.
10           THE COURT:  But they're asking for his opinion on
11  whether to do that -- the investigation.  Right?
12           MR. BAKER:  Yeah, but it's -- it is -- well, it's the
13  same issue.  It's the same issue.
14           THE COURT:  You see, it's -- it's the same -- and I
15  know nobody knew this was going to happen, but in a way, it's
16  like you want to take him, and you want to say, *We just did* --
17  *we're only revealing this little part.  So any other part of*
18  *investigation that he was involved in, we don't have to*
19  *disclose*; but the problem is, in his head, how can you separate
20  that out?
21      Like, in a way, if you wanted it to be that linear, you
22  sort of had to not involve him in anything else; but of course,
23  that's not the reality of how things happen.
24           MR. BAKER:  Yeah.  I think -- sure.  I think the way
25  we were thinking about it, Your Honor, was that, you know, the
```

```
 1  waiver is based on this idea of a sword and a shield.  And we
 2  are not relying on investigation of these other folks, and
 3  using that as a sword.
 4           THE COURT:  In a way; but their point is -- I have no
 5  idea if this will bear out, or not, but their point is:  Maybe
 6  what it showed -- your investigation of the other people --
 7  actually cast doubt on what you claim your investigation of
 8  those people showed.  Right?
 9       And how you conducted it -- that's the problem.  Because
10  it was all conducted at the same time, it was really part of
11  the same investigation, trying to get -- really, you were
12  trying to answer one question.  What went to Otto, and then to
13  Uber?
14       It was the same question.  And you were looking at all of
15  these different people.  You see?  And so that's the danger, I
16  think.
17           MR. BAKER:  Understood.
18           THE COURT:  Yeah.  Okay.  But the first one -- fine,
19  but it's nothing.
20       So now I'm looking at 83668.  And I think these are
21  similar.  Oh, no, that's the one I just looked --
22           MR. BAKER:  Yeah.  I think that's the one I just did.
23           THE COURT:  The one I just looked at?  Okay.  No.
24  That's similar.
25           MR. BAKER:  Yeah.  I mean --
```

1  end, though -- it says, "With Regards, Kristinn."  And then
2  underneath that is a significant for Kevin Vosen.  So --
3         **THE COURT:**  Oh I see what you're saying.
4      Well, they may be forwarding, or whatever; but the
5  highlighted part comes right after the "With regards,
6  Kristinn."  So --
7         **MR. NARDINELLI:**  Yeah.  The highlighted portions were
8  authored by Gary Brown.
9         **THE COURT:**  Ah, better -- not better.  More directly
10 involved in the investigation, I should say.  So unredact that
11 one.
12     83696 is the same e-mail?
13        **MR. BAKER:**  Same e-mail.
14        **THE COURT:**  83710, Kevin wrote.  So, well, that's
15 Kevin talking about what he -- I mean, that's Gary talking
16 about what he was able to do, and unable to do.  Right?
17        **MR. BAKER:**  I think that's correct, Your Honor.
18        **THE COURT:**  Okay.  That should be disclosed.
19     See, I think to the extent that Mr. Brown and -- they were
20 involved in investigating the other employees, it just can't be
21 separated out.  That's my judgment, best judgment.  So that
22 would be the same on 83711.
23        **MR. BAKER:**  Okay.
24        **THE COURT:**  Yeah.  Same thing.
25     I do want to say you did raise a concern about employees

1  or is this something that the forensic review team did?  That's
2  sort of the line I'm drawing here.
3            **MR. NARDINELLI:**  This is something that the forensic
4  team did.
5            **THE COURT:**  Okay.
6            **MR. NARDINELLI:**  This is the output of their analysis
7  of that person's --
8            **THE COURT:**  Other people's computers.
9            **MR. NARDINELLI:**  Of that person's computer.
10           **THE COURT:**  Okay.  I'm going to overrule myself from
11 this morning, and order it to be produced.  Now I just have a
12 better understanding.  There.  That's -- so if they're doing
13 it -- the forensic team people are doing it -- then I think
14 it's -- can't really separate it out, but it's separate from
15 what the discovery team was doing.
16      It was so much easier before e-mail, because none of this
17 would have been shared with anyone.  It wouldn't have been
18 written down.
19      So this January 18th at 11:15 a.m. e-mail -- I don't know
20 who it's to.  It doesn't appear to be our -- Elizabeth, Mo,
21 Tom.  Who are they?
22           **MR. BAKER:**  That's right, Your Honor.  I believe that
23 is between -- well, Tom is certainly an attorney.  And it's
24 from Rachael Meny, who is an attorney at Keker.  I think this
25 was between counsel.

```
 1  that's something --
 2          MR. CHATTERJEE:  I think what we should do,
 3  Your Honor -- we'll review the transcripts.  If we have
 4  anything we want to put Under Seal, we'll contact you.
 5          THE COURT:  If it's agreed to.
 6          MR. CHATTERJEE:  We'll let the court reporter know.
 7          MR. NARDINELLI:  We're okay with that, you guys.
 8          THE COURT:  Don't collude on that.
 9          MR. NARDINELLI:  I'm more concerned about the e-mail
10  address.  Okay.
11          THE COURT:  Great.
12      (At 4:48 p.m. the proceedings were adjourned.)
13  I certify that the foregoing is a correct transcript from the
14  record of proceedings in the above-entitled matter.
15
16  /s/ Lydia Zinn
17  _____  September 1, 2017
    Signature of Court Reporter/Transcriber    Date
18  Lydia Zinn
```