# EXHIBIT 13

# EXHIBIT 13

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN FRANCISCO DIVISION
 4                          --oOo--
 5    WAYMO LLC,
 6                   Plaintiff,
                                          Case
 7    vs.                                 No. 3:17-cv-00939-WHA
 8    UBER TECHNOLOGIES, INC.;
      OTTOMOTTO LLC; OTTO TRUCKING LLC,
 9
                     Defendants.
10    _____/
11
12
13        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15       VIDEOTAPED DEPOSITION OF KRISTINN GUDJONSSON
16              VOLUME II (Pages 243 to 467)
17                FRIDAY, SEPTEMBER 8, 2017
18
19
20
21
22    Reported by:
23    Anrae Wimberley
24    CSR No. 7778
25    Job No.  2703751
      Pages 243 - 467
```

Page 243

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | this investigation -- | 11:27:57 |
| 2 | MR. BAKER: Objection to form. | 11:27:59 |
| 3 | BY MR. TAKASHIMA: | 11:27:59 |
| 4 | Q.   -- as of May 3rd, 2016? | 11:28:02 |
| 5 | MR. BAKER: Objection to form. | 11:28:02 |
| 6 | THE WITNESS: Sorry.  Could you repeat that | 11:28:03 |
| 7 | question. | 11:28:04 |
| 8 | BY MR. TAKASHIMA: | 11:28:04 |
| 9 | Q.   Sure. | 11:28:04 |
| 10 | In your view, was there any further work that | 11:28:11 |
| 11 | IR needed to do for this investigation as of May 3rd, | 11:28:15 |
| 12 | 2016? | 11:28:16 |
| 13 | A.   I was pretty confident that there were, yes. | 11:28:20 |
| 14 | Q.   And what work was that? | 11:28:24 |
| 15 | A.   Could you be more specific. | 11:28:27 |
| 16 | Q.   What other things did you think that IR | 11:28:31 |
| 17 | should be doing at this point? | 11:28:34 |
| 18 | A.   What other things?  I did not know.  I just | 11:28:37 |
| 19 | knew that there were more. | 11:28:39 |
| 20 | Q.   So you were pretty confident that there were | 11:28:41 |
| 21 | other things you should be doing, but you didn't know | 11:28:43 |
| 22 | what those were? | 11:28:45 |
| 23 | MR. BAKER: Objection to form. | 11:28:48 |
| 24 | THE WITNESS: At that point, I knew that there | 11:28:49 |
| 25 | were other things that we needed to take a look at, | 11:28:52 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   but I knew that other parts of the investigation was      11:28:54
 2   ongoing and we had to stand by.                           11:28:56
 3   BY MR. TAKASHIMA:
 4        Q.   So it was a matter of waiting for interface     11:28:59
 5   with other parts of the investigation?                    11:29:01
 6        A.   Yes.                                            11:29:04
 7        Q.   And what other parts of the investigation are   11:29:05
 8   you referring to?                                         11:29:06
 9        A.   That's on the legal side.  You would have to    11:29:10
10   ask them.                                                 11:29:11
11        Q.   Okay.  Do you have any idea what other parts    11:29:14
12   of the investigation you're referring to?                 11:29:16
13        A.   No.                                             11:29:17
14        Q.   Just some other investigation?                  11:29:20
15        A.   I just know that there was an investigation     11:29:22
16   ongoing.                                                  11:29:23
17        Q.   Why did you have to wait for them?              11:29:26
18        MR. BAKER:  Objection to form.                       11:29:29
19        THE WITNESS:  Because we were waiting for more       11:29:31
20   input.                                                    11:29:35
21   BY MR. TAKASHIMA:                                         11:29:35
22        Q.   What input were you waiting for?                11:29:38
23        A.   More requests.                                  11:29:40
24        Q.   Who would those requests have come from?  Do    11:29:51
25   you see what I'm trying to get at?                        11:29:54
```

| | | |
|---|---|---|
| 1 | MR. BAKER: Objection to form. | 11:29:55 |
| 2 | THE WITNESS: Are you looking for specific names | 11:29:57 |
| 3 | or roles or -- | 11:29:58 |
| 4 | BY MR. TAKASHIMA: | 11:29:58 |
| 5 | Q. Roles. | 11:29:59 |
| 6 | A. That would come from -- most likely | 11:30:07 |
| 7 | from -- it would most likely come from legal. | 11:30:12 |
| 8 | Q. So at this point, you were waiting for the | 11:30:14 |
| 9 | lawyers to tell you what else you needed to do for the | 11:30:17 |
| 10 | investigation -- | 11:30:18 |
| 11 | MR. BAKER: Objection to form. | 11:30:19 |
| 12 | BY MR. TAKASHIMA: | 11:30:19 |
| 13 | Q. -- is that correct? | 11:30:19 |
| 14 | A. At this point, I was waiting for further | 11:30:21 |
| 15 | instructions. | 11:30:23 |
| 16 | Q. Further instructions from legal specifically? | 11:30:25 |
| 17 | MR. BAKER: Objection to form. | 11:30:25 |
| 18 | THE WITNESS: It can come from multiple sides. | 11:30:29 |
| 19 | BY MR. TAKASHIMA: | 11:30:29 |
| 20 | Q. Okay. Is there anybody else you were waiting | 11:30:31 |
| 21 | on instructions from other than legal? | 11:30:33 |
| 22 | A. It could be from GI. | 11:30:35 |
| 23 | Q. But Ms. Bijnens says, "Nothing further from | 11:30:38 |
| 24 | the GI side at this point"; correct? | 11:30:40 |
| 25 | A. "At this point," yes, which does not mean at | 11:30:43 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | | |
|---|---|---|---|
| 1 | no further time in the future. | | 11:30:46 |
| 2 | Q. | Okay.  Could the instructions have come from | 11:30:48 |
| 3 | anybody else? | | 11:30:50 |
| 4 | A. | Chelsea. | 11:30:51 |
| 5 | Q. | Anybody else? | 11:30:52 |
| 6 | A. | Andrew Price. | 11:30:53 |
| 7 | Q. | Okay.  Mr. Price is an attorney; correct? | 11:30:56 |
| 8 | A. | Yes. | 11:30:56 |
| 9 | Q. | Anybody else? | 11:30:59 |
| 10 | A. | Probably not. | 11:31:00 |
| 11 | Q. | Just -- there are a few names at the top of | 11:31:06 |
| 12 | this e-mail chain. | | 11:31:08 |
| 13 | | We've already discussed Ms. Bijnens.  She's | 11:31:08 |
| 14 | in GI; correct? | | 11:31:10 |
| 15 | A. | She's in global investigations, yes. | 11:31:12 |
| 16 | Q. | And Ms. Bailey is -- was the HR VP? | 11:31:17 |
| 17 | A. | Yes. | 11:31:17 |
| 18 | Q. | Mr. Price is ethics counsel; correct? | 11:31:19 |
| 19 | A. | Yes. | 11:31:19 |
| 20 | Q. | And who is Jade Wagner? | 11:31:22 |
| 21 | A. | I'm actually not sure. | 11:31:24 |
| 22 | Q. | She's an attorney; correct? | 11:31:25 |
| 23 | A. | Probably. | 11:31:27 |
| 24 | Q. | To the best of -- do you have any reason to | 11:31:29 |
| 25 | think she's not an attorney? | | 11:31:31 |

Page 282

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1      A.   No.                                              13:27:54
 2      Q.   Or how many times he e-mailed you?               13:27:57
 3      A.   No.                                              13:27:57
 4      Q.   Do you recall ever speaking with Mr. Gorman,     13:28:02
 5   either in person or by phone or by videoconference?      13:28:06
 6      A.   Videoconference, I think, yes.                   13:28:08
 7      Q.   How many times did you speak with Mr. Gorman     13:28:10
 8   by videoconference?                                      13:28:11
 9      A.   I have absolutely no idea.                       13:28:14
10      Q.   Was it more than once?                           13:28:16
11      A.   Could have been.                                 13:28:17
12      Q.   Was it more than five times?                     13:28:19
13      A.   I don't know.                                    13:28:19
14      Q.   Was it more than twice?                          13:28:21
15      A.   Could have been.                                 13:28:22
16      Q.   Was it more than three times?                    13:28:24
17      A.   Not sure.                                        13:28:25
18      Q.   Somewhere between one and five times; is that    13:28:27
19   fair?                                                    13:28:30
20      MR. BAKER:  Objection to form.                        13:28:30
21      THE WITNESS:  I honestly couldn't tell.  Probably,    13:28:33
22   but I couldn't tell.
23   BY MR. TAKASHIMA:
24      Q.   At least once.                                   13:28:34
25      A.   At least once.                                   13:28:35
```

Page 335

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | | |
|---|---|---|---|
| 1 | Q. | Okay. When did you speak with Mr. Gorman? | 13:28:38 |
| 2 | A. | I don't remember. Probably around this time | 13:28:40 |
| 3 | frame. | | 13:28:40 |
| 4 | Q. | And who else was in that discussion? | 13:28:43 |
| 5 | A. | Gary Brown would have been. | 13:28:45 |
| 6 | Q. | Anybody else? | 13:28:46 |
| 7 | A. | Not sure. | 13:28:48 |
| 8 | Q. | Is it fair to say you don't recall anybody | 13:28:53 |
| 9 | else being part of that discussion? | | 13:28:55 |
| 10 | A. | There might have been, but I don't recall, | 13:28:58 |
| 11 | no. | | 13:28:58 |
| 12 | Q. | And what was the purpose of that discussion? | 13:29:02 |
| 13 | A. | Discussion of the investigation. | 13:29:05 |
| 14 | Q. | In as much detail as you can recall, what did | 13:29:07 |
| 15 | you discuss? | | 13:29:09 |
| 16 | A. | Status of the investigation. | 13:29:11 |
| 17 | Q. | And at the time you spoke, what was the | 13:29:13 |
| 18 | status of the investigation? | | 13:29:15 |
| 19 | A. | Depends on when we spoke. | 13:29:17 |
| 20 | Q. | Do you recall when you spoke? | 13:29:18 |
| 21 | A. | No. | 13:29:18 |
| 22 | Q. | So you don't recall what status of the | 13:29:22 |
| 23 | investigation you recounted to Mr. Gorman; is that | 13:29:26 |
| 24 | fair? | | |
| 25 | A. | No. | 13:29:27 |

```
 1      Q.   On that same spectrum of here's a substantive    13:41:54
 2   response versus, "Okay, I understand what you said to    13:41:56
 3   me," where was his response, to the best of your         13:42:00
 4   recollection?                                            13:42:00
 5      MR. BAKER:  Objection to form.                        13:42:01
 6      THE WITNESS:  I have to assume closer to the,         13:42:03
 7   "Okay.  Thank you."                                      13:42:04
 8   BY MR. TAKASHIMA:                                        13:42:04
 9      Q.   Now, the fourth name here is Rachael Meny;       13:42:09
10   correct?                                                 13:42:09
11      A.   Yes.                                             13:42:09
12      Q.   Do you recognize that name?                      13:42:11
13      A.   You asked me that a couple minutes ago.          13:42:14
14      Q.   I did.                                           13:42:14
15      A.   And I -- no, I don't remember.                   13:42:19
16      Q.   Do you recall ever communicating with Rachael    13:42:23
17   Meny?                                                    13:42:23
18      A.   I could have, but I don't remember.              13:42:26
19      Q.   Is it fair to say that, as you sit here, you     13:42:27
20   don't recall what her involvement was in the             13:42:30
21   departures investigation?                                13:42:31
22      A.   Not that I remember, no.                         13:42:32
23      Q.   Okay.  If you look at the third page.  It        13:42:52
24   should be marked 86954.                                  13:42:57
25      A.   54.  Okay.                                       13:42:59
```

Page 347

| | | |
|---|---|---|
| 1 | A. Yes. | 14:43:58 |
| 2 | Q. If you pull up Exhibit 2256 -- | 14:44:11 |
| 3 | A. Yes. | 14:44:11 |
| 4 | Q. Is that the document that would have been at | 14:44:13 |
| 5 | that link? | 14:44:15 |
| 6 | MR. BAKER: Objection to form. | 14:44:18 |
| 7 | THE WITNESS: I do not know all the Google IDs for | 14:44:22 |
| 8 | documents. It could be. | 14:44:26 |
| 9 | BY MR. TAKASHIMA: | 14:44:26 |
| 10 | Q. Do you recall who wrote the rough initial | 14:44:32 |
| 11 | investigation plan referenced in the meeting notes? | 14:44:35 |
| 12 | A. No. I can tell you it wasn't me. | 14:44:42 |
| 13 | Q. Do you know -- do you know whether you ever | 14:44:48 |
| 14 | knew who drafted the initial investigation plan? | 14:44:52 |
| 15 | A. I'm sure I knew. | 14:44:54 |
| 16 | Q. But you don't recall as you sit here today? | 14:44:57 |
| 17 | A. No. | 14:44:57 |
| 18 | Q. You did not ever examine Anthony | 14:45:24 |
| 19 | Levandowski's Workstation; is that correct? | 14:45:26 |
| 20 | A. Workstation, no. | 14:45:27 |
| 21 | Q. Did you ever discuss with Mr. Brown whether | 14:45:33 |
| 22 | either of you should investigate the Workstation? | 14:45:36 |
| 23 | A. I think we had that conversation, yes. | 14:45:41 |
| 24 | Q. What did the two of you say to each other in | 14:45:44 |
| 25 | that discussion? | 14:45:44 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | the page that follows. | 16:27:41 |
| 2 |     A.    Okay. | 16:27:42 |
| 3 |     Q.    Here Mr. Gorman says, in the last paragraph, | 16:27:49 |
| 4 | "FYI:  We're not . . . seeing any obvious signs of | 16:27:52 |
| 5 | trade secret theft in Google Drive activity.  That's | 16:27:56 |
| 6 | not surprising, as these engineers would have [known] | 16:27:59 |
| 7 | that their Google Drive activity is logged." | 16:28:02 |
| 8 |     Do you see that? | 16:28:03 |
| 9 |     A.    I can see that, yes. | 16:28:04 |
| 10 |     Q.    Did you ever talk to Mr. Gorman about whether | 16:28:07 |
| 11 | there were any signs of trade secret theft associated | 16:28:12 |
| 12 | with the investigations that were going on other than | 16:28:14 |
| 13 | through e-mails like this? | 16:28:16 |
| 14 |     MR. BAKER:  Objection to form. | 16:28:18 |
| 15 |     THE WITNESS:  No. | 16:28:21 |
| 16 | BY MR. CHATTERJEE: | 16:28:21 |
| 17 |     Q.    Do you have any understanding as to why | 16:28:23 |
| 18 | Mr. Gorman would be telling you that he's not seeing | 16:28:26 |
| 19 | any obvious signs of trade secret theft? | 16:28:30 |
| 20 |     MR. BAKER:  Same objection. | 16:28:31 |
| 21 |     THE WITNESS:  You would have to ask him. | 16:28:34 |
| 22 | BY MR. CHATTERJEE: | 16:28:34 |
| 23 |     Q.    And there's a reference in here to | 16:28:46 |
| 24 | "externally shared files." | 16:28:48 |
| 25 |     Do you see that? | 16:28:49 |

Page 448

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.   Yes. | 16:28:55 |
| 2 | Q.   And what were -- do you know what those | 16:28:57 |
| 3 | externally shared files are that he's referring to | 16:29:00 |
| 4 | there? | 16:29:01 |
| 5 | A.   I would assume -- and I'm assuming, which is | 16:29:03 |
| 6 | not something I should be doing -- that that would be | 16:29:06 |
| 7 | a Cloudlock export of files that were externally | 16:29:09 |
| 8 | shared. | 16:29:10 |
| 9 | Q.   If you look down lower on that string, | 16:29:12 |
| 10 | there's an e-mail from you dated 2:03 p.m. [sic]. | 16:29:16 |
| 11 | And it says, "So we have the list of | 16:29:18 |
| 12 | documents that were shared externally, but owned by | 16:29:22 |
| 13 | affected accounts listed -- as listed in the master | 16:29:25 |
| 14 | sheet." | 16:29:25 |
| 15 | A.   Yes, that is the document. | 16:29:27 |
| 16 | Q.   Is this the document that you were sharing | 16:29:29 |
| 17 | externally? | 16:29:30 |
| 18 | A.   So, yes, this is the document that we're | 16:29:32 |
| 19 | referring to.  This is the document that shows -- this | 16:29:38 |
| 20 | is what we use Cloudlock for.  It would list the | 16:29:42 |
| 21 | owners, which are the people that we're looking at. | 16:29:45 |
| 22 | And we would search for every document that they own | 16:29:49 |
| 23 | that is shared by account, that is non-Google account. | 16:29:53 |
| 24 | Q.   Do you know if this file exists today? | 16:29:58 |
| 25 | A.   I would assume so. | 16:30:00 |

Page 449

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1           FEDERAL CERTIFICATE OF DEPOSITION OFFICER
 2         I, ANRAE WIMBERLEY, CSR NO. 7778, do hereby
      declare:
 3
           That, prior to being examined, the witness named
 4    in the foregoing deposition was by me duly sworn
      pursuant to Section 30(f)(1) of the Federal Rules of
 5    Civil Procedure and the deposition is a true record of
      the testimony given by the witness;
 6
           That said deposition was taken down by me in
 7    shorthand at the time and place therein named and
      thereafter reduced to text under my direction;
 8
           -----    That the witness was requested to
 9    review the transcript and make any changes to the
      transcript as a result of that review pursuant to
10    Section 30(e) of the Federal Rules of Civil Procedure;
11         -----    No changes have been provided by the
      witness during the period allowed;
12
           -----    The changes made by the witness are
13    appended to the transcript;
14         --X---   No request was made that the transcript
      be reviewed pursuant to Section 30(e) of the Federal
15    Rules of Civil Procedure.
16         I further declare that I have no interest in the
      event of the action.
17
           I declare under penalty of perjury under the laws
18    of the United States of America that the foregoing is
      true and correct.
19
           WITNESS my hand this 9th day of September, 2017.
20
21
22                    [signature: Anrae Wimberley]
23
                      ANRAE WIMBERLEY
24                    CSR NO. 7778
25
```

Page 467