QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa J. Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for Waymo LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, | CASE NO. 3:17-cv-00939-WHA |
| Plaintiff, | **PLAINTIFF WAYMO'S RENEWED MOTION TO COMPEL UBER SOURCE CODE** |
| vs. | |
| UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................1

II.   WAYMO HAS A DEMONSTRATED NEED FOR THE MOTION PLANNER
      SOURCE CODE ..................................................................................................................1

## I. INTRODUCTION

As this Court is aware, on October 9, Waymo filed a motion to compel source code from Uber. (Dkt. 1977.) This Court denied the motion, deeming the request overbroad and holding that Waymo had not laid a concrete foundation for why it should be entitled to source code discovery. (Dkt. 2006.) Waymo appealed to Judge Alsup, while narrowing its request to only the source code for Uber's motion planning software. Judge Alsup denied this request, but in doing so, invited Waymo to raise this narrowed request as a new motion before this Court. (Dkt. 2026 at 2:13-21.)

Through this motion, Waymo hereby submits the narrowed request to this Court. Waymo also moves in advance of the Court's deadline to seek any additional discovery on Oct. 20. (Dkt. 1964.) As discussed below, there is a strong basis to believe that Uber's motion planning software embodies Waymo's trade secrets. Waymo is entitled to production of the motion planning source code in order to fully assess this question.

Waymo does not mean to try the Court's patience through this motion after its prior motion. At the time, Waymo sought to address any possible source code disputes for judicial resolution, given the imminent close of discovery. After the Burnette deposition on October 13 (discussed *infra*), it became clear Waymo's most crucial need was for the motion planning source code alluded to in that deposition. In an effort to get judicial resolution as soon as possible, Waymo elected to narrow its request in its Reply rather than bring a new narrowed motion. In accordance with Judge Alsup's directive, however, and with the greatest respect for this Court's busy docket, Waymo respectfully brings this narrowed motion seeking production of Uber's motion planning source code.

## II. WAYMO HAS A DEMONSTRATED NEED FOR THE MOTION PLANNER SOURCE CODE

As the Court is aware, on October 13, Waymo took the continued deposition of Don Burnette, a former Waymo employee and current technical lead for software autonomy at Uber. (Dkt. 2011-5 (Burnette 10/13 Tr.) at 184:23-185:2.) At this deposition, Waymo was able to question Burnette about newly-produced discovery from Stroz, which shed important light on the timing of Burnette's work at Otto and created a strong inference that this work entailed misappropriation of Waymo trade secrets.

|  |  |
|---|---|
| 1 | For example, at the renewed deposition on October 13, Burnette was confronted with |
| 2 | handwritten notes found on his laptop and stored at Stroz which outline ███████— |
| 3 | ████████████████████████████████████████████████████████████████████ |
| 4 | ████████████████████████████. (Dkt. 2011-9 (Burnette Notes).) He testified ███ |
| 5 | ████████████████████████████████████████████████████████████████████ |
| 6 | ████████████████████████████████████████████████████████████████████ |
| 7 | ██████████████████████████████████████████ The notes—which |
| 8 | Waymo had no access to before it began receiving discovery from Stroz—were dated **February 10**. |
| 9 | (Dkt. 2011-7.) Burnette's last day at Waymo was **February 9**. (Dkt. 2011-5 at 258:6-9.) Burnette |
| 10 | admitted that he created the notes outlining his ████████████████████████████ |
| 11 | ████████████████████████████████████████████████████████████████████ |
| 12 | ████████ (*id*. at 259:17-21; 396:23-397:6.) He also could not ████████████████ |
| 13 | ████████████████████████████. (*Id.* at 260:22-261:9; 263:16-264:11.) |
| 14 | There also is compelling evidence that ██████████ described in these notes reflect Waymo |
| 15 | trade secret information. Burnette had originally testified that Otto's approach to motion planning |
| 16 | software was █████████████████████████████ (Dkt. 2011-6 (Burnette 8/18 Tr.) at |
| 17 | 54:24-56:21) because Waymo's planner █████████████████████████████████████ |
| 18 | ████████████████████████████████████████████████████████████. But at |
| 19 | his renewed deposition, Burnette was shown a self-evaluation he completed while at Waymo, located |
| 20 | via Stroz in his personal Gmail account (Dkt. 2011-7 (Burnette 1Q 2015 Evaluation)), in which he |
| 21 | boasted about ████████████████████████████ he had developed (*id.* at 1-2) and cited |
| 22 | to Waymo code implementing that idea. (*Id.* at 2; *see also* Dkt. 2011-14 (Source Code for Burnette's |
| 23 | Planner).) Burnette had omitted at his first deposition that he had developed ████████████ |
| 24 | ████████████████████ while at Waymo. (Dkt. 2011-5 at 128:7-25 (████████).) Only in |
| 25 | the last few weeks, when Waymo finally received the discovery to which it was entitled, was Waymo |
| 26 | able to see that Burnette's ████████████████████████████████████████████████ |
| 27 | ████████████████████████████████████████. |
| 28 |  |



1    Burnette was also shown another evaluation from six months later in which he claimed that he

2    ███████████████████████████████████████████████████████████████████████████████████

3    ███████████████████████████████ (Dkt. 2011-8 (Burnette 3Q 2015 Evaluation at 2)), and further

4    claimed that ████████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████ (*Id.*)

6    Finally, Burnette admitted that ████████████████████████████████████████████

7    ███████████████████████████████████████████████████████████████████████████████████

8    ██████████████████████████████████████. (*Compare* Dkt. 2011-5 at 207:17-208:7 *with*

9    Dkt. 2011-7 at 2.)  In doing so, he confirmed other evidence recently disclosed to Waymo indicating

10   that █████████████████████████████████████████████████████████████████████████████

11   █████████████████████████. (*See* Dkt. 2011-11 (5/10/16 email from an Otto team member to

12   the head of Uber's ATC attaching "████████████████████████████████████"); Dkt. 2011-12 at 3

13   (6/11/16 email from Uber employee indicating that █████████████████████████████████████

14   ███████████████████████████████████████████████████████████████████████████████████

15   █████████████████████████████████████████████████████); Dkt. 2011-13 at

16   4 (████████████████████████████████████████████████████████████████████████████████

17   ████████████████████").[1]

18   The aforementioned work that Burnette conducted at Waymo and ███████████ certainly

19   qualifies for trade secret protection.  Indeed, Waymo is in the process of formally amending its trade

20   secret disclosure to add the trade secrets embodied in this work.  As just one example, ██████████

21   ███████████████████████████████████████████████████████████████████████████████ — is

22   hardly a routine or known technique.  To the contrary, it is a trade secret.  Indeed, the fact that

23   Burnette felt the need to write this information down so soon after leaving Waymo is strong

---

[1] Waymo also recently found █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

circumstantial evidence of its value (as well as strong circumstantial evidence that Burnette planned to use this information at his new employer, Otto).

| Burnette Deposition Testimony - Oct. 2017: | Contemporaneous Documentation Describing Significance of These Innovations |
|---|---|
| [REDACTED] Ex. 1 at 231:25 – 232:5. | Waymo's "[REDACTED]": "This was one of the areas where Don completely led a fundamental improvement to [REDACTED]." Ex. 2 (WAYMO-UBER-00144446). |
| [REDACTED] Ex. 1 at 234:9-19 | Waymo's "[REDACTED]" project: "The huge importance of this new system is that [REDACTED]" Ex. 3 (WAYMO-UBER-00144450). "[T]his new system would solve some of our toughest critical bugs …" Ex. 3 (WAYMO-UBER-00144449) |
| [REDACTED] | Waymo's [REDACTED] innovation: "[A] critical advancement in the [REDACTED]" Ex.3 |

| | |
|---|---|
|  Ex. 1 at 291:8-17 | (WAYMO-UBER-00144450). Waymo engineer Josh Herbach echoed this statement at the time: "Don's work on this space with Jur was incredible and completely changed the playing field, allowing us to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* |

Burnette outright admits that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮:



Ex. 1 at 261:7-12 (objections omitted).

Even Uber itself contends that the handwritten notes contain highly confidential information, putting in a sworn declaration that they "contain highly confidential information technical information [sic] considered by an Ottomotto software engineer. Disclosure of this information could allow competitors to obtain a competitive advantage over Defendants by understanding this technical information." Dkt. 2024. In other words, Uber itself agrees that these handwritten notes constitute trade secrets. The only dispute left is whose trade secrets the notes describe. As shown above, these trade secrets were created at Waymo and are Waymo's property, not Uber's.

While Waymo has received an older version of Uber's code, it has never received a current Uber's motion planner source code. The evidence recounted above provides more than sufficient basis to compel production of Uber's most recent motion planner source code, so that Waymo can more definitively determine and prove whether Uber's motion planner software embodies Waymo's trade secrets.

"The scope of discovery under the Federal Rules is extremely broad . . . . discovery should be allowed unless the information sought has no conceivable bearing on the case." *United States v. Cathcart*, No. C 07-4762 PJH, 2009 WL 1764642, at *2 (N.D. Cal. June 18, 2009). Given the aforementioned facts, Waymo has shown entitlement to the most recent version of Uber's motion planner source code. Waymo respectfully requests that this narrow and targeted request be granted.

DATED: October 20, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
    Charles K. Verhoeven
    Attorneys for WAYMO LLC