QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa J. Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF WAYMO'S MOTION IN LIMINE 14** |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Plaintiff Waymo LLC ("Waymo") respectfully submits this supplemental brief in support of Motion in Limine No. 14 ("MIL 14") (Dkt. 1551-4) to preclude Defendants from presenting argument or evidence that Anthony Levandowski has not "cooperated" with their investigation and defense in this case.  As Waymo argued in MIL 14 and as demonstrated further herein, Defendants have continued to make selective disclosures regarding Mr. Levandowski's purported noncooperation while foreclosing Waymo's attempts to examine the truth of Defendants' allegations as to non-cooperation through selective assertions of privilege.  Defendants' selective disclosures and assertions of privilege continue Defendants' "slick practice" of using privilege as both a sword and a shield, (*see, e.g.,* Dkt. 1267, at 3:8-14 (discussing Uber's "slick practice of including its lawyers in meetings and communications and deciding after the fact if a lawyer was actually included for the purpose of providing legal advice")), and thus the Court should grant Waymo's MIL 14.

## BACKGROUND

Defendants have repeatedly made clear that they plan to tell the jury that Mr. Levandowski refused to cooperate with their investigation and defense of this case. (*See, e.g.*, Dkt. 821; Dkt. 1088-1 at 78:15-19).  In support of this argument, Defendants have provided self-serving information tailored to suggest non-cooperation, such as May 2017 letters from Salle Yoo threatening to fire and ultimately firing Mr. Levandowski for failing to comply with a request for cooperation in discovery in the case. (*See, e.g.*, Dkt. 466-2; Dkt. 519-2; Dkt. 821 at 4-5; Dkt. 854 at 11.).  At the same time, however, Defendants have prevented Waymo from pursuing the information and documents on this same subject by asserting that conversations that Uber and its counsel had with Mr. Levandowski relating to his cooperation are privileged.  (*Id.* at 1:19-24.) This prevents Waymo from testing Defendants' assertions, which is problematic particularly because the evidence Waymo does have shows that Mr. Levandowski <u>did</u> and <u>does</u> cooperate with Defendants when it serves him to do so. (*See, e.g.*, Dkt. 1551-5, at 33:17-41:39 (Levandowski retrieved earrings from Seval Oz); Dkt. 1551-7 (████████████████████████████████████████████████.).

At the September 27 hearing on MIL 14, Waymo explained how "when we want to get discovery into what [Mr. Levandowski] actually did discuss with the lawyers before [his purported non cooperation], they've refused to produce that discovery to us in document form. They've withheld it as privileged, and they have not allowed us to explore that with their witnesses." (Sept. 27 Hr'g Tr. 40:14-18.) Waymo predicted that at the following week's deposition of Angela Padilla, an in-house lawyer for Uber, "we're going to be asking questions that challenge the assertion that Uber's making that Mr. Levandowski did not cooperate, they are going to preclude us from asking questions challenging that." (*Id.* at 40:5-10.) Uber's counsel, in response, stated that Mr. Levandowski's invocation of the Fifth Amendment should be all that is needed to determine his noncooperation, that Waymo "have received documents" on this issue, and suggested that "this is not the place to fight future fights that will come up at depositions." (*Id.* at 41:7-11, 42:6-8.) The Court then observed that:

> It seems to me that before he was fired, there was an interim step where he recused himself, but stayed on in his job. So what was the level of cooperation in that era? Which leads to the question of: Should Waymo be allowed to show that there was a period of time when Levandowski was allied with Uber, but you're refusing to allow discovery into what the extent of that alliance was?

(*Id.* at 42:16-25.) In response to that, Defendants sought to delay resolution of MIL 14 arguing that Waymo had not fully explored Mr. Levandowski's purported noncooperation because the depositions of Uber personnel on this point "have not happened yet" and "that these are privilege issues that may or may not come up at depositions in the future." (*Id.* at 42:20-25.) Accordingly, the Court deferred the ruling on MIL 14 until after the deposition of Ms. Padilla. The Court also granted the parties permission to submit supplemental briefs of no more than five pages following that deposition. (Dkt. 1885.).

Waymo has now deposed Ms. Padilla and the other relevant witnesses, and, as Waymo predicted, Defendants repeatedly asserted privilege and the witnesses repeatedly refused to answer questions regarding Mr. Levandowski's cooperation with Defendants.

## **ARGUMENT**

The Court should reject Defendants' attempt to present only the facts that they prefer. Courts have broad discretion to preclude testimony from parties who have attempted to use

attorney-client privilege as "both [] a sword and a shield." *See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (district court acted in its discretion to preclude advice of counsel defense where defendant "refused to answer questions regarding his interactions with counsel at his deposition"). The Court should not allow Defendants to benefit from preventing Waymo from accessing relevant information by arguing at trial that Mr. Levandowski did not cooperate with Uber – which would also prejudice Waymo, forcing Waymo to devote valuable trial time to correct the distorted evidentiary record – especially given that Defendants have selectively asserted privilege.

During her October 2 deposition, Counsel for Uber and Ottomotto repeatedly instructed Ms. Padilla not to answer numerous questions regarding and inquiring as to Mr. Levandowski's alleged non-cooperation with Defendants. For example, counsel instructed Ms. Padilla not to answer each of the following questions:

- "Have you personally asked Mr. Levandowski whether he took any Google or Waymo material with him to Uber?" (Ex. 1 [Padilla Tr.], at 52:8-10.)

- "Did Mr. Levandowski ever refuse to answer any questions by you as to whether he had taken Waymo confidential information and … used it at Uber?" (*Id.* at 52:15-19.)

- "Were there any questions that you asked Mr. Levandowski to answer in relation to this litigation that he refused to answer?" (*Id.* at 52:25-53:3.)

- "Has Mr. Levandowski ever cooperated in providing information to you that was used in connection with Uber's defense of this case?" (*Id.* at 53:11-13.)

- "[W]ere there any questions that were asked of Mr. Levandowski on this call [referenced in a calendar invitation as regarding 'Judge Alsup's order, 10 questions'] that he refused to provide answers to?" (*Id.* at 56:11-13.)

- "And did Mr. Levandowski cooperate with Uber in addressing Judge Alsup's order on this call?" (*Id.* at 56:19-21.)

- "Has Mr. Levandowski provided Uber with information that it has used to identify relevant witnesses in this case?" (*Id.* at 57:11-15.)

- "Has Mr. Levandowski provided Uber with information that it has used in connection with depositions that it has taken in this case?" (*Id.* at 57:16-22.)

- "Do you know why Uber didn't fire Mr. Levandowski earlier than May 26, 2017?" (*Id.* at 106:12-14.)

1  Indeed, Uber's counsel suggested that they would permit <u>no</u> questions regarding the conversations
2  that Ms. Padilla had with Mr. Levandowski about this case:

3  "MR. PERLSON. … just for the record, any questions that I ask regarding conversations with Mr. Levandowski regarding this case, I'm going to get an
4  instruction?  MR. GONZALEZ:  Pretty much.  Pretty much.  I mean, … if there's some conversation that I'm not aware of that's not privileged, but I -- I doubt it
5  …."  (*Id.* at 53:17-54:5.)

6  While Uber's counsel cut off many Waymo questions as to Mr. Levandowski's alleged
7  lack of cooperation, Uber's counsel did allow Ms. Padilla to testify as to Mr. Levandowski's
8  cooperation in relation to the one area that served Defendants' purposes:  Mr. Levandowski's
9  alleged refusal to turn over two laptops at Uber's request. (*Id.* at 57:23-58:5 ("What materials has
10 Mr. Levandowski refused to provide to Uber that Uber asked him to provide in connection with
11 this litigation?  MR. GONZALEZ: So I'll -- I'll let you answer the part of that question that
12 involves his computers, because I believe a document has been produced on that point.").).  Ms.
13 Padilla testified at length regarding Mr. Levandowski's purported non-cooperation in response to
14 her April 20, 2017 e-mail to Mr. Levandowski requesting those two laptops, including the
15 substance of her conversations both with Mr. Levandowski's lawyers and Mr. Levandowski
16 himself.  (*See, e.g., id.* at 58:6-65:19.)  For example, Ms. Padilla stated that "what I recall about
17 the conversations with [Levandowski's lawyers] is my insistence that Anthony turn over every
18 device to Uber for us to search and comply with the court's order, period, end of story, and there
19 was to be no debate about this." (*Id.* at 61:8-13).  To Mr. Levandowski himself, she "remember[s]
20 insisting pretty sharply that he turn over things," in response to which "he did cooperate to some
21 extent," but ultimately stating that "I don't know if 'cooperate' is the right word."  (*Id.* at 63:7-14.)

22  Ultimately, Ms. Padilla laid bare Defendants' aim to paint Mr. Levandowski as never
23 cooperating with Defendants, stating that "I just wish he would have provided everything from the
24 get-go and given full bona fide cooperation, which he did not do." (*Id.* at 65:17-19.)  This
25 selective testimony regarding Mr. Levandowski's failure to cooperate contrasts starkly with
26 Defendants' numerous instructions to Ms. Padilla to not answer questions seeking information
27 related to when Mr. Levandowski did cooperate with Defendants.  This is the improper "slick
28

1  practice" of selective waiver of privilege, as Waymo predicted at the September 27 Hearing would
2  happen.  MIL 14 should be granted.
3        Another key Uber witness that asserted privilege regarding Mr. Levandowski's
4  cooperation with Uber was Uber's General Counsel, Salle Yoo.  Ms. Yoo was asked the following
5  questions:

- ███████████████████████████████████████
- ███████████████████████████████████████
- ███████████████████████████████████████

11  Ms. Yoo responded ████████████████████ (Ex. 2 [Yoo Tr.] at 120:9-23.)
12        Other, non-Uber witnesses have also refused to answer questions intended to determine
13  Mr. Levandowski's cooperation.  In Mr. Levandowski's most recent deposition, when Mr.
14  Levandowski was asked about ████████████████████████████████████
15  ██████████████████████ (*See, e.g.*, Ex. 3 [Levandowski Tr.], at 488:9-491:25.)
16  Likewise, Mr. Levandowski's attorney ████████████████████████████████
17  ████████████████████████████████████████████████████████
18  ████████████ (*See, e.g.*, Ex. 4 [Gardner Tr.], at 284:1-285:12 (████████████
19  ████████████████████████████████); *id.*, at
20  286:8-19 (████████████████████████████████████████
21  ████████████████████); *id.* at 289:9-16 (same); *id.* at 289:19-290:5 (████
22  ████████████████████████████████████████████████).)

### CONCLUSION

24        The Court should reject Defendants' selective disclosure of Mr. Levandowski's refusal to
25  cooperate and grant Waymo's MIL 14.

DATED: October 23, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Jordan Jaffe*
Jordan Jaffe
Attorneys for WAYMO LLC