# EXHIBIT 1

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                SAN FRANCISCO DIVISION

4

5    _____

6    WAYMO LLC,                          )

7                  Plaintiff,            )

8       vs.                              ) Case No.

9    UBER TECHNOLOGIES, INC.;            ) 17-cv-00939-WHA

10   OTTOMOTTO, LLC; OTTO TRUCKING LLC,  )

11                Defendants.            )

     _____)

12

13    HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

14

15     VIDEOTAPED DEPOSITION OF ANGELA L. PADILLA, ESQ.

16              San Francisco, California

17               Monday, October, 2017

18                    Volume I

19

20   Reported by:

21   MARY J. GOFF

22   CSR No. 13427

23   JOB No. 2716665

24

25   PAGES 1-111

                                           Page 1

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
 1            MR. GONZALEZ:  No.  That's okay.  You know      10:45:25

 2     where I'm going.                                        10:45:26

 3        A    Or to put it another way, everything I          10:45:26

 4     know on that is privileged.                             10:45:28

 5        Q    (BY MR. PERLSON) Everything you know on         10:45:30

 6     that subject --                                         10:45:31

 7        A    Yes.                                            10:45:32

 8        Q    -- is privileged?  Have you personally          10:45:32

 9     asked Mr. Levandowski whether he took any Google or     10:46:08

10     Waymo material with him to Uber?                        10:46:15

11            MR. GONZALEZ:  And here I would caution          10:46:21

12     you on the attorney/client privilege.                   10:46:23

13        A    Discussions I had with Anthony on that          10:46:27

14     topic are privileged.                                   10:46:30

15        Q    (BY MR. PERLSON) Did Mr. Levandowski ever       10:46:37

16     refuse to answer any questions by you as to whether     10:46:41

17     he had taken Waymo confidential information and --      10:46:47

18            MR. GONZALEZ:  Objection --                      10:46:56

19        Q    (BY MR. PERLSON) -- used it at Uber?            10:46:56

20            MR. GONZALEZ:  -- I would instruct you not       10:46:57

21     to answer that unless they were nonprivileged           10:46:58

22     conversations.                                          10:47:03

23        A    All discussions on that topic were             10:47:04

24     privileged.                                             10:47:06

25        Q    (BY MR. PERLSON) Okay.  Were there any          10:47:06
```

Page 52

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | questions that you asked Mr. Levandowski to answer | 10:47:18 |
| 2 | in relation to this litigation that he refused to | 10:47:27 |
| 3 | answer? | 10:47:31 |
| 4 | MR. GONZALEZ:  I'm going to instruct you | 10:47:32 |
| 5 | not to answer that question. | 10:47:33 |
| 6 | Q    (BY MR. PERLSON) Has Mr. Levandowski | 10:47:49 |
| 7 | provided any information to you that was used in | 10:47:55 |
| 8 | connection with Uber's defense of this case? | 10:48:03 |
| 9 | MR. GONZALEZ:  Same instruction. | 10:48:10 |
| 10 | A    That would be privileged. | 10:48:13 |
| 11 | Q    (BY MR. PERLSON) Has Mr. Levandowski ever | 10:48:25 |
| 12 | cooperated in providing information to you that was | 10:48:26 |
| 13 | used in connection with Uber's defense of this case? | 10:48:32 |
| 14 | MR. GONZALEZ:  Same instruction.  Your | 10:48:39 |
| 15 | communications with them and mental impressions are | 10:48:40 |
| 16 | privileged. | 10:48:43 |
| 17 | MR. PERLSON:  And so I can't -- so I -- | 10:48:50 |
| 18 | just -- just for the record, any questions that I | 10:48:51 |
| 19 | ask regarding conversations with Mr. Levandowski | 10:48:54 |
| 20 | regarding this case, I'm going to get an | 10:49:01 |
| 21 | instruction? | 10:49:03 |
| 22 | MR. GONZALEZ:  Pretty much.  Pretty much. | 10:49:04 |
| 23 | I mean, I can't think of -- I -- if -- if there's | 10:49:06 |
| 24 | some instruction -- if there's some conversation | 10:49:09 |
| 25 | that I'm not aware of that's not privileged, but | 10:49:11 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
1    I -- I doubt it --                               10:49:15

2           MR. PERLSON:  Okay.                        10:49:16

3           MR. GONZALEZ:  -- either by a joint        10:49:16

4    interest, by work-product, by attorney/client, or 10:49:17

5    all of the above.                                 10:49:18

6        Q    (BY MR. PERLSON) Are you aware of any    10:49:21

7    conversations that you have had with Mr. Levandowski 10:49:22

8    that are not privileged?                          10:49:26

9        A    Not generally.  But I do know that there 10:49:36

10   was that one night when we talked about the bonus. 10:49:43

11       Q    Separate and apart from -- from that     10:49:50

12   discussion, are you -- can you, sitting here today, 10:49:52

13   think of any discussions with Mr. Levandowski that 10:49:55

14   you -- you had with him that were not privileged?  10:50:00

15       A    No, I really can't.                      10:50:02

16       Q    Are you aware that Mr. Levandowski       10:50:21

17   provided search terms to assist Uber in looking for 10:50:21

18   documents in responding to paragraph 4 of the     10:50:30

19   March 16th order?                                 10:50:39

20          MR. GONZALEZ:  And I don't recall frankly  10:50:43

21   whether that's in the public filing.  But if you  10:50:44

22   know that information from a nonprivileged source, 10:50:47

23   you can answer.                                   10:50:51

24       A    I -- truly, everything about complying   10:50:52

25   with this order, Exhibit 8104, truly, it would all 10:50:56
```

Page 54

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | be privileged, everything I know. | 10:51:01 |
| 2 | Q    (BY MR. PERLSON) So if you didn't -- if | 10:51:08 |
| 3 | you did know that, you would consider that to be | 10:51:09 |
| 4 | privileged? | 10:51:12 |
| 5 | A    I would. | 10:51:13 |
| 6 | (Exhibit 8105 was marked for | 10:52:38 |
| 7 | identification and is attached to the transcript.) | 10:52:38 |
| 8 | A    Thank you. | 10:52:41 |
| 9 | MR. PERLSON:  What number? | 10:52:41 |
| 10 | THE COURT REPORTER:  8105. | 10:52:49 |
| 11 | Q    (BY MR. PERLSON) You have been handed | 10:52:51 |
| 12 | what's been marked as Exhibit 8105, UBER65191. | 10:52:53 |
| 13 | A    A two-sided -- | 10:53:06 |
| 14 | Q    Yeah. | 10:53:08 |
| 15 | A    -- the same document? | 10:53:08 |
| 16 | Q    Just ignore the second -- | 10:53:09 |
| 17 | A    Okay. | 10:53:12 |
| 18 | Q    -- side.  I don't know why that's there. | 10:53:12 |
| 19 | The -- do you see that this is a -- a calendar | 10:53:20 |
| 20 | invite for a meeting on Feb -- March 3, 2017, that | 10:53:23 |
| 21 | you were invited to. | 10:53:33 |
| 22 | Do you see that? | 10:53:34 |
| 23 | A    I see this. | 10:53:35 |
| 24 | Q    Okay.  And it looks like the subject | 10:53:36 |
| 25 | matter was "Judge Alsup's order, 10 questions." | 10:53:37 |

Page 55

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Do you see that? | 10:53:40 |
| 2 | A    I do. | 10:53:40 |
| 3 | Q    Okay.  Did you participate in this call? | 10:53:41 |
| 4 | A    I likely did.  But sitting here right now, | 10:53:46 |
| 5 | I can't -- I don't remember it clearly. | 10:53:51 |
| 6 | Q    Okay.  And you see a -- to the left of | 10:53:54 |
| 7 | your name, there's "robot@Uber.com"? | 10:53:58 |
| 8 | A    I see that. | 10:54:03 |
| 9 | Q    Is that Mr. Levandowski? | 10:54:04 |
| 10 | A    Yeah, that should be. | 10:54:06 |
| 11 | Q    Okay.  And were there any questions that | 10:54:11 |
| 12 | were asked of Mr. Levandowski on this call that he | 10:54:20 |
| 13 | refused to provide answers to? | 10:54:25 |
| 14 | MR. GONZALEZ:  I'm going to instruct you | 10:54:28 |
| 15 | not to answer any questions about the content of | 10:54:28 |
| 16 | this telephone call, which is privileged. | 10:54:29 |
| 17 | Q    (BY MR. PERLSON) Which you'll follow? | 10:54:32 |
| 18 | A    Yes. | 10:54:34 |
| 19 | Q    And did Mr. Levandowski cooperate with | 10:54:34 |
| 20 | Uber in addressing Judge Alsup's order on this call? | 10:54:40 |
| 21 | MR. GONZALEZ:  Same instruction. | 10:54:48 |
| 22 | Q    (BY MR. PERLSON) And has Mr. Levandowski | 10:54:48 |
| 23 | provided information to Uber regarding the nature of | 10:55:16 |
| 24 | the technology that Waymo contends is | 10:55:20 |
| 25 | misappropriated in this case? | 10:55:23 |

Page 56

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MR. GONZALEZ:  Same instruction.  If you | 10:55:26 |
| 2 | have nonprivileged information, you can share that. | 10:55:27 |
| 3 | A    Has Mr. Levandowski provided technology? | 10:55:32 |
| 4 | No.  Could you say it again? | 10:55:35 |
| 5 | Q    (BY MR. PERLSON) Sure.  Has | 10:55:37 |
| 6 | Mr. Levandowski provided information to Uber | 10:55:38 |
| 7 | regarding the nature of the technology that Waymo | 10:55:40 |
| 8 | contends is misappropriated in this case? | 10:55:45 |
| 9 | A    So the only way I would have that would be | 10:55:47 |
| 10 | through privileged conversations. | 10:55:50 |
| 11 | Q    Has Mr. Levandowski provided Uber with | 10:55:57 |
| 12 | information that it has used to identify relevant | 10:56:02 |
| 13 | witnesses in this case? | 10:56:09 |
| 14 | MR. GONZALEZ:  I instruct you not to | 10:56:11 |
| 15 | answer that question.  Privilege, work-product. | 10:56:12 |
| 16 | Q    (BY MR. PERLSON) Has Mr. Levandowski | 10:56:16 |
| 17 | provided Uber with information that it has used in | 10:56:18 |
| 18 | connection with depositions that it has taken in | 10:56:30 |
| 19 | this case? | 10:56:34 |
| 20 | MR. GONZALEZ:  Same instruction.  Unless | 10:56:35 |
| 21 | you have nonprivileged information, I would instruct | 10:56:36 |
| 22 | you not to answer. | 10:56:39 |
| 23 | Q    (BY MR. PERLSON) What materials has | 10:56:41 |
| 24 | Mr. Levandowski refused to provide to Uber that Uber | 10:56:44 |
| 25 | asked him to provide in connection with this | 10:56:51 |

Page 57

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | litigation? | 10:56:54 |
| 2 | MR. GONZALEZ:  So I'll -- I'll let you | 10:56:57 |
| 3 | answer the part of that question that involves his | 10:56:59 |
| 4 | computers, because I believe a document has been | 10:57:01 |
| 5 | produced on that point. | 10:57:05 |
| 6 | A    So he did not cooperate in providing all | 10:57:14 |
| 7 | of the devices that he had at the time that we were | 10:57:21 |
| 8 | in this litigation.  And I sent him a letter -- | 10:57:28 |
| 9 | well, really an e-mail -- an e-mail letter about | 10:57:34 |
| 10 | that. | 10:57:37 |
| 11 | (Exhibit 8106 was marked for | 10:57:42 |
| 12 | identification and is attached to the transcript.) | 10:57:42 |
| 13 | MR. GONZALEZ:  Thank you. | 10:58:33 |
| 14 | Q    (BY MR. PERLSON) You have been handed | 10:58:43 |
| 15 | what's been marked as Exhibit 8106, UBER324612. | 10:58:44 |
| 16 | Do you recognize this e-mail? | 10:58:52 |
| 17 | A    I do. | 10:58:55 |
| 18 | Q    Is this the e-mail that you were just | 10:58:56 |
| 19 | referring to in your testimony? | 10:58:58 |
| 20 | A    It is. | 10:59:01 |
| 21 | Q    Okay.  So in the first sentence, it says, | 10:59:01 |
| 22 | I understand that there are two laptops in your | 10:59:07 |
| 23 | possession that you have used for Uber work that | 10:59:10 |
| 24 | have not yet been provided to us for inspection in | 10:59:14 |
| 25 | the Waymo litigation. | 10:59:18 |

Page 58

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Do you see that? | 10:59:20 |
| 2 | A    Um-hum. | 10:59:21 |
| 3 | Q    Yes? | 10:59:22 |
| 4 | A    Yes. | 10:59:22 |
| 5 | Q    Okay.  And what -- what -- do you know | 10:59:22 |
| 6 | what those computers were? | 10:59:28 |
| 7 | A    I don't remember the specifics right now. | 10:59:33 |
| 8 | I remember just a dispute about whether they were | 10:59:43 |
| 9 | company computers or personal computers and whether | 10:59:49 |
| 10 | they were used for Uber work or not. | 10:59:51 |
| 11 | Q    Okay.  And who -- that was a dispute | 10:59:56 |
| 12 | between Anthony -- or Mr. Levandowski and Uber? | 11:00:03 |
| 13 | A    Yes. | 11:00:05 |
| 14 | Q    Okay.  Were -- was that dispute something | 11:00:05 |
| 15 | that was discussed orally or were there other | 11:00:13 |
| 16 | e-mails concerning that dispute?  Do you know? | 11:00:19 |
| 17 | A    I think it was all oral. | 11:00:21 |
| 18 | Q    And when did -- obviously, I assume that | 11:00:25 |
| 19 | they -- when did those discussions occur? | 11:00:28 |
| 20 | A    Probably right around the time of this | 11:00:34 |
| 21 | e-mail, which is April 20.  Maybe a little before | 11:00:37 |
| 22 | and probably a little after as well.  I -- I think | 11:00:44 |
| 23 | it was an ongoing struggle. | 11:00:47 |
| 24 | Q    And who -- who was involved in those | 11:00:50 |
| 25 | conversations? | 11:00:59 |

Page 59

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
 1       A    Let's see.  Myself; Anthony; his lawyers,      11:01:01

 2   Miles and Izzy -- Miles or Izzy and/or meaning these     11:01:11

 3   people in various combinations in various                11:01:21

 4   conversations.  It wasn't a static one-time event.       11:01:25

 5            Travis; Neal Chatterjee, once he came on        11:01:33

 6   board.  Gosh, I'm trying to think.  Possibly Salle.      11:01:42

 7   Possibly Salle.  Possibly Walter and Melinda over at     11:01:58

 8   Orrick.  No.  No.  No, not them.  I'm sorry.  I'm        11:02:03

 9   thinking of something else.  I'm thinking of Travis.     11:02:06

10   No, not them.  Just possibly Salle, yeah.                11:02:09

11       Q    Please tell me what you remember regarding      11:02:16

12   the substance of those communications.                   11:02:19

13       A    I don't remember details, but the --            11:02:25

14            MR. GONZALEZ:  I'm sorry.  Can I interrupt       11:02:27

15   just to make this clear?  To the extent you had          11:02:28

16   conversations with attorneys for Mr. Levandowski,        11:02:31

17   I'm going to let you answer that.                        11:02:33

18            But if you had private conversations with       11:02:35

19   your client, Salle, Travis, or anybody else, that        11:02:37

20   would be privileged.  So I want to make sure you         11:02:41

21   draw that distinction in your head as you answer         11:02:43

22   that question.                                           11:02:46

23       A    Okay.  So if I limit it to conversations        11:02:47

24   that I had with Anthony's lawyers, because all the       11:02:51

25   other conversations would have been with Salle or        11:02:56
```

Page 60

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Travis or Anthony, or -- or with Neal Chatterjee. | 11:02:58 |
| 2 | Was it Neal?  I -- I don't know.  It could -- | 11:03:04 |
| 3 | Q    (BY MR. PERLSON) That's his name. | 11:03:07 |
| 4 | A    -- be mistaken.  I know -- I mean, I know | 11:03:07 |
| 5 | Neal really well.  I just -- I can't remember if -- | 11:03:08 |
| 6 | I might be mistaken about Neal.  But anyway, I feel | 11:03:10 |
| 7 | like I had some conversation with Neal. | 11:03:17 |
| 8 | But what I recall about the conversations | 11:03:19 |
| 9 | with Miles and Izzy and probably with Neal is my | 11:03:21 |
| 10 | insistence that Anthony turn over every device to | 11:03:27 |
| 11 | Uber for us to search and comply with the court's | 11:03:33 |
| 12 | order, period, end of story, and there was to be no | 11:03:37 |
| 13 | debate about this. | 11:03:46 |
| 14 | Q    And so how many conversations do you think | 11:03:56 |
| 15 | you had with yourself on that -- that -- on the | 11:03:58 |
| 16 | subject that Mr. Levandowski's lawyers would have | 11:04:06 |
| 17 | been involved in? | 11:04:10 |
| 18 | A    Several.  Maybe as many as five. | 11:04:12 |
| 19 | Q    Okay.  And that would have been at or | 11:04:16 |
| 20 | around this April 20 -- | 11:04:19 |
| 21 | A    I can't -- | 11:04:21 |
| 22 | Q    -- time frame? | 11:04:21 |
| 23 | A    -- I can't put it exactly in time.  There | 11:04:22 |
| 24 | was, as you know, a lot going on.  But within a | 11:04:23 |
| 25 | couple of weeks of this time period, yeah, I would | 11:04:31 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | say so. | 11:04:34 |
| 2 | Q    Did you have any conversations with | 11:04:57 |
| 3 | Mr. Levandowski regarding obtaining his devices that | 11:04:59 |
| 4 | did not include his counsel? | 11:05:08 |
| 5 | A    I might have. | 11:05:12 |
| 6 | Q    Okay.  When would that have been? | 11:05:14 |
| 7 | A    Same time period. | 11:05:19 |
| 8 | Q    Okay.  Can you identify -- let me know the | 11:05:20 |
| 9 | substance of -- of that communication? | 11:05:26 |
| 10 | MR. GONZALEZ:  So -- so hold on.  Would | 11:05:29 |
| 11 | you agree that we're not waiving privilege by | 11:05:31 |
| 12 | allowing her to answer that question? | 11:05:33 |
| 13 | MR. PERLSON:  Nope. | 11:05:34 |
| 14 | MR. GONZALEZ:  Okay.  Then I'm going to | 11:05:35 |
| 15 | have to instruct you not to answer. | 11:05:37 |
| 16 | A    Okay. | 11:05:38 |
| 17 | Q    (BY MR. PERLSON) Did you ever have any | 11:05:50 |
| 18 | instructions with Mr. -- start over again. | 11:05:51 |
| 19 | Did you ever have any conversations with | 11:05:55 |
| 20 | Mr. Levandowski in which he did agree to produce at | 11:05:57 |
| 21 | least some of his devices? | 11:06:02 |
| 22 | A    Yes. | 11:06:07 |
| 23 | Q    Okay.  When was that? | 11:06:09 |
| 24 | A    The same time frame.  I -- I don't | 11:06:13 |
| 25 | clearly -- really, I don't clearly remember it, | 11:06:16 |

Page 62

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | because there were hundreds of things happening at | 11:06:19 |
| 2 | this time.  I'm -- I was also running the ███████ | 11:06:22 |
| 3 | ██████ and just everything was going on. | 11:06:25 |
| 4 | So I don't know if that was, like, right | 11:06:32 |
| 5 | after the lawsuit was filed, two weeks after the | 11:06:34 |
| 6 | lawsuit was filed, or -- and now we're in April. | 11:06:36 |
| 7 | But I do know -- I do remember insisting | 11:06:39 |
| 8 | pretty sharply that he turn over things and that he | 11:06:46 |
| 9 | did cooperate to some extent. | 11:06:50 |
| 10 | Q    Okay.  He -- he -- you do remember that | 11:06:52 |
| 11 | Mr. Levandowski at least did cooperate to some | 11:06:57 |
| 12 | extent in turning over devices; is that fair? | 11:07:01 |
| 13 | A    I don't know if "cooperate" is the right | 11:07:05 |
| 14 | word.  He certainly gave us some devices to search. | 11:07:05 |
| 15 | Q    Some of his devices? | 11:07:08 |
| 16 | A    Yes. | 11:07:09 |
| 17 | Q    Did you ever get the two laptop computers | 11:07:13 |
| 18 | that are referred to in your April 20, 2017 e-mail? | 11:07:15 |
| 19 | A    I am not sure that we got them, but I | 11:07:30 |
| 20 | believe they were searched by another law firm. | 11:07:32 |
| 21 | Q    Okay.  Do you know what law firm that was? | 11:07:37 |
| 22 | A    I don't. | 11:07:44 |
| 23 | Q    Was it Mr. Levandowski's counsel? | 11:07:45 |
| 24 | A    It could have been Miles and Izzy.  It | 11:07:50 |
| 25 | could have been Neal.  I don't know. | 11:07:53 |

Page 63

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q    Okay.  And how -- and why do you -- what's | 11:07:55 |
| 2 | the basis of you thinking that they were eventually | 11:08:07 |
| 3 | searched by somebody? | 11:08:09 |
| 4 | A    Because this was megillah.  Do you know | 11:08:12 |
| 5 | what a megillah is?  It's Yiddish for long story. | 11:08:19 |
| 6 | This megillah went on for a long time, because I was | 11:08:23 |
| 7 | not going to let go of these two computers. | 11:08:28 |
| 8 | And I insisted that we get information off | 11:08:31 |
| 9 | of them, and they were insisting they weren't going | 11:08:34 |
| 10 | to give us the computers. | 11:08:39 |
| 11 | And so I believe that finally some kind of | 11:08:40 |
| 12 | a comprise was reached after a back and forth and | 11:08:43 |
| 13 | back and forth that some trusted third person would | 11:08:46 |
| 14 | review the document -- the computers.  And if | 11:08:52 |
| 15 | anything responsive in this litigation was found on | 11:08:54 |
| 16 | them, that would be provided. | 11:08:57 |
| 17 | Q    Okay.  Do you know when -- when that | 11:09:00 |
| 18 | accommodation was eventually reached? | 11:09:04 |
| 19 | A    It would have been after this e-mail went | 11:09:09 |
| 20 | out.  I just don't know when. | 11:09:11 |
| 21 | Q    Okay.  And was that accommodation | 11:09:13 |
| 22 | memorialized in some way? | 11:09:16 |
| 23 | A    I don't -- I doubt it.  I don't remember. | 11:09:21 |
| 24 | Q    Okay.  If -- if -- how could I figure out | 11:09:26 |
| 25 | what -- who -- what would you think the best source | 11:09:29 |

Page 64

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | would be for me to figure out who actually did | 11:09:31 |
| 2 | the -- did look at those pursuant to this | 11:09:34 |
| 3 | accommodation? | 11:09:38 |
| 4 |     A   Miles, Izzy, Neal. | 11:09:42 |
| 5 |     Q   And do you know whether responsive | 11:09:46 |
| 6 | material was found? | 11:09:48 |
| 7 |     A   I believe -- I don't -- I don't know one | 11:09:49 |
| 8 | way or the other.  I can't remember.  It could have | 11:09:51 |
| 9 | been.  It could not have been.  I just don't recall | 11:09:53 |
| 10 | it. | 11:09:56 |
| 11 |     Q   Okay.  And just to clear up the record -- | 11:09:56 |
| 12 | I -- I think it's already clear.  But it -- it -- | 11:09:57 |
| 13 | Mr. Levandowski did provide at least some of his | 11:10:01 |
| 14 | devices to Uber in connection with its efforts to | 11:10:05 |
| 15 | provide responsive information in this litigation, | 11:10:10 |
| 16 | correct? | 11:10:13 |
| 17 |     A   He did.  I just wish he would have | 11:10:14 |
| 18 | provided everything from the get-go and given full | 11:10:17 |
| 19 | bona fide cooperation, which he did not do. | 11:10:21 |
| 20 |     Q   In the second-to-last paragraph of the -- | 11:11:48 |
| 21 | your e-mail, it says that, Please understand that | 11:11:53 |
| 22 | your compliance with this request is crucial to | 11:11:57 |
| 23 | Uber's defense of the Waymo litigation and required | 11:12:00 |
| 24 | by our internal company policies. | 11:12:04 |
| 25 |       Do you see that? | 11:12:07 |

Page 65

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MR. GONZALEZ:  I think I'm going to | 01:28:45 |
| 2 | instruct you not to answer that question unless you | 01:28:46 |
| 3 | have nonprivileged information. | 01:28:48 |
| 4 | A    Everything I have is privileged. | 01:28:54 |
| 5 | Q    (BY MR. PERLSON) Did you agree with the | 01:28:57 |
| 6 | decision to terminate Mr. Levandowski? | 01:28:58 |
| 7 | MR. GONZALEZ:  I'll instruct you not to | 01:29:01 |
| 8 | answer, unless you agree it's not a waiver. | 01:29:01 |
| 9 | MR. PERLSON:  No. | 01:29:04 |
| 10 | MR. GONZALEZ:  In that case, I'll instruct | 01:29:06 |
| 11 | her not to answer. | 01:29:08 |
| 12 | Q    (BY MR. PERLSON) Do you know why Uber | 01:29:13 |
| 13 | didn't fire Mr. Levandowski earlier than May 26, | 01:29:14 |
| 14 | 2017? | 01:29:17 |
| 15 | MR. GONZALEZ:  I instruct you not to | 01:29:19 |
| 16 | answer that question, unless you have nonprivileged | 01:29:20 |
| 17 | information. | 01:29:22 |
| 18 | Q    (BY MR. PERLSON) Was it -- was -- before | 01:29:27 |
| 19 | Mr. Levandowski was fired on May 26, 2017, did | 01:29:34 |
| 20 | Mr. Kalanick resist firing Anthony Levandowksi? | 01:29:39 |
| 21 | MR. GONZALEZ:  I'm going to instruct you | 01:29:42 |
| 22 | not to answer. | 01:29:43 |
| 23 | Q    (BY MR. PERLSON) Do you have any | 01:30:01 |
| 24 | nonprivileged information regarding whether Waymo | 01:30:02 |
| 25 | has -- whether -- let me start over again. | 01:30:06 |

Page 106