# EXHIBIT 1

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN FRANCISCO DIVISION
 4
 5   _____
 6   WAYMO LLC,                            )
 7             Plaintiff,                  )
 8      vs.                                ) Case No.
 9   UBER TECHNOLOGIES, INC.;              ) 17-cv-00939-WHA
10   OTTOMOTTO, LLC; OTTO TRUCKING LLC,    )
11             Defendants.                 )
     _____)
12
13    HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
14
15     VIDEOTAPED DEPOSITION OF ANGELA L. PADILLA, ESQ.
16                  San Francisco, California
17                   Monday, October, 2017
18                         Volume I
19
20   Reported by:
21   MARY J. GOFF
22   CSR No. 13427
23   JOB No. 2716665
24
25   PAGES 1-111
```

Page 1

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MR. GONZALEZ:  No.  That's okay.  You know | 10:45:25 |
| 2 | where I'm going. | 10:45:26 |
| 3 | A   Or to put it another way, everything I | 10:45:26 |
| 4 | know on that is privileged. | 10:45:28 |
| 5 | Q   (BY MR. PERLSON) Everything you know on | 10:45:30 |
| 6 | that subject -- | 10:45:31 |
| 7 | A   Yes. | 10:45:32 |
| 8 | Q   -- is privileged?  Have you personally | 10:45:32 |
| 9 | asked Mr. Levandowski whether he took any Google or | 10:46:08 |
| 10 | Waymo material with him to Uber? | 10:46:15 |
| 11 | MR. GONZALEZ:  And here I would caution | 10:46:21 |
| 12 | you on the attorney/client privilege. | 10:46:23 |
| 13 | A   Discussions I had with Anthony on that | 10:46:27 |
| 14 | topic are privileged. | 10:46:30 |
| 15 | Q   (BY MR. PERLSON) Did Mr. Levandowski ever | 10:46:37 |
| 16 | refuse to answer any questions by you as to whether | 10:46:41 |
| 17 | he had taken Waymo confidential information and -- | 10:46:47 |
| 18 | MR. GONZALEZ:  Objection -- | 10:46:56 |
| 19 | Q   (BY MR. PERLSON) -- used it at Uber? | 10:46:56 |
| 20 | MR. GONZALEZ:  -- I would instruct you not | 10:46:57 |
| 21 | to answer that unless they were nonprivileged | 10:46:58 |
| 22 | conversations. | 10:47:03 |
| 23 | A   All discussions on that topic were | 10:47:04 |
| 24 | privileged. | 10:47:06 |
| 25 | Q   (BY MR. PERLSON) Okay.  Were there any | 10:47:06 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | questions that you asked Mr. Levandowski to answer | 10:47:18 |
| 2 | in relation to this litigation that he refused to | 10:47:27 |
| 3 | answer? | 10:47:31 |
| 4 |     MR. GONZALEZ:  I'm going to instruct you | 10:47:32 |
| 5 | not to answer that question. | 10:47:33 |
| 6 |     Q   (BY MR. PERLSON) Has Mr. Levandowski | 10:47:49 |
| 7 | provided any information to you that was used in | 10:47:55 |
| 8 | connection with Uber's defense of this case? | 10:48:03 |
| 9 |     MR. GONZALEZ:  Same instruction. | 10:48:10 |
| 10 |     A   That would be privileged. | 10:48:13 |
| 11 |     Q   (BY MR. PERLSON) Has Mr. Levandowski ever | 10:48:25 |
| 12 | cooperated in providing information to you that was | 10:48:26 |
| 13 | used in connection with Uber's defense of this case? | 10:48:32 |
| 14 |     MR. GONZALEZ:  Same instruction.  Your | 10:48:39 |
| 15 | communications with them and mental impressions are | 10:48:40 |
| 16 | privileged. | 10:48:43 |
| 17 |     MR. PERLSON:  And so I can't -- so I -- | 10:48:50 |
| 18 | just -- just for the record, any questions that I | 10:48:51 |
| 19 | ask regarding conversations with Mr. Levandowski | 10:48:54 |
| 20 | regarding this case, I'm going to get an | 10:49:01 |
| 21 | instruction? | 10:49:03 |
| 22 |     MR. GONZALEZ:  Pretty much.  Pretty much. | 10:49:04 |
| 23 | I mean, I can't think of -- I -- if -- if there's | 10:49:06 |
| 24 | some instruction -- if there's some conversation | 10:49:09 |
| 25 | that I'm not aware of that's not privileged, but | 10:49:11 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | I -- I doubt it -- | 10:49:15 |
| 2 |     MR. PERLSON:  Okay. | 10:49:16 |
| 3 |     MR. GONZALEZ:  -- either by a joint | 10:49:16 |
| 4 | interest, by work-product, by attorney/client, or | 10:49:17 |
| 5 | all of the above. | 10:49:18 |
| 6 |     Q   (BY MR. PERLSON) Are you aware of any | 10:49:21 |
| 7 | conversations that you have had with Mr. Levandowski | 10:49:22 |
| 8 | that are not privileged? | 10:49:26 |
| 9 |     A   Not generally.  But I do know that there | 10:49:36 |
| 10 | was that one night when we talked about the bonus. | 10:49:43 |
| 11 |     Q   Separate and apart from -- from that | 10:49:50 |
| 12 | discussion, are you -- can you, sitting here today, | 10:49:52 |
| 13 | think of any discussions with Mr. Levandowski that | 10:49:55 |
| 14 | you -- you had with him that were not privileged? | 10:50:00 |
| 15 |     A   No, I really can't. | 10:50:02 |
| 16 |     Q   Are you aware that Mr. Levandowski | 10:50:21 |
| 17 | provided search terms to assist Uber in looking for | 10:50:21 |
| 18 | documents in responding to paragraph 4 of the | 10:50:30 |
| 19 | March 16th order? | 10:50:39 |
| 20 |     MR. GONZALEZ:  And I don't recall frankly | 10:50:43 |
| 21 | whether that's in the public filing.  But if you | 10:50:44 |
| 22 | know that information from a nonprivileged source, | 10:50:47 |
| 23 | you can answer. | 10:50:51 |
| 24 |     A   I -- truly, everything about complying | 10:50:52 |
| 25 | with this order, Exhibit 8104, truly, it would all | 10:50:56 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | be privileged, everything I know. | 10:51:01 |
| 2 | Q    (BY MR. PERLSON) So if you didn't -- if | 10:51:08 |
| 3 | you did know that, you would consider that to be | 10:51:09 |
| 4 | privileged? | 10:51:12 |
| 5 | A    I would. | 10:51:13 |
| 6 | (Exhibit 8105 was marked for | 10:52:38 |
| 7 | identification and is attached to the transcript.) | 10:52:38 |
| 8 | A    Thank you. | 10:52:41 |
| 9 | MR. PERLSON:  What number? | 10:52:41 |
| 10 | THE COURT REPORTER:  8105. | 10:52:49 |
| 11 | Q    (BY MR. PERLSON) You have been handed | 10:52:51 |
| 12 | what's been marked as Exhibit 8105, UBER65191. | 10:52:53 |
| 13 | A    A two-sided -- | 10:53:06 |
| 14 | Q    Yeah. | 10:53:08 |
| 15 | A    -- the same document? | 10:53:08 |
| 16 | Q    Just ignore the second -- | 10:53:09 |
| 17 | A    Okay. | 10:53:12 |
| 18 | Q    -- side.  I don't know why that's there. | 10:53:12 |
| 19 | The -- do you see that this is a -- a calendar | 10:53:20 |
| 20 | invite for a meeting on Feb -- March 3, 2017, that | 10:53:23 |
| 21 | you were invited to. | 10:53:33 |
| 22 | Do you see that? | 10:53:34 |
| 23 | A    I see this. | 10:53:35 |
| 24 | Q    Okay.  And it looks like the subject | 10:53:36 |
| 25 | matter was "Judge Alsup's order, 10 questions." | 10:53:37 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | Do you see that? | 10:53:40 |
| 2 | A    I do. | 10:53:40 |
| 3 | Q    Okay.  Did you participate in this call? | 10:53:41 |
| 4 | A    I likely did.  But sitting here right now, | 10:53:46 |
| 5 | I can't -- I don't remember it clearly. | 10:53:51 |
| 6 | Q    Okay.  And you see a -- to the left of | 10:53:54 |
| 7 | your name, there's "robot@Uber.com"? | 10:53:58 |
| 8 | A    I see that. | 10:54:03 |
| 9 | Q    Is that Mr. Levandowski? | 10:54:04 |
| 10 | A    Yeah, that should be. | 10:54:06 |
| 11 | Q    Okay.  And were there any questions that | 10:54:11 |
| 12 | were asked of Mr. Levandowski on this call that he | 10:54:20 |
| 13 | refused to provide answers to? | 10:54:25 |
| 14 | MR. GONZALEZ:  I'm going to instruct you | 10:54:28 |
| 15 | not to answer any questions about the content of | 10:54:28 |
| 16 | this telephone call, which is privileged. | 10:54:29 |
| 17 | Q    (BY MR. PERLSON) Which you'll follow? | 10:54:32 |
| 18 | A    Yes. | 10:54:34 |
| 19 | Q    And did Mr. Levandowski cooperate with | 10:54:34 |
| 20 | Uber in addressing Judge Alsup's order on this call? | 10:54:40 |
| 21 | MR. GONZALEZ:  Same instruction. | 10:54:48 |
| 22 | Q    (BY MR. PERLSON) And has Mr. Levandowski | 10:54:48 |
| 23 | provided information to Uber regarding the nature of | 10:55:16 |
| 24 | the technology that Waymo contends is | 10:55:20 |
| 25 | misappropriated in this case? | 10:55:23 |

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MR. GONZALEZ: Same instruction. If you | 10:55:26 |
| 2 | have nonprivileged information, you can share that. | 10:55:27 |
| 3 | A   Has Mr. Levandowski provided technology? | 10:55:32 |
| 4 | No. Could you say it again? | 10:55:35 |
| 5 | Q   (BY MR. PERLSON) Sure.  Has | 10:55:37 |
| 6 | Mr. Levandowski provided information to Uber | 10:55:38 |
| 7 | regarding the nature of the technology that Waymo | 10:55:40 |
| 8 | contends is misappropriated in this case? | 10:55:45 |
| 9 | A   So the only way I would have that would be | 10:55:47 |
| 10 | through privileged conversations. | 10:55:50 |
| 11 | Q   Has Mr. Levandowski provided Uber with | 10:55:57 |
| 12 | information that it has used to identify relevant | 10:56:02 |
| 13 | witnesses in this case? | 10:56:09 |
| 14 | MR. GONZALEZ: I instruct you not to | 10:56:11 |
| 15 | answer that question. Privilege, work-product. | 10:56:12 |
| 16 | Q   (BY MR. PERLSON) Has Mr. Levandowski | 10:56:16 |
| 17 | provided Uber with information that it has used in | 10:56:18 |
| 18 | connection with depositions that it has taken in | 10:56:30 |
| 19 | this case? | 10:56:34 |
| 20 | MR. GONZALEZ: Same instruction. Unless | 10:56:35 |
| 21 | you have nonprivileged information, I would instruct | 10:56:36 |
| 22 | you not to answer. | 10:56:39 |
| 23 | Q   (BY MR. PERLSON) What materials has | 10:56:41 |
| 24 | Mr. Levandowski refused to provide to Uber that Uber | 10:56:44 |
| 25 | asked him to provide in connection with this | 10:56:51 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | litigation? | 10:56:54 |
| 2 |     MR. GONZALEZ:  So I'll -- I'll let you | 10:56:57 |
| 3 | answer the part of that question that involves his | 10:56:59 |
| 4 | computers, because I believe a document has been | 10:57:01 |
| 5 | produced on that point. | 10:57:05 |
| 6 |     A   So he did not cooperate in providing all | 10:57:14 |
| 7 | of the devices that he had at the time that we were | 10:57:21 |
| 8 | in this litigation.  And I sent him a letter -- | 10:57:28 |
| 9 | well, really an e-mail -- an e-mail letter about | 10:57:34 |
| 10 | that. | 10:57:37 |
| 11 |     (Exhibit 8106 was marked for | 10:57:42 |
| 12 | identification and is attached to the transcript.) | 10:57:42 |
| 13 |     MR. GONZALEZ:  Thank you. | 10:58:33 |
| 14 |     Q   (BY MR. PERLSON) You have been handed | 10:58:43 |
| 15 | what's been marked as Exhibit 8106, UBER324612. | 10:58:44 |
| 16 |     Do you recognize this e-mail? | 10:58:52 |
| 17 |     A   I do. | 10:58:55 |
| 18 |     Q   Is this the e-mail that you were just | 10:58:56 |
| 19 | referring to in your testimony? | 10:58:58 |
| 20 |     A   It is. | 10:59:01 |
| 21 |     Q   Okay.  So in the first sentence, it says, | 10:59:01 |
| 22 | I understand that there are two laptops in your | 10:59:07 |
| 23 | possession that you have used for Uber work that | 10:59:10 |
| 24 | have not yet been provided to us for inspection in | 10:59:14 |
| 25 | the Waymo litigation. | 10:59:18 |

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
 1            Do you see that?                                10:59:20
 2       A    Um-hum.                                         10:59:21
 3       Q    Yes?                                            10:59:22
 4       A    Yes.                                            10:59:22
 5       Q    Okay.  And what -- what -- do you know          10:59:22
 6   what those computers were?                               10:59:28
 7       A    I don't remember the specifics right now.       10:59:33
 8   I remember just a dispute about whether they were        10:59:43
 9   company computers or personal computers and whether      10:59:49
10   they were used for Uber work or not.                     10:59:51
11       Q    Okay.  And who -- that was a dispute            10:59:56
12   between Anthony -- or Mr. Levandowski and Uber?          11:00:03
13       A    Yes.                                            11:00:05
14       Q    Okay.  Were -- was that dispute something       11:00:05
15   that was discussed orally or were there other            11:00:13
16   e-mails concerning that dispute?  Do you know?           11:00:19
17       A    I think it was all oral.                        11:00:21
18       Q    And when did -- obviously, I assume that        11:00:25
19   they -- when did those discussions occur?                11:00:28
20       A    Probably right around the time of this          11:00:34
21   e-mail, which is April 20.  Maybe a little before        11:00:37
22   and probably a little after as well.  I -- I think       11:00:44
23   it was an ongoing struggle.                              11:00:47
24       Q    And who -- who was involved in those            11:00:50
25   conversations?                                           11:00:59
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | A    Let's see.  Myself; Anthony; his lawyers, | 11:01:01 |
| 2 | Miles and Izzy -- Miles or Izzy and/or meaning these | 11:01:11 |
| 3 | people in various combinations in various | 11:01:21 |
| 4 | conversations.  It wasn't a static one-time event. | 11:01:25 |
| 5 | Travis; Neal Chatterjee, once he came on | 11:01:33 |
| 6 | board.  Gosh, I'm trying to think.  Possibly Salle. | 11:01:42 |
| 7 | Possibly Salle.  Possibly Walter and Melinda over at | 11:01:58 |
| 8 | Orrick.  No.  No.  No, not them.  I'm sorry.  I'm | 11:02:03 |
| 9 | thinking of something else.  I'm thinking of Travis. | 11:02:06 |
| 10 | No, not them.  Just possibly Salle, yeah. | 11:02:09 |
| 11 | Q    Please tell me what you remember regarding | 11:02:16 |
| 12 | the substance of those communications. | 11:02:19 |
| 13 | A    I don't remember details, but the -- | 11:02:25 |
| 14 | MR. GONZALEZ:  I'm sorry.  Can I interrupt | 11:02:27 |
| 15 | just to make this clear?  To the extent you had | 11:02:28 |
| 16 | conversations with attorneys for Mr. Levandowski, | 11:02:31 |
| 17 | I'm going to let you answer that. | 11:02:33 |
| 18 | But if you had private conversations with | 11:02:35 |
| 19 | your client, Salle, Travis, or anybody else, that | 11:02:37 |
| 20 | would be privileged.  So I want to make sure you | 11:02:41 |
| 21 | draw that distinction in your head as you answer | 11:02:43 |
| 22 | that question. | 11:02:46 |
| 23 | A    Okay.  So if I limit it to conversations | 11:02:47 |
| 24 | that I had with Anthony's lawyers, because all the | 11:02:51 |
| 25 | other conversations would have been with Salle or | 11:02:56 |

| | | |
|---|---|---|
| 1 | Travis or Anthony, or -- or with Neal Chatterjee. | 11:02:58 |
| 2 | Was it Neal?  I -- I don't know.  It could -- | 11:03:04 |
| 3 |     Q   (BY MR. PERLSON) That's his name. | 11:03:07 |
| 4 |     A   -- be mistaken.  I know -- I mean, I know | 11:03:07 |
| 5 | Neal really well.  I just -- I can't remember if -- | 11:03:08 |
| 6 | I might be mistaken about Neal.  But anyway, I feel | 11:03:10 |
| 7 | like I had some conversation with Neal. | 11:03:17 |
| 8 |     But what I recall about the conversations | 11:03:19 |
| 9 | with Miles and Izzy and probably with Neal is my | 11:03:21 |
| 10 | insistence that Anthony turn over every device to | 11:03:27 |
| 11 | Uber for us to search and comply with the court's | 11:03:33 |
| 12 | order, period, end of story, and there was to be no | 11:03:37 |
| 13 | debate about this. | 11:03:46 |
| 14 |     Q   And so how many conversations do you think | 11:03:56 |
| 15 | you had with yourself on that -- that -- on the | 11:03:58 |
| 16 | subject that Mr. Levandowski's lawyers would have | 11:04:06 |
| 17 | been involved in? | 11:04:10 |
| 18 |     A   Several.  Maybe as many as five. | 11:04:12 |
| 19 |     Q   Okay.  And that would have been at or | 11:04:16 |
| 20 | around this April 20 -- | 11:04:19 |
| 21 |     A   I can't -- | 11:04:21 |
| 22 |     Q   -- time frame? | 11:04:21 |
| 23 |     A   -- I can't put it exactly in time.  There | 11:04:22 |
| 24 | was, as you know, a lot going on.  But within a | 11:04:23 |
| 25 | couple of weeks of this time period, yeah, I would | 11:04:31 |

Page 61

| | | |
|---|---|---|
| 1 | say so. | 11:04:34 |
| 2 |     Q   Did you have any conversations with | 11:04:57 |
| 3 | Mr. Levandowski regarding obtaining his devices that | 11:04:59 |
| 4 | did not include his counsel? | 11:05:08 |
| 5 |     A   I might have. | 11:05:12 |
| 6 |     Q   Okay.  When would that have been? | 11:05:14 |
| 7 |     A   Same time period. | 11:05:19 |
| 8 |     Q   Okay.  Can you identify -- let me know the | 11:05:20 |
| 9 | substance of -- of that communication? | 11:05:26 |
| 10 |     MR. GONZALEZ:  So -- so hold on.  Would | 11:05:29 |
| 11 | you agree that we're not waiving privilege by | 11:05:31 |
| 12 | allowing her to answer that question? | 11:05:33 |
| 13 |     MR. PERLSON:  Nope. | 11:05:34 |
| 14 |     MR. GONZALEZ:  Okay.  Then I'm going to | 11:05:35 |
| 15 | have to instruct you not to answer. | 11:05:37 |
| 16 |     A   Okay. | 11:05:38 |
| 17 |     Q   (BY MR. PERLSON) Did you ever have any | 11:05:50 |
| 18 | instructions with Mr. -- start over again. | 11:05:51 |
| 19 |     Did you ever have any conversations with | 11:05:55 |
| 20 | Mr. Levandowski in which he did agree to produce at | 11:05:57 |
| 21 | least some of his devices? | 11:06:02 |
| 22 |     A   Yes. | 11:06:07 |
| 23 |     Q   Okay.  When was that? | 11:06:09 |
| 24 |     A   The same time frame.  I -- I don't | 11:06:13 |
| 25 | clearly -- really, I don't clearly remember it, | 11:06:16 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | because there were hundreds of things happening at | 11:06:19 |
| 2 | this time.  I'm -- I was also running the ▇▇▇▇▇▇ | 11:06:22 |
| 3 | ▇▇▇▇▇ and just everything was going on. | 11:06:25 |
| 4 | So I don't know if that was, like, right | 11:06:32 |
| 5 | after the lawsuit was filed, two weeks after the | 11:06:34 |
| 6 | lawsuit was filed, or -- and now we're in April. | 11:06:36 |
| 7 | But I do know -- I do remember insisting | 11:06:39 |
| 8 | pretty sharply that he turn over things and that he | 11:06:46 |
| 9 | did cooperate to some extent. | 11:06:50 |
| 10 | Q    Okay.  He -- he -- you do remember that | 11:06:52 |
| 11 | Mr. Levandowski at least did cooperate to some | 11:06:57 |
| 12 | extent in turning over devices; is that fair? | 11:07:01 |
| 13 | A    I don't know if "cooperate" is the right | 11:07:05 |
| 14 | word.  He certainly gave us some devices to search. | 11:07:05 |
| 15 | Q    Some of his devices? | 11:07:08 |
| 16 | A    Yes. | 11:07:09 |
| 17 | Q    Did you ever get the two laptop computers | 11:07:13 |
| 18 | that are referred to in your April 20, 2017 e-mail? | 11:07:15 |
| 19 | A    I am not sure that we got them, but I | 11:07:30 |
| 20 | believe they were searched by another law firm. | 11:07:32 |
| 21 | Q    Okay.  Do you know what law firm that was? | 11:07:37 |
| 22 | A    I don't. | 11:07:44 |
| 23 | Q    Was it Mr. Levandowski's counsel? | 11:07:45 |
| 24 | A    It could have been Miles and Izzy.  It | 11:07:50 |
| 25 | could have been Neal.  I don't know. | 11:07:53 |

Page 63

| | | |
|---|---|---|
| 1 | Q    Okay.  And how -- and why do you -- what's | 11:07:55 |
| 2 | the basis of you thinking that they were eventually | 11:08:07 |
| 3 | searched by somebody? | 11:08:09 |
| 4 | A    Because this was megillah.  Do you know | 11:08:12 |
| 5 | what a megillah is?  It's Yiddish for long story. | 11:08:19 |
| 6 | This megillah went on for a long time, because I was | 11:08:23 |
| 7 | not going to let go of these two computers. | 11:08:28 |
| 8 | And I insisted that we get information off | 11:08:31 |
| 9 | of them, and they were insisting they weren't going | 11:08:34 |
| 10 | to give us the computers. | 11:08:39 |
| 11 | And so I believe that finally some kind of | 11:08:40 |
| 12 | a comprise was reached after a back and forth and | 11:08:43 |
| 13 | back and forth that some trusted third person would | 11:08:46 |
| 14 | review the document -- the computers.  And if | 11:08:52 |
| 15 | anything responsive in this litigation was found on | 11:08:54 |
| 16 | them, that would be provided. | 11:08:57 |
| 17 | Q    Okay.  Do you know when -- when that | 11:09:00 |
| 18 | accommodation was eventually reached? | 11:09:04 |
| 19 | A    It would have been after this e-mail went | 11:09:09 |
| 20 | out.  I just don't know when. | 11:09:11 |
| 21 | Q    Okay.  And was that accommodation | 11:09:13 |
| 22 | memorialized in some way? | 11:09:16 |
| 23 | A    I don't -- I doubt it.  I don't remember. | 11:09:21 |
| 24 | Q    Okay.  If -- if -- how could I figure out | 11:09:26 |
| 25 | what -- who -- what would you think the best source | 11:09:29 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
1    would be for me to figure out who actually did            11:09:31
2    the -- did look at those pursuant to this                 11:09:34
3    accommodation?                                            11:09:38
4         A    Miles, Izzy, Neal.                              11:09:42
5         Q    And do you know whether responsive              11:09:46
6    material was found?                                       11:09:48
7         A    I believe -- I don't -- I don't know one        11:09:49
8    way or the other.  I can't remember.  It could have       11:09:51
9    been.  It could not have been.  I just don't recall       11:09:53
10   it.                                                       11:09:56
11        Q    Okay.  And just to clear up the record --       11:09:56
12   I -- I think it's already clear.  But it -- it --         11:09:57
13   Mr. Levandowski did provide at least some of his          11:10:01
14   devices to Uber in connection with its efforts to         11:10:05
15   provide responsive information in this litigation,        11:10:10
16   correct?                                                  11:10:13
17        A    He did.  I just wish he would have              11:10:14
18   provided everything from the get-go and given full        11:10:17
19   bona fide cooperation, which he did not do.               11:10:21
20        Q    In the second-to-last paragraph of the --       11:11:48
21   your e-mail, it says that, Please understand that         11:11:53
22   your compliance with this request is crucial to           11:11:57
23   Uber's defense of the Waymo litigation and required       11:12:00
24   by our internal company policies.                         11:12:04
25             Do you see that?                                11:12:07
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | MR. GONZALEZ:  I think I'm going to | 01:28:45 |
| 2 | instruct you not to answer that question unless you | 01:28:46 |
| 3 | have nonprivileged information. | 01:28:48 |
| 4 | A    Everything I have is privileged. | 01:28:54 |
| 5 | Q    (BY MR. PERLSON) Did you agree with the | 01:28:57 |
| 6 | decision to terminate Mr. Levandowski? | 01:28:58 |
| 7 | MR. GONZALEZ:  I'll instruct you not to | 01:29:01 |
| 8 | answer, unless you agree it's not a waiver. | 01:29:01 |
| 9 | MR. PERLSON:  No. | 01:29:04 |
| 10 | MR. GONZALEZ:  In that case, I'll instruct | 01:29:06 |
| 11 | her not to answer. | 01:29:08 |
| 12 | Q    (BY MR. PERLSON) Do you know why Uber | 01:29:13 |
| 13 | didn't fire Mr. Levandowski earlier than May 26, | 01:29:14 |
| 14 | 2017? | 01:29:17 |
| 15 | MR. GONZALEZ:  I instruct you not to | 01:29:19 |
| 16 | answer that question, unless you have nonprivileged | 01:29:20 |
| 17 | information. | 01:29:22 |
| 18 | Q    (BY MR. PERLSON) Was it -- was -- before | 01:29:27 |
| 19 | Mr. Levandowski was fired on May 26, 2017, did | 01:29:34 |
| 20 | Mr. Kalanick resist firing Anthony Levandowksi? | 01:29:39 |
| 21 | MR. GONZALEZ:  I'm going to instruct you | 01:29:42 |
| 22 | not to answer. | 01:29:43 |
| 23 | Q    (BY MR. PERLSON) Do you have any | 01:30:01 |
| 24 | nonprivileged information regarding whether Waymo | 01:30:02 |
| 25 | has -- whether -- let me start over again. | 01:30:06 |

Veritext Legal Solutions
866 299-5127