1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Tel: 415.268.7000 / Fax: 415.268.7522
5
   KAREN L. DUNN (*Pro Hac Vice*)
6  kdunn@bsfllp.com
   HAMISH P.M. HUME (*Pro Hac Vice*)
7  hhume@bsfllp.com
   BOIES SCHILLER FLEXNER LLP
8  1401 New York Avenue, N.W.
   Washington DC 20005
9  Tel: 202.237.2727 / Fax: 202.237.6131

10 WILLIAM CARMODY (*Pro Hac Vice*)
   bcarmody@susmangodfrey.com
11 SHAWN RABIN (*Pro Hac Vice*)
   srabin@SusmanGodfrey.com
12 SUSMAN GODFREY LLP
   1301 Avenue of the Americas, 32nd Floor
13 New York, NY 10019-6023
   Tel: 212.336.8330 / Fax: 212.336.8340
14

15 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.
16 and OTTOMOTTO LLC

17

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| WAYMO LLC, | Case No. 3:17-cv-00939-WHA |
| Plaintiff, | |
| vs. | **DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S STATEMENT RE: INTENT TO USE LYFT INFORMATION AT TRIAL** |
| UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, | |
| Defendants. | |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

This statement responds to the Court's October 16, 2017 Order (ECF No. 2008) and explains with specificity how Defendants intend to use Lyft's information at trial. Defendants may use the Lyft information at trial as it relates to the following topics: (1) Waymo's motives in filing this lawsuit; (2) the measures taken to protect the asserted trade secrets; (3) damages; (4) the propriety of permanent injunctive relief; and (5) if necessary, in rebuttal to Waymo's arguments or statements. That said, most of the testimony that may be elicited regarding the Waymo/Lyft partnership is already part of the public record. For example, the broad framework of the Waymo/Lyft agreement—███████████████—has already been reported in the press. At trial, Defendants intend to refer only to the existence of the agreement and its general terms.[1] Uber and Ottomotto do not intend to go into the specifics of the agreement beyond what is already publicly available unless necessary to rebut Waymo's arguments or testimony.

I.  **BACKGROUND**

In May 2017, Waymo and Lyft entered into a Collaboration Agreement ("Lyft Agreement") and supporting integration plans in furtherance of a partnership intended to leverage Waymo's development efforts in self-driving cars and Lyft's ride-sharing network. When asked to describe the general nature of the partnership, Waymo's CEO stated it has two avenues: "███████████████████████████████████████" Ex. 1, Depo. of John Krafcik, at 83:18-23. Thus, ███████████████████████

---

[1] Lyft's motion to intervene characterizes the planned use of the Collaboration Agreement (Trial Exhibits 3550 and 4987) at trial as coming only from the Defendants. *See* ECF No. 2004 at 1 (". . . . Lyft understands has been disclosed as Defendants' Trial Exhibits 3550 and 4987."), 2 ("Lyft has not been informed how Defendants intend to use the Lyft-Waymo agreement at trial . . ."). That is not true. Exhibits 3550 and 4987 are duplicate copies of the Lyft-Waymo Collaboration Agreement. While Exhibit 3550 was added by the Defendants, the copy of the agreement listed as Exhibit 4987 was added to the exhibit list by Waymo. As a result, it appears that Waymo also intends to use the agreement at trial.

1  ████████████████████████████████████
2  ████████████████████████████████

3   Since the Lyft Agreement was signed, media outlets have reported on the partnership between Waymo and Lyft. And several aspects of the Lyft Agreement have been publicly-reported, including:

- the deal is intended to bring self-driving vehicle technology "into the mainstream through pilot projects and product development efforts";[2]
- the Agreement's terms include being non-exclusive;[3]
- Waymo vehicles will be available as part of a pilot program using Lyft's ride-hailing platform;[4]
- Lyft may service rides for Waymo's upcoming autonomous vehicle pilot program in Phoenix, Arizona for longer trips or those going to places Waymo has yet to map;[5]

During discovery, Uber sought documents from both Waymo and Lyft regarding their partnership. Magistrate Judge Corley quashed the subpoena to Lyft given its status as a third party to the litigation, but compelled Waymo to produce documents related to the Lyft Agreement. *See* ECF No. 832. In doing so, Judge Corley observed that the documents were relevant to, at a minimum, "Plaintiff's claim of damages" and "Plaintiff's request for permanent injunctive relief." *Id.* at 3.

## II. INTENDED USE AT TRIAL

Uber and Ottomotto may seek to discuss Waymo and Lyft's partnership in a variety of contexts at trial. One potential use goes to showing that Waymo's motive in bringing this

---

[2] Mike Isaac, Lyft and Waymo Reach Deal to Collaborate on Self-Driving Cars, N.Y. Times (May 14, 2017), https://www.nytimes.com/2017/05/14/technology/lyft-waymo-self-driving-cars.html?_r=1.
[3] Jon Fingas, Lyft and Waymo Work Together on Self-Driving Cars, Engadget (May 14, 2017), https://www.engadget.com/2017/05/14/lyft-and-waymo-self-driving-car-partnership/.
[4] Alan Ohnsman, Alphabet's Futuristic Urban Vision Includes Waymo 'Taxibots', Forbes (Oct. 17, 2017), https://www.forbes.com/sites/alanohnsman/2017/10/17/alphabets-futuristic-urban-vision-includes-waymo-taxibots/#b8cb2b1dcee7.
[5] Roger Fingas, Waymo May Launch Autonomous Ridehailing Service as Soon as October, Apple Insider (Oct. 3, 2017), http://appleinsider.com/articles/17/10/03/waymo-may-launch-autonomous-ridehailing-service-as-soon-as-october.

litigation was to harm Uber as a competitor.  As the Court recognized at the final pretrial conference and in denying Waymo's MIL No. 15, Waymo's efforts to harm competition through this lawsuit are undeniably relevant at trial.  *See* Ex. 2, Tr. of Pretrial Conf., at 70:4-6 ("It's same as the patent cases.  They want to say, *This is just one competitor trying to stymie the next competitor.*  That's a fair argument.") (italics in original).  Indeed, the Court alluded to the Waymo-Lyft partnership in questioning the merits of Waymo's MIL: "So why shouldn't they get to make this very argument that, *Hey, it isn't about trade secrets.  This is about trying to put Uber out of the business, so you and Lyft can take it over?*"  *Id.* at 64:13-16 (italics in original). Documents from Waymo ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  *See* Ex. 3 at 8, 10, 12, 16.  Waymo's partnership with Lyft, Uber's largest competitor, is therefore an important part of establishing Waymo's true motive for bringing this lawsuit.   Uber and Ottomotto may, therefore, elicit testimony from fact witnesses regarding the existence and general nature of the Lyft Agreement.  Such information is already known to the public and does not necessitate protection against public disclosure.

     In addition, as Magistrate Judge Corley observed, the Waymo-Lyft partnership is relevant to damages and the propriety of permanent injunctive relief.  Expert witnesses on both sides have provided opinions about the Lyft Agreement insofar as it relates to damages, especially with regard to its effect on determining a reasonable royalty.  *See, e.g.*, Ex. 4, Reply Report of Michael Wagner, at 37-47.  Notably, Waymo's damages expert—who is subject to a pending *Daubert* motion due to his other unreliable opinions—notes that ████████████████████████████████████████████████████████████████.  But that is exactly what the Lyft Agreement does.  *See id.* at 47.  All of the parties may therefore seek to elicit expert testimony about the Lyft Agreement in furtherance of their damages theories.  Such testimony again will likely focus on the existence of the Agreement and its general terms without getting into the specifics that are not already in the public domain.  While this testimony may also discuss the compensation structure of the Lyft Agreement—in that "███

1 ███████████████████████████████████████████████████████████████████████"—that
2 structure is hardly surprising and knowledge of it is unlikely to provide a competitive advantage
3 to an outsider. *Id.* at 46 (quoting transcript of deposition of Gerard Dwyer).

Next, the Agreement may also have implications regarding the measures taken to protect the asserted trade secrets. The extent to which Waymo's LiDAR devices are accessible by Lyft personnel and others may implicate the secrecy of the asserted trade secrets. That is especially so given that most of the asserted trade secrets are easily ascertainable once a person has access to the LiDAR device. The parties may therefore elicit testimony regarding the security of Waymo's LiDAR devices under the Lyft Agreement.

Given that Uber and Ottomotto seek only to refer to the Agreement at a high level, it may be unnecessary to present the Lyft Agreement in open court. However, Uber and Ottomotto reserve the right to present the Agreement if circumstances require. For example, the document may be needed to impeach a witness, refresh their recollection, or rebut Waymo's arguments.

The bottom line is that, at present, Uber and Ottomotto intend to refer only to the existence of the Agreement, its general terms such as those that have already been reported publicly by the media, and potentially the compensation structure of the Agreement as it may relate to damages. Of course, Uber and Ottomotto cannot predict how Waymo may use the document and thus require some flexibility to use Lyft documents, as needed, to rebut Waymo's testimony.

Dated: October 23, 2017                                    SUSMAN GODFREY L.L.P.


                                                            By: /s/ *William Christopher Carmody*
                                                            William Christopher Carmody

                                                            *Attorney for Defendant Uber Technologies, Inc. and Ottomotto LLC*

4

**ATTESTATION OF E-FILED SIGNATURE**

I, Arturo J. Gonzalez, am the ECF User whose ID and password are being used to file this Response.  In compliance with General Order 45, X.B., I hereby attest that William Christopher Carmody has concurred in this filing.

Dated:  October 23, 2017　　　　　　　　　By:　/s/ *Arturo J. Gonzalez*
　　　　　　　　　　　　　　　　　　　　　　　　Arturo J. Gonzalez