# EXHIBIT 2

```
                          Pages 1 - 207
                   UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
       Before The Honorable William H. Alsup, Judge
WAYMO LLC,                       )
                                 )
              Plaintiff,         )
     VS.                         )    NO. C 17-00939 WHA
                                 )
UBER TECHNOLOGIES, INC.; OTTO    )
TRUCKING LLC; and OTTOMOTTO      )
LLC,                             )
                                 )
              Defendants.        )
_____  )
                              San Francisco, California
                              Wednesday, September 27, 2017


                    TRANSCRIPT OF PROCEEDINGS

APPEARANCES:
Special Master:
                  Farella, Braun & Martel LLP
                  235 Montgomery Street, Suite 1700
                  San Francisco, CA  94104
                  (415) 954-4400
                  (415) 954-4480 (fax)
             BY:  JOHN LEE COOPER



Reported By: Lydia Zinn, CSR No. 9223, RMR, FCRR
             Jo Ann Bryce, CSR No. 3321, RMR, CRR FCRR
             Official Reporters
```

```
                                                               2
 1  APPEARANCES:
    For Plaintiff Waymo LLC:
 2          Quinn, Emanuel, Urquhart & Sullivan LLP
            50 California Street, 22nd Floor
 3          San Francisco, CA  94111
            (415) 875-6600
 4          (415) 875-6700 (fax)
       BY:  MELISSA J. BAILY
 5          LINDSAY COOPER
            FELIPE CORREDOR
 6          DAVID EISEMAN
            ANDREA PALLIOS ROBERTS
 7          CHARLES KRAMER VERHOEVEN

 8  For Defendant Uber Technologies, Inc.:
            Morrison & Foerster LLP
 9          425 Market Street
            San Francisco, CA 94105-2482
10          (415) 268-7000
            (415) 268-7522 (fax)
11     BY:  ESTHER KIM CHANG
            ARTURO J. GONZÁLEZ
12          MICHAEL A. JACOBS

13  For Defendant Uber Technologies, Inc.:
            Boies, Schiller & Flexner LLP
14          435 Tasso Street, Suite 205
            Palo Alto, CA  94301
15          (650) 445-6400
            (650) 329-8507 (fax)
16     BY:  MEREDITH RICHARDSON DEARBORN

17  For Defendant Uber Technologies, Inc.:
            Boies, Schiller & Flexner LLP
18          1401 New York Avenue, NW
            Washington, D.C.  20005
19          (202) 237-5235
            (202) 237-6131 (fax)
20     BY:  KAREN LEAH DUNN

21  For Defendant Uber Technologies, Inc.:
            Susman Godfrey, LLP
22          1000 Louisiana Street, Suite 5100
            Houston, TX  77002-5096
23          (713) 651-9366
            (713) 654-6666 (fax)
24     BY:  JOSEPH S. GRINSTEIN
25
```

```
                                                               3
 1  APPEARANCES:
 2  For Defendant Uber Technologies, Inc.:
            Susman Godfrey LLP
 3          1301 Avenue of the Americas
            32nd Floor
 4          New York, NY  10019-6023
            (212) 336-8330
 5     BY:  CORY S. BULAND
            WILLIAM CHRISTOPHER CARMODY
 6          IAN M. GORE
            HALLEY W. JOSEPHS
 7          SHAWN J. RABIN

 8  For Defendants Otto Trucking LLC; Ottomoto LLC:
            Goodwin Procter LLP
 9          Three Embarcadero Center
            San Francisco, CA  94111
10          (415) 733-6000
            (415) 677-9041 (fax)
11     BY:  INDRA NEEL CHATTERJEE
            BRETT MICHAEL SCHUMAN
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                               4
 1  Wednesday - September 27, 2017               7:59 a.m.
 2                    P R O C E E D I N G S
 3                          ---000---
 4       THE COURT:  Okay.  Welcome.  Please be seated.  Let's
 5  call the case.
 6       THE CLERK:  Calling Civil Action 17-939, Waymo, LLC,
 7  versus Uber Technologies, Inc., et al.  Counsel, please
 8  approach the podium and state your appearances.
 9       MR. VERHOEVEN:  Good morning, Your Honor.
10  Charles Verhoeven.  And with me is David Perlson,
11  Melissa Baily, Andrea Roberts, Lindsay Cooper, Felipe Corredor,
12  and David Eiseman.  We're ready to go.
13       THE COURT:  Thank you.
14       MR. GONZÁLEZ:  Good morning, Your Honor.
15  Arturo González, Michael Jacobs, from Morrison Foerster, for
16  Uber.
17       MS. DUNN:  Good morning, Your Honor.  Karen Dunn and
18  Meredith Dearborn, from Boies Schiller, for Uber.
19       MR. CARMODY:  Good morning, Your Honor.
20  Bill Carmody, with Susman Godfrey.  And with us I have
21  Joe Grinstein and Shawn Rabin; Cory Buland, Ian Gore, and
22  Halley Josephs.
23       THE COURT:  Good.  Welcome.
24       MR. CHATTERJEE:  Good morning, Your Honor.
25  Neel Chatterjee and my colleague, Brett Schuman, for
```

1  can argue that those things are not in this case.
2      So they're focused on bad faith. We have included a jury
3  instruction on the jury form, on the Verdict Form -- bad
4  faith -- that we would like to present.
5      But whether or not Your Honor agrees with us -- and we
6  will argue that separately -- this is relevant both to the
7  facts that are already in this case, and it is absolutely
8  intertwined with something very important that is happening in
9  this case that they want to make sure to keep out, which is the
10 lawyer-driven and competitive nature of what drove this company
11 to say, *You know, this first investigation is not good enough.*
12 *Please go back, because we might need to act before this*
13 *acquisition closes.*
14     So they want to put on evidence of our reaction to their
15 Complaint, but they want to make sure nobody knows why they
16 filed it. And that doesn't make any sense.
17         THE COURT: What do you say to the Levandowski point
18 that --
19         MS. DUNN: Oh.
20         THE COURT: -- as to the empty chair, and so forth?
21         MS. DUNN: Well, first I want to correct something.
22 While, you know, Waymo says we didn't sue, we did sue
23 Levandowski, but they have not sued Levandowski for
24 trade-secret theft. And a brick is not a wall. But once you
25 get a number of bricks, which we now have, because of these

1  Sasha Zbrozek documents, because of the intertwined-competition
2  theme, and because they didn't sue Anthony Levandowski for
3  trade secrets anywhere, even though they clearly sued him
4  somewhere for something, just not this, it starts to resemble a
5  wall.
6          THE COURT: What do you mean: A wall?
7          MS. DUNN: Which is that there is -- this is a -- a
8  lawsuit that at least in substantial part was motivated by the
9  competitive relationships between these companies, and Google's
10 decision that they were going to compete with Uber, and not
11 partner with Uber. And it is part and parcel of the documents
12 that we've already seen that Waymo tried to keep from us.
13     But this is a very important part of the presentation of
14 this case. And if they can come in --
15         THE COURT: I don't understand. I asked you about
16 Levandowski, and you veered off on competition again.
17         MS. DUNN: I apologize.
18         THE COURT: They don't want the fact that -- they
19 don't want you saying, *Hey, they didn't sue Levandowski.*
20 *Levandowski is the bad guy. They should have sued him. We're*
21 *innocent.*
22     So what do you say to that?
23         MS. DUNN: That -- I don't see the problem with that.
24 They didn't sue him for trade-secrets theft. They've made this
25 person's conduct the centerpiece of their entire case. He's --

1  Your Honor has ruled that he might come to court, and take the
2  Fifth. So the jury is going to have questions about this. And
3  it is absolutely germane to everything that's going on here for
4  the jury to know that Mr. Levandowski has not been sued for
5  Mr. Levandowski's conduct, at all; and instead, Uber has been
6  sued, which -- you know, even though nothing has been found at
7  Uber.
8      So you have to wonder. And the jury will wonder, *Huh.*
9  *What's that about?*
10     And so, yes, we do think that that's relevant.
11         THE COURT: Okay.
12         MR. EISEMAN: Can I briefly respond, Your Honor?
13         THE COURT: Please respond.
14         MR. EISEMAN: First of all, with respect to not suing
15 Mr. Levandowski for trade-secret misappropriation, we have the
16 right to sue Uber and the other defendants in this court -- in
17 federal court -- for trade-secret misappropriation. And we
18 made the decision not to include Mr. Levandowski under that
19 claim, because we wanted to stay in federal court. There's
20 nothing improper about that. There's nothing improper about
21 enforcing our intellectual-property rights.
22     And so for them to try to turn documents relating to the
23 concerns that Waymo had and Google had about Mr. Levandowski's
24 departure into some argument that we've brought this lawsuit in
25 bad faith, when they aren't alleging an antitrust claim, some

1  sort of sham-litigation claim --
2          THE COURT: But you know, in every patent case --
3      This is no longer a patent case, but in every patent
4  case -- I bet I could go find ten examples where you've done
5  it, yourself -- the defendant always argues, *Hey, this is not*
6  *about patents. This is not about IP. This is simply one*
7  *competitor trying to put the other one out of business.* That
8  happens all of the time. Right?
9          MR. EISEMAN: But in --
10         THE COURT: Have you ever made that argument? I bet
11 you have.
12         MR. EISEMAN: No. I've --
13         THE COURT: So why shouldn't they get to make this
14 very argument that, *Hey, it isn't about trade secrets. This is*
15 *about trying to put Uber out of the business, so you and Lyft*
16 *can take it over*?
17         MR. EISEMAN: Well, because the documents they cite
18 in their motion --
19     For example, Exhibit 37 is an e-mail recounting a
20 conversation that Mr. Page had, where he expressed concern; but
21 the concern that was expressed was that Mr. Levandowski was
22 leaving Waymo, and soliciting employees from Waymo.
23     And that's a legitimate concern. That's not some sort of
24 anticompetitive purpose. So that it's true that in general in
25 cases like this, Your Honor, that people talk about fierce

PROCEEDINGS 65

competition. And we're not suggesting that both sides won't do that in this case; but they shouldn't be allowed to use documents out of context. It's a classic 403, where we're going to end up litigating a bunch of side issues.

THE COURT: Well, maybe there's some specific documents where I could say, *Yeah, that's too far. And that's misuse*; but just on general-themes point --

MR. EISEMAN: Well, Your Honor --

THE COURT: -- I'm having some trouble with your point.

MR. EISEMAN: If Your Honor's taking this under submission -- and it sounds like you are -- we'd ask you to look at Exhibit 37 and Exhibit 43.

THE COURT: Wait a minute. Let me write those down. Exhibit 37 and 43. Okay.

MR. EISEMAN: And we'd ask you to look at those -- they're attached to the opposition; the defendants' opposition to our motion -- because those are the kinds of documents we're concerned about.

And then lastly, Your Honor, on the -- again, going back to the empty-chair argument that we feel very strongly about, for the reasons we've put in our papers and for the reasons we've mentioned. And we'd ask you to not let them make that argument, because we have a legitimate reason --

THE COURT: Are you going to make the empty-chair

PROCEEDINGS 66

argument? If you are, I think you would wind up regretting it, because I would interrupt, and say to the jury, *Okay. Mr. Levandowski is not here. That's true. He's not a defendant. However, they have the right to sue Uber for whatever wrongs it did, if any. And if you find, ladies and gentlemen of the jury, that Uber did something wrong, then they're liable for that, even if Levandowski would also be liable for that. And this argument about the empty chair is bogus.* Then I will spell it. B-o-g-u-s.

So I have a feeling I'm putting you on notice I would not allow that argument.

MS. DUNN: We have heard you.

THE COURT: If you even go close to it, I would interrupt. Without further consultation, I would tell the jury just what I said. So that part, I agree with you on, but -- but --

MR. GONZÁLEZ: Your Honor, on the empty chair --

THE COURT: No. You're not going to get to do this, Mr. González. That would just be a litigation trick.

MR. GONZÁLEZ: No, no. No. This not a trick.

If they, in their Opening Statement, spend two hours talking about Anthony Levandowski, I assume we can say, *Anthony Levandowski is not the defendant here. Uber is.*

THE COURT: Of course, you can say that.

MR. GONZÁLEZ: Okay.

PROCEEDINGS 67

THE COURT: What you can say is --

You can't imply that they don't have the right to sue you.

What you can say is that you're the defendant, and they've got to prove the case again you.

MR. GONZÁLEZ: Exactly.

MS. DUNN: Right.

THE COURT: That's fair. You can say that.

MS. DUNN: Your Honor, as to the first point --

THE COURT: But I want to come back. We've got to tell the jury something about Levandowski and his role. They will be bothered about this from the very get-go. And I deal with juries all of the time, and I know how they think. They are going to --

I'm going to tell them something. If you-all lawyers don't give me help, I'm going to make up my own instruction. And I'll just tell them *sua sponte* that there's another arbitration going against Levandowski. So if you don't come up with something cogent to tell them, I'm going to do it on my own.

MR. EISEMAN: We'll work with opposing counsel to come up with an instruction.

THE COURT: All right. Please do. All right.

MS. DUNN: Your Honor, just on the first point, very quickly, the documents are attached to our motion, but this is what we're talking about: Their meeting notes from August of

PROCEEDINGS 68

2016, where it says Uber is generally considered to be Chauffeur's main competitor, which contradicts what they learned from Anthony, with his intent to not be in the same space and compete against Google.

THE COURT: Whose is this? Is this a Waymo document?

MS. DUNN: Waymo meeting notes from August of 2016.

It goes on to say, *If Google were to take actions on preventing the acquisition, we need to move as quickly as possible. Look at prior to Anthony's departure and course of his employment whether or not they took with them Confidential Information or trade secrets of the business. Timing here is important, since we have to decide whether we need to take some action before the Transaction closes.*

Okay? So --

THE COURT: Okay. So, so what?

MS. DUNN: So the point is that their investigation into Anthony was tied and in the same documents as their discussion of competing with Uber, and wanting to prevent the acquisition, which is a rather major point.

MR. EISEMAN: But Your Honor, in fact, the acquisition went forward. And it closed. And Google and Waymo didn't take the action that is suggested in this memo.

THE COURT: Well, I know. I'm not --

When we get to the issue of the mitigation thing, I am leaning against Uber on that, and in your favor on that.

        I think that, however, this -- what I just heard, though,
is relevant to something else.  It's not just --
        You know, just because you might win on mitigation of
damages, that e-mail would tend to show that Waymo felt some --
knew that if they were going to try to block the acquisition,
they ought to be looking into where these trade secrets --
        And a jury might conclude from the time that it took, even
though it might not be enough to knock out the case as a matter
of law -- but from the time it took you to eventually get your
act together and bring a lawsuit, that maybe Sasha was correct,
and these were low-grade trade secrets, and that that was the
-- so that it reflects on the --
        In other words, if these were the Crown Jewels, you would
have been in court the next day; but since they weren't the
Crown Jewels and they were low-grade, it took a long time to
get this lawsuit together.
        Now, I'm not saying I buy the argument.  I'm just saying a
reasonable jury could buy the argument, based on what I just
heard.
            MR. EISEMAN:  Your Honor, obviously, we disagree with
the concept that any --
            THE COURT:  This is just a jury argument they can
make.
            MR. EISEMAN:  It would be a jury argument that they
could make if they had an antitrust sham-litigation claim, or

some sort of unfair-competition claim.
        But the fact is this is an affirmative trade-secret claim
we're bringing.  And it's just --
            THE COURT:  It's same as the patent cases.  They want
to say, *This is just one competitor trying to stymie the next
competitor*.  That's a fair argument.  They make it in every one
of these patent cases.  I know you've made that argument.  I
could go back and find it.  So I think that's okay.  You can
make the argument:  Just trying to stamp out competition.
That's okay.  You're going to have to suffer that -- that
thing.
        And on Levandowski, they cannot make the empty-chair
argument.  That's clear.
        But we have to explain.  Levandowski's name's going to be
all over this case.  We have to explain that he is being sued
in some arbitration.  And you lawyers figure out how to word
that.
            MR. EISEMAN:  We will, Your Honor.  Thank you.
            MS. DUNN:  Thank you, Your Honor.
            THE COURT:  All right.  Hang on a minute.
        We're not even halfway through this hearing.
        So okay.  While we're on that subject, Motion *in Limine*
Number 1, Waymo wants to preclude defendants from presenting
their bonus theory about 14,000.
        Now, can I just give you my main concern?

        I don't quite see how any of what you have come up with
gets admitted into evidence, because --
        I'm talking now to Uber.
        -- because it's hearsay.  So how do you get around the
fact that Kalanick is willing to come in and say that
Levandowski told him?  This is Hearsay 101.  So I don't see how
you get around that.
            MS. DEARBORN:  Well, so, Your Honor, this -- this is
a fundamental point for this motion, which is that we accept
Your Honor's -- although we disagree with it, we accept Your
Honor's ruling that the March 29th, 2017, conversation between
Mr. Levandowski and Mr. Kalanick is excluded from evidence.
That is not what this motion is about.
        This motion is about Uber's other evidence; other
nonprivileged evidence.
            THE COURT:  Good.  Give me one admissible piece of
evidence that would support the theory that he did this for
bonus reasons.
            MS. DEARBORN:  So the timing of Mr. Levandowski's
downloads in relation to the timing of his bonus payments is
one.
        The structure of the Chauffeur Bonus Plan, which created
perverse incentives, is another.
        The structure of the Bonus Plan that created incentives
for Google to undervalue the project -- Project Chauffeur -- is

another.
        Testimony from Google's witnesses that they were -- that
they were nervous about receiving their bonus payments in
December of 2015; that negotiations were contentious; that they
were being conducted by people with -- with no -- with poor
communication between the parties; that -- or between --
between the members of the team and those who were conducting
the negotiation.
        All of that is circumstantial evidence, Your Honor.  We
acknowledge that.
        But there is no privilege issue here, and there's no
hearsay issue here.
        There -- these are -- it is circumstantial evidence that
the timing of -- that the timing of all of this lines up.
        And, Your Honor, I want to be very clear.  Waymo is going
to marshal its own circumstantial evidence in service of its
own preferred theory as to why Mr. Levandowski may have done
what he did.  They are going to say, *Well, the timing of his
downloads lines up with meetings with Uber executives*.
        All we ask is exactly the same opportunity:  The
opportunity to marshal circumstantial evidence of the timing of
the downloads, and other evidence from Google's own files, from
Google's own witnesses, from our own witnesses who were there
at the time, to talk about the issue.
            THE COURT:  Let me ask you about the March

PROCEEDINGS 205

1  presence of the jury unless it's so obvious that I might say,
2  "Can I have a stipulation to excuse Mr. So-and-So?"
3     But most of the time if I think it's even arguable one way
4  or the other, I would wait till the next break and then I would
5  say, "Okay. Any challenges for cause?"  Then you would say,
6  "Yeah, we want to challenge 1 and 2."  Then I would hear you
7  out on that, hear the other side out.
8           MR. GONZALEZ:  Thank you, Your Honor.
9           THE COURT:  That's the way it works.
10          MR. EISEMAN:  Your Honor -- oh, Mr. Carmody?
11          MR. CARMODY:  No, I'm fine.
12          MR. EISEMAN:  One clarification, on the juror
13 questionnaire, Question 9, we had understood that the Court was
14 going to mail that questionnaire out.
15          THE COURT:  No.  No, no, no.  They're going to fill
16 it in when they get here in the courtroom, and you will not get
17 the answers until that person is called forward.
18          MR. EISEMAN:  Understood, Your Honor.
19          THE COURT:  I don't want anybody -- I know you
20 promised me you won't do that, but I don't want any possible
21 jury consultant or somebody sneaking that and invading the
22 privacy of those jurors, but I will give it to you when they
23 show up.
24    The one thing that we ought to discuss is if there is an
25 obvious question like "I hate Uber."  Let's say they said, "I

PROCEEDINGS 206

1  hate Uber and I wouldn't use Uber if it was the last cab on
2  earth."  I would just excuse that person.  You're not going to
3  get a chance to rehabilitate them.
4     So you will get -- we'll get a few of those on both sides.
5  They could say the same thing about Google.  So I think that's
6  a small problem that I think you will both agree to and we'll
7  solve that later.
8           MR. EISEMAN:  Thank you, Your Honor.
9           THE COURT:  Here's another problem we need to
10 address.  You know how I feel.  I feel the public should hear
11 as much of the evidence as possible, so I want the parts that
12 have to be on a closed courtroom -- right now I'm just talking
13 trade secrets.  I think we ought to try to segregate that to a
14 given day or you come up with a practical way so that we don't
15 have the problem of having to send witnesses -- I'm sorry --
16 the public in and out of the courtroom.
17    So think about that in your organization of witnesses,
18 that we have a segment where the courtroom's cleared, the jury
19 can hear it; but what we don't have is in, out, in, out, over
20 the course of a day.  It just is not good for the -- it's not
21 good for the jury because there's all that disruption, but at
22 the same time the public has a right to hear what goes on in
23 their District Court.
24    I think I've run out of questions.  Do you have anything
25 that I forgot?  She says no.

PROCEEDINGS 207

1     I will see you again what day?  Next week on the motion
2  for continuance.  I still am trying my best to keep the trial
3  date on October 10th.  It would be a major disruption in my
4  calendar to move it, but I am going to be fair to both sides,
5  and I want to see you back here on the 3rd?
6           THE CLERK:  Yes.  At 10:30.
7           THE COURT:  What day is it?
8           MR. VERHOEVEN:  It's October 3rd.
9           THE COURT:  The 3rd?
10          MR. VERHOEVEN:  Yes.
11          THE COURT:  And what time will you be here?  Do we
12 have a time?
13          THE CLERK:  8:00 o'clock.
14          THE COURT:  8:00 o'clock.  Okay.
15    So unless you have more, it's now almost 1:00 o'clock, we
16 will break for now, and then I will see you on October 3rd.
17 All right?
18          MR. VERHOEVEN:  Thank you, Your Honor.
19          MR. CARMODY:  Thank you, Your Honor.
20          THE COURT:  All right.  Good luck to both sides.
21          (Proceedings adjourned at 12:39 p.m.)
22                          ---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Wednesday, September 27, 2017

_____
Jo Ann Bryce, CSR No. 3321, RMR, CRR
U.S. Court Reporter

_____
Lydia Zinn, CSR No. 9223, FCRR
U.S. Court Reporter