Steven D. Zansberg, 177528
zansbergs@ballardspahr.com
**BALLARD SPAHR LLP**
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone: 303.292.2400

*Attorneys for Proposed Intervenors Associated Press, Bloomberg L.P., Buzzfeed, Inc., MediaNews Group, Inc., d/b/a Digital First Media, Dow Jones & Co., The First Amendment Coalition, Gizmodo Media Group, LLC, The Hearst Corporation, The New York Times Company, Reuters America LLC, and Vox Media, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　　　Defendants. | Case No. 3:17-CV-00939<br><br>**MEDIA COALITION'S REPLY IN SUPPORT OF MOTION TO INTERVENE FOR LIMITED PURPOSE OF OPPOSING CLOSURE MOTIONS AND VINDICATING THE RIGHT OF PUBLIC ACCESS TO THIS PROCEEDING**<br><br>Date:  November 8, 2017<br>Time:  8:00 a.m.<br>Courtroom:  8, 19th Floor |

## I. INTRODUCTION

Because neither party opposes the Media Coalition's Motion to Intervene, no reply in support of intervention is required. As invited by the Court [Dkt. No. 2008], the Media Coalition submits this memorandum to respond to Lyft's Motion to Intervene ("Lyft's Motion"), which asks the Court to close the courtroom whenever certain information regarding the Lyft-Waymo partnership agreement is discussed. *See* Dkt. No. 2004.

Lyft's request to close the courtroom should be denied for two independent reasons: First, Lyft fails adequately to identify a "compelling interest" sufficient to overcome the First Amendment access right that it concedes to apply to this case. Instead, Lyft offers vague, speculative and implausible assertions of potential harm that courts have routinely found inadequate to overcome the constitutional interests at stake. Second, even if Lyft had established a compelling governmental interest worthy of protection, it essentially concedes that any such interest can adequately be protected by means less restrictive than closing the courtroom – in fact, Lyft proposes three options that it describes as "reasonable alternatives" to courtroom closure.

Because the First Amendment prohibits the closure of a civil trial unless the Court finds both that open proceedings would create a substantial probability of harm to a compelling governmental interest and that no "less restrictive means" are available, Lyft's motion to close the courtroom should be denied.

## II. ARGUMENT

### A. Lyft Fails To Overcome The Public's Constitutional Right Of Access

Lyft concedes that the First Amendment right of public access applies fully to the trial of this dispute, Lyft Motion at 3-4, but fails to meet its burden to overcome the constitutional access right. It argues only that the courtroom should be closed because its partnership agreement with Waymo is "highly confidential" and "highly sensitive." *Id*. at 3. These conclusory claims do not establish the existence of a "compelling interest" sufficient to abridge the access right and prohibit the press and public from observing the trial of this case. *See* Media Coalition's Motion to Intervene ("Media Coalition Mot.") at 10 [Dkt. No. 1919]; *see also Allegro Corp. v. Only New Age Music, Inc.*, 2004 WL 1088301, at *1 (D. Or. May 14, 2004) (denying motion to close

courtroom, despite affidavit from CEO indicating that, absent closure, "sensitive information" will be revealed, which could be "highly damaging to [movant's] business").

Moreover, as this Court is fully aware, the mere *possibility* of harm is insufficient to defeat the First Amendment access right.  *See* Media Coalition Mot. at 11.  Yet that is all Lyft offers.  It asserts that unless the courtroom is closed, during the trial others "**could** review the deal terms . . . parrot Lyft's business strategies . . . or craft agreements to undercut Lyft's expansion into the autonomous driving space."  *See* Matthiesen Decl. ¶ 4 [Dkt. No. 2004-1] (emphasis added).

The harms that concern Lyft are not only speculative, they are highly implausible.  For example, Lyft's "business strategies" for entering the autonomous driving market are already well known and widely reported.[1]  It is hard to fathom how disclosing aspects of its partnership with Waymo would create a new avenue for competitors to "parrot" those strategies.  Nor does Lyft identify a single competing rideshare company that is aggressively seeking to gain entry to the autonomous driving market (other than Uber, who, for obvious reasons, is not likely to partner with Waymo anytime soon) – let alone one that is in a position to undercut Lyft's competitive standing by accessing information about its partnership with Waymo.

Finally, Lyft's observation that certain documents were designated "attorneys' eyes only" during *discovery*, Lyft Motion at. 4, does nothing to undermine the constitutional right of access that attaches to those documents if they are offered *at trial*.  *See, e.g.*, *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003) (noting that once documents are submitted in

---

[1] It has already been is publicly reported that Lyft's strategy for entering the autonomous vehicle market, among other things, seeks to employ an "open" technology platform that will pair Lyft's self-driving technology with other business partners.  That approach stands in stark contrast to Uber, which plans to implement a vertically-integrated strategy that will have customers use its self-driving technology exclusively through its own platform.  *See, e.g.*, Eric Newcomer, *Lyft Outlines Self-Driving Car Plans After Earlier Partnerships*, BLOOMBERG, https://www.bloomberg.com/news/articles/2017-07-21/lyft-outlines-self-driving-car-plans-after-earlier-partnerships (July 21, 2017, 11:00 AM); Timothy B. Lee, *Lyft's Strategy:  Be the Android of the self-driving car business*, ARSTECHNICA, https://arstechnica.com/cars/2017/09/lyfts-ambitious-plans-to-win-the-self-driving-wars/ (Sept. 9, 2017, 9:00 AM); Alan Ohnsman, *Lyft Joins Robocar Race With Plans For An Open Platform – And Its Own Tech*, FORBES, https://www.forbes.com/sites/alanohnsman/2017/07/21/lyft-joins-robocar-race-with-plans-for-an-open-platform-and-its-own-tech/#712e86e75eb4 (July 21, 2017, 11:00 AM).  Indeed, Lyft openly discusses its strategy on its own website.  *See* LYFT – OPEN PLATFORM, https://take.lyft.com/open-platform/ (last visited Oct. 18, 2017).

connection with deciding the merits of a case, "they lose their status of being raw fruits of discovery") (quoting *Rushford v. The New Yorker Magazine*, 846 F.2d 249, 252 (4th Cir. 1988); *Baxter Healthcare Corp. v. Fresenius Medical Care Holdings, Inc.*, 2009 WL 734097, at *2 (N.D. Cal. Mar. 18, 2009) (denying motion to seal certain documents marked "Highly Confidential—Outside Attorneys' Eyes Only"); *MMCA Group Ltd. v. Hewlett-Packard Co.*, 2008 WL 5411340, at *1 (N.D. Cal. Dec. 29, 2008) ("As noted, however, a designation of 'highly confidential-attorneys' eyes only' is insufficient to establish the documents are sealable").

For each and all of these reasons, Lyft fails to establish that any compelling reason necessitates closure of the courtroom in this case.

### B. Lyft Concedes That There Are Adequate Alternatives To Closing The Courtroom

Lyft argues that the Court "[s]hould [t]ake [o]ther [r]easonable [m]easures" to protect its asserted interest in confidentiality if the courtroom is not closed. Lyft Motion at 4. Lyft then identifies three alternatives to closing the courtroom that would adequately alleviate its confidentiality concerns. *See id*. The existence of these alternatives confirms that closing the courtroom would be unconstitutional—closure cannot be ordered without a judicial finding that there is no available alternative to protect the threatened compelling interest. *See* Media Coalition Mot. at 14 ("courts must treat closure as a last resort – one they can employ only after engaging in a thorough analysis of reasonable alternatives and concluding that none of those alternatives would be sufficient to protect the compelling interest at stake") (citing cases).

Even if Lyft had established a substantial probability of harm to a compelling governmental interest (and it has not), it's acknowledgement that there are several adequate alternatives to closure further requires that Lyft's motion to close the courtroom be denied.

### III. CONCLUSION

For the foregoing reasons, the Court should deny Lyft's request in its entirety.

/s/Steven D. Zansberg
Steven D. Zansberg, SBN 177528
zansbergs@ballardspahr.com
**BALLARD SPAHR LLP**
*Attorneys for Proposed Intervenors Associated Press,*

*Bloomberg L.P., Buzzfeed, Inc., MediaNews Group, Inc., d/b/a Digital First Media, Dow Jones & Co., The First Amendment Coalition, Gizmodo Media Group, LLC, The Hearst Corporation, The New York Times Company, Reuters America LLC, and Vox Media, Inc.*

Date:   October 23, 2017

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this 23rd day of October, 2017, served via the Court's electronic filing system, a true and correct copy of the above and foregoing on all counsel of record.

*s/ Steven D. Zansberg*
Steven D. Zansberg

MEDIA COALITION'S REPLY IN SUPPORT OF MOTION TO INTERVENE                         Case No. 3:17-cv-00939