QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:   (415) 875-6600
Facsimile:   (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S SUPPLEMENTAL OFFER OF PROOF REGARDING OTTO TRUCKING, AND SUPPLEMENTAL BRIEF IN SUPPORT OF BOTH ITS OPPOSITION TO OTTO TRUCKING'S MOTION FOR SUMMARY JUDGMENT (DKT. 1526-4) AND ITS OPPOSITION TO OTTO TRUCKING'S MOTION FOR A SEPARATE TRIAL (DKT. 1934)**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: December 4, 2017<br><br>**PUBLIC REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL** |

**TABLE OF CONTENTS**

**Page**

I. BACKGROUND ...................................................................................................................1

II. SUPPLEMENTAL OFFER OF PROOF ............................................................................2

    A. Otto Trucking's Misappropriation Of Waymo's LiDAR Trade Secrets....................2

        1. ▇▇▇▇▇▇ nfirms Misappropriation By The Founders And ▇▇▇▇▇▇ Of Otto Trucking ...........................................................2

        2. Files In Mr. Levandowski's Possession Relate To Each Of The Nine LiDAR Trade Secrets Waymo Designated For Trial ......................................5

        3. Use of the Trade Secrets Has Benefited the Joint Work Conducted By and Among Otto Trucking, Otto Trucking's Founders and ▇▇▇▇▇▇ Uber, and Ottomotto ..............................................................7

    B. Otto Trucking's Misappropriation Of Waymo's ▇▇▇▇▇▇ ▇▇▇▇▇▇ .......................................................................................................9

III. SUPPLEMENTAL OPPOSITION TO OTTO TRUCKING'S MOTION FOR SUMMARY JUDGMENT .................................................................................................10

    A. Otto Trucking is Liable for Trade Secret Misappropriation (LiDAR).....................10

        1. Otto Trucking Is Directly Liable .................................................................10

        2. Otto Trucking Is Vicariously Liable for the Acts of Its Principals .............11

        3. Otto Trucking Ratified the Acts of Its Principals........................................13

        4. Defendants are Jointly and Severally Liable ...............................................16

    B. Otto Trucking is Liable for Trade Secret Misappropriation ▇▇▇▇▇▇ ▇▇▇▇▇▇ ..........................................................................................................16

    C. Otto Trucking Has Not Produced Any Evidence to Rebut Waymo's Proof...........17

IV. SUPPLEMENTAL OPPOSITION TO OTTO TRUCKING'S MOTION FOR A SEPARATE TRIAL ...........................................................................................................17

    A. Waymo Would Need to Present Information Regarding the Stroz Investigation at Both Trials, which Inconveniences Third Party Witnesses............17

    B. Uber Will ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ .......................................18

V. CONCLUSION ..................................................................................................................18

I.  **BACKGROUND**

On October 4, the Court ordered Waymo to submit a supplemental offer of proof regarding Otto Trucking. (Dkt. 1954.) On October 16, the Court ordered the parties to supplement currently-pending motions based on newly discovered evidence. (Dkt. 2009.) Pursuant to those orders, and for the convenience of the Court, Waymo hereby submits its supplemental offer of proof and supplemental briefs in support of its opposition to Otto Trucking's motion for summary judgment (originally filed at Dkt. 1526-4) and its opposition to Otto Trucking's motion for a separate trial (originally filed at Dkt. 1934) together in one document.

The recent production of the Stroz Report and related materials has only clarified Otto Trucking's liability for – and unjust enrichment by – its trade secret misappropriation. That discovery has confirmed that Anthony Levandowski and Lior Ron—Otto Trucking founders, principals, and ▮▮▮▮▮▮—kept significant amounts of data describing Waymo's trade secret information in their possession after leaving Waymo and forming Otto Trucking. That discovery has also revealed that ▮▮▮▮▮▮ As a result, Waymo's LiDAR-related trade secrets infiltrated the ▮▮▮▮▮▮ the same way—and via the same shared employees—that they infiltrated Ottomotto and Uber.

In addition, the Stroz Report has revealed that Don Burnette, another Otto Trucking co-founder and third largest shareholder, retained information regarding Waymo's ▮▮▮▮▮▮—which is critically important for ▮▮▮▮▮▮ after leaving Waymo. Subsequent discovery has confirmed that ▮▮▮▮▮▮

As before, but particularly in light of this newly discovered evidence discussed below, the Court should deny Otto Trucking's motion for summary judgment and let the jury hold all three

defendants accountable. A jury should decide Otto Trucking's liability for trade secret misappropriation.

The Court should also deny Otto Trucking's motion for a separate trial. It remains the case that the evidence regarding trade secret misappropriation for all three defendants will overlap significantly at trial. With respect to all Defendants, Waymo will present evidence related to—for example—Waymo's development of its trade secrets, the Stroz report, the Diligenced Employees' retention of Waymo proprietary and trade secret information, and Uber's indemnification of Bad Acts committed by the Diligenced Employees, Ottomotto, and Otto Trucking with respect to Waymo's trade secrets. Waymo will present that evidence through the same Waymo, Uber, Otto Trucking, and Stroz witnesses. Moreover, pursuant to the April 11, 2016 Put/Call Agreement entered into by Uber and Otto Trucking, ███████████████████████████████████████████████████████████████████████████████████████████████ ███. In light of (i) the overlap in the issues, evidence, and witnesses and (ii) the relationship between the parties, bifurcating Otto Trucking's trial would constitute a significant waste of resources. Otto Trucking's motion for a separate trial should be denied.

## II. SUPPLEMENTAL OFFER OF PROOF

Waymo submitted its initial Offer of Proof regarding Defendants' trade secret misappropriation (Dkt. 1371-4) on August 25. On September 13, the Federal Circuit issued an opinion affirming this Court's rulings that Defendants and Stroz must produce the Report and its exhibits, along with communications, documents, and devices that were withheld on grounds of a supposed common-interest privilege before April 11, 2016. The production of the Stroz Report and related materials has provided additional evidence demonstrating Otto Trucking's liability for trade secret misappropriation. Waymo supplements its offer of proof accordingly below.

### A. Otto Trucking's Misappropriation Of Waymo's LiDAR Trade Secrets

#### 1. *The Stroz Report Confirms Misappropriation By The Founders And ███ ███ Of Otto Trucking*

The Stroz Report and related discovery confirmed that Mr. Levandowski—one of Otto Trucking's founder and its ████████████—had a massive amount of Waymo proprietary

information in his possession after he left Waymo on January 27, 2016 and formed Otto Trucking on February 1, 2016. (*See generally*, Dkt. 1928-24 at 8-16.) The Report and related discovery further revealed that Stroz found it "difficult to believe" at least some of Mr. Levandowski's representations regarding his possession of Waymo information (*id.* at 11) and could not confirm other such representations (*id.*), including Mr. Levandowski's story regarding Drobo disks described as containing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (Ex. 2, UBER00324084). The Report and related discovery revealed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. 1, Maugeri Rough at 152:1-13.) The Stroz Report and related discovery revealed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. 1928-24 at 8, 12, 13) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. 1 at 153:1-154:19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Crain Report § VI)[1] That forensic investigation also raised a host of issues not addressed by the Stroz Report: Where is the card reader that Mr. Levandowski attached to his work laptop after downloading 14,000 files from Waymo's servers (and before attempting to wipe the laptop)? (*Id.* at §VII.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at § VI(C).) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Waymo is filing the Expert Report of Andy Crain concurrently with its Motion for Leave To Amend.

1   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* at §
2   VI(A).)

3     The Stroz Report also revealed that another Otto Trucking founder and principal (and its
4   second largest shareholder), Lior Ron, retained possession of confidential Waymo data while
5   working on behalf of Otto Trucking.  As the Report explains, "Ron's media contained relevant
6   pictures and videos primarily relating to autonomous vehicles, lasers, graphs, and whiteboard
7   snapshots of notes and diagrams, including: Pictures of components/connections and parts of
8   autonomous vehicles (Exhibit 123); Confidential material related to Long Range Lasers (Exhibit
9   124); Pictures and videos of digital interpretation of a car driving (Exhibit 125); Graphs of driving
10  statistics (Exhibit 126); and White board pictures (Exhibit 127)."  (Dkt. 1928-24 at 24.)  Stroz also
11  identified "Approximately 62 source code files [] from Ron's devices or accounts," though it made
12  no effort to "determine whether these files were related to Google self-driving cars or otherwise
13  constituted Google confidential information."  (*Id.*)  Like Levandowski's devices, Ron's devices
14  were ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.
15  (Ex. 1, Maugeri Rough at 152:1-13.)

16    And, with respect to both Mr. Levandowski and Mr. Ron, Stroz's findings indicate a
17  concerted effort was made to cover their tracks, at least with respect to communications amongst
18  themselves and with respect to the information and devices they chose to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
19  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
20  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 19, Suhr 10/13 Tr. at 67:23-69:21.)  For instance, the Report notes
21  that "there was an effort by Ron, Levandowski, and their Ottomotto colleagues to delete text
22  messages in real time."  (Dkt. 1928-24 at 21; *id.* at 14.)  Mr. Levandowski "attempted to empty the
23  Trash bin on his MacBook Pro while he was at Stroz Friedberg's office" for his interview.  (*Id.* at
24  13.)  Mr. Ron was searching for "how to secretly delete files mac" and Mr. Levandowski was
25  instructing Ron to "Make sure you delete all the messages tonight on both your PC and iPhone" in
26  advance of their Stroz interviews.  (*Id.* at 20.)

27    This evidence (which is just a sampling of what the Stroz discovery showed and what the
28  Discovia forensic investigation uncovered) properly supports a jury finding that Mr. Levandowski

and Mr. Ron purposefully stole Waymo confidential and proprietary information in connection with their generally contemporaneous departures from Waymo, discussions with Uber, and formation of Ottomotto and Otto Trucking.

### 2. *Files In Mr. Levandowski's Possession Relate To Each Of The Nine LiDAR Trade Secrets Waymo Designated For Trial*

The production of the Stroz materials has confirmed that Mr. Levandowski stole Waymo information directly tied to each of the nine LiDAR trade secrets Waymo designated for trial.

For example, the document claimed as Trade Secret No. 90, describing Waymo's ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, is one of the documents found on Levandowski's devices. (Dkt. 1928-4 at 4.)  Additional evidence relating to Trade Secret No. 90 includes emails providing additional detail about Waymo's ▬▬▬. (Dkt. 1928-6, (STROZ_R_000157815) (▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *id.* (STROZ_R_000140398) (▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬); *id.* (STROZ_R_000157928) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬); *id.* STROZ_R_000165297 (▬▬▬▬▬▬▬▬▬▬▬▬▬▬); *id.* (STROZ_R_000159308) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Waymo has also identified a presentation outlining ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*id.*, STROZ_R_000149343), a detailed standard operating procedure outlining, step by step, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*id.*, STROZ_R_000135848), and a preliminary design review for the ▬▬▬▬▬▬▬▬ claimed as TS 90 (*id.*, STROZ_R_000155697).  Finally, a document containing the precise specifications for ▬▬▬▬▬▬▬▬ was also found among the so-called "sliver" of 68,000 documents of Stroz materials in Morrison Foerster's possession. (Dkt. 1928-7, SFM00000011.)

Other documents that the Stroz investigation identified in Mr. Levandowski's possession include computer-aided design schematics showing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ of Trade Secret No. 7 and the ▬▬▬▬▬▬▬▬ of Trade Secret No. 9.  (*id.*, SFM00000753; SFM00000761; SFM00000764 (screenshot of Altium transmit board schematic).)

The documents also include an optical simulation output showing a cross-section of the ▉ ▉ as claimed in Trade Secret No. 2. (*id.*, SFM00000763.) The documents also include ▉, claimed as Trade Secret No. 25. (Dkt. 1928-6, STROZ_R_000149315 (▉ ▉).) In addition, Waymo has found a presentation outlining ▉ ▉ (*id.*, STROZ_R_000121935), and a ▉ ▉ (*id.*, STROZ_R_000147171.) Mr. Levandowski was also in possession of a GBr3 design review that provides a high-level overview of several asserted trade secrets, including Trade Secret No. 2. (*id.*, STROZ_R_000156272.) Similarly, Mr. Levandowski was in possession of documents describing Waymo's ▉ to which Trade Secret No. 111 is directed. (*Id.*, STROZ_R_000159448; STROZ_R_000163819.)

In other words, among the materials stolen from Waymo were files directly relevant to the nine trade secrets that will be tried to a jury. The evidence from Stroz indicates that these materials were in Mr. Levandowski's personal possession in March 2016, after Mr. Levandowski had left Waymo, after he had created Otto Trucking, and after he had negotiated a Term Sheet for Uber's acquisition of Ottomotto and Otto Trucking. (Ex. 19, Suhr 10/13 Tr. at 240:10-12 (confirming that ▉ ▉.) And the testimony of Uber and Stroz, together with the investigation by Discovia, reveals that ▉ ▉ ▉ ▉ (Ex. 19, Suhr 10/13 Tr. at 68:20-23, 163:19-166:28 (▉ ▉; Ex. 1, Maugeri Rough at 164:1-13; 164:1-13; Crain Report § VI(B).)

This evidence properly supports a jury finding that Mr. Levandowski and Mr. Ron not only purposefully stole Waymo confidential and proprietary information in connection with their generally contemporaneous departures from Waymo, discussions with Uber, and formation of

1  Otto Trucking, but also that they ▮▮▮
2  ▮▮▮
3  ▮▮▮
4  ▮▮▮ This is more than sufficient evidence to
5  require the denial of Otto Trucking's motion to dismiss. *AT&T Commc's. v. Pacific Bell,* 1998
6  U.S. Dist. LEXIS 13459 at *5 (N.D. Cal. Aug. 26, 1998) (finding misappropriation and allowing
7  reasonable royalty damages award despite lack of explicit "use" finding because "[o]nce
8  defendants accessed the misappropriated TBR from plaintiffs' databases and examined that data
9  they became obligated to pay for their use of that unlawfully acquired information.")

      3. <u>Use of the Trade Secrets Has Benefited the Joint Work Conducted By and Among Otto Trucking, Otto Trucking's Founders and ▮▮▮, Uber, and Ottomotto</u>

12  As previously noted, nearly all Otto Trucking employees and shareholders ▮▮▮
13  ▮▮▮ Ottomotto and Otto Trucking are two sides
14  of the same coin:  Ottomotto focuses on cars, and Otto Trucking on trucks, but ▮▮▮
15  ▮▮▮ (*See* Dkt. 1634-4 at 19.)  Many of the Uber
16  witnesses in this case with knowledge of Fuji LiDAR are also employees of Otto Trucking.  (Ex.
17  20, OTTOTRUCKING00000004 ▮▮▮
18  ▮▮▮
19  ▮▮▮.)  It is these employees who are working on the collaboration
20  between ▮▮▮ (Dkt.
21  1526-4 at 20.)  And it is these employees who are working on Otto Trucking's efforts to build a
22  ▮▮▮
23  ▮▮▮ (Dkt. 1526-39.)
24  ▮▮▮
25  ▮▮▮
26  ▮▮▮
27  ▮▮▮
28  ▮▮▮

1 ▓▓▓
2 ▓▓▓
3 ▓▓▓
4 ▓▓▓ (Dkt. 515-8; Dkt. 515-3; Ex. 17, Malackowski Tr. at
5 104:18-105:8; Ex. 14, Poetzscher 6/19 Tr. at 292:22-24.) ▓▓▓
6 ▓▓▓
7 ▓▓▓
8 ▓▓▓
9     What is more, the evidence is that ▓▓▓
10 ▓▓▓
11 ▓▓▓ (Ex. 14, Poetzscher 6/19 Tr. at 294:3-5; Ex. 15,
12 UBER00076783 (▓▓▓
13 ▓▓▓; *see also* Ex. 16, UBER00245435 (▓▓▓
14 ▓▓▓).) Indeed, ▓▓▓
15 ▓▓▓
16 ▓▓▓ Dkt. 515-8; Dkt. 515-3; Ex. 17,
17 Malackowski Tr. at 104:18-105:8; *see also* Ex. 14, Poetzscher 6/19 Tr. at 292:22-24 ▓▓▓
18 ▓▓▓
19 ▓▓▓; Ex. 18, UBER00200513 (emphasis added) ▓▓▓
20 ▓▓▓).) To
21 that end, Uber ▓▓▓
22 ▓▓▓
23 ▓▓▓ (Ex. 14, Poetzscher 6/19 Tr. at 293:23-24.)
24     These facts have taken on increased significance in light of the Stroz Report and related
25 discovery and in light of the continuation of the trial date to December 4, 2017 ▓▓▓
26 ▓▓▓ All of the evidence taken together
27 properly supports a jury finding that (i) Otto Trucking's principals and ▓▓▓ Mr.
28 Levandowski and Mr. Ron, purposefully stole Waymo confidential and proprietary information in

connection with their generally contemporaneous departures from Waymo, discussions with Uber, and formation of Otto Trucking, (ii) they maintained access to the specific Waymo LiDAR trade secrets at issue (███████████████████████████████████████████████████████████ ███████████████████████████████████ following the formation of Otto Trucking, and (iii) all work done by Mr. Levandowski, Mr. Ron, and others simultaneously employed by a combination of Uber, Ottomotto and Otto Trucking was for the use and benefit of all three entities (given the February 22, 2016 Term Sheet and the April 11, 2016 Put/Call Agreements).

### B. Otto Trucking's Misappropriation Of Waymo's ███████████████ ██████

The Stroz investigation has also revealed that Don Burnette, a third Diligenced Employee, founder, and ████████ in Otto Trucking, misappropriated Waymo trade secrets related to ████ ██████ (*See generally* Rinard Report §§ V, VI, and VII.)[2]

Otto Trucking ███████████████████████████████████████████████ █████████████████████████████████████ (Dkt. 1420-3, ¶¶ 2-5.) That software performs, among other tasks, ███████████████████████████████████████████████ ███████████████████████████. (Ex. 11, Burnette Dep. at 398:3-401:12; *see also* Rinard Report § 5.) The ████████████████ was developed by former Waymo engineer and Diligenced Employee Don Burnette. (*Id.*) Mr. Burnette ███████████████████████████████████ ████████████████████████████████████████████ (*Id.* at 399:16-23 ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████."); 401:9-12 ("██████ ███████████████████████████████████████████████████████████████.").

Discovery done after receiving the Stroz Report has revealed that Mr. Burnette developed the ████████████████ in Otto Trucking's trucks based on Waymo trade secrets, including Trade Secret Nos. 123 and 124 on Waymo's supplemental list of asserted trade secrets. (Rinard

---

[2] Waymo is filing the Expert Report of Martin Rinard concurrently with its Motion for Leave To Amend.



Report § VII.) Mr. Burnette ████████████████████████████████████ ██████ (Dkt. 1998-7.) These ████ capture the exact same ██████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████. (*Id.*; Rinard Report § VII.) ██████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ (Dkt. 1976-8.) ██████████████ includes a detailed overview of Waymo's trade secret ██████████ ████████████████████████████████████████████████████ that Mr. Burnette helped develop at Waymo and ████████████████████████████████████████████ (*Id.*)

In light of these materials, Mr. Burnette was forced to admit that the ██████████ ████████ he developed at Ottomotto—which runs on Otto Trucking's trucks—uses Waymo's trade secrets. (Dkt. 1998-4; Rinard Report § VII.) Accordingly, Otto Trucking is misappropriating Waymo's trade secrets through its use of Waymo's ██████████████████████ on its trucks.

### III. SUPPLEMENTAL OPPOSITION TO OTTO TRUCKING'S MOTION FOR SUMMARY JUDGMENT

In its original opposition (Dkt. 1526-4), Waymo argued that liability for Otto Trucking can rest on one of several theories: (1) direct liability due to Otto Trucking's acquisition of Waymo trade secret material; (2) vicarious liability due to the fact that Otto Trucking is responsible for the trade secret theft of its Executive Chairman and Managing Member, Levandowski; and (3) ratification, because Otto Trucking has refused to take any remedial actions against him. Defendants are also jointly and severally liable for Waymo's damages since they were joint tortfeasors with respect to the misappropriation.

**A. Otto Trucking is Liable for Trade Secret Misappropriation (LiDAR)**

*1. Otto Trucking Is Directly Liable*

As described above, the Stroz Report reveals that Levandowski possessed and retained accessed to Waymo trade secret information while Mr. Levandowski was working at Otto Trucking. Cal. Civ. Code § 3426.1(b)(1). As Waymo has elsewhere explained, that trade secret information was used in LiDAR development efforts by Mr. Levandowski and other individuals who

were simultaneously employed by Uber and Otto Trucking. And, as described above, that work was done for the benefit of accelerating development of autonomous driving in both cars and trucks. Cal. Civ. Code § 3426.1(b)(2).

### 2. *Otto Trucking Is Vicariously Liable for the Acts of Its Principals*

The recently produced Stroz discovery provides further evidence that Otto Trucking is vicariously liable for the trade secret misappropriation of its principals. Mr. Levandowski and Mr. Ron plainly misappropriated Waymo's trade secrets by taking and retaining at least the data that Stroz identified on their personal devices and accounts. Cal. Civ. Code § 3426.1(b)(1) ("Misappropriation" means: (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means."). The Stroz Report confirmed that Mr. Levandowski and Mr. Ron retained Waymo trade secret information while working on behalf of Otto Trucking. Otto Trucking benefited from Mr. Levandowski's and Mr. Ron's acts and will retain those benefits ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████ Under these circumstances, Otto Trucking is vicariously liable for Mr. Levandowski's and Mr. Ron's misappropriation. *See Extreme Reach, Inc. v. SpotGenie Partners, LLC*, No. CV1307563, 2013 WL 12081182, at *7 (C.D. Cal. Nov. 22, 2013) ("SpotGenie may be liable for the Sales Managers' misappropriation of trade secrets under the doctrine of respondent superior . . . . California and federal courts have allowed vicarious liability claims under the UTSA.") (citing caselaw); *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, No. C 10-02605, 2010 WL 2764714, at *4 (N.D. Cal. July 13, 2010) (imputing trade secret misappropriation from employees to employer); *Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1147-48 (N.D. Cal. 2003) ("[T]he Court finds that Fujitsu has, nonetheless, stated a claim for misappropriation of trade secrets as to UI by alleging that Competitive was 'acting with and for UI.' In particular, this allegation may be reasonably construed as an allegation that UI ratified or approved Competitive's conduct.").

Otto Trucking attempts to avoid vicarious liability by alleging that the misconduct of its principals (Levandowski and Ron) is distinct from Otto Trucking's business operations. In so

1  arguing, Otto Trucking misconstrues California law on respondeat superior.  Otto Trucking alleges
2  that, since it did not exist at the time of the theft, the theft "could not be within Mr. Levandowski's
3  authority as a Managing Member of Otto Trucking." (Dkt. 1423 at 20.)  However, this argument
4  misconstrues the California test for vicarious liability. Under California law, "the determining
5  factor in ascertaining whether an employee's act falls within the scope of his employment for
6  respondeat superior liability *is not whether the act was authorized by the employer*, benefited the
7  employer, or was performed specifically for the purpose of fulfilling the employee's job
8  responsibilities." *Yamaguchi v. Harnsmut*, 106 Cal. App. 4th 472, 481–82 (Cal. Ct. App. 2003)
9  (emphasis added).  Rather, as the California Supreme Court has explained, the question is whether
10 the risk of such a tortious act occurring is "typical of or broadly incidental to the enterprise
11 undertaken by the employer." *Farmers Ins. Grp. v. Cty. of Santa Clara*, 11 Cal. 4th 992, 1009,
12 906 P.2d 440, 452 (Cal. 1995) (internal quotations omitted).  In other words, California courts ask
13 whether the employee's conduct was "foreseeable" such that "in the context of the particular
14 enterprise[,] an employee's conduct is not so unusual or startling that it would seem unfair to
15 include the loss resulting from it among other costs of the employer's business."  *Farmers Ins.*
16 *Grp. v. Cty. of Santa Clara*, 11 Cal. 4th 992, 1004, 906 P.2d 440, 448 (Cal. 1995).  Applying this
17 to the instant case, Levandowski's theft of Waymo's trade secrets gives rise to vicarious liability
18 on the part of Otto Trucking.  The Waymo trade secrets at issue deal with the design and
19 performance of autonomous vehicle technology.  Levandowski left Waymo – with Waymo's trade
20 secrets in tow – to start Ottomotto and Otto Trucking, which are similarly in the business of
21 designing and commercializing autonomous vehicles.  As such, Levandowski's conduct fits neatly
22 within the California definition of vicarious liability.  When an engineer steals his employer's
23 trade secrets to start a new, competitor company, the "typical" and "foreseeable" result is that the
24 new company will use those trade secrets in its business operations. Given the above,
25 Levandowski's conduct should be imputed onto Otto Trucking under a theory of vicarious
26 liability.  Otto Trucking's arguments to the contrary should be discounted, as those arguments rely
27 on a misconstruction of California law.
28

Moreover, Otto Trucking's core argument attacks a strawman: Otto Trucking contends it cannot be vicariously liable for Levandowski's theft, since the theft occurred before Otto Trucking existed. As a preliminary matter, courts have already rejected this argument. *United States v. Heffner*, 916 F. Supp. 1010, 1013 (S.D. Cal. 1996) (rejecting argument that entity cannot be held liable on a respondeat superior theory because it came into existence five days after the alleged wrongdoing). In any event, Waymo is not arguing that Otto Trucking is *vicariously* liable for conduct that occurred prior to Otto Trucking's formation (although Otto Trucking did ratify this conduct, as discussed below). Instead, Otto Trucking is vicariously liable for its principals' continued possession and retention of Waymo's trade secrets as revealed in the Stroz Report. Levandowski's continued possession of Waymo's trade secrets was (and is) within the scope of his employment at Otto Trucking. The logic behind this is simple: (1) the Waymo trade secrets at issue relate to autonomous vehicle technology; (2) Otto Trucking's raison d'être is the development of autonomous trucking technology; (3) Levandowski's role at Otto Trucking is to lead and coordinate development of autonomous trucks. As such, it is undeniable that Levandowski's retention of Waymo's trade secrets is within the scope of his employment – his job is to build autonomous trucks, and the trade secrets at issue are specific to the very technology Levandowski is in charge of developing.

### 3. *Otto Trucking Ratified the Acts of Its Principals*

As an alternate theory to vicarious liability under California law, Otto Trucking is liable for its principals' conduct because it subsequently ratified their tortious acts. *Baptist v. Robinson*, 143 Cal. App. 4th 151, 169 (Cal. Ct. App. 2006) (*citing Shultz Steel Co. v. Hartford Accident & Indemnity Co.,* 187 Cal.App.3d 513, 519; Cal. Civ. Code § 2339). The recently produced Stroz discovery confirms that Otto Trucking is liable for trade secret misappropriation through the doctrine of "ratification." *Fujitsu*, 286 F. Supp. 2d at 1148. Despite Levandowski's and Ron's possession of Waymo trade secrets, Otto Trucking has refused, and continues to refuse, to take any remedial actions against them. This alone shows Otto Trucking's ratification of Levandowski's misappropriation, thereby subjecting Otto Trucking to liability. Cal. Civ. Code § 2310 ("A ratification can be made . . . by accepting or retaining the benefit of the act, with notice thereof.");

1  *Contemporary Servs. Corp. v. Landmark Event Staffing Servs., Inc.*, 677 Fed. App'x 314, 315 (9th
2  Cir. 2017) ("CSC raised a triable issue as to whether Landmark unlawfully ratified employee
3  Grant Haskell's misappropriation of CSC trade secrets when Landmark failed to cease the use of
4  CSC documents, disavow Haskell's conduct, or terminate Haskell's employment after Landmark
5  'had reason to know' of Haskell's misappropriation."); *Ajaxo Inc. v. E*Trade Grp., Inc.*, 135 Cal.
6  App. 4th 21, 67-68 (Cal. Ct. App. 2005); *Coats v. Constr. & Gen. Laborers Local No. 185*, 15 Cal.
7  App. 3d 908, 914, 93 Cal. Rptr. 639, 642 (Cal. Ct. App. 1971).  Otto Trucking has not disavowed
8  Mr. Levandowski's and Mr. Ron's actions, let alone terminate their employment or take away
9  their equity or compel the return of the Waymo materials Stroz left in their possession (and any
10 other Waymo materials).  Given the egregious nature of Levandowski and Ron's conduct, Otto
11 Trucking's failure to take remedial steps constitutes strong evidence of ratification under
12 California law.  *Baptist v. Robinson*, 143 Cal. App. 4th 151, 169–70 (Cal. Ct. App. 2006).
13        Moreover, recent discovery from the Stroz investigation confirms that Otto Trucking "had
14 reason to know"—and in fact had explicit knowledge—of Mr. Levandowski's and Mr. Ron's
15 misappropriation of Waymo's trade secrets.  In addition to having direct knowledge of their bad
16 acts themselves, both Mr. Levandowski and Mr. Ron received the Stroz Report while acting in
17 their capacity as Otto Trucking principals.  Additionally, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 13, OTTOTRUCKING00025230-274.)  Despite its awareness of the
22 Stroz Report's contents, Otto Trucking has failed to terminate the employment of either
23 Levandowski or Ron or take any other remedial measures (including compelling the return of
24 Waymo materials returned to them by Stroz and others in their possession).  Such failure to
25 respond makes this case ripe for applying the ratification doctrine.  *Baptist*, 143 Cal. App. 4th at
26 169*; see also Ventura v. ABM Indus. Inc.*, 212 Cal. App. 4th 258, 272 (Cal. Ct. App. 2012) (noting
27 that "[t]he theory of ratification is generally applied where an employer fails to investigate or
28 respond to charges that an employee committed an intentional tort.").

1        Whether a ratification has occurred is a factual question that is generally improper for
summary adjudication. *See Baptist*, 143 Cal. App. 4th at 170; *StreetScenes v. ITC Entertainment Group, Inc.* 103 Cal.App.4th 233, 242 (Cal. Ct. App. 2002); *see also Siva v. Gen. Tire & Rubber Co.*, 146 Cal. App. 3d 152, 159, 194 Cal. Rptr. 51 (Cal. Ct. App. 1983) ("Ratification is a fact question and may be proved by circumstantial evidence.").  In this case, Otto Trucking has not taken *any* steps to remediate Levandowski and Ron's tortious conduct, aside from sending a tepid letter asking Levandowski to return Waymo's stolen documents only after the Court ordered it to do so.  As such, a genuine dispute of material fact exists regarding both (1) Otto Trucking's exact response to the Stroz Report's findings, and (2) whether such response—or failure to respond—constitutes ratification. *See Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1137 (E.D. Cal. 2008) (denying summary judgment where employer failed to show evidence rebutting allegation that it ratified trade secret theft by employee poached from competitor); *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1385 (Cal. Ct. App. 2000)  (finding triable issue where employer made "no real attempt to determine" whether trade secret misappropriation had occurred).

        Finally, it is immaterial that Otto Trucking did not exist at the time Levandowski stole Waymo's trade secrets.  This is because "ratification has the effect of relating the agent's authority back to the time when the act was performed." *Allied Mut. Ins. Co. v. Webb*, 91 Cal. App. 4th 1190, 1194 (2001) (citation omitted); *Direct List LLC v. Vistage Int'l, Inc.*, No. 15CV2025-WQH-JLB, 2016 WL 471940, at *5 (S.D. Cal. Feb. 8, 2016) ("Under California law, ratification may create an agency relationship where one did  not exist[].");  *see also Harris v. Seidell*, 1 Cal. App. 2d 410, 413–14, 36 P.2d 1104, 1106 (Cal. Ct. App. 1934) ("The doctrine of ratification proceeds upon the theory that there was no previous authority, and that the relation of principal and agent did not in fact exist, but implies it from the acts and conduct of the parties, and when so implied is equivalent to previous authority, and results as effectively to establish the relation of principal and agent as if the agency had been authorized in the beginning.") (citation omitted).  Accordingly, in this case, Otto Trucking's ratification relates back to the time of Levandowski and Ron's theft.

1    In sum, the record reveals a genuine dispute of material fact as to Otto Trucking's response
2 to the misconduct described in the Stroz Report. At best, Otto Trucking "turned a blind eye" to
3 Levandowski and Ron's egregious conduct, which is enough for liability to attach under a theory
4 of ratification pursuant to California law. *Ajaxo Inc.,* 135 Cal. App. 4th at 67.  At worst, Otto
5 Trucking actively concealed Levandowski and Ron's conduct—obtaining Waymo's trade secrets
6 in the process—and even still refuses to take any remedial steps.  Otto Trucking cannot accept the
7 benefit of Levandowski and Ron's theft while attempting to distance itself from the burden of their
8 misconduct.  Instead, Otto Trucking must reap what it has sown. *Bancroft-Whitney Co. v. Glen,* 64
9 Cal. 2d 327, 353 (Cal. 1966).

10              *4.      Defendants are Jointly and Severally Liable*

11    Regardless of the specific theory of liability the jury may use to find Otto Trucking liable,
12 Otto Trucking remains jointly and severally liable for all damages to Waymo as a result of its
13 misappropriation.  *See e.g., Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d
14 1192, 1217-18 (N.D. Cal. 2012) ("trade secret misappropriation is considered an intentional tort,
15 and thus joint tortfeasors are jointly and severally liable . . . . [a]lthough the damages expert has
16 not apportioned damages to each individual defendant, this is not fatal to Plaintiffs' claims . . . .");
17 *Clark v. Bunker*, 453 F.2d 1006, 1010–11 (9th Cir. 1972).  As described above, Mr. Levandowski,
18 Mr. Ron, and many employees involved in Uber's LiDAR development efforts ▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22    **B.    Otto Trucking is Liable for Trade Secret Misappropriation** ▮▮▮
▮▮▮

23
24    If the Court grants Waymo leave to amend to add software claims, Otto Trucking is very
25 clearly directly liable for trade secret misappropriation because it misappropriated ▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Cal.
26 Civ. Code § 3426.1(b)(2).
27
28

### C. Otto Trucking Has Not Produced Any Evidence to Rebut Waymo's Proof

Otto Trucking has not come forward with any evidence to rebut the fact that Mr. Levandowski and Mr. Ron misappropriated Waymo's trade secrets in their capacity as principals for Otto Trucking. Otto Trucking retained an expert, Dr. Joseph Shaw, to investigate Waymo's allegations of trade secret misappropriation, but he admitted that the investigation was limited to an inspection of Otto Trucking's trucks. (Ex. 12, Shaw Dep. at 123:11-25.) Dr. Shaw did not investigate any evidence that would rebut the fact that Mr. Levandowski, Mr. Ron, or anyone else at Otto Trucking acquired and maintained Waymo trade secrets outside of the trucks. He did not inspect Otto Trucking computers. (*Id*. at 129:15-22.) He did not inspect Otto Trucking's network. (*Id*. at 131:22-132:6.) He did not inspect Otto Trucking's servers or other data repositories. (*Id*. at 132:7-15.) And he did not inspect Otto Trucking source code. (*Id.* at 175:3-5.)

## IV. SUPPLEMENTAL OPPOSITION TO OTTO TRUCKING'S MOTION FOR A SEPARATE TRIAL

For all the reasons already described in Waymo's original opposition (Dkt. 1934), the Court should deny Otto Trucking's motion for a separate trial. But newly discovered details regarding the scope of the Stroz investigation and the likelihood that Uber will acquire Otto Trucking before the December trial date both reinforce Waymo's original arguments.

### A. Waymo Would Need to Present Information Regarding the Stroz Investigation at Both Trials, which Inconveniences Third Party Witnesses

It's not just Waymo witnesses who will need to testify in both trials; recently discovered information regarding the scope of the Stroz investigation confirms that witnesses from Stroz, Mofo, Uber, the Uber Board, and Otto will also need to testify twice. In both trials, Waymo will present evidence that Stroz ████████████████████████████████████████ ████████████████████████████████, along with evidence that ████████████ ████████████████████████████████. Waymo will present evidence regarding Stroz's findings, as detailed above. And Waymo will present evidence of Uber's (and its lawyers') reactions to Stroz's findings. This evidence bears equally on the jury's liability determinations for Uber, Ottomotto and Otto Trucking.

1  **B.    Uber Will** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  The Court should deny Otto Trucking's motion for a separate trial for another reason:

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ There is little dispute that, if Otto Trucking were a

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Otto Trucking would be tried in this case.

5  And, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The relationship between

6  the Defendants make clear that one trial is appropriate here.

7  **V.    CONCLUSION**

8  Particularly in light of the foregoing additional evidence, Otto Trucking's motion for

9  summary judgment and motion for a separate trial should be denied.

11 DATED:  October 23, 2017                QUINN EMANUEL URQUHART & SULLIVAN, LLP

12                                          By */s/ Melissa J. Baily*
13                                             Melissa J. Baily
                                               Attorneys for WAYMO LLC