1    [COUNSEL LISTED ON SIGNATURE PAGE]

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12   WAYMO LLC,                           Case No.      3:17-cv-00939-WHA

13              Plaintiff,                 **DEFENDANTS' CRITIQUE OF**
                                           **TENTATIVE JURY INSTRUCTIONS**
14        v.                               **AND SPECIAL VERDICT FORM ON**
                                           **TRADE SECRET**
15   UBER TECHNOLOGIES, INC.,              **MISAPPROPRIATION**
     OTTOMOTTO LLC; OTTO TRUCKING
16   LLC,                                  Trial Date: December 4, 2017

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

1  Pursuant to the Court's request, Defendants Uber Technologies, Inc., Ottomotto LLC, and

2  Otto Trucking submit their critique of the Court's Tentative Jury Instructions on Trade Secret

3  Misappropriation and Tentative Special Verdict Form (on Misappropriation Claims).  (Dkt. 2010

4  at 1.)  Defendants understand the Court's request to be limited to the instructions and verdict form

5  related to the misappropriation issue, and thus do not include their objections and critiques of

6  instructions not directly related to misappropriation that were not included in the Court's

7  Tentative Jury Instructions and Tentative Special Verdict Form.  (Dkt. 2010.)  Defendants reserve

8  the right to provide additional comments on jury instructions based on the evidence presented at

9  trial.[1]

10  **TJI#2**

11  Defendants suggest editing the first sentence of TJI#2 to clarify that the elements must be

12  satisfied for each alleged trade secret, to be consistent with the other instructions and the verdict

13  form.  The edited first sentence would read "To succeed on its claim that a defendant

14  misappropriated a specific Alleged Trade Secret, Waymo must prove all of the following for that

15  Alleged Trade Secret."  (The proposed addition is underlined.)

16  In addition, as Defendants have shown previously, Waymo has made no effort to prove

17  that it suffered any damages from any alleged "disclosure" of its Alleged Trade Secrets.

18  (Dkt. 1735 at 33.)  Instead, Waymo's damages expert calculates damages solely based on

19  Defendants' alleged *use* of the Alleged Trade Secrets.  Accordingly, the jury instructions and

20  verdict form should not permit the jury to award damages against a party based on "disclosure."

21  The simplest and most appropriate way to accomplish this result would be to eliminate

22  "disclosure" from the jury instructions and verdict form.  Under the Directions for Use of CACI

23  No. 4405, the jury should only be instructed on matters relevant to damages claims:

24  Civil Code section 3426.1(b)(1) defines "misappropriation" as
improper "[a]cquisition" of a trade secret, and subsection (b)(2)

25  defines it as improper "[d]isclosure or use" of a trade secret. In
some cases, the mere acquisition of a trade secret, as distinguished

26

27  ---

[1] The parties conferred and have agreed to a stipulation that the instructions will cover

28  both federal and state law without distinction, subject to a few reservations. The parties will file
that draft stipulation under separate cover.

from a related disclosure or use, will not result in damages and will only be relevant to injunctive relief. **Because generally the jury should only be instructed on matters relevant to damage claims, this instruction should not be given unless there is evidence that the acquisition resulted in damages, other than damages from related disclosure or use.**

CACI No. 4405 (Misappropriation by Acquisition), Directions for Use (emphasis added).

While CACI No. 4405 explains why an instruction on "acquisition" leading to damages should not be given, the principle underlying this instruction also shows why, in this case, no instructions should be given that would allow the jury to award damages based solely on disclosure of an Alleged Trade Secret. Therefore, Defendants request that "or disclosed" be struck in this instruction as well as in TJI#9 and the verdict form. Alternatively, the verdict form should be revised to clarify that unjust enrichment damages cannot be awarded based on disclosure (in contrast to use).

**TJI#3**

Number 4 in this instruction appears to be missing the word "secret." Defendants' proposed edit is: "4. That Waymo made reasonable efforts up to the alleged misappropriation to keep the Alleged Trade Secret secret." (The proposed addition is underlined.)

**TJI#9**

Defendants believe that the reference should be to the second element, not the third element, to be consistent with TJI#2. Also, for the same reasons described above in relation to TJI#2, Defendants submit that "or disclosed it" should be struck from this instruction.

**TJI#12**

Defendants believe that TJI#12 should not be given because, as detailed in prior briefing, an agent's knowledge of a trade secret cannot be imputed to a principal. (*See* Dkt. 1735 at 50–51; Dkt. 824 at 2–8.) Waymo has never cited any case from any jurisdiction that has found improper acquisition based on imputation, nor are Defendants aware of any such case.

A second reason that TJI#12 should not be given is that there is no damages claim based on acquisition. Acquisition therefore is not an issue properly committed to the jury. *See* CACI No. 4405 (Misappropriation by Acquisition), Directions for Use. Although TJI#12 may be

DEFENDANTS' CRITIQUE OF TENTATIVE JI AND SPECIAL VERDICT FORM ON TRADE SECRET MISAPPROPRIATION
Case No. 3:17-cv-00939-WHA
sf-3833149

2

1  intended only to address improper acquisition of information as a predicate for a finding of use,

2  such an instruction could confuse the jury as to whether acquisition as described in TJI#12 could

3  itself serve as a basis for liability and damages.

4       If TJI#12 is to be given, Defendants believe it should be provided before the instruction

5  on use (current TJI#11) to be consistent with TJI#2.

6       Additionally, if TJI#12 is to be given, Defendants submit that the wording should be

7  amended in certain respects, such that the final instruction would read (with green showing

8  moved text, red added, and ~~strikethrough~~ removed):

9       You have heard evidence that the law firm of Morrison & Foerster
    and/or the forensic analytics firm of Stroz Friedberg LLC received
10   materials ~~Alleged Trade Secrets~~ in connection with Uber's
    acquisition of Ottomotto LLC that Waymo claims included Alleged
11   Trade Secrets. Under the law, if Waymo proves that one or both of
    these firms improperly acquired Alleged Trade Secrets ~~such a trade~~
12   ~~secret~~ as an agent of a defendant, ~~then you must treat that trade~~
    ~~secret as having been acquired by that defendant~~ unless it is proven
13   ~~that such firm~~ and also shows that one or both of these firms was
    under an obligation ~~not~~ to disclose ~~the trade secret~~ the details of the
14   Alleged Trade Secret to that defendant, then you ~~must~~ may treat
    that trade secret as having been improperly acquired by that
15   defendant. Acquisition means pointed conduct by the Defendant
    intended to gain or obtain as its own, or to gain the ownership of,
16   the trade secret.

17  **First** and most importantly, this properly reflects that Waymo, not Defendants, bears the

18  burden of proving the existence and scope of any alleged agency relationship. The law is clear on

19  this point. In *California Viking Sprinkler Co. v. Pacific Indemnity Co.*, for example, the Court of

20  Appeal held that the trial court erred by instructing the jury that an insurance company was, as a

21  matter of law, liable for the acts of its agent:

22       The existence of an agency relationship and the extent of the
    authority of the agent are questions of fact for the jury
23   (*Thompson v. Machado*, 78 Cal.App.2d 870, 876–877, 178 P.2d
    838; *Mayers v. Litow*, 154 Cal.App.2d 413, 316 P.2d 351), unless
24   the evidence is susceptible of but one inference (*Seneris v. Haas*, 45
    Cal.2d 811, 831, 291 P.2d 915, 53 A.L.R.2d 124). In either event
25   **the burden of proving agency, as well as scope of the agent's**
    **authority, rests upon the party asserting the existence thereof**
26   **and seeking thereby to charge the principal upon**
    **representations of the agent** (*Aspen Pictures, Inc. v. Oceanic S. S.*
27   *Co.*, 148 Cal.App.2d 238, 253, 306 P.2d 933; *Wahyou v. Kiernan*,
    145 Cal.App.2d 443, 445, 302 P.2d 638). Thus, it is incumbent
28   upon the party seeking to charge the principal for the acts of its

DEFENDANTS' CRITIQUE OF TENTATIVE JI AND SPECIAL VERDICT FORM ON TRADE SECRET MISAPPROPRIATION
Case No. 3:17-cv-00939-WHA
sf-3833149

3

1

> agent to show (1) existence of the agency relationship, and (2)
> authority of the agent to bind the principal to the transaction upon
> which the action is brought.

2

3   213 Cal. App. 2d 844, 850 (Cal. Ct. App. 1963) (emphasis added).

4       In another example, the Court of Appeal held that a bank's grant of authority to its

5   employee to endorse checks for deposit to the bank's account did not mean that the employee was

6   also authorized as a matter of law to endorse checks for deposit into accounts opened in fictitious

7   names. *Oswald Mach. & Equip., Inc. v. Yip*, 10 Cal. App. 4th 1238, 1241 (Cal. Ct. App. 1992),

8   *reh'g denied and opinion modified* (Dec. 4, 1992).  Thus the wrongdoing of the agent was not

9   automatically imputed to the principal (the bank).  As the court explained:

10

> Actual authority is such as a principal intentionally confers upon
> the agent, or intentionally, or by want of ordinary care, allows the
> agent to believe himself to possess." (Civ. Code, § 2316.) (4)
> **Unless the evidence is undisputed, the scope of an agency
> relationship is a question of fact, and the burden of proof rests
> on the party asserting the relationship**. (*Magnecomp Corp. v.
> Athene Co.* (1989) 209 Cal. App.3d 526, 536 [257 Cal. Rptr. 278];
> *Aspen Pictures, Inc. v. Oceanic S.S. Co.* (1957) 148 Cal. App.2d
> 238, 253 [306 P.2d 933]; *Torrance N. Bk. v. Enesco F. Credit
> Union* (1955) 134 Cal. App.2d 316, 324 [285 P.2d 737]; *Correa v.
> Quality Motor Co.* (1953) 118 Cal. App.2d 246, 251 [257 P.2d
> 738].)

11

12

13

14

15

16

17   *Id.* at 1247 (emphasis added).

18       ***Second***, TJI#12 also should clarify that Waymo bears the burden of proof to demonstrate

19   that the materials received by Stroz or MoFo in fact contained trade secrets.  Uber objects to the

20   instruction to the extent it suggests that Waymo has shown that Stroz or MoFo knew of actual

21   trade secrets by saying that the jury has "heard evidence" that those entities "received Alleged

22   Trade Secrets."  The instruction should clarify that Waymo bears the burden of proof that those

23   materials contained trade secrets.

24       ***Third***, acquisition can only occur through "improper means."  *See* Cal. Civ. Code §

25   3426.1(a); 18 U.S.C. § 1839(6).  This issue could be addressed by adding the word "improperly"

26   before "acquired" where it occurs.

27       ***Fourth***, as detailed in prior briefing (Dkt. 1735 at 28; Dkt. 824 at 3), acquisition requires a

28   showing that a party engaged in conduct that was intended to secure dominion over a thing, in the

DEFENDANTS' CRITIQUE OF TENTATIVE JI AND SPECIAL VERDICT FORM ON TRADE SECRET MISAPPROPRIATION
Case No. 3:17-cv-00939-WHA
sf-3833149

4

1   sense of making it their own:

2   > There is no suggestion that Intel ever *disclosed* Silvaco's source
    > code to anyone, and it is difficult to see how it might have done so
3   > since there is no evidence that it ever had the source code to
    > disclose. Silvaco emphasizes that wrongful acquisition of a trade
4   > secret may be actionable in itself. (See § 3426.1, subd. (b); *San Jose
    > Construction Inc. v. S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528,
5   > 1544, 67 Cal.Rptr.3d 54, fn. omitted [" 'misappropriation' can
    > occur through improper acquisition of a trade secret, not only
6   > through use"].) But there is no basis to suppose that Intel ever
    > "acquired" the source code constituting the trade secrets. **To
7   > acquire a thing is, most broadly, "receive" or "come into
    > possession of" it. (1 Oxford English Dict. (2d ed. 1989), p. 115.)
8   > But the term implies more than passive reception; it implies
    > pointed conduct intended to secure dominion over the thing,
9   > i.e., "[t]o gain, obtain, or get as one's own, to gain the
    > ownership of (by one's own exertions or qualities)."**
10  > (*Ibid.*; see id. at p. 115 ["acquisition" as "[t]he action of obtaining
    > or getting for oneself, or by one's own exertion"].)

11

12  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 222–23 (Cal. Ct. App. 2010), *as modified*

13  *on denial of reh'g* (May 27, 2010) *disapproved of on other grounds by Kwikset Corp. v. Super.*

14  *Ct.*, 51 Cal. 4th 310 (Cal. Ct. App. 2011) (emphasis added). Thus, Uber proposes that the

15  instruction include the following sentence, "Acquisition means pointed conduct by the Defendant

16  intended to gain or obtain as its own, or to gain the ownership of, the trade secret." The

17  instruction should make clear that acquisition cannot occur by accident through the actions of

18  agents who may obtain trade secret information with no plan or obligation to provide that

19  information to any defendant.

20      ***Fifth***, the instruction should be modified to show that while a jury "may" impute an

21  agent's knowledge to a principal if there is a duty to disclose, the jury is not required to do

22  so. The Ninth Circuit's decision in *Droeger* demonstrates that the issue of actual communication

23  of the trade secret material from agent to principal is a question of fact. In that case, the trial

24  court had instructed the jury: "It is not a defense to the corporation that Mr. Bayley [the agent] did

25  not inform other officers." *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792 (9th Cir.

26  1976). The Ninth Circuit observed in a footnote that this portion of the instruction improperly

27  took a fact question away from the jury:

28

DEFENDANTS' CRITIQUE OF TENTATIVE JI AND SPECIAL VERDICT FORM ON TRADE SECRET MISAPPROPRIATION
Case No. 3:17-cv-00939-WHA
sf-3833149

5

**In light of the emphasis in trade-secret law on unfair use, it is generally not appropriate to direct a jury to impute an agent's knowledge of a secret to the principal.[1] Such an instruction would permit recovery even when the trade secret was not actually communicated to or used by the principal**. The plaintiff is not entitled to a windfall when in fact there has been no invasion of those interests which trade-secret law seeks to protect.

FN1: **Nor should a judge in a trial to the court automatically impute to a corporate employer information communicated in confidence to an employee. Whether the agent conveyed such information to the corporation is a question for the fact-finder to decide.** See, e. g., Gilbert v. General Motors Corp., 41 F.Supp. 525 (W.D.N.Y.1941), aff'd, 133 F.2d 997 (2d Cir.), cert. denied, 319 U.S. 743, 63 S.Ct. 1031, 87 L.Ed. 1700 (1943).

*Id.* at 792–93 (emphasis added).

**TJI#13**

Otto Trucking should be removed from this instruction. While it is an accurate statement of the law, it is confusing as to Otto Trucking.  Otto Trucking does not have any employees and is not involved in the development of LiDAR technology.  (*See* Dkt. 1434-4; Dkt. 1636 at 8; Dkt. 1946 at 1.)  Because Otto Trucking has no employees and does not develop LiDAR, it is not possible that any skills that may have been acquired by a former Google employee while at Google could have been or can be used for any Otto Trucking business.  Defendants submitted this as a joint instruction, but on further review Otto Trucking does not believe that it should be included in this instruction.

**TJI#14**

Defendants believe that the reference should be to the third element, not the fourth element, to be consistent with TJI#2.

**TJI#16**

Defendants submit that the end of this instruction should note that the jury should decide the matters addressed by TJI#16 for each trade secret, thus closing with the phrase "for each Alleged Trade Secret."

**TJI#17**

In response to the Court's request for a proposed instruction on the proper measure of recovery, Defendants propose the following instruction.  The first paragraph is taken from CACI

DEFENDANTS' CRITIQUE OF TENTATIVE JI AND SPECIAL VERDICT FORM ON TRADE SECRET MISAPPROPRIATION
Case No. 3:17-cv-00939-WHA
sf-3833149

6

1    No. 4410, with alterations shown (with red showing added text, and ~~strikethrough~~ removed). The

2    second is from instructions given in *O2 Micro International Ltd. v. Monolithic Power Systems,*

3    *Inc.*, No. C 00-4071 CW, 2000 WL 35634755 (N.D. Cal. 2000), which was included with

4    Waymo's proposed jury instructions on unjust enrichment.  (*See* Dkt. 1728 at 110.)

5            To decide the amount of any unjust enrichment, first determine the
             dollar value of any benefits a defendant actually realized
6            ~~defendant's benefit~~ that would not have been achieved except for its
             misappropriation. Then subtract from that amount the defendant's
7            reasonable expenses.

8            Your award must be based upon evidence, and not upon
             speculation, guesswork or conjecture.
9

10           Defendants propose altering CACI to clarify that the jury must base any unjust enrichment

11   award on a determination of the value of any benefits a defendant has *actually* obtained by

12   misappropriation of trade secrets, rather than what it might have expected to obtain.  Waymo has

13   taken the position and apparently intends to argue at trial that a jury could base an unjust

14   enrichment award on the value that a defendant expected to derive at the time of

15   misappropriation.  (*See* Dkt. 1777-3 at 11.)

16           As Defendants noted in a supplemental notice to its *Daubert* brief on October 23

17   (Dkt. 2050), the Federal Circuit has squarely rejected Waymo's position in a case applying

18   California law.  In *Litton*, the trial court concluded that the appropriate measure for unjust

19   enrichment was the defendant's expected gain at the time of misappropriation rather than its

20   actual gain.  *See Litton Sys., Inc. v. Ssangyong Cement Indus. Co.*, No. C-8903832-VRW, 1993

21   WL 317266, at *4 (N.D. Cal. Aug. 19, 1993).  Waymo cited the district court decision in *Litton* in

22   support of its position—the only case from this Circuit it cited for this point.  However, ***the***

23   ***Federal Circuit reversed on this very point, expressly rejecting the "expectation" approach to***

24   ***unjust enrichment***:

25           In cases of trade secret misappropriation, unjust enrichment is
             normally measured by the defendant's profits on sales attributable
26           to the use of the trade secret. *See Restatement of Unfair*
             *Competition* § 45 cmt. f (1995); 1 Melvin F. Jager, *Trade Secrets*
27           *Law* § 3.03[6][b][i] (1995). The defendant's gain has also been
             measured by the cost saving that the defendant has realized from
28           using the trade secret. *Id.*; *see also Salsbury Labs., Inc. v. Merieux*

*Labs., Inc.*, 908 F.2d 706, 714 (11th Cir. 1990). **The district court's theory of unjust enrichment as encompassing unrealized expected gain, however, is unsupported in the law of unfair competition and cannot serve as a valid basis for an award of damages in this case.**

*Litton Sys., Inc. v. Ssangyong Cement Indus. Co.*, 107 F.3d 30 (Fed. Cir. 1997) (emphasis added). This decision is logical. A party cannot account for or return a benefit it did not actually receive, even if it had previously expected to receive a benefit.

Given that Waymo's current damages model is based on this invalid theory of "expected gain" (Dkt. 1619 at 6–7), the jury should be instructed on the proper measure of unjust enrichment as the benefit actually realized by a defendant.

### TJI#18

For the reasons described below in relation to Questions 5 and 6 on the Verdict Form, Defendants submit that the phrase "for each Alleged Trade Secret" be added to the end of this instruction.

### TJI#19

In connection with TJI#19, defendants believe that the jury should be instructed on the meaning of "willful" and "malicious" conduct using the standard set forth in CACI No. 4411. (*See* Dkt. 1728 at 124–127.) In addition, as Defendants previously noted, under the plain language of both the CUTSA and the DTSA the Court—not the jury—decides the amount of exemplary damages, if any. (Dkt. 1735 at 70.) Cal. Civ. Code § 3426.3(c) ("If willful and malicious misappropriation exists, **the court may** award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b).") (emphasis added); 18 U.S.C.A. § 1836(b)(3)(C) ("Remedies.--In a civil action brought under this subsection with respect to the misappropriation of a trade secret, **a court may** … if the trade secret is willfully and maliciously misappropriated, award exemplary damages in an amount not more than 2 times the amount of the damages awarded under subparagraph (B)") (emphasis added). At most, the jury may be instructed as to whether Defendants acted willfully and maliciously, but not to determine the amount of any exemplary damages, which is an issue for the Court.

DEFENDANTS' CRITIQUE OF TENTATIVE JI AND SPECIAL VERDICT FORM ON TRADE SECRET MISAPPROPRIATION
Case No. 3:17-cv-00939-WHA
sf-3833149

8

# VERDICT FORM

Uber proposes the following revisions to the Tentative Special Verdict Form on Misappropriation Claims.

*First*, Uber and Waymo agree[2] that what is now Question 3 should be moved first, such that it is Question 1. That question asks the jury whether Waymo has proven that, at the time of the alleged misappropriation, each Alleged Trade Secret qualified as an enforceable trade secret. Placing this question first harmonizes the Special Verdict Form with the jury instructions, as this element is identified as the first element of proof misappropriation in TJIs 1 and 2. In addition, in the Court's instructions, this question is the first time that the jury is asked to consider each trade secret separately; the questions on improper acquisition, use, and disclosure then ask the jury to write in the number of the Alleged Trade Secret as to each Defendant. Placing an itemized question first more clearly allows the jury to answer the ensuing questions only as to the trade secrets they identified as enforceable in the first instance—a threshold question that may eliminate many of the trade secrets from further consideration, and will therefore reduce the risk of juror confusion and an inconsistent verdict.

*Second*, Uber proposes that current Question 1 (which should become Question 2), the third sentence should be revised to replace "misappropriated" with "improperly acquired" to be more precise and consistent with the previous formulation in that question. The jury should not be led to believe that acquisition alone could be a form of misappropriation that could lead to damages. As explained above, Waymo's damages claims are based entirely on alleged use of the Alleged Trade Secrets, not on any alleged acquisition or disclosure without use.

*Third*, for the reasons noted above in regards to TJI#2, Defendants request that the word "or disclosed" be struck from what is now Question 2 (which should become Question 3).

*Fourth*, Uber proposes that Questions 5 and 6, relating to the dollar value of any unjust enrichment or the number of any days of development possibly saved, should be revised to request itemized verdicts as to each particular Alleged Trade Secret at issue, rather than an

---

[2] Waymo indicated that it agreed to this change on a meet-and-confer call on October 20, 2017.

DEFENDANTS' CRITIQUE OF TENTATIVE JI AND SPECIAL VERDICT FORM ON TRADE SECRET MISAPPROPRIATION
Case No. 3:17-cv-00939-WHA
sf-3833149

9

aggregate result.  For example, should the jury find that three Alleged Trade Secrets were enforceable, improperly acquired, and used, the jury should be asked to make a separate determination of the dollar amount of any unjust enrichment or the days of saved development time for each of those three Alleged Trade Secrets.  Waymo's unjust-enrichment figures are broken out by alleged trade secret (as they should be), so this question will therefore follow the proof.  Moreover, should the Court or any appellate court overrule the jury's findings of liability on even one of the Alleged Trade Secrets, having an aggregated damages number or days saved would require a full retrial, which would waste judicial and jury resources—an outcome that an itemized verdict form could forestall.

*Fifth*, Uber reserves the right to contest the scope of any injunction based on Question # 6.

*Finally*, in relation to Question 7, as noted above in relation to TJI#19, Uber requests that the line item for the jury to identify the amount of exemplary damages be removed.

DEFENDANTS' CRITIQUE OF TENTATIVE JI AND SPECIAL VERDICT FORM ON TRADE SECRET MISAPPROPRIATION
Case No. 3:17-cv-00939-WHA
sf-3833149

10

1   Dated: October 24, 2017                    MORRISON & FOERSTER LLP

2

3                                              By: _____/s/ Arturo J. González_____
                                                    ARTURO J. GONZÁLEZ
4
                                               MICHAEL A. JACOBS (CA SBN 111664)
5                                              MJacobs@mofo.com
                                               ARTURO J. GONZÁLEZ (CA SBN 121490)
6                                              AGonzalez@mofo.com
                                               MORRISON & FOERSTER LLP
7                                              425 Market Street
                                               San Francisco, California  94105-2482
8                                              Telephone:     415.268.7000
                                               Facsimile:     415.268.7522
9
                                               KAREN L. DUNN (*Pro Hac Vice*)
10                                             kdunn@bsfllp.com
                                               HAMISH P.M. HUME (*Pro Hac Vice*)
11                                             hhume@bsfllp.com
                                               BOIES SCHILLER FLEXNER LLP
12                                             1401 New York Avenue, N.W.
                                               Washington DC  20005
13                                             Telephone:     202.237.2727
                                               Facsimile:     202.237.6131
14
                                               WILLIAM CARMODY (*Pro Hac Vice*)
15                                             bcarmody@susmangodfrey.com
                                               SHAWN RABIN (*Pro Hac Vice*)
16                                             srabin@SusmanGodfrey.com
                                               SUSMAN GODFREY LLP
17                                             1301 Avenue of the Americas, 32nd Floor
                                               New York, NY  10019-6023
18                                             Telephone:     212.336.8330
                                               Facsimile:     212.336.8340
19
                                               Attorneys for Defendants
20                                             UBER TECHNOLOGIES, INC.
                                               and OTTOMOTTO LLC
21

22

23

24

25

26

27

28

1    Dated: October 24, 2017                    GOODWIN PROCTER LLP

2

3

4                                              By  */s/ Neel Chatterjee*
                                                  NEEL CHATTERJEE

5                                              Neel Chatterjee (SBN 173985)
                                               nchatterjee@goodwinlaw.com
6                                              Brett Schuman (SBN 189247)
                                               bschuman@goodwinlaw.com
7                                              Shane Brun (SBN 179079)
                                               sbrun@goodwinlaw.com
8                                              Rachel M. Walsh (SBN 250568)
                                               rwalsh@goodwinlaw.com
9                                              Hayes P. Hyde (SBN 308031)
                                               hhyde@goodwinlaw.com
10                                             Hong-An Vu (SBN 266268)
                                               hvu@goodwinlaw.com
11                                             GOODWIN PROCTER LLP
                                               135 Commonwealth Drive
12                                             Menlo Park, California 94025
                                               Tel.: +1 650 752 3100
13                                             Fax.: +1 650 853 1038

14                                             Attorneys for Defendant
                                               OTTO TRUCKING LLC
15

16

17

18                      **ATTESTATION OF E-FILED SIGNATURE**

19          I, Arturo J. González, am the ECF User whose ID and password are being used to file this

20   document.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Neel Chatterjee has

21   concurred in this filing.

22

23   Dated: October 24, 2017                      */s/ Arturo J. González*
                                                  Arturo J. González

24

25

26

27

28