QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, <br><br> Plaintiff, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, <br><br> Defendants. | CASE NO. 3:17-cv-00939 <br><br> **PLAINTIFF WAYMO LLC'S CRITIQUE OF AND PROPOSED ADDITIONS TO TENTATIVE JURY INSTRUCTIONS ON TRADE SECRET MISAPPROPRIATION AND TENTATIVE SPECIAL VERDICT FORM (ON MISAPPROPRIATION CLAIMS) (DKT. 2010)** <br><br> Judge: The Honorable William Alsup <br><br> Trial Date: December 4, 2017 |

Plaintiff Waymo LLC ("Waymo") submits the following critique of and proposed additions to the Court's Tentative Jury Instructions on Trade Secret Misappropriation ("TJIs") and Tentative Special Verdict Form (On Misappropriation Claims) ("Form") (Dkt. 2010), limited to the areas of most concern as instructed by the Court. *Id.* at 1. Consistent with the Court's instructions, Waymo reserves its right to assert additional objections when the Court specifies. Waymo also renews its request that the Court give the instructions Waymo proposed in the parties' Joint Proposed Jury Instructions (Dkt. 1750) (the "Joint PJIs"), to the extent not included in the TJIs and Form.

## I. THE PARTIES HAVE AGREED TO A STIPULATION.

The parties have reached the following stipulation which will be submitted to the Court in a separate filing: "The parties to this action, through their respective counsel, stipulate that to avoid jury confusion the instructions given to the jury shall be deemed to cover both federal and state law without distinction, except that if any party objects to a specific instruction based on a specific requirement of state or federal law that objection is not waived by virtue of this stipulation. The parties further stipulate that for purposes of Waymo's DTSA claim, defendants will not dispute at trial that the alleged trade secrets, to the extent that any trade secrets are proven to exist, are related to a product or service used in or intended for use in interstate commerce."

## II. THE JURY SHOULD BE INSTRUCTED THAT IMPROPER ACQUISITION ALONE MAY FORM THE BASIS FOR TRADE SECRET MISAPPROPRIATION UNDER BOTH CALIFORNIA AND FEDERAL LAW (TJI##2, 7, 9 & FORM##1-3).

TJI#2 incorrectly provides that, to prove trade secret misappropriation, Waymo must show that the "defendant improperly acquired, *then* used or disclosed the Alleged Trade Secret." (Emphasis added). TJI#2 thus obliges Waymo to prove acquisition *and* use or disclosure. But both the CUTSA and DTSA explicitly provide that misappropriation may be proven through acquisition *or* use or disclosure—acquisition is an independent means of "misappropriation":

> "Misappropriation" means:
> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (2) Disclosure or use of a trade secret of another without express or implied consent . . .

Cal. Civ. Code § 3426.1(b); 18 U.S.C. § 1839(5) (same). Courts applying both the CUTSA and DTSA have affirmed that improper "acquisition" alone constitutes "misappropriation" allowing a plaintiff to seek

-1-

remedies. *See, e.g., San Jose Const., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1544 (2007):

> In its summary judgment motion South Bay asserted that it "did not misappropriate anything." South Bay insisted in its reply that it was undisputed that the project binders were returned to SJC and never used by South Bay to solicit the project owners. There are two deficiencies in this argument. First, as discussed above, whether Foust used the information he had taken from SJC on behalf of South Bay was not undisputed. Second, under the UTSA "misappropriation" can occur through improper *acquisition* of a trade secret, not only through use.[6] On appeal, South Bay does not separately address the misappropriation element, but only insists that the absence of a trade secret vitiates the entire misappropriation cause of action. We have concluded, however, that issues of material fact exist as to both elements. South Bay was therefore not entitled to summary adjudication of the cause of action for misappropriation of trade secrets.

(emphasis in original) (citing Cal. Civ. Code § 3426.1); *ATS Prod., Inc. v. Champion Fiberglass, Inc.*, 2014 WL 466016, at *2 (N.D. Cal. Feb. 3, 2014) (citing *San Jose Constr.*, denying motion to dismiss, and allowing CUTSA claim based purely on acquisition theory of misappropriation); *Source Prod. & Equip. Co., Inc. v. Schehr*, 2017 WL 3721543, at *4 (E.D. La. Aug. 29, 2017):

> Defendants first contend that plaintiffs allege only use of trade secrets, not acquisition of trade secrets by improper means. But the amended complaint clearly alleges that Isoflex USA, Isoflex Radioactive, and McKannay both acquired and used plaintiffs' trade secrets. Thus, plaintiffs may sufficiently plead a DTSA claim by alleging plausible facts in support of *either* the defendants' acquisition *or* their use of trade secrets.

(emphasis added)(citations omitted). California's form instructions follow suit. *See* CACI 4405 & 4401.3.

Waymo has repeatedly asserted improper acquisition as an independent basis for Defendants' liability. Most recently, in the Joint Proposed Pretrial Order (Dkt. 1725), Waymo alleged that "Uber, Ottomotto, and Otto Trucking improperly *acquired*, used, *or* disclosed Waymo-owned information relating to its self driving car technology . . . ." *Id.* at 1 (emphasis added). At trial, therefore, misappropriation by acquisition will be a valid theory of liability that justifies both injunctive relief and damages. The jury should accordingly be instructed that acquisition alone can serve as the basis for liability under both the CUTSA and DTSA. The Court should (1) revise TJI#2 element two to read "[t]hat defendant improperly acquired, used or disclosed the Alleged Trade Secret," (2) make conforming edits to TJI##2 element four and 7, as well as Form##1-3, and (3) insert an instruction regarding Misappropriation by Acquisition based on CACI 4405 before or as part of TJI#9. *See* Joint PJIs at 40.

**III.   THE JURY SHOULD BE GIVEN A MORE COMPLETE INSTRUCTION REGARDING MISAPPROPRIATION BY USE (TJI#11).**

Defendants have repeatedly (and wrongly) claimed that Waymo cannot show trade secret misappropriation by use because their products differ from Waymo's trade secrets in certain respects. *See, e.g.*, Dkt. 330-3 at 3-4. If Defendants are permitted to make this argument to the jury, the jury should also be instructed that a Defendant may still commit misappropriation by use even if its product or process differs from the trade secret in some respects. TJI#11's statement that "[m]isappropriation by use requires actual use" does not address this central issue by defining how much deviation from a trade secret still constitutes "actual use," or indeed by explaining what "actual use" means. This presents significant risk that the jury will incorrectly believe that use must be identical to find misappropriation. To counter this risk and any resulting prejudice to Waymo, the Court should give a more comprehensive instruction, such as this revision to TJI#11:

> Misappropriation by use requires actual use, however employing the trade secrets in manufacturing, production, or research or development all constitute use. Internal experimentation utilizing trade secret information not resulting in a market product can also constitute use. But, it is not enough to speculate that employees of the accused would inevitably have used the claimed trade secret in their work. Misappropriation by use of trade secrets occurs even if the defendant's use differs in some respects from the trade secrets. Waymo need not establish that the defendants used all features, characteristics or elements of the trade secret to establish use.

Waymo's proposed revision to TJI#11 is well-supported by controlling authority. Multiple courts have found that manufacturing, production, internal experimentation and research or development all constitute use. For example, in *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, the court held that internal experimentation not resulting in a market product can constitute use:

> Definition of Use. Before discussing the evidence presented at trial, the parties dispute the definition of 'use.' The parties agree that use does not mean mere possession of a trade secret or mere internal discussion within the company of a trade secret; the parties disagree over whether internal experimentation can constitute use. Based on the California and federal cases presented by the parties, the Court concludes that internal experimentation with trade secret information not resulting in a market product can constitute use. In *AT&T Communications v. Pacific Bell*, 1998 U.S. Dist. LEXIS 13459, at *8 (N.D.Cal.1998), the court rejected the defendant's argument that, for misappropriation and use to occur under the California UTSA, the trade secret information must be sold to the plaintiff's competitors or used to compete directly. As recently stated in *PMC, Inc. v. Kadisha*, 78 Cal.App.4th 1368, 1383, 93 Cal.Rptr.2d 663 (2000), "Employing the confidential information in manufacturing, production, research or development, marketing goods that embody the trade secret, or soliciting customers through the use of trade secret information, all constitute use."

399 F. Supp. 2d 1064, 1072 (N.D. Cal. 2005), *aff'd* 221 Fed. App'x 996 (Fed. Cir. 2007). Similarly, in *SkinMedica, Inc. v. Histogen Inc.*, the court rejected as "misunderstand[ing] the law" defendant's argument that it did not misappropriate trade secrets because it did not use all the claimed elements:

> Lastly, as mentioned above, Histogen argues it has not misappropriated the Bioreactor Method or Concentration System trade secrets because it does not use several of the claimed elements. (MSJ 15–19, 20.) However, this argument misunderstands the law on this point. In the context of trade secret misappropriation, information may be improperly "used" in that it is unlawfully acquired and then built upon or modified before being disclosed or benefit derived. *See, e.g., Speech Tech. Assocs. v. Adaptive Commc'n Sys.*, 1994 WL 449032 at *10 (N.D.Cal. Aug. 16, 1994) (finding misappropriation where some of the technology used in the offending new products was different from that claimed in the trade secret, but most of the functional aspects of the trade secret technology were incorporated) (citing *American Can Co. v. Mansukhani*, 742 F.2d 314, 328–29 (7th Cir.1984) ("[A] party may not use another's trade secret even with independent improvements or modifications so long as the product or process is substantially derived from the trade secret.")) Accordingly, this scattershot attempt to disclaim use of various elements of the claimed trade secrets does not foreclose the possibility that Histogen's process was not substantially derived from the claimed trade secrets, even if it differed in specifics from the process described therein.

869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012).

Defendants' arguments regarding use attempt to exploit a common misperception that misappropriation can only occur when every element of a trade secret is used. That is not the law and it would be error to allow Defendants to evade responsibility by exploiting that misperception. The Court should therefore adopt Waymo's proposed revision to TJI#11.

### IV. THE JURY SHOULD BE INSTRUCTED ON REASONABLE ROYALTY DAMAGES UNDER DTSA AND PURSUANT TO THE SEVENTH AMENDMENT.

#### A. Reasonable Royalty Damages Under DTSA Must Be Determined By The Jury.

The DTSA provides that reasonable royalty damages may be recovered "in lieu of" recovering actual losses or unjust enrichment:

> In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may award in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriation's unauthorized disclosure or use of the trade secret.

18 U.S.C. § 1836(b)(3)(B)(ii). The parallel provision in the Uniform Trade Secrets Act ("UTSA") is substantively identical:

> Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. ==In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.==

*Uniform Trade Secret Act* § 3 (Natl. Conf. of Commissioners on Uniform State Laws 1985), http://www.uniformlaws.org/shared/docs/trade%20secrets/utsa_final_85.pdf.  And indeed, the DTSA's damages provision was "drawn directly" from section 3 of the UTSA:

> ==Subparagraph (B), drawn directly from § 3 of the UTSA, specifies the damage award that a court may issue==. Specifically, it authorizes an award of damages for the actual loss and any unjust enrichment caused by the misappropriation of the trade secret, or, in lieu of damages measured by any other method, an award of a reasonable royalty. It is not the Committee's intent to encourage the use of reasonable royalties to resolve trade secret misappropriation. Rather, the Committee prefers other remedies that, first, halt the misappropriator's use and dissemination of the misappropriated trade secret and, second, make available appropriate damages.

S. Rep. No. 114-220, at 9 (2016) (citation omitted).

As the DTSA has only recently come into effect, Waymo has found no decision specifically deciding whether reasonable royalty damages under the DTSA must be tried to the jury.  However, federal courts resolving claims under parallel state statutes with damages provisions mirroring the UTSA language highlighted above—the direct source of the relevant provision in the DTSA—have repeatedly found that a plaintiff *has* a right to have reasonable royalty determined by a jury.  *See, e.g.*, *MSC. Software Corp. v. Altair Eng., Inc.*, 2016 WL 1714873, at *2 (E.D. Mich. Jan. 7, 2016) (holding that plaintiffs under Michigan UTSA are entitled to a jury trial on reasonable royalty as well as unjust enrichment); *Secure Energy, Inc. v. Coal Synthetics, LLC*, 708 F. Supp. 2d 923, 931-33 (E.D. Mo. 2010) (denying defendant's motion for summary judgment on Missouri UTSA claim and noting that plaintiff was entitled to present reasonable royalty arguments to a jury).  In addition, multiple Courts of Appeal have affirmed jury verdicts deciding reasonable royalties under state versions of the UTSA. *See, e.g. Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1188-90 (10th Cir. 2014) (Gorsuch, J.) (affirming $2.92 million jury award for reasonable royalties under the Utah UTSA); *Mid-Michigan*

*Computer Sys., Inc. v. Marc Glassman, Inc.*, 416 F.3d 505, 510, 512 (6th Cir. 2005) (affirming $2 million jury award for reasonable royalty under the Ohio UTSA and quoting jury instruction on same). Cases applying common law to trade secret claims have reached the same result. *See, e.g.*, *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 186–88 (S.D.N.Y. 2002) (sending reasonable royalty for trade secret appropriation to the jury under New York common law); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 534-540 (5th Cir. 1974) (affirming district court's charging the jury with instructions regarding "reasonable royalty" damages under Georgia common law). As the same language at issue in DTSA has repeatedly been found to confer a right to a jury determination of reasonable royalty, the jury in this case should likewise be instructed on this measure of damages.

If reasonable royalties under the CUTSA need not be tried to the jury, this does not mean that reasonable royalty claims under the DTSA may follow suit. As courts have noted, the CUTSA deviated from the UTSA and federal patent law in providing for reasonable royalties:

> Reasonable royalties for trade secret infringement are authorized by § 3426.3(b) which provides in pertinent part: "[i]f neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty...." Under the plain language of the statute and California case law, "reasonable royalty is reserved for those instances where the court finds that neither actual damages to the holder of the trade secret nor unjust enrichment to the user is provable." *Morlife v. Perry*, 56 Cal.App.4th 1514, 1529, 66 Cal.Rptr.2d 731 (1997). California law differs on this point from both the UTSA and Federal patent law, neither of which require actual damages and unjust enrichment to be unprovable before a reasonable royalty may be imposed. *See* UTSA § 3(a) (1990) ("*[i]n lieu of damages measured by any other methods, the damages ... may be measured by imposition of ... a reasonable royalty ...*") (emphasis added); 35 U.S.C. § 284 (1998) ("the court shall award the [patent] claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty ...").

*Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619, 623 (9th Cir. 1999) (emphasis in original). Specifically, the language detailing who imposes a reasonable royalty differs in CUTSA and UTSA:

> Section 3426.3 of the California Act provides further that: "If neither damages nor unjust enrichment caused by misappropriation are provable, *the court* may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited." This provision differs from other Uniform Acts and has been found to be the basis for holding that a trade secret owner does not have a right to a jury trial on the reasonable royalty issue in a trade secrets case. The court, and not a jury, must decide the issue in California state courts. However, a plaintiff does have a right under the Seventh Amendment of the U.S. Constitution for a jury trial on the same issue if the trade secrets case is in a federal court in California based on diversity.

Melvin F. Jager, 1 *Trade Secrets Law* § 3:42 (2017) (emphasis in original) (citations omitted); *see also Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1311 (2010) (explaining origin of distinctive language in Cal. Civ. Code § 3426 as California legislature's attempt to rectify absence of a reasonable royalty provision in pre-1985 version of UTSA). This distinction carries through to the DTSA. Under the CUTSA, a reasonable royalty may be imposed by "the court," while damages for actual loss or unjust enrichment contain no such language. *Compare* Cal. Civ. Code § 3426.3(b) *with* (a). But under the DTSA, *every* remedy, including damages for actual loss or unjust enrichment, is imposed by "the court." *See* 18 U.S.C. § 1836(b)(3).

The plain language of the federal DTSA was intended to bring uniformity to trade secret law and relied on the UTSA in doing so. Like the UTSA, the DTSA provides a right to a jury trial on *all* damages, including a reasonable royalty. The jury should be instructed accordingly.

**B.    The Seventh Amendment Requires That The Jury Decide Reasonable Royalty.**

Waymo also has a right under the Seventh Amendment to have its claim for a "reasonable royalty" tried by a jury. The court's analysis in *MSC. Software Corp.* is instructive:

> The Supreme Court's Seventh Amendment jurisprudence is well established: "First, we compare the statutory action to 18th century actions brought in courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinancieria S.A. v. Nordberg,* 492 U.S. 33, 42 (1989).
> Under the MUTSA, once a plaintiff proves that misappropriation of trade secrets has occurred, it is entitled to damages. Misappropriation can occur in a number of different ways and different factual scenarios and the statute provides alternative methods to calculate damages once misappropriation has been established. The presence of different theories of damages does not change the legal claim for misappropriation. As MSC points out, claims for misappropriation of trade secrets historically have been tried to juries, including liability and damages. . . . Moreover, courts considering the issue have concluded that actions seeking damages for the misappropriation of trade secrets are legal in nature for which a right to a jury trial exists.
> Moreover, courts considering the issue have concluded that actions seeking damages for the misappropriation of trade secrets are legal in nature for which a right to a jury trial exists.
> Accordingly, MSC's claim for claim for misappropriation of trade secrets under MUTSA is a tort action at law. MSC is therefore entitled to a jury trial on all aspects of the claim, including damages under an unjust enrichment theory.

2016 WL 1714873, at *1-2 (citations omitted from third and fourth paragraph); *see also De Lage Landen Op. Servs., LLC v. Third Pillar Sys., LLC*, 2011 WL 1627899, at *1-3 (E.D. Pa. Apr. 28,

2011) (conducting similar analysis). Here, there can be no question that a "reasonable royalty" under DTSA—which explicitly provides an alternate "measure[]" of the "damages caused by the misappropriation," *see supra* at 4—is a monetary, classically legal remedy, and one long-recognized under both trade secret and patent law. This claim must therefore be put to the jury.

The court's decision in *De Lage* suggests that even "reasonable royalties" *under the CUTSA* must be tried to the jury if brought in a federal court. 2011 WL 1627899. In *De Lage*, the court directly addressed "whether plaintiff's damage claim for reasonable royalties under the [CUTSA], is to be decided by a judge or by a jury," *id.* at *1, and concluded that where such claims are brought in federal court, the Seventh Amendment requires a jury trial (at least in the context of a diversity claim):

> Our first step is to determine whether the type of claim before us either existed or is analogous to any tort actions recognized at common law at the time the Seventh Amendment was ratified in 1791. *See Curtis,* 415 U.S. at 195–96; *see also Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 376, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The CUTSA was "intended to codify the common law" of trade secret misappropriation. *See Ajaxo, Inc. v. E*Trade Fin. Corp.,* 187 Cal.App.4th 1295, 115 Cal.Rptr.3d 168, 181 (Cal.Ct.App.2010). The earliest recorded trade secret case at common law in the United States took place in 1837 regarding an agreement by a defendant not to disclose the plaintiff's secret manner of making chocolate. *See Vickery v. Welch,* 36 Mass. 523 (1837); *see also* Michael P. Simpson, *Note: Future of Innovation Trade Secrets, Property Rights, and Protectionism—an Age–Old Tale,* 70 Brooklyn L.Rev. 1121, 1138 (2005). In England, the earliest recorded case was an unsuccessful attempt in 1817 to obtain an injunction against the disclosure of a secret invention. *See Newberry v. James,* 35 Eng. Rep. 1011 (Ch. 1817). Since trade secret actions did not exist in 1791, we must assess whether any analogous actions were extant in that era.
> Our Court of Appeals has held that a close analog to trade secret misappropriation actions are cases involving patent infringement. *See Int'l Indus., Inc. v. Warren Petroleum Corp.,* 248 F.2d 696, 699 (3d Cir.1957). The Supreme Court has recognized that "the descent of today's patent infringement action [comes] from the infringement actions tried at law in the 18th century, and there is no dispute that infringement cases today must be tried to a jury, as their predecessors were more than two centuries ago." *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 377, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). A jury's award of reasonable royalties is "not restitutional in nature," but "simply money damages awarded in an action at law." *See Injection Research Specialists, Inc. v. Polaris Indus. L.P.,* Nos. 97–1516, 97–1545, 97–1557, 1998 U.S.App. LEXIS 18745, *42 (Fed.Cir. Aug. 13, 1998). The close relationship between a patent infringement action and a trade secret misappropriation action weighs in favor of a Seventh Amendment right to a jury trial on the issue of reasonable royalties under the CUTSA.
> As to the second prong of the analysis, DLL is seeking to recover money damages, which are the classic form of legal relief. *See Unisys Corp. Retiree Med. Benefits Erisa*

> *Litig. v. Unisys Corp.,* 579 F.3d 220, 238 (3d Cir.2009). Reasonable royalties in patent infringement actions have also been characterized as money damages awarded at law. *See, e.g., Injection Research,* 1998 U.S.App. LEXIS at *42. This factor also weighs in favor of Third Pillar's right to have the jury decide whether or not to award a reasonable royalty.
>
> In sum, the Seventh Amendment to the Constitution guarantees Third Pillar the right to a jury determination of reasonable royalties under the CUTSA. Accordingly, if Third Pillar's unjust enrichment is determined to be unprovable at trial, the issue of reasonable royalties under the CUTSA will be decided by the jury.

*Id.* at *3. There is no reason why a dissimilar result should obtain here.

Failing to put reasonable royalties to the jury would contravene established precedent, violate Waymo's rights under the Seventh Amendment, and needlessly cause reversible error. Putting this question to the jury would not be error, however, as even if the Court were to find that the jury's verdict is not controlling under the CUTSA, it may treat that finding as advisory:

> Even if the issue of a reasonable royalty is not triable of right by a jury, the court may utilize an advisory jury. *See* Fed.R.Civ.P. 39(c). To the extent a jury is not authorized, the court will submit the issue of reasonable royalties to the jury in its advisory capacity.

*De Lage* at *3 n.3. Accordingly, the Court should instruct the jury to return a finding on "reasonable royalties." In particular, the Court should modify TJI##2, 16, 17, and 19, and Form##4 and 5, in light of Waymo's Proposed Joint PJIs Nos. 48-50. *See* Dkt. 1750 at 1, 108, 111-112, 114-117.

## V. THE INSTRUCTIONS REGARDING UNJUST ENRICHMENT (TJI##14 & 16) SHOULD BE REVISED TO EXCISE CONFUSING AND PREJUDICIAL LANGUAGE.

### A. TJI#14 Should Not Use A Single Example Of Accelerated Development.

TJI#14 should be amended to remove the example it provides—namely, a misappropriator's "accelerating its own development timeline." This example focuses the jury on a single estimation of unjust enrichment, which is both confusing and unfairly devalues other damages measures Waymo has asserted, including unjust enrichment based on the development costs Defendants saved through their misappropriation . If the Court concludes that the jury should be given more direction on this issue, TJI#14 should include both of Waymo's asserted theories of unjust enrichment.

### B. TJI#14 Should Not Reference "Benefits [Which] Would Have Been Realized Anyway".

TJI#14's statement that "[u]njust enrichment does not occur, however, where the benefit would

-9-

have been realized anyway" departs significantly from the definition offered by the parties themselves, *see* Joint PJIs at 106-107 (based on CACI 4410), and fails to provide the jury with meaningful guidance about when a benefit "would have been realized anyway." That clause is also confusing when read with the remainder of TJI#14; for instance, a jury could easily conclude that Defendants might have developed similar technology to Waymo's twenty years in future, and thus that the "benefit would have been realized anyway," *notwithstanding* any "accellerati[on in Defendants'] own development timeline" in reaching that point. *See supra* § V.A. Moreover, this provision needlessly overlaps with the causation instructions in TJI#15. *Id.* ("Conduct is not a substantial factor in causing unjust enrichment if the same enrichment would have occurred without that conduct.").

### C. TJI#16 Is Unnecessary And Unduly Prejudicial And Should Be Eliminated.

TJI#16 should be eliminated as unnecessary and unduly prejudicial. TJI#16 requires that if the jury finds liability, it "must decide whether Waymo has proven a dollar value for the unjust enrichment by that defendant." *First*, the phrase "prove[] a dollar value" implies that Waymo bears a burden to demonstrate a particular amount of damages with respect to a particular Defendant. This is not the case; in fact, CACI 3933 (cited by Defendants in the Joint PJIs) expressly warns the jury against such apportionment: "Do not attempt to divide the damages [between/among] the defendants." Joint PJIs at 124. *Second*, TJI#16 interjects an unnecessary and artificial step between a finding of liability and a determination of damages. The jury cannot be permitted to find liability, but then find that Waymo has failed to "prove" a particular dollar amount and stop there. Rather, the jury must determine the amount of damages as a question of fact. *Third*, the instruction that liability must be determined on a per-Defendant basis is included in other TJIs and need not be repeated, as any Defendant not found liable will be excluded from the damages calculation. *See, e.g.*, TJI#2; Form##1-2.

## VI. THE COURT SHOULD DEFER TJI#17 TO THE CHARGE CONFERENCE.

Waymo and Defendants have met and conferred regarding TJI#17, which tasks the parties with submitting proposed measures of damages. Waymo proposes that the Court defer ruling on whether TJI#17 is necessary and, if necessary, on the specific language to be used, until the charge conference because TJI#17 will be significantly impacted by the evidence presented at trial, and whether the Court determines that the jury will decide reasonable royalty damages. *See supra* § IV.

DATED: October 24, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC