

Neel Chatterjee
+1 650 752 3256
NChatterjee@goodwinlaw.com

Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025

goodwinlaw.com
+1 650 752 3100

October 20, 2017

**VIA ECF**          **UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
United States District Court for the Northern District of California
Phillip Burton United States Courthouse
450 Golden Gate Avenue
Courtroom F - 15th Floor
San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, LLC, et al.* **(Case No. 3:17-cv-00939-WHA)**

Dear Magistrate Judge Corley:

Otto Trucking requests that the Court compel: (1) production of documents by Waymo relating to its investigation of departing employees from Google to Ottomotto that began in August 2015 and continued until February 2017; (2) additional depositions with respect to any new documents produced; and (3) Keker Van Nest & Peters LLC ("KVP") to produce the documents requested by Otto Trucking's subpoena which are only available from KVP.  Based on recent discovery, Otto Trucking has learned that Waymo and KVP are improperly withholding important materials that are part of a broader subject matter waiver.  Throughout this case Waymo has represented that its forensic investigation into Mr. Levandowski was separate from the broader investigation it made into departing Chauffeur employees.  On this basis, Waymo improperly attempted to limit its subject matter waiver to the forensic investigation of Mr. Levandowski and, to a lesser extent, two other Chauffeur employees.  The newly discovered evidence shows that: (1) the investigation was part of an integrated investigation where forensics was a part, and which was informed by the rest of the investigation; and (2) KVP created and used documents for the investigation that were not produced by Waymo in this case.

Special Master Cooper requested that Otto Trucking include a statement that Waymo will discuss a briefing schedule on this Motion at the October 23 hearing before Your Honor.  Mr. Cooper also indicated that Waymo is permitted to file an Opposition brief after that hearing according to the briefing schedule.
//
//

//
//

                                                        Respectfully submitted,

                                                    */s/ Neel Chatterjee*

                                                    Neel Chatterjee
                                                    GOODWIN PROCTER LLP

                                                    *Attorneys for Defendant*
                                                    Otto Trucking LLC

cc:  Counsel of Record (via ECF); Special Master Cooper



Neel Chatterjee
+1 650 752 3256
NChatterjee@goodwinlaw.com

Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025

goodwinlaw.com
+1 650 752 3100

Otto Trucking requests that the Court find a broader subject matter waiver than Waymo originally represented and that the Court compel KVP to produce documents wrongfully withheld and not available from Waymo.  In late August, the Court limited Waymo's privilege waiver to only its forensic investigation of Anthony Levandowski and two other former Chauffeur employees based on representations by Waymo that its work relating to searching emails, interviewing employees, and investigating other former employees was separate and distinct from the investigation of Anthony Levandowski.  *See* Dkt. No. 1272.  As the Court stated, the rulings limiting Otto Trucking's relief was based on information available prior to Waymo's productions and depositions and only "for now."  *Id.*; *see also* Declaration of Hong-An Vu ("Vu Decl.") Exh. 1.

Waymo's representations about the separateness and irrelevance of other aspects of its investigation are untrue.  In particular, the expert report served on September 14 of Waymo's forensic expert, Paul French, and his deposition taken on October 3 both call into question Waymo's ability to limit its privilege waiver.  Documents and testimony have shown that Waymo's forensic investigation of Anthony Levandowski was part and parcel of one broad investigation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Indeed, Mr. French expressly relied on the breadth of Waymo's investigation as a primary reason why the investigation was unbiased, sound, and proper.  Accordingly, Waymo has relied on the very information that it claimed to not be part of the forensic investigation and irrelevant to this case. Testimony from Waymo's expert also suggests that KVP has materials that the Waymo employees did not have due to KVP's role in overseeing the investigation.  As this Court has found, Waymo's investigation is the "centerpiece" of its case, and Otto Trucking should be permitted to explore the very issues upon which Waymo premises this entire lawsuit.  Vu Decl. Exh. 1.

Otto Trucking requests that the Court order:

- Waymo to produce documents relating to its investigation of Mr. Levandowski and other Ottomotto employees who left Google for Ottomotto from August 2015 to February 2017;
- Additional depositions with respect to any new documents produced; and
- KVP to produce the documents requested by Otto Trucking in the KVP subpoena.

### I.   WAYMO HAS FAILED TO PRODUCE ALL DOCUMENTS AND INFORMATION SUBJECT TO THE WAIVER

Waymo's has:  (1) improperly limited the time frame of its waiver; and (2) improperly limited the scope of its subject matter waiver.  These two issues are discussed below.

#### A.   Waymo Improperly Limited The Time Frame Of Its Waiver.

Otto Trucking requests that the Court compel documents relating to Waymo's investigation of Ottomotto employees who were under investigation by Google between August 2015 and February 2017 and that have not yet been produced.  To date, Waymo has limited the time frame of its waiver to February 2016-February 2017.  The evidence now shows that the investigation covered a longer span of time.

1

Otto Trucking has only recently learned that Waymo's investigation actually went back to August 2015. On September 7, Otto Trucking submitted an expert report in which Otto Trucking's expert, Erik Laykin, opined about the soundness and methodology of the forensic investigation conducted by Google. Based on the documents produced in this case, Mr. Laykin described the investigation as having two phases—one that began shortly after Mr. Levandowski's departure in February 2016 and another that began in the summer of 2016.

In the response report of Waymo's forensic expert, Paul French, Waymo revealed for the first time that its investigation of the Former Employees did not begin in February 2016, but rather in August 2015. Vu Decl. Exh. 2 ¶ 17 ("Based on the evidence I have reviewed, it is my understanding that *the overall investigation into the Former Employees began as early as August 4, 2015*" (emphasis added)). In support of this contention, Mr. French cites to a single email wherein Mr. Levandowski's supervisor, Chris Urmson, communicated his suspicion that Mr. Levandowski was recruiting individuals to leave for Uber in August 2015. *Id*. Mr. French then cites to a second email from January 18, 2016—prior to Mr. Levandowski's departure—wherein Mr. Urmson expresses those same suspicions again. *Id*.

Otto Trucking is entitled to any investigative information going back to August 2015 as the Court has already found that Waymo waived privilege as to the investigation into the Former Employees. Dkt. No. 1272.

Waymo should not be allowed to claim privilege over any communications relating to this part of the investigation, while simultaneously introducing facts not found in Waymo's productions to rebut or criticize Otto Trucking's expert opinions about the forensic investigation. This is a classic misuse of privilege as a sword and shield. *See Theranos, Inc. v. Fuisz Techs., Ltd.*, No. C 11-5236 PSG, 2013 WL 2153276, at *4 (N.D. Cal. May 16, 2013) (enforcing a "broad waiver" "to prevent the 'cherry-picking the selective communications that [were] favorable to" disclosing party); *Coleman v. Sterling*, No. 09-CV-1594 W BGS, 2011 WL 2005227, at *1, *4 (S.D. Cal. May 23, 2011) (overruling objection to discovery order and requiring defendants to produce complete investigative reports based on voluntary and selective production of privileged materials); *Walker v. Cty. of Contra Costa*, 227 F.R.D. 529, 533 (N.D. Cal. 2005) (party loses "work product and attorney-client privileges" when relying on an investigation to prove a claim or defense). Waymo should be required to produce any documents and communications relating to its investigation from August 2015 to February 2016.

### B.  Waymo Waived Privilege As To Its Entire Investigation, Not Just The Forensic Investigation Of Mr. Levandowski.

Waymo previously represented that its forensic investigation was a distinct project apart from other investigative work that was being conducted at the same time. In particular, Waymo convinced the Court to exclude Waymo's investigation into (i) the security and discovery aspects of its investigation; and (ii) all other former employees who left Google for Ottomotto.

The idea that Waymo conducted separate and distinct investigations is a fiction. In reality, Waymo conducted one intertwined investigation that cannot be artificially dissected. Subsequent discovery has shown that Waymo continues to abuse the privilege and work product doctrines by selectively waiving privilege over its investigation where doing so would be helpful, while withholding other information.

When a party waives privilege, subject matter waiver is proper "to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *Century Aluminum Co. v. AGCS Marine*

2

*Ins. Co.*, 285 F.R.D. 468, 472 (N.D. Cal. 2012) (granting motion to compel after finding scope of insurer's waiver of attorney-client privilege and work product protection by selective disclosure of investigation extended to all of counsel's communications and work product on subject matter where insurer); *Theranos*, 2013 WL 2153276 , at *3–5.  Here, the subject matter waived was as to one large, intertwined investigation as supported by the evidence, discussed below.  *See* Vu Decl. Exh 3 at 78:10–79:17, 83:18–22, 88:10–15.

        1.        <u>Waymo Should Provide Discovery As To All Aspects Of Its Investigation.</u>

Discovery now available make clear that there were not three investigations conducted by Waymo—forensic, security, and discovery—but rather one, intertwined investigation that was overseen by the same individuals at KVP that cannot be "divided" as Waymo has done.  *See id.* at 81:17–82:3 (explaining that the investigation cannot be divided where the information from "a different investigation" is relevant to the forensic investigation).

In August 2016, when Waymo re-initiated the investigation into Mr. Levandowski and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, it was KVP who sent out a memo outlining the scope of the investigation that included both an email and forensic review—*i.e.* what Waymo called the discovery (email) and sec-ops (forensic) aspects of the investigation. *Id.* Exh. 4.  A third aspect of the investigation, termed "security," included interviewing certain current and departing Chauffeur employees about Mr. Levandowski's activities to "get the relevant history to inform our investigation." *Id*. Exhs. 5, 6.

Information obtained by the security team's interviews was provided to the entire investigative team as reflected in the investigative notes covering forensic, discovery, and security work. *Id*. Exh. 6.  The purpose of sharing the results of these interviews was to "ensure that we have the complete back story to fill in our search terms and approach." *Id*. Exh. 5.  The security team continued to be connected to the other aspects of the investigation, including at times coordinating members of the forensic team. *Id.* (email from Waymo attorney Kevin Vosen to security team members Leah Bijnens, Robin Stearns, and Ryan Blackhart and also forensic (*i.e.*, "secops") team members Abraham Lu and Kristinn Gudjonsson ("Kiddi"): "Leah, can you attend?  Can you impress upon Abe/Kiddi that this is a high priority and Secops needs to step it up?").

The KVP memo was shared with Kristinn Gudjonsson, who oversaw the forensic portion of the investigation—in an email chain that included Leah Bijnens and Robin Stearns of the security team, and Ryan Blackhart of the discovery team—that Waymo claimed were part of discreet parts of the investigation. *Id.* Exh. 7.  In this communication, Mr. Gudjonsson discussed the overlap between the forensic and discovery investigation. *Id.*  Moreover, the team later discussed sharing keywords used from the email searches conducted by the discovery team. *Id.* ("[Y]ou can contact the discovery team regarding section II, albeit some of it will also be encompassed in [the forensic] scope" and sharing search terms from the discovery team); *see also id.* Exh. 2 ¶ 28 (noting the sharing of search terms form the discovery).

Any contention that these teams were not part of the same intertwined investigation is undermined by the evidence now uncovered in discovery.  That evidence now shows that these teams were all in communication with each other, shared notes with each other, had group meetings together, and were all together directed by the same attorneys, including those from KVP.  *See, e.g*., *id.* Exh. 8 (team meeting notes); Exh. 6 (Chauffeur investigation notes including all three teams); Exh. 9 (email thread coordinating between teams by KVP attorneys).  For instance, although Google Drive materials were part of the work

conducted by the discovery team, *id.* Exh. 9, it was Gary Brown of the "secops" team who provided the declaration regarding improper Google Drive conduct as part of the preliminary injunction proceedings.

As the Court suspected at the August 31 hearing, the investigation into Mr. Levandowski was part and parcel of one expansive investigation into all other departing employees who went to Ottomotto. *See id.* Exh. 3 at 68:7–21. Based on these facts, it is not possible for Waymo to have waived privilege as to only its forensic investigation of three individuals. Otto Trucking thus requests that the Court broaden the privilege waiver as to all aspects of the investigation.

> 2. <u>Waymo's Representations That It Would Not Rely On The Investigation Of Other Former Employees In This Litigation Was False.</u>

In the proceedings before the Court, Waymo repeatedly represented to the Court that it was not relying on the investigation of any former employees other than Mr. Levandowski, Mr. Raduta, and Mr. Kshirsagar to limit the scope of its privilege waiver. *See, e.g.*, *id.* at 22:16–18 (". . . we have not waived with respect to those investigations. We're not relying on them in this case, and they're not relevant to this case."). The Court accepted Waymo's representation and limited the waiver.

However, contrary to Waymo's representations, it has in fact relied on the investigation of other employees to attack the opinion of Otto Trucking's expert, Erik Laykin, who opined that Waymo's investigation was biased. Waymo's expert, Mr. French, repeatedly responded to Mr. Laykin's opinion by claiming that Waymo's investigation was sound and unbiased *because* other former employees were included in the investigation:

- "In the same email, Mr. Lu identified ▮▮▮▮▮▮▮ individuals whose devices would be examined by the Waymo forensics team: ▮▮▮ skshirsagar, rradu, ▮▮▮▮▮▮▮ 16 Mr. Levandowski was not even in this initial list, making even more clear to me that the forensics team was not exclusively interested in Mr. Levandowski, nor affected by a predetermination of his guilt."

- "As the title implies, the investigation was not targeted at Levandowski, and carried no predetermination of guilt by Levandowski or anyone else. Rather, the document states clearly that the investigation was focused on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"

*Id.* Exh. 2 29–30.

Doubling down on this position, during his deposition on October 3, Mr. French testified that Mr. Levandowski wasn't even the focus of Waymo's investigation:

- Q. Is it your opinion that at this stage of the investigation Anthony Levandowski was not a focus of the investigation? A. I don't believe he was a focus.

- Q. Would you agree that the focus of the investigation was on Anthony Levandowski? A. Well, to me, this appears the focus was on him and ▮▮▮▮▮▮▮

*Id.* Exh. 10 at 194:4–8; 196:15–20.

But Waymo has adamantly refused to provide a complete record of its investigation into other former

4

employees.  Waymo has selectively used parts of the investigation of other employees to attack Otto Trucking's expert, while withholding other evidence and information that would allow Otto Trucking to evaluate Waymo's claims and respond to Waymo's expert.  Again, Waymo has engaged in the classic sword-shield misuse of privilege.  *See Theranos*, 2013 WL 2153276, at *4; *Coleman*, 2011 WL 2005227, at *3.  The Court should not allow this abuse and should expand the scope of Waymo's privilege waiver as to all other former employees.

## II.  THE COURT SHOULD REQUIRE KVP TO PRODUCE THE DOCUMENTS REQUESTED BY OTTO TRUCKING'S SUBPOENA

When Judge Corley quashed the subpoena as to KVP, including the request for documents in KVP's possession, she did so "for now" as Otto Trucking had not yet deposed Gary Brown, Kristinn Gudjonsson, and Sasha Zbrozek first, which could cause "something to come up" that would allow her to reconsider her decision.  *See id.* Exh. 1 at 16:7–18.  Now that the relevant depositions are completed, Otto Trucking contends that there are materials subject to Waymo's privilege waiver that is in KVP's possession that should be produced.  As such, Otto Trucking renews its request to obtain documents requested by the subpoena it issued to KVP that was in its request for relief from the granting of the motion to quash, to which Judge Alsup directed Otto Trucking to return to Judge Corley on October 6.

Waymo's 30(b)(6) witness on the investigation, Gary Brown, could not recall a number of factual aspects of Waymo's investigation.  He could not recall, for instance, what was discussed in meetings with KVP attorneys regarding the forensic investigation; whether KVP attorneys asked him to investigate other employees besides Messrs. Levandowski, Raduta, and Kshirsagar; what KVP attorneys explained to him about Mr. Levandowski's download behavior; the reasons for why Waymo was investigating this subset of employees; who asked that Waymo investigate whether trade secrets had been taken; or which KVP attorneys provided search terms to run for the investigation.  *See, e.g.*, *id.* Exh. 11 at 318:24–319:16; 352:13–21; 361:23–24; 364:7–9; 378:18–379:8; 401:13–17; 406:21–407:16.

Messrs. Zbrozek and Gudjonsson similarly could not testify about significant aspects of the investigation that were in the control of KVP.  *See, e.g.*, *id.* Exh. 12 at 190:15–191:10; 198:14–199:7; 199:8–201:4; 213:3–10; 216:8–24; 229:20–25; *see also id.* Exh. 13 at 279:9–282:10; 335:1–336:17, 347:9–22, 379:10–17, 448:3–449:8.

When asked about Mr. Brown's lack of knowledge about certain aspects of the investigation, Mr. French, testified that he believed KVP attorneys had access to different information than Waymo employees, including Mr. Brown, Waymo's 30(b)(6) witness:

> What I believe is *Keker is getting access to information that Mr. Brown may not have access to or may not even know about, because, you know, Mr. Gorman's at a higher-level investigation*. He sees the bigger picture of what -- of what Waymo needs as far as figuring out the fact pattern, and so it's not uncommon for the attorneys and the legal folks to get access to documents and logs and pass them down to other parts and other individuals and other divisions. Especially in a large company, I have seen that on numerous occasions.

*Id.* Exh. 10 at 221:12–222:4 (emphasis added).

Based on the available discovery, it is clear that KVP has factual information relating to Waymo's

5

investigation that has been improperly withheld or that could not be answered by Waymo's fact witnesses.  Unlike opinion work product, factual work product in the possession of KVP is subject to Waymo's waiver of privilege as to its investigation.  *See, e.g.*, *U.S. v. Nobles*, 422 U.S. 225, 239 (1975) (holding that the defendant, "by electing to present the investigator as a witness, waived the [work-product] privilege with respect to matters covered in his testimony."); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577–78 (9th Cir. 1992); *see also In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) ("When faced with the distinction between where that line lies, however, a district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product.").  The Court should order KVP to produce all documents and communications containing fact work product relating to Waymo's investigation.

### III.  OTTO TRUCKING'S MOTION IS TIMELY

Otto Trucking has not unreasonably delayed in seeking to expand the scope of Waymo's waiver and has timely brought this motion.  As the Court has made clear, before the Court would reconsider broadening the waiver and reconsidering the subpoena for documents and testimony from KVP, Otto Trucking had to first take the permitted depositions.  The depositions of Waymo's fact witnesses occurred on September 6 and 8.  Waymo served the expert report of Paul French, who expressly relied on aspects of the investigation that Waymo tried to argue was not waived and was irrelevant to the current dispute, on September 14.  Mr. French was not available for deposition until October 3.  Otto Trucking did not move to expand the waiver prior to taking the permitted depositions, because it did not want to file such a Motion unless there was an evidentiary basis to do so; and it already had a pending Motion for Relief from Nondispositive Pretrial Order covering many of these issues before Judge Alsup.

On October 6, Judge Alsup denied Otto Trucking's request for relief from Judge Corley's order quashing the KVP subpoena, finding that Judge Corley's ruling was without prejudice, and directing Otto Trucking to return to Judge Corley.  *See* Dkt. No. 1970 ("Judge Corley quashed the KVP subpoena 'for now' with the caveat that '[s]omething may come up' to warrant revisiting the issue" and stating that Otto Trucking should raise this issue before Judge Corley "in the first instance.").

Thus, Otto Trucking now raises the issue of the scope of the waiver with the information obtained in discovery and from depositions previously unavailable, and in compliance with the October 20, 2017 deadline to seek any additional discovery.  *See* Dkt. No. 1964.

Otto Trucking anticipates that Waymo will argue that this Motion is untimely because:  (1) Docket No. 1964 did not apply to Otto Trucking; and (2) even if it did, the Order did not contemplate new discovery.  Otto Trucking contends that Docket No. 1964 applied to all parties, as it would be inequitable for only Waymo to have an extension on seeking additional discovery but not Defendants.  In addition, the relief sought in this Motion is not new discovery.  Otto Trucking is seeking relief based on the Judge Alsup's October 6 Order, and this Court's Orders granting the privilege waiver and the Motion to Quash "for now," as well as the denial of Otto Trucking's Motion to Compel the deposition of Mr. Krafcik.  These are all previously-raised issues for which the Court ruled subject to a later brought Motion based on the evidentiary record.  The current Motion is timely and relies on recently discovered information.

6