MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel: 415.268.7000 / Fax: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Tel: 202.237.2727 / Fax: 202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: 212.336.8330 / Fax: 212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | Case No.   3:17-cv-00939-WHA<br><br>**UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S RESPONSE TO WAYMO LLC'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT OF THE PRELIMINARY INJUNCTION ORDER (DKT. 426) AND EXPEDITED DISCOVERY ORDER (DKT. 61)**<br><br>Trial Date: December 4, 2017 |

## I. INTRODUCTION

Waymo's contempt motion is baseless. Uber and Ottomotto (collectively, "Uber") have not violated the Court's March 16 Expedited Discovery Order or the May 11 Preliminary Injunction Order ("PI Order").

First, Uber never had possession or control of the two personal laptops of Mr. Levandowski cited by Waymo. Mr. Levandowski refused to provide these laptops to Uber. His counsel provided only search results; responsive results were produced, and all results were made available to Waymo for inspection. None of the search results included downloaded materials.

Second, Uber has not made misleading representations to the Court. Counsel for Uber accurately explained to the Court that Uber has been prevented from analyzing Mr. Levandowski's personal computers based on his assertion of the Fifth Amendment, and that there is no evidence that anybody at Uber knew that Mr. Levandowski improperly downloaded the 14,000 files. Similarly, Uber has not misled the Court regarding Stroz materials or Mr. Levandowski's five Drobo disks.

Uber has substantially complied with this Court's Orders, and Waymo has not suffered any prejudice related to Mr. Levandowski's personal computers or Uber's representations to the Court. An adverse inference is not appropriate under these circumstances.

## II. UBER DID NOT VIOLATE COURT ORDERS OR MISLEAD THE COURT REGARDING ANTHONY LEVANDOWSKI'S PERSONAL COMPUTERS.

### A. Uber Has Never Had Mr. Levandowski's Personal Laptops.

Waymo's claim that Uber has "not used the full extent of their authority" regarding Mr. Levandowski's personal computers wrongly assumes that Uber has control over those devices. (Dkt. 2053-4 ("Br.") at 11:21-22, 12:10-11.) Uber does not and has never had Mr. Levandowski's personal computers or forensic images of them. (*See* Dkt. 2020 ¶ 4 ("Our collection of imaged devices does not include the two Levandowski personal computers that are the subject of part I of Waymo's motion. We do not know the whereabouts of those computers. Based on our investigation, Uber also does not know the whereabouts of those computers.").)

DEFS' RESPONSE TO PLF'S 2ND SUPPL. BR. FOR MOT. FOR ORDER TO SHOW CAUSE
Case No. 3:17-cv-00939-WHA
sf-3834663

1

On April 20, Angela Padilla sent a letter to Mr. Levandowski directing him to turn over his personal computers so that Uber could inspect them. (Dkt. 2053-5.) Mr. Levandowski refused. (Dkt. 2018-3 ¶ 2.) Goodwin Procter LLP,[1] however, agreed to search the two personal computers for the 14,000-plus filenames referenced in Waymo's preliminary injunction papers, the hash values for those 14,000-plus files, and Uber's and Waymo's search terms for those files.[2] (*Id.*) Uber did not direct or oversee that search, and does not know the details of how Goodwin searched Mr. Levandowski's devices. (*Id.*) Goodwin provided the results to Uber, and Uber produced responsive documents to Waymo on June 19, 2017. (*Id*. ¶ 3; Dkt. 2020 ¶ 5.) Moreover, all search hits—regardless of responsiveness—have been available to Waymo for inspection. (Dkt. 2020 ¶ 6.) Waymo has not performed an inspection. (*See* Ray Decl. Ex. 1 at 82:21-83:24 (testimony by Waymo's expert Paul French that he was aware of the database, but did not examine it and did not ask counsel if they had examined it).)

After Mr. Levandowski failed to turn over his laptops, and after Mr. Levandowski failed to comply with Uber's numerous and comprehensive demands of him made in response to and in compliance with the Court's PI Order (Dkt. 466-2), Uber fired Mr. Levandowski (Dkt. 519-2). Doing so was the fullest extent of authority Uber could exercise over Mr. Levandowski. Thus, Waymo's claims that Uber did not exercise its full authority to (1) determine whether the devices

---

[1] On April 25, 2017, Goodwin replaced MoFo as counsel for Mr. Levandowski in the arbitration proceedings with Google. Goodwin searched Mr. Levandowski's computers at MoFo's request in its capacity as his personal counsel.

[2] Waymo first claims that Uber did not do enough with respect to Mr. Levandowski's computers; Waymo then argues that Uber's counsel did too much and violated the Protective Order by providing Goodwin with the filenames, hash values, and search terms. (Br. at 13 n. 1.) As Waymo acknowledges, Goodwin is outside counsel of record for Otto Trucking, a party in this litigation, authorized to see confidential material under the protective order, and Uber's counsel asked Goodwin to run search terms on the personal computers and provide the results for this litigation. (*See* Dkt. 2018-3 ¶ 2.)

Waymo also complains that the searches performed on Mr. Levandowski's laptops were insufficient. (Br. at 11:27-12:9.) But the search parameters were litigated before the Court early in the case, resulting in Uber applying 15 search terms provided by Waymo (Dkt. 163). The forensic experts and lawyers from both sides met to discuss this methodology, and neither Waymo nor its expert made any suggestions about additional searches to perform outside of the 15 terms Waymo proposed, which Uber asked Goodwin to include in its search. (Ray Decl. ¶ 2; Dkt. 2018-3 ¶ 2.)

contained downloaded materials, (2) cause Mr. Levandowski to return any downloaded materials, or (3) demand Mr. Levandowski turn over his laptops each fall flat.

**B.    Uber Never Misrepresented Any Facts Regarding Mr. Levandowski's Personal Computers to the Court.**

Uber's statements to the Court about Mr. Levandowski's personal devices were not misleading.  As Waymo acknowledges, on March 29 counsel for Uber first alerted opposing counsel and the Court to its inability to access any of Mr. Levandowski's personal devices, stating "anything that Mr. Levandowski may or may not have on his own – let's just assume hypothetically that he's got something at home – **that is not something we have access to.  And I just want to be forthright and tell you that**." (Br. at 3:10-12 (citing Dkt. 131 [3/29/17 Hr'g Tr.] at 11:24-12:3) (emphasis in original).)

Subsequently, at the preliminary injunction hearing on May 3, counsel for Uber accurately explained that Mr. Levandowski's Fifth Amendment assertion would block any potential analysis by Uber of Mr. Levandowski's personal devices, stating that the "Fifth Amendment isn't blocking the analysis of his Uber work computer, your Honor. But you're right, it is with respect to his private computer."[3]  (Dkt. 502 [5/3/17 Public Session Hr'g Tr.] at 78:8-10.)  It was and remains true that Mr. Levandowski's assertion of the Fifth Amendment prevented Uber from analyzing his personal devices.  Goodwin's search does not change the fact that Mr. Levandowski's Fifth Amendment assertion has prevented Uber from analyzing his computers, which is what counsel for Uber stated at the May 3 hearing.

**C.    Uber's Paragraph 4 Accounting Did Not Violate the May 11 Preliminary Injunction Order.**

Waymo next contends that Uber should have mentioned Mr. Levandowski's two personal laptops and "any efforts to obtain the laptops from Goodwin in their capacity as

---

[3] Waymo takes issue with the fact that counsel referred to Mr. Levandowski's "work computer" and did not specify that there were two laptops.  (Br. at 5:2.)  Counsel made a generic reference to a laptop rather than specifying the number of laptops, as doing so would have revealed information over which Mr. Levandowski was asserting privilege.

Mr. Levandowski's personal counsel, or non-cooperation from Goodwin regarding requests to obtain the laptops" in its accounting under paragraph 4 of the PI Order.  (Br. at 12:26-13:1.)  Paragraph 4 directed Defendants to "conduct a thorough investigation and provide a detailed accounting under oath setting forth every person who has seen or heard any part of any downloaded materials, what they saw or heard, when they saw or heard it, and for what purpose."  (Dkt. 426 at 24:4-8.)  The information available to Uber regarding these computers—the search results transmitted by Goodwin—did not include any part of any downloaded materials; Waymo does not contend otherwise.  There was no basis to include it in the accounting.

### III.   UBER DID NOT VIOLATE COURT ORDERS OR MISLEAD THE COURT REGARDING THE STROZ MATERIALS.

#### A.   Uber's Paragraph 4 Accounting Did Not Violate the May 11 Preliminary Injunction Order.

Waymo argues that Uber failed to comply with the PI Order because its paragraph 4 accounting did not include the information in the Stroz Report.  (Br. at 14:24-17:13.)  Uber's accounting did include the Stroz Report and all recipients of the Stroz Report.  (Dkt. 1170.)  But the accounting was filed on August 13, a full month before the Federal Circuit issued its ruling.  (*Id.*)  Thus, the accounting obviously did not—and could not due to Mr. Levandowski's continued assertion of privilege—include the specific information outlined in Waymo's brief.  Moreover, paragraph 4 of the PI Order was precise in its direction for accounting of "downloaded materials" and definition of "downloaded materials" as "any and all materials that Anthony Levandowski downloaded from Waymo and kept upon leaving Waymo's employment[.]"  (Dkt. 426 at 22, 24.)  Uber did not, and still does not, know the extent to which the specific information cited by Waymo constitutes "downloaded materials."  It was thus entirely appropriate for Uber's accounting to describe such information as "potentially downloaded."

#### B.   Uber Did Not Violate Any Court Orders When Stroz Sent the Relativity Database to John Gardner.

Waymo next appears to criticize Uber for Stroz sending a copy of the Relativity database to John Gardner, Mr. Levandowski's personal counsel, in April 2017.  (Br. at 17:22-24.)  But

1. Mr. Gardner had an agreement with Stroz regarding the handling of this data, independent of Uber. (Dkt. 545-8; Dkt. 1805-6 at 3-7.) Waymo then complains that Uber has not "taken any steps to recover the Stroz Relativity database from Mr. Gardner," citing a purported concern that Mr. Gardner might provide Mr. Levandowski with access to the database. (Br. at 17:26.) But if this were a true concern and not one manufactured for purposes of its motion, then Waymo could have asked Mr. Gardner at his deposition if he had provided such access—which Waymo did not.

### C. Uber Did Not Mislead the Court Regarding the 14,000 Files.

Waymo claims that Uber misled this Court by asserting that there was no evidence that anybody at Uber knew about the allegedly improperly downloaded 14,000 files. (*Id*. at 18:4-20:18.) But the only evidence that Waymo cites is a reference in the Stroz Report to Mr. Levandowski's *deletion* of 24,000 files on December 14, 2015, a month and a half before he left Google. (*Id.* at 18:15-18.) Information about those deleted files is consistent with Uber's representations regarding the 14,000 files—that they are not at Uber. That the Stroz Report disclosed a deletion of 24,000 files is not evidence that Mr. Levandowski improperly downloaded 14,000 files. The list of the 24,000 files was not an exhibit to the Report, so Uber never received it. Because of Mr. Levandowski's claims related to the Stroz materials, counsel for Uber was not able to compare the 24,000 filenames from the diligence investigation to those of the 14,000 downloaded files until after the Federal Circuit ruling. Mr. González's representation that there was "no evidence that anybody at Uber knew anything about these 14,000 files before this lawsuit was filed" on May 3 was correct and not misleading. (*Id*. at 18:9-11.)

Waymo also notes that its forensic expert, Andy Crain, found evidence that Mr. Levandowski made an encrypted copy of the files before deleting them. (*Id.* at 20:4-18; Dkt. 2063.) Obviously, this is new expert analysis that was not available or known to Uber during the diligence, and cannot possibly support a contempt motion. As Waymo admits, Mr. Crain was able to discern that only by examining the forensic image of Mr. Levandowski's laptop. (*Id.*) Uber did not have access to that forensic image until Stroz produced it under subpoena after the Federal Circuit ruled, and Stroz was contractually prohibited from making the image available to Uber before then. (*See* Dkt. 545-8; Dkt. 1805-6 at 3-7.)

Waymo suggests that Mr. Levandowski copied the files "possibly to other devices" (Br. at 20:18)—again relying on evidence that Uber could not access until after the Federal Circuit's ruling.  The plain fact remains that after eight months of intensive, invasive discovery, Waymo still has no evidence that that the files ever came to Uber.  The Stroz materials simply have not resuscitated Waymo's fantasy that Uber conspired with Mr. Levandowski to steal the 14,000 files.

Finally, Waymo mischaracterizes the statements made by Mr. González to suggest that Uber has "disputed that the download happened at all." (Br. at 19:3-4, 15-17.)  The context of this transcript excerpted by Waymo makes clear that Mr. González was not disputing whether the download happened.  Rather, he was summarizing the evidence from Waymo's forensic investigation as set forth in Waymo's preliminary injunction papers.  One page before Waymo's citation begins, Mr. González prefaces his subsequent statements with "I can show you what they said in their declarations at the motion for preliminary injunction." (Dkt. 1723 [9/20/17 Hr'g Tr.] at 8:22-24.)  And in the lines immediately following Waymo's excerpt, Mr. González again makes clear that he is describing the evidence advanced by Waymo (and not evidence from the Stroz Report):  "**All they've been able to prove** is that some device was plugged into his computer.  That's the distinction that I'm trying to draw. So I don't want to make a concession here that's inaccurate.  If you want to talk about inferences, we can talk about inferences.  **But they have not been able to prove** that anything was actually downloaded onto that device." (*Id.* at 10:4-10 (emphasis added).)  Waymo's disingenuous attempt to fault Uber by taking Mr. González's statements out of context should be disregarded.

### D.     Uber Did Not Mislead the Court Regarding the Five Drobo Disks.

With respect to the five Drobo disks that Mr. Levandowski shredded, Waymo claims that Uber's paragraph 4 accounting did not do enough in its description of the disks.  (Br. at 20:19-21:4.)  The accounting stated:

> Defendants state on information and belief that Anthony Levandowski identified five disks in his possession that he believed may have contained downloaded material. As described in Uber's response to expedited Interrogatory No. 1, Mr. Levandowski reported this information in a meeting on March 11, 2016, and

subsequently stated that he destroyed those disks. Defendants have never seen those disks and do not know whether those disks did in fact contain downloaded material.

(Dkt. 1170 at 10:12-17.) Waymo suggests that Uber should have "disclosed" that the five Drobo disks included downloaded materials. (*Id.*) Waymo contends that such disclosure was appropriate based on statements from Mr. Levandowski that were made to Stroz, as relayed in the Stroz Report and communications to Uber's attorneys. (Br. at 20:22-28.) As explained above, information from the Stroz Report could not be included in Uber's paragraph 4 accounting because the accounting was submitted before the Federal Circuit ruling.

In any event, the assertions in Uber's paragraph 4 accounting regarding those five disks remain true. Uber never saw the disks and never accessed the information on them. Thus, to this day, Uber does not know whether those disks in fact contained downloaded material.

Uber has substantially complied with the Orders. (*See* Dkt. 885 at 10 (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (moving party must establish that the party accused of contempt (1) "violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence.").) Waymo's request for an adverse inference should be denied.

Dated: October 25, 2017                    MORRISON & FOERSTER LLP

                                           By:   */s/ Arturo J. González*
                                                 ARTURO J. GONZÁLEZ

                                           Attorneys for Defendants
                                           UBER TECHNOLOGIES, INC.
                                           and OTTOMOTTO LLC