Neel Chatterjee (SBN 173985)
nchatterjee@goodwinlaw.com
James Lin (SBN 310440)
jlin@goodwinlaw.com
**GOODWIN PROCTER LLP**
135 Commonwealth Drive
Menlo Park, California 94025
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

Brett Schuman (SBN 189247)
bschuman@goodwinlaw.com
Shane Brun (SBN 179079)
sbrun@goodwinlaw.com
Rachel M. Walsh (SBN 250568)
rwalsh@goodwinlaw.com
Hayes P. Hyde (SBN 308031)
hhyde@goodwinlaw.com
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

Hong-An Vu (SBN 266268)
hvu@goodwinlaw.com
Todd A. Boock (SBN 181933)
tboock@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, 41st Floor
Los Angeles, California 90017
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673

*Attorneys for Defendant: Otto Trucking LLC*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>  Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**OTTO TRUCKING'S OPPOSITION TO WAYMO'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR ORDER TO SHOW CAUSE [DKT. 2054]**<br><br>Courtroom: 8-19th Floor<br>Judge: Hon. William H. Alsup<br>Trial: October 10, 2017 |

[Redacted Version of Document Sought to be Sealed]

I.      INTRODUCTION

At some point, Waymo's repeated attempts to seek contempt and adverse inferences need to come to an end. The Court has repeatedly rejected Waymo's efforts in this regard. Nevertheless, Waymo seeks to rehash the same arguments another time. Like all the other times, the Court should deny Waymo's motion.

This time, Waymo contends that Otto Trucking should be held in contempt and have an adverse inference issued against it for failing to take action required by the PI Order with respect to two personal laptops owned by Anthony Levandowski that were (i) never in Otto Trucking's possession, (ii) Otto Trucking had no reason to know existed, and (iii) did not have any Waymo alleged trade secrets on them.

In response to Uber's request for these two computers, Mr. Levandowski asserted his Fifth Amendment rights over them. As a compromise, these laptops were provided to Mr. Levandowski's personal counsel to run search terms at Uber's request. The search terms included the file names and hash values for the 14,000 files as well as search terms designed by Uber and Waymo. The results of the searches have been made available to Waymo long ago, but despite claiming a violation of the Court's PI Order, Waymo has not identified any files from the search results that contain Waymo information that would have brought it within the purview of the PI Order.

Otto Trucking was never in possession of either of the computers and was not involved in any way in the searches of the laptops. Otto Trucking has not engaged in any misconduct with respect to the laptops and is fully in compliance with the Court's PI Order. The Court has already recognized that Mr. Levandowski's refusal to produce documents under the Fifth Amendment was proper. *See* Dkt. 802 (order denying Waymo's motion to compel following in camera review of log of materials subject to Fifth Amendment rights) Waymo cannot circumvent Mr. Levandowski's assertion without a showing that Otto Trucking was a custodian of the devices. It has not done so.

II.     RELEVANT FACTS

On April 20, 2017, Angela Padilla, Uber's head of litigation, sent a letter to Anthony

1

OTTO TRUCKING'S OPPOSITION TO WAYMO'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF ITS
MOTION FOR ORDER TO SHOW CAUSE [DKT. 2054]                             CASE NO. 3:17-CV-00939-WHA

1   Levandowski demanding that he provide to Uber two of his personal laptops.  Dkt. 2018-3 at ¶2.
2   Neel Chatterjee, counsel for Mr. Levandowski in his personal capacity in the copending
3   arbitration, informed Uber that Mr. Levandowski has asserted his Fifth Amendment rights and
4   would not provide to Uber the requested laptops. *Id.*; *see also*, Dkt. 2018-1 at ¶6. However, Mr.
5   Levandowski agreed to have his personal counsel, Goodwin, run searches provided by Uber on the
6   personal computers and provide the results of those searches to Uber.  Dkt. 2018-3 at ¶2. Uber
7   provided to Goodwin the search terms to be used: 14,000 plus hash values and over 4,000 unique
8   filenames, which Waymo identified in its preliminary injunction papers, and Uber and Waymo
9   search terms.  *Id.; see also* Declaration of Rachel Walsh at ¶4.
10          Goodwin, as Mr. Levandowski's personal counsel, ran the requested searches and also
11  broader searches to try to find additional documents that related to Uber.  Dkt. 2018-1 at ¶6;
12  Walsh Decl. at ¶5.  The search for the hash values of the 14,000 files did not yield any of the
13  14,000 files.  Walsh Decl. at ¶6. The search for the file names themselves did not yield any of the
14  14,000 files, either, and only hit on generic filenames. *Id.* at ¶7.  Goodwin reviewed and provided
15  its search results to Uber.  Dkt. 2018-1 at ¶6.  Otto Trucking was never in possession of the
16  laptops or had any involvement in the search of these laptops.  However, Otto Trucking
17  understands based on the declarations submitted by Sylvia Rivera that Uber produced seven files
18  from the search results provided by Mr. Levandowski in this litigation.  *See* Dkt. 2020 at ¶¶1-2.
19          On September 7, 2017, Uber served an expert report from a forensic expert, Kevin
20  Faulkner, which made available all of the files that Mr. Levandowski provided to Uber through his
21  counsel.  *See* Walsh Decl., Ex. A at p. 5 ███████████████████████████████████
22  ████████████████████████████████████████████████████████████).
23  Waymo's forensic expert, Paul French, while aware of the documents made available for
24  inspection, did not request to inspect the search results and did not know if counsel for Waymo
25  inspected them.  *See* Walsh Decl. at Ex. D.  Based on a review of search results from Uber's
26  various searches, including the search results provided by Mr. Levandowski, Mr. Faulkner
27  concluded that ████████████████████████████████████████████
28  ████████   *Id*. at, Ex. B at 23.

2

1  On October 23, 2017, Waymo filed a motion to amend its trade secret list. Nowhere in its
2  motion or supporting materials did Waymo cite to or rely on any of the seven files that were
3  produced by Uber from Mr. Levandowski's personal laptops. *See* Dkt. 2062. Waymo also did not
4  cite to any files that were provided by Mr. Levandowski and made available with the Faulkner
5  report. *See id.*
6  On October 23, Waymo also served its Second Supplemental Brief in support of its motion
7  for an OSC re Contempt. *See* Dkt. 2054. Here, again, Waymo does not state that any of the files
8  produced by Uber from the Levandowski personal laptops or provided by Mr. Levandowski from
9  the searches his counsel conducted of those laptops contain any alleged trade secrets or Waymo
10  downloaded materials. *See id*. Instead, Waymo seeks to hold Otto Trucking in contempt for
11  failing to disclose the existence of the laptops that Otto Trucking never had in its possession and
12  that did not contain any Waymo downloaded information.

### III. THE COURT ONLY ORDERED AN ACCOUNTING OF DOWNLOADED MATERIALS.

15  In March 2017, Waymo moved for a preliminary injunction based on Mr. Levandowski's
16  downloading of 14,000 files during his employment at Google. In granting in part and denying in
17  part Waymo's motion for a preliminary injunction, the Court ordered that Defendants take certain
18  actions with respect to "downloaded materials," which was defined as "any and all materials that
19  Anthony Levandowski downloaded from Waymo and kept upon leaving Waymo's employment."
20  These actions included:

- Preventing Mr. Levandowski and others affiliated with defendants from consulting, copying, or otherwise using the downloaded materials;
- Returning any downloaded materials other than a copy for use by litigation counsel; and
- Providing an accounting of anyone who has seen or heard any part of the downloaded materials.

PI Order at p. 24-25.

In response to this Order, Otto Trucking disclosed that Otto Trucking does not develop, make or research LiDAR. *See id*. at 714, 1265. However, in an abundance of caution, Otto

1  Trucking also informed Mr. Levandowski that he was not to consult, copy, or otherwise use any
2  downloaded materials in any way.  *See id.*  Otto Trucking's accounting also stated that since the
3  filing of the lawsuit, Mr. Levandowski had not been involved in the day-to-day management of
4  Otto Trucking.  *See id.*  Otto Trucking further informed the Court that its officers. Lior Ron, Adam
5  Bentley, and Rhian Morgan, in their capacity as Otto Trucking officers, had not seen or heard any
6  of the downloaded materials and that Mr. Ron, Mr. Bentley, and Mr. Levandowski had only
7  received the Stroz report without attachments.  *See id.*  No additional information relating to the
8  downloaded materials was known to Otto Trucking, but it referred the Court to Uber's accounting
9  as a source of additional information. Waymo has offered no language in the Court's order that
10 supports their current argument.  In fact, Otto Trucking fully complied with the Court's order.
11       Otto Trucking disclosed all information relating to the downloaded materials in its
12 knowledge as required by the PI Order in its original accounting and supplemental accounting.
13 *See*  Dkts. 714, 1265 (providing additional detail and clarification).  In sending a letter to Mr.
14 Levandowski care of his criminal counsel, Otto Trucking exercised its power to try to secure Mr.
15 Levandowski's cooperation. *See id.*  Waymo has twice before tried to argue that Otto Trucking
16 should have done more, including demanding that Mr. Levandowski's counsel provide documents
17 and information notwithstanding his assertion of the Fifth Amendment.  Dkts. 676; 847.[1]  The
18 Court has rejected that argument in both motions and declined to hold Otto Trucking in contempt.
19 The Court should similarly reject Waymo's third attempt to hold Otto Trucking in contempt.

20 **IV.    OTTO TRUCKING NEVER HAD POSSESSION OR CUSTODY OF MR. LEVANDOWSKI'S PERSONAL LAPTOPS.**
21

22       Waymo contends that Otto Trucking should be held in contempt for failing to adequately
23 search the laptops, for not "returning" the laptops to Waymo or the Court, and for not disclosing
24 Otto Trucking's efforts to obtain the laptops from Mr. Levandowski or his counsel. *See* Dkt. 2054
25 at 11-13. Waymo cites no language in the Court's order that requires such activity from Otto
26

---

27 [1] Waymo filed another supplemental contempt brief, Dkt. 1494, on September 7. Though Otto Trucking responded and the Court has since held a number of hearings, the Court has not held any
28 defendant.

4

1   Trucking.

2   Most fundamentally, Otto Trucking never had possession of Mr. Levandowski's personal
3   laptops.  *See* Dkt. 2019.  That Goodwin received the laptops from Mr. Levandowski as his
4   personal counsel in the arbitration does not change what Otto Trucking knew or did not know.  As
5   Judge Corley has already found, any argument by Waymo that Otto Trucking "must know" what
6   Mr. Levandowski knows is "disingenuous."  Dkt. 881.

7   Waymo appears to argue that Otto Trucking could have forced Mr. Levandowski to
8   produce his laptops.  It points to no language in Otto Trucking's operating agreement to support
9   such an assertion.  Therefore, Otto Trucking's counsel, Goodwin, could not force Mr.
10  Levandowski to produce them either.

11  The Court should reject Waymo's attempt to conflate Goodwin's representation of Otto
12  Trucking in this litigation with its representation of Mr. Levandowski personally in the co-pending
13  arbitration.  As Mr. Levandwski's personal counsel in that arbitration, Goodwin could not produce
14  any of Mr. Levandowski's personal materials over which he has asserted the Fifth Amendment
15  privilege.  *See United States v. Sideman & Bancroft, LLP*, 704 F.3d 1197, 1201–02 (9th Cir. 2013)
16  (noting that the Fifth Amendment protection against the compelled disclosure of records "extends
17  to prevent an individual's attorney from being compelled to produce documents if that production
18  would violate the individual's Fifth Amendment rights"); *see also Goldsmith v. Superior Court*,
19  152 Cal. App. 3d 76, 86–89 (1984) (vacating discovery order requiring defendant and attorney to
20  produce incriminating weapon for inspection in response to discovery request); Cal. Bus. & Prof.
21  Code § 6068(e) (stating it is the duty of every lawyer to "maintain inviolate the confidence, and at
22  every peril to himself or herself to preserve the secrets, of his or her client"). The law is clear,
23  "where an individual transfers documents to his or her attorneys to obtain legal assistance . . . ,
24  those documents, 'if unobtainable by summons from the client, are unobtainable by summons
25  directed to the attorney by reason of the attorney-client privilege.' Accordingly, [the attorney]
26  does not have to produce the . . . records if doing so violates [the individual]'s Fifth Amendment
27  rights." *Fisher v. United States*, 425 U.S. 391, 405 (1976). As Mr. Levandowski's counsel in the
28  arbitration matter, Goodwin must protect Mr. Levandowski's Fifth Amendment rights and cannot

5

1   be compelled to violate those rights. *See United States v. Judson*, 322 F.2d 460, 464 (9th Cir.
2   1963) (an attorney's function is "to raise all the just and meritorious defenses his client has . . . .
3   The attorney and his client are so identical with respect to the function of the evidence and to the
4   proceedings which call for its production that any distinction is mere sophistry.").

5   The temporary provision of the laptops to Goodwin, Mr. Levandowski's personal counsel,
6   was a compromise to protect Mr. Levandowski's Fifth Amendment rights, while also providing
7   Uber with information requested by the Court.  *See* Dkt. 2018-3 at ¶2.  Such conduct was entirely
8   appropriate as Mr. Levandowski had the right to choose a point where he was willing to cooperate
9   with discovery, but go no further.  *See e.g.*, *In re Seper*, 705 F.2d 1499, 1501 (9th Cir. 1983) (a
10  witness has considerable latitude in deciding when to stop responding to questions); *United States*
11  *v. Seifert*, 648 F.2d 557, 561 (9th Cir. 1980) (citing *Shendal v. United States*, 312 F.2d 564, 566
12  (9th Cir. 1963) ("a witness may "pick the point beyond which he will not go"); *Nursing Home*
13  *Pension Fund v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 49851, at *12 (N.D. Cal. June 29, 2007).
14  Waymo has no basis to circumvent Mr. Levandowski's Fifth Amendment rights or hold Otto
15  Trucking in contempt for his assertion of those rights.

16  **V.     THE LAPTOPS DID NOT CONTAIN DOWNLOADED  MATERIALS.**

17  Waymo's motion for contempt also ignores that the Court's PI Order only required action
18  relating to any "downloaded materials." *See* PI Order at 24-25.

19  The search terms provided by Uber contained not only search terms intended to find the
20  14,000 files—*i.e.* their file names and hash values—but also included broader search terms
21  provided by Uber and demanded by Waymo. Walsh Decl. at ¶4.  The 14,000 files were not found
22  as a result of these searches.  *Id*. at ¶¶6-7. In addition, Goodwin searched more broadly for any
23  materials relating to Uber work done by Mr. Levanwoski to provide to Uber's counsel.  *See id.* at
24  ¶5.

25  Mr. Levandowski, through his counsel at Goodwin, provided the results of these searches
26  to Uber's counsel, who has made them available to Waymo. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
27  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  *See* Dkt. 2019-1, Ex. B at 23.
28  Waymo deposed Uber's forensic expert and was entitled to cross-examine him about the process

and results. *See* Walsh Decl. at ¶10, Ex. B.

Waymo has had access to the results of these searches, but has not cited to any of the documents or files from these search results in either its renewed contempt brief or in its motion to amend its trade secrets list. Indeed, Waymo did not even argue that any of the search results are Waymo downloaded materials. In fact, the searched laptops did not have any "downloaded materials" that would be subject to the PI Order.

## VI. ALL OF WAYMO'S OTHER ARGUMENTS TO HOLD OTTO TRUCKING IN CONTEMPT ARE UNSUPPORTED.

Waymo also provided a list of other alleged violations of the PI Order. To the extent that any of these contentions apply to Otto Trucking, they are unsupported and should be rejected.

*First*, Waymo's contentions regarding John Gardner and the "Five Disks" are not relevant to Otto Trucking and cannot provide a basis to hold Otto Trucking in contempt or to issue an adverse inference as to Otto Trucking. *See* Dkt. 2054 at 17-18, 20-21.

*Second*, Otto Trucking properly disclosed that none of its officers had received any downloaded materials in their capacity as officers of Otto Trucking, and that Mr. Bentley, Mr. Ron, and Mr. Levandowski had received the Stroz report without attachments. *See* Dkt. 1265 at 1-2. Otto Trucking otherwise incorporated Uber's accounting as Otto Trucking's officers were also Uber employees. *See id.* Waymo has not contended that Otto Trucking's accounting is inaccurate or incomplete. *See* Dkt. 2054 at 14-17.

*Third*, Otto Trucking has not made any misrepresentations as to the 14,000 files. Although Waymo cites to the argument made by counsel for Otto Trucking regarding whether Mr. Levandowski had used a thumb drive to move files onto a personal laptop, Waymo ignores that Mr. Chatterjee's arguments were based on the information provided by Mr. Brown's declaration, which did not affirmatively state that an external device was used to take 14,000 files off Mr. Levandowski's Google laptop. *See* Dkt. 2054 at 19. Indeed, Mr. Brown admitted at his deposition shortly after the July 26 hearing that he did not know whether Mr. Levandowski actually downloaded files to the card reader. Walsh Decl., Brown 8/8/17 30(b)(6) Dep. at 108:5-14 (Waymo does not know whether any materials were downloaded to the card reader attached to the

7

1  Google issued Levandowski laptop).  To the extent that Waymo now relies on additional
2  information, primarily its 2,000 page expert report served less than 48 hours before this response
3  is due, to suggest that the 14,000 files were downloaded to an external media, this new
4  information does not undermine the accuracy of Otto Trucking's counsel's statements at the time
5  they were made.  In addition, the Court has not permitted Waymo to serve the expert report and
6  use it in this litigation, nor has Otto Trucking had an opportunity to analyze and respond to the
7  conclusions in that report.  The Court should not consider Waymo's arguments based on the
8  expert report of Andrew Crain in deciding this supplemental brief.

9  **VII.   THE COURT SHOULD REJECT WAYMO'S DEMAND FOR AN ADVERSE INFERENCE AS TO OTTO TRUCKING.**
10

11  Based on the foregoing, there is no basis for the Court to find Otto Trucking in contempt or
12  to issue any adverse inference. Otto Trucking is fully in compliance with the PI Order.
13  Furthermore, an adverse inference as to Otto Trucking would be inappropriate.
14  *First*, as the Court has previously held, any adverse inference based on Mr. Levandowski's
15  assertion of his Fifth Amendment rights would only be as to Anthony Levandowski and not
16  defendants in this action. *See* Dkt. 1535; *see also* 7/26/2017 Hr'g Tr. 98:8–99:13; 100:3-8.  As
17  Waymo's primary argument for contempt and an adverse inference is based on the personal
18  laptops over which Mr. Levandowski has asserted the Fifth Amendment privilege (*see* Dkt 2054 at
19  21), the Court's prior rulings on this issue are equally applicable. In addition, as Waymo has
20  access to all the relevant materials from those laptops based on a diligent search, no adverse
21  inference as to Mr. Levandowski is even warranted.
22  *Second*, the record does not support any adverse inference based on the Levandowski
23  personal laptops.  As the Court has already found, an adverse inference must be corroborated by
24  other evidence.  *See* Dkt. 1535 (assessing after Waymo's case in chief whether the trial record
25  "includes corroborating evidence to support the adverse inferences sought."); *see also Doe ex rel.*
26  *Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) ("an adverse inference can be
27  drawn when silence is countered by ***independent evidence*** of the fact being questioned")
28  (emphasis in original).  Again, Waymo has not identified any Waymo materials in the available

8

search results, As such, any adverse inference regarding the Levandowski laptops is unsupported by independent evidence and inappropriate.[2]

**VIII.  CONCLUSION**

For the above-stated reasons, Otto Trucking respectfully requests that the Court deny in its entirety Waymo's request to hold Otto Trucking in contempt and to issue an adverse inference as to Otto Trucking.

Dated:  October 25, 2017     Respectfully submitted,

By: */s/   Neel Chatterjee*
Neel Chatterjee
*nchatterjee@goodwinlaw.com*
Brett Schuman
*bschuman@goodwinlaw.com*
Shane Brun
*sbrun@goodwinlaw.com*
Rachel M. Walsh
*rwalsh@goodwinlaw.com*
Hong-An Vu
*hvu@goodwinlaw.com*
Hayes P. Hyde
*hhyde@goodwinlaw.com*
James Lin
*jlin@goodwinlaw.com*
Todd A. Boock
*tboock@goodwinlaw.com*
**GOODWIN PROCTER LLP**

*Attorneys for Defendant:* Otto Trucking LLC

---

[2] Should the Court deny the adverse inference, Waymo requests in a footnote at the end of its brief the opportunity to amend its jury instruction to include these "additional instances of misconduct." Otto Trucking opposes this request as Otto Trucking has not engaged in any misconduct and further objects to Waymo's jury instruction regarding misconduct in the first instance.

9

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document including all of its attachments with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **October 25, 2017**. I further certify that all participants in the case are registered CM/ECF users and that service of the publicly filed documents will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **October 25, 2017**.

/s/    *Neel Chatterjee*
  NEEL CHATTERJEE

1

OTTO TRUCKING'S OPPOSITION TO WAYMO'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF ITS
MOTION FOR ORDER TO SHOW CAUSE [DKT. 2054]                    CASE NO. 3:17-CV-00939-WHA