1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzalez@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Tel:    415.268.7000 / Fax:   415.268.7522
5

6  KAREN L. DUNN (*Pro Hac Vice*)
   kdunn@bsfllp.com
7  HAMISH P. M. HUME (*Pro Hac Vice*)
   hhume@bsfllp.com
8  BOIES SCHILLER FLEXNER LLP
   1401 New York Avenue, N.W.
9  Washington, D.C.  20005
   Tel:    202.237.2727 / Fax:   202.237.6131
10
   WILLIAM C. CARMODY (*Pro Hac Vice*)
11 bcarmody@SusmanGodfrey.com
   SHAWN J. RABIN (*Pro Hac Vice*)
12 srabin@SusmanGodfrey.com
   SUSMAN GODFREY LLP
13 1301 Avenue of the Americas, 32nd Floor
   New York, New York 10019
14 Tel:    212.336.8330 / Fax:   212.336.8340

15 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.
16 and OTTOMOTTO LLC

17
                    UNITED STATES DISTRICT COURT
18
                   NORTHERN DISTRICT OF CALIFORNIA
19
                      SAN FRANCISCO DIVISION
20

21 WAYMO LLC,                          Case No.      3:17-cv-00939-WHA

22            Plaintiff,                **DEFENDANTS UBER
                                        TECHNOLOGIES, INC.'S AND
23      v.                              OTTOMOTTO LLC'S OPPOSITION TO
                                        WAYMO'S REQUEST TO FILE A
24 UBER TECHNOLOGIES, INC.,             MOTION *IN LIMINE* REGARDING
   OTTOMOTTO LLC; OTTO TRUCKING         THE STROZ FRIEDBERG DUE
25 LLC,                                 DILIGENCE**

26            Defendants.               Judge:      Hon. William H. Alsup
                                        Trial Date:  December 4, 2017
27
28            **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1    Waymo fought for and received the release of the Stroz Report and now wants to be the

2  only party that can say anything about it at trial. That is absurd. Disappointed that the Stroz Report

3  rebuts its misappropriation and conspiracy theories, Waymo now asks the Court to forbid Uber and

4  Ottomotto (collectively, "Uber") from responding to Waymo's false contentions and baseless

5  arguments by introducing what the Court has held is non-privileged evidence about the Stroz due

6  diligence at trial. Waymo's arguments are meritless, and its request for leave to file a motion *in*

7  *limine* should be denied.

8    Waymo's precis principally complains that Uber has respected the "privilege cutoff set by

9  the Court"—which Waymo views as a problem. Dkt. 2040 at 3. But as Waymo repeatedly admits, it

10  is the undisputed law of this case (pursuant to Judge Corley's order, affirmed by this Court), that

11  there is no common interest privilege protecting Stroz-related materials prior to the April 11, 2016

12  signing of the put-call agreement, whereas the privilege protects such materials (other than the final

13  Stroz Report and its exhibits) after the April 11 signing. Consistent with these rulings, Uber

14  produced thousands of documents detailing the origin, protocol, execution, and conclusions of the

15  Stroz due diligence review. Waymo now wants to rely on this information at trial while precluding

16  Uber from doing the same. The Court should not permit such unfairness or prejudice to Uber.

17    At trial, Uber intends to rely on non-privileged aspects of the Stroz due diligence—

18  including the scope of the review and the sequestration of devices—to show that it was designed,

19  among other things, to prevent information that might be confidential to Google from reaching

20  Uber. Particularly now that Waymo's case has deteriorated, and Waymo has pivoted to an

21  "imputation" theory of liability against Uber based on the mere receipt of Google information by

22  Uber's outside counsel and Stroz, Uber must be permitted to respond to that argument by using

23  non-privileged aspects of the Stroz process to defend itself. Waymo's motion falsely suggests Uber

24  seeks to use the due diligence review selectively, invoking the proverbial sword and shield, and

25  further argues that uncontested evidence regarding Stroz's sequestration of devices would somehow

26  mislead or confuse the jury. The sword Waymo wants to take from Uber consists solely of

27  information held to be non-privileged, and the shield it complains of is nothing but the privilege

28  lines drawn by Judge Corley and upheld by this Court. Waymo's request should be denied.

1

2

### I.   WAYMO SHOULD NOT BE PERMITTED TO HIDE FROM THE JURY THAT THE STROZ PROCESS HELPED PREVENT MISAPPROPRIATION

3    Waymo rightly anticipates that Uber will respond to its baseless accusations by relying on

4   *non-privileged* evidence that the Stroz due diligence process was designed to help ensure that Uber

5   would not unwittingly misappropriate Waymo trade secrets when it acquired Ottomotto. Many

6   deponents have testified to that point, because it is non-privileged. *See, e.g.*, Pritt Decl., Ex. 6 (Suhr

7   Tr.) at 16:8–17:4; Ex. 4, Padilla Tr. at 15:17–16:3; Ex. 3, Poetzscher Tr. at 491:9–492:8; Ex. 2,

8   Friedberg Tr. at 95:21–96:16. It is also reflected in non-privileged documents describing the scope

9   of the diligence. *See* Dkt. 1603-5, Stroz Rpt. at 3. To Waymo's consternation, the Stroz Report only

10  confirms that Uber did not want to, and did not, acquire Waymo trade secrets. *See, e.g.*, *id.* at 17

11  ("Stroz Friedberg discovered no evidence indicating that [Levandowski] transferred any of that data

12  to Ottomotto or other third parties"); Pritt Decl., Ex. 7, Fulginiti Tr. at 287:20–24 (Q: "And Stroz

13  Friedberg discovered no evidence that any of the other diligenced employees transferred any data to

14  Ottomotto or other third parties, correct?" A: "That's correct."). Waymo's inability—despite

15  months of searching and reviewing millions of documents—to find any of the 14,000 allegedly

16  stolen files in Uber's possession, is further proof that the process worked. Waymo may try to

17  convince the jury that there was nonetheless misappropriation despite this lack of evidence, but it

18  cannot stack the deck by excluding Uber's evidence of efforts to prevent any misappropriation.

19    Given that absence of evidence, Waymo understandably now wants to prevent Uber from

20  explaining the Stroz due diligence by asserting, incorrectly, that to do so raises a "sword and shield"

21  issue. Dkt. 2040 at 1. Waymo's primary argument is that Stroz continued to perform forensic

22  analysis after the put-call agreement was signed on April 11, at which point Judge Corley held the

23  common interest doctrine attached. Waymo's focus on the post-April 11 Stroz forensic analysis is

24  misplaced, as it ignores the massive amount of non-privileged information that Waymo now has at

25  its disposal, which will allow it to analyze the Stroz Report in all respects. Waymo has *all* of the

26  underlying materials Stroz relied on (or could have relied on) for its conclusions, and *all* of those

27  conclusions. Thus, if Waymo has legitimate criticisms of Stroz's analysis, it has all the information

28  it needs to present them to the jury. Waymo does not need access to Stroz's post-April 11 work

1    product to assess Stroz's conclusions (as Waymo's latest submissions with its motion to amend

2    make perfectly clear).

3        Prior to April 11, the entire information collection process by Stroz was complete, and by

4    ruling of this Court is not covered by the common interest privilege. Before the privilege attached,

5    Stroz had: formalized a review protocol, received completed questionnaires from all of the

6    diligenced employees, completed all of its interviews, collected all relevant devices and accounts,

7    produced an interview memorandum that detailed Levandowski's participation in the review

8    process, and given several interim reports that further detailed key issues that arose during the

9    review. *See* Dkt. 1603-5 at 3-6. Indeed, the Indemnification Agreement signed on April 11 confirms

10   that the "Diligenced Employees' involvement in the Outside Expert [Stroz Friedberg] examination,

11   including interviews, device and document production, and other personal involvement of any

12   nature is complete." Pritt Decl., Ex. 1 at 1. In other words, Waymo has *all* of the inputs to Stroz's

13   analysis. It also has *all* of the outputs. That is all Waymo needs to formulate its own analysis.

14       Stroz's remaining work after April 11, which consisted only of analyzing the materials that

15   it had already collected, was to be done "solely for the purpose of completing a final report." *Id.*

16   Waymo has that final report, along with all of its exhibits, including exhibits that provide detailed

17   descriptions of the forensic and document review processes that took place between April 11 and

18   the issuance of the final report in August. *See, e.g.*, Dkt. 1603-6, Stroz Rpt. Ex. 17 (forensic finding

19   report describing Stroz's "methodology" and "summary and timeline of key findings"), Dkt. 1603-

20   7, Ex. 22 ("Outline of E-Discovery Relativity Document Review"). Bizarrely, Waymo seeks to use

21   the "detailed preliminary forensic reports" to which it now has unfettered access, as evidence of a

22   sword and shield problem centered on "Stroz's substantive forensic analysis work." (Dkt. 2040 at

23   3.) Given that all of Stroz's work after April 11 was done solely for the purpose of completing the

24   final report and exhibits that Waymo now has, Waymo's professed inability to "substantively

25   challenge Defendants' characterizations of the investigation" (Dkt. 2040 at 4) is entirely baseless.

26       Waymo cannot identify any selective or improper invocation of privilege that might support

27   a request for preclusion, so it instead fixates on the fact that several witnesses—all but one of whom

28   were acting at all times in their capacity as attorneys—were properly instructed not to answer

1   questions about privileged communications. Dkt. 2040 at 2. What Waymo fails to tell the Court is

2   that it also deposed four Stroz witnesses who were not serving as attorneys, and who gave detailed

3   testimony about Stroz's process and diligence review, the thousands of hours Stroz staff (both

4   attorneys and forensics experts) spent examining the materials that Stroz collected, and the

5   hundreds of pages of written findings that Stroz included as part of its final report—which Waymo

6   now has. Waymo also fails to mention the extensive testimony that Uber non-lawyers, such as Cam

7   Poetzscher and Nina Qi, provided about all of the non-privileged aspects of the Stroz due diligence.

8      Uber must be allowed to explain, by using evidence the Court held to be non-privileged,

9   why Stroz was retained and what Stroz did (and did not do) as part of the diligence process. The

10  answers to those questions can be derived entirely from non-privileged sources, and both parties

11  must be allowed to offer their best evidence to the jury. While testimony regarding Uber's

12  attorneys' post-April 11 mental processes and advice will necessarily be limited, that is the result of

13  Judge Corley's holding (affirmed by this Court) regarding the proper scope of the common interest

14  privilege, not of gamesmanship by Uber. Waymo's realization that the Stroz materials do not shore

15  up its deteriorating case is no excuse for precluding Uber from putting on its own stronger case.

16  **II.     WAYMO SHOULD NOT BE PERMITTED TO HIDE FROM THE JURY**
17  **EVIDENCE ABOUT THE DEVICES IN STROZ'S "EVIDENCE VAULT"**

18     Uber is entitled to tell the jury about Stroz's sequestration of Levandowski's devices in

19  March 2016. Waymo's argument goes to the weight of the evidence and fails to risk any jury

20  confusion.

21     Waymo has repeatedly asked, and deponents have repeatedly answered without any

22  assertion of privilege, questions about Stroz's "evidence vault." *See, e.g.*, Pritt Decl., Ex. 2,

23  Friedberg Tr. at 270:10–272:3; Ex. 7, Fulginiti Tr. at 76:21–78:22; Ex. 5, Chew Tr. at 224:13–

24  225:18; Ex. 8, Maugeri Tr. at 181:16–182:16. Waymo has likewise received documents that spell

25  out precisely which devices were "preserved and returned to Levandowski," and which are still to

26  this day "being stored in Stroz Friedberg's evidence vault." (Dkt. 1603-6, Stroz Rpt. Ex. 17.) While

27  the sequestration aspect of the Stroz due diligence may not fit neatly into Waymo's conspiracy

28  theories, it is an important fact that the jury should be permitted to hear and weigh for itself.

1   Waymo bases its precis on inapposite references to Levandowski's Dropbox Account,

2   iPhone, and Slack communications—none of which Uber has ever claimed were sequestered at

3   Stroz. (Dkt. 2040 at 5.) Unable to identify a single misleading statement Uber made about these

4   items, Waymo instead fabricates one by blatantly misquoting a hearing transcript. *Compare* Dkt.

5   2040 at 4 (Waymo, quoting Dkt. 1261 at 22:6–8: "Stroz took all of Mr. Levandowski's devices,

6   even devices that were very old, and put it all into a vault."), *with* Dkt. 1261 at 22:6–**9** (full relevant

7   excerpt, providing: "Stroz took all of Mr. Levandowski's devices, even devices that were very old,

8   and put it all into a vault. ***And the only thing he got back was his phone***." (emphasis added)).

9   Waymo does not even allege that any of the files in Levandowski's Dropbox (or on his

10  iPhone or the Slack site) disclosed Waymo's Alleged Trade Secrets. In his supplemental report, Dr.

11  Hesselink mentions seven Google files whose filepath indicate they were in Levandowski's

12  Dropbox. Dr. Hesselink claims that six of those files are related to TS 90, and one is related to TS

13  111. (Dkt. 2057, Ex. 1 at 6, 21-22 & Ex. B.) But Waymo and Dr. Hesselink fail to mention that

14  *none* of these files actually disclose the claimed trade secrets, ████████████████████████

15  ███████████████████████████████████████████████████. Rather, the files relate to

16  the ████████████████████████████████████████████████████████

17  ███████████████████████████ They also fail to mention that these files show a last access

18  date of July to September 2015, several months before Levandowski left Google. (*Id.*, Ex. B.) If

19  anything, it is Dr. Hesselink's baseless innuendos, not evidence of which devices and accounts were

20  and were not quarantined, that will cause confusion and prejudice. In no event has Waymo

21  established that information about the Stroz "vault" should be excluded under FRE 403 argument.

22                                    *        *        *

23  Waymo cannot paper over the holes in its case through contrived claims for exclusion of

24  Uber's evidence, which would deprive Uber of the ability to defend itself. Uber is entitled to

25  explain to the jury, through what the Court has held to be non-privileged evidence, why Uber

26  retained Stroz, the steps that Stroz took during its due diligence, and the ways in which that process

27  helped ensure that no confidential Google information came to Uber, including securing devices in

28  Stroz's evidence vault. Waymo's request to file a new, baseless motion *in limine* should be denied.

1    Dated: October 25, 2017                    MORRISON & FOERSTER LLP
                                                BOIES SCHILLER FLEXNER LLP
2                                               SUSMAN GODFREY LLP

3

4                                               By: */s/ Karen L. Dunn*
                                                    KAREN L. DUNN
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28