MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel: 415.268.7000 / Fax: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P. M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Tel: 202.237.2727 / Fax: 202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel.: 212.336.8330 / Fax.: 212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**UBER'S SUPPLEMENTAL BRIEF IN OPPOSITION TO WAYMO'S MOTION *IN LIMINE* NO. 14 TO EXCLUDE EVIDENCE OF LEVANDOWSKI'S FAILURE TO COOPERATE**<br><br>Judge: Hon. William H. Alsup<br>Trial Date: December 4, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

UBER'S SUPP. BRIEF IN OPPOSITION TO WAYMO'S MOTION *IN LIMINE* NO. 14
Case No. 3:17-cv-00939-WHA

1    Defendants Uber Technologies Inc. and Ottomotto LLC (collectively, "Uber") submit this
2  supplemental brief in opposition to Waymo's Motion *in Limine* No. 14 (Dkt. 1552) seeking to
3  preclude evidence or argument about Anthony Levandowski's non-cooperation with Uber.
4  Nothing in Waymo's supplemental brief (Dkt. 2042) changes the fact that Uber has never
5  selectively waived privilege on this topic.  As such, Waymo's motion must be denied.

6                                    **BACKGROUND**

7    On May 11, 2017, this Court ordered Uber to "immediately and in writing exercise the full
8  extent of their corporate, employment, contractual, and other authority" to prevent Levandowski
9  from using the downloaded materials, and to immediately remove him from "any role or
10 responsibility pertaining to LiDAR." Dkt. 433 at 23. On May 15, Uber's General Counsel, Salle
11 Yoo, sent Levandowski a letter that: (1) confirmed a decision Uber had previously made on April
12 27 to remove Levandowski from LiDAR-related work, and (2) made specific demands of
13 Levandowski to cooperate with Uber in its investigation into Waymo's allegations and in light of
14 the Court's order. *See* Dkt. 466-2. On May 18, Levandowski filed a motion to intervene and
15 publicly filed Yoo's May 15 letter as an exhibit. Dkts. 466; 466-2. On May 26, Yoo sent a second
16 letter to Levandowski notifying him that his employment was terminated unless he satisfied the
17 cure provisions in his employment agreement by June 15. Dkt. 519-2. Four days later,
18 Levandowski publicly filed that letter, prompting numerous press reports. *Id.*; *see, e.g.*, "Uber
19 fires star engineer, Anthony Levandowski, at the center of self-driving car battle," Wash. Post
20 (May 30, 2017), https://www.washingtonpost.com/news/the-switch/wp/2017/05/30/uber-fires-
21 star-engineer-anthony-levandowski-at-the-center-of-self-driving-car-battle/ (hyperlinking to
22 Yoo's termination letter).  None of these facts amounts to a privilege waiver.
23   Nevertheless, Waymo attempted to compel Uber's production of all privileged documents
24 about Uber's termination of Levandowski and his failure to cooperate with Uber's investigation.
25 Dkt. 1439 at 2-3. On September 11, Judge Corley held that the May Yoo letters were the only two
26 documents that "have been disclosed regarding the termination of Levandowski," that "Waymo
27 does not contend that either letter is privileged; thus neither is a voluntary disclosure of a
28 privileged communication," and that therefore "Waymo's insistence that it is entitled to all

privileged communications" on this issue "is unpersuasive and unsupported by citation to any authority." Dkt 1506 at 1-2. The May 26 Yoo letter referenced an April 20 email from Angela Padilla, which contained a specific request for cooperation to Levandowski, so Judge Corley ordered the disclosure of that communication. *Id.* at 2. None of these facts amounts to a privilege waiver.

## ARGUMENT
### A. Uber Has Never Selectively Disclosed Privileged Communications On This Topic.

Waymo's supplemental brief, like its motion, continues to rest on the false proposition that Uber has "continued to make selective disclosures regarding Mr. Levandowski's purported noncooperation." Dkt. 2042 at 1; *see also* Dkt. 1552 at 2. As the facts recited above show, however, Waymo's motion must fail because there has been no selective disclosure of privileged information. Judge Corley rejected Waymo's contention that Uber voluntarily disclosed privileged communications, and Waymo did not seek relief from Your Honor from that Order. *See* Dkt. 1506 at 1-2 ("Two documents have been disclosed regarding the termination of Mr. Levandowski . . . neither is a voluntary disclosure of a privileged communication.")

As such, Waymo's argument that Uber is using the privilege as "both a sword and a shield" rests on a fundamental misunderstanding of the selective waiver doctrine. The "principal purpose of the doctrine of waiver of the attorney-client privilege 'is to protect against the unfairness that would result from a privilege holder *selectively disclosing* privileged communications to an adversary.'" *Marilley v. Bonham*, 2013 WL 896755, at *3 (N.D. Cal. Mar. 8, 2013) (emphasis in original) (quoting *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996)). The principle is not implicated where, as here, a party only seeks to protect privileged communications; rather, a party must also use the privilege as a sword, which Uber has not done. *See Marilley*, 2013 WL 896755, at *3 (finding "no waiver of the attorney-client privilege" where the disclosure of proposed legislative amendments did not include "any attorney-client privileged communications" and thus did "not waive the attorney-client privilege for all communications relating to those amendments 'any more than the filing of a pleading in court waives all attorney-client communications regarding the substance of that pleading'"); *Avocent Redmond Corp. v.*

*Rose Elecs., Inc.*, 516 F. Supp. 2d 1199, 1202 (W.D. Wash. 2007) (concluding that a party "need not be concerned" that its opponent "will effectively use the invoices as both a sword and a shield" where the disclosure at issue did not "contain attorney-client privileged information").

Waymo fails to identify a single instance in which Uber voluntarily disclosed privileged information about Levandowski's non-cooperation, instead citing myriad examples of Uber's efforts to *protect* privileged communications from disclosure. Dkt. 2042 at 3 ("Counsel for Uber and Ottomotto repeatedly instructed Ms. Padilla not to answer numerous questions regarding and inquiring as to Mr. Levandowski's alleged non-cooperation," listing eight examples); 4 (Uber's counsel "would permit no questions regarding the conversations that Ms. Padilla had with Mr. Levandowski about this case"); 5 (Yoo "asserted privilege regarding Mr. Levandowski's cooperation with Uber," listing examples). The sole example Waymo provides of a *disclosure* on this topic is Padilla's testimony about Levandowski's refusal to turn over his laptops. *Id.* at 4. But the transcript demonstrates that Uber's counsel stated that Padilla could testify only about "the part of that question that involves his computers" because "a document has been produced on that point." Dkt. 2042-2 at 57:23-58:5. That is the April 20 email Judge Corley ordered to be produced. Dkt. 1506 at 2. Yet Judge Corley also rejected Waymo's argument that it is therefore also "entitled to all privileged communications" on this topic. *Id*. Waymo does not contend—nor could it—that the compelled production of this document was a selective privilege waiver by Uber, so Padilla's limited deposition testimony about this letter is not a selective waiver.

Waymo cannot preclude Uber from presenting evidence of the basic facts that it demanded Levandowski's cooperation and terminated him when he failed to comply simply because other privileged, undisclosed communications exist *about* these facts. As Waymo has acknowledged, the mere fact that a party asserts privilege over information that properly falls within the attorney-client or work product privileges, while allowing discovery into non-privileged facts or communications about the same topic, does not constitute the use of the privilege "as both a sword and a shield." Dkt. 1226-3 (Waymo brief arguing the fact that a defendant was "perfectly free to discover facts" and "conclusions [witnesses] drew from those facts" regarding Waymo's forensic investigation into Levandowski's downloading does not mean

3
UBER'S SUPP. BRIEF IN OPPOSITION TO WAYMO'S MOTION *IN LIMINE* NO. 14
Case No. 3:17-cv-00939-WHA

that they are "entitled to attorney-client communication[s] on this subject"); *see also* Dkt. 1506 at 2 (order concluding that "Waymo's insistence that it is entitled to all privileged communications regarding Uber's efforts to get Mr. Levandowski to return Waymo's files is unpersuasive," particularly given that under "Waymo's reasoning, Uber would be entitled to all of Waymo's privileged communications regarding its efforts to discover if Mr. Levandowski downloaded Waymo's materials," and yet Waymo has maintained otherwise).

### B. Uber Properly Instructed Deposition Witnesses Regarding The Privilege.

As in its opening motion, the deposition testimony Waymo relies upon in its supplemental brief makes clear there was no selective privilege waiver, nor any improper privilege instructions. Rather, the transcripts show that Uber allowed the witnesses to answer questions calling for non-privileged facts, while instructing them not to answer questions seeking the content of privileged communications. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (the privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts," as "a fact is one thing and a communication concerning that fact is an entirely different thing"). For example, in response to a question asking "what was done" by Uber in its investigation, Padilla was properly instructed to answer without disclosing privileged communications, which she did by explaining: "*[w]ithout getting into direct conversations* et cetera, I know that we tasked a large number of outside counsel to help, tasked in-house counsel to help, tasked in-house security teams to help, tasked others in the company who had engineering knowledge and the ability to—search." Goodman Decl., Ex. 1 at 46:11-23. Padilla properly declined to answer a question asking whether she has "personally ***asked Mr. Levandowski*** whether he took any Google or Waymo material with him to Uber" by explaining that "***discussions*** I had with Anthony on that topic are privileged." Dkt. 2042-2 at 52:8-14. Similarly, Waymo's question to Yoo as to whether she has "any non-privileged information regarding Mr. Levandowski's cooperation or lack of cooperation with Uber" was craftily phrased to prompt any lawyer to reflexively answer "no." Dkt. 2041-7 at 120:9-13. That answer is not a basis to preclude Uber from presenting central facts at trial, supported by Yoo's own non-privileged letters: that Uber asked Mr. Levandowski to cooperate with Uber and the Court; that he refused; and that he

was terminated for that refusal.

Waymo's reliance on the depositions of third parties Levandowski and his attorney, John Gardner, are likewise inapposite and misleading. Waymo points to *zero* privilege instructions given by counsel for Uber in Gardner's deposition. *See* Dkt 2041-9. Moreover, Gardner ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Levandowski was likewise represented by his own counsel at his deposition, and counsel for Uber joined appropriate instructions not to answer questions such as what "evidence ***have you been asked*** to gather by the defendants," when they called for the disclosure of the content of privileged communications. Dkt. 2041-8 at 490:12-19. In any event, and as Waymo has acknowledged, the relevance of Levandowski's privilege instructions is essentially none, given his invocation of the Fifth Amendment. *See* 9/27 H'rg Tr. at 40:1-4 (Mr. Perlson: "He wouldn't have answered it, anyway. I think he would have pled the Fifth either way; but they instructed him not to answer; but what—but what I'm—" Judge Alsup: "Well, what is your point?").

**C. Evidence Of Levandowski's Failure to Cooperate Is Highly Probative and Not Unduly Prejudicial.**

At bottom, Waymo's motion must fail because the facts Waymo wants to prevent the jury from hearing are highly probative and relevant to central issues in this case. Waymo wants to tell the jury that Uber hired Levandowski in a coordinated effort to steal Waymo's trade secrets, while precluding Uber from telling the jury it fired Levandowksi when he refused to cooperate with Uber's efforts to respond to these very accusations. "Waymo wants to exclude that evidence, because it hurts Waymo." 7/26 Hr'g Tr. at 61:8-14. But that is not "a good enough reason to exclude it." *Id*. The Court should therefore deny Waymo's motion and hold that Uber "ought to be allowed to prove that . . . they [asked Levandowski to cooperate] and he said no, and then they fired him as a result," *id.* at 71:17-21, in order to "be as fair as [it] can" in allowing both sides to "put this basic story in front of the jury," *id.* at 72:6-10.

Dated: October 25, 2017

MORRISON & FOERSTER LLP
BOIES SCHILLER FLEXNER LLP
SUSMAN GODFREY LLP

By: */s/ Karen L. Dunn*
    KAREN L. DUNN

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC