# EXHIBIT 3

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            UNITED STATES DISTRICT COURT
 2          NORTHERN DISTRICT OF CALIFORNIA
 3              SAN FRANCISCO DIVISION
 4
 5  WAYMO LLC,                        )
 6             Plaintiff,             )
 7         vs.                        ) Case No.
 8  UBER TECHNOLOGIES, INC.;          ) 3:17-cv-000939-WHA
 9  OTTOMOTTO LLC; OTTO TRUCKING,     )
10  INC.,                             )
11             Defendants.            )
12  _____)
13      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15     VIDEOTAPED DEPOSITION OF KRISTINN GUDJONSSON
16               Palo Alto, California
17               Friday, July 28, 2017
18                    Volume I
19
20  Reported by:
21  CARLA SOARES
22  CSR No. 5908
23  JOB No. 2665814
24
25  PAGES 1 - 242
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    BY MR. TAKASHIMA:                                          11:24:34

2        Q   Let me rephrase the question.

3            The purpose of your meeting was to clarify

4    the nature of this investigation request?

5        A   Yes.                                                11:24:42

6        Q   Did you discuss any investigation other

7    than a review of those two laptops?

8        A   At that meeting, no.

9        Q   Did you discuss any review of

10   Mr. Levandowski's e-mail?                                   11:24:57

11       A   Sorry.  Can you repeat?

12       Q   Did you discuss any review of

13   Mr. Levandowski's e-mail?

14       A   No, not at that meeting.

15       Q   Did Mr. Levandowski have a separate                 11:25:05

16   computer workstation?

17       A   He had two laptops and a workstation, yes.

18       Q   Okay.  Did you discuss any review of his

19   workstation?

20       A   I don't remember if that was discussed in           11:25:18

21   the first meeting or subsequent.

22       Q   In this meeting, did you discuss why an

23   investigation was being conducted of

24   Mr. Levandowski?

25           MR. BAKER:  You can answer that yes or no.          11:25:46
```

Page 54

```
 1              THE WITNESS:  Yes.                          11:25:48
 2     BY MR. TAKASHIMA:
 3         Q    And what's your understanding as to why
 4     the investigation was being conducted?
 5         A    Sorry.  Can you repeat?  Sorry.  I didn't   11:25:55
 6     hear everything.
 7         Q    Sure.  I'm happy to restate that.
 8              In that meeting, what was your
 9     understanding of why the investigation was being
10     conducted regarding Mr. Levandowski?                 11:26:08
11              MR. BAKER:  And you can answer that
12     generally from the technical standpoint, Kris.
13              THE WITNESS:  They had reasonable
14     suspicion that he might have removed intellectual
15     property from the grounds.                           11:26:24
16     BY MR. TAKASHIMA:
17         Q    What was the basis for that reasonable
18     suspicion?
19         A    I do not know.
20         Q    Did you ask?                                11:26:35
21         A    I don't remember.
22         Q    Did Mr. Brown ask?
23         A    I don't remember.
24         Q    Did you discuss a time frame for your
25     investigation?                                       11:26:51
```

```
 1        A    Time frame of when we were supposed to do      11:26:54
 2   it or time frame of --
 3        Q    Let me clarify that.
 4             Did you discuss a time frame of the
 5   information that you were going to review as part of     11:27:02
 6   your investigation?
 7        A    As in how far back in time or --
 8        Q    Yes.
 9        A    In that initial meeting?
10        Q    Yes.                                           11:27:14
11        A    I'm not sure.
12        Q    Did you discuss a time frame for your work
13   in that meeting?
14        A    Yes.  Probably.  That would be a typical
15   thing we would ask.                                      11:27:27
16        Q    And what time frame did you agree on?
17        A    I don't remember.
18        Q    Do you remember approximately?
19        A    At least a few months.  Couple of months.
20   Three months maybe.  I'm not completely sure what we     11:27:44
21   discussed -- what we agreed upon in the meeting, but
22   that is fairly generic, going back two, three
23   months.
24        Q    So to the best of your recollection, you
25   would get back to them in about three months?            11:27:58
```

Page 56

```
 1        A    Oh, when I would get back to them?            11:27:59
 2        Q    Yes.
 3        A    No, that would be just as soon as
 4   possible.
 5        Q    Okay.  So what does the three months refer    11:28:04
 6   to?
 7        A    I'm sorry.  I thought you were talking
 8   about how far back I should be looking at his
 9   activity on the machine.
10        Q    Okay.  So let me go back then.                11:28:12
11             So to the best of your recollection, what
12   you had agreed on is that you would look at the
13   machine and go back about three months?
14        A    Two, three months, probably.  Yeah.
15        Q    ████████████████████████████████     ████
     ████
          █    ████████████████████████████████████
     ██
19        Q    And then did you discuss how soon you
20   would revert to Ms. Bailey with more information?       11:28:36
21        A    As quickly as possible.
22        Q    When did the meeting take place?
23        A    I'm sorry.  Did you say "when" or "where"?
24        Q    When.
25        A    I'm not completely sure.  A guess would be    11:28:52
```

Page 57

```
1    end of January, beginning of February.  Not sure.       11:28:59

2         Q    Was that meeting in person?

3         A    Me and Gary were in person, and then they

4    were over VC, over videoconference.

5         Q    Where is Ms. Bailey located?                  11:29:18

6         A    I think she is in the Google X building.

7         Q    I'm sorry.  You said that some lawyer was

8    involved.  Do you recall which lawyer?

9         A    No, I don't.  Sorry.  I'm terrible with

10   names.                                                  11:29:36

11        Q    But is it fair to say it was an in-house

12   Google lawyer?

13        A    Yes.

14        Q    Okay.  And I believe you said earlier that

15   they had provided some clarification.  Is that          11:30:06

16   Ms. Bailey or the attorney or both?

17        A    Probably both, but I don't recall.

18        Q    What did you do after the meeting in terms

19   of the investigation?

20        A    I started a tracking doc.                     11:30:34

21        Q    Did you say "a tracking doc"?

22        A    I create a -- what we call ███████

23   ████████████████████████████████████████████

24   and a subsequent tracking doc.

25        Q    Okay.  And what information did you put in    11:30:53
```

Page 58

1          I, the undersigned, a Certified Shorthand
2   Reporter of the State of California, do hereby
3   certify:
4          That the foregoing proceedings were taken
5   before me at the time and place herein set forth;
6   that any witnesses in the foregoing proceedings,
7   prior to testifying, were administered an oath; that
8   a record of the proceedings was made by me using
9   machine shorthand which was thereafter transcribed
10  under my direction; that the foregoing transcript is
11  a true record of the testimony given.
12         Further, that if the foregoing pertains to
13  the original transcript of a deposition in a Federal
14  Case, before completion of the proceedings, review
15  of the transcript [ ] was [X] was not requested.
16         I further certify I am neither financially
17  interested in the action nor a relative or employee
18  of any attorney or any party to this action.
19         IN WITNESS WHEREOF, I have this date
20  subscribed my name.
21         Dated: 7/29/2017
22
23
             *Carla Soares* (signature)
24           CARLA SOARES
25           CSR No. 5908

Page 242