MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Telephone:    202.237.2727
Facsimile:    202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Telephone:    212.336.8330
Facsimile:    202.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                     Plaintiff,<br><br>         v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>                     Defendants. | Case No.      3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC.'S AND OTTOMOTTO LLC'S OPPOSITION TO WAYMO'S REQUEST TO FILE MOTION REGARDING SPOLIATION**<br><br>Trial Date: December 4, 2017 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

The Court is already familiar with the alleged spoliation claims raised by Waymo because it has seen almost all of them before. Put simply, this *precis is untimely*. Indeed, there is nothing in Waymo's motion that explains why it comes at this late date—Waymo's purported new evidence from Stroz relates to matters about which Waymo was aware pre-Stroz. With conspicuous gaps in its case, Waymo is now throwing a hail-Mary to make a case that is simply not there. It is noticeably ironic that Waymo's *precis* on spoliation comes *after* getting access to "hundreds of terabytes" of additional preserved data. Dkt. 1929 at 9. On the merits, Waymo seeks an adverse inference instruction based on deleted text messages and, ironically, a good-faith attempt to prevent Google confidential information from ever making its way to Uber. The bottom line is that Waymo has not presented evidence warranting the drastic remedy it seeks. This Court should require Waymo to prove its case with evidence, not adverse inferences.

### I.  WAYMO CANNOT MEET THE HIGH BURDEN NEEDED TO OBTAIN THE "EXTREME" REMEDY OF AN ADVERSE INFERENCE INSTRUCTION

Waymo's alleged acts of spoliation do not qualify as such. But even setting aside the fact-intensive issue of whether spoliation occurred for purposes of this brief response, Waymo's *precis* comes up short of alleging facts sufficient to warrant an adverse inference instruction. Even when spoliation occurs, courts are reluctant to give the "extreme" sanction of an adverse inference instruction. *Toppan Photomasks, Inc. v. Park*, 2014 WL 2567914, at *10 (N.D. Cal. May 29, 2014). In considering whether to give an adverse inference instruction, courts consider: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008). "After considering these factors, a court may decide to defer or decline to grant sanctions, despite a finding of spoliation." *Toppan*, 2014 WL 2567914, at *4.

Waymo gives short shrift to showing it was prejudiced by the loss of any of the text

messages or the five disks Mr. Levandowski destroyed.  It's not hard to see why.  As explained below, Waymo has suffered little if any prejudice, particularly when viewed in light of the other evidence that it claims to have marshalled and the fact that none of the material relates to whether Uber received or used any alleged trade secrets. Courts often decline to give an instruction where other evidence can compensate for lost evidence or the lost evidence is not central to the case. *See Erhart v. BofI Holding Inc.*, 2016 WL 5110453, at *8 (S.D. Cal. Sept. 21, 2016) ("[T]he Court concludes BofI has not suffered, and does not face the risk of, prejudice that is sufficient enough to warrant sanctions."); *Toppan Photomasks, Inc. v. Park*, 2014 WL 2567914, *10 (N.D. Cal. May 29, 2014) ("The Court finds that in light of this incomplete showing of prejudice, the adverse inferences sought . . . are not appropriate."); *Ahcom, Ltd. v. Smeding*, 2011 WL 3443499, at *9 (N.D. Cal. Aug. 8, 2011) ("The availability of secondary sources of evidence to compensate for the despoiled evidence lessens any risk of prejudice at trial.").

## II. WAYMO'S COMPLAINTS DO NOT MERIT AN ADVERSE INFERENCE

### A. Travis Kalanick Did Not "Destroy Evidence" or Act in Bad Faith

Waymo's first ground for seeking an adverse inference instruction is that Travis Kalanick, Uber's former CEO, acted in "bad faith" and "destroyed evidence" when he did not timely disable the 30-day auto-delete function on his personal iPhone.  There is no evidence of bad faith or an intention to destroy evidence.   Once the issue was discovered, Mr. Kalanick and his personal counsel retained a forensics expert to analyze the phone and retrieve as many messages as possible.  Buland Decl. Ex. 1 ¶ 9.  The forensic specialist submitted unrebutted testimony that the 30-day auto-delete feature is a common tool used by individuals with high text messaging activity to manage their storage and it had been in place "at all relevant times," thus precluding any suggesting the feature was being used to intentionally destroy evidence.  *Id.* After the forensic work, Mr. Kalanick was able to produce 554 text messages between him and Mr. Levandowski, including 13 text messages sent between February 13 and April 5, 2016.  *Id.* Ex. 2 ¶¶ 2-6.

Moreover, Waymo should not be heard to complain about any text messages lost as a

1  result of an auto-delete setting. 

2

3

4

5

6

7

8

9    Finally, Waymo's motion is untimely. In August, Waymo moved to compel additional

10 productions of Mr. Kalanick's text messages and to inspect the phone itself. Dkt. 1117. Judge

11 Corley denied Waymo's motion in its entirety. Dkt. 1176. Waymo does not explain why it

12 waited to file its *precis* now, as opposed to when pretrial filings were previously due.

13    **B. No Defendant Ever Possessed Levandowski's Personal Computer**

14    Waymo next complains about an issue that has nothing to do with spoliation. Waymo

15 claims Mr. Levandowski's counsel at Goodwin Procter should have taken their client's laptops

16 and turned them over to Waymo, in violation of his express instructions and his Fifth Amendment

17 rights. Not surprisingly, Waymo cites no authority for this proposition.

18    In April 2017, Uber sought Mr. Levandowski's personal laptops to comply with the

19 Court's discovery orders. Mr. Levandowski invoked his Fifth Amendment rights and refused to

20 provide them to Uber. Buland Decl. Ex. 6 ¶ 2. As an accommodation, he did agree to provide

21 the laptops to his personal counsel (at Goodwin Procter, who represent Levandowski in the

22 Google arbitration) to be searched in connection with Uber's investigation into the downloading

23 of the 14,000 files. *Id.* Uber provided Goodwin Procter with the 14,000-plus file names, the hash

24 values for those 14,000 files, and Uber's and Waymo's search terms then being used to search

25 Uber's own systems. *Id.* The results of the searches were given to Uber's outside counsel and

26 were produced to Waymo on June 19, 2017. *Id.* Ex. 6 ¶ 2; *id.* Ex. 7 ¶ 5. None of the Defendants

27 ever possessed the devices and none knows their current whereabouts. *Id.* Ex. 7 ¶ 4; *id.* Ex. 8 ¶ 5.

28    Mr. Levandowski exercised his Fifth Amendment right to not have his computers turned

1  over to the parties for inspection in this case, *see Malloy v. Hogan*, 378 U.S. 1, 9 n.7 (1964), and
2  his counsel at Goodwin Procter cannot be compelled to ignore or try to circumvent invocation of
3  his rights, *see Lekfowitz v. Cunningham*, 431 U.S. 801, 806 (1977).  There is simply no issue of
4  spoliation here—Waymo has not shown that any evidence was destroyed, as opposed to being
5  unavailable due to Mr. Levandowski's Fifth Amendment invocation.

**C. The Destruction of the Five Disks Did Not Prejudice Waymo**

7  Waymo's next alleged basis for seeking an adverse inference is also familiar to the Court:
8  Mr. Levandowski's destruction of five disks prior to the Stroz process.  Waymo has been aware
9  of the destruction of the "five disks" since June 5, 2017. *See* Dkt. 676-4.  Three Uber employees
10 were present at the March 11, 2016 meeting where Mr. Levandowski told Uber about finding the
11 five disks. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
13 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
15 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mr.
16 Levandowski's statements to Stroz about what was said at the meeting do not materially change
17 the story and reinforce that Uber told him it did not want any Google material.
18  The relevance of these disks is marginal at best and their destruction did not prejudice
19 Waymo.  These materials were destroyed before Mr. Levandowski joined Uber and therefore
20 cannot reflect evidence about the central matter in this case—whether Waymo's trade secrets
21 were misappropriated by *Uber*.  To the extent that Waymo would use the disks to show that Mr.
22 Levandowski retained confidential Google information following his departure, Waymo has
23 purported evidence of that elsewhere.   For example, Waymo has access to the preserved copies
24 of "approximately 100" of Levandowski's other electronic devices, Dkt. 1604 at 1, and claims to
25 have found the materials showing that Levandowski retained information related to all nine of the
26 trade secrets at issue.  Dkt. 2062 at 4-5.  Moreover, Levandowski has admitted that the disks
27 contained Google information.  Therefore, the contents the five disks would be, at the very most,
28 cumulative of other evidence that Waymo already has.

Finally, an adverse instruction is particularly inappropriate here because the evidence and timing suggests that the destruction of the disks was a *good-faith* attempt by Mr. Levandowski to avoid bringing any Waymo information to Uber.  Waymo may believe his motives were otherwise, but the parties should argue that issue to the jury and not have it prejudged by an adverse inference instruction from the Court.

### D. The Alleged Loss of Text Messages from Early 2016 Does Not Prejudice Waymo

Finally, Waymo argues that in early 2016, Mr. Levandowski encouraged some Otto and Uber employees to delete text messages about the ongoing commercial negotiations between Uber and Otto.  Buland Decl. Ex. 9 at 178:9-180:12.  Like the other parts of its *precis*, Waymo has long known about (1) Levandowski's request to delete texts and (2) the fact that at least one Uber employee complied.  *Id.* at 61:17-63:5; 178:22-23.  Again, Waymo offers no reason for not bringing this motion earlier. (Waymo's brief even cites allegations against former Uber employee Nina Qi based on deposition testimony from *June*.)  The fact that the Stroz materials contain text messages memorializing the same conduct does not entitle Waymo to a do-over.

On the merits, Waymo again fails to show any meaningful prejudice from losing access to such information.  This case is about whether Uber received and used Waymo's trade secrets.  The theory that text messages about business terms would contain trade secrets is thin.

Waymo's argument is premised on the assumption Uber should have preserved documents back in early 2016.  This is wrong.  Just because Uber feared retaliation from Google did not make litigation *probable*, which is what would give rise to a duty to preserve.  *See In re Napster Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006). Again, Waymo's own actions undermine its position. ████████████████████████████████████████████████████████████████████████████████████████

In short, Waymo's motion belatedly seeks a way fill an evidentiary gap now that Waymo must recognize that Uber never acquired any Waymo alleged trade secrets. A drastic, prejudicial remedy based the alleged loss of a small amount of collateral information is not evidence of trade secret theft.  Waymo's *precis* should be denied.

Dated: October 25, 2017                SUSMAN GODFREY L.L.P.

                                              By: /s/ *William Carmody*
                                                  WILLIAM CARMODY

**ATTESTATION OF E-FILED SIGNATURE**

I, Arturo J. González, am the ECF User whose ID and password are being used to file this Declaration. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that William Carmody has concurred in this filing.

Dated:  October 25, 2017                          */s/ Arturo J. González*
                                                             Arturo J. González