# EXHIBIT 3

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                SAN FRANCISCO DIVISION

 4

 5   WAYMO LLC,                     )

 6              Plaintiff,          )

 7         vs.                      ) Case No.

 8   UBER TECHNOLOGIES, INC.;       ) 3:17-cv-000939-WHA

 9   OTTOMOTTO LLC; OTTO TRUCKING,  )

10   INC.,                          )

11              Defendants.         )

12   _____)

13      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

14

15    VIDEOTAPED DEPOSITION OF KRISTINN GUDJONSSON

16                Palo Alto, California

17               Friday, July 28, 2017

18                     Volume I

19

20   Reported by:

21   CARLA SOARES

22   CSR No. 5908

23   JOB No. 2665814

24

25   PAGES 1 - 242
```

                                        Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    BY MR. TAKASHIMA:                                    11:24:34

 2         Q    Let me rephrase the question.

 3              The purpose of your meeting was to clarify

 4    the nature of this investigation request?

 5         A    Yes.                                        11:24:42

 6         Q    Did you discuss any investigation other

 7    than a review of those two laptops?

 8         A    At that meeting, no.

 9         Q    Did you discuss any review of

10    Mr. Levandowski's e-mail?                            11:24:57

11         A    Sorry.  Can you repeat?

12         Q    Did you discuss any review of

13    Mr. Levandowski's e-mail?

14         A    No, not at that meeting.

15         Q    Did Mr. Levandowski have a separate        11:25:05

16    computer workstation?

17         A    He had two laptops and a workstation, yes.

18         Q    Okay.  Did you discuss any review of his

19    workstation?

20         A    I don't remember if that was discussed in  11:25:18

21    the first meeting or subsequent.

22         Q    In this meeting, did you discuss why an

23    investigation was being conducted of

24    Mr. Levandowski?

25              MR. BAKER:  You can answer that yes or no.  11:25:46
```

Page 54

```
 1              THE WITNESS:  Yes.                    11:25:48

 2   BY MR. TAKASHIMA:

 3        Q   And what's your understanding as to why

 4   the investigation was being conducted?

 5        A   Sorry.  Can you repeat?  Sorry.  I didn't   11:25:55

 6   hear everything.

 7        Q   Sure.  I'm happy to restate that.

 8              In that meeting, what was your

 9   understanding of why the investigation was being

10   conducted regarding Mr. Levandowski?               11:26:08

11              MR. BAKER:  And you can answer that

12   generally from the technical standpoint, Kris.

13              THE WITNESS:  They had reasonable

14   suspicion that he might have removed intellectual

15   property from the grounds.                         11:26:24

16   BY MR. TAKASHIMA:

17        Q   What was the basis for that reasonable

18   suspicion?

19        A   I do not know.

20        Q   Did you ask?                              11:26:35

21        A   I don't remember.

22        Q   Did Mr. Brown ask?

23        A   I don't remember.

24        Q   Did you discuss a time frame for your

25   investigation?                                     11:26:51
```

Page 55

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1          A    Time frame of when we were supposed to do       11:26:54
 2    it or time frame of --
 3          Q    Let me clarify that.
 4               Did you discuss a time frame of the
 5    information that you were going to review as part of       11:27:02
 6    your investigation?
 7          A    As in how far back in time or --
 8          Q    Yes.
 9          A    In that initial meeting?
10          Q    Yes.                                            11:27:14
11          A    I'm not sure.
12          Q    Did you discuss a time frame for your work
13    in that meeting?
14          A    Yes.  Probably.  That would be a typical
15    thing we would ask.                                        11:27:27
16          Q    And what time frame did you agree on?
17          A    I don't remember.
18          Q    Do you remember approximately?
19          A    At least a few months.  Couple of months.
20    Three months maybe.  I'm not completely sure what we      11:27:44
21    discussed -- what we agreed upon in the meeting, but
22    that is fairly generic, going back two, three
23    months.
24          Q    So to the best of your recollection, you
25    would get back to them in about three months?             11:27:58
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        A   Oh, when I would get back to them?          11:27:59

 2        Q   Yes.

 3        A   No, that would be just as soon as

 4   possible.

 5        Q   Okay.  So what does the three months refer   11:28:04

 6   to?

 7        A   I'm sorry.  I thought you were talking

 8   about how far back I should be looking at his

 9   activity on the machine.

10        Q   Okay.  So let me go back then.               11:28:12

11            So to the best of your recollection, what

12   you had agreed on is that you would look at the

13   machine and go back about three months?

14        A   Two, three months, probably.  Yeah.

15        Q   ██████████████████████████     ███ █

     ██  ████████

     █   █  ███████████████████████████

     █  ███████

19        Q   And then did you discuss how soon you

20   would revert to Ms. Bailey with more information?    11:28:36

21        A   As quickly as possible.

22        Q   When did the meeting take place?

23        A   I'm sorry.  Did you say "when" or "where"?

24        Q   When.

25        A   I'm not completely sure.  A guess would be   11:28:52
```

Page 57

1    end of January, beginning of February.  Not sure.        11:28:59

2         Q   Was that meeting in person?

3         A   Me and Gary were in person, and then they

4    were over VC, over videoconference.

5         Q   Where is Ms. Bailey located?                    11:29:18

6         A   I think she is in the Google X building.

7         Q   I'm sorry.  You said that some lawyer was

8    involved.  Do you recall which lawyer?

9         A   No, I don't.  Sorry.  I'm terrible with

10   names.                                                   11:29:36

11        Q   But is it fair to say it was an in-house

12   Google lawyer?

13        A   Yes.

14        Q   Okay.  And I believe you said earlier that

15   they had provided some clarification.  Is that           11:30:06

16   Ms. Bailey or the attorney or both?

17        A   Probably both, but I don't recall.

18        Q   What did you do after the meeting in terms

19   of the investigation?

20        A   I started a tracking doc.                       11:30:34

21        Q   Did you say "a tracking doc"?

22        A   I create a -- what we call ████████

23   ██  ████████████████████████████████████

24   and a subsequent tracking doc.

25        Q   Okay.  And what information did you put in       11:30:53

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby

3    certify:

4          That the foregoing proceedings were taken

5    before me at the time and place herein set forth;

6    that any witnesses in the foregoing proceedings,

7    prior to testifying, were administered an oath; that

8    a record of the proceedings was made by me using

9    machine shorthand which was thereafter transcribed

10    under my direction; that the foregoing transcript is

11    a true record of the testimony given.

12          Further, that if the foregoing pertains to

13    the original transcript of a deposition in a Federal

14    Case, before completion of the proceedings, review

15    of the transcript [ ] was [X] was not requested.

16          I further certify I am neither financially

17    interested in the action nor a relative or employee

18    of any attorney or any party to this action.

19          IN WITNESS WHEREOF, I have this date

20    subscribed my name.

21          Dated: 7/29/2017

22

23

24          CARLA SOARES

25          CSR No. 5908

Page 242