# EXHIBIT 10

WAYMO & UBER CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1            UNITED STATES DISTRICT COURT
 2          NORTHERN DISTRICT OF CALIFORNIA
 3               SAN FRANCISCO DIVISION
 4                    ---oOo---
 5
 6   WAYMO LLC,
 7        Plaintiff,
 8   vs.                    No. 3:17-cv-00939-WHA
 9   UBER TECHNOLOGIES, INC.;
     OTTOMOTTO LLC; OTTO TRUCKING,
10   INC.,
11        Defendants.
                                      /
12
13     WAYMO & UBER CONFIDENTIAL ATTORNEYS' EYES ONLY
14
15     VIDEOTAPED DEPOSITION OF CAMERON POETZSCHER
16               SAN FRANCISCO, CALIFORNIA
17                MONDAY, JUNE 19, 2017
18
19
20   BY:  ANDREA M. IGNACIO,
21   CSR, RPR, CRR, CCRR, CLR
22   CSR LICENSE NO. 9830
23   JOB NO. 2642012
24
25   Pages 1 - 374
```

Page 1

WAYMO & UBER CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A    No, no.  It happens automatically. | 14:41 |
| 2 | Q    Okay.  Okay.  All right. | 14:41 |
| 3 | So, you had this discussion with him in -- on | 14:41 |
| 4 | or about March 11th, 2016, and he says he's ident- -- | 14:41 |
| 5 | identified these disks. | 14:41 |
| 6 | Do you recall how many he said he had? | 14:41 |
| 7 | A    He said it was a system that had five disks | 14:41 |
| 8 | in it.  The way he described it is an array, which | 14:41 |
| 9 | means done in an array of expensive disks.  So | 14:42 |
| 10 | essentially, the cheap disks -- there's five of them. | 14:42 |
| 11 | So if one fails, it's on the other.  You know, I'm not | 14:42 |
| 12 | a technology expert, but that was my understanding. | 14:42 |
| 13 | So, it's essentially one set of five disks. | 14:42 |
| 14 | Q    And was the same material still on his hard | 14:42 |
| 15 | drive? | 14:42 |
| 16 | A    You mean his computer hard drive? | 14:42 |
| 17 | Q    Right. | 14:42 |
| 18 | A    As I understood it, he no longer had that | 14:42 |
| 19 | hard drive.  Either he'd returned it to Google or | 14:42 |
| 20 | something.  He didn't have the hard drive.  He simply | 14:42 |
| 21 | had the backup that had been attached to the hard | 14:42 |
| 22 | drive.  He had just recently found that in storage or | 14:42 |
| 23 | something. | 14:42 |
| 24 | Q    And, as far as you know, the hard drive | 14:42 |
| 25 | itself had been returned to Google when he left | 14:42 |

WAYMO & UBER CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | Google? | 14:42 |
| 2 | A    Either returned to Google, disposed of, | 14:42 |
| 3 | whatever.  This was something that was portrayed to us | 14:42 |
| 4 | as something that had happened in the past.  He had | 14:42 |
| 5 | just discovered that he still had the backed-up disks | 14:42 |
| 6 | that had the old backup of the computer that he no | 14:42 |
| 7 | longer had. | 14:42 |
| 8 | Q    And -- and you don't know specifically what | 14:42 |
| 9 | happened to the hard drive? | 14:42 |
| 10 | A    No, I don't. | 14:42 |
| 11 | Q    So, once Mr. Levandowski told the group at | 14:42 |
| 12 | this meeting that he'd discovered these disks from the | 14:43 |
| 13 | backup system, what -- what was he told to do? | 14:43 |
| 14 | A    So Travis said, Do not bring anything from | 14:43 |
| 15 | Google or otherwise to Uber. | 14:43 |
| 16 | Q    Anything else? | 14:43 |
| 17 | A    Did Travis say anything else? | 14:43 |
| 18 | Q    Yes. | 14:43 |
| 19 | A    No, not -- not then, no. | 14:43 |
| 20 | Q    Did anybody else at the meeting say anything | 14:43 |
| 21 | else? | 14:43 |
| 22 | A    Yes.  So I then said, Yeah, get rid of it. | 14:43 |
| 23 |      And then Travis immediately -- as soon as I | 14:43 |
| 24 | said that, Travis pointed at me and looked at Anthony | 14:43 |
| 25 | and said, Don't listen to him, you know.  Talk to your | 14:43 |

```
1    lawyer.                                                    14:43
2            And then, as soon as Travis said that, I          14:43
3    realized I had said an ill-advised thing.  And so I       14:43
4    said, "Yeah, listen to Travis, not me," or something      14:43
5    to that effect.                                            14:43
6            So that all happened in quick sequence.           14:43
7       Q    Okay.  So Travis told Mr. Levandowski, We         14:43
8    don't want you to bring the Google stuff to Uber;         14:43
9    right?                                                     14:43
10      A    Correct.                                           14:43
11      Q    You told Mr. Levandowski to get rid of it?        14:43
12      A    Correct.                                           14:43
13      Q    And then Travis corrected you and said, No,       14:43
14   talk to your lawyers?                                      14:43
15      A    Uh-huh.  He immediately corrected me and         14:43
16   said, "Don't listen to him," as in me.  "Talk to your    14:44
17   lawyer."                                                   14:44
18           And then I immediately, you know, endorsed        14:44
19   Travis' correction of myself and said, Yeah, don't       14:44
20   listen to me.  Talk to your lawyer.                       14:44
21      Q    And this was all at that same meeting?            14:44
22      A    This was all at that same meeting.                14:44
23      Q    Did anyone, other than you and Travis,            14:44
24   respond to Mr. Levandowski's revelation that he had      14:44
25   found these five backup disks in his possession?         14:44
```

WAYMO & UBER CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A    Not that I recall. | 14:44 |
| 2 | Q    And how did Mr. Levandowski respond to what | 14:44 |
| 3 | you and Travis told him at that meeting? | 14:44 |
| 4 | A    I mean, I think it was something as simple | 14:44 |
| 5 | as, "Okay," something like that.  At least the | 14:44 |
| 6 | impression I had leaving the meeting was that he had | 14:44 |
| 7 | understood and would, you know, talk to his lawyer. | 14:44 |
| 8 | Q    And was this -- let me start over. | 14:44 |
| 9 | So -- so you had this meeting on -- on or | 14:44 |
| 10 | about March 11th, 2016, and these disks were | 14:44 |
| 11 | discussed. | 14:44 |
| 12 | Was there anything else discussed at that | 14:44 |
| 13 | meeting? | 14:44 |
| 14 | A    Again, I can't recall.  That would suggest | 14:44 |
| 15 | there are other topics.  I just don't know whether | 14:44 |
| 16 | that was the same meeting or not. | 14:44 |
| 17 | Q    So, sitting here today, your rec- -- your | 14:45 |
| 18 | recollection of the meeting, in which the disks were | 14:45 |
| 19 | discussed, was it a meeting -- meeting just about the | 14:45 |
| 20 | disks? | 14:45 |
| 21 | A    I don't recall that.  I do believe there were | 14:45 |
| 22 | other topics.  I -- I think it's likely there were | 14:45 |
| 23 | these topics since it's the same date. | 14:45 |
| 24 | MR. JACOBS:  Pointing to 280? | 14:45 |
| 25 | THE WITNESS:  Yeah, pointing to 280, the | 14:45 |

Page 256

WAYMO & UBER CONFIDENTIAL - ATTORNEYS EYES ONLY

CERTIFICATE OF REPORTER

I, ANDREA M. IGNACIO, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth, and nothing but the truth in the within-entitled cause;

That said deposition was taken in shorthand by me, a disinterested person, at the time and place therein stated, and that the testimony of the said witness was thereafter reduced to typewriting, by computer, under my direction and supervision;

That before completion of the deposition, review of the transcript [x] was [ ] was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition, nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

Dated: June 20, 2017

ANDREA M. IGNACIO,
RPR, CRR, CCRR, CLR, CSR No. 9830

Page 374