# REDACTED
# VERSION OF EXHIBIT 1
# SOUGHT TO BE FILED
# UNDER SEAL IN ITS
# ENTIRETY

Neel Chatterjee (SBN 173985)
*nchatterjee@goodwinlaw.com*
James Lin (SBN 310440)
*jlin@goodwinlaw.com*
**GOODWIN PROCTER LLP**
135 Commonwealth Drive
Menlo Park, California 94025
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

Brett Schuman (SBN 189247)
*bschuman@goodwinlaw.com*
Shane Brun (SBN 179079)
*sbrun@goodwinlaw.com*
Rachel M. Walsh (SBN 250568)
*rwalsh@goodwinlaw.com*
Hayes P. Hyde (SBN 308031)
*hhyde@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

Hong-An Vu (SBN 266268)
*hvu@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, 41st Floor
Los Angeles, California  90017
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673

*Attorneys for Defendant: Otto Trucking LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Waymo LLC,<br><br>                    Plaintiff,<br><br>            v.<br><br>Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC,<br><br>                    Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**OTTO TRUCKING LLC'S NOTICE OF MOTION AND MOTION FOR A SEPARATE TRIAL**<br><br>Date:          October 3, 2017<br>Time:         8:00 a.m.<br>Courtroom: 8 – 9th Floor<br>Judge:        Hon. William Alsup<br><br>Filed/Lodged Concurrently:<br>1.  Declaration of Neel Chatterjee<br>2.  Proposed Order<br>3.  Proof of Service |

[Unredacted Version of Document Sought to be filed Under Seal]

**NOTICE OF MOTION AND MOTION FOR A SEPARATE TRIAL**

TO THE COURT, THE PARTIES, AND ALL ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 3, 2017, at 8:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA, in Courtroom 8 before the Honorable William Alsup, Defendant Otto Trucking LLC ("Otto Trucking") will move and hereby does move for a separate trial from Defendants Uber Technologies, Inc. and Ottomotto LLC (together "Uber").  In the alternative, Otto Trucking requests that the Court conduct an evidentiary hearing regarding the nature of Otto Trucking's business in view of Plaintiff Waymo LLC's theories of liability.

Otto Trucking has requested a separate trial in the Joint Proposed Pretrial Order (Dkt. No. 1725, at 12) and hereby moves for a separate trial from Uber on the grounds that resolution of Plaintiff's claims against Otto Trucking involves distinct witnesses, issues, damages (or lack thereof) and defenses from Uber.  Just recently, Waymo confirmed that its theories of liability and damages as to Otto Trucking are distinct from its theories of liability and damages as to defendants Uber Technologies, Inc. and Ottomotto LLC.  Currently, Waymo's only theory as to liability is that Otto Trucking obtained Waymo's purported trade secrets through acquisition by Anthony Levandowski after it was formed, not through their use by Uber.  Waymo has also presented no damages theory or evidence against Otto Trucking, so any trial for Otto Trucking should be before the Court, not a jury.  A separate trial for Uber and Otto Trucking would promote the interest of judicial economy because determination of whether Waymo's purported trade secrets are protectable, and whether those trade secrets were misappropriated at all could prove wholly dispositive, obviating a need for a trial of Waymo's claims against Otto Trucking.  Further, the complexity of the issues involved in the case against Uber increase the risk of jury confusion and, in turn, prejudice to Otto Trucking.  The Court should therefore exercise its broad discretion and order a separate trial as to Waymo's claims against Otto Trucking.  Otto Trucking believes its case should follow the case against Uber.

Otto Trucking's motion is based on this Notice of Motion and Motion; the accompanying

1  Memorandum of Points and Authorities; the concurrently filed Declaration of Neel Chatterjee, and

2  all exhibits attached thereto; all documents in the Court's file, any matters of which this Court may

3  take judicial notice; and on such other written and oral argument as may be presented to the Court.

4

Dated:   September 26, 2017                    Respectfully submitted,

5

6                                          By:    /s/   Neel Chatterjee
                                                  Neel Chatterjee
7                                                 nchatterjee@goodwinlaw.com
                                                  Brett Schuman
8                                                 bschuman@goodwinlaw.com
                                                  Shane Brun
9                                                 sbrun@goodwinlaw.com
                                                  Rachel M. Walsh
10                                                rwalsh@goodwinlaw.com
                                                  Hong-An Vu
11                                                hvu@goodwinlaw.com
                                                  Hayes P. Hyde
12                                                hhyde@goodwinlaw.com
                                                  James Lin
13                                                jlin@goodwinlaw.com
                                                  **GOODWIN PROCTER** LLP
14
                                          *Attorneys for Defendant: Otto Trucking LLC*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.      INTRODUCTION**

3          After months of blurring the lines between Uber and Otto Trucking to keep Otto Trucking

4    in this case, at the September 20, 2017 hearing on defendants' motion for summary judgment,

5    Waymo finally confirmed that its only theory of liability against Otto Trucking has nothing to do

6    with Uber.  Instead, all that remains of Waymo's claim against Otto Trucking is whether liability

7    can be imputed to Otto Trucking based on the actions of Anthony Levandowski after the

8    formation of Otto Trucking.  As a result, Otto Trucking requested a separate trial in the parties'

9    Joint Proposed Pretrial Order (Dkt. No. 1725, at 12) and hereby submits this motion and

10   memorandum of points and authorities in support of its request.  Waymo has also presented no

11   damages theory or evidence as to Otto Trucking, which means that any claims against Otto

12   Trucking should be tried to the bench, not to a jury.

13         Waymo has no evidence that Otto Trucking has ever used the Uber LiDAR systems,

14   Spider and Fuji, that allegedly contain Waymo's alleged trade secrets, and nor can it adduce any.

15   Although Waymo has previously argued that Otto Trucking should be held jointly and severally

16   liable because Uber has an option to acquire it in the future, Waymo has dropped this legally

17   unsupported position as the only basis for indirect liability against Otto Trucking. Now, the only

18   basis for liability Waymo identified in the Pretrial Order is through Anthony Levandowski, and

19   not Uber.[1]  *See* Dkt. No. 1725.  Indeed, Waymo's own damages expert testified ▮▮▮▮▮▮▮▮)

20   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)

21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)  Declaration of Neel Chatterjee in Support of Defendant Otto

22   Trucking LLC's Motion for a Separate Trial ("Chatterjee Decl.") Ex. 1 (Deposition Transcript of

23   Michael J. Wagner), at 127:12–142:7.

24         As the Court summarized, the only theory of liability as to Otto Trucking is a theory of

25   acquisition based on whether Mr. Levandowski was acting on behalf of Otto Trucking at the time

26   that he accessed certain files identified in Exhibit 16 of the Stroz report after Otto Trucking was

27   _____

28   [1] Waymo has also stated for the first time in the Pretrial Order that Otto Trucking should be held vicariously liable through O'Melveny & Myers LLP, Otto Trucking's transactional counsel.

DEFENDANT OTTO TRUCKING LLC'S NOTICE OF MOTION
AND MOTION FOR A SEPARATE TRIAL                                  CASE NO. 3:17-CV-00939-WHA

formed.  *See* Chatterjee Decl. Ex. 2 (September 20, 2017 Hearing Transcript), at 63:8–64:20.  To date, none of these alleged accesses have been tied to the nine trade secrets set for trial.  This discrete issue is separate and distinct from any theory of liability relating to Uber, and as the Court has also acknowledged, "trucks ha[ve] almost nothing to do with this case."  *See* Chatterjee Decl. Ex. 2 (September 20, 2017 Hearing Transcript), at 63:15.  But these narrow issues as to Otto Trucking have been lost among the numerous legal issues and allegations that Waymo has alleged against Uber.

Accordingly, Otto Trucking requests that the Court order that the claims against Otto Trucking be tried separately on the current case schedule to promote efficiency, eliminate the issues as to Otto Trucking that will simplify proceedings as to Uber, reduce juror confusion, and avoid prejudice to Otto Trucking.  In the alternative, Otto Trucking requests that the Court hold an evidentiary hearing regarding the nature of Otto Trucking's business, and whether Mr. Levandowski could have been acting on behalf of Otto Trucking according to Waymo's current theory.

## II.   OTTO TRUCKING'S ISSUES, DEFENSES, DAMAGES, AND WITNESSES ARE DIFFERENT FROM THOSE OF UBER

### A.   Waymo Has No Theory of Misappropriation by Use Against Otto Trucking.

Waymo's theory of trade secret misappropriation by use cannot be maintained against Otto Trucking.  Waymo has made clear that its claim for misappropriation based on use rests on whether Uber's LiDAR systems, Fuji and Spider, contain any of Waymo's alleged trade secrets.  *See* Chatterjee Decl. Ex. 3 (Plaintiff Waymo's Supplemental Objections and Responses to Otto Trucking, LLC's Interrogatory Nos. 1-9), at 134–46.  This theory of liability is inapplicable as to Otto Trucking, as Waymo has admitted that it has no evidence that Otto Trucking has ever used either Spider or Fuji.  *See* Chatterjee Decl. Ex. 2 (September 20, 2017 Hearing Transcript), at 56:7–57:21 (Counsel for Waymo not refuting Otto Trucking's arguments regarding no evidence of use and shifting the Court's attention only to acquisition).

Waymo can present no evidence that Otto Trucking used its alleged trade secrets, at least because it has no evidence that Otto Trucking ever used Uber's Spider or Fuji LiDAR.  As

1    explained to Waymo many times, Otto Trucking is a limited liability company that has no

2    employees or operations.  Defendants' Motion for Summary Judgment at 17, Dkt. No. 1423.  It

3    leased for a period of time some trucks owned by Uber and merely owns a subsidiary, Otto

4    Transport, that owns three Volvo VNL670 trucks and one Peterbilt truck.  *Id.*  None of these

5    trucks have ever used Spider or Fuji.  *Id.*  Any LiDAR systems ever used on any trucks leased or

6    owned by Otto Trucking were off-the-shelf products developed by a third-party, Velodyne.  *Id.*

7    Waymo inspected the Otto Trucking trucks and has not found any evidence to the contrary.

8         **B.    Waymo's Only Theory of Liability as to Otto Trucking is Based on Mr.
              Levandowski's Alleged Acquisition of the Purported Trade Secrets.**
9

10        The remaining issues as to Otto Trucking have nothing to do with the allegations and legal

11   theories advanced against Uber.  Waymo's only remaining theory of liability against Otto

12   Trucking is unique to Otto Trucking and separate from Waymo's theories of liability against Uber

13   and Ottomotto.  After the hearing on Otto Trucking's motion for summary judgment, Waymo's

14   lone theory for liability as to Otto Trucking is based on the alleged actions of Mr. Levandowski

15   after the formation of Otto Trucking on February 1, 2016.  *See* Chatterjee Decl. Ex. 2 (September

16   20, 2017 Hearing Transcript), at 57:6–59:9.  Waymo had originally argued that conduct occurring

17   in December 2015—months before Otto Trucking's founding—could be imputed to it, but Mr.

18   Levandowski could not be acting on behalf of Otto Trucking before it even existed.  Defendants'

19   Motion for Summary Judgment at 20, Dkt. No. 1423.  Waymo responded by alleging that, based

20   on one exhibit to the Stroz report indicating that Mr. Levandowski allegedly viewed some

21   documents in February and March 2016, Otto Trucking could be liable, as Mr. Levandowski could

22   have been acting for Otto Trucking as its managing member.  *See* Chatterjee Decl. Ex. 2

23   (September 20, 2017 Hearing Transcript), at 57:6–59:9.  To date, Waymo has not sought to

24   supplement the summary judgment record with any evidence.

25        Waymo's newest theory demonstrates that its claims against Otto Trucking are

26   independent of Uber.  Indeed, Waymo did not mention once at the September 20, 2017 hearing

27   that Otto Trucking could be vicariously liable for the actions of Uber, nor did Waymo include in

28   the Joint Pretrial Order any basis for Otto Trucking's vicarious liability through the actions of

1  Uber.  *See* Dkt. No. 1725 (identifying only Mr. Levandowski and O'Melveny & Myers as the

2  basis for vicarious liability as to Otto Trucking).

3       **C.       Waymo Has No Damages Theory as to Otto Trucking.**

4           Waymo has no basis for a damages theory against Otto Trucking, let alone based on its

5  theory that Mr. Levandowski allegedly viewed some Waymo documents in February or March of

6  2016.  Waymo's damages expert, Michael Wagner, testified that though he calculated billions in

7  damages as to Uber, he conducted no independent analysis as to Otto Trucking.  Mr. Wagner

8  

9  

10 

11 

12 

13 Chatterjee Decl. Ex. 1 (Deposition Transcript of Michael J. Wagner),127:12–15.

14 

15 

16 

17 

18 

19 

20 

21 *Id.* at 128:14–22 (emphasis added).

22           Mr. Wagner went on to testify that

23                                                      *See id*. at 134:6–138:3.  When asked

24 

25 

26           *Id.* at 138:10–139:8; 141:23–142:7.  Waymo has also not disclosed any damages

27 theories or evidence against Otto Trucking in its Rule 26 disclosures.  *See* Chatterjee Decl. Ex. 4

28 (Waymo's Corrected Supplemental Initial Disclosures), at 19–20; *see also* Dkt. No. 924 at 4–5.

**D.     Otto Trucking's Defenses are Different from Uber's Defenses.**

Otto Trucking has presented defenses in this case that are unique to it.  As demonstrated in Otto Trucking's opposition to Waymo's motion for partial summary judgment, Otto Trucking has advanced an unclean hands defense based on Waymo's litigation misconduct.  Dkt. No. 1525 at 11–15.  Uber did not allege this defense (*see id.*) and has not joined in Otto Trucking's proposed jury instruction for this defense (*see* Dkt. No. 1735 at 72).

Otto Trucking and Uber assert different defenses of failure to mitigate damages that hinge on different facts and triggering dates.  Waymo contends that the triggering date for its claim should be the date when it inadvertently received the email from Gorilla Circuits, its vendor, showing that Uber had placed an order that Waymo contends is similar to its own intellectual property.  *See* Chatterjee Decl. Ex. 2 (September 20, 2017 Hearing Transcript), at 43:18–24.  However, this allegation has nothing to do with Otto Trucking, because Otto Trucking is not involved in the development of LiDAR and does not work with the vendor who had sent the email.  Waymo knew the facts relating to Otto Trucking by October 2016—that Mr. Levandowski had allegedly accessed the SVN server and downloaded the entire repository and that he had allegedly reformatted his computer several days later—acts deemed unusual by Waymo.  These are the same facts that Waymo alleged to be the basis of its trade secret claim.  The question as to Otto Trucking, then, is whether it was reasonable for Waymo to wait until it had a basis to bring a claim against Uber when Waymo had the allegations it relied on for the complaint and preliminary injunction in its possession six months earlier.

**E.     Otto Trucking's Witnesses Differ from Uber's Witnesses.**

Otto Trucking's witnesses for trial and the issues on which they would testify are different than Uber's witnesses and issues.  Otto Trucking has several unique witnesses who will testify about how Otto Trucking merely holds a company that owns trucks, is not involved in the development of LiDAR, and is a separate company from Uber and Ottomotto.  These witnesses include Adam Bentley and Brent Schwarz, who are not on Uber's witness list.  *See* Dkt. No. 1725 at App. C and D.  Even the witnesses who are Waymo employees identified as witnesses for trial are different for Otto Trucking, as Otto Trucking has identified Dan McCloskey, Drew Ulrich,

1   Zachary Morris, Sam Lenius, and Luke Wachter on its list—individuals who do not appear on

2   Uber's list.  *Id.* at App. B and D.  Mr. Bentley is just a possible witness for Waymo, and Dan

3   McCloskey, Drew Ulrich, Zachary Morris, Sam Lenius, and Luke Wachter do not appear at all on

4   Waymo's list.  *See id.*

5          **F.**      **Discovery Applicable to Waymo and Uber is Irrelevant for Otto Trucking, Who Has Completed Its Discovery Production.**

6

7         None of Waymo's recently raised discovery concerns are relevant to Otto Trucking.  *See*

8   Dkt. No. 1651 (Otto Trucking's opposition to Waymo's Motion for Continuance of Trial).

9   Regardless of any information it may glean from the Stroz investigation, Waymo has failed to set

10  forth any evidence that any of its alleged 121 trade secrets were ever used, disclosed, or acquired

11  by Otto Trucking.  Otto Trucking does not and has never used the Uber LiDAR systems that

12  allegedly misappropriated Waymo's purported trade secrets.  Indeed, Otto Trucking is not

13  involved in the development of LiDAR and has only used off-the-shelf LiDAR systems developed

14  by a third party.  Dkt. No. 1423 at 16–19.  Moreover, the fact that Stroz sequestered information

15  and made it inaccessible after collecting it only strengthens Otto Trucking's position.

16        Further, Otto Trucking was not a party to the Stroz investigation, so the production of the

17  Stroz materials have little effect on the case as to Otto Trucking.  Dkt. No. 670 at 6–7; Dkt. No.

18  745.  This may explain why as of September 25, 2017, Otto Trucking has completed discovery,

19  whereas Waymo continues to pursue discovery against Uber and Ottomotto.  *See* Chatterjee Decl.

20  ¶ 2.  Earlier in this litigation, Waymo successfully argued that Otto Trucking was not a party to the

21  Stroz investigation and did not have standing to seek protection from its disclosure in discovery.

22  Dkt. No. 670 at 6–7; Dkt. No. 745.  As a result, Waymo is now judicially estopped from arguing

23  that Otto Trucking is somehow tainted by what Stroz did or did not do.  *Rissetto v. Plumbers &*

24  *Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996) ("Judicial estoppel, sometimes also

25  known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an

26  advantage by taking one position, and then seeking a second advantage by taking an incompatible

27  position.").

28

6

DEFENDANT OTTO TRUCKING LLC'S NOTICE OF MOTION
AND MOTION FOR A SEPARATE TRIAL      CASE NO. 3:17-CV-00939-WHA

### III.   THE COURT SHOULD ORDER A SEPARATE TRIAL AS TO CLAIMS AGAINST OTTO TRUCKING

A district court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims for convenience, to avoid prejudice, or to expedite and economize.  Fed. R. Civ. P. 42(b).  However, "[c]onvenience, *avoidance of prejudice*, and what will be *conducive to expedition and economy* are all in the *alternative*.  Thus, they need not all be present for separation or severance, but the presence of any one of them is sufficient to sustain an order for a separate trial in the exercise of an informed discretion." *In re Paris Air Crash of Mar. 3, 1974*, 69 F.R.D. 310, 319 (C.D. Cal. 1975) (emphasis in original).  When ruling on a Rule 42(b) motion, courts also factor complexity of issues, factual proof, risk of jury confusion, difference between the separated issues, and the chance that separation will lead to increased economy such as by the possibility that the first trial may dispose of the case.  *Tessera, Inc. v. Advanced Micro Devices, Inc.*, No. C 05-04063-CW, 2013 WL 6073889, at *2 (N.D. Cal. Nov. 13, 2013).  Many of these factors weigh in favor of a separate trial as to the claims against Otto Trucking.

#### A.   Separate Trials Would Conserve the Parties' and the Court's Resources.

*First*, a separate trial would economize the parties' time and resources, since it would "spare [Otto Trucking] . . . from participating in the trial of issues that do not relate to [it]. *Bassett v. City of Burbank*, No. 14CV01348SVWCWX, 2014 WL 12573410, at *5 (C.D. Cal. Nov. 5, 2014).  As discussed above, any overlap in Otto Trucking and Uber's issues, witnesses, and damages is minimal at best.  Otto Trucking does not and has never used the Uber LiDAR systems that allegedly misappropriated Waymo's purported trade secrets.  Thus, unlike Uber, Waymo has no theory of use as to Otto Trucking.  Similarly, Otto Trucking was not a party to the Stroz investigation, so the issues surrounding the report have no effect on Otto Trucking.

Having the claims against Otto Trucking proceed in a separate trial will eliminate the need to present to the jury evidence that is irrelevant for Otto Trucking, and conversely, evidence that is irrelevant to Uber and Ottomotto.  Separate trials will reduce the number of days required for a jury trial, and will reduce the parties' costs and attorneys' fees.  Such considerations weigh in

7

1   favor of Otto Trucking proceeding in a separate trial.  *See Arredondo v. Delano Farms Co.*, No.

2   CV F 09-01247-LJO, 2012 WL 2358594, at *11–12 (E.D. Cal. June 20, 2012) (finding reduction

3   of testimony in front of jury; reduction of trial time "since there would be half the number of

4   defense attorneys examining witnesses"; reduction of trial time since there would be "two parties,

5   rather than three, presenting evidence and argument"; and avoiding unnecessary subjection of

6   "further voluminous and resource-intensive discovery and proceedings on the merits" weighed in

7   favor of bifurcating trial).

8          *Second*, because Waymo has advanced no money damages theory as to Otto Trucking,

9   Waymo's claims against Otto Trucking should be tried to the Court, not to a jury.  A jury trial is

10  not appropriate where "[n]o legal issues remain[] to be tried . . ."  *Anti-Monopoly, Inc. v. General*

11  *Mills Fun Group*, 611 F.2d 296, 308 (9th Cir. 1979).  Waymo's only remaining claims are for an

12  injunction, which should be tried to the bench.  A jury need not be burdened at all with Waymo's

13  claims against Otto Trucking.

14         *Third*, judicial economy would be promoted by a separate trial because determination of

15  whether Waymo's technology is indeed a trade secret and whether Uber is liable for

16  misappropriation of these alleged trade secrets could prove wholly dispositive, obviating a need

17  for a trial of Waymo's claims against Otto Trucking.  The parties dispute whether Waymo's

18  technology constitutes trade secrets at all.  Because no party can be liable for misappropriation if

19  Waymo's technology is not a trade secret, judicial economy would be best served by reaching this

20  threshold issue first.  *See, e.g.*, *Fahmy v. Jay Z*, No. 207CV05715CASPJWX, 2015 WL 5680299,

21  at *24 (C.D. Cal. Sept. 24, 2015) (finding judicial economy would be best served by bifurcating

22  trial and first determining whether there was copyright infringement, and then assessing damages

23  if infringement was found).  Conversely, if the Court finds that Waymo's theory that Otto

24  Trucking improperly acquired Waymo's alleged trade secrets is not viable, there is no need to

25  present such evidence to a jury.  Here, Waymo's only remaining theory is that Mr. Levandowski

26  acquired Waymo's trade secrets some time in February or March 2016 while acting on Otto

27  Trucking's behalf.  If the Court finds that this theory is not viable, those issues will be resolved.

28  Thus, the Court should order that Waymo's claims against Otto Trucking proceed in a separate

1   trial to "avoid[] a difficult question by first dealing with an easier, dispositive issue." *Danjaq LLC*

2   *v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001) (citation omitted).  In the alternative, Otto

3   Trucking requests that the Court hold an evidentiary hearing regarding the nature of Otto

4   Trucking's business, and whether Waymo's acquisition theory is viable.

5           **B.      Separate Trials Would Reduce Risk of Confusion to the Jury and Prejudice to**
                **Otto Trucking.**

6

7           A separate trial for Otto Trucking would reduce the risk of jury confusion.  This case

8   involves facts and timelines that are distinct between Otto Trucking and Uber.  In turn, not only

9   will Waymo need to present differing evidence for both Uber and Otto Trucking, but Otto

10  Trucking and Uber will have to put on distinct evidence in their defense as well.  The similarity of

11  Otto Trucking and Ottomotto's names alone could create jury confusion.  When added to

12  complex technical and trade secret issues, a litany of witnesses, and evidence that varies in

13  relevance and applicability, it becomes readily apparent that a juror would have difficulty keeping

14  the parties and facts in this case straight.  Where, as here, a case turns on distinct facts, differing

15  witnesses, and individualized questions, a separate trial is appropriate.  *See, e.g.*, *Bates v. United*

16  *Parcel Serv.*, 204 F.R.D. 440, 449 (N.D. Cal. 2001) (finding bifurcation of trial would be

17  "practical, convenient, and efficient" where damages involved "individualized questions" that

18  would require the plaintiffs to present "different types of evidence").

19          Related to the risk of jury confusion is the prejudice that may result for Otto Trucking if all

20  of Waymo's claims proceed in a single trial.  Even if the jury is given a limiting instruction as to

21  the admissibility of evidence for Otto Trucking versus Uber, the introduction of the evidence in

22  the first instance may cause unfair prejudice to Otto Trucking due to jury confusion that could be

23  avoided by a separate trial.  *See SEC v. Prevett*, No. C-01-21069-JW, 2003 WL 25686538, at *2

24  (N.D. Cal. Mar. 17, 2003) (finding that separate trials would be necessary to avoid undue

25  prejudice where not all of the evidence and testimony that would be admissible as to the one co-

26  defendant would also be admissible against the two remaining defendants).  In addition, no

27  prejudice would result to Waymo in ordering a separate trial, as Waymo has already admitted that

28  it does not have a theory of damages against Otto Trucking.  Any concerns over delay would be

1  because Otto Trucking requests that the claims proceed separately but on the current case

2  schedule.

3       The Court should therefore exercise its discretion and grant a separate bench trial for Otto

4  Trucking.  *See Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 998 (9th Cir.), *opinion*

5  *amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001) ("Under Rule 42(b), the district court

6  has broad discretion to bifurcate a trial to permit deferral of costly and possibly unnecessary

7  proceedings pending resolution of potentially dispositive preliminary issues.").

8  **IV.    CONCLUSION**

9       For the foregoing reasons, Otto Trucking requests that the Court order a separate trial as to

10  Waymo's claims against Otto Trucking on the current case schedule.  In the alternative, Otto

11  Trucking respectfully requests that the Court conduct an evidentiary hearing regarding Otto

12  Trucking's business and the viability of Waymo's acquisition theory of trade secret

13  misappropriation.

14  Dated:   September 26, 2017                    Respectfully submitted,

15

16                                    By:    /s/   Neel Chatterjee
                                         Neel Chatterjee
                                         *nchatterjee@goodwinlaw.com*
17                                       Brett Schuman
                                         *bschuman@goodwinlaw.com*
18                                       Shane Brun
                                         *sbrun@goodwinlaw.com*
19                                       Rachel M. Walsh
                                         *rwalsh@goodwinlaw.com*
20                                       Hong-An Vu
                                         *hvu@goodwinlaw.com*
21                                       Hayes P. Hyde
                                         *hhyde@goodwinlaw.com*
22                                       James Lin
                                         *jlin@goodwinlaw.com*
23                                       **GOODWIN PROCTER** LLP

24                                    *Attorneys for Defendant: Otto Trucking LLC*

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that I electronically filed the foregoing  document including all of its

3   attachments with the Clerk of the Court for the United States District Court for the Northern

4   District of California by using the CM/ECF system on **September 26, 2017**.  I further certify

5   that all participants in the case are registered CM/ECF users and that service of the publicly filed

6   documents will be accomplished by the CM/ECF system.

7          I certify under penalty of perjury that the foregoing is true and correct.  Executed on

8   **September 26, 2017**.

9                                         /s/   Neel Chatterjee

10                                              NEEL CHATTERJEE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE                                                    CASE NO. 3:17-CV-00939-WHA