# *EXHIBIT 4*

*EXHIBIT 4*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYMO LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>        Defendants. | Case No. 17-cv-00939-WHA (JSC)<br><br>**ORDER GRANTING MOTION TO COMPEL STROZ DOCUMENTS AND DENYING MOTIONS TO QUASH**<br><br>Re: Dkt. Nos. 570, 580, 581, 583, 610, 614, 616, 617, 628, 652 |

        Now pending before the Court is Waymo's motion to compel compliance with its Rule 45 subpoena to Stroz Friedberg. Stroz is a third-party forensic expert retained by Uber and Ottmotto ("Otto") in early March 2016 to conduct due diligence into certain Otto employees in connection with Uber's potential acquisition of Otto. On June 5, 2017, the Court ordered Uber to produce to Waymo the "Due Diligence Report" prepared by Stroz. (Dkt. Nos. 549, 566.) While Waymo's motion to compel the Stroz Report was pending, Waymo served an expedited subpoena on Stroz. Stroz has refused to comply on the grounds that the documents sought are protected by the attorney-client and/or attorney work-product privilege of Anthony Levandowski, Otto Trucking, and Uber. Levandowski, Otto Trucking, and Uber have in turn moved to quash the Stroz subpoena. Much of the parties' arguments are addressed in the Court's Order granting Waymo's motion to compel the Stroz Report. (Dkt. No. 566.) Nonetheless, for the sake of completeness, the Court briefly addresses some of the arguments here.

    **A.**     **Levandowski's Objections**

        Levandowski resists production of (1) any material he may have provided to Stroz; (2) any statements or records of statements he made to Stroz, and (3) any records that reference materials

1 he may have provided to Stroz. (Dkt. No. 582-4.) As a preliminary matter, the Court grants Levandowski permission to intervene for the limited purpose of objecting to the Stroz subpoena.

Levandowski contends that the attorney-client privilege protects documents and other information he personally produced to Stroz. "[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege." *In re Pacific Pictures Corp.,* 679 F.3d 1121, 1126-27 (9th Cir. 2012). The reason for this rule is "[i]f clients themselves divulge such information to third parties, chances are that they would also have divulged it to their attorneys, even without the protection of the [attorney-client] privilege." *Id.* at 1127 (internal quotation marks and citation omitted). Under these circumstances there is no reason to "recognize the privilege in order to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Id.* at 1126 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The Court previously found that Stroz was the agent of Otto and Uber, not Levandowski, and therefore Levandowski had voluntarily disclosed the information to an unrelated third party. (Dkt. No. 566 at 7-8.) Levandowski does not challenge this finding; instead, he argues that at the time of his communications with Stroz, he, Ron, Uber and Otto were part of a "joint defense group" and therefore his communications with Stroz—Uber's agent—are protected by the same attorney-client privilege that would protect Uber's communications with Stroz. (Dkt. No. 583 at 4.) Once again this argument fails.

As the Court previously held, the "common interest privilege" is a non-waiver doctrine, it does not create a privilege where none would otherwise exist. (Dkt. No. 566 at 11-13.)[1] Levandowski nonetheless cites *United States v. Schwimmer*, 892 F.2d 237, 241 (2d Cir. 1989), for the proposition that Levandowski could personally communicate with a third party's agent and

---

[1] The Court did not previously hold, as Levandowski asserts, that the common interest privilege only protects from waiver communications made first by a party to his or her own attorney. (Dkt. No. 582-4 at 4.) Rather, the Court explained why Levandowski had not met his burden to prove his communications are protected by the attorney-client privilege. One reason was that Levandowski had only cited cases in which the communication was protected by the privilege before it was shared with another party.

2

have those communications protected by the attorney-client privilege. *Schwimmer*, however, says no such thing. *Schwimmer* held that the defendant's communications to an accountant hired by an attorney *on behalf of Schwimmer* and the attorney's client were privileged; that is, that the joint nature of the retention of the accountant led to a non-waiver of the privilege. *Id.* at 243. Here, in contrast, the Court finds that there was no joint retention: Uber's attorneys did not hire Stroz on behalf of Levandowski and Uber; they hired Stroz to investigate Levandowski. Indeed, even as of the signing of the Put Call Agreement, counsel for Uber and Otto directed Stroz to modify its investigation protocol to clarify that they—and not Levandowski's attorney—were directing the Stroz investigation. (Dkt. No. 566 at 8.)

*United States v. McPartline*, 595 F.2d 1321 (7th Cir. 1979), is similarly inapposite. There the court held that a criminal defendant's statements made in confidence to a co-defendant's investigator were made for a common purpose related to the defense of both defendants. In particular, the statements were made in connection with attempting to discredit a witness, a project in which the co-defendants and their attorneys were jointly engaged for the benefit of both defendants. *Id.* at 1335-36. Here, in contrast, the Court finds that Levandowski's statements to Stroz and his provision of his devices to Stroz were not made in furtherance of a joint defense with Uber, Otto and Ron. To the contrary, based on the Term Sheet, the timing of his interview and the device production, Levandowski's side agreements with Stroz, as well as the timing of the Stroz interim report to Uber, the Court finds that Levandowski made the statements and provided the material to enable Uber to determine whether to acquire Otto and, if so, create a record to determine indemnification rights. (Dkt. No. 566 at 14-20.)

Levandowski nonetheless insists that he must have shared a common legal interest with Uber in March 2016 because that he entered into a joint defense agreement with Uber, Otto and Ron by March 11, 2016. This factual assertion is unsupported by the record. First, Levandowski misstates the record by arguing that once the Term Sheet was signed, Uber had an obligation to indemnify Levandowski from any misappropriation claims brought by Waymo. (Dkt. No. 583 at 5.) As the Court found, and Levandowski ignores, the Term Sheet explicitly stated that it did not create any binding obligations on Otto and Uber with few limited exceptions. The indemnification

3

is not one of those exceptions. Instead, the Term Sheet provides that the indemnification obligation arises only upon the execution of the Put Call Agreement, which did not occur until April 11, 2016—long after Levandowski gave Stroz his interview and devices. (Dkt. No. 566 at 2-3.) Indeed, Uber does not dispute that no indemnification obligation arose as a result of the Term Sheet signing.

Second, Levandowski's emphasis on his attorney's representation to Stroz on March 14, 2016 and March 21, 2016 that he shared a common legal interest with Otto confirms the Court's finding of a lack of a joint defense agreement among Uber, Otto and Levandowski. At that time Levandowski and Otto shared an interest in having Uber acquire Otto for millions of dollars and they shared a common interest in at least having Uber sign the Put Call Agreement so that Uber would be obligated to indemnify Levandowski and Otto in the event Waymo sued them. What they did not share was any common legal interest with Uber, the party on the other side of the proposed transaction. It is thus unsurprising that Levandowski's attorney did not state that his client shared a legal interest with Uber (Dkt. No. 566 at 18-19), an omission which Levandowski still does not explain.

Third, the Stroz engagement letter does not support Levandowski's assertion of a March 2016 joint defense agreement. As the Court found, and Levandowski does not dispute, that letter was actually executed at the time of the signing of the Put Call Agreement in April 2016. At that point, given the Put Call Agreement's indemnification obligation, and the possibility that Uber would itself be sued by Waymo if certain conditions were met and the acquisition completed, Uber, Levandowski and Otto arguably shared a legal interest with regard to a factual investigation of Levandowski's misappropriation of Waymo's trade secrets, among other matters. The engagement letter is not probative of an earlier common interest, especially since it is contradicted by Levandowski's attorney's contemporaneous letters to Stroz. (Dkt. No. 566 at 18-19.)

Fourth, Levandowski can still point to no contemporaneous evidence that he had a joint defense agreement with Uber in March 2016. The contemporaneous evidence in the record, most significantly the Term Sheet and Levandowski's attorney's March 2016 letters to Stroz, supports the Court's finding that Levandowski did not have a joint defense agreement at that time.

4

1   Fifth, Levandowski's reliance on the attorney declarations is unpersuasive for the reasons
2   stated in the Court's prior Order. (Dkt. No. 566 at 20.)  In particular, Mr. Levandowski's counsel's
3   assertion that Levandowski cooperated with Stroz to evaluate legal risks is contradicted by
4   counsel's own letters to Stroz which do not reference any such purpose. Further, Levandowski has
5   never explained why he would need to meet alone with Stroz—an agent for Uber—in order to
6   obtain legal advice from his attorney on litigation risk.  He would not.  He needed to give an
7   interview to Stroz, unencumbered by legal counsel, because Uber insisted on such a process as
8   part of its pre-signing due diligence and to create a record that would govern indemnification
9   rights should the parties execute the Put Call Agreement.

10   In sum, Levandowski has not met his burden of showing that his statements to Stroz or his
11   production of documents or devices to Stroz are protected by an attorney-client privilege.  It
12   follows, then, that an order compelling Stroz to produce these materials does not violate
13   Levandowski's Fifth Amendment privilege against compelled self-incrimination.  *See Johnson v.*
14   *United States*, 228 U.S. 457, 458 (1913) ("A party is privileged from producing the evidence, but
15   not from its production.").

16   Levandowski's belated reliance on *Couch v. United States*, 409 U.S. 322 (1973) is
17   unhelpful.  There the Supreme Court held that a subpoena that demands production of records
18   from a third party does not violate an individual's Fifth Amendment privilege.  *Id.* at 328-29, 333-
19   34.  While the Court did note that "situations may well arise where constructive possession is so
20   clear . . . as to leave the personal compulsions upon the accused substantially intact," *id.* at 333,
21   Levandowski cites no case where such circumstances have actually been found.  The Court
22   declines to find them where, as here, the party claiming the Fifth Amendment privilege provided
23   the statements and documents to an unrelated party on the other side of a proposed acquisition to
24   enable the unrelated party to decide whether to agree to the acquisition and to create an evidentiary
25   record to govern indemnification rights if a certain agreement is executed.  *See In re Grand Jury*
26   *Subpoena (Maltby)*, 800 F.2d 981, 984 (9th Cir. 1986) (finding that the *Couch* exception did not
27   apply where the accused did not maintain control of the documents while merely storing them on
28   the premises of a third party or where the documents are not found in the accused's former

5

personal office).

\* \* \*

The expansion of the attorney-client privilege Levandowski seeks here would violate the rule that the privilege should be construed "narrowly to serve its purposes." *In re Pacific Pictures Corp.*, 679 F.3d at 1126. As the Term Sheet demonstrates, Levandowski disclosed his devices and gave the Stroz interview to enable Uber to decide whether it wanted to pay Otto and Levandowski millions of dollars. The Stroz investigation also created an evidentiary record that would determine whether Uber is required to indemnify Levandowski should Uber, following its pre-signing due diligence, decide to sign the Put Call Agreement. This indemnification right is likewise worth millions of dollars. To hold that Levandowski did not waive the attorney-client privilege when it provided this information to Uber "does little, if anything, to serve the public good underpinning the attorney-client privilege." *Id.* at 1127. Extending non-waiver to these circumstances "does not serve the purpose of encouraging full disclosure to one's attorney in order to obtain informed legal assistance; it merely encourages voluntary disclosure" to parties on the other side of a proposed acquisition, "thereby extending the privilege beyond its intended purpose." *Id.* Levandowski's motion to quash is denied.

### B. Otto Trucking's Objections

Otto Trucking contends that all of the subpoenaed Stroz information is protected by its attorney-client privilege. Recognizing that disclosure to a third party waives the privilege, it insists that "the parties" orally confirmed a joint defense and common interest agreement on February 25, 2016. (Dkt. No. 580 at 2.) It further insists that "the parties" retained Stroz to conduct the Term Sheet's required due diligence. Otto Trucking has not met its burden of showing that the documents sought by the Stroz subpoena are protected by its attorney-client privilege.

First, Otto Trucking offers no evidence that it retained Stroz or had any involvement in the Stroz investigation. The Term Sheet required the retention of Stroz and Otto Trucking was not a party to the Term Sheet. (Dkt. 488-1 at 1.) The Stroz "as of March 6" engagement letter does not mention Otto Trucking and, in fact, states that Stroz was retained by Otto and Uber. (Dkt. Nos.

1    370-3; 566 at 3.) Stroz's own testimony confirms that its clients were Uber and Otto (Dkt. No.
2    380 ¶ 3), and its Report emphasizes that its investigation was directed by Uber and Otto. (Dkt.
3    No. 566 at 8.) Otto Trucking has no standing to challenge the Stroz subpoena.
4        Second, Otto Trucking has not offered any persuasive evidence to support its bald
5    assertion that Levandowski and Ron participated in the Stroz investigation in their capacity as
6    Otto Trucking executives. It does not even cite the governing law, let alone apply it to the facts.
7    (Dkt. No. 566 at 8.) It does not offer any declarations from Ron or Levandowski. And the
8    attorneys for Ron and Levandowski, who did submit declarations, do not assert that their clients
9    gave documents and interviews to Stroz in their capacity as Otto Trucking executives. (Dkt. Nos.
10   375, 381.)
11       Otto Trucking has not shown that it has any standing to challenge the Stroz subpoena, let
12   alone meet its burden of proving that the Stroz information is protected by its attorney-client
13   privilege. Its motion to quash is denied.
14   **C.    Uber's Objections**
15       Uber objects to Stroz's production of the Stroz Due Diligence Report, its exhibits, and any
16   communications regarding the Report on the basis of the attorney-client and attorney work-
17   product privilege. The Court addressed these objections in its Order granting Waymo's motion to
18   compel production of the Report (Dkt. No. 566), and Uber's objections to that Order are currently
19   pending with the district court.
20       Uber also argues in the alternative that it did not waive any privilege in any post-April 11,
21   2016 communications with Stroz or post-April 11, 2016 Stroz attorney work-product. (Dkt. No.
22   581 at 4.) The parties signed the Put Call Agreement on that date. The only such communications
23   Uber identifies, however, are the final Stroz Report and its exhibits. The Court already addressed
24   their production in its Order compelling production of the Stroz Report. In opposing Waymo's
25   motion to compel production of the Stroz Report, Uber chose not to address the Term Sheet (other
26   than to allude that it existed) and ignored all together the Put Call Agreement. (Dkt. No. 566 at 17
27   n.2.) It is too late for it to now make a new argument that it at least had a common legal interest
28   by the time of the signing of the Put Call Agreement and thus did not waive work product

7

protection in the final Stroz Report. As for any other post-April 11, 2016 communications, they must be on Uber's privilege log and thus the Court will address them in connection with the hearing on Uber's privilege log scheduled for Friday, June 22, 2017. If they are not on Uber's privilege log, Uber has waived any privilege and they must be produced by **Tuesday, June 27, 2017**.

Uber does not object to production of any responsive documents/materials it has not moved to quash, including any documents, data, and other materials provided by Levandowski, Ron, and other diligenced employees to Stroz. (Dkt. No. 616.)

Uber's motion to quash is denied as set forth in this Order.

### D. Stroz's Communications With its Own Attorneys

Stroz objects to production of its own attorney-client communications with its own attorneys. Stroz shall produce a privilege log that complies with the district court's Standing Order on or before **June 27, 2017.**

### E. Stroz's Compliance With the Subpoena

In light of the above, the Court orders Stroz to produce the following to Waymo.

**1. Requests for Production Nos. 1, 2, 3, 4, and 5** (agreements between Stroz and others regarding its due diligence investigation). The Court found that Levandowski did not have any attorney-client relationship with Stroz. Further, any work-product privilege Uber could have claimed in its or another party's agreements with Stroz was waived by sharing those agreements with parties with whom it did not share a common legal interest. (Dkt. No. 566 at 13-22.) Neither Uber nor any other party has identified an agreement responsive to these requests that was not shared with another party. Moreover, Uber and Levandowski have submitted and repeatedly relied upon the Stroz "as of March 4, 2016" engagement letter to resist discovery. By relying on an agreement with Stroz, they have waived any privilege in other agreements with Stroz. *See, e.g.*, *Regents of University of California v. Micro Therapeutics, Inc.*, 2007 WL 2069946 *3-4 (N.D. Cal. July 13, 2007). It is fundamentally unfair to claim the engagement agreement supports a certain fact while at the same time withholding other agreements directly relevant to that fact. Stroz shall produce documents responsive to these requests by **Tuesday, June 27, 2017**.

8

**2.** **Requests for Production Nos. 6, 7 and 8** (the Stroz Due Diligence Report and any other reports and analyses created by Stroz pursuant to its retention by Uber and Otto). Objections to the Court's Order compelling the Stroz Report's production are currently pending before the district court. Neither Uber nor Levandowski has identified any other analyses or reports and thus neither has met its/his burden of showing that such reports or analyses are privileged from production. Stroz shall produce such analyses by **Tuesday, June 27, 2017** or by that same date advise Waymo that responsive documents (other than the Stroz Report and its exhibits) do not exist.

**3**. **Requests for Production Nos. 9, 12, 30 and 31** (documents, data, and any other materials provided by Levandowski, Ron or any other diligenced employees to Stroz). Uber does not object to Stroz's production of these materials and neither Ron nor any other diligenced employee (other than Levandowski) has objected to their production. Accordingly, Stroz shall produce responsive documents/materials regarding Ron and other diligenced employees **on or before Tuesday, June 27, 2017.** While Levandowski has objected on the grounds of attorney-client privilege, he has not met his burden of showing that the privilege applies for the reasons explained above.

Levandowski complains that *if* Stroz has his devices, the devices may contain personal, private information not relevant to this litigation. As Levandowski has refused to testify in this action, the Court cannot make such a finding. The Court nonetheless recognizes that the issue of Levandowski's attorney-client privilege is pending with the district court. Once that issue is finally resolved, the Court will address whether a protocol is appropriate to protect any privacy interests.

**4.** **Request No. 10** (documents that show the identities of the other diligenced employees). Uber does not object to Stroz's production of these documents. (Dkt. No. 581 at 2 (identifying the requests it is moving to quash).) Accordingly, Stroz shall produce responsive documents by **Tuesday, June 27, 2017.**

**5**. **Request for Production No. 11** (documents and communications regarding the joint defense agreement among Uber, Ottomotto, Levandowski and Ron). In addition to the

9

waiver of any privilege as previously found by the Court, Uber and Levandowski have waived any privilege in these documents by making their purported joint defense/common interest agreement—and its timing—the centerpiece of their opposition to the Stroz subpoena and the motion to compel the Stroz Report. *See, e.g., Regents of University of California v. Micro Therapeutics, Inc.*, 2007 WL 2069946 *3-4 (N.D. Cal. July 13, 2007). Indeed, none of their motions to quash or oppositions to Waymo's motions to compel even substantively address this request. Stroz shall produce these documents by **Tuesday, June 27, 2017.**

**6.    Requests for Production Nos. 13, 14, 15, 18, 19, 28, 29, 30** (documents and communications among Stroz, MoFo, Uber, Ottomotto and Otto Trucking). As the Court previously held that the sharing of communications between Uber and Otto, Otto Trucking, Levandowski and/or Ron waived any attorney-client or work-product privilege (Dkt. No. 566 at 13-22), no privilege protects these requested documents. Uber also argues that any communications with Stroz that were no so shared must remain privileged. Uber, however, fails to identify any such communications either by identifying an entry on its privilege log or otherwise. This omission is unsurprising given that the "as of March 6" Stroz engagement letter requires Stroz to send all of its communications to all of its clients (defined as Uber and Otto) together. (Dkt. No. 370-3 at 3.) As the issue of Uber's waiver of any privilege is pending before the district court, this Order will not give a deadline for Stroz's compliance with these requests.

**7**.    **Request for Production Nos. 16, 17, 20, and 21** (communications between Stroz and Levandowski or Ron or their respective attorneys). Ron has not moved to quash any of the Stroz documents and, in any event, for the same reasons Stroz was not Levandowski's agent he also was not Ron's agent and not conducting the investigation in order to assist Ron's attorney in providing Ron with legal advice. Levandowski has similarly not met his burden of showing that these documents are protected by an attorney-client privilege. As the Court previously held, any attorney work-product privilege held by Uber has been waived by sharing the communications with at least Levandowski and Ron, parties with whom it did not share a common legal interest and who were, in fact, its adversaries, at least prior to April 11, 2016. As Uber has not identified any communications post-April 11, 2016 between Stroz and Levandowski or Ron (or their

10

attorneys), it has not met its burden of showing that such communications are privileged from production. Stroz shall produce these documents by **Tuesday, June 27, 2017.**

### F. Compliance Costs

Finally, Stroz complains that if required to respond it will incur significant expenses. It offers no evidence, however, to quantify those expenses. It also does not explain whether it has sought reimbursement from Uber given that Stroz conducted the investigation as Uber's agent. Accordingly, the Court declines to order Waymo to pay Stroz's unidentified costs of compliance.

### CONCLUSION

As set forth in this Order, Waymo's motion to compel is GRANTED and the motions to quash are DENIED. Any objections to this Order must be filed with the district court by Friday, June 23, 2017.

This Order disposes of Docket Nos. 570, 580, 581, 583, 610, 614, 616, 617, 628 and 652.

**IT IS SO ORDERED.**

Dated: June 21, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge