# EXHIBIT 1

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

---oOo---

WAYMO LLC,

    Plaintiff,

vs.                         No. 3:17-cv-00939-WHA

UBER TECHNOLOGIES, INC.;

OTTOMOTTO LLC; OTTO TRUCKING, INC.,

    Defendants.

_____/

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF KEVIN FAULKNER

VOLUME II

SAN FRANCISCO, CALIFORNIA

THURSDAY, SEPTEMBER 28, 2017

REPORTED BY:

ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~

CSR LICENSE NO. 9830

JOB NO. 2714984

PAGES 36 - 235

Page 51

| | | |
|---|---|---|
| 1 | your investigation at a high level. | 09:25 |
| 2 | How would you -- how would you describe the | 09:25 |
| 3 | scope of what you were asked to do? | 09:25 |
| 4 | A   The initial scope was to find where | 09:26 |
| 5 | information taken by Anthony Levandowski -- where it | 09:26 |
| 6 | ended up on Uber's systems. | 09:26 |
| 7 | We started with the assumption that he did, | 09:26 |
| 8 | in fact, take things that were alleged, you know, by | 09:26 |
| 9 | Waymo in this case.  We assumed that that information | 09:26 |
| 10 | would have made it onto some of Uber's systems and | 09:26 |
| 11 | would have been used. | 09:26 |
| 12 | And we began the search to identify, you | 09:26 |
| 13 | know, where that data exists, expecting to find a kind | 09:26 |
| 14 | of first hit, first place that we identify it, and | 09:26 |
| 15 | then spiderweb out from there to find from there, | 09:26 |
| 16 | where did it go?  Who else accessed it?  What did they | 09:26 |
| 17 | do with it?  Where did this information go?  Each step | 09:26 |
| 18 | of the way. | 09:26 |
| 19 | And then, you know, ultimately, in our | 09:26 |
| 20 | search, we did not find the data at Uber. | 09:26 |
| 21 | Q   You just said that the initial scope was to | 09:26 |
| 22 | find where information taken by Anthony Levandowski -- | 09:27 |
| 23 | where it ended up on Uber's systems. | 09:27 |
| 24 | What do you mean exactly, precisely by | 09:27 |
| 25 | "information taken by Anthony Levandowski"? | 09:27 |

1 A Yes. 09:36

2 Q So Anthony Levandowski provided some of the 09:36
3 keywords that were used to search Uber for Waymo's 09:36
4 confidential information; correct? 09:36
5   MS. RAY:  Objection; form. 09:36
6   THE WITNESS:  Yes, he provided some of the 09:36
7 keywords. 09:36
8   MR. NARDINELLI:  Okay. 09:36
9 Q So, high level, I want to talk about how 09:36
10 Stroz went about searching.  And the way I'd like to 09:36
11 organize this is to go source by source of the 09:36
12 materials that Stroz searched. 09:36
13 A Okay. 09:36
14 Q We can start with categories.  So how about I 09:36
15 have you make the list instead of me. 09:36
16   Can you tell me, on a category-by-category 09:36
17 level, all of the sources that Stroz searched to 09:36
18 locate confidential information at Uber? 09:36
19 A Sure.  I believe they're all documented in my 09:36
20 report, but we can certainly talk through it.  Let's 09:37
21 see where to start. 09:37
22   I guess, at a high level, categories of 09:37
23 information would be PCs, personal computers, 09:37
24 including laptops and desktops.  Mobile devices, such 09:37
25 as phones and tablets.  Central servers, which take on 09:37

| | | |
|---|---|---|
| 1 | a variety of different forms, which I'd be happy to | 09:37 |
| 2 | talk through.  Cloud-based storage, such as Google | 09:37 |
| 3 | Drive and Google e-mail, which are systems used by | 09:37 |
| 4 | Uber.  And also log information from a number of | 09:37 |
| 5 | different sources. | 09:37 |
| 6 |     Q   Anything else? | 09:38 |
| 7 |     A   I think, at a high level, that's it. | 09:38 |
| 8 |     Q   So I've got, at a high level, that Stroz | 09:38 |
| 9 | searched Google Drive; correct? | 09:38 |
| 10 |     A   Yes. | 09:38 |
| 11 |     Q   Searched employees' e-mails; right? | 09:38 |
| 12 |     A   Yes. | 09:38 |
| 13 |     Q   Central servers? | 09:38 |
| 14 |     A   Yes. | 09:38 |
| 15 |     Q   Mobile devices belonging to employees? | 09:38 |
| 16 |     A   Yes. | 09:38 |
| 17 |     Q   Were those personal devices or Uber-issued | 09:38 |
| 18 | mobile devices? | 09:38 |
| 19 |     A   I believe they were all personal. | 09:38 |
| 20 |     Q   And also personal computers, including | 09:38 |
| 21 | desktops and laptops? | 09:38 |
| 22 |     A   Yes, mainly -- just -- just to clarify the | 09:38 |
| 23 | word "personal" in that context, meaning computers | 09:38 |
| 24 | owned and operated by Uber, provided to their | 09:38 |
| 25 | employees.  I believe there were some limited personal | 09:38 |

Page 98

| | | |
|---|---|---|
| 1 | Q   And you list those 60 employees on page 9? | 10:37 |
| 2 | A   Correct. | 10:37 |
| 3 | Q   Are you aware of an accounting log that Uber | 10:37 |
| 4 | has compiled in this litigation in response to a court | 10:37 |
| 5 | order that lists every person at Uber that has spoken | 10:37 |
| 6 | with Anthony Levandowski about LiDAR? | 10:37 |
| 7 | MS. RAY:  Objection; form. | 10:37 |
| 8 | THE WITNESS:  I'm not sure.  I'm aware of a | 10:37 |
| 9 | log that Uber and their counsel put together that | 10:37 |
| 10 | lists -- I thought it was just all discussions on | 10:37 |
| 11 | LiDAR, the difference being -- I think you said | 10:37 |
| 12 | discussions with Levandowski.  I thought it was | 10:37 |
| 13 | broader than that. | 10:37 |
| 14 | But I've -- I've seen it.  I wasn't involved | 10:37 |
| 15 | in creating it.  I don't know exactly what it contains | 10:38 |
| 16 | or if we're even talking about the same document. | 10:38 |
| 17 | MR. NARDINELLI:  Q.  This log that you're | 10:38 |
| 18 | referring to, did you review that log to see if there | 10:38 |
| 19 | were any names on that log that were not captured by | 10:38 |
| 20 | the 60 that you've listed here at page 9? | 10:38 |
| 21 | A   I think we -- we did review that log.  There | 10:38 |
| 22 | were some names not captured.  But again, a lot of | 10:38 |
| 23 | those were, you know, things like the folks involved | 10:38 |
| 24 | with the deal, you know, the kind of mergers and | 10:38 |
| 25 | acquisitions team that had acquired Otto, but were not | 10:38 |

1   A   It's my understanding that he is more of a   10:40
2   management level, you know, former engineer; that he's   10:40
3   not involved in the actual designs or using the   10:40
4   designs, but rather just heads up a team of people who   10:40
5   do.   10:40
6   Q   You actually have Eric Meyhofer on your   10:40
7   name -- on your list of LiDAR-related custodians.  I   10:40
8   messed up my outline.  I thought that he wasn't on   10:40
9   there.  We can forget about Mr. Meyhofer.   10:40
10   A   I see him.   10:40
11   Q   See him at No. 3?   10:40
12   A   I see him.  I do.   10:40
13        And again, either way, the other names that   10:40
14   you -- you listed, you know, we didn't consider as,   10:40
15   you know, part of this 60 LiDAR custodians, but we   10:40
16   still performed the same searching on any data that we   10:40
17   had from them anyway.   10:40
18   Q   "Same searching" meaning searched for file   10:40
19   names, hash values, and keywords; correct?   10:40
20   A   Correct, and the fuzzy hashing as well.   10:41
21   Q   And the fuzzy hashing.   10:41
22        And when you say "collected," are they listed   10:41
23   in Exhibit 2?   10:41
24   A   They are not.  Since they were just collected   10:41
25   for discovery purposes, you know, they weren't --   10:41

1	A	Correct. All of those are OCRed by us. In	13:10
2	addition, Google Drive itself does OCR. And anything	13:10
3	that would be OCRed there -- well, I guess we would	13:11
4	have OCRed it again when we got it. But it would	13:11
5	already have text for searching within Google Drive	13:11
6	itself.	13:11
7	Q	If you upload a photograph to Google Drive,	13:11
8	Google Drive automatically performs OCR on that	13:11
9	photograph?	13:11
10	A	That's my understanding, yeah.	13:11
11	Q	I didn't know that. I -- I've seen it do	13:11
12	that with PDFs and certainly for documents, although I	13:11
13	don't know if I have firsthand experience. I didn't	13:11
14	know that it did that for photos.	13:11
15		Are you sure that it does?	13:11
16	A	I'm reasonably sure.	13:11
17	Q	Once the 66 million files are placed into the	13:11
18	processing tool, you then describe a series of steps	13:11
19	that your team undertook to search those files;	13:11
20	correct?	13:11
21	A	Yes.	13:11
22	Q	Now, I see four types of searches listed at	13:11
23	the top of page 19.	13:12
24		Do you see those?	13:12
25	A	I do.	13:12

Page 177

| | | |
|---|---|---|
| 1 | Q   And the four searches are file name match, | 13:12 |
| 2 | hash match, keyword, and fuzzy hash; is that correct? | 13:12 |
| 3 | A   Yes. | 13:12 |
| 4 | Q   Is this the full description of all four -- | 13:12 |
| 5 | strike that. | 13:12 |
| 6 | Other than these four, did your team do | 13:12 |
| 7 | anything to search the 66 million files? | 13:12 |
| 8 | A   I think all the searching that we did could | 13:12 |
| 9 | be categorized as one of these four.  I think this is | 13:12 |
| 10 | it. | 13:12 |
| 11 | Q   And just help me understand.  On the file | 13:12 |
| 12 | name match and the hash match, why is this not | 13:12 |
| 13 | duplicative of what you've already done? | 13:12 |
| 14 | So I thought that you'd already put into the | 13:12 |
| 15 | e-discovery tool all of the file name matches and all | 13:12 |
| 16 | of the hash matches. | 13:12 |
| 17 | A   Correct.  This would largely be duplicative. | 13:12 |
| 18 | However, this would pick up on some additional things | 13:12 |
| 19 | and supplement that original set. | 13:12 |
| 20 | Obviously, anything that hit in file name or | 13:13 |
| 21 | hash match before the processing phase would be | 13:13 |
| 22 | produced or made available, however that was worked | 13:13 |
| 23 | out. | 13:13 |
| 24 | But anything that, you know, became | 13:13 |
| 25 | searchable only once it went into processing, we also | 13:13 |

Page 178

| | | |
|---|---|---|
| 1 | wanted to make sure was run through the same | 13:13 |
| 2 | procedures. | 13:13 |
| 3 | So things like, you know, attachments to | 13:13 |
| 4 | e-mails or files inside of zip files, compressed | 13:13 |
| 5 | files, you know, anything that the processing engine | 13:13 |
| 6 | could rip apart and separate out to then make, you | 13:13 |
| 7 | know, more available for searching, we wanted to make | 13:13 |
| 8 | sure that that was included in the efforts and | 13:13 |
| 9 | included in the file name and hash match process. | 13:13 |
| 10 | Q   And I think it's a similar story with the | 13:13 |
| 11 | keywords; correct? | 13:13 |
| 12 | Meaning that documents were originally | 13:13 |
| 13 | harvested because they matched on file name, hash, or | 13:13 |
| 14 | keyword.  But then you additionally ran the same set | 13:14 |
| 15 | of keywords over the documents once they were in the | 13:14 |
| 16 | review database; correct? | 13:14 |
| 17 | A   Yes.  But with keywords specifically, the, | 13:14 |
| 18 | you know, largest set of data we collected were the | 13:14 |
| 19 | PCs.  Those were collected in whole, then harvested | 13:14 |
| 20 | for all user documents without search or restriction | 13:14 |
| 21 | other than by file type.  So the keywords would need | 13:14 |
| 22 | to be applied against those that had not been | 13:14 |
| 23 | previously searched. | 13:14 |
| 24 | The ones that had been previously searched, | 13:14 |
| 25 | yes, that's technically duplicative.  But, you know, | 13:14 |

Page 179

| | | |
|---|---|---|
| 1 | making sure that we kind of treat all the data as | 13:14 |
| 2 | similarly as possible, and that anything with a | 13:14 |
| 3 | keyword hit is considered is best handled by running | 13:14 |
| 4 | it here, even if it is a second time. | 13:14 |
| 5 | Q   So your team harvested user-created files | 13:14 |
| 6 | from the central file servers; correct? | 13:14 |
| 7 | A   Yes, yes.  I think in -- in some cases we | 13:15 |
| 8 | harvested more than that.  If a Uber custodian pointed | 13:15 |
| 9 | to a specific directory and said, "This has useful | 13:15 |
| 10 | stuff in it," I -- I don't know that we would then | 13:15 |
| 11 | filter that down to user-created files.  I think we | 13:15 |
| 12 | would just take the whole directory.  I'm pretty sure | 13:15 |
| 13 | that's what we did. | 13:15 |
| 14 | Q   I appreciate that.  And I'm not trying to | 13:15 |
| 15 | falsely imply a limitation.  I'm just trying to sort | 13:15 |
| 16 | of get our universe of the user-created files here. | 13:15 |
| 17 |     So you imported or processed into the review | 13:15 |
| 18 | database, in addition to other things, the | 13:15 |
| 19 | user-created files that you located on the central | 13:15 |
| 20 | servers; correct? | 13:15 |
| 21 | A   We're not to the review database yet.  This | 13:15 |
| 22 | is separate.  Processing is separate from review.  So | 13:15 |
| 23 | those two things are -- are completely separate | 13:15 |
| 24 | databases. | 13:16 |
| 25 |     So we processed all the user-created files | 13:16 |

Page 184

| | | |
|---|---|---|
| 1 | I think that the -- the point of doing | 13:21 |
| 2 | four different types of searches, though, is to make | 13:21 |
| 3 | sure any potential deficiencies of any one search are | 13:21 |
| 4 | mitigated by another. | 13:21 |
| 5 | So, in your example, I think the most likely | 13:21 |
| 6 | search that would have hit would have been keywords. | 13:21 |
| 7 | But, in your hypothetical, you said keywords didn't | 13:21 |
| 8 | hit.  So then, no, it would not. | 13:21 |
| 9 | But, generally, with the, you know, range of | 13:21 |
| 10 | keywords that we have in this case, you know, it -- | 13:21 |
| 11 | one or more of the different types of searches we did | 13:21 |
| 12 | should hit on materials that came from the 14K-plus | 13:22 |
| 13 | files. | 13:22 |
| 14 | Q   So the hash match that you ran was on the | 13:22 |
| 15 | 14,000 files themselves, the ones that were downloaded | 13:22 |
| 16 | from the SVN; correct? | 13:22 |
| 17 | MS. RAY:  Objection; form. | 13:22 |
| 18 | THE WITNESS:  It's of the original 14K and | 13:22 |
| 19 | then the additional documents disclosed by Waymo.  I | 13:22 |
| 20 | don't know how to name them each. | 13:22 |
| 21 | MR. NARDINELLI:  No, that's fair. | 13:22 |
| 22 | Q   We can -- we can use the term 14,000-plus | 13:22 |
| 23 | files as you did in your report.  So 14,000 -- | 13:22 |
| 24 | A   Okay. | 13:22 |
| 25 | Q   -- plus files includes the 14,000 files that | 13:22 |

| | | |
|---|---|---|
| 1 | But having a ▮▮▮▮▮▮▮▮▮▮ on this | 13:53 |
| 2 | document from Uber does not make this a stolen | 13:53 |
| 3 | document from Waymo. It may or may not contain, you | 13:53 |
| 4 | know, information from Waymo, but it itself is not a, | 13:53 |
| 5 | you know, version of the stolen documents or a stolen | 13:53 |
| 6 | document itself. | 13:53 |
| 7 | So again, we didn't want to have forensic | 13:53 |
| 8 | investigators and contract reviewers having to, you | 13:53 |
| 9 | know, look side by side at designs and look for | 13:53 |
| 10 | differences and similarities. There's a separate | 13:53 |
| 11 | expert to focus on such things. | 13:54 |
| 12 | MR. NARDINELLI: And I appreciate that. | 13:54 |
| 13 | Q   That's what I was getting at is to just make | 13:54 |
| 14 | sure we properly explain what the scope was of your | 13:54 |
| 15 | team's investigation. | 13:54 |
| 16 | Your team's investigation was looking to find | 13:54 |
| 17 | the stolen files themselves? | 13:54 |
| 18 | A   Correct, or, you know, modi- -- modified | 13:54 |
| 19 | versions of those files or, you know, anything related | 13:54 |
| 20 | to that. | 13:54 |
| 21 | If someone worked at Waymo and remembered | 13:54 |
| 22 | that there is a ▮▮▮▮▮▮▮▮▮▮, and came to Uber | 13:54 |
| 23 | and made a ▮▮▮▮▮▮▮▮▮▮, our task was not to | 13:54 |
| 24 | find that. We don't know all the different things | 13:54 |
| 25 | that someone might have learned at Waymo or what they | 13:54 |

Page 235

1                    CERTIFICATE OF REPORTER

2

3            I, ANDREA M. IGNACIO, hereby certify that the

4    witness in the foregoing deposition was by me duly
     sworn to tell the truth, the whole truth, and nothing
5    but the truth in the within-entitled cause;

6            That said deposition was taken in shorthand

7    by me, a disinterested person, at the time and place

8    therein stated, and that the testimony of the said
     witness was thereafter reduced to typewriting, by
9    computer, under my direction and supervision;

10           That before completion of the deposition,
     review of the transcript [ ] was [x] was not
11   requested.  If requested, any changes made by the

12   deponent (and provided to the reporter) during the

13   period allowed are appended hereto.

14           I further certify that I am not of counsel or

15   attorney for either or any of the parties to the said
     deposition, nor in any way interested in the event of
16   this cause, and that I am not related to any of the

17   parties thereto.

18   Dated:  September 29, 2017

19

20

21

22

23                   <%sigature%>

24                ANDREA M. IGNACIO,

25       RPR, CRR, CCRR, CLR, CSR No. 9830