MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel: 415.268.7000 / Fax: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Tel: 202.237.2727 / Fax: 202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@SusmanGodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: 212.336.8330 / Fax: 212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | Case No.   3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED LIST OF ELECTED TRADE SECRETS, SUPPLEMENTAL EXPERT REPORTS, AND REVISED WITNESS AND EXHIBIT LISTS**<br><br>Trial Date: December 4, 2017 |

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. LEGAL STANDARD ......................................................................................................... 3

III. ARGUMENT ....................................................................................................................... 4

    A. Waymo's New Software Trade Secrets Are Not Rooted in New Information from the Stroz Materials ........................................................................ 4

    B. The Addition of New Software Trade Secrets Tailored to Ottomotto Source Code Is a Fundamental Injustice Contrary to Section 2019.210 ............................ 6

    C. Expanding This Litigation to Add New Software Trade Secrets Would Severely Prejudice Uber's Ability to Prepare for Trial .......................................... 9

    D. Severance and a Later Trial Would Not Cure Fundamental Unfairness of Waymo's Late Amendment to Trade Secrets List ............................................... 10

IV. STROZ DOCUMENTS PERTAINING TO THE EXISTING NINE TRADE SECRETS DO NOT SHOW MISAPPROPRIATION BY UBER ................................... 12

V. CONCLUSION .................................................................................................................. 16

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
   781 F.2d 1393 (9th Cir. 1986) ............................................................................................. 3

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 12-CV-0630-LHK PSG, 2013 WL 3246094 (N.D. Cal. June 26, 2013) ....................... 3

*Graebner v. Wm. Page & Assocs., Inc.*,
   No. C 12-01694 WHA, 2016 WL 537941 (N.D. Cal. Feb. 11, 2016) ................................. 6

*Jobscience, Inc. v. CVPartners, Inc.*,
   No. C 13-04519 WHA, 2014 WL 1724763 (N.D. Cal. May 1, 2014) ................................ 7

*Jobscience, Inc. v. CVPartners, Inc.*,
   No. C 13-04519-WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ........................ 5, 6, 7

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ............................................................................................. 3

*In re Katz Interactive Call Processing Patent Litig.*,
   639 F.3d 1303 (Fed. Cir. 2011) ................................................................................... 11, 12

*Neothermia Corp. v. Rubicor Med., Inc.*,
   345 F. Supp. 2d 1042 (N.D. Cal. 2004) ........................................................................ 3, 12

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006) ..................................................................................... 3, 12

*Perlan Therapeutics, Inc. v. Super. Ct.*,
   178 Cal. App. 4th 1333 (Cal. Ct. App. 2010) .................................................................... 8

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010), *as modified on denial of reh'g*, *disapproved of
   on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011) ...................... 15

*Telswitch, Inc. v. Billing Solutions, Inc.*,
   No. C 12-00172 EMC (LB), 2012 WL 3877645 (N.D. Cal. Sept. 6, 2012) .................. 7, 8

**Statutes**

Cal. Civ. Proc. Code § 2019.210 ............................................................................... *passim*

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

ii

## I.     INTRODUCTION

Waymo seeks to reboot its faltering case by introducing two new alleged trade secrets that were transparently drafted to match the Ottomotto source code that Waymo has had for more than two months (since well before the Stroz materials were produced).  The Court admonished Waymo that "[t]his action has been and remains about the 121 asserted trade secrets that Waymo identified at the outset," and that Waymo would have to "fully justify changing the scope of litigation at this late stage."  (Dkt. 2026 at 3.)  Waymo's new arguments fail to clear this high bar.  The Stroz materials that Waymo purportedly relies upon do not reveal new information that justifies adding new software trade secrets on the eve of trial.

Waymo alleges misappropriation of motion planning "algorithms," but does not point to any copying of specific algorithms or source code.  Waymo instead accuses a former Waymo software engineer, Don Burnette, of using a ▮▮▮▮▮▮▮ motion planner concept allegedly similar to his previous work at Waymo, arguing that this similarity was only revealed in the engineer's post-Waymo handwritten notes stored at Stroz.  By Waymo's own admission, however, it learned about Ottomotto's use of a ▮▮▮▮▮▮▮ planner at Mr. Burnette's first deposition in August, and yet it did not identify misappropriation of any alleged trade secret until now.  Likewise, Waymo had access to the Ottomotto planner code since mid-August, but only now accuses this code of containing its newly drafted trade secrets.  The Cal. Civ. Proc. Code § 2019.210 requirement to identify trade secrets *before* taking discovery was designed to prevent exactly such abuse – the tailoring of purported "trade secrets" to match Defendants' technology.

Granting Waymo leave to amend its trade secrets list would be highly prejudicial to Defendants.  Waymo's two new software trade secrets do not pertain to the specific LiDAR hardware technology that has been the focal point of this case from the outset, but to motion planning software for self-driving vehicles.  Waymo has submitted reports from two new software experts, totaling roughly 70 pages with more than 300 pages of dense supporting materials.  Waymo also offers additional damages opinions related to the new trade secrets. Waymo's proposed amendment would require extensive discovery to enable Uber to fairly develop its defenses.  Uber will need the opportunity to review source code and documents

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

1

1  concerning the alleged trade secrets; depose previously unidentified Waymo software engineers;
2  search for and analyze public references; take discovery of third parties regarding motion
3  planners in the self-driving car space; depose Waymo's newly-disclosed experts and potentially
4  raise *Daubert* challenges; and prepare its own responsive expert reports on the technology and on
5  damages– all in six weeks and while preparing for trial on Waymo's current complaint and trade
6  secrets identified for trial.  Waymo should not be allowed to foist this burden on Defendants at
7  this late stage when these claims could have been raised earlier.

8  Curiously, Waymo's motion does not say that Waymo is currently using the ▮
9  ▮ planner concept that it claims as TS 123.  Waymo admits that it previously used ▮
10 ▮ (Dkt. 2057-4, Waymo's Mot.
11 at 7.)  Waymo's expert discusses Waymo code from ▮ and some "newer code" of
12 unspecified date purportedly reflecting ▮, but does not substantiate
13 whether this approach is being used by Waymo today, or indeed whether the referenced Waymo
14 source code was *ever* used.  Mr. Burnette testified that when he left Waymo, the ▮
15 approach was not being used.  This is one of many important issues that would need to be
16 explored through discovery if Waymo were allowed to proceed on these new trade secrets.

17 The Court asked the parties to consider the possibility of Waymo's motion to amend being
18 granted, with the new claims severed for future discovery and trial sometime after the December
19 2017 trial.  As discussed below, it would be unjust and improper under Section 2019.210 to
20 permit Waymo to pursue "trade secrets" that were clearly drawn to cover the accused source code
21 revealed in discovery.  If Waymo wanted to raise these purported trade secrets, it should have
22 done so at the outset of the case, *before* it gained insight into Ottomotto's software.  This bell
23 cannot be unrung.  Allowing these claims to go forward at a later time would only prolong this
24 injustice and delay complete resolution of this case.  If, however, the Court were still inclined to
25 grant Waymo's motion, then the new claims should be severed and dealt with in subsequent
26 proceedings next year on a typical case timeline, not the breakneck schedule to which Defendants
27 have been subjected thus far.

28 With respect to the Stroz materials Waymo has identified as purportedly relating to the

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

2

existing nine trade secrets currently set for trial, those documents do not shore up Waymo's faltering misappropriation case, because the documents come from devices that were collected and quarantined by Stroz in early 2016, long before Uber started working on the accused Fuji LiDAR.  Uber does not oppose, however, a limited supplementation to Waymo's existing expert reports and exhibits list regarding the nine previously elected trade secrets.

## II.     LEGAL STANDARD

The "'good cause' standard for amendment" of plaintiff's Section 2019.210 trade secret identification "parallels those of this District's Patent Local Rules which are designed to prevent the 'shifting sands' approach to patent litigation, a concern which applies with equal force to trade secrets allegations and discovery." *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1045 (N.D. Cal. 2004) (citation omitted).  This "good cause" standard requires "a showing that the party seeking leave to amend acted with diligence in promptly moving to amend when new evidence is revealed in discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363, 1366 (Fed. Cir. 2006) (rejecting plaintiff's argument that good cause exists "merely because new evidence was revealed during discovery").  "The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." *Id.* at 1366. "Only if the moving party is able to show diligence may the court consider the prejudice to the non-moving party." *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK PSG, 2013 WL 3246094, at *1 (N.D. Cal. June 26, 2013).

To request modification of the scheduling order, the "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking [] amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986).

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

3

### III. ARGUMENT

#### A. Waymo's New Software Trade Secrets Are Not Rooted in New Information from the Stroz Materials

Despite repeated instructions from this Court to identify its revised list of trade secrets for trial "from its disclosure dated March 10 (Dkt. No. 25-7)," Waymo seeks to add two new alleged software trade secrets six weeks before trial. (Dkt. 1883 at 1; Dkt. 2026 at 3.) Waymo argues that the Stroz materials "revealed, for the first time," Defendants' use of ▓▓▓▓ and ▓▓▓▓." (Dkt. 2057-4, Waymo's Mot. at 8.) This is not true.

Before the August 24 discovery cut-off and well before the Stroz Report and exhibits were produced on September 13, Waymo had access to the very same Ottomotto source code that it now says contains its trade secrets and had deposed Mr. Burnette concerning the same ▓▓▓▓ method that it now claims as a trade secret. Waymo concedes that, prior to the production of the Stroz materials, it learned from Mr. Burnette's August 18 deposition that Ottomotto's self-driving motion planner uses a ▓▓▓▓ ▓▓▓▓ (Dkt. 2057-4, Waymo's Mot. at 8.) As Waymo noted, during their depositions in August, both Mr. Burnette and Jur van den Berg, an Ottomotto/Uber software engineer formerly at Waymo, distinguished Ottomotto's ▓▓▓▓ planner from Waymo's planner that ▓▓▓▓. (*Id.*)

Further, Waymo gained access to the Ottomotto planner source code on August 17. (Dkt. 1188 at 4; Ex. 1[1], 8/16/17 E. Chang Email re Source Code Inspection.) Waymo previously reviewed that source code, but failed to identify any alleged trade secrets at that time. (Dkt. 1976-4 at 4.) Now, two months after obtaining access to the Ottomotto source code, Waymo asserts for the first time that Ottomotto's ▓▓▓▓ planner misappropriates Waymo's newly drafted purported software trade secrets. (*See e.g.*, Dkt. 2061-17 at 19-23, 31-34 (new Rinard expert report accusing Ottomotto planner code of using two new software trade secrets).) Waymo never identified these trade secrets or moved to compel further software discovery before the discovery cut-off or the seven-day deadline for discovery motions under Local Rule 37-3.

---

[1] All references to "Ex." are to exhibits to the declaration of Esther Kim Chang in support of this motion.

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

4

1    Waymo's new software trade secrets are not rooted in any new information from the Stroz
2    materials that would excuse their late identification.  As the basis for its motion to amend,
3    Waymo cites one new document from Stroz:  Mr. Burnette's handwritten notes on his personal
4    laptop stored at Stroz.  (Dkt. 2057-4, Waymo's Mot. at 9.)  Waymo concedes that these notes
5    were dated after Mr. Burnette left Waymo, but argues that Mr. Burnette's notes "reference" the
6    algorithms of Waymo's purported new software trade secrets.  (*Id.* at 2.)  To be clear, Waymo
7    does not point to any copying of its actual algorithms or source code files.  Waymo argues instead
8    that these notes show the use of two basic physics concepts as controls for a ▓▓▓▓
9    motion planner: ▓▓▓▓
10   ▓▓▓▓
11   ▓▓▓▓   As Mr. Burnette explained at his continued deposition, these are basic physics concepts,
12   and he wrote down equations using them so that his Ottomotto colleague could start work on
13   Ottomotto software while Mr. Burnette was on vacation.  (Declaration of Don Burnette
14   ("Burnette Decl.") ¶¶ 3-11, 26.)  These ▓▓▓▓ controls were used in the Ottomotto
15   planner source code that was produced on August 17.  (Burnette Decl. ¶ 28; Declaration of E.
16   Chang Exhibit ("Ex.") 1.)
17    Waymo cannot establish diligence when it failed to identify its alleged new trade secrets
18   at the outset of the case, or at the very latest when it first obtained Ottomotto source code and
19   engineer testimony concerning Ottomotto's use of ▓▓▓▓ controls in a ▓▓▓▓
20   planner.  Waymo argues that it needed Mr. Burnette's handwritten notes from the Stroz
21   production to reveal that the Ottomotto planner was similar to Mr. Burnette's work at Waymo.
22   (Dkt. 2057-4, Waymo's Mot. at 9.)  This argument makes no sense.  As this Court has cautioned,
23   "[a] true trade secret plaintiff ought to be able to identify, up front, and with specificity the
24   particulars of the trade secrets without any discovery." *Jobscience, Inc. v. CVPartners, Inc.*,
25   No. C 13-04519-WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014).  Waymo did not need
26   Mr. Burnette's post-Waymo notes to identify its own trade secrets.  Waymo also did not need
27   these notes to show any similarities between Waymo and Ottomotto source code, when it could
28   have compared the source code directly in August.  This Court has found a lack of "good cause"

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

5

under Rule 16b where plaintiff provided no "convincing reasons why they could not have obtained the information [for the amendment] sooner." *See Graebner v. Wm. Page & Assocs., Inc.*, No. C 12-01694 WHA, 2016 WL 537941, at *2 (N.D. Cal. Feb. 11, 2016).  None of the cases cited by Waymo support the amendment of a trade secrets list when plaintiff failed to act with diligence.  Tellingly, Waymo now cites Mr. Burnette's performance evaluations at Google as purported evidence that it possessed the two new trade secrets.  (Dkt. 2061-1 at 1-3 (citing 2015 evaluations).)  These evaluations were not part of the Stroz materials.  Instead, they are documents produced by *Waymo* on October 12, 2017, more than a month after the close of fact discovery.  Waymo's already shaky argument that it needed the Stroz materials to identify its own purported trade secrets falls apart completely in light of the fact that it now seeks to rely on its own documents, which it possessed all along but never thought to produce.  Waymo's damages expert now claims that these two software trade secrets account for ▓▓▓▓ of the value of all self-driving technology.  (Dkt. 2061-16 at 8 (Wagner Suppl. Rpt.).)  Waymo offers no explanation for its failure to identify these trade secrets, when the trade secrets are allegedly so valuable.

### B. The Addition of New Software Trade Secrets Tailored to Ottomotto Source Code Is a Fundamental Injustice Contrary to Section 2019.210

The addition of new software trade secrets tailored to what Waymo found in the Ottomotto source code would be an injustice contrary to Section 2019.210.  Section 2019.210 prohibits "commencing discovery relating to the trade secret" before plaintiff has identified the actual trade secret.  Cal. Civ. Proc. Code § 2019.210.  As this Court has warned, it would be easy to "take discovery into the defendants' files, and then cleverly specify whatever happens to be there as having been trade secrets stolen from plaintiff." *Jobscience*, 2014 WL 852477, at *5.  Likewise, Northern District courts have imposed a "good cause" standard for amending the Section 2019.210 statement in order to prevent the "shifting sands approach" that Waymo attempts here.

Waymo's own conduct demonstrates that it is engaging in impermissible *post hoc* identification of alleged trade secrets.  When Waymo served confidentiality designations for Mr.

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

6

1  Burnette's August 18 deposition testimony, it did not designate his testimony on Ottomotto's
2  ▇▇▇▇▇▇ planner as Waymo's confidential information.  (*See* Ex. 2, Waymo's August 25
3  designation of Burnette transcript at 55:25-56:7.)  On October 19, nearly two months later,
4  Waymo abruptly amended its confidentiality designations to claim this testimony as its own
5  confidential information.  (*See* Ex. 3, Waymo's October 19 designation of Burnette transcript at
6  55:25-56:7.)  Additionally, just two weeks ago, in order to justify its motion to compel Uber
7  source code, Waymo argued that the Ottomotto source code did not include the motion planning
8  functionality it was looking for.  (Dt. 1976-4 at 4.)  Now, Waymo alleges that its trade secrets *are*
9  found in Ottomotto's source code.  (*See* Dkt. 2061-17 at 19-23, 31-34 (new Rinard expert report
10 accusing portions of Ottomotto code).)  In *Jobscience,* this Court denied plaintiff's request for
11 another chance to amend its trade secret statement, finding that "[n]o more tries will be allowed,
12 especially now that plaintiff's counsel have seen the accused source code."  *Jobscience, Inc. v.*
13 *CVPartners, Inc.*, No. C 13-04519 WHA, 2014 WL 1724763, at *4 (N.D. Cal. May 1, 2014); *see*
14 *also Telswitch, Inc. v. Billing Solutions, Inc.*, No. C 12-00172 EMC (LB), 2012 WL 3877645, at
15 *3-4, n.5 (N.D. Cal. Sept. 6, 2012) (with agreement of parties, ordering that plaintiff may not
16 amend its trade secrets disclosure again before commencing discovery, in light of court's concern
17 that plaintiff "could compare its database with Defendants' and refine its misappropriation claim
18 to focus on any similarities in the structures of the two databases").  Waymo's belated request to
19 add new trade secrets tailored to the Ottomotto source code should likewise be denied.

20  Moreover, the credibility of Waymo's new trade secrets should be evaluated in light of its
21 changing positions before this Court and Magistrate Judge Corley as to the scope of the new
22 software trade secrets, which further support that Waymo has been making this up as it goes
23 along.  When it first sought Ottomotto source code in June, Waymo pointed to a "Chauffeur TL
24 weekly updates – Q4 2015" spreadsheet (TS 85) as its basis for seeking software discovery.
25 (Dkt. 971 at 1.)  Although its August 1 narrowed list of trade secrets for trial reserved the right to
26 supplement the list with TS 85, it never raised that trade secret again.  (Dkt. 1110-1 at 1.)  After
27 production of the Stroz materials, Waymo initially argued that "[s]ource code…'snippets'"
28 attached to the Stroz Report showed some undefined trade secret relating to lane change, but the

1  snippets turned out to be part of presentations shown to outside third parties.  (Dkt. 1976-4 at 3.)
2  Waymo's motion to compel also relied on the presence in Mr. Burnette's Gmail account of his
3  self-evaluation while working at Google as a basis for new discovery, but did not identify the
4  evaluation's discussion of a ▮▮▮▮▮ planner or ▮▮▮-based controls as Waymo trade
5  secrets.  (*Id.* at 3-4.)  After Mr. Burnette's continued deposition, Waymo first accused him of
6  possessing two "clearly proprietary" files from Waymo, but backed off when it became clear the
7  files were not Waymo source code.  (Dkt. 1998-4 at 3.)  After Uber pointed out in a discovery
8  brief that the concept of a ▮▮▮▮▮ planner is known and ▮▮▮▮▮▮▮ are known
9  physics concepts used in motion planning software, Waymo defined its trade secret as the use of
10 ▮▮▮▮▮▮ in "connection with an ▮▮▮▮▮▮▮▮▮▮▮▮."  (*Compare* Dkt.
11 2001-4 at 3, *with* Dkt. 2057-4, Waymo's Mot. at 7.)  "If [plaintiff] does not know what its own
12 trade secrets are, it has no basis for suggesting defendants misappropriated them."  *Perlan*
13 *Therapeutics, Inc. v. Super. Ct.*, 178 Cal. App. 4th 1333, 1350 (Cal. Ct. App. 2010).  Waymo's
14 purported software trade secrets are the product of strategic development to fit the newly
15 discovered facts as they emerged, rather than properly defined *a priori* trade secrets.
16         It is also notable that Waymo's motion and the supporting expert reports fail to
17 substantiate whether Waymo is actually currently using the ▮▮▮▮▮ planner method it
18 touts as TS 123 in its self-driving program.  The new expert report of Jonathan How discusses
19 Waymo source code from ▮▮▮▮▮ and "newer code" of unspecified date purportedly related
20 to a ▮▮▮▮▮ planner, but Dr. How and Waymo's fact declarant do not provide evidence
21 that the ▮▮▮▮▮ approach is currently being used by Waymo.  Nor does Waymo claim
22 some current benefit—such as a smoother ride—from its use of the claimed trade secrets in its
23 self-driving vehicles.  Mr. Burnette recalls that, as of the time he left Waymo in February 2016,
24 Waymo's planner ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮  (Burnette Decl. ¶¶ 12, 19-24.)  Waymo's silence on this point—
27 especially as it urges this Court to expand this case into previously uncharted territory—is
28 deafening.

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

8

### C. Expanding This Litigation to Add New Software Trade Secrets Would Severely Prejudice Uber's Ability to Prepare for Trial

Waymo argues that adding the two new software trade secrets would not "greatly expand the scope of this litigation" and any additional cost would be "marginal at most." (Dkt. 2057-4, Waymo's Mot. at 17.) To the contrary, the new trade secrets are directed to motion planning software for self-driving cars, which is very different from the nine LiDAR hardware trade secrets presently asserted for trial. Waymo has submitted two expert reports in connection with the two new software trade secrets, containing seventy pages of expert opinion and citing hundreds of pages of dense articles and other documents. Uber would need substantial discovery concerning the design and development of Waymo's planner software, including source code inspection, document production, written interrogatories, and depositions of software engineers. Waymo has provided only limited evidence that it can make claim to these two software trade secrets. Its amended trade secret list primarily cites Mr. Burnette's work evaluations, but these evaluations state only that Mr. Burnette worked on improvements to planning software and do not establish that any of these concepts are trade secrets. Waymo states that Mr. Burnette worked on a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ controls, but does not attach Waymo's current planner source code, nor compare it to Ottomotto source code.

Uber would also need the opportunity to conduct third-party discovery of other self-driving car companies to demonstrate what is generally known to engineers in the field. Uber's preliminary search of public references shows that the idea of using the basic physics concepts represented ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to control the motion of a self-driving vehicle is known in the field and discussed in public articles and online resources. (*See, e.g.*, Ex. 4, C. Katrakazas, et al., "Real-time Motion Planning Methods for Autonomous On-Road Driving; State-of-the-Art and Future Research Directions" ("[passenger] [c]omfort is evaluated in terms of curvature and *rate of change of curvature of the path*, as well as the acceleration, *the jerk* and the centripetal acceleration which act on the vehicle") (emphasis added).) For example, the company Udacity teaches courses on writing self-driving software that controls for jerk, including the use of ▮▮▮▮▮▮▮▮ in self-driving

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

9

software and how to control the angular acceleration of cars.  (*See e.g.*, https://github.com/Raag079/self-driving-car; https://github.com/SiliconCar/CarND-Capstone/tree/master.)  Uber would need to subpoena third parties to further uncover the state of the art in this area.

Naturally, Uber should be provided the opportunity to work with suitable technical experts to analyze and respond to the opinions of Waymo's new software experts.  Time to take depositions and to file *Daubert* motions on the new experts would also be needed.

Finally, substantial discovery would be needed on the issue of damages.  For example, Waymo can hardly claim that these two new trade secrets cover ▬ of the value of self-driving technology if it does not even use the claimed concepts.  Further, Uber would need discovery on Waymo's development time and use of the alleged new secrets, their purported economic value, the existence of alternatives, the cost to design around them, and evidence of Uber's purported enrichment.  Waymo's damages expert previously submitted a speculative report seeking almost two billion dollars for the nine elected trade secrets, which is subject to Uber's pending *Daubert* motion.  (*See* Dkt. 1614-4.)  If Waymo is allowed a do-over of its botched damages case, Uber will need time to respond and likely move to strike further unreliable opinions.

To complete this discovery in the six weeks before the December 4 trial date would be impossible.  Moreover, Waymo has not justified its attempt to try eleven trade secrets when the Court has consistently told Waymo to identify "less than ten."  (6/7/17 Hr'g Tr. 50:20-51:2; 8/16/17 Hr'g Tr. 83:11-20.)  The existing nine trade secrets already stretch the boundaries of a jury trial, and Waymo fails to explain how eleven trade secrets can be tried in two weeks, especially when the new software trade secrets stray far afield from the subject matter of the currently nine elected trade secrets.

### D. Severance and a Later Trial Would Not Cure Fundamental Unfairness of Waymo's Late Amendment to Trade Secrets List

Severance of Waymo's two new software trade secret claims and a later trial would not cure the fundamental unfairness of Waymo's late amendment to its trade secrets list.  Under Section 2019.210, if Waymo wanted to raise these purported trade secrets, it should have done so

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

10

at the outset of the case, *before* it gained insight into Ottomotto's software. Waymo cannot show "good cause" that would justify a late amendment of its trade secret list to add new software trade secrets and a second trial. From the outset of this case, Waymo has urged the Court to adopt an expedited trial schedule and early trial date to protect its intellectual property rights, with no mention of a second trial on a second group of trade secrets. And, contrary to Waymo, it was not only on notice that software was part of this case, but in fact argued this before the Court and Judge Corley.

As early as May 26, 2017, Waymo asked for all "software modules" that were part of the Ottomotto acquisition in its Expedited RFP 20, seeking exactly the "Otto Planner" that it accuses now, and arguing that "the relevance of these software modules to Waymo's trade secret claims is heightened by the fact that Don Burnette, the Ottomotto co-founder who designed the software at Ottomotto – seemingly in a matter of weeks – was one of the five 'Diligenced Employees.'" (Dkt. 681-3 at 5.) In a discovery exchange on June 18, Waymo counsel argued with Defendants about their refusal "to produce software modules Waymo suspects will reflect implementation of some of its trade secrets." (Ex. 11, 6/18/17 F. Corredor Email to A. Gonzalez.) Waymo added Don Burnette to its June 21, 2017 supplemental initial disclosures, relating to "Matters that concern misappropriation of trade secrets and patent infringement by Defendants." (Dkt. 797-2 at 13.) Waymo's subsequent brief in support of Judge Corley's order to produce the Ottomotto source code argued again that the Ottomotto software modules "are very relevant to determining *what* Uber acquired, namely whether it acquired Waymo trade secrets." (Dkt. 971 at 1.) There is no excuse for Waymo's failure to identify all the software trade secrets it wanted to litigate, when it argued repeatedly that Don Burnette and Ottomotto source code were relevant to its trade secrets claims.

Waymo argues that, under *Katz*, "claim selection" occurred too early and risked depriving Waymo of its rights. (Dkt. 2057-4, Waymo's Mot. at 20 (quoting *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011)).) But *Katz* was about a patent plaintiff selecting its asserted patent claims and moving to sever and stay the non-selected claims; the Federal Circuit in *Katz* found that plaintiff "makes no such argument in this appeal" that the

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

11

claim selection order came too early in the discovery process, and rejected plaintiff's due process argument. *Id.* at 1311, 1309, 1313, n.9. *Katz* does not support adding previously unidentified trade secrets to a case in order to prolong litigation for a second trial. Furthermore, the Federal Circuit in *O2 Micro* upheld the "good cause" standard for amendments to patent contentions, which a Northern District court adopted as the standard for amending a trade secrets list. *O2 Micro*, 467 F.3d at 1363; *Neothermia*, 345 F. Supp. 2d at 1045. The Federal Circuit expressly agreed "with the Northern District of California that 'good cause' requires a showing of diligence," which Waymo utterly fails to show here. *O2 Micro*, 467 F.3d at 1366.

### IV. STROZ DOCUMENTS PERTAINING TO THE EXISTING NINE TRADE SECRETS DO NOT SHOW MISAPPROPRIATION BY UBER

To the extent that the Court will permit Waymo to amend its case regarding the nine existing trade secrets elected for trial, Uber does not object to Waymo's supplementation of Dr. Hesselink's expert report, provided Waymo make him available for further deposition and provided Uber's own technical expert be permitted to supplement his report. Likewise, Uber does not object to the addition of Waymo's forensic expert, Andy Crain, but Uber reserves all rights to depose Crain, to challenge or seek to exclude his opinions, and to respond to those opinions with its own expert report, if necessary.

With respect to Waymo's new witnesses that do not relate to software, Uber objects to the addition of Max Levandowski and Daniel Ratner, one of whom was first deposed before the Stroz Report was released, who are irrelevant to the Stroz Report and process, and whom Waymo identifies no testimony from that is at all related to newly produced materials. (Dkt. 2062-9 at 17-18.) Uber also objects to the addition of Shawn Bananzadeh, a *Waymo* 30(b)(6) deposition witness who would testify about the costs of development of, and management of Waymo's self-driving cars and autonomous vehicle technology. (*Id.* at 13.) This proffered testimony has nothing to do with the Stroz Report or newly produced Stroz materials. Waymo has no good cause to add him as a trial witness. Finally, Uber objects to the addition of Neel Chatterjee, whose proposed testimony has nothing to do with the Stroz Report or newly produced Stroz materials. (*Id.* at 14.)

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

12

And with respect to Waymo's additions to its trial exhibit list, Uber objects to Waymo's indiscriminate addition of over four thousand documents to its exhibit list, some of which were produced before discovery closed, particularly when its own experts do not cite them as evidence. The Court should require Waymo to narrow its proposed trial exhibit additions by a date certain, and permit Uber to supplement in response.

Although Uber does not object to the supplementation for the existing nine trade secrets, Waymo's motion shows that such supplementation will not "shore up" its case against Defendants because the Stroz Report and materials do not show misappropriation of Waymo's alleged trade secrets. Waymo claims that the Stroz materials establish "not only the theft of [] trade secrets, but also Uber's knowledge of that theft." (Dkt. 2057-4, Waymo's Mot. at 4.) To the contrary, the Stroz Report describes a due diligence process carefully structured so that Uber did not receive any confidential or proprietary Google information identified by Stroz. (Dkt. 824-1, Exs. A and F (Stroz original and revised engagement letters), Exs. D-E (review protocols), Ex. C (Levandowski-Stroz side letter agreements).) Waymo has not offered any evidence that the protocol was not followed. Further, the Stroz Report concludes that it "discovered no evidence indicating that [Levandowski] transferred any of that data to Ottomotto or other third parties." (Dkt. 1603-5, Stroz Rpt. at 17; *see also* Ex. 5, Fulginiti Dep. 287:20-24 (no evidence that any of the other diligenced employees transferred any Google data to Ottomotto or others).) The Stroz Report does not conclude that materials in the Diligenced Employees' possession were in fact trade secrets, and Waymo cites no newly produced documents or testimony supporting such a conclusion.

What the Stroz materials reveal is that in his eight plus years of working at Google and Waymo, Levandowski had unsurprisingly accumulated files and photographs relating to his Google/Waymo work on his personal devices—not an uncommon practice among Waymo engineers. (*See, e.g.*, Ex. 6, Lenius Dep. 260:25-261:11, 265:17-266:10; Ex. 7, Lauterbach Dep. 45:16-21; Ex. 8, Morriss Dep. 109:23-25, 110:13-23.) The supplemental report of Waymo technical expert Dr. Hesselink identifies only twelve Stroz documents, eight of which were last accessed prior to January 26, 2016, while Levandowski was still at Waymo. (*See* Dkt. 2061, Ex.

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

13

B to Dr. Hesselink's Supplemental Report (attaching metadata).)  For example, Dr. Hesselink highlights the presence of a ▓▓▓▓▓▓▓▓▓▓ spreadsheet relating to Trade Secret No. 25 on Levandowski's personal MacBook laptop, but he concedes that the metadata shows that Levandowski last accessed this document on January 4, 2016, weeks before Levandowski's departure from Waymo.  (*See* Dkt. 2061, Hesselink Suppl. Exp. Rpt. ¶ 16.)  Dr. Hesselink also points to some documents from the "sliver" of Stroz materials received by MoFo in its prior capacity as counsel for Levandowski.  The metadata for the "sliver" documents identified in Dr. Hesselink's report, however, indicate that these were last accessed by Levandowski months before he left Waymo.  (Ex. 10, SFM00001557.)

| **BegProdBate** | **DateAccessed** | **TimeAccessed** |
|---|---|---|
| SFM00000011 | 11/18/2015 | 21:27:16 |
| SFM00000573 | 11/18/2015 | 21:27:34 |
| SFM00000753 | 7/27/2015 | 9:53:38 |
| SFM00000759 | 8/20/2015 | 12:29:40 |
| SFM00000761 | 8/20/2015 | 12:29:43 |
| SFM00000763 | 9/9/2015 | 16:56:34 |
| SFM00000764 | 7/27/2015 | 9:53:41 |

Though Waymo touts a few Stroz documents with "last accessed" dates after January 2016, it cites no evidence that these files, or any of the Stroz materials, were acquired or used by Ottomotto or Uber.  Dr. Hesselink acknowledges that these files came from Levandowski's Macbook Laptop, which was quarantined by Stroz Friedberg in March 2016.  (*See* Dkt. 2061, Hesselink Suppl. Exp. Rpt. ¶¶ 24, 44, 46, Ex. B; Ex. 9, UBER00312645 at UBER00312646 (quarantine of Levandowski laptop in March 2016).)  This quarantine occurred months before Ottomotto or Uber first started working on the design for Spider and Fuji, the LiDAR designs Waymo accuses of using its nine elected trade secrets.  (*See* Dkt. 297-1, 4/28/17 Haslim Suppl. Decl. ¶ 10 (Fuji work began October 2016); Dkt. 330-6, Haslim Decl. ISO MSJ ¶ 6 (Spider work began May 2016).)  And even though Dr. Hesselink also cites some Stroz documents regarding ▓▓▓▓▓▓▓▓▓▓ that is the subject of TS 90, he does not point to any evidence that the information in these Stroz materials were communicated to Ottomotto or Uber.

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

14

Moreover, the presence of Google confidential information among the documents turned over to Stroz (and even those returned to Levandowski or the other diligenced employees) is not evidence that *Uber* improperly acquired or used the alleged trade secrets.  *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 223 (2010), *as modified on denial of reh'g*, *disapproved of on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011) (acquisition requires a showing of "pointed conduct intended to secure dominion over the thing."); Dkt. 824 (Uber's brief on imputation of liability for acquisition, incorporated by reference).  Despite reviewing over a million documents turned over to Stroz as part of its investigation, Waymo has pointed to no evidence showing that any document embodying its nine trade secrets was acquired by Uber.  Since production of the Stroz Report, Waymo has taken the depositions of the five Diligenced Employees, multiple Uber executives, four Uber engineers, four Stroz personnel, two MoFo lawyers, three Uber lawyers, and Levandowski's lawyer.  Waymo has not adduced evidence that would support its imputation theory, even if it were a viable one.  In sum, the Stroz materials have not "shore[d] up" Waymo's deteriorating case against *Uber*.  (Dkt. 2026.)

Waymo's critiques of the Stroz process do not lend support to its misappropriation claims.  For example, while Waymo observes that Stroz returned Levandowski's iPhone to him, it fails to mention that Stroz stated that the iPhone only had messages and data post-dating Levandowski's departure from Google—from February 6, 2016, to March 22, 2016.  (Dkt. 1603-5, Stroz Rpt. at 12 n.9.)  Unsurprisingly, Waymo's expert points to no data or documents from the iPhone that it alleges disclose Waymo's trade secrets.  Another example is Waymo's argument that Uber did not follow the Stroz Report's recommendation to retain an expert to review source code found on Diligenced Employees' devices.  (Dkt. 2057-4, Waymo's Mot. at 11.)  Waymo, however, has now apparently reviewed all source code files among the Stroz materials, and its two new software trade secrets are not based on any of this code.  (*Compare id.* at 4 (Waymo hired software experts to review code), *with id.* at 15 (Waymo reviewed all 176,000 source code files), *and with id.* at 9 (only Stroz basis for new trade secrets is Burnette's handwritten notes).)  Waymo also cites a MoFo lawyer's notes that Levandowski had "everything you need to create a self-driving car" on five Drobo back-up discs, and argues that Stroz could not confirm destruction of

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

15

those discs. (*Id.* at 11.) But Waymo fails to mention Stroz personnel Mary Fulginiti's testimony that the "everything you need" language was her own gloss on the discs, not Levandowski's characterization. (Ex. 5, Fulginiti Dep. 119:17-120:10, 175:12-25.) Further, Stroz in fact confirmed that on March 14, five discs were shredded at vendor Shred Works and paid for in cash, consistent with Levandowski's statement that he had shredded five discs at Shred Works and paid cash. (*Id.* at 218:3-13; *see also id.* at 218:24-219:3 (rejecting assertion that Shred Works investigation was inconclusive).) Ultimately, as the Court suspected, the Stroz materials are cumulative of Waymo's allegations against Levandowski, but they are not evidence of misappropriation by Defendants.

## V.   CONCLUSION

Having dropped all its patent claims and confronted by the reality of its deteriorating case, Waymo should not be allowed to prolong this litigation by adding new software trade secrets that were drafted to match the Ottomotto source code it had for more than two months. Accordingly, Waymo's motion for leave to amend its trade secrets list should be denied. With respect to the existing nine trade secrets, Waymo's supplementation should be reasonably limited to the Stroz documents specifically identified in its supplemental expert reports, and Uber should be provided the opportunity for its own supplementation.

Dated:  October 25, 2017                    MORRISON & FOERSTER LLP

                                            By:   */s/ Michael A. Jacobs*
                                                  MICHAEL A. JACOBS

                                            Attorneys for Defendants
                                            UBER TECHNOLOGIES, INC.
                                            and OTTOMOTTO LLC

UBER AND OTTOMOTTO'S OPPOSITION TO WAYMO'S MOTION FOR LEAVE TO FILE AMENDED TS LIST
Case No. 3:17-cv-00939-WHA
dc-904385

16