# *EXHIBIT 1*

*REDACTED VERSION
OF DOCUMENT
SOUGHT TO BE SEALED*

# *EXHIBIT 1*

MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel: 415.268.7000 / Fax: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Tel: 202.237.2727 / Fax: 202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@SusmanGodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: 212.336.8330 / Fax: 212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S OPPOSITION TO MOTION TO COMPEL UBER SOURCE CODE**<br><br>Trial Date: December 4, 2017 |

**REDACTED VERSION OF DCOUMENT SOUGHT TO BE SEALED**

## I. INTRODUCTION

Once again, Waymo demands a do-over. After getting the breakneck schedule it wanted, Waymo used the Stroz Report as an excuse to back out of going to trial on the nine trade secrets it had chosen. In response to Waymo's plea for more time to review the Stroz due diligence materials, including source code, Judge Alsup set a new December 4 trial date and warned Waymo that "we're not going to argue about it."[1] In addition, Judge Alsup cautioned Waymo that "[t]here will be no new discovery" absent the Court's decision that it is warranted, and that Waymo must show a "genuine need" before it can amend its list of asserted trade secrets for trial.[2]

Waymo admits that it seeks this discovery to support as-yet-undefined software trade secrets that were not part of its March 10, 2017 Cal. Civ. Proc. Code § 2019.210 trade secrets list. Waymo has represented that it plans to formulate and assert brand-new trade secrets outside of the 121 trade secrets from the March 10 list, in disregard of the Court's directive that Waymo choose any new trade secrets to assert at trial from the original list. Furthermore, Waymo apparently seeks to review Uber's source code first and then draft new trade secrets to match—precisely what Section 2019.210 forbids.

Waymo also has not provided a valid basis rooted in the Stroz materials to justify the new discovery of source code it seeks at this late stage.[3] After nearly a month of intensive review of the Stroz materials—and almost two months of access to Ottomotto source code modules developed by the Diligenced Employees—Waymo concedes that it has not found evidence of

---

[1] 10/3/17 Hr'g Tr, at 41:2-12 ("Nevertheless, I'm going to give you a brief opportunity, and when I say "brief" it's more than brief, but I'm going to give you an opportunity to make some changes. And I have to take into account my — my own court schedule, and I am going to give you a schedule, and we're not going to argue about it. It's just going to be the way it is, and you can take an appeal if you don't like it. So trial is now going — we're going to pick the jury on November 29. We will start with trial on December 4.")

[2] 10/3/17 Hr'g Tr. at 41:24-42:4 ("There will be no new discovery, absent stipulation or Judge Corley decides that it's warranted."); *id.* at 42:5-19 ("[I]f you come up with some genuine need to amend it, there are suggestions in your brief that you found that certain trade secrets were violated by the due diligence thing, okay, maybe that would be work included in the motion to amend.")

[3] Waymo's October 9 motion to compel is untimely, because the Court ordered Waymo to seek any additional discovery as a result of the Stroz Report by 5 p.m. on October 6. (Dkt. 1964.)

DEFENDANTS UBER AND OTTOMOTTO'S OPPOSITION TO MOTION TO COMPEL UBER SOURCE CODE
Case No. 3:17-cv-00939-WHA
dc-903053

1

misappropriation in the Ottomotto code. Waymo now demands production of Uber source code, arguing that it may contain undefined Waymo software trade secrets pertaining to lane-change functionality. Waymo cites only one instance of Waymo source code in the Stroz materials to support this theory: a few "snippets" of "Waymo source code related to route planning and changing lanes." As it turns out, those snippets were presented by Google as part of an external-facing presentation to outside visitors from ███████████. Waymo has made no effort to show how the few fragments of code contained in these presentations, given to at least thirty outside visitors, could contain trade secrets.

Given the December 4 trial date and Waymo's failure to assert its yet-unspecified software trade secrets at the outset of this case, Waymo cannot meet the heavy burden of demonstrating that discovery should be re-opened for the sole purpose of accommodating a fishing expedition, especially where, as here, the discovery is unrelated to anything Waymo pled in its complaint and trade secrets list.

## II. ARGUMENT

### A. Waymo Should Not Be Allowed to Take Discovery of Uber Source Code First and Then Draft New Trade Secrets

Judge Alsup previously instructed Waymo to identify its revised list of trade secrets for trial "from its disclosure dated March 10 (Dkt. No. 25-7)." (Dkt. 1883 at 1.) Waymo nonetheless argues that it needs to compare the "current version of Uber source code" to Waymo source code (which has never been produced in this case) in order to identify and assert new software trade secrets. (Waymo Mot. at 3-4.) This proposed sequence of events is contrary to Section 2019.210, which requires a plaintiff to identify its trade secrets with sufficient particularity *before* it can obtain discovery. As Judge Alsup warned in *Jobscience*, "[e]xperience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets stolen from plaintiff." *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519-WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014). In *Jobscience*, Judge Alsup rejected plaintiff's request for another chance to amend its trade secret statement, finding that "[n]o more tries will be allowed,

especially now that plaintiff's counsel have seen the accused source code." *JobScience*, 2014 WL 1724763, at *4 (N.D. Cal. May 1, 2014). Here, Waymo admits that the source code it seeks is not related to the already-identified trade secrets, but it wants to "go beyond Waymo's original list of trade secrets provided at the outset of this case." (Waymo Mot. at 2.) Waymo should not be allowed to take discovery of Uber source code first and then draft new software trade secrets to match. Waymo threatens to file a second lawsuit based on information from the Stroz materials, but it does not have a Rule 11 basis for a new lawsuit if it cannot articulate its software trade secrets under Section 2019.210 ***before*** discovery. *See Jobscience*, 2014 WL 852477, at *5 (a "true trade secret plaintiff" ought to be able to identify trade secrets without discovery); *Cf. Perlan Therapeutics, Inc. v. Super. Ct.*, 178 Cal. App. 4th 1333, 1350 (Feb. 18, 2010) ("If [plaintiff] does not know what its own trade secrets are, it has no basis for suggesting defendants misappropriated them."). (*See* Mot. at 2, 7.)

If the Court is inclined to grant new discovery, Waymo should be required to identify its alleged software trade secrets with particularity before it receives any access to Uber source code. *See Loop AI Labs Inc v. Gatti*, Case No. 15-cv-00798-HSG, 2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2015) (staying trade secrets discovery until plaintiff filed identification of trade secrets). Further, the Court should only order production of Uber source code if its is narrowly tailored to the accused functionalities specified in Waymo's newly identified trade secrets. Waymo should not be allowed to go on a carte-blanche fishing expedition through Uber's source code so that it can craft brand-new trade secrets tailored to fit Uber's code. The Court should not allow Waymo to reinvent its entire case in the last two months before trial.

**B.    Waymo Already Has Access to the Ottomotto Source Code Related to Lane-Change Functionality**

Waymo seeks Uber's current source code in order to review the "motion planning software functionality" developed at Ottomotto, but Waymo already has access to the relevant Ottomotto code and has not found evidence of misappropriation despite nearly two months of inspection access. (Waymo Mot. at 4-5.) Waymo identifies "motion planning source code" that former Google engineers Jur van den Berg and Don Burnette developed at Ottomotto and

1  provided to Uber, focusing on "lane-change source code." (*Id.* at 4-5.)  The code that Messrs. van
2  den Berg and Burnette provided to Uber was Ottomotto's motion planning optimizer, which was
3  subsequently used to facilitate "lane-change" functionality in Uber's already-developed code.
4  (Dkt. 1976-6, Jaffe Ex. 3 at 144:15-146:1, 151:23-152:12 (van den Berg testimony on sending
5  Ottomotto optimizer to Uber and visiting Uber); Dkt. 1976-7, Jaffe Ex. 4 at 97:10-98:7 (Burnette
6  testimony on visiting Uber with van den Berg).  The Ottomotto optimizer code – the only
7  Ottomotto-developed component that contributed to Uber's "lane-change source code" – consists
8  of two files (███████████ and ███████████████), both of which have been
9  available to Waymo since August 17 and which Waymo has inspected.  Waymo has not identified
10 the optimizer or any other Ottomotto source code as evidence of misappropriation.  Waymo
11 cannot re-open discovery simply because the facts are not as Waymo hoped.

        C.     **Waymo Has No Basis for Seeking New Source Code Discovery from Uber**

13         Waymo's purported basis for seeking Uber's source code, which it never sought before
14 the August 24 discovery cutoff, is a sham.  Waymo previously moved to compel production of
15 ***Ottomotto*** software modules that were part of the acquisition.  (Waymo Mot. at 4.)  The Court
16 granted that motion and Uber produced the Ottomotto software modules for inspection.
17 Notwithstanding its very loose standards for alleging trade secret misappropriation, Waymo
18 evidently found nothing to complain about as a result of that inspection.

19         Waymo now argues that it should be allowed access to Uber's current source code,
20 specifically the "motion planning software," based on "snippets" of Waymo source code from
21 Exhibit 37 to the Stroz report and several stray references to source code in the Stroz Report.
22 Each basis is meritless.

23         The "snippets" in Exhibit 37 to the Stroz Report are the ***only*** Waymo source code that
24 Waymo claims to have found in the Stroz materials, and they provide no basis for further
25 discovery.  The snippets in question comprise two duplicate copies of six images of Waymo
26 source code, which Waymo argues are ███████████████████████████ (Waymo
27 Mot. at 3; *see* Dkt. 1976-5, Jaffe Ex. 1 (attaching Exhibit 37 to Stroz Report).)

28         The metadata for each image in Exhibit 37 (readily available to Waymo via Stroz's review

DEFENDANTS UBER AND OTTOMOTTO'S OPPOSITION TO MOTION TO COMPEL UBER SOURCE CODE
Case No. 3:17-cv-00939-WHA
dc-903053

4

1  platform) reveal that the first six images came from a presentation named
2  and the latter six images (which duplicate the first six) came from a presentation named
3  ███ (Declaration of Michelle Yang ("Yang Decl."), concurrently filed
4  herewith, Ex. 1 (metadata report) (screenshot below).)

13  The presentations themselves are high-level overviews of various Google projects
14  presented to outside groups by Anthony Levandowski. (*See* Yang Decl. Ex. 2 at
15  STROZ_R_000249955-996 (presentation to ███
16  ███ (cover below); Ex. 3,
17  STROZ_R_000002737-768 (███

18  Waymo's motion fails to mention that the only Waymo source code found in the Stroz
19  materials was actually shared with audiences from outside Google, with no evidence of an NDA.
20  (*See* Dkt. 923 at 1 (granting motion to compel production of any Waymo confidentiality/non-
21  disclosure agreements).) An email from the Stroz materials indicates that Levandowski gave the
22  ███
23  ███. (*See*
24  Ex. 4 at STROZ_R_000249948-49 ███
25  ███ The "snippets" from Ex. 37 are hardly stolen
26  crown jewels: they were insignificant enough to use as examples to explain Google's source code
27  revision process, such as ███ to outside visitors such as energy and insurance
28  executives. (*See* Ex. 3 at STROZ_R_000002757 (see representative slide, below); *cf.* Dkt. 1976-

5, Jaffe Ex. 1 at UBER00312870, -872, -873, -876, -878, -879, -880 ("snippets" from Exhibit 37 reflected in the slide below).) Waymo has made no showing, or even argument, that the snippets of code in these presentations to outside groups could contain trade secrets.

[redacted]

Waymo's other "new information" from the Stroz materials fares no better in supporting source code discovery. Waymo quotes two references in the Stroz Report to source code on Levandowski's devices, but both refer to files that were apparently deleted and never received by Stroz. Waymo first quotes the Stroz Report's reference to "source code, design files, laser files, engineering documents, and software related to Google self-driving cars," but omits that this quoted language was in a discussion of "Destroyed Personal Drobo Disks," the five disks that Levandowski claims to have destroyed on March 11. (*Compare* Mot. at 3 *with* Dkt. 1603-5, Stroz Report at 10.) Waymo has known about the past existence—and present unavailability—of those disks for months from a June 8 interrogatory response and has deposed multiple Uber executives, including Travis Kalanick, back in July. (*See e..g.*, Dkt. 695 at 5; Ex. 5, 7/27/17 Kalanick Dep. at 22:8-25-8). Waymo also quotes Stroz's review of "the names of the deleted files" on Levandowski's laptop, but it offers no explanation for how deletion of files from a "chauffeur-

svn" folder justifies further discovery into Uber's current source code. (*Compare* Mot. at 3 *with* Dkt. 1603-5, Stroz Report at 12.) Nothing in these cited sections refers to any Waymo source code retained by the Diligenced Employees. Waymo seeks to "compare the retained Waymo code with Uber's implementation" (Mot. at 3), but there is no retained Waymo code to compare.

Waymo next quotes a Stroz Report reference to "images from [ex-Waymo engineer Don] Burnette's computer that appear to be snippets of source code." Waymo fails to mention that the pictures (which are attached to the Stroz Report as Exhibit 134) depict Ottomotto source code, not Waymo source code. (Yang Decl. Exs. 6A & 6B (Exhibit 134 and high-resolution natives showing Ottomotto file paths).) Waymo has made no claim that this Ottomotto code was copied from Waymo. (Mot. at 3.)

The only other Stroz-derived evidence cited by Waymo is a copy of Diligenced Employee Don Burnette's quarterly Waymo performance review found in his personal Gmail account. Mr. Burnette drafted the review himself and discussed his own work fixing bugs in self-driving software. (*See* Dkt. 1976-8, Jaffe Ex. 5 (Burnette performance review (excerpt below).)

[REDACTED]

Waymo makes no attempt to link Mr. Burnette's description of his own work to any alleged trade secret, and fails to allege any use of information from the performance review in either Ottomotto or Uber's software. All Waymo has is the fact that Burnette worked on motion planning at both Waymo and Ottomotto—which Waymo knew independently of the Stroz materials from Burnette's prior deposition testimony.

None of the "newly disclosed" information that Waymo cites warrants new source code discovery. The only actual Waymo source code among the Stroz materials was disclosed to outside groups, ▒▒▒▒▒▒▒▒▒▒▒. Should discovery be re-opened based on these already-disclosed snippets, Uber would also need discovery from Google of its practices regarding outside group visits, as well as discovery from ▒▒▒▒▒▒▒▒▒▒▒. With trial scheduled to begin in less than two months, and Waymo's failure to link any Stroz materials (source code snippets or otherwise) to its alleged trade secrets, Waymo's request for new discovery jeopardizes the trial schedule for no good reason. It should be denied.

### III. CONCLUSION

Waymo essentially concedes that it wants to go on a fishing expedition. It has already reviewed the Ottomotto source code and the Stroz due diligence materials and has deposed Diligenced Employees for a second time based on the Stroz materials. Coming up short, Waymo now seeks completely new discovery of Uber's source code, with the improper goal of drafting new trade secrets after reviewing Uber's code. Waymo's motion is based on nothing more than "snippets" of Waymo source code that were already disclosed to third parties outside Google. Waymo has not demonstrated a proper basis for re-opening discovery into Uber's code, and its motion to compel production of Uber source code should be denied.

Dated: October 12, 2017    MORRISON & FOERSTER LLP

By:  /s/ Michael A. Jacobs
MICHAEL A. JACOBS

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

**ATTESTATION OF E-FILED SIGNATURE**

I, Arturo J. González, am the ECF User whose ID and password are being used to file this Declaration. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Michael A. Jacobs has concurred in this filing.

Dated: October 12, 2017

*/s/ Arturo J. González*
Arturo J. González