**quinn emanuel** trial lawyers | san francisco

50 California Street, 22ⁿᵈ Floor, San Francisco, California 94101 | TEL (415) 875-6600

October 26, 2017

**VIA ECF**

Magistrate Judge Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse Courtroom F - 15th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re:     *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal. Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Plaintiff Waymo LLC ("Waymo") submits this letter brief in opposition to Otto Trucking LLC's ("Otto Trucking") motion to compel (1) production of documents by Waymo relating to its investigation of departing employees from Google to Ottomotto; (2) additional depositions with respect to any new documents produced; and (3) Keker Van Nest & Peters LLC ("KVP") to produce the documents requested by Otto Trucking's subpoena that are only available from KVP.  As explained in detail below, the Court should deny Otto Trucking's motion because it is untimely and there is no new evidence that would compel the Court to reconsider its August 18 waiver order ("the August 18 Order") pursuant to Rule 502(a), Fed. R. Ev.

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

On August 18, the Court held that Waymo waived work product and attorney-client privilege only with respect to communications among counsel, Gary Brown and others on the Google forensics team concerning their forensic investigation of Anthony Levandowski, Radu Raduta, and Sameer Kshirsagar ("the Former Employees"). (Dkt. 1272 at 1.) On August 24, in response to the Court's Order, Waymo produced documents previously withheld as privileged. (Nardinelli Decl. ¶ 2.) Otto Trucking objected, arguing that Waymo's production failed to include all documents falling within the scope of the Court's August 18 Order. On August 28 and 31, the Court held two subsequent hearings to address the issue. During those hearings, the Court reiterated that there had not been a waiver as to the security and email investigations or investigations into other employees, but ordered that where in-scope and out-of-scope material were hopelessly intertwined within a given document, fairness required production of the whole. (*See* Dkt. 1441 (August 31 Hearing Tr.) at 21:4-10.) The Court also made clear that Waymo's disclosure of this additional information would not effect a broader waiver, but that Otto Trucking would be allowed to use the new information in a subsequent motion. (*Id.* at 12:23-13:18 ("You can use it and say, This sheds light on that investigation of Mr. Levandowski. What you can't do is use it to say, You've now admitted/conceded that your waiver was broad enough to include this…").)

The Court should deny Otto Trucking's motion as untimely. Based on the Court's instructions at the August 28 and 31 hearings, Waymo made an additional production of previously withheld documents (including unredacting the information ordered by the Court) on September 2. (Nardinelli Decl. ¶ 3.) The next week, on September 6 and 8, Defendants took additional depositions of Waymo employees Gary Brown, Kristinn Gudjonsson, and Sasha Zbrozek. (*Id.* ¶ 4.) Thus, **by September 8**, Otto Trucking had in its possession all of the evidence that Waymo had previously withheld and could have brought this motion to broaden the scope of the waiver at that time. Nevertheless, and inexplicably, Otto Trucking waited **six weeks** to file its motion. Now, jury selection is a mere five weeks away, and the parties are in the throes of trial preparation. Otto Trucking should not be allowed to renew its motion at this late stage when there is no reason that it could not have done so six weeks ago.

In addition, the Court should deny Otto Trucking's motion because Otto Trucking has failed to make the requisite showings under Rule 502(a), Fed. R. Ev. As the Court explained in its August 18 Order, "[w]hen a disclosure 'made in a federal proceeding . . . waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.'" (Dkt. 1272 at 1 (citing Fed. R. Ev. 502(a).)) Although the Court did not need to address the first factor of the test since Waymo had intentionally produced the Declaration of Gary Brown ("Brown Declaration"), the Court thoroughly addressed the second and third factors in its August 18 Order, holding that Google's investigations into security, email and non-Former Employees did not involve the "same subject matter" as the forensic investigation, and that there was no compelling reason in fairness why they must all be considered together. Otto Trucking did not file objections with Judge Alsup concerning the August 18 Order, and it is now the law of the case. *See Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 (9th Cir. 1989) ("[T]he orderly administration of lengthy and complex litigation such as this requires the finality of orders be reasonably certain. This policy is served by the doctrine of law of the case, which counsels against reopening questions once resolved in ongoing litigation."). The only remaining issue is whether any of the new evidence produced by Waymo as a result of the Court's August 18 Order compels a different result. As explained in detail below, it does not, and Otto Trucking's motion should be denied for this reason as well.

## I.      Otto Trucking's Motion Is Untimely

During the August 28 and 31 hearings before the Court, Otto Trucking repeatedly argued that the scope of the Court's August 18 Order was too narrow.  (*See, e.g.*, Dkt. 1441 (August 31 Hearing Tr.) at 10-11, 19, 21:12-23:12.)  Despite Otto Trucking's arguments, the Court refused to revisit the scope of the waiver at that time, but explained that Otto Trucking would be allowed to renew its motion based on new evidence from the documents and information that the Court was then ordering Waymo to produce.  Now, seven weeks after Waymo completed its new production, and six weeks after Defendants concluded their new round of depositions of Brown, Zbrozek and Gudjonsson, Otto Trucking brings this motion to expand the scope of Waymo's waiver.  Otto Trucking's motion is untimely, and the Court should deny the motion for that reason alone.  None of Otto Trucking's arguments otherwise compels a different result.

First, Otto Trucking's reliance on Judge Alsup's October 6 Order concerning the KVP subpoena is misplaced.  Far from endorsing the untimeliness of Otto Trucking's motion, Judge Alsup explained in his October 6 Order that Otto Trucking's request to revisit the waiver issue was late **even as of September 11**, the date on which Otto Trucking filed its objections to this Court's Order quashing the KVP subpoena.  Indeed, Judge Alsup noted that "[Otto Trucking] could have completed Judge Corley's discovery plan and then revisited the KVP issue with her – as Judge Corley indicated it should – but did not . . . In short, Otto Trucking's motion is not a substitute for timely raising discovery issues, including the need for further discovery beyond what had already been authorized, before Judge Corley in the first instance."  (Dkt. 1970 at 3.)  If Otto Trucking's motion to compel additional discovery as a result of Waymo's waiver was delinquent as of September 11, as Judge Alsup held that it was, then it is certainly untimely today.

Second, Otto Trucking's argument that the Court should excuse its delay because of new information disclosed in the September 14 Expert Report of Paul French ("the French Report") and his October 3 deposition is baseless.  Otto Trucking does not identify any documents or information provided by French that were not available to Otto Trucking on September 8 after reviewing Waymo's new production and completing the depositions of Brown, Zbrozek and Gudjonsson.  In fact, all documents and depositions cited by French were produced or completed no later than September 8.  (*See* Nardinelli Decl. ¶ 5.)

Third, French's general statement concerning the existence of Google investigations into other employees is a historical fact of which Otto Trucking has been well aware since at least Waymo's document production on August 30.  Indeed, at the August 31 hearing, counsel for Otto Trucking made the very same argument it makes now in an attempt to convince the Court to reconsider its August 18 Order.  (*See* Dkt. 1441 (August 31 Hearing Tr.) at 21:12-19 ("**Counsel for Otto Trucking:** Right, Your Honor.  I think the problem is, just to identify what the problem is – is the documents that they produced last night have now shown that this was part of an integrated investigation where they were investigating these three, but they were looking at anyone who left Google and went to Otto.  And they were looking at these three as part of that.  And that's where – **The Court:** So what, though?")).  Nothing cited in the French Report or explained by French at his deposition justifies Otto Trucking's lengthy delay.  Otto Trucking has had this same information for over 6 weeks and could have (and should have) filed its motion earlier.

Fourth, Otto Trucking's reliance on the Court's October 6 Order Regarding Slack Discovery and Any Further Discovery Disputes (Dkt. 1964, "October 6 Order") to excuse its delay should also be rejected.  By October 6, Otto Trucking had already delayed filing the instant motion by an entire

month.  Moreover, Waymo understood the October 6 Order to be addressing an extension of discovery deadlines necessitated by Defendants' own delay in producing the Stroz Report, not to be handing Otto Trucking *carte blanche* to file whatever motion it wanted up to and including October 20.

Finally, pursuant to Judge Alsup's October 4 Order After Hearing on Motion to Continue Trial Date ("Continuance Order") and this Court's October 6 Order, Waymo has worked diligently over the last few weeks to complete as much discovery as possible into the Stroz materials, including the review of thousands of new documents and related materials and the completion of numerous depositions. If Otto Trucking wanted to file a new motion to broaden the waiver, it should have done so long ago. For all of the reasons explained below, Waymo believes that Otto Trucking's motion would have been denied.  But in the event that the Court granted it, the parties could have completed any additional discovery simultaneous with Waymo's discovery into the Stroz materials.  For whatever reason, Otto Trucking decided not to file its motion, and now it is too late.  The Court and Waymo should be allowed to proceed with trial preparation without the burden of having to reopen discovery into Waymo's investigations of its Former Employees.

## II. The Security and Email Investigations Are Not the "Same Subject Matter" as the Forensic Investigation, and There Is No Reason in Fairness That They Must Be Considered Together

On a motion to broaden the scope of a waiver, the Court must first decide whether the subject matter of the undisclosed documents and information being sought is the "same" as the subject matter of the documents and information intentionally disclosed.  Fed. R. Evid. 502(a)(2).  The Court must then address the extent, if any, to which fairness requires any additional production.  Fed. R. Evid. 502(a)(3).  Here, the Court has already made both of these determinations.  In its August 18 Order, the Court held that the subject matter of the Brown Declaration – and therefore the proper scope of the waiver – extended only to communications between counsel, Gary Brown and others on the Google forensics team concerning their forensic investigation of the Former Employees.  During the August 28 and 31 hearings, the Court further explained that for some specific redactions, fairness dictated that Waymo must unredact the information because, although not strictly within the scope of the waiver, it could not be "spliced out" from the discussions concerning the forensic investigation of the Former Employees.  Otto Trucking did not file objections with respect to the Court's August 18 Order or instructions on the record, and, therefore, the Court's prior rulings are the law of the case. *See Pyramid Lake Paiute Tribe*, 882 F.2d at 369.  The only issue left to be decided is whether any of the new evidence produced by Waymo as a result of the Court's rulings somehow compels a different result.  It does not, and Otto Trucking's motion should be denied.

As the Court is aware, Waymo conducted three separate and distinct investigations into employees who left Google for Ottomotto: (1) a security investigation, (2) an email (discovery) investigation, and (3) a forensic investigation.  Otto Trucking argues that the Court should compel Waymo to produce documents and information related to its security and email investigations because they are part and parcel of "one, intertwined investigation that was overseen by the same individuals at KVP that cannot be 'divided' as Waymo has done." (Otto Trucking Br. at 3.)  The Court previously rejected this argument in its August 18 Order and related instructions on the record, and none of the new evidence produced by Waymo compels a different result.  In fact, the documents and information relied upon by Otto Trucking (Exhibits 4-9), many of which the Court has already reviewed, are entirely consistent with the Court's previous findings concerning the differences between the forensic investigation and the security and email investigations.

Otto Trucking's motion falls short by improperly arguing that just because certain *documents* intertwine discussion of separate investigations, waiver of one investigation means waiver of all. For example, Exhibit 4 is a KVP memo outlining the three separate investigations: security, email, and forensics. Contrary to Otto Trucking's argument, the KVP memo is not evidence that the forensic investigation could not be "divided" out from the security and email investigation. Rather, it is proof positive that the three investigations could be, and in fact were, conducted separate and apart from each other. The KVP memo describes these three separate investigations in three discrete sections, each with its own goals and set of action items. The Court reviewed this document and a related email, and ordered that both be produced without redactions because it was too difficult to excise all material not strictly within the scope of the waiver. (Dkt. 1441 (August 31 Hearing Tr.) at 37:2-19.) But the Court made clear that this order went to document production, not to scope of waiver. *Id.* Otto Trucking's motion ignores this guidance. Instead, it presents a smattering of documents in which the forensic investigation into the Former Employees is discussed along with other investigations. This intertwining justifies production of those entire documents, but does not support Otto Trucking's position that the Court reverse its prior ruling on the scope of waiver.

Exhibits 5 and 6 are similar. While both discuss the several investigations, both also make clear that there were three separate, albeit parallel, investigations. Exhibit 5 is an internal email string referencing (1) "a secops forensic analysis of machines" (forensics), (2) "a discovery team investigation of corporate emails" (discovery) and (3) "a security investigation (with departure interviews etc.)" (security). (Vu Decl., Ex. 5.) Likewise, Exhibit 6 is an internal Google memo describing the "Scope of investigation**s**" in the plural before specifically addressing, in separate sections, updates for "secops," "discovery," and "security." (Vu Decl., Ex. 6.) Again, the "splicing-and-dicing" issue called for both exhibits to be produced without redacting discussion of the other investigations, but their emphasis that the three separate investigations had separate teams with separate goals and action items underscores, rather than works against, the Court's previous ruling that waiver of the forensics investigation into the Former Employees waives no more than the forensics investigation into the Former Employees.

Otto Trucking makes much of the fact that these documents discuss all three investigations, and that members from the three separate teams sometimes shared information, such as investigation updates or search terms. Even if this is true, it does not mean that the subject matter of the three separate investigations should be deemed the "same" for purposes of subject matter waiver under Rule 502(a), Fed. R. Ev. To the contrary, the relevant authority and caselaw makes clear that a waiver under Rule 502(a), Fed. R. Ev., "generally results in a waiver only of the communication or information disclosed," and that it is "reserved for those unusual situations in which fairness requires a further disclosure of related, protected information . . . ." Fed. R. Ev. 502 (Advisory Committee Notes). *See also Trireme Med., LLC v. Angioscore, Inc.*, 2016 WL 4191828, at \*\*2-3 (N.D. Cal. Aug. 9, 2016) (declining to extend waiver because patent prosecution as a whole was not the "same subject matter" as narrow inventorship issue); *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, 2016 WL 7475820, at \*9 (N.D. Cal. Dec. 29, 2016) (declining to extend waiver because patents in same family did not cover "same subject matter" despite evidence "tend[ing] to suggest a close affinity").

For example, *Trireme* was a patent case in which the accused infringer alleged that the patentee had failed to list a proper inventor. In response, the patentee produced documents relevant to inventorship, including privileged documents from its prosecution file. The accused infringer argued that this constituted waiver not just over inventorship documents, but the entire prosecution file. The court disagreed, holding that the subject matter of the patentee's waiver did not extend beyond documents bearing on the specific topic of inventorship. Quoting *Cormack v. United States*, 118 Fed. Cl. 33, 43

(2014), the court explained that even though e-mails waived by the patentee mentioned topics other than inventorship, "[n]othing in the e-mails provides grounds for an all-encompassing waiver of privilege over the entire prosecution file." Rather, the e-mails only mentioned these other topics "in the 'ordinary, expected' way of human conversation on any moderately complex topic." *Id.*

The waiver in this case should be narrowly focused and limited to the forensic investigation of the Former Employees. Like *Trireme*, the fact that the disclosed documents might also include references to the security, email and/or investigations into other employees is natural given the complexity of the topic but does not mean that the waiver should extend to these other investigations.

### III.    The Investigations Into Other Employees Are Not the "Same Subject Matter" as the Investigation Into the Former Employees, and There Is No Reason in Fairness That They Must Be Considered Together

Otto Trucking also argues that the scope of the waiver should be broadened to include all employees who left for Ottomotto, not just the Former Employees. In its August 18 Order, the Court stated that "Otto Trucking has not made any showing as to why communications regarding investigations of other employees have been waived." (Dkt. 1272 at 2). That statement is still true. The only support cited by Otto Trucking with respect to the non-Former Employees is a single statement made by the Court during the August 31 hearing. (Otto Trucking Br. at 4 (citing Vu Ex. 3 at 68:7-21)). The Court's statement, however, concerned document production, not the proper scope of the waiver. Specifically, the Court explained that those investigating Levandowski did not have "tunnel vision" and that if an investigator "found evidence from these other people that pointed to or was relevant to Mr. Levandowski, you would use it." *Id.* Accordingly, the Court ordered Waymo to produce certain documents and information that, while specifically addressing non-Former Employees, contained information bearing on Levandowski. Waymo fully complied with the Court's instruction.

Having all but conceded that Waymo did not previously waive privilege over any investigations of non-Former Employees, Otto Trucking now argues instead that the French Report and subsequent testimony constitutes a **new** waiver. The statements that Otto Trucking relies on, however, are much too thin a reed upon which to rest the broad waiver that it now seeks. This is particularly true because the relevance of the materials being sought are, at best, tangential. In the section of his report opining that the forensic investigation was "thorough, proper, and unbiased," French never even mentions the investigations into other employees. (*See* Vu Decl., Ex. 2 at 9-25.) Indeed, he did not need to. The fact that Waymo also investigated Radu Raduta and Sameer Kshirsagar – two of the Former Employees within the scope of the waiver – shows that the investigation into Anthony Levandowski was not biased.

Further, none of French's statements supports Otto Trucking's allegation that Waymo "used parts of the investigation of other employees" as a sword to attack Otto Trucking's expert. In the Background section of his report, French refers generally to the fact that Google investigated other employees, but he does not discuss any parameters or specific details of any investigations beyond those of the Former Employees. (*Id.*) His discussion is limited to the mere existence of other investigations, a fact that Otto Trucking has been aware of since at least Waymo's August 30 production and discussed on the record during the August 31 hearing. In other words, this is not a situation where Waymo is using certain details about the investigation into other employees as a sword and holding other details back as privileged and work product. French merely references the undisputed fact that Waymo investigated other employees, nothing more and nothing less.

## IV.     The Time Frame of the Existing Subject Matter Waiver Covers the Entire Period of the Waived Subject Matter

Otto Trucking also argues that Waymo improperly limited the time frame of its waiver because the French report cited to an email that allegedly "revealed for the first time" that Waymo's investigation actually began on August 4, 2015.  (Otto Trucking Br. at 2.)  This argument hardly passes the good faith test.  Waymo produced the email at issue on August 16, before the Court's August 18 Order and before the August 24 close of fact discovery.  (*See* Nardinelli Decl. ¶ 6.)  In the email, Chris Urmson (Levandowski's boss) recommends that the company fire Levandowski because of rumors that he was attempting to convince a group of Waymo engineers to leave Waymo for Uber.  There are no attorneys on the email, and Waymo has never claimed privilege over it.  Defendants have questioned five Waymo deponents about this email without drawing a privilege objection.  Otto Trucking's suggestion that it was "revealed for the first time" by the French Report is yet another misrepresentation.

In short, the email from the French Report merely describes a suspicion raised by Levandowski's former manager that is completely separate and apart from the forensics investigation into the Former Employees.  One individual raising the alarm as to the need for an investigation does not mean that the forensic investigation at issue here began in August 2015.  As Otto Trucking is well aware, Levandowski did not download the 14,000 files at issue until December 11, 2015, and Waymo did not begin collecting Levandowski's laptops until his exit interview on January 27, 2016.  Further, Waymo did not begin to investigate the possibility that Levandowski stole files until July 29, 2016, and KVP did not generate its memo outlining the different phases of the investigation until a week later on August 4, 2016.  The existing time frame for the waiver of February 2016 through February 2017 is appropriate and should be maintained.

## V.     The Court Appropriately Quashed the KVP Subpoena

This Court appropriately quashed Otto Trucking's subpoena directed to KVP on August 28, and Judge Alsup upheld the Court's Order on October 6.  Otto Trucking argues that the Court should revisit its order because when the Court quashed the KVP subpoena, it did not have the benefit of the September depositions of Brown, Gudjonsson, and Zbrozek.  Otto Trucking's argument rings hollow.  It has failed to show that these depositions showed that KVP possesses relevant, non-duplicative information within the scope of the waiver.  Instead, Otto Trucking points exclusively to testimony in which Brown and Gudjonsson could not recall certain specific information, but makes no showing that KVP is in sole possession of the missing information, or that the information is relevant.

Otto Trucking's argument based on the French testimony is similarly misplaced.  French's statements about information provided to Brown were mere conjecture:  "Mr. Brown **may not** have access to or **may not** even know about" certain information.  (Otto Trucking Br. at 5 (citing Vu Decl., Ex. 10 at 221:19-22).)  Moreover, the question posed to French (omitted in Otto Trucking's brief) was not whether KVP possessed unique knowledge, but whether KVP appropriately shared knowledge amongst different employees at Google.  French responded merely that it was "not uncommon for the attorneys and the legal folks to get access to documents and logs and pass them down to other individuals and divisions," not that "KVP attorneys had access to different information than Waymo employees," as Otto Trucking misrepresents.  (Otto Trucking Br. at 5.)  Further, Waymo has already produced all documents between KVP, Brown and others on the Google forensics team.  There is no other information in the possession, custody or control of KVP that is within the proper scope of the waiver and that has not already been produced.

6

Respectfully,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven
cc:      All counsel of record; Special Master John Cooper