1
2
3
4                       UNITED STATES DISTRICT COURT
5                      NORTHERN DISTRICT OF CALIFORNIA
6
7    WAYMO LLC,                           Case No. 17-cv-00939-WHA   (JSC)
8               Plaintiff,
9         v.                              **ORDER RE: DISCOVERY DISPUTES**
10   UBER TECHNOLOGIES, INC., et al.,      Re: Dkt. Nos. 1995
11              Defendants.
12
13        As discovery has closed, Waymo must obtain this Court's permission before Defendants
14   are required to produce additional discovery.  Waymo makes several requests.  The Court heard
15   oral argument on Monday, October 23, 2017.
16        **1.     Levandowski's Laptops Used at Uber**
17        On September 21, 2017, in response to the Federal Circuit's ruling, Uber produced many
18   documents previously withheld on privilege grounds.  One of those documents was an April 21,
19   2017 email from Angela Padilla, Uber's in-house counsel, asking Anthony Levandowski to
20   provide Uber two laptops in his possession that he used for Uber work while employed at Uber.
21   Waymo seeks to compel Defendants to produce the laptops or their forensic images for inspection.
22   It claims it was not aware of the laptops' existence until it received the email. In the alternative,
23   Waymo asks for a 30(b)(6) of "Defendants" to determine what happened to the laptops.
24        Uber represents that it does not possess Mr. Levandowski's lap tops and that it is unaware
25   of where they are located.  (Dkt. No. 2018 at 2.)  It also explains that Goodwin Procter LLP,
26   counsel for Mr. Levandowski in Google's arbitration proceedings, "agreed to search the two
27   personal computers for the 14,000-plus filenames referenced in Waymo's preliminary injunction
28   papers, the hash values for those 14,000-plus files, and Uber's and Waymo's search terms for

those files." (*Id.*)  Again according to Uber, Goodwin produced those results to Uber who produced responsive documents to Waymo on June 19, 2017.

Otto Trucking contends that it does not know anything about the laptops. (Dkt. No. 2019.)

On the morning of the hearing on Waymo's motion to compel inspection of the laptops, Waymo filed a spoliation motion before the district court.  (Dkt. No. 2052.)  Among other things, Waymo argues that Defendants deliberately failed to preserve the laptops such that they could be produced to Waymo.  (*Id.* at 5.)  In light of this motion, the district court is in the best position to determine if additional discovery on this issue is warranted or whether the record is sufficiently developed.  Accordingly, the request is referred to the district court for decision.

**2.      Ottomotto Devices Never Searched by Stroz or Uber**

As explained at oral argument, Waymo asks Uber to represent that it has searched the devices belonging to or used by the Diligenced Employees that are in Uber's possession, custody or control. In its written opposition and at oral argument (and without waiving its argument that Waymo's request comes too late), Uber represents that it has done so.  (Dkt. Nos. 2018 at 3; 2020 ¶¶ 2, 3.)  Waymo's request for something more is denied.

**3.      Stroz Report Drafts**

Waymo seeks production of any drafts of the Stroz Report.  The earliest withheld draft is dated July 2016.  Uber argues that the drafts are privileged attorney work product.

Waymo previously served a subpoena on Stroz seeking the Stroz Report "and any other reports or analyses created by Stroz pursuant to its retention by Uber and Otto." (Dkt. No. 670 at 9.) Uber objected to Stroz's compliance with the subpoena.  In particular, it argued that it did not waive any privilege in any post-April 11, 2016 communications with Stroz or post-April 11, 2016 work-product." Uber and Ottomotto had signed the Put-Call Agreement on that date. The Court overruled Uber's objection:

> In opposing Waymo's motion to compel production of the Stroz Report, Uber chose not to address the Term Sheet (other than to allude that it existed) and ignored all together the Put Call Agreement.  (Dkt. No. 566 at 17 n.2.)  It is too late for it to now make a new argument that it at least had a common legal interest by the time of the signing of the Put Call Agreement and thus did not waive work product protection in the final Stroz Report. As for any

other post-April 11, 2016 communications, they must be on Uber's privilege log and thus the Court will address them in connection with the hearing on Uber's privilege log scheduled for Friday, June 22, 2017.  If they are not on Uber's privilege log, Uber has waived any privilege and they must be produced by Tuesday, June 27, 2017.

(Dkt. No. 670 at 7-8.)  Following the June 22, 2017 hearing, the Court ruled that Uber had not waived the attorney-client privilege or attorney work product for documents shared after the Put Call Agreement was signed, that is, April 11, 2016.  The Court reasoned that there was no wavier because after the Agreement was executed, Uber and Otto (and Mr. Levandowski and Mr. Ron) shared a common legal interest in defending claims brought by Waymo.  (Dkt. 731 at 3-4.)  This ruling did not apply to the final Stroz Report, dated August 2016, because, as recounted above, the Court had previously ruled that Uber had waived any argument as to the final Stroz Report based on the April 11, 2016 date because it chose to resist discovery of the Report without disclosing the Term Sheet or Put Call Agreement. (Dkt. No. 670 at 7-8.)

Uber, Otto Trucking, Mr. Levandowski, Mr. Ron and/or Stroz appealed this Court's orders compelling production of the Stroz Report and compelling compliance with the Stroz subpoena. The district court subsequently affirmed those orders.  (Dkt. Nos. 685, 745.)  In affirming the order requiring compliance with the Stroz subpoena, the district court addressed Uber's objection that  Stroz may have responsive documents that Uber had not placed on its privilege log given the volume of responsive documents.  The district court ruled:

> To be clear, the requests for production at issue seek "documents and communications" pertaining to Stroz Friedberg's due diligence investigation and report, not "all documents and communications" generally as Uber suggests (*see* Dkt. No. 581-1 at 12–16). Moreover, per the undersigned judge's standing order, a party asserting privilege must provide a privilege log "at the time of assertion." *See* Judge Alsup's Supplemental Order to Order Setting Initial CMC in Civil Cases (effective Mar. 17, 2016), http://www.cand.uscourts.gov/whaorders.  Thus, insofar as Uber has asserted any privilege beyond the scope of its initial privilege log (provided pursuant to the expedited discovery order dated March 16 (Dkt. No. 61)) during the course of this litigation, it should have already supplemented that privilege log accordingly.

(Dkt. No. 745 at 3.)  Compliance with the orders of production was subsequently stayed pending Mr. Levandowski's appeal of the orders to the Federal Circuit. *See Waymo LLC v. Uber Technologies, Inc.*, Docket No. 17-01904, Dkt. No. 5 (Fed. Cir. June 30, 2017).

The Federal Circuit affirmed the production orders by opinion filed September 13, 2017. Uber produced the Stroz Report to Waymo that same day. Three days later Uber served Waymo with a revised privilege log that for the first time included Stroz Report drafts. (Dkt. No. 1994-8 (privilege log entries 1904, 2270, and 2990).) Uber continued to claim the Stroz Report drafts are protected by attorney work product in its revised privilege log served September 27, 2017. (Dkt. No.1994-9 (privilege log entries 1904, 2270, and 2990).) Waymo's motion to compel followed. The motion is granted.

Uber has waived it attorney work product privilege in the draft Stroz Reports. In connection with its order compelling compliance with the Stroz subpoena, this Court held that Uber had waived the privilege for any responsive documents not on Uber's privilege log. (Dkt. No. 670 at 8.) The Stroz Report drafts are indisputably responsive to that subpoena. And it is equally undisputed that they were not on Uber's privilege log as of the date of that Order, June 21, 2017; indeed, Uber did not place them on a log until nearly three months later. Thus, under the Order's plain language, any privilege with respect to the drafts was waived.

Uber nonetheless argues that it has not waived the privilege because it did not have the opportunity to log the drafts by the time of the Court's June 21, 2017 Order. It made this same argument (although not specifically about the drafts) to the district court in objecting to the order compelling compliance with the Stroz subpoena. In response, the district court ruled as follows:

> it remains a mystery what responsive "documents and communications" could fall outside the scope of both the expedited discovery order and the privilege issues that have been litigated thus far in connection with Stroz Friedberg's due diligence investigation and report. Uber offered no details about this theoretical category of "documents and communications" before Judge Corley or in its instant motion for relief. Supposing for the sake of argument, however, that this theoretical category exists and truly implicates new claims of privilege that Uber has had no opportunity to assert, it does not appear that Judge Corley intended her order to have any preclusive effect on such claims. Her order, read in context, simply responded to Uber's specific argument concerning documents and communications that have long been at issue and over which Uber either has or should have already asserted any claims of privilege.

(Dkt. No. 745 at 3.) The question then is whether Uber "should have asserted" privilege over the Stroz Report drafts and the time the subpoena was being litigated. It should have. Even though

United States District Court
Northern District of California

1    the drafts were not shared with Uber, it could not have been a surprise that drafts existed.  Stroz

2    was and is Uber's agent.  Uber had to have known or at least should have inquired if drafts

3    existed.  Apparently it did not do so until after the Federal Circuit ruling.  Under the district

4    court's standing order, this assertion of privilege came too late.  (Dkt. No. 745 at 3.)  Uber shall

5    produce the drafts on or before noon on Tuesday, October 31, 2017.

6           **4.       Uber's Software Demonstrations and Test Results**

7           In light of the district court's deferral of Waymo's motion to amend its trade secret list

8    until after trial, Waymo's software request is denied without prejudice to renewal following trial

9    and the district court's allowance, if any, of a trade secret claim.

10          **5.       Morrison & Foerster's Possession of Levandowski Files**

11          Waymo asks the Court to compel Uber to provide in admissible form evidence that the

12   photographs, etc. that it pulled from the Morrison & Foerster (MoFo) "slivers" came from Mr.

13   Levandowski's mac book.  MoFo (in its capacity as Mr. Levandowski's previous counsel), and at

14   the Court's encouragement, agreed to do so.  MoFo's efforts are without prejudice to Uber's

15   argument that such evidence should not be admissible against Uber as evidence that MoFo's

16   possession was essentially Uber's possession.  Whether MoFo's possession can be attributed to

17   Uber is an issue for the trial judge and not a discovery issue.

18          Any objections to this Order shall be filed with the district court on or before close of

19   business on Monday, October 30, 2017.

20          This Order disposes of Docket Nos. 1995, 2019.

21          **IT IS SO ORDERED.**

22   Dated: October 27, 2017

23

24

25                                              JACQUELINE SCOTT CORLEY
                                                United States Magistrate Judge
26

27

28

                                                5