1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Charles K. Verhoeven (Bar No. 170151)
2   charlesverhoeven@quinnemanuel.com
    David A. Perlson (Bar No. 209502)
3   davidperlson@quinnemanuel.com
    Melissa Baily (Bar No. 237649)
4   melissabaily@quinnemanuel.com
    John Neukom (Bar No. 275887)
5   johnneukom@quinnemanuel.com
    Jordan Jaffe (Bar No. 254886)
6   jordanjaffe@quinnemanuel.com
    50 California Street, 22nd Floor
7   San Francisco, California 94111-4788
    Telephone:     (415) 875-6600
8   Facsimile:     (415) 875-6700

9  Attorneys for WAYMO LLC

10                 UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13  WAYMO LLC,                          CASE NO. 3:17-cv-00939

14              Plaintiff,              **PLAINTIFF WAYMO LLC'S COUNTER-**
                                        **CRITIQUE OF DEFENDANTS' CRITIQUE**
15        vs.                           **AND PROPOSED ADDITIONS (DKT. 2076)**
                                        **TO TENTATIVE JURY INSTRUCTIONS**
16  UBER TECHNOLOGIES, INC.;            **ON TRADE SECRET**
    OTTOMOTTO LLC; OTTO TRUCKING LLC,   **MISAPPROPRIATION AND TENTATIVE**
17                                      **SPECIAL VERDICT FORM (ON**
              Defendants.               **MISAPPROPRIATION CLAIMS) (DKT.**
18                                      **2010)**

19

20                                      Judge: The Honorable William Alsup

21                                      Trial Date: December 4, 2017

22

23

24

25

26

27

28

Waymo submits the following counter-critique of Defendants' critique and proposed additions (Dkt. 2076) ("Defendants' Critique" or "DC") to the TJIs and Form (Dkt. 2010).[1]

## I.   INSTRUCTIONS ON MISAPPROPRIATION BY DISCLOSURE SHOULD BE GIVEN (TJI##2 & 9; FORM##1 & 2).

Under both the CUTSA and DTSA, misappropriation by disclosure is an independent basis for liability and damages.  Dkt. 2077 at 1.  Waymo has repeatedly asserted disclosure as a basis for liability, including in the Joint Proposed Pretrial Order.  Dkt. 1725 at 1.  The jury should be instructed accordingly.  In response, Defendants argue that Waymo's damages expert calculates damages solely based on alleged use, and thus the jury may not award damages based on disclosure.  DC at 1.  But the expert reports are irrelevant, as expert testimony is not required for a jury to award damages:

> In addition, expert testimony may not be necessary for the jury to award reasonable royalty damages. Courts have provided several criteria to determine whether a plaintiff is entitled to a reasonable royalty. *See, e.g., LinkCo, Inc.,* 232 F.Supp.2d at 187, n. 7; *Georgia–Pacific Corp.,* 318 F.Supp. at 1120; *Vermont Microsystems,* 88 F.3d at 151–52 (citing *University Computing Co. v. Lykes–Youngstown Corp.,* 504 F.2d 518, 539 (5th Cir.1974)) ("To approximate the parties' agreement, had they bargained in good faith at the time of the misappropriation, the trier of fact should consider such factors as the resulting and foreseeable changes in the parties' competitive posture; the prices past purchasers or licensees may have paid; the total value of the secret to the plaintiff, including the plaintiff's development costs and the importance of the secret to the plaintiff's business; the nature and extent of the use the defendant intended for the secret; and finally whatever other unique factors in the particular case which might have affected the parties' agreement, such as the ready availability of alternative processes."). These cases demonstrate that expert testimony is not required for a jury to award damages, although expert testimony may be a factor in their analysis. The Court finds that the jury can determine whether there is sufficient evidence the award of a lump-sum award or other royalty. *Id.*

*Secure Energy, Inc. v. Coal Synthetics, LLC*, 708 F. Supp. 2d 923, 933 (E.D. Mo. 2010) (Missouri UTSA case); *see also Spin Master, Ltd. v. Zobmondo Ent., LLC*, 2011 WL 13127349, at *10, n.22 (C.D. Cal. Sept. 15, 2011) (subsequent history omitted) (quoting *Secure Energy* for the above-described proposition).  Moreover, the jury could reasonably conclude that Defendants' disclosure of Waymo's trade secrets was a substantial factor in causing Waymo to suffer the use-based damages calculated by Waymo's damages expert.  For example, the jury may reasonably conclude that

---

[1]  Unless otherwise noted, capitalized terms are as defined in Waymo's Critique of the TJIs and Form (Dkt. 2077) and Waymo objects to *each* request and assertion of law or fact in Defendants' Critique, reserving its right to assert additional objections when the Court specifies.  Waymo also renews its request for the instructions Waymo proposed in the Joint PJIs.

1   Ottomotto's disclosure of a trade secret to Uber is a substantial factor in causing unjust enrichment

2   damages based on Uber's subsequent use.  In that circumstance, the jury could consider Ottomotto's

3   disclosure as contributing to Uber's unjust enrichment in more than a remote or trivial way, which is

4   all that is required for liability.  *See* TJI#15.

## II.   INSTRUCTIONS ON MISAPPROPRIATION BY ACQUISITION SHOULD BE GIVEN (TJI##2, 9 & 12; FORM##1 & 2).

Misappropriation by acquisition is an independent basis for liability and damages that Waymo

has pled.  *See* Dkt. 2077 at 1-2.  Moreover, as explained above, the jury does not need expert

testimony to award damages based on misappropriation by acquisition, and may in fact base such a

finding on expert testimony regarding use-based damages so long as it connects the acquisition to the

use-based damages at issue.  *See supra* § I.  The jury should thus be instructed on acquisition.

## III.   TJI#12 SHOULD BE GIVEN AND DEFENDANTS' PROPOSED MODIFICATIONS SHOULD BE REJECTED (TJI#12).

TJI#12 is an important and necessary instruction to mitigate potential jury confusion, error,

and prejudice to Waymo.  Defendants argue that TJI#12 should not be given because (i) an agent's

knowledge of a trade secret cannot be imputed to a principal and (ii) acquisition is not properly before

the jury.  *See* DC at 2.  Alternatively, Defendants argue that TJI#12 should be amended.  These

arguments should be rejected.

*First*, TJI#12 already reflects that Waymo bears the burden of proving that MoFo or Stroz

acquired "a trade secret as an agent of a defendant…."  Dkt. 2010 at 6 ("if *Waymo* proves…")

(emphasis added).  Defendants' proposed amendment would place the additional burden on Waymo to

show that MoFo or Stroz was "*under an obligation to disclose* the details of the Alleged Trade Secret

to" a defendant.  DC at 3 (emphasis added).  Waymo has no burden under the law to prove the

existence of such a positive obligation.  Rather, as anticipated by TJI#12, if Waymo meets its burden

of proving an agency relationship, Defendants may counter with an affirmative defense—for which

*they* bear the burden—that "the agent owes a duty to another ***not*** to disclose the fact to the principal."

Dkt. 824 at 1-2 (citation omitted) (emphasis in original).  Defendants have provided no support for the

proposition that Waymo should bear this burden, which runs contrary to the general rule this Court has

previously noted.  *See* DC at 3-4; *see also* 07/26/17 Hr'g Tr. at 23:10-13 (The Court:  "Normally what

1 would happen is the jury is sitting over there. Waymo invokes the general rule, *puts the onus on you to*
2 *prove the exception.*") (emphasis added); *id.* at 44:11 (The Court:  "How are [Defendants] going to
3 prove that [the agent's revealing trade secret information to the Defendants] did not occur?").

4    *Second*, there is no need to "clarify" that Waymo bears the burden of proving that the materials
5 received by Stroz or MoFo are trade secrets as TJI#12 already references "***Alleged*** *Trade Secrets*"
6 whose definition requires such proof.  *See* TJI#2.  Defendants' proposal is repetitive and prejudicial.

7    *Third*, similarly, there is no need to modify TJI#12 to add "improperly" before "acquired"
8 because TJI#10 instructs the jury that "acquisition" can occur only through improper means.  Again,
9 Defendants' proposal is unnecessary, repetitive, and prejudicial.

10    *Fourth*, Defendants' additional sentence describing "acquisition" as  "pointed conduct *by the*
11 *Defendant* intended to gain or obtain as *its own*, or to gain the ownership of, the trade secret" is
12 unnecessary, confusing, and contrary to law.  *See* DC 3-5 (emphasis added).  It improperly focuses on
13 the principal's intent, rather than its agent's, which is the point of imputation.  Similarly, while
14 Defendants may argue that possession of the stolen materials is not "acquisition," instruction as to one
15 possible fact pattern that might not constitute misappropriation is unnecessary and highly prejudicial.
16 *See* Dkt. 1729 at 15 (addressing Joint JPI at 43—namely, Defendants' proposed instruction on
17 "passive or inadvertent receipt" of trade secret information).  This is particularly true as Waymo
18 contends that this instruction should include Mr. Levandowski as Defendants' agent.  *See* Joint JPIs at
19 46-47.  Most importantly, Defendants' proposed addition—a dictionary definition cited by a court
20 which was not instructing a jury—provides little clarity on the meaning of "acquires."  *See* DC at 4-5
21 (quoting *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 222–23 (Cal. Ct. App. 2010)
22 (subsequent history omitted)).  Rather, it raises more questions regarding the definitions of "pointed
23 conduct,"  "gaining the ownership," or even the term "acquire" itself.  By contrast, TJI#10 actually
24 defines "improper" acquisition—no more is necessary.

25    *Fifth*, Defendants rely on *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790 (9th Cir.
26 1976), to argue that an agent's knowledge cannot be imputed to a principal, DC at 2-3 (citing Dkt.
27 1735 at 50–51; Dkt. 824 at 2–8), and imputation should only be found where there is actual
28 communication of the trade secret to the principal, DC at 5-6.  But *Droeger* is inapposite.  *Droeger*

was decided 41 years ago under common law, before the enactment of the CUTSA, which specified that both "acquisition" and "disclosure" are equal and alternate bases for liability. *See* Cal. Civ. Code § 3426.1(b)(1)-(2); *see also* 18 U.S.C. § 1839(5)(A)-(B) (equivalent under the DTSA). Defendants' attempt to read out of the statute two of the three paths to misappropriation *without winning, or even seeking summary judgment or judgment as a matter of law*, must be rejected. *See supra* §§ I & II. In addition, the agent in *Droeger* acquired the secret through legitimate means; the jury in *Droeger* did not find, as the jury may here, that the principal knew or should have known that its agent had acquired the trade secrets through improper means or disclosed the same. 541 F.2d at 791. And finally, Defendants' reading would yield absurd results by, for instance, exempting from liability principals who expressly authorized their agents to *acquire* and/or *disclose* trade secrets to a third party (for money or otherwise), so long as the principals themselves did not actually receive them. That is not the law.

## IV.   OTTO TRUCKING SHOULD NOT BE DELETED FROM TJI#13.

Otto Trucking should not be removed from TJI#13. Instead, "employees . . . of Otto Trucking" should be replaced by "founders, principals, or managing members of Otto Trucking" to reflect that Otto Trucking can be directly and vicariously liable for actions taken by those parties, *see* Dkt. 2056 at 1, 11-16.

## V.   DEFENDANTS' PROPOSAL REGARDING THE MEASURE OF RECOVERY MUST BE MODIFIED AND SHOULD CONFORM TO THE EVIDENCE (TJI#17).

Defendants' proposed measure of recovery is flawed in several respects. *First*, it improperly excludes an entire measure of recovery—namely, reasonable royalty damages available from the jury under the DTSA. *See* Dkt. 2077 at 4-9. *Second*, instructing the jury to determine the "***dollar***" value of the benefit incorrectly and prejudicially implies that a defendant cannot be unjustly enriched other than by receipt of a direct pecuniary benefit. This is not the law, which also recognizes non-pecuniary benefits, even if these are later boiled down by the jury to set amounts. *Third*, there is no need to depart from the first sentence of the 2017 edition of CACI 4410's unjust enrichment instruction based on one unpublished 20-year old Federal Circuit opinion. CACI's drafters had ample time to consider that opinion, and indeed, CACI 4410 already reflects that the benefit must be one "that would not have

been achieved except for [defendant's] misappropriation."  Moreover, Defendants apparently misunderstand Waymo's position, as Waymo does not contend that unjust enrichment damages may be based on unrealized, hypothetical benefits.  *See* Waymo's forthcoming Response to Dkt. 2050. *Fourth*, even if the Court determines that *University Computing v. Lykes-Youngstown*, 504 F.2d 518 (5th Cir. 1974) and its progeny no longer apply under the CUTSA, and unjust enrichment is not measured from the time of first misappropriation, there is no indication that similar considerations apply to the DTSA.  Accordingly, the Court should give separate instructions on the measure of damages under the CUTSA and DTSA.  *Finally*, this instruction would be most useful to the jury if tailored to the evidence actually presented at trial.  *See* Dkt. 2077 at 10.

## VI.   DAMAGES SHOULD NOT BE ITEMIZED BY TRADE SECRET (TJI##16 & 18).

Trade secret damages do not need to be calculated on a trade secret-by-trade secret basis:

> Defendants first argue that the damages award is speculative because there was no testimony regarding how to apportion damages on a trade secret-by-trade secret basis. (Def.'s Mot. at 2.) In trade secrets claims, however, damages need not be calculated with absolute precision. *Tri–Tron Int'l v. Velto*, 525 F.2d 432, 437 (9th Cir.1975) ("The general rule that prohibits evidence of speculative profits does not apply to uncertainty as to the *amount* of the profits which would have been derived, but to uncertainty or speculation as to *whether* loss of profits was the result of the wrong and whether any such profits would have been derived at all.") (emphasis added); *see also* Trade Secrets Practice in California (Cont.Ed.Bar 2nd ed.1996), § 12.20, pp. 438–39 ("Although the plaintiff must prove damages, complete precision is not required. Evidence of speculative profits, speculative lost profits, or speculation as to the *existence* of damages are improper, but once the existence of damages or lost profits has been established, the courts are much more lenient in determining the *amount* of damages." (citations omitted). Damages need only rest on a "reasonable basis" (*Tri–Tron*, 525 F.2d at 436; *see also Stott v. Johnston*, 36 Cal.2d 864, 874, 229 P.2d 348 (1951); *American Loan Corp. v. California Commercial Corp.*, 211 Cal.App.2d 515, 524, 27 Cal.Rptr. 243 (1963), and unless "the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork," the jury's award must be upheld. *Los Angeles Memorial Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1360 (9th Cir.1986); *see also Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir.2003).

*ATS Prod. Inc. v. Ghiorso*, 2012 WL 253315, at *1 (N.D. Cal. Jan. 26, 2012).  Here, Form##5 and 6 already require jurors to apportion damages between (i) dollar amounts and (ii) days for each of three Defendants.  Subdividing damages further by individual trade secret would compel jurors to compute damages in both dollars and days for nine trade secrets, with distinct awards for three companies—a total of fifty-four separate lines.  A verdict form of this length and complexity is burdensome, confusing, and not required by law.

-5-

1   DATED:  October 27, 2017                QUINN EMANUEL URQUHART & SULLIVAN, LLP

2                                           By  */s/ Charles K. Verhoeven*

3                                               Charles K. Verhoeven
                                                Attorneys for WAYMO LLC
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28