QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, <br><br> Plaintiff, <br><br> vs. <br><br> UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, <br><br> Defendants. | CASE NO. 3:17-cv-00939 <br><br> **PLAINTIFF WAYMO LLC'S RESPONSE TO DEFENDANTS' NOTICE OF SUBSEQUENT CASE HISTORY (DKT. 2050)** <br><br> Trial Date:   December 4, 2017 |

In violation of the Court's Local Rules, Defendants have submitted a purported "Notice of Subsequent Case History" to alert the Court to a 20-year old, unpublished Federal Circuit decision. For the reasons explained below, Defendants' Notice is both improper and irrelevant.

## I.   DEFENDANTS' NOTICE IS IMPROPER.

Civil Local Rule 7-3(d) could not be clearer:  once briefing is closed, "no additional memoranda, papers or letters may be filed without prior Court approval."  Civil Local Rule 7-3(d)(2) permits counsel to bring recent judicial opinions to the Court's attention, but only if:  (i) they were "published after the date the opposition or reply was filed"; and (ii) if counsel does so "without argument."  Defendants flout both requirements here and, therefore, the Court should reject Defendants' submission for failure to comply with the Local Rules.

In an apparent attempt to justify their late and improper submission, Defendants suggest in a footnote that "the expedited briefing schedule did not provide for reply *Daubert* briefs."  (Dkt. 2050 at 1 n.1.)  But the parties had a full hearing on Defendants' *Daubert* motion and Defendants never raised this issue.  Moreover, Defendants already filed *two supplemental briefs* attempting to bolster their original *Daubert* motion, the first to add highlighted passages of Mr. Wagner's deposition testimony (Dkt. 1787), and the second to add instances where courts have allegedly excluded Mr. Wagner's testimony in the past.  (Dkt. 1852.)  By not raising their arguments regarding a 1997 Federal Circuit opinion in *Litton Sys., Inc. v. Ssangyong Cement Indus. Co.*, 107 F.3d 30 (Fed. Cir. 1997) in those earlier submissions, Defendants have waived these new arguments.

## II.   DEFENDANTS' SUPPLEMENTAL AUTHORITY IS IRRELEVANT TO THE ISSUES IN THE WAGNER *DAUBERT* MOTION.

Even if the Court indulges Defendants' improper and late submission (and it should not), nothing about Defendants' submission moves the needle on their *Daubert* motion.  As a preliminary matter, the *Litton* court was addressing damages for an unfair competition claim, not trade secret misappropriation.  *Litton Sys., Inc. v. Ssangyong Cement Indus. Co.*, 1997 WL 59360, at *8 (Fed. Cir. 1997) ("The district court's theory of unjust enrichment as encompassing unrealized expected gain, however, is unsupported in the law of unfair competition and cannot

serve as a valid basis for an award of damages in this case."). Although the court analyzed the unfair competition claim by looking to the remedy provisions of the California Uniform Trade Secrets Act, *Litton* did not involve claims under the Uniform Trade Secrets Act or the Defend Trade Secrets Act. The decision in *Litton*, therefore, is not controlling for Waymo's CUTSA and DTSA claims here.

Waymo cited *Litton* to rebut Defendants' argument that Mr. Wagner's reliance on Defendants' estimations of their accelerated development was unreliable because Defendants' estimations have changed over time. (Dkt. 1777-3 at 8.) Specifically, Waymo pointed to *Litton* as support for the proposition that it was reasonable for Mr. Wagner to rely on Defendants' estimations of their accelerated development "as of the date of misappropriation," rather than on an ad hoc basis. (*Id.*) Even so, contrary to Defendants' suggestion, *Litton* is not the "primary" case that Waymo cites for that proposition. In fact, Waymo first and foremost relies on *University Computing v. Lykes-Youngstown*, 504 F.2d 518, 536 (5th Cir. 1974) ("the law looks to the time at which the misappropriation occurred to determine what the value of the misappropriated secret would be to a defendant who believes he can utilize it to his advantage"), and *W.L. Gore & Assoc. v. GI Dynamics*, 872 F. Supp. 2d 883, 890-91 (D. Ariz. 2012) (allowing unjust enrichment for trade secret misappropriation under Arizona UTSA based on defendant's future models even where "neither company [had] brought a product to market yet" because a plaintiff "need not show damages with absolute precision or certainty"; instead, it is enough to show that defendant attributed some value to "entering the market early," even though "the process of product development remains underway"). (Dkt. 1777-3 at 7-8.)

Defendants argue that Waymo is seeking to recover unjust enrichment damages based on expected gain that was never actually realized. That is not correct. To be clear, Mr. Wagner calculates unjust enrichment damages based on Defendants' realized gains, using Defendants' own estimations of the present value of accelerated development from acquiring Otto. (Dkt. 1615 at V(B)(1).) That is no different than the damages expert's accepted methodology in *W.L. Gore*, in which the court concluded:

GID and Dr. Ugone include a number of internal Gore documents demonstrating

> that, as of 2006, Gore itself placed substantial value on the technology, and properly discounted it based on the risk that a product may never reach the market. . . . Gore itself calculated the cost of a one-year delay of bringing an intestinal sleeve to market at $600 million. . . . From Gore's sophisticated method for calculating the value of bringing a product to market and Dr. Ugone's report, a reasonable jury could conclude that GID was damaged or Gore was unjustly enriched by the misappropriation of GID's trade secrets.

872 F. Supp. 2d at 891 (internal citations omitted); *id.* at 893 ("The record contains detailed analyses of the value to Gore of entering the market early, from which a jury could conclude that Gore was enriched, even though the process of product development remains underway.").

Here, Defendants expected that acquiring Ottomotto would accelerate their development timeline (Dkt. 1777-3 at 5), and that expectation has panned out. (Dkt. 1615 at 94-96.) Although it took Waymo seven years to develop its in-house LiDAR systems (Dkt. 23 ¶ 9), Defendants have made similar progress in a fraction of the time. (Dkt. 1615 at 94-96.) Defendants may dispute *whether* their accelerated development was due to the use of Waymo's trade secrets, but that is an issue for the jury to decide. For all the reasons Waymo explained in its original opposition and at the hearing on Defendants' *Daubert* motion, Mr. Wagner's testimony is reliable, admissible, and will aid the jury in understanding and deciding damages issues in this case. Defendants' motion to exclude Mr. Wagner's testimony should be denied.

DATED: October 30, 2017                QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                       By */s/ Charles K. Verhoeven*
                                       Charles K. Verhoeven
                                       Attorneys for WAYMO LLC