QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S RESPONSE TO UBER'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF THE MAGISTRATE JUDGE (Dkt. 2128)**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: December 4, 2017 |

Uber fails to demonstrate that Judge Corley's October 27 ruling that Uber waived work product protection over Stroz Report drafts by failing to provide a privilege log until September 16 is clearly erroneous or contrary law. To the contrary, Judge Corley's Order correctly squares with the Court's prior Orders and the facts, and correctly applies the law.

Privilege issues surrounding the Stroz subpoena were litigated in June, when Uber moved to quash the subpoena on the grounds that it sought "Uber's protected attorney work product." (Dkt. 581 at 3.) As Judge Corley ruled in denying that motion, and as this Court ruled in upholding her order, Uber should have provided privilege logs for any Uber work product by no later than June 21, and failure to do so effected a waiver. (Dkt. 670 at 9; Dkt. 745 at 3.) The District Court carved out a limited, "theoretical category" from that waiver ruling: "new claims of privilege that Uber has had no opportunity to assert[.]" (Dkt. 745 at 3.) Judge Corley's October 27 Order found that Uber had the opportunity to assert privilege over drafts of the Stroz Report at the time the subpoena was being litigated because "Stroz was and is Uber's agent" and "Uber had to have known, or at least should have inquired if drafts existed." (Dkt. 2128 at 5.) Therefore, the Court found that Uber should have asserted work product protection over the drafts at that time. (*Id*. at 4-5.) The consequence of Uber's failure to inquire about drafts until August, or to provide privilege logs until after the Federal Circuit order in September, was the same waiver the Court already found occurred.

Uber may disagree with Judge Corley's factual findings and conclusions, but that is not a proper basis to vacate her Order. Under FRCP 72, a district judge considering objections to a Magistrate Judge's nondispositive order must defer to the order unless it is "clearly erroneous or contrary to law." *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991). "The reviewing court may not simply substitute its judgment for that of the deciding court." *Id.* (citing *United States v. BNS, Inc.*, 858 F.2d 456, 464 (9th Cr. 1988). Uber has not – and indeed cannot – carry its burden to show that Judge Corley's factual findings or waiver ruling were "clearly erroneous." They were not. *See, e.g.*, *United States v. Christensen*, 828 F.3d 763, 779 (9th Cir. 2015) (explaining that clear error review is deferential, and where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous). Accordingly, the Order should be upheld and the Stroz Reports drafts should finally be produced.

**BACKGROUND**

Waymo subpoenaed Stroz on May 10. (Dkt. 570-1.) Uber moved to quash the subpoena on June 9. (Dkt. 581.) In that motion, Uber argued that documents responsive to the subpoena – including "reports or analyses created by Stroz" – were "**Uber's** protected attorney work product." (*Id.* at 2-3, emphasis added). However, Uber did not identify drafts of the Stroz Report as among the reports or analyses that purportedly constituted Uber's attorney work product, let alone provide a privilege log for such drafts. On June 21, Judge Corley denied Uber's Motion to Quash, and compelled production of all "reports and analyses created by Stroz pursuant to its retention by Uber and Otto[.]" (Dkt. 670 at 9.) Judge Corley ruled that "[n]either Uber nor Levandowski has identified any other analyses or reports [than the Stroz Report] and thus neither has met its/his burden of showing that such reports or analyses are privileged from production." (*Id.*) Accordingly, Stroz was ordered to produce any such analyses by June 27. (*Id.*) Judge Corley did not stay her order at that time, and ruled that any objections to the Order must be filed with the district court by June 23.

Uber filed objections on the June 23 deadline, and the same day Judge Corley (from the bench) granted a stay until the District Court ruled on the objections. (Dkt. 727 at 2 n.2.) Uber argued that Judge Corley's ruling that Uber waived privilege over any documents not on its existing privilege logs was erroneous because "Stroz may have responsive documents that do not appear on any privilege log Uber has served. Uber should not be deemed to have waived privilege over communications or work product because it has not logged documents responsive to RFPs *served on a non-party* in a subpoena that was served after Uber served its privilege logs in response to the March 16 Order." (*Id.* at 2-3, emphasis in original.) However, Uber again failed to identify any Stroz Report drafts as Uber work product or provide a privilege log for such drafts. (*Id.*) On June 27, the District Court overruled all of Uber's objections, including its privilege log argument:

> Moreover, per the undersigned judge's standing order, a party asserting privilege must provide a privilege log "at the time of assertion." *See* Judge Alsup's Supplemental Order to Order Setting Initial CMC in Civil Cases (effective Mar. 17, 2016), http://www.cand.uscourts.gov/whaorders. Thus, insofar as Uber has asserted any privilege beyond the scope of its initial privilege log (provided pursuant to the expedited discovery order dated March 16 (Dkt. No. 61)) during the course of this litigation, **it should have already supplemented that privilege log accordingly**.

> Given the foregoing, it remains a mystery what responsive "documents and communications" could fall outside the scope of both the expedited discovery order **and the privilege issues that have been litigated thus far in connection with Stroz Friedberg's due diligence investigation and report**. Uber offered no details about this theoretical category of "documents and communications" before Judge Corley or in its instant motion for relief.  Supposing for the sake of argument, however, that this theoretical category exists and truly implicates **new claims of privilege that Uber has had no opportunity to assert**, it does not appear that Judge Corley intended her order to have any preclusive effect on such claims. Her order, read in context, simply responded to Uber's specific argument concerning documents and communications that have long been at issue and over which Uber either has or should have already asserted any claims of privilege.

(Dkt. 745 at 3, emphases added.)  The District Court stayed Judge Corley's order until July 5, "to give defendants and Levandowski an opportunity to seek emergency relief from the Federal Circuit," but noted that "any further stay must be requested from the Federal Circuit." (*Id.* at 6.)  Uber did not appeal, although Levandowski did and obtained a stay that was not lifted until September 13.  On September 16, three days after the Federal Circuit order, Uber belatedly provided a privilege log for Stroz Report drafts. (Dkt. 1994-8 ("Privilege Log Associated with Stroz Friedberg, LLC's September 16, 2017 Production of Documents, **Prepared by: Uber Technologies, Inc.**"), emphasis added.)

## ARGUMENT

Judge Corley's ruling that Uber has waived any work product protection over drafts of the Stroz Report by not providing a privilege log until September 16 is not clearly erroneous. Uber does not dispute Judge Corley's finding that drafts were responsive to Waymo's subpoena. (Dkt. 2128 at 4.)  Pursuant to the District Court's June 27 Order and standing order, Judge Corley correctly determined the drafts were not a "new" category of privilege that Uber had not had the opportunity to assert in June, and therefore that Uber waived any privilege by not asserting privilege then:

> The question then is whether Uber "should have asserted" privilege over the Stroz Report drafts and the time the subpoena was being litigated.  It should have.  Even though the drafts were not shared with Uber, it could not have been a surprise that drafts existed.  Stroz was and is Uber's agent.  Uber had to have known or at least should have inquired if drafts existed.  Apparently it did not do so until after the Federal Circuit ruling. Under the district court's standing order, this assertion of privilege came too late. (Dkt. No. 745 at 3.)

(Dkt. 2128 at 4-5.)  This ruling is well supported by the record.  As Judge Corley recognized at the hearing, "It's pretty obvious from reading [the Stroz Report] that there are likely going to have been

drafts." (Dkt. 2117 at 60:3-4.) Drafts of the Stroz Report are not an unknown category of potentially privileged documents that Uber could not have known about in June when the Stroz subpoena was being litigated. In opposition to Waymo's motion to compel, Uber asserted that it did not physically obtain copies of the drafts from Stroz until August 2017 when they were "made available to MoFo, as Uber's counsel in this litigation[.]" (Dkt. 2020 ¶ 8.) But Uber has offered no evidence – in the form of a declaration or otherwise – that anything prevented Uber from obtaining those documents from Stroz earlier. (*See generally* Dkt. 2018 at 3-4.) Based on this evidence, Judge Corley properly made the factual finding that Uber should have asserted privilege over the Stroz Report drafts before September, and accordingly ruled that Uber waived work product protection as a result of its delay.

Uber offers three arguments why Judge Corley's holding that Uber waived its attorney work product over drafts of the Stroz Report is "clearly erroneous." All three fail.

**First**, Uber argues that Judge Corley's holding that "under the [June 21] Order's plain language, any privilege with respect to the drafts was waived" as a result of Uber's failure to log them by that date is erroneous because "Uber 'had no opportunity to assert' privilege over drafts of the Stroz Report in June 2017." (Mot. at 3.) But the Court's conclusion was correct. The June 21 Order provides that if documents responsive to the subpoena "are not on Uber's privilege log, Uber has waived any privilege[.]" (Dkt. 670 at 8.) Because Uber has failed to show why it could not have obtained the Stroz Report drafts in June (or May, when the subpoena was served), it was not clear error to find that Uber had the opportunity to assert privilege over the drafts before August.

**Second**, Uber argues that "the Order erroneously concludes that Uber *should have known* there were drafts and therefore logged them earlier" because "as of June 2017, it was far from obvious that drafts existed." (Mot. at 3, emphasis in original.) However, to the extent Uber harbored any uncertainty over the existence of drafts of its own purported work product, Uber could have – and indeed, should have – required its agent Stroz to identify all drafts. Uber does not offer any evidence that it **could not** have obtained the drafts from Stroz in June, only that they **did not** until August.[1]

---

[1] For example, Uber asserts that "[i]t is undisputed that Uber and Uber's counsel never received drafts of the Stroz Report, which were in Stroz's sole possession until August 2017." (Mot. at 2.) In

And Judge Corley correctly recognized this important distinction: "**Even though the drafts were not shared with Uber**, it could not have been a surprise that drafts existed.  Stroz was and is Uber's agent.  Uber had to have known or at least should have inquired if drafts existed." (Dkt. 2128 at 4-5, emphasis added.) Uber argues that "Waymo did not properly litigate whether Stroz was Uber's agent" (Mot. at 3), but this is a new argument, as Uber did not dispute that assertion in the underlying briefing that led to Judge Corley's Order.  Moreover, the fact that Stroz is Uber's agent has been found in prior Court orders (*see*, *e.g.*, Dkt. 670 at 2), as well as by Uber's own admissions.  (*See*, *e.g.*, Dkt. 1994-8.)  The very Stroz engagement letters cited by Uber in its brief (Mot. at 3) state that Stroz was "jointly engag[ed]" by MoFo "**and its client Uber Technologies, Inc**." (Dkt. 824-1 at Ex. A and F, emphasis added.)  And even if Stroz were MoFo's agent on behalf of Uber, rather than Uber's agent directly, that would have no effect on whether Uber had the authority to obtain the Stroz Report drafts in June (rather than August), which is undisputed.

      **Third**, Uber argues that "the Order erroneously concludes that Uber's assertion of privilege over the drafts is untimely pursuant to this Court's standing order." (Mot. at 4.)  Uber's argument – that the standing order "does not appear to apply to a party filing a motion to quash a subpoena on a third party, particularly as it pertains to documents in the third party's sole possession," was already made in Uber's objections to the June 21 Order. (Dkt. 727 at 2-3.)  And the Court already rejected it as it applies to the Stroz subpoena. (Dkt. 745 at 3.)  Uber alternatively argues that it "did provide a privilege log 'at the time of assertion' of its privilege" because it "asserted privilege over the drafts after its counsel was afforded an opportunity to review the 10,000+ documents Stroz made available for review in August 2017 and promptly furnished a privilege log." (Mot. at 4.)  But Uber ignores that it purported to assert work product protection over "reports or analyses created by Stroz" when it moved to quash the subpoena.  Accordingly, Uber fails to carry its burden to show "clear error" in Judge Corley's ruling that by waiting until September to provide privilege logs, "[u]nder the district court's standing order, this assertion of privilege came too late." (Dkt. 2128 at 5.)

---

support of that assertion, Uber cites to three declarations, none of which explains why Uber waited until August 2017 to review Stroz documents for any purported **Uber** privilege, or what (if anything) prevented Uber from conducting that review in June. (*See*, *e.g.*, Dkt. 2020 [Rivera Decl.] ¶ 8.)

1 | For the foregoing reasons, the Court should deny Uber's Motion for Relief from
2 | Nondispispositive Pretrial Order of Magistrate Judge (Dkt. 2128).

DATED:  November 2, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Charles K. Verhoeven*
   Charles K. Verhoeven
   Attorneys for WAYMO LLC