MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzález@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Tel:  415.268.7000 / Fax:  415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Tel:  202.237.2727 / Fax:  202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019-6023
Tel:  212.336.8330 / Fax:  212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | Case No.   3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S REPLY TO WAYMO'S RESPONSE TO MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 2128)**<br><br>Trial Date: December 4, 2017 |

Defendants Uber Technologies, LLC and Ottomotto LLC (collectively, "Uber") submit this Reply to Waymo's Response to Uber's Motion for Relief from the Magistrate Judge's Order Re: Discovery Disputes (Dkt. 2128) ("Order").  As explained in Uber's motion, the Order is clearly erroneous in holding that Uber waived work product protection over drafts of the due diligence report prepared by Stroz Friedberg LLC ("Stroz Report") that Uber never received and therefore could not log by June 21 with the "bone-crushing" detail this Court requires.  Waymo's response does not change that.

***First,*** Waymo contends the Order correctly concludes that Uber *should have known* there were drafts and therefore logged them in June 2017 because, according to Waymo, "Uber does not offer any evidence that it **could not** have obtained the drafts from Stroz in June, only that it **did not** until August."  (Dkt. 2163 at 4 (emphasis in original).)  It further asserts that Uber had the authority to obtain the drafts from "its agent Stroz" in June, rather than August.  (*Id.*)  Waymo ignores both the evidence and the reality of its wide-ranging subpoena.

Waymo's contentions – and the Order – might make sense if Waymo's subpoena to Stroz sought only a narrow band of documents or specifically sought drafts of the Stroz Report.  But neither is true.  The subpoena was sweeping in scope, seeking not only all reports or analyses created by Stroz (RFP Nos. 6-8), but also all communications between Stroz and any Defendant, MoFo, or OMM regarding the report, Levandowski, or various other topics (RFP Nos. 15, 18, 19); documents regarding the forensic analysis performed by Stroz (RFP No. 13); documents regarding the input and directives Stroz received from MoFo and OMM regarding the conduct of the investigation (RFP No. 14); and all documents regarding the joint defense agreement (RFP No. 11).  (Dkt. 570-1 (copy of notice of subpoena).)  Although the subpoena specifically sought the Stroz Report and its exhibits and attachments (RFP No. 6), it did ***not*** specifically seek "drafts" of the Stroz Report.  (Dkt. 570-1.)  Nor did Waymo's briefing on the Stroz subpoena call out drafts of the Stroz Report.  Thus, among the many thousands of Stroz's documents that were potentially responsive to Waymo's broad requests, Uber had no reason to single-out drafts of the Stroz Report – apart from anything else – to obtain copies to log outside of the regular process in place.

DEFS. UBER AND OTTOMOTTO'S REPLY RE MOT. FOR RELIEF FROM PRETRIAL ORDER (DKT. 2128)
Case No. 3:17-cv-00939-WHA
la-1365048

1

1    Uber's counsel first obtained access to Stroz's documents – including the drafts – in August 2017, when Stroz made available to MoFo 10,000+ documents that it had identified for proposed production. (Dkt. 2020 ¶ 8; 10/23/17 Hr'g Tr. at 56:10-13.) Uber promptly worked to review the documents and log those over which it was asserting privilege, serving its log upon completion and just hours after Stroz transmitted its document production and privilege log to Waymo on September 16, 2017. (Dkt. 2020 ¶ 8.) Before Uber could obtain Stroz's documents, Stroz first had to collect them, apply search terms, and identify the universe of responsive documents (including redacting or removing documents over which Stroz asserted its own attorney-client privilege). Stroz's counsel addressed this at the hearing. (10/23/17 Hr'g Tr. at 57:5-13.) Indeed, Stroz collected, searched, and reviewed the documents of 53 personnel, which is neither quick nor easy. (*See* Exhibit 1 hereto (9/16/17 letter from Stroz's counsel to Charles K. Verhoeven, copy to counsel for all parties).) The conclusion that Uber could or should have obtained and logged drafts of the Stroz Report in June is unfair Monday morning quarterbacking. At the time, Uber had no reason to specifically inquire about and expedite the receipt and logging of drafts of the Stroz Report any more than it had reason to do the same for any of the other 10,000+ documents that Stroz eventually made available, over 6,500 of which Uber logged.

Waymo also argues that Uber did not contest that Stroz was its agent in litigating the underlying motion to compel and therefore cannot contest it now (Dkt. 2163 at 5), but the only point Waymo made on the underlying motion was that Uber could have "ask[ed] its agent Stroz to confirm that there were drafts before the final report was sent to Uber on August 5" (Dkt. 1994-4 at 4). The point here is that Uber did not have unfettered access to or control over documents in Stroz's possession such that it could obtain and log them immediately. Stroz had to first identify and collect responsive documents that existed, and ensure it did not furnish to Uber documents that would violate its contractual obligations regarding data confidentiality. Uber could not leapfrog that process.

***Second,*** Waymo contends that Uber's assertion of privilege was untimely under this Court's standing order and that this Court already held as much. (Dkt. 2163 at 5.) The Court merely held that if "during the course of this litigation," "Uber has asserted any privilege beyond

DEFS. UBER AND OTTOMOTTO'S REPLY RE MOT. FOR RELIEF FROM PRETRIAL ORDER (DKT. 2128)
Case No. 3:17-cv-00939-WHA
la-1365048

2

the scope of its initial privilege log (provided pursuant to the expedited discovery order dated March 16 (Dkt. No. 61))," then it "should have already supplemented that privilege log accordingly." (Dkt. 745 at 3.) Uber produced multiple privilege logs in connection with its document productions in response to Waymo's document requests – its privilege logs were not limited to the initial set of logs prepared in response to the Court's March 16 order. But at the time the Stroz subpoena was litigated, Uber had not specifically asserted privilege over drafts of the Stroz Report and logged them because it had no drafts to log. Waymo further contends that Uber "purported to assert work product protection over 'reports or analyses created by Stroz' when it moved to quash the subpoena" (Dkt. 2163 at 5) and therefore should have logged the drafts at that time. The draconian notion that a non-recipient of a subpoena who moves to quash must serve with its motion a privilege log for documents in the sole possession of the subpoenaed third party (agent or not) on pain of waiver of any privilege is unsupported by authority. Uber served its privilege log as soon as it was prepared, in the early morning hours of September 17. (Dkt. 2020 ¶ 9.) Indeed, Stroz served its privilege log on September 16. (Exhibit 1.) That Stroz can serve its log on September 16 for documents in its possession, yet Uber somehow was required to log by June 21 documents that it did not possess and never received is clear error.

*Finally,* Waymo contends that the Magistrate Judge correctly ruled that Uber waived privilege over the drafts under the plain language of the June 21 Stroz Subpoena Order because "Uber has failed to show why it could not have obtained the Stroz Report drafts in June." (Dkt. 2163 at 4.) However, as explained in detail above and in Uber's motion, as of June 2017 Uber could not have logged the drafts, and certainly not with the bone-crushing detail required by the Court.

For the foregoing reasons and the reasons set forth in Uber's opening motion, Uber requests that the Court vacate lines 7 through 28 on page 4, and lines 1 through 5 on page 5 of the Order (Dkt. 2128), requiring the production of any drafts of the Stroz Report.

DEFS. UBER AND OTTOMOTTO'S REPLY RE MOT. FOR RELIEF FROM PRETRIAL ORDER (DKT. 2128)
Case No. 3:17-cv-00939-WHA
la-1365048

3

| | |
|---|---|
| Dated: November 3, 2017 | MORRISON & FOERSTER LLP |
| | By: */s/ Arturo J. González*<br>ARTURO J. GONZÁLEZ |
| | Attorneys for Defendants<br>UBER TECHNOLOGIES, INC.<br>and OTTOMOTTO LLC |

DEFS. UBER AND OTTOMOTTO'S REPLY RE MOT. FOR RELIEF FROM PRETRIAL ORDER (DKT. 2128)
Case No. 3:17-cv-00939-WHA
la-1365048

4