QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>      vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>            Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S CRITIQUE OF FURTHER TENTATIVE JURY INSTRUCTIONS ON TRADE SECRET MISAPPROPRIATION (DKT. 2078)**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: December 4, 2017 |

Waymo submits the following critique of the Further Tentative Jury Instruction (Dkt. 2078) (the "FTJI").

## I. THE FTJI SHOULD BE MODIFIED TO MORE CLEARLY CONVEY CONTROLLING LAW.

The FTJI should be modified as follows, with **orange**, **blue** and **red** text reflecting proposed additions and ~~strikethroughs~~ reflecting proposed deletions, in order to better reflect controlling legal authority:

> An engineer will, through trial and error and application of his or her professional skills, sharpen his or her skills and accumulate insights that supplement the **general** skill**s** and know-how otherwise known in his or her field.  When the engineer moves to his or her next job with a new employer, the engineer cannot be expected to delete such **general** on-the-job practical lessons from his or her memory and will remain free under the law to use those **general** practical lessons to the same extent as skill and know-how otherwise known in the field.  The engineer cannot, however, go further in his new job with a new employer and ~~misappropriate~~ **use or disclose to others** specific engineering solutions **or technical specifications** developed by his prior employer**, or research indicating that a certain process or approach will not work**, even those developed **or discovered** by him or her, **regardless of whether contained in a document or retained in the engineer's memory,** where such specific solutions**, specifications or research** qualify as a trade secret.  It is for the jury to decide in each case whether the engineer has ~~misappropriated~~ **used or disclosed** a **specific** trade secret **from his or her prior employment** versus merely used **or disclosed general** practical lessons from his prior employment.

### A. The FTJI Should Reflect that a Trade Secret Is Not Limited To "Specific Engineering Solutions" and May Include Negative Trade Secrets.

The FTJI suggests that a trade secret is limited to "specific engineering solutions," but the definition of a trade secret under the CUTSA and DTSA is not so limited.  Thus, the FTJI should be amended as proposed above in **orange** to reflect that an employee may not misappropriate trade secrets constituting specific "technical specifications" as well as "engineering solutions," or "research indicating that a certain process or approach will not work."  These changes will also appropriately orient the jury to the specific types of trade secrets that Waymo is asserting at trial—specifically, trade secrets based on specific engineering solutions (Trade Secret Nos. 2, 7, 9, 13-14, and 90), technical specifications (Trade Secret No. 25), and research indicating that a certain process or approach will not work (Trade Secret No. 111).

The definition of a "trade secret" under the CUTSA and DTSA is not limited to "specific engineering solutions" and clearly may include "technical specifications."  *See, e.g.,* Cal. Civ. Code

§ 3426.1; 18 U.S.C.A. § 1839(3).  For example, the CUTSA broadly defines "trade secret" to include *any* information that derives independent economic value from not being generally known and that is the subject of reasonable efforts to maintain its secrecy:

> (d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1.  The DTSA's definition of "trade secret" expressly includes broad categories of technical information:

> (3) the term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if–
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C.A. § 1839(3).  Not surprisingly, courts have regularly found that technical specifications may constitute trade secrets.  *See, e.g., Global Trim Sales, Inc. v. Checkpoint Sys. UK Ltd.*, 2014 WL 12690629, at *7 (C.D. Cal. Sept. 17, 2014) (finding triable issue of fact as to whether "technical manufacturing specifications" were trade secrets); *Gatan, Inc. v. Nion Co.*, 2017 WL 1196819, at *6 (N.D. Cal. Mar. 31, 2017) (finding Third Amended Complaint adequately identified trade secret in "reasonable" detail where it essentially claimed "that the precise way that Enfinium's lenses focus the electrons (*i.e*., placement of lenses, crossovers, electron trajectories) and correct for aberrations (*i.e*., lens settings, performance) is a trade secret").

In addition, notwithstanding any general "know-how otherwise known in the field" or "on-the-job practical lessons" that an engineer assimilates, he or she may not bring to a new employer

trade secrets embodying specific lessons about what *not* to do.  This is an uncontroversial proposition under both CUTSA and UTSA:

> The UTSA's definition of "a 'trade secret' contains a reasonable departure from the Restatement of Torts (First) definition which required that a trade secret be 'continuously used in one's business.' *The broader definition* in the proposed Act ... includes information that has commercial value from a negative viewpoint, for example the results of lengthy and expensive research which proves that a certain process will *not* work could be of great value to a competitor." (Italics added and original italics.) (See legis. committee com., 12 West's Ann. Civ. Code, § 3426.1 (1990 pocket supp.) p. 108.)

*Courtesy Temp. Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1287 (Cal. Ct. App. 1990); Unif. Trade Secrets Act § 1, com. 5 (Natl. Conf. of Comm'rs on Unif. State Laws 1985), http://www.uniformlaws.org/shared/docs/trade%20secrets/utsa_final_85.pdf at 6 (same); *see also Morton v. Rank Am., Inc.*, 812 F. Supp. 1062, 1073-74 (C.D. Cal. 1993) ("Certain "negative" research may also result in the creation of protectable information.").  Because the DTSA defines trade secrets "similarly to but even more broadly than the UTSA," *see Earthbound Corp. v. MiTek USA, Inc.*, 2016 WL 4418013, at *10 (W.D. Wash. Aug. 19, 2016), the DTSA also protects negative trade secrets.

Finally, the FTJI should be amended to clarify that the terms "skills" and "practical lessons" are being used to refer to the generally applicable, non-trade secret "skills" and "practical lessons" known by people in the field as opposed to the "specific" problems on which the engineer worked, resulting in "specific" trade secret engineering solutions, technical specifications, or negative trade secrets.

### B. The FTJI Should Be Amended To Reflect That Waymo Is Asserting Trade Secret Misappropriation Claims Against Uber and Ottomotto, Not Individual Engineers.

The FTJI should be amended as proposed above in **red** and ~~strikethroughs~~ to replace all references to the engineer "misappropriating" trade secrets at his or her new employer with "using or disclosing" trade secrets at his or her new employer.  Waymo has not asserted trade secret misappropriation claims against individual engineers, only against Uber and Ottomotto.  The issue for the jury to decide is not whether any individual engineer has misappropriated Waymo's trade secrets at their new employer, but whether Uber or Ottomotto misappropriated Waymo's trade

secret. Thus, it would be error for the jury to be instructed that "it is for the jury to decide in each case whether the engineer has misappropriated" a specific trade secret as Waymo does not need to prove the elements of trade secret misappropriation as to any individual engineer in order to prove trade secret misappropriation as to Uber or Ottomotto.

**C.  The FTJI Should Be Supplemented to Reflect That Taking Documents Is Unnecessary For Liability, and Trade Secrets Retained In an Engineer's Memory May Nonetheless Trigger Liability.**

The FTJI should be supplemented with the addition of the text proposed above in **blue** to clarify that an engineer is prohibited from using trade secrets he or she brings from his or her previous employment "regardless of whether contained in a document or retained in the engineer's memory." This has long been the law in California:

> It has also been said that "The fundamental difference in the decisions, as we read them, is whether in a given case the knowledge gained by an employee is secret and confidential. If it is, its use by a former employee will be enjoined. If it is not, its use by a former employee will not be enjoined. Some knowledge gained by an employee is of such a general character that equity will not restrict its later use. An employee has a right, after cessation of employment, to use anything that is not the property of his employer. Trade and business secrets and confidential information are the property of the employer and cannot be used by the employee for his own benefit. A list of subscribers of a service, built up by ingenuity, time, labor and expense of the owner over a period of many years is property of the employer, a part of the good will of his business and, in some instances, his entire business. Knowledge of such a list, acquired by an employee by reason of his employment, may not be used by the employee as his own property or to his employer's prejudice. [Citations.]" (*Id.*, at pp. 522-523.) And to afford protection to the employer, the information need not be in writing but may be in the employee's memory. (*George v. Burdusis*, (1942) 21 Cal.2d 153, 160 [130 P.2d 399].)

*Greenly v. Cooper,* 77 Cal.App.3d 382, 391-92, 143 Cal.Rptr. 514 (1978). *See also Klamath–Orleans Lumber, Inc. v. Miller,* 87 Cal.App.3d 458, 465, 151 Cal.Rptr. 118 (1978) ("Moreover, where, in order to do business the employer is forced to impart such select information to certain key employees, the information hardly becomes part of the employees' knowledge which they may freely use at some later time. Rather, it remains the exclusive property of the employer which must be appropriately protected.").

Similarly, the UTSA extends its protection to trade secrets in any form, whether written or memorized:

> Whether the information was embodied in written lists or committed to memory is ... of no significance; in either case the data are entitled to protection. *Morgan's*

*Home Equip. Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838, 843 (1957).

*Latuszewski v. VALIC Fin. Advisors, Inc.*, 393 F. App'x 962, 966 n.5 (3d Cir. 2010) (interpreting Pennsylvania Uniform Trade Secrets Act). "The form of information, whether written or memorized, is immaterial under the trade secrets statute; the Uniform Trade Secrets Act makes no distinction about the form of trade secrets. Whether the information is on a CD, a blueprint, a film, a recording, a hard paper copy or memorized by the employee, the inquiry is whether it meets the definition of a trade secret under the Act and whether it was misappropriated." *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wash. 2d 427, 449–50, 971 P.2d 936, 948 (1999).

Thus, because it is black letter law that a trade secret may exist in any format, including in the former employee's memory, the jury should be so instructed. Moreover, such an instruction is particularly necessary here because of the reference in the FTJI to the engineer remaining free under the law to use "practical lessons from his or her memory" to the same extent as skill and know-how otherwise known in the field. Without clarifying that an engineer may misappropriate a trade secret that is held entirely in his or her memory, the jury may wrongly believe that any information in the engineer's "memory" is fair game for use at the new employer and cannot form the basis of a trade secret misappropriation claim.

DATED: November 3, 2017            QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                   By */s/ Charles K. Verhoeven*
                                      Charles K. Verhoeven
                                      Attorneys for WAYMO LLC