

Neel Chatterjee
+1 650 752 3256
NChatterjee@goodwinlaw.com

Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025

goodwinlaw.com
+1 650 752 3100

October 30, 2017

<u>VIA ECF</u>           UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

The Honorable Jacqueline Scott Corley
United States Magistrate Judge
United States District Court for the Northern District of California
Phillip Burton United States Courthouse
450 Golden Gate Avenue
Courtroom F - 15th Floor
San Francisco, CA 94102

**Re:   Waymo LLC v. Uber Technologies, LLC, et al. (Case No. 3:17-cv-00939-WHA)**

Dear Magistrate Judge Corley:

This letter replies to Waymo's and Keker, Van Nest & Peters' ("KVP") oppositions to Otto Trucking's motion to compel. Otto Trucking's motion should be granted. Waymo offered a "reply" expert witness who relied upon information Waymo previously withheld as privileged. This expert was only recently deposed in October. At the same time as this reply report was offered, Otto Trucking raised related waiver issues to Judge Alsup with respect to a subpoena to KVP. Judge Alsup ordered Otto Trucking to bring these issues before Your Honor. Dkt. 1970. Based on these two events, Otto Trucking brought the present motion. The Court should reject Waymo's efforts to raise privilege as a shield but at the same time have its expert rely on the same activities to validate Waymo's investigation.

                                        Respectfully submitted,

                                         /s/ Neel Chatterjee

                                        Neel Chatterjee
                                        GOODWIN PROCTER LLP

                                        *Attorneys for Defendant*
                                        Otto Trucking LLC

cc:  Counsel of Record (via ECF); Special Master Cooper

1



Neel Chatterjee
+1 650 752 3256
NChatterjee@goodwinlaw.com

Goodwin Procter LLP
135 Commonwealth Drive
Menlo Park, CA 94025

goodwinlaw.com
+1 650 752 3100

Otto Trucking's motion seeks to compel three things:

1. Documents relating to Waymo's investigation of Mr. Levandowski ███████████████████████████████████████████████;
2. Production from Keker, Van Nest & Peters ("KVP") requested by Otto Trucking in the KVP subpoena; and
3. Additional depositions with respect to any new documents produced.

KVP and Waymo raise a cornucopia of arguments in opposition.  Dkts. 2126 and 2127.  The primary argument raised by Waymo and KVP is that Otto Trucking's motion is untimely.  This argument is meritless because the broadening of the waiver as to time and scope is the result of Mr. French, a "rebuttal" expert submitted by Waymo who relied upon a so-called investigation that was longer in time, involved more people, and was broader in scope.  Waymo cannot use privilege as a sword and shield by prevailing on a narrowing of the waiver while at the same time sandbagging Otto Trucking through a reply expert who relies on a broader scope.  KVP and Waymo also make numerous other arguments which can easily be rejected simply by comparing their arguments to Mr. French's testimony.

## I.   OTTO TRUCKING'S MOTION IS TIMELY

Waymo and KVP argue, in various ways, that Otto Trucking's motion is untimely.  This argument is faulty because Waymo's argued position and its rebuttal expert opinion are directly inconsistent with each other.  It was not until this inherent conflict arose that Otto Trucking determined it needed to file this motion.

Waymo originally argued that its waiver was limited to forensic evaluation of three employees within a confined time frame and that no other aspect of its investigation would be relied upon.  For example:

- On August 31, 2017, Waymo told the court: "We have not waived with respect to those investigations [the investigations of other former employees].  We're not relying on them in this case, and they're not relevant to this case."  Dkt. 1441 (8/31/17 Hearing Tr.) at 22:16-18.

- Also on August, 31, 2017, Waymo represented: "One issue we do have there, Your Honor, is, you know, we have submitted the declaration of Gary Brown, in describing the forensic investigation of these three individuals.  That's what we are affirmatively relying on.  We are not affirmatively relying on the investigation of anyone else, or any other investigation of even Levandowski and the other two.  I mean, there are other investigations that the attorneys performed; and we're not relying on any of that affirmatively.  So we don't think that, you know, that falls within the waiver."  *Id*. at 11:15-24.

Waymo succeeded in narrowing its subject matter waivers to the forensic investigation of three individuals, and the Court only allowed narrow discovery into other individuals to the extent the documents showed they were clearly intertwined.  The Court would not, however, broaden the waiver to all individuals, time or scope.

Waymo's opening expert reports were due on August 24, 2017.  Dkt. 563.  Waymo did not offer an opening report on the propriety of its investigation.  Having prevailed in its efforts to narrow the scope of its waiver and preclude Otto Trucking's discovery, Waymo then changed course and submitted a reply expert report validating Google's investigation based upon a broader prenumbra of facts.  On September 14, 2017, Waymo served a rebuttal report from its investigations expert, Paul French.  Dkt. 2035-5.  Mr. French offered the following "rebuttal" opinions in his report:

- "Based on the evidence I have reviewed, it is my understanding that **the overall investigation into the Former Employees began as early as August 4, 2015** . . . ."  Dkt. 2035-5 (French Report) at ¶17 (emphasis added).

- "It is my opinion that the Waymo forensics team **conducted a thorough and unbiased investigation into the Former Employees** and followed proper protocols in doing so."  Dkt. 2035-5 at ¶ 12 (emphasis added).

- "On August 4, 2016, Mr. Pfyl asked Mr. Gudjonsson to have his team take the lead on the forensics piece of **the company's investigation into the Former Employees.  Mr. Pfyl made no mention of Levandowski, and expressed no predetermined bias or conclusion**."  Dkt. 2035-5 at ¶ 27 (emphasis added).

- "In the same email, Mr. Lu identified the first four individuals whose devices would be examined by the Waymo forensics team ▉▉▉ skshirsagar, rradu, and ▉▉▉▉▉.  **Mr. Levandowski was not even in this initial list, making even more clear to me that the forensics team was not exclusively interested in Mr. Levandowski**, nor affected by a predetermination of his guilt."  Dkt. 2035-5 at ¶ 29 (emphasis added).

- "As the title implies, **the investigation was not targeted at Levandowski, and carried no predetermination of guilt by Levandowski or anyone else.  Rather, the document states clearly that the investigation was focused on** ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉."  Dkt. 2035-5 at ¶ 30 (emphasis added).

Waymo informed Otto Trucking that Mr. French was unavailable for deposition until October 3.  Once deposed, Mr. French confirmed that the Waymo investigation began in August 2015 (Declaration of Todd A. Boock ("Boock Decl."), Ex. 1 (Excerpts of 10/3/17 Tr. of French Depo) at 115:3-11); that Waymo's investigation was not biased precisely because it was directed at ▉▉▉▉▉▉▉▉▉▉▉▉ and not just Mr. Levandowski (Dkt. 2035-13 at 194:4-8; 196:15-20); and that KVP possessed different "higher-level" information and materials than Waymo employees (Dkt. 2035-13 at 221:12–222).  Each of these facts informed his analysis and opinions as to the propriety of Google's investigation.

In addition to obtaining these statements, Otto Trucking had objected to this Court's Order on the subpoena to KVP, as well as the clarification of the privilege waiver.  Dkt. 1520-3.  On October 6, Judge Alsup denied Otto Trucking's objection and instructed Otto Trucking to seek relief from this Court.  Dkt. 1970.[1]

---

[1] Waymo has erroneously argued this Court's rulings regarding the waiver are now the law of the case (Dkt. 2126 at 1), but Your Honor and Judge Alsup indicated that the rulings regarding the privilege

2

Following these important admissions by Mr. French and Judge Alsup's instructions, Otto Trucking filed this motion. Dkt. 2035-4.

## II.   FRENCH'S OPINIONS RELY ON WAYMO'S ENTIRE INVESTIGATION OF THE FORMER EMPLOYEES, NOT JUST THE FORENSIC INVESTIGATION.

Mr. French's opinion encompassed a broad waiver of subject matter. The facts demonstrate the breadth. Otto Trucking submitted an expert declaration stating that Waymo's investigation of Levandowski was biased and unreliable. Mr. French responded by opining that Waymo's investigation was not biased because it was broad-based and did not prejudge facts. Dkt. 2035-5 at 27-31. As part of his opinion, he admitted that Waymo had just one intertwined investigation that included multiple employees, not three separate investigations as Waymo previously suggested. *See* Dkt. 2035-13 at 194:4–8 and 196:15–20; Dkt. 2035-5 at ¶¶ 29-31. For example, Mr. French's opinion on the breadth of Waymo's investigation included using broad search terms provided by a team that Waymo claimed was separate from the forensic investigation, and taking a "deep-dive" where there were hits. Dkt. 2035-5 at ¶ 28. Mr. French also opined that KVP and Mr. Gorman had access to "higher-level" information than the Waymo employees conducting the forensic investigation, and that counsel had the "'big picture' perspective to initiate and direct a company-wide response." Dkt. 2035-13 at 221:12–222:4; and Dkt. 2035-5 at ¶ 37.

Mr. French's recent testimony warrants broadening the scope of Waymo's privilege waiver to include: (1) information regarding the investigation going back to August 2015[2]; and (2) information regarding the investigation into other former Google employees besides Messrs. Levandowski, Raduta, and Krshisagar. *See In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) (affirming district court's reversal of prior discovery order denying production of settlement negotiation materials after expert report served demonstrating that he relied on information beyond the final settlement agreement to form opinion). Indeed, the law is clear, where an expert considers—not merely relies—on information provided by a party or expresses an opinion about an issue, that information or issue becomes discoverable. *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869-70 (9th Cir. 2014) (although amended Rule 26 provides some protections, factual information considered by expert, not just materials relied on, are discoverable); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 257 F.R.D. 607, 612 (E.D. Cal. 2009) ; *see also United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995). Waymo's investigation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is the "centerpiece" of its case. Dkt. 1414 (8/28/17 Hearing Tr.) at 14:25-15:2. Here, where Waymo's own expert has placed the entirety of the investigation of ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at issue, the fairness principle weighs heavily in favor of disclosure,

---

waiver and KVP subpoena were without prejudice. *See, e.g.,* Dkt. 1441 at 92:9-12; Dkt. 1414 at 6:12-30:23 and 16:7-9; Dkt. 1970 at 2:1-12.

[2] Waymo contends that Otto Trucking has had the August 2015 email, on which French relies, for months. However, nothing in that email suggests any further investigation or action by Waymo. In addition, Otto Trucking is not aware of any other documents produced that tie the August 2015 Urmson email to the investigation that Otto Trucking had been led to believe began in January 2016. The only source for this information is French's report. Waymo does not deny this, choosing instead to now diminish French's opinion that the investigation began at that time. See 2126 at p. 6 "One individual raising the alarm as to the need for an investigation does not mean that the forensic investigation at issue here began in August 2015."

3

and the Court should not permit Waymo to game its privilege assertions in this manner. *Theranos, Inc. v. Fuisz Techs., Ltd.*, No. C 11-5236 PSG, 2013 WL 2153276 at *1 (N.D. Cal. 2013); *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4076319, at *3 (N.D. Cal. Aug. 18, 2014).

Mr. French's reliance on the broader investigation waives the privilege, as Otto Trucking should be allowed to test his opinions. Testifying experts must disclose "the facts or data considered by the [expert] witness in forming" his or her opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). Courts broadly construe what was "considered" by the expert, and "all things communicated to a testifying expert and considered by the expert in forming an opinion must be disclosed." *S. Yuba River,* 257 F.R.D. at, 612 (citation omitted); *see also City of Torrance*, 163 F.R.D. at 593 ("Rule 26(b)(4) has been broadly interpreted to authorize disclosure of both expert opinions and 'all the documents the expert generated or examined in the process of forming those opinions.'").

This rule extends to attorney opinion. *Yuba River*, 257 F.R.D. at 610; *see id*. at 612 ("this court is not aware of a contrary decision by any court within the Ninth Circuit"); *see also S.E.C. v. Reyes*, No. C06-04435 CRB, 2007 WL 963422, at *2 (N.D. Cal. Mar. 30, 2007) ("this Court concludes, in accord with every other court that has considered the issue squarely, that [the party] may assert the work-product privilege, *but only as to materials that do not pertain to the subject matter on which his experts have submitted testimony*.") (emphasis added). Courts favor discovery of materials relied on, communicated to, and even considered but rejected by experts in forming their opinions. *Torrance*, 163 F.R.D. at 594. Discovery of all of the information provided to the expert "assures the independence of the expert's thinking," providing the adverse party "a fair opportunity to expose whatever weaknesses, unreliabilities, or biases might infect the opinions of testifying experts." *Id*. at 593; *see also Lewert v. Boiron, Inc.*, 212 F.Supp.3d 917, 931 (C.D. Cal. May 12, 2016) (citing *Torrance*); and *Holzhauer v. Golden Gate Bridge, Hwy. & Transp. Dist.*, 2015 WL 12976923 at *4 (N.D. Cal. June 11, 2015).

Waymo incorrectly argues that Otto Trucking should be denied discovery into the issues its expert has expressed opinions about. When a party waives privilege, it does so as to the entire subject matter. *Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 454 F. Supp. 2d 957, 963 (N.D. Cal. 2006) (*quoting Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)), aff'd, No. C 02-3378 JSW, 2006 WL 2329460 (N.D. Cal. Aug. 9, 2006). Waymo ignores that the scope of the waiver is rooted in fairness to the moving party. *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003); *see also* Fed. R. Evid. 502(a). The fairness principle directs the "disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502(a); *see also Theranos*, 2013 WL 2153276, at *1. In order words, "[t]his fairness principle 'is often expressed in terms of preventing a party from using the privilege as both a shield and a sword.'" *Verinata Health, Inc.*, 2014 WL 4076319, at *3 (citing *Bittaker*, 331 F.3d at 719; *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1042 (9th Cir. 2009)).

### III.   KVP SHOULD PRODUCE ITS RESPONSIVE DOCUMENTS.

Waymo contends that it has produced "all documents between KVP, Brown and others on the Google forensics team. There is no other information in the possession, custody or control of KVP that is within the proper scope of the waiver and that has not already been produced." Dkt. 2126 at 6. Waymo's careful wording makes clear that it is not referring to internal KVP documents, or documents between KVP and others at Google who were not technically part of the forensics team or that were not within Waymo's very narrow definition of the scope of the waiver.

Substantial additional relevant documents exist.  For example, KVP claims that it would be *burdensome* for it to produce the requested documents, a remarkable assertion in light of the scorched earth discovery Waymo has sought in this case.  *See, e.g.,* Dkt. 2127 at 1.  Mr. French also testified that he believes KVP has materials Waymo's 30(b)(6) witness and forensic investigator, Gary Brown, did not have.  Dkt. 2035-13 at 221:12–222:4.[3]

KVP should produce any and all responsive documents in its possession, custody and control relating to this investigation.  Although KVP states that none of its work product should be produced, it also acknowledges that fact work product, at a minimum, is discoverable in this waiver context.  *See* Dkt. 2127 at 5.  Under Federal Circuit law, where a party has waived privilege and work product, fact work product is discoverable even if it has never been sent to the client.  *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) (Privilege is waived as to all factual or non-opinion work product concerning the same subject matter, even if a communication "is not itself actually communicated to the client"). This includes documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter, or work product that references or describes a communication to the client.  To the extent these types of materials exist, they should be produced.  *See also id*. at 1302 ("When faced with the distinction between where that line lies, however, a district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product."); *United States v. Nobles*, 422 U.S. 225, 239 (1975) (holding that the defendant, "by electing to present the investigator as a witness, waived the [work-product] privilege with respect to matters covered in his testimony."); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577–78 (9th Cir. 1992).

### IV. WAYMO'S EXPERT'S OPINIONS CONFLICT WITH WAYMO'S CURRENT ARGUMENTS

Waymo's arguments against production cannot be reconciled with the opinions expressed by Mr. French. Below, Otto Trucking quotes Waymo's briefs, hearings and its various arguments on the left and provides testimony from Mr. French on the right.  A simple comparison of the two demonstrates the inaccuracy of Waymo's arguments:

| WAYMO REPRESENTATION FORMING BASIS FOR COURT'S PRIOR RULING | PAUL FRENCH OCT. 3 TESTIMONY/REPORT |
|---|---|
| "One individual raising the alarm as to the need for an investigation does not mean that the forensic investigation at issue here began in August 2015." Dkt. 2126 (Waymo's Opp. Brief) at 6. "Despite Otto Trucking's allegations otherwise, the reason Mr. Brown did not see any log activity in March 2016 is simple – he had not yet begun to investigate. . . . As Otto Trucking knows, Waymo did not begin to investigate the possibility that Levandowski stole files until July 29, 2016 . . . and did not pull Levandowski's | "Based on the evidence I have reviewed, it is my understanding that **the overall investigation into the Former Employees began as early as August 4, 2015….**" Dkt. 2035-5 (French Report) at ¶17 (emphasis added); *see also* Boock Decl., Ex. 1 (Excerpts of 10/3/17 Tr. of French Depo) at 115:3-11. |

---

[3] As indicated above, Mr. French also opines on KVP's higher-level knowledge in the discussion of bias in his expert report. Dkt. 2035-5 at ¶ 37 ("Rarely do front-line responders have the authority or 'big picture' perspective to initiate and direct a company-wide response to an event that may not have any significance in their eyes.")

| | |
|---|---|
| SVN log history until September 19, 2016." <br><br> Dkt. 1226-4 at 4. | |
| "We have not waived with respect to those investigations [the investigations of other former employees]. **We're not relying on them in this case, and they're not relevant to this case.**" <br><br> Dkt. 1441 (8/31/17 Hearing Tr.) at 22:16-18 (emphasis added). <br><br> "One issue we do have there, Your Honor, is, you know, we have submitted the declaration of Gary Brown, in describing the forensic investigation of these three individuals.  That's what we are affirmatively relying on. **We are not affirmatively relying on the investigation of anyone else, or any other investigation of even Levandowski and the other two.**  I mean, there are other investigations that the attorneys performed; and we're not relying on any of that affirmatively.  So we don't think that, you know, that falls within the waiver." <br><br> *Id*. at 11:15-24 (emphasis added). | Q. Would you agree that the focus of the investigation was on Anthony Levandowski? <br><br> A. Well, to me, this appears the focus was on him  <br><br> Dkt. 2035-13 (Excerpts of 10/3/17 Tr. of French Depo) at 196:15–20 <br><br> ==“This document makes clear that the **Waymo forensics team did not target Mr. Levandowski specifically and had no predetermined belief about guilt. Rather, they were investigating**== and, consistent with best practices, sought 'to ==do a full and thorough investigation,' and report results as they were found.”== <br><br> Dkt. 2035-5 at ¶¶29-31 (emphases added). |
| "Further, Waymo has already produced all documents between KVP, Brown and others on the Google forensics team. There is no other information in the possession, custody or control of KVP that is within the proper scope of the waiver and that has not already been produced." <br><br> Dkt. 2126 at 6.[4] | "What I believe is **Keker is getting access to information that Mr. Brown may not have access to or may not even know about, because, you know, Mr. Gorman's at a higher-level investigation.** He sees the bigger picture of what -- of what Waymo needs as far as figuring out the fact pattern, and so it's not uncommon for the attorneys and the legal folks to get access to documents and logs and pass them down to other parts and other individuals and other divisions. Especially in a large company, I have seen that on numerous occasions." <br><br> Dkt. 2035-13 at 221:12–222:4; *see also* Dkt. 2035-5 at ¶ 37 ("==Rarely do front-line responders have the authority or 'big picture' perspective to initiate and direct a company-wide response to an event that may not have any significance in their eyes==.") |

---

[4] Contrary to Waymo's representation that there are no more documents, KVP complains there are and that it would be *burdensome* for KVP to have to review and produce them:  "OT seeks privileged and protected discovery from Google's outside counsel that is burdensome to produce, but OT has not even tried to . . . remove the burden of requiring KVP to individually review documents to make difficult privilege and work-product determinations."  Dkt. 2127 (KVP Opp.) at 1; *see also id*. at p. 5.

## V. WAYMO'S OTHER ARGUMENTS TO LIMIT THE SCOPE OF THE WAIVER FAILS

Waymo raises two additional arguments related to the scope of its subject matter waiver: (1) that its expert was in error in saying its investigation began in August 2015; and (2) that its waiver was solely directed to the so-called 14,000 file issue. Dkt. 2126 at 6. Both of these arguments should be rejected.

First, Waymo cannot run away from the fact this its expert opined that the investigation began in August 2015. Dkt. 2126 at 6. Mr. French confirmed this fact in his deposition. Boock Decl., Ex. 1 at 115:3-11. He has never sought to amend, withdraw or supplement its expert's rebuttal opinion.

Second, Waymo has never before limited its subject matter waiver to the analysis related to the downloading of the 14,000 files. And it could not, because Waymo was conducting forensic investigations long before it discovered the alleged downloaded files and expressly waived privilege more broadly. For example, Kristinn Gudjonsson testified in his deposition about Mr. Levandowski's activities that pre-dated the downloading of the 14,000 files in December 2015. *See* Boock Decl., Ex. 2 460:1-461:20. The Machine Forensic Record also clearly indicates investigation beyond the 14,000 files and included a forensic analysis of all of Mr. Levandowski's (and others') electronic activity at Google. *See, e.g.*, Boock Decl., Ex. 3 at WAYMO-UBER00029414.R-0002918.R.

## VI. CONCLUSION

Waymo has opened the door to a broader waiver and the discovery that Otto Trucking now seeks, due to its late disclosure of an expert who relied on the very information that Waymo previously persuaded this Court did not need to be disclosed. Mr. French has essentially confirmed what Otto Trucking has been arguing all along – that the forensic investigation into Mr. Levandowski was part of a larger investigation of all employees leaving Waymo for Ottomotto, and that KVP oversaw the investigation and had access to additional information. The law is clear that Otto Trucking is entitled to conduct discovery on the matters upon which an opposing expert relies, and neither Waymo nor KVP has provided any basis to prevent that discovery. For these and the foregoing reasons, Otto Trucking respectfully requests that the Court grant this Motion.