MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel: 415.268.7000 / Fax: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Tel: 202.237.2727 / Fax: 202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: 212.336.8330 / Fax: 212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

WAYMO LLC,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,

Defendants.

Case No. 3:17-cv-00939-WHA

**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S PRECIS IN SUPPORT OF REQUEST TO FILE MOTION IN LIMINE TO EXCLUDE TESTIMONY AND OPINIONS OF WAYMO EXPERT LAMBERTUS HESSELINK ON TS 25**

Trial Date: December 4, 2017

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

Waymo technical expert Lambertus Hesselink has now signed four expert reports in this case containing a broad array of so-called "expert" opinions, many of which are nothing more than speculative conclusions of fact based on limited "evidence" that any common juror can understand and interpret. Pursuant to this Court's November 7, 2017 order granting each side permission to file one additional motion *in limine* (Dkt. 2178), Uber will bring a motion in *limine* to exclude Dr. Hesselink's saved development time opinions. As Uber will show in that motion, there is no basis for Dr. Hesselink to offer those misleading opinions.

Pursuant to the Court's October 4, 2017 order that no new motions may be filed without the Court's advance permission (Dkt. 1954), Uber seeks leave to file one additional motion *in limine* to exclude Dr. Hesselink's opinions on Trade Secret No. 25 ("TS 25"). TS 25 claims [REDACTED] contained in three spreadsheets consisting of 98 pages total. Dr. Hesselink speculates that misappropriation of this extensive data occurred based on comparing less than a handful of snippets from two Uber documents to a few of the TS 25 [REDACTED] – such as [REDACTED] (Uber) to [REDACTED] (TS 25) – without applying any specialized knowledge of his own. Furthermore, Dr. Hesselink offers no evidence supporting his conclusion that Uber, in fact, used TS 25. The Court previously warned Waymo that such mismatched snippets would not suffice:

> [REDACTED]

(Dkt. 1261, 8/16/17 Hr'g Tr. 108:20-23.) Waymo should not be allowed to put an expert's stamp of approval on mere speculation based on grade-school comparisons of snippets – the jury can do its own comparisons. Dr. Hesselink's improper opinions on TS 25 should be excluded.

## I. DR. HESSELINK SPECULATES BASED ON SIMPLE COMPARISONS OF SNIPPETS AND FAILS TO APPLY ANY SPECIALIZED KNOWLEDGE

Dr. Hesselink speculates that Uber acquired through communications from Levandowski TS 25's [REDACTED] based on simple comparisons of document snippets rather than any application of specialized knowledge. Dr. Hesselink identifies only a handful of phrases from two documents that "reflect this misappropriation": (1) a single line from a

March 2016 email from former head of Uber ATG John Bares, and (2) a few fragments from John Bares' notes of a Jan. 12, 2016 conversation with Anthony Levandowski. (*See* Hesselink Opening Rpt. ¶¶ 106-115 (Uber excerpts in blue boxes below).) In each instance, Dr. Hesselink merely compares a short excerpt from an Uber document to some text from a Waymo spreadsheet, a simple comparison that does not apply any expert knowledge of the technology.

Notably, none of these snippets reference any of Waymo's claimed [REDACTED] even at the high level, let alone the specific [REDACTED]. As the Court may recall from inspecting Waymo's [REDACTED] spreadsheet at the August 16 hearing, Column A in the [REDACTED] tab contains a brief description of the [REDACTED] concept (e.g., [REDACTED] [REDACTED]), Column B contains [REDACTED] [REDACTED]) and the [REDACTED]), and Column C and other columns contain more detailed specifications. (*See* Dkt. 25-10, Jaffe Ex. 4 at 1 (Waymo excerpts in green boxes below); 8/16/2017 Hr'g Tr. at 93:2-24.) Waymo's 30(b)(6) designee on TS 25, Benjamin Ingram, admitted that the brief description in the Column A cell is not a trade secret. (Ingram Dep. 197:20-200:9; *see id.*, at 198:9-15 ("[REDACTED] [REDACTED]") This testimony is consistent with the Court's previous observation that the "totality" of Waymo's spreadsheets could be a trade secret, but the "titles" (e.g., [REDACTED]) are not. (8/16/17 Hr'g Tr. at 104:13-15, 108:10-15.)

Dr. Hesselink compares two excerpts from the Bares documents with the [REDACTED] [REDACTED] (see below – Uber excerpt in blue; Waymo [REDACTED] in green, relevant portions in red):

[REDACTED]

(Hesselink Opening Rpt. ¶ 106.) It is plain that this excerpt does not match Waymo's specifications, yet Dr. Hesselink concludes that in John Bares's March 16 email conveyed information Levandowski "derived" from this TS 25 . (Hesselink Opening Rpt. ¶ 106.) Dr. Hesselink also compared a snippet in John Bares' January 12 notes to Waymo's . (Hesselink Opening Rpt. ¶¶ 114-115 (Bares notes below).)

For each of these comparisons, Dr. Hesselink's report is devoid of any expert analysis beyond placing the text next to each other. This is not specialized knowledge; it is lawyer argument.

Dr. Hesselink's other comparisons fare no better. He argues that in John Bares' January 12 notes (below, top) are "derived from" three Waymo . (Hesselink Opening Rpt. ¶¶ 108-109.)

Dr. Hesselink also argues that in John Bares's January 12 notes is derived from in another Waymo (Hesselink Opening Rpt. ¶¶ 110-111.)

As a final example, Dr. Hesselink states that Mr. Bares's note that Levandowski [REDACTED] " provided information from TS 25 because one of Waymo's spreadsheets indicates [REDACTED] " (Hesselink Opening Rpt. ¶¶ 110-113.) As shown below, [REDACTED] is just a column heading in TS 25's [REDACTED] spreadsheet, not the actual [REDACTED].

(*Id.* ¶ 113.)

These simple comparisons are ***the entirety*** of Dr. Hesselink's "analysis" of Uber documents "reflecting" misappropriation. Though ***none*** of the Uber and Waymo snippets actually match, Dr. Hesselink speculates that Levandowksi must have been conveying details of entire spreadsheets to Uber. He does not even dress up his conclusions by any pretense of scientific methodology. This is just guessing about the facts, and usurping the role of the jury.

## II. DR. HESSELINK OFFERS NO OPINONS OR EVIDENCE ABOUT ANY USE OF TS 25 BY UBER

Dr. Hesselink's misappropriation opinion on TS 25 should also be excluded because, in addition to the inadequacies of his opinion that Uber acquired the TS 25 information, he offers no evidence about any *use* of TS 25 information by Uber. Uber developed its own [REDACTED] under its Dragonfly project, and Dr. Hesselink admits that they do not match the TS 25 [REDACTED]. (Hesselink Opening Rpt. ¶ 118.) He does not point to any other Uber [REDACTED] as matching Waymo's, or to any evidence that Uber used Waymo's [REDACTED] to design or test its LiDARs. Dr. Hesselink argues instead that Uber's Dragonfly [REDACTED] are too "simplistic," speculating that Uber would not have been able to develop Spider or Fuji without the "detailed" [REDACTED] from Waymo. (*Id.* ¶ 122.) But the proof is in the pudding. Dr. Hesselink has Fuji's beam patterns and was able to calculate how Fuji's beams would interrogate the road. (Dkt. 1456-3, Hesselink Decl. ¶¶ 31-33.) He could have shown whether Fuji's beams could place [REDACTED] on a [REDACTED], as in Waymo's [REDACTED] – but he provides no analysis of this kind whatsoever.

In his supplemental report, Dr. Hesselink points out that one of the TS 25 spreadsheets was found on Levandowski's Macbook, which was quarantined by Stroz in March 2016. (Dkt. 2061-1, 10/23/17 Nardinelli Ex. 1, Hesselink Suppl. Rpt. ¶ 16.) In his reply report, Dr. Hesselink admits that this spreadsheet was last accessed on January 4, 2016, ***before Levandowski left Google***. But he argues that there are different ways in which Levandowski "could have" consulted this spreadsheet. (Hesselink Suppl. Reply Rpt. ¶ 18.) Whether Levandowksi "could have" accessed the spreadsheet after leaving Google is a jury issue, and Dr. Hesselink's opinions on this subject are mere speculation.

Without any evidence that Uber ever used TS 25, Dr. Hesselink's opinion boils down to a comparison of a few snippets that do not match, and then pure speculation about misappropriation. Dr. Hesselink's testimony on TS 25 would have no probative value, invades the jury's province, and is highly misleading. Uber requests that the Court grant it leave to file one additional motion *in limine* to exclude Dr. Hesselink's opinions on TS 25.

Dated: November 10, 2017

MORRISON & FOERSTER LLP

By: */s/ Michael A. Jacobs*
MICHAEL A. JACOBS

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC