# Exhibit 1

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3               SAN FRANCISCO DIVISION
 4
 5   WAYMO LLC,
 6        Plaintiff,
 7           vs.                Case No.
 8   UBER TECHNOLOGIES, INC.;   17-cv-00939-WHA
 9   OTTOMOTTO, LLC; OTTO
10   TRUCKING LLC,
11        Defendants.
     _____
12
13      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15   CONTINUED VIDEOTAPED DEPOSITION OF TRAVIS KALANICK
16               San Francisco, California
17                Monday, October 2, 2017
18                      Volume II
19
20
21   REPORTED BY:
22   REBECCA L. ROMANO, RPR, CSR No. 12546
23   JOB NO. 2716673
24
25   PAGES 330 - 503
```

Page 330

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1              UNITED STATES DISTRICT COURT
2            NORTHERN DISTRICT OF CALIFORNIA
3                 SAN FRANCISCO DIVISION
4
5   WAYMO LLC,
6        Plaintiff,
7            vs.            Case No.
8   UBER TECHNOLOGIES, INC.;   17-cv-00939-WHA
9   OTTOMOTTO, LLC; OTTO
10  TRUCKING LLC,
11       Defendants.
12  _____
13
14
15
16      CONTINUED VIDEOTAPED DEPOSITION OF TRAVIS
17  KALANICK, taken on behalf of the Plaintiff, at Orrick,
18  Herrington & Sutcliffe LLP, The Orrick Building,
19  405 Howard Street, 10th Floor, San Francisco,
20  California, commencing at 9:15 a.m., Monday,
21  October 2, 2017 before Rebecca L. Romano,
22  Certified Shorthand Reporter No. 12546
23
24
25
```

Page 331

```
 1            THE DEPONENT:  I don't see anything by --      12:02:24

 2    I don't see anything -- any reference to Stroz

 3    here.

 4        Q.   (By Mr. Verhoeven)  You didn't know the

 5    diligence was being done by Stroz?                     12:02:28

 6            MS. DUNN:  Objection to form.

 7            THE DEPONENT:  I just -- I kind of

 8    empowered the business team and the -- and the

 9    legal team to do that.

10        Q.   (By Mr. Verhoeven)  Is it your testimony      12:02:37

11    that on March 21st, 2016, you did not know that the

12    diligence was being run by Stroz and MoFo?

13        A.   I may not know the specific company

14    names, but I knew diligence was going on.

15        Q.   What was your understanding of what that      12:02:51

16    diligence was?

17            MS. DUNN:  I will instruct the witness to

18    exclude from his answer anything that he would know

19    solely based on conversations that are privileged

20    with counsel.                                          12:03:00

21            THE DEPONENT:  I -- I think all -- I

22    think information to that question was only

23    obtained through counsel.

24        Q.   (By Mr. Verhoeven)  Which counsel?

25            MS. DUNN:  You can answer who -- who you       12:03:10
```

```
 1        Q.   And on the left top column, it says,            12:07:50

 2   "Pre-signing due diligence."

 3             Do you see that?

 4        A.   Yes.

 5        Q.   And the first bullet says, "Third-party         12:07:57

 6   forensic expert performed DD on Anthony, Lior and 3

 7   other key employees."

 8             Do you see that?

 9        A.   I do.

10        Q.   And then the second -- third bullet down        12:08:07

11   says, "Uber received report from both forensic

12   expert and outside counsel."

13             Do you see that?

14        A.   Yes, I do.

15        Q.   What was that report?                           12:08:26

16             MS. DUNN:  I'll instruct the witness to

17   exclude from his answer anything that he knows

18   solely based on conversations that may be

19   privileged that he had with counsel.

20             THE DEPONENT:  I am not sure what that          12:08:35

21   report is.

22        Q.   (By Mr. Verhoeven)  Did you receive a

23   report from the forensic expert?

24        A.   I did not.

25        Q.   Did Mr. Cameron Poetzscher receive a            12:08:42
```

Page 466

```
1     Q.   It says on the last bullet in this              12:10:37
2   column, under pre-signing due diligence, "Based on
3   our review of the facts, Uber decided to move
4   forward with signing of the Put Call Agreement."
5          Aren't you saying to the board there that       12:10:49
6   the review of the forensic expert report and ▓▓▓
7   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and,
8   therefore, Uber decided to move forward?
9          MS. DUNN:  Objection to form.
10         THE DEPONENT:  So I certainly -- in order       12:11:03
11  to move forward on the deal, I certainly believe
12  that diligence was in a good enough place for us to
13  move forward.
14    Q.   (By Mr. Verhoeven)  And did you tell that
15  to anyone?                                             12:11:20
16    A.   I may have.  I don't remember.
17    Q.   So you may have said that at the board
18  meeting?
19    A.   I don't remember saying anything about --
20  about diligence.                                       12:11:29
21    Q.   And what did you base -- what facts did
22  you base your opinion at the time that the
23  diligence was good enough to move forward?
24         MS. DUNN:  I will instruct the witness to
25  exclude from his answer anything that he would know    12:11:38
```

Page 469

```
 1    solely based on privileged conversations with          12:11:40

 2    counsel.

 3            THE DEPONENT:  I empowered the attorneys

 4    to do the diligence process and to get to a place

 5    where we were -- we were okay, sort of going from      12:11:53

 6    pre-signing to signing on our way to close.  Right.

 7        Q.   (By Mr. Verhoeven)  Are you saying the

 8    attorneys made the decision of whether to move

 9    forward?

10            MS. DUNN:  Again, same instruction.  I         12:12:05

11    will ask you to exclude from your answer anything

12    that you know solely based on your conversations

13    with counsel.

14            THE DEPONENT:  Yeah.  What I'm saying is

15    that in a transaction like this there's dozens, if     12:12:14

16    not hundreds, of moving parts.  Diligence is an

17    effort that's run by legal and by the business

18    team.  They are empowered to go and complete that

19    and provided a green light to move forward.

20        Q.   (By Mr. Verhoeven)  You represented on        12:12:33

21    these slides that based on "our review of the

22    facts, Uber decided to move forward with signing of

23    the Put Call Agreement," correct?

24            MS. DUNN:  Objection to form.

25            THE DEPONENT:  I didn't make this slide        12:12:43
```

Page 470

```
1    and I didn't present it.                              12:12:46

2        Q.   (By Mr. Verhoeven)  Well, who did?

3        A.   I am not sure anybody presented it.

4        Q.   Did the board not have this?

5        A.   Well, again, I am not saying they didn't.   12:12:54

6    I am just telling you facts.

7        Q.   Isn't this bullet saying that the report

8    was clean?  Isn't it implying that by saying "Uber

9    decided to move forward"?

10           MS. DUNN:  Objection to form.                12:13:10

11           THE DEPONENT:  I think it says, "Based on

12   our review of facts, Uber decided to move forward

13   with the signing of the Put Call Agreement."

14       Q.   (By Mr. Verhoeven)  And doesn't that

15   imply that the facts came up clean?                  12:13:17

16           MS. DUNN:  Objection to form.

17           THE DEPONENT:  I mean, it -- it implies

18   that they are in a -- that based on our processes

19   and the review that exists, that it's -- we're at a

20   place where we can move forward.                     12:13:31

21       Q.   (By Mr. Verhoeven)  And that doesn't

22   have -- that doesn't mean anything about what the

23   results were of the report?

24           MS. DUNN:  Objection.  Form.

25           THE DEPONENT:  Again, I -- I empower the     12:13:40
```

Page 471

| | | |
|---|---|---|
| 1 | business team and the legal team to sort of green | 12:13:43 |
| 2 | light that. | |
| 3 |     Q.  (By Mr. Verhoeven)  Did you ever receive | |
| 4 | an interim report from Stroz about the results of | |
| 5 | its due diligence before signing the April 11th | 12:13:52 |
| 6 | deal terms? | |
| 7 |     A.  I did not. | |
| 8 |     THE VIDEOGRAPHER:  Half an hour left on | |
| 9 | the record, Counsel. | |
| 10 |     Q.  (By Mr. Verhoeven)  Well, who -- did | 12:14:00 |
| 11 | anyone? | |
| 12 |     MS. DUNN:  I will ask the witness to | |
| 13 | exclude from his answer anything that he knows | |
| 14 | solely based on conversations with counsel. | |
| 15 |     THE DEPONENT:  It's possible, but I just | 12:14:07 |
| 16 | don't know. | |
| 17 |     Q.  (By Mr. Verhoeven)  Weren't you | |
| 18 | interested in finding out whether the report came | |
| 19 | up clean? | |
| 20 |     MS. DUNN:  Objection to form. | 12:14:15 |
| 21 |     THE DEPONENT:  I wasn't aware of a | |
| 22 | report. | |
| 23 |     Q.  (By Mr. Verhoeven)  Weren't you | |
| 24 | interested to find out if the -- the forensic | |
| 25 | diligence came up clean or not? | 12:14:23 |

Page 472

```
 1            MS. DUNN:  Objection to form.              12:14:27
 2            THE DEPONENT:  I -- I -- again, I
 3   empowered the legal team to go and -- go through
 4   our diligence processes and give a green light when
 5   it was time.                                        12:14:37
 6            My main objective that I gave to the
 7   legal team was, no content whatsoever comes over to
 8   Uber.  If it comes from a previous employer, it
 9   doesn't make it to Uber.
10       Q.   (By Mr. Verhoeven)  That wasn't my         12:14:50
11   question.
12            My question was, weren't you interested
13   in finding out if the forensic diligence came up
14   clean?
15            MS. DUNN:  Objection to form.              12:14:59
16       Q.   (By Mr. Verhoeven)  Yes or no?
17       A.   Not tech -- no.  I was interested -- no,
18   I was interested in the legal team going through a
19   full diligence process and interested in whether
20   they gave us the green light or not.                12:15:18
21       Q.   So for the record, it's your testimony
22   here today that you were not interested in knowing
23   whether or not the results of the diligence report
24   done by Stroz came up clean?
25            MS. DUNN:  Objection to form.              12:15:31
```