# Exhibit 3

```
1                  UNITED STATES DISTRICT COURT
2                NORTHERN DISTRICT OF CALIFORNIA
3                     SAN FRANCISCO DIVISION
4
5    WAYMO LLC,
6         Plaintiff,
7              vs.                Case No.
8    UBER TECHNOLOGIES,INC.;      17-cv-00939-WHA
9    OTTOMOTTO, LLC; OTTO
10   TRUCKING LLC,
11        Defendants.
12   _____
13
14       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
15
16      CONTINUED VIDEOTAPED DEPOSITION OF NINGJUN QI
17                  San Francisco, California
18               Saturday, September 30, 2017
19                        Volume III
20
21   REPORTED BY:
22   REBECCA L. ROMANO, RPR, CSR No. 12546
23   JOB NO. 2716660
24
25   PAGES 460 - 669
```

Page 460

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1           UNITED STATES DISTRICT COURT
2          NORTHERN DISTRICT OF CALIFORNIA
3              SAN FRANCISCO DIVISION
4
5   WAYMO LLC,
6        Plaintiff,
7           vs.              Case No.
8   UBER TECHNOLOGIES,INC.;   17-cv-00939-WHA
9   OTTOMOTTO, LLC; OTTO
10  TRUCKING LLC,
11       Defendants.
12  _____
13
14
15
16      CONITNUED VIDEOTAPED DEPOSITION OF NINGJUN QI,
17  taken on behalf of the Plaintiff, at Veritext Legal
18  Solutions, 101 Montgomery Street, 4th Floor,
19  San Francisco, California, commencing at 9:29 a.m.,
20  Saturday, September 30, 2017 before
21  Rebecca L. Romano, Certified Shorthand
22  Reporter No. 12546
23
24
25

Page 461

```
 1    my mind, I thought it would be viewed as              12:04:54
 2    confidential if I did encrypt it.
 3         Q.   Stroz issued a due-diligence report at
 4    the end of its investigation into the diligenced
 5    employees, correct?                                    12:05:13
 6         A.   Yes.
 7         Q.   Did you ever see that report that was
 8    issued?
 9         A.   No.
10         Q.   Did you ever see any interim reports that    12:05:20
11    Stroz issued?
12         A.   I don't know if it was an interim report,
13    but I had seen something that related to their
14    initial finding.
15              MS. DEARBORN:  And I would just              12:05:44
16    caution you -- I'm sorry.  This is a late
17    caution --
18              THE DEPONENT:  Yeah.
19              MS. DEARBORN:  -- but to the extent you
20    received information only from lawyers, please        12:05:49
21    exclude that from your answer.
22              THE DEPONENT:  Okay.
23              MR. EISEMAN:  I'm definitely --
24              MS. DEARBORN:  Just answer "yes" or "no."
25              THE DEPONENT:  Okay.                         12:05:54
```

| | | |
|---|---|---|
| 1 | Q. (By Mr. Eiseman) What I'm -- what I'm | 12:05:56 |
| 2 | actually trying to find out is if you ever received | |
| 3 | any written materials from Stroz as -- in | |
| 4 | connection with their due-diligence investigation. | |
| 5 | MS. DEARBORN: You can answer that from | 12:06:06 |
| 6 | Stroz. | |
| 7 | THE DEPONENT: From Stroz? No. | |
| 8 | Q. (By Mr. Eiseman) All right. May- -- | |
| 9 | whether or not you received it directly from Stroz, | |
| 10 | did you ever receive any of Stroz's work product | 12:06:13 |
| 11 | that was created by Stroz as part of its | |
| 12 | due-diligence investigation? | |
| 13 | A. I don't know. | |
| 14 | Q. Did you ever see any interview memorandum | |
| 15 | that was prepared by Stroz as part of its | 12:06:38 |
| 16 | due-diligence investigation? | |
| 17 | MS. DEARBORN: And to the extent that -- | |
| 18 | that any materials were provided to you by lawyers, | |
| 19 | I would ask you to exclude those from your answer. | |
| 20 | MR. EISEMAN: Well, no, I would disagree | 12:06:50 |
| 21 | with that. I'm talking about written materials. | |
| 22 | If the lawyers handed the written materials to | |
| 23 | Ms. Qi, then I think I get to ask about those. | |
| 24 | MS. DEARBORN: I think you can ask | |
| 25 | typical privilege-bounding questions in terms of, | 12:07:00 |

Page 580

```
 1   you know, whether she received materials from              12:07:02

 2   lawyers.  I am not sure you get to explore -- in

 3   fact, I'm sure you do not get to explore the

 4   materials that may have -- that lawyers gave her.

 5           MR. EISEMAN:  If they are not otherwise            12:07:16

 6   privileged, I get to.

 7           MS. DEARBORN:  Well, I think that the

 8   fact that she -- if she received information from

 9   lawyers, that would be privileged.

10           MR. EISEMAN:  All right.  Well, let's go          12:07:23

11   about it this way, why don't we.

12           Let's mark, as Exhibit 7856, a total

13   that's Bates-numbered UBER00312509.

14           (Exhibit 7856 was marked for

15   identification by the court reporter and is               12:07:49

16   attached hereto.)

17           THE DEPONENT:  Do you want me to read

18   through all this?

19           MR. EISEMAN:  Not quiet yet, but why

20   don't you take a minute to familiarize yourself           12:08:06

21   with it -- with the document.

22           MS. DEARBORN:  I know this is unusual,

23   but, actually, would you mind if we took a minute

24   off the record just so I can discuss with my client

25   something?                                                12:08:21
```

| | | |
|---|---|---|
| 1 | MR. EISEMAN:  That's fine. | 12:08:21 |
| 2 | MS. DEARBORN:  Okay.  Thank you. | |
| 3 | THE VIDEOGRAPHER:  Going of the record at | |
| 4 | 12:08 p.m. | |
| 5 | (Recess taken.) | 12:08:32 |
| 6 | THE VIDEOGRAPHER:  Back on the record at | |
| 7 | 12:12 p.m. | |
| 8 | Q.  (By Mr. Eiseman)  Ms. Qi, you have | |
| 9 | Exhibit 7856 in front of you? | |
| 10 | A.  Yes. | 12:12:02 |
| 11 | Q.  Have you seen this document before? | |
| 12 | A.  I don't think so.  I am not sure. | |
| 13 | MR. EISEMAN:  All right.  Well, let me | |
| 14 | just state for the record that I have an email -- | |
| 15 | and I'm happy to show you this -- | 12:12:16 |
| 16 | MS. DEARBORN:  Uh-huh. | |
| 17 | MR. EISEMAN:  -- Ms. Dearborn -- an email | |
| 18 | from Karen Dunn at your firm to the this | |
| 19 | Special Master John Cooper where she is | |
| 20 | outlining -- actually, let's go off the record for | 12:12:33 |
| 21 | a second.  Let's do it a different way. | |
| 22 | THE VIDEOGRAPHER:  Going off the record | |
| 23 | at 12:12 p.m. | |
| 24 | (Recess taken.) | |
| 25 | THE VIDEOGRAPHER:  Back on the record | 12:13:29 |

Veritext Legal Solutions
866 299-5127

```
 1    12:13 p.m.                                              12:13:30

 2        Q.   (By Mr. Eiseman)  All right, Ms. Qi.

 3             While we were off the record, I had a

 4    discussion with Ms. Dearborn, and I just want to

 5    say that I have an email here in which counsel for   12:13:34

 6    Uber represented to the special master overseeing

 7    discovery and to counsel for Waymo that you

 8    received, on approximately April 3rd, a redacted

 9    interview memorandum that later became part of the

10    Stroz due-diligence report, and that's what I'm --   12:13:56

11    I've put in front of you, so --

12        A.   Uh-huh.

13        Q.   -- does that refresh your recollection at

14    all about having seen an interview memorandum

15    during the course of the Stroz' due diligence?       12:14:01

16             MS. DEARBORN:  And I would just object to

17    form, and also clarify:  April 3rd, 2016, correct?

18             MR. EISEMAN:  That's right.  That's

19    right.

20             THE DEPONENT:  So I do remember receiving   12:14:12

21    a document.  Honestly, given the length of this, I

22    don't remember if it was this specific file.

23        Q.   (By Mr. Eiseman)  All right.  Do you

24    remember that the document you did receive recapped

25    an interview that was done by Stroz of               12:14:26
```

Page 583

| | | |
|---|---|---|
| 1 | Mr. Levandowski? | 12:14:28 |
| 2 |     MS. DEARBORN:  Objection to form. | |
| 3 |     THE DEPONENT:  I remember there was a | |
| 4 | component of that, yes. | |
| 5 |     Q.  (By Mr. Eiseman)  When you say it was -- | 12:14:46 |
| 6 | "there was a component of that, yes," what do you | |
| 7 | mean? | |
| 8 |     A.  I remember the mention that I notice in | |
| 9 | here about the March 11th meeting.  So I do | |
| 10 | remember that part, but I don't really remember | 12:15:01 |
| 11 | whether the -- it was a full interview, whether it | |
| 12 | was just -- I don't remember the details around it. | |
| 13 |     Q.  All right.  Do you recall reading -- ever | |
| 14 | reading the full interview that Mr. Levandowski | |
| 15 | gave to Stroz? | 12:15:12 |
| 16 |     MS. DEARBORN:  Objection to form. | |
| 17 |     THE DEPONENT:  The full -- the full | |
| 18 | interview? | |
| 19 |     MR. EISEMAN:  Right. | |
| 20 |     THE DEPONENT:  I don't remember. | 12:15:21 |
| 21 |     Q.  (By Mr. Eiseman)  Do you remember | |
| 22 | receiving -- reading a summary of the interview | |
| 23 | beyond the information about the March 11th | |
| 24 | meeting? | |
| 25 |     A.  I don't really remember. | 12:15:33 |