# Exhibit 5

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4                       --oOo--
 5    WAYMO LLC,
 6              Plaintiff,
                                         Case
 7    vs.                        No. 3:17-cv-00939-WHA
 8
      UBER TECHNOLOGIES, INC.;
 9    OTTOMOTTO LLC; OTTO TRUCKING LLC,
               Defendants.
10    _____/
11
12      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
13
14         VIDEOTAPED DEPOSITION OF JUSTIN SUHR
15              FRIDAY, OCTOBER 13, 2017
16
17
18
19
20    Reported by:
21    Anrae Wimberley
22    CSR No. 7778
23    Job No. 2728155
24
25    Pages 1 - 350
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1                UNITED STATES DISTRICT COURT
2               NORTHERN DISTRICT OF CALIFORNIA
3                   SAN FRANCISCO DIVISION
4                        --oOo--
5    WAYMO LLC,
              Plaintiff,
6                                          Case
     vs.                           No. 3:17-cv-00939-WHA
7
     UBER TECHNOLOGIES, INC.;
8    OTTOMOTTO LLC; OTTO TRUCKING LLC,
9             Defendants.
     _____/
10
11
12
13     HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15
16            Transcript of video-recorded deposition
17   of JUSTIN SUHR, taken at Quinn Emanuel Urquhart &
18   Sullivan, LLP, 50 California Street, 22nd Floor,
19   San Francisco, California 94111, beginning at 9:31
20   a.m. and ending at 6:40 p.m. on Friday, October 13,
21   2017, before Anrae Wimberley, Certified Shorthand
22   Reporter No. 7778.
23
24
25
                                               Page 2
```

```
 1    transaction and that, again, it was important that        09:40:54
 2    we took steps to prevent the likelihood of any
 3    even -- inadvertent disclosure of third-party
 4    material to us.
 5        Q.   Did the results of the due diligence             09:41:08
 6    investigation affect Uber's decision to acquire
 7    Ottomotto?
 8        MR. GONZALEZ:  Object to form.
 9        THE WITNESS:  I'm not sure when you say "Uber,"
10    is there a specific person that you have in mind?         09:41:25
11    BY MS. BAILY:
12        Q.   Well, you're here testifying as Uber's
13    corporate representative so I'm talking about Uber.
14        MR. GONZALEZ:  Still vague.  Object to form.
15        THE WITNESS:  Yeah, so maybe you can help me          09:41:40
16    with the question because as I understand it, there
17    were several decision makers at Uber.  And as I
18    mentioned, the diligence process was essentially to
19    bring -- to allow the company to have comfort that
20    there was this robust process that would prevent the      09:42:03
21    likelihood of the transfer of any third-party
22    material to Uber.
23    BY MS. BAILY:
24        Q.   Who were the decision makers at Uber with
25    respect to the decision to acquire Ottomotto?             09:42:19
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | A.   I don't have the full list. | 09:42:24 |
| 2 | Q.   Who can you name sitting here today? | |
| 3 | A.   Travis Kalanick.  I believe board members. | |
| 4 | Beyond that, I would be speculating. | |
| 5 | Q.   What effect did the results of the due | 09:42:48 |
| 6 | diligence investigation have on Travis Kalanick's | |
| 7 | decision to acquire Ottomotto? | |
| 8 | MR. GONZALEZ:  Object to form. | |
| 9 | THE WITNESS:  I would be speculating and to | |
| 10 | some extent it might cause me to waive | 09:43:03 |
| 11 | attorney-client privileged communications. | |
| 12 | BY MS. BAILY: | |
| 13 | Q.   What effect did the results of the due | |
| 14 | diligence investigation have on the Uber board | |
| 15 | members' decision to acquire Ottomotto? | 09:43:16 |
| 16 | MR. GONZALEZ:  Object to form. | |
| 17 | THE WITNESS:  Same answer. | |
| 18 | BY MS. BAILY: | |
| 19 | Q.   Is there anything non-privileged that you | |
| 20 | can tell me here today regarding the effect of the | 09:43:27 |
| 21 | results of the due diligence investigation on Uber's | |
| 22 | decision to acquire Ottomotto? | |
| 23 | MR. GONZALEZ:  Other than what he's already | |
| 24 | testified. | |
| 25 | THE WITNESS:  Yeah, other than what I've | 09:43:41 |

Veritext Legal Solutions
866 299-5127

1   testified.                                                09:43:42

2   BY MS. BAILY:

3       Q.   There's no further non-privileged

4   information that you can provide, other than what

5   you've already testified, regarding the effect of         09:43:48

6   the results of the due diligence investigation on

7   Uber's decision to acquire Ottomotto?

8       A.   I don't believe so.  I don't know if this

9   question is any different than the first -- the

10  earlier one that you asked.                               09:43:58

11      Q.   What did you say to Mr. Poetzscher in the

12  discussion you had to prepare for your testimony

13  here today?

14      A.   I asked him what he believed the effect of

15  the diligence process had on the transaction.             09:44:14

16      Q.   Anything else?

17      A.   Not really, no.

18      Q.   How long was that conversation?

19      A.   Approximately six or seven minutes.

20      Q.   Did you speak with Salle Yoo to prepare          09:44:35

21  for your deposition today?

22      A.   I did not.

23      Q.   Did you speak with Angela Padilla to

24  prepare for your deposition today?

25      A.   I did not.                                       09:44:44

1          Again, there was the memo.  I believe                 11:22:27
2    there may have been other documents, but those more
3    than likely would have been in conjunction with
4    communications that I or others in our legal or
5    business team had with Morrison & Foerster.               11:22:41
6          MS. BAILY:  So are you going to take the
7    position that Uber's knowledge about the due
8    diligence investigation and the results, the interim
9    results of that investigation as of April 11, 2016,
10   is privileged because they may have received those       11:22:56
11   results through MoFo from Stroz?
12         MR. GONZALEZ:  Communications with legal
13   counsel are absolutely privileged and that will
14   continue to be our position.
15         MS. BAILY:  I just want to make sure the record    11:23:14
16   is clear because I didn't ask about the
17   communications.
18         So my question is whether Uber is going to
19   take the position that Uber's factual knowledge
20   about the results being reported on an interim basis    11:23:25
21   by Stroz through April 11, 2016 are, in part,
22   privileged?
23         MR. GONZALEZ:  The answer is yes.  I'm just not
24   sure that you're accurately characterizing what
25   happened.  It's not as though Stroz gave MoFo a         11:23:48

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1   piece of paper and MoFo sent the piece of paper to           11:23:51

2   Uber and now MoFo is saying that that piece of paper

3   is privileged.  I don't think that's --

4           MS. BAILY:  But I'm asking about factual

5   information --                                               11:24:02

6           MR. GONZALEZ:  Yeah.

7           MS. BAILY:  -- from Stroz about the due

8   diligence report.

9              Is it your position that if Stroz provided

10  information to MoFo regarding Anthony Levandowski             11:24:08

11  before April 11, 2016 and Uber got that information

12  from MoFo, that the fact that Uber had that factual

13  information about Mr. Levandowski as of April 11,

14  2016 is privileged?

15          MR. GONZALEZ:  So the communications with             11:24:26

16  Morrison & Foerster are privileged.  That's our

17  position.

18          MS. BAILY:  So that's not my question.  The

19  fact of Uber's knowledge regarding Anthony

20  Levandowski --                                                11:24:36

21          MR. GONZALEZ:  Well, you're assuming a fact.

22  You're assuming a fact.  You're -- you're getting

23  into the communication and trying to pull something

24  out of it.

25          MS. BAILY:  I'm trying to establish what Uber         11:24:45

```
 1   knew regarding the diligence investigation as of        11:24:47

 2   April 11, 2016.

 3           MR. GONZALEZ:  Understood completely.

 4           MS. BAILY:  The facts, regardless of where they

 5   were obtained.                                          11:24:57

 6           MR. GONZALEZ:  I disagree with you.

 7           MS. BAILY:  Are the facts related to the due

 8   diligence agreement that were known by Uber as of

 9   April 11, 2016 privileged?

10           MR. GONZALEZ:  If there's a fact that was known  11:25:03

11   to them only because of the communication with legal

12   counsel, absolutely.  Absolutely.

13   BY MS. BAILY:

14       Q.  Setting aside the attestations that you

15   testified about, did Uber have any interim reports      11:25:19

16   regarding the due diligence investigation as it

17   related to Lior Ron prior to April 11, 2016?

18       A.  I don't recall if it was prior to

19   April 11th, but I know that we had received interim

20   reports about Lior Ron.                                 11:25:39

21       Q.  You don't recall whether any of them were

22   prior to April 11, 2016?

23       A.  I don't, no.

24       Q.  What was the form of those interim

25   reports?                                                11:25:49
```

Page 89

Case 3:17-cv-00939-WHA   Document 2194-6   Filed 11/13/17   Page 10 of 19
HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        MR. GONZALEZ:  Object to form.                        13:35:31

 2        THE WITNESS:  I don't -- I don't know if that's

 3   the case.

 4   BY MS. BAILY:

 5   Q.   Well, it says right here that, "Stroz              13:35:36

 6   performed a forensic analysis of the last access

 7   dates of the files in your personal DropBox account

 8   that you identified as being Aspen documents during

 9   your interview process with Stroz."

10        Do you see that?                                    13:35:49

11   A.   I do.

12   Q.   Is Aspen a code word for Google?

13   A.   Yes.

14   Q.   So Mr. Levandowski did not certify that he

15   did not access the files listed here; right?              13:36:01

16   A.   Right.

17   Q.   He left open the possibility that he

18   personally accessed the Google files listed here, he

19   just couldn't remember; right?

20   A.   I don't know if he's leaving open a                 13:36:16

21   possibility.  What he states here is that he doesn't

22   recall whether he initiated access.

23   Q.   Did that seem credible to you when you

24   reviewed this before April 11, 2016?

25        MR. GONZALEZ:  Instruct you not to answer.          13:36:29
```

Page 150

Veritext Legal Solutions
866 299-5127

```
 1    Attorney-client, mental impression of a lawyer, work        13:36:30
 2    product.
 3    BY MS. BAILY:
 4        Q.   Did you discuss the credibility of the
 5    certification with anyone?                                  13:36:37
 6        MR. GONZALEZ:  I object -- well, you can answer
 7    that yes or no.
 8        THE WITNESS:  Yes.
 9    BY MS. BAILY:
10        Q.   Who?                                               13:36:41
11        MR. GONZALEZ:  I would instruct you not to
12    answer.
13        MS. BAILY:  The identity of the individuals
14    with whom he communicated?
15        MR. GONZALEZ:  Correct.                                 13:36:48
16        MS. BAILY:  Is privileged?
17        MR. GONZALEZ:  Yes.
18        MS. BAILY:  It would appear on a privilege log.
19        MR. GONZALEZ:  Not if you have an oral
20    conversation.                                               13:36:56
21        MS. BAILY:  Sure it would.
22        MR. GONZALEZ:  Don't think so.
23        MS. BAILY:  So just for the record, the
24    identity of individuals that participated in a
25    conversation regarding the credibility of                   13:37:09
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | Mr. Levandowski's certification, there's a privilege | 13:37:12 |
| 2 | claim with respect to that; is that right?  Just for | |
| 3 | the record. | |
| 4 |     MR. GONZALEZ:  I think the record is pretty | |
| 5 | clear. | 13:37:22 |
| 6 |     MS. BAILY:  But is that correct?  I just want | |
| 7 | to make sure I understand. | |
| 8 |     MR. GONZALEZ:  The record is correct. | |
| 9 | BY MS. BAILY: | |
| 10 |     Q.   Did Mr. Levandowski's inability to state | 13:37:28 |
| 11 | clearly that he had not accessed Google proprietary | |
| 12 | information after he left Google raise any concerns | |
| 13 | at Uber? | |
| 14 |     MR. GONZALEZ:  Instruct you not to answer, | |
| 15 | attorney-client work product. | 13:37:41 |
| 16 | BY MS. BAILY: | |
| 17 |     Q.   Did Uber expand the scope of the due | |
| 18 | diligence investigation in light of | |
| 19 | Mr. Levandowski's inability to say one way or | |
| 20 | another whether he had been accessing Google | 13:37:52 |
| 21 | confidential information after he left Google? | |
| 22 |     A.   Is this post April 11th? | |
| 23 |     Q.   Let's take pre-April 11th first.  Once | |
| 24 | Uber received this attestation, did it expand the | |
| 25 | scope of the due diligence investigation in light of | 13:38:12 |

| | | |
|---|---|---|
| 1 | robust? | 15:31:26 |
| 2 |     MR. GONZALEZ:  That question assumes a fact. | |
| 3 | And also object to form. | |
| 4 |     THE WITNESS:  I still feel like this is calling | |
| 5 | for attorney work product.  Maybe we can hash this | 15:31:43 |
| 6 | out at a break.  I just -- again, I'm really just | |
| 7 | trying to be precise and not inadvertently waive. | |
| 8 | That's my -- | |
| 9 | BY MS. BAILY: | |
| 10 |     Q.   So for now, you have no non-privileged | 15:31:55 |
| 11 | information to provide in response to that question | |
| 12 | and you'll talk to your lawyer at a break? | |
| 13 |     A.   I believe what you're asking for is my | |
| 14 | work product opinion on the quality of the diligence | |
| 15 | construct that was set up. | 15:32:11 |
| 16 |     Q.   And just to be clear for the record, my | |
| 17 | position is that you've already testified as to that | |
| 18 | and I'm entitled to explore that further.  So maybe | |
| 19 | you guys can talk about that at the break. | |
| 20 |     A.   Well, and I'll just say that the context | 15:32:25 |
| 21 | of that response was in the context -- a description | |
| 22 | of the effect and the purpose, rather than my | |
| 23 | opinion about the actual process itself. | |
| 24 |     Q.   The context of what response? | |
| 25 |     A.   The use of the word robust was used to | 15:32:41 |

| | | |
|---|---|---|
| 1 | describe what -- sort of the reasons behind the | 15:32:44 |
| 2 | origin to the affect of the Stroz process, not my | |
| 3 | personal or professional opinion of its quality. | |
| 4 |     Q.  I don't think that I understand that | |
| 5 | distinction to be a meaningful one, but you guys can | 15:32:58 |
| 6 | revisit it at a break and decide how you want to | |
| 7 | deal with that question and we can fight over it if | |
| 8 | we need to later. | |
| 9 |     The next whereas clause says, "The Parties | |
| 10 | have agreed that the Outside Expert will continue to | 15:33:13 |
| 11 | analyze the devices, materials and information | |
| 12 | provided by each Diligenced Employee solely for the | |
| 13 | purpose of completing a final report." | |
| 14 |     Is that a reference to what we've already | |
| 15 | discussed today as the ongoing investigation by | 15:33:27 |
| 16 | Stroz related to the due diligence protocols? | |
| 17 |     A.  Yes. | |
| 18 |     Q.  And then it says, "The Outside Expert may | |
| 19 | give interim reports to its Clients (with the | |
| 20 | participation of the Completed Diligenced Employees' | 15:33:41 |
| 21 | counsel) regarding any matters which the Outside | |
| 22 | Expert believes may be subject to or included in the | |
| 23 | final report." | |
| 24 |     My question is:  Did Uber ever receive any | |
| 25 | interim reports from Stroz between April 11, 2016 | 15:33:55 |

| | | |
|---|---|---|
| 1 | and the issuance of the final report on August 5th, | 15:34:00 |
| 2 | 2016? | |
| 3 |     A.   Yes. | |
| 4 |     Q.   What were those interim reports? | |
| 5 |     A.   Are you asking for the content of those | 15:34:11 |
| 6 | reports? | |
| 7 |     Q.   Yes, if they're not privileged. | |
| 8 |     A.   So the entirely of any interim report that | |
| 9 | I would have received would have been through | |
| 10 | Morrison & Foerster in the context of legal advice. | 15:34:21 |
| 11 |     MR. GONZALEZ:  You need to clarify.  Because | |
| 12 | she had asked you about receiving reports from | |
| 13 | Stroz, which is why I didn't object, and you said | |
| 14 | yes. | |
| 15 |     THE WITNESS:  That's my mistake then. | 15:34:31 |
| 16 |     So any interim report that I would have | |
| 17 | received would not have been directly from Stroz. | |
| 18 | It would have been from Morrison & Foerster in the | |
| 19 | context of legal advice. | |
| 20 | BY MS. BAILY: | 15:34:46 |
| 21 |     Q.   You received the April 2, 2016 Levandowski | |
| 22 | interview memorandum from Morrison & Foerster; | |
| 23 | correct? | |
| 24 |     A.   I believe so, yes. | |
| 25 |     Q.   And you testified at length about that | 15:34:57 |

```
 1   memorandum here today; right?                              15:35:00

 2       A.   I testified at length about what's

 3   contained in that memorandum, not the advice that I

 4   got concerning the contents of that memorandum.

 5       Q.   And I'm not asking for any advice that you        15:35:09

 6   got from your counsel about anything.

 7            MR. GONZALEZ:  You testified about a document

 8   that's been produced in the litigation.  That's the

 9   distinction.

10            MS. BAILY:  Again, I think we're going to have    15:35:23

11   a dispute about that being a distinction.

12   BY MS. BAILY:

13       Q.   I guess I just want to establish for the

14   record, is there anything non-privileged that you

15   can tell me about interim reporting related to the         15:35:35

16   due diligence between April 11, 2016 and the

17   issuance of the final report?

18       A.   I don't believe so.  I think the entirety

19   of any information that I received about the due

20   diligence after April 11th would have been through         15:35:53

21   Morrison & Foerster.

22       Q.   Did Uber learn any new facts regarding the

23   due diligence that it did not have prior to

24   April 11, 2016 -- between April 11, 2016 and the

25   issuance of the final report?                              15:36:11
```

| | | |
|---|---|---|
| 1 | MR. GONZALEZ:  So I would instruct you not to | 15:36:13 |
| 2 | include in your answer any information that may have | |
| 3 | been communicated to you by legal counsel.  If you | |
| 4 | received new facts in a non-privileged context, you | |
| 5 | can share that with counsel. | 15:36:22 |
| 6 | THE WITNESS:  There wouldn't be any information | |
| 7 | shared with me outside of external counsel. | |
| 8 | BY MS. BAILY: | |
| 9 | Q.  When the indemnification was signed | |
| 10 | on -- strike that. | 15:36:50 |
| 11 | As of April 11, 2016 when the | |
| 12 | indemnification agreement was signed, through the | |
| 13 | due diligence process, Uber was already aware of | |
| 14 | some acts that would fall within the indemnification | |
| 15 | agreement; is that right? | 15:37:08 |
| 16 | MR. GONZALEZ:  I'm going to instruct him not to | |
| 17 | answer that question because that calls for a legal | |
| 18 | opinion as to what might fall within the | |
| 19 | indemnification agreement.  It's work product and | |
| 20 | attorney-client. | 15:37:23 |
| 21 | BY MS. BAILY: | |
| 22 | Q.  Because the due diligence investigation | |
| 23 | had not been completed as of April 11, 2016, Uber | |
| 24 | was agreeing to indemnify the diligenced employees | |
| 25 | for bad acts that Uber was potentially not aware of | 15:37:37 |

Veritext Legal Solutions
866 299-5127

```
 1   self-identified devices or repositories, that it              15:41:44
 2   would then be obligated to indemnify them for those
 3   claims -- I think they're set out in a paragraph in
 4   here, right -- subject to some exceptions that are
 5   set forth in this agreement.                                    15:42:03
 6       Q.   And as of the time the indemnification
 7   agreement was signed, the data contained in the
 8   various self-identified devices and repositories had
 9   not yet been fully evaluated by Stroz; right?
10       A.   The data contained in the repositories had           15:42:23
11   not been fully evaluated, but there were lengthy
12   interviews and there were last access reports and
13   there were devices collected and the review had
14   begun.
15       Q.   And just to be clear, the interviews with            15:42:42
16   the diligenced employees were conducted before any
17   analysis was done on their devices; right?
18       A.   Yes.
19       Q.   Did the Uber board have to approve the
20   acquisition agreement with Ottomotto?                          15:42:57
21       A.   I believe so.
22       Q.   Prior to April 11, 2016 when the
23   acquisition agreement was signed, what was the Uber
24   board told about the Stroz due diligence
25   investigation?                                                 15:43:14
```

Page 229

| | | |
|---|---|---|
| 1 | A. I don't have that information. | 15:43:18 |
| 2 | MS. BAILY: Let me mark 8365. | |
| 3 | (Plaintiff's Exhibit 8365 was marked.) | |
| 4 | BY MS. BAILY: | |
| 5 | Q. So I just handed you an exhibit. It's a | 15:44:28 |
| 6 | PowerPoint presentation. It says "Project Zing | |
| 7 | Review" on the top. | |
| 8 | Have you seen this before? | |
| 9 | A. I have. | |
| 10 | Q. Did you participate in preparing it? | 15:44:41 |
| 11 | A. I don't believe so. | |
| 12 | Q. Did you see it at or around April 11, | |
| 13 | 2016? | |
| 14 | A. I believe so. | |
| 15 | Q. For what purpose was this slide deck | 15:45:03 |
| 16 | prepared? | |
| 17 | A. I believe this was a summary of the | |
| 18 | proposed transaction. | |
| 19 | Q. Who was the slide deck presented to? | |
| 20 | A. I believe it was presented to the board. | 15:45:23 |
| 21 | Q. Who created the slides? | |
| 22 | A. I don't know. | |
| 23 | Q. Do you know who reviewed them before they | |
| 24 | were shown to the board, if anybody? | |
| 25 | A. No, I don't have -- I don't know exactly | 15:45:38 |

Veritext Legal Solutions
866 299-5127