# Exhibit 6

1  UNITED STATES DISTRICT COURT
2  NORTHERN DISTRICT OF CALIFORNIA
3  SAN FRANCISCO DIVISION
4
5  _____
6  WAYMO LLC,                                 )
7           Plaintiff,                        )
8     vs.                                     ) Case No.
9  UBER TECHNOLOGIES, INC.;                   ) 17-cv-00939-WHA
10 OTTOMOTTO, LLC; OTTO TRUCKING LLC,         )
11          Defendants.                       )
   _____)
12
13  HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
14
15    VIDEOTAPED DEPOSITION OF ANGELA L. PADILLA, ESQ.
16              San Francisco, California
17              Monday, October, 2017
18                    Volume I
19
20  Reported by:
21  MARY J. GOFF
22  CSR No. 13427
23  JOB No. 2716665
24
25  PAGES 1-111

Page 1

```
1              UNITED STATES DISTRICT COURT
2            NORTHERN DISTRICT OF CALIFORNIA
3               SAN FRANCISCO DIVISION
4
5    _____
6    WAYMO LLC,                        )
7              Plaintiff,              )
8       vs.                            ) Case No.
9    UBER TECHNOLOGIES, INC.;          ) 17-cv-00939-WHA
10   OTTOMOTTO, LLC; OTTO TRUCKING LLC,)
11             Defendants.             )
12   _____)
13
14
15
16        Highly Confidential Videotaped Deposition of
17   ANGELA L. PADILLA, ESQ. Volume I, taken on behalf of
18   Plaintiff Waymo LLC, at Quinn Emanuel Urquhart &
19   Sullivan, LLP, 50 California Street, 22nd Floor,
20   beginning at 9:11 a.m. and ending at 1:34 p.m., on
21   October 2, 2017, before MARY GOFF, Certified
22   Shorthand Reporter No. 13427.
23
24
25
```

```
 1      A    I'm comfortable saying that I retained          09:28:41
 2   them at VMWare, but I can't discuss the particular      09:28:43
 3   transactions, because those would be attorney/client    09:28:47
 4   privileged based on transactions that VMWare did.       09:28:49
 5      Q    (BY MR. PERLSON) Okay.  How -- how many         09:28:53
 6   transactions at VMWare did you retain Stroz for?        09:28:55
 7      A    I cannot remember the exact number, but         09:28:59
 8   maybe to two three.                                     09:29:04
 9      Q    And you won't answer questions regarding        09:29:11
10   the specifics of those transactions or the              09:29:13
11   investigations; is that fair?                           09:29:16
12      A    That's fair, because it's privileged to my     09:29:19
13   former employer.                                        09:29:22
14      Q    And in what ways -- well, never mind.           09:29:32
15           Other than the general idea of retaining        09:29:57
16   Stroz Friedberg, did you -- what -- what                09:30:00
17   specifically did you have in mind that they would be    09:30:07
18   doing as part of their investigation?                   09:30:09
19           MR. GONZALEZ:  So I'll let her answer this      09:30:13
20   question if you'll agree there's not a waiver.          09:30:15
21           MR. PERLSON:  Nope.                             09:30:18
22           MR. GONZALEZ:  Okay.  Then I'll instruct        09:30:19
23   her.  The engagement letter lays out why they were      09:30:20
24   engaged, if you want specifics, as does the Stroz       09:30:25
25   report.                                                 09:30:28
```

| | | |
|---|---|---|
| 1 | Q (BY MR. PERLSON) Okay. You're following | 09:30:30 |
| 2 | the instruction, I assume? | 09:30:31 |
| 3 | A I am. | 09:30:32 |
| 4 | Q Do you -- | 09:30:32 |
| 5 | MR. GONZALEZ: You have a Vela-bound typed | 09:31:05 |
| 6 | outline? | 09:31:07 |
| 7 | MR. PERLSON: Huh? | 09:31:09 |
| 8 | MR. GONZALEZ: You have a Vela-bound typed | 09:31:09 |
| 9 | outline. I'm incredibly impressed. | 09:31:11 |
| 10 | MR. PERLSON: I think if you looked at it, | 09:31:14 |
| 11 | you would not be nearly as impressed. | 09:31:16 |
| 12 | Q (BY MR. PERLSON) Do you know the specifics | 09:31:34 |
| 13 | of what Stroz did in their investigation? | 09:31:35 |
| 14 | MR. GONZALEZ: And just yes or no. | 09:31:39 |
| 15 | A Generally, yes. | 09:31:43 |
| 16 | Q (BY MR. PERLSON) What's your general | 09:31:45 |
| 17 | understanding? | 09:31:47 |
| 18 | MR. GONZALEZ: And again, if you will | 09:31:48 |
| 19 | agree that it's not a waiver, I will let her answer. | 09:31:49 |
| 20 | MR. PERLSON: I -- I will not. | 09:31:53 |
| 21 | MR. GONZALEZ: Okay. Then I'll instruct | 09:31:54 |
| 22 | her not to answer. | 09:31:55 |
| 23 | Q (BY MR. PERLSON) You'll follow the | 09:31:57 |
| 24 | instruction, I assume? | 09:31:58 |
| 25 | A I will. | 09:31:59 |

| | | |
|---|---|---|
| 1 | Q Were there any particular concerns that | 09:32:31 |
| 2 | you had regarding the individuals involved in | 09:32:36 |
| 3 | Ottomotto that prompted you to have the idea to | 09:32:43 |
| 4 | retain Stroz in relation to the Ottomotto | 09:32:54 |
| 5 | transaction? | 09:32:58 |
| 6 | MR. GONZALEZ: And you agree it's not a | 09:32:58 |
| 7 | waiver if she answers that? | 09:33:00 |
| 8 | MR. PERLSON: No. | 09:33:01 |
| 9 | MR. GONZALEZ: Okay. Then we'll instruct | 09:33:01 |
| 10 | her not to answer. | 09:33:05 |
| 11 | A I'll follow the instruction. | 09:33:06 |
| 12 | MR. GONZALEZ: In general, I'll tell you | 09:33:10 |
| 13 | that I'm going to instruct not to answer anything | 09:33:11 |
| 14 | about her state of mind, if that helps at all. | 09:33:13 |
| 15 | Q (BY MR. PERLSON) Do you know whether Stroz | 09:33:48 |
| 16 | Friedberg investigated anything beyond the personal | 09:33:50 |
| 17 | devices of the diligenced employees? | 09:33:58 |
| 18 | A Answer yes or no or -- | 09:34:06 |
| 19 | MR. GONZALEZ: Yeah, same -- same | 09:34:08 |
| 20 | question. If she answers, do you agree it's not a | 09:34:09 |
| 21 | waiver? | 09:34:12 |
| 22 | MR. PERLSON: No. | 09:34:13 |
| 23 | MR. GONZALEZ: Then I'll instruct her not | 09:34:13 |
| 24 | to answer. | 09:34:15 |
| 25 | Q (BY MR. PERLSON) Do you know whether Stroz | 09:34:20 |

```
 1   Friedberg retained -- let me start over again.           09:34:22
 2           Do you know whether Stroz Friedberg did          09:34:25
 3   any investigations into any Ottomotto document           09:34:28
 4   repositories?                                            09:34:33
 5           MR. GONZALEZ:  Same instruction.                 09:34:35
 6       Q   (BY MR. PERLSON) That you will follow?           09:34:36
 7       A   Yes.                                             09:34:40
 8       Q   Do you know when Stroz began their               09:34:48
 9   investigation in relation to the Ottomotto               09:34:52
10   transaction?                                             09:34:56
11           MR. GONZALEZ:  You can -- you can answer         09:34:59
12   that to the extent it's disclosed in the Stroz           09:35:00
13   report, if you can remember.                             09:35:03
14       A   My general sense is it was in the                09:35:06
15   February-March time frame.                               09:35:08
16       Q   (BY MR. PERLSON) When is the first time          09:35:31
17   that you personally spoke with Anthony Levandowksi?      09:36:18
18       A   I know it was after the deal downloads.          09:36:30
19   Gosh, it -- it might have been late summer, early        09:36:43
20   fall --                                                  09:36:52
21       Q   Yeah.                                            09:36:53
22       A   -- of 2016.                                      09:36:53
23       Q   So you personally hadn't spoke with              09:36:56
24   Mr. Levandowski until after August of 2016?              09:37:03
25       A   That could be right.  It's -- it's really       09:37:17
```

Page 21

| | | |
|---|---|---|
| 1 | Q    -- was August of 2016. | 09:41:45 |
| 2 | A    I think so.  I think there was a final | 09:41:47 |
| 3 | report before the deal closed. | 09:41:49 |
| 4 | Q    And had you received any interim reports | 09:41:58 |
| 5 | from Stroz before the final report? | 09:42:02 |
| 6 | MR. GONZALEZ:  You can answer that "yes" | 09:42:07 |
| 7 | or "no." | 09:42:08 |
| 8 | A    "Interim" meaning that could be in -- oral | 09:42:13 |
| 9 | or writing? | 09:42:18 |
| 10 | Q    (BY MR. PERLSON) Yeah. | 09:42:19 |
| 11 | A    Yes. | 09:42:20 |
| 12 | Q    Okay.  And when do you recall the first | 09:42:20 |
| 13 | interim report would have been? | 09:42:26 |
| 14 | A    So a couple of things.  First, I don't | 09:42:34 |
| 15 | think I got anything directly from Stroz.  On this | 09:42:36 |
| 16 | basis, I believe anything I received was told to me | 09:42:39 |
| 17 | by either outside counsel or my colleagues, in-house | 09:42:43 |
| 18 | counsel. | 09:42:47 |
| 19 | I'm 99.9 percent sure I never got a -- | 09:42:47 |
| 20 | never had a conversation with Stroz about his | 09:42:51 |
| 21 | report. | 09:42:54 |
| 22 | The second thing is I feel like the | 09:42:55 |
| 23 | interim -- I didn't even think of them candidly as | 09:42:57 |
| 24 | interim reports.  I thought of them as just kind of | 09:43:00 |
| 25 | updates, check-ins.  Probably in March, maybe early | 09:43:03 |

| | | |
|---|---|---|
| 1 | April -- | 09:43:09 |
| 2 | Q   Okay. | 09:43:10 |
| 3 | A   -- late March, early April. | 09:43:10 |
| 4 | Q   So just to -- | 09:43:12 |
| 5 | A   And I do not remember a first one as | 09:43:14 |
| 6 | opposed to a second or a third one. | 09:43:15 |
| 7 | Q   Sure.  And so in relation to the Stroz | 09:43:19 |
| 8 | Friedberg due diligence that was gone in connection | 09:43:21 |
| 9 | with the Otto acquisition, is it fair to say that -- | 09:43:24 |
| 10 | that you personally were not interfacing with Stroz | 09:43:32 |
| 11 | Friedberg in relation to their investigation? | 09:43:35 |
| 12 | A   That's correct.  I delegated that work. | 09:43:37 |
| 13 | Q   So if Stroz was giving reports on what was | 09:43:44 |
| 14 | going on in the investigation, you would have heard | 09:43:47 |
| 15 | those reports from someone that Stroz had | 09:43:55 |
| 16 | communicated with other than you? | 09:43:58 |
| 17 | A   That's right.  Secondhand. | 09:44:00 |
| 18 | Q   You weren't hanging out with them looking | 09:44:08 |
| 19 | at Mr. Levandowski's computers? | 09:44:10 |
| 20 | A   I was not. | 09:44:12 |
| 21 | MR. GONZALEZ:  What's that number? | 09:45:18 |
| 22 | MR. PERLSON:  That's a good question. | 09:45:20 |
| 23 | 8101. | 09:45:24 |
| 24 | (Exhibit 8101 was marked for | 09:45:25 |
| 25 | identification and is attached to the transcript.) | 09:45:25 |

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q (BY MR. PERLSON) This one was already | 09:45:26 |
| 2 | marked. I'll get you a copy in a second. | 09:45:37 |
| 3 | MR. GONZALEZ: Thanks. | 09:45:40 |
| 4 | A Should I look at both at the same time or | 09:45:51 |
| 5 | one before the other? | 09:45:53 |
| 6 | Q (BY MR. PERLSON) Yeah. So -- | 09:45:55 |
| 7 | MR. GONZALEZ: And can you give me a copy | 09:45:56 |
| 8 | of the other one? You just gave me one document. | 09:45:58 |
| 9 | MR. PERLSON: Oh, sorry. | 09:46:01 |
| 10 | Q (BY MR. PERLSON) So if you look at what's | 09:46:17 |
| 11 | been previously marked as "7111," the bigger | 09:46:18 |
| 12 | document, it refers to "Draft Summary Interview of | 09:46:22 |
| 13 | Anthony Levandowksi." | 09:46:26 |
| 14 | Do you see that? | 09:46:27 |
| 15 | A I see that. | 09:46:28 |
| 16 | Q And then in the 8101, there is an e-mail | 09:46:29 |
| 17 | that's forwarded eventually to you regarding the | 09:46:41 |
| 18 | redacted "Memo Re Interview of Anthony Levandowksi." | 09:46:46 |
| 19 | Do you see that? | 09:46:53 |
| 20 | A I do, yes. | 09:46:55 |
| 21 | Q Okay. So do you recall seeing Exhibit | 09:46:56 |
| 22 | 7111 previously? | 09:47:03 |
| 23 | A Generally, yes. | 09:47:09 |
| 24 | Q Okay. And you think it was at or about | 09:47:10 |
| 25 | the -- the time of this April 2 e-mail? | 09:47:12 |

Page 27

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | A    Do you know this exhibit doesn't have any | 09:47:16 |
| 2 | pages in it? | 09:47:18 |
| 3 | MR. GONZALEZ:  Yeah.  I was going to say, | 09:47:19 |
| 4 | Counsel, you have got a bunch of blank pages, which | 09:47:20 |
| 5 | I assume is probably not what you intended. | 09:47:24 |
| 6 | MR. PERLSON:  I believe that my copy | 09:47:26 |
| 7 | doesn't have that.  That's weird. | 09:47:28 |
| 8 | MR. GONZALEZ:  Yeah, mine -- | 09:47:29 |
| 9 | A    Yeah, there's nothing after page 4. | 09:47:30 |
| 10 | MR. GONZALEZ:  -- now, the other thing I'm | 09:47:33 |
| 11 | going to note is that the -- the e-mail to | 09:47:34 |
| 12 | Ms. Padilla says "Redacted Memorandum." | 09:47:36 |
| 13 | Maybe that's why it's all black -- or | 09:47:40 |
| 14 | blank.  Are those the redactions? | 09:47:43 |
| 15 | MR. PERLSON:  I think that's it's -- it's | 09:47:45 |
| 16 | a copying error -- | 09:47:47 |
| 17 | MR. GONZALEZ:  Okay. | 09:47:50 |
| 18 | A    Can I see -- | 09:47:52 |
| 19 | MR. PERLSON:  -- which we can -- | 09:47:52 |
| 20 | A    -- the document? | 09:47:52 |
| 21 | MR. PERLSON:  -- rectify it before I ask | 09:47:53 |
| 22 | questions about it -- | 09:47:55 |
| 23 | A    Okay. | 09:47:57 |
| 24 | MR. PERLSON:  -- which I think is fair. | 09:47:57 |
| 25 | A    Thank you. | 09:47:58 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | MR. GONZALEZ: All right. And -- and | 09:47:58 |
| 2 | just -- again, I want to make sure that what you | 09:47:59 |
| 3 | show her is the redacted one that was attached to | 09:48:01 |
| 4 | the -- | 09:48:04 |
| 5 | MR. PERLSON: Well -- | 09:48:04 |
| 6 | MR. GONZALEZ: -- e-mail. | 09:48:04 |
| 7 | MR. PERLSON: -- you can make your | 09:48:05 |
| 8 | objections, if you want. Can -- | 09:48:07 |
| 9 | MR. GONZALEZ: All right. Okay. | 09:48:08 |
| 10 | MR. PERLSON: -- and I -- I don't think I | 09:48:08 |
| 11 | really asked her a question that necessarily | 09:48:09 |
| 12 | conflicted with any of that so... | 09:48:11 |
| 13 | MR. GONZALEZ: All right. Go for it. | 09:48:14 |
| 14 | MR. PERLSON: Well, I'll get -- | 09:48:15 |
| 15 | MR. GONZALEZ: Do you want the blank -- do | 09:48:16 |
| 16 | you want the blank pages back? | 09:48:17 |
| 17 | MR. PERLSON: That's not very useful to | 09:48:23 |
| 18 | anybody. | 09:48:26 |
| 19 | (Exhibit 7111 was retained by counsel.) | 09:48:27 |
| 20 | Q  (BY MR. PERLSON) Do you know whether Stroz | 09:48:42 |
| 21 | Friedberg was able to complete its investigation | 09:48:43 |
| 22 | before the signing of the April 11 Merger Agreement? | 09:48:49 |
| 23 | MR. GONZALEZ: So same -- same question to | 09:49:02 |
| 24 | you, Counsel. If I let her answer that, will you | 09:49:03 |
| 25 | agree it's not a waiver? | 09:49:06 |

Page 29

| | | |
|---|---|---|
| 1 | MR. PERLSON: Nope. | 09:49:08 |
| 2 | MR. GONZALEZ: Then I'm going to instruct | 09:49:09 |
| 3 | her. Because as she has indicated earlier, she had | 09:49:10 |
| 4 | no conversations with Stroz. And any information | 09:49:12 |
| 5 | she would have responsive to that would have come | 09:49:16 |
| 6 | from privileged discussions. | 09:49:19 |
| 7 | And again, I'm willing to let her answer | 09:49:20 |
| 8 | some of these general background questions and move | 09:49:23 |
| 9 | things along, but not if you're going to take the | 09:49:25 |
| 10 | position that all of a sudden we waive the | 09:49:27 |
| 11 | privilege. | 09:49:29 |
| 12 | MR. PERLSON: Yeah, I -- I reject the | 09:49:30 |
| 13 | proposition that she could have only learned about | 09:49:31 |
| 14 | those things by virtue of privileged conversations. | 09:49:31 |
| 15 | But you're -- you know, you're free to instruct her | 09:49:35 |
| 16 | as you want, obviously. | 09:49:37 |
| 17 | MR. GONZALEZ: You can ask her about | 09:49:39 |
| 18 | nonprivileged conversations she had. | 09:49:40 |
| 19 | Q (BY MR. PERLSON) Do you know whether Stroz | 09:49:55 |
| 20 | ever communicated to Uber or its counsel that it did | 09:49:59 |
| 21 | not have sufficient time to finish its investigation | 09:50:05 |
| 22 | before the April 11 Merger Agreement with Otto was | 09:50:14 |
| 23 | signed? | 09:50:23 |
| 24 | MR. GONZALEZ: If you have any | 09:50:25 |
| 25 | nonprivileged information, you can tell him that. | 09:50:26 |

| | | |
|---|---|---|
| 1 | Otherwise, I would instruct you if your information | 09:50:28 |
| 2 | only came from a privileged source. | 09:50:31 |
| 3 | A     So to be clear, the only information that | 09:50:33 |
| 4 | I had would have been coming from Eric Tate, | 09:50:37 |
| 5 | possibly others at MoFo. | 09:50:42 |
| 6 | For example, I see Anna Ferrari's name | 09:50:45 |
| 7 | here.  I know she was pregnant and had a baby later | 09:50:47 |
| 8 | in the year, but I think she was still working here. | 09:50:50 |
| 9 | So either from Eric or Anna or from my | 09:50:52 |
| 10 | colleagues, Justin Suhr, Christian.  You know, | 09:50:55 |
| 11 | Andrew.  Just the -- the lawyers, both in-house and | 09:51:00 |
| 12 | at -- outside counsel who were working on the deal. | 09:51:04 |
| 13 | I never spoke to anyone outside of it. | 09:51:06 |
| 14 | MR. GONZALEZ:  So on that basis, I'm going | 09:51:09 |
| 15 | to instruct her not to answer. | 09:51:11 |
| 16 | MR. PERLSON:  Well, that's a fine | 09:51:13 |
| 17 | instruction.  Again, I -- I don't think that just | 09:51:15 |
| 18 | because you would have gotten information from | 09:51:17 |
| 19 | lawyers means that everything you received is -- was | 09:51:21 |
| 20 | privileged.  But if -- if you want to instruct on | 09:51:26 |
| 21 | that basis, again, that's fine. | 09:51:27 |
| 22 | Q     (BY MR. PERLSON) And so you're following | 09:51:32 |
| 23 | that instruction? | 09:51:34 |
| 24 | A     I am.  We were working together to give | 09:51:35 |
| 25 | advice to the company, so yes. | 09:51:37 |

| | | |
|---|---|---|
| 1 | with any of the files listed in Section 1 below on | 10:00:18 |
| 2 | March 10, 2016 or January 24, 2016. | 10:00:23 |
| 3 | Do you see that? | 10:00:32 |
| 4 | A   Yes, I do. | 10:00:32 |
| 5 | Q   Okay.  And -- and there's a -- do you see | 10:00:33 |
| 6 | there's a long detailed list that follows that | 10:00:38 |
| 7 | statement? | 10:00:40 |
| 8 | A   Yeah, I see that. | 10:00:46 |
| 9 | Q   Did Uber find that explanation to be | 10:00:48 |
| 10 | plausible -- | 10:00:52 |
| 11 | MR. GONZALEZ:  Ob -- | 10:00:53 |
| 12 | Q   (BY MR. PERLSON) -- that he would not know | 10:00:53 |
| 13 | of whether he had initiated access with any of the | 10:00:54 |
| 14 | files listed in Section 1? | 10:00:59 |
| 15 | MR. GONZALEZ:  I -- I'm going to object | 10:01:02 |
| 16 | and instruct you not to answer, unless you have some | 10:01:03 |
| 17 | nonprivileged information on that point. | 10:01:06 |
| 18 | A   No, I have nothing that's not privileged. | 10:01:10 |
| 19 | Q   (BY MR. PERLSON) Did Uber ask Stroz | 10:01:18 |
| 20 | Friedberg whether it found this -- that -- | 10:01:19 |
| 21 | Mr. Levandowski's indication that he did not recall | 10:01:24 |
| 22 | whether he had initiated access with any of the | 10:01:30 |
| 23 | files in Section 1 -- let me start over.  Let me ask | 10:01:33 |
| 24 | that question again. | 10:01:41 |
| 25 | Did the Uber ask Stroz Friedberg to | 10:01:42 |

Page 35

```
 1   investigate further in relation to Mr. Levandowski's       10:01:46

 2   response that he did not recall whether he initiated       10:01:55

 3   access with any of the files listed in Section 1?          10:01:58

 4           MR. GONZALEZ:  Same instruction.  If you           10:02:03

 5   have nonprivileged information, you can share that         10:02:03

 6   with him.                                                   10:02:05

 7       A    Anything I know is -- is privileged.              10:02:07

 8       Q    (BY MR. PERLSON) Would you agree that as          10:02:18

 9   of April 11, 2016, Uber could not be sure one way or       10:02:19

10   the other whether Mr. Levandowski had intentionally        10:02:24

11   accessed or retained Google confirmation -- Google         10:02:30

12   confidential confirmation in his work at Ottomotto?        10:02:34

13           MR. GONZALEZ:  I'm going to instruct you           10:02:38

14   not to answer, mental impression.                          10:02:40

15       Q    (BY MR. PERLSON) Would you agree that as          10:02:48

16   of April 11, 2016, Uber had information that showed        10:02:49

17   that Mr. Levandowski had accessed Google                   10:02:55

18   confidential information at a time in which he was         10:03:01

19   also working for Ottomotto?                                10:03:07

20           MR. GONZALEZ:  Same instruction.  If you           10:03:09

21   have any nonprivileged information, you can share         10:03:09

22   that.                                                      10:03:13

23       A    Everything I know came in connection with         10:03:14

24   my work representing the company.                          10:03:16

25       Q    (BY MR. PERLSON) So you can't answer that         10:03:20
```

| | | |
|---|---|---|
| 1 | without revealing confidential information -- | 10:03:25 |
| 2 | A    That's true. | 10:03:27 |
| 3 | Q    -- or privileged information?  Sorry. | 10:03:28 |
| 4 | A    Yes, privileged information. | 10:03:29 |
| 5 | Q    Would you agree that as of April 11, 2016, | 10:03:37 |
| 6 | Uber had information that showed that | 10:03:43 |
| 7 | Mr. Levandowski possessed Google information -- | 10:03:44 |
| 8 | Google confidential information at the same time he | 10:03:49 |
| 9 | was also working for Ottomotto? | 10:03:52 |
| 10 | MR. GONZALEZ:  Same instruction. | 10:03:56 |
| 11 | Q    (BY MR. PERLSON) Which you will follow | 10:03:59 |
| 12 | advice? | 10:04:04 |
| 13 | A    Yes. | 10:04:04 |
| 14 | Q    Do you know whether Uber required | 10:04:19 |
| 15 | Mr. Levandowski to sign an attestation that he would | 10:04:21 |
| 16 | not use Google confidential information at Uber? | 10:04:25 |
| 17 | A    It would be our practice to do that. | 10:04:34 |
| 18 | Q    Do you know whether it did or not | 10:04:36 |
| 19 | specifically as to Levandowski? | 10:04:38 |
| 20 | A    I think he did. | 10:04:40 |
| 21 | Q    Do you recall when that was? | 10:04:41 |
| 22 | A    It's generally before people are | 10:04:44 |
| 23 | onboarded.  It's part of the HR process. | 10:04:47 |
| 24 | Q    Have you ever personally seen | 10:04:50 |
| 25 | Mr. Levandowski's -- any -- let me start over again. | 10:04:52 |

Veritext Legal Solutions
866 299-5127