# Exhibit 9

WAYMO & UBER CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN FRANCISCO DIVISION
 4                         ---oOo---
 5
 6   WAYMO LLC,
 7         Plaintiff,
 8   vs.                                  No. 3:17-cv-00939-WHA
 9   UBER TECHNOLOGIES, INC.;
     OTTOMOTTO LLC; OTTO TRUCKING,
10   INC.,
11         Defendants.
     _____/
12
13      WAYMO & UBER CONFIDENTIAL ATTORNEYS' EYES ONLY
14
15       VIDEOTAPED DEPOSITION OF CAMERON POETZSCHER
16                 SAN FRANCISCO, CALIFORNIA
17                  MONDAY, JUNE 19, 2017
18
19
20   BY:  ANDREA M. IGNACIO,
21   CSR, RPR, CRR, CCRR, CLR
22   CSR LICENSE NO. 9830
23   JOB NO. 2642012
24
25   Pages 1 - 374
```

Page 1

WAYMO & UBER CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1             UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                SAN FRANCISCO DIVISION
 4                      ---oOo---
 5   WAYMO LLC,
 6         Plaintiff,
 7   vs.                          No. 3:17-cv-00939-WHA
 8   UBER TECHNOLOGIES, INC.;
     OTTOMOTTO LLC; OTTO TRUCKING,
 9   INC.,
10         Defendants.
     _____/
11
12
13         Videotaped Deposition of Cameron Poetzscher,
14      taken on behalf of the Plaintiffs, on June 19,
15      2017, at Quinn, Emanuel, Urquhart & Sullivan, LLP,
16      50 California Street, 22nd Floor, San Francisco,
17      California 94111, beginning 8:59 a.m., and
18      commencing at 5:17 p.m., Pursuant to Notice, and
19      before me, ANDREA M. IGNACIO, CSR, RPR, CRR,
20      CLR ~ License No. 9830.
21
22
23
24
25
```

Veritext Legal Solutions
866 299-5127

WAYMO & UBER CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | So that's what was -- that's what drove the | 15:06 |
| 2 | decision, as far as I understand it. | 15:06 |
| 3 |     MS. ROBERTS:  Q.  And, to make sure I have | 15:06 |
| 4 | all of the timing correct, is it still true, up until | 15:06 |
| 5 | today, that the only acquisition that Uber has been | 15:07 |
| 6 | involved in, in which a forensic expert was retained | 15:07 |
| 7 | to conduct due diligence, was the Otto acquisition? | 15:07 |
| 8 |   A  As far as I'm aware. | 15:07 |
| 9 |   Q  And, were you personally involved in any | 15:07 |
| 10 | discussions about retaining a forensic expert to | 15:07 |
| 11 | conduct due diligence? | 15:07 |
| 12 |     MR. JACOBS:  You can answer that yes or no | 15:07 |
| 13 | without giving details yet. | 15:07 |
| 14 |     THE WITNESS:  Yes. | 15:07 |
| 15 |     MS. ROBERTS:  Q.  Who did you have | 15:07 |
| 16 | discussions with? | 15:07 |
| 17 |     MR. JACOBS:  You can answer that question. | 15:07 |
| 18 |     THE WITNESS:  Our internal attorneys. | 15:07 |
| 19 |     MS. ROBERTS:  Q.  When did those discussions | 15:07 |
| 20 | take place? | 15:07 |
| 21 |   A  Sometime before the forensic expert was | 15:07 |
| 22 | hired.  I don't recall exactly.  I believe it was | 15:07 |
| 23 | before this meeting in March.  So, I think it would | 15:07 |
| 24 | have been January or February. | 15:07 |
| 25 |   Q  Do you know when the forensic expert was | 15:07 |

Veritext Legal Solutions
866 299-5127

```
 1   hired?                                                    15:07
 2      A   No, I don't recall.                                15:07
 3      Q   And, in the discussions in which you were          15:07
 4   involved about retaining a forensic expert to conduct     15:08
 5   due diligence, what was discussed?                        15:08
 6          MR. JACOBS:  So, to the extent the                 15:08
 7   discussions involved requests for legal advice from       15:08
 8   counsel and advice from counsel, I need to instruct       15:08
 9   you not to answer those questions.                        15:08
10          If there were discussions separate from that       15:08
11   kind of, "Lawyer, tell me what -- tell us what we         15:08
12   should do here," and the lawyer tells you what you        15:08
13   should do here, then you can answer the question.         15:08
14          THE WITNESS:  I mean, I don't recall any           15:08
15   discussions that didn't involve that kind of attorney     15:08
16   advice.                                                   15:08
17          MS. ROBERTS:  Q.  And so you can't testify?        15:08
18      A   Yes.                                               15:08
19      Q   Okay.  Who decided to hire Stroz Friedberg as      15:08
20   the outside expert to conduct due diligence?              15:08
21          MR. JACOBS:  I'll instruct you not to answer.      15:08
22          THE WITNESS:  I won't answer.                      15:08
23          MS. ROBERTS:  Q.  Were you involved in the         15:08
24   decision to hire Stroz Friedberg in particular as the     15:08
25   outside expert?                                           15:08
```

```
 1            MR. JACOBS:  You can answer whether you were      15:08
 2   involved in discussions about the selection of the         15:08
 3   forensic expert or not.                                    15:09
 4            THE WITNESS:  I mean, I don't recall being        15:09
 5   involved in discussions as to which forensic expert we     15:09
 6   should hire.  I was involved in discussions as to          15:09
 7   whether we should hire one or not.  Those discussions,     15:09
 8   as far as I can remember, took place with attorneys,       15:09
 9   you know.  They were giving us advice.  I don't recall     15:09
10   at all discussing which one to hire.                       15:09
11            MS. ROBERTS:  Q.  Were you involved in            15:09
12   discussions about what to ask the outside expert to        15:09
13   look into as part of its due diligence analysis?           15:09
14            MR. JACOBS:  You can answer that yes or no.       15:09
15            THE WITNESS:  Not that I recall.                  15:09
16            MS. ROBERTS:  Q.  Do you know who did             15:09
17   instruct the outside expert as to what to look into as     15:09
18   part of its due diligence analysis?                        15:09
19            MR. JACOBS:  You can answer the "do you           15:09
20   know" question.                                            15:09
21            THE WITNESS:  I mean, I know generally who it     15:09
22   was.  I don't know particular people.  I know it was       15:09
23   the lawyers.                                               15:10
24            MS. ROBERTS:  Q.  Lawyers at Uber?                15:10
25        A   Either lawyers at Uber or lawyers outside, or     15:10
```

| | | |
|---|---|---|
| 1 | both of them collectively. | 15:10 |
| 2 | Q   But, you don't know specifically? | 15:10 |
| 3 | A   I don't know specifically.  I just know it | 15:10 |
| 4 | was some collection of lawyers. | 15:10 |
| 5 | Q   And, once the outside expert was hired to | 15:10 |
| 6 | conduct the forensic due diligence report or this due | 15:10 |
| 7 | diligence analysis, did you have any role in that | 15:10 |
| 8 | analysis? | 15:10 |
| 9 | MR. JACOBS:  You can answer that yes or no. | 15:10 |
| 10 | THE WITNESS:  No. | 15:10 |
| 11 | MS. ROBERTS:  Q.  Did you interact with | 15:10 |
| 12 | the -- with Stroz Friedberg at all? | 15:10 |
| 13 | MR. JACOBS:  You can answer that yes or no. | 15:10 |
| 14 | THE WITNESS:  No. | 15:10 |
| 15 | MS. ROBERTS:  Q.  Did you interact with | 15:10 |
| 16 | lawyers -- let me start -- did you interact with | 15:10 |
| 17 | Uber's lawyers regarding the work that -- that Stroz | 15:10 |
| 18 | Friedberg was doing? | 15:10 |
| 19 | And I'm talking about:  After they were | 15:10 |
| 20 | retained and got working, did you discuss what Stroz | 15:10 |
| 21 | Friedberg was doing with Uber's lawyers? | 15:10 |
| 22 | MR. JACOBS:  You can have -- you can answer | 15:10 |
| 23 | that also yes or no.  Did you engage in discussions on | 15:11 |
| 24 | the topic of what the forensic expert's work entailed | 15:11 |
| 25 | or what the results were?  You can answer yes or no to | 15:11 |

| | | |
|---|---|---|
| 1 | whether you were involved in those discussions. | 15:11 |
| 2 | THE WITNESS:  Yes. | 15:11 |
| 3 | MS. ROBERTS:  Q.  And, what did the forensic | 15:11 |
| 4 | experts work entail? | 15:11 |
| 5 | MR. JACOBS:  I'd instruct you not to answer | 15:11 |
| 6 | that. | 15:11 |
| 7 | THE WITNESS:  I won't answer it. | 15:11 |
| 8 | MS. ROBERTS:  Q.  Do you know -- or let me | 15:11 |
| 9 | start over. | 15:11 |
| 10 | What were the results of Stroz Friedberg -- | 15:11 |
| 11 | Stroz Friedberg's analysis? | 15:11 |
| 12 | MR. JACOBS:  I instruct you not to answer to | 15:11 |
| 13 | the extent you are reporting on a communication about | 15:11 |
| 14 | specifically what Stroz did or did not find. | 15:11 |
| 15 | I'll allow you to answer sequentially, after | 15:11 |
| 16 | you got the Stroz report, what was your state of mind | 15:11 |
| 17 | about proceeding with the acquisition and the risks | 15:11 |
| 18 | that preceding with the acquisition entailed. | 15:11 |
| 19 | Do you follow the distinction? | 15:12 |
| 20 | THE WITNESS:  Sort of. | 15:12 |
| 21 | But I think it would be helpful if Andrea can | 15:12 |
| 22 | break her question down accordingly. | 15:12 |
| 23 | MS. ROBERTS:  Sure. | 15:12 |
| 24 | Q   I think you testified earlier that you | 15:12 |
| 25 | haven't actually seen the final Stroz report; is that | 15:12 |