MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Tel:  415.268.7000 / Fax:  415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Tel:  202.237.2727 / Fax:  202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@SusmanGodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019-6023
Tel:  212.336.8330 / Fax:  212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, <br><br>                Plaintiff, <br><br>       v. <br><br> UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, <br><br>                Defendants. | Case No. 3:17-cv-00939-WHA <br><br> **DEFENDANTS' UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S MOTION IN LIMINE NO. 27 TO EXCLUDE DR. HESSELINK'S SAVED DEVELOPMENT TIME OPINIONS** <br><br> Judge:   The Honorable William Alsup <br> Trial Date: December 4, 2017 |

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

Waymo's technical expert Dr. Lambertus Hesselink is the source of Waymo's saved development time estimates for trade secrets 25, 90, and 111 and Waymo's "bottleneck" theory for all asserted trade secrets. Under Dr. Hesselink's bottleneck theory, each trade secret in this case accelerated Uber's *entire* autonomous-vehicle ("AV") timeline by the amount of time that it would take for Uber to independently develop such trade secret. In granting Defendants' motion to exclude Michael Wagner, this Court assumed, without deciding, that these opinions were reliable:

> To take the examples of asserted trade secret numbers 25 and 111, Wagner essentially parroted Hesselink's opinions that they saved Uber two years and one year of development time, respectively. ***Assuming for the sake of argument that Hesselink's opinions regarding saved development time were reliable in the first instance***, Wagner applied no "specialized knowledge" by simply multiplying the units of time espoused by Hesselink with dollar amounts lifted from the Qi slide.

(Dkt. 2176 at 9 (emphasis added; internal citation omitted).) In fact, Dr. Hesslink's opinions are not reliable.

Defendants move to exclude Dr. Hesselink's saved development time and bottleneck opinions pursuant to FRE 702 and FRE 403 on the basis that they are unreliable *ipse dixit* from a paid expert who has amply demonstrated himself to be unqualified to offer such opinions. Like Mr. Wagner, Dr. Hesselink "did not apply any coherent principle, methodology, theory, or technique, much less one possessing any discernible indicia of reliability." (*See Id.* at 3.) In fact, Dr. Hesselink dedicates only a single conclusory paragraph of his opening report to the purported saved development time for each of trade secret numbers 25, 90, and 111, and did not even explain his bottleneck assumption until his reply report.

Dr. Hesselink's saved development time and bottleneck opinions lead to an absurd result: just focusing on trade secrets 25, 90, and 111, according to Dr. Hesselink, Uber saved over *five years* of development time (2 years + 2 years, 5 months + 1 year) in its overall AV timeline.[1] If the launch timeline used in Waymo's and Mr. Wagner's damage model were accurate, that would mean Uber would have launched fully autonomous vehicles in 2011. (Gore Decl., Ex. 1 (Wagner

---

[1] While Mr. Wagner assumed that the "acceleration" from each trade secret was non-cumulative (*see* Dkt. 2176 at 6), Dr. Hesselink makes no such qualification.

1  Dep.) at 60:20-61:1 (testifying that analysis he relied upon assumed that Uber would ▮▮▮
2  ▮▮▮▮▮▮▮).)  And by multiplying the aggregate "saved development time" with the
3  amounts in the Qi slide, Waymo apparently intends to try to use Dr. Hesselink's opinion to put an
4  expert's imprimatur on a damage model in excess of $4 billion.

   Dr. Hesselink's conclusory opinions are wholly unreliable and emerge from a proverbial black box.  An optical engineer, Dr. Hesselink has no experience with autonomous vehicles and has no basis to opine on how a particular trade secret could advance Uber's entire AV timeline. He admits that he did not conduct any design cycle analysis and testified that he has "no direct knowledge of what the critical paths are in the development of that product or service or technology."  (Gore Decl., Ex. 2 (Hesselink Dep.) at 182:2-9.)  To the extent that Dr. Hesselink relies on data at all, he simply parrots fact witness testimony and then invents wholly unsupportable conclusions from it.  His saved development time and bottleneck opinions should be excluded.

**I.  ARGUMENT**

This Court is familiar with Dr. Hesselink.  He is a Waymo-paid technical expert and optical engineer who, among other things, Waymo "asked to render opinions relating to the economic value associated with the use of Waymo's trade secrets in LiDAR devices."  (Gore Decl., Ex. 3 (Hesselink Opening Rpt.) at ¶ 450.)  After summarizing evidence generally relating to the benefits of reduced development time, his report provides one-paragraph "analyses" of the saved development time associated with each of trade secrets 25, 90, and 111.  His saved development time opinion relating to trade secret 90 is illustrative:

[redacted block]

[REDACTED]

(*Id.* ¶ 457 (emphasis added).)  So, according to Dr. Hesselink, a [REDACTED] design that he acknowledges Uber abandoned in October 2016 (*id.* ¶ 452) — less than six months after Otto acquired Tyto — has saved Uber almost two-and-a-half years of development time.

For trade secret 25, Dr. Hesselink cites Waymo deposition testimony that "Waymo's [REDACTED]" — without doing any analysis of the specific portions of trade secret 25 that Waymo claims was misappropriated — and summarily concludes that "Defendants' misappropriation of Trade Secret No. 25 saved them at least 2 years of development time in their self-driving vehicle program."  (*Id.* ¶ 455.)

Dr. Hesselink's three-sentence saved development time analysis for trade secret 111 is similarly conclusory:  he recites his "understand[ing]" that 510 Systems took a year to [REDACTED], states that this is consistent with his expectation, and concludes that trade secret 111 "saved Defendants at least 1 year of development time in their self-driving vehicle program."  (*Id.* ¶ 456.)

These opinions from Dr. Hesselink's opening report are so conclusory and ambiguous that it was initially not even clear that Dr. Hesselink was advancing a radical theory that each trade secret advanced Uber's *entire* autonomous vehicle program by these time periods.  It is not until his reply report that Dr. Hesselink explicitly opined that the redesign of each and every trade secret in this case (not only trade secrets 25, 90, and 111) would set back Uber's entire AV program:

[REDACTED]

(Gore Decl., Ex. 4 (Hesselink Reply Rpt.) ¶ 282.)

Mr. Wagner used these opinions as his sole basis to connect the independent development timelines with the amounts in the Qi slide.  (Gore Decl., Ex. 5 (Wagner Reply Rpt.) ¶ 72 (citing Paragraph 282 of Hesselink's Reply Report for the proposition that "Dr. Hesselink opines that each of the trade secrets has accelerated Uber's AV timeline"); Gore Decl., Ex. 1 at 84:14-22.)  With Mr. Wagner excluded, Waymo presumably will still try to improperly argue, based solely on Dr. Hesselink's opinion, that trade secrets 90, 25, and 111 are worth ███████ ████████████████████, respectively, and that other trade secrets are worth hundreds of millions of dollars.  Waymo should not be permitted to do so.

The saved development time opinions disclosed in Dr. Hesselink's opening report are conclusory, methodologically unsound, and unreliable.  Dr. Hesselink is simply parroting **Waymo** and **Tyto** development timelines, saying that they sound reasonable to him, and then summarily stating that Uber's entire AV program will be accelerated by those periods of time.  Dr. Hesselink does not cite any evidence relating to Uber's development cycle or timelines that would support such a conclusion.  And the fact that Waymo or Tyto may have **worked** on a technical feature over the course of X years is of course not evidence that the specific technical feature at issue in this case would have been a **bottleneck** for Uber's **entire** AV program for X years.

Like Mr. Wagner, Dr. Hesselink does not apply "any coherent principle, methodology, theory, or technique, much less one possessing any discernible indicia of reliability." (Dkt. 2176 at 3.)  Rather, he is offering "lawyer argument dressed up as expert opinion," *id.* at 9, which is not surprising, given that his opinions consistently advance the goals of the party paying him, as evidenced in his curriculum vitae, in which he proclaims, "I have never lost a case." (Gore Decl., Ex. 6 (CV of Professor Lambertus Hesselink, PHD) at 15.)  Dr. Hesselink's opinions should be excluded "both because they do not qualify as expert testimony under FRE 702 and because they are substantially more prejudicial than probative under FRE 403." (Dkt. 2176 at 3); *see also GPNE Corp. v. Apple, Inc.*, 12-CV-02885-LHK, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014) ("Experts must follow some discernable methodology, and may not be 'a black box into which data is fed at one end and from which an answer emerges at the other.'") (citations omitted); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing in either *Daubert* or the

1   Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to
2   existing data only by the *ipse dixit* of the expert.").

3   Dr. Hesselink's reply report cannot—and does not—solve these deficiencies.  **First**, his
4   bottleneck theory is a critical affirmative opinion that Waymo is using to support fantastical
5   damages numbers; Dr. Hesselink was obligated to substantiate those opinions in his opening
6   report.  (Dkt. 563 (Case Management Order) ¶ 5.)  There is nothing in Dr. Hesselink's opening
7   report that can fairly be read to disclose his opinion that trade secrets 2, 7, 9, 13, and 14 also
8   accelerated Uber's entire AV timeline.  **Second**, the "analysis" in Dr. Hesselink's reply report is
9   itself conclusory, methodologically unsound, and unreliable; he simply notes that the design of
10  one component may require modification of another related component or software so, *ipso facto*,
11  one day of redesign will set back Uber's entire AV program by a day.  (*See* Gore Decl., Ex. 4 at
12  ¶¶ 282-84.)  **Third**, Dr. Hesselink, an optical engineer who has never worked on self-driving cars
13  (*see* Gore Decl., Ex. 2 at 25:3-6), is not qualified to offer such an opinion.

14  In order to reach such a sweeping conclusion that independent development of one
15  component could not be conducted in parallel with the development other components, an expert
16  would need to perform a detailed design cycle analysis and gain a complete understanding of how
17  each component of an autonomous vehicle relates to LiDAR and each specific trade secret, as
18  well as the development timelines for each.  Dr. Hesselink did not perform any type of design-
19  cycle analysis,[2] and at his deposition he revealed himself to be completely uninformed about AV
20  design cycles and the relationship between AV components.  When asked whether LiDAR is a
21  gating item in Waymo's development of autonomous vehicles, he answered: "I have no direct
22  knowledge of what the critical paths are in the development of that product or service or
23  technology."  (Gore Decl., Ex. 2 at 182:2-9.)  When asked whether the availability of LiDAR was
24  the reason Uber has not deployed fully autonomous vehicles, Dr. Hesselink responded: "I have
25  no insight . . . [I]f the LiDAR is a limiting factor, I would certainly not know."  (*Id.* at 182:10-20.)

---

[2]  (*See id.* at 265:12-21 ("I was not asked to kind of build a time sequence and find out how these trade secrets were misappropriated and what the relation was — relationship was between them.").)

1  He acknowledged that Uber has been developing its self-driving capability using Velodyne
2  LiDAR.  (*Id.* at 266:12-19.)  And when asked if Uber would be able to deploy fully autonomous
3  vehicles today if Levandowski had cloned GBr3 in its entirety at Uber, Dr. Hesselink stated:

4  
5  [REDACTED]
6  
7  

8  (*Id.* at 182:21-183:14.)  Dr. Hesselink further conceded that other AV work "may or may not have
9  been in parallel or in series," that it "depends on what the particular trade secrets are," and that
10 some "probably would have gone in parallel."  (*Id.* at 264:11-265:11; *see also id.* at 271:17-
11 272:24.)

12    These are not deficiencies merely going to the weight of Dr. Hesselink's testimony.  If an
13 expert is going to opine that each day of developing a single component will set Uber's entire AV
14 program back a day, he needs to use a reliable methodology and to show his work.  Dr. Hesselink
15 has done neither, and there is nothing in his background that would make him qualified to offer
16 such an opinion.  His saved development time opinions and bottleneck theory should be excluded.
17 *See Domingo v. T.K.,* 289 F.3d 600, 605 (9th Cir. 2002) ("[I]f an expert did not conduct his or her
18 own research, independent of the litigation, on the subject of the testimony, the district court must
19 determine whether there exists any 'objective, verifiable evidence that the testimony is based on
20 'scientifically valid principles.'" (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311,
21 1317–18 (9th Cir. 1995))).

22 **II.   CONCLUSION**

23    For the foregoing reasons, Defendants respectfully request that this Court exclude
24 Dr. Hesselink's saved development time and bottleneck opinions. They do not qualify as expert
25 testimony under FRE 702, they are substantially more prejudicial than probative under FRE 403,
26 and they were not properly disclosed in accordance with the Case Management Order.

27
28

| | | |
|---|---|---|
| Dated: November 13, 2017 | | MORRISON & FOERSTER LLP<br>BOIES SCHILLER FLEXNER LLP<br>SUSMAN GODFREY LLP |
| | By: | */s/ William Christopher Carmody*<br>WILLIAM CHRISTOPHER CARMODY |
| | | Attorneys for Defendants<br>UBER TECHNOLOGIES, INC. and<br>OTTOMOTTO LLC |

**ATTESTATION OF E-FILED SIGNATURE**

I, Michael A. Jacobs, am the ECF User whose ID and password are being used to file this Motion. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that William Christopher Carmody has concurred in this filing.

Dated: November 13, 2017         */s/ Michael A. Jacobs*
                                                        MICHAEL A. JACOBS