1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
       Charles K. Verhoeven (Bar No. 170151)
2      charlesverhoeven@quinnemanuel.com
       David A. Perlson (Bar No. 209502)
3      davidperlson@quinnemanuel.com
       Melissa Baily (Bar No. 237649)
4      melissabaily@quinnemanuel.com
       John Neukom (Bar No. 275887)
5      johnneukom@quinnemanuel.com
       Jordan Jaffe (Bar No. 254886)
6      jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:     (415) 875-6600
8  Facsimile:     (415) 875-6700

9  Attorneys for WAYMO LLC

10                    UNITED STATES DISTRICT COURT

11       NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

12  WAYMO LLC,                              CASE NO. 3:17-cv-00939-WHA

13                 Plaintiff,               **PLAINTIFF WAYMO LLC'S
                                            OPPOSITION TO DEFENDANTS UBER
14          vs.                             TECHNOLOGIES, INC. AND
                                            OTTOMOTTO LLC'S PRECIS IN
15  UBER TECHNOLOGIES, INC.;                SUPPORT OF REQUEST TO FILE
    OTTOMOTTO LLC; OTTO TRUCKING            MOTION IN LIMINE TO EXCLUDE
16  LLC,                                    TESTIMONY AND OPINIONS OF
                                            WAYMO EXPERT LAMBERTUS
17                 Defendants.              HESSELINK ON TS 25**

18

19                                          **REDACTED VERSION OF DOCUMENT
                                            SOUGHT TO BE FILED UNDER SEAL**
20

21

22

23

24

25

26

27

28

Waymo hereby responds to Defendants' Precis regarding Prof. Hesselink's TS 25 opinions (Dkt. 2188). Defendants' Precis is yet another eleventh-hour effort to avoid the jury hearing the full evidence in this case. Couched as a request for leave to file what would be a fourth motion to exclude parts of Prof. Hesselink's opinions, Defendants' Precis in reality only disputes Waymo's evidence of misappropriation and seeks to deprive the jury of the opportunity to make an informed decision aided by helpful technical analysis provided by Prof. Hesselink's application of his specialized knowledge and expertise to detailed, technical documents and specifications.

## I.   DEFENDANTS' REQUEST COMES TOO LATE

Defendants have had the opening report of Prof. Hesselink for two and a half months, since August 24, 2017. Prof. Hesselink's opening report provided his technical analysis of how Defendants have misappropriated TS 25, with which they now take issue. Indeed, all of Defendants' quoted excerpts in their Precis come from Prof. Hesselink's opening report. The proper time to have filed Defendants' request was either on September 7 (the agreed-upon deadline to file motions in limine) or on September 16 (the agreed-upon deadline to file *Daubert* motions). (*See* Dkt. 2015-7.) Yet Defendants filed no motion regarding Prof. Hesselink's opinions on TS 25. Defendants' gamesmanship is heightened in light of their post-close of business Friday night filing of their Precis (Dkt. 1954), a mere three weeks before trial and on a weekend on which substantial deadlines in advance of a November 14 hearing before the Court also fall. There is no reason for the Court to go along with Defendants' delay and surprise tactics.

In fact, the Court has already rebuffed Defendants' belated attempts to remove additional trade secrets from this case, including a summary judgment motion camouflaged as a motion to strike TS 25. (8/16/17 Hr'g Tr. at 107:8-12 ("We're not going to do summary judgment. We don't have time for summary judgments. This is going to be rolling, rolling in the courtroom, in front of the—rock and roll in front of the jury.").) As part of Waymo's August 24 offer of proof regarding trade secret misappropriation, Waymo outlined the key evidence of misappropriation of TS 25 that it plans to present at trial through Prof. Hesselink. (Dkt. 1357-3 at 13-15.) Indeed, of the five pieces of evidence analyzed by Prof. Hesselink and quoted in Defendants' Precis, three were included in Waymo's offer of proof. (*Compare* Dkt. 2187-4 at 2-4, *with* Dkt. 1357-3 at 13-15.) In full receipt

of this evidence months ago, Defendants tactically decided not to file a *Daubert* or summary judgment motion regarding TS 25. The Court should deny Defendants' untimely Precis, which is no more than a thinly veiled attempt at another summary judgment motion on the eve of trial.

## II.   PROF. HESSELINK'S OPINIONS ON MISAPPROPRIATION OF TS 25 APPLY HIS TECHNICAL EXPERTISE AND SPECIALIZED KNOWLEDGE

On its merits, Defendants' Precis should also be denied. Defendants attempt to characterize Prof. Hesselink's opinions on misappropriation of TS 25 as "speculat[ion]" that "fails to apply any specialized knowledge." (Dkt. 2187-4 at 1.) But Defendants' argument amounts to little more than disagreement with Prof. Hesselink's interpretation of the evidence available to him: in essence, Defendants argue that Prof. Hesselink is not applying any specialized knowledge because they disagree with his comparisons of the evidence of misappropriation against TS 25. (*See id.* at 2 ("It is plain that this excerpt does not match Waymo's specifications . . . ."); *id.* ("Dr. Hesselink's other comparisons fare no better.").) Further, Defendants turn a blind eye to pertinent facts in arguing that the jury would not be aided by Prof. Hesselink's expert testimony.

First, Defendants would prefer to forget the formulation of TS 25, which recites the "████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████" (Dkt. 25-7 at 17.) The cited documents include detailed technical specifications outlining ███████████████████████ ████████████████████████████████████████████████████ ████████████████████. As Defendants must admit, these are large spreadsheets full of technical terminology and data. Without help, the jury cannot simply review those documents and understand what they are, much less compare the documents to the evidence of misappropriation that will come in at trial through an Uber witness, John Bares. Explaining what the detailed Waymo spreadsheets mean, analyzing which parts of those documents Mr. Levandowski was referring to when disclosing the information to Uber, and comparing the two falls squarely within the realm of expert testimony.

Second, Defendants ignore that Prof. Hesselink's misappropriation opinions clearly reflect the application of his specialized knowledge. Contrary to Defendants' bald assertion that "[t]hese

simple comparisons are the entirety of Dr. Hesselink's 'analysis' of Uber documents 'reflecting' misappropriation" (Dkt. 2187-4 at 4), the comparisons at issue occupy only nine out of twenty-one paragraphs of the section of Prof. Hesselink's opening report discussing misappropriation of TS 25. (*See* Hesselink Opening Report ¶¶ 103-23.)   In particular, in the paragraphs that follow the comparisons, Prof. Hesselink puts those comparisons in context by using his specialized knowledge to provide a technical analysis regarding (1) how the disclosures of Waymo's TS 25 reflected in those comparisons affected ██████████████████████████████████████████████ and (2) the likelihood of ████████████████████████████████████████████████████ ██████████████████████████████████.   For example, Prof. Hesselink employs his specialized knowledge to explain how Levandowski's disclosure that he thought Uber ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████—analysis far beyond comparisons of "titles" or other information Uber contends is not entitled to trade secret protection.  (*Id.*¶ 109.)

Defendants' characterization of the comparisons themselves (Dkt. 2187-4 at 2-4) is not accurate and is based on requiring a perfect match, which the law does not require.  *See, e.g.*, *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012).  The Uber email regarding "████████████████████████████████████████████" maps closely to ██████████ ██████████████████████████████████████████████.  (Hesselink Opening Report ¶¶ 106-07, 114.)   The John Bares notes about a "████████████████████████ ████████████████████" map directly to ██████████████████████████████████ ██████████████████████████████████████.  (*Id.* ¶¶ 108-09.)   And the notes regarding ████████████████████████████████████████████████████ map to the ████████████████████████████████████████████████████████████ ██████████████████████.  (*Id.* ¶¶ 110-11.)  The "████████████████" in the notes similarly maps to ██████████████████████████████████.  (*Id.* ¶¶ 112-13.)

Further, Defendants implicitly concede these comparisons are the province of expert testimony because they put up their own expert, Dr. McManamon, who performed the same kind of

comparisons as Prof. Hesselink, merely arriving at different conclusions. (*See* McManamon Report ¶¶ 83-127.) Defendants would have the Court believe that when their expert provides this kind of testimony, it is proper expert opinion, but not when Prof. Hesselink does it. Defendants' failure to candidly acknowledge their own expert's similar opinions further highlights their gamesmanship.

Defendants' complaints regarding lack of evidence of use are similarly unfounded. Prof. Hesselink applied his expertise and specialized knowledge to conclude that the lack of detail in ██████ ████████████████████████████████████████ (which was ████████████████████ ██████████████████████ (Hesselink Opening Report ¶ 121)) means that the only way Uber could have developed Fuji and Spider ██████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████ (*Id.* ¶ 122.) By looking simply at the documents without expert aid, a lay jury cannot figure out that "████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████." (*Id.*) Defendants are free to disagree with this opinion, and it is the jury's province to be the factfinder at trial.

At bottom, Defendants' Precis is a last-ditch effort to get rid of TS 25 now that their preferred argument against TS 25—that Anthony Levandowski did not have the underlying "████████ ████████" spreadsheet and was not knowledgeable about the information contained in it from his time working at Google (*see, e.g.*, McManamon Report ¶ 85)—has collapsed after Waymo discovered that document among the materials that Mr. Levandowski stole from Waymo and that Stroz collected from him. Recognizing that it is too late to move for summary judgment, Defendants instead attempt to eliminate informative testimony from the jury by seeking to exclude expert testimony needed to understand how Uber misappropriated TS 25—testimony that is especially important because Anthony Levandowski's Fifth Amendment invocation leaves no single fact witness who can present both Waymo and Uber's side of the misappropriation of TS 25.

## III.   **CONCLUSION**

For the foregoing reasons, Waymo respectfully requests that the Court deny Defendants' request to file a fourth, serial motion to exclude Prof. Hesselink's opinions.

1

DATED:  November 13, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

2

3

By _/s/ Charles Verhoeven_

Charles Verhoeven

4

Attorneys for WAYMO LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28