QUINN EMANUEL URQUHART & SULLIVAN, LLP
 Charles K. Verhoeven (Bar No. 170151)
 charlesverhoeven@quinnemanuel.com
 David A. Perlson (Bar No. 209502)
 davidperlson@quinnemanuel.com
 Melissa Baily (Bar No. 237649)
 melissabaily@quinnemanuel.com
 John Neukom (Bar No. 275887)
 johnneukom@quinnemanuel.com
 Jordan Jaffe (Bar No. 254886)
 jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| WAYMO LLC,<br><br>              Plaintiff,<br><br>        vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>              Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO LLC'S OPPOSITION TO DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S PRECIS IN SUPPORT OF REQUEST TO FILE MOTION IN LIMINE TO EXCLUDE TESTIMONY AND OPINIONS OF WAYMO EXPERT LAMBERTUS HESSELINK ON TS 25**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL** |

1      Waymo hereby responds to Defendants' Precis regarding Prof. Hesselink's TS 25 opinions

2   (Dkt. 2188).  Defendants' Precis is yet another eleventh-hour effort to avoid the jury hearing the

3   full evidence in this case.  Couched as a request for leave to file what would be a fourth motion to

4   exclude parts of Prof. Hesselink's opinions, Defendants' Precis in reality only disputes Waymo's

5   evidence of misappropriation and seeks to deprive the jury of the opportunity to make an informed

6   decision aided by helpful technical analysis provided by Prof. Hesselink's application of his

7   specialized knowledge and expertise to detailed, technical documents and specifications.

8   **I.      DEFENDANTS' REQUEST COMES TOO LATE**

9      Defendants have had the opening report of Prof. Hesselink for two and a half months, since

10  August 24, 2017.   Prof. Hesselink's opening report provided his technical analysis of how

11  Defendants have misappropriated TS 25, with which they now take issue.  Indeed, all of Defendants'

12  quoted excerpts in their Precis come from Prof. Hesselink's opening report.  The proper time to have

13  filed Defendants' request was either on September 7 (the agreed-upon deadline to file motions in

14  limine) or on September 16 (the agreed-upon deadline to file *Daubert* motions.  (*See* Dkt. 2015-7.)

15  Yet Defendants filed no motion regarding Prof. Hesselink's opinions on TS 25.   Defendants'

16  gamesmanship is heightened in light of their post-close of business Friday night filing of their Precis

17  (Dkt. 1954), a mere three weeks before trial and on a weekend on which substantial deadlines in

18  advance of a November 14 hearing before the Court also fall.  There is no reason for the Court to

19  go along with Defendants' delay and surprise tactics.

20      In fact, the Court has already rebuffed Defendants' belated attempts to remove additional

21  trade secrets from this case, including a summary judgment motion camouflaged as a motion to

22  strike TS 25.  (8/16/17 Hr'g Tr. at 107:8-12 ("We're not going to do summary judgment.  We don't

23  have time for summary judgments.  This is going to be rolling, rolling in the courtroom, in front of

24  the—rock and roll in front of the jury.").)  As part of Waymo's August 24 offer of proof regarding

25  trade secret misappropriation, Waymo outlined the key evidence of misappropriation of TS 25 that

26  it plans to present at trial through Prof. Hesselink.  (Dkt. 1357-3 at 13-15.)  Indeed, of the five pieces

27  of evidence analyzed by Prof. Hesselink and quoted in Defendants' Precis, three were included in

28  Waymo's offer of proof.  (*Compare* Dkt. 2187-4 at 2-4, *with* Dkt. 1357-3 at 13-15.)  In full receipt

of this evidence months ago, Defendants tactically decided not to file a *Daubert* or summary judgment motion regarding TS 25. The Court should deny Defendants' untimely Precis, which is no more than a thinly veiled attempt at another summary judgment motion on the eve of trial.

## II. PROF. HESSELINK'S OPINIONS ON MISAPPROPRIATION OF TS 25 APPLY HIS TECHNICAL EXPERTISE AND SPECIALIZED KNOWLEDGE

On its merits, Defendants' Precis should also be denied. Defendants attempt to characterize Prof. Hesselink's opinions on misappropriation of TS 25 as "speculat[ion]" that "fails to apply any specialized knowledge." (Dkt. 2187-4 at 1.) But Defendants' argument amounts to little more than disagreement with Prof. Hesselink's interpretation of the evidence available to him: in essence, Defendants argue that Prof. Hesselink is not applying any specialized knowledge because they disagree with his comparisons of the evidence of misappropriation against TS 25. (*See id.* at 2 ("It is plain that this excerpt does not match Waymo's specifications . . . ."); *id.* ("Dr. Hesselink's other comparisons fare no better.").) Further, Defendants turn a blind eye to pertinent facts in arguing that the jury would not be aided by Prof. Hesselink's expert testimony.

First, Defendants would prefer to forget the formulation of TS 25, which recites the " ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" (Dkt. 25-7 at 17.) The cited documents include detailed technical specifications outlining ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. As Defendants must admit, these are large spreadsheets full of technical terminology and data. Without help, the jury cannot simply review those documents and understand what they are, much less compare the documents to the evidence of misappropriation that will come in at trial through an Uber witness, John Bares. Explaining what the detailed Waymo spreadsheets mean, analyzing which parts of those documents Mr. Levandowski was referring to when disclosing the information to Uber, and comparing the two falls squarely within the realm of expert testimony.

Second, Defendants ignore that Prof. Hesselink's misappropriation opinions clearly reflect the application of his specialized knowledge. Contrary to Defendants' bald assertion that "[t]hese

1   simple comparisons are the entirety of Dr. Hesselink's 'analysis' of Uber documents 'reflecting'

2   misappropriation" (Dkt. 2187-4 at 4), the comparisons at issue occupy only nine out of twenty-one

3   paragraphs of the section of Prof. Hesselink's opening report discussing misappropriation of TS 25.

4   (*See* Hesselink Opening Report ¶¶ 103-23.)   In particular, in the paragraphs that follow the

5   comparisons, Prof. Hesselink puts those comparisons in context by using his specialized knowledge

6   to provide a technical analysis regarding (1) how the disclosures of Waymo's TS 25 reflected in

7   those comparisons affected ███████████████████████████████████████████████████

8   and (2) the likelihood of ████████████████████████████████████████████████████

9   ███████████████████████████████.   For example, Prof. Hesselink employs his

10  specialized knowledge to explain how Levandowski's disclosure that he thought Uber ███████████

11  ██████████████████████████████████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████████████████████████████

13  ████████████████████████████████—analysis far beyond comparisons of "titles" or other

14  information Uber contends is not entitled to trade secret protection.  (*Id.* ¶ 109.)

15         Defendants' characterization of the comparisons themselves (Dkt. 2187-4 at 2-4) is not

16  accurate and is based on requiring a perfect match, which the law does not require.  *See, e.g.*,

17  *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012).  The Uber email

18  regarding "█████████████████████████████████████████" maps closely to ███████████

19  ████████████████████████████████████████.  (Hesselink Opening

20  Report ¶¶ 106-07, 114.)   The John Bares notes about a "█████████████████████████████

21  ████████████████" map directly to ██████████████████████████████████████████████

22  █████████████████████████████████.  (*Id.* ¶¶ 108-09.)   And the notes

23  regarding ████████████████████████████████████████████████████████ map to

24  the ████████████████████████████████████████████████████████████████████████

25  ████████████████████.  (*Id.* ¶¶ 110-11.)  The "████████████████ in the notes similarly maps

26  to ████████████████████████████████.  (*Id.* ¶¶ 112-13.)

27         Further, Defendants implicitly concede these comparisons are the province of expert

28  testimony because they put up their own expert, Dr. McManamon, who performed the same kind of

1    comparisons as Prof. Hesselink, merely arriving at different conclusions.  (*See* McManamon Report

2    ¶¶ 83-127.)  Defendants would have the Court believe that when their expert provides this kind of

3    testimony, it is proper expert opinion, but not when Prof. Hesselink does it.  Defendants' failure to

4    candidly acknowledge their own expert's similar opinions further highlights their gamesmanship.

5         Defendants' complaints regarding lack of evidence of use are similarly unfounded.  Prof.

6    Hesselink applied his expertise and specialized knowledge to conclude that the lack of detail in ██████

7    ████████████████████████████████████████ (which was ████████████████████████████

8    ████████████████████ (Hesselink Opening Report ¶ 121)) means that the only way Uber

9    could have developed Fuji and Spider █████████████████████████████████████████

10   ██████████████████████████████████████████████████████████████████████████████

11   ████████████████████████████████ (*Id.* ¶ 122.)  By looking simply at the

12   documents without expert aid, a lay jury cannot figure out that "████████████████████████████

13   ██████████████████████████████████████████████████████████████████████████████

14   ████████████████████████████████." (*Id.*)  Defendants are free to disagree

15   with this opinion, and it is the jury's province to be the factfinder at trial.

16        At bottom, Defendants' Precis is a last-ditch effort to get rid of TS 25 now that their preferred

17   argument against TS 25—that Anthony Levandowski did not have the underlying "████████████

18   ██████████" spreadsheet and was not knowledgeable about the information contained in it from his

19   time working at Google (*see, e.g.*, McManamon Report ¶ 85)—has collapsed after Waymo

20   discovered that document among the materials that Mr. Levandowski stole from Waymo and that

21   Stroz collected from him.  Recognizing that it is too late to move for summary judgment, Defendants

22   instead attempt to eliminate informative testimony from the jury by seeking to exclude expert

23   testimony needed to understand how Uber misappropriated TS 25—testimony that is especially

24   important because Anthony Levandowski's Fifth Amendment invocation leaves no single fact

25   witness who can present both Waymo and Uber's side of the misappropriation of TS 25.

26   ## III.   CONCLUSION

27        For the foregoing reasons, Waymo respectfully requests that the Court deny Defendants'

28   request to file a fourth, serial motion to exclude Prof. Hesselink's opinions.

1   DATED:  November 13, 2017                QUINN EMANUEL URQUHART & SULLIVAN,
                                             LLP
2

3                                            By /s/ Charles Verhoeven
                                                 Charles Verhoeven
4                                                Attorneys for WAYMO LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28