MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzález@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel: 415.268.7000 / Fax: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Tel: 202.237.2727 / Fax: 202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: 212.336.8330 / Fax: 212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, | Case No.   3:17-cv-00939-WHA |
| Plaintiff, | **DEFENDANTS' RESPONSE TO AUTHORITIES CITED BY WAYMO AT NOVEMBER 14, 2017 HEARING** |
| v. | |
| UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, | Trial Date: December 4, 2017 |
| Defendants. | |

Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively "Uber") hereby respond to the authorities cited by Waymo at the November 14, 2017 hearing.

## A. RESPONSE TO WAYMO'S AUTHORITIES REGARDING RETURNING STOLEN PROPERTY

Waymo offered *Cal. Intelligence Bureau v. Cunningham*, 83 Cal. App. 2d 197 (Cal. Ct. App. 1948) ("CIB") and *Naftzger v. American Numismatic Society*, 42 Cal. App. 4th 421 (Cal. Ct. App. 1996) for the proposition that an employee is under a legal duty to return all trade secret files of her former employer. (11/14/17 Hr'g Tr. 8:9–12; 8:17–18; 12:16–14:11.) Neither of those cases, however, creates such a duty. Both cases are also inapplicable because CUTSA supersedes common law claims arising out of the same nucleus of facts as a trade secrets misappropriation claim. Trade secrets law, and only trade secrets law, governs the jury instructions. It would be error to give an instruction based on a case or statute arising under a non-trade secret cause of action.

### 1. The *CIB* and *Naftzger* Cases

In *CIB*, a former employee of a subscription-based company threatened to use the company's confidential and proprietary information to operate his own competing company. The court, having found that the defendant *used* his former employer's trade secrets, enjoined him from continuing to do so. *CIB*, 83 Cal. App. 2d at 200–01 (enumerating the relief ordered by the trial court). Nothing in the opinion or remedy imposed a duty to return trade secrets files; in fact, neither the trial court's injunction, nor the injunction as modified by the Court of Appeals, even ordered him to return the information. *Id.* at 200–01 (describing trial court's injunction); 205 (describing modified judgment).

Waymo offered *CIB* for the proposition that "trade and business secrets and confidential information are the property of the employer," because, according to California Labor Code section 2860, "Everything which an employee acquires by virtue of his employment" other than his compensation "belongs to the employer." *CIB*, 83 Cal. App. 2d at 203–204. However, that statute does not govern trade secrets cases. The Ninth Circuit, in discussing *CIB*'s reliance on this provision of the labor code, has noted that "[t]his section, by itself, is not helpful in deciding

whether particular information is protectible as a trade secret, *King v. Vitamin Corp.*, 64 Cal. App. 2d 841, 64 Cal. Rptr. 486 (1967), and courts protecting information as trade secrets have not relied on this section." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1330 n.5 (9th Cir. 1980), *superseded by statute on other grounds*. Indeed, a subsequent court noted that *CIB*'s definition of an employer's property far exceeds the bounds now recognized by California trade secrets law:

> The code section cannot be given an interpretation at variance with the established rule that business information acquired by an employee which is not confidential in fact, or by agreement, is not protectible property of the employer. What the employee acquires in his own right by way of experience and useful knowledge of a business may be of far greater value to him than knowledge of the identity of the employer's customers and their business connections. We would not doubt that it is a universal custom for salesmen or executives, or other employees, to be sought and lured away from present employment because of exceptional skill and proficiency they have manifested, nor can it be questioned that they have a right to make capital of their abilities.

*King v. Pac. Vitamin Corp.*, 256 Cal. App. 2d 841, 849–50 (Cal. Ct. App. 1967). Furthermore, Labor Code section 2860 was enacted in 1937, four years before Business and Professions Code section 16600, which codifies California's strong public policy in favor of employee mobility and has nullified other expansive interpretations of trade secrets law. *E.g.*, *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463–64 (Cal. Ct. App. 2002) ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete. … regardless whether a covenant not to compete is part of the employment agreement, the inevitable disclosure doctrine cannot be used as a substitute for proving actual or threatened misappropriation of trade secrets."). For all of these reasons, *CIB* sheds no light on how to apply trade secrets law, and is inconsistent with California's public policy in favor of employee mobility.

*Naftzger* is also not on point. In *Naftzger*, a man purchased coins that were previously stolen from a museum. The issue before the court was whether the statute of limitations had run on the museum's claim to quiet title to the coins. The case had nothing to do with trade secrets, and has no relevance to this case. *Naftzger*'s inapplicability is apparent by examining the difference between the "property" at issue: here, intangible ideas stored in electronic files; there,

tangible coins. In *Naftzger*, the thief's continued possession of the coins deprived the museum of them. The coins could be physically returned to the museum. The invasion of the museum's interest in the valuable coins could only be remedied by their return. But here, any possession of *copies* of the files did not deprive Waymo of simultaneous possession of the files—only of the exclusive control of the information in them. They were physically embodied in devices that Waymo does not own and has no right to possess. Waymo's interest in these files can be therefore equally remedied by their deletion as by their return, or sequestration, or promise not to continue using them. Thus, any duty to return stolen ***property*** simply cannot translate neatly into a duty to return allegedly stolen ***ideas***, and *Naftzger* is of no use to the Court.

### 2. Trade Secret Supersession

An instruction based on notions of "stolen property," drawing from run-of-the-mill conversion or theft cases, would be improper for the additional reason that any such claims are superseded by CUTSA. The Court dismissed Waymo's unfair competition claim for that reason (Dkt. 576), and the same precedent applies here. As stated most notably in *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (Cal. Ct. App. 2009), all common law claims arising out of the same nucleus of facts as a trade secret claim are superseded by CUTSA. (*See also* Dkt. 576 at 3 ("CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'" (citing *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (Cal. Ct. App. 2010), as *modified on denial of reh'g* (May 27, 2010), *disapproved of on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011)).) Superseded causes of action include claims for conversion:

> Here, the Court has no difficulty concluding that plaintiffs' claims for receipt of lost property, invasion of privacy, and conversion are all "based on the same nucleus of facts" as plaintiffs' claim for trade secret proposal. Most saliently, all three claims are premised on allegations that are virtually identical to the allegations contained in the FAC's claim for trade secret misappropriation. [Citation.] And factually speaking, all three claims accuse defendants of unlawfully obtaining plaintiffs' confidential information—i.e., that defendants misappropriated plaintiffs' trade secrets. Accordingly, the Court finds that these three claims are

> "based on the same nucleus of facts" as plaintiffs' claim for trade
> secret misappropriation, and are thus preempted by CUTSA.

*New Show Studios LLC v. Needle*, No. 2:14-cv-01250-CAS (MRWx), 2014 WL 2988271, at *2 (C.D. Cal. June 30, 2014).

Waymo's allegations in this case are based exclusively on trade secret misappropriation. The Court has specifically rejected Waymo's argument that this case could concern "confidential information that does *not* rise to the level of a trade secret." (Dkt. 576 at 4:22-27) (emphasis in original). This disposes of *CIB*. Any other claims stemming from conversion of the "property" at issue would be preempted by CUTSA. To the extent that *Naftzger*, in the context of a stolen-property case, suggests that there is a duty to return stolen property, that concept cannot be imported into trade secrets law because CUTSA entirely occupies the field. It follows that the only relevant remedies and obligations are those set forth in trade secret law, which provides for injunctive relief in appropriate circumstances, but provides for no automatic injunction to return misappropriated trade secrets. *See* Cal. Civ. Code § 3462.2; 18 U.S.C. § 1836(b)(3)(A). It would be error to instruct the jury on statutes that differ from, would supplant, and are preempted by the law of misappropriation.

Finally, importation of standards relating to "stolen goods" might suggest to the jury, incorrectly, that there is always misappropriation if a defendant possesses trade secrets, even if not obtained through improper means. *See Applied Materials, Inc. v. Advanced Micro-Fabrication,* Case No. C 07-05248-JW (N.D. Cal. Nov. 30, 2009) (J. Ware) ("a showing of something more than mere possession is necessary for a trade secret misappropriation claim.") (Declaration of Esther Chang in Support of Defendants' Response to Authorities Cited by Waymo at November 14, 2017 Hearing, Ex. A); *Whyte*, 101 Cal. App. 4th 1443 (rejecting inevitable disclosure theory, whereby an injunction could issue through showing mere possession of trade secrets). Additionally, both the UTSA and DTSA provide only that an injunction "may" issue on actual or threatened misappropriation:

> Under *Fish*, when a statute mandates injunctive relief as a remedy
> for a violation—or impending violation—of the statute, it has
> effectively constrained the courts' traditional discretion to

determine whether such relief is warranted. [Citation.] In that case, courts presume irreparable harm and grant an injunction even if the moving party failed to show it. *Id.* **But when a statute merely authorizes—rather than mandates—injunctive relief, courts must determine that the moving party has established all four elements to grant injunctive relief.**

*First W. Capital Mgmt. Co. v. Malamed*, Nos. 16-1434, 16-1465 & 16-1502, 2017 WL 4872570, at *3 (10th Cir. Oct. 30, 2017) (interpreting DTSA and Colorado's version of UTSA) (emphasis added). Accordingly, importing standards from conversion or theft cases would improperly displace the elements of misappropriation statutes and infect the jury's verdict with error. It would also violate this Court's "foundational principle" that Waymo must prove misappropriation *by Uber*, not misappropriation by Levandowski or other claims that have no place in this case. (Dkt. 2151 at 9, 12). Whether there is 'stolen property' and, if so, whether there is a duty to return it, must be decided under the laws governing trade secret misappropriation, not the law of conversion or any other cause of action that is superseded by trade secrets law.

### B.    RESPONSE TO CEB § 1.5 AND *COURTESY TEMP.*

At the hearing, Waymo pointed to a note at the end of Section 1.5 entitled "2. Negative Information" in CEB, *Trade Secrets Practice in California* (2016), claiming that the CUTSA overrules *Winston Research Corp. v Minnesota Mining & Manufacturing, Co.*, 350 F. 2d 135 (9th Cir. 1965). But the CEB note cites no authority for this proposition. In our research, **no case** has suggested that *Winston Research* was overruled. And put simply, this source misconstrues *Winston.* The Ninth Circuit did **not** hold that negative information could **never** be protectable. (*See* Dkt. 2180 at 3-4.) This same principle—that *some* but **not all** negative know-how can qualify—is apparent in *Cinebase Software, Inc. v. Media Guaranty Trust, Inc.*, No. C98-1100 FMS, 1998 WL 661465, at *12 (N.D. Cal. Sept. 22, 1998), decided thirteen years after the UTSA went into effect in California in 1985, in which the court held that while certain negative information or research might be protectable as a trade secret, plaintiff's attempt to claim its former software engineers' "'technical know-how' regarding what does and does not work in the process of designing digital media management software" was "too nebulous a category of information to qualify for trade secret protection." *See also Mattel, Inc. v. MGA Entm't, Inc.*,

782 F. Supp. 2d 911, 969 (C.D. Cal. 2011) ("There is, however, a distinction between disclosing the *fact* that certain elements of Manugistics did or did not work for Mattel, and merely disclosing elements of the program that did or did not work for Mattel," calling into question the validity of Mattel's position "that it prefers for its former employees to engage in 'costly exploration' to software features of which they are already aware") (emphasis in original).

Nor does *Courtesy Temporary Service, Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1287 (Cal. Ct. App. 1990), which Waymo handed up at the hearing, move the needle. That case merely recognized, as Defendants acknowledge, that under the UTSA commentary, negative information *could* fall within the definition of a trade secret. But as Uber explained in Dkt. 2184 at 3-4, this customer-list case is of no help here—nor does it stand for the proposition that negative information is automatically protectable if, as the Court asked, it merely "is acquired by lengthy and expensive efforts." (11/14/17 Hr'g Tr. 63:4–7.) First of all, in customer-list cases, the spending of "substantial time and effort" identifying particular customers with unique needs or characteristics takes on unusual importance—because the remainder of the information on those lists is readily available from a phone book. Second, the UTSA comment says: "*The **definition*** includes information that has commercial value from a negative viewpoint, for example the results of lengthy and expensive research which proves that a certain process will not work could be of great value to a competitor." Thus, the "lengthy and expensive research" comes from the requirement that a trade secret have commercial value sufficient to qualify as a trade secret under section 3426.1(d)(1)—it is not the sole qualifying factor. Moreover, while *Camacho* stated that a customer list deserved protection as a trade secret where the list was "acquired by lengthy and expensive efforts which, from a negative viewpoint, indicate those entities "that have *not* subscribed to plaintiff's services," the Court held that "[i]t is the list of persons who actually purchase Courtesy's services that constitute confidential information." *Id.* at 1287–88 (emphasis in original). In other words, the protectable information was not negative information or research but the customer list that disclosed the positive trade secret—Courtesy's actual clients—which "from a negative viewpoint" also indicated who were not clients.

Finally, this doctrine should be interpreted narrowly in light of the policies underlying that

precedent and California Business & Professions Code § 16600.  Depriving engineers of their ability to change jobs because they might reveal knowledge of what not to do, or worse, forcing them to repeat errors lest they rely on lessons learned about what not to do, is contrary to the law as set forth in *Winston Research*, *Trade Secrets Practice* section 1.8, and California's public policy.

Dated:  November 17, 2017              MORRISON & FOERSTER LLP

                                       By:  */s/ Arturo J. González*
                                             ARTURO J. GONZÁLEZ

                                       Attorneys for Defendants
                                       UBER TECHNOLOGIES, INC. and
                                       OTTOMOTTO LLC