# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Applied Materials, Inc., | NO. C 07-05248 JW |
| Plaintiff, | **ORDER RE: THE PARTIES' VARIOUS MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| Advanced Micro-Fabrication Equipment (Shanghai) Co., LTD, et al., | |
| Defendants. | |

The background facts and procedural history of this case are set forth in greater detail in the Court's February 29, 2008 Order Granting in Part and Denying in Part Defendants' Various Motions to Dismiss,[1] and the Court's May 20, 2009 Order Granting Defendants' Motion for Summary Judgment on Defendants' Counterclaims.[2]

Presently before the Court are (1) Plaintiff's Motion for Summary Judgment of Misappropriation of Certain Trade Secrets,[3] (2) Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims,[4] (3) Defendants' Motion for Summary Judgment on Trade Secret 8r and 8s Documents,[5] (4) Defendants' Motion for Summary Judgment on the Kawai and Chu Trade Secret

---

[1] (Docket Item No. 118.)

[2] (Docket Item No. 314.)

[3] (hereafter, "Motion Re Certain Trade Secrets," Docket Item No. 525, filed under seal.)

[4] (hereafter, "Motion Re Counterclaims," Docket Item No. 624, filed under seal.)

[5] (hereafter, "8r and 8s Motion," Docket Item No. 520.)

1 8 Documents,[6] and (5) Defendants' Motion for Summary Judgment on Robert Chen's Trade Secret
2 8 Documents.[7] The Court finds it appropriate to take the matter under submission without oral
3 argument.[8] See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court DENIES
4 Plaintiff's Motion Re Certain Trade Secrets; DENIES Plaintiff's Motion Re Counterclaims;
5 GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment on Trade Secret
6 8r and 8s Documents; DEFERS ruling on Defendants' Motion for Summary Judgment on the Kawai
7 and Chu Trade Secret 8 Documents pending production of further evidence; and GRANTS
8 Defendants' Motion for Summary Judgment on Robert Chen's Trade Secret 8 Documents.

9 As a preliminary matter, since the parties have filed most, if not all of the evidence for these
10 Motions under seal, this Order only summarizes the evidence and provides general citations to the
11 evidence but does not refer to the contents of any specific documents to protect the parties'
12 confidential information.

### A. Summary Judgment Standard

14 Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and
15 admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any
16 material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.
17 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims
18 or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party "always bears the
19 initial responsibility of informing the district court of the basis for its motion. . . ." Id. at 323. "The
20 judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file,

---

[6] (hereafter, "Kawai and Chu Motion," Docket Item No. 515.)

[7] (hereafter, "Chen Motion," Docket Item No. 508.)

[8] On the cover sheet of Defendants' 8r and 8s Motion, Defendants have requested oral argument. In light of the findings in this Order, the Court DENIES Defendants' request. See Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998). (A district court's failure to grant an oral hearing on a motion for summary judgment does not constitute reversible error in the absence of prejudice. When a party has [had] an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in a refusal to grant oral argument] since any error can be rectified on appeal of the summary judgment. In other words, a district court can decide the issue without oral argument if the parties can submit their papers to the court.)

2

1 and any affidavits show that there is no genuine issue as to any material fact and that the movant is
2 entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party "may not
3 reply merely on allegations or denials in its own pleading; rather, its response must–by affidavits or
4 as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R.
5 Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the nonmoving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

**B.     Plaintiff's Motion Re Certain Trade Secrets**

Plaintiff moves for summary judgment as to misappropriation of trade secrets embodied in eight documents allegedly taken to Defendants by former employees of Plaintiff. (Motion Re Certain Trade Secrets at 2.)

Upon review of the evidence submitted by the parties, the Court finds a genuine dispute regarding several material facts. For example, Defendants have submitted an expert report to contest, among other things, whether the information at issue in the eight documents was in fact a

3

1  trade secret.[9] Thus, the Court finds that summary judgment is inappropriate in light of the disputed
2  evidence.

3  Accordingly, the Court DENIES Plaintiff's Motion Re Certain Trade Secrets.[10]

### C. Plaintiff's Motion Re Counterclaims

Plaintiff moves for summary judgment as to Counts Three (Libel) and Four (Intentional Interference with Prospective Economic Advantage) of Defendant AMEC China's counterclaims. (Motion Re Counterclaims at 1.)

Upon review of the evidence submitted by the parties, the Court finds a genuine dispute regarding several material facts. For example, the parties have submitted several declarations with numerous exhibits in support of each side's view of the effect, if any, of the allegedly libelous statement.[11] Furthermore, discovery as to the counterclaims is ongoing. (Id. at 5 n.3.) Thus, the Court finds that summary judgment is inappropriate in light of the disputed evidence.

Accordingly, the Court DENIES Plaintiff's Motion Re Counterclaims.

### D. Defendants' Motion Re Trade Secret 8r and 8s Documents

#### 1. Background

Trade Secret 8 consists of a long list of documents, set out by Bates number.[12] Trade Secrets 8r and 8s are subgroups of Trade Secret 8 documents. (Id.) Plaintiff characterizes Trade Secret 8r

---

[9] (See Declaration of Robert B. MacKnight in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment on Certain Trade Secrets, Docket Item No. 600, filed under seal.)

[10] Since the Court has denied Plaintiff's Motion Re Certain Trade Secrets, the Court DENIES as moot Defendants' Evidentiary Objections to Declarations in Support of Plaintiff's Motion for Summary Judgment on Certain Trade Secrets. (Docket Item No. 597, filed under seal.)

[11] (See Declaration of Michael Strapp in Support of Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims, Docket Item No. 625, filed under seal; Declaration of Zhiyou Du in Support of AMEC China's Opposition to Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims, Docket Item No. 682, filed under seal.)

[12] (Applied's Supplemental Identification of Trade Secrets, dated August 25, 2009 at 10-14, Declaration of Marc J. Pernick in Support of AMEC's Motion for Summary Judgment on Trade Secret 8r and 8s Documents, Ex. 1, hereafter, "8r and 8s Pernick Decl.," Docket Item No. 21, filed under seal.)

4

as a group of "confidential Applied documents in AMEC's possession," and Trade Secret 8s as a group of "AMEC documents that contain portions of confidential Applied documents."[13] Defendants characterize Trade Secret 8s documents as "AMEC documents created by AMEC employees," certain pages of which Plaintiff contends contain Plaintiff's trade secrets.[14]

**2.  Discussion**

Defendants move for summary judgment as to Trade Secrets 8r and 8s on the grounds that: (1) on their face, several of the documents indicate that they are the property of a subsidiary or affiliate of Plaintiff rather than Plaintiff itself,[15] (2) declarations which Plaintiff provided to establish ownership of several documents lack sufficient foundation to constitute admissible evidence,[16] (3) several documents do not contain any indication of ownership,[17] and (4) the expert report which Plaintiff produced to establish that the 8s documents contain Plaintiff's trade secrets is inadmissible because it was not signed under penalty of perjury and there is no indication that it was given under oath.[18]

To support a misappropriation of trade secrets claim, a plaintiff must demonstrate ownership of the trade secret. Sargent Fletcher, Inc. v. Able Corp., 110 Cal. App. 4th 1658, 1665 (Cal. Ct. App. 2003). The Court addresses in turn each of Defendants' challenges to the sufficiency of Plaintiff's proof of ownership of the 8r and 8s Trade Secrets.

---

[13] (Plaintiff's Opposition to Defendants' Motions for Summary Judgment on Trade Secret 8 at 21 n.6, hereafter, "Trade Secret 8 Opposition," filed under seal.)

[14] (8r and 8s Motion.)

[15] (8r and 8s Motion at 3-4, 7.)

[16] (Defendants' Reply in Support of their Motion for Summary Judgment on Trade Secret 8r and 8s Documents at 5, hereafter, "8r and 8s Reply," filed under seal.)

[17] (8r and 8s Reply at 3-4.)

[18] (Id. at 9.)

5

### a. Plaintiff's Subsidiaries and Affiliates

At issue is whether Plaintiff has produced sufficient evidence to create a triable issue of fact as to its ownership of documents that appear on their face to be the property of corporate entities other than Plaintiff.

A parent corporation has an ownership interest in the trade secrets of its wholly-owned subsidiary. See Computer Sciences Corp. v. Computer Assocs. Int'l, Inc., 1999 U.S. Dist. LEXIS 21803, at *22 n.6 (C.D. Cal. 1999); SI Handling Sys., Inc. v. Heisley, 658 F. Supp. 362, 370 (E.D. Pa. 1986). As the Supreme Court has explained:

> A parent and its wholly-owned subsidiary have a complete unity of interest. Their objectives are common, not disparate, their general corporate actions are guided or determined not by two corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver. With or without a formal "agreement", the subsidiary acts for the benefit of the parent, its sole shareholder.

Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771 (1984).

Here, out of the thirty-four documents identified as Trade Secret 8r, eight indicate on their face that they are owned by a corporate entity other than Plaintiff. (See 8r and 8s Motion at 3-4, 7.) Specifically, AMEC0008366-382 and AMEC0008465-501 both indicate that they are the property of Applied Materials Europe;[19] AMEC0012428-458, AMEC0045595-600, and AMEC0045734 all indicate that they are the property of Applied Materials Japan, Applied Materials Asia Pacific Ltd., and Applied Materials Southeast Asia, respectively;[20] AMEC0001695 indicates that it is the property of Ibiden Co., Ltd.[21] Plaintiff's own evidence also indicates that several other Trade Secret 8r documents were authored by employees of entities other than Plaintiff: AMEC0008360-365 was

---

[19] (Declaration of Marc J. Pernick in Support of Defendants' Motion for Summary Judgment on Trade Secret 8r and 8s Documents, Exs. 3-4, hereafter, "8r and 8s Pernick Decl.," filed under seal.)

[20] (Id., Exs. 7-9.)

[21] (Id., Ex. 10.)

6

1 authored by an employee of Applied Materials Europe and AMEC0012462-479 was authored by an
2 employee of Applied Materials Japan.[22]

3      In support of its contention that these various corporate entities are its wholly-owned
4 subsidiaries, Plaintiff presents the declaration of one of its employees, Alexis Applegate, and an
5 SEC Form 10-K filing from December 2008. Mr. Applegate declares that Applied Materials Japan,
6 Applied Materials Asia-Pacific, Ltd., Applied Materials Taiwan, Ltd., and Applied Materials
7 Southeast Asia Pte. Ltd. are all wholly-owned subsidiaries of Plaintiff.[23] Mr. Applegate further
8 declares that Plaintiff is the sole limited partner of AFCO C.V., and AFCO GP, LLC holds legal title
9 to 100% of the shares of Applied Materials B.V. for and on behalf of AFCO C.V. (Id. ¶¶ 8-9.) The
10 SEC filing indicates that Applied Materials Japan, Applied Materials Asia-Pacific, AFCO GP, LLC,
11 and AFCO C.V. are subsidiaries of Plaintiff; Applied Materials Taiwan and Applied Materials
12 Southeast Asia Pte. Ltd. are subsidiaries of Applied Materials Asia-Pacific; and that Applied
13 Materials Europe BV is a subsidiary of AFCO C.V. (Id., Ex. A, Ex. 21.)

14      The Court is not content to rely solely upon the declaration an employee of Plaintiff to
15 establish Plaintiff's ownership structure. Whether or not the listed companies are wholly-owned
16 subsidiaries of Plaintiff should be established either through internal corporate documents or public
17 corporate filings, not through the conclusory statements of an employee. See Thornhill Publ'g Co.
18 v. Gen. Elec. Co., 594 F.2d 730, 738 (9th Cir. 1978) ("If, indeed, evidence was available to underpin
19 (the) conclusory statement, Rule 56 required (the party opposing summary judgment) to come
20 forward with it."). Further, although the SEC filing which Plaintiff produces states that the listed
21 companies are subsidiaries of Plaintiff, it does not state that Plaintiff is the sole owner. Thus, the
22 evidence proffered by Plaintiff does not create a genuine issue of material fact that the listed
23 companies are Plaintiff's wholly-owned subsidiaries. However, since the Court presumes that

---

[22] (Plaintiff Applied Materials, Inc.'s Supplemental Responses to Defendant AMEC Inc.'s Interrogatories (Nos. 4-6, 8, 12-14, 36, 42-43, and 46-47) at 28-29, 8r and 8s Pernick Decl., Ex. 5.)

[23] (Declaration of Alexis Applegate in Support of Plaintiff's Opposition to Defendants' Motions for Summary Judgment Regarding Trade Secret 8, filed under seal.)

1 Plaintiff has within its possession documents which more definitively establish the extent of
2 Plaintiff's ownership stake in its subsidiaries, the Court defers ruling on the issue of Plaintiff's
3 ownership of the subsidiary Trade Secret 8r documents in order to provide Plaintiff with a
4 reasonable amount of time to produce those documents for consideration.

5 With respect to Ibiden Co., Ltd., Plaintiff has failed to produce any evidence that Ibiden Co.
6 is its wholly-owned subsidiary, or even a related company. (See 8r and 8s Pernick Decl., Ex. 10.)
7 Thus, Plaintiff has not created a triable issue of fact that it is the owner of the Trade Secret 8r
8 document which indicates that it is the property of Ibiden Co., Ltd. Accordingly, the Court
9 GRANTS Defendants' Motion for Summary Judgment as to AMEC0001695.

### b. Documents Created by Applied Employees in California

11 Plaintiff contends that it owns several of the Trade Secret 8r Documents because they were
12 created in California by Plaintiff's employees. (Trade Secret 8 Opposition at 21-23.) As to four of
13 those documents, Plaintiff presents declarations of the document authors who state that they created
14 the documents while working for Applied in California.[24] Defendants do not dispute that the author
15 declarations here create a genuine issue of material fact that Plaintiff owns these four documents.
16 (See 8r and 8s Reply at 2-3.)

17 As to five other documents, Plaintiff presents the declarations of Plaintiff employees who
18 state that the documents were created in California by employees of Plaintiff.[25] The Court finds that

---

[24] (See Declaration of Michael G. Chafin in Support of Plaintiff's Opposition to Defendants' Motions for Summary Judgment Regarding Trade Secret 8 ¶¶ 3,5, filed under seal; Declaration of Sergio Shoji in Support of Plaintiff's Opposition to Defendants' Motions for Summary Judgment Regarding Trade Secret 8 ¶¶ 3, 5, 7, 9, filed under seal; Declaration of David Tiao in Support of Plaintiff's Opposition to Defendants' Motions for Summary Judgment Regarding Trade Secret 8 ¶¶ 3-5, hereafter, "Tiao Decl," filed under seal.) The four documents which the authors' declarations refer to are AMEC0008366, AMEC0008502, AMEC0008512, AMEC00081248.

[25] (Tiao Decl. ¶¶ 9, 13; Declaration of Thorsten Lill in Support of Plaintiff's Opposition to Defendants' Motions for Summary Judgment Regarding Trade Secret 8 ¶ 12, filed under seal.) The five documents in question here are AMEC0012526, AMEC0008383, AMEC00044369, AMEC00044372, and AMEC0051083.

8

1 these declarations create a genuine issue of material fact as to Plaintiff's ownership of these five
2 documents.[26]

3 As to the remaining Trade Secret 8r documents, Plaintiff contends that they all have
4 indications of Plaintiff's ownership on their face based on their markings or content. (Trade Secret 8
5 Opposition at 21.) In support of their contention, Plaintiff's provide the declaration of their
6 counsel.[27] The Court finds that the markings on the face of the documents create a triable issue of
7 fact that they are Plaintiff's property. Although Defendants point out that several of the documents
8 in this category do not contain outward indicia of Plaintiff's ownership,[28] the Court finds the
9 accompanying declaration creates a triable issue of fact that there are other indications within the
10 documents that demonstrate that they belong to Plaintiff.

11 Accordingly, the Court DENIES Defendants' Motion for Summary Judgment as to the
12 remaining Trade Secret 8r documents.

### c. Trade Secret 8s Documents

14 Defendants move for summary judgment on the 8s documents on the ground that all of the
15 documents were created by AMEC employees, and thus Plaintiff cannot demonstrate that it owns the
16 documents. (8r and 8s Motion at 4.) Plaintiff responds that all forty-six documents contain
17 Plaintiff's confidential technical drawings and compiled customer and market data. (Trade Secret 8
18 Opposition at 22.)

19 In support of its contention that it owns the trade secrets contained in the Trade Secret 8s
20 documents, Plaintiff proffers the expert report of its computer forensic expert, Christopher

---

[26] Defendants object to consideration of the declarations of the non-author employees as providing insufficient basis of their personal knowledge of where and by whom the documents were created. (8r and 8s Reply at 5-6.) The Court finds Defendants' objection unpersuasive and premature since at trial, the declarants will presumably testify to the basis of their knowledge. Thus, the Court will consider the non-author declarations for purposes of this Motion.

[27] (Declaration of Michael Strapp in Support of Plaintiff's Opposition to Defendants' Motions for Summary Judgment on Trade Secret 8 ¶ 9, filed under seal.)

[28] (8r and 8s Reply at 3.)

9

Racich, who stated that all of the documents contain the term "Applied Materials" in either the metadata company or metadata author field.[29] Mr. Racich further states that the document files were created on Plaintiff's computer systems.[30] (Id.) The Court finds that Mr. Racich's report creates a genuine issue of material fact that Plaintiff owns trade secrets contained in the Trade Secret 8s document. Accordingly, the Court DENIES Defendants' Motion for Summary Judgment as to the Trade Secret 8s Documents.

In sum, the Court GRANTS Defendants' Motion for Summary Judgment on Trade Secret 8r and 8s Documents as to document AMEC0001695. The Court DEFERS ruling on Defendants' Motion for Summary Judgment on Trade Secret 8r and 8s Documents as to documents AMEC0008366-382, AMEC0008465-501, AMEC0012428-458, AMEC0045595-600, AMEC0045734, AMEC0008360-365, and AMEC0012462-479 pending Plaintiff's proffer of documents definitively establishing that the companies listed on those documents are Plaintiff's wholly-owned subsidiaries. The Court DENIES Defendants' Motion for Summary Judgment on Trade Secret 8r and 8s Documents as to the remaining Trade Secret 8r documents and the Trade Secret 8s documents.

### E. Defendants' Motion Re Kawai and Chu Trade Secret 8 Documents

#### 1. Background

The Kawai Trade Secrets are a subgroup of Trade Secret 8 documents that were in Ichiro Kawai's possession when he joined AMEC.[31] In 1990, Mr. Kawai began working for Applied

---

[29] (Expert Witness Report of J. Christopher Racich 7-12, Strapp Decl., Ex. 14.)

[30] Defendants objects to consideration of Mr. Racich's expert report on the ground that it is not signed under penalty of perjury or submitted through a declaration that is under oath. (8r and 8s Reply at 10.) The Court finds Defendants' objection unavailing and premature since Mr. Racich will presumably testify under oath at the trial. Thus, the Court will consider Mr. Racich's report for the purposes of this Motion.

[31] (Applied's Supplemental Responses to Defendant AMEC Inc.'s Interrogatories, dated July 6, 2009 at 104:6-11, Declaration of Marc J. Pernick in Support of Defendants' Motion for Summary Judgment on the Kawai and Chu Trade Secret 8 Documents, Ex. 3, hereafter, "Kawai and Chu Pernick Decl.," filed under seal; AMEC's Fourth Supplemental Responses to Plaintiff's Corrected Sixth Set of Interrogatories (No. 31), dated July 28, 2009 at 2-16, Kawai and Chu Pernick Decl., Ex.

10

Materials ("AMAT") Japan as Manager of CVD Engineering.[32] Mr. Kawai left AMAT Japan in June 2005, at which point he began working for AMEC Japan as General Manager for the Japan Region. (Id.; id. at 52:1-18.) Mr. Kawai testified that he obtained the Trade Secret 8 documents while working for AMAT Japan, and saved copies of the documents onto the hard drive of his personal computer located in his home in Japan. (Id. at 7:10-12; 25:3-21; 53:13-55:7; 65:20-66:22.) Mr. Kawai further testified that he downloaded these files to his work computer at AMEC.[33]

The Chu Trade Secrets are a subgroup of Trade Secret 8 documents that were in Michael Chu's possession when he joined AMEC China, or which Mr. Chu obtained directly from customers in Asia. (Kawai and Chu Pernick Decl., Ex. 3 at 104:6-11, Ex. 4 at 2-16, Ex. 5 at 15-24.) In 1999, Mr. Chu joined AMAT Taiwan as a metal etch process engineer. In April 2005, Mr. Chu left AMAT Taiwan and began working for AMEC China.[34] Mr. Chu testified that he obtained the Trade Secret 8 documents during his employment with AMAT Taiwan while working in Taiwan or Germany, or else obtained them directly from AMAT Taiwan customers in Asia.[35] Mr. Chu further testified that he copied electronic files of these Trade Secret 8 documents to his USB flash drive, and after beginning work at AMEC, he loaded the documents from the flash drive onto his AMEC computer.[36]

---

4; AMEC's Second Supplemental Responses to Plaintiff's Corrected Sixth Set of Interrogatories (No. 32), dated June 5, 2009 at 15-24, Kawai and Chu Pernick Decl., Ex. 5.)

[32] (Deposition of Ichiro Kawai at 39:18-40:2, Kawai and Chu Pernick Decl., Ex. 6.)

[33] (Deposition of Ichiro Kawai at 57:12-17, Declaration of Michael Strapp in Support of Plaintiff's Opposition to Defendants' Motions for Summary Judgment on Trade Secret 8, Ex. 11, hereafter, "Strapp Decl.," filed under seal.)

[34] (Deposition of Michael Chu at 22:7, 29:2-7, 32:15-18, Kawai and Chu Pernick Decl, Ex. 7.)

[35] (Id. at 35:6-14, 43:11-47:4, 65:2-14, 123:5-124:8, 128:6-25, 131:2-132:8, 133:7-134:21, 135:14-25, 145:13-17, 145:23-146:24.)

[36] (Id. at 8:18-23, 43:11-47:4, 65:2-14.)

11

**2. Discussion**

Defendants move for summary judgment as to the Kawai and Chu Trade Secret 8 documents on the ground that the California Uniform Trade Secret Act ("CUTSA") does not reach the violations alleged here because Plaintiff can show neither actionable conduct nor an injury to Plaintiff that occurred in California.[37] Defendants contend that Plaintiff has produced no evidence to establish that it has suffered any injury resulting from the alleged misappropriation of the Kawai and Chu Trade Secret 8 documents. (Kawai and Chu Motion at 9.)

With respect to extraterritorial application of California statutes, the California Supreme Court has held:

> Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect. The intention to make the act operative, with respect to occurrences outside the state, will not be declared to exist unless such intention is clearly expressed or reasonably to be inferred "from the language of the act or from its purpose, subject matter or history."

Diamond Multimedia Systems, Inc. v. Sup. Ct., 19 Cal. 4th 1036, 1059 (1999); see also Norwest Mortgage, Inc. v. Sup. Ct., 72 Cal. App. 4th 214, 222 (Cal. Ct. App. 1999). However, California law reaches extraterritorial transactions or conduct which cause an injury in California. Ready Transp., Inc. v. AAR Mfg., Inc., 2006 WL 2131308, at *3 (E.D. Cal. 2006). Where a wholly-owned subsidiary suffers economic harm, the parent company is also likely to suffer injury. See Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd., 493 U.S. 331, 336 (1990); Pujol v. Shearson/Am. Express, 877 F.2d 132, 135 (1st Cir. 1989).

Here, Plaintiff has produced evidence that Mr. Kawai obtained Trade Secret 8 documents during the time of his employment with AMAT Japan, and then later used those documents to benefit his new employer, AMEC. (See Trade Secret 8 Opposition at 16-17.) For example, Plaintiff presented evidence showing that Mr. Kawai incorporated some Trade Secret 8 documents into

---

[37] (Kawai and Chu Motion.)

12

1 marketing presentations to AMEC management about potential customers.[38] Plaintiff also produced
2 evidence that Mr. Chu obtained Trade Secret 8 documents during the time of his employment with
3 AMAT Taiwan, and that after Mr. Chu joined AMEC, several AMEC employees used the
4 documents. (See Trade Secret 8 Opposition at 14-15.) There is evidence that at least two AMEC
5 employees incorporated several of the documents into work-related presentations.[39]

6       The Court finds that Plaintiff's evidence is sufficient to create a triable issue of fact that
7 AMEC, through its employees Mr. Kawai and Mr. Chu, misappropriated trade secrets from AMAT
8 Japan and AMAT Taiwan. Since misappropriation of the trade secrets of AMAT Japan and AMAT
9 Taiwan would constitute economic harm to those companies, such conduct would concomitantly
10 cause harm to Plaintiff if AMAT Japan and AMAT Taiwan are wholly-owned subsidiaries of
11 Plaintiff. However, as discussed above, Plaintiff has not provided sufficient evidence to show that
12 AMAT Japan and AMAT Taiwan are Plaintiff's wholly-owned subsidiaries. Thus, the Court defers
13 ruling on the Kawai and Chu Motion until such time that it has the opportunity to review
14 documentary evidence of Plaintiff's corporate structure.

### F.    Defendants' Motion Re Robert Chen's Trade Secret 8 Documents

#### 1.    Background

17       The Chen Trade Secrets are a subgroup Trade Secret 8 documents that were in Robert
18 Chen's possession when he joined AMEC.[40] Mr. Chen worked for Applied until February of 2004.[41]
19 After leaving Applied, Mr. Chen went to work for UMS/Norelco, an Applied supplier.[42] In April of

---

[38] (Deposition of Ichiro Kawai at 57:12-17.)

[39] (AMEC's Interrogatory Response No. 32, Strapp Decl., Ex. 8.)

[40] (Applied's Responses to Defendant AMEC Inc.'s Sixth Set of Interrogatories, No. 48, dated June 2, 2009 at 15-18, Declaration of Marc J. Pernick in Support of Defendants' Motion for Summary Judgment on Robert Chen's Trade Secret 8 Documents, Ex. 3, hereafter, "Chen Pernick Decl.," filed under seal; AMEC's Fourth Supplemental Response to Applied's Sixth Set of Interrogatories, No. 31, dated July 28, 2009 at 15-16, Chen Pernick Decl., Ex. 4.)

[41] (Deposition of Robert Chen at 77:12-13, Chen Pernick Decl., Ex. 5.)

[42] (Id. at 29:20-24, 49:21-25.)

13

1 2006, Mr. Chen left UMS/Norelco and began working for AMEC in China.[43] While working at
2 UMS/Norelco, Mr. Chen received Trade Secret 8 documents from Applied employees in
3 California.[44] It is undisputed that of the 359 documents that Mr. Chen had in his possession when he
4 joined AMEC, he obtained 354 of them while working at UMS/Norelco.[45] Mr. Chen testified that
5 after beginning his job at AMEC, he transferred a data file, which contained Trade Secret 8
6 documents attached to emails, from his portable storage device onto an AMEC computer.[46]

**2. Discussion**

Defendants move for summary judgment as to the 354 Applied documents that Mr. Chen received while employed at UMS/Norelco which he had in his possession at AMEC (the "Chen Documents.").[47] Defendants contend that Plaintiff cannot prove its misappropriation of trade secrets claim because Mr. Chen brought the documents to AMEC without AMEC's knowledge, and AMEC did not use or disclose the documents. (Id. at 7.)

To prevail on a claim of misappropriation of trade secret, a plaintiff must prove that: "(1) the misappropriated information constitutes a trade secret, (2) the defendant 'used' the trade secret, and (3) the plaintiff was actually damaged by the misappropriation or the defendant was unjustly enriched by such misappropriation and use." FAS Technologies, Ltd. v. Dainippon Screen Mfg. Co., 2001 U.S. Dist. LEXIS 7503, at *10 (N.D. Cal. 2001); see also Brown v. Adidas Int'l, 938 F. Supp. 628, 634 (S.D. Cal. 1996).

---

[43] (Id. at 6:15-18, 7:1-2, 11:5-7.)

[44] (Id. at 30:6-15, 48:16-18, 64:15-65:2, 271:5-276:11.)

[45] (Chen Motion at 4; Trade Secret 8 Opposition at 14.)

[46] (Deposition of Robert Chen at 103:16-18, 154:15-22.)

[47] (Chen Motion at 2, 4.) Defendants contend that Plaintiff uses the term "Chen Documents" to refer to a larger group of documents than the 354 documents that are the subject of this Motion. (See Defendants' Reply in Support of their Motion for Summary Judgment on Robert Chen's Trade Secret 8 Documents at 2, hereafter, "Chen Reply," filed under seal.) Defendants' Motion only encompasses those Trade Secret 8 documents which Mr. Chen obtained while he was working for UMS/Norelco. (Id.)

14

Here, Plaintiff presents evidence that after joining AMEC, Mr. Chen transferred Applied document files onto the hard drive of his AMEC computer.[48] It is undisputed that the hard drive containing these files remains in AMEC's possession.[49] Plaintiff provides the following evidence to demonstrate that AMEC used several of the documents that Chen obtained from Plaintiff: (1) Chen testified that he sent to another AMEC employee multiple documents that he had created while employed at Applied that allegedly contain confidential information;[50] and (2) Chen testified that he used an Applied spreadsheet to demonstrate to the designer of a particular AMEC product that the product was not manufacturable using the specifications then provided.[51]

Upon examination of the evidence, the Court finds that Plaintiff has not provided any evidence that AMEC used or disclosed any of the 354 Trade Secret 8 documents that Mr. Chen obtained while employed at UMS/Norelco. Although it is undisputed that the files in question remain in AMEC's possession, a showing of something more than mere possession is necessary for a trade secret misappropriation claim. Thus, Plaintiff has not produced sufficient evidence to create a genuine issue of material fact that AMEC misappropriated the Trade Secret 8 documents that Mr. Chen obtained at UMS/Norelco.[52]

Plaintiff also contends that AMEC should be held accountable for the conduct and knowledge of Mr. Chen because Mr. Chen is a management-level employee of AMEC.[53] (Trade

---

[48] (Deposition of Robert Chen at 81:3-22, 93:13-15, 103:19-104:24, 154:15-155:6.)

[49] (Trade Secret 8 Opposition at 5 (hard drive currently held by AMEC's Vice President of Global Business); Chen Motion at 5 ("AMEC has confiscated Chen's computer and an external hard drive, and locked them in the offices of . . . the AMEC Vice President of Global Services.").)

[50] (Deposition of Robert Chen at 81:23-82:4, 109:11-114:17, 126:11-127:1, 191:11-193:13.)

[51] (Id. at 169:14-170:20.)

[52] All of the evidence that Plaintiff presents of AMEC's use or disclosure of trade secret documents in Mr. Chen's possession pertain either to documents that Mr. Chen obtained while working at Applied or to documents that are not on Applied's trade secret list.

[53] "It is a well settled principle that knowledge of officers and key employees of a corporation, obtained while acting in the course of their employment and within the scope of their authority, it is imputed to the corporation itself." W.R. Grace & Co. v. W. U.S. Indus., 608 F.2d 1214, 1219 (9th Cir. 1979) (citations omitted).

15

Secret 8 Opposition at 8-11.) The Court finds Plaintiff's contention unpersuasive here, since the documents at issue are defined as those which Mr. Chen obtained while an employee of UMS/Norelco, not of AMEC. Defendants cannot be held liable for Mr. Chen's knowledge and actions during the course of his employment with UMS/Norelco.

Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment on Robert Chen's Trade Secret 8 Documents as to the 354 trade secrets he obtained while working at UMS/Norelco.

**G.  Conclusion**

The Court DENIES Plaintiff's Motion Re Certain Trade Secrets; DENIES Plaintiff's Motion Re Counterclaims;[54] GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment on Trade Secret 8r and 8s Documents; DEFERS ruling on AMEC's Motion for Summary Judgment on the Kawai and Chu Trade Secret 8 Documents pending production of further evidence; and GRANTS Defendants' Motion for Summary Judgment on Robert Chen's Trade Secret 8 Documents.

In light of the Court's Order pertaining to Defendants' Motion for Summary Judgment on Trade Secret 8r and 8s Documents and Defendants' Motion for Summary Judgment on the Kawai and Chu Trade Secret 8 Documents, on or before **December 7, 2009**, Plaintiff shall file and serve any admissible documents establishing that the companies indicated in the Trade Secret 8r documents are its wholly-owned subsidiaries.

Dated:  November 30, 2009

JAMES WARE
United States District Judge

---

[54] In light of this Order, Plaintiff's Motion for Leave to File Supplemental Brief in Support of Motion for Summary Judgment on Defendants' Counterclaims is DENIED as moot. (Docket Item No. 752.)

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Brian Paul Gearing bgearing@mofo.com
Colette R. Verkuil cverkuil@mofo.com
D. Stuart Bartow sbartow@goodwinprocter.com
Daryl Stuart Bartow sbartow@goodwinprocter.com
Douglas C Doskocil ddoskocil@goodwinprocter.com
Harold J. McElhinny HmcElhinny@mofo.com
James C. Rehnquist jrehnquist@goodwinprocter.com
John C. Englander jenglander@goodwinprocter.com
Kenneth Alexander Kuwayti Kkuwayti@mofo.com
Marc David Peters mdpeters@mofo.com
Marc J. Pernick mpernick@mofo.com
Michael G. Strapp mstrapp@goodwinprocter.com
Paul Forrest Coyne pcoyne@mofo.com
Richard Steven Ballinger Rballinger@mofo.com
Thomas F. Fitzpatrick tfitzpatrick@goodwinprocter.com
Thomas H R Denver tdenver@mediationmasters.com

**Dated: November 30, 2009**          **Richard W. Wieking, Clerk**

                                      **By:   /s/ JW Chambers**
                                             **Elizabeth Garcia**
                                             **Courtroom Deputy**

**United States District Court**
For the Northern District of California