1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Charles K. Verhoeven (Bar No. 170151)
2   charlesverhoeven@quinnemanuel.com
    David A. Perlson (Bar No. 209502)
3   davidperlson@quinnemanuel.com
    Melissa Baily (Bar No. 237649)
4   melissabaily@quinnemanuel.com
    John Neukom (Bar No. 275887)
5   johnneukom@quinnemanuel.com
    Jordan Jaffe (Bar No. 254886)
6   jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:     (415) 875-6600
8  Facsimile:     (415) 875-6700

9  Attorneys for WAYMO LLC

10                        UNITED STATES DISTRICT COURT

11                       NORTHERN DISTRICT OF CALIFORNIA

12                            SAN FRANCISCO DIVISION

13  WAYMO LLC,                              CASE NO. 3:17-cv-00939

14             Plaintiff,                   **PLAINTIFF WAYMO LLC'S RESPONSE
                                            TO AUTHORITIES DEFENDANTS
15       vs.                                RAISED AT NOVEMBER 14, 2017
                                            HEARING RE JURY INSTRUCTIONS**
16  UBER TECHNOLOGIES, INC. and
    OTTOMOTTO LLC,                          Judge: The Honorable William Alsup
17
               Defendants.                  Trial Date: December 4, 2017
18

Waymo submits the following response to the authorities Defendants raised with the Court at the November 14, 2017 hearing on jury instructions (the "Hearing"). 11/14/17 Hr'g Tr. at 110:21-24.[1]

## I. DEFENDANTS' PURPORTED AUTHORITIES ON NEGATIVE TRADE SECRETS ARE INAPPOSITE AND IRRELEVANT.

In question 4 of the November 3, 2017 Notice of Hearing, the Court asked the parties to, in effect, reconcile negative trade secrets with the inability of engineers to simply forget the lessons they learned while working at prior employers.[2] None of the cases Defendants cited at the Hearing provide any guidance to the Court on how to accommodate a general policy of permitting employee mobility with the undisputed existence of negative trade secrets under applicable law.

***AMP.*** Defendants offered *AMP Inc. v. Fleischhacker*, 823 F.2d 1199 (7th Cir. 1987), at the Hearing as purportedly addressing the conceptual tension noted by the Court. It fails to address that issue. As an initial matter, and as the Court noted at the Hearing, *AMP* is a Seventh Circuit case that is not binding here. 11/14/17 Hr'g Tr. at 57:18-25. More importantly, however, Defendants cite *AMP* for unremarkable general propositions such as that "an employee is free to take with him general skills and knowledge acquired during his tenure with his former employer," and "general skills and knowledge acquired in the course of employment [are things which] an employee is free to take and to use in later pursuits [because] [a]ny other rule would force a departing employee to perform a prefrontal lobotomy on himself or herself." *Id.* at 1202, 1205. *AMP* has nothing to do with negative trade secrets; the plaintiff never asserted one and the Seventh Circuit never referred to the concept in issuing its opinion, instead finding that the plaintiff had failed to prove the existence of affirmative trade secrets. 823 F.2d at 1202-03 (describing trade secrets at issue). In addition, *AMP* predates Illinois' 1988 adoption of the ITSA—Illinois' version of UTSA—and Illinois courts

---

[1] Unless otherwise noted, capitalized terms are as defined in Waymo's Critique of the FTJI (Dkt. 2171) and Critique of the TJIs and Form (Dkt. 2077).

[2] Question (4): "When an engineer cleanly moves from one employer to another (without any files of any type), how can she be expected to forget the engineering lessons learned in her earlier jobs? Is she really expected to repeat trial and error to re-validate lessons already learned? Should the jury be instructed as per Section 1.8 entitled, '3. General Knowledge and Skill Versus Trade Secrets' in CEB, *Trade Secrets Practice in California (2016)*?" (Dkt. 2168 at 2).

have since affirmed the existence and enforceability of negative trade secrets on multiple occasions. *See e.g. Nilssen v. Motorola, Inc.*, 963 F. Supp. 664, 683 (N.D. Ill. 1997) ("Indeed, Motorola might face liability for misappropriation under ITSA even if it used Nilssen's trade secrets "only to demonstrate what pitfalls to avoid") (citing *Affiliated Hosp. Prod., Inc. v. Baldwin,* 57 Ill. App. 3d 800, 807 (1978)); *see also Comp. Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 696–97 (N.D. Ill. 2004) (similar); *QSRSoft, Inc. v. Rest. Tech., Inc.*, No. 06 C 2734, 2006 WL 2990432, at *9 (N.D. Ill. Oct. 19, 2006) (similar).

**_Home Living._**   Defendants' citation to an Idaho case, *Northwestern Bec-Corp v. Home Living Serv.*, 136 Idaho 835 (2002) is also irrelevant to the Court's fourth question.  *See* 11/14/17 Hr'g Trans. at 58:2-12.  As in *AMP*, no negative trade secrets were at issue in *Home Living*.  Rather, it makes the unremarkable point that an employee may take to a new employer skills she learned at her last job.  *Home Living*, 136 P. 3d 268.  Moreover, the language Defendants cite to originates from the same pre-UTSA case which *AMP* cited to in making similarly irrelevant statements.  *Compare Home Living*, 136 Idaho at 840 (quoting *Fleming Sales Co. v. Bailey*, 611 F. Supp. 507, 514 (N. D. Ill. 1986)) *with AMP* at 1205 (also relying on *Fleming*).

**_Agency Solutions_ and _Argo_.**   Defendants also presented *Argo Group US, Inc. v. Professional Governmental Underwriters, Inc.*, 2013 WL 11327772 (C.D. Cal. Dec. 6, 2013) and *Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001 (E.D. Cal. 2011) in response to the Court's fourth question.  The Court correctly noted that "what [Defendants] highlighted is not so much on point in the *Agency Solutions*" case.  11/14/17 Hr'g Tr. at 59:18-19.  Rather, these cases cite general principles similar to the above such as "under California law, a former employee may use general knowledge, skill, and experience acquired in his or her former employment in competition with a former employer," *Argo* at *2 (citation and quotation marks omitted), and (2) general knowledge, ideas, proprietary ways of doing things, and items which would be obvious are not trade secrets, *Agency*, 819 F. Supp. 2d at 1017.  Here too, neither of these cases involve or even touch on negative trade secrets.

**_Winston._**   Defendants also offered *Winston Research Corp.*, 350 F.2d 134 (9th Cir. 1965) in response to the Court's fourth question.  But here too, *Winston* articulates only the general guidance

that "[e]mployees cannot be denied the right to use their general skill, knowledge, and experience" acquired at a previous job. *Id.* at 144.  Moreover, Defendants conceded that: "I don't think that *Winston* held that negative information is not protectable." 11/14/17 Hr'g Tr. at 61:16-17.  *See also* Dkt. 2180 at 2 ("some 'negative know-how' may be protectable as a trade secret."); *Continuing Education of the Bar – California, Trade Secrets Practice in California* §1.5 at 1-13 (2d ed., 2017) ("The UTSA overrules *Winston Research Corp. v. Minnesota Mining & Mfg. Co.* (9th Cir. 1965) 350 F2d 134, which held that negative information is not protectable.").  If *Winston* did not hold that negative information is not protectable—and, to the extent it did, it has been overruled—it provides no guidance whatsoever on how to properly instruct the jury regarding allowing employees to remain mobile while prohibiting the misappropriation of trade secrets.

## II. DEFENDANTS' SOLE AUTHORITY ON THE NATURE OF MISAPPROPRIATION IS DISTINGUISHABLE.

Defendants offered *FLIR Systems, Inc. v. Parrish*, 174 Cal. App. 4th 1270 (2009) in response to the Court's question: "Is the third party acting as the agent for the acquiring company such that the principal is charged with possession of the files?" 11/14/17 Hr'g Tr. at 22:15-17.  Specifically, Defendants' cite to *Parrish* for the idea that "[m]ere possession of trade secrets by a departing employee is not enough for an injunction." 174 Cal. App. 4th at 1279 (citations omitted). Presumably, Defendants are attempting to argue that Stroz or MoFo's possession of Waymo's files was only "possession" and not "acquisition," and thus that Uber cannot be charged with its agent's "acquisition" of Waymo's files.  This citation is inapposite and the selective quotation does not reflect controlling law.

The above sentence from *Parrish* in turn cites to *Central Valley General Hospital v. Smith*, which does *not* say that "[m]ere possession of trade secrets by a departing employee is not enough for an injunction" as a general matter, but instead that such possession is not enough (1) where the defendant acquired the trade secret by *proper* means, or (2) where there was *no substantial threat* of impending injury:

> The last variant we consider is whether a claim for threatened misappropriation is established when a plaintiff merely shows a defendant is in possession of trade secrets. We conclude that the issuance of an injunction based on a claim of threatened misappropriation requires a greater showing than mere possession by a defendant of

-3-

> trade secrets *where the defendant acquired the trade secret by proper means*. (Civ.Code, § 3426.1, subd. (b)(1) [misappropriation includes acquisition of a trade secret by improper means]; *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, *supra,* 148 F.Supp.2d at p. 1335 [interpreting both California's and Florida's versions of the Uniform Trade Secrets Act to require more than mere possession of a trade secret by a defendant; *injunction will issue only where there is substantial threat of impending injury*].)

162 Cal. App. 4th 501, 528–29 (2008) (emphasis added). *Parrish* has no relevance here. In *Parrish*, an employee downloaded an unusable copy of a database from his work computer to a hard drive to use at home because he was "frustrated about the slow computer network" at his office. 174 Cal. App. 4th at 1278. There is nothing similar here. Obviously, Levandowski and other former Waymo employees had no permission to keep these Waymo materials Waymo in the first place. And then Stroz and MoFo acquired the materials at Uber's direction to try to whitewash that conduct. Moreover, whether there is a substantial threat of impending injury has nothing to do with the Court's inquiry.

### III.     DEFENDANTS' AUTHORITY ON THE SCOPE OF AGENCY IS INAPPOSITE.

Defendants offered only two cases in response to the Court's question about who bears the burden of proving the exception to the general rule that an agent's knowledge is imputed to the principal except where the agent is "subject to a duty to another not to disclose the fact to a principal." 11/14/17 Hr'g Tr. at 24-28 (discussing the Restatement (Third) of Agency § 5.03). Neither case addressed the burden of proof in showing that exception. As the Court noted, *Oswald Mach. & Equip., Inc. v. Yip*, 10 Cal. App. 4th 1238 (1992), *reh'g denied and opinion modified* (Dec. 4, 1992) —"doesn't go to this exception and who has the burden of proof" and "is not on point." 11/14/17 Hr'g Tr. at 26:13-14; 26:21. The Court also described the second case offered by Defendants, *California Viking Sprinkler Co. v. Pac. Indem. Co.*, 213 Cal. App. 2d 844 (Ct. App. 1963), as inapplicable, as it "doesn't come to grips with this exception." 11/14/17 Hr'g Tr. at 27:3-6. Waymo agrees.

In addition to the above, counsel for Defendants seized on and offered *Evanston Bank v. Conticommodity Services, Inc.*, 623 F.Supp. 1014 (N.D. Ill 1985), which was cited in the Restatement handed to the Court, as an example of a case that puts the duty of proving the scope of

agency on the Plaintiffs.  *See* 11/14/17 Hr'g Tr. 41-42.  But Defendants overlooked the distinction the Court made between the two types of duties: an agent's duties to his principal (*i.e.*, the scope of employment) and the agent's duty of confidentiality "to another":

> The Court: "We're talking about, here, two different duties. 'Imputed to the principal if knowledge of the fact is material to the agent's duties to the principal unless the agent' – then it refers to a different duty – 'is subject to a duty to another.' So it's talking about two different duties.  Yes, they've got to prove the first duty.  But who has to prove the second duty or a negative second duty?"

*See* 11/14/17 Hr'g Tr. at 40:5-12.  *Evanston* addresses only the first type of duty (an agent's duty to the principal) not the second type (the duty of confidence to another) and is therefore inapposite.

The Court in *Evanston* stated that "[a]n agent's knowledge is generally imputed to his principal if it is received while he is acting within the scope of his agency and concerns a matter within the scope of his authority." 623 F.Supp. at 1034.  But in so doing, *Evanston* repeats only that imputation does not apply where doing so would require the agent to take an action "beyond the scope" of their duties.  *Id.* at 1034-35.  As Waymo pointed out at the Hearing, there can be no dispute that acquiring and analyzing the Waymo confidential information at issue here is precisely what they were hired to do.  *See* 11/14/17 Hr'g Tr. at 28-36.  *Evanston* does nothing to address the question of who bears the burden of showing the "second duty."  The Reporter's Notes to the Restatement (Third) of Agency § 5.03 that were highlighted in the hearing make this point even clearer:

> Notice of a fact is not imputed to a principal *when to learn the fact would require action by an agent beyond the scope of the agent's duties*. See *Evanston Bank v. Conticommodity Servs., Inc.*, 623 F.Supp. 1014, 1035 (N.D. Ill. 1985) (bank cashier who recorded daily reports of commodities trades had duty to record data in corporate books; no showing duty extended to analysis of information in reports); *Southwest Bank v. Hughes*, 883 S.W.2d 518, 525 (Mo. App. 1994) (issues of fact present as to scope of duty of bank officer who notarized deeds in 2 transactions conducted the same day; nothing in record to show that officer's duties extended beyond ministerial recording of information contained on face of records). The scope of an agent's duties limits imputation in *Kruse, Inc. v. United States*, 213 F.Supp.2d 939, 942 (N.D. Ind. 2002) (although vice president for operations of automobile-auction business may have been aware of requirement that business file informational returns concerning large cash transactions, "it does not follow perforce that the … corporation would be imputed with that knowledge"; vice-president had no accounting or tax functions, was in charge of purchasing and maintaining property, and was only responsible for carrying out instructions given by corporation's

      ultimate decisionmakers). See also *Sulik v. Central Valley Farms, Inc.*, 521 P.2d 144, 146 (Idaho 1974) (question for jury whether employee-tenant who received notice that only temporary repairs had been made to defective utility pole acted as agent for farm owner).

Restatement (Third) of Agency § 5.03, Reporter's Notes (emphasis added).

      The distinction above highlights a further inconsistency in Defendants' argument. The Restatement section they cite refers only to the imputation of *knowledge*, not the imputation of *action*. To explain, Defendants allege no contractual duty on the part of Stroz or MoFo not to: (1) acquire or (2) tell Uber/Otto that they had acquired Waymo confidential files—instead, they allege only that Stroz and MoFo were not permitted to share the content of those files. As explained at the Hearing, the evidence belies even this contention. *See* Hr'g Tr. at 28-36. But in any event, withholding the specific content of the files does not matter for vicarious liability because a principal cannot command an agent to commit an intentional tort then disclaim liability or turn a blind eye to the same. *See Extreme Reach, Inc. v. Spotgenie Partners, LLC*, 2013 WL 12081182, at *7 (C.D. Cal. Nov. 22, 2013) ("SpotGenie may be liable for the Sales Managers' misappropriation of trade secrets under the doctrine of respondent superior . . . . California and federal courts have allowed vicarious liability claims under the UTSA."); Restatement (Third) Of Agency § 5.03 (2006), reporter notes, comment b ("Imputation reduces incentives that agents and principals may otherwise have to ignore or turn a blind eye to facts that the principal would prefer not to know."); *In re ChinaCast Educ. Corp. Sec. Litig.,* 809 F.3d 471, 478–79 (9th Cir. 2015) (holding that principal corporation and board's refusal to review audit describing agent's misconduct despite their receipt of the audit constituted willful ignorance and thus warranted imputation of agents' scienter to the principal); *Language Line Servs., Inc. v. Language Servs. Assocs., LLC*, 2010 WL 2764714, at *3-4 (N.D. Cal. July 13, 2010) (granting a preliminary injunction after imputing trade secret misappropriation from employees to employer where employees "acted within the scope of their employment, since an act of this nature was generally foreseeable as part of their duties" despite the fact that "Defendant['s] executive and management team['s claim that they] did not know of the misappropriation" because "[u]nder the doctrine of respondeat superior, an innocent employer may be liable for the torts its employee commits while acting within the scope of his employment."). *See also* Waymo's Memo

on Imputation, Dkt. 893 at 6-8.  This is not the law.

DATED:  November 17, 2017                QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                         By /s/ Charles K. Verhoeven
                                            Charles K. Verhoeven
                                            Attorneys for WAYMO LLC