# Exhibit 3

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3               SAN FRANCISCO DIVISION
 4   _____
 5   WAYMO LLC,                            )
 6                                         )
               Plaintiff,                  )
 7                                         )
       vs.                                 )  Case No.
 8                                         )  17-cv-00939-WHA
     UBER TECHNOLOGIES, INC.;              )
 9   OTTOMOTTO, LLC; OTTO TRUCKING LLC,    )
                                           )
10            Defendants.                  )
11   _____)
12
13       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
14
15              VIDEOTAPED DEPOSITION OF
16              LAMBERTUS HESSELINK, Ph.D.
17               San Francisco, California
18             Tuesday, September 26, 2017
19                       Volume I
20
21   Reported by:
22   MARY J. GOFF
23   CSR No. 13427
     Job No. 2714543
24
25   PAGES 1 - 295
```

Page 1

```
 1    ██████████████████████████████████████     ██████
 2    ██████████████████████████████████████     ██████
 3    ████████████████████████████████              ██████
 4             ██████████████████████████████████     ██████
 5             ████████████████████████████████             02:48:05
 6              MR. NEUKOM:  Objection to form.            02:48:11
 7       A     I have --                                    02:48:12
 8              MR. NEUKOM:  Objection to form.            02:48:12
 9       A     -- I have no knowledge of that.             02:48:13
10       Q     (BY MR. JACOBS) The -- when you said it's    02:48:15
11    an incredible -- I think your words were it's an     02:48:17
12    extraordinary challenge or an incredible challenge.  02:48:18
13    What -- what exactly did you mean by that?  What's   02:48:21
14    so hard about this problem?                          02:48:25
15       A     In some form the way I think about it is    02:48:28
16    you kind of have to figure out what goes on in the   02:48:31
17    human mind.  You have got sensory information.       02:48:34
18              You have learned -- I mean, a toddler      02:48:38
19    cannot drive a car.  So you have learned how you     02:48:41
20    actually maneuver a vehicle after you have taken     02:48:44
21    lessons in an environment where you may have some    02:48:48
22    inclination as to what happens, but you never really 02:48:51
23    know what happens.                                   02:48:55
24              It could be an emergency vehicle going in  02:48:56
25    your direction while you're going in one direction   02:48:58
```

Veritext Legal Solutions
866 299-5127

```
 1   north.  They come south and they're passing another          02:49:01
 2   car.                                                          02:49:01
 3           THE COURT REPORTER:  What's -- Going in               02:49:03
 4   one direction?  Repeat.                                       02:49:03
 5       A   I'm sorry?                                            02:49:04
 6       Q   (BY MR. JACOBS) It could be an emergency              02:49:06
 7   vehicle going in your direction --                            02:49:08
 8       A   And --                                                02:49:11
 9       Q   -- so you're going --                                 02:49:11
10       A   -- yeah, and you're going in the south                02:49:12
11   direction in the same lane.                                   02:49:14
12           There are a number of scenarios that you              02:49:15
13   cannot predict.  Yet, a human is capable somehow of           02:49:19
14   dealing with that.                                            02:49:24
15           And as far as I know, nobody knows how the            02:49:26
16   brain works precisely.  There's lots of money and             02:49:30
17   time spent into it.  And nobody really knows what             02:49:32
18   happens when I get a signature, either orally,                02:49:36
19   acoustics, or an image.  And maybe there is an                02:49:40
20   acceleration, a deceleration.  There are other                02:49:47
21   inputs into my system.                                        02:49:49
22           And I make certain decisions.  All of that            02:49:51
23   in some form or another.  And on top of it you have           02:49:54
24   to essentially predict:  What is the other person             02:49:57
25   going to do?  So assume that you have a --                    02:50:01
```

Veritext Legal Solutions
866 299-5127

```
 1          THE COURT REPORTER:  Please slow down.           02:50:01
 2     A    And on top of that you would have to             02:50:02
 3   predict what the other is going to do.                  02:50:03
 4   ███████████████████████████████████████████             ███████
     ███████████████████████████████████████████             ███████
     ███████████████████████████████████████████             ███████
     ███████████████████████████████████████████             ███████
     ███████████████████████████████████████████             ███████
     ███████████████████████████████████████████             ███████
     ███████████████████████████████████████████             ███████
     ███████████████████████████████████████████             ███████
     ███████████████████████████████████████████             ███████
     ███████████████████                                     02:50:34
14     Q    So you said -- you said "Uber," but you          02:50:37
15   mean Google, right?                                     02:50:38
16     A    Oh, sorry.  Google, yeah.  That was a            02:50:40
17   mistake.  And so -- so what -- what you see there       02:50:43
18   is -- is that the software is only as good as the       02:50:45
19   algorithms that the developers put into it.             02:50:50
20          And if the developers don't understand           02:50:52
21   human behavior of all of the test cases, it's very      02:50:55
22   difficult to build a system that incorporates that      02:50:58
23   knowledge.                                              02:51:01
24          And the only way you can do that, which is       02:51:01
25   the way I think that Waymo is doing it, is you just     02:51:04
```

Page 179

| | | |
|---|---|---|
| 1 | drive these vehicles millions of miles so that you | 02:51:06 |
| 2 | have lots of incidents that you have to work on to | 02:51:09 |
| 3 | fix them.  And even then you will not be perfect. | 02:51:12 |
| 4 |     Q    The -- what you were just describing for | 02:51:17 |
| 5 | Google or Waymo would also apply to Uber, correct, | 02:51:19 |
| 6 | in terms of when -- when Uber can actually deploy | 02:51:22 |
| 7 | fully autonomous vehicles? | 02:51:26 |
| 8 |         MR. NEUKOM:  Objection to form. | 02:51:28 |
| 9 |     A    Yes.  You would definitely have to test | 02:51:28 |
| 10 | out your vehicles. | 02:51:34 |
| 11 |     Q    (BY MR. JACOBS) And in the case of Uber or | 02:51:36 |
| 12 | perhaps for Waymo, the idea that we might use a | 02:51:38 |
| 13 | ride-hailing service that would bring to us a fully | 02:51:41 |
| 14 | autonomous vehicle without a safety driver, what | 02:51:44 |
| 15 | does that challenge look like to you in terms of | 02:51:47 |
| 16 | what's ahead for those -- for those companies trying | 02:51:50 |
| 17 | to develop that capability? | 02:51:53 |
| 18 |         MR. NEUKOM:  Objection to form. | 02:51:55 |
| 19 |     A    You're asking me that now independent of | 02:51:58 |
| 20 | what I have done in this document, I presume, right? | 02:52:01 |
| 21 |     Q    (BY MR. JACOBS) I don't think you asked | 02:52:03 |
| 22 | that question in your document, but you -- this is | 02:52:05 |
| 23 | about -- this document is about the use of LiDAR and | 02:52:07 |
| 24 | autonomous vehicles, so that's why I'm asking you | 02:52:10 |
| 25 | these questions. | 02:52:11 |

1    I, MARY J. GOFF, CSR No. 13427, Certified
2    Shorthand Reporter of the State of California,
3    certify;
4        That the foregoing proceedings were taken
     before me at the time and place herein set forth, at
5    which time the witness declared under penalty of
6    perjury; that the testimony of the witness and all
7    objections made at the time of the examination were
8    recorded stenographically by me and were thereafter
     transcribed under my direction and supervision; that
9    the foregoing is a full, true, and correct
10   transcript of my shorthand notes so taken and of the
11   testimony so given;
         That before completion of the deposition,
12   review of the transcript (  ) was (XX) was not
13   requested:   (  ) that the witness has failed or
14   refused to approve the transcript.
15       I further certify that I am not financially
     interested in the action, and I am not a relative or
16   employee of any attorney of the parties, nor of any
17   of the parties.
18       I declare under penalty of perjury under the
19   laws of California that the foregoing is true and
20   correct, dated this 27th day of September 2017.
21
22
23
24   _____
25       MARY J. GOFF, CSR No. 13427

Page 295