1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzalez@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California 94105-2482
    Tel: 415.268.7000 / Fax: 415.268.7522
5

6   KAREN L. DUNN (*Pro Hac Vice*)
    kdunn@bsfllp.com
7   HAMISH P.M. HUME (*Pro Hac Vice*)
    hhume@bsfllp.com
8   BOIES SCHILLER FLEXNER LLP
    1401 New York Avenue, N.W.
9   Washington DC 20005
    Tel: 202.237.2727 / Fax: 202.237.6131

10  WILLIAM CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
11  SHAWN RABIN (*Pro Hac Vice*)
    srabin@SusmanGodfrey.com
12  SUSMAN GODFREY LLP
    1301 Avenue of the Americas, 32nd Floor
13  New York, NY 10019-6023
    Tel: 212.336.8330 / Fax: 212.336.8340
14

15  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
16  and OTTOMOTTO LLC

17                  UNITED STATES DISTRICT COURT

18                 NORTHERN DISTRICT OF CALIFORNIA

19                    SAN FRANCISCO DIVISION

20  WAYMO LLC,                          Case No.      3:17-cv-00939-WHA

21              Plaintiff,              **DEFENDANTS UBER
                                        TECHNOLOGIES, INC.'S AND
22         v.                           OTTOMOTTO LLC'S OPPOSITION TO
                                        WAYMO'S MOTION *IN LIMINE* TO
23  UBER TECHNOLOGIES, INC.,            PRECLUDE RELIANCE ON THE
    OTTOMOTTO LLC; OTTO TRUCKING        STROZ FRIEDBERG DUE DILIGENCE
24  LLC,                                INVESTIGATION**

25              Defendants.

26                                      Trial Date: December 4, 2017

27

28

1   After receiving a continuance and extensive discovery into the due diligence review by

2   Stroz Friedberg ("Stroz"), Waymo now wants to be the only party that can say anything about it

3   at trial. That is absurd. Waymo has the Stroz report on its exhibit list and no doubt intends to rely

4   on it at trial. (Dkt. 2061-24 at 5 (TX 5245).) Yet Waymo claims it "would be severely prejudiced

5   should Uber's attorneys be permitted to … rely on the Stroz Report." (Mot. at 1.) Waymo also

6   has on its exhibit list Stroz's forensic summary of Levandowski's devices, which recounts they

7   were put in Stroz's evidence vault. (Dkt. 2061-24 at 1 (TX 5101).) But Waymo claims it "would

8   be severely prejudiced" by "Uber's assertions that Stroz made sure to place Waymo's confidential

9   information in its 'vault.'" (Mot. at 1.) To put it starkly: Waymo wants a monopoly on arguments

10   about Stroz. Waymo cannot point to any prejudice that might justify such a profoundly unfair

11   advantage.

12   Waymo's motion is based on two arguments, neither of which has merit. First, Waymo

13   argues that Waymo, and only Waymo, can rely on Stroz evidence at trial because there is no non-

14   privileged basis for Uber to explain why and how it used the Stroz due diligence review and

15   report. That is simply incorrect. At trial, Uber can and will rely on much of the same evidence as

16   Waymo, and will offer testimony and documentary evidence about the Stroz report and the Stroz

17   process—including the scope of the due diligence review and the sequestration of devices—that

18   the Court has already held to be non-privileged. It will do so to show, among other things, that the

19   Stroz due diligence was undertaken to prevent information that might be confidential to Google

20   from coming to Uber, and the actions taken during that process consistent with that objective.

21   Second, Waymo now oddly contends that Uber is relying on an advice-of-counsel defense

22   that can only be advanced if Uber waives attorney-client privilege. That too is incorrect. Uber has

23   never relied on any such defense, and no waiver of the privilege is required or implied. To the

24   contrary, Uber will rely solely on evidence about the Stroz due diligence that the Court held to be

25   non-privileged. Uber need not and will not rely on any privileged communications to establish

26   these facts at trial. There is simply no basis for precluding Uber from introducing non-privileged

27   evidence to defend itself against Waymo's Stroz arguments. To grant Waymo's motion would

28   deprive Uber of the opportunity to fully and legitimately defend itself at trial. The motion should

be denied.

## I.     UBER WILL RELY ON NON-PRIVILEGED EVIDENCE TO REBUT WAYMO'S BASELESS CONSPIRACY THEORIES ABOUT THE STROZ DUE DILIGENCE

It is a cardinal rule of attorney-client privilege that a "fact is one thing and a communication concerning that fact is an entirely different thing." (*Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981).)  Indeed, for that reason, it is routine for facts to be introduced into evidence where privileged communications about those same facts also exist but have not been disclosed in discovery. Here, Waymo is trying to preclude the jury from hearing certain *facts* that it does not like—including documents and testimony showing why Uber undertook the Stroz process, the actions Stroz took, and the findings Stroz made, as laid out in the Stroz report and in the mountain of discovery Waymo has regarding the Stroz due diligence—simply because Uber did not waive privilege over communications that occurred with lawyers that may have included those facts. Waymo's arguments for why that should be done, however, are baseless.

Waymo' principal complaint is that "Uber's non-lawyer witnesses have testified that they never even saw the Stroz Report and only received information concerning Stroz's investigation through Uber's counsel." (Mot. at 1.) But Waymo is at a loss to explain how that has anything to do with the facts both in the Stroz report and in non-privileged testimony about the Stroz process, such as that Uber undertook the Stroz due diligence as a measure to protect against Google proprietary information from reaching Uber, that Stroz sequestered Levandowski's devices in its evidence vault, or even that "[w]hile Levandowski retained, and in some cases, accessed Google confidential information after his departure from Google, Stroz Friedberg discovered no evidence indicating that he transferred any of that data to Ottomotto or other third parties." (Dkt. 1603-5 (Stroz Report) at 17.)

In fact, in discovery, Uber and Stroz witnesses testified at length to, and there is ample non-privileged documentary evidence about, the very topics relating to the Stroz due diligence review on which Uber will rely at trial, such as its purpose (*e.g.*, Ex. 1 (Suhr Tr.) at 16:8–17:4; Ex. 6 (Padilla Tr.) at 15:17–16:3; Ex. 7 (Poetzscher Tr.) at 491:9–492:8; Ex. 3 (Friedberg Tr.) at 95:21–96:16; Dkt. 1603-5 at 3), its findings (*e.g.*, Dkt. 1603-5; Ex. 4 (Fulginiti Tr.) at 287:20–

24), and actions taken during the process—including Stroz's sequestration of devices (*e.g.*, Ex. 1 (Suhr Tr.) at 67:10–68:14; Ex. 3 (Friedberg Tr.) at 270:10–272:3.). All of these witnesses are on *Waymo's* witness list for trial. (Ex. 8 (Waymo's Third Amended Witness List) at 4–5, 7–8.) The fact that Uber's lawyers did not waive privilege in response to questions at deposition about their communications or mental impressions regarding facts relating to the Stroz due diligence is irrelevant. Those facts themselves remain non-privileged and are evidenced by documents and testimony the jury can and should hear in evaluating Waymo's claims and arguments about Stroz.

Similarly, Waymo claims that Uber can offer no non-privileged evidence "to support its assertion that it relied on Stroz to put everything in a 'vault,' or to make sure nothing came over to Uber." (Mot. at 5.) This is simply incorrect: there is considerable non-privileged evidence about these matters. The Stroz report and its exhibits are themselves (under this Court's rulings) non-privileged evidence, and indeed Waymo has them on its trial exhibit list (Dkt. 2061-24 at 1, 5). Both Uber and Stroz witnesses—all of whom are on Waymo's trial witness list—have testified extensively about the facts those documents contain, including the facts that Stroz has securely retained all but one of Levandowski's devices in its evidence vault since March 2016 and that Stroz found no evidence that Levandowski transferred Google confidential or proprietary information to Ottomotto or any other third party. (*E.g.*, Ex. 1 (Suhr Tr.) at 16:8–17:4, 67:10–68:14; Ex. 6 (Padilla Tr.) at 15:17–16:3; Ex. 7 (Poetzscher Tr.) at 491:9–492:8; Ex. 3 (Friedberg Tr.) at 95:21–96:16, 270:10–272:3; Ex. 4 (Fulginiti Tr.) at 287:20–24; Dkt. 1603-5 at 3, 17).) And Waymo claims it will call as witnesses at least three (possibly four) Stroz investigators, who have percipient knowledge of what Stroz did and found—knowledge that they conveyed to Morrison & Foerster and Uber, not the other way around. (Ex. 8 (Waymo's Third Amended Witness List) at 4, 5, 7.) Thus, Waymo itself is relying on the fact that there is non-privileged testimony on these topics.

Waymo selectively quotes deposition testimony to create a false impression that Uber intends to have its witnesses testify to facts they learned only through counsel, but that is not true. While highlighting portions where deponents stated that some of their knowledge about the Stroz due diligence review came through lawyers, Waymo ignores testimony (and documentary

1    evidence) from those same deponents describing information they learned from Stroz directly.

2    (Mot. at 2-3.) For example, Waymo claims that Cameron Poetzscher "confirmed that the only

3    information [he] received about the Stroz investigation was provided to [him] by Uber's

4    attorneys," citing Poetzscher's deposition. (Mot. at 2.) Yet later in that same deposition, Waymo

5    introduced as exhibits non-privileged email chains involving both Stroz investigators and

6    Poetzscher and referring to a non-privileged call that Poetzscher participated in with Stroz on

7    April 11, 2016. (Ex. 7 (Poetzscher Tr.) at 580:1–585:15.) Indeed, one of Waymo's citations cuts

8    off immediately before Poetzscher discusses that call, during which Uber executives questioned

9    Stroz directly about its investigation into Levandowski's destruction of five disks that allegedly

10   had Google information. (Mot. at 2 (citing Poetzscher Tr. at 493:23–494:19); Ex. 7 (Poetzscher

11   Tr.) at 494:20–495:7 (recounting call about the five disks that may have included Stroz); *id.* at

12   582:16–583:3 (confirming that the call included Stroz).) Poetzscher later explained that the "gist"

13   of the call he participated in with Stroz was that Uber was trying to understand "[w]hat Stoz had

14   done to get comfortable that Anthony had destroyed the disks" (Ex. 7 (Poetzscher Tr.) at 584:17-

15   25), contradicting Waymo's claim that "Uber's non-lawyer witnesses involved in the acquisition

16   lack any non-privileged knowledge about the findings of the Stroz due diligence investigation,

17   and cannot provide testimony at trial concerning Uber's reliance on the investigation." (Mot. at

18   2.)

19          Uber will prove the facts about the Stroz due diligence with this and other non-privileged

20   testimony from Poetzscher, who can speak to Uber's reasons for engaging Stroz to perform due

21   diligence, and the testimony of Eric Friedberg, who has personal knowledge of what Stroz did

22   and found, along with non-privileged documentary evidence and testimony of other witnesses.

23   **II.     UBER IS NOT RELYING ON AN ADVICE OF COUNSEL DEFENSE**

24          Waymo also tries to muddy the waters by creating and then addressing strawman

25   arguments that Uber has not made. (Mot. at 4–5.) Lacking any basis to argue Uber is wielding the

26   privilege as both a sword and a shield, Waymo invents for Uber an advice-of-counsel defense that

27   Uber has never asserted. (Mot. at 1). To the contrary, Uber has appropriately invoked privilege as

28   to the legal advice Uber received during the Stroz due diligence and the manner in which Uber

relied on that advice. Waymo also willfully confuses reliance on privileged *information* to make a decision (close the Otto transaction) with reliance on non-privileged *actions* to produce a result (the investigative and prophylactic steps Stroz took, such as quarantining Levandowski's devices). As Waymo would have it, because Uber has not waived privilege as to its reliance on advice its lawyers gave based on the due diligence, Uber should be precluded from introducing any non-privileged evidence or argument regarding Stroz, including that Uber relied on the due diligence as an additional measure to protect against Google confidential information reaching Uber. None of Waymo's cited authority support this proposition. It simply has no basis in law.

## III.  WAYMO IS NOT PREJUDICED BY UBER'S RELIANCE ON NON-PRIVILEGED FACTS THAT WAYMO EXPLORED IN DISCOVERY

Waymo recycles its tired sword-and-shield argument, making much of the fact that Uber "strictly adhered" to the Court's ruling that the common interest privilege attached after April 11, 2016, and a thus Waymo has not been able to inquire into privileged communications with Stroz after that time. (Mot. at 4-6; Dkt. 2040 at 3; *see* 10/23 Corley Hr'g Tr. 46:19-25 ("I ruled that following April 11, that they were on the same side the ledger, so to speak. And, therefore, their communications between each other, between Ottomotto and Uber and their counsel and all that were privileged.").) Waymo does not show any prejudice, however, and cannot: *all* of the information gathered by Stroz was gathered before April 11, and is therefore available to Waymo. Waymo also has *all* of Stroz's conclusions because the Court held that the Stroz report and all of its exhibits were not privileged (Dkt. 566, 685), and Waymo has taken substantial deposition testimony about those conclusions. Unable to identify any genuine source of prejudice, Waymo instead presents the Court with falsehoods, for example claiming that the decision to retain Levandowski's devices was made after April 11. As Waymo well knows, Stroz took possession of Levandowski's devices well before April 11, and Stroz witnesses testified about the decision to retain them. (*E.g.*, Ex. 4 (Fulginiti Tr.) at 66:23–67:5, 69:5–16; Ex. 5 (Maugeri Tr.) at 177:3–178:1). Once again, Uber has non-privileged evidence of all of the facts on which it intends to rely, and simply does not seek use any privileged communications in order to mount its defense.

Waymo has had full discovery into the facts it now seeks to exclude, rendering exclusion

inappropriate. As one example, Waymo is desperate to keep the jury from hearing that Stroz quarantined all of Levandowski's devices except his iPhone. (Mot. at 1; *cf.* Dkt. 1603-5 (Stroz Report) at 12 n.9 (noting that the iPhone only contained data from after Levandowski left Google).) But Waymo fails to tell the Court that numerous deponents testified about the *fact* that Stroz collected those devices in March 2016 and secured them in its evidence vault—to this day. (*E.g.*, Ex. 1 (Suhr Tr.) at 67:10–68:14; Ex. 3 (Friedberg Tr.) at 270:10–272:3; Ex. 4 (Fulginiti Tr.) at 76:21–78:22; Ex. 2 (Chew Tr.) at 224:13–225:18; Ex. 5 (Maugeri Tr.) at 181:16–182:16.) This *fact* is also reflected in documents on Waymo's trial exhibit list, including the Stroz report itself. Uber's privileged communications with counsel, and privileged communications among the joint defense group after April 11, 2016, have no bearing on that *fact*, or on Waymo's ability to argue its probative value to the jury.

Waymo cites no authority that Uber should be precluded from relying on non-privileged facts about the Stroz due diligence simply because some information remains privileged based on the Court's orders. There is none. As detailed in *Upjohn*, the attorney-client privilege "does not protect disclosure of the underlying facts by those who communicated with the attorney." 449 U.S. at 395. By that same token, a party's refusal to waive privilege cannot be construed as a waiver of that party's ability to establish facts that have been discussed in a privileged setting. (*See, e.g.*, *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 812 (E.D. Cal. 2006).) Uber is not relying on privileged communications or the advice of counsel to defend itself against Waymo's conspiracy theories; rather, it will rely on the facts surrounding and surfaced by the Stroz due diligence review, for which Waymo has now received all of the inputs and all of the outputs, to help show the steps that Uber took to prevent Google information from reaching Uber.

## IV.    CONCLUSION

Waymo's motion is a nothing more than an attempt to gain an unfair advantage at trial— the exclusive right to make arguments regarding the Stroz due diligence review. Waymo has had full discovery into the aspects of the Stroz due diligence that the Court has found non-privileged, and Uber will rely only on those aspects of the diligence at trial. The motion should be denied.

1    Dated: November 20, 2017        BOIES SCHILLER FLEXNER LLP

2

3                            By: _____ */s/ Karen L. Dunn*

4                               Karen L. Dunn

5                             Attorneys for Defendants
                              UBER TECHNOLOGIES, INC.

6                             and OTTOMOTTO LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28