IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WAYMO LLC,

    Plaintiff,

  v.

UBER TECHNOLOGIES, INC.,
and OTTOMOTTO LLC,

    Defendants.

No. C 17-00939 WHA

**REVISED TENTATIVE
JURY INSTRUCTIONS
ON TRADE SECRET
MISAPPROPRIATION**

    Below please find the revised tentative jury instructions and special verdict form on the misappropriation claims, after consideration of all arguments and submissions to date. By **NOON ON NOVEMBER 27**, each side may submit a critique limited to their most important objections, limited to five pages, in the format previously prescribed for critiques, quoting the entire paragraphs of authorities on point and highlighting the key sentences. A further opportunity will later be given to make other objections. The Court reserves the authority to revise. Counsel and witnesses shall not refer to these revised tentative jury instructions before the jury. Please note the way in which the contingent issue of reasonable royalty is now treated, the Court being of the view that the instructions needed for the reasonable royalty issue are prolix and overwhelm the rest of the instructions.

I.

    A "trade secret" involves information and can potentially cover any form of financial, business, scientific, technical, economic, or engineering information, including patterns, plans,

compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing.  Whether or not any particular information qualifies as a trade secret depends upon factors that I will describe in a moment but, by way of introduction, I want you to understand that a trade secret concerns information.

II.

This trial concerns Waymo Alleged Trade Secrets Numbers 2, 7, 9, 13, 14, 25, 90, and 111, which are defined in TX _____.  Waymo contends that defendants Uber Technologies, Inc., and Ottomotto LLC misappropriated these Alleged Trade Secrets.

III.

To succeed on its claim that a defendant misappropriated any Alleged Trade Secret, Waymo must prove all of the following:

1. That the Alleged Trade Secret qualified as an enforcible trade secret at the time it was allegedly misappropriated;

2. That the defendant improperly acquired, then used or disclosed the Alleged Trade Secret;

3. That the defendant was thereby unjustly enriched; and

4. That such use or disclosure was a substantial factor in unjustly enriching the defendant.

No defendant may be held liable as to any Alleged Trade Secret unless all of these elements of proof are satisfied as to that defendant and as to that Alleged Trade Secret.  I will now explain these elements of proof in more detail.

IV.

Turning to the first element of proof for a misappropriation claim, Waymo must prove that each Alleged Trade Secret qualified as an enforcible trade secret at the time of alleged misappropriation.  To do so, Waymo must prove all of the following:

1. That Waymo owned the Alleged Trade Secret;

2

      2.      That the Alleged Trade Secret was secret at that time;

      3.      That the Alleged Trade Secret had actual or potential independent economic value at that time because it was secret; and

      4.      That Waymo made reasonable efforts up to the alleged misappropriation to keep secret the Alleged Trade Secret.

I will now explain these factors in more detail.

## V.

A moment ago I told you that a "trade secret" concerns information. By contrast, trade secrets do not cover professional skills, talents, abilities, or information generally known to others who can obtain economic value from its disclosure or use. Nor do trade secrets cover skills, talents, or abilities developed by employees in their employment even though they may be developed at the expense of the employer. Engineers will, for example, through trial and error and application of their professional skills on the job, naturally sharpen their skills and accumulate practical lessons that supplement their skills, talents, abilities, and information generally known in the field. When they move to new jobs with new employers, they cannot be expected to erase such natural on-the-job practical lessons from memory and will remain free under the law to use them, even though learned while on the payroll of the prior employer. Those lessons must be deemed to become part of their professional skills, talents, abilities, or information generally known in the field. Engineers cannot, however, go further in new jobs with new employers to use or disclose to others specific engineering solutions or information developed by their prior employers, even those developed or discovered by them, where such specific solutions or information qualify as a trade secret. Nor may they memorize or photocopy or download and take with them their prior employer's trade secrets. It is for the jury to decide in each case whether engineers have used or disclosed trade secret information versus utilized their professional skills, talents, abilities, or information generally known in the field.

## VI.

Information that is generally known in the field or is readily ascertainable by proper means at the time of the alleged misappropriation cannot qualify as a trade secret. There is no

3

fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, reverse-engineered, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials or if it could be readily determined by those skilled in the art. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is readily ascertainable by proper means.

## VII.

The results of extended research, which proves that a certain process will *not* work, can qualify as an enforcible trade secret if all prerequisites for a trade secret are met. This type of information is sometimes called "negative know-how." By the same token, depending on the facts and circumstances, negative know-how might *not*, in a given case, qualify as an enforcible trade secret because, for example, it remains one of those practical on-the-job insights that augment the engineer's general skills and know-how, or can be found in the literature. It is for the jury, in each case, to determine whether negative know-how qualifies or not as a trade secret, applying the same test as for other know-how.

## VIII.

Everyone has the right to use or to disclose technology and information that they independently develop on their own without the benefit of someone else's trade secrets. Therefore, even if one company has a protectable trade secret in certain technology, other companies are free to independently develop and use similar technology on their own. They cannot, however, misappropriate and use someone else's trade secrets in doing so.

## IX.

The secrecy required to prove that something is a trade secret does not have to be absolute secrecy in the sense that no one else in the world possessed the information. It may have been disclosed to employees involved in the owner's use of the trade secret as long as they were instructed to keep the information secret. It may also have been disclosed to nonemployees

4

if they were obligated to keep it secret.  However, it must not have been generally known to the public or to others who could have obtained value from knowing it.

X.

A trade secret has independent economic value if it would have given the owner an actual or potential business advantage over others who did not know the information and who could have obtained economic value from its disclosure or use.  In determining whether the information had actual or potential independent economic value because it was secret, you may consider the following:

1. The extent to which the owner obtained or could have obtained economic value from the information in keeping it secret;

2. The extent to which others could have obtained economic value from the information if it were not secret;

3. The amount of time, money, or labor that the owner expended in developing the information; and

4. The amount of time, money, or labor that defendant saved by using the information.

The presence or absence of any one or more of these factors is not necessarily determinative.

XI.

Reasonable efforts to keep the information secret are the efforts that would have been made by a reasonable business in the same situation with the same knowledge and resources as the alleged owner, exercising due care to protect important information of the same kind. This requirement applies separately to each item that claimed to be a trade secret.

In determining whether or not the owner made reasonable efforts to keep the information secret, the following factors should be considered, among any other factors pertinent to the issue:

1. Whether products, hardware, documents or computer files containing the information were marked with confidentiality warnings;

2. Whether the owner instructed its employees to treat the information as confidential;

3. Whether the owner unreasonably over-classified information as confidential, even publicly-known information, such that employees might be unsure of what genuinely needed confidentiality;

4. Whether the owner restricted access to the information to persons who had a business reason to know the information;

5. Whether the owner kept the information in a restricted or secured area;

6. Whether the owner required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

7. Whether the owner took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;

8. The extent to which any general measures taken by the owner would prevent the unauthorized disclosure of the information; and

9. Whether there were other reasonable measures available to the owner that it did not take.

The presence or absence of any one or more of these factors is not necessarily determinative.

XII.

Turning to the second element of proof for a misappropriation claim, Waymo must prove that the Alleged Trade Secret was used or disclosed by a defendant without Waymo's consent and that said defendant either acquired knowledge of the trade secret by improper means or at the time of use, knew or had reason to know that its knowledge of the trade secret came through persons who had acquired it by improper means.

6

XIII.

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, misrepresentation, and breach or inducing a breach of a duty to maintain secrecy. It is not improper, however, to acquire a trade secret or knowledge of the trade secret by any of the following:

1. Independent efforts to invent or discover the information;

2. Reverse engineering; that is, examining or testing a product to determine how it works by a person who has a right to possess the product;

3. Observing the information in public use or on public display; or

4. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly-available sources.

XIV.

You have heard evidence that the law firm of Morrison & Foerster and/or the forensic analytics firm of Stroz Friedberg LLC received materials from Waymo in connection with Uber's acquisition of Ottomotto LLC that Waymo claims included Alleged Trade Secrets. Under the law, if Waymo proves that one or both of these firms improperly acquired an enforcible trade secret as an agent of a defendant, then you must treat that trade secret as having been improperly acquired by that defendant unless the defense proves that such firm was under an obligation not to disclose the trade secret to that defendant.

XV.

Misappropriation by use requires actual use. It is not enough to speculate that employees of the accused would inevitably have used the claimed trade secret in their work.

XVI.

You have heard testimony that employees of defendants once worked for Google and/or Waymo. The mere fact that employees left Google or Waymo to work for a defendant does not mean that they used Waymo's trade secrets after they left Google or Waymo. Employees have the right to change employers and to apply their talents and skills in their new jobs. Doing so is

lawful as long as they don't reveal or use information qualifying as a trade secret of a prior employer.

### XVII.

Turning to the third and fourth elements of proof of a misappropriation claim, unjust enrichment occurs whenever a defendant reaps an undeserved benefit such as accelerating its own development timeline and/or saving on development costs by taking improper advantage of someone else's trade secrets. Unjust enrichment does not occur, however, where the benefit would have been realized anyway. A substantial factor in causing unjust enrichment means a factor that a reasonable person would consider to have contributed to the unjust enrichment. It must be more than a remote or trivial factor. It does not have to be the only cause. Conduct is not a substantial factor in causing unjust enrichment if the same enrichment would have occurred without that conduct.

### XVIII.

If you find any defendant misappropriated one or more Alleged Trade Secrets, then you must decide whether Waymo has proven a dollar value for the unjust enrichment by that defendant.

### XIX.

If Waymo proves that any defendant misappropriated one or more Alleged Trade Secrets, then Waymo is entitled to recover damages if the misappropriation was a substantial factor in causing that defendant to be unjustly enriched.

To decide the amount of any unjust enrichment to a defendant, first determine the value of the defendant's actual benefit that would not have been achieved except for its misappropriation. Then subtract from that amount the defendant's reasonable expenses, including the value of its own independent research and development.

Your award must be based upon evidence, and not upon speculation, guesswork, or conjecture.

If you find, as to any Alleged Trade Secret, that it was misappropriated but that Waymo has failed to prove a non-speculative dollar amount of unjust enrichment, meaning on Special

Verdict Question Nos. 2 and 6 you answer "Yes" and "Zero," then we may have a short supplemental instruction and supplemental closing argument to assist you in arriving at an alternative form of award.

### XX.

If you find any defendant misappropriated one or more Alleged Trade Secrets, then you must decide whether that defendant's conduct was willful and malicious. If you so find, then you must determine what amount of exemplary damages Waymo should recover from that defendant. Exemplary damages are intended to punish the defendant and to deter misappropriation of trade secrets. You may determine an amount of exemplary damages up to two times the amount awarded as the unjust enrichment.

### XXI.

A defendant's conduct was "willful" if defendant acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith. A defendant's conduct was "malicious" if defendant acted with an intent to cause injury, or if defendant's conduct was despicable and was done with a willful and knowing disregard for the rights of others. Conduct is despicable when it is so vile or wretched that it would be looked down upon and despised by ordinary decent people. A defendant acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

**IT IS SO ORDERED.**

Dated: November 21, 2017.

DRAFT
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYMO LLC, | No. C 17-00939 WHA |
| Plaintiff, | |
| v. | |
| UBER TECHNOLOGIES, INC., and OTTOMOTTO LLC, | **SPECIAL VERDICT FORM** |
| Defendants. | |

*In answering this special verdict form, please refer to the Alleged Trade Secrets by their numbers as assigned in Trial Exhibit _____. Your answers must be unanimous.*

1.   Separately as to each Alleged Trade Secret, state whether or not Waymo has proven the following parts of its claim for misappropriation against Uber Technologies, Inc. Answer "Yes" or "No." To sustain such a claim as to any Alleged Trade Secret, you must find Waymo has proven all of the elements in the three columns below, meaning "Yes" in all three columns. If you answer "No" as to any column, then you need not consider and need not answer as to the other columns for that particular Alleged Trade Secret, although you may do so if you wish. You are free to consider the Alleged Trade Secrets and the columns in any sequence or order you prefer. In any answer, you must follow the instructions of law for that issue.

|  | ENFORCIBLE TRADE SECRET? | IMPROPERLY ACQUIRED? | USED OR DISCLOSED? |
|---|---|---|---|
| ALLEGED TRADE SECRET NO. 2 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 7 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 9 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 13 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 14 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 25 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 90 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 111 | _____ | _____ | _____ |

*If you have answered "No" in at least one column for all eight Alleged Trade Secrets, then skip ahead to Question No. 5. Otherwise, meaning you have answered "Yes" as to all three columns for at least one Alleged Trade Secret, continue to the next three questions.*

2. Only with respect to any Alleged Trade Secret for which you answered "Yes" in all three columns in the previous question, state whether or not Waymo has proven that Uber was unjustly enriched and that such use or disclosure was a substantial factor in bringing about such unjust enrichment. If you answer "Yes," then further state the dollar amount by which Waymo has proven that Uber was unjustly enriched (or, if Waymo has not proven any dollar amount, then enter "Zero" in the dollar amount column). If you answer "No," then leave the dollar amount column blank:

|  | UNJUST ENRICHMENT/ SUBSTANTIAL FACTOR? | DOLLAR AMOUNT |
|---|---|---|
| ALLEGED TRADE SECRET NO. 2 | _____ | _____ |
| ALLEGED TRADE SECRET NO. 7 | _____ | _____ |
| ALLEGED TRADE SECRET NO. 9 | _____ | _____ |
| ALLEGED TRADE SECRET NO. 13 | _____ | _____ |

| | | |
|---|---|---|
| ALLEGED TRADE SECRET NO. 14 | _____ | _____ |
| ALLEGED TRADE SECRET NO. 25 | _____ | _____ |
| ALLEGED TRADE SECRET NO. 90 | _____ | _____ |
| ALLEGED TRADE SECRET NO. 111 | _____ | _____ |

Remember, as I said in Paragraph XIX of the jury instructions, if you answer "Yes" and "Zero" as to any Alleged Trade Secret, we will have supplemental proceedings as to that Alleged Trade Secret with respect to an alternative form of award.

3.  If you entered dollar amounts for two or more blanks in the preceding question, then in order to account for the possibility of double or multiple counting, state the grand total of all such unjust enrichment to Uber without any double or multiple countings:

$_____

4.  Has Waymo proven that Uber acted willfully and maliciously with respect to any misappropriation found by you? If "Yes," state the dollar amount of any exemplary damages you award.

YES             NO              AMOUNT
_____          _____          $_____

\*          \*          \*

*The next group of questions concerns Ottomotto LLC and parallels the questions above.*

5.  Separately as to each Alleged Trade Secret, state whether or not Waymo has proven the following parts of its claim for misappropriation against Ottomotto LLC. Answer

3

"Yes" or "No." To sustain such a claim as to any Alleged Trade Secret, you must find Waymo has proven all of the elements in the three columns below, meaning "Yes" in all three columns. If you answer "No" as to any column, then you need not consider and need not answer as to the other columns for that particular Alleged Trade Secret, although you may do so if you wish. You are free to consider the Alleged Trade Secrets and the columns in any sequence or order you prefer. In any answer, you must follow the instructions of law for that issue.

|  | ENFORCIBLE TRADE SECRET? | IMPROPERLY ACQUIRED? | USED OR DISCLOSED? |
|---|---|---|---|
| ALLEGED TRADE SECRET NO. 2 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 7 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 9 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 13 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 14 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 25 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 90 | _____ | _____ | _____ |
| ALLEGED TRADE SECRET NO. 111 | _____ | _____ | _____ |

*If you have answered "No" in at least one column for all eight Alleged Trade Secrets, then you are done — go to the end of the form and sign and date it. Otherwise, meaning you have answered "Yes" as to all three columns for at least one Alleged Trade Secret, continue to the next three questions.*

6. Only with respect to any Alleged Trade Secret for which you answered "Yes" in all three columns in the previous question, state whether or not Waymo has proven that Ottomotto was unjustly enriched and that such use or disclosure was a substantial factor in bringing about such unjust enrichment. If you answer "Yes," then further state the dollar amount by which Waymo has proven that Ottomotto was unjustly enriched (or, if Waymo has not proven any dollar amount, then enter "Zero" in the dollar amount column). If you answer "No," then leave the dollar amount column blank:

4

|  | UNJUST ENRICHMENT/ SUBSTANTIAL FACTOR? | DOLLAR AMOUNT |
|---|---|---|
| ALLEGED TRADE SECRET NO. 2 | _____ | _____ |
| ALLEGED TRADE SECRET NO. 7 | _____ | _____ |
| ALLEGED TRADE SECRET NO. 9 | _____ | _____ |
| ALLEGED TRADE SECRET NO. 13 | _____ | _____ |
| ALLEGED TRADE SECRET NO. 14 | _____ | _____ |
| ALLEGED TRADE SECRET NO. 25 | _____ | _____ |
| ALLEGED TRADE SECRET NO. 90 | _____ | _____ |
| ALLEGED TRADE SECRET NO. 111 | _____ | _____ |

Remember, as I said in Paragraph XIX of the jury instructions, if you answer "Yes" and "Zero" as to any Alleged Trade Secret, we will have supplemental proceedings as to that Alleged Trade Secret with respect to an alternative form of award.

7. If you entered dollar amounts for two or more blanks in the preceding question, then in order to account for the possibility of double or multiple counting, state the grand total of all such unjust enrichment to Ottomotto without any double or multiple countings:

$_____

8. Has Waymo proven that Ottomotto acted willfully and maliciously with respect to any misappropriation found by you? If "Yes," state the dollar amount of any exemplary damages you award.

| YES | NO | AMOUNT |
|---|---|---|
| _____ | _____ | $_____ |

5

*Your answer to all of the foregoing questions must be unanimous.*

Dated: _____

                                                               FOREPERSON