MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzález@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel: 415.268.7000 / Fax: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Tel: 202.237.2727 / Fax: 202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: 212.336.8330 / Fax: 212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>        Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S TRIAL BRIEF**<br><br>Pretrial Conference: November 28, 2017<br>Time: 8:00 a.m.<br>Ctrm: 12<br>Judge: The Honorable William Alsup<br><br>Trial Date: December 4, 2017 |

In this trial brief, Defendants Uber Technologies, Inc. and Ottomotto LLC identify six issues that they believe should be addressed at the pretrial conference: (1) whether parties should disclose exhibits that they plan to use during the direct examination of an adverse witness; (2) whether Waymo may call witnesses who were not disclosed in Waymo's Rule 26 disclosures; (3) whether Waymo should be required to reduce the number of witnesses (34 on its most recent list) that it claims it "will call" at trial; (4) whether Waymo should be allowed to offer testimony from witnesses that goes beyond the topics disclosed in Waymo's Rule 26 disclosures; (5) Waymo's failure to disclose "a computation of each category of damages," as required by Rule 26(a); and (6) whether Waymo can introduce evidence of a theory of liability (a disclosure-based theory implicating Uber's communications with vendors) that was never disclosed during discovery.

**1.    Disclosure of Exhibits to be Used in Direct Examination of Adverse Witness**

A dispute has arisen regarding whether the parties must disclose exhibits to be used during the direct examination of an adverse witness. This Court's Trial Guidelines for civil cases state that "all counsel are entitled to written firm notice of the order of witnesses for the next court day and the exhibits (including merely illustrative exhibits) **to be used on direct examination** (other than for true impeachment of a witness)." (Guidelines for Trial & Final Pretrial Conference in Civil Jury Cases ("Jury Trial Guidelines") (last revised May 8, 2017), ¶ 11 (emphasis added).) Disclosing exhibits is mandatory. "At a minimum, notice must be given no later than 2:00 p.m. one calendar day *immediately* preceding." (*Id*. (emphasis in original).) The parties have agreed to give such notice by 3:30 p.m. two days before the witness testifies and demonstratives by 6:00 p.m. one day before they are used. (Declaration of Camila Tapernoux in Support of Uber's Trial Brief ("Tapernoux Decl."), Ex. 1 (11/15/17 6:38 pm E-mail from A. González).)

Uber believes that the parties are required to disclose all exhibits that they plan to show any witness which that party will call to the stand (i.e., "direct examination"). Waymo's position is that there is an exception to the Court's rule—that it is not required to disclose *any* documents that it plans to show an "adverse" witness (presumably anyone connected in some way to Uber). (Tapernoux Decl., Ex. 2 (11/15/17 3:29 E-mail from A. Roberts).) No such exception is stated in

the rule, nor should it be.

Waymo's approach threatens to significantly and unnecessarily delay the trial. The parties have agreed to confer every evening about trial exhibits. The idea is to identify and hopefully eliminate disputes regarding exhibits. If any disputes cannot be resolved, they will be raised with the Court before the witness takes the stand. For this process to work, exhibits that the parties plan to use on direct examination have to be disclosed (including for adverse witnesses). Otherwise, there will most certainly be disputes *during* the testimony that could have been resolved before the witness took the stand.

**2.     New Waymo Witnesses**

This Court's "Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases" states at paragraph 26: "Rule 26 requires certain automatic disclosures and requires them to be made in a timely manner." In addition, this Court's Jury Trial Guidelines state: "All parties are reminded of their disclosure duties under FRCP 26(a)(3), which begin **THIRTY CALENDAR DAYS** before trial." (Jury Trial Guidelines ¶ 1 (emphasis in original).)

On November 15, 2017, two weeks before jury selection, Waymo added a new witness (Prabir Adarkar) to its "will call" witness list. *Mr. Adarkar was never previously disclosed in any of Waymo's Rule 26 initial disclosures*. On the same day, Waymo also added Shawn Bananzadeh to its "will call" list—he also was not disclosed in any of Waymo's Rule 26 initial disclosures. With respect to Mr. Banazadeh, Waymo added him to its most recent "will call" witness list, against the Court's directive that if Mr. Bananzadeh is allowed to testify at all, it would only be in rebuttal: "If they use the 30(b)(6) deposition in any way before the jury, through an expert or directly read in, then [Mr. Bananzadeh] gets to come back and explain it in your rebuttal case, but not in your case-in-chief. In other words, **you can't use him in your case-in-chief because he's a new witness**." (10/26/2017 Hr'g Tr. 12:2-11 (emphasis added).)

Because neither Prabir Adarkar nor Shawn Bananzadeh was timely disclosed, neither witness should be allowed to testify at trial.

Uber similarly objects to the following eight witnesses who were not listed in any of Waymo's Rule 26 initial disclosures: Kristin Gudjonsson, Travis Bellanger, David Lawee,

DEFENDANTS UBER AND OTTOMOTTO'S TRIAL BRIEF
Case No. 3:17-cv-00939-WHA
sf-3843417

2

John Krafcik, Chelsea Bailey, Gerard Dwyer, Don Harrison, and Jennifer Haroon.  (Tapernoux Decl. Exs. 3-5.)

**3.     Number of "Will Call" Witnesses**

Given the 16-hour time limit for evidence for each side, Uber has provided, and has asked Waymo to provide, a realistic list of the witnesses it intends to call at trial.  Waymo has 34 witnesses on its "will call" witness list (and 30 more witnesses on its "may call" list).  It is near impossible for Waymo to call anywhere close to that number of witnesses, and Waymo knows it.  But by placing 34 witnesses on its "will call" list, Waymo is forcing 34 witnesses (half of whom are current or former Uber employees) to remain "on call" for two weeks and creating a lot of make-work for Uber in preparing for all these potential examinations, even though many of them will not be called.  By contrast, Uber has made a good-faith effort to identify a realistic number of witnesses that it "will call" and has provided Waymo with a list of 17 names—half the size of Waymo's list.  Uber has made this narrowing effort despite the fact that, as Defendants, Uber must necessarily react to Waymo's affirmative case.

Uber requests that the Court order Waymo to provide a realistic list of witnesses it intends to call.  Uber is not asking, of course, for a precise list of witnesses that is set in stone, nor is it trying to "trap" Waymo.  Accordingly, Uber will not argue that Waymo is barred from calling witnesses on its "may call" list.  Waymo, as the Plaintiff, should know by now the witnesses it "will call" at trial and should provide Uber with a "real" list of witnesses, as Uber has done.  Since Waymo goes first, it should be able to identify those witnesses at the pretrial conference.

**4.     "Substance of Testimony" Witness List Disclosures**

A dispute has arisen regarding whether Waymo's Rule 26 initial disclosures adequately identify the subject matter about which Waymo now indicates that it will question certain Uber witnesses at trial.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires a party to "provide to the other parties . . . the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  "If a party fails to provide

information or identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

      Waymo's trial witness list indicates that it plans to question Uber witnesses about subjects that Waymo never identified in any of its Rule 26 initial disclosures. Waymo offers no justification for failing to include these subjects in its disclosures, and allowing testimony on undisclosed issues at trial would prejudice Uber in precisely the way Rules 26 and 37 are designed to prevent. Accordingly, the Court should enforce Rule 37 and limit Waymo's questioning of these witnesses to properly disclosed subject matter.

      To say that Waymo's Rule 26 subject matter disclosures are generic and vague would be generous. For the challenged witnesses, virtually the only subject matter disclosed was the witness's knowledge of "matters that concern the misappropriation of trade secrets." If such a useless description were sufficient, then Rule 26 has no meaning because litigants could simply state for every witness that he or she has knowledge regarding "matters that concern the [insert claim]." Despite serving three sets of Rule 26 initial disclosures, Waymo never identified these additional subjects that have now been included in the trial witness list. Waymo's witness list, however, shows that Waymo intends to call witnesses to testify about matters that go far beyond even Waymo's vague Rule 26 disclosures, which Rule 26 prohibits. This Court should not allow Waymo to call the following Uber witnesses to testify about the subject matter indicated in the chart below in *red italics* because that subject matter was never properly disclosed by Waymo in its Rule 26 initial disclosures.

| Witness | Plaintiff Waymo LLC's Corrected Supplemental Initial Disclosures | Waymo's Third Amended Witness List |
|---|---|---|
| Bentley, Adam | Matters that concern the misappropriation of trade secrets. | Mr. Bentley will be asked to provide non-cumulative testimony regarding *the Uber-Otto acquisition;* the Stroz due diligence analysis, investigation, and report; *and destruction of relevant evidence* |

| Witness | Plaintiff Waymo LLC's Corrected Supplemental Initial Disclosures | Waymo's Third Amended Witness List |
|---|---|---|
| Burnette, Don | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. Burnette will be asked to provide non-cumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; *the development of Waymo's self-driving car technology, including its LIDAR designs and planner software*; due diligence by Stroz for Otto acquisition by Uber; *and destruction of relevant evidence* |
| Holden, Jeff | Matters that concern misappropriation of trade secrets. | Mr. Holden will be asked to provide noncumulative testimony regarding *the state of Uber's autonomous vehicle program before the Otto acquisition; negotiations with Mr. Levandowski regarding the acquisition*; Mr. Levandowski's consulting work; *facts surrounding Mr. Levandowski's continued employment with Uber and termination*; and Defendants' misappropriation of Waymo's trade secrets |
| Juelsgaard, Soren | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. Juelsgaard will be asked to provide non-cumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development; *the development of Waymo's self-driving car technology, including its LIDAR designs and software*; due diligence by Stroz for Otto acquisition by Uber; *and destruction of relevant evidence* |

| Witness | Plaintiff Waymo LLC's Corrected Supplemental Initial Disclosures | Waymo's Third Amended Witness List |
|---|---|---|
| Kalanick, Travis | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. Kalanick will be asked to provide non-cumulative testimony regarding *Uber's driverless car program; Uber's solicitation of Google and Waymo employees;* discussions with, knowledge about, Levandowksi [sic], *discussions with the Board and Benchmark partners concerning the Otto acquisition, Mr. Levandowski, and the relationship between the facts surrounding this case and his termination; negotiations with Mr. Levandowski regarding the founding of Ottomotto and Otto Trucking, and Otto acquisition*; the Uber-Otto acquisition; *solitication* [sic] *of Google/Waymo employees*; the Stroz due diligence analysis, investigation, and report; *Uber's knowledge of stolen documents,* understanding, and activity related to misappropriation of Google/Waymo trade secret and proprietary information; *Levandowski's employment and continued employment at Uber; and destruction of relevant evidence* |
| McClendon, Brian | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. McClendon will be asked to provide non-cumulative testimony regarding *solicitation of and negotiations with Levandowski regarding founding Ottomotto and Otto Trucking;* and *the Uber-Otto acquisition, the development of Uber's self-driving technology, including before the Otto acquisition,* Defendants' misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development |
| Michael, Emil | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. Michael will be asked to provide non-cumulative testimony regarding the *negotiations with Levandowski regarding founding Ottomotto and Otto Trucking; the Uber- Otto acquisition; Levandowski's employment and continued employment at Uber;* discussions with, knowledge about, Levandowksi [sic], *discussions with the Board and Benchmark partners concerning the Otto acquisition, Mr. Levandowski, and the relationship between the facts surrounding this case and his termination* |

| Witness | Plaintiff Waymo LLC's Corrected Supplemental Initial Disclosures | Waymo's Third Amended Witness List |
|---|---|---|
| Poetzscher, Cameron | Matters that concern misappropriation of trade secrets. | Mr. Poetzcher [sic] will be asked to provide non-cumulative testimony regarding *Uber's negotiations with Mr. Levandowski regarding the formation of Ottomotto/Otto Trucking; and the acquisition; solicitation of Google/Waymo employees; destruction of relevant evidence;* and the Stroz due diligence analysis, investigation, and report |
| Ron, Lior | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. Ron will be asked to provide noncumulative testimony regarding the misappropriation of Waymo trade secrets; *founding of Ottomotto and Otto Trucking; the Uber-Otto acquisition;* the Stroz due diligence analysis, investigation, and report*; and the business and product development of Ottomotto and Otto Trucking, destruction of relevant evidence* |
| Schwarz, Brent | Matters that concern misappropriation of trade secrets. | Mr. Schwarz will be asked to provide non-cumulative testimony regarding Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, *and the lack of independent development; regarding Tyto LiDAR and Otto's acquisition of Tyto* |
| Sebern, Colin | Matters that concern misappropriation of trade secrets and patent infringement by Defendants. | Mr. Sebern will be asked to provide non-cumulative testimony concerning Defendants misappropriation of Waymo's trade secrets, including their acquisition, use and disclosure, and the lack of independent development*; the development of Waymo's self-driving car technology, including its LIDAR designs and software;* due diligence by Stroz for Otto acquisition by Uber |
| Morgan, Rhian | Matters that concern misappropriation of trade secrets. | Ms. Morgan will be asked to provide noncumulative testimony regarding *the founding and business of Ottomotto and Otto Trucking; Uber's acquisition of Otto;* and the Stroz due diligence analysis, investigation, report; Defendants misappropriation of Waymo's trade secrets, *destruction of relevant evidence* |

| Witness | Plaintiff Waymo LLC's Corrected Supplemental Initial Disclosures | Waymo's Third Amended Witness List |
|---|---|---|
| Qi, Nina | Matters that concern misappropriation of trade secrets. | Ms. Qi will be asked to provide noncumulative testimony regarding *Uber's decision to acquire Ottomotto (and to enter into an option to acquire Otto Trucking); contacts between Uber and Mr. Levandowski regarding the formation of Ottomotto / Otto Trucking, Uber's acquisition of those entities, and the benefits that Uber would obtain via those acquisitions; Uber's solicitation of Google/Waymo employees; Uber's internal views on those subjects, destruction of relevant evidence;* and the Stroz due diligence analysis, investigation, and report |
| Yoo, Salle | Matters that concern misappropriation of trade secrets. | Ms.Yoo will be asked to provide noncumulative testimony *regarding the Uber-Otto acquisition*; the Stroz due diligence analysis investigation, and report*; continued employment and termination of Anthony Levandowski*; and Defendants misappropriation of Waymo's trade secrets, *destruction of relevant evidence* |

### 5. Computation of Each Category of Damages

Waymo violated Rule 26(a) by failing to disclose "a computation of each category of damages[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii); *see also Brandywine Commc'ns Techs., LLC v. Cisco Sys., Inc.*, No. C 12-01669 WHA, 2012 WL 5504036, at *2 (N.D. Cal. Nov. 13, 2012). The Court's June 7, 2017 Case Management Order (Dkt. 563) required Waymo to comply with Rule 26(a)(1)(A)(iii) "on pain of preclusion" by the June 21, 2017 deadline, and this Court told the parties that they would "have to throw [themselves] on the mercies of the court and do supplements" only "for good cause." (6/7/2017 Hr'g Tr. 69:2-72:9.)

Without supplementing its Rule 26(a)(1)(A)(iii) disclosures, Waymo subsequently served its response to Interrogatory No. 13 on July 17, 2017 to outline a variety of possible damages theories. With respect to reasonable royalty, Waymo stated that "Waymo's damages expert will analyze and compute the amount of reasonable royalty damages payable to Waymo[.]"

(Dkt. 933-3 at 15.) It was not until August 24, 2017, when it disclosed the expert report of Michael Wagner, that Waymo narrowed its damages theories, provided a detailed computation of unjust enrichment damages and provided a reasonable royalty computation. (*See* Dkt. 1615.) For reasonable royalty, Waymo and Mr. Wagner simply took Waymo's accelerated development model and increased it by ten percent. (*See* Dkt. 2166 at 13.)

In its order excluding Mr. Wagner, this Court denied Uber's prior motion relating to Waymo's inadequate damage disclosures, stating: "With the benefit of Waymo's *full damages theory* and the foregoing rulings, this order finds that no further relief is necessary under these circumstances to remedy any shortfalls in Waymo's initial disclosures." (*Id.* at 16 (emphasis added).) Since that order, however, Waymo has submitted an offer of proof relating to reasonable royalty that appears untethered to the "full damages theory" addressed in the order excluding Mr. Wagner (*see* Dkt. 2189) and is also seeking to add new damages witnesses. With Waymo's damages expert stricken, Uber is once again in the dark as to what damages case Waymo intends to present at trial due to Waymo's deficient disclosures.

Accordingly, Uber requests that the Court confirm that Waymo is precluded from presenting any damages calculations or theories beyond those disclosed in Mr. Wagner's opening report and as summarized in the order excluding Mr. Wagner. That is, Waymo should not be permitted to offer any damages theory other than: (1) the accelerated development model based on the Qi slide; (2) the saved development expense model based on Uber's run rate; and (3) a reasonable royalty based on a percentage of the accelerated development model.

Permitting Waymo to change its damage theories on the eve of trial is precisely the type of unfair prejudice and surprise that Rule 26 was intended to guard against.

### 6.   Waymo's Undisclosed Theory of Liability

Prior to filing its offer of proof regarding the disclosure of trade secrets on November 12, 2017, Waymo never even hinted at the fact that it was pursuing a theory of liability based on Uber's alleged disclosure of certain of Waymo's asserted trade secrets to Uber's vendors. This theory was never disclosed in Waymo's initial disclosures, was not included in any of Waymo's responses to interrogatories that called for such disclosure, and was never the subject

of fact or expert discovery.

First, for example, at the November 14, 2017 hearing, the Court asked whether Waymo had included the types of documents it was using to support its new theory in its initial disclosures. (11/14/2017 Hr'g Tr. 72:11-73:1.)  Waymo did not disclose any of Uber's vendors, either by name or by category, on its Rule 26(a)(1) disclosures.  Nor did any of its disclosures include any reference to communications to or from vendors.

Second, Uber served three interrogatories that called for the disclosure of this theory of liability, had Waymo wanted to pursue it:

- **Uber's Interrogatory No. 28**: "[D]escribe in detail how Uber/Otto's acquisition, use, or disclosure of such a trade secret was a substantial factor in causing Waymo's harm or Uber/Otto's unjust enrichment, including identifying whether the alleged act was acquisition, use or disclosure, and identifying all documents by bates number that relate to this allegation." (Tapernoux Decl., Ex. 6.)

- **Uber's Interrogatory No. 13**: "[D]escribe in detail the complete basis for any damages You contend You have suffered or will suffer . . . ." (Tapernoux Decl., Ex. 7.)

- **Uber's Interrogatory No. 8**: "[D]escribe all instances in which the trade secret or (or any Waymo LiDAR device utilizing the trade secret) was publicly or otherwise disclosed to third parties, and identify all Documents (by Bates number) concerning such disclosure." (Tapernoux Decl., Ex. 8.)

Waymo's answers did not include a single reference to the disclosure of asserted trade secrets to any of Uber's vendors.  To the contrary, Waymo's response to Interrogatory 28 asserted only that there was a "risk that Defendants will disclose" each asserted trade secret in regulatory filings creating a "harm, although not one that Waymo can necessarily quantify." (*Id*. Ex. 6.) The omission of any reference to Uber's vendors in this response speaks volumes.

Finally, because Waymo never hinted at this theory of liability (for which it still has not disclosed any alleged damages), the parties took no discovery on the topic either from fact or expert witnesses.  For example, no vendors were deposed about how they handled Uber-provided information that Waymo now alleges disclosed the asserted trade secrets, or whether there were any non-disclosures agreements with the vendors (there were) requiring them not to disclose this

1 information. Likewise, no experts were asked to opine about whether the documents sent to the
2 vendors allegedly containing the asserted trade secrets actually disclosed those trade secrets.
3       In sum, it would be extremely prejudicial and improper for Waymo to introduce evidence
4 on this previously undisclosed theory of liability.

Dated:  November 21, 2017                MORRISON & FOERSTER LLP

By:   */s/ Arturo J. Gonzalez*
     ARTURO J. GONZÁLEZ

MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzález@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Tel:  415.268.7000 / Fax:  415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Tel:  202.237.2727 / Fax:  202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmanh\godfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019-6023
Tel:  212.336.8330 / Fax:  212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC