# APPENDIX B

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>            Plaintiff,<br><br>      vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>            Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S OBJECTIONS TO DEFENDANTS' AMENDED RULE 26(a)(3) WITNESS LIST** |

Plaintiff Waymo LLC ("Waymo") hereby objects to the following witnesses on Defendants' Uber and Ottomotto's, ("Uber") witness lists.

**<u>Waymo's Experts Lambertus Hesselink, Gregory Kintz, and Paul French:</u>** Uber discloses on its witness list two expert witnesses who submitted expert reports on Waymo's behalf and upon whom Waymo intends to rely at trial (Hesselink and French)[1], as well as the expert upon whom Waymo relied during the preliminary injunction phase (Kintz) and upon whom Waymo does not intend to rely at trial. Uber should not be permitted to call Waymo's experts as witnesses in Uber's case because doing so would be unduly prejudicial to Waymo.

Permitting Uber to call Waymo's experts at trial will substantially prejudice the jury against Waymo. Forcing Waymo's experts to testify fails Federal Rule of Evidence 403's balancing test. Allowing a party to call the retained expert of the opposing party should only occur when there is no other expert who can provide the jury with similar evidence. *See e.g. Agron v. Trustees of Columbia Univ. in City of New York*, 176 F.R.D. 445, 450 (S.D.N.Y. 1997) (distinguishing its decision to require only a limiting instruction restricting the defendant from mentions of the expert's prior retention by the plaintiff on the basis that the expert's testimony was unique). Where, as here, Uber has its own retained experts that have offered opinions on the same issues as Waymo's experts, the issues on which Uber would offer Waymo's experts to testify about would be duplicative of the issues Uber's experts will testify about. The fact that a particular expert was originally retained by Waymo is far too prejudicial to risk a limiting instruction. "It may be possible to keep this explosive fact from the jury at trial, but there seems little reason to require the effort if other expert witnesses are available."*Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 461 (S.D.N.Y. 1995) (citing 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure: Civil § 2032, at 447 (1994)); see also *Jasty v. Wright Med. Tech., Inc.*, 528 F.3d 28 (1st Cir. 2008)(upholding the district court's decision to not compel defendant's expert to testify because there was an "absence of any showing of a need for [the plaintiff] to call the witness"); *Peterson v. Willie*, 81 F.3d 1033, n.4 (11th Cir. 1996) ("While it may generally be

---

[1] French is one of Waymo's rebuttal expert witnesses.

possible to permit a party to call a witness without disclosing the fact of his or her prior engagement by the opposing party, there may be little reason to require this effort if other expert witnesses are readily available.).  Here, Uber's own expert witnesses are available to testify.  It would be unduly prejudicial for Uber to call Waymo's experts as witnesses and inform the jury that they are Waymo's witnesses.  If they have already testified in Waymo's case, then this will already be clear to the jury.  Since Uber has its own experts opining on these same issues—albeit taking differing views—there is no substantial need for Uber to rely on Waymo's experts.  Uber should be precluded from doing so.

**Larry Page:**  Uber should be precluded from calling Alphabet's CEO and Google co-founder as a trial witness.  Mr. Page was deposed in the case and does not have unique and personal knowledge of the facts at issue and the evidence Uber seeks to present can be presented through less intrusive methods.  *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (explaining the standard for seeking an apex deposition).  The subject matter of the testimony Uber intends to present from Mr. Page is duplicative of testimony that it can present through other, non-apex witnesses.  Much of the subject matter of his proposed testimony is also irrelevant.

Uber says that Mr. Page will testify regarding development and operation of Waymo's autonomous vehicle program.  All parties have several engineers on their witness lists that can cover the same subject matter.  Further, Uber also includes on its list Sebastian Thrun, who led the Chauffeur effort at Google, to testify on the same subject matter.  Uber also says that Mr. Page will testify regarding Levandowski's departure from Waymo; again, several other witnesses on the parties' witness lists are identified to provide testimony about this, including several Uber employees, John Krafcik, and Chris Urmson.  And finally, Uber says that Mr. Page will testify regarding "side businesses."  As Waymo previously explained, argument, evidence, or testimony about "side businesses" should be precluded.  (Dkt. 851.)  It is not relevant and is likely to confuse the jury. Whether Levandowski was permitted to start "side businesses" has no bearing on whether he stole Waymo trade secrets and whether Uber misappropriated Waymo trade secrets.  If Uber is permitted to introduce argument, evidence, or testimony regarding "side businesses", there

is a risk that the jury will be misled and confused into thinking Levandowski's conduct at issue in this case was approved—it was not. Even if permitted, however, Uber disclosed several other witnesses to testify on this subject matter, including John Krafcik, Sebastian Thrun, Chris Urmson, and Dmitri Dolgov.

Uber further says that Mr. Page will testify on Waymo's business plans, knowledge of discussions with Uber regarding a partnership in the self-driving vehicle/ride-sharing space, knowledge of the Chauffeur Bonus Plan, and concerns about competition from others. Much of this subject matter is covered by Waymo's *Motion in Limine* No. 1, which was granted. And, there are many witnesses on both sides' witness lists who can testify about the self-driving/ride-sharing market. There is no need for Uber to burden Mr. Page and Alphabet by having Mr. Page called to testify at trial on subject matter that can be provided by any number of witnesses.

**Sergey Brin:** Uber should be precluded from calling Alphabet's President and Google-co-founder as a trial witness. Mr. Brin was also deposed in the case and does not have unique and personal knowledge of the facts at issue and the evidence Uber seeks to present can be presented through less intrusive methods. *Celerity*, No. C 05-4374, 2007 WL 205067, at *3. The subject matter of the testimony Uber intends to present from Mr. Brin is duplicative of testimony that it can present through other, non-apex witnesses. Indeed, Uber says he will testify on topics that are identical to those disclosed for Mr. Page. As discussed above, there are other witnesses who can present this testimony. Further, as discussed above, much of the subject matter of Mr. Brin's proposed testimony is also irrelevant. There is no need for Uber to burden Mr. Brin and Alphabet by having Mr. Brin called to testify at trial on subject matter that can be provided by any number of witnesses.

Additionally, for the first time in Uber's November 17, 2017 Amended Witness List, Uber disclosed that it may call Mr. Brin by deposition. Uber did not previously disclose him to testify by deposition in its original Witness List.

**Anthony Levandowski:** Uber disclosed Anthony Levandowski to testify on several issues. Uber cannot use Levandowski's assertion of the Fifth Amendment privilege as a shield and then call Levandowski to trial to try to benefit from an adverse inference. This has been Uber's

*modus operandi* throughout the case—hiding behind both Levandowski's Fifth Amendment privilege and alleged common interest privileges except when beneficial to Uber.  The Court recognized an example of Uber's gamesmanship in this regard at the August 16 hearing on Waymo's motion, related to Uber's belated disclosure of Mr. Levandowski's purported destruction of the five discs of downloaded Waymo files in March 2016, calling Uber's conduct a "slick" practice.  (Dkt. 1261 at 44:13-45:3.)  Since that hearing, Uber has continued this improper practice – selectively relying on helpful communications with Mr. Levandowski, while concealing those they decide would hurt their litigation position.

As Waymo laid out in its Supplemental Brief on its Motion for Order to Show Cause (Dkt. 1502), Uber has coordinated with Levandowski to get help in the case, but relied upon privilege assertions to avoid revealing discovery into the nature or scope of that cooperation.  For example, calendar invitations show that Levandowski participated in meetings with Uber executives and attorneys to discuss litigation strategy well after he plead the Fifth Amendment and purportedly refused to cooperate with Uber's investigation.  Similarly, at Levandowski's August 22 deposition, Uber's counsel asked him questions purporting to demonstrate his refusal to cooperate, and he refused to answer.  But, when **Waymo** asked questions about this purported non-cooperation, Uber instructed him not to answer on privilege grounds.  Uber cannot have it both ways, picking and choosing when its communications with Levandowski are protected by common interest privileges, and when those communications or non-responses about those communications can be used against Waymo.

Now, after a long history of picking and choosing which communications are privileged and which are not, Uber wants to call Levandowski as a witness at trial and ask questions, which will presumably not be answered, so that Uber can get an adverse inference.  This is not fair and another classic example of improperly using a privilege assertion as a sword and a shield.  This Court should not permit Uber to call Levandowski as a witness and affirmatively rely on adverse inferences taken from his refusal to testify.

**David Drummond:**  Uber disclosed David Drummond to testify by deposition only. Waymo reserves the right to call Mr. Drummond in relation to Uber's designated testimony.

**John Bares.**  For the first time in its November 17, 2017 Amended Witness List, Uber disclosed Uber consultant John Bares to testify by deposition.  He is also disclosed as a witness who Uber may call if the need arises, as he was previously disclosed.  Mr. Bares is a former Uber engineer and Uber's counsel represented he is an Uber consultant.  Uber's counsel has not responded to Waymo's inquiries as to whether he is represented by Uber's counsel.  As an Uber consultant, Waymo believes that Mr. Bares is in Uber's control and Uber has not shown that he is "unavailable" under Fed. R. Evid. 804 such that Uber can rely on his deposition testimony.  Waymo will continue to try to work with Uber to resolve this issue.

**"Substance of Testimony" Witness List Disclosures.**  Uber has objected to several of Waymo's trial witnesses on the ground that the subject matter on which they are disclosed to testify was not adequately identified in Waymo's Corrected Supplemental Initial Disclosures. (Dkt. 2253.)  To the extent Uber raises that objection, Waymo reserves the right to object to Uber's trial witnesses on the same grounds.

DATED:  November 21, 2017            QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC