# APPENDIX E

1    QUINN EMANUEL URQUHART & SULLIVAN, LLP
       Charles K. Verhoeven (Bar No. 170151)
2      charlesverhoeven@quinnemanuel.com
       David A. Perlson (Bar No. 209502)
3      davidperlson@quinnemanuel.com
       Melissa Baily (Bar No. 237649)
4      melissabaily@quinnemanuel.com
       John Neukom (Bar No. 275887)
5      johnneukom@quinnemanuel.com
       Jordan Jaffe (Bar No. 254886)
6      jordanjaffe@quinnemanuel.com
     50 California Street, 22nd Floor
7    San Francisco, California 94111-4788
     Telephone:     (415) 875-6600
8    Facsimile:     (415) 875-6700

9    Attorneys for WAYMO LLC

10                   UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13   WAYMO LLC,                          CASE NO. 3:17-cv-00939

14              Plaintiff,               **PLAINTIFF WAYMO LLC'S
                                         OBJECTIONS TO DEFENDANTS'**
15        vs.                            **AMENDED RULE 26(a)(3) WITNESS
                                         LIST**
16   UBER TECHNOLOGIES, INC.;
     OTTOMOTTO LLC; OTTO TRUCKING
17   LLC,

18              Defendants.

19

20

21

22

23

24

25

26

27

28

1       Plaintiff Waymo LLC ("Waymo") hereby objects to the following witnesses on

2   Defendants' Uber and Ottomotto's, ("Uber") witness lists.

3       **Waymo's Experts Lambertus Hesselink, Gregory Kintz, and Paul French:**  Uber

4   discloses on its witness list two expert witnesses who submitted expert reports on Waymo's behalf

5   and upon whom Waymo intends to rely at trial (Hesselink and French)[1], as well as the expert upon

6   whom Waymo relied during the preliminary injunction phase (Kintz) and upon whom Waymo

7   does not intend to rely at trial.  Uber should not be permitted to call Waymo's experts as witnesses

8   in Uber's case because doing so would be unduly prejudicial to Waymo.

9       Permitting Uber to call Waymo's experts at trial will substantially prejudice the jury

10  against Waymo.  Forcing Waymo's experts to testify fails Federal Rule of Evidence 403's

11  balancing test.  Allowing a party to call the retained expert of the opposing party should only

12  occur when there is no other expert who can provide the jury with similar evidence.  *See*

13  *e.g. Agron v. Trustees of Columbia Univ. in City of New York*, 176 F.R.D. 445, 450 (S.D.N.Y.

14  1997) (distinguishing its decision to require only a limiting instruction restricting the defendant

15  from mentions of the expert's prior retention by the plaintiff on the basis that the expert's

16  testimony was unique).  Where, as here, Uber has its own retained experts that have offered

17  opinions on the same issues as Waymo's experts, the issues on which Uber would offer Waymo's

18  experts to testify about would be duplicative of the issues Uber's experts will testify about.  The

19  fact that a particular expert was originally retained by Waymo is far too prejudicial to risk a

20  limiting instruction.  "It may be possible to keep this explosive fact from the jury at trial, but there

21  seems little reason to require the effort if other expert witnesses are available."*Rubel v. Eli Lilly &*

22  *Co.*, 160 F.R.D. 458, 461 (S.D.N.Y. 1995) (citing 8 C. Wright, A. Miller & R. Marcus, Federal

23  Practice and Procedure: Civil § 2032, at 447 (1994)); see also *Jasty v. Wright Med. Tech., Inc.*,

24  528 F.3d 28 (1st Cir. 2008)(upholding the district court's decision to not compel defendant's

25  expert to testify because there was an "absence of any showing of a need for [the plaintiff] to call

26  the witness"); *Peterson v. Willie*, 81 F.3d 1033, n.4 (11th Cir. 1996) ("While it may generally be

27

    ¹   French is one of Waymo's rebuttal expert witnesses.

28

1  possible to permit a party to call a witness without disclosing the fact of his or her prior

2  engagement by the opposing party, there may be little reason to require this effort if other expert

3  witnesses are readily available.).  Here, Uber's own expert witnesses are available to testify.  It

4  would be unduly prejudicial for Uber to call Waymo's experts as witnesses and inform the jury

5  that they are Waymo's witnesses.  If they have already testified in Waymo's case, then this will

6  already be clear to the jury.  Since Uber has its own experts opining on these same issues—albeit

7  taking differing views—there is no substantial need for Uber to rely on Waymo's experts.  Uber

8  should be precluded from doing so.

9       **Larry Page:**  Uber should be precluded from calling Alphabet's CEO and Google co-

10  founder as a trial witness.  Mr. Page was deposed in the case and does not have unique and

11  personal knowledge of the facts at issue and the evidence Uber seeks to present can be presented

12  through less intrusive methods.  *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374, 2007

13  WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (explaining the standard for seeking an apex

14  deposition).  The subject matter of the testimony Uber intends to present from Mr. Page is

15  duplicative of testimony that it can present through other, non-apex witnesses.  Much of the

16  subject matter of his proposed testimony is also irrelevant.

17       Uber says that Mr. Page will testify regarding development and operation of Waymo's

18  autonomous vehicle program.  All parties have several engineers on their witness lists that can

19  cover the same subject matter.  Further, Uber also includes on its list Sebastian Thrun, who led the

20  Chauffeur effort at Google, to testify on the same subject matter.  Uber also says that Mr. Page

21  will testify regarding Levandowski's departure from Waymo; again, several other witnesses on the

22  parties' witness lists are identified to provide testimony about this, including several Uber

23  employees, John Krafcik, and Chris Urmson.  And finally, Uber says that Mr. Page will testify

24  regarding "side businesses."  As Waymo previously explained, argument, evidence, or testimony

25  about "side businesses" should be precluded.  (Dkt. 851.)  It is not relevant and is likely to confuse

26  the jury.  Whether Levandowski was permitted to start "side businesses" has no bearing on

27  whether he stole Waymo trade secrets and whether Uber misappropriated Waymo trade secrets.  If

28  Uber is permitted to introduce argument, evidence, or testimony regarding "side businesses", there

-2-

1   is a risk that the jury will be misled and confused into thinking Levandowski's conduct at issue in

2   this case was approved—it was not.  Even if permitted, however, Uber disclosed several other

3   witnesses to testify on this subject matter, including John Krafcik, Sebastian Thrun, Chris Urmson,

4   and Dmitri Dolgov.

5          Uber further says that Mr. Page will testify on Waymo's business plans, knowledge of

6   discussions with Uber regarding a partnership in the self-driving vehicle/ride-sharing space,

7   knowledge of the Chauffeur Bonus Plan, and concerns about competition from others.  Much of

8   this subject matter is covered by Waymo's *Motion in Limine* No. 1, which was granted.  And, there

9   are many witnesses on both sides' witness lists who can testify about the self-driving/ride-sharing

10  market.  There is no need for Uber to burden Mr. Page and Alphabet by having Mr. Page called to

11  testify at trial on subject matter that can be provided by any number of witnesses.

12         **Sergey Brin:**  Uber should be precluded from calling Alphabet's President and Google-co-

13  founder as a trial witness.  Mr. Brin was also deposed in the case and does not have unique and

14  personal knowledge of the facts at issue and the evidence Uber seeks to present can be presented

15  through less intrusive methods.  *Celerity*, No. C 05-4374, 2007 WL 205067, at *3.  The subject

16  matter of the testimony Uber intends to present from Mr. Brin is duplicative of testimony that it

17  can present through other, non-apex witnesses.  Indeed, Uber says he will testify on topics that are

18  identical to those disclosed for Mr. Page.  As discussed above, there are other witnesses who can

19  present this testimony.  Further, as discussed above, much of the subject matter of Mr. Brin's

20  proposed testimony is also irrelevant.  There is no need for Uber to burden Mr. Brin and Alphabet

21  by having Mr. Brin called to testify at trial on subject matter that can be provided by any number

22  of witnesses.

23         Additionally, for the first time in Uber's November 17, 2017 Amended Witness List, Uber

24  disclosed that it may call Mr. Brin by deposition.  Uber did not previously disclose him to testify

25  by deposition in its original Witness List.

26         **Anthony Levandowski:**  Uber disclosed Anthony Levandowski to testify on several

27  issues.  Uber cannot use Levandowski's assertion of the Fifth Amendment privilege as a shield and

28  then call Levandowski to trial to try to benefit from an adverse inference.  This has been Uber's

-3-

1   *modus operandi* throughout the case—hiding behind both Levandowski's Fifth Amendment

2   privilege and alleged common interest privileges except when beneficial to Uber.  The Court

3   recognized an example of Uber's gamesmanship in this regard at the August 16 hearing on

4   Waymo's motion, related to Uber's belated disclosure of Mr. Levandowski's purported destruction

5   of the five discs of downloaded Waymo files in March 2016, calling Uber's conduct a "slick"

6   practice.  (Dkt. 1261 at 44:13-45:3.)  Since that hearing, Uber has continued this improper practice

7   – selectively relying on helpful communications with Mr. Levandowski, while concealing those

8   they decide would hurt their litigation position.

9           As Waymo laid out in its Supplemental Brief on its Motion for Order to Show Cause (Dkt.

10   1502), Uber has coordinated with Levandowski to get help in the case, but relied upon privilege

11   assertions to avoid revealing discovery into the nature or scope of that cooperation.  For example,

12   calendar invitations show that Levandowski participated in meetings with Uber executives and

13   attorneys to discuss litigation strategy well after he plead the Fifth Amendment and purportedly

14   refused to cooperate with Uber's investigation.  Similarly, at Levandowski's August 22

15   deposition, Uber's counsel asked him questions purporting to demonstrate his refusal to cooperate,

16   and he refused to answer.  But, when **Waymo** asked questions about this purported non-

17   cooperation, Uber instructed him not to answer on privilege grounds.  Uber cannot have it both

18   ways, picking and choosing when its communications with  Levandowski are protected by

19   common interest privileges, and when those communications or non-responses about those

20   communications can be used against Waymo.

21           Now, after a long history of picking and choosing which communications are privileged

22   and which are not, Uber wants to call Levandowski as a witness at trial and ask questions, which

23   will presumably not be answered, so that Uber can get an adverse inference.  This is not fair and

24   another classic example of improperly using a privilege assertion as a sword and a shield.  This

25   Court should not permit Uber to call Levandowski as a witness and affirmatively rely on adverse

26   inferences taken from his refusal to testify.

27           **David Drummond:**  Uber disclosed David Drummond to testify by deposition only.

28   Waymo reserves the right to call Mr. Drummond in relation to Uber's designated testimony.

1    **John Bares.**  For the first time in its November 17, 2017 Amended Witness List, Uber

2   disclosed Uber consultant John Bares to testify by deposition.  He is also disclosed as a witness

3   who Uber may call if the need arises, as he was previously disclosed.  Mr. Bares is a former Uber

4   engineer and Uber's counsel represented he is an Uber consultant.  Uber's counsel has not

5   responded to Waymo's inquiries as to whether he is represented by Uber's counsel.  As an Uber

6   consultant, Waymo believes that Mr. Bares is in Uber's control and Uber has not shown that he is

7   "unavailable" under Fed. R. Evid. 804 such that Uber can rely on his deposition testimony.

8   Waymo will continue to try to work with Uber to resolve this issue.

9    **"Substance of Testimony" Witness List Disclosures.**  Uber has objected to several of

10   Waymo's trial witnesses on the ground that the subject matter on which they are disclosed to

11   testify was not adequately identified in Waymo's Corrected Supplemental Initial Disclosures.

12   (Dkt. 2253.)  To the extent Uber raises that objection, Waymo reserves the right to object to Uber's

13   trial witnesses on the same grounds.

14   DATED:  November 21, 2017                    QUINN EMANUEL URQUHART & SULLIVAN,
                                                   LLP
15

16                                                By */s/ Charles K. Verhoeven*
                                                      Charles K. Verhoeven
17                                                    Attorneys for WAYMO LLC

18

19

20

21

22

23

24

25

26

27

28

WAYMO'S WITNESS LIST OBJECTIONS