1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzález@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Tel: 415.268.7000 / Fax: 415.268.7522
5
    KAREN L. DUNN (*Pro Hac Vice*)
6   kdunn@bsfllp.com
    HAMISH P.M. HUME (*Pro Hac Vice*)
7   hhume@bsfllp.com
    BOIES SCHILLER FLEXNER LLP
8   1401 New York Avenue, N.W.
    Washington, D.C.  20005
9   Tel:  202.237.2727 / Fax: 202.237.6131

10  WILLIAM CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
11  SHAWN RABIN (*Pro Hac Vice*)
    srabin@susmangodfrey.com
12  SUSMAN GODFREY LLP
    1301 Avenue of the Americas, 32nd Floor
13  New York, NY 10019-6023
    Tel: 212.336.8330 / Fax: 212.336.8340

14

15  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
16  and OTTOMOTTO LLC

17              UNITED STATES DISTRICT COURT

18            NORTHERN DISTRICT OF CALIFORNIA

19               SAN FRANCISCO DIVISION

20

21  WAYMO LLC,                          Case No. 3:17-cv-00939-WHA

22          Plaintiff,                  **DEFENDANTS UBER
                                        TECHNOLOGIES, INC. AND
23      v.                              OTTOMOTTO LLC'S OPPOSITION
                                        TO WAYMO'S PRECIS FOR LEAVE
24  UBER TECHNOLOGIES, INC.,            TO FILE A MOTION TO EXCLUDE
    OTTOMOTTO LLC; OTTO TRUCKING LLC,   DEFENDANTS' DAMAGES EXPERT
25                                      WALTER BRATIC**
            Defendants.
26                                      Trial Date: December 4, 2017

27

28

Waymo's Precis for leave to file a motion to exclude Uber's damages expert Walter Bratic is late, not ripe, and lacks merit. Almost a month has passed since the Court excluded Waymo's damages expert Michael Wagner, yet Waymo never sought to exclude Mr. Bratic. And when the Court granted each side one additional motion in limine two weeks ago, Waymo chose not to use its motion to seek to exclude Mr. Bratic, and did not request leave to file an additional motion in limine until two weeks later. Waymo's Precis filed the week before jury selection is untimely and should be denied on that basis alone.

Waymo's motion is also not ripe. In its order excluding Mr. Wagner, this Court cautioned Uber against using an expert who "is little more than a mouthpiece for presenting the argument of counsel based on uncomplicated evidence already in the case[.]" Dkt. No. 2166 at 11, n.3. Uber has heeded that warning, and intends to use fact witnesses to establish its independent development computation. Uber has also moved Mr. Bratic to its "may-call" witness list. Whether Uber calls Mr. Bratic depends on how Waymo seeks to establish damages in its case-in-chief, which is entirely unclear. *See* Dkt. No. 2253 at 8-9 (Uber Trial Brief). Should Uber call Mr. Bratic, his testimony will be limited to specific issues upon which he is eminently qualified and will be helpful to the jury.

Waymo's Precis also lacks merit. Unlike Mr. Wagner, Mr. Bratic has extensive professional experience valuing intellectual property, including trade secrets, in the non-litigation context. Not only is he licensed as a Certified Licensing Professional by the Licensing Executives Society of the United States and Canada, he has taught courses at the University of Houston Law School on trade secret valuation and licensing during the last thirteen years. And unlike Mr. Wagner, Mr. Bratic relied on his licensing and valuation expertise to apply sound methods and theories to arrive at opinions in this case that will assist the jury.

# I.    ARGUMENT

## A.    Waymo's Precis Is Untimely

Mr. Bratic served his report nearly three months ago, Waymo deposed him nearly two months ago, and the Court issued an order excluding Mr. Wagner nearly one month ago. During this time, Waymo has taken no action to exclude Mr. Bratic. And the Court recently granted each

party one additional motion in limine, and Waymo chose not to use it on a motion to exclude Mr. Bratic and did not seek leave to file an additional motion in limine at that time.  Now that we are only one week from jury selection, Waymo's precis should be denied as untimely without even reaching the merits.

### B.   Uber's Damages Expert Can Testify Despite Wagner's Exclusion

Waymo claims that "it would be manifestly unfair to let Uber put on a rebuttal expert to testify about damages if Waymo has no expert at all."  Waymo Precis at 2-3.  But Waymo misses the point.  Waymo swung for the fences and chose to pursue a multi-billion dollar damages claim based on an expert report that was nothing more than "grade-school arithmetic" and "did not apply any coherent principle, methodology, theory, or technique, much less one possessing any discernible indicia of reliability."  Dkt. No. 2166 at 3.  Waymo knew the risk when it submitted its damages report, and its exclusion does not make it unfair for Uber's expert to testify.  Indeed, it would send the wrong message to allow a plaintiff to overreach on its damages report knowing that if he fails, then the defendant's expert would be excluded as well.

The two cases that Waymo cites do not support its position.  Both cases address the default under Rule 26(a)(2)(D), which contemplates a pure "rebuttal" expert who "is intended solely to contradict or rebut evidence on the same subject matter identified by another party."  *See Bakst v. Community Memorial Health Sys., Inc.*, 2011 WL 13214315, *27 (C.D. Cal. Mar. 7, 2011) ("Because the testimony Nolte was hired to rebut will not be offered, Nolte may not testify."); *Prado v. Federal Express Corp.*, 2014 WL 4648060, *3 (N.D. Cal. Sept. 17, 2014) ("A witness designated as a rebuttal expert witness, is a witness 'intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness." (citation omitted)).

Here, Mr. Bratic was retained to provide testimony on the issue of damages, and not solely to rebut Mr. Wagner's opinions.  The Court's Case Management Order provided that parties must disclose opening expert reports on issues for which they bear the burden of proof, and that "all other parties must disclose any expert reports on the same issue ('opposition reports')."  Dkt. No. 562 at 1 (emphasis added).  As a result, Uber was entitled to disclose an expert report on the same issue as Waymo—damages—and was not limited to merely rebutting

1    the reports that Waymo served.  As long as the issue of damages remains in the case, Mr. Bratic's

2    testimony should not be excluded even though Mr. Wagner was excluded.

3         In light of Waymo's deficient Rule 26 disclosures and its confusing Offer of Proof of

4    Reasonable Royalty Damages, Uber presently does not know what damages evidence Waymo

5    will attempt to introduce.  *See* Dkt. No. 2253 at 8-9 (Uber Trial Brief).  While Uber has moved

6    Mr. Bratic from the "will-call" to the "may-call" section of its witness list, it will not know

7    whether it will call Mr. Bratic until after Waymo submits its damages evidence.

8         **D.    Mr. Bratic's Expert Testimony Is Proper**

9              1.    *Mr. Bratic is a Highly Qualified Valuation and Licensing Expert*

10        Unlike Mr. Wagner, Mr. Bratic has extensive non-litigation experience valuing

11   intellectual property, including trade secrets.  Mr. Bratic is licensed as a Certified Licensing

12   Professional by Licensing Executives Society of the United States and Canada, reflecting his

13   extensive experience valuing and licensing intellectual property rights.  Mr. Bratic began his

14   career in licensing of intellectual property rights when he was the Chief Financial Officer of

15   Advanced Energy Services Company in 1980, where he regularly negotiated trade secret licenses

16   for manufacturing processes.  In 1983, Mr. Bratic joined PriceWaterhouse, and continued valuing

17   intellectual property during his 17 years there.  In addition, for the last 13 years, Mr. Bratic has

18   taught a course at the University of Houston Law School involving valuation and licensing of

19   trade secrets.  To this day, Mr. Bratic continues to value intellectual property, including trade

20   secrets, for clients within a non-litigation context.

21              2.    *Mr. Bratic Will Not Serve as a Mouthpiece*

22        Mr. Bratic's expert testimony will not simply serve as a mouthpiece for attorney argument

23   or be used to perform simple grade-school arithmetic.  Waymo's Precis focuses almost

24   exclusively on Mr. Bratic's opinion that it would cost no more than $605,000 to independently

25   design-around the asserted trade secrets.  Uber will use fact witnesses to establish this point, and

26   will not offer testimony from Mr. Bratic on this point.  This moots the majority of Waymo's

27   Precis.

28

3.     *Mr. Bratic Can Give Permissible Expert Testimony on Several Topics*

There are several damages issues on which Mr. Bratic can provide expert testimony that would assist the jury.  But the topics Mr. Bratic addresses, and whether Uber even calls him at all, depends on the evidence Waymo submits during its case.  Below are examples concerning the type of expert testimony disclosed in Mr. Bratic's expert report that he could offer in this case.

Reasonable Royalties:  "Opinion testimony of qualified experts" is expressly contemplated as part of a *Georgia-Pacific* analysis.  Mr. Bratic is qualified to offer several opinions with respect to Waymo's proposed reasonable royalty damages, although this will again depend on what evidence and arguments Waymo offers.  For example, Waymo sought a double recovery through Mr. Wagner's testimony by using the unjust enrichment amount as the base royalty and then applying the *Georgia Pacific* factors to increase the amount by 10%, resulting in a 110% royalty.  Based on Mr. Bratic's extensive experience negotiating and valuing trade secrets, he can explain to the jury why it is improper to use the unjust enrichment figure as the starting point.  He can also explain why a 10% increase is not appropriate for this case based on a proper application of the *Georgia Pacific* factors.  Finally, Mr. Bratic can explain to the jury why a rational company would not pay a royalty greater than the cost to independently design around the particular trade secrets—a point on which Mr. Wagner agrees.  *See* Dkt. No. 1786-3 (Wagner Transcript) 118:17-21 ("Q Sir, do you also agree that the cost to independently development (sic) a trade secret serves as an upper limit for the reasonable royalty? MR. EISEMAN: Objection as to form. A I do.").  This maximum amount that a rational business would pay also explains why Mr. Bratic's reasonable royalty figure is the same as the cost for Uber to design around the alleged trade secrets, and is no reason to exclude his reasonable royalty opinion.

Qi Slide:  Mr. Bratic can provide expert testimony on issues relating to the Qi slide, which Waymo is attempting to use as the basis for a multi-billion dollar damages figure.  For example, Mr. Bratic can testify about the financial assumptions underlying the Qi slide and whether they provide a reasonable basis for a valuation expert to estimate future cash flows for a non-existing business, let alone for the alleged trade secrets at issue.  One specific example is the discount rate.  The Qi slide uses a discount rate of 15%, which Mr. Bratic will explain is too low from the

1    perspective of a valuation expert because it fails to account for the significant business risks

2    associated with potential commercialization of fully autonomous vehicles.  Mr. Bratic can also

3    explain how the discount rate affects the dollar figures, the effect of using a higher discount rate,

4    and why a higher discount rate is warranted here.  Finally, Mr. Bratic can discuss the effect that

5    recent events would have on the numbers on the Qi slide.  All of these financial and valuation

6    concepts are beyond the knowledge of an average person and would assist the jury.

7            Saved Development Costs:  Mr. Bratic can also provide expert testimony on Waymo's

8    saved development cost theory.  Mr. Bratic can explain why a licensing and valuation

9    professional would not use the run rate for Uber's entire autonomous vehicle program to calculate

10   cost savings for a discrete trade secret relating to a particular LiDAR component.

11           Apportionment:  Apportionment is also a proper topic on which Mr. Bratic may provide

12   expert testimony, both with respect to Waymo's accelerated development theory and its cost

13   savings model.  For example, the Qi slide purports to value the benefit of accelerating the

14   development of Uber's autonomous vehicle by 1-2 years based on its acquisition of Ottomotto.

15   But that figure does not properly apportion value to the particular trade secrets at issue here from

16   the additional assets of Ottomotto.  Likewise, Mr. Bratic could explain why using the run rate for

17   Uber's entire autonomous vehicle program fails to apportion cost savings to the particular trade

18   secrets at issue.   He can also explain why using the Tyto purchase price to value TS 90 fails to

19   properly apportion value to the other assets acquired in the deal, separate from TS 90.  As part of

20   his apportionment testimony, he can explain how licensing and valuation professionals apportion

21   amounts to ensure that they are valuing the specific intellectual property at issue.

22   **II.    CONCLUSION**

23           For the foregoing reasons, Defendants respectfully request that this Court deny Waymo's

24   Precis.  Unlike Mr. Wagner, Mr. Bratic is a highly qualified valuation and licensing expert with

25   extensive non-litigation experience.  Now that Mr. Wagner has been excluded, Uber moved

26   Mr. Bratic to its "may-call" witness list, reflecting the fact that whether Mr. Bratic testifies (and

27   on what topics) depends on Waymo's case-in-chief.  At the very least, it is premature to exclude

28   Mr. Bratic before Waymo has even submitted its evidence.

1    Dated: November 22, 2017            MORRISON & FOERSTER LLP
                                         BOIES SCHILLER FLEXNER LLP
2                                        SUSMAN GODFREY LLP

3

4                                   By:  /s/ William Christopher Carmody
                                         WILLIAM CHRISTOPHER CARMODY
5
                                         Attorneys for Defendants
6                                        UBER TECHNOLOGIES, INC. and
                                         OTTOMOTTO LLC
7

**ATTESTATION OF E-FILED SIGNATURE**

I, Arturo J. González, am the ECF User whose ID and password are being used to file this Opposition to Waymo's Precis For Leave to File a Motion to Exclude Defendants' Damages Expert Walter Bratic.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that William Christopher Carmody has concurred in this filing.

Dated:  November 22, 2017                          /s/ Arturo J.  González
                                                            ARTURO J. GONZÁLEZ