QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa J. Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　　Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JURY INSTRUCTION BASED ON SPOLIATION**<br><br>Judge: The Honorable William Alsup<br><br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL** |

# TABLE OF CONTENTS

Page

I. SANCTIONS ARE APPROPRIATE BECAUSE DEFENDANTS INTENTIONALLY DESTROYED DOCUMENTS THAT THEY WERE OBLIGATED TO PRESERVE ........................................................................................... 1

    A. Defendants Argued Repeatedly To This Court That They Anticipated This Action, They Should Not Now Be Permitted To Change Their Tune ....................... 1

        1. Potential Litigation Parties Are Obliged To Preserve Documents When Litigation Is "Reasonably Foreseeable" ............................................................ 1

        2. Defendants' Document Preservation Obligations Arose When They Anticipated This Litigation In January 2016 ................................................. 3

    B. Defendants Destroyed Potential Evidence With The Requisite Intent ....................... 5

        1. Defendants Acted With The Requisite Intent ............................................... 7

    C. An Adverse Inference Is An Appropriate Sanction For Defendants Spoliation ................................................................................................................. 11

        1. The Destroyed Evidence Was Directly Relevant To Waymo's Claims........... 12

        2. Defendants Acted In Bad Faith ...................................................................... 13

        3. Defendants Had Access To Levandowski's Laptops ..................................... 14

II. WAYMO'S MOTION IS TIMELY .................................................................................. 14

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Accurso v. Infra-Red Services, Inc.*,
 2016 WL 930686 (E.D. Pa. Mar. 11, 2016) .............................................................................. 7

*Alabama Aircraft Indus., Inc. v. Boeing Co.*,
 319 F.R.D. 730 (N.D. Ala. 2017) ....................................................................................... 9, 10

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
 888 F. Supp. 2d 976 (N.D. Cal. 2012) ............................................................................. 2, 3, 9

*CAT3, LLC v. Black Lineage, Inc.*,
 164 F. Supp. 3d 488 (S.D.N.Y. 2016) ..................................................................................... 7

*Erhart v. BofI Holding, Inc.*,
 2016 WL 5110453 (S. D. Cal. Sep. 21, 2016) ...................................................................... 7, 8

*Hsueh v. New York State Dep't of Fin. Servs.*,
 2017 WL 1194706 (S.D.N.Y. Mar. 31, 2017) ......................................................................... 7

*Hynix Semiconductor Inc. v. Rambus Inc.*,
 645 F.3d 1336 (Fed. Cir. 2011) ................................................................................................ 2

*Hynix Semiconductor Inc. v. Rambus Inc.*,
 897 F. Supp. 2d 939 (N.D. Cal. 2012) ..................................................................................... 2

*ILWU-PMA Welfare Plan Bd. of Trustees & ILWU-PMA Welfare Plan v. Connecticut
 Gen. Life Ins. Co.*,
 2017 WL 345988 (N.D. Cal. Jan. 24, 2017) ........................................................................ 1, 4

*Internmatch, Inc. v. Nxtbigthing, LLC*,
 2016 WL 491483 (N.D. Cal. Feb. 8, 2016) .................................................................. 6, 9, 10

*Leon v. IDX Sys. Corp.*,
 464 F.3d 951 (9th Cir. 2006) ............................................................................................ 14, 15

*Lexpath Technologies Holdings Inc. v. Welch*,
 2016 WL 4544344 (D. N.J. Aug. 30, 2016) ............................................................................. 7

*Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*,
 2016 WL 1105297 (S.D. Fla. Mar. 22, 2016) .......................................................................... 9

*Micron Technology, Inc. v. Rambus Inc.*,
 645 F.3d 1311 (Fed. Cir. 2011) ...................................................................................... passim

*Mondragon v. Fernandez*,
 2010 WL 1992536 (N.D. Cal. May 18, 2010) ....................................................................... 16

*Moody v. CSX Transportation, Inc.*,
 2017 WL 4173358 (W.D.N.Y. Sept. 21, 2017) ............................................................. 7, 8, 12

*Nuvasive, Inc. v. Madsen Med., Inc.*,
 2016 WL 305096 (S.D. Cal. Jan. 26, 2016) ........................................................... 9, 10, 11, 12

*Robert H. Yoe, III, et al., v. Crescent Sock Company, et al.*,
   2017 WL 5479932 (E.D. Tenn. Nov. 14, 2017) ............................................................................ 7

*Siebert v. Gene Security Network, Inc.*,
   2014 WL 5808755 (N.D. Cal. Nov. 6, 2014) ............................................................................ 16

*World Courier v. Barone*,
   2007 WL 1119196 (N.D. Cal. Apr. 16, 2017) ........................................................................... 3

**Rules and Regulations**

Fed. R. Civ. P. 37(e) .............................................................................................................. 3, 6, 8

**Additional Authorities**

*The Information, Uber Fired Lawyers Amid Debate Over Data Retention Policy* (May 10,
   2017) https://www.theinformation.com/uber-fired-lawyers-amid-debate-over-data-
   retention-policy (last accessed Nov. 21, 2017) ........................................................................ 11

1    Waymo has shown that Defendants Uber and Ottomotto intentionally destroyed reams of
2 evidence directly relevant to Waymo's trade secret misappropriation claims. The evidence Defendants
3 destroyed was directly relevant to Waymo's claims. This destroyed evidence was deleted despite
4 Defendants actually anticipating that Waymo would bring the trade secret misappropriation claims it
5 asserts here. Defendants themselves have argued they anticipated this litigation this throughout the
6 case. Defendants also do not deny that this evidence has been lost. For the most part, they do not even
7 deny they deleted it intentionally. Even the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nevertheless, Defendants ask that the Court ignore
11 the record and credit, instead, their post-hoc rationalizations and conjecture. The Court should reject
12 Defendants' dubious assertions and grant Waymo's request for an adverse inference instruction due to
13 Defendants' spoliation of evidence.

I.  **SANCTIONS ARE APPROPRIATE BECAUSE DEFENDANTS INTENTIONALLY DESTROYED DOCUMENTS THAT THEY WERE OBLIGATED TO PRESERVE**

   A.  **Defendants Argued Repeatedly To This Court That They Anticipated This Action, They Should Not Now Be Permitted To Change Their Tune**

       1.  Potential Litigation Parties Are Obliged To Preserve Documents When Litigation Is "Reasonably Foreseeable"

Defendants do not dispute that potential litigants "have a duty to preserve relevant information when litigation is reasonably foreseeable." *ILWU-PMA Welfare Plan Bd. of Trustees & ILWU-PMA Welfare Plan v. Connecticut Gen. Life Ins. Co.*, 2017 WL 345988, at *4 (N.D. Cal. Jan. 24, 2017) (citation omitted); *see also id.* ("Our court of appeals has yet to elucidate the specific subject of spoliation based on failure to preserve relevant information prior to reasonably foreseeable litigation. In the meantime, this order looks to non-binding case law for further guidance."); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (the duty to preserve evidence is triggered as soon as a potential claim is identified). They also do not dispute that spoliation occurs "when one destroys or materially alters evidence or fails to preserve property for another's use as evidence in pending or reasonably foreseeable litigation," *Hynix*

*Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 975 (N.D. Cal. 2012), and litigation need not be "imminent, or probable without significant contingencies" to trigger a preservation obligation, *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1345 (Fed. Cir. 2011); *see also Apple*, 888 F. Supp. 2d at 990 ("There is no question that the duty to preserve relevant documents "may arise even before litigation is formally commenced."); Dkt. 2241 [Opp. Br.], at 6-7.) Instead, Defendants contend that "a party's awareness of potential litigation or the general potential for a claim such as trade secret misappropriation does not trigger the preservation duty, while awareness of a specifically identified claim, such as the misappropriation of particular trade secrets, could trigger the obligation to preserve." (Dkt. 2241 [Opp. Br.], at 7-8.) They also contend that "[t]he activities Waymo sets forth in its motion do not rise to the level of the developments that both the *Hynix* court and the Federal Circuit in *Micron* found sufficient to make litigation 'reasonably foreseeable.'" (*Id.* at 8; *see also id.* at 10-13.) This argument fails.

None of the authorities Defendants cite require a Defendant to have identified the potential trade secret misappropriation claims at the level of granularity – the "*particular trade secrets*" (*id.* at 8) – that Defendants propose. Instead, as Defendants acknowledge (*id.* at 7), "[w]hen litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Micron Technology, Inc. v. Rambus Inc.,* 645 F.3d 1311, 1320 (Fed. Cir. 2011); *id.* at 1325 ("The important inquiry is not whether a particular document made litigation reasonably foreseeable, but whether the totality of the circumstances as of the date of document destruction made litigation reasonably foreseeable."). In *Micron*, for example, the Federal Circuit affirmed the district court's holding that litigation was reasonably foreseeable under the specific facts of that case, "no later than when [a patent-holder's vice president in charge of licensing and litigation strategy] had articulated a time frame and a motive for implementation of [the company's] litigation strategy" to file claims targeting accused patent infringers to establish a royalty rate and validity of the company's patents. *Id.* at 1326. In *Apple*, in light of the particular facts at issue there, the court reasoned that Apple's pre-filing presentation to Samsung, which summarized Apple's "specific patent infringement claims against specific Samsung products," would "put a reasonable party on notice of a likelihood of

litigation," thereby giving rise to Samsung's document preservation obligations. *Apple*, 888 F. Supp. 2d at 990-91. *Apple* and *Micron* thus require courts to undertake a fact-specific inquiry into whether litigation was reasonably foreseeable under the circumstances; they do not require potential trade secret misappropriation defendants to have identified the "particular trade secrets" over which they may potentially be sued, as Defendants suggest.[1]

### 2. Defendants' Document Preservation Obligations Arose When They Anticipated This Litigation In January 2016

The record makes clear that, in January 2016, Defendants anticipated "the specific possibility that Google could bring claims arising out of Uber's acquisition of [Ottomotto]." (*See, e.g.,* Dkt. 2197-4 [Waymo Br.] at 3 (quoting the J. Suhr Decl.); *see also id.* at 4 (citing Gardner testimony that Defendants "recognized from the outset that there was a tangible risk that Google would file litigation … if the [acquisition] Transaction was consummated").) The anticipated claims related to Uber's acquisition of Ottomotto. Indeed, any suggestion that Defendants did not actually foresee this action is contradicted by Defendants' own arguments before this Court. (*See* Dkt. 2197-4 [Waymo Br.], at 3.) For example, Defendants argued repeatedly in opposition to Waymo's motion to compel the Stroz Report that "the facts in the record establish that Uber and Ottomotto reasonably anticipated litigation would be commenced by Google." (*Id.* (quoting Dkt. 369 [Uber's Mot. to Compel Opp), at 7.) Indeed, as Magistrate Judge Corley recognized, Defendants have repeatedly argued that very fact to this Court: "Uber has told me, since January 2016, they thought this litigation would be coming so everybody knew this litigation would be coming, and sure enough, here it is." (*Id.* (quoting Dkt. 1414 [Aug. 28 Hr'g Tr.], at 82:4-7).) As Defendants anticipated this litigation in

---

[1] Defendants also suggest that Waymo improperly applies an "anticipation" standard distinct from the applicable "foreseeability" standard. (Dkt. 2241 [Opp. Br.], at 9.) This argument purports to create a distinction without a difference. Waymo cites evidence – which Defendants do not dispute – that Defendants actually anticipated this very action (Dkt. 2197-4 [Waymo Br.], at 2-7) to show that the claims asserted by Waymo here were "reasonably foreseeable" in January 2016 such that Defendants were under an obligation to preserve documents starting then. *See Hynix,* 897 F. Supp. 2d at 977; *World Courier v. Barone*, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2017) (the duty to preserve evidence applies when a party reasonably should know that the evidence "may be relevant to anticipated litigation") (internal quotations and citations omitted). *See also* Fed. R. Civ. P. 37(e), Advisory Committee Note to 2015 Amendment ("the duty as it is established by case law … uniformly holds that a duty to preserve … arises when litigation is reasonably anticipated.").

January 2016, their obligation to preserve documents arose at that time – and their subsequent intentional destruction of evidence to seek an advantage in this action constitutes spoliation. *See ILWU-PMA Welfare Plan Bd. of Trustees.*, 2017 WL 345988, at *4 ("Spoliation is the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.")

As shown in Waymo's opening brief, contemporaneous evidence supports a conclusion that this action was not merely "reasonably foreseeable" but actually anticipated by Defendants. (*See* Dkt. 2197-4 [Waymo Br.], at 3-7.) Tellingly, Defendants do not argue that they did not anticipate Waymo's claims as a matter of fact. They also do not dispute that: Uber "contemplated the specific possibility that Google could bring claims" and sought legal advice "as to [their] potential exposure," and that counsel provided analysis or advice "in anticipation of litigation, regarding due diligence for potential acquisition of Ottomotto" (*id.* at 3-4); Ottomotto also retained litigation counsel to advise as to "the risk of potential litigation by Google" and recognized "from the outset that there was a tangible risk that Google would file litigation" (*id.* at 4)[2]; Uber and Ottomotto together retained Stroz Friedberg to "███████████████████████████████████████████████████████████████████████████████████████████" and Uber's own Chief Legal Advisor testified under oath that ███████████████████████████████████████████████████"[3] (*id.* at 5); they

---

[2] Defendants' contention that the *Hynix* court "rejected" that the "choice to place a litigator on its licensing team" was "enough to support a finding of reasonable foreseeability" (Dkt. 2241 [Opp. Br.], at 10) is also misplaced. Defendants did not merely "place a litigator" on their teams: they retained litigation counsel to seek advice regarding their exposure to the claims brought by Waymo here. (Dkt. 2197-4 [Waymo Br.], at 3-4.) It is also of no import that the *Hynix* court did not credit arguments relating to an abstract understanding that a particular industry was "very litigious." (Dkt. 2241 [Opp. Br.], at 11, 12.) Defendants here foresaw "a tangible risk that Google would file litigation" against them. (Dkt. 2197-4 [Waymo Br.], at 4 (quoting J. Gardner Decl.).)

[3] Defendants' post-hoc reframing of Yoo's testimony as "reflect[ing] [her] understanding of the highly competitive marketplace" (Dkt. 2241 [Opp. Br.], at 11) is argument, not evidence.

1    negotiated their respective indemnification obligations in the event of ███████
2    ████████████████████████████████████████████████████████████████████████
3    ██████████████████████████████████████████████████████████ (*id.* at 6 (quoting
4    the parties' February 22 term sheet)); and they negotiated a joint defense agreement "█
5    ████████████████████████████████████████████████████████████████████████
6    ████████████████" (*id.* at 7 (quoting the agreement)).

7    Instead, Defendants argue that none of these actions standing alone "***establish[es]*** a duty to
8    preserve." (Dkt. 2241 [Opp. Br.], at 10-13 (emphasis added).) Even if Defendants' interpretation
9    of the applicable authorities is correct, which it is not, their argument is entirely beside the point.
10   Waymo does not contend that these individual actions "trigger[]" Defendants' document
11   preservation obligations. Instead, Waymo cites these steps taken by Defendants starting in January
12   2016 as "contemporaneous evidence" that Defendants actually "foresaw litigation over the very
13   claims brought by Waymo here no later than January 2016 and throughout the period from January
14   2016 until the filing of Waymo's complaint." (Dkt. 2197-4 [Waymo Br.], at 2-3.) This is more than
15   sufficient to show that Defendants' document preservation obligations arose in January 2016.

16   **B.    Defendants Destroyed Potential Evidence With The Requisite Intent**

17   As discussed in Waymo's opening brief, spoliation sanctions are appropriate here because
18   the record is replete with examples of Defendants intentionally destroying potentially relevant
19   documents and files long after they had notice that these documents were potentially relevant to a
20   litigation with Waymo. (Dkt. 2197-4 [Waymo Br.], at 2-3.) Defendants contend that sanctions may
21   not be applied because they did not act with the intent to deprive Waymo of use of the evidence in
22   this action. (Dkt. 2241 [Opp. Br.], at 13.) They also note that the evidence at issue here is
23   electronically-stored information ("ESI") such that Federal Rule of Civil Procedure 37(e) governs,
24   and Rule 37(e)(2)'s requirement of a finding that the information was lost with the intent to prevent
25   its use in litigation is necessary before an adverse inference instruction can be given here. (*Id.*)

26   As an initial matter, Defendants make much of their argument that Waymo does not attempt
27   to satisfy the requirements of Rule 37(e), "instead largely ignoring Rule 37(e) and relying on
28   authority that predates the 2015 amendments to the rule." (*Id.* at 13.) But Waymo's brief references

both Rule 37(e) and the court's inherent authority (Dkt. 2197-4 [Waymo Br.], at 15-16) and notes that courts undertake similar inquiries under each source of authority when determining the appropriate spoliation sanction. (*Id.* at 21). Waymo accepts that Rule 37(e) is applicable to spoliated ESI. But, asserting that spoliation sanctions could also be imposed pursuant to the Court's inherent authority is not "fatal to Waymo's motion" (Dkt. 2241 [Opp Br.], at 5).[4] Moreover, it is simply not the case that the considerations discussed in Waymo's brief have no bearing on the Court's analysis here. For example, courts still refer to older cases when determining both whether a spoliating party had the requisite intent and whether an adverse inference instruction is the appropriate remedy under Rule 37(e)(2). *See, e.g.*, *Moody v. CSX Transportation, Inc.*, 2017 WL 4173358, at *15 (W.D.N.Y. Sept. 21, 2017) (inferring "intent to deprive" frame of mind from defendants' destruction of evidence that was "highly relevant … to the determination of liability" when they knew they had a duty to preserve

---

[4] Rule 37(e) is relatively new and courts still grapple with its impact on their inherent judicial authority to impose sanctions. *See, e.g.*, *Internmatch, Inc. v. Nxtbigthing, LLC*, 2016 WL 491483, at *4, n.6 (N.D. Cal. 2016), *appeal dismissed* (June 10, 2016) (declining to decide "[w]hether a district court must now make the findings set forth in Rule 37 before exercising its inherent authority to impose sanctions for the spoliation of electronic evidence" where defendant's conduct "was willful and in bad faith, and … defendants 'acted with the intent to deprive another party of the information's use in the litigation'" under Rule 37(e)(2)); *Hsueh v. New York State Dep't of Fin. Servs.*, 2017 WL 1194706, at *4 (S.D.N.Y. Mar. 31, 2017) (holding that Rule 37(e) does not apply where the evidence was destroyed intentionally, as opposed to where a party "failed to take reasonable steps to preserve it"); *Robert H. Yoe, III, et al., v. Crescent Sock Company, et al.*, 2017 WL 5479932, at *8 (E.D. Tenn. Nov. 14, 2017) ("Sanction authority for the loss of ESI may also derive from other sections of Rule 37 and possibly from the inherent power of a court."); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 498 (S.D.N.Y. 2016) (sanctions would be available under the court's inherent authority if Rule 37(e) did not apply because "[w]here exercise of inherent power is necessary to remedy abuse of the judicial process, it matters not whether there might be another source of authority that could address the same issue"). In addition, numerous district courts considering spoliation sanctions under the new Rule have questioned the practical impact of the rule change, suggesting that older authority still warrants consideration. *See, e.g.*, *Lexpath Technologies Holdings Inc. v. Welch*, 2016 WL 4544344 at *4 (D. N.J. 2016) (the new Rule "does not seem to have altered the burden on the party moving for sanctions in this Circuit, as any adverse inference will requires a showing that ESI was destroyed in 'bad faith.'") (citing *Accurso v. Infra-Red Services, Inc.,* 2016 WL 930686, at *3, n. 6 (E.D. Pa. 2016). Waymo concedes there is authority that holds, in keeping with the Advisory Comment Note, that new Rule 37(e) "forecloses reliance on inherent authority … to determine when certain measures should be used" such that federal courts may not issue sanctions for negligent spoliation of ESI pursuant to their inherent authority (Dkt. 2241 [Opp. Br.], at 17). But, in this context, Waymo's reference to the Court's inherent authority, and citation of cases that precede the new rule, was neither improper nor indicative of an attempt to "ignore" the new Rule, as Defendants suggest (Dkt. 2241 [Opp. Br.], at 5).

that data). Indeed, Defendants rely almost entirely on older cases to make their own argument that the court has the discretion not to issue an adverse inference instruction under Rule 37(e)(2) even after a finding of the requisite intent. (*Id.* at 18.) The only post-2015 case Defendants cite, *Erhart v. BofI Holding, Inc.*, 2016 WL 5110453 (S. D. Cal. 2016), does not even mention Rule 37(e)(2) and relies on the test previously used by courts under an inherent authority analysis. (*See* Dkt. 2241 [Opp Br.], at 18.) The key question here is whether Defendants intentionally destroyed relevant evidence to gain an advantage in this litigation after it was reasonable foreseeable. Because there is ample evidence that they did, an adverse inference instruction is appropriate and should be issued.

1. <u>Defendants Acted With The Requisite Intent</u>

Spoliation sanctions are warranted here because Defendants intentionally destroyed reams of relevant evidence to seek an advantage in this very action for months after they foresaw this litigation with Waymo. (Dkt. 2197-4 [Waymo Br.], at 2-7.) Indeed, as shown in Waymo's opening brief, the record is replete with evidence that Defendants and their executives—including Travis Kalanick, Anthony Levandowski, and Nina Qi—intentionally destroyed hundreds of text messages and other communications, including the Tyto email archives, and Ottomotto's Slack collaboration platform, and Ottomotto founder Levandowski destroyed five Drobo discs containing "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬." (*Id.* at 7-14; 17-18.)

Defendants do not deny that this deleted evidence was lost and "cannot be restored or replaced through additional discovery." (*See* Fed. R. Civ. P. 37(e).) Instead, they contend that sanctions are inappropriate here because Waymo "fails to show that any of the individuals it accuses of spoliation acted with the intent to deprive Waymo of the use of the destroyed documents in this litigation." (Dkt. 2241 [Opp. Br.], at 14.) On the contrary: Waymo repeatedly stressed that Defendants intentionally destroyed potentially relevant documents and files "at a time when [they] knew they faced litigation with Waymo." (Dkt. 2197-4 [Waymo Br.], at 18; *see also id.* at 7-14.) Waymo also argues that the "willful destruction of hundreds of documents and communications" at such time "demonstrates Defendants' culpable frame of mind." (*Id.* at 18.)

Admittedly, Waymo's "culpable frame of mind" terminology is drawn from older authority discussing the availability of sanctions prior to the revisions to Rule 37(e). (*See id.*) But

| | |
|---|---|
| 1 | Defendants' "frame of mind" when destroying the evidence at issue is unquestionably relevant to |
| 2 | the Court's Rule 37(e) "intent" analysis. And, courts have held that a party acted with the "intent to |
| 3 | deprive another party of the information's use in the litigation" under Rule 37(e) by inferring an "intent |
| 4 | to deprive" from a party's intent to destroy relevant evidence at a time when the party knew it was under |
| 5 | a duty to preserve it. *See, e.g.*, *Moody v. CSX Transportation, Inc.*, 2017 WL 4173358, at *15 (W.D.N.Y. |
| 6 | Sept. 21, 2017) (inferring "intent to deprive" frame of mind from defendants' destruction of evidence |
| 7 | that was "highly relevant … to the determination of liability" when they knew they had a duty to preserve |
| 8 | that data); *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017) (inferring |
| 9 | intent to deprive another party of evidence where evidence was deleted or destroyed "at a time when |
| 10 | [defendant] should have anticipated litigation…."). |
| 11 | Indeed, even Defendants' cases acknowledge the interplay between Rule 37(e)'s "intent to |
| 12 | deprive" and the spoliating party's frame of mind. In *Living Color Enterprises, Inc. v. New Era* |
| 13 | *Aquaculture, Ltd.*, 2016 WL 1105297 (S.D. Fla. 2016), for example, the court declined to provide an |
| 14 | adverse inference instruction absent "evidence of either 'intent to deprive' or bad faith" and reasoned |
| 15 | that "the 'intent to deprive' standard in Rule 37(e)(2) may very well be harmonious with the 'bad faith' |
| 16 | standard previously established by the Eleventh Circuit." *Id.* at *6, n.6. In *Nuvasive, Inc. v. Madsen* |
| 17 | *Med., Inc.*, 2016 WL 305096 (S.D. Cal. 2016), the court noted that reconsideration of an adverse |
| 18 | inference motion under the new rule would not prejudice defendants because "even under the standard |
| 19 | applied by the Court in initially ruling upon Defendants' motion for sanctions, intent was relevant. One |
| 20 | of the factors considered by the Court was the degree of fault of the party who altered or destroyed the |
| 21 | evidence." *Id.* at *3 (*citing Apple*, 888 F. Supp. 2d at 992); *see also Internmatch, Inc. v. Nxtbigthing,* |
| 22 | *LLC*, 2016 WL 491483, at *4, n.6 (N.D. Cal. 2016) (declining to decide whether a court "must now |
| 23 | make the findings set forth in Rule 37 before exercising its inherent authority to impose sanctions for |
| 24 | the spoliation of [ESI]" because the conduct gave rise to finding both that defendants acted "willful[ly] |
| 25 | and in bad faith" and "with the intent to deprive another party of the information's use in the litigation"). |
| 26 | Here, Defendants intentionally deleted or destroyed hundreds of communications and other files |
| 27 | to seek an advantage after they foresaw litigation with Waymo. (Dkt. 2179-3 [Waymo Br.], at 7-14.) |
| 28 | Uber CEO Travis Kalanick deleted hundreds of text message communications with Levandowski. (*Id.*. |

| | |
|---|---|
| 1 | at 7-8.) So too did Nina Qi – who admitted that she deleted her communications with Levandowski at |
| 2 | Levandowski's request. (*Id.* at 8-9.) Defendants also deleted numerous files from the iPhone |
| 3 | Levandowski used to communicate with other Ottomotto executives and Uber, Ottomotto's Slack |
| 4 | collaboration platform, and all of the Tyto email accounts and archives were also destroyed. (*Id.* at |
| 5 | 17.) In addition, Levandowski also claims to have destroyed Drobo 5D disks containing " |
| 6 | |
| 7 | ." (*Id.* at 17-18.) Defendants destroyed this evidence intentionally, long after they were on notice |
| 8 | that it was relevant to this litigation with Waymo. (*Id.* at 18.) And, the destroyed evidence was |
| 9 | directly relevant to the claims at issue here. (*Id.* at 19-20.) This is more than sufficient to support |
| 10 | a finding that Defendants acted with the requisite level of intent. *See Internmatch,* 2016 WL 491483, |
| 11 | at *10 (requisite intent shown by evidence that defendant intentionally discarded electronic devices |
| 12 | storing relevant document); *Alabama Aircraft Indus,* 319 F.R.D. 730, 746 (N.D. Ala. 2017) (inferring |
| 13 | intent to deprive another party of evidence where evidence was deleted or destroyed "at a time when |
| 14 | [defendant] should have anticipated litigation related to the terminated MOA…."). |
| 15 | Defendants argue that sanctions are not available under Rule 37(e) for Kalanick's deletions |
| 16 | of hundreds of text messages exchanged between Kalanick and Levandowski because Kalanick's |
| 17 | phone "was set to automatically delete messages after 30 days." (Dkt. 2241 [Opp. Br.], at 14.) And |
| 18 | other than Kalanick's own self-serving claims, and the testimony of his hired expert (*see* Dkt. 2241 |
| 19 | [Opp. Br.], at 14), there is no evidence that these messages were destroyed innocently. Tellingly, there |
| 20 | is no other evidence that Kalanick's deletions of these text messages were unrelated to this action, and |
| 21 | Defendants submit none here. Instead, ample evidence indicates that the messages were deleted |
| 22 | intentionally – including the evidence that Levandowski asked Uber executives and others to delete their |
| 23 | communications with him. (Dkt. 2179-3 [Waymo Br.], at 18.) Moreover, Kalanick has still failed to |
| 24 | substantiate his claim that his phone was set to an "auto-delete" function. even though, in her August 17 |
| 25 | order, Judge Corley placed the onus on Kalanick to provide Waymo with confirmation of his "auto- |
| 26 | delete" claim. (Dkt. 1176 at 1.) As Waymo's forensic expert testifies, however, the so-called |
| 27 | "Configuration" files produced by Uber do not support a conclusion that such auto-deletion took place. |
| 28 | (Ex. 1 [Schroeder Decl.], ¶¶ 7-9.) Instead, seven of the twenty files received from Uber were "effectively |

empty" (*id.* at ¶ 9), and others are "clearly not related to the message retention concept" (*id.* at ¶ 8). Uber's expert, Mr. Vogel, states in his declaration that "examiners need experience in order to locate the relevant portion of each plist file." (Dkt. 2243-2, at ¶ 5.) Tellingly, he does not point to those portions of the plist files that deems relevant here. Instead, he refers vaguely to an integer value of "the field" (*id.* at ¶ 6) – a field that may not even have an integer value if Kalanick's phone was set to keep messages "forever." (Ex. 1 [Schroeder Decl.], ¶¶ 14-16.) In other words, the evidence provided by Uber does not support Defendants' contention that Kalanick's text messages were destroyed automatically and innocently on an on-going basis – leaving instead only the exceedingly relevant fact that hundreds of communications between Kalanick and Levandowski sent and received while Uber and Ottomotto were negotiating their acquisition and indemnification deal were deleted by Uber.[5] (Dkt. 2179-3 [Waymo Br.], at 20.) Indeed, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Defendants' post-hoc attempts to explain the destruction of evidence by Qi, Levandowski and Ron similarly fails. First, even crediting their argument that a sophisticated Uber executive intentionally deleted her all of her communications with Levandowski merely because he asked her to do so (Dkt. 2241 [Opp. Br.], at 15-16), Defendants cite no evidence to support their contention that Levandowski's request, coming as it did at a time when he and other Ottomotto and Uber executives anticipated this very action, was motivated by his innocent "aware[ness] of the confidential nature of these business discussions, which would logically have motivated him to minimize recorded information that could

---

[5] Waymo erred in suggesting, in a hypothetical alternative argument (Dkt. 2179-3 [Waymo Br.], at 19), that an adverse inference instruction could be issued for a negligent failure to suspend its ordinary document retention practices. But this is only relevant if the Court credits Kalanick's entirely unsupported contention that the missing text messages were deleted as a result of a purported auto-delete function completely unrelated to any attempt to delete relevant documents.

negatively impact the negotiations" (*id.*). Defendants also cite no evidence in support of their conjecture that Ron and Levandowski were merely taking precautionary steps in a "highly secretive, competitive" field when they deleted messages, or deleted the Drobo disks or the Slack site (*id.*) despite anticipating Waymo's trade secret misappropriation claims.

As to the destruction of the Tyto email archives, Waymo shows that Ottomotto intentionally caused " ███████████████████████████████ ███████████████ but destroyed those records even though they included potential communications regarding confidential Google information that would be directly relevant to Waymo's trade secret misappropriation claims. (Dkt. 2179-3 [Waymo Br.], at 12-13.) In response, Defendants cite only the self-serving testimony of Ognen Stojanovski (Dkt. 2241 [Opp. Br.], at 16-17) – a close friend of Levandowski, who was aware of Levandowski's involvement with Tyto, and efforts to keep that involvement secret, during the time period he was ostensibly negotiating with Levandowski about the Ottomotto-Tyto deal and the disposition of incriminating Tyto emails. (*See* Dkt. 2179-3 [Waymo Br.], at 13, n 4.) Further, Defendants provide no credible explanation whatsoever as to why the Tyto acquisition deal was structured to exclude Tyto's email archives – which would have been useful for Ottomotto's ongoing work with Tyto's Owl sensor – at a time when Waymo's trade secret misappropriation claims were anticipated. Similarly, Defendants provide no reasonable explanation as to why Ottomotto intentionally destroyed its Slack collaboration platform (Dkt. 2241 [Opp. Br.], at 16-17) – a platform that Waymo showed they used to shield communications from retention after January 2016 (Dkt. 2179-3 [Waymo Br.], at 12). There is more than sufficient evidence to find that Defendants acted with the requisite level of intent to deprive Waymo of relevant evidence. *Moody v. CSX Transportation, Inc.*, 2017 WL 4173358, at *15.

C. **An Adverse Inference Is An Appropriate Sanction For Defendants Spoliation**

An adverse inference jury instruction is the appropriate sanction for Defendants' intentional spoliation of documents and files relevant to this action. (Dkt. 2179-3 [Waymo Br.], at 20-22.) Indeed, as Defendants note, Rule 37(e)(2) expressly provides that sanctions, including an adverse inference jury instruction, are appropriate following the intentional destruction of evidence to deprive another party of its use in litigation; dismissal or the entry of a default judgement is also permissible. (Dkt. 2241 [Opp.

1  Br.], at 17-18; *see also* Dkt. 2179-3, [Waymo Br.], at 15.)  Defendants' caution that an adverse inference
2  instruction "should not be 'imposed casually'" (Dkt. 2241 [Opp. Br.], at 18 (citation omitted)) and is
3  not appropriate here.  Their arguments are unavailing.

### 1. The Destroyed Evidence Was Directly Relevant To Waymo's Claims

As discussed more fully in Waymo's opening brief, the evidence destroyed by Defendants was directly relevant to Waymo's claims.  (Dkt. 2179-3 [Waymo Br.], at 19-20.)  Kalanick, Qi, Levandowski, and Ron deleted hundreds of text message communications sent and received while Uber and Ottomotto were negotiating the terms of the acquisition transaction and the scope of Uber's indemnification of Ottomotto against Google's trade secret misappropriation claims.  (*Id.* at 20.)  The deleted Tyto emails date from the same period.  (*See* Dkt. 2179-4 [Waymo Br.], at 22.)  Defendants do not deny this.  Instead, they provide only self-serving conjecture that the spoliated evidence "would have involved contract terms and business discussions, and would not have been relevant to Waymo's claim that Uber received and used Waymo's trade secrets."  (Dkt. 2241 [Opp. Br.], at 19, 20.)  Defendants' contention that there is no evidence from deposition testimony or Uber's production indicating that the text messages contained information supporting Waymo's claims is equally baseless – not least because the difficulty in extrapolating the contents of spoliated evidence from other evidence is a key reason why courts presume that the destroyed evidence is unfavorable to the party responsible for its destruction.  (*See* Dkt. 2179-3 [Waymo Br.], at 19 (citing cases.).)  And, Ottomotto and Tyto witnesses could provide no credible reason why Tyto's archives were destroyed.  (*See id.* at 14.)

Similarly, the Drobo disks deleted by Levandowski contained "█████████ █████████████████████████████████████████████████████████████████████."  (*Id.* at 10, 19-20.)  The disks contained ███████████████████████████████ ████████████████████████████████  (*Id.*)  Defendants do not dispute the contents of these disks.  Instead, they contend that the Drobo disks "were destroyed before Mr. Levandowski joined Uber and therefore cannot reflect evidence about the central matter in this case—whether Waymo's trade secrets were misappropriated by Uber."  (Dkt. 2241 [Opp. Br.], at 19.)  But Ottomotto is a Defendant.  The Drobo disks were purportedly found by Levandowski at a time when he and Ron were running Ottomotto and working on Ottomotto's LiDAR technology from

1   Levandowski's home.  (Dkt. 2179-3 [Waymo Br.], at 10 (citing Ron's deposition testimony.)  And,
2   in any event, Kalanick encouraged their destruction.  (*See* Dkt. 2179-3 [Waymo Br.], at 10 (quoting
3   Stroz report note that Kalanick "told Levandowski to "do what [he] need[ed] to do."  Levandowski
4   understood this statement to mean that Kalanik [*sic*] wanted Levandowski to destroy the disks…").)
5   Whether the material on those disks was accessed, used, printed, shared, or saved to another
6   Ottomotto device is obviously central to Waymo's claims.  Further, given that elsewhere ███████
7   ███████████████████████████████ (*see id.* (citing Uber Expedited Rog No. 17 Response);
8   *see also* Dkt. 2084 [Uber Supp. Order to Show Cause Opp.], at 7 ("██████████████████
9   ██████████████████████████████")) it is also disingenuous of them to
10  contend here that the disks would be "at the very most, cumulative of other evidence that Waymo
11  already has."  (Dkt. 2241 [Opp. Br.], at 20.)

        2.       <u>Defendants Acted In Bad Faith</u>

13        Waymo showed that Defendants acted in bad faith because they not only intentionally destroyed
14  evidence but also repeatedly reminded each other to do so for months after they anticipated litigation
15  with Waymo to cover their tracks.  (Dkt. 2179-3 [Waymo Br.], at 21.)  Such intentional destruction of
16  evidence by parties under preservation obligations demonstrates bad faith.  *See, e.g.*, *Leon v. IDX Sys.
17  Corp.*, 464 F.3d 951, 959 (9th Cir. 2006); *Micron Tech.*, 645 F.3d at 1326.  Defendants do not deny
18  that most of the destroyed evidence was deleted intentionally, and their contention that Qi,
19  Levandowski, and Ron did not act in bad faith is entirely conclusory.  (*See* Dkt. 2241 [Opp. Br.], at
20  20-21.)  As to Kalanick's emails, Defendants contend only that he "acted in good faith to help
21  recover these [deleted] text messages" (*id.* at 21) after he was required to do so in connection with
22  party discovery in this action.  Finally, Defendants' attempt to avoid the consequences of their
23  spoliation by asserting that "Waymo's own actions should also be considered" (*id.* at 21) is a red-
24  herring.  Defendants do not – and cannot – allege that Waymo spoliated evidence under Rule 37(e).
25  Defendants do not contend that this action was reasonably foreseeable to Waymo, that Waymo
26  intentionally destroyed any relevant evidence, or that Waymo acted with the intent to deprive them
27  of information for use in this litigation.  Defendants' accusations are nothing more than baseless
28  mud-slinging with no bearing here on the Court's analysis here.

### 3. Defendants Had Access To Levandowski's Laptops

An adverse inference is appropriate as to Levandowski's missing laptops. Defendants had sufficient access to the devices to search them for favorable evidence when it benefited them to do so and produced documents supposedly located on the devices without disclosing that fact to Waymo. (Dkt. 2179-3 [Waymo Br.], at 13-14.) They should not be heard to disclaim control over or knowledge about the missing devices now.

## II. WAYMO'S MOTION IS TIMELY

Waymo's motion is not "unjustifiably late." (Dkt. 2241 [Opp. Br.], at 1.) Waymo's motion was filed in accordance with the schedule ordered by this Court (Dkt. 2177) and will be heard before trial commences with other pre-trial matters, including relating to jury instructions more generally, at the November 28 conference (Dkt. 1954). Waymo's motion is timely.

Defendants contend that "[e]ach instance of alleged spoliation in Waymo's motion is based on information that has been known to Waymo since as early as June, and at least prior to the production of the Stroz report in September." (Dkt. 2241 [Opp. Br.], at 2) But Waymo had no way before then to fully evaluate the nature and extent of Defendants' spoliation, the extent to which the spoliated evidence was non-duplicative, the contents of the spoliated evidence, or the materiality of the evidence to Waymo's claims while Defendants were withholding the Stroz materials. But without the Stroz materials, Waymo could not evaluate how much Kalanick and Levandowski relied on text messages or the number of deleted texts. (*See* Dkt. 2179-3 [Waymo Br.], at 8.) Waymo also could not evaluate the relevance of Levandowski's destruction of the Drobo disks and did not know that the disks included "███████████████████████████████████████████████████████████████████████████." (Dkt. 2179-3 [Waymo Br.], at 10 (emphasis added).) The same is true of Waymo's ability to evaluate the text to which it was prejudiced by the spolition of the other missing evidence. Defendants further ignore the efforts Waymo has been forced to undertake to seek pertinent efforts in accordance with the Court's discovery orders (such as by analyzing the "configuration" files that Judge Corley ordered Kalanick to produce) and need for

numerous motions to compel.[6] Not only is Defendants' argument factually wrong, they also cite no applicable legal authority to compel a conclusion that Waymo's motion is "unjustifiably late." (Dkt. 2241 [Opp. Br.], at 1-2.) Defendants just cite two cases, neither of which concerns a request for a jury instruction based on spoliation.[7]

Second, Defendants' also do not deny that the Tyto emails were destroyed intentionally. Instead they contend that Waymo is not entitled to an adverse inference instruction because in his deposition, Stojanovski speculated that if he wanted to obtain the intentionally deleted Tyto emails he would "contact Google." (Dkt. 2241 [Opp. Br.], at 3.) Contrary to Defendants contention, this is not a case in which Waymo failed to seek appropriate discovery. Waymo did serve discovery requests on Tyto, Tyto's owner (Sandstone Group) and Stojanovski – those requests could not be fulfilled because the relevant evidence was destroyed. (*See* Dkt. 2179-3 [Waymo Br.], at 12-13.)

Finally, given its role in causing the delays, Uber should not be heard to complain about the timing now. "Uber is the one that set up [an] elaborate scheme to try to conceal the facts from the public and from -- particularly from Waymo, if it ever came to light, and to engineer [an] elaborate attorney-client joint defense idea that now every judge has looked at it has rejected." (*See* Dkt. 1965 [Oct. 3 Hr'g. Tr.], at 38:24-39:4.) Waymo should not be denied relief from Defendants' spoliation because it did not seek such relief until after it had a chance to pursue discovery and sort through the millions of improperly withheld documents. Waymo appropriately brings this motion now – after the dust has settled and it is clear that the spoliated evidence was not duplicative of other evidence produced here – and any delay is of Defendants' own making. Waymo's motion is timely.

For these reasons, Waymo respectfully requests that the Court grant Waymo's motion and issues the adverse inference jury instruction at trial to sanction Uber's and Ottomotto's spoliation of evidence.

---

[6] Waymo filed numerous requests for discovery since June, when Defendants imply that Waymo should have asked the Court for adverse inference jury instruction. (*See, e.g.,* Dkts. 570, 595-4, 676-4, 681-4, 878-4, 1059-4, 1085-3,1095, 1117-4, 1439, 1501-4, 1784-4, 1994-4, 2053-4.)

[7] *See Mondragon v. Fernandez*, 2010 WL 1992536 (N.D. Cal. 2010) (proper course of action for late supplemental interrogatory responses "would have been to file a new motion to compel – not a disjointed motion for sanctions"); *Siebert v. Gene Security Network, Inc.*, 2014 WL 5808755 (N.D. Cal. 2014) (declining to sanction defendant for its CEO's failure to appear in-person for the first day of a privately-arranged mediation).

| | |
|---|---|
| DATED: November 24, 2017 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By /s/ Charles K. Verhoeven<br>Charles K. Verhoeven<br>Attorneys for WAYMO LLC |