QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>    Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>    Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S RESPONSIVE TRIAL BRIEF**<br><br>Trial Date:   December 4, 2017<br><br><br><br>**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL** |

01980-00104/9703756

WAYMO'S RESPONSIVE TRIAL BRIEF

Plaintiff Waymo LLC ("Waymo") hereby responds to Uber's November 21 filing it refers to as its "Trial Brief." (Dkt. 2253.) It is obviously not a "trial brief." Rather, it raises additional motions *in limine* and other issues as an end run around the Court's requirement of a *precis* for any further motions.[1] (Dkt. 1954.) Waymo reluctantly files this response even though some of these issues are briefed elsewhere to ensure our position is considered, but Uber's trial brief should be stricken entirely.

1. **Disclosure of Exhibits During Trial**

The Court's Standing Order provides that "all counsel are entitled to written firm notice of the order of witnesses for the next court day and the exhibits (including merely illustrative exhibits) **to be used on direct examination (other than for true impeachment of a witness)**. . . . At a minimum, notice must be given no later than 2:00 p.m. one calendar day *immediately* preceding." (Guidelines for Trial and Final Pretrial Conference in Civil Jury Cases Before the Honorable William Alsup, ¶ 11) (emphasis added; italics in original). Uber agreed that there is no requirement to disclose exhibits to be used in cross-examination, but makes a distinction without a difference in contending that a party must disclose exhibits used in an adverse witness examination in a party's case-in-chief. Such an examination, however, is no different than a cross-examination. Fed. R. Evid. 611(c) allows leading questions on cross-examination and "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." There is no basis for treating the disclosure of exhibits for an adverse witness differently than disclosure of exhibits to be used in a cross-examination. Indeed, the Court's Standing Order recognizes the appropriateness of not disclosing exhibits to be used for impeachment—even when used in a direct examination. Defendants also argue that exhibits to be used with an adverse witness should be disclosed so that the parties and the Court can resolve any disputes about them before the witness takes the stand. But the same could be said for exhibits to be used on cross-

---

[1] With the assistance of the Special Master, the parties met and conferred regarding various "housekeeping issues" for trial, such as disclosure of exhibits, and discussed providing the Court with a joint filing addressing those issues. Uber, however, wanted to include substantive arguments regarding excluding witnesses or evidence. Waymo did not join Uber in a joint filing because it believed doing so would violate the Court's order requiring a precis before filing any new motion.

examination. Yet, the parties agree they should not be shared.

**2. New Waymo Witnesses**

**Prabir Adarkar and Shawn Banazadeh.** Uber seeks to preclude Waymo from relying on Prabir Adarkar and Shawn Banazadeh as trial witnesses. This is a motion *in limine* and should have been preceded by a precis.

On September 16, Waymo disclosed its Trial Witness List which included Waymo's damages expert Michael Wagner. On November 2, this Court granted Uber's motion to exclude Wagner's testimony. (Dkt. 2176.) In the Court's Order, however, the Court made clear that Waymo can still present a damages theory through fact witnesses. (*Id.*, at 9) ("Insofar as the Qi slide and other evidence in this case may turn out to be good barometers of Uber's expectations going into the Ottomotto acquisition, that evidence can stand on its own for the jury's consideration."); *id.*, at 10 ("Again, the documents cited by Wagner can independently come into evidence and counsel can make the argument as well as Wagner").) At the November 14 hearing, Waymo stated "you were very clear in your order that we would still get to put on a damages case based upon documents and witness testimony. And we intend to do that." (Dkt. 2222, 11/14/17 Hearing Tr., 86:15-17.) The Court did not disagree with that understanding.

On November 15, Waymo served an Amended Trial Witness List. In addition to narrowing the number of witnesses that Waymo "will call" at trial, Waymo added Prabir Adarkar and Shawn Banazedeh as "will call" witnesses. In Waymo's cover email to Uber, Waymo acknowledged that neither of these witnesses were included on Waymo's original Trial Witness List and the Court's prior ruling regarding Mr. Banazadeh, and Waymo explained that they were added in light of the Court's order on Uber's Motion to Exclude Wagner.

Waymo should be permitted to call both of these witnesses at trial in light of the changed circumstance that Waymo must rely exclusively on fact witnesses to present its damages case, and there is no prejudice to Uber. Nor does Uber claim that there is any prejudice. First, Prabir Adarkar is Head of Strategic Finance at Uber. He is an Uber witness and therefore Uber has access to him and his knowledge relevant to the case. Waymo deposed Mr. Adarkar during fact discovery, and so Uber has been on notice that his testimony is relevant since Waymo requested

his deposition in August. Mr. Wagner cited to and relied on Mr. Adarkar's deposition testimony in his opening report, so Uber has been well aware that Waymo would rely on Mr. Adarkar's testimony to support its damages case since August 24. Given the change in circumstances, Waymo should be permitted to call Mr. Adarkar as a trial witness.

As for Mr. Banazadeh, he is a Waymo witness who testified as a 30(b)(6) witness during fact discovery. Uber took a full day deposition of Mr. Banazadeh in both his 30(b)(6) and personal capacity. On October 23, Waymo disclosed Mr. Banazadeh as a witness Waymo may call if the need arises, and disclosed that he will "provide non-cumulative testimony regarding costs of development of, and management of Waymo's self-driving cars and autonomous vehicle technology. Waymo further identifies the subjects of the Rule 30(b)(6) topic(s) for which he was designated as Waymo's corporate witness." (Dkt. 2062-9.) This is consistent with the subject matter on which he was already deposed. Although Waymo recognizes that the Court ruled on October 26 that Waymo may rely on Mr. Banazadeh as a rebuttal witness only if Uber relies on his testimony, that ruling was before the Court issued its order regarding Wagner. Waymo respectfully requests that the Court grant Waymo leave to file its motion for leave to amend its Trial Witness List, as set forth in Waymo's pending precis. (Dkt. 2270.)[2]

**Other Witnesses:** Uber objects to Kristinn Gudjonsson, Travis Belanger, David Lawee, John Krafcik, Chelsea Bailey, Gerard Dwyer, Don Harrison, and Jennifer Haroon, as trial witnesses on the basis that they were not included in Waymo's Rule 26 Initial Disclosures. Uber does not provide any basis for excluding these witnesses beyond a single sentence saying that they were not included in Waymo's Initial Disclosures. Uber does not articulate any harm or prejudice it will suffer if Waymo is permitted to call these witnesses. It cannot. Each of these witnesses was adequately disclosed to Uber during the course of discovery and so the fact that Waymo did not include them in its Initial Disclosures or supplement those Initial Disclosures does not warrant precluding Waymo from relying on their testimony at trial. *Nuance Commc'ns, Inv. v. ABBYY Software House*, No. C08-02912 JSW MEJ, 2012 WL 2838431, at *1 (N.D. Cal. July 10, 2012)

---

[2] Waymo's precis also asks for leave to add an Uber records custodian to Waymo's Trial Witness List.

1  (quoting Fed. R. Civ. P. 26(e)(1)(A)) ("Supplementation . ... is not mandatory 'if the additional or
2  corrective information has been made known to the other parties during the discovery process or
3  in writing.'").

4      For example, Waymo CEO John Krafcik was disclosed in Uber's Initial Disclosures on
5  April 3, 2017. (Ex. A.) Uber identified Mr. Krafcik's as among the "top ten depositions" it
6  wished to take on June 22. (Dkt. 698.) And Uber deposed Mr. Krafcik on August 2. Further, Mr.
7  Krafcik is on Uber's own Trial Witness List. (Dkt. 2257-4.) Similarly, Uber deposed Kristinn
8  Gudjonsson twice—on July 28 and September 8—and documents on which his name appears
9  were litigated extensively. Uber moved to compel his second deposition. (Dkt. 1414.) The
10 notion that Uber is somehow surprised by his inclusion as a witness is ridiculous. He is listed as a
11 "may call" witness on Uber's Trial Witness List (Dkt. 2257-4) and Uber disclosed him on Uber's
12 Rule 26(a) Initial Disclosures on June 21, 2017 (Ex. B.) Uber likewise deposed Jennifer Haroon
13 twice, on July 26 and as a 30(b)(6) witness on August 25. Uber disclosed Ms. Haroon in its own
14 Rule 26(a) Initial Disclosures on June 21. (*Id.*) And, Uber listed her on its own Trial Witness List
15 as a witness who may be called by deposition. (Dkt. 2257-4.) The other witnesses about which
16 Uber complains were also all disclosed to Uber during discovery and Uber deposed all but one of
17 them.[3] Waymo should not be precluded from relying on their testimony at trial.

18 **3.     Number of "Will Call" Witnesses**

19     The Court has already resolved Uber's complaint about the number of witnesses on
20 Waymo's "will call" list. At the September 27 Pretrial Conference, when Uber complained about
21 the number of witnesses on Waymo's list, the Court said it would not force Waymo to further
22 narrow its list:

> if they cut it down to 15 witnesses and then there are two others they want to call,
> you'll be on their case. So I think it's more important that you know who the initial
> witnesses are going to be in this rolling group so that you can always be prepared
> for the ones that are going to come up in the next two days. I think that's a
> reasonable – I'm not ordering that yet. I think you should meet and confer and
> come up with a system because you're both going to have to live with it. . . . ***I'm
> not going to make them cut back their witness list*** unless you both were to
> agree. If you both were to agree you'll do that, you'll each cut it by half right now,

---

[3] Uber did not depose Travis Belanger. He was disclosed during the August 1 deposition of Chelsea Bailey. (Ex. C - Bailey Depo., 300:4-303:21.)

okay.

(Dkt. 1863, 9/27/17 Pretrial Conference Tr., 162:6-163:4) (emphasis added). Even so, Waymo voluntarily narrowed its list three times since the September 27 Pretrial Conference. While Waymo may further narrow the list, at least three pending Waymo motions *in limine* (Dkt. 913, 1552, 2194), and Waymo's spoliation motion (Dkt. 2199), may impact which witnesses Waymo decides to call at trial. Additionally, Uber's complaint that Waymo is "forc[ing] 34 witnesses to remain 'on call' for two weeks and to prepare for examination," is misleading. Only 15 of the 34 witnesses are represented by Uber's counsel. The remainder of the witnesses are either Waymo witnesses, third parties, or witnesses represented by their own counsel (i.e. Travis Kalanick and Lior Ron). Many of these witnesses are also on Uber's list. (*Compare* Dkt. 2257-2 and 2257-4.)

Uber's assurances that it is "not trying to 'trap' Waymo and will not argue that Waymo is barred from calling witnesses on its 'may call' list" do not make sense. If Uber truly is not going to argue that Waymo is barred from calling witnesses on its "may call" list, then what is the point of requiring Waymo to move witnesses on its "will call" list to its "may call" list at this time? It is just make-work. This Court should follow its original order and not require Waymo to narrow its witness list before trial any further than it already has.

**4.     "Substance of Testimony" Witness List Disclosures**

Uber seeks to preclude Waymo from seeking testimony from Uber witnesses that is beyond the scope of the testimony identified in Waymo's June 22 Corrected Supplemental Initial Disclosures. This is a motion *in limine* and should have been preceded by a precis.

Uber's complaints about the subject matter on which Waymo's trial witnesses will testify are unfounded. Initially, Uber complains that Waymo's disclosures in its Initial Disclosures were too vague. At no point during discovery, however, did Uber raise this issue so that Waymo could address it. Further, the witnesses Uber identifies are all Uber employees or former employees. They were all Uber employees at the outset of this case. Waymo cannot be expected to know the full scope of every Uber witness' knowledge before taking discovery. Incredibly, Uber even takes issue with Waymo disclosing that Uber witnesses will testify about "the Stroz due diligence analysis investigation, and report" or "destruction of relevant evidence" described

therein even though Uber withheld the Stroz report and related documents for virtually the entirety of the case on overruled privilege grounds. Finally, each of the trial witnesses at issue provided deposition testimony on the same topics listed in Waymo's Trial Witness List, so Uber has been on notice that they have such knowledge since at least their depositions in this case.

Further, Uber cannot complain about the scope of testimony disclosed in Waymo's Trial Witness List because Uber similarly disclosed witnesses and testimony that were not included in its Initial Disclosures served by the June 21 deadline. It would be unfair to preclude Waymo from introducing the testimony disclosed in its Trial Witness List, but to allow Uber to rely on witnesses and testimony not disclosed in its Initial Disclosures served by the Court's deadline. This Court previously explained that the Court exercises fairness when it comes to purported violations of Rule 26:

> Now, here's one thing. If the other side has violated Rule 26A by not giving the contact information for the witnesses, which is often what happens, then that may be your free ticket for -- in other words, if they violate the rule, you get to violate the rule. So you'd better look closely at that, and make sure that you've complied with the rule, too, on the Uber side.

(Dkt. 775 - 6/29/17 Hearing Tr., 110:7-13.) Here, fairness dictates rejecting Uber's arguments.

Specifically, at least two witnesses on Uber's Trial Witness List (Dkt. 2257-4) were not included on its June 21 Initial Disclosures: Michael Epstein and Stacy Sullivan. (Ex. B.) Similarly, the scope of testimony disclosed in Uber's Trial Witness List is also broader than that disclosed in its June 21 Initial Disclosures. (*Compare* Dkt. 2257-4 and Ex. B.) A few examples are set forth below, with the expanded testimony reflected in red font:

| Witness | Defendants' Supplemental Initial Disclosures | Defendants' Amended Witness List |
|---|---|---|
| Pierre-Yves Droz | Inventions disclosed and claimed in the '922, '464, and '936 patents, including conception and reduction to practice; the preparation and filing of the '922, '464, and '936 patents; Waymo's employee policies concerning confidential and trade secret information, including with respect to hardware; the design, development, and | Mr. Droz is *Principal Hardware Engineer at Waymo, serving as technical lead on Waymo's LiDAR project since its inception.* He is expected to testify about Waymo's employee policies concerning confidential and trade secret information, including with respect to hardware; the design, development, and operation of |

| | | | |
|---|---|---|---|
| | | operation of Waymo's LiDAR systems, self-driving car project, and purported trade secrets. | Waymo's LiDAR systems, self-driving car project, and purported trade secrets; whether and to what extent the allegedly misappropriated files contain Waymo's alleged trade secrets; Waymo's awareness of the extent to which each of the alleged Waymo trade secrets selected for trial other than trade secret 25, or elements thereof, are known or practiced outside of Waymo; and Waymo's knowledge of Odin Wave. |
| | Mary Fulginiti | Stroz due diligence for the Uber/Ottomotto acquisition* | *Ms. Fulginiti was a managing director at Stroz Friedberg.* She will testify regarding Stroz Friedberg's investigation and due diligence for Uber's potential acquisition of Ottomotto and Otto Trucking, LLC, including with respect to the deletion of the 14,000 downloaded files. |
| | Gary Brown | Waymo's first awareness of alleged trade secret misappropriation; Waymo's forensic investigation into alleged misappropriation of trade secret misappropriation | *Mr. Brown is a Forensics Security Engineer at Google.* He is expected to testify about Waymo's first awareness of alleged trade secret misappropriation; Waymo's forensic investigation into alleged misappropriation of trade secret misappropriation, including the conclusions drawn from that investigation; and Waymo's measures to protect the security of Waymo's confidential documents, servers, and SVN repository. |

Thus, it would be unfair to preclude Waymo when Uber is guilty of the same conduct.

Uber will likely argue that its conduct is excused because Uber further supplemented its Initial Disclosures on August 31. Uber, however, did so after the close of fact discovery and without leave of Court. At the June 7 Case Management Conference, in response to Uber's

counsel's question as to whether Uber could revise its initial disclosures after the Court's deadline, the Court said:

> No. . . No, no, no. Then you have to throw yourself on the mercies of the court and do supplements for good cause and all that. So you can try. But if there's sandbagging going on, you would not be allowed to do it. . . . [Y]ou have to have a good reason to amend your disclosures after June 12th.

(Dkt. 625 - 6/717 Hearing Tr., 69:23-70:21.) Uber, however, did not "throw itself to the mercies of the court" or make any attempt to show good cause before supplementing its Initial Disclosures on August 31. Rather, it appears that Uber's late supplement without leave of Court was an attempt to sandbag Waymo because Waymo did not supplement its Initial Disclosures after the Court's deadline. This dispute is clearly manufactured and the Court should reject Uber's complaints.

**5.      Computation of Each Category of Damages**

Uber seeks to preclude Waymo from presenting damages calculations or theories beyond those disclosed in Mr. Wagner's opening report "and as summarized in the order excluding Mr. Wagner." This is a motion *in limine* and therefore Uber should have filed a precis pursuant to this Court's prior order.

In any event, Waymo should not be precluded from presenting damages calculations or theories beyond those disclosed in Mr. Wagner's opening report. With respect to Waymo's damages calculations, Uber argued during the November 14 hearing that Rule 26 requires Waymo to set forth a specific computation of its claimed damages prior to trial and this Court rejected that argument:

> **THE COURT:** I don't believe that's what the Federal Circuit -- that's not the way you try a case. That's not the way you can possibly try a case. You're saying a judge has got to sort it out in every case -- has got to sort out the damages numbers ahead of time, in every case, and not actually hear the evidence?
> **MR. BULAND:** No, Your Honor.
> **THE COURT:** It's impossible and immoral to do that.
> **MR. BULAND:** I'm sorry to interrupt, Your Honor. That's why Rule 26 says the plaintiffs have to compute damages. That's why interrogatories say you compute it. And we have a chance to see.
> We still don't have a royalty number. We still don't know if it's a running rate, a lump sum. There's no way to

> calculate it.
> **THE COURT:** Well, that's because you knocked out their expert.
> **MR. BULAND:** Well, they still need to disclose under Rule 26 what it is. They have an offer of prove. There's still no royalty.
> **THE COURT:** I'm not knocking it out upfront. I may knock it out at Rule 50 time, but I'm not knocking it out --
> **MR. BULAND:** Your Honor, may we still object at trial to these specific damages figures that we do think are objectionable under --
> **THE COURT:** Object away. Object away. Maybe one or two of them you will sustain it on a case-by-case basis. But it's impossible to try a case the way you want to try the case. It's -- no. No. No more on this.

(Dkt. 2222 - 11/14/17 Hearing Tr., 88:8-89:11.)  For those same reasons, the Court should again reject Uber's argument.

With respect to Waymo's damages theories, Uber admits that Waymo's response to Interrogatory No. 13, served on July 17, outlined a variety of possible damages theories.  (Dkt. 2253; Dkt. 933-3.)  Those theories—seeking both unjust enrichment and reasonable royalty damages—were adequately disclosed during discovery and Uber had ample opportunity to take discovery on those theories and the evidence that Waymo disclosed in its interrogatory response in support of the theories.  Indeed, Waymo supplemented its interrogatory response throughout discovery.  Moreover, as can been seen from the Court's above comments during the November 14 hearing, the Court indicated that it intends to give Waymo flexibility to present its damages case since it was Uber that asked to strike Mr. Wagner's opinions.  Waymo accordingly should not be limited to presenting the damages theories set forth in Mr. Wagner's report.

**6.   Waymo's Disclosure Theory of Liability**

Finally, Uber seeks to preclude Waymo from pursuing a theory of liability based on Uber's disclosure of Waymo trade secrets to vendors.  This is yet another motion *in limine* and Uber should have filed a precis pursuant to this Court's prior order.

In any event, it is incorrect that this theory of misappropriation was not disclosed in this case and that discovery relating to this theory was not pursued.  As the Court is aware, Waymo brought this case because it discovered that Uber disclosed one of Waymo's trade secrets to a vendor; Waymo discovered that because the vendor inadvertently sent an email to Waymo.

Waymo served several document requests relating to communications with vendors or suppliers, for example, RFP 101 seeking "Documents sufficient to show the identity of DEFENDANTS' LiDAR suppliers, INCLUDING information REGARDING the specific components that each supplier provides to DEFENDANTS, and information REGARDING when DEFENDANTS' relationship with each supplier began;" RFP No. 131 seeking "All COMMUNICATIONS between any DEFENDANT and ▓▓▓▓▓ REGARDING FAC lenses;" and RFP No. 139 seeking "All COMMUNICATIONS with GORILLA CIRCUITS." Several of Waymo's other document requests more generally seek documents relating to development of Uber's LiDAR systems and thus would also call for documents relevant to this theory. Indeed, Uber produced the documents on which Waymo intends to rely and cited in its Offer of Proof. (Dkt. 2189-3.) As cited in Waymo's Offer of Proof, Waymo examined Uber witnesses in deposition about communications with vendors. (*Id.*) And, Waymo's technical expert Lambertus Hesselink opined in his August 24 expert report: "It is further my opinion that Defendants have necessarily 'disclosed' Waymo's trade secrets through their interactions acquired to vendors, partners, and other entities." (Ex. D - Hesselink 8/24/17 Report, ¶¶ 239, 288, 321, 347, 375.)

Uber points to three interrogatories that it claims called for disclosure of this theory. They do not. Interrogatory Nos. 13 and 28 ask Waymo to provide the complete basis for its claim of damages (No. 13) and to describe how Uber/Otto's acquisition, use, or disclosure of a trade secret "was a substantial factor in causing Waymo's harm or Uber/Otto's unjust enrichment" (No. 28). Interrogatory No. 8 asks Waymo to "describe all instances in which the trade secret (or any Waymo LiDAR device utilizing the trade secret) was publicly or otherwise disclosed to third parties." Waymo understood this interrogatory to be asking about disclosure by *Waymo* since it asks about disclosure of any Waymo LiDAR device utilizing the trade secret. Waymo accordingly responded to the interrogatory by saying: "Waymo is not aware of any instances in which the trade secrets identified in Response to Interrogatory No. 1 or any Waymo LiDAR device utilizing the trade secrets was publicly or otherwise disclosed to third parties." If Uber intended to ask about disclosure by Uber, that is far from clear from the interrogatory. Waymo should not be precluded from relying on this theory on the basis of a vague and ambiguous interrogatory.

DATED:  November 26, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Charles K. Verhoeven*
    Charles K. Verhoeven
    Attorneys for WAYMO LLC