QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANTS' DAMAGES EXPERT WALTER BRATIC**<br><br>Trial Date:   December 4, 2017 |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 7:30 a.m. on December 4, 2017, or as soon thereafter as the matter may be heard, before the Honorable William H. Alsup, U.S. District Court Judge, Plaintiff Waymo LLC ("Waymo") will and hereby does move the Court to exclude the testimony of Walter Bratic, a rebuttal expert hired by Defendants Uber Technologies, Inc. ("Uber") and Ottomotto LLC ("Ottomotto") to respond to the testimony of Waymo's damages expert Michael Wagner. Waymo brings this Motion pursuant to the Court's Order Granting Waymo's Request to File a Motion to Exclude the Testimony of Walter Bratic (Dkt. 2264).

The Motion is supported by this Notice of Motion, the attached Memorandum of Points and Authorities, the accompanying attorney declaration, the pleadings and papers on file in this action, and such arguments and authorities as may be presented to the Court at or before the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

In its Order Excluding Waymo's Damages Expert Michael Wagner, the Court noted that, "[i]f Uber also plans on using an 'expert' who is little more than a mouthpiece for presenting the argument of counsel based on uncomplicated evidence already in the case, then fair play will require exclusion of that expert too.  Either both sides can do it, or neither can."  (Dkt. 2166 at 11 n.3.)  Because Uber's damages expert Walter Bratic's opinions are limited to:  (i) rebutting Wagner's opinion, and (ii) advancing an alternate calculation based on uncomplicated evidence that Uber's attorneys can explain to the jury, Waymo brings this motion to exclude Bratic's testimony at trial.

**I.     BACKGROUND**

   **A.     Bratic's Qualifications**

Uber's damages expert Walter Bratic is not an economist.  (Ex. 1, Bratic Tr. at 49:10-52:7.)  Like Wagner, Bratic is a certified public accountant with a business degree.  (*Compare* Dkt. 1615 at 1 *with* Ex. 2, Bratic Rep. Ex. 1.)  Bratic serves as a Managing Director of OverMont, a consulting firm that claims it is "positioned to deliver financial, accounting, economic and statistical analysis for national and international clients both in and out of the context of high-stakes commercial disputes."  (*See* "Services," available at http://www.overmont.com/, last accessed Nov. 14, 2017.)  Uber is paying Bratic an hourly rate of $625 for his work on this case.  (Ex. 2, Bratic Rep. at 4.)

   **B.     Bratic's Opinions**

Bratic did not submit an opening report.  Instead, the majority of his September 7, 2017 report is captioned as a "Response to the Wagner Report" and is explicitly limited to rebutting the "analysis and opinions expressed in the Wagner Report."  (Ex. 2, Bratic Rep. at 13-63.)  In that section of his report, Bratic merely criticized Wagner's analysis; he does not offer any affirmative opinion of his own.  (*Id.*)  For the reasons explained below, this portion of Bratic's analysis is moot in light of the Court's order excluding Wagner.

In the other section of his report, Bratic offered a separate opinion regarding unjust enrichment damages based on Uber's design around times.  Using estimated design around times

provided by Uber or Uber's technical experts, Bratic tallied up the estimated salary expenses and estimated hardware costs to arrive at a total unjust enrichment damages number of $605,000. (Ex. 2, Bratic Rep. at 67-89; *see also id.* Bratic Ex. 4-6 (running the same calculation based on slight variations in design around times).)  In his deposition, Bratic testified that he did not "source" any of the input information "independently." (Ex. 1, Bratic Tr. at 270:7-12.)  Instead, he got all of his data from other sources, such as from Uber engineers, Uber's interrogatory responses, and Uber's technical experts. (Ex. 2, Bratic Rep. at 67-89; *id.* Bratic Ex. 4-6.)  Bratic also did not do any independent investigation to determine whether the costs provided by Uber were accurate or reasonable. (Ex. 1, Bratic Tr. at 271:5-19.)  And Bratic admitted that he is not "technically qualified to make that determination." (*Id.* at 270:19-271:3.)

Bratic also offered an opinion on reasonable royalty damages, but Bratic's reasonable royalty opinion is just a rehash of his unjust enrichment opinion.  After a recitation of the *Georgia-Pacific* factors, Bratic concluded that Uber would not have been willing to pay more than $605,000, the exact amount he argues Uber would have incurred to design around Waymo's trade secrets. (Ex. 2, Bratic Rep. at 105-06.)  Bratic confirmed that he did not do any independent work to test the assumptions he relied on for his reasonable royalty opinion, either. (Ex. 1, Bratic Tr. at 220:16-24.)

### C.   Waymo's Attempt to Meet and Confer with Uber

Given the Court's recent order excluding Wagner, Waymo asked Uber whether it would agree not to call Bratic at trial. (Ex. 3.)  Uber refused, claiming that it "reserve[s] the right to call him depending on how Waymo's evidence of damages come [sic] in." (*Id.*)  In the same email, Uber claimed that it has "a right to a damages witness regardless of whether [Waymo has] one." (*Id.*)

## II.   THE COURT SHOULD EXCLUDE BRATIC'S REBUTTAL OPINION AS MOOT.

The Court should exclude Bratic's rebuttal opinion for the simple reason that there is no longer anything to rebut. Fed. R. Civ. P. 26(a)(2)(C) (allowing rebuttal expert reports solely "to contradict or rebut" another party's expert testimony); *Prado v. Federal Express Corp.*, 2014 WL 4648060, at *3 (N.D. Cal. 2014) ("If, however, FedEx does not offer [affirmative expert's]

testimony, then [rebuttal expert] will not be permitted to testify"). Uber claims, without support, that it has "a right to a damages witness regardless of whether [Waymo has] one." (Ex. 3.) To the extent Uber is planning to have Bratic testify to rebut damages evidence put in by Waymo's fact witnesses, courts prohibit that, and with good reason: it would be manifestly unfair to let Uber put on a rebuttal expert to testify about damages if Waymo has no expert at all. *Michael D. Bakst v. Community Memorial Health Sys., Inc.,* 2011 WL 13314315, at *27 (C.D. Cal. 2011) ("Because the testimony [the rebuttal expert] was hired to rebut will not be offered, [the rebuttal expert] may not testify."); *Prado*, 2014 WL 4648060, at *3. The Court, therefore, should exclude Bratic's rebuttal opinion addressing the "analysis and opinions expressed in the Wagner Report" (Ex. 2, Bratic Rep. at 13-63).

### III. THE COURT SHOULD EXCLUDE BRATIC'S AFFIRMATIVE OPINIONS FOR THE SAME REASONS IT EXCLUDED WAGNER'S.

Although Bratic offers affirmative opinions regarding unjust enrichment and reasonable royalty damages, these opinions suffer from the same issues that the Court identified with respect to Wagner. (Dkt. 2166.)[1] The Court should exclude Bratic's testimony for the same reasons.

#### A. **Bratic's "Opinions" Are Simply Arguments That Uber's Lawyers Can Make**

Bratic's opinions involve "[s]traightforward application of grade-school arithmetic to uncomplicated numbers . . . well within the ken of the average juror." (Dkt. 2166 at 9.) As discussed above, Bratic calculates Uber's alleged design around costs by adding estimated salary expenses and estimated hardware expenses to arrive at a total number. (Ex. 2, Bratic Rep. at 67-89.) As he explained during his deposition, Bratic's "opinion" is limited to performing this simple calculation; he did not do anything to independently "source" or confirm the inputs:

> Q. You are -- your opinion on damages in this case is that damages are no more than $605,000?
>
> A. That's correct.
>
> Q. Under either unjust enrichment or reasonable royalty damages?
>
> A. Correct.

---

[1] Waymo respectfully disagrees with the Court's order excluding the testimony of Michael Wagner, and reserves all rights to challenge the order, including on appeal.

Q. Okay. And the way you come up with your $605,000 number is you take the time that Uber says it would take to design around the trade secrets --

A. Correct.

Q. -- which you discussed with the technical experts --

A. Yes.

Q. -- and you multiple that -- those time numbers by the costs that you received out of some Uber documents --

A. Correct.

Q. -- and you did the math, and you came up with $605,000?

A. The $605,000 was derived from taking information from various sources.

Q. Right. Neither the time estimates that go into your $605,000 number or the cost estimates are the product of any opinions you are offering?

A. Well, they are not material I – information I sourced independently.

Q. Right.

A. I obtained those -- the information regarding time estimates for particular discrete tasks and the costs associated with the type of people who would have to perform those tasks from Uber documents and my interviews.

Q. And I think you've told us this, but because you are not a technical expert, you don't have a basis to judge whether the time estimates in Exhibit 4, which you used for your $605,000 number, are reasonable or not?

A. Correct. I don't have an independent opinion on it.

Q. Right. And --

A. And -- and I'm not technically qualified to make that determination.

(Ex. 1, Bratic Tr. at 269:10-271:19.)

In its opposition to Waymo's precis seeking leave to file this motion, Uber acknowledged that it will use fact witness testimony to attempt to establish that it would cost no more than $605,000 to independently design around the asserted trade secrets. (Dkt. 2259 at 4.) But tellingly, Uber has specifically reserved the right to have Bratic "explain to the jury why a rational company would not pay a royalty greater than the cost to independently design around the particular trade secrets." (*Id.*) This Court has barred Wagner from offering opinions on how Waymo and Uber would have approached the hypothetical negotiation, and it should bar Bratic

from offering similar opinions.  To the extent Uber wants to take the position at trial that it would not have paid more than its alleged design around costs, its fact witnesses can offer testimony to that effect and its lawyers can make the argument in closing.

In its opposition to Waymo's precis, Uber suggests that Bratic will also offer testimony on several other topics, including the Qi slide, Uber's saved development costs, and apportionment. (Dkt. 2259 at 4-5.)  The Court should not allow this testimony.  With respect to the Qi slide, Uber is planning to have Bratic testify about "the financial assumptions underlying the Qi slide," the 15% discount rate that Qi selected, and the "effect that recent events would have on the numbers on the Qi slide." (*Id.* at 4.)  But Uber witnesses, including Ms. Qi, will be testifying at trial, and can capably explain all of these points to the jury.  With respect to Uber's saved development costs, Uber is planning to have Bratic testify that "a licensing and valuation professional would not use the run rate for Uber's entire autonomous vehicle program to calculate cost savings for a discrete trade secret relating to a particular LiDAR component." (*Id.* at 5.)  However, as this Court held with respect to Wagner, these are arguments that Uber's lawyers can make.  Finally, with respect to apportionment, Uber is planning to have Bratic testify:  (1) that Qi's 1-2 year acceleration estimate "does not properly apportion value to the particular trade secrets at issue here from the additional assets of Ottomotto"; (2) that "using the run rate for Uber's entire autonomous vehicle program fails to apportion cost savings to the particular trade secrets at issue"; and (3) that "using the Tyto purchase price to value TS 90 fails to properly apportion value to the other assets acquired in the deal, separate from TS 90." (*Id.*)  But again, these are points that Uber's lawyers can make.  The Court's ruling that Wagner should not "serve as a mouthpiece for arguments that Waymo's lawyers can make" (*see* Dkt. 2166 at 9; *id.* at 10) applies equally to Bratic.

### B. Bratic's Opinions Are Unreliable and Unfairly Prejudicial

The Court should exclude Bratic's reasonable royalty opinion for an additional reason.  As discussed above, although Bratic claims to apply the hypothetical negotiation construct, his reasonable royalty analysis ends up in the exact same place that his unjust enrichment analysis did: with the conclusion that Uber would not have been willing to pay more than $605,000. (Ex. 2, Bratic Rep. at 105-06.)  In other words, although he purported to consider them, the *Georgia-*

*Pacific* factors apparently had no impact at all on his analysis.  Allowing Bratic to undertake this "pseudo-analysis" would be dangerously confusing and misleading (Dkt. 2166 at 9), particularly since the Court has recognized that "you do not have to have an expert prove reasonable royalty." (11/14 Hr'g Tr. at 87:1-2.)  Again, to the extent Uber wants to argue that it would not have paid more than its alleged design around costs during the hypothetical negotiation, its lawyers can make that argument at trial.  (Dkt. 2166 at 9.)  The Court should not allow Bratic to do it for them.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Waymo's Motion and exclude the testimony of Uber's damages expert Walter Bratic at trial.

DATED:  November 27, 2017            QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Charles K. Verhoeven*
  Charles K. Verhoeven
  Attorneys for WAYMO LLC