QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
 charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
 davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
 melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
 johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
 jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>             Plaintiff,<br><br>     vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>             Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S CRITIQUE OF REVISED TENTATIVE JURY INSTRUCTIONS ON TRADE SECRET MISAPPROPRIATION AND REVISED SPECIAL VERDICT FORM (DKT. 2251)**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: December 4, 2017 |

Waymo submits the following critique of the Revised Tentative Jury Instructions (each, an "RTJI") and the questions presented to the jury (each, a "Q") in the revised Special Verdict Form. Dkt. 2251.[1] Consistent with the Court's instructions, Waymo reserves its right to assert additional objections prior to or during trial. Waymo also renews its requests that the Court give the instructions Waymo proposed in the Joint PJIs (Dkt. 1750) and in Waymo's previous Critiques (*see, e.g.*, Dkts. 2077, 2171, and 2230), to the extent not included in the RTJIs.

### I. RTJIS 3, 17, AND 19, AND QS 2 AND 6 SHOULD REFLECT THAT "UNJUST ENRICHMENT" IS NOT NECESSARY FOR LIABILITY.

As presently drafted, RTJIs 3 and 17 require the jury to find that a Defendant was unjustly enriched to hold it liable for trade secret misappropriation—indeed, these instructions describe unjust enrichment as "elements" of liability. This is contrary to law. Under the plain language of both CUTSA and DTSA, liability for trade secret misappropriation can be established and reasonable royalty damages awarded even if unjust enrichment is *not* established:

> If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

Cal. Civ. Code § 3426.3(b).

> [I]n lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret.

18 U.S.C. § 1836(b)(3)(B)(ii). Similarly, both CUTSA and DTSA define "misappropriation" independently from damages. *See* Cal. Civ. Code § 3426.1(b) (nowhere mentioning damages as a requirement for misappropriation); 18 U.S.C. § 1839(5) (same). And California authorities agree:

> A trade secret is misappropriated if a person (1) acquires a trade secret knowing or having reason to know that the trade secret has been acquired by "improper means," (2) discloses or uses a trade secret the person has acquired by "improper means" or in violation of a nondisclosure obligation, (3) discloses or uses a trade secret the person knew or should have known was derived from another who had acquired it by improper means or who had a nondisclosure obligation or (4) discloses or uses a trade secret after learning that it is a trade secret but before a material change of position. (Civ.Code, § 3426.1, subd. (b).)

---

[1] Unless otherwise noted, capitalized terms are as defined in Waymo's Critique of the FTJI (Dkt. 2171) and Critique of the TJIs and Form (Dkt. 2077).

*Ajaxo Inc. v. E*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 66 (Ct. App. 2005). RTJI 3 and 17's inclusion of damages as an element of misappropriation erroneously adds a new requirement to that claim.

To avoid this error, elements three and four in RTJI 3, which refer to unjust enrichment, should be removed and combined with RTJI 17 as a standalone damages instruction. This change would better accord with both applicable law and the structure of Qs 1 and 2, which already anticipate the jury deciding "existence" and "misappropriation" of a trade secret—*i.e.*, elements one and two in RTJI 3—separately from damages. The Court should revise RTJIs 3 and 17 as follows:

RTJI 3

To succeed on its claim that a defendant misappropriated any Alleged Trade Secret, Waymo must prove ~~all~~**each** of the following:
1. That the Alleged Trade Secret qualified as an enforcible trade secret at the time it was allegedly misappropriated; **and**
2. That the defendant improperly acquired, ~~then~~ used or disclosed the Alleged Trade Secret~~;~~.
~~3. That the defendant was thereby unjustly enriched; and~~
~~4. That such use or disclosure was a substantial factor in unjustly enriching the defendant.~~
No defendant may be held liable as to any Alleged Trade Secret unless ~~all~~**each** of these elements of proof ~~are~~**is** satisfied as to that defendant and as to that Alleged Trade Secret. I will now explain these elements of proof in more detail.

RTJI 17

~~Turning to the third and fourth elements of proof of a misappropriation claim,~~ **If you determine that a defendant misappropriated one or more of Waymo's trade secrets, you must then determine if that defendant was thereby unjustly enriched and if such misappropriation was a substantial factor in unjustly enriching that defendant. U**njust enrichment occurs whenever a defendant reaps an undeserved benefit such as accelerating its own development timeline and/or saving on development costs by taking improper advantage of someone else's trade secrets. Unjust enrichment does not occur, however, where the benefit would have been realized anyway. A substantial factor in causing unjust enrichment means a factor that a reasonable person would consider to have contributed to the unjust enrichment. It must be more than a remote or trivial factor. It does not have to be the only cause. Conduct is not a substantial factor in causing unjust enrichment if the same enrichment would have occurred without that conduct.

A similar problem affects the sentences at the end of Qs 2 and 6. These sentences indicate that a finding of unjust enrichment is a *prerequisite* to an award of a reasonable royalty, and permit a reasonable royalty only in the extremely limited (and paradoxical) situation where the jury finds

unjust enrichment, but sets the amount of that enrichment at zero. As detailed above, this is not the law under the plain language of either CUTSA or DTSA. The Ninth Circuit has also affirmed that harm is not a prerequisite to a reasonable royalty under CUTSA:

> The district court erred in ruling, at the damages stage, that the jury's finding of no harm precluded a reasonable royalty. The statute provides for a reasonable royalty "[i]f neither damages nor unjust enrichment caused by misappropriation are provable." Cal. Civ.Code § 3426.3(b). That requirement may be met by either a lack of sufficient evidence or an adverse jury finding with respect to those forms of relief. *Ajaxo Inc. v. E*Trade Fin. Corp.,* 187 Cal.App.4th 1295, 115 Cal.Rptr.3d 168, 172–73 (2010). The jury's finding that Defendants did not proximately cause harm to Plaintiff is therefore consistent with the availability of a royalty under the statute.

*Atlantic Inertial Sys. Inc. v. Condor Pac. Indus.*, 545 Fed. Appx. 600, 601 (9th Cir. 2013); *id.* at 601 n.1 ("*Ajaxo* held only that the court must decide *whether* the plaintiff suffered a loss before awarding a royalty, not that it must determine that plaintiff did suffer such a loss.") (emphasis in original). Qs 2 and 6 (as well as RTJI 19, which contains a parallel sentence) should thus be revised either to eliminate the instruction regarding reasonable royalty (which can still be given if the jury finds no enrichment), or at least to accord with the law:

> Remember, as I said in Paragraph XIX of the jury instructions, if you ~~answer "Yes" and "Zero"~~ **do not find any unjust enrichment** as to any Alleged Trade Secret **for which you find a defendant liable for misappropriation**, we will have supplemental proceedings as to that Alleged Trade Secret with respect to an alternative form of award.

## II. RTJIS 3. 10, AND 12, AND QS 1 AND 5 SHOULD REFLECT THAT IMPROPER ACQUISITION IS NOT A PREREQUISITE FOR MISAPPROPRIATION BY USE OR DISCLOSURE, BUT IS ITSELF SUFFICIENT FOR LIABILITY.

RTJIs 3, 10 and 12, and Qs 1 and 5 describe improper acquisition as a necessary predicate and intermediate step before finding misappropriation by use or disclosure. As Waymo has demonstrated previously, this formulation is inconsistent with the applicable statutes and the cases interpreting them. *See, e.g.*, Dkt. 2077 at 1-2; Dkt. 2230 at 1-2. In addition to incorrectly cutting off liability based on acquisition alone, the present structure incorrectly demands a showing of improper acquisition for *every* theory of use- or disclosure-based misappropriation. But the plain language of CUTSA, DTSA, and applicable authorities does not require such a showing:

> (b) "Misappropriation" means:
> …
> (2) Disclosure or use of a trade secret of another without express or implied consent

>    by a person who:
>    …
>    (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>    …
>    (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>    (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use…

Cal. Civ. Code § 3426.1(b).

>    (5) the term "misappropriation" means—
>    …
>    (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>    ...
>    (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>    …
>    (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>    (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret…

18 U.S.C. § 1839(5). *See also supra* Section I (quoting *Ajaxo*, 135 Cal. App. 4th at 66 (describing at least two routes to misappropriation by use or disclosure not requiring improper acquisition)).

By requiring Waymo to prove that "the defendant improperly acquired, *then* used or disclosed the Alleged Trade Secret," RTJI 3, the RTJIs improperly foreclose liability based on, among other things, use or disclosure "in violation of a nondisclosure obligation," such as where an employee acquired information properly as part of his or her job, but failed to keep it secret after joining a new employer. Accordingly, the Court should (a) revise RTJIs 3, 10, and 12, and Qs 1 and 5 to reflect that Defendants' improper acquisition of Waymo trade secrets is (i) sufficient to support a finding of trade secret misappropriation, and (ii) not a predicate for misappropriation by use or disclosure, and (b) revise RTJI 12 as follows:

>    Turning to the second element of proof for a misappropriation claim, Waymo must prove that the Alleged Trade Secret was **acquired,** used or disclosed by a defendant without Waymo's consent and that said defendant **(1) acquired a trade secret knowing or having reason to know that the trade secret had been acquired by "improper means," (2) disclosed or used a trade secret acquired by "improper means" or in violation of a nondisclosure obligation, or (3) disclosed or used a**

**trade secret the person knew or should have known was derived from another who had acquired it by "improper means" or who had a nondisclosure obligation** ~~either acquired knowledge of the trade secret by improper means or at the time of use or disclosure, knew or had reason to know that its knowledge of the trade secret came through persons who had acquired it by improper means~~.

### III. RTJI 1 SHOULD REFLECT THAT TECHNICAL SPECIFICATIONS AND "NEGATIVE KNOW-HOW" MAY BE TRADE SECRETS, AND A TRADE SECRET MAY BE HELD IN MEMORY.

As presently drafted, RTJI 1 describes general types of information that may constitute trade secrets and methods of storing such information. But much of the guidance provided has no application to the evidence in *this case*. The Court should make this instruction more useful to the jury, by: (a) including the types of information that may be trade secrets in this case, *see* Dkt. 2171 at 1-2 (describing Alleged Trade Secrets); RTJI 7 (adding negative trade secrets); and (b) introducing that trade secrets may be held in memory, *see* Dkt. 2171 at 5-6, RTJI 5:

> A "trade secret" involves information and can potentially cover any form of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, ~~or~~ codes, **engineering solutions, technical specifications, or the results of extended research indicating that a certain process or approach will not work,** whether tangible or intangible, and regardless of if whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, ~~or~~ in writing**, or in memory**. Whether or not any particular information qualifies as a trade secret depends upon factors that I will describe in a moment but, by way of introduction, I want you to understand that a trade secret concerns information.

### IV. RTJIS 5 AND 7 SHOULD MIRROR THE PROPOSED CHANGES TO RTJI 1.

RTJI 5 states that "[E]ngineers cannot . . . use or disclose to others specific *engineering solutions or information* developed by their prior employers . . . where such specific solutions or information qualify as a trade secret." (emphasis added). There is no reason why this instruction should describe six of the Alleged Trade Secrets, but substitute a vague catchall for the remaining two. See Dkt. 2171 at 1-2. It should read: "engineering solutions, **technical specifications, or the results of extended research indicating that a certain process or approach will not work** . . . ."

RTJI 7 (and 1—*see supra* Section III) should reflect that a negative trade secret may be a "process **or approach**" because the only negative trade secret at issue—TS 111—is not a "process," but knowledge surrounding an unsuccessful approach to a problem. *See* Dkt. 2256-4, 3:19-20.

1  DATED: November 27, 2017                QUINN EMANUEL URQUHART & SULLIVAN, LLP

2                                          By /s/ Charles K. Verhoeven
3                                             Charles K. Verhoeven
                                              Attorneys for WAYMO LLC