MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzález@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Tel:  415.268.7000 / Fax:  415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Tel:  202.237.2727 / Fax:  202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019-6023
Tel:  212.336.8330 / Fax:  212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>    Defendants. | Case No.    3:17-cv-00939-WHA<br><br>**DEFENDANTS' CRITIQUE OF REVISED TENTATIVE JURY INSTRUCTIONS ON TRADE SECRET MISAPPROPRIATION**<br><br>Trial Date: December 4, 2017 |

1    Defendants Uber Technologies, Inc. and Ottomotto LLC ("Uber") offer this critique

2 identifying their main objections to the Court's Revised Tentative Jury Instructions ("RTJI").

3 (Dkt. 2251.)  Per the RTJI, Uber does not waive any previously stated objections.

4    **RTJI 5:** The last three sentences in RTJI No. V should be amended in part such that those

5 sentences read (with green showing moved text, red added, and strikethrough removed):

> Engineers cannot, however, go further in new jobs with new employers to use or disclose to others specific engineering solutions or information developed by their prior employers, ~~even those developed or discovered by them,~~ where such specific solutions or information qualify as a trade secret, even those developed or discovered by them. Nor may they intentionally memorize or photocopy or download ~~and~~ to take with them, and then use or disclose, their prior employer's trade secrets.  It is for the jury to decide in each case whether engineers have used or disclosed a former employer's trade secret information at their new job versus having utilized their professional skills, talents, abilities, or information generally known in the field.

12 (Dkt. 2251 at 3.)

13    The instruction that engineers may not "memorize or photocopy or download and take

14 with them" trade secrets incorrectly instructs the jury that there is liability for these actions in the

15 absence of (a) the requisite mental state and (b) use or disclosure of those trade secrets. Such an

16 instruction also contravenes the Court's "foundational principle" that Waymo must prove

17 misappropriation ***by Uber***, not by Levandowski.  (Dkt. 2151 at 3, 9.)  To make this instruction

18 consistent with other instructions, therefore, the phrase "and then use or disclose" should be

19 added, and the instruction should make clear that the memorization, photocopying, or

20 downloading must be done through "improper means" (such as intentional memorization and

21 downloading in order to use at his new job).  Cal. Civ. Code § 3426.1; *Silvaco Data Sys. v. Intel*

22 *Corp.*, 184 Cal. App. 4th 210, 227–228 (Cal. Ct. App. 2010), *disapproved of on other grounds by*

23 *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (Cal. Ct. App. 2011) (CUTSA requires proof of

24 requisite mental state with respect to the means by which the trade secret was obtained).  (*See*

25 *also* Dkt. 824 at 2-3.)  The remainder of Uber's edits assist in clarity and precision.

26    **RTJI 14:** There are two bases for critique of this instruction.  First, this instruction

27 improperly introduces the legal term "agent" without offering a description or definition of what

28 an agent is.  Both the Ninth Circuit Model Civil Jury Instructions and CACI recognize the need

for this context.  Ninth Circuit Model Instructions 4.4 (Agent & Principal – Definition) and 4.5 (Agent – Scope of Authority Defined) should also be given if this instruction is to be given (as argued previously, it should not be).  Model Civ. Jury Instr. §§ 4.4, 4.5 (9th Cir. 2017).

Second, if the jury finds that an agency relationship exists, the proposed instruction misallocates the burden of proof regarding the scope of the agency and imputation of information, if any, to Uber.  As the party seeking to rely on imputation, Waymo must prove both the existence and the scope of any agency that might support imputation.  *E.g., Oswald Mach. & Equip. Inc. v. Yip*, 10 Cal. App. 4th 1238, 1241 (Cal. Ct. App. 1992), *reh'g denied and opinion modified* (Dec. 4, 1992); *Cal. Viking Sprinkler Co. v. Pac. Indem. Co.*, 213 Cal. App. 2d 844, 850 (Cal. Ct. App. 1963).

Waymo has argued that, under the Restatement, information is always imputed unless Uber proves that an exception applies, but this is a misapplication of the Restatement.  The Restatement explicitly states:

> Knowledge, including imputed knowledge, is not always determinative of, and sometimes is not even relevant to, certain claims and defenses. It is a matter of underlying substantive law, not agency law, whether knowledge, including imputed knowledge, forecloses a claim for relief or a defense against liability.

Restatement (Third) of Agency § 5.03, Comment *b*.  Pursuant to underlying substantive law, liability for trade secret misappropriation requires *actual* knowledge of the trade secret—not just notice that it might be possessed—in addition to *actual* knowledge or reason to know the secret was improperly obtained.  *Silvaco*, 184 Cal. App. 4th at 228; *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 792-93 (9th Cir. 1976) (footnote omitted):

> In light of the emphasis in trade-secret law on unfair use, it is generally not appropriate to direct a jury to impute an agent's knowledge of a secret to the principal.[1]  Such an instruction would permit recovery even when the trade secret was not actually communicated to or used by the principal. The plaintiff is not entitled to a windfall when in fact there has been no invasion of those interests which trade-secret law seeks to protect.

Additionally, the proposed instruction automatically imputes improper acquisition to Uber even if Stroz and MoFo did not actually communicate the trade secrets to Uber.  That is reversible error:

DEFENDANTS' RESPONSE TO REVISED TENTATIVE JURY INSTRUCTIONS ON TRADE SECRET MISAPPROPRIATION
Case No. 3:17-cv-00939-WHA
sf-3844277

2

> A proper instruction would have put the burden of persuasion on the corporation to satisfy the jury by the preponderance of the evidence that despite his duty to do so Bayley did not communicate Droeger's concept to other Welsh employees. But the jury would have been free to consider the defense of subsequent independent invention. It was error to take this part of the case away from the jury.

*Droeger*, 541 F.2d at 793. As *Droeger* makes clear, the defendant bears the burden to prove that a trade secret was not communicated only if the plaintiff has proved agency and that the agent was under a duty to communicate the secret. RTJI 14 improperly flips those burdens.

Moreover, even if imputation in some form were proper, whether particular knowledge should be imputed depends on whether that information-sharing is within the scope of the agency—a matter on which Waymo has the burden of proof. As explained in Restatement (Third) of Agency § 5.03, Comment *b*:

> As discussed more fully in Comment *e*, regardless of the circumstances under which an agent acquires knowledge of a fact or reason to know it, notice of the fact is imputed to the principal if material to the agent's duties, unless the agent owes a duty to another not to disclose the fact to the principal. In many instances, a principal benefits when an agent brings to bear all material facts then known to the agent, as indeed an agent has a duty to do. See §§ 8.08 and 8.11. Imputation charges a principal with the legal burdens of taking action through another person with the benefit of what each then knows or has reason to know. The scope of an agent's duties delimits the content of knowledge that is imputed to the principal. When an agent's obligations to others prevent disclosure to the principal of material facts known to the agent that are material to the agent's duties to the principal, the agent may be obliged to terminate the agency relationship.

The application of this general principle, and the fact that burden of proof remains on the party seeking imputation, is exemplified in cases like *Estate of Sawyer by Howard Bank v. Crowell*, 151 Vt. 287, 292 (1989). There, an attorney's secretary received a letter specifying the notice period for withdrawal of funds from a real-estate investment trust, in which the plaintiff's estate was invested. *Id.* at 289. The attorney later learned information about the investment that the secretary had not told him, and demanded the funds' return; defendant countered that the letter to the secretary constituted notice of the funds' investment, which was then ratified by inaction. *Id.* at 290. The court disagreed, noting that the ***defendant*** (the party seeking imputation) had not met his burden to prove that information-sharing was within the scope of the secretary's agency:

> The existence and extent of an agent's authority is a question of fact. *Fournier v. Burby,* 121 Vt. 88, 91, 148 A.2d 362, 364 (1959); *N. Pelaggi & Co. v. Orient Ins. Co.,* 102 Vt. 384, 397, 148 A. 869, 873 (1930) (authority is issue of fact unless

DEFENDANTS' RESPONSE TO REVISED TENTATIVE JURY INSTRUCTIONS ON TRADE SECRET MISAPPROPRIATION
Case No. 3:17-cv-00939-WHA
sf-3844277

3

facts themselves are not in dispute). There is no evidence in the record that the secretary knew the money should not have been invested in VREIT, or that there was any restriction on its investment. Without such knowledge, she had no reason to bring that information to Mr. Durrance's attention. As *defendant* has made no showing that the secretary had any authority extending beyond the inquiry contained in her letter, the court's finding is not clearly erroneous, V.R.C.P. 52(a), and we will not disturb it here. Since the secretary's knowledge of the VREIT investment did not arise within the scope of her authority, Mr. Durrance cannot be charged with such knowledge.

*Id.* at 292 (emphasis added).  See also *Evanston Bank v. Conticommodity Servs., Inc.*, 623 F. Supp. 1014, 1035 (N.D. Ill. 1985):

> Further, for knowledge to be imputed, the agent must have not just a duty in relation to the subject matter, but a duty to speak to his principal about the specific item of knowledge. Restatement, § 275 comment c. So, for example, in a suit over an oil and gas lease, a corporation had employed a title examiner who had read the lease. It was not charged with knowledge of the lease's unusual provisions on drilling requirements since nothing indicated that the title examiner had any duty to determine or report about drilling requirements. *Sawyer v. Mid-Continent Petroleum Corp.*, 236 F.2d 518 (10th Cir.1956). Similarly, in an action for loss of cargo from a lighter which sank while alongside a pier, the harbormaster's knowledge that the lighter was moored at the pier was not imputed to the connecting ocean carrier because he had no duty to report the lighter's presence. *General Motors Corp. v. Pennsylvania Railroad*, 357 F.Supp. 646, 653 (S.D.N.Y.1973), *aff'd* 506 F.2d 1395 (2d Cir.1974). The cashier, Ott, describes his duties toward the entries as ones of recording the data on them in corporate books. Conti and Thomas have not shown that he had a duty to analyze them and report his analysis to his superiors. Such a duty does not necessarily follow from the nature of his position.

These cases make it clear that the party seeking to prove imputation bears the burden of proof on the required elements.  Thus, in *Estate of Sawyer* and *Evanston Bank*, the parties seeking to show imputation failed to meet their burden because they failed to show that the scope of agency required the agent to disclose the information in question to the principal.  Similarly, Waymo here should bear the burden of proof as to whether Stroz or MoFo had a duty to disclose trade secret information to their principal, Uber.  Consistent with these principles, in cases where there is a duty to restrict the flow of information, no knowledge will be imputed.  The comments to the Restatement explain that:

> If an agent has learned a fact under circumstances that impose a duty on the agent not to reveal it to a principal, notice of that fact is not imputed to that principal. Thus, notice of a fact that an agent learns in confidence from one principal is not imputed to another principal. For further discussion, see Comment e.  An organization may put in place internal restrictions on how information is handled and transmitted to assist in fulfilling duties of confidentiality owed to its clients. Such restrictions are common in multifunction financial-services firms.

DEFENDANTS' RESPONSE TO REVISED TENTATIVE JURY INSTRUCTIONS ON TRADE SECRET MISAPPROPRIATION
Case No. 3:17-cv-00939-WHA
sf-3844277

4

Restatement (Third) of Agency §5.03 Comment *c* (2006).  Here, the prohibition on sharing certain Google information with Uber and Ottomotto is set forth in an Engagement Letter, which identifies the scope of Stroz's and MoFo's duties to their respective clients.  (Dkt. 2193-9; *id.* at 1, under Services (defining MoFo and O'Melveny as "Clients," not Uber).)  In other words, the Engagement Letter's prohibition on Stroz sharing such information with Uber and Ottomotto is an essential limitation on the scope of the agency relationship:  Stroz's powers and duties as agent were expressly circumscribed because Stroz was specifically obligated *not* to share certain information with its principals.[1]

Finally, contrary to Waymo's argument, the "exception" in the Restatement—on which Waymo relied for its proposition that Uber must bear the burden because that is how exceptions usually work—by its text does not apply to the limitations on Stroz's agency set out in the Engagement Letter. Restatement (Third) of Agency § 5.03(b) provides that knowledge of a fact is imputed to the principal unless the agent "is subject to a duty to another not to disclose the fact to the principal." That exception—grounded in a duty *to someone else*—is not relevant here.  Here, the duty not to disclose to the principal, Uber, was a duty to the principal (not someone else), and is therefore squarely defined by the scope of agency itself for which the plaintiff bears the burden.

## JURY VERDICT FORM AND INSTRUCTION XX

As previously briefed, (a) the issue of exemplary damages is not for the jury to decide; and (b) "disclosure" and "use" should be separately identified on the verdict form.  (Dkt. 2228.)

---

[1] Contrary to Waymo's arguments at the November 14 hearing, the March 21, 2016 side agreement between John Gardner (Levandowski's attorney) and Stroz does not allow Stroz and MoFo to share Google confidential or proprietary information with Uber or Ottomotto. Nothing in it purports to modify the obligations in the Engagement Letter, nor could it, as the Engagement Letter specifically states that it may not be modified except "by a writing signed by each party," which was not done. (Dkt. 2193-9 at 4, under Miscellaneous.)

DEFENDANTS' RESPONSE TO REVISED TENTATIVE JURY INSTRUCTIONS ON TRADE SECRET MISAPPROPRIATION
Case No. 3:17-cv-00939-WHA
sf-3844277

5

| | | |
|---|---|---|
| 1 | Dated: November 27, 2017 | MORRISON & FOERSTER LLP |
| | | |
| | | By:  */s/ Arturo J. Gonzalez* |
| | | ARTURO J. GONZÁLEZ |
| | | |
| | | Attorneys for Defendants |
| | | UBER TECHNOLOGIES, INC. and OTTOMOTTO LLC |

DEFENDANTS' RESPONSE TO REVISED TENTATIVE JURY INSTRUCTIONS ON TRADE SECRET MISAPPROPRIATION
Case No. 3:17-cv-00939-WHA
sf-3844277

6