QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                 Plaintiff,<br><br>        vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>                 Defendants. | CASE NO. 3:17-cv-00939-WHA<br><br>**PLAINTIFF WAYMO LLC'S SUPPLEMENTAL BRIEF TO ITS MOTION TO CLOSE COURTROOM [DOCKET NO. 1822]**<br><br>**Hearing:**<br>Date: 11/28/2017<br>Time: 8:00 AM<br>Place: Courtroom 8, 19th Floor<br>Judge: The Honorable William H. Alsup |

**PRELIMINARY STATEMENT**

Waymo filed a motion to close the courtroom during narrow portions of the upcoming trial on September 26, 2017. (Dkt. 1822.) Waymo stated that it would supplement its motion with a specific and narrowly tailored list of evidence that should not be heard in open court at a later date. Waymo now supplements its motion to do so.

**LIST OF EVIDENCE**

Waymo identified four limited categories of extraordinarily sensitive and valuable business information that should not be publicly disclosed at trial: (1) Waymo's technical trade secrets and the specifics of how Uber uses them (only to the extent that the evidence/argument of use would reveal the trade secrets themselves); (2) the terms of Google M&A deals that are unrelated to this case and Waymo's collaboration with Lyft; (3) Waymo's non-public financial information, projections, and business plans; and (4) confidential information about Waymo's employees and former employees. (Dkt. 1822.)

**Trade Secrets.** This Court has consistently sealed the courtroom for hearings at which Waymo's trade secrets were discussed (*see e.g.*, Dkt. 121) and requests that the Court continue with that same approach for trial. *See United States v. Zhang*, 590 F. App'x 663, 667 (9th Cir. 2014) (finding the district court reasonably determined that closure was necessary to protect Marvell's trade secrets while the witness testified about the contents of the very documents that the government alleged to contain trade secrets). Waymo expects to call a few Waymo engineers who will provide testimony to describe what Waymo's trade secrets are and that they qualify as trade secrets; several Uber engineers who will provide testimony regarding Uber's LiDAR technology which necessarily will require discussing Waymo's misappropriated trade secrets; and Waymo's technical expert, Lambertus Hesselink who will provide his opinions that Uber misappropriated Waymo's trade secrets. (Dkt. 2257-2.) Waymo also expects that Uber will call Waymo and Uber engineers and Uber's own technical experts to try to rebut Waymo's case-in-chief, and that some of those witnesses' testimony will reveal the substance of Waymo's trade secrets. (Dkt. 2257-4.) Waymo will ask the Court to close the courtroom for those portions of these witnesses' testimony that will reveal the trade secrets.

**Terms of Google and Waymo Agreements.**  Waymo seeks to close the courtroom for discussion of specific terms of Google and Waymo agreements, and internal discussions relating to those terms. Waymo specifically seeks to shield from public disclosure the terms of Waymo's partnership with Lyft, Waymo's negotiations with Ford, and certain Google merger and acquisition deals and potential deal. (*See e.g.* TX 2110, 3548, 3550, 3660-3670, 3677-3679, 4987 and 5033.)  These documents are included on the trial exhibit list and reflect negotiations between Google and third parties on deal terms, as well as Google's internal discussions regarding deal terms, goals, and negotiation strategies.  Such information should be sealed, as public exposure would invade the privacy of third-parties and put both them and Google at a competitive disadvantage in future deal negotiations.  *See e.g. Saint Alphonsus Med. Ctr. - Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, 2013 WL 5883736, at *1 (D. Idaho Oct. 18, 2013) (reasoning that clearing the courtroom was warranted when the court found that the testimony given during the closed session typically involved some combination of sensitive negotiation strategy, confidential financial projections, or personal compensation information).

At present, Waymo does not intend to affirmatively introduce such testimony or evidence in its case-in-chief.  However, since Uber included them on the trial exhibit list, Waymo expects that Uber might plan to introduce these documents and testimony about these deals.  To the extent that Uber is going to introduce the referenced exhibits or other exhibits that disclose the deal terms, or illicit testimony about those terms, Waymo asks that the courtroom be sealed for that portion of the trial.

**Waymo's Financial Data, Projections, and Business Plans.**  Waymo seeks to close the courtroom for discussion of Waymo non-public financial data, projections, and business plans.  Waymo expects that the following will be introduced at trial and should be kept confidential:

- Waymo's future profit projections;
- Specific details regarding Waymo's future launch plans and plans to scale the business, including details regarding the target cities that Waymo is considering for future launches, details regarding its target timelines for such launches, and details regarding the scope and scale of such launches;

- Waymo's internal assessments of potential avenues for commercialization other than TaaS, and their relative advantages and disadvantages;
- Waymo's internal assessments of Waymo's technological lead, and benefits or drawbacks associated with being the first-mover in the AV-based TaaS business; and
- Waymo's internal assessment of competitors' likely reactions to Waymo's entry into the TaaS market, and Waymo's strategies for confronting the same.

Waymo expects to introduce such evidence through one or more Waymo witnesses, and that Uber will seek to rebut the evidence by calling one or more Waymo witnesses, or introducing such testimony by deposition.[1]

Were this information to be made public, it would put Waymo and its self-driving car business at a competitive disadvantage in the competitive and nascent self-driving car industry. As such, Waymo maintains that this information should be shielded from public exposure. *See e.g. Oracle Am., Inc. v. Google Inc.*, 2015 WL 7775243, at *2 (N.D. Cal. Dec. 3, 2015) (public disclosure of "sensitive, non-public financial data" related to… costs, revenues, and profits, as well as projections thereof**…** would cause harm to Google and place it at a competitive disadvantage.); *Flexible Benefits Council v. Feldman*, 2008 WL 4924711 (E.D. Va. 2008) (holding that Plaintiff's interest in preserving the confidentiality of financial data normally unavailable to the public outweighs public's interest to access).

**Employment Information.** Lastly, Waymo seeks to close the courtroom when there is discussion of employee compensation and bonus payments other than Anthony Levandowski's, and investigations into employees other than Levandowski. Waymo seeks to maintain the confidentiality of this information to protect the privacy of Waymo's past and present employees. *Painting Indus. of Hawaii Mkt. Recovery Fund v. U.S. Dep't of Air Force*, 26 F.3d 1479, 1483–84 (9th Cir. 1994) (finding significant privacy interests in particularized information about wages); (Dkt. 1241, 8/31/17 Hearing Tr., 84:2-85:1 ("I agree we don't want that necessarily to be public, because we don't want to cast aspersions on somebody.") Waymo does not intend to rely on this information in its case-in-chief. Further, in light of the Court's

---

[1] Uber's damages expert, Walter Bratic, may also testify about such information if he is not excluded. The Court granted Waymo leave to move to exclude Mr. Bratic's opinions.

order granting Waymo's Renewed Motion in Limine No. 1 (Dkt. 1885), other employees' bonus or salary data is not relevant and should not be introduced by either side.  Uber, however, has suggested that such evidence may be relevant to other issues in the case.  To the extent that Uber plans to introduce evidence of other employees' compensation or bonus payments, or investigations into other employees, Waymo asks that Uber advise Waymo and the Court in advance so that the courtroom can be closed for such testimony.  If the confidential information is disclosed in exhibits, Waymo suggests that the parties discuss how to redact publicly-viewable copies of those exhibits when they meet and confer about exhibits before their use at trial.

## **CONCLUSION**

For the foregoing reasons, Waymo respectfully requests that the Court close the courtroom for testimony or argument regarding the above topics.

DATED:  November 27, 2017                Respectfully submitted,

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Attorneys for WAYMO LLC