1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Charles K. Verhoeven (Bar No. 170151)
2    charlesverhoeven@quinnemanuel.com
     David A. Perlson (Bar No. 209502)
3    davidperlson@quinnemanuel.com
     Melissa J. Baily (Bar No. 237649)
4    melissabaily@quinnemanuel.com
     John Neukom (Bar No. 275887)
5    johnneukom@quinnemanuel.com
     Jordan Jaffe (Bar No. 254886)
6    jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:    (415) 875-6600
8  Facsimile:    (415) 875-6700

9  Attorneys for WAYMO LLC

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13  WAYMO LLC,                          CASE NO. 3:17-cv-00939

14          Plaintiff,                  **WAYMO'S RESPONSE TO ORDER RE
                                        LETTER FROM UNITED STATES
15     vs.                              ATTORNEY (DKT. 2261)**

16  UBER TECHNOLOGIES, INC.;
    OTTOMOTTO LLC; OTTO TRUCKING LLC,
17                                       Judge: The Honorable William Alsup
            Defendants.
18

19                                      **REDACTED VERSION OF DOCUMENT
                                        SOUGHT TO BE FILED UNDER SEAL**
20

21

22

23

24

25

26

27

28

Throughout this case, Uber has been trumpeting its alleged exhaustive search for Waymo documents and that nothing has been found on Uber's servers. It now appears that, [redacted]

On November 22, seven days before the parties are to pick a jury, the Acting U.S. Attorney for the Northern District of California informed the Court [redacted] not previously disclosed to the Court or Waymo, that [redacted] Specifically, [redacted] The heavily redacted copy of the Jacobs Letter, finally produced by Uber at 11:54 p.m. on November 24, and only after the Court's Notice, is attached as Ex. 1. The information in the U.S. Attorney Letter and Jacobs Letter [redacted]. As the Jacobs Letter reveals, [redacted]

Yet, even though it [redacted] *at issue in this case*, was *responsive to multiple*

*Waymo discovery requests and Court orders*, and was sent more than six months ago, to *an in-house Uber lawyer who was deposed in this very action*, Uber hid the Jacobs Letter and ▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄ from the Court and Waymo.  Uber has so far not disputed that the Jacobs letter and documents and information regarding Uber's conduct described therein was responsive to Waymo's discovery requests or Court Orders.  Nor could it.  Among other things, as detailed further below, Waymo's document requests sought all documents regarding the Ottomotto acquisition and all documents and communications regarding the misappropriated materials.  Waymo also served an interrogatory seeking Uber's "policies and practices with respect to the retention and/or destruction of" documents, "including without limitation emails, instant messages, electronically stored information, and hard copies), from 2014 to the present."  The Court's Preliminary Injunction Order required Uber to provide "a complete and chronologically organized log of all oral and written communications — including, without limitation, conferences, meetings, phone calls, one-on-one conversations, texts, emails, letters, memos, and voicemails — wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier, or consultant of defendants" (Dkt. 426 at 25, ¶ 5), and the March 16 Expedited Discovery Order ordered Uber to "produce all documents bearing on [the] deletion, destruction, or modification" of any part of downloaded materials.  (Dkt. 61 at 2.)  Yet, Uber produced nothing regarding the Jacobs Letter ▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄.  So Waymo has literally zero information about them other than the heavily redacted Jacobs Letter it got late Friday night.  Indeed, the letter ▄▄▄▄▄▄▄▄▄▄▄▄▄▄ would have remained concealed altogether had the Acting U.S. Attorney ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄ sufficiently material as to warrant an entirely unprompted letter to the Court on the eve of trial.    The only possible conclusion is that Uber intentionally withheld the Jacobs Letter and related materials to prevent Waymo from discovering material evidence in this case.

We are now seven days from trial in this action and Waymo has only just learned – from information *discovered and provided to the Court by the Acting U.S. Attorney for the Northern District of California* – of new evidence that ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ Waymo has been severely prejudiced by its

1  inability to discover this evidence in the ordinary course, and by the sudden need to divert resources

2  from trial prep days before trial is scheduled to begin to investigate and assess the impact of this

3  latest example of ████████   As detailed below, the highly relevant assertions in the Jacobs

4  Letter will require extensive discovery and investigation.  This includes document and deposition

5  discovery into:

6  ████████████████████████████████████████

7  ████████████

8  ████████████████████████████████████████

9  ████████████████████████████████████████

10 ████████████████████████████████████████

11 ████████████████████████████████

12 ████████████████████████████████████████

13 ████████████████████████████████████████

14 ██████████

15 ████████████████████████████████████████

16 ██████████████

17 ████████████████████████████████████████

18 ████████████████████████

19     Waymo is entitled to take the depositions of Travis Kalanick, Angela Padilla, Uber's expert

20 on its supposed search for misappropriated material, and others.  And Waymo will further require

21 depositions of the several individuals who have relevant information that Uber never previously

22 disclosed, ████████████████████████████████████

23 ████████████████████████████████████████

24 ████████████████████████████████████████

25 ████████████████████████████████████████

26 ████████████████  Waymo also needs to depose ████████

27 ████████████████████████████████████████

28 ████████████████████████████████████████

1   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ It is impossible to do all

2   this discovery before trial commences on December 4, just one week from now.  The prejudice to

3   Waymo from Uber's inexcusable conduct here cannot be overstated.

4   **I.**   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

5   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

6   According to the U.S. Attorney Letter, ▆▆▆▆▆▆▆▆▆▆

7   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

8   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

9   ▆▆▆▆▆▆▆▆▆▆▆▆▆ The letter states that ▆▆▆▆

10  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

11  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ It

12  also informs the Court that Mr. Jacobs told the government that ▆▆▆▆▆

13  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

14  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

15  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

16  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

17  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

18  ▆▆▆▆▆▆▆ Finally, the U.S. Attorney Letter ▆▆▆

19  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

20  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

21  ▆▆▆▆▆

22  Incredibly, despite being responsive to numerous document requests, *see* Section III, *infra*,

23  neither the May 5, 2017 letter from Richard Jacobs' attorney to Ms. Padilla nor ▆▆▆

24  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

25  ▆▆▆▆▆ were previously produced to Waymo.  Waymo is not aware of any entry in any Waymo

26  privilege log entry that correlates to the letter.  Uber never provided any information regarding Mr.

27  Jacobs' letter or the facts therein response to any interrogatory or otherwise.

28  By letter dated November 24, Waymo requested that Defendants immediately produce the

1   Jacobs Letter and ████████████████████ Waymo additionally requested: (1) any

2   additional materials related to the ████████████████ and the Jacobs Letter, (2) all

3   documents related to the allegations discussed in either the U.S. Attorney Letter or the Jacobs Letter, (3)

4   all documents or materials related to any efforts by Uber to investigate the allegations contained in either

5   Letter, ██████████████████████████████████████████████████

6   ██████████████████████████████████████████████, (4)

7   confirmation that Mr. Jacobs is no longer an Uber employee, and (5) contact information for Mr. Jacobs.

8   (Ex. 2 [QE 11/24 Letter].)  Uber produced the Jacobs Letter – in heavily redacted form – at 11:54 p.m.

9   on November 24.  (Ex. 1 [Jacobs Letter].)  Almost half the document is redacted.  *See id.*  Uber also

10  designated the redacted version of the letter "Attorneys' Eyes Only."[1]  Uber has otherwise refused to

11  provide any further information or documents in response to Waymo's inquiries.

12  **II.    The Jacobs Letter Describes** ████████████████████████

13  ████████████████████████████████

14  ████████████████████████████████████

15  ████████████████████████████████████████████

16  ████████████████████His letter to Padilla███████████████

17  ████████████████████████████████████████████

18  ████████████████████████████████████████████

19  ████████████████████████████████████████████

20  ████████████████████████████

21        In particular, the unredacted portions of the Jacobs Letter ████████

22  ████████████████████████████████████████████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25

26  _____

27        [1]   Waymo challenged Uber's extensive redactions and its designation of the Jacobs Letter as "Attorneys Eyes Only" at a meet and confer on November 25.  (Ex. 3 [J. Judah 11/25 Email].)  Uber

28  has only permitted two Waymo attorneys to review the unredacted document at Morrison & Foerster LLP's San Francisco office.  (Ex. 4 [A. Gonzalez 11/25 Email].)



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15      Two of Waymo's attorneys were also permitted to review an unredacted version of the letter at

16  MoFo's offices on November 25.  (Ex. 5 [Judah Decl.], ¶ 2.)

17

18

19

20

21

22

23

24      *Second*, the Jacobs Letter

25

26

27

28



**III.   The Jacobs Letter** ▮▮▮▮▮▮▮▮▮▮▮ **Were Improperly Withheld From The Court And Waymo**

As set forth below, the Jacobs Letter, ▮▮▮▮▮▮▮▮▮, and related materials, are highly material and obviously responsive to numerous Waymo discovery requests and this Court's discovery Orders. Uber violated its discovery duties and likely the Orders of this Court by hiding this information.

For example ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are responsive to RFP No. 29, which sought "All DOCUMENTS and COMMUNICATIONS REGARDING negotiations over UBER's acquisition of OTTOMOTTO."[2]  These documents are

---

[2]   *See, e.g.,* Jacobs Letter at 13 ▮▮▮▮▮▮▮▮

also responsive to RFP No. 73, which requested "All DOCUMENTS AND COMMUNICATIONS REGARDING the MISAPPROPRIATED MATERIALS, INCLUDING but not limited to (i) DOCUMENTS containing any information derived from the MISAPPROPRIATED MATERIALS, (ii) any electronic media that contains or contained the MISAPPROPRIATED MATERIALS, and (iii) any DOCUMENTS REGARDING any meetings or discussions REGARDING the substance of the MISAPPROPRIATED MATERIALS outside of WAYMO."   More broadly, documents regarding Uber's polices or practices regarding the ███████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████ should have been disclosed in response to Waymo's Common Interrogatory No. 8, which asked Uber to "Describe in detail YOUR policies and practices with respect to the retention and/or destruction of DOCUMENTS (including without limitation emails, instant messages, electronically stored information, and hard copies), from 2014 to the present."

Documents related to ████████████████████ Jacobs Letter, including ████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████ would also be responsive numerous discovery requests. For example, evidence of ██████████████████████████████████████████████ ███████████████████ (Ex. 1 [Jacobs Letter], at 13) should have been disclosed in response to at least the following Waymo requests:

- **RFP No. 29**.  All DOCUMENTS and COMMUNICATIONS REGARDING negotiations over UBER's acquisition of OTTOMOTTO.

- **RFP No. 30.**  ALL DOCUMENTS REGARDING any consulting work by LEVANDOWSKI for UBER'S acquisition of OTTOMOTTO.

Further, evidence regarding the substance of the Jacobs Letter should have disclosed in response to at least the following Waymo requests:

- **RFP No. 28**.  All DOCUMENTS and COMMUNICATIONS REGARDING UBER's due diligence of OTTOMOTTO.

- **RFP No. 72**. All DOCUMENTS REGARDING DEFENDANTS' policies regarding employees' use of personal computers or other devices while working at or for DEFENDANTS.[3]

- **RFP No. 73**. All DOCUMENTS AND COMMUNICATIONS REGARDING the MISAPPROPRIATED MATERIALS, INCLUDING but not limited to (i) DOCUMENTS containing any information derived from the MISAPPROPRIATED MATERIALS, (ii) any electronic media that contains or contained the MISAPPROPRIATED MATERIALS, and (iii) any DOCUMENTS REGARDING any meetings or discussions REGARDING the substance of the MISAPPROPRIATED MATERIALS outside of WAYMO.

- **Expedited RFP No. 17**.  All COMMUNICATIONS between Travis Kalanick and any PERSON REGARDING, LEVANDOWSKI, OTTOMOTTO or OTTO TRUCKING before August 23, 2016.

- **Expedited Interrogatory No. 3**.  IDENTIFY all Uber Devices and Non-Uber Devices (as those terms are defined in UBER00006444) that LEVANDOWSKI has used to access any of DEFENDANTS' Networks (as that term is defined in UBER00006444), or that LEVANDOWSKI could have used to access any of DEFENDANTS' Networks (as that term is defined in UBER00006444).[4]

- **Common Interrogatory No. 8**. Describe in detail YOUR policies and practices with respect to the retention and/or destruction of DOCUMENTS (including without limitation emails, instant messages, electronically stored information, and hard copies), from 2014 to the present.

Despite these repeated requests, however, Uber has refused to provide any explanation as to why these materials were withheld from the Court and Waymo.  Nor does Uber dispute that these materials would have continued to be concealed from Waymo had the Acting U.S. Attorney not felt compelled to inform the Court of the information contained in them.

Uber also likely violated Court Orders by concealing information about ████████ ████████████████████████████████████████████████████  The Court's April 4 Order Re Discovery Hearing (Dkt. 144) required Defendants to bring "[a] list of all servers (and their locations) used at any time in any way for defendants' LiDAR-related activities" and expressly instructed

---

[3]   During a July 5, 2017 meet-and-confer, Waymo agreed to limit the scope of this request (without prejudice) to Levandowski's use of a personal computer while working at or for Uber or Ottomotto.

[4]   UBER00006444 is Uber's "Network & Device Acceptable Use Policy."  It defines "Uber Devices" as "Devices owned and/or issued by Uber" and "Non-Uber Devices" as "Devices owned by persons or parties other than Uber."

1   Defendants to "not leave anything off the list merely because some other server supposedly houses the

2   same materials." (Dkt. 144 at 1.)  The Jacobs Letter indicates that shortly after the Ottomotto acquisition,

3   ████████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████  (Ex. 1 [Jacobs Letter],

6   at 9-10, 13.)  It is very likely ████████████████

7   ████████████████  at some time and in some way in connection with LiDAR-related activities, but no

8   such ████  were disclosed in Uber's response to the April 4 Order.  (Ex. 6 [Response to Dkt. 144].)

9   Moreover, the Court's Preliminary Injunction Order provided that "Waymo's counsel and one expert

10  may inspect any and all aspects of defendants' ongoing work involving LiDAR" (Dkt. 426 at 25, ¶ 6),

11  yet Waymo was never permitted to inspect any such work conducted through ████████

12  ████████████████.

13          Uber's compliance with the Court's March 16 Expedited Discovery Order (Dkt. 61) is also

14  called into question by the revelations in the Jacobs Letter.  The Court ordered Uber to "produce all

15  documents bearing on [the] deletion, destruction, or modification" of any part of downloaded materials.

16  (Dkt. 61 at 2.)  The Jacobs Letter ████████████████████████████████  and should

17  have been disclosed pursuant to Uber's continuing obligation to comply with the Order, as would ████

18  ████████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████.

20          Further, the Court's Preliminary Injunction Order required Uber to provide "a complete and

21  chronologically organized log of all oral and written communications — including, without limitation,

22  conferences, meetings, phone calls, one-on-one conversations, texts, emails, letters, memos, and

23  voicemails — wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee,

24  agent, supplier, or consultant of defendants." (Dkt. 426 at 25, ¶ 5.)  Waymo has uncovered evidence of

25  meetings between Travis Kalanick and Anthony Levandowski wherein LiDAR was discussed, but that

26  have never been included on Uber's Paragraph 5 Log.  One example, raised in Waymo's Supplemental

27  Brief in support of a Motion for Order to Show Cause, is the January 3, 2016 white-boarding session

28  between Mr. Levandowski, Mr. Kalanick, and Jeff Holden.  (Dkt. 1501-4 at 8; Dkt. 1501-8.)  Uber

argued that omitting this LiDAR-related meeting from its log was excusable because, as explained in a declaration provided by an Uber attorney, "[w]ith respect to the January 3, 2016 white-board session, Mr. Kalanick and Mr. Holden did not remember this meeting and they did not have calendar entries for it that could have been used to refresh their memories." (Dkt. 1592-1 at 2.)  The absence of any calendar entries for this meeting, or any other written documentation relating to its scheduling or existence (beyond the white-boarding notes themselves, which were produced by Uber on the final day of fact discovery), suggests that it ███████████████████████████████████████████████ ████████████████████████████████████████████████████████ in response to the Court's Order.

Finally, to the extent Uber did not interview ████████████████, or search ████████████, in connection with Paragraph 4 of the Preliminary Injunction, that would be a violation of that portion of the PI Order as well.

**IV.   The Jacobs Letter Is Relevant to Uber's Liability to Waymo And To Its ████████ Spoliation of Evidence**

The evidence set forth in the Jacobs Letter ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████. As discussed above, *see* Section II, *supra*, the Jacobs Letter indicates that: ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████

In addition to providing yet more potential evidence of Uber's serious misconduct – ████████ ██████████████████ – the Jacobs Letter also raises serious questions about Uber's compliance

1   with its discovery obligations in this case, and suggests, ████████████████████████

2   █████████████████████████████████████████████████████████████████████████

3   ██████   As detailed elsewhere (Dkt. 2197-5 [Waymo Adverse Inference Opening Brief]; Dkt. 2265-2

4   [Adverse Inference Reply Brief]), even without the Jacobs Letter the evidentiary record was already

5   replete with evidence that ████████████████████████████████████████████████

6   ████████████████████     ███████████████████████████████████████

7   ████████████████████

8         Uber's failure to produce these materials is particularly troublesome given Ms. Padilla's

9   testimony subsequent to the Jacobs Letter. Ms. Padilla denied personal knowledge of precisely where

10   Uber searched for responsive materials.[5]  But she did testify that Uber had searched "everywhere" to

11   comply with its obligations under the Court's Order.  (*See* Ex. 7 [Padilla Tr.], at 45:3-13 (Q.  So you

12   can't testify as to what sources within Uber were searched or not searched in – to comply with the court's

13   [expedited discovery] order; is that right?  A.  I don't know if that impinges on privilege or not.  Q. Okay.

14   What sources did Uber search within Uber to comply with the court's order?  A.  As far as I recall,

15   everywhere.  Meaning we took this order very, very seriously and put a ton of people power on the

16   direction here in paragraph 4. And I believe we also retained outside experts to help us and moved

17   heaven and earth to look under every rock and understand the answer to paragraph 4.").)

18         Strikingly, the Jacobs letter reveals Uber's repeated representations to the Court, Waymo and

19   general public that ██████████████████████████████████████████████████

20   █████████████████████████████.  ████████████████████████████████

21   ████████████████████████████████████████████████████████████████████

22   ██████████████████████████  Uber was loudly proclaiming to this Court and the world that

23   "there is no evidence that any of the 14,000 files in question ***ever touched Uber's servers***."  *See* USA

24

25      [5]  (*See, e.g.,* Ex.7 [Padilla Tr.], at 46:10-47:1 ("Q. … Uber did not search every electronic source

26   of data within Uber in response to the Court's March 16 order?  Would you agree with that?  A.  I don't
have a basis to agree or not agree.  I'm sure that what we searched was based on identifying the most

27   likely places where any of this information would -- would be found, if it was there at all.
Q. Okay.  What areas were searched specifically?  A.  For that, you would have to ask others on the

28   team or outside counsel and the vendor that helped us.  Q.  Okay.  You don't -- you don't know that --
you don't have any personal knowledge of that yourself?  A.   I really don't.").)

Today, Uber says self-driving car files never touched its servers (April 7, 2017) (quoting a statement from Angela Padilla) *available online at* https://www.usatoday.com/story/tech/news/2017/04/07/uber-says-stolen-self-driving-car-files-never-touched-its-servers/100174652/ (last accessed 11/26/2017) (emphasis added). (*See also* Dkt. 734 [6/23/17 Hr'g Tr.], 11:19-23 ("Uber has conducted extensive searches of its servers and files for these 14,000 files and has found nothing.  And so all evidence is Uber does not even possess these 14,000 files…."); Dkt. 173-3 [Uber Preliminary Injunction Opp.] at 7) ("A search of Uber's computers has not yielded any of the 14,000 files Waymo alleges that Uber misappropriated….").)  Even if, *arguendo*, Uber's arguments are to be believed, the Jacobs Letter indicates that there may be a very good reason why the "14,000 files in question" were supposedly not found on Uber's servers █████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

**V.    Discovery That Would Be Needed To Investigate The Scope Of Uber's ████████ Against Waymo**

The ████████████████ assertions in the Jacobs Letter require a further detailed and lengthy investigation to discover the extent to which ████████████████ in the Jacobs Letter relates to Waymo's trade secret claims and spoliation arguments here.  This includes document and deposition discovery into topics such as:

•  █████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████

•  █████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
██████████████████████

███████████████████████████████████████████████████████████████

WAYMO NOTICE OF U.S. ATTORNEY LETTER



Additional depositions are also needed as the new evidence presented in the Jacobs Letter and U.S. Attorney Letter calls into questions the testimony of multiple witnesses deposed in this case and identifies new, previously-undisclosed witnesses, with firsthand knowledge of key evidence relating to Waymo's claims.  In particular, Waymo seeks to re-depose the following witnesses concerning the contents of the Jacobs Letter, including the information presented relating to

- **Travis Kalanick**.

- **Angela Padilla**.  The recipient of the Jacobs Letter (*id.*) , Ms. Padilla has firsthand knowledge

of any Uber response or investigation into the activities discussed in it.  She was also involved directly in preparing Uber's discovery responses in this action.

- **Kevin Faulkner**.  Mr. Faulkner is a Managing Director and head of the New York digital forensics lab at Stroz Friedberg and he submitted two expert reports in this action.  As such, he has firsthand knowledge of what was – ████████████ – searched in connection with the Stroz investigation and report.  In particular, Waymo seeks testimony from him on his awareness of ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████" (*id.* at 6) to conceal documents and communications from discovery and ████████████████████████ ████████████████████ by Stroz either in connection with its initial investigation or his expert reports.[6]

The Jacobs Letter also indicates that the following Uber executives and managers may have evidence relevant to Waymo's claims and/or Uber's spoliation of evidence in anticipation of this action.

- **Richard Jacobs**. ██████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████

- **Mat Henley**. ████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████

- **Joe Sullivan**. ████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████

- **Craig Clark**. ██████████████████████████████████

---

[6]  Mr. Faulker has been deposed once to date, on the opinions set forth in his initial report; a second deposition regarding his supplemental report is planned.



- **Nick Gicinto**.

- **Ed Russo**.

- **Kevin Maher**.

- **Jake Nocon**.

Other Uber staffers mentioned in the Jacobs Letter who may have relevant testimony include:

Of course, all Waymo has now is the redacted Jacobs Letter.  Full discovery into these issues will no doubt reveal further relevant witnesses, documents, and other information.

**VI.     Uber Improperly Redacted and Designated the Jacobs Letter "Attorney's Eyes Only"**

Waymo counsel has repeatedly requested that Uber remove its improper "Attorneys' Eyes Only" designation from the Jacobs Letter, including during a meet and confer with the Special Master and in multiple emails sent on November 25.  (Ex. 3 [J. Judah 11/25/17 Email]; Ex. 8 [D. Perlson 11/24/17 Email].)  Yet, Uber has never explained why any portion of the letter qualifies for "Attorneys' Eyes Only" protection under the Protective Order governing production in this case, or any other designation.  Further, Uber's approach to redactions for "relevance" mirrors the approach it took when trying to conceal the letter from Uber investors that led to Travis Kalanick's resignation as Uber's CEO – an approach that was rejected out of hand by Judge Corley.  (Ex. 8 [D. Perlson 11/24/17 Email (citing 7/20/2017 Hr'g Tr. at 4:11-5:2)], at 1.[7])  We further pointed out that:



(Ex. 3 [J. Judah 11/25 Email], at 1 (emphasis added).)  In response, Uber's counsel compared

(Ex. 4 [A. Gonzalez 11/25 Email], at 1.)

Uber's analogy to the Stroz materials serves only to underline the impossibility of getting adequate discovery before the December 4 trial.  Once again, Defendants are using entirely improper privilege assertions to conceal evidence that is highly relevant to Waymo's claims.  The redacted

---

[7] As Judge Corley has already made abundantly clear in this very action, parties are not permitted to redact information from production absent "a good faith belief that it is attorney-client privilege or work product privilege."  (Dkt. 516 [5/25/17 Hr'g Tr.], at 23:10-13.)

1   portions of the Jacobs Letter ███████████████████████████████████

2   ███████████████████████████████████████████████████████████████

3   ███████████████████████████████████████████████████████████████

4   ███████████████████████████████████████████████████████████████

5   ███████████████████████████████████████████████████████████████

6   ███████████████████████████████████████████████████████████████

7   ██████████████████████████████████████████  Waymo should be permitted

8   immediate discovery into this ██████████████.  In particular, Waymo should be permitted to fully

9   explore the extent to which Uber targeted Waymo with the same misconduct described in the Jacobs

10  Letter and/or used identical tactics ███████████████████ prior to the acquisition closing.

11  Defendants' attempt to prevent that discovery on the eve of trial by reasserting bogus privilege assertions

12  and confidentiality designations should not be tolerated by this Court.

13  **VII.    Uber Should Not Be Heard To Object To Waymo's Discovery Into Information Revealed In The Jacobs Letter**

14          The undersigned counsel for Waymo received a redacted "Attorneys Eyes Only" version of the

15  Jacobs Letter at 11:54 p.m. on November 24.  Over the last couple of days, we have undertaken as

16  extensive a review as possible of Uber's existing production in an effort to ascertain both the scope of

17  prejudice to Waymo and whether any of the new information contained in the Jacobs Letter could have

18  been gleaned from Uber's production.  In short, we have not been able to identify any evidence

19  whatsoever that would have revealed any of this new information.

20          For example, our searches of Uber's production for reference to █████████████████

21  ███, and the key individuals (including ██████████) involved in ████████████ described in the Jacobs

22  Letter, revealed no hits.[8]  We also found no reference to Richard Jacobs, no evidence of any discussion

23  of the information contained in the Jacobs Letter, and no reference to ███████████████████

24  ██████████████████████████████████ anywhere in the production.  There is

25

26  _____

27      [8]   For example, we searched Uber's production and found no references to: ██████████████

28  ███████████████████████████████████████████████████████████████
    ███████████████████████████████████████████████████████████████
    ████████████████████████;

also no mention of the information contained in the Jacobs Letter in any of Uber's interrogatory responses.

Further, none of Uber's privilege log entries appears to relate to either the contents of the Jacobs Letter or any investigation into the information contained in it. Even if they did, there is nothing remotely privileged about either the Jacobs Letter – a letter from a third party to Uber – or the facts it reveals, and nothing that could have justified Uber's withholding of the letter on privilege grounds even if it had sought to take such a step.[9] Thus, even without the skepticism that must now envelope any claim of privilege by Uber in light of ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ (Ex. 1 [Jacobs Letter], at 8-9), any post-hoc privilege assertions should be dismissed out of hand. To the extent any privilege may once have existed, it has long-since been waived.

As this Court is aware, Uber has repeatedly – as recently as last week – argued to this Court that its rampant, intentional spoliation of evidence relevant to Waymo's trade secret misappropriation claims was innocent and "Uber did not act in bad faith in connection with any of the instances of alleged destruction of evidence…." (Dkt. 2240-4 [Defendants Spoliation Opp.], at 22.) We know now that *at the very same time* that Defendants were making these representations to the Court, they were ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████ Such ████████ behavior should not be tolerated by this Court.

## VIII.   A Continuance Is Appropriate To Provide Waymo With Sufficient Time To Fully Evaluate The Malfeasance And Spoliation Described In The Jacobs Letter

This case is scheduled to go to trial in one week. Jury selection is in two days. Yet, Waymo has once again been forced to redirect its resources from trial – this time to investigate and respond to the ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[9]  As discussed above, *see* Section VI, *supra*, Uber's extensive redactions of the document are inappropriate for the same reason.

1 ███████████████████████████████████████████████████

2 ████   It is highly unusual for an Acting U.S. Attorney, ████████████████████████████, to

3 send a letter to a court in a civil proceeding providing information which, if true, ████████████

4 ██████████   Again, the Jacobs Letter explicitly says ██████████████████████

5 ██████████████████████████████████████████████████

6 ████   These letters also cast serious doubt on Uber's claims to have engaged in good faith discovery in

7 this action; at worst, they provide evidence that ███████████████████████████████

8 ████████████████.

9     Waymo needs time to get to the bottom of this and to complete the necessary document and

10 deposition discovery discussed above.  Given Uber's consistent failures to meet its discovery obligations

11 in this case, and apparent misrepresentations to this Court, Waymo has no choice but to seek a

12 continuance of the trial date to enable Waymo to take additional discovery on this new information that

13 is indisputably relevant to Waymo's trade secret misappropriation claims.

14

15 Respectfully submitted,

16 DATED:  November 27, 2017                QUINN EMANUEL URQUHART & SULLIVAN, LLP

17                                          By  */s/ Charles K. Verhoeven*

18                                              Charles K. Verhoeven
                                                Attorneys for WAYMO LLC

19

20

21

22

23

24

25

26

27

28