# EXHIBIT 7

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

1          UNITED STATES DISTRICT COURT
2         NORTHERN DISTRICT OF CALIFORNIA
3            SAN FRANCISCO DIVISION
4
5   _____
6   WAYMO LLC,                          )
7              Plaintiff,               )
8      vs.                              ) Case No.
9   UBER TECHNOLOGIES, INC.;            ) 17-cv-00939-WHA
10  OTTOMOTTO, LLC; OTTO TRUCKING LLC,  )
11             Defendants.              )
    _____)
12
13   HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
14
15     VIDEOTAPED DEPOSITION OF ANGELA L. PADILLA, ESQ.
16              San Francisco, California
17              Monday, October, 2017
18                    Volume I
19
20  Reported by:
21  MARY J. GOFF
22  CSR No. 13427
23  JOB No. 2716665
24
25  PAGES 1-111

                                                Page 1

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | subject? | 10:34:28 |
| 2 |     A    Truly, I do not. | 10:34:29 |
| 3 |     Q    So you can't testify as to what sources | 10:34:45 |
| 4 | within Uber were searched or not searched in -- to | 10:34:47 |
| 5 | comply with the court's order; is that right? | 10:34:55 |
| 6 |     A    I don't know if that impinges on privilege | 10:35:03 |
| 7 | or not. | 10:35:05 |
| 8 |     Q    Okay.  What sources did Uber search within | 10:35:05 |
| 9 | Uber to comply with the court's order? | 10:35:11 |
| 10 |     A    As far as I recall, everywhere.  Meaning | 10:35:16 |
| 11 | we took this order very, very seriously and put a | 10:35:21 |
| 12 | ton of people power on the direction here in | 10:35:28 |
| 13 | paragraph 4. | 10:35:34 |
| 14 |     And I believe we also retained outside | 10:35:36 |
| 15 | experts to help us and moved heaven and earth to | 10:35:38 |
| 16 | look under every rock and understand the answer to | 10:35:46 |
| 17 | paragraph 4. | 10:35:50 |
| 18 |     Q    Okay.  So who did -- who did you retain? | 10:35:53 |
| 19 |     A    I don't recall the name of the forensic | 10:35:59 |
| 20 | expert that was retained. | 10:36:01 |
| 21 |     Q    Do you recall the -- the entity? | 10:36:02 |
| 22 |     A    Hum-um.  I don't.  I'm sorry. | 10:36:04 |
| 23 |     Q    Do you know what specifically that entity | 10:36:06 |
| 24 | did to search within Uber? | 10:36:10 |
| 25 |     A    I'm sure -- sorry.  Is your question done? | 10:36:16 |

Veritext Legal Solutions
866 299-5127

```
 1    to mind right now.                                      10:38:15
 2        Q    (BY MR. PERLSON)  Okay.                        10:38:16
 3        A    And speak to the individuals named here,       10:38:17
 4    Anthony, Sameer, Radu.                                  10:38:19
 5             The idea was to -- to leave no stone           10:38:24
 6    unturned.  The idea was scorched-earth approach.        10:38:26
 7        Q    But you didn't search everywhere -- Uber       10:38:34
 8    didn't search everywhere within -- let me start over    10:38:37
 9    again.                                                  10:38:41
10             Uber did not search every electronic           10:38:42
11    source of data within Uber in response to the           10:38:44
12    court's March 16 order?  Would you agree with that?     10:38:53
13        A    I don't have a basis to agree or not           10:38:59
14    agree.  I'm sure that what we searched was based on     10:39:01
15    identifying the most likely places where any of this    10:39:06
16    information would -- would be found, if it was there    10:39:13
17    at all.                                                 10:39:16
18        Q    Okay.  What areas were searched                10:39:17
19    specifically?                                           10:39:19
20        A    For that, you would have to ask others on      10:39:20
21    the team or outside counsel and the vendor that         10:39:22
22    helped us.                                              10:39:26
23        Q    Okay.  You don't -- you don't know that --     10:39:28
24    you don't have any personal knowledge of that           10:39:30
25    yourself?                                               10:39:32
```

Page 47

| | | |
|---|---|---|
| 1 | A    I really don't. | 10:39:33 |
| 2 | Q    Okay.  And so you don't know specifically | 10:39:33 |
| 3 | what outside counsel did in terms of trying to | 10:39:37 |
| 4 | obtain -- obtain any information responsive to | 10:39:44 |
| 5 | paragraph 4 of the March 16 order; is that fair? | 10:39:48 |
| 6 | A    I mean, that's fair to say.  I know in | 10:39:52 |
| 7 | general how one would search for this kind of | 10:39:54 |
| 8 | information, but I don't know specifically what they | 10:39:57 |
| 9 | did. | 10:40:01 |
| 10 | Q    Okay.  And as to the in-house counsel that | 10:40:01 |
| 11 | was tasked to assist with Uber's response to | 10:40:08 |
| 12 | paragraph 4 of the court's March 16 order, you don't | 10:40:12 |
| 13 | know specifically what -- what they did; is that | 10:40:16 |
| 14 | fair? | 10:40:20 |
| 15 | A    I know they spent a ton of time over at | 10:40:20 |
| 16 | Otto in trying to find any of this information, if | 10:40:24 |
| 17 | any of it existed, and interviewing people and | 10:40:28 |
| 18 | reviewing forensic material that had been acquired. | 10:40:33 |
| 19 | But -- but in terms of telling you detail | 10:40:37 |
| 20 | by detail, no, I can't do that. | 10:40:39 |
| 21 | Q    Okay.  And -- and how did you know that | 10:40:42 |
| 22 | the -- that your in-house team was -- was doing | 10:40:43 |
| 23 | investigations or talking to people at Ottomotto? | 10:40:52 |
| 24 | A    I was told so. | 10:40:56 |
| 25 | Q    Okay.  By your in-house -- | 10:40:57 |

Veritext Legal Solutions
866 299-5127