1 QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
2   charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
3   davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
4   melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
5   johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
6   jordanjaffe@quinnemanuel.com
  50 California Street, 22nd Floor
7 San Francisco, California 94111-4788
  Telephone:     (415) 875-6600
8 Facsimile:     (415) 875-6700

9 Attorneys for WAYMO LLC

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

| | |
|---|---|
| 13  WAYMO LLC, | CASE NO. 3:17-cv-00939 |
| 14        Plaintiff, | **PLAINTIFF WAYMO LLC'S MOTION FOR LEAVE TO SUPPLEMENT ITS TRIAL WITNESS LIST** |
| 15     vs. | |
| 16  UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC, | Trial Date:   December 4, 2017 |
| 17  | |
| 18        Defendants. | **PUBLIC REDACTED VERSION OF DOCUMENT FILED UNDER SEAL** |

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE that on a date and time to be scheduled by the Court, before the

4   Honorable William H. Alsup, U.S. District Court Judge, Plaintiff Waymo LLC ("Waymo") will and

5   hereby does move the Court for leave to supplement its trial witness list.  Waymo brings this Motion

6   pursuant to the Court's Order Granting Waymo's Request to File a Motion to Supplement its Trial

7   Witness List.  (Dkt. 2274).

8        The Motion is supported by this Notice of Motion, the attached Memorandum of Points and

9   Authorities, the accompanying attorney declaration, the pleadings and papers on file in this action, and

10  such arguments and authorities as may be presented to the Court at or before the hearing on this Motion.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-
WAYMO'S MOTION FOR LEAVE TO SUPPLEMENT ITS TRIAL WITNESS LIST

1

2    With its damages expert Michael Wagner excluded, Waymo will have to spend a

3 significant amount of trial time authenticating and laying foundation for documents that the jury

4 can use to evaluate the extent to which Defendants have been unjustly enriched from their

5 misappropriation of Waymo's trade secrets or, alternatively, to evaluate the *Georgia-Pacific*

6 factors to determine reasonable royalty damages resulting from Defendants' misappropriation.  If

7 Mr. Wagner had not been excluded, Waymo would otherwise have introduced this evidence

8 through Mr. Wagner under Fed. R. Evid. 703.  Given the changed circumstances resulting from

9 the Court's Order excluding Wagner, good cause exists to permit Waymo to add three additional

10 witnesses to its trial exhibit list:  Shawn Bananzedeh, Prabir Adarkar, and an Uber Custodian of

11 Records.  Because Defendants have already deposed Waymo employee Mr. Bananzedeh and

12 because Mr. Adarkar and the Uber Custodian of Records are Uber witnesses within Defendants'

13 control, Defendants will not be prejudiced by the addition of these witnesses.

14 **I.    BACKGROUND**

15    **A.    <u>Waymo Is Entitled To Present a Damages Case to the Jury</u>**

16    On November 2, the Court granted Uber's motion to exclude Wagner's testimony.  (Dkt.

17 2166.)  In its Order, the Court confirmed that Waymo may still present a damages theory through

18 fact witnesses.  (*Id.* at 9) ("Insofar as the Qi slide and other evidence in this case may turn out to

19 be good barometers of Uber's expectations going into the Ottomotto acquisition, that evidence can

20 stand on its own for the jury's consideration."); *id.* at 10 ("Again, the documents cited by Wagner

21 can independently come into evidence and counsel can make the argument as well as Wagner").)

22    At the November 14 hearing, the Court rejected Uber's argument that Waymo should be

23 precluded from putting on a damages case:

24    **THE COURT:** I don't believe that's what the Federal
     Circuit -- that's not the way you try a case. That's not the

25    way you can possibly try a case. You're saying a judge has got
     to sort it out in every case -- has got to sort out the damages

26    numbers ahead of time, in every case, and not actually hear the
     evidence?

27    **MR. BULAND:** No, Your Honor.

28    **THE COURT:** It's impossible and immoral to do that.

-1-

1

2     **MR. BULAND:** I'm sorry to interrupt, Your Honor.
      That's why Rule 26 says the plaintiffs have to compute

3     damages. That's why interrogatories say you compute it. And
      we have a chance to see.  We still don't have a royalty number. We
      still don't know if it's a running rate, a lump sum. There's no way to

4     calculate it.

5     **THE COURT:** Well, that's because you knocked out their
      expert.

6

7     **MR. BULAND:** Well, they still need to disclose under
      Rule 26 what it is. They have an offer of prove. There's
      still no royalty.

8

      **THE COURT:** I'm not knocking it out upfront. I may

9     knock it out at Rule 50 time, but I'm not knocking it out –

10    **MR. BULAND:** Your Honor, may we still object at trial
      to these specific damages figures that we do think are

11    objectionable under –

12    **THE COURT:** Object away. Object away. Maybe one or
      two of them you will sustain it on a case-by-case basis.

13    But it's impossible to try a case the way you want to try
      the case. It's -- no. No. No more on this.

14
      (Dkt. 2222, 11/14/17 Hearing Tr., 88:8-89:11.)  As can been seen from these comments, the Court

15
      indicated that it intends to give Waymo at least some flexibility to present its damages case since it

16
      was Uber that asked to strike Mr. Wagner's opinions.  That flexibility should include permitting

17
      Waymo to amend its trial witness list so that it can offer the documents and percipient witness

18
      testimony necessary to establish its damages case.

19
              **B.**      **Waymo Served its Initial Witness List Before the Court's Order Excluding**

20                        **Wagner**

21            Waymo served its initial trial witness list on September 16, before the Court issued its

22    Order excluding the testimony of Michael Wagner on November 2.  (Dkt. 2166.)  After the Court

23    issued its Wagner Order, Waymo sought to add Shawn Bananzedeh and Prabir Adarkar to its trial

24    witness list on November 15, and informed Uber on November 22 that it would seek leave to add

25    an Uber Custodian of Records witness as well.  As Waymo has explained to Uber, Waymo is

26    seeking leave to add these witnesses to support certain aspects of its damages case that Waymo

27    otherwise would have introduced through Wagner pursuant to Fed. R. Evid. 703.

28            In order to provide the full picture, Waymo notes that, prior to the Wagner Order, Waymo

-2-

1   had requested to add Mr. Bananzedeh to its witness list in the normal course, pursuant to the

2   parties' mutual contemplation that each may have a small number of one-off requests to add trial

3   witnesses and/or trial exhibits to their initial lists.  In light of Uber's objection to the addition,

4   however, on October 26, the Court ruled that Waymo may only rely on Mr. Bananzadeh as a

5   rebuttal witness if Uber relies on his testimony first.  (Dkt. 2125 at 12:2-13:17.)  But the Court's

6   November 2 Wagner Order constitutes a change in circumstances that has precipitated the need for

7   Waymo to be permitted to call Mr. Bananzadeh for the limited purposes described below.

8   **II.      ARGUMENT**

9          The Court should grant Waymo's motion because Waymo has shown good cause and

10  because Defendants will not be prejudiced by the addition of Waymo's proposed witnesses.  The

11  fact that Waymo may need to introduce testimony and evidence through fact witnesses is the

12  logical result of the Court's Order excluding Wagner.  And Waymo's request is a modest one:

13  Waymo is only seeking to add three witnesses, all of whom are known to Uber.  It would be unfair

14  for the Court to exclude Wagner's original opinions, prohibit Wagner from offering new opinions

15  addressing the issues identified in the Court's Order, and then *also* deny Waymo's reasonable

16  request to add three fact witnesses that it now needs to support its damages case.

17          **A.      Shawn Bananzedeh**

18          Mr. Bananzedeh is well-known to Uber:  Mr. Bananzedeh was Waymo's 30(b)(6) witness

19  on Waymo's cost to develop the asserted trade secrets, and Uber spent a full day deposing him in

20  both his 30(b)(6) and personal capacity during fact discovery.  (*See* Declaration of Jeff Nardinelli

21  at ¶ 3.)  As Waymo disclosed in its trial witness list, Mr. Bananzedeh will provide "non-

22  cumulative testimony regarding costs of development of, and management of, Waymo's self-

23  driving cars and autonomous vehicle technology."  (Ex. 1.)  Specifically, Mr. Bananzedeh will

24  testify regarding how Waymo calculated the costs associated with developing the asserted trade

25  secrets, a subject on which Waymo provided information to Uber in the form of an interrogatory

26  response on August 10 and on which Uber questioned Mr. Bananzedeh at length at his deposition.

27  (Dkt. 933-5.)  In connection with testimony on this topic, Waymo plans to introduce at least TX-

28

1  1400 (Waymo's cost information) and TX-3383 (Waymo's headcount) through Mr. Bananzedeh.[1]

2  Uber questioned Mr. Bananzedeh extensively about TX-1400 during his 30(b)(6) deposition.

3  Waymo may also introduce a variation of the following illustration through Mr. Bananzedeh:



As Waymo has explained elsewhere, Waymo's development costs are relevant for several reasons. *First*, Waymo's development expenses are relevant to whether the misappropriated information constitutes protectable trade secrets. "As a general principle, the more difficult information is to obtain, and the more time and resources expended by an employer in gathering it, the more likely a court will find such information constitutes a trade secret." *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522, 66 Cal. Rptr. 2d 731, 736 (1997) (interpreting UTSA); *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, 2013 WL 2151553, at \*7 (E.D. Cal. 2013) (information is a

---

[1]   Pursuant to the Court's order granting Waymo leave to bring this motion (Dkt. 2274), Waymo submits this offer of proof with respect to the exhibits and/or illustrations that Waymo expects to introduce through the three witnesses who are the subject of this motion. Waymo reserves the right to introduce additional materials through these witnesses at trial, and will disclose any additional materials according to the parties' agreed-to disclosure schedule.

1  protectable trade secret because plaintiff invested "significant time, labor and capital" in

2  compiling it).  In its November 21 Revised Tentative Jury Instructions, this Court recognized the

3  relevance of development expenses to the issue of whether particular information constitutes a

4  protectable trade secret.  *See* Dkt. 2251 at 5 ("In determining whether the information had actual

5  or potential independent economic value because it was secret, you may consider the following:  .

6  . . The amount of time, money, or labor that the owner expended in developing the information").

7         *Second,* Waymo's development expenses are relevant to the jury's evaluation of unjust

8  enrichment damages.  *W.L. Gore & Assoc., Inc. v. GI Dynamics*, Inc., 872 F. Supp. 2d 883, 892

9  (D. Ariz. 2012) (denying motion to exclude expert's calculation of unjust enrichment damages

10 premised on R&D costs and acknowledging that "[t]he cost to create property has long been

11 considered an appropriate factor in computing damages"); *Telex Corp. v. Int'l. Bus. Mach.*

12 *Corp.,* 510 F.2d 894, 931 (10th Cir. 1975), *abrogated on other grounds by Novell, Inc. v.*

13 *Microsoft Corp.*, 731 F.3d 1064, 1072 (10th Cir. 2013) (affirming unjust enrichment

14 damages award based on research costs where "[t]he trial court found that IBM had itself

15 expended $30,000,000 to develop the Merlin, and that it took six years to do so.  Telex, on the

16 other hand, through the use of IBM trade secrets was able to develop its equivalent in some

17 eighteen months.").

18        *Third,* Waymo's development expenses are relevant to the hypothetical negotiation for

19 purposes of reasonable royalty damages.  *University Computing Co. v. Lykes-Youngstown Corp.*,

20 504 F.2d 518, 539 (5th Cir. 1974) ("In calculating what a fair licensing price would have been had

21 the parties agreed, the trier of fact should consider such factors as . . . the total value of the secret

22 to the plaintiff, including the plaintiff's development costs."); *see also Litton Systems, Inc. v.*

23 *Ssangyong Cement Indus. Co*., 1993 WL 317266, at *2 (N.D. Cal. 1993) (same).

24        *Fourth*, Waymo's development expenses are a relevant check on Uber's expectations

25 regarding its own development expenses, which will aid the jury in considering the hypothetical

26 negotiation.  The evidence will show that, as of the time of the hypothetical negotiation, Uber was

27 expecting to spend $20 million per month to develop in-house LiDAR.  (TX-170.)  Seven years'

28 worth of development at a run rate of $20 million per month is approximately $1.680 billion,

1  which is the same order of magnitude as Waymo's expenses related to LiDAR development over

2  seven years.  Thus, both parties would have had similar expectations regarding the overall

3  development expenses associated with LiDAR – and potential savings through licensing rather

4  than developing certain trade secrets.

5  **B.**  **Mr. Adarkar**

6  Mr. Adarkar is Head of Strategic Finance at Uber, and Uber's acting CFO.  As a result,

7  Uber has had access to Mr. Adarkar and his knowledge throughout the case.  Waymo also deposed

8  Mr. Adarkar during fact discovery, meaning that Uber has been on notice that Waymo considers

9  his testimony to be relevant.  Finally, Mr. Wagner cited to and relied on Mr. Adarkar's deposition

10  testimony in his opening report, so Uber has also been aware that Waymo would rely on Mr.

11  Adarkar's testimony to support its damages case since at least August 24.

12  As Waymo disclosed in its trial witness list, Mr. Adarkar will provide "non-cumulative

13  testimony regarding Uber's financial forecasts for autonomous vehicles, and Uber's competitive

14  relationship with Waymo, including its willingness to cut prices to compete with Waymo."  (Ex.

15  1.)  Specifically, during his deposition, Mr. Adarkar testified that, if Uber believed it was in the

16  best interest of its business, Uber would have the ability to ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

17  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

18  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆  (Dkt. 1557-20.)  Waymo plans to introduce this testimony

19  through Mr. Adarkar.  As Waymo disclosed in its offer of proof regarding reasonable royalty

20  damages (Dkt. 2189-4), this information is highly relevant at least to *Georgia-Pacific* Factor 5, the

21  commercial relationship between licensor and licensee.

22  **C.**  **Uber Custodian of Records**

23  Waymo also seeks leave to add an Uber Custodian of Records to its trial witness list, and

24  to depose Uber's Custodian of Records for four hours in advance of trial.  As Waymo has

25  explained to Uber, Waymo seeks to add this witness so it can efficiently authenticate and lay a

26  foundation for Uber documents that the jury can use to evaluate damages resulting from

27  Defendants' misappropriation.  This is an accepted and allowable approach.  *Mc Asset Recovery,*

28  *LLC v. Castex Energy, Inc*., No. 4:07-CV-076-Y, 2013 WL 12171724, at *2 (N.D. Tex. Jan. 7,

-6-

1    2013) (issuing a trial subpoena to a records custodian since "one of the primary purposes behind

2    the subpoena is to procure a records custodian to authenticate certain documents for introduction

3    at trial."); *Commodity Futures Trading Comm'n v. Amerman*, No. 1:07-CV-2280-HTW, 2011 WL

4    13121207, at *1 (N.D. Ga. Oct. 7, 2011) ("[T]he Court hereby orders Defendant Amerman to

5    identify and authenticate the corporate records of DVG he has already produced, as a custodian of

6    DVG, to the Plaintiff in this case.").

7            Waymo plans to introduce at least TX-821, TX-882, TX-4749, TX-4442, TX-883, TX-

8    9147, TX-7304 and TX-4737 through an Uber Custodian of Records.  Generally, these are internal

9    Uber emails, presentations and spreadsheets regarding the pace of Uber's development, the rate at

10   which Uber plans to roll out its autonomous vehicles, Uber's development expenses, and Uber's

11   profit projections for its autonomous vehicle business in the future, all of which are relevant to

12   both unjust enrichment and reasonable royalty damages.  For example, TX-821 reflects the Head

13   of ATC's view on the importance of LiDAR to the overall AV timeline at the time of

14   misappropriation.  TX-882, TX-883, TX-4442, TX-4737 and TX-4749 are presentations

15   documenting how Uber's development and launch timeline changed over time, many of which

16   specifically document Uber's extensive "Rubicon" project.  The Rubicon project was a ███████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ███████   (TX-882.)  The team was responsible for ███████████████████

20   █████████████████████████████████████████ Ms. Qi relied on

21   data from Uber's Rubicon project in putting together her analysis for the Otto acquisition (TX-

22   299), and together this collection of Rubicon presentations show that ██████████████

23   █████████████████████████████████████████ TX-7304 is the

24   financial modeling that supports the acceleration analysis Ms. Qi undertook as part of the Otto

25   acquisition (and which the Court has already noted can come into evidence), and TX-9147 is

26   additional modeling of the same type.

27   **III.   CONCLUSION**

28           For the foregoing reasons, the Court should allow Waymo to add Mr. Bananzadeh, Mr.

1   Adarkar and an Uber Custodian of Records to its trial witness list.

2

3   DATED:  November 29, 2017                QUINN EMANUEL URQUHART & SULLIVAN,
                                             LLP
4
                                             By  */s/ Charles K. Verhoeven*
5                                                ───────────────────────────────
                                                 Charles K. Verhoeven
6                                                Attorneys for WAYMO LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WAYMO'S MOTION FOR LEAVE TO SUPPLEMENT ITS TRIAL WITNESS LIST