1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Charles K. Verhoeven (Bar No. 170151)
2    charlesverhoeven@quinnemanuel.com
     David A. Perlson (Bar No. 209502)
3    davidperlson@quinnemanuel.com
     Melissa Baily (Bar No. 237649)
4    melissabaily@quinnemanuel.com
     John Neukom (Bar No. 275887)
5    johnneukom@quinnemanuel.com
     Jordan Jaffe (Bar No. 254886)
6    jordanjaffe@quinnemanuel.com
   50 California Street, 22nd Floor
7  San Francisco, California 94111-4788
   Telephone:    (415) 875-6600
8  Facsimile:    (415) 875-6700

9  Attorneys for WAYMO LLC

10                     UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12                          SAN FRANCISCO DIVISION

13  WAYMO LLC,                              CASE NO. 3:17-cv-00939

14             Plaintiff,                   **PLAINTIFF WAYMO LLC'S MOTION FOR LEAVE TO SUPPLEMENT ITS**
15        vs.                               **TRIAL WITNESS LIST**

16  UBER TECHNOLOGIES, INC.;
    OTTOMOTTO LLC; OTTO TRUCKING           Trial Date:   December 4, 2017
17  LLC,

18             Defendants.                  **PUBLIC REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on a date and time to be scheduled by the Court, before the Honorable William H. Alsup, U.S. District Court Judge, Plaintiff Waymo LLC ("Waymo") will and hereby does move the Court for leave to supplement its trial witness list.  Waymo brings this Motion pursuant to the Court's Order Granting Waymo's Request to File a Motion to Supplement its Trial Witness List.  (Dkt. 2274).

The Motion is supported by this Notice of Motion, the attached Memorandum of Points and Authorities, the accompanying attorney declaration, the pleadings and papers on file in this action, and such arguments and authorities as may be presented to the Court at or before the hearing on this Motion.

With its damages expert Michael Wagner excluded, Waymo will have to spend a significant amount of trial time authenticating and laying foundation for documents that the jury can use to evaluate the extent to which Defendants have been unjustly enriched from their misappropriation of Waymo's trade secrets or, alternatively, to evaluate the *Georgia-Pacific* factors to determine reasonable royalty damages resulting from Defendants' misappropriation. If Mr. Wagner had not been excluded, Waymo would otherwise have introduced this evidence through Mr. Wagner under Fed. R. Evid. 703. Given the changed circumstances resulting from the Court's Order excluding Wagner, good cause exists to permit Waymo to add three additional witnesses to its trial exhibit list: Shawn Bananzedeh, Prabir Adarkar, and an Uber Custodian of Records. Because Defendants have already deposed Waymo employee Mr. Bananzedeh and because Mr. Adarkar and the Uber Custodian of Records are Uber witnesses within Defendants' control, Defendants will not be prejudiced by the addition of these witnesses.

I. **BACKGROUND**

　　A. **Waymo Is Entitled To Present a Damages Case to the Jury**

On November 2, the Court granted Uber's motion to exclude Wagner's testimony. (Dkt. 2166.) In its Order, the Court confirmed that Waymo may still present a damages theory through fact witnesses. (*Id.* at 9) ("Insofar as the Qi slide and other evidence in this case may turn out to be good barometers of Uber's expectations going into the Ottomotto acquisition, that evidence can stand on its own for the jury's consideration."); *id.* at 10 ("Again, the documents cited by Wagner can independently come into evidence and counsel can make the argument as well as Wagner").)

At the November 14 hearing, the Court rejected Uber's argument that Waymo should be precluded from putting on a damages case:

> **THE COURT:** I don't believe that's what the Federal Circuit -- that's not the way you try a case. That's not the way you can possibly try a case. You're saying a judge has got to sort it out in every case -- has got to sort out the damages numbers ahead of time, in every case, and not actually hear the evidence?
>
> **MR. BULAND:** No, Your Honor.
>
> **THE COURT:** It's impossible and immoral to do that.

> **MR. BULAND:** I'm sorry to interrupt, Your Honor. That's why Rule 26 says the plaintiffs have to compute damages. That's why interrogatories say you compute it. And we have a chance to see. We still don't have a royalty number. We still don't know if it's a running rate, a lump sum. There's no way to calculate it.
>
> **THE COURT:** Well, that's because you knocked out their expert.
>
> **MR. BULAND:** Well, they still need to disclose under Rule 26 what it is. They have an offer of prove. There's still no royalty.
>
> **THE COURT:** I'm not knocking it out upfront. I may knock it out at Rule 50 time, but I'm not knocking it out –
>
> **MR. BULAND:** Your Honor, may we still object at trial to these specific damages figures that we do think are objectionable under –
>
> **THE COURT:** Object away. Object away. Maybe one or two of them you will sustain it on a case-by-case basis. But it's impossible to try a case the way you want to try the case. It's -- no. No. No more on this.

(Dkt. 2222, 11/14/17 Hearing Tr., 88:8-89:11.)  As can been seen from these comments, the Court indicated that it intends to give Waymo at least some flexibility to present its damages case since it was Uber that asked to strike Mr. Wagner's opinions.  That flexibility should include permitting Waymo to amend its trial witness list so that it can offer the documents and percipient witness testimony necessary to establish its damages case.

     **B.**     <u>**Waymo Served its Initial Witness List Before the Court's Order Excluding Wagner**</u>

Waymo served its initial trial witness list on September 16, before the Court issued its Order excluding the testimony of Michael Wagner on November 2.  (Dkt. 2166.)  After the Court issued its Wagner Order, Waymo sought to add Shawn Bananzedeh and Prabir Adarkar to its trial witness list on November 15, and informed Uber on November 22 that it would seek leave to add an Uber Custodian of Records witness as well.  As Waymo has explained to Uber, Waymo is seeking leave to add these witnesses to support certain aspects of its damages case that Waymo otherwise would have introduced through Wagner pursuant to Fed. R. Evid. 703.

In order to provide the full picture, Waymo notes that, prior to the Wagner Order, Waymo

1  had requested to add Mr. Bananzedeh to its witness list in the normal course, pursuant to the
2  parties' mutual contemplation that each may have a small number of one-off requests to add trial
3  witnesses and/or trial exhibits to their initial lists.  In light of Uber's objection to the addition,
4  however, on October 26, the Court ruled that Waymo may only rely on Mr. Bananzadeh as a
5  rebuttal witness if Uber relies on his testimony first.  (Dkt. 2125 at 12:2-13:17.)  But the Court's
6  November 2 Wagner Order constitutes a change in circumstances that has precipitated the need for
7  Waymo to be permitted to call Mr. Bananzadeh for the limited purposes described below.

**II.     ARGUMENT**

The Court should grant Waymo's motion because Waymo has shown good cause and because Defendants will not be prejudiced by the addition of Waymo's proposed witnesses.  The fact that Waymo may need to introduce testimony and evidence through fact witnesses is the logical result of the Court's Order excluding Wagner.  And Waymo's request is a modest one: Waymo is only seeking to add three witnesses, all of whom are known to Uber.  It would be unfair for the Court to exclude Wagner's original opinions, prohibit Wagner from offering new opinions addressing the issues identified in the Court's Order, and then *also* deny Waymo's reasonable request to add three fact witnesses that it now needs to support its damages case.

**A.     Shawn Bananzedeh**

Mr. Bananzedeh is well-known to Uber:  Mr. Bananzedeh was Waymo's 30(b)(6) witness on Waymo's cost to develop the asserted trade secrets, and Uber spent a full day deposing him in both his 30(b)(6) and personal capacity during fact discovery.  (*See* Declaration of Jeff Nardinelli at ¶ 3.)  As Waymo disclosed in its trial witness list, Mr. Bananzedeh will provide "non-cumulative testimony regarding costs of development of, and management of, Waymo's self-driving cars and autonomous vehicle technology."  (Ex. 1.)  Specifically, Mr. Bananzedeh will testify regarding how Waymo calculated the costs associated with developing the asserted trade secrets, a subject on which Waymo provided information to Uber in the form of an interrogatory response on August 10 and on which Uber questioned Mr. Bananzedeh at length at his deposition.  (Dkt. 933-5.)  In connection with testimony on this topic, Waymo plans to introduce at least TX-

1400 (Waymo's cost information) and TX-3383 (Waymo's headcount) through Mr. Bananzedeh.[1] Uber questioned Mr. Bananzedeh extensively about TX-1400 during his 30(b)(6) deposition. Waymo may also introduce a variation of the following illustration through Mr. Bananzedeh:



As Waymo has explained elsewhere, Waymo's development costs are relevant for several reasons. *First*, Waymo's development expenses are relevant to whether the misappropriated information constitutes protectable trade secrets. "As a general principle, the more difficult information is to obtain, and the more time and resources expended by an employer in gathering it, the more likely a court will find such information constitutes a trade secret." *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522, 66 Cal. Rptr. 2d 731, 736 (1997) (interpreting UTSA); *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, 2013 WL 2151553, at *7 (E.D. Cal. 2013) (information is a

---

[1] Pursuant to the Court's order granting Waymo leave to bring this motion (Dkt. 2274), Waymo submits this offer of proof with respect to the exhibits and/or illustrations that Waymo expects to introduce through the three witnesses who are the subject of this motion. Waymo reserves the right to introduce additional materials through these witnesses at trial, and will disclose any additional materials according to the parties' agreed-to disclosure schedule.

protectable trade secret because plaintiff invested "significant time, labor and capital" in compiling it). In its November 21 Revised Tentative Jury Instructions, this Court recognized the relevance of development expenses to the issue of whether particular information constitutes a protectable trade secret. *See* Dkt. 2251 at 5 ("In determining whether the information had actual or potential independent economic value because it was secret, you may consider the following: . . . The amount of time, money, or labor that the owner expended in developing the information").

*Second,* Waymo's development expenses are relevant to the jury's evaluation of unjust enrichment damages. *W.L. Gore & Assoc., Inc. v. GI Dynamics*, Inc., 872 F. Supp. 2d 883, 892 (D. Ariz. 2012) (denying motion to exclude expert's calculation of unjust enrichment damages premised on R&D costs and acknowledging that "[t]he cost to create property has long been considered an appropriate factor in computing damages"); *Telex Corp. v. Int'l. Bus. Mach. Corp.,* 510 F.2d 894, 931 (10th Cir. 1975), *abrogated on other grounds by Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1072 (10th Cir. 2013) (affirming unjust enrichment damages award based on research costs where "[t]he trial court found that IBM had itself expended $30,000,000 to develop the Merlin, and that it took six years to do so. Telex, on the other hand, through the use of IBM trade secrets was able to develop its equivalent in some eighteen months.").

*Third,* Waymo's development expenses are relevant to the hypothetical negotiation for purposes of reasonable royalty damages. *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974) ("In calculating what a fair licensing price would have been had the parties agreed, the trier of fact should consider such factors as . . . the total value of the secret to the plaintiff, including the plaintiff's development costs."); *see also Litton Systems, Inc. v. Ssangyong Cement Indus. Co*., 1993 WL 317266, at *2 (N.D. Cal. 1993) (same).

*Fourth*, Waymo's development expenses are a relevant check on Uber's expectations regarding its own development expenses, which will aid the jury in considering the hypothetical negotiation. The evidence will show that, as of the time of the hypothetical negotiation, Uber was expecting to spend $20 million per month to develop in-house LiDAR. (TX-170.) Seven years' worth of development at a run rate of $20 million per month is approximately $1.680 billion,

1  which is the same order of magnitude as Waymo's expenses related to LiDAR development over
2  seven years.  Thus, both parties would have had similar expectations regarding the overall
3  development expenses associated with LiDAR – and potential savings through licensing rather
4  than developing certain trade secrets.

5  **B.    Mr. Adarkar**

6  Mr. Adarkar is Head of Strategic Finance at Uber, and Uber's acting CFO.  As a result,
7  Uber has had access to Mr. Adarkar and his knowledge throughout the case.  Waymo also deposed
8  Mr. Adarkar during fact discovery, meaning that Uber has been on notice that Waymo considers
9  his testimony to be relevant.  Finally, Mr. Wagner cited to and relied on Mr. Adarkar's deposition
10 testimony in his opening report, so Uber has also been aware that Waymo would rely on Mr.
11 Adarkar's testimony to support its damages case since at least August 24.

12 As Waymo disclosed in its trial witness list, Mr. Adarkar will provide "non-cumulative
13 testimony regarding Uber's financial forecasts for autonomous vehicles, and Uber's competitive
14 relationship with Waymo, including its willingness to cut prices to compete with Waymo."  (Ex.
15 1.)  Specifically, during his deposition, Mr. Adarkar testified that, if Uber believed it was in the
16 best interest of its business, Uber would have the ability to
17 
18 (Dkt. 1557-20.)  Waymo plans to introduce this testimony
19 through Mr. Adarkar.  As Waymo disclosed in its offer of proof regarding reasonable royalty
20 damages (Dkt. 2189-4), this information is highly relevant at least to *Georgia-Pacific* Factor 5, the
21 commercial relationship between licensor and licensee.

22 **C.    Uber Custodian of Records**

23 Waymo also seeks leave to add an Uber Custodian of Records to its trial witness list, and
24 to depose Uber's Custodian of Records for four hours in advance of trial.  As Waymo has
25 explained to Uber, Waymo seeks to add this witness so it can efficiently authenticate and lay a
26 foundation for Uber documents that the jury can use to evaluate damages resulting from
27 Defendants' misappropriation.  This is an accepted and allowable approach.  *Mc Asset Recovery,*
28 *LLC v. Castex Energy, Inc*., No. 4:07-CV-076-Y, 2013 WL 12171724, at *2 (N.D. Tex. Jan. 7,

2013) (issuing a trial subpoena to a records custodian since "one of the primary purposes behind the subpoena is to procure a records custodian to authenticate certain documents for introduction at trial."); *Commodity Futures Trading Comm'n v. Amerman*, No. 1:07-CV-2280-HTW, 2011 WL 13121207, at *1 (N.D. Ga. Oct. 7, 2011) ("[T]he Court hereby orders Defendant Amerman to identify and authenticate the corporate records of DVG he has already produced, as a custodian of DVG, to the Plaintiff in this case.").

Waymo plans to introduce at least TX-821, TX-882, TX-4749, TX-4442, TX-883, TX-9147, TX-7304 and TX-4737 through an Uber Custodian of Records. Generally, these are internal Uber emails, presentations and spreadsheets regarding the pace of Uber's development, the rate at which Uber plans to roll out its autonomous vehicles, Uber's development expenses, and Uber's profit projections for its autonomous vehicle business in the future, all of which are relevant to both unjust enrichment and reasonable royalty damages. For example, TX-821 reflects the Head of ATC's view on the importance of LiDAR to the overall AV timeline at the time of misappropriation. TX-882, TX-883, TX-4442, TX-4737 and TX-4749 are presentations documenting how Uber's development and launch timeline changed over time, many of which specifically document Uber's extensive "Rubicon" project. The Rubicon project was a ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (TX-882.) The team was responsible for ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ms. Qi relied on data from Uber's Rubicon project in putting together her analysis for the Otto acquisition (TX-299), and together this collection of Rubicon presentations show that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ TX-7304 is the financial modeling that supports the acceleration analysis Ms. Qi undertook as part of the Otto acquisition (and which the Court has already noted can come into evidence), and TX-9147 is additional modeling of the same type.

### III.   CONCLUSION

For the foregoing reasons, the Court should allow Waymo to add Mr. Bananzadeh, Mr.

Adarkar and an Uber Custodian of Records to its trial witness list.

DATED:  November 29, 2017        QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Charles K. Verhoeven
   Charles K. Verhoeven
   Attorneys for WAYMO LLC