**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94101 | TEL (415) 875-6600

August 21, 2017

Magistrate Judge Jacqueline Scott Corley      **UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal., Case 3:17-cv-00939-WHA
      **Waymo's Opposition to Uber and Ottomotto's Motion to Compel**

Dear Judge Corley:

Please find below Plaintiff Waymo LLC's opposition to Defendants Uber Technologies, Inc. and Ottomotto LLC's motion to compel a 30(b)(6) deposition.

Sincerely,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

quinn emanuel urquhart & sullivan, llp

01980-00104/9503254.1
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

**I.      Topic 5**

Uber is wrong to state that "Waymo has put side businesses directly at issue in this case." But Waymo recognizes that the Court has ordered production of certain documents related to side businesses (Dkt. 808 at 2), and has fully complied with that order with both documents and testimony. Uber has asked former employee Bryan Salesky and current employee Zachary Morriss about their involvement with the side businesses at issue. Chris Urmson and David Ferguson will be deposed later this week and will be able to testify as to their personal knowledge. Furthermore, Uber had the opportunity to collect documents from and take a deposition of Sebastian Thrun, who had knowledge relating these side projects. Yet this past week Uber agreed to drop its subpoenas on Dr. Thrun and the three businesses with which he is associated, foregoing a deposition of Dr. Thrun.

Moreover, as Uber's motion demonstrates, Uber already has the information it seeks, at least in connection with Anthony Levandowski. According to Uber it already has testimony and documents relating to Mr. Levandowski's work on Kitty Hawk, Zee.Aero, and Tiramisu. And Uber questioned Larry Page at length regarding Mr. Levandowski's involvement in these projects.

Simply, Uber identifies no hole that needs to be filled in with further testimony. While Uber claims that discovery related to any approval to work on the referenced side projects, and who provided what approvals, "is essential in establishing that Mr. Levandowski's involvement in side projects or businesses was commonplace and, in fact, encouraged" (Dkt. 1280-1 at 3), it has failed to show that any such information is lacking from the record. Nor has it shown how any such approvals merit further discovery. There is no dispute that Mr. Levandowski did not have approval to form Otto or other competing businesses. And Waymo has provided that documentation it could locate relating to its approval of Mr. Levandowski and others to work on the three side projects at issue. There is no other information in Waymo's possession, custody, or control relating to this topic that would not be duplicative or redundant and Waymo does not anticipate that it would be able to offer any additional testimony beyond that which has or will be provided.

**II.     Topic 8**

Uber's claim that Waymo is obstructing access to discoverable and relevant information is unfounded. Uber has already deposed the person most knowledgeable on Topic 8, Jennifer Haroon, and has demonstrated no basis for a second bite at the apple. Fundamentally, Waymo has provided no justification for imposing this additional burden on Waymo when Uber opted to depose Ms. Haroon prior to serving its Rule 30(b)(6) notice.

As an initial matter, Uber's apparent complaints regarding either document production or answers to interrogatories are not relevant to its demand for testimony here. Waymo disagrees that its productions or responses to written discovery have been in any way deficient. But in any event, such disputes are not properly before the court. To the extent Uber has issues with any

Waymo discovery responses beyond the designation of a witness for Topic 8, Uber needs to raise those issues directly and through the agreed upon framework for discovery disputes. And Uber itself admits that it has in fact received discovery on the valuations referenced in its motion and that any claim for additional documentation is separate from any request for testimony.

While Uber's argument centers around the retroactive designation of Ms. Haroon's testimony, its description of the timing of the deposition is selective. Simply, Uber delayed serving its Rule 30(b)(6) notice until after Ms. Haroon's and cannot now use that delay as justification for unnecessary and duplicative discovery. The week of July 10, Uber proposed that the parties agree upon a date to mutually exchange Rule 30(b)(6) notices. (Ex. 1 at 3-4.) Waymo agreed to that framework and indicated that it was prepared to serve its notice on July 19, 2017. (*Id.* at 4.) In that response, Waymo specifically noted the need for prompt service of the notices and it expected that witnesses then scheduled to be deposed would be designated as corporate witnesses. Uber then backtracked from its proposal claiming it was not prepared to exchange notices. (*Id.* at 3.) Waymo again noted the likely problems with Uber's delay and proceeded to serve its own Rule 30(b)(6) notice. (*Id.* at 1.) Over a week later, more than two weeks after it originally suggested that the parties exchange notices, and two days after Ms. Haroon's deposition, Uber served its Rule 30(b)(6) notice. (Ex. 2). There is no explanation for this delay other than gamesmanship.

Uber's substantive complaints are similarly without merit. As Waymo has explained repeatedly, Ms. Haroon is the person most knowledgeable at Waymo on this topic. She testified competently and at length regarding Waymo's knowledge of valuations performed. And Uber's claims that Ms. Haroon lacks sufficient knowledge to be designated on this topic are belied by its specific request that she personally be made available again for deposition. There is no basis to burden Waymo, or Ms. Haroon, who is no longer a Waymo employee, at this stage of discovery.

Uber's specific examples fail to show otherwise. Uber contends that "for the first valuation she had knowledge of, Ms. Haroon knew neither the final valuation, nor the proposed valuations." (Dkt. 1280-1 at 5.) But Ms. Haroon's testimony makes clear that first valuation didn't come to a conclusion. (Ex. 3 at 203:3-204:8). It is therefore unsurprising that Ms. Haroon was unable to give the numbers that Uber references. Nor would it be inappropriate for Ms. Haroon to need to reference a document to answer questions about specific numbers as either an individual or corporate witness.

The valuations referenced at Chang Exhibits 10 and 11 are no more supportive of Uber's demand. Uber received extensive testimony from Anil Patel regarding Google's role in these valuations of Project Chauffeur. Though Mr. Patel is not a 30(b)(6) witness for Waymo, as Mr. Patel has never worked for Waymo, any testimony on these documents, to the extent available, would be redundant.

With respect to the Allen & Co. valuation, at Chang Ex. 12, Uber's characterization of the quality of Ms. Haroon's testimony is incorrect. Ms. Haroon testified at length regarding the engagement of Allen &Co., the methods used, and process by which the valuation was created. (Ex. 3 at 206:13-213:18). That Ms. Haroon could not recall certain specific numbers or was not

present for the final negotiations does not render her testimony inadequate as a Rule 30(b)(6) witness. As Judge Alsup's Standing Order makes clear, "there is no requirement under Rule 30(b)(6) for the organization to 'woodshed' or to 'educate' an individual to testify on the subject" (at 8). And Uber has already received testimony from Mr. Patel and John Krafcik regarding this document, and will receive testimony from Chris Urmson who likely has personal knowledge of the valuation.

Uber's request for further testimony is unlikely to lead to any additional information and is overly burdensome to Waymo. Judge Alsup's Standing Order specifies that Rule 30(b)(6) notices "be directed at discovering percipient facts in the possession of the adverse party, not at forcing a supposed 'fact witness' to appear and defend the entire thesis of a claim or defense." (*Id.*) Uber is in possession of those percipient facts, through the prior deposition of Ms. Haroon and others. Uber has already taken the depositions of David Drummond, Gerard Dwyer, Mr. Krafcik, and Mr. Patel, each of whom testified at length regarding valuations of Project Chauffeur and Waymo. And Uber will be deposing Mr. Urmson and David Lawee, each of whom have personal knowledge of said valuations, later this week. Further imposition on Waymo, and a witness no longer employed by the company, is nothing more than "discovery for the sake of discovery."

Finally, to the extent the Court does grant any additional discovery on this topic to Uber, Waymo requests that it be limited in time. Uber specifically represented that it could likely complete any additional discovery in two hours and should be held to that limit. (Ex. 4 at 1.)