1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ARTURO J. GONZÁLEZ (CA SBN 121490)
   AGonzález@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Tel: 415.268.7000 / Fax: 415.268.7522
5
   KAREN L. DUNN (*Pro Hac Vice*)
6  kdunn@bsfllp.com
   HAMISH P.M. HUME (*Pro Hac Vice*)
7  hhume@bsfllp.com
   BOIES SCHILLER FLEXNER LLP
8  1401 New York Avenue, N.W.
   Washington, D.C. 20005
9  Tel: 202.237.2727 / Fax: 202.237.6131

10 WILLIAM CARMODY (*Pro Hac Vice*)
   bcarmody@susmangodfrey.com
11 SHAWN RABIN (*Pro Hac Vice*)
   srabin@SusmanGodfrey.com
12 SUSMAN GODFREY LLP
   1301 Avenue of the Americas, 32nd Floor
13 New York, NY 10019-6023
   Tel: 212.336.8330 / Fax: 212.336.8340
14

15 Attorneys for Defendants
   UBER TECHNOLOGIES, INC.
16 and OTTOMOTTO LLC

17                  UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                     SAN FRANCISCO DIVISION

20 | WAYMO LLC, | Case No. 3:17-cv-00939-WHA
21 | Plaintiff, | **DEFENDANTS' UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S OPPOSITION TO WAYMO'S MOTION TO SUPPLEMENT ITS TRIAL WITNESS LIST**
22 | v. |
23 | UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, |
24 | Defendants. | Trial Date: February 5, 2018

26      **REDACTED VERSION OF DOCUMENT SOUGHT TO FILED UNDER SEAL**

Waymo's motion for leave to supplement its trial witness list should be denied. Not only is Waymo's motion untimely, but it also fails on the merits. This Court's exclusion of Michael Wagner does not serve as a basis for Waymo to add any of its three identified witnesses or any previously undisclosed damages computations or theories. Indeed, Mr. Wagner's expert reports do not even mention one witness, Shawn Bananzadeh, and Waymo already unsuccessfully moved to add Mr. Bananzadeh to its witness list *before* Mr. Wagner was excluded. With respect to the second witness, Prabir Adarkar, Mr. Wagner's report does not mention him or his testimony in the either the unjust enrichment or reasonable royalty sections. Finally, Waymo's request to add an Uber document custodian to authenticate and lay a foundation for documents is improper, and both of Waymo's cases support Uber's position when the Court's *holding* is cited (rather than Waymo's citation to the losing party's argument).

I.  **ARGUMENT**

  A.  **Waymo's Disclosure of New Witnesses Is Untimely**

This Court's "Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases" states at paragraph 28: "Rule 26 requires certain automatic disclosures and requires them to be made in a timely manner." *See* Ex. 1[1]. In addition, this Court's Jury Trial Guidelines state: "All parties are reminded of their disclosure duties under FRCP 26(a)(3), which begin THIRTY CALENDAR DAYS before trial." *See* Ex. 2 (Jury Trial Guidelines ¶ 1 (emphasis in original).)

On November 15, 2017, Waymo added a new witness (Prabir Adarkar) to its "will call" witness list without even seeking leave to do so. Mr. Adarkar was never previously disclosed in any of Waymo's Rule 26 initial disclosures. On the same day, Waymo also added Shawn Bananzadeh to its "will call" list—he also was not disclosed in any of Waymo's Rule 26 initial disclosures. In fact, the Court previously denied Waymo's request to supplement its witness list to add Mr. Banazadeh and ruled that if Mr. Bananzadeh is allowed to testify at all, it would only

---

[1] All exhibits are attached to the 12/3/2017 Declaration of Matthew R. Berry.

1  be in rebuttal: "If they use the 30(b)(6) deposition in any way before the jury, through an expert
2  or directly read in, then [Mr. Bananzadeh] gets to come back and explain it in your rebuttal case,
3  but not in your case-in-chief. In other words, *you can't use him in your case-in-chief because he's*
4  *a new witness*." Ex. 3 (10/26/2017 Hr'g Tr. 12:2-11 (emphasis added).) Despite that ruling,
5  Waymo added him to its most recent "will call" witness list against the Court's directive. Finally,
6  Waymo seeks to add an Uber document custodian to its witness list, which was not included on
7  any of Waymo's previous witness lists.

8  Because these witnesses were not timely disclosed, they should not be allowed to testify at
9  trial.

### B. Mr. Wagner's Exclusion Does Not Provide a Basis to Add New Witnesses and Theories

12  Waymo wrongly argues that the Court's exclusion of Mr. Wagner a month ago provides a
13  basis for adding witnesses. It does not. Even if it did, Mr. Wagner's expert report (which is over
14  100 pages long) does not even mention Mr. Bananzadeh and does not rely on Waymo's asserted
15  development costs. Indeed, the fact that Waymo attempted (and failed) to add Mr. Bananzadeh
16  *before* Mr. Wagner was excluded demonstrates Mr. Bananazedeh is not intended to introduce
17  evidence Wagner would otherwise have relied on at trial but to introduce new damages theories
18  and evidence. And while Mr. Wagner mentioned Mr. Adarkar in his opening report, Waymo fails
19  to note that it was a single paragraph (¶ 359) in the irreparable harm section. Mr. Wagner did not
20  even mention Mr. Adarkar's name or rely on his testimony in the unjust enrichment or reasonable
21  royalty sections of his report. *See* Dkt. No. 1619-3.

22  In a November 22, 2017 email to Uber's counsel, Waymo provided the following
23  description of the expected testimony from Mr. Bananzadeh and Mr. Adarkar:

> Our current witness list provides an overview of the testimony we are seeking
> from each witness. The witness list says that we expect Mr. Bananzadeh to
> provide non-cumulative testimony regarding <u>costs of development of, and
> management of Waymo's self-driving cars and autonomous vehicle technology</u>. It
> also says that we expect Mr. Adarkar to provide non-cumulative testimony
> regarding <u>Uber's financial forecasts for autonomous vehicles, and Uber's
> competitive relationship with Waymo, including its willingness to cut prices to
> compete with Waymo</u>.

Ex. 4 (emphasis added). But Mr. Banazadeh's expected testimony has nothing to do with Mr. Wagner or his exclusion. Mr. Wagner did not rely on the costs of development of and management of Waymo's self-driving cars and autonomous vehicle technology in arriving at unjust enrichment and reasonably royalty numbers. In fact, he focused on documents from Uber: the Nina Qi slide and the run rate from John Bares' notes.

Similarly, with respect to Mr. Adarkar's expected testimony, Mr. Wagner did not rely on Uber's financial forecasts (other than the Qi slide) or Uber's purported willingness to cut prices to compete with Waymo to calculate unjust enrichment or reasonable royalty figures. If Waymo wants to inquire about the Qi slide, Ms. Qi is already on its witness list. If Waymo simply wants to establish that Uber and Waymo are competitors, one of its current witnesses is capable of providing that testimony.

But it is entirely improper for Waymo to elicit evidence concerning Uber's "$[REDACTED]" (Mot. at 6), which merely reflect the wealth of the defendant and would "skew the damages horizon for the jury." *See Virnetx, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1333 (Fed. Circ. 2014) ("[T]he disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." (citation omitted)). Finally, Uber's financial forecasts are also not relevant. While *Georgia Pacific* Factor No. 8 looks to the *established* profitability of the defendant, it's undisputed that Uber has not made a profit on its autonomous vehicle program, and the parties agreed to remove this factor from the agreed reasonable royalty instructions. *See* Dkt. No. 2229 at 8-9.

To the extent Waymo is seeking to add these witnesses to testify about an entirely new damages theory, the Court should reject it. Waymo violated Rule 26(a) by failing to disclose "a computation of each category of damages[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii); *see also Brandywine Commc'ns Techs., LLC v. Cisco Sys., Inc.*, No. C 12-01669 WHA, 2012 WL 5504036, at *2 (N.D. Cal. Nov. 13, 2012). Disclosing *evidence* underlying a damages computation is *not* sufficient—Waymo must also disclose a *computation*. *See Easton v. Asplundh Tree Experts, Co.*, 2017 WL 5483769, *4 (W.D. Wash. Nov. 15, 2017) (excluding damages

evidence for violating Rule 26 because "making certain documents available and promising that someone (in this case Plaintiff) will testify regarding damages is not a 'computation' and fails to apprise Defendant of the extent of its exposure in this case."); *Hoffman v. Alam et al.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008) ("Finally, we reject the notion that the district court was required to make a finding of willfulness or bad faith to exclude the damages evidence. To the contrary, the portion of Rule 37 relied on by the district court has been described as 'a self-executing, automatic sanction to provide a strong inducement for disclosure of material.'" (citation omitted)). Permitting Waymo to add new witnesses to testify about an undisclosed damages computation is doubly improper and only compounds the significant prejudice to Uber.

### C. Waymo's Development Cost Theory is Improper and Mr. Bananzadeh is Not Competent to Testify About It

In discovery, Waymo told Uber that it did not track the cost of development of its trade secrets and would need an expert to calculate the costs (which Waymo never retained). *See* Ex. 5 (Plaintiff's Amended Fourth Supplemental Objections and Responses to Uber's First Set of Interrogatories (Number 6)) ("▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"). Waymo did, however, claim that it ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See id.* But this "▬▬▬▬" is entirely improper because it fails to apportion expenses to the development of each trade secret. It also leads to an absurd result by double-counting expenses: according to this "▬▬▬▬," ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Defs.' MIL 24, Dkt. 1559. Finally, Waymo has consciously chosen not to provide a witness to support its theory of cost of development. As explained below, Mr. Bananzedeh, Waymo's corporate representative on the topic, knew nothing about the trade secrets, how and when they were developed, or what justified Waymo's claim that all program costs could be attributed to the alleged trade secrets. He even testified (wrongly) that Waymo's

1 cost of development theory was based on an expert opinion Waymo had obtained.

2 Uber moved to exclude these development cost figures as irrelevant to Waymo's damages
3 claim and as unduly prejudicial because they could only serve to skew any damages verdict.
4 MIL 24, Dkt. No. 1559.  The Court was skeptical Waymo's figures could be probative and ruled
5 that Waymo must seek advance permission via a written offer of proof before trying to introduce
6 any evidence about these estimates at trial.  Dkt. No. 2166 at 15 ("It seems unlikely that this type
7 of simple comparison between two very different corporations' expenses could add much
8 probative value to Uber's internal document containing the $20 million figure, which could speak
9 for itself, especially given the vast universe of variables that would be swept under the rug.").
10 Waymo's current motion to supplement its witness list does not even seek permission to
11 introduce the development cost evidence, and Waymo does not address the authority cited in
12 Waymo's Motion in Limine No. 24 (Dkt. No. 1559) or the Court's concern about the evidence.

13 Waymo argues that the development costs are relevant to whether the allegedly
14 misappropriated information constitutes protectable trade secrets.  Motion at 4.  But that argument
15 contradicts Waymo's position that Mr. Bananzedeh will testify concerning *damages* because
16 Mr. Wagner was excluded.  Whether information constitutes a trade secret has nothing to do with
17 damages.  And these numbers merely represent total expenditures for Waymo— of which is
18 attributable to a single —which has nothing to do with
19 amount of money expended to develop a particular trade secret for a particular aspect of the
20 project.  By Waymo's logic, *everything* Waymo did should qualify as a trade secret because
21 everything was part of an overall program costing $ .

22 Although Waymo now claims that these estimates are relevant to unjust enrichment
23 damages and to the hypothetical negotiation (Mot. at 5), Mr. Wagner did not even mention them
24 in the unjust enrichment section of his report.  In fact, the development cost figures are recited
25 only in the "Background" section of the Mr. Wagner's report (¶ 79), and they form no part of the
26 unjust enrichment or reasonable royalty analysis.  *See* Dkt. No. 1619-3 (Wagner report).

27 In addition, the term "development costs" is not mentioned in the agreed "Reasonable
28 Royalty" instruction that the parties submitted *after* Mr. Wagner was excluded (*see* Dkt.

No. 2229), and courts have held it improper to consider it as a factor where the defendant did not destroy the value of the trade secrets by publishing them. *See Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 969 (2d Cir. 1997) ("*University Computing* itself rejected Softel's proffered measure of damages: it stated that such a measure usually was appropriate only where the defendant had destroyed the value of the secret. [] Here, Dragon did not publish Softel's secrets, and therefore did not destroy their value to Softel, other than to the extent that Dragon itself used them.").

Waymo's reliance on *W.L. Gore & Associates, Inc.* is misleading because Waymo quotes from the "Cost-Based Measure" section of the order rather than the "Unjust Enrichment" section, and Waymo has never argued for any measure of damages other than unjust enrichment and reasonable royalty. Such a method to calculate damages is also not reliable. *See*, *e.g.*, *Applied Hydrogel Tech., Inc. v. Raymedica, Inc.*, 2008 WL 5500756, at *2 (S.D. Cal. Oct. 7, 2008) (holding that "Plaintiff has failed to establish that the 'cost to create or duplicate' is a reliable method for calculating the value of trade secrets or confidential information" because "examples illustrate that this methodology is inconsistent, and more importantly, that it is detached from reality and common sense").

Finally, even if Waymo were permitted to introduce its improper argument about each trade secret costing all of Waymo's overall expenditures, Mr. Banazadeh is not competent to offer that testimony because he lacks personal knowledge of how much it cost to develop Waymo's asserted trade secrets. Although Waymo designated him as its 30(b)(6) witness on the topic of cost of development, Mr. Banazadeh could only testify about the total costs incurred by the entire program. Mr. Banazadeh admitted he has no personal knowledge about the development of each trade secret and that it is the province of expert testimony:

> Q: Do you understand that you were designated a corporate witness, so you're supposed to testify on behalf of the company regarding the cost of each of the alleged trade secrets? Are you not prepared to testify as to that today?
>
> A. . . . I am not technically minded to say that a trade secret involved this cost versus that cost. I think that's a more expert-based formulation.

| | |
|---|---|
| 1 | And I'm not prepared or capable of – of creating – like, I'm not an expert, right. Like, my understanding is you – you have expert reports on these kinds of things, and there will be a whole, you know, rigamorole around that. |
| 2 | |

Ex. 6 (Bananzedeh Dep. at 95:1-21; *accord id.* 109:1-12). Likewise, his only basis for his surmise that the program costs could be attributable to the trade secrets at issue was based on his mistaken belief that Waymo had retained an expert who would support the theory:

> Q: What is the cost of developing Trade Secret 2, Trade Secret 25, and Trade Secret 90?
>
> A: *So to the extent that the expert has surmised* that development of that trade secret is something that is kind of program inception to the date that, again, this comes to, like, fruition or whatever you want to call it, it-- It is that 1 point -- it is the spend for the entirety of the program from that inception to the date that that's cut off at, which is 2015 or '16, based on the spreadsheet.

*Id.* at 109:1-12 (emphasis added); *accord id.* at 94:11-20 ("So one thing in -- in answering your question, I think you said that my testimony was that it costs ███ to formulate those two trade secrets. So I just want to say first that, like, that's – that's not my testimony. What -- what I'm saying is that insofar is that an expert calculated this, it's -- I'm showing the -- my testimony is that in the years 2009 through 2015, those were the expenses incurred.").

Finally, Waymo suggests that it will introduce an exhibit through Mr. Bananzedeh illustrating when each trade secret was developed on a chart showing overall program expenditures over time. Mot. at 4. However, Mr. Bananzedeh lacks any personal knowledge about when these trade secrets were developed and therefore could not sponsor the chart. Ex. 6 at 138:15-25.

### D. Waymo Cannot Add an Uber Document Custodian as a Witness

Waymo claims that it needs to add a document custodian "so it can efficiently authenticate and lay a foundation for documents that the jury can use to evaluate damages resulting from Defendants' misappropriation." Waymo Motion at 6. But a document custodian has no personal knowledge about the substance of these documents, and therefore it would be improper under Rule 602 for Waymo to question a document custodian concerning their substance. If a document custodian could lay a foundation to admit all business records into evidence for any use

at trial, then Uber could call a single Waymo document custodian to get into evidence every Waymo document on its exhibit list. That's not how it works.

Waymo's example demonstrates why its plan will not work. Waymo argues, "For example, TX-821 reflects the Head of ATC's view on the importance of LiDAR to the overall AV timeline at the time of misappropriation." Motion at 7. But a document custodian has no personal knowledge about TX-821 or John Bares' view on the importance of LiDAR. To the extent Waymo wants to introduce that testimony, it must call Mr. Bares (whom Waymo deposed twice) or one of the other individuals who received the email (all of whom are already on Waymo's witness list). The same is true for the other trial exhibits that Waymo references.

Neither case that Waymo cites supports its position. Waymo first cites *Mc Asset Recovery, LLC v. Castex Energy, Inc.* for the proposition that calling a document custodian to "authenticate and lay a foundation for documents" is an "accepted and allowable approach." Waymo Motion at 6. But that's not at all what the court held in that case. In fact, Waymo suggests it was quoting from the court's holding when in fact Waymo is actually quoting the court's description of the plaintiff's argument, omitting the underlined portion: "<u>Plaintiff explains</u> that one of the primary purposes behind the subpoena is to procure a records custodian to authenticate certain documents for introduction at trial." 2013 WL 12171724, *2 (N.D. Tex. Jan. 7, 2013) (emphasis added). Indeed, the court's actual conclusion undercuts Waymo's position: "Rule 45 does not expressly authorize a party to subpoena a 'corporate designee [to] testify 'vicariously' at trial' in the way that Rule 30(b)(6) does for a deposition." *Id.* at *1 (alterations in original, citation omitted). As a result, the court held, "Extrapolating from these rules, the Court concludes that the trial subpoenas Plaintiff served on Defendants are proper only to the degree that they seek testimony that is within the scope of what was previously given by Defendants' corporate designee at his Rule 30(b)(6) deposition." *Id.* In short, Waymo's case strongly supports Uber's position.

Waymo's only other authority further undercuts its position. Waymo cites *Commodity Futures Trading Comm'n v. Amerman*, No. 1:07-CV-2280-HTW, 2011 WL 13121207, at *1 (N.D. Ga. Oct. 7, 2011) to support its argument that it is "an accepted and allowable approach" to

subpoena a document custodian to testify at trial to authenticate and lay a foundation for documents. Waymo's Motion at 7. But *Amerman* dealt with a deposition subpoena under Rule 30(b)(6), not a trial subpoena:

> This matter comes before the Court on Plaintiff's Motion for Sanctions to compel Defendant Gregg Amerman ("Amerman") to designate a corporate representative of Dream Venture Group, LLC ("DVG") to testify in this matter after the Court earlier granted Plaintiff's Motion for an order compelling DVG, a company formerly operated by Amerman, <u>to designate a witness to testify on its behalf under Fed.R.Civ. P. 30(b)(6). DVG had failed to designate a representative in response to the Court's earlier order.</u>

(emphasis added). Uber does not dispute that it is proper to *depose* a corporate representative under Rule 30(b)(6) to authenticate documents—that is not what Waymo is attempting to do here by seeking leave to add a document custodian to its witness list.[2]

Finally, the exclusion of Mr. Wagner does not provide an excuse for adding a document custodian because Mr. Wagner could not have provided a foundation to admit the documents into evidence under Rule 703; while Mr. Wagner could have relied on the documents in forming his opinion, the underlying documents would not have been admitted as substantive evidence with Mr. Wagner. *See*, *e.g.*, *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261 (9th Cir. 1984) (where expert relies on otherwise inadmissible evidence, such evidence may only be admitted "for the limited purpose of explaining the basis for his expert opinion" and cannot be considered as substantive evidence) (citations omitted).

## II. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Waymo's Motion. Mr. Wagner's exclusion does not provide a legitimate excuse for Waymo's untimely attempt to supplement its witness list. That is especially true here where Waymo is seeking to have the witnesses testify about a still undisclosed damages theory in violation of this Court's orders and Rule 26.

---

[2] Waymo's request to depose a document custodian for four hours is similarly improper. Fact discovery ended months ago, and Waymo has no legitimate reason for its untimely request to depose a document custodian.

| | | |
|---|---|---|
| Dated: December 3, 2017 | MORRISON & FOERSTER LLP<br>BOIES SCHILLER FLEXNER LLP<br>SUSMAN GODFREY LLP | |
| | By: */s/ William Christopher Carmody*<br>WILLIAM CHRISTOPHER CARMODY | |
| | Attorneys for Defendants<br>UBER TECHNOLOGIES, INC. and<br>OTTOMOTTO LLC | |

1 **ATTESTATION OF E-FILED SIGNATURE**

2     I, Arturo J. González, am the ECF User whose ID and password are being used to file this

3 Opposition to Waymo's Motion to Supplement Its Trial Witness List . In compliance with Civil

4 L.R. 5-1(i)(3), I hereby attest that William Christopher Carmody has concurred in this filing.

5

6 Dated: December 3, 2017            */s/ Arturo J. González*
                                                                     Arturo J. González