QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:    (415) 875-6600
Facsimile:    (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>　　　　Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO RESPONSE TO COURT INQUIRY RE UBER'S FAILURE TO PRODUCE JACOBS LETTER AND EMAIL**<br><br>Trial Date:   February 5, 2018 |

Waymo respectfully submits this response to the Court's request for information regarding "any agreed-upon search terms that should have picked up Jacob's letter or email" and "any discovery efforts, including document requests, interrogatories, and deposition questions, that should have picked up the information therein." (Dkt. 2315.) The Jacobs letter expressly states "████████████████████████████████████████████████████ (Dkt. 2307-2 ")." The Jacobs letter details "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" (Dkt. 2307-2 (Jacobs Letter) at 10-12.) Mr. Jacobs' resignation letter similarly describes ████████████████████████████████████████████████████████████████████████████████████████████████ (Ex. 8.)[1] The letter and email did not match the search terms and date range for email and custodial documents. But they were responsive to court orders, RFPs, interrogatories, and/or deposition questioning. Uber's senior management and counsel were aware of these documents, considered and investigated their contents, and even disclosed the Jacobs letter to the U.S. Attorney. Yet, these documents and the information therein were improperly concealed from Waymo until the eve of (the now continued) trial.

**1.   The Documents Were Responsive To This Court's Orders and Waymo's Discovery Requests.**

The Jacobs letter and resignation email should been produced both in response to this Court's orders and Waymo's discovery requests. For starters, these documents are responsive to the Court's orders requiring Uber to disclose information relating to its servers, sources, and any potential deletion or destruction of materials misappropriated from Waymo. In its expedited discovery order, for example, the Court required the following:

> By March 31, defendants shall produce for inspection all files and documents downloaded by Anthony Levandowski, Sameer Kshirsagar, or Radu Raduta before leaving plaintiff's payroll and thereafter taken by them. Defendants shall also produce for copying the card reader, thumb drive, or other media used for the downloads, as well as all subsequent emails, memoranda, PowerPoints, text messages, or notes that have forwarded, used, or referred to any part of said downloaded material. If any part of said downloaded material has been deleted,

---

[1] References herein to "Ex. __" refer to the corresponding exhibit to the accompanying declaration of Andrea Pallios Roberts.

> destroyed, or modified, then defendants shall state the extent thereof and produce all documents bearing on said deletion, destruction, or modification.

(Dkt. 61 ¶ 4.)  Because the Jacobs letter references misappropriation of Waymo trade secrets and describes efforts by Uber to delete or destroy evidence of such misappropriation (Dkt. 2307-2 (Jacobs Letter) at 9-10), the letter was responsive to the expedited discovery order and should have been produced long ago.  Uber has not claimed otherwise.

Further, Uber was required to produce the Jacobs letter and email in response to the provisional relief order.  Specifically, Uber was required to "conduct a thorough investigation and provide a detailed accounting under oath setting forth every person who has seen or heard any part of any downloaded materials, what they saw or heard, when they saw or heard it, and for what purpose."  (Dkt. 426 at 24 ¶ 4.)  Given the allegations of trade secret theft and destruction of evidence contained in both the Jacobs letter and email, Uber should have disclosed these materials as part of its "thorough investigation."  As the Court has already recognized, these documents were responsive to the provisional relief order.  (11/28/2017 Hr'g Tr. at 14:13-17 ("Morrison & Foerster and the rest of the Uber lawyers withheld evidence. There was a direct order to produce stuff like that in the provisional relief order.  And to get – to – to have hidden this from the lawyers and the judge and not be upfront about it, it just is so upsetting.").)  Uber has not refuted this.

The provisional relief order also required Uber to provide "a complete and chronologically organized log of all oral and written communications—including, without limitation, conferences, meetings, phone calls, one-on-one conversations, texts, emails, letters, memos, and voicemails— wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier, or consultant of defendants."  (*Id.* at 25 ¶ 5.)  Uber's log referred to "text messages" that Mr. Levandowski exchanged with Uber personnel regarding LiDAR (but which could not be produced because they had been destroyed), but did not disclose the existence of any Wickr or other ephemeral communications involving Mr. Levandowski.  (*See, e.g.*, Dkt. 1469 at 66-67.) To the extent Mr. Levandowski was using these undisclosed forms of communication to develop

LiDAR technology, that too would have been responsive to the Court's Order.[2]

In addition, the Jacobs letter and email are responsive to discovery requests in this case, as also discussed in Waymo's Response to Order Re letter form United States Attorney. (Dkt. 2281.) The Jacobs letter, for example, explicitly references the theft of Waymo trade secrets, and it therefore responsive to RFP No. 73, which requests:

> **RFP No. 73**: All DOCUMENTS AND COMMUNICATIONS REGARDING the MISAPPROPRIATED MATERIALS, INCLUDING but not limited to (i) DOCUMENTS containing any information derived from the MISAPPROPRIATED MATERIALS, (ii) any electronic media that contains or contained the MISAPPROPRIATED MATERIALS, and (iii) any DOCUMENTS REGARDING any meetings or discussions REGARDING the substance of the MISAPPROPRIATED MATERIALS outside of WAYMO.

(Ex. 1.)  As another example, the Jacobs letter—which discusses covert meetings between Travis Kalanick and Anthony Levandowski prior to the Ottomotto acquisition—was responsive to Waymo's RFP No. 29 which requested "All DOCUMENTS and COMMUNICATIONS REGARDING negotiations over UBER's acquisition of OTTOMOTTO." (Ex. 1.)  Additionally, because the Jacobs letter and email detail Uber's practice of using non-attributable electronic devices, they are responsive to RFP No. 72:

> **RFP No. 72**: All DOCUMENTS REGARDING DEFENDANTS' policies regarding employees' use of personal computers or other devices while working at or for DEFENDANTS.[3]

(Ex. 1.)  Other RFPs to which the Jacobs documents are responsive include RFP Nos. 28, 30, and 91.  (Ex. 1.)

The Jacobs letter and email also detail efforts by Uber to thwart discovery in civil litigation by deliberately destroying relevant documents and communications.  This information, which was not previously disclosed, was directly responsive to at least the following Waymo interrogatories:

---

[2]  Uber may also have violated other Court Orders by withholding evidence relating to the Jacobs letter, such as the Court's Order Re Discovery Hearing Tomorrow (Dkt. 144), which required Uber to provide "[a] list of all servers (and their locations) used at any time in any way for defendants' LiDAR-related activities." Additional discovery will be necessary to assess the full scope of Uber's non-compliance.

[3]  During meet-and-confer negotiations, Waymo agreed to limit the scope of RFP. No. 72 (without prejudice) to the use by Mr. Levandowski of such personal computers or other devices while working at or for Uber and Ottomotto.

> **Expedited Interrogatory No. 6**: Describe DEFENDANTS' efforts to preserve evidence relevant to THIS CASE, INCLUDING (without limitation) when DEFENDANTS instituted any litigation hold(s) REGARDING THIS CASE, how DEFENDANTS implemented any litigation hold, all PERSONS who received any litigation hold, when each PERSON received each litigation hold, which PERSON(S) was responsible for monitoring compliance with each litigation hold, and any instances of non-compliance with such litigation hold.
>
> **Common Interrogatory No. 8**: Describe in detail YOUR policies and practices with respect to the retention and/or destruction of DOCUMENTS (including without limitation emails, instant messages, electronically stored information, and hard copies), from 2014 to the present.

(Exs. 2, 3.)  Information within the Jacobs letter and email also should have been (but was not) disclosed in response to Waymo Expedited Interrogatory Nos. 1 and 3.  (Ex. 2.)

Finally, the existence of the Jacobs letter and email was responsive to deposition questions asked of Uber's own Vice-President and Deputy General Counsel, Angela Padilla, to whom the Jacobs letter was addressed.  Ms. Padilla denied personal knowledge of precisely where Uber searched for responsive materials.  Yet, Ms. Padilla testified that Uber had searched "everywhere" to comply with its obligations under the Court's Order. (*See* Ex. 4 Padilla Tr. at 45:3-13 (Q. So you can't testify as to what sources within Uber were searched or not searched in – to comply with the court's [expedited discovery] order; is that right? A. I don't know if that impinges on privilege or not. Q. Okay. What sources did Uber search within Uber to comply with the court's order? A. As far as I recall, everywhere. Meaning we took this order very, very seriously and put a ton of people power on the direction here in paragraph 4. And I believe we also retained outside experts to help us and moved heaven and earth to look under every rock and understand the answer to paragraph 4.").)

In sum, Uber should have produced the Jacobs letter and email in response to multiple orders issued by this Court and in response to Waymo's various RFPs, interrogatories, and deposition questions.

### 2. The Parties' Protocol for Custodial Documents and Email Does Not Excuse Uber's Non-Production.

Jacobs' resignation email is dated April 14.  The Jacobs letter is dated May 5.  At the time Uber obtained both these documents, the exchange of "search terms" had not been discussed.  On May 30, Waymo proposed that the parties enter into an ESI stipulation that would include search

terms as part of an overall search and collection protocol. Waymo followed up on multiple occasions. Uber repeatedly did not respond. On June 27, Uber provided the Jacobs Letter to the acting United States Attorney for the Northern District of California. On July 1, Uber indicated, for the first time, its willingness to discuss search terms. Uber's explanation for why it did not engage in these negotiations earlier was that Uber was "in the throes" of responding to expedited discovery and so was already searching for documents in response to Waymo's requests. (Ex. 5 (7/3/17 Email from A. Roberts to E. Takashima).) In other words, Uber searched for responsive documents before negotiating with Waymo regarding agreed search terms. Indeed, Uber produced over 16,000 documents before the parties even started negotiating search terms. When the parties exchanged protocols for the search of email and custodial documents on July 3, Uber indicated that in addition to applying search terms, it would also produce certain responsive folders and files in online repositories, as well as responsive files from servers in the Bay Area and Pittsburgh. (Ex. 6 (Attachment to 7/3/17 Email from S. Rivera).) As such, it was Waymo's understanding that Uber was not limiting its searches to the negotiated search terms.

Waymo acknowledges that certain date and custodian limitations would have excluded both the Jacobs letter and email from a search relying solely on the parties' agreed search terms. The Jacobs letter includes the term "Otto," which was an agreed search term. However, Ms. Padilla was not a custodian, and an August 2016 date cut-off was applied for that search term at Uber's request. Thus, because the Jacobs letter was not written until after August 2016, the search term would not have picked up the letter. With respect to the Jacobs resignation email, the document does not contain any of the parties' agreed search terms. "Waymo" was not an agreed search term because the relevant events underlying Waymo's claims took place before Waymo existed as a separate company; "chauffeur" was a search term, as was Uber's internal code name for Google in the negotiations leading up to the Otto acquisition.

In all events, search terms are intended to help parties *search* large volumes of ESI to find responsive documents; they do not obviate a party's discovery obligations once responsive documents are already *found*. Once Uber and its senior management and counsel had actual knowledge of the Jacobs documents and their relevance to this case, they should have produced

them.  Indeed, courts have recognized that while search terms have a place in e-discovery, it is unreasonable for parties to rely entirely on such terms in searching for and producing responsive information.  *See F.D.I.C. v. Baldini*, Case No. 1:12-cv-7050, 2014 WL 1302479, at *2 (S.D. W. Va. Mar. 28, 2014) ("If, however, a producing party is aware of a relevant document that is not triggered by the application of the search terms, the producing party shall produce that document."); *Moore v. Publicis Groupe*, 287 F.R.D. 182, 190-91 (S.D.N.Y. 2012) (noting the limitations of key word searches); *cf Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995) ("[T]he federal discovery rules place a duty on a party to turn over not only proper materials of which he is aware, but also those of which he reasonably ought to have been aware.").

Uber's obligation to search for and collect documents beyond those returned by the search terms is also consistent with Waymo's practice and understanding of the parties' search obligations in this case.  Waymo never agreed that Uber could limit its searching for responsive documents to only those responsive documents that hit on agreed search terms.  Waymo did not limit its own searches to just the agreed search terms, and Waymo made that clear to both Uber and the Court.  (*See* Dkt. 1090 ("Waymo searched custodian and non-custodial documents ***both with search terms and without*** to locate documents responsive to Defendants' then-served RFPs.") (emphasis added)); (Ex. 4 (7/25/17 Letter from A. Roberts to M. Pritt) ("We conducted a reasonably diligent search in response to Defendants' document requests using appropriate search terms, ***as well as additionally searching for responsive documents in various custodial and non-custodial repositories without the use of electronic search terms***.") (emphasis added).)

Uber's obligation to produce the Jacobs letter and email was especially clear-cut here given Ms. Padilla's testimony that she had actual knowledge of the documents in question and their significance to this case.  (11/29/2017 Hr'g Tr. at 14:2-17:14.)  Ms. Padilla admitted that on May 5—only two days after attending the hearing on Waymo's motion for preliminary injunction—she personally received and read the letter from Mr. Jacobs' attorney and appreciated the fact that the letter accused Uber of stealing Waymo's trade secrets.  (*Id.* at 18:7-10.)  She further testified that this letter was received *after* she had discussions with Mr. Jacobs' attorney

and convinced his attorney to send Uber a letter containing all of Mr. Jacobs' allegations. (*Id.* at 15:11-15.) According to Ms. Padilla, the letter was then "handed" over to others at Uber (*id.* at 15:16-24), which suggests that the letter exists at Uber in hard copy. The Court has authorized Waymo to conduct discovery into the reasons why Uber failed to collect and produce any paper copies of the letter that might exist. (Dkt. 2315.)

Ms. Padilla testified that she made the intentional decision not to provide the Jacobs letter to the two in-house counsel handling this litigation for fear that doing so would somehow taint Uber's investigation of the allegations contained in the letter. (11/29/2017 Hr'g Tr. at 47:21-25.) Ms. Padilla, however, admitted that the letter was provided to Travis Kalanick which, as the Court recognized, would have a greater chance of tainting the investigation than sharing the letter with counsel running the litigation. (*Id.* at 48:1-49:5.) Moreover, the letter was provided to committees of the Uber Board of Directors, including the Special Matters Committee responsible for managing this litigation, and was provided to Salle Yoo, Uber's then General Counsel. (*Id.* at 20:7-17.) Uber thought the Jacobs letter was relevant enough to share with the acting United States Attorney for the Northern District of California on June 27 (*id.* at 27:20-28:3), and to the United States Attorney for the Southern District of New York and to Main Justice in Washington, D.C. during the week of September 12. (*Id.* at 28:4-10.) Between May and September, the Jacobs letter and email were also the subject of an Uber internal investigation carried out by the law firm Wilmer Hale. (*Id.* at 17:15-21.) Uber received reports throughout the investigation. (*Id.* at 35:7-13.) Uber engaged in a formal mediation with Mr. Jacobs and ultimately entered into a settlement agreement with him in August 2017. (*Id.* at 28:20-23.)

Given the attention that the Jacobs letter and email garnered at Uber, and their undisputed relevance to the issues in this litigation, there is no excuse for Uber failing to produce these documents to Waymo. The parties' non-exhaustive protocol for the search of email and custodial documents, negotiated after the parties started their searches, cannot excuse Uber's non-production of documents required to be produced by this Court's orders and in response to Waymo's discovery requests.

DATED: December 4, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Charles K. Verhoeven
Charles K. Verhoeven
Attorneys for WAYMO LLC