# EXHIBIT 6

| | |
|---|---|
| **From:** | Andrea P Roberts |
| **Sent:** | Monday, July 03, 2017 9:57 AM |
| **To:** | Edward Takashima; Jeff Nardinelli; John Cooper |
| **Cc:** | BSF_EXTERNAL_UberWaymoLit; Matthew Cate; UberWaymoMoFoAttorneys; DG-GPOttoTruckingWaymo@goodwinlaw.com; QE-Waymo |
| **Subject:** | RE: Waymo v. Uber.:  Request to Meet and Confer re: Waymo RFP Responses |

Ed,

You should let us respond before you declare an impasse and demand a briefing schedule.  Jeff said on Saturday night that we rejected your demand, sent at 10:36 p.m. on Saturday night, to respond to your very lengthy email concerning dozens of RFPs by Sunday mid-day.  We did not agree to provide a response by Sunday.  That we had not responded by Sunday mid-day is not "radio silence" as you claim.  Further, Waymo responded to the RFPs at issue on June 12.  Uber delayed after 5:30 pm on Friday, June 30 to raise these complaints.  Uber's delay shows that its claimed urgency is not genuine but rather timed to create a dispute over a holiday weekend.

Now, onto our responses to your email.

*First*, as we explained on the Saturday, July 1 call and in my July 1 email, we want an exchange of search terms to reduce future disputes, not create more of them.  The best way to accomplish this is by agreeing to bounds of ESI discovery.  As we pointed out on the call, we sent Uber an ESI proposal on May 30.  We followed up multiple times.  (*See* A. Roberts 6/2/17 email; A. Roberts 6/7/17 email; A. Roberts 6/8/17 email; A. Roberts 6/14/17 email.)  Uber never responded.  Uber's counsel stated on the call that they were too busy to respond (for the entire month of June) because Uber was "in the throes" of responding to expedited discovery and so had already begun searching for documents in response to Waymo's requests.  This is no excuse for Uber's failure to reply.  Uber could have, at the very least, sent a courtesy response indicating that its counsel was busy but would respond by a date certain.  Further, on more than one call with Special Master Cooper, Mr. Cooper suggested that the parties should agree on search terms, and Waymo's counsel pointed Mr. Cooper and Uber's counsel to the fact that Waymo had proposed an ESI Order and was still waiting on a response from Uber.  Uber never gave any indication as to when or whether it would respond.  Now, after a month, and after Waymo is well into its searches for documents in response to Uber's document requests, Uber's counsel has taken the position that the parties must urgently exchange information regarding their search protocols.  In any event, our position in response to this first point in your email is laid out in my July 1 email.  We have not yet received an acknowledgement from Uber that the parties are in agreement on this exchange.  Please confirm.

As to the second point in your email, as we explained in our opposition to Uber's motion to compel, there is no dispute here:

> As Waymo already confirmed, Waymo "is searching for and producing documents relating to Project Chauffeur/Waymo regardless of the entity with technical custody over the documents." Dkt. 689-8 at 3…. There is no shell game here. Waymo did issue a general objection to Uber's definition of "Waymo" as including all of Google and Alphabet, but has not claimed to be unable to locate or produce a document because it is a "Google" document. Instead, Waymo applies its general objection where sensible. For example, in response to RFP No. 3 seeking "how often Waymo engineers download documents," Waymo restricted its response to engineers within Waymo, not Google-wide. Dkt. 688-3, Response to RFP No. 3.

Dkt. 746 at 6-7. Your description of the July 1 call with the Special Master is incorrect. We did not withdraw our objection to Uber's definition of "Waymo," which included all of Alphabet. It would be unreasonable and irrelevant to search all throughout Alphabet. Instead, we explained – again – that the creation of Waymo as a separate entity in December 2016 is not affecting our search efforts. We are not claiming to be unable to locate documents on the ground that they are "Google" documents. You voiced no objection to this explanation at the time, and the issue seemed resolved.

As to the fourth point in your email, as you stated, we agreed to circle back with Waymo to ask about RFP 95. We will do so.

In response to the third point in your email, regarding the RFPs, Waymo here provides "an email clarifying what it would agree to produce in response to RFP Nos. 2, 18, 21, 36, 54, 63, 66, 95, 119, 120, 121, and 122," as well as RFPs 46 and 53.

RFP 46: Uber wants Waymo's forensic analysis, to the extent it exists, of the computers, email, and other devices of every employee who has resigned from Waymo since January 2009. The only employees at issue in Waymo's complaint are Messrs. Levandowski, Kshirsagar, and Raduta. Accordingly we agreed to produce documents underlying Waymo's analysis of their devices. To the extent your request seeks more, it is irrelevant. Further, any attorney-directed investigations would be privileged.

RFP 53: This RFP asks for documents concerning "when" Waymo began investigating the possibility that Levandowski took Waymo files with him when he resigned. As stated in Waymo's response, that date was July 29, 2016. (Our responses said July 29, 2017; we clarified that typo on the call.) You asked that we confirm that again in an email, which we've done here.

RFP 2, 36: On the July 1 call, we explained that Waymo had produced a host of documents supporting its contention that Waymo robustly protects its trade secrets. We explained that as part of that search Waymo had combed multiple policy repositories. The Special Master asked Waymo to confirm that Waymo believes it has searched all relevant repositories. This email confirms that we have.

RFP 18: Waymo confirms that it has produced all documents concerning public disclosures of Waymo's LiDAR systems located in a reasonably diligent search.

RFP 21: This RFP seeks documents proving Uber's use of Waymo's trade secrets. We explained that Uber's documents, not Waymo's documents, show Uber's use. We explained that we had produced the two documents cited in our complaint – the inadvertent email disclosing Uber's PCB, and the Nevada submission in which Otto claimed to have developed an in-house 64-beam custom LiDAR. There are additionally public documents that suggest use by Uber, such as any document announcing that Uber purchased Otto for $680 million, but there is no need to produce those public documents. Waymo has no other documents responsive to this request.

RFP 54: This request seeks "all versions" of all agreements Waymo has ever required its employees to sign. On the call, you explained that this request concerned Waymo's policies and practices maintaining confidentiality. We explained to you that you would not likely uncover an employment agreement permitting an employee to publicly disclose trade secrets. We also explained that Waymo has already produced these documents from Messrs. Levandowski, Kshirsager, and Raduta. Nevertheless, we are investigating whether there are additional, exemplary documents to produce and will get back to you.

RFP 63, 66, 121, 122: Uber seeks documents showing complaints or dissatisfaction from Waymo personnel (63), further data about employee departures from Waymo including reasons for departing (66, 121), and personnel files (122). We pointed you to specific documents in our production showing Levandowski's dissatisfaction and personnel documents, and stated that documents concerning other employees are

irrelevant.  We also discussed that these RFPs parallel RFP 65 in many respects; there, we agreed to produce Levandowski's reactions (if any) to Mr. Krafcik's hiring, but objected to searching for others' reactions.  RFP 65 is pending before the court.  The ruling on RFP 65 will likely bear on the appropriate responses to these RFPs, and it makes little sense to us, particularly before that ruling, to brief these very similar issues.

RFP 95:  Discussed above.

RFP 119:  We explained that it would be unduly burdensome to locate "all" agreements between Waymo and its vendors/suppliers/customers.  We explained that we had already produced an agreement between Waymo and one vendor, and confirmed with Tim Willis that its terms were representative of all such agreements.  Uber asked that we (1) confirm again that the produced agreement is "representative", (2) determine what Mr. Willis meant when he said that the agreement was "representative," and (3) confirm that Waymo provided a list of its vendors, suppliers, and customers.  As to (3), we confirmed this on the July 1 call and confirm it again here.  We will get back to you with respect to (1) and (2).

RFP 120:  Uber wants the serial number of Levandowski's work laptop.  We asked you why, and in response, you speculated that the serial number might in some way bear on Waymo's forensic investigation.  As we stated in our June 12 responses, we have already produced the documents underlying Mr. Gary Brown's declaration concerning Waymo's forensic investigation.  *See* WAYMO-UBER-00000648-943.  The answer to Uber's question regarding the serial number of Levandowski's computer is provided in that range.  That range was produced to Uber over three months ago, on March 23.  The answer to Uber's question is: R9RK543.  *See* WAYMO-UBER-00000649.

Your email further purported to point out Waymo's deficiencies in producing documents for RFP Nos. 61, 62, 90, 91, 92, 93, 94, 96, and 97.  We are considering the positions set forth in your July 1 email at 10:36 pm regarding the purported deficiencies in Waymo's productions in response to these requests and will respond to you on that front as quickly as we can.

Thanks,
Andrea

---

**From:** Edward Takashima [mailto:etakashima@BSFLLP.com]
**Sent:** Sunday, July 02, 2017 8:40 PM
**To:** Andrea P Roberts <andreaproberts@quinnemanuel.com>; Jeff Nardinelli <jeffnardinelli@quinnemanuel.com>; John Cooper <JCooper@fbm.com>
**Cc:** BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; Matthew Cate <MCate@fbm.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; DG-GPOttoTruckingWaymo@goodwinlaw.com; QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** RE: Waymo v. Uber.: Request to Meet and Confer re: Waymo RFP Responses

Andrea,

*When* tomorrow will we have your responses?

Regards,

Ed

**Edward H. Takashima**
Partner

3