1 QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
3  davidperlson@quinnemanuel.com
  Melissa J. Baily (Bar No. 237649)
4  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
5  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
6  jordanjaffe@quinnemanuel.com
  50 California Street, 22nd Floor
7 San Francisco, California 94111-4788
  Telephone:    (415) 875-6600
8 Facsimile:    (415) 875-6700

9 Attorneys for WAYMO LLC

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13 | WAYMO LLC,                              | CASE NO. 3:17-cv-00939

14 |        Plaintiff,                       | **WAYMO'S RESPONSE TO COURT INQUIRY RE ANY USE BY WAYMO OF EPHEMERAL COMMUNICATIONS AND NON-ATTRIBUTABLE DEVICES**

15 |   vs.                                   

16 | UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC; OTTO TRUCKING LLC,  | **PUBLIC REDACTED VERSION OF DOCUMENT TO BE SEALED**

17 |        Defendants.                      

18

19                                           | Judge: The Honorable William Alsup

On November 22 the Acting U.S. Attorney for the Northern District of California informed this Court that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Dkt. 2260-1.) In a May 5 letter from counsel for Mr. Jacobs to Uber's associate general counsel Angela Padilla (the "Jacobs Letter"), counsel for Mr. Jacobs ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (Dkt. 2281-5.) In his November 22 letter to this Court, the Acting U.S. Attorney stated that ███████████████████████████████████████████████████████ (Dkt. 2260-1.)

During the November 28 and 29 evidentiary hearings on the Jacobs Letter, the Court ordered Waymo to inform the Court of "the extent to which non-attributable devices were used" and do "a thorough investigation and let [the Court] and the other side know the extent to which Wickr or anything like it was used in the workplace by employees." (Dkt. 2310 [11/29/17 Hr'g Tr.], at 165:22-23, 16-18.) Counsel for Waymo has conducted the investigation ordered by the Court and responds in detail below. In sum, counsel has discovered no evidence of the use of non-attributable devices at Waymo. In addition, our investigation has discovered no evidence that Waymo employees use ephemeral communications platforms to avoid the detection of illegal acts, to hide the use of proprietary information of third parties, or to evade discovery in ongoing or anticipated litigation. Waymo employees do routinely use Google chat platforms with ephemeral capabilities in their ordinary course business communications.

First, consistent with Waymo's device management policy, Waymo employees do not use "non-attributable devices" for any business purpose. All devices used by Waymo employees for business purposes are either purchased by Google or purchased by the individual employee and registered and certified by Google. All devices used by Waymo employees run on Waymo/Google systems. No devices run on a third party or "non-attributable" networks or servers.

Second, Waymo's policy is to rely virtually exclusively on Google communications platforms to conduct its business. Other than in extremely limited circumstances, Waymo prohibits

the use of third-party communications platforms for security reasons, including so that its confidential material is not routed through third-party providers. Consistent with this policy, our investigation revealed no Waymo witnesses that had used Wickr, Telegraph, Slack or any other third-party platform to conduct Waymo business. Instead, our investigation revealed that Waymo witnesses used only Google communications applications to conduct their business. Specifically, Waymo witnesses use Google Hangouts, and a handful reported ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ None used Google Talk or Allo. Since 2008, Google's company-wide default for Google employees, adopted by Waymo, is for instant message chats to be "off the record." Accordingly, such chats are not archived on Google's servers unless one of the chat participants has changed the status of the message to be "on the record," in which case the message will be archived for that user. That popular Google chat applications with ephemeral capabilities are used by Waymo employees – as well as other business users around the world – in the ordinary course is unsurprising. It is also beside the point. The Jacobs Letter does not allege merely that Uber was using ephemeral chat applications for normal business tasks. It contends that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Dkt. 2281-5). As the Court has noted, if this is true, then it may explain why the 14,000 files stolen from Waymo by Anthony Levandowski have not yet been discovered on the Uber infrastructure. (*See, e.g.,* Dkt. 2310 [11/29 Hr'g Tr.], at 153:17-22 ("THE COURT … So it would be a way for someone to -- Levandowski or someone communicating with him to say: By the way, how did we do that back at Waymo? How did we solve that problem? Well, easy, we used "X" instead of "Y." And all that vanishes in 30 seconds. You don't have to have a blueprint. You just ask the question: How did we do it at Waymo?").) This is entirely distinguishable from Waymo's ordinary course usage of Google chat applications and is why the conduct detailed in the Jacobs Letter is so important here.

Indeed, the fact that Uber's conduct goes well beyond the normal use of these chat applications is evidenced by the recent fallout at Uber from the public revelation of the Jacobs Letter. On November

30, media reports revealed that Uber's current CEO Dara Khosrowshahi forwarded an email from the company's new Chief Legal Officer, Tony West, to all Uber employees with a cover note telling his staff, "[w]ith regard to the allegations outlined in Ric Jacobs' letter, I can tell you that we have not been able to substantiate every one of his claims, including any related to Waymo. But I will also say that ***there is more than enough there to merit serious concern***." (Ex. 1 [Recode, Uber's new chief legal officer tells staff: If you are surveilling people for competitive intelligence, stop it now] (quoting Khosrowshahi); *see also id.* (quoting West as describing Uber's practice of surveilling individuals who work for competitors as "simply unacceptable; things that we cannot and will not tolerate at this company going forward").) The next day, Uber reported that three of its senior security managers – including Pooja Ashok, chief of staff for Joe Sullivan, Prithvi Rai, and Jeff Jones – had resigned, and Mat Henley, who testified before this Court on November 29, had begun a three-month medical leave. (Ex. 2 (Reuters, Three Uber security managers resign after CEO criticizes practices).) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Dkt. 2281-5 [Jacobs Letter], at 5-10, 29-36.)

The scope of and findings from the investigation ordered by the Court and conducted by counsel for Waymo are set forth in detail below.

**I.      Waymo Does Not Use Non-Attributable Devices**

Company policy requires all Waymo employees, temps, vendors, and contractors "to use Google-issued hardware, managed by Google, to access Google corporate services, except in the limited circumstances permitted by other Google security policies." (Ex. 4 [Corporate Services Security Policy].) A key reason for this is to prevent employees from using devices or accounts that would circumvent the company's security infrastructure. Waymo employees therefore must use either Google-issued hardware or a personally-owned computer or mobile device that is "managed by Google" for business purposes. (Ex. 6 [Using Personal Machines].) As explained in the Mobile Device Security Guidelines, "device management" provides a means for administrators to enforce security policies (such as screen lock and password strength) and users must follow express operating system, security, and software guidelines. (Ex. 5 [Mobile Device Security Guidelines].) Other than as expressly permitted, users "may not connect any other type of computer to the internal Google networks, such as Google-A wireless, managed wired network (MNP or MPC VLANs), or

remotely via VPN/SSH." (Ex. 6 [Using Personal Machines].) Consistent with these policies, Waymo employees do not use "non-attributable devices" for any business purpose.

Rather, Waymo employees must obtain devices (including desktop and laptop computers, tablets, telephones and other technology assets) for business use in one of only two ways. First, an employee may obtain a device purchased for the company through Google's Information Technology Asset Management team. Each device purchased by the Information Technology Asset Management team is registered in Google's centralized asset management database and configured for use on Waymo's network before being shipped to the particular end user. Second, fulltime employees may purchase their own devices for business use; part-time or temporary employees do not have this privilege. Devices purchased by individual Waymo users are not permitted to access the Waymo network until the device has been both (i) registered in Google's centralized asset management database and (ii) certified by the Information Technology Asset Management team for business use. Only after an individually-purchased device has been both registered and certified may an employee use the device to access the Waymo resources that he or she is eligible to access.

## II.     Waymo's Use Of Ephemeral Communications Applications

Google's Accounts Security Policy requires all Waymo business communications to be conducted through users' corporate accounts and via approved communications channels. (Ex. 3 [Accounts Security Policy], at 2.[1]) A key reason for this is to prevent Google data from appearing on systems not under the company's control. As a result, Wickr, Telegram, Slack and other third-party chat services may only be used where certain express criteria are met, including that "there is no viable Google corporate alternative," "there is a compelling business justification, such as a customer requiring a specific chat service for communication," and the "Vendor Security team assessed the use of the chat service for [the user's] use case." (Ex. 11 [Third Party Chat Services Security Guidelines].) Our investigation revealed no Waymo witnesses using third-party ephemeral communication platforms for business purposes.

---

[1] Waymo has adopted Google's security and data management policies and practices. (Ex. 7 [Waymo Employee Handbook] ("Sections of this Waymo Employee Handbook may reference certain Google policies and guidelines and those policies and guidelines apply to you….").)

-4-

Waymo employees are permitted to and do use certain Google messaging platforms that can be employed in an "ephemeral" mode in the ordinary course of their Waymo business dealings. These are commonly known as "chat" services. They are faster and less formal than email, and users often communicate in sentence fragments when "chatting" back and forth during the day. Hangouts is currently Google's main chat service. Employees use Hangouts much like in-person conversations and telephone calls were used before the internet. Google's default setting is "off the record." The Google communications applications containing an "ephemeral" mode that may be used by Waymo personnel are described below.

### 1. *Google Talk*

Google Talk (also known as "gchat" or "gtalk") is an older generation instant messaging application, which is a type of online "chat" that offers real-time transmission of text. Google released Google Talk in 2005. When it was first introduced, all employee chats were default "on the record." In September 2008, Google decided, based on accepted, widespread, and reasonable industry standards, and consistent with the nature of these communications, that it would no longer retain instant message chat records as a standard business practice; the default setting has been "off the record" since then. Users could change the setting to "on the record" for individual conversations, however. "On the record" chats were stored in both users' Gmail account histories and subject to the same retention policies as the user's email; "off the record" conversations were deleted from Google servers, as well as users' devices, shortly after the messages were sent.

Google began phasing out Google Talk in 2013. During the phase-out period, Google Talk "inter-operated" with Google Hangouts such that if either user had used Google Hangouts, the Google Hangouts functionality for "on" and "off" the record communication (described below) also applied. Google Talk is now largely discontinued, and none of the witnesses interviewed in connection with this response reported currently using Google Talk for business purposes.

### 2. *Google Hangouts*

Google Hangouts is Google's current video, voice, and chat messaging platform. It was launched in 2013. Enterprise domain administrators can set the default mode in Hangouts to either "on the record" or "off the record" but can permit individual users to control their user preferences for

particular messages or conversations. "On the record" communications are saved in Google Hangouts and archived in the "Chats" folder in users' Gmail accounts; they are stored on Google's servers for the period of time prescribed by the domain administrators for enterprise users (or indefinitely for consumers). "Off the record" communications are deleted from Google's servers, as well as users' devices, shortly after the message is sent. The default setting for users of Hangouts at Waymo is "off the record." Unlike Wickr and analogous third party ephemeral platforms, Hangouts does not use end-to-end encryption.[2] Moreover, Hangouts runs through Google's network and servers. Waymo witnesses have had access to Hangouts for their ordinary course business communications since 2013, and our investigation revealed that Hangouts is used by Waymo witnesses as part of their work communications.



**4.** *Allo*

Allo is a consumer (as opposed to an enterprise/business) messaging product geared toward

---

[2] End-to-end encryption is a security feature that prevents anyone other than the message sender and recipients from reading the message; messages sent with end-to-end encryption would not be readable on Google's servers, just as they would not be readable at Uber if used there.

1  millennial users for their personal use.  For example, the Allo website (htttps://allo.google.com)
2  features jumping icons and quirky colorful photographs, and touts the platform's playful features,
3  encouraging users to "[e]xpress [themselves] better with stickers, doodles, and HUGE emojis &
4  text."  Allo was launched in September 2016 but tested by volunteer Waymo users for several months
5  before then.  Unlike Google's other platforms, which connect users using email account credentials,
6  Allo connects users using their telephone numbers, making it an inefficient business tool for Waymo
7  users, who interact primarily using their corporate email accounts.  Allo can be used in "incognito" mode
8  whereby messages are sent with end-to-end encryption – *i.e.* messages can only be read by the message
9  sender and recipients – and will be deleted after a period of time specified by the user.  Our investigation
10 revealed no use of Allo by Waymo witnesses for any purpose, business or otherwise.

11 **III.    Waymo's Company Policies And Practices Are Entirely Distinguishable From The
           Uber Practices Discussed In The Jacobs Letter And Confirmed By Uber's
12         Subsequent Conduct**

13     The Jacobs Letter details malfeasance by Uber personnel ███████████████████
14 ████████████████████████████████████████████████████████████████████████████████
15 ███████████████████████████████████████ (Dkt. 2281-5 [Jacobs Letter], at 6.)
16 Waymo's investigation revealed no such misconduct.

17     *First*, the Jacobs Letter described Uber personnel ██████████████████████
18 ████████████████████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████████████████████
20 ████████████████████████████[3] (*See, e.g.,* Dkt. 2281-5 [Jacobs Letter], at 7-8.)  Witness
21 testimony at the evidentiary hearing revealed that at least one such ephemeral platform was used in
22 connection with communications between Uber and Anthony Levandowski and Lior Ron.  (Dkt. 2310
23 [11/29 Hr'g Tr.], at 153:12-16 ("THE COURT … And, in fact, the witnesses are [now] confirming,

---

[3]  Uber's ordinary course communications channels included email, Slack, and "UChat," Uber's internal instant messaging platform. *See generally* Ex. 8 [N. Qi 6/22 Tr.], at 66:4-23 ████████ ████████ Ex. 9 [M. Feldman 5/30 Tr.], at 132:1-14 (Uber makes available HipChat, Slack, and uChat for instant messaging by employees); Ex. 10 [J. Bares 6/16 Tr.], at 29:15-30:3 (noting use of Slack in his capacity as an Uber employee).

-7-

1  contrary to what was said by Mr. Gonzalez, that the Wickr was used outside the SSG. You told me
2  Wickr was used only in SSG, and it turns out that Levandowski and Lior Ron used it and maybe
3  others."). Waymo never utilized such practices. On the contrary, Waymo employees use only Google-
4  approved (and provided) messaging platforms for all of their business communications, and Waymo
5  employees are not instructed to hide their communications by using separate ephemeral communications
6  channels.

7  *Second*, the Jacobs Letter describes Uber personnel using non-attributable devices
8  ▇▇▇ (Dkt. 2281-5 [Jacobs Letter], at 8-9.) All devices
9  used by Waymo employees are purchased by Google or by individual users and registered and certified
10 by Google. Waymo employees are only allowed to use attributable devices registered with Waymo for
11 business purposes.

12 *Third*, Waymo does not engage in the same kinds of wrongful conduct described in the Jacobs
13 Letter. For example, the teams responsible for security at Google (and thus Waymo) communicate using
14 Google Hangouts and email only. They do not have any known history of using third-party platforms,
15 such as Wickr, Snapchat, or Telegram, for business purposes; do not have any known history of using
16 non-attributable hardware; do not provide any advice to Google users regarding how to use "off the
17 books" platforms to avoid ordinary course communications channels; have not provided any instructions
18 to Google/Waymo users analogous to those reportedly provided to Uber personnel ▇▇▇
19 ▇▇▇ do not use false privilege designations to evade discovery in
20 anticipated or pending civil litigation or law enforcement investigations; and do not undertake the kind
21 of ▇▇▇
22 ▇▇▇ (*Cf.* Dkt. 2281-5 [Jacobs Letter], at 4 ▇▇▇
23 ▇▇▇).)

Respectfully submitted,

DATED: December 4, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Charles K. Verhoeven*
Charles K. Verhoeven
Attorneys for WAYMO LLC