QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan Jaffe (Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO LLC,<br><br>　　　　Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S SUBMISSION ON UNJUST ENRICHMENT AND REASONABLE ROYALTY IN RESPONSE TO THE COURT'S REQUESTS AT THE DECEMBER 4, 2017 HEARING**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: February 5, 2018 |

Waymo submits the following brief in response to the Court's requests at the December 4, 2017 hearing (the "Hearing").[1]  Specifically, the Court requested the parties' assistance in answering the following questions:  (1) is unjust enrichment an element of trade secret misappropriation; and (2) is reasonable royalty an available remedy for improper acquisition where there is no unjust enrichment or unjust enrichment is unprovable.  *See* Hearing Tr. 51:11-13; 52:23-25; 58:6-11.

## I. UNJUST ENRICHMENT IS NOT AN ELEMENT OF TRADE SECRET MISAPPROPRIATION AND WAYMO NEED NOT PROVE UNJUST ENRICHMENT IN ORDER TO PROVE MISAPPROPRIATION OR REASONABLE ROYALTY DAMAGES.

Unjust enrichment is not an element of trade secret misappropriation.  A jury may find trade secret misappropriation where no unjust enrichment (or harm) has occurred at all.  This is evident from the language and structure of the underlying statutes, applicable cases decided under California law, and even statements in the CACI instructions themselves.  Moreover, where it has found a defendant liable for trade secret misappropriation, a jury may award reasonable royalty damages without first finding unjust enrichment or harm.

### A. Unjust Enrichment Is Not A Necessary Element Of Trade Secret Misappropriation.

Under the plain language of both CUTSA and DTSA, liability for trade secret "misappropriation" is defined independently from, and may occur in the absence of any form of damages, including unjust enrichment.  CUTSA, for example, nowhere mentions damages in defining misappropriation:

> (b) "Misappropriation" means:
> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
> (A) Used improper means to acquire knowledge of the trade secret; or
> (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
> (i) Derived from or through a person who had utilized improper means to acquire it;
> (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

---

[1]  Unless otherwise noted or redefined herein, capitalized terms are as defined in Waymo's Critiques of the RTJIs (Dkt. 2278), FTJI (Dkt. 2171), and TJIs and Form (Dkt. 2077).

> (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
> (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Cal. Civ. Code § 3426.1(b).  Instead, the four types of monetary remedies available—actual loss, unjust enrichment, reasonable royalty, and exemplary damages—are detailed in a separate section of the California Civil Code, Section 3426.3, entitled "Damages; royalties; exemplary damages." CUTSA implicitly contemplates a two-step analysis in which each of these damages remedies only come into play after "misappropriation" *has already been shown*:

> (a) A complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.
> (b) If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.
> (c) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b).

Cal. Civ. Code § 3426.3.  DTSA makes this distinction even clearer.  Like CUTSA, it defines "misappropriation" independently from any damages, *see* 18 U.S.C. § 1839(5), and then separately defines four types of monetary damages in a "Remedies" section, requiring "misappropriation" for each:

> **(3) Remedies.**--In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may-- …
> (B) award--
> (i)(I) damages for actual loss caused by the misappropriation of the trade secret; and
> (II) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or
> (ii) in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret;
> (C) if the trade secret is willfully and maliciously misappropriated, award exemplary damages in an amount not more than 2 times the amount of the damages awarded under subparagraph (B) . . .

18 U.S.C. § 1836(b)(3) (bolding in original).

At least one California court directly addressed the issue the Court described and held that a

plaintiff may prevail on a trade secret misappropriation claim under CUTSA "without proving actual damages or unjust enrichment":

> Under the UTSA, a plaintiff, like DPI, can prevail on a trade secret misappropriation cause of action without proving it suffered any actual damages or is otherwise entitled to monetary relief. As discussed above, the California Supreme Court has stated the UTSA provides a "full panoply of remedies, including injunctive relief against further misappropriation (§ 3426.2), damages for actual loss (§ 3426.3), and relief from unjust enrichment (*ibid*.)." (*Cadence*, supra, 29 Cal.4th at p. 226.) Therefore, a successful trade secret misappropriation plaintiff may obtain remedies that are monetary and/or nonmonetary (i.e., injunctive). A plaintiff that obtains only injunctive relief under the UTSA is considered to have prevailed on its misappropriation cause of action even without seeking and/or being awarded monetary damages. (See, e.g., *DVD Copy*, supra, 31 Cal.4th at p. 875 [plaintiff sought and obtained only injunctive relief for misappropriation of trade secret under UTSA].)
>
> Although successful trade secret misappropriation plaintiffs often obtain awards of monetary relief in addition to injunctive relief (see, e.g., *Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th 1514, 1519, 1527–1529; *Vacco Industries, Inc. v. Van Den Berg* (1992) 5 Cal.App.4th 34, 45, 53–54), defendants do not cite, and we are unaware of, any case or other authority that concludes a plaintiff cannot prevail on a trade secret misappropriation cause of action under the UTSA unless, as they assert, the plaintiff proves it suffered actual monetary damages or is entitled to an unjust enrichment award. *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, cited by defendants, is inapposite because it addresses a cross-complainant's failure to prove its claim for unjust enrichment based on the misappropriation of its trade secret and does not make any statements that support defendants' position. (*Id.* at pp. 625–629.)

*Distinctive Plastics, Inc. v. Carter*, 2014 WL 4631897, at *3 (Ca. Ct. App. Sept. 17, 2014).[2]

Other California courts implicitly agree, routinely omitting damages from the elements of trade secret misappropriation:

> To prevail on a claim of trade secret misappropriation, a plaintiff must demonstrate (1) the existence of a trade secret, and (2) misappropriation of the trade secret. *See* Cal. Civ.Code § 3426.1(b); *Diodes, Inc. v. Franzen,* 260 Cal.App.2d 244, 67 Cal.Rptr. 19 (Cal.Ct.App.1968); *Dealertrack, Inc. v. Huber,* 460 F.Supp.2d 1177, 1183 (C.D.Cal.2006).

*Oculus Innovative Scis., Inc. v. Nofil Corp.*, 2007 WL 4044867, at *6 (N.D. Cal. Nov. 15, 2007). Other California cases not only define misappropriation without including damages in them, but

---

[2] Rule 8.1115 of the California Rules of Court restricts citation of unpublished opinions in California courts. While *Distinctive Plastics* is unpublished, Waymo nevertheless brings it to the Court's attention given how directly it addresses the questions raised by the Court.

describe damages entirely separately, as a remedy:

> Trade secret misappropriation occurs whenever a person: (1) acquires another's trade secret with knowledge or reason to know "that the trade secret was acquired by improper means" (§ 3426.1, subd. (b)(1)); (2) discloses or uses, without consent, another's trade secret that the person "[u]sed improper means to acquire knowledge of" (*id.,* subd. (b)(2)(A)); (3) discloses or uses, without consent, another's trade secret that the person, "[a]t the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was" (a) "[d]erived from or through a person who had utilized improper means to acquire it" (*id.,* subd. (b)(2)(B)(i)), (b) "[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use" (*id.,* subd. (b)(2)(B)(ii)), or (c) "[d]erived from or through a person who owed a duty to the ***79 person seeking relief to maintain its secrecy or limit its use" (*id.,* subd. (b)(2)(B)(iii)); or (4) discloses or uses, without consent, another's trade secret when the person, "[b]efore a material change of his or her position, knew or had reason to know that it was a trade secret when that knowledge of it had been acquired by accident or mistake" (*id.,* subd. (b)(2)(C)).
>
> …
>
> California's trade secret law provides a trade secret owner with several remedies against a misappropriator, including injunctive relief. Indeed, section 3426.2, subdivision (a) expressly states that "[a]ctual or threatened misappropriation may be enjoined." Thus, California law clearly contemplates the use of injunctive relief as a remedy for trade secret misappropriation.

*DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal. 4th 864, 874–75 (2003), *as modified* (Oct. 15, 2003). California appellate courts have also implicitly accepted this separation. For example, in *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, the court evaluated and came to a "Conclusion Regarding [the] Merits of [a] Misappropriation Claim" entirely separately from its review of the "Trial Court's Damages Award," articulating the standard of review separately for each. 226 Cal. App. 4th 26, 42-43, 65–66 (Ct. App. 2014). And courts outside California have agreed. *See, e.g.*, *De Lage Landen Operat'l Servs., LLC v. Third Pillar Sys., Inc.*, 851 F. Supp. 2d 850, 852 (E.D. Pa. 2012) (ruling on motions in limine regarding damages two years *after* finding that misappropriation under CUTSA had occurred). Liability for trade secret misappropriation is established separately from damages, regardless of whether the claimant also meets the independent requirements for a remedy under the applicable statutes. Accordingly, unjust enrichment is not and cannot be a required element for liability.

Apart from the authorities presented, and as the Court has anticipated, conflating liability

with remedies for trade secret misappropriation invites paradoxical and unjust results. Such a situation occurred in *StrikePoint Trading, LLC v. Sabolyk*, 2009 WL 10659684 (C.D. Cal. Aug. 18, 2009). There, a jury deciding a CUTSA claim was instructed that harm or unjust enrichment was an element of misappropriation. *Id.* at *1. The jury then returned a verdict finding that (1) defendants had used and disclosed plaintiff's valid trade secrets, and (2) plaintiff had been harmed, but (3) the misappropriation was not a substantial factor in causing that harm. *Id.* The defendants argued that because the plaintiff had failed to prove trade secret misappropriation, it was not entitled to injunctive relief. *Id.* at *4. The court was then forced to confront a situation where the jury had found wrongdoing, but cut off the legal predicate for relief. In response, the court was required to effectively work-around the jury's findings to grant the plaintiff the injunction it deserved; in doing so, it blamed the parties themselves for the "imprecise" jury instructions, and cited to *Oculus*, hinting that including harm and unjust enrichment in the liability instruction might not have been correct:

> While noting the concerns raised by Defendants, the Court has a hard time concluding that despite the jury''s findings that both GAA and Sabolyk "misappropriated the client list by improperly using the client list" (Sklar. Dec., Exh. B, Question 4), that Sabolyk personally solicited clients on that list (*Id*. at Question 3) and that "StrikePoint Trading, LLC was harmed by the misappropriation of its client list" (*Id*. at Question 6) by Sabolyk and GAA, StrikePoint is still not entitled to some form of injunctive relief. Stated differently, because the jury found that Defendants Sabolyk and GAA improperly misappropriated Plaintiff''s clients list and used that list in a way that caused at least some harm to Plaintiff, Plaintiff is entitled to some form of protection preventing Defendants from using Plaintiff''s trade secret information *going forward* even if there was no calculated past damages at the time of trial. *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986) (in the trademark infringement context, noting that "cessation of unlawful conduct can moot such a dispute," but also recognizing that "the reform of the defendant must be irrefutably demonstrated and total" ("internal quotes and citations omitted")); *see also, Oculus Innovative Sciences, Inc. v. Nofil Corp.*, No. C. 06-1686-SI, 2007 WL 4044867, * 1. *6, *9-10 (N.D. Cal. Nov. 15, 2007) (holding that to prevail on its trade secret misappropriation claim, plaintiff need prove "(1) the existent [*sic*] of a trade secret, and (2) misappropriation," and thus awarding permanent injunctive relief on that basis alone).
>
> Indeed, while the Court recognizes that the jury found that the substantial factor element was not met, Defendants still must deal with the consequences of the imprecise Special Verdict Form jointly drafted by the parties. In other words, the Court will not ignore the specific jury findings previously identified in this order that unequivocally identify wrongdoing on the part of Sabolyk and GAA with respect to

-5-

> Plaintiff's protectable trade secret. In addition, there is no dispute that StrikePoint prevailed on its breach of contract claim against Sabolyk; while the Court does not find that parties can contract for injunctive relief where the factors for equitable relief are not otherwise met, the Court at least notes that as in *Oculus*, the provisions of Sabolyk''s CNDA also refer to some form of injunctive relief as to Sabolyk, as the CNDA expressly identifies that Sabolyk agreed StrikePoint might be irreparably harmed if Sabolyk disclosed the information and that injunctive relief might be necessary. *See* Pl.''s Mot. at 8, n.2; *see also, Oculus*, No. C 06-1686-SI at*9 (noting that text of CNDA also supported issuance of an injunction where parties agreed that plaintiff might be subject to irreparable harm upon breach and that contract could be enforced in equity).

*Id.* at *5. This Court should not put itself in the same position as that faced by the *StrikePoint* court, especially since there are no breach of contract claims here which the Court could use to buttress a similar injunction. The Court should instead take the commonsense step of separating liability from remedies in the jury instructions, which accords with logic and controlling authority, and will not unfairly prejudice Defendants.

### B. A Jury May Grant A Reasonable Royalty In The Absence Of Any Unjust Enrichment Or Where Unjust Enrichment Is Unprovable.

A reasonable royalty may be imposed in the absence of any unjust enrichment or where unjust enrichment is unprovable. Both CUTSA and DTSA provide, in slightly differing language, that unjust enrichment is mutually exclusive with, and not a prerequisite for, the grant of a reasonable royalty:

> If neither damages nor unjust enrichment caused by misappropriation are *provable*, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

Cal. Civ. Code § 3426.3(b) (emphasis added);

> *[I]n lieu of* damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret.

18 U.S.C. § 1836(b)(3)(B)(ii) (emphasis added).

Both California state courts and the Ninth Circuit have clarified the meaning of "provable" in CUTSA by repeatedly holding that reasonable royalties may be imposed where actual harm and unjust enrichment are *admittedly and entirely absent*:

> We conclude that where a defendant has not realized a profit or other calculable benefit as a result of his or her misappropriation of a trade secret, unjust enrichment

-6-
WAYMO'S SUBMISSION ON UNJUST ENRICHMENT AND REASONABLE ROYALTIES

> is not provable within the meaning of section 3426.3, subdivision (b), whether the lack of benefit is determined as a matter of law or as a matter of fact. To hold otherwise would place the risk of loss on the wronged plaintiff, thereby discouraging innovation and potentially encouraging corporate thievery where anticipated profits might be minimal but other valuable but nonmeasureable benefits could accrue.

*Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1313 (Ct. App. 2010) (awarding reasonable royalty damages). The Ninth Circuit reached the same conclusion, holding that a jury's finding of "no harm" did not preclude reasonable royalty damages in a CUTSA trade secret misappropriation case:

> The district court erred in ruling, at the damages stage, that the jury's finding of no harm precluded a reasonable royalty. The statute provides for a reasonable royalty "[i]f neither damages nor unjust enrichment caused by misappropriation are provable." Cal. Civ.Code § 3426.3(b). That requirement may be met by either a lack of sufficient evidence or an adverse jury finding with respect to those forms of relief. *Ajaxo Inc. v. E*Trade Fin. Corp.,* 187 Cal.App.4th 1295, 115 Cal.Rptr.3d 168, 172–73 (2010). The jury's finding that Defendants did not proximately cause harm to Plaintiff is therefore consistent with the availability of a royalty under the statute.[1]
>
> > [1] The California Court of Appeal did not hold otherwise, in *Ajaxo*, when it wrote that "if a plaintiff is unsuccessful in proving unjust enrichment before the jury, the trial court would still have to decide whether the plaintiff suffered any measurable loss of its own before the reasonable royalty remedy would become available." 115 Cal.Rptr.3d at 183. *Ajaxo* held only that the court must decide *whether* the plaintiff suffered a loss before awarding a royalty, not that it must determine that plaintiff did suffer such a loss. *Id.*

*Atl. Inertial Sys. Inc. v. Condor Pac. Indus.*, 545 Fed. Appx. 600, 601, 601 n.1 (9th Cir. 2013) (emphasis in original) (overturning *Atl. Inertial Sys. Inc v. Condor Pac. Indus.*, 2011 WL 13124036, at *4 (C.D. Cal. Aug. 25, 2011) (in turn holding that "[t]o prevail in a CUTSA claim, a plaintiff must establish harm.")). The California Court of Appeal adopted similar reasoning in upholding a jury's reasonable royalty award:

> Altavion conceded during its opening statement that it could not prove it had actual damages, and the trial court found Altavion had not proven any actual loss. The court reasoned, "The evidence that [Altavion] would have a working software product embedded in [KMSL's] hardware machines, and successfully sold for years at a profit, under the circumstances, is highly speculative and uncertain, and the revenue projections are unreliable."
>
> Regarding unjust enrichment, the trial court noted that, although Altavion had not argued for that measure of damages, section 3426.3 required the court to consider whether such damages were provable. The court quoted *Ajaxo, supra,* 187

> Cal.App.4th at page 1313, 115 Cal.Rptr.3d 168, which held "that where a defendant has not realized a profit or other calculable benefit as a result of his or her misappropriation of a trade secret, unjust enrichment is not provable within the meaning of section 3426.3, subdivision (b), whether the lack of benefit is determined as a matter of law or as a matter of fact." The trial court then suggested there was no such evidence of a calculable benefit in the present case, reasoning that KMSL "did not incorporate [Altavion's] trade secrets into any of its [MFP] products, or create a software that it sells or licenses, or otherwise commercially exploit the secrets. [KMSL has] made no profits from [Altavion's] trade secrets or its misappropriation." The court also pointed out that KMSL did not misappropriate Altavion's DST source code or algorithms, which were Altavion's "core" trade secret.
>
> The trial court then acknowledged the next step was to determine whether a reasonable royalties award was appropriate, quoting *Ajaxo, supra,* 187 Cal.App.4th 1295, 115 Cal.Rptr.3d 168, for the propositions that "where the defendant does not make any profit, reasonable royalties could be awarded" (*id*. at p. 1312, 115 Cal.Rptr.3d 168) and "[w]hen calculating a monetary remedy for the past use of a misappropriated trade secret, a court 'may order' reasonable royalties '[i]f neither damages for actual loss nor unjust enrichment caused by misappropriation are provable' " (*id*. at p. 1308, 115 Cal.Rptr.3d 168). The court then quoted extensively from *Ajaxo* and other authorities regarding the standards for determining the amount of a reasonable royalty.

*Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 66-67 (Ct. App. 2014) (affirming award of $1 million of reasonable royalties).

The CACI itself reaches a similar conclusion. CACI 4409, "Remedies for Misappropriation of Trade Secret," reinforces that unjust enrichment is an alternative to, and not a prerequisite for, the award of a reasonable royalty:

> [If [*name of defendant*]'s misappropriation ***did not cause*** [[*name of plaintiff*] to suffer an actual loss/ [or] [*name of defendant*] to be unjustly enriched], [*name of ***plaintiff***] **may still be entitled** to a reasonable royalty for no longer than the period of time the use could have been prohibited. However, I will calculate the amount of any royalty.]

CACI No. 4409 (bolding added); *see also id.* Directions for Use ("Include the optional [above quoted] paragraph if the court wants to advise the jury that even if it finds that the plaintiff suffered no actual loss and that the defendant was not unjustly enriched, the plaintiff may still be entitled to some recovery."); Sources and Authority (citing, *inter alia*, *Ajaxo* and *Altavion*).[3]  As explained in

---

[3] CACI 4409 references the judge, rather than the jury, deciding the issue of a reasonable royalty. As previously explained, however, those statements do not apply to the DTSA generally or to the CUTSA in Federal court, where the question of a reasonably royalty is subject to the

*Distinctive Plastics*, CACI 4401 "applies only in cases in which relief is sought for actual damages or unjust enrichment." 2014 WL 4631897, at *3. Therefore, in cases where reasonable royalty damages are sought, CACI 4401 does not apply and a plaintiff can obtain such relief even in the absence of proof of actual damages or unjust enrichment.

In short, the statutes at issue, controlling precedent, and the CACI itself demonstrate that harm and unjust enrichment need not be found or "proved" before reasonable royalties may be granted. So long as misappropriation is proven, a reasonable royalty may be available where there has been no harm or unjust enrichment *at all*.

### C. To The Extent Relevant, Defendants' Authorities Support Waymo's Position.

The cases Defendants cited at the Hearing do not refute that neither harm nor unjust enrichment is necessary for liability for trade secret misappropriation. In fact, to the extent relevant to this inquiry, each case actually supports that harm and unjust enrichment are *not* required. Defendants' counsel first noted that "CACI 4401 cites to the Silvaco decision, which your Honor is familiar with," Hearing Tr. at 56:11-12, then cited that case "for the proposition that -- that actual or threatened injury is an element of a trade secrets claim," *id.* at 56:9-10. As an initial matter, that case is older than each of the contrary decisions cited above, mentions the elements of misappropriation only in passing, and cites to no sources for those elements other than the statute itself. *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (Ct. App. 2010), *as modified on denial of reh'g* (May 27, 2010), *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). Moreover, to the extent it is relevant to the present inquiry, *Silvaco* only reinforces that unjust enrichment is not an element of trade secret misappropriation, and money damages may be awarded *even in the absence of actual harm or unjust enrichment*:

> A cause of action for monetary relief under CUTSA may be said to consist of the following elements: (1) possession by the plaintiff of a trade secret; (2) the defendant's misappropriation of the trade secret, meaning its wrongful acquisition, disclosure, or use; and (3) resulting or threatened injury to the plaintiff. (3426.3; see *id.,* §§ 3426.1, 3426.2.) The first of these elements is typically the most important, in the sense that until the content and nature of the claimed secret is

---

Seventh Amendment. *See* Dkts. 2077 at 4-9; 2221 (requiring submission of agreed-upon jury instructions for reasonable royalty; 2229 (parties' agreed-upon jury instructions for reasonable royalty).

-9-
WAYMO'S SUBMISSION ON UNJUST ENRICHMENT AND REASONABLE ROYALTIES

ascertained, it will likely be impossible to intelligibly analyze the remaining issues.

184 Cal. App. 4th at 220 (Ct. App. 2010). Thus, *Silvaco* actively contemplates a situation where a plaintiff has suffered no actual injury, only "threatened" injury, and yet still is entitled to a finding of liability and an award of "monetary" damages. This undercuts, rather than supports, Defendants' position that actual damages or unjust enrichment is a necessary element of any trade secret misappropriation claim.

Defendants' citation to *Unilogic, Inc. v. Burroughs Corp.* fares no better. 10 Cal. App. 4th 612 (Ct. App. 1992). Defendants' counsel described this case as "grant[ing] a nonsuit because the plaintiff did not present evidence of damages specific to the disputed hand [*sic*] and relevant to the measure of damages." Hearing Tr. 56:19-22. This is mostly accurate—the appellate court affirmed the grant of a non-suit because the plaintiff had presented no evidence from which to determine damages and the court had already denied injunctive relief based on unclean hands. In doing so, however, the *Unilogic* court (i) explicitly contemplated the separation of liability from damages, and (ii) implicitly recognized that a lack of unjust enrichment does not preclude the imposition of a reasonable royalty:

> In this case, the amount of restitution based upon an unjust enrichment theory depends upon the degree to which Unilogic was enriched by retention and use of Burroughs's proprietary information. And that enrichment, if any, is not necessarily equivalent to Burroughs's loss, if any. While Still's testimony may have served as a starting point, neither his valuations nor any other evidence introduced by Burroughs directly addressed the degree to which Unilogic was enriched. There was no point in submitting the liability issue to the jury when there was no basis for a determination of damages.
>
> Nor was it necessary to submit the liability issue to the jury in order to allow the trial court thereafter to determine a reasonable royalty or to impose an injunction. Just as Burroughs presented no evidence of the degree of Unilogic's enrichment, Burroughs likewise presented no evidence that would allow the court to determine what royalty, if any, would be reasonable under the circumstances. And the court was obviously not willing to grant injunctive relief, regardless of the jury's decision on liability. As noted above, the court had already denied injunctive relief under Burroughs's 11th cause of action, based in part on Burroughs's unclean hands. Burroughs has not briefed that ruling on appeal and has not explained why a request for injunctive relief under its 10th cause of action for misappropriation of trade secrets would have fared better or why a denial of such relief would have constituted error.

10 Cal. App. 4th at 628. The *Unilogic* court expressly identified "the liability issue" as existing and

-10-

being decided separately from damages. It further indicated that a lack of provable unjust enrichment does not itself render moot the reasonable royalty inquiry, but instead requires separate evaluation of the evidence presented. Again, this undercuts, rather than supports, Defendants' position that actual damages or unjust enrichment is necessary to prove trade secret misappropriation.

## II. REASONABLE ROYALTY DAMAGES MAY BE AWARDED FOR IMPROPER ACQUISITION ABSENT ANY UNJUST ENRICHMENT OR OTHER HARM.

As demonstrated above, (i) a plaintiff may prevail on a trade secret misappropriation claim without proving unjust enrichment and (ii) unjust enrichment need not be shown for a reasonable royalty to be available. *See, e.g., Distinctive Plastics*, 2014 WL 4631897, at *3; *Atl. Inertial Sys.*, 545 Fed. Appx. at 601 ("The jury's finding that Defendants did not proximately cause harm to Plaintiff is therefore consistent with the availability of a royalty under the statute."). Unsurprisingly, improper acquisition, an independent and sufficient route to misappropriation, conforms to this general rule.

Improper acquisition alone is sufficient to incur liability for trade secret misappropriation. *See* Dkts. 2077 at 1-2; 2230 at 1-2; 2278 at 3-5; *see also supra, DVD Copy*, 31 Cal. 4th at 874–75. Moreover, acquisition alone can also result in damages, including punitive damages, under California law:

> A trade secret is misappropriated if a person (1) acquires a trade secret knowing or having reason to know that the trade secret has been acquired by "improper means," (2) discloses or uses a trade secret the person has acquired by "improper means" or in violation of a nondisclosure obligation, (3) discloses or uses a trade secret the person knew or should have known was derived from another who had acquired it by improper means or who had a nondisclosure obligation or (4) discloses or uses a trade secret after learning that it is a trade secret but before a material change of position. (Civ.Code, § 3426.1, subd. (b).)
>
> Under the UTSA, two different wrongdoers may be liable for misappropriation of a trade secret: one, a person who actually discloses a trade secret; and two, a person who acquires a trade secret from the discloser. An "acquirer" is not liable under the UTSA unless he knew *or had reason to know* that the trade secret was improperly disclosed. (Civ.Code, § 3426.1, subd. (b).) Furthermore, punitive damages are permitted if "willful and malicious misappropriation exists." (Civ.Code, § 3426.3, subd. (c).)

*Ajaxo Inc. v. E*Trade Grp., Inc.*, 135 Cal. App. 4th 21, 66 (Ct. App. 2005) (emphasis in original).

As noted above, no harm or unjust enrichment is necessary before a reasonable royalty is imposed. *See, e.g., Atl. Inertial Sys.*, 545 Fed. Appx. at 601, 601 n.1. Even if unjust enrichment *were* necessary to find misappropriation or grant a reasonable royalty, however, Defendants' improper acquisition alone caused sufficient damages to allow for the award of a reasonable royalty should the quantum of unjust enrichment be unprovable.

The availability of a reasonable royalty is particularly necessary in the context of misappropriation by acquisition. As the Court has anticipated, both harm and unjust enrichment may be difficult to prove where misappropriation by acquisition alone is alleged. But a reasonable royalty is designed to cover just such "unusual circumstances" where damages are unprovable or would be left to speculation or guesswork:

> Further, the Court cannot conclusively reject SkinMedica's arguments that no evidence is available as to lost profits where the products are used for hair growth rather than skincare because neither party has yet sold any such hair growth product, and that any apportionment of loss is speculative based on the multi-player market and other factors specific to this case. (Pl.'s Opp'n to Def.'s MSJ 22–25.) Indeed, such "unusual circumstances" may render unjust enrichment unprovable. *Cacique,* 169 F.3d at 623; *see also 02 Micro Intern. Ltd. v. Monolithic Power Sys.,* 399 F.Supp.2d 1064, 1077 (N.D.Cal.2005) (awarding reasonable royalties where expert evidence left the jury to rely on "speculation and guesswork"); *Unilogic v. Burroughs,* 10 Cal.App.4th 612, 626–630, 12 Cal.Rptr.2d 741 (1992) (infringing product never brought to market). Thus, the Court finds it improper to summarily adjudicate the issue of damages based on the evidence before it. The parties may revisit this issue in their pretrial motions.

*SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1198 (S.D. Cal. 2012). Moreover, that harm or unjust enrichment did not occur, or cannot be proven in a discrete amount, does not mean that a party which intentionally steals a trade secret (*i.e.*, misappropriation by acquisition) may escape liability under CUTSA and DTSA, as well as any punitive damages, merely because it was caught before it could use or disclose that secret. This would undermine the purpose of trade secret law:

> Trade secret law also helps maintain "standards of commercial ethics...." (*Kewanee, supra,* 416 U.S. at p. 481, 94 S.Ct. 1879.) "The word 'property' as applied to ... trade secrets is an unanalyzed expression of certain secondary consequences of the primary fact that the law makes some rudimentary requirements of good faith." (*E.I. Du Pont de Nemours Powder Co. v. Masland* (1917) 244 U.S. 100, 102, 37 S.Ct. 575, 61 L.Ed. 1016.) By sanctioning the acquisition, use, and disclosure of another's valuable,

==proprietary information by improper means, trade secret law minimizes "the inevitable cost to the basic decency of society when one ... steals from another." (*Kewanee,* at p. 487, 94 S.Ct. 1879.) In doing so, it recognizes that " 'good faith and honest, fair dealing, is the very life and spirit of the commercial world.' " (*Id.* at pp. 481–482, 94 S.Ct. 1879, quoting *National Tube Co. v. Eastern Tube Co.* (1902) 13 Ohio Cir. Dec. 468, 3 Ohio C.C. (n.s.) 459, 462.)==

*DVD Copy*, 31 Cal. 4th 864 at 881.  A reasonable royalty is more, not less appropriate where misappropriation is by acquisition alone.

DATED: December 7, 2017                                QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Charles K. Verhoeven*
      Charles K. Verhoeven
      Attorneys for WAYMO LLC