MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzalez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Tel:  415.268.7000 / Fax:  415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC  20005
Tel:  202.237.2727 / Fax:  202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@SusmanGodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY  10019-6023
Tel:  212.336.8330 / Fax:  212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>                    Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, INC.,<br>OTTOMOTTO LLC; OTTO TRUCKING<br>LLC,<br><br>                 Defendants. | Case No.     3:17-cv-00939-WHA<br><br>**UBER'S RESPONSE TO WAYMO'S<br>SUBMISSION TO SPECIAL MASTER<br>COOPER REGARDING THE JACOBS<br>DOCUMENTS**<br><br>Trial Date: February 5, 2018 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     UBER WAS NOT REQUIRED TO PRODUCE THE JACOBS DOCUMENTS ............. 2

        A.      The Jacobs Documents Were Not Responsive to Any Court Orders...................... 2

        B.      Waymo Has the Burden of Showing that Uber Should Have Produced the
                Jacobs Documents in Response to Discovery .......................................................... 4

        C.      The Jacobs Documents Were Not Responsive to the Interrogatories
                Identified by Waymo............................................................................................... 4

        D.      Waymo's RFPs Did Not Meet Rule 34's "Reasonable Particularity"
                Standard .................................................................................................................. 5

        E.      The Jacobs Documents Were Not Responsive to the RFPs as Narrowed
                Pursuant to Rule 34 .............................................................................................. 10

        F.      Uber Was Not Obligated to Produce the Jacobs Documents Because They
                Might Generally Be Relevant................................................................................ 15

        G.      Production of the Jacobs Documents Was Not Mandated by
                Representations by Uber or Its Counsel................................................................ 17

        H.      The Jacobs Documents Were Not Intentionally Withheld..................................... 17

III.    CONCLUSION.............................................................................................................. 18

UBER'S RESPONSE TO WAYMO'S SUBMISSION TO SPECIAL MASTER COOPER RE THE JACOBS DOCUMENTS
Case No. 3:17-cv-00939-WHA
sf-3847221

i

## I.   INTRODUCTION

The question is not whether the three Jacobs documents are relevant to this litigation, or whether, with the benefit of hindsight, it would have been prudent for Uber to have produced these documents.  Obviously, Uber wishes the documents had been produced because it is our strong belief that they add nothing to the merits of the trade secrets case that is to be tried.  That said, we emphatically reject any suggestion by Waymo that the documents were hidden from the Court or purposely withheld.  That simply is not true.  While there is plenty of rhetoric in the demand letter; the testimony last week made clear that there is not a single fact that Uber intended to hide from this Court.

The Court has asked the Special Master to determine whether the three Jacobs documents should have been produced in response to (a) any Court Order or (b) any discovery request in this case.  The answer to that question is "no."

Waymo's position on production fails for the following reasons:

First, Waymo has the burden of proof on this issue and has failed to meet its burden.  This is an important fact that Waymo does not address.

Second, the documents are not responsive to any of the Court's orders because they do not address any of the "downloaded materials" that Anthony Levandowski allegedly stole, and the Court's orders were specifically limited to that issue.  None of the Court's orders addressed any document that might generally refer to Waymo trade secrets.

Third, the documents are not responsive to the two interrogatories cited by Waymo, which ask for "policies and practices" with respect to the retention of documents, and the efforts to preserve evidence relevant to this case.  Moreover, even if they contained some information that was arguably responsive, the interrogatories requested *facts*, not the production of documents.

Fourth, and critically, the document requests identified by Waymo fail to comply with Rule 34(b)(1)(A)'s requirement that the document sought be described with "reasonable particularity."  As a result, and as required by Rule 34, the parties agreed to narrowed requests and a list of search terms and custodians that governed the parties' production obligations.  The Jacobs documents are not responsive to those requests.  Waymo concedes that the search terms

UBER'S RESPONSE TO WAYMO'S SUBMISSION TO SPECIAL MASTER COOPER RE THE JACOBS DOCUMENTS
Case No. 3:17-cv-00939-WHA
sf-3847221

1

did not hit on any of the Jacobs documents.  Waymo's current suggestion that Uber had to

produce "hits" *and* still respond to the overbroad document requests makes no sense.  That is why

there was silence on the phone when Uber's counsel recently asked during a meet and confer call:

"whose hard copy files do you claim Uber was required to search" in addition to running the

agreed-upon search terms through the electronic documents of the agreed-upon custodians.

Moreover, a fair reading of the requests shows that the three documents at issue are not

responsive even to those vastly overbroad requests.

    And finally, none of the testimony that Waymo cites required the production of the Jacobs

documents.

## II.    UBER WAS NOT REQUIRED TO PRODUCE THE JACOBS DOCUMENTS

### A.    The Jacobs Documents Were Not Responsive to Any Court Orders

#### 1.    The Documents Were Not Responsive to the Expedited Discovery Order

    The expedited discovery order directed defendants to "produce for inspection all files and

documents *downloaded by Anthony Levandowski, Sameer Kshirsagar, or Radu Raduta* before

leaving plaintiff's payroll and thereafter taken by them."  (Dkt. 61 ¶ 4 (emphasis added).)

The Jacobs' documents do not refer to any downloading by Messrs. Levandowski, Kshirsagar or

Raduta.  Accordingly, the Jacobs documents are not responsive to the Court's expedited

discovery order.

#### 2.    The Documents Were Not Responsive to the April 4 Order

    The Court's April 4 Order asked Defendants to provide "A list of all servers (and their

locations) used at any time in any way for defendants' LiDAR-related activities."  (Dkt. 144 ¶ 1.)

The Jacobs documents make no mention of servers used for LiDAR related activities.  All

LiDAR-related servers were properly disclosed.

#### 3.    The Documents Were Not Responsive to the Provisional Relief Order

    The Provisional Relief Order required Uber to "conduct a thorough investigation and

provide a detailed accounting under oath setting forth every person who has seen or heard any

UBER'S RESPONSE TO WAYMO'S SUBMISSION TO SPECIAL MASTER COOPER RE THE JACOBS DOCUMENTS
Case No. 3:17-cv-00939-WHA
sf-3847221

2

part of any downloaded materials, what they saw or heard, when they saw or heard it, and for what purpose" and to provide "a complete and chronologically organized log of all oral and written communications—including, without limitation, conferences, meetings, phone calls, one-on-one conversations, texts, emails, letters, memos, and voicemails—wherein Anthony Levandowski mentioned LiDAR to any officer, director, employee, agent, supplier, or consultant of defendants."  (Dkt. 426 ¶¶ 4, 5.)  "Downloaded materials" was defined as "any and all materials *that Anthony Levandowski downloaded from Waymo* and kept upon leaving Waymo's employment, regardless of how long he kept them for and whether or not any such materials qualify as trade secrets or proprietary or confidential information." (*Id.* at 22 (emphasis added).)

Mr. Jacobs did not see or hear any part of the "downloaded materials."  He makes allegations about trade secret theft by MA, not by Mr. Levandowski.  The Jacobs documents thus are not responsive to the accounting portion of the Provisional Relief Order.

Mr. Jacobs also makes no allegations about Mr. Levandowski communicating ephemerally or otherwise about LiDAR with anyone.  To the contrary, the Jacobs Letter discusses Wickr being used by some employees to communicate with SSG.  (11/28/17 Hr'g Tr. 76:16-25 ("THE COURT: Let's be very clear on something. Was the idea that the Autonomous Vehicle Group would learn how to communicate among each other with more hard-to-uncover communications, or are you simply saying that if the Autonomous Vehicle Group one day woke up and said, 'We need to communicate with Mr. Russo,' that they would have this more secure channel? THE WITNESS [Jacobs]: The second one; *that if the leadership or the members of the Autonomous Vehicle Group or Autonomous Technology Group needed to communicate with SSG, that they would have a more secure way of doing so*." (emphasis added); *see also id*. at 77:24-78:1 (Jacobs: "So non-attributable devices, I don't have any knowledge of them being used with regard to the autonomous technology groups.").)  Thus, Mr. Jacobs' allegations are not responsive to the logging requirement of the order.  Moreover, Uber included all SSG and MA members in its survey and interviewed anyone who responded that he or she communicated with Mr. Levandowski regarding LiDAR.

**B.      Waymo Has the Burden of Showing that Uber Should Have Produced the Jacobs Documents in Response to Discovery**

Waymo has the burden of proving by clear and convincing evidence that Uber has violated a court order.  *See Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992) ("The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court."); *see also FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999).

Waymo has the burden of showing that Uber ought to have produced the Jacobs documents during discovery.  *See, e.g., Equal Rights Ctr. v. Post Properties, Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007) (citations omitted) ("The party moving to compel discovery has the burden of proving that the opposing party's answers were incomplete."); *see also Chatman v. Felker*, No. CIV-S03 2415 JAM KJM P, 2009 WL 173515 (E.D. Cal. Jan. 23, 2009), report and recommendation adopted, No. CIV S-03 2415 JAM KJM P, 2009 WL 1110590 (E.D. Cal. Apr. 24, 2009*).  Further, under the Civil Local Rules, a party moving to compel further responses to discovery requests "must detail the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied."  N.D. Cal. Civ. L.R. 37-2.  Waymo has not met these burdens, as demonstrated below.

**C.      The Jacobs Documents Were Not Responsive to the Interrogatories Identified by Waymo**

**1.      Expedited Interrogatory No. 6: Describe DEFENDANTS' efforts to preserve evidence relevant to THIS CASE, INCLUDING (without limitation) when DEFENDANTS instituted any litigation hold(s) REGARDING THIS CASE, how DEFENDANTS implemented any litigation hold, all PERSONS who received any litigation hold, when each PERSON received each litigation hold, which PERSON(S) was responsible for monitoring compliance with each litigation hold, and any instances of non-compliance with such litigation hold.**

Waymo's interrogatory is limited to efforts to preserve evidence for "this case."  Uber provided a full and complete response detailing its efforts to preserve evidence relevant *to this case*.  Mr. Jacobs does not make any allegation about any failure to preserve evidence related to

Uber's Response to Waymo's Submission to Special Master Cooper Re the Jacobs Documents
Case No. 3:17-cv-00939-WHA
sf-3847221

4

1   *this case*.  Moreover, this interrogatory would only have required disclosure of a *fact* about the

2   litigation hold pertaining to *this case*, not the documents at issue.  Waymo does not identify any

3   such fact, and even if there were such a fact, that would not require production of the documents.

**2.   Common Interrogatory No. 8: Describe in detail YOUR policies and practices with respect to the retention and/or destruction of DOCUMENTS (including without limitation emails, instant messages, electronically stored information, and hard copies), from 2014 to the present**

7   Uber provided a full and complete response detailing its "policies and practices" with

8   respect to the retention and destruction of documents.  The Jacobs documents make allegations

9   regarding certain practices, but they are untrue and do not reflect Uber's actual policies and

10   practices.  Uber is not required to supplement its interrogatory response with false accusations

11   and inaccurate information.  Moreover, this interrogatory would not have required disclosure of

12   any of the Jacobs documents.  At best, the interrogatory would have required inclusion of a *fact*

13   that was not disclosed in the interrogatory, ***not the documents***.

**D.   Waymo's RFPs Did Not Meet Rule 34's "Reasonable Particularity" Standard**

16   This is a very important point for the Court to focus on.  Congress was very clear that a

17   document request has to be narrow, described with "reasonable particularity."  The four document

18   requests at issue do not meet that requirement.

19   Federal Rule of Civil Procedure 34(a) provides that a party may serve requests on other

20   parties for "designated documents" or "electronically stored information," subject to Rule 26(b)'s

21   requirements, including proportionality.  Rule 34(b) then provides the mechanism for document

22   requests and makes clear that it is the requesting party's burden to describe a request for

23   production with "reasonable particularity" as to the items to be produced.  Fed. R. Civ. P.

24   34(b)(1)(A); *see also Doubt v. NCR Corp.*, No. C09-5917 SBA, 2011 WL 3740853, at *4 (N.D.

25   Cal. Aug. 5, 2011).  "[T]he party requesting the production of documents must provide sufficient

26   information to enable the party to whom the request is directed to identify responsive

27   documents."  *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 202 (N.D.W. Va.

28   2000) (citations and quotations omitted).  *See also Mailhoit v. Home Depot U.S.A., Inc.*,

UBER'S RESPONSE TO WAYMO'S SUBMISSION TO SPECIAL MASTER COOPER RE THE JACOBS DOCUMENTS
Case No. 3:17-cv-00939-WHA
sf-3847221

5

285 F.R.D. 566, 570 (C.D. Cal. 2012) (citations and quotations omitted) ("The test for reasonable particularity is whether the request places a party upon 'reasonable notice of what is called for and what is not'.").

Rule 34 requires a responding party to either permit the request "as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B); *see also Yates v. W. Contra Costa Unified Sch. Dist.*, No. 16-cv-01077-MEJ, 2017 WL 2106130, at *2 (N.D. Cal. May 15, 2017) (Rule 34 "requires [a party to] either to object to the request with specificity . . . and indicate whether he is withholding any documents based on his objection, or to state he will allow inspection or produce responsive documents." Courts readily deny a party's motion to compel discovery on overbroad requests for lack of reasonable particularity. *See Doubt*, 2011 WL 3740853, at *4 (accepting the Magistrate's denial the plaintiff's motion to compel requests for productions, finding "the requests are overbroad, failing to comply with Rule 34's particularity requirement"); *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 571-72 (C.D. Cal. 2012) (denying a party's motion to compel further responses on requests for production that are "impermissibly overbroad" or "fail[] to put a 'reasonable person of ordinary intelligence' on notice of which specific documents or information would be responsive to the request" as "fail[ing] to satisfy Rule 34(b)(1)(A)'s requirement that production requests be stated with reasonable particularity.").

The four requests here are classic, big-firm "give me everything" document requests. We begin with the definitions. The requests at issue all describe "DOCUMENT" as follows:

> "DOCUMENTS" shall INCLUDE, without limitation, all written, graphic or otherwise recorded material, INCLUDING without limitation, electronically stored information regardless of the form of storage medium, microfilms or other film records or impressions, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, INCLUDING e-mail, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, INCLUDING by the addition of handwritten notations or other written or printed

UBER'S RESPONSE TO WAYMO'S SUBMISSION TO SPECIAL MASTER COOPER RE THE JACOBS DOCUMENTS
Case No. 3:17-cv-00939-WHA
sf-3847221

6

matter of any nature, from the original. The foregoing specifically INCLUDES information stored in a computer database and capable of being generated in documentary form, such as electronic mail, text messages (i.e., SMS messages), other electronic messages including messages sent or received via Slack, WhatsApp, Google Hangouts, Facebook Messenger, and the like.

(Rivera Decl. Ex. H ¶ 18.)  This, by itself, fails the "reasonable particularity" test.  *See Net-Com Servs., Inc. v. Eupen Cable USA, Inc.*, No. CV 11-2553 PSG (SSx), 2012 WL 12887396, at *5 (C.D. Cal. Nov. 14, 2012) (citations and quotations omitted) ("All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A).").  Asking Uber to search "all written, graphic or otherwise recorded material, including without limitation electronically stored information regardless of the form of storage medium" is per se unreasonable.

And then there is the definition of "COMMUNICATIONS":

"COMMUNICATIONS" shall mean, without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, DOCUMENT, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail ("e-mail").

(Rivera Decl. Ex. H ¶ 19.)  This, by itself, also fails the "reasonable particularity" test. Essentially, this requires Uber to search and produce any transmission, conveyance or exchange of a word, statement, fact, thing, idea…by any medium."

And, of course, we cannot forget the definition of "REGARDING":

"REGARDING," shall mean relating to, referring to, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

(Rivera Decl. Ex. H ¶ 22.)  This too, by itself, fails the "reasonable particularity" test.  *See, e.g.*, *Pulsecard, Inc. v. Discover Card Servs., Inc.*, No. 94-2304-EEO, 1995 WL 526533, at *3 (D. Kan. Aug. 31, 1995) (sustaining objections to discovery requests on the basis that requests using language such as "document 'relevant to,' 'concerning', which 'refer in any manner to' or are 'related in any manner to,' 'pertains to,' or are similarly germane" often "makes a requests for production overly broad and burdensome on its face").  Essentially, this requires Uber to search

UBER'S RESPONSE TO WAYMO'S SUBMISSION TO SPECIAL MASTER COOPER RE THE JACOBS DOCUMENTS
Case No. 3:17-cv-00939-WHA
sf-3847221

7

1   and produce any material "pertaining to," "constituting (in whole or in part)" and even

2   "contradicting" the subject matter in the request, however tangential.  These three definitions are

3   the poster child for improper "give me everything" discovery requests.[1]

4        Definitions aside, the language of the requests is patently overbroad.  Asking for "ALL"

5   documents and communications pertaining to the negotiations of the Otto transaction (No. 29),

6   for "ALL" communications "REGARDING" Uber's policies on the use of personal computers or

7   other devices (No. 72), for "All DOCUMENTS AND COMMUNICATIONS REGARDING" the

8   "MISAPPROPRIATED MATERIALS" (No. 73), and "All DOCUMENTS AND

9   COMMUNICATIONS REGARDING any of LEVANDOWSKI's past and present "Authorized

10  Devices" (No. 91) is not reasonable and precisely the sort of thing that Congress has sought to

11  prohibit by requiring parties to identify "designated documents" (Rule 34(a)(1)(A) with

12  "reasonable particularity."  (Rule 34(a)(b)(1)(A).)  *See, e.g.*, *Gropper v. David Ellis Real Estate*,

13  *L.P.*, No. 13 Civ. 2068 (ALC)(JCF), 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (finding

14  that a "request for 'any and all' documents ... is inherently overbroad"); *Synopsys, Inc. v. Nassda*

15  *Corp.*, No. C 01-2519 SI, 2002 WL 32749137, at *1 (N.D. Cal. Sept. 16, 2002) (finding requests

16  for "all documents" relating to particular subjects are overbroad).  Waymo failed to comply with

17  these requirements.  And critically, these requirements apply to requests for *both* hard copy and

18  electronic information.  Waymo does not suggest otherwise.

19        Because Waymo's requests were not reasonably particular, Uber objected to the requests,

20  *and the requests were narrowed* during the meet and confer process, as described below.  Uber's

21  obligations were satisfied when it responded to those narrowed requests.  It did not have any

22

---

23   [1] Waymo may argue that Uber's requests also had broad definitions and similarly failed to
    comply with the "reasonable particularly" requirement.  But that is why the search terms were

24   mutual. Both parties agreed to the same terms, but different custodians.  Moreover, a moving
    party who fails to comply with the Federal Rules of Civil Procedure cannot defend its failure by

25   arguing that "the other side did it too."  *See Flying J Inc. v. Pilot Travel Ctrs. LLC*, No. 1:06-CV-
    00030 TC, 2009 WL 1835000, at *3 (D. Utah June 25, 2009) (By analogy, the rules reject

26   "'excuse by lack of reciprocity.'  A party is not excused from making disclosures because
    'another party has not made its disclosures.'  The same principle applies to discovery."); *Gropper*,

27   2014 WL 518234, at *4 ("Discovery is not equity: one party's noncompliance with discovery
    requirements does not excuse the other's failure to comply. Each party's obligation is independent,

28   and any motion to compel will be determined on its own merits.").

1    obligation to respond to the original overbroad requests.  *See Parrick v. FedEx Grounds Package*

2    *Sys.*, No. CV 09-95-M-DWM-JCL, 2010 WL 2854314, at *4 (D. Mont. July 19, 2010) ("Where a

3    discovery request is overly broad, the responding party must specify the objectionable part and

4    answer the request to the extent it is not overly broad."); *Doe v. AT & T W. Disability Benefits*

5    *Program*, No. C-11-4603 DMR, 2012 WL 1669882, at *5 (N.D. Cal. May 14, 2012) (after

6    determining discovery request was overbroad, finding party "need only respond to" narrowed

7    request); *see also In re SunPower Sec. Litig.*, No. 09-cv-5473 RS (JSC), 2012 WL 4343245, at *7

8    (N.D. Cal. Sept. 20, 2012) (ordering the parties to meet and confer to narrow the scope of the

9    discovery requests and rely on the magistrate judge "[i]f the parties are unable to resolve these

10    matters through the meet and confer process").

11          Waymo argues there is some freestanding obligation to search for and produce all relevant

12    documents regardless of the agreed narrowing of a request, and negotiated search terms and

13    custodians.  Not so.  The suggestion that a party has to produce relevant, but non-responsive

14    documents—whether or not in hard copy—just because someone at the company knows about

15    them is entirely unsupported and purposefully ignores the rules and practice of civil discovery.  It

16    would negate the need for reasonably particular document requests, agreed-upon narrowing of

17    improper requests, agreed-upon search terms and custodians, and violate the principles of

18    proportionality governing discovery.  *See Taylor v. O'Hanneson*, No. 1:11-cv-00538-LJO-SAB,

19    2014 WL 2696585, at *3 (E.D. Cal. June 13, 2014) (denying plaintiff's motion to compel, finding

20    the plaintiff cannot subsequently seek a document that "was not requested with 'reasonable

21    particularity'" and "never requested prior in the course of discovery."); *see generally* The Sedona

22    Conference, *The Case for Cooperation*, 10 Sedona Conf. J. 339, 355 (2009) ("[C]ourts have held

23    that counsel must confer and engage in good faith, meaningful discussions with the opposing

24    party on discovery issues" such as "negotiat[ing] reasonable and workable search protocols" and

25    "cooperating with opposing counsel to create a mutually agreeable protocol."); *id* at 352

26    ("Cooperation *does*, however, require communicating with opposing counsel about the basis for

27    the objection and making a good faith effort to narrow discovery and achieve a mutually

28    agreeable solution.") (emphasis in original).

UBER'S RESPONSE TO WAYMO'S SUBMISSION TO SPECIAL MASTER COOPER RE THE JACOBS DOCUMENTS
Case No. 3:17-cv-00939-WHA
sf-3847221

9

1  Waymo has not cited a single case where any court has held that a party has an obligation

2  to produce additional records in response to an overbroad request that was not "reasonably

3  particular," where the parties then conferred in good faith, agreed on search terms and custodians,

4  and then produced documents that "hit" on those search terms for the agreed custodians.  Waymo

5  is asking this Court to make new law unsupported by the rules of discovery, and that would not be

6  fair to Uber.

7  **E.  The Jacobs Documents Were Not Responsive to the RFPs as Narrowed Pursuant to Rule 34**

8
9  Out of the hundreds of document requests that it served in this case, Waymo raises four—

  only four—that it claims requested the documents at issue.  We now show that the Jacobs

10  documents are not responsive to any of the four requests.

11
  **1.  RFP No. 29:  "All DOCUMENTS and COMMUNICATIONS**
12  **REGARDING negotiations over UBER's acquisition of**
  **OTTOMOTTO."**
13

14  This request was patently overbroad, and Uber initially objected to any production.  As a

15  result of subsequent meet and confers, Uber agreed to produce non-privileged, responsive

16  documents pertaining to the negotiation of the consideration for the Uber-Otto transaction, the IP

17  acquired, and the satisfaction of certain closing conditions.  (Rivera Decl. Ex. E, 7/7/17 S. Rivera

18  email.)  Uber thus was not obligated to produce every shred of paper that conceivably could have

19  some relationship to the deal.

20  The Jacobs Letter, which contained Mr. Jacobs's speculation about whether Mr. Russo's

21  alleged SSG Presentation concerned the Otto deal, is not responsive, even if it were in scope.  It

22  does not reflect negotiations, and certainly not negotiation of the consideration for the Uber-Otto

23  transaction, the IP acquired, and the satisfaction of certain closing conditions.

24  **2.  RFP No. 72: All DOCUMENTS REGARDING**
  **DEFENDANTS' policies regarding employees' use of personal**
25  **computers or other devices while working at or for**
  **DEFENDANTS.**
26

27  As Waymo admits at footnote 3, during a July 5, 2017 meet-and-confer, in response to

28  Uber's objections about the overbreadth of this request, Waymo agreed to limit the scope of this

UBER'S RESPONSE TO WAYMO'S SUBMISSION TO SPECIAL MASTER COOPER RE THE JACOBS DOCUMENTS
Case No. 3:17-cv-00939-WHA
sf-3847221

10

1    request to Levandowski's use of a personal computer and other devices while working at or for

2    Uber or Ottomotto.  (*See* Rivera Decl. ¶¶ 8, 15; Brimer Decl. Ex. D at 2.)  That was all Uber was

3    obligated to search for and produce.  *Id*.  The Jacobs Letter does not concern Levandowski's use

4    of a personal computer while working at or for Uber/Ottomotto.

5          **3.        RFP 73:  All DOCUMENTS AND COMMUNICATIONS**
                        **REGARDING the MISAPPROPRIATED MATERIALS,**
6                       **INCLUDING but not limited to (i) DOCUMENTS containing**
                        **any information derived from the MISAPPROPRIATED**
7                       **MATERIALS, (ii) any electronic media that contains or**
                        **contained the MISAPPROPRIATED MATERIALS, and (iii)**
8                       **any DOCUMENTS REGARDING any meetings or discussions**
                        **REGARDING the substance of the MISAPPROPRIATED**
9                       **MATERIALS outside of WAYMO.**

10          "MISAPPROPRIATED MATERIALS" was defined as "all GOOGLE and WAYMO

11   DOCUMENTS and materials, whether digital or physical, and regardless of the manner stored,

12   *for which any current or former employee of DEFENDANTS retained possession, without*

13   *authorization of either GOOGLE or WAYMO, after the employee ended his or her employment*

14   *with GOOGLE/WAYMO*."  (emphasis added).  Waymo concedes that the Jacobs documents

15   allege that Uber's MA team misappropriated trade secrets, not that former Google or Waymo

16   employees retained materials after the end of their employment.  The Jacobs documents are

17   therefore not responsive to this request.

18          **4.        RFP 91: All DOCUMENTS AND COMMUNICATIONS**
                        **REGARDING any of LEVANDOWSKI's past and present**
19                      **"Authorized Devices" (as that term is defined in**
                        **UBER00006444, Section 7), INCLUDING (without limitation)**
20                      **any request for approval in connection with Section 7.2 or any**
                        **de-authorization (whether contemplated or effectuated) under**
21                      **Section 7.3.**

22          The Jacobs documents make no mention of Mr. Levandowski's "Authorized Devices" and

23   thus are not responsive to this request.  Waymo does not argue otherwise.  Waymo states only,

24   "To the extent Levandowski used non-attributable devices, both documents would be responsive

25   to this request."  (Rivera Decl. Ex. L, 12/5/17 Waymo's Submission to SM Cooper at 5.)  But

26   there never has been any evidence that Levandowski used non-attributable devices, and Waymo

27   cannot point to any such evidence.

28

1

2

**5.**      **The Jacobs Documents Were Not Covered by the Agreed-Upon Search Terms**

3

Not only were the Jacobs documents not responsive to the RFPs, but they also were not

4

covered by the agreed-upon search terms—which Waymo concedes.  It has been found that using

5

search terms are sufficient and "proportional to the needs of this case" where the "search terms

6

should adequately capture anything that is relevant to this case and responsive to the plaintiff's

7

substantive request."  *T.D.P. v. City of Oakland*, No. 16-cv-04132-LB, 2017 WL 3026925, at \*5

8

(N.D. Cal. July 17, 2017).  "Keyword searching is generally accepted as a method of identifying

9

responsive documents and narrowing the data-set to a manageable volume."  *1-9 MB Practice*

10

*Guide: CA E-Discovery & Evidence* 9.33 (2017); *Sedona Conference Principles, Third Edition:*

11

*Best Practices, Recommendations & Principles for Addressing Electronic Document Production*

12

at 164 (2017) ("A responding party may satisfy its good faith obligations to preserve and produce

13

relevant electronically stored information by using technology and processes, such as sampling,

14

searching, or the use of selection criteria."); *id.* at 165 ("[T]he use of search tools does not

15

guarantee that all relevant ESI will be identified in large data collections; but that is not, and

16

never has been, the standard—reasonableness and proportionality is the standard."); *see also*

17

*Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013) ("while parties must

18

impose a reasonable construction on discovery requests and conduct a reasonable search when

19

responding to the requests, the Federal Rules do not demand perfection," rather, "[t]he discovery

20

process relies upon the good faith and professional obligations of counsel to reasonably and

21

diligently search for and produce responsive documents").

22

The cases Waymo cites do not support the proposition that it is unreasonable for parties to

23

rely on keyword searches for production of electronic stored information (ESI).  For example,

24

Waymo misrepresents a statement from plaintiff's proposed protocol regarding ESI in *Federal*

25

*Deposit Insurance Corp. v. Baldini*, No. 1:12-cv-7050, 2014 WL 1302479 (S.D. W.Va. March 28,

26

2014) as a legal proposition made by the Court.  *See id.* at \*2.  In denying plaintiff's motion for a

27

protective order regarding discovery of ESI, the court emphasized that producing ESI is an

28

iterative process that requires input from both parties to fashion search terms which "when

UBER'S RESPONSE TO WAYMO'S SUBMISSION TO SPECIAL MASTER COOPER RE THE JACOBS DOCUMENTS
Case No. 3:17-cv-00939-WHA
sf-3847221

12

applied to the ESI will yield documents and information responsive to [defendant's] request and exclude non-responsive documents and information." *See id.* at *11.

Waymo cites *Moore v. Publicis Groupe & MSL Group*, 287 F.R.D. 182, 190-91 (S.D.N.Y. 2012) for the proposition that the court noted limitations of key word searches. The court did not find that it was unreasonable to rely on keyword searches; rather, it noted that e-discovery requires "cooperation" between counsel. *Id.* at 191-92. Further, *Arthur v. Atkinson Freight Lines Corp.,* 164 F.R.D. 19 (S.D.N.Y. 1995) is inapposite. The cited proposition was offered by the Court in response to various claims made by the plaintiff, including that the defendant was under a duty to make repeated requests for updated records and that "because he was unaware of the existence of a medical report in his doctor's possession, he is therefore free to withhold it from his adversary." *Id.* at 20. The Court determined that these and other arguments made by the plaintiff "border on the frivolous." *Id.* Waymo also excerpts a Sedona Conference publication that relates to situations in which a party refuses to cooperate with opposing counsel. The Sedona Conference, *The Case for Cooperation*, 10 Sedona Conf. J. 339, 344 (2009). This is clearly irrelevant since the parties *in this case* negotiated at length and settled upon a set of agreed upon search terms for both parties to use when searching and producing documents.

Waymo also has misstated the facts with respect to the parties' lengthy meet and confers regarding the search terms and custodians. Waymo states it did not agree that Uber could limit its searching to the agreed-upon search terms and custodians, and that Waymo did not limit searches. Both statements are at best misleading and at worst outright false.

- During a July 1 meet and confer, the Special Master directed, and the parties agreed, to exchange the search terms, date ranges, custodians, and non-custodial sources that the parties were utilizing to search for relevant documents that were responsive to the parties' respective discovery requests. (*See* Rivera Decl. ¶¶ 10-13; Pritt Decl. ¶ 3 and Ex. B.) During this meet and confer, Waymo counsel Jeff Nardinelli stated that it was Waymo's position that "there should be a presumption that if we use the agreed-upon search terms and custodians, then the production is sufficient." (*See* Brimer Decl. ¶ 2; Brimer Decl. Ex. A.)

- The negotiations over search terms and custodians were lengthy, lasting throughout July 2017 and early August 2017. For example, on July 6th, Uber counsel Max Pritt emailed Waymo, identifying "initial concerns and deficiencies" in Waymo's proposed search terms and custodians.  (*See* Pritt Decl. ¶ 5; Rivera Decl. Ex. M.)  On July 8, Waymo counsel Mr. Nardinelli emailed Uber, stating that "[t]he list Uber circulated last night is a useful starting point, but also makes clear that any exchange of search terms must include reasonable negotiation (which is anticipated in Waymo's proposed ESI order); some of Uber's suggested terms are much more reasonable than others."  (*See* Pritt Decl. ¶ 7; Rivera Decl. Ex. N.)  For example, on July 20, Uber counsel Mr. Pritt emailed Waymo with Uber's responses to Waymo's "proposed search terms and custodians" to continue Uber's efforts to attempt to reach agreement on the scope of discovery.  (*See* Pritt Decl. ¶ 8.)

- Throughout the meet-and-confer process, both Waymo Counsel Ms. Roberts and Mr. Nardinelli repeated that they saw the negotiated search terms and custodians as determining the "boundaries for electronic searches."  For example, during a July 7 meet and confer, Ms. Roberts stated it was Waymo's position to enter "an agreement on the number of custodians and the number of search terms so that we don't have this ongoing litigation about ESI" and "come to an agreement limiting what one side can demand of the other."  (*See* Pritt Decl. ¶ 6; Brimer Decl. ¶ 4; Brimer Decl. Ex. C; *see also* Pritt Decl. ¶ 4; Rivera Decl. Ex. P ("we want an exchange of search terms to reduce future disputes, not create more of them.  The best way to accomplish this is by agreeing to bounds of ESI discovery."); Pritt Decl. ¶ 7; Rivera Decl. Ex. N ("Waymo hereby repeats its offer to agree to a set of search terms sufficient to meet both parties' needs….We request that Defendants either agree to the boundaries for electronic searches therein, or make a counter-proposal.").)

- Waymo also took the position that their obligation to search custodial sources did

UBER'S RESPONSE TO WAYMO'S SUBMISSION TO SPECIAL MASTER COOPER RE THE JACOBS DOCUMENTS
Case No. 3:17-cv-00939-WHA
sf-3847221

14

1    not extend beyond the agreed-upon search terms and custodians in emails.  (*See*

2    Pritt Decl. ¶ 13; Rivera Decl. Ex. O ("as an initial matter, for many of the issues

3    you list below, it seems sufficient to produce documents located by running the

4    agreed-upon search terms over the agreed-upon custodians and producing

5    responsive documents.  Is Uber asking that Waymo run additional search terms

6    over additional custodians in addition to the parties' agreement and Judge Corley's

7    order?  (Dkt. 1094).  If so please provide your basis for doing so in light of the

8    parties' extensive negotiations of terms.").)

9    • Special Master Cooper also repeated his position that the purpose of these

10    negotiations over search terms and custodians is "to get to the best possible search

11    protocol."  (*See* Pritt Decl. ¶¶ 10-11; Cortina Decl. Ex. A.)  In fact, Special Master

12    Cooper pointed out that Uber's proposal to apply "agreed-upon search terms" for

13    responsive documents in Anthony Levandowski's email "sounds like a reasonable

14    request" compared with Waymo's request that Uber search all of Anthony

15    Levandowski's emails without applying search terms.  (*See* Pritt Decl. ¶ 11;

16    Cortina Decl. Ex. A.)

17    Waymo suggests that Jacobs's resignation email and his attorneys' Rule 408 letter should

18    have been located by some other search Uber conducted, but does not explain how despite its

19    burden to do so.  On July 3, the parties exchanged the search terms, custodians, and non-custodial

20    sources they were searching in order to assist with negotiating a complete set of search terms and

21    custodians.  (Rivera Decl. ¶¶ 11-13.)  Waymo never took issue with the non-custodial sources

22    Uber identified and searched.

23    **F.    Uber Was Not Obligated to Produce the Jacobs Documents Because
       They Might Generally Be Relevant**

24

25    Waymo also argues that Uber had an obligation to produce because the Jacobs Letter was

26    relevant enough to share with the acting United States Attorney for the Northern District of California

27    on June 27 (*id.* at 27:20-28:3).  But, as Judge Alsup noted, it is not the law that a party has an

28    obligation to produce any document that might be used by an adversary.  (*See* 12/4/2017 H'rg Tr.

1   at 32:20-33:9 ("MR. VERHOEVEN:…The notion that somebody couldn't figure out this was

2   relevant and they had a duty under the -- under the Rules of Civil Procedure to produce

3   documents they know are relevant is ludicrous.  THE COURT: No, no, no, no. You have to ask

4   for documents.  MR. VERHOEVEN: No. You have a duty to --  THE COURT: ***That's only for***

5   ***disclosure of documents you're going to use.  The disclosure rules require that if you're going***

6   ***to use the document, you must disclose it.  But it does not say that you have to disclose***

7   ***everything that is relevant***.".)  As Judge Alsup correctly noted, there is no requirement that a

8   party produce non-responsive documents.  *See, e.g.*, *Infor Glob. Sols. (Michigan), Inc. v. St. Paul*

9   *Fire & Marine Ins. Co.*, No. CV 08-02621 JW (PVT), 2009 WL 1421579, at *3 (N.D. Cal. May

10  15, 2009) (requiring only the production of documents responsive to opposing party's discovery

11  requests) and *Choudhuri v. Wells Fargo Bank, N.A.,* No. 15-cv-03608-VC (KAW), 2017 WL

12  4004872, at *5 (N.D. Cal. Sept. 12, 2017) (requiring only the production of documents responsive

13  to opposing party's discovery requests); *see also Reinsdorf*, 296 F.R.D. at 615 ("while parties

14  must impose a reasonable construction on discovery requests and conduct a reasonable search

15  when responding to the requests, the Federal Rules do not demand perfection," rather, "[t]he

16  discovery process relies upon the good faith and professional obligations of counsel to reasonably

17  and diligently search for and produce responsive documents.").  Moreover, the Letter was provided

18  in order to prevent Mr. Jacobs' extortion, not because of relevance to this litigation.  (*See* Rivera Decl.

19  Ex. J, 6/22/2017 Email from A. Padilla to J. Hazelbaker and M. Kallman ("We plan to self-report to

20  the government to get ahead of Ric and take away his ability to extort us any more"),

21  UBER00330793.)

22       Congress has specified in Rule 26(a)(ii) what documents must be unilaterally produced,

23  and they are only those that a party "may use to support its claims or defenses."  Thus, a party

24  cannot use a document against an adversary at trial that the party failed to disclose.  However,

25  Rule 26 very pointedly does not require the production of any documents other than those that a

26  party plans to use "to support" its claims.  Obviously, Uber is not seeking to use any of the

27  documents at issue to support its claims.  If Waymo believes that this rule should be changed, that

28  is an issue they need to address with Congress, not with the Court.

1

2

### G.      Production of the Jacobs Documents Was Not Mandated by Representations by Uber or Its Counsel

3      Waymo does not cite any legal authority for the proposition that production of the Jacobs

4  documents was mandated by something that Uber's lawyers or witnesses said.  Waymo cites to a

5  statement by Uber's counsel that evidence will be presented to the jury that there were extensive

6  searches and the downloaded files were not located at Uber.  There is no question that such a

7  statement is true.  Those searches included 13 inspections by Waymo.

8      Waymo then cites to deposition testimony from two witnesses—former CEO Travis

9  Kalanick and Angela Padilla.  In the excerpt cited by Waymo, Mr. Kalanick testified about what

10  he told Anthony Levandowski (45:18-22) and that Uber "started" looking into every server

11  forensically (51:13-19).  (Rivera Decl. Ex. L, 12/5/17 Waymo's Submission to SM Cooper at 15.)

12  There is nothing in the Jacobs documents to remotely impeach that testimony.  Similarly, Ms.

13  Padilla's testimony refers to Uber's efforts to comply with the Court's Order on Waymo's motion

14  for injunction.  That she testified that Uber looked "everywhere" for the downloaded materials

15  does not mean that Uber has to come forward with evidence of every place Uber did not look.

16      ### H.      The Jacobs Documents Were Not Intentionally Withheld

17      Uber did not intentionally withhold the Jacobs documents.  Uber's outside defense

18  counsel did not know about the Jacobs documents until the Court provided the letter from the US

19  Attorney.  Although members of the litigation team received the resignation email, they did not

20  get copies of the 37-page letter.  (12/4/2017 H'rg Tr. at 47:2-15; 48:10-15.)[2]  *See Hiramanek v.*

21  *Clark*, No. 13-CVcv-00228-RMW, 2016 WL 217255, at *7 (N.D. Cal. Jan. 19, 2016) (finding

22  "[t]he more logical conclusion" for the reason that a party did not produce documents in response

23  to discovery requests was that "[the party] searched for but did not find anything responsive and

24  discoverable.").

25  _____

26      [2] The Boies firm also was unaware of the Jacobs documents.  The earliest entries on the
privilege log created by Wilmer Hale regarding the first communications with outside counsel do
not attach or reference the 4/14/17 Jacobs Resignation Email, the 4/19/17 letter, the 5/5/17 Jacobs

27  Letter, or the Jacobs Settlement Agreement.   (Rivera Decl. Ex. R, 12/8/17 Email from K. Dunn
re Waymo v. Uber; Boies Schiller log; Ex. Q, 12/7/17 Email from L. Randall re Waymo v. Uber –

28  Log of First Communications.)

1    Indeed, there was nothing to hide.  Jacobs' allegations have no merit, as has been

2    demonstrated by the testimony thus far.  And despite painting an ominous picture about ephemeral

3    messaging, Waymo now concedes that three of its chat systems—Google Talk, Google Hangouts and

4    ████████████—are set to be ephemeral (or "Off the Record") by default for business

5    communications.  (*See* Dkt. 2336-3 at 5-6.)  Google decided in September 2008 that "it would no

6    longer retain instant message chat records as a standard business practice."  (*See id.* at 5.)  In other

7    words, Google admits that it has been Google's (and Waymo's) practice for almost a decade to

8    destroy their employees' business "chat" communications and not produce them in litigation.  And

9    Waymo acknowledges that ephemeral messaging is used "much like in-person conversations and

10   telephone calls were used before the internet."  (*See id.*)  Use of non-attributable computers for

11   competitive research and security purposes is likewise standard business practice and has nothing to

12   do with Uber's LiDAR work or the trade secrets at issue.  Uber simply had no reason to intentionally

13   withhold the Jacobs documents.  Mr. Jacobs' testimony confirmed that there is nothing to hide.

14        **III.    CONCLUSION**

15        The Court should not forget the speed and scope of the document productions that

16   occurred in this case.  Uber was asked to, and did, search for and produce literally hundreds of

17   thousands of pages of documents in record time.  The normal checks, double checks, and even

18   triple checks that occur with most document productions could not occur in this case because of

19   the break neck speed and broad scope of Waymo's requests.  Both the Court and the Special

20   Master made it clear to Waymo that they would not get everything they might want with the fast

21   track schedule the parties were working on.  In this fast pass production, it would not be

22   surprising that something may fall through the cracks.  Fortunately, that is not even what

23   happened here.  Here, the parties agreed on search terms and custodians for the production of

24   documents and the documents now at issue were not hit.

25        In closing, we urge the Special Master to take a close and hard look at the four document

26   requests at issue—including the defined terms—and ask yourself this question:  do those requests

27   identify the documents with "reasonable particularity" as required by Congress?  We believe

28   strongly that Judge Alsup would answer that question with an emphatic "no," and that is what led

1  to the compromise of using search terms and custodians.  And the parties agree that those terms

2  and the agreed upon limitations did not "hit" on any of the three documents at issue.  That is the

3  simple reason why the documents were not produced.  It is critical that we communicate this fact,

4  which is why we emphasize it here.

5

6  Dated:  December 8, 2017                    MORRISON & FOERSTER LLP

7

8                                             By:  _____ */s/ Arturo J. González* _____

9                                                  ARTURO J. GONZÁLEZ

10                                                 Attorneys for Defendants
                                                   UBER TECHNOLOGIES, INC.

11                                                 and OTTOMOTTO LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28