## quinn emanuel trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

WRITER'S DIRECT DIAL NO.
**(415) 875-6301**

WRITER'S EMAIL ADDRESS
**charlesverhoeven@quinnemanuel.com**

August 9, 2017

<u>VIA ECF</u>

Honorable Jacqueline Scott Corley
U.S. District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Waymo LLC v. Uber Technologies, Inc. et al*., Case No. 3:17-cv-00939

Dear Judge Corley:

Waymo respectfully submits this letter brief in response to Defendants motion to compel Waymo to answer interrogatories exceeding the number agreed to by the parties (Dkt. 1127).

Respectfully submitted,

<u>/s/ Charles K. Verhoeven</u>

Charles K. Verhoeven

cc:   All Counsel of Record
      Special Master John Cooper

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

On June 7, 2017, the Special Master conducted a meet and confer during which he and the parties discussed the number of interrogatories to which each side would be entitled. On that call, the Special Master decided that "each party" would be limited to 25 interrogatories. Waymo's understanding of "each party" was that Uber/Otto were being considered a single party, and Otto Trucking a different party. With that understanding, Waymo believed it would be required to answer 50 interrogatories total (25 from Uber/Otto and 25 from Otto Trucking). Uber and Ottomotto evidently had the same understanding, serving all subsequent interrogatories as "Uber and Ottomotto" where previously "Uber" had served two sets and "Ottomotto" none.

On June 8, 2017 (the very next day), Waymo sent a follow up email asking for "clarification from Mr. Cooper whether his conclusion is that Waymo has 25 interrogatories for Otto Trucking and 25 for Uber/Otto." In so doing, counsel for Waymo memorialized in no uncertain terms its understanding that Defendants would be limited to 50 interrogatories total. (Ex. 7 at 1 ("We request clarification from Mr. Cooper whether his conclusion is that Waymo has 25 interrogatories for Otto Trucking and 25 for Uber/Otto (*i.e.*, **50 total, the same number that defendants will be serving on Waymo**), or whether his conclusion is that Waymo has 25 interrogatories total to serve, **but has to respond to 50 total from Defendants**.")). In other words, at no time did counsel for Waymo even raise the issue about how many interrogatories Defendants were entitled to serve. Rather, counsel for Waymo and everyone else on the June 7 call understood that the Special Master had decided that Defendants were limited to 50 interrogatories total. The only open issue was how many interrogatories **Waymo** would be entitled to serve on Defendants. And Waymo's position on this point was entirely consistent with the Special Master's decision that Uber/Otto should be treated as a single party for purposes of discovery, that is, Waymo proposed that it be allowed to serve 25 interrogatories on Uber/Otto and 25 on Otto Trucking, not 25 on each of Uber, Otto and Otto Trucking. Neither the Special Master nor opposing counsel responded to Waymo's June 8 email.

On June 21, 2017, counsel for Waymo followed up on this issue again, noting that they had previously "requested clarification from Mr. Cooper whether his conclusion about the number of interrogatories is that Waymo has 25 interrogatories for Otto Trucking and 25 for Uber/Otto (*i.e.*, **50 total, the same number that defendants will be serving on Waymo**." (Ex. 8.) Counsel for Waymo also noted that "[h]aving not received a response, we assume that there is no objection to the above," and that "[i]f there is, please promptly let us know so that we can plan our discovery accordingly." Neither the Special Master nor opposing counsel responded to the June 21 email.

Counsel for Uber/Ottomotto now allege that during a June 22 meet and confer, the Special Master ruled that "Waymo could serve 25 interrogatories on each of Uber, Ottomotto, and Otto Trucking, and vice versa." Neither counsel for Waymo nor the Special Master recalls such a ruling. (Judah Decl. ¶ 2.) Indeed, on a subsequent August 2 meet and confer, the Special Master confirmed that, like counsel for Waymo, he had not considered that Uber and Otto would be treated as separate parties for purposes of discovery. (Roberts Decl. ¶ 3.)

The Special Master and Waymo's understanding is entirely reasonable and consistent with both case law and legal commentary. *See Vinton v. Adam Aircraft Indus., Inc.*, 232 F.R.D. 650, 664 (D. Colo. 2005) ("[C]ommentators on Rule 33 have expressed a belief that 'in some instances nominally separate parties should be considered one party for purposes of the 25–interrogatory limitation.'"); 8B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2168.1

1

(3d ed.) ("Consider, for example, a situation in which ten people injured in a bus crash sue the bus company in a single suit represented by the same lawyer.  Should they be considered one party or ten for purposes of the interrogatory limitation?  The best result would seem to be to recognize that in some instances nominally separate parties should be considered one party for purposes of the interrogatory limitation"); *Lanard Toys Ltd. v. Dolgencorp LLC Etc*, No. 3:15-CV-849-J-34PDB, 2016 WL 7031327, at *1 (M.D. Fla. Feb. 26, 2016) (citing Wright and Miller and holding that "[g]iven a court's discretion to limit discovery that is unduly burdensome, a court may treat parties as one if they act together and the circumstances do not justify 25 interrogatories each."); *see also Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006) (describing Wright and Miller as the "more sensible approach").  Even Uber/Otto's cited authority, *21X Capital Ltd. v. Werra*, recognizes that test of "nominal separation" and allowed additional discovery only because the parties were **more than** "nominally separate."  No. C06-04135 JW (HRL), 2007 WL 2852367, at *1 (N.D. Cal. Oct. 2, 2007).

Here, the opposite is true.  Otto co-founder, Lior Ron, confirmed that Otto does not have a management team separate from Uber, has no separate structure from Uber, and that all Otto employees are now Uber employees.  Ex. 1 (Ron dep.) at 85:11-86:7.  Other of Defendants' employees confirmed the same.  *See also* Ex. 2 (Qi dep.) at 29:17-20 ("Q:  Okay. So just -- just to be clear, Ottomotto was acquired by Uber, right, so those employees are Uber employees now, correct?  A:  Yes."); Ex. 3 (Poetzscher dep.) at 135:12-13 ("Q:  Why not just hire them as employees of Uber?  A:  That's essentially what we did; right."); *id*. at 336:3-12 ("And when I say 'employee of Otto,' he's now an employee of Uber, of course, but he was an employee of Otto.").  Further, following Waymo's June 8 email clarifying that Uber/Otto would be able to serve a combined 25 interrogatories, Uber/Otto served all subsequent interrogatories as "Uber and Ottomotto"; prior to the June 8 email, "Uber" had served two sets of interrogatories and "Ottomotto" had served none.  *Compare, e.g.,* Ex. 4 (served May 17) *with* Ex. 6 (served June 15).  Uber/Otto has also responded to discovery as a single entity.  *See, e.g.*, Ex. 5 at 2 ("Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively "Uber") object and respond to Plaintiff Waymo LLC's First Set of Common Interrogatories…").  In fact, in the context of negotiating 30(b)(6) deposition logistics, Uber/Otto demanded that a single 30(b)(6) notice be served on the combined entity.  (Roberts Decl. ¶ 2.)  That Waymo identified certain of those topics as potentially requiring testimony from employees that originated from Otto, does not alter that analysis.  Likewise, that Uber has opted to maintain the corporate formality of a Delaware LLC does not defeat the practical reality that Otto is now only "nominally separate" from Uber and therefore should be treated as a single entity for purposes of Rule 33.

Uber/Otto's argument that it will be prejudiced if not allowed to serve 25 extra interrogatories that go to "the heart of the case" rings hollow.  Uber/Otto has already served multiple interrogatories seeking, for example, Waymo's evidence of trade secret misappropriation (Ex. 4, at rogs 1, 2, 10) and valuation of its technology (Exs. 4 and 6, at rogs 3, 4, 6, 13).  Nor does Waymo's direction of certain interrogatories to Uber and others to Otto operate as a concession that Uber/Otto may double the number of interrogatories otherwise allowed.

For all of these reasons, Waymo respectfully requests the Court to deny Uber/Otto's motion to compel.  To the extent the Court is inclined to grant Uber/Otto's motion, Waymo respectfully requests that it be allowed to serve 25 additional interrogatories on Uber/Otto.