# EXHIBIT 13

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David Perlson (Cal. Bar No. 209502)
davidperlson@quinnemanuel.com
Melissa J. Baily (Cal. Bar No. 237649)
melissabaily@quinnemanuel.com
John Neukom (Cal. Bar No. 275887)
johnneukom@quinnemanuel.com
Jordan R. Jaffe (Cal. Bar No. 254886)
jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Attorneys for Plaintiff WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC<br><br>        Plaintiff,<br><br>    vs.<br><br>UBER TECHNOLOGIES, INC.; OTTOMOTTO, LLC; OTTO TRUCKING LLC<br><br>        Defendants. | Case No. 3:17-cv-00939-JCS<br><br>**PLAINTIFF WAYMO LLC'S FIRST SET EXPEDITED INTERROGATORIES PURSUANT TO PARAGRAPH SIX OF THE MAY 11, 2017 PRELIMINARY INJUNCTION ORDER (NOS. 1-9)**<br><br>Honorable William H. Alsup |

**PLAINTIFF'S FIRST SET OF EXPEDITED INTERROGATORIES PURSUANT TO PARAGRAPH SIX OF THE MAY 11, 2015 PRELIMINARY INJUNCTION ORDER (DKT. 433)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Court's order granting further expedited discovery (Dkt. 433 at 25 ¶ 6), Plaintiff Waymo LLC ("Waymo") requests that Defendants Uber Technologies, Inc. ("Uber"), Ottomotto, LLC ("Ottomotto"), and Otto Trucking LLC ("Otto Trucking") (collectively "Defendants") answer under oath the following interrogatories within fourteen (14) calendar days of service.  Defendants are subject to

a duty to timely supplement all responses to these interrogatories in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

**DEFINITIONS**

1. "WAYMO" means Waymo LLC and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and WAYMO's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by WAYMO, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by WAYMO.

2. "GOOGLE" means Google Inc. and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and GOOGLE's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by GOOGLE, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by GOOGLE.

3. "UBER" means Uber Technologies, Inc. and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and UBER's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by UBER, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by UBER.

4. "OTTOMOTTO" means Ottomotto LLC and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and OTTOMOTTO's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities,

whether foreign or domestic, that are owned or controlled by OTTOMOTTO, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by OTTOMOTTO.  For the avoidance of doubt, OTTOMOTTO includes all former names under which OTTOMOTTO operated, including without limitation 280 Systems, Inc., 280 Systems, LLC, and Ottomotto, Inc.

5. "OTTO TRUCKING" means Otto Trucking LLC and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and OTTO TRUCKING's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by OTTO TRUCKING, and all predecessors and successors in interest to such entities, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by OTTO TRUCKING.

6. "DEFENDANTS" means UBER, OTTOMOTTO, and OTTO TRUCKING.

7. "ODIN WAVE" means Odin Wave, LLC and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and ODIN WAVE's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by ODIN WAVE, and all predecessors and successors in interest, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by ODIN WAVE.

8. "TYTO" means Tyto Lidar LLC, and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and TYTO's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by TYTO, and all predecessors and successors in interest, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by TYTO.

9. "LEVANDOWSKI" means Anthony Levandowski.

10. "GORILLA CIRCUITS" means Gorilla Circuits, and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and GORILLA CIRCUITS's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by GORILLA CIRCUITS, and all predecessors and successors in interest, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by GORILLA CIRCUITS.

11. "POUCH HOLDINGS" means Pouch Holdings LLC, and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and POUCH HOLDING's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by POUCH HOLDINGS, and all predecessors and successors in interest, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by POUCH HOLDINGS.

12. "DOGWOOD LEASING" means Dogwood Leasing, LLC, and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and DOGWOOD LEASING's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by DOGWOOD LEASING, and all predecessors and successors in interest, and any entity owned in whole or in part by, affiliated with, or controlled in whole or in part by DOGWOOD LEASING.

13. "APPARATE INTERNATIONAL" means Apparate International C.V., and its officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, and APPARATE INTERNATIONAL's affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by APPARATE INTERNATIONAL, and all predecessors and

1 successors in interest, and any entity owned in whole or in part by, affiliated with, or controlled in
2 whole or in part by APPARATE INTERNATIONAL.
3     14.    "STROZ" means Stroz Friedberg, LLC, and its officers, directors, current and
4 former employees, counsel, agents, consultants, representatives, and any other persons acting on
5 behalf of any of the foregoing, and STROZ's affiliates, parents, divisions, joint ventures,
6 licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities,
7 whether foreign or domestic, that are owned or controlled by STROZ, and all predecessors and
8 successors in interest, and any entity owned in whole or in part by, affiliated with, or controlled in
9 whole or in part by STROZ.
10     15.    "KSHIRSAGAR" means Sameer Kshirsagar.
11     16.    "RADUTA" means Radu Raduta.
12     17.    "MISAPPROPRIATED MATERIALS" refers to all GOOGLE and WAYMO
13 DOCUMENTS and materials, whether digital or physical, and regardless of the manner stored, for
14 which any current or former employee of DEFENDANTS retained possession, without
15 authorization of either GOOGLE or WAYMO, after the employee ended his or her employment
16 with GOOGLE/WAYMO. Without limitation, MISAPPROPRIATED MATERIALS includes at
17 least: (i) each of the more than 14,000 digital files downloaded by LEVANDOWSKI on or about
18 December 11, 2015 from the SVN repository; (ii) each file copied by LEVANDOWSKI from his
19 GOOGLE laptop to an RDF5 USB 3.0 card reader on or about December 14, 2015; (iii) each of
20 the five files titled: ████████████████████████████████████████
21 ████████████████████████████████████ that were exported by
22 LEVANDOWSKI from Google Drive to a personal device on or about January 4, 2016; (iv) the
23 file titled: Chauffer TL weekly updates – Q4 2015 exported by LEVANDOWSKI from Google
24 Drive to a personal device on or about January 11, 2016; (v) the file titled ████████
25 ████████ that was exported by LEVANDOWSKI from Google Drive to a personal device on or
26 about November 19, 2016; (vi) the file titled ██████████████████████ that was exported
27 by LEVANDOWSKI from Google Drive to a personal device on or about November 4, 2016;
28 each of the five files titled: ████████████████

1   ███████████████████████████████████████████████████████████████
2   ████ that were exported by KSHIRSAGAR from Google Drive in or around June and July
3   2016; (vii) each of the three files titled: ████████████████████████████
4   ████████████ and automation vendors that were exported by RADUTA from Google Drive on
5   or around July 28, 2016.

6        18.    "LiDAR" means Light Detection and Ranging.

7        19.    "OTTOMOTTO MERGER AGREEMENT" is the DOCUMENT produced at
8   UBER00016453 and all DOCUMENTS appurtenant to that agreement including the
9   OTTOMOTTO DISCLOSURE SCHEDULES produced at UBER00016983.

10       20.    "OTTO TRUCKING MERGER AGREEMENT" is the DOCUMENT produced at
11  UBER00016757 and all DOCUMENTS appurtenant to that agreement including the OTTO
12  TRUCKING DISCLOSURE SCHEDULES produced at UBER00016974.

13       21.    "INDEMNITY CONSTRUCT" is the DOCUMENT produced at UBER00016432.

14       22.    ACQUISITION DOCUMENTS are the OTTOMOTTO MERGER AGREEMENT,
15  the OTTO TRUCKING MERGER AGREEMENT, the INDEMNITY CONSTRUCT, and other
16  DOCUMENTS REGARDING UBER'S acquisition of OTTOMOTTO and OTTO TRUCKING.

17       23.    "DUE DILIGENCE REPORT" is the due diligence report prepared by STROZ in
18  connection with UBER's acquisition of OTTO and OTTO TRUCKING, and all DOCUMENTS or
19  exhibits attached thereto.

20       24.    "DOCUMENTS" shall INCLUDE, without limitation, all written, graphic or
21  otherwise recorded material, INCLUDING without limitation, electronically stored information
22  regardless of the form of storage medium, microfilms or other film records or impressions, tape
23  recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films,
24  recordings, memoranda, books, records, accounts, communications, letters, telegrams,
25  correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office
26  memoranda or written communications of any nature, recordings of conversations either in
27  writings or upon any mechanical or electrical recording devices, INCLUDING e-mail, notes,
28  papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings,

time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, INCLUDING by the addition of handwritten notations or other written or printed matter of any nature, from the original.  The foregoing specifically INCLUDES information stored in a computer database and capable of being generated in documentary form, such as electronic mail, text messages (i.e., SMS messages), other electronic messages including messages sent or received via Slack, WhatsApp, Google Hangouts, Facebook Messenger, and the like.

25. "COMMUNICATIONS" shall mean, without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, DOCUMENT, instruction, information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail ("e-mail").

26. "THING" means any tangible object, other than a DOCUMENT.

27. "PERSON" means to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.  The masculine includes the feminine and vice versa; the singular includes the plural and vice versa.

28. "REGARDING," shall mean relating to, referring to, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

29. "INCLUDE" and "INCLUDING" shall mean including without limitation.

30. Use of the singular also INCLUDES the plural and vice-versa.

31. The words "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Requests for Production.

32. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

33. The term "any" shall include "all" and "all" shall include "any."

**INSTRUCTIONS**

The following Instructions apply to each interrogatory:

1. In answering the following interrogatories, furnish all available information, including information in the possession, custody, or control of any of DEFENDANTS' attorneys, directors, officers, agents, employees, representatives, associates, investigators or division affiliates, partnerships, parents or subsidiaries, and PERSONS under DEFENDANTS' control, who have knowledge, not merely information known to DEFENDANTS based on DEFENDANTS' own personal knowledge.

2. If DEFENDANTS cannot fully respond to the following interrogatories after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each interrogatory that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the interrogatories cannot be answered fully and completely; and state what knowledge, information or belief DEFENDANTS have concerning the unanswered portion of any such interrogatory.

3. If DEFENDANTS' response to a particular Interrogatory is a statement that DEFENDANTS lack the ability to comply with that Interrogatory, specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in DEFENDANTS' possession, custody, or control, in which case the name and address of any person or entity known or believed by DEFENDANTS to have possession, custody, or control of that information or category of information must be identified.

4. If any information requested is claimed to be privileged or otherwise immune from discovery, provide all information falling within the scope of the interrogatory which is not privileged, and for each item of information contained in a document to which a claim of privilege is made, identify such document with sufficient particularity for purposes of a motion to compel, such identification to include at least the following:

a. the basis on which the privilege is claimed;

b. the names and positions of the author of the document and all other persons participating in the preparation of the document;

c. the name and position of each individual or other person to whom the document, or a copy thereof, was sent or otherwise disclosed;

d. the date of the document;

e. a description of any accompanying material transmitted with or attached to such document;

f. the number of pages in such document;

g. the particular Interrogatory to which such document is responsive; and

h. whether any business or non-legal matter is contained or discussed in such document.

34.  DEFENDANTS' obligation to respond to these interrogatories is continuing and its responses are to be supplemented to include subsequently acquired information in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

IDENTIFY the locations and custody of all known copies of THE DOWNLOADED MATERIALS, or any documents describing THE DOWNLOADED MATERIALS. If any of the copies have no longer exist, explain DEFENDANTS' full knowledge as to the destruction.

**INTERROGATORY NO. 2:**

IDENTIFY all Diligenced Employees and the date(s) they became Diligenced Employees (as that term is used in the OTTOMOTTO MERGER AGREEMENT).

**INTERROGATORY NO. 3:**

IDENTIFY all Uber Devices and Non-Uber Devices (as those terms are defined in UBER00006444) that LEVANDOWSKI has used to access any of DEFENDANTS' Networks (as that term is defined in UBER00006444), or that LEVANDOWSKI could have used to access any of DEFENDANTS' Networks (as that term is defined in UBER00006444).

**INTERROGATORY NO. 4:**

Describe the ownership of TYTO and/or ODIN WAVE, INCLUDING the identity of all PERSONS with current or former ownership interests in TYTO and/or ODIN WAVE, that PERSON's current or former ownership interest(s), and the agreements creating or modifying those ownership interests.

**INTERROGATORY NO. 5:**

Describe all compensation (whether actual or conditional) discussed, conveyed or promised by DEFENDANTS to LEVANDOWSKI at any time, INCLUDING (without limitation) the DEFENDANT who discussed, conveyed or promised the compensation, the nature of the compensation, the date the compensation was promised and/or conveyed, the amount of the compensation, any conditions, contingencies, clawback rights or reservations associated with the compensation.

**INTERROGATORY NO. 6:**

Describe DEFENDANTS' efforts to preserve evidence relevant to THIS CASE, INCLUDING (without limitation) when DEFENDANTS instituted any litigation hold(s) REGARDING THIS CASE, how DEFENDANTS implemented any litigation hold, all PERSONS who received any litigation hold, when each PERSON received each litigation hold, which PERSON(S) was responsible for monitoring compliance with each litigation hold, and any instances of non-compliance with such litigation hold.

**INTERROGATORY NO. 7:**

For each of DEFENDANTS' past and present officers, directors, and employees identified in response to the Court's April 4, 2017 Order (Dkt. 144) as having had LiDAR-related responsibilities or projects, identify all LiDAR-related projects that the PERSON has worked on, INCLUDING (without limitation) any LiDAR-related projects involving third parties.

**INTERROGATORY NO. 8:**

Describe all consulting work performed by LEVANDOWSKI for UBER before August 18, 2016, INCLUDING the terms of the consulting and any compensation arrangements.

**INTERROGATORY NO. 9:**

Identify in detail all COMMUNICATIONS between DEFENDANTS and LEVANDOWSKI or anyone acting on his behalf relating to the Court's May 11, 2017 Order Granting in Part and Denying in Part Waymo's Motion for a Preliminary Injunction, including LEVANDOWSKI's May 18, 2017 Motion to Intervene, by identifying for each such COMMUNICATION: its date, its form (i.e. oral or in writing, and if in writing the form of writing), the individuals involved, its substance, and if in writing its production number.

DATED: May 22, 2017                    QUINN EMANUEL URQUHART & SULLIVAN, LLP


By:   */s/ Charles K. Verhoeven*
   Charles K. Verhoeven
   Attorneys for Plaintiff WAYMO LLC.

01980-00104/9306960.2                                11                        Case No. 3:17-cv-00939-JCS
WAYMO'S FIRST SET OF PARAGRAPH SIX EXPEDITED INTERROGATORIES (NOS. 1-9)

**PROOF OF SERVICE**

I, Andrea Pallios Roberts, am employed in the County of San Mateo, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, CA 94065.

On May 22, 2017, I served true copies of the following document(s) described as "Plaintiff Waymo LLC's First Set of Expedited Interrogatories Pursuant to Paragraph Six of the May 11, 2017 Preliminary Injunction Order" on the interested parties in this action as follows:

| Recipient | Email Address: |
|---|---|
| Arturo J. Gonzalez<br>Daniel Pierre Muino<br>Eric Akira Tate<br>Esther Kim Chang<br>Matthew Ian Kreeger<br>Michael A. Jacobs<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105 | UberWaymoMoFoAttorneys@mofo.com |
| Michelle Ching Youn Yang<br>MORRISON FOERSTER LLP<br>2000 Pennsylvania Avenue, NW<br>Washington, DC 20006 | |
| Rudolph Kim<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304 | |
| Wendy Joy Ray<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard<br>Suite 6000<br>Los Angeles, CA 90017 | |
| Michael Darron Jay<br>BOIES SCHILLER & FLEXNER LLP<br>401 Wilshire Boulevard, Suite 850<br>Santa Monica, CA 90401 | BSF_EXTERNAL_UberWaymoLit@bsfllp.com |
| Meredith Richardson Dearborn<br>BOIES SCHILLER FLEXNER LLP<br>435 Tasso Street<br>Suite 205<br>Palo Alto, CA 94301 | |

01980-00104/9306960.2

| | |
|---|---|
| Hamish Hume | |
| Jessica E Phillips | |
| Karen Leah Dunn | |
| Kyle N. Smith | |
| Martha Lea Goodman | |
| BOIES SCHILLER FLEXNER LLP | |
| 1401 New York Ave., NW | |
| Washington, DC 20005 | |
| I. Neel Chatterjee (SBN 173985) | nchatterjee@goodwinlaw.com |
| GOODWIN PROCTER LLP | |
| 135 Commonwealth Drive | |
| Menlo Park, CA 94025 | |
| Tel.: +1 650 752 3100 | |
| Fax: +1 650 853 1038 | |
| Brett M. Schuman (SBN 189247) | bschuman@goodwinlaw.com |
| Shane Brun (SBN 179079) | sbrun@goodwinlaw.com |
| Rachel M. Walsh (SBN 250568) | rwalsh@goodwinlaw.com |
| GOODWIN PROCTER LLP | |
| Three Embarcadero Center | |
| San Francisco, California 94111 | |
| Tel.: +1 415 733 6000 | |
| Fax.: +1 415 677 9041 | |

**BY ELECTRONIC MAIL TRANSMISSION:** by electronic mail transmission from andreaproberts@quinnemanuel.com on May 22, 2017, by transmitting a PDF format copy of such document(s) to each such person at the e mail address listed above. The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

Executed on May 22, 2017, at Redwood Shores, California.

                                                  */s/ Andrea Pallios Roberts*
                                                  Andrea Pallios Roberts

01980-00104/9306960.2