# EXHIBIT 5

**Andrea P Roberts**

| | |
|---|---|
| **From:** | Maxwell Pritt <mpritt@BSFLLP.com> |
| **Sent:** | Thursday, July 20, 2017 3:43 PM |
| **To:** | Andrea P Roberts; Jeff Nardinelli; Fiona Tang; QE-Waymo |
| **Cc:** | 'UberWaymoMoFoAttorneys'; BSF_EXTERNAL_UberWaymoLit; 'John Cooper'; 'Matthew Cate' |
| **Subject:** | RE: Waymo v. Uber: Ulrich and McCann Searches |
| **Attachments:** | 2017-07-20_Uber_s_Response_to_Waymo_s_7-14_Search_Terms.pdf; 2017-07-20 Uber's Responses to Waymo's Comments re Search Term Modifications.pdf |

Dear Andrea and John,

      This email responds to Andrea's 7/14 4:47pm and 7/18 9:39am emails regarding Uber's search term and custodian proposals, and the concerns with Waymo's searches Uber first begain raising on 7/6 after the parties exchanges search terms and custodians for the first time on 7/3.

      To being with, we reject Waymo's assertion that it is not obligated to make any of its witnesses available for further depositions if Waymo withheld responsive documents by using deficient search terms on the ground that Uber did not engage in negotiations over those terms sufficiently in advance of depositions.  We've pointed out numerous times that we believed Waymo's search terms were overly restrictive and inconsistently applied across custodians, starting with our July 6 email shortly after receiving Waymo's list of search terms and custodians.  We had to follow-up several times to request a response, even after the Special Master directed Waymo to provide one.  Moreover, Waymo has an obligation to conduct a reasonable search for responsive documents separate and apart from any search term negotiations.  To the extent Waymo failed to conduct a proper search for responsive documents by using overly restrictive terms and inconsistently applying them, that is a reasonable basis for further depositions.

      Nonetheless, attached are Uber's responses on the proposed search terms and custodians.

      The Special Master asked us to include in our response a proposal regarding the number of terms and definition of terms.  You proposed to limit the number of terms each side could propose to 48.  First, we do not speak for Otto Trucking.  Second, we assume you mean 48 terms that were not originally applied by the other side.  Such a proposal, however, does not take into account the fact that we *initially* applied broader search terms than Waymo, and did so consistently across custodians, and that our proposals were intended to bring your searches in line with what we had already done.  Third, your proposal does not take into account that some search terms we proposed apply only to a limited number of custodians.  For example, the terms in §II, row 13 apply only to Gary Brown and Kristinn Gudjonsson.  Fourth, your assertions that, for example, we're proposing 315 discrete search terms in §II is misplaced—we started with the search terms you had already selected and applied (inconsistently) and proposed some additional terms because the ones you applied appeared overly restrictive.  Fifth, many of the additional terms we proposed are variations on a single term (e.g., "sue," "suit," "lawsuit"; "rideshar*" and "(ride /5 shar*)"; "self-driving" and "selfdriving"), and others are to capture potential misspellings of words (e.g., "Chaff*" and "Chauf*").  Suffice it to say, we do not believe that limiting the number of additional search terms that each side can propose to an arbitrary number makes sense or is workable, especially given the disparity in Waymo's use of restrictive search terms and connectors, and Uber's use of broader and less restrictive terms (which explains the disparity in the number of documents produced by each side).  Any arbitrary search term limit would severely prejudice Uber and

we cannot agree to one. Instead, we proposed the technical and business search terms we believe would bring your searches in line with searches we performed and reasonably capture responsive documents. We have also taken your comments to our original proposals into account and further modified our proposal, including by identifying the particular custodians we think each search terms should be run against. If any of our proposed search strings return hit counts for a custodian that you think are unduly burdensome, please identify the specific search string, custodian, and number of documents so that we can discuss that matter with the relevant information in hand. In the meantime, however, we request that you run the search terms you do not object to. Hopefully we can resolve the remainder quickly.

      Regarding the additional terms and custodians Waymo has proposed, Uber's responses are reflected in the accompanying PDF. As reflected therein, subject to an overall agreement, Uber is agreeing to accommodate virtually all of Waymo's requests, including all of the custodians Waymo proposed and its search terms, with the exception of obviously overbroad terms such as searching for "Uber," "Lior," and reviewing every single email to or from Anthony Levandowski, without the application of any search terms. Uber also modified Waymo's proposed time period for certain terms, namely, "Ottomotto," "Otto," and "Otto!" As Sylvia Rivera indicated and James Judah agreed on a recent call, after the merger closed it is overbroad to search for Ottomotto among custodial emails.

      Regarding the business search terms Uber proposed, again, Waymo's assertion that Uber's terms are "vastly overbroad" is puzzling since many of the terms are Waymo's own search terms and Uber is asking only that the same or slightly varied terms be applied consistently across similarly-situated custodians. For the new sets of business-related search terms that Uber proposed, Uber was clear that "some terms that may only be applicable to certain custodians, and we are willing to discuss application of these search terms only where doing so makes sense." In any event, Uber has identified the custodians for whom we think certain terms should apply to. If Waymo does not believe certain terms should be applied to certain custodians because Waymo does not believe such custodians would have responsive documents, please let us know. We have also reduced and/or broken up the additional search phrases we proposed based on your comments. These terms do not capture all of Uber's outstanding document requests but rather are limited to Uber's RFPs sets 1 and 2.

      Regarding date ranges, for the technical search phrases (§I) in the attached document, the range should be 1/1/2010 – 01/31/2016. This range is based on Waymo's assertion that "total development work" associated with its alleged trade secrets took approximately four to six years. We will get back to you as soon as possible regarding dates ranges for the business phrases (§II).

      Regarding custodians, we initially proposed 30 custodians, and you proposed 35 custodians with some flexibility of being able to request documents from additional deponents identified at a late date. We propose a mutually-applicable cap of <u>38 custodians</u>, with the understanding that the parties may identify a small number of those custodians later in discovery, at which point the producing party will review and produce those custodians' documents promptly.

Regards,
Max

---

**From:** Andrea P Roberts [mailto:andreaproberts@quinnemanuel.com]
**Sent:** Tuesday, July 18, 2017 9:39 PM
**To:** Maxwell Pritt; Jeff Nardinelli; Fiona Tang; QE-Waymo

**Cc:** 'UberWaymoMoFoAttorneys'; BSF_EXTERNAL_UberWaymoLit; 'John Cooper'; 'Matthew Cate'
**Subject:** RE: Waymo v. Uber: Ulrich and McCann Searches

Max and John,

I write to follow up on my email below.

Do Defendants agree to limit the number of search terms that we can propose to each side to 48?

When can we expect revisions to the search terms that Uber proposed Waymo run, including identification of which custodians each group of search terms should be run against?

When can we expect answers to our other questions regarding date ranges for searches, and confirmation that they will be run on emails only?

Does Uber agree to run the searches that we proposed on July 14? If not, please let us know which ones you do not agree to so that we can meet and confer.

As I indicated on July 14 and in a prior meet and confer, if depositions occur before the parties agree on search terms and can implement them, those witnesses will not be made available for deposition again on the basis that these additional searches had not been run yet.

Thanks,
Andrea

---

**From:** Andrea P Roberts
**Sent:** Friday, July 14, 2017 4:47 PM
**To:** Maxwell Pritt <mpritt@BSFLLP.com>; Jeff Nardinelli <jeffnardinelli@quinnemanuel.com>; Fiona Tang <ftang@BSFLLP.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Cc:** 'UberWaymoMoFoAttorneys' <UberWaymoMoFoAttorneys@mofo.com>; BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; 'John Cooper' <JCooper@fbm.com>; 'Matthew Cate' <MCate@fbm.com>
**Subject:** RE: Waymo v. Uber: Ulrich and McCann Searches

Max and John,

I write to move forward our negotiations regarding agreed upon search terms.

We've analyzed Uber's proposed search terms for Waymo and provided comments on a term by term basis in the attached document. As you'll see, many are extremely overbroad because Uber proposed proximity limiters of 25 and because Uber used very common terms without effective narrowing. For example, one search term proposed by Uber is just "Uber," by itself, which would pick up any reference to the company for any reason, whether it be reference to someone taking an Uber somewhere, to comments on news articles about Uber having nothing to do with the issues in this case, etc. Uber also proposed "Levandowski" by itself as a search term. Uber did not use "Levandowski" as a search term for its own documents, other than for the date range before he was employed at Uber. Yet, Uber is asking Waymo to run that same term. Given his role, it does not make sense for either side to use "Levandowksi" by itself without any narrowing terms as a search term during the time period in which he was an employee. Another proposed search term is GBR3, Waymo's internal project name. This term hits on massive quantities of documents. The remainder of the terms are addressed in

the attachment. To give you a sense of just how overbroad these terms are, we tested the business terms for one custodian and they returned over 280,000 documents, including families. That is not workable. Further, we've checked some of the documents that hit on the terms and the terms are so broad that they are returning high numbers of false positives. Uber should take a look at the search terms it proposed and let us know how it will revise them.

There are some global issues to discuss and that implicate the overall agreement, which are addressed below.

- Uber proposed far too may search terms for this to be workable in the time frame that we have. The number of terms Uber proposed is much larger than it looks because of Uber's rampant use of "ors" Take for example Uber proposed search term below:

    (((bonus* OR milestone*) OR (payment OR valu* OR "exchange date")) AND (Chauff* or Chaff* or SDC OR "self-driving" OR "self driving" OR driverless OR selfdriving OR autonom* or AV /10 (bonus* OR payment))

    Although listed as one, it is actually **45** separate search terms because of the use of "or." And Uber used "or" in virtually every single proposed search string. A more simpler one to consider is:

    TaaS market" OR Lyft* OR rideshar* OR ridesharing OR (ride /5 shar*) OR carpool* OR (Waze /10 Ride*)

    This is 7 separate search terms. Thus, the number of searches proposed by Uber is much, much larger than it looks. Uber's "technical" search terms that are listed as though there are only 23 contain **160** discrete searches. Uber's "business" search terms that are listed as though there are only 12 contain **315** discrete searches. In other words, Uber is asking Waymo to run an additional **475** discrete searches. This is unreasonable and unworkable. We propose that each side agree that they can collectively propose 48 search terms to the other side, and the parties will meet and confer about those terms.

- Uber's proposal breaks the search terms into technical and business terms. Uber's proposal does not indicate which sets should be run against each custodian. Specifically, if there are custodians for which Uber believes Waymo should run both batches of terms, it should let us know that so we can consider it. Obviously, the greater number of terms per custodians, the greater number of documents to review and produce prior to fast-approaching depositions.

- Uber did not propose the date ranges that it believes Waymo should use for the different batches of search terms. To simplify things, we think it should be one date range for each batch of terms.

- Uber did not propose whether the search terms should be applied to emails only or other types of documents, such as Drive documents. Since Uber ran its own search terms on custodial email data, we presume that is what Uber intended for its proposal. We think these discussions of search terms should be limited to applying search terms to custodial emails.

- As we indicated before, if depositions occur before the parties agree on search terms and can implement them, those witnesses will not be made available for deposition again on the basis that these additional searches had not been run yet. If Uber wanted these searches complete before depositions began, it should have engaged in negotiations of an ESI Order six weeks ago.

- We had discussed a cap on the number of custodians to be searched so that there was some boundary on the number and the parties can plan accordingly. However, since both sides want the option of being able to request documents from late-identified deponents, we did not agree on a limit.

We also attach proposed revisions and additions to Uber's search terms to be run against its custodial email data, including proposing expanded date ranges, and adding custodians. Please let us know if Uber will agree to run these terms on the identified custodians. If there are any for which there is disagreement, let us know and we can meet and confer about those.

Thanks,
Andrea

**Andrea Pallios Roberts**
*Of Counsel,*
Quinn Emanuel Urquhart & Sullivan, LLP

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
650-801-5023 Direct
650.801.5000 Main Office Number
650.801.5100 FAX
andreaproberts@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Maxwell Pritt [mailto:mpritt@BSFLLP.com]
**Sent:** Wednesday, July 12, 2017 8:57 AM
**To:** Jeff Nardinelli <jeffnardinelli@quinnemanuel.com>; Fiona Tang <ftang@BSFLLP.com>; Andrea P Roberts <andreaproberts@quinnemanuel.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Cc:** 'UberWaymoMoFoAttorneys' <UberWaymoMoFoAttorneys@mofo.com>; BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; 'John Cooper' <JCooper@fbm.com>; 'Matthew Cate' <MCate@fbm.com>
**Subject:** RE: Waymo v. Uber: Ulrich and McCann Searches

John,

In case my email below was missed yesterday, we'd like a call on Waymo's search terms and custodians, and ask that you again ask Waymo to respond to my July 6th, 1:17am email.

Best,
Max

-----Original Message-----
**From:** Maxwell Pritt

5

**Sent:** Tuesday, July 11, 2017 03:53 PM Eastern Standard Time
**To:** Jeff Nardinelli; Fiona Tang; Andrea P Roberts; QE-Waymo
**Cc:** UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; John Cooper; Matthew Cate
**Subject:** RE: Waymo v. Uber: Ulrich and McCann Searches

Dear John, we request a meet and confer tomorrow morning to discuss Waymo's search terms and custodians. We also ask that you direct Waymo to respond to my July 6, 1:17am email, which you asked them to do on a rolling basis by yesterday, and they did not do. Below is a response to Jeff's July 8, 5:32pm email.

Best,
Max

* * * *

Jeff,

We are puzzled by the decision in your July 8 email to repeat search terms that we already explained were insufficient and for which we offered modifications, as explained in Fiona's email below and in my July 6 email concerning the search terms and custodians Waymo disclosed on July 3, to which you still have not responded (except to one question about custodians Waymo searched but had not identified), despite having promised to do so on a rolling basis no later than *yesterday*. Andrea asked us on Friday's call to provide a list of any additional search terms we'd propose for Ulrich and McCann so she could send them to your vendor to see if the terms could be run. The Special Master asked us to provide a list based on that representation. It appears from your email that you decided not to consult with your vendor, however, and despite asking us for additional search terms opted to continue stonewalling in advance of McCann's deposition tomorrow by refusing to apply *any* additional search terms to his files.

You make much of some documents that Waymo produced last Thursday, but histrionics aside, Waymo's production for McCann and Ulrich is deficient because, as explained in my July 6 email, Waymo failed to apply consistent and comprehensive search terms to identify responsive documents. Of the documents Waymo produced, very few are authored by McCann, and it is difficult to discern from the documents what technical features he worked on. For example, McCann appears to have worked on issues relating to the optical fiber (*see* WAYMO-UBER-00012012), but his custodial documents do not show the extent of his involvement in the development of Waymo's alleged trade secret No. 19. As a result of Waymo's deficient production, inconsistent application search terms, and refusal to consider any proposed search term modifications, Uber may be forced to reserve time for a second deposition of McCann.

Uber declines to enter into the ESI Order proposed by Waymo. The proposed limitations would create an incredibly imbalanced playing field in view of the extensive discovery already produced by Uber and additional searches being conducted by Uber that are already in progress. Uber has already produced *over 29,000* documents, while Waymo has produced *less than 5,000*. Uber is searching 28 custodians using 25 sets of broad technical search terms and 17 broad non-technical terms for the current sets of discovery.

Thus, the proposal in Waymo's ESI Order that it be limited to searching only five custodians when it has identified over 20 witnesses on its initial disclosures, using only 10 terms per custodian, would be highly prejudicial to Uber and does not constitute a good faith effort to reach agreement at this stage. The unreasonableness of Waymo's proposal is self-evident. As reflected in the search term lists that the parties exchanged on July 3, both parties in fact are searching more custodians than is contemplated in Waymo's proposed ESI Order. Those lists further reflect that both parties are using sets of search terms in a string, using connectors such as "and" or "or" and, in Waymo's case, using proximity connectors (which, as explained below, Uber believes are too limiting). Trying to reach agreement on a traditional list of search terms and custodians does not align with the searches actually performed or the expedited nature of this case.

Uber therefore proposes the more balanced approach to custodians and searches outlined here, which would bring Waymo's search more in line with Uber's. This proposal is an effort to reach agreement on the scope of further

discovery in this case. As reflected below, we expect that Waymo will apply search terms consistently across similarly situated custodians, as Uber has. We also expect Waymo will expand the overly restrictive proximity connectors it has employed to date; Uber has not restricted its search in that way.

I.  *Uber's Proposed Modifications of Waymo's Technical Search Terms.*

Proposed modifications are in red. These search terms should be applied to all custodians with technical job roles or responsibilities.

|    | Waymo's Original Terms | Uber's Modifications |
|----|------------------------|----------------------|
| 1  | ███                    | ███                  |
| 2  | ███                    | ███                  |
| 3  | ███                    | ███                  |
| 4  | ███                    | ███                  |
| 5  | ███                    | ███                  |
| 6  | ███                    | ███                  |
| 7  | "FAC lens"             | ((FAC OR fast) /5 lens) |
| 8  | GBr3                   | GBr3                 |
| 9  | ███                    | ███                  |
| 10 | ███                    | ███                  |
| 11 | ███                    | ███                  |
| 12 | ███                    | ███                  |
| 13 | ███                    | ███                  |
| 14 | ███                    | ███                  |
| 15 | ███                    | ███                  |
| 16 | ███                    | ███                  |
| 17 | ███                    | ███                  |
| 18 | ███                    | ███                  |
| 19 | ███                    | ███                  |

7

| | | |
|---|---|---|
| 21 | ███████████████████ | ███████████████████ |
| ■ | ███████████████████████ ██████████████ | ████████████████████████ ████████████████████████ ████ |
| ■ | | ████████████████████████ ███████████████████ |

II.   *Uber's Proposed Modifications of Waymo's Business-related Search Terms.*

Proposed modifications are in red.  This list includes some terms that may only be applicable to certain custodians, and we are willing to discuss application of these search terms only where doing so makes sense.

| | Waymo's Original Terms | Uber's Modifications |
|---|---|---|
| 1 | anthony /10 (otto* OR uber) | ~~anthony /10~~ (otto* OR uber* OR Travis OR Kalanick) |
| 2 | (anthony OR levandowski) /10 newco | (anthony OR levandowski) AND (newco OR sue OR suit OR lawsuit OR (trade /5 secret) OR "14,000" OR "Project Eleven" OR "Team Mac") |
| 3 | (OWL /5 (lidar OR sensor)) | (OWL OR tyto OR odin OR Herschel) AND (lidar OR laser OR sensor*) |
| 4 | (Schwarz OR Haslim OR Asheem OR Linaval OR Iturraran OR Karasoff) | (Schwarz OR Haslim OR Asheem OR Linaval OR Iturraran OR Karasoff) |
| 5 | (Uber OR otto OR ottomotto OR "odin wave") /10 (SDC OR "self-driving" OR "self driving" OR driverless OR selfdriving OR autonomous OR lidar OR velodyne OR PCB) | (Uber OR otto OR ottomotto OR "odin wave" OR tyto OR truck*) AND (SDC OR "self-driving" OR "self driving" OR driverless OR selfdriving OR autonom* or AV OR lidar OR velodyne OR PCB) |
| 6 | (Anthony OR Levandowski OR Ron OR Lior) /25 (Newco OR Uber OR ((self /2 driving) /5 truck*) OR (side /5 business*) OR ZeeArrow OR KittyHawk) | (Anthony OR Levandowski OR Ron OR Lior) AND (Newco OR Uber OR Otto* OR ~~((self /2 driving) OR truck*)~~ OR (side /15 (business* OR project* OR venture*)) OR Zee* OR KittyHawk OR ((280 OR 510) /5 system*) OR (Anthony /10 robot*)) |
| 7 | ((side /5 business*) OR (side /5 invest*)) | (side OR personal /25 (business* OR invest* OR project* OR venture*)) |
| 8 | (Anthony OR Levandowski) /25 ( bonus* OR (Chauffeur /10 (bonus* OR payment))) | ~~(Anthony OR Levandowski) /25~~ (((bonus* OR milestone*) OR (payment OR valu* OR "exchange date")) AND (Chauff* or Chaff* or SDC OR "self-driving" OR "self driving" OR driverless OR selfdriving OR autonom* or AV ~~/10 (bonus* OR payment)~~)) |
| 9 | "entering the TaaS market" | ~~"entering the~~ TaaS ~~market"~~ OR Lyft* OR rideshar* OR ridesharing OR (ride /5 shar*) OR carpool* OR (Waze /10 Ride*) |
| 10 | (resign* OR leav* OR quit*) /10 (Waymo OR Google) | (resign* OR leav* OR quit* OR terminat* OR transfer* OR notice OR PIP) /25 (Waymo OR Google OR Chauff* or Chaff*) |

| | | |
|---|---|---|
| 11 | (Levandowski OR Ron OR Lior OR Burnette OR Delaunay) /25 ((Newco) OR Uber)) | (Levandowski OR Ron OR Lior OR Burnette OR Delaunay) AND ((Newco) OR Uber OR Otto* OR truck*)) |
| 12 | | (Chaff* OR Chauf* OR Waymo OR Self-driving OR selfdriving OR autonom* OR AV OR SDC) AND (Projection* OR forecas* OR ridership OR "business plan" OR roadmap* OR viab* OR gantt OR valu* OR commercial*) |
| 13 | | (Levandowski OR Kshirsagar OR Raduta OR 371795668791 OR "AnthonyL" OR "AnthonyL0-W") |

III.     *Uber's Proposed Modifications to Waymo's Custodians.*

Custodians that do not appear on Waymo's current custodian list are identified below in red.  We note that application of the search terms set forth above will depend on each custodian's job functions and responsibilities, but we expect that similarly situated custodians will be subject to the same search terms.  The proposed custodian list below is based on information that is currently available to Uber.  Uber reserves its right to object to the scope of Waymo's custodian list if Waymo's document productions and future discovery responses (including its supplemental interrogatory responses) reveal deficiencies.

1. Anthony Levandowski
2. Asheem Linaval
3. Ben Ingram
4. Bernard Fidric
5. Blaise Gassend
6. Brian Salesky
7. Chelsea Bailey
8. Chris Urmson
9. Daniel Chu
10. David Drummond
11. David Krane
12. Dimitri Dolgov
13. Don Burnette
14. Donald Harrison
15. Drew Ulrich
16. Gaetan Pennecot
17. Gary Brown
18. Gerard Dwyer
19. Jai Krishnan
20. Jennifer Haroon
21. John Krafcik
22. Larry Page
23. Lior Ron
24. Pierre Droz
25. Sam Lenius
26. Sebastian Thrun
27. Sergey Brin
28. Stacey Sullivan
29. Will McCann
30. Zach Morriss

9

**From:** Jeff Nardinelli [mailto:jeffnardinelli@quinnemanuel.com]
**Sent:** Saturday, July 08, 2017 5:32 PM
**To:** Fiona Tang; Andrea P Roberts; QE-Waymo
**Cc:** UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; John Cooper; Matthew Cate
**Subject:** RE: Waymo v. Uber: Ulrich and McCann Searches

**Highly Confidential – Attorneys' Eyes Only**

John and Fiona,

I write in response to the search terms for McCann and Ulrich that Fiona sent this morning at 12:46 am. We do not agree to run these 86 terms (i.e. 43 terms for these two custodians alone). As explained below, setting up a workable, scalable strategy for ESI discovery – not further production in advance of next week's depositions – is the urgent matter at hand. This case needs a binding order limiting ESI discovery. If we cannot come to terms soon we request that the Special Master set a briefing schedule for entry of a stipulated ESI order.

Fiona, citing next week's depositions of Messrs. McCann and Ulrich, your email claims that you will be "further prejudiced" should Waymo fail to "produce immediately" documents responsive to your search terms over their custodial data. But you identify no prejudice, and you fail to address Waymo's existing production. As we stated on the July 7 call with Special Master Cooper, Waymo has produced over 400 documents for Mr. McCann and over 500 for Mr. Ulrich. Uber does not and cannot call that production insufficient. In fact, on yesterday's call, you stated that you had not yet had time to review Waymo's July 6 production, which you called a "document dump." In other words, you argued that you needed more documents for Messrs. McCann and Ulrich even though you *already have so many that you have not had time to review them.*

That July 6 "document dump" was the result of Waymo doing the same thing you're currently asking us to do – an extensive collection and production of documents in advance of next week's depositions. After Uber identified Messrs. McCann and Ulrich as top-ten deponents on July 22 and the Court issued an order on June 23 scheduling their depositions for next week, Waymo looked to its existing production of documents. Finding that Waymo's current production could be bolstered with more documents from Messrs. McCann and Ulrich, we crafted 30 search terms to run across their custodial data:





28. anthony /10 (otto* or uber)
29. levandowski /10 (otto* or uber)
30. (anthony OR levandowski) /10 newco

Our team spent nights and weekends reviewing the hits. Our goal was to get Uber these documents by July 6, six days before Mr. McCann's deposition. We did. The result of our effort was our July 6 production, which included 293 new documents for Mr. McCann and 382 for Mr. Ulrich, bringing their respective totals to 434 and 522. To be clear, these counts far exceed Uber's production for many of the technical custodians disclosed on Uber's search list provided to us on July 3. *See, e.g.*, Robert Doll (17 hits for "Doll" over Uber's entire production); Jim Gasbarro (28 hits for "Gasbarro"); Marlon Bocalan (29 hits for "Bocalan"); Florin Ignatescu (57 hits for "Ignatescu"); Adam Kenvarg (99 hits for "Kenvarg"); George Lagui (141 hits for "Lagui"). For Radu Raduta – whose name is spelled incorrectly on your search list and whose deposition is this Wednesday – there are 138 hits for "Raduta," including 58 separately-produced documents from a single email thread called "RE: Mr Fast Lens – Prototype tooling."

Fiona, your email below addresses *none of this*. And Uber's counsel admitted on our July 7 meet and confer that Uber had not yet reviewed Waymo's recent production of McCann and Ulrich documents. Instead, nakedly claiming "prejudice," Uber demands that Waymo run 43 additional terms for both Ulrich and McCann—a total of 86 additional searches. (Although your email is styled to look as though Uber requests only 11 additional terms, Uber actually seeks 43 additional terms per custodian because term # 1 is broken into subparts and because term # 9 contains 30 terms, separated by disjunctive ORs.)

First, Uber demanded that Waymo expand 22 of its 30 terms and also add two new terms:

| Waymo's Original Terms | Uber's Suggested Expansions |
|---|---|
| ██████████████████████████████████████ | ██████████████████████████████████████ |
| ██████████████████████████████████ | ██████████████████████████████████████ |
| ███ | |
| ████████████████ | ████████████████ |
| ████████████████████ | ████████████████████ |
| ██████████ | ██████████ |
| ████████████████ | ████████████████ |
| ██████████ | ██████████ |
| ██████████ | ██████████ |
| ████████ | ████████ |
| ██ | |
| ██████████████████████████ | ██████████████████████████ |

11



| | |
|---|---|
| anthony /10 (otto* or uber) | ~~(anthony and~~ (otto* or uber* or truck* or tyto or ((280 o odin) |
| levandowski /10 (otto* or uber) | |
| (anthony OR levandowski) /10 newco | ((anthony OR levandowski) and (newco OR (sue OR su System*) or (510 /2 System*)) |

Also, Uber demands that Waymo run thirteen additional terms:



Finally, Uber "reserve[d] all rights to augment or modify these terms for other custodians," deliberately leaving the door open for additional eleventh-hour requests of untested, unilaterally-imposed search terms.

12

Uber's approach is unworkable. It does not scale for future deponents and invites future disputes.

Thus, on the instant matter of next week's depositions, Waymo will not search additional documents. We already went through that exercise to produce several hundred documents that Uber has not even reviewed. If Uber had wished Waymo to run specific search terms for specific custodians, Uber could and should have responded in good faith to Waymo's repeated efforts to negotiate an ESI proposal, as well as the Special Master's repeated suggestion that the parties agree on search terms. Uber cannot complain of the results of its own delay – particularly where Uber already has ample documents to review in advance of next week's depositions.

There are further depositions, however, as well as outstanding document requests, and Waymo hereby repeats its offer to agree to a set of search terms sufficient to meet both parties' needs. Ms. Roberts circulated again yesterday the ESI order that Waymo proposed on May 30. We request that Defendants either agree to the boundaries for electronic searches therein, or make a counter-proposal. The list Uber circulated last night is a useful starting point, but also makes clear that any exchange of search terms must include reasonable negotiation (which is anticipated in Waymo's proposed ESI order); some of Uber's suggested terms are much more reasonable than others.

We look forward to your prompt response concerning how we can continue to move forward.

Best,
Jeff

---

**From:** Fiona Tang [mailto:ftang@BSFLLP.com]
**Sent:** Saturday, July 08, 2017 12:47 AM
**To:** Andrea P Roberts <andreaproberts@quinnemanuel.com>; QE-Waymo <qewaymo@quinnemanuel.com>
**Cc:** UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; John Cooper <JCooper@fbm.com>; Matthew Cate <MCate@fbm.com>
**Subject:** Waymo v. Uber: Ulrich and McCann Searches

Andrea,

In connection with our call this afternoon and the Special Master's instructions, below are the search terms and date ranges we seek for Messrs. McCann and Ulrich. As Waymo knows, these depositions are coming up next week. Uber will be further prejudiced by any delay in responding to and/or applying the requested search terms requested. We expect that Waymo understands that responsive documents must be produced immediately. We provide these search terms and ranges only as to Messrs. McCann and Ulrich, and we reserve all rights to augment or modify these terms for other custodians.

To ensure timely production, we ask that Waymo state affirmatively whether they are willing to apply the search terms below for Messrs. McCann and Ulrich <u>by tomorrow afternoon</u>.

To expedite your review and response, we've separated out new search terms and previously disclosed Waymo search terms that require modification. Modifications are indicated in <span style="color:red">red</span> font. We note also that, to address our concerns regarding Waymo's inconsistent application of search terms (as further discussed in our 7/6 email, points 3 and 4), the previously disclosed search terms identified below include searches that you did not previously use for Messrs. McCann and Ulrich, but which you have used for other Waymo custodians.

---PROPOSED SEARCH TERMS AND DATE RANGES---

McCann Date range: 03/01/2012 - 2/23/2017
Ulrich Date range: 03/01/2010 – 2/23/2017

Additional Search Terms:

- ▮▮▮▮▮▮▮▮▮▮
  - ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  - ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    - ▮▮▮▮
  - ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  - ▮▮
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮
4. "TaaS" or "Lyft*" or "rideshar*" or "ride-shar*" or "carpool*" or (Waze /10 Ride*) or (Waze w/10 carpool*) or (ride /5 shar*)
5. Bonus* or milestone or (project w/5 valu*) or "exchange date"
6. (Self-driving or autonomous or AV) and (Project* or forecas* or ridership or "business plan" or viab* or gantt)
7. Side /10 (project* or invest* or business*)
8. Project* or forecas* or ridership or "business plan" or viab* or gantt

Previously Disclosed Search Terms:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮

Regards,

**Fiona Tang**
Associate

BOIES SCHILLER FLEXNER LLP
1999 Harrison Street
Suite 900
Oakland, CA 94612
(t) +1 510 874 1108
FTang@bsfllp.com
www.bsfllp.com

14

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]