# EXHIBIT 9

# Andrea P Roberts

| | |
|---|---|
| **From:** | Andrea P Roberts |
| **Sent:** | Monday, July 03, 2017 9:57 AM |
| **To:** | Edward Takashima; Jeff Nardinelli; John Cooper |
| **Cc:** | BSF_EXTERNAL_UberWaymoLit; Matthew Cate; UberWaymoMoFoAttorneys; DG-GPOttoTruckingWaymo@goodwinlaw.com; QE-Waymo |
| **Subject:** | RE: Waymo v. Uber.:  Request to Meet and Confer re: Waymo RFP Responses |

Ed,

You should let us respond before you declare an impasse and demand a briefing schedule. Jeff said on Saturday night that we rejected your demand, sent at 10:36 p.m. on Saturday night, to respond to your very lengthy email concerning dozens of RFPs by Sunday mid-day. We did not agree to provide a response by Sunday. That we had not responded by Sunday mid-day is not "radio silence" as you claim. Further, Waymo responded to the RFPs at issue on June 12. Uber delayed after 5:30 pm on Friday, June 30 to raise these complaints. Uber's delay shows that its claimed urgency is not genuine but rather timed to create a dispute over a holiday weekend.

Now, onto our responses to your email.

*First*, as we explained on the Saturday, July 1 call and in my July 1 email, we want an exchange of search terms to reduce future disputes, not create more of them. The best way to accomplish this is by agreeing to bounds of ESI discovery. As we pointed out on the call, we sent Uber an ESI proposal on May 30. We followed up multiple times. (*See* A. Roberts 6/2/17 email; A. Roberts 6/7/17 email; A. Roberts 6/8/17 email; A. Roberts 6/14/17 email.) Uber never responded. Uber's counsel stated on the call that they were too busy to respond (for the entire month of June) because Uber was "in the throes" of responding to expedited discovery and so had already begun searching for documents in response to Waymo's requests. This is no excuse for Uber's failure to reply. Uber could have, at the very least, sent a courtesy response indicating that its counsel was busy but would respond by a date certain. Further, on more than one call with Special Master Cooper, Mr. Cooper suggested that the parties should agree on search terms, and Waymo's counsel pointed Mr. Cooper and Uber's counsel to the fact that Waymo had proposed an ESI Order and was still waiting on a response from Uber. Uber never gave any indication as to when or whether it would respond. Now, after a month, and after Waymo is well into its searches for documents in response to Uber's document requests, Uber's counsel has taken the position that the parties must urgently exchange information regarding their search protocols. In any event, our position in response to this first point in your email is laid out in my July 1 email. We have not yet received an acknowledgement from Uber that the parties are in agreement on this exchange. Please confirm.

As to the second point in your email, as we explained in our opposition to Uber's motion to compel, there is no dispute here:

> As Waymo already confirmed, Waymo "is searching for and producing documents relating to Project Chauffeur/Waymo regardless of the entity with technical custody over the documents." Dkt. 689-8 at 3…. There is no shell game here. Waymo did issue a general objection to Uber's definition of "Waymo" as including all of Google and Alphabet, but has not claimed to be unable to locate or produce a document because it is a "Google" document. Instead, Waymo applies its general objection where sensible. For example, in response to RFP No. 3 seeking "how often Waymo engineers download documents," Waymo restricted its response to engineers within Waymo, not Google-wide. Dkt. 688-3, Response to RFP No. 3.

1

Dkt. 746 at 6-7. Your description of the July 1 call with the Special Master is incorrect. We did not withdraw our objection to Uber's definition of "Waymo," which included all of Alphabet. It would be unreasonable and irrelevant to search all throughout Alphabet. Instead, we explained – again – that the creation of Waymo as a separate entity in December 2016 is not affecting our search efforts. We are not claiming to be unable to locate documents on the ground that they are "Google" documents. You voiced no objection to this explanation at the time, and the issue seemed resolved.

As to the fourth point in your email, as you stated, we agreed to circle back with Waymo to ask about RFP 95. We will do so.

In response to the third point in your email, regarding the RFPs, Waymo here provides "an email clarifying what it would agree to produce in response to RFP Nos. 2, 18, 21, 36, 54, 63, 66, 95, 119, 120, 121, and 122," as well as RFPs 46 and 53.

RFP 46: Uber wants Waymo's forensic analysis, to the extent it exists, of the computers, email, and other devices of every employee who has resigned from Waymo since January 2009. The only employees at issue in Waymo's complaint are Messrs. Levandowski, Kshirsagar, and Raduta. Accordingly we agreed to produce documents underlying Waymo's analysis of their devices. To the extent your request seeks more, it is irrelevant. Further, any attorney-directed investigations would be privileged.

RFP 53: This RFP asks for documents concerning "when" Waymo began investigating the possibility that Levandowski took Waymo files with him when he resigned. As stated in Waymo's response, that date was July 29, 2016. (Our responses said July 29, 2017; we clarified that typo on the call.) You asked that we confirm that again in an email, which we've done here.

RFP 2, 36: On the July 1 call, we explained that Waymo had produced a host of documents supporting its contention that Waymo robustly protects its trade secrets. We explained that as part of that search Waymo had combed multiple policy repositories. The Special Master asked Waymo to confirm that Waymo believes it has searched all relevant repositories. This email confirms that we have.

RFP 18: Waymo confirms that it has produced all documents concerning public disclosures of Waymo's LiDAR systems located in a reasonably diligent search.

RFP 21: This RFP seeks documents proving Uber's use of Waymo's trade secrets. We explained that Uber's documents, not Waymo's documents, show Uber's use. We explained that we had produced the two documents cited in our complaint – the inadvertent email disclosing Uber's PCB, and the Nevada submission in which Otto claimed to have developed an in-house 64-beam custom LiDAR. There are additionally public documents that suggest use by Uber, such as any document announcing that Uber purchased Otto for $680 million, but there is no need to produce those public documents. Waymo has no other documents responsive to this request.

RFP 54: This request seeks "all versions" of all agreements Waymo has ever required its employees to sign. On the call, you explained that this request concerned Waymo's policies and practices maintaining confidentiality. We explained to you that you would not likely uncover an employment agreement permitting an employee to publicly disclose trade secrets. We also explained that Waymo has already produced these documents from Messrs. Levandowski, Kshirsager, and Raduta. Nevertheless, we are investigating whether there are additional, exemplary documents to produce and will get back to you.

RFP 63, 66, 121, 122: Uber seeks documents showing complaints or dissatisfaction from Waymo personnel (63), further data about employee departures from Waymo including reasons for departing (66, 121), and personnel files (122). We pointed you to specific documents in our production showing Levandowski's dissatisfaction and personnel documents, and stated that documents concerning other employees are irrelevant.

2

We also discussed that these RFPs parallel RFP 65 in many respects; there, we agreed to produce Levandowski's reactions (if any) to Mr. Krafcik's hiring, but objected to searching for others' reactions. RFP 65 is pending before the court. The ruling on RFP 65 will likely bear on the appropriate responses to these RFPs, and it makes little sense to us, particularly before that ruling, to brief these very similar issues.

RFP 95: Discussed above.

RFP 119: We explained that it would be unduly burdensome to locate "all" agreements between Waymo and its vendors/suppliers/customers. We explained that we had already produced an agreement between Waymo and one vendor, and confirmed with Tim Willis that its terms were representative of all such agreements. Uber asked that we (1) confirm again that the produced agreement is "representative", (2) determine what Mr. Willis meant when he said that the agreement was "representative," and (3) confirm that Waymo provided a list of its vendors, suppliers, and customers. As to (3), we confirmed this on the July 1 call and confirm it again here. We will get back to you with respect to (1) and (2).

RFP 120: Uber wants the serial number of Levandowski's work laptop. We asked you why, and in response, you speculated that the serial number might in some way bear on Waymo's forensic investigation. As we stated in our June 12 responses, we have already produced the documents underlying Mr. Gary Brown's declaration concerning Waymo's forensic investigation. *See* WAYMO-UBER-00000648-943. The answer to Uber's question regarding the serial number of Levandowski's computer is provided in that range. That range was produced to Uber over three months ago, on March 23. The answer to Uber's question is: R9RK543. *See* WAYMO-UBER-00000649.

Your email further purported to point out Waymo's deficiencies in producing documents for RFP Nos. 61, 62, 90, 91, 92, 93, 94, 96, and 97. We are considering the positions set forth in your July 1 email at 10:36 pm regarding the purported deficiencies in Waymo's productions in response to these requests and will respond to you on that front as quickly as we can.

Thanks,
Andrea

---

**From:** Edward Takashima [mailto:etakashima@BSFLLP.com]
**Sent:** Sunday, July 02, 2017 8:40 PM
**To:** Andrea P Roberts ; Jeff Nardinelli ; John Cooper
**Cc:** BSF_EXTERNAL_UberWaymoLit ; Matthew Cate ; UberWaymoMoFoAttorneys ; DG-GPOttoTruckingWaymo@goodwinlaw.com; QE-Waymo
**Subject:** RE: Waymo v. Uber.: Request to Meet and Confer re: Waymo RFP Responses

Andrea,

*When* tomorrow will we have your responses?

Regards,

Ed

**Edward H. Takashima**
Partner

BOIES SCHILLER FLEXNER LLP
401 Wilshire Blvd, Suite 850

Santa Monica, CA 90401
(t) +1 310 752 2408
(m) +1 213 399 4154
etakashima@bsfllp.com
www.bsfllp.com

---

**From:** Andrea P Roberts [mailto:andreaproberts@quinnemanuel.com]
**Sent:** Sunday, July 02, 2017 8:28 PM
**To:** Edward Takashima; Jeff Nardinelli; John Cooper
**Cc:** BSF_EXTERNAL_UberWaymoLit; Matthew Cate; UberWaymoMoFoAttorneys; DG-GPOttoTruckingWaymo@goodwinlaw.com; QE-Waymo
**Subject:** RE: Waymo v. Uber.: Request to Meet and Confer re: Waymo RFP Responses

John,

We will not respond to Uber's counsel's rhetoric today. We will provide a response tomorrow.

Thanks,
Andrea


**Andrea Pallios Roberts**
*Of Counsel,*
Quinn Emanuel Urquhart & Sullivan, LLP

555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
650-801-5023 Direct
650.801.5000 Main Office Number
650.801.5100 FAX
andreaproberts@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Edward Takashima [mailto:etakashima@BSFLLP.com]
**Sent:** Sunday, July 02, 2017 12:44 PM
**To:** Jeff Nardinelli <jeffnardinelli@quinnemanuel.com>; John Cooper <JCooper@fbm.com>
**Cc:** BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; Matthew Cate <MCate@fbm.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; DG-GPOttoTruckingWaymo@goodwinlaw.com; QE-Waymo <qewaymo@quinnemanuel.com>
**Subject:** RE: Waymo v. Uber.: Request to Meet and Confer re: Waymo RFP Responses

John,

This radio silence on a simple question is disturbing. Can we please have a response this afternoon to the issues in Waymo's court (with the exception of the certain RFPs where they have until Monday or Wednesday to respond), and a response to my email of yesterday, by this afternoon? If we are indeed at an impasse on a number of RFPs—as I am afraid we are—then we would like to set a briefing schedule this afternoon so that we can take our disputes to Judge Corley and get them resolved.

4

Thank you,

Ed

**Edward H. Takashima**
Partner

**BOIES SCHILLER FLEXNER LLP**

401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
(t) +1 310 752 2408
(m) +1 213 399 4154
etakashima@bsfllp.com
www.bsfllp.com

---

**From:** Edward Takashima
**Sent:** Saturday, July 01, 2017 11:28 PM
**To:** 'Jeff Nardinelli'; John Cooper
**Cc:** BSF_EXTERNAL_UberWaymoLit; Matthew Cate; UberWaymoMoFoAttorneys; DG-GPOttoTruckingWaymo@goodwinlaw.com; QE-Waymo
**Subject:** RE: Waymo v. Uber.: Request to Meet and Confer re: Waymo RFP Responses

Jeff:

When will we receive your responses, both to the points in my email and the issues where Waymo agreed to respond in the first instance this morning?

**Edward H. Takashima**
Partner

**BOIES SCHILLER FLEXNER LLP**

401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
(t) +1 310 752 2408
(m) +1 213 399 4154
etakashima@bsfllp.com
www.bsfllp.com

---

**From:** Jeff Nardinelli [mailto:jeffnardinelli@quinnemanuel.com]
**Sent:** Saturday, July 01, 2017 11:25 PM
**To:** Edward Takashima; John Cooper
**Cc:** BSF_EXTERNAL_UberWaymoLit; Matthew Cate; UberWaymoMoFoAttorneys; DG-GPOttoTruckingWaymo@goodwinlaw.com; QE-Waymo
**Subject:** Re: Waymo v. Uber.: Request to Meet and Confer re: Waymo RFP Responses

Ed,

Having already submitted to an accelerated meet and confer on 23 RFPs to which we issued our responses 3 weeks before you raised any complaint, we respectfully decline your unilaterally-imposed deadline to respond to your tome, sent at 10:36 Friday night, by "mid-day tomorrow." The inaccuracies in your email below are legion, and it will take more time than that to address them.

Jeff

------ Original message------
**From:** Edward Takashima
**Date:** Sat, Jul 1, 2017 7:36 PM

5

**To:** John Cooper;
**Cc:** BSF_EXTERNAL_UberWaymoLit;Matthew Cate;UberWaymoMoFoAttorneys;DG-GPOttoTruckingWaymo@goodwinlaw.com;QE-Waymo;
**Subject:** RE: Waymo v. Uber.: Request to Meet and Confer re: Waymo RFP Responses

John and Counsel,

I write to follow up on this morning's meet and confer.

*First*, with respect to the exchange of information about our respective searches that we discussed at the outset of our call, we would like to be clear that we are proposing the exchange of lists containing:
(1) the custodians whose files are being searched, and the search parameters for each;
(2) the non-custodial repositories being searched, and the search parameters for each;
(3) with search parameters including search terms (if they are being used), date ranges, or any other limitations on what part of the custodial files or repositories are being searched for responsive documents.

*Second*, Waymo's counsel represented that they are not standing on their objections of the definitions of "Waymo," "Plaintiff," "You," and "Your," and are not narrowing those terms to exclude Google, Alphabet, their affiliates, or the other entities specified in RFP definition no. 17. As a result, our understanding is that, for example, (1) Waymo will produce responsive documents in the possession, custody, or control of Google or Alphabet, and (2) Waymo is interpreting references to "Waymo" in the RFPs as including Google and Alphabet. Please confirm that this is correct. If it is not correct, please explain.

*Third*, with respect to the RFPs:

We understand that the parties have reached an impasse with respect to RFP Nos. 46 and 53.

Waymo will follow up with an email clarifying what it would agree to produce in response to RFP Nos. 2, 18, 21, 36, 54, 63, 66, 95, 119, 120, 121, and 122. If Waymo is agreeing to produce precisely what we have requested in the relevant RFP, please say so. If Waymo is not, please explain what Waymo is producing and what Waymo is withholding from production. This will allow us to determine whether we are at an impasse.

With respect to RFP Nos. 61, 62, 90, 91, 92, 93, 94, 96, and 97, I agreed to provide an explanation as to why Uber views Waymo's RFP responses as insufficient. That explanation follows.

RFP 61: Documents relating to Waymo's financial viability, including but not limited to internal business plans, estimates, and future projections at Waymo or Project Chauffeur.
- Waymo cited documents produced in response to Expedited Request No. 4 to Dan Chu, and stated it would produce "documents sufficient to show Waymo's financial viability, including projections for revenue generation and profitability."
- The response is insufficient for at least four reasons:
    - First, the types of documents Waymo cites as examples of what it will produce are high-level presentations, such as a marketing power-point and a "strategy update." The most in-depth document of those noted is a spreadsheet containing mainly ridership projections. These do not come close to sufficiently showing the details of Waymo's financial viability, or even what Google and Waymo executives thought of these ridership projections or how they were developed.
    - Second, our understanding from today's call is that Waymo is limiting its production to "final" business documents and not including drafts or interim version. However, those draft or interim documents are likely to contain relevant non-duplicative information. For example, there may be material changes between draft and final documents.

6

- o Third, communications concerning both draft and final documents are relevant. For example, communications between Waymo personnel about financial projections may contain additional detail or further analysis, or alternatively express skepticism or critiques of "final" documents.
- o Fourth, there may be communications that contain highly relevant information about Waymo's financial viability, even if those communications do not concern draft or final documents. For example, discussions between executives about business plans are relevant but would not be captured in what we understand Waymo has agreed to produce.

RFP 62: Documents relating to Waymo's performance, including but not limited to the development of and progress assessment for any schedules and milestones at Waymo LLC or Project Chauffeur.
- Waymo cited documents produced in response to Expedited Request No. 4 to Dan Chu, and stated it would produce "documents sufficient to show Waymo's performance."
- The response is insufficient for at least four reasons:
    - o First, the types of documents Waymo cites as examples of what it will produce are the same presentations and spreadsheet cited for RFP 62. This does not sufficiently show Waymo's performance in terms of development, progress assessment/milestones, or in any other capacity.
    - o The second, third, and fourth reasons are essentially the same as the second, third and fourth reasons set forth above for RFP 61: we are seeking draft and interim documents as well as "final" documents; communications about those documents; and communications concerning Waymo's performance.

RFP 90: Documents relating Waymo's estimates of the size of the ride-sharing market in the United States for each of the last six years.
- Waymo cited a document produced in response to Expedited Request No. 1 to Dan Chu, and stated it would "not produce additional documents."
- The response is insufficient for at least four reasons:
    - o First, the document referenced is one page of a presentation with a barebones analysis of Uber's performance. This does not sufficiently show Waymo's estimates of the overall ride-sharing market for each of the last six years, much less show what Google and Waymo employees thought of these estimates or how they were developed.
    - o The second, third, and fourth reasons are essentially the same as the second, third and fourth reasons set forth above for RFP 61: we are seeking draft and interim documents as well as "final" documents; communications about those documents; and communications concerning Waymo's estimates about the ride-sharing market.

RFP 91: Documents relating to Waymo's forecasts of the size of the ride-sharing market in the United States for each of the next six years.
- Waymo cited documents produced in response to Expedited Request No. 2 to Dan Chu, and stated it would "not produce additional documents."
- The response is insufficient for at least four reasons:
    - o First, the types of documents Waymo cites as examples of what it will produce are a basic presentation about the TaaS market and two similar pages from other presentations. Among other things, most of those presentations do not specify what years the forecast apply to. These do not sufficiently show Waymo's forecasts of the overall ride-sharing market, much less show what Google and Waymo employees thought of these forecasts or how they arrived at them.
    - o The second, third, and fourth reasons are essentially the same as the second, third and fourth reasons set forth above for RFP 61: we are seeking draft and interim documents as well as "final" documents; communications about those documents; and communications concerning Waymo's forecasts about the ride-sharing market.

RFP 92: Documents relating to Waymo's forecasts regarding the number of Waymo's ride-sharing vehicles in the United States, for each of the next six years—broken out by U.S. city and on a quarterly basis.
- Waymo cited a document produced in response to Expedited Request No. 3 to Dan Chu, and stated it would "not produce additional documents."
- The response is insufficient for at least four reasons:
    - First, the document Waymo cites having sufficiently responded to this request is a single spreadsheet with ridership projections that does not show what Google and Waymo employees thought of these projections or how they arrived at them. The sole document cited also is not sufficient to show how these ridership projections were developed, or how Waymo's projections changed over time.
    - The second, third, and fourth reasons are essentially the same as the second, third and fourth reasons set forth above for RFP 61: we are seeking draft and interim documents as well as "final" documents; communications about those documents; and communications concerning Waymo's forecasts about the ride-sharing market.

RFP 93: Documents relating to Waymo's business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and investment plans for its ride-sharing business.
- Waymo cited a document produced in response to Expedited Request No. 4 to Dan Chu, and stated it would "not produce additional documents."
- The response is insufficient for at least four reasons:
    - First, the types of documents Waymo cites as examples are the same seven high-level presentations and one spreadsheet cited RFP 61. These documents are not adequate to show Waymo's business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and investment plans. Moreover, these documents do not show what Google and Waymo employees thought of Waymo's plans, or how those plans were developed.
    - The second, third, and fourth reasons are essentially the same as the second, third and fourth reasons set forth above for RFP 61: we are seeking draft and interim documents as well as "final" documents; communications about those documents; and communications concerning Waymo's business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, and investment plans for its ride-sharing business.

RFP 94: All documents relating to Waymo's analysis of any barriers to entry in the ride-sharing market and the status of any attempts by Waymo to overcome any such barriers, including investments and infrastructure needed.
- Waymo cited documents produced in response to Expedited Request No. 5 to Dan Chu, and stated it would "not produce additional documents."
- The response is insufficient for at least four reasons:
    - First, the types of documents Waymo cites as examples are the same seven high-level presentations and one spreadsheet cited RFP 61. These documents are not adequate to show Waymo's analysis of any barriers to entry in the ride-sharing market and the status of any attempts by Waymo to overcome any such barriers, including investments and infrastructure needed. Moreover, these documents do not show what Google and Waymo employees thought of Waymo's analyses of barriers to entry or Waymo's attempts to overcome such barriers to entry.
    - The second, third, and fourth reasons are essentially the same as the second, third and fourth reasons set forth above for RFP 61: we are seeking draft and interim documents as well as "final" documents; communications about those documents; and communications concerning Waymo's analysis of any barriers to entry in the ride-sharing market and the status of any attempts by Waymo to overcome any such barriers, including investments and infrastructure needed.

RFP 96: All documents relating to Waymo's discussion of Uber or its business.
- Waymo cited documents it already produced and stated that it would "supplement its production of documents sufficient to show Waymo's knowledge of Defendants' autonomous vehicle program, including discussion of Defendants' self-driving car business."
- The response is insufficient for at least five reasons:
    - First, the types of documents Waymo cites as examples of what it will produce are from simplistic presentations, featuring various simplified charts related to Uber's business. These do not sufficiently show Waymo's discussions of Uber or its business.
    - The second, third, and fourth reasons are essentially the same as the second, third and fourth reasons set forth above for RFP 61: we are seeking draft and interim documents as well as "final" documents; communications about those documents; and communications about Uber or its business.
    - Fifth, Waymo limited its response to Uber's autonomous vehicle program. Documents relating to Waymo's discussion of Uber's ride-sharing business are also relevant to this case and must be produced.

RFP 97: All documents relating to Waymo's analysis of Uber or its business.
- Waymo cited documents it already produced and stated that it would "supplement its production of documents sufficient to show Waymo's knowledge of Defendants' autonomous vehicle program, including discussion of Defendants' self-driving car business."
- The response is insufficient for at least five reasons:
    - First, the types of documents Waymo cites as examples of what it will produce are from simplistic presentations, featuring various simplified charts related to Uber's business. These do not come close to sufficiently showing Waymo's discussions of Uber or its business, much less show what Google and Waymo employees thought of these projections or how they arrived at them.
    - The second, third, and fourth reasons are identical to those identified for RFP 61.
    - Fifth, the RFP calls for Waymo's *analysis* of Uber, but Waymo states it will produce documents sufficient to show "discussion" of Uber's autonomous vehicle business. It is not clear whether Waymo is producing or withholding *analyses*.
    - Sixth, Waymo limited its response to Uber's autonomous vehicle program. Documents relating to Waymo's discussion of Uber's ride-sharing business are also relevant to this case and must be produced.

Fourth, I want to address one point with respect to RFP 95 (calling for documents relating to financial analyses and projections of the Waze acquisition). Waymo's counsel represented that there were no responsive documents when Waymo's responses were served, and is circling back with Waymo to confirm that is still the case. We appreciate that. However, it is hard for us to understand how there could be *no* documents relating to financial analyses of the Waze acquisition relating to Google's ride-sharing business, given that among other things Google is competing in the ride-sharing business *through* Waze Rider. We ask that Waymo's counsel explain this.

We look forward to receiving Waymo's responses on the other issues and RFPs discussed on this morning's call, hopefully by tomorrow morning. We ask that Waymo respond regarding the specific RFPs above by mid-day tomorrow so that we can determine whether we are at an impasse on these issues and if necessary ask the Special Master to set a briefing schedule so that we may promptly resolve our disputes before the Court.

Regards,

Ed

9

**Edward H. Takashima**
Partner

**BOIES SCHILLER FLEXNER LLP**
401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
(t) +1 310 752 2408
(m) +1 213 399 4154
etakashima@bsfllp.com
www.bsfllp.com

---

**From:** John Cooper [mailto:JCooper@fbm.com]
**Sent:** Friday, June 30, 2017 6:20 PM
**To:** Edward Takashima
**Cc:** BSF_EXTERNAL_UberWaymoLit; Matthew Cate; UberWaymoMoFoAttorneys; DG-GPOttoTruckingWaymo@goodwinlaw.com; QE-Waymo
**Subject:** Re: Waymo v. Uber.: Request to Meet and Confer re: Waymo RFP Responses

Counsel

We will have a meet and confer session on this tomorrow at 10:00 am. The call in number is 888 759 6039 access 415 954 4410. John

Sent from my iPhone; dictated to Siri

On Jun 30, 2017, at 5:47 PM, Edward Takashima <etakashima@BSFLLP.com> wrote:

> John and Counsel,
>
> We request a meet and confer tomorrow to discuss Waymo's deficient responses to Uber and Ottomotto's ("Uber's") first and second set of RFPs. These deficiencies are in addition to issues we have already discussed. In light of the upcoming depositions, we want to resolve these issues or take them to Judge Corley as soon as possible.
>
> First, in several responses to Uber's Requests for Production, Waymo responded by promising documents "sufficient to show" or otherwise limited in scope what Uber requested. Of those that Uber has not yet moved to compel further production on, they are as follows: RFP Nos. 2, 18, 21, 36, 46, 53, 54, 61, 62, 63, 66, 90, 91, 92, 93, 94, 95, 96, 97, 119, 120, 121, and 122.
>
> - By way of illustration, RFP Nos. 2, 18, and 21 concern LiDAR design and the alleged trade secrets. Request No. 2 asked for "documents supporting Waymo's contention that "Waymo's LiDAR technology is subject to robust measures to protect its secrecy . . ." Request No. 18 asked for "All documents relating to any aspect of Waymo's LiDAR design that is public information . . ." Request No. 21 asked for "All documents supporting Waymo's contention that Uber is using any Alleged Waymo Trade Secret. . ."
>
> - Waymo replied that it would provide "additional documents" in response to No. 2, that it would produce "documents" in response to No. 18, and that it had already produced

10

documents "sufficient to show" in response to No. 21. Not once for these three RFPs did Waymo agree to provide the requested scope of documents, even though Uber was asking about core trade secret issues.

Second, as a further example of the kind of "stonewalling" that Judge Alsup discussed in yesterday's CMC hearing (6/29/17 hrg. transcript at 87), Waymo refused to produce any additional documents whatsoever in response to RFP Nos. 46, 53, 90, 91, 92, 94, and 120.

- Several of these requests concern Waymo's business models, forecasts, and plans that will prove critical to assessing any potential damages as well as to fact development concerning Waymo's drive to compete with Uber.

- Further, for related requests where Waymo agreed to produce documents, Waymo consistently narrowed its production to documents "sufficient to show" (*See, e.g.*, RFP Nos. 62, 93, 96, 97).

We reserve our rights to raise further issues with Waymo's RFP responses, in particular as we analyze Waymo's document production.

We ask that Waymo immediately amend its responses to the above requests by agreeing to produce *all* requested documents, and that it then produce the requested documents by July 6, so that Uber is not further prejudiced. Depositions are about begin and any further delay by Waymo in producing documents will irreparably affect Uber's ability to defend itself. Should Waymo refuse any of these requests, we request that you set an expedited briefing schedule for a motion to compel so that we can resolve this issue by the end of next week.

Regards,

Ed

**Edward H. Takashima**
Partner

BOIES SCHILLER FLEXNER LLP
401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
(t) +1 310 752 2408
(m) +1 213 399 4154
etakashima@bsfllp.com
www.bsfllp.com

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

_____

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

---

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

---

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

---

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]