# EXHIBIT O

# UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# EXHIBIT 7

**Andrea P Roberts**

| | |
|---|---|
| **From:** | John McCauley |
| **Sent:** | Monday, December 04, 2017 9:31 AM |
| **To:** | Andrea P Roberts |
| **Subject:** | FW: Waymo v. Uber - Request for Meet & Confer re Waymo ROG Responses |

**John McCauley**
*Associate,*
**Quinn Emanuel Urquhart & Sullivan, LLP**
johnmccauley@quinnemanuel.com

---

**From:** Jeff Nardinelli
**Sent:** Tuesday, August 08, 2017 11:29 PM
**To:** Maxwell Pritt <mpritt@BSFLLP.com>; John Cooper <JCooper@fbm.com>
**Cc:** QE-Waymo <qewaymo@quinnemanuel.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; Matthew Cate <MCate@fbm.com>; DG-GPOttoTruckingWaymo@goodwinlaw.com
**Subject:** RE: Waymo v. Uber - Request for Meet & Confer re Waymo ROG Responses

Max,

Responses inline in bold, but as an initial matter, for many of the issues you list below, it seems sufficient to produce documents located by running the agreed-upon search terms over the agreed-upon custodians and producing responsive documents.  Is Uber asking that Waymo run additional search terms over additional custodians in addition to the parties' agreement and Judge Corley's order?  (Dkt. 1094).  If so please provide your basis for doing so in light of the parties' extensive negotiations of terms.

Jeff

---

**From:** Maxwell Pritt [mailto:mpritt@BSFLLP.com]
**Sent:** Sunday, August 06, 2017 9:59 PM
**To:** John Cooper <JCooper@fbm.com>
**Cc:** QE-Waymo <qewaymo@quinnemanuel.com>; UberWaymoMoFoAttorneys <UberWaymoMoFoAttorneys@mofo.com>; BSF_EXTERNAL_UberWaymoLit <BSF_EXTERNAL_UberWaymoLit@BSFLLP.com>; Matthew Cate <MCate@fbm.com>; DG-GPOttoTruckingWaymo@goodwinlaw.com
**Subject:** RE: Waymo v. Uber - Request for Meet & Confer re Waymo ROG Responses

Thanks, John.

We'd also like to meet and confer about some of Waymo's objections and responses to Uber's RFP sets 4 and 5.

RFP 164:  Waymo limits this request to emails in Mr. Page's custodial files about the possibility of partnering with Uber.  But this request seeks documents in additional to emails about the possibility of partnering (or not partnering)

with Uber, and is not limited to emails in Mr. Page's custodial files. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Kalanick also met with Mr. Thrun in 2014.  Please confirm that you will, at a minimum, also search the email data of Mr. Krafcik, Mr. Drummond, Mr. Vosen, and Mr. Thrun for any documents and emails responsive to this request.   There are also documents like WAYMO-UBER-00001492, which discuss ▮▮▮▮▮▮▮▮▮▮  Please confirm you will search for and produce all related documents and communications.

**We did not limit our search to Mr. Page's email data.  We have previously searched for responsive documents in response to RFPs 96-97 and are searching for the terms agreed to by the parties over the list of custodians agreed to by the parties, and will produce all responsive documents located through that search.**

RFP 165:  Jeff wrote on August 2 (10:29am) that he "did not agree to produce 'all documents' about the subjects [I inquired about in my 8/2 9:36am email], because to find 'all documents' would require searching every document at Alphabet just to make sure we didn't miss a single one."  Conducing a reasonable, good faith investigation to identify all responsive documents does not require Waymo to search "every" document at Waymo, Google and Alphabet; it does, however, require a good faith, reasonable investigation to try to identify where all responsive documents might be located and then review what is found.  Please confirm that Waymo will conduct such an investigation for: (a)  "the amount and timing of payments made to employees under the Project Chauffeur bonus program," which is what Waymo agreed to search for and produce in its written response; (b) the development and approval of the Project Chauffeur bonus program and the Chauffeur award program; (c) the 2015 and 2016 Project Chauffeur bonus payments/valuations; and (d) the financial impact or liability of the 2015 and 2016 Project Chauffeur bonus payments/valuations, including impacts on employee retention.  Please also confirm that Waymo will produce 2015 and 2016 compensation and bonus amounts for Waymo employees working on autonomous vehicles or technology (broken down by employee).

**In addition to running the terms agreed to by the parties over the list of custodians agreed to by the parties and producing all responsive documents located, Waymo is additionally searching for documents sufficient to show the amount and timing of all payments made to employees under the Project Chauffeur bonus program.**

RFP 166:  Waymo states, without explanation, that it is "not tenable or propositional to locate every document involving any complaint, argument, dispute, or conflict relating to Mr. Levandowski," but then responds that it "has already produced Mr. Levandowski's performance evaluations and [sic] as well as all emails concerning complaints, arguments, disputes, conflicts, and evaluations involving Mr. Levandowski."  Please explain what "involving Mr. Levandowski" means, and confirm that Waymo's search includes looking for responsive documents in the custodial files/emails of (a) Mr. Levandowski's supervisors, (b) HR personnel (e.g., Jolie Sorge, Michael Lin, Joanne Chin), and (c) senior business custodians.

**Waymo has produced responsive documents located after talking with HR personnel and will further produce all responsive documents located by running the terms agreed to by the parties over the list of custodians agreed to by the parties.**

RFP 168:  Waymo states it "will not general search for all communications [in Mr. Drummond's custodial files] relating to Defendants in any way."  Please confirm you will search for/produce emails relating to competing/competition with Defendants, emails complimenting or criticizing Uber or its employees; and emails relating to Defendants and Defendants' or others' confidential, proprietary or trade secret information.

**Waymo will produce all responsive documents located by running the terms agreed to by the parties over Mr. Drummond's email data.  Waymo defines responsive as "relating to ride-sharing or TaaS, self-driving vehicles or self-driving technology, Mr. Levandowski, and this Action," but does not agree to**

produce documents, such as emails concerning Uber or its employees, unrelated to ride-sharing or TaaS, self-driving vehicles or self-driving technology, Mr. Levandowski, or this Action.

RFP 170:  Waymo states it will produce "all documents relating to Waymo's acquisitions in the self-driving space."  But the request asks for documents about transactions, not just acquisitions, and not just completed ones.  Please confirm you will produce these documents.  Please also confirm that you will produce documents regarding any potential or actual acquisition by Waymo and other Alphabet entities "that can be or has been characterized as an 'acqui-hire,' and any transaction with a company or companies that had yet to commercialize any of its products or tangible assets, including intellectual property."

**Waymo stands by its written response:  "Waymo will produce all documents relating to Waymo's acquisitions in the self-driving space, including Waymo's due diligence into those acquisitions and related compensation, bonuses, or equity, as located through a reasonably diligent search."**

RFP 171:  Waymo refuses to produce documents about demands and claims made against former employees or their subsequent employers.  Whether and to what extent Waymo and other Alphabet entities have pursued (or not pursued) former employers or their subsequent employers for trade secret misappropriation or patent infringement is relevant.  Please confirm that you will produce such documents.

**Other than producing or logging documents concerning Waymo's investigation into Mr. Levandowski, Mr. Raduta, and Mr. Kshirsagar, Waymo stands by its objection.**

RFP 172:  Waymo states that it will produce all documents relating to Waymo's acquisitions in the self-driving space, including Waymo's due diligence into those acquisitions.  Again, this request is not limited to acquisitions.  Please confirm that you will produce the requested documents regarding "any transaction contemplated, anticipated, initialed or completed by Waymo (including but not limited to any acquisitions, mergers, joint ventures, partnerships, or investments)."  Please also confirm that you will produce documents sufficient to show other Alphabet entities' due diligence processes, procedures, and protocols related to confidential, proprietary or trade secret information and intellectual property, and the employment or retention of attorneys, consultants or vendors in those processes.

**Waymo stands by its written response:  "Waymo will produce all documents relating to Waymo's acquisitions in the self-driving space, including Waymo's due diligence into those acquisitions, as located through a reasonably diligent search."**

RFPs 174 & 175:  Waymo states that it has "already produced Google-wide policies and communications prohibiting Google employees from bringing trade secret or proprietary information into Google," and "will not produce additional documents responsive to th[ese] request[s]."  It is unclear if Waymo is representing that it has already produced all of the documents (regardless of whether they are located at Waymo, Google or Alphabet) responsive to these requests after conducting a good-faith, reasonable investigation;  or if Waymo is refusing to search for or produce certain documents, such as documents regarding any investigations performed to identify other company's confidential, proprietary or trade secret information.  To the extent Waymo is withholding responsive documents based on its claims that "Google's and Waymo's efforts to prohibit wrongful entry of confidential information are not relevant to Uber's efforts to prevent such wrongful entry," and that "Waymo's treatment of any proprietary or trade secret information that entered Waymo or came into Waymo's possession is not relevant," Waymo's objections are improper.  Waymo has placed Uber's efforts to prevent employees from bringing or using former employers' confidential, proprietary or trade secret information, and the due diligence performed by MoFo and Stroz, at the heart of its case.  Whether Waymo and other Alphabet entities failed to take efforts to prohibit, sequester, or otherwise prevent other companies' confidential, proprietary, or trade secret information from entering Waymo or Google/Alphabet, or take similar or less thorough efforts than Uber, and whether there have been instances in which such information has in fact entered Waymo or Google/Alphabet, is thus highly relevant to Waymo's allegations and accusations.  Please confirm that you will produce the requested documents.

**Waymo has produced all responsive policy documents as located through a reasonably diligent search.  Waymo further stands by its written response:  "Waymo has already produced Google-wide policies and communications prohibiting Google employees from bringing trade secret or proprietary information into Google.  Waymo will not produce additional documents responsive to this request."**

Best,
Max

---

**From:** John Cooper [mailto:JCooper@fbm.com]
**Sent:** Sunday, August 06, 2017 3:21 PM
**To:** Maxwell Pritt
**Cc:** QE-Waymo; UberWaymoMoFoAttorneys; BSF_EXTERNAL_UberWaymoLit; Matthew Cate; DG-GPOttoTruckingWaymo@goodwinlaw.com
**Subject:** Re: Waymo v. Uber - Request for Meet & Confer re Waymo ROG Responses

Counsel

Meet and confer is scheduled for tomorrow morning at 9:30. Call in 888 759 6039 access 415 954 4410.

John

Sent from my iPhone; dictated to Siri

On Aug 6, 2017, at 2:38 PM, Maxwell Pritt <mpritt@BSFLLP.com> wrote:

> Dear John and Counsel,
>
> Uber requests a meet and confer on Waymo's objections and responses (and failures to respond) to Uber's ROG sets three, four, and five.  I will email separately about Waymo's responses to RFPs sets 4 and 5.
>
> Failure to Respond to ROGs 26 and 27:  Waymo did not respond to ROGs 26 and 27, claiming that it believed "Uber/Otto were limited to a total of 25 interrogatories."  Waymo cites Andrea Roberts' emails from June 8 and June 21 noting that the parties were seeking clarification from the Special Master concerning how many interrogatories each party could serve.  The parties did seek that clarification on June 22 and the Special Master ruled that the plan language of FRCP 33 governs and each party could serve 25 interrogatories on a party, that is, Waymo could serve 25 interrogatories on each of the three defendants and each of the three defendants could serve 25 interrogatories on Waymo.  *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 217 F.R.D. 288, 288–89 (D. Mass. 2003) ("Under the plain terms of Rule 33(a), each defendant could, without leave of court, serve 25 interrogatories on the plaintiff.").  Wendy Ray and I were on this call and have reviewed our records, which reflect this ruling.  I also confirmed the ruling again on another meet and confer call a few weeks later, specifically raising our understanding that each party, including each of Uber and Ottomotto, could serve 25 interrogatories, which the Special Master confirmed again.  Please let us know if you will respond to ROGs 26 and 27, and the remaining outstanding ROGs from Uber and Ottomotto.
>
> Objections to ROGs set 3-5 and RFPs set 4-5:  Waymo responds to many of these requests but also includes unexplained boilerplate objections, like "unduly burdensome, oppressive, overly broad, and not proportional," "vague and ambiguous," and "compound, complex and contains multiple subparts."  *See, e.g.*, *Synopsys, Inc. v. ATopTech, Inc.*, 319 F.R.D. 293, 298 (N.D. Cal. 2016) (subparts are permissible as long as they are related to the same subject or contention); *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 1221924, at *2 (N.D. Cal. 2015) (same); *Johnson v. Cate*, 2014 WL 1419816, at *2 (E.D. Cal.

4

2014) (collecting caselaw overruling boilerplate, unexplained objections like "unduly burdensome," "irrelevant," "overbroad," and "vague and ambiguous") (collecting caselaw).  For each of these requests, please let us know if Waymo is withholding any responsive documents or information on the basis of an objection.  If so, please identify the specific requests and objection, and the basis for the objection.

ROGs 15-17:  Waymo responded to each of these interrogatories relying entirely on FRCP 33(d) and citing business records, and also referring to deposition transcript in response to ROG 15.  References to depositions are not permitted.  *E.g.*, *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG(DMR), 2016 WL 2342128, at *1–3 (N.D. Cal. May 3, 2016) ("Incorporation by reference is not a responsive answer"; an interrogatory response "should be complete in itself and should not refer to the pleadings, or to depositions or other documents," and can only incorporate another interrogatory responses if doing so does not require "an elaborate comparison of answers").  Please amend your response to ROG 15.

We are in the process of reviewing your citations to business records in response to these interrogatories.  We note, however, that a "responding party may not abuse the [Rule 33(d)] option by directing the propounding party to a mass of undifferentiated records."  *Id.*; *Hash v. Cate*, No. C 08-03729 MMC DMR, 2012 WL 6043966, at *3 (N.D. Cal. Dec. 5, 2012) (plaintiff "may not refer to other discovery responses or external documents in his [interrogatory] responses").  Furthermore, if only "some pertinent information may be found in the documents, this is not enough[.]"  *In re Lithium Ion Batteries Antitrust Litig.*,  2015 WL 4999762, at *3 (N.D. Cal. Aug. 21, 2015) (it is the responding party's "burden to show that the documents contain complete answers to the interrogatory").

ROG 18:   Waymo's response appears to be limited to steps taken in deciding "whether or not to acquire or enter a commercial partnership or joint venture," but the request also asks about steps Waymo takes in deciding whether to "invest in any company or entity."  The response identifies industry consultants but does not "describe the roles and purpose of [those] consultants" at any given stage in the process.  The response refers to "further steps" after executing an NDA but it is unclear whether the response describes each step.  The response is otherwise exceedingly vague: it says Waymo's teams' objectives are to "acquire information" (what sort of information?), "answer questions" (what types of questions?), and "explore technical requirements and potential transactions structures" (again, what types?).  The response also only refers generally to "a partnership manager," "the legal department," "Waymo's management team," and "further legal review," but does not explain, for example, who are the "partnership manager[s]," who is part of the "management team," whether the legal department includes Google/Alphabet attorneys, who conducts the "further legal review."  The response also states that Waymo has retained outside counsel "on limited occasions," but fails to explain anything about those occasions.  Waymo also states that it has not "retained forensic analysis firms to assist in any part of the process described in this response," but fails to state whether that includes any such firms hired by Waymo's consultants or outside counsel, or whether any Alphabet entities other than Waymo have retained forensic analysis firms.  Whether Google/Alphabet (or their attorneys or consultants) have retained forensic analysis firms or conducted forensic investigations in connection with due diligence processes  is plainly relevant given Waymo's allegations and accusations about the diligence performed by MoFo and Stroz.  Please supplement this response.

ROG 19:  Like with ROG 18, Waymo's response does not describe efforts taken in connection with investments contemplated or completed by Waymo.  The response also states that Waymo uses NDAs but does not explain anything about the NDAs—what language/provisions protect confidential information shared by Waymo, does Waymo ever share confidential information without using an NDA, what times has Waymo used an NDA and with whom, etc.  The response says Waymo "trains its employees on the treatment of confidential information" but does not describe how it trains its employees—e.g., what does that training entail, how often is there training, etc.  The response states vaguely that Waymo "holds all employees to the standard of care described in the employee handbook, employee code of conduct, employment and confidentiality agreements, and numerous other Google

policies relating to security and confidentiality"; that is plainly insufficient—e.g., how does Waymo hold its employees to any given standard of care, what are those standards, what are the "numerous other Google policies relating to security and confidentiality"?  The response also vaguely states that Waymo "limits information access as much as possible," but provides no explanation whatever regarding how Waymo limiting information access.  Please supplement this response.

ROGs 20 and 24:  Waymo refuses to respond to these requests, presumably based on the objection that efforts taken by Waymo and other Google/Alphabet entities "to prohibit, sequester, or otherwise prevent confidential, propriety, or trade secret information of any other company or entity from entering" their businesses (ROG 20), and the instances in which such information has entered Waymo and other Alphabet entities (ROG 24), are not relevant.  But Waymo has placed Uber's efforts to prevent new employees from bringing or using former employers' confidential, proprietary or trade secret information, and the due diligence performed by MoFo and Stroz, at the heart of this litigation.  Thus, the extent to which other companies' trade secrets came into the possession of Waymo and other Alphabet entities, and the extent to which Waymo and other Alphabet entities failed to take efforts, or took similar or less comprehensive efforts than Uber, to prevent such information from entering Waymo, is plainly relevant.  Please provide full and complete answers to these requests.

ROG 21:  Uber cannot ascertain a complete answer to this interrogatory by referring to the documents Waymo listed.  *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 4999762, at *3 (N.D. Cal. Aug. 21, 2015) (holding if only "some pertinent information may be found in the documents, this is not enough"; it is the responding party's "burden to show that the documents contain complete answers to the interrogatory").  The documents are missing metadata that is needed to interpret them, such as date/time; it's unclear whether or not the documents are drafts; the custodian names on all the files is "Google," which makes it difficult to know who contributed to them, signed off on them, or received them;  the P&L statements include financial information for future dates and do not give context for the assumptions underlying the information.  Even Waymo's employees were confused by the lack of this information.  (*See* Haroon Tr. 201:23-202:5 ("Q: Just looking at the file name in the middle of the document here, can you tell whether that is the file name for the final—or the official version of the P&L? A: I can't because it—this file name looks like it was the file name from downloading from Google Drive into [Excel], and I don't recognize a lot of this tag.").)  Also, eight of the 35 "documents" you identify are just different pages of the same document: WAYMO-UBER-00004108, WAYMO-UBER-00004132, WAYMO-UBER-00004137, WAYMO-UBER-00004155, WAYMO-UBER-00004175, WAYMO-UBER-00004195, WAYMO-UBER-00004234.  Please supplement this response with a full and complete answer.

ROG 22:  Waymo responds that will produce at some point in the future responsive documents to the extent they "relate to communications had by Mr. Drummond in the context of his roles at Google and Alphabet."  It is unclear what Waymo means by "the context of his roles at Google and Alphabet."  Please explain whether Waymo intends this phrase to limit its obligation to provide a full and complete answer to this interrogatory, and identify when Waymo will supplement its response with an answer to this request.  Please also explain the basis for the objection and assertion that "any responsive information related to Mr. Drummond's role on Uber's Board of Directors is in Uber's possession."  Presumably information about communications Mr. Drummond had regarding his "role on Uber's Board of Directors" with individuals other than Uber employees would not be "in Uber's possession."

ROG 23: Waymo's response only identifies and cites documents about the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  We are evaluating the referenced documents to see if they contain the information requested.  But this request is not limited to acquisitions; it also includes mergers, joint ventures, partnerships, and investments.  Waymo's response

6

also does not appear to describe other Google/Alphabet entities' transactions motivated primarily or in part by acquiring, hiring or recruiting employees/talent.   Please supplement with this information.

ROG 25:  Waymo's response improperly incorporates by reference depositions, briefs, and another interrogatory.  *E.g.*, *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG(DMR), 2016 WL 2342128, at *1–3 (N.D. Cal. May 3, 2016) (an interrogatory response "should be complete in itself and should not refer to the pleadings, or to depositions or other documents," and can only incorporate another interrogatory responses if doing so does not require "an elaborate comparison of answers"); *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 4999762, at *3 (N.D. Cal. Aug. 21, 2015) (if only "some pertinent information may be found in the documents, this is not enough"; it is the responding party's "burden to show that the documents contain complete answers to the interrogatory").  Please supplement this response.

Best,
Max

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]

_____

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1]