Pages 1 - 51

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

| | |
|---|---|
| WAYMO LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )    NO. C 17-00939 WHA (JSC) |
| | ) |
| UBER TECHNOLOGIES, INC.; OTTO | ) |
| TRUCKING LLC; and OTTOMOTTO | ) |
| LLC, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

San Francisco, California
Wednesday, December 13, 2017

**TRANSCRIPT OF THE OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

**APPEARANCES**:

Special Master:
               Farella, Braun & Martel LLP
               235 Montgomery Street, Suite 1700
               San Francisco, CA  94104
               (415) 954-4400
               (415) 954-4480 (fax)
      **BY:  JOHN LEE COOPER**

For Plaintiff Waymo LLC:
               Quinn Emanuel LLP
               51 Madison Avenue, 22nd Floor
               New York, NY  10010
               (212) 849-7000
               (212) 849-7100 (fax)
      **BY:  JAMES E. BAKER**

Reported By:  Lydia Zinn, CSR No. 9223, FCRR, Official Reporter

**APPEARANCES**:

For Plaintiff Waymo LLC:
                    Quinn, Emanuel, Urquhart & Sullivan LLP
                    50 California Street, 22nd Floor
                    San Francisco, CA  94111
                    (415) 875-6600
                    (415) 875-6700 (fax)
               BY:  **MELISSA J. BAILY**
                    **DAVID ANDREW PERLSON**
                    **ANDREA PALLIOS ROBERTS**

For Plaintiff Waymo LLC:
                    Quinn Emanuel LLP
                    865 S. Figueroa Street, 10th Floor
                    Los Angeles, CA  90017
                    (213) 443-3000
                    (213) 443-3100 (fax)
               BY:  **PATRICK THOMAS SCHMIDT**

For Defendant Uber Technologies, Inc.:
                    Morrison & Foerster LLP
                    425 Market Street
                    San Francisco, CA 94105-2482
                    (415) 268-7000
                    (415) 268-7522 (fax)
               BY:  **ARTURO J. GONZÁLEZ**

For Defendant Uber Technologies, Inc.:
                    Morrison & Foerster LLP
                    555 W. Fifth Street, Suite 3500
                    Los Angeles, CA  90013
                    (213) 892-5734
                    (213) 892-5454 (fax)
               BY:  **SYLVIA RIVERA**

For Defendant Uber Technologies, Inc.:
                    Boies, Schiller & Flexner LLP
                    5301 Wisconsin Avenue, NW
                    Washington, D.C.  20015
                    (202) 237-2727
                    (202) 237-6131 (fax)
               BY:  **KAREN LEAH DUNN**
                    **MARTHA LEA GOODMAN**

1   **APPEARANCES**:

2   For Defendant Uber Technologies, Inc.:
                    Susman Godfrey LLP
3                   560 Lexington Avenue, 15th Floor
                    New York, NY  10022-6828
4                   (212) 336-8330
                    (212) 336-8340 (fax)
5              **BY:   SHAWN JONATHAN RABIN**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| 1 | **Wednesday - December 13, 2017**                    **2:02 p.m.** |

1   **Wednesday - December 13, 2017**                    **2:02 p.m.**

2                          **P R O C E E D I N G S**

3                              **---000---**

4          **THE CLERK:**  Civil Action C. 17-00939, Waymo versus

5   Uber.

6          **THE COURT:**  Good afternoon.  It's Judge Corley.

7   Instead of having you make your appearances, when you speak, if

8   you could just state your name, so -- because we are recording

9   this, in case you want a transcript.  If we could begin,

10  Mr. Cooper, are you on the call?

11         **SPECIAL MASTER COOPER:**  Yes, I am.

12         **THE COURT:**  Mr. Cooper, the letters that I received

13  last night -- they don't seem to match.  So maybe if you could

14  tell me -- identify the disputes that you believe the parties

15  are going to be bringing to my attention.

16         **SPECIAL MASTER COOPER:**  Well, I believe that there is

17  an issue about production of documents and production of

18  privilege logs.  And I believe that is the thing that -- the

19  two issues that I have had with regard to this hearing.  So

20  production of privilege logs, what those would be; and the

21  production of documents, and how extensive that will be.

22         **THE COURT:**  Okay.  All right.  So why don't we begin,

23  then, with Waymo's letter?  And I'm going to go to Number 1 on

24  page 3 of the letter.  And because Uber's written response

25  didn't really address that, I'll give Uber an opportunity to

PROCEEDINGS

1  address it now.

2      **MR. GONZÁLEZ:**  Your Honor, this is Arturo González.

3      Yeah.  My apologies for these documents not matching.

4  Frankly, you know, considering how fast everybody's moving, I

5  think we miscommunicated about what issues Waymo is going to be

6  raising with the Court, and so half of our letter is arguably

7  moot.

8      But with respect to this issue, I wrote to -- I think this

9  is a moot issue.  I wrote to Mr. Perlson yesterday afternoon,

10 and told him that the more expansive log that they were asking

11 for was being prepared, and that we would try to get it to him

12 by 7:00 o'clock, understanding that they had to file their

13 brief by 10:00.

14     We, in fact, served them with our privilege log at 7:30.

15 So I was frankly a little surprised to see this issue in here.

16 They've raised some questions about the log, and I responded to

17 those questions.  I think I'll leave it at that for now.

18     **THE COURT:**  All right.  So your log does include

19 communications with -- MoFo's communications with Uber or other

20 law firms regarding the Jacobs documents?

21     **MR. GONZÁLEZ:**  That's correct, Your Honor.

22     The only exception is that the parties agreed that it

23 didn't have to log the same communications that were already

24 logged by WilmerHale.

25     **THE COURT:**  Okay.

1          **MR. GONZÁLEZ:**  In other words, if Wilmer logs --

2          **THE COURT:**  Yeah.  No.  That makes sense.

3          **MR. GONZÁLEZ:**  -- MoFo.  Yeah.

4          **THE COURT:**  Okay.  All right.

5          **MS. BAILY:**  This is Melissa Baily, from the Waymo

6   side.  We did get a log from Morrison & Foerster last night.

7   It was supposed to be provided last Sunday, so that's why we

8   had these pending.  And I do want to raise two issues with the

9   log.

10      The first is that there's this odd title on the log that

11   seems to be very restrictive.  It says it's a log of

12   communications that substantively refer to the resignation

13   e-mail, the demand letter, and the Settlement Agreement.  And I

14   don't know what that means.

15      I asked Mr. González what it means.  He did answer other

16   of my questions, but not that one.

17      And the problem here, without getting into too much detail

18   about the back-and-forth, is that it's been pretty opaque about

19   what the defendants are providing, and when.  And there's, you

20   know, carefully chosen words.  And there's representations that

21   change.

22      And we really need a log that broadly describes

23   communications to the latest of the Jacobs applications,

24   without restriction, you know, because if Morrison & Foerster

25   is drawing the first line --

 1          **THE COURT:**  Okay.  Mr. González, what line was drawn

 2    in terms of what you decided to put on the more expansive log?

 3          **MR. GONZÁLEZ:**  Thank you, Your Honor.  I'd be happy

 4    to address that.

 5       So the -- we had given them a log earlier about the

 6    communications with our firm that attached the letter, itself.

 7       Then they wanted the communications that made reference to

 8    the substance of the letter.  And that's what we gave them.

 9       The only thing that we excluded is if there might have

10    been an e-mail about setting up a phone call, or something

11    random like that --

12          **THE COURT:**  Okay.

13          **MR. GONZÁLEZ:**  -- that didn't make any reference to

14    the substance of the documents.

15          **THE COURT:**  All right.  So you sort of --

16    "substantive" was in contrast to "procedural," in a sense?

17          **MR. GONZÁLEZ:**  Precisely.

18          **THE COURT:**  Okay.

19          **MS. BAILY:**  So, Your Honor, just two more issues.  I

20    realize that time is of the essence, but we do now understand,

21    from questions that I raised about this log with Mr. González,

22    that things related to setting up phone calls and oral

23    communications about the Jacobs allegations were not included

24    in this log.  We feel very strongly that they need to be.

25       If somebody remembers talking on the phone or going over

1  to Uber and talking about the Jacobs allegations while the

2  documents were being withheld by Waymo, that is exactly what

3  Judge Alsup said we are entitled to discovery into.

4      How much in the weeds were the MoFo lawyers and the Boies

5  lawyers in these allegations when they were withholding the

6  documents from us?

7      And so we definitely think that communications about phone

8  calls and oral communications that are not corresponding to

9  written documents need to be included.

10         **THE COURT:**  All right.  Mr. González.

11         **MS. BAILY:**  There are no pages.  Did not include

12  them.

13         **MR. GONZÁLEZ:**  So, Your Honor, we never even

14  discussed this.  All along we've been talking about a log, you

15  know, like your standard privilege logs.

16      Wilmer gave them one.

17      This is now my third one.  I gave them two earlier logs,

18  and this is the longer one.

19      For the first time today, they're saying they learned

20  about any oral conversations.  I think, for context -- and this

21  will be brief -- they have already gotten all of the written

22  communications that show clearly -- to the extent they want to

23  make a point of this fact, it is now undisputed; and I told

24  Judge Alsup this -- that MoFo, and I, personally, received what

25  we call "the resignation e-mail."  I got that, myself; and now

1    they know that other people here did, as well.

2        They also know that some of my partners got the long

3    document; the letter that was written by Mr. Jacobs' lawyer.

4    They know that now.  So we have that information.  And they

5    know that.

6        So what additional point did they want to make by me

7    logging the fact that there may have been a phone call at some

8    point about the same stuff?

9            **THE COURT:**  Well, I don't -- I don't --

10           **MS. BAILY:**  I can respond to that.

11           **THE COURT:**  Well, I don't --

12       Wait, wait.

13       We're not talking about a phone call.  We're talking about

14   e-mails, I guess, you said that you did not log, because

15   they're just setting up meetings, or things like that.

16   Correct?

17           **MR. GONZÁLEZ:**  Yes.  Procedural.  Yes, Your Honor.

18           **THE COURT:**  So why would they be logged, at all?

19       In other words, why would they be privileged?  Why

20   wouldn't they just be produced?  That's, I guess, for you,

21   Mr. González.  Why wouldn't you just produce them?

22           **MR. GONZÁLEZ:**  Well, Your Honor, at some point

23   there's going to -- the one issue I haven't looked at is

24   work-product issues.  I'd have to go back and look at them.

25       Frankly, what I was told is just giving them information,

1  which is what I thought they wanted, on the substance of the --

2  of the document --

3       **THE COURT:**  No, no, no.  I understand.  And I'll

4  accept that it didn't come up, or not.

5       So I think, with respect, that -- and I will rule it's not

6  a waiver of work product.  Right?  We're just trying to

7  expeditiously get this particular issue resolved.

8       But if there are e-mails that you haven't logged because

9  you say they're procedural -- not substantive -- just then

10  produce them.  And there will be no waiver of work product, to

11  the extent there's work product there.  I don't know.

12       **MR. GONZÁLEZ:**  Your Honor, I'll go back.  I'll go --

13  I'll go back and look at that.  And I think that what you just

14  said is accurate, but what I wanted to be clear about is when I

15  say "not substantive," I mean they don't refer to the substance

16  of this document.

17       **THE COURT:**  Well, I don't -- I think you should go

18  back and re-look at your log.  And either --

19       **MR. GONZÁLEZ:**  Understood, Your Honor.

20       **THE COURT:**  And either produce it if it's just privy

21  to, or log it if you believe it's --

22       **MR. GONZÁLEZ:**  Will do, Your Honor.

23       **THE COURT:**  Okay.

24       **MS. BAILY:**  Your Honor, I also -- I mean, we do feel

25  very strongly that -- that that -- we understand your ruling on

1  that issue with respect to written documentation of oral

2  communications, but this is not a privilege log like the normal

3  privilege log that goes with a document production.  This was

4  intended to be a log that gave Waymo complete insight into how

5  much was going on with respect to the Jacobs allegations at

6  Morrison Foerster while they were withholding the documents

7  from Waymo.

8      And so we also believe that apparently there were phone

9  calls and meetings about the Jacobs allegations, and that those

10  should be logged if they're -- if they happened.

11      **THE COURT:**  Well, part of it will be these e-mails

12  which you will get that are just setting up meetings.  And so

13  then you'll have -- you'll know there was the meeting when you

14  get those e-mails.

15      **MS. BAILY:**  Understood.  Understood.  But you know --

16  and I understand that recollections might not be perfect, but

17  you know, if there are two meetings that folks were called, you

18  know, and that there's no documentation about at Uber about

19  these allegations, you know, it's not that burdensome to --

20      **THE COURT:**  Well, I don't know.  How are they

21  supposed to know?  That's what -- I mean, how are they supposed

22  to know, if there's no document or if there's no e-mail?

23      **MS. BAILY:**  Well, if they have a recollection, that's

24  all we're asking.

25      **THE COURT:**  Well, isn't that what you're going to do?

PROCEEDINGS

1  Don't you have a number of depositions scheduled?

2       MS. BAILY:  Well, that's a separate -- separate issue

3  because, you know, Morrison and -- the -- we've requested

4  depositions of outside counsel.

5       They've resisted.

6       We've proposed an interim solution, whereby they answer

7  some questions that we had in declaration form.

8       We were told we were going to get an answer with respect

9  to whether those questions would be answered on Monday.

10       We still have not yet gotten an answer about whether

11  they're willing to answer those questions.

12       THE COURT:  Okay.

13       MS. BAILY:  Declarations.

14       THE COURT:  I shouldn't have brought that up.  Let me

15  ask you a different question.  Did Judge Alsup order that they

16  log any phone calls?

17       MS. BAILY:  There's no explicit order about a log.

18       THE COURT:  Okay.

19       MS. BAILY:  He explicitly said that we're entitled to

20  know what was going on --

21       THE COURT:  Okay.

22       MS. BAILY:  -- with the Jacobs allegations.

23       THE COURT:  Okay.  I appreciate that.  Okay.

24       I'm not going to order the log to include any oral

25  communications.  I am ordering that they turn over all those

1   e-mails in the center that may be setting up those meetings and

2   the like; that they should produce those.  I don't know why

3   they would be privileged.  If the work product -- is going to

4   be no waiver of work product.  And anything else, then,

5   otherwise has to be logged.  So there shouldn't be anything

6   that's withheld.  It should either be produced or logged; but

7   they do not have to log oral communications.

8            **MS. BAILY:**  Thank you, Your Honor.

9            **MR. GONZÁLEZ:**  Your Honor, Your Honor, Your Honor,

10  that's understood, but I want to make one thing clear for

11  Your Honor, just to make sure that -- I don't want there to be

12  a misunderstanding.  And Judge Alsup knows this part.  My

13  partners were retained to do an analysis of compliance issues.

14           **THE COURT:**  Right.  I read the transcript.

15           **MR. GONZÁLEZ:**  They were --

16           **THE COURT:**  Yeah.

17           **MR. GONZÁLEZ:**  I'm sorry?

18           **THE COURT:**  I read the transcript of the hearing.

19           **MR. GONZÁLEZ:**  Okay.  So I just want to separate that

20  out.

21       In other words, if there were meetings to discuss these

22  documents that we're talking about -- the Jacobs matter, you

23  know, and documents about that -- fine.  I'll log that.

24       But I don't intend to log --

25       We've been doing work for ten months now or nine months --

1  whatever it is -- on compliance issue.  And I just want to make

2  that clear.

3          THE COURT:  Well.  He -- Jacobs didn't resign until

4  May.  Right?  When was the resignation e-mail?

5          MR. GONZÁLEZ:  It's -- I don't remember the date,

6  Your Honor.

7          MR. PERLSON:  Perlson.

8      I think April 14th.

9          THE COURT:  April.  All right.  So you don't have to

10 log anything before then, because it couldn't have been

11 responding to that.  Right?

12         MR. GONZÁLEZ:  No.  I understand.

13     I just -- my point is on the other end of April 14th, what

14 Your Honor may not know or recall is we weren't initially going

15 to work with Wilmer on the Jacobs matter.  And almost

16 immediately were told that we were not going to; that we were

17 going to do the more general compliance work, was why.

18     And so what I'm saying to Your Honor is there have

19 obviously been gobs of meetings on the general compliance

20 issues since then; and that the meetings that I think the Court

21 is referring to, and that I will log, are meetings that pertain

22 to the Jacobs matter.

23         THE COURT:  Correct.

24         MR. GONZÁLEZ:  Yeah.  Okay.

25         THE COURT:  Not the compliance matter, but the Jacobs

1    matter.

2          MR. GONZÁLEZ:  I just wanted you to understand that,

3    because --

4          THE COURT:  Okay.

5          MR. GONZÁLEZ:  -- I didn't want anybody to think that

6    I misread you.  That's all.

7          THE COURT:  No, no, no.  It's all -- it's the Jacobs

8    matter.

9       Correct, Ms. Baily?

10         MS. BAILY:  Well, allegations raised by Jacobs.  To

11   be clear, it's not just, you know, Jacobs documents or, you

12   know -- it's the allegations that were raised by him.

13         MR. PERLSON:  Right.  And this is David Perlson.

14      I'm sorry to interject, but I have refer -- saying

15   anything different, but it would be that the Jacobs allegations

16   that --

17      And so, you know, if, in fact, these multiple lawyers are

18   doing something about compliance generally, that's not clear.

19      But if they're doing -- if there are MoFo lawyers who

20   aren't on the -- quote, unquote -- "trial team" who are working

21   on the compliance matter, and as part of that, are discussing

22   the Jacobs allegations, that would be included.

23         THE COURT:  That's the -- I believe that's what we're

24   talking about:  The Jacobs matter.

25      Is that correct, Mr. González?

1          **MR. GONZÁLEZ:**  Yes, Your Honor, that's correct.

2          **THE COURT:**  Okay.  We're all in agreement then.

3          **MS. BAILY:**  So, Your Honor, there's one last issue,

4    which is that Boies also should be providing a log.

5       Now, we were told by Boies that they didn't have anything

6    to log, but WilmerHale actually included in their log

7    communications with Boies.

8       And so, again, we're very concerned that Boies is taking a

9    very restrictive view of what should or shouldn't be logged

10   with respect to communications related to the Jacobs

11   allegations.  And so we need to get a log from Boies about any

12   such communications related to the Jacobs allegations.

13   WilmerHale seems to think there were some.

14          **THE COURT:**  Well, to the extent, I guess, that

15   they're not already on the WilmerHale log, or the --

16          **MS. BAILY:**  I -- I --

17          **THE COURT:**  -- MoFo log, I agree with that.  It

18   doesn't have to be re-logged.

19          **MS. BAILY:**  The problem is that Wilmer -- and this is

20   the problem we've been saying.  So WilmerHale had a directive

21   to log communications related to the Jacobs allegations.  They

22   logged communications with Boies.

23       Boies has said that they don't know why those

24   communications were logged.  They wouldn't have put them on a

25   log of communications related to the Jacobs allegations.

1    Well, if that's true, then we have a problem here with

2  potentially Boies taking too narrow a view of what would be

3  relevant, and not logging other communications that might be

4  relevant.

5         **THE COURT:**  Or Wilmer taking too broad a view.

6    Let me hear from Mr. González, unless there's somebody

7  from Boies on the line.

8         **MR. GONZÁLEZ:**  That's exactly what happened,

9  Your Honor --

10         **MS. DUNN:**  Wait, wait, wait.  This is Karen.  I'm

11  here.

12         **MR. GONZÁLEZ:**  Oh, Karen's here.  Great.

13         **THE COURT:**  Oh, Ms. Dunn.  All right.  Go ahead,

14  Ms. Dunn.

15         **MS. DUNN:**  Yeah, sorry.  It's Ms. Dunn.

16    So I think that Your Honor is correct on Wilmer taking too

17  broad a view.  And I think part of this would be clarified if

18  you could see Wilmer's e-mail clarifying their logs.

19    So Wilmer's clarifying e-mail says that they learned that

20  their log might have created some confusion, and they're

21  writing to provide clarification.  They say, *Out of an*

22  *abundance of caution, the log includes an entry for the first*

23  *time I've seen -- ever had communications with BSF in this*

24  *matter.  That communication related to an issue that arose from*

25  *our internal investigation of practices by Uber's Security*

1  *Group following Mr. Jacobs' 5/5/17 letter.  As noted in the*

2  *bracketed language on the privilege log, Wilmer did not discuss*

3  *the Jacobs e-mails, letters, or the contents therein with*

4  *anyone at BSF until Thanksgiving Day.  We similarly did not*

5  *ever send to BSF the 4/14/17 e-mail, the 4/1/17 letter, or the*

6  *5/5/17 letter.  We hope this clarifies any confusion our*

7  *submission may have caused.*

8            **THE COURT:**  Okay.  All right.

9            **MS. DUNN:**  And subsequent to that, just so you have

10  all of the information, this made me --

11       The Wilmer clarification, I don't think, was appended to

12  the Waymo submission; but I think my e-mail was, where I said,

13  you know, we were generally aware that Wilmer was doing an

14  internal investigation, but the substance of any allegations

15  being investigated was not shared with BSF, nor were any

16  documents.  I want to be very clear about this.

17            **THE COURT:**  Okay.  So --

18            **MS. DUNN:**  I do think that --

19            **THE COURT:**  Okay.  So just so it's -- so -- so Boies,

20  then, is not withholding any documents that fall within the

21  category that we were just discussing with Mr. González?

22            **MS. DUNN:**  Correct.  If the category is the

23  allegations in the Jacobs documents, no BSF attorney was aware

24  of those allegations until Thanksgiving Day.

25       Wilmer did communicate with us about an issue that arose

1    in their investigation in the Securities Group, but that issue

2    was not related to the subject matter in the letters, as Wilmer

3    has, themselves, said.

4              **THE COURT:**  Okay.  Ms. Baily, anything further?

5              **MS. BAILY:**  I -- you know, as long as --

6         It's hard, because the representations keep changing.  And

7    Wilmer had originally said that communication actually was

8    relating to the Jacobs allegations.  So --

9              **THE COURT:**  Well, are you referring to their --

10             **MS. BAILY:**  -- all I can do --

11             **THE COURT:**  Ms. Baily, are you referring to their

12   privilege log?  Because I went and I looked at it this morning.

13   And it -- that arose from an internal investigation of

14   practices following Jacobs' letter.  And then they said the

15   correspondence does not specifically reference.  So I actually

16   don't find that to be inconsistent.

17             **MS. BAILY:**  Right.  Right.  So -- so -- and I

18   apologize.  And we actually -- almost immediately before this

19   hearing.  So, you know, obviously, we understand you didn't get

20   it.  We realized we hadn't submitted the first log from

21   WilmerHale that described it differently.

22        And then after Ms. Dunn complained, they changed this

23   description.  So it's been an evolving -- an evolving

24   description of what these communications actually say.

25             **THE COURT:**  Okay.  Well, anyway, that's resolved now,

 1    as far as I'm concerned.

 2        Okay.  Let's move on, then, to Number 2, which is the

 3    production of documents.

 4        **MR. SCHMIDT:**  Your Honor, this is Patrick Schmidt,

 5    from Waymo.  I'm going to be speaking to this, if you'd like to

 6    hear from me.

 7        **THE COURT:**  Well, is there anything that still hasn't

 8    been produced?

 9        **MR. SCHMIDT:**  You know, Your Honor, I think the

10    documents are still trickling in.

11        The background to this is we met and conferred on the

12    document production early last week.  And, given the tight

13    timetable that Judge Alsup had set forth, the Special Master

14    ordered that all documents be produced by last Friday, which

15    was December 8th.

16        I won't bore you with all of the details, but that did not

17    happen.  Documents trickled in throughout the weekend and early

18    this week.  And we're finding it incredibly difficult to plan

19    discovery and prepare for depositions, which are in progress

20    right now -- they started yesterday -- as the universe of

21    documents keeps shifting under our feet.

22        And what we're asking for in Number 2 is simply if we're

23    going to accomplish the timetable that Judge Alsup set forth,

24    that we have to have a date certain on the document production.

25    We're asking you to order Uber to complete their document

1  production; certify that it is complete, consistent with our

2  meet-and-confers, by December 14th.  That's tomorrow.  That's

3  already six days later than Special Master originally ordered.

4       **THE COURT:**  All right.  Mr. González, so there are

5  still documents to be produced?

6     Or whoever's speaking for Uber.

7       **MS. RIVERA:**  Your Honor, this is Sylvia Rivera.  I

8  can speak to that.

9       **THE COURT:**  Okay.  Are there still documents to be

10  produced?

11       **MS. RIVERA:**  Your Honor, we are working our way

12  through what we believe are the final set.  And these are

13  communications from in-house counsel.

14     So we produced 3,200 documents.  About 2,200 of those were

15  produced by last Friday, which was the soonest date after we

16  received the RFP.  We've been rolling out the remainder just as

17  soon as they're ready to be on a daily basis.

18     What we have left, and what I expect will be produced

19  tomorrow, is working our way through the final set of

20  in-house-counsel communications.  It just takes longer to

21  review because instead of the privilege issue --

22       **THE COURT:**  The privilege.  Okay.  So produce them by

23  tomorrow.  And then that will complete your production.  Is

24  that the representation?

25       **MS. RIVERA:**  Our plan is to produce those tomorrow.

1    I'm looking at my notes here, and I'm thinking that there's

2    probably one other category.

3        There was an RFP that we met and conferred about, and

4    agreed to expand the scope of our production.  So we're working

5    through those documents today.  So those probably would also be

6    produced tomorrow, as well.

7            **THE COURT:**  Okay.  So produce the rest of the

8    production by tomorrow.  Okay.

9            **MS. RIVERA:**  Thank you, Your Honor.

10           **THE COURT:**  All right.  I'm not sure what Number 3

11   is, and how it's different from Number 1.

12           **MR. SCHMIDT:**  Sure, Your Honor.  This is

13   Patrick Schmidt, from Waymo, again.

14       So Number 1 was, as Ms. Baily articulated, a log of

15   communications from Morrison & Foerster involving the Jacobs

16   allegations.

17       Number 3 is more of the conventional privilege log

18   associated with the documents that they're going to complete

19   their production of tomorrow.

20       Again, when we met and conferred with the Special Master

21   early last week, we set forth a timetable that should govern

22   the discovery period.  The Special Master ordered that the

23   privilege log -- the complete and fulsome privilege log --

24   accompanying their document production should be produced

25   today.  That was the agreement.

1      Now, in our meet-and-confer sessions over the weekend and

2  early this week, Uber's attorneys had suggested to us that a

3  complete privilege log will not be forthcoming because the

4  communications are too voluminous, and it would be too

5  burdensome.

6      And what we're trying to do here is get out in front of

7  the issue, because, you know, Judge Alsup's speedy rule simply

8  does not allow for an exception to privilege log requirement

9  based on volume or burden.  I mean, that was made abundantly

10  clear during --

11          **THE COURT:**  Okay.  I'm going to stop you,

12  Mr. Schmidt, because I have discovery now.  So I'm just going

13  to stop you, because --

14      All right.  So let me hear from whoever's going to

15  speak -- is it Ms. Rivera? -- about the privilege log.

16          **MS. RIVERA:**  Thank you, Your Honor.  This is

17  Ms. Rivera.

18      So I was surprised to see this issue in the letter

19  briefing from Waymo.  And -- and we did not address it in our

20  brief, because we frankly didn't think that there was any

21  dispute of this issue.

22      This past Monday we met and conferred -- the parties,

23  along with the Special Master.  And we reported on the volume

24  of Privileged Documents that we were working with.  It was in

25  excess of 2,000 documents.  It is now probably more like 4,000

1    documents.

2        And the agreement that we reached on Monday was that we

3    were to do the type of categorical logging, just in light of

4    the volume of documents and the extraordinarily short period of

5    time that we have to prepare the log; and that we would do it

6    by today.  That's the agreement we reached on Monday.

7        **THE COURT:**  You -- I'm sorry.  You would do it by

8    when?

9        **MS. RIVERA:**  Today.

10       **THE COURT:**  Oh, by today.  All right.  So you're

11   going to do it by today.  Okay.

12       **MS. RIVERA:**  I have a team very, very busy.  They

13   worked late into the night, and they're keeping busy with it

14   all day long.

15       **THE COURT:**  Okay.  Great.

16       **MS. RIVERA:**  That we agreed to this Monday.

17       **THE COURT:**  All right.

18       **MR. SCHMIDT:**  Well, Your Honor, I have to respond to

19   that, because on Monday when we discussed the privilege log, we

20   indicated that we wanted a complete conventional privilege log.

21       **THE COURT:**  Okay.  You know, you may --

22       Why?  Why?

23       So this is an issue as to -- so that you can show the

24   Special Master.  Right?

25       What is this all relevant to?  What claim or defense in

1   this lawsuit is this log relevant to?

2           MR. SCHMIDT:  Well, Your Honor, first of all, the

3   privilege log is required just to maintain the privilege for --

4           THE COURT:  No.  Mr. Schmidt.  Mr. Schmidt.

5           MR. SCHMIDT:  -- but in addition --

6           THE COURT:  Answer my question.  Yep.  What's it

7   relevant to?

8           MR. SCHMIDT:  The substantive relevance of the

9   privilege log is that it indicates who at Uber knew what when

10  regarding the Jacobs letter.  Both the allegations underlying

11  the Jacobs letter -- i.e., competitive intelligent ephemeral

12  communications not attributable devices.  That's the trade

13  secrets.

14     It also -- the log would also indicate who at outside

15  counsel had notice of the Jacobs letter, and why it was

16  withheld, which would be evidence of a cover-up.

17     So we think that the -- that the privilege log is not only

18  required under the standing orders, but it has substantive

19  relevance to the case.

20     The other thing I would point out is one of the

21  allegations in the Jacobs letter is the use of improper

22  attorney-client-privilege assertion, in order to shield

23  relevant evidence from discovery.

24           THE COURT:  Okay.  I'm going to stop you,

25  Mr. Schmidt.

1      I'm going to -- Mr. Schmidt -- ah, Mr. Schmidt, I'm

2   talking.  So when we do it by phone -- and I do it as an

3   accommodation to the lawyers -- you just have to.  Normally,

4   you'd be here, and you could see my face.  And we can't do

5   that.  So when you hear my voice, I just need everybody to

6   stop.  Okay?

7      So let me ask Ms. Rivera.  When you say it's a categorical

8   logging, what does that mean?  What information are you giving?

9          **MS. RIVERA:**  Sure.  So what we discussed this past

10  Monday is that we would provide a list of all in-house

11  attorneys who received communications as being withheld on

12  privilege grounds; the earliest date of that communication; the

13  volume of communications; and, to the extent there were

14  communications indicating Jacobs issues that confirmed that

15  relate to or mention Waymo or Chauffeur, we would identify any

16  attorneys who received that communication.

17          **THE COURT:**  Okay.

18          **MR. SCHMIDT:**  Your Honor, may I respond?

19          **THE COURT:**  You may.

20          **MR. SCHMIDT:**  The categorical privilege log that

21  she's discussing -- there was never any agreement on that.

22      The way this unfolded is that the Special Master asked us

23  to tell Uber what we would accept as an interim measure.

24  Frankly, we were loath to even provide something less than a

25  full privilege log, because we anticipated that exactly what's

1  happening here would happen:  We -- we would set out some sort

2  of interim measure that we with would accept along the way to a

3  full privilege log, and that Uber would take that, and couch it

4  as some sort of agreement that we agreed to less.

5       We have been adamant, both on Monday -- the Special Master

6  could corroborate this -- and before, that we require a

7  complete and comprehensive privilege log, especially in light

8  of the relevance of the issues to this case.

9            **THE COURT:**  Well, I'm not quite sure that it's so

10  relevant to the issues in this case, to be honest.  We're all

11  talking about a collateral issue to begin with, number one.

12  Okay?

13       But I understand that there is some discovery that has to

14  be done.

15       But what you were demanding is that they give you a full

16  privilege log now.

17       So I don't think you can have it both ways, because there

18  would be 4,000 documents.  And you want -- then you're going to

19  have to take some time.  So you can't have it both ways.

20  That's unreasonable, and not proportional to the needs of the

21  case.

22       So you'll get today your categorical privilege log.

23       If you can make some showing which is in here as to why

24  you need more that's proportional to the needs of the case that

25  goes to a claim or defense at issue in this case --

1          What I understood, all this was as to the issue that the

2     Special Master is addressing as to whether the letter should

3     have been turned over.

4          **MR. PERLSON:**   This is David Perlson.

5          That's actually not correct.

6          On -- at the hearing -- and then later, as clarified in

7     the Case Management Order -- this is Docket 2315 -- the

8     Court -- Judge Alsup said -- he said that Waymo is granted

9     supplemental discovery to get to the bottom of new evidence

10    that has come to light as the result of the letter dated

11    November 22nd.  That's the Jacobs letter.  That disputes

12    regarding this should be brought to you.

13         And then it goes on and it says explicitly:  Supplemental

14    discovery may extend to any new subject matter previously

15    unknown to Waymo's counsel that has arisen as a result of the

16    Richard Jacobs letter, e-mail, or Settlement Agreement that

17    were the subject of this week's evidentiary hearing.

18         And then it lists about six different or eight different

19    categories of things that were at issue in the letter, such as

20    the use of nonattributable devices, ephemeral communications.

21    Another one is defendant's internal investigation regarding the

22    aforementioned practices.  Another one is defendant's

23    systematic attempts to avoid creating a paper trail, and to

24    conceal facts under contrived claims of attorney-client

25    privilege and other privileges.

1          The other one is defendant's discovery practices and

2     procedures bearing on their failure to produce the Jacobs

3     letter or e-mail, or disclose earlier in the litigation.

4          And, you know, and there's -- there's -- there's more.

5     And what -- and then it goes on.  It says supplemental

6     discovery may also extend to further inquiries specific to

7     relevant issues raised by the Jacobs e-mail or letter, even if

8     such inquiries also touch on subject matter previously known to

9     Waymo's counsel.  And then it says that we can have depositions

10    and discovery in relation to this.

11         And what I think is important and what's contemplated was

12    not simply issues relating to the Special Master and his

13    charge; and, in fact, that's clear, because the Court ordered

14    the Special Master to provide his decision.

15              **THE COURT:**  Mr. Perlson, I'm going to interrupt.

16    I'm -- I'm going to interrupt you here, and --

17         I understand that.  I didn't say discovery.

18         But this privilege log that you're talking about -- I'm

19    going to say:  What's that relevant to?

20         If you want to narrow it and say --

21         Wait.  No.  Wait.  Mr. Perlson.

22              **MR. PERLSON:**  -- especially in light of the fact --

23              **THE COURT:**  Mr. Perlson, stop.  I'm sorry.

24    Mr. Perlson, I'm not going to be able to allow you to -- you

25    need to follow the same rule as Mr. Schmidt.  A different rule

1    does not apply to you.

2         Now, what I -- what -- I'm going to have him do this

3    Category 1 that you're getting today.

4         If there's a particular narrow area that you believe, for

5    example, every single one of these -- you don't need a full

6    privilege log.  You can do it by a particular subject within it

7    that you may need a full privilege log, then you can meet and

8    confer about that with the thing.

9         But I'm not going to order them to -- it's impossible, in

10   any event, to do a full privilege log on those 4,000 documents.

11   It's impossible.  And it's not proportionate.  It's

12   unnecessary.

13        There may be particular things that you may need it

14   before -- but going through that list you did -- like, take one

15   of those categories.  Any communications that have to do with,

16   *X*, maybe.  Something like that.

17        But I'm not persuaded that, sitting here right now, they

18   should do a full privilege log by tomorrow or by the day after

19   tomorrow, which is what you asked for in the letter, and which

20   is not reasonable, on all 4,000.  So come back with something

21   more reasonable, or try to agree to something more reasonable,

22   because that's not reasonable.

23        Okay.  All right.  Now, as to Number 4, which also wasn't

24   addressed by Uber's letter -- or maybe it was addressed by

25   Uber's letter.

1           **MR. PERLSON:**  That one was, Your Honor.

2           **THE COURT:**  So tell me:  What's the status of this?

3           **MS. ROBERTS:**  Your Honor, this is Andrea Roberts,

4    from Waymo.  I don't know which side you want to hear from

5    first on this, but this particular issue arose as a prospect of

6    Uber's efforts to meet and confer about compliance and

7    production of documents responsive to our document requests.

8           As background information for you, Your Honor -- and this

9    is in our letter -- Uber established a Special Matters

10   Committee on their Board of Directors that oversaw both this

11   litigation, and the allegations of Richard Jacobs.

12          And so we -- on November 30th.  Presumably some of them

13   specifically asked for documents that would come from that

14   Special Matters Committee or members of the Special Matters

15   Committee, and presumably documents in response to other

16   requests also would.

17          We had meet-and-confers starting on December 1st regarding

18   all of the document requests; not the ones specifically where

19   documents that reside with the Special Matters Committee --

20          **THE COURT:**  Okay.  Ms. Roberts, I'm just going to

21   stop you for a minute, because now I see.

22          So Uber responded that they believe the issue was moot,

23   because they have agreed to produce it.

24          So just tell me in one sentence, then, what the issue is.

25          **MS. ROBERTS:**  Okay.  So the issue is they've stated

1  that they don't think that they're obligated to search for

2  documents present within the Special Matters Committee.  And so

3  that is what raised concerns with us that they're not doing a

4  complete and thorough --

5         **THE COURT:**  Okay, but tell me.  You read their letter

6  that they filed last night.

7         **MS. ROBERTS:**  Right.

8         **THE COURT:**  So given that letter, what is the issue?

9         **MS. ROBERTS:**  Ah, the issue is that they've put

10  together a search.  They're only planning on searching through

11  the e-mails of the Special Matters counsel -- the Special

12  Matters Committee counsel.

13         We've negotiated search terms, and we can continue going

14  back and forth on that; but they have not confirmed whether

15  there are other documents that would be potentially responsive

16  to our request, beyond those of the Special Matters Committee

17  counsel.

18         And, again, I think the -- our concerns really were raised

19  by their representation that they don't think they need to be

20  doing this, anyway, and they're, you know, sort of doing this

21  to us as a favor.

22         So we just want an Order from the Court to confirm that

23  they should be searching for documents that reside with the

24  Special Matters Committee in response to our document request

25  to Uber.

 1          **THE COURT:**  All right.  Let me hear from Uber about

 2    what they're producing.

 3          **MR. SCHMIDT:**  Good afternoon, Your Honor.

 4    Shawn Rabin, for Uber.

 5          So we reached out to Waymo last week, because there's -- a

 6    Special Matters Committee has a peculiar issue, in that the

 7    Special Matters Committee had their own privileges that are

 8    independent of Uber's.  And what that means is Uber, as a

 9    company, does not have the ability to search the Special

10    Matters Committee documents, because otherwise it could

11    possibly invade that privilege.

12          This presented a tricky situation, because Waymo marked

13    their document requests, "Attorneys' Eyes Only."  So we --

14          **THE COURT:**  I know --

15          **MR. RABIN:**  So we couldn't share.

16          **THE COURT:**  Mr. Rabin, I read that.

17          Just tell me.  Just tell me.  What have you searched, and

18    what are you producing?

19          Because your letter says the issue is moot.  Tell me why

20    it's moot.

21          **MR. RABIN:**  Understood.

22          **THE COURT:**  What are you producing?

23          **MR. RABIN:**  So we had the Special Matters Committee

24    counsel, who is the law firm of Cooley, run targeted searches,

25    which we shared with Waymo, across their e-mail system.

 1        Cooley had replaced as the Special Matters Committee

 2   counsel -- which is the group that coordinates the information

 3   among the Special Matters members -- the law firm of

 4   Shearman & Sterling.  So we also had Shearman & Sterling run

 5   searches across their e-mails.  Those searches, I am told, are

 6   in the process of being completed tonight.  And they're going

 7   to send those to the vendor.  So we should be able to produce

 8   them tomorrow.

 9        In addition, on Tuesday, there were document requests

10   served on three Special Matters Committee members.  All three

11   of those Special Matters -- the lawyers for those committee

12   members are asserting in their documents, as we speak, I

13   believe the one individual whose deposition is supposed to be

14   this Friday should have those documents ready for production

15   tomorrow morning, as well.  The other two should follow shortly

16   thereafter.

17        **THE COURT:**  All right.  Ms. Roberts, what more is

18   there?

19        **MS. ROBERTS:**  So, Your Honor, I'm not sure that I

20   know.  I think -- I think we just want an assurance that

21   there's not some category or repository of documents that's

22   falling through the cracks here, based on the assertion that

23   Uber doesn't need to be looking through these documents.  I

24   think it really boils down to that.

25        **THE COURT:**  Well, Mr. Rabin, you heard the question.

1   What's the response?

2          **MR. RABIN:**  We asked the -- the response is:  I don't

3   think there is.  We asked the Special Matters Committee

4   counsel:  Where -- where are the documents most likely to

5   reside, if you run a search on them again?

6          And their response was:  E-mails.

7          I'm not in a position, because I don't control the

8   documents, to give you a 100 percent assurance that that's all

9   the documents in the world; but it is the place most likely for

10  relevant documents to reside, almost all of which are going to

11  be privileged.  There are going to be some communications to

12  third parties; but because it's a lawyer-driven process, most

13  of these documents are going to be privileged, and they'll also

14  be produced in logs.

15         **THE COURT:**  Okay.  Okay.

16         **MS. ROBERTS:**  So, Your Honor, I mean, I think -- I

17  appreciate the effort to get to the bottom of this, but we

18  still have that language from Uber's counsel saying, you know,

19  they can't say for sure, because they don't control the

20  documents.

21         And there hasn't really -- there hasn't been any sort of

22  showing -- any evidence, declarations, case authority --

23  establishing that Uber doesn't control the documents or have

24  possession, custody, or control over these documents that

25  reside with a committee of its Board of Directors.  And so,

1   again, seems like there's this possibility that there are

2   documents not being located, because Uber is not approaching

3   this as though it's part of their obligation to search and

4   respond to our request to Uber.

5          **THE COURT:**  Well, where else do you think there would

6   be documents?  E-mail seems to me the most likely -- most

7   yield.  I don't know what else there would be.

8          **MS. ROBERTS:**  There are non-e-mail documents that

9   resided with the committee, and we haven't had them respond to

10  that.

11         **THE COURT:**  Mr. Rabin.

12         **MR. RABIN:**  Your Honor, may I respond?

13         **THE COURT:**  Yeah.

14         **MR. RABIN:**  So that's not -- that's not accurate.

15      As I explained, I am positive that both Cooley and

16  Shearman, like any other law firm in the country, has some type

17  of document-management system where they save, for example,

18  lawyer drafts of documents, and things of that sort.  They are

19  even more, by their definition, privileged than any other type

20  of e-mail exchange that I guess arguably one could cite are

21  circumstances where they would not be privileged.

22      What we are trying to do is literally produce many, many

23  documents that, in most cases, would take months; and do it in

24  a matter of days.  And so we are trying to find the place where

25  it is most likely that the relevant documents are going to

PROCEEDINGS

1  reside, searching quickly, and produce them.

2      I don't think it's fair to try and set us up to say, *Well,*

3  *you didn't literally look under every stone in the 48 hours you*

4  *have, and so therefore you're somehow not doing it properly*.

5      So all I can represent is we are looking at the places

6  where the most -- that are most likely to have responsive

7  documents, as has been communicated to us.  Those are being

8  searched, and they will be produced.

9          **THE COURT:**  Okay.  There we are.  Okay.  I don't

10  think there's anything for me to order there.  I think you get

11  them.

12      And if there's something that you think should be there

13  that isn't, then we can bring it up at that time.  But it's

14  just, given the amount of time we have, we have to go for

15  yield.  What search is going to most likely come up with

16  something that may have some relevance to the case?  Okay.

17          **MS. ROBERTS:**  Thank you, Your Honor.

18          **THE COURT:**  All right.  Now, Uber raised a number of

19  issues, but I'll hear from Mr. Cooper.  I didn't know if those

20  matters were teed up for me, because Waymo didn't address them

21  in their submission.

22          **SPECIAL MASTER COOPER:**  Well, I think that the next

23  issue that is most important; is the 30(b)(6) depositions and

24  topics.  And I think that is not resolved.

25          **THE COURT:**  Okay.  You mean Uber's 30(b)(6)?

PROCEEDINGS

1          **SPECIAL MASTER COOPER:**  Yes.  Is that -- is that your

2    view, Arturo?

3          **MR. GONZÁLEZ:**  Yes.  Yes, it is, John; and that the

4    e-mail that I sent --

5          **THE COURT:**  Wait.  So this is the issue that Uber

6    wants to take a 30(b)(6) of Waymo regarding their

7    off-the-record and other ephemeral-messaging system policy and

8    the like.  Is that it?

9          **MR. GONZÁLEZ:**  No.  To be more specific, Your Honor,

10   they are producing a 30(b)(6) on that topic tomorrow.

11      The 30(b)(6) that we have a dispute on deals with

12   surveillance.

13          **THE COURT:**  Oh.  Surveillance videos?

14          **MR. GONZÁLEZ:**  Yes.  In part, yes.

15          **THE COURT:**  Okay.

16          **MR. GONZÁLEZ:**  And the 30-second version is:  If they

17   served us with a 30(b)(6) to produce the witness of

18   surveillance that we're going to, there was extensive --

19          **THE COURT:**  But wait.  Can I just stop you,

20   Mr. González?

21      I'm reading that -- your letter.  And you -- it referred

22   to Topic Number 8 -- right? -- of their 30(b)(6)?

23          **MR. GONZÁLEZ:**  Ah, actually, that should probably be

24   Topic Number 9.

25          **THE COURT:**  Well, whatever.  It's surveillance.

1   Well, it says "8."  It says, "Surveillance conducted by or at

2   the direction of defendants of any persons who are witnesses or

3   attorneys in this case."

4        **MR. GONZÁLEZ:**  Oh, I'm sorry.  Your Honor, that is

5   what they served on me.

6        **THE COURT:**  Yes.  And in response to that, you want

7   them to do a 30(b)(6).  You want to do a 30(b)(6) that's not on

8   that topic, but a different topic, which is --

9        **MR. GONZÁLEZ:**  Well, it's --

10        **THE COURT:**  It's a different topic.

11        **MR. GONZÁLEZ:**  Your Honor, it's on surveillance.

12   It's simply broader.  And the reason that it's broader is

13   because two days of testimony and deposition testimony already

14   in the last couple days -- they're asking all of our witnesses

15   about surveillance.

16      And it just -- it's -- very quickly --

17      *Are you aware of any surveillance that was done on any*

18   *Waymo vehicle?*

19      *Are you aware of whether or not Uber conducted*

20   *surveillance of Waymo?*

21      So they've gotten a lot of testimony from my people that

22   we did surveillance.

23        **THE COURT:**  Okay.  All right.  Okay.  So let me -- I

24   don't have it, because Waymo wasn't presented, so I'm not going

25   to give a final ruling.  I'm going to give you what my reaction

1   to it is, which is this.  And this is -- and I'm going by -- to

2   the extent Waymo wants to argue at trial or before a judge or

3   at trial that Uber did surveillance of Waymo's cars, then Uber

4   is going to be entitled to discovery of whether Waymo did the

5   same of Uber or any competitors.  That goes right to what he

6   said with respect to the ephemeral messaging.

7       But if Waymo says, *No, we're not* -- they may have asked it

8   in the depos, but maybe they have no intention of using that at

9   trial -- then we just should stop now, and quit going down

10  these rabbit holes, but --

11          **MR. GONZÁLEZ:**  Your Honor, I completely agree with

12  that.

13          **THE COURT:**  But anyway, that's not a final ruling,

14  because I don't -- Waymo hasn't had the opportunity to put

15  anything in front of me.

16      I'm just telling you what my approach is and my reaction

17  is based on that.

18      And then just a matter of --

19      So there.

20      So that's -- hopefully you guys can work it out then.

21          **MR. GONZÁLEZ:**  We'll work it out, Your Honor.

22          **MR. BAKER:**  Your Honor, this is Jim Baker, from

23  Quinn Emanuel.

24      If I could just comment on that --

25          **THE COURT:**  Sure.

 1          **MR. BAKER:**  -- very briefly.  I think the difference

 2    is the depositions where we've been asking their witnesses

 3    about surveillance are not 30(b)(6) depositions.  We originally

 4    included this 30(b)(6) topic in our Notice, because Judge Alsup

 5    had referenced it in -- at the hearing or in one of his Orders.

 6          If you -- you may recall -- I -- the reason I think he did

 7    that is because in the case of the letter, there are

 8    discussions about a prior case where Uber was investigating

 9    counsel and the party on the other side.

10          And so we included a topic.  It went directly to that.

11    It's just Judge Alsup had referenced.

12          We then told Uber that we would withdraw that topic if

13    they would agree to not include any surveillance topics in

14    their 30(b)(6) notice.

15          They said "No," and then served us with a much broader

16    topic.  They chose key surveillance of all competitors.

17          And so that's the issue here, is --

18          **THE COURT:**  I see.

19          **MR. BAKER:**  -- not the 30(b)(6) topics.  Not -- not

20    individual depositions.

21          **THE COURT:**  Well, I don't know that it matters if

22    it's individual or 30(b)(6).

23          I think what matters is what Waymo intends to use.  Right?

24          And if you don't intend to use it, then it should just

25    stop.  And then Uber doesn't need the discovery, either.

1    And if you --

2    So that's it; whether it be 30(b)(6), or through

3  individual questioning, but if --

4    So I don't think it matters if it's 30(b)(6) or

5  individual.

6    If you're taking and you intend to use testimony that you

7  got at an individual's as to surveillance that they did of

8  Waymo's cars, I assume it's public surveillance, like

9  they're --

10    Right?

11    I mean, if it's --

12    I suppose it's different if they were sneaking into your

13  warehouse or something; but I don't probably think that's what

14  you're referring to.

15        **MR. BAKER:**  No.  No, no, no.

16        **THE COURT:**  These are cars that are driving down the

17  street.  Okay?  I mean, everybody -- I see them sometimes.  I

18  may take a picture -- right? -- because it's a novelty.  I

19  don't think there's anything --

20    But to the extent Waymo's going to use that fact, then

21  Uber's entitled to try to develop that Waymo does the same.

22  But it should be narrow.  And, quite honestly, maybe you guys

23  can just agree not to do it, because it is a big, "So what?"

24    If it's just cars that are going, driving down the street,

25  it really has very little value in this case, which -- you're

1   not going to have very much time to try it.  And, you know,

2   you're going to have to make hard decisions about what to put

3   in.  So maybe this would be a good place to start knocking

4   something out.

5       Anyway, again, that's not a ruling.  That's just an

6   instinctual response to see if maybe that will help going

7   forward.

8            **MR. BAKER:**  Understood, Your Honor.

9       We'll -- we'll consider that, and we'll see what we can

10  do.

11           **THE COURT:**  Okay.

12           **MR. BAKER:**  Thank you.

13           **THE COURT:**  All right.

14           **MR. GONZÁLEZ:**  Your Honor, Your Honor, the only other

15  issue I want to raise on this call is one document request.

16  Again, just 30 seconds.  Again, they made a change in policy

17  and keep out a name that's very significant.

18      Before that, they saved everything that was a chat; just

19  like e-mails.

20      After that, they don't save anything, and let each

21  individual affirmatively decide to save a chat.

22      And the question that we asked was -- which this one

23  document shows -- you know, *Whose idea was it to make this*

24  *change?  And why was it made?*

25      And we think that Judge Alsup is going to be extremely

 1  interested in this issue.  And we're told that they --

 2          THE COURT:  Well, isn't that a question that you'll

 3  have for the 30(b)(6) witness tomorrow?

 4          MR. GONZÁLEZ:  I am going to ask that, Your Honor;

 5  but I just anticipated that the witness is either not -- is not

 6  going to know.  And what I wanted were the documents that they

 7  showed the witness.

 8      And, Your Honor, I mean, look.  Here's what's going on.

 9  If their clients raised this issue in other lawsuits, and they

10  basically say in other lawsuits -- well, they make it sound

11  like a privacy issue.  You know, these are just like phone

12  calls.  And you don't normally record phone calls without

13  telling your employees.

14      That's not why they did it.

15      There must be documentation.  And this is a huge change.

16  There has to be documentation where somebody comes up with the

17  idea proposed in this.

18          THE COURT:  Okay.

19          MR. GONZÁLEZ:  They don't give me that documentation.

20          THE COURT:  Okay.

21          MR. GONZÁLEZ:  And so I said, *Well, who was the*

22  *person?  And why was it done?*

23      I mean, there's got to be documents that show that.

24          THE COURT:  Does anyone from --

25          MR. GONZÁLEZ:  Want to know.

PROCEEDINGS

1      THE COURT:  Does anyone from Waymo want to respond?

2      MR. BAKER:  Sure, Your Honor.  This is Jim Baker.

3   The reason that Mr. González knows about the two prior

4   cases is because we've produced declarations from those two

5   prior cases that discuss this issue.  So we have produced

6   documents.

7   And those -- I'd note that in both of those two prior

8   cases, the Court noted that the litigation holds in those cases

9   directed the people involved in those cases to go on the

10  record; and therefore, there was no problem.  And the motions

11  in those cases were denied.

12  Now, I will also say that we -- in addition to those

13  declarations we produced, Mr. González says, *Well, there must*

14  *have been documents about the analysis*.  And he is right.  And

15  we produced that document yesterday.  So I don't know why he's

16  saying now that he didn't get documents.

17  We produced the document yesterday, pursuant to Your

18  Honor's Rule 502 Order, which we appreciate.  And so he now has

19  the document, and now thinks the change in policy and

20  explaining why it was made --

21      MR. GONZÁLEZ:  So, Your Honor, this is precluded.  I

22  have a document that announces the change in policy.

23  This does not -- this does not explain why this change was

24  made, or who -- or who proposed it.  And that's what's missing

25  still.  And neither do the declarations.  The declarations are

1  these self-serving declarations.

2      **THE COURT:**  No, no, no.  The declarations aren't

3  sufficient, at all.

4      And this is the thing.  You go forward with your

5  deposition, but the witness better be prepared to answer

6  everything.

7      And, for example, if a witness is asked, *Have there ever*

8  *been any discussions at Waymo as to -- regarding this*

9  *messaging, and as it relates to litigation*, and the witness

10  says, *I don't know*, the witness is going to have to come back.

11  I mean, this is what Judge Alsup said.

12      You're trying to blame them for ephemeral; and they're

13  going to show you that you do it just as badly as they do it.

14  So if you want, if that's going --

15      If you want that to be an issue in the trial, then you

16  have to open up your discovery to Uber.  That's just a

17  matter --

18      **MR. BAKER:**  Your Honor -- and I guess what I'm -- the

19  point that I'm making is that we have -- we've produced the

20  document yesterday.  And what Mr. González is telling you, when

21  he says that it doesn't say why we made the change, is wrong.

22  It does.  The e-mail says why the change was made.  And it's an

23  e-mail that was sent by two gentlemen, one of which is a

24  General Counsel in the company.

25      **THE COURT:**  All right.  That's fine.  This isn't

1   formally in front of me, but just make sure, if the

2   representation is that nothing is being withheld, that we've

3   done this part, and nothing is -- right?  So that's all.

4       The same thing that Waymo was concerned about, about the

5   search being fulsome, and the like -- it needs to go on this

6   particular issue.  And I don't think necessarily everything in

7   this particular discovery stage is equal, at all; but on this

8   particular, it is equal.  Okay?

9            **MR. BAKER:**  Understood, Your Honor.

10      As a five --

11      We actually have one additional issue that I would like

12   raised, if you have just a couple more minutes.

13           **THE COURT:**  Sure.

14           **MR. BAKER:**  Is so I referenced Your Honor's Rule 502

15   Order.  And that was -- we had requested you do that.

16      We have an agreement between the parties that the parties

17   would exchange information about the default settings for these

18   ephemeral applications; and then, number two, whether and how

19   their litigation holds address those applications.

20      The parties in there entered that agreement.

21      And then Your Honor entered a Rule 502 Order certifying

22   that any exchange of that information would not be a waiver of

23   privilege.

24      We're prepared to exchange that information.  I told

25   Mr. González that we were prepared to do that.

1    He is now going back and saying, *Well, we'll get you the*
2  *lit.-hold information, but we're not going to give any*.

3    And he's already said, *I don't think there is any from --*
4  *from the Uber side*, but he said, *I'm not going to give you,*
5  because we were required to provide a report.

6    And so now all I'm asking is that he give us the same
7  information.  And that was part of the stipulation.

8    So I don't know why he is -- he's just trying to back out
9  of it now.

10           THE COURT:  Mr. González.

11           MR. GONZÁLEZ:  A response.  A simple response.

12    There is -- there's a service that they use companywide
13  that I'm going to give information for.

14    And if they want to know what service we use, you know
15  that's companywide or company approved -- not a problem.

16    But that's not what he asked for today.  Today he wants
17  default settings for any chat application used by any employee
18  in our 15,000-employee company.  And that's too broad.  And
19  that wasn't the deal.

20    I have an app stamp ready chat thing that some employee --
21  some rogue employee may use.

22    It's the company chat.  What's the default?

23    So we, too, have a company thing that we used.  I think it
24  was called "Wickr," but I -- don't hold me to that.  And I'm
25  willing to give him the default for that.

1        But the e-mail that he wrote to me today said, "any chat

2   application used by employees."  Any employees.  And that's

3   different.  That's not what we had agreed to.

4        So it's got to be an apples for apples.

5             THE COURT:  Okay.

6             MR. BAKER:  And --

7             THE COURT:  Sounds like there's agreement, then.

8             MR. BAKER:  That's exactly what we want.

9             THE COURT:  Sound like there's agreement.  Yay.

10            MR. BAKER:  No, I don't think there is, Your Honor,

11  because it --

12       So our employees only use one chat application for

13  business purposes.  And that's -- that application is called

14  "Hangouts."  And the default setting is -- is off the record.

15  And that's information that Mr. González already has.

16       We want to know the chat application that his employees

17  use for business purposes, and what the default setting is.

18  And he hasn't given it to us.

19       And if it is the case that Uber uses more than one chat

20  application for business purposes, then so be it.  The fact

21  that Google only uses one doesn't mean that they shouldn't have

22  to tell us all of the applications they use, and what those

23  default settings are.

24            THE COURT:  Mr. González, you're not saying that you

25  don't have --

 1          You're saying is it -- if I understood what you were

 2     saying, it's that you're not going to go out and --

 3          Whatever Uber blesses and said, *These are the applications*

 4     *that you use* -- however many they are -- you're going to tell

 5     them what they are, and what their default applications are.

 6     Correct?

 7               **MR. GONZÁLEZ:**  That's correct.  That's correct,

 8     Your Honor.

 9          A company approved that there's two.  If there's three,

10     there's three.

11          I just wanted to be clear that I'm not going to canvass

12     15,000 people, just like I'm quite certain they haven't

13     canvassed 20,000 people.

14               **MR. BAKER:**  That's fine, Your Honor.

15          As long as -- as long as we have all of the, let's say,

16     company-approved chat applications, and what those default

17     settings are, that's all we're asking for.

18               **THE COURT:**  Okay.  Then there is, in fact, agreement.

19          Okay.  Anything else I can try to --

20               **MR. GONZÁLEZ:**  You should never ask that question

21     with this group.

22               **THE COURT:**  I know, but I'm trying to see if I can

23     give you some guidance and head something off, if need be; help

24     Mr. Cooper.

25          Nope?  Okay.

PROCEEDINGS

1          MR. GONZÁLEZ:  Thank you.

2          THE COURT:  Okay.  Thank you.

3          MR. BAKER:  Thank you, Your Honor.

4          MR. GONZÁLEZ:  Thank you, Your Honor.

5          THE CLERK:  We're in recess.

6       (At 3:00 p.m. the proceedings were adjourned.)

7                  **CERTIFICATE OF REPORTER**

8       I certify that the foregoing is a true and correct

9   transcript, to the best of my ability, of the above pages of

10  the official electronic sound recording provided to me by the

11  U. S. District Court, Northern District of California, of the

12  proceedings taken on the date and time previously stated in the

13  above matter.

14      I further certify that I am neither counsel for, related

15  to, nor employed by any of the parties to the action in which

16  this hearing was taken; and, further, that I am not financially

17  nor otherwise interested in the outcome of the action.

18

19

20  _____          December 14, 2017

21          Signature of Transcriber       Date

22

23

24

25