QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
  David A. Perlson (Bar No. 209502)
  davidperlson@quinnemanuel.com
  Melissa Baily (Bar No. 237649)
  melissabaily@quinnemanuel.com
  John Neukom (Bar No. 275887)
  johnneukom@quinnemanuel.com
  Jordan Jaffe (Bar No. 254886)
  jordanjaffe@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Attorneys for WAYMO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>  Plaintiff,<br><br>  vs.<br><br>UBER TECHNOLOGIES, INC.;<br>OTTOMOTTO LLC,<br><br>  Defendants. | CASE NO. 3:17-cv-00939<br><br>**PLAINTIFF WAYMO LLC'S SUBMISSION IN RESPONSE TO THE ORDER REQUIRING FURTHER RESPONSES ON JURY INSTRUCTIONS RE: DAMAGES (DKT. 2362)**<br><br>Judge: The Honorable William Alsup<br><br>Trial Date: February 5, 2018 |

Waymo submits the following response to the Court's Order Requiring Further Responses On Jury Instructions Re Damages (Dkt. 2362).

# I. CITE AND EXPLAIN ALL DECISIONS WHEREIN ACQUISITION ONLY (WITHOUT ANY USE OR DISCLOSURE BY THE DEFENDANT) WAS HELD TO BE ENOUGH UNDER EITHER CUTSA OR DTSA TO SUSTAIN A DAMAGES AWARD (RATHER THAN AN INJUNCTION) AGAINST THAT DEFENDANT. BE CLEAR AS TO WHETHER SUCH A DAMAGES AWARD WAS ACTUALLY RENDERED IN SUCH A CASE.

The district court in *AT&T Comms. v. Pac. Bell*, 1998 U.S. Dist. LEXIS 13459 (N.D. Cal. Aug. 26, 1998), awarded plaintiffs $1.52 million in reasonable royalties for trade secret misappropriation under CUTSA. Although the court's opinion discusses the extent to which defendants "used" the plaintiffs' electronic databases, which contained trade secret customer information called Total Billed Revenue (TBR), on a close reading, it is clear that the basis of the court's misappropriation finding was solely that "defendants improperly *acquired* the TBR data":

> In arguing that they have not "used" the computerized data which constitutes the trade secrets in this case, defendants mistakenly rely on *University Computing*. Unlike the misappropriation and attempted sale of a tangible product contemplated by *University Computing*, **this case simply involves unlawful access to information** about plaintiffs' customers. The Court has already found that **the misappropriation occurred when defendants improperly acquired the TBR**. *See* Summary Judgment Order at 12. Because defendants could have lawfully acquired the information through other avenues, the issue of [t]heir intended use of die [sic] information in their Awards program is irrelevant. *See id.* That defendants never fully implemented the Awards program based on that access is immaterial to the royalty question. It is relevant, however, that defendants conceded that they referred to the TBR for approximately 400,000 high-use customers. It is this use of the data which triggers defendants' financial obligation. Because the central element of this case is access to the information, not the sale of data or the marketing of the Awards program, once defendants accessed the misappropriated TBR from plaintiffs' databases and examined that data they became obligated to pay for their use of that unlawfully acquired information.

*Id.* at *6-7 (emphasis added). The Ninth Circuit later reversed for unrelated reasons. 2000 U.S. App. LEXIS 23215, at *5 (9th Cir. Sept. 8, 2000).

Similarly, in *Lang. Line Servs., Inc. v. Lang. Servs Assocs., Inc.*, 944 F. Supp. 2d 775 (N.D. Cal. 2013), a corporation (i) was sued after its employees acquired trade secrets from a competitor and (ii) argued that it did not know its employees were using the trade secrets. The court, relying on *AT&T*, found that the employees' acquisition alone was sufficient to deny summary judgment to the defendants:

> Language Line clarifies in its response that it seeks a reasonable royalty for past use of trade secrets under § 3426.3(b), and a permanent injunction to prevent future misappropriation under § 3426.2(b). In support of such dual relief, Language Line relies on *AT & T Comm. v. Pacific Bell,* 1998 U.S. Dist. LEXIS 13459 (N.D.Cal. Aug. 26, 1998) in which a court in this district issued

-1-

both a preliminary injunction and a reasonable royalty for past use. In that case, the court rejected the argument that, because defendant had not commercially used the trade secret information, it had reaped no benefit. *Id.* at *5. Rather, the court found that "once defendants accessed the misappropriated [information] from plaintiffs' databases and examined that data they became obligated to pay for their use of that unlawfully acquired information." *Id.* at *7. It is undisputed that here, as in *AT & T,* defendants accessed and examined Language Line data. Whether this finding is sufficient to support a reasonable royalty is, at a minimum, a disputed question of fact. As a result, summary judgment on damages may not be awarded in LSA's favor, and LSA's motion therefore must be denied.

*Id.* at 783–84. The case appears to have later settled.

Courts applying both CUTSA and DTSA have affirmed that improper acquisition **alone** constitutes trade secret misappropriation and allows a plaintiff to seek remedies. For example, in *Gartner, Inc. v. Parikh*, 2008 WL 4601025 (C.D. Cal. Oct. 14, 2008), the plaintiff sought both damages and an injunction under CUTSA based solely on acquisition. Rejecting a defendant's summary judgment motion less than two months before trial, the court emphasized that the lack of evidence of use of the trade secrets was irrelevant to the success of the plaintiff's claim:

> Pointing to *Accuimage Diagnostics,* 260 F.Supp.2d 941, SYCR argues that Gartner cannot establish a misappropriation claim against SYCR because there is no evidence that SYCR used Gartner's trade secrets. But this argument misunderstands the thrust of Gartner's claim. Gartner's UTSA claim is not a "disclosure or use" claim but an "acquisition" claim. Thus, SYCR's reliance on *Accuimage Diagnostics,* 260 F.Supp.2d 941, is misplaced....
> Because Gartner has produced sufficient evidence to indicate that SYCR misappropriated Gartner's trade secrets, this Court DENIES SYCR's Motion for Summary Judgment as it relates to Gartner's Twelfth Claim for Relief (UTSA claim).

*Id.* at *5. If Defendants arguments here were correct that (i) acquisition cannot give rise to damages and (ii) damages are a necessary element of a misappropriation claim, the *Gartner* court would have dismissed the claim, as acquisition could not yield damages, and lack of damages would doom any claim. To the contrary, while the *Gartner* case settled a month later, the court clearly acknowledged that acquisition alone may give rise to damages.

The court in *Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1184 (C.D. Cal. 2006), reached a similar conclusion, refusing to dismiss a CUTSA claim for failure to plead use:

> Plaintiff also argues that Defendants have not alleged the misappropriation of the trade secret because Defendants have not alleged use of the information obtained. (Motion at p. 18.) But the UTSA does not require such allegations. Instead, the UTSA provides that misappropriation may be demonstrated by alleging the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Cal. Civ.Code §

3426.1(b)(1). As noted, Defendants have sufficiently alleged that Plaintiff improperly acquired the trade secrets. (Answer/Counterclaim ¶¶ 22, 32–33, 35–36, 40–41, 45–49.) Accordingly, Plaintiff's motion to dismiss Defendants' misappropriation of trade secrets claim is denied.

*Id.* at 1184. As in *Gartner*, the court refused to accept that acquisition alone cannot give rise to a misappropriation claim. The *Dealertrack* case also ended before damages could be tried to a jury.

Similarly, in *San Jose Const., Inc. v. S.B.C.C., Inc.,* 155 Cal. App. 4th 1528 (Ct. App. 2007), the court rejected defendants' summary judgment argument under CUTSA that there was insufficient evidence of misappropriation because they had acquired, but not used, documents containing the trade secrets. The court ruled that improper acquisition alone can support a misappropriation claim:

> In its summary judgment motion South Bay asserted that it "did not misappropriate anything." South Bay insisted in its reply that it was undisputed that the project binders were returned to SJC and never used by South Bay to solicit the project owners. There are two deficiencies in this argument. First, as discussed above, whether Foust used the information he had taken from SJC on behalf of South Bay was not undisputed. Second, under the UTSA "misappropriation" can occur through improper *acquisition* of a trade secret, not only through use.[6] On appeal, South Bay does not separately address the misappropriation element, but only insists that the absence of a trade secret vitiates the entire misappropriation cause of action. We have concluded, however, that issues of material fact exist as to both elements. South Bay was therefore not entitled to summary adjudication of the cause of action for misappropriation of trade secrets.

*Id.* at 1544 (emphasis in original). At trial, a jury found that that defendant used plaintiffs' trade secrets, but found no damages. *San Jose*, 2009 WL 6866361 (July 10, 2009).

In *ATS Prod., Inc. v. Champion Fiberglass, Inc.*, 2014 WL 466016 (N.D. Cal. Feb. 3, 2014), the court denied a motion to dismiss after finding that acquisition, without use, was sufficient to support a misappropriation claim under CUTSA:

> ATS alleged in its initial complaint that Champion violated CUTSA by misappropriating trade secrets both through acquisition and use. Compl. ¶ 20. In ruling on Champion's motion to dismiss ATS's original complaint, the Court determined that ATS sufficiently alleged misappropriation through acquisition, but not through use of ATS's trade secrets. Order at 4–6. ATS then amended its CUTSA claim, limiting the alleged misappropriation to acquisition only. FAC ¶¶ 17–19, 23. For the following reasons, the Court finds that ATS has sufficiently alleged misappropriation through acquisition.

*Id.* at *2. The *ATS* case settled before trial. *ATS*, 13-02403 (N.D. Cal. Jan. 1, 2016), Dkt. 250. *See also Semper/Exeter Paper Co. v. Henderson Specialty Paper*, 2009 WL 10670619, at *5 (C.D. Cal. Sept. 21, 2009) (finding "improper acquisition" alone sufficient to state a claim where former employee sent trade secrets from his work email to a personal email).

In *Source Prods. & Equip. Co. v. Schehr,* 2017 WL 3721543 (E.D. La. Aug. 29, 2017), the court denied a motion to dismiss because *either* acquisition *or* use suffices for misappropriation under DTSA:

> Defendants first contend that plaintiffs allege only use of trade secrets, not acquisition of trade secrets by improper means.[30] But the amended complaint clearly alleges that Isoflex USA, Isoflex Radioactive, and McKannay both acquired and used plaintiffs' trade secrets.[31] Thus, plaintiffs may sufficiently plead a DTSA claim by alleging plausible facts in support of either the defendants' acquisition or their use of trade secrets.

*Id.* at *4. The case was dismissed before trial. *Id.*, No. CV 16-17528 (E. D. La. Oct. 31, 2017), Dkt. 87.

Finally, in *Brand Energy v. Irex Contr'g Grp.*, the court noted that the DTSA explicitly contemplates three independent bases for liability, including improper acquisition:

> Under the DTSA, "misappropriation" is defined in several different ways. The "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" constitutes a misappropriation. Id. § 1839(5)(A). A misappropriation also occurs when one "disclos[es]" or "use[s]" another's trade secret without the consent of the trade-secret owner. Id. § 1839(5)(B). The DTSA applies to the "misappropriation of a trade secret ... for which any act occurs on or after the date of the enactment of [the DTSA]." Defend Trade Secrets Act of 2016, Pub. L. No. 114–153, § 2(e), 130 Stat. 376 (2016).

2017 WL 1105648, at *3 (E.D. Pa. Mar. 24, 2017). This case is in discovery.

Unlike these CUTSA and DTSA cases explicitly finding acquisition alone a sufficient basis for liability and damages, and the *AT&T* case awarding a royalty after finding only improper acquisition of trade secrets, Waymo is unaware of any CUTSA or DTSA cases finding that acquisition alone is *not* a sufficient basis to sustain a damages award.

**II.  THE JUDGE CAN IMAGINE SCENARIOS WHEREIN A TRADE SECRET PLAINTIFF MIGHT EASILY SUFFER "ACTUAL LOSS" EVEN THOUGH NOTHING MORE THAN ACQUISITION WAS PROVABLE. FOR EXAMPLE, IF A DEFENDANT ACQUIRED A PLAINTIFF'S LIST OF EMPLOYEE PASSWORDS, THEN THE PLAINTIFF WOULD SURELY INCUR EXPENSE IN CHANGING THEM AND IN HIRING A SECURITY FIRM TO ADVISE ON PRECAUTIONS TO TAKE. THIS OUT-OF-POCKET ACTUAL LOSS WOULD BE REAL WHETHER OR NOT THE DEFENDANT USED OR DISCLOSED THE PASSWORDS. DOES CUTSA OR DTSA ALLOW RECOVERY OF SUCH "ACTUAL LOSS" EVEN IN THE ABSENCE OF USE OR DISCLOSURE (OR UNJUST ENRICHMENT)? IS THE RECOVERY VIA THE JUDGE OR THE JURY? DEVELOP FULLY YOUR ANALYSIS AND CITE ALL DECISIONS ON POINT.**

Waymo does not seek damages in the form of actual losses.

**III.  WAYMO SHALL SET FORTH ITS SPECIFIC OFFER OF PROOF AS TO "ACTUAL LOSS" (APART FROM UNJUST ENRICHMENT OR REASONABLE ROYALTY) AND SHALL QUOTE ALL FRCP 26 DISCLOSURES AT THE INITIAL AND TRIAL STAGES WHEREIN SUCH "ACTUAL LOSS" DAMAGES WERE PRESERVED. DEFENDANTS SHALL SUPPLY ALL PLACES WHEREIN ANY SUCH RECOVERY WAS NOT PRESERVED.**

Waymo does not seek damages in the form of actual losses.

**IV.  TO RECEIVE A REASONABLE ROYALTY, CUTSA EXPRESSLY REQUIRES "USE" AND DTSA REQUIRES "USE" OR "DISCLOSURE." WHAT DECISIONS HOLD EXPRESSLY TO THE CONTRARY,**

**MEANING THAT ACQUISITION ALONE IS ENOUGH FOR A REASONABLE ROYALTY?**

As an initial matter, Waymo respectfully disagrees that CUTSA requires "use" and DTSA requires "use" or "disclosure" to receive a reasonable royalty. This misunderstands the language and purpose of those statutory provisions. For example, the royalty provision in CUTSA states:

> If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty ==for no longer than the period of time the use could have been prohibited==.

Cal. Civ. Code § 3426.3(b). Importantly, this language does not require use before recovery of a reasonable royalty. Indeed, if it did, it would inexplicably exclude not only acquisition, but also *disclosure* as a basic for a royalty. Rather, it provides a time limit. The highlighted language ensures that the amount of any reasonable royalty is limited to the period of time during which the misappropriator could have benefitted from the trade secret. This does not limit the types of misappropriation permitting a reasonable royalty, but instructs that, as a general matter, the royalty period should not exceed the period of time during which the trade secret would have been enforceable, and thus useful to the misappropriator.

Unlike patents, which have clearly defined, protected lifespans, the lifespans of trade secrets are not predetermined. Each trade secret deserves protection—and thus, payment of a royalty—for only so long as it remains secret and useful to the misappropriator. The Fifth Circuit recognized this in its seminal common law opinion in *Univ. Computing Co. v. Lykes-Youngstown Corp.*,:

> Unlike a patent which is totally protected for the period of time for which it is granted, ==the protection afforded a trade secret is limited— for it is protected only so long as competitors fail to duplicate it by legitimate, independent research.== Water Services, supra.

504 F.2d 518, 534 (5th Cir. 1974). The drafters of the UTSA also recognized this imperative:

> Like injunctive relief, ==a monetary recovery for trade secret misappropriation is appropriate only for the period in which information is entitled to protection as a trade secret, plus the additional period, if any, in which a misappropriator retains an advantage over good faith competitors because of misappropriation==. Actual damage to a complainant and unjust benefit to a misappropriator are caused by misappropriation during this time alone. *See Conmar Products Corp. v. Universal Slide Fastener Co.*, 172 F.2d 150 (CA2, 1949) (no remedy for period subsequent to disclosure of trade secret by issued patent); *Carboline Co. v. Jarboe*, 454 S.W.2d 540 (Mo.1970) (recoverable monetary relief limited to period that it would have taken misappropriator to discover trade secret without misappropriation). A claim for actual damages and net profits can be combined with a claim for injunctive relief, but, if both claims are granted, the injunctive relief ordinarily will preclude a monetary award for a period in which the injunction is effective.

Comment to the *Uniform Trade Secret Act* § 3 (Natl. Conf. of Commissioners on Uniform State Laws 1985), http://www.uniformlaws.org/shared/docs/trade%20secrets/utsa_final_85.pdf.

The Ninth Circuit's analysis in *Cacique, Inc. v. Robert Reiser & Co.* further demonstrates that CUTSA's royalty provision is not limited to misappropriation by use. In *Cacique*, the plaintiff claimed misappropriation by disclosure for allegedly furnishing the plaintiff's competitor with trade secret data:

> This interlocutory appeal from a civil contempt order tests the ability of a plaintiff to discover a competitor's financial data in an action against a third party for allegedly furnishing the plaintiff's trade secret to the competitor. This action is brought against only the party that allegedly disclosed the trade secret, not the competitor who has been held in contempt. The theory of the complaint apparently is that California's version of the Uniform Trade Secrets Act ("UTSA") authorizes a plaintiff to sue the party who leaked the trade secrets to an unauthorized user for a reasonable royalty based on the earnings of the unauthorized user. It is argued that the financial data is relevant to a determination of the reasonable royalty.

169 F.3d 619, 620 (9th Cir. 1999). Ultimately, the Ninth Circuit found that a reasonable royalty was unavailable because unjust enrichment was provable, not because a reasonable royalty is unavailable generally for misappropriation by disclosure. *Id.* at 624. That the Ninth Circuit reached the merits of the dispute, despite citing the applicable CUTSA provision in full, *id.* at 621 n.4, evidences that it did not consider § 3426.3(b) to categorically prohibit plaintiffs pleading misappropriation by disclosure from obtaining reasonable royalties. And if disclosure can serve as a predicate for a reasonable royalty despite its exclusion from § 3426.3(b), acquisition can too. Moreover, the underlying logic—that the parallel language in CUTSA and DTSA is a limitation on duration and amount, not a condition precedent to recovery—indicates that DTSA's statutory language similarly places no such restrictions on recovery.

In addition, as described above, multiple decisions hold that acquisition alone is sufficient for liability under CUTSA. *See supra* § I. And at least two strongly indicate that acquisition alone is sufficient to permit a reasonable royalty. *See AT&T*, 1998 U.S. Dist. LEXIS 13459, at *6-7; *Language Line*, 944 F. Supp. 2d at 783-84. By contrast, Waymo has found no cases under either CUTSA or DTSA *denying* a reasonable royalty because the misappropriation was based solely on improper acquisition.

## V. CITE AND EXPLAIN ALL CUTSA OR DTSA DECISIONS WHEREIN A JURY AWARDED A REASONABLE ROYALTY OVER THE OBJECTION THAT THE ISSUE WAS FOR THE JUDGE TO DECIDE (AND VICE VERSA).

Waymo does not dispute that, in state court, reasonable royalty damages under CUTSA are an issue for the court, not the jury. Here, however, the issue is Waymo's Seventh Amendment right to a

jury on its CUTSA and DTSA claims in federal court, including its claim for reasonable royalties.

The only court to previously address this Seventh Amendment issue, in *De Lage Landen v. Third Pillar,* held that the Seventh Amendment applies in federal court and requires the jury to decide a reasonable royalty under CUTSA:

> In sum, the Seventh Amendment to the Constitution guarantees Third Pillar the right to a jury determination of reasonable royalties under the CUTSA. Accordingly, if Third Pillar's unjust enrichment is determined to be unprovable at trial, the issue of reasonable royalties under the CUTSA will be decided by the jury.

2011 WL 1627899, at *3 (E.D. Pa. Apr. 28, 2011). *De Lage* observed that jury trials are afforded as a matter of right for legal claims. *Id.* at *2. The court then considered whether money damages in the form of a reasonable royalty is a legal remedy, and looked to a "close analog" of trade secret misappropriation—patent infringement—to conclude that a reasonable royalty is a legal remedy requiring a jury trial:

> Our Court of Appeals has held that a close analog to trade secret misappropriation actions are cases involving patent infringement. See Int'l Indus., Inc. v. Warren Petroleum Corp., 248 F.2d 696, 699 (3d Cir.1957). The Supreme Court has recognized that "the descent of today's patent infringement action [comes] from the infringement actions tried at law in the 18th century, and there is no dispute that infringement cases today must be tried to a jury, as their predecessors were more than two centuries ago." Markman v. Westview Instruments, Inc., 517 U.S. 370, 377, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). A jury's award of reasonable royalties is "not restitutional in nature," but "simply money damages awarded in an action at law." See Injection Research Specialists, Inc. v. Polaris Indus. L.P., Nos. 97–1516, 97–1545, 97–1557, 1998 U.S.App. LEXIS 18745, *42 (Fed. Cir. Aug. 13, 1998). The close relationship between a patent infringement action and a trade secret misappropriation action weighs in favor of a Seventh Amendment right to a jury trial on the issue of reasonable royalties under the CUTSA.

*Id.* The *De Lage* case settled before trial.[1]

This analysis applies with equal force to the DTSA claim in this case for two reasons. First, under DTSA's explicit language, a reasonable royalty is merely an alternative to other forms of monetary damages—a classic legal remedy. 18 U.S.C. 1836(b)(3)(B)(ii) ("*in lieu of damages* measured by any other methods, *the damages* caused by the misappropriation measured by imposition of liability for a reasonable royalty . . . .") (emphasis added). The Seventh Amendment therefore demands a jury trial.

---

[1] The defendant's brief in *De Lage* explains relevant issues in detail, including the presumption of a right to a jury, other cases finding that reasonable royalties are legal in nature, and additional UTSA cases sending reasonable royalties to a jury. 09-cv-2439, (E.D. Pa. Apr. 19, 2011), Dkt. 213.

Second, multiple courts ruling on state law UTSA analogues to DTSA have assigned reasonable royalties to the jury, *see* Dkt. 2077 at 5-6, while CUTSA's unique assignment of this question to the judge is essentially an historical accident which should not be extended to DTSA, *see id.* at 6-7.

Waymo is aware of only two DTSA cases tried to a verdict, only one of which is relevant to the Court's question. *See Dalmatia Imp. Grp. v. Foodmatch, Inc.*, No. 16-cv-2767 (E.D. Pa. May 3, 2017), Dkt. 321. While the plaintiff there asked for a jury instruction on reasonable royalty, *id.*, Dkt. 210 at 58, the final jury instructions are not on the docket, and there is no indication if the jury, in awarding $500,000, addressed reasonable royalty damages, *id.*, Dkt. 321 ¶ 5.

## VI. CITE AND EXPLAIN ALL CUTSA OR DTSA DECISIONS THAT EXPRESSLY HOLD THAT ONLY A JUDGE CAN AWARD A REASONABLE ROYALTY AND THOSE THAT EXPRESSLY HOLD THAT THE ISSUE IS FOR THE JURY.

California state courts have often found that under CUTSA a royalty must be set by the judge, not the jury. *E.g. Ajaxo v. E\*Trade,* 187 Cal. App. 4th 1295 (2010). Waymo does not dispute that is true in *state* court. But this *federal* Court is bound by the Seventh Amendment and must send legal remedies, like monetary damages, to the jury. *See* Dkt. 2077 at 4-9; *De Lage*, 2011 WL 1627899, at \*2.

A number of federal courts deciding CUTSA claims have reserved the determination of reasonable royalties for the judge, or noted that this is what CUTSA requires. *See, e.g.*, *Atl. Inertial Sys. v. Condor Pac. Indus.*, 545 F. App'x 600, 601 (9th Cir. 2013). Importantly, however, Waymo has been unable to find a single instance in which either (i) a party to these cases presented a Seventh Amendment challenge to this assignment, or (ii) the court conducted a Seventh Amendment analysis before making that assignment.[2] In short, no federal court other than *De Lage* has addressed this issue, and that court *expressly* found a Seventh Amendment right to a jury trial on reasonable royalties.[3]

As discussed above, while Waymo is not aware of any decision that has reached the reasonable royalty issue under DTSA, a federal court interpreting DTSA remains bound by the Seventh Amendment, and the analysis discussed above and in Dkt. 2077 must apply.

---

[2] Aside from *De Lage,* the only briefing Waymo has found on this issue is the appellate briefs in *Atl. Inertial*, where the *plaintiff* argued (after a minimal, self-serving, and incorrect analysis) and the defendant later agreed, that the Seventh Amendment did not require a jury to decide reasonable royalties. *See* Pl/App't Br., 2012 WL 1864645 at 39; Deft/Resp't Br., 2012 WL 2524688, at 47.

[3] The *De Lage* court also noted its authority to ask the jury for an advisory verdict. Dkt. 2077 at 9.

**VII. CUTSA ALLOWS A REASONABLE ROYALTY ONLY FOR THE PERIOD OF TIME DURING WHICH THE USE COULD HAVE BEEN ENJOINED. SINCE THE JUDGE DECIDES INJUNCTION ISSUES, WHY SHOULDN'T THE JUDGE ALSO DECIDE THE REASONABLE ROYALTY ISSUE AS ANCILLARY TO EQUITABLE RELIEF? HOW CAN THE JURY DETERMINE THE APPROPRIATE PERIOD OF TIME DURING WHICH THE USE COULD HAVE BEEN ENJOINED?**

First and foremost, as set forth above (§§ V-VI), the Seventh Amendment guarantees Waymo the right to have the jury decide reasonable royalty damages. The presence of a common factual determination underlying both the reasonable royalty and permanent injunction inquiries under CUTSA—namely, the period of time that use may be prohibited—does not change the legal nature of the reasonable royalty, impair Waymo's Seventh Amendment rights, or affect the inquiry under DTSA. If the Court is inquiring as to whether the jury is capable of determining the length of time the use could have been prohibited (or enjoined), courts have explained that period as the time required to reverse engineer or independently derive the trade secret. *See, e.g., InfoSpan, Inc. v. Emirates*, 2016 WL 8849699, at *9 (C.D. Cal. June 8, 2016). Such fact questions are well within the province of the jury. *See* Dkt. 2010, Tentative Jury Instructions on Trade Secret Misappropriation, Verdict Question 6 ("As to any defendant marked "Yes" in Question No. 4, state the number of days saved in its development timeline by such defendant by reason of its misappropriation of enforcible trade secrets.").

Moreover, Waymo is currently seeking and CUTSA permits the jury to award a one-time, fully paid-up royalty. *Chang v. Biosuccess*, 76 F. Supp. 3d 1022, 1038 (C.D. Cal. 2014). With a fully paid-up royalty, the jury does not need to determine the period of time that the use of the trade secrets could have been enjoined. Rather, as the court in *02 Micro v. Monolithic Power Sys., Inc.*, recognized, a single lump sum royalty is consistent with § 3426.3 because it is a payment "while the use was prohibited":

> Mr. Meyer posits a "paid-up royalty," a one-time payment that allows the licensee to practice the trade secret in the future without making any more payments. As correctly noted by MPS, the UTSA provides for a reasonable royalty "for no longer than the period of time the use could have been prohibited." Cal. Civ.Code § 3426.3(b). Thus, MPS argues that, because the trade secret became public six months after the hypothetical negotiation, it should only have to pay a fourth of the $900,000, which Mr. Meyer calculated based on a two-year benefit to MPS. But a paid-up royalty, unlike a running royalty, cannot be divided. Parties often enter into an agreement not knowing when the trade secret will become public; it is something the parties consider, and sometimes risk, during their negotiations. Bench Trial Tr. 77:8–19; 80:17–81:14. MPS provides no evidence that it would not have entered into this hypothetical agreement, or would have paid far less, because it knew that the trade secret would soon become public. Nor does MPS cite a case holding that a paid-up reasonable royalty should not be imposed, or must be divided, if the trade secret becomes public shortly after the hypothetical negotiation. In sum, the $900,000 reasonable

royalty does not require MPS to pay for longer than the period of time the use could have been prohibited; instead, it requires MPS to make a one-time payment while the use was prohibited. Therefore, the Court grants O2 Micro a reasonable royalty in the amount of $900,000.

399 F. Supp. 2d 1064, 1078 (N.D. Cal. 2005) *subsequent history omitted*. "Going back in time" to a hypothetical negotiation before the trade secrets had been acquired would necessarily take into account the uncertainties and risks the parties would have faced at such a negotiation. *See also InfoSpan*, 2016 WL 8849699, at *13 (expert's proffered lump sum paid up royalty fell "within the framework" of CUTSA). This issue is also explored in the comments to the UTSA:

> SECTION 2. INJUNCTIVE RELIEF. (b) In exceptional circumstances, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the for which use could have been prohibited. Exceptional circumstances include, but are not limited to, a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation that renders a prohibitive injunction inequitable.
> COMMENT: The general principle of Section 2(a) and (b) is that an injunction should last for as long as is necessary, but no longer than is necessary, to eliminate the commercial advantage or "lead time" with respect to good faith competitors that a person has obtained through misappropriation. Subject to any additional period of restraint necessary to negate lead time, an injunction accordingly should terminate when a former trade secret becomes either generally known to good faith competitors or generally knowable to them because of the lawful availability of products that can be reverse engineered to reveal a trade secret.
> For example, assume that A has a valuable trade secret of which B and C, the other industry members, are originally unaware. If B subsequently misappropriates the trade secret and is enjoined from use, but C later lawfully reverse engineers the trade secret, the injunction restraining B is subject to termination as soon as B's lead time has been dissipated. All of the persons who could derive economic value from use of the information are now aware of it, and there is no longer a trade secret under Section 1(4). It would be anti-competitive to continue to restrain B after any lead time that B had derived from misappropriation had been removed.

*UTSA* § 2. Assessing the value of such lead time as part of a royalty would dovetail with the jury's other decisions. As discussed above in Section 4, this is a question of fact that the jury can and should resolve.

## VIII. RESPOND TO EVERY CITATION AND ITEM OF ANALYSIS SET FORTH BY THE OTHER SIDE IN THE MOST RECENT SUPPLEMENTAL BRIEFS.

The arguments in Defendants' supplemental brief are misguided. First, Defendants claim that a reasonable royalty is not available for acquisition alone. Dkt. 2350 at 1. As demonstrated above, that is incorrect. *See supra* §§ 1 & 4. Second, Defendants rely on *Unilogic* and *Silvaco* for the proposition that damages are an element of trade secret misappropriation. Dkt. 2350 at 1. But, as Waymo has demonstrated, these cases actually support *Waymo's* position, *see* Dkt. 2351 at 9-10, and considerable authority holds that damages are *not* integral to a CUTSA claim, *see id.* at 1-6; *see also, e.g., Leatt v.*

*Innov. Safety Tech.*, 2010 WL 11442713, at *3 (S.D. Cal. Aug. 24, 2010) (describing elements of CUTSA claim without including damages); *AccuImage v. Terarecon*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) (same); *Oculus v. Nofil*, 2007 WL 4044867, at *6 (N.D. Cal. Nov. 15, 2007) (same); *Lilith Games v. UCool*, 2015 WL 5591612, at *9 (N.D. Cal. Sept. 23, 2015) (same).

Third, Defendants argue that there must be "some unquantifiable harm or unjust benefit in order to award a reasonable royalty," despite the explicit holding of *Atl. Inertial*, 545 F. App'x at 601. Dkt. 2350 at 4. Defendants base this faulty conclusion on the remand opinion in *Atl. Inertial*, where the court discussed numerous factors used to evaluate royalty damages, then observed that, *among many* factors weighing in favor of a royalty was that defendants obtained a benefit from their use of the trade secrets. 2015 WL 3825318, at *7 (C.D. Cal. June 18, 2015). But any suggestion that Judge Snyder reversed or reinterpreted the Ninth Circuit's explicit statement that "no harm" was required for a royalty to mean that harm or benefit *was* required is incorrect.

Prior to appeal, the district court in *Atl. Inertial* held that harm was an element of a CUTSA claim, and dismissed the claim due to the plaintiff's failure to meet that requirement. 2011 WL 13124036, at *4 (C.D. Cal. Aug. 25, 2011). On appeal, the Ninth Circuit specifically rejected this conclusion, holding "no harm" was necessary for the grant of a reasonable royalty:

> The district court erred in ruling, at the damages stage, that the jury's finding of no harm precluded a reasonable royalty. The statute provides for a reasonable royalty "[i]f neither damages nor unjust enrichment caused by misappropriation are provable." Cal. Civ.Code § 3426.3(b). That requirement may be met by either a lack of sufficient evidence or an adverse jury finding with respect to those forms of relief. *Ajaxo Inc. v. E*Trade Fin. Corp.,* 187 Cal.App.4th 1295, 115 Cal.Rptr.3d 168, 172–73 (2010). The jury's finding that Defendants did not proximately cause harm to Plaintiff is therefore consistent with the availability of a royalty under the statute.[1]
>
> [1] The California Court of Appeal did not hold otherwise, in *Ajaxo*, when it wrote that "if a plaintiff is unsuccessful in proving unjust enrichment before the jury, the trial court would still have to decide whether the plaintiff suffered any measurable loss of its own before the reasonable royalty remedy would become available." 115 Cal.Rptr.3d at 183. *Ajaxo* held only that the court must decide *whether* the plaintiff suffered a loss before awarding a royalty, not that it must determine that plaintiff did suffer such a loss. *Id.*

545 F. App'x at 601 and n.1. The Ninth Circuit made no mention of the quantum of harm in ruling that "*no* harm" was required for a reasonable royalty. And any attempt to gloss "*no* harm" into "no *quantifiable* harm" must fail. As noted above, the jury at the district court level found both that no quantum of injury had been shown, and also that no proximate cause was established. *See also Atl.*

-11-

*Inertial*, 2015 WL 3825318, at *4–5 (describing jury findings). Thus, the jury did not find that the plaintiff had succeeded in showing proximate harm but failed in showing a quantum of it; rather, the plaintiff had failed to show *the presence of any compensable injury at all*. "No harm" means "*no* harm," and there is no evidence the Ninth Circuit meant anything other than what it wrote.

To the extent the district court's remand opinion seems to reinsert the concept of harm into the royalty analysis, it is a by-product of a concession by the plaintiff (AIS), apparently based on language regarding "use" imported from the pre-UTSA *Univ. Computing* opinion into *Ajaxo* and *Altavion*:

> AIS also relies on *Ajaxo* and *Altavion,* emphasizing public policy concerns raised by the Court of Appeal and asserting that both cases "affirm a clear presumption in favor of the trial court's award of a reasonable royalty." Pl.'s Br. Standard at 4. ==AIS agrees that the defendant must have benefitted from the misappropriation, "if not directly, in a non-pecuniary way," in order to justify a royalty award, but contends that this condition is satisfied since Condor II indisputably used AIS' trade secrets "to manufacture and sell gyroscopes [to the U.S. government] that directly competed with AIS' gyroscopes."== *Id.* at 4–5, 171 Cal.Rptr.3d 714. AIS contends that, under *Altavion,* the following factors inform the exercise of the Court's discretion to award a royalty: (1) whether defendants used the misappropriated trade secrets; (2) whether the trade secrets were obtained improperly; (3) whether costs were incurred in developing the trade secret in the first instance; and (4) whether the parties had previously considered a licensing agreement. *Id.* at 6–7, 171 Cal.Rptr.3d 714. According to AIS, all of these factors weight in favor of awarding a royalty.
>
> …
>
> In discussing the equitable origins of the reasonable royalty standard and the purpose of its application, both the *Ajaxo* and *Altavion* courts relied on *University Computing Co. v. Lykes–Youngstown Corp.*, 504 F.2d 518 (5th Cir.1974). *Ajaxo*, 187 Cal.App.4th at 1313, 115 Cal.Rptr.3d 168; *Altavion*, 226 Cal.App.4th at 68–72, 171 Cal.Rptr.3d 714. In *University Computing*, the defendant misappropriated a computerized inventory system from plaintiff, intending to sell the system to its own customers. 504 F.2d at 527–530. Despite marketing efforts, defendant had not actually sold the system before the misappropriation was discovered. *Id.* On appeal, the court affirmed the jury's verdict for plaintiffs on the misappropriation claim, and extensively examined the caselaw concerning the appropriate remedy for such claims. Addressing the propriety of application of the reasonable royalty measure, the court explained that "[c]ertain standards do emerge from the cases." *Id.* at 539. Specifically, in order to apply the measure, ==**"[t]he defendant must have actually put the trade secret to some commercial use**== ... [since] [t]he law governing protection of trade secrets essentially is designed to regulate unfair business competition, and is not a substitute for criminal laws against theft or other civil remedies for conversion." *Id.*

*Atl. Inertial*, 2015 WL 3825318, at *4–5, 6. The trial court's substitution of "no *pecuniary* harm" for "no harm" was inconsistent with the Ninth Circuit's ruling and prompted by the parties' own incorrect reading of the law and importation of an out-of-date pre-UTSA "use" standard from *Univ. Computing*. That flawed analysis is not the law, has been cited by no other cases, and carries no weight here.

DATED: December 15, 2017        QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Charles K. Verhoeven*
    Charles K. Verhoeven
    Attorneys for WAYMO LLC