| | |
|---|---|
| 1 | MICHAEL A. JACOBS (CA SBN 111664) |
| | MJacobs@mofo.com |
| 2 | ARTURO J. GONZÁLEZ (CA SBN 121490) |
| | AGonzález@mofo.com |
| 3 | MORRISON & FOERSTER LLP |
| | 425 Market Street |
| 4 | San Francisco, California 94105-2482 |
| | Tel: 415.268.7000 / Fax: 415.268.7522 |
| 5 | |
| | KAREN L. DUNN (*Pro Hac Vice*) |
| 6 | kdunn@bsfllp.com |
| | HAMISH P.M. HUME (*Pro Hac Vice*) |
| 7 | hhume@bsfllp.com |
| | BOIES SCHILLER FLEXNER LLP |
| 8 | 1401 New York Avenue, N.W. |
| | Washington, D.C. 20005 |
| 9 | Tel: 202.237.2727 / Fax: 202.237.6131 |
| | |
| 10 | WILLIAM CARMODY (*Pro Hac Vice*) |
| | bcarmody@susmangodfrey.com |
| 11 | SHAWN RABIN (*Pro Hac Vice*) |
| | srabin@SusmanGodfrey.com |
| 12 | SUSMAN GODFREY LLP |
| | 1301 Avenue of the Americas, 32nd Floor |
| 13 | New York, NY 10019-6023 |
| | Tel: 212.336.8330 / Fax: 212.336.8340 |

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC, <br><br> Plaintiff, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC, <br><br> Defendants. | Case No. 3:17-cv-00939-WHA <br><br> **DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S SECOND SUPPLEMENTAL BRIEF ON JURY INSTRUCTIONS** <br><br> Trial Date: February 5, 2018 |

Defendants' Uber Technologies, Inc. and Ottomotto LLC respectfully submit the following responses to the Court's December 11, 2017 Order (Dkt. 2362):

> *"1. Cite and explain all decisions wherein acquisition only (without any use or disclosure by the defendant) was held to be enough under either CUTSA or DTSA to sustain a damages award (rather than an injunction) against that defendant. Be clear as to whether such damages award was actually rendered in such a case."*

Defendants are not aware of any cases holding that acquisition alone was sufficient to sustain a damages award under the CUTSA or DTSA or awarding damages for acquisition alone. To be clear, Defendants do not dispute that, based on the statutory text, damages (but not a reasonable royalty) could theoretically be awarded for acquisition alone. But, Waymo has never identified actual losses or unjust enrichment arising solely from acquisition, so the issue is moot.

> *"2. The judge can imagine scenarios wherein a trade secret plaintiff might easily suffer 'actual loss' even though nothing more than acquisition was provable. For example, if a defendant acquired a plaintiff's list of employee passwords, then the plaintiff would surely incur expense in changing them and in hiring a security firm to advise on precautions to take. This out-of-pocket actual loss would be real whether or not the defendant used or disclosed the passwords. Does CUTSA or DTSA allow recovery of such 'actual loss' even in the absence of use or disclosure (or unjust enrichment)? Is the recovery via the judge or the jury? Develop fully your analysis and cite all decisions on point."*

As noted above, Defendants agree that CUTSA and DTSA allow recovery of a provable and properly disclosed "actual loss" based on acquisition alone. While Defendants are not aware of any cases on point, this conclusion is apparent from the statutory text. Both CUTSA and DTSA define misappropriation to include acquisition (separate and apart from use and disclosure). *See* Cal. Civ. Code § 3426.1(b)(1); 18 U.S.C. § 1839(5)(A). And while both CUTSA and DTSA expressly limit an award of a reasonable royalty to instances of misappropriation by use (and, in the case of the DTSA, disclosure), the CUTSA and DTSA provisions relating to recovery of actual losses and unjust enrichment refer generally to "misappropriation" without any "use" or "disclosure" limitations. *See* Cal. Civ. Code § 3426.3(a); 18 U.S.C. § 1836(b)(3)(B)(i).

Under the CUTSA, claims for actual loss and/or unjust enrichment are decided by the jury. *See, e.g., Atl. Inertial Sys., Inc. v. Condor Pac. Indus. of Cal. Inc.*, 545 F. App'x 600, 601-602 (9th Cir. 2013) (following jury verdict rejecting CUTSA damages claim, remanding for district court to determine whether reasonable royalty was warranted). Though no case has

squarely addressed the question, Defendants do not see any reason why this rule would be different for claims premised on acquisition only. Defendants have not located any DTSA cases on this point, but do not believe the result would be any different.

> "3. *Waymo shall set forth its specific offer of proof as to 'actual loss' (apart from unjust enrichment or reasonable royalty) and shall quote all FRCP 26 disclosures at the initial and trial stages wherein such 'actual loss' damages were preserved. Defendants shall apply all places wherein any such recovery was not preserved.*"

Waymo did not preserve any claim for "actual loss" damages in its Rule 26 disclosures or its interrogatory responses. Waymo served its initial disclosures on April 3, 2017, supplemented on June 21, 2017, and then served a "corrected" disclosure on June 22, 2017. None of these disclosures mention any actual loss. *See* Dkt. 797-2 and 797-3.

Uber also served a damages interrogatory asking Waymo to "describe in the detail the complete basis for any damages You contend You have suffered or will suffer." Dkt. 2254-7 at 4. Waymo responded on July 17, supplemented on August 10, and supplemented again on August 24. In each of its responses, Waymo addressed only unjust enrichment and reasonable royalty, with no claim of actual loss or request for compensatory damages. *See, e.g.*, *id.* at 4-22, 32-46, 53-68.

> "4. *To receive a reasonable royalty, CUTSA expressly requires 'use' and DTSA requires 'use' or 'disclosure.,' What decisions hold expressly to the contrary, meaning that acquisition alone is enough for a reasonable royalty.*"

No case has held that acquisition alone is enough for a reasonable royalty under either CUTSA or DTSA. Waymo's cited authorities are distinguished in response to Question 8.

> "5. *Cite and explain all CUTSA or DTSA decisions wherein a jury awarded a reasonable royalty over the objection that the issue was for the judge to decide (and vice versa).*"

Defendants were unable to locate any CUTSA or DTSA cases wherein a jury awarded a reasonable royalty over the objection that the issue was for the court to decide, or any wherein a court awarded a reasonable royalty over an objection that the issue is for the jury.

> "6. *Cite and explain all CUTSA or DTSA decisions that expressly hold that only a judge can award a reasonable royalty and those that expressly hold that the issue is for the jury.*"

In *FAS Technologies, Ltd. v. Dainippon Screen Mfg.*, No. C 00-01879-CRB, 2001 WL 1159776 (N.D. Cal., Sept. 21, 2001), the plaintiff argued that, despite the fact that it could not prove damages or unjust enrichment, there was sufficient evidence for a reasonable royalty and the "amount of a reasonable royalty clearly is a question of fact for the jury." *Id.* at *3. The Court rejected its argument, explaining:

> FAS' argument is unpersuasive for several reasons. First, based on the plain language of the statute, the Court—not the jury—determines if and in what amount a royalty should be awarded. *See* Cal. Civ. Code section 3416.3(b) ("the Court may order payment of a reasonable royalty").

*Id.*

One district court in Pennsylvania agreed with the *FAS Technologies* court's reading of the statute but nonetheless found that the Seventh Amendment required the issue to be submitted to the jury. In *De Lage Landen Operational Services, LLC v. Third Pillar Systems*, LLC, Civ. No. 09-2439, 2011 WL 1627899 (E.D. Pa. Apr. 28, 2011), the court concluded that the plain language of the CUTSA requires the judge and not the jury to determine whether to award a reasonable royalty, but then went on to hold that this requirement violates the Seventh Amendment and that the reasonable royalty question must be submitted to the jury:

> In sum, the Seventh Amendment to the Constitution guarantees Third Pillar the right to a jury determination of reasonable royalties under the CUTSA. Accordingly, if Third Pillar's unjust enrichment is determined to be unprovable at trial, the issue of reasonable royalties under the CUTSA will be decided by the jury.

*Id.* at **2-3 (citations omitted). Presumably because the district court had already issued a permanent injunction at the time of this ruling and the royalties were for past use pursuant to Cal. Civ. Code § 3426.3—rather than for future use pursuant to Cal. Civ. Code § 3426.2(b) (as discussed below)—the district court did not address whether the royalty was intertwined or incidental to injunctive relief. *Id.* at 1-3. *De Lage* settled before trial.[1]

---

[1] It is no surprise that parties have not challenged California's court-decides rule in more situations. It has been widely used in state and federal cases without objection. *See, e.g., Atlantic Inertial Sys., Inc.*, 545 F. App'x at 601-602; *02 Micro Intern. Ltd. v. Monolithic Power Sys. Inc.*, 399 F. Supp. 2d 1064, 1077-78 (N.D. Cal. 2005) (awarding reasonable royalty under CUTSA after setting aside jury's unjust enrichment verdict as speculative).

> *"7. CUTSA allows a reasonable royalty only for the period of time during which the use could have been enjoined. Since the judge decides injunction issues, why shouldn't the judge also decide the reasonable royalty issue as ancillary to equitable relief? How can the jury determine the appropriate period of time during which the use could have been enjoined?"*

As an initial matter, it is important to note that each of CUTSA and DTSA has two separate and different reasonable royalty provisions. The first reasonable royalty provision appears in the injunctive relief sections of each statute. CUTSA states: "If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited." Cal. Civ. Code § 3426.2(b). DTSA contains a nearly identical provision: "In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may (A) grant an injunction … (iii) in exceptional circumstances that render an injunction inequitable, that conditions future use of the trade secret upon payment of a reasonable royalty for no longer than the period of time for which such use could have been prohibited." 18 U.S.C. § 1836(b)(3)(A)(3). These provisions apply where the reasonable royalty is premised on the continuing use of the trade secrets and the non-issuance of an injunction. As the Ninth Circuit explained regarding Section 3426(b):

> For the first time on appeal, Cacique argues that the Marquez sales information is relevant to a reasonable royalty under § 3426.2(b) of the California UTSA. Section 3426.2(b) provides in pertinent part that '[i]f the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty....' Any reasonable royalty awarded under § 3426.2(b) would compensate Cacique for the continuing use of the process by Reiser after the conclusion of the lawsuit if the district court is convinced that an injunction will be 'unreasonable.' We decline to address this argument because it has not yet been presented to the district court and was not fully briefed on this appeal. Cacique may present this argument to the district court on remand."

*Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 624 (9th Cir. 1999) (emphasis added). In those circumstances, **both** DTSA and CUTSA limit the royalty to covering only "the period of time for which such use could have been prohibited."

The second reasonable royalty provision appears in the "damages" section of each statute,

and focuses upon damages arising from past use (or past disclosure). The DTSA states that the court can award "in lieu of damages measured by any other methods, the damages *caused by the misappropriation* measured by imposition of liability for a reasonable royalty *for the misappropriator's unauthorized disclosure or use* of the trade secret." 18 U.S.C. § 1836(b)(3)(B)(ii). The CUTSA states that "[i]f neither damages nor unjust enrichment *caused by misappropriation* are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited." Cal. Civ. Code § 3426.3(b).

While Waymo has cited these latter sections of each statute as the basis of its royalty request, *see* Dkt. 933-3 at 14-15, and Uber has agreed that a claim of royalties under that section could be submitted to the jury on an advisory basis, Waymo is actually seeking a future use royalty pursuant to Cal. Civ. Code § 3426.2 and 18 U.S.C. § 1836(b)(3)(A)(iii). All of the reasonable royalty arguments that Waymo has disclosed to date assume that an injunction is not granted and that Uber will have the continuing use of the trade secrets when it commercializes AV technology. *See* Dkt. 1786-3 (Wagner Dep.) at 124:2-5 (Q. "And your reasonable royalty opinion assumes that the court will not grant a permanent injunction, right?" A. "I -- I believe that's correct."); *id.* at 45:1-4; *id.* at 142:18-143:19 (damages opinions depend on Uber going to market with Fuji); *see generally* Dkt. 933-3 at 15-19 (stating that "Waymo's damages expert will analyze and compute the amount of reasonable royalty damages" and then describing considerations dependent on Uber's future use of the trade secrets, such as "many years of future cost savings due to employing Waymo's trade secrets in Uber's LiDAR systems"). And Waymo has not offered any royalty calculations that would be applicable in the event an injunction is granted. *See* Dkt. 1786-3 at 45:5-9.

An award of a royalty for future use in lieu of injunctive relief is for the judge to decide. It is well-established that "[i]njunctive relief constitutes a traditional equitable remedy" and that:

> [a] monetary award may be equitable when it is merely incidental to or intertwined with injunctive relief. To illustrate, money damages in the form of back pay are equitable when awarded as a complement to, rather than in addition to and distinct from, injunctive reinstatement. Along the same lines, money damages in the form of front pay are equitable when awarded in lieu of injunctive reinstatement. In contrast, an award of money damages to compensate for reputational injury, mental anguish,

emotional distress, or loss of job responsibilities constitutes a legal remedy.

*Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864, 866 (9th Cir. 2017) (citations omitted).

In *Traxler v. Multnomah County,* the Ninth Circuit had previously expanded upon why an upfront payment in lieu of equitable relief is properly characterized as equitable relief and is for the judge, not the jury, to determine:

> The characterization of front pay as an equitable remedy is consistent with the general nature of front pay in the context of other employment-related statutes. Although pure money damages are "'the traditional form of relief offered in the courts of law,' " *Smith v. Barton,* 914 F.2d 1330, 1337 (9th Cir. 1990) (quoting *Curtis v. Loether,* 415 U.S. 189, 196 (1974)), an award of monetary damages may constitute equitable relief if it is "'incidental to or intertwined with injunctive relief.'" *Chauffeurs Local No. 391 v. Terry,* 494 U.S. 558, 571 (1990) (*quoting Tull v. United States,* 481 U.S. 412, 424 (1987)). The leading employment case on this point is *Pollard v. E.I. du Pont de Nemours & Co.,* a Title VII case in which the Supreme Court distinguished front pay from compensatory damages. 532 U.S. 843 (2001). The Court held that "[i]n cases in which reinstatement is not viable ... courts have ordered front pay as a substitute for reinstatement." *Id.* at 846. In other words, "'[a] front pay ... award is the monetary equivalent of the equitable remedy of reinstatement.'" *Id.* at 853 n. 3 (quoting *Blum v. Witco Chem. Corp.,* 829 F.2d 367, 383 (3d Cir. 1987)). As a practical matter, front pay is awarded at the court's discretion only if the court determines that reinstatement is inappropriate, such as where no position is available or the employer-employee relationship has been so damaged by animosity that reinstatement is impracticable. *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728 (2d Cir. 1984).
>
> Recognizing that front pay is an equitable remedy, it makes little sense to say that the availability of front pay is a judicial determination and the amount a jury determination. The statute does not support such a result. Splitting the remedy into an equitable and a legal component is a false dichotomy. This is a classic case where a monetary award is inextricably linked with the equitable determination regarding reinstatement. As a proxy for reinstatement, front pay is an equitable award within the purview of the court, not the jury.

596 F.3d 1007, 1012 (9th Cir. 2010) (Supreme Court citations shortened).

The reasonable royalty sought by Waymo is no different than "front pay" ordered in lieu of injunctive reinstatement in the employment context. Like front pay, it is "awarded at the court's discretion only if the court determines that [an injunction] is inappropriate," it is explicitly designed to be the "monetary equivalent of the equitable remedy of [injunctive relief]," and it is "inextricably linked with the equitable determination regarding [injunctive relief]." *Id.*

Further, under both the DTSA's and CUTSA's future use royalty provisions and the CUTSA's past use provision, "the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited." Cal. Civ. Code §§ 3426.3(b), 3426.2(b); 18 U.S.C. § 1836(b)(3)(A)(3). This further intertwines the reasonable royalty with equitable relief. Notably, the only reasonable royalty calculation disclosed by Waymo is a lump sum royalty equivalent to 110% of Waymo's claimed unjust enrichment damages. Dkt. 2166 (Order Excluding Michael Wagner) at 13-14. Unlike a running royalty, there is no way to modify such an award based on the period of time for which use could be enjoined under *eBay*'s four-factor test.

Consistent with the Court's directive to disclose adverse authority, Defendants note that, in *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, Judge Wilken did hold that, where a paid-up royalty is requested, the duration that the use could have been prohibited is irrelevant unless known to the parties at the time of the hypothetical negotiation:

> Mr. Meyer posits a "paid-up royalty," a one-time payment that allows the licensee to practice the trade secret in the future without making any more payments. As correctly noted by MPS, the UTSA provides for a reasonable royalty "for no longer than the period of time the use could have been prohibited." Cal. Civ. Code § 3426.3(b). Thus, MPS argues that, because the trade secret became public six months after the hypothetical negotiation, it should only have to pay a fourth of the $900,000, which Mr. Meyer calculated based on a two-year benefit to MPS. But a paid-up royalty, unlike a running royalty, cannot be divided. Parties often enter into an agreement not knowing when the trade secret will become public; it is something the parties consider, and sometimes risk, during their negotiations. MPS provides no evidence that it would not have entered into this hypothetical agreement, or would have paid far less, because it knew that the trade secret would soon become public. Nor does MPS cite a case holding that a paid-up reasonable royalty should not be imposed, or must be divided, if the trade secret becomes public shortly after the hypothetical negotiation. In sum, the $900,000 reasonable royalty does not require MPS to pay for longer than the period of time the use could have been prohibited; instead, it requires MPS to make a one-time payment while the use was prohibited. Therefore, the Court grants O2 Micro a reasonable royalty in the amount of $900,000.

399 F. Supp. 2d 1064, 1078 (N.D. Cal. 2005) (internal citation omitted).

Defendants respectfully submit that *O2 Micro* was wrongly decided because it (i) allows a plaintiff to avoid an express limitation adopted by the California legislature by simply discounting impermissible future royalties into a fully paid-up royalty and (ii) ignores the Book of Wisdom.

In any event, *O2 Micro* is yet another case where reasonable royalty was decided by the judge, and it does nothing to undermine the conclusion that a reasonable royalty based on future use is inextricable intertwined with injunctive relief and constitutes a form of equitable relief.

> *"8. Respond to every citation and item of analysis set forth by the other side in the most recent supplemental briefs."*

Waymo's supplemental brief suffers from two fundamental flaws. First, Waymo confuses a statutory ***definition*** of "misappropriation" with its actual ***cause of action*** that the jury will be asked to resolve. Uber agrees that damages is not within the statutory definition of the term "misappropriation." But it is beyond dispute that damages is a required element of the only cause of action that the jury will be presented with—Waymo's cause of action seeking damages for misappropriation of trade secrets. Indeed, Waymo carefully pleaded the existence of damages for its causes of action. *See* Amended Complaint (Dkt. 23) ¶¶ 77-78 (DTSA), 85-86 (CUTSA). Waymo's second fundamental flaw is that it cites cases dealing solely with a cause of action of injunctive relief to support its position that damages is not a required element. But that misses the point. For Waymo's cause of action for injunctive relief, it obviously need not prove damages. But it also is not entitled to a jury. In short, damages is a required element for the only cause of action that will be presented to the jury. Without it, this is a bench trial.

Waymo's lead citation is *Distinctive Plastics, Inc. v. Carter*, 2014 WL 4631897 (Cal. Ct. App. Sept. 17, 2014), an unpublished California Court of Appeal decision that Waymo correctly notes cannot be cited in California courts. The fact that Waymo leads with a case with no precedential value demonstrates that it found no cases on point. On the merits, *Carter* is distinguishable because it stands merely for the proposition that a plaintiff can prevail on a UTSA cause of action by seeking only injunctive relief:

> Furthermore, based on our review of the UTSA scheme, there is no statutory language suggesting any legislative intent to disallow claims for misappropriation of trade secrets unless a plaintiff can allege, and prove, actual damages or unjust enrichment. On the contrary, a successful trade secret misappropriation plaintiff may be entitled to one or more of the "full panoply of remedies," including injunctive relief, damages for actual loss, and/or relief from unjust enrichment. (*Cadence, supra*, 29 Cal.4th at p. 226.) ==Therefore, based on the express language of the UTSA's provisions, a plaintiff can prevail on a UTSA cause of action for misappropriation of a trade secret by seeking, and==

obtaining, only injunctive relief. (*Cf. DVD Copy*, *supra*, 31 Cal.4th at p. 875 [plaintiff sought and obtained only injunctive relief for misappropriation of trade secret under UTSA].)

*Id.* at *3 (emphasis added). That is not in dispute, and that's also not the subject of the present dispute concerning jury instructions. Indeed, *Carter* was a bench trial. *Id.* at *1.

Waymo next cites *Oculus Innovative Sciences, Inc. v. Nofil Corp.*, 2007 WL 4044867 (N.D. Cal. Nov. 15, 2007) and *DVD Copy Control Association, Inc. v. Bunner*, 31 Cal. 4th 864 (Cal. 2003), arguing that California courts "routinely omit[] damages from the elements of trade secret misappropriation." Dkt. 2351, Waymo Supp. Brief at 3-4. But Waymo fails to note that both orders dealt with causes of action for *injunctive relief*. *See Oculus*, 2007 WL 4044867, at *8 (plaintiff sought injunctive relief); *DVD Copy*, 31 Cal. 4th at 872 (plaintiff "did not seek damages"). Obviously, damages are not an element of that cause of action.

Waymo also cites *Altavision, Inc. v. Konica Minolta Systems Laboratory Inc.*, 226 Cal. App. 4th 26 (Cal. Ct. App. 2014) and *De Lage Landen Operational Services, LLC v. Third Pillar Systems, Inc.*, 851 F. Supp. 2d 850 (E.D. Pa. 2012) because the orders discussed damages separately from misappropriation. Waymo Supp. Brief at 4, 8. But how a judge organizes an order does not reflect on whether damages is a required element of the cause of action. In Altavision, the defendant stole the trade secrets and obtained a patent on them, demonstrating unjust enrichment was present in that case:

> As explained above, the trial court found KMSL misappropriated Altavion's DST concept as a whole, both by using Altavion's DST in developing KMSL's own DST and by disclosing aspects of Altavion's DST in 11 of KMSL's patents and patent applications.

*Altavision*, 226 Cal. App. 4th at 47. And *Third Pillar* is an order addressing whether the plaintiff may use the defendant's expert to prove unjust enrichment after the court excluded plaintiff's expert. 851 F. Supp. 2d at 853-54. By the time of that ruling, the court had already held an early permanent injunction hearing pursuant to the parties' agreement and granted an injunction. *Id.* at 852. Again, the fact that plaintiff's cause of action seeking a permanent injunction was resolved before its cause of action seeking damages is meaningless as to whether damages is a required element of the cause of action to be tried to a jury.

Next, Waymo cites *StrikePoint Trading, LLC v. Sabolyk*, No. CV 07-1073, 2009 WL 10659684 (C.D. Cal. Aug. 18, 2009) for the proposition that "conflating liability with remedies for trade secret misappropriation invites paradoxical and unjust results." Waymo Supp. Brief at 4-5. But *Sabolyk* demonstrates that damages is an element of the cause of action that the jury decided, and the court properly instructed the jury as such:

> The jury received the following instructions regarding StrikePoint's claim for misappropriation of trade secret:
>
> StrikePoint claims that Defendants GAA, Aimee Sabolyk, and/or John Mondragon have misappropriated a trade secret. To succeed on this claim, StrikePoint must prove *all* of the following:
>
> (1) That StrikePoint owned the client list;
>
> (2) That the client list was a trade secret at the time of the misappropriation;
>
> (3) That that defendant improperly used or disclosed the trade secret;
>
> (4) That StrikePoint was harmed or that that defendant was unjustly enriched; and
>
> (5) That that defendant's use or disclosure was a substantial factor in causing StrikePoint's harm or that defendant to be unjustly enriched.

*Id.* at *1 (emphasis added). Not once does the court suggest that damages is not an element of the cause of action for damages presented to the jury. Just as the *Sabolyk* court was free to consider injunctive relief even after the jury rejected the plaintiff's cause of action for damages, this Court can do the same.

Waymo cited two cases for the proposition that a reasonable royalty may be appropriate even when no unjust enrichment has occurred. *See Condor*, 545 F. App'x at 601; *Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1313 (2010). Waymo Supp. Brief at 6-7. These cases, however, stand for the proposition that when a plaintiff fails to sufficiently prove quantifiable unjust enrichment or harm, the Court had discretion to fashion a reasonable royalty to compensate the plaintiff for the unquantified damage it suffered or benefits a defendant received. *See E*Trade Fin. Corp.*, 187 Cal. App. 4th at 1312-13. With respect to *Condor*, upon remand, Judge Snyder issued a 23-page order imposing a reasonable royalty of $125,000 after finding that

the defendant clearly benefited from the use of the trade secrets:

> Further, defendants plainly obtained a benefit from their use of plaintiff's trade secrets: a government contract to produce and repair gyroscopes. Defendants resist this conclusion, likewise on the basis that the government's approval of Condor II as a supplier was premised primarily on Condor II's willingness to become a supplier. Defendants effectively contend that the submission of the gyroscopic drawings was not the proximate cause of the government's approval decision. The Court finds no support in defendants' briefing or otherwise for the proposition that the benefit accrued by a defendant through the use of a misappropriated trade secret must accrue from the use of the trade secret in isolation. To the contrary, as the *University Computing* court explained, the reasonable royalty standard historically was used "to deal with the situation where the misappropriated idea is used either to improve the defendant's manufacturing process, or is used as part of a larger manufactured product." 504 F.2d at 536.

*Atl. Inertial Sys., Inc. v. Condor Pac. Indus. of Cal.*, No. 08-cv-02947-CAS, 2015 WL 3825318, at *7 (C.D. Cal. June 18, 2015). Indeed, Judge Snyder pointed out that the plaintiff conceded that it must prove the defendant benefited from the misappropriation:

> AIS also relies on *Ajaxo* and *Altavion*, emphasizing public policy concerns raised by the Court of Appeal and asserting that both cases "affirm a clear presumption in favor of the trial court's award of a reasonable royalty." AIS agrees that the defendant must have benefitted from the misappropriation, "if not directly, in a non-pecuniary way," in order to justify a royalty award, but contends that this condition is satisfied since Condor II indisputably used AIS' trade secrets "to manufacture and sell gyroscopes [to the U.S. government] that directly competed with AIS' gyroscopes." AIS contends that, under *Altavion*, the following factors inform the exercise of the Court's discretion to award a royalty: (1) whether defendants used the misappropriated trade secrets; (2) whether the trade secrets were obtained improperly; (3) whether costs were incurred in developing the trade secret in the first instance; and (4) whether the parties had previously considered a licensing agreement.

*Id.* at *5 (citations omitted). Accordingly, this case strongly supports Uber's position.

The second section of Waymo's supplemental brief argues that reasonable royalty damages may be awarded for improper acquisition alone even absent any unjust enrichment or other harm. Supp. Brief at 11-13. But then Waymo focuses on cases dealing with injunctive relief—not damages—or cases that involve **both** acquisition and use.

As discussed above, *Atlantic Inertial Systems* dealt with a failure of proof concerning harm, and the trial court found that the defendant was benefited. Also as explained above, the *Distinctive Plastics* case held that a cause of action for **injunctive relief** does not require proof of

UBER'S SECOND SUPPLEMENTAL BRIEF ON JURY INSTRUCTIONS
Case No. 3:17-cv-00939-WHA
sf-3850878

11

damages. And it pointed out that the trial court found (after a bench trial) that the plaintiff was damaged by the misappropriation:

> On May 8, 2013, the trial court rendered its decision in the form of a minute order (Order). The court found DPI sustained its burden of proving its UTSA misappropriation claim. It found DPI's electronic database list of customers, potential customers, and vendors was a "trade secret" under the UTSA, and Carter misappropriated that trade secret by keeping a copy of at least portions of it on his personal computer and using it in his efforts to establish LI as an ongoing business. It further found the misappropriation by Carter was "willful and malicious." The court found DPI was entitled to injunctive relief for the misappropriation of its trade secret prohibiting Carter from making any further use of that trade secret and requiring him to permanently erase from his and LI's computers all electronic copies of that trade secret. The court also found DPI was damaged by the misappropriation, but disagreed with DPI's assertion that $220,075 was a reasonable amount of damages and awarded DPI nominal damages in the amount of $1.

*Distinctive Plastics*, 2014 WL 4631897, at *1 (footnote omitted).

Finally, Waymo cites *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176 (S.D. Cal. 2012) to argue that "[t]he availability of a reasonable royalty is particularly necessary in the context of misappropriation by acquisition." Supp. Brief at 12. But that case involved *use* of the trade secrets—not acquisition alone. Indeed, Waymo's block quote on page 12 discusses "use" of the products incorporating the trade secrets, which is also shown by the below quote:

> Lastly, as mentioned above, Histogen argues it has not misappropriated the Bioreactor Method or Concentration System trade secrets because it does not use several of the claimed elements. (MSJ 15–19, 20.) However, this argument misunderstands the law on this point. In the context of trade secret misappropriation, information may be improperly "used" in that it is unlawfully acquired and then built upon or modified before being disclosed or benefit derived. Accordingly, this scattershot attempt to disclaim use of various elements of the claimed trade secrets does not foreclose the possibility that Histogen's process was not substantially derived from the claimed trade secrets, even if it differed in specifics from the process described therein.

*Id.* at 1197 (internal citations omitted).

Waymo has not cited a single case from any jurisdiction holding that acquisition alone is sufficient to prove a cause of action for damages. And the fact that Waymo instead relies on cases like *DVD Copy* that involved only a cause of action for injunctive relief shows that acquisition alone should be considered only by the Court as part of an injunctive relief analysis, and not by the jury to establish a cause of action for damages.

Dated: December 15, 2017

MORRISON & FOERSTER LLP
BOIES SCHILLER FLEXNER LLP
SUSMAN GODFREY LLP

By: / *William Christopher Carmody*
   WILLIAM CHRISTOPHER CARMODY

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC

**ATTESTATION OF E-FILED SIGNATURE**

I, Arturo J. González am the ECF User whose ID and password are being used to file this Second Supplemental Brief on Jury Instructions. In compliance with Civil L.R. 5-1(i)(3),, I hereby attest that William Christopher Carmody has concurred in this filing.

Dated: December 15, 2017

*/s/ Arturo J. González*
ARTURO J. GONZÁLEZ