| | |
|---|---|
| 1 | MICHAEL A. JACOBS (CA SBN 111664) |
| | MJacobs@mofo.com |
| 2 | ARTURO J. GONZÁLEZ (CA SBN 121490) |
| | AGonzález@mofo.com |
| 3 | MORRISON & FOERSTER LLP |
| | 425 Market Street |
| 4 | San Francisco, California 94105-2482 |
| | Tel: 415.268.7000 / Fax: 415.268.7522 |
| 5 | |
| | KAREN L. DUNN (*Pro Hac Vice*) |
| 6 | kdunn@bsfllp.com |
| | HAMISH P.M. HUME (*Pro Hac Vice*) |
| 7 | hhume@bsfllp.com |
| | BOIES SCHILLER FLEXNER LLP |
| 8 | 1401 New York Avenue, N.W. |
| | Washington, D.C. 20005 |
| 9 | Tel: 202.237.2727 / Fax: 202.237.6131 |
| 10 | WILLIAM CARMODY (*Pro Hac Vice*) |
| | bcarmody@susmangodfrey.com |
| 11 | SHAWN RABIN (*Pro Hac Vice*) |
| | srabin@SusmanGodfrey.com |
| 12 | SUSMAN GODFREY LLP |
| | 1301 Avenue of the Americas, 32nd Floor |
| 13 | New York, NY 10019-6023 |
| | Tel: 212.336.8330 / Fax: 212.336.8340 |

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S FURTHER RESPONSE REGARDING PRESERVATION OF UNJUST ENRICHMENT BASED ON ACQUISITION**<br><br>Trial Date: February 5, 2018 |

Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") respectfully submit the following response to the Court's December 18, 2017 Order (Dkt. 2409), which asks:

> "By NOON ON DECEMBER 19, will each side respond to the other side's submission today with respect to whether or not Waymo properly preserved a claim for damages based solely on acquisition. The Court reminds counsel their duty of candor."

Waymo's failure to preserve a claim for unjust enrichment based on acquisition alone is demonstrated by Waymo's response to the Court's simple question: "Has Waymo preserved an unjust enrichment theory based on acquisition alone." Rather than submitting a single paragraph pointing the Court to where it had preserved the theory, Waymo submitted a 10-page brief that talks about the "blurred line" between acquisition and use and discusses caselaw, negative trade secrets, and trade secret control. Dkt. 2407. The glaring omission in Waymo's brief is the answer to the Court's question—where did it preserve the theory? The short answer is that Waymo didn't. It's not in its initial disclosures, and it's not in its interrogatory responses. The entire theory simply does not exist because Waymo failed to disclose it. Generalized references to seeking damages for "misappropriation" are plainly insufficient to preserve a claim for unjust enrichment damages solely arising from acquisition.

The Court's inquiry should end upon review of Waymo's two-paragraph Rule 26(a)(1)(A)(iii) disclosure. As this Court is aware, Uber previously filed a motion to strike Waymo's Rule 26(a)(1)(A)(iii) disclosures and preclude damages. *See* Dkt. 797. In its order excluding Michael Wagner, this Court denied that motion, stating: "With the benefit of **Waymo's full damages theory** and the foregoing rulings, this order finds that no further relief is necessary under these circumstances to remedy any shortfalls in Waymo's initial disclosures." Dkt. 2166 at 16 (emphasis added). That "full damages theory" was what was disclosed in the Wagner Report, which was indisputably premised on Uber's use of the trade secrets to accelerate development and save development costs. It is now clear that Uber did not have (and still does not have) Waymo's "full damages theory." Even after multiple rounds of briefing, Waymo has still not provided any computation of unjust enrichment damages based on acquisition, nor even objective evidence upon which such a computation could be based. It would be error to instruct the jury

based on acquisition under these circumstances.

The remainder of Waymo's brief is directed at cases addressing actual use of trade secrets and *not* acquisition alone, and attempts to cobble together an unjust enrichment theory based on a hodgepodge of interrogatory responses. In addition, all of Waymo's cites to the factual record deal with actual use or disclosure. For example, Waymo cites to John Bares' testimony about money that could be saved by acquiring Otto. Dkt. 2406-2 (Waymo Supp. Brief at p. 6). But that deals with cost savings from *use* of information and talent. Indeed, that testimony about saving $20 million per month is the basis of Mr. Wagner's damages model, which was premised on *use* of the trade secrets.

Uber cannot envision a scenario where mere acquisition (without use or disclosure) could unjustly enrich a defendant. And Waymo has not articulated such a theory in its supplemental brief, let alone identify where it properly disclosed the theory and provided a computation of damages.

A. **Waymo's Disclosures Fail to Preserve Acquisition**

Waymo's unjust enrichment theory in this case has always been premised on use (including future use). Waymo has never disclosed even a general unjust enrichment theory based solely on acquisition, let alone any type of computation. *See* Dkt. 2405 (Uber Supplemental Brief at 2-3). In fact, Waymo's supplemental brief mentions its initial disclosures only once to say, "As an initial matter, Waymo's Corrected Supplemental Initial Disclosures provide that Waymo seeks unjust enrichment damages with no limitation to any particular theory of misappropriation. Dkt. 797-3." Dkt. 2407 (Waymo Supp. Brief at 1). But Waymo's disclosure does not even come close to satisfying Rule 26(a)'s requirements. It does not identify a theory of unjust enrichment based on acquisition alone; it does not disclose evidence upon which such unjust enrichment could be quantified; and it does not provide any "computation" of unjust enrichment damages. Waymo's disclosures do nothing to put Uber on notice of the exposure it faces in this litigation, and are plainly deficient to preserve a claim for acquisition-based unjust enrichment. As the Ninth Circuit has explained:

> Rule 26(a)(1)(A)(iii) requires the disclosure of "a computation of each category of damages claimed by the disclosing party." Rule 26(e)(1)(A) requires disclosing parties to supplement their prior disclosures "in a timely manner" when the prior response is "incomplete or incorrect." "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."

*Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (citing *Yeti by Molly v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) and affirming preclusion of damages where plaintiff failed to provide a Rule 26(a)(1)(A)(iii) computation).

Discussing a damages interrogatory nearly identical to the one Uber served in this case, the Court in *Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 278 (N.D. Cal. 2015) held that "tight-lipped" damages disclosures are "plainly insufficient":

> The response from Plaintiff Corning Optical Communications Wireless Ltd. was, essentially, "wait until we serve our expert report." Corning's Rule 26(a)(1)(A)(iii) disclosure regarding its damages calculation was similarly tight-lipped: "No documents related to this calculation exist at this time."
>
> This is plainly insufficient. Even if Solid were willing to wait to find out what this case is worth—which it is not—the court still needs to know as it resolves the parties' various discovery-related disputes. Proportionality is part and parcel of just about every discovery dispute. To be sure, new information may come to light as the case proceeds that might drastically alter Coming's positions. But Rule 26(e) provides a solution for that: supplementation.

*Id.* at 278-79.

On the basis of facts nearly identical those in this case, Judge Martinez recently precluded a plaintiff from offering damages evidence based on failure to provide any computation of damages:

> Likewise, Plaintiff will be precluded from offering evidence of lost past and future wages. Under Federal Rule of Civil Procedure 26(a)(1)(A)(iii), Plaintiff was required to provide "a computation of each category of damages claimed" and to make available "the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based...." Plaintiff argues that her production of tax documents and her own anticipated testimony has provided Defendant with enough information about her wage loss. The Court disagrees. At no point in this litigation did plaintiff quantify—even roughly—the amount of actual damages she suffered as a result of her layoff. In fact, she states she does not intend to ask for any specific amount at trial. However, making certain documents available and promising that someone (in this case Plaintiff)

will testify regarding damages is not a "computation" and fails to apprise Defendant of the extent of its exposure in this case.

Rule 37(c)(1) prohibits a party from using evidence at trial that was not properly disclosed as required under Rule 26(a). This sanction is "self-executing," and no showing of bad faith or willfulness is required. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Plaintiff has made no attempt to show that her failure to comply with Rule 26(a) was justified, and offers no authority for her position that she was exempted from Rule 26 disclosure requirements by virtue of the fact that she does not intend to ask for a specific amount of lost wages at trial. Having failed to show that the lack of disclosure was substantially justified, Plaintiff will not be permitted to offer evidence of actual damages, including any of her own testimony as to her wages, hours and benefits while working at Asplundh, or what she was earning before compared to what she is earning now.

*Easton v. Asplundh Tree Experts, Co.*, No. C 16-1694, 2017 WL 5483769, at *4 (W.D. Wash. Nov. 15, 2017). Judge Armstrong reached the same conclusion in *Baca v. State of California*:

Defendants move to preclude Plaintiff from presenting evidence of his damages consisting of his medical care costs on the ground that he failed to provide a computation of his damages as part of his initial disclosures. Rule 26(a)(1)(A)(iii) requires each party to provide to the other party "a computation of each category of damages claimed by the disclosing party...." Plaintiff does not dispute that he never provided such a computation, but argues that his failure to comply is harmless because the information is contained within the medical records already in their possession. However, a party cannot avoid its obligation to provide a damage calculation merely by producing records ostensibly containing such information. *See Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd.*, No. 07 C 4023, 2008 WL 1883435, at *6 (N.D. Ill. Apr. 28, 2008) ("Rule 26 requires that the calculation be done by the party claiming damages, not its opponent, who under the defendants' unsupportable theory is left to sift through extensive records of the defendants and guess at what the damage claim is.").

Defendants' motion in limine no. 2 is GRANTED. Plaintiff is precluded from offering any evidence or argument regarding his medical costs resulting from Defendants' alleged misconduct.

*Baca*, No. C 13-02968, 2016 WL 234399, at *5 (N.D. Cal. Jan. 20, 2016).

Waymo's failure to properly disclose its new claim for unjust-enrichment-by-acquisition damages is all the more egregious in light of the Court's prior orders and admonishments. Waymo and Uber first exchanged initial disclosures on April 3, 2017. Two months later, on June 7, 2017, the Court directed parties to "complete[]" their initial disclosures by no later than June 21, 2017, "on pain of preclusion." Dkt. 563 at 1. The June 7 Order specifically directed "full

and faithful compliance with FRCP 26(a)(1)(A)(iii)." *Id.* At the June 29, 2017 Case Management Conference, this Court and Waymo's counsel had the following colloquy:

> The Court: Well, but I -- I hear it from up here, and rule -- I regularly enforce Rule 26. And if you didn't disclose your damages, like the rule says, you may be in big trouble.
>
> Ms. Cooper: Thank you, Your Honor. So we disclosed categories of damages.
>
> The Court: Dollar amounts?
>
> Ms. Cooper: We haven't disclosed dollar amounts; and the reason is because we haven't gotten damages discovery from defendants.
>
> The Court: That may not be good enough. We're going to have a regular -- See, plaintiffs think they can get away with: According to proof at trial. No way. You have to follow the rule. And we'll see if you survive that or not.

Dkt. 775 (06/29/2017 Hr'g Tr.) at 97:8-23. As is evident from the single sentence of Waymo's submission addressing its Rule 26 disclosures, Waymo did not disclose even a "categor[y] of damages" premised on acquisition, let alone a computation.

Waymo's citation to the Joint Pretrial Order also does not help. It argues that reference to "any misappropriation" discloses an unjust enrichment by acquisition alone claim. Dkt. 2407 (Waymo Supp. Brief at 1). But not only does the Joint Pretrial Order fail to disclose that Waymo is seeking unjust enrichment damages based on acquisition alone, it also fails to provide a computation of that category of damages. And a Joint Pretrial Order cannot resurrect a claim that Waymo failed to include in its initial disclosures and discovery responses.

Finally, Waymo's argument that its response to Interrogatory No. 28 (which was served well after the deadline for final Rule 26 disclosures) preserves an unjust enrichment by acquisition theory completely lacks merit. Dkt. 2407 (Waymo Supp. Brief at 6). The quoted portion of Waymo's interrogatory response expressly refers to "Uber is being unjustly enriched by the acquisition **and use** of Waymo's trade secrets in terms of saved development expenses." *Id.* Waymo's response to this interrogatory does the opposite of disclosing unjust enrichment by

acquisition alone—it bases Waymo's unjust enrichment claim on Uber's purported use of the trade secrets to save millions each month in development costs.

### B. Waymo's Acquisition of Competitive Knowledge Theory is Based on Use

Acquisition of competitive knowledge alone cannot constitute unjust enrichment damages. Instead, it's the use or disclosure of that information that would give rise to a benefit. Waymo provides an example of where a competitor misappropriates trade secrets "merely in order to evaluate that competitor's progress in developing similar technology." Dkt. 2407 (Waymo Supp. Brief at 2). But that is an example of use—the competitor is using the trade secrets, including by "setting research priorities to allocating resources and assessing capital requirements." *Id.* Not only is this not unjust enrichment by acquisition alone, but Waymo also did not provide a computation of unjust enrichment damages from any alleged "setting of research priorities" or "assessing capital requirements."

Similarly, having "access" to Waymo's trade secrets is worthless unless they were actually used. The quoted language from Mr. Bares' deposition on pages 3-4 of Waymo's brief is directed at use: Waymo's counsel is asking Mr. Bares to speculate about a hypothetical situation of whether it would be helpful to have a copy of Waymo's trade secrets. Dkt. 2406-2 (Waymo Supp. Br. at 3-4). Mr. Bares was not asked how acquisition of that information alone could be helpful if it couldn't be used.

### C. Waymo's Acquisition of Negative Trade Secrets Theory is Based on Use

Waymo is wrong that acquisition of negative trade secrets alone gives rise to unjust enrichment. *See* Dkt. 2407 (Waymo Supp. Brief at 4-6). Waymo's entire argument is premised on the *use* of the negative trade secret. For example, Waymo identifies saved development time "by avoiding a particular dead-end." *Id.* at 5. But that is an example of *using* the trade secret to avoid that dead-end—acquisition without use would have no impact on development schedules.

The same is true for Waymo's discussion of Trade Secret 25—any unjust enrichment is based on use of the trade secret and not acquisition alone. Waymo argues that Trade Secret 25 identifies issues that "do *not* need to be solved, thereby saving the misappropriator years of working on unnecessary problems." *Id.* at 5. But the years of saved time is based on *use* of the

UBER'S FURTHER RESPONSE RE PRESERVATION OF UNJUST ENRICHMENT  6
Case No. 3:17-cv-00939-WHA
sf-3852109

trade secret in making development decisions—not acquisition alone. Acquiring Trade Secret 25 but not using it to refocus any development efforts results in absolutely no benefit.

**D.  Waymo's Acquisition of Control Argument is Directed to Injunctive Relief**

Waymo argues that Uber received "unjust benefits through the improper acquisition of control over that information." *Id.* at 6. But no unjust enrichment occurs until the moment of use because no development time or expenses can be saved until the information is actually put to use. And the entire notion of improper control over a trade secret can be resolved through injunctive relief. To the extent that Uber acquired improper control over information that it never used or disclosed, any potential future injury can be resolved by the Court through injunctive relief.

Waymo is wrong that *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26 (2014), "suggests" that benefits accrue based on acquisition alone. As Waymo concedes, and as Uber explained in its previous brief, *Altavion* is a case addressing *use* of the trade secrets. *See* Dkt. 2398 (Uber Supp. Brief at 9). Likewise, *AT&T Communs. v. Pac. Bell*, No. C 96-1691, 1998 U.S. Dist. LEXIS 13459 (N.D. Cal. Aug. 26, 1998), is also a case addressing a defendant who "became obligated to pay **for their use** of that unlawfully acquired information." *Id.* at **6-7 (emphasis added).

Waymo is also wrong that the court in *ATS Prods., Inc. v. Champion Fiberglass, Inc.* concluded that "a trade secret owner's loss of control over its proprietary information could result in unjust enrichment to the misappropriator." Dkt. 2407 (Waymo Supp. Brief at 8). As shown from the following block quote, the court merely stated that viewing the allegations in the light most favorable to ATS, the court cannot say that there is no set of facts by which ATS may prove injury:

> Champion argues that ATS failed to sufficiently plead the injury element because, according to Champion, ATS only alleges that damage resulted from the use of the resins in making the Flame Shield product, rather than from the acquisition of trade secrets embedded in them. Def.'s Mot. at 5–6. Champion further contends that its "mere possession of a product from which a trade secret allegedly can be ascertained through reverse engineering, but which has not been so ascertained, cannot possibly cause damage." *Id.* at 6. ==Viewing the allegations in the light most favorable to ATS, as the Court must in a motion to dismiss, the Court cannot say==

that there is no set of facts by which ATS may prove injury. *See National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) ("At the pleading stage, general factual allegations of injury from the defendant's conduct may suffice.").

*ATS Prods., Inc.*, No. C 13–02403, 2014 WL 466016, *3 (N.D. Cal. Feb. 3, 2014). This says nothing about the type of injury potentially incurred (e.g., actual loss), and is irrelevant to whether Waymo preserved a claim for acquisition-based unjust enrichment. As Uber has made clear in prior briefings, it does not dispute that a plaintiff could suffer *actual losses* based on acquisition alone, but Waymo has confirmed that it's not seeking actual losses in this case. Dkt. 2397 at p. 4. The court in *ATS Products* never stated that acquisition of trade secrets without use could result in *unjust enrichment*.

Finally, Waymo references its response to Interrogatory No. 28 to argue about the "exponentially greater danger of additional disclosure up to and including public disclosure of the trade secrets." Dkt. 2407 (Waymo Supp. Brief at 8). But the risk against future disclosure can be resolved through an injunction, and it certainly does not give rise to unjust enrichment damages before any disclosure or use. Indeed, the language Waymo used in its interrogatory response demonstrates that it is focusing on use and disclosure—not acquisition alone:

> And if Defendants continue **using** Waymo's trade secrets in their self-driving car endeavors, there would likely be additional filings **disclosing** other aspects of Waymo's trade secrets. Improper **disclosure** of trade secrets is, of course, a classic injury because such disclosure destroys the trade secret altogether.

*See* Dkt. 2407 (Waymo Supp. Brief at 9 (citation omitted; emphasis added)).

### E. A Reasonable Royalty Cannot be Awarded Based on Acquisition

In a last-ditch effort, Waymo tries to revive its argument that a jury can award a reasonable royalty for "intangible benefits" associated with acquisition. Dkt. 2407 (Waymo Supp. Brief at 10). As Uber has already shown, this argument is contrary to the plain language of both CUTSA and DTSA and is meritless. *See* Dkt. 2398 (Uber's Second Supp. Brief on Jury Instructions at p. 2-8).

\*\*\*

The jury instructions should make clear that unjust enrichment damages cannot be

awarded unless Waymo proves use or disclosure of the trade secrets. Even ignoring Waymo's failure to identify a single case from any jurisdiction holding that acquisition alone is sufficient for unjust enrichment damages, the fact remains that Waymo failed to preserve that theory. It has not provided any computation of such unjust enrichment, or even any objective evidence upon which such enrichment could be calculated. As a result, it would be an error to instruct the jury that Uber's acquisition alone is sufficient to award unjust enrichment damages.

Dated: December 19, 2017

MORRISON & FOERSTER LLP
BOIES SCHILLER FLEXNER LLP
SUSMAN GODFREY LLP

By: */s/ William Christopher Carmody*
WILLIAM CHRISTOPHER CARMODY

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC

**ATTESTATION OF E-FILED SIGNATURE**

I, Arturo J. González, am the ECF User whose ID and password are being used to file this Further Response Re Preservation of Unjust Enrichment. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that William Christopher Carmody has concurred in this filing.

Dated: December 19, 2017

*/s/ Arturo J. González*
ARTURO J. GONZÁLEZ