HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                   SAN FRANCISCO DIVISION
 4
 5   _____
 6   WAYMO LLC,                            )
 7            Plaintiff,                   )
 8      vs.                                ) Case No.
 9   UBER TECHNOLOGIES, INC.;              ) 17-cv-00939-WHA
10   OTTOMOTTO, LLC; OTTO TRUCKING LLC,    )
11            Defendants.                  )
     _____)
12
13     HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
14
15     VIDEOTAPED DEPOSITION OF ANGELA L. PADILLA, ESQ.
16                 San Francisco, California
17                  Monday, October, 2017
18                        Volume I
19
20   Reported by:
21   MARY J. GOFF
22   CSR No. 13427
23   JOB No. 2716665
24
25   PAGES 1-111
```

Page 1

| | | |
|---|---|---|
| 1 | litigation? | 10:56:54 |
| 2 | MR. GONZALEZ: So I'll -- I'll let you | 10:56:57 |
| 3 | answer the part of that question that involves his | 10:56:59 |
| 4 | computers, because I believe a document has been | 10:57:01 |
| 5 | produced on that point. | 10:57:05 |
| 6 | A   So he did not cooperate in providing all | 10:57:14 |
| 7 | of the devices that he had at the time that we were | 10:57:21 |
| 8 | in this litigation.  And I sent him a letter -- | 10:57:28 |
| 9 | well, really an e-mail -- an e-mail letter about | 10:57:34 |
| 10 | that. | 10:57:37 |
| 11 | (Exhibit 8106 was marked for | 10:57:42 |
| 12 | identification and is attached to the transcript.) | 10:57:42 |
| 13 | MR. GONZALEZ:  Thank you. | 10:58:33 |
| 14 | Q   (BY MR. PERLSON) You have been handed | 10:58:43 |
| 15 | what's been marked as Exhibit 8106, UBER324612. | 10:58:44 |
| 16 | Do you recognize this e-mail? | 10:58:52 |
| 17 | A   I do. | 10:58:55 |
| 18 | Q   Is this the e-mail that you were just | 10:58:56 |
| 19 | referring to in your testimony? | 10:58:58 |
| 20 | A   It is. | 10:59:01 |
| 21 | Q   Okay.  So in the first sentence, it says, | 10:59:01 |
| 22 | I understand that there are two laptops in your | 10:59:07 |
| 23 | possession that you have used for Uber work that | 10:59:10 |
| 24 | have not yet been provided to us for inspection in | 10:59:14 |
| 25 | the Waymo litigation. | 10:59:18 |

| | | |
|---|---|---|
| 1 |     Do you see that? | 10:59:20 |
| 2 | A   Um-hum. | 10:59:21 |
| 3 | Q   Yes? | 10:59:22 |
| 4 | A   Yes. | 10:59:22 |
| 5 | Q   Okay.  And what -- what -- do you know | 10:59:22 |
| 6 | what those computers were? | 10:59:28 |
| 7 | A   I don't remember the specifics right now. | 10:59:33 |
| 8 | I remember just a dispute about whether they were | 10:59:43 |
| 9 | company computers or personal computers and whether | 10:59:49 |
| 10 | they were used for Uber work or not. | 10:59:51 |
| 11 | Q   Okay.  And who -- that was a dispute | 10:59:56 |
| 12 | between Anthony -- or Mr. Levandowski and Uber? | 11:00:03 |
| 13 | A   Yes. | 11:00:05 |
| 14 | Q   Okay.  Were -- was that dispute something | 11:00:05 |
| 15 | that was discussed orally or were there other | 11:00:13 |
| 16 | e-mails concerning that dispute?  Do you know? | 11:00:19 |
| 17 | A   I think it was all oral. | 11:00:21 |
| 18 | Q   And when did -- obviously, I assume that | 11:00:25 |
| 19 | they -- when did those discussions occur? | 11:00:28 |
| 20 | A   Probably right around the time of this | 11:00:34 |
| 21 | e-mail, which is April 20.  Maybe a little before | 11:00:37 |
| 22 | and probably a little after as well.  I -- I think | 11:00:44 |
| 23 | it was an ongoing struggle. | 11:00:47 |
| 24 | Q   And who -- who was involved in those | 11:00:50 |
| 25 | conversations? | 11:00:59 |

Veritext Legal Solutions
866 299-5127

```
 1        A    Let's see.  Myself; Anthony; his lawyers,        11:01:01
 2   Miles and Izzy -- Miles or Izzy and/or meaning these       11:01:11
 3   people in various combinations in various                  11:01:21
 4   conversations.  It wasn't a static one-time event.         11:01:25
 5             Travis; Neal Chatterjee, once he came on         11:01:33
 6   board.  Gosh, I'm trying to think.  Possibly Salle.        11:01:42
 7   Possibly Salle.  Possibly Walter and Melinda over at       11:01:58
 8   Orrick.  No.  No.  No, not them.  I'm sorry.  I'm          11:02:03
 9   thinking of something else.  I'm thinking of Travis.       11:02:06
10   No, not them.  Just possibly Salle, yeah.                  11:02:09
11        Q    Please tell me what you remember regarding       11:02:16
12   the substance of those communications.                     11:02:19
13        A    I don't remember details, but the --             11:02:25
14             MR. GONZALEZ:  I'm sorry.  Can I interrupt       11:02:27
15   just to make this clear?  To the extent you had            11:02:28
16   conversations with attorneys for Mr. Levandowski,          11:02:31
17   I'm going to let you answer that.                          11:02:33
18             But if you had private conversations with        11:02:35
19   your client, Salle, Travis, or anybody else, that          11:02:37
20   would be privileged.  So I want to make sure you           11:02:41
21   draw that distinction in your head as you answer           11:02:43
22   that question.                                             11:02:46
23        A    Okay.  So if I limit it to conversations         11:02:47
24   that I had with Anthony's lawyers, because all the         11:02:51
25   other conversations would have been with Salle or          11:02:56
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | Travis or Anthony, or -- or with Neal Chatterjee. | 11:02:58 |
| 2 | Was it Neal?  I -- I don't know.  It could -- | 11:03:04 |
| 3 | Q    (BY MR. PERLSON) That's his name. | 11:03:07 |
| 4 | A    -- be mistaken.  I know -- I mean, I know | 11:03:07 |
| 5 | Neal really well.  I just -- I can't remember if -- | 11:03:08 |
| 6 | I might be mistaken about Neal.  But anyway, I feel | 11:03:10 |
| 7 | like I had some conversation with Neal. | 11:03:17 |
| 8 | But what I recall about the conversations | 11:03:19 |
| 9 | with Miles and Izzy and probably with Neal is my | 11:03:21 |
| 10 | insistence that Anthony turn over every device to | 11:03:27 |
| 11 | Uber for us to search and comply with the court's | 11:03:33 |
| 12 | order, period, end of story, and there was to be no | 11:03:37 |
| 13 | debate about this. | 11:03:46 |
| 14 | Q    And so how many conversations do you think | 11:03:56 |
| 15 | you had with yourself on that -- that -- on the | 11:03:58 |
| 16 | subject that Mr. Levandowski's lawyers would have | 11:04:06 |
| 17 | been involved in? | 11:04:10 |
| 18 | A    Several.  Maybe as many as five. | 11:04:12 |
| 19 | Q    Okay.  And that would have been at or | 11:04:16 |
| 20 | around this April 20 -- | 11:04:19 |
| 21 | A    I can't -- | 11:04:21 |
| 22 | Q    -- time frame? | 11:04:21 |
| 23 | A    -- I can't put it exactly in time.  There | 11:04:22 |
| 24 | was, as you know, a lot going on.  But within a | 11:04:23 |
| 25 | couple of weeks of this time period, yeah, I would | 11:04:31 |

Page 61

```
 1   say so.                                                      11:04:34
 2        Q    Did you have any conversations with                11:04:57
 3   Mr. Levandowski regarding obtaining his devices that         11:04:59
 4   did not include his counsel?                                 11:05:08
 5        A    I might have.                                      11:05:12
 6        Q    Okay.  When would that have been?                  11:05:14
 7        A    Same time period.                                  11:05:19
 8        Q    Okay.  Can you identify -- let me know the         11:05:20
 9   substance of -- of that communication?                       11:05:26
10             MR. GONZALEZ:  So -- so hold on.  Would            11:05:29
11   you agree that we're not waiving privilege by                11:05:31
12   allowing her to answer that question?                        11:05:33
13             MR. PERLSON:  Nope.                                11:05:34
14             MR. GONZALEZ:  Okay.  Then I'm going to            11:05:35
15   have to instruct you not to answer.                          11:05:37
16        A    Okay.                                              11:05:38
17        Q    (BY MR. PERLSON) Did you ever have any             11:05:50
18   instructions with Mr. -- start over again.                   11:05:51
19             Did you ever have any conversations with           11:05:55
20   Mr. Levandowski in which he did agree to produce at          11:05:57
21   least some of his devices?                                   11:06:02
22        A    Yes.                                               11:06:07
23        Q    Okay.  When was that?                              11:06:09
24        A    The same time frame.  I -- I don't                 11:06:13
25   clearly -- really, I don't clearly remember it,              11:06:16
```

| | | |
|---|---|---|
| 1 | because there were hundreds of things happening at | 11:06:19 |
| 2 | this time.  I'm -- I was also running the Covington | 11:06:22 |
| 3 | report and just everything was going on. | 11:06:25 |
| 4 | So I don't know if that was, like, right | 11:06:32 |
| 5 | after the lawsuit was filed, two weeks after the | 11:06:34 |
| 6 | lawsuit was filed, or -- and now we're in April. | 11:06:36 |
| 7 | But I do know -- I do remember insisting | 11:06:39 |
| 8 | pretty sharply that he turn over things and that he | 11:06:46 |
| 9 | did cooperate to some extent. | 11:06:50 |
| 10 | Q   Okay.  He -- he -- you do remember that | 11:06:52 |
| 11 | Mr. Levandowski at least did cooperate to some | 11:06:57 |
| 12 | extent in turning over devices; is that fair? | 11:07:01 |
| 13 | A   I don't know if "cooperate" is the right | 11:07:05 |
| 14 | word.  He certainly gave us some devices to search. | 11:07:05 |
| 15 | Q   Some of his devices? | 11:07:08 |
| 16 | A   Yes. | 11:07:09 |
| 17 | Q   Did you ever get the two laptop computers | 11:07:13 |
| 18 | that are referred to in your April 20, 2017 e-mail? | 11:07:15 |
| 19 | A   I am not sure that we got them, but I | 11:07:30 |
| 20 | believe they were searched by another law firm. | 11:07:32 |
| 21 | Q   Okay.  Do you know what law firm that was? | 11:07:37 |
| 22 | A   I don't. | 11:07:44 |
| 23 | Q   Was it Mr. Levandowski's counsel? | 11:07:45 |
| 24 | A   It could have been Miles and Izzy.  It | 11:07:50 |
| 25 | could have been Neal.  I don't know. | 11:07:53 |

| | | |
|---|---|---|
| 1 | Q    Okay.  And how -- and why do you -- what's | 11:07:55 |
| 2 | the basis of you thinking that they were eventually | 11:08:07 |
| 3 | searched by somebody? | 11:08:09 |
| 4 | A    Because this was megillah.  Do you know | 11:08:12 |
| 5 | what a megillah is?  It's Yiddish for long story. | 11:08:19 |
| 6 | This megillah went on for a long time, because I was | 11:08:23 |
| 7 | not going to let go of these two computers. | 11:08:28 |
| 8 | And I insisted that we get information off | 11:08:31 |
| 9 | of them, and they were insisting they weren't going | 11:08:34 |
| 10 | to give us the computers. | 11:08:39 |
| 11 | And so I believe that finally some kind of | 11:08:40 |
| 12 | a comprise was reached after a back and forth and | 11:08:43 |
| 13 | back and forth that some trusted third person would | 11:08:46 |
| 14 | review the document -- the computers.  And if | 11:08:52 |
| 15 | anything responsive in this litigation was found on | 11:08:54 |
| 16 | them, that would be provided. | 11:08:57 |
| 17 | Q    Okay.  Do you know when -- when that | 11:09:00 |
| 18 | accommodation was eventually reached? | 11:09:04 |
| 19 | A    It would have been after this e-mail went | 11:09:09 |
| 20 | out.  I just don't know when. | 11:09:11 |
| 21 | Q    Okay.  And was that accommodation | 11:09:13 |
| 22 | memorialized in some way? | 11:09:16 |
| 23 | A    I don't -- I doubt it.  I don't remember. | 11:09:21 |
| 24 | Q    Okay.  If -- if -- how could I figure out | 11:09:26 |
| 25 | what -- who -- what would you think the best source | 11:09:29 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | would be for me to figure out who actually did | 11:09:31 |
| 2 | the -- did look at those pursuant to this | 11:09:34 |
| 3 | accommodation? | 11:09:38 |
| 4 |     A   Miles, Izzy, Neal. | 11:09:42 |
| 5 |     Q   And do you know whether responsive | 11:09:46 |
| 6 | material was found? | 11:09:48 |
| 7 |     A   I believe -- I don't -- I don't know one | 11:09:49 |
| 8 | way or the other.  I can't remember.  It could have | 11:09:51 |
| 9 | been.  It could not have been.  I just don't recall | 11:09:53 |
| 10 | it. | 11:09:56 |
| 11 |     Q   Okay.  And just to clear up the record -- | 11:09:56 |
| 12 | I -- I think it's already clear.  But it -- it -- | 11:09:57 |
| 13 | Mr. Levandowski did provide at least some of his | 11:10:01 |
| 14 | devices to Uber in connection with its efforts to | 11:10:05 |
| 15 | provide responsive information in this litigation, | 11:10:10 |
| 16 | correct? | 11:10:13 |
| 17 |     A   He did.  I just wish he would have | 11:10:14 |
| 18 | provided everything from the get-go and given full | 11:10:17 |
| 19 | bona fide cooperation, which he did not do. | 11:10:21 |
| 20 |     Q   In the second-to-last paragraph of the -- | 11:11:48 |
| 21 | your e-mail, it says that, Please understand that | 11:11:53 |
| 22 | your compliance with this request is crucial to | 11:11:57 |
| 23 | Uber's defense of the Waymo litigation and required | 11:12:00 |
| 24 | by our internal company policies. | 11:12:04 |
| 25 |     Do you see that? | 11:12:07 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | A    I do. | 11:12:07 |
| 2 | Q    Okay.  And the -- is it accurate to say | 11:12:07 |
| 3 | that the search of these laptops was crucial because | 11:12:20 |
| 4 | if the laptops were not searched, Uber would not be | 11:12:23 |
| 5 | able to demonstrate that Mr. Levandowski lacked | 11:12:27 |
| 6 | Waymo confidential information? | 11:12:31 |
| 7 | MR. GONZALEZ:  I'm going to instruct you | 11:12:33 |
| 8 | not to answer that question.  It's work-product. | 11:12:34 |
| 9 | Q    (BY MR. PERLSON) Were -- were you | 11:12:41 |
| 10 | concerned that Mr. Levandowski had Waymo | 11:12:42 |
| 11 | confidential information on his files by -- on -- on | 11:12:48 |
| 12 | these computers by virtue of the fact that he | 11:12:54 |
| 13 | refused to provide them to you? | 11:12:58 |
| 14 | MR. GONZALEZ:  I'm going to instruct you | 11:13:00 |
| 15 | not to answer -- not to answer that question.  It's | 11:13:01 |
| 16 | attorney work-product. | 11:13:02 |
| 17 | Q    (BY MR. PERLSON) Do you know whether the | 11:13:12 |
| 18 | accommodation in -- in terms of searching those two | 11:13:13 |
| 19 | computers was reached before or after | 11:13:18 |
| 20 | Mr. Levandowski was terminated? | 11:13:29 |
| 21 | A    I don't remember. | 11:13:34 |
| 22 | Q    And Mr. Levandowski was employed by Uber | 11:13:44 |
| 23 | for more than a month after you sent your e-mail on | 11:13:51 |
| 24 | April 20, 2017, correct? | 11:13:59 |
| 25 | A    That sounds about right.  I believe he was | 11:14:03 |

Veritext Legal Solutions
866 299-5127

```
 1   fired in -- in -- by the end of May.                   11:14:05
 2        Q    Did you ever tell anyone that you thought    11:14:10
 3   Mr. Levandowski should be fired for his refusal to     11:14:14
 4   produce these two laptop computers?                    11:14:17
 5             MR. GONZALEZ:  I'm going to instruct you     11:14:19
 6   not to answer that question.  Work-product,            11:14:20
 7   attorney/client.                                       11:14:24
 8        Q    (BY MR. PERLSON) Did you personally          11:14:59
 9   threaten to fire -- have Mr. Levandowski fired to      11:15:01
10   Mr. Levandowski at or around April 20, 2017?           11:15:04
11             MR. GONZALEZ:  Do you agree we're not        11:15:12
12   waiving privilege by answering that?                   11:15:13
13             MR. PERLSON:  No.                            11:15:15
14             MR. GONZALEZ:  Then I'll have to instruct    11:15:15
15   her not to answer.                                     11:15:18
16        Q    (BY MR. PERLSON) Is Uber paying for          11:15:38
17   Mr. Levandowski's counsel at Mr. Erlich's?             11:15:39
18        A    I don't believe so.                          11:15:49
19        Q    Is Uber paying for Otto Trucking's counsel   11:15:51
20   in this case?                                          11:15:57
21        A    I think so, yes.                             11:16:01
22        Q    Is Uber indemnifying Otto Trucking in this   11:16:02
23   case?                                                  11:16:05
24        A    I don't know.  Sorry.                        11:16:07
25        Q    Who would know that?                         11:16:08
```

Veritext Legal Solutions
866 299-5127