December 20, 2017

The Honorable Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse
Courtroom F - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Waymo LLC v. Uber Technologies, Inc. et al.*, Case No. 3:17-cv-00939-WHA
**Letter Brief Regarding Outstanding Discovery Items**

Dear Judge Corley:

Please find below Waymo's letter brief regarding various outstanding discovery issues that are ripe for adjudication. Specifically, Waymo respectfully requests the following relief:

(i) An order compelling Angela Padilla to sit for a full 7-hour deposition.

(ii) An order compelling Uber to provide a privilege log, in compliance with Judge Alsup's standing order, of documents that Uber is withholding on which Ms. Padilla is a sender or recipient and which are dated between April 14, 2017 and November 22, 2017. This request is without prejudice to Waymo requesting additional logs from Ms. Padilla or others.

(iii) An order compelling Uber to produce all documents that Ric Jacobs was alleged to have impermissibly downloaded from Uber servers and all documents that Mr. Jacobs may have returned to Uber as part of his settlement agreement or for any other reason following the sending of his resignation email, including all documents from the thumb-drive Mr. Jacobs provided to Uber as referenced in SMC0000048.

(iv) An order that Uber has waived privilege over the 60 newly logged documents on its December 12 Supplemental Privilege Log of MoFo Communications, and that the Court review *in camera* any logged documents on the December 12 log for which no waiver has been found to determine whether Uber is improperly withholding discoverable evidence.

Sincerely,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

Waymo respectfully requests the Court's assistance in resolving the following four discovery disputes. For each request, the relief Waymo seeks is justified by Judge Alsup's December 1st Case Management Order as well as the needs of the case.

**1. Ms. Padilla Should Sit For A 7-Hour Deposition.**

Angela Padilla, Uber's Vice-President and Deputy General Counsel of Litigation, is the addressee of the Richard Jacobs letter ("Jacobs Letter") that is at the center of this supplemental discovery effort. (Ex. 1.) At the order of Judge Alsup (Dkt. 2261), Ms. Padilla appeared at the November 29, 2017 evidentiary hearing and was examined by Waymo. Ms. Padilla admitted that when she received the Jacobs letter, she understood it to accuse Uber of stealing Waymo's trade secrets. (Dkt. 2310 [11/29/17 Hr'g Tr.], at 18:7-10.) Yet, she did not turn the letter over to Uber's outside counsel, because she assumed that the letter would be "picked up" by the discovery protocols in this case. (*Id.* at 18:11-19:24.) Ms. Padilla testified that, after reading the Jacobs letter, she "[h]anded it over" to the Uber Compliance Department to conduct an internal investigation. (*Id.* at 15:16-24.) After handing off the letter, Ms. Padilla claimed she was told that "it was no longer [her] work" and that she "should not discuss the letter with anyone inside or outside of the company for fear of jeopardizing the internal investigation." (*Id.* at 16:4-10.)

At the close of the evidentiary hearing, Judge Alsup authorized Waymo to conduct "liberal" discovery into the allegations contained within the Jacobs Letter. (*Id.* at 159:4-8 ("err on the side of discovery to get to the bottom of the story . . . .").) In a subsequent Case Management Order entered on December 1, Judge Alsup also authorized discovery into a broad range of issues, including the following:

- The accuracy of testimony given by defense witnesses this week, including Attorney Padilla's testimony about Jacobs, and the identities of all defendants' personnel who were aware of Jacobs's letter or email before November 22;

- Defendants' discovery practices and procedures bearing on their failure to produce Jacobs's letter or email or disclose the information therein earlier in this litigation (including, without limitation, the various explanations to which Attorney Angela Padilla testified this week, the specific search terms used, whether and to what extent hard copies of Jacobs's letter or email existed and were responsive to requests for paper documents, and if so, why they were not produced earlier).

(Dkt. 2315 at 2.) Per Judge Alsup's authorization, on November 30, Waymo served its first set of supplemental RFPs. Although the Special Master ordered Uber to complete its production of documents by December 8, Uber finally completed its document production 6 days late on December 14—and only after being ordered to do so by Magistrate Judge Corley. Meanwhile, on December 3, Waymo provided a preliminary list of witnesses it wished to depose. (Ex. 3.) In light of Ms. Padilla's testimony at the evidentiary hearing that she had limited involvement with

The Honorable Jacqueline Scott Corley
December 20, 2017

the Jacobs documents after handing them off to the Compliance Department, Waymo did not request a deposition of Ms. Padilla at that time.

Since Uber completed its document production on December 14, however, it has become clear that Ms. Padilla had a much larger role in the Jacobs investigation than her testimony at the evidentiary hearing suggests. For example, Uber's document production indicates that Ms. Padilla had multiple follow-up meetings and conversations regarding the Jacobs allegations. (*E.g.*, Ex. 3 ([redacted]); Ex. 4 ([redacted]); Ex. 5 ([redacted]); Ex. 6 ([redacted].) Also, during the December 14 deposition of Uber Chief Legal Officer Salle Yoo, Ms. Yoo [redacted] (Ex. 7 [12/14/17 Yoo Dep. Tr.], at 253:25-254:5), [redacted] (*id.* at 317:9-18). [redacted] (*Id.* at 350:1-16, 361:25-362:17, 295:13-296:24.) Finally, although Uber has not yet produced a privilege log in conjunction with its recent document productions, Uber has provided information indicating that it is withholding over 1,100 responsive documents for which Ms. Padilla was a sender or recipient, including responsive documents involving Waymo. (Ex. 8.) All of this contradicts Ms. Padilla's evidentiary hearing testimony that the Jacobs letter "was no longer [her] work."

In light of these emerging facts, on December 18, Waymo requested the deposition of Ms. Padilla in place of the deposition of another witness who, based on Uber's recent document production, was determined to be of marginal importance. (Ex. 9.) Uber did not deny the relevance of Ms. Padilla; rather it objected to having to produce Ms. Padilla on "three days notice." (Ex. 10.)

There is no reason to artificially limit the length of Ms. Padilla's deposition. In light of Judge Alsup's order regarding the scope of permissible discovery, all of Uber's other witnesses have sat for full-day depositions. Although Ms. Padilla was previously examined during the evidentiary hearing, this was before Waymo had received Uber's document production and fully understood her involvement in the issues surrounding the Jacobs letter. Particularly given Judge Alsup's order that Waymo may investigate the accuracy of Ms. Padilla's evidentiary hearing testimony, a 7-hour deposition is justified. This will allow Waymo to fully explore the reasons why the Jacobs documents were not produced earlier, which is relevant to Waymo's January 12 submission regarding an appropriate jury instruction for Uber's discovery misconduct.

Uber's objections to a full-day deposition are not well taken. That Waymo was forced to request Ms. Padilla's deposition on three days notice is a function of the extremely compressed discovery schedule and the tardy production of relevant documents—both of which are issues of Uber's own making. Indeed, if there is any prejudice in conducting Ms. Padilla's deposition on short notice, it is prejudice to Waymo who has now been denied adequate preparation time due to Uber's failure to timely produce the Jacobs information (as the Special Master has found). Just as it did earlier in this case during discovery into the Stroz issues, Uber has delayed its

production of relevant information and now is seeking to capitalize on its own misconduct by using the compressed discovery schedule as an excuse to deny Waymo full discovery. Furthermore, Uber's contention that Waymo does not need the full time period because Ms. Padilla was already questioned during the evidentiary hearing is clearly immaterial. Mr. Jacobs attempted to proffer that precise argument, only to be ordered by Judge Alsup to sit for a full 9 hours. Ms. Padilla should be ordered to sit for a full, 7-hour deposition.

**2. Uber Should Provide An Individualized Privilege Log Of Post-April 14 Documents Withheld From Ms. Padilla In Advance Of Her Deposition.**

For the same reasons described above, Waymo respectfully requests a full, individualized privilege log of all post-April 14 documents that Uber is withholding for which Ms. Padilla is a sender or recipient. Magistrate Judge Corley left open the possibility that Waymo could request more specific log information upon a showing of relevance to the case. (Dkt. 2395 [12/13/17 Hr'g Tr.], at 27:23-28:3.) Here the requested log is highly relevant to the issues.

An individualized accounting of the communications between Ms. Padilla and others will provide insight into when and how broadly disseminated throughout Uber responsive Jacobs documents were circulated during the relevant period. Such evidence is relevant to the key question of why Uber did not earlier produce the Jacobs documents which, as discussed above, is the primary subject of Waymo's January 12 submission to Judge Alsup. Also, given Ms. Padilla's testimony at the evidentiary hearing that she was not involved in the Jacobs issues after handing off the letter to the Compliance Department, the volume and timing of her communications are relevant to her credibility, which is an issue that Judge Alsup's December 1 Order expressly authorizes Waymo to investigate. Finally, an individualized privilege log will allow Waymo to test and meaningfully challenge Uber's claims of privilege during the period when Uber was investigating the merits of the Jacobs allegations.

The log requested by Waymo is also proportional to the needs of the case. Presumably, Uber has the withheld documents segregated and has already analyzed them in order to have claimed the privilege in the first place. Preparing the requested log should therefore be a matter of simply transferring the information Uber already has into a log format.

During the parties' December 19 conference, Waymo understood the Special Master to rule that ***all*** of Ms. Padilla's documents should be logged so that Waymo could adequately cross-examine Ms. Padilla on her evidentiary hearing testimony. However, given the volume of Ms. Padilla's responsive document (*i.e.*, more than 1,100 since February 2016), Waymo's request here is actually ***narrower*** than what the Special Master ordered in that Waymo is only requesting post-April 14, 2017 documents. This request is reasonable and proportional.

Waymo's request for this privilege log is without prejudice to its right to request additional privilege logs from Ms. Padilla and others upon a further showing of relevance.

**3. Uber Should Produce The Documents That Uber Alleges Jacobs Downloaded And The Documents That Uber Provided To The U.S. Attorney's Office.**

Waymo also moves to compel Defendants to produce (i) any documents that were provided or exchanged with the United States Attorney's office or the Department of Justice regarding the Jacobs documents (his resignation email and May 5 letter) or any allegations in the Jacobs documents, (ii) all documents that Ric Jacobs was alleged to have impermissibly downloaded from Uber servers, and (iii) all documents that Mr. Jacobs returned to Uber as part of resolution of his dispute with Uber or for any other reason following the sending of resignation e-mail, including the documents from the thumb-drive Mr. Jacobs provided to Uber, as referenced in produced documents and deposition testimony. (Ex. 11 at SMC0000048; Ex. 13 [12/19/17 Huffington Rough Dep. Tr.], at 126:2-127:175.) The documents are directly relevant to the veracity of the claims stated in the Jacobs Letter (and other Jacobs documents), which Uber has consistently challenged, and thus must be produced to Waymo. Indeed, specifically with respect to the documents Uber provided to the government, the U.S. Attorney's Office took the unusual step of contracting the Court, which indicates that such documents are material to the Jacobs allegations and the issues at stake in this litigation.

*First,* these documents are responsive to several RFPs and should have already been produced pursuant to the Friday, December 8 discovery deadline set by the Special Master on numerous meet and confer calls. (*See, e.g.*, Dkt. 2376-6 [12/7/17 W. Ray Email]; Dkt. 2376-7 [12/8/17 D. Perlson Email].) In particular, Request No. 2 seeks "All DOCUMENTS or COMMUNICATIONS regarding the JACOBS LETTER," and then lists, without limitation, examples of the documents and communications sought. (Dkt. 2376-14 at 5.) Communications with the government or documents exchanged with the government are certainly responsive to this request. Similarly, Request No. 5 seeks "All DOCUMENTS and COMMUNICATIONS relating to any investigation undertaken by UBER or any person or entity acting on UBER'S behalf into any of the allegations in the JACOBS LETTER." (*Id.* at 9.) The documents allegedly stolen by Jacobs and documents returned by Jacobs are certainly related to Uber's investigation. Further, the requested categories of documents may also include documents responsive to other requests.[1]

[1] *See e.g.*, Dkt. 2376-14 [RFP No. 1] at 4 ("All DOCUMENTS and COMMUNICATIONS REGARDING the following subject matters described in the JACOBS LETTER: a. Richard Jacobs advocated for a secure and encrypted centralized database to ensure confidentiality and recordkeeping but provide access to intelligence for ThreatOperations personnel; b. UBER has efforts to evade current and future discovery requests, court orders, and government investigations; c. Craig Clark devised training and provided advice intended to impede, obstruct, and influence the investigation of lawsuits against UBER and in relation to or contemplation of other matters within the jurisdiction of the United States; d. UBER conceals, covers-up and falsifies records through the abuse of attorney-client privilege designations; e. UBER's use of HUMINT data gathering; f. UBER's alteration of software on competitors' systems; g. UBER's acquisition of competitors' trade secrets, code base, and competitive intelligence."); *id.* RFP No.

*Second*, Waymo's request for these documents goes to the heart of why the trial was continued – determining the truth of the Jacobs allegations. As Judge Alsup noted numerous times during the evidentiary hearings on November 28 and November 29, he delayed trial for the second time in this case and permitted supplemental expedited discovery regarding the Jacobs letter because "[w]e're going to find out what happened here." (Dkt. 2309 [11/28/17 Hr'g Tr.], at 14:7.) Despite Uber's attempt to downplay the Jacobs allegations, Judge Alsup was clear that more investigation was necessary to determine the truth of the allegations given the highly unusual circumstances in which the Jacobs Letter was revealed. (*Id.* at 15:1-4 ("[W]hen the United States Attorney has enough faith in the evidence to submit it to the judge in a civil case, who had no idea this was coming, they must believe it has some credibility. So I'm going to treat it that way.").) Judge Alsup noted, "if even half of what's in that letter is true, it would be a huge injustice to force Waymo to go to trial and not be able to prove things that are said in that letter." (*Id.* at 14:9-12.) Waymo is attempting to do precisely what Judge Alsup ordered— determine the extent to which the claims alleged in the Jacobs documents are true. Uber does not dispute that the requested documents are relevant to this inquiry.

During the parties' meet and confer, Uber's counsel suggested that the requested documents would include information about Uber's conduct in foreign countries and therefore should not be produced. Uber, however, should not be permitted to limit its production to documents relating to Uber's activities in the United States. The full scope of materials provided or exchanged with the government in connection with the Jacobs letter, the materials allegedly stolen by Jacobs, and the materials he returned, are relevant to testing the veracity of his allegations regardless of where the alleged conduct occurred. For example, Ms. Padilla testified that the Jacobs letter was "fantastical." (Dkt. 2310 [11/29/17 Hr'g Tr.], at 17:21.) But, if there are allegations that have been proven true in the requested documents, that evidence will undermine Ms. Padilla's testimony about the letter overall. Mr. Jacobs' credibility is also a major issue in this case. Uber will undoubtedly argue that the statements contained in the Jacobs letter are not credible. Any limitation on a production from Uber would severely prejudice Waymo's ability to effectively cross examine Mr. Jacobs on his post-settlement backpedaling of his previous assertions should that become necessary at trial.

By refusing to produce the requested documents, Uber is barring Waymo from proving the allegations in the Jacobs Letter. Uber should be ordered to produce all documents provided to

---

7] at 7 ("ALL COMMUNICATIONS with UBER employees or former employees in which the employees or former employees raised concerns about issues discussed in the JACOBS LETTER."); *id.* [RFP No. 12] at 16 ("DOCUMENTS sufficient to identify any anonymous servers used by UBER employees in their work for UBER."); *id.* [RFP No. 15] at 19 ("All DOCUMENTS and COMMUNICATIONS regarding the use of anonymous servers by UBER employees in their work for UBER, including but not limited to COMMUNICATIONS with any third parties.").)

the government in relation to the Jacobs investigation and all documents impermissibly stolen by Jacobs and/or returned after his resignation email to prevent such a result.

**4. Uber Has Waived Privilege By Failing To Log Communications Regarding The Jacobs Materials With Its Outside Counsel and Uber's Evidentiary Privilege Logs Warrant *In Camera* Review.**

As Waymo explained in its December 12 submission to Magistrate Judge Corley, the Special Master ordered MoFo to prepare a log of all pre-November 22 communications regarding the Jacobs documents. (Dkt. 2376-3.) The purpose of this log was to shed light on "the identities of all defendants' personnel who were aware of Jacobs's letter or email before November 22"—an issue that Judge Alsup expressly authorized Waymo to investigate. (Dkt. 2315 at 2.)

The logs, however, have proven to be an ever-evolving project. Meanwhile, the supporting declarations from outside counsel do not square with the logs provided by Uber's compliance counsel, Wilmer Hale, or with the representations that Defendants' counsel has made before the Court. (*E.g.*, Dkt. 2309 [11/28/17 Hr'g Tr.], 150:9-11 ("nobody on this defense team knew about that letter before we got your order and the order and the letter from the U.S. Attorney").) These logs and supporting declarations were intended as a compromise that would potentially obviate the need to depose Uber's outside attorneys regarding the extent of their knowledge of the Jacobs documents and allegations. Instead, what Waymo has received is piecemeal disclosures and a constantly shifting story in what appears to be an attempt to withhold the full extent of outside counsel's knowledge of the Jacobs allegations. There must be consequences for Defendants' faulty logs, and the Court should find that Uber has waived privilege over all newly logged entries that were not previously identified. Moreover, the Court should review the remaining logged communications to ensure that they are being properly withheld. Waymo reserves the right to request the depositions of Uber's outside counsel if the issues surrounding the logs are not adequately clarified.

From the beginning, the MoFo log was required to include ***all*** documents that reference the Jacobs documents in any way. In her email confirming what was discussed on the parties' December 7 meet and confer, Esther Chang stated that on December 10, "MoFo will provide a log of all communications of MoFo attorneys on the Waymo trial team involving the three Jacobs documents up until November 22." (Dkt. 2376-7 at 1.) David Perlson followed up to indicate that this log "should not be limited to discussions of the Jacobs documents themselves, but should include all communications with outside litigation counsel about the underlying allegations in the Jacobs documents" and also includes entries that discuss the allegations set forth in the Jacobs documents." (*Id.* at 2.)

Uber did not provide the required log by December 10 as ordered, requiring Waymo to seek assistance from the Court. In its letter brief, Waymo detailed the changing representations by Uber and its counsel regarding the distribution of the Jacobs' materials and the knowledge of the Jacobs allegations. (Dkt. 2376.) When this issue came before the Court on December 13, Uber's

attorney, Arturo González, represented that it had excluded from its December 12 log only those documents that were "procedural" in nature—*i.e.*, documents that did not "make any reference to the substance of the documents." (Dkt. 2395 [12/13/17 Hr'g Tr.], at 7:3-14.) Based on this representation, the Court ordered Uber to simply produce the so-called procedural documents by December 16, and even ordered that Uber's production of such materials would not constitute a waiver of work product. (*Id.* at 9:13-10:11.)

On December 16, Uber produced 13 new documents. However, contrary to Uber's representation that these documents contained no substance, Uber redacted portions of most of the 13 documents. In addition, Uber served a supplemental communications log containing ***60*** additional items, resulting in a supplemental log with twice as many entries as was in the original log. (Ex. 12 [12/16/17 Uber Privilege Log].)[2] The new communication log entries do not correspond with the limited redactions in Uber's production of the "procedural" documents.

It is therefore clear that despite Uber's representations to the Court on December 13, its December 12 log was woefully incomplete and missing over half of the communications that the Special Master had ordered to be produced nearly a week before.[3] As a consequence for this tardy production, as well as the apparent inaccurate representations made regarding the nature of the additional logged communications, the Court should find that any privilege over the 60 newly logged documents has been waived. (J. Alsup Standing Order ¶ 18 ("Failure to furnish [information sufficient to establish the privilege] at the time of the assertion will be deemed a waiver of the privilege or protection.").) Also, given the constant evolution of Defendants' communication log, Waymo requests that either the Court review the logged documents in the December 12 log for which no waiver has been found to determine whether Uber is improperly withholding discoverable evidence. The constant evolution of the story behind MoFo communications concerning the Jacobs documents and allegations is incredibly concerning, and it has prejudiced Waymo's ability to fully investigate the issue.

---

[2] Exhibit 12 is a version of the 12/16/17 log with the newly added entries highlighted.

[3] That it took multiple rounds of logging to identify all of MoFo's communications concerning the Jacobs documents and allegations is also inconsistent with MoFo's representations to the Court that it had only limited involvement in the Jacobs issues.