**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94101 | TEL (415) 875-6600

August 4, 2017

Magistrate Judge Jacqueline Scott Corley

Re:   *Waymo LLC v. Uber Technologies, Inc., et al.*, N.D. Cal., Case 3:17-cv-00939-WHA
      **Waymo's Motion to Compel Regarding It's Second Subpoena to Anthony Levandowski**

Dear Judge Corley:

Please find below Plaintiff Waymo LLC's ("Waymo") Motion to Compel with respect to its Second Subpoena to Non-Party Anthony Levandowski. Waymo respectfully requests an Order: (1) compelling Levandowski to submit an *in camera* privilege log in accordance with the procedure the Court required in response to the prior, Expedited Discovery Subpoena; and (2) compelling Levandowski to search for and produce documents responsive to Waymo's July 17 Supplemental Requests.

Sincerely,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

**UNREDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

Anthony Levandowski, majority shareholder and Executive Chairman of Defendant Otto Trucking, founder and former CEO of Defendant Ottomotto, and former Vice President of Engineering and head of ATG at Defendant Uber, is a central figure in this lawsuit for trade secret misappropriation. During expedited discovery, on April 9, Waymo served Levandowski with a third-party subpoena for documents ("Expedited Discovery Subpoena"). (Dkt. 595-5.) Judge Alsup ruled that RFP Nos. 1 and 3 of the Expedited Discovery Subpoena were enforceable and, after several delays, Mr. Levandowski produced documents in response to these two RFPs. During motion practice on the Expedited Discovery Subpoena, Judge Alsup specifically rejected Levandowski's argument that a privilege log was not required to support Levandowski's assertion of the Fifth Amendment. (Dkt. 230, 4/12/17 Hr'g Tr. at 77:22-78:2 ("I never heard of that. Typically it is in my court, . . . under your theory, all kinds of wrongdoing could go unchecked . . . ."); *see also id.* at 79:1-5.) Judge Alsup ordered Levandowski to submit his Fifth Amendment privilege log *in camera*, and to also "give the other side enough of the argument so that they can respond to it." (*Id.* at 79:13-14.) After Levandowski finally submitted an adequate Fifth Amendment privilege log, the Court ruled that Levandowski's Fifth Amendment assertions were proper with respect to the ***specific documents*** withheld in response to the ***specific requests*** in the Expedited Discovery Subpoena. (Dkt. 802.) The Court did not find that Levandowski has a Fifth Amendment privilege to withhold documents for all purposes.

On June 23, Waymo served a Second Subpoena on Levandowski requesting documents in response to 38 new requests ("Second Subpoena"). (Ex. 1.) Levandowski filed his Objections on July 7 reserving the possibility that he might withhold documents under the Fifth Amendment in response to all 38 requests. (Ex. 2.) Levandowski also indicated that he would produce ***no*** documents in response to RFPs 33-37 on Fifth Amendment grounds. (*Id.*)

Meanwhile, based on newly discovered evidence in discovery, Waymo served 13 supplemental RFPs on July 17 ("Supplemental Requests"). (Ex. 3.) Levandowski filed Objections to those RFPs on July 31, refusing to state whether he would produce any documents in response to the Supplemental Requests, and vaguely objecting "to the extent [the RFPs] seek[] confidential information." (*See generally* Ex. 4.) During the parties' meet-and-confer conference with the Special Master, Levandowski's counsel admitted that they had not even investigated the type of documents that might be responsive to the Supplemental Requests, but rather simply objected on the grounds that the RFPs appeared "facially" irrelevant. Mr. Levandowski's counsel also clarified that he was additionally withholding documents responsive to the Supplemental Requests on the basis of the Fifth Amendment.

I.  **Mr. Levandowski Must Produce An *In Camera* Log Of Documents Withheld Under The Fifth Amendment.**

During motion practice on the Expedited Discovery Subpoena, Judge Alsup made abundantly clear that a litigant is not entitled to unilaterally withhold documents under a claim of privilege. (Dkt. 230, 4/12/17 Hr'g Tr. at 77:22-78:2.) In response to Levandowski's arguments that the production of a privilege log itself would be incriminating, the Court made multiple concessions to Levandowski, including allowing him to submit his privilege log *in camera*, allowing him a "do over" when his first *in camera* log was inadequate, and requiring only a minimal showing to Waymo to support the claimed privilege. But, never once did the Court

1

suggest that Levandowski should be entitled to pick and choose, in his sole discretion, which documents to produce and which documents to withhold under the Fifth Amendment.

Despite the Court's prior holdings with respect to the necessary *in camera* privilege log procedure, Levandowski now argues that he should not be required to make any showing at all. Levandowski's only argument in support of this position is that the Magistrate Judge's prior ruling, that certain documents responsive to the Expedited Discovery Subpoena were protected by the Fifth Amendment, ***necessarily*** establishes that certain other documents, responsive to Waymo's Second Subpoena, are also protected by the Fifth Amendment. This position is untenable. It is axiomatic that assertions of the Fifth Amendment must be made on a "document-by-document" basis. *See United States v. Brown*, 918 F.2d 82, 84 (9th Cir. 1990). To the extent Levandowski is asserting the privilege with respect to documents that are newly responsive to Waymo's Second Subpoena (including the Supplemental Requests), Levandowski must provide an *in camera* privilege log as well as "enough of the argument" to Waymo so that it can determine whether a challenge to the privilege is appropriate. Waymo merely asks that the Court require the same procedure here as Judge Alsup required in response to the Expedited Discovery Subpoena.

## II.   Mr. Levandowski Must Produce Responsive, Non-Privileged Documents In Response To Waymo's Supplemental Requests.

After Waymo served the Second Subpoena, it learned new facts that necessitated the Supplemental Requests. By way of background, between the date that Ottomotto signed the Put Call Agreement with Uber (April 11), and the date that the acquisition closed (August 23), Ottomotto acquired another LiDAR company, Tyto LiDAR LLC ("Tyto").[1] Uber executives, including Travis Kalanick, personally approved the acquisition and reviewed the asset purchase agreement. (Ex. 5, UBER00060588.) As part of the acquisition of Tyto, Ottomotto obtained not only all of its employees, including LiDAR hardware engineer James Haslim, but also its LiDAR designs. Based on the testimony of Mr. Haslim in this case (Dkt. 387-6 at 17:24-24:24), Levandowski played an active role in Tyto while he was a Waymo employee, and Levandowski personally guided Mr. Haslim to develop Tyto technology that incorporated Waymo's trade secrets. Thus, even before Uber's acquisition of Ottomotto, Levandowski—through a number of shell entities designed to conceal his involvement—was using Tyto to misappropriate Waymo's intellectual property so that it would be available to Defendants after the acquisition.

According to documents produced by Uber, Tyto's "owner" was a holding company called the Sandstone Group, LLC ("Sandstone"). (Ex. 6, UBER00047857.) Documents produced by ▇▇▇▇▇▇ in response to a subpoena, show that ▇▇▇▇▇▇ "owner" is something called the ▇▇▇▇▇▇ ("▇▇▇▇▇▇ which is an ▇▇▇▇▇▇ established around the time as the formation of Tyto and whose ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Ex. 7 at ▇▇▇▇▇▇.)

---

[1]  Tyto was originally named "Odin Wave." Waymo refers to the entity as "Tyto" herein regardless of which name it was using at the time.

The overwhelming evidence identifies Levandowski as the person behind ▮▮▮▮. For example, current Uber employee Ognen Stojanovski (a former Tyto and Ottomotto employee), who is also the "manager" of ▮▮▮▮, is a personal friend of Levandowksi. He testified at deposition that ▮▮▮▮, but admits that he was approached to take on the job of managing ▮▮▮▮ (as well as Tyto and a number of other affiliated shell companies, including ▮▮▮▮) by John Gardner, Levandowski's personal attorney. (Ex. 8 (Stojanovski Depo.) at 30:20-33:15.) Mr. Stojanovski testified that he had never met Mr. Gardner before Mr. Gardner approached him about the ▮▮▮▮ position, but that Mr. Gardner told him that he had been recommended for the role by Levandowski. (*Id.*) Levandowski ▮▮▮▮. (Ex. 8 (Stojanovski Depo.) at 128:17-132:20.) According to Mr. Stojanovski, ▮▮▮▮. And, Levandowski, ▮▮▮▮ and ▮▮▮▮ all have the same accountant—Stephen Nunnemaker. (Ex. 8, (Stojanovski Depo.) at 21:16-25; 261:16-19.)

There is also substantial evidence of Levandowski's direct involvement in Tyto before it was formally absorbed by Ottomotto, including ▮▮▮▮ (Ex. 9, TYTO-001598; Ex. 10, TYTO-001599), testimony from Mr. Haslim that he interviewed with Levandowski when applying to work at Tyto (Ex. 11, (4/18 Haslim Depo. Tr.) at 22:12-23:12), and ▮▮▮▮ Ex. 12, TYTO-001670). In sum, Levandowski—while still a Waymo employee and downloading files for use by Defendants—was also funneling Waymo trade secrets to, and personally funding, another LiDAR company designed to be acquired by Ottomotto (and Uber).

Waymo's Supplemental Requests are directed to discovering facts within Levandowski's possession regarding the entities through which he appears to have controlled Tyto: ▮▮▮▮ the ▮▮▮▮ and ▮▮▮▮ (a ▮▮▮▮ and ▮▮▮▮ designated Trustee):

- Supplemental Request Nos. 1, 2, 3, 6, and 7 are directed towards discovering the identity of person(s) controlling ▮▮▮▮ the identity of person(s) having a beneficial interest in the ▮▮▮▮ ▮▮▮▮ and facts regarding the formation of ▮▮▮▮

- Supplemental Request Nos. 4 and 5 are directed towards discovering facts regarding financial transfers to or from ▮▮▮▮

- Supplemental Request Nos. 8, 10, and 12 are directed toward Mr. Levandowski's communications with ▮▮▮▮ ▮▮▮▮, or ▮▮▮▮;

- Supplemental Request Nos. 9, 11, and 13 seek any additional documents regarding ▮▮▮▮ the ▮▮▮▮, or ▮▮▮▮ within Mr. Levandowski's custody or control.

3

All of these Supplemental Requests seek to discover relevant information that will shed light on Defendants' wrongful acquisition, disclosure, and use of Waymo's trade secrets through the May 2016 Tyto merger.  Waymo respectfully requests an order overruling Mr. Levandowski's conclusory objection that these Supplemental Requests seek "confidential" information and compelling a complete production.  *See McArdle v. AT&T Mobility LLC*, Case No. C 09-1117 CW (MEJ), 2010 WL 1532334, at \*6 (N.D. Cal. April 16, 2010) ("[I]n balancing the competing interests present here, the Court finds that the balance weighs in favor of disclosure.").