# EXHIBIT 9
# FILED UNDER SEAL

ATTORNEYS' EYES ONLY

```
1                UNITED STATES DISTRICT COURT
2              NORTHERN DISTRICT OF CALIFORNIA
3                   SAN FRANCISCO DIVISION
4    _____
                                    )
5    WAYMO LLC,                     )
                                    )
6            Plaintiff,             )
                                    )
7            vs.                    )Case No.:
                                    )3:17-cv-00939-WHA
8    UBER TECHNOLOGIES, INC.,       )
     OTTOMOTTO LLC; OTTO TRUCKING   )
9    LLC,                           )
                                    )
10           Defendants.            )
     _____)
11
12
13                  ATTORNEYS' EYES ONLY
14           VIDEOTAPED DEPOSITION OF DAVID MEALL
15                San Francisco, California
16                Thursday, April 13, 2017
17                        Volume 1
18
19
20
21
22
23   Reported by:
     RACHEL FERRIER, CSR No. 6948
24   Job No. 2594017
25   PAGES 1 - 28
```

Page 1

| | | |
|---|---|---|
| 1 | form to ensure they are telling the truth or is it just | 03:05:52 |
| 2 | sometimes? | 03:05:56 |
| 3 |    A   That I'm not sure. | 03:05:56 |
| 4 |    Q   Do you know whether Uber, including both the HR | 03:05:58 |
| 5 | department and the legal department, investigates | 03:06:07 |
| 6 | whether an employee is telling the truth when they fill | 03:06:08 |
| 7 | out their HR forms every time? | 03:06:12 |
| 8 |    A   That I'm not sure. | 03:06:14 |
| 9 |       MR. TATE:  Asked and answered. | 03:06:15 |
| 10 | BY MS. COOPER: | 03:06:16 |
| 11 |    Q   In paragraph 5 of your declaration, you describe | 03:06:20 |
| 12 | the template offer letter from Uber that it gives to | 03:06:22 |
| 13 | prospective employees in the Advanced Technologies | 03:06:27 |
| 14 | Group; is that right? | 03:06:30 |
| 15 |    A   Yes. | 03:06:30 |
| 16 |    Q   Did Mr. Levandowski sign this offer letter? | 03:06:31 |
| 17 |    A   I don't have direct knowledge of that. | 03:06:37 |
| 18 |    Q   Do you have any knowledge of that? | 03:06:39 |
| 19 |    A   I was not part of the on-boarding or the | 03:06:41 |
| 20 | acquisition itself.  That was handled as a special case. | 03:06:44 |
| 21 |    Q   Who handled the on-boarding of Mr. Levandowski? | 03:06:48 |
| 22 |    A   I'm not actually sure who was working on it. | 03:06:52 |
| 23 |    Q   Why do you say it was a special case? | 03:06:54 |
| 24 |    A   Just, with acquisitions, we don't -- the | 03:06:57 |
| 25 | recruiting team, which is what I manage, we don't send | 03:06:59 |

ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | individual offer letters, so usually that's done as a | 03:07:02 |
| 2 | combination of the corporate and business development | 03:07:05 |
| 3 | team and HR. | 03:07:07 |
| 4 | Q   Did you search for Mr. Levandowski's Employment | 03:07:08 |
| 5 | Agreement before this deposition today? | 03:07:15 |
| 6 | A   No. | 03:07:16 |
| 7 | Q   Have you ever seen Mr. Levandowski's employment | 03:07:17 |
| 8 | agreement before? | 03:07:22 |
| 9 | A   No. | 03:07:23 |
| 10 | MS. COOPER:  Okay.  I'm handing you what I just | 03:07:26 |
| 11 | marked as Exhibit 8.  We are going out of order a little | 03:07:28 |
| 12 | bit, but. | 03:07:32 |
| 13 | (Exhibit 8 was marked for identification | 03:07:36 |
| 14 | by the Court Reporter.) | 03:07:36 |
| 15 | BY MS. COOPER: | 03:07:36 |
| 16 | Q   Does this look like the template offer letter you | 03:07:42 |
| 17 | described in your declaration? | 03:07:45 |
| 18 | MR. TATE:  Objection; vague and ambiguous.  The | 03:07:52 |
| 19 | document speaks for itself. | 03:07:55 |
| 20 | MS. COOPER:  That's not a proper objection in | 03:08:05 |
| 21 | this court.  I believe objections are limited to form in | 03:08:07 |
| 22 | this district. | 03:08:09 |
| 23 | THE WITNESS:  There's no way if I could say if | 03:08:25 |
| 24 | that's the exact -- exact one.  There's a lot of | 03:08:27 |
| 25 | language in here that could have been special terms of | 03:08:30 |

Page 14

```
 1            THE VIDEOGRAPHER:  Back on the record, the time      03:18:09
 2    is 3:18.                                                     03:18:11
 3    BY MS. COOPER:                                               03:18:12
 4       Q    So, Mr. Meall, you said you have never seen an       03:18:15
 5    equity incentive plan like this, which imposes               03:18:20
 6    conditions on stock grants, before in your work at Uber;     03:18:23
 7    is that correct?                                             03:18:28
 8       A    Yes.                                                 03:18:28
 9       Q    Is that because you don't deal with executives'      03:18:29
10    equity incentive plans?                                      03:18:34
11       A    I don't deal with equity incentive for               03:18:36
12    executives, no.                                              03:18:39
13       Q    Do you deal with other employees' equity             03:18:39
14    incentive plans?                                             03:18:43
15       A    Yes.                                                 03:18:44
16       Q    Who deals with executive equity incentive plans?     03:18:44
17       A    It would depend on the situation.                    03:18:53
18       Q    Could it fall on your plate if you were hiring an    03:18:55
19    executive during your tenure?                                03:19:01
20            MR. TATE:  Objection; calls for speculation.         03:19:03
21            THE WITNESS:  We have an executive recruiting        03:19:04
22    branch.                                                      03:19:08
23    BY MS. COOPER:                                               03:19:08
24       Q    If you look at Exhibit 6, the equity incentive       03:19:16
25    plan itself, the grant date is not filled out.               03:19:21
```

```
 1    Google?                                                    03:21:52
 2       A    No.                                                03:21:53
 3            MR. TATE:  Objection; form.                        03:21:54
 4    BY MS. COOPER:                                             03:21:56
 5       Q    Have you ever heard that he didn't steel 14,000    03:21:56
 6    files from Google?                                         03:22:01
 7       A    No.                                                03:22:02
 8       Q    Do you have any basis to doubt that he did steel   03:22:02
 9    the 14,000 files?                                          03:22:06
10            MR. TATE:  Objection; form.                        03:22:08
11            THE WITNESS:  I have no basis to think one way or  03:22:08
12    another.                                                   03:22:12
13    BY MS. COOPER:                                             03:22:12
14       Q    Has Uber investigated whether Mr. Levandowski      03:22:12
15    stole 14,000 files from Waymo?                             03:22:15
16       A    I have no personal knowledge of an investigation.  03:22:17
17       Q    If the HR department had done such an              03:22:20
18    investigation, would you be aware of it?                   03:22:25
19            MR. TATE:  Objection; calls for speculation.       03:22:27
20            THE WITNESS:  No.                                  03:22:28
21    BY MS. COOPER:                                             03:22:30
22       Q    Why do you say that?                               03:22:32
23       A    Because that would be privileged information that  03:22:33
24    I wouldn't really need to be privy to.                     03:22:37
25       Q    Even if it was happening in your own department?   03:22:39
```

Page 23

Case 3:17-cv-00939-WHA   Document 2430-17   Filed 12/21/17   Page 7 of 7
ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A    I run recruiting. | 03:22:43 |
| 2 | Q    So if the -- if Uber hasn't investigated whether | 03:22:46 |
| 3 | Waymo's claims are true, can Uber say that | 03:22:54 |
| 4 | Mr. Levandowski didn't steel the 14,000 files from | 03:22:56 |
| 5 | Waymo? | 03:22:58 |
| 6 | MR. TATE:  Objection; that misstates the | 03:22:59 |
| 7 | testimony. | 03:23:00 |
| 8 | BY MS. COOPER: | 03:23:01 |
| 9 | Q    If you don't know whether Uber has investigated | 03:23:02 |
| 10 | whether Mr. Levandowski stole the files, can Uber say | 03:23:05 |
| 11 | that he didn't? | 03:23:09 |
| 12 | MR. TATE:  Objection; calls for speculation. | 03:23:09 |
| 13 | Objection; form. | 03:23:14 |
| 14 | THE WITNESS:  They've never said one way or | 03:23:14 |
| 15 | another if they have or have not. | 03:23:17 |
| 16 | BY MS. COOPER: | 03:23:20 |
| 17 | Q    In the last paragraph of your deposition -- of | 03:23:26 |
| 18 | your declaration, paragraph 9 on page 2, you say you | 03:23:28 |
| 19 | have never seen any evidence of any use of Google or | 03:23:32 |
| 20 | Waymo information during your employment at Uber; is | 03:23:35 |
| 21 | that true? | 03:23:39 |
| 22 | A    Yes. | 03:23:40 |
| 23 | Q    Have you ever heard anybody talk about Google or | 03:23:41 |
| 24 | Waymo information being used at Uber? | 03:23:47 |
| 25 | A    No. | 03:23:49 |

Page 24

Veritext Legal Solutions
866 299-5127