# EXHIBIT 2

# REVISED REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# EXHIBIT 1
# FILED UNDER SEAL

# Project Zing Review



April 11, 2016

**PRIVILEGED AND CONFIDENTIAL**

**PRIVILEGED AND CONFIDENTIAL**

# Deal Overview

## Consumer / Lasers

**Rationale**
- Lasers are critical to Uber's AV development, and Ottomotto is expected to de-risk our current laser approach
- Ottomotto could significantly enhance our overall AV efforts and potentially accelerate current timelines

**Terms**
- **$100k upfront cash + up to ~12M shares** of Uber restricted stock, totaling up to **~$592M** based on Series G price of $48.77
- Vesting of restricted stock tied to achievement of technical milestones, 20% tied to laser milestones and 80% tied to overall AV success*
- Minimum of 25 engineers to join Uber (could be as many as 50-100)
- Uber will indemnify a minimum of 5 key employees and Ottomotto for specific claims from former employers (e.g. IP, non-solicit), subject to certain restrictions and limitations

**Structure**
- Transaction structured as a put and call option, exercise period between August 2016 and March 2017
- Subject to certain restrictions, Uber can exercise the call option or Ottomotto can exercise the put option to effect the transaction

\* Vesting of restricted stock also subject to Uber's standard time-based and liquidity-based vesting requirements

**PRIVILEGED AND CONFIDENTIAL**

# Deal Structure and Timing



PRIVILEGED AND CONFIDENTIAL

# Walk Away Rights and Indemnity Obligations

## When Can We Walk Away?

- Litigation from former employers due to a "Material Adverse Claim"– defined as litigation which could result in a judgment that:
    - Substantially restricts Ottomotto from developing, making, selling, using or importing Ottomotto IP;
    - Prohibits Ottomotto from hiring (x) AL or (y) a majority of the key employees; or
    - Enforces a claim for damages for >$100M
- Customary M&A closing conditions (e.g. MAE) if unrelated to indemnified claims (unless it's a Material Adverse Claim)
- Injunctions against the transaction
- Ottomotto taking third party financing
- Less than 25 Ottomotto employees accept employment with Uber
    - 25 employees must include AL, LR and 2 out of the 3 remaining key employees

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

- Diligenced employees commit post-signing bad acts (specific list of factual actions)*
- Ottomotto hires additional diligenced employees despite Uber veto
- Non-diligenced employees do not sign attestation as to no bad acts committed

\* See appendix for summary of diligence process

## Do We Still Indemnify?

- Yes, for diligenced employees and Ottomotto (relating to actions of diligenced employees) for the following claims:
    - IP / trade secret misappropriation or infringement
    - Breach of non-solicitation, non-competition, fiduciary duty
- No deductible for diligenced employees and Ottomotto if transaction does not close

- No indemnification

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    UBER00109874

**PRIVILEGED AND CONFIDENTIAL**

# Appendix: Detailed Indemnity Summary

## Pre-Signing Due Diligence

- Third party forensic expert performed DD on Anthony, Lior, and 3 other key employees
- Outside counsel performed patent diligence on Ottomotto's medium-range and long-range laser concept
- Uber received report from both forensic expert and outside counsel
- Based on our review of facts, Uber decided to move forward with signing of the Put Call Agreement

## Dollar Limits and Duration of Indemnity

- Deductible:
  - If we do not close, no deductible
  - [redacted]
- Cap: No cap on Uber's indemnification (regardless of whether we close or not)
- Duration: Statute of limitations

## Indemnification if We Sign Put Call Agreement

- Unless they lose indemnity (per below), indemnity starts at signing for the following claims:
  - IP / trade secret infringement
  - Breach of non-solicitation, non-competition, fiduciary duty
- Indemnity only applies for employees who go through forensic DD process

## Exclusions from Indemnity

- If diligenced employees lie during forensic DD process and is discovered later, employees will not receive indemnity for claims based on those untruthful facts
- If diligenced employees commit any post-signing bad acts (per specific list)
- If other employees (other than diligenced employees) commit any bad acts and diligenced employees are dragged into claim, Uber will not indemnify diligenced employees or Ottomotto

## Restrictions between Signing and Closing

- Diligenced employees cannot commit any post-signing bad acts (specific list of factual actions)
- For all employees hired, parties mutually agree on whether an employee must go through forensic DD
- For those that go through forensic DD, Uber has veto right over hiring
- For those that do not go through forensic DD, employee must sign an attestation as to no bad acts committed

## Conditions to Closing / Loss of Indemnity

- If diligenced employees commit post-signing bad acts (per specific list):
  - Uber can choose not to close
  - Diligenced employees lose all indemnity
- If Uber chooses not to close for any other reason (e.g., MAE), diligenced employees keep their indemnity (regardless of Uber's choosing not to close)
- Uber cannot choose not to close for a litigation arising from an indemnifiable claim, unless there is a litigation due to a "Material Adverse Claim"