MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
ARTURO J. GONZÁLEZ (CA SBN 121490)
AGonzález@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel: 415.268.7000 / Fax: 415.268.7522

KAREN L. DUNN (*Pro Hac Vice*)
kdunn@bsfllp.com
HAMISH P.M. HUME (*Pro Hac Vice*)
hhume@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington DC 20005
Tel: 202.237.2727 / Fax: 202.237.6131

WILLIAM CARMODY (*Pro Hac Vice*)
bcarmody@susmangodfrey.com
SHAWN RABIN (*Pro Hac Vice*)
srabin@susmangodfrey.com
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6023
Tel: 212.336.8330 / Fax: 212.336.8340

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
and OTTOMOTTO LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYMO LLC,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., OTTOMOTTO LLC; OTTO TRUCKING LLC,<br><br>Defendants. | Case No. 3:17-cv-00939-WHA<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC. AND OTTOMOTTO LLC'S RESPONSE TO SPECIAL MASTER'S RECOMMENDATION**<br><br>Trial Date: February 5, 2018 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Defendants Uber Technologies, Inc. and Ottomotto LLC (collectively, "Uber") appreciate the Special Master's assistance with discovery matters throughout this contentious litigation. Uber agrees with the Special Master that the resignation email and settlement agreement were not responsive to any document request in this case, and that none of the three documents at issue (including the lawyer demand letter, dated May 5, 2017) were responsive to any Court Order in this case. Although Uber disagrees with the Special Master's conclusion that the lawyer demand letter was responsive to two document requests,[1] Uber strongly believes that the Court and the parties have already expended far too much time on this collateral issue. The question to be tried in this case is whether Uber has stolen eight purported trade secrets from Waymo, but there is no actual evidence that Uber did any such thing—neither in the lawyer demand letter nor as revealed by the supplemental discovery this month..

While it was reasonable for the Court to provide Waymo with an opportunity to conduct discovery into the allegations in the demand letter, extensive discovery during the past three weeks has confirmed this Court's observation that "it may turn up to be a nothing." (Dkt. 2309, Tr. 11/28/17 at 147:21-22.) Waymo has taken 17 depositions, and Uber has produced thousands of documents pertaining to the demand letter. The bottom line is that there is no evidence of any trade secrets theft, or that anyone at Uber working on autonomous vehicles used any form of "non-attributable device."

The lawyer who wrote the demand letter has admitted that the reference in the demand letter to stealing Waymo trade secrets was "an error in communication" with his client. (Chang Decl. Ex. A at CFL000300.) Further, Richard Jacobs has testified in deposition (consistent with his testimony in Court) that there is "no there" there:

> Q: Do you know whether or not anybody in the autonomous vehicle group anywhere at Uber ever used a non-attributable device?

---

[1] Nothing in the demand letter concerns either "the negotiation of the consideration for the Uber-Otto transaction, the IP acquired, and the ratification of certain closing conditions," as requested by RFP 29 (*see* Dkt. No. 2396, Special Master Report at 13:10-13), or the "digital or physical" documents or materials that any former Google employee "retained," as requested by RFP 73 (*see* definition of "Misappropriated Materials").

Mr. Perlson: Objection; form.

A: No.

Q: Have you ever communicated with anybody in the autonomous vehicle group in Pittsburgh by Wickr?

A: I don't think so.

Q: There's been some testimony about labeling documents as privileged when they may not be. I'd like to ask you about that.

Do you have any firsthand knowledge that anyone at Uber's autonomous group ever labeled a document as privileged when it was not?

A: No.

***

Q: Do you have any knowledge that anyone in the autonomous vehicle group at Uber ever marked a document as privileged in order to hide it from discovery?

A: No.

***

Q: Do you know that the lawsuit that you're testifying in involves the alleged theft of trade secrets by Uber?

A: That's my understanding, yes.

Q: Do you know what those trade secrets are that Uber allegedly stole?

A: I don't.

Q: Do you have any idea?

A: I would be speculating, but I would—I think there might be something about LiDAR technology.

Q: Fair enough. Other than knowing that it might involve LiDAR, do you have any idea what the trade secrets are that were allegedly stolen?

A: No.

Q: Have you ever seen any of the 14,000 documents that Anthony Levandowski allegedly took from Waymo?

A: I mean, I don't know what the documents are, but not to my knowledge.

> Q: Did you ever have any conversation with Mr. Levandowski about the alleged theft of trade secrets from Google or Waymo?
>
> A: Nope.
>
> Q: **Do you know whether any documents from Google or Waymo ever made it to Uber**?
>
> A: **No**.

(Jacobs Dep. 178:1-16, 179:1-5, 179:11-180:13; Chang Decl. Ex. B.)

Further, as it turns out, Waymo has been throwing stones while living in a glass house. This Court suspected that Waymo probably "evaporated documents" (Dkt. 2309, Tr. 11/28 at 157:24)—the Court's suspicions were spot on. Uber took the deposition of a Waymo corporate representative, and his testimony was illuminating. Although nothing in the following testimony appears confidential, Waymo has designated it "Highly Confidential—Attorneys' Eyes Only." What Waymo never disclosed to Uber during discovery (or in response to the Court's pointed questions in open Court), but to which Waymo's corporate representative testified, is the following:

1. [redacted]. (Johnston Dep. 12:13-16; Chang Decl. Ex. C.)

2. [redacted] (*Id.* at 26:1-3.)

3. [redacted] (*Id.* at 27:17-28:1.)

4. [redacted] (*Id.* at 26:4-6.)

5. [redacted]. (*Id.* at 28:12-25.)

6. [redacted] (*Id.* at 24:15-20.)

7. [redacted]



[redacted]

8. [redacted] (*Id.* at 38:18-22.)

9. [redacted] (*Id.* at 41:1-4, 14-16.)

10. [redacted] (*Id.* at 41:14-19.)

11. [redacted]r. (*Id.* at 69:11-16.)

12. [redacted] (*Id.* at 64:6-9, 21-24.)

13. [redacted] (*Id.* at 62:11-14, 63:12-64:5.)

14. [redacted] (*Id.* at 75:3-7.)

Thus, it turns out that while Waymo has sought an adverse jury instruction based, at least in part, on a 30-day preservation default on the cell phone of Uber's former CEO (Dkt. 2199), Google has been destroying nearly all of its chats for the past decade by setting the default for its chats to "off the record," and Waymo has followed that same formal policy since its inception. None of this was disclosed to Uber in this litigation.

In one final ironic twist, Uber has learned that in a different legal proceeding involving Google, the opposing party sought an adverse inference jury instruction against Google based on its failure to preserve chat messages. Google successfully fought that instruction, arguing that it

had instructed employees to save chats related to that litigation, and the Court declined to give an adverse instruction. (*See* Chang Decl. Ex. D, Declaration of Theresa Beaumont (Google Discovery Counsel), ¶ 9; *Function Media, L.L.C. vs. Google, Inc. et al*, No. 2007-CV-279, No. 416 (E.D. Tex. Jan. 26, 2010) (rejecting proposed adverse inference instruction).) Google sealed the briefing on this issue in that litigation, so Google's briefs relating to its destruction of chats remain sealed from the public. (*Function Media*, Nos. 386 and 393 (Jan. 15, 2010 and Jan. 18, 2010) (sealed filings).)

**CONCLUSION**

Although Uber disagrees with the Special Master's conclusion that the lawyer demand letter was responsive to two document requests, Waymo nonetheless has now had the benefit of extensive discovery into this "collateral issue" (Dkt. No. 2395, Dec. 13, 2017 Hr'g Tr. at 27:9-14 (Corley, J.)), and—as will become apparent when the parties file their briefs in January—has turned up nothing significant that is relevant to the merits of the actual causes of action to be tried in February. It is now time to turn to the actual issues in the case—whether Waymo's alleged trade secrets are actual trade secrets and whether Uber has misappropriated them.

Dated: December 22, 2017

MORRISON & FOERSTER LLP

By: /s/ Arturo J. González
ARTURO J. GONZÁLEZ

Attorneys for Defendants
UBER TECHNOLOGIES, INC. and
OTTOMOTTO LLC