# EXHIBIT C

# UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4                       ---oOo---
 5   WAYMO LLC,
 6        Plaintiff,
 7
 8   vs.                          No. 3:17-cv-00939-WHA
 9
     UBER TECHNOLOGIES, INC.;
10   OTTOMOTTO LLC; OTTO TRUCKING,
11   INC.,
          Defendants.
12   _____/
13
14      HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY
15     30(b)(6) VIDEOTAPED DEPOSITION OF SCOTT JOHNSTON
16                SAN FRANCISCO, CALIFORNIA
17              THURSDAY, DECEMBER 14, 2017
18
19
20
21   BY:  ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~
22   CSR LICENSE NO. 9830
23   JOB NO. 2773322
24
25   Pages 1 - 107
```

Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | ▇▇ |
| 2 | ▇▇▇▇▇▇▇▇ | 09:44 |
| 3 | ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | ▇▇ |
| 4 | ▇▇▇▇▇ You know, typically, we see the legal | 09:44 |
| 5 | department making that decision.  And then it's | 09:44 |
| 6 | implemented by an administrator, which is a | 09:44 |
| 7 | configuration in what we call the control panel. | 09:44 |
| 8 | Q    All right. | 09:44 |
| 9 | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | ▇▇ |
| 10 | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | ▇▇ |
| 11 | ▇▇▇▇▇▇▇▇▇▇ | 09:45 |
| 12 | A    Exactly. | 09:45 |
| 13 | ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | ▇▇ |
| 14 | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | ▇▇ |
| 15 | ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | ▇▇ |
| 16 | ▇▇▇▇▇ | ▇▇ |
| 17 | ▇ ▇▇▇▇ | ▇▇ |
| 18 | ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | ▇▇ |
| 19 | ▇▇▇▇▇ | 09:45 |
| 20 | Q    Yeah, so that -- let me make sure I've got | 09:45 |
| 21 | this right. | 09:45 |
| 22 | A    Yeah. | 09:45 |
| 23 | ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | ▇▇ |
| 24 | ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | ▇▇ |
| 25 | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | 09:46 |

Page 12

```
1      █████████████████                                    ████
2   █   █  ████████                                 09:59
3      Q    Anything more than that?                09:59
4      A    No.                                     09:59
5      Q    Does any -- strike that.                09:59
6           Do you have any idea how many chats, if any,  09:59
7   have been saved in connection with this case, pursuant  09:59
8   to this lit hold?                                      09:59
9      A    I don't.                                10:00
10  █   ██████████████████████████████              ████
    █  ████████████████████████████████████████████████
    █  ████████
    █   █  █████████████████████████████            ████
    █  ████████
    █   █  █████████████████████████████            ████
    █  ██████████████████████                       ████
    █       █████████████████████                   ████
    █  ██████████████████████████████████████████████
    █  ████████
    █   █  ██                                       10:00
21     Q    It's kind of the honor system?          10:00
22          MR. BAKER:  Objection; form.            10:00
23          MR. GONZALEZ:  Q.  I don't mean any negative  10:00
24  connotation.  I'm -- it sounds like that's what it is.  10:00
25     A    It is not enforced in any policy -- automatic  10:00
```

Page 24

| | | |
|---|---|---|
| 1 | Q    Isn't it true that there are people at Google | 10:01 |
| 2 | that will use chat for business purposes? | 10:01 |
| 3 | A    That is the main use of it. | 10:01 |
| 4 | Q    And isn't it true that some of the | 10:01 |
| 5 | communications on chat are substantive?  Important? | 10:01 |
| 6 | A    Yes. | 10:01 |
| 7 | Q    Is there a policy -- I got some policies from | 10:01 |
| 8 | your lawyers, and I've got them all here.  I couldn't | 10:02 |
| 9 | find the policy that tells the Google employee when | 10:02 |
| 10 | the employee should use chat as opposed to e-mail. | 10:02 |
| 11 | Do you understand my point? | 10:02 |
| 12 | A    I do. | 10:02 |
| 13 | Q    Is there such a policy? | 10:02 |
| 14 | A    No. | 10:02 |
| 15 | Q    So what guidance, if any, are employees given | 10:02 |
| 16 | as to when they should use chat instead of e-mail? | 10:02 |
| 17 | ■ ███████████████████████████████████████ ■ | |
| | ████████████████████████████████████████████████ | |
| ■ | ████████████████████████ ■ | |
| ■ | ■ █████████████████████████████████ ■ | |
| ■ | ███████████████████████████████████████████ ■ | |
| ■ | ■ ██████████████████████████████ ■ | |
| ■ | ■ ██████████████████████████████████████ ■ | |
| ■ | ████ | 10:03 |
| 25 | Is there any magic to that? | 10:03 |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | | |
|---|---|---|---|
| 1 | A | No. Legal magic, I suppose. | 10:03 |
| 2 | Q | All right. | 10:03 |
| 3 | | ███████████████████████████ ██ | |
| | ███████████████████████████████████████ | | |
| | ███████████████████████████████ | | |
| | ██ ████████████████████████████████ | | |
| | ████████████████████ | | |
| | ██ ███████████████████████████████ | | |
| | █████████████████████████████ | | |
| | █ ██████████████████████████ | | |
| | ████████████ | | |
| | █ ██████████████████████████████ | | |
| | █ █████████████████ | | 10:04 |
| 14 | | MR. BAKER: Objection to form. | 10:04 |
| 15 | | THE WITNESS: You know, I don't recall right | 10:04 |
| 16 | now. | | 10:04 |
| 17 | | MR. GONZALEZ: Q. How many Google employees | 10:04 |
| 18 | were there in that 2006-2007 time period. | | 10:04 |
| 19 | A | I don't know off the top of my head. | 10:04 |
| 20 | Q | Do you remember approximately? | 10:05 |
| 21 | A | I want to say 4,000. | 10:05 |
| 22 | | █ ████████████████████████████████ | |
| | ██████████████████████ | | 10:05 |
| 24 | | MR. BAKER: Objection to form. | 10:05 |
| 25 | | THE WITNESS: The vast majority of Google | 10:05 |

Page 27

```
1    communicates via chat, yes.                              10:05
2              MR. GONZALEZ:  I'm not too good at math.  I'm  10:05
3    doing it in my head.                                     10:05
4    
                                                              10:05
7         A    It -- it's dependent on what the custom- --    10:05
8    sorry -- what the employee chooses for settings.         10:05
9    
                                                              10:06
```



Page 28

| | | |
|---|---|---|
| 1 | settings and options? | 10:17 |
| 2 | A   Yeah. | 10:17 |
| 3 | Q   Does Google give any guidance or suggestions | 10:17 |
| 4 | to your ████████████ as to how long they | 10:17 |
| 5 | should save chats, if they choose to save them at all? | 10:18 |
| 6 | A   No. | 10:18 |
| 7 | Q   Do you give them any advice or guidance as to | 10:18 |
| 8 | whether their default should be "on" or "off"? | 10:18 |
| 9 | A   No. | 10:18 |
| 10 | Q   What is the default? | 10:18 |
| 11 | Is it automatically "off" for the ████████ ████ | |
| 12 | ████████? | 10:18 |
| 13 | A   When a -- when a G Suite company adopts | 10:18 |
| 14 | G Suite, the default in the administration panel is | 10:18 |
| 15 | "history on." | 10:18 |
| 16 | Q   Meaning that ████████████████████████? | 10:18 |
| 17 | A   They would be saved indefinitely. | 10:18 |
| 18 | Q   So that the ████████████, when they | 10:18 |
| 19 | first sign up for G Suite, the default on the system | 10:19 |
| 20 | that you give them is that they indefinitely save all | 10:19 |
| 21 | of their chats? | 10:19 |
| 22 | A   Correct. | 10:19 |
| 23 | Q   And do they then have the option to change | 10:19 |
| 24 | that? | 10:19 |
| 25 | A   Yes. | 10:19 |

```
1      Q   It sounds like ███████████████████     ████
2    ███████████████████████████████████, unless the  10:22
3    user decides not to?                              10:22
4      A   Correct.                                    10:22
5      Q   So I have a question.  It's just --         10:22
6      A   Sure.                                       10:22
7      Q   -- i██████████████████████████████         ████
█    ████████████████████████████████████████         ████
█    ████████████████████████████████                 10:22
10         MR. BAKER:  Objection to form.              10:22
11         THE WITNESS:   ███████████████████         ████
█    █████████████████████████████████                10:22
13         MR. GONZALEZ:  Yeah.                        10:22
14     █ ██████████████████████████████████████       ████
█    █████████████████████████████████████            ████
█      █ █████████                                    ████
█      █ ████████████████████████████████████████     ████
█    ██████████                                       ████
█      █ █████████                                    10:23
20     Q   Do you guys do any surveys to ask your     10:23
21   customer -- your corporation customers why they choose 10:23
22   various options?                                  10:23
23     A   My product management team is -- is regularly 10:23
24   talking to customers.  That is not a particularly 10:23
25   contentious area.                                 10:23
```

Page 41

```
 1    their computers?                                        11:09
 2            MR. BAKER:  Objection; form.                    11:09
 3            THE WITNESS:  I don't know.                     11:09
 4            MR. GONZALEZ:  Q.  Is it hundreds, the number   11:09
 5    of messaging apps that have been approved for use by    11:10
 6    Google employees.                                       11:10
 7        A   I don't know.  Our policies are -- are --       11:10
 8    there's no specific list of allowed messaging apps for  11:10
 9    personal use.                                           11:10
10        Q   I want to make sure I understand this part.     11:10
11    How many messaging apps do you use for personal use,    11:10
12    other than the Google stuff?                            11:10
13        A   So --                                           11:10
14        Q   You mentioned -- you mentioned a couple.        11:10
15            MR. BAKER:  I'm just going to object as         11:10
16    outside the scope again.                                11:10
17            You can answer.                                 11:10
18            THE WITNESS:  Okay.  I use about 14.            11:10
19            MR. GONZALEZ:  Q.  Why so many.                 11:10
20        A   In my role, I force my friends and family to    11:10
21    use different apps.                                     11:10
22        Q   That's fair.                                    11:10
23        A   Yeah.                                           11:10
24        Q   Part of your job is to kind of know what the    11:10
25    competitors are doing?                                  11:10
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | A  Exactly. | 11:10 |
| 2 | Q  And how theirs works? | 11:10 |
| 3 | A  Right. | 11:11 |
| 4 | Q  And if theirs has some fancy bell and | 11:10 |
| 5 | whistle, then maybe you might want to add that to | 11:11 |
| 6 | yours? | 11:11 |
| 7 | A  Maybe people love Peaches more than I | 11:11 |
| 8 | thought. | 11:11 |
| 9 | Q  Exactly. | 11:11 |
| 10 | Do you use that one? | 11:11 |
| 11 | A  I have at one time.  I do not right now. | 11:11 |
| 12 | Q  What are the ones that you use? | 11:11 |
| 13 | A  I mainly, in my personal life, use WhatsApp. | 11:11 |
| 14 | It's a -- that's mainly for non-U.S. friends.  I use | 11:11 |
| 15 | Facebook Messenger.  I use Slack.  Those are the main | 11:11 |
| 16 | ones I use.  I have one friend that uses Telegram and | 11:11 |
| 17 | won't talk to me on anything else. | 11:11 |
| 18 | Q  What other ones do you use even just a little | 11:11 |
| 19 | bit? | 11:11 |
| 20 | You mentioned 14. | 11:11 |
| 21 | A  WeChat, Luna, Symphony.  I think that's -- I | 11:11 |
| 22 | mentioned Facebook Messenger.  I have not used Signal | 11:12 |
| 23 | in a while. | 11:12 |
| 24 | Q  But you have used it? | 11:12 |
| 25 | A  Uh-huh.  I use Snapchat. | 11:12 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | That's all I can recall right now. | 11:12 |
| 2 | Q HipChat? | 11:12 |
| 3 | A I'm not currently using HipChat, no. | 11:12 |
| 4 | Q Have you ever used it? | 11:12 |
| 5 | A Yes. | 11:12 |
| 6 | Q And these various messaging applications, did | 11:12 |
| 7 | you have to get approval from someone at Google in | 11:13 |
| 8 | order to use those on your Google machine? | 11:13 |
| 9 | A Not that I recall, no. | 11:13 |
| 10 | Q So how do you use those in your Google | 11:13 |
| 11 | machine? Just download them? | 11:13 |
| 12 | A They're mainly mobile, and so I use them on | 11:13 |
| 13 | one of my phones. | 11:13 |
| 14 | Q Is that a Google-issued phone? | 11:13 |
| 15 | A No. It's -- I have a number of -- again, in | 11:13 |
| 16 | my role, which is strange, I have between ten and 15 | 11:13 |
| 17 | devices that I'm rotating between. | 11:13 |
| 18 | An average person would -- would install it | 11:13 |
| 19 | either on their personal device or a Google-issued | 11:13 |
| 20 | device. | 11:13 |
| 21 | Q And for the standard person who is installing | 11:13 |
| 22 | it on their personal or Google-issued device, do they | 11:13 |
| 23 | need to get permission from Google to do that? | 11:13 |
| 24 | A Not that I'm aware of. | 11:13 |
| 25 | Q And mechanically, the way I would install one | 11:14 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | I'm just trying to see if you guys will just exchange | 11:19 |
| 2 | that information or give us that information. | 11:19 |
| 3 |     MR. BAKER:  Well, I'll consider your request, | 11:19 |
| 4 | but I would like to see a formal discovery request. | 11:19 |
| 5 |     Actually, I don't even think we need a formal | 11:19 |
| 6 | discovery request, because I don't think you're | 11:19 |
| 7 | entitled to any additional discovery. | 11:20 |
| 8 |     But I'll consider your request. | 11:20 |
| 9 |     MR. GONZALEZ:  Okay.  Just let us know.  If | 11:20 |
| 10 | the answer is "no," we'll know how to proceed. | 11:20 |
| 11 | Q   If a customer does require a specific chat | 11:20 |
| 12 | service for communication, as indicated here in the | 11:20 |
| 13 | policy, then Google would use that chat service for | 11:20 |
| 14 | communications with that customer? | 11:20 |
| 15 | A   The people that were -- required that -- | 11:20 |
| 16 | whose -- whose job required that communication, yes. | 11:20 |
| 17 | Q   And so, with respect to those types of chats, | 11:20 |
| 18 | if a Google employee is communicating with a | 11:20 |
| 19 | non-Google messaging app service, how long would that | 11:20 |
| 20 | chat be saved? | 11:20 |
| 21 | A   It would be dependent on the chat application | 11:20 |
| 22 | they were using. | 11:20 |
| 23 | Q   Yeah, that's what I was trying to get at. | 11:20 |
| 24 |     So all this stuff you said earlier about | 11:20 |
| 25 | ▇▇▇▇ and all that stuff won't apply if it's a | 11:21 |

| | | |
|---|---|---|
| 1 | use that one because it presents security risks? | 11:27 |
| 2 | A   No. | 11:27 |
| 3 | Q   I think I asked you this, but in case I | 11:27 |
| 4 | forgot, the Waymo employees follow the same | 11:28 |
| 5 | preservation policies as the Google employees; is that | 11:28 |
| 6 | right? | 11:28 |
| 7 | A   Correct. | 11:28 |
| 8 | (Document marked Exhibit 2302 | 11:28 |
| 9 | for identification.) | 11:29 |
| 10 | MR. GONZALEZ:   Sir, you've been handed a | 11:29 |
| 11 | document that we have marked as Exhibit 2302.  It's a | 11:29 |
| 12 | declaration from Theresa Beaumont, who I understand, | 11:29 |
| 13 | at least at some point, was a Google employee. | 11:29 |
| 14 | Q   Have you seen this before? | 11:29 |
| 15 | A   I have not. | 11:29 |
| 16 | Q   So, if you look at paragraph 8, she says: | 11:29 |
| 17 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 11:29 |
| 22 | Do you have any understanding as to what she | 11:29 |
| 23 | means by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮? | 11:30 |
| 25 | MR. BAKER:   Objection; form. | 11:30 |

```
 1                  CERTIFICATE OF REPORTER
 2
 3         I, ANDREA M. IGNACIO, hereby certify that the
 4    witness in the foregoing deposition was by me duly
      sworn to tell the truth, the whole truth, and nothing
 5    but the truth in the within-entitled cause;
 6         That said deposition was taken in shorthand
 7    by me, a disinterested person, at the time and place
 8    therein stated, and that the testimony of the said
      witness was thereafter reduced to typewriting, by
 9    computer, under my direction and supervision;
10         That before completion of the deposition,
11    review of the transcript [ ] was [x] was not
12    requested.  If requested, any changes made by the
      deponent (and provided to the reporter) during the
13    period allowed are appended hereto.
14         I further certify that I am not of counsel or
15    attorney for either or any of the parties to the said
      deposition, nor in any way interested in the event of
16    this cause, and that I am not related to any of the
17    parties thereto.
18    Dated: December 15, 2017
19
20
21
22
23              _____
24              ANDREA M. IGNACIO,
25         RPR, CRR, CCRR, CLR, CSR No. 9830
```

Page 107