December 29, 2017

The Honorable Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse
Courtroom F - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102


Re:     *Waymo LLC v. Uber Technologies, Inc. et al.*, Case No. 3:17-cv-00939-WHA
        **Letter Brief Regarding Waymo's Motion to Compel**

Dear Judge Corley:

Please find below Waymo's letter brief regarding the various outstanding discovery issues in this matter.


Sincerely,

*/s/ Charles K. Verhoeven*

Charles K. Verhoeven

The Honorable Jacqueline Scott Corley
December 29, 2017

**1.     Uber Should Be Ordered To Supplement Its Response To Interrogatory No. 1.**

On December 8, Waymo served its First Set of Interrogatories Relating to Issues in the Jacobs Letter. (Ex. A.) Interrogatory No. 1 requests:

> For each UBER current or former employee that was aware of the JACOBS LETTER or the JACOBS EMAIL prior to November 22, 2017, identify the name of the current or former employee, whether that person is a current or former employee, and the date on which he or she became aware of the JACOBS LETTER or the JACOBS EMAIL.

(*Id.*)  This interrogatory directly tracks Judge Alsup's December 1 Case Management Order, which authorizes Waymo to conduct discovery into "the identities of all defendants' personnel who were *aware* of Jacobs's letter or email before November 22." (Dkt. 2315 (emphasis added).)

Uber served its objections and response to Interrogatory No. 1 on December 22. (Ex. B.) Uber objected that the term "aware" (*i.e.*, the same term used in Judge Alsup's December 1 Case Management Order) was "undefined and vague." Uber then limited its response to a list of personnel who merely *received* the Jacobs email or letter.

The Court should order Uber to supplement its response to Interrogatory No. 1 to further identify all personnel who were "aware" of the Jacobs email or letter, and the date by which they became so aware, regardless of whether such personnel actually received these documents. This evidence is critical to Waymo's January 12 submission to Judge Alsup, because it bears on the question of how widely spread knowledge of the Jacobs documents was throughout Uber and when key individuals became aware of these documents and their potential relevance to this litigation. This is not a collateral matter. Indeed, during the parties' December 4 hearing, Judge Alsup specifically noted that Uber's level of "culpability" in not producing the Jacobs documents was a key issue because it "helps inform me as to how much the jury should learn about all this." (Dkt. 2342 [12/4/17 Hearing Tr.] at 39:16-20.) Evidence that the Jacobs documents were broadly known within Uber—even if physical custody of the documents themselves was limited to a smaller number of people—would confirm that these documents were not mistakenly withheld (as Uber's witnesses have claimed), but that they were instead intentionally concealed as part of an overall cover-up. (*Id.* at 38:23-39:4 ("But this is not the usual case. There has been a lot of this destruction of evidence. A lot of what looks like hide the ball, but not necessarily. Some of it could have been innocent. But it has been a lot, in my experience. And so much so that I am carefully working my way through every single one of these problems to see if—how much of it the jury should be told.").)

Uber's only objection to supplementing Interrogatory No. 1 is that it would be unduly burdensome for it to investigate all individuals who were "aware" of the allegations of the Jacobs letter. But, polling its personnel regarding their awareness of the Jacobs documents is consistent with the type of investigation that the Court has required during this discovery period. For

The Honorable Jacqueline Scott Corley
December 29, 2017

example, Judge Alsup ordered Uber to produce inventories of every Uber employee who has used non-attributable devices or a self-deleting communication system. (Dkt. 2309 [11/28/17 Hearing Tr.] at 153:23-155:8, 156:8-10; Dkt. 2310 [11/29/17 Hearing Tr.] at 156:5-7.) Uber never once claimed that responding to these court orders required an insurmountable investigation. Similarly, in response to Interrogatory No. 1, Uber should be required to conduct a reasonably diligent investigation of personnel who had awareness of the Jacobs documents, particularly given Judge Alsup's interest in this issue as reflected in the December 1 Case Management order.

### 2. Uber Should Be Ordered to Provide for *In Camera* Review by the Special Master Withheld And Redacted Documents.

At the December 13 hearing, Uber represented that it was claiming privilege over approximately 4,000 documents responsive to Waymo's RFPs. (Dkt. 2395 [12/13/17 Hearing Tr.] at 23:22-24:1.) Based on this representation, the Court declined to order Uber to provide a complete, individualized privilege log justifying its assertion of privilege at that time, but left open the possibility that Uber would be required to provide additional information upon a showing of relevance to a claim or defense in the case. (*Id.* at 27:17-28:3.)

In advance of the deposition of Uber's head of litigation, Angela Padilla, Waymo requested an individualized privilege log of certain of Ms. Padilla's communications in order to "provide insight into when and how broadly disseminated throughout Uber responsive Jacobs documents were circulated during the relevant period" and to allow Waymo to "test and meaningfully challenge Uber's claims of privilege during the period when Uber was investigating the merits of the Jacobs allegations." (Dkt. 2419-3 at 4.) In its December 20 order, the Court granted Waymo's request, ordering Uber to "produce a fully compliant privilege log for documents that Uber is withholding that involve communications with Ms. Padilla . . . and discuss the Jacobs letters, any investigation being done as a result of Mr. Jacobs' accusations, and the settlement with Mr. Jacobs." (Dkt. 2415 at 2.)

On December 22, Uber provided the ordered log which comprised 755 entries. (Ex. C.) With the log, however, Uber also produced 87 previously unproduced documents involving Ms. Padilla.[1] The reason for this new production of documents is obvious—as Waymo feared, Uber has failed to adequately analyze the 4,000 responsive documents that it is withholding. And, when forced to justify its claims of privilege on an item-by-item basis, Uber is forced to produce additional relevant, responsive document that—by its own admission—should have never been withheld in the first place. In fact, if the withheld documents from Ms. Padilla are any indication, Uber's improper withholding rate is over 10%, meaning that there are likely many *hundreds* of additional responsive, non-privileged documents that Uber is currently withholding.

---

[1] The Court had previously ordered Uber to complete its production of documents responsive to Waymo's RFPs by December 14, and Uber has never once indicated that it had failed to comply with this order. (Dkt. 2395 [12/13/17 Hearing Tr.] at 21:22-22:9.)

The Honorable Jacqueline Scott Corley
December 29, 2017

Further compounding the problem with Uber's privilege assertions, Waymo has noted inconsistent redactions of the same email message appearing in different documents produced by Uber. (*Compare, e.g.* Ex. D (UBER00334409) (6/23/17 email from S. Yoo), *with* Ex. E (UBER00334437) (6/23/17 email from S. Yoo).) This discrepancy between identical messages appearing in two different documents indicates that Uber has failed to take a justifiable, consistent approach to its privilege claims, which raises serious questions regarding the appropriateness of Uber's redactions to other documents.[2]

During the parties' meet-and-confer conferences with the Special Master, Uber has not denied that it has erred in certain of its privilege assertions. Rather, Uber has essentially argued that such mistakes are inevitable given the truncated discovery period. But the shortened discovery period under which both parties are currently struggling was created by Uber's failure to timely disclose the Jacobs documents during normal discovery. Based on the schedule constraints, Uber has already obtained special dispensation from the ordinary privilege log requirements. It should not also be entitled to use this shortened discovery period to justify what is unquestionably an overbroad assertion of the attorney-client privilege due to circumstances Uber created.

Given the limited time to resolve outstanding discovery issues, Waymo suggested a compromise to address what are likely to be additional defects in Uber's remaining privilege claims – one that the Special Master has agreed to.[3] Waymo's proposal is that the Special Master conduct a

---

[2]    Just hours before filing this Motion, Waymo received notice that Uber intends to produce "about 20" additional responsive, non-privileged documents, and withhold an unknown number of additional documents as privileged. (Ex. K.) The explanation provided for this belated production is that Uber's e-discovery vendor inadvertently did not "push[]" these documents to Uber for review. This notice, just one day after the Special Master agreed to Waymo's proposal to review *in camera* Uber's withheld documents, was the first time Waymo was notified of the existence of these additional documents. The 11th hour notification of a yet-to-be-made production further reinforces the need to scrutinize the documents that Uber continues to withhold.

[3]    Uber has suggested that there is a "legal burden" that must first be met before a court can order *in camera* review of documents withheld as privileged. This is wrong. A burden of establishing cause for *in camera* review is only applied where the party asserting privilege has submitted a "facially adequate" privilege log. *Fourth Age Limited v. Warner Bros. Digital Distribution, Inc.*, Case No. 12-cv-09912, 2014 WL 12584447, at *3 (C.D. Cal. Oct. 9, 2014) (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992)). Here, Uber has submitted no privilege log at all, and thus Waymo carries no burden. Even where a burden for establishing cause for *in camera* review does apply, the Ninth Circuit has held that such burden is "relatively minimal." *In re Grand Jury Subpoena 92-J(SJ)*, 31 F.3d 826, 829-30 (9th Cir. 1994); *see also Genetech, Inc. v. Trustees of Univ. of Penn.*, Case No. C 10-2037 PSG, 2011 WL 7074211, at *1 (N.D. Cal. Oct. 18, 2011) ("To empower the district court to review the disputed materials in camera, the party opposing the privilege need only show a factual basis sufficient to

The Honorable Jacqueline Scott Corley
December 29, 2017

limited *in camera* review of the following categories of documents over which Uber has claimed privilege:

> (i) a set of less than 300 documents selected by Waymo whose redactions appear suspiciously overbroad;
>
> (ii) a set of 200 documents randomly selected by the Special Master from those currently being withheld from the custodial files of Craig Clark;
>
> (iii) a set of 200 documents randomly selected by the Special Master from those currently being withheld from the custodial files of Joe Sullivan; and
>
> (iv) a set of 200 documents randomly selected by the Special Master from the files of all remaining custodians.

(Ex. F.)[4] To facilitate the *in camera* review, Waymo proposes that Uber be immediately ordered to provide to the Special Master unredacted copies of all withheld documents, organized by custodian. To the extent the Special Master identifies documents that Uber has improperly withheld or redacted, such documents should be produced to Waymo on a rolling basis. If the *in camera* review reveals serious defects with Uber's privilege assertions, Waymo reserves the right to request that the Court order additional *in camera* review and/or additional logging by Uber.

### 3. Uber Should Be Ordered To Conduct A Reasonably Diligent Search For All Documents Concerning "Vendor 1."

In response to Waymo's RFPs, Uber produced a document titled ". (Ex. G.) This document includes a number of ▓▓▓ (*id.* at UBER00336622), ▓▓▓ (*id.* at UBER00336625-27). ▓▓▓

---

support a reasonable, good faith belief that in camera inspection may reveal evidence that information in the materials is not privileged."). That burden would obviously be met here, given both the allegations raised by Mr. Jacobs that Uber has a pattern and practice of misusing the privilege to conceal evidence from civil litigations, and the more than 10% "error rate" indicated by the December 22 Padilla production.

[4]    In lieu of *in camera* review, Uber has proposed that it log all post April 14 documents concerning the Jacobs documents, the Jacobs investigation, and the Jacobs mediation. This compromise, however, would exclude all pre-April 14 documents concerning the substance of the Jacobs allegations, including the contrived use of attorney-client privilege to shield materials from discovery. This proposal for additional logging also does not address the defects in Uber's claims of privilege that are already apparent. Waymo respectfully requests that its proposal for *in camera* review be adopted instead.

The Honorable Jacqueline Scott Corley
December 29, 2017

███ (*Id.* at UBER0036627.) Specifically, ███

███ Uber SSG employee Ed Russo—the author of ███—testified that ███ (Ex. H at 320:22-321:1.) ███ (*Id.* at 322:9-15.)

Given the uncertainty regarding what Uber was contemplating against Google ███ Waymo requested that Uber produce "documents sufficient to show ███" and "███" (Ex. I (12/21/17 email from J. Francis at Item #3).)  Uber's response was incredibly circumspect—rather than agreeing to search for and produce documents ███ (*Id.*) Uber has reiterated this position during the parties' meet-and-confer conferences.

Uber's response is insufficient. Regardless of ███ Waymo is entitled to any documents within Uber that explain or discuss ███ Such documents are likely to reflect ███, which is relevant to Uber's overall course of conduct and intent to misappropriate Waymo's trade secrets as alleged in this case. Such documents are also directly responsive to at least RFPs 24, 28, and 29. (Ex. J.)  Especially in light of the relevant witnesses claiming to lack specific knowledge of the ███ Uber should produce documents that would shed further light on this issue.

Mere hours before filing this motion, Uber responded to Waymo's latest inquires regarding the "Vendor 1" issue. (Ex. L (12/29/17 email from S. Rivera).)  In its latest response, Uber reiterates its position (which, as described above, is beside the point) that ███ Uber further states that it has not "located any additional documents *for production* that discuss ███ (*Id.* (emphasis added).) Again, Uber's carefully phrased response raises more questions than it answers.  If Uber has located documents responsive to Waymo's requests (whether "for production" or not, or whether expressly mentioning Waymo), it should say so.  If such documents are somehow being withheld as

The Honorable Jacqueline Scott Corley
December 29, 2017

privileged, Uber should provide log entries to justify such privilege.  Waymo followed up in an effort to avoid burdening the Court with this issue (*id.* (12/29/17 email from P. Schmidt)), but did not receive a response.

Waymo therefore requests that the Court order Uber to conduct a reasonably diligent search for any documents pertaining to (i) the actual or potential entities ███████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███

### 4. Uber Should Provide Information About the Default Settings of Its Chat Applications in a Formal Notice

Waymo and Uber agreed to provide information on the default settings for their chat applications with ephemeral capabilities.  Waymo provided that information in a formal Notice and requested Uber to do the same.  To date, Uber has refused to provide its information in any form other than an informal email chain from counsel.  Waymo seeks nothing more than for Uber to put its information in the same formal pleading format as Waymo.

Uber was ordered to provide a list of chat applications used by its employees on November 28 (Dkt. 2309 [11/28/17 Hearing Tr. at 113:12-15; 153:21-155:8; 156:8-21]), and served that list on December 4 (with a supplementation on December 22).  The Court ordered Waymo to investigate and report the extent to which chat applications were used by Waymo employees, and Waymo filed a formal Notice pleading in response to the Court's request on December 4.  (Dkt. 2336-3.)  During subsequent meet and confers, the parties agreed to exchange information about the default settings for their chat applications as well as language (if any) from their respective litigation holds addressing chat applications.  (*See* Ex. M.)  The Court entered a Rule 502 Order related to this agreement on December 11.  (Dkt. 2363.)  Pursuant to the agreement and the Rule 502 Order, the parties exchanged redacted litigation holds on December 19.

With respect to the parties' agreement concerning the exchange of information about default settings, Waymo provided this information as part of its December 4 Notice.  Uber refused to provide the same information, however, until ordered to do so by the Special Master on December 20.  Uber then provided the information in an email.  (*See* Ex. N.)  During a December 27 meet and confer, counsel for Waymo asked counsel for Uber to provide its default settings in a formal, admissible form, as opposed to an email.  Counsel for Waymo noted that Waymo had provided information about its default settings in its December 4 Notice pleading.  Counsel for Uber responded that it was not clear that Waymo's Notice pleading was "admissible" and asked if Waymo would be willing to stipulate to the admissibility of its pleading.  (Ex. O.)  On December 29, counsel for Waymo responded by requesting Uber to provide information about its default setting in a formal pleading like Waymo's December 4 Notice, and suggesting that the parties could discuss the admissibility of their respective pleadings at a later date.  (*Id.*)  To date, counsel for Uber has not responded, thus requiring

The Honorable Jacqueline Scott Corley
December 29, 2017

Waymo to burden the Court with this issue given the Court-set deadline to bring motions to compel.