1

2

3

4

5

6                              IN THE UNITED STATES DISTRICT COURT

7                             FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10      WAYMO LLC,

11                 Plaintiff,                            No. C 17-00939 WHA

12           v.

13      UBER TECHNOLOGIES, INC.,                         **PENULTIMATE**
        and OTTOMOTTO LLC,                               **JURY INSTRUCTIONS**
14                                                       **ON TRADE SECRET**
                 Defendants.                             **MISAPPROPRIATION**
15      _____/

16

17          Below please find the revised penultimate jury instructions and special verdict form on

18   the misappropriation claims, after consideration of all arguments and submissions to date.

19   The Court reserves the discretion to revise and a further conference on them will be held near

20   the end of the trial evidence.  Counsel and witnesses shall please not refer to these instructions

21   before the jury and shall not claim "reliance" on these instructions, since they are subject to

22   change.  Please note that new instructions have been added.  Any and all objections and

23   proposed modification must be filed by **NOON ON JANUARY 29, 2018**.  Please limit your filing to

24   fifteen pages and follow the guidelines for case quotations previously described.

25                                              I.

26          A "trade secret" involves information and can potentially cover any form of financial,

27   business, scientific, technical, economic, or engineering information, including patterns, plans,

28   compilations, program devices, formulas, designs, prototypes, methods, techniques, processes,

United States District Court

For the Northern District of California

1   procedures, programs, or codes, whether tangible or intangible, and whether or how stored,

2   compiled, or memorialized physically, electronically, graphically, photographically, or in

3   writing.  Whether or not any particular information qualifies as a trade secret depends upon

4   factors that I will describe in a moment but, by way of introduction, I want you to understand

5   that a trade secret concerns information.

6   II.

7   This trial concerns Waymo Alleged Trade Secrets Numbers 2, 7, 9, 13, 14, 25, 90, and

8   111, which are defined in TX _____.  Waymo contends that defendants Uber Technologies,

9   Inc., and Ottomotto LLC misappropriated these Alleged Trade Secrets.  The summary and listing

10  of these in a single document has been done for your convenience.  It does not mean that they

11  are (or are not) in fact trade secrets.  Waymo must still prove that each one qualifies as a trade

12  secret.

13  III.

14  Although our trade secret laws allow recovery of "actual damages," once

15  misappropriation is proven, Waymo has chosen to proceed on a measure of damages called

16  unjust enrichment, a measure that is recognized under our trade secret laws.  Furthermore,

17  although our trade secret laws allow recovery for unjust enrichment based on improper

18  acquisition, use or disclosure of trade secrets, Waymo proceeds in this trial on a theory of

19  recovery that requires it to prove unjust enrichment by reason of use or disclosure of trade

20  secrets.  Acquisition alone will not be enough to recover damages.

21  IV.

22  To succeed on its claim for unjust enrichment based on alleged misappropriation of any

23  given Alleged Trade Secret, therefore, Waymo must prove all of the following:

24          1.      That the Alleged Trade Secret qualified as an enforcible trade

25  secret at the time it was allegedly misappropriated;

26          2.      That the defendant improperly acquired, then used or disclosed

27  the Alleged Trade Secret;

28          3.      That the defendant was thereby unjustly enriched; and

**United States District Court**
For the Northern District of California

2

**United States District Court**
For the Northern District of California

4.    That such use or disclosure was a substantial factor in unjustly

enriching the defendant.

No defendant may be held liable for a damage award as to any given Alleged Trade Secret unless all of these elements of proof are satisfied as to that defendant and as to that given Alleged Trade Secret.  It is for you, the jury, to decide whether or not all of these elements have been proven for all of the Alleged Trade Secrets, for some of them, or for none of them.  I will now explain these elements of proof in more detail.

V.

Turning to the first element of proof for a misappropriation claim, Waymo must prove that each Alleged Trade Secret qualified as an enforcible trade secret at the time of alleged misappropriation.  To do so, Waymo must prove all of the following:

1.    That Waymo owned the Alleged Trade Secret;

2.    That the Alleged Trade Secret was secret at that time;

3.    That the Alleged Trade Secret had actual or potential independent economic value at that time because it was secret; and

4.    That Waymo made reasonable efforts up to the alleged misappropriation to keep secret the Alleged Trade Secret.

I will now explain these factors in more detail.

VI.

Information that is generally known in the field or is readily ascertainable by proper means by those skilled in the art at the time of the alleged misappropriation cannot qualify as a trade secret.  There is no fixed standard for determining what is "readily ascertainable by proper means."  In general, information is readily ascertainable if it can be obtained, discovered, developed, reverse-engineered, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials or if it could be readily determined by those skilled in the art. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is readily ascertainable by proper means.

3

United States District Court

For the Northern District of California

## VII.

As I have told you, a "trade secret" concerns information. By contrast, trade secrets do not cover professional skills, talents, or abilities. Trade secrets, therefore, do not cover skills, talents, or abilities developed by employees in their employment even though they may be developed at the expense of the employer. Engineers will, for example, through trial and error and application of their professional skills on the job, naturally sharpen their skills and accumulate practical lessons that supplement their skills, talents, and abilities. When they move to new jobs with new employers, they cannot be expected to erase such natural on-the-job practical lessons from memory and will remain free under the law to use them, even though learned while on the payroll of the prior employer. Those lessons must be deemed to become part of their professional skills, talents, and abilities. Engineers cannot, however, go further in new jobs with new employers to use or disclose to others specific engineering solutions or information developed by their prior employers where such specific solutions or information qualify as a trade secret, even those developed or discovered by the engineers themselves. Nor may they memorize or photocopy or download to take their prior employer's trade secrets with them. It is for the jury to decide in each case whether the employees have used or disclosed a former employer's trade secret information at their new jobs versus having utilized their professional skills, talents, or abilities.

## VIII.

The results of extended research, which proves that a certain process will *not* work, can qualify as an enforcible trade secret if all prerequisites for a trade secret are met. This type of negative information is sometimes called "negative trade secrets." By the same token, depending on the facts and circumstances, negative information might *not*, in a given case, qualify as an enforcible trade secret because, for example, it remains one of those practical on-the-job insights that become part of the engineer's general skills, talents and abilities, or can be found in the literature. It is for the jury, in each case, to determine whether negative information qualifies or not as a trade secret, applying the same test as for other information.

United States District Court

For the Northern District of California

## IX.

Everyone has the right to use or to disclose information that they independently develop on their own without the benefit of someone else's trade secrets.  Therefore, even if one company has a protectable trade secret in certain information, other companies are free to independently develop and use similar information on their own.  They cannot, however, improperly acquire and then use or disclose someone else's trade secrets in doing so.

## X.

The secrecy required to prove that something is a trade secret does not have to be absolute secrecy in the sense that no one else in the world possessed the information at the relevant time.  It may have been disclosed to employees involved in the owner's use of the trade secret as long as they were instructed to keep the information secret.  It may also have been disclosed to nonemployees if they were obligated to keep it secret.  However, it must not have been generally known to the public or to others who could have obtained value from knowing it.

## XI.

A trade secret has independent economic value if it would have given the owner an actual or potential business advantage over others who did not know the information and who could have obtained economic value from its disclosure or use.  In determining whether the information had actual or potential independent economic value because it was secret, you may consider the following:

1. The extent to which the owner obtained or could have obtained economic value from the information in keeping it secret;

2. The extent to which others could have obtained economic value from the information if it were not secret;

3. The amount of time, money, or labor that the owner expended in developing the information; and

4. The amount of time, money, or labor that defendant saved by using the information.

United States District Court

For the Northern District of California

The presence or absence of any one or more of these factors is not necessarily determinative.

XII.

Reasonable efforts to keep the information secret are the efforts that would have been made by a reasonable business in the same situation with the same knowledge and resources as the alleged owner, exercising due care to protect important information of the same kind. This requirement applies separately to each item that claimed to be a trade secret.

In determining whether or not the owner made reasonable efforts to keep the information secret, the following factors should be considered, among any other factors pertinent to the issue:

1.      Whether products, hardware, documents or computer files containing the information were marked with confidentiality warnings;

2.      Whether the owner instructed its employees to treat the information as confidential;

3.      Whether the owner unreasonably over-classified information as confidential such that employees might be unsure of what genuinely needed confidentiality;

4.      Whether the owner restricted access to the information to persons who had a business reason to know the information;

5.      Whether the owner kept the information in a restricted or secured area;

6.      Whether the owner required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

7.      Whether the owner took any action to protect the specific information, or whether it relied on general measures taken to protect its information or assets;

8.      The extent to which any general measures taken by the owner would prevent the unauthorized disclosure of the information; and

**United States District Court**
For the Northern District of California

1          9.          Whether there were other reasonable measures available to the

2   owner that it did not take.

3          The presence or absence of any one or more of these factors is not necessarily

4   determinative.

5                                                      XIII.

6          Turning to the second element of proof for a misappropriation claim for damages,

7   Waymo must also prove that the Alleged Trade Secret was used or disclosed by a defendant

8   without Waymo's consent and that said defendant either acquired knowledge of the trade secret

9   by improper means or at the time of use, knew or had reason to know that its knowledge of the

10  trade secret came through persons who had acquired it by improper means.

11                                                     XIV.

12         Improper means of acquiring a trade secret or knowledge of a trade secret include, but are

13  not limited to, theft, misrepresentation, and breach or inducing a breach of a duty to maintain

14  secrecy.  It is not improper, however, to acquire a trade secret or knowledge of the trade secret

15  by any of the following:

16          1.          Independent efforts to invent or discover the information;

17          2.          Reverse engineering; that is, examining or testing a product to

18  determine how it works by a person who has a right to possess the product;

19          3.          Observing the information in public use or on public display; or

20          4.          Obtaining the information from published literature, such as

21  trade journals, reference books, the Internet, or other publicly-available

22  sources.

23                                                      XV.

24         Misappropriation by use requires actual use.  It is not enough to speculate that employees

25  of an accused defendant would inevitably have used the claimed trade secret in their work.

26  In this connection, you have heard testimony that employees of defendants once worked for

27  Google and/or Waymo.  The mere fact that employees left Google or Waymo to work for a

28  defendant does not automatically mean that they used Waymo's trade secrets after they left

United States District Court

For the Northern District of California

Google or Waymo.  Again, employees have the right to change employers and to apply their talents and skills in their new jobs.  Doing so is lawful as long as they don't reveal or use information qualifying as a trade secret of a prior employer.

### XVI.

Use is not limited to direct copying but includes studying and consulting.  For example, if someone took a copy of a secret design with him to his next employer and studied the copy while working on the next employer's own design, such studying would constitute use even though the two designs differed.

### XVII.

Turning to the third and fourth elements of proof of Waymo's misappropriation claim, unjust enrichment occurs whenever a defendant reaps an undeserved benefit such as accelerating its own development timeline and/or saving on development costs by taking improper advantage of someone else's trade secrets.  Unjust enrichment does not occur, however, where the benefit would have been realized anyway.  The use or disclosure must have been a substantial factor in causing the unjust enrichment.  A substantial factor in causing unjust enrichment means a factor that a reasonable person would consider to have contributed to the unjust enrichment.  It must be more than a remote or trivial factor.  It does not have to be the only cause.  Conduct is not a substantial factor in causing unjust enrichment if the same benefit would have occurred without that conduct.

### XVIII.

Acquiring someone else's enforcible trade secret may (or may not) unjustly enrich the acquirer.  In this case, however, Waymo's theory of recovery depends, as stated, on proving use or disclosure of its Alleged Trade Secret.

### XIX.

If you find any defendant misappropriated one or more Alleged Trade Secrets and was thereby unjustly enriched, then you must decide whether Waymo has proven a calculable dollar value for the unjust enrichment by that defendant.  I will now instruct you on the law concerning

1   such damages.  By doing so, I am not suggesting for whom your verdict should be on the

2   question of liability.  That is a question entirely up to you.

3                                                    XX.

4          If Waymo proves that any defendant used or disclosed one or more Alleged Trade

5   Secrets, then Waymo is entitled to recover damages if the use or disclosure was a substantial

6   factor in causing that defendant to be unjustly enriched.

7          To decide the dollar amount of any unjust enrichment to a defendant, first determine the

8   dollar value of that defendant's actual benefit that would not have been achieved except for its

9   use or disclosure.  Then subtract from that amount that defendant's reasonable expenses,

10  including the dollar value of its own independent research and development.

11         Your award must be based upon evidence, and not upon speculation, guesswork, or

12  conjecture.

13         If you find, as to any Alleged Trade Secret, that it was used or disclosed but that Waymo

14  has failed to prove a calculable dollar amount of unjust enrichment, meaning on Special Verdict

15  Question Nos. 2 and 6 you answer "Yes" and "Zero," then we may have a short supplemental

16  instruction and supplemental closing argument to assist you in arriving at an alternative form of

17  award.

18                                                  XXI.

19         If you find any defendant used or disclosed one or more Alleged Trade Secrets and that

20  that defendant is liable for damages for unjust enrichment, then you must decide whether that

21  defendant's conduct was willful and malicious.  If you so find, then you must determine what

22  amount of exemplary damages Waymo should recover from that defendant.  Exemplary damages

23  are intended to punish and to deter misappropriation of trade secrets.  You may determine an

24  amount of exemplary damages up to two times any amount awarded as damages for unjust

25  enrichment.

26                                                 XXII.

27         Conduct is "willful" if done with a purpose or willingness to commit the act or engage in

28  the conduct in question, and the conduct was not reasonable under the circumstances at the time

United States District Court
For the Northern District of California

9

and was not undertaken in good faith. Conduct is "malicious" if done with an intent to cause injury or was despicable and done with a willful and knowing disregard for the rights of others. Conduct is despicable when it is so vile or wretched that it would be looked down upon and despised by ordinary decent people. Someone acts with knowing disregard when aware of the probable consequences of their conduct and deliberately fail to avoid those consequences.

### XXIII.

You have heard evidence that the law firm of Morrison & Foerster, LLP, and/or the forensic analytics firm of Stroz Friedberg, LLC, received information originating with Waymo in connection with Uber's acquisition of Ottomotto LLC. Under the law, if Waymo proves that one or both of these firms acquired Waymo information as an agent of a defendant, then you must treat that information as having been acquired as well by that defendant unless the defense proves that such firm was under an obligation not to disclose the trade secret to that defendant.

### XXIV.

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal. The agency agreement may be oral or written. An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal.

### XXV.

If you find that Morrison or Stroz acquired and then used or disclosed an Alleged Trade Secret, as agent on behalf of Uber, but further find that Uber itself did not otherwise acquire, use or disclose it, then the only damages you may impose, if any, would be for the use or disclosure, if any, by Morrison or Stroz, taking into account the particulars of any such use or disclosure.

The same is true for Ottomotto. If you find that Morrison or Stroz acquired, then used or disclosed an Alleged Trade Secret, as agent on behalf of Ottomotto, but further find that Ottomotto itself did not otherwise acquire, use or disclose it, then damages attributable to

United States District Court

For the Northern District of California

Ottomotto, if any, would have to be based on the particulars of how Morrison or Stroz used or disclosed it.

### XXVI.

When Anthony Levandowski testified at our trial, he invoked his right not to incriminate himself under the Fifth Amendment in our Bill of Rights.  This was his right to do so. Nevertheless, you may but are not required to find that the questions called for answers that would have incriminated him and that these answers would have been adverse to his position. That, however, would not necessarily be the same as being adverse to the position of Uber or Ottomotto or Waymo.  Before finding that the answer would have also been adverse to another party in the case, you should consider all of the other evidence and circumstances.  You are not required to find that any answer by him would have been adverse to him or to any party herein.

### XXVII.

Waymo is suing Anthony Levandowski in a separate proceeding, not in this case. This trial is against only Uber and Ottomotto.  That Levandowski himself might be liable to Waymo is not, by itself, enough to make Uber or Ottomotto liable to Waymo in this trial. To hold them liable, or either of them, for misappropriation of any Alleged Trade Secret, Waymo must prove the elements of proof set forth in these instructions.


**IT IS SO ORDERED.**


Dated:  January 3, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

11