# MORRISON | FOERSTER

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

January 4, 2018

Writer's Direct Contact
+1 (415) 268.7020
AGonzalez@mofo.com

The Honorable Jacqueline Scott Corley
USDC, Northern District of California
San Francisco Courthouse
Courtroom F - 15th Floor
450 Golden Gate Avenue
San Francisco, CA  94102

Re:     *Waymo LLC v. Uber Technologies, Inc. et al.,* Case No. 3:17-cv-00939-WHA

Dear Magistrate Judge Corley:

Defendants Uber Technologies, Inc. and Ottomotto LLC ("Uber") respond to Waymo's
motion to compel Ric Jacobs-related discovery (Dkt. 2442) ("MTC").  It is time for
Waymo's fishing expedition to finally end.  Judge Alsup ordered "reasonable" discovery on
limited topics.  Waymo took 17 depositions last month and served 42 document requests and
one interrogatory.  Uber provided extensive and expedited discovery on issues relevant to
this case, and on many issues completely irrelevant to this case.  Below, Uber briefly
explains why Waymo has failed to meet its burden of showing good cause for any further
discovery.

## 1.     Uber Provided a Full Response to Interrogatory No. 1

Waymo claims that it must know "when key individuals became aware of these [Jacobs]
documents."  But Uber has already specifically identified each person who received the
Jacobs resignation email or the Jacobs letter and when they received it.  (*See* Dkt. 2441-5
(MTC Ex. B).)  Waymo also knows who did *not* receive the letter, such as the in-house
lawyers running this litigation and the outside litigation team.  (11/29/17 Hrg. Tr. at 17:15-
21, 18:11-19, 21:16-18.)  The individuals who received either document include high ranking
Uber employees, such as Uber's former General Counsel, and Uber Board members.  In
addition, there has also been extensive deposition testimony about who "knew about" the
documents, including testimony from Uber's former CEO, who admits that he received the
email and heard about the letter.  (*See, e.g.,* Kalanick Dep. (Vol. 3) at 522:8-21, 526:16-
527:20; Padilla Dep. (Vol. 2) at 153:25-155:4; 165:1-21; 172:1-14; Majalya Dep. at 135:20-
24, 150:2-6, 174:14-18, 186:15-17; Spiegler Dep. at 136:5-137:9, 140:8-11 (provided as Exs.
A to D, respectively, to Chang Decl., filed herewith).)  Asking Uber to go fish to find any
person at the company who might have been "aware of" the Jacobs letter or email through

la-1369343

MORRISON | FOERSTER

The Honorable Jacqueline Scott Corley
January 4, 2018
Page Two

hearsay but did not receive a copy is not proportional to the needs of the case, particularly considering the irrelevance of this discovery to the issues to be tried in this case

Moreover, Waymo fails to grapple with the irremediable vagueness of its interrogatory. The Jacobs letter is 37 pages long and contains scores of allegations. What does it mean to be "aware" of the letter if you did not receive it? "Aware" that Jacobs's counsel sent Uber some kind of a demand letter? Generally "aware" that the letter contained allegations of wrongdoing? "Aware" of certain specific allegations in the letter and, if so, which ones? "Aware" of every allegation in the letter? As Waymo's letter brief reveals, Waymo still cannot articulate an answer.[1] Uber responded reasonably to an ill-defined interrogatory, providing Waymo information about the 16 recipients of the Jacobs documents. (*See* Dkt. 2441-5.) Uber also provided communications logs identifying Uber's various outside counsel who received the Jacobs documents. (Chang Decl. Ex. F.) No more is warranted.

2.      **Waymo's Extraordinary Request for an *In Camera* Review of Nearly 1,000 Documents is Groundless**

Waymo fails to demonstrate any basis for *in camera* review of nearly 1,000 documents over which Uber has asserted privilege. Its request is the ultimate fishing expedition.

On December 13, 2017, the Court held that it was unreasonably burdensome and not proportionate to require Uber to prepare an individualized privilege log for 4,000 documents. (12/13/17 Hrg. Tr. at 29:23-30:22.) It told Waymo that "[i]f there's a particular narrow area" for which Waymo believes it needs a log, then the parties should try to reach agreement. (*Id.*) As discussed with the Court on December 13 and at Waymo's request, Uber prepared a log that identified each in-house counsel who was involved in any documents withheld and the volume of documents for each counsel. On December 21, Uber also produced a log for 755 privileged communications involving Angela Padilla, Uber's head of litigation, from April 14, 2017 through November 22, 2017, concerning the Jacobs documents, the investigation into Jacobs's accusations, and the Jacobs mediation and settlement. Uber also offered to prepare a log for all redacted or withheld documents concerning those issues during that time period – a total of around 2,000 documents. (*See* Chang Decl. Ex. E.) Waymo did not respond to Uber's proposal. Instead, putting the cart before the horse, Waymo demanded *in camera* review of nearly 1,000 documents, even though it has not challenged even a single entry on the Padilla privilege log.

Contrary to Waymo's suggestion, *in camera* review is not available simply because a party requests it. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1072 (9th Cir. 1992) (*in*

---

[1] Contrary to Waymo's suggestion (MTC at 1-2), this was the focus of the parties' meet and confer discussions. (*See* Chang Decl. Ex. E.)

MORRISON | FOERSTER

The Honorable Jacqueline Scott Corley
January 4, 2018
Page Three

*camera* review is not "automatic"). The party seeking such review must satisfy a two-prong test. First, it must "show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *Id.* at 1075; *see also United States v. Zolin*, 491 U.S. 554, 564-65 (1989). "[M]ere allegations or suspicion are insufficient." *In re Ditropan XL Antitrust Litig.*, No. MDL 06-1761 JSW (EDL), 2007 WL 3256208, at *1 (N.D. Cal. Nov. 5, 2007). Second, and only if the first prong is satisfied, the court must decide whether *in camera* review is warranted based on "the facts and circumstances in a particular case, including the volume of materials to be reviewed, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced with other available evidence will establish that the [claimed privilege] applies." *Id.* Waymo fails to meet its burden.[2]

Context is important here. On an extraordinarily compressed schedule, Uber responded to 42 supplemental RFPs from Waymo, produced nearly 7,000 documents, and identified another 4,000+ responsive but privileged documents (compared to the 13 documents Waymo produced and the 10 it logged in response to Uber's document requests). In an attempt to withhold only the portion of a document that is privileged, Uber produced many documents involving Ms. Padilla's communications with redactions. Waymo has seized upon an imperfection in the redaction of one of these sensitive documents: a single sentence redacted in one email chain but not in another. (*Compare* MTC Ex. D (Dkt. 2441-7) *with* MTC Ex. E (Dkt. 2441-8).) Reasonable minds could differ as to the extent to which legal advice is implicated in that sentence between Uber's former General Counsel and outside counsel made in connection with Uber's deliberations of whether and when to self-disclose to the government information in the Jacobs documents. Waymo uses this one sentence as a basis for concluding that "Uber has failed to take a justifiable, consistent approach with respect to its privilege claims" and asserts that it "raises serious questions regarding the appropriateness of Uber's redactions to other documents." (MTC at 3.) Nonsense. There is nothing in the redaction of that one sentence that remotely warrants *in camera* review of an indiscriminate group of nearly 1,000 documents. Indeed, Uber has identified at least one inconsistent redaction within documents *Waymo* has produced. (*Compare* Chang Dec. Ex. G (WAYMO-UBER-00057551) *with* Ex. H (WAYMO-UBER-00000009522).)

---

[2] The Court should reject Waymo's contention that it is somehow relieved of its burden because Uber purportedly "submitted no privilege log." (MTC at 3 n.3 (arguing that Waymo "carries no burden").) None of the cases Waymo cites support that proposition. At best, the cases hold that the existence of a valid privilege log is a logical and typical prior step. *See, e.g.*, *Fourth Age Ltd. v. Warner Bros. Digital Distrib., Inc.*, CV 12-09912 AB (SHx), 2014 WL 12584447, at *3 (C.D. Cal. Oct. 9, 2014) (cited in MTC at 3 n.3). In any event, as noted above, Uber produced the log Waymo requested that identified how many documents were withheld for each in-house counsel, an individual log of over 700 of Ms. Padilla's withheld communications, and offered to prepare an additional substantial log.

MORRISON | FOERSTER

The Honorable Jacqueline Scott Corley
January 4, 2018
Page Four

Waymo also makes much of the 87 documents Uber produced on December 21 and jumps to the conclusion that Uber has an "improper withholding rate" of approximately 10%.  (*Id*. at 2.)  Baseless extrapolation is insufficient to meet Waymo's burden.  As Uber explained to Waymo, those documents were provisionally deemed privileged and subsequently voluntarily de-designated or determined to warrant production with redactions.  (*See* Chang Decl. Ex. I.)  They were comprised largely of counsel's discussions about logistics (*e.g.,* times for phone calls, selection of mediators, paperwork to commence mediation) or forwarding draft agreements from Mr. Jacobs's counsel.  Importantly, Waymo does not – because it cannot – contend that the documents were highly relevant to any claims or defenses in this litigation.  Waymo referred to only one of those documents in Ms. Padilla's deposition, and that document was a variation of an email chain that was produced to Waymo at least twice before.  ((*Compare* Chang Decl. Ex. O (UBER00342156) with *id.* Exs. J (UBER00341361) & K (UBER00341820).)[3]  This too falls far short of supporting Waymo's requested relief.

Waymo's only other purported basis for requesting an *in camera* review is that Mr. Jacobs alleged "that Uber has a pattern and practice of misusing the privilege to conceal evidence from civil litigations."  (MTC at 3 n.3.)  But let's be specific.  Mr. Jacobs' lawyer stated that a former Uber in-house attorney "developed training on how to use attorney-client privilege to further conceal activities" and that Mr. Clark advised Jacobs "and others" to address emails on sensitive "intelligence collection" to him to cloak them in privilege.  (Jacobs Ltr. (Dkt. 2401-2) at 8.)  Mr. Clark vehemently disputed those allegations in his deposition.  (Chang Decl. Ex. L (Clark Tr.) at 158:6-10, 198:2-199:4, 202:2-22, 222:21-223:7)  But it is beside the point.  There is no evidence that Mr. Clark ever provided training to Uber's autonomous group and Mr. Clark did not even appear on any privilege log until *after* Judge Alsup raised the matter of the Jacobs letter.  Thus, there is not a shred of evidence that Uber is improperly using Mr. Clark to "hide" relevant documents under the guise of privilege.

Moreover, Uber's outside litigation counsel, not the personnel who were the subjects of Mr. Jacobs's allegations, reviewed documents for production in this action.  As Waymo knows full well, Uber's outside litigation counsel individually reviewed documents for production and made careful determinations about privilege, rather than relying merely on

---

[3] Crucially, there is no apparent connection between this purported "error rate" and the relief Waymo now seeks.  Waymo does not ask the Court to order a review of communications similar in substance (based on substance, sender, recipient, etc.) to those Uber de-designated and produced.  Instead, most of the 900 documents for which it requests review are to be "randomly selected."  (*See* MTC at 4.)  This disconnect shows that Waymo's motion is based on speculative concerns, not facts.

MORRISON | FOERSTER

The Honorable Jacqueline Scott Corley
January 4, 2018
Page Five

whether a lawyer was involved in the communication or whether the communication is labeled "A/C Privileged."  During supplemental discovery alone, Uber produced more than 1,000 documents for which an in-house lawyer was an author, sender, or recipient, including communications with outside counsel.  Mr. Jacobs's allegations do not warrant *in camera* review to evaluate privilege determinations by outside counsel.[4]

At bottom, Waymo's request for an *in camera* review of nearly 1,000 documents is based on conjecture.[5]  Waymo makes no attempt to argue that Uber is withholding, under the guise of privilege, documents critical to the claims in this case.  Nor could it.  As this Court correctly noted, this round of discovery concerns a "collateral" issue.  (12/13/17 Hrg. Tr. at 27:9-11.)  Trial is just weeks away.  Given Waymo's paltry showing, ordering the review of nearly 1,000 documents—a volume that far exceeds anything ordered in the cases Waymo cites— is neither reasonable nor proportional to the needs of this case.  That is particularly true where Uber offered to prepare a substantial log of communications regarding the Jacobs documents, Jacobs investigation, and Jacobs mediation/settlement.  The Court should deny Waymo's request in its entirety.

**3.      Uber Has Completed Its Production of Responsive Documents Concerning "Vendor 1"**

There is nothing to compel as to "Vendor 1."  Uber has already confirmed to Waymo that it has not located any documents that indicate "Vendor 1" was anything but a hypothetical entity.  (MTC Ex. L (Dkt. 2441-13) at 2.)  Waymo had the opportunity to question both Ed Russo, the drafter of the presentation in question, and Nicholas Gicinto, the head of the Security Services Group.  Both repeatedly confirmed that the strategy outlined in the presentation was not implemented (Chang Decl. Exs. M (Gicinto Tr.) at 145:12-19, 151:21-

---

[4] Uber had only two weeks from the day it received Waymo's RFPs to identify custodians and collect and review their data for production, including data for at least eight in-house counsel personnel.  Over the Christmas holiday, Uber's e-discovery specialists determined that Uber's document review team inadvertently was provided an incomplete set of results for one of the searches run on in-house counsel emails.  Uber's document review team reviewed those new documents last week and made a small production of 24 documents to Waymo on December 30.  That document production, and the additional privileged documents from that new review set, were not being "withheld from production" in an improper manner as suggested by Waymo.  (*See* MTC at 3 n.2.)

[5] Waymo implies in its letter that the Special Master stated that an *in camera* review is appropriate.  (MTC at 3 (". . . one that the Special Master has agreed to.").)  This implication is unfounded and misleading.  The Special Master agreed only to be available for an *in camera* review, if necessary, but offered no opinion on whether such a review was proper.

**MORRISON | FOERSTER**

The Honorable Jacqueline Scott Corley
January 4, 2018
Page Six

25, 152:14-20, 165:19-16 & N (Russo Tr.) at 295:8-296:4, 313:13-314:8, 319:19-23), and
that "Vendor 1" was a hypothetical entity.  (MTC Ex. H (Dkt. 2441-11) at 320:22-321:1;
Chang Decl. Ex. M at 172:19-173:24).  Despite this testimony, Waymo argues it is entitled to
documents that discuss the capabilities of the hypothetical vendor and Uber's plan for using
the hypothetical vendor with regard to Waymo.  (Dkt. 2414-4 at 5)  Unsurprisingly, given
that the strategy discussed in the draft presentation was never implemented and a "Vendor 1"
was never selected, Uber has not located any other documents discussing what an unnamed,
hypothetical vendor could do to gather intelligence involving Waymo, and conveyed that to
Waymo before Waymo filed its motion.  (MTC Ex. L at 2.)  Waymo chose to inject
ambiguity into Uber's response, demand further clarification after hours on a holiday
weekend, and filed its motion when it did not receive a further response.  (MTC at 5-6.)
Uber did not locate any more responsive documents.  Period.  There are no further
documents for Uber to produce and the Court should deny Waymo's motion.

**4.     There Are No Grounds for Waymo's Request Regarding Chat Application
         Default Settings**

This is a trial issue, and not a discovery issue.  There is no Court order or discovery request
that requires Uber to provide what Waymo seeks.  Waymo informally requested certain
information from Uber regarding the default settings on certain chat applications used at
Uber, and Uber agreed to (and did) provide it.  Now, Waymo wants more.  Waymo wants a
"formal pleading" (MTC at 6) because it apparently believes that will make the information
admissible at trial.  Uber has made clear multiple times that even a "formal pleading" will
not make this evidence admissible at trial, and that Uber is open to conferring about trial
stipulations, including this one.  Waymo has also suggested that Uber should provide a
"formal pleading" because Waymo did, but Waymo did so in response to a direct order from
Judge Alsup.  (11/29/2017 Hrg. Tr. 165:16-18.)  Uber has provided numerous detailed
pleadings in response to orders from Judge Alsup without any reciprocity from Waymo.

There are a number of other undisputed facts that Uber would like to reach stipulation on and
they should be discussed as part of the Joint Pretrial process, not in the guise of a "discovery
motion."

Respectfully submitted,

Arturo J. González