1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   ARTURO J. GONZÁLEZ (CA SBN 121490)
    AGonzález@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Tel: 415.268.7000 / Fax: 415.268.7522
5

6   KAREN L. DUNN (*Pro Hac Vice*)
    kdunn@bsfllp.com
7   HAMISH P.M. HUME (*Pro Hac Vice*)
    hhume@bsfllp.com
7   BOIES SCHILLER FLEXNER LLP
8   1401 New York Avenue, N.W.
    Washington DC  20005
9   Tel: 202.237.2727 / Fax: 202.237.6131

10  WILLIAM CARMODY (*Pro Hac Vice*)
    bcarmody@susmangodfrey.com
11  SHAWN RABIN (*Pro Hac Vice*)
    srabin@SusmanGodfrey.com
12  SUSMAN GODFREY LLP
    1301 Avenue of the Americas, 32nd Floor
13  New York, NY  10019-6023
    Tel: 212.336.8330 / Fax: 212.336.8340
14

15  Attorneys for Defendants
    UBER TECHNOLOGIES, INC.
16  and OTTOMOTTO LLC

17              UNITED STATES DISTRICT COURT

18             NORTHERN DISTRICT OF CALIFORNIA

19               SAN FRANCISCO DIVISION

20

21  WAYMO LLC,                          Case No.      3:17-cv-00939-WHA

22              Plaintiff,              **DECLARATION OF ESTHER KIM
                                        CHANG IN SUPPORT OF
23      v.                              DEFENDANTS UBER
                                        TECHNOLOGIES, INC. AND
24  UBER TECHNOLOGIES, INC.,            OTTOMOTTO LLC'S OPPPOSITION
    OTTOMOTTO LLC; OTTO TRUCKING        TO WAYMO LLC'S MOTION TO
25  LLC,                                COMPEL**

26              Defendants.            Trial Date:  February 5, 2018

27

28

I, Esther Kim Chang, declare as follows:

1.    I am an attorney with the law firm of Morrison & Foerster LLP.  I am a member in good standing of the Bar of the State of California.  I make this declaration based on personal knowledge and, if called as a witness, I could and would testify competently to the matters set forth herein.  I make this declaration in support of Defendants Uber Technologies, Inc. and Ottomotto LLC's ("Uber") Opposition to Defendant Waymo LLC's Motion to Compel.

2.    Attached hereto as **Exhibit A** are relevant pages from the deposition of Travis Kalanick, taken on December 14, 2017.

3.    Attached hereto as **Exhibit B** are relevant pages from the deposition of Angela Padilla, taken on December 22, 2017.

4.    Attached hereto as **Exhibit C** are relevant pages from the deposition of Sidney Majalya, taken on December 20, 2017.

5.    Attached hereto as **Exhibit D** are relevant pages from the deposition of Joe Spiegler, taken on December 22, 2017.

6.    Attached hereto as **Exhibit E** is a true and correct copy of an email from Kaitlyn Murphy to John Cooper and counsel for Waymo, dated December 29, 2017.

7.    Attached hereto as **Exhibit F** is a true and correct copy of Uber's Privilege Log Re Communications with Trial Team Re Jacobs Documents pre November 22, 2017, dated December 10, 2017.

8.    Attached hereto as **Exhibit G** is a true and correct copy of a document produced in this litigation bearing Bates numbers WAYMO-UBER00057551— WAYMO-UBER00057552.

9.    Attached hereto as **Exhibit H** is a true and correct copy of a document produced in this litigation bearing Bates numbers WAYMO-UBER00009522— WAYMO-UBER00009524.

10.    Attached hereto as **Exhibit I** is a true and correct copy of an email from Sylvia Rivera to Andrea Roberts, dated December 22, 2017.

11.    Attached hereto as **Exhibit J** is a true and correct copy of a document produced in this litigation bearing Bates numbers UBER00341361—UBER00341362.

12.     Attached hereto as **Exhibit K** is a true and correct copy of a document produced in this litigation bearing Bates numbers UBER00341820—UBER00341823.

13.     Attached hereto as **Exhibit L** are relevant pages from the deposition of Craig Clark, taken on December 22, 2017.

14.     Attached hereto as **Exhibit M** are relevant pages from the deposition of Nicholas Gicinto, taken on December 21, 2017.

15.     Attached hereto as **Exhibit N** are relevant pages from the deposition of Ed Russo, taken on December 20, 2017.

16.     Attached hereto as **Exhibit O** is a true and correct copy of a document produced in this litigation bearing Bates numbers UBER00342156— UBER00342159.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 4th day of January, 2018 at San Francisco, California.

_____/s/    Esther Kim Chang_____
ESTHER KIM CHANG

1

**ATTESTATION OF E-FILED SIGNATURE**

2

I, Arturo J. Gonzalez, am the ECF User whose ID and password are being used to file this

3

Declaration.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Esther Kim Chang has

4

concurred in this filing.

5

Dated:  January 4, 2018                              _/s/ Arturo J. González_

6
                                                                    ARTURO J. GONZÁLEZ

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3               SAN FRANCISCO DIVISION

4

5    WAYMO LLC,

6         Plaintiff,

7
                vs.            Case No. 17-cv-00939-WHA

8

9    UBER TECHNOLOGIES, INC.;

10   OTTOMOTTO, LLC; OTTO

     TRUCKING LLC,

11        Defendants.

12   _____

13

14       HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

15         VIDEO DEPOSITION OF TRAVIS KALANICK

16            San Francisco, California

17           Thursday, December 14, 2017

18                  Volume III

19

20

21   REPORTED BY:

22   REBECCA L. ROMANO, RPR, CSR No. 12546

23   JOB NO. 2771242

24

25   PAGES 504 - 668

                                      Page 504

1    generally, was -- you know, we had a -- you know, a          12:45:18

2    former AUSA, a former prosecutor in Joe Sullivan

3    sort of overseeing -- you know, there are a lot of

4    groups in his -- you know, in his domain, but that

5    was one of them, and felt pretty confident that,          12:45:31

6    you know, he sort of knew how to manage that kind

7    of -- that kind of effort.

8         Q.   Okay.  At some point in time, you did --

9    became aware of allegations that Ric Jacobs, now

10   former Uber employee, made; is that -- is that          12:45:53

11   right?

12        A.   Yeah.  There was an email that was --

13   that, I think, he sent when he resigned, and I

14   would -- I -- I received that email.

15        Q.   Okay.  What -- how did you react to that          12:46:02

16   email when you saw it?

17        A.   Well, look, I mean, it was a -- it was a

18   serious email.  So I took it seriously and

19   forwarded it to Joe Sullivan, who runs security.  I

20   was obviously concerned; like, hey, is any of this          12:46:21

21   true?

22        Q.   Is that something that you asked him, or

23   it's just you're -- that's just the reaction, which

24   is what I --

25        A.   Well, that's certainly --          12:46:31

                                                    Page 522

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1          Q.   (By Mr. Perlson)  Okay.  But counsel for    12:49:42

 2   Uber was present at the interview?

 3          A.   I don't remember.

 4          Q.   Okay.

 5          A.   I don't remember anybody -- sorry.  I        12:49:48

 6   don't remember any Uber internal counsel being

 7   there.  There was Uber external counsel.

 8          Q.   Right.

 9          A.   Yeah.

10          Q.   Wilmer was the firm that Uber had            12:49:58

11   retained, right?

12          A.   Correct.  Yeah.

13          Q.   Af- -- subsequent to your email -- I'm

14   sorry, not your email.  Sorry.

15          A.   Yeah.                                         12:50:11

16          Q.   Subsequent to the email that Mr. Jacobs

17   sent you in April, there was a -- he sent a demand

18   letter to -- to Uber.  Do you -- did -- in May.

19               Did you see -- receive that?

20          A.   I did not.                                   12:50:19

21          Q.   Okay.  And have you ever seen that?

22          A.   No.

23          Q.   Have you ever discussed the -- the

24   contents of -- of that letter?

25          A.   At a very high level in prep for this        12:50:28
```

Page 526

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1    deposition.                                    12:50:31

 2         Q.   Okay.  Had -- prior to your preparation

 3    for this deposition, had anyone ever told you what

 4    the contents of the allegation of the -- the May

 5    demand letter were?                             12:50:46

 6         A.   No.

 7         Q.   Did you know that it existed before your

 8    prep for your deposition?

 9         A.   At -- at --

10              MS. DUNN:  Objection to form.         12:50:56

11              THE DEPONENT:  -- at some point I knew

12    that some kind of letter existed, but I didn't know

13    what it was.

14         Q.   (By Mr. Perlson)  Did you ever ask to see

15    it?                                             12:51:04

16         A.   I don't remember if I asked to see it.  I

17    know I never got to saw -- see it, and it may have

18    been because there was an independent

19    investigation.  I -- I don't remember specifically

20    asking for it.                                  12:51:16

21         Q.   Did you ever ask for the results of the

22    investigation into the allegations made by

23    Mr. Jacobs?

24         A.   Yes.

25         Q.   When was that?                        12:51:30
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1       I, Rebecca L. Romano, a Certified Shorthand
2   Reporter of the State of California, do hereby
3   certify:

    That the foregoing proceedings were taken
4   before me at the time and place herein set forth;
5   that any witnesses in the foregoing proceedings,
6   prior to testifying, were administered an oath;
7   that a record of the proceedings was made by me
    using machine shorthand which was thereafter
8   transcribed under my direction; that the foregoing
9   transcript is true record of the testimony given.

10      Further, that if the foregoing pertains to the
11  original transcript of a deposition in a Federal
12  Case, before completion of the proceedings, review
13  of the transcript [ ] was [x] was not requested.

14      I further certify I am neither financially
    interested in the action nor a relative or employee
15  of any attorney or any party to this action.

16      IN WITNESS WHEREOF, I have this date
17  subscribed my name.

18

19  Dated:  December 15, 2017

20

21

22

23

24  _____
    Rebecca L. Romano, RPR,
25      CSR. No 12546

    Page 668

# Exhibit B

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# Exhibit C

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                SAN FRANCISCO DIVISION
 4
 5   WAYMO LLC,                      )
                                     )
 6              Plaintiff,           )
                                     ) Case No.
 7              vs.                  ) 3:17-cv-000939-WHA
                                     )
 8   UBER TECHNOLOGIES, INC.;        )
     OTTOMOTTO LLC; OTTO TRUCKING,   )
 9   INC.,                           )
                                     )
10              Defendants.          )
     _____ )
11
12    *** HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY ***
13
14      VIDEOTAPED DEPOSITION OF SIDNEY MAJALYA
15             San Francisco, California
16            Wednesday, December 20, 2017
17                   Volume I
18
19
20
21   Reported by:
22   CARLA SOARES
     CSR No. 5908
23   Job No. 2779413
24
25   Pages 1 - 267
```

                                              Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1   don't -- but Salle may have already been on it.  So      13:47:27

 2   I don't exactly remember who she forwarded the

 3   e-mail to.

 4       Q   Do you know if Mr. Kalanick forwarded

 5   Mr. Jacobs' e-mail to anyone?                             13:47:40

 6       A   I don't.

 7       Q   Do you know if Ms. Hazelbaker forwarded it

 8   to anybody?

 9       A   I didn't even recall that she received it.

10       Q   If you look at the bottom of Exhibit 9659,        13:47:49

11   you'll see that she's on the e-mail from Mr. Jacobs,

12   right?

13       A   Yes.

14       Q   Do you see that Ms. Hornsey is also on the

15   e-mail?                                                   13:47:57

16       A   I do.

17       Q   Do you know if Ms. Hornsey forwarded

18   Mr. Jacobs' resignation e-mail to anybody?

19       A   I do not.

20       Q   When you received Mr. Jacobs' resignation        13:48:07

21   e-mail, who did you discuss it with, other than

22   Mr. Spiegler and Ms. Yoo?

23       A   I think I already testified that I

24   discussed it at some point with Ms. Padilla.

25       Q   Anybody else?                                     13:48:22
```

Page 135

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1        A   I do.                                    14:07:01

2        Q   So he was forwarding Mr. Jacobs' lawyer's

3   demand letter to those people on the e-mail chain,

4   right?

5            MS. DUNN:  Objection.  Foundation.       14:07:12

6            THE WITNESS:  Apparently.  So it appears.

7   BY MR. EISEMAN:

8        Q   And who are those people that he forwarded

9   the e-mail to?

10       A   I have no idea, other than Stacey         14:07:21

11  Sprenkel, who I said earlier was working with us on

12  our assessment.  I don't know any of the other

13  individuals.

14       Q   Well, you know Arturo Gonzalez, don't you?

15       A   I know who he is.                         14:07:34

16       Q   Right.

17       A   But I -- I know that he represents Uber in

18  the Waymo case.

19       Q   Do you have any information as to why

20  Mr. Duross sent the April 19th Jacobs demand letter  14:07:43

21  to this group of people?

22           MS. DUNN:  Objection.  Form.

23           THE WITNESS:  I do not.

24  BY MR. EISEMAN:

25       Q   Were these some of the people who were     14:07:53
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1          A   I don't -- that's an excellent question.      14:51:13

2    I don't exactly know.

3          Q   Did you interact with O'Melveny & Myers in

4    connection with any of Mr. Jacobs' allegations?

5          A   I've interacted with O'Melveny & Myers,       14:51:29

6    but I would not say it was specifically related to

7    the allegations in the Jacobs letter.

8          Q   What about Mr. Jacobs' allegations

9    generally, not just limited to the letter?  Did you

10   interact with O'Melveny & Myers?                         14:51:43

11            MS. DUNN:  Form.

12            THE WITNESS:  Not with respect to Jacobs.

13   BY MR. EISEMAN:

14         Q   Did you interact with Shearman & Sterling

15   with regard to Mr. Jacobs' allegations?                  14:51:52

16         A   We may have had one meeting, one or two

17   conversations with Patrick Robbins about the Jacobs

18   matter.

19         Q   When you say "we," do you mean you and Joe

20   Spiegler?                                                14:52:14

21         A   Joe Spiegler and myself.  Yeah.

22         Q   Do you know when that meeting took place?

23         A   I don't.  Likely it would have been in the

24   June time frame at some point, but I don't have a

25   specific recollection.                                   14:52:29
```

Page 174

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | those are the people that I recall having any | 15:06:08 |
| 2 | knowledge or interaction about the Jacobs letter and | |
| 3 | allegations. | |
| 4 |     Q   Do you know if anybody besides Ms. Padilla | |
| 5 | and the litigation group at Uber knew about the | 15:06:18 |
| 6 | letter? | |
| 7 |     A   Oh, let me -- I'm sorry.  Let me add one | |
| 8 | more person to my prior answer. | |
| 9 |     I believe Candace Kelly at some time also | |
| 10 | knew. | 15:06:31 |
| 11 |     Q   Right.  Okay.  Anybody else? | |
| 12 |     A   No.  I'm sorry.  If you could repeat your | |
| 13 | last question. | |
| 14 |     Q   Yeah. | |
| 15 |     Do you know if anybody within the Uber | 15:06:40 |
| 16 | litigation group knew about the Jacobs issues? | |
| 17 |     A   Other than Angela, I don't think so. | |
| 18 |     And again, when you say "the litigation | |
| 19 | group," the litigation and employment group are both | |
| 20 | under Angela's auspices, but I'm separating them for | 15:07:04 |
| 21 | purposes of this response. | |
| 22 |     MR. EISEMAN:  All right.  Let's mark as | |
| 23 | Exhibit 9664 the next document. | |
| 24 |     (Exhibit 9664 was marked for | |
| 25 |     identification and is attached hereto.) | 15:07:21 |

Page 186

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1          I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby

3   certify:

          That the foregoing proceedings were taken

4   before me at the time and place herein set forth;

5   that any witnesses in the foregoing proceedings,

6   prior to testifying, were administered an oath; that

7   a record of the proceedings was made by me using

    machine shorthand which was thereafter transcribed

8   under my direction; that the foregoing transcript is

9   a true record of the testimony given.

10         Further, that if the foregoing pertains to

11   the original transcript of a deposition in a Federal

    Case, before completion of the proceedings, review

12   of the transcript [ ] was [X] was not requested.

13         I further certify I am neither financially

14   interested in the action nor a relative or employee

15   of any attorney or any party to this action.

16         IN WITNESS WHEREOF, I have this date

    subscribed my name.

17

18   Dated: December 21, 2017

19

20

21

22

23             *Carla Soares*

24         CARLA SOARES

25         CSR No. 5908

Page 267

# Exhibit D

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                SAN FRANCISCO DIVISION

4

5    WAYMO LLC,

6          Plaintiff,

7              vs.            Case No.

8    UBER TECHNOLOGIES,INC.;   17-cv-00939-WHA

9    OTTOMOTTO, LLC; OTTO

10   TRUCKING LLC,

11         Defendants.

     _____

12

13      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

14

15       VIDEOTAPED DEPOSITION OF JOE SPIEGLER

16            San Francisco, California

17            Friday, December 22, 2017

18                 Volume I

19

20

21   REPORTED BY:

22   REBECCA L. ROMANO, RPR, CSR No. 12546

23   JOB NO. 2771356

24

25   PAGES 1 - 307

                                      Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    conversation with Kalanick, so I just want to be        10:51:55

 2    sure what -- where we are.

 3              MR. EISEMAN:  Right.  Let me try to ask a

 4    different question then.

 5        Q.   (By Mr. Eiseman)  Prior to June 22nd, did       10:52:03

 6    you have any discussions with anybody who was the

 7    subject of Mr. Jacobs' allegations in his

 8    resignation email or his lawyer's later letter?

 9        A.   Yes.

10        Q.   Who did you speak with?                         10:52:16

11        A.   I spoke with Joe Sullivan.

12        Q.   Anybody else?

13        A.   I don't recall other individuals.  I

14    believe Mat Henley, I believe Jeff Jones, in the

15    context of a meeting with the security leadership       10:52:36

16    team to give them -- at the direction of my boss,

17    Salle Yoo -- an update and report to the extent

18    I -- not report, a -- a status on the -- the

19    process in consultation with lawyers from

20    WilmerHale.  This was at Joe Sullivan's request and     10:53:02

21    at Salle's direction.

22              I also recall a videoconference, I -- I

23    believe perhaps all the parties were in person, but

24    with -- with Salle, with Joe, perhaps Angela,

25    perhaps Sidney, which preceded the meeting that I       10:53:26
```

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | just described.  It's possible our outside counsel | 10:53:31 |
| 2 | was on that call as well, from WilmerHale, so | |
| 3 | that's... | |
| 4 | Q.   Other than the one meeting that you had | |
| 5 | with Mr. Sullivan, Mr. Henley, Mr. Jones, and | 10:53:43 |
| 6 | perhaps others from the security group, did you | |
| 7 | have any other discussions with members of the | |
| 8 | security group regarding Mr. Jacobs' allegations? | |
| 9 | A.   I don't believe so. | |
| 10 | Q.   Did -- in that meeting, did you ask any | 10:54:01 |
| 11 | members of the security group to provide you with | |
| 12 | documents relating to Mr. Jacobs' allegations? | |
| 13 | A.   No. | |
| 14 | Q.   And by the time you had that meeting to | |
| 15 | talk about process, you had retained WilmerHale. | 10:54:14 |
| 16 | A.   Yes. | |
| 17 | Q.   But you don't think the WilmerHale | |
| 18 | lawyers were at the meeting? | |
| 19 | A.   So at the meeting that I described | |
| 20 | with -- with Joe Sullivan, with Mat Henley, with | 10:54:24 |
| 21 | Jeff Jones -- and there were probably three or four | |
| 22 | other people, I just can't recall their names, | |
| 23 | maybe Rod -- Ross Worden was on the calls -- or on | |
| 24 | the -- it was -- excuse me -- some people were in | |
| 25 | person and others were by Zoom. | 10:54:37 |

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | instruct you not to answer. | 11:01:36 |
| 2 | THE DEPONENT:  Okay.  Okay.  Okay. | |
| 3 | Q.  (By Mr. Eiseman)  I don't want you to | |
| 4 | tell me anything that might have been discussed, | |
| 5 | but did you, yes or no, discuss the substance of | 11:01:51 |
| 6 | Mr. Jacobs claims at that meeting? | |
| 7 | A.  No. | |
| 8 | Q.  Did you ever discuss the substance of | |
| 9 | Mr. Jacobs claims with anybody from the security | |
| 10 | group? | 11:02:03 |
| 11 | A.  No. | |
| 12 | Q.  You left that to WilmerHale? | |
| 13 | MR. JACOBS:  Objection.  Form. | |
| 14 | THE DEPONENT:  I -- when you mean | |
| 15 | "discuss," do you mean interview them, or do you | 11:02:16 |
| 16 | mean update them? | |
| 17 | Q.  (By Mr. Eiseman)  No, I -- | |
| 18 | A.  Let -- let me just try and clarify. | |
| 19 | I -- I don't know what Wilmer's | |
| 20 | conversations with the security team were, | 11:02:27 |
| 21 | period -- | |
| 22 | Q.  Right. | |
| 23 | A.  -- I don't believe that WilmerHale would | |
| 24 | discuss the allegations with the implicated | |
| 25 | parties, if that's what you were suggesting with | 11:02:35 |

Page 140

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    I, Rebecca L. Romano, a Certified Shorthand

2  Reporter of the State of California, do hereby

3  certify:

4    That the foregoing proceedings were taken

5  before me at the time and place herein set forth;

6  that any witnesses in the foregoing proceedings,

7  prior to testifying, were administered an oath;

8  that a record of the proceedings was made by me

9  using machine shorthand which was thereafter

10  transcribed under my direction; that the foregoing

11  transcript is true record of the testimony given.

12    Further, that if the foregoing pertains to the

13  original transcript of a deposition in a Federal

14  Case, before completion of the proceedings, review

15  of the transcript [X] was [ ] was not requested.

16    I further certify I am neither financially

17  interested in the action nor a relative or employee

18  of any attorney or any party to this action.

19    IN WITNESS WHEREOF, I have this date

20  subscribed my name.

21    Dated:  December 26, 2017

22

23

24    Rebecca L. Romano, RPR,

25    CSR. No 12546

# Exhibit E

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# Exhibit F

12/10/2017

Waymo LLC v. Uber Technologies, Inc.
Case No. 3:14cv-00939- WHA

**Uber's Privilege Log Re Communications with Trial Team Re Jacobs Documents pre November 22, 2017**

| Priv Log No. | Document Date | Sent By / Author | Recipients | CC | BCC | Privilege Assertion | Subject Matter of Communication | Steps Taken to Ensure Confidentiality | Received by Unauthorized Persons? | Custodian (Location) |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 4/26/2017 | Duross, Charles <cduross@mofo.com> | Stern, William L. <WStern@mofo.com>; Cheung, Tiffany <TCheung@mofo.com>; Tate, Eric Akira <ETate@mofo.com>; Sprenkel, Stacey M. <SSprenkel@mofo.com>; Dysart, Meghan E. <MDysart@mofo.com>; Carlin, John P. <JCarlin@mofo.com>; Gonzalez, Arturo J. <AGonzalez@mofo.com> | Friedman, Paul T. <PFriedman@mofo.com> | | AC, WP | Email concerning legal advice regarding 4/14/17 resignation email from Richard Jacobs | Maintained in Morrison & Foerster LLP's internal and secured records repository. | To the best of Uber's knowledge, this document has not been received by unauthorized persons. | Morrison & Foerster LLP |
| 2 | 4/26/2017 | Sprenkel, Stacey <SSprenkel@mofo.com> | Duross, Charles <cduross@mofo.com>; Gonzalez, Arturo J. <AGonzalez@mofo.com> | Stern, William L. <WStern@mofo.com>; Cheung, Tiffany <TCheung@mofo.com>; Tate, Eric Akira <ETate@mofo.com>; Dysart, Meghan E. <MDysart@mofo.com>; Carlin, John P. <JCarlin@mofo.com>; Friedman, Paul T. <PFriedman@mofo.com> | | AC, WP | Email concerning legal advice regarding 4/14/17 resignation email from Richard Jacobs | Maintained in Morrison & Foerster LLP's internal and secured records repository. | To the best of Uber's knowledge, this document has not been received by unauthorized persons. | Morrison & Foerster LLP |
| 3 | 4/26/2017 | Tate, Eric Akira <ETate@mofo.com> | Sprenkel, Stacey M. <SSprenkel@mofo.com> | Duross, Charles <cduross@mofo.com>; Gonzalez, Arturo J. <AGonzalez@mofo.com>; Stern, William L. <WStern@mofo.com>; Cheung, Tiffany <TCheung@mofo.com>; Dysart, Meghan E. <MDysart@mofo.com>; Carlin, John P. <JCarlin@mofo.com>; Friedman, Paul T. <PFriedman@mofo.com>; Rivera, Sylvia <srivera@mofo.com>; Ray, Wendy <wray@mofo.com> | | AC, WP | Email concerning legal advice and work product regarding Uber's ediscovery systems. | Maintained in Morrison & Foerster LLP's internal and secured records repository. | To the best of Uber's knowledge, this document has not been received by unauthorized persons. | Morrison & Foerster LLP |
| 4 | 4/27/2017 | Sprenkel, Stacey M. <SSprenkel@mofo.com> | Rivera, Sylvia <srivera@mofo.com>; Ray, Wendy <wray@mofo.com> | Duross, Charles <cduross@mofo.com> | | AC, WP | Email concerning legal advice regarding Uber's ediscovery systems regarding potential investigation into Jacobs resignation letter. | Maintained in Morrison & Foerster LLP's internal and secured records repository. | To the best of Uber's knowledge, this document has not been received by unauthorized persons. | Morrison & Foerster LLP |
| 5 | 4/27/2017 | Ray, Wendy <wray@mofo.com> | Sprenkel, Stacey M. <SSprenkel@mofo.com> | Rivera, Sylvia <srivera@mofo.com>; Duross, Charles <cduross@mofo.com> | | AC, WP | Email concerning legal advice and work product regarding Uber's ediscovery system. | Maintained in Morrison & Foerster LLP's internal and secured records repository. | To the best of Uber's knowledge, this document has not been received by unauthorized persons. | Morrison & Foerster LLP |
| 6 | 4/27/2017 | Rivera, Sylvia <srivera@mofo.com> | Sprenkel, Stacey M. <SSprenkel@mofo.com> | Ray, Wendy <wray@mofo.com>; Duross, Charles <cduross@mofo.com> | | AC, WP | Email concerning legal advice and work product regarding Uber's ediscovery systems. | Maintained in Morrison & Foerster LLP's internal and secured records repository. | To the best of Uber's knowledge, this document has not been received by unauthorized persons. | Morrison & Foerster LLP |
| 7 | 4/27/2017 | Sprenkel, Stacey M. <SSprenkel@mofo.com> | Rivera, Sylvia <srivera@mofo.com> | Ray, Wendy <wray@mofo.com>; Duross, Charles <cduross@mofo.com> | | AC, WP | Email concerning legal advice regarding Uber's ediscovery systems regarding potential investigation into Jacobs resignation letter. | Maintained in Morrison & Foerster LLP's internal and secured records repository. | To the best of Uber's knowledge, this document has not been received by unauthorized persons. | Morrison & Foerster LLP |

Waymo LLC v. Uber Technologies, Inc.
Case No. 3:14cv-00939- WHA

**Uber's Privilege Log Re Communications with Trial Team Re Jacobs Documents pre November 22, 2017**

| Priv Log No. | Document Date | Sent By / Author | Recipients | CC | BCC | Privilege Assertion | Subject Matter of Communication | Steps Taken to Ensure Confidentiality | Received by Unauthorized Persons? | Custodian (Location) |
|---|---|---|---|---|---|---|---|---|---|---|
| 8 | 4/27/2017 | Rivera, Sylvia <srivera@mofo.com> | Sprenkel, Stacey M. <SSprenkel@mofo.com> | Ray, Wendy <wray@mofo.com>; Duross, Charles <cduross@mofo.com> | | AC, WP | Email concerning legal advice and work product regarding Uber's ediscovery systems. | Maintained in Morrison & Foerster LLP's internal and secured records repository. | To the best of Uber's knowledge, this document has not been received by unauthorized persons. | Morrison & Foerster LLP |

# Exhibit G

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# Exhibit H

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# Exhibit I

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# Exhibit J

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# Exhibit K

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# Exhibit L

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# Exhibit M

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# Exhibit N

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# Exhibit O

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED